Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
Paul R. DeFilippo
Randall R. Rainer
Fletcher W. Strong

*Attorneys for Syncora Guarantee Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No: 12-12020-MG |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**OBJECTION OF SYNCORA GUARANTEE INC. TO CONFIRMATION OF THE
JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC, ET AL.
AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 4

    A.  Syncora Issued Financial Guaranty Insurance Policies That Are Governed By
        Agreements That Afford Syncora Important Contractual Rights ..................................... 4

    B.  The Plan Seeks to Modify Trust Agreements Without the Consent of
        All Parties to Those Agreements ..................................................................................... 6

    C.  The Plan Proposes to Exculpate the RMBS Trustees From Liability .............................. 8

    D.  The Plan Also Awards Attorneys' Fees to Certain Plaintiffs' Counsel ........................... 9

ARGUMENT ............................................................................................................................ 10

   I.    Syncora Has Potential First-Party Claims and Related Claims as Subrogee of the
        Certificateholders Against the RMBS Trustees ............................................................. 10

  II.   The Plan's Release of Claims Against RMBS Trustees Without Consideration Is
        Prohibited Under the Governing Agreements and Applicable Law ............................... 12

 III.   The Plan Impermissibly Modifies Agreements Between Non-Debtors Concerning
        Allocation of RMBS Trust Payments to Certificateholders and Monoline Insurers ...... 15

CONCLUSION ........................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Butts*,
 46 B.R. 292 (Bankr. D.N.D. 1985) ............................................................. 16

*In re Central Medical Center, Inc.*,
 122 B.R. 568 (Bankr. E.D. Mo. 1990) ................................................... 15, 16

*In re Johns-Manville Corp.*,
 600 F.3d 135 (2d Cir. 2010)......................................................................... 14

*In re Metromedia Fiber Network, Inc.*,
 416 F.3d 136 (2d Cir. 2005).................................................................. 12, 14

*In re Sunflower Racing, Inc.*,
 226 B.R. 673 (D. Kan. 1998) ....................................................................... 15

*In re TCI 2 Holdings, LLC*,
 428 B.R. 117 (Bankr.D.N.J. 2010) .............................................................. 18

*Policemen's Annuity and Benefit Fund of City of Chicago v. Bank of Am., NA*,
 907 F. Supp. 2d 536 (S.D.N.Y. 2012).............................................. 10, 13, 14

*Ret. Bd. of the Policemen's Annuity and Ben. Fund of City of Chicago v. Bank of New York Mellon*,
 914 F. Supp. 2d 422 (S.D.N.Y. 2012).......................................................... 10

## Statutes

Streit Act, Article 4A of the New York Real Property Law ...................................... 11

Trust Indenture Act, 15 U.S.C. § 77ooo ................................................................. 10

11 U.S.C. § 503.......................................................................................................... 18

11 U.S.C. § 1123........................................................................................................ 15

11 U.S.C. § 1125........................................................................................................ 12

11 U.S.C. § 1129.................................................................................................. 17, 18

Syncora Guarantee Inc. ("Syncora"), as monoline insurer with respect to certain of the

RMBS Trusts[1] at issue in these cases, hereby files this objection to confirmation of the *Joint*

*Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and The Official Committee of*

*Unsecured Creditors* and all subsequent revisions and supplements thereto (the "Plan"), and

respectfully represents as follows:

## PRELIMINARY STATEMENT

1.       The Debtors' proposed Plan would, if confirmed, deny any recovery to certain

RMBS Trusts simply because certificates issued by those Trusts were insured (termed the

"Insured RMBS Trusts" under the Plan) and, for the other RMBS Trusts permitted to participate

in recoveries, would still reduce the assets otherwise distributable by an unspecified amount,

stated as "5.7% of the Allowed RMBS Trust Claims," which total about $7.3 billion.  However,

in neither case do the affected Trusts receive any consideration in return.  And notwithstanding

the foregoing gratuitous abandonment of claims and recoveries by the Trustees for the RMBS

Trusts, the proposed Plan also would exculpate the Trustees from liability for negotiating and/or

agreeing to such terms, except for gross negligence or willful misconduct, and would enjoin suit

against the Trustees on account of Released Claims.  Syncora objects to these provisions of the

Plan for several reasons.

2.       *First*, the Plan's proposed exculpation of the RMBS Trustees without

consideration is improper and should be stricken.  Under the RMBS Trust Settlement

incorporated into the Plan, the RMBS Trustees who consent to the Plan and who seek to be

exculpated and protected by the Plan injunction against actions against them, have agreed to a

construct where they will waive claims held by some of the Trusts they serve, in order to provide

---

[1] Capitalized terms not otherwise defined herein shall have that meaning ascribed to them in the Plan or Disclosure
Statement as applicable.

greater benefits to other Trusts.  Trusts that are not Insured RMBS Trusts receive an allocation of

the proceeds of the RMBS Settlement.  On the other hand, to the extent that a Trust is an Insured

RMBS Trust, such trusts are excluded from any participation in the RMBS Trust Settlement

proceeds, unless the Insured Exception applies.  Nothing in the Plan or Disclosure Statement

indicates that Insured RMBS Trusts are to receive any consideration for the Trustees' agreement

to surrender their claims against the Debtors, or to allow payment of counsel fees to attorneys

who did not represent either the Trusts or the Trustee.

3.      At the same time, however, under the Plan the RMBS Trustees who are

Consenting Claimants are Exculpated Parties and, as such, are granted exculpation from liability

"to any Entity" for, among other things, entering into the RMBS Trust Settlement that strips

Insured RMBS Trusts of their claims against the Debtors without the Insured RMBS Trusts

receiving any consideration in return.  The RMBS Trustees who are Consenting Claimants did

not pay anything of value to the Debtors' estates in exchange for the protections they are to

receive under the Plan.  Essentially, those Trustees who are Consenting Claimants seek Plan

releases for waiving claims held by the Trusts they are supposed to protect, although they have

paid nothing from their own assets for those proposed releases.  The beneficiaries of the Trusts,

who are the persons who are most directly harmed by the Trustees' waiver of Trust claims,

would be blocked from asserting rights against the RMBS Trustees who used Trust assets to

secure the Plan releases.  Under the Trust Indenture Act, state law and principles of common

law, Syncora may have claims against the RMBS Trustees for Trusts that Syncora insures arising

from the Trustees' gratuitous waiver of claims of those Trusts, and therefore Syncora objects to

the exculpation of the RMBS Trustees.

4.      *Second*, the Plan goes so far as to affirmatively prohibit any distribution of assets to any monoline insurer,[2] even if such Monoline is otherwise entitled to a distribution under the governing trust documents.  However, Syncora has rights of payment from the assets of the RMBS Trusts that are distributed through the Trust's "waterfall" payments provision.  Stripping Syncora of its contractual rights to payment from a non-debtor third party like the RMBS Trusts is an impermissible attempt to modify contracts between non-debtors – that have no effect on property of the estate.

5.      *Third*, the Plan proposes that counsel for certain Institutional Investors will have an Allowed Fee Claim of 5.7% of the Allowed RMBS Trust Claims, payable in Trust Units to be distributed to them by the Liquidating Trust from the proceeds of the RMBS Trust Settlement, and without any provision for approval by this Court.  Such fees are proposed to be paid to counsel for the Institutional Investors from assets that otherwise would be distributable to the RMBS Trusts, even though those attorneys did not represent the RMBS Trusts or the Trustees, and there is no provision in the governing Trust documents for using Trust assets to pay attorneys' fees of certificateholders for making the kinds of claims those persons have asserted. Syncora respectfully submits that the proposed payment of the Allowed Fee Claim from assets otherwise due to the RMBS Trusts contravenes the Bankruptcy Code and the applicable Trust documents, and the Plan should not be confirmed without at least a modification to require that the Court find the Allowed Fee Claim to be reasonable.[3]

---

[2] *See* Plan Art. IV.C.3.e ("*Distributions as Subsequent Recoveries*. . . .  Notwithstanding the foregoing or anything to the contrary in any governing agreement, no distributions from the GMACM Pool or the RFC Pool will be paid over to any Monoline") (emphasis in original).

[3] In addition, Syncora incorporates by reference all other objections to the Plan filed by interested parties as to which Syncora also has standing to assert.

## FACTUAL BACKGROUND

**A.      Syncora Issued Financial Guaranty Insurance Policies That Are Governed
By Agreements That Afford Syncora Important Contractual Rights**

6.      Syncora issued a financial guaranty insurance policy ("Policy") insuring each of

seven RMBS Trusts' payment of principal and interest to the holders of more than $2.5 billion

worth of mortgage-backed certificates issued by the trusts (the "Syncora Trusts").  For each of

the Syncora Trusts, Debtor GMAC Mortgage, LLC ("GMACM") and/or Debtor Residential

Funding Company, LLC ("RFC") serves as Servicer, Sponsor, and/or Seller.  Specifically, the

Syncora Trusts include:

(a)      Bear Stearns Second Lien Trust 2007-SV1, for which GMACM acts as Servicer,
Citibank, N.A. acts as Trustee, Wells Fargo Bank, N.A. acts in certain Trustee
capacities as Master Servicer and Securities Administrator and Syncora insures
the payment of principal and interest on certificates having an original principal
balance of more than $350 million ("BSSLT 2007-SV1" or the "Bear Stearns"
transaction);

(b)      SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1, for which
GMACM acts as Servicer, HSBC Bank USA, National Association acts as
Trustee and Syncora insures the payment of principal and interest on certificates
having an original principal balance of more than $315 million ("STACS 2007-1"
or the "SunTrust" transaction);

(c)      Residential Accredit Loans, Inc., Series 2006-QO4, for which RFC acts as Master
Servicer, Sponsor and Seller, Deutsche Bank Trust Company Americas acts as
Trustee and Syncora insures the payment of principal and interest on certificates
having an original principal balance of more than $135 million ("RALI 2006-
QO4" or the "RALI" transaction);

(d)      Greenpoint Mortgage Funding Trust 2006-HE1, for which GMACM acts as
Servicer, U.S. Bank National Association acts as Trustee and Syncora insures the
payment of principal and interest on certificates having an original principal
balance of more than $1.33 billion ("GP 2006-HE1" or the "Greenpoint"
transaction);

(e)      Harborview Mortgage Loan Trust, Series 2005-11, for which GMACM acts as
Servicer, Deutsche Bank National Trust Company acts as Trustee and Syncora
insures the payment of principal and interest on certificates having an original
principal balance of more than $100 million ("HVMLT 2005-11");

    (f)      Harborview Mortgage Loan Trust, Series 2005-15, for which GMACM acts as Servicer, Deutsche Bank National Trust Company acts as Trustee and Syncora insures the payment of principal and interest on certificates having an original principal balance of more than $35 million ("HVMLT 2005-15"); and

    (f)      SACO I Trust 2006-1, for which GMACM acts as Servicer, Citibank, N.A. acts as Trustee and Syncora insures the payment of principal and interest on certificates having an original principal balance of more than $285 million ("SACO 2006-1").

    7.      The underlying agreements for the Syncora Trusts contain a mechanism for the distribution of principal and interest proceeds through the Trusts to the certificateholders in accordance with the applicable priority of distribution (or "waterfall") provision in the underlying pooling and servicing agreement or indenture. *See, e.g.,* Ex. A, SACO I Indenture § 3.02;[4] Ex. B, HVMLT 2005-11 PSA § 5.01; Ex. C, HVMLT 2005-15 PSA § 5.01; Ex. D, BSSLT 2007-SV1 PSA § 6.04; Ex. E, STACS 2007-1 PSA § 5.01; Ex. F, RALI 2006-QO4 Series Supplement § 4.02. Among these agreements are ones to which the Debtors are not parties. These agreements and Syncora's Policies also provide for Syncora to be subrogated to the certificateholders' rights to receive payments of principal and interest to the extent of insurance payments made by Syncora to the certificateholders. *See, e.g.,* Ex. G, BSSLT 2007-SV1 Policy, Endorsement at A-5. Under none of these agreements is a Debtor required to indemnify a Trustee for the Trustees' losses arising from the Trustees' willful misconduct or negligence (or in some cases, gross negligence).

    8.      In addition, certain of the underlying agreements for the Syncora Trusts that provide for the distribution of payments to the certificateholders of the Syncora Trusts prohibit any material modification or amendment to the agreement, including provisions for distribution to certificateholders, without the consent of at least 66.67% of certificateholders. *See* Ex. B,

---

[4] Unless otherwise defined herein, references to an "Exhibit" or "Ex." refer to the applicable exhibit of the Declaration of Fletcher W. Strong dated October 21, 2013.

HVMLT 2005-11 PSA § 12.01; Ex. C, HVMLT 2005-15 PSA § 12.01; Ex. E, STACS 2007-1

PSA § 12.01; Ex. D, BSSLT 2007-SV1 PSA §12.01; Ex. H, RALI 2006-QO4 Standard Terms of

Pooling and Servicing Agreement § 11.01(b).  For SACO 2006-1, any amendment requires the

consent of each Class of Notes affected by the amendment *and* the Note Insurer (*i.e.* Syncora).

Ex. A, SACO 2006-1 Indenture § 9.02. Each of the Syncora Trusts has suffered an Event of

Default under the Governing Agreements[5] (or otherwise has suffered an event of default as

contemplated by the Trust Indenture Act, discussed below), giving rise to claims held by the

RMBS Trusts against the Debtors and/or Trustees.

9.      The RMBS Trustees to the respective trusts have filed proofs of claim asserting

claims against the Debtors for such defaults.  *See, e.g.,* Deutsche Bank proof of claim number

6706; U.S. Bank proof of claim number 6655.

**B.      The Plan Seeks to Modify Trust Agreements Without the Consent of All
Parties to Those Agreements**

10.     On July 3, 2013, the Debtors filed the Plan [Dkt. No. 4153] and Disclosure

Statement [Dkt. No. 4157].  On August 16, 2013, the Debtors filed the First Revised Plan and

Disclosure Statement [Dkt. Nos. 4733-2, 4733-1], and on August 20, 2013, the Debtors filed the

Second Revised Plan and Disclosure Statement [Dkt. Nos. 4770-2, 4770-1].[6]

11.     The Plan proposes to modify the terms of the underlying Syncora Trust

Documents, including agreements such as the Indentures and Pooling and Servicing Agreements,

whose payment and subrogation terms were a fundamental inducement to Syncora in issuing the

policies insuring certificateholders in those Trusts, while proposing that Syncora's obligations

under the Policies would continue in effect.  Specifically, the Plan appears to prohibit any right

---

[5] *See, e.g.*, STACS 2007-1 PSA § 8.01(a)(v); RALI 2006-Q04 § 7.01(v).

[6] All citations to the Plan or Disclosure Statement refer to the First Revised Plan and Disclosure Statement, unless
otherwise stated herein.

of recovery for monoline insurers to RMBS Trusts, even for "Subsequent Recoveries" that would

otherwise flow to the monoline insurers under the transaction documents:

> (e) *Distributions as Subsequent Recoveries*. All distributions from the GMACM
> Pool or the RFC Pool on account of any Recognized RMBS Claim shall be treated
> as "Subsequent Recoveries," as that term is defined in the applicable governing
> agreement for that RMBS Trust; provided that if the governing agreement for a
> particular RMBS Trust does not include the term "Subsequent Recovery," the
> distribution resulting from any Recognized Claim shall be distributed as though it
> was unscheduled principal available for distribution on that distribution date;
> provided, however, that should the Bankruptcy Court determine that a different
> treatment is required to conform the distributions to the requirements of the
> governing agreements, that determination shall govern and shall not constitute a
> material change to this Plan.  <u>Notwithstanding the forgoing or anything to the
> contrary in any governing agreement, no distributions from the GMACM Pool or
> the RFC Pool will be paid over to any Monoline.</u>

Plan Art. IV.C.3.e (emphasis added).

12.     The Plan acknowledges that while all other provisions of the Governing

Agreements for the RMBS Trusts shall remain "in full force," the Governing Agreements are

modified "as specifically provided in Article IV.C.3.e" – which appears to extinguish the

monolines' contractual right to receive any share of Subsequent Recoveries received by the

RMBS Trusts based on the monolines' subrogation rights to the certificateholders in the RMBS

Trusts to the extent of claims paid.  Plan Art. IV.C.8.  The Plan also expressly preserves the

Trusts' rights under the Policies, even though Syncora's right to be paid from the Trusts pursuant

to the agreements on which the issuance of the Policies were based is to be eliminated without

Syncora's consent.  *Id.* Art. IV.C.4.

13.     The Disclosure Statement reiterates the fact that while contractual claims may be

made against monoline insurers by an RMBS Trust, monolines do not have any reciprocal

contractual rights to receive distribution for claims on behalf of the RMBS Trust to the extent

that the monolines are subrogated to the rights of the certificateholders.  *See* Disclosure

Statement Art. II.C at 28 ("Insured RMBS Trusts will have no allowed RMBS Trust Claims but

will reserve the ability to enforce their rights against any monoline insurer (other than FGIC) that

does not, in the future, perform in accordance with an insurance policy for the benefit of the

applicable RMBS Trust.").

### C.    The Plan Proposes to Exculpate the RMBS Trustees From Liability

14.    The Plan also seeks to exculpate the RMBS Trustees from liability for claims that

may be held against them by non-Debtor third-parties such as Syncora.  Under the Plan, any

"Exculpated Party" (Art. I.A.) is released from liability for any claim related to, among other

things, negotiating, implementing or consummating the Plan Support Agreement, the Settlement

Agreement, the RMBS Settlement and the Plan, except to the extent that any Exculpated Party's

conduct is adjudicated as "gross negligence" or "willful misconduct."  Plan Art. IX.G.

Exculpated Party is defined to include the "Consenting Claimants" (Plan Art. I.A.90), who in

turn include the "RMBS Trustees" (Plan Art. 1.A.59), a group which includes the Trustees for

some of the Syncora Trusts, including (i) Deutsche Bank in its capacity as Trustee of HVMLT

2005-11, HVMLT 2005-15 and RALI 2006-QO4, and (ii) HSBC in its capacity as Trustee of

STACS 2007-1.   *See* Plan Art. I.A.64 & 120.[7]

15.    Moreover, the Plan contains a permanent injunction prohibiting "all Entities,

including Investors, who have held, hold or may hold Claims, Equity Interests, Causes of Action

or liabilities" from "commencing or continuing" any action "against any Released Party whether

directly, derivatively or otherwise, on account of or in connection with or with respect to any

---

[7] The Plan Support Agreement also contained provisions for the waiver of claims, including as against third parties such as RMBS Trustees.  *See, e.g.,* Plan Support Agreement at 19 ¶ 28; Plan Support Agreement Order [Docket No. 4098] at 2 ¶ 4; Plan Support Agreement Term Sheet at 6-7 & n.4; 10.  However, as the Court made clear at the June 26, 2013 Hearing, any waiver or exculpation granted in consideration with respect to the Plan Support Agreement would not preclude parties from raising such third-party waiver arguments (or unrelated arguments) at Plan confirmation.  *See, e.g.,* Hearing Transcript from June 26, 2013 Hearing [Dkt. No. 4121] at 99, 106, 108-109.

12-12020-mg    Doc 5418    Filed 10/21/13    Entered 10/21/13 16:57:39    Main Document
Pg 12 of 22

Released Claim."  Plan Art. IX.H; Disclosure Statement Art. X.8.   "Released Claims" include

any claims "subject to exculpation pursuant to the Plan."  Plan Art. I.A.230.  Thus, the provision

seeks to permanently enjoin any claim against the RMBS Trustees related to the RMBS

Settlement, Plan Support Agreement and Plan, unless arising from gross negligence or willful

misconduct.  Neither the Plan, nor the Disclosure Statement, identifies any consideration paid by

the RMBS Trustees who are Exculpated Parties for the protections provided to them under the

Plan, or that the Insured RMBS Trusts will receive any consideration for the Trustees' agreement

to release claims those Trusts hold against the Debtors.

16.     On the other hand, as of the Effective Date of the Plan "the RMBS Trustees will

be paid in full in Cash . . . for their reasonable pre- and post-petition fees and expenses . . . ."

Plan Art. IV.C.5.

**D.     The Plan Also Awards Attorneys' Fees to Certain Plaintiffs' Counsel**

17.     The Plan also provides an allowed claim for fees to a group of attorneys who

rendered pre-and post-petition services to the Institutional Investors in connection with those

investors' claims against certain Debtors (the "Allowed Fee Claim").  The Allowed Fee Claim is

predetermined to be 5.7% of the Allowed RMBS Trust Claims.  *See* Plan Art. IV.C.2, 6.  Since

the Allowed RMBS Claims total approximately $7.3 billion, the firms who are to share the

Allowed Fee Claim will divide Trust Units payable on account of a claim of approximately $400

million, which is to come off the top of the amount of Units to be distributed to RMBS Trusts,

and receive a fee estimated at $39 million.

## ARGUMENT

### I.    Syncora Has Potential First-Party Claims and Related Claims as Subrogee of the Certificateholders Against the RMBS Trustees

18.    Syncora, as insurer to the Syncora Trusts, holds potential claims against the RMBS Trustees in its own right and as subrogee to the certificateholders to the extent of claims Syncora paid.

19.    First, if the RMBS Trust Settlement as incorporated into the Plan as approved in its current form, Syncora will hold first-party common law claims against those Trustees of the Syncora Trusts who agreed to waive claims on behalf of those trusts based upon (a) the RMBS Trustees' breach of their fiduciary duty to act in good faith, with due care, and with undivided loyalty to those Trusts; (b) the relevant Trustees' agreement to permit payment of the Allowed Fee Claim from assets otherwise allocable to the affected Trusts in derogation of the Governing Trust Documents; and (c) for other breaches of the Governing Trust Documents caused by the waivers and consents they propose to give in violation of such agreements between Syncora and such Trustees.

20.    Syncora also will hold potential claims against the Trustees of the Syncora Trusts under the Trust Indenture Act, 15 U.S.C. § 77ooo ("TIA").  The certificates issued by the RMBS Trusts constitute debt securities that are covered by the protections of the TIA.  *See Ret. Bd. of the Policemen's Annuity and Ben. Fund of City of Chicago v. Bank of New York Mellon* ("*Policemen's Annuity I*"), 914 F. Supp. 2d 422, 427 (S.D.N.Y. 2012); *Policemen's Annuity and Benefit Fund of City of Chicago v. Bank of Am., NA* ("*Policemen's Annuity II*"), 907 F. Supp. 2d 536, 557 (S.D.N.Y. 2012).  As a beneficiary of the relevant Trusts by virtue of its subrogation to the claims of certificateholders it has paid, Syncora will have claims against the Trustees of Syncora Trusts who are Exculpated Parties based upon their failure to act "prudently" by, among

other things, agreeing to waiver of the Syncora Trusts' right to an Allowed Claim under the Plan, including as part of the RMBS Trust Settlement, without receiving anything of value in exchange for that waiver; and by consenting to payment of property that otherwise would be payable to the beneficiaries of such Trusts without observing the agreements that govern the rights of parties to receive distributions of Trust assets.

21.     Finally, if the Plan is confirmed as proposed, Syncora will hold claims against the Trustees for the Syncora Trusts under Article 4A of the New York Real Property Law, known as the "Streit Act."  The Streit Act applies to "mortgage investments," including "all shares and interests . . . in an issue of bonds, notes or other evidence of indebtedness . . . held by more than one person and secured by a mortgage or mortgages upon real property" where (i) any part of the underlying property is located in New York or (ii) the trustee is located in or authorized to do business in New York.  Streit Act §§ 124-125.  This requirement is satisfied here, as the Syncora Trusts issued certificates "secured" by mortgages for real property, and each of the Trustees are either located in or authorized to do business in New York.  The Streit Act imposes obligations on RMBS Trustees similar to the TIA, including the "prudent man" standard of conduct that is triggered upon the occurrence of a default.  Streit Act § 126.  Syncora holds claims against the RMBS Trustees arising under the Streit Act for the RMBS Trustees' failures to act "prudently" for the reasons described above.

22.     Accordingly, Syncora holds substantial contractual, common law, and statutory claims against the RMBS Trustees that are wholly independent from Syncora's claims against the Debtors.  The provisions of the Plan that propose to impair or eliminate such rights should not be approved, and as a condition of confirmation the Plan should be modified to delete exculpation of the Trustees of the Syncora Trusts.

II.    **The Plan's Release of Claims Against RMBS Trustees Without Consideration Is Prohibited Under the Governing Agreements and Applicable Law**

23.    Third-party nonconsensual releases in favor of non-debtors are only permitted in "extraordinary cases" where the release is "an important part in the debtor's reorganization plan" and the non-debtor provides "substantial consideration." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005).

24.    The Plan seeks to enjoin Syncora and all other persons from asserting any pre-petition or post-petition claims against the RMBS Trustees (absent gross negligence or willful misconduct) for any conduct related to, among other things, the RMBS Settlement, Plan Support Agreement or "any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan." Plan Art. IX.G.  The broad language of the permanent injunction clause of the Plan (Art. IX.H) would appear to enjoin Released Claims held by Syncora against the RMBS Trustees of Syncora Trusts, even though such claims are independent of any claim that Syncora may hold against the Debtors, and even though the Trustees who are Exculpated Parties have paid nothing of value in exchange for the de facto releases of claims their beneficiaries may have against them.[8]   The Plan exculpations and injunctions in favor of the RMBS Trustees of Syncora Trusts who are Consenting Claimants do not meet the rigorous standards for approval of such devices.  *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 at 142.  Nor are such releases within the scope of the limited exculpatory provisions allowed under Section 1125(e) of the Bankruptcy Code.

25.    Moreover, the RMBS Settlement, Plan Support Agreement, and Plan all purport to extinguish any rights of Insured RMBS Trusts to receive distribution from the Liquidating

---

[8] On the other hand, the RMBS Trustees are entitled to "be paid in full in Cash . . . for their reasonable pre- and post-petition fees and expenses[.]"  Plan Art. IV.C.5.

Trusts, unless the "Insured Exception" applies. According to the Plan Schedules, only one of the

Syncora Trusts, BSSLT 2007-SV1, is entitled to any distribution under the "Insured Exception,"

and the rest of the Syncora Trusts that would otherwise be entitled to receive a distribution for

allowed RMBS Trust Claims under the Plan have been "set to zero" under the RMBS Trust

Allocation Protocol for Insured RMBS Trusts.[9]  Plan Art. Art. IV.C.3.a.iv.

26.    The agreement by the Trustees of the Syncora Trusts who are Consenting

Claimants to waive without consideration certain of the Syncora Trusts' rights to any claims,

simply because the affected trust is insured, cannot be squared with the relevant RMBS Trustees'

contractual and fiduciary duties with respect to those trusts and Syncora directly.  The RMBS

Trustees have contractual and fiduciary duties under the Governing Agreements, common law,

and federal and state statutes noted above, and the releases those Trustees seek from liability for

violation of their duties should not be imposed on Syncora without its consent, which it does not

give.  While it may be in the best interests of the uninsured RMBS Trusts for the Trustees to

freely waive all claims held by Insured RMBS Trusts, sacrificing the rights of the Insured RMBS

Trusts to benefit the uninsured trusts is not consistent with the Trustees' duties to the Insured

RMBS Trusts.  *See*, *e.g*., Ex. H, RALI 2006-Q04 PSA §§ 7.01(ii) & (iii); 8.01 ("In case an Event

of Default has occurred . . . the Trustee shall exercise such of the rights and powers vested in it

by this Agreement, and use the same degree of care and skill in their exercise as a prudent

investor would exercise or use under the circumstances in the conduct of such investor's own

affairs."); Ex. I, GP 2006-HE1 PSA §§ 5.01(i) & (ii); 6.01(a) (same); *Policemen's Annuity I*, 907

F. Supp. 2d at 553-59 (articulating Trustees' duties and certificateholders' rights for breaches of

those duties).

---

[9] Syncora does not concede the Proponents' determination that only one of the Syncora Trusts qualifies for the
Insured Exception.

27.     Moreover, even though BSSLT-2007-SV1 is entitled to participate under the Insured Exception, the Trustee is not entitled to consent to the payment from Trust Assets of the portion of the Allowed Fee Claim payable by such trust.  The Governing Agreements for BSSLT-2007-SV1 limit what Trust assets can be used for, and that list does not include payment of the fees of trust investors.  *See*, *e.g*., Ex. D, BSSLT 2007-1 PSA § 6.04; Ex. E, STACS 2007-1 PSA § 5.01; Ex. F, RALI 2006-Q04 PSA § 4.02.  Accordingly, it is inappropriate to reward any Trustee with a release for consenting to Plan terms which violate Governing Agreements without the requisite consent from the Trust beneficiaries.  Modification of the waterfall provisions of the relevant Trusts requires at minimum 2/3 consent of certificate holders and there is no evidence that such consent was received by the Trustees from the holders in the Syncora Trusts.  Since the standards for the Trustees' liability do not require Syncora to prove that the relevant Trustee was grossly negligent or committed willful misconduct, the carveouts from the scope of the Plan releases are meaningless.  If confirmed as written, the Plan could effectively prohibit Syncora from pursuing claims for damages caused by the Trustees, even though the relevant Trustees have provided no consideration of their own to secure such releases.  *See Policemen's Annuity I*, 907 F. Supp. 2d at 553 (holding that RMBS trustee may be held liable for breaching obligations to trust by failing to uncover breaches of trust obligations upon notice of possible breaches).

28.     The attempt to extinguish third party claims against the RMBS Trustees of Insured Trusts does not satisfy the applicable standards for non-debtor releases and should not be approved.  *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 at 142.  Moreover, this court should not enjoin direct claims by a third-party against a non-debtor which have no effect on the estate.  *In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010).

**III.     The Plan Impermissibly Modifies Agreements Between Non-Debtors Concerning Allocation of RMBS Trust Payments to Certificateholders and Monoline Insurers**

29.      The Plan proposes a modification of payments terms under the Governing Agreements to which the Debtors are not even parties, which have no effect on property of the estate, and which govern the rights of non-Debtors to assets of non-Debtor trusts.  None of those modifications are essential to the success of the Plan, and instead seem designed to intentionally harm RMBS Trust insurers without cause.  Section 11 U.S.C. § 1123(a)(5) may not be stretched to permit modification of contracts solely between non-debtors, which have no impact on the Debtors' assets, and without compliance with the terms of the contracts in respect of amendments.

30.      In *In re Central Medical Center, Inc.*, 122 B.R. 568 (Bankr. E.D. Mo. 1990), the plan proponents sought to modify the terms of a bond indenture to release a bond reserve in which the debtor held only a reversionary interest after all bond indebtedness was satisfied.  The proposed plan which sought to modify the Indenture was denied confirmation because although the debtors had an interest in the bond reserve, the proponents could not change the terms of the indenture to the detriment of certain bondholders who would be divested of their rights to the bond reserve.  *Central Medical Center, Inc.*, 122 B.R. at 573.  The Court stated that it would be "bad law and worse logic" to "divert proceeds of the Fund from its intended beneficiaries" which would be "in complete contravention of the terms of the Trust Indenture."  *Id.* at 574.  *See also In re Sunflower Racing, Inc.*, 226 B.R. 673, 680 (D. Kan. 1998) (affirming lower court's denial of proposed plan that attempted to terminate a subordination agreement between non-debtors as beyond the power of a chapter 11 plan).

31.      The Governing Agreements for the Syncora Trusts dictate the time, method and amount of distribution to certificateholders in the Trusts pursuant to the various Pooling and

Servicing Agreements' payment waterfalls.  *See, e.g.*, Ex. D, BSSLT 2007-1 PSA § 6.04; Ex. E,

STACS 2007-1 PSA § 5.01; Ex. F, RALI 2006-Q04 PSA § 4.02.  In certain Syncora Trust

transactions, Syncora has a direct right to payment as a certificateholder.[10]  Further, Syncora is

subrogated to the certificateholders' rights to the extent of claims paid by Syncora in respect of

delinquent principal and interest payments made.  To the extent that there are "Subsequent

Recoveries" – concerning payments into the trust on defaulted or delinquent mortgage loans –

the Underlying Agreements provide a mechanism for such funds to be "held in trust for the

benefit of the Trustee and the Certificateholders and the Class A Certificate Insurer."  *See, e.g.*,

Ex. E, STACS 2007-1 PSA § 5.04.  Money held in trust for Syncora under the Indenture cannot

be diverted to third-parties under the Plan when the Debtors hold no interest in such funds.[11]

Further, to the extent of claims paid by Syncora as Certificate Insurer, Syncora would have a

right to any payments made to the Trusts under the applicable priority of distribution for the

Collection Account.  *See, e.g.* Ex. E, STACS 2007-1 PSA § 3.08. Such rights remain with

respect to certain Syncora Trusts following Syncora's remediations.[12]

    32.    The Plan appears to terminate Syncora's rights to any Subsequent Recoveries,

even if the funds would otherwise be distributed to Syncora through the applicable RMBS Trust

waterfalls in the Governing Agreements.  The Plan states that distributions under the Plan "shall

be treated as 'Subsequent Recoveries,'" but "[n]otwithstanding the forgoing or anything to the

contrary in any governing agreement, *no distributions from the GMACM Pool or the RFC Pool*

---

[10] *See, e.g.*, HVMLT 2005-11; SACO 2006-1; GP 2006-HE1.

[11] *Central Medical Center, Inc.*, 122 B.R. at 573-74 ("Thus, the language of the Indenture makes it quite clear that
the proceeds of the Fund were to be held in trust and as part of the Trust Estate for the bondholders' benefit. This
Court can scarcely imagine a case in which funds were more specifically held and earmarked for a given class of
claimants."); *see also In re Butts*, 46 B.R. 292, 297 (Bankr. D.N.D. 1985) ("The Bankruptcy Code cannot be
construed to effectively divest someone of property which is rightfully theirs.").

[12] *E.g.*, BSSLT 2007-SV1; STACS 2007-1; GP 2006-HE1; SACO 2006-1.

*will be paid over to any Monoline*." Plan Art. IV.C.3.e (emphasis added). If this provision is intended to prevent Syncora from enjoying the rights to payment to which it is entitled under the Governing Agreements, it constitutes an impermissible revision to third-party contracts that do not concern bankruptcy estate property and in most cases, to which the Debtors are not even parties, without compliance with the requirements for amending those agreements. No case has been identified that permits the non-consensual modification under a plan of a contract solely between non-debtors, from which the debtor obtains no benefit, and which has no affect on the Debtors' estate or its ability to confirm the Plan. The waterfall provisions of the Governing Agreements have no impact on the Debtors or their estates, were a material inducement to Syncora to issue insurance to those Trusts, and can only be modified in accordance with the terms of those agreements, which requires Syncora's consent. To compound the inequitable prohibition on Monolines receiving distributions from a Trust to which they are entitled by the Trust documents, the Monoline would still be obligated under the Plan to perform under its insurance policies. There is no basis under either the Bankruptcy Code, or any other principle of law, to adversely affect Syncora's rights in such a fashion.

33.    Similarly, the Plan's award of the Allowed Fee Claim to certain plaintiffs' counsel also impermissibly invades Syncora's contractual right to payment through the Syncora Trust waterfalls by shrinking the pool of assets that certain Syncora Trusts are entitled to receive as part of the RMBS Trust Settlement.[13] Furthermore, such award violates Bankruptcy Code Section 1129(a)(4), which requires that any payment to be made by the proponent, the debtor, or by a person issuing securities or acquiring property under a plan, for services or for costs or expenses in or in connection with the case, has been approved by, or is subject to approval of the

---

[13] *E.g.*, GP 2006-HE1.

court, as reasonable.  11 U.S.C. § 1129(a)(4).  The Liquidating Trust is acquiring property under

the Plan,[14] and it is proposed that the Liquidating Trust will distribute Units to counsel for the

Institutional Investors in payment of the Allowed Fee Claim.  The amount of such Allowed Fee

Claim "shall be distributed to counsel to the Institutional Investors as fees via direct allocation"

to such counsel.  Art. I.A.11 at 3; *see also* Art. IV.C.2, 6.  The amount of the Allowed Fee Claim

would appear to be equivalent to the value of an Allowed RMBS Trust Claim in excess of

approximately $400 million.

34.    There is no requirement in the Plan that the Court approve the amount of such

fees as reasonable, and indeed the amount of such fees has been predetermined as 5.7% of the

Allowed RMBS Trust Claims, leaving no room for a determination of reasonableness by this

Court, other than as a rubber stamp after the fact.  Syncora respectfully submits such provision

violates Section 1129(a)(4).

35.    Syncora acknowledges that while Section 1129(a)(4) does not require prior

approval of payments covered by its terms, there is no provision whatsoever in the Plan for this

Court's review or approval of the Allowed Fee Claim, either before or after payment.

Accordingly, the Plan violates Section 503(b)(3) and cannot be confirmed unless the Allowed

Fee Claim is expressly made subject to approval by the Court. *See In re TCI 2 Holdings, LLC*,

428 B.R. 117, 145-46 (Bankr. D.N.J. 2010) ("While a strong argument might be made that

payments that are not made to fiduciaries and that do not deplete the bankruptcy estate need not

be subject to court approval, this is simply not the decision that Congress has chosen to make.").

---

[14] The Disclosure Statement represents that the Liquidating Trust is to be vested with substantially all of the
Debtors' assets under the Plan (Art. I.G.2 at 17).

## **<u>CONCLUSION</u>**

For the above stated reasons, and such additional arguments and evidence as may be

adduced at the confirmation hearing, Syncora requests that the Court to deny confirmation of the

Plan, and grant such other and further relief as is deemed just and proper.

Date:    New York, New York
         October 21, 2013

WOLLMUTH MAHER & DEUTSCH LLP

By:            /s/ Paul R. DeFilippo
               Paul R. DeFilippo
               Randall R. Rainer
               Fletcher W. Strong

500 Fifth Avenue
New York, New York 10110
(212) 382-3300

*Attorneys for Syncora Guarantee Inc.*