# EXHIBIT A

SACO I TRUST 2006-1

Issuing Entity,

LASALLE BANK NATIONAL ASSOCIATION

Securities Administrator

and

CITIBANK, N.A.

Indenture Trustee

INDENTURE

Dated as of February 28, 2006

MORTGAGE-BACKED NOTES

# TABLE OF CONTENTS

<u>Section</u>                                                                                                                                          <u>Page</u>

## ARTICLE I
## DEFINITIONS

Section 1.01    Definitions.................................................................................7
Section 1.02    Incorporation by Reference of Trust Indenture Act................................7
Section 1.03    Rules of Construction ................................................................7

## ARTICLE II
## ORIGINAL ISSUANCE OF NOTES

Section 2.01    Form.......................................................................................9
Section 2.02    Execution, Authentication and Delivery .........................................9

## ARTICLE III
## COVENANTS

Section 3.01    Existence..................................................................................10
Section 3.02    Payment of Principal and Interest. ...............................................10
Section 3.03    Protection of Trust Estate............................................................13
Section 3.04    Opinions as to Trust Estate .........................................................14
Section 3.05    Performance of Obligations .........................................................14
Section 3.06    Negative Covenants ...................................................................15
Section 3.07    Annual Statement as to Compliance ..............................................15
Section 3.08    Representations and Warranties Concerning the HELOCs ..................16
Section 3.09    Investment Company Act .............................................................16
Section 3.10    No Other Business .....................................................................16
Section 3.11    No Borrowing ...........................................................................16
Section 3.12    Guarantees, Loans, Advances and Other Liabilities..........................16
Section 3.13    Capital Expenditures...................................................................17
Section 3.14    Determination of Note Interest Rate. .............................................17
Section 3.15    Restricted Payments...................................................................17
Section 3.16    Notice of Events of Default .........................................................17
Section 3.17    Further Instruments and Acts........................................................17
Section 3.18    Certain Representations Regarding the Trust Estate. .........................17
Section 3.19    Allocation of Charge-Off Amounts ...............................................18
Section 3.20    Claims on the Policy; Policy Payments Account................................19

## ARTICLE IV
## THE NOTES; SATISFACTION AND DISCHARGE OF INDENTURE

Section 4.01    The Notes..................................................................................23
Section 4.02    Registration of and Limitations on Transfer and Exchange of Notes;
                Appointment of Note Registrar and Certificate Registrar ..................23

Section 4.03    Mutilated, Destroyed, Lost or Stolen Notes...........................................24
Section 4.04    Persons Deemed Owners ..........................................................................25
Section 4.05    Cancellation .............................................................................................25
Section 4.06    Book-Entry Notes .....................................................................................26
Section 4.07    Notices to Depository ...............................................................................26
Section 4.08    Definitive Notes........................................................................................27
Section 4.09    Application of Trust Money.......................................................................27
Section 4.10    Subrogation and Cooperation ...................................................................28
Section 4.11    Repayment of Monies Held by Paying Agent ...........................................28
Section 4.12    Temporary Notes .....................................................................................29
Section 4.13    Representation Regarding ERISA .............................................................29

## ARTICLE V
## DEFAULT AND REMEDIES

Section 5.01    Events of Default .....................................................................................30
Section 5.02    Acceleration of Maturity; Rescission and Annulment...............................30
Section 5.03    Collection of Indebtedness and Suits for Enforcement by Indenture
                Trustee......................................................................................................31
Section 5.04    Remedies; Priorities..................................................................................33
Section 5.05    Optional Preservation of the Trust Estate .................................................34
Section 5.06    Limitation of Suits ....................................................................................35
Section 5.07    Unconditional Rights of Noteholders To Receive Principal and Interest.............35
Section 5.08    Restoration of Rights and Remedies..........................................................36
Section 5.09    Rights and Remedies Cumulative...............................................................36
Section 5.10    Delay or Omission Not a Waiver................................................................36
Section 5.11    Control By Note Insurer and Noteholders .................................................36
Section 5.12    Waiver of Past Defaults .............................................................................37
Section 5.13    Undertaking for Costs................................................................................37
Section 5.14    Waiver of Stay or Extension Laws ............................................................37
Section 5.15    Sale of Trust Estate ...................................................................................38
Section 5.16    Action on Notes ........................................................................................40

## ARTICLE VI
## THE INDENTURE TRUSTEE AND THE SECURITIES ADMINISTRATOR

Section 6.01    Duties of Indenture Trustee and Securities Administrator ........................41
Section 6.02    Rights of Indenture Trustee and Securities Administrator ........................42
Section 6.03    Individual Rights of Indenture Trustee .....................................................45
Section 6.04    Indenture Trustee's and Securities Administrator's Disclaimer.............45
Section 6.05    Notice of Event of Default.........................................................................45
Section 6.06    Reports to Residual Certificateholders .....................................................45
Section 6.07    Compensation ...........................................................................................46
Section 6.08    Replacement of Indenture Trustee and the Securities Administrator...........46
Section 6.09    Successor Indenture Trustee and Securities Administrator by Merger .............47
Section 6.10    Appointment of Co-Indenture Trustee or Separate Indenture Trustee .............48
Section 6.11    Eligibility; Disqualification ......................................................................49
Section 6.12    Representations and Warranties..................................................................50

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

Section 6.13    Representations and Warranties...........................................................50
Section 6.14    Directions to Indenture Trustee and the Securities Administrator........................51
Section 6.15    The Agents.........................................................................................51

## ARTICLE VII
## NOTEHOLDERS' LISTS AND REPORTS

Section 7.01    Issuing Entity To Furnish Securities Administrator and Indenture Trustee
                Names and Addresses of Noteholders ...................................................52
Section 7.02    Preservation of Information; Communications to Noteholders...........................52
Section 7.03    Financial Information...........................................................................52
Section 7.04    Statements to Noteholders and Certificateholders.................................................52

## ARTICLE VIII
## ACCOUNTS, DISBURSEMENTS AND RELEASES

Section 8.01    Collection of Money .............................................................................56
Section 8.02    Officer's Certificate .............................................................................56
Section 8.03    Termination Upon Distribution to Noteholders....................................................56
Section 8.04    Release of Trust Estate.........................................................................56
Section 8.05    Surrender of Notes Upon Final Payment ...........................................................57
Section 8.06    Optional Redemption of the HELOCs..............................................................57

## ARTICLE IX
## SUPPLEMENTAL INDENTURES

Section 9.01    Supplemental Indentures Without Consent of Noteholders...............................60
Section 9.02    Supplemental Indentures With Consent of Noteholders.......................................61
Section 9.03    Execution of Supplemental Indentures ...........................................................63
Section 9.04    Effect of Supplemental Indenture ...............................................................63
Section 9.05    Conformity with Trust Indenture Act .............................................................63
Section 9.06    Reference in Notes to Supplemental Indentures....................................................63

## ARTICLE X
## TAX MATTERS

Section 10.01    Description of REMICs and Designation of REMIC Interests..............................64
Section 10.02    REMIC Elections and REMIC Distributions.......................................................65
Section 10.03    Allocation of Charge-Off Amounts. ...........................................................66
Section 10.04    Tax Administration. ..............................................................................67
Section 10.05    Tax Treatment of Net WAC Cap Rate Carryover Amounts...................................70

## ARTICLE XI
## MISCELLANEOUS

Section 11.01    Compliance Certificates and Opinions, etc...........................................71
Section 11.02    Form of Documents Delivered to Indenture Trustee ............................................72
Section 11.03    Acts of Noteholders ..............................................................................73
Section 11.04    Notices etc., to Indenture Trustee Issuing Entity, Securities Administrator,
                 Note Insurer and Rating Agencies .......................................................73

3

Section 11.05  Notices to Noteholders; Waiver...........................................................................74
Section 11.06  Conflict with Trust Indenture Act.........................................................................75
Section 11.07  Effect of Headings.................................................................................................75
Section 11.08  Successors and Assigns.........................................................................................75
Section 11.09  Separability ...........................................................................................................75
Section 11.10  Legal Holidays......................................................................................................75
Section 11.11  GOVERNING LAW..............................................................................................75
Section 11.12  Counterparts..........................................................................................................76
Section 11.13  Recording of Indenture .........................................................................................76
Section 11.14  Issuing Entity Obligation ......................................................................................76
Section 11.15  No Petition .............................................................................................................76
Section 11.16  Inspection..............................................................................................................76
Section 11.17  Benefits of Indenture.............................................................................................77
Section 11.18  Securities Administrator to Hold Policy ...............................................................77

EXHIBITS

| Exhibit A-1 | — | Form of Class A Notes |
| Exhibit A-2 | — | [Reserved] |
| Exhibit A-3 | — | Form of Class M Notes |
| Exhibit B | — | Mortgage Loan Schedule |
| Exhibit C | — | Form of Transferee Certificate |
| Exhibit D | — | Form of Transferor Certificate |
| Exhibit E | — | Form of Mortgage Loan Purchase Agreement |

4

This Indenture, dated as of February 28, 2006, is entered into among SACO I Trust 2006-1, a Delaware statutory trust, as Issuing Entity (the "Issuing Entity"), LaSalle Bank National Association, as Securities Administrator (the "Securities Administrator") and Citibank, N.A., as Indenture Trustee (the "Indenture Trustee").

WITNESSETH THAT:

Each party hereto agrees as follows for the benefit of the other party and for the equal and ratable benefit of the Holders of the Issuing Entity's Mortgage-Backed Notes, Series 2006-1 (the "Notes") and the Note Insurer.

GRANTING CLAUSE

The Issuing Entity hereby Grants to the Indenture Trustee at the Closing Date, as trustee for the benefit of the Holders of the Notes and the Note Insurer, all of the Issuing Entity's right, title and interest in and to, whether now existing or hereafter created, (a) the HELOCs; (b) all funds on deposit from time to time in the Master Servicer Collection Account, excluding any investment income from such funds; (c) all funds on deposit from time to time in the Payment Account and in all proceeds thereof; (d) any REO Property; (e) all rights under (I) the Mortgage Loan Purchase Agreement as assigned to the Issuing Entity, with respect to the HELOCs, (II) the Required Insurance Policies and any amounts paid or payable by the insurer under any Insurance Policy (to the extent the mortgagee has a claim thereto) and (III) the rights with respect to the Sale and Servicing Agreement and the Servicing Agreement, as assigned to the Issuing Entity by the Assignment Agreement; and (f) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in respect of, any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in the conversion thereof, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, checks, deposit accounts, rights to payment of any and every kind, and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of any of the foregoing (collectively, the "Trust Estate" or the "Collateral").

In addition, the Securities Administrator, on behalf of the Holders of the Class A Notes, will have the benefit of the Policy.

The foregoing Grant is made in trust to secure the payment of principal of and interest on, and any other amounts owing in respect of, the Notes, subject to the priority set forth herein, and to secure compliance with the provisions of this Indenture, all as provided in this Indenture.

The Indenture Trustee, as trustee on behalf of the Holders of the Notes and the Note Insurer, acknowledges such Grant, accepts the trust under this Indenture in accordance with the provisions hereof and each of the Indenture Trustee and the Securities Administrator agree to perform their respective duties as Indenture Trustee and Securities Administrator as required herein. The Securities Administrator, on behalf of the Indenture Trustee, agrees that it will hold the Policy in trust and that it will hold any proceeds of any claim made upon the Policy solely for

5

the use and benefit of the Holders of the Class A Notes in accordance with the terms hereof and
the terms of the Policy.

6

ARTICLE I

DEFINITIONS

Section 1.01   Definitions.   For all purposes of this Indenture, except as otherwise expressly provided herein or unless the context otherwise requires, capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Definitions attached hereto as Appendix A which is incorporated by reference herein. All other capitalized terms used herein shall have the meanings specified herein.

Section 1.02   Incorporation by Reference of Trust Indenture Act.   Whenever this Indenture refers to a provision of the Trust Indenture Act (the "TIA"), the provision is incorporated by reference in and made a part of this Indenture.  The following TIA terms used in this Indenture have the following meanings:

"Commission" means the Securities and Exchange Commission.

"indenture securities" means the Notes.

"indenture security holder" means a Noteholder.

"indenture to be qualified" means this Indenture.

"indenture trustee" or "institutional trustee" means the Indenture Trustee.

"obligor" on the indenture securities means the Issuing Entity and any other obligor on the indenture securities.

All other TIA terms used in this Indenture that are defined by the TIA, defined by TIA reference to another statute or defined by Commission rules have the meanings assigned to them by such definitions.

Section 1.03   Rules of Construction. Unless the context otherwise requires:

(i)      a term has the meaning assigned to it;

(ii)     an accounting term not otherwise defined has the meaning assigned to it in accordance with generally accepted accounting principles as in effect from time to time;

(iii)    "or" is not exclusive;

(iv)     "including" means including without limitation;

(v)      words in the singular include the plural and words in the plural include the singular; and

(vi)     any agreement, instrument or statute defined or referred to herein or in any instrument or certificate delivered in connection herewith means such agreement, instrument or statute as from time to time amended, modified or supplemented and includes (in the case of

7

agreements or instruments) references to all attachments thereto and instruments incorporated therein; references to a Person are also to its permitted successors and assigns.

8

## ARTICLE II

## ORIGINAL ISSUANCE OF NOTES

Section 2.01    Form.    The Class A, Class M-1, Class M-2, Class M-3 and Class M-4 Notes, together with the Securities Administrator's certificate of authentication, shall be in substantially the form set forth in Exhibits A-1 and A-3 to this Indenture, as applicable, with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture.

The Notes shall be typewritten, printed, lithographed or engraved or produced by any combination of these methods (with or without steel engraved borders).

The terms of the Notes set forth in Exhibits A-1 and A-3 to this Indenture are part of the terms of this Indenture.

Section 2.02    Execution, Authentication and Delivery.    The Notes shall be executed on behalf of the Issuing Entity by any of its Authorized Officers. The signature of any such Authorized Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time Authorized Officers of the Issuing Entity shall bind the Issuing Entity, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of such Notes.

The Securities Administrator shall upon Issuing Entity Request authenticate and deliver each Class of Notes for original issue in an aggregate initial principal amount equal to the Initial Note Principal Balance for such Class of Notes.

Each of the Notes shall be dated the date of its authentication. The Notes shall be issuable as registered Notes in book-entry form, in the minimum initial Note Principal Balances of $100,000 and in integral multiples of $1 in excess thereof.

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless there appears on such Note a certificate of authentication substantially in the form provided for herein executed by the Securities Administrator by the manual signature of one of its authorized signatories, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been duly authenticated and delivered hereunder.

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

# ARTICLE III

# COVENANTS

Section 3.01    <u>Existence</u>. The Issuing Entity will keep in full effect its existence, rights and franchises as a statutory trust under the laws of the State of Delaware (unless it becomes, or any successor Issuing Entity hereunder is or becomes, organized under the laws of any other state or of the United States of America, in which case the Issuing Entity will keep in full effect its existence, rights and franchises under the laws of such other jurisdiction) and will obtain and preserve its qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture, the Notes and each other instrument or agreement included in the Trust Estate.

Section 3.02    <u>Payment of Principal and Interest</u>.

(a)    On each Payment Date, the Floating Allocation Percentage of the Interest Collection Amount for such Payment Date, reduced by the servicing and master servicing fees, will be distributed in the following order of priority:

1.  to the Note Insurer, the current and any past due premium due for the Policy;

2.  to the Class A Notes, the Current Interest and any Unpaid Interest Shortfall Amount for such Payment Date;

3.  to the Note Insurer, as reimbursement for prior draws (including applicable interest) made under the Policy;

4.  to the Class M-1, Class M-2, Class M-3 and Class M-4 Notes, in that order, the related Current Interest for such Class and Payment Date;

5.  from amounts otherwise distributable to the Class E Interest and the Class E Certificates, to the Classes of Notes, as a payment of principal, the amount necessary to build the Overcollateralization Amount to the Overcollateralization Target Amount, including covering the Floating Allocation Percentage of the Charge-Off Amounts during the related Collection Period;

6.  to cover any Charge-Off Amounts allocated to the Class A Notes (to the extent not covered by the Policy);

7.  to the Class M-1, Class M-2, Class M-3 and Class M-4 Notes, in that order, any Unpaid Interest Shortfall Amount for such Payment Date and such Class;

8.  from amounts otherwise distributable to the Class E Certificates, to the Net WAC Cap Rate Carryover Reserve Account, (i) first to pay the Class A Notes, Class M-1, Class M-2, Class M-3 and Class M-4 Notes, in that order, any Net WAC Cap Rate Carryover Amount for such Payment Date and such Class to the extent such amount exceeds the amounts then on deposit in the WAC Cap Rate Carryover Reserve Account, and (ii)

10

second, to maintain a balance equal to the Net WAC Cap Rate Carryover Reserve
Account Deposit;

9. to the Note Insurer, any other amounts owed to the Note Insurer pursuant to the Insurance
Agreement;

10. to the Class E Interest, and to the Certificate Paying Agent for distribution to the Class E
Certificates, as specified in the Trust Agreement, an amount equal to the Class E
Distribution Amount reduced by amounts distributed in clauses (5) and (8);

11. to the Certificate Paying Agent for distribution to the Residual Certificates, as specified
in the Trust Agreement.

(b)    (1)    On each Payment Date, the Class S Floating Allocation Percentage of the
Interest Collection Amount for such Payment Date shall be distributed to the holders of the
Class S Certificates.

(2)    On each Payment Date during the Managed Amortization Period, the
Class S Principal Payment Amount shall be distributed to the holders of the Class S
Certificates, until their Certificate Principal Balance has been reduced to zero.

(c)    On each Payment Date, the Available Principal Payment Amount will be
distributed as principal funds in the following order of priority:

(1)    For each Payment Date prior to the Stepdown Date or on which a Trigger
Event is in effect:

(i) to the Class A Notes, the Available Principal Payment Amount for such
Payment Date, until the Note Principal Balance thereof is reduced to zero;

(ii) to the Note Insurer, as reimbursement for prior draws (including
applicable interest) made under the Policy, to the extent not covered by the Interest Collection
Amount;

(iii) sequentially, to the Class M-1, Class M-2, Class M-3 and Class M-4
Notes, in that order, the remaining Available Principal Payment Amount, in each case until the
Note Principal Balance of each such Class has been reduced to zero;

(iv) during the Rapid Amortization Period, to the Class S Certificates, in
reduction of the Certificate Principal Balance thereof, until the Certificate Principal Balance is
reduced to zero;

(v) to the Note Insurer, any other amounts owed to the Note Insurer
pursuant to the Insurance Agreement; and

(vi) to the Certificate Paying Agent for distribution to the Certificates, as
specified in the Trust Agreement.

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

(2)    For each Payment Date on or after the Stepdown Date, so long as a Trigger Event is not in effect:

(i) to the Class A Notes, the Class A Principal Payment Amount, for such Payment Date, until the Note Principal Balance thereof is reduced to zero;

(ii) to the Note Insurer, as reimbursement for prior draws (including applicable interest) made under the Policy, to the extent not covered by the Interest Collection Amount;

(iii) to the Class M-1 Notes, the Class M-1 Principal Payment Amount for such Payment Date, until the Note Principal Balance thereof is reduced to zero;

(iv) to the Class M-2 Notes, the Class M-2 Principal Payment Amount for such Payment Date, until the Note Principal Balance thereof is reduced to zero;

(v) to the Class M-3 Notes, the Class M-3 Principal Payment Amount for such Payment Date, until the Note Principal Balance thereof is reduced to zero;

(vi) to the Class M-4 Notes, the Class M-4 Principal Payment Amount for such Payment Date, until the Note Principal Balance thereof is reduced to zero;

(vii) during the Rapid Amortization Period, to the Class S Certificates, in reduction of the Certificate Principal Balance thereof, until the Certificate Principal Balance is reduced to zero;

(viii) to the Note Insurer, any other amounts owed to the Note Insurer pursuant to the Insurance Agreement; and

(ix) to the Certificate Paying Agent for distribution to the Certificates, as specified in the Trust Agreement.

(d)    No Current Interest will be payable with respect to any Class of Notes after the Payment Date on which the Note Principal Balance of such Note has been reduced to zero.

(e)    Each distribution with respect to a Book-Entry Note shall be paid to the Depository, as Holder thereof, and the Depository shall be responsible for crediting the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures. Each Depository Participant shall be responsible for disbursing such distribution to the Note Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm" or "indirect participating firm") for which it acts as agent. Each brokerage firm shall be responsible for disbursing funds to the Note Owners that it represents. None of the Securities Administrator, the Note Registrar, the Paying Agent, the Depositor or the Master Servicer shall have any responsibility therefor.

(f)    On each Payment Date, the Certificate Paying Agent shall deposit in the Payment Account all amounts it received pursuant to this Section 3.02 for the purpose of distributing such funds to the Certificateholders. The Certificate Paying Agent shall make distributions to the

12

Certificateholders under the Trust Agreement as directed by the Securities Administrator hereunder.

(g)    Any installment of interest or principal, if any, payable on any Note that is punctually paid or duly provided for by the Issuing Entity on the applicable Payment Date shall, if such Holder shall have so requested at least five Business Days prior to the related Record Date, be paid to each Holder of record on the preceding Record Date, by wire transfer to an account specified in writing by such Holder as of the preceding Record Date or in all other cases or if no such instructions have been delivered to the Securities Administrator, by check to such Noteholder mailed to such Holder's address as it appears in the Note Register in the amount required to be distributed to such Holder on such Payment Date pursuant to such Holder's Notes; provided, however, that the Securities Administrator shall not pay to such Holders any amount required to be withheld from a payment to such Holder by the Code.

(h)    The Note Principal Balance of each Note shall be due and payable in full on the Final Scheduled Payment Date. All principal payments on the Notes shall be made to the Noteholders entitled thereto in accordance with the Percentage Interests represented by such Notes. Upon notice to the Securities Administrator by the Issuing Entity, the Securities Administrator shall notify the Person in whose name a Note is registered at the close of business on the Record Date preceding the Final Scheduled Payment Date or other final Payment Date (including any final Payment Date resulting from any redemption pursuant to Section 8.06 hereof). Such notice shall to the extent practicable be mailed no later than five Business Days prior to such Final Scheduled Payment Date or other final Payment Date and shall specify that payment of the principal amount and any interest due with respect to such Note at the Final Scheduled Payment Date or other final Payment Date will be payable only upon presentation and surrender of such Note and shall specify the place where such Note may be presented and surrendered for such final payment. No interest shall accrue on the Notes on or after the Final Scheduled Payment Date or any such other final Payment Date.

Section 3.03    Protection of Trust Estate. (a) The Issuing Entity will from time to time prepare, execute and deliver all such supplements and amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and will take such other action necessary or advisable to:

(i)    maintain or preserve the lien and security interest (and the priority thereof) of this Indenture or carry out more effectively the purposes hereof;

(ii)    perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

(iii)    cause the Issuing Entity or the Securities Administrator to enforce any of the rights to the HELOCs; or

(iv)    preserve and defend title to the Trust Estate and the rights of the Indenture Trustee, the Note Insurer and the Noteholders in such Trust Estate against the claims of all persons and parties.

13

(b) Except as otherwise provided in this Indenture, the Indenture Trustee shall not remove or permit the Custodian to remove any portion of the Trust Estate that consists of money or is evidenced by an instrument, certificate or other writing from the jurisdiction in which it was held at the date of the most recent Opinion of Counsel delivered pursuant to Section 3.04 hereof (or from the jurisdiction in which it was held as described in the Opinion of Counsel delivered on the Closing Date pursuant to Section 3.04(a) hereof, if no Opinion of Counsel has yet been delivered pursuant to Section 3.04(b) hereof), unless the Indenture Trustee shall have first received an Opinion of Counsel to the effect that the lien and security interest created by this Indenture with respect to such property will continue to be maintained after giving effect to such action or actions.

The Issuing Entity hereby designates the Securities Administrator its agent and attorney-in-fact to sign any financing statement, continuation statement or other instrument required to be signed pursuant to this Section 3.03 upon the Issuing Entity's preparation thereof and delivery to the Indenture Trustee.

Section 3.04    Opinions as to Trust Estate. (a) On the Closing Date, the Issuing Entity shall furnish to the Indenture Trustee, the Note Insurer and the Owner Trustee an Opinion of Counsel either stating that, in the opinion of such counsel, such action has been taken with respect to the recording and filing of this Indenture, any indentures supplemental hereto, and any other requisite documents, and with respect to the execution and filing of any financing statements and continuation statements, as are necessary to perfect and make effective the lien and first priority security interest in the Collateral and reciting the details of such action, or stating that, in the opinion of such counsel, no such action is necessary to make such lien and first priority security interest effective.

(b)    On or before December 31st in each calendar year, beginning in 2006, the Issuing Entity shall furnish to the Indenture Trustee and the Note Insurer an Opinion of Counsel at the expense of the Issuing Entity either stating that, in the opinion of such counsel, such action has been taken with respect to the recording, filing, rerecording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and with respect to the execution and filing of any financing statements and continuation statements as is necessary to maintain the lien and security interest in the Collateral and reciting the details of such action or stating that in the opinion of such counsel no such action is necessary to maintain such lien and security interest. Such Opinion of Counsel shall also describe the recording, filing, re-recording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and the execution and filing of any financing statements and continuation statements that will, in the opinion of such counsel, be required to maintain the lien and security interest in the Collateral until December 31 in the following calendar year.

Section 3.05    Performance of Obligations. (a)    The Issuing Entity will punctually perform and observe all of its obligations and agreements contained in this Indenture, the Basic Documents and in the instruments and agreements included in the Trust Estate.

(b)    The Issuing Entity, with the consent of the Note Insurer so long as no Note Insurer Default exists, may contract with other Persons to assist it in performing its duties under this Indenture, and any performance of such duties by a Person identified to the Indenture

14

Trustee in an Officer's Certificate of the Issuing Entity shall be deemed to be action taken by the Issuing Entity.

(c)    The Issuing Entity will not take any action or permit any action to be taken by others which would release any Person from any of such Person's covenants or obligations under any of the documents relating to the HELOCs or under any instrument included in the Trust Estate, or which would result in the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any of the documents relating to the HELOCs or any such instrument, except such actions as the Master Servicer is expressly permitted to take in the Sale and Servicing Agreement.

(d)    The Issuing Entity may retain an administrator and may enter into contracts acceptable to the Note Insurer with other Persons for the performance of the Issuing Entity's obligations hereunder, and performance of such obligations by such Persons shall be deemed to be performance of such obligations by the Issuing Entity.

(e)    The Issuing Entity will perform and observe all of its obligations and agreements contained in this Indenture, the Basic Documents and in the instruments and agreements included in the Trust Estate and take such other actions, all as may be required to have the Trust Estate qualify as one or more REMICs formed pursuant to the Indenture.

Section 3.06    Negative Covenants.  So long as any Notes are Outstanding, the Issuing Entity shall not:

(i)    except as expressly permitted by this Indenture, sell, transfer, exchange or otherwise dispose of the Trust Estate without the consent of the Note Insurer (if applicable);

(ii)    (A) permit the validity or effectiveness of this Indenture to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to the Notes under this Indenture except as may be expressly permitted hereby, (B) permit any lien, charge, excise, claim, security interest, mortgage or other encumbrance (other than the lien of this Indenture) to be created on or extend to or otherwise arise upon or burden the Trust Estate or any part thereof or any interest therein or the proceeds thereof or (C) permit the lien of this Indenture not to constitute a valid first priority security interest in the Trust Estate;

(iii)    waive or impair, or fail to assert rights under, the HELOCs, or impair or cause to be impaired the Issuing Entity's interest in the HELOCs, the Mortgage Loan Purchase Agreement or in any Basic Document, if any such action would materially and adversely affect the interests of the Noteholders, the Certificateholders or the Note Insurer; or

(iv)    take any action or fail to take any action that would cause any REMIC created hereunder to cease to qualify as a REMIC or result in an imposition of tax on the Issuing Entity (including, but not limited to, the tax on prohibited transactions under Section 860F of the Code).

Section 3.07    Annual Statement as to Compliance.  The Issuing Entity will deliver to the Indenture Trustee, the Securities Administrator and the Note Insurer, by March 1 of each year

commencing with the calendar year 2007, an Officer's Certificate stating, as to the Authorized Officer signing such Officer's Certificate, that:

(i)    a review of the activities of the Issuing Entity during the previous calendar year and of its performance under this Indenture and the Trust Agreement has been made under such Authorized Officer's supervision; and

(ii)    to the best of such Authorized Officer's knowledge, based on such review, the Issuing Entity has complied with all conditions and covenants under this Indenture and the provisions of the Trust Agreement throughout such year, or, if there has been a default in its compliance with any such condition or covenant, specifying each such default known to such Authorized Officer and the nature and status thereof.

Section 3.08    <u>Representations and Warranties Concerning the HELOCs</u>.  The Indenture Trustee, as pledgee of the HELOCs, has the benefit of the representations and warranties made by the Seller in the Mortgage Loan Purchase Agreement concerning the Seller and the HELOCs. If a Responsible Officer of the Indenture Trustee has actual knowledge of any breach of any representation or warranty made by the Seller in the Mortgage Loan Purchase Agreement, or any Subsequent Mortgage Loan Purchase Agreement, the Indenture Trustee shall promptly notify the Seller and the Note Insurer of such finding and of the Seller's obligation to cure such defect or repurchase or substitute for the related HELOC.

Section 3.09    <u>Investment Company Act</u>.  The Issuing Entity shall not become an "investment company" or be under the "control" of an "investment company" as such terms are defined in the Investment Company Act of 1940, as amended (or any successor or amendatory statute), and the rules and regulations thereunder (taking into account not only the general definition of the term "investment company" but also any available exceptions to such general definition); provided, however, that the Issuing Entity shall be in compliance with this Section 3.09 if it shall have obtained an order exempting it from regulation as an "investment company" so long as it is in compliance with the conditions imposed in such order.

Section 3.10    <u>No Other Business</u>.  The Issuing Entity shall not engage in any business other than as set forth with respect thereto in the Trust Agreement and other than financing, purchasing, owning and selling and managing the HELOCs and the issuance of the Notes and Certificates in the manner contemplated by this Indenture and the Basic Documents and all activities incidental thereto.

Section 3.11    <u>No Borrowing</u>.  The Issuing Entity shall not issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness except for the Notes under this Indenture and amounts due to the Note Insurer.

Section 3.12    <u>Guarantees, Loans, Advances and Other Liabilities</u>.    Except as contemplated by this Indenture or the Basic Documents, the Issuing Entity shall not make any loan or advance or credit to, or guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire

16

(or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other Person.

Section 3.13   Capital Expenditures.  The Issuing Entity shall not make any expenditure (by long-term or operating lease or otherwise) for capital assets (either realty or personalty).

Section 3.14   Determination of Note Interest Rate.

On each Interest Determination Date, the Securities Administrator shall determine One-Month LIBOR and the related Note Interest Rate for each Class of Notes for the following Accrual Period and shall make such rate available to the Issuing Entity, the Indenture Trustee, the Master Servicer, the Note Insurer and the Depositor. The establishment of One-Month LIBOR on each Interest Determination Date by the Securities Administrator and the Securities Administrator's calculation of the rate of interest applicable to each Class of Notes for the related Accrual Period shall (in the absence of manifest error) be final and binding.

Section 3.15   Restricted Payments.  The Issuing Entity shall not, directly or indirectly, (i) pay any dividend or make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof, to the Owner Trustee or any owner of a beneficial interest in the Issuing Entity or otherwise with respect to any ownership or equity interest or security in or of the Issuing Entity, (ii) redeem, purchase, retire or otherwise acquire for value any such ownership or equity interest or security or (iii) set aside or otherwise segregate any amounts for any such purpose; provided, however, that the Issuing Entity may make, or cause to be made, (x) distributions and payments to the Owner Trustee, the Indenture Trustee, the Securities Administrator, the Master Servicer, the Servicers, the Certificate Registrar, the Certificate Paying Agent, the Noteholders, the Note Insurer and the Certificateholders as contemplated by, and to the extent funds are available for such purpose under this Indenture and the Basic Documents and (y) payments to the Master Servicer and the Servicers pursuant to the terms of the Sale and Servicing Agreement or the Servicing Agreement, as applicable. The Issuing Entity will not, directly or indirectly, make payments to or distributions from the Master Servicer Collection Account or the Payment Account except in accordance with this Indenture and the Basic Documents.

Section 3.16   Notice of Events of Default.  The Issuing Entity shall give the Indenture Trustee, the Securities Administrator, the Note Insurer and each Rating Agency prompt written notice of each Event of Default hereunder.

Section 3.17   Further Instruments and Acts.  Upon request of the Indenture Trustee or the Note Insurer, the Issuing Entity will execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purpose of this Indenture.

Section 3.18   Certain Representations Regarding the Trust Estate.

(a)     With respect to that portion of the Collateral described in clauses (a) through (c) of the definition of Trust Estate, the Issuing Entity represents to the Indenture Trustee that:

17

(i)     This Indenture creates a valid and continuing security interest (as defined in the applicable UCC) in the Collateral in favor of the Indenture Trustee, which security interest is prior to all other liens, and is enforceable as such as against creditors of and purchasers from the Issuing Entity.

(ii)    The Collateral constitutes "deposit accounts," "instruments" or "certificated securities," as applicable within the meaning of the applicable UCC.

(iii)   The Issuing Entity owns and has good and marketable title to the Collateral, free and clear of any lien, claim or encumbrance of any Person.

(iv)    The Issuing Entity has caused or will have caused, within ten days of the Closing Date, the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect the security interest in the Collateral granted to the Indenture Trustee hereunder.

(v)     Other than the security interest granted to the Indenture Trustee pursuant to this Indenture, the Issuing Entity has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Collateral.  The Issuing Entity has not authorized the filing of and is not aware of any financing statements against the Issuing Entity that include a description of collateral covering the Collateral other than any financing statement relating to the security interest granted to the Indenture Trustee hereunder or that has been terminated.

(vi)    The Collateral is not in the name of any Person other than the Issuing Entity or the Indenture Trustee.  The Issuing Entity has in its possession all original copies of the security certificates that constitute or evidence the Collateral.  The security certificates that constitute or evidence the Collateral do not have any marks or notations indicating that they have been pledged, assigned or otherwise conveyed to any Person other than the Indenture Trustee.  The Issuing Entity has not consented to the bank maintaining the Collateral to comply with instructions of any Person other than the Indenture Trustee.

Section 3.19   Allocation of Charge-Off Amounts.  (a)  On or prior to each Payment Date, the Master Servicer shall determine, based solely on information provided to it by the related Servicer the amount of any Charge-Off Amount in respect of each HELOC that occurred during the immediately preceding calendar month.

(b)     The Floating Allocation Percentage of Charge-Off Amounts on the HELOCs will be applied on any Payment Date as follows:

*first*, to any available Interest Collection Amount through an increase in the Overcollateralization Amount as provided in Section 3.02(a)(5) hereof; and

*second*, in reduction of the Overcollateralization Amount until reduced to zero.

(c)     If on any Payment Date, as a result of the Charge-Off Amounts, the sum of the aggregate Note Principal Balances of the Notes exceeds the Invested Amount as of the last day of the related Collection Period, such excess shall be allocated to the Notes in the following order:

18

*first*, to the Class M-4 Notes, until the Note Principal Balance thereof has been reduced to zero;

*second*, to the Class M-3 Notes, until the Note Principal Balance thereof has been reduced to zero;

*third*, to the Class M-2 Notes, until the Note Principal Balance thereof has been reduced to zero;

*fourth*, to the Class M-1 Notes, until the Note Principal Balance thereof has been reduced to zero; and

*fifth*, to the Class A Notes, until the Note Principal Balance thereof has been reduced to zero;

provided, however, that any Charge-Off Amounts allocated to the Class A Notes shall be covered by the Policy.

(d)     Once Charge-Off Amounts have been allocated to a Class of Notes, such amounts with respect to such Notes will no longer accrue interest nor will such amounts in respect of interest be reinstated thereafter.

(e)     Charge-Off Amounts shall be allocated on the Payment Date in the month following the month in which such loss was incurred and, in the case of the principal portion thereof, after giving effect to distributions made on such Payment Date.

(f)     In addition, in the event that the related Servicer receives any Subsequent Recoveries, such Subsequent Recoveries shall be remitted to the Master Servicer and then distributed by the Securities Administrator pursuant to Section 3.02 of this Indenture.

(g)     The Class S Floating Allocation Percentage of Charge-Off Amounts shall be applied on any Payment Date to the Class S Certificates.

Section 3.20     Claims on the Policy; Policy Payments Account.

(a)     The Securities Administrator shall establish the Policy Payments Account. The Securities Administrator shall deposit upon receipt any amount paid under the Policy in the Policy Payments Account and use that amount only to pay the Class A Notes the Insured Amounts for which a claim was made. Such amount may not be applied to satisfy any costs, expenses, or liabilities of the Master Servicer, the Securities Administrator, the Indenture Trustee or the Issuing Entity (other than payments of principal and interest on the Class A Notes). Amounts paid under the Policy, to the extent needed to pay any Deficiency Amount, shall be transferred to the Payment Account on the related Payment Date, and the portion thereof representing the Deficiency Amount shall be disbursed by the Securities Administrator to the Holders of the Class A Notes, in each case as if it were a payment to such Noteholders pursuant to Section 3.02. Payments from draws on the Policy need not be made by checks or wire transfers separate from the checks or wire transfers used to pay other payments to the Holders of the Class A Notes. However, the amount of any payment of principal of or interest on the Class

19

A Notes to be paid from funds transferred from the Policy Payments Account shall be noted as provided in paragraph (d) below and in the statement to be furnished to Holders of the Notes pursuant to Section 7.04. Funds held in the Policy Payments Account shall not be invested. Any funds remaining in the Policy Payments Account on the first Business Day following the later of the Payment Date and the Business Day after the day on which a payment on the Policy has been paid to the Holders of the Class A Notes shall be returned to the Note Insurer, pursuant to the instructions of the Note Insurer, by the end of the Business Day.

(b)     If the Securities Administrator has determined that an Insured Amount is required to be paid under the Policy with respect to a Payment Date, it shall deliver a notice (substantially in the form of the Payment Notice under Financial Guaranty Insurance Policy No. CA02695A included as Exhibit A to the Policy) to the Note Insurer no later than 10:00 A.M., New York, New York City time on the second Business Day preceding the Payment Date and shall provide a copy of such notice to the Master Servicer at the time the Payment Notice is delivered to the Note Insurer.  That notice (substantially in the form of the Payment Notice under Financial Guaranty Insurance Policy No. CA02695A included as Exhibit A to the Policy) shall constitute a claim for payment pursuant to the Policy.

(c)     If the Securities Administrator receives a certified copy of a final order of a court exercising jurisdiction in an Insolvency Proceeding (as defined in the Policy) (an "Order") that any prior payment made on the Class A Notes constitutes an Avoided Payment (as defined in the Policy), the Securities Administrator shall so notify the Note Insurer, shall comply with the Policy to obtain payment by the Note Insurer of the Avoided Payment, and shall, at the time it provides notice to the Note Insurer, notify each Holder of the affected Notes by mail that, subject to the terms of the Policy, the Note Insurer will disburse the Avoided Payment directly to the receiver, conservator, debtor-in-possession, or trustee in bankruptcy named in the Order (unless a Holder of the Class A Notes has provided evidence satisfactory to the Note Insurer that it has previously paid such amount to the receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order, in which case such payment shall be disbursed to the Securities Administrator) by 2:00 P.M., New York City time on the Business Day following the delivery to the Securities Administrator on behalf of the Noteholder of (1) a certified copy of the Order to the effect that the Securities Administrator or such Noteholder, as applicable, is required to return such Avoided Payment or portion thereof because such payment was avoided under applicable law, with respect to which order the appeal period has expired without an appeal having been filed, (2) an assignment substantially in the form of Exhibit B to the Policy, properly completed and executed and delivered by a Holder of the Class A Notes irrevocably assigning to the Note Insurer all rights and claims of such Holder relating to or arising under such Avoided Payment, and (3) a payment notice in the form of Exhibit A to the Policy appropriately completed and executed by the Securities Administrator. If the documents are received after 10:00 A.M., New York City time, on a Business Day, they will be considered received on the following Business Day.

A copy of the Policy shall be made available to each affected Class A Noteholder through the Securities Administrator, and the Securities Administrator shall furnish to the Note Insurer a copy of its records evidencing the payments that have been made by the Securities

20

Administrator in respect of any Avoided Payments paid by the Note Insurer and the dates on which the payments were made.

(d)    The Securities Administrator shall keep a complete and accurate record of the amount of interest and principal paid on the Class A Notes from moneys received under the Policy. The Note Insurer may inspect the records at reasonable times during normal business hours on two Business Days' notice to the Securities Administrator.

(e)    The Holders of the Class A Notes are not entitled to institute proceedings directly against the Note Insurer. Each Holder of the Class A Notes, by its purchase of Class A Notes, agrees that the Note Insurer may at any time during the continuation of any proceeding relating to an Avoided Payment, direct all matters relating to the Avoided Payment on its behalf, including the direction of any appeal of any order relating to the preference claim and the posting of any surety, supersedeas, or performance bond pending any appeal.

(f)    Any payments to the Note Insurer shall be made by wire transfer of immediately available funds to the following Federal Reserve Account (until the Note Insurer notifies the Securities Administrator of a change in the account information):

> Bank of America, N.A.
> 777 Main Street
> Hartford, CT 06115-2001
> ABA Number: 026009593
> For the Account of: XL Capital Assurance Inc.
> 1221 Avenue of the Americas, 31st Floor
> New York, NY 10020-1001
> Account #: 94278 35841
> Reference: Policy Number CA02695A

(g)    The Securities Administrator shall, upon retirement of the Class A Notes, furnish to the Note Insurer a notice of the retirement, and, after retirement of the Class A Notes and the expiration of the term of the Policy, surrender the Policy to the Note Insurer for cancellation.

(h)    The Securities Administrator shall hold the Policy in trust as agent for the Holders of the Class A Notes for the purpose of making claims on the Policy and distributing the proceeds of claims on the Policy. Neither the Policy nor the amounts paid on the Policy shall constitute part of the Trust Estate created by this Indenture. Each Holder of the Class A Notes, by accepting its Class A Notes, irrevocably appoints the Securities Administrator as attorney-in-fact to make claims on the Policy and to sign on its behalf any certification required with respect to any Payment Notice under the Policy.

(i)    Anything in this Indenture to the contrary notwithstanding, any payment with respect to principal of or interest on the Class A Notes that is made with money received pursuant to the Policy shall not be considered payment of the Class A Notes from the Issuing Entity. The Depositor, the Master Servicer, the Indenture Trustee and the Securities Administrator acknowledge, and each Holder of the Class A Notes by its acceptance of the Class A Notes agrees that, without the need for any further action on the part of the Note Insurer, the

21

Depositor, the Master Servicer, the Indenture Trustee, the Securities Administrator, or the Note Registrar

      (i)     to the extent the Note Insurer makes payments, directly or indirectly, on account of principal of or interest on the Class A Notes to the related Noteholders, the Note Insurer shall be fully subrogated to, and each such Noteholder hereby delegates and assigns to the Note Insurer, to the fullest extent permitted by law, the rights of such Noteholders to receive such principal and interest from the Issuing Entity, and

      (ii)    the Note Insurer shall be paid such amounts from the sources and in the manner provided in this Indenture for the payment of such amounts and as provided in this Indenture until full reimbursement of all Insured Payments and Avoided Payments (together with interest thereon at the Late Payment Rate from the date paid by the Note Insurer until the date of their reimbursement).

The Securities Administrator and the Master Servicer shall cooperate in all respects with any reasonable request by the Note Insurer for action to preserve or enforce the Note Insurer's rights or interests under this Indenture (without limiting the rights or affecting the interests of the Holders of the Class A Notes as otherwise provided in this Indenture).

ARTICLE IV

THE NOTES; SATISFACTION AND DISCHARGE OF INDENTURE

Section 4.01    The Notes. Each Class of Class A, Class M-1, Class M-2, Class M-3 and Class M-4 Notes shall be registered in the name of a nominee designated by the Depository. Beneficial Owners will hold interests in the Class A, Class M-1, Class M-2, Class M-3 and Class M-4 Notes through the book-entry facilities of the Depository in minimum initial Note Principal Balances of $100,000 and integral multiples of $1 in excess thereof.

The Indenture Trustee and Securities Administrator may for all purposes (including the making of payments due on the Notes) deal with the Depository as the authorized representative of the Beneficial Owners with respect to the Notes for the purposes of exercising the rights of Holders of the Notes hereunder. Except as provided in the next succeeding paragraph of this Section 4.01, the rights of Beneficial Owners with respect to the Notes shall be limited to those established by law and agreements between such Beneficial Owners and the Depository and Depository Participants. Except as provided in Section 4.08 hereof, Beneficial Owners shall not be entitled to definitive certificates for the Notes as to which they are the Beneficial Owners. Requests and directions from, and votes of, the Depository as Holder of the Notes shall not be deemed inconsistent if they are made with respect to different Beneficial Owners. The Securities Administrator may establish a reasonable record date in connection with solicitations of consents from or voting by Noteholders and give notice to the Depository of such record date. Without the consent of the Issuing Entity and the Securities Administrator, no Note may be transferred by the Depository except to a successor Depository that agrees to hold such Note for the account of the Beneficial Owners.

In the event the Depository Trust Company resigns or is removed as Depository, the Depositor may appoint a successor Depository. If no successor Depository has been appointed within 30 days of the effective date of the Depository's resignation or removal, each Beneficial Owner shall be entitled to certificates representing the Notes it beneficially owns in the manner prescribed in Section 4.08.

The Notes shall, on original issue, be executed on behalf of the Issuing Entity by the Owner Trustee, not in its individual capacity but solely as Owner Trustee, authenticated by the Securities Administrator and delivered by the Securities Administrator to or upon the order of the Issuing Entity.

Section 4.02    Registration of and Limitations on Transfer and Exchange of Notes; Appointment of Note Registrar and Certificate Registrar. The Issuing Entity shall cause to be kept at the Corporate Trust Office of the Securities Administrator a Note Register in which, subject to such reasonable regulations as it may prescribe, the Note Registrar shall provide for the registration of Notes and of transfers and exchanges of Notes as herein provided.

Subject to the restrictions and limitations set forth below, upon surrender for registration of transfer of any Note at the Corporate Trust Office of the Securities Administrator, the Issuing Entity shall execute and the Note Registrar shall authenticate and deliver, in the name of the

23

designated transferee or transferees, one or more new Notes in authorized initial Note Principal Balances evidencing the same Class and aggregate Percentage Interests.

Subject to the foregoing and Section 4.08, Notes may be exchanged for other Notes of like tenor and in authorized initial Note Principal Balances evidencing the same Class and aggregate Percentage Interests upon surrender of the Notes to be exchanged at the Corporate Trust Office of the Note Registrar. Whenever any Notes are so surrendered for exchange, the Issuing Entity shall execute and the Securities Administrator shall authenticate and deliver the Notes which the Noteholder making the exchange is entitled to receive. Each Note presented or surrendered for registration of transfer or exchange shall (if so required by the Note Registrar) be duly endorsed by, or be accompanied by a written instrument of transfer in form reasonably satisfactory to the Note Registrar duly executed by the Holder thereof or his attorney duly authorized in writing with such signature guaranteed by a commercial bank or trust company located or having a correspondent located in the city of New York. Notes delivered upon any such transfer or exchange will evidence the same obligations, and will be entitled to the same rights and privileges, as the Notes surrendered.

No service charge shall be made for any registration of transfer or exchange of Notes, but the Note Registrar shall require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any registration of transfer or exchange of Notes.

The Issuing Entity hereby appoints the Securities Administrator as (i) Certificate Registrar to keep at its Corporate Trust Office a Certificate Register pursuant to Section 3.09 of the Trust Agreement in which, subject to such reasonable regulations as it may prescribe, the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges thereof pursuant to Section 3.04 of the Trust Agreement and (ii) Note Registrar under this Indenture. The Securities Administrator hereby accepts such appointments.

Section 4.03    Mutilated, Destroyed, Lost or Stolen Notes.  If (i) any mutilated Note is surrendered to the Securities Administrator, or the Securities Administrator receives evidence to its satisfaction of the destruction, loss or theft of any Note, and (ii) there is delivered to the Securities Administrator such security or indemnity as may be required by it to hold the Issuing Entity, the Note Insurer and the Securities Administrator harmless, then, in the absence of notice to the Issuing Entity, the Note Registrar or the Securities Administrator that such Note has been acquired by a bona fide purchaser, and provided that the requirements of Section 8-405 of the UCC are met, the Issuing Entity shall execute, and upon its request the Securities Administrator shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Note, a replacement Note; provided, however, that if any such destroyed, lost or stolen Note, but not a mutilated Note, shall have become or within seven days shall be due and payable, instead of issuing a replacement Note, the Issuing Entity may pay such destroyed, lost or stolen Note when so due or payable without surrender thereof.  If, after the delivery of such replacement Note or payment of a destroyed, lost or stolen Note pursuant to the proviso to the preceding sentence, a bona fide purchaser of the original Note in lieu of which such replacement Note was issued presents for payment such original Note, the Issuing Entity, the Note Insurer and the Securities Administrator shall be entitled to recover such replacement Note (or such payment) from the Person to whom it was delivered or any Person taking such replacement Note from such Person to whom such replacement Note was delivered or any assignee of such Person,

24

except a bona fide purchaser, and shall be entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or expense incurred by the Issuing Entity, the Indenture Trustee, the Note Insurer or the Securities Administrator in connection therewith.

Upon the issuance of any replacement Note under this Section 4.03, the Issuing Entity or the Securities Administrator may require the payment by the Holder of such Note of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other reasonable expenses (including the fees and expenses of the Securities Administrator) connected therewith.

Every replacement Note issued pursuant to this Section 4.03 in replacement of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Issuing Entity, whether or not the mutilated, destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section 4.03 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

Section 4.04    Persons Deemed Owners.    Prior to due presentment for registration of transfer of any Note, the Issuing Entity, the Note Insurer, the Indenture Trustee, the Securities Administrator, the Paying Agent and any agent of the Issuing Entity or the Securities Administrator or the Paying Agent may treat the Person in whose name any Note is registered (as of the day of determination) as the owner of such Note for the purpose of receiving payments of principal of and interest, if any, on such Note and for all other purposes whatsoever, whether or not such Note be overdue, and none of the Issuing Entity, the Indenture Trustee, the Securities Administrator, the Note Insurer, the Paying Agent or any agent of the Issuing Entity, the Securities Administrator, the Indenture Trustee, the Note Insurer or the Paying Agent shall be affected by notice to the contrary.

Section 4.05    Cancellation.    All Notes surrendered for payment, registration of transfer, exchange or redemption shall, if surrendered to any Person other than the Securities Administrator, be delivered to the Securities Administrator and shall be promptly cancelled by the Securities Administrator. The Issuing Entity may at any time deliver to the Securities Administrator for cancellation any Notes previously authenticated and delivered hereunder which the Issuing Entity may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly cancelled by the Securities Administrator. No Notes shall be authenticated in lieu of or in exchange for any Notes cancelled as provided in this Section 4.05, except as expressly permitted by this Indenture. All cancelled Notes may be held or disposed of by the Securities Administrator in accordance with its standard retention or disposal policy as in effect at the time unless the Issuing Entity shall direct by an Issuing Entity Request that they be destroyed or returned to it; provided, however, that such Issuing Entity Request is timely and the Notes have not been previously disposed of by the Securities Administrator.

Section 4.06    Book-Entry Notes.  The Class A, Class M-1, Class M-2, Class M-3 and Class M-4 Notes, upon original issuance, will be issued in the form of typewritten Notes representing the Book-Entry Notes, to be delivered to The Depository Trust Company, the initial Depository or to the Securities Administrator, as custodian for the Depository Trust Company, by, or on behalf of, the Issuing Entity. The Notes shall initially be registered on the Note Register in the name of Cede & Co., the nominee of the initial Depository, and no Beneficial Owner will receive a Definitive Note representing such Beneficial Owner's interest in such Note, except as provided in Section 4.08. With respect to such Notes, unless and until definitive, fully registered Notes (the "Definitive Notes") have been issued to Beneficial Owners pursuant to Section 4.08:

(i)    the provisions of this Section 4.06 shall be in full force and effect;

(ii)    the Note Registrar, the Paying Agent, the Indenture Trustee and the Securities Administrator shall be entitled to deal with the Depository for all purposes of this Indenture (including the payment of principal of and interest on the Notes and the giving of instructions or directions hereunder) as the sole holder of the Notes, and shall have no obligation to the Beneficial Owners of the Notes;

(iii)    to the extent that the provisions of this Section 4.06 conflict with any other provisions of this Indenture, the provisions of this Section 4.06 shall control;

(iv)    the rights of Beneficial Owners shall be exercised only through the Depository and shall be limited to those established by law and agreements between such Owners of Notes and the Depository and/or the Depository Participants. Unless and until Definitive Notes are issued pursuant to Section 4.08, the initial Depository will make book-entry transfers among the Depository Participants and receive and transmit payments of principal of and interest on the Notes to such Depository Participants; and

(v)    whenever this Indenture requires or permits actions to be taken based upon instructions or directions of Holders of Notes evidencing a specified percentage of the Note Principal Balances of the Notes, the Depository shall be deemed to represent such percentage with respect to the Notes only to the extent that it has received instructions to such effect from Beneficial Owners and/or Depository Participants owning or representing, respectively, such required percentage of the beneficial interest in the Notes and has delivered such instructions to the Securities Administrator and the Indenture Trustee.

None of the Depositor, the Issuing Entity, the Master Servicer, the Seller, the Securities Administrator, the Indenture Trustee, the Note Registrar and the Owner Trustee shall have any liability for any aspect of the records relating to or payments made on account of beneficial ownership interests in the Book-Entry Notes or for maintaining, supervising or reviewing any records relating to beneficial ownership interests or transfers thereof.

Section 4.07    Notices to Depository.  Whenever a notice or other communication to the Note Holders is required under this Indenture, unless and until Definitive Notes shall have been issued to Beneficial Owners pursuant to Section 4.08, the Indenture Trustee or Securities Administrator, as applicable, shall give all such notices and communications specified herein to

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

be given to Holders of the Notes to the Depository, and shall have no obligation to the Beneficial Owners.

Section 4.08   Definitive Notes.  If (i) the Depositor advises the Securities Administrator in writing that the Depository is no longer willing or able to properly discharge its responsibilities with respect to the Book-Entry Notes and the Depositor is unable to locate a qualified successor within 30 days or (ii) the Depositor, at its option (with the consent of the Securities Administrator, such consent not to be unreasonably withheld) elects to terminate the book-entry system through the Depository, then the Securities Administrator shall request that the Depository notify all Beneficial Owners of the occurrence of any such event and of the availability of Definitive Notes to Beneficial Owners requesting the same.  Upon surrender to the Securities Administrator of the typewritten Notes representing the Book-Entry Notes by the Depository, accompanied by registration instructions, the Issuing Entity shall execute and the Securities Administrator shall authenticate the Definitive Notes in accordance with the instructions of the Depository.  None of the Issuing Entity, the Note Registrar or the Securities Administrator shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected in relying on, such instructions.  Upon the issuance of Definitive Notes, the Securities Administrator shall recognize the Holders of the Definitive Notes as Noteholders.

In addition, if an Event of Default has occurred and is continuing, each Note Owner materially adversely affected thereby may at its option request a Definitive Note evidencing such Noteholder's interest in the related Class of Notes.  In order to make such request, such Noteholder shall, subject to the rules and procedures of the Depository, provide the Depository or the related Depository Participant with directions for the Securities Administrator to exchange or cause the exchange of the Noteholder's interest in such Class of Notes for an equivalent interest in fully registered definitive form.  Upon receipt by the Securities Administrator of instructions from the Depository directing the Securities Administrator to effect such exchange (such instructions to contain information regarding the Class of Notes and the Note Principal Balance being exchanged, the Depository Participant account to be debited with the decrease, the registered holder of and delivery instructions for the Definitive Note, and any other information reasonably required by the Securities Administrator), (i) the Securities Administrator shall instruct the Depository to reduce the related Depository Participant's account by the aggregate Note Principal Balance of the Definitive Note, (ii) the Securities Administrator shall execute, authenticate and deliver, in accordance with the registration and delivery instructions provided by the Depository, a Definitive Note evidencing such Noteholder's interest in such Class of Notes and (iii) the Issuing Entity shall execute and the Securities Administrator shall authenticate a new Book-Entry Note reflecting the reduction in the Note Principal Balance of such Class of Notes by the amount of the Definitive Notes.

Section 4.09   Application of Trust Money.  All monies deposited with the Securities Administrator pursuant to this Indenture shall be held in trust and applied by it, in accordance with the provisions of the Notes and this Indenture, to the payment, either directly or through any Paying Agent or the Certificate Paying Agent as designee of the Issuing Entity, as the Securities Administrator may determine, to the Holders of Securities, of all sums due and to become due thereon for principal and interest or otherwise; but such monies need not be segregated from other funds except to the extent required herein or required by law.

27

Section 4.10    Subrogation and Cooperation. (a) The Issuing Entity and the Indenture Trustee acknowledge that (i) to the extent the Note Insurer makes payments under the Policy on account of principal of or interest on the Class A Notes, the Note Insurer will be fully subrogated to the rights of such Holders to receive such principal and interest from the Issuing Entity, and (ii) the Note Insurer shall be paid such principal and interest but only from the sources and in the manner provided herein and in the Insurance Agreement for the payment of such principal and interest.

(b)    The Indenture Trustee shall, so long as it is indemnified to its satisfaction, cooperate in all respects with any reasonable written request by the Note Insurer for action to preserve or enforce the Note Insurer's rights or interest under this Indenture or the Insurance Agreement, consistent with this Indenture and without limiting the rights of the Noteholders as otherwise set forth in the Indenture, including, without limitation, upon the occurrence and continuance of a default under the Insurance Agreement, a request to take any one or more of the following actions:

(i)    institute Proceedings for the collection of all amounts then payable on the Class A Notes, or under this Indenture in respect of the Class A Notes and all amounts payable under the Insurance Agreement, enforce any judgment obtained and collect from the Issuing Entity monies adjudged due;

(ii)    sell or cause to be sold the Trust Estate or any portion thereof or rights or interest therein, at one or more public or private Sales (as defined in Section 5.15 hereof) called and conducted in any manner permitted by law;

(iii)    institute Proceedings from time to time for the complete or partial foreclosure of this Indenture; and

(iv)    exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Note Insurer hereunder;

provided, however, action shall be taken pursuant to this Section 4.10 by the Indenture Trustee to preserve the Note Insurer's rights or interest under this Indenture or the Insurance Agreement only to the extent such action is available to the Class A Noteholders or the Note Insurer under other provisions of this Indenture.

Notwithstanding any provision of this Indenture to the contrary, so long as no Note Insurer Default exists, the Note Insurer shall at all times be treated as if it were the exclusive owner of all Class A Notes Outstanding for the purposes of all approvals, consents, waivers and the institution of any action and the written direction of all remedies, and the Indenture Trustee shall act in accordance with the written directions of the Note Insurer so long as it is indemnified therefor to its reasonable satisfaction.

Section 4.11    Repayment of Monies Held by Paying Agent. In connection with the satisfaction and discharge of this Indenture with respect to the Notes, all monies then held by any Person other than the Securities Administrator under the provisions of this Indenture with respect

[TPW: NYLEGAL:422682.7] 17297-00403 06/08/2006 03:32 PM

to such Notes shall, upon demand of the Issuing Entity, be paid to the Securities Administrator to be held and applied according to Section 3.02 and thereupon such Person shall be released from all further liability with respect to such monies.

Section 4.12    Temporary Notes.  Pending the preparation of any Definitive Notes, the Issuing Entity may execute and upon its written direction, the Securities Administrator may authenticate and make available for delivery, temporary Notes that are printed, lithographed, typewritten, photocopied or otherwise produced, in any denomination, substantially of the tenor of the Definitive Notes in lieu of which they are issued and with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Notes may determine, as evidenced by their execution of such Notes.

If temporary Notes are issued, the Issuing Entity will cause Definitive Notes to be prepared without unreasonable delay. After the preparation of the Definitive Notes, the temporary Notes shall be exchangeable for Definitive Notes upon surrender of the temporary Notes at the Corporate Trust Office of the Securities Administrator, without charge to the Holder. Upon surrender for cancellation of any one or more temporary Notes, the Issuing Entity shall execute and the Securities Administrator shall authenticate and make available for delivery, in exchange therefor, Definitive Notes of authorized denominations and of like tenor, class and aggregate principal amount. Until so exchanged, such temporary Notes shall in all respects be entitled to the same benefits under this Indenture as Definitive Notes.

Section 4.13    Representation Regarding ERISA.  By acquiring a Class A, Class M-1, Class M-2, Class M-3 or Class M-4 Notes or interest therein, each Holder of such Note or Beneficial Owner of any such interest will be deemed to represent that either (1) it is not acquiring such Note with Plan Assets or (2) (A) the acquisition, holding and transfer of such Note will not give rise to a nonexempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code and (B) the Notes are rated investment grade or better and such person believes that the Notes are properly treated as indebtedness without substantial equity features for purposes of the Department of Labor regulation 29 C.F.R. § 2510.3-101, and agrees to so treat the Notes. Alternatively, regardless of the rating of the Notes, such person may provide the Securities Administrator and the Note Registrar with an opinion of counsel, which opinion of counsel will not be at the expense of the Issuing Entity, the Seller, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the Note Registrar, the Master Servicer or any Servicer which opines that the acquisition, holding and transfer of such Note or interest therein is permissible under applicable law, will not constitute or result in a non-exempt prohibited transaction under ERISA or Section 4975 of the Code and will not subject the Issuing Entity, the Seller, the Depositor, the Owner Trustee, the Indenture Trustee, the Securities Administrator, the Note Registrar, the Master Servicer or any Servicer to any obligation in addition to those undertaken in the Indenture and the other Basic Documents.

[TPW: NYLEGAL:422682.7] 17297-00403 06/08/2006 03:32 PM

## ARTICLE V

## DEFAULT AND REMEDIES

Section 5.01    Events of Default.    The Issuing Entity shall deliver to the Indenture Trustee, the Securities Administrator and the Note Insurer, within five days after learning of the occurrence of a Default, written notice in the form of an Officer's Certificate of any event which with the giving of notice and the lapse of time would become an Event of Default under clause (ii), (iii) or (iv) of the definition of "Event of Default", its status and what action the Issuing Entity is taking or proposes to take with respect thereto. The Indenture Trustee shall not be deemed to have knowledge of any Default or Event of Default unless a Responsible Officer has actual knowledge thereof or unless written notice of such Default or Event of Default is received by a Responsible Officer and such notice references the Notes, the Trust Estate or this Indenture.

Section 5.02    Acceleration of Maturity; Rescission and Annulment.    If an Event of Default should occur and be continuing, then and in every such case the Indenture Trustee at the written direction of the Note Insurer or the Holders of Notes representing not less than a majority of the aggregate Note Principal Balance of the Notes may, with the written consent of the Note Insurer, declare the Notes to be immediately due and payable, by a notice in writing to the Issuing Entity (and to the Indenture Trustee if such notice is given by Noteholders), and upon any such declaration the unpaid Note Principal Balance of the Notes, together with accrued and unpaid interest thereon through the date of acceleration, shall become immediately due and payable; provided, however, that for purposes of this sentence and for purposes of this Article V, unless a Note Insurer Default exists, the Note Insurer may exercise the rights of all of the Holders of the Class A Notes.

At any time after such declaration of acceleration of maturity with respect to an Event of Default has been made and before a judgment or decree for payment of the money due has been obtained by the Indenture Trustee as hereinafter in this Article V provided, the Note Insurer or Holders of the Notes representing not less than a majority of the aggregate Note Principal Balance of each Class of Notes, with the written consent of the Note Insurer, so long as no Note Insurer Default exists, by written notice to the Issuing Entity and the Indenture Trustee, may, subject to Section 5.12, waive the related Event of Default and rescind and annul such declaration and its consequences if:

(i)    the Issuing Entity has paid or deposited with the Indenture Trustee or Securities Administrator a sum sufficient to pay:

(A)    all payments of principal of and interest on the Notes and all other amounts that would then be due hereunder or under the Notes if the Event of Default giving rise to such acceleration had not occurred;

(B)    all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and the Securities Administrator and their respective agents and counsel;

(C)    all amounts owed to the Note Insurer; and

30

(ii)    all Events of Default, other than the nonpayment of the principal of the Notes that has become due solely by such acceleration, have been cured or waived as provided in Section 5.12; provided, however, the Note Insurer, so long as no Note Insurer Default exists, may waive an Event of Default regardless of Section 5.02(i) above.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

Section 5.03    Collection of Indebtedness and Suits for Enforcement by Indenture Trustee.

(a)    The Issuing Entity covenants that if (i) default is made in the payment of any interest on any Note when the same becomes due and payable, and such default continues for a period of five days, or (ii) default is made in the payment of the principal of or any installment of the principal of any Note when the same becomes due and payable, the Issuing Entity shall, upon demand of the Indenture Trustee, at the direction of the Note Insurer, so long as no Note Insurer Default exists, or if a Note Insurer Default does exist, at the direction of the Holders of a majority of the aggregate Note Principal Balances of the Notes, pay to the Securities Administrator, for the benefit of the Holders of Notes and the Note Insurer, the whole amount then due and payable on the Notes for principal and interest, with interest at the applicable Note Interest Rate upon the overdue principal, and in addition thereto such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and the Securities Administrator and their respective agents and counsel and all amounts owed to the Note Insurer.

(b)    In case the Issuing Entity shall fail forthwith to pay such amounts upon such demand, the Indenture Trustee, in its own name and as trustee of an express trust, and at the direction of the Note Insurer, so long as no Note Insurer Default exists, subject to the provisions of Section 10.15 hereof, may institute a Proceeding for the collection of the sums so due and unpaid, and may prosecute such Proceeding to judgment or final decree, and may enforce the same against the Issuing Entity or other obligor upon the Notes and collect in the manner provided by law out of the property of the Issuing Entity or other obligor upon the Notes, wherever situated, the monies adjudged or decreed to be payable.

(c)    If an Event of Default occurs and is continuing, the Indenture Trustee, at the direction of the Note Insurer, so long as no Note Insurer Default exists subject to the provisions of Section 10.15 hereof, may, as more particularly provided in Section 5.04 hereof, in its discretion, proceed to protect and enforce its rights and the rights of the Noteholders and the Note Insurer by such appropriate Proceedings as directed in writing by the Note Insurer, so long as no Note Insurer Default exists, to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy or legal or equitable right vested in the Indenture Trustee by this Indenture or by law.

(d)    In case there shall be pending, relative to the Issuing Entity or any other obligor upon the Notes or any Person having or claiming an ownership interest in the Trust Estate, Proceedings under Title 11 of the United States Code or any other applicable federal or state

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuing Entity or its property or such other obligor or Person, or in case of any other comparable judicial Proceedings relative to the Issuing Entity or other obligor upon the Notes, or to the creditors or property of the Issuing Entity or such other obligor, the Indenture Trustee, at the direction of the Note Insurer, so long as no Note Insurer Default exists, irrespective of whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Indenture Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such Proceedings or otherwise:

(i)    to file and prove a claim or claims for the whole amount of principal and interest owing and unpaid in respect of the Notes and to the Note Insurer and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee (including any claim for reasonable compensation to the Indenture Trustee and each predecessor Indenture Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee, except as a result of negligence, willful misconduct or bad faith), the Note Insurer and of the Noteholders allowed in such Proceedings;

(ii)    unless prohibited by applicable law and regulations, to vote on behalf of the Holders of Notes in any election of a trustee, a standby trustee or Person performing similar functions in any such Proceedings;

(iii)    to collect and receive any monies or other property payable or deliverable on any such claims and to distribute all amounts received with respect to the claims of the Noteholders, the Note Insurer and of the Indenture Trustee on their behalf, and

(iv)    to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee, the Note Insurer or the Holders of Notes allowed in any judicial proceedings relative to the Issuing Entity, its creditors and its property;

and any trustee, receiver, liquidator, custodian or other similar official in any such Proceeding is hereby authorized by each of such Noteholders to make payments to the Securities Administrator, with the consent of the Note Insurer so long as no Note Insurer Default exists, and, in the event that the Indenture Trustee and the Securities Administrator shall consent to the making of payments directly to such Noteholders, to pay to the Indenture Trustee such amounts as shall be sufficient to cover reasonable compensation to the Indenture Trustee, each predecessor Indenture Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee and all amounts due to the Note Insurer.

(e)    Nothing herein contained shall be deemed to authorize the Indenture Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Noteholder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof or to authorize the Indenture Trustee to vote in respect of the claim of any

32

Noteholder in any such proceeding except, as aforesaid, to vote for the election of a trustee in
bankruptcy or similar Person.

(f)     All rights of action and of asserting claims under this Indenture, or under any of
the Notes, may be enforced by the Indenture Trustee without the possession of any of the Notes
or the production thereof in any trial or other Proceedings relative thereto, and any such action or
proceedings instituted by the Indenture Trustee shall be brought in its own name as trustee of an
express trust, and any recovery of judgment, subject to the payment of the expenses,
disbursements and compensation of the Indenture Trustee, each predecessor Indenture Trustee
and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the
Notes, subject to Section 5.05 hereof.

In any Proceedings brought by the Indenture Trustee with the consent of the Note Insurer
so long as no Note Insurer Default exists (and also any Proceedings involving the interpretation
of any provision of this Indenture to which the Indenture Trustee shall be a party), the Indenture
Trustee shall be held to represent all the Holders of the Notes, and it shall not be necessary to
make any Noteholder a party to any such Proceedings.

Section 5.04   Remedies; Priorities.   (a) If an Event of Default shall have occurred and
be continuing and if an acceleration has been declared and not rescinded pursuant to Section 5.02
hereof, the Indenture Trustee, subject to the provisions of Section 10.15 hereof, may, with the
consent of the Note Insurer so long as no Note Insurer Default exists, and shall, at the direction
of the Note Insurer, so long as the Note Insurer is not in default under the Policy, or at the written
direction of the Holders of a majority of the aggregate Note Principal Balances of the Notes then
outstanding with the consent of the Note Insurer, do one or more of the following (subject to
Section 5.05 hereof):

(i)     institute Proceedings in its own name and as trustee of an express trust for
the collection of all amounts then payable on the Notes and to the Note Insurer or under this
Indenture with respect thereto, whether by declaration or otherwise, and all amounts payable
under the Insurance Agreement, enforce any judgment obtained, and collect from the Issuing
Entity and any other obligor upon such Notes monies adjudged due;

(ii)     institute Proceedings from time to time for the complete or partial
foreclosure of this Indenture with respect to the Trust Estate;

(iii)     exercise any remedies of a secured party under the UCC and take any
other appropriate action to protect and enforce the rights and remedies of the Indenture Trustee
and the Holders of the Notes and the Note Insurer; and

(iv)     sell the Trust Estate or any portion thereof or rights or interest therein, at
one or more public or private sales called and conducted in any manner permitted by law;

provided, however, that the Indenture Trustee may not sell or otherwise liquidate the Trust Estate
following an Event of Default, unless (1)(A) the Indenture Trustee obtains the consents required
under Section 5.11 below, (B) the proceeds of such sale or liquidation distributable to the
Holders of the Notes are sufficient to discharge in full all amounts then due and unpaid upon
such Notes for principal and interest and to reimburse the Note Insurer for any amounts drawn

33

under the Policy and any other amounts due to the Note Insurer under the Insurance Agreement or (C) the Indenture Trustee determines that the HELOCs will not continue to provide sufficient funds for the payment of principal of and interest on the applicable Notes as they would have become due if the Notes had not been declared due and payable, and the Indenture Trustee obtains the consents required under Section 5.11 below and (2) the Securities Administrator complies with each of the requirements for a qualified liquidation under Section 860F of the Code set forth in Section 8.06(c) as if it were the Class E Certificateholder. In determining such sufficiency or insufficiency with respect to clause (B) and (C), the Indenture Trustee may, but need not, obtain and rely upon an opinion (obtained at the expense of the Trust) of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose. Notwithstanding the foregoing, any Sale of the Trust Estate shall be made subject to the continued servicing of the HELOCs by the related Servicer (other than the Servicer as to which an Event of Servicer Termination has occurred and is continuing) as provided in the Sale and Servicing Agreement. Notwithstanding any contrary provision of this Indenture, no Sale of the Trust Estate shall be made unless an Opinion of Counsel is rendered, addressed to the Indenture Trustee, the Note Insurer, the Securities Administrator and the Owner Trustee, to the effect that such Sale would not (i) result in the imposition of the tax on "prohibited transactions" as defined in sections 860F(a)(2) of any REMIC created hereunder or (ii) cause any REMIC created hereunder to fail to qualify as a REMIC at any time that any Notes or Certificates are outstanding.

If the Securities Administrator collects any money or property pursuant to this Article V, the Securities Administrator shall pay out the money or property in accordance with Section 3.02 hereof.

The Securities Administrator may fix a record date and Payment Date for any payment to Noteholders pursuant to this Section 5.04. With respect to any acceleration at the direction of the Note Insurer, the first Payment Date after the acceleration shall be the first Payment Date after the acceleration. At least 15 days before such record date, the Securities Administrator shall mail to each Noteholder a notice that states the record date, the Payment Date and the amount to be paid.

Section 5.05   Optional Preservation of the Trust Estate. If the Notes have been declared to be due and payable under Section 5.02 following an Event of Default and such declaration and its consequences have not been rescinded and annulled, the Indenture Trustee may, with the consent of the Note Insurer (which consent shall not be required if a Note Insurer Default exists), and shall, at the direction of the Note Insurer so long as no Note Insurer Default exists, elect to take and maintain possession of the Trust Estate. It is the desire of the parties hereto and the Noteholders that there be at all times sufficient funds for the payment of principal of and interest on the Notes and other obligations of the Issuing Entity, and the Indenture Trustee shall take such desire into account when determining whether or not to take and maintain possession of the Trust Estate. In determining whether to take and maintain possession of the Trust Estate, the Indenture Trustee may, but need not, obtain and rely upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose.

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

Section 5.06    <u>Limitation of Suits</u>.    So long as the majority Holder of the Class E Certificates owns 100% of the Securities, no Holder of any Note (other than the Note Insurer acting pursuant to Section 4.10 hereof) shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder. No Holder of any Note (other than the Note Insurer acting pursuant to Section 4.10 hereof) shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless and subject to the foregoing and the provisions of Section 10.15 hereof:

(i)    such Holder has previously given written notice to the Indenture Trustee of a continuing Event of Default;

(ii)    the Holders of not less than 25% of the aggregate Note Principal Balance of the Notes have made a written request to the Indenture Trustee to institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

(iii)    such Holder or Holders have offered to the Indenture Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in complying with such request;

(iv)    the Indenture Trustee, for 60 days after its receipt of such notice of request and offer of indemnity, has failed to institute such Proceedings;

(v)    such Holders have obtained consent of the Note Insurer; and

(vi)    no direction inconsistent with such written request has been given to the Indenture Trustee during such 60-day period by the Holders of a majority of the Note Principal Balances of the Notes.

It is understood and intended that no one or more Holders of Notes shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Holders of Notes or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under this Indenture, except in the manner herein provided.

Subject to the last paragraph of Section 5.11 herein, in the event the Indenture Trustee shall receive conflicting or inconsistent requests and indemnity from two or more groups of Holders of Notes, each representing less than a majority of the Note Principal Balances of the Notes, the Indenture Trustee shall take such action as requested by the Holders representing the highest amount (in the aggregate) of the Note Principal Balances, notwithstanding any other provisions of this Indenture.

Section 5.07    <u>Unconditional Rights of Noteholders To Receive Principal and Interest</u>. Notwithstanding any other provisions in this Indenture, the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest, if any, on such Note on or after the respective due dates thereof expressed in such Note or in this

[TPW: NYLEGAL:422682.7] 17297-00403 06/08/2006 03:32 PM

Indenture and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

Section 5.08    Restoration of Rights and Remedies.    If the Indenture Trustee or any Noteholder has instituted any Proceeding to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or abandoned for any reason or has been determined adversely to the Indenture Trustee, the Note Insurer or to such Noteholder, then and in every such case the Issuing Entity, the Note Insurer, the Indenture Trustee and the Noteholders shall, subject to any determination in such Proceeding, be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Indenture Trustee, the Note Insurer and the Noteholders shall continue as though no such Proceeding had been instituted.

Section 5.09    Rights and Remedies Cumulative.    No right or remedy herein conferred upon or reserved to the Indenture Trustee, to the Note Insurer or to the Noteholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 5.10    Delay or Omission Not a Waiver.    No delay or omission of the Indenture Trustee, the Note Insurer or any Holder of any Note to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article V or by law to the Indenture Trustee, the Note Insurer or to the Noteholders may be exercised from time to time, and as often as may be deemed expedient, by the Indenture Trustee or by the Noteholders, as the case may be.

Section 5.11    Control By Note Insurer and Noteholders.    The Note Insurer, unless a Note Insurer Default exists, or the Holders of a majority of the aggregate Note Principal Balances of Notes, if a Note Insurer Default exists, shall have the right to direct the time, method and place of conducting any Proceeding for any remedy available to the Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee; provided that:

(i)    such direction shall not be in conflict with any rule of law or with this Indenture;

(ii)    if a Note Insurer Default exists, any direction to the Indenture Trustee to sell or liquidate the Trust Estate shall be by Holders of Notes representing not less than 100% of the aggregate Note Principal Balance of the Notes or the Holders of 66 2/3% of the aggregate Note Principal Balance of each Class of Notes then outstanding, voting separately as set forth in Section 5.04(a) hereof; and

(iii)    the Indenture Trustee may take any other action deemed proper by the Indenture Trustee that is not inconsistent with such direction of the Holders of Notes representing a majority of the Note Principal Balances of the Notes.

Notwithstanding the rights of Noteholders set forth in this Section 5.11 the Indenture Trustee need not take any action that it determines might involve it in liability.

Section 5.12    Waiver of Past Defaults.   Prior to the declaration of the acceleration of the maturity of the Notes as provided in Section 5.02 hereof, the Note Insurer or the Holders of Notes representing not less than a majority of the aggregate Note Principal Balance of each Class of Notes, with the Note Insurer's written consent, may waive any past Event of Default and its consequences except an Event of Default (a) with respect to payment of principal of or interest on any of the Notes, (b) in respect of a covenant or provision hereof which cannot be modified or amended without the consent of the Holder of each Note, or (c) the waiver of which would materially and adversely affect the interests of the Note Insurer or modify its obligation under the Policy.  In the case of any such waiver, the Issuing Entity, the Indenture Trustee, the Note Insurer and the Holders of the Notes shall be restored to their former positions and rights hereunder, respectively, but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereto.

Upon any such waiver, any Event of Default arising therefrom shall be deemed to have been cured and not to have occurred for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereto.

Section 5.13    Undertaking for Costs.   All parties to this Indenture agree, and each Holder of any Note and each Beneficial Owner of any interest therein by such Holder's or Beneficial Owner's acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Indenture Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 5.13 shall not apply to (a) any suit instituted by the Indenture Trustee, (b) any suit instituted by any Noteholder, or group of Noteholders, in each case holding in the aggregate more than 10% of the Note Principal Balances of the Notes or (c) any suit instituted by any Noteholder for the enforcement of the payment of principal of or interest on any Note on or after the respective due dates expressed in such Note and in this Indenture.

Section 5.14    Waiver of Stay or Extension Laws.   The Issuing Entity covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead or in any manner whatsoever, claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and the Issuing Entity (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenants that it shall not hinder, delay or impede the execution of any power herein granted to the Indenture Trustee, but

37

will suffer and permit the execution of every such power as though no such law had been enacted.

Section 5.15   Sale of Trust Estate. (a) The power to effect any sale or other disposition (a "Sale") of any portion of the Trust Estate pursuant to Section 5.04 hereof is expressly subject to the provisions of Sections 5.04 and 5.11(ii) hereof and this Section 5.15. The power to effect any such Sale shall not be exhausted by any one or more Sales as to any portion of the Trust Estate remaining unsold, but shall continue unimpaired until the entire Trust Estate shall have been sold or all amounts payable on the Notes and under this Indenture and under the Insurance Agreement shall have been paid. The Indenture Trustee with the consent of the Note Insurer (which consent shall not be required if a Note Insurer Default exists) may from time to time postpone any public Sale by public announcement made at the time and place of such Sale. The Indenture Trustee hereby expressly waives its right to any amount fixed by law as compensation for any Sale.

(b)   The Indenture Trustee shall not in any private Sale sell the Trust Estate, or any portion thereof, unless

(1)   The Note Insurer, unless a Note Insurer Default exists, or the Holders of all Notes if a Note Insurer Default exists consent to or direct the Indenture Trustee to make, such Sale, or

(2)   the proceeds of such Sale would be not less than the entire amount which would be payable to the Noteholders under the Notes and the Note Insurer in respect of amounts drawn under the Policy and any other amounts due to the Note Insurer under the Insurance Agreement, in full payment thereof in accordance with Section 5.02 hereof, on the Payment Date next succeeding the date of such Sale, or

(3)   the Indenture Trustee determines that the conditions for retention of the Trust Estate set forth in Section 5.05 hereof cannot be satisfied (in making any such determination, the Indenture Trustee may rely upon an opinion of an Independent investment banking firm obtained and delivered as provided in Section 5.05 hereof), and the Note Insurer consents to such Sale, or if a Note Insurer Default exists, and the Holders of Notes representing at least 100% of the Note Principal Balances of the Notes consent to such Sale.

The purchase by the Indenture Trustee of all or any portion of the Trust Estate at a private Sale shall not be deemed a Sale or other disposition thereof for purposes of this Section 5.15(b).

(c)   Unless the Note Insurer, or if a Note Insurer Default exists, the Holders representing at least 100% of the aggregate Note Principal Balance of the Notes or the Holders of 66 2/3% of the aggregate Note Principal Balance of each Class of Notes then outstanding, voting separately as set forth in Section 5.11 hereof, have otherwise consented or directed the Indenture Trustee, at any public Sale of all or any portion of the Trust Estate at which a minimum bid equal to or greater than the amount described in paragraph (2) of subsection (b) of this Section 5.15 has not been established by the Indenture Trustee and no Person bids an amount equal to or greater than such amount, the Indenture Trustee, as trustee for the benefit of the Holders of the Notes,

38

shall bid an amount (which shall include the Indenture Trustee's right, in its capacity as Indenture Trustee, to credit bid) at least $1.00 more than the highest other bid in order to preserve the Trust Estate on behalf of the Noteholders.

(d)    In connection with a Sale of all or any portion of the Trust Estate,

(1)    any Holder or Holders of Notes or the Note Insurer may bid for and purchase the property offered for sale, and upon compliance with the terms of sale may hold, retain and possess and dispose of such property, without further accountability, and may, in paying the purchase money therefor, deliver any Notes or claims for interest thereon in lieu of cash up to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon, and such Notes, in case the amounts so payable thereon shall be less than the amount due thereon, shall be returned to the Holders thereof after being appropriately stamped to show such partial payment;

(2)    the Indenture Trustee, with the consent of the Note Insurer so long as no Note Insurer Default exists may bid for and acquire the property offered for Sale in connection with any Sale thereof, and, subject to any requirements of, and to the extent permitted by, applicable law in connection therewith, may purchase all or any portion of the Trust Estate in a private sale, and, in lieu of paying cash therefor, may make settlement for the purchase price by crediting the gross Sale price against the sum of (A) the amount which would be distributable to the Holders of the Notes and Holders of Certificates and amounts distributable to the Note Insurer on the Payment Date next succeeding the date of such Sale and (B) the expenses of the Sale and of any Proceedings in connection therewith which are reimbursable to it, without being required to produce the Notes in order to complete any such Sale or in order for the net Sale price to be credited against such Notes, and any property so acquired by the Indenture Trustee shall be held and dealt with by it in accordance with the provisions of this Indenture;

(3)    the Indenture Trustee shall execute and deliver an appropriate instrument of conveyance, prepared by the Issuing Entity and satisfactory to the Indenture Trustee, transferring its interest in any portion of the Trust Estate in connection with a Sale thereof; and

(4)    the Indenture Trustee is hereby irrevocably appointed the agent and attorney-in-fact of the Issuing Entity to transfer and convey its interest in any portion of the Trust Estate in connection with a Sale thereof, and to take all action necessary to effect such Sale.

(e)    So long as a single Holder of the Class E Certificates owns 100% of the Securities, the majority Holder of the Class E Certificates shall not consent to any Sale of the Trust Estate as set forth herein.

(f)    Notwithstanding any contrary provision of this Indenture, no Sale of the Trust Estate shall be made unless an Opinion of Counsel is rendered, addressed to the Indenture Trustee, the Note Insurer, the Securities Administrator and the Owner Trustee, to the effect that (i) such Sale would not (A) result in the imposition of the tax on "prohibited transactions" as

39

defined in sections 860F(a)(2) of any REMIC created hereunder or (B) cause any REMIC created hereunder to fail to qualify as a REMIC at any time that any Notes or Certificates are outstanding, or (ii) that the Securities Administrator has complied with the requirements for a "qualified liquidation" under section 860F of the Code set forth in Section 8.06(c) hereof as if it were the Class E Certificateholder.

Section 5.16   <u>Action on Notes</u>.   The Indenture Trustee's right to seek and recover judgment on the Notes or under this Indenture shall not be affected by the seeking, obtaining or application of any other relief under or with respect to this Indenture. Neither the lien of this Indenture nor any rights or remedies of the Indenture Trustee, the Noteholders or the Note Insurer shall be impaired by the recovery of any judgment by the Indenture Trustee against the Issuing Entity or by the levy of any execution under such judgment upon any portion of the Trust Estate or upon any of the assets of the Issuing Entity. Any money or property collected by the Indenture Trustee or the Securities Administrator shall be applied by the Securities Administrator in accordance with Section 5.04(b) hereof.

[TPW: NYLEGAL:422682.7] 17297-00403 06/08/2006 03:32 PM

ARTICLE VI

THE INDENTURE TRUSTEE AND THE SECURITIES ADMINISTRATOR

Section 6.01    Duties of Indenture Trustee and Securities Administrator. (a) If an Event of Default has occurred and is continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(b)    Except during the continuance of an Event of Default of which the Indenture Trustee has actual knowledge or has received written notice, in the case of the Indenture Trustee and, at any time, in the case of the Securities Administrator:

(i)    the Indenture Trustee and the Securities Administrator undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and the other Basic Documents to which it is a party and no implied covenants or obligations shall be read into this Indenture and the other Basic Documents against the Indenture Trustee or the Securities Administrator; and

(ii)    in the absence of bad faith on its part, the Indenture Trustee and the Securities Administrator may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, reports, documents, Issuing Entity Requests or other instruments or opinions furnished to the Indenture Trustee and/or the Securities Administrator and conforming to the requirements of this Indenture or the other Basic Documents; however, the Indenture Trustee and the Securities Administrator shall examine the certificates, reports, documents, Issuing Entity Requests or other instruments and opinions to determine whether or not they conform on their face to the requirements of this Indenture.

(c)    The Indenture Trustee and the Securities Administrator may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(i)    this paragraph does not limit the effect of paragraph (b) of this Section 6.01;

(ii)    neither the Indenture Trustee nor the Securities Administrator shall be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Indenture Trustee or the Securities Administrator, as applicable, was negligent in ascertaining the pertinent facts; and

(iii)    neither the Indenture Trustee nor the Securities Administrator shall  be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it from Noteholders, the Certificateholders or from the Issuing Entity, which they are entitled to give under the Basic Documents.

(d)    Neither the Indenture Trustee nor the Securities Administrator shall be liable for interest on any money received by it except as set forth in the Basic Documents and as the

41

Indenture Trustee or Securities Administrator, as applicable, may agree in writing with the Issuing Entity.

(e)   Money held in trust by the Indenture Trustee or Securities Administrator need not be segregated from other trust funds except to the extent required by law or the terms of this Indenture, the Sale and Servicing Agreement or the Trust Agreement.

(f)   No provision of this Indenture shall require the Indenture Trustee or the Securities Administrator to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or indemnity satisfactory to it against such risk or liability is not reasonably assured to it.

(g)   Every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee or Securities Administrator shall be subject to the provisions of this Section.

(h)   The Indenture Trustee shall not be deemed to have notice or knowledge of any Default or Event of Default unless a Responsible Officer of the Indenture Trustee has actual knowledge thereof or unless written notice of any such event that is in fact an Event of Default or Default is received by the Indenture Trustee at its Corporate Trust Office and such notice references the Notes or Certificates generally, the Issuing Entity, the Trust Estate or this Indenture.

Section 6.02   Rights of Indenture Trustee and Securities Administrator.   (a)   The Indenture Trustee and the Securities Administrator may rely on any document believed by it to be genuine and to have been signed or presented by the proper person. The Indenture Trustee and the Securities Administrator need not investigate any fact or matter stated in the document.

(b)   Before the Indenture Trustee or the Securities Administrator acts or refrains from acting, it may require an Officer's Certificate or an Opinion of Counsel. Neither the Indenture Trustee nor the Securities Administrator shall be liable for any action it takes or omits to take in good faith in reliance on and in accordance with an Officer's Certificate or Opinion of Counsel.

(c)   Neither the Indenture Trustee nor the Securities Administrator shall be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers.

(d)   The Indenture Trustee or the Securities Administrator may consult with counsel, and the written advice or Opinion of Counsel (which shall not be at the expense of the Indenture Trustee or the Securities Administrator) with respect to legal matters relating to this Indenture, the other Basic Documents and the Notes shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with the written advice or opinion of such counsel.

(e)   For the limited purpose of effecting any action to be undertaken by each of the Indenture Trustee and the Securities Administrator, but not specifically as a duty of the Indenture Trustee or the Securities Administrator in the Indenture, each of the Indenture Trustee and the

42

Securities Administrator may execute any of the trusts or powers hereunder or perform any duties hereunder, either directly or by or through agents, attorneys, custodians or nominees appointed with due care, and shall not be responsible for any willful misconduct or negligence on the part of any agent, attorney, custodian or nominee so appointed.

(f)     The Securities Administrator or its Affiliates are permitted to receive additional compensation that could be deemed to be in the Securities Administrator's economic self-interest for (i) serving as investment adviser, administrator, shareholder servicing agent, custodian or sub-custodian with respect to certain of the Permitted Investments, (ii) using Affiliates to effect transactions in certain Permitted Investments and (iii) effecting transactions in certain Permitted Investments. Such compensation shall not be considered an amount that is reimbursable or payable to the Securities Administrator (i) as part of the compensation hereunder or (ii) out of Available Funds.

(g)     Anything in this Indenture to the contrary notwithstanding, in no event shall the Indenture Trustee or the Securities Administrator be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Indenture Trustee or the Securities Administrator has been advised of the likelihood of such loss or damage and regardless of the form of action.

(h)     None of the Securities Administrator, the Issuing Entity or the Indenture Trustee shall be responsible for the acts or omissions of the other, it being understood that this Indenture shall not be construed to render them partners, joint venturers or agents of one another.

(i)     Neither the Indenture Trustee nor the Securities Administrator shall be required to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if there is reasonable ground for believing that the repayment of such funds or indemnity reasonably satisfactory to it against such risk or liability is not reasonably assured to it, and none of the provisions contained in this Indenture shall in any event require the Indenture Trustee or the Securities Administrator to perform, or be responsible for the manner of performance of, any of the obligations of the Master Servicer under the Sale and Servicing Agreement, except during such time, if any, as the Indenture Trustee shall be the successor to, and be vested with the rights, duties, powers and privileges of, the Master Servicer in accordance with the terms of the Sale and Servicing Agreement.

(j)     Except for those actions that the Indenture Trustee or the Securities Administrator are required to take hereunder, neither the Indenture Trustee nor the Securities Administrator shall have any obligation or liability to take any action or to refrain from taking any action hereunder in the absence of written direction as provided hereunder.

(k)     Neither the Indenture Trustee nor the Securities Administrator shall be under any obligation to exercise any of the trusts or powers vested in it by this Indenture, other than its obligation to give notices pursuant to this Indenture, or to institute, conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any of the Noteholders pursuant to the provisions of this Indenture, unless such Noteholders shall have offered to the Indenture Trustee or the Securities Administrator, as applicable, reasonable

security or indemnity against the costs, expenses and liabilities which may be incurred therein or thereby. Nothing contained herein shall, however, relieve the Indenture Trustee of the obligation, upon the occurrence of an Event of Default of which a Responsible Officer of the Indenture Trustee has actual knowledge (which has not been cured or waived), to exercise such of the rights and powers vested in it by this Indenture and to use the same degree of care and skill in their exercise as a prudent person would exercise under the circumstances in the conduct of his own affairs.

(l)      Neither the Indenture Trustee nor the Securities Administrator shall be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Note Insurer or Holders of Notes representing not less than 25% of the Note Principal Balance of the Notes and provided that the payment within a reasonable time to the Indenture Trustee or the Securities Administrator, as applicable, of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Indenture Trustee or the Securities Administrator, as applicable, reasonably assured to the Indenture Trustee by the security afforded to it by the terms of this Indenture. The Indenture Trustee or the Securities Administrator may require reasonable indemnity against such expense or liability as a condition to taking any such action. The reasonable expense of every such examination shall be paid by the Noteholders requesting the investigation.

(m)      Should the Indenture Trustee or the Securities Administrator deem the nature of any action required on its part to be unclear, the Indenture Trustee or the Securities Administrator, respectively, may require prior to such action that it be provided by the Depositor with reasonable further instructions.

(n)      The right of the Indenture Trustee or the Securities Administrator to perform any discretionary act enumerated in this Indenture shall not be construed as a duty, and neither the Indenture Trustee nor the Securities Administrator shall be accountable for other than its negligence or willful misconduct in the performance of any such act.

(o)      Neither the Indenture Trustee nor the Securities Administrator shall be required to give any bond or surety with respect to the execution of the trust created hereby or the powers granted hereunder.

(p)      Neither the Indenture Trustee nor the Securities Administrator shall have any duty to conduct any affirmative investigation as to the occurrence of any condition requiring the repurchase of any HELOC by the Seller pursuant to this Indenture, the Sale and Servicing Agreement or the Mortgage Loan Purchase Agreement, as applicable, or the eligibility of any HELOC for purposes of this Indenture.

(q)      The Indenture Trustee shall not be deemed to have notice or actual knowledge of any Default or Event of Default unless actually known to a Responsible Officer of the Indenture Trustee or written notice thereof (making reference to this Indenture or the Notes) is received by the Indenture Trustee at the Corporate Trust Office.

44

Section 6.03    Individual Rights of Indenture Trustee.    The Indenture Trustee in its individual or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Issuing Entity or its Affiliates with the same rights it would have if it were not Indenture Trustee, subject to the requirements of the Trust Indenture Act. Any Note Registrar, co-registrar or co-paying agent may do the same with like rights. However, the Indenture Trustee must comply with Section 6.11 hereof.

Section 6.04    Indenture Trustee's and Securities Administrator's Disclaimer.    Neither the Indenture Trustee nor the Securities Administrator shall be responsible for and makes no representation as to the validity or adequacy of this Indenture, the Notes or any other Basic Document, it shall not be accountable for the Issuing Entity's use of the proceeds from the Notes, and it shall not be responsible for any statement of the Issuing Entity in the Indenture or in any document issued in connection with the sale of the Notes or in the Notes other than the Securities Administrator's certificate of authentication.

Section 6.05    Notice of Event of Default.    Subject to Section 5.01, the Indenture Trustee shall promptly mail to each Noteholder and the Note Insurer notice of the Event of Default after it is known to a Responsible Officer of the Indenture Trustee, unless such Event of Default shall have been waived or cured. Except in the case of an Event of Default in payment of principal of or interest on any Note, the Indenture Trustee may withhold the notice if and so long as a committee of its Responsible Officers in good faith determines that withholding the notice is in the best interests of Noteholders.

Section 6.06    Reports to Residual Certificateholders.    The Securities Administrator shall furnish quarterly to the Holders of the Residual Certificates each applicable Form 1066Q and shall respond promptly to written requests made not more frequently than quarterly by any Holder of a Residual Certificate with respect to the following matters:

(i)    The original projected principal and interest cash flows on the Closing Date on each class of Regular Interests and Residual Interests created hereunder and on the HELOCs, based on the Prepayment Assumption;

(ii)    The projected remaining principal and interest cash flows as of the end of any calendar quarter with respect to each class of Regular Interests and Residual Interests created hereunder and the HELOCs, based on the Prepayment Assumption;

(iii)    The applicable Prepayment Assumption and any interest rate assumptions used in determining the projected principal and interest cash flows described above; and

(iv)    The original issue discount (or, in the case of the HELOCs, market discount) or premium accrued or amortized through the end of such calendar quarter with respect to each class of Regular Interests or Residual Interests created hereunder and to the HELOCs, together with each constant yield to maturity used in computing the same.

Certain information pursuant to clauses (i) and (iii) above shall be provided by the Depositor.

Section 6.07    <u>Compensation</u>. An annual fee shall be paid to the Indenture Trustee by the Master Servicer pursuant to a separate agreement between the Indenture Trustee and the Master Servicer. In addition, the Indenture Trustee and the Securities Administrator will each be entitled to recover from the Payment Account pursuant to Section 4.05 of the Sale and Servicing Agreement all reasonable out-of-pocket expenses, disbursements and advances and the expenses of the Indenture Trustee and the Securities Administrator, respectively, in connection with any breach of this Indenture or any claim or legal action (including any pending or threatened claim or legal action) or otherwise incurred or made by the Indenture Trustee or the Securities Administrator, respectively, in the administration of the trusts hereunder (including the reasonable compensation, expenses and disbursements of its counsel) except any such expense, disbursement or advance as may arise from its own negligence or intentional misconduct or which is the responsibility of the Noteholders as provided herein. Such compensation and reimbursement obligation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust. Additionally, each of the Indenture Trustee and the Securities Administrator (including in their individual capacity) and any director, officer, employee or agent of the Indenture Trustee or the Securities Administrator shall be indemnified by the Trust and held harmless against any loss, liability or expense (including reasonable attorney's fees and expenses) incurred in the administration of this Indenture (other than its ordinary out of pocket expenses incurred hereunder) or in connection with any claim or legal action relating to (a) the Basic Documents, (b) the Notes or (c) the HELOCs, other than any loss, liability or expense incurred by reason of its own negligence or intentional misconduct, or which is the responsibility of the Noteholders as provided herein.

The Issuing Entity's payment obligations to the Indenture Trustee and Securities Administrator pursuant to this Section 6.07 shall survive the discharge of this Indenture and the termination or resignation of the Indenture Trustee or Securities Administrator. When the Indenture Trustee or the Securities Administrator incurs expenses after the occurrence of an Event of Default with respect to the Issuing Entity, the expenses are intended to constitute expenses of administration under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or similar law.

Section 6.08    <u>Replacement of Indenture Trustee and the Securities Administrator</u>. No resignation or removal of the Indenture Trustee or the Securities Administrator and no appointment of a successor Indenture Trustee or a successor Securities Administrator shall become effective until the acceptance of appointment by the successor Indenture Trustee pursuant to this Section 6.08. The Indenture Trustee or the Securities Administrator may resign at any time by so notifying the Issuing Entity and the Note Insurer. In the event that the Indenture Trustee determines that a conflict of interest exists between the Holders of the Class A Notes and the Holders of any Class of Subordinate Notes, then the Indenture Trustee shall be entitled to resign as the indenture trustee for all Classes of Notes other than the Class A Notes. In such event the Holders of a majority of Note Principal Balances of all of the Subordinate Notes shall designate a separate indenture trustee to represent their interests hereunder. The Note Insurer or, if a Note Insurer Default exists, the Holders of a majority of Note Principal Balances of each Class of Notes may remove the Indenture Trustee by so notifying the Indenture Trustee and may appoint a successor Indenture Trustee. The Issuing Entity shall, with the consent of the Note Insurer so long as no Note Insurer Default exists remove the Indenture Trustee or the Securities Administrator, as applicable, if:

46

(i)    the Indenture Trustee or the Securities Administrator fails to comply with or qualify pursuant to the provisions of Section 6.11 hereof;

(ii)    the Indenture Trustee or the Securities Administrator is adjudged a bankrupt or insolvent;

(iii)    a receiver or other public officer takes charge of the Indenture Trustee or the Securities Administrator or its property;

(iv)    the Indenture Trustee or the Securities Administrator otherwise becomes incapable of acting; or

(v)    the Master Servicer is terminated pursuant to the Sale and Servicing Agreement.

If the Indenture Trustee or the Securities Administrator resigns or is removed or if a vacancy exists in the office of the Indenture Trustee or the Securities Administrator for any reason (the Indenture Trustee or the Securities Administrator in such event being referred to herein as the retiring Indenture Trustee or the retiring Securities Administrator ), the Issuing Entity shall, with the consent of the Note Insurer so long as no Note Insurer Default exists promptly appoint a successor Indenture Trustee or successor Securities Administrator.

Each of a successor Indenture Trustee or successor Securities Administrator shall deliver a written acceptance of its appointment to the retiring Indenture Trustee, to the Note Insurer or the retiring Securities Administrator, as applicable, and to the Issuing Entity. Thereupon, the resignation or removal of the retiring Indenture Trustee or the retiring Securities Administrator shall become effective, and the successor Indenture Trustee or successor Securities Administrator shall have all the rights, powers and duties of the Indenture Trustee or the Securities Administrator, as applicable, under this Indenture. The successor Indenture Trustee or successor Securities Administrator shall each mail a notice of its succession to Noteholders. The retiring Indenture Trustee or the retiring Securities Administrator shall promptly transfer all property held by it as Indenture Trustee or Securities Administrator, as applicable, to the successor Indenture Trustee or successor Securities Administrator.

If a successor Indenture Trustee or successor Securities Administrator does not take office within 60 days after the retiring Indenture Trustee or the retiring Securities Administrator, as applicable, resigns or is removed, the retiring Indenture Trustee, the Note Insurer or the retiring Securities Administrator, the Issuing Entity or the Holders of a majority of Note Principal Balances of the Notes may petition any court of competent jurisdiction for the appointment of a successor Indenture Trustee or successor Securities Administrator.

Notwithstanding the replacement of the Indenture Trustee or the Securities Administrator pursuant to this Section, the Issuing Entity's obligations under Section 6.07 shall continue for the benefit of the retiring Indenture Trustee or the retiring Securities Administrator.

Section 6.09    Successor Indenture Trustee and Securities Administrator by Merger.    If the Indenture Trustee or the Securities Administrator consolidates with, merges or converts into, or transfers all or substantially all of its corporate trust business or assets to, another corporation

47

or banking association, the resulting, surviving or transferee corporation, without any further act, shall be the successor Indenture Trustee or successor Securities Administrator, as applicable; provided, that such corporation or banking association shall be otherwise qualified and eligible under Section 6.11 hereof. The Indenture Trustee and the Securities Administrator shall provide the Rating Agencies, the Note Insurer and the Issuing Entity with prior written notice, and the Noteholders with prompt written notice, of any such transaction.

If at the time such successor or successors by merger, conversion or consolidation to the Indenture Trustee shall succeed to the trusts created by this Indenture and any of the Notes shall have been authenticated but not delivered, any such successor to the Indenture Trustee may adopt the certificate of authentication of any predecessor trustee and deliver such Notes so authenticated; and if at that time any of the Notes shall not have been authenticated, any successor to the Indenture Trustee may authenticate such Notes either in the name of any predecessor hereunder or in the name of the successor to the Indenture Trustee.

Section 6.10    Appointment of Co-Indenture Trustee or Separate Indenture Trustee.  (a) Notwithstanding any other provisions of this Indenture, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of the Trust Estate may at the time be located, the Indenture Trustee shall have the power and may, with the consent of Note Insurer, execute and deliver all instruments to appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of the Trust Estate, and to vest in such Person or Persons, in such capacity and for the benefit of the Noteholders and the Note Insurer, such title to the Trust Estate, or any part hereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Indenture Trustee or the Note Insurer may consider necessary or desirable. No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 6.11 hereof.

(b)    Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i)    all rights, powers, duties and obligations conferred or imposed upon the Indenture Trustee shall be conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Indenture Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed the Indenture Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the Trust Estate or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Indenture Trustee;

(ii)    no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii)    the Indenture Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

48

(c)    Any notice, request or other writing given to the Indenture Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this Indenture and the conditions of this Article VI. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Indenture Trustee or separately, as may be provided therein, subject to all the provisions of this Indenture, specifically including every provision of this Indenture relating to the conduct of, affecting the liability of, or affording protection to, the Indenture Trustee. Every such instrument shall be filed with the Indenture Trustee.

(d)    Any separate trustee or co-trustee may at any time constitute the Indenture Trustee, its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Indenture Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

Section 6.11    Eligibility; Disqualification. The Indenture Trustee shall at all times be an entity that meets the requirements of Section 3(c)(3) under the Investment Company Act of 1940 applicable to a trustee, and shall have a combined capital and surplus of at least $50,000,000 as set forth in its most recent published annual report of condition and it or its parent shall have a long-term debt rating of Baa3 or better by Moody's.

Each of the Indenture Trustee and the Securities Administrator hereunder shall at all times be a corporation or an association organized and doing business under the laws of any state or the United States of America, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000 and subject to supervision or examination by federal or state authority. In case at any time the Indenture Trustee or the Securities Administrator shall cease to be eligible in accordance with the provisions of this Section, the Trustee or the Securities Administrator, as the case may be, shall resign immediately in the manner and with the effect specified in Section 6.08 hereof.

The Securities Administrator and any successor Securities Administrator (i) may not be an Originator, the Master Servicer, a subservicer, the Depositor or an affiliate of the Depositor unless the Securities Administrator is an institutional trust department, (ii) must be authorized to exercise corporate trust powers under the laws of its jurisdiction of organization, and (iii) must at all times be rated at least "A/F1" by Fitch if Fitch is a rating agency.

The Indenture Trustee shall notify the Rating Agencies of any change of Securities Administrator. Any resignation or removal of the Indenture Trustee or the Securities Administrator and appointment of a successor trustee or trust administrator, as the case may be, pursuant to any of the provisions of this Section shall not become effective until acceptance of appointment by the successor indenture trustee or securities administrator as provided in Section 6.08 hereof. Notwithstanding the foregoing, in the event the Securities Administrator advises the Indenture Trustee that it is unable to continue to perform its obligations pursuant to the terms of this Indenture prior to the appointment of a successor, the Indenture Trustee shall be obligated to

[TPW: NYLEGAL:422682.7] 17297-00403 06/08/2006 03:32 PM

perform such obligations until a new securities administrator is appointed. Such performance shall be without prejudice to any claim by a party hereto or beneficiary hereof resulting from the Securities Administrator's breach of its obligations hereunder. As compensation therefore, the Indenture Trustee shall be entitled to all fees the Securities Administrator would have been entitled to if it had continued to act hereunder.

Section 6.12    Representations and Warranties.    The Indenture Trustee hereby represents that:

(i)    The Indenture Trustee is duly organized and validly existing as a national banking association in good standing under the laws of the United States with power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted;

(ii)    The Indenture Trustee has the power and authority to execute and deliver this Indenture and to carry out its terms; and the execution, delivery and performance of this Indenture have been duly authorized by the Indenture Trustee by all necessary corporate action;

(iii)    The consummation of the transactions contemplated by this Indenture and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the articles of incorporation or bylaws of the Indenture Trustee or any agreement or other instrument to which the Indenture Trustee is a party or by which it is bound; and

(iv)    To the Indenture Trustee's knowledge, there are no proceedings or investigations pending or threatened before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Indenture Trustee or its properties: (A) asserting the invalidity of this Indenture, (B) seeking to prevent the consummation of any of the transactions contemplated by this Indenture or (C) seeking any determination or ruling that might materially and adversely affect the performance by the Indenture Trustee of its obligations under, or the validity or enforceability of, this Indenture.

Section 6.13    Representations and Warranties.    The Securities Administrator hereby represents that:

(i)    The Securities Administrator is duly organized and validly existing as a national banking association in good standing under the laws of the United States with power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted;

(ii)    The Securities Administrator has the power and authority to execute and deliver this Indenture and to carry out its terms; and the execution, delivery and performance of this Indenture have been duly authorized by the Securities Administrator by all necessary corporate action;

(iii)    The consummation of the transactions contemplated by this Indenture and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the

50

articles of incorporation or bylaws of the Securities Administrator or any agreement or other instrument to which the Securities Administrator is a party or by which it is bound; and

(iv)    To the Securities Administrator's knowledge, there are no proceedings or investigations pending or threatened before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Securities Administrator or its properties: (A) asserting the invalidity of this Indenture, (B) seeking to prevent the consummation of any of the transactions contemplated by this Indenture or (C) seeking any determination or ruling that might materially and adversely affect the performance by the Securities Administrator of its obligations under, or the validity or enforceability of, this Indenture.

Section 6.14    <u>Directions to Indenture Trustee and the Securities Administrator.</u>

(a)    The Indenture Trustee is hereby directed to accept the pledge of the HELOCs and hold the assets of the Trust in trust for the Noteholders and the Note Insurer and to exercise and deliver the Insurance Agreement and the Custodial Agreement and to acknowledge and agree to the Assignment Agreement.

(b)    the Securities Administrator is hereby directed to (i) authenticate and deliver the Notes substantially in the form prescribed by Exhibits A-1, A-2 and A-3 to this Indenture in accordance with the terms of this Indenture and to take all other actions as shall be required to be taken by the Securities Administrator pursuant to the terms of this Indenture and the other Basic Documents.

Section 6.15    <u>The Agents.</u> The provisions of this Indenture relating to the limitations of the Indenture Trustee's liability and to its rights and protections shall inure also to the Paying Agent, Note Registrar and Certificate Registrar.

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

## ARTICLE VII

## NOTEHOLDERS' LISTS AND REPORTS

Section 7.01    <u>Issuing Entity To Furnish Securities Administrator and Indenture Trustee Names and Addresses of Noteholders</u>.  The Issuing Entity will furnish or cause to be furnished to the Securities Administrator and the Indenture Trustee (a) not more than five days after each Record Date, a list, in such form as the Securities Administrator may reasonably require, of the names and addresses of the Holders of Notes as of such Record Date, and (b) at such other times as the Securities Administrator and the Note Insurer may request in writing, within 30 days after receipt by the Issuing Entity of any such request, a list of similar form and content as of a date not more than 10 days prior to the time such list is furnished; provided, however, that so long as the Securities Administrator is the Note Registrar, no such list shall be required to be furnished to the Securities Administrator.

Section 7.02    <u>Preservation of Information; Communications to Noteholders</u>.  (a)  The Securities Administrator shall preserve, in as current a form as is reasonably practicable, the names and addresses of the Holders of Notes contained in the most recent list furnished to the Securities Administrator as provided in Section 7.01 hereof and the names and addresses of Holders of Notes received by the Securities Administrator in its capacity as Note Registrar. The Securities Administrator may destroy any list furnished to it as provided in such Section 7.01 upon receipt of a new list so furnished.

(b)    Noteholders may communicate with other Noteholders with respect to their rights under this Indenture or under the Notes.

Section 7.03    <u>Financial Information</u>.    For so long as any of the Notes bearing a restrictive legend remains outstanding and is a "restricted security" within the meaning of Rule 144(a)(3) under the Securities Act, the Issuing Entity shall, during any period in which it is not subject to Section 13 or 15(d) of the Exchange Act nor exempt from reporting pursuant to Rule 12g3-2(b) under such Act, cause the Securities Administrator to make available to any Holder of any such Note in connection with any sale thereof and to any prospective purchaser of any such Note from such Holder, in each case upon request, the information specified in, and meeting the requirements of, Rule 144A(d)(4) under the Securities Act that is in the Securities Administrator's possession or reasonably obtainable by it, if requested, from the Master Servicer (and to the extent such information is in the Master Servicer's possession or is reasonably obtainable by it from the Servicers).

Unless the Issuing Entity otherwise determines, the fiscal year of the Issuing Entity shall end on December 31 of each year.

Section 7.04    <u>Statements to Noteholders and Certificateholders</u>.    (a)  With respect to each Payment Date, the Securities Administrator shall make available via the Securities Administrator's website, initially located at www.etrustee.net, to each Noteholder and each Certificateholder, the Indenture Trustee, the Depositor, the Issuing Entity, the Seller, the Owner Trustee, the Certificate Paying Agent, the Note Insurer and the Rating Agencies, a statement setting forth the following information as to the Notes, to the extent applicable:

(i)    the applicable Record Dates, Accrual Periods, Interest Determination Dates and Payment Dates;

(ii)    the Available Funds, the Net WAC Cap Rate Carryover Amount on each Class of Notes for such Payment Date and the aggregate Unpaid Interest Shortfall Amount on each Class of Notes for such Payment Date;

(iii)    the amount of fees and expenses accrued and paid;

(iv)    the amount of servicing fees for the related Collection Period;

(v)    (a) the amount of such distribution to each Class of Notes applied to reduce the Note Principal Balance thereof, and (b) the aggregate amount included therein representing Principal Prepayments;

(vi)    the amount of such distribution to Holders of each Class of Notes allocable to interest;

(vii)    the amount of any distribution to the Certificates;

(viii)    the Overcollateralization Amount and the Overcollateralization Target Amount;

(ix)    the Insured Amount, if any, paid by the Note Insurer under the Policy for such Payment Date and the aggregate Insured Amounts for all prior Payment Dates paid by the Note Insurer under the Policy and not yet reimbursed;

(x)    if the distribution to the Holders of any Class of Notes is less than the full amount that would be distributable to such Holders if there were sufficient funds available therefor, the amount of the shortfall;

(xi)    the number and the aggregate Scheduled Principal Balance of the HELOCs as of the end of the related Due Period and the amount of draws on the HELOCs;

(xii)    the aggregate Note Principal Balance of each Class of Notes, after giving effect to the amounts distributed on such Payment Date, separately identifying any reduction thereof due to Charge-Off Amounts and the aggregate Note Principal Balance of the Notes after giving effect to the distribution of principal on such Payment Date;

(xiii)    the number and aggregate Scheduled Principal Balance of the HELOCs (a) as to which the Monthly Payment is delinquent for 31-60 days, 61-90 days, 91 or more days, respectively, (b) in foreclosure and delinquent for 31-60 days, 61-90 days, 91 or more days, respectively, (c) that have become REO Property, and (d) subject to bankruptcy or similar insolvency proceedings, in each case as of the end of the preceding calendar month;

(xiv)    the aggregate Charge-Off Amounts with respect to the related Payment Date and cumulative Charge-Off Amounts since the Closing Date;

(xv)    the number and aggregate Scheduled Principal Balance of HELOCs repurchased pursuant to the Mortgage Loan Purchase Agreement for the related Payment Date and cumulatively since the Closing Date;

(xvi)    the book value (if available) of any REO Property;

(xvii)    the amount of any Relief Act Shortfalls for such Payment Date;

(xviii) the aggregate Scheduled Principal Balance of HELOCs purchased pursuant to Section 2.04 of the Sale and Servicing Agreement for the related Payment Date and cumulatively since the Closing Date;

(xix)    a statement as to whether each element in the definitions of Trigger Event and Rapid Amortization Trigger Event, respectively, is satisfied;

(xx)    if applicable, material modifications, extensions or waivers to pool asset terms, fees, penalties or payments during the payment period or that have become material over time;

(xxi)    material breaches of pool asset representations or warranties or transaction covenants;

(xxii)    the 60 Day Plus Delinquent Percentage for the related Payment Date; and

(xxiii) the special hazard amount, fraud loss amount and bankruptcy amount, if applicable, as of the close of business on the applicable Payment Date and a description of any change in the calculation of these amounts.

Items (iii) and (iv) above shall be presented on the basis of a Note having a $1,000 denomination. In addition, by January 31 of each calendar year following any year during which the Notes are outstanding, the Securities Administrator shall furnish a report to each Noteholder of record if so requested in writing at any time during each calendar year as to the aggregate of amounts reported pursuant to (iii) and (iv) with respect to the Notes for such calendar year.

The Securities Administrator may conclusively rely upon the information provided by the Master Servicer to the Securities Administrator in its preparation of monthly statements to Noteholders.

The Securities Administrator will make the monthly statements provided for in this section (and, at its option, any additional files containing the same information in an alternative format) available each month to the Note Insurer, each Noteholder and each Certificateholder, the Depositor, the Issuing Entity, the Seller, the Owner Trustee, the Certificate Paying Agent and the Rating Agency via the Securities Administrator's website. The Securities Administrator's website shall initially be located at "www.ctrustee.net." Assistance in using the website can be obtained by calling the Securities Administrator's customer service desk at (312) 904-7992. Parties that are unable to use the website are entitled to have a paper copy mailed to them via first class mail by calling the Securities Administrator's customer service desk and indicating such. The Securities Administrator may have the right to change the way the monthly statements

54

are distributed in order to make such distribution more convenient and/or more accessible to the above parties and the Securities Administrator shall provide timely and adequate notification to all above parties regarding any such changes.

(b)    The Securities Administrator shall be entitled to rely on but shall not be responsible for the content or accuracy of any information provided by third parties for purposes of preparing the monthly statement, and may affix thereto any disclaimer it deems appropriate in its reasonable discretion (without suggesting liability on the part of any other party hereto).

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

## ARTICLE VIII

## ACCOUNTS, DISBURSEMENTS AND RELEASES

Section 8.01    Collection of Money.    Except as otherwise expressly provided herein, the Securities Administrator may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all money and other property payable to or receivable by the Securities Administrator pursuant to this Indenture. The Securities Administrator shall apply all such money received by it as provided in this Indenture. Except as otherwise expressly provided in this Indenture, if any default occurs in the making of any payment or performance under any agreement or instrument that is part of the Trust Estate, the Indenture Trustee may take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate Proceedings. Any such action shall be without prejudice to any right to claim a Default or Event of Default under this Indenture and any right to proceed thereafter as provided in Article V.

Section 8.02    Officer's Certificate.    The Indenture Trustee shall receive at least seven Business Days' notice when requested by the Issuing Entity to take any action pursuant to Section 8.06(a) hereof, accompanied by copies of any instruments to be executed, and the Indenture Trustee shall also require, as a condition to such action, an Officer's Certificate, in form and substance satisfactory to the Indenture Trustee, stating the legal effect of any such action, outlining the steps required to complete the same, and concluding that all conditions precedent to the taking of such action have been complied with.

Section 8.03    Termination Upon Distribution to Noteholders.    This Indenture and the respective obligations and responsibilities of the Issuing Entity, the Securities Administrator and the Indenture Trustee created hereby shall terminate upon the distribution to Noteholders, the Note Insurer, the Certificate Paying Agent on behalf of the Certificateholders, the Securities Administrator and the Indenture Trustee of all amounts required to be distributed pursuant to Article III; provided, however, that in no event shall the trust created hereby continue beyond the earlier of (i) the expiration of 21 years from the death of the survivor of the descendants of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James, living on the date hereof or (ii) the Latest Possible Maturity Date.

Section 8.04    Release of Trust Estate.    (a)    Subject to the payment of its fees and expenses, the Indenture Trustee may, and when required by the provisions of this Indenture shall, execute instruments to release property from the lien of this Indenture, or convey the Indenture Trustee's interest in the same, in a manner and under circumstances that are not inconsistent with the provisions of this Indenture, including for the purposes of any purchase of a HELOC by the majority Holder of the Class E Certificates pursuant to Section 8.06 of this Indenture. No party relying upon an instrument executed by the Indenture Trustee as provided in Article VIII hereunder shall be bound to ascertain the Indenture Trustee's authority, inquire into the satisfaction of any conditions precedent, or see to the application of any monies.

(b)    The Indenture Trustee shall, at such time as (i) it is notified by the Securities Administrator that there are no Notes Outstanding, (ii) all sums then due and unpaid to the Indenture Trustee pursuant to this Indenture have been paid and (iii) all sums due to the Note

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

Insurer have been paid, release any remaining portion of the Trust Estate that secured the Notes from the lien of this Indenture.

(c) The Indenture Trustee shall release property from the lien of this Indenture pursuant to this Section 8.05 only upon receipt of a request from the Issuing Entity and a letter from the Note Insurer stating that the Note Insurer has no objection to such request from the Issuing Entity.

Section 8.05  <u>Surrender of Notes Upon Final Payment</u>. By acceptance of any Note, the Holder thereof agrees to surrender such Note to the Securities Administrator promptly, prior to such Noteholder's receipt of the final payment thereon.

Section 8.06  <u>Optional Redemption of the HELOCs</u>. (a) The Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, shall have the option to purchase the assets of the Trust and thereby cause the redemption of the Notes, in whole, but not in part, on or after the Payment Date on which the sum of the Note Principal Balances of the Notes is reduced to an amount less than or equal to 10% of the sum of the original Note Principal Balances of the Notes. Such optional purchase shall be subject to the Note Insurer's consent if the termination would result in a draw on the Policy or if, after such purchase, amounts would remain owed to the Note Insurer. The aggregate redemption price (the "Redemption Price") for the Notes will be equal to the lesser of (i) the fair market value of the HELOCs and (ii) the sum of the outstanding principal balance of the HELOCs, and accrued and unpaid interest thereon at the weighted average of the mortgage rates through the day preceding the final Payment Date; provided that the option shall only be exercised if the purchase price is sufficient to repay all outstanding principal and accrued and unpaid interest on the Notes and all amounts owing under the Insurance Agreement.

(b) In order to exercise the foregoing option, the Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, shall provide written notice of its exercise of such option to the Securities Administrator, the Note Insurer, the Issuing Entity, the Owner Trustee and the Master Servicer at least 15 days prior to its exercise. Following receipt of the notice, the Securities Administrator shall provide written notice to the Noteholders of the final payment on the Notes. In addition, the Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, shall, not less than one Business Day prior to the proposed Payment Date on which such redemption is to be made, deposit the Redemption Price specified in (a) above with the Securities Administrator, who shall deposit the Redemption Price into the Payment Account and shall, on the Payment Date after receipt of the funds, apply such funds to make final payments of principal and interest on the Notes in accordance with Section 3.02 hereof and payment to the Securities Administrator and the Master Servicer as set forth in (a) above, and this Indenture shall be discharged subject to the provisions of Section 4.09 hereof. If for any reason the amount deposited by the Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, is not sufficient to make such redemption or such redemption cannot be completed for any reason, (a) the amount so deposited by the Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, with the Securities Administrator shall be immediately returned to the Holder of the Class E Certificates, or if there is no single holder, the majority Holder of the Class E Certificates, in full

and shall not be used for any other purpose or be deemed to be part of the Trust Estate and (b) the Note Principal Balance of the Notes shall continue to bear interest at the related Note Interest Rate.

(c)    Upon exercise by the Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable, of its purchase option as provided in clause (a) above, the Notes shall be redeemed and the Trust Estate shall be terminated in accordance with the following additional requirements, unless the Indenture Trustee, the Securities Administrator and Owner Trustee have been supplied with an Opinion of Counsel addressed to the Indenture Trustee, the Note Insurer, the Securities Administrator and Owner Trustee, at the expense of the Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable, to the effect that the failure of the Trust Estate to comply with the requirements of this clause (c) will not (i) result in the imposition of taxes on "prohibited transactions" of a REMIC created hereunder, or (ii) cause a REMIC created hereunder to fail to qualify as a REMIC at any time that any Notes or Certificates are outstanding:

(i)    The Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable, shall establish a 90-day liquidation period and notify the Indenture Trustee, the Securities Administrator and Owner Trustee thereof, and the Securities Administrator shall in turn specify the first day of such period in a statement attached to the tax return for each REMIC created hereunder pursuant to Treasury Regulation Section 1.860F-1. The Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable, shall satisfy all the requirements of a "qualified liquidation" under Section 860F of the Code and any regulations thereunder, as evidenced by an Opinion of Counsel obtained at the expense of the Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable;

(ii)    During such 90-day liquidation period, and at or prior to the time of making the final payment on the Notes and Certificates, the Indenture Trustee shall sell all of the assets of REMIC I for cash; and

(iii)    At the time of the making of the final payment on the Notes and Certificates, the Securities Administrator and Owner Trustee shall distribute or credit, or cause to be distributed or credited, to the Certificate Paying Agent for distribution to the Holders of the Residual Certificates all cash on hand (other than cash retained to meet claims), and REMIC I shall terminate at that time.

(iv)    By their acceptance of the Notes, the Holders thereof hereby authorize the adoption of a 90-day liquidation period and the adoption of a plan of complete liquidation for each REMIC created hereunder, which authorization shall be binding upon all successor Noteholders.

(v)    The Securities Administrator, as agent for each REMIC, hereby agrees to adopt and sign such a plan of complete liquidation meeting the requirements for a "qualified liquidation" under Section 860F of the Code and any regulations thereunder upon the written request of the Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable, and the receipt of the Opinion of Counsel referred to

58