in clause (c)(i) above and to take such other action in connection therewith as may be reasonably requested by the Class E Certificateholder or the majority Holder of the Class E Certificates, as applicable.

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

ARTICLE IX

SUPPLEMENTAL INDENTURES

Section 9.01    <u>Supplemental Indentures Without Consent of Noteholders</u>.    (a)    Without the consent of the Holders of any Notes or Certificates but with prior written consent of the Note Insurer (which consent shall not be unreasonably withheld) and prior notice to the Rating Agencies, the Issuing Entity, the Indenture Trustee, the Note Insurer and the Securities Administrator, when authorized by an Issuing Entity Request, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Indenture Trustee and the Securities Administrator, for any of the following purposes:

(i)    to correct or amplify the description of any property at any time subject to the lien of this Indenture, or better to assure, convey and confirm unto the Indenture Trustee any property subject or required to be subjected to the lien of this Indenture, or to subject to the lien of this Indenture additional property;

(ii)    to evidence the succession, in compliance with the applicable provisions hereof, of another person to the Issuing Entity, and the assumption by any such successor of the covenants of the Issuing Entity herein and in the Notes contained;

(iii)    to add to the covenants of the Issuing Entity, for the benefit of the Holders of the Notes and Certificates, or to surrender any right or power herein conferred upon the Issuing Entity;

(iv)    to cure any ambiguity, to correct or supplement any provision herein or in any supplemental indenture that may be inconsistent with any other provision herein or in any supplemental indenture;

(v)    to make any other provisions with respect to matters or questions arising under this Indenture or in any supplemental indenture; provided, that such action shall not materially and adversely affect the interests of the Holders of the Notes or adversely affect the interests of the Note Insurer; provided further, that such supplemental indenture will be deemed to not materially and adversely affect the interests of the Holders of the Notes if a Rating Confirmation is received with respect to such supplemental indenture;

(vi)    to evidence and provide for the acceptance of the appointment hereunder by a successor trustee with respect to the Notes and to add to or change any of the provisions of this Indenture as shall be necessary to facilitate the administration of the trusts hereunder by more than one trustee, pursuant to the requirements of Article VI hereof; or

(vii)    to modify, eliminate or add to any of the provisions herein to such extent as shall be necessary or appropriate to maintain the qualification of any REMIC created hereunder as a REMIC under the Code or to avoid or minimize the risk of the imposition of any tax on any REMIC created hereunder pursuant to the Code that would be a claim against any such at any time prior to the final redemption of the Notes and Certificates, provided that the Indenture Trustee, the Securities Administrator, the Note Insurer and Owner Trustee have been provided an Opinion of Counsel addressed to the Indenture Trustee, the Securities Administrator

and Owner Trustee, which opinion shall be an expense of the party requesting such opinion but in any case shall not be an expense of the Indenture Trustee, the Securities Administrator, Owner Trustee, the Note Insurer or the Trust Estate, to the effect that such action is necessary or appropriate to maintain such qualification or to avoid or minimize the risk of the imposition of such a tax;

*provided, however*, that no such indenture supplements shall be entered into unless the Indenture Trustee, the Note Insurer, Owner Trustee and the Securities Administrator shall have received an Opinion of Counsel not at the expense of the Indenture Trustee or the Securities Administrator as to the enforceability of any such indenture supplement and to the effect that (i) such indenture supplement is permitted hereunder and will not materially and adversely affect the Holders of the Notes or the Note Insurer and (ii) entering into such indenture supplement will not cause the imposition of any tax on any REMIC created hereunder, any Noteholder or any Certificateholder or cause any of REMIC created hereunder to cease to qualify as a REMIC at any time that any Notes or Certificates are outstanding.

The Indenture Trustee and the Securities Administrator are hereby authorized to join in the execution of any such supplemental indenture and to make any further appropriate agreements and stipulations that may be therein contained.

(b) With the consent of the Note Insurer (which consent shall not be unreasonably withheld), the Issuing Entity, the Securities Administrator and the Indenture Trustee, when authorized by an Issuing Entity Request, in the case of the Securities Administrator and the Indenture Trustee may, also without the consent of any of the Holders of the Notes and prior notice to the Rating Agency enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture; provided, however, that such action as evidenced by an Opinion of Counsel addressed to the Indenture Trustee, the Note Insurer, the Securities Administrator and Owner Trustee, (i) is permitted by this Indenture, (ii) shall not adversely affect in any material respect the interests of any Noteholder or adversely affect the interests of the Note Insurer and (iii) shall not cause the imposition of any tax on any REMIC created hereunder, any Noteholder or any Certificateholder or cause any of REMIC created hereunder to cease to qualify as a REMIC at any time that any Notes or Certificates are outstanding.

Section 9.02   Supplemental Indentures With Consent of Noteholders.   The Issuing Entity, the Securities Administrator and the Indenture Trustee, when authorized by an Issuing Entity Request in the case of the Securities Administrator and the Indenture Trustee, also may, with prior notice to the Rating Agencies and, with the consent of the Note Insurer and the Holders of not less than a majority of the Note Principal Balance of each Class of Notes affected thereby, by Act (as defined in Section 10.03 hereof) of such Holders delivered to the Issuing Entity, the Securities Administrator and the Indenture Trustee, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture; provided, however, that no such supplemental indenture shall, without the consent of the Holder of each Note affected thereby:

(i)    change the date of payment of any installment of principal of or interest on any Note, or reduce the principal amount thereof or the interest rate thereon, change the provisions of this Indenture relating to the application of collections on, or the proceeds of the sale of, the Trust Estate and to payment of principal of or interest on the Notes, or change any place of payment where, or the coin or currency in which, any Note or the interest thereon is payable, or impair the right to institute suit for the enforcement of the provisions of this Indenture requiring the application of funds available therefor, as provided in Article V, to the payment of any such amount due on the Notes on or after the respective due dates thereof;

(ii)    reduce the percentage of the Note Principal Balances of the Notes, or any Class of Notes, the consent of the Holders of which is required for any such supplemental indenture, or the consent of the Holders of which is required for any waiver of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences provided for in this Indenture;

(iii)    modify or alter the provisions of the proviso to the definition of the term "Outstanding" or modify or alter the exception in the definition of the term "Holder";

(iv)    reduce the percentage of the Note Principal Balances of the Notes, or any Class of Notes, required to direct the Indenture Trustee to direct the Issuing Entity to sell or liquidate the Trust Estate pursuant to Section 5.04 hereof;

(v)    modify any provision of this Section 9.02 except to increase any percentage specified herein or to provide that certain additional provisions of this Indenture or the Basic Documents cannot be modified or waived without the consent of the Holder of each Note affected thereby;

(vi)    modify any of the provisions of this Indenture in such manner as to affect the calculation of the amount of any payment of interest or principal due on any Note on any Payment Date (including the calculation of any of the individual components of such calculation); or

(vii)    permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of the Trust Estate or, except as otherwise permitted or contemplated herein, terminate the lien of this Indenture on any property at any time subject hereto or deprive the Holder of any Note of the security provided by the lien of this Indenture;

and *provided, further,* that such action shall not, as evidenced by an Opinion of Counsel addressed to the Indenture Trustee, the Note Insurer, the Securities Administrator and Owner Trustee, cause the imposition of any tax on any REMIC created hereunder, any Noteholder or any Certificateholder or cause any of REMIC created hereunder to cease to qualify as a REMIC at any time that any Notes or Certificates are outstanding.

Any such action shall not adversely affect in any material respect the interest of any Holder (other than a Holder who shall consent to such supplemental indenture) as evidenced by an Opinion of Counsel (provided by the Person requesting such supplemental indenture) delivered to the Indenture Trustee and the Securities Administrator.

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

It shall not be necessary for any Act of Noteholders under this Section 9.02 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

Promptly after the execution by the Issuing Entity, the Securities Administrator and the Indenture Trustee of any supplemental indenture pursuant to this Section 9.02, the Securities Administrator shall mail to the Holders of the Notes to which such amendment or supplemental indenture relates a notice setting forth in general terms the substance of such supplemental indenture. Any failure of the Securities Administrator to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

Section 9.03   Execution of Supplemental Indentures.   In executing, or permitting the additional trusts created by, any supplemental indenture permitted by this Article IX or the modification thereby of the trusts created by this Indenture, the Indenture Trustee and the Securities Administrator shall be entitled to receive, and subject to Sections 6.01 and 6.02 hereof, shall be fully protected in relying upon, an Opinion of Counsel not at the expense of the Indenture Trustee or the Securities Administrator stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Indenture Trustee and the Securities Administrator each may, but shall not be obligated to, enter into any such supplemental indenture that affects the Indenture Trustee's or the Securities Administrator's own rights, duties, liabilities or immunities under this Indenture or otherwise.

Section 9.04   Effect of Supplemental Indenture.   Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture shall be and shall be deemed to be modified and amended in accordance therewith with respect to the Notes affected thereby, and the respective rights, limitations of rights, obligations, duties, liabilities and immunities under this Indenture of the Indenture Trustee, the Securities Administrator, the Issuing Entity and the Holders of the Notes shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

Section 9.05   Conformity with Trust Indenture Act.   Every amendment of this Indenture and every supplemental indenture executed pursuant to this Article IX shall conform to the requirements of the Trust Indenture Act as then in effect so long as this Indenture shall then be qualified under the Trust Indenture Act.

Section 9.06   Reference in Notes to Supplemental Indentures.   Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article IX may, and if required by the Securities Administrator shall, bear a notation in form approved by the Securities Administrator as to any matter provided for in such supplemental indenture. If the Issuing Entity or the Securities Administrator shall so determine, new Notes so modified as to conform, in the opinion of the Securities Administrator and the Issuing Entity, to any such supplemental indenture may be prepared and executed by the Issuing Entity and authenticated and delivered by the Securities Administrator in exchange for Outstanding Notes.

[TPW: NYLEGAL:422682.7] 17297-00403 06/08/2006 03:32 PM

## ARTICLE X

## TAX MATTERS

Section 10.01 <u>Description of REMICs and Designation of REMIC Interests</u>.

### REMIC I

As provided herein, the Securities Administrator will elect to treat the segregated pool of assets consisting of the HELOCs and certain other related assets subject to this Indenture and the Basic Documents (other than the Net WAC Cap Rate Carryover Reserve Account) as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC I". The Class S Certificates will be the sole class of Residual Interests in REMIC I for purposes of the REMIC Provisions. The following table irrevocably sets forth the designation, the Uncertificated REMIC I Pass-Through Rate, the initial Uncertificated Principal Balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC I Regular Interests. None of the REMIC I Regular Interests will be certificated.

| Designation | Uncertificated REMIC I Pass-Through Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity Date [1] |
|---|---|---|---|
| AA | Variable[2] | $ 303,895,458.47 | September 25, 2035 |
| A | Variable[2] | $ 2,860,650.00 | September 25, 2035 |
| M-1 | Variable[2] | $ 46,510.00 | September 25, 2035 |
| M-2 | Variable[2] | $ 46,510.00 | September 25, 2035 |
| M-3 | Variable[2] | $ 37,210.00 | September 25, 2035 |
| M-4 | Variable[2] | $ 40,310.00 | September 25, 2035 |
| ZZ | Variable[2] | $ 3,170,758.13 | September 25, 2035 |

---

[1]    For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Payment Date immediately following the maturity date for the HELOC with the latest maturity date has been designated as the "latest possible maturity date" for each REMIC I Regular Interest.

[2]    Calculated in accordance with the definition of "Uncertificated REMIC I Pass-Through Rate" herein.

### REMIC II

As provided herein, the Securities Administrator will elect to treat the segregated pool of assets consisting of the REMIC I Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC II". The Class R Certificates will represent the sole class of Residual Interests in REMIC II for purposes of the REMIC Provisions.

The following table irrevocably sets forth the class designation, interest rate, initial principal balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each Class of Notes and the Class E Interest that represent ownership of one or more of the Regular Interests in REMIC II created hereunder.

64

| Class Designation | Interest Rate | Initial Principal Balance | Latest Possible Maturity Date[1] |
|---|---|---|---|
| A | Variable[2] | $ 286,065,000.00 | September 25, 2035 |
| M-1 | Variable[2] | $ 4,651,000.00 | September 25, 2035 |
| M-2 | Variable[2] | $ 4,651,000.00 | September 25, 2035 |
| M-3 | Variable[2] | $ 3,721,000.00 | September 25, 2035 |
| M-4 | Variable[2] | $ 4,031,000.00 | September 25, 2035 |
| Class E Interest | Variable[2] | $ 6,978,406.60 | September 25, 2035 |

| | |
|---|---|
| (1) | For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Payment Date in the month following the maturity date for the HELOC with the latest maturity date has been designated as the "latest possible maturity date" for each Note and Class E Interest described above. |
| (2) | Calculated in accordance with the definition of "Pass-Through Rate" herein. |
| (3) | The Class E Interest will accrue interest at its variable interest rate calculated in accordance with the definition of "Class E Interest Rate" on the Notional Amount of the Class E Interest outstanding from time to time, which shall equal the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests. The Class E Certificate will not accrue interest on its Uncertificated Principal Balance. |

## REMIC III

As provided herein, the Securities Administrator will elect to treat the segregated pool of assets consisting of the Class E Interest as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC III". The Class RX Certificates will represent the sole class of Residual Interests in REMIC III for purposes of the REMIC Provisions.

The following table irrevocably sets forth the Class designation, interest rate, initial Certificate Principal Balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for the Class of Certificates that represents ownership of one or more of the Regular Interests in REMIC III created hereunder:

| Class Designation | Interest Rate | Initial Certificate Principal Balance | Latest Possible Maturity Date[1] |
|---|---|---|---|
| E | Variable[2] | $ 6,978,406.60 | September 25, 2035 |

| | |
|---|---|
| (1) | For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Payment Date in the month following the maturity date for the HELOC with the latest maturity date has been designated as the "latest possible maturity date" for the Class E Certificates described above. |
| (2) | The Class E Certificates will receive 100% of amounts received in respect of the Class E Interest. |

Section 10.02   REMIC Elections and REMIC Distributions.

(a)    The Securities Administrator shall elect that each of REMIC I, REMIC II and REMIC III shall be treated as a REMIC under Section 860D of the Code. Any inconsistencies or ambiguities in this Indenture or any of the Basic Documents or in the administration of this Indenture or the Basic Documents shall be resolved in a manner that preserves the validity of such REMIC elections.

65

(b)    On each Payment Date, the following amounts, in the following order of priority, shall be distributed by REMIC I to REMIC II on account of the REMIC I Regular Interests or withdrawn from the Payment Account and distributed to the Holders of the Class S Certificates, as the case may be:

(i)    to the holders of each REMIC I Regular Interest the Floating Allocation Percentage of the Interest Collection Amount, *pro rata*, in an amount equal to (A) the Uncertificated Accrued Interest for such REMIC I Regular Interest for such Payment Date, plus (B) any amounts in respect thereof remaining unpaid from previous Payment Dates. Amounts payable as Uncertificated Accrued Interest in respect of REMIC I Regular Interest ZZ shall be reduced when the REMIC I Overcollateralization Amount is less than the REMIC I Required Overcollateralization Amount by the lesser of (x) the amount of such difference and (y) the Maximum Uncertificated Accrued Interest Deferral Amount, and such amount will be payable to the holders of each REMIC I Regular Interest for which a Note is the Corresponding Note in the same proportion as the Overcollateralization Increase Amount is allocated to the Corresponding Notes, and the Uncertificated Principal Balance of REMIC I Regular Interest ZZ shall be increased by such amount;

(ii)    to the holders of REMIC I Regular Interests, the Available Principal Payment Amount for such Payment Date, allocated as follows:

(A)    98% of such amount to the holders of REMIC I Regular Interest AA, until the Uncertificated Principal Balance of such REMIC I Regular Interest is reduced to zero;

(B)    2% of such remainder, first, to the holders of each REMIC I Regular Interest for which a Note is the Corresponding Note in an aggregate amount equal to 1% of and in the same proportion as principal payments are allocated to the Corresponding Notes for each such REMIC I Regular Interest, until the Uncertificated Principal Balances of such REMIC I Regular Interests are reduced to zero; and second, to the holders of REMIC I Regular Interest ZZ, until the Uncertificated Principal Balance of such REMIC I Regular Interest is reduced to zero; then

(C)    any remaining amount to the Holders of the Class S Certificates.

(c)    On each Payment Date, an amount equal to the amounts distributed pursuant to Sections 3.02(a)(5), (8) and (10) on such date shall be deemed distributed from REMIC II to REMIC III in respect of the Class E Distribution Amount distributable to the Class E Interest.

Section 10.03  Allocation of Charge-Off Amounts.

The Floating Allocation Percentage of Charge-Off Amounts on the HELOCs shall be allocated on each Payment Date to the following REMIC I Regular Interests in the specified percentages, as follows:  first, to Uncertificated Accrued Interest payable to the REMIC I Regular Interest AA and REMIC I Regular Interest ZZ up to an aggregate amount equal to the REMIC I Interest Loss Allocation Amount, 98.00% and 2.00%, respectively; and second, to the

66

Uncertificated Principal Balances of the REMIC I Regular Interest AA and REMIC I Regular Interest ZZ up to an aggregate amount equal to the REMIC I Principal Loss Allocation Amount, 98.00% and 2.00%, respectively. Any subsequent allocation of the Floating Allocation Percentage of Charge-Off Amounts to the Notes pursuant to Section 3.19 shall be allocated on each Payment Date to the following REMIC I Regular Interests in the specified percentages, as follows: first, to the Uncertificated Principal Balances of REMIC I Regular Interest AA, REMIC I Regular Interest M-4 and REMIC I Regular Interest ZZ, 98.00%, 1.00% and 1.00%, respectively, until the Uncertificated Principal Balance of REMIC I Regular Interest M-4 has been reduced to zero; second, to the Uncertificated Principal Balances of REMIC I Regular Interest AA, REMIC I Regular Interest M-3 and REMIC I Regular Interest ZZ, 98.00%, 1.00% and 1.00%, respectively, until the Uncertificated Principal Balance of REMIC I Regular Interest M-3 has been reduced to zero; third, to the Uncertificated Principal Balances of REMIC I Regular Interest AA, REMIC I Regular Interest M-2 and REMIC I Regular Interest ZZ, 98.00%, 1.00% and 1.00%, respectively, until the Uncertificated Principal Balance of REMIC I Regular Interest M-2 has been reduced to zero; fourth, to the Uncertificated Principal Balances of REMIC I Regular Interest AA, REMIC I Regular Interest M-1 and REMIC I Regular Interest ZZ, 98.00%, 1.00% and 1.00%, respectively, until the Uncertificated Principal Balance of REMIC I Regular Interest M-1 has been reduced to zero; and fifth, to the Uncertificated Principal Balances of REMIC I Regular Interest AA, REMIC I Regular Interest A and REMIC I Regular Interest ZZ, 98.00%, 1.00% and 1.00%, respectively, until the Uncertificated Principal Balance of REMIC I Regular Interest A has been reduced to zero.

Section 10.04 Tax Administration.

It is intended that the Trust Estate shall constitute, and that the affairs of the Trust Estate shall be conducted so that each REMIC formed hereunder qualifies as, a "real estate mortgage investment conduit" as defined in and in accordance with the REMIC Provisions. In furtherance of such intention, the Securities Administrator covenants and agrees that it shall act as agent (and the Securities Administrator is hereby appointed to act as agent) on behalf of the Trust Estate. The Securities Administrator, as agent on behalf of the Trust Estate, shall do or refrain from doing, as applicable, the following: (a) the Securities Administrator shall prepare and file, or cause to be prepared and filed, in a timely manner, U.S. Real Estate Mortgage Investment Conduit Income Tax Returns (Form 1066 or any successor form adopted by the Internal Revenue Service) and prepare and file or cause to be prepared and filed with the Internal Revenue Service and applicable state or local tax authorities income tax or information returns for each taxable year with respect to each such REMIC containing such information and at the times and in the manner as may be required by the Code or state or local tax laws, regulations, or rules, and furnish or cause to be furnished to Noteholders and Certificateholders the schedules, statements or information at such times and in such manner as may be required thereby; (b) the Securities Administrator shall apply for an employer identification number with the Internal Revenue Service via a Form SS-4 or other comparable method for each REMIC that is or becomes a taxable entity, and within thirty days of the Closing Date, furnish or cause to be furnished to the Internal Revenue Service, on Forms 8811 or as otherwise may be required by the Code, the name, title, address, and telephone number of the Person that the Holders of the Notes and Certificates may contact for tax information relating thereto, together with such additional information as may be required by such Form, and update such information at the time or times in the manner required by the Code for the Trust Estate; (c) the Securities Administrator shall

67

make or cause to be made elections, on behalf of each REMIC formed hereunder to be treated as a REMIC on the federal tax return of such REMIC for its first taxable year (and, if necessary, under applicable state law); (d) the Securities Administrator shall prepare and forward, or cause to be prepared and forwarded, to the Noteholders and Certificateholders and to the Internal Revenue Service and, if necessary, state tax authorities, all information returns and reports as and when required to be provided to them in accordance with the REMIC Provisions, including without limitation, the calculation of any original issue discount using the Prepayment Assumption; (e) the Securities Administrator shall provide information necessary for the computation of tax imposed on the Transfer of a Residual Certificate to a Person that is not a Permitted Transferee, or an agent (including a broker, nominee or other middleman) of a Person that is not a Permitted Transferee, or a pass-through entity in which a Person that is not a Permitted Transferee is the record holder of an interest (the reasonable cost of computing and furnishing such information may be charged to the Person liable for such tax); (f) the Indenture Trustee and Securities Administrator shall, to the extent under their control, conduct the affairs of the Trust Estate at all times that any Notes or Certificates are outstanding so as to maintain the status of each REMIC formed hereunder as a REMIC under the REMIC Provisions; (g) the Indenture Trustee and Securities Administrator shall not knowingly or intentionally take any action or omit to take any action that would (i) cause the termination of the REMIC status of any REMIC formed hereunder or (ii) result in the imposition of a tax upon any of REMIC formed hereunder (including but not limited to the tax on prohibited transactions as defined in Section 860F(a)(2) of the Code and the tax on contributions to a REMIC set forth in Section 860G(d) of the Code); (h) the Securities Administrator shall pay, from the sources specified in the penultimate paragraph of this Section 10.04, the amount of any federal, state and local taxes, including prohibited transaction taxes as described below, imposed on any REMIC formed hereunder prior to the termination of the Trust Estate when and as the same shall be due and payable (but such obligation shall not prevent the Securities Administrator or any other appropriate Person from contesting any such tax in appropriate proceedings and shall not prevent the Securities Administrator from withholding payment of such tax, if permitted by law, pending the outcome of such proceedings); (i) the Securities Administrator shall maintain records relating to each REMIC formed hereunder including but not limited to the income, expenses, assets and liabilities of each such REMIC and adjusted basis of the Trust Estate property determined at such intervals as may be required by the Code, as may be necessary to prepare the foregoing returns, schedules, statements or information; (j) the Securities Administrator shall, for federal income tax purposes, maintain books and records with respect to the REMICs on a calendar year and on an accrual basis; (k) the Indenture Trustee and Securities Administrator shall not enter into any arrangement not otherwise provided for in this Indenture or the Basic Documents by which the REMICs will receive a fee or other compensation for services nor permit the REMICs to receive any income from assets other than "qualified mortgages" as defined in Section 860G(a)(3) of the Code or "permitted investments" as defined in Section 860G(a)(5) of the Code; and (l) as and when necessary and appropriate, the Securities Administrator, at the expense of the Trust Estate, shall represent the Trust Estate in any administrative or judicial proceedings relating to an examination or audit by any governmental taxing authority, request an administrative adjustment as to any taxable year of any REMIC formed hereunder, enter into settlement agreements with any governmental taxing agency, extend any statute of limitations relating to any tax item of the Trust Estate, and otherwise act on behalf of each REMIC formed hereunder in relation to any tax matter involving any such REMIC.

[TPW: NYLEGAL:422682.7] 17297-00403 06/08/2006 03:32 PM

In order to enable the Securities Administrator to perform its duties as set forth herein, the Depositor shall provide, or cause to be provided, to the Securities Administrator within 10 days after the Closing Date all information or data that the Securities Administrator requests in writing and determines to be relevant for tax purposes to the valuations and offering prices of the Notes and Certificates, including, without limitation, the price, yield, prepayment assumption and projected cash flows of the Notes and Certificates and the HELOCs. Thereafter, the Depositor shall provide to the Securities Administrator promptly upon written request therefor, any such additional information or data that the Securities Administrator may, from time to time, request in order to enable the Securities Administrator to perform its duties as set forth herein. The Depositor hereby indemnifies the Securities Administrator for any losses, liabilities, damages, claims or expenses of the Securities Administrator arising from any errors or miscalculations of the Securities Administrator that result from any failure of the Depositor to provide, or to cause to be provided, accurate information or data to the Securities Administrator on a timely basis.

Neither the Indenture Trustee nor the Securities Administrator shall sell, dispose of or substitute for any of the HELOCs (except in connection with (i) the default, imminent default or foreclosure of a HELOC, including but not limited to, the acquisition or sale of a Mortgaged Property acquired by deed in lieu of foreclosure, (ii) the bankruptcy of the Trust Fund, (iii) the termination of any REMIC pursuant to Section 8.06 of this Agreement or (iv) a purchase of HELOCs pursuant to Article II of the Sale and Servicing Agreement), acquire any assets for any REMIC or sell or dispose of any investments in any Account for gain, or accept any contributions to any REMIC after the Closing Date, unless it has received an Opinion of Counsel that such sale, disposition, substitution, acquisition or contribution will not (a) affect adversely the status of any of REMIC formed hereunder as a REMIC or (b) cause any REMIC to be subject to a tax on "prohibited transactions" or " contributions" pursuant to the REMIC Provisions.

In the event that any tax is imposed on "prohibited transactions" as defined in Section 860F(a)(2) of the Code of any REMIC created hereunder, on the "net income from foreclosure property" of the Trust Estate as defined in Section 860G(c) of the Code, on any contribution to any REMIC created hereunder after the Closing Date pursuant to Section 860G(d) of the Code, or any other tax is imposed, including, without limitation, any federal, state or local tax or minimum tax imposed upon any REMIC created hereunder, and is not paid as otherwise provided for herein, such tax shall be paid (i) by the Indenture Trustee, the Securities Administrator or Owner Trustee, if any such other tax arises out of or results from a breach by the Indenture Trustee, the Securities Administrator or Owner Trustee of any of its obligations under this Indenture or the Basic Documents, (ii) by any party hereto (other than the Indenture Trustee, the Securities Administrator and Owner Trustee) to the extent any such other tax arises out of or results from a breach by such other party of any of its obligations under this Indenture or the Basic Documents or (iii) in all other cases, or in the event that any liable party hereto fails to honor its obligations under the preceding clauses (i) or (ii), first, with amounts otherwise to be distributed to the Residual Certificateholders, and second, with amounts otherwise to be distributed to all Noteholders in the following order of priority: first, to the Class M-4 Notes, second, to the Class M-3 Notes, third, to the Class M-2 Notes, fourth, to the Class M-1 Notes, and fifth, to the A Notes. Notwithstanding anything to the contrary contained herein, to the extent that such tax is payable by the Holder of any Notes or Certificates, the Securities Administrator is hereby authorized to retain on any Payment Date, from the Holders of the

[TPW: NYLEGAL:422682.7] 17297-00403 06/08/2006 03:32 PM

Residual Certificates (and, if necessary, second, from the Holders of the Notes in the priority specified in the preceding sentence), funds otherwise distributable to such Holders in an amount sufficient to pay such tax. The Securities Administrator shall promptly notify in writing the party liable for any such tax of the amount thereof and the due date for the payment thereof.

The Securities Administrator agrees that, in the event it should obtain any information necessary for the other party to perform its obligations pursuant to this Section 11.04, it will promptly notify and provide such information to such other party.

Section 10.05 <u>Tax Treatment of Net WAC Cap Rate Carryover Amounts</u>.

On each Payment Date as to which there is a Net WAC Cap Carryover Amount payable to any Class of Notes, the Securities Administrator shall deposit the amounts distributable pursuant to Section 3.02(a)(8) into the Net WAC Cap Rate Carryover Reserve Account and the Securities Administrator has been directed by the Class E Certificateholder to distribute amounts in the Net WAC Cap Rate Carryover Reserve Account to the Holders of the applicable Notes in the priorities set forth in Section 3.02. Any amount paid to the Holders of the applicable Notes pursuant to the preceding sentence in respect of Net WAC Cap Rate Carryover Amounts shall be treated as distributed to the Class E Certificateholder in respect of the Class E Certificates and paid by the Class E Certificateholder to the Holders of such Notes. Any payments to the Holders of the applicable Notes in respect of Net WAC Cap Rate Carryover Amounts pursuant to the second preceding sentence shall not be payments with respect to a "regular interest" in a REMIC within the meaning of Section 860(G)(a)(1) of the Code.

[TPW: NYLEGAL:422682.7] 17297-00403 06/08/2006 03:32 PM

## ARTICLE XI

## MISCELLANEOUS

Section 11.01 <u>Compliance Certificates and Opinions, etc.</u> (a) Upon any application or request by the Issuing Entity to the Indenture Trustee or the Securities Administrator to take any action under any provision of this Indenture, the Issuing Entity shall furnish to the Indenture Trustee, the Securities Administrator and the Note Insurer (i) an Officer's Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and (ii) an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that, in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture, no additional certificate or opinion need be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(1)     a statement that each signatory of such certificate or opinion has read or has caused to be read such covenant or condition and the definitions herein relating thereto;

(2)     a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(3)     a statement that, in the opinion of each such signatory, such signatory has made such examination or investigation as is necessary to enable such signatory to express an informed opinion as to whether or not such covenant or condition has been complied with;

(4)     a statement as to whether, in the opinion of each such signatory, such condition or covenant has been complied with; and

(5)     if the signatory of such certificate or opinion is required to be Independent, the statement required by the definition of the term "Independent".

(b)     (i) Prior to the deposit of any Collateral or other property or securities with the Indenture Trustee that is to be made the basis for the release of any property or securities subject to the lien of this Indenture, the Issuing Entity shall, in addition to any obligation imposed in Section 10.01 (a) or elsewhere in this Indenture, furnish to the Indenture Trustee and the Note Insurer an Officer's Certificate certifying or stating the opinion of each person signing such certificate as to the fair value (within 90 days prior to such deposit) to the Issuing Entity of the Collateral or other property or securities to be so deposited and a report from a nationally recognized accounting firm verifying such value.

(ii)     Whenever the Issuing Entity is required to furnish to the Indenture Trustee, the Securities Administrator and the Note Insurer an Officer's Certificate certifying or

71

stating the opinion of any signer thereof as to the matters described in clause (i) above, the Issuing Entity shall also deliver to the Indenture Trustee an Independent Certificate from a nationally recognized accounting firm as to the same matters, if the fair value of the securities to be so deposited and of all other such securities made the basis of any such withdrawal or release since the commencement of the then current fiscal year of the Issuing Entity, as set forth in the certificates delivered pursuant to clause (i) above and this clause (ii), is 10% or more of the Note Principal Balances of the Notes, but such a certificate need not be furnished with respect to any securities so deposited, if the fair value thereof as set forth in the related Officer's Certificate is less than $25,000 or less than one percent of the then outstanding Note Principal Balances of the Notes.

(iii)    Whenever any property or securities are to be released from the lien of this Indenture, the Issuing Entity shall also furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of each person signing such certificate as to the fair value (within 90 days prior to such release) of the property or securities proposed to be released and stating that in the opinion of such person the proposed release will not impair the security under this Indenture in contravention of the provisions hereof.

(iv)    Whenever the Issuing Entity is required to furnish to the Indenture Trustee, the Securities Administrator and the Note Insurer an Officer's Certificate certifying or stating the opinion of any signer thereof as to the matters described in clause (iii) above, the Issuing Entity shall also furnish to the Indenture Trustee and the Securities Administrator an Independent Certificate as to the same matters if the fair value of the property or securities and of all other property or securities released from the lien of this Indenture since the commencement of the then-current calendar year, as set forth in the certificates required by clause (iii) above and this clause (iv), equals 10% or more of the Note Principal Balances of the Notes, but such certificate need not be furnished in the case of any release of property or securities if the fair value thereof as set forth in the related Officer's Certificate is less than $25,000 or less than one percent of the then outstanding Note Principal Balances of the Notes.

Section 11.02 Form of Documents Delivered to Indenture Trustee. In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an Authorized Officer of the Issuing Entity may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which his certificate or opinion is based are erroneous. Any such certificate of an Authorized Officer or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Seller or the Issuing Entity, stating that the information with respect to such factual matters is in the possession of the Seller or the Issuing

72

Entity, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture, in connection with any application or certificate or report to the Indenture Trustee, it is provided that the Issuing Entity shall deliver any document as a condition of the granting of such application, or as evidence of the Issuing Entity's compliance with any term hereof, it is intended that the truth and accuracy, at the time of the granting of such application or at the effective date of such certificate or report (as the case may be), of the facts and opinions stated in such document shall in such case be conditions precedent to the right of the Issuing Entity to have such application granted or to the sufficiency of such certificate or report. The foregoing shall not, however, be construed to affect the Indenture Trustee's right to rely upon the truth and accuracy of any statement or opinion contained in any such document as provided in Article VI.

Section 11.03 <u>Acts of Noteholders</u>. (a) Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Noteholders in person or by agents duly appointed in writing; and except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Indenture Trustee, and, where it is hereby expressly required, to the Issuing Entity. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 6.01 hereof) conclusive in favor of the Indenture Trustee and the Issuing Entity, if made in the manner provided in this Section 10.03 hereof.

(b)    The fact and date of the execution by any person of any such instrument or writing may be proved in any manner that the Indenture Trustee deems sufficient.

(c)    The ownership of Notes shall be proved by the Note Registrar.

(d)    Any request, demand, authorization, direction, notice, consent, waiver or other action by the Holder of any Notes shall bind the Holder of every Note issued upon the registration thereof or in exchange therefor or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Indenture Trustee or the Issuing Entity in reliance thereon, whether or not notation of such action is made upon such Note.

Section 11.04 <u>Notices etc., to Indenture Trustee Issuing Entity, Securities Administrator, Note Insurer and Rating Agencies</u>.  Any request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders or other documents provided or permitted by this Indenture shall be in writing and if such request, demand, authorization, direction, notice, consent, waiver or act of Noteholders is to be made upon, given or furnished to or filed with:

73

(i)      the Indenture Trustee by any Noteholder or by the Issuing Entity shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Indenture Trustee at its Corporate Trust Office. The Indenture Trustee shall promptly transmit any notice received by it from the Noteholders to the Issuing Entity and the Note Insurer;

(ii)     the Securities Administrator by any Noteholder or by the Issuing Entity shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Securities Administrator at the Corporate Trust Office, or such other address as may hereafter be furnished to the other parties hereto in writing. The Securities Administrator shall promptly transmit any notice received by it from the Noteholders to the Issuing Entity;

(iii)    the Note Insurer, XL Capital Assurance Inc., 1221 Avenue of the Americas, New York, New York 10020-1001, Attention: Surveillance (SACO I Trust 2006-1, Policy No. CA02695A), with a copy to the General Counsel at the above address, and in each case in which a demand, notice or other communication to the Note Insurer refers to a Default, an Event of Default or any event with respect to which failure on the part of the Note Insurer to respond shall be deemed to constitute consent or acceptance, then such demand, notice or other communication shall be marked to indicate "URGENT MATERIAL ENCLOSED"; or

(iv)     the Issuing Entity by the Indenture Trustee or by any Noteholder shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing and mailed first-class, postage prepaid to the Issuing Entity addressed to: SACO I Trust 2006-1, in care of Owner Trustee at the Corporate Trust Office, or at any other address previously furnished in writing to the Indenture Trustee by the Issuing Entity. The Issuing Entity shall promptly transmit any notice received by it from the Noteholders to the Indenture Trustee.

Notices required to be given to the Rating Agencies by the Issuing Entity, the Indenture Trustee, the Securities Administrator or the Owner Trustee shall be in writing, mailed first-class postage pre-paid: in the case of Moody's, to Moody's, at the following address: Moody's Investors Service, Inc., 99 Church Street, New York, New York 10007; and in the case of S&P, Standard & Poor's, a division of The McGraw-Hill Companies, Inc., 55 Water Street, New York, New York 10041, or as to each of the foregoing, at such other address as shall be designated by written notice to the other parties.

Section 11.05  Notices to Noteholders; Waiver.  Where this Indenture provides for notice to Noteholders of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if made, given, furnished or filed in writing and mailed, first-class, postage prepaid to each Noteholder affected by such event, at such Person's address as it appears on the Note Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice. In any case where notice to Noteholders is given by mail, neither the failure to mail such notice nor any defect in any notice so mailed to any particular Noteholder shall affect the sufficiency of such notice with respect to other Noteholders, and any notice that is mailed in the manner herein provided shall conclusively be presumed to have been duly given regardless of whether such notice is in fact actually received.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such

[TPW: NYLEGAL:422682.7] 17297-00403 06/08/2006 03:32 PM

waiver shall be the equivalent of such notice. Waivers of notice by Noteholders shall be filed with the Indenture Trustee but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such a waiver.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Noteholders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Indenture Trustee shall be deemed to be a sufficient giving of such notice.

Where this Indenture provides for notice to the Rating Agency, failure to give such notice shall not affect any other rights or obligations created hereunder, and shall not under any circumstance constitute an Event of Default.

Section 11.06 Conflict with Trust Indenture Act. If any provision hereof limits, qualifies or conflicts with another provision hereof that is required to be included in this Indenture by any of the provisions of the Trust Indenture Act, such required provision shall control.

The provisions of TIA §§ 310 through 317 that impose duties on any Person (including the provisions automatically deemed included herein unless expressly excluded by this Indenture) are a part of and govern this Indenture, whether or not physically contained herein.

Section 11.07 Effect of Headings. The Article and Section headings herein are for convenience only and shall not affect the construction hereof.

Section 11.08 Successors and Assigns. All covenants and agreements in this Indenture and the Notes by the Issuing Entity shall bind its successors and assigns, whether so expressed or not. All agreements of the Indenture Trustee in this Indenture shall bind its successors, co-trustees and agents.

Section 11.09 Separability. In case any provision in this Indenture or in the Notes shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 11.10 Legal Holidays. In any case where the date on which any payment is due shall not be a Business Day, then (notwithstanding any other provision of the Notes or this Indenture) payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest shall accrue for the period from and after any such nominal date.

Section 11.11 GOVERNING LAW. THIS INDENTURE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAWS, WHICH SHALL APPLY HERETO), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 11.12 <u>Counterparts</u>.    This Indenture may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 11.13 <u>Recording of Indenture</u>.    If this Indenture is subject to recording in any appropriate public recording offices, such recording is to be effected by the Issuing Entity and at its expense accompanied by an Opinion of Counsel at its expense (which may be counsel to the Indenture Trustee or any other counsel reasonably acceptable to the Indenture Trustee) to the effect that such recording is necessary either for the protection of the Noteholders or any other Person secured hereunder or for the enforcement of any right or remedy granted to the Indenture Trustee under this Indenture.

Section 11.14 <u>Issuing Entity Obligation</u>.    No recourse may be taken, directly or indirectly, with respect to the obligations of the Issuing Entity, the Owner Trustee or the Securities Administrator on the Notes or under this Indenture or any certificate or other writing delivered in connection herewith or therewith, against (i) the Indenture Trustee or the Owner Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuing Entity or (iii) any partner, owner, beneficiary, agent, officer, director, employee or agent of the Securities Administrator, the Owner Trustee in its individual capacity, any holder of a beneficial interest in the Issuing Entity, the Securities Administrator, the Owner Trustee or the Indenture Trustee or of any successor or assign of the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such Person may have expressly agreed (it being understood that the Indenture Trustee and the Owner Trustee have no such obligations in their individual capacity) and except that any such partner, owner or beneficiary shall be fully liable, to the extent provided by applicable law, for any unpaid consideration for stock, unpaid capital contribution or failure to pay any installment or call owing to such entity. For all purposes of this Indenture, in the performance of any duties or obligations of the Issuing Entity hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Article VI, VII and VIII of the Trust Agreement.

Section 11.15 <u>No Petition</u>.    The Indenture Trustee and the Securities Administrator, by entering into this Indenture, each Noteholder, by accepting a Note and each Certificateholder, by accepting a Certificate, hereby covenant and agree that they will not at any time prior to one year from the date of termination hereof, institute against the Depositor or the Issuing Entity, or join in any institution against the Depositor or the Issuing Entity of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to the Notes, this Indenture or any of the Basic Documents; provided however, that nothing herein shall prohibit the Indenture Trustee from filing proofs of claim in any proceeding.

Section 11.16 <u>Inspection</u>.    The Issuing Entity agrees that, at its expense, on reasonable prior notice, it shall permit any representative of the Indenture Trustee, the Note Insurer or the Securities Administrator, during the Issuing Entity's normal business hours, to examine all the books of account, records, reports and other papers of the Issuing Entity, to make copies and extracts therefrom, to cause such books to be audited by Independent certified public accountants, and to discuss the Issuing Entity's affairs, finances and accounts with the Issuing Entity's officers, employees, and Independent certified public accountants, all at such reasonable

76

times and as often as may be reasonably requested. The Indenture Trustee and the Note Insurer shall cause its representatives to hold in confidence all such information except to the extent disclosure may be required by law (and all reasonable applications for confidential treatment are unavailing) and except to the extent that the Indenture Trustee, the Note Insurer or the Securities Administrator may reasonably determine that such disclosure is consistent with its obligations hereunder.

Section 11.17 <u>Benefits of Indenture</u>.  The Note Insurer and its successors and assigns shall be a third-party beneficiary to the provisions of this Indenture.  To the extent that this Indenture confers upon or gives or grants to the Note Insurer any right, remedy or claim under or by reason of this Indenture, the Note Insurer may enforce any such right, remedy or claim conferred, given or granted hereunder.  Nothing in this Indenture, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, and the Noteholders and the Note Insurer, any benefit or any legal or equitable right, remedy or claim under this Indenture.

Section 11.18 <u>Securities Administrator to Hold Policy</u>.  The Securities Administrator will hold the Policy in trust as agent for the Class A Noteholders  for the purpose of making claims thereon and distributing the proceeds thereof.  Each Class A Noteholder, by accepting its Note, appoints the Securities Administrator as attorney-in-fact for the purpose of making claims on the Policy.  The Securities Administrator shall surrender the Policy to the Note Insurer for cancellation upon the expiration of the term of the Policy following the retirement of the Class A Notes.

[TPW: NYLEGAL:422682.7] 17297-00403  06/08/2006 03:32 PM

IN WITNESS WHEREOF, the Issuing Entity, the Securities Administrator and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

SACO I TRUST 2006-1,
as Issuing Entity

By:  Wilmington Trust Company, not in its
individual capacity but solely as Owner Trustee

By:_____
Name:   Patricia A. Evans
Title:   Vice President


LASALLE BANK NATIONAL ASSOCIATION,
as Securities Administrator

By: _____
Name:
Title:


CITIBANK, N.A.,
as Indenture Trustee

By:_____
Name:
Title:

75

IN WITNESS WHEREOF, the Issuing Entity, the Securities Administrator and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

SACO I TRUST 2006-1,
as Issuing Entity

By: Wilmington Trust Company, not in its
individual capacity but solely as Owner Trustee

By:_____
Name:
Title:


LASALLE BANK NATIONAL ASSOCIATION,
as Securities Administrator

By: _____
Name:      CHRISTOPHER LEWIS
Title:         Assistant Vice President


CITIBANK, N.A.,
as Indenture Trustee

By:_____
Name:
Title:

IN WITNESS WHEREOF, the Issuing Entity, the Securities Administrator and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

SACO I TRUST 2006-1,
as Issuing Entity

By: Wilmington Trust Company, not in its
individual capacity but solely as Owner Trustee

By:_____
Name:
Title:


LASALLE BANK NATIONAL ASSOCIATION,
as Securities Administrator

By: _____
Name:
Title:


CITIBANK, N.A.,
as Indenture Trustee

By:_____
Name:
Title:
                        JOHN HANNON, AVP
                        Citibank Agency & Trust
                        388 Greenwich Street/14th Floor
                        New York, NY 10013
                        212-816-5693

75

STATE OF DELAWARE              )
                              )
COUNTY OF New Castle           )

On the 28th day of February, 2006, before me personally appeared _Ruth Evans_ to me known, who being by me duly sworn, did depose and say, that he/she is a(n) _Vice President_ of the Owner Trustee, one of the entities described in and which executed the above instrument; and that he/her signed his/her name thereto by like order.

_Michel Lawren Centrell_
Notary Public
_Michele C. Itang_

[NOTARIAL SEAL]

MICHELE LAUREN CENTRELLA
Notary Public - Delaware
My Comm. Expires May 17, 2006

77

STATE OF _Illinois_            )
                              )
COUNTY OF _Cook_            )

On the 28th day of February, 2006, before me, a notary public in and for said State, personally appeared _Christopher Lewis_, known to me to be a(n) _Assistant Vice President_ of LaSalle Bank National Association, the entity that executed the within instrument, and also known to me to be the person who executed it on behalf of said entity, and acknowledged to me that such entity executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_Diane O'Neal_
Notary Public

[NOTARIAL SEAL]

"OFFICIAL SEAL"
DIANE O'NEAL
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 09/22/2009

76

STATE OF _N Y_          )
                                      )
COUNTY OF _Queens_     )

      On the 28th day of February, 2006, before me personally appeared John Hann to me known, who being by me duly sworn, did depose and say, that he/she is a(n) Vice President of the Indenture Trustee, one of the corporations described in and which executed the above instrument; and that he/she signed his/her name thereto by like order.

_____
Notary Public

[NOTARIAL SEAL]

RAY C. RENIE
Notary Public, State of New York
No. 41-4862896
Qualified in Queens County
Commission Expires Jan. 26, 200 7

78

APPENDIX A
DEFINITIONS

Accepted Master Servicing Practices: With respect to any HELOC, those customary mortgage master servicing practices of prudent mortgage master servicing institutions that master service HELOCs of the same type and quality as such HELOCs in the jurisdiction where the related Mortgaged Property is located, to the extent applicable to the Master Servicer (except in its capacity as successor to either Servicer).

Accepted Servicing Practices: With respect to each EMC HELOC, those mortgage servicing practices (including collection procedures) that are in accordance with all applicable statutes, regulations and prudent mortgage banking practices for similar revolving home equity line of credit mortgage loans of the same type and quality as HELOCs in the jurisdiction where the related Mortgaged Property is located.

Account: The Master Servicer Collection Account, the Payment Account, the Net WAC Cap Rate Carryover Reserve Account and the related Protected Account, as the context may require.

Accrual Period: With respect to the Notes and the Class E Certificates and any Payment Date, the period from and including the preceding Payment Date (or from the Closing Date, in the case of the first Payment Date) to and including the day prior to the current Payment Date. Calculations of interest on the Notes and the Class E Certificates will be based on a 360-day year and the actual number of days elapsed during the related accrual period.

Additional Balance:  As to any HELOC, the aggregate amount of all Draws conveyed to the Trust Fund.

Administration Agreement: The Administration Agreement, dated as of February 28, 2006, among the Issuer, the Depositor, the Owner Trustee and the Securities Administrator.

Adjustment Date: As to each HELOC, each date set forth in the related Mortgage Note on which an adjustment to the interest rate on such HELOC becomes effective.

Affiliate: With respect to any Person, any other Person controlling, controlled by or under common control with such Person. For purposes of this definition, "control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise and "controlling" and "controlled" shall have meanings correlative to the foregoing.

Applicable Credit Rating: For any long-term deposit or security, a credit rating of AAA in the case of each of S&P and Fitch or Aaa in the case of Moody's. For any short-term deposit or security, or a rating of A-1+ in the case of each of S&P and Fitch or P-1 in the case of Moody's.

Appraised Value: For any Mortgaged Property related to a HELOC, the amount set forth as the appraised value of such Mortgaged Property in an appraisal made for the mortgage originator in connection with its origination of the related HELOC.

Assignment Agreement: The agreement whereby the Servicing Agreement was assigned to the Indenture Trustee for the benefit of the Noteholders and the Note Insurer.

Assignment of Mortgage: An assignment of Mortgage, notice of transfer or equivalent instrument, in recordable form, which is sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the sale of the Mortgage, which assignment, notice of transfer or equivalent instrument may be in the form of one or more blanket assignments covering Mortgages secured by Mortgaged Properties located in the same county, if permitted by law.

Authorized Newspaper: A newspaper of general circulation in the Borough of Manhattan, The City of New York, printed in the English language and customarily published on each Business Day, whether or not published on Saturdays, Sundays or holidays.

Authorized Officer: With respect to the Issuer, any officer of the Owner Trustee who is authorized to act for the Owner Trustee in matters relating to the Issuer and who is identified on the list of Authorized Officers delivered by the Owner Trustee to the Indenture Trustee and Securities Administrator on the Closing Date (as such list may be modified or supplemented from time to time thereafter).

Available Principal Payment Amount: With respect to the Notes and any Payment Date, the sum of:

(i)    the greater of (A) zero and (B)

(1)    with respect to any Payment Date during the Managed Amortization Period and if the Sponsor's Pro Rata Test is not met, the Principal Collection Amount less (a) the aggregate Draws for such Payment Date and (b) the aggregate Certificate Principal Balance of the Class S Certificates immediately prior to that Payment Date;

(2)    with respect to any Payment Date during the Managed Amortization Period and if the Sponsor's Certificate Pro Rata Test is met, the Floating Allocation Percentage of the Principal Collection Amount less the aggregate Draws for the related Payment Date; and

(3)    with respect to any Payment Date during the Rapid Amortization Period, the Principal Collection Amount; and

(ii)    the Overcollateralization Increase Amount for that Payment Date,

minus

(iii)    the Overcollateralization Reduction Amount for that Payment Date; and

(iv)    the servicing fees and Extraordinary Trust Fund Expenses (subject to the Extraordinary Trust Fund Expense Cap), to the extent not already covered by a reduction to the Interest Collection Amount

2

Bankruptcy Code: The United States Bankruptcy Code, as amended as codified in 11 U.S.C. §§ 101-1330.

Bankruptcy Loss: With respect to any HELOC, any Deficient Valuation or Debt Service Reduction related to such HELOC as reported by the related Servicer to the Master Servicer.

Basic Documents: The Sale and Servicing Agreement, the Servicing Agreement, the Indenture, the Trust Agreement, the Mortgage Loan Purchase Agreement, the Custodial Agreement, the Administration Agreement, the Insurance Agreement and the other documents and certificates delivered in connection with any of the above.

Beneficial Owner: With respect to any Note or Certificate, the Person who is the beneficial owner of such Note or Certificate as reflected on the books of the Depository or on the books of a Person maintaining an account with such Depository (directly as a Depository Participant or indirectly through a Depository Participant, in accordance with the rules of such Depository).

Book-Entry Notes: Beneficial interests in the Class A, Class M-1, Class M-2, Class M-3 and Class M-4 Notes, ownership and transfers of which shall be made through book entries by the Depository as described in the Indenture.

Business Day: Any day other than (i) a Saturday or a Sunday, or (ii) a day on which the New York Stock Exchange or Federal Reserve is closed or on which banking institutions in the jurisdiction in which the Indenture Trustee, the Owner Trustee, the Master Servicer, the Servicers or the Securities Administrator is located are authorized or obligated by law or executive order to be closed.

Calendar Quarter: A calendar quarter shall consist of one of the following time periods in any given year: January 1 through March 31, April 1 through June 30, July 1 through September 30, and October 1 through December 31.

Certificate Paying Agent: Initially, the Securities Administrator, in its capacity as Certificate Paying Agent, or any successor to Securities Administrator in such capacity.

Certificate Register: The register maintained by the Certificate Registrar in which the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges of Certificates.

Certificate Registrar: Initially, the Securities Administrator, in its capacity as Certificate Registrar, or any successor to the Securities Administrator in such capacity pursuant to the Trust Agreement.

Certificate of Trust: The Certificate of Trust filed for the Trust pursuant to Section 3810(a) of the Statutory Trust Statute.

Certificateholder: The Person in whose name a Certificate is registered in the Certificate Register. Owners of Certificates that have been pledged in good faith may be

regarded as Holders if the pledgee establishes to the satisfaction of the Securities Administrator or the Owner Trustee, as the case may be, the pledgee's right so to act with respect to such Certificates and that the pledgee is not the Issuer, any other obligor upon the Certificates or any Affiliate of any of the foregoing Persons.

Certificate Principal Balance:  With respect to the Class S Certificates shall equal the amount by which Draws on any Payment Date exceed the Principal Collection Amount, minus (i) all amounts in respect of principal distributed to the Class S Certificates on previous Payment Dates and (ii) any Charge-Off Amounts allocated to such Class on previous Payment Dates.  With respect to the Class E Certificates shall equal an amount equal to the Uncertificated Principal Balance of the Class E Interest.

Certificates:  The Class E, Class S, Class R and Class RX Certificates.

Charge-Off Amount:  With respect to any Charged-Off HELOC, the amount of the Stated Principal Balance of such HELOC that has been written down.

Charged-Off HELOC:  Any HELOC that is more than 180 days (or, earlier, in accordance with the related Servicer's servicing practices) past due.

Class:  Any of the Class A Notes or Class M Notes, or any of the Class E, Class S, Class RX or Class R Certificates.

Class A Principal Payment Amount:  With respect to any Payment Date is the lesser of (I) the Available Principal Payment Amount and, with respect to the Class A Notes, any amounts drawn on the Policy for Charged-Off HELOCs, for such Payment Date and (II) an amount equal to the excess (if any) of (A) the aggregate Note Principal Balance of the Class A Notes immediately prior to such Payment Date over (B) the lesser of (x) the product of (1) the Invested Amount as of the end of the related Collection Period multiplied by (2) 84.50% and (y) (1) the Invested Amount as of the end of the related Collection Period, less (2) the Overcollateralization Floor.

Class E Distribution Amount:  With respect to any Payment Date, the sum of (i) the Current Interest for the Class E Interest for such Payment Date, (ii) any Overcollateralization Reduction Amount for such Payment Date and (iii) without duplication, any Subsequent Recoveries not distributed to the Notes on such Payment Date; provided, however that on any Payment Date after the Payment Date on which the Note Principal Balances of the Notes have been reduced to zero, the Class E Distribution Amount shall include the Overcollateralization Amount.

Class E Interest Rate:  With respect to the Class E Interest and any Payment Date, a rate per annum equal to the percentage equivalent of a fraction, the numerator of which is the sum of the amount determined for each REMIC I Regular Interest equal to (x) the excess of the Uncertificated REMIC I Pass-Through Rate for such REMIC I Regular Interest over the Marker Rate, applied to (y) a notional amount equal to the Uncertificated Principal Balance of such REMIC I Regular Interest, and the denominator of which is the aggregate Uncertificated Principal Balance of such REMIC I Regular Interests.

4

Class M Notes: The Class M-1, Class M-2, Class M-3 and Class M-4 Notes, each in the form attached as Exhibit A-2 to the Indenture.

Class M-1 Principal Payment Amount: With respect to any Payment Date is the lesser of (I) the Available Principal Payment Amount remaining after payment of the Class A Principal Payment Amount on such Payment Date and (II) an amount equal to the excess (if any) of (A) the sum of (1) the Note Principal Balances of the Class A Notes (after taking into account the payment of the Class A Principal Payment Amount for that Payment Date) and (2) the Note Principal Balance of the Class M-1 Notes immediately prior to such Payment Date over (B) the lesser of (x) the product of (1) the Invested Amount as of the end of the related Collection Period multiplied by (2) 87.50% and (y) (1) the Invested Amount as of the end of the related Collection Period, less (2) the Overcollateralization Floor.

Class M-2 Principal Payment Amount: With respect to any Payment Date is the lesser of (I) the Available Principal Payment Amount remaining after payment of the Class A Principal Payment Amount and Class M-1 Principal Payment Amount on such Payment Date and (II) an amount equal to the excess (if any) of (A) the sum of (1) the Note Principal Balances of the Class A Notes and Class M-1 Notes (after taking into account the payment of the Class A Principal Payment Amount and Class M-1 Principal Payment Amount for that Payment Date) and (2) the Note Principal Balance of the Class M-2 Notes immediately prior to such Payment Date over (B) the lesser of (x) the product of (1) the Invested Amount as of the end of the related Collection Period multiplied by (2) 90.50% and (y) (1) the Invested Amount as of the end of the related Collection Period, less (2) the Overcollateralization Floor.

Class M-3 Principal Payment Amount: With respect to any Payment Date is the lesser of (I) the Available Principal Payment Amount remaining after payment of the Class A, Class M-1 and Class M-2 Principal Payment Amounts on such Payment Date and (II) an amount equal to the excess (if any) of (A) the sum of (1) the Note Principal Balances of the Class A, Class M-1 and Class M-2 Notes (after taking into account the payment of the Class A, Class M-1 and Class M-2 Principal Payment Amounts for that Payment Date) and (2) the Note Principal Balance of the Class M-3 Notes immediately prior to such Payment Date over (B) the lesser of (x) the product of (1) the Invested Amount as of the end of the related Collection Period multiplied by (2) 92.90% and (y) (1) the Invested Amount as of the end of the related Collection Period, less (2) the Overcollateralization Floor.

Class M-4 Principal Payment Amount: With respect to any Payment Date is the lesser of (I) the Available Principal Payment Amount remaining after payment of the Class A, Class M-1, Class M-2 and Class M-3 Principal Payment Amounts on such Payment Date and (II) an amount equal to the excess (if any) of (A) the sum of (1) the Note Principal Balances of the Class A, Class M-1, Class M-2 and Class M-3 Notes (after taking into account the payment of the Class A, Class M-1, Class M-2 and Class M-3 Principal Payment Amounts for that Payment Date) and (2) the Note Principal Balance of the Class M-4 Notes immediately prior to such Payment Date over (B) the lesser of (x) the product of (1) the Invested Amount as of the end of the related Collection Period multiplied by (2) 95.50% and (y) (1) the Invested Amount as of the end of the related Collection Period, less (2) the Overcollateralization Floor.

Class S Floating Allocation Percentage:  With respect to any Payment Date, 100% minus the Floating Allocation Percentage.

Class S Principal Payment Amount:  With respect to the Class S Certificates, the sum of : (i) with respect to any Payment Date during the Managed Amortization Period and if the Sponsor's Certificate Pro Rata Test is not met, the lesser of (a) the Certificate Principal Balance of the Class S Certificates immediately prior to such Payment Date and (b) the Principal Collection Amount less the aggregate Draws for the related Payment Date, and (ii) with respect to any Payment Date during the Managed Amortization Period and if the Sponsor's Certificate Pro Rata Tests is met, the Class S Floating Allocation Percentage of the Principal Collection Amount less the aggregate Draws for the related Payment Date.

Closing Date: February 28, 2006.

Code: The Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder.

Collateral: The meaning specified in the Granting Clause of the Indenture.

Collection Period: With respect to any Payment Date and the HELOCs, the calendar month immediately preceding the calendar month in which such Payment Date occurs.

Commission: The Securities and Exchange Commission.

Constant Draw Rate:  A constant rate of additional balances drawn on the HELOCs.

Corporate Trust Office: With respect to the Indenture Trustee, the principal corporate trust office of the Indenture Trustee at which at any particular time its corporate trust business shall be administered, which office at the date of the execution of this instrument is located at 388 Greenwich Street, 14th Floor, New York, NY 10013, Attention: Agency and Trust – SACO I Trust 2006-1. With respect to the Owner Trustee, the principal corporate trust office of the Owner Trustee at which at any particular time its corporate trust business shall be administered, which office at the date of the execution of this Trust Agreement is located at Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890, Attention: Corporate Trust Administration.   With respect to the Securities Administrator, Certificate Registrar, Note Registrar and Paying Agent, the Corporate Trust Office of the Note Registrar and the Certificate Registrar for purposes of presentment and surrender of the Notes and the Certificates for the final payment or distribution thereon and for transfer is located at 135 South LaSalle Street, Chicago, IL 60603, Attention: Global Securities and Trust Services Group – SACO I Trust 2006-1, or any other address that the Securities Administrator may designate from time to time by notice to the Noteholders and the Certificateholders.

Corresponding Note:  With respect to each REMIC I Regular Interest (other than REMIC I Regular Interests AA and ZZ), the Note with the corresponding designation.

CPR:  A constant rate of prepayment on the HELOCs.

6

Credit Line Agreement: With respect to any HELOC, the credit line account agreement executed by the related Mortgagor and any amendment or modification thereof.

Cumulative Charge-Off Percentage: With respect to the Notes and any Payment Date is equal to the percentage obtained by dividing (x) the aggregate Charge-Off Amounts on the HELOCs incurred since the Cut-off Date through the end of the related Collection Period, minus the principal portion of any amounts received in respect of the HELOCs following the charge-off, by (y) the aggregate Stated Principal Balance of the HELOCs as of the Cut-off Date.

Current Interest: With respect to each Class of Notes and each Payment Date is the interest accrued at the applicable Note Interest Rate for the applicable accrual period on the Note Principal Balance of such Class. With respect to the Class E Interest and each Payment Date is the interest accrued at the Class E Interest Rate for the applicable Accrual Period on the Notional Amount of such Class. With respect to the Class E Certificates and each Payment Date is 100% of the amounts distributed in respect of the Class E Interest.

Current Specified Enhancement Percentage: With respect to any Payment Date, the percentage obtained by dividing (x) the sum of (i) the aggregate Note Principal Balance of the Class M Notes and (ii) the Overcollateralization Amount, in each case prior to the payment of the Available Principal Payment Amount on such Payment Date, by (y) the Invested Amount as of the end of the related Collection Period

Custodial Agreement: The custodial agreement, dated as of February 28, 2006, among the Indenture Trustee, the Custodian, the Sponsor, the Master Servicer and the Depositor, relating to the SACO I Trust 2006-1, Mortgage-Backed Notes, Series 2006-1.

Custodian: LaSalle Bank National Association, and its successors and assigns.

Cut-off Date: With respect to the HELOCs, January 31, 2006.

Cut-off Date Balance: $310,097,406.60.

Cut-off Date Principal Balance: With respect to any HELOC, the unpaid principal balance thereof as of the Cut-off Date after applying the principal portion of Monthly Payments due on or before such date, whether or not received, and without regard to any payments due after such date.

Debt Service Reduction: Any reduction of the Scheduled Payments which a Mortgagor is obligated to pay with respect to a HELOC as a result of any proceeding under the Bankruptcy Code or any other similar state law or other proceeding.

Default: Any occurrence which is or with notice or the lapse of time or both would become an Event of Default.

Deficiency Amount: The meaning specified in the Policy.

Deficient Valuation: With respect to any HELOC, a valuation of the Mortgaged Property by a court of competent jurisdiction in an amount less than the then outstanding

indebtedness under the HELOC, which valuation results from a proceeding initiated under the Bankruptcy Code or any other similar state law or other proceeding.

Definitive Notes: The meaning specified in Section 4.08 of the Indenture.

Depositor: Bear Stearns Asset Backed Securities I LLC, a Delaware limited liability company, or its successor in interest.

Depository: The Depository Trust Company, the nominee of which is Cede & Co., or any successor thereto.

Depository Participant: A Person for whom, from time to time, the Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Designated Depository Institution: A depository institution (commercial bank, federal savings bank, mutual savings bank or savings and loan association) or trust company (which may include the Indenture Trustee), the deposits of which are fully insured by the FDIC to the extent provided by law.

Determination Date: With respect to any Payment Date, the 15th day of the month of such Payment Date or, if such 15th day is not a Business Day, the immediately preceding Business Day.

Draw: With respect to any HELOC, an additional borrowing by the related mortgagor subsequent to the Cut-off Date in accordance with the related mortgage note.

Draw Period: With respect to any HELOC, the period during which the related mortgagor is permitted to make Draws.

Due Date: With respect to each HELOC, the day of the month on which each scheduled Monthly Payment is due.

Eligible Account: An account that is any of the following: (i) maintained with a depository institution the short-term debt obligations of which have been rated by each Rating Agency in its highest rating category available, or (ii) an account or accounts in a depository institution in which such accounts are fully insured to the limits established by the FDIC, provided that any deposits not so insured shall, to the extent acceptable to each Rating Agency, as evidenced in writing, be maintained such that (as evidenced by an Opinion of Counsel delivered to the Indenture Trustee, each Rating Agency and the Note Insurer) the Indenture Trustee have a claim with respect to the funds in such account or a perfected first priority security interest against any collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained, or (iii) in the case of the Master Servicer Collection Account and the Payment Account, a trust account or accounts maintained in the corporate trust division of the Master Servicer or Securities Administrator, or (iv) an account or accounts of a depository institution acceptable to each Rating Agency and the Note Insurer in writing (in the case of the Rating Agencies, as evidenced in writing by each Rating Agency that

8

use of any such account as the Master Servicer Collection Account or the Payment Account will not reduce the rating assigned to any of the Notes by such Rating Agency as of the Closing Date by such Rating Agency without regard to the Policy).

EMC: EMC Mortgage Corporation, or its successor in interest.

EMC HELOC: Any HELOC serviced by EMC.

ERISA: The Employee Retirement Income Security Act of 1974, as amended.

Event of Default: With respect to the Indenture, any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(i)     a failure by the Issuer to pay Current Interest on the Class A, Class M-1, Class M-2, Class M-3 or Class M-4 Notes on any Payment Date and such default shall continue for a period of one Business Day; or

(ii)     the failure by the Issuer on the Final Scheduled Payment Date to pay all Current Interest of any Class of Notes, all remaining Net WAC Cap Rate Carryover Amounts to any of the Class of Notes and to reduce the Note Principal Balances of any Class of Notes to zero; or

(iii)     there occurs a default in the observance or performance of any covenant or agreement of the Issuer made in the Indenture, or any representation or warranty of the Issuer made in the Indenture or in any certificate or other writing delivered pursuant hereto or in connection herewith proving to have been incorrect in any material respect as of the time when the same shall have been made, and such default shall continue or not be cured, or the circumstance or condition in respect of which such representation or warranty was incorrect shall not have been eliminated or otherwise cured, for a period of 30 days after there shall have been given, by registered or certified mail, to the Issuer by the Indenture Trustee (with a copy to the Note Insurer) or to the Issuer and the Indenture Trustee by the Note Insurer or Holders of at least 25% of the aggregate Note Principal Balance of the Outstanding Notes, a written notice specifying such default or incorrect representation or warranty and requiring it to be remedied and stating that such notice is a notice of default hereunder; or

(iv)     there occurs the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of the Issuer or any substantial part of the Trust Estate in an involuntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Trust Estate, or ordering the winding-up or liquidation of the Issuer's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or

(v)     there occurs the commencement by the Issuer of a voluntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in

9

effect, or the consent by the Issuer to the entry of an order for relief in an involuntary case under any such law, or the consent by the Issuer to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the assets of the Trust Estate, or the making by the Issuer of any general assignment for the benefit of creditors, or the failure by the Issuer generally to pay its debts as such debts become due, or the taking of any action by the Issuer in furtherance of any of the foregoing.

Event of Servicer Termination: The occurrence of an event permitting termination or removal of the related Servicer under the Servicing Agreement or the Sale and Servicing Agreement, as applicable, as servicer of the HELOCs.

Excess Liquidation Proceeds: To the extent that such amount is not required by law to be paid to the related Mortgagor, the amount, if any, by which Liquidation Proceeds with respect to a Charged-Off HELOC exceed the sum of (i) the Outstanding Principal Balance of such HELOC and accrued but unpaid interest at the related Mortgage Interest Rate through the last day of the month in which the related Liquidation Date occurs, (ii) related Liquidation Expenses (including Liquidation Expenses which are payable therefrom to the Servicers or the Master Servicer in accordance with the Servicing Agreement or Sale and Servicing Agreement) and (iii) unreimbursed advances by the Servicers or the Master Servicer and Monthly Advances.

Excess Overcollateralization Amount: With respect to HELOCs and any Payment Date, the excess, if any, of the Overcollateralization Amount on that Payment Date over the Overcollateralization Target Amount.

Exchange Act: The Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

Expense Adjusted Mortgage Rate: With respect to any HELOC or REO Property is the then applicable interest rate thereon less the Expense Fee Rate.

Expense Fee Rate: With respect to any HELOC or REO Property is the sum of (i) the Servicing Fee Rate, (ii) the Master Servicing Fee Rate and (iii) the premium due to the Note Insurer under the Policy multiplied by a fraction the numerator of which is the aggregate Note Principal Balance of the Class A Notes and the denominator of which is the Stated Principal Balance of the HELOCs, expressed as a per annum rate.

Expenses: The meaning specified in Section 7.02 of the Trust Agreement

Extraordinary Trust Fund Expenses: Any amounts reimbursable to the Securities Administrator or the Indenture Trustee, or any director, officer, employee or agent of the Securities Administrator or the Indenture Trustee, from the Trust Estate, any amounts reimbursable to the Depositor, the Master Servicer, the Securities Administrator, the Custodian, or any director, officer, employee or agent thereof, and any other amounts payable or reimbursable from the Trust Estate as Extraordinary Trust Fund Expenses pursuant to the terms of the Sale and Servicing Agreement, the Indenture, the Trust Agreement, the Administration Agreement, the Custodial Agreement, the Policy or the Insurance Agreement, including

10

Extraordinary Trust Fund Expenses that are not reimbursed in any calendar year as a result of the Extraordinary Trust Fund Expenses Cap. Extraordinary Trust Fund Expenses for any calendar year, to the extent they may exceed the Extraordinary Trust Fund Expenses Cap, shall be paid pro rata among the parties entitled thereto from the amounts available therefor.

Extraordinary Trust Fund Expenses Cap: $250,000 for each calendar year; provided, however, that such cap will not apply to any costs and expenses (i) of the Indenture Trustee incurred in connection with the termination of the Securities Administrator or the Master Servicer, the transfer of master servicing to a successor master servicer, any costs incurred with the replacement of the Custodian and costs and expenses incurred following an Event of Default (so long as such Event of Default is continuing), or (ii) of the Master Servicer incurred in connection with the termination of either Servicer and the transfer of servicing to a successor servicer.

Fannie Mae: Fannie Mae (formally, Federal National Mortgage Association), or any successor thereto.

FDIC: The Federal Deposit Insurance Corporation or any successor thereto.

Final Certification: The final certification delivered by the Custodian pursuant to Section 2.3(c) of the Custodial Agreement in the form attached thereto as Exhibit Three.

Final Scheduled Payment Date: With respect to each Class of Notes, the Payment Date in September 2035.

Fitch: Fitch, Inc.

Floating Allocation Percentage: With respect to any Payment Date, the percentage equivalent of a fraction with a numerator of the Invested Amount at the end of the previous related Collection Period (in the case of the first Payment Date, the Invested Amount as of the Closing Date) and a denominator equal to the aggregate Stated Principal Balance of the HELOCs at the end of the previous Collection Period (in the case of the first Payment Date, the Closing Date), provided such percentage shall not be greater than 100%.

Formula Rate: With respect to any Class of Notes and, for purposes of the definition of "Note Interest Rate", each of the REMIC I Regular Interests for which a Note is the Corresponding Note, a per annum rate equal to One-Month LIBOR plus the applicable Margin.

Freddie Mac: Federal Home Loan Mortgage Corporation, or any successor thereto.

GMACM: GMAC Mortgage Corporation.

Grant: Pledge, bargain, sell, warrant, alienate, remise, release, convey, assign, transfer, create, and grant a lien upon and a security interest in and right of set-off against, deposit, set over and confirm pursuant to the Indenture. A Grant of the Collateral or of any other agreement or instrument shall include all rights, powers and options (but none of the obligations) of the granting party thereunder, including the immediate and continuing right to claim for,

11

collect, receive and give receipt for principal and interest payments in respect of such collateral or other agreement or instrument and all other moneys payable thereunder, to give and receive notices and other communications, to make waivers or other agreements, to exercise all rights and options, to bring proceedings in the name of the granting party or otherwise, and generally to do and receive anything that the granting party is or may be entitled to do or receive thereunder or with respect thereto.

HELOC: A home equity line of credit transferred and assigned to the Trust pursuant to Section 2.01 or Section 2.04 of the Sale and Servicing Agreement, as identified in the Mortgage Loan Schedule, including a HELOC the property securing which has become an REO Property

Holder: Any Certificateholder or any Noteholder, as the context requires.

Indemnified Party: The meaning specified in Section 7.02 of the Trust Agreement.

Indenture: The indenture, dated as of February 28, 2006, among the Issuer, the Indenture Trustee and the Securities Administrator, relating to the SACO I Trust 2006-1, Mortgage-Backed Notes, 2006-1.

Indenture Trustee: Citibank, N.A., and its successors and assigns or any successor indenture trustee appointed pursuant to the terms of the Indenture.

Independent: When used with respect to any specified Person, the Person (i) is in fact independent of the Issuer, any other obligor on the Notes, the Sponsor, the Master Servicer, the Depositor and any Affiliate of any of the foregoing Persons, (ii) does not have any direct financial interest or any material indirect financial interest in the Issuer, any such other obligor, the Sponsor, the Master Servicer, the Depositor or any Affiliate of any of the foregoing Persons and (iii) is not connected with the Issuer, any such other obligor, the Sponsor, the Master Servicer, the Depositor or any Affiliate of any of the foregoing Persons as an officer, employee, promoter, underwriter, trustee, partner, director or person performing similar functions.

Independent Certificate: A certificate or opinion to be delivered to the Indenture Trustee under the circumstances described in, and otherwise complying with, the applicable requirements of Section 10.01 of the Indenture, made by an independent appraiser or other expert appointed by an Issuer Request and approved by the Indenture Trustee in the exercise of reasonable care, and such opinion or certificate shall state that the signer has read the definition of "Independent" in this Indenture and that the signer is Independent within the meaning thereof.

Index: The index, if any, specified in a Mortgage Note by reference to which the related Mortgage Interest Rate will be adjusted from time to time.

Initial Certification: The initial certification delivered by the Custodian pursuant to Section 2.3(a) of the Custodial Agreement in the form attached thereto as Exhibit One.

Initial Note Principal Balance: With respect to the Class A Notes, $286,065,000.00, with respect to the Class M-1 Notes, $4,651,000.00, with respect to the Class M-2 Notes, $4,651,000.00, with respect to the Class M-3 Notes, $3,721,000.00, and with respect to the Class M-4 Notes, $4,031,000.00.

Insurance Agreement: The Insurance and Indemnity Agreement dated as of February 28, 2006, among the Insurer, the Sponsor, the Depositor, the Issuer, the Master Servicer, the Securities Administrator and the Indenture Trustee, including any amendments and supplements thereto in accordance with the terms thereof.

Insurance Policy: With respect to any HELOC, any standard hazard insurance policy, flood insurance policy or title insurance policy.

Insurance Proceeds: Amounts paid by the insurer under any Insurance Policy covering any HELOC or Mortgaged Property other than amounts required to be paid over to the Mortgagor pursuant to law or the related Mortgage Note or Security Instrument and other than amounts used to repair or restore the Mortgaged Property or to reimburse insured expenses.

Insured Amount: The meaning specified in the Policy.

Interest Adjustment Date: With respect to a HELOC, the date, if any, specified in the related Mortgage Note on which the Mortgage Interest Rate is subject to adjustment.

Interest Collection Amount: With respect to each Payment Date, an amount equal to the amount received by the related Servicer and consisting of interest collected during the related Collection Period on the HELOCs and allocated to interest in accordance with the terms of the Servicing Agreement or the Sale and Servicing Agreement, as applicable, together with the interest portion of any repurchase price relating to any repurchased HELOCs and the interest portion of any substitution adjustment amount paid during the related Collection Period and any Subsequent Recoveries on HELOCs that were previously Charged-Off HELOCs, reduced, without duplication, by any Extraordinary Trust Fund Expenses (subject to the Extraordinary Trust Fund Expense Cap).

Interest Determination Date: With respect to the first Accrual Period, the second LIBOR Business Day preceding the Closing Date, and with respect to each Accrual Period thereafter, the second LIBOR Business Day preceding the related Payment Date on which such Accrual Period commences.

Interest Shortfall: With respect to any Payment Date and each HELOC that during the related Prepayment Period was the subject of a Principal Prepayment or constitutes a Relief Act HELOC, an amount determined as follows:

(a)   Partial principal prepayments received during the relevant Prepayment Period: The difference between (i) one month's interest at the applicable Net Rate on the amount of such prepayment and (ii) the amount of interest for the calendar month of such prepayment (adjusted to the applicable Net Rate) received at the time of such prepayment;

13

(b)    Principal prepayments in full received during the relevant Prepayment Period: The difference between (i) one month's interest at the applicable Net Rate on the Stated Principal Balance of such HELOC immediately prior to such prepayment and (ii) the amount of interest for the calendar month of such prepayment (adjusted to the applicable Net Rate) received at the time of such prepayment; and

(c)    Relief Act HELOCs: As to any Relief Act HELOC, the excess of (i) 30 days' interest (or, in the case of a principal prepayment in full, interest to the date of prepayment) on the Stated Principal Balance thereof (or, in the case of a principal prepayment in part, on the amount so prepaid) at the related Net Rate over (ii) 30 days' interest (or, in the case of a principal prepayment in full, interest to the date of prepayment) on such Stated Principal Balance (or, in the case of a Principal Prepayment in part, on the amount so prepaid) at the Net Rate required to be paid by the Mortgagor as limited by application of the Relief Act.

Interim Certification: The interim certification delivered by the Custodian pursuant to Section 2.3(b) of the Custodial Agreement in the form attached thereto as Exhibit Two.

Intervening Assignments: The original intervening assignments of the Mortgage, notices of transfer or equivalent instrument.

Invested Amount: With respect to any Payment Date, the aggregate Stated Principal Balance of the HELOCs reduced by the aggregate Certificate Principal Balance of the Class S Certificates, if any.

Investment Company Act: The Investment Company Act of 1940, as amended, and any amendments thereto.

IRS: The Internal Revenue Service.

Issuer: SACO I Trust 2006-1, a Delaware statutory trust, or its successor in interest.

Issuer Request: A written order or request signed in the name of the Issuer by any one of its Authorized Officers and delivered to the Indenture Trustee and the Note Insurer.

Latest Possible Maturity Date: September 25, 2035. For purposes of the Treasury regulations under Sections 860A through 860G of the Code, the latest possible maturity date of each Regular Interest issued by REMIC I, REMIC II and REMIC III shall be the Latest Possible Maturity Date.

LIBOR Business Day: A day on which banks are open for dealing in foreign currency and exchange in London and New York City.

Lien: Any mortgage, deed of trust, pledge, conveyance, hypothecation, assignment, participation, deposit arrangement, encumbrance, lien (statutory or other), preference, priority right or interest or other security agreement or preferential arrangement of any kind or nature whatsoever, including, without limitation, any conditional sale or other title

14

retention agreement, any financing lease having substantially the same economic effect as any of the foregoing and the filing of any financing statement under the UCC (other than any such financing statement filed for informational purposes only) or comparable law of any jurisdiction to evidence any of the foregoing.

Liquidation Date: With respect to any Charged-Off HELOC, the date on which the Master Servicer or the related Servicer has certified that such HELOC has become a Charged-Off HELOC.

Liquidation Expenses: With respect to a HELOC in liquidation, unreimbursed expenses paid or incurred by or for the account of the Master Servicer or the related Servicer in connection with the liquidation of such HELOC and the related Mortgaged Property, such expenses including (a) property protection expenses, (b) property sales expenses, (c) foreclosure and sale costs, including court costs and reasonable attorneys' fees, and (d) similar expenses reasonably paid or incurred in connection with liquidation.

Liquidation Proceeds: Cash received in connection with the liquidation of a defaulted HELOC, whether through trustee's sale, foreclosure sale, Insurance Proceeds, condemnation proceeds or otherwise.

Loan-to-Value Ratio: With respect to any HELOC, the fraction, expressed as a percentage, the numerator of which is the original principal balance of the related HELOC and the denominator of which is the Original Value of the related Mortgaged Property.

Lost Notes: The original Mortgage Notes that have been lost, as indicated on the Mortgage Loan Schedule.

Majority Securityholders: The Note Insurer or, if a Note Insurer Default has occurred and is continuing, the holder or holders of in excess of 50% of the balance of the Notes, and following the reduction of the aggregate balance of the Notes to zero, the holders of the Residual Certificates (voting collectively as a single class).

Managed Amortization Period: With respect to the Notes is the period beginning on the Cut-off Date and ending on the occurrence of a Rapid Amortization Event.

Margin: With respect to any Payment Date on or prior to the first possible Optional Termination Date and (i) with respect to the Class A Notes and, for purposes of the definition of "Formula Rate", REMIC I Regular Interest A, 0.170% per annum, (ii) with respect to the Class M-1 Notes and, for purposes of the definition of "Formula Rate", REMIC I Regular Interest M-1, 0.680% per annum, (iii) with respect to the Class M-2 Notes and, for purposes of the definition of "Formula Rate", REMIC I Regular Interest M-2, 1.250% per annum, (iv) with respect to the Class M-3 Notes and, for purposes of the definition of "Formula Rate", REMIC I Regular Interest M-3, 1.500% per annum and (v) with respect to the Class M-4 Notes and, for purposes of the definition of "Formula Rate", REMIC I Regular Interest M-4, 2.600% per annum; and with respect to any Payment Date after the first possible Optional Termination Date, the Margin will increase to (i) with respect to the Class A Notes and, for purposes of the definition of "Formula Rate", REMIC I Regular Interest A, 0.340% per annum, (ii) with respect

15

to the Class M-1 Notes and, for purposes of the definition of "Formula Rate", REMIC I Regular Interest M-1, 1.020% per annum, (iii) with respect to the Class M-2 Notes and, for purposes of the definition of "Formula Rate", REMIC I Regular Interest M-2, 1.875% per annum, (iv) with respect to the Class M-3 Notes and, for purposes of the definition of "Formula Rate", REMIC I Regular Interest M-3, 2.250% per annum and (vi) with respect to the Class M-4 Notes and, for purposes of the definition of "Formula Rate", REMIC I Regular Interest M-4, 3.900% per annum.

Marker Rate:  With respect to the Class E Interest and any Payment Date, a per annum rate equal to two (2) times the weighted average of the Uncertificated REMIC I Pass-Through Rates for the REMIC I Regular Interests (other than REMIC I Regular Interest AA), with the rate on each such REMIC I Regular Interest (other than REMIC I Regular Interest ZZ) subject to a cap equal to the Note Interest Rate for the Corresponding Note for the purpose of this calculation for such Payment Date, and with the rate on REMIC II Regular Interest ZZ subject to a cap of zero for the purpose of this calculation; provided, however, that solely for this purpose, the related cap with respect to each REMIC I Regular Interest (other than REMIC I Regular Interests AA and ZZ) shall be multiplied by a fraction, the numerator of which is 30 and the denominator of which is the actual number of days in the related Accrual Period.

Master Servicer: LaSalle Bank National Association, and its successors and assigns.

Master Servicer Certification:  A written certification covering servicing of the HELOCs by the related Servicer and signed by an officer of the Master Servicer that complies with (i) the Sarbanes-Oxley Act of 2002, as amended from time to time, and (ii) the February 21, 2003 Statement by the Staff of the Division of Corporation Finance of the Securities and Exchange Commission Regarding Compliance by Asset-Backed Issuers with Exchange Act Rules 13a-14 and 15d-14, as in effect from time to time; provided that if, after the Closing Date (a) the Sarbanes-Oxley Act of 2002 is amended, (b) the Statement referred to in clause (ii) is modified or superseded by any subsequent statement, rule or regulation of the Securities and Exchange Commission or any statement of a division thereof, or (c) any future releases, rules and regulations are published by the Securities and Exchange Commission from time to time pursuant to the Sarbanes-Oxley Act of 2002, which in any such case affects the form or substance of the required certification and results in the required certification being, in the reasonable judgment of the Master Servicer, materially more onerous than the form of the required certification as of the Closing Date, the Master Servicer Certification shall be as agreed to by the Master Servicer and the Depositor following a negotiation in good faith to determine how to comply with any such new requirements.

Master Servicer Collection Account: The trust account or accounts created and maintained pursuant to Section 5.02 of the Sale and Servicing Agreement. The Master Servicer Collection Account shall be an Eligible Account.

Master Servicer Compensation: As defined in Section 4.13 of the Sale and Servicing Agreement.

Master Servicer Event of Default: Has the meaning assigned to such term in Section 7.01 of the Sale and Servicing Agreement.

Master Servicing Fee Rate: 0.030% per annum.

Master Servicing Officer: Any officer of the Master Servicer involved in, or responsible for, the administration and master servicing of the HELOCs whose name and specimen signature appear on a list of master servicing officers furnished to the Indenture Trustee by the Master Servicer, as such list may be amended from time to time.

Material Defect: The meaning specified in Section 2.02(a) of the Sale and Servicing Agreement.

Maximum Lifetime Mortgage Rate: The maximum level to which a Mortgage Interest Rate can adjust in accordance with its terms, regardless of changes in the applicable Index.

Maximum Uncertificated Accrued Interest Deferral Amount: With respect to any Payment Date, the excess of (i) accrued interest at the Uncertificated REMIC I Pass-Through Rate applicable to REMIC I Regular Interest ZZ for such Payment Date on a balance equal to the Uncertificated Principal Balance of REMIC I Regular Interest ZZ minus the REMIC I Overcollateralized Amount, in each case for such Payment Date, over (ii) the aggregate amount of Uncertificated Accrued Interest for such Payment Date on the REMIC I Regular Interests (other than REMIC I Regular Interests AA and ZZ), with the rate on each such REMIC I Regular Interest subject to a cap equal to the Note Interest Rate for the Corresponding Note for the purpose of this calculation for such Payment Date; provided, however, that solely for this purpose, the related cap with respect to each REMIC I Regular Interest (other than REMIC I Regular Interests AA and ZZ) shall be multiplied by a fraction, the numerator of which is 30 and the denominator of which is the actual number of days in the related Accrual Period.

MERS: Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

MERS® System: The system of recording transfers of Mortgages electronically maintained by MERS.

MIN: The Mortgage Identification Number for HELOCs registered with MERS on the MERS® System.

Minimum Lifetime Mortgage Rate: The minimum level to which a Mortgage Interest Rate can adjust in accordance with its terms, regardless of changes in the applicable Index.

MOM Loan: Any HELOC for which MERS is acting as the mortgagee of such HELOC, solely as nominee for the originator of such HELOC and its successors and assigns, at the origination thereof, or as nominee for any subsequent assignee of the originator pursuant to an assignment of mortgage to MERS.

Monthly Payment: With respect to any HELOC (including any REO Property) and any Due Date, the payment of principal and interest due thereon in accordance with the amortization schedule at the time applicable thereto (after adjustment, if any, for partial Principal Prepayments and for Deficient Valuations occurring prior to such Due Date but before any adjustment to such amortization schedule by reason of any bankruptcy, other than a Deficient Valuation, or similar proceeding or any moratorium or similar waiver or grace period).

Moody's: Moody's Investors Service, Inc.

Mortgage: The mortgage, deed of trust or other instrument reflected on the Mortgage Loan Schedule as securing a HELOC.

Mortgage File: The file containing the Related Documents pertaining to a particular HELOC and any additional documents required to be added to the Mortgage File pursuant to the Indenture.

Mortgage Interest Rate: The annual rate at which interest accrues from time to time on any HELOC pursuant to the related Mortgage Note, which rate is initially equal to the "Mortgage Interest Rate" set forth with respect thereto on the applicable Mortgage Loan Schedule.

Mortgage Loan Purchase Agreement: The Mortgage Loan Purchase Agreement, dated as of February 28, 2006, between EMC Mortgage Corporation, as seller, and Bear Stearns Asset Backed Securities I LLC, as purchaser, and all amendments thereof and supplements thereto, attached to the Sale and Servicing Agreement as Exhibit E.

Mortgage Loan Schedule: The schedule, attached as Exhibit A to the Sale and Servicing Agreement with respect to the HELOCs.

Mortgage Note: The originally executed note or other evidence of the indebtedness of a Mortgagor under the related HELOC.

Mortgaged Property: Land and improvements securing the indebtedness of a Mortgagor under the related HELOC or, in the case of REO Property, such REO Property.

Mortgagor: The obligor on a Mortgage Note.

Net Collections: With respect to any Charged-Off HELOC, an amount equal to all payments on account of interest and principal on such HELOC.

Net Liquidation Proceeds: With respect to any Charged-Off HELOC, Liquidation Proceeds and Subsequent Recoveries net of unreimbursed advances by the related Servicer, Monthly Advances, expenses incurred by the related Servicer in connection with the liquidation of such HELOC and the related Mortgaged Property, and any other amounts payable to the related Servicer under the related Servicing Agreement.

Net Rate or Net Mortgage Rate: For any HELOC, the then applicable Mortgage Rate thereon less the Servicing Fee Rate.

18

Net WAC Cap Rate: With respect to any Payment Date and any Note, a per annum rate equal to the weighted average of the Expense Adjusted Mortgage Rates of the HELOCs as of the first day of the Collection Period preceding such Payment Date. The Net WAC Cap Rate for each Class of Notes will be calculated based on a 360-day year and the actual number of days elapsed in the related Accrual Period. For federal income tax purposes, however, such rate shall be the equivalent of the foregoing, expressed as the weighted average of (adjusted for the actual number of days elapsed in the related Accrual Period) the Uncertificated REMIC I Pass-Through Rates on the REMIC I Regular Interests, weighted on the basis of the Uncertificated Principal Balances of each such REMIC I Regular Interest.

Net WAC Cap Rate Carryover Amount: With respect to any Class of Notes and any Payment Date, the sum of (A) the positive excess of (i) the amount of interest that would have been payable to such Class of Notes on such Payment Date if the Note Interest Rate for such class for such Payment Date were calculated at the Formula Rate, over (ii) the amount of interest payable on such Class of Notes at the Net WAC Cap Rate for such Payment Date (such excess being the "Basis Risk Shortfall" for such Payment Date) and (B) the Net WAC Cap Rate Carryover Amount for any previous Payment Dates not previously paid, together with interest thereon at a rate equal to the related Formula Rate for such Class of Notes for such Payment Date.

Net WAC Cap Rate Carryover Reserve Account: The Account created pursuant to Section 5.06 of the Sale and Servicing Agreement.

Net WAC Cap Rate Carryover Reserve Account Deposit: With respect to the Net WAC Cap Rate Carryover Reserve Account, an amount equal to $5,000, which the Depositor shall deposit into the Net WAC Cap Rate Carryover Reserve Account, pursuant to Section 5.06 of the Sale and Servicing Agreement.

Note: A Class A Note or Class M Note.

Noteholder: The Person in whose name a Note is registered in the Note Register, except that, any Note registered in the name of the Depositor, the Issuer, the Indenture Trustee, the Sponsor, the Securities Administrator or the Master Servicer or any Affiliate of any of them shall be deemed not to be a Holder or Holders, nor shall any so owned be considered outstanding, for purposes of giving any request, demand, authorization, direction, notice, consent or waiver under the Indenture or the Trust Agreement; provided that, in determining whether the Indenture Trustee or Securities Administrator shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Notes that a Responsible Officer of the Indenture Trustee or Securities Administrator has actual knowledge to be so owned shall be so disregarded. Owners of Notes that have been pledged in good faith may be regarded as Holders if the pledgee establishes to the satisfaction of the Securities Administrator or the Indenture Trustee the pledgee's right so to act with respect to such Notes and that the pledge is not the Issuer, any other obligor upon the Notes or any Affiliate of any of the foregoing Persons.

Note Insurer: XL Capital Assurance Inc.

Note Insurer Default: The existence and continuance of any of the following: (a) a failure by the Note Insurer to make a payment required under the Policy in accordance with its terms; or (b) the Note Insurer (A) files any petition or commences any case or proceeding under any provision or chapter of the Bankruptcy Code or any other similar federal or state law relating to insolvency, bankruptcy, rehabilitation, liquidation or reorganization, (B) makes a general assignment for the benefit of its creditors, or (C) has an order for relief entered against it under the Bankruptcy Code or any other similar federal or state law relating to insolvency, bankruptcy, rehabilitation, liquidation or reorganization which is final and nonappealable.

Note Interest Rate: With respect to each Class of Notes and, for purposes of the definition of "Marker Rate" and "Maximum Uncertificated Accrued Interest Deferral Amount", each REMIC I Regular Interest for which a Note is the Corresponding Note, is the lesser of (a) the Formula Rate and (b) the Net WAC Cap Rate.

Note Owner: The Beneficial Owner of a Note.

Note Principal Balance: With respect to any Note as of any Payment Date, will equal such Note's initial principal balance on the Closing Date, as reduced by (i) all amounts distributed on previous Payment Dates on such Note with respect to principal, (ii) the principal portion of all Charge-Off Amounts allocated prior to such Payment Date to such Note, plus any Subsequent Recoveries added to the Note Principal Balance of such Note. With respect to any Class of Note, the Note Principal Balance thereof shall be equal to the sum of the Note Principal Balances of all Outstanding Notes of such Class.

Note Register: The register maintained by the Note Registrar in which the Note Registrar shall provide for the registration of Notes and of transfers and exchanges of Notes.

Note Registrar: The Securities Administrator, in its capacity as Note Registrar, or any successor to the Securities Administrator in such capacity.

Notional Amount: With respect to the Class E Interest and any Payment Date, an amount equal to the aggregate Stated Principal Balance of the HELOCs at the beginning of the related Collection Period. The initial Notional Amount of the Class E Certificates shall be $310,097,406.60. For federal income tax purposes, the Notional Amount of the Class E Interest for any Payment Date shall be an amount equal to the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests for such Payment Date.

Officer's Certificate: With respect to the Master Servicer, a certificate signed by the President, Managing Director, a Director, a Vice President or an Assistant Vice President, of the Master Servicer and delivered to the Indenture Trustee or the Securities Administrator, as applicable. With respect to the Issuer, a certificate signed by any Authorized Officer of the Issuer or a Responsible Officer of the Securities Administrator, under the circumstances described in, and otherwise complying with, the applicable requirements of Section 10.01 of the Indenture, and delivered to the Indenture Trustee. Unless otherwise specified, any reference in the Indenture to an Officer's Certificate shall be to an Officer's Certificate of any Responsible Officer of the Securities Administrator.

20

One-Month LIBOR: With respect to any Accrual Period, the rate determined by the Securities Administrator on the related Interest Determination Date on the basis of the London interbank offered rate for one-month United States dollar deposits, as such rates appear on the Telerate Screen Page 3750, as of 11:00 a.m. (London time) on such Interest Determination Date.

In the event that on any Interest Determination Date, Telerate Screen 3750 fails to indicate the London interbank offered rate for one-month United States dollar deposits, then One-Month LIBOR for the related Interest Accrual Period will be established by the Securities Administrator as follows:

1.    If on such Interest Determination Date two or more Reference Banks provide such offered quotations, One-Month LIBOR for the related Accrual Period shall be the arithmetic mean of such offered quotations (rounded upwards if necessary to the nearest whole multiple of 1/16%).

2.    If on such Interest Determination Date fewer than two Reference Banks provide such offered quotations, One-Month LIBOR for the related Accrual Period shall be the higher of (i) One-Month LIBOR as determined on the previous Interest Determination Date and (ii) the Reserve Interest Rate.

The establishment of One-Month LIBOR on each Interest Determination Date by the Securities Administrator and the Securities Administrator's calculation of the rate of interest applicable for the related Accrual Period shall (in the absence of manifest error) be final and binding.

Opinion of Counsel: A written opinion of counsel acceptable to the Indenture Trustee (and Owner Trustee, if applicable) and the Note Insurer which counsel may be in-house counsel for the Depositor or the Sponsor if acceptable to the Indenture Trustee (and Owner Trustee, if applicable), the Note Insurer and the Rating Agencies or outside counsel for the Depositor, the Sponsor, the Issuer or the Master Servicer, as the case may be.

Optional Termination Date: The first date on which the majority holder of the Class E Certificates may terminate the Trust Fund (with the consent of the Note Insurer if such termination would result in a draw against the Policy).

Original Value: The lesser of (i) the Appraised Value or (ii) the sales price of a Mortgaged Property at the time of origination of a HELOC, except in instances where either clauses (i) or (ii) is unavailable, the other may be used to determine the Original Value, or if both clauses (i) and (ii) are unavailable, Original Value may be determined from other sources reasonably acceptable to the Depositor.

Originator: Any originator of the HELOCs.

Outstanding: With respect to the Notes, as of the date of determination, all Notes theretofore executed, authenticated and delivered under this Indenture except:

21

(i)       Notes theretofore canceled by the Note Registrar or delivered to the Securities Administrator for cancellation; and

(ii)      Notes in exchange for or in lieu of which other Notes have been executed, authenticated and delivered pursuant to the Indenture unless proof satisfactory to the Securities Administrator is presented that any such Notes are held by a holder in due course;

provided, Notes that have been paid with proceeds of the Policy will be considered outstanding for purposes of Section 4.12 of the Indenture.

Outstanding HELOC: With respect to any Due Date, a HELOC which, prior to such Due Date, was not the subject of a Principal Prepayment in full, did not become a Charged-Off HELOC and was not purchased or replaced.

Outstanding Principal Balance: As of the time of any determination, the principal balance of a HELOC remaining to be paid by the Mortgagor, or, in the case of an REO Property, the principal balance of the related HELOC remaining to be paid by the Mortgagor at the time such property was acquired by the Trust less any Excess Liquidation Proceeds with respect thereto to the extent applied to principal.

Overcollateralization Amount: With respect to any Payment Date is the amount, if any, by which the Invested Amount exceeds the aggregate Note Principal Balance of the Notes as of such Payment Date after giving effect to payments to be made on such Payment Date.

Overcollateralization Floor: With respect to the Notes, 0.50% of the Invested Amount as of the Cut-Off Date.

Overcollateralization Increase Amount: With respect to any Payment Date is the amount payable to the Notes pursuant to Section 3.02(a)(5) of the Indenture.

Overcollateralization Reduction Amount: With respect to the Notes and any Payment Date for which the Excess Overcollateralization Amount is, or would be, after taking into account all other payments to be made on that Payment Date, greater than zero, an amount equal to the lesser of (i) the Excess Overcollateralization Amount for that Payment Date and (ii) the Available Principal Payment Amount for that Payment Date (without giving effect to the Overcollateralization Reduction Amount).

Overcollateralization Target Amount: With respect to any Payment Date (a) prior to the Stepdown Date, an amount equal to 2.25% of the Invested Amount as of the Cut-off Date, (b) on or after the Stepdown Date and if a Trigger Event is not in effect, the greater of (A) the lesser of (i) an amount equal to 2.25% of the Invested Amount as of the Cut-off Date and (ii) approximately 4.50% of the then current Invested Amount as of the last day of the related Collection Period and (B) the Overcollateralization Floor or (c) on or after the Stepdown Date and if a Trigger Event is in effect, the Overcollateralization Target Amount for the immediately preceding Payment Date

Owner Trust Estate: The corpus of the Issuer created by the Trust Agreement which consists of items referred to in Section 3.01 of the Trust Agreement.

Owner Trustee: Wilmington Trust Company, acting not in its individual capacity but solely as owner trustee under the Trust Agreement, and its successors and assigns or any successor owner trustee appointed pursuant to the terms of the Trust Agreement.

Paying Agent: Any paying agent or co-paying agent appointed under the Indenture, which initially shall be the Securities Administrator.

Payment Account: The trust account or accounts created and maintained pursuant to Section 3.01 of the Indenture, which shall be denominated LaSalle Bank National Association, as Securities Administrator f/b/o holders of SACO I Trust 2006-1, Mortgage-Backed Notes, Series 2006-1 - Payment Account." The Payment Account shall be an Eligible Account.

Payment Account Deposit Date: The Business Day prior to each Payment Date.

Payment Date: The 25th day of each month, or if such day is not a Business Day, then the next Business Day, commencing in March 2006.

Percentage Interest: With respect to any Note, the percentage obtained by dividing the Note Principal Balance of such Note by the aggregate Note Principal Balances of all Notes of that Class. With respect to any Certificate, the percentage as stated on the face thereof.

Periodic Rate Cap: With respect to any HELOC, the maximum rate, if any, by which the Mortgage Rate on such HELOC can adjust on any Adjustment Date, as stated in the related Mortgage Note or Mortgage.

Permitted Investments: Any one or more of the following obligations or securities held in the name of the Indenture Trustee for the benefit of the Noteholders or in the name of the Securities Administrator for the benefit of the Certificateholders:

(i)     direct obligations of, and obligations the timely payment of which are fully guaranteed by the United States of America or any agency or instrumentality of the United States of America the obligations of which are backed by the full faith and credit of the United States of America;

(ii)     (a) demand or time deposits, federal funds or bankers' acceptances issued by any depository institution or trust company incorporated under the laws of the United States of America or any state thereof (including the Indenture Trustee, Securities Administrator or the Master Servicer or its Affiliates acting in its commercial banking capacity) and subject to supervision and examination by federal and/or state banking authorities, provided that the commercial paper and/or the short-term debt rating and/or the long-term unsecured debt obligations of such depository institution or trust company at the time of such investment or contractual commitment providing for such investment have the Applicable Credit Rating or better from the Rating Agencies and (b) any other demand or time deposit or certificate of deposit that is fully insured by the FDIC;

23

(iii)   repurchase obligations with respect to (a) any security described in clause (i) above or (b) any other security issued or guaranteed by an agency or instrumentality of the United States of America, the obligations of which are backed by the full faith and credit of the United States of America, in either case entered into with a depository institution or trust company (acting as principal) described in clause (ii)(a) above where the Securities Administrator holds the security therefor;

(iv)   securities bearing interest or sold at a discount issued by any corporation (including the Indenture Trustee, Securities Administrator or the Master Servicer or its Affiliates) incorporated under the laws of the United States of America or any state thereof that have the Applicable Credit Rating or better from the Rating Agencies at the time of such investment or contractual commitment providing for such investment; provided, however, that securities issued by any particular corporation will not be Permitted Investments to the extent that investments therein will cause the then outstanding principal amount of securities issued by such corporation and held as part of the Trust to exceed 10% of the aggregate Outstanding Principal Balances of all the HELOCs and Permitted Investments held as part of the Trust as determined by the Master Servicer;

(v)   commercial   paper   (including   both   non-interest-bearing   discount obligations and interest-bearing obligations payable on demand or on a specified date not more than one year after the date of issuance thereof) having the Applicable Credit Rating or better from the Rating Agencies at the time of such investment;

(vi)   a reinvestment agreement issued by any bank, insurance company or other corporation or entity;

(vii)   any other demand, money market or time deposit, obligation, security or investment as may be acceptable to the Note Insurer and the Rating Agencies as evidenced in writing by the Rating Agencies to the Securities Administrator; and

(viii)   any money market or common trust fund having the Applicable Credit Rating or better from the Rating Agencies, including any such fund for which the Securities Administrator or Master Servicer or any affiliate of the Securities Administrator or Master Servicer acts as a manager or an advisor; provided, however, that no instrument or security shall be a Permitted Investment if such instrument or security evidences a right to receive only interest payments with respect to the obligations underlying such instrument or if such security provides for payment of both principal and interest  with a yield to maturity in excess of 120% of the yield to maturity at par or if such instrument or security is purchased at a price greater than par as determined by the Master Servicer.

Permitted Transferee:  Any person (x) other than (i) the United States, any State or political subdivision thereof, any possession of the United States or any agency or instrumentality of any of the foregoing, (ii) a foreign government, International Organization or any agency or instrumentality of either of the foregoing, (iii) an organization (except certain farmers' cooperatives described in section 521 of the Code) that is exempt from tax imposed by Chapter 1 of the Code (including the tax imposed by section 511 of the Code on unrelated business taxable income) on any excess inclusions (as defined in section 860E(c)(1) of the Code)

24

with respect to any Residual Certificate, (iv) rural electric and telephone cooperatives described in section 1381(a)(2)(C) of the Code or (v) on electing large partnership within the meaning of Section 775(a) of the Code, (y) that is a citizen or resident of the United States, a corporation, partnership (other than a partnership that has any direct or indirect foreign partners) or other entity (treated as a corporation or a partnership for federal income tax purposes), created or organized in or under the laws of the United States, any State thereof or the District of Columbia, an estate whose income from sources without the United States is includible in gross income for United States federal income tax purposes regardless of its connection with the conduct of a trade or business within the United States, or a trust if a court within the United States is able to exercise primary supervision over the administration of the trust and one or more United States persons have authority to control all substantial decisions of the trust or if it has a valid election in effect under applicable U.S. Treasury regulations to be treated as a United States person and (z) other than any other Person so designated by the Securities Administrator based upon an Opinion of Counsel addressed to the Securities Administrator (which shall not be an expense of the Securities Administrator or the Indenture Trustee) that states that the Transfer of an ownership interest in a Residual Certificate to such Person may cause REMIC I, REMIC II or REMIC III to fail to qualify as a REMIC at any time that any Notes or Certificates are Outstanding. The terms "United States," "State" and "International Organization" shall have the meanings set forth in section 7701 of the Code or successor provisions. A corporation will not be treated as an instrumentality of the United States or of any State or political subdivision thereof for these purposes if all of its activities are subject to tax and, with the exception of Freddie Mac, a majority of its board of directors is not selected by such government unit.

Person: Any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Plan: Any employee benefit plan or certain other retirement plans and arrangements, including individual retirement accounts and annuities, Keogh plans and bank collective investment funds and insurance company general or separate accounts in which such plans, accounts or arrangements are invested, that are subject to ERISA or Section 4975 of the Code.

Plan Assets: Assets of a Plan within the meaning of Department of Labor regulation 29 C.F.R. § 2510.3-101.

Policy: The note guaranty insurance policy (No. CA02695A) with respect to the Class A Notes and all endorsements thereto, if any, dated the Closing Date, issued by the Note Insurer for the benefit of the holders of the Class A Notes only.

Pool Balance: With respect to any date of determination, the aggregate of the Stated Principal Balances of all HELOCs as of such date.

Premium Amount: The amount of premium due to the Note Insurer in accordance with the terms of the Insurance Agreement and the Premium Letter referenced therein.

Prepayment Assumption: A specified CPR and a Constant Draw Rate of 12%.

25

Prepayment Period: With respect any Payment Date, the calendar month immediately preceding the month in which such payment occurs.

Principal Collection Amount:  With respect to each Payment Date, an amount equal to the amount received by the related Servicer and consisting of amounts collected during the related Collection Period on the HELOCs and allocated to principal in accordance with the terms of the Sale and Servicing Agreement, together with the principal portion of any repurchase price relating to any repurchased HELOCs and substitution adjustment amount paid during the related Collection Period

Principal Prepayment: Any payment (whether partial or full) or other recovery of principal on a HELOC which is received in advance of its scheduled Due Date to the extent that it is not accompanied by an amount as to interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment, including Insurance Proceeds and Repurchase Proceeds, but excluding the principal portion of Excess Liquidation Proceeds.

Proceeding: Any suit in equity, action at law or other judicial or administrative proceeding.

Protected Account: The trust account or accounts created and maintained by each Servicer pursuant to the Servicing Agreement or the Sale and Servicing Agreement, as applicable.  Each Protected Account shall be an Eligible Account.

Purchaser: Bear Stearns Asset Backed Securities I LLC, a Delaware limited liability company, and its successors and assigns.

Qualified Insurer: Any insurance company duly qualified as such under the laws of the state or states in which the related Mortgaged Property or Mortgaged Properties is or are located, duly authorized and licensed in such state or states to transact the type of insurance business in which it is engaged and approved as an insurer by the Master Servicer, so long as the claims paying ability of which is acceptable to the Rating Agencies for mortgage-backed notes having the same rating as the Notes rated by the Rating Agencies as of the Closing Date.

Rapid Amortization Event:  Any one of the following events:

(a)      the failure of the Sponsor to make any payments or deposits as required by the Sale and Servicing Agreement, or to observe or perform in any material respect any covenant of the Sponsor in the Mortgage Loan Purchase Agreement or the Sale and Servicing Agreement that materially and adversely affects the interests of the Noteholders or the Note Insurer and that continues unremedied and continues to affect materially and adversely the interests of the Noteholders or the Note Insurer for sixty (60) days (five days in the case of any failure to repurchase an affected HELOC when required or to substitute a Substitute HELOC for an affected HELOC) after the date on which written notice of the failure, requiring it to be remedied, shall have been given to the Sponsor by the Indenture Trustee or the Securities Administrator, or to the Sponsor,

26

the Indenture Trustee and the Securities Administrator by the Note Insurer or the Holders of greater than 50% of the aggregate Note Principal Balance of the Notes;

      (b)    any representation or warranty made by the Sponsor in the Mortgage Loan Purchase Agreement or the Sale and Servicing Agreement proves to have been incorrect in any material respect when made, as a result of which the interests of the Noteholders or the Note Insurer are materially and adversely affected and that continues to be incorrect in any material respect and continues to affect materially and adversely the interests of the Noteholders or the Note Insurer for thirty (30) days after the date on which notice of the failure, requiring it to be remedied, shall have been given to the Sponsor by the Indenture Trustee or the Securities Administrator, or to the Sponsor, the Indenture Trustee and the Securities Administrator by either the Note Insurer or the Holders of greater than 50% of the aggregate Note Principal Balance of the Notes (a Rapid Amortization Event pursuant to this subparagraph (b) shall not occur if the Sponsor has repurchased the related HELOCs or substituted for them during the 60-day period (or such longer period (not to exceed an additional 60 days) as the Indenture Trustee or the Securities Administrator may specify) in accordance with the Sale and Servicing Agreement);

      (c)    a declaration of bankruptcy or insolvency by any of the Trust, the Depositor or the Servicers;

      (d)    the Trust becomes subject to the Investment Company Act of 1940;

      (e)    the occurrence of a Rapid Amortization Trigger Event; or

      (f)    a draw is made on the Policy which remains unreimbursed for three months.

If any event described in clause (a), (b) or (e) occurs, a Rapid Amortization Event will occur only if, after the applicable grace period, either the Indenture Trustee, the Note Insurer, or the Securities Administrator acting at the direction of the Noteholders holding Notes evidencing more than 51% in Note Principal Balance of the Notes then outstanding, with the consent of the Note Insurer, by written notice to the holder of the Class E Certificates, the Depositor, the Sponsor and the Servicers (and to the Securities Administrator, if given by the Note Insurer or the Noteholders) declare that a Rapid Amortization Event has occurred.  If any event described in clauses (c), (d) or (f) occurs, a Rapid Amortization Event will occur without any notice or other action on the part of the Securities Administrator, the Note Insurer or the Noteholders immediately on the occurrence of such event.

      <u>Rapid Amortization Period</u>: The period beginning upon the occurrence of the Rapid Amortization Event.

      <u>Rapid Amortization Trigger Event</u>: Is in effect with respect to the Notes and any Payment Date if the cumulative amount of Charge-Off Amounts (net of Subsequent Recoveries) incurred on the HELOCs from the Cut-off Date through the end of the Collection Period

immediately preceding such Payment Date exceeds the applicable percentage set forth below of the aggregate Stated Principal Balance of the HELOCs as of the Cut-off Date:

| | |
|---|---|
| Prior to March 2010 .................... | 3.000% |
| March 2010 to February 2011.... | 4.250% |
| March 2011 to February 2012.... | 5.000% |
| March 2012 to February 2013.... | 5.750% |
| March 2013 and thereafter ......... | 6.250% |

Rating Agency:  Any nationally recognized statistical rating organization, or its successor, that rated the Notes at the request of the Depositor at the time of the initial issuance of the Notes. Initially, Standard & Poor's and Moody's. If such organization or a successor is no longer in existence, "Rating Agency" with respect to the Notes shall be such nationally recognized statistical rating organization, or other comparable Person, designated by the Depositor, notice of which designation shall be given to the Securities Administrator, the Indenture Trustee, the Note Insurer and Master Servicer. References herein to the highest short term unsecured rating category of a Rating Agency shall mean A-1 or better in the case of Standard & Poor's, P-1 in the case of Moody's and in the case of any other Rating Agency shall mean such equivalent ratings. References herein to the highest long-term rating category of a Rating Agency shall mean "AAA" in the case of Standard & Poor's, "Aaa" in the case of Moody's and in the case of any other Rating Agency, such equivalent rating.

Rating Confirmation:  A letter from each Rating Agency then providing a rating for any of the Notes at the request of the Issuer confirming that the action proposed to be taken by the Issuer will not, in and of itself, result in a downgrade of any of the ratings then applicable to the Notes (without regard to the Policy), or cause any Rating Agency to suspend or withdraw the Ratings then applicable to the Notes (without regard to the Policy).

Recordation Event:  Any of (i) the resignation of a Servicer, (ii) the occurrence of an Event of Servicer Termination, or (iii) the occurrence of a bankruptcy, insolvency or foreclosure relating to a Servicer; *provided*, that any Recordation Event may be waived by the Majority Securityholders.

Record Date: With respect to any Class of Notes and the Trust Certificate and any Payment Date, the close of business on the last Business Day of the calendar month immediately preceding such Payment Date.

Reference Banks: Any leading banks engaged in transactions in Eurodollar deposits in the international Eurocurrency market (i) with an established place of business in London, (ii) whose quotations appear on the Telerate Screen Page 3750 on the Interest Determination Date, (iii) which have been designated as such by the Securities Administrator and (iv) which are not Affiliates of the Depositor or the Sponsor.

Registered Holder: The Person in whose name a Note is registered in the Note Register on the applicable Record Date.

Regular Interest: A "regular interest" in a REMIC within the meaning of Section 860G(a)(1) of the Code.

Regulation AB: Subpart 229.1100 - Asset Backed Securities (Regulation AB), 17 C.F.R. §§229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Related Documents: With respect to each HELOC, the documents specified in Section 2.01(b)(i)-(vii) of the Sale and Servicing Agreement, and any documents required to be added to such documents pursuant to the Sale and Servicing Agreement, the Trust Agreement, the Indenture or the Mortgage Loan Purchase Agreement.

Release: The Federal Reserve Board's statistical Release No. H.15(519).

Relief Act: Servicemembers Civil Relief Act.

Relief Act HELOC: Any HELOC as to which the Scheduled Payment thereof has been reduced due to the application of the Relief Act.

REMIC: A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

REMIC I: The segregated pool of assets described in Section 10.01 of the Indenture.

REMIC I Regular Interest: Any of the separate non-certificated beneficial ownership interests in REMIC I issued hereunder and designated as a Regular Interest in REMIC I. Each REMIC I Regular Interest shall accrue interest at the related Uncertificated REMIC I Pass-Through Rate in effect from time to time, and shall be entitled to distributions of principal, subject to the terms and conditions hereof, in an aggregate amount equal to its initial Uncertificated Principal Balance as set forth in the Section 10.01 of the Indenture. The designations for the respective REMIC I Regular Interests are set forth in Section 10.01 of the Indenture.

REMIC I Interest Loss Allocation Amount: With respect to any Payment Date, an amount (subject to adjustment based on the actual number of days elapsed in the respective Accrual Period) equal to (a) the product of (i) the aggregate Stated Principal Balance of the HELOCs and REO Properties then outstanding and (ii) the Uncertificated REMIC I Pass-Through Rate for REMIC I Regular Interest AA minus the Marker Rate, divided by (b) 12.

29

REMIC I Overcollateralization Amount:  With respect to any date of determination, (i) 1.00% of the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests minus (ii) the aggregate Uncertificated Principal Balance of each REMIC I Regular Interest for which a Note is the Corresponding Note, in each case, as of such date of determination.

REMIC I Principal Loss Allocation Amount:  With respect to any Payment Date, an amount equal to the product of (i) the aggregate Stated Principal Balance of the HELOCs and REO Properties then outstanding and (ii) 1 minus a fraction, the numerator of which is two (2) times the aggregate Uncertificated Principal Balance of each REMIC I Regular Interest for which a Note is the Corresponding Note, and the denominator of which is the aggregate Uncertificated Principal Balance of each REMIC I Regular Interest for which a Note is the Corresponding Note and REMIC I Regular Interest ZZ.

REMIC I Required Overcollateralization Amount:  1.00% of the Overcollateralization Target Amount.

REMIC II:  The segregated pool of assets described in Section 10.01 of the Indenture.

REMIC III:  The segregated pool of assets described in Section 10.01 of the Indenture.

REMIC Provisions:  Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at Sections 860A through 860G of the Code, and related provisions, and Treasury Regulations and published rulings, notices and announcements promulgated thereunder, as the foregoing may be in effect from time to time, as well as provisions of applicable state laws.

REO Property:  A Mortgaged Property acquired in the name of the Indenture Trustee, for the benefit of the Noteholders, by foreclosure or deed-in-lieu of foreclosure in connection with a defaulted HELOC.

Repurchase Price:  With respect to any HELOC (or any property acquired with respect thereto) required to be repurchased by the Sponsor pursuant to the Mortgage Loan Purchase Agreement or Article II of the Sale and Servicing Agreement, an amount equal to the sum of (i)(a) 100% of the Outstanding Principal Balance of such HELOC as of the date of repurchase (or if the related Mortgaged Property was acquired with respect thereto, 100% of the Outstanding Principal Balance at the date of the acquisition), plus (b) accrued but unpaid interest on the Outstanding Principal Balance at the related Net Mortgage Rate, through and including the last day of the month of repurchase, plus (c) any unreimbursed Monthly Advances and servicing advances payable to the Servicers or to the Master Servicer and (ii) any costs and damages (if any) incurred by the Trust in connection with any violation of such HELOC of any predatory lending laws.

Repurchase Proceeds:  the Repurchase Price in connection with any repurchase of a HELOC by the Sponsor and any cash deposit in connection with the substitution of a HELOC.

Request for Release: A request for release in the form attached to the Custodial Agreement as Exhibit Four.

Required Insurance Policy: With respect to any HELOC, any insurance policy which is required to be maintained from time to time under the Sale and Servicing Agreement with respect to such HELOC.

Residual Certificates: Any of the Class S, Class R and Class RX Certificates, each evidencing the sole class of Residual Interests in the related REMIC.

Residual Interest: The sole class of "residual interests" in a REMIC within the meaning of Section 860G(a)(2) of the Code.

Responsible Officer: With respect to the Securities Administrator, any officer of the Securities Administrator with direct responsibility for the administration of the Indenture and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of and familiarity with the particular subject; and with respect to the Indenture Trustee, any vice president, assistant vice president, any assistant secretary, any assistant treasurer, any associate or any other officer of the Indenture Trustee customarily performing functions similar to those performed by any of the above designated officers who at such time shall be officers to whom, with respect to a particular matter, such matter is referred because of such officer's knowledge of and familiarity with the particular subject or who shall have direct responsibility for the administration of the Indenture or the Trust Agreement.

Sale and Servicing Agreement: The Sale and Servicing Agreement, dated as of February 28, 2006, among the Issuer, the Sponsor, the Indenture Trustee, the Master Servicer, the Securities Administrator and the Depositor.

Scheduled Payment: With respect to any HELOC and any month, the scheduled payment or payments of principal and interest due during such month on such HELOC which either is payable by a Mortgagor in such month under the related Mortgage Note or, in the case of REO Property, would otherwise have been payable under the related Mortgage Note.

Scheduled Principal: The principal portion of any Scheduled Payment.

Securities Act: The Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

Securities Administrator: LaSalle Bank National Association, or its successor in interest, or any successor securities administrator.

Security: Any of the Certificates or Notes.

Securityholder or Holder: Any Noteholder or Certificateholder.

31

Security Instrument: A written instrument creating a valid first lien on a Mortgaged Property securing a Mortgage Note, which may be any applicable form of mortgage, deed of trust, deed to secure debt or security deed, including any riders or addenda thereto.

Sponsor or Seller: EMC Mortgage Corporation, and its successors and assigns.

Sponsor's Certificate Pro Rata Test: Is met with respect to any Payment Date during the Managed Amortization Period if the Certificate Principal Balance of the Class S Certificates is greater than 3.00% of the aggregate Stated Principal Balance of the HELOCs

Servicer: GMACM or EMC, or its successors and assigns.

Servicer Remittance Date: With respect to each HELOC serviced by GMACM, the date set forth in the Servicing Agreement, and with respect to each EMC HELOC, on or before 3:00 p.m. New York City time on the second Business Day immediately preceding the related Distribution Date.

Servicing Advances: All customary, reasonable and necessary "out of pocket" costs and expenses (including reasonable legal fees) incurred in the performance by the Company or GMACM of its servicing obligations under the Sale and Servicing Agreement or the Servicing Agreement, including, but not limited to, the cost of (i) the preservation, restoration and protection of a Mortgaged Property, (ii) any enforcement or judicial proceedings, including foreclosures, and including any expenses incurred in relation to any such proceedings that result from the HELOC being registered in the MERS® System, (iii) the management and liquidation of any REO Property (including, without limitation, realtor's commissions) and (iv) compliance with any obligations under Section 3.07 of the Sale and Servicing Agreement to cause insurance to be maintained.

Servicing Agreement: The Servicing Agreement, dated as of August 1, 2005, between GMACM and the Sponsor, as amended.

Servicing Criteria: The criteria set forth in paragraph (d) of Item 1122 of Regulation AB, as such may be amended from time to time.

Servicing Fee: As to any HELOC and Payment Date, an amount equal to the product of (i) the Stated Principal Balance of such HELOC as of the Due Date in the preceding calendar month and (ii) the Servicing Fee Rate.

Servicing Fee Rate: As to any HELOC, a per annum rate of 0.500%.

60 Day Plus Delinquency Percentage: With respect to any Payment Date is the arithmetic average for each of the three successive Payment Dates ending with the applicable Payment Date of the percentage equivalent of a fraction, (A) the numerator of which is the aggregate Stated Principal Balance of (i) the HELOCs that are 60 or more days delinquent in the payment of principal or interest for the relevant Payment Date, (ii) HELOCs in foreclosure, (iii) REO Property and (iv) HELOCs with a related mortgagor subject to bankruptcy procedures, and

(B) the denominator of which is the aggregate Stated Principal Balance of all of the HELOCs immediately preceding the relevant Payment Date

Standard & Poor's: Standard & Poor's, a division of The McGraw-Hill Companies, Inc., or its successor in interest.

Stated Principal Balance: With respect to any HELOC and any Payment Date, the principal balance of the HELOC as of the Cut-Off date, plus the aggregate amount of all Draws conveyed to the Trust in respect of such HELOC minus all collections credited against the principal balance of such HELOC in accordance with the related mortgage note and minus all prior related Charge-Off Amounts. The Stated Principal Balance of any Charged-Off HELOC is equal to zero.

Statutory Trust Statute: Chapter 38 of Title 12 of the Delaware Code, 12 Del. Code §§3801 et seq., as the same may be amended from time to time.

Stepdown Date: The later to occur of

(x)    the Payment Date occurring in March 2009 and

(y)    the first Payment Date for which the Current Specified Enhancement Percentage is greater than or equal to approximately 15.50%.

Subsequent Recoveries: Means any amount recovered by the related Servicer or the Master Servicer (net of reimbursable expenses) with respect to a Charged-Off HELOC with respect to which a Charge-Off Amount was incurred after the liquidation or disposition of such HELOC.

Substitute HELOC:    The meaning specified in the Mortgage Loan Purchase Agreement.

Tax Matters Person: The person designated as "tax matters person" in the manner provided under Treasury Regulation Sections 1.860F-4(d) and 301.6231(a)(7)-1T. The Holder of the greatest Percentage Interest in a Class of Residual Certificates shall be the Tax Matters Person for the related REMIC.  The Securities Administrator, or any successor thereto or assignee thereof, shall serve as tax administrator hereunder and as agent for the related Tax Matters Person(s).

Telerate Screen Page 3750: The display designated as page 3750 on the Telerate Service (or such other page as may replace page 3750 on that service for the purpose of displaying London interbank offered rates of major banks).

Transfer:  Any direct or indirect transfer or sale of any ownership interest in a Note or a Certificate.

Treasury Regulations: Regulations, including proposed or temporary regulations, promulgated under the Code. References herein to specific provisions of proposed or temporary

regulations shall include analogous provisions of final Treasury Regulations or other successor Treasury Regulations.

Trigger Event: With respect to any Payment Date is if any of the following tests is not satisfied: (A) the 60 Day Plus Delinquency Percentage is less than 4.500% of the aggregate Stated Principal Balance of the HELOCs, (B) for any Payment Date from and including the Payment Date in March 2006 to and including the Payment Date in February 2010, the Cumulative Charge-off Percentage for such Payment Date is less than 2.250%, (C) for any Payment Date from and including the Payment Date in March 2010 to and including the Payment Date in February 2011, the Cumulative Charge-off Percentage for such Payment Date is less than 3.250%, (D) for any Payment Date from and including the Payment Date in March 2011 to and including the Payment Date in March 2012, the Cumulative Charge-off Percentage for such Payment Date is less than 4.000%, (E) for any Payment Date thereafter, the Cumulative Charge-off Percentage for such Payment Date is less than 4.400%.

Trust: The SACO I Trust 2006-1 created pursuant to the Trust Agreement.

Trust Agreement: The Trust Agreement, dated as of February 23, 2006 between the Depositor and the Owner Trustee, as amended and restated by the Amended and Restated Trust Agreement, dated as of February 28, 2006, among the Depositor, the Owner Trustee, and the Securities Administrator.

Trust Estate: The meaning specified in the Granting Clause of the Indenture.

Trust Indenture Act or TIA: The Trust Indenture Act of 1939, as amended from time to time, as in effect on any relevant date.

UCC: The Uniform Commercial Code, as amended from time to time, as in effect in any specified jurisdiction.

Uncertificated Accrued Interest: With respect to each REMIC I Regular Interest on each Payment Date, an amount equal to one month's interest at the Uncertificated REMIC I Pass-Through Rate on the related Uncertificated Principal Balance of such REMIC I Regular Interest. In each case, Uncertificated Accrued Interest will be reduced by any Interest Shortfalls allocated to such REMIC I Regular Interests.

Uncertificated Principal Balance: The amount of REMIC I Regular Interests or Class E Interest outstanding as of any date of determination. As of the Closing Date, the Uncertificated Principal Balance of each REMIC I Regular Interest and Class E Interest shall equal the amount set forth in the Section 10.01 of the Indenture as its initial uncertificated principal balance. On each Payment Date, the Uncertificated Principal Balance of the REMIC I Regular Interests shall be reduced by all distributions of principal made on such REMIC I Regular Interests on such Payment Date pursuant to Section 10.02(b)(ii) of the Indenture and, if and to the extent necessary and appropriate, shall be further reduced on such Payment Date by Charge-Off Amounts as provided in Section 10.03 of the Indenture, and the Uncertificated Principal Balance of REMIC I Regular Interest ZZ shall be increased by interest deferrals as provided in Section 10.02(b)(i) of the Indenture. The Uncertificated Principal Balance of each

REMIC I Regular Interest and Class E Interest shall never be less than zero. With respect to the Class E Interest as of any date of determination, an amount equal to the excess, if any, of (A) the then aggregate Uncertificated Principal Balance of the REMIC I Regular Interests over (B) the then aggregate Note Principal Balance of the Notes then outstanding.

Uncertificated REMIC I Pass-Through Rate: With respect to any REMIC I Regular Interest and any Payment Date, a per annum rate equal to the weighted average Net Mortgage Rate of the HELOCs as of the first day of the related Collection Period, weighted on the basis of the Stated Principal Balances thereof as of the first day of the related Collection Period, minus the premium due to the Note Insurer under the Policy multiplied by a fraction the numerator of which is the aggregate Note Principal Balance of the Class A Notes and the denominator of which is the Stated Principal Balance of the HELOCs, expressed as a per annum rate.

Underwriter: Bear, Stearns & Co. Inc.

Uninsured Cause: Any cause of damage to a Mortgaged Property or related REO Property such that the complete restoration of such Mortgaged Property or related REO Property is not fully reimbursable by the hazard insurance policies required to be maintained pursuant to the related Servicing Agreement, without regard to whether or not such policy is maintained.

Unpaid Interest Shortfall Amount: With respect to any Class of Notes and (i) the first Payment Date, zero, and (ii) any Payment Date after the first Payment Date, the amount, if any, by which (A) the sum of (1) the Current Interest for such Class of Notes for the immediately preceding Payment Date and (2) the outstanding Unpaid Interest Shortfall Amount, if any, for such Class of Notes for such preceding Payment Date exceeds (B) the aggregate amount distributed on such Class of Notes in respect of interest pursuant to clause (A) above on such preceding Payment Date, plus interest on the amount of the interest due but not paid on such Class of Notes on such preceding Payment Date, to the extent permitted by law, at the Note Interest Rate for such Class for the related Accrual Period.