# EXHIBIT B

**EXECUTION COPY**

GREENWICH CAPITAL ACCEPTANCE, INC.,
Depositor

GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.,
Seller

WELLS FARGO BANK, N.A.
Master Servicer and Securities Administrator

and

DEUTSCHE BANK NATIONAL TRUST COMPANY,
Trustee and Custodian

POOLING AND SERVICING AGREEMENT

Dated as of August 1, 2005

HarborView Mortgage Loan Trust 2005-11
Mortgage Loan Pass-Through Certificates, Series 2005-11

**Table of Contents**

**Page**

ARTICLE I
DEFINITIONS; DECLARATION OF TRUST

SECTION 1.01.    Defined Terms. ...............................................................................9
SECTION 1.02.    Accounting......................................................................................58

ARTICLE II
CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES

SECTION 2.01.    Conveyance of Mortgage Loans. ..................................................59
SECTION 2.02.    Acceptance by Trustee....................................................................62
SECTION 2.03.    Repurchase or Substitution of Mortgage Loans by the Originators and
                 the Seller. ....................................................................................64
SECTION 2.04.    Representations and Warranties of the Seller with Respect to the
                 Mortgage Loans. ........................................................................67
SECTION 2.05.    [Reserved]......................................................................................68
SECTION 2.06.    Representations and Warranties of the Depositor. .........................68
SECTION 2.07.    Issuance of Certificates..................................................................70
SECTION 2.08.    Representations and Warranties of the Seller..................................70
SECTION 2.09.    Covenants of the Seller...................................................................72

ARTICLE III
ADMINISTRATION AND MASTER SERVICING OF THE MORTGAGE LOANS

SECTION 3.01.    Master Servicer to Service and Administer the Mortgage Loans....73
SECTION 3.02.    REMIC-Related Covenants. ...........................................................74
SECTION 3.03.    Monitoring of Servicer. .................................................................74
SECTION 3.04.    Fidelity Bond. ................................................................................76
SECTION 3.05.    Power to Act; Procedures. ..............................................................76
SECTION 3.06.    Due-on-Sale Clauses; Assumption Agreements..............................77
SECTION 3.07.    Release of Mortgage Files. .............................................................77
SECTION 3.08.    Documents, Records and Funds in Possession of Master Servicer to be
                 Held for Trust. ............................................................................78
SECTION 3.09.    Standard Hazard Insurance and Flood Insurance Policies...............79
SECTION 3.10.    Presentment of Claims and Collection of Proceeds........................79
SECTION 3.11.    Maintenance of the Primary Insurance Policies. .............................80
SECTION 3.12.    Trustee to Retain Possession of Certain Insurance Policies and
                 Documents. ..................................................................................80
SECTION 3.13.    Realization Upon Defaulted Mortgage Loans. ...............................81
SECTION 3.14.    Additional Compensation to the Master Servicer............................81
SECTION 3.15.    REO Property. ................................................................................81
SECTION 3.16.    Annual Officer's Certificate as to Compliance. ..............................82

i

SECTION 3.17.    Annual Independent Accountant's Servicing Report. .......................................82
SECTION 3.18.    Reports Filed with Securities and Exchange Commission. ...........................83
SECTION 3.19.    [Reserved]..............................................................................................................84
SECTION 3.20.    [Reserved]..............................................................................................................84
SECTION 3.21.    [Reserved]..............................................................................................................84
SECTION 3.22.    [Reserved]..............................................................................................................84
SECTION 3.23.    Closing Opinion of Counsel. ..........................................................................84
SECTION 3.24.    Liabilities of the Master Servicer. .................................................................84
SECTION 3.25.    Merger or Consolidation of the Master Servicer. .......................................84
SECTION 3.26.    Indemnification of the Trustee, the Master Servicer and the Securities
                 Administrator.........................................................................................................85
SECTION 3.27.    Limitations on Liability of the Master Servicer and Others. ..........................85
SECTION 3.28.    Master Servicer Not to Resign.......................................................................87
SECTION 3.29.    Successor Master Servicer..............................................................................87
SECTION 3.30.    Sale and Assignment of Master Servicing.....................................................87

## ARTICLE IV
## ACCOUNTS

SECTION 4.01.    Servicing Accounts...........................................................................................88
SECTION 4.02.    Distribution Account. ......................................................................................89
SECTION 4.03.    Permitted Withdrawals and Transfers from the Distribution Account............91
SECTION 4.04.    Yield Maintenance Account. ..........................................................................92
SECTION 4.05.    Certificate Insurance Policy............................................................................94

## ARTICLE V
## FLOW OF FUNDS

SECTION 5.01.    Distributions. ....................................................................................................96
SECTION 5.02.    Allocation of Net Deferred Interest. .............................................................101
SECTION 5.03.    Allocation of Realized Losses. ......................................................................102
SECTION 5.04.    Statements........................................................................................................103
SECTION 5.05.    Remittance Reports; Advances.......................................................................106
SECTION 5.06.    Compensating Interest Payments....................................................................106
SECTION 5.07.    Basis Risk Reserve Fund. ..............................................................................107
SECTION 5.08.    Recoveries. ......................................................................................................108

## ARTICLE VI
## THE CERTIFICATES

SECTION 6.01.    The Certificates................................................................................................109
SECTION 6.02.    Registration of Transfer and Exchange of Certificates. ...............................110
SECTION 6.03.    Mutilated, Destroyed, Lost or Stolen Certificates. .......................................118
SECTION 6.04.    Persons Deemed Owners................................................................................118
SECTION 6.05.    Appointment of Paying Agent. ......................................................................118

## ARTICLE VII
## DEFAULT

SECTION 7.01.   Event of Default. ................................................................... 119
SECTION 7.02.   Trustee to Act. ...................................................................... 121
SECTION 7.03.   Waiver of Event of Default. ...................................................... 122
SECTION 7.04.   Notification to Certificateholders. .............................................. 122

## ARTICLE VIII
## THE TRUSTEE AND THE SECURITIES ADMINISTRATOR

SECTION 8.01.   Duties of the Trustee and the Securities Administrator. ................... 123
SECTION 8.02.   Certain Matters Affecting the Trustee and the Securities
                Administrator. ....................................................................... 124
SECTION 8.03.   Trustee and Securities Administrator Not Liable for Certificates or
                Mortgage Loans. .................................................................... 126
SECTION 8.04.   Trustee, Custodian, Master Servicer and Securities Administrator May
                Own Certificates. ................................................................... 127
SECTION 8.05.   Trustee's and Securities Administrator's Fees and Expenses. ........... 127
SECTION 8.06.   Eligibility Requirements for Trustee and Securities Administrator. ...... 127
SECTION 8.07.   Resignation or Removal of Trustee and Securities Administrator. ....... 128
SECTION 8.08.   Successor Trustee and Successor Securities Administrator. .............. 129
SECTION 8.09.   Merger or Consolidation of Trustee or Securities Administrator. ........ 129
SECTION 8.10.   Appointment of Co-Trustee or Separate Trustee. ......................... 130
SECTION 8.11.   Limitation of Liability. ............................................................ 131
SECTION 8.12.   Trustee May Enforce Claims Without Possession of Certificates. ....... 131
SECTION 8.13.   Suits for Enforcement. ........................................................... 132
SECTION 8.14.   Waiver of Bond Requirement. .................................................. 132
SECTION 8.15.   Waiver of Inventory, Accounting and Appraisal Requirement. ........... 132
SECTION 8.16.   Appointment of Custodians. ..................................................... 132

## ARTICLE IX
## REMIC ADMINISTRATION

SECTION 9.01.   REMIC Administration. ........................................................... 133
SECTION 9.02.   Prohibited Transactions and Activities. ........................................ 135

## ARTICLE X
## TERMINATION

SECTION 10.01.  Termination. ........................................................................ 135
SECTION 10.02.  Additional Termination Requirements. ......................................... 137

iii

ARTICLE XI
[RESERVED]


ARTICLE XII
MISCELLANEOUS PROVISIONS

SECTION 12.01.  Amendment. ...........................................................................................138
SECTION 12.02.  Recordation of Agreement; Counterparts.............................................139
SECTION 12.03.  Limitation on Rights of Certificateholders..........................................140
SECTION 12.04.  Governing Law; Jurisdiction. ..............................................................141
SECTION 12.05.  Notices...................................................................................................141
SECTION 12.06.  Severability of Provisions....................................................................142
SECTION 12.07.  Article and Section References.............................................................142
SECTION 12.08.  Notice to each Rating Agency. .............................................................142
SECTION 12.09.  Further Assurances. ..............................................................................143
SECTION 12.10.  Benefits of Agreement...........................................................................143
SECTION 12.11.  Acts of Certificateholders.....................................................................144
SECTION 12.12.  Successors and Assigns.........................................................................144
SECTION 12.13.  Provision of Information. ......................................................................144
SECTION 12.14.  Tax Treatment of Class P Certificate. ..................................................145

EXHIBITS AND SCHEDULES:

Exhibit A-1    Form of Class A Certificate..............................................................A-1
Exhibit A-2    Form of Class X Certificate..............................................................A-2
Exhibit A-3    Form of Class PO Certificate............................................................A-3
Exhibit B      Form of Class A-R Certificate...........................................................B-1
Exhibit C      Form of Subordinate Certificate ......................................................C-1
Exhibit D      Form of Class P Certificate ..............................................................D-1
Exhibit E      Form of Reverse of the Certificates...................................................E-1
Exhibit F      Request for Release ...........................................................................F-1
Exhibit G-1    Form of Receipt of Mortgage Note ................................................G-1-1
Exhibit G-2    Form of Interim Certification of Trustee .......................................G-2-1
Exhibit G-3    Form of Final Certification of Trustee ...........................................G-3-1
Exhibit H      Form of Lost Note Affidavit............................................................H-1
Exhibit I-1     Form of ERISA Representation Class A-R .......................................I-1-1
Exhibit I-2     Form of ERISA Representation For ERISA-Restricted Certificates.......I-2-1
Exhibit J-1     Form of Investment Letter Non-Rule 144A .....................................J-1-1
Exhibit J-2     Form of Rule 144A Investment Letter .............................................J-2-1
Exhibit K      Form of Transferor Certificate.........................................................K-1
Exhibit L      Transfer Affidavit for Residual Certificate Pursuant to
               Section 6.02(e)................................................................................L-1
Exhibit M      Servicing Agreement.......................................................................M-1
Exhibit N-1    Form of Transfer Certificate (Restricted Global Security to
               Regulation S Security)................................................................ N-1-1
Exhibit N-2    Form of Transfer Certificate (Regulation S Security to

|            | Restricted Global Security) ........................................................ N-2-1 |
| Exhibit O | Form of Certificate Insurance Policy................................................O-1 |

| Schedule I   | Mortgage Loan Schedule |
| Schedule II  | [Reserved] |
| Schedule III | Yield Maintenance Payments |

This Pooling and Servicing Agreement is dated as of August 1, 2005 (the "**Agreement**"), among GREENWICH CAPITAL ACCEPTANCE, INC., a Delaware corporation, as depositor (the "**Depositor**"), GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., a Delaware corporation, as seller (the "**Seller**"), WELLS FARGO BANK, N.A., a national banking association, as master servicer (in such capacity, the "**Master Servicer**") and as securities administrator (in such capacity, the "**Securities Administrator**") and DEUTSCHE BANK NATIONAL TRUST COMPANY, a national banking association, as trustee (the "**Trustee**").

PRELIMINARY STATEMENT:

Through this Agreement, the Depositor intends to cause the issuance and sale of the HarborView Mortgage Loan Trust 2005-11 Mortgage Loan Pass-Through Certificates, Series 2005-11 (the "**Certificates**") representing in the aggregate the entire beneficial ownership of the Trust, the primary assets of which are the Mortgage Loans (as defined below).

The Depositor intends to sell the Certificates to be issued hereunder in multiple classes, which in the aggregate will evidence the entire beneficial ownership interest in the Trust Fund created hereunder. The Certificates will consist of twenty-four classes of certificates, designated as (i) the Class 1-A-1 Certificates, (ii) the Class 1-A2 Certificates, (iii) the Class 2-A-1 Certificates, (iv) the Class 2-A2A Certificates, (v) the Class 2-A2B Certificates, (vi) the Class 1-X Certificates, (vii) the Class X Certificates, (viii) the Class PO Certificates, (ix) the Class 2-PO Certificates, (x) the Class A-R Certificates, (xi) the Class B-1 Certificates, (xii) the Class B-2 Certificates, (xiii) the Class B-3 Certificates, (xiv) the Class B-4 Certificates, (xv) the Class B-5 Certificates, (xvi) the Class B-6 Certificates, (xvii) the Class 2-B1 Certificates, (xviii) the Class 2-B2 Certificates, (xix) the Class 2-B3 Certificates, (xx) the Class 2-B4 Certificates, (xxi) the Class 2-B5 Certificates, (xxii) the Class 2-B6 Certificates, (xxiii) the Class A-R-II Certificates and (xxiv) the Class P Certificates.

As provided herein, the Trustee shall elect that the Trust Fund (exclusive of the assets held in the Basis Risk Reserve Fund, and the Yield Maintenance Account and the Yield Maintenance Agreements (collectively, the "Excluded Trust Property") be treated for federal income tax purposes as comprising three real estate mortgage investment conduits (each, a "REMIC" or, in the alternative, the "Lower-Tier REMIC," the "Middle-Tier REMIC" and the "Upper-Tier REMIC"). Each Certificate, other than the Class A-R and Class A-R-II Certificates, shall represent ownership of a regular interest in the Upper-Tier REMIC, as described herein. In addition, (i) the LIBOR Certificates represent the right to receive payments in respect of Basis Risk Shortfalls from the Basis Risk Reserve Fund as provided in Section 5.07 and (ii) the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B, and Class 2-A-1C Certificates represent the right to receive payments in respect of Basis Risk Shortfalls from the Yield Maintenance Account as provided in Section 4.04. The owners of the Class X Certificates beneficially own the Basis Risk Reserve Fund and the Yield Maintenance Account. The Class A-R-II Certificate represents ownership of the sole class of residual interest in the Lower-Tier REMIC, and the Class A-R Certificates represent ownership of the sole class of residual interest in the Middle-Tier and the Upper-Tier REMICs.

The Lower-Tier REMIC shall hold as assets all property of the Trust Fund, other than the Excluded Trust Property and the interests in the Lower-Tier REMIC and the Middle-Tier

1

REMIC formed hereby. The Middle-Tier REMIC shall hold as assets the uncertificated Lower-Tier Interests, other than the Class LT-R Interest. Each such Lower-Tier Interest is hereby designated as a REMIC regular interest. The Upper-Tier REMIC shall hold as assets the uncertificated Middle-Tier Interests, other than the Class MT-R Interest. Each such Middle-Tier Interest is hereby designated as a REMIC regular interest.

### Lower-Tier REMIC Interests

The following table specifies the Class designation, interest rate, and initial principal amount for each Lower-Tier REMIC Interest:

| Designation | Interest Rate | | Initial Principal Balance | Related group |
|---|---|---|---|---|
| LT-Group 1 | (1) | $ | 222,415,510.10 | Group 1 |
| LT-Group 1 SCA | (1) | $ | 238,235.96 | Group 1 |
| LT-Group 2 | (2) | $ | 463,586,139.55 | Group 2 |
| LT-Group 2 SCA | (2) | $ | 496,566.56 | Group 2 |
| LT-R | (3) | | (3) | N/A |

(1)  The interest rate with respect to any Distribution Date (and the related Accrual Period) for each of these Lower-Tier Interests is a per annum rate equal to the Group 1 Net WAC.

(2)  The interest rate with respect to any Distribution Date (and the related Accrual Period) for each of these Lower-Tier Interests is a per annum rate equal to the Group 2 Net WAC.

(3)  The LT-R Interest is the sole class of residual interests in the Lower-Tier REMIC. It does not have an interest rate or a principal balance. Ownership of the LT-R Interest is represented by the Class A-R-II Certificate.

On each Distribution Date, Available Funds for Loan Group 1 and Loan Group 2 shall be allocated among the Lower-Tier Interests in the following order of priority:

(i)  First, concurrently to the LT-Group 1 SCA and LT-Group 2 SCA Interests as follows:

(a)  to the LT-Group 1 SCA Interest until its principal balance equals one percent of the Subordinate Component for Loan Group 1 for the immediately succeeding Distribution Date;

(b)  to the LT-Group 2 SCA Interest until its principal balance equals one percent of the Subordinate Component for Loan Group 2 for the immediately succeeding Distribution Date;

(c)  to the LT-Group 1 SCA or the LT-Group 2 SCA Interest the amount necessary to cause the ratio of the principal balance of the LT-Group 1 SCA Interest to the principal balance of the LT-Group 2 SCA Interest to equal the

ratio of the Subordinate Component for Loan Group 1 for the immediately
succeeding Distribution Date to equal the Subordinate Component for Loan
Group 2 for the immediately succeeding Distribution Date;

(ii) Second, concurrently to the LT-Group 1 and the LT-Group 2 Interests until –

(a) the principal balance of the LT-Group 1 Interest equals the excess of (I) the
Pool Balance for Loan Group 1 for the immediately succeeding Distribution
Date, over (II) the principal balance of the LT-Group 1 SCA Interest for such
Distribution Date, after taking into account distributions pursuant to priority
(i) above for such Distribution Date,  and

(b) the principal balance of the LT-Group 2 Interest equals the excess of (I) the
Pool Balance for Loan Group 2 as of for the immediately succeeding
Distribution Date, over (II) the principal balance of the LT-Group 2 SCA
Interest for such Distribution Date, after taking into account distributions
pursuant to priority (i) above for such Distribution Date.

(iii) Third, to make interest distributions on the Lower-Tier Interests at the interest rates
described above, *provided, however*, that any Net Deferred Interest for Loan Group 1
or Loan Group 2 will be allocated among and increase the principal balances of the
Lower-Tier Interest in the same order and priority in which principal is distributed
pursuant to priorities (i) and (ii) above.

(iv) Finally, any remaining amounts to the LT-R Interest.

On any Distribution Date, after all distributions of Available Funds from Loan Group 1
and Loan Group 2 on such date, Realized Losses shall be allocated among the Lower-Tier
Interests in the same order of priority in which principal is distributed among such Lower-Tier
Interests pursuant to priorities (i) and (ii) above.

## Middle-Tier REMIC Interests

| Designation | Interest Rate | Initial Principal Balance | Corresponding Class of Certificates |
|---|---|---|---|
| MT1-A1A | (1) | $ 252,700,050.00 | Class 1-A-1A, Class A-R |
| MT1-A1B | (1) | $ 63,175,000.00 | Class 1-A-1B |
| MT1-Q | (1) | $ 303,240,098.00 | N/A |
| MT1-Z | (1) | $ 6,317,501.00 | N/A |
| MT1-Y | (1) | $ 6,317,501.00 | N/A |
| MT2-A1A | (2) | $ 433,200,000.00 | Class 2-A-1A |
| MT2-A1B | (2) | $ 180,500,000.00 | Class 2-A-1B |
| MT2-A1C | (2) | $ 66,000,000.00 | Class 2-A-1C |
| MT2-Q | (2) | $ 693,120,050.00 | N/A |

3

| | | | |
|---|---|---|---|
| MT2-Z | (2) | $ 14,440,000.00 | N/A |
| MT2-Y | (2) | $ 14,440,000.00 | N/A |
| MTB-1 | (3) | $ 20,125,000.00 | Class B-1 |
| MTB-2 | (3) | $ 15,525,000.00 | Class B-2 |
| MTB-3 | (3) | $ 9,775,000.00 | Class B-3 |
| MTB-4 | (3) | $ 8,625,000.00 | Class B-4 |
| MTB-5 | (3) | $ 8,050,000.00 | Class B-5 |
| MTB-6 | (3) | $ 6,900,000.00 | Class B-6 |
| MTB-Q | (3) | $ 107,639,904.06 | N/A |
| MTB-Z | (3) | $ 2,242,498.00 | N/A |
| MTB-Y | (3) | $ 2,242,498.00 | N/A |
| MT-R | (4) | (4) | Class A-R-II |

(1) The interest rate with respect to any Distribution Date (and the related Accrual Period) for each of these Middle-Tier Interests is a per annum rate equal to the weighted average of the interest rates on the LT-Group 1 and LT-Group 1 SCA Interests for such Distribution Date (the Group 1 Net WAC).

(2) The interest rate with respect to any Distribution Date (and the related Accrual Period) for each of these Middle-Tier Interests is a per annum rate equal to the weighted average of the interest rates on the LT-Group 2 and LT-Group 2 SCA Interests for such Distribution Date (the Group 2 Net WAC).

(3) The interest rate with respect to any Distribution Date (and the related Accrual Period) for each of these Middle-Tier Interests is a per annum rate equal to the weighted average of the interest rates on the LT-Group 1 SCA and LT-Group 2 SCA Interests for such Distribution Date.

(4) The MT-R Interest is the sole class of residual interests in the Middle-Tier REMIC. It does not have an interest rate or a principal balance. Ownership of the MT-R Interest is represented by the Class AR Certificates.

On each Distribution Date, Available Funds, which shall have been distributed in respect of the Lower-Tier Interests in the Lower-Tier REMIC, shall be allocated among the Middle-Tier Interests in the following order of priority:

(i) First, to the MT1-Z, MT2-Z, MTB-Z, MT1-Y, MT2-Y, and MTB-Y Interests in reduction of their principal balances as follows –

(a) Concurrently to the MT1-Z, MT2-Z, and MTB-Z Interests the amount, if any, required to reduce (I) the principal balance of the MT1-Z Interest to the MT1-Z Target Balance for such Distribution Date, (II) the principal balance of the MT2-Z Interest to the MT2-Z Target Balance for such Distribution Date, and (III) the principal balance of the MTB-Z Interest to the MTB-Z Target Balance for such Distribution Date;

(b) Concurrently to the MT1-Y, MT2-Y, and MTB-Y Interests the amount, if any, required to reduce (I) the principal balance of the MT1-Y Interest to the MT1-Y Target Balance for such Distribution Date, (II) the

principal balance of the MT2-Y Interest to the MT2-Y Target Balance for such Distribution Date, and (III) the principal balance of the MTB-Y Interest to the MTB-Y Target Balance for such Distribution Date; and

(c) Concurrently to the MT1-Z, MT2-Z, MTB-Z, MT1-Y, MT2-Y, and MTB-Y Interests as follows: (I) to the MT1-Z and MT1-Y Interests, in proportion to their principal balances, after taking into account distributions pursuant to priorities (a) and (b) above, until the sum of their principal balances equals 2% of the aggregate Class Certificate Principal Balance of the Class A-R, Class 1-A-1A, and Class 1-A-1B Certificates immediately after such Distribution Date, (II) to the MT2-Z and MT2-Y Interests, in proportion to their principal balances, after taking into account distributions pursuant to priorities (a) and (b) above, until the sum of their principal balances equals 2% of the aggregate Class Certificate Principal Balance of the Class 2-A-1A, Class 2-A-1B, and Class 2-A-1C Certificates immediately after such Distribution Date, and (III) to the MTB-Z and MTB-Y Interests, in proportion to their principal balances, after taking into account distributions pursuant to priorities (a) and (b) above, until the sum of their principal balances equals 2% of the aggregate Class Certificate Principal Balance of the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5, and Class B-6 Certificates immediately after such Distribution Date,

(ii) Second, concurrently to the MT1-A-1A, MT1-A-1B, MT2-A-1A, MT2-A-1B, MT2-A-1C, MT-B-1, MT-B-2, MT-B-3. MT-B.4, MT-B-5, and MT-B-6 Interests until the principal balance of each such Middle-Tier Interest equals 50% of the Class Certificate Principal Balance or Balances of the Corresponding Class or Classes of Certificates for such Middle-Tier Interest immediately after such Distribution Date;

(iii) Third, concurrently to the MT1-Q, MT2-Q, and MTB-Q Interests until (a) the principal balance of the MT1-Q Interest equals the excess of (I) the aggregate Class Certificate Principal Balance of the Class 1-A-1A, and Class 1-A-1B Certificates and the Component Principal Balance of the PO-1 Component immediately after such Distribution Date over (II) the aggregate of the principal balances of the MT1-A1A, MT1-A1B, MT1-Z, and MT1-Y Interests after taking into account the distributions made pursuant to priorities (i) and (ii) above on such Distribution Date, (b) the principal balance of the MT2-Q Interest equals the excess of (I) the aggregate Class Certificate Principal Balance of the Class 2-A-1A, Class 2-A-1B, and Class 2-A-1C Certificates and the Component Principal Balance of the 2-PO Componenet immediately after such Distribution Date over (b) the aggregate of the principal balances of the MT2-A1A, MT2-A1B , MT2-A1C, MT2-Z, and MT2-Y Interests after taking into account the distributions made pursuant to priorities (i) and (ii) above on such Distribution Date, and (c) the principal balance of the MTB-Q Interest equals the excess of (I) the aggregate Class Certificate Principal Balance of the Class B-1, Class B-2, Class B-3, Class

5

B-4, Class B-5, and Class B-6 Certificates immediately after such Distribution Date over (b) the aggregate of the principal balances of the MTB-1, MTB-2, MTB-3, MTB-4, MTB-5, MTB-6, MTB-Z, and MTB-Y Interests after taking into account the distributions made pursuant to priorities (i) and (ii) above on such Distribution Date;

(iv) Fourth, remaining Available Funds shall be applied to interest distributions on the Middle-Tier Interests in the Middle-Tier REMIC at the interest rates described above, *provided, however*, that any Net Deferred Interest will be allocated among and increase the principal balances of the Middle-Tier Interests in the same order of priority in which principal is distributed among such Middle-Tier Interests pursuant to priorities (i)(c), (ii), and (iii) above.

On any Distribution Date, after all distributions of Available Funds, which shall have been distributed or allocated in respect of the Lower-Tier Interests in the Lower-Tier REMIC, Realized Losses shall be allocated among the Middle-Tier Interests in the same order of priority in which principal is distributed among such Middle-Tier Interests pursuant to priorities (i) through (iii) above.

### The Certificates

The following table sets forth (or describes) the Class designation, Pass-Through Rate, and Original Class Certificate Principal Balance (or initial Certificate Notional Balance) for each Class of Certificates comprising interests in the Trust Fund created hereunder. Each Class of Certificates, other than the Class A-R and Class A-R-II Certificates, is hereby designated as representing ownership of regular interests in the Upper-Tier REMIC.

6

| | Original Class Certificate Principal Balance or Class Certificate Notional Balance | Pass-Through Rate |
|---|---|---|
| Class 1-A-1A | $ 159,064,000.00 | (1) |
| Class 1-A-1B | $ 39,766,000.00 | (1) |
| Class 2-A-1A | $ 248,657,000.00 | (1) |
| Class 2-A-1B | $ 103,606,000.00 | (1) |
| Class 2-A-1C | $ 62,163,000.00 | (1) |
| Class X | Notional Amount (2) | (1)(2) |
| Class PO | $100.00(3) | (4) |
| Class A-R | $100.00 | (1) |
| Class B-1 | $ 23,348,000.00 | (5) |
| Class B-2 | $ 15,794,000.00 | (5) |
| Class B-3 | $ 12,704,000.00 | (5) |
| Class B-4 | $ 11,331,000.00 | (5) |
| Class B-5 | $ 6,180,000.00 | (5) |
| Class B-6 | $ 4,123,252.17 | (5) |
| Class P | (6) | (6) |
| Class A-R-II | (7) | (7) |

(1)     Calculated pursuant to the definition of "Pass-Through Rate."

(2)     For purposes of the REMIC provisions, the Class X Certificates shall accrue interest on a notional balance equal to the sum of the principal balances of the Middle-Tier Interests (other than the MT-R Interest).   For purposes of the REMIC Provisions, interest shall accrue on the Class X Certificate at a rate equal to the excess, if any, of (i) the Adjusted Net WAC over (ii) the Adjusted Middle-Tier WAC. The Class X Certificates are interest-only certificates and will not be entitled to distributions of principal.

(3)     The Class PO Certificates will be deemed for purposes of the distribution of principal to consist of two components:  the PO-1 Component and the PO-2 Component.   The Components are not severable. For purposes of the REMIC Provisions, the Class PO Certificates shall accrue interest on a notional balance equal to the sum of the principal balances of the Middle-Tier Interests (other than the MT-R Interest).  For purposes of the REMIC Provisions, interest shall accrue on the Class PO Certificate at a rate equal to the excess, if any, of (i) the Net WAC over (ii) the Adjusted Middle-Tier Pay Rate.  All amounts so accrued shall be deferred and distributed as principal in respect of the PO-1 and PO-2 Components.

(4)     The Class PO Certificates are principal-only certificates and will not be entitled to distributions of interest.

(5)     Calculated pursuant to the definition of "Pass-Through Rate," but adjusted, for purposes of the REMIC Provisions, to reflect the allocation, if any, of Subordinate Class Expense Share.

7

(6)     The Class P Certificate does not have a principal balance or a pass-through rate and is entitled to receive the "Class P Distributable Amount."

(7)     For purposes of the REMIC provisions, the Class A-R-II Certificate represents ownership of the Class LT-R Interest, which is the sole classes of residual interest in the Lower-Tier REMIC and does not have a principal balance or a pass-through rate.

8

ARTICLE I

DEFINITIONS; DECLARATION OF TRUST

SECTION 1.01. Defined Terms.

Whenever used in this Agreement or in the Preliminary Statement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Article. All calculations of interest described herein shall be made on the basis of an assumed 360-day year consisting of twelve 30-day months.

"**1933 Act**": The Securities Act of 1933, as amended.

"**Acceptable Successor Servicer**": A FHLMC- or FNMA-approved servicer that is (i) reasonably acceptable to the Master Servicer and (ii) acceptable to each Rating Agency, as evidenced by a letter from each such Rating Agency delivered to the Master Servicer and the Trustee that such entity's acting as a successor servicer will not result in a qualification, withdrawal or downgrade of the then-current rating of any of the Certificates.

"**Accepted Master Servicing Practices**": With respect to any Mortgage Loan, as applicable, either (x) those customary mortgage servicing practices of prudent mortgage servicing institutions that master service mortgage loans of the same type and quality as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, to the extent applicable to the Trustee or the Master Servicer (except in its capacity as successor to the Servicer), or (y) as provided in the Servicing Agreement, to the extent applicable to the Servicer, but in no event below the standard set forth in clause (x).

"**Account**": The Distribution Account or each Servicing Account, as the context requires.

"**Accrual Period**": With respect to each Distribution Date and the Certificates (other than the LIBOR Certificates) and any Class of Lower-Tier Interests, the calendar month prior to the month of that Distribution Date. With respect to each Distribution Date and the LIBOR Certificates, the period beginning on the immediately preceding Distribution Date (or Closing Date in the case of the first Distribution Date) and ending on the date immediately preceding such Distribution Date. Interest on the LIBOR Certificates will be calculated on the basis of a 360-day year and the actual number of days elapsed in the related Accrual Period; in the case of the other Classes of Certificates (and the Lower-Tier Interests), interest shall be calculated based on an assumption that each month has 30 days and each year has 360 days.

"**Adjusted Cap Rate**": Any of the Group 1 Adjusted Cap Rate, the Group 2 Adjusted Cap Rate, the Subordinate Adjusted Cap Rate or the Class X Adjusted Cap Rate, as applicable.

"**Adjusted Middle-Tier Pay Rate**": For any Distribution Date (and the related Accrual Period), the product of (i) 2 multiplied by (ii) the weighted average of the interest rates on the MT1-A1A, MT1-A1B, MT1-Q, MT1-Y, MT1-Z, MT2-A1A, MT2-A1B, MT2-A1C, MT2-Q, MT2-Y, MT2-Z, MTB-1, MTB-2, MTB-3, MTB-4, MTB-5, MTB-6, MTB-Q, MTB-Z, and

9

MTB-Y Interests, weighted on the basis of their principal balances as of the first day of the related Accrual Period and computed for this purpose by (a) first subjecting the interest rate on the MT1-Q, MT1-Z, MT1-Y, MT2-Q, MT2-Y, MT2-Z, MTB-Q, MTB-Y, and MTB-Z Interests to a cap of 0.00%, and (b) first subjecting the interest rate on the MT1-A1A, MT1-A1B, MT2-A1A, MT2-A1B, MT2-A1C1, MT2-A1C2, MTB-1, MTB-2, MTB-3, MTB-4, MTB-5, and MTB-6 Interests to a cap equal to (I) the Pass-Through Rate for their Corresponding Class of Certificates (in the case of the Class 1-A-1B and Class 2-A-1C Certificates, increased to reflect the applicable Premium Rate) multiplied by the quotient of (A) the actual number of days in the Accrual Period for the Corresponding Class of Certificates divided by (B) 30 and a floor equal to (II) (a) in the case of the MT1-A1A and MT1-A1B Interests, the Group 1 Adjusted Net WAC, (b) in the case of the MT2-A1A, MT2-A1B, MT2-A1C1, and MT2-A1C2 Interests, the Group 2 Adjusted Net WAC, and (c) in the case of the MTB-1, MTB-2, MTB-3, MTB-4, MTB-5, and MTB-6 Interests, the Subordinate Adjusted Net WAC.

"**Adjusted Middle-Tier WAC**": For any Distribution Date (and the related Accrual Period), the product of (i) 2 multiplied by (ii) the weighted average of the interest rates on the MT1-A1A, MT1-A1B, MT1-Q, MT1-Y, MT1-Z, MT2-A1A, MT2-A1B, MT2-A1C1, MT2-A1C2, MT2-Q, MT2-Y, MT2-Z, MTB-1, MTB-2, MTB-3, MTB-4, MTB-5, MTB-6, MTB-Q, MTB-Z, and MTB-Y Interests, weighted on the basis of their principal balances as of the first day of the related Accrual Period and computed for this purpose by (a) first subjecting the interest rate on the MT1-Q, MT1-Z, MT1-Y, MT2-Q, MT2-Y, MT2-Z, MTB-Q, MTB-Y, and MTB-Z Interests to a cap of 0.00%, and (b) first subjecting each of the MT1-A1A, MT1-A1B, MT2-A1A, MT2-A1B, MT2-A1C1, MT2-A1C2, MTB-1, MTB-2, MTB-3, MTB-4, MTB-5, and MTB-6 Interests to a cap equal to the lesser of (I) the Pass-Through Rate for the Corresponding Class of Certificates (in the case of the Class 1-A-1B and Class 2-A-1C Certificates, increased to reflect the applicable Premium Rate) multiplied by the quotient of (A) the actual number of days in the Accrual Period for the Corresponding Class of Certificates divided by (B) 30 and (II) (a) in the case of the MT1-A1A and MT1-A1B Interests, the Group 1 Adjusted Net WAC, (b) in the case of the MT2-A1A, MT2-A1B, MT2-A1C1, and MT2-A1C2 Interests, the Group 2 Adjusted Net WAC, and (c) in the case of the MTB-1, MTB-2, MTB-3, MTB-4, MTB-5, and MTB-6 Interests, the Subordinate Adjusted Net WAC.

"**Adjusted Net WAC**": For any Distribution Date and either Loan Group, the excess of (i) the related Net WAC for such Distribution Date over (ii) the quotient of (a) product of (I) the Net Deferred Interest with respect to the related Loan Group for such Distribution Date multiplied by (II) 12, divided by (b) the Loan Group Balance on the first day of the related Due Period.

"**Adjustment Date**": With respect to each Mortgage Loan, each adjustment date on which the related Loan Rate changes pursuant to the related Mortgage Note. The first Adjustment Date following the Cut-Off Date as to each Mortgage Loan is set forth in the Mortgage Loan Schedule.

"**Advance**": With respect to any Distribution Date and any Mortgage Loan or REO Property, any advance made by the Master Servicer pursuant to Section 7.02.

MNNYIMANAGE 65986v12

"**Adverse REMIC Event**": Either (i) loss of status as a REMIC, within the meaning of Section 860D of the Code, for any group of assets identified as a REMIC in the Preliminary Statement to this Agreement, or (ii) imposition of any tax, including the tax imposed under Section 860F(a)(1) on prohibited transactions, and the tax imposed under Section 860G(d) on certain contributions to a REMIC, on any REMIC created hereunder to the extent such tax would be payable from assets held as part of the Trust Fund.

"**Affiliate**": With respect to any Person, any other Person controlling, controlled by or under common control with such Person. For purposes of this definition, "control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise and "controlling" and "controlled" shall have meanings correlative to the foregoing.

"**Allocable Premium Rate**": For the Class 1-A-1B and Class 2-A-1C Certificates and the related Group 1 Net WAC Cap or Group 2 Net WAC Cap and Pass-Through Rate and any Distribution Date, the product of (i)(a) the product of (x) the Aggregate Premium Amount for such Distribution Date multiplied by (y) 12 and multiplied by (z) a fraction the numerator of which is the Class Certificate Principal Balance of such Class immediately prior to such Distribution Date and the denominator of which is the aggregate Class Certificate Principal Balance of the Class 1-A-1B and the Class 2-A-1C Certificates immediately prior to such Distribution Date, divided by (b) the Class Certificate Principal Balance of such Class immediately prior to such Distribution Date, multiplied by (ii) the quotient obtained by dividing 360 by the actual number of days in the related Accrual Period for such Class.

"**Aggregate Premium Amount**": As to any Distribution Date and each Class of Insured Certificates, the product of one-twelfth of the Premium Rate and the aggregate of the Class Certificate Principal Balances of the Class 1-A-1B and Class 2-A-1C Certificates on the immediately preceding Distribution Date, or, in the case of the first Distribution Date, the Closing Date, in each case after giving effect to distributions of principal made on such Distribution Date.

"**Aggregate Subordinate Percentage**": As to any Distribution Date, the percentage equivalent of a fraction the numerator of which is the aggregate of the Class Certificate Principal Balances of the Classes of Subordinate Certificates and the denominator of which is the Pool Balance for such Distribution Date.

"**Agreement**": This Pooling and Servicing Agreement, dated as of August 1, 2005, as amended, supplemented and otherwise modified from time to time.

"**Alliance**": Alliance Bancorp, and its successors and assigns, in its capacity as Originator of the Alliance Mortgage Loans.

"**Alliance Mortgage Loans**": The Mortgage Loans for which Alliance is listed as "Originator" on the Mortgage Loan Schedule.

"**Alliance Purchase Agreement**": The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of April 1, 2005, between GCFP, as purchaser, and Alliance, as

11

seller, as the same may be amended from time to time, and any assignments and conveyances related to the Alliance Mortgage Loans.

"**Applicable Credit Support Percentage**": As defined in Section 5.01(d).

"**Assignment**": As to any Mortgage, an assignment of mortgage, notice of transfer or equivalent instrument, in recordable form, which is sufficient, under the laws of the jurisdiction in which the related Mortgaged Property is located, to reflect or record the sale of such Mortgage.

"**Available Funds**": As to any Distribution Date and any Loan Group, an amount equal to (i) the sum of (a) the aggregate of the Monthly Payments received on or prior to the related Determination Date (excluding Monthly Payments due in future Due Periods but received by the related Determination Date) in respect of the Mortgage Loans in that Loan Group, (b) Net Liquidation Proceeds, Insurance Proceeds, Principal Prepayments (excluding Prepayment Penalty Amounts), Recoveries and other unscheduled recoveries of principal and interest in respect of the Mortgage Loans in that Loan Group received during the related Prepayment Period, (c) the aggregate of any amounts received in respect of REO Properties for such Distribution Date in respect of the Mortgage Loans in that Loan Group, (d) the aggregate of any amounts of Interest Shortfalls (excluding for such purpose all shortfalls as a result of Relief Act Reductions) paid by the Servicer pursuant to the Servicing Agreement and Compensating Interest Payments deposited in the Distribution Account for that Distribution Date in respect of the Mortgage Loans in that Loan Group, (e) the aggregate of the Purchase Prices and Substitution Adjustments deposited in the Distribution Account during the related Prepayment Period in respect of the Mortgage Loans in that Loan Group, (f) the aggregate of any advances in respect of delinquent Monthly Payments made by the Servicer and Advances made by the Master Servicer for that Distribution Date in respect of the Mortgage Loans in that Loan Group, (g) the aggregate of any Advances made by the Trustee for that Distribution Date pursuant to Section 7.02 hereof in respect of the Mortgage Loans in that Loan Group and (h) the Termination Price allocated to such Loan Group on the Distribution Date on which the Trust is terminated; *minus* (ii) the sum of (v) the Expense Fees for that Distribution Date in respect of the Mortgage Loans in that Loan Group, (w) amounts in reimbursement for Advances previously made in respect of the Mortgage Loans in that Loan Group and other amounts as to which the Servicer, the Securities Administrator, the Master Servicer, the Trustee and the Custodian are entitled to be reimbursed pursuant to Section 4.03, (x) the amount payable to the Trustee, the Master Servicer, the Securities Administrator and the Custodian pursuant to Sections 3.26(b), 3.27(c) and 8.05 hereof in respect of the Mortgage Loans in that Loan Group or if not related to a Mortgage Loan, allocated to each Loan Group on a pro rata basis, (y) amounts deposited in the Distribution Account in error in respect of the Mortgage Loans in that Loan Group and (z) and the portion of the Premium Amount payable on such Distribution Date to the Certificate Insurer from such Loan Group.

"**Avoided Payments**": As defined in the Certificate Insurance Policy.

"**Bankruptcy Code**": The Bankruptcy Reform Act of 1978 (Title 11 of the United States Code), as amended.

"**Basis Risk Reserve Fund**": A fund created as part of the Trust Fund pursuant to Section 5.07 of this Agreement but which is not an asset of any of the REMICs.

"**Basis Risk Shortfall**": With respect to any Distribution Date and the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B, Class 2-A-1C and Subordinate Certificates, the "Basis Risk Shortfall" for such class, if any, will equal the sum of:

(i)    the excess, if any, of the Interest Distributable Amount that such Class would have been entitled to receive if the Pass-Through Rate for such Class were calculated without regard to clause (ii) in the definition thereof, over the actual Interest Distributable Amount such Class is entitled to receive for such Distribution Date;

(ii)    any excess described in clause (i) above remaining unpaid from prior Distribution Dates; and

(iii)    (iii)    interest for the applicable Accrual Period on the amount described in clause (ii) above based on the applicable Pass-Through Rate, determined without regard to clause (ii) in the definition thereof.

"**Book-Entry Certificates**": Any of the Certificates that shall be registered in the name of the Depository or its nominee, the ownership of which is reflected on the books of the Depository or on the books of a Person maintaining an account with the Depository (directly, as a "Depository Participant", or indirectly, as an indirect participant in accordance with the rules of the Depository and as described in Section 6.02 hereof). On the Closing Date, all Classes of the Certificates other than the Physical Certificates shall be Book-Entry Certificates.

"**Business Day**": Any day other than a Saturday, a Sunday or a day on which banking or savings institutions in the State of California, the State of Maryland, the State of Minnesota, the State of Texas, the State of New York or in the city in which the Corporate Trust Office of the Trustee is located are authorized or obligated by law or executive order to be closed.

"**Call Option**": The right to terminate this Agreement and the Trust pursuant to the second paragraph of Section 10.01(a) hereof.

"**Call Option Date**": As defined in Section 10.01(a) hereof.

"**Certificate**": Any Regular Certificate, Residual Certificate or Class P Certificate.

"**Certificate Insurance Policy**": The Certificate Guaranty Insurance Policy (No. CA02358A) with respect to the Insured Certificates, and all endorsements thereto dated the Closing Date, issued by the Certificate Insurer for the benefit of the Holders of the Insured Certificates, a form of which is attached hereto as Exhibit O.

"**Certificate Insurer**": XL Capital Assurance, Inc., a monoline financial guaranty insurance company incorporated under the laws of the State of New York.

"**Certificate Insurer Default**": The existence and continuance of any of the following: (a) a failure by the Certificate Insurer to make a payment required under the Certificate Insurance

13

Policy in accordance with its terms; (b) the entry of a decree or order of a court or agency having jurisdiction in respect of the Certificate Insurer in an involuntary case under any present or future federal or state bankruptcy, insolvency or similar law appointing a conservator or receiver or liquidator or other similar official of the Certificate Insurer or of any substantial part of its property, or the entering of an order for the winding up or liquidation of the affairs of the Certificate Insurer and the continuance of any such decree or order undischarged or unstayed and in force for a period of 90 consecutive days; (c) the Certificate Insurer shall consent to the appointment of a conservator or receiver or liquidator or other similar official in any insolvency, readjustment of debt, marshaling of assets and liabilities or similar proceedings of or relating to the Certificate Insurer or of or relating to all or substantially all of its property; or (d) the Certificate Insurer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of or otherwise voluntarily commence a case or proceeding under any applicable bankruptcy, insolvency, reorganization or other similar statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations.

"**Certificate Insurer Reimbursement Amount**": For any Distribution Date, the sum of (a) all amounts previously paid by the Certificate Insurer in respect of Insured Amounts and Avoided Payments for which the Certificate Insurer has not been reimbursed prior to such Distribution Date and (b) interest accrued on the foregoing at the Late Payment Rate from the date the Securities Administrator received such amounts paid by such Certificate Insurer to such Distribution Date.

"**Certificate Notional Balance**": With respect to each Certificate of Class X and any date of determination, the product of (i) the Class Certificate Notional Balance of such Class and (ii) the applicable Percentage Interest of such Certificate.

"**Certificate Owner**": With respect to each Book-Entry Certificate, any beneficial owner thereof and with respect to each Physical Certificate, the Certificateholder thereof.

"**Certificate Principal Balance**": With respect to each Certificate of a given Class (other than Class P, Class A-R-II and Class X) and any date of determination, the product of (i) the Class Certificate Principal Balance of such Class and (ii) the applicable Percentage Interest of such Certificate.

"**Certificate Register**" and "**Certificate Registrar**": The register maintained and registrar appointed pursuant to Section 6.02 hereof. Wells Fargo Bank, N.A. will act as Certificate Registrar, on behalf of the Trustee, for so long as it is the Securities Administrator under this Agreement.

"**Certificateholder**" or "**Holder**": The Person in whose name a Certificate is registered in the Certificate Register, except that a Disqualified Organization or non-U.S. Person shall not be a Holder of a Residual Certificate for any purpose hereof.

"**Class**": Collectively, Certificates that have the same priority of payment and bear the same class designation and the form of which is identical except for variation in the Percentage Interest evidenced thereby.

14

"**Class 1-A-1A Certificate**": Any of the Class 1-A-1A Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-1, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class 1-A-1B Certificate**": Any of the Class 1-A-1B Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-1, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class 2-A-1A Certificate**": Any of the Class 2-A-1A Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-1, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class 2-A-1B Certificate**": Any of the Class 2-A-1B Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-1, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class 2-A-1C Certificate**": Any of the Class 2-A-1C Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-1, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class A-R Certificate**": The Class A-R Certificate as designated on the face thereof executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit B, evidencing the ownership of the sole class of "residual interest" in the Upper-Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class A-R-II Certificate**": The Class A-R-II Certificate as designated on the face thereof executed by the Trustee, and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit B, evidencing the ownership of the sole class of "residual interest" in the Lower-Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class B-1 Certificate**": Any of the Class B-1 Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit C, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class B-2 Certificate**":  Any of the Class B-2 Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit C, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class B-3 Certificate**":  Any of the Class B-3 Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit C, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class B-4 Certificate**":  Any of the Class B-4 Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit C, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class B-5 Certificate**":  Any of the Class B-5 Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit C, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class B-6 Certificate**":  Any of the Class B-6 Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit C, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class Certificate Notional Balance**":  With respect to the Class X Certificates and any Distribution Date, the aggregate Principal Balance of the Mortgage Loans.

"**Class Certificate Principal Balance**":  As to any Distribution Date, with respect to any Class of Certificates (other than the Class X, Class P, Class PO and Class A-R-II Certificates), the Original Class Certificate Principal Balance as reduced by the sum of (x) all amounts actually distributed in respect of principal of that Class on all prior Distribution Dates, (y) all Realized Losses, if any, actually allocated to that Class on all prior Distribution Dates and (z) in the case of the Subordinate Certificates, any applicable Writedown Amount; provided, however, that (i) pursuant to Section 5.02, the Class Certificate Principal Balance of a Class of Certificates shall be increased up to the amount of Net Deferred Interest allocated to such Class of Certificates on such Distribution Date and (ii) pursuant to Section 5.08, the Class Certificate Principal Balance of a Class of Certificates may be increased up to the amount of Realized Losses previously allocated to such Class, in the event that there is a Recovery on a related Mortgage Loan, and the Certificate Principal Balance of any individual Certificate of such Class will be increased by its *pro rata* share of the increase to such Class.  With respect to the Class PO Certificates, the sum of the Component Principal Balances of the Principal-Only Components as (a) reduced by the

sum of (x) all amounts actually distributed in respect of principal of such Components on all prior Distribution Dates and (y) all Realized Losses, if any, actually allocated to such Components on all prior Distribution Dates; provided, however, that (i) pursuant to Section 5.02, the Component Principal Balance of a Component shall be increased up to the amount of Net Deferred Interest allocated to the Class X Certificates based on the related Mortgage Loans on such Distribution Date and (ii) pursuant to Section 5.08, the Component Principal Balance of a Component may be increased up to the amount of Realized Losses previously allocated to such Component, in the event that there is a Recovery on a related Mortgage Loan, and such Component will be increased by its *pro rata* share of the increase to such Component.

"**Class LT-R Interest**": As described in the Preliminary Statement.

"**Class P Certificate**": The Class P Certificate as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit D, evidencing the ownership of the Class P Distributable Amount. The Class P Certificate represents an interest in the Trust Fund, but does not represent an interest in any REMIC created hereunder.

"**Class P Distributable Amount**": With respect to each Distribution Date, all Prepayment Penalty Amounts in respect of Class P Mortgage Loans received by the Master Servicer for the related Prepayment Period.

"**Class P Mortgage Loan**": Any Mortgage Loan with respect to which prepayment penalties are required to be paid in accordance with the terms of the related Mortgage Note.

"**Class PO Certificate**": Any of the Class PO Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-3, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Class Subordination Percentage**": With respect to each Class of Subordinate Certificates and any Distribution Date, the percentage equivalent of a fraction the numerator of which is the Class Certificate Principal Balance of such Class immediately before such Distribution Date and the denominator of which is the aggregate of the Class Certificate Principal Balances of all Classes of Certificates and Component Principal Balances immediately before such Distribution Date.

"**Class X Adjusted Cap Rate**": With respect to the Class X Certificates and any Distribution Date, shall equal the Pass-Through Rate for the Class X Certificates, computed for this purpose by (i) reducing the weighted average of the Net Mortgage Rates by a per annum rate equal to the quotient of (a) the Net Deferred Interest for such Distribution Date multiplied by 12, and (b) the aggregate Principal Balance of the Mortgage Loans as of the first day of the month prior to such Distribution Date (or in the case of the first Distribution Date, as of the Cut-off Date), and (ii) computing the interest accrued on the Certificates (other than the Class X Certificates) by substituting "Adjusted Cap Rate" for "Net WAC Cap" in the definition of Pass-

17

Through Rate for each of the Class A-R, Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B, Class 2-A-1C and Subordinate Certificates.

"**Class X Apportionment Rule**": Either the Group 1 Class X Apportionment Rule or the Group 2 Class X Apportionment Rule, as applicable.

"**Class X Certificate**": Any of the Class X Certificates as designated on the face thereof, executed by the Trustee and authenticated and delivered by the Certificate Registrar, substantially in the form annexed hereto as Exhibit A-2, evidencing the ownership of a "regular interest" in the Upper Tier REMIC created hereunder and representing the right to distributions as set forth herein and therein.

"**Close of Business**": As used herein, with respect to any Business Day and location, 5:00 p.m. at such location.

"**Closing Date**": August 31, 2005.

"**Code**": The Internal Revenue Code of 1986, as amended.

"**Commercial Capital**": Commercial Capital Bank, FSB, and its successors and assigns, in its capacity as Originator of the Commercial Capital Mortgage Loans.

"**Commercial Capital Mortgage Loans**": The Mortgage Loans for which Commercial Capital is listed as "Originator" on the Mortgage Loan Schedule.

"**Commercial Capital Purchase Agreement**": The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of April 1, 2005, between GCFP, as purchaser, and Commercial Capital, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Commercial Capital Mortgage Loans.

"**Commission**": U.S. Securities and Exchange Commission.

"**ComUnity Lending**": ComUnity Lending, Inc., and its successors and assigns, in its capacity as Originator of the ComUnity Lending Mortgage Loans.

"**ComUnity Lending Mortgage Loans**": The Mortgage Loans for which ComUnity Lending is listed as "Originator" on the Mortgage Loan Schedule.

"**ComUnity Lending Purchase Agreement**": The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of April 1, 2005, between GCFP, as purchaser, and ComUnity Lending, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the ComUnity Lending Mortgage Loans.

"**Compensating Interest Payment**": With respect to any Distribution Date, an amount equal to the amount, if any, by which (x) the aggregate amount of any Interest Shortfalls (excluding for such purpose all shortfalls as a result of Relief Act Reductions) required to be paid by the Servicer pursuant to the Servicing Agreement with respect to such Distribution Date, exceeds (y) the aggregate amount actually paid by the Servicer in respect of such shortfalls;

18

*provided, that* such amount, to the extent payable by the Master Servicer, shall not exceed the aggregate Master Servicing Fee that would be payable to the Master Servicer in respect of such Distribution Date without giving effect to any Compensating Interest Payment.

**"Component"**: Either of the PO-1 Component or the PO-2 Component, as applicable.

**"Component Principal Balance"**: As of any date of determination, either the PO-1 Component Principal Balance on such date or the PO-2 Component Principal Balance on such date as applicable.

**"Cooperative Corporation"**: The entity that holds title (fee or an acceptable leasehold estate) to the real property and improvements constituting the Cooperative Property and which governs the Cooperative Property, which Cooperative Corporation must qualify as a Cooperative Housing Corporation under Section 216 of the Code.

**"Cooperative Loan"**: Any Mortgage Loan secured by Cooperative Shares and a Proprietary Lease.

**"Cooperative Loan Documents"**: As to any Cooperative Loan, (i) the Cooperative Shares, together with a stock power in blank; (ii) the original or a copy of the executed Security Agreement; (iii) the original or a copy of the executed Proprietary Lease and the original assignment of the Proprietary Lease endorsed in blank; (iv) the original executed Recognition Agreement and, if available, the original assignment of the Recognition Agreement (or a blanket assignment of all Recognition Agreements) endorsed in blank; (v) the executed UCC-1 financing statement with evidence of recording thereon, which has been filed in all places required to perfect the security interest in the Cooperative Shares and the Proprietary Lease; and (vi) executed UCC amendments (or copies thereof) or other appropriate UCC financing statements required by state law, evidencing a complete and unbroken line from the mortgagee to the Trustee with evidence of recording thereon (or in a form suitable for recordation).

**"Cooperative Property"**: The real property and improvements owned by the Cooperative Corporation, that includes the allocation of individual dwelling units to the holders of the Cooperative Shares of the Cooperative Corporation.

**"Cooperative Shares"**: Shares issued by a Cooperative Corporation.

**"Cooperative Unit"**: A single family dwelling located in a Cooperative Property.

**"Corporate Trust Office"**: With respect to the Trustee, the principal corporate trust office at which at any particular time its corporate trust business in connection with this Agreement shall be administered, which office at the date of the execution of this instrument is located at 1761 East St. Andrew Place, Santa Ana, California 92705, Attention: HarborView 2005-11 (GC0511), or at such other address as the Trustee may designate from time to time by notice to the Certificateholders, the Depositor, the Master Servicer, the Securities Administrator and the Seller. With respect to the Certificate Registrar and presentment of Certificates for registration of transfer, exchange or final payment, Wells Fargo Bank, N.A., 6th Street and Marquette Avenue, Minneapolis, Minnesota 55479, Attention: Corporate Trust, HarborView Mortgage Loan Trust 2005-11.

19

"**Corresponding Class**": With respect to each class of Lower-Tier Interests, the Class or Classes of Certificates so designated in the Preliminary Statement.

"**Custodian**": Deutsche Bank National Trust Company, and its successors acting as custodian of the Mortgage Files.

"**Cut-Off Date**": With respect to any Mortgage Loan other than a Qualified Substitute Mortgage Loan, the Close of Business in New York City on August 1, 2005. With respect to any Qualified Substitute Mortgage Loan, the date designated as such on the Mortgage Loan Schedule (as amended).

"**Cut-Off Date Aggregate Principal Balance**": The aggregate of the Cut-Off Date Principal Balances of the Mortgage Loans in each Loan Group.

"**Cut-Off Date Principal Balance**": With respect to any Mortgage Loan, the principal balance thereof remaining to be paid, after application of all scheduled principal payments due on or before the Cut-Off Date whether or not received as of the Cut-Off Date (or as of the applicable date of substitution with respect to a Qualified Substitute Mortgage Loan).

"**Deferred Interest**": With respect to each Mortgage Loan and each related Due Date, will be the excess, if any, of the amount of interest accrued on such Mortgage Loan from the preceding Due Date to such due date over the portion of the Monthly Payment allocated to interest for such Due Date.

"**Deficiency Amount**": Means with respect to the Insured Certificates, (a) for any Distribution Date prior to the Final Distribution Date, the sum of (1) the excess, if any, of the Monthly Interest Distributable Amount on the Insured Certificates for such Distribution Date, net of any Net Interest Shortfalls, Basis Risk Shortfalls and Net Deferred Interest, over the amount of Available Funds to pay such net amount on the Insured Certificates on such Distribution Date and (2) the amount, if any, of any Realized Losses allocable to the Insured Certificates on such Distribution Date and (b) for the Final Distribution Date, the sum of (x) the amount set forth in clause (a)(1) above and (y) the aggregate outstanding Certificate Principal Balance of the Insured Certificates, after giving effect to all payments of principal on the Insured Certificates on such Final Distribution Date, other than pursuant to a claim on the Certificate Insurance Policy on that Distribution Date.

"**Definitive Certificates**": Any Certificate evidenced by a Physical Certificate and any Certificate issued in lieu of a Book-Entry Certificate pursuant to Section 6.02(c) or (d) hereof.

"**Deleted Mortgage Loan**": A Mortgage Loan replaced or to be replaced by one or more Qualified Substitute Mortgage Loans.

"**Delinquent**": Any Mortgage Loan with respect to which the Monthly Payment due on a Due Date is not made.

"**Depositor**": Greenwich Capital Acceptance, Inc., a Delaware corporation, or any successor in interest.

20

"**Depository**": The initial Depository shall be The Depository Trust Company, whose nominee is Cede & Co., or any other organization registered as a "clearing agency" pursuant to Section 17A of the Securities Exchange Act of 1934, as amended. The Depository shall initially be the registered Holder of the Book-Entry Certificates. The Depository shall at all times be a "clearing corporation" as defined in Section 8-102(3) of the Uniform Commercial Code of the State of New York.

"**Depository Participant**": A broker, dealer, bank or other financial institution or other person for whom from time to time a Depository effects book-entry transfers and pledges of securities deposited with the Depository.

"**Determination Date**": For any Distribution Date and each Mortgage Loan, the date each month, as set forth in the Servicing Agreement, on which the Servicer determines the amount of all funds required to be remitted to the Master Servicer on the Servicer Remittance Date with respect to the Mortgage Loans.

"**Directly Operate**": With respect to any REO Property, the furnishing or rendering of services to the tenants thereof, the management or operation of such REO Property, the holding of such REO Property primarily for sale to customers, the performance of any construction work thereon or any use of such REO Property in a trade or business conducted by any REMIC formed hereby other than through an Independent Contractor; provided, however, that the Trustee (or the Servicer on behalf of the Trustee) shall not be considered to Directly Operate an REO Property solely because the Trustee (or the Servicer on behalf of the Trustee) establishes rental terms, chooses tenants, enters into or renews leases, deals with taxes and insurance, or makes decisions as to repairs or capital expenditures with respect to such REO Property.

"**Disqualified Organization**": A "disqualified organization" defined in Section 860E(e)(5) of the Code, or any other Person so designated by the Trustee based upon an Opinion of Counsel provided to the Trustee by nationally recognized counsel acceptable to the Trustee that the holding of an ownership interest in a Residual Certificate by such Person may cause the Trust Fund or any Person having an ownership interest in any Class of Certificates (other than such Person) to incur liability for any federal tax imposed under the Code that would not otherwise be imposed but for the transfer of an ownership interest in a Residual Certificate to such Person.

"**Distribution Account**": The trust account or accounts created and maintained by the Master Servicer, on behalf of the Trustee, pursuant to Section 4.02 hereof in the name of the Trustee and for the benefit of the Securities Administrator, as Paying Agent for the Trustee, and the Certificateholders and designated "Distribution Account, Deutsche Bank National Trust Company, as Trustee, in trust for the registered Certificateholders of HarborView Mortgage Loan Trust 2005-11, Mortgage Loan Pass-Through Certificates, Series 2005-11" and which must be an Eligible Account.

"**Distribution Account Income**": As to any Distribution Date, any interest or other investment income earned on funds deposited in the Distribution Account during the month of such Distribution Date.

"**Distribution Date**":  The 19th day of the month, or, if such day is not a Business Day, the next Business Day commencing in September 2005.

"**Distribution Date Statement**":  As defined in Section 5.04(a) hereof.

"**Due Date**":  With respect to each Mortgage Loan and any Distribution Date, the first day of the calendar month in which that Distribution Date occurs on which the Monthly Payment for such Mortgage Loan was due, exclusive of any days of grace.

"**Due Period**":  With respect to any Distribution Date, the period commencing on the second day of the month preceding the month in which that Distribution Date occurs and ending on the first day of the month in which that Distribution Date occurs.

"**E-Loan**":  E-Loan, Inc., and its successors and assigns, in its capacity as Originator of the E-Loan Mortgage Loans.

"**E-Loan Mortgage Loans**":  The Mortgage Loans for which E-Loan is listed as "Originator" on the Mortgage Loan Schedule.

"**E-Loan Purchase Agreement**":  The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of February 1, 2003, between GCFP, as purchaser, and E-Loan, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the E-Loan Mortgage Loans.

"**Eligible Account**": Any of

(i)     an account or accounts maintained with a federal or state chartered depository institution or trust company the short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the short-term unsecured debt obligations of such holding company) are rated in the highest short term rating category of each Rating Agency at the time any amounts are held on deposit therein;

(ii)     an account or accounts the deposits in which are fully insured by the FDIC (to the limits established by it), the uninsured deposits in which account are otherwise secured such that, as evidenced by an Opinion of Counsel delivered to the Trustee and to each Rating Agency, the Certificateholders will have a claim with respect to the funds in the account or a perfected first priority security interest against the collateral (which shall be limited to Permitted Investments) securing those funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained;

(iii)     a trust account or accounts maintained with the trust department of a federal or state chartered depository institution, national banking association or trust company acting in its fiduciary capacity; or

(iv)    an account otherwise acceptable to each Rating Agency without reduction or withdrawal of its then current ratings of the Certificates as evidenced by a letter from each Rating Agency to the Trustee. Eligible Accounts may bear interest.

"**Endorsement**":  As defined in the Certificate Insurance Policy.

"**ERISA**":  The Employee Retirement Income Security Act of 1974, as amended.

"**ERISA-Restricted Certificates**":  The Class B-4, Class B-5, Class B-6, Class A-R and Class A-R-II Certificates and any Certificate that does not satisfy the applicable rating requirement under the Underwriter's Exemption.

"**ERISA-Qualifying Underwriting**":  A best efforts or firm commitment underwriting or private placement that meets the requirements of an Underwriter's Exemption.

"**Event of Default**":  Any one of the events (howsoever described) set forth in Section 7.01 hereof as an event or events upon the occurrence and continuation of which the Master Servicer may be terminated.

"**Expense Fee**" With respect to any Mortgage Loan, the sum of (i) the Master Servicing Fee, (ii) the Servicing Fee with respect to the Servicer and (iii) with respect to any Lender-Paid Mortgage Insurance Loan, the Lender-Paid Mortgage Insurance Fee.

"**Fannie Mae**":  The Federal National Mortgage Association or any successor thereto.

"**FDIC**":  The Federal Deposit Insurance Corporation or any successor thereto.

"**Final Recovery Determination**":  With respect to any defaulted Mortgage Loan or any REO Property (other than a Mortgage Loan or REO Property purchased by the Seller pursuant to or as contemplated by Sections 2.03 and 10.01), a determination made by the Servicer, and reported to the Master Servicer, that all Insurance Proceeds, Liquidation Proceeds and other payments or recoveries which the Servicer expects to be finally recoverable in respect thereof have been so recovered.

"**Freddie Mac**":  The Federal Home Loan Mortgage Corporation or any successor thereto.

"**Gateway**": Gateway Funding Diversified Mortgage Services, LP, and its successors and assigns, in its capacity as Originator of the Gateway Lending Mortgage Loans.

"**Gateway Mortgage Loans**":  The Mortgage Loans for which Gateway is listed as "Originator" on the Mortgage Loan Schedule.

"**Gateway Purchase Agreement**":  The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of February 1, 2005, between GCFP, as purchaser, and Gateway, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Gateway Mortgage Loans.

23

"**GCFP**": Greenwich Capital Financial Products, Inc., and its successors and assigns.

"**GMAC**": GMAC Mortgage Corporation, as servicer of the Mortgage Loans as set forth and as individually defined in the Mortgage Loan Schedule hereto and its successors and assigns.

"**GMAC Reconstituted Servicing Agreement**": The reconstituted servicing agreement dated as of August 1, 2005 among the Seller and GMAC, and acknowledged by the Trustee and the Master Servicer.

"**GMAC Servicing Agreement**": The Master Interim Servicing Agreement, dated as of March 26, 2003, between GCFP, as owner, and GMAC, as servicer, as reconstituted by the GMAC Reconstituted Servicing Agreement, as the same may be amended from time to time, and any assignments and conveyances related to the Mortgage Loans.

"**Gross Margin**": With respect to each Mortgage Loan, the fixed percentage set forth in the related Mortgage Note that is added to the applicable Index on each Adjustment Date in accordance with the terms of the related Mortgage Note used to determine the Loan Rate for such Mortgage Loan.

"**Group 1 Adjusted Net WAC**": With respect to any Distribution Date, the excess of (i) the Group 1 Net WAC for such Distribution Date over (ii) the quotient of (a) the product of (I) the Net Deferred Interest for Loan Group 1 for such Distribution Date multiplied by (II) 12, divided by (b) the Loan Group Balance for Loan Group 1 at the beginning of the related Due Period.

"**Group 1 Adjusted Cap Rate**": For any Distribution Date and the Class 1-A-1A or Class 1-A-1B Certificates, the Group 1 Net WAC Cap for that Distribution Date; *provided,* that the Net WAC referred to in clause (a)(i) thereof shall be reduced by a per annum rate equal to (i) the quotient of (a) the product of the Net Deferred Interest, if any, on the Group 1 Mortgage Loans for the Distribution Date multiplied by (b) 12, and (ii) the aggregate Stated Principal Balance of the Group 1 Mortgage Loans as of the first day of the month before such Distribution Date (or in the case of the first Distribution Date, as of the Cut-Off Date).

"**Group 1 Class X Apportionment Rule**": For purposes of calculating the interest distributable to the Class X Certificate from Loan Group 1 for any Accrual Period, an amount equal to the product of (a) the Monthly Interest Distributable Amount for the Class X Certificates for such Distribution Date and (b) a fraction, the numerator of which is the aggregate Stated Principal Balance of the Group 1 Mortgage Loans and the denominator of which is the aggregate Stated Principal Balance of all of the Mortgage Loans, in each case, as of the first day of the related Due Period.

"**Group 1 Mortgage Loan**": A Mortgage Loan that is identified as such on the Mortgage Loan Schedule.

"**Group 1 Net WAC**": With respect to any Distribution Date, the weighted average of the Net Loan Rates of the Group 1 Mortgage Loans as of the first day of the related Due Period (or, in the case of the first Distribution Date, as of the Cut-Off Date), weighted on the basis of the related Stated Principal Balances at the beginning of the related Due Period.

24

"**Group 1 Net WAC Cap**":  For any Distribution Date and the Class 1-A-1A and Class 1-A-1B Certificates, the excess, if any, of (a) the product of (i) the Group 1 Net WAC and (ii) a fraction, the numerator of which is 30 and the denominator of which is the actual number of days in the related Accrual Period for such Certificates over (b) only in the case of the Class 1-A-1B Certificates, the Allocable Premium Rate for such Class of Certificates.

"**Group 2 Adjusted Cap Rate**":  For any Distribution Date and the Class 2-A-1A, Class 2-A-1B or Class 2-A-1C Certificates, the Group 2 Net WAC Cap for that Distribution Date; *provided,* that the Net WAC referred to in clause (a)(i) thereof shall be reduced by a per annum rate equal to (i) the quotient of (a) the product of the Net Deferred Interest, if any, on the Group 2 Mortgage Loans for the Distribution Date multiplied by (b) 12, and (ii) the aggregate Stated Principal Balance of the Group 2 Mortgage Loans as of the first day of the month before such Distribution Date (or in the case of the first Distribution Date, as of the Cut-Off Date).

"**Group 2 Adjusted Net WAC**":  With respect to any Distribution Date, the excess of (i) the Group 2 Net WAC for such Distribution Date over (ii) the quotient of (a) the product of (I) the Net Deferred Interest for Loan Group 2 for such Distribution Date multiplied by (II) 12, divided by (b) the Loan Group Balance for Loan Group 2 at the beginning of the related Due Period.

"**Group 2 Class X Apportionment Rule**":  For purposes of calculating the interest distributable to the Class X Certificate from Loan Group 2 for any Accrual Period, an amount equal to the product of (a) the Monthly Interest Distributable Amount for the Class X Certificates for such Distribution Date and (b) a fraction, the numerator of which is the aggregate Stated Principal Balance of the Group 2 Mortgage Loans and the denominator of which is the aggregate Stated Principal Balance of all of the Mortgage Loans, in each case, as of the first day of the related Due Period.

"**Group 2 Mortgage Loan**":  A Mortgage Loan that is identified as such on the Mortgage Loan Schedule.

"**Group 2 Net WAC**":  With respect to any Distribution Date, the weighted average of the Net Loan Rates of the Group 2 Mortgage Loans as of the first day of the related Due Period (or, in the case of the first Distribution Date, as of the Cut-Off Date), weighted on the basis of the related Stated Principal Balances at the beginning of the related Due Period.

"**Group 2 Net WAC Cap**":  For any Distribution Date and the Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates, the excess, if any, of (a) the product of (i) the Group 2 Net WAC and (ii) a fraction, the numerator of which is 30 and the denominator of which is the actual number of days in the related Accrual Period for such Certificates over (b) only in the case of the Class 2-A-1C Certificates, the Allocable Premium Rate for such Class of Certificates.

"**Homefield**":  Homefield Financial Products, Inc., and its successors and assigns, in its capacity as Originator of the Homefield Mortgage Loans.

"**Homefield Mortgage Loans**":  The Mortgage Loans for which Homefield is listed as "Originator" on the Mortgage Loan Schedule.

"**Homefield Purchase Agreement**":  The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of April 1, 2005, between GCFP, as purchaser, and Homefield, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Homefield Mortgage Loans.

"**Home Loan**":  Home Loan Center, Inc., and its successors and assigns, in its capacity as Originator of the Home Loan Mortgage Loans.

"**Home Loan Mortgage Loans**":  The Mortgage Loans for which Home Loan is listed as "Originator" on the Mortgage Loan Schedule.

"**Home Loan Purchase Agreement**":  The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of April 1, 2005, between GCFP, as purchaser, and Home Loan, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Home Loan Mortgage Loans.

"**Indemnification Agreement**":  The Indemnification Agreement dated as of the Closing Date among the Depositor, the Seller, Greenwich Capital Markets, Inc. and the Certificate Insurer, including any amendments and supplements thereto.

"**Indemnified Persons**":  The Trustee, the Master Servicer, the Depositor, the Securities Administrator, the Certificate Insurer and the Custodian and their officers, directors, agents and employees and, with respect to the Trustee, any separate co-trustee and its officers, directors, agents and employees.

"**Independent**":  When used with respect to any specified Person, any such Person who (a) is in fact independent of the Depositor and its Affiliates, (b) does not have any direct financial interest in or any material indirect financial interest in the Depositor or any Affiliate thereof, and (c) is not connected with the Depositor or any Affiliate thereof as an officer, employee, promoter, underwriter, trustee, partner, director or Person performing similar functions; *provided, however,* that a Person shall not fail to be Independent of the Depositor or any Affiliate thereof merely because such Person is the beneficial owner of 1% or less of any class of securities issued by the Depositor or any Affiliate thereof.

"**Independent Contractor**":  Either (i) any Person (other than the Master Servicer) that would be an "independent contractor" with respect to any REMIC formed hereby within the meaning of Section 856(d)(3) of the Code if such REMIC were a real estate investment trust (except that the ownership tests set forth in that section shall be considered to be met by any Person that owns, directly or indirectly, 35% or more of any Class of Certificates), so long as no REMIC formed hereby receives or derives any income from such Person and provided that the relationship between such Person and the applicable REMIC is at arm's length, all within the meaning of Treasury Regulation Section 1.856-4(b)(5), or (ii) any other Person (including the Master Servicer) if the Trustee has received an Opinion of Counsel to the effect that the taking of any action in respect of any REO Property by such Person, subject to any conditions therein specified, that is otherwise herein contemplated to be taken by an Independent Contractor will not cause such REO Property to cease to qualify as "foreclosure property" within the meaning of Section 860G(a)(8) of the Code (determined without regard to the exception applicable for

26

purposes of Section 860D(a) of the Code), or cause any income realized in respect of such REO Property to fail to qualify as Rents from Real Property.

"**Index**":  With respect to each Mortgage Loan and each Adjustment Date, the index specified in the related Mortgage Note.

"**Initial Certificate Principal Balance**":  With respect to any Certificate other than the Class P, Class A-R-II and Class X Certificates, the amount designated "Initial Certificate Principal Balance" on the face thereof.

"**Initial Certificate Notional Balance**":  With respect to the Class X Certificates, the amount designated "Initial Certificate Notional Balance" on the face thereof.

"**Insured Amount**":  As defined in the Certificate Insurance Policy.

"**Insured Certificates**":  Each of the Class 1-A-1B and Class 2-A-1C Certificates.

"**Insurance Proceeds**":  With respect to any Mortgage Loan, proceeds of any title policy, hazard policy or other insurance policy covering a Mortgage Loan, to the extent such proceeds are not to be applied to the restoration of the related Mortgaged Property or released to the related Mortgagor in accordance with the Servicing Agreement.

"**Interest Distributable Amount**":  With respect to any Distribution Date and each Class of Certificates (other than the Class PO Certificates), the sum of (i) the Monthly Interest Distributable Amount for that Class and (ii) the Unpaid Interest Shortfall Amount for that Class.

"**Interest Shortfall**":  With respect to any Distribution Date and each Mortgage Loan that during the related Prepayment Period was the subject of a Principal Prepayment or a reduction of its Monthly Payment under the Relief Act, an amount determined as follows:

(a)    Principal Prepayments in part received during the relevant Prepayment Period: the difference between (i) one month's interest at the applicable Net Loan Rate on the amount of such prepayment and (ii) the amount of interest for the calendar month of such prepayment (adjusted to the applicable Net Loan Rate) actually received with respect to such prepayment at the time of such prepayment; and

(b)    Principal Prepayments in full received during the relevant Prepayment Period: the difference between (i) one month's interest at the applicable Net Loan Rate on the Stated Principal Balance of such Mortgage Loan immediately prior to such prepayment and (ii) the amount of interest for the calendar month of such prepayment (adjusted to the applicable Net Loan Rate) actually received with respect to such prepayment at the time of such prepayment; and

(c)    the amount of any Relief Act Reductions for such Distribution Date.

"**Late Payment Rate**":  The meaning given to such term in the Certificate Insurance Policy.

27

"**Latest Possible Maturity Date**":    As determined as of the Cut-Off Date, the Distribution Date following the third anniversary of the scheduled maturity date of the Mortgage Loan having the latest scheduled maturity date as of the Cut-Off Date.

"**Lender-Paid Mortgage Insurance Loan**":  Each Mortgage Loan identified as such in the Mortgage Loan Schedule.

"**Lender-Paid Mortgage Insurance Fee**":  As to any Distribution Date and each Lender Paid Mortgage Insurance Mortgage Loan, an amount equal to the product of the Lender-Paid Mortgage Insurance Fee Rate and the outstanding Principal Balance of such Mortgage Loan as of the first day of the related Due Period.

"**Lender-Paid Mortgage Insurance Fee Rate**":    For each Lender-Paid Mortgage Insurance Loan and any Distribution Date, the per annum rate required to be paid in connection with the related lender-paid mortgage insurance policy for such Mortgage Loan on such Distribution Date.

"**LIBOR**":  With respect to each Accrual Period, a per annum rate determined on the LIBOR Determination Date in the following manner by the Securities Administrator on the basis of the "Interest Settlement Rate" set by the BBA for one-month United States dollar deposits, as such rates appear on the Telerate Page 3750, as of 11:00 a.m. (London time) on the related LIBOR Determination Date.

(a)    If on such a LIBOR Determination Date, the BBA's Interest Settlement Rate does not appear on the Telerate Page 3750 as of 11:00 a.m. (London time), or if the Telerate Page 3750 is not available on such date, the Securities Administrator will obtain such rate from Reuters' "page LIBOR 01" or Bloomberg's page "BBAM." If such rate is not published for such LIBOR Determination Date, LIBOR for such date will be the most recently published Interest Settlement Rate.  In the event that the BBA no longer sets an Interest Settlement Rate, the rate for such date will be determined on the basis of the rates at which one-month U.S. dollar deposits are offered by the Reference Banks at approximately 11:00 am (London time) on such date to prime banks in the London interbank market.  In such event, the Securities Administrator will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that date will be the arithmetic mean of the quotations (rounded upwards if necessary to the nearest whole multiple of 1/16%). If fewer than two quotations are provided as requested, the rate for that date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by the Securities Administrator (after consultation with the Depositor), at approximately 11:00 a.m. (New York City time) on such date for one-month U.S. dollar loan to leading European banks.

(b)    The establishment of LIBOR by the Securities Administrator and the Securities Administrator's subsequent calculation of the Pass-Through Rate applicable to the LIBOR Certificates for the relevant Accrual Period, in the absence of manifest error, will be final and binding.

"**LIBOR Business Day**":  Any day on which banks in London, England and The City of New York are open and conducting transactions in foreign currency and exchange.

"**LIBOR Certificates**": The Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B, Class 2-A-1C, Class B-1, Class B-2, Class B-3, Class B-4, Class B-5 and Class B-6 Certificates.

"**LIBOR Determination Date**": The second LIBOR Business Day immediately preceding the commencement of each Accrual Period for the LIBOR Certificates.

"**Liquidated Mortgage Loan**": As to any Distribution Date, any Mortgage Loan in respect of which the Servicer has determined, in accordance with the servicing procedures specified herein, as of the end of the related Prepayment Period, that all Liquidation Proceeds that it expects to recover with respect to the liquidation of such Mortgage Loan or disposition of the related REO Property have been recovered.

"**Liquidation Event**": With respect to any Mortgage Loan, any of the following events: (i) such Mortgage Loan is paid in full; (ii) a Final Recovery Determination is made as to such Mortgage Loan; or (iii) such Mortgage Loan is removed from the Trust Fund by reason of its being purchased, sold or replaced pursuant to or as contemplated hereunder. With respect to any REO Property, either of the following events: (i) a Final Recovery Determination is made as to such REO Property; or (ii) such REO Property is removed from the Trust Fund by reason of its being sold or purchased pursuant to Section 10.01 hereof or the applicable provisions of the Servicing Agreement.

"**Liquidation Expenses**": With respect to a Mortgage Loan in liquidation, unreimbursed expenses paid or incurred by or for the account of the Master Servicer or the Servicer such expenses including (a) property protection expenses, (b) property sales expenses, (c) foreclosure and sale costs, including court costs and reasonable attorneys' fees, and (d) similar expenses reasonably paid or incurred in connection with liquidation.

"**Liquidation Proceeds**": With respect to any Mortgage Loan, the amount (other than amounts received in respect of the rental of any REO Property prior to REO Disposition) received by the Servicer as proceeds from the liquidation of such Mortgage Loan, as determined in accordance with the applicable provisions of the Servicing Agreement, other than Recoveries; *provided* that with respect to any Mortgage Loan or REO Property repurchased, substituted or sold pursuant to or as contemplated hereunder, or pursuant to the applicable provisions of the Servicing Agreement, "Liquidation Proceeds" shall also include amounts realized in connection with such repurchase, substitution or sale.

"**Loan Group**": Either of Loan Group 1 or Loan Group 2, as the context requires.

"**Loan Group Balance**": As to each Loan Group, the aggregate of the Stated Principal Balances of the Mortgage Loans in such Loan Group that were Outstanding Mortgage Loans at the time of determination.

"**Loan Group 1**": At any time, the Group 1 Mortgage Loans in the aggregate and any REO Properties acquired in respect thereof.

"**Loan Group 2**": At any time, the Group 2 Mortgage Loans in the aggregate and any REO Properties acquired in respect thereof.

29

"**Loan Center**": Loan Center of California, Inc., and its successors and assigns, in its capacity as Originator of the Loan Center Mortgage Loans.

"**Loan Center Mortgage Loans**": The Mortgage Loans for which Loan Center is listed as "Originator" on the Mortgage Loan Schedule.

"**Loan Center Purchase Agreement**": The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of April 1, 2005, between GCFP, as purchaser, and Loan Center, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Loan Center Mortgage Loans.

"**Loan Link**": Loan Link Financial Services, and its successors and assigns, in its capacity as Originator of the Loan Link Mortgage Loans.

"**Loan Link Mortgage Loans**": The Mortgage Loans for which Loan Link is listed as "Originator" on the Mortgage Loan Schedule.

"**Loan Link Purchase Agreement**": The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of February 1, 2005, between GCFP, as purchaser, and Loan Link, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Loan Link Mortgage Loans.

"**Loan Rate**": With respect to each Mortgage Loan, the annual rate at which interest accrues on such Mortgage Loan from time to time in accordance with the provisions of the related Mortgage Note.

"**Loan-to-Value Ratio**": With respect to each Mortgage Loan and any date of determination, a fraction, expressed as a percentage, the numerator of which is the Principal Balance of the Mortgage Loan at such date of determination and the denominator of which is the Value of the related Mortgaged Property.

"**Lost Note Affidavit**": With respect to any Mortgage Loan as to which the original Mortgage Note has been permanently lost or destroyed and has not been replaced, an affidavit from the Seller certifying that the original Mortgage Note has been lost, misplaced or destroyed (together with a copy of the related Mortgage Note and indemnifying the Trust against any loss, cost or liability resulting from the failure to deliver the original Mortgage Note) in the form of Exhibit H hereto.

"**Lower-Tier Interest**": Any one of the interests in the Lower-Tier REMIC, as described in the Preliminary Statement.

"**Lower-Tier REMIC**": As described in the Preliminary Statement.

"**Majority Certificateholders**": The Holders of Certificates evidencing at least 51% of the Voting Rights.

"**Margin**": On each Distribution Date on or prior to the Call Option Date, (i) with respect to the Class 1-A-1A Certificates, 0.320% per annum, and on each Distribution Date after

30

the Call Option Date, 0.640% per annum, (ii) with respect to the Class 1-A-1B Certificates, 0.330% per annum, and on each Distribution Date after the Call Option Date, 0.660% per annum, (iii) with respect to the Class 2-A-1A Certificates, 0.310% per annum, and on each Distribution Date after the Call Option Date, 0.620% per annum, (iv) with respect to the Class 2-A-1B Certificates, 0.380% per annum, and on each Distribution Date after the Call Option Date, 0.760% per annum, (v) with respect to the Class 2-A-1C Certificates, 0.320% per annum, and on each Distribution Date after the Call Option Date, 0.640% per annum, (vi) with respect to the Class B-1 Certificates, 0.630% per annum, and on each Distribution Date after the Call Option Date, 0.945% per annum, (vii) with respect to the Class B-2 Certificates, 0.950% per annum, and on each Distribution Date after the Call Option Date, 1.425% per annum, (viii) with respect to the Class B-3 Certificates, 1.650% per annum, and on each Distribution Date after the Call Option Date, 2.475% per annum, and (ix) with respect to the Class B-4, Class B-5 and Class B-6 Certificates, 1.750% per annum, and on each Distribution Date after the Call Option Date, 2.625% per annum.

"**Master Servicer**":    Wells Fargo Bank, N.A., or any successor Master Servicer appointed as herein provided.

"**Master Servicing Fee**":  As to any Distribution Date and each related Mortgage Loan, an amount equal to the product of the applicable Master Servicing Fee Rate and the outstanding Principal Balance of such Mortgage Loan as of the first day of the related Due Period. The Master Servicing Fee for any Mortgage Loan shall be payable in respect of any Distribution Date solely from the interest portion of the Monthly Payment or other payment or recovery with respect to such Mortgage Loan.

"**Master Servicing Fee Rate**":  0.0100% per annum.

"**Maximum Loan Rate**":  With respect to each Mortgage Loan, the percentage set forth in the related Mortgage Note as the maximum Loan Rate thereunder.

"**MERS**":  Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

"**MERS Mortgage Loan**":  Any Mortgage Loan registered with MERS on the MERS System.

"**MERS® System**":    The system of recording transfers of mortgages electronically maintained by MERS.

"**Metrocities**": Metrocities Mortgage LLC, and its successors and assigns, in its capacity as Originator of the Metrocities Mortgage Loans.

"**Metrocities Mortgage Loans**":  The Mortgage Loans for which Metrocities is listed as "Originator" on the Mortgage Loan Schedule.

"**Metrocities Purchase Agreement**":  The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of February 1, 2004, between GCFP, as purchaser, and

31

Metrocities, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Metrocities Mortgage Loans.

"**Middle-Tier Interest**":  Any one of the interests in the Middle-Tier REMIC, as described in the Preliminary Statement.

"**Middle-Tier REMIC**":  As described in the Preliminary Statement.

"**MIN**":  The Mortgage Identification Number for any MERS Mortgage Loan.

"**MOM Loan**":  Any Mortgage Loan as to which MERS is acting as mortgagee, solely as nominee for the originator of such Mortgage Loan and its successors and assigns.

"**Monthly Interest Distributable Amount**":  With respect to each Class of Certificates (other than the Class P, Class A-R-II and Class PO Certificates) and any Distribution Date, the amount of interest accrued during the related Accrual Period at the lesser of the related Adjusted Cap Rate and the related Pass-Through Rate on the Class Certificate Principal Balance or Class Certificate Notional Balance, as applicable, immediately prior to that Distribution Date; *provided, however*, that for purposes of compliance with the REMIC Provisions, (A) the Monthly Interest Distributable Amount for each Class of Subordinate Certificates shall be calculated by reducing the related Pass-Through Rate by a per annum rate equal to (i) 12 times the Subordinate Class Expense Share for such Class *divided by* (ii) the Class Certificate Principal Balance of such Class as of the beginning of the related Accrual Period and (B) such Class shall be deemed to bear interest at such Pass-Through Rate as so reduced for federal income tax purposes; *provided, further*, such Monthly Interest Distributable Amount shall be reduced if the Pass-Through Rate applicable to such Class for the related Accrual Period exceeds the Adjusted Cap Rate applicable to such Class for such Distribution Date, subject to the allocation priority set forth in Section 5.02 herein.

"**Monthly Payment**":  With respect to any Mortgage Loan, the scheduled monthly payment of principal and interest on such Mortgage Loan that is payable by the related Mortgagor from time to time under the related Mortgage Note, determined, for the purposes of this Agreement: (a) after giving effect to any reduction in the amount of interest collectible from the related Mortgagor pursuant to the Relief Act; (b) without giving effect to any extension granted or agreed to by the Servicer pursuant to the applicable provisions of the Servicing Agreement; and (c) on the assumption that all other amounts, if any, due under such Mortgage Loan are paid when due.

"**Moody's**":  Moody's Investors Service, Inc. and its successors.

"**Mortgage**":  The mortgage, deed of trust or other instrument creating a first lien on, or first priority security interest in, a Mortgaged Property securing a Mortgage Note.

"**Mortgage File**":  The mortgage documents listed in Section 2.01 hereof pertaining to a particular Mortgage Loan and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

32

"**Mortgage Loan**": Each mortgage loan (including Cooperative Loans) transferred and assigned to the Trustee pursuant to Section 2.01 or Section 2.03(d) hereof as from time to time held as a part of the Trust Fund, the Mortgage Loans so held being identified in the Mortgage Loan Schedule.

"**Mortgage Loan Purchase Agreement**": The Mortgage Loan Purchase Agreement between the Seller and the Depositor, dated as of August 1, 2005, regarding the transfer of the Mortgage Loans by the Seller to or at the direction of the Depositor.

"**Mortgage Loan Schedule**": As of any date, the list of Mortgage Loans included in the Trust Fund on such date, attached hereto as Schedule I. The Mortgage Loan Schedule shall be prepared by the Seller and shall set forth the following information with respect to each Mortgage Loan:

(i)     the Mortgage Loan identifying number;

(ii)    the Mortgagor's name;

(iii)   the street address of the Mortgaged Property including the state and five-digit ZIP code;

(iv)    a code indicating whether the Mortgaged Property was represented by the borrower, at the time of origination, as being owner-occupied;

(v)     a code indicating whether the Residential Dwelling constituting the Mortgaged Property is (a) a detached single family dwelling, (b) a dwelling in a planned unit development, (c) a condominium unit, (d) a two- to four-unit residential property, (e) a townhouse or (f) other type of Residential Dwelling;

(vi)    if the related Mortgage Note permits the borrower to make Monthly Payments of interest only for a specified period of time, (a) the original number of such specified Monthly Payments and (b) the remaining number of such Monthly Payments as of the Cut-Off Date;

(vii)   the original months to maturity;

(viii)  the stated remaining months to maturity from the Cut-Off Date based on the original amortization schedule;

(ix)    the Loan-to-Value Ratio at origination;

(x)     the Loan Rate in effect immediately following the Cut-Off Date;

(xi)    the date on which the first Monthly Payment is or was due on the Mortgage Loan;

(xii)   the stated maturity date;

33

    (xiii)    the Servicing Fee Rate, if any;

    (xiv)    the last Due Date on which a Monthly Payment was actually applied to the unpaid Stated Principal Balance;

    (xv)    the original principal balance of the Mortgage Loan;

    (xvi)    the Stated Principal Balance of the Mortgage Loan on the Cut-Off Date and a code indicating the purpose of the Mortgage Loan (i.e., purchase financing, rate/term refinancing, cash-out refinancing);

    (xvii)    the Index and Gross Margin specified in related Mortgage Note;

    (xviii)    the next Adjustment Date, if applicable;

    (xix)    the Maximum Loan Rate, if applicable;

    (xx)    the Value of the Mortgaged Property;

    (xxi)    the sale price of the Mortgaged Property, if applicable;

    (xxii)    the product code;

    (xxiii)    whether the Mortgage Loan is a Lender-Paid Mortgage Insurance Loan;

    (xxiv)    the Servicer that is servicing each Mortgage Loan and the Originator of each Mortgage Loan;

    (xxv)    the respective Loan Group;

    (xxvi)    [reserved]; and

    (xxvii)    whether the Mortgage Loan is a Class P Mortgage Loan.

Information set forth in clauses (ii) and (iii) above regarding each Mortgagor and the related Mortgaged Property shall be confidential and the Trustee shall not disclose such information; provided that, notwithstanding anything herein to the contrary, the foregoing shall not be construed to prohibit (i) disclosure of any and all information that is or becomes publicly known, or information obtained by Trustee from sources other than the other parties hereto, (ii) disclosure of any and all information (A) if required to do so by any applicable, law, rule or regulation, (B) to any government agency or regulatory body having or claiming authority to regulate or oversee any respects of Trustee's business or that of its affiliates, (C) pursuant to any subpoena, civil investigative demand or similar demand or request of any court, regulatory authority, arbitrator or arbitration to which Trustee or any affiliate or an officer, director, employer or shareholder thereof is a party or (D) to any affiliate, independent or internal auditor, agent, employee or attorney of Trustee having a need to know the same, provided that Trustee

advises such recipient of the confidential nature of the information being disclosed, or (iii) any other disclosure authorized by the Depositor.

The Mortgage Loan Schedule, as in effect from time to time, shall also set forth the following information with respect to the Mortgage Loans in the aggregate and by Loan Group as of the Cut-Off Date: (1) the number of Mortgage Loans; (2) the current Principal Balance of the Mortgage Loans; (3) the weighted average Loan Rate of the Mortgage Loans; and (4) the weighted average remaining months to maturity of the Mortgage Loans. The Mortgage Loan Schedule shall be amended from time to time by the Seller in accordance with the provisions of this Agreement.

"**Mortgage Note**":  The original executed note or other evidence of indebtedness evidencing the indebtedness of a Mortgagor under a Mortgage Loan.

"**Mortgaged Property**":  Either of (x) the fee simple or leasehold interest in real property, together with improvements thereto including any exterior improvements to be completed within 120 days of disbursement of the related Mortgage Loan proceeds, or (y) in the case of a Cooperative Loan, the related Cooperative Shares and Proprietary Lease, securing the indebtedness of the Mortgagor under the related Mortgage Loan.

"**Mortgagor**":  The obligor on a Mortgage Note.

"**MT1-Y Target Balance**":  For any Distribution Date, the excess, if any, of (i) the quotient of (a) the product of (I) the principal balance of the MT1-Z Interest immediately preceding such Distribution Date multiplied by (II) the Group 1 Net WAC for such Distribution Date multiplied by (III) two, divided by (b) the Group 1 Adjusted Net WAC for such Distribution Date, over (ii) the principal balance of the MT1-Z Interest immediately preceding such Distribution Date.

"**MT1-Z Target Balance**":  For any Distribution Date, the excess, if any, of (i) the quotient of (a) the principal balance of the MT1-Y Interest immediately preceding such Distribution Date divided by (b) the difference between (I) 100% minus (II) the quotient of (A) the Group 1 Adjusted Net WAC for such Distribution Date divided by (B) the product of (1) two multiplied by (2) the Group 1 Net WAC for such Distribution Date, over (ii) the principal balance of the MT1-Y Interest immediately preceding such Distribution Date.

"**MT2-Y Target Balance**":  For any Distribution Date, the excess, if any, of (i) the quotient of (a) the product of (I) the principal balance of the MT2-Z Interest immediately preceding such Distribution Date multiplied by (II) the Group 2 Net WAC for such Distribution Date multiplied by (III) two, divided by (b) the Group 2 Adjusted Net WAC for such Distribution Date, over (ii) the principal balance of the MT2-Z Interest immediately preceding such Distribution Date.

"**MT2-Z Target Balance**":  For any Distribution Date, the excess, if any, of (i) the quotient of (a) the principal balance of the MT2-Y Interest immediately preceding such Distribution Date divided by (b) the difference between (I) 100% minus (II) the quotient of (A) the Group 2 Adjusted Net WAC for such Distribution Date divided by (B) the product of (1) two

multiplied by (2) the Group 2 Net WAC for such Distribution Date, over (ii) the principal balance of the MT2-Y Interest immediately preceding such Distribution Date.

"**MTB-Y Target Balance**": For any Distribution Date, the excess, if any, of (i) the quotient of (a) the product of (I) the principal balance of the MTB-Z Interest immediately preceding such Distribution Date multiplied by (II) the Subordinate Net WAC for such Distribution Date multiplied by (III) two, divided by (b) the Subordinate Adjusted Net WAC for such Distribution Date, over (ii) the principal balance of the MTB-Z Interest immediately preceding such Distribution Date.

"**MTB-Z Target Balance**": For any Distribution Date, the excess, if any, of (i) the quotient of (a) the principal balance of the MTB-Y Interest immediately preceding such Distribution Date divided by (b) the difference between (I) 100% minus (II) the quotient of (A) the Subordinate Adjusted Net WAC for such Distribution Date divided by (B) the product of (1) two multiplied by (2) the Subordinate Net WAC for such Distribution Date, over (ii) the principal balance of the MTB-Y Interest immediately preceding such Distribution Date.

"**Net Deferred Interest**": With respect to each Loan Group and any Distribution Date, the greater of (i) the excess, if any, of the Deferred Interest for the related Due Date over the aggregate amount of any principal prepayments in part or in full received during the related Prepayment Period and (ii) zero.

"**Net Interest Shortfall**": With respect to any Distribution Date, the excess of Interest Shortfalls, if any, for such Distribution Date over the sum of (i) Interest Shortfalls paid by the Servicer under the Servicing Agreement and (ii) Compensating Interest Payments made with respect to such Distribution Date.

"**Net Liquidation Proceeds**": With respect to any Liquidated Mortgage Loan or any other disposition of related Mortgaged Property (including REO Property) the related Liquidation Proceeds net of Advances, related Servicing Advances, the Master Servicing Fee, the related Servicing Fees and any other accrued and unpaid fees received and retained in connection with the liquidation of such Mortgage Loan or Mortgaged Property.

"**Net Loan Rate**": With respect to any Mortgage Loan (or the related REO Property), as of any date of determination, a per annum rate of interest equal to the then applicable Loan Rate for such Mortgage Loan minus the related Servicing Fee Rate, the Master Servicing Fee Rate and, if applicable, the Lender Paid Mortgage Insurance Rate.

"**Net Maximum Loan Rate**": With respect to any Mortgage Loan (or the related REO Property), as of any date of determination, a per annum rate of interest equal to the then applicable Maximum Loan Rate for such Mortgage Loan minus the related Servicing Fee Rate.

"**Net Maximum Rate Cap**": For any Distribution Date and the Subordinate Certificates, the Subordinate Net WAC Cap, computed for this purpose only by assuming that each Mortgage Loan accrued interest at its Net Maximum Loan Rate.

"**Net Realized Losses**": For any Class of Certificates and any Distribution Date, the excess of (i) the amount of Realized Losses previously allocated to that Class over (ii) the

36

amount of any increases to the Class Certificate Principal Balance of that Class pursuant to Section 5.08 due to Recoveries.

"**Net WAC**": With respect to any Distribution Date and each Loan Group, the weighted average of the Net Loan Rates of the Mortgage Loans related to such Loan Group as of the first day of the related Due Period (or, in the case of the first Distribution Date, as of the Cut-Off Date), weighted on the basis of the related Stated Principal Balances at the beginning of the related Due Period.

"**Nonrecoverable**": A determination by the Master Servicer or the Servicer in respect of a delinquent Mortgage Loan that if it were to make an Advance or an advance of a delinquent Monthly Payment, respectively, in respect thereof, such amount would not be recoverable from any collections or other recoveries (including Liquidation Proceeds) on such Mortgage Loan.

"**Notice**": As defined in the Certificate Insurance Policy.

"**Officers' Certificate**": A certificate signed by the Chairman of the Board, the Vice Chairman of the Board, the President or a vice president (however denominated), or by the Treasurer, the Secretary, or one of the assistant treasurers or assistant secretaries of the Seller, the Master Servicer or the Depositor, as applicable.

"**One-Month MTA**": The twelve-month average yields on United States Treasury securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in Statistical Release H.15(519).

"**One-Month MTA Indexed**": Indicates a Mortgage Loan that has an adjustable Loan Rate calculated on the basis of the MTA index.

"**Opinion of Counsel**": A written opinion of counsel, who may, without limitation, be a salaried counsel for the Depositor, the Seller, the Master Servicer or the Securities Administrator, acceptable to the Trustee, except that any opinion of counsel relating to (a) the qualification of any REMIC created hereunder as a REMIC or (b) compliance with the REMIC Provisions must be an opinion of Independent counsel.

"**Original Applicable Credit Support Percentage**": With respect to each Class of Subordinate Certificates, the corresponding percentage set forth below opposite its Class designation:

| Class B-1 | 10.70% |
|-----------|--------|
| Class B-2 | 7.30% |
| Class B-3 | 5.00% |
| Class B-4 | 3.15% |
| Class B-5 | 1.50% |
| Class B-6 | 0.60% |

"**Original Certificate Notional Balance**": With respect to the Class X Certificates, $686,736,452.17.

37

"**Original Class Certificate Notional Balance**":  With respect to the Class X Certificates, the corresponding aggregate notional amount set forth opposite the Class designation of such Class in the Preliminary Statement.

"**Original Class Certificate Principal Balance**":  With respect to each Class of Certificates, other than the Class X, Class P and Class A-R-II Certificates, the corresponding aggregate amount set forth opposite the Class designation of such Class in the Preliminary Statement.

"**Original Subordinated Principal Balance**":  The aggregate of the Original Class Certificate Principal Balances of the Classes of Subordinate Certificates.

"**Originator**":  Each of Alliance, Commercial Capital, ComUnity Lending, E-Loan, Gateway, Home Loan, Homefield, Loan Center, Loan Link, Metrocities, Paul Financial, Plaza, PMC, Secured Bankers and Sierra Pacific, as applicable.

"**OTS**":  The Office of Thrift Supervision.

"**Outstanding Mortgage Loan**":  As of any Due Date, a Mortgage Loan with a Stated Principal Balance greater than zero, that was not the subject of a prepayment in full prior to such Due Date and that did not become a Liquidated Mortgage Loan prior to such Due Date.

"**Ownership Interest**":  As to any Certificate, any ownership or security interest in such Certificate, including any interest in such Certificate as the Holder thereof and any other interest therein, whether direct or indirect, legal or beneficial, as owner or as pledgee.

"**Pass-Through Rate**":  With respect to each Class of Certificates (other than the Class PO, 2-PO and Class A-R-II Certificates) and any Distribution Date, the rate set forth below:

> (i)    The Pass-Through Rate for the Class 1-A-1A Certificates shall be equal to the least of (a) LIBOR plus the applicable Margin, (b) the Group 1 Net WAC Cap for that Distribution Date and (c) 11.00% per annum;

> (ii)    The Pass-Through Rate for the Class 1-A-1B Certificates shall be equal to the least of (a) LIBOR plus the applicable Margin, (b) the Group 1 Net WAC Cap for that Distribution Date and (c) 11.00% per annum;

> (iii)    The Pass-Through Rate for the Class A-R Certificates shall be equal to the Net WAC of the Group 1 Mortgage Loans for that Distribution Date;

> (iv)    The Pass-Through Rate for the Class 2-A-1A Certificates shall be equal to the least of (a) LIBOR plus the applicable Margin, (b) the Group 2 Net WAC Cap for that Distribution Date and (c) 11.00% per annum;

> (v)    The Pass-Through Rate for the Class 2-A-1B Certificates shall be equal to the least of (a) LIBOR plus the applicable Margin, (b) the Group 2 Net WAC Cap for that Distribution Date and (c) 11.00% per annum;

38

(vi)    The Pass-Through Rate for the Class 2-A-1C Certificates shall be equal to the least of (a) LIBOR plus the applicable Margin, (b) the Group 2 Net WAC Cap for that Distribution Date and (c) 11.00% per annum;

(vii)    The Pass-Through Rate for the Class X Certificates shall be equal to the excess, if any, of (i) the Net WAC of the Mortgage Loans over (ii) the product of (A) the sum of (i) the amount of interest accrued for the related Accrual Period on the Certificates (other than the Class X Certificates) at the applicable Pass-Through Rate plus (ii) the Aggregate Premium Amount due to the Certificate Insurer for that Distribution Date and (B) 12, divided by the aggregate Principal Balance of the Mortgage Loans on such Distribution Date; and

(viii)    The Pass-Through Rate for the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5 and Class B-6 Certificates shall be equal to the least of (a) LIBOR plus the applicable Margin, (b) the Subordinate Net WAC Cap for that Distribution Date and (c) the Net Maximum Rate Cap for that Distribution Date.

**"Paul Financial"**: Paul Financial, LLC, and its successors and assigns, in its capacity as Originator of the Paul Financial Mortgage Loans.

**"Paul Financial Mortgage Loans"**:  The Mortgage Loans for which Paul Financial is listed as "Originator" on the Mortgage Loan Schedule.

**"Paul Financial Purchase Agreement"**:  The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of January 1, 2004, between GCFP, as purchaser, and Paul Financial, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Paul Financial Mortgage Loans.

**"Paying Agent"**:  Any paying agent appointed pursuant to Section 6.05 hereof.  The initial Paying Agent shall be Wells Fargo Bank, N.A., for so long as it is acting as Securities Administrator under this Agreement.

**"Percentage Interest"**:  With respect to any Certificate other than a Class P, Class A-R or Class A-R-II Certificate, a fraction, expressed as a percentage, the numerator of which is the Initial Certificate Principal Balance or Initial Certificate Notional Balance, as applicable, represented by such Certificate and the denominator of which is the Original Class Certificate Principal Balance or Original Class Certificate Notional Balance, as applicable, of the related Class.  With respect to the Class P, Class A-R and Class A-R-II Certificates, 100%.

**"Permitted Investments"**:  Any one or more of the following obligations or securities acquired at a purchase price of not greater than par, regardless of whether issued or managed by the Depositor, the Trustee, the Master Servicer or any of their respective Affiliates or for which an Affiliate of the Trustee serves as an advisor:

(i)    direct obligations of, or obligations fully guaranteed as to timely payment of principal and interest by, the United States or any agency or instrumentality thereof, provided such obligations are backed by the full faith and credit of the United States;

(ii)    (A) demand and time deposits in, certificates of deposit of, bankers' acceptances issued by or federal funds sold by any depository institution or trust company (including the Trustee, the Master Servicer or their agents acting in their respective commercial capacities) incorporated under the laws of the United States of America or any state thereof and subject to supervision and examination by federal and/or state authorities, so long as, at the time of such investment or contractual commitment providing for such investment, such depository institution or trust company or its ultimate parent has a short-term uninsured debt rating in one of the two highest available rating categories of each Rating Agency and (B) any other demand or time deposit or deposit which is fully insured by the FDIC;

(iii)    repurchase obligations with respect to any security described in clause (i) above and entered into with a depository institution or trust company (acting as principal) rated A or higher by each Rating Agency;

(iv)    securities bearing interest or sold at a discount that are issued by any corporation incorporated under the laws of the United States of America, the District of Columbia or any State thereof and that are rated by each Rating Agency in its highest long-term unsecured rating categories at the time of such investment or contractual commitment providing for such investment;

(v)    commercial paper (including both non-interest-bearing discount obligations and interest-bearing obligations) that is rated by each Rating Agency in its highest short-term unsecured debt rating available at the time of such investment;

(vi)    units of money market funds (which may be 12b-1 funds, as contemplated by the Commission under the Investment Company Act of 1940) registered under the Investment Company Act of 1940 including funds managed or advised by the Trustee, the Master Servicer or an affiliate thereof having the highest applicable rating from each Rating Agency; and

(vii)    if previously confirmed in writing to the Trustee, any other demand, money market or time deposit, or any other obligation, security or investment, as may be acceptable to each Rating Agency in writing as a permitted investment of funds backing securities having ratings equivalent to its highest initial ratings of the Senior Certificates;

*provided, however,* that no instrument described hereunder shall evidence either the right to receive (a) only interest with respect to the obligations underlying such instrument or (b) both principal and interest payments derived from obligations underlying such instrument and the interest and principal payments with respect to such instrument provide a yield to maturity at par greater than 120% of the yield to maturity at par of the underlying obligations.

"**Permitted Transferee**":  Any Transferee of a Residual Certificate other than a Disqualified Organization or a non-U.S. Person.

"**Person**":  Any individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

40

"**Physical Certificates**":  The Class A-R, Class A-R-II and Class P Certificates.

"**Plaza**": Plaza Home Mortgage, Inc., and its successors and assigns, in its capacity as Originator of the Plaza Mortgage Loans.

"**Plaza Mortgage Loans**":  The Mortgage Loans for which Plaza is listed as "Originator" on the Mortgage Loan Schedule.

"**Plaza Purchase Agreement**":  The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of November 1, 2004, between GCFP, as purchaser, and Plaza, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Plaza Mortgage Loans.

"**PMC**": PMC Bancorp, and its successors and assigns, in its capacity as Originator of the PMC Mortgage Loans.

"**PMC Mortgage Loans**":  The Mortgage Loans for which PMC is listed as "Originator" on the Mortgage Loan Schedule.

"**PMC Mortgage Purchase Agreement**":  The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of April 1, 2005, between GCFP, as purchaser, and PMC Mortgage, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the PMC Mortgage Loans.

"**PO Components**":  The PO-1 Component and the PO-2 Component as applicable.

"**PO-1 Component**":  The Principal-Only Component of the Class PO Certificates that relates to the Group 1 Mortgage Loans.

"**PO-1 Component Principal Balance**":  As of the Closing Date, $50; thereafter, as increased by amounts of Net Deferred Interest allocated to the Class X Certificates in respect of the Group 1 Mortgage Loan as set forth in Section 5.02 herein.

"**PO-2 Component**":  The Principal-Only Component of the Class PO Certificates that relates to the Group 2 Mortgage Loans.

"**PO-2 Component Principal Balance**":  As of the Closing Date, $50; thereafter, as increased by amounts of Net Deferred Interest allocated to the Class X Certificates in respect of the Group 2 Mortgage Loan as set forth in Section 5.02 herein.

"**Policy Account**":  The trust account or accounts created and maintained by the Securities Administrator, on behalf of the Trustee, pursuant to Section 4.05 hereof in the name of the Trustee for the benefit of the Class 1-A-1B and Class 2-A-1C Certificateholders and designated "Class 1-A-1B and Class 2-A-1C Policy Account, Deutsche Bank National Trust Company, as Trustee, in trust for the registered Certificateholders of HarborView Mortgage Loan Trust 2005-11, Mortgage Loan Pass-Through Certificates, Series 2005-11, Class 1-A-1B and Class 2-A-1C Certificates."

"**Pool Balance**":  As to any Distribution Date, the aggregate of the Stated Principal Balances, as of the Close of Business on the first day of the month preceding the month in which such Distribution Date occurs, of the Mortgage Loans that were Outstanding Mortgage Loans on that day.

"**Premium Letter**":  The letter dated the Closing Date from the Certificate Insurer to the Seller, the Depositor and the Securities Administrator (a copy of which has been furnished to the Trustee) setting forth the payment arrangements for the Aggregate Premium Amount on the Certificate Insurance Policy and certain related expense payment arrangements.

"**Premium Proceeds**":  The amount by which the Termination Price paid in connection with the termination pursuant to Section 10.01 exceeds the sum of unpaid principal and accrued and unpaid interest on the Certificates and unreimbursed Advances and Servicing Advances.

"**Premium Rate**":  As specified in the Premium Letter.

"**Prepayment Penalty Amount**":  With respect to any Mortgage Loan and each Distribution Date, all premiums or charges, if any, paid by Mortgagors under the related Mortgage Notes as a result of full or partial Principal Prepayments collected and retained by the Servicer during the immediately preceding Prepayment Period, under the terms of the Servicing Agreement.

"**Prepayment Period**":  With respect to any Distribution Date the calendar month preceding the month in which such Distribution Date occurs.

"**Primary Insurance Policy**":  Mortgage guaranty insurance, if any, on an individual Mortgage Loan, as evidenced by a policy or certificate.

"**Principal Balance**":  As to any Mortgage Loan, other than a Liquidated Mortgage Loan, and any day, the related Cut-Off Date Principal Balance, *minus* all collections credited against the Principal Balance of such Mortgage Loan after the Cut-Off Date, as increased by the amount of any Deferred Interest added to the outstanding Principal Balance of such Mortgage Loan pursuant to the terms of the related Mortgage Note.  For purposes of this definition, a Liquidated Mortgage Loan shall be deemed to have a Principal Balance equal to the Principal Balance of the related Mortgage Loan as of the final recovery of related Liquidation Proceeds and a Principal Balance of zero thereafter.  As to any REO Property and any day, the Principal Balance of the related Mortgage Loan immediately prior to such Mortgage Loan becoming REO Property.

"**Principal Deficiency Amount**":  For any Distribution Date and for any Undercollateralized Group, the excess, if any, of the aggregate Class Certificate Principal Balance and Component Principal Balance of such Undercollateralized Group immediately prior to such Distribution Date over the sum of the Principal Balances of the Mortgage Loans in the related Loan Group immediately prior to such Distribution Date.

"**Principal Distribution Amount**":  With respect to each Loan Group and any Distribution Date, the sum of (a) each scheduled payment of principal collected or advanced on the related Mortgage Loans by the Servicer in respect of the related Due Period, (b) that portion

42

of the Purchase Price, representing principal of any repurchased Mortgage Loan in that Loan Group, deposited to the Distribution Account during the related Prepayment Period, (c) the principal portion of any related Substitution Adjustments with respect to that Loan Group deposited in the Distribution Account during the related Prepayment Period, (d) the principal portion of all Insurance Proceeds received during the related Prepayment Period with respect to Mortgage Loans in that Loan Group that are not yet Liquidated Mortgage Loans, (e) the principal portion of all Net Liquidation Proceeds received during the related Prepayment Period with respect to Liquidated Mortgage Loans in that Loan Group, (f) all Principal Prepayments in part or in full on Mortgage Loans in that Loan Group applied by the Servicer during the related Prepayment Period, (g) all Recoveries related to that Loan Group received during the calendar month preceding the month of that Distribution Date and (h) on the Distribution Date on which the Trust is to be terminated pursuant to Section 10.01 hereof, that portion of the Termination Price in respect of principal for that Loan Group.

"**Principal-Only Component**": Either of the PO-1 Component and PO-2 Component, as applicable.

"**Principal Prepayment**": Any payment of principal made by the Mortgagor on a Mortgage Loan that is received in advance of its scheduled Due Date and that is not accompanied by an amount of interest representing the full amount of scheduled interest due on any Due Date in any month or months subsequent to the month of prepayment.

"**Private Certificates**": The Class B-4, Class B-5, Class B-6, Class P and Class A-R-II Certificates.

"**Private Placement Memorandum**": The Private Placement Memorandum dated August 31, 2005 relating to the initial sale of the Class B-4, Class B-5 and Class B-6 Certificates.

"**Pro Rata Share**": As to any Distribution Date and any Class of Subordinate Certificates, the portion of the Subordinate Principal Distribution Amount allocable to such Class, equal to the product of the (a) Subordinate Principal Distribution Amount on such date and (b) a fraction, the numerator of which is the related Class Certificate Principal Balance of that Class and the denominator of which is the aggregate of the Class Certificate Principal Balances of all the Classes of Subordinate Certificates.

"**Proprietary Lease**": With respect to any Cooperative Unit, a lease or occupancy agreement between a Cooperative Corporation and a holder of related Cooperative Shares.

"**Prospectus**": The Prospectus Supplement, together with the accompanying prospectus dated February 22, 2005, relating to the Senior Certificates and the Class B-1, Class B-2 and Class B-3 Certificates.

"**Prospectus Supplement**": The Prospectus Supplement dated August 29, 2005 relating to the initial sale of the Senior Certificates and the Class B-1, Class B-2 and Class B-3 Certificates.

"**Purchase Agreement**": Each of the Alliance Purchase Agreement, Commercial Capital Purchase Agreement, ComUnity Lending Purchase Agreement, E-Loan Purchase Agreement,

43

Gateway Purchase Agreement, Home Loan Purchase Agreement, Homefield Purchase Agreement, Loan Center Purchase Agreement, Loan Link Purchase Agreement, Metrocities Purchase Agreement, Paul Financial Purchase Agreement, Plaza Purchase Agreement, PMC Purchase Agreement, Secured Bankers Purchase Agreement and Sierra Pacific Purchase Agreement, as applicable.

"**Purchase Price**": With respect to any Mortgage Loan or REO Property to be purchased pursuant to or as contemplated by Section 2.03 hereof, and as confirmed by an Officers' Certificate from the Seller to the Trustee, an amount equal to the sum of (i) 100% of the Principal Balance thereof as of the date of purchase (or such other price as provided in Section 10.01), plus (ii) in the case of (x) a Mortgage Loan, accrued interest on such Principal Balance at the applicable Loan Rate (or if the servicer is repurchasing such Mortgage Loan, the Loan Rate minus the Servicing Fee Rate) from the Due Date as to which interest was last covered by a payment by the Mortgagor through the end of the calendar month in which the purchase is to be effected, and (y) an REO Property, the sum of (1) accrued interest on such Principal Balance at the applicable Loan Rate (or if the servicer is repurchasing such Mortgage Loan, the Loan Rate minus the Servicing Fee Rate) from the Due Date as to which interest was last covered by a payment by the Mortgagor plus (2) REO Imputed Interest for such REO Property for each calendar month commencing with the calendar month in which such REO Property was acquired and ending with the calendar month in which such purchase is to be effected, net of the total of all net rental income, Insurance Proceeds and Liquidation Proceeds that as of the date of purchase had been distributed as or to cover REO Imputed Interest, plus (iii) any unreimbursed Servicing Advances and any unpaid Expense Fees allocable to such Mortgage Loan or REO Property, plus (iv) in the case of a Mortgage Loan required to be purchased pursuant to Section 2.03 hereof, expenses reasonably incurred or to be incurred by the Trustee in respect of the breach or defect giving rise to the purchase obligation and plus (v) any costs and damages incurred by the Trust in connection with any violation by such Mortgage Loan of any predatory- or abusive-lending laws.

"**Qualified Insurer**": A mortgage guaranty insurance company duly qualified as such under the laws of the state of its principal place of business and each state having jurisdiction over such insurer in connection with the insurance policy issued by such insurer, duly authorized and licensed in such states to transact a mortgage guaranty insurance business in such states and to write the insurance provided by the insurance policy issued by it, approved as a Fannie Mae-approved mortgage insurer and having a claims paying ability rating of at least "AA" or equivalent rating by a nationally recognized statistical rating organization. Any replacement insurer with respect to a Mortgage Loan must have at least as high a claims paying ability rating as the insurer it replaces had on the Closing Date.

"**Qualified Substitute Mortgage Loan**": A mortgage loan substituted for a Deleted Mortgage Loan pursuant to the terms of this Agreement which must, on the date of such substitution, (i) have an outstanding principal balance, after application of all scheduled payments of principal and interest due during or prior to the month of substitution, not in excess of, and not more than 5% less than, the Principal Balance of the Deleted Mortgage Loan as of the Due Date in the calendar month during which the substitution occurs, (ii) have a maximum loan rate not less than the Maximum Loan Rate of the Deleted Mortgage Loan, (iii) have a gross margin equal to or greater than the Gross Margin of the Deleted Mortgage Loan, (iv) have the

same Index as the Deleted Mortgage Loan, (v) have its next adjustment date not more than two months after the next Adjustment Date of the Deleted Mortgage Loan, (vi) have a remaining term to maturity not greater than (and not more than one year less than) that of the Deleted Mortgage Loan, (vii) be current as of the date of substitution, (viii) have a Loan-to-Value Ratio as of the date of substitution equal to or lower than the Loan-to-Value Ratio of the Deleted Mortgage Loan as of such date, (ix) have been underwritten or re-underwritten in accordance with the same or substantially similar underwriting criteria and guidelines as the Deleted Mortgage Loan, (x) is of the same or better credit quality as the Deleted Mortgage Loan and (xi) conform to each representation and warranty set forth in Section 2.04 hereof applicable to the Deleted Mortgage Loan. In the event that one or more mortgage loans are substituted for one or more Deleted Mortgage Loans, the amounts described in clause (i) hereof shall be determined on the basis of aggregate principal balances, the terms described in clause (vi) hereof shall be determined on the basis of weighted average remaining term to maturity and the Loan-to-Value Ratio described in clause (viii) hereof shall be satisfied as to each such mortgage loan and, except to the extent otherwise provided in this sentence, the representations and warranties described in clause (x) hereof must be satisfied as to each Qualified Substitute Mortgage Loan or in the aggregate, as the case may be.

"**Rating Agency**": S&P and Moody's. If any rating agency or its successor shall no longer be in existence, "Rating Agency" shall include such nationally recognized statistical rating agency, or other comparable Person, as shall have been designated by the Depositor, notice of which designation shall be given to the Trustee and the Master Servicer.

"**Realized Loss**": With respect to any Liquidated Mortgage Loan, the amount of loss realized equal to the portion of the Principal Balance remaining unpaid after application of all Net Liquidation Proceeds in respect of such Liquidated Mortgage Loan.

"**Recognition Agreement**": With respect to any Cooperative Loan, an agreement between the related Cooperative Corporation and the originator of such Mortgage Loan to establish the rights of such originator in the related Cooperative Property.

"**Record Date**": With respect to each Distribution Date (other than the initial Distribution Date) and the Certificates (other than the LIBOR Certificates), the last Business Day of the calendar month preceding the month in which such Distribution Date occurs. With respect to each Distribution Date (other than the initial Distribution Date) and the LIBOR Certificates, the last Business Day preceding that Distribution Date, unless any Class of LIBOR Certificates are no longer Book-Entry Certificates, in which case the Record Date for such Class of LIBOR Certificates shall be the last Business Day of the calendar month preceding the month in which that Distribution Date occurs. With respect to the initial Distribution Date and all Classes of Certificates, the Closing Date.

"**Recovery**": With respect to any Distribution Date and Mortgage Loan that became a Liquidated Mortgage Loan in a month preceding the month prior to that Distribution Date and with respect to which the related Realized Loss was allocated to one or more Classes of Certificates, an amount received in respect of such Liquidated Mortgage Loan during the prior calendar month, net of any reimbursable expenses.

45

"**Reference Bank**" shall be a leading bank engaged in transactions in Eurodollar deposits in the international Eurocurrency market, which shall not control, be controlled by, or be under common control with, the Securities Administrator and shall have an established place of business in London.    Until all of the LIBOR Certificates are paid in full, the Securities Administrator will at all times retain at least four Reference Banks for the purpose of determining LIBOR with respect to each LIBOR Determination Date.    The Securities Administrator initially shall designate the Reference Banks (after consultation with the Depositor).  If any such Reference Bank should be unwilling or unable to act as such or if the Securities Administrator should terminate its appointment as Reference Bank, the Securities Administrator shall promptly appoint or cause to be appointed another Reference Bank (after consultation with the Depositor).    The Securities Administrator shall have no liability or responsibility to any Person for (i) the selection of any Reference Bank for purposes of determining LIBOR or (ii) any inability to retain at least four Reference Banks which is caused by circumstances beyond its reasonable control.

"**Refinancing Mortgage Loan**":  Any Mortgage Loan originated in connection with the refinancing of an existing mortgage loan.

"**Regular Certificate**":  Any Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B, Class 2-A-1C, Class X, Class PO, Class B-1, Class B-2, Class B-3, Class B-4, Class B-5 and Class B-6 Certificate.

"**Regulation S**":  Regulation S promulgated under the Securities Act or any successor provision thereto, in each case as the same may be amended from time to time; and all references to any rule, section or subsection of, or definition or term contained in, Regulation S means such rule, section, subsection, definition or term, as the case may be, or any successor thereto, in each case as the same may be amended from time to time.

"**Regulation S Global Security**":  The meaning specified in Section 6.01.

"**Relief Act**":  The Servicemembers Civil Relief Act, or any similar state or local law.

"**Relief Act Reductions**":  With respect to any Distribution Date and any Mortgage Loan as to which there has been a reduction in the amount of interest collectible thereon for the most recently ended Due Period as a result of the application of the Relief Act, the amount, if any, by which (i) interest collectible on that Mortgage Loan during such Due Period is less than (ii) one month's interest on the Stated Principal Balance of such Mortgage Loan at the Loan Rate for such Mortgage Loan before giving effect to the application of the Relief Act.

"**REMIC**":  A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

"**REMIC Opinion**":  An Independent Opinion of Counsel, to the effect that the proposed action described therein would not, under the REMIC Provisions, (i) cause any REMIC created hereunder to fail to qualify as a REMIC while any regular interest in such REMIC is outstanding, (ii) result in a tax on prohibited transactions with respect to any REMIC created hereunder or (iii) constitute a taxable contribution to any REMIC created hereunder after the Startup Day.

46

"**REMIC Provisions**":  Provisions of the federal income tax law relating to real estate mortgage investment conduits which appear at Section 860A through 860G of Subchapter M of Chapter 1 the Code, and related provisions, and regulations and rulings promulgated thereunder, as the foregoing may be in effect from time to time.

"**Remittance Report**":  The Master Servicer's Remittance Report to the Securities Administrator providing information with respect to each Mortgage Loan which is provided no later than the 15th calendar day of each month and which shall contain such information as may be agreed upon by the Master Servicer and the Securities Administrator and which shall be sufficient to enable the Securities Administrator to prepare the related Distribution Date Statement.

"**Rents from Real Property**":  With respect to any REO Property, gross income of the character described in Section 856(d) of the Code.

"**REO Account**":  The account or accounts maintained by the Servicer in respect of an REO Property pursuant to the Servicing Agreement.

"**REO Disposition**":  The sale or other disposition of an REO Property on behalf of the Trust.

"**REO Imputed Interest**":  As to any REO Property, for any calendar month during which such REO Property was at any time part of the Trust Fund, one month's interest at the applicable Net Loan Rate on the Principal Balance of such REO Property (or, in the case of the first such calendar month, of the related Mortgage Loan if appropriate) as of the Close of Business on the Due Date in such calendar month.

"**REO Principal Amortization**":  With respect to any REO Property, for any calendar month, the excess, if any, of (a) the aggregate of all amounts received in respect of such REO Property during such calendar month, whether in the form of rental income, sale proceeds (including, without limitation, that portion of the Termination Price paid in connection with a purchase of all of the Mortgage Loans and REO Properties pursuant to Section 10.01 hereof that is allocable to such REO Property) or otherwise, net of any portion of such amounts (i) payable pursuant to the applicable provisions of the Servicing Agreement in respect of the proper operation, management and maintenance of such REO Property or (ii) payable or reimbursable to the Servicer pursuant to the applicable provisions of the Servicing Agreement for unpaid Master Servicing Fees and Servicing Fees in respect of the related Mortgage Loan and unreimbursed Servicing Advances and Advances in respect of such REO Property or the related Mortgage Loan, over (b) the REO Imputed Interest in respect of such REO Property for such calendar month.

"**REO Property**":  A Mortgaged Property acquired by the Servicer on behalf of the Trust Fund through foreclosure or deed-in-lieu of foreclosure in accordance with the applicable provisions of the Servicing Agreement.

"**Request for Release**":  A release signed by a Servicing Officer, in the form of Exhibit F attached hereto.

47

"**Required Reserve Fund Deposit**": With respect to the Class X Certificate and any Distribution Date, an amount equal to the lesser of (i) the Interest Distributable Amount for the Class X Certificates for such Distribution Date (after giving effect to such Certificate's share of any Net Deferred Interest and after any reduction in the Interest Distributable Amount due to Net Interest Shortfalls on such Distribution Date) and (ii) the amount required to bring the balance on deposit in the Basis Risk Reserve Fund up to an amount equal to the Basis Risk Shortfalls for such Distribution Date with respect to the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B, Class 2-A-1C, Class B-1, Class B-2, Class B-3, Class B-4, Class B-5 and Class B-6 Certificates (and with respect to the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates, after giving effect to distributions of payments made pursuant to the related Yield Maintenance Agreement).

"**Residential Dwelling**": Any one of the following: (i) a detached one-family dwelling, (ii) a detached two- to four-family dwelling, (iii) a one-family dwelling unit in a condominium project, (iv) a manufactured home, (v) a cooperative unit or (vi) a detached one-family dwelling in a planned unit development, none of which is a mobile home.

"**Residual Certificate**": Each of the Class A-R and the Class A-R-II Certificate.

"**Responsible Officer**": When used with respect to the Trustee or any director, the President, any vice president, any assistant vice president, any associate or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and, with respect to a particular matter, to whom such matter is referred because of such officer's knowledge of and familiarity with the particular subject.

"**Restricted Classes**": As defined in Section 5.01(d).

"**Restricted Global Security**": As defined in Section 6.01.

"**Sarbanes-Oxley Certification**": A written certification covering, among other things, servicing of the Mortgage Loans by the Servicer and signed by an officer of the Master Servicer that complies with (i) the Sarbanes-Oxley Act of 2002, as amended from time to time, and (ii) the February 21, 2003 Statement by the Staff of the Division of Corporation Finance of the Securities and Exchange Commission Regarding Compliance by Asset-Backed Issuers with Exchange Act Rules 13a-14 and 15d-14, as in effect from time to time; provided that if, after the Closing Date (a) the Sarbanes-Oxley Act of 2002 is amended, (b) the Statement referred to in clause (ii) is modified or superseded by any subsequent statement, rule or regulation of the Securities and Exchange Commission or any statement of a division thereof, or (c) any future releases, rules and regulations are published by the Securities and Exchange Commission from time to time pursuant to the Sarbanes-Oxley Act of 2002, which in any such case affects the form or substance of the required certification and results in the required certification being, in the reasonable judgment of the Master Servicer, materially more onerous than the form of the required certification as of the Closing Date, the Sarbanes-Oxley Certification shall be as agreed to by the Master Servicer, Depositor and the Seller following a negotiation in good faith to determine how to comply with any such new requirements.

"**S&P**": Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., and any successor thereto.

"**Secured Bankers**": Secured Bankers Mortgage Company, and its successors and assigns, in its capacity as Originator of the Secured Bankers Mortgage Loans.

"**Secured Bankers Mortgage Loans**": The Mortgage Loans for which Secured Bankers is listed as "Originator" on the Mortgage Loan Schedule.

"**Secured Bankers Purchase Agreement**": The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of March 1, 2004, between GCFP, as purchaser, and Secured Bankers, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Secured Bankers Mortgage Loans.

"**Securities Administrator**": Wells Fargo Bank, N.A., or its successor in interest, or any successor securities administrator appointed as herein provided.

"**Security Agreement**": With respect to any Cooperative Loan, the agreement between the owner of the related Cooperative Shares and the originator of the related Mortgage Note that defines the terms of the security interest in such Cooperative Shares and the related Proprietary Lease.

"**Seller**": GCFP, in its capacity as seller under this Agreement.

"**Senior Certificate**": Any one of the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B, Class 2-A-1C, Class X, Class PO or Class A-R Certificates.

"**Senior Certificate Group**": Any of (a) the Class 1-A-1A, Class 1-A-1B and Class A-R Certificates with respect to Loan Group 1 and (b) the Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates with respect to Loan Group 2.

"**Senior Certificateholder**": Any Holder of a Senior Certificate.

"**Senior Credit Support Depletion Date**": The date on which the Class Certificate Principal Balance of each Class of Subordinate Certificates has been reduced to zero.

"**Senior Percentage**": With respect to each Loan Group and any Distribution Date, the percentage equivalent of a fraction the numerator of which is the aggregate of the Class Certificate Principal Balances and Component Principal Balances of the Classes of Senior Certificates and Principal-Only Components relating to that Loan Group immediately prior to such Distribution Date and the denominator of which is the Loan Group Balance in the related Loan Group for such Distribution Date; *provided, however*, that on any Distribution Date after a Senior Termination Date has occurred with respect to the Senior Certificates and Principal-Only Component related to a Loan Group, the Senior Percentage for the related Loan Group will be equal to 0% and; *provided, further*, that on any Distribution Date after a Senior Termination Date has occurred with respect to the Senior Certificates and Principal-Only Component related to one Loan Group, the Senior Percentage of the Loan Group related to the remaining Senior Certificates and Principal-Only Component is the percentage equivalent of a fraction, the

numerator of which is the aggregate of the Certificate Principal Balances of each remaining Class of Senior Certificates and Principal-Only Component immediately prior to such date and the denominator of which is the aggregate of the Certificate Principal Balances of all Classes of Certificates, immediately prior to such date.

"**Senior Prepayment Percentage**":    With respect to each Loan Group and any Distribution Date before the Distribution Date in September 2015, 100%.  Except as provided herein, the Senior Prepayment Percentage for each Loan Group for any Distribution Date occurring on or after the tenth anniversary of the first Distribution Date will be as follows: (i) from September 2015 through August 2016, the related Senior Percentage plus 70% of the related Subordinate Percentage for that Distribution Date; (ii) from September 2016 through August 2017, the related Senior Percentage plus 60% of the related Subordinate Percentage for that Distribution Date; (iii) from September 2017 through August 2018, the related Senior Percentage plus 40% of the related Subordinate Percentage for that Distribution Date; (iv) from September 2018 through August 2019, the related Senior Percentage plus 20% of the related Subordinate Percentage for that Distribution Date; and (v) from and after September 2019, the related Senior Percentage for that Distribution Date; *provided, however,* that there shall be no reduction in the Senior Prepayment Percentage for any Loan Group unless the Step Down Conditions are satisfied; and *provided, further,* that if on any Distribution Date occurring on or after the Distribution Date in September 2019, the Senior Percentage for any Loan Group exceeds the initial Senior Percentage for such Loan Group, the related Senior Prepayment Percentage for that Distribution Date will again equal 100%.

Notwithstanding the above, (i) if on any Distribution Date prior to September 2008 the Two Times Test for such Loan Group is satisfied, the Senior Prepayment Percentage for each Loan Group will equal the related Senior Percentage for such Distribution Date plus 50% of an amount equal to 100% minus the related Senior Percentage for such Distribution Date and (ii) if on any Distribution Date in or after September 2008 the applicable Two Times Test is satisfied, the Senior Prepayment Percentage for each Loan Group will equal the related Senior Percentage for such Distribution Date.

"**Senior Principal Distribution Amount**":  With respect to each Loan Group and any Distribution Date, the sum of:

(1)    the related Senior Percentage of all amounts described in clauses (a) through (d) of the definition of "Principal Distribution Amount" with respect to such Loan Group for that Distribution Date;

(2)    with respect to each Mortgage Loan in that Loan Group which became a Liquidated Mortgage Loan during the related Prepayment Period, the lesser of

(x)    the related Senior Percentage of the Stated Principal Balance of that Mortgage Loan; and

(y)    the related Senior Prepayment Percentage of the amount of the Net Liquidation Proceeds allocable to principal received with respect to that Mortgage Loan

50

(3)    the related Senior Prepayment Percentage of the amounts described in clauses (f) and (g) of the definition of "Principal Distribution Amount" with respect to such Loan Group.

"**Senior Termination Date**":  For each Senior Certificate Group and Principal-Only Component, the Distribution Date on which the aggregate of the Class Certificate Principal Balances and related Component Principal Balance of the related Senior Certificates and Principal-Only Component is reduced to zero.

"**Servicer**":  GMAC, as primary servicer of the Mortgage Loans as set forth and as individually defined in the Mortgage Loan Schedule hereto and any successors thereto.

"**Servicer Remittance Date**":  The "Remittance Date" defined in the Servicing Agreement.

"**Servicing Account**":  Any account established and maintained by the Servicer with respect to the related Mortgage Loans and any REO Property, pursuant to the terms of the Servicing Agreement.

"**Servicing Addendum**": As defined in the Servicing Agreement.

"**Servicing Advances**":  With respect to the Master Servicer and the Servicer, all customary, reasonable and necessary "out of pocket" costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Master Servicer or the Servicer in the performance of its servicing obligations hereunder, including, but not limited to, the cost of (i) the preservation, restoration, inspection and protection of the Mortgaged Property, (ii) any enforcement or judicial proceedings, including foreclosures, (iii) the management and liquidation of the REO Property and (iv) compliance with the obligations under Article III hereof or the Servicing Agreement.

"**Servicing Agreement**":  The GMAC Servicing Agreement relating to the Mortgage Loans as set forth in Exhibit M hereto, as reconstituted by the Reconstituted Servicing Agreement, and any other servicing agreement entered into between a successor servicer, the Master Servicer and the Seller or the Trustee on behalf of the Trust pursuant to the terms hereof.

"**Servicing Fee**":  With respect to the Servicer and each Mortgage Loan serviced by the Servicer and for any calendar month, the fee payable to the Servicer determined pursuant to the Servicing Agreement.

"**Servicing Fee Rate**":  With respect to each Mortgage Loan, the per annum servicing fee rate set forth on the Mortgage Loan Schedule.

"**Servicing Officer**":  Any officer of the Master Servicer or the Servicer involved in, or responsible for, the administration and servicing (or master servicing) of Mortgage Loans, whose name and specimen signature appear on a list of servicing officers furnished by the Master Servicer to the Trustee and the Depositor on the Closing Date, as such list may from time to time be amended.

51

"**Servicing Rights**": With respect to any Mortgage Loan, any and all of the following: (a) the right, under the Servicing Agreement, to terminate the Servicer as servicer of such Mortgage Loan, with or without cause, subject to Section 3.03 of this Agreement; (b) the right, under the Servicing Agreement, to transfer the Servicing Rights and/or all servicing obligations with respect to such Mortgage Loan, subject to Section 3.03 of this Agreement; (c) the right to receive the Servicing Fee, less an amount to be retained by the Servicer as its servicing compensation as agreed to by the Servicing Rights Owner and the Servicer, subject to Section 3.03 of this Agreement and (d) all powers and privileges incident to any of the foregoing.

"**Servicing Rights Owner**":  With respect to the Mortgage Loans, GCFP or any successor or assign of GCFP.

"**Sierra Pacific**": Sierra Pacific Mortgage Co., Inc., and its successors and assigns, in its capacity as Originator of the Sierra Pacific Mortgage Loans.

"**Sierra Pacific Mortgage Loans**":  The Mortgage Loans for which Sierra Pacific is listed as "Originator" on the Mortgage Loan Schedule.

"**Sierra Pacific Purchase Agreement**":  The Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of July 1, 2003, between GCFP, as purchaser, and Sierra Pacific, as seller, as the same may be amended from time to time, and any assignments and conveyances related to the Sierra Pacific Mortgage Loans.

"**Startup Day**":  As defined in Section 9.01(b) hereof.

"**Stated Principal Balance**":  With respect to any Mortgage Loan: (a) as of the Distribution Date in September 2005, the Cut-Off Date Principal Balance of such Mortgage Loan, (b) thereafter as of any date of determination up to and including the Distribution Date on which the proceeds, if any, of a Liquidation Event with respect to such Mortgage Loan would be distributed, the Cut-Off Date Principal Balance of such Mortgage Loan *minus*, in the case of each Mortgage Loan, the sum of (i) the principal portion of each Monthly Payment due on a Due Date subsequent to the Cut-Off Date, whether or not received, (ii) all Principal Prepayments received after the Cut-Off Date, to the extent distributed pursuant to Section 5.01 before such date of determination and (iii) all Liquidation Proceeds and Insurance Proceeds applied by the Servicer as recoveries of principal in accordance with the applicable provisions of the Servicing Agreement, to the extent distributed pursuant to Section 5.01 before such date of determination; and (c) as of any date of determination subsequent to the Distribution Date on which the proceeds, if any, of a Liquidation Event with respect to such Mortgage Loan would be distributed, zero; *provided that*, such Stated Principal Balance shall be increased by the amount of any Deferred Interest added to the outstanding Principal Balance of such Mortgage Loan pursuant to the terms of the related Mortgage Note.  With respect to any REO Property: (x) as of any date of determination up to and including the Distribution Date on which the proceeds, if any, of a Liquidation Event with respect to such REO Property would be distributed, an amount (not less than zero) equal to the Stated Principal Balance of the related Mortgage Loan as of the date on which such REO Property was acquired on behalf of the Trust, minus the aggregate amount of REO Principal Amortization in respect of such REO Property for all previously ended calendar months, to the extent distributed pursuant to Section 5.01 before such date of

determination; and (y) as of any date of determination subsequent to the Distribution Date on which the proceeds, if any, of a Liquidation Event with respect to such REO Property would be distributed, zero.

"**Step Down Conditions**": As of the first Distribution Date as to which any decrease in any Senior Prepayment Percentage applies and each Loan Group, (i) the outstanding Principal Balance of all Mortgage Loans in such Loan Group 60 days or more Delinquent (including related Mortgage Loans in REO and foreclosure) (averaged over the preceding six month period), as a percentage of the aggregate of the Class Certificate Principal Balances of the Classes of Subordinate Certificates related to such Loan Group on such Distribution Date, does not equal or exceed 50% and (ii) cumulative Realized Losses with respect to all of the Mortgage Loans in such Loan Group do not exceed:

- for any Distribution Date on or after the tenth anniversary of the first Distribution Date, 30% of the aggregate Certificate Principal Balance of the related Subordinate Certificates as of the Closing Date,

- for any Distribution Date on or after the eleventh anniversary of the first Distribution Date, 35% of the aggregate Certificate Principal Balance of the related Subordinate Certificates as of the Closing Date,

- for any Distribution Date on or after the twelfth anniversary of the first Distribution Date, 40% of the aggregate Certificate Principal Balance of the related Subordinate Certificates as of the Closing Date,

- for any Distribution Date on or after the thirteenth anniversary of the first Distribution Date, 45% of the aggregate Certificate Principal Balance of the related Subordinate Certificates as of the Closing Date, and

- for any Distribution Date on or after the fourteenth anniversary of the first Distribution Date, 50% of the aggregate Certificate Principal Balance of the related Subordinate Certificates as of the Closing Date.

"**Strike Rate**":   With respect to any Distribution Date and the Yield Maintenance Agreement, the strike rate listed on Schedule III hereto.

"**Subordinate Adjusted Cap Rate**":  For any Distribution Date, the weighted average of the Group 1 Adjusted Cap Rate and the Group 2 Adjusted Cap Rate for such Distribution Date (computed without regard to the adjustments applicable to the Class 1-A-1B and Class 2-A-1C Certificates), weighted on the basis of the Subordinate Component for Loan Group 1 and Loan Group 2 for such Distribution Date.

"**Subordinate Adjusted Net WAC**":  For any Distribution Date, the weighted average of the Group 1 Adjusted Net WAC and the Group 2 Adjusted Net WAC for such Distribution Date, weighted on the basis of the Subordinate Component for Loan Group 1 and Loan Group 2 for such Distribution Date.

53

"**Subordinate Certificate**": Any one of the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5 or Class B-6 Certificates.

"**Subordinate Class Expense Share**": For each Class of Subordinate Certificates and each Accrual Period, the Subordinate Class Expense Share shall be allocated in reverse order of their respective numerical Class designations (beginning with the Class of Subordinate Certificates with the highest numerical Class designation) and will be an amount equal to (i) the sum of, without duplication, (a) the amounts paid to the Trustee from the Trust Fund during such Accrual Period pursuant to Section 8.05 hereof to the extent such amounts were paid for ordinary or routine expenses and were not taken into account in computing the Net Loan Rate of any Mortgage Loan and (b) amounts described in clause (y) of the definition of Available Funds herein to the extent such amounts were paid for ordinary or routine expenses and were not taken into account in computing the Net Mortgage Rate of any Mortgage Loan *minus* (ii) amounts taken into account under clause (i) of this definition in determining the Subordinate Class Expense Share of any Class of Subordinate Certificates having a higher numeric designation. In no event, however, shall the Subordinate Class Expense Share for any Class of Subordinate Certificates and any Accrual Period exceed the product of (i) (a) the lesser of the Pass-Through Rate for such Class or the Subordinate Adjusted Cap Rate, divided by (b) 12 and (ii) the Class Certificate Principal Amount of such Class of Subordinate Certificates as of the beginning of the related Accrual Period.

"**Subordinate Component**": With respect to each Loan Group and any Distribution Date, the excess of the related Loan Group Balance for such Distribution Date over the aggregate Class Certificate Principal Balance of the related Senior Certificate Group immediately preceding such Distribution Date. The designation "1" and "2" appearing after the corresponding Loan Group designation is used to indicate a Subordinate Component allocable to Loan Group 1 and Loan Group 2, respectively.

"**Subordinate Net WAC**": For any Distribution Date, the weighted average of the Group 1 Net WAC and the Group 2 Net WAC for such Distribution Date, weighted on the basis of the Subordinate Component for Loan Group 1 and Loan Group 2 for such Distribution Date.

"**Subordinate Net WAC Cap**": With respect to the Subordinate Certificates and any Distribution Date, the weighted average of the Group 1 Net WAC Cap and the Group 2 Net WAC Cap; provided, that each of the Group 1 Net WAC Cap and the Group 2 Net WAC Cap is computed without regard to the adjustments applicable to the Class 1-A-1B and Class 2-A-1C Certificates, weighted on the basis of the Subordinate Component for each Loan Group.

"**Subordinate Percentage**": With respect to each Loan Group and any Distribution Date, the difference between 100% and the related Senior Percentage for such Loan Group and Distribution Date; *provided, however*, that on any Distribution Date occurring after a Senior Termination Date has occurred with respect to the Senior Certificates and Principal-Only Components related to two Loan Groups, the Subordinate Percentage will represent the entire interest of the Subordinate Certificates in the Mortgage Loans and will equal the difference between 100% and the related Senior Percentage for such Distribution Date.

MNNYIMANAGE 65986v12

"**Subordinate Prepayment Percentage**": With respect to each Loan Group and any Distribution Date, the difference between 100% and the related Senior Prepayment Percentage for such Distribution Date.

"**Subordinate Principal Distribution Amount**": With respect to each Loan Group and any Distribution Date, an amount equal to the sum of for all Loan Groups:

> (1)    the related Subordinate Percentage of all amounts described in clauses (a) through (d) of the definition of "Principal Distribution Amount" for that Loan Group and Distribution Date;

> (2)    with respect to each Mortgage Loan in such Loan Group that became a Liquidated Mortgage Loan during the related Prepayment Period, the amount of the Net Liquidation Proceeds allocated to principal received with respect thereto remaining after application thereof pursuant to clause (2) of the definition of "Senior Principal Distribution Amount" for that Loan Group and Distribution Date, up to the related Subordinate Percentage of the Stated Principal Balance of such Mortgage Loan; and

> (3)    the related Subordinated Prepayment Percentage of all amounts described in clause (f) of the definition of "Principal Distribution Amount" for such Loan Group and Distribution Date;

*provided, however*, that on any Distribution Date occurring after a Senior Termination Date has occurred with respect to the Senior Certificates and Principal-Only Component related to two Loan Groups, the Subordinate Principal Distribution Amount will not be calculated by Loan Group but will equal the amount calculated pursuant to the formula set forth above based on the applicable Subordinate Percentage or Subordinate Prepayment Percentage, as applicable, for such Distribution Date with respect to all the Mortgage Loans rather than the Mortgage Loans in the related Loan Group only.

"**Substitution Adjustment**": As defined in Section 2.03(d) hereof.

"**Tax Returns**": The federal income tax return on Internal Revenue Service Form 1066, U.S. Real Estate Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice to Residual Interest Holders of the REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be filed on behalf of every REMIC created hereunder under the REMIC Provisions, together with any and all other information reports or returns that may be required to be furnished to the Certificateholders or filed with the Internal Revenue Service or any other governmental taxing authority under any applicable provisions of federal, state or local tax laws.

"**Termination Price**": As defined in Section 10.01(a) hereof.

"**Transfer**": Any direct or indirect transfer or sale of any Ownership Interest in a Residual Certificate.

"**Transfer Affidavit**": As defined in Section 6.02(e)(ii) hereof.

MNNYIMANAGE 65986v12

"**Transferee**":  Any Person who is acquiring by Transfer any Ownership Interest in a Certificate.

"**Trust**":  HarborView Mortgage Loan Trust 2005-11, the trust created hereunder.

"**Trust Fund**":  The segregated pool of assets subject hereto, constituting the primary trust created hereby and to be administered hereunder, with respect to which a REMIC election is to be made, such Trust Fund consisting of: (i) such Mortgage Loans as from time to time are subject to this Agreement, together with the Mortgage Files relating thereto, and together with all collections thereon and proceeds thereof, excluding Prepayment Penalty Amounts, (ii) any REO Property, together with all collections thereon and proceeds thereof, (iii) the Trustee's rights with respect to the Mortgage Loans under all insurance policies required to be maintained pursuant to this Agreement and any proceeds thereof, (iv) the Depositor's rights under the Mortgage Loan Purchase Agreement (including any security interest created thereby); (v) the Distribution Account (subject to the last sentence of this definition), any REO Account and such assets that are deposited therein from time to time and any investments thereof, together with any and all income, proceeds and payments with respect thereto; (vi) all right, title and interest of the Seller in and to the Servicing Agreement; (vii) the Basis Risk Reserve Fund and the Yield Maintenance Account and (viii) the rights of the Trust under the Yield Maintenance Agreement. Notwithstanding the foregoing, however, the Trust Fund specifically excludes (1) all payments and other collections of interest and principal due on the Mortgage Loans on or before the Cut-Off Date and principal received before the Cut-Off Date (except any principal collected as part of a payment due after the Cut-Off Date) and (2) all income and gain realized from Permitted Investments of funds on deposit in the Distribution Account.

"**Trustee**":  Deutsche Bank National Trust Company, its successors and assigns, or any successor trustee appointed as provided herein.

"**Two Times Test**":  As to any Distribution Date, (i) the Aggregate Subordinate Percentage is at least two times the Aggregate Subordinate Percentage as of the Closing Date; (ii) the aggregate of the Principal Balances of all Mortgage Loans Delinquent 60 days or more (including Mortgage Loans in REO and foreclosure) (averaged over the preceding six-month period), as a percentage of the aggregate of the Class Certificate Principal Balances of the Subordinate Certificates, does not equal or exceed 50%; and (iii) on or after the Distribution Date in September 2008, cumulative Realized Losses do not exceed 30% of the Original Subordinated Principal Balance or prior to the Distribution Date in September 2008, cumulative Realized Losses do not exceed 20% of the Original Subordinated Principal Balance.

"**Undercollateralized Group**":  With respect to any Distribution Date and Loan Group, as to which the aggregate Class Certificate Principal Balance and Component Principal Balance of the related classes of Senior Certificates and Principal-Only Component, after giving effect to distributions pursuant to Section 5.01(a) on such date, is greater than the Loan Group Balance of the related Loan Group for such Distribution Date.

"**Underwriter's Exemption**":  Prohibited Transaction Exemption 90-59 (Exemption Application No. D-8374), as amended by Prohibited Transaction Exemption 97-34 (Exemption Application Nos. D-10245 and D-10246), as amended by Prohibited Transaction Exemption

2000-58 (Exemption Application No. D-10829) and as amended by Prohibited Transaction Exemption 2002-41 (Exemption Application No. D-11077) (or any successor thereto), or any substantially similar administrative exemption granted by the U.S. Department of Labor.

"**Uninsured Cause**":  Any cause of damage to a Mortgaged Property such that the complete restoration of such property is not fully reimbursable by the hazard insurance policies required to be maintained on such Mortgaged Property.

"**United States Person**" or "**U.S. Person**":  A "United States person" within the meaning set forth in Section 7701(a)(30) of the Code or successor provisions.

"**Unpaid Interest Shortfall Amount**":  With respect to each Class of Certificates (other than the Class PO Certificates), and (i) the first Distribution Date, zero, and (ii) any Distribution Date after the first Distribution Date, the amount, if any, by which (1)(a) the Monthly Interest Distributable Amount for that Class for the immediately preceding Distribution Date exceeds (b) the aggregate amount distributed on that Class in respect of such Monthly Interest Distributable Amount on the preceding Distribution Date plus (2) any such shortfalls remaining unpaid from prior Distribution Dates.

"**Upper Tier REMIC**":  As described in the Preliminary Statement.

"**Value**":  With respect to any Mortgage Loan and the related Mortgaged Property, the lesser of:

> (i)     the value of such Mortgaged Property as determined by an appraisal made for the originator of the Mortgage Loan at the time of origination of the Mortgage Loan by an appraiser who met the minimum requirements of Fannie Mae and Freddie Mac; and

> (ii)     the purchase price paid for the related Mortgaged Property by the Mortgagor with the proceeds of the Mortgage Loan;

*provided, however*, that in the case of a Refinancing Mortgage Loan, such value of the Mortgaged Property is based solely upon the value determined by an appraisal made for the originator of such Refinancing Mortgage Loan at the time of origination by an appraiser who met the minimum requirements of Fannie Mae and Freddie Mac.

"**Voting Rights**":  The portion of the voting rights of all of the Certificates which is allocated to any Certificate.  97% of the voting rights shall be allocated among the Classes of Regular Certificates (other than the Class X, Class P, Class A-R and Class A-R-II Certificates), *pro rata*, based on a fraction, expressed as a percentage, the numerator of which is the Class Certificate Principal Balance of such Class and the denominator of which is the aggregate of the Class Certificate Principal Balances then outstanding, 1% of the voting rights shall be allocated to the Class X Certificates, 1% of the voting rights shall be allocated to the Class P Certificate and 1% of the voting rights shall be allocated to the Class A-R Certificate; *provided, however*, that when none of the Regular Certificates is outstanding, 100% of the voting rights shall be allocated to the Holder of the Class A-R Certificate.  The voting rights allocated to a Class of Certificates shall be allocated among all Holders of such Class, *pro rata*, based on a fraction the numerator of which is the Certificate Principal Balance or Certificate Notional Balance, as

57

applicable, of each Certificate of such Class and the denominator of which is the Class Certificate Principal Balance or Class Certificate Notional Balance, as applicable, of such Class; *provided, however*, that any Certificate registered in the name of the Master Servicer, the Securities Administrator or the Trustee or any of their affiliates shall not be included in the calculation of Voting Rights. No voting rights shall be allocated to the Class A-R-II Certificate.

**"Writedown Amount"**: The reduction described in Section 5.03(c).

**"Yield Maintenance Account"**: The separate trust account maintained and held by the Securities Administrator pursuant to Section 4.04, which account shall bear a designation clearly indicating that the funds deposited therein are held in trust for the benefit of the Trust on behalf of the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificateholders, and which account provides that the Securities Administrator may make, or cause to be made, withdrawals therefrom in accordance with Section 4.04.

**"Yield Maintenance Agreement"**: Each of the four transactions evidenced by the confirmation dated August 31, 2005 together with any other related documents thereto, between the Yield Maintenance Provider and the Trust. The Yield Maintenance Agreements will be for the benefit of (i) the Class 1-A-1A Certificates, (ii) the Class 1-A-1B Certificates, (ii) the Class 2-A-1A and Class 2-A-1B Certificates and (iv) the Class 2-A-1C Certificates.

**"Yield Maintenance Distributable Amount"**: With respect to each Distribution Date and the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates, an amount equal to the product of (i) the excess, if any, of (x) LIBOR, subject to a maximum of 11.00%, over (y) the applicable Strike Rate, (ii) the related Yield Maintenance Notional Balance and (iii) a fraction, the numerator of which is the actual number days in the related interest Accrual Period and the denominator of which is 360.

**"Yield Maintenance Notional Balance"**: For each Yield Maintenance Agreement and any Distribution Date, the lesser of (i) the amount set forth on Schedule III hereto for the applicable Class or Classes of Certificates and (ii) the aggregate Class Certificate Principal Balance of (a) the Class 1-A-1A Certificates, (b) the Class 1-A-1B Certificates, (c) the Class 2-A-1A and Class 2-A-1B Certificates or (d) the Class 2-A-1C Certificates, as applicable

**"Yield Maintenance Payment"**: The payment remitted to the Securities Administrator by the Yield Maintenance Provider under the Yield Maintenance Agreement.

**"Yield Maintenance Provider"**: The Bank of New York.

SECTION 1.02. Accounting.

Unless otherwise specified herein, for the purpose of any definition or calculation, whenever amounts are required to be netted, subtracted or added or any distributions are taken into account such definition or calculation and any related definitions or calculations shall be determined without duplication of such functions.

ARTICLE II

CONVEYANCE OF MORTGAGE LOANS;
ORIGINAL ISSUANCE OF CERTIFICATES

SECTION 2.01.  Conveyance of Mortgage Loans.

The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey to the Trustee without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to (i) each Mortgage Loan identified on the Mortgage Loan Schedule, including the related Cut-Off Date Principal Balance, all interest due thereon after the Cut-Off Date and all collections in respect of interest and principal due after the Cut-Off Date; (ii) all the Depositor's right, title and interest in and to the Distribution Account and all amounts from time to time credited to and the proceeds of the Distribution Account; (iii) any real property that secured each such Mortgage Loan and that has been acquired by foreclosure or deed in lieu of foreclosure; (iv) the Depositor's interest in any insurance policies in respect of the Mortgage Loans; (v) all proceeds of any of the foregoing; and (vi) all other assets included or to be included in the Trust Fund.  Such assignment includes all interest and principal due to the Depositor after the Cut-Off Date with respect to the Mortgage Loans.  In exchange for such transfer and assignment, the Depositor shall receive the Certificates.  The Depositor hereby directs the Securities Administrator to execute, not in its individual capacity, but solely as Securities Administrator on behalf of the Trust, and deliver the Yield Maintenance Agreement.

Notwithstanding anything provided herein to the contrary, each of the parties hereto agrees and acknowledges that, notwithstanding the transfer, conveyance and assignment of the Mortgage Loans from the Depositor to the Trustee pursuant to this Agreement, the Servicing Rights Owner remains the sole and exclusive owner of the related Servicing Rights with respect to the Mortgage Loans.

Concurrently with the execution and delivery of this Agreement, the Depositor does hereby assign to the Trustee all of its rights and interest under the Mortgage Loan Purchase Agreement, including all rights of the Seller under the Servicing Agreement to the extent assigned in the Mortgage Loan Purchase Agreement.   The Trustee hereby accepts such assignment, and shall be entitled to exercise all rights of the Depositor under the Mortgage Loan Purchase Agreement and all rights of the Seller under each Servicing Agreement as if, for such purpose, it were the Depositor or the Seller, as applicable, including the Seller's right to enforce remedies for breaches of representations and warranties and delivery of Mortgage Loan documents.  The foregoing sale, transfer, assignment, set-over, deposit and conveyance does not and is not intended to result in creation or assumption by the Trustee of any obligation of the Depositor, the Seller or any other Person in connection with the Mortgage Loans or any other agreement or instrument relating thereto except as specifically set forth herein.

MNNYIMANAGE 65986v12

In connection with such transfer and assignment, (i) the Depositor directs the Trustee to appoint Deutsche Bank National Trust Company, as Custodian, and (ii) the Seller, on behalf of the Depositor, does hereby deliver on the Closing Date, unless otherwise specified in this Section 2.01, to, and deposit with the Trustee, or the Custodian as its designated agent, the following documents or instruments with respect to each Mortgage Loan (a "**Mortgage File**") so transferred and assigned:

(i)     the original Mortgage Note, endorsed either on its face or by allonge attached thereto in blank or in the following form: "Pay to the order of Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust 2005-11, Mortgage Loan Pass-Through Certificates, Series 2005-11, without recourse", or with respect to any lost Mortgage Note, an original Lost Note Affidavit stating that the original mortgage note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note; *provided, however*, that such substitutions of Lost Note Affidavits for original Mortgage Notes may occur only with respect to Mortgage Loans the aggregate Cut-Off Date Principal Balance of which is less than or equal to 2% of the Cut-Off Date Aggregate Principal Balance;

(ii)    except as provided below, for each Mortgage Loan that is not a MERS Mortgage Loan, the original Mortgage, and in the case of each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN for that Mortgage Loan and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, or if such Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment to MERS, in each case with evidence of recording thereon, and the original recorded power of attorney, if the Mortgage was executed pursuant to a power of attorney, with evidence of recording thereon or, if such Mortgage or power of attorney has been submitted for recording but has not been returned from the applicable public recording office, has been lost or is not otherwise available, a copy of such Mortgage or power of attorney, as the case may be, together with an Officer's Certificate of the Seller certifying that the copy of such Mortgage delivered to the Trustee (or its Custodian) is a true copy and that the original of such Mortgage has been forwarded to the public recording office, or, in the case of a Mortgage that has been lost, a copy thereof (certified as provided for under the laws of the appropriate jurisdiction) and a written Opinion of Counsel (delivered at the Seller's expense) acceptable to the Trustee and the Depositor that an original recorded Mortgage is not required to enforce the Trustee's interest in the Mortgage Loan;

(iii)   the original of each assumption, modification or substitution agreement, if any, relating to the Mortgage Loans, or, as to any assumption, modification or substitution agreement which cannot be delivered on or prior to the Closing Date because of a delay caused by the public recording office where such assumption, modification or substitution agreement has been delivered for recordation, a photocopy of such assumption, modification or substitution agreement, pending delivery of the original thereof, together with an Officer's Certificate of the Seller, title company, escrow agent or closing attorney certifying that the copy of such

assumption, modification or substitution agreement delivered to the Trustee (or its Custodian) on behalf of the Trust is a true copy and that the original of such agreement has been forwarded to the public recording office;

(iv)   in the case of each Mortgage Loan that is not a MERS Mortgage Loan, an original Assignment of Mortgage, in form and substance acceptable for recording. The Mortgage shall be assigned to "Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust 2005-11, Mortgage Loan Pass-Through Certificates, Series 2005-11, without recourse;"

(v)   in the case of each Mortgage Loan that is not a MERS Mortgage Loan, an original copy of any intervening Assignment of Mortgage showing a complete chain of assignments, or, in the case of an intervening Assignment of Mortgage that has been lost, a written Opinion of Counsel (delivered at the Seller's expense) acceptable to the Trustee that such original intervening Assignment of Mortgage is not required to enforce the Trustee's interest in the Mortgage Loans;

(vi)   the original Primary Insurance Policy, if any, or certificate, if any;

(vii)   the original or a certified copy of lender's title insurance policy; and

(viii)   with respect to any Cooperative Loan, the Cooperative Loan Documents.

In connection with the assignment of any MERS Mortgage Loan, the Seller agrees that it will take (or shall cause the Servicer to take), at the expense of the Seller (with the cooperation of the Depositor, the Master Servicer and the Trustee, such actions as are necessary to cause the MERS® System to indicate that such Mortgage Loans have been assigned by the Seller to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans that are repurchased in accordance with this Agreement) in such computer files the information required by the MERS® System to identify the series of the Certificates issued in connection with the transfer of such Mortgage Loans to the HarborView Mortgage Loan Trust 2005-11.

With respect to each Cooperative Loan the Seller, on behalf of the Depositor does hereby deliver to the Trustee the related Cooperative Loan Documents and the Seller will take (or cause the Servicer to take), at the expense of the Seller (with the cooperation of the Depositor, the Master Servicer and the Trustee, such actions as are necessary under applicable law (including but not limited to the relevant UCC) in order to perfect the interest of the Trustee in the related Mortgaged Property.

Assignments of each Mortgage with respect to each Mortgage Loan that is not a MERS Mortgage Loan (other than a Cooperative Loan) shall be recorded; *provided, however*, that such assignments need not be recorded if, in the Opinion of Counsel (which must be from Independent Counsel and not at the expense of the Trust or the Trustee) acceptable to the Trustee, each Rating Agency and the Master Servicer, recording in such states is not required to protect the Trustee's interest in the related Mortgage Loans; *provided, further*, notwithstanding the delivery of any Opinion of Counsel, each assignment of Mortgage shall be submitted for

recording by the Seller (or the Seller will cause the Servicer to submit each such assignment for recording), at the cost and expense of the Seller, in the manner described above, at no expense to the Trust or Trustee, upon the earliest to occur of (1) reasonable direction by the Majority Certificateholders, (2) the occurrence of a bankruptcy or insolvency relating to the Seller or the Depositor, or (3) with respect to any one Assignment of Mortgage, the occurrence of a bankruptcy, insolvency or foreclosure relating to the Mortgagor under the related Mortgage. Subject to the preceding sentence, as soon as practicable after the Closing Date (but in no event more than three months thereafter except to the extent delays are caused by the applicable recording office), the Seller shall properly record (or the Seller will cause the Servicer to properly record), at the expense of the Seller (with the cooperation of the Depositor, the Master Servicer and the Trustee (or the Custodian on behalf of the Trustee), in each public recording office where the related Mortgages are recorded, each assignment referred to in Section 2.01(v) above with respect to a Mortgage Loan that is not a MERS Mortgage Loan.

The Trustee agrees to execute and deliver to the Depositor on or prior to the Closing Date an acknowledgment of receipt of the original Mortgage Note for each Mortgage Loan (with any exceptions noted), substantially in the form attached as Exhibit G-1 hereto.

If the original lender's title insurance policy, or a certified copy thereof, was not delivered pursuant to Section 2.01(x) above, the Seller shall deliver or cause to be delivered to the Trustee the original or a copy of a written commitment or interim binder or preliminary report of title issued by the title insurance or escrow company, with the original or a certified copy thereof to be delivered to the Trustee, promptly upon receipt thereof, but in any case within 175 days of the Closing Date. The Seller shall deliver or cause to be delivered to the Trustee, promptly upon receipt thereof, any other documents constituting a part of a Mortgage File received with respect to any Mortgage Loan sold to the Depositor by the Seller, including, but not limited to, any original documents evidencing an assumption or modification of any Mortgage Loan.

For Mortgage Loans (if any) that have been prepaid in full after the Cut-off Date and prior to the Closing Date, in lieu of delivering the above documents, the Master Servicer shall deliver to the Trustee, or to the Custodian on behalf of the Trustee, prior to the first Distribution Date, an Officer's Certificate, based on information provided to the Master Servicer from the Servicer, which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the Distribution Account have been so deposited. All original documents that are not delivered to the Trustee on behalf of the Trust shall be held by the Master Servicer or the Servicer in trust for the Trustee, for the benefit of the Trust and the Certificateholders.

The Depositor herewith delivers to the Trustee an executed copy of the Mortgage Loan Purchase Agreement.

SECTION 2.02.  Acceptance by Trustee.

The Trustee hereby accepts its appointment as Custodian hereunder and acknowledges the receipt, subject to the provisions of Section 2.01 and subject to the review described below and any exceptions noted on the exception report described in the next paragraph below, of the

documents referred to in Section 2.01 above and all other assets included in the definition of "Trust Fund" and the Certificate Insurance Policy and declares that, in its capacity as Custodian, it holds and will hold such documents and the other documents delivered to it constituting a Mortgage File, and that it holds or will hold all such assets and such other assets included in the definition of "Trust Fund" in trust for the exclusive use and benefit of all present and future Certificateholders.

The Trustee further agrees, for the benefit of the Certificateholders, to review each Mortgage File delivered to it and to certify and deliver to the Depositor, the Seller and each Rating Agency an interim certification in substantially the form attached hereto as Exhibit G-2, within 90 days after the Closing Date (or, with respect to any document delivered after the Startup Day, within 45 days of receipt and with respect to any Qualified Substitute Mortgage, within five Business Days after the assignment thereof) that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan specifically identified in the exception report annexed thereto as not being covered by such certification), (i) all documents required to be delivered to it pursuant to Section 2.01 of this Agreement are in its possession, (ii) such documents have been reviewed by it and have not been mutilated, damaged or torn and relate to such Mortgage Loan and (iii) based on its examination and only as to the foregoing, the information set forth in the Mortgage Loan Schedule that corresponds to items (i), (ii) and (iii) of the Mortgage Loan Schedule accurately reflects information set forth in the Mortgage File. It is herein acknowledged that, in conducting such review, the Trustee is under no duty or obligation to inspect, review or examine any such documents, instruments, certificates or other papers to determine that they are genuine, enforceable, or appropriate for the represented purpose or that they have actually been recorded or that they are other than what they purport to be on their face.

No later than 180 days after the Closing Date, the Trustee shall deliver to the Depositor and the Seller a final certification in the form annexed hereto as Exhibit G-3 evidencing the completeness of the Mortgage Files, with any applicable exceptions noted thereon.

Upon the discovery by the Seller or the Depositor (or upon receipt by the Trustee of written notification of such breach) of a breach of any of the representations and warranties made by the Seller in the Mortgage Loan Purchase Agreement in respect of any Mortgage Loan that materially adversely affects such Mortgage Loan or the interests of the related Certificateholders or the Certificate Insurer in such Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties to this Agreement.

The Depositor and the Trustee intend that the assignment and transfer herein contemplated constitute a sale of the Mortgage Loans, the related Mortgage Notes and the related documents, conveying good title thereto free and clear of any liens and encumbrances, from the Depositor to the Trustee and that such property not be part of the Depositor's estate or property of the Depositor in the event of any insolvency by the Depositor. In the event that such conveyance is deemed to be, or to be made as security for, a loan, the parties intend that the Depositor shall be deemed to have granted and does hereby grant to the Trustee a first priority perfected security interest in all of the Depositor's right, title and interest in and to the Mortgage Loans, the related Mortgage Notes and the related documents, and that this Agreement shall constitute a security agreement under applicable law.

63

SECTION 2.03. Repurchase or Substitution of Mortgage Loans by the Originators and the Seller.

(a) Upon its discovery or receipt of written notice of any materially defective document in, or that a document is missing from, a Mortgage File or of the breach by the related Originator of any representation, warranty or covenant under the related Purchase Agreement in respect of any Mortgage Loan which materially adversely affects the value of that Mortgage Loan or the interest therein of the Certificateholders or the Certificate Insurer, the Trustee shall promptly notify such Originator of such defect, missing document or breach and request that such Originator deliver such missing document or cure such defect or breach within 90 days from the date that the Seller was notified of such missing document, defect or breach, and if such Originator does not deliver such missing document or cure such defect or breach in all material respects during such period, the Trustee shall enforce such Originator's obligation under the related Purchase Agreement and cause such Originator to repurchase that Mortgage Loan from the Trust Fund at the Repurchase Price (as defined in the related Purchase Agreement) on or prior to the Determination Date following the expiration of such 90 day period. It is understood and agreed that the obligation of the related Originator to cure or to repurchase (or to substitute for) any Mortgage Loan as to which a document is missing, a material defect in a constituent document exists or as to which such a breach has occurred and is continuing shall constitute the sole remedy against such Originator respecting such omission, defect or breach available to the Trustee on behalf of the Certificateholders.

(b) Upon discovery or receipt of written notice of the breach by the Seller of any representation, warranty or covenant under the Mortgage Loan Purchase Agreement or in Section 2.04 or Section 2.08 hereof in respect of any Mortgage Loan which materially adversely affects the value of that Mortgage Loan or the interest therein of the Certificateholders or the Certificate Insurer, the Trustee (or the Custodian as its designated agent) shall promptly notify the Seller of such breach and request that the Seller cure such breach within 90 days from the date that the Seller was notified of such breach, and if the Seller does not cure such breach in all material respects during such period, the Trustee shall enforce the Seller's obligation under the Mortgage Loan Purchase Agreement and cause the Seller to repurchase that Mortgage Loan from the Trust Fund at the Purchase Price on or prior to the Determination Date following the expiration of such 90 day period (subject to Section 2.03(e) below); *provided, however,* that, in connection with any such breach that could not reasonably have been cured within such 90 day period, if the Seller shall have commenced to cure such breach within such 90 day period, the Seller shall be permitted to proceed thereafter diligently and expeditiously to cure the same within the additional period provided under the Mortgage Loan Purchase Agreement; and, *provided further*, that, in the case of the breach of any representation, warranty or covenant made by the Seller in Section 2.04 hereof, the Seller shall be obligated to cure such breach or purchase the affected Mortgage Loans for the Purchase Price or, if the Mortgage Loan or the related Mortgaged Property acquired with respect thereto has been sold, then the Seller shall pay, in lieu of the Purchase Price, any excess of the Purchase Price over the Net Liquidation Proceeds received upon such sale.

(c) The Purchase Price or Repurchase Price (as defined in the related Purchase Agreement) for a Mortgage Loan purchased or repurchased under this Section 2.03 or such other amount due shall be deposited in the Distribution Account on or prior to the next Determination

MNNYIMANAGE 65986v12

Date after the Seller's or the related Originator's obligation to repurchase such Mortgage Loan arises. The Trustee, upon receipt of written certification from the Master Servicer of the related deposit in the Distribution Account, shall release to the Seller or the related Originator, as applicable, the related Mortgage File and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, as the Seller or the related Originator, as applicable, shall furnish to it and as shall be necessary to vest in the Seller or the related Originator, as applicable, any Mortgage Loan released pursuant hereto and the Trustee shall have no further responsibility with regard to such Mortgage File (it being understood that the Trustee shall have no responsibility for determining the sufficiency of such assignment for its intended purpose).

(d) Notwithstanding anything to the contrary set forth above and subject to (i) below, with respect to any breach by the Seller of a representation or warranty made by the Seller herein or in the Mortgage Loan Purchase Agreement that materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans or the interest therein of the Certificateholders or the Certificate Insurer, if the Seller would not be in breach of such representation or warranty but for a breach by an Originator of a representation and warranty made by such Originator in the related Purchase Agreement, then such Originator thereunder, in the manner and to the extent set forth therein, and not the Seller, hereunder shall be required to remedy such breach.

The Trustee shall enforce the obligations of the Seller under the Mortgage Loan Purchase Agreement including, without limitation, any obligation of the Seller to purchase a Mortgage Loan on account of a breach of a representation, warranty or covenant as described in this Section 2.03(b).

(e) If pursuant to the provisions of Section 2.03(b), the Seller repurchases or otherwise removes from the Trust Fund a Mortgage Loan that is a MERS Mortgage Loan, the Seller shall take (or shall cause the Servicer to take), at the expense of the Seller (with the cooperation of the Depositor, the Master Servicer and the Trustee), such actions as are necessary either (i) cause MERS to execute and deliver an Assignment of Mortgage in recordable form to transfer the Mortgage from MERS to the Seller and shall cause such Mortgage to be removed from registration on the MERS® System in accordance with MERS' rules and regulations or (ii) cause MERS to designate on the MERS® System the Seller or its designee as the beneficial holder of such Mortgage Loan.

(f) [Reserved].

(g) Any substitution of Qualified Substitute Mortgage Loans for Deleted Mortgage Loans made pursuant to Section 2.03(a) above must be effected prior to the last Business Day that is within two years after the Closing Date. As to any Deleted Mortgage Loan for which the Seller substitutes a Qualified Substitute Mortgage Loan or Loans, such substitution shall be effected by the Seller delivering to the Custodian, on behalf of the Trustee, for such Qualified Substitute Mortgage Loan or Loans, the Mortgage Note, the Mortgage, the Assignment to the Trustee, and such other documents and agreements, with all necessary endorsements thereon, as are required by Section 2.01 hereof, together with an Officers' Certificate stating that each such Qualified Substitute Mortgage Loan satisfies the definition thereof and specifying the Substitution Adjustment (as described below), if any, in connection with such substitution; *provided,*

65

*however,* that, in the case of any Qualified Substitute Mortgage Loan that is a MERS Mortgage Loan, the Seller shall provide such documents and take such other action with respect to such Qualified Substitute Mortgage Loans as are required pursuant to Section 2.01 hereof. The Custodian, on behalf of the Trustee, shall acknowledge receipt for such Qualified Substitute Mortgage Loan or Loans and, within five Business Days thereafter, shall review such documents as specified in Section 2.02 hereof and deliver to the Servicer, with respect to such Qualified Substitute Mortgage Loan or Loans, a certification substantially in the form attached hereto as Exhibit G-2, with any exceptions noted thereon. Within 180 days of the date of substitution, the Custodian, on behalf of the Trustee, shall deliver to the Seller and the Master Servicer a certification substantially in the form of Exhibit G-3 hereto with respect to such Qualified Substitute Mortgage Loan or Loans, with any exceptions noted thereon. Monthly Payments due with respect to Qualified Substitute Mortgage Loans in the month of substitution are not part of the Trust Fund and will be retained by the Seller. For the month of substitution, distributions to Certificateholders will reflect the collections and recoveries in respect of such Deleted Mortgage Loan in the Due Period preceding the month of substitution and the Depositor or the Seller, as the case may be, shall thereafter be entitled to retain all amounts subsequently received in respect of such Deleted Mortgage Loan. The Seller shall give or cause to be given written notice to the Certificateholders that such substitution has taken place, shall amend the Mortgage Loan Schedule to reflect the removal of such Deleted Mortgage Loan from the terms of this Agreement and the substitution of the Qualified Substitute Mortgage Loan or Loans and shall deliver a copy of such amended Mortgage Loan Schedule to the Trustee. Upon such substitution, such Qualified Substitute Mortgage Loan or Loans shall constitute part of the Trust Fund and shall be subject in all respects to the terms of this Agreement and, in the case of a substitution effected by the Seller, the Mortgage Loan Purchase Agreement, including, in the case of a substitution effected by the Seller all representations and warranties thereof included in the Mortgage Loan Purchase Agreement and all representations and warranties thereof set forth in Section 2.04 hereof, in each case as of the date of substitution.

For any month in which the Seller substitutes one or more Qualified Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Seller shall determine, and provide written certification to the Trustee and the Seller as to the amount (each, a "**Substitution Adjustment**"), if any, by which the aggregate Purchase Price of all such Deleted Mortgage Loans exceeds the aggregate, as to each such Qualified Substitute Mortgage Loan, of the principal balance thereof as of the date of substitution, together with one month's interest on such principal balance at the applicable Net Loan Rate. On or prior to the next Determination Date after the Seller's obligation to repurchase the related Deleted Mortgage Loan arises, the Seller will deliver or cause to be delivered to the Master Servicer for deposit in the Distribution Account an amount equal to the related Substitution Adjustment, if any, and the Custodian, on behalf of the Trustee, upon receipt of the related Qualified Substitute Mortgage Loan or Loans, shall release to the Seller the related Mortgage File or Files and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, as the Seller shall deliver to it and as shall be necessary to vest therein any Deleted Mortgage Loan released pursuant hereto.

In addition, the Seller shall obtain at its own expense and deliver to the Trustee and the Securities Administrator an Opinion of Counsel to the effect that such substitution (either specifically or as a class of transactions) will not cause an Adverse REMIC Event. If such

66

Opinion of Counsel cannot be delivered, then such substitution may only be effected at such time as the required Opinion of Counsel can be given.

(h) Upon discovery by the Seller, the Depositor or the Trustee that any Mortgage Loan does not constitute a "qualified mortgage" within the meaning of Section 860G(a)(3) of the Code, the party discovering such fact shall within two Business Days give written notice thereof to the other parties. In connection therewith, the Seller shall repurchase or, subject to the limitations set forth in Section 2.03(e), substitute one or more Qualified Substitute Mortgage Loans for the affected Mortgage Loan within 90 days of the earlier of discovery or receipt of such notice with respect to such affected Mortgage Loan. Any such repurchase or substitution shall be made in the same manner as set forth in Section 2.03(b) above, if made by the Seller. The Trustee shall reconvey to the Seller the Mortgage Loan to be released pursuant hereto in the same manner, and on the same terms and conditions, as it would a Mortgage Loan repurchased for breach of a representation or warranty.

(i) Notwithstanding the foregoing, to the extent that any fact, condition or event with respect to a Mortgage Loan constitutes a breach of both (i) a representation or warranty of an Originator under the applicable Purchase Agreement and (ii) a representation or warranty of the Seller under this Agreement, in each case, which materially adversely affects the value of such Mortgage Loan or the interest therein of the Certificateholders, the Trustee shall first request that the applicable Originator cure such breach or repurchase such Mortgage Loan and if such Originator fails to cure such breach or repurchase such Mortgage Loan within 60 days of receipt of such request from the Trustee, the Trustee shall then request that the Seller cure such breach or repurchase such Mortgage Loans.

In addition to the foregoing, within 120 days of the earlier of discovery by the Seller or receipt of notice by the Seller of (i) the breach of any representation or warranty of any Originator under the applicable Purchase Agreement which materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in any of the Mortgage Loans and for which such Originator has failed to cure such breach in accordance with the terms of the related Purchase Agreement and (ii)(a) the fact that such Originator is no longer an operating company or (b) an Officers' Certificate certifying to the fact that such Originator is financially unable to cure such breach pursuant to the terms of the Purchase Agreement, the Seller shall repurchase or substitute for such Mortgage Loan in accordance with this Section 2.03 of this Agreement. Such obligation of the Seller shall continue until such time that the Rating Agencies inform the Depositor and the Seller in writing that such obligation is no longer required in order for the Rating Agencies to maintain their then-current ratings on the Certificates and the Certificate Insurer consents in writing to the removal of such obligation.

SECTION 2.04. Representations and Warranties of the Seller with Respect to the Mortgage Loans.

The Seller hereby makes the following representations and warranties to the Trustee on behalf of the Certificateholders and the Certificate Insurer as of the Closing Date with respect to the Mortgage Loans:

MNNYIMANAGE 65986v12

(i)    Each Mortgage Loan at the time it was made complied in all material respects with applicable local, state, and federal laws, including, but not limited to, all applicable predatory and abusive lending laws.

(ii)    No Mortgage Loan is a "High Cost Loan" or "Covered Loan," as applicable, (as such terms are defined in the then current Standard & Poor's LEVELS® Glossary, Appendix E, in effect as of the Closing Date) and no Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act;

(iii)    With respect to each representation and warranty with respect to any Mortgage Loan made by the related Originator in the related Purchase Agreement that is made as of the related Closing Date (as defined in the related Purchase Agreement), to the Seller's knowledge, no event has occurred since the related Closing Date (as defined in the related Purchase Agreement) that would render such representations and warranties to be untrue in any material respect as of the Closing Date; and

(iv)    [Reserved].

With respect to the representations and warranties in this Section 2.04 that are made to the Seller's knowledge or as to which the Seller has no knowledge, if it is discovered by the Depositor, the Seller, the Certificate Insurer or the Trustee that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loan or the interest therein of the Certificateholders then, notwithstanding the Seller's lack of knowledge with respect to the substance of such representation and warranty being inaccurate at the time the representation or warranty was made, such inaccuracy shall be deemed a breach of the applicable representation or warranty.

It is understood and agreed that the representations and warranties in this Section 2.04 shall survive delivery of the Mortgage Files to the Trustee and shall inure to the benefit of the Certificateholders notwithstanding any restrictive or qualified endorsement or assignment. Upon discovery by any of the Depositor, the Seller, the Certificate Insurer or the Trustee of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of any Mortgage Loan or the interests therein of the Certificateholders, the party discovering such breach shall give prompt written notice to the other parties, and in no event later than two Business Days from the date of such discovery. It is understood and agreed that the obligations of the Seller set forth in Section 2.03(b) hereof to cure, substitute for or repurchase a related Mortgage Loan pursuant to the Mortgage Loan Purchase Agreement constitute the sole remedies available to the Certificateholders or to the Trustee on their behalf respecting a breach of the representations and warranties incorporated in this Section 2.04.

SECTION 2.05.    [Reserved].

SECTION 2.06.    Representations and Warranties of the Depositor.

The Depositor represents and warrants to the Trustee, the Master Servicer, the Certificate Insurer and the Securities Administrator on behalf of the Certificateholders as follows: