(i)     this agreement constitutes a legal, valid and binding obligation of the Depositor, enforceable against the Depositor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect affecting the enforcement of creditors' rights in general an except as such enforceability may be limited by general principles of equity (whether considered in a proceeding at law or in equity);

(ii)     immediately prior to the sale and assignment by the Depositor to the Trustee on behalf of the Trust of each Mortgage Loan, the Depositor had good and marketable title to each Mortgage Loan (insofar as such title was conveyed to it by the Seller) subject to no prior lien, claim, participation interest, mortgage, security interest, pledge, charge or other encumbrance or other interest of any nature;

(iii)     as of the Closing Date, the Depositor has transferred all right, title and interest in the Mortgage Loans to the Trustee on behalf of the Trust;

(iv)     the Depositor has not transferred the Mortgage Loans to the Trustee on behalf of the Trust with any intent to hinder, delay or defraud any of its creditors;

(v)     the Depositor has been duly incorporated and is validly existing as a corporation in good standing under the laws of Delaware, with full corporate power and authority to own its assets and conduct its business as presently being conducted;

(vi)     the Depositor is not in violation of its certificate of incorporation or by-laws or in default in the performance or observance of any material obligation, agreement, covenant or condition contained in any contract, indenture, mortgage, loan agreement, note, lease or other instrument to which the Depositor is a party or by which it or its properties may be bound, which default might result in any material adverse changes in the financial condition, earnings, affairs or business of the Depositor or which might materially and adversely affect the properties or assets, taken as a whole, of the Depositor;

(vii)     the execution, delivery and performance of this Agreement by the Depositor, and the consummation of the transactions contemplated hereby, do not and will not result in a material breach or violation of any of the terms or provisions of, or, to the knowledge of the Depositor, constitute a default under, any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which the Depositor is a party or by which the Depositor is bound or to which any of the property or assets of the Depositor is subject, nor will such actions result in any violation of the provisions of the certificate of incorporation or by-laws of the Depositor or, to the best of the Depositor's knowledge without independent investigation, any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over the Depositor or any of its properties or assets (except for such conflicts, breaches, violations and defaults as would not have a material adverse effect on the ability of the Depositor to perform its obligations under this Agreement);

(viii)   to the best of the Depositor's knowledge without any independent investigation, no consent, approval, authorization, order, registration or qualification of or with any court or governmental agency or body of the United States or any other jurisdiction is required for the issuance of the Certificates, or the consummation by the Depositor of the other transactions contemplated by this Agreement, except such consents, approvals, authorizations, registrations or qualifications as (a) may be required under State securities or "blue sky" laws, (b) have been previously obtained or (c) the failure of which to obtain would not have a material adverse effect on the performance by the Depositor of its obligations under, or the validity or enforceability of, this Agreement; and

(ix)   there are no actions, proceedings or investigations pending before or, to the Depositor's knowledge, threatened by any court, administrative agency or other tribunal to which the Depositor is a party or of which any of its properties is the subject: (a) which if determined adversely to the Depositor would have a material adverse effect on the business, results of operations or financial condition of the Depositor; (b) asserting the invalidity of this Agreement or the Certificates; (c) seeking to prevent the issuance of the Certificates or the consummation by the Depositor of any of the transactions contemplated by this Agreement, as the case may be; or (d) which might materially and adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of, this Agreement.

SECTION 2.07.   Issuance of Certificates.

The Trustee acknowledges the assignment to it of the Mortgage Loans and the delivery to it of the Mortgage Files, subject to the provisions of Sections 2.01 and 2.02 hereof, together with the assignment to it of all other assets included in the Trust Fund, receipt of which is hereby acknowledged. Concurrently with such assignment and delivery and in exchange therefor, the Trustee, pursuant to the written request of the Depositor executed by an officer of the Depositor, has caused to be executed, authenticated and delivered to or upon the order of the Depositor, the Certificates in authorized denominations. The interests evidenced by the Certificates constitute the entire beneficial ownership interest in the Trust Fund.

SECTION 2.08.   Representations and Warranties of the Seller.

The Seller hereby represents and warrants to the Trustee on behalf of the Certificateholders and the Certificate Insurer that, as of the Closing Date or as of such date specifically provided herein:

(i)   The Seller is duly organized, validly existing and in good standing and has the power and authority to own its assets and to transact the business in which it is currently engaged. The Seller is duly qualified to do business and is in good standing in each jurisdiction in which the character of the business transacted by it or properties owned or leased by it requires such qualification and in which the failure to so qualify would have a material adverse effect on (a) its business, properties, assets or condition

70

(financial or other), (b) the performance of its obligations under this Agreement, or (c) the value or marketability of the Mortgage Loans.

(ii)     The Seller has the power and authority to make, execute, deliver and perform this Agreement and to consummate all of the transactions contemplated hereunder and has taken all necessary action to authorize the execution, delivery and performance of this Agreement which is part of its official records. When executed and delivered, this Agreement will constitute the Seller's legal, valid and binding obligations enforceable in accordance with its terms, except as enforcement of such terms may be limited by (1) bankruptcy, insolvency, reorganization, receivership, moratorium or similar laws affecting the enforcement of creditors' rights generally and the rights of creditors of federally insured financial institutions and by the availability of equitable remedies, (2) general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law) or (3) public policy considerations underlying the securities laws, to the extent that such policy considerations limit the enforceability of the provisions of this Agreement which purport to provide indemnification from securities laws liabilities.

(iii)    The Seller holds all necessary licenses, certificates and permits from all governmental authorities necessary for conducting its business as it is currently conducted. It is not required to obtain the consent of any other party or any consent, license, approval or authorization from, or registration or declaration with, any governmental authority, bureau or agency in connection with the execution, delivery, performance, validity or enforceability of this Agreement, except for such consents, licenses, approvals or authorizations, or registrations or declarations as shall have been obtained or filed, as the case may be, prior to the Closing Date.

(iv)    The execution, delivery and performance of this Agreement by the Seller will not conflict with or result in a breach of, or constitute a default under, any provision of any existing law or regulation or any order or decree of any court applicable to the Seller or any of its properties or any provision of its articles of incorporation, charter or by-laws, or constitute a material breach of, or result in the creation or imposition of any lien, charge or encumbrance upon any of its properties pursuant to any mortgage, indenture, contract or other agreement to which it is a party or by which it may be bound.

(v)     No certificate of an officer, written statement or written report delivered pursuant to the terms hereof of the Seller contains any untrue statement of a material fact or omits to state any material fact necessary to make the certificate, statement or report not misleading.

(vi)    The transactions contemplated by this Agreement are in the ordinary course of the Seller's business.

(vii)   The Seller is not insolvent, nor will the Seller be made insolvent by the transfer of the Mortgage Loans to the Depositor, nor is the Seller aware of any pending insolvency of the Seller.

(viii)    The Seller is not in violation of, and the execution and delivery of this Agreement by the Seller and its performance and compliance with the terms of this Agreement will not constitute a violation with respect to, any order or decree of any court, or any order or regulation of any federal, state, municipal or governmental agency having jurisdiction, which violation would materially and adversely affect the Seller's financial condition (financial or otherwise) or operations, or materially and adversely affect the performance of any of its duties hereunder.

(ix)    There are no actions or proceedings against the Seller, or pending or, to its knowledge, threatened, before any court, administrative agency or other tribunal; nor, to the Seller's knowledge, are there any investigations (i) that, if determined adversely, would prohibit the Seller from entering into this Agreement, (ii) seeking to prevent the consummation of any of the transactions contemplated by this Agreement or (iii) that, if determined adversely, would prohibit or materially and adversely affect the Seller's ability to perform any of its respective obligations under, or the validity or enforceability of, this Agreement.

(x)    The Seller did not transfer the Mortgage Loans to the Depositor with any intent to hinder, delay or defraud any of its creditors.

(xi)    The Seller acquired title to the Mortgage Loans in good faith, without notice of any adverse claims.

(xii)    The transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller to the Depositor are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction.

SECTION 2.09.  Covenants of the Seller.

The Seller hereby covenants that, except for the transfer hereunder, the Seller will not sell, pledge, assign or transfer to any other Person, or grant, create, incur, assume or suffer to exist any lien on any Mortgage Loan, or any interest therein; the Seller will notify the Trustee, as assignee of the Depositor, and the Master Servicer of the existence of any lien on any Mortgage Loan immediately upon discovery thereof, and the Seller will defend the right, title and interest of the Trustee, as assignee of the Depositor, in, to and under the Mortgage Loans, against all claims of third parties claiming through or under the Seller; *provided, however*, that nothing in this Section 2.09 shall prevent or be deemed to prohibit the Seller from suffering to exist upon any of the Mortgage Loans any liens for municipal or other local taxes and other governmental charges if such taxes or governmental charges shall not at the time be due and payable or if the Seller shall currently be contesting the validity thereof in good faith by appropriate proceedings and shall have set aside on its books adequate reserves with respect thereto.

MNNYIMANAGE 65986v12

## ARTICLE III

## ADMINISTRATION AND MASTER SERVICING OF THE MORTGAGE LOANS

SECTION 3.01.  Master Servicer to Service and Administer the Mortgage Loans.

The Master Servicer shall supervise, monitor and oversee the obligation of the Servicer to service and administer the Mortgage Loans in accordance with the terms of the Servicing Agreement and shall have full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing and administration.    In performing its obligations hereunder, the Master Servicer shall act in a manner consistent with Accepted Master Servicing Practices.    Furthermore, the Master Servicer shall oversee and consult with the Servicer as necessary from time-to-time to carry out the Master Servicer's obligations hereunder, shall receive, review and evaluate all reports, information and other data provided to the Master Servicer by the Servicer and shall cause the Servicer to perform and observe the covenants, obligations and conditions to be performed or observed by the Servicer under the Servicing Agreement.  The Master Servicer shall independently and separately monitor the Servicer's servicing activities with respect to each related Mortgage Loan, reconcile the results of such monitoring with such information provided in the previous sentence on a monthly basis and coordinate corrective adjustments to the Servicer's and Master Servicer's records, and based on such reconciled and corrected information, prepare the Remittance Report and any other information and statements required of the Master Servicer hereunder.  Notwithstanding any provision of this Agreement or any Servicing Agreement to the contrary, the Master Servicer shall have no duty or obligation to supervise, monitor or oversee the activities of, or to enforce the obligations of the Servicer under its Servicing Agreement with respect to any Additional Collateral, including, without limitation, the collection of any amounts owing to the Trust Fund in respect thereof (unless and until the Master Servicer shall have assumed the obligations of the Servicer as successor servicer under the Servicing Agreement pursuant to this Section 3.01, in which case, as successor servicer, it shall be bound to serve and administer the Additional Collateral in accordance with the provisions of the Servicing Agreement).

The Trustee shall furnish the Servicer and the Master Servicer with any limited powers of attorney and other documents in form acceptable to the Trustee, necessary or appropriate to enable the Servicer and the Master Servicer to service and administer the related Mortgage Loans and REO Property, which limited powers of attorney shall provide that the Trustee will not be liable for the actions or omissions of the Servicer or Master Servicer in exercising such powers.

The Trustee shall provide access to the records and documentation in possession of the Trustee (including in its capacity as Custodian hereunder) regarding the related Mortgage Loans and REO Property and the servicing thereof to the Certificateholders, the FDIC, and the supervisory agents and examiners of the FDIC, such access being afforded only upon reasonable prior written request and during normal business hours at the office of the Trustee; *provided, however*, that, unless otherwise required by law, the Trustee shall not be required to provide access to such records and documentation if the provision thereof would violate the legal right to privacy of any Mortgagor.  The Trustee shall allow representatives of the above entities to photocopy any of the records and documentation and shall provide equipment for that purpose at a charge that covers the Trustee's actual costs.

73

The Trustee shall execute and deliver to the Servicer and the Master Servicer any court pleadings, requests for trustee's sale or other documents necessary or desirable to (i) the foreclosure or trustee's sale with respect to a Mortgaged Property; (ii) any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage; (iii) obtain a deficiency judgment against the Mortgagor; or (iv) enforce any other rights or remedies provided by the Mortgage Note or Mortgage or otherwise available at law or equity.

SECTION 3.02. REMIC-Related Covenants.

For as long as any REMIC created hereunder shall exist, the Trustee and the Securities Administrator shall act in accordance herewith to assure continuing treatment of such REMIC as a REMIC, and the Trustee and the Securities Administrator shall comply with any directions of the Depositor, the Servicer or the Master Servicer to assure such continuing treatment. In particular, the Trustee shall not (a) sell or permit the sale of all or any portion of the Mortgage Loans or of any investment of deposits in an Account unless such sale is as a result of a repurchase of the Mortgage Loans pursuant to this Agreement or the Trustee has received a REMIC Opinion prepared at the expense of the Trust; and (b) other than with respect to a substitution pursuant to the Mortgage Loan Purchase Agreement or Section 2.04 of this Agreement, as applicable, accept any contribution to any REMIC after the Startup Day without receipt of a REMIC Opinion.

SECTION 3.03. Monitoring of Servicer.

(a) The Master Servicer shall be responsible for reporting to the Trustee (on behalf of the Trust) and the Depositor the compliance by the Servicer with its duties under the Servicing Agreement. In the review of the Servicer's activities, the Master Servicer may rely upon an officer's certificate of the Servicer with regard to the Servicer's compliance with the terms of its Servicing Agreement. In the event that the Master Servicer, in its judgment, determines that the Servicer should be terminated in accordance with its Servicing Agreement, or that a notice should be sent pursuant to the Servicing Agreement with respect to the occurrence of an event that, unless cured, would constitute grounds for such termination, the Master Servicer shall notify the Depositor, the Trustee and the Servicing Rights Owner thereof, and the Master Servicer shall issue such notice or take such other action as it deems appropriate and is consistent with Section 3.03(b).

(b) The Master Servicer, for the benefit of the Trust and the Certificateholders, shall enforce the obligations of the Servicer under the Servicing Agreement. In the event that the Servicer fails to perform its obligations in accordance with the Servicing Agreement, subject to the paragraph (a) above, the Master Servicer shall terminate the rights and obligations of the Servicer thereunder and the Master Servicer shall act as servicer of the related Mortgage Loans or enter into a new Servicing Agreement with a successor Servicer that is an Acceptable Successor Servicer selected by the Master Servicer. Such successor Servicer shall certify to the Trustee that such successor Servicer is an Acceptable Successor Servicer and the Master Servicer shall cause the Trustee to acknowledge such successor Servicer; *provided, however,* it is understood and acknowledged by the parties hereto that (i) there will be a period of transition (not to exceed 90 days) before the actual servicing functions can be fully transferred to such

74

successor Servicer and (ii) during the period in which any successor Servicer appointed by the Master Servicer services the related Mortgage Loans, notwithstanding anything to the contrary in this Agreement or the Servicing Agreement, (a) such successor Servicer, including the Master Servicer if it is the successor Servicer, shall be entitled to retain the full amount of the Servicing Fee for such Mortgage Loans, and the Servicing Rights Owner shall not be entitled to any part of the Servicing Fee with respect to such Mortgage Loans and (b) such successor Servicer must assume all of the obligations of the terminated Servicer under the Servicing Agreement. Such enforcement, including, without limitation, the legal prosecution of claims, termination of Servicing Agreement and the pursuit of other appropriate remedies, shall be in such form and carried out to such an extent and at such time as the Master Servicer, in its good faith business judgment, would require were it the owner of the related Mortgage Loans. The Master Servicer shall pay the costs of such enforcement at its own expense, provided that the Master Servicer shall not be required to prosecute or defend any legal action except to the extent that the Master Servicer shall have received reasonable indemnity for its costs and expenses in pursuing such action from the Trust Fund. Notwithstanding anything to the contrary herein, upon the termination of the Servicer for any reason whatsoever, the Servicing Rights Owner, as owner of the related Servicing Rights, shall at all times have the right to present the Master Servicer with a successor Servicer which the Master Servicer will not unreasonably fail to select as the successor Servicer, assuming that the Servicer is an Acceptable Successor Servicer and that the Servicer will assume all of the obligations of the terminated Servicer under the Servicing Agreement. The Trustee shall have no duty, and shall not be required, to review the terms of such assumption under the Servicing Agreement.

(c) To the extent that the costs and expenses of the Master Servicer related to any termination of the Servicer, appointment of a successor Servicer or the transfer and assumption of servicing by the Master Servicer or a successor Servicer with respect to any Servicing Agreement (including, without limitation, (i) all legal costs and expenses and all due diligence costs and expenses associated with an evaluation of the potential termination of the Servicer as a result of an event of default by the Servicer and (ii) all costs and expenses associated with the complete transfer of servicing, including all servicing files and all servicing data and the completion, correction or manipulation of such servicing data as may be required by the successor servicer to correct any errors or insufficiencies in the servicing data or otherwise to enable the successor service to service the Mortgage Loans in accordance with the Servicing Agreement) are not fully and timely reimbursed by the terminated Servicer (or, solely with respect to a termination of the Servicer without cause, the Servicing Rights Owner), the Master Servicer shall be entitled to reimbursement of such costs and expenses from the Distribution Account.

(d) The Master Servicer shall require the Servicer to comply with the remittance requirements and other obligations set forth in the Servicing Agreement.

(e) If the Master Servicer acts as Servicer, it will not assume liability for the representations and warranties of the predecessor Servicer, if any, that it replaces or for any errors, acts or omissions of such predecessor Servicer occurring prior to the termination of the Servicer; *provided, however*, the Master Servicer shall not be relieved of its liability, if any, as Master Servicer under this Section 3.03(e).

MNNYIMANAGE 65986v12

(f) It is understood and acknowledged by the parties hereto that, under the Servicing Agreement, the Servicer has the right to resign as the Servicer under the Servicing Agreement, provided that such resignation shall not become effective until (i) the Servicing Rights Owner has consented to such resignation, and (ii) a successor Servicer is appointed which (a) is an Acceptable Successor Servicer and (b) which has assumed all of the obligations of the terminated Servicer under the Servicing Agreement.

(g) It is understood and acknowledged by the parties hereto that, subject to the provisions of Section 3.03(b) of this Agreement, under the Servicing Agreement, the Servicing Rights Owner has the right to terminate the Servicer, without cause, as provided and subject to the limitations of the Servicing Agreement; provided that such termination shall not become effective until a successor Servicer is appointed which (a) is an Acceptable Successor Servicer and (b) which has assumed all of the obligations of the terminated Servicer under the Servicing Agreement. Any termination fees owed to the terminated Servicer and any reasonable costs and expenses of the Master Servicer incurred in connection with such termination and transfer of servicing shall be paid by the Servicing Rights Owner.

SECTION 3.04. Fidelity Bond.

The Master Servicer, at its expense, shall maintain in effect a blanket fidelity bond and an errors and omissions insurance policy, affording coverage with respect to all directors, officers, employees and other Persons acting on such Master Servicer's behalf, and covering errors and omissions in the performance of the Master Servicer's obligations hereunder. The errors and omissions insurance policy and the fidelity bond shall be in such form and amount generally acceptable for entities serving as master servicers or trustees.

SECTION 3.05. Power to Act; Procedures.

The Master Servicer shall master service the Mortgage Loans and shall have full power and authority, subject to the REMIC Provisions and the provisions of Article X hereof, to do any and all things that it may deem necessary or desirable in connection with the master servicing and administration of the Mortgage Loans, including but not limited to the power and authority (i) to execute and deliver, on behalf of the Certificateholders, the Trust and the Trustee, customary consents or waivers and other instruments and documents, (ii) to consent to transfers of any Mortgaged Property and assumptions of the Mortgage Notes and related Mortgages, (iii) to collect any Insurance Proceeds and Liquidation Proceeds, and (iv) to effectuate, either in its own name on behalf of the Trust, or in the name of the Trust, foreclosure or other conversion of the ownership of the Mortgaged Property securing any Mortgage Loan, in each case, in accordance with the provisions of this Agreement and the Servicing Agreement, as applicable; *provided, however*, that the Master Servicer shall not (and, consistent with its responsibilities under Section 3.03, shall not permit the Servicer to) knowingly or intentionally take any action, or fail to take (or fail to cause to be taken) any action reasonably within its control and the scope of duties more specifically set forth herein, that, under the REMIC Provisions, if taken or not taken, as the case may be, would cause an Adverse REMIC Event unless the Master Servicer has received an Opinion of Counsel (but not at the expense of the Master Servicer) to the effect that the contemplated action will not cause the REMIC created hereunder to fail to qualify as a

REMIC or result in the imposition of a tax upon such REMIC created hereunder. The Trustee shall furnish the Master Servicer, upon written request from a Servicing Officer, with any limited powers of attorney empowering the Master Servicer or the Servicer to execute and deliver instruments of satisfaction or cancellation, or of partial or full release or discharge, and to foreclose upon or otherwise liquidate Mortgaged Property, and to appeal, prosecute or defend in any court action relating to the Mortgage Loans or the Mortgaged Property, in accordance with the Servicing Agreement and this Agreement, and the Trustee shall execute and deliver such other documents, as the Master Servicer may request, to enable the Master Servicer to master service and administer the Mortgage Loans and carry out its duties hereunder, in each case in accordance with Accepted Master Servicing Practices (and the Trustee shall have no liability for misuse of any such powers of attorney by the Master Servicer or the Servicer). In instituting foreclosures or similar proceedings, the Master Servicer shall institute such proceedings either in its own name on behalf of the Trust, or in the name of the Trust (or cause the Servicer, pursuant to the Servicing Agreement, to institute such proceedings either in the name of the Servicer on behalf of the Trust, or in the name of the Trust), unless otherwise required by law or otherwise appropriate. If the Master Servicer or the Trustee has been advised that it is likely that the laws of the state in which action is to be taken prohibit such action if taken in the name of the Trust or the Trustee on behalf of the Trust or that the Trust or the Trustee would be adversely affected under the "doing business" or tax laws of such state if such action is taken in its name, the Master Servicer shall join with the Trustee, on behalf of the Trust, in the appointment of a co-trustee pursuant to Section 8.10 hereof. In the performance of its duties hereunder, the Master Servicer shall be an independent contractor and shall not, except in those instances where it is taking action in the name of the Trustee, be deemed to be the agent of the Trustee.

SECTION 3.06. Due-on-Sale Clauses; Assumption Agreements.

To the extent provided in the Servicing Agreement and to the extent Mortgage Loans contain enforceable due-on-sale clauses, the Master Servicer shall cause the Servicer to enforce such clauses in accordance with the Servicing Agreement. If applicable law prohibits the enforcement of a due-on-sale clause or such clause is otherwise not enforced in accordance with the Servicing Agreement, and, as a consequence, a Mortgage Loan is assumed, the original Mortgagor may be released from liability in accordance with the Servicing Agreement.

SECTION 3.07. Release of Mortgage Files.

(a) Upon becoming aware of the payment in full of any Mortgage Loan, or the receipt by the Servicer of a notification that payment in full has been escrowed in a manner customary for such purposes for payment to Certificateholders on the next Distribution Date, the Master Servicer shall cause the Servicer to, if required under the Servicing Agreement, promptly furnish to the Custodian, on behalf of the Trustee, two copies of a certification substantially in the form of Exhibit F hereto signed by a Servicing Officer or in a mutually agreeable electronic format which will, in lieu of a signature on its face, originate from a Servicing Officer (which certification shall include a statement to the effect that all amounts received in connection with such payment that are required to be deposited in the related Servicing Account maintained by the Servicer pursuant to Section 4.01 or by the Servicer pursuant to its Servicing Agreement have been or will be so deposited) and shall request that the Trustee (or the Custodian, on behalf of the

77

Trustee) deliver to the Servicer the related Mortgage File. Upon receipt of such certification and request, the Trustee (or the Custodian, on behalf of the Trustee), shall promptly release the related Mortgage File to the Servicer and the Trustee (and the Custodian, if applicable) shall have no further responsibility with regard to such Mortgage File. Upon any such payment in full, the Servicer is authorized, to give, as agent for the Trustee, as the mortgagee under the Mortgage that secured the Mortgage Loan, an instrument of satisfaction (or assignment of mortgage without recourse) regarding the Mortgaged Property subject to the Mortgage, which instrument of satisfaction or assignment, as the case may be, shall be delivered to the Person or Persons entitled thereto against receipt therefor of such payment, it being understood and agreed that no expenses incurred in connection with such instrument of satisfaction or assignment, as the case may be, shall be chargeable to the related Servicing Account.

(b) From time to time and as appropriate for the servicing or foreclosure of any Mortgage Loan and in accordance with the Servicing Agreement, the Trustee shall execute such documents as shall be prepared and furnished to the Trustee by the Servicer or the Master Servicer (in form reasonably acceptable to the Trustee) and as are necessary to the prosecution of any such proceedings. The Trustee (or the Custodian, on behalf of the Trustee), shall, upon the request of the Servicer or the Master Servicer, and upon delivery to the Trustee (or the Custodian, on behalf of the Trustee) of two copies of a request for release signed by a Servicing Officer substantially in the form of Exhibit F (or in a mutually agreeable electronic format which will, in lieu of a signature on its face, originate from a Servicing Officer), release the related Mortgage File held in its possession or control to the Servicer or the Master Servicer, as applicable. Such trust receipt shall obligate the Servicer or the Master Servicer to return the Mortgage File to the Trustee (or the Custodian on behalf of the Trustee) when the need therefor by the Servicer or the Master Servicer no longer exists unless the Mortgage Loan shall be liquidated, in which case, upon receipt of a certificate of a Servicing Officer similar to that hereinabove specified, the Mortgage File shall be released by the Trustee (or the Custodian, on behalf of the Trustee), to the Servicer or the Master Servicer.

SECTION 3.08. Documents, Records and Funds in Possession of Master Servicer to be Held for Trust.

(a) The Master Servicer shall transmit and cause the Servicer (to the extent required by the Servicing Agreement) to transmit to the Trustee (or Custodian) such documents and instruments coming into the possession of the Master Servicer or the Servicer from time to time as are required by the terms hereof or, in the case of the Servicer, by the Servicing Agreement, to be delivered to the Trustee (or Custodian). The Master Servicer shall hold any funds received by the Master Servicer and shall cause the Servicer to hold any funds received by the Servicer, in respect of any Mortgage Loan or which otherwise are collected by the Master Servicer or by the Servicer as Liquidation Proceeds or Insurance Proceeds in respect of any Mortgage Loan shall be held for the benefit of the Trust and the Certificateholders, subject to the Master Servicer's right to retain or withdraw from the Distribution Account the Master Servicing Fee, any additional compensation pursuant to Section 3.14 and any other amounts provided in this Agreement, and to the right of the Servicer to retain its Servicing Fee and any other amounts as provided in the Servicing Agreement. The Master Servicer shall, and (to the extent provided in the Servicing Agreement) shall cause the Servicer to, provide access to information and documentation

78

regarding the Mortgage Loans to the Trustee, its agents and accountants at any time upon reasonable request and during normal business hours, and to Certificateholders that are savings and loan associations, banks or insurance companies, the Office of Thrift Supervision, the FDIC and the supervisory agents and examiners of such Office and Corporation or examiners of any other federal or state banking or insurance regulatory authority if so required by applicable regulations of the Office of Thrift Supervision or other regulatory authority, such access to be afforded without charge but only upon reasonable request in writing and during normal business hours at the offices of the Master Servicer designated by it. In fulfilling such a request the Master Servicer shall not be responsible for determining the sufficiency of such information.

(b) All Mortgage Files and funds collected or held by, or under the control of, the Master Servicer, in respect of any Mortgage Loans shall be held by the Master Servicer for and on behalf of the Trust and the Certificateholders and shall be and remain the sole and exclusive property of the Trust; *provided, however*, that the Master Servicer and the Servicer shall be entitled to setoff against, and deduct from, any such funds any amounts that are properly due and payable to the Master Servicer or the Servicer under this Agreement or the Servicing Agreement.

SECTION 3.09.  Standard Hazard Insurance and Flood Insurance Policies

(a) For each Mortgage Loan (other than a Cooperative Loan), the Master Servicer shall enforce any obligation of the Servicer under the Servicing Agreement to maintain or cause to be maintained standard fire and casualty insurance and, where applicable, flood insurance, all in accordance with the provisions of the Servicing Agreement. It is understood and agreed that such insurance shall be with insurers meeting the eligibility requirements set forth in the Servicing Agreement and that no earthquake or other additional insurance is to be required of any Mortgagor or to be maintained on property acquired in respect of a defaulted loan, other than pursuant to such applicable laws and regulations as shall at any time be in force and as shall require such additional insurance.

(b) Pursuant to Sections 4.01 and 4.02, any amounts collected by the Servicer or the Master Servicer under any insurance policies (other than amounts to be applied to the restoration or repair of the property subject to the related Mortgage or released to the Mortgagor in accordance with the Servicing Agreement) shall be deposited into the Distribution Account, subject to withdrawal pursuant to Sections 4.02 and 4.03. Any cost incurred by the Master Servicer or the Servicer in maintaining any such insurance if the Mortgagor defaults in its obligation to do so shall be added to the amount owing under the Mortgage Loan where the terms of the Mortgage Loan so permit; *provided, however*, that the addition of any such cost shall not be taken into account for purposes of calculating the distributions to be made to Certificateholders and shall be recoverable by the Master Servicer or the Servicer pursuant to Sections 4.02 and 4.03.

SECTION 3.10.  Presentment of Claims and Collection of Proceeds.

The Master Servicer shall (to the extent provided in the Servicing Agreement) cause the Servicer to prepare and present on behalf of the Trustee, the Trust and the Certificateholders all claims under the Insurance Policies and take such actions (including the negotiation, settlement,

79

compromise or enforcement of the insured's claim) as shall be necessary to realize recovery under such policies. Any proceeds disbursed to the Master Servicer (or disbursed to the Servicer and remitted to the Master Servicer) in respect of such policies, bonds or contracts shall be promptly deposited in the Distribution Account upon receipt, except that any amounts realized that are to be applied to the repair or restoration of the related Mortgaged Property as a condition precedent to the presentation of claims on the related Mortgage Loan to the insurer under any applicable Insurance Policy need not be so deposited (or remitted).

SECTION 3.11.  Maintenance of the Primary Insurance Policies.

(a) The Master Servicer shall not take, or permit the Servicer (to the extent such action is prohibited under the Servicing Agreement) to take, any action that would result in noncoverage under any applicable Primary Insurance Policy of any loss which, but for the actions of such Master Servicer or Servicer, would have been covered thereunder. The Master Servicer shall use its best reasonable efforts to cause the Servicer (to the extent required under the Servicing Agreement) to keep in force and effect (to the extent that the Mortgage Loan requires the Mortgagor to maintain such insurance), primary mortgage insurance applicable to each Mortgage Loan (including any lender-paid Primary Insurance Policy) in accordance with the provisions of this Agreement and the Servicing Agreement, as applicable. The Master Servicer shall not, and shall not permit the Servicer (to the extent required under the Servicing Agreement) to, cancel or refuse to renew any such Primary Insurance Policy that is in effect at the date of the initial issuance of the Mortgage Note and is required to be kept in force hereunder except in accordance with the provisions of this Agreement and the Servicing Agreement, as applicable.

(b) The Master Servicer agrees to cause the Servicer (to the extent required under the Servicing Agreement) to present, on behalf of the Trustee, the Trust and the Certificateholders, claims to the insurer under any Primary Insurance Policies and, in this regard, to take such reasonable action as shall be necessary to permit recovery under any Primary Insurance Policies respecting defaulted Mortgage Loans. Pursuant to Section 4.01, any amounts collected by the Servicer under any Primary Insurance Policies shall be remitted to the Master Servicer for deposit in the Distribution Account, subject to withdrawal pursuant to Section 4.03.

SECTION 3.12.  Trustee to Retain Possession of Certain Insurance Policies and Documents.

The Trustee (or the Custodian, as directed by the Trustee), shall retain possession and custody of the originals (to the extent available) of any Primary Insurance Policies or certificate of insurance if applicable, and any certificates of renewal as to the foregoing as may be issued from time to time as contemplated by this Agreement. Until all amounts distributable in respect of the Certificates have been distributed in full and the Master Servicer otherwise has fulfilled its obligations under this Agreement, the Trustee (or the Custodian, as directed by the Trustee) shall also retain possession and custody of each Mortgage File in accordance with and subject to the terms and conditions of this Agreement. The Master Servicer shall promptly deliver or cause to be delivered to the Trustee (or the Custodian, as directed by the Trustee), upon the execution or receipt thereof the originals of any Primary Insurance Policies, any certificates of renewal, and

such other documents or instruments that constitute portions of the Mortgage File that come into the possession of the Master Servicer from time to time.

SECTION 3.13. Realization Upon Defaulted Mortgage Loans.

The Master Servicer shall cause the Servicer (to the extent required under the Servicing Agreement) to foreclose upon, repossess or otherwise comparably convert the ownership of Mortgaged Properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments, all in accordance with the Servicing Agreement.

SECTION 3.14. Additional Compensation to the Master Servicer.

Pursuant to Article IV, all income and gain realized from any investment of funds in the Distribution Account shall be for the benefit of the Master Servicer as additional compensation. Servicing compensation in the form of assumption fees, if any, late payment charges, as collected, if any, or otherwise (but not including any Prepayment Penalty Amounts) shall be retained by the Servicer, or the Master Servicer, and shall not be deposited in the related Servicing Account or the Distribution Account. The Master Servicer shall be required to pay all expenses incurred by it in connection with its activities hereunder and shall not be entitled to reimbursement therefor except as provided in this Agreement. The amount of the aggregate compensation payable as set forth in this Section 3.14 plus the Master Servicing Fee due to the Master Servicer in respect of any Distribution Date shall be reduced in accordance with Section 5.06.

SECTION 3.15. REO Property.

(a) In the event the Trust (or the Trustee, on behalf of the Trust), acquires ownership of any REO Property in respect of any related Mortgage Loan, the deed or certificate of sale shall be issued to the Trust, or if required under applicable law, to the Trustee, or to its nominee, on behalf of the Trust. The Master Servicer shall, to the extent provided in the Servicing Agreement, cause the Servicer to sell any REO Property as expeditiously as possible (and in no event later than three years after acquisition) and in accordance with the provisions of this Agreement and the Servicing Agreement, as applicable. Pursuant to its efforts to sell such REO Property, the Master Servicer shall cause the Servicer to protect and conserve such REO Property in the manner and to the extent required by the Servicing Agreement, in accordance with the REMIC Provisions and in a manner that does not result in a tax on "net income from foreclosure property" or cause such REO Property to fail to qualify as "foreclosure property" within the meaning of Section 860G(a)(8) of the Code.

(b) The Master Servicer shall, to the extent required by the Servicing Agreement, cause the Servicer to deposit all funds collected and received in connection with the operation of any REO Property in the related Servicing Account.

(c) The Master Servicer and the Servicer, upon the final disposition of any REO Property, shall be entitled to reimbursement for any related unreimbursed Advances and other

81

unreimbursed advances as well as any unpaid Servicing Fees from Liquidation Proceeds received in connection with the final disposition of such REO Property; provided, that any such unreimbursed Advances as well as any unpaid Servicing Fees may be reimbursed or paid, as the case may be, prior to final disposition, out of any net rental income or other net amounts derived from such REO Property.

(d) To the extent provided in the Servicing Agreement, the Liquidation Proceeds from the final disposition of the REO Property, net of any payment to the Master Servicer and the Servicer as provided above shall be deposited in the related Servicing Account on or prior to the applicable Determination Date in the month following receipt thereof and be remitted by wire transfer in immediately available funds to the Master Servicer for deposit into the Distribution Account on the next succeeding Servicer Remittance Date.

SECTION 3.16.  Annual Officer's Certificate as to Compliance.

(a) The Master Servicer shall deliver to the Trustee and each Rating Agency on or before March 1 of each year, commencing on March 1, 2006, an Officer's Certificate, certifying that with respect to the period ending December 31 of the prior year: (i) the Servicing Officer has reviewed the activities of such Master Servicer during the preceding calendar year or portion thereof and its performance under this Agreement, (ii) to the best of the Servicing Officer's knowledge, based on such review, such Master Servicer has performed and fulfilled its duties, responsibilities and obligations under this Agreement in all material respects throughout such year, or, if there has been a default in the fulfillment of any such duties, responsibilities or obligations, specifying each such default known to the Servicing Officer and the nature and status thereof, (iii) nothing has come to the attention of the Servicing Officer to lead the Servicing Officer to believe that the Servicer has failed to perform any of its duties, responsibilities and obligations under its Servicing Agreement in all material respects throughout such year, or, if there has been a material default in the performance or fulfillment of any such duties, responsibilities or obligations, specifying each such default known to the Servicing Officer and the nature and status thereof.

(b) Copies of such statements shall be provided to any Certificateholder and the Certificate Insurer upon request by the Master Servicer or, by the Trustee at the Master Servicer's expense, if the Master Servicer failed to provide such copies (unless (i) the Master Servicer shall have failed to provide the Trustee with such statement or (ii) the Trustee shall be unaware of the Master Servicer's failure to provide such statement).

SECTION 3.17.  Annual Independent Accountant's Servicing Report.

If the Master Servicer has, during the course of any fiscal year, directly serviced any of the Mortgage Loans, then the Master Servicer at its expense shall cause a nationally recognized firm of independent certified public accountants to furnish a statement to the Trustee, each Rating Agency and the Depositor on or before March 1 of each year, commencing on March 1, 2006 to the effect that, with respect to the most recently ended fiscal year, such firm has examined certain records and documents relating to the Master Servicer's performance of its servicing obligations under this Agreement and pooling and servicing and trust agreements in

material respects similar to this Agreement and to each other and that, on the basis of such examination conducted substantially in compliance with the audit program for mortgages serviced for Freddie Mac or the Uniform Single Attestation Program for Mortgage Bankers, such firm is of the opinion that the Master Servicer's activities have been conducted in compliance with this Agreement, or that such examination has disclosed no material items of noncompliance except for (i) such exceptions as such firm believes to be immaterial, (ii) such other exceptions as are set forth in such statement and (iii) such exceptions that the Uniform Single Attestation Program for Mortgage Bankers or the Audit Program for Mortgages Serviced by Freddie Mac requires it to report. Copies of such statements shall be provided to any Certificateholder and the Certificate Insurer upon request by the Master Servicer, or by the Trustee at the expense of the Master Servicer if the Master Servicer shall fail to provide such copies. If such report discloses exceptions that are material, the Master Servicer shall advise the Trustee whether such exceptions have been or are susceptible of cure, and will take prompt action to do so.

SECTION 3.18. <u>Reports Filed with Securities and Exchange Commission</u>.

Within 10 days after each Distribution Date, the Securities Administrator shall, in accordance with industry standards, file with the Commission via the Electronic Data Gathering and Retrieval System ("**EDGAR**"), a Form 8-K (or other comparable Form containing the same or comparable information or other information mutually agreed upon) with a copy of the statement to the Trustee who shall furnish a copy of the statement to the Certificateholders for such Distribution Date as an exhibit thereto. Prior to January 30, 2006, the Securities Administrator shall, in accordance with industry standards, file a Form 15 Suspension Notice with respect to the Trust, if applicable. Prior to (i) March 15, 2006, or sixteen (16) days prior to such earlier date as such filing may be required to be made under the rules of the Commission, and (ii) unless and until a Form 15 Suspension Notice shall have been filed, prior to March 15, or sixteen (16) days prior to such earlier date as such filing may be required to be made under the rules of the Commission, of each year thereafter, the Master Servicer shall provide the Securities Administrator with a Sarbanes-Oxley Certification, together with a copy of the annual independent accountant's servicing report and annual statement of compliance of the Servicer, in each case, required to be delivered pursuant to its Servicing Agreement, and, if applicable, the annual independent accountant's servicing report and annual statement of compliance to be delivered by the Master Servicer pursuant to Sections 3.16 and 3.17. Prior to (i) March 31, 2006, or such earlier date as such filing may be required to be made under the rules of the Commission, and (ii) unless and until a Form 15 Suspension Notice shall have been filed, March 31, or such earlier date as such filing may be required to be made under the rules of the Commission, of each year thereafter, the Securities Administrator shall file a Form 10-K, in substance conforming to industry standards, with respect to the Trust. Such Form 10-K shall include the Sarbanes-Oxley Certification and other documentation provided by the Master Servicer pursuant to the second preceding sentence. The Depositor hereby grants to the Securities Administrator a limited power of attorney to execute and file each such 8-K on behalf of the Depositor; provided, that notwithstanding anything to the contrary provided herein, the Master Servicer shall be responsible for signing on its own behalf, and shall sign on its own behalf, the Sarbanes-Oxley Certification and each form 10-K. Such power of attorney shall continue until the earlier of either (i) receipt by the Securities Administrator from the Depositor of written termination of such power of attorney or (ii) the termination of the Trust. The Depositor agrees to promptly

furnish to the Securities Administrator, from time to time upon request, such further information, reports and financial statements within its control related to this Agreement and the Mortgage Loans as the Securities Administrator reasonably deems appropriate to prepare and file all necessary reports with the Commission.    The Securities Administrator shall have no responsibility to file any items other than those specified in this Section 3.18; *provided, however*, the Securities Administrator will cooperate with the Depositor in connection with any additional filings with respect to the Trust as the Depositor deems necessary under the Securities Exchange Act of 1934, as amended (the "**Exchange Act**").    Copies of all reports filed by the Securities Administrator under the Exchange Act shall be sent to the Depositor.    Fees and expenses incurred by the Securities Administrator in connection with this Section 3.18 shall not be reimbursable from the Trust.

SECTION 3.19.  [Reserved].

SECTION 3.20.  [Reserved].

SECTION 3.21.  [Reserved].

SECTION 3.22.  [Reserved].

SECTION 3.23.  Closing Opinion of Counsel.

On or before the Closing Date, the Master Servicer shall cause to be delivered to the Depositor, the Seller, the Trustee, and Greenwich Capital Markets, Inc. an Opinion of Counsel, dated the Closing Date, in form and substance reasonably satisfactory to the Depositor, Greenwich Capital Markets, Inc., and the Seller as to the due authorization, execution and delivery of this Agreement by the Master Servicer and the enforceability thereof.

SECTION 3.24.  Liabilities of the Master Servicer.

The Master Servicer shall be liable in accordance herewith only to the extent of the obligations specifically imposed upon and undertaken by it herein.

SECTION 3.25.  Merger or Consolidation of the Master Servicer.

(a) The Master Servicer will keep in full force and effect its existence, rights and franchises as a national banking association under the laws of the jurisdiction of its incorporation, and will obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement, the Certificates or any of the Mortgage Loans and to perform its duties under this Agreement.

(b) Any Person into which the Master Servicer may be merged or consolidated, or any corporation resulting from any merger or consolidation to which the Master Servicer shall be a party, or any Person succeeding to the business of the Master Servicer, shall be the successor of

84

the Master Servicer hereunder, without the execution or filing of any paper or further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

SECTION 3.26. Indemnification of the Trustee, the Master Servicer and the Securities Administrator.

(a) The Master Servicer agrees to indemnify the Indemnified Persons for, and to hold them harmless against, any loss, liability or expense (except as otherwise provided herein with respect to expenses) (including reasonable legal fees and disbursements of counsel) incurred on their part that may be sustained in connection with, arising out of, or relating to this Agreement or the Certificates (i) related to the Master Servicer's failure to perform its duties in compliance with this Agreement (except as any such loss, liability or expense shall be otherwise reimbursable pursuant to this Agreement) or (ii) incurred by reason of the Master Servicer's willful misfeasance, bad faith or gross negligence in the performance of duties hereunder or by reason of reckless disregard of obligations and duties hereunder, provided, in each case, that with respect to any such claim or legal action (or pending or threatened claim or legal action), an Indemnified Person shall have given the Master Servicer and the Depositor written notice thereof promptly after such Indemnified Person shall have with respect to such claim or legal action knowledge thereof. The Indemnified Person's failure to give such notice shall not affect the Indemnified Person's right to indemnification hereunder. This indemnity shall survive the resignation or removal of the Trustee, the Master Servicer or the Securities Administrator and the termination of this Agreement.

(b) The Trust will indemnify any Indemnified Person for any loss, liability or expense of any Indemnified Person not otherwise referred to in Subsection (a) above or Subsection (c) below.

(c) The Securities Administrator agrees to indemnify the Indemnified Persons (other than the Securities Administrator) for, and to hold them harmless against, any loss, liability or expense (except as otherwise provided herein with respect to expenses) (including reasonable legal fees and disbursements of counsel) incurred on their part (i) in connection with, arising out of, or relating to the Securities Administrator's failure to file a Form 10-K in accordance with Section 3.18, (ii) by reason of the Securities Administrator's willful misfeasance, bad faith or gross negligence in the performance of such obligations pursuant to Section 3.18 or (iii) by reason of the Securities Administrator's reckless disregard of such obligations pursuant to Section 3.18, provided, in each case, that with respect to any such claim or legal action (or pending or threatened claim or legal action), an Indemnified Person shall have given the Securities Administrator written notice thereof promptly after such Indemnified Person shall have with respect to such claim or legal action knowledge thereof. The Indemnified Person's failure to give such notice shall not affect the Indemnified Person's right to indemnification hereunder. This indemnity shall survive the resignation or removal of the Trustee, the Master Servicer or the Securities Administrator and the termination of this Agreement.

SECTION 3.27. Limitations on Liability of the Master Servicer and Others.

Subject to the obligation of the Master Servicer to indemnify the Indemnified Persons

85

pursuant to Section 3.26:

(a) Neither the Master Servicer nor any of the directors, officers, employees or agents of the Master Servicer shall be under any liability to the Indemnified Persons, the Depositor, the Trust or the Certificateholders for taking any action or for refraining from taking any action in good faith pursuant to this Agreement, or for errors in judgment; *provided, however*, that this provision shall not protect the Master Servicer or any such Person against any breach of warranties or representations made herein or any liability which would otherwise be imposed by reason of such Person's willful misfeasance, bad faith or gross negligence in the performance of duties or by reason of reckless disregard of obligations and duties hereunder.

(b) The Master Servicer and any director, officer, employee or agent of the Master Servicer may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder.

(c) The Master Servicer, the Trustee, the Custodian (including for such purpose, the Trustee acting in its capacity as Custodian) and any director, officer, employee or agent of the Master Servicer, the Trustee or the Custodian shall be indemnified by the Trust and held harmless thereby against any loss, liability or expense (except as otherwise provided herein with respect to expenses) (including reasonable legal fees and disbursements of counsel) incurred on their part that may be sustained in connection with, arising out of, or relating to, this Agreement, the Certificates or any Servicing Agreement or the transactions contemplated hereby or thereby (except to the extent that the Master Servicer is indemnified by the Servicer thereunder), other than (i) with respect to the Master Servicer or Custodian only, any such loss, liability or expense related to the Master Servicer's failure to perform its duties in compliance with this Agreement or, if applicable, to the Custodian's failure to perform its duties under this Agreement, or (ii) with respect to the Master Servicer or Custodian only, any such loss, liability or expense incurred by reason of the Master Servicer's or the Custodian's willful misfeasance, bad faith or gross negligence in the performance of duties hereunder or by reason of reckless disregard of obligations and duties hereunder or under a custodial agreement.

(d) The Master Servicer shall not be under any obligation to appear in, prosecute or defend any legal action that is not incidental to its duties under this Agreement and that in its opinion may involve it in any expense or liability; *provided, however*, the Master Servicer may in its discretion, undertake any such action which it may deem necessary or desirable with respect to this Agreement and the rights and duties of the parties hereto and the interests of the Trust and the Certificateholders hereunder. In such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities of the Trust, and the Master Servicer shall be entitled to be reimbursed therefor out of the Distribution Account as provided by Section 4.03. Nothing in this Section 3.27(d) shall affect the Master Servicer's obligation to supervise, or to take such actions as are necessary to enforce, the servicing and administration of the Mortgage Loans pursuant to Sections 3.01 and 3.03.

(e) In taking or recommending any course of action pursuant to this Agreement, unless specifically required to do so pursuant to this Agreement, the Master Servicer shall not be required to investigate or make recommendations concerning potential liabilities which the Trust

might incur as a result of such course of action by reason of the condition of the Mortgaged Properties but shall give notice to the Trustee if it has notice of such potential liabilities.

(f) The Master Servicer shall not be liable for any acts or omissions of the Servicer, except as otherwise expressly provided herein.

SECTION 3.28.  Master Servicer Not to Resign.

Except as provided in Section 3.30, the Master Servicer shall not resign from the obligations and duties hereby imposed on it except upon a determination that any such duties hereunder are no longer permissible under applicable law and such impermissibility cannot be cured.   Any such determination permitting the resignation of the Master Servicer shall be evidenced by an Independent Opinion of Counsel (delivered at the expense of the Master Servicer) to such effect delivered to the Trustee.  No such resignation by the Master Servicer shall become effective until the Trustee or a successor to the Master Servicer reasonably satisfactory to the Trustee shall have assumed the responsibilities and obligations of the Master Servicer in accordance with Section 7.02 hereof.  The Trustee shall notify each Rating Agency of the resignation of the Master Servicer.

If, at any time, Wells Fargo Bank, N.A., as Master Servicer resigns under this Section 3.28, or sells or assigns its rights and obligations under Section 3.30, or is removed as Master Servicer pursuant to Section 7.01, then at such time Wells Fargo Bank, N.A. also shall resign (and shall be entitled to resign) as Securities Administrator, Paying Agent and Certificate Registrar under this Agreement.

SECTION 3.29.  Successor Master Servicer.

In connection with the appointment of any successor Master Servicer or the assumption of the duties of the Master Servicer, the Trustee may make such arrangements for the compensation of such successor Master Servicer out of payments on the Mortgage Loans as the Trustee and such successor Master Servicer shall agree which in no case shall exceed the Master Servicing Fee.  If the successor Master Servicer does not agree that the proposed compensation is fair, such successor Master Servicer shall obtain two quotations of market compensation from third parties actively engaged in the servicing of single-family mortgage loans; *provided, however*, that each Rating Agency shall confirm in writing that any appointment of a successor Master Servicer (other than the Trustee) will not result in a downgrade in the then current rating of any Class of Certificates.

SECTION 3.30.  Sale and Assignment of Master Servicing.

The Master Servicer may sell and assign its rights and delegate its duties and obligations in their entirety as Master Servicer under this Agreement, provided that: (i) the purchaser or transferee accepting such assignment and delegation (a) shall be a Person which shall be qualified to service mortgage loans for Fannie Mae or Freddie Mac; (b) shall have a net worth of not less than $10,000,000 (unless otherwise approved by each Rating Agency pursuant to clause (ii) below); (c) shall be reasonably satisfactory to the Trustee and the Depositor; and (d) shall

execute and deliver to the Trustee and the Depositor an agreement, in form and substance reasonably satisfactory to the Trustee, which contains an assumption by such Person of the due and punctual performance and observance of each covenant and condition to be performed or observed by it as master servicer under this Agreement or any custodial agreement from and after the effective date of such agreement; (ii) each Rating Agency shall be given prior written notice of the identity of the proposed successor to the Master Servicer and each Rating Agency's ratings of the Certificates in effect immediately prior to such assignment, sale and delegation will not be downgraded, qualified or withdrawn as a result of such assignment, sale and delegation, as evidenced by a letter to such effect delivered to the Master Servicer, the Trustee, the Certificate Insurer and the Depositor; and (iii) the Master Servicer assigning and selling the master servicing shall deliver to the Trustee and the Depositor an Officer's Certificate and an Independent Opinion of Counsel, (delivered at the Master Servicer's expense) each stating that all conditions precedent to such action under this Agreement have been completed and such action is permitted by and complies with the terms of this Agreement. No such assignment or delegation shall affect any liability of the Master Servicer arising prior to the effective date thereof.

## ARTICLE IV

## ACCOUNTS

SECTION 4.01. Servicing Accounts

(a) The Master Servicer shall enforce the obligation of the Servicer to establish and maintain one or more custodial accounts (the "**Servicing Accounts**") in accordance with the Servicing Agreement, with records to be kept with respect thereto on a Mortgage Loan by Mortgage Loan basis, into which accounts shall be deposited within 48 hours (or as of such other time specified in the Servicing Agreement) of receipt all collections of principal and interest on any Mortgage Loan and with respect to any REO Property received by the Servicer, including Principal Prepayments, Insurance Proceeds, Liquidation Proceeds, Recoveries and advances made from the Servicer's own funds (less, in the case of the Servicer, the Servicing compensation, in whatever form and amounts as permitted by the Servicing Agreement) and all other amounts to be deposited in each the Servicing Account. The Servicer is hereby authorized to make withdrawals from and deposits to the related Servicing Account for purposes required or permitted by this Agreement and the Servicing Agreement. For the purposes of this Agreement, Servicing Accounts shall also include such other accounts as the Servicer maintains for the escrow of certain payments, such as taxes and insurance, with respect to certain Mortgaged Properties. Each Servicing Agreement sets forth the criteria for the segregation, maintenance and investment of each related Servicing Account, the contents of which are acceptable to the parties hereto as of the date hereof and changes to which shall not be made unless such changes are made in accordance with the provisions of Section 12.01 hereof.

(b) [Reserved];

(c) To the extent provided in the Servicing Agreement and subject to this Article IV, on or before the Servicer Remittance Date, the Servicer shall withdraw or shall cause to be withdrawn from the related Servicing Account and shall immediately remit or cause to be remitted to the Master Servicer for deposit into the Distribution Account, amounts representing the following collections and payments (other than with respect to principal of or interest on the Mortgage Loans due on or before the Cut-off Date) with respect to each of the Mortgage Loans it is servicing:

    (i)    Monthly Payments on the Mortgage Loans received or any related portion thereof advanced by the Servicer pursuant to the Servicing Agreement which were due on or before the related Due Date, net of the amount thereof comprising the Servicing Fees and Lender-Paid Mortgage Insurance Fees, if any;

    (ii)    Principal Prepayments in full and any Liquidation Proceeds received by the Servicer with respect to such Mortgage Loans in the related Prepayment Period, with interest to the date of prepayment or liquidation, net of the amount thereof comprising the Servicing Fees;

    (iii)    Principal Prepayments in part received by the Servicer for such Mortgage Loans in the related Prepayment Period;

    (iv)    Recoveries received by the Servicer with respect to such Mortgage Loans; and

    (v)    any amount to be used as a delinquency advance or to pay any Interest Shortfalls, in each case, as required to be paid under the Servicing Agreement.

(d) Withdrawals may be made from a Servicing Account only to make remittances as provided in Section 4.01(c), to reimburse the Servicer for advances which have been recovered by subsequent collection from the related Mortgagor, to remove amounts deposited in error, to remove fees, charges or other such amounts deposited on a temporary basis, or to clear and terminate the account at the termination of this Agreement in accordance with Section 10.01. As provided in Section 4.01(c), certain amounts otherwise due to the Servicer may be retained by them and need not be remitted to the Master Servicer.

SECTION 4.02. Distribution Account.

(a) The Master Servicer shall establish and maintain an account, in the name of the Trustee, for the benefit of the Securities Administrator, as Paying Agent for the Trustee, and the Certificateholders, as a segregated account which shall be an Eligible Account (the "**Distribution Account**"). The Master Servicer shall, promptly upon receipt from the Servicer on the Servicer Remittance Date, or, with respect to clause (v) below, upon withdrawal from the Policy Account, deposit into the Distribution Account and retain on deposit until the related Distribution Date, the following amounts:

    (i)    any amounts withdrawn from a Servicing Account pursuant to Section 4.01(c);

(ii)     any amounts required to be deposited by the Master Servicer with respect to the Mortgage Loans pursuant to this Agreement including (a) Advances and any Compensating Interest Payments required to be made by the Master Servicer to the extent required but not made by the Servicer and (b) the amount of any Insurance Proceeds or Liquidation Proceeds received by or on behalf of the Master Servicer which were not deposited in a Servicing Account;

(iii)     the Purchase Price with respect to any Mortgage Loans purchased by the Seller or an Originator under this Agreement or the related Purchase Agreement, as applicable, any Substitution Adjustments pursuant to Section 2.03 of this Agreement and all proceeds of any Mortgage Loans or property acquired with respect thereto repurchased by the Call Option Holder pursuant to Section 10.01 and the Servicing Agreement;

(iv)     any amounts required to be deposited by the Master Servicer with respect to losses on investments of deposits in the Distribution Account;

(v)     any amounts on deposit in the Policy Account received in accordance with the Certificate Insurance Policy; and

(vi)     any other amounts so required to be deposited in the Distribution Account pursuant to this Agreement.

(b) All amounts deposited to the Distribution Account shall be held by the Master Servicer in the name of the Trustee in trust for the benefit of the Securities Administrator, as Paying Agent for the Trustee, and the Certificateholders in accordance with the terms and provisions of this Agreement. The requirements for crediting the Distribution Account shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments in the nature of (i) late payment charges or assumption fees, tax service fees, statement account charges or payoff charges, substitution, satisfaction, release and other like fees and charges and (ii) the items enumerated in Subsections 4.03(a)(i), (ii), (iii), (iv), (vi), (vii), (x) and (xi) with respect to the Servicer, need not be remitted by the Servicer to the Master Servicer or, with respect to the Master Servicer, be deposited by the Master Servicer to the Distribution Account. In the event that the Servicer has remitted to the Master Servicer any amount not required to be credited to the Distribution Account, the Servicer may at any time, by delivery of a written request signed by a Servicing Officer of the Servicer, which describes the amount deposited in error, direct the Master Servicer to withdraw such amount from the Distribution Account for repayment to the Servicer. In the event that the Master Servicer has deposited to the Distribution Account any amount not required to be credited thereto, it may at any time, withdraw such amount from the Distribution Account.

(c) Funds in the Distribution Account shall, if invested, be invested, in the name of the Trustee, or its nominee, for the benefit of the Trust, in Permitted Investments as directed by the Master Servicer. All Permitted Investments shall mature or be subject to redemption or withdrawal no later than one Business Day prior to the next succeeding Distribution Date (except that if such Permitted Investment is an obligation of the Master Servicer, then such Permitted Investment shall mature not later than such applicable Distribution Date). Any and all

90

investment earnings from any such Permitted Investment shall be for the benefit of the Master Servicer and shall be subject to its withdrawal or order from time to time, and shall not be part of the Trust Fund. The risk of loss of moneys required to be distributed to the Certificateholders resulting from such investments shall be borne by and be the risk of the Master Servicer. The Master Servicer shall deposit the amount of any such loss in the Distribution Account immediately as realized, but in no event later than the related Distribution Date.

SECTION 4.03. Permitted Withdrawals and Transfers from the Distribution Account.

(a) The Securities Administrator shall, from time to time, withdraw or transfer funds from the Distribution Account to the Servicer, to the Master Servicer, to the Trustee or to itself for the following purposes:

(i)     to reimburse the Master Servicer or the Servicer for any Advance or advance, respectively, of its own funds or of the Servicer's own funds, the right of the Master Servicer or the Servicer to reimbursement pursuant to this subclause (i) being limited to amounts received on a particular Mortgage Loan (including, for this purpose, the Purchase Price therefor, Insurance Proceeds and Liquidation Proceeds) which represent late payments or recoveries of the principal of or interest on such Mortgage Loan respecting which such Advance was made;

(ii)     to reimburse the Master Servicer or the Servicer from Insurance Proceeds or Liquidation Proceeds relating to a particular Mortgage Loan for amounts expended by the Master Servicer or the Servicer in good faith in connection with the restoration of the related Mortgaged Property which was damaged by an Uninsured Cause or in connection with the liquidation of such Mortgage Loan;

(iii)     to reimburse the Master Servicer or the Servicer from Insurance Proceeds relating to a particular Mortgage Loan for insured expenses incurred with respect to such Mortgage Loan and to reimburse the Master Servicer or the Servicer from Liquidation Proceeds from a particular Mortgage Loan for Liquidation Expenses incurred with respect to such Mortgage Loan;

(iv)     to pay the Master Servicer or the Servicer, as appropriate, from Liquidation Proceeds or Insurance Proceeds received in connection with the liquidation of any Mortgage Loan, the amount which it or the Servicer would have been entitled to receive under subclause (x) of this Subsection 4.03(a) as servicing compensation on account of each defaulted scheduled payment on such Mortgage Loan if paid in a timely manner by the related Mortgagor;

(v)     to pay the Master Servicer or the Servicer from the Purchase Price for any Mortgage Loan, the amount which the Master Servicer or the Servicer would have been entitled to receive under subclause (x) of this Subsection 4.03(a) as servicing compensation;

(vi)     to reimburse the Master Servicer or the Servicer for servicing related advances of funds, the right to reimbursement pursuant to this subclause being limited to

91

amounts received on the related Mortgage Loan (including, for this purpose, the Purchase Price therefor, Insurance Proceeds and Liquidation Proceeds) which represent late recoveries of the payments for which such servicing advances were made;

(vii)   to reimburse the Master Servicer or the Servicer for any Advance or advance, after a Realized Loss has been allocated with respect to the related Mortgage Loan if the Advance or advance has not been reimbursed pursuant to clauses (i) and (vi);

(viii)   to pay the Master Servicer its monthly Master Servicing Fee and any other servicing compensation payable pursuant to Section 3.14;

(ix)   to pay the Master Servicer any investment income;

(x)   to reimburse the Master Servicer for any expenses recoverable by it pursuant to Sections 3.03 and 3.27;

(xi)   to reimburse or pay the Servicer any such amounts as are due thereto under the Servicing Agreement and have not been retained by or paid to the Servicer, to the extent provided in the Servicing Agreement;

(xii)   to reimburse the Trustee (including in its role as a Custodian) and the Securities Administrator for expenses, costs and liabilities incurred by or reimbursable to it pursuant to Sections 3.27, 8.05 or 8.10 hereof;

(xiii)   to pay to the Certificate Insurer its Aggregate Premium Amount;

(xiv)   to remove amounts deposited in error; and

(xv)   to clear and terminate the Distribution Account pursuant to Section 10.01.

(b) The Master Servicer shall keep and maintain separate accounting, on a Mortgage Loan by Mortgage Loan basis, for the purpose of accounting for any payments or reimbursements from the Distribution Account pursuant to subclauses (i) through (vii), inclusive and subclause (x) or with respect to any such amounts which would have been covered by such subclauses had the amounts not been retained by the Master Servicer without being deposited in the Distribution Account under Section 4.02(b).

(c) On each Distribution Date, the Securities Administrator, as Paying Agent, shall withdraw funds on deposit in the Distribution Account to the extent of the aggregate Available Funds and distribute such funds to the Holders of the Certificates and any other parties entitled thereto, in accordance with Section 5.01.

SECTION 4.04.  Yield Maintenance Account.

On or prior to the Closing Date, the Securities Administrator, on behalf of the Trustee, shall cause to be established and maintained the Yield Maintenance Account, into which Yield Maintenance Payments received by the Securities Administrator pursuant to the Yield Maintenance Agreement shall be deposited for the benefit of the Class 1-A-1A, Class 1-A-1B,

Class 2-A-1A, Class 2-A-1B, Class 2-A-1C and Class X Certificates. Amounts on deposit in the Yield Maintenance Account shall not be invested and shall not be held in an interest-bearing account.

The Securities Administrator shall deposit all amounts received from the Yield Maintenance Provider under the Yield Maintenance Agreements into the Yield Maintenance Account immediately upon receipt. On each Distribution Date, the Securities Administrator, as Paying Agent for the Trustee, shall withdraw from the Yield Maintenance Account (i) the Yield Maintenance Distributable Amount with respect to the Yield Maintenance Agreement related to (a) the Class 1-A-1A Certificates, (b) the Class 1-A-1B Certificates, (c) the Class 2-A-1A and Class 2-A-1B Certificates and (d) the Class 2-A-1C Certificates, as applicable, then on deposit therein and distribute such amounts in respect of any Basis Risk Shortfalls for such Class on such Distribution Date, pro rata, based on amounts due and (ii) any amounts remaining on deposit therein after distributions made pursuant to (i) above, and distribute such amounts to the Class X Certificates.

If the Seller or its affiliate is the Holder of a Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B, or Class 2-A-1C Certificate, the Seller or its affiliate shall remit to the Securities Administrator the portion of Yield Maintenance Distributable Amounts received by the Holder of such Certificate on any Distribution Date, and the Securities Administrator will remit such amounts to the Yield Maintenance Provider. For purposes of this Agreement, the Securities Administrator shall have no duty to confirm that each amount received by it from the Seller or its affiliate with respect to the preceding sentence is the correct amount.

To the extent that it constitutes a "reserve fund" for purposes of the REMIC Provisions, the Yield Maintenance Account established hereunder shall be an "outside reserve fund" as defined in Treasury Regulation 1.860G-2(h), and in that regard (i) such fund shall be an outside reserve fund and not an asset of any REMIC, (ii) such fund shall be owned for federal tax purposes by the Holder of the Class X Certificates, and the Holder of the Class X Certificates shall report all amounts of income, reduction, gain or loss accruing therefrom and (iii) amounts transferred by the REMIC to the fund shall be treated as distributed by the REMIC to the Holder of the Class X Certificates.

The Securities Administrator shall terminate the Yield Maintenance Agreements upon the occurrence of an event of default or termination event under the related Yield Maintenance Agreements of which a Responsible Officer of the Securities Administrator has actual knowledge. In the event that a Yield Maintenance Agreement is canceled or otherwise terminated for any reason (other than the exhaustion of the interest rate protection provided thereby), the Securities Administrator shall, at the direction of Certificateholders evidencing Voting Rights not less than 50% of the Certificates related to such Yield Maintenance Agreement, and to the extent a replacement contract is available (from a counterparty designated by the Depositor and acceptable to Certificateholders evidencing Voting Rights not less than 50% of the related Certificates), execute a replacement contract comparable to such Yield Maintenance Agreement providing interest rate protection which is equal to the then-existing protection provided by such Yield Maintenance Agreement as certified to the Securities Administrator by the Depositor; *provided, however*, that the cost of any such replacement contract providing the same interest rate protection may be reduced to a level such that the cost

of such replacement contract shall not exceed the amount of any early termination payment received from the Yield Maintenance Provider.

On any Distribution Date on or prior to the Distribution Date in February 2016, if the aggregate Class Certificate Principal Balance of the Certificates related to a Yield Maintenance Agreement equals zero (but not including the Distribution Date on which such aggregate Class Certificate Principal Balance is reduced to zero), all amounts received by the Securities Administrator with respect to such Yield Maintenance Agreement shall be distributed directly to the Class X Certificateholder. On the Distribution Date in March 2016 or upon the termination of the Trust, the Yield Maintenance Agreements shall be terminated.

SECTION 4.05. Certificate Insurance Policy.

(a)    On or prior to the Closing Date, the Securities Administrator, on behalf of the Trustee, shall cause to be established and maintained the Policy Account, into which amounts received by the Securities Administrator pursuant to the Certificate Insurance Policy shall be deposited for the benefit of the Insured Certificates. Amounts on deposit in the Policy Account shall not be invested and shall not be held in an interest-bearing account.

(b)    As soon as possible, and in no event later than 12:00 noon New York time on the second Business Day immediately preceding any Distribution Date, the Securities Administrator shall furnish the Certificate Insurer and the Master Servicer with a completed Notice in the form set forth as Exhibit A to the Endorsement to the Certificate Insurance Policy in the event that (a) the related Available Funds (other than any amounts in respect of Insured Amounts) are insufficient to pay the Monthly Interest Distributable Amount (net of any Net Interest Shortfalls, Basis Risk Shortfalls or Net Deferred Interest) with respect to the Class 1-A-1B or Class 2-A-1C Certificateholders, as applicable, on such Distribution Date or (b) a Realized Loss is to be allocated to either the Class 1-A-1B or Class 2-A-1C Certificates on such Distribution Date; *provided, however*, that if such Distribution Date is the Final Distribution Date, the Notice shall also include the aggregate outstanding Class Certificate Principal Balance of each Class of the Insured Certificates, after giving effect to all payments of principal on the Insured Certificates on such Final Distribution Date, other than pursuant to the Certificate Insurance Policy. The Notice shall specify the amount of Insured Amounts for each Class of the Insured Certificates and shall constitute a claim for an Insured Amount pursuant to the Certificate Insurance Policy.

(c)    Upon receipt of an Insured Amount from the Certificate Insurer on behalf of the Holders of the Insured Certificates, the Securities Administrator shall deposit such Insured Amount into the Policy Account. All such amounts on deposit in the Policy Account shall remain uninvested. On or prior to each Distribution Date, the Securities Administrator shall transfer amounts on deposit in the Policy Account to the Distribution Account and shall distribute such Insured Amounts to the appropriate Classes of Insured Certificates pursuant to Section 5.01.

The Securities Administrator shall include on each Distribution Date any Insured Amounts received by it from or on behalf of the Certificate Insurer for such Distribution Date (i) in the amount distributed to the Holders of the Insured Certificates pursuant to Section 5.01 and (ii) in the amount deemed to have been distributed to the Class 1-A-1B and Class 2-A-1C regular

interests and deposited for their benefit into the Distribution Account. If on any Distribution Date the Securities Administrator determines that the Certificate Insurer has paid more under the Certificate Insurance Policy than is required by the terms thereof, the Securities Administrator shall promptly return the excess amount to the Certificate Insurer.

(d)    The Securities Administrator shall (i) receive as attorney-in-fact of the Holders of the Insured Certificates any Insured Amount or Avoided Payment delivered to it by the Certificate Insurer for payment to such Holders and (ii) distribute any such Insured Amount to such Holders as set forth in Section 5.01. Insured Amounts disbursed by the Securities Administrator from proceeds of the Certificate Insurance Policy shall not be considered payment by the Trust Fund with respect to the Insured Certificates, nor shall such disbursement of Insured Amounts discharge the obligations of the Trust Fund with respect to the amounts thereof, and the Certificate Insurer shall become owner of such amounts to the extent covered by such Insured Amounts as the deemed assignee of such Holders. The Securities Administrator hereby agrees on behalf of the Holders of the Insured Certificates (and each such Holder, by its acceptance of its Insured Certificates, hereby agrees) for the benefit of the Certificate Insurer that, to the extent the Certificate Insurer pays any Insured Amount or Avoided Payment, either directly or indirectly (as by paying through the Securities Administrator), to the Holder of a Insured Certificate, the Certificate Insurer will be entitled to be subrogated to any rights of such Holder to receive the amounts for which such Insured Amount or Avoided Payment was paid, to the extent of such payment, and will be entitled to receive the Certificate Insurer Reimbursement Amount as set forth in Section 5.01.

(e)    At the end of the Term of the Certificate Insurance Policy (as defined in the Certificate Insurance Policy), the Securities Administrator shall return the Certificate Insurance Policy to the Certificate Insurer for cancellation.

ARTICLE V

FLOW OF FUNDS

SECTION 5.01. Distributions.

(a) On each Distribution Date and after making any withdrawals from the Distribution Account pursuant to Section 4.03(a), the Securities Administrator, as Paying Agent, shall withdraw funds on deposit in the Distribution Account to the extent of Available Funds for each Loan Group for such Distribution Date and, based on the Distribution Date Statement provided by the Securities Administrator, make the following disbursements and transfers as set forth below:

> (i)    the Available Funds for Loan Group 1 shall be distributed on each Distribution Date (other than on the Distribution Date following the optional purchase of the Mortgage Loans by the Call Option Holder) in the following order of priority:

>> (A)    to the Class A-R, Class 1-A-1A, Class 1-A-1B and Class X Certificates, the related Interest Distributable Amounts for that date, pro rata (based on the Interest Distributable Amounts to which each such Class is entitled); provided, however, that for purposes of distributions for the Class X Certificates pursuant to this paragraph 5.01(a)(i)(A), the Interest Distributable Amount for the Class X Certificates from Loan Group 1 will be determined by the Group 1 Class X Apportionment Rule; provided, further, that on each Distribution Date, the related Interest Distributable Amount (after giving effect to any reduction in respect of Net Deferred Interest allocated to the Class X Certificate on such Distribution Date) that would otherwise be distributable to the Class X Certificate shall be deposited in the Basis Risk Reserve Fund to the extent of the Required Reserve Fund Deposit and shall not be distributed to the Class X Certificate; and

>> (B)    an amount equal to the Senior Principal Distribution Amount for Loan Group 1 for that date, as follows:

>>> *first*, to the Holder of Class A-R Certificate, until the Class Certificate Principal Balance of such Class is reduced to zero;

>>> *second*, to the Class 1-A-1A and Class 1-A-1B Certificates, *pro rata* based on Class Certificate Principal Balance, until the Class Certificate Principal Balances of such respective Classes are reduced to zero; and

96

*third*, to the PO-1 Component, until its Component Principal Balance is reduced to zero;

(ii)     the Available Funds for Loan Group 2 shall be distributed on each Distribution Date (other than on the Distribution Date following the optional purchase of the Mortgage Loans by the Call Option Holder) in the following order of priority:

(A)     to the Class 2-A-1A, Class 2-A-1B, Class 2-A-1C and Class X Certificates, the related Interest Distributable Amounts for that date, pro rata (based on the Interest Distributable Amounts to which each such Class is entitled); provided, however, that for purposes of distributions for the Class X Certificates pursuant to this paragraph 5.01(a)(ii)(A), the Interest Distributable Amount for the Class X Certificates from Loan Group 2 will be determined by the Group 2 Class X Apportionment Rule; provided, further, that on each Distribution Date, the related Interest Distributable Amount (after giving effect to any reduction in respect of Net Deferred Interest allocated to the Class X Certificate on such Distribution Date) that would otherwise be distributable to the Class X Certificate shall be deposited in the Basis Risk Reserve Fund to the extent of the Required Reserve Fund Deposit and shall not be distributed to the Class X Certificate; and

(B)     an amount equal to the Senior Principal Distribution Amount for Loan Group 2 for that date, as follows:

*first*, to the Class 2-A-1A, Class 2-A-1B and Class 1-A-1C Certificates, *pro rata* based on Class Certificate Principal Balance, until the Class Certificate Principal Balances of such respective Classes are reduced to zero; and

*second*, to the PO-2 Component, until its Component Principal Balance is reduced to zero;

On any Distribution Date, if the amount to be distributed with respect to the Class X Certificates from a Loan Group in accordance with the provisions of Sections 5.01(a)(i)(A) or 5.01(a)(ii)(A) above is less than an amount equal to the Class X Certificates' Interest Distributable Amount (calculated for this purpose by using the portion of its Class Certificate Notional Balance attributable to such Loan Group), then Available Funds from the other Loan Group, remaining after making the distributions in either Section 5.01(a)(i)(A) or 5.01(a)(ii)(A) above, as applicable, to the Certificates related to such other Loan Group, shall be distributed to the Class X Certificates to cover that shortfall.

(iii)     *first*, from the Yield Maintenance Account, to the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates, any related Yield Maintenance Distributable Amount for such Distribution Date in the order and priority

97

set forth in Section 4.04 above and *second*, from the Basis Risk Reserve Fund, to the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates, any related Basis Risk Shortfall for such Distribution Date remaining after giving effect to the distributions specified in clause *first* above in the order and priority set forth in Section 5.07 below;

(iv)    the Available Funds for each Loan Group remaining after giving effect to the distributions specified in subsections (i), (ii) and (iii) above will be distributed to the Certificate Insurer and the Certificateholders in the following order of priority:

(1)    to the Certificate Insurer, any Certificate Insurer Reimbursement Amounts due and unpaid;

(2)    to the Class B-1 Certificates, the related Interest Distributable Amount for that date;

(3)    to the Class B-1 Certificates, an amount allocable to principal equal to its Pro Rata Share for such Distribution Date until the Class Certificate Principal Balance of such Class is reduced to zero;

(4)    to the Class B-2 Certificates, the related Interest Distributable Amount for that date;

(5)    to the Class B-2 Certificates, an amount allocable to principal equal to its Pro Rata Share for such Distribution Date until the Class Certificate Principal Balance of such Class is reduced to zero;

(6)    to the Class B-3 Certificates, the related Interest Distributable Amount for that date;

(7)    to the Class B-3 Certificates, an amount allocable to principal equal to its Pro Rata Share for such Distribution Date until the Class Certificate Principal Balance of such Class is reduced to zero;

(8)    to the Class B-4 Certificates, the related Interest Distributable Amount for that date;

(9)    to the Class B-4 Certificates, an amount allocable to principal equal to its Pro Rata Share for such Distribution Date until the Class Certificate Principal Balance of such Class is reduced to zero;

(10)    to the Class B-5 Certificates, the related Interest Distributable Amount for that date;

(11)   to the Class B-5 Certificates, an amount allocable to principal equal to its Pro Rata Share for such Distribution Date until the Class Certificate Principal Balance of such Class is reduced to zero;

(12)   to the Class B-6 Certificates, the related Interest Distributable Amount for that date;

(13)   to the Class B-6 Certificates, an amount allocable to principal equal to its Pro Rata Share for such Distribution Date until the Class Certificate Principal Balance of such Class is reduced to zero;

(14)   from the Basis Risk Reserve Fund, to the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5 and Class B-6 Certificates, any related Basis Risk Shortfall for such Distribution Date in the order and priority set forth in Section 5.07 below;

(15)   to the Holder of the Class A-R Certificate, any Available Funds, other than any portion thereof in respect of Premium Proceeds, then remaining; and

(16)   on the final Distribution Date, to the Holder of the Class A-R-II Certificate the Premium Proceeds.

On the Distribution Date following the optional purchase of the Mortgage Loans by the Call Option Holder, Available Funds will be applied in the amounts and in the order specified above, except, no amounts will distributed pursuant to Section 5.01(a)(iii) above and the portion of Available Funds remaining after the distribution pursuant to Section 5.01(a)(ii) will be applied in the order specified in Section 5.01(a)(iv).

With respect to any Distribution Date and Insured Amount, the Securities Administrator shall make payments pursuant to Section 5.01(a)(i) and (ii), with respect to the Class 1-A-1B and Class 2-A-1C Certificates from the amount drawn under the Certificate Insurance Policy for such Distribution Date in respect of such respective Classes pursuant to Section 4.02. Funds received by the Trustee as a result of any claim under the Certificate Insurance Policy shall be applied solely to payments to the Class 1-A-1B and Class 2-A-1C Certificateholders and may not be applied to satisfy costs, expenses or liabilities of the Master Servicer, the Securities Administrator, the Trustee or the Trust.

(b) Amounts to be paid to the Holders of a Class of Certificates shall be payable with respect to all Certificates of that Class, pro rata, based on the Certificate Principal Balance or Certificate Notional Balance, as applicable, of each Certificate of that Class.

(c) On each Distribution Date, the Monthly Interest Distributable Amounts for the Classes of Senior Certificates (other than the Class PO Certificates) and Subordinate Certificates on such Distribution Date shall be reduced proportionately, based on (A) in the case of the

Senior Certificates (other than the Class PO Certificates and the Class X Certificates), the Monthly Interest Distributable Amount to which they would otherwise be entitled, (B) in the case of the Class X Certificates, the Monthly Interest Distributable Amount to which they would otherwise be entitled to receive from such Loan Group, based on the related Loan Group's Class X Apportionment Rule and (C) in the case of the Subordinate Certificates, interest accrued at the related Pass-Through Rate on the related Apportioned Principal Balance of each such Class, by Net Interest Shortfalls with respect to the related Loan Group.

(d) Notwithstanding the priority and allocation set forth in Section 5.01(a)(vi) above, if with respect to any Class of Subordinate Certificates on any Distribution Date the sum of the related Class Subordination Percentages of such Class and of all other Classes of Subordinate Certificates which have a higher numerical Class designation than such Class (the "**Applicable Credit Support Percentage**") is less than the Original Applicable Credit Support Percentage for such Class, no distribution of Principal Prepayments will be made to any such Classes (the "**Restricted Classes**") and the amount of such Principal Prepayment otherwise distributable to the Restricted Classes shall be distributed to any Classes of Subordinate Certificates having lower numerical Class designations than such Class, pro rata, based on the Class Certificate Principal Balances of the respective Classes immediately prior to such Distribution Date and shall be distributed in the sequential order provided in Section 5.01(a)(vi) above.

(e) On each Distribution Date, the Paying Agent shall distribute to the Holder of the Class P Certificate, the Class P Distributable Amount.

(f) (i) Notwithstanding the priority and allocation set forth in Section 5.01(a)(iv), with respect to any Loan Group, on each Distribution Date prior to the Senior Credit Support Depletion Date but after the date on which the aggregate Class Certificate Principal Balance of each Class of the Senior Certificates and PO Components related to a Loan Group have been reduced to zero, 100% of the Principal Prepayments on the Mortgage Loans in that Loan Group otherwise distributable on each Class of Subordinate Certificates pursuant to Section 5.01(a)(iv), in reverse order of priority, shall be distributed as principal to the Senior Certificates related to the other Loan Group remaining outstanding in the amounts provided in the next succeeding sentence, provided that on such Distribution Date either clause (i) or (ii) in the definition of the Two Times Test has not been met. Such amount shall be paid to the Senior Certificates in such Group in the same priority as such Certificates would receive other distributions of principal pursuant to Section 5.01(a).

(ii)    On any Distribution Date on which the Senior Certificates and Principal-Only Component related to a Loan Group constitute an Undercollateralized Group, all amounts otherwise distributable as Available Funds on the Subordinate Certificates, in reverse order of priority (or, following the Senior Credit Support Depletion Date, such other amounts described in the immediately following sentence), will be distributed as principal to the Senior Certificates and Principal-Only Component of such Undercollateralized Group pursuant to Section 5.01(a) *first*, up to the sum of the Accrued Interest Amount and the Principal Deficiency Amount for the related Undercollateralized Group (such distribution, an "**Undercollateralization Distribution**") and *second*, to pay to the Subordinate Certificates and the Class A-R Certificate in the same order and priority as provided in Section 5.01(a)(vi). In the event that the Senior Certificates and

Principal-Only Component related to a Loan Group constitute an Undercollateralized Group on any Distribution Date following the Senior Credit Support Depletion Date, Undercollateralization Distributions will be made from any Available Funds for a Loan Group not related to an Undercollateralized Group remaining after all required amounts have been distributed to the related Class of Senior Certificates and Principal-Only Component. Undercollateralization Distributions will be applied *first* to pay accrued but unpaid interest, if any, and *second* to pay principal in the same priority and allocation provided in Section 5.01(a).

(g) <u>Distributions on Physical Certificates</u>. The Paying Agent shall make distributions in respect of a Distribution Date to each Certificateholder of record on the related Record Date (other than as provided in Section 10.01 hereof respecting the final distribution), in the case of Certificateholders of the Physical Certificates, by check or money order mailed to such Certificateholder at the address appearing in the Certificate Register, or by wire transfer. Distributions among Certificateholders of a Class shall be made in proportion to the Percentage Interests evidenced by the Certificates of that Class held by such Certificateholders.

(h) <u>Distributions on Book-Entry Certificates</u>. Each distribution with respect to a Book-Entry Certificate shall be paid to the Depository, which shall credit the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures. Each Depository Participant shall be responsible for disbursing such distribution to the Certificate Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm" or "indirect participating firm") for which it acts as agent. Each brokerage firm shall be responsible for disbursing funds to the Certificate Owners that it represents. All such credits and disbursements with respect to a Book-Entry Certificate are to be made by the Depository and the Depository Participants in accordance with the provisions of the Certificates. None of the Trustee, the Paying Agent, the Depositor or the Seller shall have any responsibility therefor.

SECTION 5.02. <u>Allocation of Net Deferred Interest</u>.

For any Distribution Date, the Net Deferred Interest on the Mortgage Loans will be allocated among the Classes of Certificates (or, with respect to the Class X Certificates, the PO Components) in proportion to the excess, if any, for each such Class of (i) the Monthly Interest Distributable Amount accrued at the Pass-Through Rate for such Class, over (ii) the amount of the Monthly Interest Distributable Amount for such Class calculated at the applicable Adjusted Cap Rate for such Class.

On each Distribution Date, any amount of Net Deferred Interest allocable to a Class of Certificates (other than the Class X Certificates) on such Distribution Date will be added as Principal to the outstanding Class Certificate Principal Balance of such Class of Certificates. With respect to the Class X Certificates and each Distribution Date, any amount of Net Deferred Interest added to the Principal Balances of the related Mortgage Loans that is allocated to the Class X Certificates on such Distribution Date will be added as principal to the outstanding Component Principal Balances of the PO-1 Component and the PO-2 Component based upon the amount of Deferred Interest attributable to the Mortgage Loans in the related Loan Group.

101

SECTION 5.03.  Allocation of Realized Losses.

(a) On or prior to each Distribution Date, the Securities Administrator shall aggregate the loan-level information provided by the Master Servicer with respect to the total amount of Realized Losses with respect to the Mortgage Loans in each Loan Group for the related Distribution Date and include such information in the Distribution Date Statement.

(b) On each Distribution Date, Realized Losses that occurred during the related prepayment period shall be allocated as follows:

> *first,* to the Subordinate Certificates in reverse order of their respective numerical Class designations (beginning with the Class of Subordinate Certificates with the highest numerical Class designation) until the Class Certificate Principal Balance of each such Class is reduced to zero; and

> *second,*

> > (A)   with respect to such losses related to Loan Group 1 Mortgage Loans, to the Class 1-A-1A, Class 1-A-1B and Class A-R Certificates and PO-1 Component, *pro rata* based on Class Certificate Principal Balances and Component Principal Balances, until the Class Certificate Principal Balance or Component Principal Balance of each such Class or Component is reduced to zero; *provided, however*, the Class 1-A-1B Certificates will bear the principal portion of all realized losses allocable to the Class 1-A-1A Certificates for so long as the Class 1-A-1B Certificates are outstanding; and

> > (B)   with respect to such losses related to Loan Group 2 Mortgage Loans, to the Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates and PO-2 Component, *pro rata* based on Class Certificate Principal Balances and Component Principal Balances, until the Class Certificate Principal Balance or Component Principal Balance of each such Class or Component is reduced to zero; *provided, however*, that all losses allocable to the Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates will be allocated sequentially to the Class 2-A-1C, Class 2-A-1B and Class 2-A-1A Certificates, in that order, for so long as such Certificates are outstanding.

(c) The Class Certificate Principal Balance of the Class of Subordinate Certificates then outstanding with the highest numerical Class designation shall be reduced on each Distribution Date by the amount, if any, by which the aggregate of the Class Certificate Principal Balances of all outstanding Classes of Certificates (after giving effect to the distribution of principal and the allocation of Realized Losses on such Distribution Date) exceeds the aggregate of the Stated Principal Balances of all the Mortgage Loans for the following Distribution Date.

(d) Any Realized Loss allocated to a Class of Certificates or any reduction in the Class Certificate Principal Balance of a Class of Certificates pursuant to Section 5.03(b) or (c) shall be allocated among the Certificates of such Class, *pro rata*, in proportion to their respective Certificate Principal Balances.

(e) Any allocation of Realized Losses to a Certificate or any reduction in the Certificate Principal Balance of a Certificate pursuant to Section 5.03(b) or (c) shall be accomplished by reducing the Certificate Principal Balance thereof immediately following the distributions made on the related Distribution Date in accordance with the definition of "Certificate Principal Balance."

SECTION 5.04. Statements.

(a) On each Distribution Date, the Securities Administrator shall make available to the Trustee, each Certificateholder, the Certificate Insurer, the Seller, the Master Servicer and each Rating Agency, a statement based, as applicable, on loan-level information obtained from the Master Servicer and the Servicer (the "**Distribution Date Statement**") as to the distributions to be made or made, as applicable, on such Distribution Date:

(i)    the amount of the distribution made on such Distribution Date to the Holders of each Class of Certificates allocable to principal;

(ii)    the amount of the distribution made on such Distribution Date to the Holders of each Class of Certificates allocable to interest;

(iii)    the Senior Percentage, Senior Prepayment Percentage, Subordinate Percentage and Subordinate Prepayment Percentage with respect to each Loan Group for the following Distribution Date;

(iv)    the aggregate amount of servicing compensation received by the Servicer during the related Due Period and such other customary information as the Trustee deems necessary or desirable, or which a Certificateholder reasonably requests, to enable Certificateholders to prepare their tax returns;

(v)    the aggregate amount of Advances for the related Due Period and the amount of unreimbursed Advances;

(vi)    [reserved];

(vii)    the Loan Group Balance and related Net WAC and applicable Net WAC Cap for each Loan Group at the Close of Business at the end of the related Due Period;

(viii)    for each Loan Group, the aggregate Principal Balance of the One-Month MTA Indexed Mortgage Loans at the Close of Business at the end of the related Due Period;

(ix)    [reserved];

103

(x)     [reserved];

(xi)     for each Loan Group, the number, weighted average remaining term to maturity and weighted average Loan Rate of the related Mortgage Loans as of the related Due Date;

(xii)     the number and aggregate unpaid principal balance of Mortgage Loans for each Loan Group, (a) 30 to 59 days Delinquent, (b) 60 to 89 days Delinquent, (c) 90 or more days Delinquent, (d) as to which foreclosure proceedings have been commenced and (e) in bankruptcy, in each case as of the close of business on the last day of the preceding calendar month;

(xiii)     the book value of any REO Property as of the Close of Business on the last Business Day of the calendar month preceding the Distribution Date, and, cumulatively, the total number and cumulative principal balance of all REO Properties in each Loan Group as of the Close of Business of the last day of the preceding Due Period;

(xiv)     the aggregate amount of Principal Prepayments with respect to each Loan Group made during the related Prepayment Period;

(xv)     the aggregate amount of Realized Losses incurred during the related Due Period for each Loan Group and the cumulative amount of Realized Losses and the amount of Realized Losses, if any, allocated to each Class of Certificates;

(xvi)     the Class Certificate Principal Balance or Class Certificate Notional Balance, as applicable, of each Class of Certificates and the Apportioned Principal Balances of the Subordinate Certificates after giving effect to any distributions made thereon, on such Distribution Date;

(xvii)     the Monthly Interest Distributable Amount and the Interest Distributable Amount in respect of each Class of Certificates, for such Distribution Date and the respective portions thereof, if any, remaining unpaid following the distributions made in respect of such Certificates on such Distribution Date;

(xviii)     the aggregate amount of any Net Interest Shortfalls and the Unpaid Interest Shortfall Amount for such Distribution Date;

(xix)     the Available Funds with respect to each Loan Group;

(xx)     the Pass-Through Rate and Adjusted Cap Rate for each Class of Certificates for such Distribution Date;

(xxi)     the aggregate Principal Balance of Mortgage Loans purchased hereunder by the Seller during the related Due Period, and indicating the relevant section of the Servicing Agreement, or the Section of this Agreement, as applicable, requiring or allowing the purchase of each such Mortgage Loan;

(xxii)     [reserved];

104

(xxiii)    current Recoveries allocable to each Loan Group;

(xxiv)    cumulative Recoveries allocable to each Loan Group;

(xxv)    the amount of any Basis Risk Shortfall, if any, and the related accrued interest thereon;

(xxvi)    for each Loan Group, the amount of Deferred Interest and Net Deferred Interest, if any, for such Loan Group;

(xxvii)    payments made under the Yield Maintenance Agreements, if any;

(xxviii)    the amount of Net Deferred Interest, if any, added to the Class Certificate Principal Balance of the related Certificates;

(xxix)    the amount of the Certificate Insurer Reimbursement Amount, if any; and

(xxx)    the Deficiency Amount, if any, to be paid by the Certificate Insurer.

The Securities Administrator will make the Distribution Date Statement (and, at its option, any additional files containing the same information in an alternative format) available each month to Certificateholders and the other parties to this Agreement via the Securities Administrator's internet website. The Securities Administrator's internet website shall initially be located at "www.ctslink.com." Assistance in using the website can be obtained by calling the Securities Administrator's customer service desk at (301) 815-6600. Parties that are unable to use the above distribution option are entitled to have a paper copy mailed to them via first class mail by calling the customer service desk and indicating such. The Securities Administrator shall have the right to change the way such reports are distributed in order to make such distribution more convenient and/or more accessible to the parties, and the Securities Administrator shall provide timely and adequate notification to all parties regarding any such change.

In the case of information furnished pursuant to subclauses (i) and (ii) above, the amounts shall be expressed in a separate section of the report as a dollar amount for each Class for each $1,000 original dollar amount as of the Cut-Off Date.

(b) Within a reasonable period of time after the end of each calendar year, the Securities Administrator shall, upon written request, furnish to the Certificate Insurer and each Person who at any time during the calendar year was a Certificateholder of a Regular Certificate, if requested in writing by such Person, such information as is reasonably necessary to provide to such Person a statement containing the information set forth in subclauses (i) through (iii) and (xxi) above, aggregated for such calendar year or applicable portion thereof during which such Person was a Certificateholder. Such obligation of the Securities Administrator shall be deemed to have been satisfied to the extent that substantially comparable information shall be prepared and furnished by the Securities Administrator to Certificateholders pursuant to any requirements of the Code as are in force from time to time.

(c) On each Distribution Date, the Securities Administrator shall supply an electronic tape to Bloomberg Financial Markets, Inc. in a format acceptable to Bloomberg Financial Markets, Inc. on a monthly basis, and shall supply an electronic tape to Loan Performance and Intex Solutions in a format acceptable to Loan Performance and Intex Solutions on a monthly basis.

SECTION 5.05.  Remittance Reports; Advances.

(a) No later than the 15th calendar day of each month, the Master Servicer shall deliver to the Securities Administrator by telecopy or electronic mail (or by such other means as the Master Servicer and the Securities Administrator may agree from time to time) the Remittance Report with respect to the Distribution Date.  No later than the Close of Business New York time on the Business Day prior to such Distribution Date, the Master Servicer shall deliver or cause to be delivered to the Securities Administrator in addition to the information provided on the Remittance Report, such other loan-level information reasonably available to it with respect to the Mortgage Loans as the Securities Administrator may reasonably require to perform the calculations necessary to make the distributions contemplated by Section 5.01.

(b) If the Monthly Payment on a Mortgage Loan that was due on a related Due Date and is delinquent, other than as a result of application of the Relief Act, and for which the Servicer was required to make an advance pursuant to the Servicing Agreement, exceeds the amount on deposit in the Distribution Account which will be used for an advance with respect to such Mortgage Loan, the Master Servicer shall, on the Business Day preceding the Distribution Date, deposit in the Distribution Account an amount equal to such deficiency, net of the Servicing Fee and the Master Servicing Fee, for such Mortgage Loan except to the extent the Master Servicer determines any such Advance to be Nonrecoverable from Liquidation Proceeds, Insurance Proceeds or future payments on the Mortgage Loan for which such Advance was made.  Subject to the foregoing, the Master Servicer shall continue to make such Advances through the date that the Servicer is required to do so under its Servicing Agreement.  If the Master Servicer determines that an Advance is Nonrecoverable, it shall, on or prior to the related Distribution Date, present an Officer's Certificate to the Trustee and the Securities Administrator (i) stating that the Master Servicer elects not to make a Advance in a stated amount and (ii) detailing the reason it deems the advance to be Nonrecoverable.

SECTION 5.06.  Compensating Interest Payments.

The amount of the Master Servicing Fee payable to the Master Servicer in respect of any Distribution Date shall be reduced (but not below zero) by the amount of any Compensating Interest Payment for such Distribution Date, but only to the extent that Interest Shortfalls relating to such Distribution Date are required to be paid but are not actually paid by the Servicer on the Servicer Remittance Date.  Such amount shall not be treated as an Advance and shall not be reimbursable to the Master Servicer

106

SECTION 5.07. Basis Risk Reserve Fund.

(a) On the Closing Date, the Securities Administrator shall establish and maintain in its name, in trust for the benefit of the holders of the LIBOR Certificates, the Basis Risk Reserve Fund. The Basis Risk Reserve Fund shall be an Eligible Account, and funds on deposit therein shall be held separate and apart from, and shall not be commingled with, any other moneys, including, without limitation, other moneys of the Trustee held pursuant to this Agreement. The Basis Risk Reserve Fund shall not be an asset of any REMIC established hereby.

(b) On each Distribution Date, the Monthly Interest Distributable Amounts that would otherwise be distributable with respect to the Class X Certificates shall instead be deposited in the Basis Risk Reserve Fund to the extent of the Required Reserve Fund Deposit.

(c) On any Distribution Date for which a Basis Risk Shortfall exists with respect to the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates, the Securities Administrator, as Paying Agent, shall withdraw first from the Yield Maintenance Account, the amount of such Basis Risk Shortfall for distribution on such Distribution Date pursuant to Section 4.04 and Section 5.01(a)(iii), and then from the Basis Risk Reserve Fund the amount of any remaining Basis Risk Shortfall for such Classes of Certificates, pursuant to Section 5.01(a)(iii). If on any Distribution Date the amount on deposit in the Basis Risk Reserve Fund is not sufficient to make a full distribution of the Basis Risk Shortfall with respect to the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates remaining after application of funds available therefor in the Yield Maintenance Account, the Securities Administrator, as Paying Agent, shall withdraw the entire amount on deposit in the Basis Risk Reserve Fund and distribute such amount to such Classes of Certificates on a *pro rata* basis based on the amount of Basis Risk Shortfall due each such Class.

On any Distribution Date for which a Basis Risk Shortfall exists with respect to the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5 and Class B-6 Certificates, the Securities Administrator, as Paying Agent, after making the distributions described in the immediately preceding paragraph to the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B and Class 2-A-1C Certificates, distribute the lesser of any amounts remaining on deposit in the Basis Risk Reserve Fund and such Basis Risk Shortfall to the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5 and Class B-6 Certificates, sequentially, in that order.

Funds remaining in the Basis Risk Reserve Fund on any Distribution Date after funding the payment of Basis Risk Shortfalls for such Distribution Date will be allocated to the Class X Certificates, up to the amount of the Required Reserve Fund Deposit for such Distribution Date.

(d) Funds in the Basis Risk Reserve Fund shall be invested in Permitted Investments. Any earnings on amounts in the Basis Risk Reserve Fund shall be for the benefit of the Class X Certificateholders. The Class X Certificates shall evidence ownership of the Basis Risk Reserve Fund for federal income tax purposes and the Holders thereof shall direct the Securities Administrator, in writing, as to investment of amounts on deposit therein. The Class X Certificateholder(s) shall be liable for any losses incurred on such investments. In the absence of written instructions from the Class X Certificateholder as to investment of funds on deposit in the Basis Risk Reserve Fund, such funds shall be invested in money market funds as specified

107

by the Depositor and as described in clause (vi) of the definition of Permitted Investments in Article I. For all Federal income tax purposes, amounts transferred by the Upper-Tier REMIC to the Basis Risk Reserve Fund shall be treated as amounts distributed by the Upper-Tier REMIC to the Class X Certificateholders.

(e) [Reserved].

(f) [Reserved].

(g) Upon termination of the Trust Fund any amounts remaining in the Basis Risk Reserve Fund shall be distributed to the Class X Certificateholders.

SECTION 5.08. Recoveries.

(a) With respect to any Class of Certificates or Principal-Only Component to which a Realized Loss has been allocated (including any such Class or Principal-Only Component for which the related Class Certificate Principal Balance or Component Principal Balance has been reduced to zero), the Class Certificate Principal Balance or Component Principal Balance of such Class or Component, as applicable, will be increased, up to the amount of related Recoveries for such Distribution Date as follows:

(i)     first, the Class Certificate Principal Balance of each Class of Senior Certificates or Component Principal Balance of the Principal-Only Component related to the Loan Group from which the Recovery was collected, will be increased pro rata, up to the amount by which Net Realized Losses previously allocated to each such Class or Component exceeds the amount of Recoveries for such Distribution Date previously distributed to such Class or Component, and

(ii)     second, the Class Certificate Principal Balance of each Class of Subordinate Certificates will be increased in order of seniority, up to the amount by which Net Realized Losses previously allocated to each such Class exceeds the amount of Recoveries for such Distribution Date previously distributed to such Class.

(b) Any increase to the Class Certificate Principal Balance of a Class of Certificates or Component Principal Balance of a Principal-Only Component shall increase the Certificate Principal Balance of each Certificate of the related Class or the Component Principal Balance of each of the PO-1 Component and PO-2 Component *pro rata* in accordance with each Percentage Interest.

108

## ARTICLE VI

## THE CERTIFICATES

SECTION 6.01.  The Certificates.

The Certificates shall be substantially in the form annexed hereto as Exhibit A-1 through E.  Each of the Certificates shall, on original issue, be executed by the Trustee and authenticated and delivered by the Certificate Registrar upon the written order of the Depositor concurrently with the sale and assignment to the Trustee of the Trust Fund.  Each Class of the Regular Certificates shall be initially evidenced by one or more Certificates representing a Percentage Interest with a minimum dollar denomination of $25,000 and integral dollar multiples of $1 in excess thereof, in the case of the Class 1-A-1A, Class 1-A-1B, Class 2-A-1A, Class 2-A-1B, Class 2-A-1C, Class B-1, Class B-2, Class B-3 Certificates and $100,000 and integral dollar multiples of $1 in excess thereof, in the case of the Class X, Class B-4, Class B-5 and Class B-6, Certificates except that one Certificate of each of the Class B-4, Class B-5 and Class B-6 Certificates may be in a different denomination so that the sum of the denominations of all outstanding Certificates of such Class shall equal the Class Certificate Principal Balance of such Class on the Closing Date.  The Class PO Certificates will be offered in minimum percentage interests of 0.01%.  The Class P, Class A-R and Class A-R-II Certificates are issuable only in a Percentage Interest of 100%.

The Certificates shall be executed on behalf of the Trust by manual or facsimile signature on behalf of the Trustee by a Responsible Officer.  Certificates bearing the manual or facsimile signatures of individuals who were, at the time when such signatures were affixed, authorized to sign on behalf of the Trustee shall be binding, notwithstanding that such individuals or any of them have ceased to be so authorized prior to the authentication and delivery of such Certificates or did not hold such offices at the date of such Certificate.  Each Certificate shall, on original issue, be authenticated by the Certificate Registrar upon the order of the Depositor.  No Certificate shall be entitled to any benefit under this Agreement or be valid for any purpose, unless such Certificate shall have been manually authenticated by the Certificate Registrar substantially in the form provided for herein, and such authentication upon any Certificate shall be conclusive evidence, and the only evidence, that such Certificate has been duly authenticated and delivered hereunder.  All Certificates shall be dated the date of their authentication.  At any time and from time to time after the execution and delivery of this Agreement, the Depositor may deliver Certificates executed by the Trustee to the Certificate Registrar for authentication and the Certificate Registrar shall authenticate and deliver such Certificates as provided in this Agreement and not otherwise.  Subject to Section 6.02(c), the Senior Certificates (other than the Class P and the Residual Certificates) and the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5 and Class B-6 Certificates shall be Book-Entry Certificates.  The Class P and Residual Certificates shall be Physical Certificates.

The Private Certificates shall be offered and sold in reliance either on (i) the exemption from registration under Rule 144A of the 1933 Act and shall be issued initially in the form of one or more permanent global Certificates in definitive, fully registered form with the applicable legends set forth in Exhibit C (each, a "**Restricted Global Security**") or (ii) Regulation S and shall be issued initially in the form of one or more permanent global Certificates in definitive,

fully registered form without interest coupons with the applicable legends set forth in Exhibit C hereto (each, a "**Regulation S Global Security**"), which shall be deposited on behalf of the subscribers for such Certificates represented thereby with the Trustee, as custodian for DTC and registered in the name of a nominee of DTC, duly executed by the Trustee and authenticated by the Certificate Registrar as hereinafter provided.   The aggregate principal amounts of the Restricted Global Securities or Regulation S Global Securities, as applicable, may from time to time be increased or decreased by adjustments made on the records of the Certificate Registrar and DTC or its nominee, as the case may be, as hereinafter provided.

SECTION 6.02.  Registration of Transfer and Exchange of Certificates.

(a) The Certificate Registrar shall cause to be kept a Certificate Register in which, subject to such reasonable regulations as it may prescribe, the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges of Certificates as herein provided.  The Securities Administrator is hereby appointed, and the Securities Administrator hereby accepts its appointment as, initial Certificate Registrar on behalf of the Trustee, for the purpose of registering Certificates and transfers and exchanges of Certificates as herein provided.

Upon surrender for registration of transfer of any Certificate at the Corporate Trust Office of the Certificate Registrar maintained for such purpose pursuant to the foregoing paragraph, the Trustee on behalf of the Trust shall execute, and the Certificate Registrar shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Certificates of the same aggregate Percentage Interest.

At the option of the Certificateholders, Certificates may be exchanged for other Certificates in authorized denominations and the same aggregate Percentage Interests, upon surrender of the Certificates to be exchanged at any such office or agency.   Whenever any Certificates are so surrendered for exchange, the Trustee shall execute on behalf of the Trust, and the Certificate Registrar shall authenticate and deliver the Certificates which the Certificateholder making the exchange is entitled to receive.   Every Certificate presented or surrendered for registration of transfer or exchange shall (if so required by the Certificate Registrar) be duly endorsed by, or be accompanied by a written instrument of transfer satisfactory to the Certificate Registrar duly executed by, the Holder thereof or his attorney duly authorized in writing.

(b) Except as provided in paragraph (c) or (d) below, the Book-Entry Certificates shall at all times remain registered in the name of the Depository or its nominee and at all times: (i) registration of such Certificates may not be transferred by the Trustee or the Certificate Registrar except to another Depository; (ii) the Depository shall maintain book-entry records with respect to the Certificate Owners and with respect to ownership and transfers of such Certificates; (iii) ownership and transfers of registration of such Certificates on the books of the Depository shall be governed by applicable rules established by the Depository; (iv) the Depository may collect its usual and customary fees, charges and expenses from its Depository Participants; (v) the Certificate Registrar, the Paying Agent and the Trustee shall for all purposes deal with the Depository as representative of the Certificate Owners of the Certificates for purposes of exercising the rights of Holders under this Agreement, and requests and directions for and votes of such representative shall not be deemed to be inconsistent if they are made with

110

respect to different Certificate Owners; (vi) the Trustee, the Paying Agent and the Certificate Registrar may rely and shall be fully protected in relying upon information furnished by the Depository with respect to its Depository Participants and furnished by the Depository Participants with respect to indirect participating firms and Persons shown on the books of such indirect participating firms as direct or indirect Certificate Owners; and (vii) the direct participants of the Depository shall have no rights under this Agreement under or with respect to any of the Certificates held on their behalf by the Depository, and the Depository may be treated by the Trustee, the Paying Agent, the Certificate Registrar and their respective agents, employees, officers and directors as the absolute owner of the Certificates for all purposes whatsoever.

All transfers by Certificate Owners of Book-Entry Certificates shall be made in accordance with the procedures established by the Depository Participant or brokerage firm representing such Certificate Owners.    Each Depository Participant shall only transfer Book-Entry Certificates of Certificate Owners that it represents or of brokerage firms for which it acts as agent in accordance with the Depository's normal procedures.    The parties hereto are hereby authorized to execute one or more Letter of Representations with the Depository or take such other action as may be necessary or desirable to register a Book-Entry Certificate to the Depository.    In the event of any conflict between the terms of any such Letter of Representation and this Agreement, the terms of this Agreement shall control.

(c) If (x) the Depository or the Depositor advises the Certificate Registrar in writing that the Depository is no longer willing or able to discharge properly its responsibilities as Depository and (y) the Certificate Registrar or the Depositor is unable to locate a qualified successor, upon surrender to the Certificate Registrar of the Book-Entry Certificates by the Depository, accompanied by registration instructions from the Depository for registration, the Trustee shall at the Seller's expense execute on behalf of the Trust and authenticate definitive, fully registered certificates (the "**Definitive Certificates**").    Neither the Depositor nor the Certificate Registrar shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected in relying on, such instructions.    Upon the issuance of Definitive Certificates, the Trustee, the Certificate Registrar, the Paying Agent and the Depositor shall recognize the Holders of the Definitive Certificates as Certificateholders hereunder.

(d) No transfer, sale, pledge or other disposition of any Private Certificate, other than a Private Certificate sold in an offshore transaction in reliance on Regulation S, shall be made unless such disposition is exempt from the registration requirements of the 1933 Act, and any applicable state securities laws or is made in accordance with the 1933 Act and laws.    Any Private Certificates (other than a Class P Certificate) sold to an "accredited investor" under Rule 501(a)(1), (2), (3) or (7) under the 1933 Act shall be issued only in the form of one or more Definitive Certificates and the records of the Certificate Registrar and DTC or its nominee shall be adjusted to reflect the transfer of such Definitive Certificates.    In the event of any transfer of any Private Certificate (other than a Class P Certificate) in the form of a Definitive Certificate, (i) the transferee shall certify (A) such transfer is made to a Qualified Institutional Buyer in reliance upon Rule 144A (as evidenced by an investment letter delivered to the Certificate Registrar, in substantially the form attached hereto as Exhibit J-2) under the 1933 Act, or (B) such transfer is made to an "accredited investor" under Rule 501(c)(1), (2), (3) or (7) under the 1933 Act (as evidenced by an investment letter delivered to the Certificate Registrar, in

111

substantially the form attached hereto as Exhibit J-1, and, if so required by the Certificate Registrar and the Depositor, a written Opinion of Counsel (which may be in-house counsel) acceptable to and in form and substance reasonably satisfactory to the Certificate Registrar and the Depositor, delivered to the Certificate Registrar and the Depositor stating that such transfer may be made pursuant to an exemption, including a description of the applicable exemption and the basis therefor, from the 1933 Act or is being made pursuant to the 1933 Act, which Opinion of Counsel shall not be an expense of the Trust, the Trustee, the Certificate Registrar, the Master Servicer, the Securities Administrator or the Depositor) or (ii) the Certificate Registrar shall require the transferor to execute a transferor certificate and the transferee to execute an investment letter acceptable to and in form and substance reasonably satisfactory to the Depositor and the Certificate Registrar certifying to the Depositor and the Certificate Registrar the facts surrounding such transfer, which investment letter shall not be an expense of the Trust, the Trustee, the Certificate Registrar, the Master Servicer, the Securities Administrator or the Depositor. The Class P Certificate shall only be issued as a Definitive Certificate and shall only be transferred pursuant to clauses (i)(A) and (ii) above. Each Holder of a Private Certificate desiring to effect such transfer shall, and does hereby agree to, indemnify the Trustee, the Certificate Registrar, the Securities Administrator, the Seller and the Depositor against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

In the case of a Private Certificate that is a Book-Entry Certificate, for purposes of the preceding paragraph, the representations set forth in the investment letter in clause (i) shall be deemed to have been made to the Certificate Registrar by the transferee's acceptance of such Private Certificate that is also a Book-Entry Certificate (or the acceptance by a Certificate Owner of the beneficial interest in such Certificate).

If any Certificate Owner that is required under this Section 6.02(d) to transfer its Class B-4, Class B-5 or Class B-6 Certificates that are Book-Entry Certificates in the form of Definitive Certificates, (i) notifies the Certificate Registrar of such transfer or exchange and (ii) transfers such Book-Entry Certificates to the Certificate Registrar, in its capacity as such, through the book-entry facilities of the Depository, then the Certificate Registrar shall decrease the balance of such Book-Entry Certificates, or the Certificate Registrar shall use reasonable efforts to cause the surrender to the Certificate Registrar of such Book-Entry Certificates by the Depository, and thereupon, the Trustee, on behalf of the Trust, shall execute and the Certificate Registrar shall authenticate and deliver to such Certificate Owner or its designee one or more Definitive Certificates in authorized denominations and with a like aggregate Certificate Principal Balance.

Subject to the provisions of this Section 6.02(d) governing registration of transfer and exchange Class B-4, Class B-5 and Class B-6 Certificates (i) held as Definitive Certificates may be transferred in the form of Book-Entry Certificates in reliance on Rule 144A (to one or more Qualified Institutional Buyers) or Regulation S under the 1933 Act that are acquiring such Definitive Certificates, their own accounts for or for the accounts of other Qualified Institutional Buyers and (ii) held as Definitive Certificates by a Qualified Institutional Buyer or an investor under Regulation S for its own account or for the account of another Qualified Institutional Buyer or Regulation S investor may be exchanged for Book-Entry Certificates, in each case upon surrender of such Certificates for registration of transfer or exchange at the offices of the Certificate Registrar maintained for such purpose.   Whenever any such Certificates are so

surrendered for transfer or exchange, either the Certificate Registrar shall increase the balance of the related Book-Entry Certificates ,or the Trustee on behalf of the Trust shall execute, and the Certificate Registrar shall authenticate and deliver, the Book-Entry Certificates for which such Certificates were transferred or exchanged, as necessary and appropriate. No Holder of any such Definitive Certificates other than a Qualified Institutional Buyer or a Regulation S investor holding such Certificates for its own account or for the account of another Qualified Institutional Buyer or Regulation S investor may exchange such Certificates for Book-Entry Certificates. Further, any Certificate Owner of such Book-Entry Certificates other than any such Qualified Institutional Buyers or Regulation S investors shall notify the Certificate Registrar of its status as such and shall transfer such Book-Entry Certificate to the Certificate Registrar, through the book-entry facilities of the Depository, whereupon, and also upon surrender to the Certificate Registrar of such Book-Entry Certificates by the Depository, (which surrender the Certificate Registrar shall use reasonable efforts to cause to occur), the Trustee on behalf of the Trust shall execute, and the Certificate Registrar shall authenticate and deliver, to such Certificate Owner or such Certificate Owner's nominee one or more Definitive Certificates in authorized denominations and with a like aggregate Certificate Principal Balance.

None of the Depositor, the Seller, the Securities Administrator, the Certificate Registrar or the Trustee is obligated to register or qualify the Private Certificates under the 1933 Act or any other securities laws or to take any action not otherwise required under this Agreement to permit the transfer of such Certificates without registration or qualification. Any Certificateholder desiring to effect the transfer of a Private Certificate shall, and does hereby agree to, indemnify the Trustee, the Seller, the Securities Administrator, the Depositor and the Certificate Registrar against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No transfer of an ERISA-Restricted Certificate in the form of a Definitive Certificate shall be made unless the Certificate Registrar shall have received either (i) a representation from the transferee of such Certificate, acceptable to and in form and substance satisfactory to the Certificate Registrar and the Depositor (such requirement is satisfied only by the Certificate Registrar's receipt of a representation letter from the transferee substantially in the form of Exhibit I-1 or I-2, as applicable, hereto), to the effect that such transferee is not an employee benefit plan subject to Section 406 of ERISA or a plan or arrangement subject to Section 4975 of the Code, nor a person acting on behalf of any such plan or arrangement nor using the assets of any such plan or arrangement to effect such transfer or (ii) if such Certificate has been the subject of an ERISA-Qualifying Underwriting, and the purchaser is an insurance company, a representation that the purchaser is an insurance company which is purchasing such Certificates with funds contained in an "insurance company general account" (as such term is defined in Section V(e) of Prohibited Transaction Class Exemption 95-60 ("**PTCE 95-60**") and that the purchase and holding of such Certificates are covered under Sections I and III of PTCE 95-60 or (iii) an Opinion of Counsel satisfactory to the Certificate Registrar, which Opinion of Counsel shall not be an expense of the Trustee, the Certificate Registrar, the Master Servicer, the Securities Administrator, the Depositor or the Trust, addressed to the Certificate Registrar, to the effect that the purchase and holding of such ERISA-Restricted Certificate in the form of a Definitive Certificate will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code and will not subject the Trustee, the Certificate Registrar, the Master Servicer, the Servicer, the Securities Administrator or the Depositor to any obligation