you within ten (10) days of our receipt of the Mortgage File, except if the Mortgage Loan has been paid in full, or repurchased or substituted for a Qualified Substitute Mortgage Loan (in which case the Mortgage File will be retained by us without obligation to return to you).

Capitalized terms used herein shall have the meanings ascribed to them in the Pooling and Servicing Agreement.

_____

[Name of Servicer]


By:_____

    Name:
    Title: Servicing Officer

F-2

EXHIBIT G-1

**FORM OF RECEIPT OF MORTGAGE NOTE**

RECEIPT OF MORTGAGE NOTE

Greenwich Capital Acceptance, Inc.
600 Steamboat Road
Greenwich, Connecticut 06830

Re:   HarborView Mortgage Loan Trust 2005-11
Mortgage Loan Pass-Through Certificates, Series 2005-11

Ladies and Gentlemen:

Pursuant to Section 2.01 of the Pooling and Servicing Agreement, dated as of August 1, 2005, among Greenwich Capital Acceptance, Inc., as Depositor, Greenwich Capital Financial Products, Inc., as Seller, Wells Fargo Bank, N.A., as master servicer and securities administrator (the "Master Servicer" and the "Securities Administrator") and U.S. Bank National Association, as Trustee, we hereby acknowledge receipt of an original Mortgage Note with respect to each Mortgage Loan listed on Exhibit 1, with any exceptions thereto listed on Exhibit 2.

DEUTSCHE BANK NATIONAL TRUST
COMPANY,
as Trustee

By:_____
Name:
Title:

Dated:

## EXHIBIT 1

### MORTGAGE LOAN SCHEDULE

[On file with McKee Nelson LLP]

EXHIBIT 2

EXCEPTIONS REPORT

[On file with McKee Nelson LLP]

EXHIBIT G-2

**FORM OF INTERIM CERTIFICATION OF TRUSTEE**

INTERIM CERTIFICATION OF TRUSTEE

[Date]

Greenwich Capital Acceptance, Inc.
600 Steamboat Road
Greenwich, Connecticut 06830

Greenwich Capital Financial Products, Inc.
600 Steamboat Road
Greenwich, Connecticut 06830

Re:    HarborView Mortgage Loan Trust 2005-11
          Mortgage Loan Pass-Through Certificates, Series 2005-11

Ladies and Gentlemen:

In accordance with Section 2.02 of the Pooling and Servicing Agreement dated as of August 1, 2005 (the "Pooling and Servicing Agreement"), among Greenwich Capital Acceptance, Inc., as Depositor, Greenwich Capital Financial Products, Inc., as Seller, Wells Fargo Bank, N.A., as master servicer and securities administrator (the "Master Servicer" and the "Securities Administrator") and Deutsche Bank National Trust Company, as Trustee, the undersigned, as Trustee, hereby certifies that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or listed on the attached schedule):

(i)    all documents required to be delivered to the Trustee (or to the Custodian, on behalf of the Trustee) pursuant to Section 2.01 of the Pooling and Servicing Agreement are in its possession;

(ii)    such documents have been reviewed by the Trustee and have not been mutilated, damaged or torn and relate to such Mortgage Loan; and

(iii)    based on the Trustee's examination and only as to the foregoing, the information set forth in the Mortgage Loan Schedule that corresponds to items (i), (ii) and (iii) of the Mortgage Loan Schedule accurately reflects information set forth in the Mortgage File.

Based on its review and examination and only as to the foregoing documents, such documents appear regular on their face and relate to such Mortgage Loan.

The Trustee has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the Pooling and Servicing Agreement.

G-2-1

The Trustee makes no representations as to: (i) the validity, legality, sufficiency, enforceability or genuineness of any of the documents contained in each Mortgage File of any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectibility, insurability, effectiveness or suitability of any such Mortgage Loan.

      Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement.

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Trustee

By: _____
Name:
Title:

G-2-2

EXHIBIT G-3

**FORM OF FINAL CERTIFICATION OF TRUSTEE**

FINAL CERTIFICATION OF TRUSTEE

[Date]

Greenwich Capital Acceptance, Inc.
600 Steamboat Road
Greenwich, Connecticut 06830

Greenwich Capital Financial Products, Inc.
600 Steamboat Road
Greenwich, Connecticut 06830

> Re:    HarborView Mortgage Loan Trust 2005-11
> Mortgage Loan Pass-Through Certificates, Series 2005-11

Ladies and Gentlemen:

In accordance with Section 2.02 of the Pooling and Servicing Agreement dated as of August 1, 2005 (the "Pooling and Servicing Agreement"), among Greenwich Capital Acceptance, Inc., as Depositor, Greenwich Capital Financial Products, Inc., as Seller, Wells Fargo Bank, N.A., as master servicer and securities administrator (the "Master Servicer" and the "Securities Administrator") and Deutsche Bank National Trust Company, as Trustee, the undersigned, as Trustee, hereby certifies that as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or listed in the attached schedule) it has received all documents required to be delivered to the Trustee pursuant to Section 2.01 of the Pooling and Servicing Agreement.

Based on its review and examination and only as to the foregoing documents, (a) such documents appear regular on their face and related to such Mortgage Loan, and (b) the information set forth in items (i), (ii) and (iii) of the definition of "Mortgage Loan Schedule" in the Pooling and Servicing Agreement accurately reflects the information set forth in each Mortgage File.

The Trustee has made no independent examination of any documents contained in each Mortgage File beyond the review specifically required in the Pooling and Servicing Agreement. The Trustee makes no representations as to: (i) the validity, legality, sufficiency, enforceability or genuineness of any of the documents contained in each Mortgage File of any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (ii) the collectibility, insurability, effectiveness or suitability of any such Mortgage Loan.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement.

G-3-1

DEUTSCHE BANK NATIONAL TRUST
COMPANY,
as Trustee

By: _____
Name:
Title:

## EXHIBIT H

## FORM OF LOST NOTE AFFIDAVIT

Personally appeared before me the undersigned authority to administer oaths, _____ who first being duly sworn deposes and says: Deponent is _____ of Greenwich Capital Financial Products, Inc. (the "Seller") and who has personal knowledge of the facts set out in this affidavit.

On _____, 200__, _____ did execute and deliver a promissory note in the principal amount of $_____.

That said note has been misplaced or lost through causes unknown and is currently lost and unavailable after diligent search has been made. The Seller's records show that an amount of principal and interest on said note is still presently outstanding, due, and unpaid, and such Seller is still owner and holder in due course of said lost note.

The Seller executes this Affidavit for the purpose of inducing Deutsche Bank National Trust Company, as trustee on behalf of HarborView Mortgage Loan Trust 2005-11, Mortgage Loan Pass-Through Certificates, Series 2005-11, to accept the transfer of the above-described mortgage loan from the Seller.

The Seller agrees to indemnify Deutsche Bank National Trust Company and Greenwich Capital Acceptance, Inc. and hold each of them harmless for any losses incurred by such parties resulting from the fact that the above described Note has been lost or misplaced.

By: _____
    _____

STATE OF                )
                        )  ss:
COUNTY OF               )

On this ____ day of _____ 20__, before me, a Notary Public, in and for said County and State, appeared _____, who acknowledged the extension of the foregoing and who, having been duly sworn, states that any representations therein contained are true.

Witness my hand and Notarial Seal this ____ day of _____ 20__.

_____
_____

My commission expires _____.

H-1

65702v.6

## EXHIBIT I-1

## **FORM OF ERISA REPRESENTATION**

[Date]

Greenwich Capital Acceptance, Inc.
600 Steamboat Road
Greenwich, Connecticut 06830

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

> Re:  HarborView Mortgage Loan Trust 2005-11
> Mortgage Loan Pass-Through Certificates, Series
> 2005-11, Class [A-R], [A-R-II]

Ladies and Gentlemen:

    1.    The undersigned is the _____ of
_____ (the "Transferee"), a [corporation duly organized] and existing under the
laws of _____, on behalf of which she makes this affidavit.

    2.    The Transferee either (x) is not an employee benefit plan subject to
Section 406 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),
or a plan or arrangement subject to Section 4975 of the Internal Revenue Code of 1986, as
amended (the "Code") (collectively, a "Plan") nor a person acting on behalf of any such Plan nor
using the assets of any such Plan to effect the transfer; (y) if the Certificate has been the subject
of a best efforts or firm commitment underwriting or private placement that meets the
requirements of Prohibited Transaction Exemption 2002-41, and is an insurance company which
is purchasing such Certificates with funds contained in an "insurance company general account"
(as such term is defined in Section V(e) of Prohibited Transaction Class Exemption 95-60
("PTCE 95-60") and that the purchase and holding of such Certificates are covered under Section
I and III of PTCE 95-60; or (z) shall deliver to the Certificate Registrar an opinion of counsel (a
"Benefit Plan Opinion") satisfactory to the Certificate Registrar, and upon which the Certificate
Registrar shall be entitled to rely, to the effect that the purchase or holding of such Certificate by
the Transferee will not result in a non-exempt prohibited transaction under Section 406 of
ERISA or Section 4975 of the Code and will not subject the Trustee, the Certificate Registrar,
the Servicer or the Depositor to any obligation in addition to those undertaken by such entities in
the Pooling and Servicing Agreement, which opinion of counsel shall not be an expense of the
Trustee, the Certificate Registrar the Depositor or the Trust.

65702v.6

3.       The Transferee hereby acknowledges that under the terms of the Pooling and Servicing Agreement dated as of August 1, 2005 (the "Agreement") among Greenwich Capital Acceptance, Inc., as Depositor, Greenwich Capital Financial Products, Inc., as Seller, Wells Fargo Bank, N.A., as master servicer and securities administrator (the "Master Servicer" and the "Securities Administrator") and Deutsche Bank National Trust Company, as Trustee, no transfer of any ERISA-Restricted Certificate in the form of a Definitive Certificate shall be permitted to be made to any person unless the Depositor and Trustee have received a certificate from such transferee in the form hereof.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement.

IN WITNESS WHEREOF, the Transferee has executed this certificate.

_____
[Transferee]

By:_____
    Name:
    Title:

65702v.6

EXHIBIT I-2

**FORM OF ERISA REPRESENTATION
FOR ERISA-RESTRICTED CERTIFICATES**

[Date]

Greenwich Capital Acceptance, Inc.
600 Steamboat Road
Greenwich, Connecticut 06830

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

Re:  HarborView Mortgage Loan Trust 2005-11
Mortgage Loan Pass-Through Certificates,
Series 2005-11, ERISA-Restricted Certificates

Ladies and Gentlemen:

1.    The undersigned is the _____ of
_____ (the "Transferee"), a [corporation duly organized] and existing under the
laws of _____, on behalf of which s/he makes this affidavit.

2.    The Transferee either (x) is not an employee benefit plan subject to
Section 406 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),
or a plan or arrangement subject to Section 4975 of the Internal Revenue Code of 1986, as
amended (the "Code") (collectively, a "Plan") nor a person acting on behalf of any such Plan nor
using the assets of any such Plan to effect the transfer; (y) if a Certificate, other than the Class Y
Certificate, has been the subject of a best efforts or firm commitment underwriting or private
placement that meets the requirements of Prohibited Transaction Exemption 2002-41, is an
insurance company which is purchasing such Certificates with funds contained in an "insurance
company general account" (as such term is defined in Section V(e) of Prohibited Transaction
Class Exemption 95-60 ("PTCE 95-60") and that the purchase and holding of such Certificates
are covered under Section I and III of PTCE 95-60; or (z) in the case of a Certificate, other than
the Class Y Certificate, shall deliver to the Certificate Registrar an opinion of counsel (a "Benefit
Plan Opinion") satisfactory to the Certificate Registrar, and upon which the Certificate Registrar
shall be entitled to rely, to the effect that the purchase or holding of such Certificate by the
Transferee will not result in a non-exempt prohibited transaction under Section 406 of ERISA or
Section 4975 of the Code and will not subject the Trustee, the Certificate Registrar, the Servicer
or the Depositor to any obligation in addition to those undertaken by such entities in the Pooling
and Servicing Agreement, which opinion of counsel shall not be an expense of the Trustee, the
Certificate Registrar the Depositor or the Trust.

        3.      The Transferee hereby acknowledges that under the terms of the Pooling and Servicing Agreement dated as of August 1, 2005 (the "Agreement") among Greenwich Capital Acceptance, Inc., as Depositor, Greenwich Capital Financial Products, Inc., as Seller, Wells Fargo Bank, N.A., as master servicer and securities administrator (the "Master Servicer" and the "Securities Administrator") and Deutsche Bank National Trust Company, as Trustee, no transfer of any ERISA-Restricted Certificate in the form of a Definitive Certificate shall be permitted to be made to any person unless the Depositor and Trustee have received a certificate from such transferee in the form hereof.

        Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement.

        IN WITNESS WHEREOF, the Transferee has executed this certificate.


                                 _____

                                 [Transferee]

                               By:_____
                                   Name:
                                   Title:

EXHIBIT J-1

## FORM OF INVESTMENT LETTER [NON-RULE 144A]

[Date]

Greenwich Capital Acceptance, Inc.
600 Steamboat Road
Greenwich, Connecticut 06830

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

Re:   HarborView Mortgage Loan Trust 2005-11
      Mortgage Loan Pass-Through Certificates, Series 2005-11

Ladies and Gentlemen:

In connection with our acquisition of the above-captioned Certificates, we certify that (a) we understand that the Certificates are not being registered under the Securities Act of 1933, as amended (the "Act"), or any state securities laws and are being transferred to us in a transaction that is exempt from the registration requirements of the Act and any such laws, (b) we are an "accredited investor," as defined in Regulation D under the Act, and have such knowledge and experience in financial and business matters that we are capable of evaluating the merits and risks of investments in the Certificates, (c) we have had the opportunity to ask questions of and receive answers from the Depositor concerning the purchase of the Certificates and all matters relating thereto or any additional information deemed necessary to our decision to purchase the Certificates, (d) we are acquiring the Certificates for investment for our own account and not with a view to any distribution of such Certificates (but without prejudice to our right at all times to sell or otherwise dispose of the Certificates in accordance with clause (f) below), (e) we have not offered or sold any Certificates to, or solicited offers to buy any Certificates from, any person, or otherwise approached or negotiated with any person with respect thereto, or taken any other action which would result in a violation of Section 5 of the Act, and (f) we will not sell, transfer or otherwise dispose of any Certificates unless (1) such sale, transfer or other disposition is made pursuant to an effective registration statement under the Act or is exempt from such registration requirements, and if requested, we will at our expense provide an opinion of counsel satisfactory to the addressees of this Certificate that such sale, transfer or other disposition may be made pursuant to an exemption from the Act, (2) the purchaser or transferee of such Certificate has executed and delivered to you a certificate to substantially the same effect as this certificate, and (3) the purchaser or transferee has otherwise complied with any conditions for transfer set forth in the Pooling and Servicing Agreement.

J-1-1

       Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement.

Very truly yours,

[NAME OF TRANSFEREE]

By: _____

              Authorized Officer

J-1-2

EXHIBIT J-2

**FORM OF RULE 144A INVESTMENT LETTER**

[Date]

Greenwich Capital Acceptance, Inc.
600 Steamboat Road
Greenwich, Connecticut 06830

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

Re:    HarborView Mortgage Loan Trust 2005-11
Mortgage Loan Pass-Through Certificates, Series 2005-11

Ladies and Gentlemen:

In connection with our acquisition of the above Certificates we certify that (a) we understand that the Certificates are not being registered under the Securities Act of 1933, as amended (the "Act"), or any state securities laws and are being transferred to us in a transaction that is exempt from the registration requirements of the Act and any such laws, (b) we have had the opportunity to ask questions of and receive answers from the Depositor concerning the purchase of the Certificates and all matters relating thereto or any additional information deemed necessary to our decision to purchase the Certificates, (c) we have not, nor has anyone acting on our behalf offered, transferred, pledged, sold or otherwise disposed of the Certificates, any interest in the Certificates or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Certificates, any interest in the Certificates or any other similar security from, or otherwise approached or negotiated with respect to the Certificates, any interest in the Certificates or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action, that would constitute a distribution of the Certificates under the Securities Act or that would render the disposition of the Certificates a violation of Section 5 of the Securities Act or require registration pursuant thereto, nor will act, nor has authorized or will authorize any person to act, in such manner with respect to the Certificates, and (d) we are a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act and have completed either of the forms of certification to that effect attached hereto as Annex 1 or Annex 2. We are aware that the sale to us is being made in reliance on Rule 144A. We are acquiring the Certificates for our own account or for resale pursuant to Rule 144A and further, understand that such Certificates may be resold, pledged or transferred only (i) to a person reasonably believed to be a qualified institutional buyer that purchases for its own account or for the account of a qualified institutional buyer to whom notice is given that the resale, pledge or transfer is being made in reliance on Rule 144A, or (ii) pursuant to another exemption from registration under the Securities Act.

J-2-1

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Pooling and Servicing Agreement.

Very truly yours,

[NAME OF TRANSFEREE]

By: _____
            Authorized Officer

## QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

[For Transferees Other Than Registered Investment Companies]

The undersigned (the "Buyer") hereby certifies as follows to the parties listed in the Rule 144A Transferee Certificate to which this certification relates with respect to the Certificates described therein:

i.    As indicated below, the undersigned is the President, Chief Financial Officer, Senior Vice President or other executive officer of the Buyer.

ii.    In connection with purchases by the Buyer, the Buyer is a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act of 1933, as amended ("Rule 144A") because (i) the Buyer owned and/or invested on a discretionary basis $_____[1]$ in securities (except for the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A and (ii) the Buyer satisfies the criteria in the category marked below.

\_\_\_\_    Corporation, etc. The Buyer is a corporation (other than a bank, savings and loan association or similar institution), Massachusetts or similar business trust, partnership, or charitable organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

\_\_\_\_    Bank. The Buyer (a) is a national bank or banking institution organized under the laws of any State, territory or the District of Columbia, the business of which is substantially confined to banking and is supervised by the State or territorial banking commission or similar official or is a foreign bank or equivalent institution, and (b) has an audited net worth of at least $25,000,000 as demonstrated in its latest annual financial statements, a copy of which is attached hereto.

\_\_\_\_    Savings and Loan. The Buyer (a) is a savings and loan association, building and loan association, cooperative bank, homestead association or similar institution, which is supervised and examined by a State or Federal authority having supervision over any such institutions or is a foreign savings and loan association or equivalent institution and (b) has an audited net worth of at least $25,000,000 as demonstrated in its latest annual financial statements, a copy of which is attached hereto.

---

[1]    Buyer must own and/or invest on a discretionary basis at least $100,000,000 in securities unless Buyer is a dealer, and, in that case, Buyer must own and/or invest on a discretionary basis at least $10,000,000 in securities.

     \_\_\_    <u>Broker-dealer</u>. The Buyer is a dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934.

     \_\_\_    <u>Insurance Company</u>. The Buyer is an insurance company whose primary and predominant business activity is the writing of insurance or the reinsuring of risks underwritten by insurance companies and which is subject to supervision by the insurance commissioner or a similar official or agency of a State, territory or the District of Columbia.

     \_\_\_    <u>State or Local Plan</u>. The Buyer is a plan established and maintained by a State, its political subdivisions, or any agency or instrumentality of the State or its political subdivisions, for the benefit of its employees.

     \_\_\_    <u>ERISA Plan</u>. The Buyer is an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974.

     \_\_\_    <u>Investment Advisor</u>. The Buyer is an investment advisor registered under the Investment Advisors Act of 1940.

     \_\_\_    <u>Small Business Investment Company</u>. Buyer is a small business investment company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

     \_\_\_    <u>Business Development Company</u>. Buyer is a business development company as defined in Section 202(a)(22) of the Investment Advisors Act of 1940.

iii.    The term "<u>securities</u>" as used herein <u>does not include</u> (i) securities of issuers that are affiliated with the Buyer, (ii) securities that are part of an unsold allotment to or subscription by the Buyer, if the Buyer is a dealer, (iii) securities issued or guaranteed by the U.S. or any instrumentality thereof, (iv) bank deposit notes and certificates of deposit, (v) loan participations, (vi) repurchase agreements, (vii) securities owned but subject to a repurchase agreement and (viii) currency, interest rate and commodity swaps.

iv.    For purposes of determining the aggregate amount of securities owned and/or invested on a discretionary basis by the Buyer, the Buyer used the cost of such securities to the Buyer and did not include any of the securities referred to in the preceding paragraph, except (i) where the Buyer reports its securities holdings in its financial statements on the basis of their market value, and (ii) no current information with respect to the cost of those securities has been published. If clause (ii) in the preceding sentence applies, the securities may be valued at market. Further, in determining such aggregate amount, the Buyer may have included securities owned by subsidiaries of the Buyer, but only if such subsidiaries are consolidated with the Buyer in its financial statements prepared in accordance with generally accepted accounting principles and if the investments of such subsidiaries are managed under the Buyer's direction. However, such securities were not included if the Buyer is a majority-owned, consolidated subsidiary of another enterprise and the Buyer is not itself a reporting company under the Securities Exchange Act of 1934, as amended.

v.    The Buyer acknowledges that it is familiar with Rule 144A and understands that the seller to it and other parties related to the Certificates are relying and will continue to rely on the statements made herein because one or more sales to the Buyer may be in reliance on Rule 144A.

vi.    Until the date of purchase of the Rule 144A Securities, the Buyer will notify each of the parties to which this certification is made of any changes in the information and conclusions herein.  Until such notice is given, the Buyer's purchase of the Certificates will constitute a reaffirmation of this certification as of the date of such purchase.  In addition, if the Buyer is a bank or savings and loan is provided above, the Buyer agrees that it will furnish to such parties updated annual financial statements promptly after they become available.

_____
Print Name of Buyer

By:_____
    Name:
    Title:

Date:_____

65702v.6

<u>QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A</u>

[For Transferees That are Registered Investment Companies]

The undersigned (the "Buyer") hereby certifies as follows to the parties listed in the Rule 144A Transferee Certificate to which this certification relates with respect to the Certificates described therein:

1.    As indicated below, the undersigned is the President, Chief Financial Officer or Senior Vice President of the Buyer or, if the Buyer is a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act of 1933, as amended ("Rule 144A") because Buyer is part of a Family of Investment Companies (as defined below), is such an officer of the Adviser.

2.    In connection with purchases by Buyer, the Buyer is a "qualified institutional buyer" as defined in SEC Rule 144A because (i) the Buyer is an investment company registered under the Investment Company Act of 1940, as amended and (ii) as marked below, the Buyer alone, or the Buyer's Family of Investment Companies, owned at least $100,000,000 in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year.  For purposes of determining the amount of securities owned by the Buyer or the Buyer's Family of Investment Companies, the cost of such securities was used, except (i) where the Buyer or the Buyer's Family of Investment Companies reports its securities holdings in its financial statements on the basis of their market value, and (ii) no current information with respect to the cost of those securities has been published.  If clause (ii) in the preceding sentence applies, the securities may be valued at market.

_____    The Buyer owned $_____ in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

_____    The Buyer is part of a Family of Investment Companies which owned in the aggregate $_____ in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

3.    The term "<u>Family of Investment Companies</u>" as used herein means two or more registered investment companies (or series thereof) that have the same investment adviser or investment advisers that are affiliated (by virtue of being majority owned subsidiaries of the same parent or because one investment adviser is a majority owned subsidiary of the other).

4.    The term "<u>securities</u>" as used herein does not include (i) securities of issuers that are affiliated with the Buyer or are part of the Buyer's Family of Investment Companies, (ii) securities issued or guaranteed by the U.S. or any instrumentality thereof, (iii) bank deposit notes and certificates of deposit, (iv) loan participations, (v) repurchase agreements,

(vi) securities owned but subject to a repurchase agreement and (vii) currency, interest rate and commodity swaps.

      5.     The Buyer is familiar with Rule 144A and understands that the parties listed in the Rule 144A Transferee Certificate to which this certification relates are relying and will continue to rely on the statements made herein because one or more sales to the Buyer will be in reliance on Rule 144A. In addition, the Buyer will only purchase for the Buyer's own account.

      6.     Until the date of purchase of the Certificates, the undersigned will notify the parties listed in the Rule 144A Transferee Certificate to which this certification relates of any changes in the information and conclusions herein. Until such notice is given, the Buyer's purchase of the Certificates will constitute a reaffirmation of this certification by the undersigned as of the date of such purchase.

 

_____

Print Name of Buyer or Adviser

By:_____

  Name:

  Title:

IF AN ADVISER:

 

_____

Print Name of Buyer

Date:_____

65702v.6

EXHIBIT K

## FORM OF TRANSFEROR CERTIFICATE

[Date]

Greenwich Capital Acceptance, Inc.
600 Steamboat Road
Greenwich, Connecticut 06380
Attention: Corporate Trust, HarborView Mortgage Loan Trust 2005-11

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

> Re:    HarborView Mortgage Loan Trust 2005-11 Mortgage
> Loan Pass-Through Certificates, Series 2005-11, Class [A-R], [A-
> R-II]

Ladies and Gentlemen:

In connection with our proposed transfer of an Ownership Interest in the Class [A-R], [A-R-II] Certificate, we hereby certify that (a) we have no knowledge that the proposed Transferee is not a Permitted Transferee acquiring an Ownership Interest in such Class [A-R], [A-R-II] Certificate for its own account and not in a capacity as trustee, nominee, or agent for another Person, and (b) we have not undertaken the proposed transfer in whole or in part to impede the assessment or collection of tax.

Very truly yours,

[_____]

By: _____

EXHIBIT L

**TRANSFER AFFIDAVIT FOR CLASS A-R CERTIFICATE
PURSUANT TO SECTION 6.02(e)**

HARBORVIEW MORTGAGE LOAN TRUST 2005-11
MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2005-11, CLASS [A-R],
[A-R-II]

STATE OF             )
                        )   ss:
COUNTY OF           )

The undersigned, being first duly sworn, deposes and says as follows:

1.     The undersigned is an officer of _____, the proposed Transferee of a 100% Ownership Interest in the Class [A-R], [A-R-II] Certificate (the "Certificate") issued pursuant to the Pooling and Servicing Agreement, (the "Agreement") dated as of March 1, 2005, relating to the above-referenced Certificates, among Greenwich Capital Acceptance, Inc., as Depositor, Greenwich Capital Financial Products, Inc., as Seller, and Deutsche Bank National Trust Company, as Trustee. Capitalized terms used, but not defined herein, shall have the meanings ascribed to such terms in the Agreement. The Transferee has authorized the undersigned to make this affidavit on behalf of the Transferee.

2.     The Transferee is, as of the date hereof, and will be, as of the date of the Transfer, a Permitted Transferee. The Transferee is acquiring its Ownership Interest for its own account and not in a capacity as trustee, nominee or agent for another party.

3.     The Transferee has been advised of, and understands that (i) a tax will be imposed on Transfers of the Certificate to Persons that are not Permitted Transferees; (ii) such tax will be imposed on the transferor, or, if such Transfer is through an agent (which includes a broker, nominee or middleman) for a Person that is not a Permitted Transferee, on the agent; and (iii) the Person otherwise liable for the tax shall be relieved of liability for the tax if the subsequent Transferee furnished to such Person an affidavit that such subsequent Transferee is a Permitted Transferee and, at the time of Transfer, such Person does not have actual knowledge that the affidavit is false. The Transferee has provided financial statements or other financial information requested by the Transferor in connection with the transfer of the Certificate to permit the Transferor to assess the financial capability of the Transferee to pay such taxes.

4.     The Transferee has been advised of, and understands that a tax may be imposed on a "pass-through entity" holding the Certificate if, at any time during the taxable year of the pass-through entity, a Disqualified Organization is the record holder of an interest in such entity. The Transferee understands that such tax will not be imposed for any period with respect to which the record holder furnishes to the pass-through entity an affidavit that such record holder is not a Disqualified Organization and the pass-through entity does not

L-1

have actual knowledge that such affidavit is false. (For this purpose, a "pass-through entity" includes a regulated investment company, a real estate investment trust or common trust fund, a partnership, trust or estate, and certain cooperatives and, except as may be provided in Treasury Regulations, persons holding interests in pass-through entities as a nominee for another Person.)

5.      The Transferee has reviewed the provisions of Section 6.02(e) of the Agreement and understands the legal consequences of the acquisition of an Ownership Interest in the Certificate including, without limitation, the restrictions on subsequent Transfers and the provisions regarding voiding the Transfer and mandatory sales. The Transferee expressly agrees to be bound by and to abide by the provisions of Section 6.02(e) of the Agreement and the restrictions noted on the face of the Certificate. The Transferee understands and agrees that any breach of any of the representations included herein shall render the Transfer to the Transferee contemplated hereby null and void.

6.      The Transferee agrees to require a Transfer Affidavit from any Person to whom the Transferee attempts to Transfer its Ownership Interest in the Certificate, and the Transferee will not Transfer its Ownership Interest or cause any Ownership Interest to be Transferred to any Person that the Transferee knows is not a Permitted Transferee. In connection with any such Transfer by the Transferee, the Transferee agrees to deliver to the Trustee a certificate substantially in the form set forth as Exhibit K to the Agreement (a "Transferor Certificate").

7.      The Transferee does not have the intention to impede the assessment or collection of any tax legally required to be paid with respect to the Certificate.

8.      The Transferee's taxpayer identification number is _____.

9.      The Transferee is aware that the Certificate may be a "noneconomic residual interest" within the meaning of the REMIC provisions and that the transferor of a noneconomic residual interest will remain liable for any taxes due with respect to the income on such residual interest, unless no significant purpose of the transfer was to impede the assessment or collection of tax.

IN WITNESS WHEREOF, the Transferee has caused this instrument to be executed on its behalf, pursuant to authority of its Board of Directors, by its duly authorized officer and its corporate seal to be hereunto affixed, duly attested, this ___ day of _____, 20_.

[NAME OF TRANSFEREE]

By:_____
   Name:
   Title:

[Corporate Seal]

ATTEST:

_____
[Assistant] Secretary

Personally appeared before me the above-named _____, known or proved to me to be the same person who executed the foregoing instrument and to be the _____ of the Transferee, and acknowledged that he executed the same as his free act and deed and the free act and deed of the Transferee.

Subscribed and sworn before me this ___ day of _____, 20_.


_____
NOTARY PUBLIC


      My Commission expires the ___ day of _____, 20_.

L-3

EXHIBIT M

**LIST OF ASSIGNMENT AGREEMENTS**

1.　　Assignment and Recognition Agreement, dated as of August 31, 2005 among Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital Acceptance, Inc., as assignee, and Alliance Bancorp.

2.　　Assignment and Recognition Agreement, dated as of August 31, 2005 among Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital Acceptance, Inc., as assignee, and Commercial Capital Bank, F.S.B.

3.　　Assignment and Recognition Agreement, dated as of August 31, 2005 among Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital Acceptance, Inc., as assignee, and Homefield Financial, Inc.

4.　　Assignment and Recognition Agreement, dated as of August 31, 2005 among Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital Acceptance, Inc., as assignee, and Community Lending, Inc.

5.　　Assignment and Recognition Agreement, dated as of August 31, 2005 among Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital Acceptance, Inc., as assignee, and E-Loan, Inc.

6.　　Assignment and Recognition Agreement, dated as of August 31, 2005 among Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital Acceptance, Inc., as assignee, and Gateway Funding Diversified Mortgage Services, LP.

7.　　Assignment and Recognition Agreement, dated as of August 31, 2005 among Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital Acceptance, Inc., as assignee, and Home Loan Center, Inc.

8.　　Assignment and Recognition Agreement, dated as of August 31, 2005 among Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital Acceptance, Inc., as assignee, and Loan Link Financial Services.

9.　　Assignment and Recognition Agreement, dated as of August 31, 2005 among Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital Acceptance, Inc., as assignee, and Loan Center of California, Inc.

M-1

10.    Assignment and Recognition Agreement, dated as of August 31, 2005 among
Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital
Acceptance, Inc., as assignee, and Metrocities Mortgage LLC.

11.    Assignment and Recognition Agreement, dated as of August 31, 2005 among
Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital
Acceptance, Inc., as assignee, and Paul Financial, LLC.

12.    Assignment and Recognition Agreement, dated as of August 31, 2005 among
Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital
Acceptance, Inc., as assignee, and Plaza Home Mortgage, Inc.

13.    Assignment and Recognition Agreement, dated as of August 31, 2005 among
Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital
Acceptance, Inc., as assignee, and PMC Bancorp.

14.    Assignment and Recognition Agreement, dated as of August 31, 2005 among
Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital
Acceptance, Inc., as assignee, and Secured Bankers Mortgage Company.

15.    Assignment and Recognition Agreement, dated as of August 31, 2005 among
Greenwich Capital Financial Products, Inc., as assignor, Greenwich Capital
Acceptance, Inc., as assignee, and Sierra Pacific Mortgage, Inc.

65702v.6

EXHIBIT N-1

## FORM OF TRANSFER CERTIFICATE
### FOR TRANSFER FROM RESTRICTED GLOBAL SECURITY
### TO REGULATION S GLOBAL SECURITY
(Transfers pursuant to §§ 6.02 (f) (ii)
of the Pooling and Servicing Agreement)

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

> Re:    HarborView Mortgage Loan Trust 2005-11
>        Mortgage Loan Pass-Through Certificates, Series 2005-11

Reference is hereby made to the Pooling and Servicing Agreement dated as of August 1, 2005 (the "Pooling and Servicing Agreement") relating to the above referenced certificates, among Greenwich Capital Acceptance, Inc., as Depositor, Greenwich Capital Financial Products, Inc., as Seller, Wells Fargo Bank, N.A., as master servicer and securities administrator (the "Master Servicer" and the "Securities Administrator") and Deutsche Bank National Trust Company, as Trustee. Capitalized terms used but not defined herein shall have the meanings given them in the Pooling and Servicing Agreement.

This letter relates to U.S. $_____ aggregate principal amount of Securities which are held in the form of a Restricted Global Security with the Depository in the name of [name of transferor] _____ (the "Transferor") to effect the transfer of the Securities in exchange for an equivalent beneficial interest in a Regulation S Global Security.

In connection with such request, the Transferor does hereby certify that such transfer has been effected in accordance with the transfer restrictions set forth in the Pooling and Servicing Agreement and the private placement memorandum dated April 12, 2005, relating to the Securities and in accordance with Rule 904 of Regulation S, and that:

> a.    the offer of the Securities was not made to a person in the United States;
>
> b.    at the time the buy order was originated, the transferee was outside the United States or the Transferor and any person acting on its behalf reasonably believed that the transferee was outside the United States;
>
> c.    no directed selling efforts have been made in contravention of the requirements of Rule 903 or 904 of Regulation S, as applicable;
>
> d.    the transaction is not part of a plan or scheme to evade the registration requirements of the United States Securities Act of 1933, as amended (the "Securities Act"); and

N-1-1

e.      the transferee is not a U.S. Person.

You and the Depositor are entitled to rely upon this letter and are irrevocably authorized to produce this letter or a copy hereof to any interested party in any administrative or legal proceedings or official inquiry with respect to the matters covered hereby.  Terms used in this certificate have the meanings set forth in Regulation S.

_____
[Name of Transferor]

By: _____
    Name:
    Title:

Date:_____, ___

EXHIBIT N-2
FORM OF TRANSFER CERTIFICATE FOR TRANSFER
FROM REGULATION S GLOBAL SECURITY
TO RESTRICTED GLOBAL SECURITY
(Transfers pursuant to §§ 6.02 (f) (iii)
of the Pooling and Servicing Agreement)

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

> Re:    HarborView Mortgage Loan Trust 2005-11
>        Mortgage Loan Pass-Through Certificates, Series 2005-11

Reference is hereby made to the Pooling and Servicing Agreement dated as of August 1, 2005 (the "Pooling and Servicing Agreement") relating to the above referenced certificates, among Greenwich Capital Acceptance, Inc., as Depositor, Greenwich Capital Financial Products, Inc., as Seller, Wells Fargo Bank, N.A., as master servicer and securities administrator (the "Master Servicer" and the "Securities Administrator") and Deutsche Bank National Trust Company, as Trustee. Capitalized terms used but not defined herein shall have the meanings given them in the Pooling and Servicing Agreement.

This letter relates to U.S. $_____ aggregate principal amount of Securities which are held in the form of a Regulations S Global Security in the name of [name of transferor] _____ (the "Transferor") to effect the transfer of the Securities in exchange for an equivalent beneficial interest in a Restricted Global Security.

In connection with such request, and in respect of such Securities, the Transferor does hereby certify that such Securities are being transferred in accordance with (i) the transfer restrictions set forth in the Pooling and Servicing Agreement and the private placement memorandum dated August [  ], 2005, relating to the Securities and (ii) Rule 144A under the United States Securities Act of 1933, as amended, to a transferee that the Transferor reasonably believes is purchasing the Securities for its own account or an account with respect to which the transferee exercises sole investment discretion, the transferee or any such account is a qualified institutional buyer within the meaning of Rule 144A, in a transaction meeting the requirements of Rule 144A and in accordance with any applicable securities laws of any state of the United States or any other jurisdiction.

_____
[Name of Transferor]

By:_____
    Name:
    Title:

Date:                ,

N-2-1

EXHIBIT O

CERTIFICATE INSURANCE POLICY

[On File with Trustee]

65702v.6

## SCHEDULE I

## MORTGAGE LOAN SCHEDULE

**(On file with the Trustee)**

## SCHEDULE II

**[Reserved]**

SCHEDULE III

**YIELD MAINTENANCE PAYMENTS**

Class 1-A-1A Certificates

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| September 2005 | 155,974,140.77 | 9.92092 |
| October 2005 | 153,664,738.04 | 9.60123 |
| November 2005 | 151,388,785.95 | 9.92163 |
| December 2005 | 149,145,758.89 | 9.60192 |
| January 2006 | 146,935,140.03 | 9.60227 |
| February 2006 | 144,756,421.14 | 10.63147 |
| March 2006 | 142,609,102.51 | 9.60297 |
| April 2006 | 140,492,692.71 | 9.92343 |
| May 2006 | 138,406,708.54 | 9.60367 |
| June 2006 | 136,344,430.22 | 9.92415 |
| July 2006 | 134,290,714.54 | 9.60436 |
| August 2006 | 132,258,631.10 | 9.60472 |
| September 2006 | 130,242,005.91 | 9.92505 |
| October 2006 | 128,197,613.00 | 9.60432 |
| November 2006 | 126,183,762.57 | 9.92388 |
| December 2006 | 124,190,338.78 | 9.60312 |
| January 2007 | 122,223,884.47 | 9.60248 |
| February 2007 | 120,246,301.39 | 10.63051 |
| March 2007 | 118,295,944.38 | 9.60099 |
| April 2007 | 116,367,809.37 | 9.92026 |
| May 2007 | 114,401,490.65 | 9.59955 |
| June 2007 | 112,463,851.48 | 9.91881 |
| July 2007 | 110,292,022.90 | 9.59853 |
| August 2007 | 108,150,890.98 | 9.59822 |
| September 2007 | 105,907,326.13 | 9.91780 |
| October 2007 | 103,582,222.93 | 9.59785 |
| November 2007 | 101,300,525.86 | 9.91775 |
| December 2007 | 99,032,207.09 | 9.59788 |
| January 2008 | 96,806,567.14 | 9.59794 |
| February 2008 | 94,622,815.73 | 10.25994 |
| March 2008 | 92,480,177.18 | 9.59807 |
| April 2008 | 90,377,890.19 | 9.91807 |
| May 2008 | 88,315,207.60 | 9.59819 |
| June 2008 | 86,291,396.07 | 9.91820 |
| July 2008 | 84,305,735.84 | 9.59832 |
| August 2008 | 82,357,520.52 | 9.59838 |
| September 2008 | 80,446,056.79 | 9.91840 |

1

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| October 2008 | 78,570,664.20 | 9.59851 |
| November 2008 | 76,730,674.91 | 9.91853 |
| December 2008 | 74,925,433.45 | 9.59865 |
| January 2009 | 73,154,296.53 | 9.59872 |
| February 2009 | 71,416,632.77 | 10.62723 |
| March 2009 | 69,711,822.50 | 9.59885 |
| April 2009 | 68,039,257.55 | 9.91889 |
| May 2009 | 66,745,141.81 | 9.59899 |
| June 2009 | 65,475,277.89 | 9.91903 |
| July 2009 | 64,229,214.85 | 9.59913 |
| August 2009 | 63,006,510.09 | 9.59921 |
| September 2009 | 61,806,729.22 | 9.91926 |
| October 2009 | 60,629,445.89 | 9.59935 |
| November 2009 | 59,474,241.63 | 9.91941 |
| December 2009 | 58,340,705.76 | 9.59950 |
| January 2010 | 57,228,435.16 | 9.59958 |
| February 2010 | 56,137,034.20 | 10.62819 |
| March 2010 | 55,066,114.58 | 9.59973 |
| April 2010 | 54,015,295.17 | 9.91980 |
| May 2010 | 52,984,201.94 | 9.59988 |
| June 2010 | 51,972,467.75 | 9.91996 |
| July 2010 | 50,979,732.28 | 9.60004 |
| August 2010 | 50,005,641.88 | 9.60012 |
| September 2010 | 49,049,849.46 | 9.92021 |
| October 2010 | 48,112,014.34 | 9.60029 |
| November 2010 | 47,191,802.18 | 9.92038 |
| December 2010 | 46,288,884.82 | 9.60045 |
| January 2011 | 45,402,940.18 | 9.60054 |
| February 2011 | 44,533,652.15 | 10.62926 |
| March 2011 | 43,680,710.49 | 9.60071 |
| April 2011 | 42,843,810.69 | 9.92082 |
| May 2011 | 42,022,653.90 | 9.60088 |
| June 2011 | 41,216,946.80 | 9.92100 |
| July 2011 | 40,426,401.52 | 9.60106 |
| August 2011 | 39,650,735.50 | 9.60115 |
| September 2011 | 38,889,671.44 | 9.92128 |
| October 2011 | 38,142,937.19 | 9.60133 |
| November 2011 | 37,410,265.61 | 9.92147 |
| December 2011 | 36,691,394.55 | 9.60151 |
| January 2012 | 35,986,066.70 | 9.60161 |
| February 2012 | 35,294,029.53 | 10.26389 |
| March 2012 | 34,615,035.18 | 9.60180 |
| April 2012 | 33,948,840.41 | 9.92196 |

2

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| May 2012 | 33,295,206.47 | 9.60199 |
| June 2012 | 32,653,899.04 | 9.92216 |
| July 2012 | 32,024,688.17 | 9.60219 |
| August 2012 | 31,407,348.14 | 9.60229 |
| September 2012 | 30,801,657.45 | 9.92247 |
| October 2012 | 30,207,398.68 | 9.60249 |
| November 2012 | 29,624,358.47 | 9.92268 |
| December 2012 | 29,052,327.39 | 9.60270 |
| January 2013 | 28,491,099.93 | 9.60281 |
| February 2013 | 27,940,474.37 | 10.63179 |
| March 2013 | 27,400,252.74 | 9.60302 |
| April 2013 | 26,870,240.74 | 9.92323 |
| May 2013 | 26,350,247.68 | 9.60324 |
| June 2013 | 25,840,086.42 | 9.92346 |
| July 2013 | 25,339,573.27 | 9.60346 |
| August 2013 | 24,848,527.96 | 9.60357 |
| September 2013 | 24,366,773.58 | 9.92381 |
| October 2013 | 23,894,136.49 | 9.60380 |
| November 2013 | 23,430,446.28 | 9.92404 |
| December 2013 | 22,975,535.70 | 9.60403 |
| January 2014 | 22,529,240.60 | 9.60415 |
| February 2014 | 22,091,399.90 | 10.63330 |
| March 2014 | 21,661,855.48 | 9.60439 |
| April 2014 | 21,240,452.19 | 9.92466 |
| May 2014 | 20,827,037.74 | 9.60463 |
| June 2014 | 20,421,462.68 | 9.92492 |
| July 2014 | 20,023,580.32 | 9.60488 |
| August 2014 | 19,633,246.72 | 9.60501 |
| September 2014 | 19,250,320.59 | 9.92531 |
| October 2014 | 18,874,663.28 | 9.60527 |
| November 2014 | 18,506,138.71 | 9.92558 |
| December 2014 | 18,144,613.35 | 9.60553 |
| January 2015 | 17,789,956.11 | 9.60566 |
| February 2015 | 17,442,038.36 | 10.63499 |
| March 2015 | 17,100,733.88 | 9.60593 |
| April 2015 | 16,765,918.77 | 9.92627 |
| May 2015 | 16,437,471.43 | 9.60620 |
| June 2015 | 16,115,272.54 | 9.92656 |
| July 2015 | 15,799,204.99 | 9.60649 |
| August 2015 | 15,489,153.85 | 9.60663 |
| September 2015 | 15,185,006.32 | 9.92700 |
| October 2015 | 14,886,651.70 | 9.60692 |
| November 2015 | 14,593,981.36 | 9.92730 |

3

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| December 2015 | 14,306,888.68 | 9.60721 |
| January 2016 | 14,025,269.03 | 9.60736 |
| February 2016 and thereafter | 0.00 | 0.00000 |
| | | |

65702v.6

Class 1-A-1B Certificates

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| September 2005 | 38,993,535.19 | 9.85092 |
| October 2005 | 38,416,184.51 | 9.53123 |
| November 2005 | 37,847,196.49 | 9.85163 |
| December 2005 | 37,286,439.72 | 9.53192 |
| January 2006 | 36,733,785.01 | 9.53227 |
| February 2006 | 36,189,105.29 | 10.56147 |
| March 2006 | 35,652,275.63 | 9.53297 |
| April 2006 | 35,123,173.18 | 9.85343 |
| May 2006 | 34,601,677.13 | 9.53367 |
| June 2006 | 34,086,107.55 | 9.85415 |
| July 2006 | 33,572,678.64 | 9.53436 |
| August 2006 | 33,064,657.78 | 9.53472 |
| September 2006 | 32,560,501.48 | 9.85505 |
| October 2006 | 32,049,403.25 | 9.53432 |
| November 2006 | 31,545,940.64 | 9.85388 |
| December 2006 | 31,047,584.70 | 9.53312 |
| January 2007 | 30,555,971.12 | 9.53248 |
| February 2007 | 30,061,575.35 | 10.56051 |
| March 2007 | 29,573,986.10 | 9.53099 |
| April 2007 | 29,091,952.34 | 9.85026 |
| May 2007 | 28,600,372.66 | 9.52955 |
| June 2007 | 28,115,962.87 | 9.84881 |
| July 2007 | 27,573,005.73 | 9.52853 |
| August 2007 | 27,037,722.74 | 9.52822 |
| September 2007 | 26,476,831.53 | 9.84780 |
| October 2007 | 25,895,555.73 | 9.52785 |
| November 2007 | 25,325,131.47 | 9.84775 |
| December 2007 | 24,758,051.77 | 9.52788 |
| January 2008 | 24,201,641.79 | 9.52794 |
| February 2008 | 23,655,703.93 | 10.18994 |
| March 2008 | 23,120,044.29 | 9.52807 |
| April 2008 | 22,594,472.55 | 9.84807 |
| May 2008 | 22,078,801.90 | 9.52819 |
| June 2008 | 21,572,849.02 | 9.84820 |
| July 2008 | 21,076,433.96 | 9.52832 |
| August 2008 | 20,589,380.13 | 9.52838 |
| September 2008 | 20,111,514.20 | 9.84840 |
| October 2008 | 19,642,666.05 | 9.52851 |
| November 2008 | 19,182,668.73 | 9.84853 |
| December 2008 | 18,731,358.36 | 9.52865 |
| January 2009 | 18,288,574.13 | 9.52872 |

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| February 2009 | 17,854,158.19 | 10.55723 |
| March 2009 | 17,427,955.62 | 9.52885 |
| April 2009 | 17,009,814.39 | 9.84889 |
| May 2009 | 16,686,285.45 | 9.52899 |
| June 2009 | 16,368,819.47 | 9.84903 |
| July 2009 | 16,057,303.71 | 9.52913 |
| August 2009 | 15,751,627.52 | 9.52921 |
| September 2009 | 15,451,682.30 | 9.84926 |
| October 2009 | 15,157,361.47 | 9.52935 |
| November 2009 | 14,868,560.41 | 9.84941 |
| December 2009 | 14,585,176.44 | 9.52950 |
| January 2010 | 14,307,108.79 | 9.52958 |
| February 2010 | 14,034,258.55 | 10.55819 |
| March 2010 | 13,766,528.64 | 9.52973 |
| April 2010 | 13,503,823.79 | 9.84980 |
| May 2010 | 13,246,050.49 | 9.52988 |
| June 2010 | 12,993,116.94 | 9.84996 |
| July 2010 | 12,744,933.07 | 9.53004 |
| August 2010 | 12,501,410.47 | 9.53012 |
| September 2010 | 12,262,462.36 | 9.85021 |
| October 2010 | 12,028,003.58 | 9.53029 |
| November 2010 | 11,797,950.54 | 9.85038 |
| December 2010 | 11,572,221.20 | 9.53045 |
| January 2011 | 11,350,735.04 | 9.53054 |
| February 2011 | 11,133,413.04 | 10.55926 |
| March 2011 | 10,920,177.62 | 9.53071 |
| April 2011 | 10,710,952.67 | 9.85082 |
| May 2011 | 10,505,663.48 | 9.53088 |
| June 2011 | 10,304,236.70 | 9.85100 |
| July 2011 | 10,106,600.38 | 9.53106 |
| August 2011 | 9,912,683.87 | 9.53115 |
| September 2011 | 9,722,417.86 | 9.85128 |
| October 2011 | 9,535,734.30 | 9.53133 |
| November 2011 | 9,352,566.40 | 9.85147 |
| December 2011 | 9,172,848.64 | 9.53151 |
| January 2012 | 8,996,516.67 | 9.53161 |
| February 2012 | 8,823,507.38 | 10.19389 |
| March 2012 | 8,653,758.80 | 9.53180 |
| April 2012 | 8,487,210.10 | 9.85196 |
| May 2012 | 8,323,801.62 | 9.53199 |
| June 2012 | 8,163,474.76 | 9.85216 |
| July 2012 | 8,006,172.04 | 9.53219 |
| August 2012 | 7,851,837.04 | 9.53229 |

65702v.6

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| September 2012 | 7,700,414.36 | 9.85247 |
| October 2012 | 7,551,849.67 | 9.53249 |
| November 2012 | 7,406,089.62 | 9.85268 |
| December 2012 | 7,263,081.85 | 9.53270 |
| January 2013 | 7,122,774.98 | 9.53281 |
| February 2013 | 6,985,118.59 | 10.56179 |
| March 2013 | 6,850,063.19 | 9.53302 |
| April 2013 | 6,717,560.19 | 9.85323 |
| May 2013 | 6,587,561.92 | 9.53324 |
| June 2013 | 6,460,021.60 | 9.85346 |
| July 2013 | 6,334,893.32 | 9.53346 |
| August 2013 | 6,212,131.99 | 9.53357 |
| September 2013 | 6,091,693.40 | 9.85381 |
| October 2013 | 5,973,534.12 | 9.53380 |
| November 2013 | 5,857,611.57 | 9.85404 |
| December 2013 | 5,743,883.92 | 9.53403 |
| January 2014 | 5,632,310.15 | 9.53415 |
| February 2014 | 5,522,849.97 | 10.56330 |
| March 2014 | 5,415,463.87 | 9.53439 |
| April 2014 | 5,310,113.05 | 9.85466 |
| May 2014 | 5,206,759.44 | 9.53463 |
| June 2014 | 5,105,365.67 | 9.85492 |
| July 2014 | 5,005,895.08 | 9.53488 |
| August 2014 | 4,908,311.68 | 9.53501 |
| September 2014 | 4,812,580.15 | 9.85531 |
| October 2014 | 4,718,665.82 | 9.53527 |
| November 2014 | 4,626,534.68 | 9.85558 |
| December 2014 | 4,536,153.34 | 9.53553 |
| January 2015 | 4,447,489.03 | 9.53566 |
| February 2015 | 4,360,509.59 | 10.56499 |
| March 2015 | 4,275,183.47 | 9.53593 |
| April 2015 | 4,191,479.69 | 9.85627 |
| May 2015 | 4,109,367.86 | 9.53620 |
| June 2015 | 4,028,818.14 | 9.85656 |
| July 2015 | 3,949,801.25 | 9.53649 |
| August 2015 | 3,872,288.46 | 9.53663 |
| September 2015 | 3,796,251.58 | 9.85700 |
| October 2015 | 3,721,662.93 | 9.53692 |
| November 2015 | 3,648,495.34 | 9.85730 |
| December 2015 | 3,576,722.17 | 9.53721 |
| January 2016 | 3,506,317.26 | 9.53736 |
| February 2016 and thereafter | 0.00 | 0.00000 |

Class 2-A-1A and Class 2-A-1B Certificates

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| September 2005 | 345,359,010.88 | 9.97656 |
| October 2005 | 340,229,971.97 | 9.65516 |
| November 2005 | 335,175,559.84 | 9.97745 |
| December 2005 | 330,194,596.54 | 9.65603 |
| January 2006 | 325,285,923.82 | 9.65647 |
| February 2006 | 320,448,402.85 | 10.69158 |
| March 2006 | 315,680,913.86 | 9.65735 |
| April 2006 | 310,982,231.84 | 9.97971 |
| May 2006 | 306,350,837.18 | 9.65822 |
| June 2006 | 301,772,477.60 | 9.98061 |
| July 2006 | 297,216,792.20 | 9.65908 |
| August 2006 | 292,705,317.54 | 9.65954 |
| September 2006 | 288,234,900.01 | 9.98184 |
| October 2006 | 283,651,697.15 | 9.65918 |
| November 2006 | 279,097,233.31 | 9.98034 |
| December 2006 | 274,612,072.15 | 9.65762 |
| January 2007 | 270,195,084.42 | 9.65684 |
| February 2007 | 265,833,407.06 | 10.69066 |
| March 2007 | 261,538,040.88 | 9.65531 |
| April 2007 | 257,274,433.91 | 9.97640 |
| May 2007 | 252,819,068.20 | 9.65386 |
| June 2007 | 248,405,714.61 | 9.97488 |
| July 2007 | 243,748,283.88 | 9.65243 |
| August 2007 | 239,023,547.40 | 9.65168 |
| September 2007 | 234,076,466.92 | 9.97299 |
| October 2007 | 229,083,555.51 | 9.65107 |
| November 2007 | 224,024,179.34 | 9.97276 |
| December 2007 | 219,059,380.78 | 9.65106 |
| January 2008 | 214,183,026.62 | 9.65106 |
| February 2008 | 209,397,919.15 | 10.31665 |
| March 2008 | 204,661,084.68 | 9.65113 |
| April 2008 | 200,013,376.10 | 9.97291 |
| May 2008 | 195,450,358.72 | 9.65127 |
| June 2008 | 190,973,281.93 | 9.97306 |
| July 2008 | 186,580,554.73 | 9.65143 |
| August 2008 | 182,270,615.54 | 9.65150 |
| September 2008 | 178,041,931.81 | 9.97330 |
| October 2008 | 173,892,999.33 | 9.65166 |
| November 2008 | 169,822,341.79 | 9.97346 |
| December 2008 | 165,828,510.24 | 9.65182 |
| January 2009 | 161,910,082.64 | 9.65190 |

65702v.6

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| February 2009 | 158,065,663.25 | 10.68612 |
| March 2009 | 154,293,882.26 | 9.65206 |
| April 2009 | 150,593,395.25 | 9.97388 |
| May 2009 | 147,731,334.99 | 9.65223 |
| June 2009 | 144,922,885.96 | 9.97406 |
| July 2009 | 142,167,051.53 | 9.65240 |
| August 2009 | 139,462,853.58 | 9.65248 |
| September 2009 | 136,809,332.07 | 9.97432 |
| October 2009 | 134,205,544.74 | 9.65266 |
| November 2009 | 131,650,566.77 | 9.97451 |
| December 2009 | 129,143,490.49 | 9.65284 |
| January 2010 | 126,683,425.01 | 9.65293 |
| February 2010 | 124,269,495.94 | 10.68727 |
| March 2010 | 121,900,845.10 | 9.65311 |
| April 2010 | 119,576,630.20 | 9.97497 |
| May 2010 | 117,296,024.52 | 9.65329 |
| June 2010 | 115,058,216.70 | 9.97517 |
| July 2010 | 112,862,410.37 | 9.65348 |
| August 2010 | 110,707,823.94 | 9.65358 |
| September 2010 | 108,593,690.25 | 9.97546 |
| October 2010 | 106,519,256.42 | 9.65377 |
| November 2010 | 104,483,783.47 | 9.97567 |
| December 2010 | 102,486,546.12 | 9.65397 |
| January 2011 | 100,526,832.53 | 9.65407 |
| February 2011 | 98,603,944.05 | 10.68855 |
| March 2011 | 96,717,194.98 | 9.65427 |
| April 2011 | 94,865,912.32 | 9.97619 |
| May 2011 | 93,049,435.53 | 9.65448 |
| June 2011 | 91,267,116.35 | 9.97640 |
| July 2011 | 89,518,318.49 | 9.65469 |
| August 2011 | 87,802,417.48 | 9.65480 |
| September 2011 | 86,118,800.40 | 9.97674 |
| October 2011 | 84,466,865.73 | 9.65502 |
| November 2011 | 82,846,023.05 | 9.97696 |
| December 2011 | 81,255,692.93 | 9.65524 |
| January 2012 | 79,695,306.67 | 9.65535 |
| February 2012 | 78,164,306.10 | 10.32136 |
| March 2012 | 76,662,143.39 | 9.65558 |
| April 2012 | 75,188,280.92 | 9.97755 |
| May 2012 | 73,742,190.96 | 9.65581 |
| June 2012 | 72,323,355.65 | 9.97779 |
| July 2012 | 70,931,266.66 | 9.65604 |
| August 2012 | 69,565,425.13 | 9.65616 |

9

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| September 2012 | 68,225,341.46 | 9.97816 |
| October 2012 | 66,910,535.09 | 9.65641 |
| November 2012 | 65,620,534.42 | 9.97841 |
| December 2012 | 64,354,876.56 | 9.65665 |
| January 2013 | 63,113,107.23 | 9.65678 |
| February 2013 | 61,894,780.56 | 10.69157 |
| March 2013 | 60,699,458.97 | 9.65703 |
| April 2013 | 59,526,712.99 | 9.97907 |
| May 2013 | 58,376,121.14 | 9.65729 |
| June 2013 | 57,247,269.72 | 9.97934 |
| July 2013 | 56,139,752.74 | 9.65756 |
| August 2013 | 55,053,171.73 | 9.65769 |
| September 2013 | 53,987,135.64 | 9.97976 |
| October 2013 | 52,941,260.63 | 9.65797 |
| November 2013 | 51,915,170.04 | 9.98004 |
| December 2013 | 50,908,494.16 | 9.65824 |
| January 2014 | 49,920,870.18 | 9.65838 |
| February 2014 | 48,951,941.98 | 10.69337 |
| March 2014 | 48,001,360.11 | 9.65867 |
| April 2014 | 47,068,781.54 | 9.98078 |
| May 2014 | 46,153,869.68 | 9.65896 |
| June 2014 | 45,256,294.15 | 9.98108 |
| July 2014 | 44,375,730.71 | 9.65926 |
| August 2014 | 43,511,861.16 | 9.65941 |
| September 2014 | 42,664,373.17 | 9.98155 |
| October 2014 | 41,832,960.27 | 9.65972 |
| November 2014 | 41,017,321.65 | 9.98187 |
| December 2014 | 40,217,162.08 | 9.66003 |
| January 2015 | 39,432,191.83 | 9.66019 |
| February 2015 | 38,662,126.55 | 10.69539 |
| March 2015 | 37,906,687.18 | 9.66051 |
| April 2015 | 37,165,599.85 | 9.98270 |
| May 2015 | 36,438,595.77 | 9.66084 |
| June 2015 | 35,725,411.13 | 9.98304 |
| July 2015 | 35,025,787.06 | 9.66118 |
| August 2015 | 34,339,469.48 | 9.66135 |
| September 2015 | 33,666,209.04 | 9.98357 |
| October 2015 | 33,005,761.02 | 9.66169 |
| November 2015 | 32,357,885.26 | 9.98393 |
| December 2015 | 31,722,346.07 | 9.66204 |
| January 2016 | 31,098,912.12 | 9.66222 |
| February 2016 and thereafter | 0.00 | 0.00000 |

10

Class 2-A-1C Certificates

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
| --- | --- | --- |
| September 2005 | 60,944,669.73 | 9.90656 |
| October 2005 | 60,039,560.63 | 9.58516 |
| November 2005 | 59,147,620.75 | 9.90745 |
| December 2005 | 58,268,642.19 | 9.58603 |
| January 2006 | 57,402,420.59 | 9.58647 |
| February 2006 | 56,548,754.95 | 10.62158 |
| March 2006 | 55,707,447.70 | 9.58735 |
| April 2006 | 54,878,282.64 | 9.90971 |
| May 2006 | 54,060,991.62 | 9.58822 |
| June 2006 | 53,253,059.57 | 9.91061 |
| July 2006 | 52,449,128.79 | 9.58908 |
| August 2006 | 51,652,999.76 | 9.58954 |
| September 2006 | 50,864,115.99 | 9.91184 |
| October 2006 | 50,055,329.26 | 9.58918 |
| November 2006 | 49,251,614.03 | 9.91034 |
| December 2006 | 48,460,128.49 | 9.58762 |
| January 2007 | 47,680,673.34 | 9.58684 |
| February 2007 | 46,910,978.68 | 10.62066 |
| March 2007 | 46,152,985.80 | 9.58531 |
| April 2007 | 45,400,597.38 | 9.90640 |
| May 2007 | 44,614,369.77 | 9.58386 |
| June 2007 | 43,835,555.93 | 9.90488 |
| July 2007 | 43,013,670.39 | 9.58243 |
| August 2007 | 42,179,907.56 | 9.58168 |
| September 2007 | 41,306,908.23 | 9.90299 |
| October 2007 | 40,425,821.22 | 9.58107 |
| November 2007 | 39,533,005.34 | 9.90276 |
| December 2007 | 38,656,879.34 | 9.58106 |
| January 2008 | 37,796,360.91 | 9.58106 |
| February 2008 | 36,951,944.56 | 10.24665 |
| March 2008 | 36,116,046.84 | 9.58113 |
| April 2008 | 35,295,876.94 | 9.90291 |
| May 2008 | 34,490,652.29 | 9.58127 |
| June 2008 | 33,700,593.38 | 9.90306 |
| July 2008 | 32,925,419.43 | 9.58143 |
| August 2008 | 32,164,854.88 | 9.58150 |
| September 2008 | 31,418,629.28 | 9.90330 |
| October 2008 | 30,686,477.20 | 9.58166 |
| November 2008 | 29,968,138.10 | 9.90346 |
| December 2008 | 29,263,356.31 | 9.58182 |
| January 2009 | 28,571,880.86 | 9.58190 |

11

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| February 2009 | 27,893,465.46 | 10.61612 |
| March 2009 | 27,227,868.39 | 9.58206 |
| April 2009 | 26,574,852.39 | 9.90388 |
| May 2009 | 26,069,791.54 | 9.58223 |
| June 2009 | 25,574,191.33 | 9.90406 |
| July 2009 | 25,087,875.89 | 9.58240 |
| August 2009 | 24,610,672.61 | 9.58248 |
| September 2009 | 24,142,412.09 | 9.90432 |
| October 2009 | 23,682,928.03 | 9.58266 |
| November 2009 | 23,232,057.25 | 9.90451 |
| December 2009 | 22,789,639.56 | 9.58284 |
| January 2010 | 22,355,517.75 | 9.58293 |
| February 2010 | 21,929,537.52 | 10.61727 |
| March 2010 | 21,511,547.44 | 9.58311 |
| April 2010 | 21,101,398.85 | 9.90497 |
| May 2010 | 20,698,945.88 | 9.58329 |
| June 2010 | 20,304,045.34 | 9.90517 |
| July 2010 | 19,916,556.71 | 9.58348 |
| August 2010 | 19,536,342.05 | 9.58358 |
| September 2010 | 19,163,265.99 | 9.90546 |
| October 2010 | 18,797,195.67 | 9.58377 |
| November 2010 | 18,438,000.68 | 9.90567 |
| December 2010 | 18,085,553.03 | 9.58397 |
| January 2011 | 17,739,727.11 | 9.58407 |
| February 2011 | 17,400,399.63 | 10.61855 |
| March 2011 | 17,067,449.58 | 9.58427 |
| April 2011 | 16,740,758.20 | 9.90619 |
| May 2011 | 16,420,208.94 | 9.58448 |
| June 2011 | 16,105,687.38 | 9.90640 |
| July 2011 | 15,797,081.25 | 9.58469 |
| August 2011 | 15,494,280.35 | 9.58480 |
| September 2011 | 15,197,176.51 | 9.90674 |
| October 2011 | 14,905,663.59 | 9.58502 |
| November 2011 | 14,619,637.40 | 9.90696 |
| December 2011 | 14,338,995.69 | 9.58524 |
| January 2012 | 14,063,638.10 | 9.58535 |
| February 2012 | 13,793,466.13 | 10.25136 |
| March 2012 | 13,528,383.11 | 9.58558 |
| April 2012 | 13,268,294.16 | 9.90755 |
| May 2012 | 13,013,106.16 | 9.58581 |
| June 2012 | 12,762,727.73 | 9.90779 |
| July 2012 | 12,517,069.15 | 9.58604 |
| August 2012 | 12,276,042.40 | 9.58616 |

12

65702v.6

| Distribution Date | Yield Maintenance Notional Balance ($) | Strike Rate (%) |
|---|---|---|
| September 2012 | 12,039,561.07 | 9.90816 |
| October 2012 | 11,807,540.37 | 9.58641 |
| November 2012 | 11,579,897.07 | 9.90841 |
| December 2012 | 11,356,549.49 | 9.58665 |
| January 2013 | 11,137,417.45 | 9.58678 |
| February 2013 | 10,922,422.29 | 10.62157 |
| March 2013 | 10,711,486.78 | 9.58703 |
| April 2013 | 10,504,535.13 | 9.90907 |
| May 2013 | 10,301,492.97 | 9.58729 |
| June 2013 | 10,102,287.29 | 9.90934 |
| July 2013 | 9,906,846.45 | 9.58756 |
| August 2013 | 9,715,100.12 | 9.58769 |
| September 2013 | 9,526,979.31 | 9.90976 |
| October 2013 | 9,342,416.28 | 9.58797 |
| November 2013 | 9,161,344.55 | 9.91004 |
| December 2013 | 8,983,698.89 | 9.58824 |
| January 2014 | 8,809,415.27 | 9.58838 |
| February 2014 | 8,638,430.86 | 10.62337 |
| March 2014 | 8,470,683.97 | 9.58867 |
| April 2014 | 8,306,114.09 | 9.91078 |
| May 2014 | 8,144,661.80 | 9.58896 |
| June 2014 | 7,986,268.82 | 9.91108 |
| July 2014 | 7,830,877.92 | 9.58926 |
| August 2014 | 7,678,432.95 | 9.58941 |
| September 2014 | 7,528,878.79 | 9.91155 |
| October 2014 | 7,382,161.37 | 9.58972 |
| November 2014 | 7,238,227.59 | 9.91187 |
| December 2014 | 7,097,025.37 | 9.59003 |
| January 2015 | 6,958,503.56 | 9.59019 |
| February 2015 | 6,822,612.01 | 10.62539 |
| March 2015 | 6,689,301.45 | 9.59051 |
| April 2015 | 6,558,523.56 | 9.91270 |
| May 2015 | 6,430,230.90 | 9.59084 |
| June 2015 | 6,304,376.93 | 9.91304 |
| July 2015 | 6,180,915.97 | 9.59118 |
| August 2015 | 6,059,803.16 | 9.59135 |
| September 2015 | 5,940,994.52 | 9.91357 |
| October 2015 | 5,824,446.86 | 9.59169 |
| November 2015 | 5,710,117.79 | 9.91393 |
| December 2015 | 5,597,965.72 | 9.59204 |
| January 2016 | 5,487,949.84 | 9.59222 |
| February 2016 and thereafter | 0.00 | 0.00000 |

65702v.6