*second*, to the Class PO-3A and Class PO-3B Certificates and PO-B3 Component, *pro rata* based on their Class Certificate Principal Balances and Component Principal Balance, until the Class Certificate Principal Balances or Component Principal Balance, respectively, of such Classes or Component is reduced to zero;

On any Distribution Date, if the amount to be distributed with respect to the Class X-B Certificates from a Loan Group in accordance with the provisions of Sections 5.01(a)(ii)(A), 5.01(a)(iii)(A) or 5.01(a)(iv)(A) above is less than an amount equal to the Class X-B Certificates' Interest Distributable Amount (calculated for this purpose by using the portion of its Class Certificate Notional Balance attributable to such Loan Group), then Available Funds from the other Loan Groups remaining after making the distributions in either Sections 5.01(a)(ii)(A), 5.01(a)(iii)(A) or 5.01(a)(iv)(A) above, as applicable, to the Certificates related to such other Loan Groups, shall be distributed to the Class X-B Certificates to cover that shortfall.

(v)      *first*, from the Yield Maintenance Account, to the Class 1-A1A, Class 1-A1B, Class 2-A1A1, Class 2-A1A2, Class 2-A1B, Class 2-A1C, Class 3-A1A2, Class 3-A1B and Class 3-A1C Certificates, any related Yield Maintenance Distributable Amount for such Distribution Date in the order and priority set forth in Section 4.04 above and *second*, from the Basis Risk Reserve Fund, to the Class 1-A1A, Class 1-A1B, Class 2-A1A1, Class 2-A1A2, Class 2-A1B, Class 2-A1C, Class 3-A1A1, Class 3-A1A2, Class 3-A1B and Class 3-A1C Certificates, any related Basis Risk Shortfall for such Distribution Date remaining after giving effect to the distributions specified in clause *first* above in the order and priority set forth in Section 5.07 below;

(vi)      the Available Funds for each Loan Group remaining after giving effect to the distributions specified in subsections (i), (ii), (iii), (iv) and (v) above shall be distributed to the Certificate Insurer and the Certificateholders in the following order of priority:

(1)      to the Certificate Insurer, any Certificate Insurer Reimbursement Amounts due and unpaid;

(2)      to the Class B-1 Certificates, the related Interest Distributable Amount for that date;

(3)      to the Class B-1 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(4)      to the Class B-2 Certificates, the related Interest Distributable Amount for that date;

(5)    to the Class B-2 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(6)    to the Class B-3 Certificates, the related Interest Distributable Amount for that date;

(7)    to the Class B-3 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(8)    to the Class B-4 Certificates, the related Interest Distributable Amount for that date;

(9)    to the Class B-4 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(10)    to the Class B-5 Certificates, the related Interest Distributable Amount for that date;

(11)    to the Class B-5 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(12)    to the Class B-6 Certificates, the related Interest Distributable Amount for that date;

(13)    to the Class B-6 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(14)    to the Class B-7 Certificates, the related Interest Distributable Amount for that date;

(15)    to the Class B-7 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(16)    to the Class B-8 Certificates, the related Interest Distributable Amount for that date;

165371 Harborview 2005-15
Pooling and Servicing Agreement

(17)    to the Class B-8 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(18)    to the Class B-9 Certificates, the related Interest Distributable Amount for that date;

(19)    to the Class B-9 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(20)    to the Class B-10 Certificates, the related Interest Distributable Amount for that date;

(21)    to the Class B-10 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(22)    to the Class B-11 Certificates, the related Interest Distributable Amount for that date;

(23)    to the Class B-11 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(24)    to the Class B-12 Certificates, the related Interest Distributable Amount for that date;

(25)    to the Class B-12 Certificates, an amount allocable to principal equal to their Pro Rata Share for such Distribution Date, until the Class Certificate Principal Balance of such Class is reduced to zero;

(26)    from the Basis Risk Reserve Fund, to the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5, Class B-6, Class B-7, Class B-8, Class B-9, Class B-10, Class B-11 and Class B-12 Certificates, any related Basis Risk Shortfall for such Distribution Date in the order and priority set forth in Section 5.07 below;

(27)    to the Holder of the Class A-R Certificate, any Available Funds, other than any portion thereof in respect of Premium Proceeds, then remaining; and

> (28)    on the final Distribution Date, to the Holder of the Class A-R-II Certificate the Premium Proceeds.

(vii)    from the Basis Risk Reserve Fund X-B Subaccount, to the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5, Class B-6, Class B-7, Class B-8, Class B-9, Class B-10, Class B-11 and Class B-12 Certificates, any related Basis Risk Shortfall for such Distribution Date in the order and priority set forth in Section 5.07 below;

(viii)    the Available Funds for each Loan Group remaining after giving effect to the distributions specified in subsections (i), (ii), (iii), (iv), (v), (vi) and (vii) above will be distributed to the Certificateholders in the following order of priority:

> (A)    to the Holder of the Class A-R Certificate, any Available Funds for Loan Group 1, Loan Group 2 and Loan Group 3, other than any portion thereof in respect of Premium Proceeds, then remaining; and

> (B)    on the final Distribution Date, to the Holder of the Class A-R-II Certificate, the Premium Proceeds.

On the Distribution Date following the optional purchase of the Mortgage Loans by the Master Servicer, Available Funds shall be applied in the amounts and in the order specified above, except that no amounts will distributed pursuant to Section 5.01(a)(v) and (a)(vii) above and the portion of Available Funds remaining after the distribution pursuant to Section 5.01(a)(ii), (a)(iii) and (a)(iv) above will be applied in the order specified in Section 5.01(a)(vi).

With respect to any Distribution Date and Insured Amount, the Securities Administrator shall make payments pursuant to Section 5.01(a)(ii) with respect to the Class 1-A1B Certificates from the amount drawn under the Certificate Insurance Policy for such Distribution Date in respect of such Class pursuant to Section 4.02. Funds received by the Trustee as a result of any claim under the Certificate Insurance Policy shall be applied solely to payments to the Class 1-A1B Certificateholders and may not be applied to satisfy costs, expenses or liabilities of the Master Servicer, the Securities Administrator, the Trustee or the Trust.

(b) Amounts to be paid to the Holders of a Class of Certificates shall be payable with respect to all Certificates of that Class, *pro rata*, based on the Certificate Principal Balance or Certificate Notional Balance, as applicable, of each Certificate of that Class.

(c) On each Distribution Date, the Monthly Interest Distributable Amounts for the Classes of Senior Certificates (other than the Class PO-1, Class PO-2, Class PO-3A, Class PO-3B and Class PO-B Certificates) and Subordinate Certificates on such Distribution Date shall be reduced proportionately, based on (A) in the case of the Senior Certificates (other than the Class PO-1, Class PO-2, Class PO-3A, Class PO-3B, Class PO-B and Class X-B Certificates), the Monthly Interest Distributable Amount to which they would otherwise be entitled, (B) in the case of the Class X-B Certificates, the Monthly Interest Distributable Amount to which they would otherwise be entitled to receive from such Loan Group, based on the related Loan Group's Class X-B Apportionment Rule and (C) in the case of the Subordinate Certificates, interest

118

accrued at the related Pass-Through Rate on the related Apportioned Principal Balance of each such Class, by Net Interest Shortfalls with respect to the related Loan Group. The Class ES Distributable Amount shall be similarly reduced by the Class ES Certificate's proportionate share (based on such amount otherwise distributable) of any Net Interest Shortfall.

(d) Notwithstanding the priority and allocation set forth in Section 5.01(a)(vi) above, if with respect to any Class of Subordinate Certificates on any Distribution Date the sum of the related Class Subordination Percentages of such Class and of all other Classes of Subordinate Certificates which have a higher numerical Class designation than such Class (the "**Applicable Credit Support Percentage**") is less than the Original Applicable Credit Support Percentage for such Class, no distribution of Principal Prepayments will be made to any such Classes (the "**Restricted Classes**") and the amount of such Principal Prepayment otherwise distributable to the Restricted Classes shall be distributed to any Classes of Subordinate Certificates having lower numerical Class designations than such Class, *pro rata*, based on the Class Certificate Principal Balances of the respective Classes immediately prior to such Distribution Date and shall be distributed in the sequential order provided in Section 5.01(a)(vi) above.

(e) On each Distribution Date, the Paying Agent shall distribute to the Holder of (i) the Class 1-P Certificates, the Class 1-P Distributable Amount, (ii) the Class 2-P Certificates, the Class 2-P Distributable Amount, (iii) the Class 3-P Certificates, the Class 3-P Distributable Amount and (iv) the Class X-3B Certificates, the Class X-3B Distributable Amount.

(f) (i) Notwithstanding the priority and allocation set forth in Section 5.01(a)(vi), with respect to any Loan Group, on each Distribution Date prior to the Senior Credit Support Depletion Date but after the date on which the aggregate Class Certificate Principal Balance of each Class of the Senior Certificates and PO Components related to a Loan Group have been reduced to zero, 100% of the Principal Prepayments on the Mortgage Loans in that Loan Group otherwise distributable on each Class of Subordinate Certificates pursuant to Section 5.01(a)(vi), in reverse order of priority, shall be distributed as principal to the Senior Certificates related to each other Loan Group remaining outstanding in the amounts provided in the next succeeding sentence, provided that on such Distribution Date either clause (i) or (ii) in the definition of the Two Times Test has not been met. Such amount shall be allocated among the other Groups, *pro rata* based on aggregate Class Certificate Principal Balance of the related Senior Certificates, and paid to the Senior Certificates in such Group or Groups in the same priority as such Certificates would receive other distributions of principal pursuant to Section 5.01(a).

(ii) (A) On any Distribution Date on which the Senior Certificates and Principal-Only Component related to a Loan Group constitute an Undercollateralized Group, all amounts otherwise distributable as Available Funds on the Subordinate Certificates, in reverse order of priority (or, following the Senior Credit Support Depletion Date, such other amounts described in the immediately following sentence), will be distributed as principal to the Senior Certificates and Principal-Only Component of such Undercollateralized Group pursuant to Section 5.01(a) *first*, up to the sum of the Accrued Interest Amount and the Principal Deficiency Amount for the related Undercollateralized Group (such distribution, an "**Undercollateralization Distribution**") and *second*, to pay to the Subordinate Certificates and the Class A-R Certificate in the same order and priority as provided in Section 5.01(a)(vi). In the event that the Senior Certificates and Principal-Only Component related to a Loan Group constitute an Undercollateralized Group on

119

any Distribution Date following the Senior Credit Support Depletion Date, Undercollateralization Distributions will be made from any Available Funds for a Loan Group not related to an Undercollateralized Group remaining after all required amounts have been distributed to the related Class of Senior Certificates and Principal-Only Component. Undercollateralization Distributions will be applied *first* to pay accrued but unpaid interest, if any, and *second* to pay principal in the same priority and allocation provided in Section 5.01(a).

(B)    If on any Distribution Date there are two or more Undercollateralized Groups, the distribution described in paragraph (ii)(A) above will be made *pro rata* based on the related Principal Deficiency Amount.

(g) <u>Distributions on Physical Certificates</u>.  The Paying Agent shall make distributions in respect of a Distribution Date to each Certificateholder of record on the related Record Date (other than as provided in Section 10.01 hereof respecting the final distribution), in the case of Certificateholders of the Physical Certificates, by check or money order mailed to such Certificateholder at the address appearing in the Certificate Register, or by wire transfer. Distributions among Certificateholders of a Class shall be made in proportion to the Percentage Interests evidenced by the Certificates of that Class held by such Certificateholders.

(h) <u>Distributions on Book-Entry Certificates</u>.  Each distribution with respect to a Book-Entry Certificate shall be paid to the Depository, which shall credit the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures.  Each Depository Participant shall be responsible for disbursing such distribution to the Certificate Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm" or "indirect participating firm") for which it acts as agent.  Each brokerage firm shall be responsible for disbursing funds to the Certificate Owners that it represents.  All such credits and disbursements with respect to a Book-Entry Certificate are to be made by the Depository and the Depository Participants in accordance with the provisions of the Certificates. None of the Trustee, the Paying Agent, the Depositor or the Seller shall have any responsibility therefor.

SECTION 5.02.   <u>Allocation of Net Deferred Interest</u>.

For any Distribution Date, the Net Deferred Interest on the Mortgage Loans will be allocated among the Classes of Certificates (or, with respect to the Class X Certificates, the PO Components) in proportion to the excess, if any, for each such Class of (i) the Monthly Interest Distributable Amount accrued at the Pass-Through Rate for such Class, over (ii) the amount of the Monthly Interest Distributable Amount for such Class calculated at the applicable Adjusted Cap Rate for such Class.

On each Distribution Date, any amount of Net Deferred Interest allocable to a Class of Certificates (other than the Class X-1, Class X-2, Class X-3A, Class X-3B and Class X-B Certificates) on such Distribution Date will be added as principal to the outstanding Class Certificate Principal Balance of such Class of Certificates.  With respect to the Class X-1 Certificates and each Distribution Date, any amount of Net Deferred Interest added to the Principal Balances of the related Mortgage Loans that is allocated to the Class X-1 Certificates

on such Distribution Date will be added as principal to the outstanding Class Certificate Principal Balances of the Class PO-1 Certificates.  With respect to the Class X-2 Certificates and each Distribution Date, any amount of Net Deferred Interest added to the Principal Balances of the related Mortgage Loans that is allocated to the Class X-2 Certificates on such Distribution Date will be added as principal to the outstanding Class Certificate Principal Balances of the Class PO-2 Certificates.  With respect to the Class X-3A Certificates and each Distribution Date, any amount of Net Deferred Interest added to the Principal Balances of the related Mortgage Loans that is allocated to the Class X-3A Certificates on such Distribution Date will be added as principal to the outstanding Class Certificate Principal Balances of the Class PO-3A Certificates. With respect to the Class X-3B Certificates and each Distribution Date, any amount of Net Deferred Interest added to the Principal Balances of the related Mortgage Loans that is allocated to the Class X-3B Certificates on such Distribution Date will be added as principal to the outstanding Class Certificate Principal Balances of the Class PO-3B Certificates.  With respect to the Class X-B Certificates and each Distribution Date, any amount of Net Deferred Interest added to the Principal Balances of the related Mortgage Loans that is allocated to the Class X-B Certificates on such Distribution Date will be added as principal to the outstanding Component Principal Balances of the PO-B1 Component, PO-B2 Component and the PO-B3 Component based upon the amount of Deferred Interest attributable to the Mortgage Loans in the related Loan Group.

SECTION 5.03.  Allocation of Realized Losses.

(a) On or prior to each Distribution Date, the Securities Administrator shall aggregate the loan-level information provided by the Master Servicer with respect to the total amount of Realized Losses with respect to the Mortgage Loans in each Loan Group for the related Distribution Date and include such information in the Distribution Date Statement.

(b) On each Distribution Date, Realized Losses that occurred during the related prepayment period shall be allocated as follows:

first, to the Subordinate Certificates in reverse order of their respective numerical Class designations (beginning with the Class of Subordinate Certificates with the highest numerical Class designation) until the Class Certificate Principal Balance of each such Class is reduced to zero; and

second,

(A)    with respect to such losses related to the Group 1 Mortgage Loans, to the Class 1-A1A, Class 1-A1B, Class PO-1 and Class A-R Certificates and PO-B1 Component, pro rata, until the Class Certificate Principal Balance or Component Principal Balance of each such Class or Component is reduced to zero; provided, however, the Class 1-A1B Certificates will bear the principal portion of all Realized Losses allocable to the Class 1-A1A Certificates for so long as the Class 1-A1B Certificates are outstanding;

165371 Harborview 2005-15
Pooling and Servicing Agreement

(B)    with respect such losses related to the Group 2 Mortgage Loans, to the Class 2-A1A1, Class 2-A1A2, Class 2-A1B, Class 2-A1C and Class PO-2 Certificates and the PO-B2 Component, *pro rata*, until the Class Certificate Principal Balance or Component Principal Balance of each such Class or Component is reduced to zero; *provided, however*, the Class 2-A1C Certificates will bear the principal portion of all Realized Losses allocable to the Class 2-A1A1, Class 2-A1A2 and Class 2-A1B Certificates for so long as the Class 2-A1C Certificates are outstanding; and after the Class Certificate Principal Balance of the Class 2-A1C Certificates has been reduced to zero, the Class 2-A1B Certificates will bear the principal portion of all Realized Losses allocable to the Class 2-A1A1 and Class 2-A1A2 Certificates for so long as the Class 2-A1B Certificates are outstanding; and

(C)    with respect such losses related to the Group 3 Mortgage Loans, to the Class 3-A1A1, Class 3-A1A2, Class 3-A1B, Class 3-A1C and Class PO-3 Certificates and the PO-B3 Component, *pro rata*, until the Class Certificate Principal Balance or Component Principal Balance of each such Class or Component is reduced to zero; *provided, however*, the Class 3-A1C Certificates will bear the principal portion of all Realized Losses allocable to the Class 3-A1A1, Class 3-A1A2 and Class 3-A1B Certificates for so long as the Class 3-A1C Certificates are outstanding; and after the Class Certificate Principal Balance of the Class 3-A1C Certificates has been reduced to zero, the Class 3-A1B Certificates will bear the principal portion of all Realized Losses allocable to the Class 3-A1A1 and Class 3-A1A2 Certificates for so long as the Class 3-A1B Certificates are outstanding.

(c) The Class Certificate Principal Balance of the Class of Subordinate Certificates then outstanding with the highest numerical Class designation shall be reduced on each Distribution Date by the amount, if any, by which the aggregate of the Class Certificate Principal Balances of all outstanding Classes of Certificates (after giving effect to the distribution of principal and the allocation of Realized Losses on such Distribution Date) exceeds the aggregate of the Stated Principal Balances of all the Mortgage Loans for the following Distribution Date.

(d) Any Realized Loss allocated to a Class of Certificates or any reduction in the Class Certificate Principal Balance of a Class of Certificates pursuant to Section 5.03(b) or (c) shall be allocated among the Certificates of such Class, *pro rata*, in proportion to their respective Certificate Principal Balances.

(e) Any allocation of Realized Losses to a Certificate or any reduction in the Certificate Principal Balance of a Certificate pursuant to Section 5.03(b) or (c) shall be accomplished by reducing the Certificate Principal Balance thereof immediately following the distributions made on the related Distribution Date in accordance with the definition of "Certificate Principal Balance."

165371 Harborview 2005-15
Pooling and Servicing Agreement

SECTION 5.04.  Statements.

(a)  On each Distribution Date, the Securities Administrator shall make available to the Trustee, each Certificateholder, the Certificate Insurer, the Seller, the Master Servicer and each Rating Agency, a statement based, as applicable, on loan-level information obtained from the Master Servicer and the Servicer (the "**Distribution Date Statement**") as to the distributions to be made or made, as applicable, on such Distribution Date:

(i)    the amount of the distribution made on such Distribution Date to the Holders of each Class of Certificates allocable to principal;

(ii)    the amount of the distribution made on such Distribution Date to the Holders of each Class of Certificates allocable to interest;

(iii)    the Senior Percentage, Senior Prepayment Percentage, Subordinate Percentage and Subordinate Prepayment Percentage with respect to each Loan Group for the following Distribution Date;

(iv)    the aggregate amount of servicing compensation received by the Servicer during the related Due Period and such other customary information as the Trustee deems necessary or desirable, or which a Certificateholder reasonably requests, to enable Certificateholders to prepare their tax returns;

(v)    the aggregate amount of Advances for the related Due Period and the amount of unreimbursed Advances;

(vi)    [reserved];

(vii)    the Loan Group Balance and related Net WAC and applicable Net WAC Cap for each Loan Group at the Close of Business at the end of the related Due Period;

(viii)    for each Loan Group, the aggregate Principal Balance of the One-Month MTA Indexed Mortgage Loans at the Close of Business at the end of the related Due Period;

(ix)    [reserved];

(x)    [reserved];

(xi)    for each Loan Group, the number, weighted average remaining term to maturity and weighted average Loan Rate of the related Mortgage Loans as of the related Due Date;

(xii)    the number and aggregate unpaid principal balance of Mortgage Loans for each Loan Group, (a) 30 to 59 days Delinquent, (b) 60 to 89 days Delinquent, (c) 90 or more days Delinquent, (d) as to which foreclosure proceedings have been commenced and (e) in bankruptcy, in each case as of the close of business on the last day of the preceding calendar month;

123

(xiii)    the book value of any REO Property as of the Close of Business on the last Business Day of the calendar month preceding the Distribution Date, and, cumulatively, the total number and cumulative principal balance of all REO Properties in each Loan Group as of the Close of Business of the last day of the preceding Due Period;

(xiv)    the aggregate amount of Principal Prepayments with respect to each Loan Group made during the related Prepayment Period;

(xv)    the aggregate amount of Realized Losses incurred during the related Due Period for each Loan Group and the cumulative amount of Realized Losses and the amount of Realized Losses, if any, allocated to each Class of Certificates;

(xvi)    the Class Certificate Principal Balance or Class Certificate Notional Balance, as applicable, of each Class of Certificates and the Apportioned Principal Balances of the Subordinate Certificates after giving effect to any distributions made thereon, on such Distribution Date;

(xvii)    the Monthly Interest Distributable Amount and the Interest Distributable Amount in respect of each Class of Certificates, for such Distribution Date and the respective portions thereof, if any, remaining unpaid following the distributions made in respect of such Certificates on such Distribution Date;

(xviii)    the aggregate amount of any Net Interest Shortfalls and the Unpaid Interest Shortfall Amount for such Distribution Date;

(xix)    the Available Funds with respect to each Loan Group;

(xx)    the Pass-Through Rate and Adjusted Cap Rate for each Class of Certificates for such Distribution Date;

(xxi)    the aggregate Principal Balance of Mortgage Loans purchased hereunder by the Seller during the related Due Period, and indicating the relevant section of the Servicing Agreement, or the Section of this Agreement, as applicable, requiring or allowing the purchase of each such Mortgage Loan;

(xxii)    the amount of any Principal Deficiency Amounts or Accrued Interest Amounts paid to an Undercollateralized Group or amounts paid pursuant to Section 5.01(f)(i);

(xxiii)    current Recoveries allocable to each Loan Group;

(xxiv)    cumulative Recoveries allocable to each Loan Group;

(xxv)    the amount of any Basis Risk Shortfall, if any, and the related accrued interest thereon;

(xxvi)    for each Loan Group, the amount of Deferred Interest and Net Deferred Interest, if any, for such Loan Group;

124

(xxvii)    payments made under the Yield Maintenance Agreements, if any;

(xxviii)    the amount of Net Deferred Interest, if any, added to the Class Certificate Principal Balance of the related Certificates;

(xxix)    the amount of the Certificate Insurer Reimbursement Amount, if any;

(xxx)    the Deficiency Amount, if any, to be paid by the Certificate Insurer; and

(xxxi)    The amount of any Class 1-P Distributable Amount, Class 2-P Distributable Amount, Class 3-P Distributable Amount, Class 3-XB Distributable Amount and Class ES Distributable Amount.

The Securities Administrator will make the Distribution Date Statement (and, at its option, any additional files containing the same information in an alternative format) available each month to Certificateholders and the other parties to this Agreement via the Securities Administrator's internet website. The Securities Administrator's internet website shall initially be located at "*www.ctslink.com.*" Assistance in using the website can be obtained by calling the Securities Administrator's customer service desk at (301) 815-6600. Parties that are unable to use the above distribution option are entitled to have a paper copy mailed to them via first class mail by calling the customer service desk and indicating such. The Securities Administrator shall have the right to change the way such reports are distributed in order to make such distribution more convenient and/or more accessible to the parties, and the Securities Administrator shall provide timely and adequate notification to all parties regarding any such change.

In the case of information furnished pursuant to subclauses (i) and (ii) above, the amounts shall be expressed in a separate section of the report as a dollar amount for each Class for each $1,000 original dollar amount as of the Cut-Off Date.

(b) Within a reasonable period of time after the end of each calendar year, the Securities Administrator shall, upon written request, furnish to the Certificate Insurer and each Person who at any time during the calendar year was a Certificateholder of a Regular Certificate, if requested in writing by such Person, such information as is reasonably necessary to provide to such Person a statement containing the information set forth in subclauses (i) through (iii) and (xxi) above, aggregated for such calendar year or applicable portion thereof during which such Person was a Certificateholder. Such obligation of the Securities Administrator shall be deemed to have been satisfied to the extent that substantially comparable information shall be prepared and furnished by the Securities Administrator to Certificateholders pursuant to any requirements of the Code as are in force from time to time.

(c) On each Distribution Date, the Securities Administrator shall supply an electronic tape to Bloomberg Financial Markets, Inc. in a format acceptable to Bloomberg Financial Markets, Inc. on a monthly basis, and shall supply an electronic tape to Loan Performance and Intex Solutions in a format acceptable to Loan Performance and Intex Solutions on a monthly basis.

125

SECTION 5.05.  Remittance Reports; Advances.

(a) No later than the 15th calendar day of each month, the Master Servicer shall deliver to the Securities Administrator by telecopy or electronic mail (or by such other means as the Master Servicer and the Securities Administrator may agree from time to time) the Remittance Report with respect to the Distribution Date.  No later than the Close of Business New York time on the Business Day prior to such Distribution Date, the Master Servicer shall deliver or cause to be delivered to the Securities Administrator in addition to the information provided on the Remittance Report, such other loan-level information reasonably available to it with respect to the Mortgage Loans as the Securities Administrator may reasonably require to perform the calculations necessary to make the distributions contemplated by Section 5.01.

(b) If the Monthly Payment on a Mortgage Loan that was due on a related Due Date and is delinquent, other than as a result of application of the Relief Act, and for which the Servicer was required to make an advance pursuant to the Servicing Agreement, exceeds the amount on deposit in the Distribution Account which will be used for an advance with respect to such Mortgage Loan, the Master Servicer shall, on the Business Day preceding the Distribution Date, deposit in the Distribution Account an amount equal to such deficiency, net of the Servicing Fee and the Master Servicing Fee, for such Mortgage Loan except to the extent the Master Servicer determines any such Advance to be Nonrecoverable from Liquidation Proceeds, Insurance Proceeds or future payments on the Mortgage Loan for which such Advance was made.  Subject to the foregoing, the Master Servicer shall continue to make such Advances through the date that the Servicer is required to do so under its Servicing Agreement.  If the Master Servicer determines that an Advance is Nonrecoverable, it shall, on or prior to the related Distribution Date, present an Officer's Certificate to the Trustee and the Securities Administrator (i) stating that the Master Servicer elects not to make a Advance in a stated amount and (ii) detailing the reason it deems the advance to be Nonrecoverable.

SECTION 5.06.  Compensating Interest Payments.

The amount of the Master Servicing Fee payable to the Master Servicer in respect of any Distribution Date shall be reduced (but not below zero) by the amount of any Compensating Interest Payment for such Distribution Date, but only to the extent that Interest Shortfalls relating to such Distribution Date are required to be paid but are not actually paid by the Servicer on the Servicer Remittance Date.  Such amount shall not be treated as an Advance and shall not be reimbursable to the Master Servicer.

SECTION 5.07.  Basis Risk Reserve Fund.

(a) On the Closing Date, the Securities Administrator shall establish and maintain in its name, in trust for the benefit of the holders of the MTA and LIBOR Certificates, a Basis Risk Reserve Fund which will be comprised of five subaccounts; the "Basis Risk Reserve Fund X-1 Subaccount," the "Basis Risk Reserve Fund X-2 Subaccount," the "Basis Risk Reserve Fund X-3A Subaccount," the "Basis Risk Reserve Fund X-3B Subaccount" and the "Basis Risk Reserve Fund X-B Subaccount" (each, a "Subaccount").  The Basis Risk Reserve Fund X-1 Subaccount will be held in trust by the Securities Administrator on behalf of the holders of the Class 1-A1A

126

and Class 1-A1B Certificates. The Basis Risk Reserve Fund X-2 Subaccount will be held in trust by the Securities Administrator on behalf of the holders of the Class 2-A1A1, Class 2-A1A2, Class 2-A1B and Class 2-A1C Certificates. The Basis Risk Reserve Fund X-3A Subaccount will be held in trust by the Securities Administrator on behalf of the holders of the Class 3-A1A1 Certificates. The Basis Risk Reserve Fund X-3B Subaccount will be held in trust by the Securities Administrator on behalf of the holders of the Class 3-A1A2, Class 3-A1B and Class 3-A1C Certificates. The Basis Risk Reserve Fund X-B Subaccount will be held in trust by the Securities Administrator on behalf of the holders of the Subordinate Certificates. The Basis Risk Reserve Fund shall be an Eligible Account, and funds on deposit therein shall be held separate and apart from, and shall not be commingled with, any other moneys, including, without limitation, other moneys of the Securities Administrator held pursuant to this Agreement. The Basis Risk Reserve Fund shall not be an asset of any REMIC established hereby.

(b) On each Distribution Date, (i) Monthly Interest Distributable Amounts that would otherwise be distributable with respect to the Class X-1 Certificates shall instead be deposited in the Basis Risk Reserve Fund X-1 Subaccount to the extent of the X-1 Required Reserve Fund Deposit, (ii) Monthly Interest Distributable Amounts that would otherwise be distributable with respect to the Class X-2 Certificates shall instead be deposited in the Basis Risk Reserve Fund X-2 Subaccount to the extent of the X-2 Required Reserve Fund Deposit, (ii) Monthly Interest Distributable Amounts that would otherwise be distributable with respect to the Class X-3A Certificates shall instead be deposited in the Basis Risk Reserve Fund X-3A Subaccount to the extent of the X-3A Required Reserve Fund Deposit, (iv) Monthly Interest Distributable Amounts that would otherwise be distributable with respect to the Class X-3B Certificates shall instead be deposited in the Basis Risk Reserve Fund X-3B Subaccount to the extent of the X-3B Required Reserve Fund Deposit and (v) Monthly Interest Distributable Amounts that would otherwise be distributable with respect to the Class X-B Certificates shall instead be deposited in the Basis Risk Reserve Fund X-B Subaccount to the extent of the X-B Required Reserve Fund Deposit.

(c) On any Distribution Date for which a Basis Risk Shortfall exists with respect to the Class 1-A1A, Class 1-A1B, Class 2-A1A1, Class 2-A1A2, Class 2-A1B, Class 2-A1C, Class 3-A1A1, Class 3-A1A2, Class 3-A1B and Class 3-A1C Certificates, the Securities Administrator, as Paying Agent, shall withdraw (i) first, with regard to the Class 1-A1A, Class 1-A1B, Class 2-A1A1, Class 2-A1A2, Class 2-A1B, Class 2-A1C, Class 3-A1A2, Class 3-A1B and Class 3-A1C Certificates, from the related Yield Maintenance Account, the amount of such Basis Risk Shortfall for such Classes of Certificates for distribution on such Distribution Date pursuant to Section 4.04 and Section 5.01(a)(v), and then from the Basis Risk Reserve Fund the amount of any remaining Basis Risk Shortfall for such Classes of Certificates, pursuant to Section 5.01(a)(v). If on any Distribution Date the amount on deposit in the Basis Risk Reserve Fund is not sufficient to make a full distribution of the Basis Risk Shortfall with respect to the Class 1-A1A, Class 1-A1B, Class 2-A1A1, Class 2-A1A2, Class 2-A1B, Class 2-A1C, Class 3-A1A2, Class 3-A1B and Class 3-A1C Certificates remaining after application of funds available therefor in the related Yield Maintenance Account, the Securities Administrator, as Paying Agent, shall withdraw the entire amount on deposit in the Basis Risk Reserve Fund and distribute such amount to such Classes of Certificates on a *pro rata* basis based on the amount of Basis Risk Shortfall due each such Class.

165371 Harborview 2005-15
Pooling and Servicing Agreement

On any Distribution Date for which a Basis Risk Shortfall exists with respect to the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5, Class B-6, Class B-7, Class B-8, Class B-9, Class B-10, Class B-11 and Class B-12 Certificates, the Securities Administrator, as Paying Agent, after making the distributions described in the immediately preceding paragraph to the Class 1-A1A, Class 1-A1B, Class 2-A1A1, Class 2-A1A2, Class 2-A1B, Class 2-A1C, Class 3-A1A1, Class 3-A1A2, Class 3-A1B and Class 3-A1C Certificates, distribute the lesser of any amounts remaining on deposit in the Basis Risk Reserve Fund and such Basis Risk Shortfall to the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5, Class B-6, Class B-7, Class B-8, Class B-9, Class B-10, Class B-11 and Class B-12 Certificates, sequentially, in that order.

Funds remaining in the applicable Subaccount of the Basis Risk Reserve Fund on any Distribution Date after funding the payment of Basis Risk Shortfalls for such Distribution Date will be remitted to the Class X-1, Class X-2, Class X-3A, Class X-3B and Class X-B Certificates, up to the amount of the X-1 Required Reserve Fund Deposit, X-2 Required Reserve Fund Deposit, X-3A Required Reserve Fund Deposit, X-3B Required Reserve Fund Deposit and X-B Required Reserve Fund Deposit.

(d) Funds in the Basis Risk Reserve Fund shall be invested in Permitted Investments. Any earnings on amounts in the Basis Risk Reserve Fund shall be for the benefit of the Class X-1, Class X-2, Class X-3A, Class X-3B and Class X-B Certificateholders. The Class X-1, Class X-2, Class X-3A, Class X-3B and Class X-B Certificates shall evidence ownership of the Basis Risk Reserve Fund for federal income tax purposes and the Holders thereof shall direct the Securities Administrator, in writing, as to investment of amounts on deposit therein. The Class X-1, Class X-2, Class X-3A, Class X-3B and Class X-B Certificateholder(s) shall be liable for any losses incurred on such investments. In the absence of written instructions from the Class X-1, Class X-2, Class X-3A, Class X-3B and Class X-B Certificateholder as to investment of funds on deposit in the Basis Risk Reserve Fund, such funds shall be invested in money market funds as specified by the Depositor and as described in clause (vi) of the definition of Permitted Investments in Article I. For all Federal income tax purposes, amounts transferred by the Upper-Tier REMIC to the Basis Risk Reserve Fund shall be treated as amounts distributed by the Upper-Tier REMIC to the Class X-1, Class X-2, Class X-3A, Class X-3B and Class X-B Certificateholders.

(e) Upon termination of the Trust Fund any amounts remaining in the Basis Risk Reserve Fund shall be distributed to the Class X-1, Class X-2, Class X-3A, Class X-3B and Class X-B Certificateholders.

SECTION 5.08. Recoveries.

(a) With respect to any Class of Certificates or Principal-Only Component to which a Realized Loss has been allocated (including any such Class or Principal-Only Component for which the related Class Certificate Principal Balance or Component Principal Balance has been reduced to zero), the Class Certificate Principal Balance or Component Principal Balance of such Class or Component, as applicable, will be increased, up to the amount of related Recoveries for such Distribution Date as follows:

128

    (i)    first, the Class Certificate Principal Balance of each Class of Senior Certificates or Component Principal Balance of the Principal-Only Component related to the Loan Group from which the Recovery was collected, will be increased *pro rata*, up to the amount by which Net Realized Losses previously allocated to each such Class or Component exceeds the amount of Recoveries for such Distribution Date previously distributed to such Class or Component, and

    (ii)    second, the Class Certificate Principal Balance of each Class of Subordinate Certificates will be increased in order of seniority, up to the amount by which Net Realized Losses previously allocated to each such Class exceeds the amount of Recoveries for such Distribution Date previously distributed to such Class.

(b) Any increase to the Class Certificate Principal Balance of a Class of Certificates or Component Principal Balance of a Principal-Only Component shall increase the Certificate Principal Balance of each Certificate of the related Class or the Component Principal Balance of each PO Component *pro rata* in accordance with each Percentage Interest.

ARTICLE VI

THE CERTIFICATES

SECTION 6.01.  The Certificates.

The Certificates shall be substantially in the form annexed hereto as Exhibit A-1 through E.  Each of the Certificates shall, on original issue, be executed by the Securities Administrator and authenticated and delivered by the Certificate Registrar upon the written order of the Depositor concurrently with the sale and assignment to the Trustee of the Trust Fund.  Each Class of the Regular Certificates shall be initially evidenced by one or more Certificates representing a Percentage Interest with a minimum dollar denomination of $25,000 and integral dollar multiples of $1 in excess thereof, in the case of the Class X-1, Class X-2, Class X-3A, Class X-3B, Class X-B, Class PO-1, Class PO-2, Class PO-3A, Class PO-3B, Class PO-B and Class A-R Certificates and $100,000 and integral dollar multiples of $1 in excess thereof, in the case of the Class X-1, Class X-2, Class X-3A, Class X-3B and Class X-B Certificates.  The Class PO-1, Class PO-2, Class PO-3A, Class PO-3B and Class PO-B Certificates will be issued in minimum percentage interests of 0.01%, *provided*, that, such certificates must be purchased in minimum total investments of at least $100,000.  The Class A-R Certificate will be issued as a single certificate in physical form.

The Certificates shall be executed on behalf of the Trust by manual or facsimile signature on behalf of the Securities Administrator by a Responsible Officer.  Certificates bearing the manual or facsimile signatures of individuals who were, at the time when such signatures were affixed, authorized to sign on behalf of the Trustee shall be binding, notwithstanding that such individuals or any of them have ceased to be so authorized prior to the authentication and delivery of such Certificates or did not hold such offices at the date of such Certificate.  Each Certificate shall, on original issue, be authenticated by the Certificate Registrar upon the order of the Depositor.  No Certificate shall be entitled to any benefit under this Agreement or be valid

129

for any purpose, unless such Certificate shall have been manually authenticated by the Certificate Registrar substantially in the form provided for herein, and such authentication upon any Certificate shall be conclusive evidence, and the only evidence, that such Certificate has been duly authenticated and delivered hereunder. All Certificates shall be dated the date of their authentication. At any time and from time to time after the execution and delivery of this Agreement, the Depositor may deliver Certificates executed by the Trustee to the Certificate Registrar for authentication and the Certificate Registrar shall authenticate and deliver such Certificates as provided in this Agreement and not otherwise. Subject to Section 6.02(c), the Senior Certificates (other than the Class A-R Certificates) and the Class B-1, Class B-2, Class B-3, Class B-4, Class B-5, Class B-6, Class B-7, Class B-8, Class B-9, Class B-10, Class B-11 and Class B-12 Certificates shall be Book-Entry Certificates. The Class Class A-R Certificate shall be a Physical Certificate.

The Private Certificates shall be offered and sold in reliance either on (i) the exemption from registration under Rule 144A of the 1933 Act and shall be issued initially in the form of one or more permanent global Certificates in definitive, fully registered form with the applicable legends set forth in Exhibit C (each, a "**Restricted Global Security**") or (ii) Regulation S and shall be issued initially in the form of one or more permanent global Certificates in definitive, fully registered form without interest coupons with the applicable legends set forth in Exhibit C hereto (each, a "**Regulation S Global Security**"), which shall be deposited on behalf of the subscribers for such Certificates represented thereby with the Trustee, as custodian for DTC and registered in the name of a nominee of DTC, duly executed by the Securities Administrator and authenticated by the Certificate Registrar as hereinafter provided. The aggregate principal amounts of the Restricted Global Securities or Regulation S Global Securities, as applicable, may from time to time be increased or decreased by adjustments made on the records of the Certificate Registrar and DTC or its nominee, as the case may be, as hereinafter provided.

SECTION 6.02.   Registration of Transfer and Exchange of Certificates.

(a) The Certificate Registrar shall cause to be kept a Certificate Register in which, subject to such reasonable regulations as it may prescribe, the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges of Certificates as herein provided. The Securities Administrator is hereby appointed, and the Securities Administrator hereby accepts its appointment as, initial Certificate Registrar on behalf of the Trustee, for the purpose of registering Certificates and transfers and exchanges of Certificates as herein provided.

Upon surrender for registration of transfer of any Certificate at the Corporate Trust Office of the Certificate Registrar maintained for such purpose pursuant to the foregoing paragraph, the Securities Administrator on behalf of the Trust shall execute, and the Certificate Registrar shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Certificates of the same aggregate Percentage Interest.

At the option of the Certificateholders, Certificates may be exchanged for other Certificates in authorized denominations and the same aggregate Percentage Interests, upon surrender of the Certificates to be exchanged at any such office or agency. Whenever any Certificates are so surrendered for exchange, the Securities Administrator shall execute on behalf

of the Trust, and the Certificate Registrar shall authenticate and deliver the Certificates which the Certificateholder making the exchange is entitled to receive. Every Certificate presented or surrendered for registration of transfer or exchange shall (if so required by the Certificate Registrar) be duly endorsed by, or be accompanied by a written instrument of transfer satisfactory to the Certificate Registrar duly executed by, the Holder thereof or his attorney duly authorized in writing.

(b) Except as provided in paragraph (c) or (d) below, the Book-Entry Certificates shall at all times remain registered in the name of the Depository or its nominee and at all times: (i) registration of such Certificates may not be transferred by the Trustee or the Certificate Registrar except to another Depository; (ii) the Depository shall maintain book-entry records with respect to the Certificate Owners and with respect to ownership and transfers of such Certificates; (iii) ownership and transfers of registration of such Certificates on the books of the Depository shall be governed by applicable rules established by the Depository; (iv) the Depository may collect its usual and customary fees, charges and expenses from its Depository Participants; (v) the Certificate Registrar, the Paying Agent and the Trustee shall for all purposes deal with the Depository as representative of the Certificate Owners of the Certificates for purposes of exercising the rights of Holders under this Agreement, and requests and directions for and votes of such representative shall not be deemed to be inconsistent if they are made with respect to different Certificate Owners; (vi) the Trustee, the Paying Agent and the Certificate Registrar may rely and shall be fully protected in relying upon information furnished by the Depository with respect to its Depository Participants and furnished by the Depository Participants with respect to indirect participating firms and Persons shown on the books of such indirect participating firms as direct or indirect Certificate Owners; and (vii) the direct participants of the Depository shall have no rights under this Agreement under or with respect to any of the Certificates held on their behalf by the Depository, and the Depository may be treated by the Trustee, the Paying Agent, the Certificate Registrar and their respective agents, employees, officers and directors as the absolute owner of the Certificates for all purposes whatsoever.

All transfers by Certificate Owners of Book-Entry Certificates shall be made in accordance with the procedures established by the Depository Participant or brokerage firm representing such Certificate Owners. Each Depository Participant shall only transfer Book-Entry Certificates of Certificate Owners that it represents or of brokerage firms for which it acts as agent in accordance with the Depository's normal procedures. The parties hereto are hereby authorized to execute one or more Letter of Representations with the Depository or take such other action as may be necessary or desirable to register a Book-Entry Certificate to the Depository. In the event of any conflict between the terms of any such Letter of Representation and this Agreement, the terms of this Agreement shall control.

(c) If (x) the Depository or the Depositor advises the Certificate Registrar in writing that the Depository is no longer willing or able to discharge properly its responsibilities as Depository and (y) the Certificate Registrar or the Depositor is unable to locate a qualified successor, upon surrender to the Certificate Registrar of the Book-Entry Certificates by the Depository, accompanied by registration instructions from the Depository for registration, the Securities Administrator shall at the Seller's expense execute on behalf of the Trust and authenticate

131

definitive, fully registered certificates (the "**Definitive Certificates**").  Neither the Depositor nor the Certificate Registrar shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected in relying on, such instructions.  Upon the issuance of Definitive Certificates, the Trustee, the Certificate Registrar, the Paying Agent and the Depositor shall recognize the Holders of the Definitive Certificates as Certificateholders hereunder.

(d)  No transfer, sale, pledge or other disposition of any Private Certificate, other than a Private Certificate sold in an offshore transaction in reliance on Regulation S, shall be made unless such disposition is exempt from the registration requirements of the 1933 Act, and any applicable state securities laws or is made in accordance with the 1933 Act and laws.  Any Private Certificates sold to an "accredited investor" under Rule 501(a)(1), (2), (3) or (7) under the 1933 Act shall be issued only in the form of one or more Definitive Certificates and the records of the Certificate Registrar and DTC or its nominee shall be adjusted to reflect the transfer of such Definitive Certificates.  In the event of any transfer of any Private Certificate in the form of a Definitive Certificate, (i) the transferee shall certify (A) such transfer is made to a Qualified Institutional Buyer in reliance upon Rule 144A (as evidenced by an investment letter delivered to the Certificate Registrar, in substantially the form attached hereto as Exhibit J-2) under the 1933 Act, or (B) such transfer is made to an "accredited investor" under Rule 501(c)(1), (2), (3) or (7) under the 1933 Act (as evidenced by an investment letter delivered to the Certificate Registrar, in substantially the form attached hereto as Exhibit J-1, and, if so required by the Certificate Registrar and the Depositor, a written Opinion of Counsel (which may be in-house counsel) acceptable to and in form and substance reasonably satisfactory to the Certificate Registrar and the Depositor, delivered to the Certificate Registrar and the Depositor stating that such transfer may be made pursuant to an exemption, including a description of the applicable exemption and the basis therefor, from the 1933 Act or is being made pursuant to the 1933 Act, which Opinion of Counsel shall not be an expense of the Trust, the Trustee, the Certificate Registrar, the Master Servicer, the Securities Administrator or the Depositor) or (ii) the Certificate Registrar shall require the transferor to execute a transferor certificate and the transferee to execute an investment letter acceptable to and in form and substance reasonably satisfactory to the Depositor and the Certificate Registrar certifying to the Depositor and the Certificate Registrar the facts surrounding such transfer, which investment letter shall not be an expense of the Trust, the Trustee, the Certificate Registrar, the Master Servicer, the Securities Administrator or the Depositor.  Each Holder of a Private Certificate desiring to effect such transfer shall, and does hereby agree to, indemnify the Trustee, the Certificate Registrar, the Securities Administrator, the Seller and the Depositor against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

In the case of a Private Certificate that is a Book-Entry Certificate, for purposes of the preceding paragraph, the representations set forth in the investment letter in clause (i) shall be deemed to have been made to the Certificate Registrar by the transferee's acceptance of such Private Certificate that is also a Book-Entry Certificate (or the acceptance by a Certificate Owner of the beneficial interest in such Certificate).

If any Certificate Owner that is required under this Section 6.02(d) to transfer its Class B-11 or Class B-12 Certificates that are Book-Entry Certificates in the form of Definitive

Certificates, (i) notifies the Certificate Registrar of such transfer or exchange and (ii) transfers such Book-Entry Certificates to the Certificate Registrar, in its capacity as such, through the book-entry facilities of the Depository, then the Certificate Registrar shall decrease the balance of such Book-Entry Certificates, or the Certificate Registrar shall use reasonable efforts to cause the surrender to the Certificate Registrar of such Book-Entry Certificates by the Depository, and thereupon, the Trustee, on behalf of the Trust, shall execute and the Certificate Registrar shall authenticate and deliver to such Certificate Owner or its designee one or more Definitive Certificates in authorized denominations and with a like aggregate Certificate Principal Balance.

Subject to the provisions of this Section 6.02(d) governing registration of transfer and exchange Class B-11 or Class B-12 Certificates (i) held as Definitive Certificates may be transferred in the form of Book-Entry Certificates in reliance on Rule 144A (to one or more Qualified Institutional Buyers) or Regulation S under the 1933 Act that are acquiring such Definitive Certificates, their own accounts for or for the accounts of other Qualified Institutional Buyers and (ii) held as Definitive Certificates by a Qualified Institutional Buyer or an investor under Regulation S for its own account or for the account of another Qualified Institutional Buyer or Regulation S investor may be exchanged for Book-Entry Certificates, in each case upon surrender of such Certificates for registration of transfer or exchange at the offices of the Certificate Registrar maintained for such purpose. Whenever any such Certificates are so surrendered for transfer or exchange, either the Certificate Registrar shall increase the balance of the related Book-Entry Certificates ,or the Trustee on behalf of the Trust shall execute, and the Certificate Registrar shall authenticate and deliver, the Book-Entry Certificates for which such Certificates were transferred or exchanged, as necessary and appropriate. No Holder of any such Definitive Certificates other than a Qualified Institutional Buyer or a Regulation S investor holding such Certificates for its own account or for the account of another Qualified Institutional Buyer or Regulation S investor may exchange such Certificates for Book-Entry Certificates. Further, any Certificate Owner of such Book-Entry Certificates other than any such Qualified Institutional Buyers or Regulation S investors shall notify the Certificate Registrar of its status as such and shall transfer such Book-Entry Certificate to the Certificate Registrar, through the book-entry facilities of the Depository, whereupon, and also upon surrender to the Certificate Registrar of such Book-Entry Certificates by the Depository, (which surrender the Certificate Registrar shall use reasonable efforts to cause to occur), the Securities Administrator on behalf of the Trust shall execute, and the Certificate Registrar shall authenticate and deliver, to such Certificate Owner or such Certificate Owner's nominee one or more Definitive Certificates in authorized denominations and with a like aggregate Certificate Principal Balance.

None of the Depositor, the Seller, the Securities Administrator, the Certificate Registrar or the Trustee is obligated to register or qualify the Private Certificates under the 1933 Act or any other securities laws or to take any action not otherwise required under this Agreement to permit the transfer of such Certificates without registration or qualification. Any Certificateholder desiring to effect the transfer of a Private Certificate shall, and does hereby agree to, indemnify the Trustee, the Seller, the Securities Administrator, the Depositor and the Certificate Registrar against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No transfer of an ERISA-Restricted Certificate in the form of a Definitive Certificate shall be made unless the Certificate Registrar shall have received either (i) a representation from the transferee of such Certificate, acceptable to and in form and substance satisfactory to the Certificate Registrar and the Depositor (such requirement is satisfied only by the Certificate Registrar's receipt of a representation letter from the transferee substantially in the form of Exhibit I-1 or I-2, as applicable, hereto), to the effect that such transferee is not an employee benefit plan subject to Section 406 of ERISA or a plan or arrangement subject to Section 4975 of the Code, nor a person acting on behalf of any such plan or arrangement nor using the assets of any such plan or arrangement to effect such transfer or (ii) if such Certificate has been the subject of an ERISA-Qualifying Underwriting, and the purchaser is an insurance company, a representation that the purchaser is an insurance company which is purchasing such Certificates with funds contained in an "insurance company general account" (as such term is defined in Section V(e) of Prohibited Transaction Class Exemption 95-60 ("**PTCE 95-60**")) and that the purchase and holding of such Certificates are covered under Sections I and III of PTCE 95-60 or (iii) an Opinion of Counsel satisfactory to the Certificate Registrar, which Opinion of Counsel shall not be an expense of the Trustee, the Certificate Registrar, the Master Servicer, the Securities Administrator, the Depositor or the Trust, addressed to the Certificate Registrar, to the effect that the purchase and holding of such ERISA-Restricted Certificate in the form of a Definitive Certificate will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code and will not subject the Trustee, the Certificate Registrar, the Master Servicer, the Servicer, the Securities Administrator or the Depositor to any obligation in addition to those expressly undertaken in this Agreement or to any liability. Notwithstanding anything else to the contrary herein, any purported transfer of an ERISA-Restricted Certificate in the form of a Definitive Certificate to an employee benefit plan subject to ERISA or Section 4975 of the Code without the delivery to the Certificate Registrar of an Opinion of Counsel satisfactory to the Certificate Registrar as described above shall be void and of no effect.

In the case of an ERISA-Restricted Certificate that is a Book-Entry Certificate, for purposes of clauses (i) or (ii) of the first sentence of the preceding paragraph, such representations shall be deemed to have been made to the Certificate Registrar by the transferee's acceptance of such ERISA-Restricted Certificate that is also a Book-Entry Certificate (or the acceptance by a Certificate Owner of the beneficial interest in such Certificate).

To the extent permitted under applicable law (including, but not limited to, ERISA), none of the Trustee, the Certificate Registrar or the Depositor shall have any liability to any Person for any registration of transfer of any ERISA-Restricted Certificate that is in fact not permitted by this Section 6.02(d) or for the Paying Agent making any payments due on such Certificate to the Holder thereof or taking any other action with respect to such Holder under the provisions of this Agreement so long as the transfer was registered by the Certificate Registrar in accordance with the foregoing requirements. In addition, none of the Trustee, the Certificate Registrar or the Depositor shall be required to monitor, determine or inquire as to compliance with the transfer restrictions with respect to any ERISA-Restricted Certificate in the form of a Book-Entry Certificate, and none of the Trustee, the Certificate Registrar or the Depositor shall have any liability for transfers of Book-Entry Certificates or any interests therein made in violation of the restrictions on transfer described in the Prospectus Supplement and this Agreement.

(e) Each Person who has or who acquires any Ownership Interest in a Residual Certificate shall be deemed by the acceptance or acquisition of such Ownership Interest to have agreed to be bound by the following provisions and to have irrevocably appointed the Depositor or its designee as its attorney-in-fact to negotiate the terms of any mandatory sale under clause (v) below and to execute all instruments of transfer and to do all other things necessary in connection with any such sale, and the rights of each Person acquiring any Ownership Interest in a Residual Certificate are expressly subject to the following provisions:

(i)    Each Person holding or acquiring any Ownership Interest in a Residual Certificate shall be a Permitted Transferee who acquires such Ownership Interest in a Residual Certificate for its own account and not in the capacity as trustee, nominee or agent for another Person and shall promptly notify the Certificate Registrar and the Trustee of any change or impending change in its status as such a Permitted Transferee.

(ii)    No Ownership Interest in a Residual Certificate may be registered on the Closing Date and no Ownership Interest in a Residual Certificate may thereafter be transferred, and the Certificate Registrar shall not register the Transfer of a Residual Certificate unless, in addition to the certificates required to be delivered under subsection (d) above, the Trustee and the Certificate Registrar shall have been furnished with an affidavit ("**Transfer Affidavit**") of the initial owner of such Residual Certificate or proposed transferee of a Residual Certificate in the form attached hereto as Exhibit L.

(iii)    In connection with any proposed transfer of any Ownership Interest in a Residual Certificate, the Trustee and the Certificate Registrar shall as a condition to registration of the transfer, require delivery to them of a Transferor Certificate in the form of Exhibit K hereto from the proposed transferor to the effect that the transferor (a) has no knowledge the proposed Transferee is not a Permitted Transferee acquiring an Ownership Interest in such Residual Certificate for its own account and not in a capacity as trustee, nominee, or agent for another Person, and (b) has not undertaken the proposed transfer in whole or in part to impede the assessment or collection of tax.

(iv)    Any attempted or purported Transfer of any Ownership Interest in a Residual Certificate in violation of the provisions of this Section shall be absolutely null and void and shall vest no rights in the purported transferee. If any purported transferee shall, in violation of the provisions of this Section, become a Holder of such Residual Certificate, then the prior Holder of such Residual Certificate that is a Permitted Transferee shall, upon discovery that the registration of Transfer of such Residual Certificate was not in fact permitted by this Section, be restored to all rights as Holder thereof retroactive to the date of registration of transfer of such Residual Certificate. None of the Trustee, the Certificate Registrar or the Depositor shall have any liability to any Person for any registration of Transfer of a Residual Certificate that is in fact not permitted by this Section or for the Paying Agent making any distributions due on a Residual Certificate to the Holder thereof or taking any other action with respect to such Holder win the provisions of this Agreement so long as the Trustee and the Certificate Registrar received the documents specified in clause (iii). The Certificate Registrar shall be entitled to recover from any Holder of such Residual Certificate that was in fact not a Permitted Transferee at the time such distributions were made all distributions made on such Residual Certificate. Any such distributions so recovered by the Certificate Registrar shall be

135

distributed and delivered by the Certificate Registrar to the last Holder of such Residual
Certificate that is a Permitted Transferee.

(v)    If any Person other than a Permitted Transferee acquires any Ownership Interest
in a Residual Certificate in violation of the restrictions in this Section, then the Certificate
Registrar shall have the right but not the obligation, without notice to the Holder of such
Residual Certificate or any other Person having an Ownership Interest therein, to notify the
Depositor to arrange for the sale of such Residual Certificate.  The proceeds of such sale, net of
commissions (which may include commissions payable to the Depositor or its affiliates in
connection with such sale), expenses and taxes due, if any, will be remitted by the Certificate
Registrar to the previous Holder of such Residual Certificate that is a Permitted Transferee,
except that in the event the Certificate Registrar determines that the Holder of such
Residual Certificate may be liable for any amount due under this Section or any other
provisions of this Agreement, the Certificate Registrar may withhold a corresponding amount
from such remittance as security for such claim.  The terms and conditions of any sale under
this clause (v) shall be determined in the sole discretion of the Trustee and the Certificate
Registrar and they shall not be liable to any Person having an Ownership Interest in such
Residual Certificate as a result of its exercise of such discretion.

(vi)    If any Person other than a Permitted Transferee acquires any Ownership Interest
in a Residual Certificate in violation of the restrictions in this Section, then the Securities
Administrator upon receipt of reasonable compensation will provide to the Internal Revenue
Service, and to the persons specified in Sections 860E(e)(3) and (6) of the Code, information
needed to compute the tax imposed under Section 860E(e)(5) of the Code on transfers of
residual interests to disqualified organizations.

The foregoing provisions of this Section shall cease to apply to transfers occurring on or after the
date on which there shall have been delivered to the Certificate Registrar and the Servicer, in
form and substance satisfactory to the Certificate Registrar, (i) written notification from each
Rating Agency that the removal of the restrictions on Transfer set forth in this Section will not
cause such Rating Agency to downgrade its ratings of the Certificates (determined in the case of
the Insured Certificates, without giving effect to the Certificate Insurance Policy) and (ii) an
Opinion of Counsel to the effect that such removal will not cause the REMIC created hereunder
to fail to qualify as a REMIC.

(f) Notwithstanding any provision to the contrary herein, so long as a Restricted Global
Security or Regulation S Global Security, as applicable, representing the Certificates remains
outstanding and is held by or on behalf of the Depository, transfers of a Restricted Global
Security or Regulation S Global Security, as applicable, representing the Certificates, in whole or
in part, shall only be made in accordance with Section 6.01 and this Section 6.02(f).

(i)    Subject to clauses (ii) and (iii) of this Section 6.02(f), transfers of a Restricted
Global Security or Regulation S Global Security, as applicable, representing the Certificates
shall be limited to transfers of such a Restricted Global Security or Regulation S Global
Security, as applicable, in whole, but not in part, to nominees of the Depository or to a
successor of the Depository or such successor's nominee.

(ii)    <u>Restricted Global Security to Regulation S Global Security</u>.  If a holder of a
beneficial interest in a Restricted Global Security deposited with or on behalf of the Depository
wishes at any time to exchange its interest in such Restricted Global Security for an interest in
a Regulation S Global Security, or to transfer its interest in such Restricted Global Security to a
Person who wishes to take delivery thereof in the form of an interest in a Regulation S Global
Security, such holder, provided such holder is not a U.S. Person, may, subject to the rules and
procedures of the Depository, exchange or cause the exchange of such interest for an
equivalent beneficial interest in the Regulation S Global Security.  Upon receipt by the
Certificate Registrar of (A) instructions from the Depository directing the Certificate Registrar
to cause to be credited a beneficial interest in a Regulation S Global Security in an amount
equal to the beneficial interest in such Restricted Global Security to be exchanged but not less
than the minimum denomination applicable to such Certificateholders' held through a
Regulation S Global Security, (B) a written order given in accordance with the Depository's
procedures containing information regarding the participant account of the Depository and, in
the case of a transfer pursuant to and in accordance with Regulation S, the Euroclear or
Clearstream account to be credited with such increase and (C) a certificate in the form of
Exhibit N-1 hereto given by the holder of such beneficial interest stating that the exchange or
transfer of such interest has been made in compliance with the transfer restrictions applicable
to the Global Securities, including that the holder is not a U.S. Person and pursuant to and in
accordance with Regulation S, the Certificate Registrar shall reduce the principal amount of
the Restricted Global Security and increase the principal amount of the Regulation S Global
Security by the aggregate principal amount of the beneficial interest in the Restricted Global
Security to be exchanged, and shall instruct Euroclear or Clearstream, as applicable,
concurrently with such reduction, to credit or cause to be credited to the account of the Person
specified in such instructions a beneficial interest in the Regulation S Global Security equal to
the reduction in the principal amount of the Restricted Global Security.

(iii)    <u>Regulation S Global Security to Restricted Global Security</u>.  If a holder of a
beneficial interest in a Regulation S Global Security deposited with or on behalf of the
Depository wishes at any time to transfer its interest in such Regulation S Global Security to a
Person who wishes to take delivery thereof in the form of an interest in a Restricted Global
Security, such holder may, subject to the rules and procedures of the Depository, exchange or
cause the exchange of such interest for an equivalent beneficial interest in a Restricted Global
Security.  Upon receipt by the Certificate Registrar of (A) instructions from the Depository
directing the Certificate Registrar to cause to be credited a beneficial interest in a Restricted
Global Security in an amount equal to the beneficial interest in such Regulation S Global
Security to be exchanged but not less than the minimum denomination applicable to such
Certificateholder's Certificates held through a Restricted Global Security, to be exchanged,
such instructions to contain information regarding the participant account with the Depository
to be credited with such increase, and (B) a certificate in the form of Exhibit N-2 hereto given
by the holder of such beneficial interest and stating, among other things, that the Person
transferring such interest in such Regulation S Global Security reasonably believes that the
Person acquiring such interest in a Restricted Global Security is a qualified institutional buyer
within the meaning of Rule 144A, is obtaining such beneficial interest in a transaction meeting
the requirements of Rule 144A and in accordance with any applicable securities laws of any
State of the United States or any other jurisdiction, then the Certificate Registrar will reduce

137

the principal amount of the Regulation S Global Security and increase the principal amount of
the Restricted Global Security by the aggregate principal amount of the beneficial interest in
the Regulation S Global Security to be transferred and the Certificate Registrar shall instruct
the Depository, concurrently with such reduction, to credit or cause to be credited to the
account of the Person specified in such instructions a beneficial interest in the Restricted
Global Security equal to the reduction in the principal amount of the Regulation S Global
Security.

(iv)    Other Exchanges.  In the event that a Restricted Global Security or Regulation S
Global Security, as applicable, is exchanged for Certificates in definitive registered form
without interest coupons, such Certificates may be exchanged for one another only in
accordance with such procedures as are substantially consistent with the provisions above
(including certification requirements intended to insure that such transfers comply with Rule
144A or are to non-U.S. Persons, or otherwise comply with Regulation S under the Securities
Act, as the case may be, and as may be from time to time adopted by the Depositor and the
Certificate Registrar.

(v)    Restrictions on U.S. Transfers.  Transfers of interests in the Regulation S Global
Security to U.S. persons (as defined in Regulation S) shall be limited to transfers made
pursuant to the provisions of Section 6.02(f)(iii).

(g) No service charge shall be made for any registration of transfer or exchange of
Certificates of any Class, but the Certificate Registrar may require payment of a sum sufficient to
cover any tax or governmental charge that may be imposed in connection with any transfer or
exchange of Certificates.

All Certificates surrendered for registration of transfer or exchange shall be cancelled by
the Certificate Registrar and disposed of pursuant to its standard procedures.

SECTION 6.03.  Mutilated, Destroyed, Lost or Stolen Certificates.

If (i) any mutilated Certificate is surrendered to the Trustee or the Certificate Registrar or
the Trustee or the Certificate Registrar receives evidence to its satisfaction of the destruction,
loss or theft of any Certificate and (ii) there is delivered to the Trustee, the Certificate Registrar
and the Depositor such security or indemnity as may be required by them to save each of them
harmless, then, in the absence of notice to the Trustee, the Depositor or the Certificate Registrar
(and with respect to the Insured Certificates, the Certificate Insurer) that such Certificate has
been acquired by a bona fide purchaser, the Securities Administrator shall execute on behalf of
the Trust and the Certificate Registrar shall authenticate and deliver, in exchange for or in lieu of
any such mutilated, destroyed, lost or stolen Certificate, a new Certificate of like tenor and
Percentage Interest.  Upon the issuance of any new Certificate under this Section, the Trustee,
the Depositor or the Certificate Registrar may require the payment of a sum sufficient to cover
any tax or other governmental charge that may be imposed in relation thereto and any other
expenses (including the fees and expenses of the Trustee, the Depositor and the Certificate
Registrar) in connection therewith.  Any duplicate Certificate issued pursuant to this Section,
shall constitute complete and indefeasible evidence of ownership in the Trust Fund, as if

138

originally issued, whether or not the lost, stolen or destroyed Certificate shall be found at any time.

SECTION 6.04. Persons Deemed Owners.

The Depositor, the Trustee, the Certificate Registrar, the Certificate Insurer (with respect to the Insured Certificates), the Paying Agent and any agent of the Depositor, the Trustee, the Certificate Registrar, the Certificate Insurer or the Paying Agent may treat the Person, including a Depository, in whose name any Certificate is registered as the owner of such Certificate for the purpose of receiving distributions pursuant to Section 5.01 hereof and for all other purposes whatsoever, and none of the Trust, the Depositor, the Trustee, the Certificate Registrar, the Certificate Insurer, the Paying Agent or any agent of any of them shall be affected by notice to the contrary.

SECTION 6.05. Appointment of Paying Agent.

(a) The Trustee may appoint a Paying Agent (which may be the Trustee) for the purpose of making distributions to Certificateholders hereunder. The Trustee hereby appoints the Securities Administrator as the initial Paying Agent. The duties of the Paying Agent may include the obligation (i) to withdraw funds from the Distribution Account pursuant to Section 4.03 hereof and (ii) to distribute statements and provide information to Certificateholders as required hereunder. The Paying Agent hereunder shall at all times be an entity duly incorporated and validly existing under the laws of the United States of America or any state thereof, authorized under such laws to exercise corporate trust powers and subject to supervision or examination by federal or state authorities.

The Securities Administrator, as Paying Agent, shall hold all sums, if any, held by it for payment to the Certificateholders in trust for the benefit of the Certificateholders entitled thereto until such sums shall be paid to such Certificateholders and shall comply with all requirements of the Code regarding the withholding of payments in respect of federal income taxes due from Certificate Owners and otherwise comply with the provisions of this Agreement applicable to it.

ARTICLE VII

DEFAULT

SECTION 7.01. Events of Default.

(a) If any one of the following events (each, an "**Event of Default**") shall occur and be continuing:

(i)    the failure by the Master Servicer to make any Advance or to deposit in the Distribution Account any deposit required to be made under the terms of this Agreement, and such failure continues unremedied for a period of one Business Day after the date upon which

written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer; or

(ii)    the failure by the Master Servicer duly to observe or perform, in any material respect, any other covenants, obligations or agreements of the Master Servicer as set forth in this Agreement, which failure continues unremedied for a period of 60 days (or, in the case of a breach of its obligation to provide a Sarbanes-Oxley Certification pursuant to Section 3.18, 30 days) after the date (A) on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee or to the Master Servicer and the Trustee by Holders of Certificates evidencing at least 25% of the Voting Rights or (B) on which a Servicing Officer of the Master Servicer has actual knowledge of such failure; or

(iii)    the entry against the Master Servicer of a decree or order by a court or agency or supervisory authority having jurisdiction in the premises for the appointment of a trustee, conservator, receiver or liquidator in any insolvency, conservatorship, receivership, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding up or liquidation of its affairs, and the continuance of any such decree or order unstayed and in effect for a period of 60 days; or

(iv)    the Master Servicer shall voluntarily go into liquidation, consent to the appointment of a conservator or receiver or liquidator or similar person in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Master Servicer or of or relating to all or substantially all of its property; or a decree or order of a court or agency or supervisory authority having jurisdiction in the premises for the appointment of a conservator, receiver, liquidator or similar person in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Master Servicer and such decree or order shall have remained in force undischarged, unbonded or unstayed for a period of 60 days; or the Master Servicer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors or voluntarily suspend payment of its obligations;

(b) then, and in each and every such case, so long as an Event of Default shall not have been remedied within the applicable grace period, the Trustee shall, at the written direction of the Holders of Certificates evidencing Voting Rights aggregating not less than 51%, by notice then given in writing to the Master Servicer, terminate all of the rights and obligations of the Master Servicer as servicer under this Agreement. Any such notice to the Master Servicer shall also be given to each Rating Agency, the Certificate Insurer, the Depositor and the Seller. On or after the receipt by the Master Servicer (and by the Trustee if such notice is given by the Holders) of such written notice, all authority and power of the Master Servicer under this Agreement, whether with respect to the Certificates or the Mortgage Loans or otherwise, shall pass to and be vested in the Trustee and the Trustee is hereby authorized and empowered to execute and deliver, on behalf of the Master Servicer, as attorney-in-fact or otherwise, any and all documents and other instruments, and to do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement of each Mortgage Loan and related documents or otherwise. The Master Servicer

140

agrees to cooperate with the Trustee in effecting the termination of the responsibilities and rights of the Master Servicer hereunder, including, without limitation, the delivery to the Trustee of all documents and records requested by it to enable it to assume the Master Servicer's functions under this Agreement within ten Business Days subsequent to such notice and the transfer within one Business Day subsequent to such notice to the Trustee for the administration by it of all cash amounts that shall at the time be held by the Master Servicer to be deposited by it in the Distribution Account, any REO Account or any Servicing Account or that have been deposited by the Master Servicer in such accounts or thereafter received by the Master Servicer with respect to the Mortgage Loans or any REO Property received by the Master Servicer. All reasonable costs and expenses (including attorneys' fees) incurred in connection with transferring the Master Servicer's duties and the Mortgage Files to the successor Master Servicer and amending this Agreement to reflect such succession as Master Servicer pursuant to this Section shall be paid by the predecessor Master Servicer (or if the predecessor Master Servicer is the Trustee, the initial Master Servicer) upon presentation of reasonable documentation of such costs and expenses. The termination of the rights and obligations of the Master Servicer shall not affect any liability it may have incurred prior to such termination.

(c) Notwithstanding the foregoing, if an Event of Default described in clause (i) of Section 7.01(a) shall occur, the Trustee shall, by notice in writing to the Master Servicer, which may be delivered by telecopy, immediately suspend all of the rights and obligations of the Master Servicer thereafter arising under this Agreement, but without prejudice to any rights it may have as a Certificateholder or to reimbursement of outstanding Advances or other amounts for which the Master Servicer was entitled to reimbursement as of the date of termination, and the Trustee shall act as provided in Section 7.02 to carry out the duties of the Master Servicer, including the obligation to make any Advance the nonpayment of which was an Event of Default described in clause (i) of Section 7.01(a). Any such action taken by the Trustee must be prior to the distribution on the relevant Distribution Date. If the Master Servicer shall within two Business Days following such suspension remit to the Trustee the amount of any Advance the nonpayment of which by the Master Servicer was an Event of Default described in clause (i) of Section 7.01(a), the Trustee may, in its sole discretion, permit the Master Servicer to resume its rights and obligations as Master Servicer hereunder. The Master Servicer agrees that it will reimburse the Trustee for actual, necessary and reasonable costs incurred by the Trustee because of action taken pursuant to this subsection.

SECTION 7.02.  Trustee to Act.

(a) From and after the date the Master Servicer (and the Trustee, if notice is sent by the Holders) receives a notice of termination pursuant to Section 7.01, the Trustee shall be the successor in all respects to the Master Servicer in its capacity as servicer under this Agreement and the transactions set forth or provided for herein and shall be subject to all the responsibilities, duties and liabilities relating thereto placed on the Master Servicer by the terms and provisions hereof arising on and after its succession. As compensation therefor, the Trustee shall be entitled to such compensation as the Master Servicer would have been entitled to hereunder if no such notice of termination had been given. Notwithstanding the above, (i) if the Trustee is unwilling to act as successor Master Servicer or (ii) if the Trustee is legally unable so to act, the Trustee *shall appoint* or petition a court of competent jurisdiction to appoint, any established housing and

home finance institution, bank or other mortgage loan or home equity loan servicer having a net worth of not less than $15,000,000 as the successor to the Master Servicer hereunder in the assumption of all or any part of the responsibilities, duties or liabilities of the Master Servicer hereunder; provided, that the appointment of any such successor Master Servicer shall not result in the qualification, reduction or withdrawal of the ratings assigned to the Certificates by each Rating Agency as evidenced by a letter to such effect from such Rating Agency. Pending appointment of a successor to the Master Servicer hereunder, unless the Trustee is prohibited by law from so acting, the Trustee shall act in such capacity as hereinabove provided. In connection with such appointment and assumption, the successor shall be entitled to receive compensation out of payments on Mortgage Loans in an amount equal to the compensation which the Master Servicer would otherwise have received hereunder.  The appointment of a successor Master Servicer shall not affect any liability of the predecessor Master Servicer which may have arisen under this Agreement prior to its termination as Master Servicer to pay any deductible under an insurance policy pursuant to Section 3.09 or to indemnify the Trustee pursuant to Section 3.26), nor shall any successor Master Servicer be liable for any acts or omissions of the predecessor Master Servicer or for any breach by such Master Servicer of any of its representations and warranties contained herein or in any related document or agreement.  The Trustee and such successor shall take such action, consistent with this Agreement, as shall be necessary to effectuate any such succession.

(b) Any successor, including the Trustee, to the Master Servicer as Master Servicer shall during the term of its service as Master Servicer continue to service and administer the Mortgage Loans for the benefit of Certificateholders, and maintain in force a policy or policies of insurance covering errors and omissions in the performance of its obligations as Master Servicer hereunder and a Fidelity Bond in respect of its officers, employees and agents to the same extent as the Master Servicer is so required pursuant to Section 3.04.

(c) Notwithstanding anything else herein to the contrary, in no event shall the Trustee be liable for any servicing fee or for any differential in the amount of the servicing fee paid hereunder and the amount necessary to induce any successor Master Servicer to act as successor Master Servicer under this Agreement and the transactions set forth or provided for herein.

SECTION 7.03.  Waiver of Event of Default.

The Majority Certificateholders may, on behalf of all Certificateholders, by notice in writing to the Trustee, direct the Trustee to waive any events permitting removal of any Master Servicer under this Agreement, *provided, however*, that the Majority Certificateholders may not waive an event that results in a failure to make any required distribution on a Certificate without the consent of the Holder of such Certificate.  Upon any waiver of an Event of Default, such event shall cease to exist and any Event of Default arising therefrom shall be deemed to have been remedied for every purpose of this Agreement.  No such waiver shall extend to any subsequent or other event or impair any right consequent thereto except to the extent expressly so waived.  Notice of any such waiver shall be given by the Trustee to each Rating Agency and the Certificate Insurer.

142

SECTION 7.04. Notification to Certificateholders.

(a) Upon any termination or appointment of a successor to any Master Servicer pursuant to this Article VII or Section 3.30, the Trustee shall give prompt written notice thereof to the Securities Administrator and the Certificateholders at their respective addresses appearing in the Certificate Register and to each Rating Agency and the Certificate Insurer.

(b) No later than 60 days after the occurrence of any event which constitutes or which, with notice or a lapse of time or both, would constitute an Event of Default of which a Responsible Officer of the Trustee becomes aware of the occurrence of such an event, the Trustee shall transmit by mail to the Securities Administrator, the Certificate Insurer and all Certificateholders notice of such occurrence unless such Event of Default shall have been waived or cured.

ARTICLE VIII

THE TRUSTEE AND THE SECURITIES ADMINISTRATOR

SECTION 8.01. Duties of the Trustee and the Securities Administrator.

The Trustee, prior to the occurrence of an Event of Default and after the curing or waiver of all Events of Default which may have occurred, and the Securities Administrator each undertake to perform such duties and only such duties as are specifically set forth in this Agreement. If an Event of Default has occurred (which has not been cured or waived) of which a Responsible Officer has actual knowledge, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs unless the Trustee is acting as successor Master Servicer, in which case it shall use the same degree of care and skill as the Master Servicer hereunder.

Each of the Trustee and the Securities Administrator, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee and the Securities Administrator, which are specifically required to be furnished pursuant to any provision of this Agreement, shall examine them to determine whether they conform to the requirements of this Agreement; *provided, however*, that neither the Trustee nor the Securities Administrator will be responsible for the accuracy or content of any such resolutions, certificates, statements, opinions, reports, documents or other instruments. If any such instrument is found not to conform to the requirements of this Agreement in a material manner, the Trustee and the Securities Administrator shall take such action as it deems appropriate to have the instrument corrected.

On each Distribution Date, the Securities Administrator, as Paying Agent, shall make monthly distributions and the final distribution to the Certificateholders from funds in the Distribution Account as provided in Sections 5.01 and 10.01 herein.

No provision of this Agreement shall be construed to relieve the Trustee or the Securities Administrator from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; *provided, however,* that:

(i)    prior to the occurrence of an Event of Default, and after the curing of all such Events of Default which may have occurred, the duties and obligations of the Trustee and the Securities Administrator shall be determined solely by the express provisions of this Agreement, neither the Trustee nor the Securities Administrator shall be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee or the Securities Administrator and, in the absence of bad faith on the part of the Trustee or the Securities Administrator, the Trustee or the Securities Administrator may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee or the Securities Administrator, respectively, and conforming to the requirements of this Agreement;

(ii)    neither the Trustee nor the Securities Administrator shall be liable for an error of judgment made in good faith by a Responsible Officer of the Trustee or the Securities Administrator, respectively, unless it shall be proved that the Trustee or the Securities Administrator, respectively, was negligent in ascertaining or investigating the facts related thereto;

(iii)    neither the Trustee nor the Securities Administrator shall be personally liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the consent or at the direction of Holders of Certificates as provided herein relating to the time, method and place of conducting any remedy pursuant to this Agreement, or exercising or omitting to exercise any trust or power conferred upon the Trustee or the Securities Administrator, respectively, under this Agreement; and

(iv)    the Trustee shall not be charged with knowledge of any Event of Default unless a Responsible Officer of the Trustee at the Corporate Trust Office obtains actual knowledge of such failure or the Trustee receives written notice of such Event of Default.

Neither the Trustee nor the Securities Administrator shall be required to expend or risk its own funds or otherwise incur financial or other liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if there is reasonable ground for believing that the repayment of such funds or indemnity satisfactory to it against such risk or liability is not assured to it, and none of the provisions contained in this Agreement shall in any event require the Trustee or the Securities Administrator to perform, or be responsible for the manner of performance of, any of the obligations of the Master Servicer under this Agreement, except during such time, if any, as the Trustee shall be the successor to, and be vested with the rights, duties, powers and privileges of, the Master Servicer in accordance with the terms of this Agreement.

144

SECTION 8.02.  Certain Matters Affecting the Trustee and the Securities Administrator.

Except as otherwise provided in Section 8.01 hereof:

(i)     the Trustee and the Securities Administrator may request and conclusively rely upon, and shall be fully protected in acting or refraining from acting upon, any resolution, Officers' Certificate, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties, and the manner of obtaining consents and of evidencing the authorization of the execution thereof by Certificateholders shall be subject to such reasonable regulations as the Trustee and the Securities Administrator may prescribe;

(ii)    the Trustee and the Securities Administrator may consult with counsel and any advice of its counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by it hereunder in good faith and in accordance with such advice or Opinion of Counsel;

(iii)   neither the Trustee nor the Securities Administrator shall be under any obligation to exercise any of the rights or powers vested in it by this Agreement, or to institute, conduct or defend any litigation hereunder or in relation hereto, at the request, order or direction of any of the Certificateholders, pursuant to the provisions of this Agreement, unless such Certificateholders shall have offered to the Trustee or the Securities Administrator, respectively, reasonable security or indemnity satisfactory to it against the costs, expenses and liabilities which may be incurred therein or thereby; the right of the Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty, and the Trustee shall not be answerable for other than its negligence or willful misconduct in the performance of any such act;

(iv)    neither the Trustee nor the Securities Administrator shall be personally liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Agreement;

(v)     neither the Securities Administrator nor, prior to the occurrence of an Event of Default and after the curing or waiver of all Events of Default which may have occurred, the Trustee shall be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or documents, unless requested in writing to do so by the Majority Certificateholder; *provided, however,* that if the payment within a reasonable time to the Trustee or the Securities Administrator of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Trustee or the Securities Administrator, as applicable, not reasonably assured to the Trustee or the Securities Administrator by the security afforded to it by the terms of this Agreement, the Trustee or the Securities Administrator, as applicable, may require reasonable indemnity against such cost, expense or liability as a condition to such proceeding.  If the Master Servicer fails to reimburse the Trustee or the Securities Administrator in respect of the reasonable expense of every such

145

examination relating to the Master Servicer, the Trustee or the Securities Administrator shall be reimbursed by the Trust Fund;

(vi)    the Trustee shall not be accountable, shall have no liability and makes no representation as to any acts or omissions hereunder of the Master Servicer until such time as the Trustee may be required to act as the Master Servicer pursuant to Section 7.02 hereof and thereupon only for the acts or omissions of the Trustee as a successor Master Servicer;

(vii)    the Trustee and the Securities Administrator may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, nominees, attorneys or a custodian, and shall not be responsible for any willful misconduct or negligence on the part of any agent, nominee, attorney or custodian appointed by the Trustee or the Securities Administrator in good faith; and

(viii)    the right of the Trustee or the Securities Administrator to perform any discretionary act enumerated in this Agreement shall not be construed as a duty, and neither the Trustee nor the Securities Administrator shall be answerable for other than its negligence or willful misconduct in the performance of such act.

In order to comply with its duties under the USA PATRIOT Act, the Trustee shall obtain and verify certain information and documentation from the other parties hereto including but not limited to such parties' name, address, and other identifying information.

SECTION 8.03.    Trustee and Securities Administrator Not Liable for Certificates or Mortgage Loans.

The recitals contained herein and in the Certificates (other than the authentication and countersignature on the Certificates) shall be taken as the statements of the Seller, and neither the Trustee nor the Securities Administrator assumes any responsibility for the correctness of the same.  Neither the Trustee nor the Securities Administrator makes any representations or warranties as to the validity or sufficiency of this Agreement or of the Certificates (other than with respect to the Securities Administrator, the signature and countersignature on the Certificates) or of any Mortgage Loan or related document or of MERS or the MERS System. Neither the Trustee nor the Securities Administrator shall at any time have any responsibility or liability for or with respect to the legality, validity and enforceability of the Certificate Insurance Policy, any Yield Maintenance Agreement, any Mortgage or any Mortgage Loan, or the perfection and priority of any Mortgage or the maintenance of any such perfection and priority, or for or with respect to the sufficiency of the Trust or the ability to generate the payments to be distributed to Certificateholders under this Agreement, including, without limitation:  the existence, condition and ownership of any Mortgaged Property; the existence and enforceability of any hazard insurance thereon (other than if the Trustee shall assume the duties of the Master Servicer pursuant to Section 7.02 hereof); the validity of the assignment of any Mortgage Loan to the Trustee or of any intervening assignment; the completeness of any Mortgage Loan; the performance or enforcement of any Mortgage Loan (other than if the Trustee shall assume the duties of the Master Servicer pursuant to Section 7.02 hereof); the compliance by the Depositor or the Seller with any warranty or representation made under this Agreement or in any related

146

document or the accuracy of any such warranty or representation prior to the Trustee's receipt of notice or other discovery of any non-compliance therewith or any breach thereof; the acts or omissions of the Master Servicer (other than if the Trustee shall assume the duties of the Master Servicer pursuant to Section 7.02 hereof, and then only for the acts or omissions of the Trustee as the successor Master Servicer), the Servicer or any Mortgagor; any action of the Master Servicer (other than if the Trustee shall assume the duties of the Master Servicer pursuant to Section 7.02 hereof), or the Servicer taken in the name of the Trustee; the failure of the Master Servicer or the Servicer to act or perform any duties required of it as agent of the Trustee hereunder; or any action by the Trustee taken at the instruction of the Master Servicer (other than if the Trustee shall assume the duties of the Master Servicer pursuant to Section 7.02 hereof, and then only for the actions of the Trustee as the successor Master Servicer); *provided, however,* that the foregoing shall not relieve the Trustee of its obligation to perform its duties under this Agreement, including, without limitation, the Trustee's duty to review the Mortgage Files, if so required pursuant to Section 2.01 of this Agreement.

SECTION 8.04. Trustee, Custodian, Master Servicer and Securities Administrator May Own Certificates.

The Trustee, the Custodian, the Master Servicer and the Securities Administrator in their respective individual capacities, or in any capacity other than as Trustee, Custodian, Master Servicer or Securities Administrator hereunder, may become the owner or pledgee of any Certificates with the same rights as they would have if they were not Trustee, Custodian, Master Servicer or Securities Administrator, as applicable, and may otherwise deal with the parties hereto.

SECTION 8.05. Trustee's and Securities Administrator's Fees and Expenses.

The Trustee (including in its capacity as a Custodian hereunder) and the Securities Administrator shall each be compensated by the Master Servicer for its services hereunder from a portion of the Master Servicing Fee. In addition, the Trustee and the Securities Administrator will be entitled to recover from the Distribution Account pursuant to Section 4.03(a) all reasonable out-of-pocket expenses, disbursements and advances, including without limitation, in connection with any filing that the Trustee is required to make under Section 3.20 hereof, any Event of Default, any breach of this Agreement or any claim or legal action (including any pending or threatened claim or legal action) incurred or made by the Trustee or the Securities Administrator, respectively, in the performance of its duties or the administration of the trusts hereunder (including, but not limited to, the performance of its duties under Section 2.03 hereof) or under the Yield Maintenance Agreement or the Certificate Insurance Policy (including the reasonable compensation, expenses and disbursements of its counsel) except any such expense, disbursement or advance as may arise from its negligence or intentional misconduct or which is specifically designated herein as the responsibility of the Depositor, the Seller, the Master Servicer or the Certificateholders hereunder. If funds in the Distribution Account are insufficient therefor, the Trustee and the Securities Administrator shall recover such expenses from future collections on the Mortgage Loans or as otherwise agreed by the Certificateholders. Such compensation and reimbursement obligation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust.

147

SECTION 8.06.  Eligibility Requirements for Trustee and Securities Administrator.

The Trustee and the Securities Administrator hereunder shall each at all times be an entity duly organized and validly existing under the laws of the United States of America or any state thereof, authorized under such laws to exercise corporate trust powers, and shall each have a combined capital and surplus of at least $50,000,000, a minimum long-term debt rating in the third highest rating category by each Rating Agency, a minimum short-term debt rating in the second highest rating category by each Rating Agency, and shall each be subject to supervision or examination by federal or state authority.  If such entity publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section 8.06, the combined capital and surplus of such entity shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.  The principal office of the Trustee (other than the initial Trustee) shall be in a state with respect to which an Opinion of Counsel has been delivered to such Trustee at the time such Trustee is appointed Trustee to the effect that the Trust will not be a taxable entity under the laws of such state.  In case at any time the Trustee or the Securities Administrator shall cease to be eligible in accordance with the provisions of this Section 8.06, the Trustee or the Securities Administrator, as applicable, shall resign immediately in the manner and with the effect specified in Section 8.07 hereof.

SECTION 8.07.  Resignation or Removal of Trustee and Securities Administrator.

Each of the Trustee and Securities Administrator (including the Securities Administrator as Paying Agent and as Certificate Registrar) may at any time resign and be discharged from the trust hereby created by giving written notice thereof to the Trustee or the Securities Administrator, as applicable, the Depositor, the Certificate Insurer, the Seller, the Master Servicer and each Rating Agency.  Upon receiving such notice of resignation of the Trustee, the Depositor shall promptly appoint a successor Trustee that meets the requirements in Section 8.06 or, in the case of notice of resignation of the Securities Administrator, the Trustee (in consultation with the Depositor) shall promptly appoint a successor Securities Administrator that meets the requirements in Section 8.06, in each case, by written instrument, in duplicate, one copy of which instrument shall be delivered to each of the resigning Trustee or Securities Administrator, as applicable, and one copy to the successor Trustee or successor Securities Administrator, as applicable.  If no successor Trustee or successor Securities Administrator, as applicable, shall have been so appointed and having accepted appointment within 30 days after the giving of such notice of resignation, the resigning Trustee or Securities Administrator may petition any court of competent jurisdiction for the appointment of a successor Trustee or Securities Administrator, as applicable.

If at any time the Trustee or the Securities Administrator shall cease to be eligible in accordance with the provisions of Section 8.06 hereof or if at any time the Trustee or the Securities Administrator shall be legally unable to act, or shall be adjudged a bankrupt or insolvent, or a receiver of the Trustee or the Securities Administrator, as applicable, or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or the Securities Administrator, as applicable, or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, then the Depositor may remove the Trustee or the

148

Trustee may remove the Securities Administrator, as applicable. If the Depositor or the Trustee removes the Trustee or the Securities Administrator, respectively under the authority of the immediately preceding sentence, the Depositor or the Trustee shall promptly appoint a successor Trustee or successor Securities Administrator, as applicable, that meets the requirements of Section 8.06, by written instrument, in triplicate, one copy of which instrument shall be delivered to the Trustee or the Securities Administrator, as applicable, so removed, one copy to the successor Trustee or successor Securities Administrator, as applicable, and one copy to the Master Servicer, and one copy to the Certificate Insurer.

The Majority Certificateholders may at any time remove the Trustee or the Securities Administrator by written instrument or instruments delivered to the Depositor and the Trustee; the Depositor or the Trustee shall thereupon use its best efforts to appoint a successor Trustee or successor Securities Administrator, as applicable, in accordance with this Section.

Any resignation or removal of the Trustee or the Securities Administrator and appointment of a successor Trustee or a successor Securities Administrator, pursuant to any of the provisions of this Section 8.07 shall not become effective until acceptance of appointment by the successor Trustee or successor Securities Administrator, as applicable, as provided in Section 8.08 hereof. As long as the Certificate Insurance Policy is in effect, the Trustee or Securities Administrator, as applicable, will send a written notice to the Certificate Insurer of any such resignation, removal or appointment.

Notwithstanding anything to the contrary contained herein, in the event that the Master Servicer resigns or is removed as Master Servicer hereunder, the Securities Administrator shall have the right to resign immediately as Securities Administrator by giving written notice to the Depositor and the Trustee, with a copy to each Rating Agency and the Certificate Insurer.

SECTION 8.08.  Successor Trustee and Successor Securities Administrator.

Any successor Trustee or successor Securities Administrator appointed as provided in Section 8.07 hereof shall execute, acknowledge and deliver to the Depositor, the Seller and the Master Servicer and to its predecessor Trustee or predecessor Securities Administrator, as applicable, an instrument accepting such appointment hereunder, and thereupon the resignation or removal of the predecessor Trustee or predecessor Securities Administrator, as applicable, shall become effective, and such successor Trustee or successor Securities Administrator, without any further act, deed or conveyance, shall become fully vested with all the rights, powers, duties and obligations of its predecessor hereunder, with like effect as if originally named as Trustee or Securities Administrator. The Depositor, the Seller, the Master Servicer and the predecessor Trustee or predecessor Securities Administrator, as applicable, shall execute and deliver such instruments and do such other things as may reasonably be required for fully and certainly vesting and confirming in the successor Trustee or successor Securities Administrator, as applicable, all such rights, powers, duties and obligations.

No successor Trustee or successor Securities Administrator shall accept appointment as provided in this Section 8.08 unless at the time of such acceptance such successor Trustee or successor Securities Administrator shall be eligible under the provisions of Section 8.06 hereof

149

and the appointment of such successor Trustee or successor Securities Administrator shall not result in a downgrading of the Senior Certificates by each Rating Agency, as evidenced by a letter from such Rating Agency.

Upon acceptance of appointment by a successor Trustee or successor Securities Administrator, as applicable, as provided in this Section 8.08, the successor Trustee or successor Securities Administrator shall mail notice of such appointment hereunder to all Holders of Certificates at their addresses as shown in the Certificate Register, to the Certificate Insurer and to each Rating Agency.

SECTION 8.09.  Merger or Consolidation of Trustee or Securities Administrator.

Any entity into which the Trustee or the Securities Administrator may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Trustee or the Securities Administrator shall be a party, or any entity succeeding to the business of the Trustee or the Securities Administrator, shall be the successor of the Trustee or the Securities Administrator, as applicable, hereunder, provided such entity shall be eligible under the provisions of Section 8.06 and 8.08 hereof, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

SECTION 8.10.  Appointment of Co-Trustee or Separate Trustee.

Notwithstanding any other provisions of this Agreement, at any time, for the purpose of meeting any legal requirements of any jurisdiction in which any part of the Trust or any Mortgaged Property may at the time be located, the Depositor and the Trustee acting jointly shall have the power, and the Trustee shall, and shall instruct the Depositor to, at the expense of the Trust Fund, execute and deliver all instruments to appoint one or more Persons approved by the Trustee to act as co-trustee or co-trustees, jointly with the Trustee, or separate trustee or separate trustees, of all or any part of the Trust, and to vest in such Person or Persons, in such capacity and for the benefit of the Certificateholders, such title to the Trust, or any part thereof, and, subject to the other provisions of this Section 8.10, such powers, duties, obligations, rights and trusts as the Depositor and the Trustee may consider necessary or desirable.  No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor Trustee under Section 8.06 hereof, and no notice to Certificateholders of the appointment of any co-trustee or separate trustee shall be required under Section 8.08 hereof.

Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i)    all rights, powers, duties and obligations conferred or imposed upon the Trustee shall be conferred or imposed upon and exercised or performed by the Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed (whether as Trustee hereunder or as successor to the Master Servicer hereunder), the Trustee

150

shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the Trust or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Trustee;

      (ii)    no trustee hereunder shall be held personally liable by reason of any act or omission of any other trustee hereunder; and

      (iii)    the Depositor and the Trustee, acting jointly may at any time accept the resignation of or remove any separate trustee or co-trustee.

Any notice, request or other writing given to the Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this Agreement and the conditions of this Article VIII. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Trustee or separately, as may be provided therein, subject to all the provisions of this Agreement, specifically including every provision of this Agreement relating to the conduct of, affecting the liability of, or affording protection to, the Trustee. Every such instrument shall be filed with the Trustee and a copy thereof given to the Depositor.

Any separate trustee or co-trustee may, at any time, constitute the Trustee, its agent or attorney-in-fact, with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Agreement on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Trustee, to the extent permitted by law, without the appointment of a new or successor Trustee.

SECTION 8.11.  Limitation of Liability.

The Certificates are executed by the Trustee, not in its individual capacity but solely as Trustee of the Trust, in the exercise of the powers and authority conferred and vested in it by this Agreement. Each of the undertakings and agreements made on the part of the Trustee in the Certificates is made and intended not as a personal undertaking or agreement by the Trustee but is made and intended for the purpose of binding only the Trust.

SECTION 8.12.  Trustee May Enforce Claims Without Possession of Certificates.

(a) All rights of action and claims under this Agreement or the Certificates may be prosecuted and enforced by the Trustee without the possession of any of the Certificates or the production thereof in any proceeding relating thereto, and such proceeding instituted by the Trustee shall be brought in its own name or in its capacity as Trustee for the benefit of all Holders of such Certificates, subject to the provisions of this Agreement. Any recovery of judgment shall, after provision for the payment of the reasonable compensation, expenses,

151

disbursement and advances of the Trustee, its agents and counsel, be for the ratable benefit or the Certificateholders in respect of which such judgment has been recovered.

(b) The Trustee shall afford the Seller, the Depositor and each Certificateholder upon reasonable notice during normal business hours at its Corporate Trust Office or other office designated by the Trustee, access to all records maintained by the Trustee in respect of its duties hereunder and access to officers of the Trustee responsible for performing such duties. Upon request, the Trustee shall furnish the Depositor and any requesting Certificateholder with its most recent audited financial statements. The Trustee shall cooperate fully with the Seller, the Depositor and such Certificateholder and shall, subject to the first sentence of this Section 8.12(b), make available to the Seller, the Depositor and such Certificateholder for review and copying such books, documents or records as may be requested with respect to the Trustee's duties hereunder. The Seller, the Depositor and the Certificateholders shall not have any responsibility or liability for any action or failure to act by the Trustee and are not obligated to supervise the performance of the Trustee under this Agreement or otherwise.

SECTION 8.13. Suits for Enforcement.

In case an Event of Default or a default by the Depositor hereunder shall occur and be continuing, the Trustee may proceed to protect and enforce its rights and the rights of the Certificateholders under this Agreement, as the case may be, by a suit, action or proceeding in equity or at law or otherwise, whether for the specific performance of any covenant or agreement contained in this Agreement or in aid of the execution of any power granted in this Agreement or for the enforcement of any other legal, equitable or other remedy, as the Trustee, being advised by counsel, and subject to the foregoing, shall deem most effectual to protect and enforce any of the rights of the Trustee and the Certificateholders.

SECTION 8.14. Waiver of Bond Requirement.

The Trustee shall be relieved of, and each Certificateholder hereby waives, any requirement of any jurisdiction in which the Trust, or any part thereof, may be located that the Trustee post a bond or other surety with any court, agency or body whatsoever.

SECTION 8.15. Waiver of Inventory, Accounting and Appraisal Requirement.

The Trustee shall be relieved of, and each Certificateholder hereby waives, any requirement of any jurisdiction in which the Trust, or any part thereof, may be located that the Trustee file any inventory, accounting or appraisal of the Trust with any court, agency or body at any time or in any manner whatsoever.

SECTION 8.16. Appointment of Custodians.

The Trustee may, and at the direction of the Depositor shall, appoint one or more custodians to hold all or a portion of the related Mortgage Files as agent for the Trustee, by entering into a custodial agreement. The custodian may at any time be terminated and a

substitute custodian appointed therefor by the Trustee. Subject to this Article VIII, the Trustee agrees to comply with the terms of each custodial agreement and to enforce the terms and provisions thereof against the custodian for the benefit of the Certificateholders having an interest in any Mortgage File held by such custodian. Each custodian shall be a depository institution or trust company subject to supervision by federal or state authority, shall have combined capital and surplus of at least $15,000,000 and shall be qualified to do business in the jurisdiction in which it holds any Mortgage File. The Master Servicer shall pay from its own funds, without any right to reimbursement, the fees, and any ordinary and routine costs and expenses of each Custodian. Each Custodian shall also be entitled to the benefits of Section 3.26 hereof. The initial Custodian of the Mortgage Loans shall be Deutsche Bank National Trust Company.

ARTICLE IX

REMIC ADMINISTRATION

SECTION 9.01.  REMIC Administration.

(a) As set forth in the Preliminary Statement to this Agreement, the Trustee shall elect to treat each REMIC created hereby as a REMIC for federal tax purposes. The Trustee shall sign and the Securities Administrator shall file such elections on Form 1066 or other appropriate federal tax or information return for the taxable year ending on the last day of the calendar year in which the Certificates are issued. The regular interests in each REMIC created hereunder and the related residual interest shall be as designated in the Preliminary Statement. Following the Closing Date, the Securities Administrator shall apply to the Internal Revenue Service for an employer identification number for each REMIC created hereunder by means of a Form SS-4 or other acceptable method and shall file a Form 8811 with the Internal Revenue Service.

(b) The Closing Date is hereby designated as the "Startup Day" of each REMIC created hereunder within the meaning of section 860G(a)(9) of the Code. The latest possible maturity date for purposes of Treasury Regulation 1.860G-1(a)(4) will be the Latest Possible Maturity Date.

(c) Except as provided in subsection (d) of this Section 9.01, the Seller shall pay any and all tax related expenses (not including taxes) of each REMIC created hereunder, including but not limited to any professional fees or expenses related to audits or any administrative or judicial proceedings with respect to any such REMIC that involve the Internal Revenue Service or state tax authorities, but only to the extent that (i) such expenses are ordinary or routine expenses, including expenses of a routine audit but not expenses of litigation (except as described in (ii)); or (ii) such expenses or liabilities (including taxes and penalties) are attributable to the negligence or willful misconduct of the Trustee or the Securities Administrator in fulfilling its respective duties hereunder (including the Securities Administrator's duties as tax return preparer).

(d) The Securities Administrator shall prepare and file, and the Trustee shall sign all of the federal and state tax and information returns of each REMIC created hereunder (collectively, the "**Tax Returns**") as the direct representative. The expenses of preparing and filing such Tax Returns shall be borne by the Securities Administrator. Notwithstanding the foregoing, the Securities Administrator shall have no obligation to prepare, file or otherwise deal with partnership tax information or returns. In the event that partnership tax information or returns are required by the Internal Revenue Service, the Seller, at its own cost and expense, will prepare and file all necessary returns.

(e) The Securities Administrator shall perform on behalf of each REMIC created hereunder all reporting and other tax compliance duties that are the responsibility of each such REMIC under the Code, the REMIC Provisions or other compliance guidance issued by the Internal Revenue Service or any state or local taxing authority. Among its other duties, if required by the Code, the REMIC Provisions or other such guidance, the Securities Administrator, shall provide (i) to the Treasury or other governmental authority such information as is necessary for the application of any tax relating to the transfer of a Residual Certificate to any disqualified organization and (ii) to the Certificateholders such information or reports as are required by the Code or REMIC Provisions.

(f) Each of the Master Servicer, the Trustee and the Securities Administrator (to the extent that the affairs of the REMICs are within such Person's control and the scope of its specific responsibilities under the Agreement) and the Holders of Certificates shall take any action or cause any REMIC created hereunder to take any action necessary to create or maintain the status of any REMIC created hereunder as a REMIC under the REMIC Provisions and shall assist each other as necessary to create or maintain such status. None of the Trustee, the Master Servicer, the Securities Administrator or the Holder a Residual Certificate shall take any action, cause any REMIC created hereunder to take any action or fail to take (or fail to cause to be taken) any action that, under the REMIC Provisions, if taken or not taken, as the case may be, could result in an Adverse REMIC Event unless the Trustee and the Securities Administrator have received an Opinion of Counsel (at the expense of the party seeking to take such action) to the effect that the contemplated action will not result in an Adverse REMIC Event. In addition, prior to taking any action with respect to any REMIC created hereunder or the assets therein, or causing any such REMIC to take any action which is not expressly permitted under the terms of this Agreement, any Holder of a Residual Certificate will consult with the Trustee, the Master Servicer, the Securities Administrator or their designees, in writing, with respect to whether such action could cause an Adverse REMIC Event to occur with respect to any such REMIC, and no such Person shall take any such action or cause any REMIC created hereunder to take any such action as to which the Trustee or the Securities Administrator has advised it in writing that an Adverse REMIC Event could occur.

(g) Each Holder of a Residual Certificate shall pay when due any and all taxes imposed on any REMIC created hereunder in which it owns the residual interest by federal or state governmental authorities. To the extent that such Trust taxes are not paid by such Residual Certificateholder, the Paying Agent shall pay any remaining REMIC taxes out of current or future amounts otherwise distributable to such Holder or, if no such amounts are available, out of

154

other amounts held in the Distribution Account, and shall reduce amounts otherwise payable to holders of regular interests in such REMIC, as the case may be.

(h) The Securities Administrator shall, for federal income tax purposes, maintain books and records with respect to each REMIC created hereunder on a calendar year and on an accrual basis.

(i) No additional contributions of assets shall be made to any REMIC created hereunder, except as expressly provided in this Agreement with respect to eligible substitute mortgage loans.

(j) None of the Trustee, the Master Servicer or the Securities Administrator shall enter into any arrangement by which REMIC created hereunder will receive a fee or other compensation for services.

(k) The Securities Administrator shall treat each of the Basis Risk Reserve Fund and the Yield Maintenance Account as outside reserve funds within the meaning of Treasury Regulation Section 1.860G-2(h) owned by the holders of the Class X Certificates and not as assets of any REMIC. The Securities Administrator shall treat the rights of the Holders of the LIBOR Certificates and the MTA Certificates to receive distributions to cover Basis Risk Shortfalls as payments under a cap contract written by the Holders of the Class X Certificates in favor of the Holders of the LIBOR and the MTA Certificates. Thus, the LIBOR and the MTA Certificates shall be treated as representing not only ownership of regular interests in a REMIC, but also ownership of an interest in an interest rate cap contract. For purposes of determining the issue prices of the Certificates, the interest rate cap contracts shall be assumed to have a zero value unless and until required otherwise by an applicable taxing authority.

SECTION 9.02.  Prohibited Transactions and Activities.

None of the Depositor, the Master Servicer or the Trustee shall sell, dispose of, or substitute for any of the Mortgage Loans, except in a disposition pursuant to (i) the foreclosure of a Mortgage Loan, (ii) the bankruptcy of the Trust Fund, (iii) the termination of the REMICs created hereunder pursuant to Article X of this Agreement, (iv) a substitution pursuant to Article II hereof or (v) a repurchase of Mortgage Loans as contemplated hereunder, nor acquire any assets for any REMIC created hereunder, nor sell or dispose of any investments in the Distribution Account for gain, nor accept any contributions to any REMIC created hereunder after the Closing Date, unless it has received an Opinion of Counsel (at the expense of the party causing such sale, disposition, or substitution) that such disposition, acquisition, substitution, or acceptance will not (a) affect adversely the status of any REMIC created hereunder as a REMIC or of the interests therein other than a Residual Certificate as the "residual interest" therein, (b) affect the distribution of interest or principal on the Certificates, (c) result in the encumbrance of the assets transferred or assigned to the Trust Fund (except pursuant to the provisions of this Agreement) or (d) cause any REMIC created hereunder to be subject to a tax on prohibited transactions or prohibited contributions pursuant to the REMIC Provisions.

155

ARTICLE X

TERMINATION

SECTION 10.01.  Termination.

(a) The respective obligations and responsibilities of the Seller, the Depositor, the Master Servicer, the Securities Administrator and the Trustee created hereby (other than the obligation of the Securities Administrator, as Paying Agent to make certain payments to Certificateholders after the final Distribution Date and the obligation of the Master Servicer to send certain notices as hereinafter set forth) shall terminate upon the earliest of (i) the Distribution Date on which the Class Certificate Principal Balance of each Class of Certificates has been reduced to zero, (ii) the final payment or other liquidation of the last Mortgage Loan, (iii) the optional purchase by the Master Servicer of the Mortgage Loans as described below and (iv) the Latest Possible Maturity Date.  Notwithstanding the foregoing, in no event shall the trust created hereby continue beyond the expiration of 21 years from the death of the last survivor of the descendants of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James's, living on the date hereof.

Following the date on which the aggregate of the Stated Principal Balances of the Mortgage Loans (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) on such date is equal to or less than 10% of the Cut-Off Date Aggregate Principal Balance (the "**Call Option Date**"), the Master Servicer may, at its option, terminate this Agreement by purchasing, on the next succeeding Distribution Date, all of the outstanding Mortgage Loans and REO Properties at a price equal to (A) the greater of (i) the Stated Principal Balance of the Mortgage Loans (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and the appraised value of the REO Properties and (ii) the fair market value of the Mortgage Loans and REO Properties (as determined and as agreed upon by (x) the Master Servicer and (y) the Holders of a majority in Percentage Interest of the Class A-R-II Certificates in their good faith business judgment as of the close of business on the third Business Day next preceding the date upon which notice of any such termination is furnished to the related Certificateholders pursuant to Section 10.01(b)), plus, (B) in each case, accrued and unpaid interest thereon at the weighted average of the Mortgage Rates through the end of the Due Period preceding the final Distribution Date, plus any unreimbursed Servicing Advances and Advances and any unpaid Master Servicing Fees and Servicing Fees allocable to such Mortgage Loans and REO Properties and all amounts, if any, then due and owing to the Trustee, the Master Servicer and the Securities Administrator under this Agreement (the "**Termination Price**"); provided, however, such option may only be exercised if the Termination Price is sufficient to result in the payment of all interest accrued on, as well as amounts necessary to retire the Class Certificate Principal Balance of, each Class of Certificates issued pursuant to this Agreement.  The fair market value of the Mortgage Loans and REO Properties shall be required to be made and agreed upon by the Master Servicer, and the Holders of a majority in Percentage Interest of the Class A-R-II Certificates as provided in (ii) above in their good faith business judgment, and such determination shall take

156

into consideration an appraisal of the value of the Mortgage Loans and REO Properties conducted by an independent appraiser mutually agreed upon by the Master Servicer, and the Holders of a majority in Percentage Interest of the Class A-R-II Certificates in their reasonable discretion, such appraisal to be obtained by the Holders of a majority in Percentage Interest of the Class A-R-II Certificates at their expense, and (A) such appraisal shall be obtained at no expense to the Trustee and (B) the Trustee may conclusively rely on, and shall be protected in relying on, such fair market value determination.

In connection with any such purchase pursuant to the preceding paragraph, the Master Servicer shall deposit in the Distribution Account all amounts then on deposit in the Collection Account, which deposit shall be deemed to have occurred immediately preceding such purchase.

Notwithstanding anything provided herein to the contrary, upon the exercise of the Master Servicer of its Call Option, the Servicing Rights Owner shall retain any and all related Servicing Rights with respect to the SRO Mortgage Loans.

No such purchase by the Master Servicer will be permitted without the consent of the Certificate Insurer if a draw on the Certificate Insurance Policy will be made or if any amounts due to the Certificate Insurer would remain unreimbursed on the final Distribution Date.

(b) Notice of any termination pursuant to the second paragraph of Section 10.01(a), specifying the Distribution Date (which shall be a date that would otherwise be a Distribution Date) upon which the Certificateholders may surrender their Certificates to the Certificate Registrar for payment of the final distribution and cancellation, shall be given promptly by the Trustee upon the Trustee receiving notice of such date from the Master Servicer by letter to the Certificateholders mailed not earlier than the 10th day and not later than the 19th day of the month immediately preceding the month of such final distribution specifying (1) the Distribution Date upon which final distribution of the Certificates will be made upon presentation and surrender of such Certificates at the office or agency of the Certificate Registrar therein designated, (2) the amount of any such final distribution and (3) that the Record Date otherwise applicable to such Distribution Date is not applicable, distributions being made only upon presentation and surrender of the Certificates at the office or agency of the Certificate Registrar therein specified. The Trustee shall give such notice to the Securities Administrator, the Master Servicer, the Certificate Insurer and the Certificate Registrar at the time such notice is given to Holders of the Certificates. Upon any such termination, the duties of the Certificate Registrar with respect to the Certificates shall terminate and the Trustee shall terminate or request the Master Servicer to terminate, the Distribution Account and any other account or fund maintained with respect to the Certificates, subject to the Trustee's obligation hereunder to hold all amounts payable to Certificateholders in trust without interest pending such payment.

(c) Upon presentation and surrender of the Certificates, the Securities Administrator, as Paying Agent shall cause to be distributed to the Holders of the Certificates on the Distribution Date for such final distribution, in proportion to the Percentage Interests of their respective Class and to the extent that funds are available for such purpose, an amount equal to the amount required to be distributed to such Holders in accordance with the provisions of Section 5.01 hereof for such Distribution Date.

157

(d) In the event that all Certificateholders shall not surrender their Certificates for final payment and cancellation on or before such final Distribution Date, the Trustee shall promptly following such date cause all funds in the Distribution Account not distributed in final distribution to Certificateholders to be withdrawn therefrom and credited to the remaining Certificateholders by depositing such funds in a separate account for the benefit of such Certificateholders, and the Trustee shall give a second written notice to the remaining Certificateholders to surrender their Certificates for cancellation and receive the final distribution with respect thereto. If within nine months after the second notice all the Certificates shall not have been surrendered for cancellation, the Master Servicer shall be entitled to all unclaimed funds and other assets which remain subject hereto, and the Trustee upon transfer of such funds shall be discharged of any responsibility for such funds, and the Certificateholders shall look to the Master Servicer for payment.

SECTION 10.02. <u>Additional Termination Requirements</u>.

(a) In the event the purchase option provided in Section 10.01 is exercised, the Trust shall be terminated in accordance with the following additional requirements:

(i)    The Trustee shall sell any remaining assets of the Trust Fund for cash and, within 89 days of such sale, the Securities Administrator shall distribute to (or credit to the account of) the Certificateholders the proceeds of such sale together with any cash on hand (less amounts retained to meet claims) in complete liquidation of the Trust Fund and any REMIC created hereunder; and

(ii)    The Securities Administrator shall attach a statement to the final federal income tax return for each REMIC created hereunder stating that pursuant to Treasury Regulation §1.860F-1, the first day of the 90-day liquidation period for such REMIC was the date on which the Trustee sold the assets of the Trust Fund and shall satisfy all requirements of a qualified liquidation under Section 860F of the Code and any regulations thereunder as evidenced by an Opinion of Counsel delivered to the Trustee and the Certificate Insurer obtained at the expense of the Seller.

(b) By their acceptance of Certificates, the Holders thereof hereby agree to appoint the Trustee and the Securities Administrator as their attorneys in fact to undertake the foregoing steps.

165371 Harborview 2005-15
Pooling and Servicing Agreement

ARTICLE XI

[RESERVED]

ARTICLE XII

MISCELLANEOUS PROVISIONS

SECTION 12.01.  Amendment.

This Agreement may be amended from time to time by the Seller, the Depositor, the Master Servicer, the Securities Administrator and the Trustee, without the consent of the Certificateholders, and, with respect to any amendment that adversely affects the interests of any of the Holders of the Insured Certificates or the Certificate Insurer, with the prior written consent of the Certificate Insurer, (i) to cure any ambiguity, (ii) to correct or supplement any provisions herein which may be defective or inconsistent with any other provisions herein, (iii) to make any other provisions with respect to matters or questions arising under this Agreement, which shall not be inconsistent with the provisions of this Agreement, or (iv) to conform the terms hereof to the description thereof provided in the Prospectus; *provided, however*, that any such action listed in clause (i) through (iii) above shall be deemed not to adversely affect in any material respect the interests of any Certificateholder, if evidenced by (i) written notice to the Depositor, the Seller, the Master Servicer, The Securities Administrator and the Trustee from each Rating Agency that such action will not result in the reduction or withdrawal of the rating of any outstanding Class of Certificates with respect to which it is a Rating Agency (without regard to the Certificate Insurance Policy) or (ii) an Opinion of Counsel stating that such amendment shall not adversely affect in any material respect the interests of any Certificateholder, is permitted by the Agreement and all the conditions precedent, if any have been complied with, delivered to the Master Servicer and the Trustee.

In addition, this Agreement may be amended from time to time by Seller, the Depositor, the Master Servicer, the Securities Administrator and the Trustee with the consent of the Majority Certificateholders for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or of modifying in any manner the rights of the Holders of Certificates; and subject, in the case of any amendment or modification to Section 5.01(a)(ii) hereof, to the consent of the Bank of New York, as a Custodian; *provided, however*, that no such amendment or waiver shall (x) reduce in any manner the amount of, or delay the timing of, payments on the Certificates that are required to be made on any Certificate without the consent of the Holder of such Certificate, (y) adversely affect in any material respect the interests of the Holders of any Class of Certificates in a manner other than as described in clause (x) above, without the consent of the Holders of Certificates of such Class evidencing at least a $66^{2/3}$% Percentage Interest in such Class, or (z) reduce the percentage of Voting Rights required by clause (y) above without the consent of the Holders of all Certificates of such Class then outstanding.  Upon approval of an amendment, a copy of such amendment shall be sent to each Rating Agency.

159

Notwithstanding any provision of this Agreement to the contrary, the Trustee shall not consent to any amendment to this Agreement unless it shall have first received an Opinion of Counsel, delivered by and at the expense of the Person seeking such Amendment (unless such Person is the Trustee, in which case the Trustee shall be entitled to be reimbursed for such expenses by the Trust pursuant to Section 8.05 hereof), to the effect that such amendment will not result in an Adverse REMIC Event and that the amendment is being made in accordance with the terms hereof, such amendment is permitted by this Agreement and all conditions precedent, if any, have been complied with.

Promptly after the execution of any such amendment the Trustee shall furnish, at the expense of the Person that requested the amendment if such Person is the Seller (but in no event at the expense of the Trustee), otherwise at the expense of the Trust, a copy of such amendment and the Opinion of Counsel referred to in the immediately preceding paragraph to the Master Servicer, the Certificate Insurer and each Rating Agency.

It shall not be necessary for the consent of Certificateholders under this Section 12.01 to approve the particular form of any proposed amendment; instead it shall be sufficient if such consent shall approve the substance thereof. The manner of obtaining such consents and of evidencing the authorization of the execution thereof by Certificateholders shall be subject to such reasonable regulations as the Trustee may prescribe.

The Trustee may, but shall not be obligated to, enter into any amendment pursuant to this 12.01 Section that affects its rights, duties and immunities under this Agreement or otherwise.

SECTION 12.02. Recordation of Agreement; Counterparts.

To the extent permitted by applicable law, this Agreement is subject to recordation in all appropriate public offices for real property records in all the counties or other comparable jurisdictions in which any or all of the Mortgaged Properties are situated, and in any other appropriate public recording office or elsewhere, such recordation to be effected by the Trustee at the expense of the Trust, but only upon direction of Certificateholders accompanied by an Opinion of Counsel to the effect that such recordation materially and beneficially affects the interests of the Certificateholders and the Certificate Insurer.

For the purpose of facilitating the recordation of this Agreement as herein provided and for other purposes, this Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall together constitute but one and the same instrument.

SECTION 12.03. Limitation on Rights of Certificateholders.

The death or incapacity of any Certificateholder shall not (i) operate to terminate this Agreement or the Trust, (ii) entitle such Certificateholder's legal representatives or heirs to claim an accounting or to take any action or proceeding in any court for a partition or winding up of the Trust or (iii) otherwise affect the rights, obligations and liabilities of the parties hereto or any of them.

160

Except as expressly provided for herein, no Certificateholder shall have any right to vote or in any manner otherwise control the operation and management of the Trust, or the obligations of the parties hereto, nor shall anything herein set forth or contained in the terms of the Certificates be construed so as to constitute the Certificateholders from time to time as partners or members of an association; nor shall any Certificateholder be under any liability to any third person by reason of any action taken by the parties to this Agreement pursuant to any provision hereof.

No Certificateholder shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless such Holder previously shall have given to the Trustee a written notice of default and of the continuance thereof, as hereinbefore provided, and unless also the Holders of Certificates entitled to at least 25% of the Voting Rights shall have made written request upon the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee for 15 days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding. It is understood and intended, and expressly covenanted by each Certificateholder with every other Certificateholder, the Securities Administrator and the Trustee, that no one or more Holders of Certificates shall have any right in any manner whatever by virtue of any provision of this Agreement to affect, disturb or prejudice the rights of the Holders of any other of such Certificates, or to obtain or seek to obtain priority over or preference to any other such Holder, which priority or preference is not otherwise provided for herein, or to enforce any right under this Agreement, except in the manner herein provided and for the equal, ratable and common benefit of all Certificateholders. For the protection and enforcement of the provisions of this Section 12.03, each and every Certificateholder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

By accepting its Insured Certificate, each Holder of an Insured Certificate agrees that, unless a Certificate Insurer Default exists and is continuing, the Certificate Insurer shall have the right to exercise all rights of the Holders of the Insured Certificates under this Agreement (other than the right to receive distributions on the Insured Certificates) without any further consent of the Holders of the Insured Certificates and the Holders of the Insured Certificates shall exercise any such rights only upon the written consent of the Certificate Insurer; *provided, however*, each Holder of an Insured Certificate and the Certificate Insurer will have the right to receive statements and reports hereunder. Notwithstanding the foregoing, the Certificate Insurer shall have no power without the consent of the Owner of each Certificate affected thereby to: (i) reduce in any manner the amount of, or delay the timing of, distributions of principal or interest required to be made hereunder or reduce the Percentage Interest of the Holders of the Insured Certificates, the Certificate Interest Rate or the Termination Payment with respect to any of the Insured Certificates; (ii) reduce the percentage of Percentage Interests specified in Section 12.01 which are required to amend this Agreement; (iii) create or permit the creation of any lien against any part of the Trust Fund; (iv) modify any provision in any way which would permit an earlier retirement of the Insured Certificates; or (v) amend this sentence.

165371 Harborview 2005-15
Pooling and Servicing Agreement

SECTION 12.04.  Governing Law.

This Agreement shall be construed in accordance with the laws of the State of New York, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

SECTION 12.05.  Notices.

All directions, demands and notices hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by first class mail, postage prepaid, or by express delivery service, to (a) in the case of the Seller, to Greenwich Capital Financial Products, Inc., 600 Steamboat Road, Greenwich, Connecticut 06830, Attention: General Counsel (telecopy number (203) 618-2132), or such other address or telecopy number as may hereafter be furnished to the Depositor, the Master Servicer, the Securities Administrator and the Trustee in writing by the Seller, (b) in the case of the Trustee, to Deutsche Bank National Trust Company, 1761 East St. Andrew Place, Santa Ana, CA 92705-4934, Attention: GC0515 (telecopy number (714) 247-6285), with a copy to the Corporate Trust Office or such other address or telecopy number as may hereafter be furnished to the Depositor, the Master Servicer, the Securities Administrator and the Seller in writing by the Trustee, (c) in the case of the Depositor, to Greenwich Capital Acceptance, Inc., 600 Steamboat Road, Greenwich, Connecticut 06830, Attention: Legal (telecopy number (203) 618-2132), or such other address or telecopy number as may be furnished to the Seller, the Master Servicer, the Securities Administrator and the Trustee in writing by the Depositor, (d) in the case of the Master Servicer or the Securities Administrator, to Wells Fargo Bank, N.A., P.O. Box 98, Columbia, Maryland 21046, Attention: Master Servicing – HarborView 2005-15 (telecopy number (410) 715-2380) or, in the case of the Master Servicer or the Securities Administrator via overnight delivery, 9062 Old Annapolis Road, Columbia, Maryland 21045, Attention: Master Servicing – HarborView 2005-15 (telecopy number (410) 715-2380), or such other address or telecopy number as may be furnished to the Depositor, the Seller and the Trustee in writing by the Master Servicer or the Securities Administrator, as applicable, and (e) in the case of the Certificate Insurer, XL Capital Assurance Inc., 1221 Avenue of the Americas, New York, New York, 10020-1001, Attention:  Surveillance (telecopy number (212) 478-3587) or such other address or telecopy number as may be furnished to the Depositor, the Seller and the Trustee in writing by the Certificate Insurer.  Any notice required or permitted to be mailed to a Certificateholder shall be given by first class mail, postage prepaid, at the address of such Holder as shown in the Certificate Register.  Notice of any Event of Default shall be given by telecopy and by certified mail.  Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have duly been given when mailed, whether or not the Certificateholder receives such notice.  A copy of any notice required to be telecopied hereunder shall also be mailed to the appropriate party in the manner set forth above.

SECTION 12.06.  Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall for any reason whatsoever be held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms

of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or of the Certificates or the rights of the Holders thereof.

SECTION 12.07. Article and Section References.

All article and section references used in this Agreement, unless otherwise provided, are to articles and sections in this Agreement.

SECTION 12.08. Notices to each Rating Agencies.

(a)    The Trustee shall be obligated to use its best reasonable efforts promptly to provide notice to each Rating Agency with respect to each of the following of which a Responsible Officer of the Trustee has actual knowledge:

(i)    any material change or amendment to this Agreement;

(ii)    the occurrence of any Event of Default that has not been cured or waived;

(iii)    the resignation or termination of the Master Servicer or the Trustee;

(iv)    the final payment to Holders of the Certificates of any Class;

(v)    any change in the location of any Account; and

(vi)    if the Trustee is acting as a successor Master Servicer pursuant to Section 7.02 hereof, any event that would result in the inability of the Trustee to make Advances.

(b) The Securities Administrator shall promptly furnish or make available to each Rating Agency copies of each Distribution Date Statement described in Section 5.04 hereof.

(c) The Master Servicer shall promptly furnish to each Rating Agency copies of the following:

(i)    each annual statement as to compliance described in Section 3.16 hereof;

(ii)    each annual independent public accountants' servicing report described in Section 3.17 hereof; and

(iii)    each notice delivered pursuant to Section 5.05 hereof which relates to the fact that the Master Servicer has not made an Advance.

(d) All notices to the Rating Agencies provided for in this Agreement shall be in writing and sent by first class mail, telecopy or overnight courier, as follows:

If to Fitch, to:

Fitch Ratings, Inc.
One State Street Plaza
New York, New York 10004
Attention: Residential Mortgages

If to S&P, to:

Standard & Poor's Ratings Services,
    a division of The McGraw-Hill Companies, Inc.
55 Water Street
New York, New York 10041
Attention: Residential Mortgages

If to Moody's, to:

Moody's Investors Service, Inc.
99 Church Street
New York, New York 10007
Attention: Residential Mortgages

SECTION 12.09.  Further Assurances.

Notwithstanding any other provision of this Agreement, neither the Regular Certificateholders nor the Trustee shall have any obligation to consent to any amendment or modification of this Agreement unless they have been provided reasonable security or indemnity against their out-of-pocket expenses (including reasonable attorneys' fees) to be incurred in connection therewith.

SECTION 12.10.  Benefits of Agreement.

Nothing in this Agreement or in the Certificates, expressed or implied, shall give to any Person, other than the Certificateholders and the parties hereto and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Agreement.

The Certificate Insurer is an intended third-party beneficiary of this Agreement with respect to the rights of the Classes of Insured Certificates.  Any right conferred to the Certificate Insurer shall be suspended after the occurrence and during the continuation of a Certificate Insurer Default.  During any period of suspension, the Certificate Insurer's rights hereunder shall vest in the Holders of the Insured Certificates (to the extent such Holders otherwise has such rights hereunder).  At such time as the Class Principal Balance of the Insured Certificates has been reduced to zero and the Certificate Insurer has been reimbursed for all amounts to which it is entitled hereunder, the Certificate Insurer's rights hereunder shall terminate.

SECTION 12.11.  Acts of Certificateholders.

(a)  Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement to be given or taken by the Certificateholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Certificateholders in person or by agent duly appointed in writing, and such action shall become effective when such instrument or instruments are delivered to the Trustee and the Securities Administrator and, where expressly required under this Agreement, to the Master Servicer.  Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "act" of the Certificateholders signing such instrument or instruments.  Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Agreement and conclusive in favor of the Trustee, the Securities Administrator and the Master Servicer if made in the manner provided in this Section 12.11.

(b)  The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by the certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof.  Whenever such execution is by a signer acting in a capacity other than his or her individual capacity, such certificate or affidavit shall also constitute sufficient proof of his authority.

(c)  Any request, demand, authorization, direction, notice, consent, waiver or other action by any Certificateholder shall bind every future Holder of such Certificate and the Holder of every Certificate issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Trustee or the Master Servicer in reliance thereon, whether or not notation of such action is made upon such Certificate.

SECTION 12.12.  Successors and Assigns.

The provisions of this Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto.

SECTION 12.13.  Provision of Information.

For so long as any of the Certificates of any Class are "restricted securities" within the meaning of Rule 144(a)(3) under the 1933 Act, each of the Depositor and the Securities Administrator agree to cooperate with each other to provide to any Certificateholders and to any prospective purchaser of Certificates designated by such holder, upon the request of such holder or prospective purchaser, any information required to be provided to such holder or prospective purchaser to satisfy the condition set forth in Rule 144A(d)(4) under the 1933 Act.  Any reasonable out-of-pocket expenses incurred by the Securities Administrator in providing such information shall be reimbursed by the Depositor.

165371 Harborview 2005-15
Pooling and Servicing Agreement

The Securities Administrator shall provide to any person to whom a Prospectus was delivered by Greenwich Capital Markets, Inc., upon the request of such person specifying the document or documents requested, (i) a copy (excluding exhibits) of any report on Form 8-K or Form 10-K filed with the Securities and Exchange Commission pursuant to Section 3.18 and (ii) a copy of any other document incorporated by reference in the Prospectus.  Any reasonable out-of-pocket expenses incurred by the Securities Administrator in providing copies of such documents shall be reimbursed by the Depositor.

SECTION 12.14.  <u>Tax Treatment of Class 1-P, Class 2-P and Class 3-P Certificates</u>.

It is the intent of the parties hereto that each of the segregated pools of assets consisting of any collections in respect of (i) the Class 1-P Distributable Amount payable to the Class 1-P Certificate, (ii) the Class 2-P Distributable Amount payable to the Class 2-P Certificate (iii) the Class 3-P Distributable Amount payable to the Class 3-P Certificate constitutes, for federal income tax purposes, a grantor trust as described in Subpart E of Part I of Subchapter J of the Code and Treasury Regulation §301.7701-4(c)(2).  The Securities Administrator shall prepare, sign and file, all of the tax returns in respect of such grantor trusts.  The expenses of preparing and filing such returns shall be borne by the Securities Administrator without any right of reimbursement therefor.  The Securities Administrator shall comply with each such requirement by filing Form 1041 or other applicable form.

[SIGNATURE PAGE IMMEDIATELY FOLLOWS]

166

IN WITNESS WHEREOF, the Depositor, the Seller, the Master Servicer, the Securities Administrator and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

GREENWICH CAPITAL ACCEPTANCE, INC.,
    as Depositor

By:_____
    Name: Shakti Radhakishun
    Title: Senior Vice President


GREENWICH CAPITAL FINANCIAL
    PRODUCTS, INC., as Seller

By:_____
    Name: Shakti Radhakishun
    Title: Senior Vice President


WELLS FARGO BANK, N.A., as Master Servicer
    and as Securities Administrator



By:_____
    Name:
    Title:


DEUTSCHE BANK NATIONAL TRUST
    COMPANY, as Trustee and as Custodian



By:_____
    Name:
    Title:



By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the Depositor, the Seller, the Master Servicer, the Securities Administrator and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

GREENWICH CAPITAL ACCEPTANCE, INC.,
    as Depositor

By:_____
    Name:
    Title:


GREENWICH CAPITAL FINANCIAL
    PRODUCTS, INC., as Seller

By:_____
    Name:
    Title:


WELLS FARGO BANK, N.A., as Master Servicer
    and as Securities Administrator

By:___*Graham M. Oglesby*_____
    Name:    Graham Oglesby
    Title:    Assistant Vice President


DEUTSCHE BANK NATIONAL TRUST
    COMPANY, as Trustee and as Custodian


By:_____
    Name:
    Title:


By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the Depositor, the Seller, the Master Servicer, the Securities Administrator and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

GREENWICH CAPITAL ACCEPTANCE, INC., as Depositor

By:_____
    Name:
    Title:

GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., as Seller

By:_____
    Name:
    Title:

WELLS FARGO BANK, N.A., as Master Servicer and as Securities Administrator

By:_____
    Name:
    Title:

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee and as Custodian

By:_____
    Name:
    Title:    EIKO AKIYAMA
             ASSOCIATE

By:_____
    Name:
    Title:    Hang Luu
           Authorized Signer

STATE OF CONNECTICUT)
                 ) ss.:
COUNTY OF FAIRFIELD  )


On the 26th day of October 2005, before me, a notary public in and for said State, personally appeared _Shekar radhakisne_ known to me to be a _SVP_____ of Greenwich Capital Acceptance, Inc., a Delaware corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_Kimberly J. Donnelly_
Notary Public

Kimberly J. Donnelly
Notary Public
My Commission Expires on 6/30/09

STATE OF CONNECTICUT)
             ) ss.:
COUNTY OF FAIRFIELD  )


On the 26ᵗʰ day of October 2005, before me, a notary public in and for said State, personally appeared *Chukti Padhakiah* known to me to be a ___SVP___ of Greenwich Capital Financial Products, Inc., a Delaware corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_Kimberly J. Donnelly_
Notary Public

Kimberly J. Donnelly
Notary Public
My Commission Expires on 6/30/09

STATE OF   *Maryland*   )
                                   ) ss.:
COUNTY OF   *Baltimore*   )

On the __ day of October 2005, before me, a notary public in and for said State, personally appeared *Barbara Odely* known to me to be an ___*AVP*___ of Wells Fargo Bank, N.A., a national banking association that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_____
Notary Public

DARRON C. WOODUS
NOTARY PUBLIC
BALTIMORE COUNTY
MARYLAND
MY COMMISSION EXPIRES DECEMBER 6, 2008

STATE OF California )
                                              ) ss.:
COUNTY OF Orange )

On the 2*6* day of October 2005, before me, a notary public in and for said State, personally appeared *Eiko Akiyama* known to me to be an *Associate* of Deutsche Bank National Trust Company, a national banking association that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_____
Notary Public

```
MEI NGHIA
Commission # 1520861
Notary Public - California
Orange County
My Comm. Expires Nov 19, 2008
```

165371 Harborview 2005-15
Pooling and Servicing Agreement

STATE OF *California* )
                                    ) ss.:
COUNTY OF *Orange* )

On the *26* day of October 2005, before me, a notary public in and for said State, personally appeared *Hang Luu* known to me to be an *Associate* of Deutsche Bank National Trust Company, a national banking association that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

_____
                                                Notary Public

MEI NGHIA
Commission # 1520861
Notary Public - California
Orange County
My Comm. Expires Nov 19, 2008