"Mortgage Loans") sold by SACO I Inc. ("SACO I"). The Mortgage Loans were sold by EMC Mortgage Corporation ("EMC") to SACO I. Wells Fargo Bank, National Association will act as master servicer of the Mortgage Loans (in that capacity, the "Master Servicer," which term includes any successors thereto under the Agreement referred to below). The Trust Fund was created pursuant to the Pooling and Servicing Agreement, dated as of the Cut-off Date specified above (the "Agreement"), among SACO I, as depositor (the "Depositor"), EMC Mortgage Corporation as seller, Wells Fargo Bank, National Association, as Master Servicer and securities administrator (the "Securities Administrator"), and Citibank, N.A., as trustee (the "Trustee"), a summary of certain of the pertinent provisions of which is set forth hereafter. To the extent not defined herein, capitalized terms used herein shall have the meaning ascribed to them in the Agreement. This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of its acceptance hereof assents and by which such Holder is bound.

Interest on this Certificate will accrue from and including the 25th day of the calendar month preceding the month in which a Distribution Date (as hereinafter defined) occurs to and including the 24th day of the calendar month in which that Distribution Date occurs on the Certificate Principal Balance hereof at a per annum rate equal to the Pass-Through Rate set forth above. The Securities Administrator will distribute on the 25th day of each month, or, if such 25th day is not a Business Day, the immediately following Business Day (each, a "Distribution Date"), commencing on the First Distribution Date specified above, to the Person in whose name this Certificate is registered at the close of business on the Business Day immediately preceding such Distribution Date so long as such Certificate remains in book-entry form (and otherwise, the close of business on the last Business Day of the month immediately preceding the month of such Distribution Date), an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amount (of interest and principal, if any) required to be distributed to the Holders of Certificates of the same Class as this Certificate. The Last Scheduled Distribution Date is the Distribution Date in the month following the latest scheduled maturity date of any Mortgage Loan and is not likely to be the date on which the Certificate Principal Balance of this Class of Certificates will be reduced to zero.

Distributions on this Certificate will be made by the Securities Administrator by check mailed to the address of the Person entitled thereto as such name and address shall appear on the Certificate Register or, if such Person so requests by notifying the Securities Administrator in writing as specified in the Agreement, by wire transfer. Notwithstanding the above, the final distribution on this Certificate will be made after due notice by the Securities Administrator of the pendency of such distribution and only upon presentation and surrender of this Certificate at the office or agency appointed by the Securities Administrator for that purpose and designated in such notice. The initial Certificate Principal Balance of this Certificate is set forth above. The Certificate Principal Balance hereof will be reduced to the extent of distributions allocable to principal hereon and any Realized Losses allocable hereto.

[For the Class B-4 Certificates] [No transfer of this Class B-4 Certificate will be made unless such transfer is (i) exempt from the registration requirements of the Securities Act of 1933, as amended, and any applicable state securities laws or is made in accordance with said Act and laws and (ii) made in accordance with Section 7.02 of the Agreement.  In the event that

such transfer is to be made the Securities Administrator shall register such transfer if, (i) made to a transferee who has provided the Securities Administrator with evidence as to its QIB status; or (ii) (A) the transferor has advised the Securities Administrator in writing that the Certificate is being transferred to an Institutional Accredited Investor and (B) prior to such transfer the transferee furnishes to the Securities Administrator an Investment Letter; provided that if based upon an Opinion of Counsel to the effect that (A) and (B) above are not sufficient to confirm that such transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act and other applicable laws, the Securities Administrator shall as a condition of the registration of any such transfer require the transferor to furnish such other certifications, legal opinions or other information prior to registering the transfer of this Certificate as shall be set forth in such Opinion of Counsel.]

[For the Class B-4 Certificates] [Notwithstanding the foregoing, the certifications will not be required with respect to the transfer of this Certificate to a Depository, or for any subsequent transfer of this Certificate for so long as this Certificate is a Book-Entry Certificate.]

This Certificate is one of a duly authorized issue of Certificates designated as set forth on the face hereof (the "Certificates"). The Certificates, in the aggregate, evidence the entire beneficial ownership interest in the Trust Fund formed pursuant to the Agreement.

The Certificateholder, by its acceptance of this Certificate, agrees that it will look solely to the Trust Fund for payment hereunder and that neither the Trustee nor the Securities Administrator is liable to the Certificateholders for any amount payable under this Certificate or the Agreement or, except as expressly provided in the Agreement, subject to any liability under the Agreement.

This Certificate does not purport to summarize the Agreement and reference is made to the Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced hereby, and the rights, duties and immunities of the Securities Administrator and the Trustee.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Depositor and the rights of the Certificateholders and the Certificate Insurer under the Agreement from time to time by the parties thereto with the written consent of the Certificate Insurer and the consent of the Holders of the Certificates evidencing over 50% of the Voting Rights, or, if applicable, Holders of each Class of Certificates affected thereby evidencing over 50% of the Voting Rights of such Class or Classes. Any such written consent of the Certificate Insurer and any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also permits the amendment thereof, in certain limited circumstances, without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable with the Securities Administrator upon surrender of this Certificate for registration of transfer at the offices or agencies maintained by the Securities

Administrator for such purposes, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Securities Administrator duly executed by the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificates in authorized denominations representing a like aggregate Percentage Interest will be issued to the designated transferee.

No transfer of this certificate shall be made except in accordance with Section 7.02(h) of the Pooling and Servicing Agreement.

The Certificates are issuable only as registered Certificates without coupons in the Classes and denominations specified in the Agreement. As provided in the Agreement and subject to certain limitations therein set forth, this Certificate is exchangeable for one or more new Certificates evidencing the same Class and in the same aggregate Percentage Interest, as requested by the Holder surrendering the same.

No service charge will be made to the Certificateholders for any such registration of transfer, but the Securities Administrator may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith. The Depositor, the Master Servicer, the Securities Administrator, the Trustee and any agent of any of them may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and none of the Depositor, the Master Servicer, the Securities Administrator, the Trustee or any such agent shall be affected by notice to the contrary.

The obligations created by the Agreement and the Trust Fund created thereby (other than the obligations to make payments to Certificateholders with respect to the termination of the Agreement) shall terminate upon the earlier of (i) the later of (A) the maturity or other liquidation (or Advance with respect thereto) of the last Mortgage Loan remaining in the Trust Fund and disposition of all property acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (B) the remittance of all funds due under the Agreement, or (ii) the optional repurchase by the party named in the Agreement of all the Mortgage Loans and other assets of the Trust Fund in accordance with the terms of the Agreement. Such optional repurchase may be made only on or after the first Distribution Date on which the aggregate Stated Principal Balance of the Mortgage Loans is less than or equal to a certain percentage of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date as set forth in the Agreement. The exercise of such right will effect the early retirement of the Certificates. In no event, however, will the Trust Fund created by the Agreement continue beyond the earlier of (i) the expiration of 21 years after the death of certain persons identified in the Agreement and (ii) the Latest Possible Maturity Date (as defined in the Agreement).

Unless this Certificate has been countersigned by an authorized signatory of the Securities Administrator by manual signature, this Certificate shall not be entitled to any benefit under the Agreement, or be valid for any purpose.

IN WITNESS WHEREOF, the Securities Administrator has caused this Certificate to be duly executed.

Dated: March 30, 2007

WELLS FARGO BANK, NATIONAL ASSOCIATION, not in its individual capacity but solely as Securities Administrator


By:   _____
                    Authorized Signatory


## CERTIFICATE OF AUTHENTICATION

This is one of the Class B-[1][2][3][4] Certificates referred to in the within-mentioned Agreement.

WELLS FARGO BANK, NATIONAL ASSOCIATION, Authorized signatory of Wells Fargo Bank, National Association, not in its individual capacity but solely as Securities Administrator


By:   _____
                    Authorized Signatory

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s) unto _____ (Please print or typewrite name and address including postal zip code of assignee) a Percentage Interest evidenced by the within Asset-Backed Certificate and hereby authorizes the transfer of registration of such interest to assignee on the Certificate Register of the Trust Fund.

I (We) further direct the Certificate Registrar to issue a new Certificate of a like denomination and Class, to the above named assignee and deliver such Certificate to the following address:

_____

_____

_____

Dated: _____

_____
Signature by or on behalf of assignor

_____
Signature Guaranteed

### DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____

for the account of _____
account number _____ or, if mailed by check, to

Applicable statements should be mailed to _____

This information is provided by _____
assignee named above, or _____
its agent.

EXHIBIT A-4

FORM OF CLASS C CERTIFICATES

**THIS CERTIFICATE IS SUBORDINATED IN RIGHT OF PAYMENT TO THE SENIOR CERTIFICATES, THE CLASS M CERTIFICATES AND THE CLASS B CERTIFICATES AS DESCRIBED IN THE AGREEMENT (AS DEFINED BELOW).**

**SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE REPRESENTS A "REGULAR INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986 (THE "CODE").**

**THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY STATE SECURITIES LAWS. THE HOLDER HEREOF, BY PURCHASING THIS CERTIFICATE, AGREES THAT THIS CERTIFICATE MAY BE REOFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS AND ONLY (1) PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") TO A PERSON THAT THE HOLDER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A (A "QIB"), PURCHASING FOR ITS OWN ACCOUNT OR A QIB PURCHASING FOR THE ACCOUNT OF A QIB, WHOM THE HOLDER HAS INFORMED, IN EACH CASE, THAT THE REOFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (2) PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT (IF AVAILABLE) OR (3) IN CERTIFICATED FORM TO AN "INSTITUTIONAL ACCREDITED INVESTOR" WITHIN THE MEANING THEREOF IN RULE 501(a)(1), (2), (3) or (7) OF REGULATION D UNDER THE ACT OR ANY ENTITY IN WHICH ALL OF THE EQUITY OWNERS COME WITHIN SUCH PARAGRAPHS PURCHASING NOT FOR DISTRIBUTION IN VIOLATION OF THE SECURITIES ACT, SUBJECT TO (A) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF A LETTER SUBSTANTIALLY IN THE FORM PROVIDED IN THE AGREEMENT AND (B) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF SUCH OTHER EVIDENCE ACCEPTABLE TO THE SECURITIES ADMINISTRATOR THAT SUCH REOFFER, RESALE, PLEDGE OR TRANSFER IS IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS OR IN EACH CASE IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION.**

**NO TRANSFER OF THIS CERTIFICATE SHALL BE MADE UNLESS THE PROPOSED TRANSFEREE OF SUCH CERTIFICATE (1) PROVIDES TO THE SECURITIES ADMINISTRATOR THE APPROPRIATE TAX CERTIFICATION FORM**

**THAT WOULD ELIMINATE ANY WITHHOLDING OR DEDUCTION FOR TAXES FROM AMOUNTS PAYABLE BY THE SWAP PROVIDER, PURSUANT TO THE SWAP AGREEMENT, TO THE SWAP ADMINISTRATOR ON BEHALF OF THE SUPPLEMENTAL INTEREST TRUST (I.E., IRS FORM W-9 OR IRS FORM W-8BEN, W-8IMY, W-8EXP OR W-8ECI, AS APPLICABLE (OR ANY SUCCESSOR FORM THERETO), TOGETHER WITH ANY APPLICABLE ATTACHMENTS) AND (2) AGREES TO UPDATE SUCH FORM (A) UPON EXPIRATION OF ANY SUCH FORM, (B) AS REQUIRED UNDER THEN APPLICABLE U.S. TREASURY REGULATIONS AND (C) PROMPTLY UPON LEARNING THAT SUCH FORM HAS BECOME OBSOLETE OR INCORRECT, EACH AS A CONDITION TO SUCH TRANSFER. IN ADDITION, NO TRANSFER OF THIS CERTIFICATE SHALL BE MADE IF SUCH TRANSFER WOULD CAUSE THE SUPPLEMENTAL INTEREST TRUST TO BE BENEFICIALLY OWNED BY TWO OR MORE PERSONS FOR FEDERAL INCOME TAX PURPOSES, OR CONTINUE TO BE SO TREATED, UNLESS (I) EACH PROPOSED TRANSFEREE OF SUCH CERTIFICATE COMPLIES WITH THE FOREGOING CONDITIONS, AND (II) THE PROPOSED MAJORITY HOLDER OF THE CLASS C CERTIFICATES (OR EACH HOLDER, IF THERE IS OR WOULD BE NO MAJORITY HOLDER) (X) PROVIDES, OR CAUSES TO BE PROVIDED, ON BEHALF OF THE SUPPLEMENTAL INTEREST TRUST, IF APPLICABLE, TO THE SECURITIES ADMINISTRATOR, THE APPROPRIATE TAX CERTIFICATION FORM THAT WOULD BE REQUIRED FROM THE SUPPLEMENTAL INTEREST TRUST TO ELIMINATE ANY WITHHOLDING OR DEDUCTION FOR TAXES FROM AMOUNTS PAYABLE BY THE SWAP PROVIDER, PURSUANT TO THE RELATED SWAP AGREEMENT, TO THE SWAP ADMINISTRATOR ON BEHALF OF THE SUPPLEMENTAL INTEREST TRUST (I.E., IRS FORM W-9 OR IRS FORM W-8BEN, W-8IMY, W-8EXP OR W-8ECI, AS APPLICABLE (OR ANY SUCCESSOR FORM THERETO), TOGETHER WITH ANY APPLICABLE ATTACHMENTS) AND (Y) AGREES TO UPDATE SUCH FORM (A) UPON EXPIRATION OF SUCH FORM, (B) AS REQUIRED UNDER THEM APPLICABLE U.S. TREASURY REGULATIONS AND (C) PROMPTLY UPON LEARNING THAT SUCH FORM HAS BECOME OBSOLETE OR INCORRECT. UNDER THE AGREEMENT, UPON RECEIPT OF ANY TAX CERTIFICATION FORM PURSUANT TO THESE TRANSFER RESTRICTIONS FROM A HOLDER OR PROPOSED TRANSFEREE OF THIS CERTIFICATE, THE SECURITIES ADMINISTRATOR SHALL FORWARD SUCH TAX CERTIFICATION FORM TO THE SUPPLEMENTAL INTEREST TRUST TRUSTEE. THE SUPPLEMENTAL INTEREST TRUST TRUSTEE SHALL FORWARD SUCH TAX CERTIFICATION FORM PROVIDED TO IT TO THE SWAP PROVIDER. EACH HOLDER OF THIS CERTIFICATE AND EACH TRANSFEREE THEREOF SHALL BE DEEMED TO HAVE CONSENTED TO THE SUPPLEMENTAL INTEREST TRUST TRUSTEE FORWARDING TO THE SWAP PROVIDER ANY TAX CERTIFICATION FORM IT HAS PROVIDED AND UPDATED IN ACCORDANCE WITH THESE TRANSFER RESTRICTIONS. ANY PURPORTED SALES OR TRANSFERS OF THIS CERTIFICATE TO A TRANSFEREE WHICH DOES NOT COMPLY WITH THESE REQUIREMENTS SHALL BE DEEMED NULL AND VOID UNDER THE AGREEMENT.**

NO TRANSFER OF THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PROVIDES EITHER A CERTIFICATION PURSUANT TO SECTION 7.02(h) OF THE AGREEMENT OR AN OPINION OF COUNSEL SATISFACTORY TO THE SECURITIES ADMINISTRATOR THAT THE PURCHASE AND HOLDING OF THIS CERTIFICATE ARE PERMISSIBLE UNDER APPLICABLE LAW, WILL NOT CONSTITUTE OR RESULT IN ANY NON-EXEMPT PROHIBITED TRANSACTIONS UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE SECURITIES ADMINISTRATOR, THE MASTER SERVICER OR THE DEPOSITOR TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE AGREEMENT.

Certificate No.1                                        Percentage Interest: 100%

Class C

Date of Pooling and Servicing Agreement          Initial Certificate Notional Amount of this
and Cut-off Date:                                Certificate as of the Cut-off Date:
March 1, 2007                                    $[_____]

First Distribution Date:                         Aggregate Certificate Notional Amount of this
April 25, 2007                                   Certificate as of the Cut-off Date:
                                                 $[_____]

Master Servicer and Securities Administrator:    CUSIP: [_____]
Wells Fargo Bank, National Association

Last Scheduled Distribution Date:
January 25, 2036

## BEAR STEARNS SECOND LIEN TRUST 2007-SV1
## MORTGAGE-BACKED CERTIFICATE
## SERIES 2007-SV1

evidencing a fractional undivided interest in the distributions allocable to the Class C Certificates with respect to a Trust Fund consisting primarily of a pool of conventional, closed-end, second lien, one- to four-family fixed interest rate mortgage loans sold by SACO I INC.

This Certificate is payable solely from the assets of the Trust Fund, and does not represent an obligation of or interest in SACO I Inc., the Master Servicer, the Securities Administrator or the Trustee referred to below or any of their affiliates or any other person. Neither this Certificate nor the underlying Mortgage Loans are guaranteed or insured by any governmental entity or by SACO I Inc., the Master Servicer, the Securities Administrator or the Trustee or any of their affiliates or any other person. None of SACO I Inc., the Master Servicer or any of their affiliates will have any obligation with respect to any certificate or other obligation secured by or payable from payments on the Certificates.

This certifies that _____ is the registered owner of the Percentage Interest evidenced hereby in the beneficial ownership interest of Certificates of the same Class as this Certificate in a trust (the "Trust Fund") generally consisting of conventional, closed-end, second lien, fixed rate mortgage loans secured by one- to four-family residences (collectively, the "Mortgage Loans") sold by SACO I Inc. ("SACO I"). The Mortgage Loans were sold by

EMC Mortgage Corporation ("EMC") to SACO I. Wells Fargo Bank, National Association will act as master servicer of the Mortgage Loans (in that capacity, the "Master Servicer," which term includes any successors thereto under the Agreement referred to below). The Trust Fund was created pursuant to the Pooling and Servicing Agreement, dated as of the Cut-off Date specified above (the "Agreement"), among SACO I, as depositor (the "Depositor"), EMC Mortgage Corporation as seller, Wells Fargo Bank, National Association, as Master Servicer and securities administrator (the "Securities Administrator"), and Citibank, N.A., as trustee (the "Trustee"), a summary of certain of the pertinent provisions of which is set forth hereafter. To the extent not defined herein, capitalized terms used herein shall have the meaning ascribed to them in the Agreement. This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of its acceptance hereof assents and by which such Holder is bound.

The Securities Administrator will distribute on the 25th day of each month, or, if such 25th day is not a Business Day, the immediately following Business Day (each, a "Distribution Date"), commencing on the First Distribution Date specified above, to the Person in whose name this Certificate is registered at the close of business on the last day (or if such last day is not a Business Day, the Business Day immediately preceding such last day) of the calendar month immediately preceding the month in which the Distribution Date occurs, an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amounts required to be distributed to the Holders of Certificates of the same Class as this Certificate.

Distributions on this Certificate will be made by the Securities Administrator by check mailed to the address of the Person entitled thereto as such name and address shall appear on the Certificate Register or, if such Person so requests by notifying the Securities Administrator in writing as specified in the Agreement, by wire transfer. Notwithstanding the above, the final distribution on this Certificate will be made after due notice by the Securities Administrator of the pendency of such distribution and only upon presentation and surrender of this Certificate at the office or agency appointed by the Securities Administrator for that purpose and designated in such notice.

No transfer of this Certificate shall be made unless the transfer is made pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "1933 Act"), and an effective registration or qualification under applicable state securities laws, or is made in a transaction that does not require such registration or qualification. In the event that such a transfer of this Certificate is to be made without registration or qualification, the Securities Administrator shall require receipt of (i) if such transfer is purportedly being made in reliance upon Rule 144A under the 1933 Act, written certifications from the Holder of the Certificate desiring to effect the transfer, and from such Holder's prospective transferee, substantially in the forms attached to the Agreement as Exhibit D and either Exhibit E or Exhibit F, as applicable, and (ii) in all other cases, an Opinion of Counsel satisfactory to it that such transfer may be made without such registration or qualification (which Opinion of Counsel shall not be an expense of the Trust Fund or of the Depositor, the Securities Administrator, the Trustee, or the Master Servicer in their respective capacities as such), together with copies of the written certification(s) of the Holder of the Certificate desiring to effect the transfer and/or such

Holder's prospective transferee upon which such Opinion of Counsel is based. Neither the Depositor, the Trustee nor the Securities Administrator is obligated to register or qualify the Class of Certificates specified on the face hereof under the 1933 Act or any other securities law or to take any action not otherwise required under the Agreement to permit the transfer of such Certificates without registration or qualification. Any Holder desiring to effect a transfer of this Certificate shall be required to indemnify the Trustee, the Securities Administrator, the Depositor, the Seller and the Master Servicer against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No transfer of this Class C Certificate will be made unless the Securities Administrator shall have received either (i) the opinion of counsel set forth in Section 7.02(h) of the Agreement or (ii) a representation letter under Section 7.02 of the Agreement, in the form as described by the Agreement, stating that the transferee is not an employee benefit or other plan subject to the prohibited transaction provisions of ERISA or Section 4975 of the Code (a "Plan"), or any other person (including an investment manager, a named fiduciary or a trustee of any Plan) acting, directly or indirectly, on behalf of or purchasing any Certificate with "plan assets" of any Plan.

This Certificate is one of a duly authorized issue of Certificates designated as set forth on the face hereof (the "Certificates"). The Certificates, in the aggregate, evidence the entire beneficial ownership interest in the Trust Fund formed pursuant to the Agreement.

The Certificateholder, by its acceptance of this Certificate, agrees that it will look solely to the Trust Fund for payment hereunder and that neither the Trustee nor the Securities Administrator is liable to the Certificateholders for any amount payable under this Certificate or the Agreement or, except as expressly provided in the Agreement, subject to any liability under the Agreement.

This Certificate does not purport to summarize the Agreement and reference is made to the Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced hereby, and the rights, duties and immunities of the Trustee and Securities Administrator.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Depositor and the rights of the Certificateholders and the Certificate Insurer under the Agreement from time to time by the parties thereto with the written consent of the Certificate Insurer and the consent of the Holders of the Certificates evidencing over 50% of the Voting Rights, or, if applicable, Holders of each Class of Certificates affected thereby evidencing over 50% of the Voting Rights of such Class or Classes. Any such written consent of the Certificate Insurer and any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also permits the amendment thereof, in certain limited circumstances, without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable with the Securities Administrator upon surrender of this Certificate for registration of transfer at the offices or agencies maintained by the Securities Administrator for such purposes, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Securities Administrator duly executed by the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificates in authorized denominations representing a like aggregate Percentage Interest will be issued to the designated transferee.

The Certificates are issuable only as registered Certificates without coupons in the Classes and denominations specified in the Agreement. As provided in the Agreement and subject to certain limitations therein set forth, this Certificate is exchangeable for one or more new Certificates evidencing the same Class and in the same aggregate Percentage Interest, as requested by the Holder surrendering the same.

No service charge will be made to the Certificateholders for any such registration of transfer, but the Securities Administrator may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith. The Depositor, the Master Servicer, the Securities Administrator, the Trustee and any agent of any of them may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and none of the Depositor, the Master Servicer, the Securities Administrator, the Trustee or any such agent shall be affected by notice to the contrary.

The obligations created by the Agreement and the Trust Fund created thereby (other than the obligations to make payments to Certificateholders with respect to the termination of the Agreement) shall terminate upon the earlier of (i) the later of (A) the maturity or other liquidation (or Advance with respect thereto) of the last Mortgage Loan remaining in the Trust Fund and disposition of all property acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (B) the remittance of all funds due under the Agreement, or (ii) the optional repurchase by the party named in the Agreement of all the Mortgage Loans and other assets of the Trust Fund in accordance with the terms of the Agreement. Such optional repurchase may be made only on or after the first Distribution Date on which the aggregate Stated Principal Balance of the Mortgage Loans is less than or equal to a certain percentage of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date as set forth in the Agreement. The exercise of such right will effect the early retirement of the Certificates. In no event, however, will the Trust Fund created by the Agreement continue beyond the earlier of (i) the expiration of 21 years after the death of certain persons identified in the Agreement and (ii) the Latest Possible Maturity Date (as defined in the Agreement).

Unless this Certificate has been countersigned by an authorized signatory of the Securities Administrator by manual signature, this Certificate shall not be entitled to any benefit under the Agreement, or be valid for any purpose.

IN WITNESS WHEREOF, the Securities Administrator has caused this Certificate to be duly executed.

Dated: March 30, 2007

WELLS FARGO BANK, NATIONAL ASSOCIATION, not in its individual capacity but solely as Securities Administrator

By: _____
       Authorized Signatory

## CERTIFICATE OF AUTHENTICATION

This is one of the Class C Certificates referred to in the within-mentioned Agreement.

WELLS FARGO BANK, NATIONAL ASSOCIATION, Authorized signatory of Wells Fargo Bank, National Association , not in its
individual capacity but solely as Securities Administrator

By: _____
       Authorized Signatory

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s) unto _____ (Please print or typewrite name and address including postal zip code of assignee) a Percentage Interest evidenced by the within Asset-Backed Certificate and hereby authorizes the transfer of registration of such interest to assignee on the Certificate Register of the Trust Fund.

I (We) further direct the Certificate Registrar to issue a new Certificate of a like denomination and Class, to the above named assignee and deliver such Certificate to the following address:

_____

_____

_____

Dated: _____                    _____
                                      Signature by or on behalf of assignor

                                      _____
                                      Signature Guaranteed

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____

_____
for the account of _____
account number _____ or, if mailed by check, to

_____
Applicable statements should be mailed to _____

_____

This information is provided by _____
assignee named above, or _____
its agent.

EXHIBIT A-5

FORM OF CLASS R CERTIFICATES

**THIS CERTIFICATE MAY NOT BE HELD BY OR TRANSFERRED TO A NON-UNITED STATES PERSON OR A DISQUALIFIED ORGANIZATION (AS DEFINED BELOW).**

**SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE REPRESENTS A "RESIDUAL INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT" AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986 (THE "CODE").**

**NO TRANSFER OF THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PROVIDES EITHER A CERTIFICATION PURSUANT TO SECTION 7.02(h) OF THE AGREEMENT OR AN OPINION OF COUNSEL SATISFACTORY TO THE SECURITIES ADMINISTRATOR THAT THE PURCHASE AND HOLDING OF THIS CERTIFICATE ARE PERMISSIBLE UNDER APPLICABLE LAW, WILL NOT CONSTITUTE OR RESULT IN ANY NON EXEMPT PROHIBITED TRANSACTIONS UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE SECURITIES ADMINISTRATOR, THE MASTER SERVICER OR THE DEPOSITOR TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE AGREEMENT.**

**ANY RESALE, TRANSFER OR OTHER DISPOSITION OF THIS CERTIFICATE MAY BE MADE ONLY IF THE PROPOSED TRANSFEREE PROVIDES A TRANSFER AFFIDAVIT TO THE MASTER SERVICER AND SECURITIES ADMINISTRATOR THAT (1) SUCH TRANSFEREE IS NOT (A) THE UNITED STATES, ANY STATE OR POLITICAL SUBDIVISION THEREOF, ANY POSSESSION OF THE UNITED STATES, OR ANY AGENCY OR INSTRUMENTALITY OF ANY OF THE FOREGOING (OTHER THAN AN INSTRUMENTALITY WHICH IS A CORPORATION IF ALL OF ITS ACTIVITIES ARE SUBJECT TO TAX AND EXCEPT FOR FREDDIE MAC, A MAJORITY OF ITS BOARD OF DIRECTORS IS NOT SELECTED BY SUCH GOVERNMENTAL UNIT), (B) A FOREIGN GOVERNMENT, ANY INTERNATIONAL ORGANIZATION, OR ANY AGENCY OR INSTRUMENTALITY OF EITHER OF THE FOREGOING, (C) ANY ORGANIZATION (OTHER THAN CERTAIN FARMERS' COOPERATIVES DESCRIBED IN SECTION 521 OF THE CODE) WHICH IS EXEMPT FROM THE TAX IMPOSED BY CHAPTER 1 OF THE CODE UNLESS SUCH ORGANIZATION IS SUBJECT TO THE TAX IMPOSED BY SECTION 511 OF THE CODE (INCLUDING THE TAX IMPOSED BY SECTION 511 OF THE CODE ON UNRELATED BUSINESS TAXABLE INCOME), (D) RURAL ELECTRIC AND TELEPHONE COOPERATIVES DESCRIBED IN SECTION 1381(a)(2)(C) OF THE CODE, (E) AN ELECTING LARGE**

**PARTNERSHIP UNDER SECTION 775(a) OF THE CODE (ANY SUCH PERSON DESCRIBED IN THE FOREGOING CLAUSES (A), (B), (C), (D) OR (E) BEING HEREIN REFERRED TO AS A "DISQUALIFIED ORGANIZATION"), OR (F) AN AGENT OF A DISQUALIFIED ORGANIZATION, (2) SUCH TRANSFEREE IS A UNITED STATES PERSON UNDER SECTION 7701 OF THE CODE, (3) NO PURPOSE OF SUCH TRANSFER IS TO IMPEDE THE ASSESSMENT OR COLLECTION OF TAX AND (4) SUCH TRANSFEREE SATISFIES CERTAIN ADDITIONAL CONDITIONS RELATING TO THE FINANCIAL CONDITION OF THE PROPOSED TRANSFEREE.    NOTWITHSTANDING    THE    REGISTRATION    IN    THE CERTIFICATE REGISTER OR ANY TRANSFER, SALE OR OTHER DISPOSITION OF THIS CERTIFICATE TO A DISQUALIFIED ORGANIZATION OR A NON-UNITED STATES PERSON OR AN AGENT OF A DISQUALIFIED ORGANIZATION OR A NON-UNITED STATES PERSON, SUCH REGISTRATION SHALL BE DEEMED TO BE OF NO LEGAL FORCE OR EFFECT WHATSOEVER AND SUCH PERSON SHALL NOT BE DEEMED TO BE A CERTIFICATEHOLDER FOR ANY PURPOSE HEREUNDER, INCLUDING, BUT NOT LIMITED TO, THE RECEIPT OF DISTRIBUTIONS    ON    THIS    CERTIFICATE.    EACH    HOLDER    OF    THIS CERTIFICATE BY ACCEPTANCE OF THIS CERTIFICATE SHALL BE DEEMED TO HAVE CONSENTED TO THE PROVISIONS OF THIS PARAGRAPH.**

Certificate No.1

Class R[-1][-2][-3][X]                    Percentage Interest: 100%

Date of Pooling and Servicing Agreement
and Cut-off Date:
March 1, 2007

First Distribution Date:
April 25, 2007

Master Servicer and Securities Administrator:    CUSIP: [            ]
Wells Fargo Bank, National Association

Last Scheduled Distribution Date:
January 25, 2036


## BEAR STEARNS SECOND LIEN TRUST 2007-SV1
### MORTGAGE-BACKED CERTIFICATE
### SERIES 2007-SV1

evidencing a fractional undivided interest in the distributions allocable to the Class R[-1][-2][-3][X] Certificates with respect to a Trust Fund consisting primarily of a pool of conventional, closed-end second lien one- to four-family fixed interest rate mortgage loans sold by SACO I INC.

This Certificate is payable solely from the assets of the Trust Fund, and does not represent an obligation of or interest in SACO I Inc., the Master Servicer, the Securities Administrator or the Trustee referred to below or any of their affiliates or any other person. Neither this Certificate nor the underlying Mortgage Loans are guaranteed or insured by any governmental entity or by SACO I Inc., the Master Servicer, the Securities Administrator or the Trustee or any of their affiliates or any other person. None of SACO I Inc., the Master Servicer or any of their affiliates will have any obligation with respect to any certificate or other obligation secured by or payable from payments on the Certificates.

This certifies that Bear, Stearns Securities Corp is the registered owner of the Percentage Interest evidenced hereby in the beneficial ownership interest of Certificates of the same Class as this Certificate in a trust (the "Trust Fund") generally consisting of conventional, closed-end, second lien, fixed rate mortgage loans secured by one- to four-family residences (collectively, the "Mortgage Loans") sold by SACO I Inc. ("SACO I"). The Mortgage Loans were sold by EMC Mortgage Corporation ("EMC") to SACO I. Wells Fargo Bank, National

Association will act as master servicer of the Mortgage Loans (in that capacity, the "Master Servicer," which term includes any successors thereto under the Agreement referred to below). The Trust Fund was created pursuant to the Pooling and Servicing Agreement, dated as of the Cut-off Date specified above (the "Agreement"), among SACO I, as depositor (the "Depositor"), EMC Mortgage Corporation as seller, Wells Fargo Bank, National Association, as Master Servicer and securities administrator (the "Securities Administrator") and Citibank, N.A., as trustee (the "Trustee"), a summary of certain of the pertinent provisions of which is set forth hereafter. To the extent not defined herein, capitalized terms used herein shall have the meaning ascribed to them in the Agreement. This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of its acceptance hereof assents and by which such Holder is bound.

Each Holder of this Certificate will be deemed to have agreed to be bound by the restrictions set forth in the Agreement to the effect that (i) each person holding or acquiring any Ownership Interest in this Certificate must be a Permitted Transferee, (ii) the transfer of any Ownership Interest in this Certificate will be conditioned upon the delivery to the Securities Administrator of, among other things, an affidavit to the effect that it is a Permitted Transferee, (iii) any attempted or purported transfer of any Ownership Interest in this Certificate in violation of such restrictions will be absolutely null and void and will vest no rights in the purported transferee, and (iv) if any person other than a Permitted Transferee acquires any Ownership Interest in this Certificate in violation of such restrictions, then the Depositor will have the right, in its sole discretion and without notice to the Holder of this Certificate, to sell this Certificate to a purchaser selected by the Depositor, which purchaser may be the Depositor, or any affiliate of the Depositor, on such terms and conditions as the Depositor may choose.

The Securities Administrator will distribute on the 25th day of each month, or, if such 25th day is not a Business Day, the immediately following Business Day (each, a "Distribution Date"), commencing on the First Distribution Date specified above, to the Person in whose name this Certificate is registered at the close of business on the last day (or if such last day is not a Business Day, the Business Day immediately preceding such last day) of the calendar month immediately preceding the month in which the Distribution Date occurs, an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amounts required to be distributed to the Holders of Certificates of the same Class as this Certificate.

Distributions on this Certificate will be made by the Securities Administrator by check mailed to the address of the Person entitled thereto as such name and address shall appear on the Certificate Register or, if such Person so requests by notifying the Securities Administrator in writing as specified in the Agreement, by wire transfer. Notwithstanding the above, the final distribution on this Certificate will be made after due notice by the Securities Administrator of the pendency of such distribution and only upon presentation and surrender of this Certificate at the office or agency appointed by the Securities Administrator for that purpose and designated in such notice.

No transfer of this Class R[-1][-2][-3][X] Certificate will be made unless the Securities Administrator shall have received either (i) the opinion of counsel set forth in Section

7.02(h) of the Agreement or (ii) a representation letter under Section 7.02 of the Agreement, in the form as described by the Agreement, stating that the transferee is not an employee benefit or other plan subject to the prohibited transaction provisions of ERISA or Section 4975 of the Code (a "Plan"), or any other person (including an investment manager, a named fiduciary or a trustee of any Plan) acting, directly or indirectly, on behalf of or purchasing any Certificate with "plan assets" of any Plan.

This Certificate is one of a duly authorized issue of Certificates designated as set forth on the face hereof (the "Certificates"). The Certificates, in the aggregate, evidence the entire beneficial ownership interest in the Trust Fund formed pursuant to the Agreement.

The Certificateholder, by its acceptance of this Certificate, agrees that it will look solely to the Trust Fund for payment hereunder and that neither the Trustee nor the Securities Administrator is liable to the Certificateholders for any amount payable under this Certificate or the Agreement or, except as expressly provided in the Agreement, subject to any liability under the Agreement.

This Certificate does not purport to summarize the Agreement and reference is made to the Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced hereby, and the rights, duties and immunities of the Securities Administrator and the Trustee.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Depositor and the rights of the Certificateholders and the Certificate Insurer under the Agreement from time to time by the parties thereto with the written consent of the Certificate Insurer and the consent of the Holders of the Certificates evidencing over 50% of the Voting Rights, or, if applicable, Holders of each Class of Certificates affected thereby evidencing over 50% of the Voting Rights of such Class or Classes. Any such written consent of the Certificate Insurer and any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also permits the amendment thereof, in certain limited circumstances, without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable with the Securities Administrator upon surrender of this Certificate for registration of transfer at the offices or agencies maintained by the Securities Administrator for such purposes, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Securities Administrator duly executed by the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificates in authorized denominations representing a like aggregate Percentage Interest will be issued to the designated transferee.

The Certificates are issuable only as registered Certificates without coupons in the Classes and denominations specified in the Agreement. As provided in the Agreement and

subject to certain limitations therein set forth, this Certificate is exchangeable for one or more new Certificates evidencing the same Class and in the same aggregate Percentage Interest, as requested by the Holder surrendering the same.

No service charge will be made to the Certificateholders for any such registration of transfer, but the Securities Administrator may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith. The Depositor, the Master Servicer, the Securities Administrator, the Trustee and any agent of any of them may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and none of the Depositor, the Master Servicer, the Securities Administrator, the Trustee or any such agent shall be affected by notice to the contrary.

The obligations created by the Agreement and the Trust Fund created thereby (other than the obligations to make payments to Certificateholders with respect to the termination of the Agreement) shall terminate upon the earlier of (i) the later of (A) the maturity or other liquidation (or Advance with respect thereto) of the last Mortgage Loan remaining in the Trust Fund and disposition of all property acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (B) the remittance of all funds due under the Agreement, or (ii) the optional repurchase by the party named in the Agreement of all the Mortgage Loans and other assets of the Trust Fund in accordance with the terms of the Agreement. Such optional repurchase may be made only on or after the first Distribution Date on which the aggregate Stated Principal Balance of the Mortgage Loans is less than or equal to a certain percentage of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date as set forth in the Agreement. The exercise of such right will effect the early retirement of the Certificates. In no event, however, will the Trust Fund created by the Agreement continue beyond the earlier of (i) the expiration of 21 years after the death of certain persons identified in the Agreement and (ii) the Latest Possible Maturity Date (as defined in the Agreement).

Unless this Certificate has been countersigned by an authorized signatory of the Securities Administrator by manual signature, this Certificate shall not be entitled to any benefit under the Agreement, or be valid for any purpose.

IN WITNESS WHEREOF, the Securities Administrator has caused this Certificate to be duly executed.

Dated: March 30, 2007

WELLS FARGO BANK, NATIONAL ASSOCIATION, not in its individual capacity but solely as Securities Administrator

By: _____
                    Authorized Signatory

## CERTIFICATE OF AUTHENTICATION

This is one of the Class R[-1][-2][-3][X] Certificates referred to in the within-mentioned Agreement.

WELLS FARGO BANK, NATIONAL ASSOCIATION, Authorized signatory of Wells Fargo Bank, National Association , not in its individual capacity but solely as Securities Administrator

By: _____
                    Authorized Signatory

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s) unto _____ (Please print or typewrite name and address including postal zip code of assignee) a Percentage Interest evidenced by the within Asset-Backed Certificate and hereby authorizes the transfer of registration of such interest to assignee on the Certificate Register of the Trust Fund.

I (We) further direct the Certificate Registrar to issue a new Certificate of a like denomination and Class, to the above named assignee and deliver such Certificate to the following address:

_____

_____

_____

Dated: _____          _____
                            Signature by or on behalf of assignor

                            _____
                            Signature Guaranteed

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____

_____

for the account of _____

account number _____ or, if mailed by check, to

_____

Applicable statements should be mailed to _____

_____

This information is provided by _____
assignee named above, or _____
its agent.

EXHIBIT A-6

FORM OF CLASS X CERTIFICATES

**THIS CERTIFICATE HAS NO PRINCIPAL BALANCE AND IS NOT ENTITLED TO ANY DISTRIBUTIONS IN RESPECT OF PRINCIPAL OR INTEREST.**

**THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY STATE SECURITIES LAWS. THE HOLDER HEREOF, BY PURCHASING THIS CERTIFICATE, AGREES THAT THIS CERTIFICATE MAY BE REOFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS AND ONLY (1) PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") TO A PERSON THAT THE HOLDER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A (A "QIB"), PURCHASING FOR ITS OWN ACCOUNT OR A QIB PURCHASING FOR THE ACCOUNT OF A QIB, WHOM THE HOLDER HAS INFORMED, IN EACH CASE, THAT THE REOFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (2) PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT (IF AVAILABLE) OR (3) IN CERTIFICATED FORM TO AN "INSTITUTIONAL ACCREDITED INVESTOR" WITHIN THE MEANING THEREOF IN RULE 501(a)(1), (2), (3) or (7) OF REGULATION D UNDER THE ACT OR ANY ENTITY IN WHICH ALL OF THE EQUITY OWNERS COME WITHIN SUCH PARAGRAPHS PURCHASING NOT FOR DISTRIBUTION IN VIOLATION OF THE SECURITIES ACT, SUBJECT TO (A) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF A LETTER SUBSTANTIALLY IN THE FORM PROVIDED IN THE AGREEMENT AND (B) THE RECEIPT BY THE SECURITIES ADMINISTRATOR OF SUCH OTHER EVIDENCE ACCEPTABLE TO THE SECURITIES ADMINISTRATOR THAT SUCH REOFFER, RESALE, PLEDGE OR TRANSFER IS IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS OR IN EACH CASE IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION.**

**NO TRANSFER OF THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PROVIDES EITHER A CERTIFICATION PURSUANT TO SECTION 7.02(h) OF THE AGREEMENT OR AN OPINION OF COUNSEL SATISFACTORY TO THE SECURITIES ADMINISTRATOR THAT THE PURCHASE AND HOLDING OF THIS CERTIFICATE ARE PERMISSIBLE UNDER APPLICABLE LAW, WILL NOT CONSTITUTE OR RESULT IN ANY NON-EXEMPT PROHIBITED TRANSACTIONS UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE SECURITIES ADMINISTRATOR, THE MASTER SERVICER OR THE DEPOSITOR TO ANY**

**OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE AGREEMENT.**

Certificate No.1

Class X                                          Percentage Interest: 100%

Date of Pooling and Servicing Agreement
and Cut-off Date: March 1, 2007

Master Servicer and Securities Administrator:    CUSIP: [                    ]
Wells Fargo Bank, National Association

BEAR STEARNS SECOND LIEN TRUST 2007-SV1
MORTGAGE-BACKED CERTIFICATE
SERIES 2007-SV1

evidencing a fractional undivided interest in the distributions allocable to the Class
X Certificates.

This Certificate is entitled to distributions with respect to certain Mortgage Loans
that are initially assets of the Trust, and does not represent an obligation of or interest in SACO I
Inc., the Master Servicer, the Securities Administrator or the Trustee referred to below or any of
their affiliates or any other person. Neither this Certificate nor the underlying Mortgage Loans
are guaranteed or insured by any governmental entity or by SACO I Inc., the Master Servicer,
the Securities Administrator, the Trustee or any of their affiliates or any other person. None of
SACO I Inc., the Master Servicer or any of their affiliates will have any obligation with respect
to any certificate or other obligation secured by or payable from payments on the Certificates.

This certifies that _____ is the registered owner of the Percentage
Interest evidenced hereby in the beneficial ownership interest of Certificates of the same Class as
this Certificate in a trust (the "Trust Fund") generally consisting primarily of a pool of fixed rate
mortgage loans that are secured by junior liens on one- to four-family residences (collectively,
the "Mortgage Loans") sold by SACO I Inc. ("SACO I"). The Mortgage Loans were sold by
EMC Mortgage Corporation ("EMC") to SACO I. Wells Fargo Bank, National Association will
act as master servicer of the Mortgage Loans (in that capacity, the "Master Servicer," which term
includes any successors thereto under the Agreement referred to below). The Trust Fund was
created pursuant to the Pooling and Servicing Agreement, dated as of the Cut-off Date specified
above (the "Agreement"), among SACO I, as depositor (the "Depositor"), EMC Mortgage
Corporation as seller, Wells Fargo Bank, National Association as Master Servicer and securities
administrator (the "Securities Administrator"), and Citibank, N.A., as trustee (the "Trustee"), a
summary of certain of the pertinent provisions of which is set forth hereafter. To the extent not
defined herein, capitalized terms used herein shall have the meaning ascribed to them in the

A-6-3

.

Agreement. This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of its acceptance hereof assents and by which such Holder is bound.

No transfer of this Class X Certificate will be made unless the Securities Administrator shall have received either (i) the opinion of counsel set forth in Section 7.02(h) of the Agreement or (ii) a representation letter under Section 7.02 of the Agreement, in the form as described by the Agreement, stating that the transferee is not an employee benefit or other plan subject to the prohibited transaction provisions of ERISA or Section 4975 of the Code (a "Plan"), or any other person (including an investment manager, a named fiduciary or a trustee of any Plan) acting, directly or indirectly, on behalf of or purchasing any Certificate with "plan assets" of any Plan.

This Certificate is one of a duly authorized issue of Certificates designated as set forth on the face hereof (the "Certificates"). The Certificates, in the aggregate, evidence the entire beneficial ownership interest in the Trust Fund formed pursuant to the Agreement.

The Certificateholder, by its acceptance of this Certificate agrees that neither the Trustee nor the Securities Administrator is liable to the Certificateholders for any amount payable under this Certificate or the Agreement or, except as expressly provided in the Agreement, subject to any liability under the Agreement.

This Certificate does not purport to summarize the Agreement and reference is made to the Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced hereby, and the rights, duties and immunities of the Securities Administrator and the Trustee.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Depositor and the rights of the Certificateholders and the Certificate Insurer under the Agreement from time to time by the parties thereto with the written consent of the Certificate Insurer and the consent of the Holders of the Certificates evidencing over 50% of the Voting Rights, or, if applicable, Holders of each Class of Certificates affected thereby evidencing over 50% of the Voting Rights of such Class or Classes. Any such written consent of the Certificate Insurer and any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also permits the amendment thereof, in certain limited circumstances, without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable with the Securities Administrator upon surrender of this Certificate for registration of transfer at the offices or agencies maintained by the Securities Administrator for such purposes, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Securities Administrator duly executed by the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificates

in authorized denominations representing a like aggregate Percentage Interest will be issued to
the designated transferee.

The Certificates are issuable only as registered Certificates without coupons in the
Classes and denominations specified in the Agreement. As provided in the Agreement and
subject to certain limitations therein set forth, this Certificate is exchangeable for one or more
new Certificates evidencing the same Class and in the same aggregate Percentage Interest, as
requested by the Holder surrendering the same.

No service charge will be made to the Certificateholders for any such registration
of transfer, but the Securities Administrator may require payment of a sum sufficient to cover
any tax or other governmental charge payable in connection therewith. The Depositor, the
Master Servicer, the Securities Administrator, the Trustee and any agent of any of them may
treat the Person in whose name this Certificate is registered as the owner hereof for all purposes,
and none of the Depositor, the Master Servicer, the Securities Administrator, the Trustee or any
such agent shall be affected by notice to the contrary.

The obligations created by the Agreement and the Trust Fund created thereby
(other than the obligations to make payments to Certificateholders with respect to the termination
of the Agreement) shall terminate upon the earlier of (i) the later of (A) the maturity or other
liquidation (or Advance with respect thereto) of the last Mortgage Loan remaining in the Trust
Fund and disposition of all property acquired upon foreclosure or deed in lieu of foreclosure of
any Mortgage Loan and (B) the remittance of all funds due under the Agreement, or (ii) the
optional repurchase by the party named in the Agreement of all the Mortgage Loans and other
assets of the Trust Fund in accordance with the terms of the Agreement. Such optional
repurchase may be made only on or after the first Distribution Date on which the aggregate
Stated Principal Balance of the Mortgage Loans is less than or equal to a certain percentage of
the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date as set forth
in the Agreement. The exercise of such right will effect the early retirement of the Certificates. In
no event, however, will the Trust Fund created by the Agreement continue beyond the earlier of
(i) the expiration of 21 years after the death of certain persons identified in the Agreement and
(ii) the Latest Possible Maturity Date (as defined in the Agreement).

The Holder of This Certificate shall be entitled to the rights set forth under the
Agreement. Unless this Certificate has been countersigned by an authorized signatory of the
Securities Administrator by manual signature, this Certificate shall not be entitled to any benefit
under the Agreement, or be valid for any purpose.

IN WITNESS WHEREOF, the Securities Administrator has caused this Certificate to be duly executed.

Dated: March 30, 2007

WELLS FARGO BANK, NATIONAL ASSOCIATION, not in its individual capacity but solely as Securities Administrator

By: _____
          Authorized Signatory

## CERTIFICATE OF AUTHENTICATION

This is one of the Class X Certificates referred to in the within-mentioned Agreement.

WELLS FARGO BANK, NATIONAL ASSOCIATION, Authorized signatory of Wells Fargo Bank, National Association, not in its individual capacity but solely as Securities Administrator

By: _____
          Authorized Signatory

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s) unto _____ (Please print or typewrite name and address including postal zip code of assignee) a Percentage Interest evidenced by the within Asset-Backed Certificate and hereby authorizes the transfer of registration of such interest to assignee on the Certificate Register of the Trust Fund.

I (We) further direct the Certificate Registrar to issue a new Certificate of a like denomination and Class, to the above named assignee and deliver such Certificate to the following address:

Dated: _____        _____

Signature by or on behalf of assignor

_____

Signature Guaranteed

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____ for the account of _____ account number _____, or, if mailed by check, to _____. Applicable statements should be mailed to _____.

This information is provided by_____, the assignee named above, or _____, as its agent.

EXHIBIT B

MORTGAGE LOAN SCHEDULE

[PROVIDED UPON REQUEST]

EXHIBIT C-1

FORM OF TRANSFEREE AFFIDAVIT

Affidavit pursuant to Section 860E(e)(4)
of the Internal Revenue Code of 1986, as
amended, and for other purposes

STATE OF NEW YORK     )
                                  )    ss.:
COUNTY OF NEW YORK   )

      The undersigned is the [Title of Officer] of [Name of Transferee] (the "Investor"), the proposed transferee of an Ownership Interest in the Bear Stearns Second Lien Trust 2007-SV1, Mortgage-Backed Certificates, Series 2007-SV1, Class [R-1][R-2][R-3][RX] Certificates (the "Certificates") issued pursuant to the Pooling and Servicing Agreement, dated as of March 1, 2007 (the "Agreement"), among SACO I Inc., as depositor (the "Depositor"), EMC Mortgage Corporation, as seller, Wells Fargo Bank, National Association, as master servicer and securities administrator (the "Securities Administrator"), and Citibank, N.A., as trustee (the "Trustee"), and makes this affidavit on behalf of the Investor for the benefit of the Depositor, the Securities Administrator and the Trustee. Capitalized terms used, but not defined herein, shall have the meanings ascribed to such terms in the Agreement.

      1.      The Investor is, as of the date hereof, and will be, as of the date of the Transfer, a Permitted Transferee. The Investor is not acquiring its ownership interest in the Certificates for the account of a Person other than a Permitted Transferee.

      2.      The Investor has been advised and understands that (i) a tax will be imposed on Transfers of the Certificates to Persons that are not Permitted Transferees; (ii) such tax will be imposed on the transferor, or, if such Transfer is through an agent (which includes a broker, nominee or middleman) for a Person that is not a Permitted Transferee, on the agent; and (iii) the Person otherwise liable for the tax shall be relieved of liability for the tax if a subsequent transferee furnishes to such Person an affidavit that such subsequent transferee is a Permitted Transferee, and at the time of Transfer, such Person does not have actual knowledge that the affidavit is false.

      3.      The Investor has been advised and understands that a tax will be imposed on a "pass-through entity" holding the Certificates if at any time during the taxable year of the pass-through entity a Person that is not a Permitted Transferee is the record holder of an interest in such entity. The Investor understands that such tax will not be imposed for any period with respect to which the record holder furnishes to the pass-through entity an affidavit that such record holder is a Permitted Transferee and the pass-through entity does not have actual knowledge that such affidavit is false. (For this purpose, a "pass-through entity" includes a regulated investment company, a real estate investment trust or common trust fund, a partnership, trust or estate, and certain cooperatives and, except as may be provided in Treasury regulations, Persons holding interests in pass-through entities as a nominee for another Person.)

4.      The Investor has reviewed the provisions of Section 7.02(i) of the Agreement and understands the legal consequences of the acquisition of an Ownership Interest in the Certificates, including, without limitation, the restrictions on subsequent Transfers and the provisions regarding voiding any prohibited Transfers and mandatory sales.  The Investor expressly agrees to be bound by, and to abide by, such provisions of the Agreement and the restrictions noted on the face of the Certificates. The Investor understands and agrees that any breach of any of the representations included herein shall render the Transfer of the Certificates to the Investor contemplated hereby null and void. The Investor consents to any amendment of the Agreement that shall be deemed necessary by the Depositor (upon advice of nationally recognized counsel) to constitute a reasonable arrangement to ensure that the Certificates will not be owned directly or indirectly by a Person other than a Permitted Transferee.

5.      The Investor agrees not to Transfer the Certificates, or cause the Transfer of the Certificates by a Person for whom the Investor is acting as nominee, trustee or agent, in each case unless it has received an affidavit and agreement in substantially the same form as this affidavit and agreement containing these same representations and covenants from the subsequent transferee. In connection with any such Transfer by the Investor, the Investor agrees to deliver to the Trustee and the Depositor an affidavit substantially in the form set forth as Exhibit R to the Agreement to the effect that the Investor has no actual knowledge that the Person to which the Transfer is to be made is not a Permitted Transferee.

6.      The Investor has historically paid its debts as they have come due, intends to pay its debts as they come due in the future, and understands that the taxes associated with holder an ownership interest in the Certificates may exceed the cash flow with respect thereto in some or all periods and intends to pay such taxes as they become due.  The Investor does not have the intention, and no purpose of the Transfer of the Certificates to the Investor is, to impede the assessment or collection of any tax legally required to be paid with respect to the Certificates.

7.      The Investor's U.S. taxpayer identification number is [_____].

8.      The Investor is a "United States person" within the meaning of Section 7701(a)(30) of the Code (a "United State Person").

9.      The Investor is aware that the Certificates may be a "noneconomic residual interest" within the meaning of Treasury regulations promulgated under Section 860E of the Code and that the transferor of a noneconomic residual interest will remain liable for any taxes due with respect to the income on such residual interest, unless no significant purpose of the transfer was to impede the assessment or collection of tax.

10.     The Investor will not cause income from the Certificates to be attributable to a foreign permanent establishment or fixed base, within the meaning of an applicable income tax treaty, of the Investor or any other United States Person.

11.     Check one of the following:

☐ The Transfer of the Certificates complies with U.S. Treasury Regulation Sections 1.860E-1(c)(7) and (8) and, accordingly:

(i)    the present value of the anticipated tax liabilities associated with holding the Certificates does not exceed the sum of:

(a)    the present value of any consideration given to the Investor to acquire such Certificates;

(b)    the present value of the expected future distributions on such Certificates; and

(c)    the present value of the anticipated tax savings associated with holding such Certificates as the related REMIC generates losses; and

(ii)    the Transfer of the Certificates will not result in such Certificates being held, directly or indirectly, by a foreign permanent establishment or fixed base, within the meaning of an applicable income tax treaty, of the Investor or any other United States Person.

For purposes of the calculation in clause (i) above, (x) the Investor is assumed to pay tax at the highest rate currently specified in Section 11(b)(1) of the Code (but the tax rate in Section 55(b)(1)(B) of the Code may be used in lieu of the highest rate specified in Section 11(b)(1) of the Code if the Investor has been subject to the alternative minimum tax under Section 55 of the Code in the preceding two years and will compute its taxable income in the current taxable year using the alternative minimum tax rate) and (y) present values are computed using a discount rate equal to the short-term Federal rate prescribed by Section 1274(d) of the Code for the month of the transfer and the compounding period used by the Investor.

☐ The Transfer of the Certificates complies with U.S. Treasury Regulation Sections 1.860E-1(c)(5) and (6) and, accordingly:

(i)    the Investor is an "eligible corporation," as defined in U.S. Treasury Regulation Section 1.860E-1(c)(6)(i), as to which income from the Certificates will only be taxed in the United States;

(ii)    at the time of the Transfer, and at the close of the Investor's two fiscal years preceding the fiscal year of the transfer, the Investor had gross assets for financial reporting purposes (excluding any obligation of a "related person" to the Investor within the meaning of U.S. Treasury Regulation Section 1.860E-1(c)(6)(ii) and any other asset the principal purpose of which is to permit the Investor to satisfy the condition of this clause (ii)) in excess of $100 million and net assets in excess of $10 million;

(iii)    the Investor will transfer the Certificates only to another "eligible corporation," as defined in U.S. Treasury Regulation Section 1.860E-1(c)(6)(i), in a transaction in which the requirements of U.S. Treasury Regulation Sections 1.860E-1(c)(4)(i), (ii) and (iii) and -1(c)(5) are satisfied and, accordingly, the subsequent transferee provides a similar affidavit with this box checked; and

(iv)    the Investor determined the consideration paid to it to acquire the Certificates based on reasonable market assumptions (including, but not limited to, borrowing and investment rates, prepayment and loss assumptions, expense and reinvestment assumptions, tax rates and other factors specific to the Investor) that it has determined in good faith and has concluded that such consideration, together with other assets of the Investor, will be sufficient to cover the taxes associated with the Certificates.

☐ None of the above.

IN WITNESS WHEREOF, the Investor has caused this instrument to be executed on its behalf, pursuant to authority of its Board of Directors, by its [Title of Officer] this _____ day of _____, 20___.

[NAME OF INVESTOR]

By:       _____

Name:   [Name of Officer]

Title:    [Title of Officer]

            [Address of Investor for receipt of distributions]

            Address of Investor for receipt of tax information:

Personally appeared before me the above-named [Name of Officer], known or proved to me to be the same person who executed the foregoing instrument and to be the [Title of Officer] of the Investor, and acknowledged to me that he/she executed the same as his/her free act and deed and the free act and deed of the Investor.

Subscribed and sworn before me this ___ day of _____, 20___.

NOTARY PUBLIC

COUNTY OF

STATE OF

My commission expires the ___ day of _____, 20___.

EXHIBIT C-2

FORM OF TRANSFEROR AFFIDAVIT

STATE OF NEW YORK    )
                           )   ss.:
COUNTY OF NEW YORK   )

        The undersigned is the [Title of Officer] of [Name of Transferor] (the "Owner"), the proposed transferor of an Ownership Interest in the Bear Stearns Second Lien Trust 2007-SV1, Mortgage-Backed Certificates, Series 2007-SV1, Class [R-1][R-2][R-3][RX] Certificates (the "Certificates") issued pursuant to the Pooling and Servicing Agreement, dated as of March 1, 2007 (the "Agreement"), among SACO I Inc., as depositor (the "Depositor"), EMC Mortgage Corporation, as seller, Wells Fargo Bank, National Association, as master servicer and securities administrator (the "Securities Administrator") and Citibank, N.A., as trustee (the "Trustee"), and makes this affidavit on behalf of the Owner for the benefit of the Depositor, the Securities Administrator and the Trustee. Capitalized terms used, but not defined herein, shall have the meanings ascribed to such terms in the Agreement.

        1.    The Owner is not transferring the Certificate to impede the assessment or collection of any tax.

        2.    The Owner has no actual knowledge that the proposed transferee of the Certificate: (i) has insufficient assets to pay any taxes that would be owed by such transferee as Holder of the Certificate; (ii) may become insolvent or subject to a bankruptcy proceeding for so long as the Certificate remains outstanding; and (iii) is not a Permitted Transferee.

        3.    The Owner understands that the proposed transferee has delivered to the Trustee, the Securities Administrator and the Depositor a transfer affidavit and agreement in the form attached to the Agreement as Exhibit C. The Owner does not know or believe that any representation contained therein is false.

        4.    At the time of transfer, the Owner has conducted a reasonable investigation of the financial condition of the proposed transferee as contemplated by Treasury Regulation Section 1.860E-1(c)(4)(i) and, as a result of that investigation, the Owner has determined that the proposed transferee has historically paid its debts as they became due and has found no significant evidence to indicate that the proposed transferee will not continue to pay its debts as they become due in the future. The Owner understands that the transfer of the Certificate may not be respected for U.S. federal income tax purposes (and the Owner may continue to be liable for U.S. federal income taxes associated therewith) unless the Owner has conducted such an investigation.

IN WITNESS WHEREOF, the Investor has caused this instrument to be executed on its behalf, pursuant to authority of its Board of Directors, by its [Title of Officer] this ____ day of _____, 20__.

[NAME OF OWNER]

By:    _____

Name:   [Name of Officer]

Title:   [Title of Officer]

Personally appeared before me the above-named [Name of Officer], known or proved to me to be the same person who executed the foregoing instrument and to be the [Title of Officer] of the Owner, and acknowledged to me that he/she executed the same as his/her free act and deed and the free act and deed of the Owner.

Subscribed and sworn before me this ____ day of _____, 20____.

NOTARY PUBLIC

COUNTY OF

STATE OF

My commission expires the ____ day of _____, 20____.

EXHIBIT D

FORM OF TRANSFEROR CERTIFICATE

_____, 200___

SACO I Inc.
383 Madison Avenue
New York, New York 10179

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

Attention: Bear Stearns Second Lien Trust 2007-SV1

Re:   Bear Stearns Second Lien Trust 2007-SV1, Mortgage-Backed
Certificates, Series 2007-SV1 (the "Certificates"), including the
Class [__] Certificates (the "Privately Offered Certificates")

Ladies and Gentlemen:

In connection with the sale by _____ (the "Seller") to _____ (the "Purchaser") of $_____ Initial Certificate Principal Balance of Bear Stearns Second Lien Trust 2007-SV1 Mortgage-Backed Certificates, Series 2007-SV1, Class _____ (the "Certificates"), issued pursuant to the Pooling and Servicing Agreement (the "Pooling and Servicing Agreement"), dated as of March 1, 2007, among SACO I Inc., as depositor (the "Depositor"), EMC Mortgage Corporation, as seller, Wells Fargo Bank, National Association as master servicer and securities administrator and Citibank, N.A., as trustee (the "Trustee"). The Seller hereby certifies, represents and warrants to, a covenants with, the Depositor and the Securities Administrator that:

Neither the Seller nor anyone acting on its behalf (a) has offered, pledged, sold, disposed of or otherwise transferred any Certificate, any interest in any Certificate or any other similar security to any person in any manner, (b) has solicited any offer to buy or to accept a pledge, disposition or other transfer of any Certificate, any interest in any Certificate or any other similar security from any person in any manner, (c) has otherwise approached or negotiated with respect to any Certificate, any interest in any Certificate or any other similar security with any person in any manner, (d) has made any general solicitation by means of general advertising or in any other manner, or (e) has taken any other action, that (as to any of (a) through (e) above) would constitute a distribution of the Certificates under the Securities Act of 1933 (the "Act"), that would render the disposition of any Certificate a violation of Section 5 of the Act or any state securities law, or that would require registration or qualification pursuant thereto. The Seller will not act in any manner set forth in the foregoing sentence with respect to any Certificate. The Seller has not and will not sell or otherwise transfer any of the Certificates, except in compliance with the provisions of the Pooling and Servicing Agreement.

D-1

Very truly yours,

_____

(Seller)


By: _____
Name: _____
Title: _____

EXHIBIT E

FORM OF INVESTMENT LETTER (NON-RULE 144A)

[Date]

[SELLER]

SACO I Inc.
383 Madison Avenue
New York, New York 10179

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

Re:    Bear Stearns Second Lien Trust 2007-SV1, Mortgage-Backed
Certificates, Series 2007-SV1 (the "Certificates"), including the
Class [    ] Certificates (the "Privately Offered Certificates")

Dear Ladies and Gentlemen:

In connection with our purchase of Privately Offered Certificates, we confirm that:

(i)      we understand that the Privately Offered Certificates are not being
registered under the Securities Act of 1933, as amended (the "Act") or any
applicable state securities or "Blue Sky" laws, and are being sold to us in a
transaction that is exempt from the registration requirements of such laws;

(ii)     any information we desired concerning the Certificates, including the
Privately Offered Certificates, the trust in which the Certificates represent
the entire beneficial ownership interest (the "Trust") or any other matter
we deemed relevant to our decision to purchase Privately Offered
Certificates has been made available to us;

(iii)    we are able to bear the economic risk of investment in Privately Offered
Certificates; we are an institutional "accredited investor" as defined in
Section 501(a) of Regulation D promulgated under the Act and a
sophisticated institutional investor;

(iv)     we are acquiring Privately Offered Certificates for our own account, not as
nominee for any other person, and not with a present view to any
distribution or other disposition of the Privately Offered Certificates;

(v)      we agree the Privately Offered Certificates must be held indefinitely by us
(and may not be sold, pledged, hypothecated or in any way disposed of)
unless subsequently registered under the Act and any applicable state
securities or "Blue Sky" laws or an exemption from the registration

requirements of the Act and any applicable state securities or "Blue Sky" laws is available;

(vi)    we agree that in the event that at some future time we wish to dispose of or exchange any of the Privately Offered Certificates (such disposition or exchange not being currently foreseen or contemplated), we will not transfer or exchange any of the Privately Offered Certificates unless:

(A) (1) the sale is to an Eligible Purchaser (as defined below), (2) if required by the Pooling and Servicing Agreement (as defined below) a letter to substantially the same effect as either this letter or, if the Eligible Purchaser is a Qualified Institutional Buyer as defined under Rule 144A of the Act, the Rule 144A and Related Matters Certificate in the form attached to the Pooling and Servicing Agreement (as defined below) (or such other documentation as may be acceptable to the Trustee) is executed promptly by the purchaser and delivered to the addressees hereof and (3) all offers or solicitations in connection with the sale, whether directly or through any agent acting on our behalf, are limited only to Eligible Purchasers and are not made by means of any form of general solicitation or general advertising whatsoever; and

(B) if the Privately Offered Certificate is not registered under the Act (as to which we acknowledge you have no obligation), the Privately Offered Certificate is sold in a transaction that does not require registration under the Act and any applicable state securities or "blue sky" laws and, if Wells Fargo Bank, National Association (the "Securities Administrator") so requests, a satisfactory Opinion of Counsel is furnished to such effect, which Opinion of Counsel shall be an expense of the transferor or the transferee;

(vii)   we agree to be bound by all of the terms (including those relating to restrictions on transfer) of the Pooling and Servicing, pursuant to which the Trust was formed; we have reviewed carefully and understand the terms of the Pooling and Servicing Agreement;

(viii)  [In the case of the Class A Certificates]: So long as the Supplemental Interest Trust is in existence: (i) we are not acquiring such certificate directly or indirectly, by or on behalf of, an employee benefit plan or other retirement arrangement which is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986 or (ii)(1) we are an accredited investor within the meaning of the Prohibited Transaction Exemption, or PTE 2007-05 and (2) such acquisition or holding is eligible for the exemptive relief available under Department of Labor Prohibited Transaction Class Exemption, or PTCE, 95-60 (for transactions by insurance company general accounts), PTCE 84-14 (for transactions by independent "qualified

professional asset managers"), 91-38 (for transactions by bank collective investment funds), 90-1 (for transactions by insurance company pooled separate accounts) or 96-23 (for transactions effected by "in-house asset managers").

[In the case of the Class M Certificates or Class B Certificates]: So long as the Supplemental Interest Trust is in existence: (i) we are not acquiring such certificate directly or indirectly, by or on behalf of, an employee benefit plan or other retirement arrangement which is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986 or (ii)(1) we are an accredited investor within the meaning of the Prohibited Transaction Exemption, or PTE 2007-05 and (2)(a) such acquisition or holding is eligible for the exemptive relief available under Department of Labor Prohibited Transaction Class Exemption, or PTCE, 95-60 (for transactions by insurance company general accounts). After the termination of the Supplemental Interest Trust: (i) we are not acquiring such certificate directly or indirectly, by or on behalf of, an employee benefit plan or other retirement arrangement which is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986 or (ii) (1) we are an insurance company, (2) the source of funds used to acquire or hold the certificate or interest therein is an "insurance company general account", as such term is defined in PTCE 95-60, and (3) the conditions in Sections I and III of PTCE 95-60 have been satisfied.

(ix)         We understand that each of the Privately Offered Certificates bears, and will continue to bear, a legend to substantiate the following effect: **THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY STATE SECURITIES LAWS. THE HOLDER HEREOF, BY PURCHASING THIS CERTIFICATE, AGREES THAT THIS CERTIFICATE MAY BE REOFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS AND ONLY (1) PURSUANT TO RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") TO A PERSON THAT THE HOLDER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A (A "QIB"), PURCHASING FOR ITS OWN ACCOUNT OR A QIB PURCHASING FOR THE ACCOUNT OF A QIB, WHOM THE HOLDER HAS INFORMED, IN EACH CASE, THAT THE REOFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, (2) PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144**

UNDER THE SECURITIES ACT (IF AVAILABLE) OR (3) IN
CERTIFICATED FORM TO AN "INSTITUTIONAL ACCREDITED
INVESTOR" WITHIN THE MEANING THEREOF IN RULE
501(a)(1), (2), (3) or (7) OF REGULATION D UNDER THE ACT OR
ANY ENTITY IN WHICH ALL OF THE EQUITY OWNERS COME
WITHIN SUCH PARAGRAPHS PURCHASING NOT FOR
DISTRIBUTION IN VIOLATION OF THE SECURITIES ACT,
SUBJECT TO (A) THE RECEIPT BY THE SECURITIES
ADMINISTRATOR OF A LETTER SUBSTANTIALLY IN THE
FORM PROVIDED IN THE AGREEMENT AND (B) THE RECEIPT
BY THE SECURITIES ADMINISTRATOR OF SUCH OTHER
EVIDENCE   ACCEPTABLE   TO   THE   SECURITIES
ADMINISTRATOR THAT SUCH REOFFER, RESALE, PLEDGE
OR TRANSFER IS IN COMPLIANCE WITH THE SECURITIES
ACT AND OTHER APPLICABLE LAWS OR IN EACH CASE IN
ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS
OF THE UNITED STATES AND ANY OTHER APPLICABLE
JURISDICTION.

[In the case of the Class A Certificates]: **PRIOR TO THE
TERMINATION OF THE SUPPLEMENTAL INTEREST TRUST,
ANY PERSON ACQUIRING A CERTIFICATE SHALL BE
DEEMED TO HAVE MADE THE REPRESENTATIONS IN
SECTION 7.02(h) OF THE POOLING AND SERVICING
AGREEMENT.**

[In the case of the Class M Certificates and Class B Certificates]: **NO
TRANSFER OF THIS CERTIFICATE SHALL BE MADE EXCEPT
IN ACCORDANCE WITH THE REPRESENTATIONS SET FORTH
IN SECTION 7.02(h) OF THE POOLING AND SERVICING
AGREEMENT.**

[In the case of the Class C Certificates]: **NO TRANSFER OF ANY
CLASS C CERTIFICATE SHALL BE MADE UNLESS THE
TRANSFEREE OF SUCH CLASS C CERTIFICATE PROVIDES TO
THE SECURITIES ADMINISTRATOR THE APPROPRIATE TAX
CERTIFICATION FORM (I.E., IRS FORM W-9 OR IRS FORM W-
8BEN, W-8IMY, OR W-8ECI, AS APPLICABLE (OR ANY
SUCCESSOR FORM THERETO)), AS A CONDITION TO SUCH
TRANSFER AND AGREES TO UPDATE SUCH FORMS (I) UPON
EXPIRATION OF ANY SUCH FORM, (II) AS REQUIRED UNDER
THEN APPLICABLE U.S. TREASURY REGULATIONS AND (III)
PROMPTLY UPON LEARNING THAT ANY IRS FORM W-9 OR
IRS FORM W-8BEN, W-8IMY, OR W-8ECI, AS APPLICABLE (OR
ANY SUCCESSOR FORM THERETO), HAS BECOME OBSOLETE
OR INCORRECT. UPON RECEIPT OF ANY SUCH TAX**

CERTIFICATION FORM FROM A TRANSFEREE OF ANY CLASS C CERTIFICATE, THE SECURITIES ADMINISTRATOR SHALL PROVIDE A COPY OF SUCH TAX CERTIFICATION FORM TO THE SUPPLEMENTAL INTEREST TRUST TRUSTEE.   THE SUPPLEMENTAL INTEREST TRUST TRUSTEE SHALL PROVIDE A COPY OF ANY SUCH TAX CERTIFICATION FORM TO THE SWAP PROVIDER.

[In the case of the Class C, Class X and Class R Certificates]:  **NO TRANSFER OF THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PROVIDES EITHER A CERTIFICATION PURSUANT TO SECTION 7.02(h) OF THE AGREEMENT OR AN OPINION OF COUNSEL SATISFACTORY TO THE SECURITIES ADMINISTRATOR THAT THE PURCHASE AND HOLDING OF THIS CERTIFICATE ARE PERMISSIBLE UNDER APPLICABLE LAW, WILL NOT CONSTITUTE OR RESULT IN ANY NON-EXEMPT PROHIBITED TRANSACTIONS UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA") OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE SECURITIES ADMINISTRATOR, THE TRUSTEE, THE MASTER SERVICER OR THE DEPOSITOR TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE AGREEMENT.**

"Eligible Purchaser" means a corporation, partnership or other entity which we have reasonable grounds to believe and do believe (i) can make representations with respect to itself to substantially the same effect as the representations set forth herein, and (ii) is either a Qualified Institutional Buyer as defined under Rule 144A of the Act or an institutional "Accredited Investor" as defined under Rule 501 of the Act.

Terms not otherwise defined herein shall have the meanings assigned to them in the Pooling and Servicing Agreement, dated as of March 1, 2007, among SACO I Inc., as depositor (the "Depositor"), EMC Mortgage Corporation, as seller, Wells Fargo Bank, National Association as master servicer and securities administrator, and Citibank, N.A., as Trustee (the "Pooling and Servicing Agreement").

If the Purchaser proposes that its Certificates be registered in the name of a nominee on its behalf, the Purchaser has identified such nominee below, and has caused such nominee to complete the Nominee Acknowledgment at the end of this letter.

Name of Nominee (if any): _____

IN WITNESS WHEREOF, this document has been executed by the undersigned who is duly authorized to do so on behalf of the undersigned Eligible Purchaser on the ___ day of _____, 20___.

Very truly yours,

[PURCHASER]


By: _____
(Authorized Officer)


By: _____
(Attorney-in-fact)

Nominee Acknowledgment

The undersigned hereby acknowledges and agrees that as to the Certificates being registered in its name, the sole beneficial owner thereof is and shall be the Purchaser identified above, for whom the undersigned is acting as nominee.

[NAME OF NOMINEE]

By: _____
(Authorized Officer)

By: _____
(Attorney-in-fact)

EXHIBIT F

FORM OF RULE 144A AND RELATED MATTERS CERTIFICATE

[SELLER]

SACO I Inc.
383 Madison Avenue
New York, New York 10179

Wells Fargo Bank, National Association
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479

Attn: Bear Stearns Second Lien Trust 2007-SV1

Re:    Bear Stearns Second Lien Trust 2007-SV1, Mortgage-
Backed Certificates, Series 2007-SV1 (the "Certificates"),
including the Class [__] Certificates (the "Privately Offered
Certificates") _____

Dear Ladies and Gentlemen:

In connection with our purchase of Privately Offered Certificates, the undersigned
certifies to each of the parties to whom this letter is addressed that it is a qualified institutional
buyer (as defined in Rule 144A under the Securities Act of 1933, as amended (the "Act")) as
follows:

1.    It owned and/or invested on a discretionary basis eligible securities (excluding affiliate's
securities, bank deposit notes and CD's, loan participations, repurchase agreements, securities
owned but subject to a repurchase agreement and swaps), as described below:

Date: _____, 20__ (must be on or after the close of its most recent fiscal year)

Amount: $ _____; and

2.    The dollar amount set forth above is:

a.    greater than $100 million and the undersigned is one of the following entities:

(1)    [ ]    an insurance company as defined in Section 2(13) of the Act[1];
or

_____

[1]    A purchase by an insurance company for one or more of its separate accounts, as defined
by Section 2(a)(37) of the Investment Company Act of 1940, which are neither registered nor

(2)      [_]      an investment company registered under the Investment Company Act or any business development company as defined in Section 2(a)(48) of the Investment Company Act of 1940; or

(3)      [_]      a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; or

(4)      [_]      a plan (i) established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, the laws of which permit the purchase of securities of this type, for the benefit of its employees and (ii) the governing investment guidelines of which permit the purchase of securities of this type; or

(5)      [_]      a business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940; or

(6)      [_]      a corporation (other than a U.S. bank, savings and loan association or equivalent foreign institution), partnership, Massachusetts or similar business trust, or an organization described in Section 501(c)(3) of the Internal Revenue Code; or

(7)      [_]      a U.S. bank, savings and loan association or equivalent foreign institution, which has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements; or

(8)      [_]      an investment adviser registered under the Investment Advisers Act; or

b.      [_]      greater than $10 million, and the undersigned is a broker-dealer registered with the SEC; or

c.      [_]      less than $10 million, and the undersigned is a broker-dealer registered with the SEC and will only purchase Rule 144A securities in transactions in which it acts as a riskless principal (as defined in Rule 144A); or

d.      [_]      less than $100 million, and the undersigned is an investment company registered under the Investment Company Act of

required to be registered thereunder, shall be deemed to be a purchase for the account of such insurance company.

1940, which, together with one or more registered investment companies having the same or an affiliated investment adviser, owns at least $100 million of eligible securities; or

e.   [ ]   less than $100 million, and the undersigned is an entity, all the equity owners of which are qualified institutional buyers.

The undersigned further certifies that it is purchasing a Privately Offered Certificate for its own account or for the account of others that independently qualify as "Qualified Institutional Buyers" as defined in Rule 144A. It is aware that the sale of the Privately Offered Certificates is being made in reliance on its continued compliance with Rule 144A. It is aware that the transferor may rely on the exemption from the provisions of Section 5 of the Act provided by Rule 144A. The undersigned understands that the Privately Offered Certificates may be resold, pledged or transferred only to (i) a person reasonably believed to be a Qualified Institutional Buyer that purchases for its own account or for the account of a Qualified Institutional Buyer to whom notice is given that the resale, pledge or transfer is being made in reliance in Rule 144A, or (ii) an institutional "accredited investor," as such term is defined under Rule 501 of the Act in a transaction that otherwise does not constitute a public offering.

The undersigned agrees that if at some future time it wishes to dispose of or exchange any of the Privately Offered Certificates, it will not transfer or exchange any of the Privately Offered Certificates to a Qualified Institutional Buyer without first obtaining a Rule 144A and Related Matters Certificate in the form hereof from the transferee and delivering such certificate to the addressees hereof. Prior to making any transfer of Privately Offered Certificates, if the proposed Transferee is an institutional "accredited investor," the transferor shall obtain from the transferee and deliver to the addressees hereof an Investment Letter in the form attached to the Pooling and Servicing Agreement, dated as of March 1, 2007, among SACO I Inc., as depositor (the "Depositor"), EMC Mortgage Corporation, as seller, Wells Fargo Bank, National Association as master servicer and securities administrator, and Citibank, N.A., as Trustee, pursuant to which the Certificates were issued.

The undersigned certifies that it either: (i) is not acquiring the Privately Offered Certificates directly or indirectly by, or on behalf of, an employee benefit plan or other retirement arrangement which is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, and/or section 4975 of the Internal Revenue Code of 1986, as amended, or (ii) has provided the Opinion of Counsel required by the Agreement or (iii) (A) for the Class A, Class M and Class B Certificates, so long as the Supplemental Interest Trust is in existence: (I) the undersigned is not acquiring such certificate directly or indirectly, by or on behalf of, an employee benefit plan or other retirement arrangement which is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986 or (II)(1) the undersigned is an accredited investor within the meaning of the Prohibited Transaction Exemption, or PTE 2007-05 and (2) such acquisition or holding is eligible for the exemptive relief available under Department of Labor Prohibited Transaction Class Exemption, or PTCE, 95-60 (for transactions by insurance company general

accounts), PTCE 84-14 (for transactions by independent "qualified professional asset managers"), 91-38 (for transactions by bank collective investment funds), 90-1 (for transactions by insurance company pooled separate accounts) or 96-23 (for transactions effected by "in-house asset managers") and (B) for the Class M Certificates and Class B Certificates, after the termination of the Supplemental Interest Trust: (I) the undersigned is not acquiring such certificate directly or indirectly, by or on behalf of, an employee benefit plan or other retirement arrangement which is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986 or (II) (1) the undersigned is an insurance company, (2) the source of funds used to acquire or hold the certificate or interest therein is an "insurance company general account", as such term is defined in PTCE 95-60, and (3) the conditions in Sections I and III of PTCE 95-60 have been satisfied.

If the Purchaser proposes that its Certificates be registered in the name of a nominee on its behalf, the Purchaser has identified such nominee below, and has caused such nominee to complete the Nominee Acknowledgment at the end of this letter.

Name of Nominee (if any): _____

IN WITNESS WHEREOF, this document has been executed by the undersigned who is duly authorized to do so on behalf of the undersigned Eligible Purchaser on the ____ day of _____, 20___.

Very truly yours,

[PURCHASER]


By: _____
(Authorized Officer)


By: _____
(Attorney-in-fact)

Nominee Acknowledgment

The undersigned hereby acknowledges and agrees that as to the Certificates being registered in its name, the sole beneficial owner thereof is and shall be the Purchaser identified above, for whom the undersigned is acting as nominee.

[NAME OF NOMINEE]

By: _____
(Authorized Officer)

By: _____
(Attorney-in-fact)

EXHIBIT G

FORM OF REQUEST FOR RELEASE

To:    Wells Fargo Bank, National Association
       1015 10th Avenue
       Minneapolis, Minnesota 55414

RE:    Custodial Agreement, dated as of March 30, 2007, among SACO I Inc., as depositor,
       EMC Mortgage Corporation, as seller, Wells Fargo Bank, National Association as
       master servicer, securities administrator and custodian, and Citibank, N.A., as trustee

       In connection with the administration of the Mortgage Loans held by you pursuant to the
above-captioned Custodial Agreement, we request the release, and hereby acknowledge receipt,
of the Mortgage File for the Mortgage Loan described below, for the reason indicated.

Mortgage Loan Number:

Mortgagor Name, Address & Zip Code:

Reason for Requesting Documents (check one):

_____    1.    Mortgage Paid in Full and proceeds have been deposited into the
                Custodial Account

_____    2.    Foreclosure

_____    3.    Substitution

_____    4.    Other Liquidation

_____    5.    Nonliquidation          Reason:_____

_____    6.    California Mortgage Loan paid in full

By: _____
       (authorized signer)


Issuer: _____
Address: _____

Date: _____

EXHIBIT H

DTC LETTER OF REPRESENTATIONS

[Please see tab # 31]

## EXHIBIT I

## SCHEDULE OF MORTGAGE LOANS WITH LOST NOTES

[Provided Upon Request]

EXHIBIT J

[RESERVED]

EXHIBIT K

FORM OF CUSTODIAL AGREEMENT

[Please see tab # 10]

## EXHIBIT L

### FORM OF MORTGAGE LOAN PURCHASE AGREEMENT

[Please see tab # 9]

EXHIBIT M

[RESERVED]

# EXHIBIT N

## SWAP AGREEMENT

[Please see tabs # 13 & # 14]

EXHIBIT O

[RESERVED]

EXHIBIT P

[RESERVED]

EXHIBIT Q

[RESERVED]

## EXHIBIT R-1

### FORM OF GMACM SERVICING AGREEMENT

[Please see tab # 7]

# EXHIBIT R-2

## FORM OF GMACM ASSIGNMENT, ASSUMPTION AND RECOGNITION AGREEMENT

[Please see tab # 7]

EXHIBIT R-3

FORM OF PHH SERVICING AGREEMENT

[Please see tab # 8]

EXHIBIT R-4

FORM OF PHH ASSIGNMENT, ASSUMPTION AND RECOGNITION AGREEMENT

[Please see tab # 8]

EXHIBIT S

POLICY

[Please see tab # 21]