If on such date fewer than two quotations are provided as requested, the rate will be the arithmetic mean of the rates quoted by one or more major banks in New York City, selected by the Trustee after consultation with the Master Servicer, as of 11:00 a.m., New York City time, on such date for loans in U.S. Dollars to leading European banks for a period of one month in amounts approximately equal to the aggregate Certificate Principal Balance of the LIBOR Certificates then outstanding. If no such quotations can be obtained, the rate will be LIBOR for the prior Distribution Date; provided however, if, under the priorities described above, LIBOR for a Distribution Date would be based on LIBOR for the previous Distribution Date for the third consecutive Distribution Date, the Trustee, after consultation with the Master Servicer, shall select an alternative comparable index (over which the Trustee has no control), used for determining one-month Eurodollar lending rates that is calculated and published (or otherwise made available) by an independent party.

The establishment of LIBOR by the Trustee and the Master Servicer on any LIBOR Rate Adjustment Date and the Master Servicer's subsequent calculation of the Pass-Through Rate applicable to the LIBOR Certificates for the relevant Interest Accrual Period, in the absence of manifest error, will be final and binding.

Promptly following each LIBOR Rate Adjustment Date the Trustee shall supply the Master Servicer with the results of its determination of LIBOR on such date. Furthermore, the Trustee will supply to any Certificateholder so requesting by telephone by calling (800) 735-7777 the Pass-Through Rate on the LIBOR Certificates for the current and the immediately preceding Interest Accrual Period.

## Section 1.03. **Determination of MTA.**

MTA for any Interest Accrual Period will be determined as described below.

MTA shall be established by the Trustee for each Interest Accrual Period. MTA is a per annum rate equal to the twelve-month moving average monthly yield on United States Treasury securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in statistical Release No. H.15(519), or the Release, determined by averaging the monthly yield for the most recent twelve months. The MTA used for each Interest Accrual Period will be the most recent MTA figure available as of the related MTA Determination Date. If MTA is no longer available, the new index for the Class A Certificates will be LIBOR.

The establishment of MTA by the Trustee and the Master Servicer's subsequent calculation of the Pass-Through Rates applicable to the Class A Certificates for the relevant Interest Accrual Period, in the absence of manifest error, will be final and binding.

Promptly following each MTA Determination Date the Trustee shall supply the Master Servicer with the results of its determination of MTA on such date.

## Section 1.04. **Use of Words and Phrases**.

"Herein," "hereby," "hereunder," "hereof," "hereinbefore," "hereinafter" and other equivalent words refer to the Pooling and Servicing Agreement as a whole. All references herein to Articles, Sections or Subsections shall mean the corresponding Articles, Sections and

Subsections in the Pooling and Servicing Agreement. The definitions set forth herein include both the singular and the plural.

## ARTICLE II

## CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES

**Section 2.01.    Conveyance of Mortgage Loans.**    (See Section 2.01 of the Standard Terms.)

**Section 2.02.    Acceptance by Trustee.**    (See Section 2.02 of the Standard Terms.)

**Section 2.03.    Representations, Warranties and Covenants of the Master Servicer and the Company.**

(a)    For representations, warranties and covenants of the Master Servicer, see Section 2.03(a) of the Standard Terms.

(b)    The Company hereby represents and warrants to the Trustee for the benefit of Certificateholders that as of the Closing Date (or, if otherwise specified below, as of the date so specified):

(i)    No Mortgage Loan is 30 or more days Delinquent in payment of principal and interest as of the Cut-off Date and no Mortgage Loan has been so Delinquent more than once in the 12-month period prior to the Cut-off Date;

(ii)    The information set forth in Exhibit One hereto with respect to each Mortgage Loan or the Mortgage Loans, as the case may be, is true and correct in all material respects at the date or dates respecting which such information is furnished;

(iii)    The Mortgage Loans are payment-option adjustable-rate mortgage loans with a negative amortization feature with Monthly Payments due, with respect to a majority of the Mortgage Loans, on the first day of each month and terms to maturity at origination or modification of not more than 40 years;

(iv)    To the best of the Company's knowledge, if a Mortgage Loan is secured by a Mortgaged Property with a Loan-to-Value Ratio at origination in excess of 80%, such Mortgage Loan is the subject of a Primary Insurance Policy that insures (a) at least 35% of the Stated Principal Balance of the Mortgage Loan at origination if the Loan-to-Value Ratio is between 100.00% and 95.01%, (b) at least 30% of the Stated Principal Balance of the Mortgage Loan at origination if the Loan-to-Value Ratio is between 95.00% and 90.01%, (c) at least 25% of such balance if the Loan-to-Value Ratio is between 90.00% and 85.01% and (d) at least 12% of such balance if the Loan-to-Value Ratio is between 85.00% and 80.01%. To the best of the Company's knowledge, each such Primary Insurance Policy is in full force and effect and the Trustee is entitled to the benefits thereunder;

(v)    The issuers of the Primary Insurance Policies are insurance companies whose claims-paying abilities are currently acceptable to each Rating Agency;

(vi)    No more than 0.9% of the Group I Loans by aggregate Stated Principal Balance as of the Cut-off Date are secured by Mortgaged Properties located in any one zip code area in California, and no more than 0.5% of the Group I Loans by aggregate Stated Principal Balance as of the Cut-off Date are secured by Mortgaged Properties located in any one zip code area outside California; and no more than 0.8% of the Group II Loans by aggregate Stated Principal Balance as of the Cut-off Date are secured by Mortgaged Properties located in any one zip code area in Arizona, and no more than 0.8% of the Group II Loans by aggregate Stated Principal Balance as of the Cut-off Date are secured by Mortgaged Properties located in any one zip code area outside Arizona;

(vii)    The improvements upon the Mortgaged Properties are insured against loss by fire and other hazards as required by the Program Guide, including flood insurance if required under the National Flood Insurance Act of 1968, as amended.    The Mortgage requires the Mortgagor to maintain such casualty insurance at the Mortgagor's expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at the Mortgagor's expense and to seek reimbursement therefor from the Mortgagor;

(viii)    Immediately prior to the assignment of the Mortgage Loans to the Trustee, the Company had good title to, and was the sole owner of, each Mortgage Loan free and clear of any pledge, lien, encumbrance or security interest (other than rights to servicing and related compensation) and such assignment validly transfers ownership of the Mortgage Loans to the Trustee free and clear of any pledge, lien, encumbrance or security interest;

(ix)    No more than 86.47% of the Group I Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a reduced loan documentation program, no more than 0.63% of the Group I Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a no-stated income program, and no more than 0.77% of the Group I Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a no income/no asset program; and no more than 90.83% of the Group II Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a reduced loan documentation program, no more than 0.90% of the Group II Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a no-stated income program, and no more than 0.20% of the Group II Loans by aggregate Stated Principal Balance as of the Cut-off Date were underwritten under a no income/no asset program;

(x)    Except with respect to no more than 12.91% of the Group I Loans by aggregate Stated Principal Balance as of the Cut-off Date and no more than 3.8% of the Group II Loans by aggregate Stated Principal Balance as of the

Cut-off Date, the Mortgagor represented in its loan application with respect to the related Mortgage Loan that the Mortgaged Property would be owner-occupied;

(xi)    None of the Mortgage Loans is a Buy-Down Mortgage Loan;

(xii)    Each Mortgage Loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9) without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or Treasury Regulation Section 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9);

(xiii)    A policy of title insurance was effective as of the closing of each Mortgage Loan and is valid and binding and remains in full force and effect, unless the Mortgaged Properties are located in the State of Iowa and an attorney's certificate has been provided as described in the Program Guide;

(xiv)    No Mortgage Loan is a Cooperative Loan;

(xv)    With respect to each Mortgage Loan originated under a "streamlined" Mortgage Loan program (through which no new or updated appraisals of Mortgaged Properties are obtained in connection with the refinancing thereof), the related Seller has represented that either (a) the value of the related Mortgaged Property as of the date the Mortgage Loan was originated was not less than the appraised value of such property at the time of origination of the refinanced Mortgage Loan or (b) the Loan-to-Value Ratio of the Mortgage Loan as of the date of origination of the Mortgage Loan generally meets the Company's underwriting guidelines;

(xvi)    Interest on each Mortgage Loan is calculated on the basis of a 360-day year consisting of twelve 30-day months;

(xvii)    None of the Mortgage Loans contain in the related Mortgage File a Destroyed Mortgage Note;

(xviii)    None of the Mortgage Loans has been made to International Borrowers;

(xix)    No Mortgage Loan provides for payments that are subject to reduction by withholding taxes levied by any foreign (non-United States) sovereign government; and

(xx)    None of the Mortgage Loans are Additional Collateral Loans and none of the Mortgage Loans are Pledged Asset Loans.

It is understood and agreed that the representations and warranties set forth in this Section 2.03(b) shall survive delivery of the respective Mortgage Files to the Trustee or any Custodian.

Upon discovery by any of the Company, the Master Servicer, the Trustee or any Custodian of a breach of any of the representations and warranties set forth in this Section 2.03(b) that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (any Custodian being so obligated under a Custodial Agreement); provided, however, that in the event of a breach of the representation and warranty set forth in Section 2.03(b)(xii), the party discovering such breach shall give such notice within five days of discovery. Within 90 days of its discovery or its receipt of notice of breach, the Company shall either (i) cure such breach in all material respects or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that the Company shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; provided further that if the omission or defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase must occur within 90 days from the date such breach was discovered. Any such substitution shall be effected by the Company under the same terms and conditions as provided in Section 2.04 for substitutions by Residential Funding. It is understood and agreed that the obligation of the Company to cure such breach or to so purchase or substitute for any Mortgage Loan as to which such a breach has occurred and is continuing shall constitute the sole remedy respecting such breach available to the Certificateholders or the Trustee on behalf of the Certificateholders.

Section 2.04.    **Representations and Warranties of Sellers.**(See Section 2.04 of the Standard Terms)

Section 2.05.    **Execution and Authentication of Certificates/Issuance of Certificates Evidencing Interests in REMIC I and REMIC II**.

The Trustee acknowledges the assignment to it of the Mortgage Loans and the delivery of the Mortgage Files to it, or any Custodian on its behalf, subject to any exceptions noted, together with the assignment to it of all other assets included in the Trust Fund and/or the applicable REMIC, receipt of which is hereby acknowledged. Concurrently with such delivery and in exchange therefor, the Trustee, pursuant to the written request of the Company executed by an officer of the Company, has executed and caused to be authenticated and delivered to or upon the order of the Company the Class R-I Certificates in authorized denominations which together with the REMIC I Regular Interests, evidence the entire beneficial interest in REMIC I, and the Class R-II Certificates in authorized denominations which together with the REMIC II Regular Interests, evidence the entire beneficial interest in REMIC II.

Section 2.06.    **Conveyance of Uncertificated Regular Interests; Acceptance by the Trustee**.

The Company, as of the Closing Date, and concurrently with the execution and delivery hereof, does hereby assign without recourse all the right, title and interest of the Company in and to the Uncertificated Regular Interests to the Trustee for the benefit of the Holders of each Class

of Certificates (other than the Class R-I or Class R-II Certificates). The Trustee acknowledges receipt of the Uncertificated Regular Interests and declares that it holds and will hold the same in trust for the exclusive use and benefit of all present and future Holders of each Class of Certificates (other than the Class R-I Certificates or Class R-II Certificates). The rights of the Holders of each Class of Certificates (other than the Class R-I Certificates or Class R-II Certificates) to receive distributions from the proceeds of REMIC III in respect of such Classes, and all ownership interests of the Holders of such Classes in such distributions, shall be as set forth in this Agreement.

### Section 2.07. **Issuance of Certificates Evidencing Interest in REMIC III**.

The Trustee acknowledges the assignment to it of the Uncertificated Regular Interests and, concurrently therewith and in exchange therefor, pursuant to the written request of the Company executed by an officer of the Company, the Trustee has executed and caused to be authenticated and delivered to or upon the order of the Company, all Classes of Certificates (other than the Class R-I Certificates and Class R-II Certificates) in authorized denominations, which evidence the entire beneficial interest in REMIC III.

### Section 2.08. **Purposes and Powers of the Trust**. (See Section 2.08 of the Standard Terms.)

### Section 2.09. **Agreement Regarding Ability to Disclose**.

The Company, the Master Servicer and the Trustee hereby agree, notwithstanding any other express or implied agreement to the contrary, that any and all Persons, and any of their respective employees, representatives, and other agents may disclose, immediately upon commencement of discussions, to any and all Persons, without limitation of any kind, the tax treatment and tax structure of the transaction and all materials of any kind (including opinions or other tax analyses) that are provided to any of them relating to such tax treatment and tax structure. For purposes of this paragraph, the terms "tax treatment" and "tax structure" are defined under Treasury Regulation § 1.6011-4(c).

## ARTICLE III

## ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

**Section 3.01**    **Master Servicer to Act as Servicer**.  (See Section 3.01 of the Standard Terms)

**Section 3.02**    **Subservicing Agreements Between Master Servicer and Subservicers; Enforcement of Subservicers' and Sellers' Obligations**.  (See Section 3.02 of the Standard Terms)

**Section 3.03**    **Successor Subservicers**.  (See Section 3.03 of the Standard Terms)

**Section 3.04**    **Liability of the Master Servicer**.  (See Section 3.04 of the Standard Terms)

**Section 3.05**    **No Contractual Relationship Between Subservicer and Trustee or Certificateholders**.  (See Section 3.05 of the Standard Terms)

**Section 3.06**    **Assumption or Termination of Subservicing Agreements by Trustee**.  (See Section 3.06 of the Standard Terms)

**Section 3.07**    **Collection of Certain Mortgage Loan Payments; Deposit to Custodial Account**.

(a)    The Master Servicer shall make reasonable efforts to collect all payments called for under the terms and provisions of the Mortgage Loans, and shall, to the extent such procedures shall be consistent with this Agreement and the terms and provisions of any related Primary Insurance Policy, follow such collection procedures as it would employ in its good faith business judgment and which are normal and usual in its general mortgage servicing activities. Consistent with the foregoing, the Master Servicer may in its discretion (i) waive any late payment charge or any prepayment charge or penalty interest in connection with the prepayment of a Mortgage Loan and (ii) extend the Due Date for payments due on a Mortgage Loan in accordance with the Program Guide; provided, however, that the Master Servicer shall first determine that any such waiver or extension will not impair the coverage of any related Primary Insurance Policy or materially adversely affect the lien of the related Mortgage. Notwithstanding anything in this Section to the contrary, the Master Servicer shall not enforce any prepayment charge to the extent that such enforcement would violate any applicable law. In the event of any such arrangement, the Master Servicer shall make timely advances on the related Mortgage Loan during the scheduled period in accordance with the amortization schedule of such Mortgage Loan without modification thereof by reason of such arrangements unless otherwise agreed to by the Holders of the Classes of Certificates affected thereby; provided, however, that no such extension shall be made if any such advance would be a Nonrecoverable Advance. Consistent with the terms of this Agreement, the Master Servicer may also waive, modify or vary any term of any Mortgage Loan or consent to the postponement of strict compliance with any such term or in any manner grant indulgence to any Mortgagor if in the Master Servicer's determination such

59

waiver, modification, postponement or indulgence is not materially adverse to the interests of the Certificateholders or the Certificate Insurer (taking into account any estimated Realized Loss that might result absent such action); provided, however, that the Master Servicer may not modify materially or permit any Subservicer to modify any Mortgage Loan, including without limitation any modification that would change the Mortgage Rate, forgive the payment of any principal or interest (unless in connection with the liquidation of the related Mortgage Loan or except in connection with prepayments to the extent that such reamortization is not inconsistent with the terms of the Mortgage Loan), capitalize any amounts owing on the Mortgage Loan by adding such amount to the outstanding principal balance of the Mortgage Loan, or extend the final maturity date of such Mortgage Loan, unless such Mortgage Loan is in default or, in the judgment of the Master Servicer, such default is reasonably foreseeable; provided, further, that (1) no such modification shall reduce the interest rate on a Mortgage Loan below one-half of the Mortgage Rate as in effect on the Cut-off Date, but not less than the sum of the rates at which the Servicing Fee and the Subservicing Fee with respect to such Mortgage Loan accrues plus the rate at which the premium paid to the Certificate Insurer, if any, accrues, (2) the final maturity date for any Mortgage Loan shall not be extended beyond the Maturity Date, (3) the Stated Principal Balance of all Reportable Modified Mortgage Loans subject to Servicing Modifications (measured at the time of the Servicing Modification and after giving effect to any Servicing Modification) can be no more than five percent of the aggregate principal balance of the Mortgage Loans as of the Cut-off Date, unless such limit is increased from time to time with the consent of the Rating Agencies and the Certificate Insurer, if any. In addition, any amounts owing on a Mortgage Loan added to the outstanding principal balance of such Mortgage Loan must be fully amortized over the remaining term of such Mortgage Loan, and such amounts may be added to the outstanding principal balance of a Mortgage Loan only once during the life of such Mortgage Loan. Also, the addition of such amounts described in the preceding sentence shall be implemented in accordance with the Program Guide and may be implemented only by Subservicers that have been approved by the Master Servicer for such purpose. In connection with any Curtailment of a Mortgage Loan, the Master Servicer, to the extent not inconsistent with the terms of the Mortgage Note and local law and practice, may permit the Mortgage Loan to be reamortized such that the Monthly Payment is recalculated as an amount that will fully amortize the remaining Stated Principal Balance thereof by the original Maturity Date based on the original Mortgage Rate; provided, that such re-amortization shall not be permitted if it would constitute a reissuance of the Mortgage Loan for federal income tax purposes, except if such reissuance is described in Treasury Regulation Section 1.860G-2(b)(3) (See Section 3.07(a) of the Standard Terms)

(b)    The Master Servicer shall establish and maintain a Custodial Account in which the Master Servicer shall deposit or cause to be deposited on a daily basis, except as otherwise specifically provided herein, the following payments and collections remitted by Subservicers or received by it in respect of the Mortgage Loans subsequent to the Cut-off Date (other than in respect of principal and interest on the Mortgage Loans due on or before the Cut-off Date):

(i)    All payments on account of principal, including Principal Prepayments made by Mortgagors on the Mortgage Loans and the principal component of any Subservicer Advance or of any REO Proceeds received in connection with an REO Property for which an REO Disposition has occurred;

(ii)    All payments on account of interest at the Adjusted Mortgage Rate on the Mortgage Loans, including Buydown Funds, if any, and the interest component of any Subservicer Advance or of any REO Proceeds received in connection with an REO Property for which an REO Disposition has occurred;

(iii)    Insurance Proceeds, Subsequent Recoveries and Liquidation Proceeds (net of any related expenses of the Subservicer);

(iv)    All proceeds of any Mortgage Loans purchased pursuant to Section 2.02, 2.03, 2.04 or 4.07 (including amounts received from Residential Funding pursuant to the last paragraph of Section 4 of the Assignment Agreement in respect of any liability, penalty or expense that resulted from a breach of the Compliance With Laws Representation and all amounts required to be deposited in connection with the substitution of a Qualified Substitute Mortgage Loan pursuant to Section 2.03 or 2.04);

(v)    Any amounts required to be deposited pursuant to Section 3.07(c) or 3.21;

(vi)    All amounts transferred from the Certificate Account to the Custodial Account in accordance with Section 4.02(a);

(vii)    Any amounts realized by the Subservicer and received by the Master Servicer in respect of any Additional Collateral;

(viii)    Any amounts received by the Master Servicer in respect of Pledged Assets; and

(ix)    Any amounts received by the Master Servicer in connection with any Prepayment Charges on the Prepayment Charge Loans.

The foregoing requirements for deposit in the Custodial Account shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments on the Mortgage Loans which are not part of the Trust Fund (consisting of payments in respect of principal and interest on the Mortgage Loans due on or before the Cut-off Date) and payments or collections in the nature of late payment charges or assumption fees may but need not be deposited by the Master Servicer in the Custodial Account. In the event any amount not required to be deposited in the Custodial Account is so deposited, the Master Servicer may at any time withdraw such amount from the Custodial Account, any provision herein to the contrary notwithstanding. The Custodial Account may contain funds that belong to one or more trust funds created for mortgage pass-through certificates of other series and may contain other funds respecting payments on Mortgage Loans belonging to the Master Servicer or serviced or master serviced by it on behalf of others. Notwithstanding such commingling of funds, the Master Servicer shall keep records that accurately reflect the funds on deposit in the Custodial Account that have been identified by it as being attributable to the Mortgage Loans.

With respect to Insurance Proceeds, Liquidation Proceeds, REO Proceeds and the proceeds of the purchase of any Mortgage Loan pursuant to Sections 2.02, 2.03, 2.04 and 4.07 received in any calendar month, the Master Servicer may elect to treat such amounts as included in the Available Distribution Amount for the Distribution Date in the month of receipt, but is not

obligated to do so. If the Master Servicer so elects, such amounts will be deemed to have been received (and any related Realized Loss shall be deemed to have occurred) on the last day of the month prior to the receipt thereof.

**(c)**          (See Section 3.07(c) of the Standard Terms)

**(d)**          (See Section 3.07(d) of the Standard Terms)

**(e)**     Notwithstanding Section 3.07(a), The Master Servicer shall not waive (or permit a Subservicer to waive) any Prepayment Charge unless: (i) the enforceability thereof shall have been limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally, (ii) the enforcement thereof is illegal, or any local, state or federal agency has threatened legal action if the prepayment penalty is enforced, (iii) the collectability thereof shall have been limited due to acceleration in connection with a foreclosure or other involuntary payment or (iv) such waiver is standard and customary in servicing similar Mortgage Loans and relates to a default or a reasonably foreseeable default and would, in the reasonable judgment of the Master Servicer, maximize recovery of total proceeds taking into account the value of such Prepayment Charge and the related Mortgage Loan. In no event will the Master Servicer waive a Prepayment Charge in connection with a refinancing of a Mortgage Loan that is not related to a default or a reasonably foreseeable default. If a Prepayment Charge is waived, but does not meet the standards described above, then the Master Servicer is required to deposit into the Custodial Account the amount of such waived Prepayment Charge at the time that the amount prepaid on the related Mortgage Loan is required to be deposited into the Custodial Account. Notwithstanding any other provisions of this Agreement, any payments made by the Master Servicer in respect of any waived Prepayment Charges pursuant to this Section shall be deemed to be paid outside of the Trust Fund and not part of any REMIC.

**Section 3.08.**  **Subservicing Accounts; Servicing Accounts**     (See Section 3.08 of the Standard Terms)

**Section 3.09.**  **Access to Certain Documentation and  Information Regarding the Mortgage Loans** (See Section 3.09 of the Standard Terms)

**Section 3.10.**  **Permitted Withdrawals from the Custodial Account**     (See     Section 3.10 of the Standard Terms)

**Section 3.11.**  **Maintenance of the Primary Insurance    Policies;  Collections Thereunder**(See Section 3.11 of the Standard Terms)

**Section 3.12.**  **Maintenance of Fire Insurance and  Omissions and Fidelity Coverage** (See Section 3.12 of the Standard Terms)

**Section 3.13.**  **Enforcement of Due-on-Sale Clauses; Assumption and  Modification Agreements; Certain Assignments** (See Section 3.13 of the Standard Terms)

**Section 3.14.**  **Realization Upon Defaulted Mortgage Loans**

**(a)**   (See Section 3.14(a) of the Standard Terms)

**(b)**   (See Section 3.14(b) of the Standard Terms)

**(c)**   (See Section 3.14(c) of the Standard Terms)

**(d)**   The proceeds of any Cash Liquidation, REO Disposition or purchase or repurchase of any Mortgage Loan pursuant to the terms of this Agreement, as well as any recovery resulting from a collection of Liquidation Proceeds, Insurance Proceeds or REO Proceeds, will be applied in the following order of priority: first, to reimburse the Master Servicer or the related Subservicer in accordance with Section 3.10(a)(ii); second, to the Certificateholders to the extent of accrued and unpaid interest on the Mortgage Loan, and any related REO Imputed Interest, at the Net Mortgage Rate (or the Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) to the Due Date prior to the Distribution Date on which such amounts are to be distributed; third, to the Certificateholders as a recovery of principal on the Mortgage Loan (or REO Property); fourth, to all Servicing Fees and Subservicing Fees payable therefrom (and the Master Servicer and the Subservicer shall have no claims for any deficiencies with respect to such fees which result from the foregoing allocation); and fifth, to Foreclosure Profits; provided, however, that the application of proceeds to Certificateholders pursuant to the second and third clauses, above, shall be subject to the priorities of Section 4.02, including the provisions providing for reimbursement to the Certificate Insurance of Cumulative Insurance Payments.

**(e)**   (See Section 3.14(e) of the Standard Terms)

**Section 3.15.**   **Trustee to Cooperate; Release of Mortgage Files**   (See Section 3.15 of the Standard Terms)

**Section 3.16.**   **Servicing and Other Compensation; Compensating Interest**

**(a)**   (See Section 3.16(a) of the Standard Terms)

**(b)**   Additional servicing compensation in the form of assumption fees, late payment charges, investment income on amounts in the Custodial Account or the Certificate Account or otherwise (but not including Prepayment Charges) shall be retained by the Master Servicer or the Subservicer to the extent provided herein, subject to clause (e) below.  Prepayment charges shall be deposited into the Certificate Account and shall be paid on each Distribution Date to the holders of the Class SB Certificates.

**(c)**   (See Section 3.16(c) of the Standard Terms)

**(d)**   (See Section 3.16(d) of the Standard Terms)

**(e)**   (See Section 3.16(e) of the Standard Terms)

**Section 3.17.** **Reports to the Trustee and the Company** (See Section 3.17 of the Standard Terms)

**Section 3.18.** **Annual Statement as to Compliance** (See Section 3.18 of the Standard Terms)

**Section 3.19.** **Annual Independent Public Accountants' Servicing Report** (See Section 3.19 of the Standard Terms)

**Section 3.20.** **Rights of the Company in Respect of the Master Servicer** (See Section 3.20 of the Standard Terms)

**Section 3.21.** **Administration of Buydown Funds** (See Section 3.21 of the Standard Terms)

**Section 3.22** **Advance Facility** (See Section 3.22 of the Standard Terms)

# ARTICLE IV

# PAYMENTS TO CERTIFICATEHOLDERS

**Section 4.01.  Certificate Account**.  (See Section 4.01 of the Standard Terms.)

**Section 4.02.  Distributions**.

(a)     On each Distribution Date, the Trustee (or the Paying Agent on behalf of the Trustee) shall allocate and distribute the Available Distribution Amount to the extent on deposit in the Certificate Account for such date to the interests issued in respect of REMIC I, REMIC II and REMIC III as specified in this Section.

(b)     (1)     On each Distribution Date, the REMIC I Distribution Amount shall be distributed by REMIC I to REMIC II on account of the REMIC I Regular Interests in the amounts and with the priorities set forth in the definition thereof.

(2)     On each Distribution Date, the REMIC II Distribution Amount shall be distributed by REMIC II to REMIC III on account of the REMIC II Regular Interests in the amounts and with the priorities set forth in the definition thereof.

(3)     Notwithstanding the distributions on the REMIC I Regular Interests described in this Section 4.02(b), distribution of funds from the Certificate Account shall be made only in accordance with Section 4.02(c).

(c)     On each Distribution Date (x) the Master Servicer on behalf of the Trustee or (y) the Paying Agent appointed by the Trustee, shall distribute (a) to the Certificate Insurer, the Insurance Premium, any distribution pursuant to Section 4.02(a)(i)(B), below, and any distribution pursuant to Section 4.02(a)(ii), below, and (b) to each Certificateholder of record on the next preceding Record Date (other than as provided in Section 9.01 of the Standard Terms respecting the final distribution) either in immediately available funds (by wire transfer or otherwise) to the account of such Certificateholder at a bank or other entity having appropriate facilities therefor, if such Certificateholder has so notified the Master Servicer or the Paying Agent, as the case may be, or, if such Certificateholder has not so notified the Master Servicer or the Paying Agent by the Record Date, by check mailed to such Certificateholder at the address of such Holder appearing in the Certificate Register, such Certificateholder's share (which share with respect to each Class of Certificates, shall be based on the aggregate of the Percentage Interests represented by Certificates of the applicable Class held by such Holder) of the following amounts, in the following order of priority, in each case to the extent of the Available Distribution Amount (net of the Insurance Premium) on deposit in the Certificate Account, and, in the case of the Class I-A-2 Certificates and Class II-A-3 Certificates, together with any related Certificate Insurance Payment pursuant to Section 13.02 of this Series Supplement (except that, with respect to clause (i) below, such distribution shall be to the extent and in the priority of the Class A Interest Distribution Priority, and with respect to clause (viii)(B) below, such distribution shall be to the extent of Prepayment Charges on deposit in the Certificate Account):

(i)        (A) first, to the Class A Certificateholders, on a pro rata basis based upon the amount of Accrued Certificate Interest accrued for such Classes, the Accrued Certificate Interest payable on the Class A Certificates with respect to such Distribution Date, plus any related amounts accrued pursuant to this clause (i)(A) but remaining unpaid from any prior Distribution Date, which amount shall be allocated pursuant to the Class A Interest Distribution Priority, being paid from and in reduction of the Available Distribution Amount for such Distribution Date;

(B)        second, to the Certificate Insurer, as subrogee of the Insured Certificateholders, reimbursement of Cumulative Insurance Payments to the extent of any Certificate Insurance Payments paid in respect of interest on the Insured Certificates;

(C)        third, to the Class M-1 Certificates, Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(D)        fourth, to the Class M-2 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(E)        fifth, to the Class M-3 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any related Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(F)        sixth, to the Class M-4 Certificates, Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(G)        seventh, to the Class M-5 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(H)        eight, to the Class M-6 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any related Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution

Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(I)    ninth, to the Class M-7 Certificates, Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date; and

(J)    tenth, to the Class M-8 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(K)    eleventh, to the Class M-9 Certificates, Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date; and

(L)    twelfth, to the Class M-10 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

(ii)    to the Class A Certificateholders, the Class M Certificateholders, and the Certificate Insurer, from the amount, if any, of Available Distribution Amount remaining after the foregoing distributions, the Principal Distribution Amount, which amount shall be allocated in the manner and priority set forth in Section 4.02(d), until the aggregate Certificate Principal Balance of each Class of Class A Certificates has been reduced to zero, remaining Cumulative Insurance Payments have been reduced to zero and the aggregate Certificate Principal Balance of each Class of Class M Certificates has been reduced to zero;

(iii)    to the Class A Certificateholders and Class M Certificateholders from the amount, if any, of Excess Cash Flow remaining after the foregoing distributions, the amount of any related Prepayment Interest Shortfalls with respect to the Mortgage Loans for that Distribution Date, to the extent not covered by Compensating Interest on such Distribution Date, which amount shall be allocated to the Class A Certificateholders and Class M Certificateholders on a pro rata basis, based on the amount of Prepayment Interest Shortfalls allocated thereto for such Distribution Date;

(iv)        to the Class A Certificateholders and Class M Certificateholders from the amount, if any, of Excess Cash Flow remaining after the foregoing distributions, the amount of any Prepayment Interest Shortfalls allocated thereto remaining unpaid from prior Distribution Dates together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date, which amount shall be allocated to the Class A Certificateholders and Class M Certificateholders on a pro rata basis, based on the amount of Prepayment Interest Shortfalls remaining unpaid;

(v)        to the Class A Certificates and Class M Certificates from the amount, if any, of Excess Cash Flow remaining after the foregoing distributions the amount of any related Basis Risk Shortfall on such Certificates (after giving effect, with respect to the initial Distribution Date, to payments made from the Basis Risk Shortfall Reserve Fund), which amount shall be allocated first, to the Class A Certificates on a pro rata basis, based on their respective Basis Risk Shortfalls for such Distribution Date, and then, sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8, Class M-9 and Class M-10 Certificateholders, in that order;

(vi)        to pay the holders of the Class A and Class M Certificates, on a pro rata basis, based on Relief Act Shortfalls allocated thereto for such Distribution Date, the amount of any Relief Act Shortfalls allocated thereto with respect to the Mortgage Loans for such Distribution Date,

(vii)        to the Class A Certificateholders and the Class M Certificateholders, the principal portion of any Realized Losses previously allocated first, to the Class A Certificateholders on a pro rata basis, based on their respective principal portion of any Realized Losses previously allocated to those Certificates and remaining unreimbursed, and then to those Certificates and remaining unreimbursed, which amount shall be allocated sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8, Class M-9 and Class M-10 Certificateholders, in that order;

(viii)        to the Class SB Certificates, (A) from the amount, if any, of the Available Distribution Amount remaining after the foregoing distributions, the sum of (I) Accrued Certificate Interest thereon, (II) the amount of any Overcollateralization Reduction Amount for such Distribution Date and (III) for any Distribution Date after the Certificate Principal Balance of each Class A Certificate and Class M Certificate has been reduced to zero, the Overcollateralization Amount, and (B) from prepayment charges on deposit in the Certificate Account, any prepayment charges received on the Mortgage Loans during the related Prepayment Period.

(ix)        to the Class R Certificateholders, the balance, if any, of the Available Distribution Amount.

All payments of amounts in respect of Basis Risk Shortfall made pursuant to Section 4.02(c)(vi) shall, for federal income tax purposes, be deemed to have been distributed from REMIC III to the holder of the Class SB Certificates and then paid outside of any REMIC to the recipients thereof pursuant to an interest rate cap contract. By accepting their Certificates the holders of the Certificates agree to treat such payments in the manner described in the preceding sentence for purposes of filing their income tax returns.

(d)    The Principal Distribution Amount payable to the Class A Certificateholders and the Class M Certificateholders shall be distributed as follows:

(i)    first, concurrently, (i) the Group I Principal Distribution Amount shall be distributed, pro rata, to the Class I-A-1 Certificateholders and Class II-A-2 Certificateholders, in each case until the Certificate Principal Balance thereof has been reduced to zero, and (i) the Group II Principal Distribution Amount shall be distributed, pro rata, to the Class II-A-1, Class II-A-2 and Class II-A-3 Certificateholders, in each case until the Certificate Principal Balance thereof has been reduced to zero;

(ii)    second, after application of payments pursuant to clause (d)(i), concurrently, (i) the Group II Principal Distribution Amount shall be distributed, pro rata, to the Class I-A-1 Certificateholders and Class I-A-2 Certificateholders, in each case until the Certificate Principal Balance thereof has been reduced to zero and (ii) the Group I Principal Distribution Amount shall be distributed, pro rata, to the Class II-A-1, Class II-A-2 and Class II-A-3 Certificateholders, in each case until the Certificate Principal Balance thereof has been reduced to zero;

(iii)    third, Cumulative Insurance Payments shall be paid to the Certificate Insurer;

(iv)    fourth, the Class M-1 Principal Distribution Amount shall be distributed to the Class M-1 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(v)    fifth, the Class M-2 Principal Distribution Amount shall be distributed to the Class M-2 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(vi)    sixth, the Class M-3 Principal Distribution Amount shall be distributed to the Class M-3 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(vii)    seventh, the Class M-4 Principal Distribution Amount shall be distributed to the Class M-4 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(viii)    eighth, the Class M-5 Principal Distribution Amount shall be distributed to the Class M-5 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(ix)    ninth, the Class M-6 Principal Distribution Amount shall be distributed to the Class M-6 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(x)    tenth, the Class M-7 Principal Distribution Amount shall be distributed to the Class M-7 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(xi)    eleventh, the Class M-8 Principal Distribution Amount shall be distributed to the Class M-8 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(xii)    twelfth, the Class M-9 Principal Distribution Amount shall be distributed to the Class M-9 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(xiii)    thirteenth, the Class M-10 Principal Distribution Amount shall be distributed to the Class M-10 Certificates until the Certificate Principal Balance thereof has been reduced to zero.

(e)    Notwithstanding the foregoing clauses (c) and (d), upon the reduction of the Certificate Principal Balance of a Class of Class A Certificates or Class M Certificates to zero, such Class of Certificates will not be entitled to further distributions pursuant to Section 4.02, including, without limitation, the payment of current and unreimbursed Prepayment Interest Shortfalls pursuant to clauses (c)(iv) and (v) and the related Basis Risk Shortfalls pursuant to clause (c)(vi).

(f)    Each distribution with respect to a Book-Entry Certificate shall be paid to the Depository, as Holder thereof, and the Depository shall be solely responsible for crediting the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures. Each Depository Participant shall be responsible for disbursing such distribution to the Certificate Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm") for which it acts as agent. Each brokerage firm shall be responsible for disbursing funds to the Certificate Owners that it represents. None of the Trustee, the Certificate Registrar, the Company or the Master Servicer shall have any responsibility therefor.

(g)    Except as otherwise provided in Section 9.01 of the Standard Terms, if the Master Servicer anticipates that a final distribution with respect to any Class of Certificates will be made on a future Distribution Date, the Master Servicer shall, no later than 40 days prior to such final Distribution Date, notify the Trustee and the Trustee shall, not earlier than the 15th day and not later than the 25th day of the month next preceding the month of such final distribution, distribute, or cause to be distributed, to each Holder of such Class of Certificates a notice to the effect that: (i) the Trustee anticipates that the final distribution with respect to such Class of Certificates will be made on such Distribution Date but only upon presentation and surrender of such Certificates at the office of the Trustee or as otherwise specified therein, and (ii) no interest shall accrue on such Certificates from and after the end of the related Interest

Accrual Period. In the event that Certificateholders required to surrender their Certificates pursuant to Section 9.01(c) of the Standard Terms do not surrender their Certificates for final cancellation, the Trustee shall cause funds distributable with respect to such Certificates to be withdrawn from the Certificate Account and credited to a separate escrow account for the benefit of such Certificateholders as provided in Section 9.01(d) of the Standard Terms.

**(h)** On the initial Distribution Date, Basis Risk Shortfall amounts with respect to the initial Distribution Date, if any, will be paid to the Holders of the Class A Certificates and Class M Certificates, pro rata, based on the amount of Basis Risk Shortfalls for such Classes, from amounts withdrawn from the Basis Risk Shortfall Reserve Fund.

**(i)** On any Distribution Date, the Net Deferred Interest on a Loan Group will be allocated among the related Classes of Certificates in an aggregate amount equal to the excess, if any, for each such Class of (i) the interest accrued during the related Interest Accrual Period at the Pass-Through Rate for such Class, over (ii) the amount that would have been calculated as accrued interest during the related Interest Accrual Period had the Pass-Through Rate for such Class equaled the applicable Adjusted Rate Cap for such Class and for such Distribution Date. Any remaining Net Deferred Interest on that Distribution Date shall be allocated to the Class SB Certificates. Net Deferred Interest allocated to any Class of Certificates will be added as principal to the outstanding Certificate Principal Balance of such Class of Certificates.

**Section 4.03.** **Statements to Certificateholders; Statements to the Rating Agencies; Exchange Act Reporting**. (See Section 4.03 of the Standard Terms.)

**Section 4.04.** **Distribution of Reports to the Trustee and the Company; Advances by the Master Servicer**.

**(a)** (See Section 4.04(a) of the Standard Terms)

**(b)** On or before 2:00 P.M. New York time on each Certificate Account Deposit Date, the Master Servicer shall either (i) deposit in the Certificate Account from its own funds, or funds received therefor from the Subservicers, an amount equal to the Advances to be made by the Master Servicer in respect of the related Distribution Date, which shall be in an aggregate amount equal to the aggregate amount of Monthly Payments (with each interest portion thereof adjusted to the Net Mortgage Rate), less the amount of any related Servicing Modifications, Debt Service Reductions or reductions in the amount of interest collectable from the Mortgagor pursuant to the Servicemembers Civil Relief Act, as amended, or similar legislation or regulations then in effect, on the Outstanding Mortgage Loans as of the related Due Date, which Monthly Payments were not received as of the close of business as of the related Determination Date; provided that no Advance shall be made if it would be a Nonrecoverable Advance; and provided, further, that the Monthly Payment for purposes of this Section 4.04 shall mean the minimum monthly payment due under the Mortgage Note, net of the Servicing Fee and Subservicing Fee, (ii) withdraw from amounts on deposit in the Custodial Account and deposit in the Certificate Account all or a portion of the Amount Held for Future Distribution in discharge of any such Advance, or (iii) make advances in the form of any combination of (i) and (ii) aggregating the amount of such Advance. Any portion of the Amount Held for Future

Distribution so used shall be replaced by the Master Servicer by deposit in the Certificate Account on or before 11:00 A.M. New York time on any future Certificate Account Deposit Date to the extent that funds attributable to the Mortgage Loans that are available in the Custodial Account for deposit in the Certificate Account on such Certificate Account Deposit Date shall be less than payments to Certificateholders required to be made on the following Distribution Date. The Master Servicer shall be entitled to use any Advance made by a Subservicer as described in Section 3.07(b) that has been deposited in the Custodial Account on or before such Distribution Date as part of the Advance made by the Master Servicer pursuant to this Section 4.04. The amount of any reimbursement pursuant to Section 4.02(a) in respect of outstanding Advances on any Distribution Date shall be allocated to specific Monthly Payments due but delinquent for previous Due Periods, which allocation shall be made, to the extent practicable, to Monthly Payments which have been delinquent for the longest period of time. Such allocations shall be conclusive for purposes of reimbursement to the Master Servicer from recoveries on related Mortgage Loans pursuant to Section 3.10.

The determination by the Master Servicer that it has made a Nonrecoverable Advance or that any proposed Advance, if made, would constitute a Nonrecoverable Advance, shall be evidenced by an Officers' Certificate of the Master Servicer delivered to the Company and the Trustee.

If the Master Servicer determines as of the Business Day preceding any Certificate Account Deposit Date that it will be unable to deposit in the Certificate Account an amount equal to the Advance required to be made for the immediately succeeding Distribution Date, it shall give notice to the Trustee of its inability to advance (such notice may be given by telecopy), not later than 3:00 P.M., New York time, on such Business Day, specifying the portion of such amount that it will be unable to deposit. Not later than 3:00 P.M., New York time, on the Certificate Account Deposit Date the Trustee shall, unless by 12:00 Noon, New York time, on such day the Trustee shall have been notified in writing (by telecopy) that the Master Servicer shall have directly or indirectly deposited in the Certificate Account such portion of the amount of the Advance as to which the Master Servicer shall have given notice pursuant to the preceding sentence, pursuant to Section 7.01, (a) terminate all of the rights and obligations of the Master Servicer under this Agreement in accordance with Section 7.01 and (b) assume the rights and obligations of the Master Servicer hereunder, including the obligation to deposit in the Certificate Account an amount equal to the Advance for the immediately succeeding Distribution Date.

The Trustee shall deposit all funds it receives pursuant to this Section 4.04 into the Certificate Account.

**Section 4.05. <u>Allocation of Realized Losses</u>.**

(a)     Prior to each Distribution Date, the Master Servicer shall determine the total amount of Realized Losses, if any, that resulted from any Cash Liquidation, Servicing Modifications, Debt Service Reduction, Deficient Valuation or REO Disposition that occurred during the related Prepayment Period or, in the case of a Servicing Modification that constitutes a reduction of the interest rate on a Mortgage Loan, the amount of the reduction in the interest portion of the Monthly Payment due in the month in which such Distribution Date occurs. The

amount of each Realized Loss shall be evidenced by an Officers' Certificate.  All Realized Losses on the Mortgage Loans shall be allocated as follows:

*first*, to the Excess Cash Flow as part of the Principal Distribution Amount as provided in Section 4.02(c), to the extent of the Excess Cash Flow for such Distribution Date,

*second*, in reduction of the Overcollateralization Amount, until such amount has been reduced to zero;

*third*, to the Class M-10 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

*fourth*, to the Class M-9 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

*fifth*, to the Class M-8 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

*sixth*, to the Class M-7 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

*seventh*, to the Class M-6 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

*eighth*, to the Class M-5 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

*ninth*, to the Class M-4 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

*tenth*, to the Class M-3 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

*eleventh,*  to the Class M-2 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

*twelfth*, to the Class M-1 Certificates, until the Certificate Principal Balance thereof has been reduced to zero; and

*thirteenth*, for Realized Losses on the Group I Loans, sequentially, to the Class I-A-2 Certificates and Class I-A-1 Certificates, in that order, until the Certificate Principal Balance of each such Class has been reduced to zero, and for Realized Losses on the Group II Loans, sequentially, to the Class II-A-3, Class II-A-2 and Class II-A-1 Certificates, in that order, until the Certificate Principal Balance of each such Class has been reduced to zero.

**(b)**    Any allocation of the principal portion of Realized Losses (other than Debt Service Reductions) to the Class A Certificates or Class M Certificates on any Distribution Date shall be made by reducing the Certificate Principal Balance thereof by the amount so

allocated, which allocation shall be deemed to have occurred on such Distribution Date, until the Certificate Principal Balance thereof has been reduced to zero; provided, that no such reduction shall reduce the aggregate Certificate Principal Balance of the Certificates below the aggregate Stated Principal Balance of the Mortgage Loans.  Allocations of the interest portions of Realized Losses (other than any interest rate reduction resulting from a Servicing Modification) to any Class of Class A Certificates or Class M Certificates on any Distribution Date shall be made by operation of the definition of "Accrued Certificate Interest" for each Class for such Distribution Date.  Allocations of the interest portion of a Realized Loss resulting from an interest rate reduction in connection with a Servicing Modification shall be made by operation of the priority of payment provisions of Section 4.02(c).  All Realized Losses and all other losses allocated to a Class of Certificates hereunder will be allocated among the Certificates of such Class in proportion to the Percentage Interests evidenced thereby.

(c)    All Realized Losses on the Mortgage Loans shall be allocated on each Distribution Date to the REMIC I Regular Interests as provided in the definition of REMIC I Realized Losses.

(d)    A Realized Losses on the Mortgage Loans shall be allocated on each Distribution Date to the REMIC II Regular Interests as provided in the definition of REMIC II Realized Losses.

(e)    Realized Losses allocated to the Excess Cash Flow or the Overcollateralization Amount pursuant to paragraphs (a), (b) or (c) of this Section, the definition of Accrued Certificate Interest and the operation of Section 4.02(c) shall be deemed allocated to the Class SB Certificates.  Realized Losses allocated to the Class SB Certificates shall, to the extent such Realized Losses represent Realized Losses on an interest portion, be allocated to the REMIC III Regular Interest SB-IO. Realized Losses allocated to the Excess Cash Flow pursuant to paragraph (b) of this Section shall be deemed to reduce Accrued Certificate Interest on the REMIC III Regular Interest SB-IO.  Realized Losses allocated to the Overcollateralization Amount pursuant to paragraph (b) of this Section shall be deemed first to reduce the principal balance of the REMIC III Regular Interest SB-PO until such principal balance shall have been reduced to zero and thereafter to reduce accrued and unpaid interest on the REMIC III Regular Interest SB-IO.

**Section 4.06.  Reports of Foreclosures and Abandonment of Mortgaged Property**. (See Section 4.06 of the Standard Terms.)

**Section 4.07.  Optional Purchase of Defaulted Mortgage Loans**.  (See Section 4.07 of the Standard Terms.)

**Section 4.08.  Surety Bond**.  (See Section 4.08 of the Standard Terms.)

**Section 4.09.  Basis Risk Shortfall Reserve Fund**.

(a)    On or before the Closing Date, the Trustee shall establish a Reserve Fund on behalf of the Holders of the Class A Certificates and Class M Certificates.  The Reserve Fund must be an Eligible Account. The Reserve Fund shall be entitled "Basis Risk Shortfall Reserve Fund, Deutsche Bank Trust Company Americas, as Trustee for the benefit of holders of

Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO4" (the "Basis Risk Shortfall Reserve Fund"). The Basis Risk Shortfall Reserve Fund shall be an Eligible Account or a sub-account of an Eligible Account. On the Closing Date, the Depositor will cause, on behalf of the Trust, the Basis Risk Shortfall Reserve Fund Amount to be deposited into the Basis Risk Shortfall Reserve Fund. Pursuant to Section 4.02(h), on the initial Distribution Date, amounts on deposit in the Basis Risk Shortfall Reserve Fund will be withdrawn from the Basis Risk Shortfall Reserve Fund and deposited into the Certificate Account for payment to the Class A Certificates and Class M Certificates to the extent of any Basis Risk Shortfall Amount on the Class A Certificates and Class M Certificates on such initial Distribution Date. After the initial Distribution Date, all amounts remaining in the Basis Risk Shortfall Reserve Fund will be distributed to Greenwich Capital Markets, Inc. or its designee, and following such withdrawal the Basis Risk Shortfall Reserve Fund will be closed.

(b)    The Trustee will invest funds deposited in the Basis Risk Shortfall Reserve Fund as directed by the Depositor or its designee in writing in Permitted Investments with a maturity date (i) no later than the Business Day immediately preceding the date on which such funds are required to be withdrawn from such account pursuant to this Agreement, if a Person other than the Trustee or an Affiliate of the Trustee is the obligor for the Permitted Investment, or (ii) no later than the date on which such funds are required to be withdrawn from such account or sub account of a trust account pursuant to this Agreement, if the Trustee or an affiliate of the Trustee is the obligor for the Permitted Investment (or, if no written direction is received by the Trustee from the Depositor, then funds in such account shall remain uninvested). For federal income tax purposes, the Depositor shall be the owner of the Basis Risk Shortfall Reserve Fund and shall report all items of income, deduction, gain or loss arising therefrom. At no time will the Basis Risk Shortfall Reserve Fund be an asset of any REMIC created hereunder. All income and gain realized from investment of funds deposited in the Basis Risk Shortfall Reserve Fund, which investment shall be made solely upon the written direction of the Depositor, shall be for the sole and exclusive benefit of the Depositor and shall be remitted by the Trustee to the Depositor within one Business Day from the closing of the Basis Risk Shortfall Reserve Fund. The Depositor shall deposit in the Basis Risk Shortfall Reserve Fund the amount of any net loss incurred in respect of any such Permitted Investment immediately upon realization of such loss.

# ARTICLE V

## THE CERTIFICATES

(See Article V of the Standard Terms)

## ARTICLE VI

## THE COMPANY AND THE MASTER SERVICER

### (See Article VI of the Standard Terms.)

**Section 6.01.  Respective Liabilities of the Company and Master Servicer**.  (See Section 6.01 of the Standard Terms.)

**Section 6.02.  Merger or Consolidation of the Company or Master Servicer; Assignment of Rights and Delegation of Duties by the Master Servicer**.  (

(a)      (See Section 6.08(a) of the Standard Terms.).

(b)      (See Section 6.08(b) of the Standard Terms).

(c)      (See Section 6.08(c) of the Standard Terms).

(d)      The conversion of Residential Funding Corporation's or Residential Accredit Loans, Inc.'s organizational structure from a Delaware corporation to a limited liability company shall not require the consent of any party or notice to any party and shall not in any way affect the rights or obligations of Residential Funding Corporation or Residential Accredit Loans, Inc. hereunder.

**Section 6.03.  Limitation on Liability of the Company, Master Servicer and Others**. (See Section 6.03 of the Standard Terms.)

**Section 6.04.  Company and Master Servicer Not to Resign**.  (See Section 6.04 of the Standard Terms.)

## ARTICLE VII

### DEFAULT

(See Article VII of the Standard Terms.)

# ARTICLE VIII

## CONCERNING THE TRUSTEE

(See Article VIII of the Standard Terms.)

# ARTICLE IX

# TERMINATION

(See Article IX of the Standard Terms)

### Section 9.01    Optional Purchase by the Master Servicer of All Certificates; Termination Upon Purchase by the Master Servicer or Liquidation of All Mortgage Loans

(a)    Subject to Section 9.02, the respective obligations and responsibilities of the Company, the Master Servicer and the Trustee created hereby in respect of the Certificates (other than the obligation of the Trustee to make certain payments after the Final Distribution Date to Certificateholders and the obligation of the Company to send certain notices as hereinafter set forth) shall terminate upon the last action required to be taken by the Trustee on the Final Distribution Date pursuant to this Article IX following the earlier of:

(i)    the later of the final payment or other liquidation (or any Advance with respect thereto) of the last Mortgage Loan remaining in the Trust Fund or the disposition of all property acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan, or

(ii)    at the option of the Master Servicer, the purchase of all Mortgage Loans and all property acquired in respect of any Mortgage Loan remaining in the Trust Fund, at a price equal to 100% of the unpaid principal balance of each Mortgage Loan (or, if less than such unpaid principal balance, the fair market value of the related underlying property of such Mortgage Loan with respect to Mortgage Loans as to which title has been acquired if such fair market value is less than such unpaid principal balance) (and if such purchase is made by the Master Servicer only, net of any unreimbursed Advances attributable to principal) on the day of repurchase, plus accrued interest thereon at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of any Modified Mortgage Loan), to, but not including, the first day of the month in which such repurchase price is distributed, plus any Cumulative Insurance Payments due to the Certificate Insurer;

*provided, however*, that in no event shall the trust created hereby continue beyond the expiration of 21 years from the death of the last survivor of the descendants of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James, living on the date hereof; and *provided further*, that the purchase price set forth above shall be increased as is necessary, as determined by the Master Servicer, to avoid disqualification of any REMIC created hereunder as a REMIC.

The purchase price paid by the Master Servicer pursuant to Section 9.01(a)(ii) shall also include any amounts owed by Residential Funding pursuant to the last paragraph of Section 4

of the Assignment Agreement in respect of any liability, penalty or expense that resulted from a breach of the representation and warranty set forth in clause (xlvii) of Section 4 of the Assignment Agreement that remain unpaid on the date of such purchase.

The right of the Master Servicer to purchase all the assets of the Trust Fund pursuant to clause (ii) above is conditioned upon the Pool Stated Principal Balance of the Mortgage Loans in each Loan Group as of the Final Distribution Date, prior to giving effect to distributions to be made on such Distribution Date, being less than ten percent of the Cut-off Date Principal Balance of the Mortgage Loans in such Loan Group. If such right is exercised by the Master Servicer, the Master Servicer shall be deemed to have been reimbursed for the full amount of any unreimbursed Advances theretofore made by it with respect to the Mortgage Loans. In addition, the Master Servicer shall provide to the Trustee the certification required by Section 3.15 and the Trustee and any Custodian shall, promptly following payment of the purchase price, release to the Master Servicer the Mortgage Files pertaining to the Mortgage Loans being purchased.

In addition to the foregoing, on any Distribution Date on which the Pool Stated Principal Balance of the Mortgage Loans in each Loan Group, prior to giving effect to distributions to be made on such Distribution Date, being less than ten percent of the Cut-off Date Principal Balance of the Mortgage Loans in such Loan Group , the Master Servicer shall have the right, at its option, to purchase the Certificates in whole, but not in part, at a price equal to the outstanding Certificate Principal Balance of such Certificates plus the sum of Accrued Certificate Interest thereon for the related Interest Accrual Period and any previously unpaid Accrued Certificate Interest, plus any Prepayment Interest Shortfalls, but not including any current Relief Act Shortfalls or Basis Risk Shortfalls, as applicable, or reimbursement of the principal portion of any Realized Losses previously allocate thereto that remain unreimbursed. If the Master Servicer exercises this right to purchase the outstanding Certificates, the Master Servicer will promptly terminate the respective obligations and responsibilities created hereby in respect of the Certificates pursuant to this Article IX.

Notwithstanding the foregoing, no purchase pursuant to this Section 9.01(a) is permitted if it would result in a draw on the Certificate Policy, or if the Certificate Insurer would not be paid all amounts owed to it at such time, including the reimbursement for all Cumulative Insurance Payments, unless, in either case, the Certificate Insurer consents in writing.

**(b)**    Master Servicer shall give the Trustee and the Certificate Insurer not less than 40 days' prior notice of the Distribution Date on which the Master Servicer anticipates that the final distribution will be made to Certificateholders (whether as a result of the exercise by the Master Servicer of its right to purchase the assets of the Trust Fund or otherwise) or on which the Master Servicer anticipates that the Certificates will be purchased (as a result of the exercise by the Master Servicer to purchase the outstanding Certificates). Notice of any termination specifying the anticipated Final Distribution Date (which shall be a date that would otherwise be a Distribution Date) upon which the Certificateholders may surrender their Certificates to the Trustee (if so required by the terms hereof) for payment of the final distribution and cancellation or notice of any purchase of the outstanding Certificates, specifying the Distribution Date upon which the Holders may surrender their Certificates to the Trustee for payment, shall be given promptly by the Master Servicer (if it is exercising its right to purchase

the assets of the Trust Fund or to purchase the outstanding Certificates), or by the Trustee (in any other case) by letter. Such notice shall be prepared by the Master Servicer (if it is exercising its right to purchase the assets of the Trust Fund or to purchase the outstanding Certificates), or by the Trustee (in any other case) and mailed by the Trustee to the Certificateholders (with a copy to the Certificate Insurer) not earlier than the 15th day and not later than the 25th day of the month next preceding the month of such final distribution specifying:

(i)    the anticipated Final Distribution Date upon which final payment of the Certificates is anticipated to be made upon presentation and surrender of Certificates at the office or agency of the Trustee therein designated where required pursuant to this Agreement or, in the case of the purchase by the Master Servicer of the outstanding Certificates, the Distribution Date on which such purchase is to be made,

(ii)    the amount of any such final payment, or in the case of the purchase of the outstanding Certificates, the purchase price, in either case, if known, and,

(iii)    that the Record Date otherwise applicable to such Distribution Date is not applicable, and in the case of the Senior Certificates, or in the case of all of the Certificates in connection with the exercise by the Master Servicer of its right to purchase the Certificates, that payment will be made only upon presentation and surrender of the Certificates at the office or agency of the Trustee therein specified.

If the Master Servicer or Trustee is obligated to give notice to Certificateholders as aforesaid, it shall give such notice to the Certificate Registrar at the time such notice is given to Certificateholders and, if the Master Servicer is exercising its rights to purchase the outstanding Certificates, it shall give such notice to each Rating Agency at the time such notice is given to Certificateholders. As a result of the exercise by the Master Servicer of its right to purchase the assets of the Trust Fund, the Master Servicer shall deposit in the Certificate Account, before the Final Distribution Date in immediately available funds an amount equal to the purchase price for the assets of the Trust Fund, computed as provided above. As a result of the exercise by the Master Servicer of its right to purchase the outstanding Certificates, the Master Servicer shall deposit in an Eligible Account, established by the Master Servicer on behalf of the Trustee and separate from the Certificate Account in the name of the Trustee in trust for the registered holders of the Certificates, before the Distribution Date on which such purchase is to occur in immediately available funds an amount equal to the purchase price for the Certificates, computed as above provided, and provide notice of such deposit to the Trustee and the Certificate Insurer. The Trustee will withdraw from such account the amount specified in subsection (c) below. The Master Servicer shall provide to the Trustee written notification of any change to the anticipated Final Distribution Date as soon as practicable. If the Trust Fund is not terminated on the anticipated Final Distribution Date, for any reason, the Trustee shall promptly mail notice thereof to each affected Certificateholder.

(c)    Upon presentation and surrender of the Certificates by the Certificateholders thereof, the Trustee shall distribute to such Certificateholders (i) the amount otherwise distributable on such Distribution Date, if not in connection with the Master Servicer's election

to repurchase the Mortgage Loans or the outstanding Certificates, or (ii) if the Master Servicer elected to so repurchase the Mortgage Loans or the outstanding Certificates, an amount equal to the price paid pursuant to Section 9.01(a) as follows: *first*, with respect to the Class A Certificates, pari passu, the outstanding Certificate Principal Balance thereof, plus Accrued Certificate Interest thereon for the related Interest Accrual Period and any previously unpaid Accrued Certificate Interest, *second*, to the Class M Certificates in the order of their payment priority, the outstanding Certificate Principal Balance thereof, plus Accrued Certificate Interest thereon for the related Interest Accrual Period and any previously unpaid Accrued Certificate Interest, *third*, to the Certificate Insurer, the amount of any Cumulative Insurance Payments through the date of such optional termination; *fourth*, with respect to the Class A Certificates and Class M Certificates, the amount of any Prepayment Interest Shortfalls allocated thereto for such Distribution Date or remaining unpaid from prior Distribution Dates and accrued interest thereon at the applicable Pass-Through Rate, on a pro rata basis based on Prepayment Interest Shortfalls allocated thereto for such Distribution Date or remaining unpaid from prior Distribution Dates, and *fifth*, with respect to the Class SB Certificates, all remaining amounts.

(d)    If any Certificateholders shall not surrender their Certificates for final payment and cancellation on or before the Final Distribution Date (if so required by the terms hereof), the Trustee shall on such date cause all funds in the Certificate Account not distributed in final distribution to Certificateholders to be withdrawn therefrom and credited to the remaining Certificateholders by depositing such funds in a separate escrow account for the benefit of such Certificateholders, and the Master Servicer (if it exercised its right to purchase the assets of the Trust Fund), or the Trustee (in any other case) shall give a second written notice to the remaining Certificateholders to surrender their Certificates for cancellation and receive the final distribution with respect thereto. If within six months after the second notice any Certificate shall not have been surrendered for cancellation, the Trustee shall take appropriate steps as directed by the Master Servicer to contact the remaining Certificateholders concerning surrender of their Certificates. The costs and expenses of maintaining the escrow account and of contacting Certificateholders shall be paid out of the assets which remain in the escrow account. If within nine months after the second notice any Certificates shall not have been surrendered for cancellation, the Trustee shall pay to the Master Servicer all amounts distributable to the holders thereof and the Master Servicer shall thereafter hold such amounts until distributed to such Holders. No interest shall accrue or be payable to any Certificateholder on any amount held in the escrow account or by the Master Servicer as a result of such Certificateholder's failure to surrender its Certificate(s) for final payment thereof in accordance with this Section 9.01.

(e)    If any Certificateholders do not surrender their Certificates on or before the Distribution Date on which a purchase of the outstanding Certificates is to be made, the Trustee shall on such date cause all funds in the Certificate Account deposited therein by the Master Servicer pursuant to Section 9.01(b) to be withdrawn therefrom and deposited in a separate escrow account for the benefit of such Certificateholders, and the Master Servicer shall give a second written notice to such Certificateholders to surrender their Certificates for payment of the purchase price therefor. If within six months after the second notice any Certificate shall not have been surrendered for cancellation, the Trustee shall take appropriate steps as directed by the Master Servicer to contact the Holders of such Certificates concerning surrender of their

Certificates. The costs and expenses of maintaining the escrow account and of contacting Certificateholders shall be paid out of the assets which remain in the escrow account. If within nine months after the second notice any Certificates shall not have been surrendered for cancellation in accordance with this Section 9.01, the Trustee shall pay to the Master Servicer all amounts distributable to the Holders thereof and the Master Servicer shall thereafter hold such amounts until distributed to such Holders. No interest shall accrue or be payable to any Certificateholder on any amount held in the escrow account or by the Master Servicer as a result of such Certificateholder's failure to surrender its Certificate(s) for payment in accordance with this Section 9.01. Any Certificate that is not surrendered on the Distribution Date on which a purchase pursuant to this Section 9.01 occurs as provided above will be deemed to have been purchased and the Holder as of such date will have no rights with respect thereto except to receive the purchase price therefor minus any costs and expenses associated with such escrow account and notices allocated thereto. Any Certificates so purchased or deemed to have been purchased on such Distribution Date shall remain outstanding hereunder until the Master Servicer has terminated the respective obligations and responsibilities created hereby in respect of the Certificates pursuant to this Article IX. The Master Servicer shall be for all purposes the Holder thereof as of such date.

### Section 9.02    Additional Termination Requirements.

(a)    Each REMIC that comprises the Trust Fund shall be terminated in accordance with the following additional requirements, unless (subject to Section 10.01(f)) the Trustee, the Certificate Insurer and the Master Servicer have received an Opinion of Counsel (which Opinion of Counsel shall not be an expense of the Trustee or the Certificate Insurer) to the effect that the failure of each such REMIC to comply with the requirements of this Section 9.02 will not (i) result in the imposition on the Trust Fund of taxes on "prohibited transactions," as described in Section 860F of the Code, or (ii) cause any such REMIC to fail to qualify as a REMIC at any time that any Certificate is outstanding:

(i)    The Master Servicer shall establish a 90-day liquidation period for each such REMIC and specify the first day of such period in a statement attached to the Trust Fund's final Tax Return pursuant to Treasury regulations Section 1.860F-1. The Master Servicer also shall satisfy all of the requirements of a qualified liquidation for a REMIC under Section 860F of the Code and regulations thereunder;

(ii)    The Master Servicer shall notify the Trustee at the commencement of such 90-day liquidation period and, at or prior to the time of making of the final payment on the Certificates, the Trustee shall sell or otherwise dispose of all of the remaining assets of the Trust Fund in accordance with the terms hereof; and

(iii)    If the Master Servicer or the Company is exercising its right to purchase the assets of the Trust Fund, the Master Servicer shall, during the 90-day liquidation period and at or prior to the Final Distribution Date, purchase all of the assets of the Trust Fund for cash.

(b)    Each Holder of a Certificate and the Trustee hereby irrevocably approves and appoints the Master Servicer as its attorney-in-fact to adopt a plan of complete liquidation for

each REMIC at the expense of the Trust Fund in accordance with the terms and conditions of this Agreement.

**Section 9.03**    **(See Section 9.03 of the Standard Terms)**.

## ARTICLE X

## REMIC PROVISIONS

**Section 10.01.  REMIC Administration**.  (See Section 10.01 of the Standard Terms.)

**Section 10.02.  Master    Servicer;    REMIC    Administrator    and    Trustee Indemnification**.  (See Section 10.02 of the Standard Terms.)

**Section 10.03.  Designation of REMICs**.

The REMIC Administrator will make an election to treat the segregated pool of assets described in the definition of REMIC I (as defined herein) (including the Mortgage Loans but excluding the Basis Risk Shortfall Reserve Fund), and subject to this Agreement, as a REMIC (REMIC I) for federal income tax purposes.  The REMIC Administrator will make an election to treat the segregated pool of assets consisting of the REMIC I Regular Interests as a REMIC (REMIC II) for federal income tax purposes and will make an election to treat the pool of assets comprised of the Uncertificated REMIC II Regular Interests as a REMIC ("REMIC III") for federal income tax purposes.

The Uncertificated REMIC I Regular Interests will be "regular interests" in REMIC I and the Class R-I Certificates will be the sole class of "residual interests" in REMIC I for purposes of the REMIC Provisions (as defined herein) under the federal income tax law.  The Uncertificated REMIC II Regular Interests will be "regular interests" in REMIC II and the Class R-II Certificates will be the sole class of "residual interests" in REMIC II for purposes of the REMIC Provisions (as defined herein) under the federal income tax law.

The Class I-A Certificates, Class II-A Certificates, Class M Certificates, Class SB Certificates and the Uncertificated REMIC III Regular Interests, will be "regular interests" in REMIC III, and the Class R-III Certificates will be the sole class of "residual interests" therein for purposes of the REMIC Provisions (as defined herein) under federal income tax law.

**Section 10.04.  Distributions on the REMIC I Regular Interests**.  (See Section 4.02(c) of this Series Supplement.)

**Section 10.05.  Compliance with Withholding Requirements**.

Notwithstanding any other provision of this Agreement, the Trustee or any Paying Agent, as applicable, shall comply with all federal withholding requirements respecting payments to Certificateholders, including interest or original issue discount payments or advances thereof that the Trustee or any Paying Agent, as applicable, reasonably believes are applicable under the Code.  The consent of Certificateholders shall not be required for such withholding.  In the event the Trustee or any Paying Agent, as applicable, does withhold any amount from interest or original issue discount payments or advances thereof to any Certificateholder pursuant to federal withholding requirements, the Trustee or any Paying Agent, as applicable, shall indicate the amount withheld to such Certificateholder pursuant to the terms of such requirements.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

Section 11.01. **Amendment**.  (See Section 11.01 of the Standard Terms.)

Section 11.02. **Recordation of Agreement; Counterparts**.  (See Section 11.02 of the Standard Terms.)

Section 11.03. **Limitation on Rights of Certificateholders**.  (See Section 11.03 of the Standard Terms.)

Section 11.04. **Governing Law**.  (See Section 11.04 of the Standard Terms.)

Section 11.05. **Notices**.  All demands and notices hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by registered mail, postage prepaid (except for notices to the Trustee which shall be deemed to have been duly given only when received), to the appropriate address for each recipient listed in the table below or, in each case, such other address as may hereafter be furnished in writing to the Master Servicer, the Trustee and the Company, as applicable:

| Recipient | Address |
| --- | --- |
| Company | 8400 Normandale Lake Boulevard<br>Suite 250<br>Minneapolis, Minnesota 55437<br>Attention: President |
| Master Servicer | 2255 N. Ontario Street, Suite 400<br>Burbank, California 91504-2130<br>Attention: Managing Director/Master Servicing |
| Trustee | Corporate Trust Office<br>1761 East St. Andrew Place<br>Santa Ana, California 92705-4934,<br>Attention: Residential Accredit Loans, Inc. Series 2006-QO4<br><br>The Trustee designates its offices located at DB Services Tennessee, 648 Grassmere Park Road, Nashville, TN 37211-3658, Attn: Transfer Unit, for the purposes of Section 8.12 of the Standard Terms |
| Moody's Investors Service, Inc. | 99 Church Street, 4th Floor<br>New York, New York 10004 |

| Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. | 55 Water Street<br>41st Floor<br>New York, New York 10041 |
| --- | --- |
| XL Capital Assurance, Inc. | 1221 Avenue of the Americas<br>New York, New York 10020-1001<br>Attn: Surveillance - RALI 2006-QO4<br>Policy No. CA02956A |

Any notice required or permitted to be mailed to a Certificateholder shall be given by first class mail, postage prepaid, at the address of such holder as shown in the Certificate Register. Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have been duly given, whether or not the Certificateholder receives such notice.

**Section 11.06. Required Notices to Rating Agency and Subservicer.**   (See Section 11.06 of the Standard Terms.)

**Section 11.07. Severability of Provisions**.   (See Section 11.07 of the Standard Terms.)

**Section 11.08. Supplemental Provisions for Resecuritization**.   (See Section 11.08 of the Standard Terms.)

**Section 11.09. Allocation of Voting Rights**.

98.0% of all of the Voting Rights shall be allocated among Holders of the Class A Certificates and Class M Certificates, in proportion to the outstanding Certificate Principal Balances of their respective Certificates; 1.0% of all Voting Rights shall be allocated among the Holders of Class SB Certificates, and 1/3 of 1.00% of all of the Voting Rights shall be allocated to the Holders of each Class of the Class R-I, Class R-II and Class R-III Certificates; in each case to be allocated among the Certificates of such Class in accordance with their respective Percentage Interests.

**Section 11.10. No Petition**.

The Depositor, Master Servicer and the Trustee, by entering into this Agreement, and each Certificateholder, by accepting a Certificate, hereby covenant and agree that they will not at any time institute against the Trust Fund, or join in any institution against the Trust Fund of, any bankruptcy proceedings under any United States federal or state bankruptcy or similar law in connection with any obligation with respect to the Certificates or this Agreement.

# ARTICLE XII

## COMPLIANCE WITH REGULATION AB

(See Article XII of the Standard Terms)

## ARTICLE XIII

## CERTAIN MATTERS REGARDING THE CERTIFICATE INSURER

### Section 13.01. Rights of the Certificate Insurer to Exercise Rights of Insured Certificateholders.

By accepting its Certificate, each Insured Certificateholder agrees that unless a Certificate Insurer Default exists, the Certificate Insurer shall have the right to exercise all consent, voting, direction and other control rights of the Insured Certificateholders under this Agreement without any further consent of the Insured Certificateholders.

### Section 13.02. Claims Upon the Certificate Policy; Certificate Insurance Account.

(a)    If, on the second Business Day next preceding a Distribution Date, the Master Servicer determines that (i) the funds that will be on deposit in the Certificate Account on the related Certificate Account Deposit Date, to the extent distributable to the Insured Certificateholders pursuant to Section 4.02(a)(i) are insufficient to pay Accrued Certificate Interest on the Certificates of such Class for such Distribution Date, net of any Prepayment Interest Shortfalls, Relief Act Shortfalls, Basis Risk Shortfalls and Net Deferred Interest, over the Available Distribution Amount from either Loan Group allocated to pay such net amount on the Certificates of such Class on such Distribution Date, (ii) the principal portion of any Realized Loss is allocable to the Insured Certificates on such Distribution Date or (iii) the funds available on the Final Maturity Date will be insufficient to reduce the Certificate Principal Balance, net of any Subsequent Recoveries added thereto, of the Insured Certificates to zero, the Master Servicer shall deliver to the Trustee not later than 11:00 a.m. New York City time on the second Business Day next preceding the Distribution Date a certificate signed by a Servicing Officer directing the Trustee to draw on the Certificate Policy and stating the amount to be drawn and stating the Insured Payment for the Insured Certificates, and the Trustee shall give notice by telephone or telecopy of the aggregate amount of such deficiency, confirmed in writing in the form set forth as Exhibit A to the Certificate Policy, to the Certificate Insurer and any fiscal agent appointed by the Certificate Insurer at or before 12:00 noon, New York City time, on the second Business Day prior to such Distribution Date. If, subsequent to such notice, and prior to payment by the Certificate Insurer or any fiscal agent on behalf of the Certificate Insurer pursuant to such notice, additional amounts are deposited in the Certificate Account, the Trustee shall reasonably promptly notify the Certificate Insurer and any fiscal agent appointed by the Certificate Insurer and withdraw the notice or reduce the amount claimed, as appropriate.  Any notice received after 12:00 noon, New York City time, shall be deemed received by and sent to the Certificate Insurer on the next Business Day.

(b)    The Trustee shall establish a separate special purpose trust account for the benefit of Holders of the Insured Certificates and the Certificate Insurer referred to herein as the "Certificate Insurance Account" over which the Trustee shall have exclusive control and sole right of withdrawal. The Trustee shall deposit any amount paid under the Certificate Policy in the Certificate Insurance Account and distribute such amount

only for purposes of payment to Holders of Insured Certificates of the Insured Payment for which a claim was made. Such amount may not be applied to satisfy any costs, expenses or liabilities of the Master Servicer, the Trustee or the Trust Fund. Amounts paid under the Certificate Policy shall be transferred to the Certificate Account in accordance with the next succeeding paragraph and disbursed by the Trustee to Holders of Insured Certificates in accordance with Section 4.02 or Section 9.01(c), as applicable. It shall not be necessary for such payments to be made by checks or wire transfers separate from the checks or wire transfers used to pay the Insured Payment with other funds available to make such payment. However, the amount of any payment of principal of or interest on the Insured Certificates to be paid from funds transferred from the Certificate Insurance Account shall be noted as provided in paragraph (c) below and in the statement to be furnished to Holders of the Certificates pursuant to Section 4.03. Funds held in the Certificate Insurance Account shall not be invested by the Master Servicer or any other Person.

On any Distribution Date with respect to which a claim has been made under the Certificate Policy, the amount of any funds received by the Trustee as a result of any claim under the Certificate Policy, to the extent required to make the Insured Payment on such Distribution Date, shall be withdrawn from the Certificate Insurance Account and deposited in the Certificate Account and applied by the Master Servicer on behalf of the Trustee, together with the other funds to be distributed to the Insured Certificateholders pursuant to Section 4.02, directly to the payment in full of the Insured Payment due on the Insured Certificates. Any funds remaining in the Certificate Insurance Account on the first Business Day following a Distribution Date shall be remitted to the Certificate Insurer, pursuant to the instructions of the Certificate Insurer, by the end of such Business Day.

(c)    The Trustee shall keep a complete and accurate record of the amount of interest and principal paid into the Certificate Insurance Account in respect of the Insured Certificates from moneys received under the Certificate Policy. The Certificate Insurer shall have the right to inspect such records at reasonable times during normal business hours upon two Business Day's prior notice to the Trustee.

(d)    In accordance with the terms of the Certificate Policy, any claim on the Certificate Policy in respect of an Avoided Payment shall require the Trustee, upon receiving notice in respect of such Avoided Payment, at the expense and with the cooperation of the Master Servicer, and if applicable, subject to the cooperation of a Holder receiving such order, to obtain a certified copy of the order requiring the return of an Avoided Payment, an opinion of counsel satisfactory to the Certificate Insurer that the order is final and not subject to appeal, and other documentation as required by the Certificate Policy. Any such opinion of counsel shall be provided at the sole expense of the Underwriter.

## Section 13.03. <u>Effect of Payments by the Certificate Insurer; Subrogation.</u>

Anything herein to the contrary notwithstanding, for purposes of this Section 13.03, any payment with respect to principal of or interest on the Insured Certificates which is made with

monies received pursuant to the terms of the Certificate Policy shall not be considered payment of the Insured Certificates from the Trust Fund. The Master Servicer, the Company and the Trustee acknowledge, and each Holder by its acceptance of an Insured Certificate agrees, that without the need for any further action on the part of the Certificate Insurer, the Master Servicer, the Company, the Trustee or the Certificate Registrar, to the extent the Certificate Insurer or any fiscal agent on behalf of the Certificate Insurer makes payments, directly or indirectly, on account of principal of or interest on the Insured Certificates to the Holders of such Certificates, the Certificate Insurer will be fully subrogated to, and each Insured Certificateholder, the Master Servicer, the Company and the Trustee hereby delegate and assign to the Certificate Insurer, to the fullest extent permitted by law, the rights of such Holders to receive such principal and interest from the Trust Fund; provided that the Certificate Insurer shall be paid such amounts only from the sources and in the manner explicitly provided for herein.

The Trustee and the Master Servicer shall cooperate in all respects with any reasonable request by the Certificate Insurer for action to preserve or enforce the Certificate Insurer's rights or interests under this Agreement without limiting the rights or affecting the interests of the Holders as otherwise set forth herein.

### Section 13.04. Notices and Information to the Certificate Insurer.

(a)     All notices, statements, reports, certificates or opinions required by this Agreement to be sent or made available to any other party hereto, to the Rating Agencies or to the Certificateholders (including, without limitation, the statement, certificate and report described in Sections 3.17, 3.18 and 3.19, respectively, the statements described in Section 4.03 of the Standard Terms, and the notices required under Section 11.06 of the Standard Terms) shall also be sent or made available to the Certificate Insurer in the same manner and at the same time as they are sent or made available to the Rating Agencies or Certificateholders, as the case may be.

(b)     The Master Servicer shall designate a Person who shall be available to the Certificate Insurer to provide reasonable access to information regarding the Mortgage Loans and to all books, records, accounts, information and other matters relating to the Certificates or this Agreement.

### Section 13.05. Trustee to Hold Certificate Policy.

The Trustee will hold the Certificate Policy in trust as agent for the Insured Certificateholders for the purpose of making claims thereon and distributing the proceeds thereof. Neither the Certificate Policy, nor the amounts paid on the Certificate Policy will constitute part of the Trust Fund or assets of any REMIC created by this Agreement. Each Insured Certificateholder, by accepting its Certificate, appoints the Trustee as attorney-in-fact for the purpose of making claims on the Certificate Policy. The Trustee shall surrender the Certificate Policy to the Certificate Insurer for cancellation upon the payment in full of the Insured Certificates. To the extent that the Certificate Policy constitutes a reserve fund for federal income tax purposes, (1) it shall be an outside credit support agreement and not an asset of any REMIC and (2) it shall be owned by the Certificate Insurer, all within the meaning of Section 1.860G-2(h) of the Treasury Regulations.

**Section 13.06. <u>Insurance Premium Payments.</u>**

(a)    The Insurance Premium paid under this Agreement shall be nonrefundable and the right of the Certificate Insurer to receive any Insurance Premium payable hereunder shall be absolute and unconditional, in each case without regard to whether the Certificate Insurer or any fiscal agent on behalf of the Certificate Insurer makes any payment under the Certificate Policy or any other circumstances relating to the Insured Certificates or the Certificate Policy (including payment or any provision being made for payment of the Insured Certificateholders prior to the final date for distribution in respect of the Insured Certificates under this Agreement).

(b)    The Master Servicer on behalf of the Trustee (or the Paying Agent appointed by the Trustee) shall pay the Insurance Premium and all other amounts payable to the Certificate Insurer under this Agreement, and the Trustee shall pay to the Certificate Insurer, upon direction of the Master Servicer and receipt of funds sufficient for such payment, any amounts payable to the Certificate Insurer under the Certificate Policy and not payable by the Master Servicer hereunder, in each case in immediately available funds by wire transfer to such account as the Certificate Insurer shall designate by notice, and in the lawful currency of the United States of America, on the dates when due.

**Section 13.07. <u>Ratings</u>.**

The parties hereto agree that references in this Agreement or in the Standard Terms to ratings on the Certificates or interests of the Certificateholders, including any references to a requirement that any ratings shall not be qualified, reduced or withdrawn by any Rating Agency, and including, without limitation, the restrictions set forth in Section 6.02(b) of the Standard Terms, shall be determined without regard to the Certificate Policy.

**Section 13.08. <u>Voting Rights; Amendments.</u>**

Notwithstanding anything in this Agreement or the Standard Terms to the contrary, the Certificate Insurer's written consent will be required for any amendment that adversely affects in any respect the rights and interests of the Certificate Insurer or of holders of the Class I-A-2 or Class II-A-3 Certificates (without regard to the Policy).

For so long as there does not exist a failure by the Certificate Insurer to make a required payment under the Certificate Policy and the continuation of such failure for two Business Days (such event, a "Certificate Insurer Default"), the Certificate Insurer will have the right to exercise all rights, including voting rights, of the holders of the Class I-A-2 Certificates and Class II-A-3 Certificates under this Agreement without any consent of such holders, and such holders may exercise such rights only with the prior written consent of the Certificate Insurer. In addition, to the extent of unreimbursed payments under the Certificate Policy, the Certificate Insurer will be subrogated to the rights of the holders of the Class I-A-2 Certificates and Class II-A-3 Certificates to which such Certificate Insurance Payments were paid. In connection with each insured amount paid on a Class I-A-2 Certificate or Class II-A-3 Certificate, the Trustee as attorney-in-fact for the holder thereof will be required to assign to the Certificate Insurer the

rights of such holder with respect to the Class I-A-2 Certificate or Class II-A-3 Certificates, as applicable, to the extent of such Certificate Insurance Payment.

Section 13.09. **Third Party Beneficiaries.**

The Certificate Insurer shall be an express third-party beneficiary of this Agreement to the extent of its express subrogation rights, its rights to receive any payments under this Agreement, and its express rights set forth in this Agreement, including, without limitation, its rights under Article III, Article IX, and this Article XIII, and shall have the right to enforce the related provisions of this Agreement as if it were a party hereto.

IN WITNESS WHEREOF, the Company, the Master Servicer and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized and their respective seals, duly attested, to be hereunto affixed, all as of the day and year first above written.

RESIDENTIAL ACCREDIT LOANS, INC.

[Seal]

By:_____
      Name:  Heather Anderson
      Title:   Vice President

Attest: _____
      Name:  Tim Jacobson
      Title:   Vice President

RESIDENTIAL FUNDING CORPORATION

[Seal]

By:_____
      Name:  Tim Jacobson
      Title:   Associate

Attest: _____
      Name:  Heather Anderson
      Title:   Associate

DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Trustee

[Seal]

By:_____
      Name:
      Title:

By:_____
      Name:
      Title:

Attest: _____
      Name:
      Title:

Series Supplement

IN WITNESS WHEREOF, the Company, the Master Servicer and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized and their respective seals, duly attested, to be hereunto affixed, all as of the day and year first above written.

**RESIDENTIAL ACCREDIT LOANS, INC.**

[Seal]

By:_____

        Name: Heather Anderson
        Title:  Vice President

Attest: _____
        Name: Tim Jacobson
        Title:  Vice President

**RESIDENTIAL FUNDING CORPORATION**

[Seal]

By:_____

        Name: Tim Jacobson
        Title:  Associate

Attest: _____
        Name:  Heather Anderson
        Title:    Associate

**DEUTSCHE BANK TRUST COMPANY AMERICAS**, as Trustee

[Seal]

By:_____
        Name: Barbara Campbell
        Title:  Vice President

By:_____
        Name:
        Title:    EIKO AKIYAMA
               ASSOCIATE

Attest: _____
        Name:
        Title:    arion Hogan
              Associate

Series Supplement

STATE OF MINNESOTA     )
                                 ) ss.:

COUNTY OF HENNEPIN     )

       On the 27th day of April, 2006 before me, a notary public in and for said State, personally appeared Heather Anderson, known to me to be a Vice President of Residential Accredit Loans, Inc., one of the corporations that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

       IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate  first above written.

                                 Notary Public

[Notarial Seal]            AMY SUE OLSON
                         Notary Public
                          Minnesota
          My Commission Expires Jan. 31, 2010

Series Supplement

STATE OF MINNESOTA        )
                          ) ss.:
COUNTY OF HENNEPIN        )

   On the 27th day of April, 2006 before me, a notary public in and for said State, personally appeared Tim Jacobson, known to me to be an associate of Residential Funding Corporation, one of the corporations that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

   IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

            Notary Public

[Notarial Seal]

AMY SUE OLSON
Notary Public
Minnesota
My Commission Expires Jan. 31, 2010

Series Supplement

STATE OF CALIFORNIA     )
                            ) ss.:

COUNTY OF ORANGE     )

On the 27th day of April, 2006 before me, a notary public in and for said State, personally appeared **BARBARA CAMPBELL** , known to me to be a(n) **Vice President** of Deutsche Bank Trust Company Americas, the New York banking corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said banking corporation and acknowledged to me that such banking corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public



[Notarial Seal] **ALEXANDER PAEZ**
Commission # 1540016
Notary Public - California
Orange County
My Comm. Expires Dec 31, 2008

STATE OF CALIFORNIA     )
                            ) ss.:

COUNTY OF ORANGE     )

On the 27th day of April, 2006 before me, a notary public in and for said State, personally appeared **Eiko Akiyama** , known to me to be a(n) **Associate** of Deutsche Bank Trust Company Americas, the New York banking corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said banking corporation and acknowledged to me that such banking corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public

[Notarial Seal] **ALEXANDER PAEZ**
Commission # 1540016
Notary Public - California
Orange County
My Comm. Expires Dec 31, 2008

Series Supplement

# EXHIBIT ONE

## MORTGAGE LOAN SCHEDULE

(Available upon request)

## EXHIBIT TWO

### INFORMATION TO BE INCLUDED IN
### MONTHLY DISTRIBUTION DATE STATEMENT

(i) the applicable Record Date, Determination Date and Distribution Date, and the date on which the applicable interest accrual period commenced;

(ii) for all Loan Groups together and for each Loan Group separately, the aggregate amount of payments received with respect to the Mortgage Loans, including prepayment amounts;

(iii) the Servicing Fee and Subservicing Fee payable to the Master Servicer and the Subservicer;

(iv) the amount of any other fees or expenses paid, and the identity of the party receiving such fees or expenses;

(v) (a) the amount of such distribution to the Certificateholders of such Class applied to reduce the Certificate Principal Balance thereof, and (b) the aggregate amount included therein representing Principal Prepayments;

(vi) the amount of such distribution to Holders of such Class of Certificates allocable to interest;

(vii) if the distribution to the Holders of such Class of Certificates is less than the full amount that would be distributable to such Holders if there were sufficient funds available therefor, the amount of the shortfall;

(viii) the aggregate Certificate Principal Balance of each Class of Certificates and Subordinate Amount of each Loan Group, before and after giving effect to the amounts distributed on such Distribution Date, separately identifying any reduction thereof due to Realized Losses on each Loan Group, other than pursuant to an actual distribution of principal;

(ix) the aggregate Certificate Principal Balance of each of the Class A, Class M and Class SB Certificates as of the Closing Date.

(x) the weighted average remaining term to maturity of the Group I Loans and Group II Loans after giving effect to the amounts distributed on such Distribution Date;

(xi) the weighted average Mortgage Rates of the Group I Loans and Group II Loans after giving effect to the amounts distributed on such Distribution Date;

(xii) the number and Pool Stated Principal Balance of the Group I Loans, the Group II Loans and the Mortgage Loans after giving effect to the distribution of principal on such

Distribution Date and the number of Group I Loans, Group II Loans and the Mortgage Loans at the beginning and end of the related Due Period;

(xiii) for all Loan Groups together and for each Loan Group, separately, on the basis of the most recent reports furnished to it by Sub-Servicers, the number and Stated Principal Balances of Mortgage Loans that are Delinquent (A) 30-59 days, (B) 60-89 days and (C) 90 or more days and the number and Stated Principal Balances of Mortgage Loans that are in foreclosure;

(xiv) the aggregate amount of Realized Losses with respect to the Group I Loans and Group II Loans for such Distribution Date;

(xv) the amount, terms and general purpose of any Advance by the Master Servicer with respect to the Group I Loans and Group II Loans pursuant to Section 4.04 and the amount of all Advances that have been reimbursed during the related Due Period;

(xvi) any material modifications, extensions or waivers to the terms of the Mortgage Loans during the Due Period or that have cumulatively become material over time;

(xvii) any material breaches of Mortgage Loan representations or warranties or covenants in the Agreement.

(xviii) for all Loan Groups together and for each Loan Group separately, the number, aggregate principal balance and book value of any REO Properties;

(xix) the aggregate Accrued Certificate Interest remaining unpaid, if any, for each Class of Certificates, after giving effect to the distribution made on such Distribution Date;

(xx) the Pass-Through Rate on each Class of Certificates, the related Net WAC Cap Rate, the Net Maximum Cap Rate, LIBOR and MTA for such Distribution Date.

(xxi) the Basis Risk Shortfall, if any, for each Class of Certificates, and Prepayment Interest Shortfalls;

(xxii) the related Senior Enhancement Percentage for such Distribution Date;

(xxiii) the Overcollateralization Amount and Required Overcollateralization Amount following such Distribution Date;

(xxiv) the occurrence of the Stepdown Date, and the aggregate amount of Realized Losses since the Cut-off Date for the Mortgage Loans;

(xxv) the occurrence of the Credit Support Depletion Date;

(xxvi) for all Loan Groups together and for each Loan Group separately, the aggregate amount of Realized Losses for such Distribution Date;

(xxvi) for all Loan Groups together and for each Loan Group separately, the aggregate amount of any recoveries on previously foreclosed loans from Sellers;

(xxvii) for all Loan Groups together and for each Loan Group separately, the aggregate amount of Net Deferred Interest for such Distribution Date;

(xxviii) the amount of any payment made from the Basis Risk Shortfall Reserve Fund on the initial Distribution Date and the balance of the Basis Risk Shortfall Reserve Fund after giving effect to such amounts.

In the case of information furnished pursuant to clauses (v)(a) and (vi) above, the amounts shall be expressed as a dollar amount per Certificate with a $1,000 denomination.

The Trustee's internet website will initially be located at www.tss.db.com/invr.    To receive this statement via first class mail, telephone the trustee at (800) 735-7777.