that would (i) cause such Mortgaged Property to fail to qualify as "foreclosure property" within the meaning of Section 860G(a)(8) of the Code or (ii) subject any REMIC created under the Trust Agreement to the imposition of any federal, state or local income taxes on the income earned from such Mortgaged Property, unless the Servicer has agreed to indemnify and hold harmless the Issuer and the Trust Estate with respect to the imposition of any such taxes.

(b)    The Servicer shall deposit or cause to be deposited all funds collected and received by it in connection with the operation of any REO Property in the Collection Account.

(c)    The Servicer, upon the final disposition of any REO Property, shall be entitled to reimbursement for any related unreimbursed Servicing Advances and other unreimbursed advances as well as any unpaid Servicing Fees from Liquidation Proceeds received in connection with the final disposition of such REO Property; *provided*, that (without limitation of any other right of reimbursement that the Servicer shall have hereunder) any such unreimbursed Servicing Advances as well as any unpaid Servicing Fees may be reimbursed or paid, as the case may be, prior to final disposition, out of any net rental income or other net amounts derived from such REO Property.

(d)    Net Liquidation Proceeds from the final disposition of the REO Property shall be deposited in the Collection Account on or prior to the Determination Date in the month following receipt thereof and be remitted by wire transfer in immediately available funds to the Indenture Trustee for deposit into the Payment Account on the next succeeding Servicer Remittance Date.

Section 4.22    [Reserved].

Section 4.23    Reports to the Indenture Trustee.

(a)    Not later than 30 days after each Payment Date, the Servicer shall, forward to the Indenture Trustee and the Insurers (so long as the Notes are Outstanding or any Reimbursement Amounts remain due and owing to an Insurer) a statement, deemed to have been certified by a Servicing Officer, setting forth the status of the Collection Account maintained by the Servicer as of the close of business on the related Payment Date, indicating that all distributions required by this Agreement to be made by the Servicer have been made (or if any required distribution has not been made by the Servicer, specifying the nature and status thereof) and showing, for the period covered by such statement, the aggregate of deposits into and withdrawals from the Collection Account maintained by the Servicer. Copies of such statement shall be provided by the Servicer, upon request, to the Depositor, Attention: Contract Finance and any Securityholders (or by the Indenture Trustee at the Servicer's expense if the Servicer shall fail to provide such copies to the Securityholders (unless (i) the Servicer shall have failed to provide the Indenture Trustee with such statement or (ii) the Indenture Trustee shall be unaware of the Servicer's failure to provide such statement)).

(b)    Not later than two Business Days following each Payment Date, the Servicer shall deliver to one Person designated by the Depositor, in a format consistent with other electronic loan level reporting supplied by the Servicer in connection with similar transactions, "loan level" information with respect to the Loans as of the related Determination Date.

Section 4.24    Assessment of Compliance and Attestation Reports

(a)    Assessment of Compliance

(i)    By March 15 of each year, commencing in March 2007, the Servicer, at its own expense, shall furnish, and shall cause any Servicing Function Participant engaged by it to furnish, at its own expense, to the Seller, the Depositor, the Administrator, the Servicer, the Insurers and the Indenture Trustee, a report on an assessment of compliance with the Relevant Servicing Criteria specified on Exhibit J hereto that contains (A) a statement by such party of its responsibility for assessing compliance with the Relevant Servicing Criteria, (B) a statement that such party used the Servicing Criteria to assess compliance with the Relevant Servicing Criteria, (C) such party's assessment of compliance with the Relevant Servicing Criteria as of and for the fiscal year covered by the Form 10-K required to be filed pursuant to Section 6.07(f), including, if there has been any material instance of noncompliance with the Relevant Servicing Criteria, a discussion of each such failure and the nature and status thereof, and (D) a statement that a registered public accounting firm has issued an attestation report on such party's assessment of compliance with the Relevant Servicing Criteria as of and for such period.

(ii)    When the Servicer (or any Servicing Function Participant engaged by the Servicer) submits its assessments to the Indenture Trustee, the Servicer will also at such time include the assessment (and attestation pursuant to subsection (b) of this Section 4.24) of each Servicing Function Participant engaged by it and shall indicate to the Depositor what Relevant Servicing Criteria will be addressed in any such reports prepared by any such Servicing Function Participant.

(iii)    Promptly after receipt of each such report on assessment of compliance, the Exchange Act Signing Party shall confirm that the assessments, taken as a whole, address all of the Servicing Criteria and taken individually address the Relevant Servicing Criteria (and disclose the inapplicability of the Servicing Criteria not determined to be Relevant Criteria) for each party as set forth on Exhibit J, and each Custodial Agreement in respect of each Custodian, and shall notify the Depositor of any exceptions.

(b)    Attestation Reports

(i)    By March 15 of each year, commencing in March 2007, the Servicer, at its own expense, shall cause, and shall cause any Servicing Function Participant engaged by it to cause, at its own expense, a registered public accounting firm (which may also render other services to the Servicer) that is a member of the American Institute of Certified Public Accountants to furnish a report to the Seller, the Depositor, the Servicer, the Insurers and the Indenture Trustee, to the effect that (A) it has obtained a representation regarding certain matters from the management of such party, which

62

includes an assertion that such party has complied with the Relevant Servicing Criteria, and (B) on the basis of an examination conducted by such firm in accordance with standards for attestation engagements issued or adopted by the PCAOB, it is expressing an opinion as to whether such party's compliance with the Relevant Servicing Criteria was fairly stated in all material respects, or it cannot express an overall opinion regarding such party's assessment of compliance with the Relevant Servicing Criteria. In the event that an overall opinion cannot be expressed, such registered public accounting firm shall state in such report why it was unable to express such an opinion. Such report must be available for general use and not contain restricted use language.

(ii)    Promptly after receipt of such report from the Servicer or any Servicing Function Participant engaged by such party, the Exchange Act Signing Party shall confirm that each assessment submitted pursuant subsection (a) of this Section 4.24 is coupled with an attestation meeting the requirements of this Section and notify the Depositor of any exceptions.

(c)    The Servicer shall indemnify and hold harmless the Seller, the Depositor and the Indenture Trustee and their respective officers, directors, agents and affiliates from and against any losses, damages, penalties, fines, forfeitures, reasonable legal fees and related costs, judgments and other costs and expenses arising out of or based upon a breach by the Servicer or any of its officers, directors, agents or affiliates of its obligations under this Section 4.24 or the negligence, bad faith or willful misconduct of the Servicer in connection therewith; provided, however for any indemnification from the Servicer to any of the above parties with respect to any breaches of this Section 4.24, the Servicer in no event will be liable for any punitive or consequential damages.

(d)    The Servicer's obligation to provide assessments of compliance and attestations under this Section 4.24 shall terminate upon the filing of a Form 15 suspension notice on behalf of the Issuer.

Section 4.25    Annual Statement of Compliance with Applicable Servicing Criteria

(a)    The Servicer shall deliver (and the Servicer shall cause any Additional Servicer engaged by it to deliver) to the Seller, the Depositor, the Insurers and the Indenture Trustee on or before March 15 of each year, commencing in March 2007, an Officer's Certificate stating, as to the signer thereof, that (A) a review of such party's activities during the preceding calendar year or portion thereof and of such party's performance under this Agreement, or such other applicable agreement in the case of an Additional Servicer, has been made under such officer's supervision and (B) to the best of such officer's knowledge, based on such review, such party has fulfilled all its obligations under this Agreement, or such other applicable agreement in the case of an Additional Servicer, in all material respects throughout such year or portion thereof, or, if there has been a failure to fulfill any such obligation in any material respect, specifying each such failure known to such officer and the nature and status thereof.

(b)    Copies of such statements shall be provided to any Securityholder upon request, by the Indenture Trustee at the Servicer's expense if the Servicer failed to provide such copies

(unless (i) the Servicer shall have failed to provide the Indenture Trustee with such statement or (ii) the Indenture Trustee shall be unaware of the Servicer's failure to provide such statement).

(c)     The Servicer shall give prompt written notice to the Indenture Trustee, the Seller and the Depositor of the appointment of any Subcontractor by it and a written description (in form and substance satisfactory to the Indenture Trustee, the Seller and the Depositor) of the role and function of each Subcontractor utilized by the Servicer, specifying (A) the identity of each such Subcontractor and (B) which elements of the Servicing Criteria set forth under Item 1122(d) of Regulation AB will be addressed in assessments of compliance provided by each such Subcontractor.

(d)     The Servicer shall notify the Indenture Trustee, the Depositor and the Seller within five (5) days of knowledge thereof (i) of any legal proceedings pending against the Servicer of the type described in Item 1117 (§ 229.1117) of Regulation AB and (ii) if the Servicer shall become (but only to the extent not previously disclosed) at any time an affiliate of any of the parties listed on Exhibit K to this Agreement. On or before March 1st of each year, the Depositor shall distribute the information in Exhibit K to the Servicer.

Section 4.26    Merger or Consolidation. Any Person into which the Servicer may be merged or consolidated, or any Person resulting from any merger, conversion, other change in form or consolidation to which the Servicer shall be a party, or any Person succeeding to the business of the Servicer, shall be the successor to the Servicer hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; *provided*, *however*, that the successor or resulting Person to the Servicer shall be a Person that shall be qualified and approved to service mortgage loans for Fannie Mae or FHLMC and shall have a net worth of not less than $15,000,000.

Section 4.27    Resignation of Servicer. Except as otherwise provided in Sections 4.26 and 4.28 hereof, the Servicer shall not resign from the obligations and duties hereby imposed on it unless it or the Indenture Trustee, acting at the direction of the Controlling Insurer, determines that the Servicer's duties hereunder are no longer permissible under applicable law or are in material conflict by reason of applicable law with any other activities carried on by it and cannot be cured. Any such determination permitting the resignation of the Servicer shall be evidenced by an Opinion of Counsel that shall be Independent to such effect delivered to the Indenture Trustee and, so long as the Notes are Outstanding or any Reimbursement Amounts remain due and owing to an Insurer, the Insurers. No such resignation shall become effective until the Indenture Trustee shall have assumed, or a successor servicer shall have been appointed by the Indenture Trustee and until such successor shall have assumed, the Servicer's responsibilities and obligations under this Agreement. Notice of such resignation shall be given promptly by the Servicer and the Depositor to the Indenture Trustee.

Section 4.28    Assignment or Delegation of Duties by the Servicer. Except as expressly provided herein, the Servicer shall not assign or transfer any of its rights, benefits or privileges hereunder to any other Person, or delegate to or subcontract with, or authorize or appoint any other Person to perform any of the duties, covenants or obligations to be performed by the Servicer hereunder; *provided*, *however*, that the Servicer shall have the right without the prior written consent of the Indenture Trustee, the Insurers or the Depositor to delegate or assign to or

subcontract with or authorize or appoint an Affiliate of the Servicer to perform and carry out any duties, covenants or obligations to be performed and carried out by the Servicer hereunder. In no case, however, shall any such delegation, subcontracting or assignment to an Affiliate of the Servicer relieve the Servicer of any liability hereunder. Notice of such permitted assignment shall be given promptly by the Servicer to the Depositor, the Insurers (so long as the Notes are Outstanding or any Reimbursement Amounts remain due and owing to an Insurer) and the Indenture Trustee. If, pursuant to any provision hereof, the duties of the Servicer are transferred to a successor servicer, the entire amount of compensation payable to the Servicer pursuant hereto, including amounts payable to or permitted to be retained or withdrawn by the Servicer pursuant to Section 4.20 hereof, shall thereafter be payable to such successor servicer.

At any time during the period that a Form 10-K is being filed with respect to the Trust in accordance with the Exchange Act and the rules and regulations of the Commission, the Servicer shall not permit a Subservicer to perform any servicing responsibilities hereunder with respect to the Loans unless that Subservicer first agrees in writing with such Servicer to deliver an assessment of compliance and an accountant's attestation in such manner and at such times in compliance with Sections 4.24(a)(ii) and (b)(ii) of this Agreement.

Notwithstanding anything in this Agreement the contrary, the conversion of the Servicer's organizational structure from a Pennsylvania corporation to a Delaware limited liability company shall not require the consent of any party or notice to any party and shall not in any way affect the rights or obligations of the Servicer hereunder.

Section 4.29    [Reserved].

Section 4.30    Indemnification; Third-Party Claims. In addition to its indemnification under Section 4.24(c), the Servicer agrees to indemnify the Depositor, the Issuer, the Insurers and the Indenture Trustee, and hold them harmless against any and all claims, losses, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, liability, fees and expenses that the Depositor, the Issuer, the Insurers or the Indenture Trustee may sustain as a result of (a) any breach by the Servicer of any if its other obligations hereunder, (b) any misstatement or omission in any other information, data or materials provided by the Servicer, or (c) the negligence, bad faith or willful misconduct of the Servicer in connection with its performance hereunder; provided, however for any indemnification from the Servicer to any of the above parties with respect to this Section 4.30, the Servicer in no event will be liable for any punitive or consequential damages.   The Depositor, the Issuer, the Insurers and the Indenture Trustee shall immediately notify the Servicer if a claim is made by a third party with respect to this Agreement, the Loans entitling the Depositor, the Issuer, the Insurers or the Indenture Trustee to indemnification hereunder, whereupon the Servicer shall assume the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or them in respect of such claim.

Section 4.31    Limitation of Servicer's Liability. Neither the Servicer nor any of the directors or officers or employees or agents of the Servicer shall be under any liability to the Issuer, the Owner Trustee, the Indenture Trustee, the Insurers or the Securityholders for any action taken or for refraining from the taking of any action in good faith pursuant to this

65

Agreement; provided, however, that this provision shall not protect the Servicer or any such Person against any liability that would otherwise be imposed by reason of its willful misfeasance, bad faith or negligence in the performance of its duties hereunder or by reason of its reckless disregard of its obligations and duties hereunder. The Servicer and any director or officer or employee or agent of the Servicer may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder. The Servicer and any director, officer, employee or agent of the Servicer shall be indemnified by the Issuer and held harmless against any loss, liability or expense incurred in connection with any legal action relating to this Agreement or the Securities, other than any loss, liability or expense related to any specific Loan or Loans (except as any such loss, liability or expense shall be otherwise reimbursable pursuant to this Agreement) and any loss, liability or expense incurred by reason of its willful misfeasance, bad faith or negligence in the performance of its duties hereunder or by reason of its reckless disregard of its obligations and duties hereunder. The Servicer shall not be under any obligation to appear in, prosecute or defend any legal action that is not incidental to its duties to service the Loans in accordance with this Agreement, and that in its opinion may involve it in any expense or liability; provided, however, that the Servicer may in its sole discretion undertake any such action that it may deem necessary or desirable in respect of this Agreement, the rights and duties of the parties hereto and the interests of the Securityholders. In such event, the reasonable legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities of the Issuer, and the Servicer shall be entitled to be reimbursed therefor. The Servicer's right to indemnity or reimbursement pursuant to this Section 4.31 shall survive any resignation or termination of the Servicer pursuant to Section 4.31 with respect to any losses, expenses, costs or liabilities arising prior to such resignation or termination (or arising from events that occurred prior to such resignation or termination).

Section 4.32    Alternative Index.  In the event that the Index for any Loan, as specified in the related Mortgage Note, becomes unavailable for any reason, the Servicer shall select an alternative index in accordance with the terms of such Mortgage Note or, if such Mortgage Note does not make provision for the selection of an alternative index in such event, the Servicer shall, subject to applicable law, select an alternative index based on information comparable to that used in connection with the original Index and, in either case, such alternative index shall thereafter be the Index for such Loan.

Section 4.33    Transfer of Servicing.  The Seller agrees that it shall provide written notice to the Servicer, each Insurer (so long as the Notes are Outstanding or any Reimbursement Amounts remain due and owing to an Insurer) and the Indenture Trustee thirty days prior to any proposed transfer or assignment by the Seller of its rights under this Agreement or delegation of its rights or duties hereunder or any portion thereof to any other Person.  In addition, the ability of the Seller to transfer or assign its rights and delegate its duties under this Agreement or to transfer the servicing hereunder to a successor servicer shall be subject to the following conditions:

> (i)    satisfaction of the conditions to such transfer as set forth in this Agreement including, without limitation, receipt of written consent of the Servicer and the Controlling Insurer to such transfer, in consultation with the other Insurer so long as no Insurer Default has occurred and is continuing with respect to such other Insurer;

66

(ii)    Such successor servicer must be qualified to service loans for Fannie Mae or FHLMC, must be a member in good standing of MERS and, must be acceptable to the Controlling Insurer in consultations with the other Insurer, so long as no Insurer Default has occurred and is continuing with respect to such other Insurer;

(iii)    Such successor servicer must satisfy the seller/servicer eligibility standards in this Agreement, exclusive of any experience in mortgage loan origination;

(iv)    Such successor servicer must execute and deliver to the Indenture Trustee an agreement, in form and substance reasonably satisfactory to the Indenture Trustee and the Controlling Insurer that contains an assumption by such successor servicer of the due and punctual performance and observance of each covenant and condition to be performed and observed by the Servicer under this Agreement;

(v)    There must be delivered to the Indenture Trustee and each Insurer (so long as the Notes are Outstanding or any Reimbursement Amounts remain due and owing to any Insurer) a letter from each Rating Agency to the effect that such transfer of servicing will not result in a qualification, withdrawal or downgrade of the then-current rating of any of the Notes without taking into account the Class Ax Policy or the Class Ac Policy; and

(vi)    The Seller shall, at its cost and expense, take such steps, or cause the terminated Servicer to take such steps, as may be necessary or appropriate to effectuate and evidence the transfer of the servicing of the Loans to such successor servicer, including, but not limited to, the following: (A) to the extent required by the terms of the Loans and by applicable federal and state laws and regulations, the Seller shall cause the prior Servicer to timely mail to each obligor under a Loan any required notices or disclosures describing the transfer of servicing of the Loans to the successor servicer; (B) prior to the effective date of such transfer of servicing, the Seller shall cause the prior Servicer to transmit to any related insurer notification of such transfer of servicing; (C) on or prior to the effective date of such transfer of servicing, the Seller shall cause the prior Servicer to deliver to the successor servicer all Loan Documents and any related records or materials; (D) on or prior to the effective date of such transfer of servicing, the Seller shall cause the prior Servicer to transfer to the successor servicer, all funds held by the prior Servicer in respect of the Loans; (E) on or prior to the effective date of such transfer of servicing, the Seller shall cause the prior Servicer to, after the effective date of the transfer of servicing to the successor servicer, continue to forward to such successor servicer, within one Business Day of receipt, the amount of any payments or other recoveries received by the prior Servicer, and to notify the successor servicer of the source and proper application of each such payment or recovery; and (F) the Seller shall cause the prior Servicer to, after the effective date of transfer of servicing to the successor servicer, continue to cooperate with the successor servicer to facilitate such transfer in such manner and to such extent as the successor servicer may reasonably request. Notwithstanding the foregoing, the prior Servicer shall be obligated to perform the items listed above to the extent provided in this Agreement.

## ARTICLE V

## DEPOSITS AND DISTRIBUTIONS TO HOLDERS

Section 5.01    The Collection Account.  The Servicer shall establish and maintain in the name of the Securities Intermediary the Collection Account as provided in Article IV, which account shall be pledged to the Indenture Trustee for the benefit of the Noteholders and the Insurers.

Section 5.02    The Payment Account.

(a)    The Indenture Trustee shall establish and maintain in the name of the Securities Intermediary an account (the "Payment Account") entitled "Payment Account, U.S. Bank National Association, as Indenture Trustee, in trust for the benefit of the Holders of GreenPoint Mortgage Funding Trust 2006-HE1 Home Equity Loan Asset-Backed Notes, Series 2006-HE1." The Payment Account shall be an Eligible Account. If the existing Payment Account ceases to be an Eligible Account, the Indenture Trustee shall establish a new Payment Account that is an Eligible Account within 10 Business Days and transfer all funds and investment property on deposit in such existing Payment Account into such new Payment Account. The Payment Account shall relate solely to the Notes issued under the Indenture and funds in the Payment Account shall be held separate and apart from and shall not be commingled with any other monies including, without limitation, other monies of the Indenture Trustee held under this Agreement. The Indenture Trustee shall make withdrawals from the Payment Account only for the following purposes:

(i)    to pay such amounts as specified in Section 5.03(b)(A) to the persons entitled thereto and to pay such amounts required to be paid pursuant to Section 5.03(b)(B) of this Agreement;

(ii)    to withdraw amounts deposited in the Payment Account in error; and

(iii)    to clear and terminate the Payment Account pursuant to Article VIII.

(b)    The Indenture Trustee shall invest, or cause to be invested, funds held in the Payment Account in Eligible Investments (which may be obligations of the Indenture Trustee) in accordance with the written instructions of the holders of the Class L Certificate. Absent its receipt of any such written instructions, the Indenture Trustee shall invest or cause to be invested such funds in the "First American Treasury Obligations Reserve Class". All such investments must be payable on demand or mature no later than one Business Day prior to the next Payment Date, and shall not be sold or disposed of prior to their maturity. All such Eligible Investments will be made in the name of the Indenture Trustee (in its capacity as such) or its nominee. All income and gain realized from any such investment (net of any losses) shall be transferred to the Designated Income Reserve Account upon receipt by the Indenture Trustee of such amounts. Notwithstanding the foregoing, the Indenture Trustee shall invest funds in the Payment Account for the period from the day the funds are deposited in the Payment Account to the next succeeding Business Day in Eligible Investments (which may be obligations of the Indenture Trustee) and any income or gain realized net of losses

68

shall be subject to its withdrawal on order form time to time; provided, however, that the Indenture Trustee may elect to keep the funds in the Payment Account uninvested for such period as payment of the Indenture Trustee Fee Amount.

Section 5.03    Payments from the Payment Account.

(a)    The Indenture Trustee shall deposit into the Payment Account, without duplication, upon receipt, (i) the proceeds of any liquidation of the assets of the Issuer and (ii) the Total Distribution Amount remitted by the Servicer together with any Substitution Amounts, and any Loan Purchase Price amounts received by the Indenture Trustee.

(b)    On each Payment Date, from amounts on deposit in the Payment Account, (A)(x) net of an amount equal to (i) (a) the Indenture Trustee Fee Amount and (b) any unreimbursed expenses and indemnities due and owing to the Indenture Trustee pursuant to Section 6.07 of the Indenture (*provided, however*, such amount shall not exceed $20,000 on any Payment Date nor exceed $150,000 during any Anniversary Year (excluding, for this purpose, any costs or expenses incurred by the Indenture Trustee pursuant to Section 6.01(a) in connection with any transfers of servicing); *provided, further* that the Indenture Trustee may be reimbursed for amounts in excess of $150,000 incurred in a given Anniversary Year in subsequent Anniversary Years, but (subject to the immediately preceding sentence) in no event shall more than $150,000 be reimbursed to the Indenture Trustee per Anniversary Year) (the "Indenture Trustee Expense Amount"), (ii) the Servicing Fee (to the extent not already paid in accordance with Section 5.06) and the amount specified in Section 5.03(c) and (iii) the Owner Trustee Fee, (y) plus any amounts on deposit in the Policy Payment Account (which amounts shall be applied pursuant to Section 5.04(c) of this Agreement), and (z) plus any amounts on deposit in the Designated Investment Income Reserve Account to the extent required to be distributed pursuant to Section 5.06(c)(i) (which amounts shall be applied pursuant to Section 5.06(c) prior to payments under this Section 5.03(b)), the Indenture Trustee shall make the following allocations, disbursements and transfers in the following order of priority, and each such allocation, transfer and disbursement shall be treated as having occurred only after the application of funds in accordance with Section 5.06 of this agreement and after all preceding allocations, transfers and disbursements have occurred:

(B)(i) Concurrently, to the Insurers (*pro rata* based on amounts due), the allocable Premium Amount payable to each Insurer for such Payment Date to the extent not already paid in accordance with Section 5.06;

(ii)    concurrently (*pro rata* based on amounts due), (x) to each Class of Noteholders, the Interest Payment Amount with respect to the related Class of Notes for such Payment Date together with any portion of the Interest Payment Amount due and not paid on prior Payment Dates with interest thereon at the applicable Note Rate, (y) during the Managed Amortization Period, to the Holder of the Class L Certificate for accrued and unpaid interest on any Additional Balance Advance Amount that has not previously been reimbursed pursuant to clause (iii) below at the Class L Certificate Rate and (z) to the Insurers, the related Reimbursement Amount related to draws under the Policies with respect to the Interest Payment Amount for either class of Notes for such payment date;

(iii)    on each Payment Date during the Managed Amortization Period, to the Holder of the Class L Certificate, from Principal Collections, an amount equal to the Additional Balance Advance Amount for such Payment Date;

(iv)    to each Class of Noteholders, as a payment of principal, the related Class A Principal Payment Amount for such Payment Date;

(v)    to each Class of Noteholders, as a payment of principal, in the following order, (a) Charge-Off Amounts incurred during the preceding calendar month and (b) Charge-Off Amounts incurred during previous periods that were not subsequently funded by Interest Collections, overcollateralization or draws under the Class Ax Policy or Class Ac Policy in respect of an Overcollateralization Deficit;

(vi)    to the Insurers, the related remaining Reimbursement Amount, if any, then due to them;

(vii)    to each Class of Noteholders, the Accelerated Principal Payment, if any;

(viii)    to the Servicer, amounts not previously reimbursed pursuant to this Agreement (including expenses associated with the transition to any new Servicer);

(ix)    to each Class of Noteholders, pro rata (based on the amount of Net WAC Carryover Amount for each such Class), to pay current and any previously unreimbursed related Net WAC Carryover Amount and interest thereon at the applicable Note Rate;

(x)    *pari passu*, (a) to the Indenture Trustee, any unreimbursed expenses due and owing to the Indenture Trustee and not otherwise previously paid on such Payment Date, (b) to the Owner Trustee, any unpaid fees and unreimbursed expenses due and owing to the Owner Trustee and not otherwise previously paid on such Payment Date and (c) to the Administrator, unreimbursed expenses due and owing to the Trust Administrator and not otherwise previously paid on such Payment Date; and

(xi)    first, to pay remaining Additional Balance Advance Amounts, together with interest at the Class L Certificate Rate, to the holders of the Class L Certificates, second to pay to the holders of the Class B Certificates the amounts specified in Section 3.11 of the Trust Agreement.

(c)    On each Payment Date the Indenture Trustee shall pay from amounts in the Payment Account to the holders of the Class B Certificates an amount equal to the sum of the Class BT Distribution Amount for such Payment Date and the Class BA Distribution Amount for such Payment Date.

Section 5.04    The Policies; the Policy Payment Account.

(a)    By 12:00 p.m. (noon) New York City time on the Determination Date the Indenture Trustee shall determine with respect to such Payment Date, the Deficiency Amount, if any.

70

(b)     If the Indenture Trustee determines pursuant to paragraph (a) above that a Deficiency Amount would exist, the Indenture Trustee shall complete a Notice in the form of the applicable exhibit to the related Policy and submit such notice to the Insurers no later than 12:00 p.m. (noon) New York City time on the third Business Day preceding such Payment Date as a claim for the payment of an Insured Amount in an amount equal to the Deficiency Amount.

(c)     The Indenture Trustee shall establish an Eligible Account (which may be a sub-account of the Payment Account) for the benefit of the Noteholders and the Insurers referred to herein as the "Policy Payment Account" over which the Indenture Trustee shall have exclusive control and sole right of withdrawal.  The Indenture Trustee shall deposit upon receipt any amount paid under a Policy into the Policy Payment Account and distribute such amount only for purposes of payment to the applicable Noteholders of the related Insured Amount for which a claim was made and such amount may not be applied to satisfy any costs, expenses or liabilities of the Seller, the Depositor, the Servicer, the Indenture Trustee or the Issuer.  Amounts paid under a Policy, to the extent needed to pay the related Insured Amount, shall be disbursed by the Indenture Trustee to the applicable Noteholders in accordance with Section 5.03(b).  It shall not be necessary for such payments to be made by check or wire transfers separate from checks or wire transfers used to pay the related Insured Amount with other funds available to make such payment.  However, the amount of any payment of principal or interest on the applicable Notes to be paid from funds transferred from the Policy Payment Account shall be noted as provided in subsection (d) of this Section 5.04 in the Note Register and in the Indenture Trustee's Payment Date Statement.  Funds held in the Policy Payment Account shall not be invested.  Any funds remaining in the Policy Payment Account on the first Business Day following a Payment Date shall be returned to the applicable Insurer pursuant to the written instructions of such Insurer by the end of such Business Day.

(d)     The Indenture Trustee shall keep a complete and accurate record of the amount of interest and principal paid in respect of any Note from moneys received under the applicable Policy.  Each Insurer shall have the right to inspect such records at reasonable times during normal business hours upon one (1) Business Day's prior written notice to the Indenture Trustee.

(e)     The Indenture Trustee shall, upon retirement of the Class Ax Notes or the Class Ac Notes, furnish to the applicable Insurer a notice of such retirement, and, upon retirement of the Class Ax Notes or the Class Ac Notes and the expiration of the term of the applicable Policy, surrender such Policy to the applicable Insurer for cancellation.

Section 5.05   The Reserve Account.

(a)     The Indenture Trustee shall establish and maintain in the name of the Securities Intermediary an account (the "Reserve Account") entitled "Reserve Account, U.S. Bank National Association, as Indenture Trustee, in trust for the benefit of the Holders of the GreenPoint Mortgage Funding Trust 2006-HE1 Home Equity Loan Asset-Backed Notes, Series 2006-HE1."  The Reserve Account shall be an Eligible Account.

(b)    If the existing Reserve Account ceases to be an Eligible Account, the Indenture Trustee shall establish a new Reserve Account that is an Eligible Account within 10 Business Days and transfer all funds and investment property on deposit in such existing Reserve Account into such new Reserve Account. The Reserve Account shall relate solely to the Securities and funds therein shall be held separate and apart from and shall not be commingled with any other monies including, without limitation, other monies of the Indenture Trustee held under this Agreement. The Indenture Trustee shall make withdrawals from the Reserve Account only for the following purposes:

(ii)    to pay such amounts required to be paid pursuant to Section 2.01(b) of this Agreement; and

(iii)    to withdraw amounts deposited in the Reserve Account in error.

(c)    Funds held in the Reserve Account shall be invested in Eligible Investments (which may be obligations of the Indenture Trustee). The holders of the Class L Certificates shall direct investments and be liable for any losses. In absence of written instructions from the holders of the Class L Certificates, the Indenture Trustee shall invest or cause to be invested such funds in "First American Treasury Obligations Reserve Class". All such investments must be payable on demand or mature no later than one Business Day prior to the next Payment Date, and shall not be sold or disposed of prior to their maturity. All such Eligible Investments will be made in the name of the Indenture Trustee (in its capacity as such) or its nominee. All income and gain realized from any such investment shall be subject to its withdrawal on order from time to time.

Section 5.06    Other Reserve Accounts.

(a)    The Indenture Trustee shall establish and maintain in the name of the Securities Intermediary an account (the "Termination Fee Reserve Account") entitled "Termination Fee Reserve Account, U.S. Bank National Association, as Indenture Trustee, in trust for the benefit of the Holders of the GreenPoint Mortgage Funding Trust 2006-HE1 Home Equity Loan Asset-Backed Notes, Series 2006-HE1," into which Termination Fees, if any, that are collected by the Servicer with respect to each HELOC and remitted to the Indenture Trustee shall be deposited. The Termination Fee Reserve Account shall be an Eligible Account and amounts in such account shall be invested in Eligible Investments at the written direction of the holders of the Class B Certificates. In the absence of written instructions from the holders of the Class B Certificates, the Indenture Trustee shall invest such funds in "First American Treasury Obligations Reserve Class". Amounts in the Termination Fee Reserve Account shall be used to pay Servicing Fees and Premium Amounts prior to using amounts in the Annual Fee Reserve Account or the Payment Account in accordance with Section 5.03(b) of this Agreement to pay such Servicing Fees and Premium Amounts as follows:

(i)    To pay Servicing Fees in accordance with this Agreement for the related Payment Date prior to the application of any portion of Available Funds for the payment of Servicing Fees in accordance with Section 5.03(b) of this Agreement;

72

(ii)    Concurrently, to pay to the Insurers, pro rata, based on amounts due, the
allocable Premium Amount for such Payment Date prior to paying such
Amounts pursuant to Section 5.03(b)(ii) of this Agreement; and

(iii)    Any amounts not used on a Payment Date in accordance with this Section
5.06(a) shall remain in the Termination Fee Reserve Account for future
Payment Dates.

(b)    The Indenture Trustee shall establish and maintain in the name of the Securities
Intermediary an account (the "Annual Fee Reserve Account") entitled "Annual Fee Reserve
Account, U.S. Bank National Association, as Indenture Trustee, in trust for the benefit of the
Holders of the GreenPoint Mortgage Funding Trust 2006-HE1 Home Equity Loan Asset-
Backed Notes, Series 2006-HE1," into which Annual Fees, if any, that are collected by the
Servicer with respect to each HELOC and remitted to the Indenture Trustee shall be deposited.
The Annual Fee Reserve Account shall be an Eligible Account and amounts in such account
shall be invested in Eligible Investments at the written direction of the holders of the Class B
Certificates.  In the absence of written instructions from the holders of the Class B
Certificates, the Indenture Trustee shall invest such funds in "First American Treasury
Obligations Reserve Class".  Amounts in the Annual Fee Reserve Account including earnings
on investments (net of losses) shall be used to pay Servicing Fees and then Premium Amounts
prior to using amounts in the Payment Account in accordance with Section 5.03(b) of this
Agreement to pay such Servicing Fees and Premium Amounts as follows:

(i)    To pay any Servicing Fees remaining after the application of funds in the
Termination Fee Reserve Account in accordance with this Agreement for
the related Payment Date prior to the application of any portion of
Available Funds for the payment of Servicing Fees in accordance with
Section 5.03(b) of this Agreement;

(ii)    Concurrently, to pay to the Insurers, pro rata, based on amounts due, the
allocable Premium Amount for such Payment Date after the application of
funds in the Termination Fee Reserve Account and prior to paying such
Amounts pursuant to Section 5.03(b)(ii) of this Agreement; and

(iii)    Any amounts not used on a Payment Date in accordance with this Section
5.06(b) shall remain in the Annual Fee Reserve Account for future
Payment Dates.

(c)    The Indenture Trustee shall establish and maintain in the name of the Securities
Intermediary an account (the "Designated Investment Income Reserve Account") entitled
"Designated Investment Income Reserve Account, U.S. Bank National Association, as
Indenture Trustee, in trust for the benefit of the Holders of the GreenPoint Mortgage Funding
Trust 2006-HE1 Home Equity Loan Asset-Backed Notes, Series 2006-HE1," into which the
investment income, if any, on the Payment Account that is earned between the prior month's
Servicer Remittance Date (or such later date on which the Indenture Trustee shall have
received the related remittance from the Servicer) and the Payment Date, less one day of
investment income available to pay the Indenture Trustee, shall be deposited.  The Designated

73

Investment Income Reserve Account shall be an Eligible Account and amounts in such account shall be invested in Eligible Investments at the written direction of the holders of the Class L Certificates. In the absence of written instructions from the holders of the Class L Certificates, the Indenture Trustee shall invest such funds in "First American Treasury Obligations Reserve Class". Prior to the application of Available Funds in accordance with Section 5.03(b) of this Agreement, amounts in the Designated Investment Income Reserve Account shall be paid to the holder of the Class L Certificate.

(d)    For federal income tax purposes, the Class L Certificates shall evidence the beneficial ownership of the Termination Fee Reserve Account and the Annual Fee Reserve Account. For federal income tax purposes, the Designated Investment Income Reserve Account shall be an asset of the Lower-Tier REMIC formed pursuant to the Trust Agreement.

Section 5.07    The Certificate Account. (a) The Administrator, for the benefit of the Certificateholders, shall establish and maintain in the name of the Owner Trustee on behalf of the Certificateholders an account (the "Certificate Account") entitled "Certificate Account, Wilmington Trust Company, as Owner Trustee, in trust for the holders of GreenPoint Mortgage Funding Trust 2006-HE1, Residual Certificates."

(b)    On each Payment Date, the Indenture Trustee shall withdraw from the Payment Account all amounts required to be deposited in the Certificate Account pursuant to Section 5.03 and remit such amount to the Owner Trustee or the Administrator for deposit into the Certificate Account. On each Payment Date, the Owner Trustee or the Administrator shall distribute all amounts on deposit in the Certificate Account to the Certificateholders in respect of the Residual Certificates as provided in the Trust Agreement. On the Payment Date on which the Note Principal Amount is reduced to zero, the Administrator shall distribute all amounts remaining on deposit in the Certificate Account to the Certificateholders in respect of the Residual Certificates in order to clear and terminate the Certificate Account in connection with the termination of this Agreement.

(c)    All distributions made on the Residual Certificates shall be made by wire transfer of immediately available funds to the account of such Certificateholders. The final distribution on the Residual Certificates will be made in like manner, but only upon presentment and surrender of such Residual Certificates at the location specified in the notice to the Certificateholders of such final distribution.

(d)    The Indenture Trustee shall invest, or cause to be invested, funds held in the Payment Account in Eligible Investments (which may be obligations of the Indenture Trustee) in accordance with the written instructions of the holders of the Class L Certificate. Absent its receipt of any such written instructions, the Indenture Trustee shall invest or cause to be invested such funds in the "First American Treasury Obligations Reserve Class". All such investments must be payable on demand or mature no later than one Business Day prior to the next Payment Date, and shall not be sold or disposed of prior to their maturity. All such Eligible Investments will be made in the name of the Indenture Trustee (in its capacity as such) or its nominee.

Section 5.08    Control of the Trust Accounts.

74

(a)     The Depositor, the Issuer and the Indenture Trustee hereby appoint U.S. Bank National Association as Securities Intermediary with respect to the Trust Accounts, and the Issuer has, pursuant to the Indenture, granted to the Indenture Trustee, for the benefit of the Securityholders and the Insurers, a security interest to secure all amounts due Securityholders and the Insurers hereunder in and to the Trust Accounts and the Security Entitlements to all Financial Assets credited to the Trust Accounts, including without limitation all amounts, securities, investments, Financial Assets, investment property and other property from time to time deposited in or credited to the Trust Accounts and all proceeds thereof, and the Depositor hereby grants to the Issuer, as collateral agent for the benefit of Certificateholders, a security interest to secure all amounts due Certificateholders hereunder in and to the Certificate Account and the Security Entitlements and all Financial Assets credited to the Certificate Account, including without limitation all amounts, securities, investments, Financial Assets, investment property and other property from time to time deposited in or credited to such account and all proceeds thereof.  Amounts held from time to time in the Trust Accounts will continue to be held by the Securities Intermediary for the benefit of the Indenture Trustee, as collateral agent, for the benefit of the Securityholders and the Insurers, and amounts held from time to time in the Certificate Account will continue to be held by the Securities Intermediary for the benefit of the Issuer, as collateral agent, for the benefit of the Certificateholders.  Upon the termination of the Trust or the discharge of the Indenture, the Indenture Trustee shall inform the Securities Intermediary of such termination.  By acceptance of their Securities or interests therein, the Securityholders shall be deemed to have appointed U.S. Bank National Association as Securities Intermediary and U.S. Bank National Association hereby accepts such appointment as Securities Intermediary.

(b)     With respect to the Trust Account Property credited to the Trust Accounts, or the Certificate Account, the Securities Intermediary agrees that:

(ii)     with respect to any Trust Account Property that is held in deposit accounts, each such deposit account shall be subject to the exclusive custody and control of the Securities Intermediary, and the Securities Intermediary shall have sole signature authority with respect thereto;

(iii)     the sole assets permitted in the Trust Accounts shall be those as the Securities Intermediary agrees to treat as Financial Assets; and

(iv)     any such Trust Account Property that is, or is treated as, a Financial Asset shall be physically delivered (accompanied by any required endorsements) to, or credited to an account in the name of, the Securities Intermediary or other eligible institution maintaining any Trust Account or the Certificate Account in accordance with the Securities Intermediary's customary procedures such that the Securities Intermediary or such other institution establishes a Security Entitlement in favor of the Indenture Trustee (or the Issuer, in the case of the Payment Account) with respect thereto over which the Securities Intermediary or such other institution has Control;

(c)     The Securities Intermediary hereby confirms that (A) each Trust Account and the Certificate Account is an account to which Financial Assets are or may be credited, and the Securities Intermediary shall, subject to the terms of this Agreement, treat the Indenture

75

95562v.14

Trustee, as collateral agent, as entitled to exercise the rights that comprise any Financial Asset credited to any Trust Account, and the Issuer, as collateral agent, as entitled to exercise the rights that comprise any Financial Asset credited to the Certificate Account, (B) all Trust Account Property in respect of any Trust Account or the Certificate Account will be promptly credited by the Securities Intermediary to such account, and (C) all securities or other property underlying any Financial Assets credited to any Trust Account or the Certificate Account shall be registered in the name of the Securities Intermediary, endorsed to the Securities Intermediary or in blank or credited to another securities account maintained in the name of the Securities Intermediary and in no case (x) will any Financial Asset credited to any Trust Account be registered in the name of the Depositor or the Issuer, payable to the order of the Depositor or the Issuer or specially endorsed to the Depositor or the Issuer, or (y) will any Financial Asset credited to the Certificate Account be registered in the name of the Depositor, payable to the order of the Depositor or specially endorsed to the Depositor, except to the extent the foregoing have been specially endorsed to the Securities Intermediary or in blank;

(d)    The Securities Intermediary hereby agrees that each item of property (whether investment property, Financial Asset, security, instrument or cash) credited to any Trust Account or the Certificate Account shall be treated as a Financial Asset;

(e)    If at any time the Securities Intermediary shall receive an Entitlement Order from the Indenture Trustee directing transfer or redemption of any Financial Asset relating to any Trust Account, the Securities Intermediary shall comply with such Entitlement Order without further consent by the Depositor, the Issuer or any other Person.  If at any time the Indenture Trustee notifies the Securities Intermediary in writing that the Issuer has been terminated or the Indenture discharged in accordance herewith and with the Trust Agreement or the Indenture, as applicable, and the security interest granted pursuant to the Indenture has been released, then thereafter if the Securities Intermediary shall receive any order from the Depositor or the Issuer directing transfer or redemption of any Financial Asset relating to any Trust Account, the Securities Intermediary shall comply with such Entitlement Order without further consent by the Indenture Trustee or any other Person;

If at any time the Securities Intermediary shall receive an Entitlement Order from the Issuer directing transfer or redemption of any Financial Asset relating to the Certificate Account, the Securities Intermediary shall comply with such Entitlement Order without further consent by the Depositor or any other Person.  If at any time the Issuer notifies the Securities Intermediary in writing that the Issuer has been terminated in accordance herewith and with the Trust Agreement and the security interest granted above has been released, then thereafter if the Securities Intermediary shall receive any order from the Depositor directing transfer or redemption of any Financial Asset relating to the Certificate Depositor Account, the Securities Intermediary shall comply with such entitlement order without further consent by the Issuer or any other Person;

(f)    In the event that the Securities Intermediary has or subsequently obtains by agreement, operation of law or otherwise a security interest in any Trust Account or the Certificate Account or any Financial Asset credited thereto, the Securities Intermediary hereby agrees that such security interest shall be subordinate to the security interest of the Indenture Trustee, in the case of the Trust Accounts, or of the Issuer, in the case of the Certificate

76

Account. The Financial Assets credited to the Trust Accounts, or the Certificate Account will not be subject to deduction, set-off, banker's lien, or any other right in favor of any Person other than the Indenture Trustee in the case of the Trust Accounts, or of the Issuer, in the case of the Certificate Account (except that the Securities Intermediary may set-off (i) all amounts due to it in respect of its customary fees and expenses for the routine maintenance and operation of the Trust Accounts, and the Certificate Account, and (ii) the face amount of any checks which have been credited to any Trust Account or the Certificate Account but are subsequently returned unpaid because of uncollected or insufficient funds);

(g)    There are no other agreements entered into between the Securities Intermediary in such capacity and the Depositor or the Issuer with respect to any Trust Account, or the Depositor with respect to the Certificate Account. In the event of any conflict between this Agreement (or any provision of this Agreement) and any other agreement now existing or hereafter entered into, the terms of this Agreement shall prevail;

(h)    The rights and powers granted under the Indenture and herein to (x) the Indenture Trustee have been granted in order to perfect its security interest in the Trust Accounts and the Security Entitlements to the Financial Assets credited thereto, and (y) the Issuer have been granted in order to perfect its security interest in the Certificate Account and the Security Entitlements to the Financial Assets credited thereto, and are powers coupled with an interest and will neither be affected by the bankruptcy of the Depositor or the Issuer nor by the lapse of time. The obligations of the Securities Intermediary hereunder shall continue in effect until the security interest of the Indenture Trustee in the Trust Accounts or of the Issuer in the Certificate Account, and in such Security Entitlements, has been terminated pursuant to the terms of this Agreement and the Indenture Trustee or the Issuer, as applicable, has notified the Securities Intermediary of such termination in writing; and

(i)    Notwithstanding anything else contained herein, the Depositor and the Issuer agree that the Trust Accounts and the Certificate Account will be established only with the Securities Intermediary or another institution meeting the requirements of this Section 5.08, which by acceptance of its appointment as Securities Intermediary agrees substantially as follows: (1) it will comply with Entitlement Orders related to the Trust Accounts issued by the Indenture Trustee, as collateral agent, without further consent by the Depositor or the Issuer, and with Entitlement Orders related to the Certificate Account issued by the Issuer, as collateral agent, without further consent by the Depositor; (2) until termination of the Issuer or discharge of the Indenture, it will not enter into any other agreement related to such accounts pursuant to which it agrees to comply with Entitlement Orders of any Person other than the Indenture Trustee, as collateral agent with respect to the Trust Accounts or the Issuer, as collateral agent with respect to the Certificate Account; and (3) all assets delivered or credited to it in connection with such accounts and all investments thereof will be promptly credited to the applicable account.

(j)    Notwithstanding the foregoing, the Issuer shall have the power, revocable by the Indenture Trustee or by the Owner Trustee with the consent of the Indenture Trustee, to instruct the Indenture Trustee and the Servicer to make withdrawals and distributions from the Trust Accounts for the purpose of permitting the Servicer or the Owner Trustee to carry out its

77

respective duties hereunder or permitting the Indenture Trustee to carry out its duties under the Indenture.

(k)      Each of the Depositor and the Issuer agrees to take or cause to be taken such further actions, to execute, deliver and file or cause to be executed, delivered and filed such further documents and instruments (including, without limitation, any financing statements under the UCC or this Agreement) as may be necessary to perfect the interests created by this Section 5.08 in favor of the Issuer and the Indenture Trustee and otherwise fully to effectuate the purposes, terms and conditions of this Section 5.08.  The Depositor shall:

(v)      promptly execute, deliver and file any financing statements, amendments, continuation statements, assignments, certificates and other documents with respect to such interests and perform all such other acts as may be necessary in order to perfect or to maintain the perfection of the Issuer's and the Indenture Trustee's security interest in the Trust Account Property; and

(vi)      make the necessary filings of financing statements or amendments thereto within five days after the occurrence of any of the following: (1) any change in its corporate name or any trade name or its jurisdiction of organization; (2) any change in the location of its chief executive office or principal place of business; and (3) any merger or consolidation or other change in its identity or corporate structure and promptly notify the Issuer and the Indenture Trustee of any such filings.

(vii)      Neither the Depositor nor the Issuer shall organize under the law of any jurisdiction other than the State under which each is organized as of the Closing Date (whether changing its jurisdiction of organization or organizing under an additional jurisdiction) without giving 30 days prior written notice of such action to its immediate and mediate transferee, including the Indenture Trustee and the Insurers (so long as the Notes are Outstanding or any Reimbursement Amounts remain due and owing to an Insurer).  Before effecting such change, each of the Depositor or the Issuer proposing to change its jurisdiction of organization shall prepare and file in the appropriate filing office any financing statements or other statements necessary to continue the perfection of the interests of its immediate and mediate transferees, including the Indenture Trustee, in the Trust Account Property.  In connection with the transactions contemplated by the Operative Agreements relating to the Trust Account Property, each of the Depositor and the Issuer authorizes its immediate or mediate transferee, including the Indenture Trustee, to file in any filing office any initial financing statements, any amendments to financing statements, any continuation statements, or any other statements or filings described in this Section 5.08.

None of the Securities Intermediary or any director, officer, employee or agent of the Securities Intermediary shall be under any liability to the Indenture Trustee or the Securityholders for any action taken, or not taken, in good faith pursuant to this Agreement, or for errors in judgment; *provided*, *however*, that this provision shall not protect the Securities Intermediary against any liability to the Indenture Trustee or the Securityholders which would otherwise be imposed by reason of the Securities Intermediary's willful misconduct, bad faith or negligence in the performance of its obligations or duties hereunder.  The Securities Intermediary

78

and any director, officer, employee or agent of the Securities Intermediary may rely in good faith on any document of any kind which, prima facie, is properly executed and submitted by any Person respecting any matters arising hereunder.  The Securities Intermediary shall be under no duty to inquire into or investigate the validity, accuracy or content of such document.  The Issuer shall indemnify the Securities Intermediary for and hold it harmless against any loss, liability or expense arising out of or in connection with this Agreement and carrying out its duties hereunder, including the costs and expenses of defending itself against any claim of liability, except in those cases where the Securities Intermediary has been guilty of bad faith, negligence or willful misconduct.  The foregoing indemnification shall survive any termination of this Agreement or the resignation or removal of the Securities Intermediary.

Section 5.09   Allocation of Charge-Off Amounts.  Charge-Off Amounts will first be allocated to reduce Excess Cashflow.  To the extent that Excess Cashflow has been reduced to zero, such Charge-Off Amounts will then be allocated first to the Class B Certificates until such Class has been reduced to zero, second to the Class L Certificates until such Class has been reduced to zero, and third to the Notes, pro rata, based on their respective Note Principal Amounts, until such Classes have been reduced to zero.

## ARTICLE VI

## EVENTS OF SERVICER TERMINATION

Section 6.01   Events of Servicer Termination; Indenture Trustee To Act; Appointment of Successor.

(a)   The occurrence of any one or more of the following events shall constitute an "Event of Servicer Termination":

(i)   Any failure by the Servicer to furnish to the Indenture Trustee the Loan data sufficient to prepare the reports described in Article IV which continues unremedied for a period of two (2) Business Days after the date upon which written notice of such failure shall have been given to the Servicer by the Indenture Trustee or to the Servicer and the Indenture Trustee by the Controlling Insurer or by Holders of not less than 25% of the Note Principal Amount of the Notes; or

(ii)   Any failure on the part of the Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer contained in this Agreement which continues unremedied for a period of 30 days (or, in the case of (i) the annual statement of compliance, (ii) the annual independent public accountants' servicing report or attestation, (iii) the annual assessment of servicing compliance required, or (iv) the certification attached thereto, five (5) days) after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Indenture Trustee or to the Master and the Indenture Trustee by the Controlling Party; or

(iii)   The entry against the Servicer of a decree or order by a court or agency or supervisory authority having jurisdiction under Title 11 of the United States Code or any

other applicable federal or state bankruptcy, insolvency or other similar law, or if a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Servicer or its property, and the continuance of any such decree or order unstayed and in effect for a period of 60 days or any Rating Agency reduces or withdraws or threatens to reduce or withdraw the rating of any of the Notes without taking into account the Class Ax Policy or the Class Ac Policy because of the financial condition or loan servicing capability of the Servicer; or

(iv)    The Servicer shall voluntarily submit to proceedings under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law relating to the Servicer or of or relating to all or substantially all of its property; or

(v)    The Servicer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors or voluntarily suspend payment of its obligations; or

(vi)    The Servicer shall be dissolved, or shall dispose of all or substantially all of its assets, or consolidate with or merge into another entity or shall permit another entity to consolidate or merge into it, such that the resulting entity does not meet the criteria for a successor servicer as specified in Section 4.33 hereof; or

(vii)    A sale or pledge of any of the rights of the Servicer hereunder or an assignment of this Agreement by the Servicer or a delegation of the rights or duties of the Servicer hereunder shall have occurred in any manner not otherwise permitted hereunder and without the prior written consent of the Controlling Party; or

(viii)    Any failure of the Servicer to remit to the Indenture Trustee any payment required to be made to the Indenture Trustee for the benefit of Noteholders and the Certificateholders or to the Insurers under the terms of this Agreement on any Servicer Remittance Date which failure continues unremedied for a period of two Business Days after the date upon which notice of such failure shall have been given to the Servicer by the Indenture Trustee or the Controlling Insurer.

If an Event of Servicer Termination described in clauses (i) through (vii) of this Section 6.01 shall occur, then, in each and every case, subject to applicable law, so long as any such Event of Servicer Termination shall not have been remedied within any period of time prescribed by this Section 6.01, the Indenture Trustee, by notice in writing to the Servicer may, with the consent of the Controlling Insurer (so long as the Controlling Insurer is the Controlling Party) and shall, if so directed by the Controlling Party, terminate all of the rights and obligations of the Servicer hereunder and in and to the Loans and the proceeds thereof.  If an Event of Servicer Termination described in clause (ix) of this Section 6.01 shall occur, then, in each and every case, subject to applicable law, so long as such Event of Servicer Termination shall not have been remedied within the time period prescribed by clause (ix) of this Section 6.01, the Indenture Trustee with the consent of the Controlling Insurer, by notice in writing to the Servicer, shall

promptly terminate all of the rights and obligations of the Servicer hereunder and in and to the Loans and the proceeds thereof. On or after the receipt by the Servicer of such written notice, all authority and power of the Servicer, and only in its capacity as Servicer under this Agreement, whether with respect to the Loans or otherwise, shall pass to and be vested in the Indenture Trustee pursuant to and under the terms of this Agreement; and the Indenture Trustee is hereby authorized and empowered to execute and deliver, on behalf of the defaulting Servicer as attorney-in-fact or otherwise, any and all documents and other instruments, and to do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Loans and related documents or otherwise. The defaulting Servicer agrees to cooperate with the Indenture Trustee in effecting the termination of the defaulting Servicer's responsibilities and rights hereunder as Servicer including, without limitation, providing the Indenture Trustee or its designee all documents and records in electronic or other form reasonably requested by it to enable the Indenture Trustee or its designee to assume the defaulting Servicer's functions hereunder and the transfer to the Indenture Trustee for administration by it of all amounts which shall at the time be or should have been deposited by the defaulting Servicer in the Collection Account maintained by such defaulting Servicer and any other account or fund maintained with respect to the Securities or thereafter received with respect to the Loans. The Servicer being terminated shall bear all costs of a servicing transfer, including but not limited to those of the Indenture Trustee reasonably allocable to specific employees and overhead, legal fees and expenses, accounting and financial consulting fees and expenses, and costs of amending the Agreement, if necessary.

The Indenture Trustee shall be entitled to be reimbursed by the Servicer (or by the Trust Estate, if the Servicer is unable to fulfill its obligations hereunder) for all costs associated with the transfer of servicing from the predecessor Servicer, including, without limitation, any costs or expenses associated with the complete transfer of all servicing data and the completion, correction or manipulation of such servicing data as may be required by the Indenture Trustee to correct any errors or insufficiencies in the servicing data or otherwise to enable the Indenture Trustee to service the Loans properly and effectively. If the terminated Servicer does not pay such reimbursement within thirty (30) days of its receipt of an invoice therefor, such reimbursement shall be an expense of the Trust Estate and the Indenture Trustee shall be entitled to withdraw such reimbursement from amounts on deposit in the Payment Account pursuant to Section 5.02(a) (without regard to any limitation on reimbursement of the Indenture Trustee set forth herein or in any other Operative Agreement); *provided* that the terminated Servicer shall reimburse the Trust Estate for any such expense incurred by the Trust Estate; and *provided, further*, that the Indenture Trustee (acting at the direction of the Controlling Insurer) shall decide whether and to what extent it is in the best interest of the Securityholders to pursue any remedy against any party obligated to make such reimbursement.

Notwithstanding the termination of its activities as Servicer, the terminated Servicer shall continue to be entitled to reimbursement to the extent provided in Article IV to the extent such reimbursement relates to the period prior to the Servicer's termination; provided, however, such right of reimbursement is net of any amounts owed by the terminated Servicer but paid from amounts on deposit in the Payment Account in accordance with the prior paragraph.

81

If any Event of Servicer Termination shall occur, of which a Responsible Officer of the Indenture Trustee has actual knowledge, the Indenture Trustee shall promptly notify the Insurers (so long as the Notes are Outstanding or any Reimbursement Amounts remain due and owing to an Insurer) and each Rating Agency of the nature and extent of such Event of Servicer Termination. The Indenture Trustee shall immediately give written notice to the Servicer upon the Servicer's failure to remit funds on the Servicer Remittance Date.

(b)    On and after the time the Servicer receives a notice of termination from the Indenture Trustee pursuant to Section 6.01(a) or the Indenture Trustee receives the resignation of the Servicer evidenced by an Opinion of Counsel pursuant to Section 4.29, the Indenture Trustee, unless another servicer shall have been appointed, shall be the successor in all respects to the Servicer in its capacity as such under this Agreement and the transactions set forth or provided for herein and shall have all the rights and powers and be subject to all the responsibilities, duties and liabilities relating thereto and arising thereafter placed on the Servicer hereunder, including the obligation to make Advances; *provided, however*, that any failure to perform such duties or responsibilities caused by the Servicer's failure to provide information required by this Agreement shall not be considered a default by the Indenture Trustee hereunder. In addition, the Indenture Trustee shall have no responsibility for any act or omission of the Servicer prior to the issuance of any notice of termination and shall have no liability relating to the representations and warranties of the Servicer set forth in Section 3.02. In the Indenture Trustee's capacity as such successor, the Indenture Trustee shall have the same limitations on liability herein granted to the Servicer. As compensation therefor, the Indenture Trustee shall be entitled to receive all compensation payable to the Servicer under this Agreement.

(c)    Notwithstanding the above, the Indenture Trustee may, if it shall be unwilling to continue to so act, or shall, if it is unable to so act, appoint, or petition a court of competent jurisdiction to appoint, any established housing and home finance institution servicer, bank or mortgage servicing institution having a net worth of not less than $15,000,000 and meeting such other standards for a successor servicer as are set forth in this Agreement, as the successor to such Servicer in the assumption of all of the responsibilities, duties or liabilities of the Servicer; *provided* that, any successor Servicer must be acceptable to the Controlling Insurer in consultation with the other Insurer, so long as no Insurer Default has occurred and is continuing with respect to such other Insurer. Such successor Servicer may be an Affiliate of the Indenture Trustee; *provided, however*, that, unless such Affiliate meets the net worth requirements and other standards set forth herein for a successor Servicer, the Indenture Trustee, in its individual capacity shall agree, at the time of such designation, to be and remain liable to the Issuer and the Indenture Trustee for such Affiliate's actions and omissions in performing its duties hereunder. In connection with such appointment and assumption, the Indenture Trustee may make such arrangements for the compensation of such successor out of payments on the Loans as it and such successor shall agree; *provided, however*, that no such compensation shall be in excess of that permitted to the Servicer hereunder. The Indenture Trustee and such successor shall take such actions, consistent with this Agreement, as shall be necessary to effectuate any such succession and may make other arrangements with respect to the servicing to be conducted hereunder which are not inconsistent herewith. The Servicer shall cooperate with the Indenture Trustee and any successor Servicer in effecting the termination of the Servicer's responsibilities and rights hereunder including, without

82

limitation, providing the Indenture Trustee and successor servicer, as applicable, all documents and records in electronic or other form reasonably requested by it to enable it to assume the Servicer's functions hereunder and the transfer to the Indenture Trustee or such successor servicer, as applicable, all amounts or investment property which shall at the time be or should have been deposited by the Servicer in the Collection Account and any other account or fund maintained with respect to the Securities or thereafter be received with respect to the Loans. Neither the Indenture Trustee nor any other successor Servicer shall be deemed to be in default hereunder by reason of any failure to make, or any delay in making, any distribution hereunder or any portion thereof caused by (i) the failure of the Servicer to deliver, or any delay in delivering, cash, documents or records to it, (ii) the failure of the Servicer to cooperate as required by this Agreement, (iii) the failure of the Servicer to deliver the Loan data to the Indenture Trustee as required by this Agreement or (iv) restrictions imposed by any regulatory authority having jurisdiction over the Servicer.

Section 6.02    Additional Remedies of Indenture Trustee Upon Event of Servicer Termination. During the continuance of any Event of Servicer Termination, so long as such Event of Servicer Termination shall not have been remedied, the Indenture Trustee, in addition to the rights specified in Section 6.01, shall have the right, in its own name and as trustee of an express trust, to take all actions now or hereafter existing at law, in equity or by statute to enforce its rights and remedies and to protect the interests, and enforce the rights and remedies, of the Securityholders (including the institution and prosecution of all judicial, administrative and other proceedings and the filings of proofs of claim and debt in connection therewith) and the Insurers. Except as otherwise expressly provided in this Agreement, no remedy provided for by this Agreement shall be exclusive of any other remedy, and each and every remedy shall be cumulative and in addition to any other remedy, and no delay or omission to exercise any right or remedy shall impair any such right or remedy or shall be deemed to be a waiver of any Event of Servicer Termination.

Section 6.03    Waiver of Defaults. The Controlling Party may, on behalf of all Securityholders, waive any default or Event of Servicer Termination by the Servicer in the performance of its obligations hereunder, except that a default in the making of any required deposit to the Payment Account or the Certificate Account that would result in a failure of the Indenture Trustee to make any required payment of principal of or interest on the Securities may only be waived with the consent of 100% of the affected Securityholders. Upon any such waiver of a past default, such default shall cease to exist, and any Event of Servicer Termination arising therefrom shall be deemed to have been remedied for every purpose of this Agreement. No such waiver shall extend to any subsequent or other default or impair any right consequent thereon except to the extent expressly so waived.

Section 6.04    Notification to Holders. Upon termination of the Servicer or appointment of a successor to the Servicer, in each case as provided herein, the Indenture Trustee shall promptly mail notice thereof by first class mail to the Insurers (so long as the Notes are Outstanding or any Reimbursement Amounts remain due and owing to an Insurer) and the Securityholders at their respective addresses appearing on the Note Register. The Indenture Trustee shall also, within 45 days after the occurrence of any Event of Servicer Termination known to the Indenture Trustee, give written notice thereof to Securityholders, unless such Event

of Servicer Termination shall have been cured or waived prior to the issuance of such notice and within such 45-day period.

Section 6.05    Directions by Securityholders and Duties of Indenture Trustee During Event of Servicer Termination.  During the continuance of any Event of Servicer Termination, the Controlling Party may direct the time, method and place of conducting any proceeding for any remedy available to the Indenture Trustee, or exercising any trust or power conferred upon the Indenture Trustee, under this Agreement; *provided, however*, that the Indenture Trustee shall be under no obligation to pursue any such remedy, or to exercise any of the trusts or powers vested in it by this Agreement (including, without limitation, (i) the conducting or defending of any administrative action or litigation hereunder or in relation hereto and (ii) the terminating of the Servicer or any successor servicer from its rights and duties as servicer hereunder) at the request, order or direction of the Controlling Party, unless such Controlling Party shall have offered to the Indenture Trustee reasonable security or indemnity against the cost, expenses and liabilities which may be incurred therein or thereby; and, provided further, that, the Indenture Trustee shall have the right to decline to follow any such direction if the Indenture Trustee, in accordance with an Opinion of Counsel, determines that the action or proceeding so directed may not lawfully be taken or if the Indenture Trustee in good faith determines that the action or proceeding so directed would involve it in personal liability for which it is not indemnified to its satisfaction.

Section 6.06    Action Upon Certain Failures of the Servicer and Upon Event of Servicer Termination.  In the event that a Responsible Officer of the Indenture Trustee shall have actual knowledge of any action or inaction of the Servicer that would become an Event of Servicer Termination upon the Servicer's failure to remedy the same after notice, the Indenture Trustee shall give notice thereof to the Servicer and, so long as the Notes are Outstanding or any Reimbursement Amounts remain due and owing to an Insurer, the Insurers.

Section 6.07    Preparation of Reports.

(a)    The Depositor shall prepare or cause to be prepared the initial current report on Form 8-K.  Thereafter, within 15 days after each Payment Date, the Indenture Trustee shall, in accordance with industry standards customary for securities similar to the Securities as required by the Exchange Act and the rules and regulations of the Securities and Exchange Commission (the "Commission"), file with the Commission via the Electronic Data Gathering and Retrieval System (EDGAR), the reports listed in subsections (e) through (g) of this Section 6.07 in respect of the Trust Fund as and to the extent required under the Exchange Act each of which reports and any amendment thereof shall be signed by the Exchange Act Signing Party.  Prior to January 30, 2007, the Indenture Trustee shall, in accordance with industry standards applicable to the Securities, file a Form 15 Suspension Notification with respect to the Issuer, if applicable.  Prior to March 31, 2007, the Indenture Trustee shall file (but will not execute) a Form 10-K, in substance conforming to industry standards applicable to the Securities, with respect to the Issuer.  The Form 10-K shall include the certification required pursuant to Rule 13a-14 under the Securities and Exchange Act of 1934, as amended (the "Form 10-K Certification") signed by an appropriate party or parties designated by the Depositor (which Form 10-K Certification the Indenture Trustee shall not be required to sign).  The Indenture Trustee shall have no liability for any delay in filing the Form 10-K due to the

84

failure of such party to timely sign the Form 10-K or Form 10-K Certification. The Depositor hereby grants to the Indenture Trustee a limited power of attorney to execute and file each such document on behalf of the Depositor (other than the Form 10-K and the related Form 10-K Certification). To the extent any certifications pursuant to Rule 13a-14 under the Securities and Exchange Act of 1934, as amended, or any similar certifications which may be required to be filed with any Form 8-K, the Depositor shall designate the appropriate party to sign such certification (which shall not be the Indenture Trustee). Such power of attorney shall continue until either the earlier of (i) receipt by the Indenture Trustee from the Depositor of written termination of such power of attorney and (ii) the termination of the Issuer. The Depositor agrees to promptly furnish to the Indenture Trustee, from time to time upon request, such further information, reports, and financial statements within its control related to this Agreement and the Loans as the Depositor reasonably deems appropriate to prepare and file all necessary reports with the Commission. The Indenture Trustee shall have no responsibility to file any items other than those specified in this Section 6.07.

(b)    If so requested, the Indenture Trustee shall sign a certification (in the form attached hereto as Exhibit G for the benefit of the Person(s) signing the Form 10-K Certification regarding certain aspects of such Form 10-K Certification (*provided, however,* that the Indenture Trustee shall not be required to undertake an analysis of, and shall have no responsibility for, any financial information, accountant's report, certification or other matter contained therein, except for computations performed by the Indenture Trustee and reflected in distribution reports. Nothing in this Section 6.07(b) shall relieve the Indenture Trustee of its responsibility for the matters as to which it is certifying in the form attached hereto as Exhibit G.

(c)    Each person (including their officers or directors) that signs any Form 10-K Certification shall be entitled to indemnification from the Trust Estate for any liability or expense incurred by it in connection with such certification, other than any liability or expense attributable to such Person's own bad faith, negligence or willful misconduct. The provisions of this subsection shall survive any termination of this Agreement and the resignation or removal of such Person.

(d)    If the Form 10-K is signed by the Depositor pursuant to Section 6.07(a) of this Agreement then not later than March 15 of each calendar year, the Servicer shall deliver a certification in the form attached hereto as Exhibit H.

(e)    Reports Filed on Form 10-D.

(i)    Within 15 days following each Payment Date (or such later date as may be permissible due to an extension of the filing deadline under the Exchange Act), the Indenture Trustee will prepare and file on a Distribution Report on Form 10-D with respect to the Trust Fund, which Distribution Report shall include a copy of the Payment Date Statement prepared by the Indenture Trustee in respect of the related Payment Date detailing all data elements specified in Item 1121(a) of Regulation AB other than those data elements specified in Item 1121(a)(11), (12) and (14); provided, that, the Indenture Trustee shall have received from the Depositor, the Issuer, the Servicer, the Insurers, the Custodian, or any Subcontractor or Subservicer therefor no later than three Business

85

Days after the related Payment Date, the following additional information, data, and materials, in a form suitable for conversion to the format required for filing with the Commission via EDGAR, required to be included in the Distribution Report on Form 10-D for such Payment Date:

> Item 1 – Distribution and Pool Performance Information (each of the data elements specified in Item 1121(a)(11), (12) and (14) of Regulation AB);

> Item 2 – Legal Proceedings (information required by Item 1117 of Regulation AB);

> Item 3 – Sale of Securities and Use of Proceeds (information required by Item 2 of Part II of Form 10-Q);

> Item 4 – Defaults Upon Senior Securities (information required by Item 3 of Part II of Form 10-Q);

> Item 5 – Submission of Matters to a Vote of Security Holders (information required by Item 4 of Part II of Form 10-Q);

> Item 6 – Significant Obligors of Pool Assets (information required by Item 1112(b) of Regulation AB);

> Item 7 – Significant Enhancement Provider Information (information required by Items 1114(b)(2) and 1115(b) of Regulation AB);

> Item 8 – Other Information (all other information required to be disclosed on Form 8-K during the period covered by the report and not yet reported); and

> Item 9 – Exhibits (all exhibits required to be filed by Form 10-D and Item 601 of Regulation S-K other than the Payment Date Statement to be provided by the Indenture Trustee).

(ii)    After preparing the Form 10-D, the Indenture Trustee shall forward electronically a draft copy of the Form 10-D to the Exchange Act Signing Party for review and approval. If the Servicer is the Exchange Act Signing Party and the Form 10-D includes Additional Form 10-D Disclosure, then the Form 10-D shall also be electronically distributed to the Depositor for review and approval. No later than two Business Days prior to the 15th calendar day after the related Payment Date, a senior officer of the Exchange Act Signing Party shall sign the Form 10-D and return an electronic or fax copy of such signed Form 10-D (with an original executed hard copy to follow by overnight mail) to the Indenture Trustee. If a Form 10-D cannot be filed on time or if a previously filed Form 10-D needs to be amended, the Indenture Trustee will follow the procedures set forth in subsection (h)(ii) of this Section 6.07. Promptly (but no later than one Business Day) after filing with the Commission, the Indenture Trustee will make available on its internet website a final executed copy of each Form 10-D.

86

Each party to this Agreement acknowledges that the performance by the Indenture Trustee of its duties under this Section 6.07(e) related to the timely preparation and filing of Form 10-D is contingent upon such parties strictly observing all applicable deadlines in the performance of their duties under this Section 6.07(e). The Indenture Trustee shall have no liability for any loss, expense, damage, claim arising out of or with respect to any failure to properly prepare and/or timely file such Form 10-D, where such failure results from the Indenture Trustee's inability or failure to obtain or receive, on a timely basis, any information from any other party hereto needed to prepare or file such Form 10-D, not resulting from its own negligence, bad faith or willful misconduct. The Indenture Trustee shall not be responsible (1) for the content of any of the information provided pursuant to clauses (e)(i)(A) – (I) above (unless such item is provided by and specific to the Indenture Trustee, in which case the Indenture Trustee will be responsible for the content of such information; *provided that* such information is not revised without the prior consent of the Indenture Trustee), (2) for determining whether any such information is required to be included in any Form 10-D, (3) for reformatting any information so that it is able to be filed on EDGAR or (4) for the failure to include any information if it is not provided to the Indenture Trustee on a timely basis (unless such item is specific to the Indenture Trustee, in which case the Indenture Trustee will be responsible for the failure to include such information, unless such information is not included in the final Form 10-D without the consent of the Indenture Trustee).

(f)    Reports Filed on Form 10-K.

(i)    On or prior to March 31 after the end of each fiscal year of the Trust Fund or such earlier date as may be required by the Exchange Act (the "10-K Filing Deadline") (it being understood that the fiscal year for the Trust Fund ends on December 31st of each year), commencing in March 2007, and, unless and until a Form 15 Suspension Notification shall have been filed, the Indenture Trustee shall prepare and file (but will not execute) a Form 10-K in respect of the Trust Fund, which shall include the certification required pursuant to Rule 13a-14 under the Exchange Act (the "Form 10-K Certification") signed by an appropriate party or parties (which Form 10-K Certification the Indenture Trustee shall not be required to prepare or sign) and such other information as is required by the Rules; *provided*, that, the Indenture Trustee shall have received from the Depositor, the Insurers (subject to the terms of the related Insurance Agreement), each Custodian, each Additional Servicer, and any Servicing Function Participant (each, a "Reporting Servicer"), no later than March 1 of each calendar year (and in the case of the Servicer, no later than the date set forth in Section 4.24 herein) prior to the filing deadline for such Annual Report, all information, data, assessments of compliance, accountant's attestations and exhibits required to be provided or filed with such Annual Report including information, data, assessments of compliance, accountant's attestations and exhibits required to be provided in connection with the following Items and other filing requirements of Form 10-K:

(A)    Item 9B – Other Information (information required to be reported on Form 8-K in the fourth quarter but not reported);

(B)    Item 15 – Exhibits and Financial Statement Schedules (including

87

all exhibits required to be filed pursuant to Item 601 of Regulation S-K under the Exchange Act other than the certification specified in Item 601(b)(31)(ii) of Regulation S-K and the Assessment of Compliance, Attestation Report, and Compliance Statement specified in Item 601(b)(33), (34) and (35) of Regulation S-K with respect to those Servicing Criteria as to which the Indenture Trustee is the Item 1122 Responsible Party);

(C)    Significant Obligor Financial Information (Item 1112(b) of Regulation AB);

(D)    Significant Enhancement Provider Financial Information (Items 1114(b)(2) and 1115(b) of Regulation AB);

(E)    Legal Proceedings (Item 1117 of Regulation AB);

(F)    Affiliations and Certain Relationships and Related; Transactions (Item 1119 of Regulation AB);

(G)    Compliance with Applicable Servicing Criteria (Item 1122 of Regulation AB); and

(H)    Servicer Compliance Statement (Item 1123 of Regulation AB).

(ii)    After preparing the Form 10-K, the Indenture Trustee shall forward electronically a draft copy of the Form 10-K to the Exchange Act Signing Party for review and approval. If the Servicer is the Exchange Act Signing Party and the Form 10-K includes Additional Form 10-K Disclosure, then the Form 10-K shall also be electronically distributed to the Depositor for review and approval. No later than the close of business New York City time on the 4th Business Day prior to the 10-K Filing Deadline, a senior officer of the Exchange Act Signing Party shall sign the Form 10-K and return an electronic or fax copy of such signed Form 10-K (with an original executed hard copy to follow by overnight mail) to the Indenture Trustee. If a Form 10-K cannot be filed on time or if a previously filed Form 10-K needs to be amended, the Indenture Trustee will follow the procedures set forth in subsection (h) of this Section 6.07. Promptly (but no later than one Business Day) after filing with the Commission, the Indenture Trustee will make available on its internet website a final executed copy of each Form 10-K. The parties to this Agreement acknowledge that the performance by the Indenture Trustee of its duties under this Section 6.07(f) related to the timely preparation and filing of Form 10-K is contingent upon such parties (and any Additional Servicer or Servicing Function Participant) strictly observing all applicable deadlines in the performance of their duties under this Section 6.07(f), Section 4.24(a), Section 4.24(b) and Section 4.25. The Indenture Trustee shall have no liability for any loss, expense, damage, claim arising out of or with respect to any failure to properly prepare and/or timely file such Form 10-K, where such failure results from the Indenture Trustee's inability or failure to obtain or receive, on a timely basis, any information from any other party hereto needed to prepare, arrange for execution or file such Form 10-K, not

88

resulting from its own negligence, bad faith or willful misconduct. The Indenture Trustee shall not be responsible (1) for the content of any of the information provided pursuant to clauses (f)(i)(A) – (H) above (unless such item is provided by and specific to the Indenture Trustee, in which case the Indenture Trustee will be responsible for the content of such information; *provided that* such information is not revised without the prior consent of the Indenture Trustee), (2) for determining whether any such information is required to be included in any Form 10-K, (3) for reformatting any information so that it is able to be filed on EDGAR or (4) for the failure to include any information if it is not provided to the Indenture Trustee on a timely basis (unless such item is specific to the Indenture Trustee, in which case the Indenture Trustee will be responsible for the failure to include such information, unless such information is not included in the final Form 10-K without the consent of the Indenture Trustee).

(iii)    Unless a Form 15 Suspension Notification with respect to the Trust Fund has been filed, if so requested, on or prior to March 15th of each year, beginning in March 2007, the Indenture Trustee shall sign a certification in the form attached hereto as Exhibit I (the "Back-Up Certification") for the benefit of the Exchange Act Signing Party and the Person who signs the Form 10-K Certification (the "Certifying Party") regarding certain aspects of such Form 10-K Certification, upon which the Exchange Act Signing Party and the Certifying Party can reasonably rely (*provided, however,* that the Indenture Trustee shall not be required to undertake an analysis of, and shall have no responsibility for, any financial information, the accountant's report, certification or other materials contained therein, except for those computations prepared by the Indenture Trustee and reflected in the distribution report). Nothing in this Section 6.07(f) shall relieve the Indenture Trustee of its responsibility for the matters as to which it is certifying in the form attached hereto as Exhibit I.

(iv)    Each person (including their officers or directors) that signs any Form 10-K Certification shall be entitled to indemnification from the Trust Fund for any liability or expense incurred by it in connection with such certification, other than any liability or expense attributable to such Person's own bad faith, negligence or willful misconduct. The provisions of this subsection shall survive any termination of this Agreement and the resignation or removal of such Person.

(g)    Reports Filed on Form 8-K.

(i)    Within four Business Days after the occurrence of an event requiring disclosure on Form 8-K (each such event, a "Reportable Event"), at the written direction and expense of the Depositor, the Indenture Trustee shall prepare and file Current Reports on Form 8-K in respect of the Trust Fund, as required by the Exchange Act; *provided*, that, the Depositor shall have timely notified the Indenture Trustee of an item reportable on a Current Report on Form 8-K and shall have delivered to the Indenture Trustee no later than two Business Days prior to the filing deadline for such Current Report, all information, data, and exhibits required to be provided or filed with such Current Report, including, particularly, information, data and exhibits, in a form suitable

for conversion to the format required for filing with the Commission via EDGAR, required to be provided in connection with the following Items of Form 8-K:

      (A)     Item 1.01 – Entry into a Material Definitive Agreement;

      (B)     Item 1.02 – Termination of a Material Definitive Agreement;

      (C)     Item 1.03 – Bankruptcy or Receivership;

      (D)     Item 2.04 – Triggering Events that Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement;

      (E)     Item 3.03 – Material Modification to Rights of Security Holders;

      (F)     Item 5.03 – Amendments of Articles of Incorporation or Bylaws; Change of Fiscal Year

      (G)     Item 6.02 – Change in Servicer or Indenture Trustee;

      (H)     Item 6.03 – Change in Credit Enhancement or Other External Support;

      (I)     Item 6.04 – Failure to Make a Required Distribution; and

      (J)     Item 6.05 – Securities Act Updating Disclosure.

      (ii)     After preparing the Form 8-K, the Indenture Trustee shall forward electronically, no later than Noon New York City time on the 3rd Business Day after the Reportable Event, a draft copy of the Form 8-K to the Exchange Act Signing Party for review and approval. If the Servicer is the Exchange Act Signing Party, then the Form 8-K shall also be electronically distributed to the Depositor for review and approval. No later than noon New York City time on the 4th Business Day after the Reportable Event, a senior officer of the Exchange Act Signing Party shall sign the Form 8-K and return an electronic or fax copy of such signed Form 8-K (with an original executed hard copy to follow by overnight mail). If a Form 8-K cannot be filed on time or if a previously filed Form 8-K needs to be amended, the Indenture Trustee will follow the procedures set forth in subsection (h) of this Section 6.07. Promptly (but no later than one Business Day) after filing with the Commission, the Indenture Trustee will, make available on its internet website a final executed copy of each Form 8-K. The parties to this Agreement acknowledge that the performance by the Indenture Trustee of its duties under this Section 6.07(g) related to the timely preparation and filing of Form 8-K is contingent upon such parties strictly observing all applicable deadlines in the performance of their duties under this Section 6.07(g). The Indenture Trustee shall have no liability for any loss, expense, damage, claim arising out of or with respect to any failure to properly prepare and/or timely file such Form 8-K, where such failure results from the Indenture Trustee's inability or failure to obtain or receive, on a timely basis, any information from any other party hereto needed to prepare or file such Form 8-K, not resulting from its

own negligence, bad faith or willful misconduct.    The Indenture Trustee shall not be responsible (1) for the content of any of the information provided pursuant to clauses (g)(i)(A) – (J) above (unless such item is provided by and specific to the Indenture Trustee, in which case the Indenture Trustee will be responsible for the content of such information; *provided that* such information is not revised without the prior consent of the Indenture Trustee), (2) for determining what information is required to be filed on a Form 8-K in connection with the transactions contemplated by this Agreement (unless such information is specific to the Indenture Trustee, in which case the Indenture Trustee will be responsible for making such a determination, unless such information is not included in the final Form 8-K without the consent of the Indenture Trustee), (3) for reformatting any information so that it is able to be filed on EDGAR or (4) for any late filing of a Form 8-K in the event that it does not receive all information, data, signatures and exhibits required to be provided or filed on or prior to the second Business Day prior to the applicable filing deadline.

(h)    Delisting; Amendments; Late Filings.

(i)    Prior to January 30 of the first year in which the Indenture Trustee is able to do so under applicable law, unless otherwise directed by the Depositor in writing, the Indenture Trustee shall prepare and file a Form 15 relating to the automatic suspension of reporting in respect of the Trust Fund under the Exchange Act.

(ii)    In the event that the Indenture Trustee becomes aware that it will be unable to timely file with the Commission all or any required portion of any Form 8-K, 10-D or 10-K required to be filed by this Agreement because required disclosure information was either not delivered to it or delivered to it after the delivery deadlines set forth in this Agreement or for any other reason, the Indenture Trustee will immediately notify the Depositor. In the case of Form 10-D and 10-K, the parties to this Agreement and the Servicer will cooperate to prepare and file a Form 12b-25 and a 10-D/A and 10-K/A as applicable, pursuant to Rule 12b-25 of the Exchange Act. In the case of Form 8-K, the Indenture Trustee will, upon receipt of all required Form 8-K Disclosure Information and upon the approval and direction of the Depositor, include such disclosure information on the next Form 10-D. In the event that any previously filed Form 8-K, 10-D or 10-K needs to be amended, the Indenture Trustee will notify the Depositor and the Servicer and such parties will cooperate to prepare any necessary 8-K/A, 10-D/A or 10-K/A. Any Form 15, Form 12b-25 or any amendment to Form 8-K, 10-D or 10-K shall be signed by a senior officer of the Exchange Act Signing Party. The parties to this Agreement acknowledge that the performance by the Indenture Trustee of its duties under this Section 6.07(h) related to the timely preparation and filing of Form 15, a Form 12b-25 or any amendment to Form 8-K, 10-D or 10-K is contingent upon each such party performing its duties under this Section. The Indenture Trustee shall have no liability for any loss, expense, damage, claim arising out of or with respect to any failure to properly prepare and/or timely file any such Form 15, Form 12b-25 or any amendments to Forms 8-K, 10-D or 10-K, where such failure results from the Indenture Trustee's inability or failure to obtain or receive, on a timely basis, any information from any other party hereto needed to prepare, arrange for execution or file such Form 15,

Form 12b-25 or any amendments to Forms 8-K, 10-D or 10-K, not resulting from its own negligence, bad faith or willful misconduct.

(i)       The Indenture Trustee, with the prior consent of the Depositor, may include in any Exchange Act report all relevant information, data, and exhibits as the Indenture Trustee may receive in connection with such report irrespective of any provision that may permit the exclusion of such material. For example, the Indenture Trustee, with the prior consent of the Depositor, may file all Assessments of Compliance, Attestation Reports and Compliance Statements timely received from any Item 1122 Responsible Party irrespective of any applicable minimum pool asset percentage requirement for disclosure related to such Item 1122 Responsible Party.

(j)       Any party that signs any Exchange Act report that the Indenture Trustee is required to file shall provide to the Indenture Trustee prompt notice of the execution of such Exchange Act report along with the name and contact information for the person signing such report and shall promptly deliver to the Indenture Trustee the original executed signature page for such report. In addition, each of the parties agrees to provide to the Indenture Trustee such additional information related to such party as the Indenture Trustee may reasonably request, including evidence of the authorization of the person signing any certification or statement, financial information and reports, and such other information related to such party or its performance hereunder.

Section 6.08    Compliance with Regulation AB.

Each of the parties hereto acknowledges and agrees that the purpose of Sections 6.07 of this Agreement is to facilitate compliance by the Seller, the Servicer, the Depositor and the Indenture Trustee with the provisions of Regulation AB, as such may be amended or clarified from time to time. Therefore, each of the parties agrees that (a) the obligations of the parties hereunder shall be interpreted in such a manner as to accomplish compliance with Regulation AB, (b) the parties' obligations hereunder will be supplemented and modified as necessary to be consistent with any such amendments, interpretive advice or guidance from the Commission, convention or consensus among active participants in the asset-backed securities markets, or otherwise in respect of the requirements of Regulation AB and (c) the parties shall comply with reasonable requests made by the Seller, the Servicer, the Depositor or the Indenture Trustee for delivery of additional or different information, to the extent such information is available or reasonably attainable, as the Seller, the Servicer, the Depositor or the Indenture Trustee may determine in good faith is necessary to comply with the provisions of Regulation AB.

## ARTICLE VII

## RAPID AMORTIZATION EVENTS

Section 7.01    Rapid Amortization Events. The following shall constitute Rapid Amortization Events with respect to the Notes:

(a)    default in the payment of any interest on the Notes when the same becomes due and payable or the failure to pay any installment of principal of the Notes in accordance Section 5.03(b) of this Agreement, and such default or failure continues for a period of five Business Days, or a failure to pay the entire Note Principal Amount of any Note when the same becomes due and payable under the Indenture or on the Final Scheduled Payment Date;

(b)    failure on the part of the Issuer, the Depositor, the Seller, the Servicer or any Originator to observe or perform in any material respect any other material covenants or agreements set forth in the Mortgage Loan Sale Agreement, this Agreement, the Indenture or the related Transfer Agreement, as the case may be, which failure materially and adversely affects the Noteholders or the Insurers and continues unremedied for a period of 30 days after written notice of such failure requiring the same to be remedied shall have been given to the Issuer, the Depositor, the Seller, the Servicer or any Originator as the case may be, by the Indenture Trustee or the Insurers in accordance with the provisions of the Indenture;

(c)    the Issuer, the Servicer, the Depositor, or the Seller or any of their Subsidiaries or Affiliates shall voluntarily go into liquidation, consent to the appointment of a conservator or receiver or liquidator or similar person in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Issuer, the Servicer, the Depositor, or the Seller or of or relating to all or substantially all of such Person's property, or a decree or order of a court or agency or supervisory authority having jurisdiction in the premises for the appointment of a conservator, receiver, liquidator or similar person in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Issuer, the Servicer, the Depositor, or the Seller and such decree or order shall have remained in force undischarged or unstayed for a period of 30 days; or the Issuer, the Servicer, the Depositor, or the Seller shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors or voluntarily suspend payment of its obligations;

(d)    the Issuer becomes subject to regulation by the Commission as an investment company within the meaning of the Investment Company Act of 1940, as amended;

(e)    any draw under either Policy remains unreimbursed for a period of 90 days; or

(f)    An Event of Servicer Termination under this Agreement, has occurred.

In the case of any event described in clauses (a), (b), (e) and (f) above, a Rapid Amortization Event will be deemed to have occurred only if, after the applicable grace period, if any, described in this Agreement, any of the Indenture Trustee or Holders holding Notes evidencing more than 50% of the Outstanding Amount of the Notes, in each case with the prior written consent of the Controlling Insurer, or the Controlling Insurer, by written notice to the Issuer, the Insurers, the Seller, and the Servicer (and to the Indenture Trustee, if given by the Noteholders or the Controlling Insurer) declare that a Rapid Amortization Event has occurred as of the date of such notice.

If a Rapid Amortization Event occurs due to the occurrence of (c) or (d) above, a Rapid Amortization Event will automatically occur.

If the Seller, the Depositor or the Servicer or any other their respective affiliates voluntarily files a bankruptcy petition or goes into liquidation or any person is appointed a receiver or bankruptcy trustee of such entity, on the day of any such filing or appointment with respect to (i) the Seller, or any of its Subsidiaries or Affiliates, no further Additional Balances will be transferred to the Issuer and the Seller will promptly give notice of any such filing or appointment to the Indenture Trustee, (ii) the Servicer or any of its Subsidiaries or Affiliates, no further Additional Balances relating to Loans serviced by the Servicer will be transferred to the Issuer and the Servicer will promptly give notice to the Indenture Trustee and the Insurers (so long as the Notes are Outstanding or any Reimbursement Amounts remain due and owing to an Insurer) of any such filing or appointment and (iii) the Depositor or any of its Subsidiaries or Affiliates, the Depositor will promptly give notice of any such filing or appointment to the Indenture Trustee. Within 15 days, the Indenture Trustee notify the Holders of the Notes of the occurrence of such event.

Upon the occurrence of a Rapid Amortization Event, the Servicer shall only receive principal funds upon the transfer of Additional Balances to the Trust from the Reserve Fund, funded by the purchase of such Additional Balances by the Holder of the Class L Certificate in accordance with Section 2.01(b).

## ARTICLE VIII

## TERMINATION

Section 8.01    Termination.    The respective obligations and responsibilities of the Servicer, the Depositor, the Issuer and the Indenture Trustee created hereby (other than obligations expressly stated to survive the termination of the Trust) shall terminate on the date which is the earlier to occur of:

(i)    the Termination Date; and

(ii)    the date that is 21 years from the death of the last survivor of the descendants of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James's, living on the date hereof.

Section 8.02    Termination Prior to Final Scheduled Payment Date; and Optional Redemption.

(a)    On the Payment Date on or after which the aggregate Note Principal Amount (after giving effect to payments of principal on such Payment Date) declines to 10% or less of the Original Note Principal Amount of all Classes of Notes ("Optional Redemption Date"), the Servicer, acting at the direction of the holders of the Class L Certificates, may purchase from the Issuer all (but not fewer than all) of the Loans and all other property, with the consent of the applicable Insurer if such purchase will result in a draw on the Class Ax Policy or the Class Ac Policy or any Reimbursement Amounts are owing to the Insurers or will be owing to

the Insurers as a result of such purchase, of the Issuer at a cash price equal to the Optional
Redemption Price. The Servicer shall deliver written notice of its intention to exercise such
option to the Issuer, the Insurers (if the Notes are Outstanding or any Reimbursement
Amounts are due and owing to the Insurers), the Indenture Trustee and the Servicer not less
than ten days prior to the applicable Payment Date.

In connection with such purchase, the Servicer shall remit to the Indenture Trustee all
amounts then on deposit in the Collection Account in respect of the related Total Distribution
Amount for deposit to the Payment Account, which deposit shall be deemed to have occurred
immediately preceding such purchase. Promptly following any such purchase, the Indenture
Trustee or the Custodian shall release the Mortgage Files to the purchaser of such Loans
pursuant to this Section 8.02, or otherwise upon its order

Section 8.03    [Reserved].

Section 8.04    <u>Certain Notices upon Final Payment</u>. The Servicer or the Administrator,
as applicable, shall give the Issuer, the Indenture Trustee, the Insurers (so long as the Notes are
Outstanding or any Reimbursement Amounts remain due and owing to an Insurer), each Rating
Agency, each Securityholder and the Depositor at least 30 days' prior written notice of the date
on which the Issuer is expected to terminate in accordance with Section 8.01, or the date on
which the Securities will be redeemed in accordance with Section 8.02. Not later than the fifth
Business Day in the Due Period in which the final distribution in respect to the Securities is
payable to the Securityholders, the Indenture Trustee shall mail to the Securityholders a notice
specifying the procedures with respect to such final distribution. The Indenture Trustee shall
give a copy of such notice to each Rating Agency and the Insurers (so long as the Notes are
Outstanding or any Reimbursement Amounts remain due and owing to an Insurer) at the time
such notice is given to Securityholders. Following the final distribution thereon, such Securities
shall become void, no longer outstanding and no longer evidence any right or interest in the
Loans, the Mortgage Files or any proceeds of the foregoing.

Section 8.05    <u>Beneficiaries</u>. This Agreement will inure to the benefit of and be binding
upon the parties hereto, the Securityholders, and their respective successors and permitted
assigns. In addition, each Insurer and its respective successors and assigns shall be third-party
beneficiaries to the provisions of this Agreement, and shall be entitled to rely upon and directly
to enforce the provisions of this Agreement as if a party hereto. No other Person will have any
right or obligation hereunder.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

Section 9.01    <u>Binding Nature of Agreement; Assignment</u>. This Agreement shall be
binding upon and inure to the benefit of the parties hereto and their respective successors and
permitted assigns.

Section 9.02    <u>Entire Agreement</u>. This Agreement contains the entire agreement and
understanding among the parties hereto with respect to the subject matter hereof, and supersedes

all prior and contemporaneous agreements, understandings, inducements and conditions, express
or implied, oral or written, of any nature whatsoever with respect to the subject matter hereof.
The express terms hereof control and supersede any course of performance and/or usage of the
trade inconsistent with any of the terms hereof.

Section 9.03    Amendment.

(a)    This Agreement may be amended from time to time by the Depositor, the
Issuer, the Servicer, the Indenture Trustee and the Holder of the Residual Certificates, without
notice to or the consent of any of the Holders of the Notes but, so long as the Notes are
Outstanding or any Reimbursement Amounts remain due and owing to an Insurer, with the
consent of the Insurers, (i) to cure any ambiguity, (ii) to cause the provisions herein to
conform to or be consistent with or in furtherance of the statements made with respect to the
Securities, the Issuer or this Agreement in any Prospectus, or to correct or supplement any
provision herein which may be inconsistent with any other provisions herein or in any other
Operative Agreement, (iii) to make any other provisions with respect to matters or questions
arising under this Agreement or (iv) to add, delete, or amend any provisions to the extent
necessary or desirable to comply with any requirements imposed by the Code, ERISA and
their related regulations. No such amendment effected pursuant to the preceding sentence
shall, as evidenced by an Opinion of Counsel (which shall be an expense of the party
requesting such amendment and shall not be an expense of the Trust), cause an Adverse
REMIC Event, nor shall such amendment adversely affect in any material respect the interests
of any Holder or the Insurers. Prior to entering into any amendment without the consent of
Holders pursuant to this paragraph, the Indenture Trustee may require an Opinion of Counsel
(at the expense of the party requesting such amendment) to the effect that such amendment is
permitted under this paragraph. Any such amendment shall be deemed not to adversely affect
in any material respect any Holder and the opinion to such effect will not be required to be
given, if the Indenture Trustee receives written confirmation from each Rating Agency that
such amendment will not cause such Rating Agency to reduce the then current rating assigned
to the Notes without taking into account the Class Ax Policy or the Class Ac Policy.

(b)    This Agreement may also be amended from time to time by the Depositor, the
Issuer, the Servicer and the Indenture Trustee with the consent of the Holders of not less than
66-2/3% of the Note Principal Amount of the Notes, the Insurers (so long as the Notes are
Outstanding or any Reimbursement Amounts remain due and owing to an Insurer) and of the
Holders of not less than 66-2/3% of the Class Principal Balance of the Class L Certificates and
the Class B Certificates for the purpose of adding any provisions to or changing in any manner
or eliminating any of the provisions of this Agreement or of modifying in any manner the
rights of the Holders; *provided, however*, that no such amendment shall be made unless the
Indenture Trustee receives an Opinion of Counsel (which shall be an expense of the party
requesting such amendment and shall not be an expense of the Trust), to the effect that such
amendment will not cause an Adverse REMIC Event; *provided, further*, that no such
amendment may (i) reduce in any manner the amount of, or delay the timing of, payments
which are required to be distributed on any Class of Securities, without the consent of the
Holders of such Class or (ii) reduce the aforesaid percentages of Note Principal Amount of
Notes or Class Principal Balance of Residual Certificates, the Holders of which are required to
consent to any such amendment without the consent of the Holders of 100% of the Note

96

Principal Amount of the Notes and 100% of the Class Principal Balance of the Class B
Certificates and the Class L Certificates affected thereby. For purposes of this paragraph,
references to "Holder" or "Holders" shall be deemed to include, in the case of Book-Entry
Notes, the related Note Owners.

(c)    Promptly after the execution of any such amendment, the Indenture Trustee
shall furnish written notification of the substance of such amendment to each Holder, the
Insurers (so long as the Notes are Outstanding or any Reimbursement Amounts remain due
and owing to an Insurer), the Depositor and to each Rating Agency.

(d)    It shall not be necessary for the consent of Holders under this Section 9.03 to
approve the particular form of any proposed amendment, but it shall be sufficient if such
consent shall approve the substance thereof. The manner of obtaining such consents and of
evidencing the authorization of the execution thereof by Holders shall be subject to such
reasonable regulations as the Indenture Trustee may prescribe.

Section 9.04    Acts of Securityholders. Except as otherwise specifically provided herein,
whenever Securityholder action, consent or approval is required under this Agreement, such
action, consent or approval shall be deemed to have been taken or given on behalf of, and shall
be binding upon, all Securityholders if the Majority Securityholders agree to take such action or
give such consent or approval; *provided*, *however*, that any action, consent or approval required
under this Agreement by the Securityholders will instead be taken or given by the Controlling
Insurer.

Section 9.05    Recordation of Agreement. To the extent permitted by applicable law,
this Agreement, or a memorandum thereof if permitted under applicable law, is subject to
recordation in all appropriate public offices for real property records in all of the counties or
other comparable jurisdictions in which any or all of the properties subject to the Mortgages are
situated, and in any other appropriate public recording office or elsewhere, such recordation to be
effected by the Depositor on direction and at the expense of Holders of not less than 66-2/3% of
the Note Principal Amount of each Class of Notes and of the Holder of the Residual Certificates
requesting such recordation, but only when accompanied by an Opinion of Counsel to the effect
that such recordation materially and beneficially affects the interests of the Securityholders, or is
necessary for the administration or servicing of the Loans.

Section 9.06    Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY,
AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW
YORK, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES
HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS
WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES APPLIED IN NEW YORK.

Section 9.07    Notices. All demands, notices and communications hereunder shall be in
writing and shall be deemed to have been duly given when received by (a) in the case of the
Depositor, Structured Asset Securities Corporation, 745 Seventh Avenue, New York, New York
10019, Attention: Mortgage Finance Greenpoint 2006-HE1, (b) in the case of the Indenture
Trustee, the Paying Agent or the Administrator, U.S. Bank National Association, at its Corporate
Trust Office, (c) in the case of the Servicer, GMAC Mortgage Corporation, 100 Witmer Road,

97

Horsham, Pennsylvania 19044 Attention: Frank Ruhl, Vice President, (d) in the case of the Issuer, c/o Wilmington Trust Company, Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890-0001 (e) if to the Class Ax Insurer, XL Capital Assurance Inc., 1221 Avenue of the Americas, New York, New York 10020, Attention: Attention: Surveillance, and (f) if to the Class Ac Insurer, CIFG Assurance North America, Inc., 825 Third Avenue, Sixth Floor, New York, New York 10022, Attention: General Counsel or as to each party such other address as may hereafter be furnished by such party to the other parties in writing. Any notice required or permitted to be mailed to a Holder shall be given by first class mail, postage prepaid, at the address of such Holder as shown in the applicable register. Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have been duly given, whether or not the Holder receives such notice.

Section 9.08   Severability of Provisions.  If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or of the Securities or the rights of the Holders thereof.

Section 9.09   Indulgences; No Waivers.  Neither the failure nor any delay on the part of a party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.  No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver.

Section 9.10   Headings Not To Affect Interpretation.  The headings contained in this Agreement are for convenience of reference only, and they shall not be used in the interpretation hereof.

Section 9.11   Benefits of Agreement.  Nothing in this Agreement or in the Securities, express or implied, shall give to any Person, other than the parties to this Agreement and their successors hereunder and the Holders of the Securities, any benefit or any legal or equitable right, power, remedy or claim under this Agreement.

Section 9.12   Special Notices to the Rating Agencies.

(a)   The Seller shall give prompt notice to each Rating Agency of the occurrence of any of the following events of which it has notice:

(ii)   any amendment to this Agreement pursuant to Section 9.03; and

(iii)   the making of a final payment hereunder.

98

     (b)    All notices to the Rating Agencies provided for by this Section 9.12 shall be in writing and sent by first class mail, telecopy or overnight courier, as follows:

if to Moody's:

    Moody's Investors Service, Inc.
    99 Church Street
    New York, New York 10004
    Attention:  Residential Mortgages
    Fax no.: (212) 553-4392

if to S&P:

    Standard & Poor's Ratings Service, a division
    of The McGraw-Hill Companies, Inc.
    55 Water Street
    New York, New York  10041
    Attention:  Residential Mortgages
    Fax no.: (212) 438-2661

     (c)    The Servicer shall make available to the Rating Agencies each report prepared pursuant to Section 4.08.

    Section 9.13   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

    Section 9.14   Execution by the Issuer.  It is expressly understood and agreed by the parties hereto that (a) this Agreement is executed and delivered by Wilmington Trust Company, not individually or personally but solely as Owner Trustee of the Issuer, in the exercise of the powers and authority conferred and vested in it as trustee, (b) each of the representations, undertakings and agreements herein made on the part of the Issuer is made and intended not as personal representations, undertakings and agreements by Wilmington Trust Company but is made and intended for the purpose of binding only the Issuer, (c) nothing herein contained shall be construed as creating any liability on Wilmington Trust Company, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any person claiming by, through or under the parties hereto and (d) under no circumstances shall Wilmington Trust Company be personally liable for the payment of any indebtedness or expenses of the Issuer or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by the Issuer under this Agreement or any other document.

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective officers hereunto duly authorized as of the day and year first above written.

GREENPOINT MORTGAGE FUNDING TRUST 2006-HE1

By:   WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

By: _____
Name:
Title:   Robert J. Perkins
      Sr Financial Services Officer

STRUCTURED ASSET SECURITIES CORPORATION,
as Depositor

By: _____
Name:
Title:

U.S. BANK NATIONAL ASSOCIATION,
as Indenture Trustee

By: _____
Name:
Title:

GMAC MORTGAGE CORPORATION,
as Servicer

By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective officers hereunto duly authorized as of the day and year first above written.

GREENPOINT MORTGAGE FUNDING TRUST 2006-HE1

By:   WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

By:_____
Name:
Title:

STRUCTURED ASSET SECURITIES CORPORATION, as Depositor

By:_____
Name: Ellen Kiernan
Title: Senior Vice President

U.S. BANK NATIONAL ASSOCIATION, as Indenture Trustee

By: _____
Name:
Title:

GMAC MORTGAGE CORPORATION, as Servicer

By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective officers hereunto duly authorized as of the day and year first above written.

GREENPOINT MORTGAGE FUNDING TRUST 2006-HE1

By:    WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee


By:_____
Name:
Title:

STRUCTURED ASSET SECURITIES CORPORATION,
as Depositor

By:_____
Name:
Title:

U.S. BANK NATIONAL ASSOCIATION,
as Indenture Trustee

By: _____
Name:            David Ducios
Title:            Vice President

GMAC MORTGAGE CORPORATION,
as Servicer


By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective officers hereunto duly authorized as of the day and year first above written.

GREENPOINT MORTGAGE FUNDING TRUST 2006-HE1

By:   WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

By:_____
Name:
Title:

STRUCTURED ASSET SECURITIES CORPORATION, as Depositor

By:_____
Name:
Title:

U.S. BANK NATIONAL ASSOCIATION, as Indenture Trustee

By: _____
Name:
Title:

GMAC MORTGAGE CORPORATION, as Servicer

By _____
Name:
Title:

Solely for purposes of Article II, Sections 3.03,
3.04, 5.05, 5.06 and 7.03, accepted and
agreed to by:

LEHMAN BROTHERS HOLDINGS INC.


By:_____
Name: Thomas A. O'Hara
Title: Managing Director

EXHIBIT A-1

FORM OF INITIAL CERTIFICATION

_____
Date

U.S.Bank National Association
One Federal Street, Third Floor
Boston, Massachusetts 02110
Attention:  Greenpoint Mortgage Funding Trust 2006-HE1

Structured Asset Securities Corporation
745 7th Avenue
New York, New York  10019

GMAC Mortgage Corporation
100 Witmer Road
Horsham, Pennsylvania 19044
Attention: Frank Ruhl, Vice President

XL Capital Assurance, Inc.
1221 Avenue of the Americas
New York, New York 10020
Attention: Surveillance

CIFG Assurance North America, Inc.
825 Third Avenue, Sixth Floor
New York, New York 10022
Attention: General Counsel

> Re:    Transfer and Servicing Agreement (the "Transfer and Servicing Agreement")
> dated as of August 1, 2006 by and among Structured Asset Securities
> Corporation, as Depositor, U.S. Bank National Association, as Indenture Trustee,
> GMAC Mortgage Corporation, as Servicer, and GreenPoint Mortgage Funding
> Trust 2006-HE1, as Issuer

Ladies and Gentlemen:

In accordance with Section 2.02(a) of the Transfer and Servicing Agreement, subject to review of the contents thereof, the undersigned, as Custodian, hereby certifies that it has received the documents listed in Section 2.01(d) of the Transfer and Servicing Agreement for each Mortgage File pertaining to each Loan listed on Schedule A, to the Transfer and Servicing Agreement, subject to any exceptions noted on Schedule I hereto.

A-1-1

95562v.14

Capitalized words and phrases used herein and not otherwise defined herein shall have the respective meanings assigned to them in the Transfer and Servicing Agreement. This certificate is subject in all respects to the terms of Section 2.02 of the Transfer and Servicing Agreement and the Transfer and Servicing Agreement sections cross-referenced therein.

[Custodian]

By:_____

     Name:
     Title:

A-1-2

## EXHIBIT A-2

## FORM OF INTERIM CERTIFICATION

_____

Date

U.S. Bank National Association
One Federal Street, Third Floor
Boston, Massachusetts 02110
Attention: Greenpoint Mortgage Funding Trust 2006-HE1.

Structured Asset Securities Corporation
745 7th Avenue
New York, New York 10019

GMAC Mortgage Corporation
100 Witmer Road
Horsham, Pennsylvania 19044
Attention: Frank Ruhl, Vice President

XL Capital Assurance, Inc.
1221 Avenue of the Americas
New York, New York 10020
Attention: Surveillance

CIFG Assurance North America, Inc.
825 Third Avenue, Sixth Floor
New York, New York 10022
Attention: General Counsel

Re:   Transfer and Servicing Agreement (the "Transfer and Servicing Agreement")
      dated as of August 1, 2006 by and among Structured Asset Securities
      Corporation, as Depositor, U.S. Bank National Association, as Indenture Trustee,
      GMAC Mortgage Corporation, as Servicer, and GreenPoint Mortgage Funding
      Trust 2006-HE1, as Issuer

Ladies and Gentlemen:

In accordance with Section 2.02(b) of the Transfer and Servicing Agreement, the
undersigned, as Custodian, hereby certifies that as to each Loan listed in the Mortgage Loan
Schedule (other than any Loan paid in full or listed on Schedule I hereto) it (or its custodian) has
received the applicable documents listed in Section 2.01(d) of the Transfer and Servicing
Agreement.

A-2-1

95562v.14

The undersigned hereby certifies that as to each Loan identified on the Mortgage Loan Schedule, other than any Loan listed on Schedule I hereto, it has reviewed the documents identified above and has determined that each such document appears regular on its face and appears to relate to the Loan identified in such document.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Transfer and Servicing Agreement. This certificate is qualified in all respects by the terms of said Transfer and Servicing Agreement including, but not limited to, Section 2.02(b).

[Custodian]

By: _____
     Name:
     Title:

A-2-2

EXHIBIT A-3

FORM OF FINAL CERTIFICATION

_____
Date

U.S.Bank National Association
One Federal Street, Third Floor
Boston, Massachusetts 02110
Attention:  Greenpoint Mortgage Funding Trust 2006-HE1.

Structured Asset Securities Corporation
745 7th Avenue
New York, New York  10019

GMAC Mortgage Corporation
100 Witmer Road
Horsham, Pennsylvania 19044
Attention: Frank Ruhl, Vice President

XL Capital Assurance, Inc.
1221 Avenue of the Americas
New York, New York 10020
Attention: Surveillance

CIFG Assurance North America, Inc.
825 Third Avenue, Sixth Floor
New York, New York 10022
Attention: General Counsel

> Re:    Transfer and Servicing Agreement (the "Transfer and Servicing Agreement")
> dated as of August 1, 2006 by and among Structured Asset Securities
> Corporation, as Depositor, U.S. Bank National Association, as Indenture Trustee,
> GMAC Mortgage Corporation, as Servicer, and GreenPoint Mortgage Funding
> Trust 2006-HE1, as Issuer

Ladies and Gentlemen:

In accordance with Section 2.02(d) of the Transfer and Servicing Agreement, the
undersigned, as Custodian on behalf of the Indenture Trustee, hereby certifies that as to each
Loan listed in the Mortgage Loan Schedule (other than any Loan paid in full or listed on
Schedule I hereto) it (or its custodian) has received the applicable documents listed in Section
2.01(d) of the Transfer and Servicing Agreement.

The undersigned hereby certifies that as to each Loan identified on the Mortgage Loan
Schedule, other than any Loan listed on Schedule I hereto, it has reviewed the documents listed

A-3-1

above and has determined that each such document appears to be complete and, based on an examination of such documents, the information set forth in the Mortgage Loan Schedule is correct.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Transfer and Servicing Agreement. This certificate is qualified in all respects by the terms of said Transfer and Servicing Agreement.

[Custodian]


By:_____

Name:

Title:

A-3-2

EXHIBIT A-4

FORM OF ENDORSEMENT

Pay to the order of U.S. Bank National Association, as indenture trustee (the "Indenture Trustee") under the Transfer and Servicing Agreement dated as of August 1, 2006 by and among Structured Asset Securities Corporation, as Depositor, the Indenture Trustee, GMAC Mortgage Corporation, as Servicer, and GreenPoint Mortgage Funding Trust 2006-HE1, as Issuer relating to GreenPoint Mortgage Funding Trust 2006-HE1 Home Equity Loan Asset-Backed Notes, Series 2006-HE1, without recourse.

_____

[current signatory on note]


By:_____
    Name:
    Title:

A-4-1

## EXHIBIT B

### REQUEST FOR RELEASE OF DOCUMENTS AND RECEIPT

_____
Date

[Addressed to Indenture Trustee
or, if applicable, custodian]

In connection with the administration of the mortgages held by you as Indenture Trustee under a certain Transfer and Servicing Agreement dated as of August 1, 2006 by and among Structured Asset Securities Corporation, as Depositor, you, as Indenture Trustee, GMAC Mortgage Corporation, as Servicer, and GreenPoint Mortgage Funding Trust 2006-HE1, as Issuer (the "Transfer and Servicing Agreement"), the undersigned Servicer hereby requests a release of the Mortgage File held by you as Indenture Trustee with respect to the following described Loan for the reason indicated below.

Mortgagor's Name:

Address:

Loan No.:

Reason for requesting file:

1.      Loan paid in full.  (The Servicer hereby certifies that all amounts received in connection with the loan have been or will be credited to the Payment Account pursuant to the Transfer and Servicing Agreement.)

2.      The Loan is being foreclosed.

3.      Loan substituted.  (The Servicer hereby certifies that a Qualifying Substitute Mortgage Loan has been assigned and delivered to you along with the related Mortgage File pursuant to the Transfer and Servicing Agreement.)

4.      Loan repurchased.  (The Servicer hereby certifies that the Loan Purchase Price has been credited to the Payment Account pursuant to the Transfer and Servicing Agreement.)

5.      Other.  (Describe)

The undersigned acknowledges that the above Mortgage File will be held by the undersigned in accordance with the provisions of the Transfer and Servicing Agreement and will be returned to you within ten (10) days of our receipt of the Mortgage File, except if the Loan has been paid in full, or repurchased or substituted for a Qualifying Substitute Mortgage Loan (in which case the Mortgage File will be retained by us permanently) and except if the Loan is being foreclosed (in which case the Mortgage File will be returned when no longer required by us for such purpose).

B-1

95562v.14

Capitalized terms used herein shall have the meanings ascribed to them in the Transfer and Servicing Agreement.

_____

[Name of Servicer]

By:_____

   Name:

   Title: Servicing Officer

B-2

## EXHIBIT C

[Reserved]

C-1

## EXHIBIT D

### FORM OF ADVANCE NOTICE

_____
Date

[Addressed to Holder of Class
L Certificates]

      In connection with that certain Transfer and Servicing Agreement dated as of August 1, 2006 by and among Structured Asset Securities Corporation, as Depositor, U.S. Bank National Association, as Indenture Trustee, GMAC Mortgage Corporation, as Servicer, and GreenPoint Mortgage Funding Trust 2006-HE1, as Issuer (the "Transfer and Servicing Agreement"), the undersigned Servicer hereby requests that you make an advance to the Issuer in the amount of $_____ (such amount to be deposited into the Reserve Account no later than two Business Days prior to next Payment Date in accordance with Section 2.01(b) of the Transfer and Servicing Agreement), in respect of the following Draw[s]:

    Loan no.:

    Date of Draw:

    Amount of Draw:

    [Loan no.:

    Date of Draw:

    Amount of Draw:]

        Total amount of Draws:

        Amount of total covered by Principal Collections:

D-1

Capitalized terms used herein shall have the meanings ascribed to them in the Transfer and Servicing Agreement.

_____

[Name of Servicer]

By:_____
    Name:
    Title:

cc:    U.S. Bank National Association
        One Federal Street, Third Floor
        Boston, Massachusetts 02110
        Attention:  Greenpoint Mortgage Funding Trust 2006-HE1

D-2

## EXHIBIT E

### CUSTODIAL AGREEMENT
### U.S. Bank National Association

**(on file with McKee Nelson LLP)**

E-1

## EXHIBIT F

### CUSTODIAL AGREEMENT
### Deutsche Bank National Trust Company

**(on file with Mckee Nelson LLP)**

## EXHIBIT G

### FORM OF CERTIFICATION TO BE PROVIDED TO DEPOSITOR
### AND/OR SERVICER BY THE INDENTURE TRUSTEE

Structured Asset Securities Corporation
745 7th Avenue, 7th Floor
New York, New York 10019

GMAC Mortgage Corporation
100 Witmer Road
Horsham, Pennsylvania 19044

> Re:    GreenPoint Mortgage Funding Trust 2006-HE1
>        Home Equity Loan Asset-Backed Notes, Series 2006-HE1

Reference is made to the transfer and servicing agreement dated as of August 1, 2006 (the "Transfer and Servicing Agreement"), by and among GreenPoint Mortgage Funding Trust 2006-HE1, as issuer, U.S. Bank National Association, as indenture trustee (the "Indenture Trustee"), GMAC Mortgage Corporation, as Servicer (the "Servicer"), and Structured Asset Securities Corporation, as depositor (the "Depositor"). The Indenture Trustee hereby certifies to the Depositor and the Servicer, and its officers, directors and affiliates, and with the knowledge and intent that they will rely upon this certification, that:

(i)     The Indenture Trustee has reviewed the annual report on Form 10-K for the fiscal year [ ], and all reports on Form 8-K containing distribution reports filed in respect of periods included in the year covered by that annual report, relating to the above-referenced trust;

(ii)    Based solely upon the information provided to us by the Servicer, the information set forth in the reports referenced in (i) above does not contain any untrue statement of material fact; and

(iii)   Based on my knowledge, the distribution information required to be provided by the Indenture Trustee under the Transfer and Servicing Agreement is included in these reports.

Date:

[_____], as Indenture Trustee

By:     _____
Name:   _____
Title:  _____

D-2

95562v.14

## EXHIBIT H

### FORM OF CERTIFICATION TO BE PROVIDED
### TO THE DEPOSITOR BY THE SERVICER

Re:    GreenPoint Mortgage Funding Trust 2006-HE1
         Home Equity Loan Asset-Backed Notes, Series 2006-HE1

I, _____, the senior officer of GMAC Mortgage Corporation certify that:

(i)     I have reviewed this annual report on Form 10-K, and all reports on Form 8-K containing distribution and servicing reports filed in respect of periods included in the year covered by this annual report, of Structured Asset Securities Corporation (the "Registrant");

(ii)    Based on my knowledge, the information in these reports, taken as a whole, does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading as of the last day of the period covered by this annual report;

(iii)   Based on my knowledge, the distribution of servicing information required to be provided to the Administrator by the Servicer under the Transfer and Servicing Agreement is included in these reports;

(iv)   Based on my knowledge and upon the annual compliance statement included in the report and required to be delivered to the Administrator in accordance with the terms of the Transfer and Servicing Agreement, and except as disclosed in the reports, the Servicer has fulfilled its obligations under the servicing agreement; and

(v)    The reports disclose all significant deficiencies relating to the Servicer's compliance with the minimum servicing standards based upon the report provided by an independent public accountant, after conducting a review in compliance with the Uniform Single Attestation Program for Mortgage Bankers or similar procedure, as set forth in the Pooling and Servicing Agreement that is included in these reports.

Capitalized terms used but not defined herein have the meanings ascribed to them in the Transfer and Servicing Agreement, dated August 1, 2006 (the "Transfer and Servicing Agreement"), among the Registrant as depositor, GreenPoint Mortgage Funding Trust 2006-HE1, as Issuer, the Servicer and U.S. Bank National Association as Indenture Trustee.

95562v.14

Date:

GMAC Mortgage Corporation, as Servicer

By: _____
Name: _____
Title: _____

H-2

## EXHIBIT I

### FORM OF BACK-UP CERTIFICATION TO BE PROVIDED TO
### THE DEPOSITOR AND/OR THE SERVICER BY THE INDENTURE TRUSTEE

Structured Asset Securities Corporation
745 Seventh Avenue, 7th Floor
New York, New York 10019
Attention: Mortgage Finance, Greenpoint 2006-HE1

GMAC Mortgage Corporation
100 Witmer Road
Horsham, Pennsylvania 19044

> Re:    GreenPoint Mortgage Funding Trust 2006-HE1
> Home Equity Loan Asset-Backed Notes, Series 2006-HE1

Reference is made to the transfer and servicing agreement dated as of August 1, 2006 (the
"Transfer and Servicing Agreement"), by and among GreenPoint Mortgage Funding Trust 2006-
HE1, as issuer, U.S. Bank National Association, as indenture trustee (the "Indenture Trustee"),
GMAC Mortgage Corporation, as Servicer (the "Servicer"), and Structured Asset Securities
Corporation, as depositor (the "Depositor"). The Indenture Trustee hereby certifies to the
Depositor and the Servicer, and its officers, directors and affiliates, and with the knowledge and
intent that they will rely upon this certification, that:

(i)    The Indenture Trustee has reviewed the annual report on Form 10-K for the fiscal
year [   ], and all reports on Form 10-D containing distribution reports filed in
respect of periods included in the year covered by that annual report, relating to
the above-referenced trust;

(ii)    Based solely upon the information provided to us pursuant to Sections 6.07(e) and
6.07(f) and the information provided by us pursuant to Sections 6.07(e) and
6.07(f), the information set forth in the reports referenced in (i) above does not
contain any untrue statement of material fact; and

(iii)    Based on my knowledge, the distribution information required to be provided by
the Indenture Trustee under the Transfer and Servicing Agreement is included in
these reports.

Date:

U.S. Bank National Association, as Trustee

By:    _____
Name:    _____
Title:    _____

I-1

95562v.14

## EXHIBIT J

## FORM OF CERTIFICATION REGARDING SERVICING CRITERIA TO BE ADDRESSED
## IN REPORT ON ASSESSMENT OF COMPLIANCE

To:

Structured Asset Securities Corporation
745 7th Avenue, 7th Floor
New York, New York 10019

Lehman Brothers Holdings Inc.
745 7th Avenue, 7th Floor
New York, New York 10019

> Re:    GreenPoint Mortgage Funding Trust 2006-HE1
> Home Equity Loan Asset-Backed Notes, Series 2006-HE1

Reference is made to the transfer and servicing agreement dated as of August 1, 2006 (the
"Agreement"), by and among GreenPoint Mortgage Funding Trust 2006-HE1, as issuer, U.S.
Bank National Association, as indenture trustee (the "Indenture Trustee"), GMAC Mortgage
Corporation, as Servicer (the "Servicer"), and Structured Asset Securities Corporation, as
depositor (the "Depositor"). This certification is delivered pursuant to Section 4.26 of the
Agreement. Capitalized terms used herein but not otherwise defined shall have the meanings set
forth in the Agreement.

_____, the undersigned, a duly authorized _____ of
the Servicer, does hereby certify that the assessment of compliance to be delivered by the
Servicer shall address, at a minimum, the criteria identified below as "Applicable Servicing
Criteria" as identified by a mark in the column titled "Applicable Servicing Criteria."

J-1

95562v.14

| Servicing Criteria | | Applicable Servicing Criteria |
|---|---|---|
| Reference | Criteria | |
| | **General Servicing Considerations** | |
| 1122(d)(1)(i) | Policies and procedures are instituted to monitor any performance or other triggers and events of default in accordance with the transaction agreements. | X |
| 1122(d)(1)(ii) | If any material servicing activities are outsourced to third parties, policies and procedures are instituted to monitor the third party's performance and compliance with such servicing activities. | X |
| 1122(d)(1)(iii) | Any requirements in the transaction agreements to maintain a back-up servicer for the mortgage loans are maintained. | X |
| 1122(d)(1)(iv) | A fidelity bond and errors and omissions policy is in effect on the party participating in the servicing function throughout the reporting period in the amount of coverage required by and otherwise in accordance with the terms of the transaction agreements. | x |
| | **Cash Collection and Administration** | |
| 1122(d)(2)(i) | Payments on mortgage loans are deposited into the appropriate custodial bank accounts and related bank clearing accounts no more than two business days following receipt, or such other number of days specified in the transaction agreements. | X |
| 1122(d)(2)(ii) | Disbursements made via wire transfer on behalf of an obligor or to an investor are made only by authorized personnel. | X |
| 1122(d)(2)(iii) | Advances of funds or guarantees regarding collections, cash flows or distributions, and any interest or other fees charged for such advances, are made, reviewed and approved as specified in the transaction agreements. | X |
| 1122(d)(2)(iv) | The related accounts for the transaction, such as cash reserve accounts or accounts established as a form of overcollateralization, are separately maintained (e.g., with respect to commingling of cash) as set forth in the transaction agreements. | X |
| 1122(d)(2)(v) | Each custodial account is maintained at a federally insured depository institution as set forth in the transaction agreements. For purposes of this criterion, "federally insured depository institution" with respect to a foreign financial institution means a foreign financial institution that meets the requirements of Rule 13k-1(b)(1) of the Securities Exchange Act. | X |
| 1122(d)(2)(vi) | Unissued checks are safeguarded so as to prevent unauthorized access. | X |
| 1122(d)(2)(vii) | Reconciliations are prepared on a monthly basis for all asset-backed securities related bank accounts, including custodial accounts and related bank clearing accounts. These reconciliations are (A) mathematically accurate; (B) prepared within 30 calendar days after the bank statement cutoff date, or such other number of days specified in the transaction agreements; (C) reviewed and approved by someone other than the person who prepared the reconciliation; and (D) contain explanations for reconciling items. These reconciling items are resolved within 90 calendar days of their original identification, or such other number of days specified in the transaction agreements. | x |
| | **Investor Remittances and Reporting** | |
| 1122(d)(3)(i) | Reports to investors, including those to be filed with the Commission, are maintained in accordance with the transaction agreements and applicable Commission requirements. Specifically, such reports (A) are prepared in accordance with timeframes and other terms set forth in the transaction agreements; (B) provide information calculated in accordance with the terms specified in the transaction agreements; (C) are filed with the Commission as required by its rules and regulations; and (D) agree with investors' or the trustee's records as to the total unpaid principal balance and number of mortgage loans serviced by the Servicer. | X |

J-2

| Servicing Criteria | | Applicable Servicing Criteria |
|---|---|---|
| **Reference** | **Criteria** | |
| 1122(d)(3)(ii) | Amounts due to investors are allocated and remitted in accordance with timeframes, distribution priority and other terms set forth in the transaction agreements. | X |
| 1122(d)(3)(iii) | Disbursements made to an investor are posted within two business days to the Servicer's investor records, or such other number of days specified in the transaction agreements. | X |
| 1122(d)(3)(iv) | Amounts remitted to investors per the investor reports agree with cancelled checks, or other form of payment, or custodial bank statements. | X |
| | **Pool Asset Administration** | |
| 1122(d)(4)(i) | Collateral or security on mortgage loans is maintained as required by the transaction agreements or related mortgage loan documents. | X |
| 1122(d)(4)(ii) | Mortgage loan and related documents are safeguarded as required by the transaction agreements | X |
| 1122(d)(4)(iii) | Any additions, removals or substitutions to the asset pool are made, reviewed and approved in accordance with any conditions or requirements in the transaction agreements. | X |
| 1122(d)(4)(iv) | Payments on mortgage loans, including any payoffs, made in accordance with the related mortgage loan documents are posted to the Servicer's obligor records maintained no more than two business days after receipt, or such other number of days specified in the transaction agreements, and allocated to principal, interest or other items (e.g., escrow) in accordance with the related mortgage loan documents. | X |
| 1122(d)(4)(v) | The Servicer's records regarding the mortgage loans agree with the Servicer's records with respect to an obligor's unpaid principal balance. | X |
| 1122(d)(4)(vi) | Changes with respect to the terms or status of an obligor's mortgage loans (e.g., loan modifications or re-agings) are made, reviewed and approved by authorized personnel in accordance with the transaction agreements and related pool asset documents. | X |
| 1122(d)(4)(vii) | Loss mitigation or recovery actions (e.g., forbearance plans, modifications and deeds in lieu of foreclosure, foreclosures and repossessions, as applicable) are initiated, conducted and concluded in accordance with the timeframes or other requirements established by the transaction agreements. | X |
| 1122(d)(4)(viii) | Records documenting collection efforts are maintained during the period a mortgage loan is delinquent in accordance with the transaction agreements. Such records are maintained on at least a monthly basis, or such other period specified in the transaction agreements, and describe the entity's activities in monitoring delinquent mortgage loans including, for example, phone calls, letters and payment rescheduling plans in cases where delinquency is deemed temporary (e.g., illness or unemployment). | X |
| 1122(d)(4)(ix) | Adjustments to interest rates or rates of return for mortgage loans with variable rates are computed based on the related mortgage loan documents. | x |
| 1122(d)(4)(x) | Regarding any funds held in trust for an obligor (such as escrow accounts): (A) such funds are analyzed, in accordance with the obligor's mortgage loan documents, on at least an annual basis, or such other period specified in the transaction agreements; (B) interest on such funds is paid, or credited, to obligors in accordance with applicable mortgage loan documents and state laws; and (C) such funds are returned to the obligor within 30 calendar days of full repayment of the related mortgage loans, or such other number of days specified in the transaction agreements. | X |
| 1122(d)(4)(xi) | Payments made on behalf of an obligor (such as tax or insurance payments) are made on or before the related penalty or expiration dates, as indicated on the appropriate bills or notices for such payments, provided that such support has been received by the servicer at least 30 calendar days prior to these dates, or such other number of days specified in the transaction agreements. | X |

J-3

| Servicing Criteria | | Applicable Servicing Criteria |
|---|---|---|
| **Reference** | **Criteria** | |
| 1122(d)(4)(xii) | Any late payment penalties in connection with any payment to be made on behalf of an obligor are paid from the servicer's funds and not charged to the obligor, unless the late payment was due to the obligor's error or omission. | **X** |
| 1122(d)(4)(xiii) | Disbursements made on behalf of an obligor are posted within two business days to the obligor's records maintained by the servicer, or such other number of days specified in the transaction agreements. | **X** |
| 1122(d)(4)(xiv) | Delinquencies, charge-offs and uncollectible accounts are recognized and recorded in accordance with the transaction agreements. | **X** |
| 1122(d)(4)(xv) | Any external enhancement or other support, identified in Item 1114(a)(1) through (3) or Item 1115 of Regulation AB, is maintained as set forth in the transaction agreements. | **X** |
| | | |

[Signature Page Follows]

[_____],
as [_____]

By:_____
    Name:
    Title:

J-4

EXHIBIT K

TRANSACTION PARTIES

Issuer:  Greenpoint Mortgage Funding Trust Series 2006-H1

Depositor:  Structured Asset Securities Corporation

Seller/Sponsor:  Lehman Brothers Holdings Inc.

Servicer:  GMAC Mortgage Corporation

Class Ax Insurer:  XL Capital Assurance Inc.

Class Ac Insurer:  CIFG Assurance North America, Inc.

Indenture Trustee:  U.S. Bank National Association

Custodians:  U.S. Bank National Association and Deutsche Bank National Trust Company

J-5

## SCHEDULE A

### MORTGAGE LOAN SCHEDULE

(on file with the Indenture Trustee)

A-1