Judith P. Kenney
11311600
Judith P. Kenney & Associates, P.C.
16475 Dallas Parkway, Suite 330
Addison, Texas 75001-6863
Attorney for Philip Roger Flinn, II

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**OBJECTIONS TO CONFIRMATION OF DEBTORS' PLAN
AND MOTION FOR RELIEF**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE

Philip Roger Flinn, II ("Flinn"), an unsecured creditor who has asserted claims as a non-debtor against another non-debtor, Ally Financial, Inc., respectfully submits his objections (the "Objection" to the Plan Proponents' Motion for an Order Approving Plan for Reorganization (the "Proponents' Plan") and files this his Motion for Relief from the Third Party Release and Injunction and in support of his objection states as follows:

**PRELIMINARY STATEMENT**

Flinn objects to the Third Party Release and Injunction provisions of the Plan as it applies to unsecured contingent claimants such as Flinn who is one of four Defendants being sued in the Federal District Court, Eastern District of Texas by GMAC Mortagage, LLC ("GMACM").

Residential Capital, LLC ("ResCap") and Ally Financial, Inc. ("Ally"), in Cause No. 4:12-CV-00600 (the "Texas Litigation").

The proposed Plan requires unsecured creditors to fully release Ally and discontinue any lawsuit against Ally, a non-debtor. Flinn objects that the operation of the Third Party Release and Injunction provisions of the Proponants' Plan will extinguish Philip Roger Flinn, II's non-debtor counterclaims against Ally, a non-debtor that were filed in the Texas Litigation.

Philip Roger Flinn, II objects that the Release provisions are deficient in that the Release is not a mutual release between Philip Roger Flinn, II and Ally. The effect of the Release is to unilaterally release Ally from the counterclaims filed by Philip Roger Flinn, II in the Texas Litigation while allowing Ally to continue to pursue its claims against Philip Roger Flinn, II.

Flinn objects that the Court lacks jurisdiction over the operation of the Third Party Release and Injunction provisions as applied to the Texas Litigation because the United States District Court, Eastern District of Texas has jurisdiction over the Parties to the Texas Litigation. The bankruptcy Court's jurisdiction is limited to jurisdiction over the Debtors, not over all non-debtors whose legal proceedings involve other non-debtors.

Flinn objects that when the Court approved a partial lift of stay for Flinn to file counterclaims against the Debtors in the Texas Litigation, that the Bankruptcy Court ceded jurisdiction to the U.S. District Court in the Texas Litigation. Therefore, the Court should grant the relief requested to "carve out" the Third Party Release as it applies to the Texas Litigation, if any.

Philip Roger Flinn, II objects that the overly broad Release language states that the Release applies even to creditors who did not file a "Proof of Claim" in the Bankruptcy proceeding. Doc. No. 4819-1, P. 33. The other Defendants in the Texas Litigation did not file Proofs of Claims in the

bankruptcy proceeding of Debtors because such Defendants considered that defending the post-filing claims of Debtors did not require the filing of Proofs of Claims against the Debtors. One of the Defendants, Sandstrom Electrical Company has filed a breach of contract claim against Ally. Flinn has filed counterclaims against Ally and the Debtors. All of the Defendants in the Texas Litigation are defending claims brought by Ally and the Debtors related to Debtors' business transactions involving the Lewisville Data Center that was sold to Ocwen Financial Services and Walter. Thus, the Court should find that the Third Party Releases should not apply to the Texas Litigation.

Flinn also objects to the Third Party Releases because Flinn was not told that Morrison & Foerster, Debtors' counsel were working behind the scenes to prepare a Plan that would impose a release of Ally upon Flinn, while purporting to negotiate a stipulation and Order from this Court expressly permitting Flinn to file counterclaims against the Debtors and Ally (where Ally was identified only as a "non-debtor affiliate"). Had Flinn known that the Debtors were working on a Third Party Release of Ally, Flinn would have been able to negotiate for relief from the proposed Release of Ally as part of the stipulated Motion and Order, or if such relief could not have been obtained from the Debtors, then from the Court.

Flinn objects that he was asked to vote on the plan as an R-4 unsecured contingent claimant with others who were not similarly situated. Claimants who were defending claims brought by the non-debtor affiliate, Ally, and the Debtors should have been placed in a class by themselves, such as was done with the members of the R-7 class. Because the R-4 claimants' claims will be extinguished by the Third Party Release and Injunction provisions of the Plan, the class of persons or entities being sued by Ally and who have filed counterclaims should have been identified and

given the choice of opting out of the Ally contribution. Philip Roger Flinn, II objects to being included in the R-4 class for the following additional reasons:

    a.     because the class of unsecured creditors similarly situated to him (non-debtors involved in litigation brought by the Ally) was not identified, whereas other creditors were separately identified and were entitled to be carved out of the Third Party Releases (such as Fannie Mae);

    b.     because the effect of the Third Party Release was not adequately disclosed (there was no mention in the 201 page disclosure statement about the effect of the ballot to extinguish claims against Ally while not extinguishing Ally's claims against the non-debtor);

    c.     because the actual ballot failed to disclose the identity of who was being released (described as the "Ally Released Parties") and who would be releasing the "Ally Released Parties" making it necessary to read the 200 page disclosure statement to locate such information;

    d.     because the Creditors' Committee recommended a "yes," vote on the basis of the contribution of Ally to the Debtors' estate without disclosing the loss of counterclaims, unsecured creditors in the R-4 class were induced into voting against their own best interests;

    e.     because the ballot does not distinguish between the creditor's claim against the Debtors and Flinn's third-party claim against Ally;

    f.     because neither Flinn nor any other member of his class who were asserting counterclaims or cross claims against Ally or Ally Released Parties was given the option to "opt out" of the receipt of Ally's contribution in exchange of the pursuit of a judgment against Ally; and

    g.     because the release was not a mutual release, the effect was a unilateral full release by the non-debtor while permitting Ally to pursue its claims free of liability for any counterclaims.

    2.     Philip Roger Flinn, II further objects that the Third Party Release and Injunction constitutes an abuse of process in that it impermissibly interferes in the jurisdiction of other Courts whose jurisdiction has been sought by Ally against Defendants who have or will file counterclaims

or cross claims and it eliminates liability for Ally for any counterclaims or cross claims brought by defendants of litigation that is asserted by Ally.

## I. STATEMENT OF FACTS

3. On May 14, 2012, Residential Capital, LLC ("ResCap"), GMAC Mortgage LLC ("GMAC M") and certain of their direct and indirect subsidiaries (collectively the "Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

4. The Debtors are wholly owned, indirect domestic subsidiaries of Ally Financial, Inc. ("Ally"). Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleading. Section §46, ECF Doc. No. 6.

5. Included in the Debtors' Petitions was a Release Agreement between Ally and the Debtors, whereby Ally expressly released Debtors, **their agents and employees** from all causes of action, including fraud, known or unknown. Section 2.3, ECF Doc. No. 6-8.

6. On May 16, 2012, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in these cases. ECF Doc. No. 102.

7. The Debtors currently are operating their business and managing their affairs pursuant to Sections 1107 and 1108.

8. The employment of Philip Roger Flinn, II ("Flinn"), an employee of GMAC Mortgage (also treated as an employee of ResCap), was terminated by Ally on or about September 14, 2012.

9. On September 20, 2012, the Debtors and non-debtor affiliate Ally filed a complaint commencing a post-Petition Date lawsuit against Flinn, and subsequently added three additional

defendants, in the United States District Court, Eastern District of Texas (the "Texas Litigation") in case no. 4:12-CV-00600, which complaint relates to Flinn's employment by the Debtors and seeking damages from Flinn and the other defendants. The Texas Litigation seeks damages relating to pre-Petition and post-Petition events related to the Lewisville Data Center build-outs and maintenance that took place during Flinn's employment as a manager and prior to the sale of the data center to Ocwen Financial Services and Walter as part of the bid of $3 billion as approved by this Court.

10. On or about November 5, 2012, Flinn filed a Proof of Claim against Debtor Residential Capital, LLC, reflected as Claim No. 2401 on the official claims register maintained by the Debtors' claims and noticing agent (the "Proof of Claim").

11. On or about May 14, 2013, the Debtors and Flinn entered into a stipulated Motion and Order partially modifying the bankruptcy stay order to permit Flinn to file counterclaims against Debtors in the Texas Litigation that was approved by the Court on that same day. Ally was not expressly named but was referenced as a "non-debtor affiliate." Doc. No. ECF 3710.

12. On May 23, 2013, the Debtors filed a motion to approve a plan support agreement ("PSA") between (a) the Debtors, (b) Ally and its non-debtor affiliates ("Ally"), (c) the Creditors' Committee and (d) certain Consenting Claimants (the "Consenting Claimants"). The PSA included a Term Sheet, as supplemented, describing the terms of a proposed plan. ECF Doc. No. 3814.

13. The Court approved the PSA by order entered on June 26, 2013. EFC Doc No. 4098.

14. In its Memorandum Opinion dated June 27, 2013 approving the PSA ("Opinion"), the Court stated that "[its] findings in the context of the approval of the [PSA] do not preclude a challenge to a plan that includes the proposed settlements embodied in the [PSA] and term sheets.

Moreover the findings of fact made in connection with approval of the PSA do not constitute a release of any claims." Opinion. P. 45; ECF Doc. No. 4102.

15. On July 4, 2013, the Debtors and the Creditors' Committee (jointly "the Plan Proponents") filed a Joint Chapter 11 Plan ("Plan") and related Disclosure Statement, together with the Motion. ECF Doc. Nos. 4152, 4153 and 4157.

16. Flinn filed his counterclaims in the Texas Litigation against Ally and the Debtors in Cause No. 4:12-CV-00600 on September 21, 2013. ECF Doc. 125.

17. Flinn received a ballot to vote on the plan as a part of the R-4 Class of unsecured contingent creditors.

**OBJECTION**

**A. The Disclosure Statement Should be Amended to Provide Adequate Information Sufficient to Meet the Requirements of Section 1125 of the Bankruptcy Code.**

To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). The disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives..." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). In Disclosure, it was difficult to answer the question of who was being released, and who was releasing with respect to the third party releases. There was no mention of Flinn's predicament-- that the unilateral release of Ally would extinguish Flinn's counter claims that he filed as a non-debtor against Ally a non-debtor. Ally first released the Debtors and their agents and employees as part of the Debtors Bankruptcy petition. See Doc. No. 6-8, section 2.3. In the Proposed Plan, the Debtors

will release Ally and third parties who have been sued by Ally, a non-debtor will also release Ally, notwithstanding Ally's own breach of its release agreement. This information was not provided in the Disclosure Statement. What was emphasized by the Creditor's Committee was the enhancement of the Debtors' estate by Ally's contribution. What was not disclosed was the following:

   a.   Ally's freedom to breach its contracts benefitting Debtors' employees and agents with impunity, without fear of any counterclaim being filed.

   b.   That the release of Ally would be unilateral and not mutual. There was much discussion in the Disclosure of the mediated "settlement" of litigation, but no discussion of the situation where one non-debtor (Ally) was being fully released but the defendant sued by Ally was not entitled to a full release and instead had its counterclaims extinguished. The releasing non-debtor has no right under the Plan to negotiate the "settlement" of its claims but Ally has the right to pursue its claims.

The unsecured creditors who were also holders of non-debtor claims against the Debtors' non-debtor affiliate, Ally were entirely ignored by the disclosure statement, and were not provided information necessary to make an informed choice to accept or reject the Debtors' plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D. N.Y. 1999), affd. 241 B. R. 283 (E.D.N.Y. 1999).

   c.   The financial information contained in the disclosure was so complex that it was incomprehensible as to what a Class of vote R-4 would likely receive. A number of ballots were repeatedly sent recommending the Convenience Class optional vote. It was the only class that provided an actual number for a potential recovery of $30,000.00. *In re Ferretti*, 128 B. R. 16, 19 (Bankr. D.N.H. 1991). For these reasons, the Court should require adequate information, especially

where a non-debtor's claims against another non-debtor is to be extinguished. There appeared to be no consideration for that.

**B.    The Disclosure Statement Should be Amended to Carve Out Non-Debtor Third-Party Releases and to Eliminate Injunctions Where Ally has sued Non-Debtors who have Filed Counterclaims.**

The Plan provides for broad third party releases of Ally (the "Ally Released Parties)[1] from liability pursuant to a negotiated settlement. Plan at p. 22, § 11(2). In re Metromedia Fiber Network, Inc., 416 F.3d 141 (2d Cir. 2005), the Second Circuit held that non-debtor third-party releases are proper only in rare cases. *Metromedia,* 416 F.3D at 141. Two reasons are given for such reluctance:

First, the only explicit authorization in the Code for non-debtor releases is 11 US.C. §524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims, and [and]...

Second, a non-debtor release is a device that lends itself to abuse. By it, a non-debtor can shield itself from liability to third parties. In form, it is a release; in effect it may operate as a bankruptcy discharge without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity.

Id at 142.

A non-debtor third-party release is not adequately supported by consideration simply because the non-debtor contributed something to the reorganization and the enjoined creditor took something

---

[1] Ally, and each of Ally's and the Debtors' respective members, shareholders, partners, non-Debtor affiliates, and Representatives, including Cap Re of Vermont, LLC and its current and former members, officers, and directors and each of Ally's successors and assigns. The Ally Released Parties release the Creditors' Committee, the Debtors, and the Consenting Claimants and their respective successors and assigns, members, partners, advisors and Representatives. Plan at 7, ¶ 17; p. 27, ¶ 209; pp. 95-96, § IX(D) and (E).

out. Metromedia at 143. Instead, a non-debtor third party release should not be approved absent a finding by the court that 'truly unusual circumstances' exist that render the release terms important to the success of the plan." Id.

In re DBSD N. Am., Inc. The Court stated that releases "may be used in some cases, including those where the provisions are important to a debtor's plan; the claims are "channeled" to a settlement fund rather than extinguished; the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; the released party provides substantial contribution; and where the plan otherwise provides for full payment of the enjoined claims. In re DBSD N. Am., Inc., 419 B.R. 179, 217 (Bankr. S.D.N.Y, 2009). In Flinn's case, the non-debtor third-party release of Ally results in an extinguishment of his counterclaims. Flinn's counterclaims would not be extinguished as to the Debtors, just limited. In the Texas Litigation, Ally receives a substantial advantage over the Debtors without undergoing bankruptcy. Flinn's enjoined claims are not "channeled" to a settlement fund, and the enjoined claims would not indirectly impact the debtor's reorganization; the released party provides insufficient contribution and the plan fails to provide for full payment of the enjoined claims. Thus, the non-debtor third-party releases fail to meet the requirements of In re DBSD N. Am., Inc. 419 B.R. 179, 217 (Bankr. S.D. N.Y. 2009) and constitutes abuse. The only purpose is to shield Ally from liability for its own breach of contract and other misconduct that it engaged in after the Debtors filed for bankruptcy. First Ally released the Debtors and their employees (which Agreement Ally breached when it sued Flinn). Next the Debtors will release Ally, and in return for a minimal contribution, Ally can sue the Debtors' employees and agents without any liability therefor. Ally receives a full settlement of all third party non-debtors' claims against it while continuing to litigate

its claims against the releasing non-debtors. Ally is in the position of receiving a full discharge of liability without filing for bankruptcy. This constitutes abuse and is extremely discriminatory.

11 U.S.C.A. § 524(e) provides that the majority cannot bind the individual but the individual may choose whether or not to provide release irrespective of the vote of class of creditors of which he is a member. In re Orlando Investors, L.P., 103 B.R. 593 (Bankr. E.D. Pa. 1989. See *Adelphia*, 368 B.R. at 268 holding that three categories of non-debtor third party releases are acceptable (1) where persons consent to the releases, or (2) where persons are indemnified by the estate under employment contracts, by-laws or loan agreements or (3) persons in unique transactions such as making a contribution to the estate. *In re Oneida Ltd.*, 351 B.R. 79 (Bankr. S.D. N.Y. 2006) (the court found that the releases were acceptable because all of the affected creditors had consented by affirmatively checking a box on the ballot indicating their willingness to grant the releases); *In re XO Commc'ns, Inc.*, 330 B.R. 394, 440 (Bankr. S.D.N.Y. 2005) (non-debtors provided significant consideration, the non-debtors were integral to the plan, and the non-debtors' interests aligned with those of the debtors with regard to the claims'). In the Texas Litigation, Ally breached its release of the Debtors' employee, so the non-debtor's interests is not aligned with those of the debtors with regard to the claims. The Debtors had no choice but to fall in with their indirect parent's plan to recoup from Debtors' employees what Ally could not obtain from the bankruptcy sale of the Debtors' data center.

Where creditors vote to reject a plan could be denied distribution under the plan, and such provisions were not unfairly discriminatory. Such provisions did not conflict with 524(e) and satisfied 11 U.S.C.A., 1129(a)(1). *In re Apex Oil Co.*, 118 B.R. 683 (Bankr. E.D. Mo. 1990). The Debtors' Plan should be amended to provide that Unsecured Creditors voting against the Plan may

not receive any part of the Ally Contribution. Flinn has voted no. Flinn would prefer to pursue his claims against Ally than to receive any part of Ally's contribution. Debtors will not receive any benefit from the Ally Contribution because Debtors are being liquidated and Debtors already received all the proceeds of the sale of the Lewisville Data Center. Thus, any recovery from Flinn in the Texas Litigation by Debtors will fall solely into Ally's hands because Debtors have no employees left to take possession of any recovery. If Flinn is required to extinguish his claims against Ally, nothing will prevent Ally from pursuing all of Debtors' employees and agents, because any complaining employee or agent of the Debtor will have released such breach or be enjoined from prosecuting such breach. The Releases will apply to all holders of claims (as such terms are defined in Section 101(5) of the Bankruptcy Code) and Equity Interests (as defined in the Plan), whether or not such entities have filed Proofs of Claim as noted above in these Chapter 11 Cases.

Because the release seeks to include the release of claims by non-debtor third-parties against non-debtor third parties, this Court does not have subject matter jurisdiction to approve this provision because it seeks to release "direct" (non-derivative) claims that non-debtor third parties may have against other non-debtor third parties, as in the Texas Litigation. See *In re Johns-Manville Corp. v. Chubb Indem. Ins. Co.* (*In re Johns-Manville Corp*), 600 F.3d 135, 153 (2d Cir. 2010) (clarifying on remand that the bankruptcy court does not have jurisdiction to enjoin claims against non-debtors insurers that are not derivative of the debtor. The release language does not seek to enjoin derivative claims of the Debtors. Instead the release provisions seeks to enjoin **third parties whose claims relate to the Debtors' businesses**, e.g., **claims arising from or related in any way to the Debtors**, including "other business activities." Ally and Debtors sought to recover build-out and maintenance of the Lewisville Data Center that was sold by Debtors in its entirety to Ocwen and Walter at auction

in October, 2012 for $3 billion. While the Texas Litigation "relates to Debtors' businesses," it is not derivative. The language is overly broad and expressly extinguishes "all Causes of Action, counter-claims and cross claims." P. 13, Para 46 of the Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et. al. and the Official Committee of Unsecured Creditors

> The language with respect to the Injunction is overly broad It states as follows:
>
> "All **entities** who have held, hold or may hold claims, equity interests, causes of action or liabilities that constitute released claims are permanently enjoined and precluded from commencing or continuing in any manner or action or other proceeding of any kind against any Released Party, or (b) enforcing, attaching, collecting or recovering by any manner or means any judgment."

P. 146 [emphasis added]. The term "entity" under 101(15) includes a person. 11 USCA 101(15). Thus, upon adoption of the Plan, Flinn will be subject to a permanent injunction with respect to his counterclaims against Ally, just four months prior to trial. Flinn obtained a stipulated order signed by Debtors and approved by this Court to file counterclaims against the Debtors. Flinn filed his counterclaims against the Debtors and Ally. The Court should not approve a plan that would have the bankruptcy court interfere with the jurisdiction of the U.S. District Court, Eastern District of Texas, a forum sought by Ally to enjoin not the counterclaims that the Court ceded jurisdiction to the Texas Litigation but instead to enjoin the non-debtor Ally. This Court does not have the jurisdiction to enjoin Flinn's Claims against Ally while permitting the claims against Debtors. The Court should not approve the plan as presented.

  C. **The Plan Should Be Amended to Provide for Unsecured Creditors of R-4 who reject the Plan to "Opt-Out" of the Release Provisions of the Plan.**

In the case of Flinn, Flinn is both an unsecured contingent or unliquidated creditor of Debtors, a Defendant and Counter plaintiff against Debtors in a law suit brought by Ally and Debtors. Flinn is also a third party Defendant and Counter plaintiff against Ally, a non-debtor. Flinn is provided only one vote for the Plan as set out in the Court's Order, Paragraph B, subparagraph 12 (f). Doc. No. 4809 referencing R-4 class as follows:

> "(f)    If a claim for which a proof of claim has been timely filed is (i) contingent or unliquidated (as determined on the face of the proof of claim or after a review of the supporting documentation by the Plan Proponents), or (ii) does not otherwise specify a fixed or liquidated amount, the claimant will be allowed to cast **one vote** valued at one dollar ($1.00) for voting purposes only."

Flinn may have pre-petition claims against the Debtors and also has post-petition non-creditor claims against the Debtors. Flinn also has claims as a non-debtor against a third party non-debtor, Ally. There is no voting class that addresses Flinn's situation. Accordingly, to insert Flinn into the R-4 class is highly prejudicial. Like the N J Carpenters, Flinn should be allowed to "opt out" or be part of a class that is similar to his circumstance. For example, the NJ Carpenters were given the opportunity to approve, in which case the "NJ Carpenters Class Members shall be entitled to the NJ Carpenters Claims Distribution. The NJ Carpenters Class Opt-Outs shall not receive any portion of the NJ Carpenters Claims Distributions and shall receive no consideration under the Plan other than in respect of their Allowed Claims against the Estates, which Claims shall be classified as General Unsecured Claims and maybe subject to subordination.

Flinn requests that the Court provide relief from the class described as R-4 (assuming that R-4 describes ResCap/GMAC contingent unliquidated claims), because it does not distinguish between the creditor's claim against the Debtors and Flinn's third-party claim against Ally. Flinn is only permitted to vote against the Plan as an R-4 voter. If a majority of the R-4 votes in favor of the Plan, then Flinn will be bound not only as an unsecured ResCap creditor but as a third party non-debtor who claims are extinguished against Ally, a third party non-debtor. This voting plan should be amended to comply with Section 524(e) and satisfies 11 U.S.C.A., 1129(a)(1). The unsecured creditor may not be compelled to give a release but may consent to do so. If the creditor votes against the Plan, then the creditor may not be required as a non-debtor to release the non-debtor third-party (Ally and the Ally Released Parties). This may be done by creating a ballot that may be checked to approve the non-debtor third-party release. If all the creditors approve the plan by checking the box, then the releases may be approved. *In re Oneida Ltd.*, 351 B.R. 79 (Bankr. S.D. N.Y. 2006). If a creditor does not check the box, then the creditor should be found to have opted out of the release provision. The creditor who fails to check the box may then be denied any part of the Ally contribution which should be held in a trust separate from the other part of the Debtors' estate that is available to the creditors.

    18.    Flinn Flinn moves the Court to grant the following alternative relief:

    (a)    eliminating the Third Party Release and Injunction provisions from the Proponents' Plan entirely, or by

    (b)    carving out from the application of the Release and Injunction provisions of the Plan, Philip Roger Flinn, II and those other similarly situated unsecured claimants who are involved in pending litigation with Ally, or by

(c)  providing Flinn and the other unsecured contingent creditors or creditors who have filed claims against Ally, a non-debtor, the choice on the ballot to either (i) expressly consent to the Release and Injunction provisions or to (ii) treat a "no" vote as an "opt out" of the Release and injunction terms resulting in foregoing any part of Ally's contribution to the Debtors' estate.

### III. CONCLUSION

WHEREFORE, Philip Roger Flinn submits that the Court (i) sustain the objection, (ii) direct the Plan Proponents to amend the Disclosure and Plan to cure the informational inadequacies and to address the issued identified in the Objection and (iii) grant such other relief as just.

Dated: Addison, Texas

October 21, 2013

Respectfully submitted

/s/ Judith P. Kenney
Judith P. Kenney
Judith P. Kenney & Associates, P.C.
One Bent Tree Tower
16475 Dallas Parkway, Suite 330
Addison, Texas 75001-6870
Telephone: (972) 713-6133
Facsimile: 972) 818-0388
*Counsel for Philip Roger Flinn, II*