**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*,

Debtors.

Case No. 12-12020 (MG)

Chapter 11

Jointly Administered

**OBJECTION OF THE FEDERAL HOUSING FINANCE AGENCY**
**TO CONFIRMATION OF THE JOINT CHAPTER 11 PLAN**
**PROPOSED BY RESIDENTIAL CAPITAL, LLC, ET AL. AND**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

KASOWITZ, BENSON, TORRES &
     FRIEDMAN LLP

Andrew K. Glenn (aglenn@kasowitz.com)
Kanchana Wangkeo Leung (kleung@kasowitz.com)
Daniel A. Fliman (dfliman@kasowitz.com)
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Attorneys for the Federal Housing Finance*
*Agency, as Conservator for the Federal Home*
*Loan Mortgage Corporation*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................II

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND...................................................................................... 2

A.    THE ALLY ACTION AND AMENDED COMPLAINT. ................................ 2

B.    THE FHFA PROOFS OF CLAIM. .................................................................. 4

C.    EXAMINER REPORT. ..................................................................................... 5

D.    THE DISCLOSURE STATEMENT AND PLAN. ........................................... 6

ARGUMENT .............................................................................................................. 8

A.    THE PLAN UNFAIRLY DISCRIMINATES AGAINST FHFA UNDER 11
      U.S.C. § 1129(b)(1). ....................................................................................... 9

B.    THE PLAN DOES NOT SATISFY 11 U.S.C. § 1129(a)(7), THE "BEST
      INTERESTS" TEST. ...................................................................................... 13

C.    THE PLAN VIOLATES HERA BECAUSE IT FAILS TO  RECOGNIZE
      FHFA'S PRIORITY RECOVERY STATUS.................................................. 16

D.    THE PLAN WAS NOT PROPOSED IN GOOD FAITH. .............................. 19

CONCLUSION........................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
   441 B.R. 6 (Bankr. S.D.N.Y. 2010) ...................................................18

*In re Am. Media, Inc.*,
   No. 10-16140 (MG), 2010 Bankr. LEXIS 4942
   (Bankr. S.D.N.Y. Dec. 20, 2010) .......................................................8

*In re Armstrong World Indus.*,
   348 B.R. 111 (D. Del. 2006) ................................................................9

*In re Best Prods. Co.*,
   168 B.R. 35 (Bankr. S.D.N.Y. 1994) ................................................15

*In re Colonial Realty Co.*,
   980 F.2d 125 (2d Cir. 1992) ..............................................................17

*In re Eisenbarth,*
   77 B.R. 228 (Bankr. D.N.D. 1987) ...................................................18

*In re Global Ocean Carriers*,
   251 B.R. 31 (Bankr. D. Del. 2000) ...................................................14

*In re Gramercy Twins Assocs.*,
   187 B.R. 112 (Bankr. S.D.N.Y. 1995) .........................................13, 14

*In re Hickey Properties*,
   181 B.R. 173 (Bankr. D. Vt. 1995) ..............................................17, 19

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986) ..................................................9

*In re Leslie Fay Cos.*,
   207 B.R. 764 (Bankr. S.D.N.Y. 1997) ..............................................13

*In re Nutritional Sourcing Corp.*,
   398 B.R. 816 (Bankr. D. Del. 2008) .................................................20

*In re Prudential Energy Co.*,
   58 B.R. 857 (Bankr. S.D.N.Y. 1986) ..................................................8

*In re Pruitt,*
   Nos. 07-31620-DHW, 07-10877-DHW,
   2008 Bankr. LEXIS 1571 (Bankr. M.D. Ala. May 15, 2008) .............18

*In re Quigley Co.*,
    437 B.R. 102 (Bankr. S.D.N.Y. 2010) ...........................................................................8, 15, 20

*In re Sierra-Cal*,
    210 B.R. 168 (Bankr. E.D. Cal. 1997) ...................................................................................14

*In re Worldcom*, No. 02-13533,
    2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. Oct. 31, 2003) ...............................................9, 12

*In re Young Broad. Inc.*,
    430 B.R. 99 (Bankr. S.D.N.Y. 2010) ................................................................................9, 12

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    843 F.2d 636 (2d Cir. 1988) ........................................................................................13, 14, 19

*Koelbl v. Glessing (In re Koelbl)*,
    751 F.2d 137 (2d Cir. 1984) ..................................................................................................19

*Sanitary & Improv. Dist. 65 v. First Nat'l Bank,*
    73 B.R. 205 (Bankr. D. Neb. 1986) .................................................................................17, 18

**Statutes**

11 U.S.C. § 1129(a)(3) .................................................................................................................19

11 U.S.C. § 1129(a)(7) .................................................................................................................13

11 U.S.C. § 1129(a)(8) ...................................................................................................................9

11 U.S.C. § 1129(b)(1) ...................................................................................................................9

12 U.S.C. § 1821(d)(17) ..............................................................................................................17

12 U.S.C. § 4617(b)(15) ....................................................................................................... *passim*

**Other Authorities**

7 COLLIER ON BANKRUPTCY (16th ed. 2013) .......................................................................14, 19

The Federal Housing Finance Agency ("FHFA" or "Conservator") as Conservator for the Federal Home Loan Mortgage Corporation ("Freddie Mac"), hereby submits this objection (the "Objection") to confirmation of the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4819-2] (together with all prior versions, the "Plan"), together with the *Declaration of Andrew K. Glenn*, filed contemporaneously herewith (the "Glenn Declaration," and cited herein as "Glenn Decl."), and in support hereof respectfully represents as follows:[1]

## PRELIMINARY STATEMENT[2]

The Plan cannot be confirmed because the Plan Proponents, who are required to satisfy Section 1129 of the Bankruptcy Code, cannot carry their burden on several critical confirmation requirements.

First, the Plan fails to provide for FHFA's claim of a first priority right to payment from the Debtors' estates and all assets thereof, pursuant to Section 4617 (b)(15) of the Housing and Economic Recovery Act of 2008 ("HERA") and binding Second Circuit precedent. *See* 12 U.S.C. § 4617(b)(15). Such priority cannot be constrained by the Plan. Accordingly, the Plan is unconfirmable as a matter of law.[3]

Second, assuming *arguendo* that FHFA's claims can be treated *pari passu* with general unsecured creditors ("GUCs"), the Plan unfairly discriminates against FHFA by providing it a significantly smaller distribution percentage than the Debtors' GUCs. Although GUCs, unlike

---

[1]    FHFA does not submit to the jurisdiction of this Court, and intends to withdraw the reference, with respect to the adjudication of any issues implicated by 12 U.S.C. § 4617.

[2]    Capitalized terms not defined in the Preliminary Statement have the meanings ascribed to them *infra*.

[3]    Nothing herein or in FHFA's prior objection to the Disclosure Statement shall be deemed a limitation or waiver of any of FHFA's rights or claims under HERA in this or any other proceeding.   FHFA's position in the prior objection to the Disclosure Statement was limited to the particular facts therein regarding the fraudulent transfer claims against Ally Financial and its affiliates, and its rights and claims under HERA against a Debtor and its bankruptcy estate and property are broader than that particularized objection asserted to the Disclosure Statement.

FHFA, are granting third-party releases, the Plan Proponents do not value such releases, and indeed have repeatedly acknowledged that any such valuation would be impossible. Thus, the Plan Proponents cannot possibly demonstrate that there is a reasonable basis for discrimination, much less that the degree of discrimination is proportionate to the proffered rationale. Indeed, because the Examiner values estate claims against Ally significantly higher than third-party claims, the discriminatory treatment of FHFA is even more acute.

Third, the Plan does not satisfy the "best interests" test. The Plan Proponents assert that FHFA, again assuming *arguendo* it is only a GUC, would receive no more than 2% on account of its claims in liquidation, but improperly fail to consider that in liquidation, a chapter 7 trustee would either settle claims against Ally similarly to the Settlement, or prosecute them to yield similar recovery. Indeed, if the Ally Contribution were considered in the liquidation analysis, and proceeds were distributed *pro rata* in accordance with chapter 7 priorities, FHFA would fare significantly better than it does under the Plan.

Fourth, the Plan violates good faith plan proposal requirements. The Plan is being proposed by a means forbidden by law because it fails to recognize FHFA's entitlements to recovery and its claim for priority position under HERA. Moreover, all major constituencies in the Bankruptcy Cases other than FHFA were included in Plan negotiations, and negotiated the Plan to FHFA's detriment. Thus, the plan process was unfair.

Accordingly, and for the reasons set forth below, the Plan should not be confirmed.

## FACTUAL BACKGROUND

### A.    The Ally Action and Amended Complaint.

1.    FHFA, in its capacity as Conservator of Freddie Mac, commenced an action in the Supreme Court of the State of New York, County of New York, on September 2, 2011. Glenn Decl. ¶ 3. That complaint (the "Complaint") named as defendants: (1) Ally Financial, Inc.

("AFI"), GMAC Mortgage Group, Inc. ("GMACM"), and Ally Securities, LLC ("Ally

Securities"); (2) Residential Capital, LLC ("ResCap"), GMAC-RFC Holding Company LLC

("GMAC-RFC Holding"), Residential Funding Company, LLC ("RFC"), Residential Asset

Mortgage Products, Inc. ("RAMP"), Residential Asset Securities Corporation ("RASC"), and

Residential Accredit Loans, Inc. ("RALI") (collectively, the "ResCap Defendants"); and

(3) seven underwriters (collectively, the "Underwriter Defendants"). *Id.* The Complaint

generally alleged that, between September 23, 2005 and May 30, 2007, Freddie Mac purchased

over $6 billion in residential mortgage backed securities (the "Certificates") issued in connection

with 21 securitizations ("Securitizations") for which the ResCap Defendants acted as depositors,

sponsor, and control persons thereof. *Id.*

       2.      On October 6, 2011, all defendants removed the action to the United States

District Court for the Southern District of New York (the "District Court"), where it was

assigned to the Honorable Denise L. Cote, U.S.D.J., as Case No. 11- Civ. 7010 (the "Ally

Action"). *Id.* ¶ 4. Judge Cote thereafter entered an order coordinating for pretrial proceedings

the Ally Action with fifteen similar actions commenced by FHFA against other defendants

regarding other residential mortgage backed securities. *Id.*

       3.      On May 14, 2012 (the "Petition Date"), the above-captioned debtors (the

"Debtors"), including the Subject Debtors (defined below), filed petitions in the United States

Bankruptcy Court for the Southern District of New York to commence their chapter 11

bankruptcy cases (the "Bankruptcy Cases"").

       4.      On June 13, 2012, FHFA amended its Complaint in the Ally Action (the

"Amended Complaint"). *Id.* ¶ 5. Because of the Debtors' bankruptcy filing, FHFA's Amended

Complaint removed all Debtors from the Ally Action, but continued to assert claims against AFI,

GMACM and Ally Securities and the Underwriter Defendants (collectively, the "Non-Debtor

Defendants"). *Id.* Otherwise, the Amended Complaint makes the same substantive allegations as the original Complaint. *Id.*

5.      FHFA's Amended Complaint asserts seven claims against the Non-Debtor Defendants. *Id.* ¶ 6. FHFA asserts four claims against Ally Securities and the Underwriter Defendants in their roles as underwriters of the Certificates: (i) violations of section 11 of the Securities Act of 1933; (ii) violations of section 12(a)(2) of the Securities Act; (iii) violations of section 13.1-522(A)(ii) of the Virginia Securities Act; and (iv) common law fraud. FHFA also asserts three claims against AFI and GMACM: (i) violations of section 15 of the Securities Act; (ii) violations of section 13.1-522(C) of the Virginia Securities Act; and (iii) aiding and abetting the fraud. *Id.* ¶ 6.

**B.      The FHFA Proofs of Claim.**

6.      On November 30, 2012, FHFA timely filed proofs of claim (the "Proofs of Claim")[4] against Debtors ResCap, GMAC-RFC Holding, RFC, RAMP, RASC and RALI (collectively, the "Subject Debtors").

7.      In the Proofs of Claim, FHFA alleges that the Subject Debtors, who are issuers and sponsors and/or controlled the issuers, sponsors, and underwriters of the Certificates purchased by Freddie Mac, are liable for the misstatements and omissions of material fact contained in the Registration Statements and other Offering Materials because they prepared, filed, and/or used these documents to market and sell the Certificates to Freddie Mac, or because they directed and controlled the entities that did so.

8.      FHFA's Proofs of Claim assert claims on four independent bases against Debtors RALI, RASC, and RAMP for (i) violations of section 11 of the Securities Act; (ii) violations of section 12(a)(2) of the Securities Act; (iii) violations of section 13.1-522(A)(ii) of the Virginia

---

[4]      FHFA timely presented the Proofs of Claim to Kurtzman Carson Consultants, the Debtors' claims agent, which assigned Claim Nos. 6296, 6297, 6298, 6299, 6300, and 6301 to the Proofs of Claims.

Securities Act; and (iv) common law fraud.  FHFA's Proofs of Claim assert claims on three

independent bases against Debtors RFC, GMAC-RFC Holding, and ResCap for (i) violations of

section 15 of the Securities Act; (ii) violations of section 13.1-522(C) of the Virginia Securities

Act; and (iii) aiding and abetting the fraud.  Additionally, in the Proofs of Claim, FHFA asserted

its first priority right under HERA to estate proceeds to the extent it is determined that the

Debtors hindered, delayed or defrauded Freddie Mac or the Conservator in transfers made or

obligations incurred  in the sale to Freddie Mac of the subject Securities.[5]

**C.    <u>Examiner Report</u>.**

9.    On June 4, 2012, Berkshire Hathaway Inc. filed the *Motion of Berkshire

Hathaway Inc. for the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Docket No.

208], seeking appointment of an examiner to conduct an investigation of the Debtors.  On June

28, 2012, the Court entered the *Order Directing the Appointment of an Examiner Pursuant to

Section 1104(c) of the Bankruptcy Code* [Docket No. 536] (the "<u>Examiner Order</u>").  On July 3,

2012, the Bankruptcy Court entered the *Order Approving Appointment of Arthur J. Gonzalez,

Esq. (the "<u>Examiner</u>") as Examiner* [Docket No. 674].  On July 27, 2012, the Bankruptcy Court

entered the *Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner* [Docket

---

[5]      *See, e.g.*, Proof of Claim against ResCap, ¶ 368:

Pursuant to 12 U.S.C. § 4617(b)(15)(A), FHFA as Conservator is authorized to avoid a transfer of
any interest of an entity-affiliated party, or any person determined by the Conservator to be a
debtor of the regulated entity, in property, or any obligation incurred by such party or person that
was made within 5 years of the date on which FHFA was appointed Conservator if such party or
person voluntarily or involuntarily made such transfer or incurred such liability with the intent to
hinder, delay, or defraud the regulated entity, the Conservator, or receiver. 12 U.S.C. §
4617(b)(15)(D) further states that the Conservator's power to avoid a fraudulent transfer is
"superior to any rights of a trustee or any other party (other than any party which is a Federal
agency) under Title 11." Therefore, the FHFA as Conservator, reserves all its rights pursuant to its
statutory authorization, including with respect to the transfer of any property in which Debtors had
an interest to the extent such transfer was made with the intent to hinder, delay, or defraud the
regulated entity or the Conservator in respect of the claims asserted herein as due and owing to the
Conservator, Fannie Mae or Freddie Mac with any recovery on account of such claims being
entitled to a priority recovery under 12 U.S.C. § 4617(b)(15)(D).

No. 925] (the "Examiner Scope Order") and, on August 6, 2012, the Examiner filed the *Work Plan of Arthur J. Gonzalez, Examiner* [Docket No. 1010] (the "Work Plan"). As set forth in the Examiner Scope Order and Work Plan, although the focus of the examination was on intercompany transactions not implicated by FHFA's claims, the Examiner was to investigate, *inter alia*, the Debtors' estates' claims against Ally,[6] as well as potential claims of third parties against Ally.

10.     On May 13, 2013, the *Report of Arthur J. Gonzalez, as Examiner* was filed on the Court's docket in the Bankruptcy Cases [Docket No. 3698] (the "Examiner's Report"). The Examiner's Report found, *inter alia*, that the Debtors' estates could assert claims against Ally seeking up to approximately $1.31 billion in damages with respect to claims the Examiner believes are likely to prevail, and up to approximately another $1.78 billion in damages with respect to claims against Ally the Examiner believes, while a close question, are more likely than not to prevail. *See, e.g.*, Examiner's Report, I-29-I-31. The Examiner also opined in the Examiner's report that the vast majority of third parties' potential claims against Ally, including "control person" claims asserted against AFI under federal or state securities laws, are more uncertain and/or are less likely to prevail, than the foregoing estate claims. *Id.* at I-37-I-44.[7]

**D.      The Disclosure Statement and Plan.**

11.     On July 3, 2013, the Debtors and the Official Committee of Unsecured Creditors (the "Creditors Committee" and, with the Debtors, the "Plan Proponents") filed their initial version of the Plan [Docket No. 4153]. On July 4, 2013, the Plan Proponents filed the *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al.*

---

[6]      For purposes of discussion of the Plan herein, "Ally" shall mean, as defined in the Plan, collectively, AFI and its direct and indirect subsidiaries and affiliates, excluding the Debtors and their direct and indirect subsidiaries.

[7]      FHFA does not agree with the Examiner's conclusions regarding the strength of FHFA's claims, and FHFA reserves all rights with respect thereto.

*and the Official Committee of Unsecured Creditors* [Docket No. 4157] (as modified, the

"Disclosure Statement").  The terms of the Plan are premised upon Ally's agreement to provide

$2.1 billion in plan funding (the "Ally Contribution") in exchange for certain releases.  The

Debtors assert that the Plan embodies a "global settlement" (the "Settlement") of claims that

would otherwise leave the Debtors embroiled in costly litigation for years to come, and that such

Settlement would not have been possible without the Ally Contribution.

      12.     The Plan releases the estates' claims, including avoidance actions, against, among

others, Ally and those parties that consented to the Plan under the plan support agreement.[8]  The

Plan preserves, however, all other estate causes of action, which are vested in the Liquidating

Trust[9] established under the Plan.  (*See* Plan, Art. IV. R (Preservation of Causes of Action); Plan

Art. VI (The Liquidating Trust).)  Under the Plan, the Debtors' GUCs, but not FHFA, would be

the beneficiaries of recoveries by the Liquidating Trust on account of avoidance recoveries.  (*See*

Plan, Art. III.D.)

      13.     On August 8, 2013, FHFA objected to the Disclosure Statement [Docket No.

4587] (the "Disclosure Statement Objection"), arguing that (i) the Disclosure Statement lacked

adequate disclosure concerning (a) FHFA's first priority under HERA, (b) allocation of the Ally

Contribution as between released estate causes of action and released third-party claims, (c)

allocation of the Ally Contribution among Debtor groups, and (d) timing and procedure by which

the Plan Proponents intend to seek to subordinate FHFA's claims, and that (ii) the Plan

improperly deprived FHFA of the right to vote on the basis that the Plan Proponents may try to

---

[8]      *See* Plan Art. IX.C.  Releases by the Debtors:

    Debtor Released Parties are deemed released and discharged by the Debtors . . . of any and all Causes of
    Action . . . including those Causes of Action based on avoidance liability under federal or state laws . . . .

[9]      Capitalized terms used in this Objection and not defined shall have the meanings ascribed to them in the
Plan.

subordinate FHFA's claims.

14.     The Plan Proponents addressed and resolved the Disclosure Statement Objection by adding language to the Disclosure Statement to preserve FHFA's foregoing rights, and revising FHFA's Plan treatment to clarify that FHFA may vote on the Plan provided its claims are not subordinated under Section 510(b).  On August 16 and 20, 2013, the Plan Proponents filed modified versions of the Plan and Disclosure Statement [Docket Nos. 4733, 4770].

15.     On August 21, 2013, the Court held a hearing on the Disclosure Statement (the "Disclosure Statement Hearing").  At the Disclosure Statement Hearing, the Court expressed certain concerns with respect to confirmation, discussed *infra*.  Nevertheless, the Court approved the Disclosure Statement on August 23, 2013 [Docket No. 4809].  On the same date, the Debtors filed "solicitation" versions of the Plan and Disclosure Statement [Docket No. 4819].

## ARGUMENT

16.     A plan's proponents bear the "burden of proving each of the elements of Bankruptcy Code sections 1129(a) and 1129(b) by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Plan."  *In re Am. Media, Inc.*, No. 10-16140 (MG), 2010 Bankr. LEXIS 4942, at *20-21 (Bankr. S.D.N.Y. Dec. 20, 2010); *see also In re Quigley Co.*, 437 B.R. 102, 125 (Bankr. S.D.N.Y. 2010) ("The proponent of confirmation bears the burden of proof by a preponderance of the evidence.") (citation omitted); *In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986) ("the Code imposes upon the Court the responsibility to determine whether the requirements of § 1129(a) of the Code have been met . . . .  [I]n this the plan's proponents . . . have the burden of proof.") (citations omitted).

17.     Here, the Plan Proponents fail to carry their burden of demonstrating that the Plan (i) provides for the statutory priorities claimed under HERA by FHFA in its timely filed Proofs of Claim, (ii) does not unfairly discriminate against FHFA under Section 1129(b)(1) of the

Bankruptcy Code, (iii) satisfies the "best interests" test under Section 1129(a)(7)(A)(ii), and (iv) was proposed in good faith under Section 1129(a)(3).

A.    **The Plan Unfairly Discriminates Against FHFA Under 11 U.S.C. § 1129(b)(1).**

18.    Because FHFA, which is its own class, rejected the Plan, the Plan Proponents must satisfy Section 1129(b) of the Bankruptcy Code.  *See* 11 U.S.C. § 1129(a)(8), (b)(1). Section 1129(b)(1) provides that a plan that has been rejected by an impaired class, like FHFA, can be confirmed only if, *inter alia*, "the plan does not discriminate unfairly" against such class. 11 U.S.C. § 1129(b)(1).

19.    "Under 1129(b)(1), a plan unfairly discriminates when it treats similarly situated classes differently without a reasonable basis for the disparate treatment." *In re Young Broad. Inc.*, 430 B.R. 99, 139-40 (Bankr. S.D.N.Y. 2010) (citations omitted).  "Generally speaking, this standard ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes." *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (citations omitted).  "To determine whether a plan discriminates unfairly, courts consider whether (1) there is a reasonable basis for discriminating, (2) the debtor cannot consummate the plan without the discrimination, (3) the discrimination is proposed in good faith, and (4) the degree of discrimination is in direct proportion to its rationale." *In re Worldcom*, No. 02-13533, 2003 Bankr. LEXIS 1401, at *174-75 (Bankr. S.D.N.Y. Oct. 31, 2003) (citations omitted).  In fact, some courts find:

> *a rebuttable presumption of unfair discrimination arises* when there is: (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.

*In re Armstrong World Indus.*, 348 B.R. 111, 121 (D. Del. 2006) (citing *In re Dow Corning*

*Corp.*, 244 B.R. 696, 702 (Bankr. E.D. Mich. 1999)) (quotation omitted) (emphasis added).

20.    The Plan Proponents fail to satisfy their burden under Section 1129(b)(1) because they have not established and cannot establish that the Plan does not unfairly discriminate against FHFA.  The Plan accords GUCs recoveries ranging, depending on the Debtor group they assert claims against, from 7.8% to 41.9%.  *See* Glenn Decl. Ex. A, at 26:7-10.  According to the Plan, GUCs are at the same level of priority as FHFA, barring subordination (with which FHFA disagrees in any event, because it should have first priority on recoveries and other estate assets, as discussed in Section C, *infra*).  Yet, the Plan provides for FHFA to recover a mere 0.001% to 2% of its allowed claims, depending upon Debtor group.  (*See* Plan, Art. III.D.1.(k)(ii); Plan, Art. III.D.3.(k)(ii).)

21.    The GUCs' recovery accounts for both GUC claims against the Debtors and the price of GUCs' third-party releases of non-debtors (*i.e.*, Ally), while FHFA's materially smaller recovery "accounts for the fact that no holder of an FHFA Claim is subject to the Third Party Releases."  *Id.*  Although, indeed, FHFA is not entitled to any value specifically attributed to third-party releases (since FHFA, unlike GUCs, is not giving any third-party releases), FHFA *is* entitled to at least the *same recovery as GUCs* (to the extent there was no HERA priority, which there is) with respect to claims each holds against the Debtors.  However, the Plan does not explain – and the Plan Proponents cannot explain – what portion of GUCs' recovery is attributable to which bucket, an issue the Court identified at the Disclosure Statement Hearing:

> THE COURT:  [S]omebody's got to make me understand how FHFA – and I understand they're not signing on to the release of AFI – how that in itself justifies their getting the smaller distribution from the debtors' estate.

> CREDITORS' COMMITTEE:  Your Honor, that – it's an important question. It's one that we've given a fair amount of thought to.  And you're right to point out that the separate treatment of the FHFA, which in fact now, as Your Honor will hear, is two percent rather than three percent . . . .

10

THE COURT:  So does that mean, in fact, that you're valuing the release to AFI at somewhere between five and eight cents?

CREDITORS' COMMITTEE:  The concept, Your Honor, is that the proposed treatment to the FHFA would give them what would be available to them as a creditor . . . in the absence of . . . the global settlement . . . .

THE COURT:  It looks to me that you're valuing the release to AFI at somewhere between six and nine cents . . . .  when we get to the third-party releases, that's one of the questions I have . . . But this was the closest that I came to seeing something that actually put a value on it.  You're saying if . . . FHFA doesn't sign on to the plan and agree to release AFI, they get 2 cents, and if they do sign on, they stand to get 7.8 to 10.3 cents.

CREDITORS' COMMITTEE:  That's essentially right, Your Honor.

THE COURT:  And that seems to me to be putting a value on the release.

CREDITORS' COMMITTEE:  Your Honor, if you would compare what's available to . . . creditors without the AFI settlement, I think you would end up with a number like two cents . . . .

. . . .

THE COURT:  I just want you to know, I've got questions . . . .

Glenn Decl. Ex. A, at 39:19-41:19.

22.     Indeed, the Plan Proponents admitted both in their omnibus reply to Disclosure Statement objections [Docket No. 4723] (the "Disclosure Statement Reply") and at the Disclosure Statement Hearing that the GUCs' Plan treatment was purely the result of mediation, and that there was no allocation between estate and non-estate claims.  In fact, the Plan Proponents repeatedly stated that such an allocation *would not even be possible*.  *See* Disclosure Statement Reply, ¶ 29 ("there is no basis for allocating the Ally Contribution to specific third party or estate causes of action"); *id.* ¶ 39 ("the Plan Proponents do not believe it is . . . even possible, to attempt to 'allocate' the Ally Contribution"); *id.* ¶ 49 ("the Plan Proponents do not believe it is . . . possible to attempt to 'allocate' the Ally Contribution"); Glenn Decl. Ex. A, at 109:11-14 (DEBTORS: "there were some objections that asked us to allocate . . . .  We can't do

11

that.").

23.     Accordingly, by their own admission, the Plan Proponents cannot satisfy their burden of demonstrating that the Plan does not unfairly discriminate against FHFA under Section 1129(b)(1), nor can they establish that the discrimination is in proportion to its proffered rationale, as is the standard required by law. *See Young Broad.*, 430 B.R. at 139-40; *Worldcom*, 2003 Bankr. LEXIS 1401, at *174-75. Thus, the Plan cannot be crammed down on FHFA because the Plan Proponents fail to satisfy the requirements in Section 1129(b)(1) for confirming a plan over a dissenting class vote.

24.     According to the Examiner's Report – employed by the Plan Proponents to buttress the Settlement – the discrimination against FHFA is decidedly *not* in proportion to its proffered rationale. Although the Plan Proponents maintain that it is impossible to allocate the Ally Contribution, based on the Examiner's Report, estate claims should be valued at significantly more than third-party claims – the Examiner concludes that there are up to approximately $3.1 billion in estate claims against Ally that would be either likely to prevail or more likely than not to prevail, while the vast majority of third-party causes of action identified against Ally are unlikely or less likely than not to prevail. *See, e.g.*, Examiner's Report, at I-29-I-31, I-37-I-44. For example, with respect to "control person" claims against AFI, the Examiner concludes that the totality of the evidence available to him indicates that it would be difficult to prove the necessary degree of control, and that (while it is a close question) it is more likely than not that a court would not find the requisite control by AFI over the alleged primary securities violators, in addition to noting his belief that certain such claims appear subject to potential statute of limitations and other affirmative defenses. *See, e.g.*, *id.* at I-38.[10] Thus, although

---

[10]     To the extent the Examiner intended to address claims by FHFA against Debtors and non-debtor affiliates, FHFA does not accept the Examiner's conclusion as the issues therein are questions of law that must necessarily be determined by a court of competent jurisdiction.

FHFA vehemently disagrees with the Examiner's assessment of the strength of FHFA's claims

(and reserves all rights with respect thereto), to the extent that the Plan Proponents and Court

rely on the Examiner's Report, it is at the very least improper to allocate *more* of the Ally

Contribution to consideration for settling purportedly weaker third-party claims as opposed to

settling $3.1 billion in stronger estate causes of action – and certainly not *so much more* that the

Plan should be approved to limit FHFA recovery to .001% to 2% as compared to GUCs' 7.8% to

41.9% solely to account for not granting third-party releases.

25.    Putting its HERA priority assertion aside, if FHFA were a GUC of the estates, it

would be entitled to share fully in any consideration received by the Debtors on account of

released estate causes of action.  Because the Plan Proponents fail to carry their burden of

demonstrating that the Plan does not unfairly discriminate against FHFA – and, in fact, the

Examiner's Report strongly suggests it does – the Plan cannot be confirmed under Section

1129(b)(1).

**B.    The Plan Does Not Satisfy 11 U.S.C. § 1129(a)(7), The "Best Interests" Test.**

26.    The Plan Proponents also fail to carry their burden with respect to Section

1129(a)(7) of the Bankruptcy Code.  Section 1129(a)(7), commonly referred to as the "best

interests of the creditors" or "best interests" test, requires, notwithstanding the results of any vote

on a proposed plan, that:

> (7) With respect to each impaired class of claims or interests--
>     (A) each holder of a claim or interest of such class--
>       (i) has accepted the plan; or
>       (ii) will receive or retain under the plan on account of such claim or interest
> property of a value, as of the effective date of the plan, that is not less than the
> amount that such holder would so receive or retain if the debtor were liquidated
> under chapter 7 . . . on such date . . .

11 U.S.C. § 1129(a)(7)(A).  *See In re Leslie Fay Cos.*, 207 B.R. 764, 787 (Bankr. S.D.N.Y.

1997); *In re Gramercy Twins Assocs.*, 187 B.R. 112, 122 (Bankr. S.D.N.Y. 1995); *see also Kane*

*v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988)

("Subsection 1129(a)(7) incorporates the former 'best interest of creditors' test and requires a

finding that each holder of a claim or interest either has accepted the plan or has received no less

under the plan than what he would have received in a Chapter 7 liquidation.").

27.     The "best interests" test "is perhaps the strongest protection creditors have in

Chapter 11." *Gramercy*, 187 B.R. at 125 (citation omitted).  It "is one of the cornerstones of

chapter 11 practice . . . [that provides] an individual guaranty to each [objecting or nonvoting]

creditor or interest holder that it will receive at least as much in reorganization as it would in

liquidation."  7 COLLIER ON BANKRUPTCY, ¶ 1129.02[7] (16th ed. 2013).  The test is designed to

protect minority stakeholders, irrespective of a vote.  Thus, if "a prompt chapter 7 liquidation

would provide a better return to particular creditors or interest holders than a chapter 11

reorganization, then a reorganization is inappropriate and a chapter 11 plan should not be

confirmed."  *In re Sierra-Cal*, 210 B.R. 168, 172 (Bankr. E.D. Cal. 1997).

28.     As is the case with all of the requirements of Bankruptcy Code Section 1129(a),

"the burden of establishing compliance with [the best interests test] is on the proponent of the

plan."  *In re Global Ocean Carriers*, 251 B.R. 31, 46 (Bankr. D. Del. 2000).  In *Global Ocean*,

the Court denied confirmation of a plan, based on the objection of a single noteholder,

notwithstanding that upwards of 90% of the creditors voted in favor of the plan, where the Court

had determined that the plan proponent failed to demonstrate that the plan satisfied the Section

1129(a)(7) test.  *See id.*

29.     Where, as here, a plan encompasses a settlement the court is to approve, the

liquidation analysis proffered by the plan proponent to satisfy the best interests test should

assume distribution in chapter 7 of the amount of such settlement.  This is because a chapter 7

trustee would either enter into a similar settlement, or would recover a similar amount from

14

prosecuting the claims.  *See In re Best Prods. Co.*, 168 B.R. 35, 71-72 (Bankr. S.D.N.Y. 1994)

("Were the LBO Action not being compromised, I would have to value it for § 1129(a)(7) at

what I ascribe to be its settlement value . . . .  Since the LBO Action is being compromised in a

settlement which I am approving, the appropriate value to affix to the LBO Action is the amount

of the compromise."); *see also Quigley*, 437 B.R. at 146 (plan failed best interests test where

plan proponents' liquidation analysis should have assumed availability of historical settlement

value to pay non-settling claimants' derivative claims against non-debtor beneficiary of plan

channeling injunction).

30.      Here, the Plan Proponents' liquidation analysis incorrectly attributes *no* value to

the Settlement.  *See* Disclosure Statement, Ex. 8, ¶ 29 ("No estimate is included in the

Liquidation Analysis for recoveries relating to potential affirmative damage claims against

Ally."); *id.* ¶ 35 ("no amounts received from litigation pursued against Ally are contemplated in

the Liquidation Analysis").  The Creditors' Committee readily acknowledged as much on the

record at the Disclosure Statement Hearing:

> you're right to point out that the separate treatment of the FHFA, which in fact
> now, as Your Honor will hear, is two percent rather than three percent – but it's
> designed to match what the FHFA would be entitled to in a liquidation.  *And it
> contemplates a liquidation would not include the AFI settlement*.  It would be a
> Chapter 7 liquidation.

Glenn Decl. Ex. A, at 40:1-6 (emphasis added).  This omission is particularly improper in light

of the Examiner's Report, which concludes that approximately $3.1 billion in estate claims exist

against Ally that are likely to prevail or more likely than not to prevail.  *See, e.g.*, Examiner's

Report, at I-29-I-31.  The Plan Proponents are flatly wrong to attribute zero value to such claims

in a liquidation.  The Plan Proponents have thus failed to satisfy their burden of demonstrating

that the 0.001% to 2% FHFA stands to receive under the Plan is equal to or more than what

FHFA would receive in a chapter 7 liquidation.  To the contrary, it is undeniable that if the Ally

Contribution were included in the liquidation analysis, but distributed among creditors of equal

priority level *pro rata*,[11] FHFA would fare significantly better than it does under the Plan, again

disregarding HERA priority for purposes of this analysis.  The Plan fails the best interests test

under Section 1129(a)(7), and thus cannot be confirmed.

**C.     The Plan Violates HERA Because It Fails To
         Recognize FHFA's Priority Recovery Status.**

31.     The Plan is also unconfirmable because it does not provide for FHFA's claim of

first priority, ahead of all stakeholders, to recovery, in violation of HERA.

32.     Congress enacted HERA, which established FHFA and gave the agency extensive

authority over the government-sponsored entities ("GSEs"), Freddie Mac and the Federal

National Mortgage Association ("Fannie Mae").  FHFA has the responsibility to ensure the

safety and soundness of the GSEs to protect the U.S. housing market.  Congress accorded FHFA

broad powers to fulfill its statutory mandate by permitting the Director to appoint FHFA as

Conservator of the GSEs with the authority to conserve and preserve assets, including by

collecting on obligations owed to Freddie Mac.

33.     Section 4617(b)(15) of HERA provides FHFA with explicit authority (1) to avoid

transfers made or obligations incurred by debtors of Freddie Mac with the intent to hinder, delay

or defraud Freddie Mac, and (2) to recover the wrongfully obtained property or its value.

Moreover, the statute expressly gives FHFA priority over any party including a trustee under the

Bankruptcy Code (other than another Federal agency) with respect to such recovery.  HERA

provides, in pertinent part:

(b) Powers and duties of the Agency as conservator or receiver.

(15) Fraudulent transfers.

---

[11]     As set forth herein, FHFA maintains that pursuant to HERA, FHFA should receive first priority from estate
assets.

(A) *In general.  The Agency, as conservator or receiver, may avoid a transfer of any interest of an entity-affiliated party, or any person determined by the conservator or receiver to be a debtor of the regulated entity, in property, or any obligation incurred by such party or person*, that was made within 5 years of the date on which the Agency was appointed conservator or receiver, if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the regulated entity, the Agency, the conservator, or receiver.

(B) Right of recovery.  To the extent a transfer is avoided under subparagraph (A), the conservator or receiver may recover, for the benefit of the regulated entity, the property transferred, or, if a court so orders, the value of such property (at the time of such transfer) from—

(i) the initial transferee of such transfer or the entity-affiliated party or person for whose benefit such transfer was made; or

(ii) any immediate or mediate transferee of any such initial transferee.

. . . .

(D) Rights under this paragraph.  The rights under this paragraph of the conservator or receiver described under subparagraph (A) *shall be superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under title 11, United States Code.*

U.S.C. § 4617(b)(15) (emphasis added).

34.    In *In re Colonial Realty Co.,* the Second Circuit – evaluating the Federal Deposit Insurance Corporation's ("FDIC") rights under 12 U.S.C. § 1821(d)(17) – which is nearly identical to Section 4617(b)(15) of HERA – held that where a bankruptcy estate's claims overlap with those of the FDIC, the FDIC retains a *superior* right to receive *first recoveries* of the proceeds thereof.  980 F.2d 125, 134 (2d Cir. 1992) (FDIC was entitled to "a preferential claim . . . .  the word 'superior' . . . means prior in right.") (quotations omitted).  Non-bankruptcy priorities are enforced in bankruptcy so long as they do not conflict with the Bankruptcy Code. *See In re Hickey Properties*, 181 B.R. 173, 174 (Bankr. D. Vt. 1995) (confirmation denied where state law would not allow priming of secured creditor); *Sanitary & Improv. Dist. 65 v. First Nat'l Bank,* 73 B.R. 205, 206 (Bankr. D. Neb. 1986) (where state statute set forth payment priority for

17

obligations to bondholders, debtor could properly classify bondholder claims differently from and superior to warrantholder claims).

35.    A plan should not be confirmed if any provision therein directly conflicts with a non-bankruptcy federal statute.  *See In re Adelphia Commc'ns Corp.*, 441 B.R. 6, 16 (Bankr. S.D.N.Y. 2010) (bankruptcy court's "equitable power is limited by . . . other [non-Bankruptcy Code] federal laws that should be considered before exercising this power; and . . . *absent specific conflicts in . . . federal law*, a debtor has broad discretion to deal with its creditors through the plan process . . .") (quoting *In re Mercado*, 124 B.R. 799, 802 (Bankr. C.D. Cal. 1991)) (additional citation omitted) (emphasis added; emphasis in original removed); *Adelphia*, 441 B.R. at 17 ("common thread" in plan provisions that violate Section 1123(b)(6) is that such provisions are "violative of a statutory provision found elsewhere in the U.S.C. (*i.e.*, is violative of nonbankruptcy federal statutory law), or is violative of existing caselaw."); *In re Pruitt*, Nos. 07-31620-DHW, 07-10877-DHW, 2008 Bankr. LEXIS 1571, at *8 (Bankr. M.D. Ala. May 15, 2008) (where Internal Revenue Code statute specified that "*Notwithstanding any other law of the United States*" no property was exempt from levy other than that set forth in the statute, "11 U.S.C. § 1326(a)(2) cannot create an additional category of property exempt from levy.") (emphasis in original); *In re Eisenbarth*, 77 B.R. 228, 235 (Bankr. D.N.D. 1987) (denying confirmation; "it is improper for the Debtors to retire or cancel [Federal Land Bank] stock as part of their Chapter 11 plan . . . . [Federal Land Bank] is given the sole discretion, under federal law [title 12 of the United States Code], to cancel stock, and apply it to customer loans" (citation omitted).

36.    The Plan plainly does not provide for FHFA's claim of superior statutory rights in accordance with HERA.  It neither provides for the priority payment to FHFA from recoveries in estate avoidance actions in the event a judicial determination is made that Debtors are liable

18

under HERA for the losses asserted in FHFA's Proofs of Claim, nor does the Plan set aside a

reserve fund to satisfy such a priority claim separate and apart from other assets of the Debtors'

estates.  This omission is fatal.  The Plan blatantly fails to adhere to statutory priorities set forth

by federal law, which Congress expressly provided to FHFA under HERA to override a trustee's

rights in bankruptcy.  The Plan cannot be confirmed as presently presented.

**D.    The Plan Was Not Proposed In Good Faith.**

37.    Finally, the Plan cannot be confirmed because it was not proposed in good faith.

Section 1129(a)(3) of the Bankruptcy Code provides that "[t]he court shall confirm a plan only if

. . . .  The plan has been proposed in good faith and not by any means forbidden by law."  11

U.S.C. § 1129(a)(3).  "The good-faith test means that the plan was proposed with honesty and

good intentions and with a basis for expecting that a reorganization can be effected."  *Kane v.*

*Johns-Manville*, 843 F.2d at 649 (quoting *Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139

(2d Cir. 1984)) (quotation marks omitted).

38.    A Plan fails to satisfy Section 1129(a)(3)'s requirement that it not be proposed

"by any means forbidden by law" when its priority scheme violates non-bankruptcy law.  *See*

*Hickey Properties*, 181 B.R. at 174 ("The proposal for a post-confirmation . . . lien would violate

§ 1129(a)(3), because state law would not allow the priming of a secured creditor"); 7 COLLIER

ON BANKRUPTCY, ¶ 1129.02[3][a][i] ("section 1129(a)(3) requires that the proposal of the plan

comply with all applicable law, not merely the bankruptcy law"); *see also In re Koelbl*, 751 F.2d

137, 139 (2d Cir. 1984).  Here, the Plan violates HERA, a non-bankruptcy federal statute, by

failing to provide for FHFA's first priority with respect to any recovery to which it is entitled.

Accordingly, the Plan Proponents fail to satisfy their burden under Section 1129(a)(3) of

demonstrating that the Plan is not proposed by any means forbidden by law.

39.    Moreover, "Section 1129(a)(3) speaks more to the process of plan development

19

than to the content of the plan . . . .  It must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan . . . including the debtor's pre-filing conduct." *Quigley*, 437 B.R. at 125 (collecting cases).  A settlement encompassed in a plan should thus not be approved when it detrimentally affects the rights of a party who was neither present, nor whose interests were represented adequately during negotiations.  *See In re Nutritional Sourcing Corp.*, 398 B.R. 816, 835 (Bankr. D. Del. 2008) ("there is another reason why I will not approve the settlement or the Plan.  The compromise [therein] severely adversely impacts 'non-goods' trade creditors who were not at the negotiating table and who were not adequately represented in their absence.").  Here, the Plan process was tainted by the Debtors, Creditors' Committee and all major constituencies in the Bankruptcy Cases that negotiated the Plan together, to the exclusion and detriment of FHFA.  The resulting proposed Settlement disenfranchises FHFA from recovering on legitimate and serious securities and fraud claims in furtherance of its Congressionally-mandated duties to collect obligations owed to Freddie Mac.  Thus, the Plan Proponents fail to carry their burden of demonstrating a good faith plan proposal under Section 1129(a)(3) that complies with HERA, and the Plan is unconfirmable.

## CONCLUSION

For the foregoing reasons, FHFA respectfully requests that the Court deny confirmation

of the Plan.

Dated:  October 22, 2013
        New York, New York

KASOWITZ, BENSON, TORRES &
 FRIEDMAN LLP

/s/ Andrew K. Glenn
Andrew K. Glenn (aglenn@kasowitz.com)
Kanchana Wangkeo Leung (kleung@kasowitz.com)
Daniel A. Fliman (dfliman@kasowitz.com)
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Attorneys for the Federal Housing
Finance Agency, as Conservator for the Federal
Home Loan Mortgage Corporation*