**EXHIBIT A**

**EXHIBIT A**

# In Re:

*RESIDENTIAL CAPITAL, LLC, et al.,*

*Case No. 12-12020-mg*

*August 21, 2013*

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email.*



Min-U-Script® with Word Index

12-12020-mg    Doc 5437-1    Filed 10/22/13    Entered 10/22/13 16:21:25    Exhibit A
Pg 3 of 7
**RESIDENTIAL CAPITAL, LLC, ET AL.**

26

1  great.
2          And so this is the marked version of the plan.  And
3  Your Honor, on pages 9 through 15 of the marked plan, it sets
4  out the expected recoveries or projected recoveries in the
5  disclosure statement; and the recoveries for unsecured
6  creditors will vary depending upon whether their claims are
7  against the ResCap debtors, where the estimate is 31.5 to 41.9
8  percent; the GMACM debtors, where it's currently 26 to 34.7
9  percent; and the RFC debtors, where we're at 7.8 to 10.3
10 percent.
11         The plan will establish various trusts to effectuate
12 the distribution.  So we've got the main liquidating trust that
13 will liquidated the debtors' remaining assets, make
14 distributions to creditors in the form of trust units which
15 will be followed up by cash distributions to the units.  And
16 the liquidating trust makes those distributions to creditors
17 other than borrowers, the New Jersey Carpenters claims class,
18 and in some fashion to the members of the private securities
19 claims class.
20         And so the borrowers will have distributions in the
21 form of an actual cash distribution into a borrower trust,
22 which initially will be funded with an amount up to 57.6
23 million dollars.  And there's a true-up concept with respect to
24 that trust, that as we get closer to the effective date of the
25 plan, and we file our plan supplement, we'll have a better

1  confirmation issue.  And let me ask -- the first question is:
2  am I correct that if at the time of confirmation the Court
3  concludes that the best interests test is not satisfied as to
4  any defined class of creditors, that the plan provides that the
5  distribution to that class can be increased?  Is that -- I
6  thought I read that in a lot of the paper I read about the
7  disclosure statement.
8          Here's the reason I'm asking the question.  Mr.
9  Marinuzzi raised -- he talked about the three, and now you've
10 added ETS as a separate bucket.  The plan and the disclosure
11 statement describes that the FHFA claim is included as a class
12 in the RFC bucket, and says that they'd get three percent.  The
13 plan projects -- Mr. Marinuzzi pointed to this in the black-
14 line at pages 14 and 15 -- the distribution to RFC of 7.8 to
15 unsecured creditors of RFC -- 7.8 to 10.3 percent.  The plan
16 provides for three percent to FHFA.
17         I don't know in a liquidation analysis what, if
18 anything -- and I know the plan reserves the right to argue
19 that their claim is subordinated -- but I guess somebody's got
20 to make me understand how FHFA -- and I understand they're not
21 signing on to the release of AFI -- how that in itself
22 justifies their getting the smaller distribution from the
23 debtors' estate.
24         MR. ECKSTEIN:  Your Honor, that -- it's an important
25 question.  It's one that we've given a fair amount of thought

**RESIDENTIAL CAPITAL, LLC, ET AL.**

40

1  to.  And you're right to point out that the separate treatment
2  of the FHFA, which in fact now, as Your Honor will hear, is two
3  percent rather than three percent -- but it's designed to match
4  what the FHFA would be entitled to in a liquidation.  And it
5  contemplates a liquidation would not include the AFI
6  settlement.  It would be a Chapter 7 liquidation.
7          THE COURT:  So does that mean, in fact, that you're
8  valuing the release to AFI at somewhere between five and eight
9  cents?
10         MR. ECKSTEIN:  The concept, Your Honor, is that the
11 proposed treatment to the FHFA would give them what would be
12 available to them as a creditor of RFC in the absence of a
13 settlement -- in the absence of the global settlement.  And
14 they would obviously retain their claims against AFI, which
15 they could pursue for whatever recovery they can obtain in
16 litigation or a settlement.
17         And the intent is to comply with the best interests
18 requirements in the Bankruptcy Code.  To the extent Your Honor
19 is not comfortable that it satisfies the best interests
20 standard, the plan can be modified to accommodate that.  But I
21 think the contemplation is that this is designed to be
22 consistent with the best interest test.
23         THE COURT:  It looks to me that you're valuing the
24 release to AFI at somewhere between six and nine cents.  We'll
25 come to -- because when we get to the third-party releases,

1  that's one of the questions I have is what's the -- and I'm not
2  saying you have to for the disclosure statement ascribe a value
3  to the release.  But this was the closest that I came to seeing
4  something that actually put a value on it.  You're saying if --
5  I thought it was three percent, and now you're telling me it's
6  changed to two percent -- if FHFA doesn't sign on to the plan
7  and agree to release AFI, they get 2 cents, and if they do sign
8  on, they stand to get 7.8 to 10.3 cents.
9          MR. ECKSTEIN:  That's essentially right, Your Honor.
10         THE COURT:  And that seems to me to be putting a value
11 on the release.
12         MR. ECKSTEIN:  Your Honor, if you would compare what's
13 available to RFC creditors without the AFI settlement, I think
14 you would end up with a number like two cents.
15         THE COURT:  Well --
16         MR. ECKSTEIN:  We can walk through that.  But that's
17 essentially --
18         THE COURT:  I just want you to know, I've got
19 questions.  And this may not be a question for today.  This may
20 be -- but look -- and I know Mr. Marinuzzi or you wanted to
21 talk about the standards for a disclosure statement.  I'm
22 pretty quite familiar with the standards for a disclosure
23 statement.  And a lot of the responses were, oh, it's a
24 confirmation issue, it's a confirmation issue.
25         And that's all well and good, but if there are

1  there's a lot in here, and I've read it a bunch of times, but
2  maybe you'll point me to it.  This comes back a little bit to
3  when I talked about the FHFA, how much value -- I don't see
4  anything in here that's attributing value to the release.  AFI,
5  yes, it's contributing 2.1 billion.  There's a discussion of
6  well, these claims have been identified.  The proponents may
7  disagree as to some of the things that the examiner identified.
8  Okay.  But I haven't seen anything that attempts to place a
9  value on the release that AFI will receive.
10             MR. MARINUZZI:  Your Honor, I think the point -- a
11 couple points.  One, there were some objections that asked us
12 to allocate as between --
13             THE COURT:  I agree you don't have to allocate.
14             MR. MARINUZZI:  We can't do that.
15             THE COURT:  That I agree with.
16             MR. MARINUZZI:  We can't do that.
17             THE COURT:  I agree.
18             MR. MARINUZZI:  And if you look at Exhibit 10 to the
19 disclosure statement --
20             THE COURT:  Yes.
21             MR. MARINUZZI:  -- what we've tried to do here is lay
22 out fairly the positions of the JSN and positions of AFI with
23 respect to the examiner's conclusion on the liability that AFI
24 would have otherwise had to the estate, basically, in the
25 absence of a settlement.  I think there's a fair amount of