Hearing Date: November 19, 2013 at 10:00 a.m.
PNC Response Deadline: October 23, 2013 at 4:00 p.m.

**BALLARD SPAHR LLP**
Vincent J. Marriott (admitted *pro hac vice*)
Sarah Schindler-Williams
1735 Market St, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500
Facsimile: (215) 864-8999

*Counsel for PNC Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
In re:                                                     : Chapter 11
                                                           :
Residential Capital, LLC, <u>et</u> <u>al</u>.,            :
                                                           :
                                                           : Case No. 12-12020 (MG)
                    Debtors.                               :
                                                           :
                                                           : Jointly Administered
---------------------------------------------------------- x

**PNC BANK N.A.'S SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS LIMITED OBJECTION TO THE NAMED
PLAINTIFFS' AND DEBTORS' JOINT MOTION PURSUANT
TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 7023 AND 9019 FOR
<u>AN ORDER APPROVING THE SETTLEMENT AGREEMENT ON A FINAL BASIS</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................. 1

RELEVANT FACTS ........................................................................................................................ 2

ARGUMENT .................................................................................................................................... 9

    I.     This Court Must Address the Fairness of the Settlement Agreement, Including the Judgment Credit Provision, or Lack Thereof ................................... 9

    II.    Either a A *Pro Tanto* Judgment Credit Provision or No Judgment Credit Provision Is Fundamentally Unfair Under the Law of this Circuit....................... 11

          A.    A Fairness Determination Is Required for Either the Second or Third Iterations of the Proposed Order ...................................................... 11

          B.    The Settling Parties' Refusal to Explicitly Limit PNC's Ultimate Liability to its Actual Fault Is Indicative of Collusion and Unfairness ................................................................................................... 12

    III.   The Capped Proportionate Share Method is Presumptively Fair And Provides a Simple Solution That Should Be Entirely Acceptable to the Debtors.................................................................................................................. 13

CONCLUSION ............................................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)..................................................................................................11

*Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*,
   416 F.3d 136 (2d Cir. 2005)....................................................................................................7

*Gerber v. MTC Elec. Techs. Co., Ltd.*,
   329 F.3d 292 (2d Cir. 2003)............................................................................................11, 13

*Gillman v. Continental Airlines (In re Continental Airlines)*,
   203 F.3d 203 (3d Cir. 2000)....................................................................................................7

*In re Cmty. Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) ("*CBNV I*").................................................................................4

*In re Cmty. Bank of N. Va.*,
   622 F.3d 275 (3d Cir. 2010) ("*CBNV II*") ...........................................................................5, 6

*In re Masters Mates and Pilots Pension Plan*,
   957 F.2d 1020 (2d Cir.1992)...........................................................................................10, 11

*Rafool v. The Goldfarb Corp. (In re Fleming Packaging Corp.)*,
   No. 04-8166, 2007 WL 4556981 (Bankr. C.D. Ill., Dec. 20, 2007) ......................................10

*U.S. v. AWECO, Inc. (In re AWECO, Inc.)*,
   725 F.2d 293 (5th Cir. 1984) ................................................................................................10

*Walsh v. Hefren-Tillotson, Inc. (In re Devon Capital Mgmt., Inc.)*,
   261 B.R. 619 (Bankr. W.D. Pa. 2001) ...............................................................................9, 10

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

        PNC Bank, N.A. ("**PNC**"), by and through its undersigned counsel, submits this supplemental memorandum (the "**Memorandum**") in further support of its limited objection [Dkt. No. 4661] filed on August 14, 2013 (the "**Limited Objection**"), concerning the Named Plaintiffs' and the Debtors' Joint Motion (the "**Motion**")[1] pursuant to section 105 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "**Bankruptcy Code**"), and Rules 7023 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") seeking an order of this Court (1) granting class certification for purposes of settlement only, (2) appointing the Named Plaintiffs as representatives of the Kessler Settlement Class and appointing class counsel for purposes of settlement only, (3) preliminarily approving the settlement agreement (the "**Settlement Agreement**") between (i) Named Plaintiffs, on their own behalf and on behalf of the Class Members and (ii) the Settling Defendants, (4) approving the form and manner of notice to the Kessler Settlement Class, (5) scheduling a fairness hearing to consider approval of the Settlement Agreement on a final basis and related relief and (6) approving the Settlement Agreement on a final basis and granting related relief filed in this Court on July 31, 2013 [Dkt. No. 4451]. By agreement with the Debtors, a full hearing on its Limited Objection was adjourned until this Court's final fairness hearing. In further support of the Limited Objection, PNC respectfully states as follows:

## INTRODUCTION

    1.    In what appears to be a calculated attempt to frustrate PNC's effort to ensure that the proposed order approving the Settlement Agreement is fair and equitable to the interests of

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed to them in the Motion.

PNC, the Debtors have turned the order, and its treatment of contribution and indemnity claims and judgment reduction, into a moving target. As each attempt at language by the Debtors draws the criticism of this Court, different language is floated by the Debtors, never in consultation with PNC, and never designed to simply provide to PNC what the United States Court of Appeals for the Second Circuit has determined to be presumptively fair and equitable to non-settling co-defendants.

2. The most recent proposed iteration of order language was filed just last week, with no way to know whether this is the final iteration, or merely the latest. Accordingly, PNC, between the Limited Objection and this supplement, will address the shortcomings of all iterations to date, including the most recent. It remains a mystery, however, why the Debtors continue to invite disputes over this language, when (a) the Second Circuit has provided definitive guidance as to the appropriate language, and (b) the judgment reduction language should be of no concern to the Debtors whatsoever, as it impacts no economic interests of the estates.

## RELEVANT FACTS

3. PNC adopts and incorporates by reference the facts as stated in its Limited Objection as if fully stated herein.

4. Prior to the May 14, 2012 (the "**Petition Date**"), one of the above-captioned debtors and debtors-in possession (the "**Debtors**"), Residential Funding Company, LLC ("**RFC**"), was participating as a named defendant, along with PNC, in multi-district litigation pending in the Western District of Pennsylvania (the "**District Court**") under the caption, *In re Community Bank of Northern Virginia Second Mortgage Lending Practice Litigation*, MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688, 051386 (the "**Litigation**" or the "**MDL**").

5. The MDL has been pending for over a decade. The gravamen of the Plaintiffs' current allegations is that a third-party entity, "**EquityPlus**" and, later, "**EquityGuaranty,**" controlled by certain individuals referred to herein as the "**Shumway/Bapst operation**," used the auspices of two small banks, located in Virginia and Florida, to generate second mortgages that violated federal disclosure laws, including the Truth in Lending Act ("**TILA**"), the Home Ownership Equity Protection Act ("**HOEPA**"), and the Real Estate Settlement Procedures Act ("**RESPA**"). The Plaintiffs also allege that these same statutory violations constitute separate violations under the Racketeer Influenced and Corrupt Organizations Act ("**RICO**").

6. Over the course of the last ten years, the allegations as against Community Bank of Northern Virginia ("**CBNV**"), the Virginia bank with which the Shumway/Bapst operation was affiliated from May 1998 – June 2000 and PNC's predecessor-in-interest, have changed markedly. The Consolidated Amended Class Action Complaint ("**CAC**") filed in 2003 alleged violations of RESPA and RICO in addition to state law claims. The CAC highlighted RFC's active involvement with the Shumway/Bapst operation, and alleged that "CBNV had no supervisory authority with respect to" the actual origination of the mortgage loans at issue and that "[RFC] dealt almost exclusively with EquityPlus and the Shumway/Bapst operation, generally, as opposed to CBNV, with respect to all matters relating in any way to the origination of these loans and to [RFC's] ultimate purchase of these loans." (*See* Copy of 2003 Cons. Am. Complt. attached hereto at **Exhibit 1**, at ¶¶ 49, 54.) The CAC went on to allege that

> [RFC] at all material times knew that **CBNV was a 'straw–party'** that had virtually no input with respect to the origination and underwriting of the loans. Representatives of [RFC] were regular visitors to the EquityPlus operation, and [RFC] was unambiguously aware of who was in charge of the operation. [RFC] always dealt with the management and employees of EquityPlus regarding business issues that arose in connection with these loans, not with the management or employees of CBNV.

3

(Cons. Am. Complt. at ¶ 56 (emphasis added).)

7. In 2005, Mercantile Bank purchased CBNV. PNC has been substituted as a named defendant in the MDL solely by virtue of its acquisition of Mercantile Bank in 2007.

8. Prepetition, the MDL was settled on two occasions as among the then-named Plaintiffs (the "**Original Plaintiffs**"), RFC, and PNC (collectively, the **"Original Parties"**). In 2003, the Original Parties together reached a settlement of approximately $33 million plus attorneys' fees. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 283 (3d Cir. 2005) ("*CBNV I*"). In 2005, a group of "**Objector-Plaintiffs**," objected to the settlement on the basis that the settlement was inadequate for failing to address potential claims under TILA/HOWPA. The Third Circuit remanded the settlement to the District Court, holding, among other things, that the District Court had failed to make the required "rigorous analysis" into the adequacy of class counsel's representation under Federal Rule of Civil Procedure (the **"Federal Rules"**) 23(a)(4), and failed to exercise "independent judgment" in adopting the proposed findings of the settling parties. *Id.* at 301-302, 309-10.

9. Following remand in *CBNV I*, the Original Plaintiffs admitted that any alleged TILA/HOEPA claims were likely barred due to the passage of the statute of limitations for the majority of the class, the difficulty in obtaining class certification given the individualized inquiries necessary to support a TILA/HOEPA claim, <u>and</u> class counsel's independent inquiry into the facts that revealed the TILA/HOEPA claims to be "devoid of merit" and "baseless." *See* Plaintiffs' Brief Addressing the Third Circuit Mandate that the Record be Supplemented on Remand ("**Plaintiffs' Remand Brief**"), attached hereto as **Exhibit 2**, at 12-20, 29-34.

10. Despite these admissions, in 2008, the Original Parties nonetheless reached a modified settlement of approximately $47.6 million exclusive of counsel fees that accorded class members a credit for their potential TILA/HOEPA claims in an attempt to address the Objector-

4

Plaintiffs' concerns. *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 281-282, 287 (3d Cir. 2010) ("*CBNV II*"). This settlement, approved by the District Court, was again appealed by the Objector-Plaintiffs. In 2010, the Third Circuit again denied approval of the class settlement, citing the District Court's continued failure to correctly evaluate the adequacy of the then-named plaintiffs and their class counsel under Rule 23(a)(4). *Id.* at 303.

11. In its July 31, 2011 Form 10-Q filed on August 9, 2011, Ally Financial, Inc. announced that its mortgage subsidiary, Residential Capital Financial LLC ("**ResCap**"), had been "negatively impacted by the events and conditions in the mortgage banking industry and the broader economy beginning in 2007" and that as a result, ResCap had "significantly reduced levels of, liquidity available to finance [its] operations." Excerpts of Form 10-Q of Ally Financial Inc. attached at **Exhibit 3**, at 10-11. The 10-Q went on to note that ResCap was "highly leveraged relative to its cash flow" and had experienced "a significant deterioration in capital" and "remain[ed] heavily dependent on Ally and its affiliates for funding and capital support." *Id.* Ally further cautioned its investors on the possibility and potential outcomes of a ResCap bankruptcy filing. *Id*. at 11.

12. On October 4, 2011, the Original Plaintiffs and Objector-Plaintiffs joined forces and filed the Joint Consolidated Amended Class Action Complaint ("**JCAC**") to add the Objector-Plaintiffs as additional named plaintiffs, assert the TILA and HOEPA claims (that co-counsel previously had admitted were meritless), and withdraw any state law claims. The allegations as to CBNV also changed. CBNV was no longer described as a mere "straw-party" with "virtually no input," although RFC was still described as playing a "crucial role" in the alleged "scheme" to defraud the Plaintiffs. (*See* Copy of Joint Consolidated Amended Class Action Complaint, attached hereto as **Exhibit 4**, at ¶¶ 4, 89-101.)

5

13. While previously, class counsel had admitted that the Original Plaintiffs' best case total damages was approximately $200 million, as evidenced in their proof of claim filed in these cases and statements to the media, Named Plaintiffs' counsel has estimated damages in the billions of dollars. *See also CBNV II*, 622 F.3d at 283 (noting Objector-Plaintiffs' position that total value of all claims under RESPA, TILA and HOEPA being released by proposed settlement was almost $3 billion while also noting TILA's then statutory cap of $500,000 on class damages).

14. Seven months later, on May 14, 2012, the Debtors, including RFC, filed for bankruptcy protection, and the MDL was stayed solely as to RFC.[2]

15. On July 3, 2013, the Debtors filed a Joint Plan of Liquidation (the "**Plan**") and Disclosure Statement [Dkt. Nos. 4153, 4157] reflecting a "global settlement" reached with various parties in interest in these cases, including the Named Plaintiffs[3] and their counsel.

16. On July 31, 2013, the Named Plaintiffs and the Debtors (collectively the "**Settling Parties**") filed the Motion in this Court to approve the Settlement Agreement reached between them to resolve the MDL as to RFC and the Debtors and limit the liability of the Debtors to approximately $57.6 million in funds to be distributed to a Borrower Claims Trust, and the assignment of certain insurance rights for the benefit of the Borrower Claims Trust. (*See* Settlement Agr. at § 5.) This Motion was filed immediately after the District Court certified a class in the Litigation.

---

[2] PNC filed proof of claim number 4760 (the "**Proof of Claim**") in RFC's bankruptcy case concerning PNC's claims for contribution and indemnity against RFC that might result from the MDL. The Proof of Claim was later disallowed as contingent under 11 U.S.C. § 502(e)(1)(B) as agreed to by PNC and ordered by this Court on September 12, 2013 [Dkt. 5041].

[3] Upon information and belief, of the Named Plaintiffs involved in negotiating the Settlement Agreement, only Ms. Gaskin and Mr. and Mrs. Picard remain as parties to the MDL. (*See* Mot'n at Ex. 9 at 1, listing plaintiffs.).

17. The Settlement Agreement and its corresponding proposed Final Approval Order (Settlement Agr. at Ex. C), as originally filed, contained a bar order provision that would permanently bar any and all persons and entities, including PNC, from "instituting, commencing, prosecuting, asserting or pursuing any claim against any of the Released Parties[4] for contribution or indemnity . . . based upon or related in any way to the Released Claims or the claims and allegations asserted in the [MDL]. . . ." (Settlement Agr. at § 8(e); Settlement Agr. at Ex. C ¶ 15.) The Settlement Agreement and the proposed Final Approval Order further provided a "Judgment Credit Provision," which stated that "any person or entity so barred and enjoined shall be entitled to appropriate judgment reduction, if applicable, in accordance with applicable statutory or common law rule to the extent permitted for the claims alleged herein." (*Id.*)

18. On August 14, 2013, PNC filed the Limited Objection objecting to the Settlement Agreement's proposed Judgment Credit Provision [Dkt. No. 4661].

19. On August 21, 2013 (the "**August 21 Hearing**"), the Court denied preliminary approval of the Settlement Agreement, affirming PNC's contention in its Limited Objection that the Judgment Credit Provision could not be left to "applicable law," and that the Debtors' and Plaintiffs' request to leave the Judgment Credit Provision to "applicable law" "invit[ed] error" on

---

[4] Neither the term "Released Party" nor "Released Parties" is defined in the Settlement Agreement. PNC believes this is a typographical error as the Settlement Agreement does define "Released Persons" as including the Debtors and the Settling Defendants. (Settlement Agr. at § 2.26.) "Released Party" is currently defined in the Debtor's Plan to include the Kessler Class Claimants. (*See* Plan at Art. I.A. §§ 56, 64, 209.) To the extent the inclusion of the Kessler Class Claimants within the definition of Released Parties is intentional, it comprises an "extraordinary," non-consensual third party release for which no factual justification has been provided and must not be granted by approval of the Settlement Agreement or otherwise. *See Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 212, 214 (3d Cir. 2000); *also Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005).

7

the part of the Court. (*See* Excerpt of August 21 Hr'g Tr. attached hereto as **Exhibit 5**, at 18:12 - 21:17.)

20. That same evening, the Debtors and Plaintiffs' counsel, without consultation with PNC, submitted for the Court's approval an amended Settlement Agreement (the "**Amended Settlement Agreement**," Dkt. No. 4793) proposing a *pro tanto* Judgment Credit Provision, which now read in applicable part as follows:

> Any person or entity so barred and enjoined shall be entitled to appropriate judgment reduction, if applicable, with respect to any judgment obtained by any one or more of the Kessler Settlement Class Members against any such person or entity for the RESPA, TILA/HOEPA and RICO claims as alleged in the MDL Litigation, **on a dollar for dollar basis** equal to the sum of the Kessler Gross Recovery for such one or more Kessler Settlement Class Members.

Am. Settlement Agr. Ex. C at ¶ 15 (emphasis added).

21. At the hearing held the next day, on August 22, 2013 (the "**August 22 Hearing**") with respect to preliminary approval of the Amended Settlement Agreement, the Court noted that in choosing to amend the Judgment Credit Provision to provide for a *pro tanto* reduction only, as they had, the Debtors had selected the "harshest" possible method of judgment reduction. (Excerpt of Aug. 22 Hr'g Tr. attached hereto as **Exhibit 6**, at 21:13 - 22:18.) Indeed, the Court later characterized the Debtors' refusal to negotiate with PNC and adoption of the *pro tanto* Judgment Credit Provision as a "self-inflicted wound." (Excerpt of Sept. 11 Hr'g Tr. attached hereto as **Exhibit 7**, at 84:6-8; 88:17-89:13.)

22. Following the August 22 Hearing, the Court entered an order preliminarily approving the Settlement Agreement and the form of Class Notice, (*see* Dkt. No. 4808), having

8

noted at the hearing, however, that approval of the proposed Judgment Credit Provision on a final basis was to be determined at the final Fairness Hearing. (Aug. 22 Hr'g Tr. at 37:1-13.)[5]

23. On October 15, 2013, the Debtors filed yet another amended final approval order [Dkt. 5360] (the "**Amended Final Approval Order**"), removing in their entirety the Bar Order and Judgment Credit Provision.

24. On October 21, 2013, the United States Court of Appeals for the Third Circuit granted PNC's Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) thereby allowing an interlocutory appeal of the District Court's July 31 decision granting class certification. (*See* Order Granting Leave to Appeal attached hereto at **Exhibit 8**.)

## ARGUMENT

25. PNC adopts and incorporates by reference all arguments and law cited in its Limited Objection as if fully set forth herein.

### I.   **This Court Must Address the Fairness of the Settlement Agreement, Including the Judgment Credit Provision, or Lack Thereof**

26. Where parties to a pending multi-party class action have agreed to seek approval of a settlement of that action in the bankruptcy court, the bankruptcy court must determine whether the settlement as proposed is fair as to third parties. *See Walsh v. Hefren-Tillotson, Inc. (In re Devon Capital Mgmt., Inc.)*, 261 B.R. 619, 623 (Bankr. W.D. Pa. 2001) (approving settlement agreement only after it was modified to avoid prejudice to third parties who were not

---

[5] As noted by PNC's counsel at the August 22 Hearing, the sole Named Plaintiffs who have "signed" the original or Amended Settlement Agreement who retain claims as against CBNV in the MDL are Mr. and Mrs. Picard and Ms. Gaskin. The original Settlement Agreement submitted for approval on July 31, 2013, contained copies of original signatures of the consenting Plaintiffs. The amended Settlement Agreement filed the day after the Court's denial of preliminary approval was "e-signed" by all six of the consenting Named Plaintiffs. Upon information and belief, the Settling Parties have yet to submit an originally signed copy of the Settlement Agreement.

9

parties to litigation and noting that class action settlement was to be approved in both the bankruptcy and state court forums).

27.   Approval of a settlement "is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced," including that "no one has been set apart for unfair treatment." *Id.*, 261 B.R. at 623 (citing *In re Masters Mates and Pilots Pension Plan*, 957 F.2d 1020, 1026 (2d Cir.1992)). Indeed, "[i]gnoring the effect of a settlement on rights of third parties 'contravenes a basic notion of fairness.'" *Id.* (citing *U.S. v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984)) (holding that bankruptcy court abused discretion in approving settlement without considering fairness of settlement agreement to third parties)). *See also, Rafool v. The Goldfarb Corp. (In re Fleming Packaging Corp.)*, No. 04-8166, 2007 WL 4556981 at **3-4 (Bankr. C.D. Ill., Dec. 20, 2007) (rejecting settlement agreement containing provision that acted as a bar order that unduly prejudiced third parties).

28.   The fairness issue is particularly acute where, as here, the Plaintiffs are seeking a partial settlement with a now bankrupt co-defendant, RFC, whom they previously admitted to be the "**primary target defendant in this litigation.**" Plaintiffs' Remand Br. at 22 (emphasis added). Under the law of partial settlements and bankruptcy settlements generally, the Court must be satisfied that the Amended Settlement Agreement was negotiated in good faith, is free from collusion, and ultimately "fair," dependent on a number of factors. *See In re Masters Mates,* 957 F.2d at 1031.[6]

---

[6]   Whether PNC has a right to contribution or indemnity against RFC is <u>not</u> dispositive as to the fairness of the Settlement or the Judgment Credit Provision. *See In re Masters Mates,* 957 F.2d at 1031.

## II. Either a *Pro Tanto* Judgment Credit Provision or No Judgment Credit Provision Is Fundamentally Unfair Under the Law of this Circuit

### A. A Fairness Determination Is Required for Either the Second or Third Iterations of the Proposed Order

29. The Second Circuit has held that in considering whether a judgment credit is appropriately addressed the analysis is not limited to compensation for any lost contribution rights, but also takes into adequate account the relative fault of the parties, the likelihood of the plaintiff's prevailing at trial, and the adequacy of the resources of the most culpable party. *In re Masters Mates*, 957 F.2d at 1031 (2d Cir. 1992). The *Master Mates* Court "decline[d] to delineate either the requirements or all of the appropriate considerations for that [fairness] hearing. The test must be one of fairness." *Id.* at 1032. The *Master Mates* Court explicitly cautioned that "[a] settlement bar should not be approved unless it is narrowly tailored and preceded by a judicial determination that the settlement has been entered into in good faith and that no one has been set apart for unfair treatment." *Id.* at 1031.

30. The Second Circuit has also recognized that the possibility of collusion among the settling parties where the judgment credit is *pro tanto*, requires a fairness hearing with all of its attendant factors. *See Masters Mates*, 957 F.2d at 1029 ("the *pro tanto* method leaves the field of settlement very much open to collusive arrangement between a plaintiff and a favored joint tortfeasor." (internal citations omitted)); *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 292, 306 (2d Cir. 2003).

31. The same principles should apply to silence on the issue of a judgment credit, as most recently proposed by the Debtors. In the first instance, such silence again "invites error" by this Court, as the practical effect of silence is to leave the issue to applicable law, which the Second Circuit has found to be inadequate. *See* Limited Obj. at ¶ 9 (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 274 (2d Cir. 2006)).

11

32. Moreover, where, as here, PNC's contingent claim for contribution or indemnity has been disallowed by this Court [Dkt. No. 5041], and in any event the Debtors are insolvent with limited recoveries expected for unsecured creditors of RFC even if such a claim had not been disallowed, or was later reinstated (*see* Corrected Disclosure Statement (*see* Dkt. No. 4819 Ex. A, at 13), the lack of explicit bar language in the latest iteration of the proposed approval order does nothing to change the fact that as a practical matter, PNC does not have contribution or indemnity rights. Hence, the opportunities for unfairness and collusion remain.

### B. The Settling Parties' Refusal to Explicitly Limit PNC's Ultimate Liability to its Actual Fault Is Indicative of Collusion and Unfairness

33. Whether it is in the context of the fairness of a settlement affecting third-party rights or the basic bankruptcy principles of Bankruptcy Rule 9019, the settlement as proposed clearly sets PNC apart for "unfair treatment."

34. The Plaintiffs' former "primary target" has now become their primary advocate in forcing a result that is clearly designed to ensure that primary responsibility for RFC's alleged "scheme" is now shouldered by PNC. The Original Parties reached settlement two times over the course of this decade old Litigation. Each time the settlement amount was less than the total Borrowers' Claims Trust. Each time settlement was reached, the Objector Plaintiffs forced an appeal resulting in remand. Having destroyed the prior settlements, the Objector Plaintiffs forced the filing of the JCAC only months before RFC's bankruptcy to include claims that class counsel previously admitted were devoid of legal and factual merit.

35. Now in the context of RFC's bankruptcy, the Named Plaintiffs have reached a settlement with the Debtors that, on its face, is more than the prior settlements, but is clearly less than the "billions" of dollars the amended JCAC promises to class members (and class counsel).

36. This is not a case where the Debtors or the Plaintiffs are without the benefit of understanding where primary fault may lie, should Plaintiffs be able to establish any fault. Instead, Plaintiffs and the Debtors know all too well that, while PNC denies all liability, should the matter proceed to trial as a class action (a matter now under review by the Third Circuit), under any of the proposals that have been floated by the Debtors, PNC is at serious risk of bearing a disproportionate burden of any final damage award. Such a result is fundamentally unfair.

### III. The Capped Proportionate Share Method is Presumptively Fair And Provides a Simple Solution That Should Be Entirely Acceptable to the Debtors

37. In contrast to other means of addressing a judgment credit, the Second Circuit has held that the adoption of the capped proportionate share method dispenses with the need to determine the fairness of the settlement to non-settling parties.

> Under the capped proportionate share rule . . ., however, no such fairness hearing is necessary because the non-settling defendants' credit will be the *greater* of the proportionate fault or the settlement amount. By ensuring that, at the end of the day, the non-settling defendants are not held responsible for any damages for which the settling defendants are proven liable, the judgment credit adequately compensates the non-settling defendants for their indemnity and contribution claims, **as well as for any other claims where the harm to the non-settling defendants is based on their liability to the plaintiffs**.

*Gerber*, 329 F.3d at 306 (emphasis added).

38. PNC requests that this Court not permit the Named Plaintiffs and the Debtors to agree by way of settlement to place the new target upon the back of PNC. As this Court has advised, the Debtors' problems with judgment credit issues are "self-inflicted" and as such they are also readily resolved. If any liability is found in the Litigation, it should be apportioned

13

fairly, according to any actual fault as found by the trier of fact. Approval of the Motion should be denied unless the modified language as proposed by PNC in the Limited Objection is adopted.

## CONCLUSION

WHEREFORE, for all the reasons stated herein and in the Limited Objection, PNC respectfully requests that the Court only grant the Motion subject to the insertion of a fair judgment credit in language PNC has previously proposed.

Dated: October 23, 2013

BALLARD SPAHR LLP

/s/ *Vincent J. Marriott, III*
Vincent J. Marriott, III (admitted *pro hac vice*)
Sarah Schindler-Williams
1735 Market St, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
marriott@ballardspahr.com
schindlerwilliamss@ballardspahr.com

*Counsel for PNC Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on or about October 23, 2013, I caused the foregoing document to be served by email on all parties registered for ECF service in these cases, Debtors' counsel, counsel for the Kessler Class Claimants, and the Monthly Service List, and by first class mail on all parties on the Debtors' Special Service List.

/s/ *Sarah Schindler-Williams*
Sarah Schindler-Williams, Esq.