## CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

| | | | |
|---|---|---|---|
| ALMATY | ISTANBUL | | |
| ASHGABAT | LONDON | ATTORNEYS AND COUNSELLORS AT LAW | |
| ASTANA | MEXICO CITY | | TELEPHONE 212-696-6000 |
| BUENOS AIRES | MILAN | 101 PARK AVENUE | FACSIMILE 212-697-1559 |
| DUBAI | MUSCAT | NEW YORK, NEW YORK 10178–0061 | WWW.CURTIS.COM |
| FRANKFURT | PARIS | | |
| HOUSTON | WASHINGTON, D.C. | | |

WRITER'S DIRECT:
212-696-8860
tfoudy@curtis.com

October 21, 2013

**<u>VIA HAND DELIVERY</u>**

The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

Re:    *In re Residential Capital LLC et al.*, Chapter 11 Case No: 12-12020 (MG)
       *Residential Capital, LLC et al. v. UMB Bank, N.A.*, Adv. Pro. Nos. 13-01343, 13-01277

Dear Judge Glenn:

        We are conflicts counsel to the Debtors[1] in the above-referenced Chapter 11 cases. On September 27, 2013, the Debtors served a subpoena (the "<u>Subpoena</u>") on Aurelius Capital Management, LP ("<u>Aurelius</u>"), a member of the Ad Hoc Group, requesting the production of certain documents in connection with Plan confirmation and "Phase II" of the above-captioned adversary proceeding (the "<u>Adversary Proceeding</u>"). Aurelius served its responses and objections to the Subpoena on October 11, 2013 (the "<u>Responses</u>"). On October 11, 2013, the Debtors served a Subpoena on Aurelius seeking a deposition of Aurelius pursuant to Fed. R. Civ. P. 30(b)(6). On October 16, 2013, the parties met and conferred and were unable to resolve their disputes regarding: (1) the discoverability of documents and communications from June 17, 2013 to the present concerning the Disqualification Motion and Aurelius's trading of Notes (the "<u>Trading Discovery</u>");[2] and (2) whether an agreement between counsel voluntarily limiting the discovery to be taken in connection with "Phase I" of the Adversary Proceeding "absent changed circumstances" applies to bar discovery relating to Phase II and Plan confirmation. Accordingly, we write to Your Honor in accordance with paragraph 5(c) of the *Amended Order Establishing A Discovery Protocol In Connection With Discovery Relating To Plan Confirmation* [Docket No. 4974] to submit these disputes to the Court for resolution.

---

[1] Capitalized terms not otherwise defined herein shall have the definitions ascribed to them in Schedule A to the Subpoena. A copy of the Subpoena (without exhibits) is attached hereto as **Exhibit 1**.
[2] Subpoena at Requests for Production 1-5; Rule 30(b)(6) Deposition Topics 1-4. A copy of the Rule 30(b)(6) Subpoena is attached hereto as **Exhibit 2**.

### Documents And Information Concerning Aurelius's Trading Activity Is Discoverable

During the hearing on the Disqualification Motion, Your Honor expressly reserved on the issue of whether the Ad Hoc Group filed the Disqualification Motion in bad faith, and stated that trading by the members in connection with the Motion may be relevant to that inquiry:

> The timing of the filing of this motion raises substantial questions whether the ad hoc group and its counsel have acted in bad faith in filing the motion.

> Members of the ad hoc group, primarily hedge funds, previously declined to sign an NDA because they did not want to become restricted from trading the debtors' securities.

> Litigation conduct, such as the filing of the motion, that threatens to derail confirmation of the proposed plan, has the potential to affect the market price of the debtors' securities. *Any trading by members of the ad hoc group upon the filing of the motion may be relevant to the issue whether [the] motion was filed in bad faith.*[3]

Thus, in seeking the Trading Discovery, the Debtors seek documents and information that bear directly on the type of potentially "bad faith" litigation tactics that Your Honor addressed.

The only document Aurelius has produced, namely, a "Trade History Report" (a copy of which is attached hereto as **Exhibit 3**), shows that Aurelius did trade close in time to the filing of the Disqualification Motion. On June 26, 2013, the Ad Hoc Group notified the Debtors of its intent to move to disqualify Debtors' counsel. The next day, Aurelius purchased $100 million (principal face value) of Notes. On July 16, 2013, Aurelius purchased $25 million of Notes; two days later the Ad Hoc Group filed its Disqualification Motion. The Trading Discovery the Debtors seek is relevant to get the complete picture of Aurelius's trading activity during this time period, and to determine the reason and motivation behind it – consistent with Your Honor's observation during the hearing on the Disqualification Motion that such trading may be relevant to whether the Disqualification Motion was filed in bad faith. Accordingly, the Trading Discovery should be allowed.[4]

Aurelius takes the position that the Trading Discovery the Debtors seek is unwarranted because the Ad Hoc Group's subjective motivation for filing the Disqualification Motion is not relevant to whether the Ad Hoc Group may be subject to sanctions pursuant to Fed. R. Civ. P. 11 ("Rule 11"), citing Sussman v. Bank of Israel.[5] But, Aurelius's argument ignores that its

---

[3] July 30, 2013 Hearing Tr. 65:6-65:18 (emphasis added) [Docket No. 4452].
[4] See In re Salomon Bros. Treasury Litig., No. 91 CIV. 5471 (RPP), 1994 WL 62852, at *1-2 (S.D.N.Y. Feb. 22, 1994) (compelling non-party Federal Reserve Bank to produce "factual information concerning trading and financial activities" where the Bank failed to show that "release of such information could cause a clearly defined injury, or that a protective order would not sufficiently protect against such injury").
[5] 56 F.3d 450, 459 (2d Cir. 1995).

potential bad-faith litigation tactics are relevant to non-Rule 11 issues. As just one example, in these proceedings, the Ad Hoc Group contends that the JSNs are entitled to attorneys' fees pursuant to the Bankruptcy Code.[6] When determining what fees are reasonable, courts "examine whether the creditor's belief was reasonable that the fees were necessary."[7] This would require the Court to undertake an inquiry into the Ad Hoc Group's subjective intent in pursuing their litigation strategies, such as the filing of the Disqualification Motion.

### Counsel's Agreement To Limit Phase I Discovery Is Inapplicable To The Discovery Now Sought In Connection With Plan Confirmation And Phase II

Aurelius objects to a number of the requests[8] on the ground that they supposedly violate an agreement made between the Debtors and the Ad Hoc Group. On July 23, 2013, Aurelius agreed to provide limited discovery "based on an understanding that [the Debtors would not] seek discovery, either by notice or subpoena, from any members [of the Ad Hoc Group] absent some changed circumstances (such as an attempt by the committee to obtain discovery from members of the [A]d [H]oc [G]roup)."[9] Aurelius's position is invalid for two reasons.

First, the agreement was made in the context of Phase I discovery, specifically references the Adversary Proceeding, and does not apply to Plan confirmation or the Chapter 11 cases more broadly. Indeed, the Trading Discovery at issue here were not served until after the Court questioned at the **July 30th** hearing – a week after the **July 23rd** email chain upon which Aurelius relies – whether members of the Ad Hoc Group had traded in connection with the filing of the Disqualification Motion.

Second, by its terms, the agreement was only in effect absent "changed circumstances." Circumstances have changed in the last ten weeks: among other matters, (i) the Disqualification Motion was denied with Your Honor expressly preserving the issue of the Ad Hoc Group's good faith questioning bringing the motion; and (ii) the Ad Hoc Group has aggressively pursued its "scorched-earth" litigation strategy to derail the Plan, even though it proposes to pay the holders of Notes in full, brings $2.1 billion into the estates from Ally, and prevents months, if not years, of costly litigation of inter-creditor disputes.[10]

For the reasons stated above, the Debtors respectfully request that the Court order that (1) documents and information from June 17, 2013 to the present concerning the Disqualification Motion and Aurelius's trading of the Notes are discoverable, and (2) the prior agreement between counsel as to Phase I discovery does not bar Plan and Phase II discovery.

---

[6] *Answer, Affirmative Defenses and Counterclaims of Defendants UMB Bank, N.A. and the Ad Hoc Group of Junior Secured Noteholders to Debtors' First Amended Complaint to Determine Extent of Liens and for Declaratory Judgment*, ¶ 221 [Docket No. 14].
[7] In re Northwest Airlines Corp., 05-17930 (ALG), 2007 Bankr. LEXIS 3919, *2-3 (Bankr. S.D.N.Y. Nov. 9, 2007) (quoting In re PCH Associates, 122 B.R. 181, 202 (Bankr. S.D.N.Y. 1990)); see also In re Adelphia Commc'ns Corp., 441 B.R. 6, 21-22 (Bankr. S.D.N.Y. 2010) (indicating intent to disallow fees incurred in connection with abusive and frivolous litigation tactics).
[8] Responses at 6-9, 22-23.
[9] A copy of the e-mail chain in which this agreement was made is attached hereto as **Exhibit 4**.
[10] *Order Granting Motion To Implement Discovery Protocol Related To Plan Confirmation*, p. 3 [Docket No. 4913].

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 4                                      October 21, 2013

Respectfully,

*Theresa A. Foudy* (JM)

Theresa A. Foudy

Enclosures

cc:    Lawrence S. Robbins, Esq.
       Ariel N. Lavinbuk, Esq.
       Matthew M. Madden, Esq.
              (*via* e-mail and Federal Express)
       All parties on the Fourth Amended Plan Confirmation Discovery Service List
              (*via* e-mail only)

16676453

# **EXHIBIT 1**

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

**Southern** District of **New York**

In re    Residential Capital, LLC, et al.
Debtor

### SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE

Case No. * **12-12020 (MG)**

To:  Aurelius Capital Management, LP
535 Madison Avenue, 22nd Floor
New York, NY 10022
Attention: Mr. Mark Brodsky

Chapter    **11**

☐  YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A (attached)

| PLACE | DATE AND TIME |
|---|---|
| Curtis, Mallet-Prevost, Colt & Mosle LLP<br>101 Park Avenue, New York, New York, 10178-0061 | October 18, 2013 at 10:00 a.m. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| (Attorneys for Debtors) | September 27, 2013 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, NY, 10178-0061, 212-696-8877, Attn: Jeffrey C. Berman

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

## DEFINITIONS

1.      These Definitions incorporate by reference the Uniform Definitions in Discovery Requests set forth in Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, as incorporated by Rule 7026-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.  The definitions described herein also apply.

2.      "You" and "Your" refer to Aurelius Capital Management, LP and its parents, subsidiaries, affiliates, funds under its management, officers, partners, members, directors, trustees, employees, representatives, agents, attorneys, associates, auditors, financial advisors, bankers, experts, or any person acting on its behalf.

3.      "Ad Hoc Group" means the Ad Hoc Group of holders of the Notes (as defined herein) that, through counsel, has appeared in the Chapter 11 Cases (as defined herein).

4.      "Ally" means Ally Financial, Inc. and each and any of its direct or indirect subsidiaries, including any predecessor entities of Ally Financial, Inc. and/or any of their direct or indirect subsidiaries.

5.      "Allowed Claim" means the $8.7 billion claim against debtors Residential Funding Company, LLC and GMAC Mortgage LLC that was to be offered to and allocated amongst certain securitization trusts in accordance with the terms and conditions of the Initial RMBS Settlement Agreement (as defined herein).

6.      "Chapter 11 Cases" means the Chapter 11 cases being jointly administered under the caption *In re Residential Capital, LLC, et al.*, Case No. 12-12020 (MG).

7.     "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the United States Trustee for the Southern District of New York on May 16, 2012.

8.     "Debtors" means the debtors and debtors in possession in the Chapter 11 Cases.

9.     "Disqualification Motion" means the *Motion of the Ad Hoc Group of Junior Secured Noteholders for Entry of an Order (i) Directing Each of the Debtors' Counsel, Including Morrison & Foerster LLP, Official Committee Counsel, Including Kramer Levin Naftalis & Frankel LLP, and the Debtors' Management to Remain Strictly Neutral in Any Dispute Regarding Claims By and Between Any Debtors, (ii) Ordering the Limited Disqualification of Each of the Foregoing to the Extent Necessary to Effectuate the Foregoing, and (iii) Granting Related Relief*, filed on July 18, 2013 by the Ad Hoc Group in the Chapter 11 Cases [Docket No. 4289].

10.     "Documents" has the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure.

11.     "Document Requests" or "Requests" means the requests for production of Documents set forth herein.

12.     "Houlihan Lokey" means Houlihan Lokey, Inc. and its parents, subsidiaries, affiliates, officers, partners, members, directors, trustees, employees, representatives, agents, attorneys, associates, auditors, financial advisors, bankers, experts, or any person acting on its behalf.

13.     "Initial Proposed Ally Contribution" means the $750 million contribution Ally was to make to the Debtors' estates pursuant to the Pre-Petition Plan Support Agreement (as defined herein).

14.     "Initial RMBS Settlement Agreement" means that certain compromise and settlement that was to result in an Allowed Claim of up to $8.7 billion against debtors Residential Funding Company, LLC and GMAC Mortgage LLC to be offered to and allocated amongst certain securitization trusts in accordance with the terms and conditions of the settlement agreements, and amendments thereto, as described more fully in the *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* filed on or about June 11, 2012 [Docket No. 320] and the various supplements thereto.

15.     "JSN Indenture" means the Indenture dated as of June 6, 2008 among Residential Capital, LLC, as issuer, certain other Debtors, as guarantors, and U.S. Bank National Association, as the indenture trustee, pursuant to which the Notes were issued.

16.     The "Letter" means the letter sent on June 26, 2012 by Mark D. Brodsky, Chairman of Aurelius Capital Management, LP, addressed to the Ad Hoc Group of "ResCap's Junior Secured Noteholders" regarding the Notes (as defined herein).

17.     "Noteholders" means any persons or entities who own or hold Notes (as defined herein), or who manages fund(s) or investment vehicle(s) that own or hold Notes.

18.     "Notes" means the 9.625% Junior Secured Guaranteed Notes due 2015 issued by Residential Capital, LLC pursuant to the JSN Indenture.

19.     "Participants" means the Debtors, the Creditors' Committee, Ally Financial, Inc. and each of its non-debtor affiliates and subsidiaries, the United States Trustee, UMB Bank,

N.A., the Ad Hoc Group, and any party that has been deemed a Participant because it has served

on the Debtors and the Creditors' Committee a Notice of Intent to participate in Plan Discovery

pursuant to the Scheduling Order (as defined herein).  The capitalized terms in this definition

shall be given the same meanings ascribed to them in the Scheduling Order appended hereto.

20.     "Pre-Petition Plan Support Agreement" means the agreement by and among the

Debtors, Ally, the Consenting Holders of Notes (as defined in the Pre-Petition Plan Support

Agreement), and the Ad Hoc Group entered into as of May 13, 2012, which is attached as

Exhibit 9 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital,*

*LLC, In Support of Chapter 11 Petitions And First Day Pleadings* filed by the Debtors on May

14, 2012 [Docket No.6].

21.     "Scheduling Order" means the *Amended Order Establishing a Discovery Protocol*

*in Connection with Discovery Relating to Plan Confirmation* entered in the Chapter 11 Cases on

September 9, 2013 [Docket No. 4974], a copy of which is appended hereto.

## INSTRUCTIONS

1.     These Instructions incorporate by reference the provisions of Civil Rule 26.2 of

the Local Rules of the United States District Courts for the Southern and Eastern Districts of

New York, as incorporated by Rule 7026-1 of the Local Rules for the United States Bankruptcy

Court for the Southern District of New York, as well as the provisions of the Scheduling Order.

2.     Each Document or Communication is to be produced in its entirety, without

abbreviation, redaction, or limitation.

3.      These Requests are intended to encompass each and every nonidentical copy and draft of the Documents requested, as well as all Documents which are in Your actual or constructive possession, custody, or control, or are available upon Your request.

4.      These Requests shall be deemed to be continuing in character.  If, after making an initial response to these Requests, You obtain or discover any further information, Documents, or Communications responsive to these Requests, or become aware that a response is inaccurate, incomplete, or misleading, You are required to supplement or amend Your response.

5.      In producing Documents, all Documents that are physically attached to each other shall be produced in that form.  If a Document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.  Documents that are segregated or separated from other Documents, whether by inclusion in binders, files, or sub-files or by the use of dividers, tabs, or any other method, shall be produced in that form.  Documents shall be produced either in the manner and order in which they are maintained in the ordinary course of business, or segregated and identified by the Request to which they are primarily responsive.

6.      You should produce Documents or Communications not otherwise responsive to a Request if such Documents or Communications refer to, relate to, reflect, concern, or explain the Documents or Communications called for by a Request, or if such Documents or Communications are attached to Documents or Communications called for by a Request.

7.      If there are no Documents or Communications responsive to a particular Request, You shall so state in writing.

8.      If You object to any particular portion of any Request herein, You are nevertheless required to produce Documents in response to all other portions of such Request as to which there is no objection.

9.      If You assert a claim of attorney-client privilege, work product doctrine, or any other privilege or immunity with respect to any Document Request or portion thereof, You shall produce a privilege log in accordance with Section 7 of the Scheduling Order.

10.      If You maintain that any Document or Communication or any portion thereof responsive to any Request herein has been discarded or destroyed in whole or in part, You shall produce the following information:  (a) the date the Document was discarded or destroyed; (b) the reason(s) the Document was discarded or destroyed; (c) the person(s) who discarded or destroyed the Documents; and (d) where the Document was maintained prior to it being discarded or destroyed.

11.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

12.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed outside of its scope.

13.      The use of the singular form of any word includes the plural and vice versa.

14.      The use of a verb in any tense shall be construed as the use of that verb in all other tenses, as necessary to bring within the scope of the Request all responses that might otherwise be construed outside of its scope.

15.      For Documents kept in paper format, the following specifications should be used for their production:

a.   Scanned images should be produced as single-page black-and-white TIFF files in group IV format imaged at 300 dpi.

b.   Each filename must be unique and match the Bates number of the page.  The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

c.   Media may be delivered on CDs, DVDs, USB drives, or External USB hard drives.  Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

d.   Each delivery should be accompanied by an Opticon image link file (.OPT).

e.   A delimited text file (.DAT) that contains available fielded data should also be included, and at a minimum include Beginning Bates Number, Ending Bates Number, and Number of Pages. The delimiters for that file should be the standard Concordance delimiters.

f.   To the extent that Documents have been run through an Optical Character Recognition (OCR) software in the course of reviewing the Documents for production, full text should also be delivered for each Document.  Text should be delivered on a Document level and may be included in an appropriately formatted text file (.TXT) that is named to match the first Bates number of the Document.

16.    For Documents that originated in electronic format, the following specifications

should be used for their production:

a.   Electronic Documents should be produced in such fashion as to identify the location (*i.e.*, the network file folder, hard drive, backup tape, or other location) where the Documents are stored and, where applicable, the natural person in whose possession they were found, or on whose hardware device they reside or are stored.  If the storage location was a file share or work group folder, that should be specified as well.

b.   Attachments, enclosures, and/or exhibits to any parent Documents should also be produced and proximately referenced to the respective parent Documents containing the attachments, enclosures, and/or exhibits.

    c.  For standard Documents, emails, and presentations originating in electronic form, Documents should be produced as TIFF images using the same specifications as set forth in Instruction 15 above, with the following additional terms:  Provide a delimited text file (using the delimiters detailed in Instruction 15 above) containing the following extracted metadata fields: (i) Beginning Production Number; (ii) Ending Production Number; (iii) Beginning Attachment Range; (iv) Ending Attachment Range; (v) Custodian; (vi) Original Location Path; (vii) Email Folder Path; (viii) Document Type; (ix) Author; (x) File Name; (xi) File Size; (xii) MD5 Hash; (xiii) Date Last Modified; (xiv) Date Created; (xv) Date Last Accessed; (xvi) Date Sent; (xvii) Date Received; (xviii) Recipients; (xix) Copyees; (xx) Blind Copyees; (xxi) Email Subject; and (xxii) Path to Native File.  Extracted Text (not OCR Text) should be produced as separate .TXT files.

17.    When converting electronically stored information from its native format into its production format:  (a) all tracked changes shall be retained in the manner in which they existed when the file was collected; (b) OLE Embedded files shall not be extracted as separate Documents; (c) author comments shall be retained in the manner in which they existed when the file was collected; (d) hidden columns and rows shall be retained in the manner in which they existed when the file was collected; (e) presenter notes shall be retained in the manner in which they existed when the file was collected; (f) auto-populated fields, with the exception of auto-populating "page number" fields, shall be replaced with text indicating the field name.  For example, auto-populating "date" fields shall be replaced with the text "DATE," and auto-populating "file path" fields shall be replaced with the text "Path" (or other similar text).

18.    To the extent Documents in a foreign language are produced, processing of such Documents shall be Unicode-compliant.

19.    With respect to Documents containing redacted text, OCR will be provided for the unredacted portions of the Documents.

20.    Additional special processing of certain electronic Documents will be as follows:
Microsoft Excel spreadsheet files will not be converted to TIFF files and will be produced in
native format and in the order that they were stored in the ordinary course of business.  A
placeholder TIFF image will be created, Bates numbered, and the produced Excel file will be
renamed to match the Bates number on its corresponding placeholder page.  The exception will
be for redacted spreadsheets which will be produced in TIFF format as specified above.  Images
for the redacted spreadsheets will display the content in the same manner as if it were printed.
The extractable metadata and text should be produced in the same manner as other Documents
that originated in electronic form.

21.    Upon review, the Debtors may ask for certain other Documents and/or databases
that were initially produced in TIFF or PDF format to be produced in their native format in the
event that the TIFF or PDF version is not reasonably usable.  The Debtors will identify any such
Documents by Bates numbers.  The Documents should be produced in their unaltered native
format with an accompanying text delimited text file (using the delimiters described in
Instruction 15 above) that contains the following fields:  (a) Beginning Production Number; (b)
Ending Production Number; (c) Beginning Attachment Range; (d) Ending Attachment Range;
(e) Path to Native File; and (f) MD5 Hash Value.

22.    Pursuant to Section 5 of the Scheduling Order, within 14 days of the service of
this subpoena upon You, You must: (a) serve any responses or objections to these Requests; (b)
provide to the Participants any suggested revisions to the list of proposed search terms appended
hereto such that the search terms will be more likely to locate documents responsive to these
Requests; and (c) provide to the Participants a statement of the reason(s) for rejecting or revising
any proposed search terms and strings.

23.    The Debtors hereby reserve all rights to expand or supplement all Requests set forth herein.

## REQUESTS FOR PRODUCTION

1.    All Documents and Communications from June 17, 2013 to present Concerning Your and/or any Ad Hoc Group member's purchase or acquisition of any Notes, including but not limited to any Documents or Communications Concerning the timing and/or pricing for any such purchase or acquisition.

2.    All Documents and Communications from June 17, 2013 to present Concerning Your and/or any Ad Hoc Group member's sale or disposition of any Notes, including but not limited to any Documents or Communications Concerning the timing and/or pricing for any such sale or disposition.

3.    Documents from June 17, 2013 to present sufficient to show the date(s) on which You purchased or acquired any Note and the price at which You purchased or acquired each such Note.

4.    Documents from June 17, 2013 to present sufficient to show the date(s) on which You sold or disposed of any Note and the price at which You sold or disposed of each such Note.

5.    All Documents and Communications from June 17, 2013 to present Concerning the Disqualification Motion, including but not limited to any Documents and Communications Concerning the motivation for filing the Disqualification Motion and/or the timing of any trading of Notes in relation to the Disqualification Motion.

6.    All Documents and Communications Concerning the Letter, including but not limited to any drafts of the Letter and any responses to the Letter received by You.

7.      All Documents and Communications Concerning Your contention that the Notes were oversecured as of the date of the Letter.

8.      All Documents and Communications Concerning the topics raised in the Letter.

9.      All Documents and Communications upon which the assertions in the Letter are based.

10.      All Documents and Communications Concerning the Ad Hoc Group's decision to enter into the Pre-Petition Plan Support Agreement.

11.      All Documents and Communications Concerning the Ad Hoc Group's decision to terminate the Pre-Petition Plan Support Agreement.

12.      All Documents and Communications Concerning the reasonableness, adequacy or sufficiency of the Initial Proposed Ally Contribution.

13.      All Documents and Communications Concerning the scope of the releases provided for in connection with the Initial Proposed Ally Contribution.

14.      All Documents and Communications Concerning any analysis provided by Houlihan Lokey to any Noteholder Concerning the Noteholders' recoveries under the Pre-Petition Plan Support Agreement.

15.      All Documents and Communications Concerning the impact the Initial Proposed Ally Contribution would have on the recoveries of You or any Noteholders in the Chapter 11 Cases.

16.      All Documents and Communications Concerning the impact the Initial Proposed Ally Contribution would have on the recoveries of unsecured creditors in the Chapter 11 Cases.

17.      All Documents and Communications Concerning the impact the Initial Proposed Ally Contribution would have on the Debtors' estates generally.

-11-

18.    All Communications with, between or among any present or former Noteholders Concerning the Pre-Petition Plan Support Agreement or the Initial Proposed Ally Contribution.

19.    All Documents and Communications Concerning the impact the Initial RMBS Settlement Agreement would have on the recoveries of You or any Noteholders in the Chapter 11 Cases.

20.    All Documents and Communications Concerning the impact the Initial RMBS Settlement Agreement would have on the recoveries of unsecured creditors in the Chapter 11 Cases.

21.    All Documents and Communications Concerning the impact the Initial RMBS Settlement Agreement would have on the Debtors' estates generally.

22.    All Communications between You and the Ad Hoc Group, its members and/or its advisors Concerning the Debtors before You became a member of the Ad Hoc Group.

23.    All Communications between You and any Noteholder Concerning the Debtors before You became a member of the Ad Hoc Group.

16390800

# **EXHIBIT 2**

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

Southern District of New York

In re    **Residential Capital, LLC, et al.**
Debtor

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE**

Case No. *  **12-12020 (MG)**

Chapter    **11**

To:    Aurelius Capital Management, LP
535 Madison Avenue, 22nd Floor
New York, NY 10022
Attention:  Mr. Mark Brodsky

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| Curtis, Mallet-Prevost, Colt & Mosle LLP<br>101 Park Avenue, New York, New York, 10178-0061 [See Schedule A, attached] | October 24, 2013 at 10:00 a.m. |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |
|  |  |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
| --- | --- |
| (Attorneys for Debtors) | October 11, 2013 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, NY, 10178, 212-696-8877, Attn:  Jeffrey C. Berman

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

# DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

**(c) Protecting a Person Subject to a Subpoena.**
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.**
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# **SCHEDULE A**

# **DEFINITIONS**

1.      These Definitions incorporate by reference the Uniform Definitions in Discovery

Requests set forth in Civil Rule 26.3 of the Local Rules of the United States District Courts for

the Southern and Eastern Districts of New York, as incorporated by Rule 7026-1 of the Local

Rules for the United States Bankruptcy Court for the Southern District of New York.  The

definitions described herein also apply.

2.      "You" and "Your" refer to Aurelius Capital Management, LP and its parents,

subsidiaries, affiliates, funds under its management, officers, partners, members, directors,

trustees, employees, managers, representatives, agents, attorneys, associates, auditors, financial

advisors, bankers, experts, or any person acting on its behalf.

3.       "Ad Hoc Group" means the Ad Hoc Group of holders of the Notes (as defined

herein) that, through counsel, has appeared in the Chapter 11 Cases (as defined herein).

4.      "Ally" means Ally Financial, Inc. and each and any of its direct or indirect

subsidiaries, including any predecessor entities of Ally Financial, Inc. and/or any of their direct

or indirect subsidiaries.

5.      "Allowed Claim" means the $8.7 billion claim against debtors Residential

Funding Company, LLC and GMAC Mortgage LLC that was to be offered to and allocated

amongst certain securitization trusts in accordance with the terms and conditions of the Initial

RMBS Settlement (as defined herein).

6.      "Chapter 11 Cases" means the Chapter 11 cases being jointly administered under

the caption *In re Residential Capital, LLC, et al.*, Case No. 12-12020 (MG).

7.      "Debtors" means the debtors and debtors in possession in the Chapter 11 Cases.

8.      "Disqualification Motion" means the *Motion of the Ad Hoc Group of Junior Secured Noteholders for Entry of an Order (i) Directing Each of the Debtors' Counsel, Including Morrison & Foerster LLP, Official Committee Counsel, Including Kramer Levin Naftalis & Frankel LLP, and the Debtors' Management to Remain Strictly Neutral in Any Dispute Regarding Claims By and Between Any Debtors, (ii) Ordering the Limited Disqualification of Each of the Foregoing to the Extent Necessary to Effectuate the Foregoing, and (iii) Granting Related Relief*, filed on July 18, 2013 by the Ad Hoc Group in the Chapter 11 Cases [Docket No. 4289].

9.      "Houlihan Lokey" means Houlihan Lokey, Inc. and its parents, subsidiaries, affiliates, officers, partners, members, directors, trustees, employees, representatives, agents, attorneys, associates, auditors, financial advisors, bankers, experts, or any person acting on its behalf.

10.     "Initial Proposed Ally Contribution" means the $750 million contribution Ally was to make to the Debtors' estates pursuant to the Pre-Petition Plan Support Agreement (as defined herein).

11.     "Initial RMBS Settlement" means that certain compromise and settlement resulting in an Allowed Claim of up to $8.7 billion against debtors Residential Funding Company, LLC and GMAC Mortgage LLC to be offered to and allocated amongst certain securitization trusts in accordance with the terms and conditions of the settlement agreements, and amendments thereto, as described more fully in the *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* filed on or about June 11, 2012 [Docket No. 320] and the various supplements thereto.

12.      "JSN Indenture" means the Indenture dated as of June 6, 2008 among Residential Capital, LLC, as issuer, certain other Debtors, as guarantors, and U.S. Bank National Association, as the indenture trustee, pursuant to which the Notes were issued.

13.      The "Letter" means the letter sent on June 26, 2012 by Mark D. Brodsky, Chairman of Aurelius Capital Management, LP, addressed to the Ad Hoc Group regarding the Notes (as defined herein).

14.      "Noteholders" means any persons or entities who own or hold Notes (as defined herein), or who manage fund(s) or investment vehicle(s) that own or hold Notes.

15.      "Notes" means the 9.625% Junior Secured Guaranteed Notes due 2015 issued by Residential Capital, LLC pursuant to the JSN Indenture.

16.      "Pre-Petition Plan Support Agreement" means the agreement by and among the Debtors, Ally, the Consenting Holders of Notes (as defined in the Pre-Petition Plan Support Agreement), and the Ad Hoc Group entered into as of May 13, 2012, which is attached as Exhibit 9 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, In Support of Chapter 11 Petitions And First Day Pleadings* filed by the Debtors on May 14, 2012 [Docket No.6].

17.      "Scheduling Order" means the *Amended Order Establishing a Discovery Protocol in Connection with Discovery Relating to Plan Confirmation* entered in the Chapter 11 Cases on September 9, 2013 [Docket No. 4974].

## <u>30(b)(6) DEPOSITION TOPICS</u>

1.      Any purchases or acquisitions by You of any Notes on or after June 17, 2013.

2.      Any sales or dispositions by You of any Notes on or after June 17, 2013.

3.      The motivation for filing the Disqualification Motion.

4.      The timing of any trading of Notes in relation to the Disqualification Motion.

5.      The factual bases underlying Your assertions in the Letter that the Noteholders are oversecured.

6.      The content of any Communications You had with any present or former Noteholder Concerning the Letter.

7.      The Ad Hoc Group's decision to enter into the Pre-Petition Plan Support Agreement.

8.      The Ad Hoc Group's decision to terminate the Pre-Petition Plan Support Agreement.

9.      The content of any analysis provided to You by Houlihan Lokey regarding the Noteholders' recoveries under the Pre-Petition Plan Support Agreement.

10.      Your or any Noteholders' expected recovery under the Pre-Petition Plan Support Agreement.

11.      The impact of the Pre-Petition Plan Support Agreement on the recovery of general unsecured creditors.

12.      The impact of the Pre-Petition Plan Support Agreement on the Chapter 11 Cases generally.

13.      The reasonableness, sufficiency or adequacy of the Initial Proposed Ally Contribution.

14.     The scope of the releases provided in connection with the Initial Proposed Ally Contribution.

15.     The impact the Initial Proposed Ally Contribution would have had on the recoveries of You or any Noteholders in the Chapter 11 Cases.

16.     The impact the Initial Proposed Ally Contribution would have had on the recoveries of unsecured creditors in the Chapter 11 Cases.

17.     The impact the Initial Proposed Ally Contribution would have had on the Debtors' estates generally.

18.     The content of all Communications with, by or among any present or former Noteholders Concerning the Pre-Petition Plan Support Agreement or the Initial Proposed Ally Contribution.

19.     The impact the Initial RMBS Settlement or Allowed Claim would have had on the recoveries of You or any Noteholders in the Chapter 11 Cases.

20.     The impact the Initial RMBS Settlement or Allowed Claim would have had on the recoveries of unsecured creditors in the Chapter 11 Cases.

21.     The impact the Initial RMBS Settlement or Allowed Claim would have had on the Debtors' estates generally.

22.     The content of any Communications with, by or among any present or former Noteholders Concerning the Initial RMBS Settlement or Allowed Claim.

23.     The content of all Communications between You and the Ad Hoc Group, its members, and/or its advisors Concerning the Debtors prior to Your becoming a member of the Ad Hoc Group.

24.     The content of all Communications between You and any present or former

Noteholder Concerning the Debtors prior to You becoming a member of the Ad Hoc Group.

# EXHIBIT 3

# Trade History Report

Start Date:             6/17/2013
Start Date:             8/30/2013
Search String:          rescap
Fund Name:              Display Trades by Fund

| Trade Date | Fund | Security Description | Trans Type | Quantity | Price | Net Money |
|---|---|---|---|---|---|---|
| 8/16/2013 0:00 | AURMASTER | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 8,908,000 | 117.750 | $ 5,390,767.32 |
| 8/16/2013 0:00 | AURPARTNRS | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 3,277,000 | 117.750 | $ 1,983,110.07 |
| 8/16/2013 0:00 | AURCONVMA | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 2,815,000 | 117.750 | $ 1,703,526.04 |
| 7/16/2013 0:00 | AURPARTNRS | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 124,000 | 114.250 | $ 91,937.33 |
| 7/16/2013 0:00 | AURCONVMA | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 24,876,000 | 114.250 | $ 18,443,814.15 |
| 7/12/2013 0:00 | AURPARTNRS | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 20,000 | 114.000 | $ 14,796.15 |
| 7/12/2013 0:00 | AURCONVMA | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 3,980,000 | 114.000 | $ 2,944,434.54 |
| 6/27/2013 0:00 | AURPARTNRS | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 36,313,000 | 113.375 | $ 26,717,351.88 |
| 6/27/2013 0:00 | AURCONVMA | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 12,674,000 | 113.375 | $ 9,324,917.18 |
| 6/27/2013 0:00 | AURMASTER | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 51,013,000 | 113.375 | $ 37,532,902.03 |
| 6/24/2013 0:00 | AURMASTER | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 20,405,000 | 111.750 | $ 14,797,832.65 |
| 6/24/2013 0:00 | AURPARTNRS | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 14,525,000 | 111.750 | $ 10,533,620.15 |
| 6/24/2013 0:00 | AURCONVMA | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 5,070,000 | 111.750 | $ 3,676,795.47 |
| 6/19/2013 0:00 | AURMASTER | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 1,527,000 | 112.000 | $ 1,109,867.26 |
| 6/19/2013 0:00 | AURPARTNRS | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 1,088,000 | 112.000 | $ 790,789.51 |
| 6/19/2013 0:00 | AURCONVMA | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 385,000 | 112.000 | $ 279,829.01 |
| 6/19/2013 0:00 | AURCONVMA | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 1,328,000 | 112.000 | $ 965,228.37 |
| 6/19/2013 0:00 | AURMASTER | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 2,119,000 | 112.000 | $ 1,540,149.79 |
| 6/19/2013 0:00 | AURPARTNRS | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 1,553,000 | 112.000 | $ 1,128,764.80 |
| 6/18/2013 0:00 | AURMASTER | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 398,000 | 111.250 | $ 287,340.65 |
| 6/18/2013 0:00 | AURPARTNRS | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 294,000 | 111.250 | $ 212,256.66 |
| 6/18/2013 0:00 | AURCONVMA | RESCAP 9.625% 15 MAY 2015 | Buy Long | $ 308,000 | 111.250 | $ 222,364.12 |

KEY TO FUND COLUMN:        "AURMASTER" is Aurelius Capital Master, Ltd.; "AURPARTNRS" is Aurelius Capital Partners, LP
                           "AURCONVMA" is Aurelius Convergence Master, Ltd.

# EXHIBIT 4

**Subject:**  FW: Residential Capital, LLC, et al., v. UMB Bank, N.A., et al., Adv. Case No. 13-01343 (MG) (Bankr. S.D.N.Y.)--Discovery Proposal

---

**From:** Foudy, Theresa [mailto:tfoudy@curtis.com]
**Sent:** Wednesday, July 24, 2013 4:39 PM
**To:** Shore, Christopher
**Cc:** Baumstein, Douglas
**Subject:** RE: Residential Capital, LLC, et al., v. UMB Bank, N.A., et al., Adv. Case No. 13-01343 (MG) (Bankr. S.D.N.Y.)--Discovery Proposal

Chris,

Absent changed circumstances (such as any attempt to obtain discovery from Committee members), this is agreeable.  Please let us know when you expect to be producing the documents referred to below.

Thanks,
Theresa

Theresa A. Foudy
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
(212) 696-8860 (t)
(212) 697-1559 (f)
tfoudy@curtis.com

---

**From:** Shore, Christopher [mailto:cshore@whitecase.com]
**Sent:** Tuesday, July 23, 2013 7:08 PM
**To:** Foudy, Theresa
**Cc:** Baumstein, Douglas
**Subject:** RE: Residential Capital, LLC, et al., v. UMB Bank, N.A., et al., Adv. Case No. 13-01343 (MG) (Bankr. S.D.N.Y.)--Discovery Proposal

Theresa,

Here's where we are willing to go to resolve consensually issues relating to proposed discovery from members of the ad hoc group and the committee.

Notwithstanding your latest iteration of the requests in your email below, you've told us that you don't need Aurelius to produce communications and materials your side already has, so we won't be producing those.  With respect to communications with the group, group members, or third parties, we will provide a manual pull from Dan Gropper's and Dennis Prieto's files of the following documents, subject to claims of privilege and confidentiality, with a hard cut off of November 20, 2012, when Aurelius joined the group:

1.  All communications with third parties in response to the letter dated June 26, 2012 from Mark D. Brodsky to the Ad Hoc Group of ResCap's Junior Secured Noteholders (the "Letter").

At this point, given the significant burdens of production and the marginal relevance of the materials requested, we do not see a reason to expose any member's internal analyses to discovery or to go through a member's communications with other group members after a joint defense/prosecution protection is put in place.  In addition, while we recognize you have suggested more custodians, we believe Dan and Dennis would have been copied on all of the materials requested, so the time and

expense of adding others won't add anything.  As noted in my prior email, our willingness to provide documents voluntarily is based on an understanding that your side won't seek discovery, either by notice or subpoena, from any members, absent some changed circumstances (such as an attempt by the committee to obtain discovery from members of the ad hoc group).
Please let me know your thoughts.

If instead you decide to proceed with formal discovery, as we have noted, we reserve all rights.  Thanks,

Chris

---

**From:** Foudy, Theresa [mailto:tfoudy@curtis.com]
**Sent:** Friday, July 19, 2013 04:18 PM
**To:** Shore, Christopher
**Cc:** Baumstein, Douglas; 'Uzzi, Gerard' <GUzzi@milbank.com>; Moscato, Michael J. <mmoscato@curtis.com>; 'Levitt, Jamie A.' <JLevitt@mofo.com>; 'Marinuzzi, Lorenzo' <LMarinuzzi@mofo.com>; 'Engelhardt, Stefan W.' <sengelhardt@mofo.com>; Reisman, Steven J. <sreisman@curtis.com>; Lee, Gary S. <GLee@mofo.com>
**Subject:** RE: Residential Capital, LLC, et al., v. UMB Bank, N.A., et al., Adv. Case No. 13-01343 (MG) (Bankr. S.D.N.Y.)--Discovery Proposal

Chris,

I have not heard back from you in response to my email below.  Is Aurelius willing to voluntarily provide the four categories of documents referenced below?  If not, we are going to move forward with a subpoena at this time.  Are you authorized to accept service?

As noted previously, we do not intend at this time to go forward with any subpoenas to Ad Hoc Group members other than the targeted and limited subpoena to Aurelius.  We reserve our rights to re-visit that decision should the Ad Hoc Group serve subpoenas on Committee members.

Thanks,
Theresa

Theresa A. Foudy
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
(212) 696-8860 (t)
(212) 697-1559 (f)
tfoudy@curtis.com

---

**From:** Foudy, Theresa
**Sent:** Thursday, July 18, 2013 1:29 PM
**To:** 'Shore, Christopher'
**Cc:** Baumstein, Douglas; 'Uzzi, Gerard'; Moscato, Michael J.; Levitt, Jamie A.; 'Marinuzzi, Lorenzo'; 'Engelhardt, Stefan W.'; Reisman, Steven J.
**Subject:** RE: Residential Capital, LLC, et al., v. UMB Bank, N.A., et al., Adv. Case No. 13-01343 (MG) (Bankr. S.D.N.Y.)--Discovery Proposal

Chris,

Following up on our earlier telephone conversation:

<u>First</u>, the documents we want from Aurelius are as follows:

1.      All documents and communications concerning the letter dated June 26, 2012 from Mark D. Brodsky to the Ad Hoc Group of ResCap's Junior Secured Noteholders (the "Letter"), including but not limited to any drafts of the Letter and any responses received to the Letter.

2.      All documents and communications concerning the contention contained in the Letter that the Junior Secured Notes were oversecured as of the date of the Letter.

3.      All documents and communications concerning the topics raised in the Letter.

4.      All documents and communications upon which the assertions stated in the Letter are based.

<u>Second</u>, as I mentioned to you during our earlier telephone call, being eternal optimists, we would be willing to hold off on service of a subpoena on Aurelius until after the mediation sessions that I believe are expected to occur during the week of July 29th -- in hopes that a settlement will obviate the need.  However, we would need assurance from Aurelius that they would not object on grounds of timeliness to a subpoena served after that date.  If you could ascertain if Aurelius would be amenable to such an agreement, we would appreciate it.

Thanks,
Theresa

Theresa A. Foudy
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
(212) 696-8860 (t)
(212) 697-1559 (f)
tfoudy@curtis.com

---

**From:** Shore, Christopher [mailto:cshore@whitecase.com]
**Sent:** Thursday, July 18, 2013 11:23 AM
**To:** Foudy, Theresa
**Cc:** Baumstein, Douglas; 'Uzzi, Gerard'; Moscato, Michael J.; Levitt, Jamie A.; 'Marinuzzi, Lorenzo'; 'Engelhardt, Stefan W.'
**Subject:** RE: Residential Capital, LLC, et al., v. UMB Bank, N.A., et al., Adv. Case No. 13-01343 (MG) (Bankr. S.D.N.Y.)--Discovery Proposal

Well, what other documents do you want beyond what I offered?  When you said you would respond to a proposal if I made the exact one I outlined on our call (which I did), your response really should be something other than "no."  I'm concerned that cobbling together some sort of consensual arrangement is our last clear shot to deal with this problem before people entrench and the subpoenas fly.  So, unless you are saying that a full-blown inquiry into the mind-set and knowledge base of all the players in these cases is necessary (it's ok if you do, but what's the endgame?), I'd ask you to come up with some counterproposal.

Not sure why Mofo is on this chain, btw,

---

**From:** Foudy, Theresa [mailto:tfoudy@curtis.com]
**Sent:** Thursday, July 18, 2013 11:07 AM
**To:** Shore, Christopher
**Cc:** Baumstein, Douglas; 'Uzzi, Gerard'; Moscato, Michael J.; Levitt, Jamie A.; 'Marinuzzi, Lorenzo'; 'Engelhardt, Stefan W.'
**Subject:** RE: Residential Capital, LLC, et al., v. UMB Bank, N.A., et al., Adv. Case No. 13-01343 (MG) (Bankr. S.D.N.Y.)--Discovery Proposal

Chris,

The group of documents proposed below is too limited – you're basically giving us documents that we already have in our

possession or documents to which we would be entitled in any event based upon our document requests to the Ad Hoc Group. In talking this over further with the Debtors, we have decided to proceed with serving a targeted subpoena to Aurelius alone. If you still have not received authority from Aurelius to accept the subpoena, please let us know and we will employ a process server.

We remain willing to refrain from serving subpoenas on the other 14 members of the Ad Hoc Group if the Group foregoes serving subpoenas on Committee members.

Thanks,
Theresa

Theresa A. Foudy
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
(212) 696-8860 (t)
(212) 697-1559 (f)
tfoudy@curtis.com

---

**From:** Shore, Christopher [mailto:cshore@whitecase.com]
**Sent:** Wednesday, July 17, 2013 9:51 AM
**To:** Foudy, Theresa
**Cc:** Baumstein, Douglas; 'Uzzi, Gerard'
**Subject:** RE: Residential Capital, LLC, et al., v. UMB Bank, N.A., et al., Adv. Case No. 13-01343 (MG) (Bankr. S.D.N.Y.)--Discovery Proposal

Theresa,

Following up on our call of yesterday, we propose the following to resolve the issue as to whether or not members of either the ad hoc group or the official committee (collectively, "members") must respond to discovery propounded or to be propounded by the Debtors or the ad hoc group, as follows:

1. Neither the Debtors nor any of the defendants in the consolidated proceeding will seek discovery, either by notice or subpoena, from any members, absent some changed circumstances (such as an attempt by the committee to obtain discovery from members of the ad hoc group).
2. The ad hoc group will produce (i) to the extent requested by the Debtors, a manual pull of all of Dan Gropper's communications with the Debtors or their advisors on matters relating to the consolidated proceedings, and (ii) in connection with ongoing electronic searches of the ad hoc group's custodians, all correspondence between the ad hoc group and Aurelius Capital Management prior to Aurelius' becoming a member of the group, to the extent not otherwise privileged or protected (with the Debtors reserving all rights to challenge any assertions of privilege or protections).

Please let me know your thoughts.  Thanks,

Chris

=============================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.