**Hearing Date:  November 19, 2013 at 10:00 a.m.**
**Objection Deadline (as extended on consent): October 23, 2013 at 5:00 p.m.**

CLIFFORD CHANCE US LLP
31 W. 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Jennifer C. DeMarco
Adam Lesman
Leah S. Edelboim

*Counsel for Ocwen Loan Servicing, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Jointly Administered |

**LIMITED OBJECTION OF OCWEN LOAN SERVICING, LLC TO JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC, ET AL. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT BACKGROUND ................................................................................................... 2

OBJECTION .................................................................................................................................. 4

        A.       The Plan May Not Conflict With the Provisions of the Sale Order ....................... 4

        B.       The Plan Fails to Provide Adequate Assurance that Post-Effective Date
                 Administrative Claims Related to the Ocwen APA Will be Satisfied .................... 5

        C.       The Release of the Ally Released Parties is Impermissibly Broad ........................ 7

CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Holywell Corp. v. Smith*,
    503 U.S. 47 (1992) ...................................................................................................................7

*In re Metcalfe & Mansfield Alternative Invs.*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010) .....................................................................................8

*Pan Am Corp. v. Delta Air Lines*,
    175 B.R. 438 (S.D.N.Y. 1994) .................................................................................................7

*In re Scott Cable Communs.*,
    227 B.R. 596 (Bankr. D. Conn. 1998) ......................................................................................7

**STATUTES**

11 U.S.C. § 1129(a)(9) .....................................................................................................................7

Ocwen Loan Servicing, LLC ("**Ocwen**"), by its undersigned counsel, hereby submits this Limited Objection and Reservation of Rights (the "**Objection**") to the *Joint Chapter 11 Plan Proposed by Residential Capital, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4153], [Docket No. 4811] and [Docket No. 4819] (as amended from time to time thereafter, the "**Plan**").

## PRELIMINARY STATEMENT

1. While Ocwen, as the post-petition purchaser of the Debtors' mortgage servicing assets, takes no issue with the bulk of the Plan proposed by Residential Capital, LLC and its affiliated debtors in the above-referenced Chapter 11 cases (collectively, the "**Debtors**") and the Creditors' Committee,[1] Ocwen makes this limited objection to the extent that the Plan conflicts with or would be deemed to modify the Sale Order, the Ocwen APA (each as defined below) or Ocwen's rights in connection with and as provided by such documents.  Specifically, the Plan does not provide that the Liquidating Trust, with whom all post-petition contracts will vest upon the Effective Date, will assume and perform all of the Debtors' obligations under such post-petition contracts, including the Ocwen APA, and fails to provide Ocwen with an adequate means to enforce against the Liquidating Trust any and all rights under the Ocwen APA following occurrence of the Effective Date.  To the extent that the Plan fails to provide for the performance by the Liquidating Trust of its obligations under the Ocwen APA, it conflicts with and would be violative of the Sale Order entered in these Chapter 11 cases.

2. Additionally, Ocwen currently has no assurance that there will be adequate resources to satisfy post-Effective Date obligations in connection with the Ocwen APA through either (i) the Liquidating Trust Administrative Reserve, established on the Effective

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

Date to satisfy reasonable costs and expenses of the Liquidating Trust, given the failure to unambiguously provide that the Liquidating Trust will assume and perform the obligations under such contracts or (ii) the Administrative, Priority, Secured and Convenience Distribution Reserve, which establishes a reserve only for claims that are Allowed or Disputed as of the Effective Date, notwithstanding the Administrative Claim Bar Date does not occur for 30 days after the Effective Date.[2] Moreover, the Plan currently could be read to bar Ocwen from pursuing any claims against the Liquidating Trust after the Effective Date with respect to breaches of the Ocwen APA.

3.  In addition, Ocwen objects to the third party release of the Ally Released Parties under the Plan to the extent it releases Ally from its obligations to Ocwen arising under or in connection with Ally agreements with Ocwen. The breadth of the release is impermissibly broad and specifically includes the release of contractual obligations to third parties.

4.  Ocwen notes that currently it is in discussions with the Debtors and the Committee with respect to a potential resolution of the objections set forth herein but is filing this Objection as a resolution has not been agreed to by the Objection Deadline.

## RELEVANT BACKGROUND

5.  On November 21, 2012, the Court entered an *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto;*

---

[2] The Administrative Claim Bar Date is defined as the "deadline for filing requests for payment of Administrative Claims, which shall be the first Business Day that is thirty (30) days following the Effective Date, unless otherwise ordered by the Bankruptcy Court, except with respect to Professional Claims which shall be subject to the provisions of Article II." *See* Plan at Art. I (A)(4).

2

*(D) Related Agreements; and (II) Granting Related Relief* [Docket No. 2246] (the **"Sale Order"**).  The Sale Order, among other things, provides that "[n]othing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in these Chapter 11 cases shall alter, conflict with, or derogate from, the provisions of the Ocwen APA or this Order."  *See* Sale Order at ¶ 28.

6.      The sale of the mortgage servicing and related assets to Ocwen pursuant to the Asset Purchase Agreement, dated November 2, 2012, between Ocwen and certain of the Debtors closed on February 15, 2013.  As defined in the Sale Order, the Ocwen APA includes, among other things, a variety of ancillary agreements pursuant to which the Debtors have material continuing obligations to Ocwen.  The ancillary agreements include, but are not limited to, the Servicing Transfer Agreement, the Transition Services Agreement (including all Statements of Work related thereto), the Estate Servicing Agreement and the Estate Subservicing Agreement (each as contemplated and defined in the Ocwen APA and executed by the parties).  The Ocwen APA as referred to herein shall have the meaning ascribed to it in the Sale Order.  Under the Ocwen APA, the Debtors currently have, and upon the Effective Date under the Plan, the Liquidating Trust will have, substantial contractual obligations to Ocwen, including reimbursement and indemnification obligations, which are expected to continue beyond the Administrative Claim Bar Date.

7.      Also in connection with the sale of the Debtors' servicing assets to Ocwen, Ocwen entered into various agreements with, among others, Ally including, but not limited to, a Transition Services Agreement and a certain real property lease and a sublease for office space located in Minnesota and Texas, respectively (collectively, the "**Ocwen-Ally Agreements**").

3

Under the Ocwen-Ally Agreements, Ally has continuing obligations to Ocwen that likely will extend beyond the Effective Date of the Plan.

## OBJECTION

### A. The Plan May Not Conflict With the Provisions of the Sale Order

8. The Sale Order provides that "the Debtors are . . . directed to perform their obligations under, and comply with the terms of, the Ocwen APA . . ." (*See* Sale Order at ¶ 3). The Sale Order also provides that "[n]othing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in these Chapter 11 cases shall alter, conflict with, or derogate from, the provisions of the Ocwen APA or this Order." *See* Sale Order at ¶ 28.

9. With respect to contracts entered into by the Debtors after the Petition Date, the Plan only provides:

> Counterparties to contracts and leases entered into after the Petition Date by a Debtor, including any Executory Contract or Unexpired Lease assumed by a Debtor, must File a proof of claim for an Administrative Claim against the appropriate Debtor by the Administrative Claim Bar Date or have their rights with respect to such Administrative Claims forever waived and released; provided that this provision shall not apply to any Ally Contract Claims. Contracts and unexpired leases entered into after the Petition Date by any Debtor will vest in the Liquidating Trust.

Plan at Art. V.(C). While the Plan provides that post-petition contracts vest in the Liquidating Trust, it does not specifically provide that the Liquidating Trust is obligated or required to perform any and all obligations under such post-petition contracts, including the Ocwen APA.[3]

---

[3] But note, in contrast, the Plan is explicit that "[t]he Liquidating Trust . . . shall …*perform the assumed obligations under the DOJ/AG Settlement, the Consent Order, and Order of Assessment in accordance with the terms of the Plan*." Plan at Art. VI.(B) (emphasis added). The Plan contains no such provision regarding the assumption and performance by the Liquidating Trust of obligations under post-petition contracts that are deemed to vest in the Liquidating Trust upon the Effective Date.

4

Additionally, the provision calls for the relevant contract counterparty to file an Administrative Claim for its prospective rights under the contract or "*to have [its] rights with respect to such Administrative Claims forever waived and released.*"

10. To the extent the Plan, in its current form, fails to provide for performance and satisfaction of all of the Debtors' obligations under the Ocwen APA as mandated by the Sale Order, the Plan is violative of the Sale Order. That defect is readily remedied by an express provision that the Liquidating Trust will be obligated to perform all of the Debtors' obligations under the Ocwen APA and that nothing in the Plan will modify Ocwen's rights under the Ocwen APA and the Sale Order and nothing would prevent Ocwen from enforcing those rights against the Liquidating Trust in accordance with the terms of the Ocwen APA and the Sale Order.[4]

### B. The Plan Fails to Provide Adequate Assurance that Post-Effective Date Administrative Claims Related to the Ocwen APA Will be Satisfied

11. Given that the Liquidating Trust currently is not required to perform the Debtors' obligations under the Ocwen APA following the Effective Date, the Plan as currently drafted fails to establish an adequate reserve for damages for the breach of such agreements or for the payment of administrative claims arising under the Ocwen APA.

12. Although the Plan establishes a "Liquidating Trust Administrative Reserve" to satisfy claims related to certain operating expenses and obligations of the Trust, subject to a "Liquidating Trust Budget," if the Liquidating Trust were not obligated to perform the obligations and liabilities arising under the Ocwen APA, amounts owing under such

---

[4] While Ocwen does not believe it to be the intent, the Plan contains other provisions that could be read to alter Ocwen's rights under the Ocwen APA and the Sale Order. S*ee* Plan at Art. IV.(B)(e) (concerning regulatory obligations including the Consent Order) and Plan Art. IV.(C)(5) (concerning reimbursement of RMBS Trustees fees and expenses). Any ambiguity with respect to the wording of these sections also would be resolved by a provision consistent with the Sale Order that nothing in the Plan is intended or would be construed to alter or modify any rights or obligations under the Ocwen APA or the Sale Order.

5

contracts, including those that may arise with respect to breaches thereof, would not be covered by the Liquidating Trust Administrative Reserve. *See* Plan at Art. VI.(D) (enumerating seven categories of costs and expenses for which funds in the Liquidating Trust Administrative Reserve may be used). Once again, in contrast to the Plan's silence regarding performance under vested post-petition contracts, the Plan specifically includes "the costs of performing under the DOJ/AG Settlement" as an enumerated category of costs that may share in the Liquidating Trust Administrative Reserve. *See id.*

13. Similarly, the "Administrative, Priority, Secured and Convenience Distribution Reserve" established under the Plan provides little comfort as it reserves only for administrative claims asserted as of the Effective Date and fails to reserve for claims asserted post-Effective Date but prior to the Administrative Bar Date or that would arise post-Effective Date.[5] With the Liquidating Trust having no affirmative obligation to perform obligations under the Ocwen APA in accordance with its terms, Ocwen would be required to file an administrative claim with respect to the anticipatory breach of such agreements and there would be no requirement under the Plan as currently drafted to include funds sufficient to satisfy those claims in the Administrative, Priority, Secured and Convenience Distribution Reserve.

14. To the extent the Plan fails to establish adequate reserves to ensure the performance of and payment of obligations under the Ocwen APA, which obligations would be administrative claims, it would fail to satisfy the confirmation requirement of section 1129(a)(9)

---

[5] Specifically, the Plan provides that "[t]he Administrative, Priority, Secured and Convenience Distribution Reserve shall be established on the Effective Date for the purpose of maintaining Cash from time to time necessary to satisfy (i) Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims and Junior Secured Notes Claims that are (a) Allowed as of the Effective Date but that cannot be paid on or promptly following the Effective Date, or (b) Disputed Claims as of the Effective Date but that may become Allowed after the Effective Date, and (ii) General Unsecured Convenience Claims that are Allowed or that may become Allowed on or after the Effective Date." Plan at Art VI. D.

of the Bankruptcy Code, which requires that a debtor pay all administrative creditors in full on the plan's effective date unless an administrative creditor consents to different treatment. *See* 11 U.S.C. § 1129(a)(9); *Pan Am Corp. v. Delta Air Lines*, 175 B.R. 438, 483 (S.D.N.Y. 1994) (finding that the plan proponent must prove the wherewithal to pay administrative claims on the effective date).

15. Furthermore, the Debtors' satisfaction of obligations under the Ocwen APA do not cease upon occurrence of the Administrative Claim Bar Date. The "administrative period" "extend[s] beyond an order confirming a liquidating plan to the completion of the liquidation process." *In re Scott Cable Communs.*, 227 B.R. 596, 600 (Bankr. D. Conn. 1998). Simply because a Chapter 11 plan contemplates the creation of a liquidating trust, that "does not alter the reality that the administrative period will continue beyond confirmation of the Plan." *Id*. The entity responsible for completing the liquidation process has the burden of meeting all of the obligations of the debtor. *See, e.g.*, *Holywell Corp. v. Smith*, 503 U.S. 47 (1992) (finding that trustee as assignee who liquidates the debtor's property must pay income tax attributable to corporate debtor's property). The Debtors must demonstrate the ability of the Liquidating Trust to satisfy administrative claims under the Ocwen APA as those claims arise.

16. The Plan must require the Liquidating Trust to have adequate reserves for the fulfillment of all obligations arising under the Debtors' post-petition contracts that vest therein.

### C. The Release of the Ally Released Parties is Impermissibly Broad

17. Ocwen objects to section Article IX(D) of the Plan because it ostensibly purports to release a third party, Ally, from any and all obligations in any way related to the Debtors or the Chapter 11 cases. The plain language of the release purports to insulate the Ally Released Parties from all claims that are "*related in any way to*" the Debtors and/or the Chapter

7

11 Cases including contractual obligations to Ocwen in connection with agreements entered into by Ally in connection with the Debtors' sale of the mortgage servicing assets to Ocwen. Specifically, the Plan releases the Ally Released Parties "from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, . . . , contribution, indemnification, joint liability, or otherwise, *arising from or related in any way to the Debtors*, . . . *and/or the Chapter 11 Cases* . . . . Plan at Art. IX(D) (emphasis added).

18. The Ocwen-Ally Agreements were entered into in connection with the sale of the Debtors' assets to Ocwen in their Chapter 11 Cases. Accordingly, the language of the Plan would purport to release Ally from obligations in connection with such contracts. While Ocwen again takes no issue with a third party release of Ally pursuant to the Plan, Ocwen objects to, and there is no support in the Bankruptcy Code or case law to support, the breadth of the proposed third party release. *See In re Metcalfe & Mansfield Alternative Invs*., 421 B.R. 685, 694 (Bankr. S.D.N.Y. 2010) (acknowledging that the "Second Circuit imposes significant limitations on bankruptcy courts ordering non-debtor releases and injunctions in confirmed chapter 11 plans").

19. While Ocwen does not believe this to be the intent of the Debtors, the Committee or Ally, Ocwen objects to the Plan in its current iteration based on the over-reaching language of the current third party release. Unless the third party release language is otherwise limited to protect Ocwen's rights as a contract counterparty with Ally, the Plan should not be confirmed with the Ally third party release.

20. Ocwen reserves all of its rights under the Ocwen APA and the Sale Order.

8

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, Ocwen requests that the Court deny confirmation of the Plan.

Dated:  New York, New York
        October 23, 2013

                                CLIFFORD CHANCE US LLP

                                By:  /s/ *Jennifer C. DeMarco*
                                     Jennifer C. DeMarco
                                     Adam Lesman
                                     Leah S. Edelboim
                                     31 W. 52nd Street
                                     New York, New York 10019
                                     Telephone: (212) 878-8000
                                     Facsimile: (212) 878-8375

                                *Counsel to Ocwen Loan Servicing, LLC*