UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

October 14, 2013

Debtor: RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020 (MG)

Title of objection: FIFTHIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS – BOOKS AND RECORDS

Claimants: Dennis G. Burgin & Marcene L. Burgin

Basis for amount of claim: Breach of contract

We do not believe the amount of our claim should be disallowed, and/or expunged on the basis that GMAC was guilty of a breach of contract when they changed the terms of our loan. There is nowhere in the disclosure statements of our contract that gave GMAC the right to remove our ability to make deposits, and corresponding withdrawals, into the checking account portion of this mortgage. The checking account feature of this particular loan product allowed for the lowering of the principle balance on a fluctuating basis in direct correlation to the amount of deposits into the account, thus reducing the amount of interest owed. This was a vehicle to facilitate an early payoff of the principle amount.
Section 10.B. (page 5) of the disclosure statement of the loan contract, refers to the rights of GMAC to "refuse to make any additional advances or reduce my Credit Limit" but there is no right given to GMAC to restrict my ability to use the checking account feature of the loan to facilitate lowering the principle balance with corresponding deposits.

There has never been a time during the duration on this loan when we have been in violation of any of the loan agreement including any of the points in Section 11.A. (page 6) of the disclosure statement of our contract with GMAC. Therefore, this move by GMAC to freeze our ability to make deposits against our principle balance was a breach of contract on the part of GMAC. Had we been allowed to continue making deposits to offset our principle balance over the past 6 year period it is possible we could have made major strides in reducing that principle balance, thus the basis for our claim in the amount of 350,000.00. I would like to resolve the issues regarding this mortgage in the current venue but if an agreement can not be reached, perhaps the California Attorney General's office would make a ruling.

Any response to this letter may be addressed to:
Dennis and/or Marcene Burgin
8759 Quail Valley Dr.
Redding, CA 96002
Phone: 530-223-6114
We both have full authority to reconcile, settle, or otherwise resolve this claim.
Thank you very much for your consideration,

*Dennis D Burgin*
*Marcene J. Burgin*
Dennis G. Burgin
Marcene L. Burgin

Please find supporting documents enclosed.
   1. Pages 5 and 6 of loan disclosure statement pertaining to account rights.
   2. Statement by Art Sickles – Mortgage broker who sold the original mortgage.

October 10, 2013

Dear Marcy,

I am sorry to hear of the problems you have been having in regard to your mortgage that was sold by me through Transcontinental Lending Group representing GMAC Mortgage. It appears to me after reviewing your disclosure documents that there were specific disclosures made regarding the closing of your line of credit (Paragraph 10.A and 10.B); however, I am unable to find any reference to the shutting down or elimination of your check writing ability or rights of access to that account as well as the reduction in interest expense brought about by the accrual of daily interest on the funds resting in said account.

Having said the above, I am not a licensed attorney in California or any other state, but, as a seasoned mortgage professional, that is my opinion. Further, I believe they are in default and that there is some legal question as to the enforceability of the entire mortgage much less your being due some financial consideration.

My suggestion is that you share my concerns and opinion with them in the hopes that they will offer a settlement; if not, I recommend that you pursue recourse through the California Attorney General's office in which case you may have the entire mortgage overturned due to breach of contract.

Marcy, it is good to hear from you albeit the problems you are having with this mortgage. If I can help in any way, just let me know.

Regards,


Art Sickles
111 Old Meadow Way
Palm Beach Gardens, FL 33418
561-707-2323

described above in cash or by check at or before the time I sign this Agreement, or I may request to finance some or all of such costs (excluding any down payment) by allowing you to make an advance under my Account to pay some or all of such costs.

D. To cover your costs of processing and administering my Account, and except as otherwise provided by applicable law or in this Agreement, **I AGREE TO PAY AN EARLY TERMINATION FEE IF I PAY IN FULL AND TERMINATE MY ACCOUNT WITH YOU AND ASK YOU TO SATISFY MY MORTGAGE LINE ("TERMINATION") BEFORE THE THIRTY-SIXTH (36th) MONTH AFTER THE DATE OF THIS AGREEMENT (THE "CLOSING DATE").** To the extent that my payment in full which terminates my Account exceeds 20% of the highest principal balance of my Account during the existence of my Account (the "Excess Amount"), the Early Termination Fee shall be equal to but shall not be greater than six months' advance interest on the Excess Amount. For purposes of determining the amount of advance interest payable as provided above, the Annual Percentage Rate in effect as of the date of your receipt of my Termination payment shall be applied.

The early termination fee provided for in this Section 7.C will not apply in connection with a Termination that results from the Property not being able to be occupied because it was damaged by a natural disaster for which a state of emergency is declared under the circumstances referred to in California Civil Code Section 2954.9(c), or following your exercise of your rights under Sections 11.A(3) of this Agreement.

☐ If this box is checked, the Early Termination Fee will not apply and an Early Termination Fee Waiver Addendum to the Home Owner's Line of Credit Agreement and Initial Disclosure Statement will be provided to me for my execution as of the date of this Agreement.

## 8. PROPERTY SECURITY.

To secure the payment of all advances I obtain and the performance of all promises I make in this Agreement, all co-owners and I are giving you a Deed of Trust (the "Deed of Trust") covering property located at

**8759 QUAIL VALLEY DRIVE
REDDING, CALIFORNIA 96002**

(the "Property"). The Deed of Trust is security for my current and future obligations under this Agreement. I will continue to be obligated to make payments to you under this Agreement even if the Property is damaged or destroyed and whether or not any insurance proceeds are available.

## 9. PROPERTY INSURANCE.

I agree to obtain and maintain property insurance against loss or damage to the Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Deed of Trust or otherwise. **I may obtain property insurance from any company of my choice that is acceptable to you.** If the amount of the premiums for property insurance increases at any time during the term of this Agreement, I agree to pay any such increase(s).

## 10. YOUR RIGHTS TO TEMPORARILY SUSPEND MY ADVANCES OR REDUCE MY CREDIT LIMIT.

A. You may take the actions listed in paragraph 10.B below during the period that any of the following events or conditions exist:

(1) the value of the Property declines significantly below its appraised value for the purposes of my Account;

(2) there is a material adverse change in my financial condition, and, as a result, you reasonably believe that I will not be able to make payments as agreed;

(3) I am in default of any material obligation of this Agreement;

(4) the Maximum APR set forth in paragraph 5.D above is reached;

(5) GOVERNMENT ACTION SUCH AS ENACTMENT OF A STATE USURY LAW PREVENTS YOU FROM CHARGING THE **ANNUAL PERCENTAGE RATE** PROVIDED FOR YOU IN THIS AGREEMENT;

(6) government action (such as imposition of a tax lien) impairs the priority of the lien of the Deed of Trust such that the value of the lien of the Deed of Trust is less than 120% of my Credit Limit; or

(7) you are notified by a regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 10.A above exists, you may refuse to make any additional advances or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit, and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed and I have notified you in writing, explaining how the condition(s) have been cured or have changed, and provided no new condition(s) under paragraph 10.A above exists or 11.A below has occurred.

C. Before reinstating my right to obtain advances, or restoring my Credit Limit, you may conduct or obtain credit reports, appraisals, lien searches and other evaluations as you consider appropriate. I agree to reimburse you on demand for any costs you actually incur for obtaining such information.

---

**CALIFORNIA – HELOC Agreement & Disclosure Statement**                                                                                                     11/30/2006

IDS, Inc. (800) 554-1872                                     Page 5 of 11
                                                                                                                              Borrower(s) Initials _____   _____

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making advances, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the advances for such request to be effective. If all such persons subsequently request reinstatement of the advances, you must honor such a request unless a condition listed in paragraph 10.A above exists or 11.A below has occurred.

E. If an event or condition described in paragraph 10.A above occurs which is also an event or condition described in paragraph 11.A below, your rights and remedies described under paragraph 11.B below apply and supersede your rights described in this paragraph 10.

## 11. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.

A. You may take the actions listed in paragraph 11.B below if any of the following events or conditions occur:

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Deed of Trust;

(3) I sell or transfer title to the Property without first obtaining your written permission;

(4) I fail to maintain insurance on the Property as required under this Agreement or the Deed of Trust;

(5) I act or fail to act and as a result a lien senior to the lien of the Deed of Trust is filed against the Property;

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Property is taken through eminent domain, condemnation or similar taking;

(8) A prior lienholder on the Property begins foreclosure under its security instrument;

(9) The Property is used for an illegal purpose which could subject the Property to seizure;

(10) I fail to pay taxes on the Property; or

(11) My action or inaction adversely affects the Property or your rights in the Property. Such action or inaction could include, for example:

(a) A judgment is filed against me;

(b) I commit waste or otherwise destructively use or fail to maintain the Property;

(c) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(d) I move out of the Property; or

(e) I break any promise made in this Agreement (including those set forth in paragraph 13 below) or in the Deed of Trust.

B. If an event described in paragraph 11.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate any of my rights under my Account;

(2) you may temporarily or permanently refuse to make any additional advances;

(3) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4) you may foreclose the Deed of Trust;

(5) you may reduce my Credit Limit; and

(6) you may take any other action permitted by this Agreement, by law or in equity.

C. Without limiting the foregoing, the Deed of Trust contains the following provision, at Section 6(h):

"If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law."

## 12. SALE OF PROPERTY.

Unless you otherwise agree, I will not sell, transfer ownership of, mortgage, or otherwise dispose of my interest in the Property, in whole or in part, or permit any other lien or claim senior to the Deed of Trust against the Property. If I have indicated in paragraph 13.G below that the Property is to be my principal residence, I will move in and occupy the Property within 60 days after closing. If the Property is to be used for investment purposes as indicated in paragraph 13.G below, I may lease the Property.