Hearing Date: November 15, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: November 8, 2013 at 4:00 p.m. (Prevailing Eastern Time)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO
BANKRUPTCY CODE SECTION 105(a) AND BANKRUPTCY RULE 9019
APPROVING SETTLEMENT AGREEMENT BETWEEN DEBTOR
<u>GMAC MORTGAGE, LLC AND GVC MORTGAGE, INC.</u>**

ny-1095691

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>")[1] hereby move (the "<u>Motion</u>") for entry of an order, the proposed form of which is attached hereto as **Exhibit 1**, pursuant to section 105 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), approving the settlement agreement (the "<u>Settlement Agreement</u>"), dated May 14, 2013, entered into by and between GMAC Mortgage, LLC ("<u>GMACM</u>") and GVC Mortgage, Inc. ("<u>GVC</u>" and together with GMACM, the "<u>Parties</u>"). In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Charles Laubach (the "<u>Laubach Decl</u>."), attached hereto as **Exhibit 2**. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. sections 157 and 1334. Venue is proper under 28 U.S.C. sections 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. section 157(b)(2). The statutory predicates for the relief requested herein are section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

## INTRODUCTION

2.      By this Motion, the Debtors seek approval, pursuant to Bankruptcy Code section 105 and Bankruptcy Rule 9019, of the Settlement Agreement, attached hereto as **Exhibit 3**, by and between GMACM and GVC settling and releasing certain claims for repurchase, indemnification and/or reimbursement obligations (the "<u>Repurchase Obligations</u>") held by

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on <u>Exhibit 1</u> to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions [Docket No. 6].

-2-

ny-1095691

GMACM arising under a Correspondent Agreement for Purchase and Sale of Residential Mortgage Loans (the "Purchase Agreement"), dated April 3, 2006, by and among the Parties and Ally Bank.

## BACKGROUND

**A.     The Chapter 11 Cases**

3.     On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.

4.     On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

5.     On June 20, 2012, the Court directed that an examiner be appointed (the "Examiner"), and on July 3, 2012, the Court approved Arthur J. Gonzalez as the Examiner [Docket Nos. 454, 674].  On May 13, 2013, the Examiner filed his report under seal [Docket Nos. 3677, 3697].  On June 26, 2013, the report was unsealed and made available to the public [Docket No. 4099].

6.     On July 3, 2013, the Debtors filed the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4153] and the *Disclosure Statement for the Joint Chapter 11 Plan of Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4157] (the "Disclosure Statement").  On August 23, 2013, the Court entered an order approving, *inter alia*, the Disclosure Statement, as amended [Docket No. 4809].

ny-1095691

**B.     The Purchase Agreement and the Repurchase Demands**

7.      GVC is engaged, among other things, in the business of originating, processing, underwriting, closing and selling residential mortgage loans.  On or about April 3, 2006, the Parties entered into the Purchase Agreement, pursuant to which GMACM acquired certain residential mortgage loans from GVC (collectively, the "Loans") as part of its correspondent mortgage loan operations.  Laubach Decl. ¶ 4.  GMACM subsequently sold the Loans to various third party purchasers (the "Third Party Purchasers").  *Id*.

8.      Following the sale of the Loans to the Third Party Purchasers, the Third Party Purchasers submitted repurchase demands to GMACM on account of twenty-two of the Loans (the "Repurchased Loans") in the aggregate amount of $4,121,678.54 (the "Initial Liability"), consisting of the aggregate unpaid principal balance of the Repurchased Loans.  Laubach Decl. ¶ 5.  Each of the Repurchased Loans was purchased by GMACM from GVC on or before August 20, 2008.  *Id*.  After conducting its own thorough analysis of the basis for the repurchase demands submitted by the Third Party Purchasers, GMACM agreed to repurchase the Repurchased Loans or otherwise made the end investor whole for agreed losses incurred in connection with such loans.

9.      In accordance with the terms of the Purchase Agreement, GMACM in turn demanded that GVC honor its Repurchase Obligations under the Purchase Agreement with respect to those Loans (the "Repurchase Demands"), asserting that GVC negligently misrepresented information in the mortgage loan application packages relating to the Repurchased Loans in violation of GVC's representations, warranties and covenants under the Purchase Agreement.  Laubach Decl. ¶ 6.

10.     GVC disputed the Repurchase Demands, and the Parties engaged in negotiations over the course of several years.  Laubach Decl. ¶ 7.

C.   **The Settlement Agreement**[2]

11.   Following extensive arms' length and good faith settlement discussions, GMACM and GVC entered into the Settlement Agreement, a copy of which is attached hereto as **Exhibit 3**.[3] Under the Settlement Agreement, GMACM has agreed to accept $[redacted] (the "Settlement Amount") in exchange for a mutual release of all claims related to the Loans under the Purchase Agreement, including GMACM's Repurchase Demands (the "Settlement"), without admission as to liability by GVC. *See* Settlement Agreement, ¶ 1(b).

12.   The Settlement Amount is payable as follows:

(a)   $[redacted] is to be paid on or before June 28, 2013;[4] and

(b)   thereafter, 48 payments of $[redacted] are to be paid on the 1st day of each month, beginning August 1, 2013.

*See* Settlement Agreement, ¶ 1(c).

13.   The Settlement Amount is secured by an Affidavit of Confession of Judgment, which enables GMACM to execute on the full amount of the Initial Liability without further process in the event GVC fails to make payments under the Settlement Agreement when due. *See* Settlement Agreement, ¶ 2.

14.   The Settlement Agreement provides that it is subject to approval of this Court. *See* Settlement Agreement, ¶ 14.

---

[2]   The summary of the Settlement Agreement set forth below is provided solely for the convenience of the Court and parties in interest. To the extent there is any inconsistency between this Motion and the terms of the Settlement Agreement, the Settlement Agreement shall govern.

[3]   The Settlement Agreement contains a confidentiality provision, intended to protect the respective interests of the Parties. *See* Settlement Agreement, ¶ 8. Consistent with that provision, the Debtors are also requesting by separate motion authority to file portions of the Motion and the Settlement Agreement under seal.

[4]   In accordance with the Settlement Agreement, GVC paid the initial payment of $[redacted] to GMACM on June 28, 2013, and has continued to pay the monthly payments when due, which amounts are currently being held in an escrow account pending approval of the Settlement Agreement by the Court.

## RELIEF REQUESTED

15. By this Motion, the Debtors seek entry of an order under Bankruptcy Code section 105 and Bankruptcy Rule 9019 approving the Settlement Agreement and authority for the Debtors to perform their obligations thereunder.

## BASIS FOR THE RELIEF REQUESTED

16. Bankruptcy Rule 9019(a) provides, in relevant part, that: "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise and settlement," Fed. R. Bankr. P. 9019(a), if it is in the best interests of the estate. *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). "[C]ompromises are favored in bankruptcy because they minimize the costs of litigation and further the parties' interest in expediting the administration of the bankruptcy estate." *In re 1031 Tax Group, LLC*, 2007 WL 2455176, *3 (Bankr. S.D.N.Y. Aug. 23, 2007). *See also In re Iridium Operating LLC*, 478 F.3d 452, 455 (2d Cir. 2007) ("In Chapter 11 bankruptcies, settlements . . . help clear a path for the efficient administration of the bankruptcy estate," and are therefore encouraged).

17. To approve a compromise and settlement under Bankruptcy Rule 9019(a), courts have held that the proposed compromise and settlement should be fair and equitable, reasonable and in the best interests of the debtor's estate. *See Plaza Equities LLC v. Pauker (In re Copperfield Invs.)*, 401 B.R. 87, 91 (Bankr. S.D.N.Y. 2009); *In re Worldcom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). "The settlement need not be the best that the debtor could

6

ny-1095691

have obtained. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'" *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (citations omitted). Moreover, the Bankruptcy Court should exercise its discretion to approve a settlement "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

18. In the Second Circuit, this analysis is guided by six factors: (i) the balance between the litigation's possibility of success and the settlement's future benefits; (ii) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (iii) the paramount interest of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object or affirmatively support the proposed settlement; (iv) whether other parties in interest support the settlement; (v) the competency and experience of counsel supporting the settlement; and (vi) the extent to which the settlement is the product of arms-length bargaining. *In re Iridium Operating LLC*, 478 F.3d at 462; *see also In re East 44th Realty, LLC*, 2008 WL 217103, *12 (S.D.N.Y. Jan. 23, 2008) (applying *Iridium* factors and approving settlement as within the range of reasonableness); *In re 1031 Tax Group, LLC*, 2007 WL 2455176, *3 (applying *Iridium* factors and approving settlement as fair and equitable and in the best interest of the estates).

19. In determining whether to approve a proposed settlement, a Bankruptcy Court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct

7

a 'mini-trial' to determine the merits of the underlying litigation"). "[T]he court only need be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment about the settlement." *In re Adelphia Commc'ns*, 327 B.R. at 159.

20. "When determining whether a compromise is in the best interests of the estate, the Court must 'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" *Key3Media Group, Inc. v. Pulver.com, Inc.* (*In re Key3Media Group, Inc.)*, 336 B.R. 87, 93 (Bankr. D. Del. 2005 (quoting *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996) (citing *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))). The relevant factors set forth above support a finding that the Settlement is well within the range of reasonableness and the compromises that are embodied in the Settlement Agreement are fair and equitable, in the best interests of the estate and should be approved.

21. <u>First</u>, initiating litigation with GVC would be costly and time consuming. Pursuant to Rule 1007 of the Pennsylvania Rules of Civil Procedure, GMACM and Ally Bank filed five writs of summons against GVC with respect to the Repurchase Demands in the Court of Common Pleas for Montgomery County, Pennsylvania, between November 2011 and May 2012, thereby commencing pre-complaint discovery. Laubach Decl. ¶ 8. However, to date, no complaint has been filed in connection with the Repurchase Demands. *Id*. Commencing litigation at this point would require both sides to begin formal motion practice, complete discovery and potentially conduct a trial. Years of extended negotiations between the Parties would be rendered meaningless.

22. <u>Second</u>, the Settlement includes a mechanism for ensuring collection and imposing a penalty in the event that GVC defaults. GVC has executed an Affidavit of Confession of Judgment, pursuant to which GVC waives all defenses and irrevocably authorizes GMACM to execute against any real estate or personal property of GVC without any further process in favor of GMACM in the event GVC fails to make payments as required under the Settlement Agreement.[5] *See* Settlement Agreement, ¶ 2. No such guaranty exists should the Parties be required to resort to litigation of the Repurchase Demands.

23. <u>Third</u>, the Settlement was negotiated at arms' length and is fair and reasonable. The Debtors—working with the assistance of experienced internal and external counsel—undertook a thorough review and analysis of the basis for the Repurchase Demands, as well as potential defenses that might be asserted by, and difficulties in collecting any judgment from, GVC. Laubach Decl. ¶ 9. The Debtors also believe the payment terms under the Settlement Agreement are fair and reasonable under the circumstances. Among other considerations, the Debtors took into account GVC's moderate size and restrictions on its capital structure, which are imposed by GVC's financial regulators, including the Board of Governors of the Federal Reserve System and state financial regulators for each of the states in which GVC is licensed, as well as GVC's history of fully performing under similar settlement agreements with GMACM, and its agreement to execute the Affidavit of Confession of Judgment in favor of GMACM. *Id*. Furthermore, the Debtors considered the costs that would inevitably accrue if GMACM was required to continue negotiating or initiate litigation of the Repurchase Demands. *Id*.

24. <u>Fourth</u>, the Debtors have determined that the scope of the release under the Settlement, which provides for a mutual release of all claims by each of the Parties and their

---

[5] In fact, as noted above, GVC has already commenced making settlement payments in accordance with the Settlement Agreement, which are being held in an escrow account pending approval of the Settlement Agreement by the Court.

9

ny-1095691

various affiliates and representatives related to the Loans purchased by GMACM under the Purchase Agreement, is reasonable as it brings finality to the transactions under the Purchase Agreement, all of which took place in 2008 or before. Laubach Decl. ¶ 9.

25.     *Finally*, the Debtors discussed the Settlement with counsel and financial advisors to the Creditors' Committee prior to filing this Motion. Following their review of the basis for, and terms of, the Settlement, including the review of diligence materials provided by the Debtors, counsel to the Creditors' Committee advised the Debtors that they have no objection to the Settlement.

26.     Based on their analysis of all the factors above, the Debtors have determined that the Settlement strikes a favorable balance between maximizing recoveries on account of the Initial Liability while minimizing litigation and collection risks on account of the Repurchase Demands. Laubach Decl. ¶ 10.

27.     In light of each of the above factors, the Debtors assert that the Settlement is in the best interests of their estates, and respectfully request that the Court approve the Settlement and the terms of the Settlement Agreement pursuant to Bankruptcy Rule 9019.

## NOTICE

28.     The Debtors have provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## NO PRIOR REQUEST

29.     No previous Motion for the relief sought herein has been made to this or any other Court.

## CONCLUSION

The Debtors respectfully request that the Court enter the Order, attached hereto as **Exhibit 1**, approving the Settlement Agreement and authorizing the Debtors to perform their obligations thereunder and grant such other and further relief as the Court deems just and proper.

Dated: October 24, 2013
       New York, New York

       /s/ Norman S. Rosenbaum
       Gary S. Lee
       Norman S. Rosenbaum
       Erica J. Richards
       MORRISON & FOERSTER LLP
       1290 Avenue of the Americas
       New York, New York 10104
       Telephone: (212) 468-8000
       Facsimile: (212) 468-7900

       *Counsel for the Debtors and Debtors in Possession*

ny-1095691