Wendy Alison Nora                                              Hearing Date: November 15, 2013
ACCESS LEGAL SERVICES                                          Hearing Time: 10:00 a.m.
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55419
VOICE (612) 333-4144
FAX (612) 497-1026
accesslegalservices@gmail.com

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

In re:
Residential Capital, LLC *et al.,*                    Chapter 11
               Debtors                    Case No. 12-12020 (MG)
                                                                           Administratively Consolidated

---

**MOTION TO STRIKE ORDER TO SHOW CAUSE ENTERED ON OCTOBER 9, 2013
BY JUDGE MARTIN GLENN AFTER THE OCTOBER 9, 2013 PROCEEDINGS
AT WHICH HE ALREADY REVOKED THE PRO HAC VICE ADMISSION OF THE
UNDERSIGNED AS AN UNCONSTITUTIONAL IN VIOLATION OF HER DUE
PROCESS TO BE HEARD BEFORE AN UNBIASED JUDGE AND ENTERED BY
JUDGE AFTER HE HAD ALREADY WHO HAD ALREADY BEEN DISQUALIFIED
BY HIS OWN MISCONDUCT AND AFTER HE HAD ALREADY ENTERED THE
VERBAL ORDER REVOKING THE MOVANT'S PRO HAC VICE ADMISSION
AND ALTERNATIVE RESPONSE,
TO BE HEARD ONLY BY A QUALIFIED JUDGE OF THIS COURT**
<u>(NOTICE: THIS MOTION IS NOT TO BE DETERMINED BY
JUDGE MARTIN GLENN WHO HAS DISPLAYED EXTREME BIAS AND PREJUDICE
AGAINST THE MOVANT BY THREATENING HER WITH BODILY SEIZURE AND
REMOVAL FROM THE COURT PROCEEDINGS ON OCTOBER 9, 2013 WITHOUT
PROBABLE CAUSE, REVOKED HER PRO HAC VICE ADMISSION WITHOUT NOTICE
AND OPPORTUNITY TO BE HEARD, FILED THIS SUBSEQUENT SUA SPONTE ORDER
TO SHOW CAUSE *POST FACTO* PURPORTING TO ACCORD THE OPPORTUNITY FOR
HEARING ON THE PRO HAC VICE ADMISSION AFTER THE REVOCATION THEREOF
WITHOUT CAUSE OR HEARING, ON FALSE AND FICTITIOUS GROUNDS AND UPON
A PATTERN OF CONDUCT IN THESE PROCEEDINGS WHICH HAS ESCALATED TO
THE POINT OF COMPLETE EXPOSURE OF JUDGE GLENN'S ACTUAL BIAS AGAINST
THE RIGHTS OF HOMEOWNERS TO BE HEARD IN THESE PROCEEDINGS, WHICH</u>

1

<u>RIGHTS ARE DESCRIBED BY JUDGE GLENN AS "*RIGHTS, IF ANY*"[1]</u>
**(ALL RIGHTS RESERVED)**

---

Wendy Alison Nora, hereinafter Movant/Respondent as the case may be, files this Motion to Strike the Order to Show Cause as entered in violation of her rights to procedural due process for the reasons set forth herein, and alternative Response to be heard by the Court, at such time as a qualified and unbiased judge is appointed to preside in this matter and shows the Court:

1. The undersigned holds Proofs of Claims #1 (KCC, LLC Proof of Claim #2) and KCC, LLC Proof of #440 (collectively, the Nora Proofs of Claims.)

2. Debtors are seeking to disallow Nora's Proofs of Claims on grounds not recognized under Bankruptcy Rule 3007 and not even suggested in the overly expansive, unconstitutional and void special Claims Procedures Order being applied to "Borrowers'" claims in these proceedings (Doc. 3294) entered by Judge Glenn, whose actual and extreme bias and prejudice was fully revealed on October 9, 2013.

3. The undersigned is allowed to represent, on her Claim #1, the interests of all homeowners similarly situated to her Proof of Claim #1: the use of forged and perjured documents to confiscate their homes. She has suffered an injury in fact from the Debtors' illegal conduct. She has a sufficiently close relationship to the parties injured by the illegal conduct because she is an officer of the United States Supreme Court, the Supreme Court of Wisconsin,

---

[1] See Order to Show Cause Why Pro Hac Vice Admission of Wendy Alison Nora Should Not Be Revoked (Doc. 5330) dated October 10, 2013 at page 5, ¶1 which provides that the "rights, if any," of homeowner clients, who she represented prior to the October 9, 2013 sua sponte revocation of the pro hac vice admission, should be addressed in her Response to the post facto rule nisi proceedings initiated sua sponte by Judge Glenn after he displayed extreme prejudice against this Claimant and her clients.

the Supreme Court of Minnesota, the Eighth Circuit Court of Appeals, the Seventh Circuit Court of Appeals, the Western District of Wisconsin, the Eastern District of Wisconsin, and the District of Minnesota and has consulted with homeowners throughout the nation concerning their rights in these proceedings until her pro hac vice admission was unconstitutionally revoked without notice and hearing by Judge Glenn on October 9, 2013.  She is far more qualified to assure that the rights of homeowners who have had and are having their homes confiscated through the use of forged and perjured documents through her individual action which seeks to obtain punitive damages to be placed in trust for the thousands of injured homeowners.   She has suffered the requisite "injury in fact," bears a sufficiently close relationship to the other affected homeowners as both legal counsel to some before the unconstitutional revocation of her pro hac vice admission on October 9, 2013 (which is simply more evidence of the silencing of homeowner interests in these proceedings) and the fact that punitive damages for the RICO and fraud offenses committed by the Debtors, their parents, their agents, employees and attorneys, the complicit trustees of the (empty) Real Estate Mortgage Investment (REMIC) trusts, the Debtors and their affliated entities and collaborators, all directed by AFI and Cerberus prior to the rebranding of the Debtors' parent as a bank holding company are to be calculated on the scope of the RICO enterprise, and, because it is clearly impossible for individual homeowners to protect their own interests in these proceedings.

    4. In these proceedings, the protection of homeowners' interests, other than by the Nora Proofs of Claims and adversary proceedings and counsel for the occasional individual Claimant, has been "handled" by "Special 'Borrowers' Counsel" to the Committee of Unsecured Creditors. As stated so cogently by Attorney Robert E. Brown in the Motion for Appointment of a

"Borrowers'"Committee (Doc. 1264), the interests of "borrowers" (homeowners and former homeowners) are in serious conflict with the stacking of financial institutions and insurance industry representatives appointed to the Unsecured Creditors Committee by the Office of the United States Trustee.   Properly viewed as to the reality of the injuries caused by the mortgage fraud scheme which brought Ally Financial, Inc. (AFI), formerly GMAC Financial Services and Cerberus Capital Management, Inc. (Cerberus) together as "partners" in 2006, which then arranged to receive Troubled Asset Relief Program (TARP) funds under the false pretense of the General Motors (GM) bailout in 2008, when the majority of the 17 billion dollars in TARP funds went to the mortgage side of the conglomerate (12.5 billion (mortgage unit): 5.5 billion (automotive sector), the economic loss to homeowners whose homes were confiscated by forged and perjured documents, were still resisting foreclosure fraud after the 11 USC sec. 363 Sale to Ocwen Financial, Inc. (servicing rights), Walters Investment, Inc. (servicing rights) and Berkshire Hathaway (whole loans, discounted to an average of $30,000.00 each) are equal to the investors' losses from the securities fraud side of the equation.   Yet AFI (and its partner Cerberus) have deliberately bankrupted their subsidiaries, which were created under a variety of names to conceal their relationship to GMAC and their roles in the mortgage securitization fraud scheme,[2] which Judge Glenn himself found to be a strategy by AFI to "file these Chapter 11

---

[2] See for example, the names Homecomings Financial, Inc., the GMAC subsidiary which acted in some mortgage schemes as originator of the "loan" and in others as the subservicer of the "loan;" Di-tech, another loan originator/seller of collateral; Residential Funding Company, LLC (formerly Residential Funding Corporation); Residential Capital, LLC itself, apparently a holding company subsidiary of a holding company subsidiary of what it now AFI, Executive TS Trustee Services (which acts as the substitute Trustee of Deeds of Trust in order to foreclose on collateral for unnamed interests; and Residential Asset Securities Corporation (one of the depositors to REMIC Trusts) all of which are what any first year criminal prosecutor could see are aliases created to sound as generic and, at the same time, distinctly different from the brand name "GMAC" which occasionally appears in the scheme as a

cases. . .[with the goal] to isolate its money-losing businesses and shed as much of the present and future liabilities associated with those businesses as possible." (Doc. 1921, page 5-6) The "Special Borrowers' Counsel" was appointed without notice and hearing to make it appear that the Committee of Unsecured Creditors was addressing homeowner concerns. It is crystal clear on the record of these proceedings that "Special Borrowers' Counsel" is not counsel for the interests of the homeowners at all, but exists simply to authorize the unconstitutional failures of notice to the homeowner class of injured parties. It is the "Special Borrowers' Counsel" which has "consulted" with the Debtors to approve their mass claims disallowance motions and to concur in the actions taken to disallow certain individual homeowner claims. "Special Borrowers' Counsel" knows that forged and perjured documents have been and are being used to confiscate real estate which Debtors' have claimed to own and re-sell, but has taken no steps to prevent the continuing, ongoing offenses being committed in these proceedings or to prevent the wholesale disallowance of homeowner claims.

5. At a price tag of approximately 83 million dollars charged to the Debtors' estate which is almost entirely funded by the collateral belonging to homeowners, the Examiner appointed on the Motion of Berkshire Hathaway (which has long since departed the scene with a deeply discounted "whole loan" portfolio) makes no mention in his thousands-of- pages long report of the ubiquitous facts that the homes which have been and are being confiscated by the Debtors' use of forged and perjured documents are a potential liability to their nondebtor parent, AFI. The report suggests alter ego status of the Debtors as subsidiaries of AFI and then over-intellectualizes

---

master servicer known as GMAC Mortgage, LLC or in a chain of holding companies, like GMAC-RFC Holding Company, Inc., all of which are wholly owned subsidiaries of what is now AFI and which the Debtors and AFI disingenously claim are "indirect" subsidiaries.

the application of the laws of various states where the various species of liability claims might be litigated[3] but does not once mention the liability of AFI/Cerberus to homeowners for the forgery/perjury scheme operated in the several states, including, but not limited to Florida, Georgia, Minnesota, Pennsylvania and Iowa, which will be shown to have been directed and controlled by AFI/Cerberus and from which they seek to escape with the real prize in the entire mortgage securitization fraud scheme: 12.5 billion dollars in TARP funds.   Cerberus has already shown itself adept at concealing its ownership of its bankrupt subsidiaries via the Delaware bankruptcy, In re: Aegis Mortgage Corporation, et al. Case No. 07-11119-BLS in which it walked away from its subsidiaries' bankruptcy with a large payment to another of its subsidiaries, Madeleine, LLC, in a largely unpublicized coup.[4]

   6. "Special Borrowers' Counsel" functions as an extension of the Debtors and stands in to make it appear that the homeowners are receiving due process before their rights are predictably ignored and the stripped away by a judge who entered an Order to Show Cause against the undersigned referring to her clients' rights as "rights, if any."   The homeowners have been completely unrepresented as a class of claimants in these bankruptcy proceedings.   That it is impossible for members of the class of homeowner claimants to represent their own interests in these proceedings was acknowledged by Judge Glenn for which he approved the appointment of "Special 'Borrowers' Counsel" to pretend to protect the rights of homeowners and former homeowners and which "Borrowers'" Special Counsel have wholly failed to do.

---

[3] The undersigned does appreciate the analysis of complex conflicts of law issues and read the entire report.

[4] http://www.housingwire.com/articles/private-equity-public-exit-aegis-mortgage-files-bankruptcy

    7. In <u>Powers v. Ohio</u>, 499 U.S. 400, 410, the United States Supreme Court stated:

. . .

We must consider whether a criminal defendant has standing to raise the equal protection rights of a juror excluded from service in violation of these principles. In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties. <u>Department of Labor v. Triplett</u>, 494 U.S. 715, 720, 110 S.Ct. 1428, ----, 108 L.Ed.2d 701 (1990); <u>Singleton v. Wulff</u>, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). This fundamental restriction on our authority admits of certain, limited exceptions. We have recognized the right of litigants to bring actions on behalf of [411] third parties, provided three important criteria are satisfied: The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute, id., at 112, 96 S.Ct., at 2873; the litigant must have a close relation to the third party, id., at 113-114, 96 S.Ct., at 2873-2874; and there must exist some hindrance to the third party's ability to protect his or her own interests. Id., at 115-116, 96 S.Ct., at 2874-2875. See also <u>Craig v. Boren</u>, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). These criteria have been satisfied in cases where we have permitted criminal defendants to challenge their convictions by raising the rights of third parties. See, e.g., <u>Eisenstadt v. Baird</u>, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); <u>Griswold v. Connecticut</u>, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); see also <u>McGowan v. Maryland</u>, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). By similar reasoning, we have permitted litigants to raise third-party rights in order to prevent possible future prosecution. See, e.g., <u>Doe v. Bolton</u>, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

    8. In <u>Singleton v. Wulff</u>, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), the Supreme Court allowed doctors to represent their patients in litigation where there was an obstacle preventing the patients from asserting their own rights, in that case, embarrassment. The dissent in *Singleton* would not go as far as the majority and required a higher standard for the proof that there is an obstacle to the homeowners' representation of their own rights bordering on impossibility.

    9. This record of these proceedings clearly demonstrates the impossibility of the homeowners' defending their own rights. The undersigned incorporates by reference the Motion for Appointment of a "Borrowers'" Committee dated August 24, 2012, (Doc. 1264) in its entirety

as if fully set forth herein.  She incorporates her joinder in the Motion for Appointment of a Borrowers' Committee as if fully set forth herein.  She incorporates by reference Judge Glenn's Orders allowing the continuing foreclosure of homes under the Special Servicing Order (Doc. 774) in which the Debtors have been permitted to use the automatic stay as a sword and a shield against homeowners, Judge Glenn's denial of the Motion for Appointment of a "Borrowers'" Committee (Doc.1921), Judge Glenn's Order creating special Claims Procedures (Doc. 3294) as evidence of impossibility of the homeowners representing their own interests in these proceedings.

    10.  As detailed evidence of impossibility of the homeowners representing themselves individually in these proceedings, the undersigned refers to Judge Glenn's numerous Orders denying relief from the automatic stay to allow homeowners to seek damages outside of this Court by bringing a claim which has far less potential value to the homeowners' than their right to offset their damages against the debt claim on which the foreclosures are proceeding.   Judge Glenn committed a massive error when he declared that foreclosures were *in rem* proceedings in addressing the Motion to Lift the Automatic Stay of Kenneth Taggart on August 14, 2012.  He later then threatened Kenneth Taggart with frivolous claims sanctions for Mr. Taggart's repeated efforts to obtain relief from automatic stay and for attempting to call to the attention of the courts of this nation the injustice of the Debtors' court-sanctioned use of the automatic stay as a sword and a shield.  He denied Corla Jackson an adjournment on her Motion the Lift the Automatic Stay pretending to require arcane language which Ms. Jackson purportedly did not use when anyone hearing Ms. Jackson's choice of words would know what she was trying to say and then denied her Motion.   He denied the Motions of Nora, Paul N. Papas II and Ray Elliott when they sought

to call the frauds being committed upon homeowners throughout the nation and again calling the "sword and shield" issue to his attention at the hearing on the Final Supplemental Servicing Order by denying the Motion on the basis that the Debtors had filed their Schedules and Statements of Financial Affairs, which was part of the initial Objection filed on June 29, 2012 (Doc. 546) but, upon the filing of Debtors' Schedules and Statements of Financial Affairs, the Movant herein filed a Reply to the Debtors' Response (Doc. 698). In their Response on July 6, 2012, Debtors' contended that they had filed their Schedules and Statements on June 30, 2012 and the Objection was moot. Movant's Reply (Doc. 707), in which Paul N. Papas II and Ray Elliott joined and sought to have Movant argue that the Debtors Schedules and Statement of Financial Affairs provided extensive evidence of the Debtors racketeering enterprise. The Debtors misrepresented to Movant's local counsel that the Objection would be heard at the end of the calendar when they were advised that Movant might be temporarily conflicted that day by another court proceeding but would be available within a very short period of time if she was not immediately available. Movant's Objection[5] was actually called at the 54 minute mark of the July 10, 2012 proceedings and Debtors made no mention of the arrangements to put the Movant's Objection to the end of the calendar. It is clear that Judge Glenn did not read the Movant's Reply because he denied the Objection on the basis that the Debtors' had filed their Schedules and Statements of Financial Affairs. (Transcript of the July 10, 2012 proceedings.)

    11. Movant sought reconsideration (D0c. 916) of the Final Supplemental Servicing Order

---

[5] Paul N. Papas II and Ray Elliott were to be represented by Movant for purposes of objecting to the critical motion which, if granted, would permit the Debtors' to use forged and perjured documents (their racketeering business plan) to continue to foreclose on properties in which Papas and Elliott were litigation parties.

(Doc. 774) which was entered without Movant and her clients being heard. Judge Glenn stated in open court on August 14, 2012, that he would take care the motion himself and proceeded to supply a standard of complexity for obtaining relief from an order entered upon misrepresentation of an adverse party as to the time of the hearing, in the decision entered the following day in which he called the motion for reconsideration "frivolous." (Doc. 1159). That order denying reconsideration of the July 13, 2012 Final Supplemental Servicing Order (Doc. 774) is pending review on appeal by the United States District Court for the Southern District of New York as Case No. 12-cv-7831. It should have been clear when Judge Glenn entered his August 15, 2012 Order calling a Motion for Reconsideration based upon misrepresentation of the Debtors to her local counsel by which she sought relief so that she and her clients could be heard "frivolous" that Judge Glenn did not have a working knowledge the concept of due process. How little he understands due process would not be revealed until the embarrassing explosion on October 9, 2013.

12. The Order to Show Cause must be stricken because:

a. It was entered after Judge Glenn had already revoked the Movant's pro hac vice admission and falsely purports to provide due process after the violation of Movant's rights and the rights of her clients affected by the verbal order of October 9, 2013: (1) as to Paul N. Papas II, the revocation of the Movant's pro hac vice admission deprived Mr. Papas of the attorney who was representing him in the preparation of the appeal to the United States District Court for the Southern District of New York on the very deadline for his requested extension of time to file the Statement of Issues and Designation of Record on appeal; (2) as to Caren Wilson, the revocation of the Movant's pro hac vice deprived Ms. Wilson of her counsel just as it was necessary for

counsel to advise and assist her in voting on the Chapter 11 Plan for which she did not receive a ballot[6] and she was unable to obtain representation on her Objection to the Confirmation of the Plan, and could only join in the Objection filed by the Movant, pro se;[7] (3) Jan Ibrahim (Claim #997) was defaulted for failure to appear after the Movant sought to appear on his behalf and had her pro hac vice admission revoked for failure to appear when this Movant was then and there prepared and authorized to represent him and is now required to perfect his appeal to the United States District Court for the Southern District of New York pro se and by mail; (4) Shane Haffey has been deprived of his co-counsel; (5) Melvin and Suzanne Simonovich have been deprived of counsel; (6) Michael Harkey has been deprived of counsel; (7) other clients and prospective clients who have sought the Movant's advice could not be advised at this critical juncture: Objections to the Confirmation of Plan were due on October 21, 2013 and the votes to accept or reject the Chapter 11 Plan were due the same day–twelve days after the unconstitutional revocation of the Movant's pro hac vice admission on October 9, 2013.   There is nothing for the Movant to show cause for or about.  Her pro hac vice admission has been revoked and unless and until she moves for its reinstatement, the Court has no jurisdiction over her to be exercised by Order to Show Cause.

    b.  Movant reserves her right to produce text from the Transcript of the proceedings on

---

[6] Mr. Papas had a similar problem.  He was unable to obtain Movant's advice as to what category his claims were in so that he could fill out his ballot correctly and was unable to complete the ballot, losing his right to vote.

[7] This was also true of Mr. Papas and Richard Rode, who sought to retain the Movant for representation in these proceedings and was told that her pro hac vice admission had been revoked and he would have to proceed pro se. Wilson, Papas and Rode joined in the Movant's Objection to Confirmation but if she could have represented them, their specific objections tailored to their own rights in these proceedings could have been prepared.

October 9, 2013, which she just obtained today, in support of this Motion, at such time as a qualified judge of this Court is provided to hear it.

    c. The Order to Show Cause is not only extrajurisdictional and void as set forth in 12.a. above, but it violates the Movant's rights to procedural due process by purporting to provide her with "process" after it was due and not provided. The Order to Show Cause is unconstitutional and void.

    13. The Movant incorporates by reference as if fully set forth herein, the due process violations detailed in her Motion to Disqualify Judge Glenn, her Response to the Debtors' Objection to her Proofs of Claim, her Objection to the Confirmation of Plan, and the Joinders of Papas, Wilson and Rode.

    14. In the event that a qualified judge sets aside the revocation of the Respondent's pro hac vice admission (despite all the damage that revocation has done to innocent parties) the Respondent has already shown that her pro hac vice admission was perfectly proper under the Local Rules of this Court, which do not require that a pro hac vice admission name any specific client for whom the attorney will appear. In this case, it was necessary and remains necessary, that an attorney, either admitted generally to practice before this Court, or, failing that, one appearing pro hac vice be able to advise homeowners and assist them in these proceedings. Special "Borrowers'" Counsel is not doing so.

    16. The Respondent never claimed to be counsel for a class certified under Rule 23 of the Federal Rules of Civil Procedure (FRCP) in <u>Nora v. Residential Funding Company, et al.</u>, Case No. 10-cv-748 in the United States District Court for the Western District of Wisconsin, now on appeal to the United States Court of Appeals for the Seventh Circuit as Appeal No. 13-1660. She

cannot be both lead plaintiff and class counsel. She never sought class certification. Rather, she seeks to prove punitive damages for the forgery/perjury/wire fraud/mail fraud/identity theft racketeering scheme in which Ally Financial, Inc. (AFI), Cerberus, their subsidiaries, these Debtors, AFI/Cereberus affiliates, employees, agents and independent contractors have designed and implemented on behalf of all homeowners and former homeowners' similarly situated in the Nora v. Residential Funding Company, et al. action.

17. Respondent correctly used the word "class" in applying for pro hac vice admission in these proceedings. Homeowners and former homeowners are a "class" of interested parties in these proceedings. She sought and obtained pro hac vice admission to represent members of that "class" before this Court. The Debtors' call this "class" the "Class of Borrowers."

18. The Order to Show Cause abandoned the charge that the Response filed on behalf of Paul N. Papas II which Respondent filed and argued on October 9, 2013, leaving the Order to Show Cause with a single allegation that the Motion for Reconsideration discussed at paragraph 11 was "frivolous." Since that finding is on appeal, and is, in fact and in law, wholly unsupported, Respondent need not address it further except in the proper appellate proceedings now pending.

WHEREFORE, the Movant demands that the Order to Show Cause be stricken as extrajurisdictional and void and unconstitutional and void and will respond only to a qualified judge of this Court, Judge Glenn having disqualified himself by obvious extreme bias and prejudice against Movant/Respondent.

Dated at Madison, Wisconsin this 24th day of October, 2013.

*/s/ Wendy Alison Nora*
Wendy Alison Nora
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone (612) 333-4144
Facsimile (608) 497-1026
accesslegalservices@gmail.com

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY OF
WENDY ALISON NORA, IN HER OWN NAME AND RIGHT**

Wendy Alison Nora declares under penalty of perjury, pursuant to 28 USC sec. 1746, that the facts set forth in the foregoing motion are true and correct, to the best of her knowledge, information and belief.

*/s/ Wendy Alison Nora*
Wendy Alison Nora

**UNSWORN DECLARATION OF SERVICE**

Wendy Alison Nora declares, under penalty of perjury, that she filed the above-captioned document with the United States Bankruptcy Court for the Southern District of New York on October 24, 2013 by CM/ECF and thereby served the same on all parties capable of service thereby.

*/s/ Wendy Alison Nora*
Wendy Alison Nora