

O C W E N



Rec'd 4/9/13

*Ocwen Loan Servicing, LLC*
*PO Box 780*
*Waterloo IA 50704-0780*
**HELPING HOMEOWNERS IS WHAT WE DO!** ™
**OCWEN.MORTGAGEBANKSITE.COM**

April 3, 2013

Perry Goerner
12 Wantage School Road
Sussex NJ 07461

RE:    Account Number        7473329357
       Property Address      12 Wantage School Road
                             Sussex NJ 07461

Dear Perry Goerner:

This letter is in response to your inquiries dated March 11, 2013 and March 25, 2013, received in our office March 14, 2013 and March 27, 2013, regarding account status. This loan was approved for foreclosure while serviced by GMAC Mortgage, LLC (GMACM). As a result of the Chapter 11 ResCap bankruptcy filing, certain assets of GMACM were sold to Ocwen Loan Servicing, effective February 16, 2013. Ocwen Loan Servicing's response is based upon the available account records acquired from GMACM.

According to those records, foreclosure proceedings were initiated on the above-referenced property on January 11, 2011, as the account was over 60 days delinquent. Please contact our foreclosure attorney or trustee, Phelan Hallinan & Diamond PC, at 1-856-813-5500, to discuss reinstatement options.

The servicing-related documents, Note, Mortgage/Deed of Trust, Application, HUD-1 and payment history, are enclosed. All other requests for documents either do not pertain to the servicing of the account or are documents we are not required to provide under applicable state and federal law.

If you have any further questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

JL

Ocwen Loan Servicing, LLC is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. However, if the debt is part of an active bankruptcy case or if your personal liability on the loan has been discharged through a prior bankruptcy court issued Order of Discharge, this communication is not intended as and does not constitute an attempt to collect a debt and is provided solely for information purposes.

Return To:

Homecomings Financial
One Meridian Crossing, Ste. 100
Minneapolis, MN 55423
Loan Number: 047-332935-7

Prepared By:
Homecomings Financial
9 Sylvan Way, Suite 310
Parsippany,   NJ 07054

A CERTIFIED TRUE COPY
OF THE ORIGINAL DOCUMENT

BY_____

[Space Above This Line For Recording Data]

# MORTGAGE

MIN 100062604733293577

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   MARCH 30TH,  2007
together with all Riders to this document.
(B) "Borrower" is
PERRY GOERNER

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3031 1/01
MFNJ7770 (09/2006) / 047-332935-7
VMP®  -6A(NJ) (0512)
Page 1 of 15                                      Initials: 
     VMP Mortgage Solutions, Inc.

(D) "Lender" is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)
Lender is a  LIMITED LIABILITY COMPANY
organized and existing under the laws of  DELAWARE
Lender's address is  9 SYLVAN WAY, SUITE 100
PARSIPPANY, NJ 07054

(E) "Note" means the promissory note signed by Borrower and dated    MARCH 30TH, 2007
The Note states that Borrower owes Lender   THREE HUNDRED TWENTY TWO THOUSAND FIVE HUNDRED AND NO/100                                                                                          Dollars
(U.S. $  322,500.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   APRIL 1ST, 2037 .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials: _____

VMP® -6A(NJ) (0512)                          Page 2 of 15                          Form 3031 1/01
MFNJ7770 (09/2006) / 047-332935-7

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the COUNTY                                     of      SUSSEX                                     :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

Legal description attached hereto and made a part hereof

Property Account Number: BLOCK: 43 LOT: 7.18                    which currently has the address of

                                                                                [Street]
12 WANTAGE SCHOOL ROAD
SUSSEX                                          [City], New Jersey    07461        [Zip Code]
("Property Address"):

       TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
       BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
       THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials:

VMP -6A(NJ) (0812)                    Page 3 of 16                    Form 3021 1/01
MFNJ7770 (09/2006) / 047-332935-7

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _____

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



-6A(NJ) (0512)

MFNJ7770 (09/2006) / 047-332935-7

Page 7 of 15

Form 3031 1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

Form 3031 1/01

-6A(NJ) (0512)
MFNJ7770 (09/2006) / 047-332935-7

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

Initials: _____

Page 11 of 15

Form 3031 1/01

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

12-12020-mg    Doc 5514-7    Filed 10/23/13    Entered 10/25/13 15:50:27    Exhibit
Letter from Ocwen Loan Servicing LLC    Pg 14 of 36

14

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    _____ (Seal)
                                                                           -Borrower

                                          PERRY GOERNER

_____    _____ (Seal)
                                                                           -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                                          -Borrower

STATE OF NEW JERSEY,

County ss:

2007, before me, the subscriber,

On this 30th day of March

personally appeared    PERRY GOERNER

who, I am satisfied,

is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

Notary Public

CRAIG P. NAZZARO
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES JUNE 3, 2010

Initials

Form 3031 1/01

Page 15 of 15

-6A(NJ) (0512)
MFNJ7770 (09/2006) / 047-332935-7

# NOTE

MARCH 30TH, 2007                    GARDEN CITY                         NEW YORK
   [Date]                              [City]                              [State]

12 WANTAGE SCHOOL ROAD, SUSSEX, NJ 07461
                                [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   322,500.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   7.5000   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST   day of each month beginning on   MAY 1ST, 2007   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   APRIL 1ST, 2037   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   9 SYLVAN WAY, SUITE 100, PARSIPPANY, NJ 07054   or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   2,254.97   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01

Wolters Kluwer Financial Services
VMP ®-5N (0207).01                           MFCD6054 (08/2006) / 047-332835-7
Page 1 of 3                    Initials: 

Identifier: 7473329367

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. "Presentment" means the right to require the Note Holder to demand payment of amounts due.

Form 3200 1/01

Initials: _____

VMP®-5N (0207).01
MFCD6054 (09/2008) / 047-3329367

Identifier:7473325357

12-12020-mg    Doc 5514-7    Filed 10/23/13    Entered 10/25/13 15:50:27    Exhibit
Letter from Ocwen Loan Servicing LLC    Pg 19 of 36

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
                                -Borrower
PERRY GOERNER

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Without Recourse
Pay to the Order of

Matilda Steal-Johnson
Assistant Secretary
Homecomings Financial, LLC
A D   ware Corporation

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

[Sign Original Only]

Form 3200 1/01

VMP ®-5N (0207).01
MFCD6664 (09/2006) / 047-332936-7

# Name Affidavit

PERRY GOERNER
Borrower

MARCH 30, 2007
Date

12 WANTAGE SCHOOL ROAD

SUSSEX, NJ 07461
Property Address

047-332935-7
Loan Number

BEFORE ME, the undersigned authority, a Notary Public, in and for said jurisdiction, on this
day personally appeared PERRY GOERNER
who after being by me first duly sworn, upon his/her oath does depose and say that:

ALIAS 1 PERRY E. GOERNER       ALIAS 2 PERRY EUGENE GOERNER
ALIAS 3                          ALIAS 4
ALIAS 5                          ALIAS 6
ALIAS 7                          ALIAS 8
ALIAS 9                          ALIAS 10
ALIAS 11                         ALIAS 12

as the name(s) signed in connection with the purchase of property known as:
12 WANTAGE SCHOOL ROAD, SUSSEX, NJ 07461
is/are one and the same person as PERRY GOERNER

PERRY GOERNER                                hereby certifies that the signature below is
his/her true and correct signature.

Borrower PERRY GOERNER

Subscribed and sworn to before me this 30th day of MARCH
2007, in the County of _____ State of _____

Notary Public

My Commission expires 6/3/10

CRAIG P. NAZZARO
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES JUNE 3, 2010

047-332935-7

MFCD8319-01/2000

## A. Settlement Statement

| | | | U.S. Department of Housing and Urban Development |
| --- | --- | --- | --- |
| | | | OMB Approval No. 2502-0265 (expires 9/30/2006) |

**B. Type of Loan**

| 1. ☐FHA | 2. ☐FmHA | 3. ☐Conv. Unins. | 6. File Number 07-4034 | 7. Loan Number | 8. Mortgage Insurance Case Number |
| --- | --- | --- | --- | --- | --- |
| 4. ☐VA | 5. ☐Conv. Ins. | | | | |

C. Note:

**D. NAME OF BORROWER**   Petry Goerner
ADDRESS:   12 Wantage School Road, Sussex

**E. NAME OF SELLER**   N/A
ADDRESS:

**F. NAME OF LENDER**   Homecomings Financial Network, LLC
ADDRESS:   9 Sylvan Way, Suite 310, Parsippany, NJ 07054

**G. PROPERTY ADDRESS:**   12 Wantage School Road, Sussex, NJ 07461
Borough of Sussex

**H. SETTLEMENT AGENT:**   Crescent Lake Settlement Services LLC, Telephone: 516-222-2017 Fax: 516-222-2015
PLACE OF SETTLEMENT:   666 Stewart Avenue, Suite 505, Garden City, NY 11530

**I. SETTLEMENT DATE:**

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
| --- | --- | --- | --- |
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 8,149.44 | 403. | |
| 104. Payoff of First Mortgage Loan | 176,394.14 | 404. | |
| Washington Mutual | | | |
| 105. Payoff of Second Mortgage Loan | 48,310.08 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 232,852.66 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans | 322,500.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 322,500.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 232,852.66 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 322,500.00 | 602. Less reduction amount due seller (line 520) | |
| | | | |
| **303. CASH TO BORROWER** | 89,647.34 | **603. CASH TO SELLER** | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT. The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER, you are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.

You are required by law to provide the settlement agent (Fed. Tax ID No. _____) with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.

TIN: _____   SELLER(S) SIGNATURE(S): _____
SELLER(S) NEW MAILING ADDRESS: _____
SELLER(S) PHONE NUMBER: _____   BY _____

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

File Number: 07-4804

Title Order: Settlement System   Printed 03/07/2007 at 16:20 CFN

PAGE 2

## SETTLEMENT STATEMENT

| L. SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $  % | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $         to | | | |
| 702. $         to | | | |
| 703. Commission paid at Settlement | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee         % | | | |
| 802. Loan Discount         % | (P.O.C.) 275.00 Buyer | | |
| 803. Appraisal Fee   to Kensington Financial Services, LLC | | | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | 450.00 | |
| 806. Mortgage Application Fee   to Kensington Financial Services, LLC | LR | 865.00 | |
| 807. Commitment Fee   to Homecomings Financial Network, LLC | | 2,821.89 | |
| 808. Broker Fee   to Kensington Financial Services, LLC | | | |
| 809. Flood Cert Fee   to First American Flood Data Service | (P.O.C.) 6.00 Buyer | | |
| 810. Tax Service Fee   to First American Tax Vendor | (P.O.C.) 69.00 Buyer | | |
| 811. Broker Fee on HE to Broker   to Kensington Financial Services, LLC | $3,096.85 POC by Lender | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | -196.90 | |
| 901. Interest From  04/04/2007 to  04/01/2007  @$         /day         Days | | | |
| 902. Mortgage Insurance Premium for         to | | | |
| 903. Hazard Insurance Premium for         to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | LR | 504.00 | |
| 1001. Hazard Insurance         mo.@$   59.00 /mo | | | |
| 1002. Mortgage Insurance         mo.@$         /mo | | | |
| 1003. City Property Tax         mo.@$   489.09 /mo | LR | 988.18 | |
| 1004. County Property Tax   2 mo.@$         /mo | | | |
| 1005. Annual Assessments         mo.@$         /mo | LR | -811.69 | 0.00 |
| 1006. Aggregate Analysis Adjustment   to Homecomings Financial Network, LLC | | | |
| **1100. TITLE CHARGES** | | 376.00 | |
| 1101. Settlement or closing fee   to Crescent Lake Settlement Services LLC | | | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title insurance binder | | | |
| 1105. Document Preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's fees | | 1,347.00 | |
| (includes above Items No: | ) | | |
| 1108. Title Insurance   to Fidelity National Title Insurance Company | | | |
| (includes above Items No: | ) | | |
| 1109. Lender's Policy   322,500.00  - 1,602.00 | | | |
| 1110. Owner's Policy | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | 300.00 | |
| 1201. Recording Fees Deed $         : Mortgage $ 225.00   : Release $ 75.00 | | | |
| 1202. Realty Transfer Fee   Deed $         : Mortgage $ | | | |
| 1203. Deed $         : Mortgage $         : Release $ | | | |
| 1204.   Deed $         : Mortgage $ | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | 1,497.27 | |
| 1303. 2nd Quarter   to Wanatage Township | | | |
| **1400. TOTAL SETTLEMENT CHARGES**   (enter on line 103, Section J and 502, Section K) | | 8,140.44 | |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Tony Cooper

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

SETTLEMENT AGENT         DATE

MAR. 30. 2007 10:25AM    201 81 85658    KENSINGTON    NO. 8425   P. 8/32/48

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, or the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____    Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA      ☑ Conventional   ☐ Other (explain):  ☐ FHA     ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|

| Amount $ 322,500 | Interest Rate 7.500 % | No. of Months 380360 | Amortization Type: ☑ Fixed Rate  ☐ Other (explain): ☐ GPM  ☐ ARM (type): |
|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, & ZIP)   County: Sussex    No. of Units 1
12 Wantage School Road, Sussex, NJ 07461

Legal Description of Subject Property (attach description if necessary)   Year Built 1982

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☑ Refinance  ☐ Construction-Permanent  ☐ Other (explain): | Property will be: ☑ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 1982 | Original Cost $ | Amount Existing Liens $ 100,000 | Purpose of Refinance Cash-Out/Other | Describe Improvements  ☐ made  ☐ to be made  Cost: $ |
|---|---|---|---|---|

Title will be held in what Name(s)   Perry Goerner    Manner in which Title will be held Single man

Estate will be held in: ☑ Fee Simple  ☐ Leasehold (show expiration date)

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| Perry Goerner | |

| Social Security Number 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 | Home Phone (incl. area code) 973-875-5764 | DOB (mm/dd/yyyy) 09/24/1952 | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☑ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no.   ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☑ Own  ☐ Rent  14  No. Yrs. | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|
| 12 Wantage School Road  Sussex, NJ 07461 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|

Borrower _____    Co-Borrower _____    Freddie Mac Form 65  07/03

Initial / Final 1003

Identifier:7473329357

MAR. 30. 2007 10:26AM                KENSINGTON                        NO. 8425    P. 9
03/28/2007  12:13    2818186869                                                   PAGE  03/40

| Name & Address of Employer | □ Self Employed | Yrs. on this job | Name & Address of Employer | □ Self Employed | Yrs. on this job |
|---|---|---|---|---|---|
| | | Yrs. employed in this line of work/profession | | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | □ Self Employed | Dates (from-to) | Name & Address of Employer | □ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | □ Self Employed | Dates (from-to) | Name & Address of Employer | □ Self Employed | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | □ Self Employed | Dates (from-to) | Name & Address of Employer | □ Self Employed | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | □ Self Employed | Dates (from-to) | Name & Address of Employer | □ Self Employed | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | $ | $ |
| Overtime | | | | First Mortgage (P&I) | | 2,254.97 |
| Bonuses | | | | Other Financing (P&I) | | 56.00 |
| Commissions | | | | Hazard Insurance | | 500.00 |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income" below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ | $ 2,810.97 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| Describe Other Income | | Monthly Amount |
|---|---|---|
| B/C | | $ |

Fannie Mae Form 1003   07/05                       Page 2 of 5                   Freddie Mac Form 65   07/05
CALYX Form Loanapp2.frm 6/05                                                     Borrower _____
                                                                                Co-Borrower _____

MAR. 30. 2007 10:26AM    2018165858    KENSINGTON    NO. 8425    PAGE 04/40

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to PAY | Unpaid Balance |
|---|---|---|---|---|
| **Description** | $ | | | |
| Cash deposit toward purchase held by: | | | $ Payment/Months | $ |
| List checking and savings accounts below | | Name and address of Company | | |
| Name and address of Bank, S&L, or Credit Union | | ASC 2468 NEW HORIZON WAY FREDERICK, MD 21705 | | |
| | | | * (1,845) | 178,394 |
| Acct. no. | $ | Acct. no. 1001208231010 | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company WACHOVIA PO BOX 3117 WINSTON SALEM, NC 27102 | | |
| | | | * (281) | 45,310 |
| Acct. no. | $ | Acct. no. 4300642114320 | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company MBNA CARD/GEMB PO BOX 981430 EL PASO, TX 79998 | | |
| | | | 135 | 2,703 |
| Acct. no. | $ | Acct. no. 603482381601 | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) | $ | Name and address of Company WAASSOCIATES 1479 ROUTE 23 SOUTH WAYNE, NJ 07470 | | |
| | | | | 978 |
| | | Acct. no. 258050 | $ Payment/Months | |
| Life insurance net cash value | $ | Name and address of Company | | |
| Face amount $ | | | | |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 450,000 | Acct. no. | $ Payment/Months | |
| Vested interest in retirement fund | $ | Name and address of Company | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | $ | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 135 | |
| Total Assets a. | $ 450,000 | | $ 222,218 Total Liabilities b. | $ 227,785 |

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 12 Wantage School Rd Sussex, NJ 07461 | SFR | $ 450,000 | $ 218,818 | $ | $ 1,647 | $ 480 | $ |
| Totals | | $ 450,000 | $ 218,818 | $ | $ 1,647 | $ 480 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

Borrower _____    Co-Borrower _____

Fannie Mae Form 1003   07/05
CALYX Form Loanapp3.frm 04/05

Page 3 of 5

Freddie Mac Form 65   07/05

Identifier:7473329357

Doc Type:BRRP

NO. 8425    P. 12

MAR. 30. 2007 10:27AM                                KENSINGTON
03/29/2007  12:19    2010186858

| | | | Agency Case Number: |
|---|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: Perry Goerner | | Lender Case Number: |
| | Co-Borrower: | | |

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | $ Payt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X | Date | Co-Borrower's Signature: X | Date |
|---|---|---|---|

Freddie Mac Form 65    07/05

Fannie Mae Form 1003    07/05
CALYX Form 1003.LoanSoftLim.frm

Page 5 of 5

MAR. 30. 2007 10:26AM    KENSINGTON

| | | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|
| | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| a. Purchase price | $ | a. Are there any outstanding judgments against you? | | ☑ | | ☑ |
| b. Alterations, improvements, repairs | | b. Have you been declared bankrupt within the past 7 years? | | ☑ | | ☑ |
| c. Land (if acquired separately) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | ☑ | | ☑ |
| d. Refinance (incl. debts to be paid off) | 224,704.00 | | | | | |
| e. Estimated prepaid items | 2,962.01 | d. Are you a party to a lawsuit? | | ☑ | | ☑ |
| f. Estimated closing costs | 7,523.15 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | ☑ | | ☑ |
| g. PMI, MIP, Funding Fee | | | | | | |
| h. Discount (if Borrower will pay) | | | | | | |
| i. Total costs (add items a through h) | 235,289.16 | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | ☑ | | ☑ |
| j. Subordinate financing | | | | | | |
| k. Borrower's closing costs paid by Seller | | g. Are you obligated to pay alimony, child support, or separate maintenance? | | ☑ | | ☑ |
| l. Other Credits (explain) | | h. Is any part of the down payment borrowed? | | ☑ | | ☑ |
| | | i. Are you a co-maker or endorser on a note? | | ☑ | | ☑ |
| | | j. Are you a U. S. citizen? | ☑ | | | ☑ |
| | | k. Are you a permanent resident alien? | | ☑ | | ☑ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 322,500.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | | | ☑ |
| n. PMI, MIP, Funding Fee financed | | m. Have you had an ownership interest in a property in the last three years? | ☑ | | | ☑ |
| o. Loan amount (add m & n) | 322,500.00 | (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | | PR | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -97,210.84 | (2) How did you hold title to the home—solely by yourself (S), or jointly with your spouse (SP), or jointly with another person (O)? | | S | | |

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 3/30/07 | X | |

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | | CO-BORROWER | ☐ I do not wish to furnish this information | |
|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native | ☐ Asian ☐ Black or African American | Race: | ☐ American Indian or Alaska Native | ☐ Asian ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | ☐ White | | ☐ Native Hawaiian or Other Pacific Islander | ☐ White |
| Sex: | ☐ Female ☑ Male | | Sex: | ☐ Female ☐ Male | |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Jay McCrindiak | Kensington Financial Services, LLC |
| ☐ Face-to-face interview | Interviewer's Signature    Date  3/30/07 | 630 E Crescent Avenue |
| ☐ Mail | | Ramsey, NJ 07446 |
| ☑ Telephone | Interviewer's Phone Number (incl. area code) | (P) 800-420-5551 |
| ☐ Internet | 866-420-5551 | (F) 866-515-5735 |

Fannie Mae Form 1003    07/05    Page 4 of 5    Freddie Mac Form 65    07/05
CALYX Form Loanapp4.frm 09/05

A. **Settlement Statement**

U.S. Department of Housing and Urban Development
OMB Approval No. 2502-0265 (expires 9/30/2006)

B. Type of Loan

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 07-1034 | | |

C. Note:

TitleExpress Settlement System
Printed 02/30/2007 at 12:30 OPN

D. NAME OF BORROWER: Perry Goelner
ADDRESS: 12 Wantage School Road, Sussex

E. NAME OF SELLER: N/A
ADDRESS:

F. NAME OF LENDER: Homecomings Financial Network, LLC
ADDRESS: 9 Sylvan Way, Suite 310, Parsippany, NJ 07054

G. PROPERTY ADDRESS: 12 Wantage School Road, Sussex, NJ 07461
Borough of Sussex

H. SETTLEMENT AGENT: Crescent Lake Settlement Services LLC, Telephone: 516-222-2017 Fax: 516-222-2315
PLACE OF SETTLEMENT: 689 Stewart Avenue, Suite 565, Garden City, NY 11530

I. SETTLEMENT DATE:

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 6,148.44 | 403. | |
| 104. Payoff of First Mortgage Loan | 178,394.14 | 404. | |
| Washington Mutual | | | |
| 105. Payoff of Second Mortgage Loan | 48,310.08 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 232,852.66 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan | 322,500.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 322,500.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 232,852.66 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 322,500.00 | 602. Less reduction amount due seller (line 520) | |
| **303. CASH TO BORROWER** | 89,647.34 | **603. CASH TO SELLER** | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained in Blocks is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price distributed on line 401 above constitutes the Gross Proceeds of this transaction.

You are required by law to provide the settlement agent (First Title) with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, specifically that the failure to furnish or the furnishing of an incorrect taxpayer identification number.

TIN: _____    SELLER(S) SIGNATURE(S): _____

SELLER(S) NEW MAILING ADDRESS: _____

SELLER(S) PHONE NUMBER: _____ (H) _____ (W)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT   TitleExpress Settlement System  Printed 03/30/2007 at 16:30 CPN

## SETTLEMENT STATEMENT

| L. SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ = | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ | to | | |
| 702. $ | to | | |
| 703. Commission paid at Settlement | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
| 801. Loan Origination Fee | % | | |
| 802. Loan Discount | % | | |
| 803. Appraisal Fee to Kensington Financial Services, LLC   (P.O.C.) 275.00 Buyer | | | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Application Fee to Kensington Financial Services, LLC   LR | | 450.00 | |
| 807. Commitment Fee to Homecomings Financial Network, LLC | | 665.00 | |
| 808. Broker Fee to Kensington Financial Services, LLC | | 2,821.80 | |
| 809. Flood Cert Fee to First American Flood Data Service   (P.O.C.) 8.00 Buyer | | | |
| 810. Tax Service Fee to First American Tax Vendor   (P.O.C.) 60.00 Buyer | | | |
| 811. Broker Fee from HFto Broker to Kensington Financial Services, LLC   $3,695.85 POC by Lender | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest From  04/04/2007 to 04/01/2007   @$   /day   Days | | -198.80 | |
| 902. Mortgage Insurance Premium for   to | | | |
| 903. Hazard Insurance Premium for   to | | | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. Hazard Insurance   9 mo. @ $   56.00 /mo   LR | | 504.00 | |
| 1002. Mortgage Insurance   mo. @ $   /mo | | | |
| 1003. City Property Tax   mo. @ $   /mo | | | |
| 1004. County Property Tax   2 mo. @ $   499.08 /mo   LR | | 998.16 | |
| 1005. Annual Assessments   mo. @ $   /mo | | | |
| 1009. Aggregate Analysis Adjustment to Homecomings Financial Network, LLC   LR | | -911.09 | 0.00 |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement or closing fee to Crescent Lake Settlement Services LLC | | 375.00 | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title Insurance binder | | | |
| 1105. Document Preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's fees | | | |
| (includes above items No: | | | |
| 1108. Title Insurance to Fidelity National Title Insurance Company | | 1,347.00 | |
| (includes above items No: | | | |
| 1109. Lender's Policy   $322,500.00 - 1,092.00 | | | |
| 1110. Owner's Policy | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording Fees Deed $   ; Mortgage $ 225.00   ; Release $   75.00 | | 300.00 | |
| 1202. Realty Transfer Fee   Deed $   ; Mortgage $ | | | |
| 1203. Deed $   ; Mortgage $   ; Release $ | | | |
| 1204.   Deed $   ; Mortgage $ | | | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | | |
| 1303. 2nd Quarter to Wantage Township | | 1,497.27 | |
| 1400. TOTAL SETTLEMENT CHARGES   (enter on lines 103, Section J and 502, Section K) | | 8,148.44 | |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
Perry Oosler

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18; U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

SETTLEMENT AGENT   DATE:

## DISPLAY/HISTORY

Acct: 7473329357  Name:  PERRY GOERNER

Type: 1    Sub:  0    Investor: 96311    Warn: 6    Lock: 0    Stop: 0

- Dates -    Paid To:  08/01/2010    Next Due:  09/01/2010    Last Pmt:  08/12/2010    Page: 1
- Bal -    Prin:  310,823.71    Esc:  -18,085.15    Refresh Date:  04/02/2013
- Uncol -    LC:  0.00    P&J Adv:  0.00    Esc Sht:  0.00

## FINANCIAL TRANSACTIONS:

| Transaction Description | Transaction Amount | Last Paid | Post Date | Principal Paid | Interest Paid | Escrow Paid | Cr Life/ Disab | Lt Chrg/ Fees | Principal Bal After Tran | Escrow Bal After Tran | Unapp Funds After Tran |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 322,019.82 | 2,001.27 | 0.00 |
| PAYMENT | 2810.06 | 05/07 | 05/09/2007 | 240.84 | 2014.13 | 555.09 | | | 321,777.47 | 2,556.36 | 0.00 |
| PAYMENT | 2810.06 | 07/07 | 07/05/2007 | 242.35 | 2012.62 | 555.09 | | | 321,777.47 | 852.57 | 0.00 |
| Escrow Disb-Tax City | -1703.79 | 07/07 | 07/24/2007 | | | -1703.79 | | | 321,533.61 | 1,407.66 | 0.00 |
| PAYMENT | 2810.06 | 08/07 | 08/06/2007 | 243.86 | 2011.11 | 555.09 | | | 321,533.61 | 1,778.17 | 0.00 |
| PAYMENT | 370.51 | 08/07 | 08/07/2007 | | | 370.51 | | | 321,533.61 | 1,051.17 | 0.00 |
| Escrow Disb-Fire | -727.00 | 08/07 | 08/27/2007 | | | -727.00 | | | 321,257.35 | 1,639.93 | 0.00 |
| Curtailment | 30.88 | 09/07 | 09/11/2007 | 30.88 | | | | | 321,288.23 | 1,639.93 | 0.00 |
| PAYMENT | 2843.73 | 09/07 | 09/11/2007 | 245.38 | 2009.59 | 588.76 | | | 321,010.24 | 2,228.69 | 0.00 |
| PAYMENT | 2843.73 | 10/07 | 10/08/2007 | 247.11 | 2007.86 | | | | 321,010.24 | 524.90 | 0.00 |
| Escrow Disb-Tax City | -1703.79 | 10/07 | 10/15/2007 | | | -1703.79 | | | 320,761.58 | 1,113.66 | 0.00 |
| PAYMENT | 2843.73 | 11/07 | 11/09/2007 | 248.66 | 2006.31 | 588.76 | | | 320,461.37 | 1,702.42 | 0.00 |
| Curtailment | 50.00 | 12/07 | 12/10/2007 | 50.00 | | | | | 320,511.37 | 1,702.42 | 0.00 |
| PAYMENT | 2843.73 | 12/07 | 12/10/2007 | 250.21 | 2004.76 | 588.76 | | | 320,109.28 | 2,291.18 | 0.00 |
| Curtailment | 100.00 | 01/08 | 01/03/2008 | 100.00 | | | | | 320,209.28 | 2,291.18 | 0.00 |
| PAYMENT | 2843.73 | 01/08 | 01/03/2008 | 252.09 | 2002.88 | 588.76 | | | 320,109.28 | 690.65 | 0.00 |
| Escrow Disb-Tax City | -1600.53 | 01/08 | 01/11/2008 | | | -1600.53 | | | 319,754.99 | 1,291.84 | 0.00 |
| Curtailment | 100.00 | 02/08 | 01/28/2008 | 100.00 | | | | | 319,854.99 | 1,291.84 | 0.00 |
| PAYMENT | 2856.16 | 02/08 | 01/28/2008 | 254.29 | 2000.68 | 601.19 | | | 319,498.49 | 1,893.03 | 0.00 |
| PAYMENT | 2856.16 | 03/08 | 03/08/2008 | 255.50 | 1998.47 | 601.19 | | | 319,140.39 | 2,494.22 | 0.00 |
| Curtailment | 100.00 | 04/08 | 04/03/2008 | 100.00 | | | | | 319,240.39 | 2,494.22 | 0.00 |
| PAYMENT | 2856.16 | 04/08 | 04/03/2008 | 256.10 | 1996.87 | 601.19 | | | 319,140.39 | 893.69 | 0.00 |
| Escrow Disb-Tax City | -1600.53 | 04/08 | 04/16/2008 | | | -1600.53 | | | 318,880.05 | 1,494.88 | 0.00 |
| PAYMENT | 2856.16 | 05/08 | 05/10/2008 | 260.34 | 1994.63 | 601.19 | | | 318,880.05 | 1,494.88 | 0.00 |
| PAYMENT | 1494.88 | 05/08 | 05/19/2008 | | | 1494.88 | | | 318,880.05 | 0.00 | 0.00 |
| PAYMENT | -1494.88 | 05/08 | 05/19/2008 | | | -1494.88 | | | 318,618.08 | 2,096.07 | 0.00 |
| PAYMENT | 2856.16 | 06/08 | 06/07/2008 | 261.97 | 1993.00 | 601.19 | | | 318,354.47 | 2,697.26 | 0.00 |
| PAYMENT | 2856.16 | 07/08 | 07/03/2008 | 263.61 | 1991.36 | 601.19 | | | 318,354.47 | 941.84 | 0.00 |
| Escrow Disb-Tax City | -1755.42 | 07/08 | 07/11/2008 | | | -1755.42 | | | 318,089.22 | 1,543.03 | 0.00 |
| PAYMENT | 2856.16 | 08/08 | 08/04/2008 | 265.25 | 1989.72 | 601.19 | | | 318,089.22 | 805.03 | 0.00 |
| Escrow Disb-Fire | -738.00 | 08/08 | 09/02/2008 | | | -738.00 | | | 317,778.47 | 1,406.22 | 0.00 |
| Curtailment | 43.84 | 09/08 | 09/05/2008 | 43.84 | | | | | 317,822.31 | 1,406.22 | 0.00 |
| PAYMENT | 2856.16 | 09/08 | 09/05/2008 | 266.91 | 1988.06 | 601.19 | | | 317,465.78 | 2,007.41 | 0.00 |
| Curtailment | 43.84 | 10/08 | 10/06/2008 | 43.84 | | | | | 317,509.62 | 2,007.41 | 0.00 |
| PAYMENT | 2856.16 | 10/08 | 10/06/2008 | 268.85 | 1986.12 | 601.19 | | | 317,465.78 | 417.21 | 0.00 |
| Escrow Disb-Tax City | -1590.20 | 10/08 | 10/14/2008 | | | 601.19 | | | 317,194.97 | 1,018.40 | 0.00 |
| PAYMENT | 2856.16 | 11/08 | 11/03/2008 | 270.81 | 1984.16 | 601.19 | | | 316,922.47 | 1,619.59 | 0.00 |
| PAYMENT | 2856.16 | 12/08 | 12/09/2008 | 272.50 | 1982.47 | -1635.67 | | | 316,648.27 | 584.11 | 0.00 |
| Escrow Disb-Tax City | -1635.67 | 01/09 | 01/09/2009 | | | 601.19 | | | 316,648.27 | 2,220.78 | 0.00 |
| PAYMENT | 2856.16 | 01/09 | 01/09/2009 | 274.20 | 1980.77 | 601.19 | | | | | |

## DISPLAY/HISTORY

Acct: 7473329357  Name:  PERRY GOERNER          Type: 1    Sub:  0    Investor: 96311    Warn: 5    Lock: 0    Stop: 0

Page: 3

| • Dates • | Paid To: 08/01/2010 | Next Due: 09/01/2010 | Last Pmt: 08/12/2010 | |
| • Bal • | Prin: 310,823.71 | Esc: -16,055.15 | | Refresh Date: 04/02/2013 |
| • Uncol • | LC: 0.00 | P&I Adv: 0.00 | Esc Sht: 0.00 | |

## FINANCIAL TRANSACTIONS:

| Transaction Description | Transaction Amount | Last Paid | Post Date | Principal Paid | Interest Paid | Escrow Paid | Cr Life/ Disab | Lt Chrg/ Fees | Principal Bal After Tran | Escrow Bal After Tran | Unapp Funds After Tran |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FEE | 11.25 | 08/10 | 02/08/2011 | | | | | 11.25 | | | |
| FEE | 35.00 | 08/10 | 02/15/2011 | | | | | 35.00 | | | |
| FEE | 11.25 | 08/10 | 03/09/2011 | | | | | 11.25 | | | |
| FEE | 11.25 | 08/10 | 04/05/2011 | | | | | 11.25 | | | |
| Escrow Disb-Tax City | -1352.53 | 08/10 | 04/07/2011 | | | -1352.53 | | | 310,823.71 | -3,906.13 | 0.00 |
| FEE | 100.00 | 08/10 | 04/08/2011 | | | | | 100.00 | | | |
| FEE | 120.00 | 08/10 | 04/08/2011 | | | | | 120.00 | | | |
| FEE | 50.00 | 08/10 | 04/08/2011 | | | | | 50.00 | | | |
| FEE | 25.00 | 08/10 | 04/08/2011 | | | | | 25.00 | | | |
| FEE | 200.00 | 08/10 | 04/08/2011 | | | | | 200.00 | | | |
| FEE | 83.00 | 08/10 | 04/27/2011 | | | | | 83.00 | | | |
| FEE | 11.25 | 08/10 | 05/06/2011 | | | | | 11.25 | | | |
| FEE | 83.00 | 08/10 | 06/01/2011 | | | | | 83.00 | | | |
| FEE | -83.00 | 08/10 | 06/01/2011 | | | | | -83.00 | | | |
| FEE | 11.25 | 08/10 | 06/03/2011 | | | | | 11.25 | | | |
| FEE | 11.25 | 08/10 | 06/28/2011 | | | | | 11.25 | | | |
| Escrow Disb-Tax City | -1717.01 | 08/10 | 07/28/2011 | | | -1717.01 | | | 310,823.71 | -5,623.14 | 0.00 |
| FEE | 11.25 | 08/10 | 08/04/2011 | | | | | 11.25 | | | |
| Escrow Disb-Fire | -871.00 | 08/10 | 09/01/2011 | | | -871.00 | | | 310,823.71 | -6,494.14 | 0.00 |
| FEE | 11.25 | 08/10 | 09/07/2011 | | | | | 11.25 | | | |
| FEE | 11.25 | 08/10 | 10/04/2011 | | | | | 11.25 | | | |
| Escrow Disb-Tax City | -1717.01 | 08/10 | 10/07/2011 | | | -1717.01 | | | 310,823.71 | -8,211.15 | 0.00 |
| FEE | 190.00 | 08/10 | 10/26/2011 | | | | | 190.00 | | | |
| FEE | 11.25 | 08/10 | 10/27/2011 | | | | | 11.25 | | | |
| FEE | 11.25 | 08/10 | 12/06/2011 | | | | | 11.25 | | | |
| FEE | 11.25 | 08/10 | 01/09/2012 | | | | | 11.25 | | | |
| Escrow Disb-Tax City | -1079.34 | 08/10 | 01/09/2012 | | | -1079.34 | | | 310,823.71 | -9,290.49 | 0.00 |
| FEE | 11.25 | 08/10 | 01/25/2012 | | | | | 11.25 | | | |
| FEE | 14.75 | 08/10 | 02/24/2012 | | | | | 14.75 | | | |
| FEE | 3.50 | 08/10 | 02/28/2012 | | | | | 3.50 | | | |
| FEE | 11.25 | 08/10 | 02/28/2012 | | | | | 11.25 | | | |
| FEE | -14.75 | 08/10 | 03/28/2012 | | | | | -14.75 | | | |
| FEE | 18.25 | 08/10 | 03/30/2012 | | | | | 18.25 | | | |
| Escrow Disb-Tax City | -1703.24 | 08/10 | 04/12/2012 | | | -1703.24 | | | 310,823.71 | -10,993.73 | 0.00 |
| FEE | 16.50 | 08/10 | 04/25/2012 | | | | | 16.50 | | | |
| FEE | 20.00 | 08/10 | 05/28/2012 | | | | | 20.00 | | | |
| FEE | 14.75 | 08/10 | 06/29/2012 | | | | | 14.75 | | | |
| Escrow Disb-Tax City | -1237.32 | 08/10 | 07/26/2012 | | | -1237.32 | | | 310,823.71 | -12,231.05 | 0.00 |

**DISPLAY/HISTORY**

Acct: 7473329357  Name:  PERRY GOERNER       Type: 1    Sub:  0    Investor:  96311    Warn:  5    Lock:  0    Stop:  0

Page: 4

- Dates -    Paid To:  08/01/2010      Next Due:  09/01/2010    Last Pmt:  08/12/2010

Refresh Date: 04/02/2013

- Bal -    Prin:  310,823.71      Esc:  -16,065.15

- Uncol -    LC:  0.00      P&I Adv:  0.00    Esc Sht:  0.00

**FINANCIAL TRANSACTIONS:**

| Transaction Description | Transaction Amount | Last Paid | Post Date | Principal Paid | Interest Paid | Escrow Paid | Cr Life/ Disab | Lt Chrg/ Fees | Principal Bal After Tran | Escrow Bal After Tran | Unapp Funds After Tran |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FEE | 14.75 | 08/10 | 07/27/2012 | | | | | 14.75 | | | |
| FEE | 20.00 | 08/10 | 08/28/2012 | | | | | 20.00 | | | |
| Escrow Disb-Fire | -1064.00 | 08/10 | 09/03/2012 | | | -1064.00 | | | 310,823.71 | -13,295.05 | 0.00 |
| FEE | 20.00 | 08/10 | 09/27/2012 | | | | | 20.00 | | | |
| Escrow Disb-Tax City | -1237.32 | 08/10 | 10/11/2012 | | | -1237.32 | | | 310,823.71 | -14,532.37 | 0.00 |
| FEE | -62.00 | 08/10 | 10/17/2012 | | | | | -62.00 | | | |
| FEE | 16.50 | 08/10 | 10/30/2012 | | | | | 16.50 | | | |
| FEE | 62.00 | 08/10 | 11/08/2012 | | | | | 62.00 | | | |
| FEE | -62.00 | 08/10 | 11/08/2012 | | | | | -62.00 | | | |
| FEE | 14.75 | 08/10 | 11/26/2012 | | | | | 14.75 | | | |
| Escrow Disb-Tax City | -1532.78 | 08/10 | 01/18/2013 | | | -1532.78 | | | 310,823.71 | -16,065.15 | 0.00 |
| FEE | 18.25 | 08/10 | 02/04/2013 | | | | | 18.25 | | | |
| FEE | 35.00 | 08/10 | 03/06/2013 | | | | | 35.00 | | | |
| FEE | 28.75 | 08/10 | 03/07/2013 | | | | | 28.75 | | | |

## DISPLAY/HISTORY

Acct: 7473329357   Name: PERRY GOERNER                    Type: 1    Sub: 0    Investor: 96311    Warn: 5    Lock: 0    Stop: 0

Page: 2

- Dates -    Paid To: 08/01/2010      Next Due: 09/01/2010   Last Pmt: 08/12/2010

Refresh Date: 04/02/2013

- Bal -      Prin: 310,823.71        Esc: -16,065.15

- Uncol -    LC: 0.00               P&I Adv: 0.00      Esc Sht: 0.00

## FINANCIAL TRANSACTIONS:

| Transaction Description | Transaction Amount | Last Paid | Post Date | Principal Paid | Interest Paid | Escrow Paid | Cr Life/ Disab | Lt Chrg/ Fees | Principal Bal After Tran | Escrow Bal After Tran | Unapp Funds After Tran |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYMENT | 2879.31 | 02/09 | 02/09/2009 | 275.92 | 1979.05 | 624.34 | | | 316,372.35 | 1,208.45 | 0.00 |
| PAYMENT | 2879.31 | 03/09 | 03/16/2009 | 277.54 | 1977.33 | 624.34 | | | 316,094.71 | 1,832.79 | 0.00 |
| Escrow Disb-Tax City | -1636.67 | 03/09 | 04/09/2009 | | | -1636.67 | | | 316,094.71 | 196.12 | 0.00 |
| PAYMENT | 2879.31 | 04/09 | 04/13/2009 | 279.38 | 1975.59 | 624.34 | | | 315,815.33 | 820.46 | 0.00 |
| PAYMENT | 2879.31 | 05/09 | 05/13/2009 | 281.12 | 1973.85 | 624.34 | | | 315,534.21 | 1,444.80 | 0.00 |
| PAYMENT | 2992.05 | 06/09 | 06/29/2009 | 282.88 | 1972.09 | 624.34 | | 112.74 | 315,251.33 | 2,069.14 | 0.00 |
| PAYMENT | 2879.31 | 07/09 | 07/13/2009 | 284.65 | 1970.32 | 624.34 | | | 314,966.68 | 2,693.48 | 0.00 |
| Escrow Disb-Tax City | -1633.87 | 07/09 | 07/24/2009 | | | -1633.87 | | | 314,966.68 | 1,059.61 | 0.00 |
| PAYMENT | 2879.31 | 08/09 | 08/11/2009 | 286.43 | 1968.54 | 624.34 | | | 314,680.25 | 1,683.95 | 0.00 |
| Escrow Disb-Fire | -750.00 | 08/09 | 09/01/2009 | | | -750.00 | | | 314,680.25 | 933.95 | 0.00 |
| PAYMENT | 2879.31 | 09/09 | 09/11/2009 | 288.22 | 1966.75 | 624.34 | | | 314,392.03 | 1,558.29 | 0.00 |
| Curtailment | 20.69 | 10/09 | 10/07/2009 | 20.69 | | | | | 314,081.32 | 2,182.63 | 0.00 |
| PAYMENT | 2879.31 | 10/09 | 10/07/2009 | 290.02 | 1964.95 | 624.34 | | | 314,102.01 | 2,182.63 | 0.00 |
| Escrow Disb-Tax City | -1633.85 | 10/09 | 10/12/2009 | | | -1633.85 | | | 314,081.32 | 548.77 | 0.00 |
| Curtailment | 120.69 | 11/09 | 11/09/2009 | 120.69 | | | | | 313,668.67 | 1,173.11 | 0.00 |
| PAYMENT | 2879.31 | 11/09 | 11/09/2009 | 291.95 | 1963.01 | 624.34 | | | 313,789.36 | 1,173.11 | 0.00 |
| Curtailment | 120.69 | 12/09 | 12/07/2009 | 120.69 | | | | | 313,253.44 | 1,797.45 | 0.00 |
| PAYMENT | 2879.31 | 12/09 | 12/07/2009 | 294.54 | 1960.43 | 624.34 | | | 313,374.13 | 1,797.45 | 0.00 |
| PAYMENT | 2879.31 | 01/10 | 01/02/2010 | 297.14 | 1957.83 | 624.34 | | | 312,956.30 | 2,421.79 | 0.00 |
| Escrow Disb-Tax City | -1635.27 | 01/10 | 01/13/2010 | | | -1635.27 | | | 312,956.30 | 786.52 | 0.00 |
| PAYMENT | 8.64 | 02/10 | 02/08/2010 | | | 8.64 | | | 312,657.31 | 1,403.46 | 0.00 |
| PAYMENT | 2863.27 | 02/10 | 02/08/2010 | 298.99 | 1955.98 | 608.30 | | | 312,657.31 | 1,394.82 | 0.00 |
| PAYMENT | 2862.48 | 03/10 | 03/09/2010 | 300.86 | 1954.11 | 607.51 | | | 312,356.45 | 2,010.97 | 0.00 |
| Escrow Disb-Tax City | -1635.27 | 03/10 | 04/05/2010 | | | -1635.27 | | | 312,356.45 | 375.70 | 0.00 |
| PAYMENT | 2862.48 | 04/10 | 04/09/2010 | 302.74 | 1952.23 | 607.51 | | | 312,053.71 | 983.21 | 0.00 |
| PAYMENT | 2862.48 | 05/10 | 05/10/2010 | 304.63 | 1950.34 | 607.51 | | | 311,749.08 | 1,590.72 | 0.00 |
| PAYMENT | 2862.48 | 06/10 | 06/10/2010 | 306.54 | 1948.43 | 607.51 | | | 311,442.54 | 2,198.23 | 0.00 |
| PAYMENT | 2862.48 | 07/10 | 07/12/2010 | 308.45 | 1946.52 | 607.51 | | | 311,134.09 | 2,805.74 | 0.00 |
| PAYMENT | 2862.48 | 08/10 | 08/12/2010 | 310.38 | 1944.59 | 607.51 | | | 310,823.71 | 3,413.25 | 0.00 |
| Escrow Disb-Tax City | -1743.69 | 08/10 | 08/18/2010 | | | -1743.69 | | | 310,823.71 | 1,669.56 | 0.00 |
| Escrow Disb-Fire | -790.00 | 08/10 | 09/01/2010 | | | -790.00 | | | 310,823.71 | 879.56 | 0.00 |
| Escrow Disb-Tax City | -1743.68 | 08/10 | 10/04/2010 | | | -1743.68 | | | 310,823.71 | -864.12 | 0.00 |
| FEE | 11.25 | 08/10 | 10/28/2010 | | | | | 11.25 | | | |
| FEE | 11.25 | 08/10 | 11/29/2010 | | | | | 11.25 | | | |
| FEE | 83.00 | 08/10 | 12/01/2010 | | | | | 83.00 | | | |
| FEE | 11.25 | 08/10 | 01/05/2011 | | | | | 11.25 | | | |
| Escrow Disb-Tax City | -1689.48 | 08/10 | 01/06/2011 | | | -1689.48 | | | 310,823.71 | -2,553.60 | 0.00 |
| FEE | 275.00 | 08/10 | 01/25/2011 | | | | | 275.00 | | | |

SUSSEX COUNTY BOARD OF TAXATION
973-579-0910

# MEMORANDUM
# OF
# JUDGMENT

*Ex. 31*

GOERNER, PERRY
12 WANTAGE SCHOOL RD
WANTAGE, NJ          07461

---

GOERNER, PERRY
**Petitioner**

vs

WANTAGE TWP
**Respondent**

Taxing District  **WANTAGE TWP**        Address  **12 WANTAGE SCHOOL RD**

Block  **43**        Lot  **7.18**     Year  **2013**

A duly verified Petition of Appeal having been filed with the Sussex County Board of Taxation and said appeal having been heard and considered.

It is on this day  **06/20/13**  ORDERED that Judgment be entered as follows:

| | ORIGINAL ASSESSMENT | | JUDGMENT |
|---|---|---|---|
| Land | $ 178,000 | Land | $ 178,000 |
| Improvement | $ 108,100 | Improvement | $ 68,100 |
| Abatement | $ 0 | Abatement | $ 0 |
| Total | $ 286,100 | Total | $ 246,100 |
| Prorated for | N/A months | Prorated for | N/A months |
| Prorated Amount | $ N/A | Prorated Amount | $ N/A |
| Original Property Class | 2 | Judged Property Class | |

JUDGMENT CODE #  **3**    **Stipulated**
*(See Reverse Side)*

MARKET VALUE COMPARABLE SALES

**COMMISSIONERS' SIGNATURES**

(Explanation for codes 1E and 5F)

ATTEST:

*Melissa Rockwell*          *George Conway*

Date Mailed  **06/21/13**

**Date Judgment Entered and Mailed by County Board of Taxation**
(a) A record shall be maintained noting the date each judgment is mailed.(b) Each Judgment shall be stamped with the date of entry and date mailed.

**Homecomings Financial**
*A GMAC Company*

CUSTOMER INFORMATION

| | | PROPERTY ADDRESS |
|---|---|---|
| Name: | PERRY GOERNER | 12 WANTAGE SCHOOL ROAD |
| | | SUSSEX    NJ 07461 |
| Account Number: | 7473329357 | |
| Home Phone #: | (973)875-8764 | |

Visit us at www.homecomings.com for
account information or to apply on-line.

*EX. 13*

#BWNHJPY
#KW75967B367B2#

PERRY GOERNER
12 WANTAGE SCHOOL ROAD
SUSSEX NJ 07461-3322



| | | |
|---|---|---|
| Customer Care Inquiries: | 1-800-206-2901 |
| Home Financing Needs: | 1-877-695-3633 |

Please verify your mailing address, borrower and co-borrower information. Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | 7473329357 |
| Current Statement Date | June 01, 2007 |
| Maturity Date | April 01, 2037 |
| Interest Rate | 7.50000 |
| Current Principal Balance* | $322,019.82 |
| Current Escrow Balance | $2,001.27 |
| Interest Paid Year-to-Date | $3,830.96 |
| Taxes Paid Year-to-Date | $0.00 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $2,254.97 |
| Subsidy/Buydown | $0.00 |
| Escrow | $555.09 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $2,810.06 |
| Account Due Date | July 01, 2007 |

For Customer Care inquiries call: 1-800-206-2901
For Insurance inquiries call: 1-800-237-6787
For Payment Arrangements call: 1-800-799-9250

## Account Activity Since Last Statement

| Description | Due Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

Get a $3,000 disability benefit for one full year at no cost to you. Please see the enclosed
for more information.

Pay down debt! Fund a home improvement project or tuition! *Call the number above to apply for
a Home Equity Line or Loan!*

## See Reverse Side For Important Information



**WACHOVIA**

*EX. 18*

```
00002832 02 AT  0.545 02  3DG  10

PERRY GOERNER
12 WANTAGE SCHOOL RD                    PB
SUSSEX NJ  07461-0000
```

# Crown Classic Banking                          3/09/2007 thru 4/10/2007

Account number:
Account owner(s):        PERRY GOERNER

## Account Summary

| | |
|---|---|
| Opening balance 3/09 | $2,848.37 |
| Deposits and other credits | 90,647.34 + |
| Interest paid | 2.23 + |
| Checks | 1,189.13 - |
| Automated Checks | 2,246.48 - |
| Other withdrawals and service fees | 800.00 - |
| Closing balance 4/10 | $89,262.33 |

## Deposits and Other Credits

| Date | Amount | Description |
|---|---|---|
| 3/12 | 1,000.00 | DEPOSIT |
| 4/05 | 89,647.34 | FUNDS TRANSFER  (ADVICE 2007040500057965) RCVD FROM  JPMORGAN CHASE  / ORG=CRESCENT LAKE SETTLEMENT SERVICES RFB=PES OF 07/04/05 OBI= REF=0092800095BN   04/05/07  03:58PM ET |
| 4/10 | 2.23 | INTEREST FROM 03/09/2007 THROUGH 04/10/2007 |
| Total | $90,649.57 | |

## Interest

| | |
|---|---|
| Number of days this statement period | 33 |
| Annual percentage yield earned | 0.15% |
| Interest earned this statement period | $2.23 |
| Interest paid this statement period | $2.23 |
| Interest paid this year | $2.59 |

## Checks

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 5472 | 281.63 | 3/12 | 5480* | 500.00 | 3/13 | 5483 | 62.31 | 3/27 |
| 5474* | 25.19 | 3/12 | 5481 | 200.00 | 4/02 | Total | $1,189.13 | |
| 5478* | 40.00 | 3/13 | 5482 | 80.00 | 3/30 | | | |

\* Indicates a break in check number sequence   (checks could be listed under Automated Checks)

**WACHOVIA BANK, N.A., HAMBURG**                          page 1 of 4