**Hearing Date & Time: December 11, 2013, at 10:00 a.m.**
**Objection Deadline: December 4, 2013, at 5:00 p.m**

**Alan E. Marder, Esq.**
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
**990 Stewart Avenue, Suite 300**
**P.O. Box 9194**
**Garden City, New York 11530**
**Phone: (516) 741-6565**
**Fax: (516) 741-6706**

***Counsel to the Debtors***

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **RESIDENTIAL CAPITAL, LLC, *et al.*,** | **Case No. 12-12020 (MG)** |
| **Debtors.** | **Jointly Administered** |

**DEBTOR'S MOTION, PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, FOR APPROVAL OF STIPULATION RESOLVING DISPUTE**

The above-captioned debtors and debtors-in-possession (each a "**Debtor**" and, collectively, the "**Debtors**"), by their counsel, Meyer, Suozzi, English & Klein, P.C., hereby move (the "**Motion**") this Court pursuant to section 105 of title 11 of the United States Code (the "**Bankruptcy Code**") and Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rule**") 9019, for approval of the *Settlement Agreement and Mutual Releases* (the "**Settlement**"), attached hereto as Exhibit "A," entered into between and among Debtor Residential Funding Company, LLC ("**RFC**"), Virginia Wolf, as Executrix for The Estate of Mark M. Wolf, and the Lawyers' Fund for Client Protection for the State of New York (the "**Lawyers' Fund**"), on October 2, 2013. In support of their Motion, the Debtors set forth as follows:

## JURISDICTION

1. The statutory predicates for the relief requested are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a). This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

### A. General

2. On the Petition Date, each of the Debtors[1] filed a voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code. *See Declaration of Alan E. Marder In Support Of Debtor's Motion, Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure, For Approval Of Stipulation Resolving Dispute*, attached hereto as Exhibit "B".

3. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

5. No trustee has been appointed in these Chapter 11 cases.

### B. RFC's Claim Against Saxon and Wolf

6. On June 30, 2007, RFC entered into the *Eighth Amended and Restated Warehousing Credit and Security Agreement* (the "**Warehousing Agreement**") with Saxon Equity Mortgage Bankers, Ltd. ("**Saxon**").

7. Saxon was solely owned by Mark M. Wolf.

8. Wolf was an absolute guarantor with regard to $5,757,000 in loans (the "**Loans**") made to Saxon, pursuant to the Warehousing Agreement.

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 6].

9. On or about October 5, 2007, RFC initiated an action against Saxon and Wolf in the Supreme Court of the State of New York, Count of Nassau under Index Number 017897/2007, by filing a complaint to recover the Loans as a result of alleged breaches of the Warehousing Agreement (the "**Complaint**"). Shortly after RFC filed the Complaint, Wolf committed suicide.

10. On December 13, 2007, Wolf died a resident of Nassau County New York, leaving a Last Will and Testament, which was admitted to probate (Index. Number 349749) (the "**Probate Case**") by the Surrogates Court of the State of New York, County of Nassau (the "**Surrogates Court**"). *See Declaration of Leonard Kreinces In Support Of Debtor's Motion, Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure, For Approval Of Stipulation Resolving Dispute*, attached hereto as Exhibit "C".

11. The Surrogates Court appointed Virginia Wolf as the executrix of the Estate of Mark Wolf (the "**Wolf Estate**").

12. Saxon defaulted in appearing or in answering the Complaint.

13. On or about February 11, 2008, the Lawyers Fund filed a claim in the Probate Case, in the amount of $60,000. The Lawyer's Fund claim was filed in connection with a loss resulting from Wolf, who was an attorney, misappropriating funds from Wolf's attorney escrow account. The Lawyer's Fund claim is afforded a priority over RFC's claim. *See*, ¶ 28, *infra*.

14. On or about July 28, 2008, RFC filed a claim in the Probate Case, in the amount of $6,267,686 in connection with the Loans, including interest and fees.

15. Since Wolf's death and the creation of the Wolf Estate, the attorney for the Wolf Estate conducted an extended investigation into the assets of the Wolf Estate. This investigation included subpoenaing various banks to locate the assets of Wolf and hiring a certified public

accounting firm to review the bank statements and other financial documents. The attorney for the Wolf Estate determined that other than approximately $92,241.25 in net assets, after the payment of administrative fees and income taxes, no other assets are recoverable.

**D. <u>The Settlement</u>**

16. On October 2, 2013, RFC, the Lawyers' Fund, and the Wolf Estate entered into the Settlement.

17. Pursuant to the terms of the Settlement, fourteen days after entry of an order of this Court approving the Settlement, the Wolf Estate will deliver (i) $5,000 to counsel for the Wolf Estate for its legal fees; (ii) $55,000 to the Lawyers' Fund in full and final settlement of all of the Lawyers' Fund's claims against the Wolf Estate; and (iii) approximately $32,241.25, which is the balance of the Wolf Estate, to RFC (the "**<u>Settlement Amount</u>**").

18. In addition, pursuant to the terms of the Settlement, upon receipt of the Settlement Amount, RFC shall release the Wolf Estate and Virginia Wolf, solely in her capacity as Executrix of the Wolf Estate, from all claims. The Settlement does not release Saxon or Virginia Wolf, in her individual capacity, from any claims that RFC may have.

**<u>REQUEST AND BASIS FOR RELIEF</u>**

19. By this Motion, the Debtors request this Court approve the Settlement.

20. Rule 9019(a) of the Bankruptcy Rules provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

21. To approve a compromise and settlement under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise and settlement is in the best interests of the debtor's estate. *See In re Chemtura Corp.*, Case No. 09-11233, 2010 WL 4272727, at * 21

(Bankr. S.D.N.Y. October 21, 2010). To be in the best interest of the estate, a settlement must be "fair and equitable." *In re Chemtura*, 2010 WL 4272727, at * 21 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) ("TMT")).

22. In order to determine whether a settlement is fair and equitable, the court should evaluate the probability of success in a litigation and the court should make

> [A]n educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*In re Chemtura*, 2010 WL 4272727, at * 21 (quoting *TMT*, 390 U.S. at 424-25).

23. However, in determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); see *In re Chemtura*, 2010 WL 4272727, at * 21 (quoting *In re W.T. Grant*, 699 F.2d at 608; *In re Purofied Down*, 150 B.R. at 522; *Official Comm. of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James Talcott, Inc. (In re Int'l Distrib. Ctrs., Inc.)*, 103 B.R. 420, 422 (S.D.N.Y.1989)) ("A bankruptcy court need not conduct an independent investigation," nor is it "necessary for the court to conduct a 'mini-trial.'"); *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 75 (Bankr. S.D.N.Y. 2009) (the court is not required to "conduct a mini-trial to 'decide the numerous questions of law and fact raised . . . but rather to canvass the issues' raised by the parties"); *In re Tower Automotive, Inc.*, 342 B.R. 158, 164 (Bankr. S.D.N.Y. 2006) ("A court assesses a settlement by determining whether it 'fall[s] below the lowest point in the range of reasonableness.'").

24. In order to determine whether a settlement is reasonable, courts in the Second Circuit consider the following seven factors:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (internal quotation marks omitted); *see Ionosphere Clubs*, 156 B.R. at 426-27 ("The 'reasonableness' of a settlement depends upon all factors, including probability of success, the length and cost of the litigation, and the extent to which the settlement is truly the product of 'arms-length' bargaining, and not of fraud or collusion.").

25. Further, in making its decision, the court may consider the opinion of the trustee that the settlement is fair and reasonable. *In re Chemtura*, 2010 WL 4272727, at * 21 (citing *TMT*, 390 U.S. at 424); accord *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *see In re Adelphia*, 327 B.R. at 159 ("[T]he court is permitted to rely upon 'opinions of the trustee, the parties, and their attorneys.'"). In addition, the bankruptcy court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see In re Tower Automotive*, 342 B.R. at 164 ("there is a general presumption in favor of settlements"); *Shugrue*, 165 B.R. at 123 ("the general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above").

26. Here, the Debtors believe that the Settlement represents a fair and reasonable compromise of the disputes between the Debtors and the Wolf Estate. The Debtors' belief is based upon a several different factors.

27. First, while the Settlement Amount represents a small fraction of the Debtors' claim against the Wolf Estate, other than the $92,241.25 in net assets in the Wolf Estate, no other assets are recoverable. The attorney for the Wolf Estate conducted an extensive investigation to locate assets belonging to the Wolf Estate and determined he was unable to recover any such further assets.

28. In addition, while the Debtors' are only recovering approximately a third of the Wolf Estate assets (net of administrative fees and income taxes), a larger recovery is not possible in this case as the Lawyer's Fund's claim has priority over the Debtors' claim, pursuant to the New York State Constitution. *See* N.Y. Const., art I, § 14; *Matter of Warren*, 53 N.Y.2d 118, 119 (N.Y. 1981); *Matter of Sheridan*, 149 Misc.2d 519, 521 (N.Y. Sur. 1991). Specifically, "the State in its capacity as sovereign has a prerogative right to priority over other general creditors with regard to the estate or the property of a debtor." *Sheridan*, 149 Misc.2d at 521. The Lawyer's Fund is an arm of the State and, thus, is entitled to the same priority over general creditors as the State itself is. *See id*.

29. The Lawyer's Fund has agreed to reduce its claim by $5,000 and waive interest pursuant to the Settlement. Thus, Debtors believe that even were the Debtors to pursue this matter further, the Debtors would not be able to achieve a better result than that achieved by this Settlement. Moreover, the Debtors believe that any potential upside to the Debtors' bankruptcy estates in pursuing this matter further would mean additional costs to the Debtors' estates, delay, and the uncertainty of litigation. In contrast, this Settlement provides the Debtors with

immediate value.

30. For the reasons set forth above, the Debtors believe the Settlement falls within the range of reasonableness, and the Settlement should be approved.

## NOTICE

31. The Debtors have provided notice of this Motion, including a copy of the Settlement, upon the United States Trustee, the Wolf Estate, the Lawyers' Fund, the Official Committee of Unsecured Creditors, and all parties who have filed a notice of appearance, and submits that such notice is adequate and no other or further notice is required.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, the Debtors respectfully request that the Court approve the Stipulation and the proposed order, attached hereto as Exhibit "D," and grant such other and further relief as may be just and proper.

**Dated: Garden City, New York**
**October 28, 2013**

**MEYER, SUOZZI, ENGLISH & KLEIN P.C.**

**By:** ***/s/ Alan E. Marder***
**Alan E. Marder, Esq.**
**990 Stewart Avenue, Suite 300**
**P.O. Box 9194**
**Garden City, New York 11530-9194**
**Phone: (516) 741-6565**
**Fax : (516) 741-6706**

***Counsel to the Debtors***



963875