**EXHIBIT "B"**

|  |  |
|---|---|
| Hearing Date & Time: | December 11, 2013, at 10:00 a.m. |
| Objection Deadline: | December 4, 2013, at 5:00 p.m |

Alan E. Marder, Esq.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530
Phone: (516) 741-6565
Fax: (516) 741-6706

*Counsel to the Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:                                                                              Chapter 11

RESIDENTIAL CAPITAL, LLC, *et al.*,                      Case No. 12-12020 (MG)

                                                                                    Jointly Administered
                                        Debtors.
-----------------------------------------------------------------X

## DECLARATION OF ALAN E. MARDER IN SUPPORT OF DEBTOR'S MOTION, PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, FOR APPROVAL OF STIPULATION RESOLVING DISPUTE

ALAN E. MARDER, pursuant to 28 U.S.C. § 1746, declares the following to be true under penalty of perjury:

1. I am an attorney at law, duly admitted to practice in the State of New York and before this Court.

2. I am a member of Meyer, Suozzi, English & Klein, P.C., which is counsel to the above-captioned debtors and debtors-in-possession (each a "**Debtor**" and, collectively, the "**Debtors**").

3. I submit this declaration in support of the *Debtor's Motion, Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure, For Approval Of Stipulation Resolving Dispute*, made pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "**Motion**").

4.      The facts set forth herein are based on my review of documents related to the Debtors' claims against the estate of Mark M. Wolf and Saxon Equity Mortgage Bankers, Ltd. ("**Saxon**") or based on my communications with the Debtors, counsel for Virginia Wolf, as Executrix for The Estate of Mark M. Wolf, and the Lawyers' Fund for Client Protection for the State of New York (the "**Lawyers' Fund**").

## FACTS

### A.  General

5.      On the Petition Date, each of the Debtors[1] filed a voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code.

6.      The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7.      These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.      No trustee has been appointed in these Chapter 11 cases.

### B.  RFC's Claim Against Saxon and Wolf

9.      On June 30, 2007, Residential Funding Company, LLC ("**RFC**") entered into the *Eighth Amended and Restated Warehousing Credit and Security Agreement* (the "**Warehousing Agreement**") with Saxon Equity Mortgage Bankers, Ltd. ("**Saxon**").

10.     Saxon was solely owned by Mark M. Wolf.

11.     Wolf was an absolute guarantor with regard to $5,757,000 in loans (the "**Loans**") made to Saxon, pursuant to the Warehousing Agreement.

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 6].

2

12. On or about October 5, 2007, RFC initiated an action against Saxon and Wolf in the Supreme Court of the State of New York, Count of Nassau under Index Number 017897/2007, by filing a complaint to recover the Loans as a result of alleged breaches of the Warehousing Agreement (the "**Complaint**").

13. Saxon defaulted in appearing or in answering the Complaint.

**D.    The Wolf Estate**

14. Upon information and belief, on December 13, 2007, Wolf died a resident of Nassau County New York, leaving a Last Will and Testament, which was admitted to probate (Index. Number 349749) (the "**Probate Case**") by the Surrogates Court of the State of New York, County of Nassau (the "**Surrogates Court**").

15. The Surrogates Court appointed Virginia Wolf as the executrix of the Estate of Mark Wolf (the "**Wolf Estate**").

16. On or about February 11, 2008, the Lawyers Fund filed a claim in the Probate Case, in the amount of $60,000. The Lawyer's Fund claim was filed in connection with a loss resulting from Wolf, who was an attorney, misappropriating funds from Wolf's attorney escrow account. The Lawyer's Fund claim is afforded a priority over RFC's claim.

17. 14. On or about July 28, 2008, RFC filed a claim in the Probate Case, in the amount of $6,267,686 in connection with the Loans, including interest and fees.

18. Upon information and belief, since Wolf's death and the creation of the Wolf Estate, the attorney for the Wolf Estate conducted an extended investigation into the assets of the Wolf Estate. This investigation included subpoenaing various banks to locate the assets of Wolf and hiring a certified public accounting firm to review the bank statements and other financial documents. The attorney for the Wolf Estate determined that other than approximately

3

$92,241.25 in net assets, after the payment of administrative fees and income taxes, no other assets are recoverable.

C.    **The Settlement**

19.    On October 2, 2013, RFC, the Lawyers' Fund, and the Wolf Estate entered into the Settlement.

20.    Pursuant to the terms of the Settlement, fourteen days after entry of an order of this Court approving the Settlement, the Wolf Estate will deliver (i) $5,000 to counsel for the Wolf Estate for its legal fees; (ii) $55,000 to the Lawyers' Fund in full and final settlement of all of the Lawyers' Fund's claims against the Wolf Estate; and (iii) approximately $32,241.25, which is the balance of the Wolf Estate, to RFC (the "**Settlement Amount**").

21.    In addition, pursuant to the terms of the Settlement, upon receipt of the Settlement Amount, RFC shall release the Wolf Estate and Virginia Wolf, as executrix of the Wolf Estate, from all claims. The Settlement does not release Saxon or Virginia Wolf, in her individual capacity, from any claims that RFC may have.

D.    **Benefits of the Settlement Agreement to the Estates**

22.    I believe that the Settlement represents a fair and reasonable compromise of the disputes between the Debtors and the Wolf Estate. My belief is based upon a several different factors.

23.    First, while the Settlement Amount represents a small fraction of the Debtors' claim against the Wolf Estate, other than the $92,241.25 in net Wolf Estate assets, after the payment of administrative fees and income taxes, I believe, based upon information provided to me by the Wolf Estate and counsel to the Debtors', that no other assets are recoverable. The

Debtors and the Wolf Estate each conducted an extensive investigation to locate assets belonging to the Wolf Estate and determined that they are unable to recover any further assets.

24. In addition, while the Debtors' are only recovering approximately a third of the Wolf Estate assets (net of taxes and administrative costs), a larger recovery is not possible in this case as the Lawyer's Fund's claim has priority over the Debtors' claim.

25. The Lawyer's Fund has agreed to reduce its claim by $5,000 and waive interest pursuant to the Settlement. Thus, I believe that even were the Debtors to pursue this matter further, it is doubtful that the Debtors would be able to achieve a better result than that achieved by this Settlement. Further, I believe that any potential upside to the Debtors' bankruptcy estates in pursuing this matter would mean additional costs to the Debtors' estates, delay, and the uncertainty of litigation. In contrast, this Settlement provides the Debtors' with immediate value.

## CONCLUSION

26. For the reasons set forth above, I believe the Settlement falls within the range of reasonableness and should be approved.

Dated: Garden City, New York
October 28, 2013

/s/ Alan E. Marder
Alan E. Marder, Esq.

964027v.2

5