## **Exhibit 2**

**Settlement Agreement**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**STIPULATION WITH NATIONAL CREDIT UNION ADMINISTRATION BOARD REGARDING ALLOWED CLAIMS**

This stipulation (the "**Stipulation**") is entered into on October 2, 2013 by and among Residential Capital, LLC and its affiliated debtors, as debtors and debtors in possession, (collectively, the "**Debtors**") and the National Credit Union Administration Board (the "**NCUAB**" and, together with the Debtors, the "**Parties**").

**RECITALS**

A. On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). Since the Petition Date, the Debtors have operated and managed their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Office of the United States Trustee for the Southern District of New York has appointed an Official Committee of Unsecured Creditors in respect of the Debtors (the "**Committee**").

B. Prior to the Petition Date, two Debtors, Residential Accredit Loans, Inc. ("**RALI**") and Residential Funding Mortgage Securities II, Inc. ("**RFMS II**"), acted as a depositor for residential mortgage-backed securities ("**RMBS**"), certain of which were purchased by the Credit Unions.

C. The NCUAB has placed various credit unions over which the National Credit Union Administration has regulatory authority into conservatorship or liquidation (collectively, the "**Credit Unions**"). The Credit Unions include, without limitation, Western Corp. Federal Credit Union, U.S. Central Federal Credit Union, and Southwest Corporate Federal Credit Union. The NCUAB placed Western Corp. Federal Credit Union and U.S. Central Federal Credit Union into conservatorship in 2009 and appointed itself as liquidating agent in 2010. Both the conservatorship and liquidation of Southwest Corporate Federal Credit Union began in 2010. Certain Credit Unions purchased RMBS associated with RALI, RFMS II, or other Debtors.

D. In 2011, the NCUAB brought actions against RALI and RFMS II and certain non-Debtors in respect of RMBS. On June 20, 2011, the NCUAB filed a complaint against RFMSII and numerous other defendants in the United States District Court for the District of Kansas (the "**Kansas Action**"). On August 9, 2011, the NCUAB filed a complaint in the United States District Court for the Central District of California, against RALI, Fremont Mortgage Securities Corp., GS Mortgage Securities Corp., and Long Beach Securities Corp., as issuers, and against Goldman, Sachs & Co., as underwriter and seller (the "**California Action**"). Both complaints allege that the RMBS offering documents contained untrue statements and omissions of material facts and assert corresponding claims under sections 11 and 12 of the Securities Act of 1933 (the "**Securities Act**") and state securities laws. The complaints seek costs and rescission, rescissory damages, or money damages.

E. The defendants moved to dismiss both complaints. In the Kansas Action, motions to dismiss were denied in most respects. In the California Action, motions to dismiss the original complaint were granted in part and denied in part. The NCUAB filed an amended complaint on

October 29, 2012 and certain defendants (excluding RALI) moved to dismiss on December 13, 2012. Following several rounds of briefing and oral argument, motions to dismiss the amended complaint were largely denied, except as to certain securitizations not related to the Debtors.

    F.    Prior to the applicable bar date, the NCUAB filed eleven proofs of claim that related to the two district court lawsuits: ten claims against RALI [Claim Nos. 2626, 2627, 2628, 2629, 2630, 2631, 2632, 2634, and 2636] and one claim against RFMS II [Claim No. 2635] (collectively, the "**NCUAB Claims**"). The proofs of claim state approximately $293 million in aggregate claims, comprising a $558,160 claim against RFMS II and $292,398,187 in claims against RALI.

    G.    On June 20, 2013, the Debtors filed an objection seeking to disallow and expunge the NCUAB Claims on the grounds on untimeliness, absence of material misrepresentations, and absence of loss causation (the "**Objection**"). [Dkt. No. 4050]. The NCUAB filed a response to the objection on July 19, 2013. [Dkt. No. 4299].

    H.    The Debtors and the Committee, as co-plan proponents, have solicited votes on a joint plan of reorganization (as may be amended from time to time, the "**Plan**"). Ex. 1 to *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Dkt. No. 4819]. To the extent allowed, the NCUAB Claims would be treated as "General Unsecured Claims." The Plan also contemplates the potential subordination of certain claims, including the NCUAB Claims, pursuant to section 510(b) of the Bankruptcy Code. *Id.* at Art. III.E.

    I.    In addition to the actions filed against the Debtors and the related NCUAB Claims, NCUAB has stated that it has claims against Ally Financial Inc. ("**AFI**") and Ally

Securities, LLC ("**Ally Securities**") that are timely based on equitable tolling and constructive notice arguments and that it is prepared to assert. The NCUAB has submitted that its claims against AFI, under section 15 of the Securities Act, equal over $390 million, and its claims against Ally Securities, under section 11 of the Securities Act, equal approximately $200 million. The NCUAB also filed a complaint against Ally Securities in United States District Court for the Southern District of New York on September 23, 2013. The Debtors believe that these purported claims against AFI and Ally Securities are time barred and otherwise without merit.

J.      The Parties, with direct involvement by the Committee, engaged in arms'-length negotiations regarding a possible settlement of the NCUAB Claims, the alleged claims against AFI and Ally Securities, and related issues. The Parties have reached an agreement, as set forth in this Stipulation, with the support of the Committee.

## AGREEMENT

1.      Effectiveness. The agreements, acknowledgments, and obligations contained herein are expressly contingent upon, and shall become effective upon execution by the parties hereto, subject in the case of the Debtors to entry by the Bankruptcy Court of an order or orders approving this Stipulation; provided that if this Stipulation is not approved by the Bankruptcy Court, or the Plan does not become effective, this Stipulation shall be of no force and effect.

2.      Allowed Claim. Strictly for purposes of voting on the Plan and distributions thereunder, (i) the NCUAB Claims shall be reduced and allowed in the aggregate amount of $78 million in full and final satisfaction of any and all claims that have been or could have been asserted by the NCUAB or the Credit Unions in these cases, including any and all claims that the NCUAB or the Credit Unions purport to have against AFI or Ally Securities (as

described in paragraph I above) as follows: $149,000 against RFMS II; and $77,851,000 against RALI; (ii) the NCUAB Claims, as reduced and allowed in accordance with the foregoing, will be Allowed General Unsecured Claims in class RS-4 as provided in Art. III.D.3(d) of the Plan; and (iii) such allowed claims shall not be subject to subordination. In the event the Plan does not become effective, this paragraph shall be null and void.

3. <u>Plan Support</u>. The NCUAB agrees to support the Plan in accordance with Sections 4.1(c) and (e) of the Plan Support Agreement, dated as of May 13, 2013, entered into by and among the Debtors, AFI, the Committee, and the claimants identified therein. [Dkt. No. 3814, Ex. 3].

4. <u>Consent to Releases</u>. The NCUAB acknowledges and agrees that, upon the effective date of the Plan, it and the Credit Unions shall be subject to the terms set forth in Articles IX.D (*Third Party Release*), IX.G (*Exculpation*), and IX.H (*Injunction*) of the Plan.

5. <u>Commitment to Cooperate</u>. The NCUAB agrees to provide such cooperation (at its own cost and expense) as may be reasonably necessary to achieve the approval and implementation of this Stipulation. Upon approval of this Stipulation by the Bankruptcy Court, the Debtors agree to cooperate in good faith with the production of documents in their possession, custody, or control reasonably requested by the NCUAB in connection with the prosecution of its actions against defendants other than the Debtors, AFI, Ally Securities, and any other parties to be released under the Plan. Notwithstanding the foregoing sentence, the parties acknowledge that due to the sales of the Debtors' loan servicing platforms, the Debtors' access to, and ability to produce, certain documents may be limited, and the Debtors make no representations concerning the production of documents that are contingent on the cooperation and assistance of third parties.

6. <u>Dismissal of Proceedings</u>. The NCUAB agrees to dismiss the applicable Debtors from the Kansas Action and the California Action, with prejudice and without costs, within ten (10) business days of the effective date of the Plan.

7. <u>No Transfer</u>. The NCUAB represents that it has not sold, assigned, or otherwise transferred the NCUAB Claims or any of the claims that are the subject of this Stipulation to a third party and that it has full power and authority to enter into this Stipulation.

8. <u>Entire Agreement</u>. This Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.

9. <u>No Reliance</u>. Each Party acknowledges and agrees that it has not relied on any statement or representation of any other Party, person, or entity in determining to enter into this Stipulation.

10. <u>No Admission</u>. Each Party acknowledges and agrees that nothing in this Stipulation constitutes an admission or concession of any legal or factual issue raised in any claim asserted by the NCUAB.

11. <u>Costs and Expenses</u>. Each Party agrees to bear its own costs, expenses, and attorneys' fees incurred in connection with the negotiations related to and the preparation of this Stipulation and to not seek from each other reimbursement of any such costs, expenses, or attorneys' fees.

12. <u>Waiver of Rights</u>. This paragraph constitutes a waiver of Section 1542 of the California Civil Code and any similar or comparable provisions, rights and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law, which provide:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

13.   Jurisdiction and Choice of Law. The Bankruptcy Court shall retain jurisdiction over the implementation of this Stipulation and any disputes arising thereunder. This Stipulation shall be governed by and interpreted in accordance with the laws of the state of New York, without regard to principles of conflicts of laws of that would require the application of laws of another jurisdiction.

14.   Representative Capacity. Each person executing this Stipulation in a representative capacity represents and warrants that he or she is empowered to do so.

15.   Court Approval. The Parties hereby agree to the entry of an order by the Bankruptcy Court approving this Stipulation. In the event this Stipulation is not approved by the Bankruptcy Court, or the Plan does not become effective, this Stipulation shall be of no force and effect. The Parties reserve all of their rights and defenses with respect to the claims resolved by this Stipulation and the proposed settlement shall not constitute an admission by the Parties regarding the validity or amount of the claims resolved by this Stipulation or any legal arguments related thereto.

16.   Claims Register. The Debtors, the Debtors' claims agent, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

Agreed to this 2 of October, 2013:

| ZUCKERMAN SPAEDER LLP | MORRISON & FOERSTER LLP |
|---|---|
| By: /s/ Andrew N. Goldfarb | By: /s/ Gary S. Lee |
| Nelson C. Cohen | Gary S. Lee |
| Graeme W. Bush | Joel C. Haims |
| Andrew N. Goldfarb | 1290 Avenue of the Americas |
| 1800 M Street, NW | New York, New York 10104 |
| Washington, DC 20036 | Tel: (212) 468-8000 |
| Tel: (202) 778-1800 | Fax: (212) 468-7900 |
| Fax: (202) 822-8106 | |
| *Counsel for National Credit Union Administration Board* | *Counsel for the Debtors and Debtors-in-Possession* |

Acknowledged and agreed:

**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**

By: /s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Douglas H. Mannal
Andrew M. Dove
Tel: (212) 715-9100
Fax: (212) 715-8000

*Counsel for Official Committee of Unsecured
Creditors*

**SO ORDERED**:

Dated: _____, 2013
       New York, New York

                                        THE HONORABLE MARTIN GLENN
                                        UNITED STATES BANKRUPTCY JUDGE