SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Robert D. Nosek
Christopher J. Rubino

*Special Counsel for Borrower Issues to the*
*Official Committee of Unsecured Creditors*
*of Residential Capital, LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:                                                           Chapter 11
                                                                 Case No. 12-12020 (MG)
RESIDENTIAL CAPITAL, LLC, et al.
                                                                 (Jointly Administered)
                                        Debtors.

-------------------------------------------------------------------x

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS' BRIEF TO THE COURT
GENERALLY ADDRESSING CAUSES OF ACTION AND CLAIMS
FOR RELIEF RELATED TO THE DENIAL OF A LOAN MODIFICATION**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ....................................................................................... 1

I.  Potential Federal Claims for Relief Relating to the Denial of a
Loan Modification ...................................................................................... 2

    A.  The Equal Credit Opportunity Act (ECOA) ...................................... 3

    B.  The Fair Debt Collection Practices Act (FDCPA) .............................. 5

    C.  Real Estate Settlement Procedures Act (RESPA) .............................. 6

    D.  The Fair Credit Reporting Act (FCRA) ............................................. 9

    E.  Breach of Service Participation Agreements .................................... 10

II.  Potential Claims for Relief Relating to the Denial of a Loan
Modification Common to Most States ...................................................... 11

    A.  Breach of Contract ........................................................................... 11

    B.  Promissory Estoppel ......................................................................... 14

    C.  Negligence ........................................................................................ 16

    D.  Fraudulent Misrepresentation and Fraudulent Concealment ........... 19

    E.  Home Owners Loan Act (HOLA) Preemption .................................. 21

III.  State-Specific Claims and Defenses ........................................................ 23

    A.  Alabama ............................................................................................ 23

    B.  Arizona ............................................................................................. 23

    C.  California .......................................................................................... 23

    D.  Florida .............................................................................................. 29

    E.  Illinois .............................................................................................. 29

                 Wigod v. Wells Fargo, NA .................................................. 30

    F.  Maryland .......................................................................................... 39

    G.  Massachusetts ................................................................................... 40

    H.  Michigan ........................................................................................... 40

    I.  Minnesota ......................................................................................... 41

    J.  Nevada .............................................................................................. 41

    K.  New York .......................................................................................... 42

    L.  Pennsylvania .................................................................................... 42

    M.  Texas ................................................................................................. 43

    N.  Virginia ............................................................................................. 44

Conclusion ...................................................................................................... 44

CR/1417044.5/062429

# TABLE OF AUTHORITIES

## Cases

*Acito v. IMCERA Group,*
    47 F.3d 47 (2d Cir. N.Y. 1995) ............................................................................ 28

*Allen v. CitiMortgage, Inc.,*
    2011 U.S. Dist. LEXIS 86077 (D. Md. Aug. 4, 2011) .................................... 54, 55

*Allen v. United Fin. Mortg. Corp.,*
    660 F.Supp.2d 1089 (N.D.Cal.2009) ...................................................................... 10

*Ansanelli v. JPMorgan Chase Bank, N.A.,*
    2011 U.S. Dist. LEXIS 32350 (N.D. Cal. Mar. 28, 2011).................................. 26, 35, 36, 37

*Austero v. Aurora Loan Servs.,*
    2011 U.S. Dist. LEXIS 85356 (N.D. Cal. Aug. 3, 2011)........................................ 28

*Babb v. Wachovia Mortg., FSB,*
    2013 U.S. Dist. LEXIS 106228 (C.D. Cal. July 26, 2013) .................................. 31, 32, 53, 54

*Bank of Am. v. City & Cnty. of San Francisco,*
    309 F.3d 551 (9th Cir. 2002) ................................................................................. 31

*Bardin v. Daimler Chrysler Corp.,*
    136 Cal. App. 4th 1255 (2006) ......................................................................... 39, 40

*Barone v. Chase Home Fin. LLC,*
    2011 U.S. Dist. LEXIS 93255 (D. Ariz. Aug. 19, 2011)........................................ 34

*Belyea v. Litton Loan Servicing, LLP,*
    2011 U.S. Dist. LEXIS 77734 (D. Mass. July 15, 2011)................................... 18, 20

*Bosque v. Wells Fargo Bank, N.A.,*
    762 F. Supp. 2d 342 (D. Mass. 2011) .................................................................... 20

*Bourdelais v. JPMorgan Chase Bank, N.A.,*
    2011 U.S. Dist. LEXIS 35507 (E.D. Va. Apr. 1, 2011)..................................... 3, 62

*Bradford Press, Inc. v. Maska U.S., Inc. (In re SLM Int'l, Inc.),*
    1999 Bankr. LEXIS 2048 (Bankr. D. Vt. July 30, 1999) ......................................... 7

*Cade v. BAC Home Loans Servicing, LP,*
    2011 U.S. Dist. LEXIS 65045 (S.D. Tex. June 20, 2011) ...................................... 61

*Chern v. Bank of America,*
    15 Cal. 3d 866 (1976) ............................................................................................ 41

CR/1417044.5/062429

*Chiang v. Verizon New England Inc.*,
    595 F.3d 26 (1st Cir. 2010) ................................................................. 14

*Connick v. Suzuki Motor Co.*,
    174 Ill. 2d 482 (Ill. 1996) ................................................................... 30

*Consumer Solutions REO, LLC v. Hillery*,
    658 F. Supp. 2d 1002 (N.D. Cal. 2009) ................................................ 11

*Cortez v. Trans Union*, LLC,
    617 F.3d 688 (3d Cir. 2010) ................................................................ 14

*Costigan v. CitiMortgage, Inc.*,
    2011 U.S. Dist. LEXIS 84860 (S.D.N.Y. Aug. 1, 2011) ...................... 59

*Davis v. CitiMortgage, Inc.*,
    2011 U.S. Dist. LEXIS 25179 (E.D. Mich. Mar. 11, 2011) ........................ passim

*Drum v. San Fernando Valley Bar Ass'n*,
    182 Cal. App. 4th 247 (2010) .............................................................. 39

*Echeverria v. BAC Home Loans Servicing, LP*,
    900 F. Supp. 2d 1299 (M.D. Fla. 2012) ........................................ 28, 43

*Edwards v. Wyatt*,
    335 F.3d 261 (3d Cir. 2003) ................................................................ 22

*Eichholz v. Wells Fargo Bank, NA.*,
    2011 U.S. Dist. LEXIS 128455 ( E.D. Mich. Nov. 7, 2011) .............. 5, 6, 56

*Escobedo v. Countrywide*,
    2009 U.S. Dist. LEXIS 117017 (S.D. Cal. Dec. 15, 2009) ................... 16

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (U.S. 2008) ...................................................................... 7

*Fischl v. Gen. Motors Acceptance Corp.*,
    708 F.2d 143 (5th Cir. 1983) ................................................................. 3

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995) ............................................................................ 52

*Frison v. WMC Mortg. Corp.*,
    2011 U.S. Dist. LEXIS 112219 (S.D. Cal. Sept. 29, 2011) ................. 13

*Fuges v. Southwest Fin. Servs., Ltd.*,
    707 F.3d 241 (3d Cir. 2012) ................................................................ 14

CR/1417044.5/062429

*Gabali v. Onewest Bank,*
    2013 U.S. Dist. LEXIS 47193 (N.D. Cal. Mar. 29, 2013).......................................... 33, 40, 41

*Gelman v. State Farm Mut. Auto Ins. Co.,*
    583 F.3d 187 (3d Cir. 2009)........................................................................................ 14

*Givant v. Vitek Real Estate Indus. Grp, Inc.,*
    2012 U.S. Dist. LEXIS 163692 (E.D.Cal. Nov.15, 2012) ................................................... 12

*Gonzales v. Bank of Am., N.A.,*
    2013 U.S. Dist. LEXIS 3877 (S.D. Tex. Jan. 10, 2013) ........................................... 25, 60, 61

*Gorman v. Wolpoff & Abramson, LLP,*
    584 F.3d 1147 (9th Cir. 2009) ................................................................................. 15

*Hayes v. Bank of Am. Corp.,*
    2012 U.S. Dist. LEXIS 135191, (D. Nev. Sept. 21, 2012) .............................................. 57, 58

*Helmus v. Chase Home Fin., LLC,*
    890 F. Supp. 2d 806 (W.D. Mich. 2012) ........................................................................ 10, 13

*Herold v. U.S. Bank, N.A.,*
    2011 U.S. Dist. LEXIS 103501 (D. Ariz. Sept. 13, 2011)..................................................... 34

*Hobbs v. Wells Fargo Bank N.A.,*
    2013 U.S. Dist. LEXIS 89274 (N.D. Cal. June 24, 2013) ...................................................... 8

*Huertas v. Galaxy Asset Mgmt.,*
    641 F.3d 28 (3d Cir. 2011)............................................................................................ 14

*Hunt v. U.S. Tobacco Co.,*
    538 F.3d 217 (3d Cir. 2008).......................................................................................... 60

*Huxtable v. Geithner,*
    2010 U.S. Dist. LEXIS 91382 .................................................................................... 2

*In re Johns-Manville Corp.,*
    68 B.R. 618 (Bankr. S.D.N.Y. 1986).............................................................................. 7

*JP Morgan Chase Bank, N.A. v. Horvath,*
    862 F. Supp. 2d 744 (S.D. Ohio 2012) ........................................................................ 2

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ................................................................................... 39

*Labrant v. Mortgage Elec. Registration Sys.,*
    870 F. Supp. 2d 671 (D. Minn. 2012)....................................................................... 19, 23, 57

CR/1417044.5/062429

*Lal v. American Home Servicing, Inc.*,
    680 F.Supp.2d 1218 (E.D.Cal.2010) ................................................................ 12

*Lawther v. OneWest Bank, FSB*,
    2012 U.S. Dist. LEXIS 12062 (N.D. Cal. Feb. 1, 2012) ...................................... 38

*Lowry v. Emc Mortg. Corp.*,
    2012 U.S. Dist. LEXIS 111076 (D. Ariz. Aug. 8, 2012) ................................. 34, 35

*McCormick v. US Bank, N.A.*,
    2013 U.S. Dist. LEXIS 34994 (S.D. Cal. Mar. 12, 2013) .................................... 26

*McFadden v. Fannie Mae*,
    2012 U.S. Dist. LEXIS 2391 (W.D. VA. Jan. 9, 2012) ....................... 20, 25, 29, 62

*Merrill v. Navegar, Inc.*,
    26 Cal. 4th 465 (2001) ...................................................................................... 24

*Nymark v. Heart Fed. Sav. & Loan Ass'n*,
    231 Cal. App. 3d 1089 (1991) ........................................................................... 24

*Ocwen Loan Servicing, LLC Mortg. Servicing Litigation*,
    491 F.3d 638 (7th Cir. 2007) ............................................................................. 52

*Okoye v. Bank of N.Y. Mellon*,
    2011 U.S. Dist. LEXIS 82769 (D. Mass. July 28, 2011) ................................ 55, 56

*Olsen v. Breeze*,
    48 Cal. App. 4th 608 (1996) .............................................................................. 38

*Owens v. Bank of America, N.A.*,
    2013 U.S. Dist. LEXIS 61801 (N.D. Cal. Apr. 30, 2013) ..................................... 6

*Ozoria v. Deutsche Bank Trust Co. Americas*,
    2011 U.S. Dist. LEXIS 36092 (S.D. Fla. Mar. 31, 2011) ...................................... 2

*Pandit v. Saxon Mortg. Servs.*, 2012 U.S. Dist. LEXIS 133292, 8-14 (E.D.N.Y. Sept. 17, 2012)
    ..................................................................................................................... 54, 59

*Paredes v. Sallie Mae*,
    2011 U.S. Dist. LEXIS 132600 (D.N.J. Nov. 16, 2011) ...................................... 15

*Pease v. Wachovia SBA Lending, Inc.*,
    416 Md. 211 (Ct. of App. Md. 2009) .................................................................. 55

*People v. McKale*,
    25 Cal.3d 626 (1979) ........................................................................................ 38

v

*Phillips v. Bank of Am. Corp.*,
   2010 U.S. Dist. LEXIS 35131 (N.D. Cal. April 9, 2010) ...................................................... 11

*Phu Van Nguyen v. Bac Home Loan Servs., LP*,
   2010 U.S. Dist. LEXIS 105704 (N.D. Cal. Oct. 1, 2010)...................................................... 16

*Phu Van Nguyen v. Bac Home Loan Servs., LP*,
   2010 U.S. Dist. LEXIS 105704 (N.D. Cal. Oct. 1, 2010)........................................................ 2

*Piotrowski v. Wells Fargo Bank, N.A.*,
   2013 U.S. Dist. LEXIS 14438 (D. Md. Jan. 22, 2013) ............................................................ 4

*Pitre v. Wells Fargo Bank, N.A.*,
   2013 U.S. Dist. LEXIS 127578 (N.D. Cal. Sept. 6, 2013) ............................................. 24, 26

*Pliam v. Cendant Mortg. Corp.*,
   2012 U.S. Dist. LEXIS 58222 (D. Minn. Apr. 26, 2012)...................................................... 12

*Rabinowitz v. Fed. Home Loan Mortg. Corp.*,
   2012 U.S. Dist. LEXIS 143131 (S.D. Tex. Sept. 25, 2012) .................................................. 60

*Raedeke v. Gibralter Sav. & Loan Assn.*,
   10 Cal. 3d 665 (Cal. 1974)................................................................................................... 36

*Rank v. Nimmo*,
   677 F.2d 692 (9th Cir. 1982) ................................................................................................. 2

*Robinson v. Toyota Motor Credit Corp.*,
   201 Ill. 2d 403 (Ill. 2002)..................................................................................................... 44

*Rockridge Trust v. Wells Fargo, N.A.*,
   2013 U.S. Dist. LEXIS 139606 (N.D. Cal. Sept. 25, 2013) ........................................... passim

*Sabherwal v. Bank of New York Mellon*,
   2013 U.S. Dist. LEXIS 129203 (S.D. Cal. Sept. 10, 2013).................................................. 42

*Saucedo v. Bank of Am., N.A.*,
   2011 U.S. Dist. LEXIS 138824 (D. Or. Dec. 1, 2011) .................................................. 10, 11

*Schlegel v. Wells Fargo Bank, NA*,
   720 F.3d 1204 (9th Cir. 2013); ......................................................................................... 3, 4

*Senter v. JPMorgan Chase Bank, N.A.*,
   810 F. Supp. 2d 1339 (S.D. Fla. 2011) ........................................................................... 23, 43

*Sherman v. Litton Loan Servicing, L.P.*,
   796 F. Supp. 2d 753 (E.D. Va. 2011) .................................................................................. 25

CR/1417044.5/062429

*Siegel v. Shell Oil Co.*,
    612 F.3d 932 (7th Cir. 2010) ............................................................. 44

*Singh v. Wells Fargo Bank*,
    2011 U.S. Dist. LEXIS 3563 (E.D. Cal. Jan. 7, 2011)............................................ 2

*Siwulec v. Chase Home Fin., LLC*,
    2010 U.S. Dist. LEXIS 128942 (D.N.J. Dec. 7, 2010) ...................................... 8, 9

*Slimm v. Bank of Am. Corp.*,
    2013 U.S. Dist. LEXIS 62849 (D.N.J. May 2, 2013) ............................... 8, 9, 15, 16

*Small v. Seterus, Inc. (In re Small)*,
    2012 Bankr. LEXIS 2668 (Bankr. S.D. Ala. June 12, 2012).......................... 18, 34

*Smith v. Saxon Mortg. Servs.*,
    2013 U.S. Dist. LEXIS 66101 (E.D. Pa. May 9, 2013) ................................. passim

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009).................................................................. 59

*Tamburri v. Suntrust Mortg., Inc.*,
    2011 U.S. Dist. LEXIS 144442 (N.D. Cal. Dec. 15, 2011)............................... 9, 11

*Thomasson v. First Horizon Home Loans*,
    2011 U.S. Dist. LEXIS 44541 (D. Ariz. Apr. 21, 2011)...................................... 35

*Tubalinal v. BAC Home Loans Servicing, L.P.*,
    2012 U.S. Dist. LEXIS 99593 (N.D. Ill. July 18, 2012)...................................... 10

*U.S. Capital Partners, LLC v. AHMSA Intern., Inc.*,
    2013 U.S. Dist. LEXIS 20245 (N.D. Cal. Feb. 14, 2013) ................................... 37

*Urbano v. Bank of Am., N.A.*,
    2013 U.S. Dist. LEXIS 12001 (E.D. Cal. Jan. 28, 2013)....................... 9, 11, 12, 13

*Viets v. Wachovia Mortgage, FSB*,
    2011 U.S. Dist. LEXIS 143941 (D. Nev. Dec. 12, 2011)..................................... 58

*Villa v. Wells Fargo Bank*,
    2010 U.S. Dist. LEXIS 23741 (S. D. Cal. March 15, 2010).................................. 16

*Watts v. JP Morgan Chase Bank, N.A.*,
    2012 U.S. Dist. LEXIS 119980 (N.D. Cal. Aug. 22, 2012)..................................... 5

*Weidner v. Karlin*,
    402 Ill. App. 3d 1084 (Ill. App. 2010) ................................................... 30

CR/1417044.5/062429

*Weinstat v. Dentsply Intern., Inc.*,
180 Cal. App. 4th 1213 (2010) ................................................................................ 38

*Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.*,
196 Cal.App.4th 1559 (2011) .................................................................................. 37

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. Ill. 2012) ...................................................................... passim

*Williams v. Geithner*,
2009 U.S. Dist. LEXIS 104096 (D. Minn. Nov. 9, 2009) ........................................ 2

*Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*,
536 F.3d 663 (7th Cir. 2008) ................................................................................. 29

*Young v. Wells Fargo Bank*, N.A.,
717 F.3d 224 (1st Cir. Mass. 2013) ........................................................................ 56

*Zendejas v. GMAC Wholesale Mortg. Corp.*,
2010 U.S. Dist. LEXIS 59793 (E.D. Cal. Jun. 16, 2010) ........................................ 16

**Statutes**

12 U.S.C. § 2605 ............................................................................................. 10, 11, 13

15 U.S.C. § 1681 ...................................................................................................... 16

15 U.S.C. § 1691 ........................................................................................ 4, 5, 7, 8, 16

15 U.S.C. §1692 ......................................................................................................... 8

Cal. Bus. & Prof. Code § 17200 ............................................................................. 39

Cal. Bus. & Prof. Code § 17204 ............................................................................. 39

Cal. Bus. & Prof. Code § 17500 ............................................................................. 42

Federal Rule 9(b) ......................................................................................... 30, 31, 40, 55

CR/1417044.5/062429

TO:     THE HONORABLE MARTIN GLENN
        UNITED STATES BANKRUPTCY JUDGE:

SilvermanAcampora LLP ("SilvermanAcampora"), as Special Counsel for borrower issues to the Official Committee of Unsecured Creditors of Residential Capital, LLC, *et al.*, submits this brief (the "Brief") in accordance with this Court's order, dated October 18, 2013, directing SilvermanAcampora to advise the Court of the existence, if any, of potential borrower causes of action and claims for relief resulting from a denial of a loan modification. SilvermanAcampora respectfully states and sets forth as follows:

## Preliminary Statement

1.      After a comprehensive analysis of both federal and state statutes and case law from various jurisdictions across the country, SilvermanAcampora hereby advises the Court that, as discussed below, many courts have, at least at the pleading stage, recognized several causes of action and claims for relief based on allegations of a denial of a loan modification.  It is noted that in the body of case law reviewed, the courts involved almost always determined the existence and viability of such claims in ruling on motions to dismiss, with a handful of courts rendering opinions considering a motion for summary judgment.

2.      Generally, federal law may provide a borrower who was denied a loan modification with limited claims, while more relief is available under state law.  Most states treat claims for the denial of a loan modification similarly, with one state, California, recognizing a multitude of claims for borrowers to plead and attempt to prove in connection with loan modification denials.

3.      The analysis that follows will first focus on the claims asserted under federal law and will conclude by discussing the claims available under the laws of various states.  The discussion on state law claims analyzes the laws of fourteen (14) states that were determined to

1

have well developed case law or enacted specific statutes on this issue, as well as several other states that regularly appear on lists of states with the most number of foreclosures in a given year.

## I.    POTENTIAL FEDERAL CLAIMS FOR RELIEF RELATING TO THE DENIAL OF A LOAN MODIFICATION

4.    The claims most commonly asserted under federal law[1] for a denial of a loan modification are grounded in the (1) Equal Credit Opportunity Act (the "ECOA"), (2) Fair Debt Collection Practices Act (the "FDCPA"), (3) Real Estate Settlement Procedures Act ("RESPA"), and/or (4) Fair Credit Reporting Act (the "FCRA").[2]

5.    Courts deciding whether the above cited statutory claims can or should survive a motion to dismiss have rarely permitted such claims to survive, although claims pled under the ECOA had a slightly higher survivability rate under relevant case law.

### A.    The Equal Credit Opportunity Act (ECOA)

6.    A borrower may have an ECOA claim when they can plead that the borrower (i) was denied a loan modification, (ii) is current on payments under the mortgage, and (iii) was not given notice of the reasons for the denial within 30 days of the denial. *See Schlegel v. Wells*

---

[1] Most complaints based on a denial for a loan modification are filed in federal court, as at least one of the federal claims discussed herein are ordinarily asserted in the complaint. However, the complaint will almost always include additional claims based on state law. Such state law claims are discussed later in this Brief.

[2] It is settled law that the Home Affordable Modification Program ("HAMP") does not provide borrowers a private cause of action for the denial of a loan modification. *See, e.g., JP Morgan Chase Bank, N.A. v. Horvath*, 862 F. Supp. 2d 744, 747 (S.D. Ohio 2012); *Ozoria v. Deutsche Bank Trust Co. Americas*, No. 10-24070, 2011 U.S. Dist. LEXIS 36092, at *4–5 (S.D. Fla. Mar. 31, 2011); *Singh v. Wells Fargo Bank*, No. 10-cv-1659, 2011 U.S. Dist. LEXIS 3563, at *23 (E.D. Cal. Jan. 7, 2011) ("[I]t is well established that there is no private cause of action under HAMP."). Additionally, borrowers cannot assert constitutional violations for a denial of a loan modification because the servicer is not a government actor, and HAMP does not confer a protected property interest. *See Rank v. Nimmo*, 677 F.2d 692, 702 (9th Cir. 1982) (asserting that a federal home loan guaranty is "insufficient to convert the actions of the private lender into governmental action" for purposes of a constitutional violation); *Phu Van Nguyen v. Bac Home Loan Servs., LP*, No. 11-01712, 2010 U.S. Dist. LEXIS 105704, 14-15 (N.D. Cal. Oct. 1, 2010) (same); *see also* See *Huxtable v. Geithner*, No. 09cv1846 BTM (WVG), 2010 U.S. Dist. LEXIS 91382, *14 ("Congress did not intend to create an entitlement or protected property interest in HAMP modifications"); *Williams v. Geithner*, No. 09-1959, 2009 U.S. Dist. LEXIS 104096, 2009 WL 3757380, at *6-7 (D. Minn. Nov. 9, 2009) (HAMP regulations "did not intend to create a property interest in loan modification for mortgages in default."). Thus, all claims for a denial of a loan modification must be based on a theory of liability other than HAMP.

2

*Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013); *Bourdelais v. JPMorgan Chase Bank,*

*N.A.*, No. 10-cv-670, 2011 U.S. Dist. LEXIS 35507, 26-30 (E.D. Va. Apr. 1, 2011) (a borrower

may have an ECOA claim when the borrower has not missed payments and lender did not give

borrower adequate notice of denial and reasons for denial).

7.     The ECOA[3] specifically states, along with the accompanying Regulation B, 12

CFR §202 *et seq.*, that;

> Each applicant *against whom adverse action is taken* shall be entitled to a
> *statement of reasons for such action* from the creditor. A creditor satisfies
> this obligation by — (A) *providing statements of reasons in writing* as a
> matter of course to applicants against whom adverse action is taken; or (B)
> *giving written notification* of adverse action which discloses (i) the
> *applicant's right to a statement of reasons* within thirty days after receipt
> by the creditor of a request made within sixty days after such notification,
> and (ii) *the identity of the person or office from which such statement may
> be obtained.* Such statement may be given orally if the written notification
> advises the applicant of his right to have the statement of reasons
> confirmed in writing on written request.

*Piotrowski v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 14438, at *19 (D. Md. Jan. 22,

2013) (citing 15 U.S.C. § 1691(d)(2)) (emphasis supplied).

8.     Many plaintiffs alleging claims relating to a denial of a loan modification assert

that the ECOA is implicated when a consumer applies for a loan modification under HAMP and

the modification is denied. A number of courts have agreed, holding that the denial of a loan

modification under HAMP does implicate the ECOA.  *See, e.g., Schlegel*, 720 F.3d at 1208;

*Bourdelais*, 2011 U.S. Dist. LEXIS 35507, at *26-30; *Davis*, 2011 U.S. Dist. LEXIS 25179, at

*6-9.

---

[3] The ECOA was originally enacted in 1974 to prohibit discrimination in credit transactions, but has since
been amended to now also require a creditor to give written notice to a consumer of any adverse action
taken by the creditor against the consumer. *See Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143,
146 (5th Cir. 1983), *Davis v. CitiMortgage, Inc.*, No. 10-12136, 2011 U.S. Dist. LEXIS 25179, 6-9 (E.D.
Mich. Mar. 11, 2011).

3

9.      In ruling on ECOA claims, courts have determined that the denial of a loan modification can be an "adverse action" under the ECOA that requires a lender to notify that borrower of the reason for the denial.  *See Schlegel*, 720 F.3d at 1208; *Watts v. JP Morgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 119980, 2012 WL 3638537, at *1-3 (N.D. Cal. Aug. 22, 2012) (granting partial summary judgment in the plaintiffs' favor on an ECOA claim when it was undisputed that the bank's written rejection of a loan modification came significantly later than thirty days after the completed application and when the plaintiffs were not in default until well after the application was completed and denied).

10.     Importantly, however, the denial of a loan modification is not considered an "adverse action" if the borrower is "delinquent or otherwise in default" under the mortgage. 15 U.S.C. § 1691(d)(6); *see also Eichholz v. Wells Fargo Bank, NA.*, No. 10-cv-13622, 2011 U.S. Dist. LEXIS 128455, 27-29 ( E.D. Mich. Nov. 7, 2011).  The default or delinquent status of the borrower is determined at the time the lender denied the borrower's loan modification and not at the time the borrower applies for the modification.  *See Eichholz*, 2011 U.S. Dist. LEXIS 128455, at *27-29; *Davis*, 2011 U.S. Dist. LEXIS 25179, at *2.

11.     Thus, the borrower must have been current on his or her payments at the time of the denial of the loan modification to trigger the notice requirement under the ECOA.  *See Owens v. Bank of America, N.A.*, 2013 U.S. Dist. LEXIS 61801, 2013 WL 1820769, at *5 (N.D. Cal. Apr. 30, 2013) (granting motion to dismiss without leave to amend on an ECOA claim for a denial of a loan modification because Plaintiffs were in default); *Eichholz*, 2011 U.S. Dist. LEXIS 128455, at *27-29; *Davis*, 2011 U.S. Dist. LEXIS 25179, at *2.

12.     If the borrower succeeds on an ECOA claim, the statute provides for damages, including:  (1) actual damages from the failure to give notice, (2) punitive damages in the

4

amount of up to $10,000.00 and (3) attorney's fees of the borrower's attorney. *See* 15 U.S.C. §1691(e), (a–c).  However, if the ECOA is violated by a creditor who believed, in good faith, that it was complying with the ECOA, then no liability shall be imposed on the creditor. *See* 15 U.S.C. §1691(e)(e).

13.    In summation, borrower claims under the ECOA may be successful only in a very limited set of circumstances.  Even if a borrower could establish an ECOA claim, it may be difficult for borrowers to plead and prove actual damages arising from the failure to give notice, leaving only punitive damages and attorney's fees.  Because punitive damages are generally awarded to deter a company from committing future bad acts, *see Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492-93 (U.S. 2008), they are generally not available in bankruptcy.  Awarding such damages in a bankruptcy liquidation case would only result in reduced creditor recovery, which is a punishment of the debtor's estate, and not deterrence against future bad acts. *See Bradford Press, Inc. v. Maska U.S., Inc. (In re SLM Int'l, Inc.)*, Adv. Proc. No. 98-1042, 1999 Bankr. LEXIS 2048, at *40 (Bankr. D. Vt. July 30, 1999); *In re Johns-Manville Corp.*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987).  Accordingly, even if a borrower is successful under the ECOA, it is unlikely that the borrower themselves would receive a recovery.

### B. The Fair Debt Collection Practices Act (FDCPA)

14.    Many borrowers have also asserted claims for violations of the FDCPA, however those claims have generally been found to lack merit.

15.    The FDCPA prohibits abusive, deceptive, and unfair debt collection practices used by debt collectors. *See* 15 U.S.C. §1692, *et seq.*  In order to have an FDCPA claim, the borrower must show that (1) the defendant is a "debt collector," and (2) the defendant debt

5

collector engaged in prohibited practices in an attempt to collect a debt.  *Slimm v. Bank of Am. Corp.*, 2013 U.S. Dist. LEXIS 62849, at *13-14 (D.N.J. May 2, 2013); *Siwulec v. Chase Home Fin., LLC*, No. Civ. A. 10-1875, 2010 U.S. Dist. LEXIS 128942, 2010 WL 5071353, at *2-3 (D.N.J. Dec. 7, 2010).

16.    Although the actions taken in denying a loan modification may, under certain circumstances, constitute prohibited debt collection practices, a servicer of a mortgage is generally not considered to be a debt collector under the FDCPA.[4]  *See Hobbs v. Wells Fargo Bank N.A.*, 2013 U.S. Dist. LEXIS 89274 (N.D. Cal. June 24, 2013); *Slimm*, 2013 U.S. Dist. LEXIS 62849, at *17-20; *Siwulec*, 2010 U.S. Dist. LEXIS 128942 at *4-6.

## C.  Real Estate Settlement Procedures Act (RESPA)

17.    Borrowers alleging a lender's violation of RESPA focus on a specific provision that requires the lender to respond to a "qualified written request" ("QWR") of the borrower within a specified amount of time.

18.    For a RESPA violation involving QWR, a borrower must show that the loan servicer[5] breached its obligation to "provide a written response acknowledging receipt of the correspondence within 5 days" after receiving a QWR, or that the servicer failed to "make appropriate corrections in the account of the borrower" within 30 days of receiving the QWR. 12 U.S.C. § 2605 (e)(1)(A), (e)(2)(A).  The borrower must also show that they suffered actual

---

[4] In the rare instance when the servicer obtains the rights to service a loan while the loan is in default, the servicer may, however, be considered a debt collector for the purposes of the FDCPA. *See Hobbs*, 2013 U.S. Dist. LEXIS 89274; *Slimm*, 2013 U.S. Dist. LEXIS 62849, at *17-20.  Thus, a borrower claim under the FDCPA may exist based on the denial of a loan modification, but only if the borrower can plead and prove that its servicer (i) obtained the servicing rights while the borrower's mortgage was in default and (ii) engaged in prohibited debt collection practices when denying the loan modification.

[5] RESPA provides that "'servicing' means receiving any scheduled periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." *Tamburri v. Suntrust Mortg., Inc.*, 2011 U.S. Dist. LEXIS 144442, at *20 (N.D. Cal. Dec. 15, 2011) (quoting 12 U.S.C. §2605(i)).

CR/1417044.5/062429

pecuniary loss from the servicer's failure to respond to the QWR in order to have a valid RESPA claim. *Urbano v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 12001, 19-20 (E.D. Cal. Jan. 28, 2013); *Allen v. United Fin. Mortg. Corp.*, 660 F.Supp.2d 1089, 1097 (N.D.Cal.2009).

19.     As it relates to a mortgage servicer, a QWR is a request from the borrower that (1) relates to the servicing of the mortgage, (2) enables the servicer to identify the identity of the borrower and the borrower's account, and (3) includes a statement of the reasons that the borrower believes the account is in error or states in detail the information sought by the borrower. *See* 12 U.S.C. § 2605(e)(1)(A). *See also Tubalinal v. BAC Home Loans Servicing, L.P.*, 2012 U.S. Dist. LEXIS 99593, 30-31 (N.D. Ill. July 18, 2012); *Saucedo v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 138824, at *4–5 (D. Or. Dec. 1, 2011). Typically, servicing-related QWRs involve requests related to the servicing of the loan during the period leading up to the modification trial period or to the accuracy of statements made by the servicer during the modification trial period ("Servicing-Related QWR").

20.     Accordingly, some courts have found that sufficiently pleading a Servicing-Related QWR may suffice to survive a motion to dismiss. *See Helmus v. Chase Home Fin., LLC*, 890 F. Supp. 2d 806, 816-817 (W.D. Mich. 2012) (inquiries regarding whether payments had been applied correctly prior to the Temporary Payment Plan for a modification and inquiries regarding accuracies of lender's statements can qualify as a QWR); *Tamburri*, 2011 U.S. Dist. LEXIS 144442, at *20-23; *see also Urbano*, 2013 U.S. Dist. LEXIS 12001, at *19-23 (assuming request was a QWR, but dismissing RESPA claim on other grounds). Other courts, however, have unequivocally held that a request for a loan modification does not amount to a QWR because it does not relate to the "servicing of the loan" as defined by the statute. *See Saucedo*, 2011 U.S. Dist. LEXIS 138824, at *4–5; *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp.

CR/1417044.5/062429

2d 1002, 1014 (N.D. Cal. 2009); *Phillips v. Bank of Am. Corp.*, 2010 U.S. Dist. LEXIS 35131, at

*4 (N.D. Cal. April 9, 2010).

21.    Even if a borrower can establish that the QWR to the servicer relates to the

servicing of the loan during a trial modification period and the other elements for liability, the

borrower must also plead and prove that they suffered actual pecuniary damage resulting from

the servicer's failure to respond.  Borrowers have had little success, however, in pleading those

damages because the damages necessary under RESPA must be directly caused by the lender's

failure to respond to the QWR.  *See Urbano*, 2013 U.S. Dist. LEXIS 12001, at *19-23 ("These

'actual pecuniary damages' must, by the plain terms of § 2605(f)(1)(A), be a 'result of the

failure,' i.e. must be caused by Defendants' violation of RESPA"); *Pliam v. Cendant Mortg.

Corp.*, 2012 U.S. Dist. LEXIS 58222, at *3 (D. Minn. Apr. 26, 2012) ("While RESPA itself does

not set a pleading standard, courts have interpreted the statute to require a showing of pecuniary

damages in order to state a claim."); *Lal v. American Home Servicing, Inc.*, 680 F.Supp.2d 1218,

1223 (E.D.Cal.2010) (finding that alleged pecuniary damages under RESPA must be "a direct

result of the failure to comply"); *Givant v. Vitek Real Estate Indus. Grp, Inc.*, 2012 U.S. Dist.

LEXIS 163692, 2012 WL 5838934, at *4 (E.D.Cal. Nov.15, 2012) ("The allegations of a RESPA

QWR claim must show that the RESPA violation proximately caused Plaintiff's damages.").

22.    Additionally, some courts have found the damages pled by borrowers to be too

speculative to have shown "actual pecuniary damage."  *See, e.g., Helmus v. Chase Home Fin.,

LLC*, 890 F. Supp. 2d 806, 816-817 (W.D. Mich. 2012) ("Plaintiffs request that this Court "enter

a judgment for damages together with interest, costs and attorney's fees[,]" in addition to

statutory damages. Such allegations are insufficient to show actual pecuniary damage."); *Frison

v. WMC Mortg. Corp.*, 2011 U.S. Dist. LEXIS 112219, 12-13 (S.D. Cal. Sept. 29, 2011) (stating,

8

while ruling on inadequacy of pled damages, that "[c]onclusory and speculative allegations about the effects of failure to respond to a QWR's "laundry list" of requests for information are insufficient."). Further, other courts have found that borrowers have been unable to successfully plead that the RESPA violation was the proximate cause of the alleged damages. *See, e.g., Urbano*, 2013 U.S. Dist. LEXIS 12001, at *19-23 ("The fatal problem with Plaintiff's claim that her inability to determine the amount Defendants allege is owed resulted in substantial fees and penalties is that she fails to allege facts sufficient to state a claim that Defendants' alleged failure to comply with RESPA caused the harm.").

23. Based on the foregoing, in order for a Borrower to establish a RESPA claim capable of surviving a motion to dismiss relating to a denial of a loan modification, the borrower would need to sufficiently plead that (1) a QWR was delivered to the servicer, (2) the request received by the servicer actually qualifies as a QWR under RESPA, (3) the servicer failed to respond or take action on the QWR in the statutorily allotted time, and (4) the failure of the servicer in taking action on the QWR was the proximate cause of actual specific pecuniary damage to the borrower.

## D. **The Fair Credit Reporting Act (FCRA)**

24. Borrowers ordinarily rely on two sub-sections of the FCRA[6] to assert claims. The first section, subsection (a) of section 1681s-2 of the FCRA, provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-

---

[6] The FCRA was enacted to protect consumers from the transmission of inaccurate information to consumer reporting agencies and to promote responsible credit reporting practices. *See Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 247 (3d Cir. 2012); *Cortez v. Trans Union*, LLC, 617 F.3d 688, 706 (3d Cir. 2010); *Gelman v. State Farm Mut. Auto Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009). The FCRA defines "consumer reporting agency" as "any person which, for monetary fees, dues, . . . regularly engages . . . in the practice of assembling or evaluating consumer credit information . . . for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. §1681a(f).

CR/1417044.5/062429

2(a)(1)(A). Although borrowers may attempt to assert this claim, similar to HAMP, subsection (a) of the FRCA does not provide for a private cause of action. *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162 (9th Cir. 2009); *Slimm*, 2013 U.S. Dist. LEXIS 62849, at *26-37. Thus, any claim asserted under subsection (a) would most probably fail.

25.    On the other hand, subsection (b) of section 1681s-2 of the FCRA does provide for a private cause of action. *See Paredes v. Sallie Mae*, 2011 U.S. Dist. LEXIS 132600 (D.N.J. Nov. 16, 2011). Subsection (b) requires lenders providing consumer reporting agencies with information to correct any inaccurate information already provided to a consumer reporting agency. *Slimm*, 2013 U.S. Dist. LEXIS 62849, at *28-30.

26.    In order for a borrower to plead and prove a subsection (b) claim under the FCRA it must show that (1) the borrower sent notice of disputed information to the consumer reporting agency, (2) the consumer reporting agency then notified the servicer who provided the information of the dispute, and (3) lender or servicer failed to investigate the alleged inaccurate information and modify any information found to be inaccurate. *Slimm*, 2013 U.S. Dist. LEXIS 62849, at *30-31.

### E.  <u>Breach of Service Participation Agreements</u>

27.    A number of borrowers have also attempted to assert claims for breach, as a third party beneficiary to the agreement, of the service participation agreement (the "SPA"), entered into by their servicers with the owner of their loan. Courts routinely dismiss these claims on the grounds that the borrower is not in privity of contract with regard to the SPA and the borrower is not an intended beneficiary. *See, e.g., Phu Van Nguyen v. Bac Home Loan Servs., LP*, 2010 U.S.

CR/1417044.5/062429

Dist. LEXIS 105704, at *13-14 (N.D. Cal. Oct. 1, 2010) (dismissing claims for breach of contract for the SPA when borrower asserted claims as the intended beneficiary of such agreement); *Escobedo v. Countrywide*, 2009 U.S. Dist. LEXIS 117017, at *3 (S.D. Cal. Dec. 15, 2009); *Villa v. Wells Fargo Bank*, 2010 U.S. Dist. LEXIS 23741, at *3 (S. D. Cal. March 15, 2010); *Zendejas v. GMAC Wholesale Mortg. Corp.*, 2010 U.S. Dist. LEXIS 59793 (E.D. Cal. Jun. 16, 2010).

28.    As discussed above, the vast majority of federal claims brought by borrowers that relate to the denial of a loan modification do not survive a motion to dismiss.

## II.    POTENTIAL CLAIMS FOR RELIEF RELATING TO THE DENIAL OF A LOAN MODIFICATION COMMON TO MOST STATES

29.    Claims asserted by borrowers in various states based on denial of loan modifications most commonly include (1) breach of contract, (2) promissory estoppel, (3) negligence, and (4) fraud and misrepresentation, or some other combination thereof.    The elements of such claims are relatively common among the states, but with some variations in application and analysis that affect outcome.    California stands out as having a fairly well developed body of law on the issue, and many states have consumer protection statutes that are often invoked but not necessarily consistent as between the states.    The laws of fourteen (14) separate states were reviewed,[7] which include states that appear to have developed case law and/or frequently appear on lists of the states with the most foreclosures over that past several years.

### A.  Breach of Contract

30.    One of the most common claims asserted by borrowers for a denial of a loan modification is for breach of a contract allegedly created during the loan modification process.

---

[7] The states discussed herein are Alabama, Arizona, California, Florida, Illinois, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New York, Pennsylvania, Texas, and Virginia.

CR/1417044.5/062429

In order for a breach of contract claim to succeed, there ordinarily needs to be a written contract stating the requirements for granting a permanent modification and all of the provisions of the contract must have been complied with by both the borrower and lender. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560–61, 564–66 (7th Cir. Ill. 2012) (holding that when the plaintiff was offered a temporary loan modification, qualified, and made payments, the lender's denial of a permanent loan modification was a valid breach of contract claim that survived a motion to dismiss even though the lender had the ability to slightly modify the terms of the permanent modification within HAMP guidelines); *Smith v. Saxon Mortg. Servs.*, 2013 U.S. Dist. LEXIS 66101, 20–23 (E.D. Pa. May 9, 2013) (holding that when the lender and borrower complied with the modification agreement and the lender denied the modification, the borrower had adequately pled breach of contract claim); *Belyea v. Litton Loan Servicing, LLP*, 2011 U.S. Dist. LEXIS 77734, at *21-27 (D. Mass. July 15, 2011) (same); *Small v. Seterus, Inc. (In re Small)*, 2012 Bankr. LEXIS 2668, at *12-13 (Bankr. S.D. Ala. June 12, 2012) (same). The operative contract is usually the temporary payment plan ("TPP") that establishes a trial period before a permanent modification is given. The existence of a TPP would probably be adequate grounds for a breach of contract claim only if it clearly sets out the requirements for granting a permanent modification.

31.    The borrower will also need to plead and prove damages as a result of the denial of the loan modification in order to prevail on a breach of contract claim. *See Smith v. Saxon*, 2013 U.S. Dist. LEXIS 66101, at *24–26. Examples of potential damages caused by the breach of the TPP in denying the permanent loan modification include (i) payment of increased interest; (ii) longer loan payoff times; (iii) higher principal balances; (iv) lost opportunity from seeking other remedies to address the default or unaffordable mortgage payments; (v) damage to the

CR/1417044.5/062429

borrower's credit; (vi) additional income tax liability; (vii) and/or the costs and expenses incurred to prevent or fight foreclosure. *See Smith v. Saxon*, 2013 U.S. Dist. LEXIS 66101, at *24–26.

32.     One of the most common defenses to a breach of contract claim in a loan modification scenario is a state's statute of frauds requiring agreements to be in writing. In many cases, the promise to grant a permanent modification is an oral promise, even if there is a written TPP. In most states,[8] the statute of frauds prevents (1) the enforcement of an oral credit agreement, or modification to such agreement, and (2) the enforcement of any oral agreement affecting real property. *See*, *e.g.*, *Labrant v. Mortgage Elec. Registration Sys.*, 870 F. Supp. 2d 671, 676–77 (D. Minn. 2012) (statute of frauds prevents the enforcement of an oral agreement relating to the extension of credit); *McFadden v. Fannie Mae*, 2012 U.S. Dist. LEXIS 2391, at *15 (W.D. VA. Jan. 9, 2012) (statute of frauds prevents the enforcement of an agreement affecting to real property). Thus, if the promise to grant a permanent modification is only made through an oral promise, then the breach of contract claim for the denial of such modification will probably fail at the pleading stage.

33.     Some courts have also stated that there can be no breach of contract claims because modified mortgage payments under the TPP cannot, by itself, constitute new consideration to create binding contract. *See, e.g., Belyea*, 2011 U.S. Dist. LEXIS 77734, at *24-26; *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342 (D. Mass. 2011). However, those courts have also held that when the borrower is obligated under the TPP "'to provide documentation of their current income, make legal representations about their personal circumstances, and agree to undergo credit counseling if requested to do so . . . . [or] make

---

[8]  California has a statute of frauds which is more liberal than most states. California's statute of frauds and its application to loan modifications will be discussed *infra*.

13

payments into a newly established escrow account'" then additional consideration has been given to create a valid contract. *Belyea*, 2011 U.S. Dist. LEXIS 77734, at *24 (quoting *Bosque*, 762 F. Supp. 2d at 352).

34.     In summation, in order to prevail on a breach of contract claim for the denial of a loan modification, the borrower must show that (1) there is a written TPP, (2) the TPP clearly establishes the requirements for when a permanent modification will be granted, (3) the TPP requires the borrower to give additional consideration beyond modified payments, (4) the borrower gave such consideration, (5) the borrower and servicer/lender complied with all of the requirements for granting a permanent modification, (6) the servicer or lender did not grant the permanent modification, and (7) the borrower was actually damaged from the denial of the permanent modification.  Because of the extremely high burden placed on borrowers to plead and prove a breach of contract claim and the complete defenses available to servicers under the laws of most states, breach of contract claims are often not viable causes of action for denial of a loan modification.  There are, however, rare exceptions, as discussed *infra* in relation to the *Wigod* case, when the borrower can adequately plead every element of a breach of contract claim.

### B.  Promissory Estoppel

35.     Many borrowers also assert promissory estoppel claims for the denial of a loan modification.  Similar to a breach of contract claim, promissory estoppel "enforces '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance . . . if injustice can be avoided only by enforcement of the promise.'" *Smith v. Saxon*, 2013 U.S. Dist. LEXIS 66101, at *27 (quoting *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003)); *see also Wigod*, 673 F.3d

14

at 568 ("To establish the elements of promissory estoppel, 'the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to [their] detriment.'") (internal citation omitted).  Thus, borrowers must plead and prove that (i) they relied upon a promise from the servicer or lender to modify the mortgage, (ii) the borrower took action based on that promise, (iii) the servicer or lender should have reasonably expected the borrower would take such action, and (iv) injustice can only be avoided if the servicer's or lender's promise to modify the mortgage is enforced.

36.    Promissory estoppel claims may survive motions to dismiss when the servicer or lender stated that it intended to modify the mortgage and the borrower made the trial payments in the TPP on time and in accordance with the terms of the TPP. *See Wigod*, 673 F.3d at 566; *Smith v. Saxon*, 2013 U.S. Dist. LEXIS 66101, at *27-29 ("We find this allegation in the Complaint, coupled with the allegation that Plaintiffs made their trial period payments on time as set forth in the TPP, are sufficient to allege that Plaintiffs relied on Saxon's promise that it would provide permanent modifications if Plaintiffs complied with their obligations under the TPP."); *see also Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1362-64 (S.D. Fla. 2011) (dismissing without prejudice borrower's promissory estoppel claim, but permitting borrower to amend complaint in order to show the reasonableness of defendant in believing borrower would have relied on the promise made by defendant).  However, as with the breach of contract claim, many courts hold that if the promise at issue is an oral promise, then the statute of frauds bars the promissory estoppel claim because the oral agreement is not enforceable.  *See e.g., Labrant v. Mortgage Elec. Registration Sys.*, 870 F. Supp. 2d 671, 679 (D. Minn. 2012).

15

37.     In summation, in order for a borrower to properly assert a promissory estoppel claim they must show that (1) the servicer or lender made an promise to the borrower, in writing, to modify the loan, (2) the borrower relied on such promise, (3) the borrower's reliance on the promise was foreseeable by the servicer or lender, and (4) the borrower relied on the promise to its detriment.  Due to the statute of frauds in most states, and the burden placed on borrowers to plead and prove that an oral promise was even made, promissory estoppel is generally not a viable cause of action for the denial of a loan modification.

### C.  <u>Negligence</u>

38.     Borrowers also assert negligence claims for the denial of their loan modification. However, much like the breach of contract claim, negligence claims in connection with a denial of a loan modification rarely, if ever, survive motions to dismiss.

39.     To adequately state a claim for negligence under state law, a borrower must allege that (1) the defendant owed a legal duty of care to the borrower, (2) the defendant breached that duty, (3) the breach was the cause of the borrower's injury, and (4) that the borrower suffered injury. *See, e.g., Rockridge Trust v. Wells Fargo, N.A.*, 2013 U.S. Dist. LEXIS 139606, 103-05 (N.D. Cal. Sept. 25, 2013); *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500, 110 Cal. Rptr.2d 370, 28 P.3d 116 (2001).  Although the elements of the borrower's negligence claim are straight forward, most claims fail because courts do not impute the necessary duty of care on the servicer or lender.

40.     Courts, almost uniformly with a few variations in several states, hold that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Rockridge Trust*, 2013 U.S. Dist. LEXIS 139606, at *121 (quoting *Nymark v. Heart Fed. Sav. &*

16

*Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-1096, 283 Cal. Rptr. 53 (1991)); *see also, e.g., Pitre v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 127578, at *7-8 (N.D. Cal. Sept. 6, 2013), *McFadden v. Fannie Mae*, No. 2012 U.S. Dist. LEXIS 2391, at *17 (W.D. VA. Jan. 9, 2012). Courts also hold that, because the modification is based in contract, the servicer does not owe the borrower a duty of care outside of the contract on which a tort claim could be based. *See Gonzales v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 3877, 7-8 (S.D. Tex. Jan. 10, 2013), *McFadden*, 2012 U.S. Dist. LEXIS 2391, at *17; *Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2d 753, 764 (E.D. Va. 2011) ("Since any obligations [the servicer] might have had in processing the [borrower's] application for a loan modification could only have arisen from the alleged contract between the parties, and thus do not flow from the common law, [the borrower] has failed to allege any duty that could serve as the basis for a negligence claim.").

41.     At least one state, California, has adopted a standard to determine if the lender (or, by extension, the servicer) is acting beyond its normal scope, thus establishing a duty of care. That test balances six non-exhaustive factors including (1) the extent to which the transaction was intended to affect the borrower, (2) the foreseeability of harm to the borrower, (3) the degree of certainty that the borrower suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered by the borrower; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *See McCormick v. US Bank, N.A.*, 2013 U.S. Dist. LEXIS 34994, at *21 (S.D. Cal. Mar. 12, 2013). However, if the servicer or lender never actually approved a modification application, the court is unlikely to find that the servicer or lender owed a duty of care to the borrower and, accordingly, the borrower's negligence claim would fail. *Id.* at *22-24 ("To the extent a loan modification application was never in fact approved by the lender, courts have found that such transactions are too attenuated,

17

and thus weigh against imposing liability on a lender."); *see also Pitre*, 2013 U.S. Dist. LEXIS 127578, at *7-8 (holding that there was no causation for negligence when there no agreed upon modification).[9]

42.    Some Courts have also found that the "economic loss" doctrine prevents recovery by a borrower on a negligence claim for the denial of a loan modification.  The economic loss doctrine bars recovery on negligence claims where the borrower's losses were purely economic and arose out of the failure of the servicer or lender to perform a contractual obligation. *See Wigod*, 673 F.3d at 567–68; *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill. 2d 69 (Ill. 1982). Thus, in order for a lender or servicer to owe a duty to the borrower, the borrower must show that the lender or servicer exceeded the scope of activities of a normal lender or servicer.  The borrower must also show that the damages from the denial of the modification were more than contract damages.

43.    As discussed, in order for a borrower to have a negligence claim for the denial of a loan modification, the borrower must show that (1) the servicer or lender owed a duty to the borrower because the servicer or lender was acting beyond the scope of normal lending or servicing activities, (2) the servicer or lender breached its duty owed to the borrower, (3) the breach was the cause of the damages to the borrower, and (4) the damages suffered by the borrower were more than simple contract damages.  Due to the fact that most courts have found that servicers do not have a duty to borrowers, and the difficulty in proving damages, negligence claims tend to have little viability as a cause of action available for borrowers in relation to the denial of a loan modification.

---

[9] At least one court, however, has found that the servicer owes a duty of care to the borrower when the lender offered a loan modification and actually engaged with the borrower on negotiating and creating a temporary payment plan. *See Ansanelli v. JPMorgan Chase Bank, N.A.*, No. 10-03892, 2011 U.S. Dist. LEXIS 32350, 21-22 (N.D. Cal. Mar. 28, 2011).

CR/1417044.5/062429

### D. **Fraudulent Misrepresentation and Fraudulent Concealment**

44.     Many borrowers assert common law fraud or fraudulent misrepresentation and/or fraudulent concealment claims against the servicer or lender for the denial of the loan modification.   Relevant case law reflects that fraudulent concealment claims generally are dismissed at the pleading stage, but fraudulent misrepresentation claims can survive motions to dismiss if pled with proper specificity.

45.     A borrower may have a common law fraud claim if the borrower can show that (1) the servicer or lender made a false representation concerning a material fact; (2) the servicer or lender knew that the representation was false; (3) the servicer or lender intended the statement to induce the borrower to act on the statement; and (4) the borrower suffered damages from relying on the representation.  *See Wigod*, 673 F.3d at 569–71; *Echeverria v. BAC Home Loans Servicing, LP*, 900 F. Supp. 2d 1299, at *1308-09 (M.D. Fla. 2012); *Austero v. Aurora Loan Servs.*, 2011 U.S. Dist. LEXIS 85356, at *23-26 (N.D. Cal. Aug. 3, 2011).

46.     In order to adequately plead a claim for fraud, the borrower must plead the claim with particularity.[10]   Under Rule 9(b) of the Federal Rules of Civil Procedure (the "Federal Rules"), "the circumstances constituting fraud . . . [must] be stated with particularity."  *Acito v. IMCERA Group,* 47 F.3d 47, 51 (2d Cir. N.Y. 1995) (quoting Federal Rule 9(b)).

47.     The heightened pleading requirement in Rule 9(b) requires that borrowers adequately plead "the who, what, when, where, and how" regarding the perpetration of the fraud by the servicer or lender.  *See e.g.*, *Wigod*, 673 F.3d at 569–71; *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008).

---

[10] While the fraud claim is a claim based on state law, most actions against servicers or lenders for denial of a loan modification are brought in federal court in order to take advantage of potential federal law claims.   Thus, the pleading requirements in the Federal Rules of Civil Procedure will ordinarily apply.

CR/1417044.5/062429

48.     Many borrowers fail to adequately meet the heightened pleading requirements because many times they simply cannot state when the promise to modify the mortgage was actually made. *See McFadden*, 2012 U.S. Dist. LEXIS 2391, at *16 (W.D. VA. Jan. 9, 2012) (dismissing fraud claim because pleadings did not provide for the date or time for when any agreement to modify the mortgage was made).

49.     However, some borrowers have succeeded in adequately pleading fraud claims when they have adequately plead (i) the times and dates of the allegedly fraudulent acts, (ii) that representations were made that if the terms of the TPP were met the servicer would grant the modification, (iii) that the servicer had no intention to grant the modification, and (iv) that the servicer was perpetrating a scheme to defraud thousands of borrowers. *See Wigod*, 673 F.3d at 569–71.

50.     Fraudulent concealment claims, on the other hand, appear to generally fail.  A fraudulent concealment claim has the same elements as a fraudulent misrepresentation claim, but with an additional element requiring the borrower to show that the servicer or lender was under a duty to disclose a material fact, but intentionally concealed or omitted such fact.  *Wigod*, 673 F.3d at 571–73; *Weidner v. Karlin*, 402 Ill. App. 3d 1084, 932 N.E.2d 602, 605, 342 Ill. Dec. 475 (Ill. App. 2010).  Thus, the servicer must owe a duty to the borrower to be liable for fraudulent concealment.  *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (Ill. 1996).  However, courts almost uniformly hold that a servicer or lender does not owe a special or fiduciary duty to a borrower and only enters into an arms' length transaction with the borrower.  *See, e.g. Wigod*, 673 F.3d at 571–73.

51.     In summation, in order for a borrower to have a fraud-based claim against a servicer or lender, the borrower must plead with particularity and subsequently prove that (1) the

20

servicer or lender made a false representation concerning a material fact; (2) the servicer or lender knew that the representation was false; (3) the servicer or lender intended the statement to induce the borrower to act on the statement; and (4) the borrower suffered damages from relying on the representation.  Because of the difficulty of properly pleading a fraud claim and the extreme difficulty of proving the elements of fraud, the various fraud causes of action are generally not viable with respect to the denial of loan modifications.

### E.  <u>Home Owners Loan Act (HOLA) Preemption</u>

52.    Notwithstanding a borrower being able to properly plead a claim for one of the above state law claims, some courts hold that the federal Home Owners Loan Action ("HOLA") preempts such state law claims and precludes borrowers from asserting such claims.  See 12 U.S.C. § 1464; 12 C.F.R. § 560.2 (Preemption regulation).  HOLA was enacted during the Great Depression in order to restore the general public's faith in banks, and applies to federal savings banks, and savings and loan associations.  *See Babb v. Wachovia Mortg., FSB*, 2013 U.S. Dist. LEXIS 106228, at *17-22 (C.D. Cal. July 26, 2013); *Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002).  As discussed by the District Court for the Central District of California, under HOLA:

> Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts. 12 U.S.C. § 1464. As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2. Although the preemption is expressed in OTS's regulation, instead of HOLA, it makes no difference because, "[f]ederal regulations have no less preemptive effect than federal statutes." Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982). The regulation reads, inter alia, OTS hereby occupies the entire field of lending regulation for federal savings associations.

*Babb*, 2013 U.S. Dist. LEXIS 106228, *17-22.

CR/1417044.5/062429

53.    HOLA applies to all federal savings banks and successors in interest, and can also apply if the loan was originated by a federal savings bank, regardless of whether a non-federal savings bank is servicing the loan, or currently owns the loan. *See id*. at *12-13.    HOLA preempts all lending regulations for processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages. *See id.*    HOLA does not preempt contract and commercial law, real property law, homestead laws, tort law or criminal law. *See id.*

54.    Although HOLA does not preempt certain state law areas of law, courts have held that laws of general applicability such as tort, contract, and real property laws are preempted if the enforcement of such laws would impact the servicing of mortgages by a federal savings bank. *See Silvas v. E*Trade Mortg. Corp*. 514 F.3d 1001, 1006 (9th Cir. 2008); *Babb*, 2013 U.S. Dist. LEXIS 106228, at *17-22.

55.    Courts, even within the same jurisdiction, are split on whether HOLA does in fact preempt most state law claims.    *Compare Babb*, 2013 U.S. Dist. LEXIS 106228, at *1 (dismissing fraud claims, negligence claims, state law specific consumer protection claims, breach of contract claims, and promissory estoppel claims as preempted by HOLA) *with Gabali v. Onewest Bank*, 2013 U.S. Dist. LEXIS 47193, at *28-31 (N.D. Cal. Mar. 29, 2013) (holding that HOLA does not preempt state law claims based on allegations which "'rely on the general duty not to misrepresent material facts' such as false advertising and unfair competition claims.").

56.    Accordingly, it is possible that state law claims relating to the denial of a loan modification for a loan that was originated from a federal savings bank could be preempted by HOLA.

22

## III.    STATE-SPECIFIC CLAIMS AND DEFENSES

### A. Alabama

57.    Alabama also follows the general rules, and permits a breach of contract claim for denial of loan modification where the agreement to modify is in single writing or a series of writings. *Small v. Seterus, Inc. (In re Small)*, No. 11-00384, 2012 Bankr. LEXIS 2668, 12-13 (Bankr. S.D. Ala. June 12, 2012).

### B. Arizona

58.    Arizona follows the general rules as described above, but has been particularly unfavorable to breach of contract claims and promissory estoppel claims. *See Lowry v. Emc Mortg. Corp.*, 2012 U.S. Dist. LEXIS 111076 (D. Ariz. Aug. 8, 2012), *Herold v. U.S. Bank, N.A.*, 2011 U.S. Dist. LEXIS 103501, at *4-7 (D. Ariz. Sept. 13, 2011), *Barone v. Chase Home Fin. LLC*, 2011 U.S. Dist. LEXIS 93255, at *3-5 (D. Ariz. Aug. 19, 2011).  Arizona also bars oral loan modifications under its statute of frauds and does not recognize third party beneficiary rights of borrowers to allege breaches of the servicer participation agreements.  See *Lowry v. Emc Mortg. Corp.*, 2012 U.S. Dist. LEXIS 111076 (D. Ariz. Aug. 8, 2012) (dismissing breach of contract claim for statute of frauds defense); *Thomasson v. First Horizon Home Loans*, 2011 U.S. Dist. LEXIS 44541, at *8-10 (D. Ariz. Apr. 21, 2011) (dismissing breach of servicer participation agreement claim for lack of standing).

### C. California

59.    California appears to have the most developed case law for causes of action related to the denial of loan modifications, as well as the most variations from the general rules used by most states regarding the treatment of such claims.  Borrowers in California also have

23

various statutory claims that are potentially available to them for the denial of a loan modification.

California Law Variations from Claims Asserted in Other States

        i.  Breach of Contract

60.     Unlike many other states, California permits an oral modification to a contract to be valid if there is new consideration given as part of the oral modification.  *See Ansanelli v. JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 32350, at *9–10; *Raedeke v. Gibraltar Sav. and Loan Ass'n*, 10 Cal. 3d 665, 673, 111 Cal. Rptr. 693, 517 P.2d 1157 (1974).  Consideration for an oral modification to a contract, as related to a loan modification, has been found by California courts to be the time and energy expended by the borrower to make financial disclosures for the modifications. *See, e.g.*, *Ansanelli*, 2011 U.S. Dist. LEXIS 32350, at *10–11. *See generally Raedeke*, 10 Cal. 3d 665, 673-74 (time and effort put in by debtor to procure a responsible buyer in lieu of a foreclosure sale was deemed to be consideration for a valid agreement in California).

61.     Thus, in California an oral promise to modify the borrower's loan, supported by consideration as minimal as the time and effort expended to provide financial disclosures, might survive a statute of frauds defense and be the basis for a breach of contract claim for the denial of a loan modification.

        ii.  Negligence

62.     Additionally, taking into consideration the test used by California courts to determine if a lender owes a duty to a borrower as discussed in section II.C., *supra*, California

CR/1417044.5/062429

courts have permitted claims for negligent misrepresentation[11] to survive a motion to dismiss. *See Ansanelli*, 2011 U.S. Dist. LEXIS 32350, at *19-21.

California's Unfair Competition Law (UCL)

63.    Borrowers in California may also assert California's Unfair Competition Law (the "UCL") as a claim for the wrongful denial of a loan modification.

64.    The UCL prohibits "unfair competition" against consumers.  Cal. Bus. & Prof. Code § 17200.  Unfair competition under the UCL is defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Any person who "suffered injury in fact and has lost money or property as a result of unfair competition" can bring a UCL claim.  Cal. Bus. & Prof. Code § 17204. Thus, to have standing under the UCL a borrower must (1) prove they suffered economic injury and (2) show that the economic injury was caused by the alleged unfair business practice against the borrower.  *Lawther v. OneWest Bank, FSB*, 2012 U.S. Dist. LEXIS 12062, at *23 (N.D. Cal. Feb. 1, 2012).  "Unfair competition" can be established by a borrower under any of three methods enumerated in the statute.

i.    Unfair Competition Through "Unlawful" Business Practice

65.    Under the first method, borrowers can state a cause of action based on an "unlawful" business practice under the UCL, by alleging facts that show a violation of another underlying law. *See People v. McKale*, 25 Cal.3d 626, 635 (1979).

---

[11]    To allege a cause of action for negligent misrepresentation in California, Borrowers must plead that: (1) the misrepresentation of a past or existing material fact by the servicer or lender; (2) without reasonable ground for the servicer or lender believing it to be true; (3) with intent of the servicer or lender to induce the borrower's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation by the borrower; and (5) resulting damage to the borrower. *Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.*, 196 Cal.App.4th 1559, 1573, 127 Cal.Rptr.3d 589 (2011). Federal courts in California will ordinarily apply the Rule 9(b) heightened pleading standard to negligent misrepresentation claims sounding in fraud. *See U.S. Capital Partners, LLC v. AHMSA Intern., Inc.*, 2013 U.S. Dist. LEXIS 20245 (N.D. Cal. Feb. 14, 2013). Additionally, borrowers must allege the existence of a duty of care using the six factor balancing test used in California. See *Rockridge Trust v. Wells Fargo, N.A.*, 2013 U.S. Dist. LEXIS 139606, 127-28 (N.D. Cal. Sept. 25, 2013) .

CR/1417044.5/062429

ii.  Unfair Competition Through "Fraudulent" Business Practice

66.     Under the second method, borrowers can state a cause of action based on a "fraudulent" business practice by alleging facts that show that members of the public are likely to be deceived by the business practice. *See Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010). The term "fraudulent" under the UCL does not have the same meaning as common law fraud, and only requires that a member of the public be likely to be deceived by the business practices. *See Olsen v. Breeze*, 48 Cal. App. 4th 608, 618 (1996). UCL claims based on fraudulent conduct require the borrower to plead facts complying with the heightened pleading standard of Rule 9(b) of the Federal Rules. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

iii.  Unfair Competition Through "Unfair" Business Practice

67.     Finally, under the third method, borrowers can state a cause of action based on an "unfair" business practices.  However, there is a split in authority in California law as to what constitutes unfair business practices, leading to the development of three distinct tests.  *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (2010).

68.     The first test to determine unfair business practices requires the claim and its underlying public policy be "tethered to a specific constitutional, statutory, or regulatory provision.  *See Rockridge Trust*, 2013 U.S. Dist. LEXIS 139606, at *136; *Bardin v. Daimler Chrysler Corp.*, 136 Cal. App. 4th 1255, 1260-1261 (2006).

69.     The second test examines whether the business practice is immoral or unethical by "weigh[ing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *See Rockridge Trust*, 2013 U.S. Dist. LEXIS 139606, at *136–37; *Bardin*, 136 Cal. App. 4th at 1260.

26

70.    The third and final test requires that "(1) the consumer injury [] be substantial; (2) the injury [] not be outweighed by any countervailing benefits to consumers or competition; and (3) it [] be an injury that consumers themselves could not reasonably have avoided." *See Rockridge Trust*, 2013 U.S. Dist. LEXIS 139606, at *137 (internal quotations omitted).

71.    Under the "unlawful" method of proving "unfair competition" provided in the UCL, if borrowers adequately plead claims under the FDCPA, the California Rosenthal Act,[12] or another consumer protection act, the borrower's claim may survive a motion to dismiss. *See Rockridge Trust*, 2013 U.S. Dist. LEXIS 139606, at *138–39.  Under the fraudulent and unfair methods, borrowers must plead independent causes of action and cannot rely on pleading facts sufficient to make out a claim under another consumer protection statute.

72.    Put succinctly, California borrowers may have claims under the California UCL if they can show that (1) the servicer or lender violated an underlying consumer protection statute such as the FDCPA, (2) the practices used by the servicer or lender would deceive members of the public, or (3) the servicer or lender engaged in unfair business practices by meeting the requirements of one of the three tests used by California court.

False Advertising Claims

73.    Borrowers have also asserted claims under the California False Advertising Law ("FAL") for a denial of a loan modification.  The FAL prohibits a business from disseminating statements that are untrue or misleading, and that are known, or reasonably should be known, to be untrue or misleading in connection with the sale of property or services. Cal. Bus. & Prof. Code § 17500.  California courts have construed statements made about loans and mortgages as

---

[12] Although the Rosenthal Act can be a basis for a UCL claim, it cannot in and of itself support a claim for denial of a loan modification, as a loan servicer is not deemed to be a debt collector under the act, thus taking loan servicers out of the Rosenthal Act's reach. *See Gabali v. Onewest Bank*, 2013 U.S. Dist. LEXIS 47193, at *18-21 (N.D. Cal. Mar. 29, 2013).

27

CR/1417044.5/062429

advertising within the ambit of the FAL. *See Gabali v. Onewest Bank*, 2013 U.S. Dist. LEXIS 47193, at \*10-14 (N.D. Cal. Mar. 29, 2013); *Chern v. Bank of America*, 15 Cal. 3d 866, 875-876 (1976).

74.    In terms of loan modifications, borrowers may have an FAL claim if they can show that the lender or servicer made false representations in letters to the borrower regarding the modification. *See Gabali*, 2013 U.S. Dist. LEXIS 47193, at \*10-14.

California's Home Owners Bill of Rights[13]

75.    California recently enacted the California Home Owners Bill of Rights (the "HBOR"), which gives home owners unprecedented rights in regards to the servicing and modification of their mortgage. *See Rockridge Trust*, 2013 U.S. Dist. LEXIS 139606, at \*85-98 (summarizing the laundry list of protections afforded to home owners under the HBOR). However, while the HBOR gives protections to home owners, it became effective on January 1, 2013 and does not include a retroactivity provision. *See Rockridge Trust*, 2013 U.S. Dist. LEXIS 139606, at \*96-98; *Sabherwal v. Bank of New York Mellon*, 2013 U.S. Dist. LEXIS 129203, 2013 WL 4833940, at \*10 (S.D. Cal. Sept. 10, 2013) ("California courts comply with the legal principle that unless there is an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application."). Thus, it appears that HBOR probably would not apply to any of the loan modifications implicated in the Debtors' case.

---

[13]  *See* Cal Civ Code § 2923.6.

### D. Florida

76.    Florida follows the general rules as most other states but has been particularly unfavorable in ruling against claims for fraudulent misrepresentation.  *See Echeverria v. BAC Home Loans Servicing, LP*, 900 F. Supp. 2d 1299, 1308-1309 (M.D. Fla. 2012).

77.    Florida has also found that a private TPP, not based on HAMP guidelines, is not bound by HAMP guidelines.  Accordingly, those courts have found that, barring language that would guarantee the granting of a permanent modification if certain requirements are met, the denial of such TPP will not create a breach of contract claim.  *See Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, at *1358-59 (S.D. Fla. 2011).  Florida has also rejected claims for breach of implied good faith and fair dealing and unjust enrichment.  *See id.* at *1360-66. However, Florida has recognized the possibility of a promissory estoppel claim where a borrower allegedly relied on the servicer or lender to give a permanent modification, even though the TPP stated that a permanent modification was not guaranteed, and the servicer accepted three months of TPP modified payments. *See id.* at *1362-64.

### E. Illinois

78.    Like Pennsylvania, Illinois also follows the general rules described above and is also somewhat generous to borrowers asserting claims.  Illinois courts have recognized breach of contract claims, promissory estoppel claims, and claims under the Illinois Consumer Fraud and Deceptive Business Practices Act (IFCA).[14]  Illinois courts also hold that state law based claims

---

[14] "The ICFA protects consumers against "unfair or deceptive acts or practices," including "fraud," "false promise," and the "misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2. The Act is "liberally construed to effectuate its purpose." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951, 960, 266 Ill. Dec. 879 (Ill. 2002). The elements of a claim under the ICFA are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010), citing *Robinson*, 775 N.E.2d at 960. In addition, "a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury." Id. at 935." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

CR/1417044.5/062429

for the denial of a loan modification are not preempted by federal law. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. Ill. 2012).

Wigod v. Wells Fargo, NA

79.    In 2012, the Seventh Circuit issued one of the most thorough and developed opinions based on a borrower's claims relating to the denial of a loan modification, holding that several claims brought under Illinois law should survive a motion to dismiss.  *See id.*

80.    In *Wigod v. Wells Fargo Bank, N.A.*, the borrower, Wigod, applied to her servicer, Wells Fargo, for a modification of her mortgage.  *Id.* at 558.   Upon receiving Wigod's application, Wells Fargo requested that Wigod submit documentation proving her need to modify her mortgage.  *Id.* Wigod provided the requested documentation and, shortly thereafter, Wells Fargo determined that Wigod qualified for the modification and provided Wigod with a TPP.  *Id.*  The TPP expressly stated that "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the [permanent modification] Offer or will send me written notice that I do not qualify for the Offer" and "[i]f I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a [permanent] Loan Modification Agreement." *Id.* (internal quotations omitted).   Wigod signed and returned two copies of the TPP as directed by Wells Fargo. *Id.* Subsequently, Wells Fargo returned a fully executed copy of the TPP to Wigod. *Id.*

81.    Wigod complied with all of the terms of the TPP and made timely payments under the TPP.   *Id.* Despite her compliance, Wells Fargo denied Wigod a permanent modification after the expiration of the TPP, warning Wigod that she was in default and threatening foreclosure if the outstanding balance and late fees were not paid. *Id.*

CR/1417044.5/062429

82.     Thereafter, Wigod brought seven claims against Wells Fargo for the wrongful denial of the loan modification in the Northern District of Illinois, including: (1) breach of contract, (2) promissory estoppel, (3) breach of the servicer participation agreement, (4) negligent hiring and supervision, (5) fraudulent misrepresentation or concealment, (6) negligent misrepresentation or concealment, and (7) violation of the Illinois Consumer Fraud and Deceptive Practices Act (the "ICFA").  *Id.* at 559. The district court dismissed all of Wigod's claims, and Wigod appealed to the Seventh Circuit. *Id.*

83.     The Seventh Circuit provided a thorough analysis of Wigod's claims and reversed the district court on four of the seven claims, including; (1) breach of contract, (2) promissory estoppel, (3) fraudulent misrepresentation, and (4) the ICFA.

*Wigod's Breach of Contract Claim*

84.     The circuit court held that Wigod had adequately pled a claim for breach of contract and permitted the breach of contract claim to survive a motion to dismiss.  In so holding, the court determined that the TPP constituted a valid offer, the act of Wigod opening a new escrow account (among other legal detriments) constituted adequate consideration, and that the HAMP guidelines created definite and certain terms in order for an enforceable contract to exist between Wigod and Wells Fargo. *Id.* at 560.

85.     In ruling that the TPP constituted a valid offer, the *Wigod* court applied Illinois law, stating that the "test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender." *Id.* at 561.  The court also noted that a promise that includes a condition for the promisor to perform a later action is generally not a valid offer, except when the promise carries a condition for the promisee to perform a later action. *Id.*  The court reasoned that the TPP carried a condition that Wigod, the promisee, would submit the

31

necessary documents and make the reduced payments during the trial period. *Id.* Because the TPP stated that Wigod would be entitled to the permanent modification if she performed these later actions, the TPP was a valid offer. *Id.* at 561–62. The court also reasoned that a reasonable person would have believed the TPP to be an offer because Wells Fargo returned a fully executed TPP to Wigod and did not reject Wigod's application within the time frame allotted in the TPP. *Id* at 562–63. Thus, the TPP constituted a valid offer under Illinois law.

86.    The court also examined whether the adequate consideration existed to create a valid contract. In applying Illinois law, the court stated that "consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them." *Id.* at 563–64 (internal quotations omitted). The court ruled that Wigod incurred a detriment, thus constituting consideration, stating that "by signing [the TPP], Wigod agreed to open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information . . . . In exchange for Wells Fargo's conditional promise to modify her home mortgage, she undertook multiple obligations above and beyond her existing legal duty to make mortgage payments. This was adequate consideration . . . ." *Id.* Thus, the court held that adequate consideration existed to form a contract.

87.    Next, the court held that the terms of the TPP were definite and certain enough to create a valid contract. The court recognized that the TPP did not state all of the definite terms of a final modification, but determined that the HAMP guidelines created enough certainty in the final terms of the permanent modification to create a definite and certain contract for the permanent modification. *Id.* at 564–65. The court stated that "[a]lthough the trial terms were just an 'estimate' of the permanent modification terms, the TPP fairly implied that any deviation from them in the permanent offer would also be based on Wells Fargo's application of the

32

established HAMP criteria and formulas." *Id.* at 565.  Thus, the court held that a definite and certain contract existed for the permanent modification.

88.    Finally, the court held that Wigod adequately pled a breach of the contract claim to provide Wigod with a permanent modification because Wells Fargo did not offer Wigod any form of permanent modification. *Id.* Thus, Wigod's breach of contract claim survived a motion to dismiss.

## *Wigod's Promissory Estoppel Claim*

89.    The court also held that Wigod had pled a valid claim for promissory estoppel and permitted the claim to survive a motion to dismiss.  Under Illinois law, promissory estoppel exists when the "(1) defendant [makes] an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Id.*

90.    Without much analysis, the court held that Wigod had pled an adequate promissory estoppel claim because Wigod had relied on Wells Fargo's promise to grant the permanent modification when foregoing, to her detriment, other routes of restructuring her mortgage related debt problems.  *Id.*  This lost opportunity was deemed to be a detriment to Wigod, and thus the court permitted Wigod's promissory estoppel claim to survive a motion to dismiss. *Id.*

## *Wigod's Negligent Hiring and Supervision Claim*

91.    Wigod also asserted a negligent hiring and supervision claim against Wells Fargo, claiming that Wells Fargo deliberately hired unqualified customer service employees so that borrowers would be too frustrated to pursue the modification, and instituted policies designed to deter borrowers from obtaining modifications. *Id.*

CR/1417044.5/062429

92.    The court summarily dismissed those claims, holding that the "economic loss" doctrine barred the claim. *Id.* The economic loss doctrine prohibits recovery of tort damages for purely economic losses arising solely out of a failure to perform a contract. *Id.* at 567.  The court also recognized an exception to the doctrine where claims are permitted if the tort recovery is based on a breach of a duty owed outside of the contract and independent of the contract. *Id.* at 567.  However, the court held that the economic loss doctrine applied and the exception to the doctrine did not apply.  The court reasoned, as the majority of courts hold, that a servicer owes no duty to the borrower outside of the implied duty in the contract to service the loan responsibly.  *Id.* at 567–68.  Thus, the court reasoned that the economic loss doctrine applied to bar Wigod's claim because the servicer's duty was not independent of the contract and the negligent hiring and supervision claim should be dismissed.

*Wigod's Fraudulent Misrepresentation Claim*

93.    The court next addressed Wigod's fraudulent misrepresentation claim.  The court noted that the economic loss doctrine also applies to this claim, but the court also recognized and applied another exception to the doctrine for damages proximately caused by fraud. *Id.* at 568.

94.    Under Illinois law, the elements to a fraudulent misrepresentation claim are: (1) a false material statement, (2) believed to be false by the party making the statement, (3) with the intent to induce the other party to take action, (4) in reliance on the truth of the statement, and (5) the other party is damaged from that reliance. *Id.* at 569.

95.    As with all fraud pled in federal court, the heightened pleading requirements applied to Wigod's fraudulent misrepresentation claim. *Id.* at 569.  The court held that this standard was met in this case, without analyzing further. *Id.*

34

96.     The court also examined whether it was reasonable for Wigod to rely on the statements made by Wells Fargo, stating that "under Illinois law, justifiable reliance exists when it was 'reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation.'" *Id.* (internal citation omitted).  The court held that Wigod reasonably relied on Wells Fargo's statements because it was reasonable to rely on the TPP as a valid offer for a permanent loan modification.  *Id.*

97.     The court also recognized that, under Illinois law, in order to have a claim based on promissory fraud, as this claim is, Wigod must show that the claim is part of a scheme to defraud.  *Id.* at 570.  In her pleadings, Wigod states that Wells Fargo created a "system designed to wrongfully deprive its eligible HAMP borrowers of an opportunity to modify their mortgages" and that the acts of Wells Fargo affected thousands of borrowers. *Id.* (internal quotations omitted).  Citing Illinois case law that states a fraud need only affect two or more people to be a fraudulent scheme, the court held that Wigod had adequately pled a fraudulent misrepresentation claim based on promissory fraud because she pled that thousands of borrowers were affected by Wells Fargo's fraud. *Id* at 570–71.  Thus, the court permitted Wigod's claim to survive a motion to dismiss.

### *Wigod's Fraudulent Concealment Claim*

98.     The court also addressed Wigod's fraudulent concealment claim, and summarily rejected it.  Under Illinois law, Wigod was required to allege that Wells Fargo intentionally omitted or concealed a material fact that Wells Fargo was under a duty to disclose to Wigod.  *Id.* at 571. The court held, as the majority of courts (if not all) hold, that a servicer does not owe the borrower any duty beyond that of responsibly servicing the mortgage, and no special relationship is created between the borrower and servicer.  *Id.*  Thus, Wells Fargo was not under any duty to

35

disclose material facts to Wigod, and Wigod's claim for fraudulent concealment must be dismissed.

*Wigod's Negligent Misrepresentation or Concealment Claims*

99.    The court also addressed Wigod's negligent misrepresentation or concealment claims, and dismissed the claims based on the same reasoning as the negligent hiring and supervision claims. As Wells Fargo owes no duty to Wigod, beyond the duty to responsibly service the loan, there exists no duty to be the basis of a negligence claim for misrepresentation or concealment. *Id.* at 574.  Thus, the court dismissed Wigod's negligent misrepresentation and concealment claims. *Id.*

*Wigod's ICFA Claim*

100.    Wigod's final claim is under the ICFA, the consumer fraud statute in Illinois.  In examining the validity of the claim the court stated that "[t]he elements of a claim under the ICFA are: '(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Id.* at 574.  Although Wigod did not claim that Wells Fargo intended to deceive her, under the ICFA intent to deceive is not necessary for "unfair" business practices. *Id.* at 574–75.  "It is enough to allege that the defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act, and Wigod has done so." *Id.* at 575.

101.    Finally the court held that Wigod had adequately pled pecuniary loss by alleging that "she incurred costs and fees, lost other opportunities to save her home, suffered a negative impact to her credit, never received a Modification Agreement, and lost her ability to receive incentive payments during the first five years of the modification." *Id.* at 575.  Thus, the court

CR/1417044.5/062429

found that Wigod adequately pled a claim under the ICFA and the claim should survive a motion to dismiss.

*Preemption of State Law Claims for Denial of Loan Modification*

102.    After analyzing the validity of Wigod's claims, the court also addressed whether federal law preempted Wigod's claims under Illinois law.  The court held that Wigod's claims were not preempted.

103.    The court first addressed whether Wigod's claims were preempted under field preemption.  Under the doctrine of field preemption, a state law is preempted if federal law occupies a legislative field so thoroughly that it creates a reasonable inference that Congress did not want the states to supplement the field of law. *Id.* at 576.

104.    The court examined whether HOLA preempted Wigod's claims and held that it did not.  Under HOLA, a savings clause exists that excludes state tort, contract, and commercial laws from HOLA preemption to the extent that they incidentally affect the lending operations of a federal savings bank.  *Id.* at 577.  The court interpreted this to mean that "state laws that establish licensing, registration, or other requirements specific to financial institutions cannot be applied to national banks, while laws of general applicability survive preemption so long as they do not effectively impose standards that conflict with federal ones." *Id.* The court further clarified its ruling by stating that HOLA was not intended to foreclose claims by borrowers against federal savings banks for the wrongful acts by those banks, and that HOLA only "preempts generally applicable state laws only when they 'could interfere with federal regulation' – that is, those that actually conflict with the regulatory program. *Id.* at 577 (quoting *Ocwen Loan Servicing, LLC Mortg. Servicing Litigation*, 491 F.3d 638, 646 (7th Cir. 2007)).

CR/1417044.5/062429

105.   The court also examined whether Wigod's claims were preempted by conflict preemption.  Under the doctrine of conflict preemption, a state law is preempted if: "(1) it is impossible for a private party to comply with both state and federal requirements, or (2) where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wigod*, 673 F.3d at 578 (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)) (internal quotations omitted).  While citing previous Seventh Circuit case law, the court held that "straight fraud claims," like the claims brought by Wigod, were not preempted by HOLA under conflict preemption.  *Wigod*, 673 F.3d at 579. The court also held that Wigod's claims are not preempted by HAMP under a theory of conflict preemption. *Id.*

106.   Finally, the court examined whether Wigod's claims were an "end run around" HAMP.  After stating that HAMP does not provide for a private right of action, as discussed in section I *supra*, the court noted that "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." *Id* at 581.  The court further noted, without elaboration, that where claims are based on diversity jurisdiction, the absence of a federal cause of action weighs against preemption. *Id.* at 582.  Thus, the court held that Wigod's claims were not an "end run around" HAMP.

*Implications of the Wigod Decision*

107.   Although the court in *Wigod* permitted the claims based in contract law or independent state statutes to survive a motion to dismiss, a number of courts have issued contrary decisions from that of the Seventh Circuit.  Additionally, the *Wigod* decision is based heavily on the facts existing in that case, namely the existence of a formal, executed TPP, which terms were fully performed by the borrower.

38

108.    First, some courts hold that HOLA, in fact, does preempt state law claims based on the denial of a loan modification. *See, e.g., Babb*, 2013 U.S. Dist. LEXIS 106228 (holding that HOLA preempts promissory estoppel claims, negligence claims, and breach of contract claims for the denial of a loan modification).

109.    Second, courts have also found that meeting the Rule 9(b) heightened pleading requirements is difficult for many borrowers asserting fraud claims for the denial of a loan modification. Courts have found that borrowers in many circumstances are unable to show when the fraudulent acts occurred, and thus dismiss fraud claims for failure to meet the pleading requirements. *See, e.g., Babb*, 2013 U.S. Dist. LEXIS 106228, at *17-22. In *Wigod*, the court merely recited the Rule 9(b) pleading requirements, and summarily found that Wigod complied with those standards.

110.    Finally, some courts hold that a TPP does not constitute a valid contract and, thus, a breach of contract claim cannot be sustained for the lender not complying with the terms of the TPP. *See Pandit v. Saxon Mortg. Servs.*, 2012 U.S. Dist. LEXIS 133292, a *8-14 (E.D.N.Y. Sept. 17, 2012); *Allen v. CitiMortgage, Inc.*, 2011 U.S. Dist. LEXIS 86077, at *16-17 (D. Md. Aug. 4, 2011) (suggesting TPP may not be valid contract).

### F.  <u>Maryland</u>

111.    Maryland also follows the general rules, except it applies its statute of frauds in a unique manner when compared to the other states analyzed in this Brief. While an oral agreement cannot be used to determine the validity of a credit agreement in Maryland, the oral agreement can be used as the basis for counterclaims for negligence, fraud, and breach of fiduciary duty to offset losses from a validly enforceable credit agreement because the oral modification is not being used to show the validity of the agreement. *See Pease v. Wachovia*

CR/1417044.5/062429

*SBA Lending, Inc.*, 416 Md. 211, 228 (Ct. of App. Md. 2009).  Thus, a claim based on an oral modification in Maryland will likely not be barred by the statute of frauds.

112.    Additionally, Maryland does not recognize modified payments as additional consideration to support the TPP.  *See Allen v. CitiMortgage, Inc.*, 2011 U.S. Dist. LEXIS 86077, at \*16-17 (D. Md. Aug. 4, 2011).  Maryland, however, has permitted breach of contract claims, promissory estoppel claims, and claims under the Maryland Consumer Protection Act to survive a motion to dismiss. *See id.* at \*11-34.

### G. Massachusetts

113.    Massachusetts also follows the general rules and permits claims under the Massachusetts unfair competition law for denials of loan modifications.[15] *See Okoye v. Bank of N.Y. Mellon*, 2011 U.S. Dist. LEXIS 82769, a \*26-29 (D. Mass. July 28, 2011).

114.    Massachusetts also recognizes a breach of contract claim when the TPP could be interpreted to give a permanent modification to the borrower if the borrower complies with the terms of the TPP, and the borrower actually complied. *See Young v. Wells Fargo Bank*, N.A., 717 F.3d 224, 233-36 (1st Cir. Mass. 2013).

### H. Michigan

115.    Michigan follows the general rules for claims based on denials of loan modifications explained above, although it seems such claims are not likely to be successful.  Of the Michigan cases reviewed, the Michigan courts were reluctant to grant relief for denials of loan modifications.  However, the courts were open to the possibility of valid ECOA claims for denial of a loan modification.  *See Davis v. CitiMortgage, Inc.*, No. 10-12136, 2011 U.S. Dist. LEXIS 25179, 6-9 ( E.D. Mich. Mar. 11, 2011) (denying ECOA claim in the particular case, but

---

[15] Much like California's unfair competition act, the Massachusetts equivalent requires the basis of the claim to be a separate and independent claim, such as an FDCPA claim. *See Okoye v. Bank of N.Y. Mellon*, 2011 U.S. Dist. LEXIS 82769, at \*26-29 (D. Mass. July 28, 2011).

CR/1417044.5/062429

recognizing that such a claim could exist for denial of loan modification); *but see Eichholz v. Wells Fargo Bank, NA.*, No. 10-cv-13622, 2011 U.S. Dist. LEXIS 128455, at *27-29 ( E.D. Mich. Nov. 7, 2011) (denying ECOA claim and holding that denial of loan modification is not an adverse action under the ECOA).

### I. Minnesota

116.    Minnesota follows the general rules as described above, and does not permit breach of contract claims nor promissory estoppel claims for oral modifications. *Labrant v. Mortgage Elec. Registration Sys.*, 870 F. Supp. 2d 671, 676–77 (D. Minn. 2012). Minnesota also does not recognize a duty for servicers or lenders during the loan modification process concerning tort claims. *Labrant v. Mortgage Elec. Registration Sys.*, 870 F. Supp. 2d 671, 683 (D. Minn. 2012).

### J. Nevada

117.    Nevada follows the general rules as described above, and recognizes the TPP to be a valid contract to which a breach of contract claim could be based. *See Hayes v. Bank of Am. Corp.*, 2012 U.S. Dist. LEXIS 135191, at *6-11 (D. Nev. Sept. 21, 2012) (recognizing TPP as valid contract but holding that borrowers failed to show breach of TPP at pleading stage). Nevada also recognizes the potential for a promissory estoppel claim based on the denial of a loan modification. *See Viets v. Wachovia Mortgage, FSB*, 2011 U.S. Dist. LEXIS 143941, at *12-14 (D. Nev. Dec. 12, 2011) (recognizing the potential for a promissory estoppel claim but dismissing such claim without prejudice because it was unclear whether borrower was pleading promissory estoppel or equitable estoppel).

118.    However, Nevada does not permit claims under its Nevada Deceptive Trade Practices Act based on the denial of a loan modification, nor has it recognized a claim for

41

fraudulent misrepresentation. *See Hayes*, 2012 U.S. Dist. LEXIS 135191, at \*13-14 (dismissing Nevada Deceptive Trade Practices Act claim), *Viets*, 2011 U.S. Dist. LEXIS 143941, at \*15-17 (dismissing fraudulent misrepresentation claim).  Nevada also recognizes that lenders or servicers do not owe a special duty to borrowers.  *See Viets*, 2011 U.S. Dist. LEXIS 143941, at \*16 n.3.  Finally, Nevada does not recognize HOLA to preempt state law claims for the denial of a mortgage modification.  *See Viets*, 2011 U.S. Dist. LEXIS 143941, at \*6-12.

### K.  New York

119.    New York follows the general rules for denial of a loan modification, but does not recognize a breach of contract claim when the lender or servicer never returned an executed permanent modification agreement to the borrower.  *See Pandit v. Saxon Mortg. Servs.*, 2012 U.S. Dist. LEXIS 133292, 8-14 (E.D.N.Y. Sept. 17, 2012).  New York also does not recognize a denial of a modification as grounds for an ECOA Claim.  *See id.* at 19-20.  New York does permit claims for denial of a loan modification under the New York Deceptive Practices Act (the "DPA").[16]  *See id* at 14-18.

### L.  Pennsylvania

120.    Although Pennsylvania follows the general rules described above, it has been more open to borrowers asserting claims for a denial of a loan modification.  At least one Pennsylvania court has recognized a claim for a breach of contract where the servicer breached the TPP in denying a permanent loan modification and for promissory estoppel.  *See Smith v. Saxon Mortg. Servs.*, 2013 U.S. Dist. LEXIS 66101, at \*23-29 (E.D. Pa. May 9, 2013).  Pennsylvania also recognizes claims under the Pennsylvania Unfair Trade Practices And

---

[16] "To state a claim under the DPA, 'a plaintiff must allege that '(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result.'" *Costigan v. CitiMortgage, Inc.*, 2011 U.S. Dist. LEXIS 84860, at\*5 (S.D.N.Y. Aug. 1, 2011) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009))." *See Pandit v. Saxon Mortg. Servs.*, 2012 U.S. Dist. LEXIS 133292, at \*14 (E.D.N.Y. Sept. 17, 2012).

CR/1417044.5/062429

Consumer Protection Law (the "UTPCPL"), which requires borrowers to prove that (1) the borrower purchased or leased goods or services primarily for a personal, family, or household purpose, (2) the borrower suffered an ascertainable loss of money or property; and (3) the borrower's loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL. *Smith v. Saxon.*, 2013 U.S. Dist. LEXIS 66101, at *23-29. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008) (asserting that the plaintiff's must allege under the UTPCPL knowledge of a deceptive conduct that would have change the actions or decisions of Plaintiff.).

### M. <u>Texas</u>

121.    While Texas follows the general rules articulated above, it has been unfavorable to most states law claims for the denial of a loan modification.  The Texas statute of frauds does not permit oral modifications to loans, thus, breach of contract claims for the breach of an oral modification are barred in Texas.  *Gonzales v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 3877 (S.D. Tex. Jan. 10, 2013).  Texas also does not permit fraud or negligence claims for the denial of a mortgage modification because such claims are barred by the economic loss doctrine. *See Gonzales*, 2013 U.S. Dist. LEXIS 3877, at *6-8; *Rabinowitz v. Fed. Home Loan Mortg. Corp.*, 2012 U.S. Dist. LEXIS 143131, at *9-14 (S.D. Tex. Sept. 25, 2012).  Additionally, lenders or servicers do not owe a special duty to borrowers under Texas law. *See Gonzales*, 2013 U.S. Dist. LEXIS 3877, at *7-8.  Finally, Texas does not recognize third party beneficiary standing for a borrower to assert a breach of the servicer participation agreement as a claim for the denial of a loan modification.  *See Cade v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 65045, a *5-13 (S.D. Tex. June 20, 2011).

CR/1417044.5/062429

### N. **Virginia**

122.    Virginia follows the general rules articulated above, but has been particularly unfavorable to most state law claims relating to the denial of a loan modification.  Virginia does not permit claims arising from an oral modification of the mortgage, nor does it recognize any tort duties on behalf of the servicer during the modification process.  *McFadden v. Fannie Mae*, 2012 U.S. Dist. LEXIS 2391, at *15–17 (W.D. VA. Jan. 9, 2012).   Additionally, unlike most states analyzed in this Brief, at least one Virginia court has held that the Virginia Consumer Protection Act does not apply to a denial of loan modification.  *McFadden*, 2012 U.S. Dist. LEXIS 2391, at *22–23.   Virginia does, however, recognize ECOA claims for the denial of a loan modification.  *Bourdelais v. JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 35507, 26-30 (E.D. Va. Apr. 1, 2011).

## **CONCLUSION**

123.    As discussed in detail above, it is clear that claims arising from the denial of a loan modification exist in a multitude of jurisdictions across the country with a general consensus on the elements of the respective claims. Such claims, however, rarely survive motions to dismiss.

Dated: Jericho, New York
      October 29, 2013

SILVERMANACAMPORA LLP
Special Counsel to the Official
Committee of Unsecured Creditors

By:        *s/ Robert D. Nosek*
Ronald J. Friedman
Robert Nosek
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300

CR/1417044.5/062429