

1  GRAHAM & MARTIN, LLP
   Anthony G. Graham (State Bar No.148682)
2  Michael J. Martin (State Bar No.171757)
   3130 South Harbor Blvd., Suite 250
3  Santa Ana, California 92704
   Telephone: (714) 850-9390
4  Facsimile: (714) 850-9392
   anthonyggraham@msn.com
5
   Counsel for Luan Nguyen
6  and Rebecca H. Andres

7

8

9

10

11

12

                 UNITED STATES BANKRUPTCY COURT

                 SOUTHERN DISTRICT OF NEW YORK

13  | In re | Case No. 12-12020 (MG) |
14  | RESIDENTIAL CAPITAL, LLC, ET AL, | Chapter 11 |
15  | Debtor. | HON. MARTIN GLENN |
16  | | REQUEST FOR CLARIFICATION OF BANKRUPTCU FINAL SUPPLEMENTAL ORDER DATED JULY 10, 2012 REQUESTED BY RIVERSIDE COUNTY SUPERIOR COURT OF CALIFORNIA |

17

18

19

20

21          DECLARATION OF ANTHONY G. GRAHAM

22      I, Anthony G. Graham, declare:

23      1.   I am an attorney with and partner in Graham & Martin LLP ("Firm"),

24

25  counsel for Luan Nguyen and Rebecca Andres in a case entitled *LUAN NGUYEN,*

26  *an individual, and REBECCA H. ANDRES, an individual vs. GMAC MORTGAGE,*

27

28  *LLC AND DOES 1-10,* Riverside Superior Court of California, Case no. RIC

                                    1

1  1108478, coordinated with related unlawful detainer action entitled *GMAC*

2  *MORTGAGE, LLC v. LUAN NGUYEN, an individual, AND REBECCA H.*

3

4  *ANDRES, an individual*, Riverside County Superior Court, Case No.

5  MVC1100653. I make this declaration in support of this Request for Clarification

6  of this Court July 10, 2012 Final Supplemental Order as set forth in the Order of

7

8  the Riverside County Superior Court, State of California. I would be able to

9  competently testify to the following factual assertions to the best of my belief,

10  knowledge or information.

11

12       2. The reason for this Request is that when GMAC Mortgage, LLC sought

13  to sever the consolidated actions in order to move forward with the eviction

14  process through an unlawful detainer trial its motion was denied by this was first

15

16  raised the Hon. Paulette Barclay, a Judge of the Riverside County Superior Court,

17  State of California, denied the Motion, thus finding that the automatic stay

18  remained in effect and the unlawful detainer action could not proceed. A true and

19

20  correct copy of that Order is attached hereto as Exhibit A. However, a different

21  Judge, the Hon. P.J. Argento, has now found precisely the opposite. That second

22  judge stated that he would continue the stay until the parties had filed a request for

23

24  clarification with this court to determine which interpretation was correct and

25  whether the superior court even had the right to make any interpretation.

26       3. Attached hereto as Exhibit B is a true and correct copy of the Riverside

27

28  County Superior Court Order dated July 10, 2013. This Order permits any of the

1  parties to request clarification as to the effect of this Court's Final Supplemental

2  Order.  For the Court's convenience attached hereto as Exhibit C is a true and

3

4  correct copy of this Court's Final Supplemental Order .

5      4. Plaintiffs therefore request that this Court provide such a clarification to

6  Department 12 of the Riverside County Superior Court, State of California as soon

7

8  as practicable.

9      I declare under penalty of perjury under the laws of the United States of

10  America that the foregoing is true and correct.

11

12      Executed at Santa Ana, California on September 20, 2013.

13

14                                      Anthony G. Graham

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Riverside Superior Court
Date Received: _____

04/11/2013  12:27   7148509392              GRAHAM AND MARTIN
PAGE   81/82

APR 1 1 2013

1   GRAHAM & MARTIN, LLP
    Anthony G. Graham (State Bar No.148682)
2   Michael J. Martin (State Bar No. 171757)
    3130 South Harbor Blvd., Suite 250
3   Santa Ana, California 92704
    (714) 850-9390
4
5   Attorneys for Plaintiffs
    Luan Nguyen and Rebecca H. Andres
6

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

APR 1 6 2013

S Pontillo

L A A

APR 1 6 2013

7                    SUPERIOR COURT OF CALIFORNIA

8                         COUNTY OF RIVERSIDE

9

10   LUAN NGUYEN, an individual, AND          CASE NO. RIC 1108478
11   REBECCA H. ANDRES, an individual,

12                   Plaintiffs,              [PROPOSED] ORDER DENYING
                                              DEFENDANTS MOTION TO SEVER
13                                            CONSOLIDATED ACTION; DISSOLVE
     vs.                                      STAY AND TRANSFER TO UNLAWFUL
14                                            DETAINER COURT IN M ORENO
     GMAC MORTGAGE, LLC AND DOES 1-10,        VALLEY
15
                     Defendants.              Hearing Date: April 11, 2013
16                                            Time: 8.30 a.m.
17                                            Courtroom: 12        By Fax
18

19            TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20            On April 11, 2012 the Court heard Defendants' motion to sever the consolidated actions,

21     dissolve the current stay and transfer the unlawful detainer action to Moreno Valley. Anthony G.

22     Graham, Esq. appeared on behalf of Plaintiff's. Purported Counsel for Defendant, Pite Duncan

23     LLP, appeared. All parties present stipulated to Comm. Barclay.

24            IT IS ORDERED: Defendants Motion is DENIED, without prejudice.

25

26     Dated: April __, 2013

27                                            Commissioner of the Riverside County
                                              Superior Court
28

PRINTED ON
RECYCLED PAPER

1

04/11/2013  12:27    7148509392                GRAHAM AND MARTIN                    PAGE  02/02

# CERTIFICATE OF SERVICE

I am over the age of 18 and not a party to this case. I am a resident of or employed in the county where the mailing occurred. My business address is 3130 South Harbor Blvd., Suite 250, Santa Ana, California 92704.

I SERVED THE FOLLOWING:

1.) Proposed Order

by placing the documents in an envelope and mailing them via US mail to the following persons:

NAME AND ADDRESS OF EACH PERSON TO WHOM DOCUMENTS WERE EMAILED:

Counsel for GMAC Mortgage, LLC:

Yaron Shaham
Severson & Werson
The Atrium, Suite 700
Irvine, CA 92612

John Sullivan
Edward Buell
Severson & Werson
One Embarcadero Center, Suite 2600
San Francisco, CA 94111

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 11, 2013

# EXHIBIT B

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

| TITLE:<br>NGUYEN v. GMAC MORTGAGE | DATE & DEPT:<br>July 10, 2013<br>Department 12 | NUMBER: M<br>RIC1108478 |
|---|---|---|
| COUNSEL:<br>Moving Party, Defendant GMAC Mortgage, represented by<br>Severson & Werson<br>Responding Party, Plaintiff Luan Nguyen, represented by<br>Graham & Martin LLP | REPORTER:<br>NONE | FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br>JUL 10 2013<br>S. Portillo (jkp) |

## PROCEEDING: RULING DEFENDANT'S MOTION TO SEVER UNLAWFUL DETAINER ACTION AND DISSOLVE INJUNCTION

RULINGS ON:
A. Defendant GMAC Mortgage's motion:

  (1) To Dissolve the injunction/stay in a related unlawful detainer action (GMAC Mortgage v. Nguyen et al (MVC11100653) that was consolidated with this case Nguyen v. GMAC Mortgage (RIC1108478): **Granted**.

  (2) To sever MVC11100653 from RIC1108474 and to transfer it to the Moreno Valley courthouse to a department assigned to adjudicate unlawful detainers: **Granted.**

  (3) The orders in paragraph (1) and (2) above are stayed 45 days from the date of this Court's Notice of Rulings to allow Nguyen and Andres, GMAC, or both to seek clarification from the U.S. Bankruptcy Court of the Final Supplemental Order of July 13, 2012.

  (4) All the above orders are subject to further order of the U.S. Bankruptcy Court.

B. Plaintiffs Motion for Sanctions Pursuant to CCP 128.7: **Denied without Prejudice.**

## MEMORANDUM OPINION

With regard to Ruling B, above, CCP 128.7 requires a separate motion. (CCP 128.7(c)(1).)

With regard to Ruling A, above, the orders by this court differ from those tentatively indicated during the hearing. The Court said it would study submitted documents and law prior to making its rulings.

The Court file in RIC 11108478 reflects the following. When Plaintiffs' filed this action on May 12, 2011, they also filed a Notice of Lis Pens stating that this action affects title to the subject property identified in their Complaint for Quiet Title. On May 19, 2011, this Court granted Plaintiffs' request to stay the unlawful detainer action and to consolidate it with this civil action in which Plaintiffs' initially alleged by their Verified Complaint causes of action for quiet title, declaratory, and injunctive relief. The Verified Complaint alleged Plaintiffs were entitled to injunctive relief staying the unlawful detainer action until this civil action is resolved. Plaintiffs later filed a First Amended Complaint (FAC) alleging quiet title as their First Cause of Action.

P.J.A.
P. J. Argento, Judge
S. Portillo (jkp), Clerk
Page 1 of 5 Pages

RULING

## The Legal Effect of this Court's Prior Ruling Denying the Prior Motion to Dissolve and Transfer

This court's prior Order denying without prejudice GMAC's prior motion to dissolve the stay, sever, and transfer the unlawful detainer to the Moreno Valley does not give reasons for the denial. In perusing this Court's file for dates after July 13, 2012, no copy of the Final Supplemental Order (FSO), discussed below, was found until the November 1, 2012 Notice of Stay was filed. However, GMAC's moving papers for the prior motion made earlier in 2013 did not include a copy of the July 13, 2012 Order. The press of business in this department would support an inference that if the FSO were not provided in the moving papers for the prior motion, it would likely not have been considered. Also, even if the prior judicial officer had utilized that FSO at that time, the ruling was without prejudice, and so GMAC could properly make the motion again. This time both GMAC and Nguyen and Andres put the FSO squarely before the judicial officer for purposes of deciding the issue.

## The U.S. Bankruptcy Court FSO Does Not Prohibit GMAC from Pursuing Its Unlawful Detainer Action Against Nguyen and Andres

The first principal issue before the Court is whether GMAC presently has authority from the U.S. Bankruptcy Court to prosecute its unlawful detainer action against Nguyen and Andres.

GMAC's evidence consists of a judicially noticed Exhibit B "Final Supplemental Order" discussed below. Nguyen's evidence that the stay prohibits GMAC from prosecuting its unlawful detainer consisted primarily of Notice of Stay of Proceedings filed November 1, 2012 here in RIC1108478. That notice is based upon the Declaration of Yaron Shaham, an attorney for GMAC, SBN 217192. That Declaration of June 4, 2013 includes as an exhibit the FSO of July 13, 2012.

In other words, both sides have submitted the same FSO for consideration by this Court. There is thus no dispute as to the text of the FSO as fact. This Court's legal conclusion is that, as a matter of law, the FSO authorizes and does not prohibit GMAC from prosecuting the unlawful detainer.

As part of its title, the FSO includes within its scope orders in bold capitals: ". ...(III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURES AND EVICTIONS...." (FSO of July 13, 2012) Though a title describing the orders set forth below, the title itself is in the form of a general order "GRANTING " etc. , thus an express statement of specific intent to grant relief from the stay to the debtor in order to permit eviction. The FSO described the motion leading to the FSO in part in these words: "granting limited stay relief to permit ... borrowers or their tenants, as applicable, to prosecute direct claims and counter-claims in foreclosure and eviction proceedings...." In a section entitled , "Limited Relief from Automatic Stay: _Borrower Foreclosure and Eviction Proceedings_ " it is stated in paragraph 14: "The stay imposed by section 362(a) of the Bankruptcy Code applicable to ... pending and future eviction proceedings with respect to properties for which foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions: [¶] (a) except as set forth herein, a borrower ... shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan that is subject of the loan owned or serviced by a Debtor ... or eviction proceeding, where a final judgment ... has not been awarded...." (FSO ¶14(a)(Emphasis supplied.).)

Paragraph 14 of the FSO thus authorizes Plaintiffs as borrowers to assert defenses to an eviction proceeding, where, as here, there has been no final judgment awarded. Nguyen and Andres would not have bankruptcy court permission to defend against eviction in the unlawful detainer proceeding if GMAC were not permitted to proceed with its unlawful detainer. Because a bankruptcy stay is ordinarily upon creditors including persons with monetary claims against the debtor, it makes sense that the bankruptcy court would authorize as soon as possible a debtor such as GMAC to prosecute actions that would result in the acquisition (foreclosure) and possession (unlawful detainer) of an asset such as the subject property here, because it could be used to pay creditors.

However, the FSO itself also provides that "disputes regarding the extent, application and/or effect of the automatic stay under the [FSO]" "shall be heard and determined in the Debtor's jointly administered bankruptcy cases pending in the United States Bankruptcy Court for the Southern District of New York." (FSO ¶ 23.)

One way of interpreting paragraph 23 is to conclude that this state court lacks jurisdiction to determine a dispute as to the extent or effect of the automatic stay. That prospect is one reason to give the parties herein an opportunity to seek express clarification, as described below, in the bankruptcy court as to whether the FSO does or does not prohibit GMAC from prosecuting its unlawful detainer action. But here, this court has concluded as a matter of law that the FSO text as fact is undisputed and that the undisputed FSO text does not expressly or impliedly prohibit GMAC from prosecuting its unlawful detainer, and that it impliedly authorizes GMAC to prosecute its unlawful detainer because it authorizes Nguyen and Andres to defend against it as an eviction action.

This Court may be incorrect. Without an express U.S. bankruptcy court order declaring that the FSO or subsequent order from the bankruptcy court does prohibit GMAC from prosecuting its unlawful detainer action, this court holds it has jurisdiction to re-commence the unlawful detainer action. But in caution and fairness, today's rulings are stayed for 45 days so that either Plaintiffs, Defendants, or both may seek from the bankruptcy court an express, particularized clarification to the effect that GMAC may or may not prosecute Nguyen and Andres. Also they may seek an order that paragraph 23 precludes this court from deciding whether the FSO does or does not prohibit GMAC from prosecuting its unlawful detainer action.

## The Effect of Sustaining the Demurrer to Plaintiffs' Cause of Action to Quiet Title

Another judicial officer sustained without leave to amend Defendant GMAC's Demurrer to the Plaintiffs' cause of action to quiet title in their First Amended Complaint. An order sustaining a demurrer is not appealable; there must be a judgment based upon a demurrer being sustained without leave to amend. Here, two other causes of action remain; both are stayed by the FSO. The legal significance for this court, absent an appellate judgment reversing this trial Court's finding that the facts pleaded were insufficient to constitute a cause of action to quiet title is this: Plaintiffs have failed to plead facts sufficient to quiet title in themselves. This is **not** a finding that Defendant GMAC holds title. It is merely a finding that Plaintiffs' do not hold title pursuant to their cause of action to quiet title. But that weighs substantially toward re-commencing the unlawful detainer.

## The Unlawful Detainer's Status

In the unlawful detainer action, Nguyen's and Andres Motion for Summary Judgment was brought on the ground that GMAC had "no standing" – that GMAC was not a proper Plaintiff entitled to possession. This

was not a motion for summary adjudication of issues. In denying the motion for summary judgment, the judge addressed the legal issue of whether GMAC's title could be challenged in an unlawful detainer proceeding; the judge concluded on the basis of *Chaney v. Trauzsettle* (1937) 9 Cal.2d 158 that it could not. The judge also cited the presumptions of Civil Code section 2924 as facts pointing to GMAC as a proper plaintiff as the holder of a trust deed acquired at a trustee's sale. However, there was also evidence before the judge to the contrary effect that GMAC was "a servicer of the trust deed." (J. Mink, MVC1100653, Rul. on MSJ, May 9, 2011.) This dispute as to material fact as to whether GMAC was a proper plaintiff justified the denial of the motion for summary judgment brought by Nguyen and Andres. That observation was not a finding a fact that GM was not a proper plaintiff as a matter of law because the role of a judge in denying a motion for summary judgment is to identify disputed material facts, not to choose between the competing versions of material fact in dispute—here servicer with no standing to file a unlawful detainer versus trust deed holder, which is relevant evidence of standing to file an unlawful detainer action  All the ultimate facts and defenses alleged in the unlawful detainer remain un-adjudicated after a two year period during which Plaintiffs were given the opportunity to prove their quiet title cause of action.

A week after the denial of their MSJ, Plaintiffs Nguyen and Andres filed the present case, and they obtained on June 30, 2011 ex-parte orders consolidating this case with the unlawful detainer and staying proceedings on the unlawful detainer, not on the basis of a bankruptcy order, but upon state law grounds. This consolidation and stay were justified because of a common issue of ownership of the subject property raised by Plaintiffs' action to quiet title in them, and GMAC's claimed status as title holding older as relevant to a determination of its status as a proper plaintiff in the unlawful detainer action.

<u>This State Court's Stay of the Unlawful Detainer is Dissolved</u>

The state court stay gave Plaintiffs the opportunity to prove in their quiet title action that they held title on the ground that the foreclosure proceedings were improperly conducted. Plaintiffs failed to plead sufficient facts to constitute a cause of action for quiet title. They had their opportunity, they failed, and they have not appealed or otherwise sought review or reconsideration of this court's sustaining of the demurrer without leave to amend. There may be good reasons for their choices. But the stay has lasted for more than two years, and Plaintiffs do not deny they defaulted in paying upon their deed of trust. State policy provides that unlawful detainer actions should be decided promptly. It is time for the stay upon the unlawful detainer to be dissolved and for the unlawful detainer to be severed and tried.

<u>Some Equitable Issues May Be Raised Unlawful Detainer Proceeding</u>

In the unlawful detainer action, GMAC will have the burden of proving by a preponderance of the evidence that it has standing, that is, a right to possession. Right to possession is the element to be proved, not title, though title can be a fact relevant to standing. At trial the finder of fact will have to weigh the evidence supporting GMAC's status as a proper plaintiff with standing against the evidence pointing its actual status being a loan servicer or other status that would not qualify it as a proper plaintiff.

In his "Equitable Defense in Foreclosure Evictions Summary" (2013), used to teach judges about the modern law of unlawful detainer, Commissioner Lowell Richards, Contra Costa Superior Court, writes: "The general rule is that in an unlawful detainer proceeding, challenges to <u>ownership</u> of the subject property are not allowed. CCP sec. 1161a provides that a plaintiff who qualifies as a bona fide purchaser for value, and who presents a trustee's deed reciting a proper foreclosure process, earns a

conclusive presumption of ownership. There appears, however, to be one combination of events that may allow a challenge to the <u>foreclosure process</u> to be heard. That combination occurs when four facts are proffered in the form of reliable evidence by the defendant of the unlawful detainer. All four are required to allow the defense to be presented at trial. [1¶] the action is a post-foreclosure eviction by plaintiff-beneficiary versus defendant – former owner/trustor of the property; [2¶] the plaintiff was not a bona fide purchaser for value at a trustee's sale; [3¶] the defendant alleges fraud or defects in the foreclosure process by which the plaintiff acquired the trustee's deed; and [4 ¶] the defendant tenders the amounts due up to the date of trial."   Though *Chaney v. Trauzsettle* (1937) 9 Cal.2d 158 states the general rule, the law has since developed such that Nguyen and Andres may properly defend against their eviction on equitable grounds like or similar to those identified by Commissioner Richards.

^

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
4050 Main Street
Riverside, CA   92501
www.riverside.courts.ca.gov

CLERK'S CERTIFICATE OF MAILING

LUAN NGUYEN

vs.                                          CASE NO. RIC1108478

GMAC MORTGAGE LLC

TO:

I certify that I am currently employed by the Superior Court of
California, County of Riverside and I am not a party to this action
or proceeding. In my capacity, I am familiar with the practices and
procedures used in connection with the mailing of correspondence. Such
correspondence is deposited in the outgoing mail of the Superior
Court. Outgoing mail is delivered to and mailed by the United States
Postal Service, postage prepaid, the same day in the ordinary course
of business. I certify that I served a copy of the attached
06/28/13 on this date, by
depositing said copy as stated above.

Court Executive Officer/Clerk

Dated: 07/10/13                      by:
                                          SANDRA PORTILLO, Deputy Clerk

Notice 'CCM' has been printed for the following Attorneys/Firms
or Parties for Case Number RIC1108478 on  7/10/13:

GRAHAM & MARTIN LLP                          SEVERSON & WERSON
3130 S HARBOR BLVD STE 250                   ONE EMBARCADERO CORPORATION
SANTA ANA, CA 92704                          SUITE 260
                                             SAN FRANCISCO, CA 94111

Notice 'CCM' has been printed for the following Attorneys/Firms
or Parties for Case Number RIC1108478 on  7/10/13:

GRAHAM & MARTIN LLP                          SEVERSON & WERSON
3130 S HARBOR BLVD STE 250                   ONE EMBARCADERO CORPORATION
SANTA ANA, CA 92704                          SUITE 260
                                             SAN FRANCISCO, CA 94111

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS; (II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND EXPENSES**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion. Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.


1212020120713000000000011

EXHIBIT A

-4-

12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
                                    Pg 2 of 19

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim Supplemental Order on June 15, 2012

[Docket No. 391]; and the Court having entered a final order on June 15, 2012 granting the GA

Servicing Motion on a final basis [Docket No. 401]; and the Court having entered a final order

on June 15, 2012 granting the Non-GA Servicing Motion on a final basis [Docket No. 402]; and

it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion

having been given and it appearing that no other or further notice need be provided; and the

National Association of Consumer Bankruptcy Attorneys, on its own behalf and in a

representative capacity, two individuals who are debtors under Chapter 13, and Edward Boltz,

counsel for those individuals, having filed jointly the Limited Omnibus Objection To The

Servicing Orders And Debtors' May 31, 2012 Motion For A Supplemental Order [Docket No.

221] (the "NACBA Objection"); and the Committee having filed the Omnibus Response And

Reservation Of Rights Of The Official Committee Of Unsecured Creditors To Certain Of The

Debtors' First Day Motions [Docket No. 240]; and the Debtors having filed the Omnibus Reply

To Objections To Entry Of Final Orders For Specific "First Day" Motions And Related Relief

[Docket No. 254]; and upon the record of the hearing; and it appearing that the relief requested

EXHIBIT A
-5-

12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 3 of 19

by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and after due deliberation thereon; and any objections to the Motion, including the

NACBA Objection, having been withdrawn, resolved, or overruled on the merits; and sufficient

cause appearing therefor, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED on a final basis, as set forth herein, and any

objections to the Motion are hereby overruled;

Loss Mitigation Programs

2.    The Debtors are authorized, but not directed in their sole and absolute

discretion and subject to available funding, to continue developing and implementing loss

mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to

the Petition Date, including, but not limited to, making incentive payments to borrowers in

connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction

proceedings, or in the form of borrower rebates for loan payoffs including honoring all

obligations related thereto that accrued in whole or in part prior to the Petition Date (collectively,

the "Loss Mitigation Programs"); provided, however, that the aggregate cash payments made by

the Debtors to individual borrowers under the Loss Mitigation Programs that are not reimbursed

to the Debtors shall not exceed $550,000 per month (the "Monthly Cap"), absent consent of the

Committee or further order of the Court; provided, further, however, that to the extent the

Debtors do not exceed the Monthly Cap in any month they shall be entitled to utilize the

difference between the actual amount and the Monthly Cap in any succeeding month. The

Debtors shall provide monthly reports to the Committee and the Office of the United States

Trustee for the Southern District of New York (the "U.S. Trustee"), which reports shall be in a

EXHIBIT A

-6-

12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 4 of 19

form agreed to by the Debtors and the Committee and such additional information as shall be

reasonably requested by the Committee, in each case, concerning the Loss Mitigation Programs.

        3.     Cash payments made by the Debtors to individual borrowers under the

Loss Mitigation Programs for which the Debtors are not reimbursed shall not exceed \$4.2

million in the aggregate, absent consent of the Committee or further order of the Court. For the

avoidance of doubt, the limitation on the amount of cash payments provided for in this paragraph

3 is in addition to the limitation on the amount of cash payments provided for in paragraph 12

hereof.

<u>Settlement Procedures</u>

        4.     The Debtors are authorized, but not directed to compromise and settle

certain claims brought by the Debtors against any non-insider third parties in connection with

foreclosure, eviction, or borrower bankruptcy proceedings (each a "<u>Settling Party</u>") or by a

Settling Party against any of the Debtors (each, a "<u>Claim</u>") in accordance with the following two-

tiered procedures (the "<u>Settlement Procedures</u>"):

        <u>Tier I</u>: The Debtors, in their sole discretion, may enter into,
execute and consummate written agreements of settlement with
respect to Claims that will be binding on the Debtors and their
estates without further action by this Court or notice to any party
and grant such Settling Parties cash payments or allowed
prepetition claims in amounts not to exceed \$40,000 in full
settlement of such Claim (each, a "<u>Tier I Settlement</u>").

        <u>Tier II</u>: The Debtors may enter into, execute and consummate
written agreements of settlement with respect to Claims that will
be binding on the Debtors and their estates without further action
by this Court or notice to any party and grant such Settling Parties
cash payments or allowed prepetition claims in amounts exceeding
\$40,000 but less than \$100,000 in full settlement of such Claims
(each, a "<u>Tier II Settlement</u>"); <u>provided</u>, that in each case:

        (a) The Debtors must provide advance written notice (by
formal or informal means, including by e-mail correspondence) of
the terms of any Tier II Settlement to (x) the U.S. Trustee, 33

EXHIBIT A
-7-

Whitehall Street, 21st Floor, New York, New York 10004, Attn:
Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin
Naftalis & Frankel LLP, 1177 Avenue of the Americas New York,
NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal;
and (z) counsel to the administrative agent for the Debtors'
providers of debtor in possession financing, Skadden, Arps, Slate,
Meagher & Flom LLP, 4 Times Square, New York, New York
10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer
(collectively the "Notice Parties")

(b) Those Notice Parties wishing to object to any proposed
Tier II Settlement must serve a written objection (by formal or
informal means, including by e-mail correspondence) on the
Debtors, so that it is received by no later than 4:00 p.m. (prevailing
Eastern Time) on the day that is seven (7) calendar days from the
date the Notice Parties received written notice of such Tier II
Settlement (the "Settlement Objection Deadline"). Objections
should be addressed to the proposed attorneys for the Debtors,
Morrison & Foerster LLP, 1290 Avenue of the Americas, New
York, New York 10104, Attn: Larren M. Nashelsky
(LNashelsky@mofo.com) and Norman S. Rosenbaum
(NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice
Party, the parties will confer and attempt to resolve any
differences. Failing that, the Debtors may petition the Court for
approval of the Tier II Settlement in accordance with any case
management orders entered in the Chapter 11 cases. An objection
by a Notice Party with respect to a given Tier II Settlement shall
not delay the finality or effectiveness of any other settlement to
which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a
Tier II Settlement from a Notice Party by the Settlement Objection
Deadline, then such Tier II Settlement shall be deemed approved
and the Debtors and Settling Parties may carry out the terms of
such Tier II Settlement without further notice or Court approval.

5.      The Debtors shall be required to seek approval from the Court in order to

enter into and consummate any proposed settlement of a Claim with a settlement amount in

excess of $100,000.

6.      The Debtors are authorized in their sole discretion, but not directed, to

settle claims where some or all of the consideration is being provided by a third party and/or

EXHIBIT A
-8-

where the Debtors are releasing claims against creditors or third parties provided the Debtors otherwise comply with the Settlement Procedures.

7.     The Settlement Procedures are without prejudice to the right of the Debtors to seek an order of this Court approving additional or different procedures with respect to specific claims or categories of claims. For claims relating to matters specified in paragraphs 14(a) and 15(a) of this Order that were resolved pursuant to a settlement prior to the Petition Date, but where such settlement has not been consummated, the Debtors are authorized, but not directed to, consummate said settlements in accordance with the Settlement Procedures set forth in this Order.

8.     Notwithstanding anything to the contrary contained herein, this Order shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses, or resolve any controversy authorized by any other order of the Court.

9.     Nothing in this Order or the Motion shall constitute a determination or admission of liability or of the validity or priority of any claim against the Debtors, and the Debtors reserve their rights to dispute the validity or priority of any claim asserted.

10.     The authority granted in this Order shall not replace or obviate the need to comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements contemplated in the Motion. All settlements made pursuant to the Settlement Procedures shall, to the extent applicable, be made in accordance with the Debtors' settlement procedures in effect as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time; provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with notice of any material changes to the Internal Settlement Protocol.

EXHIBIT A
-9-

ny-1046923

11.    The Debtors shall provide monthly reports to the Committee and the U.S.
Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such
additional information as shall be reasonably requested by the Committee, in each case,
concerning settlements of any Claims pursuant to the Settlement Procedures.

12.    Cash payments made by the Debtors under the Settlement Procedures shall
not exceed $4 million in the aggregate, absent consent of the Committee or further order of the
Court.

13.    Any period prescribed or allowed by the Settlement Procedures shall be
computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

Borrower Foreclosure And Eviction Proceedings

14.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to
(a) pending and future foreclosure actions initiated by the Debtors or in those states providing for
non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with
respect to properties for which a foreclosure has been completed or is pending, is hereby
modified pursuant to the following terms and conditions:

(a)    except as set forth herein, a borrower, mortgagor, or lienholder
(each, an "Interested Party") shall be entitled to assert and prosecute direct claims and
counter-claims relating exclusively to the property that is the subject of the loan owned or
serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or
precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction
proceeding, where a final judgment (defined as any judgment where the right to appeal or
seek reconsideration has expired or has been exhausted) permitting the foreclosure or

eviction has not been awarded or, with respect to completed foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to prosecute appeals with respect to any such direct claims or counter-claims;

(b)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

(c)    absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Interested Party on behalf of any other Interested Party or class of Interested Parties;

(d)    under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order, including, without limitation, a Mandatory Monetary Claim;

(e)    the Debtors shall retain the right, upon appropriate motion and notice to any affected Interested Party, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the

EXHIBIT A
-11-

Debtors will not object to the Interested Party's telephonic participation at any hearing on the motion; and

(f)    nothing set forth herein shall preclude or limit any Interested Party from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

15.    The automatic stay imposed by section 362(a) of the Bankruptcy Code applicable against a borrower who currently has filed, or in the future files, for bankruptcy protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby modified pursuant to the following terms and conditions:

(a)    except as set forth herein, a Bankruptcy Borrower or a trustee duly appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a "Bankruptcy Trustee") shall be entitled to: (i) assert and prosecute or continue to prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or adversary proceeding, as applicable, to determine the validity, priority or extent of a Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce (including to reduce to $0) or fix the amount of the Debtors' claim or lien against the Bankruptcy Borrower's property; (v) prosecute appeals with respect to items (i) through (iv) above; (vi) seek an accounting from the Debtors with respect to the Bankruptcy

Borrower's loan; and (vii) enter into, execute and consummate a written agreement of settlement with the Debtors where the Debtors elect to enter into such settlement in their sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (vi) above;

(b)    except as set forth herein, a Bankruptcy Borrower shall be entitled to (i) engage in court-supervised or court-authorized loss-mitigation programs regarding the Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and consummate settlements of claims and liens in accordance with the ordinary course of the Debtors' business and applicable law;

(c)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's direct claims, counter-claims, motions or adversary proceedings: (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for violation of any local, state or federal statute or other law in connection with the origination of the Bankruptcy Borrower's loan; (iii) for relief that if granted, would have no effect on the amount, validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or (iv) asserted in the form of a class action or collective action; provided however, a Bankruptcy Trustee or Bankruptcy Borrower, solely in connection with their objections to Debtors' proof of claim permitted by paragraph 15(a)(i) or proceedings permitted by 15(a)(iii), may assert claims of the type covered by subsection (i) or (ii) of this paragraph 15(c);

EXHIBIT A
-13-

(d)     absent further order of the Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankruptcy Borrower on behalf of any other class of borrowers;

(e)     with the sole exception of objections to Debtors' proofs of claim permitted by paragraph 15(a)(i) above and proceedings described in 15(a)(iii) above and solely for purposes of reducing any such claim and not for the purpose of obtaining an affirmative recovery or award, under no circumstances shall a Bankruptcy Borrower or Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

(f)     the Debtors shall retain the right, upon appropriate motion and notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the Debtors will not object to the Interested Party's telephonic participation at any hearing on the motion; and

(g)     nothing set forth herein shall preclude or limit any Bankruptcy Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Foreclosures By The Debtors On Senior Loans*

16.     The stay imposed by section 362(a) of the Bankruptcy Code applicable to pending and future foreclosure actions initiated by the Debtors in cases where they act as

EXHIBIT A
-14-

servicer for the Senior Loan and also own (or for which the applicable public land records otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the following terms and conditions:

(a)    except as otherwise set forth herein, the Debtors shall be entitled to assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-Judicial State;

(b)    the Debtors shall be entitled to take such actions as are necessary to extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and marketable title with respect to the property underlying a Senior Loan in connection with any sale or other disposition of such property;

(c)    the Debtors shall be entitled to seek all appropriate relief with respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy Borrower without further order of the Court; and

(d)    the Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning Junior Foreclosure Actions.

.D.    *Actions Involving Amount, Validity Or Priority Of Liens*

17.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to actions involving the amount, validity, and/or priority of liens commenced by third parties purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is

hereby modified pursuant to the following terms and conditions:

(a)    except as otherwise set forth herein, a Third Party Claimant shall be

entitled to assert and prosecute direct claims and counter-claims relating exclusively to the

property that is the subject of the loan owned or serviced by a Debtor in connection with

any Title Dispute, and to prosecute appeals with respect to any such direct claims or

counter-claims;

(b)    absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Third Party Claimant direct

claims and counter-claims: (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or

(iii) asserted in the form of a class action or collective action;

(c)    absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Third Party Claimant on

behalf of any other Third Party Claimant or class of Third Party Claimants;

(d)    under no circumstances shall a Third Party Claimant be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of the Order;

(e)    the Debtors shall be entitled to take such actions as are necessary to

clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

EXHIBIT A
-16-

clear and marketable title with respect to such property in connection with any sale,

foreclosure or other disposition of such property;

(f)    the Debtors shall retain the right, upon appropriate motion and

notice to any affected Third Party Claimant, to seek to impose any provision of section

362(a) of the Bankruptcy Code modified by the Order; and

(g)    nothing set forth herein shall preclude or limit any Third Party

Claimant from seeking relief from the automatic stay under section 362(a) of the

Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

Payment of Securitization Trustee Fees and Expenses

18.    The Debtors shall continue to perform all of their respective servicing

duties and servicing related duties, including, but not limited to, their duties as master servicer,

under all the governing agreements (including, without limitation, pooling and servicing

agreements, servicing agreements, or any other agreements concerning or relating to the Debtors'

obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or

losses) (collectively, the "Agreements") relating to Debtor-sponsored securitization transactions

and non-Debtor sponsored securitization transactions to which any of The Bank of New York

Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company

Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any

affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of

their respective capacities as trustee (collectively, the "Trustees") and one or more of the Debtors

is a party, including but not limited to, making all principal, interest or other servicing advances

(including property protection advances) and reimbursing, indemnifying, defending and holding

harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

EXHIBIT A
-17-

or expense (including fees and disbursements of counsel or agents) incurred by any of the

Trustees in the performance of their duties or their administration of the trusts or other agencies

under the Agreements to the extent required by the Agreements. For the avoidance of doubt, the

Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in

connection with reviewing and analyzing the request by the Debtors to approve the MBS

Settlement Agreement, and in connection with reviewing and analyzing amendments to the

Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the

MBS Settlement Agreement or the Platform Sale. Notwithstanding the foregoing, nothing in this

paragraph 18 shall require any Debtor (i) to repurchase any mortgage loans on the basis of

alleged breaches of representations, warranties or other requirements of the Agreements, or make

any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or

(ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the

Agreements under which such other Debtor entity or non-Debtor affiliate are required to

repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or

other requirements of the Agreements, or make any make-whole payments with respect to any

mortgage loans pursuant to the Agreements; and nothing in this paragraph 18 shall be deemed to

impose liability on any Debtor with respect to such alleged breaches or make-whole payment

requirements.

19.    The Trustees shall submit invoices to (a) counsel to the Debtors,

(b) counsel to the Committee, and (c) the U.S. Trustee, and all such invoices shall include (i) an

itemization of all professional fees by task with a detailed description of the work performed in

connection with such task, (ii) a description of related expenses, and (iii) a description of any

indemnity claims. Thereafter, within thirty (30) days of presentment of such invoices, if no

EXHIBIT A
-18-

written objections to the reasonableness of the fees and expenses charged in any such invoice (or

portion thereof) is made by the Debtors, the Committee, or the U.S. Trustee, the Debtors are

authorized and directed to pay all reasonable fees, costs and expenses and all indemnity claims

referred to in paragraph 18 (including without limitation, attorney, financial advisor, consultant

and expert fees and costs) incurred postpetition by any of the Trustees relating to the

performance of each of the Trustees' duties or the administration of the trusts or other agencies

under the Agreements (the "Trustee Expenses") that are not subject to an objection by the

Debtors, the Committee, or the U.S. Trustee without further order from the Court. Any objection

to the payment of the Trustee Expenses shall be made only on the basis of "reasonableness," and

shall specify in writing the amount of the contested fees and expenses and a detailed basis for

such objection. To the extent an objection only contests a portion of an invoice, the undisputed

portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any

portion thereof) is not otherwise resolved between the Debtors, the Committee, or the U.S.

Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a

determination as to the reasonableness of the disputed amounts. This Court shall resolve any

dispute as to the reasonableness of any fees and expenses.

20.     To the extent either the Committee, or the RMBS Trustees determine that

the Trustee Expenses were improperly or mistakenly allocated to an RMBS trust or to the

Debtors' estates, the Committee and the RMBS Trustees reserve the right to seek to correct the

allocation of the Trustee Expenses as between the RMBS trusts or the Debtors' estates in

accordance with the applicable Agreement, and such adjustment shall be the Committee's and

RMBS Trustees' sole remedy arising from a misallocation. All Trustee Expenses for which

(a) no objection under paragraph 19 has been interposed, or (b) where such an objection has been

EXHIBIT A
-19-

interposed and the amount of Trustee Expenses determined by the Court to be reasonable, shall

be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding

the entry of an order authorizing the assumption and assignment or rejection of any Agreement.

However, the Debtors will not be responsible for any fees, costs and expenses incurred with

respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing

the rejection of such Agreement.

          21.    If any or all of the provisions of this Order are hereafter reversed,

modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect

the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt

of written notice by the Trustees of the effective date of such reversal, stay, modification or

vacatur (the "Notice Date"). Notwithstanding any such reversal, stay, modification or vacatur,

the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to

or after the Notice Date by the Debtors shall be governed in all respects by the original

provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies,

privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

          22.    Notwithstanding the Debtors' obligations set forth in paragraphs 18 and

19, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in

any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code

section 365.

Other Relief

          23.    Any disputes regarding the extent, application and/or effect of the

automatic stay under this Order shall be heard and determined in the Debtors' jointly

administered bankruptcy cases pending in the United States Bankruptcy Court for the Southern

EXHIBIT A
-20-

District of New York, Case No. 12-12020 in accordance with the Case Management Order

entered in the Debtors' cases [Docket No. 141] and such other and further orders as may be

entered by the Court.

    24.    The Debtors are authorized and empowered to take all actions and execute

such documents as may be necessary or appropriate to carry out the relief granted herein.

    25.    Nothing herein shall be deemed to limit the rights of the Debtors to

operate their business in the ordinary course, and no subsequent order shall be required to

confirm such rights.

    26.    Notwithstanding the relief granted herein and any actions taken hereunder,

nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any

contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their

non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or

otherwise.

    27.    Notwithstanding anything to the contrary in this Order, any action to be

taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral

order or debtor in possession financing order entered in these chapter 11 proceedings. All

amounts authorized to be paid pursuant to this Order are subject to the limitations and

restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement). To

the extent that there is any inconsistency between the terms of this Order and the terms of any

order relating to postpetition financing or cash collateral, the terms of the orders relating to

postpetition financing or cash collateral shall govern.

    28.    Notwithstanding anything herein to the contrary, this Order shall not

modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

EXHIBIT A

-21-

12-12020-mg    Doc 774    Filed 07/13/12    Entered 07/13/12 17:05:30    Main Document
Pg 19 of 19

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

      29.    Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

      30.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

      31.    Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

      32.    This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.

Dated:      July 13, 2012
           New York, New York

                          /s/Martin Glenn
                          MARTIN GLENN
              United States Bankruptcy Judge

EXHIBIT A
-22-

## CERTIFICATE OF SERVICE

I am over the age of 18 and not a party to this case. I am a resident of or employed in the county where the mailing occurred. My business address is 3130 South Harbor Blvd., Suite 250, Santa Ana, California 92704.

I SERVED THE FOLLOWING:

1.) Notice.

by placing the documents in an envelope and mailing them via US mail to the following persons:

NAME AND ADDRESS OF EACH PERSON TO WHOM DOCUMENTS WERE EMAILED:

Counsel for GMAC Mortgage, LLC:

Yaron Shaham
Severson & Werson
The Atrium, Suite 700
Irvine, CA 92612

John Sullivan
Edward Buell
Severson & Werson
One Embarcadero Center, Suite 2600
San Francisco, CA 94111

Jason W. Short
Renee Belcastro
Pite Duncan LLP
4375 Jutland Drive, Suite 200, PO Box 17934
San Diego, CA 92177-0934

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: October 3, 2013