# ATTACHMENT 1

# ResCap

MORRISON | FOERSTER

## Claim Information

| Claim Number | 4722 |
|---|---|
| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | See attached letter dated June 21, 2013 (7 pages) and Exhibits 1 through 11. |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| Loan Number: | 0601310410 |
|---|---|

**Address of property related to the above loan number:**

5 Barrows Street

| City: Middleborough | State: MA | ZIP Code: 02346 |
|---|---|---|

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 4722
James Ladd and Anne Ladd

Claim No. 4722



## Protecting rights. Improving lives.

June 21, 2013

BY MAIL and EMAIL TO Claims.Management@gmacrescap.com

Claims Management
Residential Capital, LLC
PO Box 385220
Bloomington, Minnesota 55438

    Re:  Your Claim Number: 4722
         Proof of Claim filed by James Ladd and Anne Ladd
         GMAC Mortgage, LLC, Case No. 12-12032

Dear Sir or Madam:

I represent James Ladd and Anne Ladd regarding the captioned claim. This letter is in response to your written request for additional information concerning Mr. and Mrs. Ladd's proof of claim that I filed on their behalf.

The basis for my clients' claim that is GMAC Mortgage, LLC, wrongfully foreclosed on Mr. and Mrs. Ladd's home located at 5 Barrows Street, Middleborough, Massachusetts.

*Background.* James and Anne Ladd purchased their home located at 5 Barrows Street, Middleborough, Massachusetts, on May 30, 1997.

On June 25, 2005, Mr. and Mrs. Ladd obtained a new mortgage loan in the amount of $267,800. The lender was Advanced Financial Services, Inc., and the mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as a nominee for the Advanced Financial Services, Inc. *See,* Mortgage dated June 25, 2005, attached as Exhibit 1.

On April 15, 2009, GMAC Mortgage, LLC, as the servicer of the subject mortgage, sent Mr. Ladd a Right-to-Cure Notice as required by the mortgage itself (para. 22) and under Massachusetts law, M.G.L. c. 244, § 35A. *See,* Right to Cure Notice, attached as Exhibit 2.

United Way   A United Way Member Agency   63 Fountain Street, Suite 304 • Framingham, MA 01702
508.620.1830 (TDD) • T 800.696.1501 • F 508.620.2323 • www.mwlegal.org

*Claim No. 4722*

On December 30, 2009, Residential Funding Corporation[1] appears to have acquired ownership of the subject mortgage. *See*, Notice from GMAC Mortgage dated January 5, 2010, attached as Exhibit 3.  According to the notice, this transfer of ownership of mortgage (i.e., the assignment) was **not** publicly recorded.[2]

On January 4, 2010, MERS purported to assign the mortgage loan to GMAC Mortgage, LLC ("GMAC").  This assignment was recorded at the Plymouth County Registry of Deeds on January 22, 2010.  *See*, Assignment, attached as Exhibit 4.

GMAC foreclosed on the property on October 14, 2011.  GMAC transferred the property to Federal Home Loan Mortgage Corporation by an assignment of bid on February 3, 2012.  *See*, Foreclosure Deed and Assignment of Bid, attached as Exhibit 5.

*Legal claims.*  The foreclosure was wrongful for multiple reasons: GMAC failed to strictly comply with the statutory power of sale in Massachusetts, its Right to Cure Notice violated M.G.L. c. 244, § 35A, it had an invalid assignment, it violated the Home Affordable Modification Program, and it violated M.G.L. Chapter 93A.

*Failure to strictly comply with the statutory power of sale.*  In Massachusetts, the foreclosure procedures are governed by M.G.L. 183, § 21, and M.G.L. c. 244 (titled "Foreclosure and Redemption of Mortgages").  The statutory power of sale, set forth in M.G.L. c. 183, § 21, provides that upon default by the borrower, the mortgagee may sell the property after "first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale."  *See, also, U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 646 (2011) ("Where a mortgage grants a mortgage holder the power of sale…it includes by reference the power of sale set out in G.L. c. 183, § 21[;]" and only the original mortgagee or a holder by virtue of a validly executed assignment may exercise the statutory power of sale).  If the mortgagee fails to strictly comply with the statutory power of sale, then

---

[1]Residential Funding Corporation is a subsidiary of Residential Capital Company, LLC.  Residential Capital Company, LLC, is a subsidiary of GMAC, LLC.  As such, these companies are separate legal entities.

[2]It should be noted that pursuant to St. 2012, c. 194, M.G.L. c. 244, section 14 was amended (effective November 1, 2012) to require that all mortgage assignments be recorded to show a complete chain of title from the original lender to the foreclosing entity, presumably to avoid the confusion caused by off-record transfers of title.

*Claim no. 4722*

the foreclosure sale is wholly void. *Moore v. Dick*, 187 Mass. 207, 211 (1975).

*Violation of M.G.L. c. 244, § 35A.* One of the statutes relating to the foreclosure of mortgages is the right to cure notice found in M.G.L. c. 244, § 35A. Section 35A requires the mortgage holder to give the borrower a notice of his/her right to cure the mortgage default.[3] At the relevant time in this case, Section 35A provided:

> (a)    Any mortgagor of residential real property located in the commonwealth…shall have a 90-day right to cure a default of a required payment as provided in such residential mortgage or note secured by such residential real property by full payment of all amounts that are due without acceleration of the maturity of the unpaid balance of such mortgage….
> (b)    The mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment…by any method authorized by this chapter or any other law until at least 90 days after the date a written notice is given by the mortgagee to the mortgagor....
> (c)    The notice required in subsection (b) shall inform the mortgagor of the following:…(4) the name and address of the mortgagee, or anyone holding thereunder, and the telephone number of a representative of the mortgagee whom the mortgagor may contact if the mortgagee disagrees with the mortgagee's assertion that a default has occurred or the correctness of the mortgagee's calculation of the amount required to cure the default[.]

M.G.L. c. 244, section 35A (*see,* Chapter 206 of the Acts of 2007, Section 11) (attached as Exhibit 6).

Numerous trial courts throughout Massachusetts have found that Section 35A is part of the statutory scheme regulating foreclosure, and therefore, it must be strictly adhered to in order to have a valid foreclosure sale pursuant to the power of sale. *See, e.g., Ross v. Deutsche Bank Nat. Trust Co.*, 2013 WL 1225621 (D.Mass., March 27, 2013) (Young, J.) (Section 35A is part of the Massachusetts statutory scheme regulating foreclosures, and must be strictly complied with) (attached as

---

[3] A notice of default, acceleration and cure right is also required by Paragraph 22 of the Ladds' mortgage itself.

*Claim no. 4722*

Exhibit 7); *Silva v. Deutsche Bank Trust Company*, Middlesex Superior Court, Case No. 2012-3951-H, 2012 WL 601681 (November 14, 2012) (Wilson, J.) (the principle of "strict compliance" applies equally to the notice requirements in M.G.L. c. 244, § 35A, as it does to M.G.L. c. 244, § 14) (attached as Exhibit 8); and *Federal Home Loan Mortgage Corp. v. Sensini*, Northeast Housing Court, Case No. 12-SP-0871 (Kerman, J.) (dismissing Plaintiff's complaint because the foreclosing entity failed to strictly comply with the requirements under Section 35A, regardless of any actual prejudice resulting from the defects) (attached as Exhibit 9).

In this case, the Right-to-Cure Notice sent to Mr. Ladd on April 15, 2009 (*see*, Right to Cure Notice, at Exhibit 2), appears to identify GMAC Mortgage LLC as the mortgagee, if it identifies a mortgagee at all, but the actual mortgagee at the time of the notice was clearly MERS. MERS was the original mortgagee and MERS did not assign the mortgage to GMAC Mortgage LLC until January 4, 2010 (see, MERS Assignment, at Exhibit 4), several months *after* GMAC Mortgage LLC gave Mr. Ladd the right to cure notice on April 15, 2009. Section 35A(c)(4) requires that the notice must include "the name and address of the mortgagee," but the notice did not provide any such information. Mr. Ladd's right to cure notice also failed to specify the name of a designated individual whom he could contact about the default, in violation of Section 35A(c)(4), as it refers only to the "Collections Department." Finally, Section 35A requires that the right to cure notice be sent exclusively by the mortgagee, which did not happen in this case. Because the right to cure notice here was issued by GMAC Mortgage LLC, an entity other than the mortgagee, and was substantively defective in content, there was not strict compliance with the statutory power of sale under M.G.L. c. 244, Section 35A, and thus the foreclosure is void.

*Invalid assignment to GMAC Mortgage, LLC*. In Massachusetts, only a current holder of the mortgage loan is able to exercise a statutory power of sale. *See*, M.G.L. c. 183, § 21. In *U.S. Bank National Association v. Ibanez*, 458 Mass. 637, 648 (2011), the Supreme Judicial Court found that the bank could not prove its authority to foreclose because it did not have a valid assignment of the mortgage at the time of the notice of sale and the subsequent foreclosure sale. Thus, in the case at bar, GMAC Mortgage LLC, as the foreclosing entity, must have held the mortgage at the time of the notice of sale and foreclosure sale in order to exercise the statutory power of sale.

In this case, Residential Funding Corp. acquired ownership of the mortgage first on December 30, 2009, (see Exhibit 3), prior to the assignment by MERS to GMAC on January 4, 2010, (see Exhibit 4). Therefore, in order for GMAC to have had proper authority to foreclose on the property and execute the foreclosure deed, there must have been an assignment or transfer from Residential Funding Corp. to either MERS or GMAC to complete the chain of title, and to establish GMAC's legal authority to foreclose.

After a diligent search of the Plymouth County Registry of Deeds where the property is located, undersigned counsel was not able to find any assignment from Residential Funding Corp. to GMAC (or to MERS). Because ownership in the mortgage had been transferred previously to Residential Funding Corp., GMAC did not receive anything in its assignment from MERS. *See, Powers v. Orr*, 10 Land Court Reporter 137 (February 15, 2002) (bank could not convey what it did not own). As a result, GMAC has never been a valid holder of the mortgage.

Since GMAC has never held the mortgage, its attempt to carry out the foreclosure sale is void. *Ibanez*, 458 Mass. 637, at 647 (foreclosing entity must hold the mortgage at the time of notice and sale). "[An] attempt to foreclose by a party that had not yet been assigned [the] mortgage results in 'structural defect that goes to the very heart of [the mortgagee's] ability to foreclose by advertisement,' and renders the foreclosure sale void." *Id.*, at 647 (quoting *Davenport v. HSBC Bank USA*, 739 N.W.2d 383 (2007)).

*Violation of the Home Affordable Modification Program*. In April 2009, the Ladds contacted GMAC Mortgage LLC for the purpose of requesting a loan modification under the Home Affordable Modification Program ("HAMP"). They provided all documentation required to GMAC, and as a result, GMAC offered them a HAMP Loan Workout Plan (Step One), which the Ladds accepted. *See*, HAMP Loan Workout Plan (Step One of Two-Step Documentation Process), attached as Exhibit 10. Upon the successful completion of Step One, GMAC gave the Ladds Step Two documents, consisting of the approved Loan Modifcation Agreement. See, GMAC Mortgage Letter dated February 24, 2010, and Loan Modification Agreement, attached as Exhibit 11. There were a few discrepancies with the Loan Modification Agreement, including whether the document needed to be notarized, and that the proposed escrow was $200 more than the actual escrow associated with the loan. The Ladds made numerous attempts to contact the loan modification specialist at GMAC without success, and GMAC never answered questions concerning the Loan

*Claim no. 4722*

Modification Agreement.  As a result, the Ladds were not able to execute the Loan Modification Agreement in a timely fashion. The Ladds were prepared to execute the Loan Modification Agreement subject to the resolution of the escrow issue, but instead, GMAC moved forward with the foreclosure.  GMAC was legally required to use good faith in administering the HAMP program, but in this case, it failed to do so.

*Violation of M.G.L. Chapter 93A.*  M.G.L. Chapter 93A prohibits any unfair or deceptive acts or practices in the conduct of any trade or commerce.  M.G.L. c. 93A, § 2.  GMAC Mortgage LLC has engaged in such trade or commerce in Massachusetts, and therefore, is subject to Chapter 93A. Chapter 93A liability is decided on a case-by-case basis, and has a very broad definition.  An act is unfair "if it is within the penumbra of some common-law, statutory, or other established concept of unfairness." *Linkage Corp. v. Trs. Of Bos. Univ.*, 425 Mass. 1, 27, 679 N.E.2d 191, 209 (1977).  Chapter 93A also grants to the Attorney General the power to promulgate rules and regulations that define certain acts and practices which violate Chapter 93A.  These rules and regulations have the force of law. *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 775, 407 N.E.2d 297, 306 (1980).  Section 3.16 of those regulations, 940 C.M.R. § 3.16, expressly prohibits conduct that fails to comply with existing statutes or laws meant for the protection of the public's health, safety, and welfare.  A violation of Section 3.16 is therefore a *per se* violation of Chapter 93A. *MacGillivary v. W. Dana Bartlett Ins. Agency of Lexington, Inc.*, 14 Mass.App.Ct. 52, 61 (1982).

In Massachusetts, foreclosure laws protect mortgage loan consumers.  The statutory power of sale set forth in G.L. c. 183, § 21, provides that upon default by the mortgagor, the mortgagee may sell the property but only after "first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale."  The wrongful foreclosure of Ladds' home, as explained above, constitutes an unlawful act under Chapter 93A.  In *Kattar v. Demoulas*, 433 Mass. 1, 739 N.E.2d 246 (2000), the defendants were found liable under Chapter 93A for wrongfully foreclosing on the plaintiff's property.  The SJC determined that the "[l]egality of underlying conduct is not necessarily a defense to a claim under c. 93A" even if the defendants had the right to foreclose.  *Kattar v. Demoulas*, 433 Mass. at 13.  Conduct that fails to comply with existing statutes or laws meant for the protection of the public's health, safety, and welfare is prohibited by 940 C.M.R. § 3.16(3).  However, a challenge to the validity of a foreclosure sale does not need to include a

Claim no. 4722

showing of actual prejudice resulting from defects in the
foreclosure procedures.  Further, conduct "in disregard of known
contractual arrangements" may also constitute a violation of
Chapter 93A.  *Anthony's Pier Four, Inc. v. HBC Association*, 411
Mass. 451, 474, 583 N.E.2d 806, 821 (1991).

GMAC Mortgage LLC should have acted in good faith and used
reasonable diligence to protect the interests of the mortgagor.
*Williams v. Resolution GGF OY*, 417 Mass. 377, 382-383, 630
N.E.2d 581 (1994).  Chapter 93A empowers a court to rescind a
foreclosure and re-convey the property to the former owner.
*Kattar v. Demoulas*, 433 Mass. at 17.  GMAC failed to act in good
faith when it refused to respond to the phone calls by the Ladds
to answer simple questions about the Loan Modification
Agreement, in which GMAC had invited such inquiry.  The Ladds
had every intention to modify their mortgage loan and prevent a
foreclosure sale.  GMAC's failure to respond to them and
finalize the HAMP loan modification is thus a violation of
Chapter 93A.

I hope this additional information is helpful in your
assessment of my clients' claims.  If you require any other
information or wish to speak with me directly, you can call me
at 508-629-1830, extension 226 or email me at
DDaley@mwlegal.org.

Sincerely,

Daniel Daley
Staff Attorney

c:    James and Anne Ladd
         (by mail without enclosures)

Claim no. 4722

# EXHIBIT 1

*Claim no. 4722* 76400

Received & Recorded
PLYMOUTH COUNTY
REGISTRY OF DEEDS
30 JUN 2005 09:48AM
JOHN R. BUCKLEY, JR.
REGISTER
Bk 30824 Pg 51-70

Return To:
Advanced Financial Services,
Inc.
25 Enterprise Center
Newport, RI  02842

Prepared By:

25 Enterprise Center,
Newport, RI  02842

-------------------------[Space Above This Line For Recording Data]-------------------------

# MORTGAGE

MIN 100049700006427203

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **June 25, 2005**
together with all Riders to this document.
**(B) "Borrower"** is **James B Ladd & Ann M Ladd**

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

2005-642720                                                    5-642720 5594

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3022  1/01

VMP®-6A(MA) (0401).01
Page 1 of 15                    Initials: ___
        VMP Mortgage Solutions (800)521-7291

*Claim no. 4722*

(D) "Lender" is **Advanced Financial Services, Inc.**

Lender is a **Corporation**
organized and existing under the laws of
Lender's address is **25 Enterprise Center, Newport, RI   02842**

(E) "Note" means the promissory note signed by Borrower and dated **June 25, 2005**
The Note states that Borrower owes Lender **two hundred sixty-seven thousand eight
hundred and 00/100**                                                                Dollars
(U.S. $**267,800.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **July 1, 2035**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

*Claim no. 4722*

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

              County                    of              Plymouth                    :
          [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]:
**See Attached Exhibit A**

Parcel ID Number:                                        which currently has the address of
**5 Barrows St**                                                                    [Street]
**Middleboro**                          [City] , Massachusetts 02346            [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

2005-642720                                                        5-642720 5594

                                                     Initials:
**-6A(MA)** (0401).01                      Page 3 of 15                    Form 3022  1/01
     ®

*Claim no. 4722*

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

2005-642720

Initials: 

5-642720 5594

*Claim no. 4722*

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

*Claim no. 4722*

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

2005-642720

 -6A(MA) (0401).01

Page 6 of 15

Initials:

5-642720 5594

Form 3022   1/01

*Claim no 4722*

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Claim no. 4722

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Claim no. 4722

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

2005-642720

VMP -6A(MA) (0401).01
®

Initials

5-642720 5594

Form 3022  1/01

Claim no. 4722

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

2005~642720

VMP -6A(MA) (0401).01
®

5-642720 5594

Form 3022   1/01

*Claim no. 4722*

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

2005-642720

VMP®-6A(MA) (0401).01

Page 11 of 16

5-642720 5594

Initials

Form 3022   1/01

*Claim no. 4722*

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials:

Claim no. 4722

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

2005-642720                                                                          5-642720 5594

VMP -6A(MA) (0401).01                          Page 13 of 15        Initials:                Form 3022   1/01

*Claim no. 4722*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                    James B Ladd                    -Borrower

_____                    _____ (Seal)
                                                    Ann M Ladd                      -Borrower

_____ (Seal)             _____ (Seal)
                          -Borrower                                                 -Borrower

_____ (Seal)             _____ (Seal)
                          -Borrower                                                 -Borrower

_____ (Seal)             _____ (Seal)
                          -Borrower                                                 -Borrower

2005-642720                                         5-642720 5594

VMP-6A(MA) (0401).01              Page 14 of 15                Form 3022    1/01

*Claim no. 4722*

COMMONWEALTH OF MASSACHUSETTS, Plymouth                                    County ss:

On this 25th      day of June, 2005                              , before me, the undersigned notary public,
personally appeared James B Ladd & Ann M Ladd

proved to me through satisfactory evidence of identification, which was/were 
to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that
he/she/they signed it voluntarily for its stated purpose.
My Commission Expires:
(Seal)

_____
Notary Public

ALAN G. TREBAT
Notary Public
Commonwealth of Massachusetts
My Commission Expires
September 1, 2011

2005-642720                                                              5-642720 5594

-6A(MA) (0401).01              Page 15 of 15                        Form 3022  1/01

Claim no.
4722

1051767
5 Barrows Street
Middleboro, Massachusetts  02346
James B. Ladd

## EXHIBIT A

That certain piece or parcel of land, and the buildings and improvements thereon, known as 5 Barrows Street located in the Town of Middleboro, County of Plymouth, and Commonwealth of Massachusetts, and being more particularly described in a Deed recorded at Book 15212, Page 289 of the Plymouth County Registry of Deeds.

For title reference see Deed dated May 30, 1997 and recorded Book 15212, Page 289



*Claim no.
4722*

# FIXED/ADJUSTABLE RATE RIDER

**(LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps)**

THIS FIXED/ADJUSTABLE RATE RIDER is made this 25th   day of  June,  2005
, and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the
"Note") to **Advanced Financial Services, Inc.**

("Lender") of the same date and covering the property described in the Security Instrument
and located at: **5 Barrows St**
**Middleboro, MA  02346**

[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of        5.875 %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first day of **July,  2010**                , and the adjustable interest rate I will pay may change
on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate
could change, is called a "Change Date."

2005-642720                                                             5-642720 5594
**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR** - Single Family -
**Fannie Mae Uniform Instrument**
Form 3187 6/01
⊚-168R (0401).01
Page 1 of 4        Initials: _____
    VMP Mortgage Solutions, Inc.
        (800)521-7291



Claim no.
4722

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and one-quarter                                                      percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than                                        2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than                      10.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Claim no.
4722

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

2005-642720

VMP-168R (0401).01

Page 3 of 4

Initials:

5-642720 5594

Form 3187 6/01

*Claim no. 4722*

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
James B Ladd             -Borrower   Ann M Ladd             -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                          -Borrower

2005-642720                                    5-642720 5594

VMP-168R (0401).01          Page 4 of 4          Form 3187 6/01

The foregoing is a true copy from the
Plymouth County Registry of Deeds.
Book 30824    Page 51
Attest: John R Buckley Jr.
                    Register

Claim No. 4722

EXHIBIT 2

# GMAC Mortgage

3451 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780

*Claim no. 4722*

*LAND COURT*
*FILED*
*10 JAN -8 PM 2:47*

04/15/09


JAMES B LADD

5 BARROWS ST
MIDDLEBORO        MA 02346



LAST KNOWN ADDRESS
Loan Number:
Property Address:        5 BARROWS ST
                         MIDDLEBORO        MA 02346

Dear Customer(s):

### YOU ARE IN DEFAULT UNDER THE TERMS OF YOUR MORTGAGE AND NOTE.

You have not made the payments as required by your Mortgage and Note. Please refer to your mortgage documents for additional information. GMAC Mortgage, LLC is providing this notice as servicing agent, or otherwise on behalf of, GMAC Mortgage, LLC whose address is; 3451 Hammond Ave Waterloo, IA 50702

Pursuant to M.G.L Chapter 244, Section 35A (b) & (c) as amended, failure to bring your account current by 07/14/2009 may result in our election to exercise our right to accelerate the Mortgage and take steps to terminate your ownership in the property by a foreclosure proceeding. Upon acceleration, your total obligation will be immediately due and payable without further demand.

*Claim no. 4722*

04/15/09
Account Number: ▋▋▋▋▋
Page 2

Your account is now due for the 03/01/09 payment and succeeding payments and late charges. This is a demand for payment of the total amount due and owing as of the date of this letter, which is as follows:

Payments
Late Charges
Fees, costs and other amounts accrued to date

Less: Suspense

Total Amount Due Calculation



You have the right to cure your default on or before 07/14/2009. In order to cure your default, you must bring your account current by remitting the total amount due as shown above, plus any additional monthly payments, late charges and other charges that may become due under applicable law between the date of this letter and the date that we receive, your payment. If you do not cure your default by 07/14/2009 we may take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property. If you are unable to bring your account current, we urge you to contact our Loss Mitigation Department at 888-714-4622 to discuss possible alternatives to foreclosure.

PAYMENT REMITTANCE INFORMATION (always include Loan # with your payment) - **Please send certified funds (certified check, cashier's check, or money order) using one of the following options:**
Western Union /Money Gram, or send regular or overnight mail to:

GMAC Mortgage, LLC
PO Box 780
Waterloo IA 50704-0780
888-714-4622

In the event you disagree with the alleged default, or the amount required to cure your default, please contact us at the above address or phone number.

04/15/09
Account Number: ████████
Page 3

*Claim no. 4722*

The name of the person that originated your loan is Advanced Financial Services, Inc. Notwithstanding anything herein to the contrary, you have the right to reinstate your Mortgage even after acceleration and the right to bring a court action to assert the non- existence of a default or any other defense to acceleration and sale.

Financial assistance may be available to you from programs operated by the State or Federal Government. Below is a list of Government agencies that you may wish to contact or ascertain whether you qualify for assistance.

Massachusetts Division of Banks
**(617) 956-1501 or (800) 495-BANK, ext.501**
Massachusetts Housing Finance Agency
**(617) 854-1000, (413) 733-0999 or (888) 995 HOPE**
HUD approved Housing Counseling:
1-800-569-4287
http://www.hud.gov/offices/hsg/sfh/hcc/hccprof14.cfm
Veterans Administration:
1-800-827-1000

If you are represented by an attorney, please consult with that attorney and provide us with the attorney's name, address and telephone number. To the extent your obligation has been discharged, or is subject to the automatic stay in a bankruptcy proceeding under Title 11 of the United States Code, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect an indebtedness as your personal obligation.

Sincerely,

Collections Department

This is an attempt to collect on a debt and any information obtained will be used for that purpose.

5:64



Claim no. 4722

EXHIBIT 3

GMAC Mortgage
P.O. Box 4622
Waterloo, IA  50704-4622

*Claim no. 4722*

January 05, 2010

12305

JAMES B. LADD
ANN M. LADD
5 BARROWS ST
MIDDLEBORO          MA 02346-2201

Re:  8690111410 – MORTGAGE LOAN TRANSFER NOTICE

Dear JAMES B. LADD and ANN M. LADD,

We appreciate the opportunity to serve your mortgage needs.  We are sending you this notice to inform you that your mortgage loan has been transferred to Residential Funding Corp.  The transfer of ownership of your mortgage has not been publicly recorded.  **Please note that there is nothing you need to do.**  This notice is for your information only.  It does not require any action and you can rest assured that nothing has changed regarding the servicing, terms or conditions of your mortgage loan.  GMAC Mortgage will continue to service your mortgage and provide customer care and support for your home loan needs.

GMAC Mortgage, as the servicer of your mortgage loan, has authority to act on the Creditor's behalf with regard to the administration of your loan. **Please contact GMAC Mortgage at 800-766-4622 if you have any questions regarding this notice.**

Thank you for this opportunity to serve your needs.

---

Mortgage Loan Transfer Information:

Date of transfer to new Creditor: December 30, 2009

Creditor name:        Residential Funding Corp
Address:              One Meridian Crossings, Suite 100
                     Minneapolis, MN 55423

Phone:               800-766-4622

**Do not use this address to send mortgage payments.**

Claim no. 4722

# EXHIBIT 4

Bk: 38163 Pg: 241

*Claim no. 4722*



2010 00005048
Bk: 38163Pg: 241 Page: 1 of 2
Recorded: 01/22/2010 12:18 PM

ATTEST: *John R Buckley Jr.*
REGISTER
PLYMOUTH COUNTY REGISTRY OF DEEDS

## ASSIGNMENT

<u>Mortgage Electronic Registration Systems, Inc.</u>

holder of mortgage from

James B. Ladd and Ann M. Ladd

to <u>Mortgage Electronic Registration Systems, Inc.</u>

dated <u>June 25, 2005</u>

recorded with Plymouth County Registry of Deeds in Book 30824, Page 51 assigns said mortgage secured thereby to <u>GMAC Mortgage, LLC, 1100 Virginia Drive, Fort Washington, PA 19034</u>

In witness whereof the said <u>Mortgage Electronic Registration Systems, Inc.</u>

Has caused its corporate seal to be hereto affixed and these presents to be signed, in its name and behalf by

Jeffrey Stephan
Vice President     its     VP.

Mortgage Electronic Registration Systems, Inc.

BY:

Jeffrey Stephan
Vice President

Jan 4 , 2010

STATE OF     PA

COUNTY OF     Montgomery

On this 4 day of Jan , 2010 before me, the undersigned notary public, personally appeared Jeffrey Stephan as VP , of

*Property, 5 Barrows St Middleboro*

Bk: 38163 Pg: 242

*Claim no 4722*

Mortgage Electronic Registration Systems, Inc., who I have personal knowledge of identity, to be the person whose name is signed on the proceeding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Official Signature and Seal of Notary
My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Trina Wiltbank, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Sept. 10, 2013
Member, Pennsylvania Association of Notaries

File No. 618.2782

Return to:
Orlans Moran PLLC
P.O. Box 5041
Troy, MI 48007-5041

The foregoing is a true copy from the
Plymouth County Registry of Deeds.
Book 38163    Page 241
Attest: John R Buckley Jr.
Register

Claim no. 4722

# EXHIBIT 5

Claim no.
4722

2012 00020549
Bk: 41073 Pg: 272 Page: 1 of 4
Recorded: 03/08/2012 11:51 AM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

## FORECLOSURE DEED

GMAC Mortgage, LLC, having its usual place of business at 3451 Hammond Ave, Waterloo, IA, 50702 the present holder of a mortgage from James B. Ladd and Ann M. Ladd to Mortgage Electronic Registration Systems, Inc. dated June 25, 2005 recorded with the Plymouth County Registry of Deeds at Book 30824, Page 51, by the power conferred by said mortgage and by every other power, for TWO HUNDRED EIGHTY-EIGHT THOUSAND DOLLARS AND 00/100 ($288,000.00) paid, grants to Federal Home Loan Mortgage Corporation, 8200 Jones Branch Drive, McLean, VA 22102-3110 the premises conveyed by said mortgage. This conveyance is exempt from the Massachusetts Deed Excise, M.G.L.C. 64D Section 1, pursuant to Massachusetts Department of Revenue Directive 91-2 (Sept. 19, 1991), and pursuant to 12 United States Code Sections 1452, 1723a, or 1835.

Executed as a sealed instrument this Feb. 3 , 2012.

*(seal: GMAC MORTGAGE LLC CORPORATE SEAL 2006 DELAWARE)*

GMAC Mortgage, LLC

By: _____
Pratiksha Jain
Title: Authorized Officer

*STATE OF* Pennsylvania

Montgomery ss          2/3/2012

On this Feb. 3 , 2012, before me, the undersigned notary public, personally appeared  Pratiksha Jain   GMAC Mortgage, LLC, proved to me through satisfactory evidence of identification, which was personal knowledge, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

_____
Mary Jo McDermott      , Notary Public
My Commission Expires: 10·21·2015

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARY JO McDERMOTT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 21, 2015

RE: 5 Barrows Street, Middleboro, MA 02346

Return to:
Orians Moran PLLC
P.O. Box 5041
Troy, MI 48007-5041
File Number: 618.2782

*Claim no.*
*4722*

*Affidavit of Sale*

I, Justin D. Cohen, Employee, Authorized Signatory, Real Property of Orlans Moran
PLLC under a Certificate of Authorization for GMAC Mortgage, LLC, ("Lender")
named in the foregoing deed, make oath and say, based on the written information
provided to Orlans Moran PLLC by GMAC Mortgage, LLC, that the principal, interest
and other obligations mentioned in mortgage from above referred to were not paid or
tendered or performed when due or prior to the sale, and that this law firm caused to be
published on the 22nd day of September, 2011, on the 29th day of September, 2011 and
on the 6th day of October, 2011, in the MIDDLEBORO GAZETTE (SEE
MIDDLEBOROUGH GAZETTE) a newspaper published or by its title page purporting
to be published in MIDDLEBOROUGH and circulated in Middleboro, a copy of which is
attached hereto as Exhibit A.

This law firm also complied with Chapter 244, Section 14 of Massachusetts General
Laws, as amended.

Pursuant to said notice at the time and place therein appointed

The Lender sold the mortgaged premises at public auction by Nancy Freni, a licensed
auctioneer, of Monroe Auction Group to the successful purchaser GMAC Mortgage,
LLC, 3451 Hammond Ave, Suite 100, Waterloo, IA, 50702, for the sum of TWO
HUNDRED EIGHTY-EIGHT THOUSAND DOLLARS AND 00/100 ($288,000.00),
being the highest bid made therefor at said auction.

Said bid was then assigned to Federal Home Loan Mortgage Corporation as evidenced by
Assignment of Bid recorded herewith as Exhibit B.

For signatory authority, see Delegation of        By: _____
Authority and Appointment registered with            Justin D. Cohen, Employee,
the Suffolk County Registry District of the          Authorized Signatory, Real Property
Land Court as Document Number 795898.                of Orlans Moran, PLLC
                                                     on behalf of
See recorded Certificate of Authorization            GMAC Mortgage, LLC
recorded herewith.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK COUNTY, SS              February 28, 2012

On this 28th of February 2012, before me, the undersigned notary public, personally
appeared Justin D. Cohen, Employee, Authorized Signatory, Real Property, of Orlans
Moran PLLC, on behalf of GMAC Mortgage, LLC, proved to me through satisfactory
evidence of identification, which was personal knowledge, to be the person(s) whose
name(s) is on the preceding or attached document, and who swore or affirmed to me that
the contents of the document are truthful and accurate to the best of their knowledge and
belief.

_____, Notary Public  8-26-76
My Commission Expires

Return to:
Orlans Moran PLLC
P.O. Box 5041
Troy, MI 48007-5041
File Number: 618.2782

RE: 5 Barrows Street, Middleboro, MA 02346

Bκ: 41073 Pg: 274

EXHIBIT "A"

*Claim no. 4722*

ATTACHED TO AND FORMING A PART OF FORECLOSURE DEED AND
AFFIDAVIT FOR PROPERTY LOCATED AT 5 BARROWS STREET,
MIDDLEBORO, MA 02346

RE: 5 Barrows Street, Middleboro, MA 02346

### MORTGAGEE'S NOTICE OF SALE OF REAL ESTATE

By virtue and in execution of the Power of Sale contained in a certain Mortgage given by James B. Ladd and Ann M. Ladd to Mortgage Electronic Registration Systems, Inc., dated June 25, 2005 and recorded with the Plymouth County Registry of Deeds at Book 30824, Page 51 of which the Mortgage the undersigned is the present holder by assignment for breach of the conditions of said Mortgage and for the purpose of foreclosing same will be sold at Public Auction at 09:00 AM on October 14, 2011 at 5 Barrows Street, Middleboro, MA, all and singular the premises described in said Mortgage, to wit:

That certain piece or parcel of land, and the buildings and improvements thereon, known as 5 Barrows Street located in the Town of Middleboro, County of Plymouth, and Commonwealth of Massachusetts, and being more particularly described in a Deed recorded at Book 15212, Page 289 of the Plymouth County Registry of Deeds.

For title reference see Deed dated May 30, 1997 and recorded Book 15212, Page 289

The premises are to be sold subject to and with the benefit of all easements, restrictions, building and zoning laws, unpaid taxes, tax titles, water bills, municipal liens and assessments, rights of tenants and parties in possession.

### TERMS OF SALE:

A deposit of FIVE THOUSAND DOLLARS AND 00 CENTS ($5,000.00) in the form of a certified check or bank treasurer's check will be required to be delivered at or before the time the bid is offered. The successful bidder will be required to execute a Foreclosure Sale Agreement immediately after the close of the bidding. The balance of the purchase price shall be paid within thirty (30) days from the sale date in the form of a certified check, bank treasurer's check or other check satisfactory to Mortgagee's attorney. The Mortgagee reserves the right to bid at the sale, to reject any and all bids, to continue the sale and to amend the terms of the sale by written or oral announcement made before or during the foreclosure sale. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney. The description of the premises contained in said mortgage shall control in the event of an error in this publication. TIME WILL BE OF THE ESSENCE.

Other terms if any, to be announced at the sale.

GMAC Mortgage, LLC
Present Holder of said Mortgage,
By its Attorneys,
Orlans Moran PLLC
P.O. Box 962169
Boston, MA 02196
Phone: (617) 502-4100
September 22, 29, & Oct. 6, 2011

*Claim no.*
*4722*

EXHIBIT B

ASSIGNMENT OF BID

Whereas, GMAC Mortgage, LLC, 3451 Hammond Ave, Waterloo, IA, 50702 ("Assignor"), was the successful purchaser at the public sale of property located at 5 Barrows Street, Middleboro, MA, 02346, which sale was made on the premises hereinabove described on October 14, 2011 at 09:00 AM by GMAC Mortgage, LLC, 3451 Hammond Ave, Waterloo, IA, 50702, dated June 25, 2005 and recorded with the Plymouth County Registry of Deeds at Book 30824, Page 51, of which Mortgage the undersigned is the present holder by Assignment.

For TWO HUNDRED EIGHTY-EIGHT THOUSAND DOLLARS AND 00/100 ($288,000.00), the undersigned Assignor unconditionally sells, assigns, and sets over unto Federal Home Loan Mortgage Corporation, 8200 Jones Branch Drive, McLean, VA 22102-3110, its successors and assigns, ("Assignee"), all of the Assignor's right, title and interest in and to said bid for the said property with the right to said Assignee to take and receive title thereto by conveyance directly from said Mortgagee pursuant to its power and authority under and by virtue of the aforesaid Mortgage.

Executed as a sealed instrument this *Feb. 3*, 2012.

GMAC Mortgage, LLC,

Name: Pratiksha Jain

Title: Authorized Officer

*STATE OF* Pennsylvania

Montgomery SS                    *2/3*, 2012

On this *Feb. 3*, 2012, before me, the undersigned notary public, personally appeared **Pratiksha Jain** GMAC Mortgage, LLC, proved to me through satisfactory evidence of identification, which was personal knowledge, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Mary Jo McDermott , Notary Public
My Commission Expires: *10·21·2015*

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARY JO McDERMOTT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 21, 2015

Return to:
Orlans Moran PLLC
P.O. Box 5041
Troy, MI 48007-5041
File Number: 618.2782

*The foregoing is a true copy from the Plymouth County Registry of Deeds.*
*Book 41073    Page 272*
*Attest: John R. Buckley Jr.*

RE: 5 Barrows Street, Middleboro, MA 02346