Claim no. 4722

# EXHIBIT 6

Claim no. 4772

🖨 Print

---

**Acts**
**2007**
**CHAPTER 206** AN ACT PROTECTING AND PRESERVING HOME OWNERSHIP.

---

*Whereas,* The deferred operation of this act would tend to defeat its purpose, which is to provide forthwith mortgage protection for existing and new home owners, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience.

*Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same as follows:*

**SECTION 1.** To provide for certain unanticipated obligations of the commonwealth, to provide for an alteration of purpose for current appropriations and to meet certain requirements of law, the sums set forth in this section are hereby appropriated from the General Fund unless specifically designated otherwise in this section for the several purposes and subject to the conditions specified in this section, and subject to the laws regulating the disbursement of public funds for the fiscal year ending June 30, 2008. These sums shall be in addition to any amounts previously appropriated and made available for the purposes of said items.

7006-0011.. For the costs incurred by the division of banks associated with licensure of loan originators pursuant to chapter 255F of the General Laws; provided, that the division may expend revenues in an amount not to exceed $5,000,000 from the revenue received from administrative fees associated with said licensure fees and from civil administrative penalties pursuant to said chapter 255F; provided that, $2,000,000 shall be expended from such revenue as grants for the operation of a pilot program for best lending practices, first-time homeowner counseling for non-traditional loans and 10 or more foreclosure education centers pursuant to section 16 and that the grants shall be awarded through a competitive application process under criteria created by the division and that no funds shall be expended from this item in the AA object class for the compensation of state employees for such program; provided, further, that notwithstanding any general or special law to the contrary, for the purpose of accommodating timing discrepancies between the receipt of revenues and related expenditures, the commissioner may incur expenses and the comptroller may certify for payment the amounts not to exceed the lower of this authorization or the most recent revenue estimate, as reported in the state accounting system...................................................... $5,000,000

**SECTION 2.** Chapter 6 of the General Laws is hereby amended by inserting after Section

---

*Claim No. 4722*

172I the following section:-

Section 172J. Notwithstanding section 172 or any other general or special law to the contrary, the commissioner of the division of banks may obtain all available criminal offender record information and juvenile data as found in the court activity record information from the criminal history systems board of all applicants for licensure pursuant to chapter 255F. Information obtained under this section shall not be disseminated for any purpose other than to provide mortgage protection for home owners.

**SECTION 3.** Chapter 183 of the General Laws is hereby amended by inserting after section 6C the following section:-

Section 6D. Every mortgage and assignment of mortgage secured by residential property, as defined in section 1 of chapter 255E, presented for record, in which a mortgage broker, as defined in said section 1 of said chapter 255E, is involved shall contain or have endorsed upon it the name, post office address and license number of the mortgage broker and, if applicable, the mortgage loan originator, as defined in section 1 of chapter 255F, responsible for placing the mortgage loan with the mortgagee. This endorsement, or notation that no mortgage broker or mortgage loan originator was involved in the mortgage, if known, shall be recorded as part of the mortgage or assignment of mortgage. Failure to comply with this section shall not affect the validity of any mortgage or the recording of any mortgage or assignment of mortgage.

**SECTION 4.** Section 27 of said chapter 183, as appearing in the 2006 Official Edition, is hereby amended by adding the following paragraph:-

The holder of a mortgage of real estate, or the holder's representatives, shall provide to the mortgagor or the mortgagor's heirs, successors or assigns a written notice containing an itemized accounting of the disposition of the proceeds arising from a sale under the power of sale including, but not limited to, the sale price, legal fees, auctioneer fees, publication costs and other fees, and any surplus due to the mortgagor, within 60 days after the receipt of such funds provided, that if such sale is subject to further legal proceedings, such accounting shall be stayed until the conclusion of such proceedings.

**SECTION 5.** Section 63A of said chapter 183, as so appearing, is hereby amended by inserting after the word "interest", in line 2, the following words:- , change an adjustable or variable rate to a fixed rate.

**SECTION 6.** Said section 63A of said chapter 183, as so appearing, is hereby further amended by striking out, in line 44, the words "one-half of".

**SECTION 7.** Chapter 184 of the General Laws is hereby amended by inserting after section 17B the following section:-

Section 17B1/2. No mortgagee who makes a loan to a first-time home loan borrower, to be

*Claim no. 4722*

secured by a mortgage on owner-occupied, 1 to 4 family residential property in the commonwealth, shall make a subprime loan at a variable or adjustable rate of interest unless the mortgagor affirmatively opts in writing for the variable or adjustable rate subprime loan and receives certification from a counselor with a third-party nonprofit organization that the mortgagor has received counseling in person on the advisability of the loan transaction; provided, further that said third party nonprofit organization shall have been approved by: (1) the United States Department of Housing and Urban Development; (2) a housing financing agency of the commonwealth; (3) the Massachusetts Homeownership Collaborative; (4) or the regulatory agency which has jurisdiction over the mortgagee. The commissioner of the division of banks shall maintain a list of approved counseling programs. At or before closing such a loan, the mortgagee shall obtain evidence that the mortgagor has completed an approved counseling program. If such subprime mortgage loan is made by a mortgagee in violation of this section, the variable or adjustable rate terms of the loan shall not be enforceable and the mortgagee shall only be entitled to collect an interest rate equal to the lesser of the original interest rate, including any discounted rate, or the current adjusted interest rate throughout the remaining term of the loan. The commissioner of banks shall issue directives or guidelines or adopt regulations to administer and carry out this section and to further define the terms used in this section.

**SECTION 8.** The last sentence of section 13 of chapter 186 of the General Laws, as appearing in the 2006 Official Edition, is hereby amended by adding the following words:- or by foreclosure.

**SECTION 9.** Said chapter 186, is hereby further amended by inserting after section 13 the following section:-

Section 13A. Upon a foreclosure of residential real property pursuant to chapter 244, a tenant, occupying a dwelling unit under an unexpired term for years or a lease for a definite term in effect at the time of the foreclosure by sale, shall be deemed a tenant at will. Foreclosure shall not affect the tenancy agreement of a tenant whose rental payment is subsidized under state or federal law.

**SECTION 10.** Chapter 244 of the General Laws is hereby amended by inserting after section 14 the following section:-

Section 14A. The commissioner of the division of banks, hereinafter referred to as the commissioner, shall maintain a foreclosure database that shall include, but not be limited to, foreclosure activity by mortgage lenders, mortgage holders and mortgage servicers, as well as the mortgage brokers and loan originators who placed these mortgage loans in the commonwealth, including information relative to the original mortgagee and any

Session Laws: 12-1-12020 (ing of the Doc 5583-2   Filed 11/01/13 https Entered 11/01/18 a 16:41:15 Laws Exhibit 06-11 hapter 206/...

Pg 5 of 48

Claim no. 4722

subsequent assignee. Based on the information received, the commissioner shall produce a report, at least annually, to track developments and trends of mortgage foreclosures on residential property in the commonwealth including, but not limited to, an analysis of the pre-foreclosure notices submitted to the commissioner compared to the final foreclosure notices, and any trends or patterns relative to the geographic location of the residential properties and interest rates. The report shall be available to the public upon request, and the commissioner shall make it available in any other manner that he may choose.

**SECTION 11.** Said chapter 244 is hereby further amended by inserting after section 35 the following section:-

Section 35A. (a) Any mortgagor of residential real property located in the commonwealth consisting of a dwelling house with accommodations for 4 or less separate households and occupied in whole or in part by the mortgagor, shall have a 90 day right to cure a default of a required payment as provided in such residential mortgage or note secured by such residential real property by full payment of all amounts that are due without acceleration of the maturity of the unpaid balance of such mortgage. The right to cure a default of a required payment shall be granted once during any 5 year period, regardless of the mortgage holder.

(b) The mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment in subsection (a) by any method authorized by this chapter or any other law until at least 90 days after the date a written notice is given by the mortgagee to the mortgagor. Said notice shall be deemed to be delivered to the mortgagor when delivered to the mortgagor or when mailed to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder.

(c) The notice required in subsection (b) shall inform the mortgagor of the following:-

(1) the nature of the default claimed on such mortgage of residential real property and of the mortgagor's right to cure the default by paying the sum of money required to cure the default;
(2) the date by which the mortgagor shall cure the default to avoid acceleration, a foreclosure or other action to seize the home, which date shall not be less than 90 days after service of the notice and the name, address and local or toll free telephone number of a person to whom the payment or tender shall be made;
(3) that, if the mortgagor does not cure the default by the date specified, the mortgagee, or anyone holding thereunder, may take steps to terminate the mortgagor's ownership in

Claim no. 4722

the property by a foreclosure proceeding or other action to seize the home;

(4) the name and address of the mortgagee, or anyone holding thereunder, and the telephone number of a representative of the mortgagee whom the mortgagor may contact if the mortgagor disagrees with the mortgagee's assertion that a default has occurred or the correctness of the mortgagee's calculation of the amount required to cure the default;

(5) the name of any current and former mortgage broker or mortgage loan originator for such mortgage or note securing the residential property; and

(6) that the mortgagor may be eligible for assistance from the Massachusetts Housing Finance Agency and the division of banks and the local or toll free telephone numbers the mortgagor may call to request this assistance.

(d) To cure a default prior to acceleration under this section, a mortgagor shall not be required to pay any charge, fee, or penalty attributable to the exercise of the right to cure a default. The mortgagor shall pay late fees as allowed pursuant to section 59 of chapter 183 and per-diem interest to cure such default. The mortgagor shall not be liable for any attorneys' fees relating to the mortgagor's default that are incurred by the mortgagee or anyone holding thereunder prior to or during the period set forth in the notice required by this section. The mortgagee, or anyone holding thereunder, may also provide for reinstatement of the note after the 90 day notice to cure has ended.

(e) A copy of the notice required by this section and an affidavit demonstrating compliance with this section shall be filed by the mortgagee, or anyone holding thereunder, in any action or proceeding to foreclose on such residential real property.

(f) A copy of the notice required by this section shall also be filed by the mortgagee, or anyone holding thereunder, with the commissioner of the division of banks. Additionally, if the residential property securing the mortgage loan is sold at a foreclosure sale, the mortgagee, or anyone holding thereunder, shall notify the commissioner of the division of banks, in writing, of the date of the foreclosure sale and the purchase price obtained at the sale.

**SECTION 12.** Section 2 of chapter 255E of the General Laws, as appearing in the 2006 Official Edition, is hereby amended by striking out, in lines 34 to 39, inclusive, the words ", or to any nonprofit agency or corporation incorporated under the laws of the commonwealth for the purpose of assisting low to moderate income households in the purchase or rehabilitation of family residences of four units or less and which holds tax-exempt status granted under the provisions of Section 501(c)(3) or 501(c)4 of the Internal Revenue Code".

**SECTION 13.** Section 8 of said chapter 255E, as so appearing, is hereby amended by

striking out the third paragraph and inserting in place thereof the following 8 paragraphs:-

The commissioner shall inspect a licensee's relevant records and evidence of compliance with the provisions of this chapter or any rule or regulation issued hereunder and with any other law, rule or regulation applicable to the conduct of the business for which it is licensed under this chapter. For the purposes of such inspection, the commissioner or a representative of the commissioner shall have access to the offices and place of business, books, accounts, papers, records and files of all such licensees. The commissioner, and any person designated by him, may require the attendance and testimony of any person whom the commissioner deems necessary relative to the conduct and operation of such business. The total cost for any such inspection, which shall be paid by the licensee within 30 days after the receipt of an invoice therefore, shall be in accordance with fees determined annually by the commissioner of administration pursuant to section 3B of chapter 7, including expenses for necessary travel outside the commonwealth for the purposes of conducting such inspections.

During the course of such inspection, a mortgage lender that has made 50 or more home mortgage loans in the last calendar year shall be examined for its compliance with fair lending laws including, but not limited to, the requirements of the federal Equal Credit Opportunity Act, Home Mortgage Disclosure Act, and the Predatory Home Loan Practices Act. Such examination shall also include an evaluation of such mortgage lender's: (a) origination of loans and other efforts to assist low and moderate income residents, without distinction, to be able to acquire or to remain in affordable housing at rates and terms that are reasonable considering the lender's history with similarly situated borrowers, the availability of mortgage loan products suitable for such borrowers, and consistency with safe and sound business practices; (b) origination of loans and other efforts to assist low and moderate income residents' ability to acquire or to remain in affordable housing; (c) origination of loans that show an undue concentration and a systematic pattern of lending resulting in the loss of affordable housing units; (d) efforts working with delinquent residential mortgage customers to facilitate a resolution of the delinquency; and (e) other efforts, including public notice of the scheduling of examinations and the right of interested parties to submit written comments relative to any such examination to the commissioner, as, in the judgment of the commissioner, reasonably bear upon the extent to which a mortgage lender is complying with the requirements of fair lending laws and helping to meet the mortgage loan credit needs of communities in the commonwealth.

Upon the completion of such examination, the commissioner shall prepare a written evaluation of such lender's rec

Claim no. 4722

ord of performance, which shall be open to public inspection upon request, and said written evaluation shall include: (a) the assessment factors utilized to determine the mortgage lender's descriptive rating; (b) the commissioner's conclusions with respect to each such assessment factor; (c) a discussion of the facts supporting such conclusions; and (d) the mortgage lender's descriptive rating and the basis therefor.

Based upon such examination, the mortgage lender shall be assigned 1 of the following descriptive ratings: (a) outstanding record of performance in meeting the mortgage loan credit needs of communities in the commonwealth; (b) high satisfactory record of performance in meeting the mortgage loan credit needs of communities in the commonwealth; (c) satisfactory record of performance in meeting the mortgage loan credit needs of communities in the commonwealth; (d) needs to improve record of performance in meeting the mortgage loan credit needs of communities in the commonwealth; or (e) substantial noncompliance in meeting the mortgage loan credit needs of communities in the commonwealth.

Notwithstanding the foregoing, the commissioner may establish an alternative examination procedure for any mortgage lender, which, as of the most recent examination, has been assigned a rating of outstanding or high satisfactory for its record of performance in meeting its community mortgage loan credit needs.
In considering an application from a licensed mortgage lender for a renewal of a license issued pursuant to this chapter, the commissioner shall consider, but not be limited to, the record of performance of any such lender in accordance with this section. Said record of performance may provide the basis for the denial of any such renewal application.

For the purposes of this section, no mortgage lender may include a loan origination or loan purchase for consideration as part of its examination under this section if another mortgage lender claims the same loan origination or purchase for its review under this section or under section 14 of chapter 167.
The commissioner shall adopt regulations implementing the requirements of this section.

**SECTION 14.** Section 10 of said chapter 255E, as so appearing, is hereby amended by striking out the first sentence and inserting in place thereof the following sentence:- Whoever violates section 2 or any rule or regulation promulgated thereunder shall be punished by a fine of not more than $2,000 or by imprisonment in the house of correction for not more than 2 ½ years or by imprisonment in state prison for not more than 5 years, or both such fine and imprisonment.
**SECTION 15.** The General Laws are hereby amended by inserting after chapter



255E the following chapter:-

# CHAPTER 255F.
## LICENSING OF MORTGAGE LOAN ORIGINATORS.

Section 1. As used in this chapter, the following words shall, unless the context otherwise requires, have the following meanings:-

"Commissioner", the commissioner of banks.

"Division", the division of banks.

"Entity", a person or entity that is a licensee under chapter 255E, as regulated by the division.

"Mortgage loan originator", a natural person who:- (a) is employed by or associated with 1 and not more than 1 entity; and (b) negotiates, solicits, arranges, provides or accepts residential mortgage loan applications, or assists consumers in completing such applications, except that employees whose responsibilities are limited to clerical and administrative tasks and who do not solicit borrowers, accept applications or negotiate the terms of residential mortgage loans on behalf of the employer shall not be considered mortgage loan originators and do not require licenses.

"Mortgage loan", a loan or an extension of credit including, but not limited to, an extension of credit pursuant to a contract or an assigned contract for the sale of goods or services, made to a natural person, the proceeds of which are to be used primarily for personal, family or household purposes, and which is secured wholly or partially by a mortgage on residential property.

"Residential property", real property located in the commonwealth having thereon a dwelling house with accommodations for 4 or less separate households and occupied, or to be occupied, in whole or in part by the obligor on the mortgage debt.

Section 2. No natural person shall act as a mortgage loan originator unless such person has first obtained a mortgage loan originator license from the commissioner. An entity shall not knowingly employ or retain a mortgage loan originator unless the mortgage loan originator is licensed under this chapter.

Section 3. (a) The application for a mortgage loan originator license shall be in the form prescribed by the commissioner and shall contain the name, address and license number of the entity with whom a mortgage loan originator is or will be employed or associated with and other information as the commissioner may require, including evidence of compliance with subsection (b). The application shall also include a description of the activities of the applicant, in such detail and

Claim no-4722

for such periods as the commissioner may require, and such further information
as the commissioner may require. The commissioner may obtain, pursuant to
section 172J of chapter 6 all available criminal offender record information from
the criminal history systems board on an applicant for a mortgage loan originator
license by means of fingerprint checks, and from the Federal Bureau of
Investigation for a national criminal history records check. The information
obtained thereby may be used by the commissioner to determine the applicant's
eligibility for licensing under this chapter. Receipt of criminal history record
information by a private entity is prohibited. Each application for a license shall
be accompanied by an investigation fee. Investigation and license fees shall be
determined annually by the secretary of administration under section 3B of
chapter 7, but such total annual fees shall be not less than $500; provided, that
such investigation and license fees shall not apply to any community
development corporation as defined in section 1 of chapter 40F and organized
under the General Laws.

(b) An applicant shall have completed a residential mortgage lending course,
approved by the division, not later than the 2 year period immediately preceding
the date of the application.

Section 4. If the commissioner finds that the financial responsibility, character,
reputation, integrity and general fitness of the applicant is such as to warrant
belief that the applicant will act honestly, fairly, soundly and efficiently in the
public interest, consistent with the purposes of this chapter, the commissioner
shall issue the applicant a license to engage in the business of a mortgage loan
originator upon payment of the required fees. If the commissioner shall not so
find, or if the applicant's criminal history demonstrates any felony convictions or
other convictions or admissions to sufficient facts involving fraud or if the
applicant has had any adverse civil judgments involving fraudulent dealings, the
commissioner shall not issue a license and shall notify the applicant of the
denial. Within 20 days thereafter, the commissioner shall enter upon the
division's records a written decision and findings containing the reasons
supporting the denial and shall forthwith give written notice thereof by registered
mail to the applicant. Within 30 days after receipt of such notice, the applicant
may seek judicial review of the denial in accordance with section 14 of chapter
30A.

Section 5. A mortgage loan originator may transact business only for an
employing entity. Each original license issued to a mortgage loan originator must
be provided to and maintained by the employing entity at the entity's main office.
If the employment of a mortgage loan originator is terminated, the employing

Claim No. 4727

entity shall return the mortgage loan originator's license to the division within 5 business days after termination. The reason for termination shall be given in a format determined by rules and regulations of the commissioner. For a period of 1 year after the termination of employment, the mortgage loan originator may request the re-assignment of the license to another entity by submitting an application to the division, along with a fee established by the division by rule. The return of the license of any mortgage loan originator to the division that is not re-assigned to another entity terminates the right of the mortgage loan originator to engage in any residential mortgage loan origination activity until division procedures have been followed to reactivate such license. The license of any mortgage loan originator that has been returned to the division and not re-assigned to another entity within 1 year of termination of employment shall be cancelled.

Each license shall state the name of the mortgage loan originator licensee and the name and main office address of the entity employing such mortgage loan originator.

The commissioner may establish an expedited re-assignment process of a mortgage loan originator's license to another entity if the reason for such re-assignment is directly related to increased responsibilities or compensation.

The commissioner may adopt, amend or repeal rules and regulations to aid in the administration and enforcement of this chapter.

Section 6. Each application for a license shall be accompanied by an investigation fee. Investigation and license fees shall be determined annually by the secretary of administration under section 3B of chapter 7 provided that such total annual fees shall be not less than $500; provided further, that such investigation and license fees shall not apply to any community development corporation as defined in section 1 of chapter 40F and organized under the General Laws. The license of a mortgage loan originator shall expire annually. Each licensee, shall annually, on or before a date to be determined by the commissioner, submit a license renewal application. The license renewal application shall be on a form prescribed by the commissioner, signed under the pains and penalties of perjury, containing such information as the commissioner may require.

As determined by the commissioner, licensees shall complete at least 8 hours of residential mortgage lending continuing education courses every 3 years. Failure of the licensee to satisfy the continuing education requirement shall render the mortgage loan originator ineligible for renewal and such license shall

be deemed to be inactive. A mortgage loan originator who neglects to file an application or fails to amend the same within 15 days of notice from the commissioner directing that the application be amended shall be deemed inactive. Inactive mortgage loan originators shall be prohibited from engaging in business as a mortgage loan originator.

Section 7. The commissioner may suspend, revoke or refuse to renew any license issued pursuant to this chapter if the commissioner finds that:- (1) the licensee has violated this chapter or any rule or regulation adopted hereunder, or any other law applicable to the conduct of its business; (2) any fact or condition exists which, if it had existed at the time of the original application for such license, would have warranted the commissioner in refusing to issue such license; or (3) the licensee has committed any fraud, misappropriated funds or misrepresented any of the material particulars of a mortgage loan transaction.
Except as provided in section 8, no license shall be revoked or suspended except after notice and a hearing thereon pursuant to chapter 30A. Any order issued pursuant to this section shall be subject to judicial review in accordance with section 14 of said chapter 30A.

A licensee may surrender his license by delivering to the commissioner written notice that he hereby surrenders such license, but such surrender shall not affect the civil or criminal liability of the licensee for acts committed before such surrender.

Section 8. (a) If the commissioner determines, after giving notice of and opportunity for a hearing, that a licensee has engaged in an act or practice constituting a violation of this chapter or a rule, regulation or order promulgated hereunder, the commissioner may order such licensee to cease and desist from such unlawful act or practice and take such affirmative action as in the commissioner's judgment will affect the purposes of this chapter.

(b) If the commissioner makes written findings of fact that the public interest will be irreparably harmed by delay in issuing an order under subsection (a), the commissioner may issue a temporary cease and desist order. Upon the entry of a temporary cease and desist order, the commissioner shall promptly notify, in writing, the licensee and the employing entity affected thereby that such order has been so entered, the reasons therefore, and that, within 20 days after the receipt of a written request from such licensee, the matter will be scheduled for hearing to determine whether such temporary order shall become permanent and final. If no such hearing is requested and none is

ordered by the commissioner, the order shall remain in effect until it is modified or vacated by the commissioner. If a hearing is requested or ordered, the commissioner, after giving notice of and opportunity for a hearing to the licensee and the employing entity subject to said order shall, by written findings of fact and conclusions of law, vacate, modify or make permanent the order.

(c) No order issued pursuant to this section, except an order issued pursuant to subsection (b), may be entered without prior notice of and opportunity for a hearing. The commissioner may vacate or modify an order under this section upon finding that the conditions which required such an order have changed and that it is in the public interest to so vacate or modify.

Any order issued pursuant to this section shall be subject to judicial review in accordance with section 14 of chapter 30A.

Section 9. The commissioner may enforce this chapter, or restrain any violations thereof, by filing a civil action in any court of competent jurisdiction. Section 10. Whoever violates section 2 or any rule or regulation promulgated thereunder shall be punished by a fine of not more than $2,000 or by imprisonment in the house of correction for not more than 2 ½ or by imprisonment in state prison for not more than 5 years, or by both such fine and imprisonment. Each day such violation occurs or continues shall be deemed a separate offense. The penalty provision of this section shall be in addition to any other law applicable to a licensee or other person for violating section 2 or any rule or regulation made thereunder.

Section 11. (a) Whenever the commissioner finds that any licensee has violated this chapter or any rule or regulation promulgated thereunder, or any other law of the commonwealth applicable to the conduct of a mortgage loan originator on residential property in the commonwealth, the commissioner may, by order, in addition to any other action authorized under this chapter or any rule or regulation made thereunder, impose a penalty upon the person which shall not exceed $5,000 for each violation up to a maximum of $100,000 for such violation plus the costs of investigation. The commissioner may impose a penalty which shall not exceed $5,000 for each violation of this chapter, or any rule or regulation promulgated hereunder, by a person other than a licensee, plus the costs of investigation.

(b) Nothing in this section shall limit the right of any individual or entity who has been injured as a result of any violation of this chapter by a licensee, or

Claim no. 4722

any person other than a licensee, to bring an action to recover damages or restitution in a court of competent jurisdiction.

(c) Any findings or orders issued by the commissioner pursuant to this section shall be subject to review as provided in chapter 30A.

Section 12. (a) Whenever the commissioner determines that any person has, directly or indirectly, violated this chapter or any rule or regulation promulgated hereunder, applicable to the conduct of a mortgage loan originator on residential property in the commonwealth, any order issued by the commissioner pursuant to this chapter or any written agreement entered between the licensee and the commissioner, the commissioner may serve upon that person a written notice of intention:-

(1) to prohibit the person from performing in the capacity of a principal employee on behalf of any licensee for a period of time that the commissioner considers necessary;

(2) to prohibit the person from applying for or obtaining a license from the commissioner for a period up to 36 months following the effective date of an order issued under subsection (b) or (c); or

(3) to prohibit the person from any further participation, in any manner, as a mortgage loan originator in the commonwealth or to prohibit the person from being employed by, as agent of, or operating on behalf of a licensee under this chapter or any other business which requires a license from the commissioner.

(b) A written notice issued under subsection (a) shall contain a written statement of the facts that support the prohibition and shall give notice of an opportunity for a hearing to be held thereon. The hearing shall be fixed for a date not more than 30 days after the date of service upon the commissioner of the request for a hearing. If the person fails to submit a request for a hearing within 20 days of service of notice under subsection (a), or otherwise fails to appear in person or by a duly authorized representative, the party shall be considered to have consented to the issuance of an order of prohibition in accordance with the notice.

(c) In the event that consent is granted by operation of subsection (b), or if after a hearing the commissioner finds that any of the grounds specified in the notice have been established, the commissioner may issue an order of

Claim no. 4722

prohibition in accordance with subsection (a) as the commissioner finds appropriate.

(d) An order issued under subsection (b) or (c) shall be effective upon service upon the person. The commissioner shall also serve a copy of the order upon the licensee of which the person is an employee or on whose behalf the person is performing. The order shall remain in effect and enforceable until it is modified, terminated, suspended or set aside by the commissioner or a court of competent jurisdiction.

(e) Except as consented to in writing by the commissioner, any person who, pursuant to an order issued under subsection (b) or (c), has been prohibited from participating in whole or in part as a mortgage loan originator may not, while the order is in effect, continue or commence to perform in the capacity of a mortgage loan originator, or otherwise participate in any manner, if so prohibited by order of the commissioner, in the conduct of the affairs of:-

(1) any licensee under this chapter;
(2) any other business which requires a license from the commissioner; or
(3) any bank as defined under section 1 of chapter 167 or any subsidiary thereof.

Section 13. The commissioner may suspend, revoke or refuse to renew the license of the entity employing any licensed mortgage originator if the commissioner finds that: (a) the entity knew or should have known that the mortgage loan originator violated this chapter or any rule or regulation promulgated hereunder, or any other law applicable to the conduct of its business; (b) the entity knew of any fact or condition to exist which, if it had existed at the time of the original application for such license, would have warranted the commissioner in refusing to issue such license; (c) the mortgage loan originator committed any fraud, misappropriated funds or misrepresented any of the material particulars of a mortgage loan transaction approved by the entity; or (d) The entity has failed to comply with the reporting requirements set forth in section 15.

Section 14. Each licensee shall, when directed by the commissioner, permit the commissioner or a duly authorized representative to inspect its relevant records and evidence of compliance with this chapter or any rule or regulation issued hereunder and with any other law, rule and regulation applicable to the conduct of a mortgage loan originator licensed under this

Claim no. 4722

chapter.

Section 15. An entity employing any licensed mortgage originator shall
annually report the following to the commissioner of banks:- (1) the total
number of loans originated by all such licensees; (2) the geographic
distribution of such loans; (3) the number of defaults of such loans; and
(4) any such other information the commissioner may require consistent
with this chapter.

**SECTION 16.** The division of banks, in consultation with the city of
Boston, the department of housing and community development, the
Massachusetts Housing Finance Agency and the Massachusetts
Bankers Association, shall develop a pilot program to identify best
practices for financial institutions to provide first time homebuyer loans,
to provide for foreclosure prevention for at-risk homeowners, and to
assist approved counseling programs with in-person counseling
pursuant to section 17B1/2 of chapter 184 of the General Laws, as
provided for in item 7006-0011 in section 1.
Such pilot program, shall also provide for best lending and borrowing
practices for consumers and mortgagees in cities or towns with: (1)
housing units within low or moderate income census tracts as defined by
the United States census bureau; or (2) high foreclosure activity as
measured by residential foreclosure petitions filed over the total number
of 1 to 4 family housing units within such city or town. Such guidelines
and counseling shall provide for best practices that: (a) attain a minimal
risk of high cost lending; (b) have a demonstrated ability to avoid
foreclosures; (c) have a demonstrated record of pricing that ensures
uniformity of lending; (d) avoid a disparity of pricing in low and moderate
income census tracts; and (e) maintain foreclosure prevention practices
that meet or exceed standards met by government sponsored
enterprises.

Such pilot program shall also provide for foreclosure training to 10 or
more foreclosure education centers for counseling and assistance to
owner-occupied 1 to 4 family dwellings in such geographic areas.

On or before December 31, 2008, the division of banks shall report the
results of such pilot program to the general court.

**SECTION 17.** Notwithstanding any general or special law to the contrary,
the division of banks shall open an investigation and study relative to a

Claim no. 4722

residential mortgage lending course examination process pursuant to subsection (b) of section 3 of chapter 255F of the General Laws. The division shall report to the general court the results of its investigation and study and its recommendations by filing the same with the clerks of the house of representatives and the senate, who shall forward the same to the chairmen of the joint committees on financial services and housing on or before December 1, 2008.

The commissioner of the division of banks shall adopt rules and regulations to produce an examination to be administered to mortgage loan originators upon completion of a residential mortgage lending course as provided under said chapter 255F. Such rules or regulations shall require that, after December 1, 2009, the commissioner shall administer such examination in the manner he deems appropriate for any applicant for a mortgage loan originator license who shall first pass such examination to be eligible to apply for a license under said chapter 255F.

**SECTION 18.** The commissioner of the division of banks shall adopt the initial rules and regulations required under section 17 not later than December 1, 2009.

**SECTION 19.** A natural person who meets the definition of a mortgage loan originator under section 1 of chapter 255F of the General Laws before the effective date of this act may obtain a mortgage loan originator license from the commissioner of banks pursuant to said chapter 255F within 180 days after said effective date, notwithstanding the requirements of subsection (b) of section 3 of said chapter 255F, if he submits an application therefor and otherwise complies with the requirements of said chapter 255F.

**SECTION 20.** Section 7 shall take effect on January 31, 2008.

**SECTION 21.** Section 11 shall take effect on May 1, 2008 and apply to all mortgages of residential real property located in the commonwealth consisting of a dwelling house with accommodations for 4 or less separate households and occupied in whole or in part by the mortgagor and which secures a loan before, on or after the effective date of this act. Said section 11 shall not apply to such mortgages accelerated or whose statutory condition has been voided under the terms of the mortgage to secure the note, prior to the effective date of this act.

Claim no. 4722

**SECTION 22.** Section 15 shall take effect on July 1, 2008.

*Approved November 29, 2007.*

Claim no. 4722

# EXHIBIT 7

*claim no.*
*4722*

Ross v. Deutsche Bank Nat. Trust Co., --- F.Supp.2d ---- (2013)

2013 WL 1225621
Only the Westlaw citation is currently available.
United States District Court,
D. Massachusetts.

Alan J. ROSS and Ruth Ross, Plaintiffs,
v.
DEUTSCHE BANK NATIONAL TRUST
COMPANY and Deutsche Bank National Bank
Company, as Indenture Trustee for New Century
Home Equity Loan Trust 2005–4, Defendants.

Civil Action No. 12–10586–WGY. | March 27, 2013.

**Attorneys and Law Firms**

Carl D. Goodman, Law Office Of Carl D. Goodman,
Lynn, MA, for

Dean J. Wagner, Shechtman Halperin Savage, LLP,
Pawtucket, RI, for Defendants.

**Opinion**

### MEMORANDUM AND ORDER

WILLIAM G. YOUNG, District Judge.

## I. INTRODUCTION
*1 Plaintiffs Alan J. Ross and Ruth Ross (collectively,
"the Rosses") brought this action against the defendants,
Deutsche Bank National Trust Company and Deutsche
Bank National Bank Company, as Indenture Trustee for
New Century Home Equity Loan Trust 2005–4,
(collectively, "Deutsche Bank") seeking injunctive and
declaratory relief in order to prevent the foreclosure sale
of their residence (the "subject property") in Newton,
Massachusetts. Deutsche Bank, after removing the action
from state court, moved to dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") for
lack of subject matter jurisdiction and Federal Rule of
Civil Procedure 12(b)(6) ( "Rule 12(b)(6)") for failure to
state a claim upon which relief may be granted.

### A. Procedural Posture
The Rosses originally filed suit in the Massachusetts

Superior Court sitting in and for the County of Middlesex
to enjoin Deutsche Bank from conducting a foreclosure
sale of the subject property. Notice Removal, Ex. 9,
Verified Compl. ("Compl."), ECF No. 1–9. The Superior
Court granted a preliminary injunction. Am. Notice
Removal, Ex. 2, Prelim. Inj. ("Prelim.Inj.") 1, ECF No. 2–
2. On April 4, 2012, Deutsche Bank removed the case to
the United States District Court for the District of
Massachusetts. Am. Notice Removal, ECF No. 2. On
April 9, 2012, Deutsche Bank moved to dismiss the
Rosses' complaint. Mot. Dismiss Pls.' Compl., ECF No.
3; Mem. Law Supp. Mot. Dismiss Pls.' Compl. ("Defs.'
Mem."), ECF No. 4. The Rosses opposed this motion on
April 20, 2012. Pls.' Mem. Opp'n Mot. Dismiss Pls.'
Compl., ECF No. 5.

On June 6, 2012, the Court heard oral argument on the
motion to dismiss and ordered both parties to submit
supplemental briefs addressing the bankruptcy of the
original lender. Elec. Clerk's Notes, June 6, 2012. In
accordance with the Court's order, the Rosses and
Deutsche Bank filed supplemental memoranda on July 6,
2012. Pls.' Supplemental Mem. Opp'n Defs.' Mot.
Dismiss Pls.' Compl. Addressing New Century Mortg.
Corp. Ch. 11 Bankr., ECF No. 9; Defs.' Supplemental
Mem. Law Supp. Mot. Dismiss Pls.' Compl. ("Defs .'
Supplemental Mem."), ECF No. 10.

### B. Facts Alleged

#### 1. Origination of Note and Mortgage
On September 10, 1986, the Rosses became the owners of
the subject property, which is located at 974 Dedham
Street in Newton, Massachusetts. Compl. ¶ 3. On June 24,
2005, the Rosses executed an adjustable rate note (the
"Note") against the property payable to the order of New
Century Mortgage Corporation ("New Century
Mortgage"). Id. ¶ 4. The Rosses also executed a mortgage
(the "Mortgage") securing the Note in favor of New
Century Mortgage. Id.

#### 2. New Century Mortgage Bankruptcy
On April 2, 2007, New Century Financial Corporation
("New Century Financial"), New Century Mortgage's
parent company, filed a Chapter 11 bankruptcy petition in
the United States Bankruptcy Court for the District of
Delaware ("Bankruptcy Court"). Id. ¶ 5. Shortly after the
bankruptcy filing, New Century Mortgage granted
Carrington Mortgage Services ("Carrington") a limited
power of attorney to execute, record, and assign

4722

Ross v. Deutsche Bank Nat. Trust Co., --- F.Supp.2d ---- (2013)

mortgages and other documents. Notice Removal, Ex. 8, Limited Power Att'y 53, ECF No. 1–12.

*2 On April 6, 2008, New Century Financial and its subsidiaries, including New Century Mortgage, filed notice of an agreement establishing the New Century Liquidating Trust (the "Liquidating Trust") with the Bankruptcy Court. Compl. ¶ 6; Notice Removal, Ex. 4, Notice Filing Liquidating Trust Agreement 25–50, ECF No. 1–10. On July 15, 2008, the Bankruptcy Court confirmed the liquidation plan of New Century Financial and its subsidiaries, including New Century Mortgage. Notice Removal, Ex. 6, Order Confirming Second Am. Joint Ch. 11 Plan Liquidation Debtor & Official Comm. Unsecured Creditors Dated Apr. 23, 2008 ("Confirmation Order") 51, ECF No. 1–12. Pursuant to the plan, all assets of the debtors vested in the Liquidating Trust effective July 15, 2008. *Id.* ¶ 22, at 24. The plan also excluded the debtors from any further interest in the assets or the trust subsequent to the liquidation. *Id.;* Notice Removal, Ex. 5, Notice Filing Second Am. Joint Ch. 11 Plan Liquidation Debtors & Official Comm. Unsecured Creditors Dated Apr. 23, 2008 ("Plan") 51, ECF No. 1–11. Prior to July 15, 2008, New Century Mortgage was the record holder of the Mortgage. Compl. ¶¶ 11–12.

**3. Post–Bankruptcy Events**
On August 7, 2008, Carrington, representing Deutsche Bank, sent a notice of default to the Rosses. Compl. ¶ 25. The Rosses deny receiving such notice. *Id.* On January 15, 2010, the Rosses and Carrington entered into a loan modification agreement. Compl. ¶ 27. The Rosses maintain that the loan modification was not designed to cure a default. *See id.* As required under the loan modification agreement, the Rosses made monthly payments on the Mortgage. *Id.* ¶ 28. On December 1, 2010, Carrington sent the Rosses a second notice of intent to foreclose. *Id.* ¶ 18. On June 8, 2011, the Marinosci Law Group, P.C., acting for Deutsche Bank, sent the Rosses a third notice of default indicating an intent to foreclose. *Id.* ¶ 29. On the same day, Deutsche Bank petitioned the Massachusetts Land Court for a declaration that the Rosses were not entitled to the protections of the Servicemembers Civil Relief Act, 50 App. U.S.C. § 533. *See id.* ¶ 21.

On August 1, 2011, an assignment of mortgage dated May 24, 2011, was recorded in the Middlesex South District Registry of Deeds. *Id.* ¶ 13. Carrington, acting as attorney in fact for New Century Mortgage, executed the assignment, which transferred the Mortgage from New Century Mortgage to Deutsche Bank in its capacity as Trustee for New Century Home Loan Trust 2005–4.

Notice Removal, Ex. 7, Assignment Mortg. 52, ECF No. 1–12.

On February 17, 2012, Deutsche Bank notified the Rosses that the foreclosure sale of the subject property was scheduled for March 14, 2012. Compl. ¶ 22. On March 12, 2012, the Rosses obtained a preliminary injunction preventing Deutsche Bank from conducting the sale. Prelim. Inj. 1.

**C. Federal Jurisdiction**
*3 This Court may exercise federal-question jurisdiction pursuant to 28 U.S.C. section 1331 because the Rosses' claims arise under the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101–1532. Supplemental jurisdiction over the remaining claims is proper under 28 U.S.C. section 1367.

**II. STANDARD OF REVIEW**
When presented with a motion to dismiss a claim under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), "a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Northeast Erectors Ass'n of the BTEA v. Sec'y Labor, Occupational Safety & Health Admin.,* 62 F.3d 37, 39 (1st Cir.1995). If, however, the Rule 12(b)(1) motion is premised on a challenge to prudential standing, the motion is properly reviewed under Rule 12(b)(6). *See Katz v. Pershing, LLC,* 806 F.Supp.2d 452, 456 (D.Mass.2011) (Stearns, J.), *aff'd,* 672 F.3d 64 (1st Cir.2012). Because the capacity of a Massachusetts mortgagor to challenge the validity of an assignment to which he is not a party presents a question of prudential standing, *Culhane v. Aurora Loan Servs. of Neb.,* No. 12–1285, 2013 WL 563374, at *4–5 (1st Cir. Feb. 15, 2013), this Court will consider the present motion under Rule 12(b)(6).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A mere recital of the legal elements supported only by conclusory statements is not sufficient to state a cause of action. *See id.* at 555, 557. In reviewing a motion to dismiss under Rule 12(b)(6), a district court may consider the complaint, annexed exhibits, documents referenced but not attached to the complaint, and matters

12-12020-mg    Doc 5583-2    Filed 11/01/13    Entered 11/01/13 16:41:15    Exhibit 6-11 no.
Pg 22 of 48

4722

Ross v. Deutsche Bank Nat. Trust Co., --- F.Supp.2d ---- (2013)

subject to judicial notice, such as public records. *See Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 12 (1st Cir.2004). A court may not review, however, affidavits and miscellaneous documents submitted by the parties. *Id.*

## III. ANALYSIS

All three counts of the Rosses' complaint allege violations of the Massachusetts statutory foreclosure scheme. Count I alleges that Deutsche Bank does not have valid title to either the Note or the Mortgage and thus lacks the legal authority to conduct a foreclosure sale of the subject property. Count I also alleges that the second notice of foreclosure was deficient under the terms of the Mortgage. Count II alleges that Deutsche Bank violated its obligation to notify the Rosses of their right to cure the default. Count III seeks a declaratory judgment on Deutsche Bank's legal standing to foreclose on the subject property.

### A. Deutsche Bank's Standing to Exercise the Power of Sale (Count I)

#### 1. Legal Framework

*4 A mortgage that includes a power of sale# —# as the Rosses' Mortgage does # —# incorporates by reference the statutory power of sale established under Massachusetts General Laws chapter 183, section 21 and Massachusetts General Laws chapter 244, section 14 ("Section 14"). *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 646–47 (2011). A mortgage holder may foreclose on a mortgage that includes a power of sale without prior judicial authorization.[1] *See Id.* at 647. The Massachusetts statutory scheme limits this privilege, however, to the mortgagee and those duly authorized. Mass. Gen. Laws ch. 244, § 14. In recognition of "the substantial power that the [law] affords to a mortgage holder to foreclose without immediate judicial oversight," courts have required strict compliance with the regulations governing who has legal standing to foreclose under the power of sale. *Ibanez*, 458 Mass. at 647. Consequently, "[a]ny effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under [Section 14] is void." *Id.* at 647 (quoting *Chace v. Morse*, 189 Mass. 559, 561 (1905)). A mortgage assignment executed by an assignor who has no interest to assign or "no authority to make an assignment to a particular assignee" is thus void and does not confer upon the assignee the legal status required to exercise the power of sale. Culhane, 2013 WL 563374, at *5.

### 2. Standing

The Rosses contend that Deutsche Bank lacks legal standing to conduct the foreclosure sale because the 2011 assignment of the Mortgage from New Century Mortgage to Deutsche Bank is invalid. *See* Compl. ¶ 17. Deutsche Bank argues that the Rosses lack standing to contest the validity of the assignment. Defs.' Mem. 4–7.

The First Circuit has recently held that mortgagors have standing "to challenge the assignment of a mortgage ... to the extent that such a challenge is necessary to contest a foreclosing entity's status qua mortgagee." *Culhane*, 2013 WL 563374, at *5. This holding is narrow and limits such challenges to cases of "invalid, ineffective, or void" assignments. *Id.* The Rosses' contention that New Century Mortgage held no interest in the Mortgage to assign to Deutsche Bank in 2011 qualifies as a challenge that would render that assignment void. See id. Therefore, the Court concludes that the Rosses have standing and will now turn to the merits of their claim.

### 3. Validity of the 2011 Assignment

The Rosses contend that the 2011 assignment transferring the Mortgage from New Century Mortgage to Deutsche Bank is void because New Century Mortgage had been divested of its assets as a result of its 2008 bankruptcy and held no interest in either the Note or Mortgage that it could validly assign to Deutsche Bank in 2011. Compl. ¶¶ 10, 16–17. Deutsche Bank asserts that, at the time of the 2011 assignment, New Century Mortgage was a debtor in possession with the authority and discretion to manage its property and to execute assignments of mortgage. Defs.' Mem. 6–7, ECF No. 4.

*5 While it is true that bankruptcy law ordinarily permits a mortgage lender with debtor in possession status to execute and record assignments in the normal course of its business, *Juarez v. Select Portfolio Servicing, Inc.*, No. 11–2431, 2013 WL 500868, at *11 (1st Cir. Feb. 12, 2013), the presumption that such transfers are permitted is defeated when a bankruptcy court has confirmed a plan requiring the dissolution of the corporation, the termination of the company's operations, or the divestiture of its assets. *See Juarez v. U.S. Bank Nat. Ass'n ex rel. Holders of the Asset Backed Sec. Corp. Home Equity Loan Trust, Series NC 2005–HE8*, No. 11–10318–DJC, 2011 WL 5330465 at *7 (D.Mass. Nov. 4, 2011) (Casper J .), *rev'd on other grounds sub nom. Juarez*, 2013 WL 500868 (observing that the plaintiff did not allege any action# —# such as dissolution, cessation of operations, or divestiture # —# prohibiting the post-petition assignment of mortgage); *New Century Mortg. Corp. v. Braxton*, No. 09 MISC 393485(GHP), 2010 WL

Ross v. Deutsche Bank Nat. Trust Co., --- F.Supp.2d ---- (2013)

59277, at *6 (Mass. Land Ct. Jan. 11, 2010) (noting that lender failed to show how it retained the authority to assign mortgage during its bankruptcy proceedings in light of the transfer of its assets to a liquidating trust). As matter of bankruptcy law, a confirmed reorganization plan is binding on the debtor. *See* 11 U.S.C. § 1141(a); *In re New Seabury Co. Ltd. P'ship*, 450 F.3d 24, 33 (1st Cir.2006) ( "A plan of reorganization is a binding contract between the debtor and the creditors and is subject to the general rules of contract construction and interpretation."). Pursuant to the Bankruptcy Court order confirming New Century Financial's reorganization plan, all of the assets of New Century Mortgage were conveyed to a separate entity, the New Century Liquidating Trust, effective July 15, 2008. Confirmation Order ¶ 22, at 24. The plan also precluded New Century Mortgage and the other petitioners from having any interest in the assets or the trust following the transfer. Plan 51; Confirmation Order ¶ 22, at 24. In a second and final amended plan also confirmed by the Bankruptcy Court in 2009, the debtors, including New Century Mortgage, confirmed that their assets were conveyed to the trust as provided for in the original plan on the effective date, July 15, 2008. Order Confirming Modified Second Am. Joint Ch. 11 Plan Liquidation Dated September 30, 2009, *In re New Century TRS Holdings, Inc.*, No. 07–10416, at *24 (Bankr.D.Del. Nov. 20, 2009), ECF No. 9957. Thus, accepting as true the Rosses' claim that New Century Mortgage held the Note and the Mortgage during the pendency of its bankruptcy, the Rosses have a plausible claim that these assets became the property of the Liquidating Trust on July 15, 2008, and that New Century Mortgage retained no valid interest to assign to Deutsche Bank in 2011.

Deutsche Bank, however, maintains that the assignment was valid because the Note and the Mortgage were not included in the bankruptcy estate and thus not controlled by the property distribution provided for under the plan. Defs.' Supplemental Mem. 7. Specifically, Deutsche Bank claims that the Mortgage and the Note are securitized mortgage assets excluded under 11 U.S.C. section 541(d), which excludes from the bankruptcy estate mortgages "sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage[s]." 11 U.S.C. § 541(d); see Defs.' Supplemental Mem. 7–8. In reviewing this claim, the Court takes judicial notice of public Securities and Exchange Commission records submitted by Deutsche Bank documenting the 2005 sale of mortgage and servicing rights assets from New Century Mortgage Securities to Deutsche Bank. *See New Century Equity Loan Trust 2005–4, Current Report (Form 8–K)*, U.S. Sec. & Exch. Comm'n (Sept. 1, 2005),

http://www.sec.gov/Archives/edgar/data/1336261/000088 237705002419/ 0000882377–05–002419–index.htm. The mortgage asset sale agreement does not, however, list the Mortgage among the purchased assets. *See id.* The Court thus concludes that the Ros have pleaded a plausible claim that the Mortgage and the Note were part of the bankruptcy estate conveyed to the Liquidating Trust under the confirmation plan.

*6 Because the Court concludes that the Rosses have stated a plausible claim that the 2011 assignment from New Century Mortgage to Deutsche Bank was invalid, it need not address the Rosses' second claim under Count I, which alleges that Deutsche Bank's notice was deficient under the terms of the Mortgage.

### B. The Adequacy of Deutsche Bank's Notice under the Massachusetts Right–to–Cure Law (Count II)

Under Massachusetts law, mortgagors are entitled to the right to cure a default on a mortgage loan. Mass. Gen. Laws ch. 244, § 35A(b). Pursuant to the statutory scheme, a mortgagor is entitled to either a 150–day or a 90–day grace period to cure a default of mortgage. *Id.* This right may only be exercised once in any three year period, *id.,* and requires a mortgagee seeking to accelerate and foreclose on a mortgage in default to notify the mortgagor of his right to cure, *id.* § 35A(g). Because the notice requirement is part of the Massachusetts statutory scheme regulating foreclosure, mortgagees seeking to foreclose must comply strictly with the notice requirement. *See Silva v. Deutsche Bank Nat'l Trust Co.,* No. MICV201203951H, 2012 WL 6016813, at *3 (Mass.Super.Ct. Nov. 14, 2012) (Wilson, J.).

The Rosses contend that Deutsche Bank's June 8, 2011, notice was invalid because it failed to notify them of their right to cure. Compl. ¶ 29. Deutsche Bank presents two separate defenses of its foreclosure notice. First, it erroneously contends that the Massachusetts law is preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461–1468c, which reserves "the entire field of lending regulation for federal savings associations" to the federal statutory scheme. 12 C.F.R. § 560.2(a); see Defs.' Mem. 9. In support of this contention, Deutsche Bank relies on *Sovereign Bank v. Sturgis*, 863 F.Supp.2d 75 (D.Mass.2012) (Woodlock, J.), which holds that Massachusetts General Laws chapter 24, Section 35A ("Section 35A") regulations imposing requirements on terms related to the maturity of loans are expressly preempted by federal law. *Id.* at 103; see Defs.' Mem. 9.

Sovereign Bank, however, is inapposite. In Sovereign Bank, the plaintiff was a federal savings association

*Claim no.*
*4722*

Ross v. Deutsche Bank Nat. Trust Co., --- F.Supp.2d ---- (2013)

governed by HOLA. 863 F.Supp.2d at 87, 91. In the present case, HOLA preemption is inapplicable because Deutsche Bank is a national bank[2] neither subject to HOLA nor regulated by the Office of Thrift Supervision, the agency responsible for determining whether state laws are preempted under HOLA. See *Gerber v. Wells Fargo Bank, N.A.,* No. 11–01083–PHX–NVW, 2012 WL 413997, at *4 (D.Ariz. Feb. 9, 2012) (Wake, J.).[3]

As a national bank, Deutsche Bank is entitled only to the applicable preemption laws promulgated under the National Banking Act ("NBA"). *See Appling v. Wachovia Mortg., FSB,* 745 F.Supp.2d 961, 970–71 (N.D.Cal.2010) (Koh, J.) Pursuant to the NBA, the Office of the Comptroller of the Currency ("OCC") has the authority to determine whether "federal law preempts the application of any state consumer protection or fair lending statute to a national bank." *In re Hollingworth,* 453 B.R. 32, 35 (Bankr.D.Mass.2011). Under federal law, national banks may "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to ... such restrictions and requirements as the [OCC] may prescribe by regulation or order." 12 U.S.C. § 371(a). Specifically,

> *7 a national bank may make real estate loans under 12 U.S.C. § 371 ... without regard to state law limitations concerning ... [t] he terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan.

12 C.F.R. § 34.4(a),(a)(4). Before determining whether the Massachusetts right-to-cure law should be preempted under 12 C.F.R. section 34.4(a)(4), this Court will first consider whether the assignee of the Mortgage, Deutsche Bank National Trust Company, as Indenture Trustee for New Century Home Equity Loan Trust 2005–4, has made or purchased a real estate loan within the meaning of 12 U.S.C. section 371. Examined in light of the OCC's interpretive letter on preemption as applied to the trustees of securitized trusts, it has not. See OCC Interpretive Letter 1016 (Jan. 14, 2005), *available at* http://www.occ.gov/static/interpretations-and-precedents/feb05/ intl016.pdf. Because the Deutsche Bank trustee neither originated the loan, funded the loan

at inception, nor "purchase[d] the loan[s] as part of any real estate lending program comprehended by the regulation," *id.* at 3 (internal quotation marks omitted), the Massachusetts right-to-cure law is not preempted under the NBA.

Deutsche Bank argues that in the alternative, the Rosses have already exercised their right to cure under the 2010 loan modification agreement, and as a result, are not entitled to notice of a right that they no longer enjoy. Defs.' Supplemental Mem. 14–15.

Despite Deutsche Bank's allegations, the Rosses do not admit that the loan modification was granted to cure a default. See Compl. ¶ 27. In light of the absence of the Rosses' premodification payment history from the record, whether the Rosses have already exercised their statutory right to cure implicates a factual dispute not amenable to resolution under the Rule 12(b)(6) standard. Drawing all inferences in their favor, the Rosses' complaint states sufficient facts for a plausible claim under Section 35A.

## C. The Rosses' Standing to Pursue a Declaratory Judgment (Count III)

In Count III of their complaint, the Rosses seek a declaratory judgment with respect to Deutsche Bank's right to conduct the foreclosure sale as mortgagee of record. Compl. ¶ 39. The Rosses also request a declaration as to whether Deutsche Bank's foreclosure notices complied with the Massachusetts statutory scheme. *Id.* Deutsche Bank contends that a declaratory judgment is inappropriate because the Rosses lack standing to request such a judgment. Defs.' Mem. 9–10.

A district court may grant a declaratory judgment only "where there is an actual case or controversy within the meaning of Article III." *Ferreira v. Dubois,* 963 F.Supp. 1244, 1261 (D.Mass.1996) (Bowler, M.J.) (quoting *Interstate Food Processing Corp. v. Maine,* 826 F.Supp. 24, 25 (D.Me.1993) (Brody, J.) (internal quotation mark omitted). Such a judgment is "moot where 'the question presented for decision seeks a judgment upon a matter which, even if the sought judgment were granted, could not have any practical effect upon the parties.' " *Id.* at 1262(quoting *Perez v. Sec'y of Health, Educ., & Welfare,* 354 F.Supp. 1342, 1346 (D.P.R.1972) (Toledo, J.). Because this Court has determined that the Rosses have standing to challenge the validity of Deutsche Bank's status as mortgagee, *see supra* section III.A.2, it concludes that the Rosses have presented a plausible claim of an actual controversy within the meaning of Article III.

*Claim No.*
*4722*

**SO ORDERED.**

**IV. CONCLUSION**

*8 For the reasons stated above, the motion to dismiss, ECF No. 3, is DENIED on all counts.

Footnotes

1      Effective June 22, 2012, a mortgagee seeking to conduct a foreclosure sale in Massachusetts must hold both the note and the mortgage. *See Eaton v. Fed. Nat'l Mortg. Ass'n,* 462 Mass. 569, 587–89 (2012); *cf. Douglas J. Whaley, Mortgage Foreclosures, Promissory Notes, and the Uniform Commercial Code,* 39 W. St. U.L.Rev. 313 (2012) (describing "the Golden Rule of Mortgage Foreclosure" under the Uniform Commercial Code as prohibiting foreclosure unless the creditor "possess[es] the "properlynegotiated original promissory note.")

2      The Court takes judicial notice that Deutsche Bank is a national bank and not a federal savings association. *See National Banks and Federal Savings Associations,* Off. Comptroller Currency (Feb. 28, 2013), http:// www.occ.treas.gov/topics/ licensing/national-bank-lists/ind ex-active-bank-lists.html.

3      While several federal courts in California have applied HOLA preemption to national banks, such cases are limited to those institutions that are successors to or assignees of loans originally extended by a federal savings association. *See, e.g., Rodriguez v.. U.S. Bank Nat'l Ass'n,* No. C 12–00989 WHA, 2012 WL 1996929, at *7 (N.D. Cal. June 4, 2012) (Alsup, J.). In this case, neither the original lender, New Century Mortgage, nor Deutsche Bank are federal savings associations.

© 2013 Thomson Reuters. No claim to original U.S. Government Works.

Claim no.
4722

# EXHIBIT 8

*10*

*Claim no.*
*4722*

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 2012-3951-H

MARIA SILVA
and VALDIRENE BATISTA
v.

DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR
MORGAN STANLEY IXIS REAL ESTATE CAPITAL TRUST 2006-2

### PRELIMINARY INJUNCTION

Defendant ["Deutsche Bank as Trustee"] held a mortgage on the home of Plaintiffs [the
"Borrowers"], and now purports to hold title to the home after purchasing it at a foreclosure sale.
When Deutsche Bank as Trustee sent the Sheriff to Borrowers' home with a notice to vacate,
Borrowers filed this lawsuit and obtained a temporary restraining order against enforcement of
the notice to vacate.

Borrowers contend that they still own the home because of defects in the foreclosure
process. Borrowers now seek a preliminary injunction prohibiting Deutsche Bank as Trustee
from taking any action against them resulting from the foreclosure and eviction. I find that
Borrowers have established a likelihood of success on the merits as to one set of defects in the
original notice of default. I also find that Borrowers will suffer irreparable harm in the absence
of a preliminary injunction, and that the balance of harms favors issuance of an injunction.

### Background

Borrowers, two sisters who owned a home in Somerville, Massachusetts, granted a
mortgage on that home on July 18, 2006 to secure a note for $480,250. The original mortgagee
was Mortgage Electronic Registration Systems, Inc. as nominee for Accredited Home Lenders,
Inc. At some point, that original mortgagee assigned the mortgage to Defendant Deutsche Bank

Claim No
4722

National Trust Company as Trustee for Morgan Stanley IXIS Real Estate Capital Trust 2006-2.

Borrowers state in their Amended Verified Complaint that this assignment occurred on August

17, 2009, but Defendant Deutsche Bank as Trustee has submitted evidence that the assignment

may have occurred on November 1, 2006. The date of the assignment is irrelevant to this

decision, so I do not resolve it.

In late 2008 or early 2009, Borrowers defaulted on their loan. During the first half of

2009, Saxon Mortgage Services, Inc., as servicer of the loan, sent a notice to Borrowers that the

loan was in default (the "Notice") and offered them the 90-day cure period required by M.G.L. c.

244, § 35A. The parties provided different versions of that Notice, with Borrowers presenting an

undated version which, according to the Amended Verified Complaint, was sent on May 24,

2009, and Deutsche Bank as Trustee presenting a version of the Notice dated February 24, 2009.

While Borrowers' version of the Notice lacks letterhead and a date, its text is identical to the

version submitted by Deutsche Bank as Trustee. The three-month difference in the purported

dates of these two versions of the Notice is irrelevant to this decision, and so I do not resolve the

question of the date on which the Notice was sent.

Borrowers apparently did not cure their default, because Deutsche Bank as Trustee began

foreclosure proceedings in Middlesex Superior Court by filing a Complaint to Determine

Military Status in Civil Action No. MICV2009-4448. Borrowers did not respond to this lawsuit,

default was entered, and ultimately this court issued an order under the provisions of the

Soldiers' and Sailors' Civil Relief Act granting Deutsche Bank as Trustee the authority to

foreclose under the power of sale contained in the mortgage.

Borrowers apparently did not cure their default, because Deutsche Bank as Trustee then held a foreclosure sale, again after notice to Borrowers.

Deutsche Bank as Trustee purchased the property at that foreclosure sale.

2

*Claim no.
4722*

By the summer of 2012, more than three years had passed since the beginning of these

foreclosure proceedings, and the Borrowers had never responded to any notice or other action

taken by Deutsche Bank as Trustee. Nor, however, had they moved out of the property at issue.

Therefore Deutsche Bank as Trustee filed a summary process lawsuit in Somerville District

Court, obtaining judgment on July 20, 2012, again by default when Borrowers did not respond to

the lawsuit.

At this point Borrowers finally took action, asking the Somerville District Court to vacate

the default judgment against them in the eviction proceeding. Borrowers contended that they

had mailed a discovery request to Deutsche Bank as Trustee which should have put off the

District Court proceedings for two weeks under Summary Process Rule 7(b), but this discovery

request was not delivered on time because of an unexplained delay in mail delivery. The

Somerville District Court denied Borrowers' motion to vacate, and, in any event, it is unlikely

that the result of the eviction proceeding would have been any different had it occurred two

weeks later.

On September 21, 2012, the Middlesex County Sheriff served a notice to quit, requiring

Borrowers to move out by October 5, 2012. On October 4, however, Borrowers filed the current

lawsuit, and obtained a temporary restraining order against the Sheriff's enforcement of the

notice to quit.

On October 26, 2012, I heard argument on Borrowers' request that the temporary

restraining order be converted to a preliminary injunction. After the hearing, Deutsche Bank as

Trustee submitted additional factual material, pursuant to a request that I had allowed at the

hearing, and Borrowers submitted a supplemental opposition discussing that additional factual

material.

*Claim no.*
*4722*

## Analysis

"A party seeking a preliminary injunction must show that (1) success is likely on the merits; (2) irreparable harm will result from denial of the injunction; and (3) the risk of irreparable harm to the moving party outweighs any similar risk of harm to the opposing party." *Cote-Whitacre v. Dept. of Public Health*, 446 Mass. 350, 357 (2006) (Spina, J., concurring), citing *Packaging Industries Group v. Cheney*, 380 Mass. 609, 616-17 (1980). Here, to justify the issuance of a preliminary injunction against Deutsche Bank as Trustee, Borrowers must show, first, a likelihood that they will prevail at trial on their theory that the foreclosure sale was void, and second, that in the absence of an injunction Borrowers will suffer harm that is both irreparable and severe enough to outweigh the harm that an injunction will impose on Deutsche Bank as Trustee.

1. Likelihood of Success on the Merits

Borrowers point to several defects in the Notice and in the two affidavits filed by Deutsche Bank as Trustee after the foreclosure. (In these two affidavits, which are required by M.G.L. c. 244, § 15, Deutsche Bank as Trustee swore that it had complied with the statutory requirements for foreclosure under a power of sale.) Borrowers contend that, because of these defects, the foreclosure sale in 2011 was void, and therefore they remain owners of the property at issue. In this lawsuit, they seek a declaratory judgment to that effect, and injunctive relief prohibiting Deutsche Bank as Trustee from offering the property for sale, transferring its purported interest in the property, or removing them or their possessions from the property.

One of the defects in the Notice, according to Borrowers, is that it fails to list "the name and address of the mortgagee, or anyone holding thereunder, and the telephone number of a representative of the mortgagee whom the mortgagor may contact…" M.G.L. c. 244, §

4

Claim no.
4722

35A(c)(4).  I find that Borrowers are likely to succeed in undoing the foreclosure because

Deutsche Bank as Trustee failed to strictly comply with this statutory requirement, and so I do

not consider the other defects alleged by Borrowers.

The mortgagee who purported to foreclose was Deutsche Bank as Trustee, in its role as

assignee of the mortgage.  In the versions of the Notices presented by both parties, the following

text appears:

> Creditor:       Deutsche Bank
> SERVICER:   Saxon Mortgage Services, Inc.

Ex. 2 to Defendant's Opposition to Plaintiffs' Application for Preliminary Injunction at 1;

*accord*, Ex. 4 to Amended Verified Complaint at 1.  In addition, the Notice in both versions

contains the following language on page 2:

> You are encouraged to call Saxon to discuss the default on your
> loan. We can be reached at 1-800-874-9516.  You may contact us
> in writing at the following address: Saxon Mortgage Services, Inc.
> 4708 Mercantile Dr. North, Fort Worth, TX, 76137-3605 or P.O.
> Box 966, 1106 Fort Worth, TX, 76161-0106.

Deutsche Bank as Trustee asserts that, through the text quoted above, the Notice satisfied

the requirements of section 35A(c)(4).  Borrowers, on the other hand, contend that there is no

address listed for Deutsche Bank as Trustee and therefore the Notice fails to satisfy the

requirement the "address of the mortgagee" be given.  Borrowers further point out that even "the

name... of the mortgagee" is inaccurate, because it says merely "Deutsche Bank," leaving out the

fact that Deutsche Bank was the mortgagee as a trustee of a particular Trust.  Finally, Borrowers

argue that the Notice is insufficient because the does not identify Deutsche Bank as "the

mortgagee," but instead refers to it as "Creditor."

There is little doubt that the Notice provided Borrowers with sufficient information to

allow them to contact a representative of the mortgagee if they disagreed with the assertion that a

Claim no.
4722

default had occurred or with the accuracy of the calculation of the amount owed. They could contact Saxon, the servicer of the mortgage and therefore "a representative of the mortgagee," to discuss those topics. Thus the Notice accomplished the legislative purpose behind section 35A(c)(4).

However, the law of Massachusetts requires a mortgagee to do more than simply satisfy the purpose behind the statute that requires advance notice of an impending foreclosure. "The manner in which the notice of a proposed sale shall be given is one of the important terms of the power [of sale in a mortgage], and a *strict compliance* with it is essential to the valid exercise of the power." *U.S. Bank N.A., Trustee v. Ibanez*, 458 Mass. 637, 647-48 (2011), quoting *Moore v. Dick*, 187 Mass. 207, 212 (1905) (emphasis added). Although the *Ibanez* court was considering the notice requirement in M.G.L. c. 244, § 14, the principle of "strict compliance" applies equally to the notice requirement in M.G.L. c. 244, § 35A(c)(4).

That statute requires that a notice of the right to cure must include "the name and address of the mortgagee." In this case, the Notice does not name the mortgagee as such, only identifying Deutsche Bank as the "Creditor." As the Supreme Judicial Court recently pointed out, the mortgagee is not always the creditor, because sometimes the mortgage is assigned without the underlying promissory note being assigned to the same party, or vice versa. *Federal National Mortgage Ass'n v. Eaton*, 462 Mass. 569, 576 (2012)("in Massachusetts, a mortgage and the underlying note can be split"); *accord, Lamson & Co. v. Abrams*, 305 Mass. 238, 245 (1940)("The holder of the mortgage and the holder of the note" -- that is, the mortgagee and the creditor – "may be different persons"). "Strict compliance" with section 35(c)(4), therefore, would require that Deutsche Bank be identified as the mortgagee, not just the creditor, and the Notice does not do that.

*Claim no. 4722*

Assuming that Deutsche Bank was in fact the mortgagee at the time that Saxon sent to the notice to Borrowers (a disputed question I need not resolve at this stage), Deutsche Bank held that status as the trustee for a particular trust, and not in its individual corporate capacity. When an entity does not identify itself as "trustee" in signing a legal document, the trust is not bound by its actions, because an entity acting in its capacity as trustee "is treated as a different party when acting individually." *Rogaris .v Albert*, 431 Mass. 833, 836 (2000). In a case like this, where the purpose of identifying the mortgagee is to allow the party receiving the Notice to contact that mortgagee or its representative, the distinction between "Deutsche Bank" and "Deutsche Bank National Trust Company as Trustee for Morgan Stanley IXIS Real Estate Capital Trust 2006-2" matters little. However, in failing to identify Deutsche Bank as a trustee, the Notice again failed to meet the standard of "strict compliance" with section 35A(c)(4).

Finally, the Notice nowhere lists the address of the mortgagee, Deutsche Bank as Trustee. Again, this is an omission of little importance, because the Notice gives an address and a phone number for Saxon, the servicer, so Borrowers would have someone they could easily contact were they so inclined. But, again, omitting the address of the mortgagee means the Notice did not meet the test of "strict compliance" with the statutory requirements.

"Foreclosure is a powerful act with significant consequences, and Massachusetts law has always required that it proceed strictly in accord with the statutes that govern it ...Such strict compliance is necessary because Massachusetts both is a title theory State and allows for extrajudicial foreclosure." *Ibanez*, 458 Mass. at 655 (Cordy, J., concurring). Because the Notice fails to strictly comply with the requirements of M.G.L. c. 244, § 35A(c)(4) in the respects described above, Borrowers have established a likelihood that they will succeed on the merits of their claim that the foreclosure sale was invalid.

7

*Claim no.*
*4722*

2. Irreparable Harm

Borrowers live in the home at issue in this lawsuit. Their two minor children live with them. In the absence of an injunction, Deutsche Bank as Trustee undoubtedly will enforce the Sheriff's notice to vacate, and Borrowers and their minor children will be forced to move.

It is true that prevailing in this lawsuit would not necessarily guarantee that Borrowers would be able to retain their home. Borrowers do not dispute that they are in default. If Borrowers cannot pay what they owe, which is quite possible, then Deutsche Bank as Trustee could immediately begin the foreclosure process anew, curing all the alleged defects, and eventually Borrowers would again face the loss of their home.

It is also true that Borrowers have stood silent for three years as Deutsche Bank as Trustee reacted to their default by taking measured, progressive steps toward foreclosure and eviction, and that, on the eve of eviction, Borrowers raised, for the first time, defects in a Notice served on them at the outset of this long process. That fact weighs against issuance of an injunction.

Nonetheless, if the temporary restraining order is not converted to an injunction, Borrowers and their minor children will be forced to leave their home of many years. Despite the fact that Borrowers have generally ignored the good faith efforts of their mortgagee to follow a legal process to collect what Borrowers owe, an eviction would constitute irreparable harm.

On the other hand, in the absence of an injunction, Deutsche Bank as Trustee will suffer the inconvenience of being unable to sell the real estate at issue, even while it is apparently unable to collect the back mortgage payments from Borrowers. For an institution the size of Deutsche Bank, even in its role as Trustee of a Trust that owns hundreds or thousands of

*Claim no. 4722*

mortgages, this does not constitute irreparable harm that would outweigh the harm faced by
Borrowers and their children should an injunction not issue.

## ORDER

For the foregoing reasons, I **ISSUE** the following preliminary injunction:

Defendant is enjoined from offering the property of Plaintiffs Maria Silva and Valdirene Batista
for sale, transferring any interests in the property, removing any of Borrowers' personal property
from the premises, or preventing Borrowers from continuing to live at the premises until further
order of this court.

So Ordered.

_____
Paul D. Wilson
Justice of the Superior Court

November 14, 2012

*Entered: 11/14/12*

Claim no. 4722

# EXHIBIT 9

Claim no.
4722    26

COMMONWEALTH OF MASSACHUSETTS
NORTHEAST HOUSING COURT

---

FEDERAL HOME LOAN MORTGAGE CORP.

Plaintiff

- v. -                              No. 12-SP-0871

PAULA SENSINI

Defendant

---

## RULINGS AND ORDER

After hearing in this post-foreclosure summary process case, and on material facts similar to those in EMC Mortgage LLC v. Rivera, N.E. Hsg.Ct. No. 11-SP-3842 (October 3, 2012) and FHLMC v. Bisnath, N.E. Hsg.Ct. No. 11-SP-4131 (December 17, 2012), I deny the plaintiff's motion for summary judgment and allow the cross motion by the defendant, for the reason that the "Notice of Intention to Foreclose" dated November 17, 2008, did not comply with the requirements of Gen.L. c.183 §21 ("first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale") and Gen.L. c.244 §35A.

The statute, Gen.L. c.244 §35A(c)(5), required that "the name of any current and former mortgage broker or mortgage loan originator for such mortgage or note securing the residential property" be included in the notice. As in the EMC and Bisnath cases, the notice in this case acknowledged that "applicable law requires the disclosure of the following information" but then misinformed the borrower that "The mortgage broker(s) associated with this loan are/were [we were unable to ascertain this information]" and that "The mortgage loan originator(s) associated with this loan are/were [we were unable to ascertain this information]."

The original mortgage was given to "MSA Mortgage, LLC" on June 20, 2003, and was assigned to MERS as nominee for "Countrywide Home Loans, Inc." the same day. The Gen.L. c.244 §35A notice dated November 17, 2008, which was on the letterhead of "Countrywide Home Loans" and which was given by "Countrywide Home Loans Servicing, LP" as servicing agent on behalf of the "Noteholder" which was

*Claim no.*
*4722*

unnamed, referred to "your loan documents." It was obviously known to the author of the notice that "MSA Mortgage, LLC" was the "mortgage loan originator" as "MSA Mortgage, LLC" was the original "Lender" described in the "Mortgage" dated June 20, 2003, and the original mortgage had been assigned to MERS as nominee for "Countrywide Home Loans, Inc." on the same day. The conclusion is inescapable that "Countrywide Home Loans" and "Countrywide Home Loans, Inc." were not in fact "unable to ascertain this information" and that their representations to the contrary were false when made.

Whether the falsehoods resulted from scofflaw misconduct or from mere sloppiness is not material for purposes of the present motion. Nor does it matter that the borrower might have known or might have been able to independently ascertain the information that the foreclosing entity was required by law to give as a pre-condition of its right to foreclose. It is well established that strict compliance with the terms of the mortgage and with the applicable statutes is required for a non-judicial foreclosure under a power of sale, and that actual prejudice resulting from defects and irregularities in foreclosure procedures need not be shown in order to challenge the validity of the ensuing deed and title. See, <u>EMC Mortgage LLC</u> v. <u>Rivera</u>, N.E. Hsg.Ct. No. 11-SP-3842 (October 3, 2012) and <u>FHLMC</u> v. <u>Bisnath</u>, N.E. Hsg.Ct. No. 11-SP-4131 (December 17, 2012).

It is unnecessary to consider the other arguments advanced by the defendant.

Enter judgment dismissing the complaint.

David D. Kerman
Associate Justice

December 31, 2012

Claim no.
4722

# EXHIBIT 10

*Claim no.
4722*

Investor Loan # **0601310410**

# HOME AFFORDABLE MODIFICATION PROGRAM
# LOAN WORKOUT PLAN
## (Step One of Two-Step Documentation Process)

Loan Workout Plan Effective Date: [Beginning of Trial Period]
Borrower ("I")[1]:
Lender ("Lender"):
Date of first lien Security Instrument ("Mortgage") and Note ("Note"):
Loan Number:
Property Address ("Property"):

If I am in compliance with this Loan Workout Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1.    **My Representations**.  I certify, represent to Lender and agree:

       A.       I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

       B.       I live in the Property as my principal residence, and the Property has not been condemned;

       C.       There has been no change in the ownership of the Property since I signed the Loan Documents;

       D.       I am providing or already have provided documentation for **all** income that I receive (except that I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

E.  Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

F.  If Lender requires me to obtain credit counseling, I will do so.

G.  If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Plan.

2.  **The Loan Workout Plan.** On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items (where not prohibited by law), including real estate taxes, insurance premiums and other fees, if any, of U.S. $ 431.93.

|  |  |  |
|---|---|---|
| 1. | 06/01/2009 | $ 1,168.24 |
| 2. | 07/01/2009 | $ 1,168.24 |
| 3. | 08/01/2009 | $ 1,168.24 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the date of this Plan and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A.  TIME IS OF THE ESSENCE under this Plan;

B.  Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived unless prohibited by law;

C.  If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the lender may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D.  The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E.  When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents and are not prohibited by law;

F.  If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me;

*Claim no. 4722* (handwritten)

and

G.  I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3.  **The Modification.** I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. Upon execution of a Modification Agreement by the Lender and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan.

4.  **Additional Agreements.** I agree to the following:

A.  That, unless a borrower or co-borrower is deceased, all persons who signed the Loan Documents have signed this Plan.

B.  To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan (unless prohibited by law).

C.  That this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account, unless prohibited by law.

D.  That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

In Witness Whereof, the Lender and I have executed this Plan.

_____
GMAC Mortgage, LLC

By: _____

_____
Date

_____ (Seal)
JAMES B LADD
_____
Date    5-18-09

_____ (Seal)
_____
Date    5-18-09

Claim no.
4722

# EXHIBIT 11

2/24/2010                                                   **GMAC** Mortgage

JAMES B LADD
ANN LADD
5 BARROWS ST
MIDDLEBORO MA 02346

Re:  601310410
     5 BARROWS ST
     MIDDLEBORO MA 02346

Dear JAMES B LADD    ANN LADD

**Congratulations! Your request for a loan modification has been approved subject to the following:**
       -Receipt of your contribution in the form of certified funds
       -Receipt of the signed and notarized loan modification agreement and any attachments
       -Receipt of clear title, if applicable

Highlights of the enclosed Loan Modification Agreement and instructions for completing and returning it are as follows:

- The contribution amount of $ 1,684.65 in the form of certified funds is due in our office by March 3, 2010.
- The interest rate is 3.87500%.
- The first modified payment begins April 1, 2010.

|                        |           |
|------------------------|-----------|
| Principal and Interest | 1,184.89  |
| Escrow                 | 499.76    |
| **Total Payment**      | **$1,684.65** |

Do NOT sign the enclosed Loan Modification Agreement unless you are in the presence of a notary. This document must be signed in the presence of a notary and (if applicable) other witnesses. All of the documents must be executed and the signatures must be exactly as the names are typed.

- The signed and notarized Loan Modification Agreement should be returned using the enclosed pre-paid overnight envelope.
- If any modification closing costs are more than projected, the difference will be assessed to the account.
- All miscellaneous fees and costs – excluding late charges – may not have been included in the loan modification and will remain outstanding.

---

We are NOT required to record the modification document; therefore, only your signature(s) are required. No notary is required.

---

The contribution and executed loan modification documents are due back by March 3, 2010. Please return to:

GMAC Mortgage, LLC
Attn: Loan Modification
3451 Hammond Avenue
Waterloo, IA 50702

IMPORTANT! The loan modification will not be complete until we receive all properly executed documents and the contribution amount. If the modification is not completed we will continue to enforce our lien. If the conditions outlined above are not satisfied the modification will be withdrawn.

If you have any questions regarding this modification offer, please contact a modification specialist directly at 1-800-799-9250 Monday – Thursday 8:00 AM to 7:00 PM, Friday 8:00 AM to 5:00 PM, Central Time.

Loan Modification Specialist

Enclosures

*Claim no. 4722*

[Space Above This Line For Recording Data]

Freddie Mac Loan #: 271978031

This document was prepared by:

After recording please return to: GMAC Mortgage, LLC
Attention: Loss Mitigation Department
3451 Hammond Avenue
Waterloo, IA 50702-5345

THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS.
ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND
ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE
THE SECURITY INSTRUMENT IS RECORDED.

**LOAN MODIFICATION AGREEMENT**
**(Providing for Fixed Interest Rate)**

"Intangible tax is not required to be paid on any instrument that modifies by extension, transfer, assignment, or renewal, or gives additional security for an existing note, when the intangible recording tax has been paid on the original instrument, or the original note, or holder of the original instrument was exempt."

This Loan Modification Agreement ("Modification"), is effective March 1, 2010, between JAMES B LADD    ANN LADD    ("Borrower") and GMAC Mortgage, LLC ("Lender"), and amends and supplements (1) the Note (the "Note") made by the Borrower, dated June 25, 2005, in the original principal sum of U.S. Two Hundred Sixty Seven Thousand Eight Hundred  Dollars and No Cents $  267,800.00 and (2) the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), recorded on,  with Instrument Number in Book  and/or Page Number(s) , of the official Records of PLYMOUTH County, MA [County and state, or other jurisdiction]. The Security Instrument, which was entered into as security for the performance of the Note, encumbers the real and personal property described in the Security Instrument (and defined in the Security Instrument as the "Property"), which is located at 5 BARROWS ST  MIDDLEBORO MA 02346. That real property is described as follows:

See Attached Sheet.

The Borrower has requested that the Lender modify the terms of the Note and Security Instrument.  The Lender has agreed to do so pursuant to the terms and conditions stated in this Modification.  In consideration of the agreements made in this Modification, and other good and valuable consideration which the parties agree they have received, the Borrower and Lender agree to modify the terms of the Note and Security Instrument as follows.  The Borrower and the Lender agree that the provisions of this Modification supersede and replace any inconsistent provisions set forth in the Note and Security Instrument.

1.    The Borrower represents that the Borrower _X_ is, ___is not, the occupant of the Property.

2.    The Borrower acknowledges that interest has accrued but not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses, in the total amount of $21,160.79, have been added to the indebtedness under the terms of the Note and Security Instrument.  As of , the amount, including such amounts which have been added to the indebtedness (if any), payable under the Note and Security  Instrument (the "Unpaid Principal Balance") is U.S. $  288,859.39

3.    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the  Lender,

until the Unpaid Principal Balance has been paid. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.875%, beginning March 1, 2010. The Borrower promises to make monthly payments of principal and interest of U.S. $ 1,184.89 beginning on the April 1, 2010, and continuing thereafter on the same day of each succeeding month. If on March 1, 2050 the ("Modified Maturity Date") the Borrower still owes amounts under the Note and Security Instrument, as amended by this Modification, the Borrower will pay these amounts in full on the Modified Maturity Date. The Borrower will make such payments at 3451 Hammond Avenue, Waterloo, IA 50702-5345 or at such other place as Lender may require.

4.    If at any time the Borrower is in default, the Lender may, by providing a written notice to the Borrower, notify the Borrower that the Borrower is in default and that the interest which will be charged on the Unpaid Principal Balance may be increased to a yearly rate of 3.875% beginning on an effective date stated in the above notice. That date will be at least 30 days after the date on which the notice is delivered or mailed to the Borrower. If the Borrower defaults, the Lender may, at its election, require the Borrower to pay immediately the Unpaid Principal Balance that remains unpaid at that time, all interest that has accrued but not been paid, and any other sums that are evidenced are secured by the Note and Security Instrument. If the Lender does not require that such payment be made immediately, the Borrower shall pay an increased monthly payment that will be based on upon the interest rate stated in this Paragraph 4 instead of the interest rate stated in Paragraph 3. The Borrower acknowledges that the increased rate of interest will only be charged if the Borrower does not meet its obligations under the Note and Security Instrument, as modified by this Modification.

5.    Except to the extent that they are modified by this Modification, the Borrower will comply with all of the covenants, agreements, and requirements of the Note and the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that    the Borrower is obligated to make under the Security Instrument.

6.    Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Modification, the Note and the Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.

7.    Borrower releases Servicer, its subsidiaries, affiliates, agents, officers and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the origination and/or servicing of the Loan, and/or events which resulted in Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statutes or common law principal which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation (if applicable), California Civil code Sec. 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

8.    If one or more riders are executed by the Borrower and recorded together with this Modification, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Modification as if the rider(s) were a part of this Modification. [Check applicable box(es)]

        1-4 Family Rider - Assignment of Rents

        Modification due on transfer rider

[Space Below This Line for Acknowledgment in Accordance with Laws of Jurisdiction]

Witness

Signature_____

Print_____                    _____(Seal)

                                                          JAMES B LADD


Signature_____

Print_____                    _____(Seal)

Witness

Signature_____

Print_____                    _____(Seal)

                                                          ANN LADD

Signature_____                _____(Seal)

Print_____


MULTISTATE LOAN MODIFICATION- Single Family- Freddie Mac

*Modification Due on Transfer Rider*

### Modification Due on Transfer

THIS MODIFICATION DUE ON TRANSFER RIDER, effective the 2/24/2010, is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of the same date made by JAMES B LADD  ANN LADD  (the "Borrower") and GMAC Mortgage, LLC (the "Lender") covering the Property described in the Loan Modification Agreement located at:

5 BARROWS ST  MIDDLEBORO MA 02346

In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and Lender covenant and agree as follows:

A.  Notwithstanding any other covenant, agreement or provision of the Note and Security Instrument, as defined in the Loan Modification Agreement, the Borrower agrees as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**    If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Loan Modification Agreement.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

B.  Except as otherwise specifically provided in this Modification Due On Transfer Rider, the Loan Modification Agreement, the Note and Security Instrument will remain unchanged and in full effect.

Date _____          _____(Seal)
                              JAMES B LADD                      -Borrower

Date _____          _____(Seal)
                                                                -Borrower

Date _____          _____(Seal)
                              ANN LADD

Date _____          _____(Seal)


                              GMAC Mortgage, LLC

Date _____          By:_____