**POLSINELLI**
Daniel J. Flanigan, Esq.
900 Third Avenue, 21st Floor
New York, New York 10022
(212) 684-0199 (Telephone)
(212) 759-8290 (Facsimile)
*Bankruptcy Counsel for Class Claimants*

**CARLSON LYNCH LTD.**
R. Bruce Carlson, Esq.
115 Federal Street, Suite 210
Pittsburgh, Pennsylvania 15212
(412) 322-9243 (Telephone)
(412) 231-0246 (Facsimile)
*Co-Lead Counsel for Class Claimants*

**WALTERS, BENDER, STROHBEHN & VAUGHAN**
R. Frederick Walters, Esq.
2500 City Center Square
1100 Main
Kansas City, Missouri 64105
(816) 421-6620 (Telephone)
(816) 421-4747 (Facsimile)
*Co-Lead Counsel for Class Claimants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**THE KESSLER SETTLEMENT CLASS' REPLY IN FURTHER SUPPORT OF THE JOINT MOTION PURSUANT TO 11 U.S.C. § 105 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 7023 AND 9019 FOR AN ORDER, *INTER ALIA*, APPROVING THE SETTLEMENT AGREEMENT ON A FINAL BASIS AND <u>GRANTING RELATED RELIEF</u>**

## **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................... 2

II. PNC'S LIMITED OBJECTION HAS BEEN RESOLVED ............................................... 4

III. THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR AND EQUITABLE AND SHOULD BE APPROVED ....................................................... 4

    A. PNC Has No Standing to Object and Should Be Overruled ........................ 4

    B. The Lack of a Bar Order in the Settlement Obviates Any Need For a Judgment Credit Provision ........................................................................ 6

    C. PNC's Insistence Upon a Capped Proportionate Judgment Credit is Unsupported Under RICO, RESPA, TILA or HOEPA ............................... 7

IV. THE SINCLAIR OBJECTION SHOULD ALSO BE OVERRULED ............................... 9

V. CONCLUSION ........................................................................................................ 12


# TABLE OF AUTHORITIES

## Cases

*Ameriquest Mortg. Co. v. Northwest Title & Escrow Corp.*,
   589 F.Supp.2d 987 (N.D. Ill. 2008) ...................................................................................5

*Ames Assocs. v. ABS Partners Real Estate LLC*,
   2010 WL 89034 (S.D.N.Y. Mar. 3, 2010) ..........................................................................5

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
   2000 WL 1364272 (S.D.N.Y. Sept. 20, 2000) ....................................................................8

*Chubb & Son Inc. v. Kelleher*,
   2010 WL 5978913 (E.D.N.Y. Oct. 22, 2010) .....................................................................8

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2nd Cir. 2006) .............................................................................................6

*Gerber v. MTC Elec. Technologies Co., Ltd.*,
   329 F.3d 297 (2nd Cir. 2003) ..........................................................................................6,7

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2nd Cir. 2000) ................................................................................................9

*In re Masters Mates & Pilots Pension Plan & IRAP Litig.*,
   957 F.2d 1020 (2nd Cir. 1992) ............................................................................................6

*Morley v. Cohen*,
   888 F.2d 1006 (4th Cir. 1989) .............................................................................................8

*Singer v. Olympia Brewing Co.*,
   878 F.2d 596,(2nd Cir. 1989) ...........................................................................................7,8

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
   451 U.S. 630 (1981) ............................................................................................................5

## Federal Statutes

15 U.S.C. § 78u-4(f)(7)(B) ........................................................................................................8

15 U.S.C. § 1641(d)(3) ..............................................................................................................8

The Named Plaintiffs in the Kessler Settlement Class in the above captioned chapter 11 cases, by and through their counsel, hereby file this reply (the "**Kessler Reply**") (i) to *PNC Bank N.A.'s Supplemental Memorandum of Law in Further Support of its Limited Objection to the Named Plaintiffs' and Debtors' Joint Motion Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 7023 and 9019 for an Order Approving the Settlement Agreement on a Final Basis*, filed by PNC Bank, N.A. ("**PNC**") on October 23, 2013 [Dkt. No. 5451] (the "**Supplemental Memorandum**"), which supplements PNC's original limited objection, filed on August 14, 2013 [Dkt No. 4661] (the "**Limited Objection**"); (ii) to the *Objection to Class Settlement*, filed October 18, 2013 [Dkt. No. 5434] (the "**Sinclair Objection**") by Tammy Sinclair and Chad Sinclair (together, the "**Sinclairs**"); and (iii) in further support of the *Named Plaintiffs' and Debtors' Joint Motion Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 7023 and 9019 for an Order Approving the Settlement Agreement on a Final Basis*, filed July 31, 2013 [Dkt. No. 4451] (the "**Joint Motion**") on behalf of the debtors and debtors in possession (collectively "**Debtors**") and prospective class representatives Rowena Drennan, Flora Gaskin, Roger Turner, Christie Turner, John Picard and Rebecca Picard (collectively, the "**Named Plaintiffs**") on behalf of themselves and similarly situated class members (the "**Kessler Settlement Class**" and, together with the Settling Defendants, the "**Settling Parties**").

By the Joint Motion and this Reply, the Settling Parties seek final approval of the Settlement (as defined herein) by entry of the final approval order substantially in the form of the order attached as Exhibit A to the *Notice of Filing of Amended Proposed Final Approval Order*, filed October 15, 2013 [Dkt. No. 5360] (the "**Amended Proposed Final Approval Order**").[1]

---

[1] The Amended Proposed Final Approval Order has been revised to provide information not available when the Joint Motion and the Amended Proposed Final Approval Order [Dkt. No. 5360] was filed. The typographical error identified by PNC in its Supplemental Memorandum is no longer contained in the proposed order, as the paragraph referred to has since been removed. *See* Supp. Mem. at 7 n.4.

The Kessler Settlement Class adopts and incorporates by reference all the arguments and law cited by the Debtors as set forth in the *Reply in Further Support of the Joint Motion Pursuant to 11 U.S.C. § 105 and Federal Rules of Bankruptcy Procedure 7023 and 9019 For an Order, Inter Alia, Approving the Settlement Agreement on a Final Basis and Granting Related Relief* [Dkt. No. 5594] (the "**Debtors' Reply**"), and further respectfully represents as follows:

I.    PRELIMINARY STATEMENT

1.    PNC's Limited Objection is an attempt by PNC to unfairly prejudice the Kessler Settlement Class by having this Court prematurely impose a settlement credit methodology that is not within the proper scope of its ruling on the Amended Proposed Final Approval Order. PNC's original objection was based upon a bar order that was included in previous versions of the settlement agreement. Now that the bar order has been removed, PNC no longer has any grounds to object to the Amended Proposed Final Approval Order. Yet, inexplicably, PNC continues to insist upon the inclusion of a settlement credit provision in compensation for a settlement bar that no longer exists. PNC's request is an unnecessary and unjustifiable attempt to persuade this Court to render an advisory opinion that will detrimentally affect the rights of the Kessler Settlement Class. Respectfully, any determination of the correct methodology properly belongs with the trial court in the MDL Litigation if and when that court ever enters a judgment against PNC.

2.    Perhaps in recognition that it lacks any justifiable right to object, PNC has set forth a number of meritless and almost absurd arguments in an attempt to distract the Court from this central fact. Chief among these distractions is PNC's attempt to portray itself and its predecessor in interest Community Bank of Northern Virginia ("**Community Bank**") as nothing more than a minor participant in a scheme masterminded by RFC, and that the Kessler

2

Settlement Class has only recently "changed" their claims to focus upon PNC's role. *See* Sup. Mem. at 3-5. The simple fact is that Community Bank is and was always a central character in the MDL Litigation. Community Bank was named in the original complaint, and PNC cannot escape the fact that as the loan originator, Community Bank was the party responsible for the violations of the various federal lending laws under which the Kessler Settlement Class seek relief. And in any event, no matter what the overall scope of PNC's role was, small or large, (and it was undeniably key as the loan originator), it has absolutely no impact on the fact that PNC has no right to object to the Amended Proposed Final Approval Order.

3. As more fully set forth in the Debtors' Reply, the removal of the bar order and judgment credit language from the Amended Proposed Final Approval Order resolves the entirety of PNC's Limited Objection. PNC cannot now point to any prejudice that it will suffer as a result of the Amended Proposed Final Approval Order and therefore lacks standing to object. PNC's request for a specific judgment credit methodology is improper and unnecessary because PNC has conceded that it is not entitled to indemnification or contribution from the Debtors and no bar order will be issued. Moreover, even if the Court were to accept PNC's argument that a specific judgment credit needs to be included at this premature date (which it should not), PNC has still failed to show that its request for a capped proportionate judgment credit is the proper judgment credit methodology for the specific Kessler Settlement Class claims under RICO, RESPA, TILA and HOEPA. PNC's Limited Objection should be denied.

## II. PNC'S LIMITED OBJECTION HAS BEEN RESOLVED.

4. The Amended Proposed Final Approval Order now before this Court has no potential to affect the legal rights of PNC as a non-settling defendant. The Debtors' Reply sets forth the history of PNC's objections to the previous proposed orders and the attempts of the Settling Parties to resolve those objections. The ultimate result is that the Amended Proposed Final Approval Order does not now contain any bar to PNC's hypothetical right of contribution and/or indemnity against the Debtors and correspondingly does not contain any judgment credit provision. With the removal of the bar, there is nothing left in the Amended Proposed Final Approval Order that will affect the legal rights of PNC. The amount of any judgment credit for PNC, if any, will be properly addressed by the trial court charged with resolving the MDL litigation.

## III. THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR AND EQUITABLE AND SHOULD BE APPROVED.

### A. PNC Has No Standing to Object and Should Be Overruled.

5. Pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, Article III of the United States Constitution and federal common law, this Court is only required to consider fairness as to third parties whose rights are impacted by the settlement. As set forth in the Debtors' Reply and the authorities cited therein, PNC's argument that it will suffer some sort of formal legal prejudice is without merit. The Amended Proposed Final Approval Order contains no bar order and has no impact on the legal rights of PNC. PNC's argument that it is at "risk of bearing a disproportionate burden of any final damage award" is not a legally protected right. The Settlement is not required to address a non-settling defendant's interest in protecting itself from liability.

4

6. Furthermore, the Court should reject PNC's argument that the Courts disallowance of PNC's claim for contribution or indemnity [Dkt. No. 5041] is somehow tantamount to a settlement bar order. A bar order in a settlement agreement *takes away* the rights, or potential rights, that a non-settling defendant might otherwise have to seek contribution or indemnity from a settling defendant. PNC's argument fails because first and foremost, as PNC itself has recognized, PNC has no rights to contribution or indemnity to begin with. See Sup. Mem. at 12 ("as a practical matter, PNC does not have contribution or indemnity rights"). PNC is correct because "as a practical matter" PNC is almost certainly not allowed claims for contribution under the specific statutes the Kessler Settlement Class seek relief – RICO, RESPA, TILA or HOEPA. As a matter of federal law, a right of contribution may arise only through the affirmative creation of a right of action by Congress. *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981). None of the specific statutes under which the Kessler Settlement Class seeks relief grant any such right to contribution. *See, e.g., Ames Assocs. v. ABS Partners Real Estate LLC*, 2010 WL 89034 at *3 (S.D.N.Y. 2010) (no right to contribution under RICO); *Ameriquest Mortg. Co. v. Northwest Title & Escrow Corp.*, 589 F.Supp.2d 987, 993-95 (N.D. Ill. 2008) (no right to contribution under TILA). PNC's argument also fails because the Court's disallowance of PNC's claim for contribution or indemnity did not "take away" anything from PNC that otherwise existed. A bar order and the Court's ruling implementing a clear and nondiscretionary provision of the Bankruptcy Code are not the same.

7. The Court should similarly reject PNC's attempt to equate the Debtors' insolvency with an imposition of a settlement bar order. The Debtors' insolvency does not change the fact that the Settlement itself has no impact on the legal rights of PNC. PNC is in effect asking for special treatment due to a bankruptcy risk placed upon its hypothetical claims

5

for contribution. The Court should reject this improper request out of hand. The Kessler Settlement Class had and continues to have the same bankruptcy risk with regards to their *existing* claims against the Debtors, and PNC is in no worse position than the Kessler Settlement Class with regards to any diminished recovery due to the Debtors' insolvency. Accordingly, and for the further reasons set forth in the Debtors' Reply, PNC will suffer no prejudice from the Settlement or the Amended Proposed Final Approval Order and this Court should overrule PNC's Limited Objection for lack of standing.

**B.    The Lack of a Bar Order in the Settlement Obviates Any Need For a Judgment Credit Provision.**

8.    This Court is not required to identify which judgment credit methodology will be applied, if any, to a future judgment against PNC in the MDL Litigation. The entire purpose of specifying a judgment credit methodology in a settlement agreement is to compensate non-settling defendants for the prejudice of having their substantive right of contribution eliminated. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 275 (2nd Cir. 2006). Since there is no bar order in the Amended Proposed Final Approval Order, no right of contribution has been eliminated and therefore there is no real or imagined threat of prejudice for which PNC needs to be compensated. PNC has not cited a single case that requires a judgment credit provision in a settlement that did not also contain a bar order or other provision affecting the rights of the non-settling defendant. *See, e.g.*, *Gerber v. MTC Elec. Technologies Co., Ltd.*, 329 F.3d 297, 308 (2nd Cir. 2003) (discussing impact of a bar order on non-settling defendants); *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1024 & 1028 (2nd Cir. 1992) (addressing the appropriate judgment credit in the context of a settlement agreement containing a mutual bar order). Without a bar order, no judgment credit provision is necessary.[2]

---

[2] For these reasons the Court should also reject PNC's argument that a fairness determination is required. Since no

### C. PNC's Insistence Upon a Capped Proportionate Judgment Credit is Unsupported Under RICO, RESPA, TILA or HOEPA.

9. PNC has offered nothing to support its proposition that a capped proportionate judgment credit should be applied to the specific claims of the Kessler Settlement Class. The Kessler Settlement Class has brought claims against PNC for violations of the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), the Real Estate Settlement Procedures Act ("**RESPA**"), the Truth in Lending Act ("**TILA**") and the Home Ownership and Equity Protection Act ("**HOEPA**"). PNC does not address or cite any authority as to the correct methodology for judgment credits under these specific statutes. The one case cited by PNC in support of the capped proportionate judgment credit methodology, *Gerber v. MTC Electronic Technologies Co., Ltd.*, specifically noted that no party challenged the determination that the capped proportionate share formula should be used and "we do not hold that such a formula is required." 329 F.3d at 302-303. PNC's failure to even address the correct methodology for the specific Kessler Settlement Class claims under RICO, RESPA, TILA and HOEPA is yet another reason for this Court to reject PNC's request for a capped proportionate judgment credit.

10. PNC is also wrong to assume that the capped proportionate approach applies to claims under RICO, RESPA, TILA and HOEPA. Rather, the correct judgment credit methodology for claims under these four statutes is the "pro-tanto" or "dollar for dollar" formula. As set forth in *Singer v. Olympia Brewing Co.*, federal common law follows the "one satisfaction rule," where "a non-settling defendant is entitled to a credit *of the settlement amount* against any judgment obtained by the plaintiff against the non-settling defendant as long as both the settlement and judgment represent common damages." *Id.*, 878 F.2d 596, 600 (2nd Cir. 1989)

---

judgment credit provision is specified in the Amended Proposed Final Approval Order, there is correspondingly no need for this Court to render an advisory opinion on the fairness of whatever methodology the trial court in the MDL Litigation chooses, if any.

(emphasis added).  For RICO claims specifically other courts have rejected application of the capped proportionate share approach and held that a pro tanto formula applies.  *See, e.g. Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 2000 WL 1364272 at *2-3 (S.D.N.Y. 2000) ("[t]he Court . . . is unable to conclude that, in the Second Circuit, a RICO defendant is entitled to a judgment reduction by any method other than that set forth in *Singer*"); *Chubb & Son Inc. v. Kelleher*, 2010 WL 5978913 at *8 (E.D.N.Y. 2010) ("[i]n RICO cases . . . [t]he Second Circuit has applied a 'one satisfaction rule' rather than a 'proportionate responsibility rule'"); *Morley v. Cohen*, 888 F.2d 1006, 1012-13 (4th Cir. 1989) (applying pro tanto settlement offset to non-settling defendant's RICO judgment).

11.    PNC's request for a capped proportionate share formula is similarly unsupported for claims under RESPA, TILA or HOEPA.  PNC's insistence upon the capped proportionate share method presumes that a determination of proportionate fault can and will be made under those statutes.  PNC is mistaken, as nothing in those Acts provide for or allow a determination of proportional fault.  While it is true that other federal laws specifically provide for a capped proportionate approach given the possibility of proportional fault under those laws, see for example 15 U.S.C. § 78u-4(f)(7)(B) of the Private Securities Litigation Reform Act ("**PSLRA**"), no such provisions exist in either RICO, RESPA, TILA or HOEPA.[3]  In any event the uncertainty as to the proper approach under RESPA, TILA and HOEPA only further supports the propriety of addressing the judgment credit methodology in the MDL Litigation after any judgment is ultimately entered against PNC.

---

[3]  Under certain situations HOEPA actually provides for a dollar for dollar judgment credit to loan assignees found liable pursuant to the assignee liability provisions of HOEPA for other causes of action.  *See* 15 U.S.C. § 1641(d)(3).  No mention is made in either TILA or HOEPA as to proportionate liability as between an originating lender and subsequent assignees.

8

12. For all of the foregoing reasons along with the additional arguments and authority set forth in the Debtors' Reply, the Court should reject PNC's Limited Objection and hold that the Settlement and Amended Proposed Final Approval Order is fair and reasonable.

### IV. THE SINCLAIR OBJECTION SHOULD ALSO BE OVERRULED.

13. The Court should further hold that the Sinclair Objection is without merit and be overruled.[4] First, as Class Counsel explains in their *Application for Award of Attorneys' Fees*, the Sinclair Objection's assertion that the Settlement will result in an excessive award of attorneys' fees is baseless and demonstrates unfamiliarity with Second Circuit law, the terms of the Settlement and the actual fee amount sought. *See* Sinclair Objection [Dkt No. 5434] at 2. The Sinclair Objection's assertion that the 35% fee is "prohibitively high" because the "benchmark created by the Ninth Circuit is at most 25%" ignores the fact that the Second Circuit has rejected any notion that there is a "benchmark" or standard fee percentage that courts should use in common fund cases. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 51-52 (2nd Cir. 2000).

14. The Sinclair Objection is also just plain wrong in its assertion that "class counsel and defense counsel have agreed to a $300 million dollar settlement fund and that the Defendant will pay up to $1.5 million dollars in expenses and/or costs to class counsel as well as an additional 35% of the Kessler Net Recovery meaning class counsel will get up to $79.1 million dollars in fees alone." *See* Sinclair Objection at 2. Most fundamentally, this statement is inaccurate in that there is no "$300 million dollar settlement fund" nor does Class Counsel seek "$79.1 million" in attorney's fees. The Settlement only provides for a $300 million Allowed Claim and the Kessler Gross Recovery will be about 9% of that amount because of the RFC distribution percentage. The requested 35% attorneys' fees will be taken from the Kessler Net

---

[4] The Sinclair Objection was filed twice in the Court's file as Docket Nos. 5434 and 5592.

Recovery which is the Kessler Gross Recovery after deduction of the requested awards for incentive fees and litigation expenses, and not the $300 million Allowed Claim. The source of "$79.1 million" attorneys' fee figure is entirely unclear. For these reasons, and for the reasons set forth in the *Memorandum of Law in Support of Class Counsels' Motion and Application for Award of Attorneys' Fees and Litigation Costs and Expenses*, the Sinclair Objection to the requested award of attorneys' fees should be rejected.

15. Second, the Settlement's release provision (the "**Release**") is not "overly broad," and does not extend to all "unknown claims" as described by the Sinclairs. *See* Sinclair Objection at 2. This is an incorrect reading of the Agreement. The Sinclairs are not quoting from the portion of the Agreement that defines the scope of the releases. Section 8(a) of the Agreement provides the releases and states in pertinent part that:

> ***Releasors,*** by operation of this Release and the judgment set forth in the Final Order, shall be deemed without further action by any person or the Court (i) to ***have fully, finally and forever released, settled, compromised, relinquished, and discharged any and all of the Released Persons of and from any and all Released Claims*** …(Emphasis added.)

16. Section 2.1 of the Agreement in turn defines "**Released Claims**" such that those claims are limited to claims that arise out of the specific loans at issue in this case:

> ***"Released Claims" means any and all claims*** (including the Proofs of Claim), demands, actions, causes of action, rights, offsets, setoffs, suits, damages, lawsuits, liens, costs, surcharges, losses, attorneys' fees, expenses or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary, injunctive or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential or punitive damages, as well as any and all claims for treble damages, penalties, attorneys' fees, costs or expenses, whether known or unknown, alleged or not alleged in the Litigation, the Proofs of Claim or in any proofs of claim filed by a Kessler Class Member in the Bankruptcy Cases, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, ***that arise out of the CBNV/GNBT Loans*, including any claims against the Released Persons arising out of the handling, preservation, impairment, or otherwise related to any insurance coverage or other Insurance Rights under the Policies or**

10

**contractual indemnification related to the CBNV/GNBT Loans, and** that any of the Releasors have had, or now have, from the beginning of time up through and including the Effective Date against the Released Persons ("**Claims**"), including: (1) allegations that were or could have been asserted against the Released Persons in the Litigation in any way relating to a CBNV/GNBT Loan; and (2) any activities of the Released Persons with respect to a CBNV/GNBT Loan, including any alleged representations, misrepresentations, disclosures, incorrect disclosures, failures to disclose, acts (legal or illegal), omissions, failures to act, deceptions, acts of unconscionability, unfair business practices, breaches of contract, usury, unfulfilled promises, breaches of warranty or fiduciary duty, conspiracy, excessive fees collected, or violations of any consumer protection statute, any state unfair trade practice statute, or any other body of case, statutory or common law or regulation, federal or state, including TILA, HOEPA, RESPA, RICO (and, respectively, in each case, their implementing regulations). *It is the intention of the Releasors to provide a general release of the Released Claims* against the Released Persons; provided, however, that anything in this Agreement to the contrary notwithstanding, the term Released Claims does not include: (A) the claims of the Kessler Class Claimants, whether or not currently asserted in the Litigation, against (1) PNC Bank as successor to Community Bank of Northern Virginia or the FDIC as receiver of Guaranty National Bank of Tallahassee, (2) the insurers that issued the Policies listed in **Exhibit E**, or (3) any other person, association or entity other than the Released Persons in connection with the CBNV/GNBT Loans; or (B) any and all claims for indemnification or contribution that RFC might otherwise have against PNC Bank as successor to Community Bank of Northern Virginia or the FDIC as receiver of Guaranty National Bank of Tallahassee. (Emphasis added.)

17. Thus, the Agreement merely provides a standard general release for claims that arise specifically out of the Sinclairs' CBNV/GNBT Loan and does not purport to release any other claims, known or unknown. The Sinclairs are quoting from Section 8(c) of the Settlement Agreement, which is not a statement of the release being given, but merely a recitation in support of the standard inclusion of those inherently limited future claims that could in theory exist in connection with the specific settlement class loan. Here, where that loan was entered into over 10 years ago, the issue of such unknown future claims arising from that loan is assuredly moot, and a standard general release is assuredly fair so that the Debtors get the peace they have bargained for. Finally, the Settling Parties have, by their Joint Motion, sustained their burden as to proof on commonality, predominance, superiority and adequacy of class counsel and class

11

representatives under Federal Rule of Civil Procedure 23.  *See* Joint Motion ¶¶ 50-67.  The Sinclair Objection does not offer any support for its assertion that the Class Counsel has failed to meet their burden under Federal Rule of Civil Procedure 23, and it should be overruled.

## V. CONCLUSION

For all the foregoing reasons, the Kessler Settlement Class respectfully requests entry of the Amended Proposed Final Approval Order granting, *inter alia*, final approval for the Settlement, and such other and further relief as the Court may deem proper.


Dated:  November 4, 2013

*/s/  Daniel J. Flanigan*
**POLSINELLI**
Daniel J. Flanigan, Esq.
900 Third Avenue, 21st Floor
New York, New York 10022
(212) 684-0199 (Telephone)
(212) 759-8290 (Facsimile)
*Bankruptcy Counsel for*
*Class Claimants*

*/s/  R. Frederick Walters*
**WALTERS, BENDER,**
**STROHBEHN & VAUGHAN**
R. Frederick Walters, Esq.
2500 City Center Square
1100 Main
Kansas City, Missouri  64105
(816) 421-6620 (Telephone)
(816) 421-4747 (Facsimile)
*Co-Lead Counsel for Class Claimants*

*/s/  R. Bruce Carlson*
**CARLSON LYNCH LTD.**
R. Bruce Carlson, Esq. *(Pro Hac Pending)*
115 Federal Street, Suite 210
Pittsburgh, Pennsylvania 15212
(412) 322-9243 (Telephone)
(412) 231-0246 (Facsimile)
*Co-Lead Counsel for Class Claimants*