Exhibit 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No.: 12-12020 (MG) |
| Debtors. | Jointly Administered |

**DECLARATION OF R. FREDERICK WALTERS**
**IN SUPPORT OF CLASS COUNSEL'S APPLICATION FOR AWARD OF**
**ATTORNEYS' FEES AND LITIGATION COSTS AND EXPENSES**

R. Frederick Walters, pursuant to 28 U.S.C. §1746, hereby declares as follows in support of the "**Joint Motion**" referenced in the above caption:

1.      I am a shareholder in the firm of Walters, Bender, Strohbehn & Vaughan, P.C. ("**Walters Bender**"). I am 66 years of age and am one of the attorneys representing the Plaintiffs and Class in this lawsuit. I am a member in good standing of the Missouri Bar.  I am admitted to practice in the following courts:

| Court | Date of Admission to Bar | |
|---|---|---|
| State of Missouri | September 22, 1973 | 25069 |
| United States District Court: Western District of Missouri | September 29, 1973 | |
| United States District Court: District for Kansas | December 18, 2001 | 70561 |
| 8th Circuit | October 8, 1979 | |
| 10th Circuit | July 15, 1983 | |
| 7th Circuit | September 20, 1994 | |
| U. S. Court of Appeals, D. C. Circuit | July 27, 1993 | |
| 3rd Circuit | December 18, 2003 | |

1

2.      I have been engaged in a litigation practice since my admission to the bar.  In the ensuing 40 plus years, I have been involved in numerous commercial litigation matters in state, federal and other forums including those that involve consumer protection laws. I have considerable experience in class actions and multi district litigation matters. I or other shareholders of WBSV are currently and actively involved, or have in the recent past been involved as lead class counsel, co-lead counsel, liaison counsel or Plaintiffs' counsel in numerous other class or putative class actions, multidistrict proceedings, and other complex litigation matters.  I have and continue to be actively involved in the actual trial of matters to juries in state and federal courts and to other fact finding bodies in other forums.

3.      I have personal knowledge of the matters set forth in this Declaration.

4.      I have been actively involved in this litigation since its inception as counsel for Plaintiffs, counsel for Objectors, Co-Lead Interim Class Counsel, Co-Lead Class Counsel for the Plaintiff class and Co-Lead Counsel for the Class Claimants.  Walters Bender and myself in particular have been actively involved in litigation against GMAC-Residential Funding Corp., n/k/a Residential Funding Company, LLC ("RFC") one of the debtor entities in various matters since 2001 and since 2003 with respect to the particular claims against Debtor RFC that are being resolved in connection with the settlement before the Court.

5.      I am submitting this Declaration in Support of Class Counsel's Motion and Application for Award of Attorneys' Fees, Litigation Expenses, and Court Costs ("**Application**").  I will refer below generally to "**Class Counsel**" to include the work by all attorneys who performed work on behalf of the Kessler Settlement Class.  I will also refer to the "Walters, Bender" law firm below where appropriate.

6.      This Declaration (the "**Declaration**") is a Supplement to the following Declarations: (a) the November 2, 2012 Declaration of R. Frederick Walters, David M. Skeens and R. Bruce Carlson in Support of Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims (Doc. 2047); (b) the February 8, 2013 Declaration of Roy Frederick Walters, which filed in connection with the Reply to Debtors' Objection to Class Certification Motion and Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims (Doc. Nos. 2874 and 2877) and (c) the July 31, 2013 Declaration of R. Frederick Walters in Support of the Joint Motion Pursuant To 11 U.S.C. § 105 and Fed. R. Bankr. P. 7023 and 9019 for an Order (1) Granting Class Certification for Purposes of Settlement Only, (2) Appointing Class Representative and Class Counsel for Purposes of Settlement Only, (3) Preliminarily Approving the Settlement Agreement Between Plaintiffs, On Their Own Behalf and on Behalf of the Class of Similarly Situated Persons, and the Debtors, (4) Approving the Form and Manner of Notice to the Class, (5) Scheduling a Fairness Hearing To Consider Approval of the Settlement Agreement on a Final Basis and Related Relief and (6) Approving the Settlement Agreement on a Final Basis and Granting Related Relief. (Doc. No. 4451-2).

7.      The first Declaration in Support of Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims describes the long history of the multidistrict proceeding styled *In Re: Community Bank of Northern Virginia Second Mortgage Lending Practice Litigation*, MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688, 05-1386 (the "**MDL Litigation**")[1] which litigation involved as a defendant one of the debtor entities, Residential Funding Company, LLC ("**RFC**"), and the effort to assert and seek certification of those class action claims in the

---

[1] Capitalized terms not defined herein shall have the definition set forth in the **Agreement** that is attached to the Joint Motion as Exhibit 5.

Bankruptcy Cases against certain Debtors including Residential Capital, LLC, RFC and GMAC

Residential Holding Company, LLC.

8.     The second Declaration was made in connection with the Motion to *Apply*

*Bankruptcy Rule 7023* and the related requirements of Rule 23(a)(4) and 23(g), which speak to

the adequacy of representation and the appointment of class counsel.  This Declaration identifies

the work Walters, Bender and the other Counsel has done in identifying or investigating potential

claims in the action, our experience in handling class actions, other complex litigation, and the

types of claims asserted in the action; our knowledge of the applicable law; and the resources

that we pledged to commit to representing the class.  With respect to the standing of Walters,

Bender, a firm biography and the biographies of individual lawyers at the firm is attached as

Exhibit 1 to my second Declaration. (Doc. No. 2877-1).  This Firm Biography identifies a

number of the class action cases involving the undersigned counsel and the members of this firm,

and provides information concerning the attorneys at this firm including individual peer review

ratings by Martindale Hubbell and brief biographies for each of the principal counsel who work

on this matter.  Each of the Firm's shareholders working on this matter is an experienced, AV-

rated attorney.

9.     The third Declaration in support of the preliminary approval of the settlement

addresses matters relative to the fairness of the Settlement, including the calculations of the

Individual Damages of the Kessler Settlement Class Members, the selection of **Allocation**

**Counse**l and the **Allocation Adjustments** that are based on certain Class Members' reliance on

principles of equitable tolling.  I refer to these Declarations below.

I.      SUMMARY AND OVERVIEW OF APPLICATION

10.      After considering all the factors and reasons discussed hereafter and in the Application, I believe an attorneys' fee award in the amount of 35% of the **Kessler Net Recovery** as that term is defined in Section 2.14 of the Agreement  is a fair and reasonable attorney fee award in this matter and is within the range of percentages for a case with a high risk profile, such as this case and that exhibits the other facts referenced in the Application and this Declaration.

11.      As set forth in the Amended Kessler Settlement Agreement, (the "**Agreement**") the claims asserted by the Kessler Settlement Class are being reduced and allowed as a non-subordinated general unsecured claim against RFC (the "**Allowed Claim**") in the amount of $300 million. Payments pursuant to the allowed claim will be made through a **Borrower Claims Trust** that is to be established pursuant to the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors and funded in cash with no less than $57.6 million and subject to the Borrower Claims Trust True-up. The Kessler Settlement Class will receive distributions (the "**Kessler Gross Recovery**") from the **Borrower Claims Trust** in accordance with the terms of the Plan and the Settlement.  The attorneys' fee awarded and other costs as defined in the Agreement at Section 2.15 will be deducted from the Kessler Net Recovery to determine the net amount to be distributed to the Kessler Settlement Class (the "**Kessler Net Recovery Distribution**").

12.      At this time, the specific dollar amount of the Kessler Gross Recovery is unknown because the borrower claims against the RFC debtor and GMACM debtor are not yet all reduced to allowed claims so the proportion that will be distributed to the Kessler Settlement Class as the Kessler Gross Recovery from the initial $57.6 million funding of the Borrower Claims Trust

cannot be known with exactitude.   Further there are additional possible deductions for funding

the administrative reserve for trust operations that may reduce the initial 57.6 million funding

and thereby potentially reduce the Kessler Gross Recovery.

13.    It is estimated, however, that the Kessler Gross Recovery will be 9% of the $300

million Allowed Claim or $27 million because that is the percentage distribution referenced in

the Plan and the Borrower Claims Trust. Given an estimated minimum $27 million Kessler

Gross Recovery, Class Counsel estimates that the proposed fee award will be $9,172,709.21 if

the requested incentive and expense awards of $72,500.00 and $719,759.41, respectively are

awarded. The fee award will increase by $350,000 (.35 x $1million) for every million dollars that

the Kessler Gross Recovery exceeds the estimated $27 million minimum.

14.    Further, the Settling Defendants have agreed to assign their **Insurance Rights** to

with respect to the **Policies** that provide coverage for the conduct at issue in the multidistrict

litigation and which is the subject of the Kessler Settlement Class Claims.   In the event the

Kessler Settlement Class claimants collect on any of the Insurance Rights, under the Settlement

Agreement, they are obligated to reimburse the Borrower Claims Trust a proportion of the

previous Borrower Claims Trust distributions received by the Kessler Settlement Class claimants

(the "Give Back").[2] *See* Settlement Agreement at § 5. This Application does not include within

its scope any request for attorneys' fees related to any recovery with respect to the Insurance

---

[2] Under the Give Back the Kessler Settlement Class shall return a proportionate amount (such
proportionate amount determined by dividing the recovery amount under the Insurance Rights by
the Allowed Claim) of any prior distributions from the Borrower Claims Trust Assets made on
account of any recoveries of the Kessler Settlement Class from the Borrower Claims Trust.  *See*
Kessler Settlement Agreement at § 5.e.; Plan at § IV.F.6.  Any such Give Back will be added to
the Borrower Claims Trust and made available to any borrowers including the Kessler
Settlement Class who have allowed claims against RFC in proportion to their allowed claim as
compared to all borrowers allowed claims against RFC. Therefore, pursuant to this formula, the
same proportionate 35% attorney fee will apply to any Give Back.

Rights. In the event of any such recovery, Class Counsel will need to separately petition the appropriate Court having jurisdiction over any such settlement or recovery for an award of attorneys' fees, litigation expenses and court costs.

15.    The litigation expenses and/or court costs incurred by Walters Bender in the amount of $340,170.39 were necessary to the proper prosecution of this matter on behalf of and for the benefit of the Kessler Settlement Class and should be approved as fair and reasonable.

16.    The Costs and Expense Summary attached as **Exhibit 10** to the Application sets forth a summary of the costs and expenses for  counsel who represented borrowers during the period of time the various cases were being prosecuted for which re-imbursement is requested in this Settlement.   Each firm has submitted a declaration with respect to the amount and reasonableness of the costs and expenses for which re-imbursement is sought.  *See* **Exhibits 1-8** attached to the Application.  The total for all costs and expenses is $719,759.41. Based on those declarations the Court should approve as fair and reasonable the $719,759.41 in total litigation costs and expenses.  Those litigation expenses should be awarded in the requested amount in addition to the attorneys' fee as requested in the Application.

17.    The Court should also award a total of $72,500.00 in Incentive Awards to the Named Plaintiffs and MDL Litigation Class representatives in the total amount of $72,500.00 because of the service provided by them to the Settlement Class.  Those amounts are reasonable and warranted in the circumstances of this case.

18.    The Court should also award to Allocation Counsel, Richard A. Ralston, the sum of $20,100.00 and to Allocation Mediator, Charles Atwell the sum of $5,946.37 for services rendered during the allocation process and direct that those sums be paid by Class Counsel from the award of attorneys' fees.  Those sums are reasonable and payment is warranted.

19.     The Court entered its Order Pursuant To 7023 and 9019 of the Federal Rules of Bankruptcy procedure (1) Preliminarily Approving the Settlement Agreement Between Named Plaintiffs, Individually, and as Representatives of the Kessler Settlement Class, and the Settling Defendants; (2) Granting Class Certification for Purposes of Settlement Only; (3) Approving the Form and Manner of Notice to Kessler Settlement Class Members of the Settlement Agreement, (4) Scheduling a Fairness Hearing To Consider Final Approval of the Settlement Agreement and (5) Granting Related Relief  ("Preliminary Approval Order") on August 23, 2013. *See* Docket No. 4808. The Preliminary Approval Order set November 19, 2013 as the date for the Final Fairness Hearing.

20.     The Notice of Class Action Settlement, which described the history of the litigation and the essential terms of the settlement, were mailed to members of the Settlement Class beginning on September 3, 2013. *See* Kessler Class Counsel Certificate Of Mailing of Class Mail Notice [Doc 5591]

21.     The opt-out and objection deadline contained in the notice was October 18, 2013. As of the date of this Declaration, there was one set of objections filed by the borrowers as to one Class loan (the "Sinclair Objection")(Doc. No. 5434).

22.     Five borrowers as to three Kessler Settlement Class loans sought to opt out of the Settlement Class.  *See* Doc. No. 5516.

## II.    THE PROCEDURAL HISTORY OF THE KESSLER MATTER AND PLAINTIFFS' CLAIMS AGAINST RFC

23.     The Plaintiffs have litigated their claims against RFC for more than ten years prior to the ResCap bankruptcy filing.  The Kessler Settlement with RFC, therefore, is not simply the result of efforts from May 14, 2012 (the "**Petition Date**") forward but is the culmination of twelve years of complex litigation against RFC and two bank defendants, Community Bank of

Northern Virginia ("**CBNV**") and Guaranty National Bank of Tallahassee ("**GNBT**"). Plaintiffs submit that while the efforts of Class Counsel before this Court alone during the bankruptcy proceeding entirely support the fee request, the propriety of such a request is particularly appropriate when the entire litigation effort against RFC is considered.

24.    When ResCap took itself and a host of related companies, including RFC, into bankruptcy in May 2012, the now partially settled Kessler matter consisted of four putative class actions against RFC and others that were pending in the United States District Court for the Western District of Pennsylvania as part of a multidistrict proceeding styled *In re Community Bank of Northern Virginia Second Mortgage Lending Practice Litigation*, MDL No. 1674, Case Nos. 03-0425, 02-1201, 05-0688, 05-1386 (the "MDL Class Action").

25.    The MDL proceeding originally began as six separate actions filed by Co-Lead Counsel Bruce Carlson (now of Carlson Lynch) and others in Pennsylvania courts (the "Pittsburgh Litigation"). The first such action, known as *Davis v. Community Bank of Northern Virginia, et al.*, was filed on May 1, 2001. The *Davis* plaintiffs asserted class claims for, among other things, a violation of the fee split and disclosure provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b). A number of other cases filed by Mr. Carlson and others followed against CBNV and/or GNBT, all of which focused on the RESPA fee split and kickback claims. Through removal or direct filings in federal court, all these Pennsylvania cases were pending in the U.S. District Court for the Western District of Pennsylvania

26.    The actions of the Banks and RFC were also the focus of other lawsuits and investigations elsewhere. In Missouri, Co-Lead Counsel Fred Walters and Walters Bender Strohbehn & Vaughan, P.C. ("Walters Bender") filed a Missouri class action against CBNV and RFC in June 2001 alleging claims for violations of Missouri's Second Mortgage Loans Act

("MSMLA").[3] On April 3, 2003, Walters Bender filed a putative class action in Missouri state court against GNBT for violations of the MSMLA.  While the two Missouri cases were not successful (Defendants obtained dismissals based on certain preemption arguments), Walters Bender and others were aggressively challenging the mortgage lending practices of these banks and RFC's liability as an assignee.

27.    In July 2003, the Banks and RFC agreed to settle the Pittsburgh Litigation (the "First Settlement"). The First Settlement contemplated a common fund in the approximate amount of $33 million.  The First Settlement was preliminarily approved on July 1, 2003.

28.    On October 1, 2003, a number of class members represented by Walters Bender filed objections to the settlement and also moved to intervene as proposed class representatives. The primary concern of the objectors was that the settlement released claims under the Truth in Lending Act ("**TILA**") and the Home Ownership and Equity protection Act ("**HOEPA**")(15 U.S.C. § 1602 and Regulation Z at 12 C.F.R. § 226.2) without adequate compensation. On December 4, 2003, the district court approved the class action settlement.

29.    The Objectors appealed the approval of the settlement to the Third Circuit.  As a result of the considerable efforts on both sides of the appeal, on August 11, 2005, the Third Circuit issued a lengthy precedential opinion vacating the settlement and remanding the case to the district court. *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3rd Cir.

---

[3] The damages available under the Missouri Second Mortgage Loan Act are substantial and duplicate or in some cases exceed those available under Federal consumer protection laws.  During our investigation of the claims against CBNV, GNBT and RFC, we did also research possible causes of action to be asserted against the Debtor and these two banks under federal law, in a national class action, resulting from this same predatory lending scheme.  Our research focused on claims under the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, et seq. ("RESPA"), the Truth in Lending Act and the Home Ownership and Equity Protection Act, 15 U.S.C. §§1601, et seq. ("TILA" and "HOEPA"), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, et seq. ("RICO").  And, because of our pursuit of these and other like cases, we also became familiar with other counsel around the country pursuing claims relating to predatory second mortgage loans, including Bruce Carlson and the claims he and others were bringing, as counsel for a putative class, against CBNV, GNBT and RFC.

2005)("CBNV I"). Notably, while the settlement was vacated, the Third Circuit generally

endorsed the class treatment of the RESPA and TILA/HOEPA claims upon remand.

30. In 2004, while the appeals of the district court's settlement approval and attendant

rulings were pending, Walters, Bender filed an action captioned as *Hobson, et al. v. Irwin Union*

*Bank and Trust, Co., et al.* in the Northern District of Alabama. In the *Hobson* action, Plaintiffs

engaged in a substantial amount of discovery.

31. On May 5, 2005, the JPMDL transferred the *Hobson* action to the MDL in

Pittsburgh. The multidistrict proceeding consisted of the following actions:

a. *Hobson v. Irwin Union Bank & Trust Co*., Case No. 7:04-2351, United States District Court for the Northern District of Alabama ("Hobson");

b. *Chatfield v. Community Bank of Northern Virginia*, Case No. 1:04-2235, United States District Court for the District of Maryland ("Chatfield");

c. *Ransom v. Community Bank of Northern Virginia,* Case No. 1:04-2236, United States District Court for the District of Maryland ("Ransom");

d. *Davis v. Community Bank of Northern Virginia*, Case No. 2:02-1202, United States District Court for the Western District of Pennsylvania ("Davis");

e. *Drennen v. Community Bank of Northern Virginia*, Case No. 05-0665-CV-WGAF, United States District Court for the Northern District of Illinois ("Drennen");

f. *Kessler v. GMAC-Residential Funding Corporation*, Case No. 03-0425, United States District Court for the Western District of Pennsylvania ("Kessler");

g. *Sabo v. Community Bank of Northern Virginia, et al*., Case No., 02-1563, United States District Court for the Western District of Pennsylvania ("Sabo");

h. *Ulrich v. Guaranty National Bank of Tallahassee, et al.,* Case No. 02-1616, United States District Court for the Western District of Pennsylvania ("Ulrich");

i. *Mathis v. Guaranty National Bank of Tallahassee, et al.,* Case No. 02-1999, United States District Court for the Western District of Pennsylvania ("Mathis"); and

j.      *Picard v. Community Bank of Northern Virginia, et al.*, Case No. 02-2000, United
States District Court for the Western District of Pennsylvania ("Picard").

32.      After the Third Circuit's opinion in *In re CBNV I* became final, the *Hobson*
Plaintiffs filed in the Western District of Pennsylvania, a Motion for Class Certification, as well
as a Motion for Appointment of Interim Lead Class Counsel and a Proposed Second Amended
Class Action Complaint.  Following the 2005 remand, the parties actively litigated the case to
determine the "viability" of the TILA/HOEPA claims championed by the Objectors.  This
included extensive work with expert witnesses to establish the factual predicates for the
TILA/HOEPA claims, which efforts remained relevant to the ongoing prosecution of and now
settlement of the Kessler Settlement Class claims. Notably, as part of the "Viability" analysis in
connection with the TILA and HOEPA claims, the Objectors retained a number of experts to
review factual information and opine about the existence of TILA and HOEPA violations.  One
such expert was Margo Saunders an attorney with the National Consumer Law Center and an
expert on predatory lending and federal lending laws, including TILA and HOEPA.  Other
experts we retained included Hasbrouck Haynes, Jr., CPA, William H. Dodson, a Georgia
attorney specializing in real estate transactions and real estate title work and Missouri attorney
John T. Coghlan, a title insurance specialist; these experts reviewed hundreds of loan files. Such
work by these experts confirmed the existence of TILA/HOEPA violations common to and
arising from the same uniform actions as evidenced by these expert's review of hundreds of
loans as a representative samplings of the loans of the putative class.

33.      We also served multiple interrogatories and requests for production on
Community Bank of Northern Virginia; RFC; and Irwin Union Bank and Trust Company,
Obtained and reviewed tens of thousands of pages of RFC's business records, served a *subpoena*

*duces tecum* on the Federal Deposit Insurance Corporation, as receiver for GNBT and obtained thousands of pages of records related to this predatory lending scheme.

34.    In July 2006, plaintiffs represented by Carlson Lynch filed a motion for preliminary approval of a second settlement that provided additional compensation to the Kessler Settlement Class members for the TILA/HOEPA claims (the "Second Settlement"). The Second Settlement contemplated a common fund of approximately $47 million.   The district court granted preliminary approval of the Second Settlement on January 25, 2008.

35.    Borrowers represented by Walters Bender objected to the Second Settlement, asserting that the additional compensation for the TILA/HOEPA claims remained inadequate. The district court granted final approval of the Second Settlement on August 14, 2008.   On behalf of objecting class members, Walters Bender led a second appeal of the district court's approval of the settlement to the Third Circuit.

36.    On October 20, 2010, the Third Circuit issued a second lengthy opinion, again vacating the district court's order certifying the class and granting final approval of the Modified Settlement. *See In re Community Bank of Northern Virginia, et al.,* 622 F.3d 275 (3d Cir. 2010)("CBNV II").   Again, despite the remand, the Third Circuit endorsed the class treatment of the asserted claims.

37.    Following remand in early 2011, counsel for the previously settling plaintiffs (led by Carlson Lynch) and counsel for the objectors (led by Walters Bender) had extensive conversations before ultimately concluding that the best interests of the class dictated that all plaintiffs, and all counsel for plaintiffs, collaborate so that all of the interests of the putative class members were fully aligned and there could be no credible claim that the interests of the class were not being adequately represented. When notified of this alliance, counsel for RFC and the

Banks exercised their rights under the abandoned settlement agreement to compel additional mediation. That mediation was not successful.

38.    After the failed mediation, the district court appointed Bruce Carlson and Carlson Lynch and Fred Walters and Walters Bender as interim class counsel in the multidistrict litigation. Plaintiffs then filed a Joint Consolidated Amended Complaint on October 4, 2011, and their First Amended RICO Case Statement on October 18, 2011.[4] RFC and the Bank Defendants filed motions to dismiss all of Plaintiffs' claims. Those expansive motions were being briefed at the time of RFC's bankruptcy on May 14, 2012.

39.    Upon notice of ResCap's bankruptcy filing, Class Counsel traveled to New York and participated in the first day's proceedings including seeking and obtaining appointment to the Unsecured Creditors Committee ("**Creditors' Committee**"). Class Counsel also retained Dan Flanigan and Polsinelli Shughart as bankruptcy counsel to assist with the representation of the Kessler Settlement Class against the Settling Defendants before this Court. Since being appointed to the Creditors' Committee, Class Counsel have been active participants in the bankruptcy proceedings on behalf of the Kessler Settlement Class. In addition to attending all Creditors' Committee meetings (either in person or telephonically) and related proceedings,

40.    In addition, between November 2 and November 16, 2012, Named Plaintiffs filed class proofs of claim against RFC, ResCap, GMAC-RFC Holdings Company, LLC and GMACM (collectively, the "**Class Proofs of Claim**").

---

[4] At the time of RFC's bankruptcy, the Plaintiffs in the multidistrict proceeding were asserting putative class action claims for: (1) Violations of RESPA for kickbacks, unearned fees and impermissible business relationships; (2) Violations of the TILA and HOEPA for inaccurate and understated material disclosures; (3) Violations of other disclosure and substantive requirements of TILA and HOEPA; and (4) Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") for racketeering activities used to perpetuate and further a predatory lending scheme.

41.    On January 16, 2013 Class Counsel filed the Motion to Apply Bankruptcy Rule 7023 and Certify Claims [Doc 2044].

42.    Beginning in April 2013, the Debtors, the Named Plaintiffs' counsel, and representatives of the vast majority of the Debtors' significant creditors participated in mandatory Plan mediation sessions ordered by this Court [Doc Nos. 2519, 3101 and 3877]. The mediation sessions ultimately resulted in a proposed global resolution dated May 14, 2013, in the form of a Plan Support Agreement ("**PSA**") by and among the Debtors, the Creditors' Committee, the Consenting Claimants and Ally Financial Inc. ("**Ally**"). The Kessler Settlement Class is among the Consenting Claimants and Class Counsel participated directly in the many mediation sessions and related meetings held in New York City and telephonically that ultimately resulted in the PSA.  However, the Kessler claims were not settled as part of these original mediation sessions.

43.    The PSA was not conditioned upon the Kessler Settlement Class and the Settling Defendants achieving a settlement or the successful execution of a settlement agreement. Indeed, had the Settlement not been reached, the Kessler Settlement Class had the right to withdraw from the PSA. However, as contemplated by the PSA, the Parties continued their settlement discussions and engaged in extensive formal negotiations. These efforts included an all-day session held on June 18, 2013, at which representatives of the Parties and the Creditors' Committee participated. These efforts resulted in an agreement in principle as to the primary components of the settlement.

44.    Over the next few weeks, counsel to the Parties and the Creditors' Committee participated in extensive negotiations and drafting sessions that culminated in the Agreement. This effort also required the engagement of separate Allocation Counsel to negotiate via

mediation allocation amounts to those Kessler Settlement Class Members that rely upon equitable tolling for their RESPA and TILA/HOEPA claims and those that do not.

45.      On August 23, 2013, this Court entered its Order Pursuant to Rule 7023 and 9019 of the Federal Rules of Bankruptcy Procedure (1) Preliminarily Approving Settlement Agreement Between Named Plaintiffs, Individually And As Representatives Of The Kessler Settlement Class, And The Settling Defendants; (2) Granting Class Certification For Purposes Of Settlement Only; (3) Approving The Form And Manner Of Notice To Kessler Settlement Class Members Of The Settlement Agreement; (4) Scheduling A Fairness Hearing To Consider Final Approval Of The Settlement Agreement; And (5) Granting Related Relief.  [Doc 4808]

46.      Upon approval by this Court, the Agreement will resolve all issues among Settling Defendants, Named Plaintiffs and the other members of the Kessler Settlement Class relating to the 44,535 second mortgage loans at issue.

## III.    THE REQUESTED FEE AND EXPENSE AWARDS ARE REASONABLE

47.      The Court should grant the requested attorneys' fee and expense awards.  Based upon my experience in these types of complex litigation matters, I believe that an award of reasonable attorney's fees that constitutes I believe an attorneys' fee award in the amount of 35% of the **Kessler Net Recovery** as that term is defined in Section 2.14 of the Agreement is fair and reasonable.

### *Percentage of the Fund*

48.      The 35% figure is objectively reasonable in that it is within the range of fees that have been awarded in connection with the settlement of complex class action cases, including those settled within this Circuit.

49.    The requested fee percentage of 35% from the Kessler Net Recovery in this matter is much less than the percentages awarded in a number of other recent class action settlements involving consumer claims related to second mortgages just like these for violations of Missouri's Second Mortgage Loans Act. Similar to this matter, those class action cases involved a high risk of non-recovery and protracted litigation before a settlement was reached. I have personal knowledge of each of the cases and submitted an affidavit in each as to the facts and why the requested fee percentage was reasonable and should be awarded. I and Walters, Bender, Strohbehn & Vaughan, P.C. served as Class Counsel in each matter. Similar to this matter, those class action cases involved a high risk of non-recovery and drawn-out and protracted litigation before a settlement was reached. These cases include the following:

1.  *Gilmor v. Preferred Credit Corp.*, Case No. 10-0189-CV-W-ODS (W.D. Mo.)(court approved nine separate class action settlements with various defendants, one with an attorneys' fee award of 43.6% and the other eight with an attorneys' fee award of 45%);

2.  *DeAnthony Thomas, et al. v. U.S. Bank, N.A., et al.*, Case No. 1216-CV20561 (Mo. Cir. Ct. November 16, 2012)(Jackson County – Div. 16) (approving $92 million class action settlement with attorneys' fee award of 45%);

3.  *Jack L. Beaver, et al. v. U.S. Bank, National Association, et al.*, Case No. 1216-CV21345 (Mo. Cir. Ct. November 26, 2012)(Jackson County – Div. 16)(approving $68.3 million class action settlement with attorneys' fee award of 45%);

4.  *Thompson, et al. v. Sovereign Bank, N.A.*, Case No. 1216-CV09804 (Mo. Cir. Ct. September 6, 2012) (Jackson County – Division 16) (finally approving class action settlement with an attorneys' fee award of 46.34%);

5.  *Mitchell v. Residential Funding Corporation, et al.*, Case No. 03-CV-220489-01 (Mo. Cir. Ct. July 13, 2012) (Jackson County – Division 4) (finally approving class action settlement with Wells Fargo Bank, N.A., with an attorneys' fee award of 50% ; court noted that 50% was "reasonable and by no means unusual for a contingency fee case of this length, magnitude, and type" in case that had been pending for more than nine (9) years);

6.  *Mitchell v. Residential Funding Corporation, et al.*, Case No. 03-CV-220489-01 (Mo. Cir. Ct. August 17, 2012) (Jackson County – Division 4) (finally approving class action settlement with Household Finance Corporation III, with an attorneys' fee award of 50% and noting that 50% was "reasonable and by no means unusual for a contingency fee case of this length, magnitude, and type" in case that had been pending for more than nine (9) years);

7.  *Mitchell v. Residential Funding Corporation, et al.*, Case No. 03-CV-220489-01 (Mo. Cir. Ct. April 16, 2012) (Jackson County – Division 4) (preliminarily approving class action settlement with Residential Funding Company, LLC, in which Class Counsel sought an attorneys' fee award of 45% - final approval was delayed, however, due to the instant bankruptcy filing by RFC);

8.  *Shokere, et al. v. Residential Funding Company, LLC, et al.*, Case No. 1116-CV30478 (Mo. Cir. Ct. March 12, 2012) (Jackson County – Div. 15) (finally approving class action settlement with an attorneys' fee award of 40%);

9.  *Couch, et al., v, SMC Lending, Inc., et al.*, Case No. CV100-4332 CC (Mo.Cir.Ct. Oct. 19, 2011) (Clay County – Div. 3) (finally approving class action settlement with an attorneys' fee award of 40%);

10. *Baker, et al. v. Century Financial Group, Inc. et al.,* Case No. CV100-4294 (Mo. Cir. Ct. October 19, 2011) (Clay County – Div. 3) (finally approving class action settlements with attorneys' fee awards of 40% and 47%).

Like the above cases, this case has a high degree of risk.  Like this case the above cases were litigated for years against well-funded and obstinate defendants.  RFC was a settling Defendant in four of the above cases.  RFC, just as in this case, was represented by nationally known defense counsel.  The factors which governed the award of fees in the above cases are similar if not identical in material respects to the *Goldberger* factors used by the Second Circuit.

### *Lodestar calculations*

50.    As set forth in **Exhibit 1,** the total number of hours expended on this litigation by my firm (Walters, Bender) since its inception until May 14, 2012 in the multidistrict litigation is 15,649.39 hours.  Based on the listed hourly rates for each timekeeper the total lodestar for Walters Bender through that period of time is $7,886,158.75.

51.    As set forth in **Exhibit 2**, the total number of hours expended on this litigation by Walters Bender since May 14, 2012 in the bankruptcy litigation through September 30, 2013 is 2,649.33 hours.   Based on the listed hourly rates for each timekeeper the total lodestar for Walters Bender through that period of time is $1,354,788.50.  The Court should note that this figure does not include time expended to prepare this fee application.

52.    The lodestar totals do not include a substantial number of unrecorded hours that were expended by non-timekeepers - *i.e.*, administrative personnel employed by Class Counsel. The above figures do not reflect any time in connection with the preparation of the instant fee application.

53.    Additionally, all the work done by my firm was completed by attorneys and paralegals of the firm.  My firm's lodestar figures are based upon the firm's billing rates which do not include charges for expense items.  Expense items are billed \separately and such charges are not duplicated in my firm's billing rates.

54.    The above rates in Exhibits 1 and 2 are reasonable for this matter, given the respective education, experience and skill of the lawyers and non-lawyers, the risks involved, the results obtained, and all the other factors to be considered. These rates are reasonable in this community for similar work in similar types of plaintiffs' class and other cases.

55.    I base that opinion on my experience and knowledge of reasonable rates for similar work in this community.  That knowledge and experience includes but is not limited to review of filings in other class cases in this community, review of other attorney fee requests, review of attorney fee bills, review of past and current surveys' of law firm rates which includes firms in the community and defense firms in this case, communication with other lawyers and review of publications with respect to attorney billings.

56.     The rates are also very reasonable in the national market place which for a case of this type is the relevant market.   One need only compare the rates on Exhibits I and 2 to the rates submitted in this very bankruptcy proceeding by other law firms to realize they are very reasonable rates  given the respective education, experience and skill of the lawyers and non-lawyers.

57.     The rates are also compare conservatively to rates of various class counsel that have been approve as reasonable in other class action litigation in this district on multiple prior occasions.

58.     Combining the two periods above, Walters Bender has expended 18,298.72, total hours of attorney and paralegal time in the prosecution of Kessler Settlement  Class Claims against RFC since May 2001 through September 30, 2013. Based on the listed hourly rates for each timekeeper the total lodestar for Walters Bender through that period of time is $9,240,947.25.

59.     Class Counsel's Summary of Hours and Lodestar, attached as **Exhibit 9** to the Application, sets forth a summary of the hours and lodestar for the two time frames and a total of each for the combined time frame for counsel who represented borrowers during the period of time the various cases were being prosecuted for which re-imbursement is requested in this Settlement. Each firm has submitted a declaration with respect to the hours, lodestar and reasonableness of the rates used in the lodestar for which re-imbursement is sought. *See* **Exhibits 1-8** attached to the Application. The total hours and total lodestar for each time frame and for the combined time frame are set forth in **Exhibit 9.**

60.     All Plaintiffs' Counsel (the eight law firms listed on **Exhibit 9**) have expended 6,213.78 total hours of attorney and paralegal times on this matter since May 14, 2012 in the

bankruptcy litigation. The total lodestar, based upon these hours multiplied by each firm's current hourly rates for their respective timekeepers, is $3,134,427.50.

61.    Using just the time and lodestar for all Plaintiffs' Counsel beginning on May 14, 2012 in the bankruptcy litigation and comparing that lodestar to the estimated attorneys' fee of $9,172,709.21 (9,172,109.21/3,134,427.30) yields a lodestar multiplier of 2.93. That lodestar is a very conservative lodestar for this case.

62.    All Plaintiffs' Counsel (the eight law firms listed on **Exhibit 9**) have expended 39,380.93 total hours of attorney and paralegal times on this matter from the inception as set forth in the combined time frames. The total lodestar, based upon these hours multiplied by each firm's current hourly rates for their respective timekeepers, is $20,134,304.20.

63.    Using the time and lodestar for all Plaintiffs' Counsel from the inception as set forth in the combined time frames and comparing that lodestar to the estimated attorneys' fee of $9,172,709.21 (9,172,109.21/20,134,304.20) yields a negative lodestar multiplier of .46.

*Goldberger Factors*

**1.    The time and labor expended by counsel**

64.    The time and labor expended by Class Counsel just since RFC filed for bankruptcy on May 14, 2012 – some 6,213.78 hours – supports the propriety of the proposed attorneys' fee award. That number of hours without considering any prior periods is more than sufficient to justify the estimated fee award in this matter.

65.    Moreover, during the course of litigation prior to May 2012 – going back approximately twelve (12) years -- Class Counsel expended 33,167.15 total hours of attorney and paralegal time in investigating and prosecuting the claims of the Kessler Settlement Class in multi-district litigation pending in the U.S. District Court for the Western District of

Pennsylvania, the Third Circuit Court of Appeals, various state courts and now before this Court. As the results suggest, Counsel's work was of a high quality and appropriate given the demands of this litigation.

### 2.    The Magnitude and Complexities of the Litigation

66.    The factual and legal issues presented by this litigation are complex and risky. The risk is demonstrated by the fact that certain of the cases filed by Class Counsel have been lost at both the trial court level and through the relevant courts of appeal.  Nonetheless, counsel continued to pursue these claims aggressively, including the considerable effort expended in this Court.

67.    The extensive history of this action is not typical. In this case, Class Counsel have been engaged in litigation relating to these claims for over 12 years, including multiple trips to federal courts of appeal in both the Third and Eighth circuits.

68.    Plaintiffs' legal claims raise complex issues under federal law. The loans involved are "high-cost" loans under the Home Ownership and Equity Protection Act ("**HOEPA**"), and each of the 44,535 separate loan transactions was governed by and subject to the Real Estate Settlement Procedures Act, ("**RESPA**"), the Truth in Lending Act ("**TILA**"), and HOEPA.  The claims against the Settling Defendants are premised on violations of these complex consumer protection statutes as well as giving rise to claims under the Racketeer Influenced and Corrupt Organizations Act ("**RICO**").  By way of example of this case's magnitude and complexity, the Joint Consolidated Amended Class Action Complaint is 112-pages long and contains 529 numbered paragraphs that set forth the facts and legal theory behind Plaintiffs' claims related to their second mortgage loans.  The accompanying First Amended RICO Case Statement is 154 pages long and details the elements of Plaintiffs' RICO claims.  There can be no dispute that this

is a very large and complex class action case and that factor supports the requested attorneys' fee award. The magnitude and complexity of this case is a factor that justifies the requested attorneys' fee award.

### 3.    The risk of the litigation

69.    The substantial amount of risk assumed by Class Counsel in undertaking this action justifies the attorneys' fees requested.  While litigation risk can arise in a number of capacities, key among those is the risk of non-payment.

70.    Class Counsel, including Walters, Bender, have pursued these claims against RFC for over 12 years – in state courts and federal courts including the resulting multidistrict proceeding and in this bankruptcy proceeding. And unlike counsel for the defendants, Class Counsel, including Walters, Bender, have not received any compensation or reimbursement for any of their time and expenses that they have incurred since they began pursuing the claims of the Kessler Settlement Class more than 12 years ago. As the tortured history of this case demonstrates, the risk of no recovery in complex cases of this type is real and this very significant and most basic of risk factors justifies the requested fee.

71.    Another substantial risk assumed by Class Counsel in undertaking this representation is whether liability could be established on behalf of the class.  At the time Class Counsel first undertook representation of these aggrieved borrowers from across the nation, while it appeared that the originating Banks were participating in a massive predatory and illegal lending scheme and selling those loans to RFC, the scope of such wrongdoing was not commonly perceived. That is, although these abusive practices are well known today, the public was not as aware of such problems when litigation began over 12 years ago.

72.    Part of that uncertainty came from the fact that the noted statutory actions were not all that common and were afforded differing treatment in differing jurisdictions.  Indeed, since these cases were first filed, decisional law has evolved to the benefit of the Kessler Settlement Class and to its detriment.

73.    Such issues were, of course, tested by the well represented Defendants' by their various motions to dismiss filed in the consolidated proceedings in the MDL Court which were not resolved at the time of RFC's bankruptcy.  To that point, the eventual ruling by the district court did dismiss some of the claims in its June 2013 Memorandum Opinion. See *In re Community Bank of Northern Virginia Mortgage Lending Practices Litig.,* MDL 1674, 2013 WL 3279551 (W.D. Pa. June 27, 2013).

74.    The Plaintiff class also faced a further risk, from inception of the litigation and which continues through the bankruptcy proceeding, that Class Counsel would fail to obtain class certification for the claims that now make up the Kessler Settlement Class.  Absent certification, the likely recovery to just the named plaintiffs (if obtained) would be minuscule in comparison to the time, work, and effort necessary to obtain the recovery. Because of this possibility, the risk of that occurrence made this a high risk undertaking that other attorneys might not have accepted.

75.    Every Rule 23(b)(3) class case (like this case) must establish numerosity, typicality, commonality, adequacy, and predominance present substantial risks. These hurdles are all the more difficult to clear in complex class action cases with multiple plaintiffs and defendants which involves some 44,535 transactions.  To that point, both Third Circuit opinions in the underlying MDL Litigation turned on class certification issues.  *See In re CBNV I* and *In re CBNV II.*

76.    Moreover, while class actions are certainly authorized in the bankruptcy context, as Plaintiffs explained in their Memorandum in Support of Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims (Docket 2045), there has been judicial hostility to the application of Rule 23 to claims administration in the bankruptcy context. And even if initially successful in obtaining certification, there is a continuing risk that the class may be decertified via motion or as the result of an appeal under Fed. R. Civ. P. 23(f) or after trial.  And again, this very case demonstrates this point. In the ongoing matter in the Western District of Pennsylvania, on July 31, 2013 the district court granted class certification for the claims against PNC Bank.  PNC then sought a permissive appeal under Rule 23(f) and that petition was granted on October 23, 2013 by the Third Circuit.

77.    In short, the risk presented by the uncertainty of certification, which is always present, illustrates again the high level of risk these cases present to the plaintiffs and their counsel and supports the requested fee.

78.    Another significant risk assumed by Class Counsel in undertaking representation of the class was the amount of damages that they could establish on behalf of the class.  At the time the case was filed, Class Counsel did not have the loan documentation or payment histories that would inform them as to amount of the illegal fees and interest that the Class Members collectively paid. This lack of information as to the illegal fees charged and paid on the loans persisted throughout the bankruptcy proceedings. The Agreement accommodates this risk by providing that the Kessler Settlement Class Members will recover a proportionate share of the amount defined in the Agreement as the Kessler Net Recovery Distribution.  That individual proportionate amount is determined by computing each Kessler Settlement Class Member's individual damages which is comprised of the sum of (1) the fees

paid on the loan which are determined by a formula that estimates the fees paid in connection with each loan based upon the interest rate and other loan parameters and (2) the actual interest paid for each Class Member's loan.  The individual Kessler Settlement Class Member damages are then discounted per the allocation percentage where required.  Then each Kessler Settlement Class Member's individual damages as discounted, if applicable, are compared to the sum of all Kessler Settlement Class Member individual damages as discounted, if applicable, to determine each Kessler Settlement Class Member's proportionate share of the Kessler Net Recovery Distribution.  *See* Agreement at § 6.

79.    Furthermore, Class Counsel had to develop a methodology of presenting proof of damages that would be admissible and understandable at trial.   In addition, Class Counsel had to develop factual evidence to support the damage methodology.  It has been difficult to prepare these methodologies and to develop this evidence given the lack of fee data for a majority of the loans.

80.    Next, even if the claims of the class were to proceed to trial and Class Counsel were able to present admissible evidence of and establish damages, juries can be unpredictable and there would be no guarantee that Plaintiffs would prevail at trial. Or, even if Plaintiffs were to be successful at trial, there would be no guarantee that a favorable verdict would be upheld on appeal.

81.    The Kessler Settlement Class and Class Counsel faced another risk in connection with the ability to collect upon any judgment obtained.  Obviously, a substantial judgment is simply a pyrrhic victory if there are no solvent Defendants from which to collect or when the recovery is merely "pennies on the dollar."

82.    And yet again, the history of this case proves this point.  At one point, RFC was a highly solvent defendant and now the Kessler Settlement Class, as with the other creditors of the Debtors, is receiving only pennies on the dollar for their claims.    Thankfully the specter of a recovery from the insurance policies could substantially increase the Kessler Settlement Class recovery but that is hardly assured.

### 4.    The Quality of the Representation

83.    The quality of representation provided to the Kessler Settlement Class is another factor that justifies the proposed attorneys' fee award.   The attorneys working on this matter have had many years of experience dealing with complex class actions, especially those concerning predatory lending and second mortgage loan litigation. To that end, the substantial recovery obtained on behalf of the Class in this bankruptcy proceeding demonstrates the quality of the representation provided by Class Counsel and supports the appropriateness of the requested award.

84.    Additionally, the recovery obtained on behalf of the Kessler Settlement Class was in the face of significant opposition presented by attorneys that are among the best in the country. Here, Class Counsel was able to negotiate the instant settlement with nationally recognized defense counsel from Morrison Foerster and Bryan Cave on the other side.

85.    In sum, the experience, reputation, and ability of Class Counsel were substantial factors in obtaining the settlement.  Less experienced or able counsel would not likely have taken the case or have had the dedication and resources to continue representation over a period of approximately 12 years, let alone achieved the results Class Counsel did.  As such, the quality of representation factor substantiates the propriety of the requested fee award.

### 5.    The requested fee in relation to the settlement

86.    This factor also supports Class Counsel's request.  As has been noted, the requested fee is within the range of fees awarded in class actions in this district. Moreover, the proposed 35% fee is also less than the percentage awarded as attorneys' fees in similar second mortgage litigation. These second mortgage cases are analogous to the litigation that led to the Kessler Settlement, as they all involved extensive and protracted litigation concerning violations related to second mortgage lending, and they are appropriate benchmarks for determining what a reasonable fee may be for settlements involving predatory lending and second mortgage litigation.    The requested fee is clearly reasonable and appropriate in relation to the size of the settlement and benefits it brings to the Kessler Settlement which includes the assignment of the Insurance Rights.

### 6.    Public Policy Favors the Fee Request

87.    Consumer plaintiffs rarely have the financial resources to pay a fixed hourly rate for legal services. Contingency fees and class action litigation make it feasible for individual consumers to have access to the courts and to counsel who possess the experience and ability necessary to take on complex and novel cases at a substantial risk of loss. Class Counsel should be rewarded when they succeed in such cases.

88.    Without a class action, small claimants individually lack the economic resources to vigorously litigate their rights. Private attorneys with skill and experience should be encouraged to take the risks required to represent those who would not otherwise be protected from acts of predatory lending. Awarding the requested fees and expenses would be fully consistent with important public policy considerations and would encourage lawyers and law firms to continue to advance funding for similar contingent litigation in the future.

### 7.    The Settlement Class's Reaction to the Fee Request

89.    To date, only two class members as to one loan out of 44,535 total loans have objected to the terms of the proposed settlement and to Class Counsel's fee request.  The objection lacks merit.

90.     Also, as noted, five borrowers as to three Class loans sought to opt out of the Settlement Class.  *See* Doc. No. 5516.

## V.    CLASS COUNSEL SHOULD BE REIMBURSED FOR REASONABLY INUCRRED LITIGATION EXPENSES AND COSTS

91.    As detailed and categorized in **Exhibit 3,** my firm has incurred a total of $295,187.81 in unreimbursed expenses in connection with the prosecution of this litigation since its inception until May 14, 2012 in the multidistrict litigation.

92.    As detailed and categorized in Exhibit 4, my firm has incurred a total of $44,982.58 in unreimbursed expenses in connection with the prosecution of this litigation since May 14, 2012 through October 31, 2013 in the bankruptcy litigation.

93.    The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

94.    The expenses incurred are of the type customarily incurred in the prosecution of this type of litigation and include the following categories of expenses:  (a) Court Reporter/Filing Fees; (b) Expert /Legal Service; (c) Online Research /Reference Materials; (d) Mail/Print/ Copy/Scanning/Phone Services; (e) Travel/Meeting Expenses; and (f) Subpoena/Witness Fees.

95.    The expenses represent payment for such expenses such as the cost of photocopies, mailings, computerized factual and legal research (*e.g.,* Pacer and Westlaw), expert witnesses' fees and reports, depositions, and travel in connection with the prosecution of the

claims of the Kessler Settlement Class. These are all expenses that would normally be "billed" to a client as part of any contingency fee agreement and the amount of these expenses is reasonable.

96.      As detailed and categorized in **Exhibits 3** and **4** Walters Bender has incurred a total of $340,170.39 in unreimbursed expenses in connection with the prosecution of this litigation since its inception until May 14, 2012 in the multidistrict litigation and since May 14, 2012 through October 31, 2013 in the bankruptcy litigation.  These are expenses that would normally be "billed" to a client as part of any contingency fee agreement and the amount of these expenses is reasonable.

97.      The Court also should approve as fair and reasonable the $340,170.39 in litigation expenses and costs that Walters Bender, incurred in its representation of borrowers in the Kessler Settlement Class and the Kessler Settlement Class.

98.      The Costs and Expense Summary attached as **Exhibit 10** to the Application sets forth a summary of the costs and expenses for  counsel who represented borrowers during the period of time the various cases were being prosecuted for which re-imbursement is requested in this Settlement. Each firm has submitted a declaration with respect to the amount and reasonableness of the costs and expenses for which re-imbursement is sought. *See* **Exhibits 1-8** attached to the Application.  The total for all costs and expenses is $719,759.41. Based on those declarations the Court should approve as fair and reasonable the $719,759.41 in total litigation costs and expenses.

### *Allocation Counsel and Allocation Mediator*

99.      Another component of the expenses but for which no reimbursement is sought relates to the billings for services rendered by separate and independent **Allocation Counsel** (Arthur J. Stroyd, Jr., Edward Kilpela, and Richard H. Ralston) and a mediator, Charles Atwell,

to resolve the allocation issues as between the subclasses that are based on the dates the Class members' loans were originated. Those billings will be paid by Class Counsel from Class Counsel's attorneys' fee award.

100.    Messrs. Stroyd and Kilpela were retained by Named Plaintiffs John and Rebecca Picard for the purpose of representing them and the Equitable Tolling Sub-class in negotiations to resolve the appropriate allocation of the Kessler Net Recovery as described in the Settlement.

101.    Mr. Ralston was retained by Plaintiff Rowena Drennen for the purpose of representing her and the Non-Equitable Tolling Sub-Class in negotiations to resolve the appropriate allocation of the Kessler Net Recovery described in the Settlement.

102.    Mr. Ralston has submitted to me an invoice in the amount of 20,700.00 for his services as counsel for the Non-Equitable Tolling Subclass. In this invoice Mr. Ralston has represented to me that he expended 34.5 hours of work at a rate of 600.00 in connection with his representation of the Non-Equitable Tolling Sub Class.  Based on my familiarity with Mr. Ralston's experience and expertise, which I previously set forth in my Declaration in support of the preliminary approval motion, and his efforts in this matter, I believe that the $20,700.00 is fair and reasonable and should be approved.

103.    Mr. Atwell has submitted to me an invoice in the amount of 5,946.37 for his services as a mediator in resolving the allocation issues. In this invoice Mr. Atwell has represented to me that he expended 16.70 hours of work at a rate of $350.00  and a paralegal expended .20 hours of work at a rate of $75.00 and he incurred 86.37 of expenses for meals and delivery expenses  in connection with his mediation services.  Based on my familiarity with Mr. Atwell's experience and expertise, which I previously set forth in my Declaration in support of

the preliminary approval motion, and his efforts in this matter, I believe that the $5,946 is fair and reasonable and should be approved.

104.    Mr. Carlson will address in his declaration the services and billings from Messrs. Stroyd and Kilpela.

## VII.    THE COURT SHOULD AWARD THE NAMED PLAINTIFFS AND THE MDL LITIGATION CLASS REPRESENTATIVES INCENTIVE AWARDS

105.    The Court should award the Named Plaintiffs and the Plaintiffs in the MDL Litigation (the "**MDL Litigation Class Representatives**") incentive or service awards totaling $72,500.00, to be apportioned among them according to the amounts set forth on Schedule 1 attached to the parties' Agreement.    The requested incentive award is reasonable in my experience and within the range of incentive fees awarded in other class actions in this district and throughout the country.

106.    Notably, these amounts are modest – $7,500.00 for all of the Plaintiffs excluding Ms. Drennen, and a $12,500.00 award for Rowena Drennen based upon her additional service as a member of the Creditor's Committee – and are appropriate given their time, service, and effort given on behalf of and for the benefit of the Kessler Settlement Class, which has now resulted in the instant settlement.

107.    Over the course of the twelve years that the claims of the Kessler Settlement Class have been pending in the MDL Litigation and in this Court, the Named Plaintiffs and the MDL Litigation Class Representatives have undertaken significant work and effort on behalf of the absent class members who make up the Kessler Settlement Class and that was not required of other absent class members to preserve their claims.    That is, the Named Plaintiffs and MDL Litigation Class Representatives helped to initiate litigation against RFC in May 2001 and they

have patiently continued to assist in the prosecution of the MDL Litigation and this bankruptcy proceeding throughout the time they have been pending.

108.    During all of this time the Named Plaintiffs and MDL Litigation Class Representatives have been in regular phone and email contact with our firm and the Carlson Lynch firm. Among other things, they have participated in the discovery process by providing answers to written discovery and appearing for depositions. They also evaluated and approved the instant settlement and assisted in resolving the allocation issue between the subclasses.    As noted, Named Plaintiff Rowena Drennen also served as a member of the Creditors' Committee.

109.    The Named Plaintiffs' and the MDL Litigation Class Representatives' collective and continued efforts and "staying power" in the MDL Litigation and in this bankruptcy case helped bring about the instant Settlement and conferred a significant benefit to the members of the Kessler Settlement Class, one that may not have been possible but for the time and effort put forth by them.  The benefit that inured to the Kessler Settlement Class as a result of such efforts and commitment and unselfish decisions merits the payment of the proposed incentive award.

110.    I believe that the amount of the incentive award that Named Plaintiffs seek for their service is reasonable and does not unfairly diminish the Kessler Settlement Class Members' individual recovery.  On a *per loan* basis, each set of Kessler Settlement Class Members will contribute a mere $1.63 towards the payment of the incentive awards and the service of the Named Plaintiffs and the MDL Litigation Class Representatives. Even more, the requested incentive awards are less than a mere .3% of an estimated minimum, Kessler Gross Recovery of $27 million.  I believe that it is fair and reasonable to expect each Class Member to contribute such modest amounts towards the requested incentive award.

111.    No member of the Kessler Settlement Class has objected in any way to the requested incentive award although the award does reduce each Class Member's individual recovery.

112.    Also, pursuant to the Amended Settlement Agreement, the Settling Defendants and the Creditors' Committee do not object to the proposed incentive award. *See* Agreement, §7.a.


Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated: November 4, 2013

R. Frederick Walters

**Exhibit 1**
**to The Declaration of R. Frederick Walters In Support of Kessler Plaintiffs' Counsel's**
**Motion for An Award of Attorney's Fees and Reimbursement of Litigation Expenses**

**Summary of Hours**
**(2003 to May 13, 2012 - Pre BK)**

| | Year of Admission | Hours | Rate 2013 | 2013 Rate X Hours |
|---|---|---|---|---|
| **Shareholders** | | | | |
| R. Frederick Walters | 1973 | 1579.55 | 700 | 1,105,685.00 |
| Kip D. Richards | 1989 | 78.80 | 650 | 51,220.00 |
| David M. Skeens | 1988 | 2675.63 | 650 | 1,739,159.50 |
| J. Michael Vaughan | 1975 | 2416.68 | 700 | 1,691,676.00 |
| R.Keith Johnston | 1990 | 719.25 | 550 | 395,587.50 |
| Thomas V. Bender | 1979 | | 700 | - |
| Michael D. Strohbehn | 1978 | | 700 | - |
| Karen W. Renwick | 1984 | | 650 | - |
| J. Brett Milbourn | 1986 | 13.50 | 650 | 8,775.00 |
| | | | | |
| **Associates** | | | | |
| Garrett M. Hodes | 1998 | 4414.54 | 475 | 2,096,906.50 |
| Bruce V. Nguyen | 2003 | 36.60 | 375 | 13,725.00 |
| Don P. Saxton | 2004 | 8.25 | 350 | 2,887.50 |
| Vanessa S. Herman | 2005 | 21.20 | 325 | 6,890.00 |
| Rachel B. Mahn | 2007 | 30.80 | 325 | 10,010.00 |
| E. Wayne Farmer | 1978 | 1.50 | 550 | 825.00 |
| Heather L. Carlson | 1999 | 4.50 | 450 | 2,025.00 |
| Eric M. Schimamoto | 2006 | 9.70 | 325 | 3,152.50 |
| Matthew R. Crimmins | 2001 | | 425 | - |
| Brooke Blake Edenfield | 2011 | 17.10 | 300 | 5,130.00 |
| Michael Sichter | 2011 | 305.75 | 300 | 91,725.00 |
| Sara Bruchman | 2009 | 14.50 | 325 | 4,712.50 |
| Patrick J. McAndrew | 2010 | 15.65 | 325 | 5,086.25 |
| Subtotal | | 12363.50 | | 7,235,178.25 |
| **Paralegals** | | | | |
| Joanne M. Fasl Haake | N/A | 438.35 | 200 | 87,670.00 |
| Melissa L. Nickel | N/A | 4.95 | 200 | 990.00 |
| Chad A. Brown | N/A | 9.50 | 200 | 1,900.00 |
| Julie C. Banz | N/A | 399.40 | 200 | 79,880.00 |
| Zachary B. Walters | N/A | 6.00 | 200 | 1,200.00 |
| Christi M. Porter | N/A | 22.66 | 200 | 4,532.00 |
| Kesh Pakiriy | N/A | 29.25 | 200 | 5,850.00 |
| Abra R. House | N/A | 1.25 | 200 | 250.00 |
| Paige L. Burks | N/A | 71.82 | 200 | 14,364.00 |
| Rachel E. Haslag | N/A | 43.00 | 150 | 6,450.00 |
| Mellisa R. Woods | N/A | 30.50 | 200 | 6,100.00 |
| Taylor J. Walters | N/A | 81.70 | 200 | 16,340.00 |
| Ellen Barocas | N/A | 15.75 | 200 | 3,150.00 |
| Janna L. Wright | N/A | 2.50 | 200 | 500.00 |
| Justin Farmer | N/A | 4.00 | 150 | 600.00 |
| Donna R. Ring | N/A | 759.01 | 200 | 151,802.00 |
| Adrienne K. Hale | N/A | 414.90 | 200 | 82,980.00 |
| Laura  Vaughan Corcoran | N/A | 162.70 | 200 | 32,540.00 |

**Exhibit 1**
**to The Declaration of R. Frederick Walters In Support of Kessler Plaintiffs' Counsel's
Motion for An Award of Attorney's Fees and Reimbursement of Litigation Expenses**

**Summary of Hours**
**(2003 to May 13, 2012 - Pre BK)**

|  | Year of Admission | Hours | Rate 2013 | 2013 Rate X Hours |
|---|---|---|---|---|
| Breana Grove | N/A | 24.90 | 200 | 4,980.00 |
| Adrienne L. Shabazz | N/A | 477.55 | 200 | 95,510.00 |
| Stacie Babilon | N/A | 3.70 | 200 | 740.00 |
| Sam B. Strohbehn | N/A | 2.75 | 200 | 550.00 |
| Matthew B. Walters | N/A | 0.80 | 200 | 160.00 |
| Melissa K. Nolte | N/A | 4.25 | 150 | 637.50 |
| Meghan O. Walters | N/A | 49.40 | 200 | 9,880.00 |
| Susan A. Goulden | N/A | 0.50 | 150 | 75.00 |
| David J. Edlow | N/A | 4.00 | 200 | 800.00 |
| Kelsey L. Walters | N/A | 148.60 | 200 | 29,720.00 |
| Clerk | N/A | 72.20 | 150 | 10,830.00 |
| Subtotal |  | 3285.89 |  | 650,980.50 |
| Total |  | 15649.39 |  | 7,886,158.75 |

**Exhibit 2**
**to the Declaration of R. Frederick Walters in Support of Kessler Plaintiffs' Counsel's**
**Motion for An Award of Attorney's Fees and Reimbursement of Litigation Expenses**

**Summary of Hours**
**(May 14, 2012-September 30, 2013)**

| | Year of Admission | Hours | Rate 2013 | 2013 Rate X Hours |
|---|---|---|---|---|
| **Shareholders** | | | | |
| R. Frederick Walters | 1973 | 664.60 | 700 | 465,220.00 |
| Kip D. Richards | 1989 | 7.50 | 650 | 4,875.00 |
| David M. Skeens | 1988 | 623.50 | 650 | 405,275.00 |
| J. Michael Vaughan | 1975 | 52.18 | 700 | 36,526.00 |
| R.Keith Johnston | 1990 | 331.70 | 550 | 182,435.00 |
| Thomas V. Bender | 1979 | | 700 | - |
| Michael D. Strohbehn | 1978 | | 700 | |
| Karen W. Renwick | 1984 | | 650 | |
| J. Brett Milbourn | 1986 | | 650 | - |
| | | | | |
| **Associates** | | | | |
| Garrett M. Hodes | 1998 | 243.40 | 475 | 115,615.00 |
| Bruce V. Nguyen | 2003 | 2.50 | 375 | 937.50 |
| | | | | - |
| Vanessa S. Herman | 2005 | 0.70 | 325 | 227.50 |
| | | | | - |
| Eric M. Schimamoto | 2006 | 0.70 | 325 | 227.50 |
| | 2008 | | | - |
| Matthew R. Crimmins | 2001 | | 425 | - |
| Brooke Blake Edenfield | 2011 | 16.60 | 300 | 4,980.00 |
| Michael Sichter | 2011 | 202.80 | 300 | 60,840.00 |
| Sara Bruchman | 2009 | 18.00 | 325 | 5,850.00 |
| Subtotal | | 2164.18 | | 1,283,008.50 |
| **Paralegals** | | | | |
| Joanne M. Fasl Haake | N/A | 230.15 | 200 | 46,030.00 |
| Christi M. Porter | N/A | 9.75 | 200 | 1,950.00 |
| Mellisa R. Woods | N/A | 0.10 | 200 | 20.00 |
| Paige L. Burks | N/A | 1.90 | 200 | |
| Lani Paalamo | N/A | 123.60 | 200 | |
| Meghan O. Walters | N/A | 1.15 | 200 | 230.00 |
| Kelsey L. Walters | N/A | 49.05 | 200 | 9,810.00 |
| Holly J. Yocum | N/A | 66.45 | 200 | 13,290.00 |
| | | | | - |
| Susan A. Goulden | N/A | 1.50 | 150 | 225.00 |
| | | | | - |
| | | | | - |
| Clerk | N/A | 1.50 | 150 | 225.00 |
| Subtotal | | 485.15 | | 71,780.00 |
| Total | | 2649.33 | | 1,354,788.50 |

**EXHIBIT 3**

**TO THE DECLARATION OF R. FREDERICK WALTERS**
**IN SUPPORT OF KESSLER PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD**
**OF ATTORNEY'S FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

| CATEGORIES | EXPENSES |
| --- | --- |
| **Court Reporter/Filing Fees** | **$5,700.49** |
| **Expert/Legal Services** | **$144,181.37** |
| **Online Research/Reference Materials** | **$9,322.57** |
| **Mail/Print/Copy/Scanning/Phone Services** | **$85,462.19** |
| **Travel/Meeting Expenses** | **$47,294.58** |
| **Subpoena/Witness & Legal Fees** | **$3,226.61** |
| **TOTAL EXPENSES** | **$295,187.81** |
| | |

**EXHIBIT 4**

**TO THE DECLARATION OF R. FREDERICK WALTERS**
**IN SUPPORT OF KESSLER PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD**
**OF ATTORNEY'S FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

| CATEGORIES | EXPENSES |
|---|---|
| Court Reporter/Filing Fees | 0.00 |
| Expert/Legal Services | 0.00 |
| Online Research/Reference Materials | $48.00 |
| Mail/Print/Copy/Scanning/Phone Services | $11,109.74 |
| Travel/Meeting Expenses | $33,824.84 |
| Subpoena/Witness & Legal Fees | 0.00 |
| TOTAL EXPENSES | $44,982.58 |
| | |