1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 12-12020-mg

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              November 4, 2013

19              2:13 PM

20

21    B E F O R E:

22    HON. MARTIN GLENN

23    U.S. BANKRUPTCY JUDGE

24

25

1

2    (CC: Doc# 5555) Motion for Leave to Attend and Observe Expert

3    Depositions Related to Plan Confirmation.

4

5    Pre-Trial Conference Regarding Plan Objections.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Penina Wolicki

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

3

```
 1
 2  A P P E A R A N C E S :
 3  MORRISON & FOERSTER LLP
 4        Attorneys for Debtors
 5        1290 Avenue of the Americas
 6        New York, NY 10104
 7
 8  BY:   GARY S. LEE, ESQ.
 9        CHARLES L. KERR, ESQ.
10
11
12  UNITED STATES DEPARTMENT OF JUSTICE
13        Office of the United States Trustee
14        U.S. Federal Office Building
15        201 Varick Street
16        Suite 1006
17        New York, NY 10014
18
19  BY:   BRIAN S. MASUMOTO, ESQ.
20
21
22
23
24
25
```

1

2  U.S. DEPARTMENT OF JUSTICE

3          U.S. Attorney's Office

4          86 Chambers Street

5          3rd Floor

6          New York, NY 10007

7

8  BY:    JOSEPH N. CORDARO, ESQ.

9

10

11  KRAMER LEVIN NAFTALIS & FRANKEL LLP

12          Attorneys for Official Creditors' Committee

13          1177 Avenue of the Americas

14          New York, NY 10036

15

16  BY:    PHILIP S. KAUFMAN, ESQ.

17          KENNETH ECKSTEIN, ESQ.

18          P. BRADLEY O'NEILL, ESQ.

19          DOUGLAS MANNAL, ESQ.

20

21

22

23

24

25

1

2  SILVERMANACAMPORA LLP

3         Special Counsel to Creditors' Committee

4         100 Jericho Quadrangle

5         Suite 300

6         Jericho, NY 11753

7

8  BY:   ROBERT D. NOSEK, ESQ.

9

10

11  KIRKLAND & ELLIS LLP

12         Attorneys for Ally Bank and Ally Financial, Inc.

13         153 East 53rd Street

14         New York, NY 10022

15

16  BY:   RAY C. SCHROCK, ESQ. (TELEPHONICALLY)

17

18

19  KIRKLAND & ELLIS LLP

20         Attorneys for Ally Bank and Ally Financial, Inc.

21         655 Fifteenth Street, N.W.

22         Washington, DC 20005

23

24  BY:   DANIEL T. DONOVAN, ESQ.

25

1

2  KIRKLAND & ELLIS LLP

3        Attorneys for Ally Bank and Ally Financial, Inc.

4        300 North LaSalle

5        Chicago, IL 60654

6

7  BY:   NOAH JEFFREY ORNSTEIN, ESQ.

8

9

10  WHITE & CASE LLP

11        Attorneys for Ad Hoc Group of Junior Secured Noteholders

12        1155 Avenue of the Americas

13        New York, NY 10036

14

15  BY:   HARRISON DENMAN, ESQ.

16

17

18  MILBANK, TWEED, HADLEY & MCCLOY LLP

19        Attorneys for Ad Hoc Group of Junior Secured Notes

20        One Chase Manhattan Plaza

21        New York, NY 10005

22

23  BY:   GERARD UZZI, ESQ.

24        DANIEL M. PERRY, ESQ.

25

7

1

2  MILBANK, TWEED, HADLEY & MCCLOY LLP

3        Attorneys for Ad Hoc Group of Junior Secured Notes

4        1850 K Street, NW

5        Washington DC 20005

6

7  BY:   DAVID S. COHEN, ESQ.

8

9

10  JONES DAY

11        Attorneys for FGIC

12        222 East 41st Street

13        New York, NY 10017

14

15  BY:   RICHARD L. WYNNE, ESQ.

16

17

18  ALSTON & BIRD LLP

19        Attorneys for Wells Fargo Bank

20        1201 West Peachtree Street

21        Atlanta, GA 30309

22

23  BY:   JOHN C. WEITNAUER, ESQ.

24

25

1

2  MCKOOL SMITH, P.C.

3          Attorneys for Freddie Mac

4          One Bryant Park

5          47th Floor

6          New York, NY 10036

7

8  BY:   PETER GOODMAN, ESQ.

9          MICHAEL R. CARNEY, ESQ.

10         PAUL D. MOAK, ESQ. (TELEPHONICALLY)

11

12

13  MUNGER, TOLLES & OLSON LLP

14         Attorneys for Berkshire Hathaway, Inc.

15         355 South Grand Avenue

16         35th Floor

17         Los Angeles, CA 90071

18

19  BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

 1

 2   MORGAN, LEWIS & BOCKIUS LLP

 3         Attorneys for Deutsche Bank

 4         101 Park Avenue

 5         New York, NY 10178

 6

 7   BY:   JAMES L. GARRITY, JR., ESQ.

 8

 9

10   CADWALADER, WICKERSHAM & TAFT LLP

11         Attorneys for MBIA Insurance Co.

12         One World Financial Center

13         New York, NY 10281

14

15   BY:   JASON JURGENS, ESQ.

16         JARED STANISCI, ESQ.

17

18

19   LOWENSTEIN SANDLER LLP

20         Attorneys for N.J. Carpenters

21         65 Livingston Avenue

22         Roseland, NJ 07068

23

24   BY:   MICHAEL S. ETKIN, ESQ.

25

1   MCKENNA LONG & ALDRIDGE LLP

2          Attorneys for Impac

3          230 Park Avenue

4          Suite 1700

5          New York, NY 10169

6

7   BY:   CHRISTOPHER F. GRAHAM, ESQ.

8          ALAN F. KAUFMAN, ESQ.

9

10

11   LATHAM & WATKINS LLP

12          Attorneys for Deutsche Bank

13          885 Third Avenue

14          New York, NY 10022

15

16   BY:   AARON M. SINGER, ESQ.

17

18

19   REED SMITH LLP

20          Attorneys for Wells Fargo Bank as Collateral Agent

21          599 Lexington Avenue

22          29th Floor

23          New York, NY 10022

24

25   BY:   ERIC A. SCHAFFER, ESQ.

1

2  WINSTON & STRAWN LLP

3         Attorneys for WFBNA

4         200 Park Avenue

5         New York, NY 10166

6

7  BY:   JAMES DONNELL, ESQ.

8

9

10  MAGNOZZI & KYE, LLP

11         Attorneys for Oracle America, Inc.

12         23 Green Street

13         Suite 302

14         Huntington, NY 11743

15

16  BY:   AMISH R. DOSHI, ESQ.

17

18

19  KELLEY DRYE & WARREN LLP

20         Attorneys for UMB Bank, NA

21         101 Park Avenue

22         New York, NY 10178

23

24  BY:   ERIC R. WILSON, ESQ.

25

1

2   FORAN GLENNON PALANDECH PONZI & RUDLOFF

3         Attorneys for Certain Insurers under GM Insurance Program

4         222 North LaSalle Street

5         Suite 1400

6         Chicago, IL 60601

7

8   BY:   JOHN EGGUM, ESQ. (TELEPHONICALLY)

9

10

11  STATE OF OHIO

12         Office of the Attorney General

13         1600 Carew Tower

14         441 Vine Street

15         Cincinnati, OH 45202

16

17  BY:   VICTORIA D. GARRY, AAG (TELEPHONICALLY)

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, ET AL.                    13

1                    P R O C E E D I N G S

2            THE COURT:  All right.  Residential Capital, number

3    12-12020.

4        (Pause)

5            THE COURT:  So before we get into a discussion of

6    where things stand in relation to confirmation, I have MBIA's

7    motion to attend and observe depositions.  Were there any

8    objections to that motion?  I didn't see any?

9            MR. LEE:  We didn't see any, Your Honor.

10           THE COURT:  All right, the motion is granted.

11           MR. LEE:  Okay.  Do I have a written order on that?

12   Do I have a disk?

13           UNIDENTIFIED SPEAKER:  Your Honor, I think a Word

14   file --

15           THE COURT:  Either that or e-mail -- I'll let you

16   e-mail a copy of the order.  But the motion is granted and I so

17   order it on the record.  So feel free to attend depositions.

18           All right.  Go ahead, Mr. Lee.

19           MR. LEE:  So, good afternoon, Your Honor.  I think at

20   the conclusion of the phase 1 JSN trial, Your Honor --

21           THE COURT:  Have we concluded?  I thought we have

22   closing arguments --

23           MR. LEE:  Well, it was the conclusion --

24           THE COURT:  -- this week.

25           MR. LEE:  -- of the last conclusion.  And there'll be

1   another conclusion after confirmation.

2           THE COURT:  Well, there'll be a -- I'm hearing closing

3   argument on Wednesday, so it's not even --

4           MR. LEE:  It's concluded as to the record.

5           THE COURT:  And I'm immersed in proposed findings of

6   fact and trial briefs.

7           MR. LEE:  Well --

8           THE COURT:  So you may think it's concluded.

9           MR. LEE:  Your Honor, I was going to stand up today

10  and --

11          THE COURT:  Unless you're telling me it's been

12  settled, Your Honor.

13          MR. LEE:  Absolutely, Your Honor.  Yes.  And a pig

14  just flew by.

15          Actually, Your Honor, today is about paper reduction,

16  or at least reading time reduction for Your Honor, because I

17  think I understood at the last -- when we were last here, that

18  Your Honor would like to get an update on where we are with

19  respect to resolving confirmation objections and what we expect

20  will be going forward on November the 19th.

21          And unfortunately, Your Honor, there has been a lot of

22  paper filed in this case, and there will undoubtedly be more

23  before we get to confirmation, and much of that will be,

24  unfortunately, also generated in connection with the Junior

25  Secured Noteholders.  However, since May we, the debtors and

1  the committee, have made, I think, quite remarkable progress in

2  resolving most of the objections that have been filed to date

3  in relation to confirmation.  And more importantly, and this is

4  something that I wanted to go through with Your Honor, we've

5  also resolved a number of what would have been objections to

6  confirmation, but for the fact that we have resolved them.  And

7  in that regard I'd just like to say that committee counsel

8  deserves significant credit, because there have been a number

9  of consensual resolutions that I want to go through with Your

10  Honor today -- this afternoon.

11         So, as I said, my objective, Your Honor, is to try to

12  at least reduce the amount that you have to read in connection

13  with the confirmation hearing, even though, as I think you

14  remarked, there's still a lot of paper.  And if we resolve any

15  more confirmation objections, we'll obviously let you know.

16         We think that by the time we get to confirmation, the

17  only objections that will be left fall into four categories.

18  The first is the junior secured noteholder/ad hoc/trustee

19  objections, and one objection that relates to their objection

20  filed by Wells Fargo.  The second is the very limited objection

21  that was filed by the U.S. Trustee's Office.  The third is a

22  handful of borrower objections, not all of which go to

23  confirmation.  And the last is a handful of miscellaneous

24  objections that object, in one instance to the insurance

25  neutrality provisions in the plan; in some cases appear to be

1    based on misunderstanding of third-party releases, or have no

2    bearing whatsoever on confirmation.

3          So in other words, I think that what we'll be going

4    into confirmation, Your Honor, is with a remarkable degree of

5    consensus for confirmation, close to unanimity.

6          What I've done, Your Honor, is we've prepared a chart

7    listing the status of the various plan objections, which I'd

8    like to hand up right now, if I may?

9          THE COURT:  Please.  Be careful, Mr. Lee.

10         Thank you.

11       (Pause)

12         MR. LEE:  So first, Your Honor, what I'd like to do is

13   go through the objections that have been resolved or avoided

14   altogether or that we think will be resolved prior to

15   confirmation, and then I'll take up the relatively few

16   objections that are remaining.  And then I will turn the podium

17   over either to committee counsel -- Mr. Kerr, to actually talk

18   about the hearing itself and what progress we've made in

19   getting organized for that.

20         So as Your Honor will recall, when we filed the plan

21   support agreement back in May, it resolved the treatment of

22   approximately 1,100 claims, representing 38 billion dollars in

23   liabilities asserted against the debtor.  And when we brought

24   that global settlement to you, we promised to try to

25   consensually fold everyone into the global settlement, using

1   exactly the same template that we used for the global

2   settlement; in other words, that we would provide the same

3   treatment to each of the claims that we folded in; that we

4   wouldn't try and provide any form of disparate treatment to

5   those creditors.

6          And at that time, there were approximately 6,000 more

7   claims that had not yet been addressed.  A number of parties

8   filed objections to the plan support agreement or the

9   disclosure statement or, in fact, in connection with

10  confirmation, seeking really clarity regarding the treatment of

11  their claims in the form of objections.

12         And but for the fact that we have largely been able to

13  resolve all of those claims, each of those claimants would have

14  come here asking for an evidentiary hearing on their claims.

15  And but for the resolutions that I'm going to describe, they

16  would have shown up for a confirmation hearing, making a six-

17  day hearing somewhat untenable.

18         The resolutions that I'm going to take Your Honor

19  through are tied to plan confirmation in large part.  I think

20  there are a couple of exceptions.  So looking at part A of the

21  chart, it lists parties who objected to one or more of the plan

22  support agreement, the disclosure statement, or to

23  confirmation.  And as I said, we've been engaging with each of

24  these parties over the last five months.

25         So if I may, the first group that's listed here are

1   objections filed by three of the monolines.  And those are

2   Ambac, Assured, and Syncora, who collectively, between the

3   three of them, asserted about 1.3 billion-dollars'-worth of

4   claims.  And none of those parties, Your Honor, were part of

5   the mediation process.

6          We've reached agreement with Ambac and with Assured,

7   and an agreement in principle with Syncora.  With respect to

8   Ambac, it's receiving, in effect, the treatment that it would

9   receive as one of the other monoline settling parties, on the

10  same basis.  So it will be receiving an allowed claim of 207

11  million dollars against the GMAC debtors and 22.8 million

12  dollars against the RFC debtors.  And Assured is receiving

13  allowed claims of approximately 88.9 million dollars against

14  the GMAC debtors and 58 million against the RFC debtors.  So

15  fitting in exactly with the other monolines.

16         Syncora filed an objection to confirmation which is

17  docketed at 5418.  As Your Honor will no doubt recall, Syncora

18  and the debtors have been engaged in a fairly long-running

19  battle throughout these cases, in fact, from inception.  And as

20  I said, we're very pleased to report that the plan proponents

21  have finally been able to reach an agreement in principle with

22  Syncora, and we're working to finalize a stipulation that we'll

23  submit to the Court prior to confirmation.  And I'd like to,

24  again, give my thanks to the creditors' committee for really

25  endeavoring to achieve that result.

1        So that, Your Honor, in fact, resolves the monoline

2   objections in full.

3        THE COURT:  Okay.

4        MR. LEE:  The next category, Your Honor, are borrower

5   claimants, specifically, the Rothstein plaintiffs and the Moore

6   plaintiffs, who are referring to themselves as the RESPA

7   plaintiffs in the objections that they filed.  As Your Honor

8   may recall, Rothstein is a putative class action pending in the

9   Southern District of New York.  They've also been engaged in

10  fairly extensive motion practice in this case.  That action

11  related to lender forced-place insurance.  The plaintiffs

12  valued that claim at I think approximately a billion dollars.

13  It was a putative nationwide class with hundreds of thousands

14  of members.  And we have reached a settlement in principle with

15  Rothstein, and we're working to finalize that now.

16       THE COURT:  Are there other defendants in the case

17  pending in the district court?

18       MR. LEE:  I believe it's Balboa Insurance is a

19  co-defendant.

20       THE COURT:  And has the case been completely resolved

21  or -- and is district court approving going to be required as

22  well as -- I understand the claims against the debtors, but

23  will the case remain against Balboa?

24       MR. LEE:  Your Honor, I'll confirm that, and I'll make

25  sure that we come back to you prior to the next status

1    conference on that, but I believe that it will not require

2    district court approval.  It's just going to be resolved in the

3    context of the Chapter 11.

4            THE COURT:  Okay.

5            MR. LEE:  The --

6            THE COURT:  Is that --

7            MR. LEE:  Sorry, Your Honor.

8            THE COURT:  -- am I remembering correctly that Balboa

9    did not file a proof of claim in this case?

10           MR. LEE:  That's correct, Your Honor.

11           THE COURT:  Okay.

12           MR. LEE:  The pleading that was filed by the RESPA

13   plaintiffs in connection with confirmation is at docket number

14   5457.  And that was a reservation of rights.  And the

15   reservation effectively is just there just to make sure that we

16   actually get the settlement in principle finalized.

17           And under the settlement, the RESPA plaintiffs are

18   receiving a payment from a nondebtor, CapRe of Vermont.  So

19   they're not sharing in the borrower trust under the plan.

20           That brings us to the next set of objections, those

21   that were filed by securities claimants.  Going back now to

22   July -- the end of July, I think Your Honor, at least in

23   connection with NCUAB, had encouraged the parties to resolve

24   the claims through a settlement.  And we have reached a

25   settlement with NCUAB that resolves the 290-million-dollars'-

1  worth of claims that they filed against the debtors as well as

2  the 390 million dollars in claims against AFI and 200 million

3  dollars against other AFI affiliates.

4         And we filed a motion seeking approval of that

5  settlement on October the 28th.  The objection deadline, I

6  believe, is next week.

7         THE COURT:  Is that case resolved in its entirety?  In

8  other words, are the claims against AFI resolved as well?

9         MR. LEE:  Yes, Your Honor.

10         The parties that filed the next four objections listed

11  on the chart are Huntington Bank Shares, Federal Home Loan

12  Banks of Chicago, Boston and Indianapolis, the Union Central

13  parties, and Cambridge Place.  And I'm pleased to report, Your

14  Honor, that each of those four parties have joined into the

15  private securities settlement that's provided for under the

16  plan.

17         So in other words, they've agreed to fall into the

18  same template as the four parties that were part of the

19  mediation.

20         THE COURT:  This is -- the Carpenters case is

21  separate?

22         MR. LEE:  This is separate from the Carpenters case,

23  Your Honor.

24         THE COURT:  Okay.  All right.

25         MR. LEE:  So, in essence, there were twenty private-

1   label securities lawsuits or tolling agreements with twenty

2   parties, and one of our objectives has been to get all twenty

3   of them within the same rubric as the initial four who were in

4   the mediation.  And with respect to these four, and as I'll

5   report, with respect to all of the twenty, they've all

6   effectively agreed to the same plan treatment and the structure

7   provided under the private securities settlement.

8           So actually, Your Honor, so now turning to New Jersey

9   Carpenters.  I think Your Honor knows, we've settled the

10  pending class action --

11          THE COURT:  Yeah, and I saw Judge Baer approved the

12  class action settlement.

13          MR. LEE:  And that, Your Honor, resolves fifty-nine

14  different RMBS securities offerings with a face value of

15  thirty-eight billion dollars.  And approval of that settlement

16  is being sought, obviously, Your Honor, in connection with plan

17  confirmation.  So --

18          THE COURT:  Okay, so --

19          MR. LEE:  -- a lot of things riding on it.

20          THE COURT:  -- it required both the approval of the

21  district court, which has been obtained.  Were there any

22  objections in the district court?  Mr. Etkin, were there any --

23  you can just -- it's Michael Etkin from -- just tell me from

24  there, okay.

25          MR. ETKIN:  Your Honor, there was an objection filed

1    in connection with the judgment reduction language in the
2    settlement agreement before Judge Baer.  That was resolved in
3    advance of the final hearing by virtue of some language
4    changes.
5              THE COURT:  Has that judgment become final yet?
6              MR. ETKIN:  It will likely become final, Your Honor,
7    the latter part of this week --
8              THE COURT:  Okay.
9              MR. ETKIN:  -- or the beginning of next week.
10             THE COURT:  Thank you, Mr. Etkin.
11             Go ahead, Mr. Lee.
12             MR. LEE:  Your Honor, the next set of objections are
13   those that were filed by the various governmental agencies.
14   The first, and I think this is really perhaps the most
15   significant news to report is, that the FHFA as conservator for
16   Freddie Mac, has been resolved under a settlement reached among
17   FHFA, the debtors, and AFI, which AFI publicly reported in a
18   Form 8-K that was filed at the end of last month.  We will be
19   filing a 9019 motion seeking approval of that settlement as
20   part of plan confirmation.
21             Obviously, Your Honor, we're delighted.  It's a very,
22   very significant settlement for confirmation purposes.  Your
23   Honor had expressed some concerns relating to FHFA in prior
24   hearings.  We heard you --
25             THE COURT:  Well, they were separate classified and --

RESIDENTIAL CAPITAL, LLC, ET AL.                    24

1    do they remain -- is the plan being amended, or what is their

2    classification?

3                MR. LEE:  Your Honor, they will remain separately

4    classified, but the plan will be amended to provide for an

5    unsecured claim for FHFA that's entirely consistent with the

6    treatment that's being provided to the other securities

7    claimants.

8                THE COURT:  Okay.

9                MR. LEE:  And that, Your Honor, will resolve about

10   six-billion-dollars'-worth of face value of securities claims.

11               THE COURT:  Does the settlement -- assuming the

12   settlement is approved, they agree to vote in favor of the

13   plan?

14               MR. LEE:  That's correct, Your Honor.

15               THE COURT:  And can -- well FHFA and FDIC were carved

16   out of the third-party nondebtor release.  That remains the --

17   I assume they've settled with AFI, so --

18               MR. LEE:  The carve-out remains, Your Honor, yes.

19               THE COURT:  Okay.  All right.

20               MR. LEE:  Next, I think, to the DOJ.  Your Honor, the

21   Department of Justice initially filed a reservation of rights

22   with respect to the plan and filed reservations with respect to

23   most substantive pleadings that have been filed in this case.

24   There has been a very productive ongoing dialogue with the DOJ

25   really from the outset of this case.  And there is, I think,

RESIDENTIAL CAPITAL, LLC, ET AL.                              25

1  substantial resolution of a number of the issues that the DOJ

2  are most concerned with.

3          THE COURT:  Including the release of Ally?

4          MR. LEE:  Including the release of Ally and including

5  the obligations under the DOJ-AG consent order, which I think

6  is the principal one.  And there will be a structure put in

7  place that will come into the form of the amended plan when we

8  file it, that addresses the obligations under the consent

9  order.

10         It's our objective to resolve all of their concerns

11 prior to confirmation.  And I think we're on the right path.

12 The DOJ's been very easy to deal with.  We've made significant

13 progress with respect to all of those issues.  And we hope that

14 we will resolve any of their objections.

15         They have not filed an objection, largely because the

16 parties have been in very productive discussion, and our hope

17 is that they don't, or to the extent that they do, it will be a

18 very limited one.

19         THE COURT:  Okay.

20         MR. LEE:  The next objection -- and this was in

21 relation to confirmation, Your Honor -- is 5415 on the docket.

22 That was filed by thirty-two states and the District of

23 Columbia, as party to the DOJ-AG consent order.  And that

24 objection seeks to make sure they can enforce any nonmonetary

25 obligations under the consent judgment that remain after the

 1  effective date.  And that's precisely the structure of what we
 2  were intending to address with the Department of Justice, which
 3  is, in effect, put in place a structure so that there is
 4  comfort that the post-effective date obligations are met
 5  monetarily.  And that will be the resolution that's ultimately
 6  folded into the plan.
 7          The next three objections, Your Honor, were filed by
 8  taxing authorities.  There's Nassau County, San Bernardino, and
 9  Los Angeles County.  And they're basically seeking comfort on
10  how their claims are going to get treated under the plan.
11          We have resolved the Nassau County claim for roughly
12  56,000 dollars in property taxes.  We did that prior to the
13  disclosure statement.  And subsequent to that, we've reached
14  agreements in principle resolving San Bernardino's claim, which
15  was for about 23,000 dollars in property taxes, and Los Angeles
16  County's claim which is for about 100,000 in property tax
17  claims.  And we're working to finalize stipulations,
18  formalizing each of those agreements.  And we'll file all of
19  those prior to confirmation.
20          The next set of objections were filed by RMBS
21  claimants:  Amherst, Monarch, and Stonehill.  The Amherst
22  objection was resolved by incorporating certain requested
23  amendments to the RMBS trust mechanism under the plan, and
24  obviously Monarch and Stonehill were disposed of by their
25  withdrawal of the objection to the FGIC settlement.

1          That brings us to -- I think this was a question Your

2     Honor had before about co-defendant and indemnity claimants.

3     And I think this is another fairly significant resolution that

4     heads us towards largely uncontested confirmation hearing.

5     Your Honor will recall that we received two objections from

6     co-defendants in securities litigation.  I believe that was

7     Citigroup, Deutsche Bank, Goldman Sachs, UBS, and Credit

8     Suisse.

9          THE COURT:  These were all co-defendants in the case

10    before Judge Cote?

11         MR. LEE:  In front of -- I think that's correct, Your

12    Honor.  Yeah.

13         THE COURT:  All right.  That AFI was a defendant.  The

14    complaint was amended to remove the debtors after the

15    bankruptcy petition?

16         MR. LEE:  Yeah.  And it was -- Your Honor, it's

17    actually, they are both co-defendants in that and in other --

18         THE COURT:  Okay.

19         MR. LEE:  -- in other lawsuits as well --

20         THE COURT:  All right.

21         MR. LEE:  -- Your Honor.

22         And those objections have been resolved through

23    amendments to the judgment reduction provision under the plan.

24    So they -- none of this group filed objections to confirmation

25    based on the language that's been agreed.

1          THE COURT:  And is the settlement -- does the

2    settlement before Judge Cote require approval or -- I guess

3    probably not?

4          MR. LEE:  The FHFA settlement?

5          THE COURT:  Yeah.

6          MR. LEE:  Not that I'm aware of, Your Honor, no.

7          THE COURT:  Okay.  And was the judgment reduction

8    provision incorporated in the judgment that settles the action

9    before Judge Cote?

10          MR. LEE:  Your Honor, I can discuss that with AFI.

11          THE COURT:  Yeah.

12          MR. LEE:  I -- as I said, we've reached an agreement.

13    I'm not sure --

14          THE COURT:  All right.

15          MR. LEE:  -- what's been -- I don't think anything's

16    been placed in front of Judge Cote at this time.  One second.

17          Your Honor, I'm advised that it hasn't been resolved,

18    but the likelihood is that the case will just be dismissed.

19          THE COURT:  Okay, all right.  Okay, go ahead.

20          MR. LEE:  Your Honor, the final set of objections in

21    the chart were filed by various creditors first --

22          THE COURT:  Let me just -- Credit Suisse falls into

23    that same category as the Citibank, Deutsche Bank, Goldman,

24    UBS?

25          MR. LEE:  That's correct, Your Honor.

1           THE COURT:  Okay.

2           MR. LEE:  The first claimant in this section is the

3   objections filed by the PBGC with respect to the pension

4   obligations of the debtors and Ally.  After the PSA was

5   approved, there have been a number of discussions with the

6   PBGC, and we've resolved the treatment.  I think it's about 153

7   claims that they filed totaling approximately 10.3 billion

8   dollars of claims.  Those have been resolved by AFI agreeing to

9   exclude obligations for the GMAC Mortgage Group pension plan

10  and ERISA obligations.  And so the PBGC obviously, did not file

11  an objection to confirmation.

12          The next party on the list, Impac, I think that was a

13  cure claim objection, Your Honor, filed objections to both the

14  plan and disclosure statement regarding the treatment of their

15  executory contracts under the plan.  And we are in -- we're in

16  settlement discussions with Impac.  And if we're unable to

17  reach an agreement prior to the adjourned hearing, which I

18  think is November the 15th, on our motion to assume and assign

19  that contract, then we'll prosecute the objection.  And we

20  think that the result of that objection will largely moot their

21  claim.

22          The next objection which is 5404, was filed by Oracle

23  America.  They're seeking comfort language regarding the

24  treatment of their software licenses under the plan.  We're in

25  discussions with Oracle, and we think that we'll be able to

1    resolve that objection prior to confirmation.

2              Docket num --

3              THE COURT:  Just -- Ocwen was continuing to use the

4    debtors' software, am I right?  And we're going to be phasing

5    that out --

6              MR. LEE:  That's correct.

7              THE COURT:  -- and moving the platform over to their

8    own existing software.

9              MR. LEE: Sorry, Your Honor.

10             THE COURT:  Come on up to the microphone.  You have to

11   identify yourself.

12             MR. DOSHI:  Sorry, Your Honor.  Amish Doshi, for the

13   record, for Oracle America, Inc.  Actually, there was a

14   separate paragraph in the sale order that there's going to be

15   no transfer, assumption and assignment of any Oracle agreements

16   to Ocwen, and that to the extent any computers, et cetera, were

17   being transferred, the software was going to be transferred.

18   And if Ocwen works out of -- I believe there's a different

19   arrangement, not in the bankruptcy, between Ocwen and Oracle,

20   because there's other relationships.  But with respect to the

21   sale, there's specific language excepting out the transfer of

22   the Oracle software.

23             THE COURT:  Okay.  Thank you very much.

24             MR. DOSHI:  Thank you.

25             THE COURT:  Go ahead, Mr. Lee.

1          MR. LEE:  So PNC Mortgage, Your Honor, filed an

2     objection to plan confirmation which was docket 5406.  That

3     objection relates to Ally Bank's obligations under various

4     servicing agreements.  That objection has been resolved, and it

5     was withdrawn.  I think that withdrawal is reflected on docket

6     5578.

7          The final objection on the chart is 5461 from Ocwen.

8     That requested clarifications and assurances regarding the

9     treatment of their contracts after the effective date.  I think

10    we are very close to reaching agreement with Ocwen on language

11    to be included in the confirmation order which addresses their

12    objection.

13         THE COURT:  Okay.

14         MR. LEE:  Turning to page 11 of the chart, Your Honor,

15    what I'm hoping to do here is to highlight some of the claims

16    resolutions since the PSA hearing that we think have largely

17    avoided the filing of confirmation objections altogether.  And

18    those are listed in part B, beginning on page 11.  And again,

19    most of these resolutions, if not all of them, are tied to plan

20    confirmation.

21         The first set of parties in this section are the

22    settling private securities claimants.  And I think I

23    addressed, Your Honor, that all twenty of the private

24    securities claimants are now folded into the private securities

25    trust.  So we won't have any objections from that group.

1            The second set of claims in this section are the

2    borrower class action claims that have been settled.  And what,

3    Your Honor, is reflected on here, is a number of class actions

4    with at least damages claimed of in excess of 3.7 billion

5    dollars.  We've reached settlements with each of these

6    plaintiffs groups, and that includes the Kessler group as well.

7            We are working to finalize agreements and 9019 motions

8    with respect to each of these.  I'm happy just to briefly

9    describe what they are.

10           THE COURT:  Are there nondebtor defendants in those

11   actions?  And I don't know whether those actions have been

12   continuing in state or federal courts against the nondebtor

13   defendants.

14           MR. LEE:  There's a combination of both, Your Honor.

15   But specifically, for example, taking the first one, which is

16   Moore, which has a combination of both debtor and nondebtor

17   defendants, effectively the economic contribution's going to

18   come from CapRe of Vermont, which is a nondebtor, and that will

19   effectively dispose of the case entirely.

20           THE COURT:  Okay.

21           MR. LEE:  So they're all listed here, Your Honor.  I'm

22   happy address each one of them, or just --

23           THE COURT:  Let me ask this.  Have any of the

24   nondebtor defendants in those actions filed proofs of claim for

25   indemnity or contribution in the Chapter 11 cases?

RESIDENTIAL CAPITAL, LLC, ET AL.                              33

1          MR. LEE:  I'm just going through my list, Your Honor.

2   Just one second.

3          THE COURT:  And if you can't answer that today,

4   we'll --

5          MR. LEE:  I will go back and check, Your Honor, for

6   absolutely certainty.  But I believe the answer is no.  But I

7   will confirm --

8          THE COURT:  Okay.

9          MR. LEE:  -- at the next status conference.

10          Turning now to page 12.  It's the -- lists other

11   significant claims that have been settled.  The first is

12   Bollinger, which was a fair labor standards and wage hour claim

13   that's been resolved.  West Virginia Investment Management

14   Board, which is a --

15          THE COURT:  When you say those have been resolved, am

16   I going to get 9019 motions with respect to these?

17          MR. LEE:  Your Honor, some of these are going to be

18   through 9019s, but by and large, most of these are going to be

19   funneled through the borrower trusts.  So effectively, I think

20   all of these -- all of these will be wound into the borrower

21   trust.

22          THE COURT:  Okay.

23          MR. LEE:  So I'm not sure that any of these,

24   potentially with the exception of Moore, will require a

25   separate 9019.

1          So I was at West Virginia Investment Management Board.

2     That's a seven-and-a-half-million-dollar securities claim

3     against RFC and RALI, Rali.  That claim has been settled for

4     223,000 dollars, so again, within the rubric of the other

5     securities settlements that have been reached in this case.

6          The Miller Johnson claims are 151 claims filed by

7     holders of certificates in the debtors' RMBS securitizations

8     with a face value of about 7.2 billion dollars.  Pursuant to

9     the terms of a stipulation that Your Honor approved in

10    September -- I think it was at docket 5050 -- the claimants

11    acknowledge that those claims were duplicative of the claims

12    that the RMBS trustees have, and that they will be resolved

13    through the RMBS trust settlement, provided the plan is

14    confirmed.

15         We've also reached agreements in principle resolving

16    RMBS claims filed by Lehman Brothers and Met Life, and similar

17    to the Miller Johnson settlement, those will be expunged,

18    provided the plan is confirmed.  We will be finalizing

19    stipulations to that effect.

20         So that, Your Honor, brings us to the unresolved plan

21    objections, which are listed in part C of the chart, beginning

22    on page 13.

23         And I think, given that I spent the first twelve pages

24    talking about what we've actually resolved for a case this size

25    and this complexity, it's remarkable how little we really have

1   left.

2            THE COURT:  Why doesn't it seem that way to me?

3            MR. LEE:  Because you didn't have to do the other

4   twelve pages, Your Honor.  I understand.  I understand.

5            I think -- Your Honor, I think our promise was to try

6   as hard as we could to get you a global consensus at

7   confirmation.  And I think what's left is really reflective of

8   the fact that one party with whom we've been unable to reach

9   agreement with is the same party that we've been unable to

10  reach agreement with from -- for a while.

11           And as a result of Your Honor's efforts and the

12  efforts of Judge Peck, the committee, and Mr. Kruger, what's

13  left are the JSN objections; and everything else really relates

14  to the scope of third-party releases and exculpation.

15           I'm not going to address the JSN position, arguments,

16  or their place in this case.  I think we'll address their

17  objection fully at confirmation.  I'm not sure it really makes

18  any sense to get into any details --

19           THE COURT:  It doesn't.

20           MR. LEE:  -- here today.

21           I would note that we've included in the category of

22  plan objections one that was filed by Wells Fargo, which is at

23  docket 5410.  And that's really an objection that arises out of

24  the JSN objection to confirmation.  I gather that Wells Fargo

25  is concerned that the junior secured noteholders will sue them

1  in connection with collateral releases, and they want to

2  preserve their rights to seek indemnity from the debtors

3  notwithstanding the releases under the plan.  And obviously,

4  Your Honor, I don't anticipate that that objection is going to

5  get resolved prior to confirmation.

6          The next unresolved plan objection is that that was

7  filed by the U.S. Trustee's Office.  Your Honor, we've been

8  working for the past several months to address various concerns

9  raised by the DOJ who hasn't objected.  And obviously we've had

10  discussions with the U.S. Trustee's Office.

11          The U.S. Trustee's objection relates to the third-

12  party release and the exculpation provisions, and we'll be

13  presenting arguments at confirmation addressing those.  I think

14  it's worth really previewing at least a couple of the sticking

15  points on exculpation and the releases so that Your Honor

16  understands what they are.

17          The U.S. Trustee's arguing, I think, that this court

18  lacks jurisdiction to issue nondebtor releases for liabilities

19  that relate to something other than property of the estate.  I

20  think Your Honor dispensed with that argument or at least a

21  similar argument in MF Global, I think it may have been in

22  March of April of this year.  And we'll fully brief the issues

23  relating to third-party releases and we'll put on our evidence

24  at confirmation.  But we think that we'll be able to show that

25  this is the unique case that justifies it, and that we meet the

1   Metromedia standards.

2          And as to jurisdiction, I think Your Honor has already

3   indicated --

4          THE COURT:  I didn't rule.  I raised -- but certainly

5   we've had this discussion before.  And as I understand it, AFI

6   filed claims in the case for indemnification or contribution --

7   I don't know precisely what they were -- and that the timely

8   assertion of those proofs of claim would establish the basis

9   for jurisdiction by this Court, because it would have an effect

10  on the res of the estate.  So that -- and I understand, Mr.

11  Masumoto, you may contest that -- I'm not asking you to deal

12  with that.  But at least that's a comment I've made before, and

13  it may be the U.S. Trustee will argue that there's some facts

14  that distinguish the circumstance.

15         And then it became a Metrome -- assuming that the

16  jurisdiction is satisfied, then it becomes the Metromedia test.

17         MR. LEE:  And we will put on evidence at the

18  confirmation relating to the substantial contributions made by

19  AFI, both throughout the life of the case and in the form of

20  the 2.1-billion-dollar settlement to address the Metromedia

21  standards.

22         THE COURT:  May I ask this?  What parties-in-interest,

23  other than the UST, are objecting to the third-party nondebtor

24  releases?

25         MR. LEE:  With the exception of the junior secured

1  noteholders?

2          THE COURT:  Well, did they -- have they objected?  It

3  wasn't clear to me they were objecting to the third-party

4  releases.  Did they?

5          MR. LEE:  I be -- yeah, as it applies to their claims,

6  that's correct, Your Honor.

7          THE COURT:  Okay.

8          MR. LEE:  And then with respect to the DOJ, we

9  obviously have a carve-out, so --

10          THE COURT:  Right.

11          MR. LEE:  -- there's no need for them to object.  And

12  reviewing the rest of the objections, there's an objection

13  which was a late-filed objection at docket number 5422 by an R.

14  Flinn, which --

15          THE COURT:  Where do I find that?

16          MR. LEE:  That is on page 16, Your Honor.  I believe

17  that's the other one.

18          THE COURT:  Has --

19          MR. GRAHAM:  Your Honor?  Excuse me, Your Honor.

20          THE COURT:  Come up to the microphone if you want to

21  speak.

22          MR. GRAHAM:  Good afternoon, Your Honor.  Chris Graham

23  of McKenna Long for Impac Funding Corporation.  We have also

24  raised an objection about the jurisdiction of the Court to

25  enter the third-party releases.  And I'll be happy to address

1    that when Mr. Lee concludes.

2                THE COURT:  Okay.

3                MR. GRAHAM:  It's on page, 9, Your Honor, of the

4    debtors' chart, right at the top.  The last bullet point:  "The

5    bankruptcy court lacks jurisdiction to approve the third-party

6    releases."

7                THE COURT:  Okay.

8                MR. GRAHAM:  We have two other objections.

9                THE COURT:  Are you as optimistic as Mr. Lee that

10   you'll be able to resolve Impac's objections with the debtor?

11               MR. GRAHAM:  Your Honor, I always believe in triumph

12   of hope over experience.  We didn't -- we've made a lot of

13   progress with the debtors in the last couple of weeks.  We

14   didn't make any progress for a long time.  We're still far

15   apart, but we are making progress.

16               THE COURT:  Okay.  All right.  Thank you very much.

17               Let me come back to my question and make sure I

18   understand -- and I understand the U.S. Trustee's objection.

19   Has the balloting deadline passed?  I'm totally --

20               MR. LEE:  Yes, Your Honor, it has.

21               THE COURT:  Okay.  And so the solicitation materials

22   went out with -- I guess remind me now.  There was an

23   opt-out -- no, I guess there was a statement that if you vote

24   in favor of the plan, you agree to the --

25               MR. LEE:  Correct.

1        THE COURT:  -- release.  So have you tried to define

2   the universe of creditors who have voted against -- I'm just

3   trying to understand -- if I don't today that's okay -- but

4   when we get a little further along, not too much further along,

5   I'd like to have -- I understand the U.S. Trustee has objected

6   on this ground -- I'd like a better understanding of who are

7   the remain -- who has voted against and preserved that argument

8   with respect to the nondebtor release?

9        If you didn't vote against -- if you voted and you

10  didn't vote against -- I mean, because I suppose if there was a

11  class that didn't get to vote, it would be a different issue --

12  but if you didn't vote against, the -- I think we had this

13  discussion at the time of the disclosure statement that it's

14  very strongly arguable that it's a consensual release.  And so

15  I would certainly hope that the U.S. Trustee would take that

16  into account as well.

17       I mean, is -- so the issue is what non-consensual

18  releases -- everybody who signed the PSA agreed, that's in the

19  PSA, that there was going to be a release of Ally?  It's built

20  into the plan?

21       MR. LEE:  And there have been thou -- I mean,

22  thousands of claims have either been resolved, settled, or

23  expunged.  So I think -- I mean, I can't --

24       THE COURT:  Okay.

25       MR. LEE:  -- the people who've objected are the only

1  ones who would fit within the category of voting against the

2  plan and preserving an argument against releases.  But I'm not

3  aware of any third-party litigation in which AFI or Ally is

4  otherwise involved that's not now the subject of a resolution.

5  And I think there's some issues relating to Wells, but --

6          THE COURT:  Okay.

7          MR. LEE:  -- that's a separate bank account --

8          THE COURT:  Right.

9          MR. LEE:  -- agreement which quite frankly, if we

10  spent more than twenty seconds on it again in this case, I'd --

11  whatever.

12          So --

13          THE COURT:  Does somebody else want to be heard on

14  this point?  You want to just come on up quickly.

15          MR. DONNELL:  Your Honor, Jim Donnell, D-O-N-N-E-L-L.

16  Just for the record, for WFBNA.  We have objected --

17          THE COURT:  I'm sorry, who are you appearing on behalf

18  of?

19          MR. DONNELL:  WFBNA.  It's Wachovia and Wells Fargo

20  Bank.  So we have an ongoing dispute with AFI we're trying to

21  preserve our rights under for indemnity in our deposit

22  agreement.  We've objected to the third-party release, not so

23  much on the basis for what the U.S. Trustee did, but for our

24  particular agreement, we argue there is no indemnity right, so

25  there's no basis for jurisdiction.  And then we have other

RESIDENTIAL CAPITAL, LLC, ET AL.                    42

1  arguments that we make for asserting that it's inappropriate to

2  give the release.

3              THE COURT:  Okay.

4              MR. DONNELL:  Thank you.

5              THE COURT:  Do you want to be heard?  Come on up

6  quickly.

7              MR. SCHAFFER:  Your Honor, Eric Schaffer for Wells

8  Fargo as collateral agent.  The debtor has characterized our

9  objection as relating to the junior secured noteholders.  I

10  think that's correct.  But we have our own separate issues

11  based on Wells Fargo's own claims.

12             THE COURT:  Okay.  Including with respect to the

13  third-party release?

14             MR. SCHAFFER:  Yes, Your Honor.  We have raised

15  questions with regard to the third-party releases, and I won't

16  go into them now.

17             THE COURT:  No, not necessary.

18             Okay, go ahead, Mr. Lee.

19             MR. LEE:  So just staying on the subject of releases

20  or at least moving to exculpation, the U.S. Trustee opposes the

21  exculpation of non-estate fiduciaries, and we believe that's

22  warranted here with respect to each of the exculpated parties,

23  including non-estate fiduciaries.  And we'll present that at

24  confirmation.  And then there's the question about the scope of

25  the --

RESIDENTIAL CAPITAL, LLC, ET AL.                    43

1         THE COURT:  I guess, you'll present it.  I'll hear it.

2    The Second Circuit hasn't resolved it.  The law elsewhere isn't

3    too particularly favorable to you, but --

4         MR. LEE:  So I may be misreading or reading into the

5    General Maritime case, at least the notion that one can take

6    out of that that "actions taken in connection or arising out

7    of" language in there, if you have somebody vote in the

8    formulation of a plan who's a non-estate fiduciary, the

9    concept, I think would be to expand that.  So we'll argue that

10   at confirmation.

11        THE COURT:  Was that an objection that was pressed at

12   the General Maritime confirmation?  I just don't remember.

13        MR. LEE:  Your Honor, it --

14        THE COURT:  You know, you have to be real careful

15   about telling me what order I signed when it wasn't contested

16   and when I've ruled on what is contested.

17        MR. LEE:  Your Honor, that wasn't -- the question that

18   was contested didn't go precisely to that issue.  And the same

19   was true in relation to Eastman Kodak.  There were objections,

20   and the language ultimately was incorporated into both of the

21   plans.  That's probably where we'll --

22        THE COURT:  Okay.

23        MR. LEE:  -- work from, Your Honor.

24        And then I think, Your Honor, there's the question

25   about the scope or at least the vagueness of the exculpation

1    provision that the U.S. Trustee has raised.  And we plan to

2    make changes to the exculpation provision to have the normal

3    language, clarifying the ability of the U.S. to enforce its

4    police, regulatory, criminal, taxing powers.  And we expect or

5    at least hope that those modifications will resolve the U.S.

6    Trustee's objection.

7         So with that, I think I'd, if I may, turn it over to

8    Mr. Eckstein, unless Your Honor has any questions?

9         THE COURT:  Well, are you going to go through the

10   borrower objections?

11        MR. LEE:  Yes, I'm happy to do that, Your Honor.

12        THE COURT:  You can just go through them quickly.

13        MR. LEE:  So the third bucket of unresolved objections

14   were filed by borrowers.  Your Honor, by and large, these

15   filings don't appear to raise any objections to confirmation.

16   It seems that they may have been submitted because borrowers

17   didn't really fully understand the effect of confirmation on

18   their claims.  So what we've done is we've asked

19   SilvermanAcampora to reach out to each of the borrowers to try

20   and resolve their objections.  Insofar as they actually relate

21   to confirmation, we'll make that clearer to Your Honor.  But as

22   things currently stand, they don't appear to relate to

23   confirmation.

24        And then the remaining objections by borrowers were

25   filed by Wendy Nora, or are joinders to her objection.  And we

1  don't anticipate a consensual --

2          THE COURT:  I don't anticipate --

3          MR. LEE:  -- resolution to that.

4          THE COURT:  -- a consensual resolution to that.

5          MR. LEE:  That, Your Honor, leaves five remaining

6  objections, which seem to raise arguments specific, at least,

7  to the objecting parties, which again, we'll try and resolve

8  those prior to confirmation.

9          The first one relates to insurance neutrality that was

10 filed by Lloyds and others.  I believe counsel for WFBNA rose

11 to make a point that I would have made.  Hopefully we will

12 resolve that objection.  That relates to the closed deposit

13 account that I think we've heard something about during the

14 course of this case.  And then I've described Flinn.

15         And I believe -- the only other one I'd like to note,

16 Your Honor, is Deutsche Bank.  We've resolved the effect of the

17 judgment reduction provision, but there appears to be some

18 additional arguments that are being made by Deutsche Bank that

19 we hope, again, to resolve that language prior to confirmation.

20         THE COURT:  Okay.

21         MR. LEE:  Thank you, Your Honor.

22         THE COURT:  Mr. Eckstein?

23         MR. ECKSTEIN:  Your Honor, good afternoon.  Kenneth

24 Eckstein of Kramer Levin on behalf of the official creditors'

25 committee.  I have relatively little that I need to add to Mr.

RESIDENTIAL CAPITAL, LLC, ET AL.                    46

1   Lee's presentation.

2           But just to step back.  If Your Honor recalls, I think
3   at the conclusion of the presentation of the evidence at the
4   phase 1 trial, the suggestion of this conference, I think,
5   arose.  And it was really designed not to go into the merits of
6   the issues.  Obviously they're going to be presented in great
7   detail in connection with confirmation.  But it was really to
8   aid the Court in trying to assess, as a practical matter, just
9   what is and what is not left for the Court to have to consider,
10  because I think Your Honor at the time had -- the objections
11  had just come in.  They did look quite voluminous.  And the
12  Court didn't have an opportunity at that point in time to
13  really assess just the level of progress that had been made.

14          And I was hopeful that by today we'd be able to make
15  this presentation.  And in fact, I'm sure Your Honor has noted
16  from Mr. Lee's presentation that, for example, the contested
17  hearing that was scheduled for February -- November 15th, right
18  now, for example, on Syncora, hopefully will not have to go
19  forward, because we have been able to arrive at an agreement
20  with Syncora that is being documented, and hopefully that will
21  be concluded in short order.

22          Over the last just frankly two weeks, the FHFA issues
23  have been resolved.  These are major -- these were major
24  hurdles that we'd all identified.  At the disclosure statement,
25  Your Honor had identified them.  The co-defendants, as Mr. Lee

1  pointed out, were a major hurdle that have now been resolved
2  consensually.  And several of the borrower class actions, where
3  there were very significant claims against AFI, have also been
4  resolved.  And while there'll obviously need to be a
5  presentation on the third-party release and the exculpation, I
6  think we all recognized, the Court made it clear from day one,
7  the release and exculpation issues in this case were
8  challenging.  And they remain challenging.
9          But I think what Mr. Lee's presentation should provide
10  some comfort to the Court, is that in fact, this case today --
11  put the JSN issues to one side, because this is not about that
12  discussion at the moment -- this case is now largely a case
13  where there is substantial consent.  And I think that -- from
14  my perspective, I think that was the most important message to
15  try to convey to the Court, that when the Court is going to be
16  asked to consider a third-party release of this breadth and
17  magnitude, which we all know, going into the plan, was an
18  ambitious undertaking, in addition to being able to demonstrate
19  the substantial contribution that was made, that I think was
20  evident from the agreement that was reached in May, seemed to,
21  from the way I was looking at this, we also had to bring to the
22  Court the second prong, which was, is there, in fact,
23  substantial consent.
24          And while Your Honor will obviously want to see the
25  votes and I think Your Honor will be quite comfortable from the

1    voting, the practical reality is every lawsuit where there were

2    third-party claims, both direct or indemnity co-defendant type

3    claims, we believe today, have essentially been resolved.  And

4    that from the standpoint of the plan proponents that was, we

5    though, the most valuable thing we could communicate to the

6    Court in advance of confirmation is that to the extent there is

7    going to be consensus around the third-party release, we

8    believe that has been achieved.

9         Obviously there's a legal question Your Honor will

10   have to answer in the third-party release and the exculpation.

11   But when the U.S. Trustee looks at the third-party release and

12   when the Court looks at the third-party release, we thought

13   that it will go a great deal down the road, if the Court can

14   look at it from the standpoint of having achieved a consensual

15   third-party release, rather than a nonconsensual third-party

16   release.

17        And to that end, that is the -- that's the significant

18   new development that we can now present to the Court, which is

19   that we'll go into confirmation and basically propose the

20   approval of the release in the context of what we think is

21   essentially going to be a consensual presentation.

22        And the fact is that while the JSN issues raise a lot

23   of complexities and complications, at this point in time, all

24   of the other confirmation issues, which are frankly of

25   tremendous importance, and there are thousands and thousands of

1  categories of creditors that have significant interest in this

2  case, each of whom could have credibly presented issues as

3  complex as the JSNs.  We could have had -- literally run

4  through every category of creditor in this case, and we would

5  have had hundreds of pages of findings of fact and conclusions

6  of law dealing with each of the issues that could have been

7  disputed.  The reality is, those issues for the most part,

8  today, are resolved.  There are no substantial issues that

9  remain open.  There are a couple of isolated items.  And

10  hopefully we will get them resolved between now and

11  confirmation.

12          But I think at this point in time, I would be able to

13  characterize this plan, with the JSN issues to one side, as

14  essentially a consensual confirmation.  And we thought that was

15  worth the Court hearing today with the detail that Mr. Lee laid

16  out, rather than just saying it generally.  But that, we

17  thought, was a very significant development in the case that we

18  really hadn't reached until now.

19          THE COURT:  Okay.  So, until today, I haven't

20  established the trial procedures for the contested confirmation

21  hearing:  how long that hearing will last, et cetera.  I

22  certainly wanted to wait to get a better sense of what are the

23  factual issues as to which the Court will have to hear

24  evidence.

25          I know there's been depositions going on.  Other

1    than -- let me ask you this, Mr. Eckstein or Mr. Lee:  putting

2    aside the issues with the JSNs, what other objection -- what

3    other evidence do you anticipate offering during the

4    confirmation hearing.  As I think everybody should know by now,

5    my practice is to require the written direct testimony with

6    declarants present and available for cross-examination in

7    court.

8            You know, you're going to make a showing under

9    Metromedia.  That's an evidentiary showing.  It doesn't

10   specifically refer to the JSNs.  I don't know what other --

11   somebody tell me what issues do you anticipate offering

12   evidence?  And I don't care whether Mr. Kerr or Mr. Lee or

13   yourself address the issues.

14           MR. ECKSTEIN:  Your Honor, Mr. Kerr was prepared to

15   make a presentation as the second half of this status

16   conference.  He was going to make a presentation on --

17           THE COURT:  Okay.  I'll wait.

18           MR. ECKSTEIN:  -- how we're going to proceed with the

19   confirmation hearing.  The short answer is that we have a

20   comprehensive factual presentation that is going to come in --

21           THE COURT:  Okay.

22           MR. ECKSTEIN:  -- through declarations to support each

23   of the elements of both 1129 and the elements of the global

24   settlement.

25           THE COURT:  All right.  So let me first ask, is there

1   anybody else who -- before we get to that second half, is there

2   anyone else who wishes to be heard with respect to objections

3   or to the upcoming confirmation hearing?

4          MR. GRAHAM:  Your Honor?

5          THE COURT:  Yeah, please.

6          MR. GRAHAM:  Good afternoon, Your Honor.  Chris Graham

7   again, from McKenna Long, for Impac Funding Corporation.

8          I came up earlier, Your Honor, to talk about the

9   releases.  That's actually part of our objection.  I won't talk

10  about that, because I think that's been covered ad nauseam.  I

11  will talk about the other part of our objection, which is 365,

12  which, to make it very brief, Your Honor, I believe it's just

13  eight words in Section 365(d) which requires an executory

14  contract to be assumed by the debtor "at any time before the

15  confirmation of a plan".  Those eight words, Your Honor, make

16  the plan unconfirmable and violative of 1129.

17         THE COURT:  You know, there's -- I know those words

18  are there, and I think in every case that I've had, that's gone

19  to confirmation, where there have remained assumption disputes,

20  the parties have agreed to carry the assumption issues, in

21  part, because they want to see whether the plan gets confirmed,

22  and reserving all their rights.  And you're telling me that

23  you're insisting that your assumption issue be resolved by the

24  Court before confirmation.  Is that what you're telling me?

25         MR. GRAHAM:  Your Honor, I believe the debtors have

1    filed a motion to that effect.

2            THE COURT:  Well, they can file their motions, but are

3    you telling -- what's your position?  Are you telling me that

4    this issue of assumption, as to Impac, has to be resolved

5    before the confirmation hearing?

6            MR. GRAHAM:  I believe it does, Your Honor.

7            THE COURT:  What's --

8            MR. GRAHAM:  I think the law is clear on that.

9            THE COURT:  I know what the Code says.

10           MR. GRAHAM:  Right.

11           THE COURT:  I also know the stipulation that's been

12   reached in virtually every case I've had.  In every big case,

13   there are assumption issues which continue on after the

14   confirmation hearing, because, A, the parties want to see is

15   the plan really going to be confirmed.  And then, I have to

16   tell you, in every one of them where it's been deferred past

17   confirmation, every one of them settled.  I've never actually

18   had to try one of them.  But I know what the language of the

19   Code is.  I want to know what your position is, and then I'll

20   ask Mr. Lee.

21           MR. GRAHAM:  Sure.  I mean, Your Honor, I think the

22   reason why those stipulations typically get entered into is

23   because the stipulations typically do not allow the debtor to

24   have any type of leverage or, sort of, a get-out-of-jail-free

25   card.  The problem with --

RESIDENTIAL CAPITAL, LLC, ET AL.                    53

1          THE COURT:  I really just want to know the answer to

2    my question.

3          MR. GRAHAM:  Sure.  The answer to your question, Your

4    Honor, is if the plan is amended to take out the debtors'

5    ability to change their mind about assumption and rejection

6    post-confirmation, then yes, we can stipulate and we'll resolve

7    it after the fact.  But if we are going to stipulate to allow

8    them to have more time to decide whether or not to assume or

9    reject, and pay or not pay our cure amounts, then Your Honor,

10   no, that's not a stipulation.  Only a fool would recommend a

11   client enter into that type of stipulation in a bankruptcy

12   context, when the Code is clear.  The Supreme Court, in

13   Bildisco, which caused Congress to change the --

14         THE COURT:  I know --

15         MR. GRAHAM:  -- Bankruptcy Code --

16         THE COURT:  Excuse me.  I know what the law is.

17         MR. GRAHAM:  Your Honor --

18         THE COURT:  I also know what happens in virtually

19   every case I've had before me where this issue has come up.

20   You've stated your position.

21         MR. GRAHAM:  Thank you, Your Honor.

22         THE COURT:  What's your position, Mr. Lee?

23         MR. LEE:  Your Honor, we've set this for a hearing on

24   November the 15th.  If we have to proceed with the hearing on

25   the 15th, the question relates solely to one issue, Your Honor,

1  the amount of the cure claim; that's what this is about.  This

2  is just a question of how many dollars it's going to require to

3  cure this contract.  So we'll either resolve it before the

4  15th, Your Honor, or if we have to go ahead --

5          THE COURT:  Okay.  Well, I've made it clear, your

6  ability to resolve it on the 15th depends on whether I'm on

7  jury duty on the 15th.  I begin jury duty in state court in

8  White Plains on the 12th.  And we've moved the calendar to the

9  15th, with the express understanding that I have to be here to

10 be able to have a calendar.  Okay.  I would think the chances

11 of my being on a jury in White Plains on the 15th is not

12 particularly large, but you know --

13         MR. LEE:  Your Honor, I was actually summoned --

14         THE COURT:  -- out of my control.

15         MR. LEE:  I was summoned for jury duty in White Plains

16 at exactly the same time, and I've deferred it to February.

17         THE COURT:  My problem is I've deferred before; I

18 can't defer again.

19         MR. LEE:  Four times, in this case, Your Honor.

20         If I may, Your Honor, should I turn it over to Mr.

21 Kerr?

22         THE COURT:  Yes.

23         MR. LEE:  Thank you.

24         THE COURT:  Well, just a second.  Is the Impac

25 assumption hearing going to require an evidentiary hearing?

1          MR. LEE:  I believe it's scheduled for an evidentiary

2    hearing, Your Honor.

3          THE COURT:  And how many witnesses does the debtor

4    intend to call?

5          MR. LEE:  Your Honor, I don't know, as I stand here.

6          THE COURT:  Well --

7          MR. LEE:  I mean, I can check and find out before the

8    end of this --

9          THE COURT:  Okay.

10         MR. LEE:  -- status conference.

11         THE COURT:  So that we're all operating on the same

12   page, I want all written direct testimony for the Impac hearing

13   filed by noon on November 12th.  That includes all exhibits.

14   It's the debtors' motion, so debtor pre-marks all exhibits with

15   numbers; Impac pre-marks all exhibits with letters.  Any

16   exhibits not -- so I want the direct testimony, I want all

17   exhibits.  Any exhibit not exchanged by the 12th will not be

18   admitted in evidence at the hearing.  I want -- do I have all

19   the briefs with respect to this dispute, Mr. Lee?

20         MR. LEE:  Not yet, Your Honor.  We were supposed to

21   file a reply, which we can get in as soon as Your Honor wants.

22         THE COURT:  I certainly want it -- I think you ought

23   to get it in by Friday the 8th, okay?

24         MR. LEE:  That's fine, Your Honor.

25         THE COURT:  This Friday.  And so I want the full

RESIDENTIAL CAPITAL, LLC, ET AL.                    56

1  package of exhibits, briefs, any stipulations, if you're able

2  to agree on anything, everything by the 12th.  And we have a

3  very long calendar scheduled for the 15th.  We'll see

4  whether -- how much time do you think is going to be required

5  for an evidentiary hearing, Mr. Lee?

6           MR. LEE:  Your Honor, can I check --

7           THE COURT:  Go ahead and confer.

8           MR. LEE:  -- with the people around me?

9           THE COURT:  Yeah, please.

10          MR. LEE:  Thank you.

11          UNIDENTIFIED SPEAKER:  Your Honor?

12          THE COURT:  Go ahead and confer with Mr. Lee or his

13  colleagues.

14          MR. LEE:  Your Honor, I think probably two to three

15  hours, at most, and hopefully even shorter.

16          THE COURT:  All right.  The evidentiary hearing is

17  tentatively established for November 15th at 1:30 p.m.  And as

18  I said, I want everything by the 12th.  And the only two things

19  that would alter that schedule are an agreement by the parties

20  to put it off post-confirmation, or me being on a jury or being

21  in -- waiting to see what happens in White Plains.  So -- okay.

22          MR. LEE:  And a third possibility is we will get it

23  resolved, Your Honor.

24          THE COURT:  Well, yeah --

25          MR. LEE:  We'll do our best.

RESIDENTIAL CAPITAL, LLC, ET AL.                    57

1          THE COURT:  -- that would be the best of all possible

2    worlds.

3          MR. LEE:  Thank you, Your Honor.

4          THE COURT:  Okay.  All right.  Mr. Kerr?

5          MR. KERR:  Good afternoon, Your Honor.  Charles Kerr

6    of Morrison & Foerster on behalf of the debtors.

7          Your Honor, we have been working extremely hard to

8    prepare for the confirmation hearing starting on November 19th,

9    as well as the phase 2 parts of the adversary proceeding.  We

10   have -- following Mr. Lee's approach, have been trying to both

11   narrow the issues but narrow the procedural hurdles that we can

12   get done beforehand, to make the presentation that we need to

13   do on the 19th as straightforward and easy as possible.

14         That being said, there will be issues, we are going to

15   be putting in submissions, and I wanted to go through the

16   procedures that the parties are trying to agree to do.  And I

17   think -- I will say this, I think the parties have worked well

18   together to try and get this -- we're still doing a lot of work

19   and we have more work to do, but we have all been working hard

20   at trying to make the presentation to Your Honor as

21   straightforward as we can.

22         It has been somewhat of a unique process, only because

23   there are going to be a confirmation hearing where we're

24   putting on evidence to support the plan as well as evidence as

25   part of the phase 2 issues, and melding those two different

1  proceedings into one has, as times, proved challenging.  But I

2  think we're doing it, and I want to explain how we plan to do

3  it, if we can.

4       There is evidence that we are going to be submitting

5  for plan confirmation that also potentially relates to the

6  phase 2 issues, and a little back and forth as well.  Our plan

7  is, however, to kind of put our evidence in.  In other words,

8  come in and just put our evidence in, and not try to stage it

9  or through some elaborate process, instead do it as efficiently

10 as we can.

11      As provided for in Your Honor's August 23rd order, we

12 will be submitting -- at least the plan proponents will be

13 submitting a confirmation brief, a brief in support of

14 confirmation, on November 12th.  We will also be submitting an

15 omnibus reply to any objections that are remaining.  Hopefully,

16 as Mr. Lee walked through with Your Honor, there's not a lot

17 remaining, but there will be some, and we will be putting in an

18 omnibus reply.

19      We've also been working hard with the JSNs to come up

20 with a schedule by which to complete the pre-trial steps we

21 need to do to give Your Honor the package that Your Honor

22 expects and demands of counsel.  And I think we have come up

23 with that, on a fairly accelerated time schedule.  Our hope is

24 to submit that schedule to you, in a stipulated form, if not

25 later today or tomorrow.  And I'm willing to walk through all

1  of the elements of it.  But it's really what goes on behind the

2  scenes for counsel to complete depositions, get exhibits all

3  set and whatever, so we can hand it to Your Honor.

4          But there are some things that we will be submitting

5  to Your Honor that I wanted to walk through, and make sure that

6  it's consistent with your expectations, and answer any

7  questions I can.  Under the schedule, we have agreed that if

8  there are any motions in limine, and there may be one, it will

9  be an omnibus motion of no more than twenty pages, and any

10  reply will be an omnibus reply of no more than twenty pages.

11  We are still doing depositions.  We are still doing expert

12  depositions, so there has been no final determination.  I

13  believe that the plan proponents will at least have one motion

14  in limine, and I don't know yet whether the JSNs will or not.

15          Stepping back, Your Honor, for one thing.  We have --

16  and as I will explain when I get to the pre-trial order, we're

17  trying to blend the procedures that go into plan confirmation

18  with the procedures of the adversary proceeding.  This motion

19  in limine is likely -- I haven't differentiate -- sorry, I

20  haven't differentiated it as with plan or not, but it deals

21  with an expert that the JSNs have put forward.

22          With respect to exhibits, Your Honor, a couple of

23  things.  The parties have agreed, subject to Your Honor's

24  approval, that any exhibits that were admitted into evidence in

25  phase 1 will be deemed to be in evidence for phase 2.  I'm not

1    sure they're all necessary for phase 2, but we're just -- it

2    simplifies the process, we think, Your Honor.  And to the

3    extent we wanted to resubmit something, that seemed like a

4    waste of Your Honor's time.

5            The debtors and the committee will be submitting a

6    single exhibit list.  That single exhibit list will list all of

7    our exhibits for plan confirmation as well as any exhibits that

8    we're going to be putting forward on phase 2.  Again, our

9    thought is having a single list to work from, without

10   necessarily differentiating; it's just easier for Your Honor

11   and I think easier for the parties.

12           With respect to the statement of issues to be tried,

13   Your Honor, at the September 3rd conference on the discovery

14   protocol that was put in place, Your Honor raised that issue

15   and said you wanted a further clarification of that.  We have

16   had discussions with the JSNs; we pressed them for that.  We

17   are going to be exchanging, tomorrow, an element of a pre-trial

18   order where they have told us that they will provide that

19   detail.  We spoke on the phone today.  I think we have some

20   sense of it.  We hope to get that clearly tomorrow, exactly

21   about what are the -- either the claims against AFI, for which

22   they're asserting a lien on, or anything else.  I'm hoping to

23   find out tomorrow, Your Honor.  If not, we'll be coming back to

24   Your Honor and seeking that clarification --

25           THE COURT:  All right.

1          MR. KERR:  -- because it's something we need.

2          THE COURT:  I mean, I think that -- and I commented at

3    the end of the phase 1 evidentiary portion of the trial that

4    despite the fact that the positions were very hard fought, I

5    thought there was very good cooperation between the parties.

6    The statement of issues to be tried, which was done

7    considerably in advance of the phase 1 trial, was very helpful

8    to me.  And then so was the joint pre-trial order that fleshed

9    out some of those issues.  But it really helped the Court to

10   move forward with trial.  I understood, okay, here's what the

11   issues are.  There was some disagreement about whether any of

12   the issues about liens on tort claims, things like that,

13   whether that was part of phase 1 or not; I made clear no.  So I

14   do want -- I mean, I'm really looking forward to having a

15   similar kind of document on the statement of issues again.

16         MR. KERR:  And Your Honor, I think, as I will explain,

17   and Mr. Cohen will explain as well, we are submitting a joint

18   pre-trial order with respect to phase 2 issues, and I think --

19         THE COURT:  Well, that may make it unnec -- if you're

20   getting it all done into a joint pre-trial order, and that's

21   got the statement of issues, I don't need a separate standing

22   document.  Put it that way.

23         MR. KERR:  Okay.

24         THE COURT:  Mr. Cohen, do you want to --

25         MR. COHEN:  Your Honor, David Cohen, Milbank Tweed

 1   Hadley & McCloy, on behalf of notes trustee and the JSN ad hoc

 2   group.

 3           We have been working on the statement of issues.

 4   We've provided a draft to the debtors.  They've asked for more

 5   specificity.  And as Mr. Kerr explained, I think we're going to

 6   exchange that tomorrow.  So we understand the Court's

 7   expectations, and we're working cooperatively to get that to

 8   you.

 9           THE COURT:  Thank you very much.

10           Go ahead, Mr. Kerr.

11           MR. KERR:  Your Honor, as I said, we will be

12   submitting a pre-trial order.  And the way we look at the

13   pre-trial order is it relates to the adversary proceeding --

14           THE COURT:  Yes.

15           MR. KERR:  -- not to the plan confirmation.

16           THE COURT:  I agree.

17           MR. KERR:  However, there will be -- there's element

18   of the pre-trial order, such as the exhibit lists, which we'll

19   just have our uniform exhibit list a part of, so it'll be a

20   little bit of a mix, but --

21           THE COURT:  Part of the reason that I did the

22   phase 1/phase 2, combined phase 2 with confirmation, is it's

23   the co-proponent's position that the global settlement, if

24   approved, moots many of the issues that the JSNs otherwise wish

25   to raise.

RESIDENTIAL CAPITAL, LLC, ET AL.                    63

1          MR. KERR:  That's correct, Your Honor.

2          THE COURT:  So the issues clearly overlap, and that's

3     why I wanted to do it together at one time.  And there were

4     obviously many other parties-in-interest who potentially would

5     want to be heard about some of those issues.  So that's why we

6     were doing it in phase 2.

7          MR. KERR:  Your Honor, we see it the same way, and

8     that's what we've been working toward --

9          THE COURT:  Okay.

10         MR. KERR:  -- and working toward hard.

11         Your Honor, as you indicated, we are anticipating

12    submitting written direct testimony by our witnesses that will

13    run both to support plan confirmation, and to the extent

14    necessary, phase 2 issues.  We intend to submit all of that on

15    November 12th.  We are working very, very hard to complete the

16    depositions to be able to get that all in by November 12th.

17         We have agreed between counsel -- working very hard on

18    that, but we've agreed between counsel that there are -- just

19    because of scheduling issues, there are three depositions, one

20    fact deposition, and two expert depositions that we've agreed,

21    subject to Your Honor's approval to have on the -- I think the

22    fact deposition is the 13th, one expert on the 14th, one on the

23    15th.  And so to the extent there are any additional tweaks

24    with the submissions we make -- for example, any written

25    testimony by those witnesses, that will come in after that.

RESIDENTIAL CAPITAL, LLC, ET AL.                    64

1          THE COURT:  Okay.

2          MR. KERR:  But we expect to have the vast majority of

3    it in --

4          THE COURT:  How many witnesses do the co-proponents

5    expect to call?

6          MR. KERR:  The co-proponents I'd add -- well, total --

7    I had added it up before, Your Honor.  Give me -- I believe

8    that there are eighteen fact witnesses, and that includes the

9    witnesses to -- I think there's five separate trustee witnesses

10   that -- remember in the plan there is a request by the trustee

11   to have certain findings in place, similar to the FGIC trial.

12   They will be submitting testimony.  I'm not sure anyone's going

13   to cross-examine them or challenge them on --

14         THE COURT:  That's in the eighteen?

15         MR. KERR:  That's within the eighteen, Your Honor,

16   yes.  And those are fact witnesses.  And then at least the

17   proponents anticipate, at this point, six expert witnesses, for

18   which we'll be putting in written declarations.  Again, I

19   expect that some of them will likely not be cross-examined.

20   One of the things we're going to work out with the other side

21   is to, prior to the actual trial, identify for each other which

22   ones we expect to cross and not.  However, all of our witnesses

23   will be here, Your Honor.  They'll be prepared to get up on the

24   stand; if there's somebody else who has an issue with them,

25   they will be here to be cross-examined.

1          THE COURT:  There were other objections to

2    confirmation that are not going to get resolved, and some of

3    those parties are very capable of objecting to everything that

4    happens and wanting to cross-examine every witness that -- I

5    mean, I --

6          MR. KERR:  And we understand that, Your Honor.  And

7    Your Honor, we -- from our perspective, Your Honor, we believe

8    that we're going to put on evidence to support the plan, but we

9    feel strongly that --

10          THE COURT:  Okay.

11          MR. KERR:  -- objectors should have a fair opportunity

12    to raise their objections.

13          THE COURT:  They will.

14          MR. KERR:  And we'll make our witnesses available.

15          THE COURT:  They will have a fair opportunity.

16          MR. KERR:  Okay.

17          THE COURT:  On the other hand, let me just say right

18    now that everybody will have a fair opportunity, but I control

19    witness examination closely.  If I believe questions are not

20    relevant to the issues before me, I cut it off.  And if any

21    party cross-examining a witness abuses -- attempts to abuse the

22    rulings that I reach, they will sit down.

23          MR. KERR:  Your Honor, that -- in connection with that

24    submission, we have actually one question I just wanted to

25    raise, Your Honor.  Again, because we're an amalgam of plan

1  confirmation and an adversary proceeding, where frankly, some

2  of the issues are being presented as counterclaims by the JSNs,

3  there are certain issues that will come, potentially, as

4  rebuttal.  And the question is, is whether or not Your Honor

5  wants prospective rebuttal testimony after the JSNs put their

6  testimony on, or in written form beforehand?  Or how would Your

7  Honor like to handle that?

8             THE COURT:  I would like for you and Mr. Cohen, or

9  whoever the relevant attorneys are, to try and discuss it.  I

10  don't -- because this is a bench hearing, I often don't stand

11  on ceremony about whether something is cross, redirect,

12  rebuttal.  I prefer to have the evidence, even if it's

13  anticipating issues, if you can agree -- hopefully you can --

14  so that it all comes in in piece.  I don't know if that's

15  helpful to you, Mr. Kerr.  Mr. Cohen's shaking his head.  But

16  obviously me saying it and you agreeing -- if the parties can't

17  agree, we'll proceed in the way the rules require.

18             MR. KERR:  Okay.

19             THE COURT:  Okay.

20             MR. COHEN:  We understand the Court's direction.

21             THE COURT:  Okay.  I mean --

22             MR. KERR:  We do too, Your Honor.

23             THE COURT:  But you'll -- if it comes in in a cohesive

24  fashion from each side, it has more impact than when it all

25  gets broken up, okay?

1           MR. COHEN:  We agree, Your Honor.

2           MR. KERR:  Your Honor, with respect to deposition

3    designations --

4           THE COURT:  Yes.

5           MR. KERR:  -- we are working hard, as the depositions

6    go, to designate, and we've set up a schedule to

7    cross-designate as well.  Again, because we will be -- I think

8    we have four scheduled for Friday, we have four for Monday, we

9    have a couple afterwards.  We'll be getting you the

10   designations as quickly as we can.  We may not have all of them

11   by the 12th.  But we will work -- we're working very hard to

12   get you them as quick as we can.

13          The form that we were going to submit them in, Your

14   Honor, was actually the form I believe we used in the FGIC

15   trial, which would be just listing by page and number, unless

16   Your Honor would also like a color-coded copy --

17          THE COURT:  I would.

18          MR. KERR:  -- of the transcript.

19          THE COURT:  I would like --

20          MR. KERR:  We'll make that --

21          THE COURT:  I'd like both.

22          MR. KERR:  -- available to you.

23          THE COURT:  And I think what happened in the phase 1

24   trial is that the -- I don't know, it was some time after the

25   conclusion of the evidence that I got a single list of

 1  designations, counterdesignations.  There were only a few

 2  obj -- I think maybe the objec -- either the objections were

 3  all resolved or there were just a few objections.  The parties

 4  were able to resolve objections to the deposition designations

 5  and counterdesignations.  So whether I get it -- the sooner I

 6  get that combined list the better, but by the time the evidence

 7  ends at the hearing, I'd like to get a combined -- a single

 8  list that shows the designations, counterdesignations, and any

 9  remaining objections.

10          MR. KERR:  We will work to accomplish that, Your

11  Honor.

12          THE COURT:  Okay.

13          MR. KERR:  We'll make sure that happens.

14          THE COURT:  All right.  May I interrupt you at this

15  point?

16          Mr. Cohen, Mr. Kerr has told me how many fact and

17  expert witnesses he anticipates.  Can you tell me how many the

18  JSNs anticipate?

19          MR. COHEN:  It's a little difficult to answer the

20  question with precision because we're still taking --

21          THE COURT:  Yes --

22          MR. COHEN:  -- fact depositions.

23          THE COURT:  -- I understand.

24          MR. COHEN:  We know that we have three experts that we

25  will be putting on, and I would expect that there will probably

RESIDENTIAL CAPITAL, LLC, ET AL.                    69

1   be somewhere between five to seven fact witnesses --

2            THE COURT:  Okay.  I'm not holding --

3            MR. COHEN:  -- although I need some latitude.

4            THE COURT:  I'm not holding you to the number now; I'm

5   just trying to get a sense.

6            MR. COHEN:  Yeah, so at least three; I would say -- my

7   current thinking is between seven to ten total.

8            THE COURT:  Okay.

9            MR. COHEN:  Thank you.

10           THE COURT:  And those are distinct from the

11  twenty-four fact and expert witnesses that Mr. Kerr has

12  listed -- has identified?

13           MR. COHEN:  Does your six include my three?

14           MR. KERR:  It does not.

15           MR. COHEN:  Okay.  So they are.

16           MR. KERR:  At least not as to experts, Your Honor.

17           MR. COHEN:  Right.

18           THE COURT:  Okay.  Go ahead, Mr. Kerr.

19           MR. KERR:  Again, Your Honor, I must say, I'm not

20  clear to me whether or not the JSN's approach is to call AFI

21  witnesses or -- I'm not quite sure which witnesses they're

22  calling as fact witnesses.  And I'm willing to speak to speak

23  with Mr. Cohen about that afterwards, but that's a little news

24  to me, I guess.

25           THE COURT:  Okay.  Well, is AFI intending to call

RESIDENTIAL CAPITAL, LLC, ET AL.                    70

1   witnesses at the confirmation hearing?

2           MR. DONOVAN:  There will be witnesses --

3           THE COURT:  You have to identify yourself.

4           MR. DONOVAN:  Oh, I'm sorry.  Daniel Donovan, Kirkland

5   & Ellis for Ally.

6           There are two witnesses.  They're included, I believe,

7   in Mr. Kerr's count.

8           THE COURT:  Two fact witnesses?

9           MR. DONOVAN:  Yes, Your Honor.

10          THE COURT:  Okay.  Thank you, Mr. Donovan.

11          MR. KERR:  Yeah, let me just check, Your Honor.  They

12  are not included in mine.

13          MR. DONOVAN:  Oh, they're not.

14          THE COURT:  Okay.

15          MR. DONOVAN:  Excuse me, they're not, Your Honor.

16          THE COURT:  All right.

17          MR. DONOVAN:  And one -- just to give you some -- one

18  will probably just be for the jurisdiction; I don't even think

19  anyone's going to cross him on insurance.  But he'll be

20  available, just to give you some timing.

21          THE COURT:  Okay.  All right.  Go ahead, Mr. Kerr.

22          MR. KERR:  Your Honor, maybe this will get covered,

23  but to the extent there are going to be adverse witnesses

24  called, I obviously need to do scheduling.  So that'll be

25  something I will need to work out with --

RESIDENTIAL CAPITAL, LLC, ET AL.                    71

1          THE COURT:  Yeah, so what I want to happen is that the
2    parties identify -- obviously the co-proponents will go first.
3    But the parties need to identify the order of witnesses --
4          MR. KERR:  Um-hum.
5          THE COURT:  -- so that -- because there's frequently a
6    shifting cast of characters, who's going to do the
7    cross-examination.  So I think it worked reasonably well in the
8    phase 1 trial.  People -- and I'm willing to take witnesses out
9    of order, if that becomes necessary.  And people, I think, were
10   reasonably good about giving an estimate of how long they
11   thought they would be with cross-examination.  I expect
12   courtesies to be -- and I don't have any doubt that that'll
13   happen, okay?  The courtesies will be extended, so we don't
14   have any gaps, and witnesses are there ready to go on.
15   Sometimes you get surprised; you put a witness statement in and
16   nobody's got any cross-examination.  Make sure you've got a
17   bunch of witnesses lined up to go.
18          Mr. Cohen?
19          MR. COHEN:  The draft stipulation, that we hope to
20   file today or tomorrow, contemplates all of that.
21          THE COURT:  Okay.  That's fine.
22          MR. COHEN:  We've been working very well together.
23          THE COURT:  It worked well during the phase 1 trial.
24   I don't have any doubt that you'll be able to work it out here.
25          MR. KERR:  Mr. Cohen's correct.  We've already built

1  that into --

2          THE COURT:  Okay.

3          MR. KERR:  -- our schedule, Your Honor.

4          THE COURT:  That's fine.  All right.

5          MR. KERR:  Your Honor, we have --

6          THE COURT:  Before you go on, is there anybody else in

7  the courtroom, representing any parties-in-interest, who

8  anticipates calling witnesses at the hearing that haven't been

9  identified either by Mr. Kerr, Mr. Cohen, or Mr. Donovan?

10         MR. SCHAFFER:  Your Honor, Eric Schaffer for Wells

11 Fargo, as collateral agent.

12         We may have one witness.  We would be happy to reach

13 out to the others, and perhaps this can be stipulated.  I don't

14 think it would be very long.

15         THE COURT:  Okay.  Anybody else in the courtroom who

16 anticipates calling any fact or expert witnesses at the

17 confirmation hearing?

18         MR. KERR:  Your Honor -- oh, I'm sorry.

19         MR. DONNELL:  Sorry, Your Honor.  Jim Donnell for WFB,

20 N.A. again.

21         I don't anticipate that we have any disputed facts,

22 but I need to work with counsel.  So at most, I would have a

23 couple of minutes of questions for the witness.  Thank you.

24         THE COURT:  Okay.  Well, you may have questions for a

25 witness, and I hope you'll be able to stipulate.  My question

 1   is really is there anybody you intend to call that no one else

 2   is going to call as a witness?

 3          MR. DONNELL:  I would simply establish the documents

 4   through the AFI or the debtor witness --

 5          THE COURT:  Okay.

 6          MR. DONNELL:  -- as direct.  Thank you.

 7          THE COURT:  All right.  Anybody else?

 8          MR. KERR:  Your Honor, just -- one point I want to

 9   make, Your Honor.  Among my -- the list of witnesses I included

10   was I expect at least one witness on behalf of the steering

11   committee as well, in support of their application.  So --

12          THE COURT:  But you included that in your --

13          MR. KERR:  I've included that in the eighteen, Your

14   Honor.

15          THE COURT:  Okay.

16          MR. KERR:  Yes.

17          THE COURT:  All right.

18          MR. KERR:  Your Honor, we were scheduled for six days

19   of hearings, starting on the 19th, going to November 26th.

20   Again, we spent time, internally, talking about whether or not

21   we can accomplish all of this in those six days.  That,

22   frankly, has to do a lot with which of our witnesses are

23   cross-examined.  Again, the ones that are strictly on plan

24   confirmation we don't assume --

25          THE COURT:  So I assume everybody knows, six-hour

RESIDENTIAL CAPITAL, LLC, ET AL.                          74

1   trial days.  We start at 9 a.m. and we have to end at 5 a.m.

2   (sic).

3            MR. KERR:  Right.  We're --

4            THE COURT:  5 p.m., excuse me.

5            MR. KERR:  We're aware of that, Your Honor.

6            THE COURT:  Okay.

7            MR. KERR:  And I will say that we'll work as hard as

8   we can to get the evidence up and on and off as quick as we

9   can.  But we still have to work through some remaining issues.

10  And again, because depositions are still going on, and it

11  sounds like the JSNs aren't sure how many witnesses they may

12  choose to call, whether adverse witnesses or not, I just -- I

13  have to -- I'll have to see how that goes, going forward.

14           As Your Honor indicated, we would expect to put up our

15  witnesses first and the plan proponent witnesses.  We will

16  intend to put on all of our witnesses; we're not going to try

17  to sequence them out.  I think our plan is to put them all up,

18  even if they are phase 2 witnesses or plan confirmation, and

19  even if whether they are, arguably, in part, rebuttal.  But

20  there may be other rebuttal witnesses that we hear once we hear

21  the JSN's proof.

22           THE COURT:  I would just say if -- particularly with

23  the Thanksgiving holiday, very quickly after you're -- we're

24  not hearing evidence on the 27th; let me make that clear.

25           MR. KERR:  I understand that, Your Honor.

1    THE COURT:  And I don't even want to contemplate

2  having to resume sometime after Thanksgiving.  But looking at

3  my calendar, the earliest we would resume is Thursday, December

4  5th and the 6th, because I have -- I mean, I've got a really

5  heavy docket.  Just everybody understand that.  So work to get

6  this done in the time, okay?  I mean, the 2nd I've got morning

7  and afternoon calendars.  The 3rd I've got a morning calendar.

8  The 4th and the 5th are open.

9    MR. KERR:  Is it the 4th and the 5th or the 5th and

10  6th, Your Honor?

11    THE COURT:  I'm sorry, 5th and 6th; I apologize --

12    MR. KERR:  Right.

13    THE COURT:  -- Mr. Kerr, 5th and 6th.  5th was the

14  ResCap day, and the 6th is open.

15    MR. KERR:  So Your Honor, my only other --

16    THE COURT:  I get really cranky if people don't finish

17  in the time that --

18    MR. KERR:  Your Honor, I will --

19    THE COURT:  -- they've indicated.

20    MR. KERR:  For personal reasons, that I'm sure Mr.

21  Cohen shares, our families get crankier than you could possibly

22  ever get if we don't finish on time.

23    THE COURT:  Do you want to trade?

24    MR. KERR:  No.  You know something?  You haven't met

25  my wife.  No, I would not trade, Your Honor.  I would not

 1   trade.  I didn't say it on the record.

 2           MR. COHEN:  And Your Honor, you would be cranky during

 3   their rebuttal case --

 4           MR. KERR:  Yes.

 5           MR. COHEN:  -- which would be fine with us.

 6           THE COURT:  Yeah.

 7           MR. KERR:  Your Honor, the only thing I actually --

 8   the final thing I wanted to raise is I think -- we are all

 9   working very hard to get this thing ready, but I think it'd be

10   very helpful to have another status conference.  We were going

11   to propose either November 14th, which would be two days after

12   we get all the submissions in, if that works for Your Honor.

13           THE COURT:  Assuming I'm not on jury duty.

14           MR. KERR:  If you're not -- assuming you're not -- we

15   could all schlep up to White Plains, I guess, and do it up

16   there.  But assuming you're not on jury duty, that's what we

17   would suggest.

18           THE COURT:  All right.  So let's set a status

19   conference, pre-trial status conference for November 14th at 2

20   o'clock.

21           MR. KERR:  And Your Honor, I indicated I -- there will

22   be some people who are in this courtroom now who will be in a

23   deposition that day.  So we'll be here, and we thank you very

24   much for setting that time.

25           I don't have anything further.  I don't know if Mr.

RESIDENTIAL CAPITAL, LLC, ET AL.                    77

1    Cohen's got anything else.

2              THE COURT:  Mr. Cohen?

3              MR. COHEN:  No, Your Honor.  Thank you.

4              THE COURT:  You could probably track Judge Peck down

5    if you wanted to go back to mediation for a few days here, but

6    for whatever that's worth.

7              Okay.  In terms of -- you thought you'd have a

8    stipulation with these procedures.

9              MR. KERR:  Yeah, Your Honor, let me tell you where it

10   stands.  We have worked out a schedule.  We have exchanged

11   drafts.  There was -- we got back a draft early this morning

12   that had a tweak on it that we just -- we haven't had a chance

13   to speak to the JSNs about.  Subject to getting that cleared

14   up, Your Honor, we will, I think, be pretty close to being able

15   to submit it today.  And really what it does, Your Honor, it

16   does nothing -- we are following the time schedule in the

17   stipulation, so we are all working very hard to do that.  This

18   simply just gives everybody the assurance that it fits Your

19   Honor's schedule as well.  But I think our goal, and the

20   stipulation is leading up to having all of our submissions,

21   exhibits, witness statements, and the briefing on November

22   12th, which is seven days before the start of this hearing.  So

23   that's what we've been working toward, and that's what we're

24   trying to do.

25             THE COURT:  All right.  Have you built into the

1    schedule proposed findings of fact and conclusions of law?

2            MR. KERR:  We have -- we have, within the extent,

3    within the pre-trial order, to the extent there's any, that

4    will be in the pre-trial order.  With respect to any

5    pre-trial -- any --

6            THE COURT:  Well, I'm talking about even confirmation

7    issues.  I mean, you're --

8            MR. KERR:  We have not, Your Honor, at this point.

9            THE COURT:  Mr. Eckstein?

10           MR. ECKSTEIN:  Your Honor, I think we had assumed that

11   there would be post-trial submissions of findings of fact and

12   conclusions of law.  How quickly those can be submitted, I

13   think still remains to be seen, but I'm assuming, similar to

14   phase 1 we're going to have those --

15           THE COURT:  Are you going to have a daily transcript

16   during the confirmation?

17           MR. ECKSTEIN:  I'm sure we'll have a daily transcript.

18           THE COURT:  Okay.  Mr. Masumoto, is the U.S. Trustee

19   going to call any witnesses?

20           MR. MASUMOTO:  We don't plan to at this time, Your

21   Honor.

22           THE COURT:  Okay.

23           MR. KERR:  Your Honor, I guess one question that we

24   would have.  To the extent -- is Your Honor -- if we go through

25   plan confirmation, is Your Honor going to need or expect

1   post-hearing findings of fact and conclusions of law?

2            THE COURT:  Probably will.  I mean, I just -- I'm

3   right now focusing on the phase 2 issues because -- yeah, I do.

4            MR. ECKSTEIN:  Your Honor, just one additional

5   amendment that we can maybe visit again on the 14th, and that

6   is in contrast to the phase 1, this hearing will be preceded by

7   really fully briefed confirmation objections and briefs in

8   support of confirmation, which the Court didn't have on phase

9   1.  So to that extent, it may reduce what is needed post-trial.

10  You may still need some collection of the evidence, but the

11  briefing will have been, I think, done.  I'm not sure there

12  will be a need to repeat the briefing.

13           THE COURT:  No, the briefing may not; findings of fact

14  may well be.  I mean, with the issues with the JSNs,

15  ultimately, are they oversecured or are they undersecured.

16  We'll see where they come out after phase 1.  If they come out

17  oversecured after phase 1, you all ought to do everything you

18  can to resolve any remaining issues with the JSNs.  I'm going

19  to hear closing argument on Wednesday.  And if they wind up

20  undersecured after phase 1, they're going to fight like tigers

21  when it comes to phase 2, and they're entitled to.

22           MR. ECKSTEIN:  Absolutely.

23           THE COURT:  Okay?

24           MR. COHEN:  Your Honor, I just wanted to be clear

25  about the stip that we'll file either later today or tomorrow.

 1   That deals with the pre-trial filings with respect to phase 2

 2   and not the confirmation issues?

 3            THE COURT:  Yeah.

 4            MR. COHEN:  Even --

 5            THE COURT:  No, I understood that.

 6            MR. COHEN:  Okay.  Thank you.

 7            THE COURT:  I understood that.  Okay.  Anything else

 8   anybody wishes to raise?

 9            Okay.  We're adjourned.

10            MR. KERR:  Thank you, Your Honor.

11            THE COURT:  Thanks very much.

12            Let me -- before you all leave, let me just ask this.

13   Mr. Lee, you ought to -- your chart's very helpful.  Has it

14   been filed on ECF?

15            MR. LEE:  No, Your Honor.

16            THE COURT:  You ought to file it on ECF.

17            MR. LEE:  Yes, Your Honor.

18            THE COURT:  And if there are updates to it, you --

19   well, first, I mean, it's -- my law clerks don't talk about the

20   substance of any of the pending matters with any of the

21   counsel, but to the extent that you think any other objections

22   are likely, even if they're not finally resolved, advise my

23   clerks because it -- this is very helpful because it affects

24   what we have to do to prepare.  And so if you reach finality on

25   some of those where you think you have an agreement in

1    principal, and stuff like that, let us know.  Okay?

2           MR. LEE:  We will do, Your Honor.

3           THE COURT:  Thank you very much.

4       (Whereupon these proceedings were concluded at 3:47 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3

4                               RULINGS

5                                           Page      Line

6   MBIA's motion to attend and observe      13        11

7   depositions is granted.

8   Debtors' brief due Friday November 8th.   55        23

9   All written testimony, exhibits, briefs,  55        25

10  stipulations, due November 12th

11  Single list of designations,             68         7

12  counterdesignations and any objections to

13  be submitted to the Court

14

15

16

17

18

19

20

21

22

23

24

25

1

2                       C E R T I F I C A T I O N

3

4   I, Penina Wolicki, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8

9

10

11  _____

    PENINA WOLICKI
12
    AAERT Certified Electronic Transcriber CET**D-569
13

14
    eScribers
15
    700 West 192nd Street, Suite #607
16
    New York, NY 10040
17

18
    Date:  November 5, 2013
19

20

21

22

23

24

25