# EXHIBIT [6]



MICHIGAN LEGISLATIVE WEBSITE

Michigan Compiled Laws Complete Through PA 392 & includes 394-403, 446, 465, 491, 516 & 542 of 2012
House: Adjourned until Wednesday, January 16, 2013 6:00:00 PM
Senate: Adjourned until Wednesday, January 16, 2013 6:00:00 PM

Home    Register    Why Register?    Login    New!    Help

**NAVIGATE
SECTIONS**

MCL Chapter Index
🕮 Chapter 211
🕮 Act 206 of 1893
    206-1893-
🕮 COLLECTING-OF-
TAXES.
🕮 Section 211.53b

**Legislature**

Bills
Appropriation Bills/Passed
Calendars
Committees
Committee Bill Records
Committee Meetings
Concurrent Resolutions
Initiatives
Joint Resolutions
Journals
Legislators
Public Act (Signed Bills)
Resolutions
Session Schedules
Basic Search
Advanced Search

**Laws**

Often Req Laws
Req Outdated Acts
Basic MCL Search
Advanced MCL Search
Public Act MCL Search
Michigan Constitution
Chapter Index
Executive Orders
Executive Reorgs
Historical Documents
MCL Tables

**More**

Michigan Color Themes
Publications
Related Sites

**Syndication** ℗

Bills 🔖🔖
Meetings 🔖🔖
Laws 🔖🔖

## Section 211.53b

🔗 friendly link  🖨 Printer Friendly

### THE GENERAL PROPERTY TAX ACT (EXCERPT)
### Act 206 of 1893

**211.53b Qualified error; verification, approval, and affidavit; correction of records; rebate; notice and payment; initiation of action; actions of board of review; exemption; appeal; alternative meeting dates; "qualified error" defined.**

Sec. 53b.

(1) If there has been a qualified error, the qualified error shall be verified by the local assessing officer and approved by the board of review. Except as otherwise provided in subsection (7), the board of review shall meet for the purposes of this section on Tuesday following the second Monday in December and, for summer property taxes, on Tuesday following the third Monday in July. Except as otherwise provided in subsection (7), if there is not a levy of summer property taxes, the board of review may meet for the purposes of this section on Tuesday following the third Monday in July. If approved, the board of review shall file an affidavit within 30 days relative to the qualified error with the proper officials and all affected official records shall be corrected. If the qualified error results in an overpayment or underpayment, the rebate, including any interest paid, shall be made to the taxpayer or the taxpayer shall be notified and payment made within 30 days of the notice. A rebate shall be without interest. The treasurer in possession of the appropriate tax roll may deduct the rebate from the appropriate tax collecting unit's subsequent distribution of taxes. The treasurer in possession of the appropriate tax roll shall bill to the appropriate tax collecting unit the tax collecting unit's share of taxes rebated. Except as otherwise provided in subsection (6) and section 27a(4), a correction under this subsection may be made for the current year and the immediately preceding year only.

(2) Action pursuant to this section may be initiated by the taxpayer or the assessing officer.

(3) The board of review meeting in July and December shall meet only for the purpose described in subsection (1) and to hear appeals provided for in sections 7u, 7cc, 7ee, and 7jj. If an exemption under section 7u is approved, the board of review shall file an affidavit with the proper officials involved in the assessment and collection of taxes and all affected official records shall be corrected. If an appeal under section 7cc, 7ee, or 7jj results in a determination that an overpayment has been made, the board of review shall file an affidavit and a rebate shall be made at the times and in the manner provided in subsection (1). Except as otherwise provided in sections 7cc, 7ee, and 7jj, a correction under this subsection shall be made for the year in which the appeal is made only. If the board of review grants an exemption or provides a rebate for property under section 7cc, 7ee, or 7jj as provided in this subsection, the board of review shall require the owner to execute the affidavit provided for in section 7cc, 7ee, or 7jj and shall forward a copy of any section 7cc affidavits to

Recently Viewed
mcl 211 53b

the department of treasury.

(4) If an exemption under section 7cc is granted by the board of review under this section, the provisions of section 7cc apply. If an exemption under section 7cc is not granted by the board of review under this section, the owner may appeal that decision in writing to the department of treasury within 35 days of the board of review's denial and the appeal shall be conducted as provided in section 7cc(8).

(5) An owner or assessor may appeal a decision of the board of review under this section regarding an exemption under section 7ee or 7jj to the residential and small claims division of the Michigan tax tribunal. An owner is not required to pay the amount of tax in dispute in order to receive a final determination of the residential and small claims division of the Michigan tax tribunal. However, interest and penalties, if any, shall accrue and be computed based on interest and penalties that would have accrued from the date the taxes were originally levied as if there had not been an exemption.

 (6) A correction under this section that grants a principal residence exemption pursuant to section 7cc may be made for the year in which the appeal was filed and the 3 immediately preceding tax years.

(7) The governing body of the city or township may authorize, by adoption of an ordinance or resolution, 1 or more of the following alternative meeting dates for the purposes of this section:

(a) An alternative meeting date during the week of the second Monday in December.

(b) An alternative meeting date during the week of the third Monday in July.

(8) As used in this section, "qualified error" means 1 or more of the following:

(a) A clerical error relative to the correct assessment figures, the rate of taxation, or the mathematical computation relating to the assessing of taxes.

(b) A mutual mistake of fact.

(c) An adjustment under section 27a(4) or an exemption under section 7hh(3)(b).

(d) An error of measurement or calculation of the physical dimensions or components of the real property being assessed.

(e) An error of omission or inclusion of a part of the real property being assessed.

(f) An error regarding the correct taxable status of the real property being assessed.

(g) An error made by the taxpayer in preparing the statement of assessable personal property under section 19.

**History:** Add. 1967, Act 142, Eff. Nov. 2, 1967 ;-- Am. 1974, Act 379, Imd. Eff. Dec. 23, 1974 ;-- Am. 1982, Act 539, Eff. Mar. 30, 1983 ;-- Am. 1985, Act 14, Imd. Eff. May 3, 1985 ;-- Am. 1994, Act 237, Imd. Eff. June 30, 1994 ;-- Am. 1995, Act 74, Eff. Dec. 31, 1994 ;-- Am. 2000, Act 284, Imd. Eff. July 10, 2000 ;-- Am. 2002, Act 624, Imd. Eff. Dec. 23, 2002 ;-- Am. 2003, Act 105, Imd. Eff. July 24, 2003 ;-- Am. 2006, Act 13, Imd. Eff. Feb. 3, 2006 ;-- Am. 2006, Act 378, Imd. Eff. Sept. 27, 2006 ;-- Am. 2008, Act 122, Imd. Eff. May 9, 2008 ;-- Am. 2010, Act 24, Imd. Eff. Mar. 26, 2010
**Compiler's Notes:** Section 2 of Act 74 of 1995 provides:"This amendatory act

is retroactive and shall take effect December 31, 1994."

**Popular Name:** Act 206

© 2009 Legislative Council, State of Michigan

Acceptable Use Policy      Privacy Policy      Copyright Infringement      Comment Form

The Michigan Legislature Website is a free service of the Legislative Internet Technology Team in cooperation with the Michigan Legislative Council, the Michigan House of Representatives, and the Michigan Senate. The information obtained from this site is not intended to replace official versions of that information and is subject to revision. The Legislature presents this information, without warranties, express or implied, regarding the accuracy of the information, timeliness, or completeness. If you believe the information is inaccurate, out-of-date, or incomplete or if you have problems accessing or reading the information, please send your concerns to the appropriate agency using the online Comment Form in the bar above this text.

# EXHIBIT [7]

THE GENERAL
PROPERTY TAX ACT (EXCERPT)
Act 206 of 1893

211.7cc Homestead exemption from tax levied by local school district for school operating purposes; procedures; definitions.
Sec. 7cc.

(1) A principal residence is exempt from the tax levied by a local school district for school operating purposes to the extent provided under section 1211 of the revised school code, 1976 PA 451, MCL 380.1211, if an owner of that principal residence claims an exemption as provided in this section. Notwithstanding the tax day provided in section 2, the status of property as a principal residence shall be determined on the date an affidavit claiming an exemption is filed under subsection (2).

(2) Except as otherwise provided in subsection (5), an owner of property may claim 1 exemption under this section by filing an affidavit on or before May 1 for taxes levied before January 1, 2012 or, for taxes levied after December 31, 2011, on or before June 1 for the immediately succeeding summer tax levy and all subsequent tax levies or on or before November 1 for the immediately succeeding winter tax levy and all subsequent tax levies with the local tax collecting unit in which the property is located. The affidavit shall state that the property is owned and occupied as a principal residence by that owner of the property on the date that the affidavit is signed. The affidavit shall be on a form prescribed by the department of treasury. One copy of the affidavit shall be retained by the owner, 1 copy shall be retained by the local tax collecting unit until any appeal or audit period under this act has expired, and 1 copy shall be forwarded to the department of treasury pursuant to subsection (4), together with all information submitted under subsection (26) for a cooperative housing corporation. The affidavit shall require the owner claiming the exemption to indicate if that owner or that owner's spouse has claimed another exemption on property in this state that is not rescinded or a substantially similar exemption, deduction, or credit on property in another state that is not rescinded. If the affidavit requires an owner to include a social security number, that owner's number is subject to the disclosure restrictions in 1941 PA 122, MCL 205.1 to 205.31. If an owner of property filed an affidavit for an exemption under this section before January 1, 2004, that affidavit shall be considered the affidavit required under this subsection for a principal residence exemption and that exemption shall remain in effect until rescinded as provided in this section.

(3) Except as otherwise provided in subsection (5), a husband and wife who are required to file or who do file a joint Michigan income tax return are entitled to not more than 1 exemption under this section. For taxes levied after December 31, 2002, a person is not entitled to an exemption under this section if any of the following conditions occur:

(a) That person has claimed a substantially similar exemption, deduction, or credit on property in another state that is not rescinded.

(b) Subject to subdivision (a), that person or his or her spouse owns property in a state other than this state for which that person or his or her spouse claims an exemption, deduction, or credit substantially similar to the exemption provided under this section, unless that person and his or her spouse file separate income tax returns.

(c) That person has filed a nonresident Michigan income tax return, except active duty military personnel stationed in this state with his or her principal residence in this state.

(d) That person has filed an income tax return in a state other than this state as a resident, except active duty military personnel stationed in this state with his or her principal residence in this state.

(e) That person has previously rescinded an exemption under this section for the same property for which an exemption is now claimed and there has not been a transfer of ownership of that property after the previous exemption was rescinded, if either of the following conditions is satisfied:

(i) That person has claimed an exemption under this section for any other property for that tax year.

(ii) That person has rescinded an exemption under this section on other property, which exemption remains in effect for that tax year, and there has not been a transfer of ownership of that property.

(4) Upon receipt of an affidavit filed under subsection (2) and unless the claim is denied under this section, the assessor shall exempt the property from the collection of the tax levied by a local school district for school operating purposes to the extent provided under section 1211 of the revised school code, 1976 PA 451, MCL 380.1211, as provided in subsection (1) until December 31 of the year in which the property is transferred or, except as otherwise provided in subsection (5), is no longer a principal residence as defined in section 7dd. The local tax collecting unit shall forward copies of affidavits to the department of treasury according to a schedule prescribed by the department of treasury.

(5) Except as otherwise provided in this subsection, not more than 90 days after exempted property is no longer used as a principal residence by the owner claiming an exemption, that owner shall rescind the claim of exemption by filing with the local tax collecting unit a rescission form prescribed by the department of treasury. If an owner is eligible for and claims an exemption for that owner's current principal residence, that owner may retain an exemption for not more than 3 tax years on property previously exempt as his or her principal residence if that property is not occupied, is for sale, is not leased, and is not used for any business or commercial purpose by filing a conditional rescission form prescribed by the department of treasury on or before May 1 with the local tax collecting unit. Beginning in the 2012 tax year, subject to the payment requirement set forth in this subsection, if a land contract vendor, bank, credit union, or

other lending institution owns property as a result of having foreclosed on that property and that property had been exempt under this section immediately preceding the foreclosure, that land contract vendor, bank, credit union, or other lending institution may retain an exemption on that property under this section if that property is not occupied, is for sale, is not leased to any person other than the person who claimed the exemption under this section immediately preceding the foreclosure, and is not used for any business or commercial purpose. A land contract vendor, bank, credit union, or other lending institution may claim an exemption under this subsection by filing a conditional rescission form prescribed by the department of treasury with the local tax collecting unit within the time period prescribed in subsection (2). Property is eligible for a conditional rescission if that property is available for lease and all other conditions under this subsection are met. A copy of a conditional rescission form shall be forwarded to the department of treasury according to a schedule prescribed by the department of treasury. An owner or a land contract vendor, bank, credit union, or other lending institution that files a conditional rescission form shall annually verify to the assessor of the local tax collecting unit on or before December 31 that the property for which the principal residence exemption is retained is not occupied, is for sale, is not leased except as otherwise provided in this section, and is not used for any business or commercial purpose. If an owner or a land contract vendor, bank, credit union, or other lending institution does not annually verify by December 31 that the property for which the principal residence exemption is retained is not occupied, is for sale, is not leased except as otherwise provided in this section, and is not used for any business or commercial purpose, the assessor of the local tax collecting unit shall deny the principal residence exemption on that property. Except as otherwise provided in this section, property subject to a conditional rescission is leased, the local tax collecting unit shall deny that conditional rescission and that denial is retroactive and is effective on December 31 of the year immediately preceding the year in which the property subject to the conditional rescission is leased. An owner who fails to file a rescission as required by this subsection is subject to a penalty of $5.00 per day for each separate failure beginning after the 90 days have elapsed, up to a maximum of $200.00. This penalty shall be collected under 1941 PA 122, MCL 205.1 to 205.31, and shall be deposited in the state school aid fund established in section 11 of article IX of the state constitution of 1963. This penalty may be waived by the department of treasury. If a land contract vendor, bank, credit union, or other lending institution retains an exemption on property under this subsection, that land contract vendor, bank, credit union, or other lending institution shall pay an amount equal to the amount that land contract vendor, bank, credit union, or other lending institution would have paid under section 1211 of the revised school code, 1976 PA 451, MCL 380.1211, if an exemption had not been retained on that property, together with an administration fee equal to the property tax administration fee imposed under section 44. The payment required under this subsection shall be collected by the local tax collecting unit at the same time and in the same manner as taxes collected under this act. The administration fee shall be retained by the local tax collecting unit. The amount collected that the land contract vendor, bank, credit union, or other lending institution would have paid under section 1211 of the revised school code, 1976 PA 451, MCL 380.1211, if an exemption had not been retained on that property shall be distributed to the department of treasury for deposit into the state school aid fund established in section 11 of article IX of

the state constitution of 1963. If a land contract vendor, bank, credit union, or other lending institution transfers ownership of property for which an exemption is retained under this subsection, that land contract vendor, bank, credit union, or other lending institution shall rescind the exemption as provided in this section and shall notify the treasurer of the local tax collecting unit of that transfer of ownership. If a land contract vendor, bank, credit union, or other lending institution fails to make the payment required under this subsection for any property, the local tax collecting unit shall deny that conditional rescission and that denial is retroactive and is effective on December 31 of the immediately preceding year. If the local tax collecting unit denies a conditional rescission, the local tax collecting unit shall remove the exemption of the property and any additional taxes, penalties, and interest shall be collected as provided in this section. A person who previously occupied a property as his or her principal residence but now resides in a nursing home or assisted living facility may retain an exemption on the property if the owner manifests an intent to return to the property by satisfying all of the following conditions:

(a) The owner continues to own the property while residing in the nursing home or assisted living facility.

(b) The owner has not established a new principal residence.

(c) The owner maintains or provides for the maintenance of the property while residing in the nursing home or assisted living facility.

(d) The property is not occupied, is not for sale, is not leased, and is not used for any business or commercial purpose.

(6) Except as otherwise provided in subsection (5), if the assessor of the local tax collecting unit believes that the property for which an exemption is claimed is not the principal residence of the owner claiming the exemption, the assessor may deny a new or existing claim by notifying the owner and the department of treasury in writing of the reason for the denial and advising the owner that the denial may be appealed to the residential and small claims division of the Michigan tax tribunal within 35 days after the date of the notice. The assessor may deny a claim for exemption for the current year and for the 3 immediately preceding calendar years. If the assessor denies an existing claim for exemption, the assessor shall remove the exemption of the property and, if the tax roll is in the local tax collecting unit's possession, amend the tax roll to reflect the denial and the local treasurer shall within 30 days of the date of the denial issue a corrected tax bill for any additional taxes with interest at the rate of 1.25% per month or fraction of a month and penalties computed from the date the taxes were last payable without interest or penalty. If the tax roll is in the county treasurer's possession, the tax roll shall be amended to reflect the denial and the county treasurer shall within 30 days of the date of the denial prepare and submit a supplemental tax bill for any additional taxes, together with interest at the rate of 1.25% per month or fraction of a month and penalties computed from the date the taxes were last payable without interest or penalty. Interest on any tax set forth in a corrected or supplemental tax bill shall again begin to accrue 60

days after the date the corrected or supplemental tax bill is issued at the rate of 1.25% per month or fraction of a month. Taxes levied in a corrected or supplemental tax bill shall be returned as delinquent on the March 1 in the year immediately succeeding the year in which the corrected or supplemental tax bill is issued. If the assessor denies an existing claim for exemption, the interest due shall be distributed as provided in subsection (23). However, if the property has been transferred to a bona fide purchaser before additional taxes were billed to the seller as a result of the denial of a claim for exemption, the taxes, interest, and penalties shall not be a lien on the property and shall not be billed to the bona fide purchaser, and the local tax collecting unit if the local tax collecting unit has possession of the tax roll or the county treasurer if the county has possession of the tax roll shall notify the department of treasury of the amount of tax due, interest, and penalties through the date of that notification. The department of treasury shall then assess the owner who claimed the exemption under this section for the tax, interest, and penalties accruing as a result of the denial of the claim for exemption, if any, as for unpaid taxes provided under 1941 PA 122, MCL 205.1 to 205.31, and shall deposit any tax or penalty collected into the state school aid fund and shall distribute any interest collected as provided in subsection (23). The denial shall be made on a form prescribed by the department of treasury. If the property for which the assessor has denied a claim for exemption under this subsection is located in a county in which the county treasurer or the county equalization director have elected to audit exemptions under subsection (10), the assessor shall notify the county treasurer or the county equalization director of the denial under this subsection.

(7) If the assessor of the local tax collecting unit believes that the property for which the exemption is claimed is not the principal residence of the owner claiming the exemption and has not denied the claim, the assessor shall include a recommendation for denial with any affidavit that is forwarded to the department of treasury or, for an existing claim, shall send a recommendation for denial to the department of treasury, stating the reasons for the recommendation.

(8) The department of treasury shall determine if the property is the principal residence of the owner claiming the exemption. The department of treasury may review the validity of exemptions for the current calendar year and for the 3 immediately preceding calendar years. Except as otherwise provided in subsection (5), if the department of treasury determines that the property is not the principal residence of the owner claiming the exemption, the department shall send a notice of that determination to the local tax collecting unit and to the owner of the property claiming the exemption, indicating that the claim for exemption is denied, stating the reason for the denial, and advising the owner claiming the exemption of the right to appeal the determination to the department of treasury and what those rights of appeal are. The department of treasury may issue a notice denying a claim if an owner fails to respond within 30 days of receipt of a request for information from that department. An owner may appeal the denial of a claim of exemption to the department of treasury within 35 days of receipt of the notice of denial. An appeal to the department of treasury shall be conducted according to the provisions for an informal conference in section 21 of 1941 PA 122, MCL 205.21. Within 10 days after acknowledging an appeal of a denial of a claim of exemption, the department of

treasury shall notify the assessor and the treasurer for the county in which the property is located that an appeal has been filed. Upon receipt of a notice that the department of treasury has denied a claim for exemption, the assessor shall remove the exemption of the property and, if the tax roll is in the local tax collecting unit's possession, amend the tax roll to reflect the denial and the local treasurer shall within 30 days of the date of the denial issue a corrected tax bill for any additional taxes with interest at the rate of 1.25% per month or fraction of a month and penalties computed from the date the taxes were last payable without interest and penalty. If the tax roll is in the county treasurer's possession, the tax roll shall be amended to reflect the denial and the county treasurer shall within 30 days of the date of the denial prepare and submit a supplemental tax bill for any additional taxes, together with interest at the rate of 1.25% per month or fraction of a month and penalties computed from the date the taxes were last payable without interest or penalty. Interest on any tax set forth in a corrected or supplemental tax bill shall again begin to accrue 60 days after the date the corrected or supplemental tax bill is issued at the rate of 1.25% per month or fraction of a month. The department of treasury may waive interest on any tax set forth in a corrected or supplemental tax bill for the current tax year and the immediately preceding 3 tax years if the assessor of the local tax collecting unit files with the department of treasury a sworn affidavit in a form prescribed by the department of treasury stating that the tax set forth in the corrected or supplemental tax bill is a result of the assessor's classification error or other error or the assessor's failure to rescind the exemption after the owner requested in writing that the exemption be rescinded. Taxes levied in a corrected or supplemental tax bill shall be returned as delinquent on the March 1 in the year immediately succeeding the year in which the corrected or supplemental tax bill is issued. If the department of treasury denies an existing claim for exemption, the interest due shall be distributed as provided in subsection (23). However, if the property has been transferred to a bona fide purchaser before additional taxes were billed to the seller as a result of the denial of a claim for exemption, the taxes, interest, and penalties shall not be a lien on the property and shall not be billed to the bona fide purchaser, and the local tax collecting unit if the local tax collecting unit has possession of the tax roll or the county treasurer if the county has possession of the tax roll shall notify the department of treasury of the amount of tax due and interest through the date of that notification. The department of treasury shall then assess the owner who claimed the exemption under this section for the tax and interest plus penalty accruing as a result of the denial of the claim for exemption, if any, as for unpaid taxes provided under 1941 PA 122, MCL 205.1 to 205.31, and shall deposit any tax or penalty collected into the state school aid fund and shall distribute any interest collected as provided in subsection (23).

(9) The department of treasury may enter into an agreement regarding the implementation or administration of subsection (8) with the assessor of any local tax collecting unit in a county that has not elected to audit exemptions claimed under this section as provided in subsection (10). The agreement may specify that for a period of time, not to exceed 120 days, the department of treasury will not deny an exemption identified by the department of treasury in the list provided under subsection (11).

# *EXHIBIT [11]*

3055570
LIBER 12989 PAGE 823
02/24/2003 02:00:09 P.M.
MACOMB COUNTY, MI                    SEAL
CARMELLA SABAUGH, REGISTER OF DEEDS

**Requiring Requested by**
Glenn M. Prentice
37655 Palmar
Clinton Township, Michigan State, U.S.A. [48036]

sovereign;
Citizen of the United States
and of Michigan state

───────────────

and when recorded
    Mail to:

Glenn M. Prentice
37655 Palmar
Clinton Township, Michigan State, U.S.A. [48036]

───────────────────────────────────────────

## Declaration of the Land-Patent

Patent   and   grant **1593 { Certificate No. 1593** as   signed   by   John   Quincy   Adams,

PRESIDENT OF THE UNITED-STATES OF AMERICA, having caused these Letters to be made

patent; and the seal of the Bureau of Land Management general-Land-Office of the United States



Liber 012989 Page 00824

Department of the Interior to be hereto given by his hand the first-day, of February, 1826, in the year
of our Lord, and of the Independence of the United-States.

Known all men by these presence; That **Glennn M. Prentice** bring forth this Land-Patent
in his own name and on behalf of him-selve; do certify and declare that as assignee and holders in
good-faith of the Land-Patent listed above; being first recorded in the Register of the Land-Office
at Detroit Michigan, as first purchased by John Miller of Monroe County, New York. The legal
description of the land sought to be recorded in the Township of Clinton, in the territory; of
Michigan, state, to-wit;

### Property Description

### Township of Clinton, County of Macomb, Michigan, state, in the United States of North America

Lot 1 of the incorporates Moravian Woods Subdivision, of part of
Southwest 1/4. Section 20, Town 2 North, Range 13 East, Clinton Township,
Macomb County, Michigan, as recorded in Liber, 54 of Plats, Page 17 of
Macomb County Records and a parcel of adjacent land described as :
Commencing at Southwest corner, Section 20: thence North 01 degree 29
minutes West 2067.78 feet along West section line: thence North 77 degrees
18 minutes East 283.05 feet and North 83 degrees 28 minutes 30 seconds East
41.26 feet along center line of Millar Road (86 feet wide) to point of
beginning: thence North 83 degrees 28 minutes 30 seconds East 36.05 feet
along said centerline: thence South 02 degrees 30 minutes East 190.47: thence
South 83 degrees 28 West 36.05 feet: thence North 02 degrees 30 minutes
West 190.47 feet to the point of beginning.

Clinton Township, in the County of Macomb, in the territory of
Michigan

Land-Patent **1593 { Certificate No. 1593, 2/1/1826}**

**Parcel Identification Commonly known as : 37655 Palmar, Clinton
Township, Michigan State, U.S.A. [48036]**

Page 2 of 15

Assignment of this patent, an instrument of the government of the United States, is inclusive only of the above legal-description; and of the filing of the declaration shall not deny or infringe on any rights; privileges; or immunity of any other assignee of any other portion of the land covered in the above described Patent-Certification No. 1593.

# MEMORANDUM OF THE LAW OF THE RIGHT'S, PRIVILEGES AND IMMUNITIES;

In testimony whereof; John Quincy Adams, of the Independence of the United-States, have caused these letters to be made patent, and the seal of the General-Land-Office, of the United States Department of the Interior, of the Bureau of Land Management, to be herecumto, and signed by the Commissioner of the General-Land-Office.

Given under his hand, at the city of the Washington, in the first-day of the February, in the year of our Lord, one-thousand-eight-hundred and twenty-six, and of the Independence of the United-States.

In the named patent-holder John Miller, this patent is passed by the title of the private-property-described above to the assignee in law is one whom the law vests the right, as set forth in the Land-Patent, by an Act of the Congress of the 24th of April, 1820, entitled "An Act making further provisions for the sale of the Public Lands."

That the named above assignees, patent-holder, **Glenn M. Prentice** is the true-holder of the private-property; by the Land-Patent; not used in commerce or in trade with the several-States and of the foreign-State of Michigan, in the United States of America as "citizen(s) of another State" see <u>COUNTY OF MONROE v. STATE OF FLORIDA and State of New York and Metropolitan Dade County, Florida;</u> No. 738, Dockets 79-7745, 81-7229, U.S. Court of Appeals,

Liber 012989 Page 00826

2nd Circuit, 1982

Treaty law is invoked under the Constitution for the United States of America, 1791, as amended, under Article IV, cl 2, as the supreme law of the land. **United States of America vs. State of Michigan, 471 F. Supp.192. Treaty of Ghent of 1814, and the Treaty with the Ottawa and Chippewa Nation of 1836,** in the territorial, Michigan, state of the United States, in the United States: The State of Michigan is a foreign corporation, incorporated by an act of congress particularly Act of the Twenty-Fourth-Congress, dated January 26, 1837, Act of June 15, 1836, ch. 99, Act of June 23, 1836, ch. 121. The constitutionality of the apportion of the District(s) of the corporate State of Michigan and the apportionment of the Legislative Body for the State of Michigan is in conflict with the boundaries of Michigan state as a sovereign state, see the Twenty-Fourth Congress. Sess. II Chapter 9, 1837 · · · An Act to admit the State of Michigan into the Union, upon an equal footing with the original States. This action by the Congress of the United States is alleged to be in violation of 28 U.S.C. Section 1330, No New States can be Erected within the state and No New State of the Fiction/Foreign-Jurisdiction has Jurisdiction over the Sovereign Citizen in the territory of Michigan, in the state of Michigan (see Title 28 U.S.C. Section 1330); under the C.U.S.A.F. Six, the State of Michigan and its creations are by this action in violation of the consent of admission , An Act of the Congress, January 26, 1837, admitting the State of Michigan into the Union, upon equal footing with the original States. Assignee, alleges that the State of Michigan and its Creations are in violation of the Eighteenth Congress. Sess II, chapter 6 An Act in addition to an Act, entitled "An Act to amend the ordinance and acts of Congress for the government of the territory of Michigan," and for other purposes. (a), and section 7. Eight, the Twenty-Fourth Congress. Sess. I. chapter 88, (1836) · · · An Act to establish the northern boundary line of the State of Ohio, and to provide for the admission

of the State of Michigan into the Union upon the conditions therein expressed (a) of section 2.  And

be it further enacted, That the constitution and State Government, which the people of Michigan

have formed for themselves be the same is hereby, accepted, ratified, and confirmed; and that the

said State of Michigan shall be, and is hereby, declared to be one of the United States of America.

The definition of **"STATE"** in <u>A Law Dictionary Adapted to the Constitution and Laws of</u>

<u>the United States of America and the Several States of the American Union</u> by John Bouvier, Sixth

Edition, Volume 1, clearly demonstrates the known and understood sovereignty of the 50 States of

the American Union, and the constitutional mandate applicable to and binding on the 50 States of

the American Union. See **<u>Texas  vs.  White</u>, 74 U.S. 700 (1868).**The Constitution ordains that the

judicial power of the United States shall extend to certain cases, and among them to controversies

between a State and citizens of another State; . . . and between a State, or the citizens thereof, and

foreign States, citizens or subjects. It ordains further, that in cases in which "**a State**" shall be a party,

the Supreme Court shall have original jurisdiction. [**74 U.S. 703**].

In the Constitution, the term **"State"** most frequently expresses the combined idea, just

noticed, of people, territory, and government.  A State, in the ordinary sense of the Constitution, is

a political community of free citizens, occupying a territory of defined boundaries and organized

under a government sanctioned and limited by a written constitution, and established by the consent

of the governed. [**74 U.S. 700**].

The assignee of this land-patent bring forth the Declaration of Land Patent in his own behalf

and fore himself invoking the protection under **<u>Article IV, Section 2, Clause 1 under the Privileges</u>**

**<u>and Immunities Clause, The 14th Amendment, Section 5</u>** holds the STATE and STATE

OFFICIALS TO THE DUE PROCESS CLAUSE and EQUAL PROTECTION CLAUSE. When

this clause is violated this is grounds for the assignees to petition the district court of the united states

for the district of Columbia, to remove action from the inferior tribunal court IN THE STATE OF

MICHIGAN to a court of competent and original jurisdiction. See **Hyde vs. Shine,** 199 U.S. 62

(1905) - - - **Section 1014, Rev.Stat.**, authorizes a removal from a judicial district in a state to the

District of Columbia. **Benson vs. Henkel,** 198 U.S. 1.

Held: in **Hughes vs. Fetter,** 341 U.S. 609 (1951) - - -  the statutory policy of Wisconsin

which excludes from its courts this Illinois cause of action is in contravention of the Full Faith and

Credit Clause of the Federal Constitution. Pp. 610-614.

(a) The Illinois statute is a "public act" within the meaning of the federal constitutional

provision that "Full Faith and Credit shall be given in each State to the public Acts . . . of every other

State." P. 611.

(b) Wisconsin cannot escape its constitutional obligation to enforce the rights and duties

validly created under the laws of other states by the simple device of removing jurisdiction from

courts otherwise competent. P. 611.

(c) Wisconsin's policy against entertaining suits under the wrongful death acts of other states

must give way, in the circumstances of this case, to the strong unifying principle embodied in the

Full Faith and Credit Clause looking toward maximum enforcement in each state of the obligations

or rights created or recognized by the statutes of sister states. Pp. 611-613.

(d) Assuming that the doctrine of forum non conveniens might, under some circumstances,

justify a forum state in refusing to accord full faith and credit to acts of sister states, the Wisconsin

statutory policy cannot be considered as an application of that doctrine, since this case is not one
which lacks a close relationship with Wisconsin.  Pp. 612-613. **257 Wis. 35, 42 N.W.2d 452**,
reversed. [341 U.S. 610].

That as patent-holder; the patent is passed by the title of the rights; of the bonafide purchaser
by John Miller, with all protections as set-forth; <u>United-States vs. Debell,</u> ( 1915) Cab. Sd. 227
F. 760; <u>United-States vs. Beaman,</u> 1917, Cas. Colo. 242 F. 876, of the Title: 43: U.S.C.A.: of
the section: 15; in the Certification as attached a true-copy of the official-records on file in this
office of the Bureau of Land-Management-Eastern-States; 7450 Boston-Boulevard; Springfield;
Virginia; [22153], as dated; February 11, 2003.

In <u>Damon vs. Hawaii</u>, 194 U.S. 154 (1904) - - - **A general law may grant titles as well**
**as a special law.**

**The act of Hawaii of 1846, "of Public and Private Rights of Piscary," together with**
**royal grants previously made, created and confirmed rights in favor of landlords in adjacent**
**fishing grounds within the reef or one mile to seaward which were vested rights within the**
**saving clause in the organic act of the Territory repealing all laws of the Republic of Hawaii**
**conferring exclusive fishing rights. [194 U.S. 154].**

That in the cases of the ejectment, where the question is, who has the legal title, the Federal-
Court has Jurisdiction. The foreign - **STATE OF THE MICHIGAN**, as a "citizen of another
State", through Administrative-Courts are without the authority to act. STATE OF MICHIGAN-
COURTS are not courts of the records or courts of the United States. See <u>Howlett vs. Rose</u>, 496
U.S. 356 (1990). The judge's and attorneys are member's of the Corporate-body-policy; acting in

Liber 012989 Page 00830

the name of the STATE OF MICHIGAN. Actions are taken in the name of the defacto-government; but only have proprietary-functions; performed in the name of the government.  Their salary are taxable; **Helvering Commissioner of the Internal-Revenue, vs. Therrell,** 303 U.S. 218-225; **Helvering vs. Powers,** 293 U.S. 214; **United-States vs. California,** 297 U.S. 175; **Macallen vs. Massachusetts,** 279 U.S. 620; **Elkins vs. Commissioner of the Internal- Revenue,** 91 F. 2d. 534; **Bean vs. Patterson,** 110 U.S. 401; **Helvering vs. Rankin,** 295 U.S. 123; **Commissioner of the Internal-Revenue vs. Coughlin,** 87 F. 2d. 670.  The Patent of the government of the Independence of the United-States is unassailable; **Sanford vs. Sanford,** 139 U.S. 645, 35 L.ed. 290.  In the federal-courts; the patent is held by the foundation on the title at law; **Fenn vs. Holmes,** 21 How. 481.

That in the cases of the legal-title the patent (Certification No. 1593) vests of the legal-title (Deed of the government of the United States)in the patent and is conclusive evidence of the Title; **Gilson vs. Chouteau,** 80 U.S. 92, 20 l.ed. 534; and that state's-act's cannot take away grantees right of the private-property of the land-patent conclusive evidence of the right's, state-statutes of the limitations' is no bar of the action over the land-adverse-possession-doctrine of the relation.  A Municipal-Corporation is not such a sovereign; citizen in the party with the power as of the claim of the immunity from the statute of the limitations; **Clements vs. Anderson,** 46 Miss. 581; **Evans vs. Erie Co.,** 66 pa. St. 222; **St Charles co. vs. Powell,** 22 Mo. 525.

'Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. For the purpose of executing these powers properly and efficiently they usually are given

Liber 012989 Page 00831

the power to acquire, hold, and manage personal and real property.

The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the state within the meaning of the federal Constitution.' *Hunter v. Pittsburg*, 207 U.S. 161, 178 , 28 S. Sup. Ct. 40, 46 (52 L. Ed. 151). In *Dartmouth College v. Woodward*, 4 Wheat. 518, 629-630, 659-664, 668, 694, it was distinctly recognized that as respects grants of political or governmental authority to cities, towns, counties, and the like, the legislative power of the states is not restrained by the contract clause of the Constitution; and in *East Hartford v. Hartford Bridge Co.*, 10 How. 511, p. 533 (13 L. Ed. 518), where was involved the validity of a state statute recalling a grant to a city, theretofore made and long in use, of power to operate and maintain a ferry over a river, it was said, that the parties to the grant did not stand-- 'in the attitude towards each other of making a contract by it, such as is contemplated in the Constitution, and as could not be modified by subsequent legislation.

This patent (Certificate No. 1593) for land is the highest evidence of title and is conclusive as against the government; and all claiming under the junior-patents or titles, until set aside or annulled, unless it is absolutely void on it's face; *U.S. vs. Stone*, 2 wall. ( U.S.) 525, 17 L.Ed. 765; *Warren vs. Van Brunt*, 19 Wall. ( U.S. ) 646, 22 L.Ed. 219; *St. Louis Smelting & Ref. Co., vs. Kemp*, 104 U.S. 636, 26 L.Ed. 875, the presumption being that it is valid and passed

Liber 012989 Page 00832

the title, <u>Minter vs. Crommelin,</u> 18 How. ( U.S. ) 87 , 15 L.Ed. 279. When issued upon confirmation of a claim or a previously-existing-title, it is documentary evidence, having the dignity of a record of the existence of that title or of such equities respecting the claim as justified by its recognition and confirmation, <u>Wright vs. Roseberry,</u> 121 U.S. 488, 7 Sup. Ct. 985,  30  L. 1039; it must be interpreted as a whole  its various provisions in connection with each other  and the legal deduction drawn therefrom must be conformable with the document, <u>Brown vs. Huger,</u> 21 How. ( U.S. )  328,  8, L. Ed. 415.

The patent is conclusive-evidence that the patentee has complied with the act of **congress** as concerns improvements on the land, etc, <u>**Jenkins vs. Gibson,**</u> 3 La. Ann. 203; **it is prima-facie** evidence that all legal requirements have been complied with, <u>**Northern Pac. R. Co. vs. Cannon,**</u> 54 Fed. 252, 4 C.C. A. 303, 7 U.S. App. 507, but a patent fraudulently obtained by illegal issue is void; <u>McGill vs. McGill,</u>  4. La. Ann. 262; <u>Stoddard vs.  Chambers,</u> 2 how. ( U.S. ) 284, 11 .Ed. 269; <u>Boring's Lessee  vs.  Lem - mon,</u> 5 Har. &. J. ( Md.) 223.

The land described was the property of the Independence of the United-States and under :

> Article of the 4: of the section: 3, cl. 2, of the constitution of the United States 1791, as amended, under the Constitution for the United States of America, provides that the congress shall have the power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United-States. The power over the public land thus entrusted to Congress is without limitations. It is not for the courts to say how that trust shall be administered, that is for congress to determine. Thus, Congress may constitutionally limit the disposition for the public dominie to a manner consistent with its views of public policy; <u>United-States vs. San Francisco,</u> 310 U.S. 16, 29, 30, 60 S.Ct. 749, 84 L.ed. 1050 ( 1940).

Liber 012989 Page 00833

Thus it would seem clear that the United-States-Government, and its custodian, General-Services-Administration, could make use of its property; as could any private-citizen with his home. Barrett vs. Kunzig, 331 F.Supp. P. 272, (1971).

Where the United States has parted with the title by a patent-legally-issued, and upon surveys legally made by itself and approved by the proper department, the title so granted cannot be impaired by any subsequent survey made by the government for its own purpose, Cage vs. Danks, 13 La. Ann. 128. A patent found on a void entry and survey nevertheless passes the legal-title from the government to the patent, but the commencement of the title is the patent, Stubblefield vs. Bogg's, 2 Ohio St. 216. It passes to the patent everything connected with the soil, forming any portion of its bed, or fixed to its surface, in short, everything connected with the term "Land", Moore vs. Smaw, 17 cal. 199, 79 Am. Dec. 123.

That with the land-patent, the patent-holder (assignee privat-property) is immune from collateral-attack, Collins vs. Bartlett, 44 Cal. 371; Webber vs. Pere Marquette Broom Co., 62 Mich. 626; 20 N.W. 469; Surget vs. Doe, 24 Miss. 118; Green vs. Barker, 47 neb. 934, 66 N.W. 1032. This particular Patent reaches beyond the actions of the special-tribunal of the foreign State of Michigan; and goes to the existence of a subject upon which it was competent to act, Steel vs. Smelting Co., 106 U.S. 447.

These patent-holders' is a "sovereign", Citizen in the territory, of Michigan, state, as a Citizen of the United States, not belonging to a political-body-Corporation, not being employees of the Federal or State-Governments. As a Citizen he is not subject to the Administrative-Laws of the STATE OF MICHIGAN, without boundaries in the Michigan-Constitution of 1963, or of the

Administrative-Laws, Codes of 1969, or of the proceedings under the Title: 5: U.S.C.A. Codes: of

the section 553. No amount of acquiescence or consent or approval of the doing of it by a

Administrative-Officer can create a right to do things; which it is unauthorized or forbidden to do,

**Department of Insurance vs. Church Members Relief Assn.** 217 Ind. 58; 2 C.N.E. 2d. 51,

128 A.L.R. 635. Nor can they be created by the courts in the proper exercise of their judicial-

functions, **Federal Trade Commission vs. Raladam Co.**, 283 U.S. 643, 75 L.Ed. 1324, 51

S.Ct. 587, 79 A.l.R. 1191.


**Wherefore**, Glenn M. Prentice, 37655 Palmar Clinton Township, Michigan State, U.S.A.

Record this Certified Land-Patent and Declaration of Land Patent, with this Governmental agency

as Notice of recording clamming all Rights, Privileges and Immunities under this Land-Patent an

instrument of the government of the United States that is exempt from collateral -Attack and/or

attachment and taxes by the State of Michigan under the Commerce Clause of the consent compact

of the Constitution for the United States of America, without judicial order by the courts of the

United States.

This particular Land-Patent, No 1593 is under the seal of the United States, and the keeper

of this seal is by An act of Congress directs the Secretary of State to keep the seal of the United

States, to make out and record, and affix the said seal to all civil commissions to officers of the

United States to be appointed by the President, by and with the consent of the Senate, or by the

President alone; provided that the said seal shall not be affixed to any commission before the same

shall have been signed by the President of the United States. See **Marbury vs. Madison,** 5 U.S.

Liber 012989 Page 00835

137 (1805) - - - "In all other cases," he says, it is a general and indisputable rule that where there is a legal right, there is also a legal remedy by suit or action at law whenever that right is invaded. - - - The Government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right.

### Patent signed by the President of the United States

By the act passed in 1796, authorizing the sale of the lands above the mouth of Kentucky river, the purchaser, on paying his purchase money, becomes completely entitled to the property purchased, and, on producing to the Secretary of State the receipt of the treasurer upon a certificate required by the law, the President of the United States is authorized to grant him a patent. It is further enacted that all patents shall be countersigned by the Secretary of State, and recorded in his office. If the Secretary of State should choose to withhold this patent, or, the patent being lost, should refuse a copy of it, can it be imagined that the law furnishes to the injured person no remedy? [Marbury vs. Madison, 5 U.S. 165].

### Political Powers of the President of the United States

By the Constitution of the United States, the President is invested with certain important political powers, in the [5 U.S. 166] exercise of which he is to use his own discretion, and is accountable only to his country in his political character and to his own conscience. To aid him in the performance of these duties, he is authorized to appoint certain officers, who act by his authority and in conformity with his orders.

Wherefore, Glenn M. Prentice, in his proper personam, as a Citizen of the United States

Liber 012989 Page 00836

brings this action in his own name and on behalf of himself ~~and in the name of the government of the United States, as a creation of the people of the United States, in its sovereignty.~~ *JMP*

Date; 2·24·03

_____
Glenn M. Prentice

Prepared by

Glenn M. Prentice
37655 Palmar
Clinton Township,
Michigan State, U.S.A. [48036]

_____
Glenn M. Prentice

Date; 2·24·03

# ACKNOWLEDGMENT

state of Michigan )
) ss
County of Macomb )

BEFORE ME; the undersigned authority; Glenn M. Prentice known to me (or satisfactorily-proven) a GOOD and LAWFUL-CHRISTIAN; man who full appellation is subscribed by the foregoing instrument; personally-appeared and acknowledged by me that he and her executed the same as his and her free act and deed for the purpose and consideration herein expressed and the capacity stated; and that the statements contained herein are true and correct to the best of his

Page 14 of 15

Liber 012989 Page 00837

information; knowledge; and belief.

Subscribed and affirmed before me this _24TH_ day of the _FEBRUARY_ ; 2003.

IN WITNESS WHEREOF; I have set My hand and official-seal;

_____
        Notary-Public

My commission-expires;

MACOMB CO.  SHARON A. MUNDRICK

4-28-05

Liber 012989 Page 00838

# The United States of America.

## To all to whom these presents shall come, Greeting:

Certificate
No. 1593

1190750

**Whereas** John Brother, of Monroe county, Territory of Michigan,
has deposited in the General Land Office of the United States, a certificate of the Register of the Land Office at Detroit Michigan,
whereby it appears that full payment has been made by the said John Brother
according to the provisions of the Act of Congress of the 24th of April 1820, entitled "An act making further provision for the sale of the Public Lands," for
the East half part of the north east quarter of section twenty, in township six, south, of Range Fourteen East,
the District of Detroit now Monroe, containing one hundred and eighty Acres, and,
according to the official plat of the survey of the said Lands, returned to the General Land Office by the Surveyor General, which said tract has been purchased by the said John Brother.

**NOW KNOW YE,** That the **UNITED STATES OF AMERICA,** in consideration of the premises, and in conformity with the several
acts of Congress, in such case made and provided, have Given and Granted, and, by these presents do give and grant, unto the said John Brother
and to his heirs                          the said tract above described: To Have and to Hold the same, together with all the rights, privileges, immunities and appurtenances, of whatsoever nature thereto belonging, unto the said John Brother
and to his                                    heirs and assigns forever.

**In testimony whereof,** I, John Quincy Adams,
PRESIDENT OF THE UNITED STATES OF AMERICA, have caused these letters to be made Patent, and the seal of the General Land Office to be hereunto affixed.

Given under my hand, at the City of Washington, the _____ day of January in the year of our
Lord, one thousand eight hundred and twenty six and of the Independence of the United States the

J. Q. A.

By the President,                          S. S.

Commissioner of the General Land Office.

Liber 012989 Page 00839

Bureau of Land Management
Eastern States
7450 Boston Boulevard
Springfield, VA 22153

2/11/03
Date

I hereby certify that this
reproduction is a true copy
of an official record on
file in this office

Authorized Signature

# EXHIBIT 2

