BOOK 13473    PAGE 0118

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

277815

MFTLI #0074 01                    Page 5 of 16                         Form 3010  1/01

BOOK 13473   PAGE 0111

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

277815

-6N(FL) (0005).01

Page 6 of 16

Form 3010   1/01

BOOK 13473  PAGE 0112

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property. If the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

277615

GMPL3 (0005).01                    Page 7 of 15                    Form 3010  1/01

BOOK 1347) PAGE 0113

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

277315

-6(FL) (0008) 01    Page 6 of 16    Form 3010 1/01

BOOK 13473    PAGE 6114

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

277815

Form 3010    1/01

BOOK 13473   PAGE 9115

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

277815

-6A(FL) (0087) 01                  Page 10 of 18                  Form 3010  1/01

BOOK 13473    PAGE 0116

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

277815

-6MPLI (0000) 01        Page 11 of 16        Form 3010   1/01

BOOK 13473   PAGE 8117

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

217815

-6R(FL) (0008).01                                Page 12 of 16                           Form 3010  1/01

BOOK 13672    PAGE 0118

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Services other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

277815

Page 12 of 18

Form 3010   1/01

BOOK 13473   PAGE 0119

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

277819

-06(FL) (0005.2?)                    Page 14 of 16                    Form 3010   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____
Witness: MARK HARMON

_____ (Seal)
Ann N. Neu                    -Borrower

4622 Quail High Boulevard,
Morrisville, NC 27560                (Address)

_____
Witness: ANSEL WEBB

_____ (Seal)
Douglas William Neu           -Borrower

4622 Quail High Boulevard,
Morrisville, NC 27560                (Address)

_____ (Seal)          _____ (Seal)
          -Borrower                         -Borrower


_____ (Address)       _____ (Address)


_____ (Seal)          _____ (Seal)
          -Borrower                         -Borrower


_____ (Address)       _____ (Address)


_____ (Seal)          _____ (Seal)
          -Borrower                         -Borrower


_____ (Address)       _____ (Address)


277815

-6(NC) (0008).01                    Page 14 of 16                    Form 3010  1/01

BOOK 13473    PAGE 0121

STATE OF FLORIDA, NORTH CAROLINA, WAKE                County ss:
The foregoing instrument was acknowledged before me this FEBRUARY 19, 2002        by

ANN McNEU & DOUGLAS WILLIAM NEU

who is personally known to me or who has produced DRIVERS LICENSES (FLORIDA) as identification.



Dn L. Coones
Notary Public        Dn S. Coon o s

MY COMMISSION EXPIRES:

277815

AMN

BOOK 13473    PAGE 0122

# EXHIBIT A

LOT 18, BLOCK 17, OF SANDALFOOT COVE SECTION FOUR, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 29, PAGE 241, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.



BOOK 13473    PAGE 0123

# 1-4 FAMILY RIDER
(Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 19th day of February, 2002 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to MORTGAGE INVESTORS CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 9549 Southwest 1st Place, Boca Raton, FL 33428

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."
277015

Initials [signature]

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3170 1/01
Page 1 of 4
-57R (0008)    VMP MORTGAGE FORMS - (800)521-7291

BOOK 13473    PAGE 0124

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

277815

...57R (0005)                      Page 2 of 4                      Initials: _____
                                                                     Form 3170 1/01

BOOK 13473    PAGE 0125

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

277815

-57R (0008)                    Page 3 of 4                    Initials:              Form 3170 1/01

BOOK 13473    PAGE 0126
Dorothy H. Wilken, Clerk

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
Ann M. Ness          -Borrower

_____ (Seal)
Douglas William Ness          -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower                                          -Borrower

277815

-57R (0008)          Page 4 of 4          Form 3170 1/01

| GMAC MORTGAGE, LLC,<br>Plaintiff,<br>vs.<br>ANN M NEU A/K/A ANN MICHELLE PEREZ,<br>et al,<br>Defendants. | IN THE CIRCUIT COURT OF THE<br>15TH JUDICIAL CIRCUIT, IN AND FOR PALM<br>BEACH COUNTY, FLORIDA<br>CIVIL DIVISION<br>CASE NO.: |

### DEFENDANT NOTICE OF COMPLIANCE WITH
### ADMINISTRATIVE ORDER NO.

**PLEASE TAKE NOTICE** that the below named Defendant has complied with the Administrative Order

by forwarding Defendant Foreclosure Questionnaire to Counsel of record for the Plaintiff this ____ day of

_____, 2008.


I Certify that a true and correct copy of this Notice of Compliance was sent to Plaintiff's counsel this ____

day of _____, 2008.


By: _____
              Borrower Signature

_____
Print Name

_____
Address

### NO DOCUMENTS ARE TO BE ATTACHED TO THIS NOTICE


### FILE THIS DOCUMENT WITH THE CLERK'S OFFICE



### EXHIBIT "D"

WPB 990738.1 00099998.0600I

## PLAINTIFFS LOSS MITIGATION INFORMATION

**Plaintiff:**      GMAC MORTGAGE, LLC

**Phone Number:**    1-800-441-2438 extension 610

**Fax Number:**    954-772-5018

**Address:**    1800 NW 49 ST Suite 120, Fort Lauderdale FL 33309

**Amount Due:**    $ 9,538.68

**PLEASE BE ADVISED:** This "Amount Due" provided herein is subject to change and the amount required to payoff the amounts due under the subject Note and Mortgage will be higher.  IN the event you seek Loss Mitigation, you will receive an updated breakdown all amounts due to payoff or reinstate the Note and Mortgage.

This Debt information is being provided pursuant to Palm Beach Administrative Order No. 3.305-10/08

**EXHIBIT "B"**

## EXHIBIT A
### Note: Please read Exhibits B, C, D.
# IMPORTANT NOTICE TO HOMEOWNER
## A FORECLOSURE ACTION HAS BEEN
### FILED AGAINST YOU
### YOU HAVE RIGHTS DURING THIS FORECLOSURE

### LEGAL

You are urged to seek legal counsel to protect your rights and your home. If you are able to afford an attorney, you may contact the Palm Beach County Bar Association Lawyer Referral Service at 561-687-3266 or 561-4709256 (Boca/Delray).

If you cannot afford an attorney, you may contact your local legal aid or legal services provider.

| | |
|---|---|
| Legal Aid Society of Palm Beach County, Inc. | 561-655-8944 |
| Florida Rural Legal Services, Inc. | 561-820-8902 |
| | 561-993-0003 (Belle Glade) |

### HOUSING COUNSELING

| | |
|---|---|
| Acorn Housing Corporation | 561-588-7618 |
| Consumer Credit Counseling Services, Inc. | 800-251-2227 |
| Credit Card Management Services | 561-472-8000 |
| Delray Community Development Corporation | 561-266-9840 |
| Housing Partnership, Inc. | 561-841-3500 |
| Life Improvement for Tomorrow, Inc. | 561-868-7026 |
| Urban League of Palm Beach County, Inc. | 561-833-1461 |
| Hope Now | 888-995-HOPE |

**One or more of the following options may be available to help you save your home. Contact a Housing Counseling agency to find out additional information.**

**Reinstatement:** Repayment of the total amount that you are behind in a lump sum payment.

**Forbearance:** Temporary reduction or suspension of your mortgage payments.

**Repayment Plan:** Agreement that allows the homeowner to repay the amount that you are behind gradually while making your regularly scheduled monthly payments.

**Loan Modification:** Written agreement that permanently changes one or more of the original terms of your mortgage to make the payments more affordable.

**Short Sale:** Lender may allow you to sell the home for less than the total amount owed on the mortgage. If lender agrees to the short sale, the remaining portion of the mortgage that exceeds the net proceeds from the sale will be written off by the lender.

**Deed-in-lieu of Foreclosure:** Lender will cancel the mortgage if the homeowner voluntarily transfers the title of the property to the mortgage lender.

**AVOID FORECLOSURE RESCUE SCAMS:** You may be contacted by individuals or companies that claim they can save your home from foreclosure. Please seek legal advice before you sign any documents or pay money to anyone offering to save your home from foreclosure. If you think that you have been a victim of a foreclosure scam, you may call one of the following numbers for assistance:

| | |
|---|---|
| Florida Department of Financial Regulation | 1-800-342-2762 |
| Federal Trade Commission | 1-877-382-4357 |
| Office of the Attorney General | 1-866-966-7226 |
| Consumer Services Division of Florida Department of Agriculture | 1-800-435-7352 |

# INFORMACION IMPORTANTE
## PARA LOS DUEÑOS DE VIVIENDA

### UN AVISO DE REPOSECION DE SU VIVIENDA SE HA INICIADO EN CONTRA SUYA. USTED TIENE DERECHOS DURANTE EL PROCESO DE REPOSECION

**LEGAL**

Usted debe buscar consejo legal para proteger sus derechos y su vivienda. Si usted puede pagar un abogado, puede contactar the Palm Beach County Bar Association Lawyer Referral Service al (561) 687-3266 ó (561) 454-3256 (Boca/Delray).

Si usted no puede pagar un abogado, puede contactar su agencia local de ayuda legal ó proveedor de servicios legales.

| | |
|---|---|
| Legal Aid Society of Palm Beach County, Inc. | 561 655-8944 |
| Florida Rural Legal Services, Inc. | 561 820-8902 |
| | 561 993-0003 (Belle Glade) |

**AGENCIAS DE ASESORAMIENTO VIVIENDA**

| | |
|---|---|
| Acorn Housing Corporation | 561-588-7618 |
| Consumer Credit Counseling Services, Inc. | 800-251-2227 |
| Credit Card Management Services | 561-472-8000 |
| Delray Community Development Corporation | 561-266-9846 |
| Housing Partnership, Inc. | 561-841-3500 |
| Life Improvement for Tomorrow, Inc. | 561-868-7026 |
| Urban League of Palm Beach County, Inc. | 561-833-1461 |
| Hope Now | 888-995-HOPE |

Una ó más de las siguientes opciones estarán a su disposición para ayudarlo a salvar su casa. Contacte una agencia de Asesoramiento de Vivienda para encontrar información adicional.

**Reestablecimiento:** Reembolso de la cantidad total atrasada en un solo pago.

**Tolerancia/Paciencia:** Reducción o suspensión temporal de sus pagos de hipoteca.

**Plan de reembolso:** Acuerdo que permite al dueño de la vivienda pagar la cantidad que está atrasado gradualmente, mientras que hace el pago acordado o programado de su cuota mensual regularmente.

**Modificación del Préstamo:** Acuerdo escrito que cambia permanentemente uno ó mas de los terminos originales de su hipoteca, para hacer pagos que usted pueda pagar.

**Venta Corta:** El banco puede permitirle vender su casa por menos del valor que usted debe de la hipoteca. El banco aprueba la venta corta, la porción restante de la hipoteca, después del valor de venta de la casa será asumida por el banco.

**Deed-in-lieu of Foreclosure:** El banco cancelara la hipoteca si el propietario voluntariamente transfiere el título de propiedad al banco.

**EVITE ENGAÑOS SOBRE EL TRATAR DE SALVAR SU PROPIEDAD DE LA REPOSECION:**
Usted puede ser contactado por individuos o compañias que ofrecen salvar su casa de la reposeción. Por favor busque consejo legal antes de firmar cualquier documento o antes de pagar dinero a cualquiera que se ofrezca a salvar su casa de la reposeción. Si usted piensa que ha sido victima de un engaño sobre la reposeción de su vivienda, puede contactar uno de los siguientes numeros para asistencia.

| | |
|---|---|
| Florida Department of Financial Regulation | 1-800-342-2762 |
| Federal Trade Commission | 1-877-382-4357 |
| Office of the Attorney General | 1-866-966-7226 |
| Consumer Services Division of the Fla. Dept. Of Agriculture | 1-800-435-7352 |

### ENPORTAN POU MOUN KI GIN KAY
### MIN ACTION BANK YO PRAN POU YO SEZI KAY OU.
### GINYIN LWA POU MOUN TANKOU W POU SI BANK YO TA VLE SEZI KAY OU

**LEGAL**

NOU MANDE POU W CHACHE YON AVOKA POU W MANDE KI DWA OU GINYEN. SI OU GIN KOB POU W PRAN YON AVOKA, OU MET RELE PALM BEACH COUNTY BAR ASSOCIATION LAWYER REFERRAL SERVICE NAN NIMERO SA 561-687-3266 OUBYEN 561-451-3256 (SI OU RETE DELRAY/BOCA RATON)

**SI OU PA GIN KOB POU YON AVOKA RELE:**

| | |
|---|---|
| LEGAL AID SOCIETY OF PALM BEACH COUNTY, INC. | 561-655-8944 |
| FLORIDA RURAL LEGAL AID SERVICES, INC. | 561-820-8902 |
| | (BELLE GLADE) 561-993-0003 |

COMPANI LOU KA RELE POU W MANDE INFORMASION

| | |
|---|---|
| ACORN HOUSING CORPORATION | |
| CONSUMER CREDIT COUNSELING SERVICES, INC. | 561-588-7618 |
| CREDIT CARD MANAGEMENT SERVICES | 800-251-2227 |
| DELRAY COMMUNITY DEVELOPMENT CORP. | 561-472-8000 |
| HOUSING PARTNERSHIP, INC. | 561-266-9840 |
| LIFE IMPROVEMENT FOR TOMORROW, INC. | 561-841-3500 |
| URBAN LEAGUE OF PALM BEACH COUNTY, INC. | 561-868-7026 |
| HOPE NOW | 561-833-1461 |
| | 888-995-HOPE |

OU GINYEN YOUN OUBYEN PLUS OPTION KI KAPAB DISPONIBL POU EDE W KINBE KAY OU

**REINSTATEMENT:** POU W PEYE TOUTE KOB OU TE DWE YO

**FORBEARANCE:** YAP REDUI OUBYEN SUSPANN KOB OU KONN PEYE KAY LA CHAK MWA POU YON TI TAN

**REPAYMENT PLAN:** YON PLAN KI PERMET MET KAY LA PEYE TOUTE KOB LI TE DWE YO AN TI MOSO EPI TOUTE KOB OU KONN PEYE CHAK MWA.

**LOAN MODIFICATION:** YON NOUVEL ANGAGEMAN SOU PAPIE KAP PERMET OU CHANJE KEK BAGAY NAN PREMIE ANGAGEMAN POU W KAPAB PEYE KAY LA PI FASIL.

**SHORT SALE:** ANPIL BANK KA PERMET OU POU W VAN KAY LA POU YON TI KOB KI PI PTIT KE SA OU DWE A. SI BANK LA ACEPTE ANPIL FWA YO PAP PENALIZE W POU RES KOB YO TEDI A.

DEED-IN-LIEU OF FORCLOSURE:   ANPIL FWA BANK YO ACEPTE POU-W TRANSFERE PAPIE KAY LA SOU NON YO POU YO KAPAB RETIRE KAY LA SOU NON W

POU EVITE VOLEUR:  TOUJOU CONTACTE YON MOUN OU BIEN YON AVOKA KI KAPAB EDE OU. PA SIYIN PAPIE EPI PA BAY KOB AK MOUN KI PA GINYIN YON KONPANIES GOUVERNEMAN REKONET.   VEYE VOLEUR.

SI OU PANSE OU SE YON VIKTIM KI TE PRAN KOU DEJA NAN MEN YOUN NAN MOUN SA YO, OU MET RELE YOUN NAN NIMERO SA YO POU YO KA EDE W.

FLORIDA DEPARTEMENT OF FINANCIAL REGULATION      800-342-2762
FEDERAL TRADE COMMISSION                          877-382-4357
OFFICE OF THE ATTORNEY GENERAL                    866-966-7226
CONSUMER SERVICES DIVISON
FLA. DEPT. OF AGRICULTURE                         800-435-7352

## DEFENDANT BORROWER'S FORECLOSURE QUESTIONNAIRE

Borrower(s) name(s): _____

Phone Number: _____

Address: _____

_____

_____

You must submit the following to Plaintiffs attorney legible duplicates (do not send original or your only copies of documents):

1.    Completed Financial Statement (attached)

2.    Two years Tax Returns

3.    Proof of Current Employment (three months wage slips or other proof)

4.    Proof that you reside in the property (ie:  last month utility bill)

5.    FOR SHORT SALE APPLICANT:  Executed sales contract.

6.    FOR SHORT SALE APPLICANT:  Proposed HUD-1

## THIS IS NOT AN ANSWER TO THE COMPLAINT

## DO NOT FILE THIS WITH THE CLERK OR THE COURT

## RETURN THIS TO THE PLAINTIFF

EXHIBIT "C"

## FINANCIAL STATEMENT

**BORROWER INFORMATION**

Account #: _____    Reason for Delinquency: _____

Have you contacted a Consumer Credit Counseling Agency? _____

If "Yes" Agency Name and Contact Number: _____

Borrower Name: _____
Co-Borrower Name: _____
Mortgaged Prop. Address: _____
Mailing Address: _____
Home Phone: _____
Other Phone: _____

**EMPLOYMENT INFORMATION**

| BORROWER | CO-BORROWER |
|---|---|
| Employer: _____ | Employer: _____ |
| Emp. Address: _____ | Emp. Address: _____ |
| Emp. Phone: _____ | Emp. Phone: _____ |
| Job Position: _____ | Job Position: _____ |

**BANKRUPTCY INFORMATION**

Chapter Type: _____    Attorney Name: _____
Filing Date: _____    Phone #: _____
Case #: _____    Active:  Yes: _____    No: _____

**ASSETS/LIABILITIES**

| DESCRIPTION | ESTIMATED VALUE | AMOUNT OWED | NET VALUE |
|---|---|---|---|
| Primary Residence Address: | $ | $ | $ |
| Number of dependents living on the property | | | |
| Number of persons living on the property | | | |
| Is the property listed for sale? If Yes please list Agent name and contact phone number: | | | |
| Listing Price  $ | | | |
| Other Real Property Address: | | | |
| Number of Automobiles Owned Automobile | | | |

| Make/Model: | | | |
|---|---|---|---|
| Automobile Make/Model: | $ | $ | $ |
| Bank Accounts – Checking: | | | |
| Bank Accounts – Savings: | | | |
| IRA/KEOGH Accounts: | $ | $ | $ |
| 401K Savings Plan: | | | |
| Stocks / Bonds / CDs: | | | |
| Boats | $ | $ | $ |
| Cash Value of Life Insurance: | | | |
| Face Value of Life Insurance | | | |
| Collections / Art / Coins, Etc: | $ | $ | $ |

| Computers: | | | |
|---|---|---|---|
| Other: | | | |
| Other: | | | |
| Other: | | | |
| Other: | | | |

**INCOME DATA**

| DESCRIPTION | | INCOME | TOTAL |
|---|---|---|---|
| Gross Salary / Wages: | | $   $ | $ |
| Overtime Pay: | | | |
| Commissions: | | | |
| Bonuses: | | $   $ | $ |
| Alimony / Child Support: | | | |
| Rental Property: | | | |
| Interest / Dividends: Savings Accounts: | | $   $ | $ |
| Life Insurance: | | | |
| Stocks/Bonds: | | | |
| "Less" Taxes:   Federal Income Tax: | | $   $ | $ |
| FICA: | | | |
| State Income Tax: | | | |
| Other: | | $   $ | $ |
| Other Deductions (Specify): | | | |
| Other Income (Specify): | | | |
| Other Income (Specify): | | | |
| NET INCOME: | $ | $ | $ |

| DESCRIPTION | MONTHLY PYMTS | BALANCE DUE | # MONTHS DELINQ. |
|---|---|---|---|
| Mortgage and Land Contract: | $ | $ | |
| Other Mortgage(s): | | | |

| | | | |
|---|---|---|---|
| Child Care | | | |
| Alimony / Child Support | $ | $ | |
| Automobile Loan | | | |
| Automobile Loan2 | | | |
| Finance Company | $ | $ | |
| Installment | | | |
| Other Loan (Specify): | | | |
| Visa | $ | $ | |
| MasterCard | | $ | $ |
| Other Credit Card (Specify): | | | |
| Other Credit Card (Specify): | | | |
| Cooperative (COOP) Fees | | | |
| Garnishment/Levys | | | |
| Hazard Insurance (rental & residence): | | | |
| HOA Special Assessment: | | | |
| HOA / Condo Maintenance: | | | |
| IRS Tax Payment | | | |
| School Tuition | | | |
| Taxes: | | | |
| Utilities (rental & residence): | | | |
| Automobile Insurance: | | | |
| Health Insurance: | | | |
| Life Insurance: | | | |
| Church: | | | |
| Club or Union Dues: | | | |
| Doctor/Dentist: | | | |
| Pharmaceutical Drugs: | | | |
| Hospital: | | | |
| Gasoline (Auto): | | | |
| Auto Maintenance: | | | |
| Monthly Parking: | | | |
| Food / Groceries (Family): | | | |
| School or Work Lunches Purchased: | | | |
| New Clothes/Shoes: | | | |
| Dry Cleaning: | | | |
| Spending Money: | | | |
| Cable TV: | | | |
| Clubs, Sports & Hobbies: | | | |
| Entertainment (Movies, Dinner, Etc.): | | | |
| Vacations: | | | |
| Other (Please Specify): | | | |
| Other (Please Specify): | | | |
| Other (Please Specify): | | | |
| Other (Please Specify): | | | |

| Other (Please Specify): | | | | |
|---|---|---|---|---|
| | TOTAL: | $ | $ | $ |

**AUTHORIZATION AND ACKNOWLEDGEMENT**

I obtained a Mortgage Loan secured by the above referenced mortgaged property. I verify that all information presented herein as well as attachments are true, accurate and correct to the best of my knowledge. I understand that submission of this information in no way obligates my mortgage servicer, owner of my mortgage or insurer to provide assistance to me.

By signing this Financial Statement, I hereby authorize my mortgage servicer and/or mortgage insurer to: 1) order a credit report from any credit reporting agency; 2) verify, when deemed necessary, any current or previous employment, bank accounts, tax returns, or assets; 3) contact my real estate agent and/or credit counseling service representative (if applicable); 4) release any and all information concerning the above.

I agree that the financial information provided herein is incorrect and such errors have induced actions by the mortgage servicer, owner of my mortgage or mortgage insurer that would not have been taken, had the true facts been known. I shall be liable for any or all losses or damages to those persons.

YOU SHOULD CONSIDER THIS LETTER AS COMING FROM A DEBT COLLECTOR. AS WE SOMETIMES ACT AS A DEBT COLLECTOR. ANY INFORMATION PROVIDED BY YOU WILL BE USED TO COLLECT THIS DEBT. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY.

PLEASE SIGN BELOW

_____     _____     _____     _____
Borrower                Date           Co-borrower              Date