MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Adam A. Lewis
Jonathan M. Petts

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, *et al.,* | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| WENDY ALISON NORA, | ) | Adv. Case No.  13-01208 (MG) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEBTORS' OBJECTION TO THE MOTION OF WENDY ALISON NORA
TO DISQUALIFY JUDGE MARTIN GLENN**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 3

    A.    The October 9 Hearing and Order to Show Cause ................................... 3

    B.    The Disqualification Motion..................................................................... 5

OBJECTION.......................................................................................................... 7

    A.    The Court Is Not Biased Against Nora or Her Purported Clients.............. 9

    B.    The Court Is Not Biased Against Borrowers ......................................... 11

    C.    Disqualification of This Court Could Jeopardize the
            Administration of These Chapter 11 Cases ........................................... 13

CONCLUSION.................................................................................................... 14

12-12020-mg   Doc 5641   Filed 11/08/13   Entered 11/08/13 15:58:40   Main Document
Pg 3 of 18


# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Da Silva Moore v. Publicis Groupe*,
    868 F. Supp. 2d 137 (S.D.N.Y. 2012)................................................................7, 8

*In re Drexel Burnham Lambert, Inc.*,
    861 F.2d 1307 (2d Cir. 1988).............................................................................8, 9

*In re Kensington International Ltd.*,
    353 F.3d 211 (3d Cir. 2003)...................................................................................9

*Lewis v. Tuscan Dairy Farms, Inc.*,
    25 F.3d 1138 (2d Cir. 1994)..............................................................................8, 11

*Liteky v. United States*,
    510 U.S. 540 (1994)..........................................................................................8, 11

*Martens v. Thomann,*
    273 F.3d 159 (2d Cir. 2001)................................................................................10

*National Auto Brokers Corp. v. General Motors Corp.,*
    572 F.2d 953 (2d Cir. 1978), *cert. denied,* 439 U.S. 1072 (1979)......................8, 14

*United States v. Colon*,
    961 F.2d 41 (2d Cir. 1992)....................................................................................8

*United States v. Denton*,
    434 F.3d 1104 (8th Cir. 2006) ..............................................................................8

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966)..........................................................................................8, 11


**STATUTES**

28 U.S.C. 455.......................................................................................................7

-ii-

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") submit this objection (the "Objection") to the motion to disqualify Judge Martin Glenn from presiding over any further proceedings in this matter [Docket Nos. 5346 and 5347, and Adversary Docket No. 34] (as amended, the "Disqualification Motion") of Wendy Alison Nora ("Nora").[1] In support of the Objection, the Debtors submit the declaration of Norman S. Rosenbaum, annexed hereto as Exhibit 1.  In further support of the Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Court should deny the Disqualification Motion because Nora has provided no credible explanation as to why this Court's impartiality might reasonably be questioned under 28 U.S.C. § 455.  Nora has failed to provide even the slightest evidence in support of her allegation that this Court is biased against (i) Nora and her purported clients, or (ii) Borrowers[2] in general.  In fact, Nora relies strictly on her own allegations.  However, the record in these Chapter 11 Cases indicates just the opposite. This Court has made every effort to ensure that Nora will have a complete opportunity to

---

[1] The Disqualification Motion has been joined by Nora's purported client, Paul Papas II.  *See Joinder of Paul N. Papas II and Declaration in Support of Emergency Motion to Vacate Verbal "Orders" of Judge Martin Glenn Entered on October 9, 2013 Purporting the Require Attorney Wendy Alison Nora to Show Cause why she Should Not be Sanctioned for Filing the Response of Paul N. Papas II to the Debtors' Objection to Claim #242 Initiated SUA Sponte on the Grounds that his Response was "Scurrilous" Under Bankruptcy Rule 9024 Incorporating Rile 60(b)(4) of the Federal Rules of Civil Procedure and Joinder the Motion to Disqualify Judge Martin Glenn Under 28 USC Secs. 144 and 466(a) and 455(b)(1)* [Docket No. 5382].  Papas's joinder, to the extent relevant, parrots the arguments made in the Disqualification Motion.

[2] As used herein, the term "Borrower" means a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtors.

ny-1114256

be heard on the potential revocation of her *pro hac vice* admission and that her purported

clients are not prejudiced by any such revocation.  Moreover, Nora's spurious allegations

are belied by the record of these Chapter 11 Cases.  This Court has afforded numerous

procedural protections to *pro se* Borrowers during the pendency of these Chapter 11

cases.  Recognizing the unfamiliar circumstances in which many Borrowers find

themselves in filing pleadings and participating in hearings, this Court has gone to great

lengths to allow Borrowers, both *pro se,* and those represented by counsel, a full and fair

opportunity, to appear and present their positions in a multitude of contested matters and

adversary proceedings.  Nora's allegation that Judge Glenn has an active bias against

Borrowers is nothing short of reckless, bordering on the absurd.  Finally, even if Nora

had made a colorable argument for the Court's disqualification under 28 U.S.C. § 455,

disqualification would still be inappropriate because the assignment of a new judge to

these Chapter 11 Cases on the eve of the Debtors' plan confirmation hearing would

require the new judge to acquaint himself with the record in these complicated, 18-

month-old cases.  That would entail a massive waste of time and expense and would

delay and potentially jeopardize the Debtors' anticipated emergence from Chapter 11.

The imposition of such a burden on these proceedings is a factor relevant to the

determination of the Disqualification Motion.  Accordingly, the Debtors request that the

Disqualification Motion be denied.

## BACKGROUND

### A.   The October 9 Hearing and Order to Show Cause

2.      Key to resolution of the Disqualification Motion is what happened at an omnibus hearing on October 9, 2013 in the Chapter 11 Cases (the "October 9 Hearing") and the Court's issuance of an order to show cause the next day.

3.      During the October 9 Hearing, the Court questioned the basis for Nora's appearance *pro hac vice* on behalf of Paul Papas II ("Papas") in response to the Debtors' objections to Papas's proofs of claim.  October 9 Hearing Transcript, annexed to Exhibit 1, at 56:23-58:24; 66:10-19.  The Court stated, in relevant part, that Nora had filed a "frivolous" and "scurrilous" response to the Debtors' objection to Papas's proof of claim (the "Papas Response"), which "goes off in every tangent possible other than addressing the issues raised in the debtors' papers." *Id.* at 75:13-14.  The Court stated to Nora that "the pleadings you have filed in this matter would support revoking your pro hac vice application.  But I'm going to give you a chance to respond to that in writing." *Id.* at 58:21-24.  The Court stated that it would issue an order to show cause as to whether Nora had properly been granted *pro hac vice* admission to appear for anyone other than herself and, if so, whether her *pro hac vice* admission should be revoked.  *Id.* at 58:11-24. The Court expressly stated that it would "reserve [judgment] until the Court . . . reads papers and hears argument on the order to show cause . . . ." *Id.* at 66:16-17.  The Court then permitted Nora to respond to the Debtors' objection to Papas's claim.  *Id.* at 59:12-14; 66:16-17.  The Court stated that its decision on the Papas matter would be rendered in a written opinion.  *Id.* at 77:9.

ny-1114256

4.      As the October 9 hearing continued, the Court heard the Debtors'

objection to the claim of Caren Wilson ("Wilson"), another purported client of Nora.

Because Wilson had very recently purported to amend her proof of claim, the Court

adjourned the Debtors' objection to Wilson's claim at the Debtors' request.  *Id.* at 143:8-

144:5; 145:2-11.  The Court stated:

> The matter is adjourned and, [Debtors' counsel], you'll put it back on the
> calendar after the Court hears its order to show cause why Ms. Nora's pro
> hac application or pro hac status should be -- whether it should be
> revoked. We'll see -- Ms. Wilson better *consider* other counsel, but for
> now we'll go forward[.]

*Id.* at 144:20-25 (emphasis added).

5.      Finally, the Court considered the Debtors' objection to proof of

claim no. 997 of Jan Ibrahim ("Ibrahim" and the "Ibrahim Claim").  The Court did not

permit Nora to appear on behalf of Ibrahim because she had not filed a notice of

appearance for that purpose.  *Id.* at 146:11-147:8.  The Court then held that the Ibrahim

Claim should be disallowed on the merits based on the Court's review of the papers.[3]

6.      The next day the Court entered the *Order to Show Cause Why Pro*

*Hac Vice Admission of Wendy Alison Nora Should Not be Revoked* [Docket No. 5330]

(the "Order to Show Cause").  The Order to Show Cause requires Nora to appear on

---

[3] *Id.* at 149:6-20 ("Mr. Ibrahim acknowledges that he applied for a loan modification and he alleges that
while he was waiting for a modification, his loan was transferred to a collection agency, FBCS, Inc. The
debtors' reply shows that Mr. Ibrahim ceased making payments on his loan in November 2008. The debtors
mailed Mr. Ibrahim several breach of contract letters in 2009 and offered him a permanent loan
modification on April 1, 2009.  That loan modification was ulti -- was denied on June 30, 2009 because Mr.
Ibrahim failed to make the first payment under the modification.  The debtors reported Mr. Ibrahim's
account to the credit bureau on several occasions in 2009 because his account was past due at the time.
Based on the Court's review of the papers, in particular the events submitted by the debtors, the objection
to the claim of Mr. Ibrahim is sustained.").

4

November 7, 2013, at 2:00 p.m.[4] to explain why her appearance as counsel *pro hac vice*

on behalf of anyone other than herself *pro se* should not be revoked (assuming that such

approval was ever granted in the first place).  Order to Show Cause at 5.  The Order to

Show Cause provides that Nora's response shall address, *inter alia*, "what, if any, action

or orders the Court should enter to protect the rights, if any, of the individuals on whose

behalf Nora has sought to appear, in the event her *pro hac vice* admission is revoked."[5]

*Id.*

### B.    The Disqualification Motion

7.    On October 13, 2013, Nora filed the Disqualification Motion.  In it,

Nora asserts that this Court showed "extreme bias and prejudice against [Nora] and her

clients" at the October 9 Hearing.  Motion ¶ 2.  In fact, Nora asserts that the Order to

Show Cause itself contains "indisputable evidence of Judge Glenn's personal bias against

her clients," in providing that Nora's response shall address:

> what, if any, action or orders the Court should enter **to protect the rights,
> *if any*, of the individuals on whose behalf Nora has sought to appear**,
> in the event her *pro hac vice* admission is revoked.

Motion ¶ 8, quoting Order to Show Cause at 5 (emphasis in Motion).  According to Nora,

"[a]ll individuals have rights" and thus "[n]othing could more clearly demonstrate Judge

Glenn's personal bias against the individual homeowners in these proceedings than his

own signed Order … [that Nora] should show cause ... *whether these individuals have*

*any rights in these proceedings*."  Motion ¶ 9 (emphasis in Motion).

---

[4] The November 7, 2013 omnibus date was adjourned to November 15, 2013.

[5] To date, the Court has not issued any orders on either the Papas Claim or the Ibrahim Claim.

ny-1114256

8.      Nora finds further evidence of the Court's bias against her and her

purported clients in:

- the Court's statement that the Papas Response is scurrilous;

- the Court's purported statement on the record that Wilson "should seek other counsel because [Nora's] pro hac vice status was 'going to be revoked'"; and

- the Court's purported decision to verbally "**revoke**[] the pro hac admission of [Nora] and wantonly disallow the claim of Jan Ibrahim (Claim #997) for failure to appear and argue his response when [Nora] was present in the courtroom to argue on his behalf."

Motion ¶ 3 (emphasis in original).

9.      In addition, Nora asserts that this Court has an active bias against

Borrowers in general in these Chapter 11 Cases.  Although Nora acknowledges that

"[l]istening to any single hearing would suggest that Judge Glenn was sympathetic to the

fate of [Borrowers] struggling" with foreclosure actions (Motion ¶ 14 n.8), she asserts

that the Court's actions at the October 9 Hearing "exposed what [the Court's] bias has

been all along: [the Court] will order whatever it takes to assure that the homeowner

claims are marginalized, extinguished and crammed down into a pitiful ... $57.6 million

dollars, pro rata ..."  Motion ¶ 20.  *See also* Motion ¶ 14 (stating that the Court has

"showed a distinct unwillingness to hear the concerns of the homeowner creditors").

10.      As evidence of the Court's bias against Borrowers, Nora points to:

- the Final Supplemental Servicing Order permitting foreclosure actions against Borrowers to continue during the Chapter 11 Cases [Docket No. 774], by which the Court has "affirmatively aided the Debtors in obtaining more assets for liquidation," *id.* at ¶ 14;

- the Court's "stubborn[ ] deni[al of] relief from the automatic stay to every homeowner [to liquidate claims in another forum], whether represented or unrepresented by counsel," *id.* at n.8; and

6

- the Order to Show Cause, which was purportedly entered because the Court "has suddenly realized that, whereas almost all homeowner voices are on the verge of being silenced, not only do a few very loud voices remain (Nora, Papas and Nora's clients) and a pretext must be found to silence those voices," *id.* at ¶ 16.[6]

11.     Accordingly, the Disqualification Motion seeks to disqualify this Court, pursuant to 28 U.S.C. § 455(a)-(b)(1), from hearing "any further matters in these proceedings," including, but not limited to, the Debtors' objection to Nora's own proofs of claim, the confirmation of the Debtors' Chapter 11 plan, the above-captioned adversary proceeding, and the Order to Show Cause.  Motion at pp. 1-2.

## **OBJECTION**

12.     Disqualification for bias is governed by 28 U.S.C. § 455, which is made applicable to the Chapter 11 Cases and these proceedings by Bankruptcy Rule 5004(a).  Section 455 states, in pertinent part, that:

> [a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned [including] [w]here he has a personal bias or prejudice concerning a party.

28 U.S.C. 455(a)-(b)(1) (2006).

13.     The purpose of section 455(a) is "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 148 (S.D.N.Y. 2012).  The test for recusal under section 455(a) is "whether 'an objective, disinterested observer fully

---

[6] *See also* Motion at ¶¶ 11, 15 (asserting that Nora is a "representative of the public interest" and is "the only voice which can integrate the facts and demonstrate that the numerous orders of this Court are legally unsupported" for her clients).

7

informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'" *Id.* at 149.  "The alleged bias and prejudice [sufficient to warrant disqualification] must stem from an *extrajudicial* source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (emphasis added); *accord Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see United States v. Colon*, 961 F.2d 41, 44 (2d Cir. 1992).

14.     "To establish a basis for recusal, movants must overcome a presumption of impartiality, and the burden for doing so is substantial." *Da Silva Moore,* 868 F. Supp. 2d at 150 (internal quotation and citation omitted).  *See also United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006) ("A judge is presumed to be impartial, and 'the party seeking disqualification bears the substantial burden of proving otherwise.'"). As the Second Circuit has noted, "a judge has an affirmative duty ... not to disqualify himself unnecessarily, particularly where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience." *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.,* 572 F.2d 953, 958 (2d Cir. 1978), *cert. denied,* 439 U.S. 1072 (1979) (internal quotation omitted).  *See also Da Silva Moore*, 868 F. Supp. 2d at 151 (noting that "the public interest mandates that judges not be intimidated out of an abundance of caution into granting disqualification motions ...").

15.     Finally, discretion is confided in the judge against whom disqualification is sought to determine whether to disqualify himself.  *See In re Drexel*

*Burnham Lambert, Inc.,* 861 F.2d 1307, 1312 (2d Cir. 1988) (judge presiding over a case

is in the best position to appreciate the implications of those matters alleged in a recusal

motion); *see also In re Kensington Int'l Ltd.,* 353 F.3d 211, 224 (3d Cir. 2003)

(determination of recusal motion by presiding judge is particularly appropriate where the

judge has presided over a complex litigation for an extended period).

A.    **The Court Is Not Biased Against Nora or Her Purported Clients**

16.    Nora's assertion that the Court is biased against her and her

purported clients is unfounded.

17.    As an initial matter, Nora's assertion that the Order to Show Cause

*itself* demonstrates the Court's bias against Nora's purported clients by requiring Nora to

state what orders the Court should enter "to protect the rights, if any," of those clients is

on its face perplexing.  It is of course true that Nora's purported clients indisputedly

"have rights" of due process in these Chapter 11 Cases.  But it is clear from the transcript

that the Court was referring to the *substantive rights*, if any, of these clients as creditors,

not their procedural rights guaranteed by the U.S. Constitution.  Moreover, by this

provision, the Court is asking Nora what it can do to **protect** Nora's purported clients.

Far from showing the Court's bias against them, the Order to Show Cause illustrates the

Court's concern for Nora's purported clients to avoid punishing them for Nora's own

intransigent behavior in these Chapter 11 Cases.

18.    In addition, much of Nora's "evidence" of the Court's bias against

her and her clients is directly controverted by the transcript of the October 9 Hearing.

Even a cursory review of the transcript reveals that the Court did not revoke Nora's *pro*

*hac vice* admission from the bench, tell Wilson that she "should seek other counsel"

9

ny-1114256

based on the revocation of Nora's *pro hac* status, or disallow the Ibrahim Claim based on

Nora's inability to appear on Ibrahim's behalf, as Nora contends (Motion ¶ 3). Instead,

the transcript plainly establishes:

- the Court provided Nora with an opportunity to explain her position in writing, to reply to any other party who responds to the Order to Show Cause, and to appear in person to argue her position -- all before the Court reaches a decision as to her admission status,[7] Exhibit 1 at 59:12-14; 66:16-17;

- the Court permitted Nora to appear on behalf of Papas, for whom she argued the merits of his response, and Wilson, whose matter was adjourned. *Id.* at 59:12-25; 143:8-144:19. The Court merely informed Wilson should that she should "consider" finding other counsel in light of recent developments, *id.* at 144:20-25;

- The Court refused to permit Nora to appear on behalf of Ibrahim because she had not filed a notice of appearance for that purpose (*id.* 146:11-147:8), and the Court disallowed the Ibrahim Claim *on the merits* considering the papers before the Court, not based on any default, *id.* at 149:6-20.

19.    Equally misplaced is Nora's assertion that the Court's bias is

evidenced by the Court's view of the Papas Response. Motion ¶ 3. As the Court

suggested, the Papas response goes to great length to accuse the parties and the Court of

perpetrating a fraud and completely fails to address the procedural issues presented by the

Debtors' objection.[8] *See* Exhibit 1 at 75:13-14. The court's displeasure with this

---

[7] These are the exact procedures mandated by the Second Circuit Court of Appeals when a court considers whether to withdraw an attorney's pro hac vice admission. *See Martens v. Thomann,* 273 F.3d 159, 176-178 (2d Cir. 2001).

[8] The most recent example of such a pleading is Nora's response to the Order to Show Cause, titled *Motion to Strike Order To Show Cause Entered on October 9, 2013 By Judge Martin Glenn …* [Docket. No. 5502] (the "Response"). The Response devotes 10 out of 14 pages to attacking the Debtors, SilvermanAcampora LLP, and the Court. That filing accuses the Court, *inter alia*, of "misconduct," "extreme bias and prejudice," appointing "Special 'Borrowers' Counsel to pretend to protect the rights of homeowners," and lacking a "working knowledge of the concept of due process[.]" Response at 1; *see also id.* at ¶¶ 6, 11. And instead of offering a meaningful response to the Order to Show Cause, Nora instead purports to move

*(cont'd)*

10

pleading is not a basis for a bias claim.  *See Grinnell Corp.*, 384 U.S. at 583; *Tuscan*

*Dairy Farms*, 25 F.3d at 1141.

20.    As a result, Nora has identified no basis for why the Court's

impartiality might reasonably be questioned with respect to her and her purported clients.

**B.    The Court Is Not Biased Against Borrowers**

21.    Equally spurious is Nora's claim that this Court is biased against

Borrowers in these Chapter 11 Cases.

22.    The Court's entry of the Final Supplemental Servicing Order and

the Court's denial of certain motions for stay relief filed by Borrowers[9] as a matter of law

*cannot* evidence bias for purposes of section 455 because those decisions are not

extrajudicial in nature.  *See Grinnell Corp.*, 384 U.S. at 583 ("The alleged bias and

prejudice [sufficient to warrant disqualification] must stem from an extrajudicial

source"); *Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid

basis for a bias or partiality motion.").

_____
*(cont'd from previous page)*

"to strike [the] order to show cause," demands that her motion "be heard only by a qualified judge of this Court" and states that "[t]here is nothing for the Movant to show cause for or about[.]"  *Id.* at 1; *see also id.* at ¶ 12.

[9]  Contrary to Nora's assertion that the Court has steadfastly denied relief from the automatic stay to every Borrower (Motion at ¶ 14 n.8), the Court actually has granted Borrowers relief from the stay over the Debtors' objection in at least two cases.  *See Order Granting Motion to Lift the Stay Filed by Ramon Quiroz* [Docket No. 5039]; *Order Modifying Automatic Stay with Respect to Action of Gregory Balensiefer* [Docket No. 2578].  Similarly, the Court has encouraged the Debtors to adopt flexible approaches to Borrower requests for relief from the automatic stay for those matters not covered by the Final Supplemental Servicing Order and consequently, has approved several stipulations modifying the automatic stay in favor of Borrowers.  *See, e.g.,* Docket Nos. 1206, 4879.

ny-1114256

23.    Moreover, even if judicial rulings were relevant to the bias

analysis, the Court's rulings contravene Nora's contention.  This Court has made every

effort to ensure that Borrowers, many of whom appear *pro se*, receive all possible

procedural protections in prosecuting their claims against the Debtors.  Specifically, the

Court has:

- Approved the retention of SilvermanAcampora LLP as Special Counsel to the Creditors' Committee for Borrower Issues ("Special Counsel") [Docket No. 2315], to respond to questions and concerns of Borrowers regarding the Chapter 11 Cases and Borrower-specific issues including the scope of the Supplemental Servicing Order [Docket No. 391] and matters relating to the filing of proofs of claim and claim objections;

- Approved procedures with which the Debtors and Special Counsel must follow in connection with objection to Borrowers' proofs of claim [*see* Docket No. 3294];

- Established special evidentiary procedures for certain Borrowers appearing *pro se* [*see* Docket Nos. 5324, 5390]; and

- Ordered both the Debtors and Special Counsel to brief the validity, if any, of causes of action that Borrowers may have against the Debtors for wrongful denial of loan modification applications [Docket No. 5390];[10] and

- Approved special procedures with respect to adversary proceedings commenced by Borrowers [*see* Docket No. 3294].

---

[10] Nora actually asserts that Special Counsel has been "appointed to serve the Debtors and not the homeowners" and points to the fact that at the October 9 Hearing, the Court requested separate briefing from the Debtors and Special Counsel on an issue of importance to Borrowers, noting that Special Counsel is representing different interests from the Debtors. Motion ¶ 20 n.13.  Again, this assertion is a puzzler. The Court's statement that Special Counsel represents a *different interest* from the Debtors, such that separate briefing from Special Counsel is required, would seem to indicate just the opposite of Nora's assertion.  In any event, Nora offers no evidence of Special Counsel's abdication of its duties to Borrowers and there is no rational basis for believing that any has occurred.  Instead, as she often does, Nora baldly asserts some nefarious purpose to a decision or proceeding without supplying any supporting *evidence*. Litigation conducted in this manner is irresponsible and wasteful.

24.     In combination, the foregoing provide Borrowers with substantial

procedural protections that address concerns and issues unique to Borrower interests.  At

the same time, the Court has afforded Borrowers, and in particular those appearing *pro

se*, a full and fair opportunity to represent their interests in connection with numerous

contested matters and adversary proceedings.  The Court has allowed all such Borrowers

(most of whom appear telephonically) to present to the Court their positions, background

and argument and has facilitated their ability to do so in what is of course an unfamiliar

environment often through Court's own line of questions.  The Court frequently advises

Borrowers to communicate with Special Counsel and has promoted this dialogue in an

effort to address their particular concerns and issues.  In short, Nora's naked, wholly

unsupported allegation that Judge Glenn has an active bias *against* Borrowers is absurd.

25.     Nora's claim that the Court's bias against Borrowers is evidenced

by the Court's efforts to "silence" Nora as a mouthpiece for "homeowner voices" and the

"public interest" in these Chapter 11 Cases (*see* Motion at ¶¶ 11, 15, 16) is equally

absurd.  Nora's suggestion that she is somehow a voice for Borrower interests is nothing

short of hubris.  The Court's issuance of the Order to Show Cause stems not from a desire

to silence Borrowers but from Nora's own conduct in these Chapter 11 Cases.

26.     Accordingly, Nora has failed to demonstrate any bias of this Court

or to set forth any reason why the Court's impartiality might reasonably be questioned.

### C.    Disqualification of This Court Could Jeopardize the Administration of These Chapter 11 Cases

27.     As a final matter, the granting of the Disqualification Motion at

this stage of the Chapter 11 Cases would be highly prejudicial to the Debtors.  This Court

is intimately aware of the details of these Chapter 11 Cases, having presided over them

13

ny-1114256

for the past 18 months.  Assigning another judge to these cases days before the Debtors'

plan confirmation hearing is set to begin would entail a massive waste of time and

expense and would delay, and potentially jeopardize, the Debtors' anticipated emergence

from Chapter 11.  Those who ultimately would suffer the most from such a development

are those who hold legitimate claims against the Debtors, to whom distributions would be

delayed due to Nora's personal (but unsubstantiated) mistrust of the Debtors and the

Court.  Given this Court's expertise with these Chapter 11 Cases and their advanced

stages, this Court should be reluctant to grant the Disqualification Motion, even if Nora

had established a colorable basis for disqualification under 28 U.S.C. § 455, which she

plainly has not.  *See Nat'l Auto Brokers,* 572 F.2d at 958 (2d Cir. 1978) (A judge should

not "disqualify himself unnecessarily, particularly where the request for disqualification

was not made at the threshold of the litigation and the judge has acquired a valuable

background of experience.") (internal quotation omitted).

## CONCLUSION

28.    Accordingly, for the reasons set forth herein, the Debtors

respectfully request that the Court deny the Disqualification Motion and grant such other

and further relief as the Court deems just and proper.

14

Dated:  November 8, 2013
        New York, New York

 

 

                              */s/*   Norman S. Rosenbaum
                              Gary S. Lee
                              Norman S. Rosenbaum
                              Adam A. Lewis
                              Jonathan M. Petts
                              MORRISON & FOERSTER LLP
                              1290 Avenue of the Americas
                              New York, New York 10104
                              Telephone:  (212) 468-8000
                              Facsimile:  (212) 468-7900

                              *Counsel for the Debtors and*
                              *Debtors in Possession*