**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

In re:

      Residential Capital, LLC, *et. al.*

                           Debtors.

Case No. 12-12020 (MG)

---

### MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART DEBTORS' OBJECTION TO PROOF OF CLAIM NO. 1984 FILED BY KATHERINE PARKER-LOWE AND PROOF OF CLAIM NO. 1991 FILED BY REX AND DANIELA GILBERT

*A P P E A R A N C E S :*

MORRISON & FOERSTER
*Counsel for Residential Capital, LLC, et al.*
1290 Avenue of the Americas
New York, NY 10104
By: Gary S. Lee, Esq.
Norman S. Rosenbaum, Esq.
Jordan A. Wishnew, Esq.

BRADLEY ARANT BOULT CUMMINGS LLP
*Special Litigation and Compliance Counsel for Residential Capital, LLC, et al.*
Bank of America Corporate Center
100 N. Tryon Street, Suite 2690
Charlotte, NC 28202
By: Christian W. Hancock

KATHERINE S. PARKER-LOWE
*Attorney for Rex T. Gilbert, Jr. and Daniela L. Gilbert*
35 Miss Elecia Lane, Suite 101
Post Office Box 730
Ocracoke, North Carolina 27960

**MARTIN GLENN**
**UNITED STATED BANKRUPTCY JUDGE:**

        Pending before the Court is the *Debtors' Objection to Proofs of Claim Filed by Rex and*

*Daniela Gilbert and Katherine Parker-Lowe* (the "Objection") (ECF Doc. #4767).  Residential

Capital, LLC ("ResCap") and its affiliated debtors in the above captioned chapter 11 cases (the

"Chapter 11 Cases"), as debtors and debtors in possession (collectively, the "Debtors") seek an

order to disallow and expunge in their entirety Proof of Claim No. 1991 filed by Rex and Daniela

Gilbert (the "Gilberts") and Proof of Claim No. 1984 filed by Katherine Parker-Lowe ("Parker-

Lowe," together with the Gilberts, the "Claimants").  In support of their objection, the Debtors

filed the Declaration of Lauren Graham Delehey (the "Delehey Decl.," ECF Doc. # 4767 Ex. 2).

Claimants filed a response (the "Claimants' Response," ECF Doc. # 5004), which included an

amended version of the Gilberts' proof of claim (Response, Ex. A).  The Debtors filed a reply

(the "Debtors' Reply," ECF Doc. # 5129) along with a supporting Declaration of Christian W.

Hancock (ECF. Doc. # 5129-1).  The Court held a hearing regarding this motion on September

24, 2013.

The Debtors seek to disallow the Gilberts' unsecured litigation claim because the

Gilberts' lawsuit lacks merit.  The Debtors seek to disallow Parker-Lowe's unsecured claim for

attorneys' fees because Parker-Lowe may only recover attorneys' fees if her clients had achieved

a judgment, which they have not.

For the reasons explained below, the Court **SUSTAINS** the Debtors' Objection in part

and **OVERRULES** the Debtors' Objection in part.

## I. BACKGROUND

On May 14, 2012 (the "Petition Date"), ResCap and certain subsidiaries, including

GMAC Mortgage, LLC ("GMACM"), filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code and the Court authorized joint administration of the cases.  The Debtors are

managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.  On March 21, 2013, the Court entered an order approving the

procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases (the "Procedures Order," ECF Doc. # 3294).

The Gilberts' unsecured claim stems from litigation involving a home loan secured by a house and lot they own in Ocracoke, North Carolina (the "Property"). As explained below, the litigation was initially filed in state court and then removed by the defendants to the federal district court. On May 5, 2006, the Gilberts refinanced their existing home loan with a loan for $525,000.00 from the First National Bank of Arizona (the "Loan"), secured by their Property. *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 274 (4th Cir. 2012).

According to the district court's opinion, First National Bank of Arizona thereafter assigned its interest in the mortgage to First National Bank of Nevada, which subsequently transferred its interest to Residential Funding Corporation ("RFC"). *Id.* Finally, RFC transferred its interest to Deutsche Bank Trust Company Americas ("Deutsche Bank") as trustee for Residential Accredit Loans, Inc. Series 2006–AQ6 ("RAL"). *Id.* It appears that Deutsche Bank, as trustee for RAL, is the current holder of the note. *Id.* RFC is the master servicer and GMACM is the subservicer. *Id.*

The Gilberts stopped making payments on the loan in 2008. *Id.* In the summer of 2008, the Gilberts corresponded with GMACM in an attempt to modify their loan. Gilberts' State Court Complaint (hereinafter, the "Complaint"), ECF Doc. # 4767, Ex. 3, ¶¶ 48–52. In September 2008, the Gilberts were approved for a loan modification but failed to make the initial lump sum payment required to qualify for the modification. *Id.* ¶ 53–56. In an effort to negotiate with GMACM through counsel, the Gilberts faxed GMACM an authorization to discuss their account with counsel on October 14, 2008. *Id.* ¶ 57–58. On November 14, 2008, GMACM told the Gilberts' counsel that the loan modification had been denied because of the

3

failure to make the lump sum payment. *Id.* ¶ 62–63. In January and February of 2009, the Gilberts' counsel twice more attempted to negotiate a modification, but GMACM sent them a letter on February 20 refusing to speak with the Gilberts' counsel until they received written permission from the Gilberts. *Id.* ¶ 62.

On March 12, 2009, David A. Simpson ("Simpson"), acting as substitute trustee for Deutsche Bank Trust Company Americas, filed a foreclosure action against the Gilberts in Hyde County Superior Court (the "Foreclosure Action"). *Gilbert v. Residential Funding*, 678 F.3d at 274. On April 5, 2009, the Gilberts' counsel mailed a notice addressed to "Holder of Loan #xxxxxx2713," sent care of the counsel for Simpson, declaring that the Gilberts were rescinding the loan under the Truth in Lending Act ("TILA") due to deficiencies in the loan disclosures. Response ¶ 8. Counsel for GMAC ResCap responded with a letter stating counsel was "writing in response to [their] letter to GMAC Mortgage, LLC[.]" Objection at 305 (April 24, 2009 Letter, Kathy Priore, Assoc. Counsel, GMAC ResCap, to Katherine Parker-Lowe). In the letter, GMACM refused to rescind the transaction, stating that, based on a review of the Gilberts' file, there was "no basis to conclude that there were any material disclosure errors that would give rise to an extended right of rescission." *Gilbert*, 678 F.3d at 274.

On June 17, 2009, the Clerk of the Hyde County Superior Court entered an order holding that Deutsche Bank had the right to proceed with the foreclosure sale. *Id.* The Gilberts unsuccessfully appealed in the Hyde County Superior Court. *Id.* They then appealed to the North Carolina Court of Appeals. *Id.* On May 3, 2011, the appellate court reversed the lower court's ruling on the foreclosure sale. *In re David A. Simpson, P.C.*, 711 S.E.2d 165 (2011). In reversing the foreclosure order, the court held that the foreclosure trustee did not prove that Deutsche Bank, as the party seeking foreclosure, was the holder of the note. *Id.* at 171–175. The

4

court held that the foreclosure trustee failed to establish that it had physical possession of the note at the time of trial.  *Id.*  The court also held that the affidavits submitted by GMACM employees were inadequate to establish that Residential Accredit Loans, Inc., for whom Deutsche Bank purported to be acting as trustee, was the noteholder.  *Id.*  Although a GMACM employee submitted an affidavit in the proceeding, no debtor entities, including GMACM, were a party to the Foreclosure Action.

On September 14, 2009, during the pendency of the foreclosure appeal, the Gilberts brought an action against Deutsche Bank, Simpson, Residential Funding, LLC and GMACM (collectively, the "Defendants") in the General Court of Justice for the County of Hyde, North Carolina (the "Gilbert Litigation").  *Gilbert*, 678 F.3d at 274–75.  The complaint alleged disclosure violations and improper refusal of rescission under TILA, usury, unfair and deceptive trade practices, improper debt collection practices, and breach of contract.  *See* Complaint ¶¶ 65–114.  The Gilberts sought, *inter alia*, an injunction against the foreclosure, rescission of the mortgage, attorneys fees, and damages for the TILA violations and unfair trade practices. *Gilbert*, 678 F.3d at 274–75, 280

In October 2009, the Defendants removed the Gilbert Litigation to the United States District Court for the Eastern District of North Carolina, and immediately filed a motion to dismiss the case for failure to state a claim.  *Id.* at 275.  On July 7, 2010, the district court granted the Defendants' motion to dismiss.  *Id.*

The Gilberts appealed to the United States Court of Appeals for the Fourth Circuit.  On May 3, 2012, the Fourth Circuit reversed the district court's dismissal and reinstated all but one of the Gilberts' claims.  *Id.* at 275–81.  The court affirmed dismissal of the Gilberts' claims regarding disclosure violations under TILA because they were time-barred.  *Id.* at 278.  But the

court reinstated the Gilberts' claims for rescission and rescissionary damages under TILA finding that those claims were not time-barred. *Id.* at 278–79. The court found that the usury claim was ripe for adjudication and adequately pled. *Id.* at 279–80. Additionally, court permitted the claims under the North Carolina Unfair and Deceiptive Trade Practices Act ("UDTPA") stemming from the Defendants' conduct to proceed, but dismissed the UDTPA claims based on the original creditor's conduct. *Id.* at 280. The court also found that the Gilberts could raise issues related to the allonge endorsements since they were no longer barred by *res judicata* following the North Carolina Court of Appeals' reversal of the foreclosure order. *Id.* at 280–281.

Before the Fourth Circuit issued the mandate, the Debtors filed their Chapter 11 petitions. As a result, the Fourth Circuit stayed the mandate as to GMACM and Residential Funding, LLC while issuing it as to the non-debtor parties. At present, the Gilberts' lawsuit in the district court remains stayed as to GMACM and Residential Funding, LLC as a result of this bankruptcy case.

On October 30, 2012, the Gilberts filed Proof of Claim No. 1991 asserting an unsecured claim of $5,948,900.00. *See* Objection, Ex. 3. The stated basis for this claim is "rescission under TILA, money damages, usury, wrongful foreclosure, debt collections, [and] UDAP." Objection, Ex. 3 at 1. In support of their claim, the Gilberts attached a copy of the North Carolina Court of Appeals opinion, a copy of the initial complaint from the Gilbert Litigation, and a copy of the Fourth Circuit opinion.

On October 30, 2012, Parker-Lowe filed Proof of Claim No. 1984 for attorneys' fees. *See* Objection, Ex. 4. The form does not indicate a claim amount, but Parker-Lowe attached a copy of a fee statement for work performed for the Gilberts, including services, expenses, and travel from August 26, 2008 to May 9, 2012, totaling $83,181.11. Objection, Ex. 4 at 10.

6

The Debtors filed their objection on August 20, 2013.  The Debtors object to all aspects

of the Gilberts' litigation claim, asserting that the underlying lawsuit lacks merit and that the

claim is overstated and unsubstantiated.  Objection ¶¶ 25–53.  The Debtors object to Parker-

Lowe's attorneys' fees claim on the grounds that the litigation has not yet been adjudicated and

the claim is vague and overstated.  Objection ¶¶ 54–61.

The Claimants filed a response, pointing to the Fourth Circuit opinion as a valid basis for

a claim and stating that the Debtors' Objection was insufficient to rebut the presumption of the

claim's validity.  Response ¶¶ 14–29.  Along with their Response, the Claimants attached an

amended proof of claim that stated the basis for the claim as "rescission and money damages

under TILA, usury, wrongful foreclosure, UDAP, [and] debt collection violations."  Response

Ex. A.  The amended claim includes a two-page summary of damages allocating the $5,948,900

claim to various categories of damages (the "Summary of Damages").  *Id.*

## II. DISCUSSION

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of

claim."  11 U.S.C. § 501(a).  A filed proof of claim is "deemed allowed, unless a party in

interest . . . objects."  11 U.S.C. § 502(a).  If the claim is properly filed, it is *prima facie* evidence

of the validity and amount of the claim.  *See* FED. R. BANKR. P. 3001(f).  A party in interest may

object to a proof of claim, and once an objection is made, the court must determine whether the

objection is well founded.  *See* 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. 2013).

Although Bankruptcy Rule 3001(f) establishes the initial evidentiary effect of a filed

claim, the burden of proof rests on different parties at different times.

> The burden of proof for claims brought in the bankruptcy court
> under [section] 502(a) rests on different parties at different times.
> Initially, the claimant must allege facts sufficient to support the
> claim.  If the averments in his filed claim meet this standard of

sufficiency, it is "*prima facie*" valid.  In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.    The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim.    It is often said that the objector must produce evidence equal in force to the *prima facie* case.    In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.    If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.    The burden of persuasion is always on the claimant.

*In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3rd Cir. 1992) (internal citations omitted).

The party objecting to the proof of claim bears the burden of "providing evidence to show that the proof of claim should not be allowed."    *In re MF Global Holdings Ltd*., Nos. 11-15059, 11-02790, 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012).    If the objecting party satisfies its initial burden and "the presumption of *prima facie* validity is overcome—e.g., the objecting party establishes that the proof of claim lacks a sound legal basis—the burden shifts to the claimant to support its proof of claim unless the claimant would not bear that burden outside of bankruptcy."    *Id.* (citing *In re Oneida Ltd.*, 500 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. The burden then shifts to the claimant if the objector produces evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.")).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable

law."  To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

### A.  Truth in Lending Act Claim

The Gilberts seek "rescission and money damages under TILA" from the Debtor. Response Ex. A.  They assert that the Debtors are collaterally estopped from challenging the merits of their TILA claims by the Fourth Circuit opinion reversing the district court's dismissal of their suit.  Response ¶¶ 17–20.  But the Fourth Circuit only decided that (1) the Gilberts exercised their right of rescission within the three year time period required by the statute; (2) the Gilberts were not time-barred from seeking monetary damages for GMACM's refusal to honor their right to rescind; and (3) the Gilberts were time-barred from seeking monetary damages for the alleged TILA disclosure violations.  *Gilbert*, 678 F.3d at 275–80.  The Fourth Circuit did not otherwise discuss the merits of the Gilberts' TILA claim.  The objection to the proof of claim challenges the merits of the TILA claim for rescission and rescissionary damages against GMACM.  Nothing in the Fourth Circuit's decision prevents this Court from addressing those issues.

GMACM is no longer the servicer of the loan (servicing of the loan was transferred to Ocwen Loan Servicing LLC as part of the section 363 sale of the Debtors' loan servicing business) and none of the Debtors ever owned the note.  *See* Delehey Decl. ¶ 11.  While the Gilberts may be able to pursue the remedy of rescission against the current servicer of their loan or the noteholder, GMACM can not be ordered to rescind the loan.  Therefore the only outstanding cause of action against GMACM for TILA violations is the claim for rescissionary damages.

Under TILA, only the original creditor and the assignees of that creditor may be held liable for violations.  *See* 15 U.S.C. § 1640 (original creditor); 15 U.S.C. § 1641 (assignees).

Servicers are not treated as assignees for the purposes of TILA unless the servicer is or was the owner of the loan. 15 U.S.C. § 1641(f) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation."). This remains true even where the servicer is assigned the loan for administrative convenience. *See* 15 U.S.C. § 1641(f)(2). Courts have refused to find servicers liable for violations of TILA even where they failed to communicate with the borrower or communicated erroneous information. *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1246 (9th Cir. 2012) (dismissing TILA claims against servicer based on lack of response to inquiries); *Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 959 (N.D. Ill. 2003) (granting summary judgment for servicer where the servicer transmitted erroneous TILA disclosures); *see also Keiran v. Home Capital, Inc.*, 720 F.3d 721, 729 (8th Cir. 2013) ("Subject to exceptions not applicable here, loan servicers are not liable for money damages under TILA.")..

GMACM was the subservicer of the Gilberts' loan; it never was the holder of the loan. The Gilberts refer to GMACM as a "purported assignee," Complaint ¶ 69, and a "functional holder[.]" Response ¶ 4. The uncontroverted evidence submitted by the Debtors refutes the Claimants' factual assertions, and the Claimants offer no legal support for their "functional holder" theory. GMACM corresponded with the Gilberts in their efforts to modify their loan. Complaint ¶¶ 48–64. When the Gilberts sent a letter seeking rescission addressed to "Holder of Loan #xxxxxx2713," GMACM wrote back denying rescission. Objection, at 100–01. The letter starts, "[w]e are writing in response to your correspondence to GMAC Mortgage, LLC requesting rescission of the loan transaction your client entered into with First National Bank of Arizona on May 5, 2006." Objection, at 101.

The Gilberts do not assert that GMACM ever explicitly held itself out as the holder of the note. Communicating with mortgagors regarding their loan is a primary function of a loan servicer. The TILA statute makes it crystal clear that, unless the loan servicer is or was the owner of the note, it is not liable for TILA violations. 15 U.S.C. § 1641(f) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation."). The fact that GMACM assumed responsibility for communicating with the Gilberts regarding the loan modification and the rescission is not sufficient to render GMACM a purported assignee or functional holder. To find otherwise would create liability for loan servicers in spite of the statute's clear language to the contrary.

For these reasons, the Debtor's objection to the Gilberts' TILA claim is **SUSTAINED**.

**B. Wrongful Foreclosure Claim**

The Gilberts seek damages from the Debtors for wrongful foreclosure. Objection, Ex. 3. In the Summary of Damages attached to their amended proof of claim, the Gilberts fashion this claim as Attempted Wrongful Foreclosure and Conspiracy to Commit Wrongful Foreclosure. Response, Ex. A. As explained below, North Carolina recognizes a cause of action for wrongful foreclosure, but neither party nor the Court has found any authority concerning a claim for "attempted" wrongful foreclosure. At least on the facts alleged here, the Court concludes that no such cause of action (or, for conspiracy to attempt a wrongful foreclosure) exists.

The Gilberts assert that the Debtors are collaterally estopped from challenging the merits of their claims by the Fourth Circuit opinion reversing the district court's dismissal of their suit. Response ¶¶ 17–20. Insofar as the Gilberts' wrongful foreclosure action is based on issues with the endorsements on the allonge to the note, the Fourth Circuit held that, due to the North Carolina Court of Appeals' reversal on the foreclosure action, "res judicata no longer bars the

11

Gilberts from litigating whether Deutsche has authority to enforce the note." *Gilbert*, 678 F.3d at 281. This holding allows a cause of action to enjoin Deutsche Bank from pursuing foreclosure on their property. It does not bar the Debtor from challenging the merits of a wrongful foreclosure suit brought against GMACM.

North Carolina recognizes a civil cause of action for wrongful foreclosure. *See, e.g.*, *Smith v. Greensboro Joint Stock Land Bank*, 213 N.C. 343 (1938). North Carolina courts have not set out a canonical list of the required elements of wrongful foreclosure. The case law is consistent that the cause of action requires an act of foreclosure and an element of 'wrongfulness,' as the name would suggest. Stated generally, the 'wrongfulness' element will only be satisfied where "the mortgagee had no right to foreclose at the time foreclosure proceedings were commenced." 82 A.L.R.6th 43 (2013); *see Douglas v. Pennamco, Inc.*, 331 S.E.2d 298, 300 (1985) (holding that the defendants were "within their rights" to foreclose on property because plaintiff was behind in payment). A plaintiff satisfies this element by showing that the mortgagee foreclosed in contravention of the agreement of the parties.[1] The typical case involves a mortgagee foreclosing despite the fact that the mortgagor has paid off the mortgage, is current in payments, or has already cured any arrears. *See, e.g.*, *Chandler v. Cleveland Sav. & Loan Ass'n*, 211 S.E.2d 484, 489 (1975); *Burnett v. Dunn Comm'n & Supply Co.*, 104 S.E. 137 (1920). None of these circumstances apply to the Gilberts; they do not dispute that they stopped making mortgage payments in 2008.

The Gilberts base their attempted wrongful foreclosure claim on alleged "unauthorized, incomplete and/or missing endorsements on the Allonge to their Note." *See* Reply Brief of

---

[1]    North Carolina case law also finds wrongful foreclosures where the mortgagor had a right to foreclose but the foreclosure sale process was inadequate under state law. *See, e.g.*, *Davis v. Doggett*, 194 S.E. 288 (1937). Since no foreclosure sale took place here, these cases are inapplicable.

Appellants at 14, *Gilbert v. Residential Funding LLC*, 678 F.3d 271 (4th Cir. 2012) (No. 10-2295), 2011 WL 1896750, at *14. The Gilberts stop short of claiming that Deutsche Bank was not, in fact, the holder of their note. In their Response, the Gilberts cite to the North Carolina Court of Appeals' decision reversing the foreclosure order as "providing additional support for their claim[] for wrongful foreclosure . . . ." Response ¶ 17. However, the North Carolina Court of Appeals' holding was limited to a finding that Simpson lacked adequate evidence to establish that Deutsche Bank was the noteholder. *Simpson,* 711 S.E.2d at 171–75. The court did not find that the debt was invalid or that the foreclosure was improper. This failure of proof does not bar Deutsche Bank (or the holder of the note) from foreclosing on the property if it establishes its standing to do so. The result is similar to prior decisions of this Court denying without prejudice motions to lift the automatic stay to foreclose on a mortgage because the moving party failed to provide proof of standing. *See, e.g., In re Idicula*, 484 B.R. 284 (Bankr. S.D.N.Y. 2013); *In re Lippold*, 457 B.R. 293 (Bankr. S.D.N.Y. 2011); *In re Mims*, 438 B.R. 52 (Bankr. S.D.N.Y. 2010). The North Carolina Court of Appeals opinion does not substantiate the 'wrongfulness' aspect of the attempted wrongful foreclosure claim.

The Gilberts do not assert that Deutsche Bank attempted to foreclose on their property in contravention of their loan agreement. Nor do the Gilberts dispute that they defaulted on their loan. In other words, the Gilberts have failed to allege that the attempted foreclosure was "wrongful" in any meaningful sense.

The "foreclosure" element of the wrongful foreclosure cause of action in North Carolina requires a sale or transfer of the foreclosed-upon property. The claim "accrues when the mortgagee conveys the property to a third party." *Patterson v. DAC Corp. of North Carolina*, 66 N.C. App. 110, 113 (1984); *see also Davis v. Doggett*, 212 N.C. 589 (1937). The remedies

available for an injured mortgagor reflect that the cause of action contemplates a completed sale or transfer. When a property is wrongfully foreclosed upon, the injured mortgagor may either (1) treat the sale as a nullity and sue to set it aside or (2) permit the sale to stand and sue the mortagee for damages resulting from the wrongful foreclosure. *Smith v. Greensboro Joint Stock Land Bank*, 213 N.C. 343, 345 (1938); *Chandler v. Cleveland Sav. & Loan Ass'n*, 211 S.E.2d 484, 487 (1975). Both remedies assume that a sale has taken place. The two remedies are mutually exclusive: where a sale has been set aside and the mortgagor maintains their property, they may not also sue for damages. *Parker v. Sheldon*, 267 S.E.2d 403, 404 (N.C. App. 1980); *Smith* at 345.

The foreclosure judgment of the Gilberts' property was reversed by the North Carolina Court of Appeals before it was finalized and a sale never occurred. The Gilberts are still in possession of their property, so it is unclear what the basis for damages would be. Since the remedies for wrongful foreclosure are based on a sale having taken place, there would be no remedy available here.

Even when a wrongful foreclosure takes place, where a defendant is not a party to the foreclosure they will not be held liable. *Goforth v. Jim Walter, Inc.*, 20 N.C. App. 79, 81–82, 201 S.E.2d 51, 53 (1973). There is no precedent under North Carolina law for holding a servicer liable for wrongful foreclosure where it was neither a holder of the note nor a party to the foreclosure action. The Gilberts do not posit a theory for applying a wrongful foreclosure action to GMACM as servicer of the loan and a non-party to the foreclosure action.

Since the foreclosure never resulted in a sale or transfer of the property, the Court concludes that this cause of action fails as a matter of law. The Gilberts do not posit a theory for how the attempted foreclosure, or GMACM's relation to the attempted foreclosure, resulted in

14

the damages that they claim.  For these reasons, the Debtor's objection to the Gilberts' wrongful foreclosure claim is **SUSTAINED**.

### C.  Usury Claim

The Fourth Circuit, in reversing the dismissal of the Gilberts' usury claim on other grounds, suggested that North Carolina usury law may not apply to the Gilberts' loan given its size.  *Gilbert*, 678 F.3d at 280.  North Carolina General Statute Section 24–9(b) provides that a claim of usury is "prohibited in an exempt loan transaction."  North Carolina General Statute Section 24–9(a)(3)(a) defines an exempt loan as, *inter alia*, any loan with a loan amount exceeding $300,000.

Here, the Gilberts original loan amount was $525,000.  The loan exceeds the $300,000 threshold and qualifies as an exempt loan transaction which can not form the basis for an usury claim.  Counsel for the Gilberts conceded this point at oral argument.  (Hrg. Trans. (9/24/13), at 44:6-45:12; ECF Doc. # 5266.)

Therefore, the Debtor's objection to the Gilberts' usury claim is **SUSTAINED**.

### D.  Breach of Contract Claim

The Gilberts assert a breach of contract claim as an alternative to their usury claim. Response, at 19.  In their reply brief, the Gilberts argue that they properly assert a claim for breach of implied duty of good faith and fair dealing.  Response ¶ 3.  The amount that they seek is indeterminate, but described in the Summary of Damages as, "[b]reach of contract damages calculated at the difference of the undisclosed interest . . . .  This claim requires further documentation."  Response, p. 19.  Presumably this claim is based on differences between the interest rate stated in the TILA disclosure statement and the payment schedule set out in the original loan agreement, as described in their original complaint.  Complaint ¶ 79.

15

The requirement and scope of privity is determined by North Carolina case law. *Sharrard, McGee & Co. v. Suz's Software, Inc.*, 100 N.C. App. 428, 432, 396 S.E.2d 815, 817 (1990). Generally, in order to bring a breach of contract suit against someone, they must have been a party to the contract in question. *Moore Printing, Inc. v. Automated Print Solutions, LLC*, 718 S.E.2d 167, 171 (N.C. Ct. App. 2011). Privity is required to bring a breach of contract claim unless there is an express warranty providing recourse against a third party. *See, e.g.*, *id.*; *Coastal Leasing Corp. v. O'Neal*, 103 N.C. App. 230, 237, 405 S.E.2d 208, 213 (1991); *Holland v. Edgerton*, 85 N.C. App. 567, 573, 355 S.E.2d 514, 518 (1987). Courts won't find implied privity with a third party except where the contract specifically grants one of the signatories recourse to that third party. *See Moore Printing*, 718 S.E.2d at 171.

Here, the loan agreement created privity between the Gilberts and First National Bank of Arizona, and its subsequent assignees. GMACM was not a party to the agreement, nor do the Gilberts posit a theory by which GMACM could be found to be a constructive party to the agreement. Since there is no privity between GMACM and the Gilberts, the Gilberts would not be able to assert a breach of contract claim against them in North Carolina. Since no cause of action for breach of contract against GMACM exists under state law, breach of contract may not form the basis for a claim.

Therefore, the Debtor's objection to the Gilberts' breach of contract claim is **SUSTAINED**.

### E.  North Carolina Unfair and Deceptive Trade Practices Act

The Gilberts assert a claim against the Debtors for unfair trade practices pursuant to North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), codified at North Carolina General Statutes § 75-1.1. To state a plausible claim for violation of the UDTPA, a plaintiff must plead that the "(1) defendants committed an unfair or deceptive act or practice, (2)

in or affecting commerce and (3) plaintiff was injured as a result." *Phelps-Dickson Builders,*

*L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 439 (2005).  The act covers both unfair and

deceptive acts or practices.  Unfair practices "offend[] established public policy," including

"immoral, unethical, oppressive, unscrupulous, or substantially injurious" acts.  *Myers &*

*Chapman, Inc. v. Thomas G. Evans, Inc*., 323 N.C. 559 (1988).  Courts look to "the effect of the

practice on the marketplace" to assess an alleged act's unfairness.  *Marshall v. Miller*, 302 N.C.

539, 548 (1981).  This inquiry depends heavily on the facts of each case.  *In re McClendon*, 488

B.R. 876, 894 (Bankr. E.D.N.C. 2013).  The party asserting that a practice was deceptive "need

not show fraud, bad faith, deliberate acts of deception or actual deception, but must show that the

acts had a tendency or capacity to mislead or created the likelihood of deception." *Walker v.*

*Branch Banking & Trust Co.*, 133 N.C. App. 580 (1999).

The particular acts which the Gilberts identify in their Complaint are "(a) disclosing,

charging and collecting usurious rates of interest; (b) failing to make material disclosures

pursuant to the requirements of the federal Truth in Lending Act; (c) failing to take affirmative

steps to cancel the plaintiffs' Deed of Trust upon their notice of rescission; (d) falsely

representing to be the owner and holder of plaintiffs' note and deed of trust[.]"  Complaint ¶ 82.

The Gilberts assert that the Debtors are collaterally estopped from challenging their

UDTPA claims due to the Fourth Circuit opinion.  Reply ¶¶ 18–21.  The Fourth Circuit's

analysis of the Gilberts' UDTPA claims focused on whether the district court acted properly in

dismissing the claims as to the Defendants.  *See Gilbert*, 678 F.3d at 280.  The Fourth Circuit

contains a broad discussion about the claims against the parties generally; the instant inquiry

necessarily is focused only on the claims against GMAC.  The Fourth Circuit's analysis focused

on the narrow issue of the district court's dismissal of the UDTPA claims due to lack of

17

assignability; this Court must focus on the different legal grounds asserted by the Debtors for disallowing the claim. Where these two distinct inquiries intersect, this Court will defer to the holdings of the Fourth Circuit. However, the Fourth Circuit's holding does not prevent this Court from considering alternative grounds for disallowance of the Gilberts' UDTPA claims as applied to GMACM.

The Fourth Circuit upheld the district court's dismissal of the portions of the Gilberts' suit which were based on conduct of the original creditor, noting that "unfair practice claims pursuant to . . . § 75-1.1 can not be assigned." *Gilbert*, 678 F.3d at 280 (citing *Investors Title Ins. Co. v. Herzig,* 330 N.C. 681, (1992)). The Fourth Circuit's holding narrows the Gilberts' UDTPA claims which can be brought against the Debtors to the causes of action based on the conduct of GMACM. The damages claimed for the TILA disclosure violations (Summary of Damages ¶ 5(b)) and the breach of contract claim (Summary of Damages ¶ 5(d)) therefore must be disallowed. The remaining UDTPA claims are based on the Gilberts' allegations that GMACM collected usurious interest, failed to rescind the Gilberts' loan, and falsely represented the ownership of the note.

### 1. Collection of usurious interest

The Gilberts' usury claim under UDTPA, as applied to GMACM, amounts to an allegation that GMACM charged and collected usurious rates of interest from them. The Gilberts seek $37,076.92 in damages, which they assert should be trebled to $111,230.76 pursuant to North Carolina General Statutes § 75-16. Summary of Damages ¶ 5(e); Complaint ¶ 83.

As discussed above, this loan is exempt from North Carolina's usury laws. However, collection of interest in excess of the rate provided for by agreement may rise to the level of a violation of UDTPA where the conduct is unfair or deceptive. Here, the Gilberts allege that

GMACM collected interest which was inconsistent with the terms of the TILA disclosure and loan documents. The Gilberts appended the loan documents and TILA Disclosure Statement to their complaint, which they attached to their proof of claim. GMACM has provided their collection records on the Gilberts' loan. An analysis of these documents shows that GMACM has successfully rebutted the validity of the Gilberts' claim.

The Gilberts assert that the payment schedule in the TILA Disclosure Statement is inconsistent with the terms of the loan documents. Complaint ¶ 42. The Adjustable Rate Note, signed by Rex Gilbert (the "Note"), sets out an initial interest rate of 7.375%. Complaint, Ex. 2, at 1. According to the Note, the change date is the date on which the interest rate on the loan will be adjusted in accordance with the index rate. *Id.* at 2. Section 4(A) of the Note provides for an initial change date of June 2013. *Id.* Subsequent change dates will occur every six months thereafter. *Id.* The Interest Only Addendum signed by Rex Gilbert (the "Addendum") overrides certain portions of the Note. *Id.* at 1; Complaint, Ex. 3 at 1. The Addendum supplants Section 3(B) of the Note, setting the "initial monthly payments" at $3,226.57. Complaint, Ex. 3 at 1. Section 3(A) of the Addendum provides that the Gilberts will "pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues." *Id.* It goes on to state that the Gilberts "will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments." *Id.* Section 4(C) of the Addendum provides that the interest rate will be calculated, prior to each change date, by adding 2.75% to the index rate. *Id.* It goes on to state that "[d]uring the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that will

be sufficient to repay accrued interest.  This will be the amount of [the Gilberts'] monthly

payment until the earlier of the next Change Date or the end of the Interest-Only period . . . ." *Id.*

Section 4(D) of the Note provides that the interest rate will not change by more than one

percentage point at any change date and the interest rate will never be greater 13.375% or less

than 2.75%.  Complaint, Ex. 2 at 2.

The reasonable interpretation of the relevant provisions of the loan documents is that (1)

the Gilberts' initial monthly payments will be $3,226.57, (2) the interest rate on the loan is

subject to change in June 2013 (ie. after 84 payments counting from July 2006), (3) when the

interest rate changes, the amount of the monthly payment will also change, and (4) upon the end

of the 120 month Interest-Only Period, the Gilberts will pay principal and interest in 240 equal

monthly payments.  The TILA Disclosure Statement shows an increased payment after month

84, which is consistent with a upward adjustment in the interest rate at the June 2013 change

date.  The payment schedule contemplates another increase when the payments move from

interest-only to principal and interest after 120 weeks.  The only inconsistency between the

payment schedule contemplated by the loan documents and the TILA Disclosure Statement is

point (4): the loan documents specify that the 240 principal and interest payments will be equal,

while the TILA disclosure statement shows 239 payments of $4,391.32 and a single final

payment of $4,385.62, a difference of $5.70.

The GMACM records show that GMACM collected monthly payments in excess of

$3,226.57.[2]  Objection, Ex. B at 164–65.  However, these overages appear to be based on escrow

charges due on the account.  *Id.*  For all of these payments, GMACM was crediting $3,226.57

---

[2]     These records show monthly payments of $3,662.64 from August 2006 until April 2007, monthly payments
of $3,662.56 from May 2007 until October 2007, a payment of $5,598.06 in November 2007, monthly payments of
$4,221 from December 2007 until February 2008, a payment of $3,896.64 in March 2008, and a payment of
$2,430.58 in April 2008.  Objection, Ex. B at 164–65.

towards the payment of interest, at a rate of 7.375%. *Id.* From these records, it appears that GMACM collected interest in accordance with the TILA Disclosure Statement and, more importantly, in accordance with the terms of the loan documents signed by Rex Gilbert. The minor discrepancy noted on the final payment was rendered moot by the Gilberts default in 2008.

The Gilberts allege that the 7.953% APR rate in the TILA Disclosure Statement "does not match the payment schedule set forth in the Promissory Note or the Interest-Only Addendum."[3] Complaint ¶ 42. The Adjustable Rate Note and the Interest Only Addendum do not set out a specific schedule of payments, but rather contemplate a payment schedule based on the terms set out above. These terms contemplate a 7.375% rate for the first 84 months, a change in the interest rate after 84 months based on the index rate, and a change every six months thereafter. An APR rate of 7.953% would be consistent with an adjustable rate tied to a rising index rate without exceeding the one percent incremental change limit or the 13.75% absolute limit. More importantly, GMACM never collected payments at an interest rate higher than the 7.375% rate set out for the first 84 payments. *See* Objection, Ex. B at 164–65. Stated simply, GMACM collected payments from the Gilberts' which were consistent with the terms of the loan documents and the accurate portions of the TILA disclosure. The Gilberts have failed to allege any unfair or deceptive conduct on behalf of GMACM in the collection of their payments. Further, the Gilberts failed to substantiate the $37,076.92 claimed in damages for this portion of the claim. Therefore the portion of the claim described in Summary of Damages ¶ 5(e) should be disallowed.

---

[3]      It is worth noting that the TILA Disclosure Statement discloses that the loan has a variable rate feature. Complaint, Ex. 4. This disclosure may be read to put the Gilberts on notice that the APR disclosed earlier in the Disclosure Statement may not hold for the duration of the loan and thus substantially weakens a claim that they reasonably relied on the inconsistency between the APR and the payment schedule.

2. *Failure to rescind*

The next component of the Gilberts' UDTPA claim is "[w]illful refusal to honor rescission" or "failing to take affirmative steps to cancel plaintiffs' deed of trust upon notice of rescission[.]" Summary of Damages ¶ 5(a); Complaint ¶ 82(c). As applied to GMACM, this claim amounts to an allegation that GMACM acted in an unfair or deceptive manner in rejecting the Gilberts' request to rescind their loan, per the letter of April 24, 2009. For this component of their claim, the Gilberts seek actual damages of $85,780.49, trebled to $343,121.96 pursuant to North Carolina General Statutes § 75-16. Summary of Damages ¶ 5(a); Complaint ¶ 83.

The right to rescind arises under TILA and, as discussed above, GMACM may not be held liable under TILA. However, a party may be held liable under a state consumer protection statute for violations of a federal statute even though they may not be liable under the federal statute. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574–85 (7th Cir. 2012) (holding that a cause of action under state unfair and deceptive practices statute for violations of Home Affordable Modification Program ("HAMP") was not pre-empted by federal laws). In *In re Hinson*, 481 B.R. 364, 371 (Bankr. E.D.N.C. 2012), a federal bankruptcy court held that a lender and servicer may be held liable for violations of the federal HAMP laws under UDTPA even though HAMP does not provide a private cause of action. In reversing the district court's dismissal of the Gilberts' unassigned UDTPA claims, the Fourth Circuit noted that "[a] violation of consumer protection statutes may, in some instances, constitute a *per se* violation of UDTPA . . . ." *Gilbert*, 678 F.3d at 280 (citing *In re Fifth Third Bank, Nat'l Ass'n–Vill. of Penland Litig.*, 719 S.E.2d 171, 176 (N.C. Ct. App. 2011)) (internal quotation marks omitted). However, violation of a regulatory statute does not automatically constitute a violation of UDTPA. *Walker v. Fleetwood Homes of N. Carolina, Inc.*, 362 N.C. 63, 70 (2007). A violation of the regulatory

22

statute is potentially relevant to the inquiry into unfair and deceptive practices, but it does not end the inquiry. *See id.* at 71.

GMACM's conduct in denying the Gilberts' demand for rescission does not rise to the level of unfair or deceptive practices as defined by UDTPA. The Gilberts fail to allege conduct on behalf of GMACM which evinces unfairness to the point of immorality, oppressiveness, or offense to established public policy. GMACM responded to the Gilberts' request promptly. GMACM stated their reasons for denial as a lack of "any material disclosure errors that would give rise to an extended right of rescission." Complaint, Ex. 6. GMACM closed their letter by offering to re-examine the demand if the Gilberts were able to produce "any documents or further information that sets forth the basis for the demand …." *Id.* Given the narrow basis for the Gilberts' TILA claim, as discussed above, GMACM's judgment in denying the rescission was not oppressive or underhanded. If GMACM's judgment was in error, the Gilberts' remedy is to be found under TILA, not UDTPA.

Further, the Gilberts fail to substantiate the $85,780.49 claimed in damages. For the foregoing reasons, the portion of the Gilberts UDTPA claim described in Summary of Damages ¶ 5(a) is disallowed.

### 3. *Misrepresentation of noteholder's identity*

The remaining component of the Gilberts' UDTPA claim is that GMACM provided false affidavits in the foreclosure suit. Summary of Damages ¶ 5(c). They seek indeterminate damages based on the costs incurred during the foreclosure action, trebled under UDTPA. *Id.* The Gilberts have adequately pled this component of their UDTPA claim.

The execution of false affidavits is "an unfair and deceptive practice within the meaning of UDTPA." *In re Chesson*, 2012 WL 4794148, at *6 (Bankr. M.D.N.C. Oct. 9, 2012) (as amended Oct. 15, 2012); *see Campos v. Brooksbank*, 120 F. Supp. 2d 1271 (D.N.M. 2000)

(denying motion to dismiss claim based on filing of a false affidavit brought under New Mexico

Unfair Practices Act).  GMACM provided the affidavit of Jeffrey Stephans, a GMACM

employee, which stated that Deutsche Bank was the holder of the Gilberts' note, as trustee for

RALI.  *Simpson,* 211 N.C.App. at 494.  The North Carolina Court of Appeals, in reversing the

foreclosure order, found Stephans' affidavit to be inadequate to establish that Deutsche Bank was

the noteholder.  *Id.* at 494–95.  The court noted disapprovingly that GMACM "was recently

found to have submitted a false affidavit by Signing Officer Jeffrey Stephan in a motion for

summary judgment against a mortgagor in the United States District Court of Maine[,]" for

which they were sanctioned. *Id.* at 494 n.1.

The Debtors assert that, "Deutsche [Bank] owns the note and did at all times it might

have been identified by GMACM as owner of the note."  Objection ¶ 45.  If the Debtors' were

able to show that the assertions in Stephans' affidavit were true, it may constitute a defense

against a suit based on the allegedly fraudulent affidavit.  But the proposition that Deutsche Bank

is the rightful noteholder has not been proven conclusively in the preceding litigation and the

Debtors have not offered evidence supporting this assertion.  The identity of the noteholder is

unclear, and so the Gilberts may be correct in their assertion that the Stephan affidavit was

fraudulent.

Therefore, the objection to the portion of the Gilberts' UDTPA claim based on

GMACM's provision of the Stephan affidavit is **OVERRULED**.

For the foregoing reasons, the Court **SUSTAINS** the Debtors' objection as to the portions

of the Gilberts' UDTPA claim based on TILA violations, breach of contract, usury, and failure to

rescind.  The Court **OVERRULES** without prejudice the Debtors' objection as to the portion of

the Gilberts' UDTPA claim based on misrepresentation of the noteholder.  This is a contested

matter as to which future proceedings will be required.

### F.  Collection Practices Act Claim

The North Carolina Debt Collection Act ("NCDCA") prohibits "certain activities in the

area of debt collection."  *Reid v. Ayers*, 138 N.C. App. 261, 263 (N.C. Ct. App. 2000).   A claim

must be premised on a debt owed by a consumer, and "the one trying to collect the obligation

must be a 'debt collector.'"  *Id*. (citing N.C. Gen. Stat. § 75-50(1)-(3).  The Claimants allege that

the Debtors "falsely represented the character, extent, or amount of a debt against a consumer,"

in violation of N.C. Gen. Stat. § 74-54(4).  But the Debtors note that the purported false

representation must occur "in a legal proceeding," which is not the case here.  *See Key v. Dirty S.*

*Custom Sound & Wheels*, No. 5:09-CV-32-D, 2009 U.S. Dist. LEXIS 46907, at *4 (E.D.N.C.

June 3, 2009) (quoting § 74-54(4) ("[f]alsely representing the character, extent, or amount of a

debt against a consumer or of its status *in any legal proceeding*." (emphasis in original)).

Therefore, the objection to the Gilberts' NCDCA claim is **SUSTAINED.**

### G.  Attorneys' Fees

A creditor may only assert a claim against a debtor's estate if the creditor has a "right to

payment" for the liability.  11 U.S.C. § 101(5).  The Court should allow the claim unless it is

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law for a reason other than because the claim is contingent or unmatured." 11 U.S.C.

§ 502(b)(1).  Both TILA and the North Carolina UDTPA allow for an award of attorneys' fees.

UDTPA authorizes a judge to impose attorneys' fees if the defendant "willfully engaged in the

unfair or deceptive practice, [] there as an unwarranted refusal to settle, and [] the amount of the

attorney's fees was reasonable."  NC. Gen. Stat. § 75-16.1.

Ms. Parker-Lowe argues that she may recover attorneys' fees for the state court case even though GMACM was not a party to that matter. She does not cite any law in favor of her argument that attorneys' fees may be awarded against a non-party to a litigation. That aspect of her claim must be rejected, but since it is possible she could be awarded attorneys' fees in the federal litigation, and the Code does not prohibit contingent claims for attorneys' fees so long as they are allowed by statute (*see Bendall v. Lancer Mgmt. Group, LLC*, No. 12-16068, 2013 U.S. App. LEXIS 13833 (11th Cir. July 9, 2013)), this claim cannot be expunged at this stage of the proceeding. Therefore, the Debtors' objection to the Parker-Lowe claim for attorneys' fees is **OVERRULED** without prejudice.

## CONCLUSION

For the reasons explained above, the Debtor's objection to the Gilberts and Parker-Lowe claims are **SUSTAINED IN PART AND OVERRULED IN** PART as provided above.

**IT IS SO ORDERED.**

Dated: November 12 , 2013
          New York, New York


_____*Martin Glenn*_____
          MARTIN GLENN
United States Bankruptcy Judge