WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore
Harrison L. Denman

- and -

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi
David S. Cohen
Daniel M. Perry
Atara Miller

*Attorneys for the Notes Trustee and
Ad Hoc Committee*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) ) ) | Case No. 12-12020 (MG) |
| Debtors. | ) ) ) | Jointly Administered |

**MOTION <u>IN LIMINE</u> OF THE NOTES TRUSTEE AND AD HOC
COMMITTEE TO EXCLUDE TESTIMONY REGARDING
<u>THE REBUTTAL EXPERT REPORT OF GINA GUTZEIT</u>**

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ..................................................................................................................1

JURISDICTION AND VENUE ............................................................................................3

RELEVANT BACKGROUND .............................................................................................3

RELIEF REQUESTED ..........................................................................................................4

BASIS FOR RELIEF REQUESTED .....................................................................................4

      A.        The Gutzeit Report is Inappropriate Rebuttal Evidence .................................4

      B.        The Doctrines of Judicial Estoppel and Law of the Case Require
                 the Testimony Regarding the Gutzeit Report Be Precluded ..........................8

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Baldwin Graphics Sys., Inc. v. Siebert, Inc.,
  2005 WL 1300763 (N.D. Ill. Feb. 22, 2005) ...............................................................................5

Capmark Financial Grp. Inc. v. Goldman Sachs Credit Partners L.P.,
  491 B.R. 335 (S.D.N.Y. 2013) ....................................................................................................8

Dilaura v. Power Auth. of N.Y.,
  892 F.2d 73 (2d Cir. 1992) ..........................................................................................................8

Ebbert v. Nassau Co.,
  2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) ...........................................................................5

Emerick v. U.S. Suzuki Motor Corp.,
  750 F.2d 19 (3d Cir. 1984) ..........................................................................................................5

In re Adelphia Recovery Trust,
  634 F.3d 678 (2d Cir. 2011) ........................................................................................................8

In re Coudert Brothers LLP,
  2013 WL 4478824 (Bankr. S.D.N.Y. Aug. 19, 2013) ................................................................9

In re Prudential Energy Co.,
  58 B.R. 857 (Bankr. S.D.N.Y. 1986) ..........................................................................................4

In re Texaco Inc.,
  84 B.R. 889 (Bankr. S.D.N.Y. 1988) ..........................................................................................4

In re Toy & Sports Warehouse, Inc.,
  37 B.R. 141 (Bankr. S.D.N.Y. 1984) ..........................................................................................4

Jorgenson Forge Corp. v. Consarc Corp.,
  2002 WL 34363668 (W.D. Wash. Jan. 9, 2002) .........................................................................6

Ritch v. AM General Corp.,
  1997 WL 834214 (D.N.H. Nov.17, 1997) ..................................................................................6

Sherrod v. Lingle,
  223 F.3d 605 (7th Cir. 2000) ......................................................................................................5

Step-Saver Data Sys., Inc. v. Wyse Tech.,
  752 F.Supp. 181 (E.D. Pa. 1990) ................................................................................................5

STS Software Sys., Ltd. v. Witness Sys., Inc.,
  2008 WL 660325 (N.D. Ga. Mar. 6, 2008) .................................................................................5

U.S. v. Quintieri,
  306 F.3d 1217 (2d Cir. 2002)......................................................................................9

**STATUTES**

11 U.S.C. § 105(a) ...............................................................................................3, 4, 12

11 U.S.C. § 1129..........................................................................................................4

11 U.S.C. § 1129(b) .....................................................................................................4

28 U.S.C. § 157............................................................................................................2

28 U.S.C. § 1334..........................................................................................................2

28 U.S.C. § 1408..........................................................................................................2

28 U.S.C. § 1409..........................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 2002...............................................................................................11

Fed. R. Civ. P. 26............................................................................................... passim

Fed. R. Civ. P. 26(a) ....................................................................................................5

Fed. R. Civ. P. 26(a)(2) ................................................................................................5

Fed. R. Civ. P. 26(a)(2)(A) ..........................................................................................6

Fed. R. Civ. P. 26(a)(2)(B) ..........................................................................................6

Fed. R. Civ. P. 26(a)(2)(C) ..........................................................................................6

Fed. R. Civ. P. 37(c)(1)................................................................................................5

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

UMB Bank, N.A., as successor Notes Trustee (in such capacity, the "Notes Trustee") under that certain Indenture dated as of June 6, 2008 (the "JSN Indenture") for 9.625% Junior Secured Guaranteed Notes due 2015 (the "Junior Secured Notes") of Residential Capital, LLC (the "Issuer") and the Ad Hoc Committee of Junior Secured Noteholders (the "Ad Hoc Committee") (collectively with the Notes Trustee, the "JSNs"), by and through its undersigned counsel, respectfully submit this motion in limine (the "Motion") to exclude expert testimony regarding the expert report of Gina Gutzeit (the "Gutzeit Report") served on November 1, 2013 by the above-captioned debtors (the "Debtors") and other Plan Proponents.[1] In support of the relief requested in the Motion, the JSNs respectfully state as follows:

## INTRODUCTION

1. On November 1, 2013, the Debtors served the Gutzeit Report purportedly as a rebuttal report to the initial expert report of Robert S. Bingham (the "Bingham Report"), served by the JSNs. In the Gutzeit Report, Ms. Gutzeit concludes that the "the intercompany balances were not akin to third-party, arm's length debt expected to be repaid; rather, the creation and the forgiveness of the intercompany balances on the Debtors' general ledgers was indicative of transfers of equity between related parties as management saw fit to satisfy the needs of the business."[2] The Plan Proponents did not submit an initial expert report of Ms. Gutzeit or any other expert on the topic of Intercompany Claims.[3] Now, and under the guise of a

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Plan or the Disclosure Statement, as applicable.

[2] Gutzeit Report ¶ 12.

[3] The Intercompany Claims were listed in the Statement of Assets and Liabilities ("SOALs") filed by each Debtor on June 30, 2012. See e.g., Statement of Assets and Liabilities, dated June 30, 2012 for Passive Asset Transactions, LLC [Docket No. 582] (listing intercompany receivables from GMAC Mortgage, LLC).

rebuttal to the Bingham Report, the Debtors seek to demonstrate that the Intercompany Claims are worthless equity through the Gutzeit Report.

2. The Debtors bear the burden of establishing the reasonableness of the Plan and Global Settlement and are improperly using the Gutzeit Report in support of their efforts to deny the JSNs the value of their liens on the Intercompany Claims as part of their secured claim. These affirmative arguments should have been presented in an initial expert report on October 18, 2013, instead of less than three weeks before the commencement of the confirmation hearing on the Plan (the "Confirmation Hearing"). Allowing the Debtors to use the Gutzeit Report as a "rebuttal" report is prejudicial to the JSNs because the JSNs will not have an opportunity to serve a report rebutting the contentions made in the Gutzeit Report. Ms. Gutzeit should be precluded from testifying regarding the Gutzeit Report at the Confirmation Hearing.

3. In addition, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") have maintained and represented now for months that they will not adduce evidence at the Confirmation Hearing seeking to establish that the Intercompany Claims are worthless or meritless.[4] An opinion that the intercompany balances are indicative of transfers of equity, however, is the same thing as saying that the Intercompany Claims are worthless or meritless. The Debtors should be held to their prior representations and estopped from offering testimony of Ms. Gutzeit regarding the Gutzeit Report at the Confirmation Hearing to the extent such testimony is being offered to establish the value or merits of any intercompany claim.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The

---

[4] See Transcript of July 30, 2013 Hearing, at 33:22-24.

statutory predicate for the relief sought herein is section 105(a) of the Bankruptcy Code and Federal Rule of Civil Procedure 26, as made applicable to this proceeding by the Plan Discovery Protocol.[5]

**RELEVANT BACKGROUND**

5. On October 18, 2013, the deadline for filing expert reports under the Plan Discovery Protocol (the "<u>Initial Expert Report Deadline</u>"),[6] Robert S. Bingham, an expert engaged by the JSNs, submitted the Bingham Report summarizing his analysis and conclusions regarding the Intercompany Claims. Mr. Bingham concluded that the Debtors have consistently treated and reported intercompany balances as either intercompany receivables, payables, or borrowings in their internal accounting records and external financial reports and that this accounting and reporting indicated that the Debtor entities expected the intercompany balances would be repaid and/or that repayment could be demanded.[7] Although the Plan Proponents filed numerous expert reports in connection with the Initial Expert Report Deadline, the Plan Proponents did not file an expert report relating to the Intercompany Claims.

6. On November 1, 2013, the Debtors served the JSNs with the Gutzeit Report. The Gutzeit Report discusses matters not addressed in the Bingham Report. As discussed further below, the Gutzeit Report goes beyond the permitted scope of rebuttal evidence. Further, the conclusions in the Gutzeit Report, if accepted by this Court, are in direct violation of the representations made by the Debtors at the July 30 Hearing.

---

[5] Amended Order Establishing a Discovery Protocol in Connection with Discovery Relating to Plan Confirmation [Docket No. 4974].

[6] See Plan Discovery Protocol ¶ 10(a).

[7] Bingham Report at 5-6.

**RELIEF REQUESTED**

7.       By this Motion, the JSNs seek an order, pursuant to sections 105(a) of the Bankruptcy Code and Federal Rule of Civil Procedure 26, as made applicable to this proceeding by the Plan Discovery Protocol, precluding the Debtors from presenting testimony from Gina Gutzeit regarding the Gutzeit Report during the Confirmation Hearing.

**BASIS FOR RELIEF REQUESTED**

**A.       The Gutzeit Report Is Inappropriate Rebuttal Evidence**

8.       The Debtors bear the burden of establishing that their Plan is confirmable. See In re Texaco Inc., 84 B.R. 889, 891 (Bankr. S.D.N.Y. 1988) (stating that "debtor has the burden of establishing all of the requirements for confirmation delineated under 11 U.S.C. § 1129."); In re Prudential Energy Co., 58 B.R. 857 (Bankr. S.D.N.Y. 1986); In re Toy & Sports Warehouse, Inc., 37 B.R. 141 (Bankr. S.D.N.Y. 1984). The Debtors must establish as part of their affirmative case, among other things, that agreeing to settle the Intercompany Claims for zero consideration is justified, is fair and equitable, and does not unfairly discriminate against a class of dissenting claimants. Id.; see also 11 U.S.C. § 1129(b).

9.       The Debtors knew from before the date they filed the Plan and Global Settlement that the JSNs would present evidence regarding the value of the Intercompany Claims in opposition to the Plan and Global Settlement. Nevertheless, after vigorously opposing the JSNs' requests for additional time to prepare its own expert reports on the grounds that they would be prejudiced by a delay of even one week, the Debtors chose not to file an initial expert report on this issue, instead waiting until a few weeks before the Confirmation Hearing to present their affirmative expert opinions regarding the value of the Intercompany Claims in the Gutzeit Report. This tactic deprived the JSNs of the opportunity to respond to the Debtors' position on this issue.

- 4 -

12-12020-mg    Doc 5666    Filed 11/12/13    Entered 11/12/13 16:16:31    Main Document
    Pg 9 of 16


10. "A rebuttal expert report is not the proper 'place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice.'" Ebbert v. Nassau Co., 2008 WL 4443238, *13-*14 (E.D.N.Y. Sept. 26, 2008) (striking rebuttal expert report containing material that should have been in initial report); see also STS Software Sys., Ltd. v. Witness Sys., Inc., 2008 WL 660325, at *2 (N.D.Ga. Mar. 6, 2008); Baldwin Graphics Sys., Inc. v. Siebert, Inc., 2005 WL 1300763, at *2 (N.D.Ill. Feb. 22, 2005). Rebuttal testimony is not "an opportunity for the correction of any oversights in the [ ] case in chief." Step-Saver Data Sys., Inc. v. Wyse Tech., 752 F.Supp. 181, 193 (E.D.Pa. 1990).

11. As noted by the Third Circuit, ". . . evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof." Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3d Cir.1984); see also Step-Saver Data, 752 F.Supp. at 193. The courts in Ebbert and STS Software also noted that presenting new evidence in rebuttal reports denies the opposing party the opportunity to respond to these arguments. See Ebbert, 2008 WL 4443238 at *14; STS Software, 2008 WL 660325 at *2. As explained by the Seventh Circuit, "[E]xpert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." Sherrod v. Lingle, 223 F.3d 605, 613 (7th Cir. 2000). "If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Federal Rule of Civil Procedure 26(a)(2) requires that each party identify expert witnesses that will present expert opinions at trial and provide reports for each expert that contain, among other things, a "complete statement of all

opinions the witness will express and the basis and reasons for them." Fed.R.Civ.P. 26(a)(2)(A), (B).

12. Federal Rule of Civil Procedure 26(a)(2)(C) allows for the admission of rebuttal testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party. . . ." Rebuttal expert reports cannot contain information beyond the scope of the initial report. See Jorgenson Forge Corp. v. Consarc Corp., 2002 WL 34363668, *1 (W.D.Wash. Jan. 9, 2002) (excluding an expert witness because the rebuttal report went beyond the scope of the initial report and contained new opinions); see also Ritch v. AM General Corp., 1997 WL 834214, at *1 (D.N.H. Nov.17, 1997) (noting that "an expert's rebuttal testimony may not go too far beyond the scope of the report submitted with the original disclosure").

13. The Debtors are using the Gutzeit Report as evidence in furtherance of their effort to meet their burden to establish that the Plan is confirmable and the Global Settlement is reasonable. All experts who the Debtors intended to use as part of their affirmative case, however, should have been disclosed at the beginning of expert discovery per Federal Rule of Civil Procedure 26, and the experts' opinions should have been presented in initial expert reports, which were due on October 18, 2013. Ms. Gutzeit's opinions should have been presented at that time so that the JSNs would have the opportunity to respond accordingly.[8] Ms. Gutzeit's analysis should not have been presented as rebuttal evidence and doing so is prejudicial to the JSNs.

14. The Gutzeit Report goes far beyond explaining, repelling, counteracting, or disproving the evidence presented in the Bingham Report. The Gutzeit Report does not

---

[8] Plan Discovery Protocol ¶ 10.

- 6 -

confine itself to addressing the analysis of Mr. Bingham, but includes a fulsome analysis of the intercompany balances in an attempt to reach an independent conclusion that the intercompany balances are not debt and as such, the Intercompany Claims do not have value.

15. For example, Ms. Gutzeit describes and analyzes the Debtors' practices with respect to entering into transactions with their Debtor and non-Debtor affiliates, including how these transactions were recorded and publicly reported, throughout ten paragraphs of the Gutzeit Report without a single reference to Mr. Bingham or his report.[9] Regarding Mr. Bingham's analysis of the top nine intercompany balances, Ms. Gutzeit merely states in the section heading that Mr. Bingham "failed to properly consider the historical basis for the buildup of the receivable" and then performs an independent analysis of each of these balances, concluding that none qualify as "true debt."[10]

16. That the Debtors did not timely file the Gutzeit Report is particularly troubling in light of the Debtors' refusal to extend the deadline by which the JSNs were required to file their initial expert reports. The JSNs are prejudiced by the Debtors' failure to file an initial expert report from Ms. Gutzeit because the JSNs were not granted the same amount of time to prepare their initial report and cannot now file a rebuttal expert report marshaling and analyzing the evidence obtained through discovery that contradicts the Gutzeit Report.

17. The Gutzeit Report is improper rebuttal evidence intended to make affirmative arguments in support of the Debtors' burden to establish the reasonableness of the Global Settlement and deny the JSNs value from the Intercompany Claims, either through adequate protection or otherwise. Accordingly, the JSNs respectfully request that the Court

---

[9] Gutzeit Report ¶¶ 21-31.

[10] Id. ¶¶ 44-85.

- 7 -

instruct the Debtors that Ms. Gutzeit cannot testify with respect to the Gutzeit Report at the Confirmation Hearing.

### B. The Doctrines of Judicial Estoppel and Law of the Case Require the Testimony Regarding the Gutzeit Report Be Precluded

18. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining the position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." In re Adelphia Recovery Trust, 634 F.3d 678, 695 (2d Cir. 2011) (quoting DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) and New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). This doctrine, known as judicial estoppel, applies if "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." Id. at 695-696 (quoting DeRosa, 595 F.3d at 103 and New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808). "Judicial estoppel does not require that a court expressly assume a party's position in formulating its opinion or issue a final decision on the merits. It is enough that the court accept the accuracy of a party's representation and that the court 'might have' made a different decision had the party not taken that position." Capmark Financial Grp. Inc. v. Goldman Sachs Credit Partners L.P., 491 B.R. 335, 353 (S.D.N.Y. 2013) (citing New Hampshire, 532 U.S. at 752, 121 S.Ct. 1808).

19. Positions accepted by a Court should be considered law of the case and should not be later contradicted by the parties. "The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Dilaura v. Power Auth. of N.Y., 892 F.2d 73, 76 (2d Cir.

1992) (citing Liona Corp. v. PCH Assocs. (In re PCH Assocs.), 949 F.2d 585, 592 (2d Cir. 1991); 1B James W. Moore, Jo D. Lucas & Thomas S. Currier, Moore's Federal Practice 0.404[1], at 117 (1991) ("Under the doctrine of law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation.")); see also U.S. v. Quintieri, 306 F.3d 1217, 1230 (2d Cir. 2002); In re Coudert Brothers LLP, 2013 WL 4478824, *11 (Bankr. S.D.N.Y. Aug. 19, 2013) (citing Liona Corp, 949 F.2d at 592 for the same proposition).

20. The record is clear that the Debtors represented that they would not argue that the Intercompany Claims have no value at the Confirmation Hearing. During the July 30 Hearing, the Court asked the Debtors directly, "[a]re the debtors seeking to have the Court make a finding that each of the intercompany claims is valued at zero?" and Mr. Lee of Morrison & Foerster LLP for the Debtors, stated "No, Your Honor, what the debtors are saying is something quite different from that . . . What we're saying is . . . that they should be settled to avoid the cost, time, and burden associated with trying to litigate [them.]"[11] The Court persisted, asking for further clarification, and Mr. Lee stated:

> ***So just to be absolutely clear, we're not taking the position that the intercompany claims are worthless or meritless at confirmation.***[12]

21. Counsel for the Committee made similar affirmations. When asked by the Court if he agreed with Mr. Lee whether the Court was being required to make a finding at confirmation that the Intercompany Claims are meritless, Mr. Eckstein of Kramer Levin Naftalis & Frankel LLP for the Committee, stated, "[w]e are resolving them for settlement purposes at

---

[11]  Transcript of July 30, 2013 Hearing, at 32:15-19.

[12]  Id. at 33:22-24 (emphasis added).

- 9 -

zero. That is what is being proposed. ***The merits of those claims are not being adjudicated in connection with confirmation***."[13]

22. The Court accepted these assertions and integrated them into its ruling at the July 30 Hearing, stating:

> The Court specifically addressed this issue during argument and the answer by counsel to the debtors and the committee could not have been clearer; the Court is not being asked to determine the value of the intercompany claims. The debtors do not argue that the intercompany claims have no value.[14]

23. Ms. Gutzeit concludes that "the intercompany balances were not akin to third-party, arm's length debt expected to be repaid; rather the creation and forgiveness of the intercompany balances on the Debtors' general ledgers was indicative of transfers of equity between related parties as management saw fit to satisfy the needs of the business."[15] By attempting to submit into evidence the Gutzeit Report, the Debtors are, in fact, taking the position at the Confirmation Hearing that the Intercompany Claims are worthless and meritless. This goes to the heart of whether the Intercompany Claims have value and directly contradicts the law of the case established at the July 30 Hearing.

24. The Plan Proponents have insisted that all issues related to the value of the JSNs' liens be determined prior to or in connection with confirmation of the Plan. Three and a half months have passed since the Debtors stated that they would not assert that the Intercompany Claims are worthless or meritless at the Confirmation Hearing. When they made those statements, the Debtors were well aware that a central issue that would need to be addressed in considering the JSNs' entitlements would be the value of the Intercompany Claims,

---

[13]    Id. at 48:20-23 (emphasis added).

[14]    Id. at 74:1-11.

[15]    Gutzeit Report ¶ 12.

- 10 -

either directly or as a consequence of having to provide adequate protection to the JSNs for the use and compromise of the Intercompany Claims.[16] At no time since the July 30 Hearing have the Plan Proponents consulted with the JSNs in an attempt to address that issue. Instead, the Debtors submitted the Gutzeit Report less than three weeks before the start of the Confirmation Hearing in direct contradiction to their representations at the July 30 Hearing. The doctrines of judicial estoppel and law of the case require that any testimony by Ms. Gutzeit on this subject be foreclosed.

## NOTICE

25. Notice of this Motion has been given to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Debtors' counsel; (c) counsel to the Creditors Committee; and (d) all parties on the Special Service List pursuant to the Case Management Procedures; and (e) all parties who have timely filed requests for notice pursuant to Bankruptcy Rule 2002. The JSNs submits that no other or further notice is necessary under the circumstances.

## NO PRIOR REQUEST

26. No prior request for the relief sought in the Motion has been made to this or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

---

[16] See Statement and Reservation of Rights of the Ad Hoc Group of Junior Secured Noteholders in Connection with the Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(B) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants [Docket No. 4018] at ¶¶ 2-3.

- 11 -

**WHEREFORE**, the Notes Trustee, acting on behalf of the JSNs, respectfully requests that the Court enter an order pursuant to sections 105(a) of the Bankruptcy Code and Federal Rule of Civil Procedure 26, as made applicable to this proceeding the Plan Discovery Protocol, precluding the Debtors from presenting testimony from Gina Gutzeit regarding the Gutzeit Report during the Confirmation Hearing.

Dated: November 12, 2013

> WHITE & CASE LLP
> 1155 Avenue of the Americas
> New York, New York 10036-2787
> Telephone: (212) 819-8200
> Facsimile: (212) 354-8113
> J. Christopher Shore
> Harrison L. Denman
>
>   - and -
>
> By: /s/ *Gerard Uzzi*
> MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
> 1 Chase Manhattan Plaza
> New York, New York 10005
> Telephone: (212) 530-5000
> Facsimile: (212) 530-5219
> Gerard Uzzi
> David S. Cohen
> Daniel M. Perry
> Atara Miller
>
> *Attorneys for the Notes Trustee and Ad Hoc Committee*