**Hearing Date and Time:  November 19, 2013 at 9:00 a.m. (Prevailing Eastern Time)**
**Opposition Date:  November 15, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |
| RESIDENTIAL CAPITAL, LLC; et al., | |
| Plaintiffs, | |
| v. | Adv. Case No. 13-01343 (MG) |
| UMB BANK, N.A., IN ITS CAPACITY AS INDENTURE TRUSTEE FOR THE 9.625% JUNIOR SECURED GUARANTEED NOTES, et al., | |
| Defendants. | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the estate of the Debtors, | |
| Plaintiffs, | |
| | Adv. Case No. 13-01277 (MG) |
| v. | |
| UMB BANK, N.A., AS SUCCESSOR INDENTURE TRUSTEE UNDER THAT CERTAIN INDENTURE, dated as of June 6, 2008, et al., | |
| Defendants. | |

**THE DEBTORS' AND OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS' MOTION IN LIMINE**
**TO EXCLUDE THE EXPERT TESTIMONY OF**
**JUDGE RAYMOND T. LYONS AT TRIAL**

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................................ ii

Preliminary Statement....................................................................................................... 1

Judge Lyons' report ......................................................................................................... 3

Argument ........................................................................................................................... 6

I.    THE LEGAL OPINIONS EXPRESSED IN JUDGE LYONS' REPORT ARE
     INADMISSIBLE ........................................................................................................ 6

II.   THE JSNS CANNOT USE Judge Lyons AS A  CONDUIT TO INTRODUCE
     THE EXAMINER REPORT ........................................................................... 10

III.  Judge Lyons Does Not Use Any RELEVANT AND RELIABLE Methods,
     and Therefore His Opinion Does Not Satisfy *Daubert*..................................... 12

CONCLUSION.................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002).............................................................................14, 17

*Black v. Food Lion, Inc.*,
  171 F.3d 308 (5th Cir. 1999) ...................................................................................20

*CFM Commc'ns, LLC v. Mitts Telecasting Co.*,
  424 F. Supp. 2d 1229 (E.D. Cal. 2005)......................................................................9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)................................................................................... *passim*

*Davis v. Carroll*,
  09 Civ. 1088 (JPO), 2013 U.S. Dist. LEXIS 45884 (S.D.N.Y. Mar. 29, 2013) ...............14, 20

*Dev. Specialists, Inc. v. Weiser Realty Advisors LLC*,
  09 Civ. 4084 (KBF), 2012 U.S. Dist. LEXIS 11701 (S.D.N.Y. Jan. 16, 2012) ......................20

*Durkin v. Equifax Check Servs., Inc.*,
  406 F.3d 410 (7th Cir. 2005) ...................................................................................20

*E.E.O.C. v. Bloomberg L.P.*,
  No. 07 Civ. 8383, 2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010) ...........................................19

*Eberli v. Cirrus Design Corp.*,
  615 F. Supp. 2d 1357 (S.D. Fla. 2009) .................................................................11

*F.H. Krear & Co. v. Nineteen Named Trustees*,
  810 F.2d 1250 (2d Cir. 1987)......................................................................................9

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)................................................................................................19

*Highland Capital Management, L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005).........................................................7, 8, 20

*Hill v. Fikes Truck Line, LLC*,
  No. 4:11-CV-816 CAS, 2012 U.S. Dist. LEXIS 152581 (E.D. Mo. Oct. 24, 2012) ...............11

*Hygh v. Jacobs*,
  961 F.2d 359 (2d Cir. 1992)..........................................................................................7

*In re Granite Broad. Corp.*,
     369 B.R. 120 (Bankr. S.D.N.Y. 2007) ................................................................12

*In re Initial Public Offering Securities Litig.*,
     174 F. Supp. 2d 61 (S.D.N.Y. 2001).....................................................................7

*In re Paoli R.R. Yard PCB Litigation*,
     35 F.3d 717 (3d Cir. 1994)...................................................................................20

*In re Wash. Mut., Inc.*,
     No. 08-12229 (MFW), 2011 WL 57111 (Bankr. D. Del. Jan. 7, 2011) .................12

*Kumho Tire Co., Ltd. v. Carmichael*,
     526 U.S. 137 (1999)........................................................................................14, 21

*Lasorsa v. Showboat: The Mardi Gras Casino*,
     Civil No. 07-4321 (JBS/JS), 2009 WL 2929234 (D.N.J. Sept. 9, 2009)..........20, 21

*Lippe v. Bairnco*,
     288 B.R. 678 (S.D.N.Y. 2003).............................................................................20

*Malletier v. Dooney & Bourke, Inc.*,
     525 F. Supp. 2d 558 (S.D.N.Y. 2007)...................................................................12

*Marvel Characters, Inc. v. Kirby*,
     726 F.3d 119 (2d Cir. 2013)..................................................................................12

*Marx & Co., Inc. v. The Diners' Club, Inc.*,
     550 F.2d 505 (2d Cir. 1977)...............................................................................7, 8

*Music Sales Corp. v. Morris*,
     73 F. Supp. 2d 364 (S.D.N.Y. 1999) .....................................................................9

*Papadopoulos v. Fred Meyer Stores, Inc.*,
     No. C04-0102RSL, 2006 WL 1375074 (W.D. Wash. May 17, 2006) ...................21

*Quiles v. Bradford-White Corp.*,
     2012 WL 1355262 (N.D.N.Y Apr. 18, 2012) ........................................................11

*Rickel & Assocs. Inc. v. Smith (In re Rickel & Assocs.)*,
     272 B.R. 74 (Bankr. S.D.N.Y. 2002) ....................................................................12

*Stern v. Marshall*,
     131 S. Ct. 2594 (2011)..........................................................................................10

*Tokio Marine v. Norfolk*,
     1999 U.S. App. Lexis 476, Nos. 98-1050 and 98-1077 (4th Cir., Jan. 14 1999)...............11, 12

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991).................................................................................7

*Yancey v. Carson*,
  Nos. 3:04-CV-556, 3:04-CV-610. 2007 WL 3088232 (E.D. Tenn. Oct. 19, 2007) ...............21

*Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*.
  395 F.3d 416 (7th Cir. 2005) ................................................................................20

**STATUTES AND RULES**

Bankruptcy Code § 547(c)(2)(a) ................................................................................11

Bankruptcy Rule 9019 ............................................................................................10

Fed. R. Bankr. P. 9019 ...........................................................................................8

FED. R. EVID. 702...........................................................................................13, 14, 20, 21

Fed. R. Evid. 703 ................................................................................................12

## PRELIMINARY STATEMENT

Plaintiffs Residential Capital, LLC ("ResCap"), GMAC Mortgage LLC ("GMAC Mortgage"), Residential Funding Company, LLC, and each of their affiliated debtors and debtors-in-possession (collectively, the "Debtors"), together with Plaintiff the Official Committee of Unsecured Creditors (the "Committee" and, collectively with the Debtors, "Plaintiffs") submit this motion in limine to exclude the purported expert testimony of Judge Raymond T. Lyons, offered by Defendants UMB Bank, N.A. ("UMB") and the Ad Hoc Group of Junior Secured Noteholders (the "JSNs" and collectively with UMB, "Defendants").

Judge Lyons has submitted a report (the "Report") that purports to assess the reasonable settlement value of potential claims identified in the Report of Arthur J. Gonzalez, Esquire, As Examiner, released June 26, 2013 ("Examiner's Report"), and, on the basis of that valuation, to allocate the $2.1 billion dollar settlement fund provided by AFI (the "AFI Contribution") among those claims.[1] Judge Lyons' Report does not pass muster under the rules governing expert testimony.  It should be stricken, and Judge Lyons should be precluded from testifying for three reasons.

*First*, as a threshold matter, the opinions expressed in the Report consist of little more than observations and opinions on: (a) the application of law to fact, as Judge Lyons has conceded; or (b) issues of law.  Such opinions are the province of this Court alone, and are not the proper subject of expert testimony.

*Second*, Judge Lyons' Report is a transparent vehicle for Defendants to improperly introduce the Examiner's Report, which is inadmissible hearsay, into evidence.  It is well established that an expert cannot simply adopt another's opinions as his own without any

---

[1]    Judge Lyons' Report is annexed to the accompanying declaration of Norman C. Simon as Exhibit 1, and the transcript of his deposition is annexed as Exhibit 2.

independent analysis. But Judge Lyons has done just that here. He repeatedly concludes that the Examiner's analysis and conclusions are correct. In so doing, Judge Lyons is acting as a mere conduit for inadmissible hearsay. This is not permissible.

*Third*, the Report does not meet the standards for admissibility of expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and subsequent case law and rules. Judge Lyons admitted that because the Examiner's Report was not made public until *after* the global settlement had been reached, it necessarily had "no[] . . . impact on settlement negotiations." Tr. 154:7-12. Judge Lyons further admitted that he has no knowledge of the factors that actually drove the parties' negotiations with Ally. He did not speak with Ally or the Committee to ascertain their settlement priorities; he has no knowledge of the Committee's standing motion, which outlined the estate claims to which the Committee ascribed value; and he did not adequately account for the consideration that would have been required to get each of the third party litigants to agree to support a third party release – a critical feature of the Global Settlement. Thus, Judge Lyons' opinions – which are entirely predicated on causes of action identified by the Examiner and made known only after the Examiner Report was unsealed – are entirely irrelevant to the *actual* negotiation of the Global Settlement.

Even if his analysis had any relevance, Judge Lyons' assessment of the settlement value of various claims is devoid of any reliable, consistent, or testable methodology. His conclusions rest on nothing more than his own unsupported say-so. Indeed, Judge Lyons admitted that his so-called "methodologies" – which were only partially disclosed in his Report – were not based on any objective criteria (Tr. 199:17-200:6), could not be independently tested (*id.* 200:7-19), and were not applied consistently from claim-to-claim (*id.* at 382:8-20). He admitted further that his settlement value conclusions were "inherently imprecise" (Tr. 109:24-

110:8), could be calculated differently by different people (*id.* 98:5-24), and were ultimately

based on Judge Lyons' "subjective" (*id.* 200:7-11) views of how he "felt" about particular claims

(*id.* 199:3-21).    Given these admissions, the Report should be excluded for failing to satisfy

*Daubert*'s reliability requirements.

## **JUDGE LYONS' REPORT**

With few exceptions, Judge Lyons' Report is devoted to recapping and adopting

the Examiner's Report.  The vast majority of the Report contains his summary of *the Examiner's*

investigation into the Debtors' and third-parties' potential causes of action, claim by claim.  The

Report provides a one-paragraph description of each potential claim, followed by a more detailed

summary of the alleged facts – as identified by the Examiner.  Next, Judge Lyons repeats the

Examiner's legal analysis and conclusions relating to the likely success of the claims.

Judge Lyons candidly acknowledges that he and his team made no attempt to

review the vast bulk of the materials that the Examiner reviewed or to do any meaningful

independent analysis of their own.  As he notes, the Examiner "did an evaluation of the facts,

including review and examination of almost nine million pages of documents produced by

twenty-three different parties, ninety-nine formal interviews of eighty-three witnesses, sixty-six

meetings with interested parties, and review of multiple written submissions from a dozen

parties."  Report at 2.  By contrast, Judge Lyons reviewed fewer than 30 contracts cited in the

Examiner Report, and otherwise "relied exclusively for [his] factual inputs on the examiner's

factual conclusions" (Tr. 235:4-8) and "assumed that all of his facts were correct" (Tr. 35:13-

17).[2]  Before rendering his Report, Judge Lyons had not reviewed any other discovery from

these adversary proceedings.  *See* Report at Exh. A.[3]

Notwithstanding that he reached his conclusions without any independent

evaluation of facts beyond reading and accepting the Examiner's conclusions, Judge Lyons

agreed "that the more a person knows about the facts of a particular claim or a potential claim,

the more precisely he or she is able to assess the likelihood of success of that claim"; "the more

precisely one could estimate the inherent risk in such claim"; and "the more precisely one could

estimate the likelihood of success of any particular defense as to that claim."  *Id.* 232:16-233:18.

He further conceded that "[i]f the facts as projected or contemplated . . . turned out to change . . .

that would be relevant" to his analysis.  *Id.* 378:8-16.  In discussing the tax allocation claim, for

example, Judge Lyons agreed with the proposition that Ally's non-use of tax attributes relating to

ResCap "could turn out to change the value of the claim" (*id.* 378:21-24) and he admitted that

information revealed in the Disclosure Statement concerning the auditors' and regulators'

preference for the Second 2009 Tax Allocation Agreement could "have an impact on the

settlement value."  *Id.* 361:11-22.  Not only did Judge Lyons fail to consider facts such as these

before issuing his Report, he expressly disclaimed any obligation to update his Report to reflect

any facts that he may subsequently come to learn.  Report at 2; Tr. 115:10-20.

Judge Lyons also acknowledged "that it is an important factor in determining the

settlement value of a claim to hear the respective views of the parties as to the value of that

---

[2]      Judge Lyons personally spent only 206 hours on this matter – more than half of which was spent reviewing
the Examiner Report.  Tr. 156:21-157:9.
[3]      Judge Lyons' review of material from outside of the ResCap bankruptcy was extremely limited as well.  He
only examined a dozen settlement agreements from other cases, and three articles concerning class action or credit-
crisis settlement agreements.  Report at Exh. A.

claim." *Id.* 101:16-22.[4]  But Judge Lyons admits that in forming his opinions on settlement

value here, he "did not seek any input from any of the parties regarding the merits of the

claim[s]" (*Id.* 122:24-123:13), nor "hear from any of the claimants or the defendants." *Id.* 47:15-

24.  With respect to the law, Judge Lyons merely conducted a "general[] review[ of] the statutory

and case law cited by the Examiner" as a basis to assess the Examiner's legal conclusions.

Notwithstanding his extremely limited investigation, Judge Lyons sets forth his own purported

"Review of [the] Examiner's Analysis and Conclusions" on each claim.  Judge Lyons conceded

that "he agreed" with the Examiner or "agreed with minor quibbles" in every instance.  *Id.*

36:23-25.

Judge Lyons departed from the Examiner's blueprint only in his discussion of

putative "Settlement Considerations," where he assigned to each claim a dollar value supposedly

representing its "reasonable settlement value."   Notwithstanding his acknowledgment that the

Examiner cautioned against "applying probabilities or mathematical models" to his conclusions,

Judge Lyons arrived at a specific dollar amount for each of the claims he deemed material using

what he characterized as "a non-formulaic, nuanced approach to determining the reasonable

settlement value of each claim and the allocation of the $2.1 billion settlement[.]"   Report at 3.

Nowhere, however, does the Report describe any reliable, verifiable or accepted method of

conducting this analysis.  Judge Lyons' conclusions are based on nothing more than his own

speculation.  Indeed, at deposition he readily admitted that his "methodologies" are "inherently

imprecise" (Tr. 110:5-8); are not based on any objective criteria (*id.* 200:2-6); cannot be

independently tested (*id.* 200:7-19); are not applied consistently from claim to claim (*id.* 382:2-

---

[4]      *Accord id.* 95:22-96:2 ("[I]t is important to hear directly from the parties in order to understand their
respective views and the weight of the value of [a] settlement . . . ."); 89:8-12 (as a mediator, Judge Lyons "always
listened to all sides in a matter before forming a judgment with respect to the merits of a particular claim").

20); could be calculated differently by different people (*id.* 98:5-24); and are based on his "subjective" views (*id.* 200:7-11) of how he "felt" about particular claims (*id.* 199:3-21).

Judge Lyons also admitted that an important step in his analysis was not disclosed in his Report.  Judge Lyons asserted that "[w]hen appropriate, [he] provided more than one method in arriving at [his] opinion regarding the reasonable settlement amount of a claim." Report at 3.  He failed to disclose, however, that those methods did not yield consistent results even though he presented them as though they did.  Tr. 171:10-172:9, 173:10-23.  At deposition, Judge Lyons revealed for the first time that he performed a "reconciliation" of the "numbers" generated by the two distinct methods.  Tr. 172:2-21.  Judge Lyons kept no record of the numbers before his reconciliation, and when pressed to reveal them, conceded he could not recall them.  *Id.* 173:10-14, 173:24-174:10, 174:15-175:19.

In the Report, Judge Lyons totaled the settlement values he ascribed to each of the potential claims, and then allocated the AFI Contribution accordingly.  He concluded that the total settlement value of the potential claims identified by the Examiner is $2.4 billion.  Since the AFI Contribution is $2.1 billion, or 87.5% of $2.4 billion, Judge Lyons applied 87.5% to each of the claim values and then allocated $2.1 billion pro rata to each of the claims, setting forth the overall allocation on the final pages of the report.  Report at 94-99.

## ARGUMENT

### I.   THE LEGAL OPINIONS EXPRESSED IN JUDGE LYONS' REPORT ARE INADMISSIBLE

The Second Circuit Court of Appeals has repeatedly held that "[a]s a general rule an expert's testimony on issues of law is inadmissible." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).  *Accord, e.g.*, *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that

expresses a legal conclusion."); *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) ("The special legal knowledge of the judge makes the witness' testimony superfluous."); *see also In re Initial Pub. Offering Securities Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("This Court has repeatedly held that the testimony of an expert on matters of domestic law is inadmissible for *any* purpose.") (internal quotation marks and citation omitted).

Applying this rule, courts routinely preclude experts from testifying as to the statutes and case law, the interpretation of law, and the application of law to the facts. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1258 (2d Cir. 1987) (affirming exclusion of expert-attorney's testimony that contracts were unenforceable for lack of essential terms); *Marx,* 550 F.2d at 508-10 (testimony of expert who "gave his opinion as to the legal standards which . . . governed [defendants'] conduct," provided "legal opinions as to the meaning of the contract terms at issue," and "repeatedly gave his conclusions as to the legal significance of various facts adduced at trial" should have been excluded); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 465-66 (S.D.N.Y. 2005) (excluding expert report that "set[] forth the governing statutes and case law that underlie criminal violations of the securities laws" and "discusse[d], through reference to case law, the type of conduct that [the expert] believe[d] would constitute a criminal violation of [securities laws]"); *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364, 381 (S.D.N.Y. 1999) (excluding expert affidavit that "almost wholly expresses legal conclusions on the meaning of the 1976 [Copyright] Act"); *CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1235-37 (E.D. Cal. 2005) (excluding expert report that reads "like a legal brief," "features numerous citations to federal court opinions," and "applies a variety of regulatory law to facts").

Indeed, this Court already has excluded proffered expert testimony on this very ground in these cases.  In support of their motion to approve the FGIC Settlement, the Debtors proffered an attorney to testify concerning the legal merits of claims to be released under the settlement.  Several parties, including the JSNs, objected, arguing that the witness was being offered solely to testify about legal issues, which amounted to an *ipse dixit* explanation lacking analytic rigor.  This Court precluded the witness from testifying, finding that the legal merits of settled claims was not an appropriate subject for expert testimony.  Aug. 14, 2013 Hr'g Tr. 9:19-311:24.

Here, Judge Lyons seeks to do precisely what the case law and this Court have proscribed.  His Report provides two kinds of legal analysis, neither of which is the proper province of expert opinion – namely, opinions concerning: (a) the application of law to the alleged facts; and (b) a host of legal issues.

### *(a)    Application of law to fact:*

Judge Lyons repeatedly applies law to the alleged facts as reported by the Examiner.  For example:

- Judge Lyons testified that every calculation of settlement values involves an application of the law to the facts.  Tr. 101:15-23.

- In discussing the potential claim relating to "Failure to Pay Value of Purchased MSRs and Correspondent Loan MSRs to GMAC Mortgage under the MSR Swap," the Report discusses how the legal doctrines of modification and mistake should be applied to the facts.  *Id.* at 18-19.  The Report goes on to consider what "evidentiary difficulties" AFI may face in proving mutual mistake, given the supposed facts.  *Id.* at 19-21.  Judge Lyons admitted that this involved the application of law to fact.  Tr. 337:19-339:15.

- In his assessment of a claim relating to the Pipeline Swap, Judge Lyons considers whether a court would "reform" an agreement under the doctrine of "mutual mistake."  Report at 26.  Judge Lyons discusses how the alleged facts should be applied: "the parties drafting the Pipeline Swap agreements appeared not to have understood the effect of the language they chose."  *Id.*  The Report goes on to assess whether the evidence is sufficient to satisfy the "burden" of establishing mutual

8

mistake, which is "high." *Id.* at 27.    Similarly, for another claim involving the Pipeline Swap and the 2008 MMLPSA, Judge Lyons testified that he "had to apply the law to the facts to make a determination as to the merits of th[is] claim." Tr. 272:25-274:21.

- The Report describes a potential claim arising from the 2006 Ally Bank restructuring. It devotes substantial attention to the *Wagoner* rule and the legal doctrine of *in pari delicto*.    Report at 46.    In his deposition, Judge Lyons testified that he came to considerations of the impact on recovery if his interpretation of the *Wagoner* rule applied.    Tr. 59:4-61:8.    In his discussion of "settlement considerations" with respect to this claim, Judge Lyons then proceeds to discuss the interplay between the law and the different provisions of the 2005 ResCap Operating Agreement – *i.e.*, the application of the law to the alleged facts.    Report at 47.

>   *(b)*        *Opinions of, and conclusions based on, bankruptcy rules, statutes, case*

*law and legal standards:*

- The Report repeatedly states that the legal conclusions reached by Judge Gonzalez in the Examiner Report were correct.    Indeed, Judge Lyons agrees with the Examiner's legal conclusions and analysis no less than 29 times.    Report at 12, 14, 19, 23, 26, 28-29, 31-32, 37, 40, 42, 46, 50, 56-58, 60, 62, 64, 67.

- In connection with his analysis and conclusions concerning a potential claim relating to the misallocation of net revenues on loans brokered by GMAC Mortgage, Judge Lyons cites and analyzes the case law applicable to oral modifications of contracts. *Id.* at 12-13.    This is one of the few times Judge Lyons has a slightly different view than Judge Gonzales, and he makes sure to describe the legal nature and basis for this minor difference of opinion.    *Id.*

- Judge Lyons opines on the legal requirements for proving "mutual mistake" under New York law in connection with his analysis and conclusions concerning a potential claim relating to an alleged failure by Ally Bank to pay GMAC Mortgage appropriate value under the MSR Swap.    He cites several cases.    *Id.* at 17.    At deposition, he admitted that his conclusions that "AFI would likely succeed on the close question of a defense under the doctrine of mistake" involved "applying facts to law or otherwise engaging in legal analysis."    Tr. 326:14-24.

- In connection with his assessment of the "Minnesota Insider Preference Claims," Judge Lyons discusses the elements and requirements of Minnesota's version of UFTA.    In his analysis and conclusions he cites "Bankruptcy Code section 547(c)(2)(a)," and discusses how that section has been analyzed by bankruptcy

courts.  *Id.* at 41-42.  This is another of the few occasions when Judge Lyons differs slightly from Judge Gonzales – and he makes sure to note his own legal opinion.  *Id.*[5]

In sum, Judge Lyons repeatedly analyzes how legal issues ought to be applied to the alleged facts, and also opines and reaches conclusions on "pure" issues of law.[6]  In so doing, Judge Lyons' Report violates well-settled Second Circuit authority and should be excluded.

## II.     THE JSNS CANNOT USE JUDGE LYONS AS A CONDUIT TO INTRODUCE THE EXAMINER REPORT

An expert's ability to rely on the opinions of others is subject to strict limits. Courts do not allow one expert to simply import the report of another expert – which is naked hearsay – when the second expert is not offered for cross examination so that the merits of his or her report can be tested.  "An expert's opinion must be based upon his own application of principles within his expertise to the facts of the case.  An expert cannot simply parrot the findings of another arrived at in another context."  *Quiles v. Bradford-White Corp.*, No. 10-CV-747, 2012 WL 1355262, at *7 (N.D.N.Y Apr. 18, 2012).  *See also Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. 2009) (expert should "not merely regurgitate another expert's opinion."); *Hill v. Fikes Truck Line, LLC*, No. 4:11-CV-816 CAS, 2012 U.S. Dist. LEXIS 152581, at *9-10 (E.D. Mo. Oct. 24, 2012) ("An expert's opinion must be based upon his [or] her own application of principles within his her expertise to the facts of the case.") (citation omitted).  "[O]ne expert may not give the opinion of another expert who does not testify," (*Tokio Marine v. Norfolk & W. Ry. Co.*, Nos. 98-1050, 98-1077, 1999 U.S. App. Lexis 476, at *11 (4th Cir., Jan. 14, 1999) (citations omitted)), because an expert cannot simply be a conduit for the

---

[5]     At his deposition, Judge Lyons acknowledged that he had no specialized knowledge of the Minnesota UFTA, and had not consulted Minnesota counsel on this issue. Tr. 62:16-63:15, 65:7-10.

[6]     At his deposition, Judge Lyons professed that he was not offering opinions on pure issues of law – only on the application of the law to the reported facts. Tr. 32:6-16.  However, given all of the legal analyses and conclusions noted above, it is clear that Judge Lyons is, in fact, also improperly opining on legal issues.

opinion of an unproduced expert.  *See Malletier v. Dooney & Bourke, Inc*., 525 F. Supp. 2d 558,

564, 573 (S.D.N.Y. 2007).

A closely related principle is that even an expert's report may not introduce

hearsay for an improper purpose.  As the Second Circuit has held, "[a]lthough the Rules permit

experts leeway with respect to hearsay evidence, Fed. R. Evid. 703, a party cannot call an expert

simply as a conduit for introducing hearsay under the guise that the testifying expert used the

hearsay as the basis of his testimony."  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d

Cir. 2013) (quotation omitted).  "The hearsay quality of a report may not be cured merely by

having another expert testify that he agrees with its conclusions."  *Tokio Marine*, 1999 U.S. App.

Lexis 476 at *12.[7]

The Report flouts these important principles.  Judge Lyons admittedly has not

performed his own independent "expert" analysis of the facts or the law relating to the claims

discussed by the Examiner.  Instead, as discussed above, his Report is largely devoted to

recapping and adopting the conclusions of the Examiner Report.  The Report merely repeats

facts reported by the Examiner, all of which Judge Lyons "assumed . . . were correct for

purposes of formulating [his] opinions" (Tr. 35:14-15) without performing any meaningful

independent factual analysis.  Tr. 103:14-104:7.  In short, the Report is nothing more than a

---

[7]     This Court has observed on more than one occasion that the Examiner Report is hearsay.  *See* Transcript of
Hearing at 51:9-10 (June 12, 2013) (No. 12-12020) ("THE COURT: . . . [t]he examiner report is hearsay no matter
what."); Transcript of Hearing at 142:7-9 (Aug. 28, 2013) (Nos. 12-01277; 13-01343) ("THE COURT: I mean, you
all try to use Judge Gonzalez's examiner's report for certain limited purposes. It's hearsay.").  This conclusion is
consistent with multiple recent decisions.  *See, e.g., In re Washington Mut., Inc.,* No. 08-12229 (MFW), 2011 WL
57111, at *4 n.13 (Bankr. D. Del. Jan. 7, 2011) (granting motions in limine to preclude use of examiner's report, as
hearsay); *In re Granite Broad. Corp.,* 369 B.R. 120, 128 n.10 (Bankr. S.D.N.Y. 2007) (Gropper, J.) (finding that the
examiner's report was not evidence, the conclusions were not based on a full factual record and therefore were
hearsay); *Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs.),* 272 B.R. 74, 87 (Bankr. S.D.N.Y. 2002)
(Bernstein, C.J.) (stating that "the evidence and findings in the [examiner's] Report are not binding. The Examiner
conducted an investigation, but he was not charged—nor could he be—with the duty to 'hear and determine' any
claims in this case. The Report is hearsay." (quoting *United States v. Moore,* 27 F.3d 969, 975 (4th Cir. 1994))).

conduit for the JSNs to introduce a summary of the Examiner's Report into evidence and should be excluded on this independent ground.[8]

### III.   JUDGE LYONS DOES NOT USE ANY RELEVANT AND RELIABLE METHODS, AND THEREFORE HIS OPINION DOES NOT SATISFY *DAUBERT*

An expert opinion must be "relevant" so as to assist the trier of fact, and also must have "a reliable basis in the knowledge and experience of [the expert's] discipline." *Daubert*, 509 U.S. at 591-92.  *See also* FED. R. EVID. 702 (permitting expert testimony only if, among other things, "(c) the testimony is the product of reliable principles and methods and the expert has reliably applied the principles and methods to the facts of the case").  Although there is no definitive test for determining the reliability of expert testimony, the Supreme Court has identified a number of factors bearing on reliability, including "(1) whether a theory or technique 'can be (and has been) tested,' (2) 'whether the theory or technique has been subjected to peer review and publication,' (3) a technique's 'known or potential rate of error,' and 'the existence and maintenance of standards controlling the technique's operation,' and (4) whether a particular technique or theory has gained 'general acceptance' in the relevant scientific community." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (quoting *Daubert,* 509 U.S. at 593-94) (internal citations omitted).  The Supreme Court has expressly extended *Daubert* and its reliability requirements beyond scientific testimony to encompass *all* expert testimony.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).  *See also Davis v. Carroll*, 937 F. Supp. 2d 390, 417 (S.D.N.Y. 2013) ("Neither *Daubert* nor *Kumho Tire* tolerates expert testimony that departs from scientific or professional standards and cannot be

---

[8]    That Judge Lyons is offering opinions concerning the purported settlement value of the claims does not change the result or distinguish the facts here from any of the cases cited above.  Judge Lyons' settlement value opinions are premised almost entirely on the inadmissible analysis of the Examiner's Report.  Without the Examiner's Report, they are meaningless.

independently justified as a reliable analytical tool.   The Report meets none of the foregoing indicia of reliability and utterly fails to satisfy the requirements of Rule 702.

As an initial matter, Judge Lyon's hypothetical allocation of the Global Settlement is irrelevant.   None of his so-called "methodologies" is based on the *actual* negotiations between the various constituencies here, nor purports to bear any resemblance to what actually occurred in this case.  Judge Lyons readily admitted that he had no knowledge of the potential claims actually asserted against AFI and that he had not read the Committee's *STN* motion.  Tr. 67:19.  He also admits that because the Examiner's Report was not made public until *after* the global settlement had been reached, it had "no[] . . . impact on settlement negotiations."  Tr. 154:7-12.   Judge Lyons further did not adequately account for the consideration that would have been required to get each of the third party litigants to agree to support a third party release – a critical feature of the Global Settlement.  *Id.* 132:22-135:14.  The Report thus is not relevant to allocating the AFI Contribution because, as Judge Lyons conceded, the negotiations leading to that settlement took place prior to the release of the Examiner's Report on which Judge Lyons' opinions are predicated.   On this basis alone, the Report and Judge Lyons' testimony should be excluded.

Even if it were relevant at all, the Report is completely unreliable under *Daubert* and its progeny.  Most of Judge Lyons' Report simply adopts the analysis and conclusions of the Examiner.  All he adds are his subjective views as to the settlement value of the claims.   But those views do not rest on any reliable methodology.  Judge Lyons' description of his own purported methodology expressly disclaims "applying probabilities or mathematical models," and admits using "a non-formulaic, nuanced approach to determining the reasonable settlement value of each claim and the allocation of the $2.1 billion settlement[.]"  Report at 3.  Nor is

Judge Lyons' "methodology" verifiable.  His "approach" is not supported by any authoritative texts or treatises (Tr. 305:6-9), but on nothing more than Judge Lyons' "experience as a practitioner . . . U.S. Bankruptcy Judge . . . [and] as a mediator."  Report at 3; Tr. 88:19-89:6, 24-25 ("I think it is just that I have that experience.").

Judge Lyons claims to have used two main "methods" for reaching his settlement value conclusions:  a "discounting method" and a "likely settlement value method."  Report at 3. Neither approach satisfies *Daubert* and its progeny.  Judge Lyons' "discounting method" amounts to nothing more than his subjective assessment of criteria that, in his view, decrease or increase a claim's chances of success.  There is no "theory or technique" that can be tested to assess these opinions, nor any consistency or clarity in their application.  *See, e.g.,* Tr. 98:21-24 (conceding that discounting method application "very well could vary by the person applying the discount"); 200:7-11; 165:12-14 (describing discounting method as based on "subjective assessment" and a "non-formulaic analysis"); 110:5-8, 181:6-16 (describing Report as "inherently imprecise"); 382:12-16 ("I attempted not to be formulaic.  So I didn't do anything consistently based upon whether the examiner said that it was likely to succeed or more likely than not to succeed . . . .").

For example, in assessing a possible claim alleging "Misallocation of Net Revenues on Loans Brokered by GMAC Mortgage," Judge Lyons reduces the potential damages by 20% for "inherent risk."  Report at 15.  By contrast, for the potential claim asserting "Failure to Pay Value of Purchased MSRs and Correspondent Loan MSRs to GMAC Mortgage under the MSR Swap," the "inherent risk" discount is 30%.  *Id.* at 21.  The Report provides no explanation – let alone application of a reliable, verifiable and accepted method – to reach these figures, or explain why they differ from one claim to the next.  Indeed, describing the initial discounting of

14

50% applied to the Report's alter ego analysis, Judge Lyons testified it was premised on how he "felt" about the claim. Tr. 198:24. Pressed on this issue, and asked whether it "was . . . based on any objective criteria," Judge Lyons answered: "No, it is not a formula that you can do such as a scientific experiment or statistical analysis." *Id*. 200:2-6. He further conceded that there was no means for testing his assessment: "No, there is no way to . . . perform a controlled experiment that would yield the same results." *Id*. 200:17-19.

Similarly, the settlement value of various claims are subject to additional seemingly arbitrary reductions (or increases) in the Report, as noted in the table below. But Judge Lyons never explains how these disparate multipliers are derived, or offers any possible way to confirm their appropriateness. No text, treatise, article or report is identified as supporting these figures. *See id*. 181:17-25, 311:4-17.

| CLAIM | Misallocation of Net Revenues on Loans Brokered by GMAC Mortgage<br><br>Potential Damages: $520.5 million. Report at 15. | Failure to Pay Value of Purchased MSRs and Correspondent Loan MSRs to GMAC Mortgage under the MSR Swap<br><br>Potential Damages: $1,725 million. *Id.* at 21. | First and Second 2009 Tax Allocation<br><br>Potential Damages: $1,770 million. *Id.* at 39. | Minnesota Insider Preference Claims<br><br>Potential Damages: $534 million. *Id.* at 43-44. | Ally Bank Transaction, 2006 Restructuring<br><br>Potential Damages: $569 million. *Id.* at 48. |
|---|---|---|---|---|---|
| MODIFICATIONS | 1) (20%) inherent risk<br><br>2) (30%) risk for possible pursuit of claim under modification theory<br><br>3) (20%) risk based on disputed facts & GMAC Mortgage approval of allocation to be challenged<br><br>4) 15% for interest<br><br>5) Settlement: $268.2 million. *Id.* | 1) (30%) inherent risk<br><br>2) (55%) risk associated with mutual mistake defense<br><br>3) (5%) risk associated with modification defense<br><br>4) (25%) risk associated with regulatory-based defense<br><br>5) Settlement: $387.2 million. *Id.* | 1) (20%) inherent risk<br><br>2) (40%) on enforceability<br><br>3) (20%) on fraudulent transfer<br><br>4) 5% for alternative theories<br><br>5) Settlement: $713.7 million. *Id.* | 1) (30%) inherent risk<br><br>2) (20%) for choice of law<br><br>3) 10% for no netting of transfers<br><br>4) Settlement: $328.9 million. *Id.* | 1) (30%) inherent risk<br><br>2) (60%) on in *pari delicto*/merits<br><br>3) (25%) merits<br><br>4) 10% for breach of fiduciary theory alternative<br><br>5) Settlement: $130 million. *Id.* at 48-49. |

Judge Lyons also writes that he "applied a likely settlement negotiation scenario to arrive at a settlement value from a second approach." Report at 3. In this "second approach"

Judge Lyons speculates about how a negotiation *might* unfold between a possible plaintiff and a possible defendant.  But his second approach also is fatally flawed.  There is no consistent application from claim to claim, no explanation for the figures used in the calculations, and no method of verifying the accuracy of the scenario described.  Worse, the settlement negotiation scenarios described by Judge Lyons are incomplete, rendering them impossible to review, much less assess.  The Report describes a possible opening bid, a possible counterproposal, and then unspecified "back and forth" offers.  But Judge Lyons never reveals what will happen in this "back and forth," and, during his deposition, he admitted that he never actually thought about what the plaintiff's second demand would be or reduced demand would be or what the defendant's next offer would be."  Tr. 320:2-321:20.  He simply picked a final number based on his own "subjective assessment of how a negotiation might unfold between a hypothetical plaintiff and hypothetical defendant."  Tr. 167:16-25.  *See also* 322:5-8 (all percentages for Judge Lyons' methodologies are based on his experience and assessment of his team, and  not "on any specific objective numbers reported elsewhere[.]")

In all but one case, Judge Lyons' "likely settlement negotiation" methodology yielded final settlement values that were identical to those reported using his "discounting" methodology:[9]

---

[9]    The sole "outlier" relates to the Minnesota Insider Preference claim, where under the "discount method" Judge Lyons opines that the supposed settlement value is $328.9, and under the "negotiation scenario" he concludes that the settlement would be $300 million.  Report at 44.  The Report provides no explanation for how to reconcile these two values, and Judge Lyons simply uses the larger figure as a basis for all of his other calculations in the Report.  *See id.* at 71.

| CLAIM | Misallocation of Net Revenues on Loans Brokered by GMAC Mortgage<br><br>Potential Damages: $520.5 million.  Report at 15. | Failure to Pay Value of Purchased MSRs and Correspondent Loan MSRs to GMAC Mortgage under the MSR Swap<br><br>Potential Damages: $1,725 million.  *Id.* at 21. | First and Second 2009 Tax Allocation<br><br>Potential Damages: $1,770 million.  *Id.* at 39. | Minnesota Insider Preference Claims<br><br>Potential Damages: $534 million.  *Id.* at 43-44. | Ally Bank Transaction, 2006 Restructuring<br><br>Potential Damages: $569 million.  *Id.* at 48. |
|---|---|---|---|---|---|
| NEGOTIATIONS | 1) Plaintiff's initial settlement demand: 90%<br><br>2) Defendant's initial offer: 15%<br><br>3) "Back and forth"<br><br>4) Settlement: $268.2 million.  *Id.* at 14. | 1) Plaintiff's initial settlement demand: 60%<br><br>2) Defendant's initial offer: 10%<br><br>3) "Back and forth"<br><br>4) Settlement: $387.2 million.  *Id.* | 1) Plaintiff's initial settlement demand: 85%<br><br>2) Defendant's initial offer: 15%<br><br>3) "Back and forth"<br><br>4) Settlement: $713.7 million.  *Id.* at 38. | 1) Plaintiff's initial settlement demand: 90%<br><br>2) Defendant's initial offer: 15%<br><br>3) "Back and forth"<br><br>4) Settlement: $300 million.  *Id.* at 44. | 1) Plaintiff's initial settlement demand: 55%<br><br>2) Defendant's initial offer: 10%<br><br>3) "Back and forth"<br><br>4) Settlement: $130 million.  *Id.* at 48-49. |

In his deposition, Judge Lyons testified that this actually was not the case, and that a critical aspect of his methodology was not disclosed in his Report.  Specifically, Judge Lyons revealed that his two methods had yielded *different* numerical results, and that he had "reconciled" them in his report.  *See* Tr. 172:3.  Moreover, Judge Lyons did not recall what figures he had reached before performing his "reconciliation" (*id*. 174:15-8), and conceded that a reader probably could not discern this reconciliation procedure from his Report.  *Id.*  182:7-184:3.[10]

The Supreme Court has condemned this sort of unsupported expert opinion, which is "connected to existing data only by the *ipse dixit* of the expert."  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  This principle applies to scientific and non-scientific experts alike.  *See id.* at 142, 146 (involving two medical researchers); *E.E.O.C. v. Bloomberg L.P.*, No. 07 Civ. 8383 (LAP), 2010 WL 3466370, at *15 (S.D.N.Y. Aug. 31, 2010) (involving social psychologist, and excluding expert opinion "supported by what appears to be a 'because I said

---

[10]    The Report states that Judge Lyons also considered his own "perception of the motivation of the parties to arrive at a reasonable settlement value of the cause of action" as part of his methodology.  Report at 3.  With respect to the estate causes of action, Judge Lyons repeatedly opines that "[f]iduciary plaintiffs are typically motivated to reach an early resolution of disputes in order to expedite distributions to creditors."  *Id.* at 43.  Putting aside whether this truly is a fiduciary's motivation – or whether an "expert" is needed to identify such a motivation – Judge Lyons never suggests any way of quantifying this effect on the settlement of any claim.

so' explanation"); *Dev. Specialists, Inc. v. Weiser Realty Advisors LLC*, 09 Civ. 4084 (KBF),

2012 U.S. Dist. LEXIS 11701, at *22 (S.D.N.Y. Jan. 26, 2012) (excluding real estate appraiser's

expert testimony where, among other things, his methodology "'connected to existing data only

by the *ipse dixit* of the expert.'" (citing *Kumho Tire*, 526 U.S. at 157)).[11]

> Similarly, reports based on subjectivity and experience, without a sufficient

objective and reliable methodology, are routinely rejected under F.R.E. 702.  *Davis*, 937 F. Supp.

2d at 60-62, 69 (striking art appraiser's valuation under *Daubert* where the expert failed to link

his personal knowledge and experience to the issue in a non-speculative manner); *Lasorsa*, 2009

WL 2929234 at *3-4 (precluding opinion testimony of  restaurant safety expert that was

"subjective belief, unsupported by objective methodology"); *Yancey v. Carson*, Nos. 3:04-CV-

556, 3:04-CV-610. 2007 WL 3088232, at *3, *5 (E.D. Tenn. Oct. 19, 2007) ( "[T]he plaintiffs

essentially ask the Court to take [the expert's] word for his reliability and at best offer only

subjective, self-serving assurances of reliability.  This Court finds that is precisely the type of

'expert' testimony warned against by *Daubert* and *Kumho Tire*."); *Papadopoulos v. Fred Meyer

Stores, Inc.*, No. C04-0102RSL, 2006  WL 1375074, at *2 (W.D. Wash. May 17, 2006)

---

[11]        *See also, e.g., Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418, 419 (7th Cir. 2005)
(damages expert's "method, 'expert intuition,' is neither normal among social scientists nor testable – and
conclusions that are not falsifiable aren't worth much to either science or the judiciary."); *Durkin v. Equifax Check
Servs., Inc.*, 406 F.3d 410, 421 (7th Cir. 2005) (affirming exclusion of testimony of linguistics expert whose
conclusion was based on his "untestable say-so"); *Black v. Food Lion, Inc.*, 171 F.3d 308, 313 (5th Cir. 1999) (mere
assurances by expert witness physician as to the accuracy of her own methods or results, in the absence of other
credible supporting evidence, is insufficient); *Highland Capital*, 379 F. Supp. 2d at 465, 473 n.2 (rejecting
attorney's conclusory testimony and noting "one factor for courts to consider in determining reliability is 'whether
the expert's technique can be challenged in some objective sense, or whether it is instead simply a subjective,
conclusory approach that cannot reasonably be assessed for reliability'") (citing *U.S. Info Sys., Inc. v. Int'l Bhd. of
Elec. Workers Local Union Number 3, AFL-CIO*, 313 F. Supp. 2d 213, 227 (S.D.N.Y. 2004)); *Lippe v. Bairnco*, 288
B.R. 678, 680, 686 (S.D.N.Y. 2003) (observing, in case involving three non-scientists – a law professor, an
investment banker, and a finance professor – that expert "'must do more than aver conclusorily that his experience
led to his opinion'") (quoting *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001));
*Lasorsa v. Showboat: The Mardi Gras Casino*, Civil No. 07-4321 (JBS/JS), 2009 WL 2929234, at *4 (D.N.J. Sept.
9, 2009) (precluding expert testimony in part where purported restaurant safety expert applied no objective
methodology to come to his opinion, instead impermissibly relying on the ipse dixit of the expert).

(precluding opinion testimony of risk management consultant under *Daubert* that did not identify
or apply any methodology could not reasonably be assessed for reliability).

Judge Lyons' Report both is irrelevant and entirely unreliable because it is
predicated on no analysis other than his own subjective belief.  The Report should be stricken,
and Judge Lyons' testimony should be excluded.

## CONCLUSION

For these reasons, the Debtors and the Committee respectfully request that Judge
Lyons be precluded from testifying at trial and that his Report be stricken.

Dated: November 12, 2013.

MORRISON & FOERSTER LLP

 /s/  Gary S. Lee
Gary S. Lee
Charles L. Kerr
Darryl Rains
J. Alexander Lawrence
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

-and-

CURTIS, MALLET-PREVOST, COLT
& MOSLE LLP

 /s/ Steven J. Reisman
Steven J. Reisman
Theresa A. Foudy
Michael Moscato
101 Park Avenue
New York, New York 10178
Telephone:  (212) 696-8860
Facsimile:  (212) 697-1559

*Counsel to the Debtors and
Debtors in Possession*

KRAMER LEVIN NAFTALIS
& FRANKEL LLP

 /s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Philip Bentley
P. Bradley O'Neill
Norman C. Simon
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000

-and-

PACHULSKI STANG ZIEHL
& JONES LLP

 /s/ Robert J. Feinstein
Robert J. Feinstein
John A. Morris
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777

*Counsel to the Official Committee of
Unsecured Creditors*