**<u>Exhibit PX-1516</u>**

HOME LOAN TRUST 2005-HI2

ISSUER

AND

JPMORGAN CHASE BANK, N.A.

INDENTURE TRUSTEE

INDENTURE

DATED AS OF JUNE 29, 2005

------------------------------------------

HOME LOAN-BACKED NOTES

-------------

TABLE OF CONTENTS

Section                                                                      Page

ARTICLE I DEFINITIONS
    Section 1.01. Definitions....................................................2
    Section 1.02. Incorporation by Reference of Trust Indenture Act...........2
    Section 1.03. Rules of Construction..........................................2

ARTICLE II ORIGINAL ISSUANCE OF NOTES
    Section 2.01. Form...........................................................3
    Section 2.02. Execution, Authentication and Delivery.....................3

ARTICLE III COVENANTS
    Section 3.01. Collection of Payments with respect to the Home Loans......4
    Section 3.02. Maintenance of Office or Agency..............................4
    Section 3.03. Money for Payments To Be Held in Trust; Paying Agent.......4
    Section 3.04. Existence......................................................5
    Section 3.05. Payment of Principal and Interest; Defaulted Interest......5
    Section 3.06. Protection of Trust Estate...................................10
    Section 3.07. Opinions as to Trust Estate.................................11
    Section 3.08. Performance of Obligations; Servicing Agreement............11
    Section 3.09. Negative Covenants...........................................12
    Section 3.10. Annual Statement as to Compliance..........................12
    Section 3.11. Recording of Assignments....................................12
    Section 3.12. Representations and Warranties Concerning the Home Loans...12
    Section 3.13. Reserved.....................................................12
    Section 3.14. Reserved.....................................................12
    Section 3.15. Investment Company Act.......................................13
    Section 3.16. Issuer May Consolidate, etc.................................13
    Section 3.17. Successor or Transferee......................................15
    Section 3.18. No Other Business............................................15
    Section 3.19. No Borrowing.................................................15
    Section 3.20. Guarantees, Loans, Advances and Other Liabilities.........15
    Section 3.21. Capital Expenditures.........................................15
    Section 3.22. Owner Trustee Not Liable for the Certificate or Related Documents.........15
    Section 3.23. Restricted Payments..........................................16
    Section 3.24. Notice of Events of Default.................................16
    Section 3.25. Further Instruments and Acts................................16
    Section 3.26. Statements to Noteholders....................................16
    Section 3.27. Allocation of Liquidation Loss Amounts.....................16
    Section 3.28. Reserved.....................................................17
    Section 3.29. Determination of Class A-1 Note Rate........................17
    Section 3.30. Liquidation on Final Scheduled Payment Date................17
    Section 3.31. No Recourse..................................................17
    Section 3.32. Additional UCC Representations and Warranties..............17

ARTICLE IV THE NOTES; SATISFACTION AND DISCHARGE OF INDENTURE
    Section 4.01. The Notes....................................................19
    Section 4.02. Registration of and Limitations on Transfer and Exchange of Notes;
                  Appointment of Certificate Registrar........................19
    Section 4.03. Mutilated, Destroyed, Lost or Stolen Notes.................21
    Section 4.04. Persons Deemed Owners........................................21
    Section 4.05. Cancellation.................................................21
    Section 4.06. Book-Entry Notes.............................................22
    Section 4.07. Notices to Depository........................................23
    Section 4.08. Definitive Notes.............................................23
    Section 4.09. Tax Treatment................................................23
    Section 4.10. Satisfaction and Discharge of Indenture....................23
    Section 4.11. Application of Trust Money...................................24

Section 4.12. Reserved..........................................................................................24
Section 4.13. Repayment of Monies Held by Paying Agent.................................25
Section 4.14. Temporary Notes..............................................................................25


ARTICLE V DEFAULT AND REMEDIES
Section 5.01. Events of Default...........................................................................26
Section 5.02. Acceleration of Maturity; Rescission and Annulment..................26
Section 5.03. Collection of Indebtedness and Suits for Enforcement by Indenture
Trustee........................................................................................................26
Section 5.04. Remedies; Priorities.......................................................................28
Section 5.05. Optional Preservation of the Trust Estate....................................30
Section 5.06. Limitation of Suits..........................................................................30
Section 5.07. Rights of Noteholders to Receive Principal and Interest...............31
Section 5.08. Restoration of Rights and Remedies..............................................31
Section 5.09. Rights and Remedies Cumulative...................................................31
Section 5.10. Delay or Omission Not a Waiver....................................................31
Section 5.11. Control by Noteholders..................................................................31
Section 5.12. Waiver of Past Defaults..................................................................32
Section 5.13. Undertaking for Costs....................................................................32
Section 5.14. Waiver of Stay or Extension Laws.................................................32
Section 5.15. Sale of Trust Estate........................................................................33
Section 5.16. Action on Notes..............................................................................34


ARTICLE VI THE INDENTURE TRUSTEE
Section 6.01. Duties of Indenture Trustee...........................................................36
Section 6.02. Rights of Indenture Trustee...........................................................37
Section 6.03. Individual Rights of Indenture Trustee..........................................37
Section 6.04. Indenture Trustee's Disclaimer.....................................................37
Section 6.05. Notice of Event of Default..............................................................37
Section 6.06. Reports by Indenture Trustee to Holders......................................37
Section 6.07. Compensation and Indemnity........................................................38
Section 6.08. Replacement of Indenture Trustee.................................................38
Section 6.09. Successor Indenture Trustee by Merger........................................39
Section 6.10. Appointment of Co-Indenture Trustee or Separate Indenture Trustee.........39
Section 6.11. Eligibility; Disqualification............................................................40
Section 6.12. Preferential Collection of Claims Against Issuer...........................41
Section 6.13. Representations and Warranties....................................................41
Section 6.14. Directions to Indenture Trustee....................................................41
Section 6.15. Indenture Trustee May Own Securities.........................................42


ARTICLE VII NOTEHOLDERS' LISTS AND REPORTS
Section 7.01. Issuer to Furnish Indenture Trustee Names and Addresses of
Noteholders................................................................................................43
Section 7.02. Preservation of Information; Communications to Noteholders..............43
Section 7.03. Reports by Issuer...........................................................................43
Section 7.04. Reports by Indenture Trustee........................................................43
Section 7.05. Exchange Act Reporting.................................................................44


ARTICLE VIII ACCOUNTS, DISBURSEMENTS AND RELEASES
Section 8.01. Collection of Money........................................................................45
Section 8.02. Trust Accounts...............................................................................45
Section 8.03. Officer's Certificate........................................................................45
Section 8.04. Termination Upon Distribution to Noteholders............................45
Section 8.05. Release of Trust Estate..................................................................46
Section 8.06. Surrender of Notes Upon Final Payment......................................46


ARTICLE IX SUPPLEMENTAL INDENTURES
Section 9.01. Supplemental Indentures Without Consent of Noteholders...................47
Section 9.02. Supplemental Indentures With Consent of Noteholders........................48
Section 9.03. Execution of Supplemental Indentures..........................................50
Section 9.04. Effect of Supplemental Indenture..................................................50
Section 9.05. Conformity with Trust Indenture Act............................................50
Section 9.06. Reference in Notes to Supplemental Indentures...........................50


ARTICLE X MISCELLANEOUS

Section 10.01.Compliance Certificates and Opinions, etc..............................51
Section 10.02.Form of Documents Delivered to Indenture Trustee.......................52
Section 10.03.Acts of Noteholders...................................................53
Section 10.04.Notices, etc., to Indenture Trustee, Issuer and Rating Agencies.........53
Section 10.05.Notices to Noteholders; Waiver........................................54
Section 10.06.Alternate Payment and Notice Provisions...............................55
Section 10.07.Conflict with Trust Indenture Act.....................................55
Section 10.08.Effect of Headings...................................................55
Section 10.09.Successors and Assigns...............................................55
Section 10.10.Separability.........................................................55
Section 10.11.Benefits of Indenture................................................55
Section 10.12.Legal Holidays.......................................................55
Section 10.13.GOVERNING LAW.......................................................55
Section 10.14.Counterparts.........................................................55
Section 10.15.Recording of Indenture...............................................56
Section 10.16.Issuer Obligation....................................................56
Section 10.17.No Petition..........................................................56
Section 10.18.Inspection...........................................................56

Signatures and Seals

Acknowledgments

EXHIBITS

Exhibit A-1     Form of Class A Notes
Exhibit A-2     Form of Class M Notes
Exhibit B       Form of Back-up Certification to Form 10-K Certificate
Appendix A      Definitions

This is the Indenture, dated as of June 29, 2005, between HOME LOAN TRUST 2005-HI2, a Delaware statutory trust, as Issuer (the "Issuer"), and JPMorgan Chase Bank, N.A., as Indenture Trustee (the "Indenture Trustee"),

WITNESSETH THAT:

Each party hereto agrees as follows for the benefit of the other party and for the equal and ratable benefit of the Holders of the Issuer's Series 2005-HI2 Home Loan-Backed Notes (the "Notes").

GRANTING CLAUSE

The Issuer hereby Grants to the Indenture Trustee at the Closing Date, as trustee for the benefit of the Holders of the Notes, all of the Issuer's right, title and interest in and to whether now existing or hereafter created (a) the Home Loans, (b) all funds on deposit from time to time in the Payment Account and in all proceeds thereof; and (c) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in respect of, any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in the conversion thereof, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, checks, deposit accounts, rights to payment of any and every kind, and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of any of the foregoing (collectively, the "Trust Estate" or the "Collateral").

The foregoing Grant is made in trust to secure the payment of principal of and interest on, and any other amounts owing in respect of, the Notes, equally and ratably without prejudice, priority or distinction, and to secure compliance with the provisions of this Indenture, all as provided in this Indenture.

The Indenture Trustee, as trustee on behalf of the Holders of the Notes, acknowledges such Grant, accepts the trust under this Indenture in accordance with the provisions hereof and agrees to perform its duties as Indenture Trustee as required herein.

1

ARTICLE I

DEFINITIONS

Section 1.01. Definitions. For all purposes of this Indenture, except as otherwise expressly provided herein or unless the context otherwise requires, capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Definitions attached hereto as Appendix A which is incorporated by reference herein. All other capitalized terms used herein shall have the meanings specified herein.

Section 1.02. Incorporation by Reference of Trust Indenture Act. Whenever this Indenture refers to a provision of the Trust Indenture Act (the "TIA"), the provision is incorporated by reference in and made a part of this Indenture. The following TIA terms used in this Indenture have the following meanings:

"Commission" means the Securities and Exchange Commission.

"indenture securities" means the Notes.

"indenture security holder" means a Noteholder.

"indenture to be qualified" means this Indenture.

"indenture trustee" or "institutional trustee" means the Indenture Trustee.

"obligor" on the indenture securities means the Issuer and any other obligor on the indenture securities.

All other TIA terms used in this Indenture that are defined by the TIA, defined by TIA reference to another statute or defined by Commission rule have the meaning assigned to them by such definitions.

Section 1.03. Rules of Construction. Unless the context otherwise requires:

(i) a term has the meaning assigned to it;

(ii) an accounting term not otherwise defined has the meaning assigned to it in accordance with generally accepted accounting principles as in effect from time to time;

(iii) "or" is not exclusive;

(iv) "including" means including without limitation;

(v) words in the singular include the plural and words in the plural include the singular; and

(vi) any agreement, instrument or statute defined or referred to herein or in any instrument or certificate delivered in connection herewith means such agreement, instrument or statute as from time to time amended, modified or supplemented and includes (in the case of agreements or instruments) references to all attachments thereto and instruments incorporated therein; references to a Person are also to its permitted successors and assigns.

2

ARTICLE II

ORIGINAL ISSUANCE OF NOTES

Section 2.01. Form. The Notes, together with the Indenture Trustee's certificate of authentication, shall be in substantially the form set forth in Exhibit A-1 and A-2, with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may, consistently herewith, be determined by the officers executing such Notes, as evidenced by their execution of the Notes. Any portion of the text of any Note may be set forth on the reverse thereof, with an appropriate reference thereto on the face of the Note.

The Notes shall be typewritten, printed, lithographed or engraved or produced by any combination of these methods (with or without steel engraved borders), all as determined by the Authorized Officers executing such Notes, as evidenced by their execution of such Notes. The terms of the Notes set forth in Exhibit A-1 and A-2 are part of the terms of this Indenture.

Section 2.02. Execution, Authentication and Delivery. The Notes shall be executed on behalf of the Issuer by any of its Authorized Officers. The signature of any such Authorized Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time Authorized Officers of the Issuer shall bind the Issuer, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of such Notes.

The Indenture Trustee shall upon Issuer Request authenticate and deliver Notes for original issue in an aggregate initial principal amount of $78,315,000 with respect to the Class A-1 Notes, $20,999,000 with respect to the Class A-2 Notes, $43,781,000 with respect to the Class A-3 Notes, $15,951,000 with respect to the Class A-4 Notes, $28,154,000 with respect to the Class A- 5 Notes, $9,000,000 with respect to the Class M-1 Notes, $7,800,000 with respect to the Class M-2 Notes, $7,200,000 with respect to the Class M-3 Notes, $6,000,000 with respect to the Class M-4 Notes, $5,400,000 with respect to the Class M-5 Notes, $4,200,00 with respect to the Class M-6 Notes, $4,800,000 with respect to the Class M-7 Notes, $5,160,000 with respect to the Class M-8 Notes and $3,240,000 with respect to the Class M-9 Notes.

The Notes shall be dated the date of their authentication. The Notes shall be issuable as registered Notes. The Class A Notes and the Class M-1 Notes shall be issuable in the minimum initial Note Balances of $25,000 and in integral multiples of $1 in excess thereof. The Class M-2 Notes, Class M-3 Notes, Class M-4 Notes, Class M-5 Notes, Class M-6 Notes, Class M-7 Notes, Class M-8 Notes and Class M-9 Notes shall be issuable in the minimum initial Note Balances of $250,000 and in integral multiples of $1 in excess thereof.

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless there appears on such Note a certificate of authentication substantially in the form provided for herein executed by the Indenture Trustee by the manual signature of one of its authorized signatories, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been duly authenticated and delivered hereunder.

ARTICLE III

 COVENANTS

Section 3.01. Collection of Payments with respect to the Home Loans. The Indenture Trustee shall establish and maintain with itself the Payment Account in which the Indenture Trustee shall, subject to the terms of this paragraph, deposit, on the same day as it is received from the Master Servicer, each remittance received by the Indenture Trustee with respect to the Home Loans. The Indenture Trustee shall make all payments of principal of and interest on the Notes, subject to Section 3.03, as provided in Section 3.05 herein from monies on deposit in the Payment Account.

Section 3.02. Maintenance of Office or Agency. The Issuer will maintain in the City of New York, an office or agency where, subject to satisfaction of conditions set forth herein, Notes may be surrendered for registration of transfer or exchange, and where notices and demands to or upon the Issuer in respect of the Notes and this Indenture may be served. The Issuer hereby initially appoints the Indenture Trustee to serve as its agent for the foregoing purposes. If at any time the Issuer shall fail to maintain any such office or agency or shall fail to furnish the Indenture Trustee with the address thereof, such surrenders, notices and demands may be made or served at the Corporate Trust Office, and the Issuer hereby appoints the Indenture Trustee as its agent to receive all such surrenders, notices and demands.

Section 3.03. Money for Payments To Be Held in Trust; Paying Agent. (a) As provided in Section 3.01, all payments of amounts due and payable with respect to any Notes that are to be made from amounts withdrawn from the Payment Account pursuant to Section 3.01 shall be made on behalf of the Issuer by the Indenture Trustee or by the Paying Agent, and no amounts so withdrawn from the Payment Account for payments of Notes shall be paid over to the Issuer except as provided in this Section 3.03. The Issuer will cause each Paying Agent other than the Indenture Trustee to execute and deliver to the Indenture Trustee an instrument in which such Paying Agent shall agree with the Indenture Trustee (and if the Indenture Trustee acts as Paying Agent it hereby so agrees), subject to the provisions of this Section 3.03, that such Paying Agent will:

(i) hold all sums held by it for the payment of amounts due with respect to the Notes in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided and pay such sums to such Persons as herein provided;

(ii) give the Indenture Trustee written notice of any default by the Issuer of which it has actual knowledge in the making of any payment required to be made with respect to the Notes;

(iii) at any time during the continuance of any such default, upon the written request of the Indenture Trustee, forthwith pay to the Indenture Trustee all sums so held in trust by such Paying Agent;

(iv) immediately resign as Paying Agent and forthwith pay to the Indenture Trustee all sums held by it in trust for the payment of Notes if at any time it ceases to meet the standards required to be met by a Paying Agent at the time of its appointment;

4

(v) comply with all requirements of the Code with respect to the withholding from any payments made by it on any Notes of any applicable withholding taxes imposed thereon and with respect to any applicable reporting requirements in connection therewith; and

(vi) deliver to the Indenture Trustee a copy of the report to Noteholders prepared with respect to each Payment Date by the Master Servicer pursuant to Section 4.01 of the Servicing Agreement.

The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, by Issuer Request direct any Paying Agent to pay to the Indenture Trustee all sums held in trust by such Paying Agent, such sums to be held by the Indenture Trustee upon the same trusts as those upon which the sums were held by such Paying Agent; and upon such payment by any Paying Agent to the Indenture Trustee, such Paying Agent shall be released from all further liability with respect to such money.

Subject to applicable laws with respect to escheat of funds, any money held by the Indenture Trustee or any Paying Agent in trust for the payment of any amount due with respect to any Note and remaining unclaimed for one year after such amount has become due and payable shall be discharged from such trust and be paid to the Issuer on Issuer Request; and the Holder of such Note shall thereafter, as an unsecured general creditor, look only to the Issuer for payment thereof (but only to the extent of the amounts so paid to the Issuer), and all liability of the Indenture Trustee or such Paying Agent with respect to such trust money shall thereupon cease; provided, however, that the Indenture Trustee or such Paying Agent, before being required to make any such repayment, shall at the expense and direction of the Issuer cause to be published once, in an Authorized Newspaper, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Issuer. The Indenture Trustee may also adopt and employ, at the expense and direction of the Issuer, any other reasonable means of notification of such repayment (including, but not limited to, mailing notice of such repayment to Holders whose Notes have been called but have not been surrendered for redemption or whose right to or interest in monies due and payable but not claimed is determinable from the records of the Indenture Trustee or of any Paying Agent, at the last address of record for each such Holder).

Section 3.04. Existence. The Issuer will keep in full effect its existence, rights and franchises as a statutory trust under the laws of the State of Delaware (unless it becomes, or any successor Issuer hereunder is or becomes, organized under the laws of any other state or of the United States of America, in which case the Issuer will keep in full effect its existence, rights and franchises under the laws of such other jurisdiction) and will obtain and preserve its qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture, the Notes, the Home Loans and each other instrument or agreement included in the Trust Estate.

Section 3.05. Payment of Principal and Interest; Defaulted Interest. (a) On each Payment Date from amounts on deposit in the Payment Account (other than amounts deposited constituting prepayment charges), the Paying Agent shall pay to the Noteholders, the Certificate Paying Agent on behalf of the Certificateholder and to other Persons the amounts to which they are entitled, as set forth in the statements delivered to the Indenture Trustee pursuant to Section 4.01 of the Servicing Agreement, as set forth in this Section 3.05.

5

(b) On each Payment Date, Interest Collections shall be distributed to the Notes in the following order of priority:

(i) first, to the Senior Notes, Accrued Note Interest on that Class for such Payment Date, plus any unpaid Accrued Note Interest remaining unpaid from any prior Payment Date, pro rata, to the extent of the Interest Collections for that Payment Date as provided in clause (c) below;

(ii) second, to the Class M-1 Notes, Accrued Note Interest on that Class for such Payment Date, plus any unpaid Accrued Note Interest remaining unpaid from any prior Payment Date, to the extent of Interest Collections for the Payment Date after distributions of interest to the Senior Notes;

(iii) third, to the Class M-2 Notes, Accrued Note Interest on that Class for such Payment Date, plus any unpaid Accrued Note Interest remaining unpaid from any prior Payment Date, to the extent of Interest Collections for the Payment Date after distributions of interest to the Senior Notes and the Class M-1 Notes;

(iv) fourth, to the Class M-3 Notes, Accrued Note Interest on that Class for such Payment Date, plus any unpaid Accrued Note Interest remaining unpaid from any prior Payment Date, to the extent of Interest Collections for the Payment Date after distributions of interest to the Senior Notes, the Class M-1 Notes and the Class M-2 Notes;

(v) fifth, to the Class M-4 Notes, Accrued Note Interest on that Class for such Payment Date, plus any unpaid Accrued Note Interest remaining unpaid from any prior Payment Date, to the extent of Interest Collections for the Payment Date after distributions of interest to the Senior Notes, the Class M-1 Notes, the Class M-2 Notes and the Class M-3 Notes;

(vi) sixth, to the Class M-5 Notes, Accrued Note Interest on that Class for such Payment Date, plus any unpaid Accrued Note Interest remaining unpaid from any prior Payment Date, to the extent of Interest Collections for the Payment Date after distributions of interest to the Senior Notes, the Class M-1 Notes, the Class M-2 Notes, the Class M-3 Notes and the Class M-4 Notes;

(vii) seventh, to the Class M-6 Notes, Accrued Note Interest on that Class for such Payment Date, plus any unpaid Accrued Note Interest remaining unpaid from any prior Payment Date, to the extent of Interest Collections for the Payment Date after distributions of interest to the Senior Notes, the Class M-1 Notes, the Class M-2 Notes, the Class M-3 Notes, the Class M-4 Notes and the Class M-5 Notes;

(viii) eighth, to the Class M-7 Notes, Accrued Note Interest on that Class for such Payment Date, plus any unpaid Accrued Note Interest remaining unpaid from any prior Payment Date, to the extent of Interest Collections for the Payment Date after distributions of interest to the Senior Notes, the Class M-1 Notes, the Class M-2 Notes, the Class M-3 Notes, the Class M-4 Notes, the Class M-5 Notes and the Class M-6 Notes;

(ix) ninth, to the Class M-8 Notes, Accrued Note Interest on that Class for such Payment Date, plus any unpaid Accrued Note Interest remaining unpaid from any prior Payment Date, to the extent of Interest Collections for the Payment Date after distributions of interest to the Senior Notes, the Class M-1 Notes, the Class M-2 Notes, the Class M-3 Notes, the Class M-4 Notes, the Class M-5 Notes, the Class M-6 Notes and the Class M-7 Notes; and

(x) tenth, to the Class M-9 Notes, Accrued Note Interest on that Class for such Payment Date, plus any unpaid Accrued Note Interest remaining unpaid from any prior Payment Date, to the extent of Interest Collections for the Payment Date after distributions of interest to the Senior Notes, the Class M-1 Notes, the Class M-2 Notes, the Class M-3 Notes, the Class M-4 Notes, the Class M-5 Notes, the Class M-6 Notes, the Class M-7 Notes and the Class M-8 Notes.

(c) On each Payment Date, other than the Payment Date in May 2035, the Principal Distribution Amount shall be distributed in the following order of priority:

(i) first, the Senior Principal Distribution Amount shall be distributed to the Class A Notes in the manner and priority set forth below;

(ii) second, the Class M-1 Principal Distribution Amount shall be distributed to the Class M-1 Notes until the Note Balance thereof has been reduced to zero;

(iii) third, the Class M-2 Principal Distribution Amount shall be distributed to the Class M-2 Notes until the Note Balance thereof has been reduced to zero;

(iv) fourth, the Class M-3 Principal Distribution Amount shall be distributed to the Class M-3 Notes until the Note Balance thereof has been reduced to zero;

(v) fifth, the Class M-4 Principal Distribution Amount shall be distributed to the Class M-4 Notes until the Note Balance thereof has been reduced to zero;

(vi) sixth, the Class M-5 Principal Distribution Amount shall be distributed to the Class M-5 Notes until the Note Balance thereof has been reduced to zero;

(vii) seventh, the Class M-6 Principal Distribution Amount shall be distributed to the Class M-6 Notes until the Note Balance thereof has been reduced to zero;

(viii) eighth, the Class M-7 Principal Distribution Amount shall be distributed to the Class M-7 Notes until the Note Balance thereof has been reduced to zero;

(ix) ninth, the Class M-8 Principal Distribution Amount shall be distributed to the Class M-8 Notes until the Note Balance thereof has been reduced to zero;

(x) tenth, the Class M-9 Principal Distribution Amount shall be distributed to the Class M-9 Notes until the Note Balance thereof has been reduced to zero; and

(xi) eleventh, the balance, if any, remaining of the Principal Distribution Amount after the distributions described in clauses (i) through (x) hereof above shall be paid to the Class M Notes in accordance with the provisions for the payment of the Net Monthly Excess Cash Flow as described in subsection (e) below, commencing with clause (iii) thereof.

7

Any payments of principal allocable to the Class A Notes shall be paid to the Class A-1 Notes, Class A-2 Notes, Class A-3 Notes, Class A-4 Notes and Class A-5 Notes, in that order, in each case until the outstanding Note Balance of each of these Notes has been reduced to zero.

In the event that the Class M Notes have been reduced to zero while any Class A Note is outstanding, all priorities relating to Senior Principal Distribution Amount referenced above will be disregarded. Instead, an amount equal to the Senior Principal Distribution Amount will be distributed to the Class A Notes remaining, pro rata in accordance with their respective outstanding Note Balances.

On the Payment Date in May 2035, principal will be due and payable on each Class of Notes in amounts equal to the related Note Balance, if any. In no event will principal payments on any Class of Notes on any Payment Date exceed the related Note Balance on that date.

(d) On each Payment Date, the Net Monthly Excess Cash Flow will be distributed in the following order of priority:

(i) first, to pay the aggregate Liquidation Loss Distribution Amount for that Payment Date to the Notes;

(ii) second, to pay the Reserve Increase Amount for that Payment Date to the Notes;

(iii) third, to pay any Allocable Loss Interest on the Class M-1 Notes until fully reimbursed;

(iv) fourth, to reimburse the Class M-1 Notes for Liquidation Loss Amounts previously allocated thereto pursuant to Section 3.27 until fully reimbursed;

(v) fifth, to pay any Allocable Loss Interest on the Class M-2 Notes until fully reimbursed;

(vi) sixth, to reimburse the Class M-2 Notes for Liquidation Loss Amounts previously allocated thereto pursuant to Section 3.27 until fully reimbursed;

(vii) seventh, to pay any Allocable Loss Interest on the Class M-3 Notes, until fully reimbursed;

(viii) eighth, to reimburse the Class M-3 Notes for Liquidation Loss Amounts previously allocated thereto pursuant to Section 3.27 until fully reimbursed;

(ix) ninth, to pay any Allocable Loss Interest on the Class M-4 Notes, until fully reimbursed;

(x) tenth, to reimburse the Class M-4 Notes for Liquidation Loss Amounts previously allocated thereto pursuant to Section 3.27 until fully reimbursed;

(xi) eleventh, to pay any Allocable Loss Interest on the Class M-5 Notes, until fully reimbursed;

(xii) twelfth, to reimburse the Class M-5 Notes for Liquidation Loss Amounts previously allocated thereto pursuant to Section 3.27 until fully reimbursed;

(xiii) thirteenth, to pay any Allocable Loss Interest on the Class M-6 Notes, until fully reimbursed;

(xiv) fourteenth, to reimburse the Class M-6 Notes for Liquidation Loss Amounts previously allocated thereto pursuant to Section 3.27 until fully reimbursed;

(xv) fifteenth, to pay any Allocable Loss Interest on the Class M-7 Notes, until fully reimbursed;

(xvi) sixteenth, to reimburse the Class M-7 Notes for Liquidation Loss Amounts previously allocated thereto pursuant to Section 3.27 until fully reimbursed;

(xvii) seventeenth, to pay any Allocable Loss Interest on the Class M-8 Notes, until fully reimbursed;

(xviii) eighteenth, to reimburse the Class M-8 Notes for Liquidation Loss Amounts previously allocated thereto pursuant to Section 3.27 until fully reimbursed;

(xix) nineteenth, to pay any Allocable Loss Interest on the Class M-9 Notes, until fully reimbursed;

(xx) twentieth, to reimburse the Class M-9 Notes for Liquidation Loss Amounts previously allocated thereto pursuant to Section 3.27 until fully reimbursed; and

(xxi) twenty-first, any remaining amounts will be distributed to the Certificate.

(e) On each Payment Date, the Certificate Paying Agent shall deposit in the Certificate Distribution Account all amounts it received pursuant to this Section 3.05 for the purpose of distributing such funds to the Certificateholder.

(f) The amounts paid to Noteholders shall be paid to the Notes in accordance with the applicable percentage as set forth in the definition of Note Rate. Interest will accrue on the Notes (other than the Class A-1 Notes) on the basis of a 360-day year consisting of twelve 30-day months. Interest will accrue on the Class A-1 Notes on the basis of a 360-day year and the actual number of days in the related Interest Accrual Period.

(g) Any installment of interest or principal, if any, payable on any Note that is punctually paid or duly provided for by the Issuer on the applicable Payment Date shall, if such Holder holds Notes of an aggregate initial Note Balance of at least $1,000,000, be paid to each Holder of record on the preceding Record Date, by wire transfer to an account specified in writing by such Holder reasonably satisfactory to the Indenture Trustee as of the preceding Record Date or in all other cases or if no such instructions have been delivered to the Indenture Trustee, by check or money order to such Noteholder mailed to such Holder's address as it appears in the Note Register the amount required to be distributed to such Holder on such Payment Date pursuant to such Holder's Securities; provided, however, that the Indenture Trustee shall not pay to such Holders any amount required to be withheld from a payment to such Holder by the Code.

9

(h) The Note Balance of each Note shall be due and payable in full on the Final Scheduled Payment Date as provided in the related form of Note set forth in Exhibit A-1 and A-2. All principal payments on the Notes shall be made to the Noteholders entitled thereto in accordance with the Percentage Interests represented by such Notes. Upon written notice to the Indenture Trustee by the Issuer (or by the Master Servicer on behalf of the Issuer, pursuant to Section 8.08(c) of the Servicing Agreement) of the Final Scheduled Payment Date for the Notes or other final Payment Date, the Indenture Trustee shall notify the related Noteholders of record of the Final Scheduled Payment Date or other final Payment Date, by mail or facsimile, no later than five Business Days prior to the Final Scheduled Payment Date or other final Payment Date and shall specify:

(i) that the Record Date otherwise applicable to such Payment Date is not applicable;

(ii) that payment of the principal amount and any interest due with respect to such Note at the Final Scheduled Payment Date or other final Payment Date will be payable only upon presentation and surrender of such Note and shall specify the place where such Note may be presented and surrendered for such final payment; and

(iii) the amount of any such final payment, if known.

Section 3.06. Protection of Trust Estate. (a) The Issuer will from time to time execute and deliver all such supplements and amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and will take such other action necessary or advisable to:

(i) maintain or preserve the lien and security interest (and the priority thereof) of this Indenture or carry out more effectively the purposes hereof;

(ii) perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

(iii) cause the Trust to enforce any of the Home Loans; and

(iv) preserve and defend title to the Trust Estate and the rights of the Indenture Trustee and the Noteholders in such Trust Estate against the claims of all persons and parties.

(b) Except as otherwise provided in this Indenture, the Indenture Trustee shall not remove any portion of the Trust Estate that consists of money or is evidenced by an instrument, certificate or other writing from the jurisdiction in which it was held at the date of the most recent Opinion of Counsel delivered pursuant to Section 3.07 (or from the jurisdiction in which it was held as described in the Opinion of Counsel delivered at the Closing Date pursuant to Section 3.07(a), if no Opinion of Counsel has yet been delivered pursuant to Section 3.07(b)) unless the Trustee shall have first received an Opinion of Counsel to the effect that the lien and security interest created by this Indenture with respect to such property will continue to be maintained after giving effect to such action or actions. The Issuer hereby designates the Indenture Trustee its agent and attorney-in-fact to execute any financing statement, continuation statement or other instrument required to be executed pursuant to this Section 3.06.

10

Section 3.07.  Opinions as to Trust Estate.  (a) On the Closing Date, the Issuer shall furnish to the Indenture Trustee and the Owner Trustee an Opinion of Counsel at the expense of the Issuer either stating that, in the opinion of such counsel, such action has been taken with respect to the recording and filing of this Indenture, any indentures supplemental hereto, and any other requisite documents, and with respect to the execution and filing of any financing statements and continuation statements, as are necessary to perfect and make effective the lien and security interest in the Home Loans and reciting the details of such action, or stating that, in the opinion of such counsel, no such action is necessary to make such lien and security interest effective.

(b) On or before December 31st in each calendar year, beginning in 2006, the Issuer shall furnish to the Indenture Trustee an Opinion of Counsel at the expense of the Issuer either stating that, in the opinion of such counsel, such action has been taken with respect to the recording, filing, rerecording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and with respect to the execution and filing of any financing statements and continuation statements as is necessary to maintain the lien and security interest in the Home Loans and reciting the details of such action or stating that in the opinion of such counsel no such action is necessary to maintain such lien and security interest. Such Opinion of Counsel shall also describe the recording, filing, re-recording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and the execution and filing of any financing statements and continuation statements that will, in the opinion of such counsel, be required to maintain the lien and security interest in the Home Loans until December 31 in the following calendar year.

Section 3.08.  Performance of Obligations; Servicing Agreement.  (a) The Issuer will punctually perform and observe all of its obligations and agreements contained in this Indenture, the Basic Documents and in the instruments and agreements included in the Trust Estate.

(b) The Issuer may contract with other Persons to assist it in performing its duties under this Indenture, and any performance of such duties by a Person identified to the Indenture Trustee in an Officer's Certificate of the Issuer shall be deemed to be action taken by the Issuer.

(c) The Issuer will not take any action or permit any action to be taken by others which would release any Person from any of such Person's covenants or obligations under any of the documents relating to the Home Loans or under any instrument included in the Trust Estate, or which would result in the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any of the documents relating to the Home Loans or any such instrument, except such actions as the Master Servicer is expressly permitted to take in the Servicing Agreement.

(d) The Issuer may retain an administrator and may enter into contracts with other Persons for the performance of the Issuer's obligations hereunder, and performance of such obligations by such Persons shall be deemed to be performance of such obligations by the Issuer.

11

Section 3.09.  Negative  Covenants.  So long as any Notes are  Outstanding,  the Issuer shall not:

(i) except as expressly permitted by this Indenture, sell, transfer, exchange or otherwise dispose of the Trust Estate, unless directed to do so by the Indenture Trustee;

(ii) claim any credit on, or make any  deduction  from the principal or interest payable in respect of, the Notes (other than amounts properly withheld from such payments  under the Code) or assert  any claim  against  any  present  or former Noteholder  by reason of the payment of the taxes  levied or  assessed  upon any part of the Trust Estate;

(iii) (A) permit the validity or effectiveness of this Indenture to be impaired, or permit the lien of this Indenture to be amended, hypothecated,  subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations  with respect to the Notes under this Indenture  except as may be expressly permitted hereby,  permit any lien, charge,  excise,  claim,  security interest,  mortgage or other encumbrance (other than the lien of this Indenture) to be created on or extend to or otherwise arise upon or burden the Trust Estate or any part  thereof  or any  interest  therein or the  proceeds  thereof or (B) permit the lien of this  Indenture  not to  constitute  a valid  first  priority security interest in the Trust Estate; or

(iv) waive or impair,  or fail to assert rights under the Home Loans,  or impair or cause to be  impaired  the Home Loans or the  Issuer's  interest  in the Home Loans,  the Home Loan Purchase  Agreement or in any Basic Document,  if any such action would materially and adversely affect the interests of the Noteholders.

Section 3.10. Annual Statement as to Compliance.  The Issuer will deliver to the Indenture  Trustee,  within  120 days after the end of each  fiscal  year of the Issuer (commencing with the fiscal year 2005), an Officer's Certificate stating, as to the Authorized Officer signing such Officer's Certificate, that:

(i) a  review  of the  activities  of the  Issuer  during  such  year and of its performance  under this  Indenture  and the Trust  Agreement has been made under such Authorized Officer's supervision; and

(ii) to the best of such Authorized Officer's  knowledge,  based on such review, the Issuer has complied with all conditions  and covenants  under this Indenture and the provisions of the Trust Agreement throughout such year, or, if there has been a default in its compliance with any such condition or covenant, specifying each such  default  known to such  Authorized  Officer and the nature and status thereof.

Section 3.11. Recording of Assignments.  The Issuer shall enforce the obligation of the Seller  under the Home Loan  Purchase  Agreement to submit or cause to be submitted for recording all  Assignments of Mortgages  within 60 days of receipt of recording information by the Master Servicer.

Section 3.12.  Representations  and Warranties  Concerning  the Home Loans.  The Indenture  Trustee,  as  pledgee  of the  Home  Loans,  has the  benefit  of the representations  and warranties made by the Seller in Section 3.1(a) and Section 3.1(b) of the Home Loan  Purchase  Agreement  concerning  the Home Loans and the right to enforce the remedies against the Seller provided in such Section 3.1(a) or  Section  3.1(b)  to the same  extent  as  though  such  representations  and warranties were made directly to the Indenture Trustee.

Section 3.13.  Assignee of Record of the Home Loans.  The Issuer hereby directs and authorizes the Indenture Trustee to hold record title to the Home Loans by being named as payee in the endorsements of the Mortgage Notes and assignee in the Assignments of Mortgage to be recorded under Section 2.1 of the Home Loan Purchase Agreement. Except as expressly provided in the Home Loan Purchase Agreement or in the Servicing Agreement with respect to any specific Home Loan, the Indenture Trustee shall not execute any endorsement or assignment or otherwise release or transfer such record title to any of the Home Loans until such time as the remaining Trust Estate may be released pursuant to Section 8.05(b). The Indenture Trustee's holding of such record title shall in all respects be subject to its fiduciary obligations to the Noteholders hereunder.

Section 3.14.  Master Servicer as Agent and Bailee of the Indenture Trustee. Solely for purposes of perfection under Section 9-305 of the Uniform Commercial Code or other similar applicable law, rule or regulation of the state in which such property is held by the Master Servicer, the Issuer and the Indenture Trustee hereby acknowledge that the Master Servicer is acting as agent and bailee of the Indenture Trustee in holding amounts on deposit in the Custodial Account pursuant to Section 3.02 of the Servicing Agreement that are allocable to the Home Loans, as well as its agent and bailee in holding any Related Documents released to the Master Servicer pursuant to Section 3.06(c) of the Servicing Agreement, and any other items constituting a part of the Trust Estate which from time to time come into the possession of the Master Servicer. It is intended that, by the Master Servicer's acceptance of such agency pursuant to Section 3.02 of the Servicing Agreement, the Indenture Trustee, as a pledgee of the Home Loans, will be deemed to have possession of such Related Documents, such monies and such other items for purposes of Section 9-305 of the Uniform Commercial Code of the state in which such property is held by the Master Servicer.

Section 3.15. Investment Company Act. The Issuer shall not become an "investment company" or "controlled by" an investment company as such terms are defined in the Investment Company Act of 1940, as amended (or any successor or amendatory statute), and the rules and regulations thereunder (taking into account not only the general definition of the term "investment company" but also any available exceptions to such general definition); provided, however, that the Issuer shall be in compliance with this Section 3.15 if it shall have obtained an order exempting it from regulation as an "investment company" so long as it is in compliance with the conditions imposed in such order.

Section 3.16. Issuer May Consolidate, etc. (a) The Issuer shall not consolidate or merge with or into any other Person, unless:

(i) the Person (if other than the Issuer) formed by or surviving such consolidation or merger shall be a Person organized and existing under the laws of the United States of America or any state or the District of Columbia and shall expressly assume, by an indenture supplemental hereto, executed and delivered to the Indenture Trustee, in form reasonably satisfactory to the Indenture Trustee, the due and punctual payment of the principal of and interest on all Notes and to the Certificate Paying Agent, on behalf of the Certificateholder and the performance or observance of every agreement and covenant of this Indenture on the part of the Issuer to be performed or observed, all as provided herein;

13

(ii) immediately after giving effect to such transaction, no Event of Default shall have occurred and be continuing;

(iii) the Rating Agencies shall have notified the Issuer that such transaction shall not cause the rating of the Notes to be reduced, suspended or withdrawn or to be considered by either Rating Agency to be below investment grade;

(iv) the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the Indenture Trustee) to the effect that such transaction will not have any material adverse tax consequence to the Issuer, any Noteholder or any Certificateholder;

(v) any action that is necessary to maintain the lien and security interest created by this Indenture shall have been taken; and

(vi) the Issuer shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel each stating that such consolidation or merger and such supplemental indenture comply with this Article III and that all conditions precedent herein provided for relating to such transaction have been complied with (including any filing required by the Exchange Act).

(b) The Issuer shall not convey or transfer any of its properties or assets, including those included in the Trust Estate, to any Person, unless:

(i) the Person that acquires by conveyance or transfer the properties and assets of the Issuer the conveyance or transfer of which is hereby restricted shall (A) be a United States citizen or a Person organized and existing under the laws of the United States of America or any state, (B) expressly assume, by an indenture supplemental hereto, executed and delivered to the Indenture Trustee, in form satisfactory to the Indenture Trustee, the due and punctual payment of the principal of and interest on all Notes and the performance or observance of every agreement and covenant of this Indenture on the part of the Issuer to be performed or observed, all as provided herein, (C) expressly agree by means of such supplemental indenture that all right, title and interest so conveyed or transferred shall be subject and subordinate to the rights of Holders of the Notes, (D) unless otherwise provided in such supplemental indenture, expressly agree to indemnify, defend and hold harmless the Issuer against and from any loss, liability or expense arising under or related to this Indenture and the Notes and (E) expressly agree by means of such supplemental indenture that such Person (or if a group of Persons, then one specified Person) shall make all filings with the Commission (and any other appropriate Person) required by the Exchange Act in connection with the Notes;

(ii) immediately after giving effect to such transaction, no Default or Event of Default shall have occurred and be continuing;

(iii) the Rating Agencies shall have notified the Issuer that such transaction shall not cause the rating of the Notes to be reduced, suspended or withdrawn;

14

(iv) the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the Indenture Trustee) to the effect that such transaction will not have any material adverse tax consequence to the Issuer or any Noteholder;

(v) any action that is necessary to maintain the lien and security interest created by this Indenture shall have been taken; and

(vi) the Issuer shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel each stating that such conveyance or transfer and such supplemental indenture comply with this Article III and that all conditions precedent herein provided for relating to such transaction have been complied with (including any filing required by the Exchange Act).

Section 3.17.  Successor or Transferee.  (a) Upon any consolidation or merger of the Issuer in accordance with Section 3.16(a), the Person formed by or surviving such consolidation or merger (if other than the Issuer) shall succeed to, and be substituted for, and may exercise every right and power of, the Issuer under this Indenture with the same effect as if such Person had been named as the Issuer herein.

(b) Upon a conveyance or transfer of all the assets and properties of the Issuer pursuant to Section 3.16(b), the Issuer will be released from every covenant and agreement of this Indenture to be observed or performed on the part of the Issuer with respect to the Notes immediately upon the delivery of written notice to the Indenture Trustee of such conveyance or transfer.

Section 3.18.  No Other Business.  The Issuer shall not engage in any business other than financing, purchasing, owning and selling and managing the Home Loans and the issuance of the Notes and the Certificate in the manner contemplated by this Indenture and the Basic Documents and all activities incidental thereto.

Section 3.19. No Borrowing. The Issuer shall not issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness except for the Notes.

Section 3.20.  Guarantees, Loans, Advances and Other Liabilities.  Except as contemplated by this Indenture or the Basic Documents, the Issuer shall not make any loan or advance or credit to, or guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire (or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other Person.

Section 3.21.  Capital Expenditures.  The Issuer shall not make any expenditure (by long-term or operating lease or otherwise) for capital assets (either realty or personalty).

Section 3.22. Owner Trustee Not Liable for the Certificate or Related Documents. The recitals contained herein shall be taken as the statements of the Depositor, and the Owner Trustee assumes no responsibility for the correctness thereof. The Owner Trustee makes no representations as to the validity or sufficiency of this Indenture, of any Basic Document or of the Certificate (other than the signatures of the Owner Trustee on the Certificate) or the Notes, or of any Related Documents. The Owner Trustee shall at no time have any responsibility or liability with respect to the sufficiency of the Trust Estate or its ability to generate the payments to be distributed to the Certificateholder under the Trust

Agreement or the Noteholders under this Indenture, including, the compliance by the Depositor or the Seller with any warranty or representation made under any Basic Document or in any related document or the accuracy of any such warranty or representation, or any action of the Certificate Paying Agent, the Certificate Registrar or the Indenture Trustee taken in the name of the Owner Trustee.

Section 3.23. Restricted Payments. The Issuer shall not, directly or indirectly, (i) pay any dividend or make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof, to the Owner Trustee or any owner of a beneficial interest in the Issuer or otherwise with respect to any ownership or equity interest or security in or of the Issuer, (ii) redeem, purchase, retire or otherwise acquire for value any such ownership or equity interest or security or (iii) set aside or otherwise segregate any amounts for any such purpose; provided, however, that the Issuer may make, or cause to be made, (x) distributions to the Owner Trustee and the Certificateholder as contemplated by, and to the extent funds are available for such purpose under the Trust Agreement, and (y) payments to the Master Servicer pursuant to the terms of the Servicing Agreement. The Issuer will not, directly or indirectly, make payments to or distributions from the Custodial Account except in accordance with this Indenture and the Basic Documents.

Section 3.24. Notice of Events of Default. The Issuer shall give the Indenture Trustee and the Rating Agencies prompt written notice of each Event of Default hereunder, under the Trust Agreement.

Section 3.25. Further Instruments and Acts. Upon request of the Indenture Trustee, the Issuer will execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purpose of this Indenture.

Section 3.26. Statements to Noteholders. On each Payment Date, the Indenture Trustee and the Certificate Registrar shall forward by mail or otherwise make available electronically to the Depositor, the Rating Agencies and to each Noteholder and Certificateholder, respectively, the statement delivered to it, on the Business Day following the related Determination Date pursuant to Section 4.01 of the Servicing Agreement.

Section 3.27. Allocation of Liquidation Loss Amounts. The subordination provided to the Senior Notes by the Class M Notes and the subordination provided to each class of Class M Notes by any class of Class M Notes subordinate thereto will cover Liquidation Loss Amounts on the Home Loans. On each Payment Date, any Liquidation Loss Amounts will be allocated as follows: first, by a payment of the Liquidation Loss Distribution Amount, second by a reduction in the Outstanding Reserve Amount, third, to the Class M-9 Notes, until the Note Balance thereof has been reduced to zero; fourth, to the Class M-8 Notes, until the Note Balance thereof has been reduced to zero; fifth, to the Class M-7 Notes, until the Note Balance thereof has been reduced to zero; sixth, to the Class M-6 Notes, until the Note Balance thereof has been reduced to zero; seventh, to the Class M-5 Notes, until the Note Balance thereof has been reduced to zero; eighth, to the Class M-4 Notes, until the Note Balance thereof has been reduced to zero; ninth, to the Class M-3 Notes, until the Note Balance thereof has been reduced to zero; tenth, to the Class M-2 Notes, until the Note Balance thereof has been reduced to zero; and eleventh, to the Class M-1 Notes, until the Note Balance thereof has been reduced to zero. Liquidation Loss Amounts will not be allocated to the Senior Notes.

16

Any allocation of Liquidation Loss Amounts to a Class of Notes, shall be made by reducing the Note Balance thereof, by the amount so allocated, which allocation shall be deemed to have occurred on such Payment Date. All Liquidation Loss Amounts and all other losses allocated to a Class of Notes hereunder, will be allocated among the Notes, of such Class in proportion to the Percentage Interests evidenced thereby.

Section 3.28.   Reserved.

Section 3.29. Determination of Class A-1 Note Rate. On the second LIBOR Business Day immediately preceding (i) the Closing Date in the case of the first Interest Accrual Period and (ii) the first day of each succeeding Interest Accrual Period, the Indenture Trustee shall determine LIBOR and the Note Rate for the Class A-1 Notes for such Interest Accrual Period and shall inform the Issuer, the Master Servicer and the Depositor at their respective facsimile numbers given to the Indenture Trustee in writing. All determinations of LIBOR by the Indenture Trustee shall, in the absence of manifest error, be conclusive for all purposes, and each holder of a Class A-1 Note, by accepting its Class A-1 Note, agrees to be bound by such determination.

Section 3.30. Liquidation on Final Scheduled Payment Date. On the Final Scheduled Payment Date, if the Notes are not paid in full on or prior to the Final Scheduled Payment Date, the Indenture Trustee shall take full account of the assets and liabilities of the Owner Trust, shall liquidate the assets, in a commercially reasonable manner and on commercially reasonable terms, as promptly as is consistent with obtaining the fair value thereof and in accordance with Section 5.15, and shall apply and distribute the proceeds therefrom in the order of priority described in Section 3.05(c).

Section 3.31. No Recourse. Upon the occurrence of an Event of Default under the Notes, this Indenture or the other Basic Documents, Holders of the Notes shall have recourse only to the Collateral and all proceeds thereof, as and to the extent provided herein, and no recourse shall be had by such Holders against the Issuer or its other assets or properties.

Section 3.32.  Additional UCC Representations and Warranties. The Issuer hereby represents and warrants that:

(i) this Agreement creates a valid and continuing security interest (as defined in the applicable UCC) in the Trust Estate in favor of the Indenture Trustee on behalf of the Holders of the Notes, which security interest is prior to all other liens, and is enforceable as such as against creditors of the Issuer.

(ii) the Issuer owns and has good and marketable title to the Trust Estate free and clear of any lien, claim or encumbrance of any Person.

(iii) the Issuer will cause the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law within 10 days of the Closing Date in order to perfect the security interest in the Trust Estate granted to the Indenture Trustee on behalf of the Holders of the Notes.

17

(iv) other than the security interest granted to the Indenture Trustee on behalf of the Holders of the Notes pursuant to the Basic Documents, the Issuer has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Trust Estate. The Issuer is not aware of any judgment or tax lien filings against it. The Issuer has not authorized the filing of and is not aware of any financing statements against the Issuer that include a description of collateral covering the Trust Estate other than any financing statement (i) relating to the security interest granted to Indenture Trustee on behalf of the Holders of the Notes hereunder or (ii) that has been terminated.

18

ARTICLE IV

THE NOTES; SATISFACTION AND DISCHARGE OF INDENTURE

Section 4.01. The Notes.  The Notes shall be registered in the name of a nominee designated by the Depository. Beneficial Owners will hold interests in the Notes as set forth in Section 4.06 herein.  The minimum  initial  Note  Balances  with respect  to the  Class A Notes and the Class  M-1  Notes  shall be  $25,000  and integral multiples of $1 in excess thereof, with respect to the Class M-2, Class M-3,  Class M-4,  Class M-5, Class M-6, Class M-7, Class M-8 and Class M-9 Notes shall be $250,000 and integral multiples of $1 in excess thereof.

The  Indenture  Trustee may for all  purposes  (including  the making of payments  due  on  the  Notes)  deal  with  the  Depository  as  the  authorized representative  of the  Beneficial  Owners  with  respect  to the  Notes for the purposes  of  exercising  the rights of Holders of Notes  hereunder.  Except as provided in the next  succeeding  paragraph of this Section 4.01,  the rights of Beneficial  Owners  with  respect  to the  Notes  shall  be  limited  to  those established  by law  and  agreements  between  such  Beneficial  Owners  and the Depository  and  Depository  Participants.  Except as provided in Section  4.08, Beneficial Owners shall not be entitled to definitive certificates for the Notes as to which they are the Beneficial  Owners.  Requests and directions  from, and votes of, the Depository as Holder of the Notes shall not be deemed inconsistent if they are made with  respect to different  Beneficial  Owners.  The  Indenture Trustee may establish a reasonable record date in connection with  solicitations of consents from or voting by  Noteholders  and give notice to the Depository of such record date.  Without the consent of the Issuer and the Indenture  Trustee, no Note may be transferred by the  Depository  except to a successor  Depository that agrees to hold such Note for the account of the Beneficial Owners.

In the event the  Depository  Trust  Company  resigns  or is removed as Depository,  the Indenture Trustee with the approval of the Issuer may appoint a successor  Depository.  If no successor  Depository has been appointed within 30 days of the effective  date of the  Depository's  resignation  or removal,  each Beneficial  Owner shall be entitled to  certificates  representing  the Notes it beneficially owns in the manner prescribed in Section 4.08.

The Notes shall,  on original issue, be executed on behalf of the Issuer by the  Owner  Trustee,  not in its  individual  capacity  but  solely  as Owner Trustee,  authenticated  by the Note  Registrar  and  delivered by the Indenture Trustee to or upon the order of the Issuer.

Section 4.02. Registration of and Limitations on Transfer and Exchange of Notes; Appointment of Certificate  Registrar.  The Issuer shall cause to be kept at the Indenture Trustee's Corporate Trust Office a Note Register in which,  subject to such  reasonable  regulations  as it may  prescribe,  the Note  Registrar  shall provide for the registration of Notes and of transfers and exchanges of Notes as herein provided.

Subject  to  the  restrictions  and  limitations  set forth  below,  upon surrender  for  registration  of  transfer  of any Note at the  Corporate  Trust Office,  the Issuer shall execute and the Note Registrar shall  authenticate and deliver,  in the name of the designated  transferee or transferees,  one or more new Notes in authorized  initial Note  Balances  evidencing  the same  aggregate Percentage Interests.

19

Subject to the foregoing, at the option of the Noteholders, Notes may be exchanged for other Notes of like tenor, in authorized initial Note Balances evidencing the same aggregate Percentage Interests upon surrender of the Notes to be exchanged at the Corporate Trust Office of the Note Registrar. Whenever any Notes are so surrendered for exchange, the Issuer shall execute and the Note Registrar shall authenticate and deliver the Notes which the Noteholder making the exchange is entitled to receive. Each Note presented or surrendered for registration of transfer or exchange shall (if so required by the Note Registrar) be duly endorsed by, or be accompanied by a written instrument of transfer in form reasonably satisfactory to the Note Registrar duly executed by, the Holder thereof or his attorney duly authorized in writing with such signature guaranteed by a commercial bank or trust company located or having a correspondent located in the city of New York. Notes delivered upon any such transfer or exchange will evidence the same obligations, and will be entitled to the same rights and privileges, as the Notes surrendered.

No service charge shall be imposed for any registration of transfer or exchange of Notes, but the Note Registrar shall require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any registration of transfer or exchange of Notes.

All Notes surrendered for registration of transfer and exchange shall be cancelled by the Note Registrar and delivered to the Indenture Trustee for subsequent destruction without liability on the part of either.

The Issuer hereby appoints the Indenture Trustee as Certificate Registrar to keep at its Corporate Trust Office a Certificate Register pursuant to Section 3.09 of the Trust Agreement in which, subject to such reasonable regulations as it may prescribe, the Certificate Registrar shall provide for the registration of the Certificate and of transfers and exchanges thereof pursuant to Section 3.05 of the Trust Agreement. The Indenture Trustee hereby accepts such appointment.

Each purchaser of a Note, by its acceptance of the Note, shall be deemed to have represented that either (i) it is not a Plan nor is it acquiring a Note with Plan Assets or (2) the acquisition of such Note by the purchaser does not constitute or give rise to a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, for which no statutory, regulatory or administrative exemption is available.

The Notes may not be purchased with the assets of an ERISA plan if the Depositor, the Master Servicer, the owner of the Certificate, the Indenture Trustee, the Owner Trustee or any of their Affiliates:

(i) has investment or administrative discretion with respect to the ERISA plan's assets;

(ii) has authority or responsibility to give, or regularly gives, investment advice regarding the ERISA plan's assets, for a fee and under an agreement or understanding that the advice will serve as a primary basis for investment decisions regarding the ERISA plan's assets and will be based on the particular investment needs for the ERISA plan; or

(iii) is an employer maintaining or contributing to the ERISA plan.

20

Section 4.03. Mutilated, Destroyed, Lost or Stolen Notes. If (i) any mutilated Note is surrendered to the Indenture Trustee, or the Indenture Trustee receives evidence to its satisfaction of the destruction, loss or theft of any Note, and (ii) there is delivered to the Indenture Trustee such security or indemnity as may be required by it to hold the Issuer and the Indenture Trustee harmless, then, in the absence of notice to the Issuer, the Note Registrar or the Indenture Trustee that such Note has been acquired by a bona fide purchaser, and provided that the requirements of Section 8- 405 of the UCC are met, the Issuer shall execute, and upon its request the Indenture Trustee shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Note, a replacement Note; provided, however, that if any such destroyed, lost or stolen Note, but not a mutilated Note, shall have become or within seven days shall be due and payable, instead of issuing a replacement Note, the Issuer may pay such destroyed, lost or stolen Note when so due or payable without surrender thereof. If, after the delivery of such replacement Note or payment of a destroyed, lost or stolen Note pursuant to the proviso to the preceding sentence, a bona fide purchaser of the original Note in lieu of which such replacement Note was issued presents for payment such original Note, the Issuer and the Indenture Trustee shall be entitled to recover such replacement Note (or such payment) from the Person to whom it was delivered or any Person taking such replacement Note from such Person to whom such replacement Note was delivered or any assignee of such Person, except a bona fide purchaser, and shall be entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or expense incurred by the Issuer or the Indenture Trustee in connection therewith.

Upon the issuance of any replacement Note under this Section 4.03, the Issuer may require the payment by the Holder of such Note of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other reasonable expenses (including the fees and expenses of the Indenture Trustee) connected therewith.

Every replacement Note issued pursuant to this Section 4.03 in replacement of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Issuer, whether or not the mutilated, destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder. The provisions of this Section 4.03 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

Section 4.04. Persons Deemed Owners. Prior to due presentment for registration of transfer of any Note, the Issuer, the Indenture Trustee and any agent of the Issuer or the Indenture Trustee may treat the Person in whose name any Note is registered (as of the day of determination) as the owner of such Note for the purpose of receiving payments of principal of and interest, if any, on such Note and for all other purposes whatsoever, whether or not such Note be overdue, and none of the Issuer, the Indenture Trustee or any agent of the Issuer or the Indenture Trustee shall be affected by notice to the contrary.

Section 4.05. Cancellation. All Notes surrendered for payment, registration of transfer, exchange or redemption shall, if surrendered to any Person other than the Indenture Trustee, be delivered to the Indenture Trustee and shall be promptly cancelled by the Indenture Trustee. The Issuer may at any time deliver to the Indenture Trustee for cancellation any Notes previously authenticated and delivered hereunder which the Issuer may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly cancelled by the Indenture Trustee. No Notes shall be authenticated in lieu of or in exchange for any Notes cancelled as provided in this Section 4.05, except as expressly permitted by

this Indenture. All cancelled Notes may be held or disposed of by the Indenture Trustee in accordance with its standard retention or disposal policy as in effect at the time unless the Issuer shall direct by an Issuer Request that they be destroyed or returned to it; provided however, that such Issuer Request is timely and the Notes have not been previously disposed of by the Indenture Trustee.

Section 4.06. Book-Entry Notes. Each Class of Notes shall initially be issued as one or more Notes held by the Book-Entry Custodian or, if appointed to hold such Notes as provided below, the Depository Trust Company, the initial Depository, and registered in the name of its nominee Cede & Co. Except as provided below, registration of such Notes may not be transferred by the Indenture Trustee except to another Depository that agrees to hold such Notes for the respective Beneficial Owners. The Indenture Trustee is hereby initially appointed as the Book-Entry Custodian and hereby agrees to act as such in accordance herewith and in accordance with the agreement that it has with the Depository authorizing it to act as such. The Book-Entry Custodian may, and, if it is no longer qualified to act as such, the Book-Entry Custodian shall, appoint, by a written instrument delivered to the Depositor, the Master Servicer and, if the Indenture Trustee is not the Book-Entry Custodian, the Indenture Trustee, any other transfer agent (including the Depository or any successor Depository) to act as Book-Entry Custodian under such conditions as the predecessor Book-Entry Custodian and the Depository or any successor Depository may prescribe, provided that the predecessor Book-Entry Custodian shall not be relieved of any of its duties or responsibilities by reason of any new appointment, except if the Depository is the successor to the Book-Entry Custodian. If the Indenture Trustee resigns or is removed in accordance with the terms hereof, the successor trustee or, if it so elects, the Depository shall immediately succeed to its predecessor's duties as Book-Entry Custodian. The Depositor shall have the right to inspect, and to obtain copies of, any Notes held as Book-Entry Notes by the Book-Entry Custodian. No Beneficial Owner will receive a Definitive Note representing such Beneficial Owner's interest in such Note, except as provided in Section 4.08. Unless and until definitive, fully registered Notes (the "Definitive Notes") have been issued to Beneficial Owners pursuant to Section 4.08:

(i) the provisions of this Section 4.06 shall be in full force and effect;

(ii) the Note Registrar and the Indenture Trustee shall be entitled to deal with the Depository for all purposes of this Indenture (including the payment of principal of and interest on the Notes and the giving of instructions or directions hereunder) as the sole holder of the Notes, and shall have no obligation to the Owners of Notes;

(iii) to the extent that the provisions of this Section 4.06 conflict with any other provisions of this Indenture, the provisions of this Section 4.06 shall control;

(iv) the rights of Beneficial Owners shall be exercised only through the Depository and shall be limited to those established by law and agreements between such Owners of Notes and the Depository and/or the Depository Participants. Unless and until Definitive Notes are issued pursuant to Section 4.08, the initial Depository will make Book-Entry transfers among the Depository Participants and receive and transmit payments of principal of and interest on the Notes to such Depository Participants; and

22

(v) whenever this Indenture requires or permits actions to be taken based upon instructions or directions of Holders of Notes evidencing a specified percentage of the aggregate Note Balance of the Notes, the Depository shall be deemed to represent such percentage only to the extent that it has received instructions to such effect from Beneficial Owners and/or Depository Participants owning or representing, respectively, such required percentage of the beneficial interest in the Notes and has delivered such instructions to the Indenture Trustee.

Section 4.07. Notices to Depository. Whenever a notice or other communication to the Note Holders is required under this Indenture, unless and until Definitive Notes shall have been issued to Beneficial Owners pursuant to Section 4.08, the Indenture Trustee shall give all such notices and communications specified herein to be given to Holders of the Notes to the Depository, and shall have no obligation to the Beneficial Owners.

Section 4.08. Definitive Notes. If (i) the Indenture Trustee determines that the Depository is no longer willing or able to properly discharge its responsibilities with respect to the Notes and the Indenture Trustee is unable to locate a qualified successor, (ii) the Indenture Trustee elects to terminate the Book-Entry system through the Depository or (iii) after the occurrence of an Event of Default, Owners of Notes representing beneficial interests aggregating at least a majority of the aggregate Note Balance of the Notes advise the Depository in writing that the continuation of a Book-Entry system through the Depository is no longer in the best interests of the Beneficial Owners, then the Depository shall notify all Beneficial Owners and the Indenture Trustee of the occurrence of any such event and of the availability of Definitive Notes to Beneficial Owners requesting the same. Upon surrender to the Indenture Trustee of the typewritten Notes representing the Book-Entry Notes by the Book-Entry Custodian or the Depository, as applicable, accompanied by registration instructions, the Issuer shall execute and the Indenture Trustee shall authenticate the Definitive Notes in accordance with the instructions of the Depository. None of the Issuer, the Note Registrar or the Indenture Trustee shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected in relying on, such instructions. Upon the issuance of Definitive Notes, the Indenture Trustee shall recognize the Holders of the Definitive Notes as Noteholders.

Section 4.09. Tax Treatment. The Issuer has entered into this Indenture, and the Notes will be issued, with the intention that, for federal, state and local income, single business and franchise tax purposes, the Notes will qualify as indebtedness of the Issuer. The Issuer, by entering into this Indenture, and each Noteholder, by its acceptance of its Note (and each Beneficial Owner by its acceptance of an interest in the applicable Book-Entry Note), agree to treat the Notes for federal, state and local income, single business and franchise tax purposes as indebtedness of the Issuer.

Section 4.10. Satisfaction and Discharge of Indenture. This Indenture shall cease to be of further effect with respect to the Notes except as to (i) rights of registration of transfer and exchange, (ii) substitution of mutilated, destroyed, lost or stolen Notes, (iii) rights of Noteholders to receive payments of principal thereof and interest thereon, (iv) Sections 3.03, 3.04, 3.06, 3.09, 3.16, 3.18 and 3.19, (v) the rights, obligations and immunities of the Indenture Trustee hereunder (including the rights of the Indenture Trustee under Section 6.07 and the obligations of the Indenture Trustee under Section 4.11) and (vi) the rights of Noteholders as beneficiaries hereof with respect to the property so deposited with the Indenture Trustee payable to all or any of them, and the Indenture Trustee, on demand of and at the expense of the Issuer, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture with respect to the Notes, when

(A)    either

(1)    the Notes theretofore  authenticated and delivered (other than (i) Notes
that have been destroyed,  lost or stolen and that have been replaced or
paid as provided in Section 4.03 and (ii) Notes for whose  payment money
has theretofore  been deposited in trust or segregated and held in trust
by the Issuer and  thereafter  repaid to the Issuer or  discharged  from
such  trust,  as provided in Section  3.03) have been  delivered  to the
Indenture Trustee for cancellation; or

(2)    the  Notes  not  theretofore  delivered  to the  Indenture  Trustee  for
cancellation

a.    have become due and payable,

b.    will become due and payable within one year, or

c.    have been declared immediately due and payable pursuant to Section 5.02.

and the Issuer, in the case of a. or b. above, has irrevocably deposited
or caused to be irrevocably deposited with the Indenture Trustee cash or
direct obligations of or obligations  guaranteed by the United States of
America  (which will mature prior to the date such amounts are payable),
in trust for such purpose,  in an amount sufficient to pay and discharge
the entire  indebtedness on such Notes then  outstanding not theretofore
delivered  to the  Indenture  Trustee for  cancellation  when due on the
Final Scheduled Payment Date;

(B) the Issuer has paid or caused to be paid all other sums  payable  hereunder;
and

(C) the Issuer has delivered to the Indenture  Trustee an Officer's  Certificate
and an Opinion of Counsel,  each meeting the applicable  requirements of Section
10.01  and each  stating  that all  conditions  precedent  herein  provided  for
relating to the  satisfaction and discharge of this Indenture have been complied
with and, if the Opinion of Counsel relates to a deposit made in connection with
Section  4.10(A)(2)b. above,  such opinion  shall further be to the effect that
such deposit will not have any material  adverse tax consequences to the Issuer,
any Noteholders or any Certificateholder.

Section  4.11.  Application  of  Trust  Money.  All  monies  deposited  with  the
Indenture  Trustee  pursuant to Section  4.10 hereof  shall be held in trust and
applied  by it,  in  accordance  with  the  provisions  of  the  Notes  and  this
Indenture,  to  the  payment,  either  directly  or  through  any  Paying  Agent or
Certificate Paying Agent, as the Indenture Trustee may determine, to the Holders
of  Securities,  of all sums due and to become  due  thereon  for  principal  and
interest; but such monies need not be segregated from other funds except to the
extent required herein or required by law.

Section 4.12.  Reserved.

24

Section 4.13.   Repayment of Monies Held by Paying Agent.   In connection with the satisfaction  and  discharge of this  Indenture  with respect to the Notes,  all monies  then held by any  Person  other  than the  Indenture  Trustee  under the provisions of this  Indenture  with respect to such Notes shall,  upon demand of the Issuer, be paid to the Indenture Trustee to be held and applied according to Section 3.05 and thereupon  such Paying Agent shall be released from all further liability with respect to such monies.

Section 4.14.   Temporary Notes. Pending the preparation of any Definitive Notes, the Issuer may execute and upon its written direction, the Indenture Trustee may authenticate and make available for delivery,  temporary Notes that are printed, lithographed,   typewritten,   photocopied   or   otherwise   produced,   in  any denomination,  substantially  of the  tenor of the  Definitive  Notes in lieu of which  they  are  issued  and  with  such  appropriate  insertions,  omissions, substitutions  and other  variations  as the officers  executing  such Notes may determine, as evidenced by their execution of such Notes.

        If temporary Notes are issued, the Issuer will cause Definitive Notes to be prepared without  unreasonable delay. After the preparation of the Definitive Notes,  the temporary  Notes shall be  exchangeable  for  Definitive  Notes upon surrender  of the  temporary  Notes at the  office or  agency  of the  Indenture Trustee,  without charge to the Holder.  Upon surrender for  cancellation of any one or more temporary Notes, the Issuer shall execute and the Indenture  Trustee shall  authenticate  and  make  available  for  delivery,  in exchange  therefor, Definitive  Notes of  authorized  denominations  and of like tenor and aggregate principal amount. Until so exchanged, such temporary Notes shall in all respects be entitled to the same benefits under this Indenture as Definitive Notes.

25

ARTICLE V

DEFAULT AND REMEDIES

Section 5.01. Events of Default. The Issuer shall deliver to the Indenture Trustee within five calendar days after learning of the occurrence of any event which with the giving of notice and the lapse of time would become an Event of Default under clause (iii) of the definition of "Event of Default" written notice in the form of an Officer's Certificate of its status and what action the Issuer is taking or proposes to take with respect thereto.

Section 5.02. Acceleration of Maturity; Rescission and Annulment. If an Event of Default should occur and be continuing, then and in every such case the Indenture Trustee or the Holders of Notes representing not less than a majority of the aggregate Note Balance of all Notes may declare the Notes to be immediately due and payable, by a notice in writing to the Issuer (and to the Indenture Trustee if given by Noteholders), and upon any such declaration the unpaid principal amount of such Notes, together with accrued and unpaid interest thereon through the date of acceleration, shall become immediately due and payable.

At any time after such declaration of acceleration of maturity with respect to an Event of Default has been made and before a judgment or decree for payment of the money due has been obtained by the Indenture Trustee as hereinafter in this Article V provided, the Holders of Notes representing a majority of the aggregate Note Balance of all Notes, by written notice to the Issuer and the Indenture Trustee may in writing waive the related Event of Default and rescind and annul such declaration and its consequences if:

(i)                    the Issuer has paid or deposited with the Indenture Trustee a sum sufficient to pay:

(A)                    all payments of principal of and interest on the Notes and all other amounts that would then be due hereunder or upon the Notes if the Event of Default giving rise to such acceleration had not occurred; and

(B)                    all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and its agents and counsel; and

(ii)                   all Events of Default, other than the nonpayment of the principal of the Notes that has become due solely by such acceleration, have been cured or waived as provided in Section 5.12.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

Section 5.03. Collection of Indebtedness and Suits for Enforcement by Indenture Trustee.

(a) Subject to Section 3.31, the Issuer covenants that if default in the payment of (i) any interest on any Note when the same becomes due and payable, and such default continues for a period of five days, or (ii) the principal of or any installment of the principal of any Note when the same becomes due and payable, the Issuer shall, upon demand of the Indenture Trustee, pay to it, for the benefit of the Holders of Notes, the whole amount then due and payable on the Notes for principal and interest, with interest upon the overdue principal, and in addition thereto such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and its agents and

counsel.

26

(b) In case the Issuer shall fail forthwith to pay such amounts upon such demand, the Indenture Trustee, in its own name and as trustee of an express trust, subject to the provisions of Section 10.17 hereof may institute a Proceeding for the collection of the sums so due and unpaid, and may prosecute such Proceeding to judgment or final decree, and may enforce the same against the Issuer or other obligor upon the Notes and collect in the manner provided by law out of the property of the Issuer or other obligor upon the Notes, wherever situated, the monies adjudged or decreed to be payable.

(c) If an Event of Default occurs and is continuing, the Indenture Trustee subject to the provisions of Section 10.17 hereof may, as more particularly provided in Section 5.04, in its discretion, proceed to protect and enforce its rights and the rights of the Noteholders, by such appropriate Proceedings as the Indenture Trustee shall deem most effective to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy or legal or equitable right vested in the Indenture Trustee by this Indenture or by law.

(d) In case there shall be pending, relative to the Issuer or any other obligor upon the Notes or any Person having or claiming an ownership interest in the Trust Estate, Proceedings under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuer or its property or such other obligor or Person, or in case of any other comparable judicial Proceedings relative to the Issuer or other obligor upon the Notes, or to the creditors or property of the Issuer or such other obligor, the Indenture Trustee, irrespective of whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Indenture Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such Proceedings or otherwise:

(i) to file and prove a claim or claims for the whole amount of principal and interest owing and unpaid in respect of the Notes and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee (including any claim for reasonable compensation to the Indenture Trustee and each predecessor Indenture Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee, except as a result of negligence, willful misconduct or bad faith) and of the Noteholders allowed in such Proceedings;

27

(ii) unless prohibited by applicable law and regulations, to vote on behalf of the Holders of Notes in any election of a trustee, a standby trustee or Person performing similar functions in any such Proceedings;

(iii) to collect and receive any monies or other property payable or deliverable on any such claims and to distribute all amounts received with respect to the claims of the Noteholders and of the Indenture Trustee on their behalf; and

(iv) to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee or the Holders of Notes allowed in any judicial proceedings relative to the Issuer, its creditors and its property; and any trustee, receiver, liquidator, custodian or other similar official in any such Proceeding is hereby authorized by each of such Noteholders to make payments to the Indenture Trustee, and, in the event that the Indenture Trustee shall consent to the making of payments directly to such Noteholders, to pay to the Indenture Trustee such amounts as shall be sufficient to cover reasonable compensation to the Indenture Trustee, each predecessor Indenture Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee except as a result of negligence, willful misconduct or bad faith.

(e) Nothing herein contained shall be deemed to authorize the Indenture Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Noteholder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof or to authorize the Indenture Trustee to vote in respect of the claim of any Noteholder in any such proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar Person.

(f) All rights of action and of asserting claims under this Indenture, or under any of the Notes, may be enforced by the Indenture Trustee without the possession of any of the Notes or the production thereof in any trial or other Proceedings relative thereto, and any such action or proceedings instituted by the Indenture Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Indenture Trustee, each predecessor Indenture Trustee and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the Notes.

(g) In any Proceedings brought by the Indenture Trustee (and also any Proceedings involving the interpretation of any provision of this Indenture to which the Indenture Trustee shall be a party), the Indenture Trustee shall be held to represent all the Holders of the Notes, and it shall not be necessary to make any Noteholder a party to any such Proceedings.

Section 5.04. Remedies; Priorities. (a) If an Event of Default shall have occurred and be continuing, the Indenture Trustee subject to the provisions of Section 10.17 hereof may do one or more of the following (subject to Section 5.05):

(i) institute Proceedings in its own name and as trustee of an express trust for the collection of all amounts then payable on the Notes or under this Indenture with respect thereto, whether by declaration or otherwise, enforce any judgment obtained, and collect from the Issuer and any other obligor upon such Notes monies adjudged due;

(ii) institute Proceedings from time to time for the complete or partial foreclosure of this Indenture with respect to the Trust Estate;

(iii) exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Indenture Trustee and the Holders of the Notes;

(iv) sell the Trust Estate or any portion thereof or rights or interest therein, at one or more public or private sales called and conducted in any manner permitted by law; provided, however, that the Indenture Trustee may not sell or otherwise liquidate the Trust Estate following an Event of Default, unless (A) the Indenture Trustee obtains the consent of the Holders of 100% of the aggregate Note Balance of the Notes, (B) the proceeds of such Sale distributable to Holders are sufficient to discharge in full all amounts then due and unpaid upon the Notes for principal and interest or (C) the Indenture Trustee determines that the Home Loans will not continue to provide sufficient funds for the payment of principal of and interest on the Notes as they would have become due if the Notes had not been declared due and payable, and the Indenture Trustee obtains the consent of the Holders of 66 2/3% of the aggregate Note Balance of the Notes. In determining such sufficiency or insufficiency with respect to clause (B) and (C), the Indenture Trustee may, but need not, obtain and rely upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose. Notwithstanding the foregoing, so long as a Servicing Default has not occurred, any Sale of the Trust Estate shall be made subject to the continued servicing of the Home Loans by the Master Servicer as provided in the Servicing Agreement.

(b) If the Indenture Trustee collects any money or property pursuant to this Article V, it shall pay out the money or property in the following order:

> FIRST: to the Indenture Trustee for all amounts due under Section 6.07 herein; and

> SECOND: to the Holders of the Notes for amounts due and unpaid on the Notes interest, according to the order and priority set forth in Section 3.05(b), from amounts available in the Trust Estate for such Noteholders;

> THIRD: to the Holders of the Class A Notes, on a pro rata basis, for amounts due and unpaid on such Class A Notes for principal, from amounts available in the Trust Estate, until the Note Balance thereof has been reduced to zero;

> FOURTH: to the holders of the Class M Notes, for amounts due and unpaid on the Class M Notes for principal, from amounts available in the Trust Estate, until the Note Balance thereof has been reduced to zero, in the following order of priority: first, to the Class M-1 Notes, second, to the Class M-2 Notes, third, to the Class M-3 Notes, fourth, to the Class M-4 Notes, fifth, to the Class M-5 Notes, sixth, to the Class M-6 Notes, seventh, to the Class M-7 Notes, eighth, to the Class M-8, and ninth, to the Class M-9 Notes.

29

FIFTH: to the Certificate Paying Agent for amounts due under Article VIII of the Trust Agreement; and

SIXTH: to the payment of the remainder, if any, to the Issuer or any other person legally entitled thereto.

The Indenture Trustee may fix a record date and payment date for any payment to Noteholders pursuant to this Section 5.04. At least 15 days before such record date, the Indenture Trustee shall mail to each Noteholder a notice that states the record date, the payment date and the amount to be paid.

Section 5.05. Optional Preservation of the Trust Estate. If the Notes have been declared to be due and payable under Section 5.02 following an Event of Default and such declaration and its consequences have not been rescinded and annulled, the Indenture Trustee may, but need not, elect to take and maintain possession of the Trust Estate. It is the desire of the parties hereto and the Noteholders that there be at all times sufficient funds for the payment of principal of and interest on the Notes and other obligations of the Issuer and the Indenture Trustee shall take such desire into account when determining whether or not to take and maintain possession of the Trust Estate. In determining whether to take and maintain possession of the Trust Estate, the Indenture Trustee may, but need not, obtain (at the expense of the Issuer) and rely upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose.

Section 5.06. Limitation of Suits. No Holder of any Note shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless and subject to the provisions of Section 10.17 hereof:

(i) such Holder has previously given written notice to the Indenture Trustee of a continuing Event of Default;

(ii) the Holders of not less than 25% of the aggregate Note Balance of the Notes have made written request to the Indenture Trustee to institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

(iii) such Holder or Holders have offered to the Indenture Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in complying with such request;

(iv) the Indenture Trustee for 60 days after its receipt of such notice, request and offer of indemnity has failed to institute such Proceedings; and

(v) no direction inconsistent with such written request has been given to the Indenture Trustee during such 60-day period by the Holders of a majority of the aggregate Note Balance of the Notes.

It is understood and intended that no one or more Holders of Notes shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Holders of Notes or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under this Indenture, except in the manner herein provided.

30

In the event the Indenture Trustee shall receive conflicting or inconsistent requests and indemnity from two or more groups of Holders of Notes, each representing less than a majority of the aggregate Note Balance of the Notes, the Indenture Trustee in its sole discretion may determine what action, if any, shall be taken, notwithstanding any other provisions of this Indenture.

Section 5.07. Rights of Noteholders to Receive Principal and Interest. Notwithstanding any other provisions in this Indenture, but subject to Section 3.31, the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest, if any, on such Note on or after the respective due dates thereof expressed in such Note or in this Indenture and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

Section 5.08. Restoration of Rights and Remedies. If the Indenture Trustee or any Noteholder has instituted any Proceeding to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or abandoned for any reason or has been determined adversely to the Indenture Trustee or to such Noteholder, then and in every such case the Issuer, the Indenture Trustee and the Noteholders shall, subject to any determination in such Proceeding, be restored severally and respectively to their respective former positions hereunder, and thereafter all rights and remedies of the Indenture Trustee and the Noteholders shall continue as though no such Proceeding had been instituted.

Section 5.09. Rights and Remedies Cumulative. No right or remedy herein conferred upon or reserved to the Indenture Trustee or to the Noteholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 5.10. Delay or Omission Not a Waiver. No delay or omission of the Indenture Trustee or any Holder of any Note to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article V or by law to the Indenture Trustee or to the Noteholders may be exercised from time to time, and as often as may be deemed expedient, by the Indenture Trustee or by the Noteholders, as the case may be.

Section 5.11. Control by Noteholders. The Holders of a majority of the aggregate Note Balance of Notes shall have the right to direct the time, method and place of conducting any Proceeding for any remedy available to the Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee; provided that:

(i) such direction shall not be in conflict with any rule of law or with this Indenture;

31

(ii) subject to the express terms of Section 5.04, any direction to the Indenture Trustee to sell or liquidate the Trust Estate shall be by Holders of Notes representing not less than 100% of the aggregate Note Balance of Notes;

(iii) if the conditions set forth in Section 5.05 have been satisfied and the Indenture Trustee elects to retain the Trust Estate pursuant to such Section, then any direction to the Indenture Trustee by Holders of Notes representing less than 100% of the aggregate Note Balance of Notes to sell or liquidate the Trust Estate shall be of no force and effect; and

(iv) the Indenture Trustee may take any other action deemed proper by the Indenture Trustee that is not inconsistent with such direction.

Notwithstanding the rights of Noteholders set forth in this Section, subject to Section 6.01, the Indenture Trustee need not take any action that it determines might involve it in liability or might materially adversely affect the rights of any Noteholders not consenting to such action.

Section 5.12. Waiver of Past Defaults. Prior to the declaration of the acceleration of the maturity of the Notes as provided in Section 5.02, the Holders of Notes of not less than a majority of the aggregate Note Balance of the Notes may waive any past Event of Default and its consequences except an Event of Default (a) with respect to payment of principal of or interest on any of the Notes or (b) in respect of a covenant or provision hereof which cannot be modified or amended without the consent of the Holder of each Note. In the case of any such waiver, the Issuer, the Indenture Trustee and the Holders of the Notes shall be restored to their former positions and rights hereunder, respectively; but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereto.

Upon any such waiver, any Event of Default arising therefrom shall be deemed to have been cured and not to have occurred, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereto.

Section 5.13. Undertaking for Costs. All parties to this Indenture agree, and each Holder of any Note by such Holder's acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Indenture Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 5.13 shall not apply to (a) any suit instituted by the Indenture Trustee, (b) any suit instituted by any Noteholder, or group of Noteholders, in each case holding in the aggregate more than 10% of the aggregate Note Balance of the Notes or (c) any suit instituted by any Noteholder for the enforcement of the payment of principal of or interest on any Note on or after the respective due dates expressed in such Note and in this Indenture.

Section 5.14. Waiver of Stay or Extension Laws. The Issuer covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead or in any manner whatsoever, claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and the Issuer (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenants that it shall not hinder, delay or impede the execution of any power herein granted to the Indenture Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

Section 5.15. Sale of Trust Estate. (a) The power to effect any sale, liquidation or other disposition (a "Sale") of any portion of the Trust Estate pursuant to Section 5.04 is expressly subject to the provisions of Section 5.05 and this Section 5.15. The power to effect any such Sale shall not be exhausted by any one or more Sales as to any portion of the Trust Estate remaining unsold, but shall continue unimpaired until the entire Trust Estate shall have been sold or all amounts payable on the Notes and under this Indenture shall have been paid. The Indenture Trustee may from time to time postpone any public Sale by public announcement made at the time and place of such Sale. The Indenture Trustee hereby expressly waives its right to any amount fixed by law as compensation for any Sale.

(b)     The Indenture Trustee shall not in any private Sale sell the Trust Estate, or any portion thereof, unless:

(1)     the Holders of all Notes consent to, or direct the Indenture Trustee to make, such Sale, or

(2)     the proceeds of such Sale would not be less than the entire amount which would be payable to the Noteholders under the Notes, the Indenture Trustee hereunder and the Certificateholder under the Certificate in full payment thereof in accordance with Section 5.02, on the Payment Date next succeeding the date of such Sale, or

(3)     the Indenture Trustee determines, in its sole discretion, that the conditions for retention of the Trust Estate set forth in Section 5.05 cannot be satisfied (in making any such determination, the Indenture Trustee may rely upon an opinion of an Independent investment banking firm obtained and delivered as provided in Section 5.05), and the Holders representing at least 66-2/3% of the aggregate Note Balance of the Notes consent to such Sale.

The purchase by the Indenture Trustee of all or any portion of the Trust Estate at a private Sale shall not be deemed a Sale or other disposition thereof for purposes of this Section 5.15(b).

(c)     Unless the Holders have otherwise consented or directed the Indenture Trustee, at any public Sale of all or any portion of the Trust Estate at which a minimum bid equal to or greater than the amount described in paragraph (2) of subsection (b) of this Section 5.15 has not been established by the Indenture Trustee and no Person bids an amount equal to or greater than such amount, the Indenture Trustee shall bid an amount at least $1.00 more than the highest other bid.

(d)     In connection with a Sale of all or any portion of the Trust Estate:

(1)     any Holder or Holders of Notes may bid for and purchase the property offered for sale, and upon compliance with the terms of sale may hold, retain and possess and dispose of such property, without further accountability, and may, in paying the purchase money therefor, deliver any Notes or claims for interest thereon in lieu of cash up to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon, and such Notes, in case the amounts so payable thereon shall be less than the amount due thereon, shall be returned to the Holders thereof after being appropriately stamped to show such partial payment;

33

(2)     the Indenture  Trustee may bid for and acquire the property  offered for
Sale  in  connection  with  any  Sale  thereof,  and,  subject  to  any
requirements  of,  and to the extent  permitted  by,  applicable  law in
connection  therewith,  may  purchase  all or any  portion  of the Trust
Estate in a private sale, and, in lieu of paying cash therefor, may make
settlement  for the  purchase  price by  crediting  the gross Sale price
against the sum of (A) the amount  which would be  distributable  to the
Holders  of the Notes and the Holder of the  Certificate  as a result of
such Sale in  accordance  with Section  5.04(b) on the Payment Date next
succeeding the date of such Sale and (B) the expenses of the Sale and of
any Proceedings in connection  therewith  which are  reimbursable to it,
without  being  required to produce  the Notes in order to complete  any
such Sale or in order for the net Sale price to be credited against such
Notes,  and any property so acquired by the  Indenture  Trustee shall be
held and dealt  with by it in  accordance  with the  provisions  of this
Indenture;

(3)     the  Indenture  Trustee  shall  execute  and  deliver  an  appropriate
instrument of conveyance transferring its interest in any portion of the
Trust Estate in connection with a Sale thereof;

(4)     the  Indenture  Trustee is hereby  irrevocably  appointed  the agent and
attorney-in-  fact of the Issuer to transfer  and convey its interest in
any portion of the Trust Estate in connection  with a Sale thereof,  and
to take all action necessary to effect such Sale; and

(5)     no  purchaser  or  transferee  at such a Sale shall be bound to ascertain
the Indenture Trustee's authority,  inquire into the satisfaction of any
conditions precedent or see to the application of any monies.

Section 5.16. Action on Notes. The Indenture Trustee's right to seek and recover
judgment  on the Notes or under  this  Indenture  shall not be  affected  by the
seeking,  obtaining or  application of any other relief under or with respect to
this Indenture. Neither the lien of this Indenture nor any rights or remedies of
the Indenture  Trustee or the  Noteholders  shall be impaired by the recovery of
any judgment by the Indenture  Trustee  against the Issuer or by the levy of any
execution  under such  judgment upon any portion of the Trust Estate or upon any
of the assets of the Issuer.  Any money or property  collected by the  Indenture
Trustee shall be applied in accordance with Section 5.04(b).

Section 5.17.  Performance and Enforcement of Certain Obligations.  (a) Promptly
following a written  request  from the  Indenture  Trustee,  the Issuer,  in its
capacity as holder of the Home Loans,  shall, take all such lawful action as the
Indenture  Trustee  may  request  to cause the  Issuer  to compel or secure  the
performance and observance by the Seller and the Master Servicer, as applicable,
of each of their  obligations to the Issuer under or in connection with the Home
Loan Purchase Agreement and the Servicing Agreement, and to exercise any and all
rights,  remedies,  powers and privileges lawfully available to the Issuer under
or in  connection  with the  Home  Loan  Purchase  Agreement  and the  Servicing
Agreement to the extent and in the manner directed by the Indenture Trustee,  as
pledgee of the Home Loans,  including the  transmission of notices of default on
the part of the Seller or the Master Servicer  thereunder and the institution of
legal or administrative  actions or proceedings to compel or secure  performance
by the Seller or the Master Servicer of each of their obligations under the Home
Loan Purchase Agreement and the Servicing Agreement.

34

(b) If an Event of Default has occurred and is continuing, the Indenture Trustee, as pledgee of the Home Loans, under the Servicing Agreement may, and at the direction (which direction shall be in writing or by telephone (confirmed in writing promptly thereafter)) of the Holders of 66-2/3% of the aggregate Note Balance of the Notes shall, exercise all rights, remedies, powers, privileges and claims of the Issuer against the Seller or the Master Servicer under or in connection with the Home Loan Purchase Agreement and the Servicing Agreement, including the right or power to take any action to compel or secure performance or observance by the Seller or the Master Servicer, as the case may be, of each of their obligations to the Issuer thereunder and to give any consent, request, notice, direction, approval, extension or waiver under the Home Loan Purchase Agreement and the Servicing Agreement, as the case may be, and any right of the Issuer to take such action shall not be suspended. In connection therewith, as determined by the Indenture Trustee, the Issuer shall take all actions necessary to effect the transfer of the Home Loans to the Indenture Trustee.

35

ARTICLE VI

THE INDENTURE TRUSTEE

Section 6.01. Duties of Indenture Trustee. (a) If an Event of Default has occurred and is continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(b) Except during the continuance of an Event of Default:

(i) the Indenture Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee; and

(ii) in the absence of bad faith on its part, the Indenture Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Indenture Trustee and conforming to the requirements of this Indenture; however, the Indenture Trustee shall examine the certificates and opinions to determine whether or not they conform to the requirements of this Indenture.

(c) The Indenture Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(i) this paragraph does not limit the effect of paragraph (b) of this Section 6.01;

(ii) the Indenture Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent facts; and

(iii) the Indenture Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 5.11, which it is entitled to give under any of the Basic Documents.

(d) The Indenture Trustee shall not be liable for interest on any money received by it except as the Indenture Trustee may agree in writing with the Issuer.

(e) Money held in trust by the Indenture Trustee need not be segregated from other funds except to the extent required by law or the terms of this Indenture or the Trust Agreement.

(f) No provision of this Indenture shall require the Indenture Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(g) Every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee shall be subject to the provisions of this Section and to the provisions of the TIA.

36

Section 6.02. Rights of Indenture Trustee. (a) The Indenture Trustee may rely on any document believed by it to be genuine and to have been signed or presented by the proper person. The Indenture Trustee need not investigate any fact or matter stated in the document.

(b) Before the Indenture Trustee acts or refrains from acting, it may require an Officer's Certificate or an Opinion of Counsel. The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on an Officer's Certificate or Opinion of Counsel.

(c) The Indenture Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys or a custodian or nominee, and the Indenture Trustee shall not be responsible for any misconduct or negligence on the part of, or for the supervision of, any such agent, attorney, custodian or nominee appointed with due care by it hereunder.

(d) The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers; provided, however, that the Indenture Trustee's conduct does not constitute willful misconduct, negligence or bad faith.

(e) The Indenture Trustee may consult with counsel, and the advice or opinion of counsel with respect to legal matters relating to this Indenture and the Notes shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with the advice or opinion of such counsel.

Section 6.03. Individual Rights of Indenture Trustee. The Indenture Trustee in its individual or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Issuer or its Affiliates with the same rights it would have if it were not Indenture Trustee. Any Note Registrar, co-registrar or co-paying agent may do the same with like rights. However, the Indenture Trustee must comply with Sections 6.11 and 6.12.

Section 6.04. Indenture Trustee's Disclaimer. The Indenture Trustee shall not be (i) responsible for and makes no representation as to the validity or adequacy of this Indenture or the Notes, (ii) accountable for the Issuer's use of the proceeds from the Notes or (iii) responsible for any statement of the Issuer in the Indenture or in any document issued in connection with the sale of the Notes or in the Notes other than the Indenture Trustee's certificate of authentication.

Section 6.05. Notice of Event of Default. The Indenture Trustee shall mail to each Noteholder notice of the Event of Default within 90 days after it occurs. Except in the case of an Event of Default in payment of principal of or interest on any Note, the Indenture Trustee may withhold the notice if and so long as a committee of its Responsible Officers in good faith determines that withholding the notice is in the interests of Noteholders.

Section 6.06. Reports by Indenture Trustee to Holders. The Indenture Trustee shall deliver to each Noteholder such information as may be required to enable such holder to prepare its federal and state income tax returns. In addition, upon the Issuer's written request, the Indenture Trustee shall promptly furnish information reasonably requested by the Issuer that is reasonably available to the Indenture Trustee to enable the Issuer to perform its federal and state income tax reporting obligations.

37

Section 6.07. Compensation and Indemnity.  The Issuer shall pay to the Indenture
Trustee on each Payment Date reasonable compensation for its services.  The
Indenture Trustee shall be compensated and indemnified by the Master Servicer in
accordance with Section 6.06 of the Servicing Agreement,  and all amounts owing
to the Indenture Trustee hereunder in excess of such amount shall be paid solely
as provided in Section 3.05 hereof (subject to the priorities set forth
therein).  The Indenture Trustee's  compensation shall not be limited by any law
on compensation of a trustee of an express trust. The Issuer shall reimburse the
Indenture Trustee for all reasonable  out-of-pocket expenses incurred or made by
it, including costs of collection, in addition to the compensation for its
services.  Such expenses shall include the reasonable compensation and expenses,
disbursements and advances of the Indenture Trustee's agents, counsel,
accountants and experts.  The Issuer shall indemnify the Indenture Trustee
against any and all loss, liability or expense (including attorneys' fees)
incurred by it in connection with the administration of this trust and the
performance of its duties hereunder.  The Indenture Trustee shall notify the
Issuer promptly of any claim for which it may seek indemnity.  Failure by the
Indenture Trustee to so notify the Issuer shall not relieve the Issuer of its
obligations hereunder. The Issuer shall defend any such claim, and the Indenture
Trustee may have separate counsel and the Issuer shall pay the fees and expenses
of such counsel.  The Issuer is not obligated to reimburse any expense or
indemnify against any loss, liability or expense incurred by the Indenture
Trustee through the Indenture Trustee's own willful misconduct, negligence or
bad faith. The Issuer's payment obligations to the Indenture Trustee pursuant to
this Section 6.07 shall survive the discharge of this Indenture.  When the
Indenture Trustee incurs  expenses after the occurrence of an Event of Default
specified in clause (iv) or (v) of the definition thereof with respect to the
Issuer, the expenses are intended to constitute expenses of administration under
Title 11 of the United States Code or any other applicable federal or state
bankruptcy, insolvency or similar law.

Section 6.08. Replacement of Indenture Trustee. No resignation or removal of the
Indenture Trustee and no appointment of a successor Indenture Trustee shall
become effective until the acceptance of appointment by the successor Indenture
Trustee pursuant to this Section 6.08. The Indenture Trustee may resign at any
time by so notifying the Issuer. The Holders of a majority of the aggregate Note
Balance of the Notes may remove the Indenture Trustee by so notifying the
Indenture Trustee and may appoint a successor Indenture Trustee.  The Issuer
shall remove the Indenture Trustee if:

(i) the Indenture Trustee fails to comply with Section 6.11;

(ii) the Indenture Trustee is adjudged a bankrupt or insolvent;

(iii) a receiver or other public officer takes charge of the Indenture Trustee
or its property; or

(iv) the Indenture Trustee otherwise becomes incapable of acting.

If the Indenture Trustee resigns or is removed or if a vacancy exists in the
office of the Indenture Trustee for any reason (the Indenture Trustee in such
event being referred to herein as the retiring Indenture Trustee), the Issuer
shall promptly appoint a successor Indenture Trustee. In addition, the Indenture
Trustee will resign to avoid being directly or indirectly controlled by the
Issuer.

38

A successor  Indenture Trustee shall deliver a written acceptance of its
appointment to the retiring Indenture Trustee and to the Issuer.  Thereupon, the
resignation or removal of the retiring Indenture Trustee shall become effective,
and the successor Indenture Trustee shall have all the rights, powers and duties
of the Indenture Trustee under this Indenture.  The successor  Indenture Trustee
shall mail a notice of its  succession to  Noteholders.  The retiring  Indenture
Trustee shall promptly  transfer all property held by it as Indenture Trustee to
the successor Indenture Trustee.

If a successor  Indenture Trustee  does not take office  within 60 days
after the retiring  Indenture Trustee resigns  or is removed,  the retiring
Indenture Trustee, the Issuer or the Holders of a majority of the aggregate Note
Balance of the Notes may petition any court of  competent  jurisdiction  for the
appointment of a successor Indenture Trustee.

If the  Indenture  Trustee  fails  to  comply  with  Section  6.11,  any
Noteholder may petition any court of competent  jurisdiction  for the removal of
the Indenture Trustee and the appointment of a successor Indenture Trustee.

Notwithstanding  the  replacement of the Indenture  Trustee  pursuant to
this Section, the Issuer's obligations under Section 6.07 shall continue for the
benefit of the retiring Indenture Trustee.

Section 6.09.  Successor  Indenture  Trustee by Merger. If the Indenture Trustee
consolidates  with,  merges or converts into, or transfers all or  substantially
all its corporate  trust business or assets to,  another  corporation or banking
association,  the  resulting,  surviving or transferee  corporation  without any
further  act  shall be the  successor  Indenture  Trustee; provided,  that such
corporation  or banking  association  shall be otherwise  qualified and eligible
under Section  6.11.  The  Indenture  Trustee shall provide the Rating  Agencies
written notice of any such transaction after the Closing Date.

In case at the time such  successor or successors by merger,  conversion
or consolidation to the Indenture Trustee shall succeed to the trusts created by
this Indenture any of the Notes shall have been authenticated but not delivered,
any such  successor  to the  Indenture  Trustee  may  adopt the  certificate  of
authentication  of any predecessor  trustee,  and deliver  such Notes so
authenticated; and in case at that  time any of the  Notes  shall not have been
authenticated,  any successor to the  Indenture  Trustee may  authenticate  such
Notes either  in the name of any predecessor  hereunder  or in the name of the
successor  to the  Indenture  Trustee; and in all such cases such  certificates
shall have the full force which it is anywhere in the Notes or in this Indenture
provided that the certificate of the Indenture Trustee shall have.

Section 6.10. Appointment of Co-Indenture Trustee or Separate Indenture Trustee.
(a) Notwithstanding any other provisions of this Indenture, at any time, for the
purpose of meeting any legal  requirement of any  jurisdiction in which any part
of the Trust Estate may at the time be located, the Indenture Trustee shall have
the power and may execute and  deliver  all  instruments  to appoint one or more
Persons to act as a co-trustee or co-trustees,  or separate  trustee or separate
trustees,  of all or any part of the Owner Trust,  and to vest in such Person or
Persons, in such capacity and for the benefit of the Noteholders,  such title to

39

the Trust Estate, or any part thereof, and, subject to the other provisions of
this Section, such powers, duties, obligations, rights and trusts as the
Indenture Trustee may consider necessary or desirable. No co-trustee or separate
trustee hereunder shall be required to meet the terms of eligibility as a
successor trustee under Section 6.11 and no notice to Noteholders of the
appointment of any co-trustee or separate trustee shall be required under
Section 6.08 hereof.

(b) Every separate trustee and co-trustee shall, to the extent permitted by law,
be appointed and act subject to the following provisions and conditions:

(i) all rights, powers, duties and obligations conferred or imposed upon the
Indenture Trustee shall be conferred or imposed upon and exercised or performed
by the Indenture Trustee and such separate trustee or co-trustee jointly (it
being understood that such separate trustee or co-trustee is not authorized to
act separately without the Indenture Trustee joining in such act), except to the
extent that under any law of any jurisdiction in which any particular act or
acts are to be performed the Indenture Trustee shall be incompetent or
unqualified to perform such act or acts, in which event such rights, powers,
duties and obligations (including the holding of title to the Trust Estate or
any portion thereof in any such jurisdiction) shall be exercised and performed
singly by such separate trustee or co-trustee, but solely at the direction of
the Indenture Trustee;

(ii) no trustee hereunder shall be personally liable by reason of any act or
omission of any other trustee hereunder; and

(iii) the Indenture Trustee may at any time accept the resignation of or remove
any separate trustee or co-trustee.

(c) Any notice, request or other writing given to the Indenture Trustee shall be
deemed to have been given to each of the then separate trustees and co-trustees,
as effectively as if given to each of them. Every instrument appointing any
separate trustee or co-trustee shall refer to this Agreement and the conditions
of this Article VI. Each separate trustee and co-trustee, upon its acceptance of
the trusts conferred, shall be vested with the estates or property specified in
its instrument of appointment, either jointly with the Indenture Trustee or
separately, as may be provided therein, subject to all the provisions of this
Indenture, specifically including every provision of this Indenture relating to
the conduct of, affecting the liability of, or affording protection to, the
Indenture Trustee. Every such instrument shall be filed with the Indenture
Trustee.

(d) Any separate trustee or co-trustee may at any time constitute the Indenture
Trustee, its agent or attorney-in-fact with full power and authority, to the
extent not prohibited by law, to do any lawful act under or in respect of this
Agreement on its behalf and in its name. If any separate trustee or co-trustee
shall die, become incapable of acting, resign or be removed, all of its estates,
properties, rights, remedies and trusts shall vest in and be exercised by the
Indenture Trustee, to the extent permitted by law, without the appointment of a
new or successor trustee.

Section 6.11. Eligibility; Disqualification. The Indenture Trustee shall at all
times satisfy the requirements of TIA ss. 310(a). The Indenture Trustee shall
have a combined capital and surplus of at least $50,000,000 as set forth in its
most recent published annual report of condition and it or its parent shall have
a long-term debt rating of A or better by Moody's. The Indenture Trustee shall

second sentence of TIA ss. 310(b)(9); provided, however, that there shall be excluded from the operation of TIA ss. 310(b)(1) any indenture or indentures under which other securities of the Issuer are outstanding if the requirements for such exclusion set forth in TIA ss. 310(b)(1) are met.

Section 6.12. Preferential Collection of Claims Against Issuer. The Indenture Trustee shall comply with TIA ss. 311(a), excluding any creditor relationship listed in TIA ss. 311(b). An Indenture Trustee who has resigned or been removed shall be subject to TIA ss. 311(a) to the extent indicated.

Section 6.13. Representations and Warranties. The Indenture Trustee hereby represents that:

(i) The Indenture Trustee is a banking association duly organized, validly existing and in good standing under the laws of the United States with power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted.

(ii) The Indenture Trustee has the power and authority to execute and deliver this Indenture and to carry out its terms; and the execution, delivery and performance of this Indenture have been duly authorized by the Indenture Trustee by all necessary corporate action.

(iii) The consummation of the transactions contemplated by this Indenture and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the articles of organization or bylaws of the Indenture Trustee or any agreement or other instrument to which the Indenture Trustee is a party or by which it is bound.

(iv) To the Indenture Trustee's best knowledge, there are no proceedings or investigations pending or threatened before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Indenture Trustee or its properties: (A) asserting the invalidity of this Indenture (B) seeking to prevent the consummation of any of the transactions contemplated by this Indenture or (C) seeking any determination or ruling that might materially and adversely affect the performance by the Indenture Trustee of its obligations under, or the validity or enforceability of, this Indenture.

(v) The Indenture Trustee does not have notice of any adverse claim (as such terms are used in Delaware UCC Section 8-302) with respect to the Home Loans.

Section 6.14. Directions to Indenture Trustee. The Indenture Trustee is hereby directed:

(a) to accept the pledge of the Home Loans and hold the assets of the Trust in trust for the Noteholders;

(b) to authenticate and deliver the Notes substantially in the form prescribed by Exhibit A-1 and A-2 in accordance with the terms of this Indenture; and

41

(c) to take all other  actions as shall be  required to be taken by the terms of this Indenture.

Section 6.15.  Indenture Trustee May Own Securities.  The Indenture Trustee,  in its  individual  or any  other  capacity  may  become  the owner or  pledgee  of Securities with the same rights it would have if it were not Indenture Trustee.

42

ARTICLE VII

NOTEHOLDERS' LISTS AND REPORTS

Section 7.01. Issuer to Furnish Indenture Trustee Names and Addresses of Noteholders. The Issuer will furnish or cause to be furnished to the Indenture Trustee (a) not more than five days after each Record Date, a list, in such form as the Indenture Trustee may reasonably require, of the names and addresses of the Holders of Notes as of such Record Date and, (b) at such other times as the Indenture Trustee may request in writing, within 30 days after receipt by the Issuer of any such request, a list of similar form and content as of a date not more than 10 days prior to the time such list is furnished; provided, however, that so long as the Indenture Trustee is the Note Registrar, no such list shall be required to be furnished.

Section 7.02. Preservation of Information; Communications to Noteholders. (a) The Indenture Trustee shall preserve, in as current a form as is reasonably practicable, the names and addresses of the Holders of Notes contained in the most recent list furnished to the Indenture Trustee as provided in Section 7.01 and the names and addresses of Holders of Notes received by the Indenture Trustee in its capacity as Note Registrar. The Indenture Trustee may destroy any list furnished to it as provided in such Section 7.01 upon receipt of a new list so furnished.

(b) Noteholders may communicate pursuant to TIA ss. 312(b) with other Noteholders with respect to their rights under this Indenture or under the Notes.

(c) The Issuer, the Indenture Trustee and the Note Registrar shall have the protection of TIA ss. 312(c).

Section 7.03. Reports by Issuer. (a) The Issuer shall:

(i) file with the Indenture Trustee, within 15 days after the Issuer is required to file the same with the Commission, copies of the annual reports and the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may from time to time by rules and regulations prescribe) that the Issuer may be required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act;

(ii) file with the Indenture Trustee, and the Commission in accordance with rules and regulations prescribed from time to time by the Commission such additional information, documents and reports with respect to compliance by the Issuer with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

(iii) supply to the Indenture Trustee (and the Indenture Trustee shall transmit by mail to all Noteholders described in TIA ss. 313(c)) such summaries of any information, documents and reports required to be filed by the Issuer pursuant to clauses (i) and (ii) of this Section 7.03(a) and by rules and regulations prescribed from time to time by the Commission.

(b) Unless the Issuer otherwise determines, the fiscal year of the Issuer shall end on December 31 of each year.

Section 7.04. Reports by Indenture Trustee. If required by TIA ss. 313(a), within 60 days after each January 1 beginning with January 1, 2006, the Indenture Trustee shall mail to each Noteholder as required by TIA ss. 313(c) a brief report dated as of such date that complies with TIA ss. 313(a). The Indenture Trustee also shall comply with TIA ss. 313(b). A copy of each report

at the time of its mailing to Noteholders shall be filed by the Indenture Trustee with the Commission and each stock exchange, if any, on which the Notes are listed. The Issuer shall notify the Indenture Trustee if and when the Notes are listed on any stock exchange.

Section 7.05. Exchange Act Reporting. In connection with the preparation and filing of periodic reports by the Master Servicer pursuant to Section 4.04 of the Servicing Agreement, the Indenture Trustee shall timely provide to the Master Servicer (I) a list of Holders as shown on the Note Register or Certificate Register as of the end of each calendar year, (II) copies of all pleadings, other legal process and any other documents relating to any claims, charges or complaints involving the Indenture Trustee, as indenture trustee hereunder, or the Trust Estate that are received by the Indenture Trustee, (III) notice of all matters that, to the actual knowledge of a Responsible Officer of the Indenture Trustee, have been submitted to a vote of the Holders, other than those matters that have been submitted to a vote of the Holders at the request of the Depositor or the Master Servicer, and (IV) notice of any failure of the Indenture Trustee to make any distribution to the Holders as required pursuant to this Indenture. Neither the Master Servicer nor the Indenture Trustee shall have any liability with respect to the Master Servicer's failure to properly prepare or file such periodic reports resulting from or relating to the Master Servicer's inability or failure to obtain any information not resulting from the Master Servicer's own negligence or willful misconduct. In connection with the Form 10-K Certification (as defined in the Servicing Agreement), the Indenture Trustee shall provide the Master Servicer with a back-up certification substantially in the form attached hereto as Exhibit B. A supplemental indenture may be entered into in accordance with the provisions of this Indenture to revise this Section 7.05 without the consent of the Holders.

44

ARTICLE VIII

ACCOUNTS, DISBURSEMENTS AND RELEASES

Section 8.01. Collection of Money. Except as otherwise expressly provided herein, the Indenture Trustee may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all money and other property payable to or receivable by the Indenture Trustee pursuant to this Indenture. The Indenture Trustee shall apply all such money received by it as provided in this Indenture. Except as otherwise expressly provided in this Indenture, if any default occurs in the making of any payment or performance under any agreement or instrument that is part of the Trust Estate, the Indenture Trustee may take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate Proceedings. Any such action shall be without prejudice to any right to claim a Default or Event of Default under this Indenture and any right to proceed thereafter as provided in Article V.

Section 8.02. Trust Accounts. (a) On or prior to the Closing Date, the Issuer shall cause the Indenture Trustee to establish and maintain, in the name of the Indenture Trustee, for the benefit of the Noteholders and the Certificate Paying Agent, on behalf of the Certificateholder, the Payment Account as provided in Section 3.01 of this Indenture.

(b) All monies deposited from time to time in the Payment Account pursuant to the Servicing Agreement and all deposits therein pursuant to this Indenture are for the benefit of the Noteholders and the Certificate Paying Agent, on behalf of the Certificateholder and all investments made with such monies including all income or other gain from such investments are for the benefit of the Master Servicer as provided by the Servicing Agreement.

On each Payment Date, the Indenture Trustee shall distribute all amounts on deposit in the Payment Account to Noteholders in respect of the Notes and in its capacity as Certificate Paying Agent to the Certificateholder in the order of priority set forth in Section 3.05 (except as otherwise provided in Section 5.04(b)).

The Master Servicer shall direct the Indenture Trustee in writing to invest any funds in the Payment Account in Permitted Investments maturing no later than the Business Day preceding each Payment Date and shall not be sold or disposed of prior to the maturity.

Section 8.03. Officer's Certificate. The Indenture Trustee shall receive at least seven days notice when requested by the Issuer to take any action pursuant to Section 8.05(a), accompanied by copies of any instruments to be executed, and the Indenture Trustee shall also require, as a condition to such action, an Officer's Certificate, in form and substance satisfactory to the Indenture Trustee, stating the legal effect of any such action, outlining the steps required to complete the same, and concluding that all conditions precedent to the taking of such action have been complied with.

Section 8.04. Termination Upon Distribution to Noteholders. This Indenture and the respective obligations and responsibilities of the Issuer and the Indenture Trustee created hereby shall terminate upon the distribution to the Noteholders, the Certificate Paying Agent (on behalf of the Certificateholder) and the Indenture Trustee of all amounts required to be distributed pursuant to Article III; provided, however, that in no event shall the trust created hereby continue beyond the expiration of 21 years from the death of the survivor of the descendants of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James, living on the date hereof.

Section 8.05.  Release of Trust  Estate.  (a) Subject to the payment of its fees
and expenses,  the Indenture Trustee may, and when required by the provisions of
this Indenture shall,  execute  instruments to release property from the lien of
this  Indenture,  or convey the Indenture  Trustee's  interest  in the same, in a
manner and under  circumstances that are not inconsistent with the provisions of
this  Indenture.  No party relying upon an instrument  executed by the Indenture
Trustee as provided in Article VIII  hereunder  shall be bound to ascertain  the
Indenture Trustee's  authority,  inquire into the satisfaction of any conditions
precedent, or see to the application of any monies.

(b) The  Indenture  Trustee  shall,  at  such  time as (i)  there  are no  Notes
Outstanding  and (ii)  all  sums due the  Indenture  Trustee  pursuant  to this
Indenture  and other  Basic  Documents  have been paid,  release  any  remaining
portion  of the  Trust  Estate  that  secured  the  Notes  from the lien of this
Indenture.

(c) The Indenture Trustee shall release property from the lien of this Indenture
pursuant to this  Section  8.05 only upon  receipt of a request  from the Issuer
accompanied by an Officers' Certificate.

Section 8.06.  Surrender of Notes Upon Final Payment. By acceptance of any Note,
the  Holder  thereof  agrees to  surrender  such Note to the  Indenture  Trustee
promptly, prior to such Noteholder's receipt of the final payment thereon.

46

ARTICLE IX

## SUPPLEMENTAL INDENTURES

Section 9.01. Supplemental Indentures Without Consent of Noteholders. (a) Without the consent of the Holders of any Notes but with prior notice to the Rating Agencies, the Issuer and the Indenture Trustee, when authorized by an Issuer Request, at any time and from time to time, may enter into one or more indentures supplemental hereto (which shall conform to the provisions of the Trust Indenture Act as in force at the date of the execution thereof), in form satisfactory to the Indenture Trustee, for any of the following purposes:

(i) to correct or amplify the description of any property at any time subject to the lien of this Indenture, or better to assure, convey and confirm unto the Indenture Trustee any property subject or required to be subjected to the lien of this Indenture, or to subject to the lien of this Indenture additional property;

(ii) to evidence the succession, in compliance with the applicable provisions hereof, of another person to the Issuer, and the assumption by any such successor of the covenants of the Issuer herein and in the Notes contained;

(iii) to add to the covenants of the Issuer, for the benefit of the Holders of the Notes, or to surrender any right or power herein conferred upon the Issuer;

(iv) to convey, transfer, assign, mortgage or pledge any property to or with the Indenture Trustee;

(v) to cure any ambiguity, to correct any error, or to correct or supplement any provision herein or in any supplemental indenture that may be inconsistent with any other provision herein, in any supplemental indenture or in the Prospectus Supplement;

(vi) to make any other provisions with respect to matters or questions arising under this Indenture or in any supplemental indenture; provided, that such action shall not materially and adversely affect the interests of the Holders of the Notes;

(vii) to evidence and provide for the acceptance of the appointment hereunder by a successor trustee with respect to the Notes and to add to or change any of the provisions of this Indenture as shall be necessary to facilitate the administration of the trusts hereunder by more than one trustee, pursuant to the requirements of Article VI; or

(viii) to modify, eliminate or add to the provisions of this Indenture to such extent as shall be necessary to effect the qualification of this Indenture under the TIA or under any similar federal statute hereafter enacted and to add to this Indenture such other provisions as may be expressly required by the TIA; provided, however, that no such indenture supplements shall be entered into unless the Indenture Trustee shall have received an Opinion of Counsel that entering into such indenture supplement will not have any material adverse tax consequences to the Noteholders. The Indenture Trustee is hereby authorized to join in the execution of any such supplemental indenture and to make any further appropriate agreements and stipulations that may be therein contained.

47

(b) The Issuer and the Indenture Trustee, when authorized by an Issuer Request, may, also without the consent of any of the Holders of the Notes but with prior notice to the Rating Agencies, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture; provided, however, that such action shall not, as evidenced by an Opinion of Counsel, (i) adversely affect in any material respect the interests of any Noteholder or (ii) cause the Issuer to be subject to an entity level tax.

(c) The Issuer and the Indenture Trustee shall, as directed by the Holders of Certificates which represent not less than 100% of the Certificate Percentage Interests thereof, enter into an indenture or indentures supplemental hereto for the purpose of providing for the issuance of one or more additional classes of Notes entitled to payments derived solely from all or a portion of the payments to which the Certificate issued on the Closing Date pursuant to the Trust Agreement are entitled; provided, however, that such action shall not, as evidenced by an Opinion of Counsel, (i) adversely affect in any material respect the interests of any Noteholder or (ii) cause the Issuer to be subject to an entity level tax. Each such class of Notes shall be a non-recourse obligation of the Issuer and shall be entitled to interest and principal in such amounts, and to such security for the repayment thereof, as shall be specified in such amendment or amendments. Promptly after the execution by the Issuer and the Indenture Trustee of any amendments pursuant to this Section or the creation of a new indenture and the issuance of the related class or classes of Notes, the Issuer shall require the Indenture Trustee to give notice to the Holders of the Notes and the Rating Agencies setting forth in general terms the substance of the provisions of such amendment. Any failure of the Indenture Trustee to provide such notice as is required under this paragraph, or any defect therein, shall not, however, in any way impair or affect the validity of such amendment or any class of Notes issued pursuant thereto.

Section 9.02. Supplemental Indentures With Consent of Noteholders. The Issuer and the Indenture Trustee, when authorized by an Issuer Request, also may, with prior notice to the Rating Agencies and with the consent of the Holders of not less than a majority of the aggregate Note Balance of the Notes affected thereby, by Act of such Holders delivered to the Issuer and the Indenture Trustee, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture; provided, however, that no such supplemental indenture shall, without the consent of the Holder of each Note affected thereby:

(i) change the date of payment of any installment of principal of or interest on any Note, or reduce the principal amount thereof or the interest rate thereon, change the provisions of this Indenture relating to the application of collections on, or the proceeds of the Sale of, the Trust Estate to payment of principal of or interest on the Notes, or change any place of payment where, or the coin or currency in which, any Note or the interest thereon is payable, or impair the right to institute suit for the enforcement of the provisions of this Indenture requiring the application of funds available therefor, as provided in Article V, to the payment of any such amount due on the Notes on or after the respective due dates thereof;

(ii) reduce the percentage of the related Note Balance of any Class of Notes, the consent of the Holders of which is required for any such supplemental indenture, or the consent of the Holders of which is required for any waiver of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences provided for in this Indenture;

(iii) modify or alter the provisions of the proviso to the definition of the term "Outstanding" or modify or alter the exception in the definition of the term "Holder";

(iv) reduce the percentage of the aggregate Note Balance of the Notes required to direct the Indenture Trustee to direct the Issuer to sell or liquidate the Trust Estate pursuant to Section 5.04;

(v) modify any provision of this Section 9.02 except to increase any percentage specified herein or to provide that certain additional provisions of this Indenture or the Basic Documents cannot be modified or waived without the consent of the Holder of each Note affected thereby;

(vi) modify any of the provisions of this Indenture in such manner as to affect the calculation of the amount of any payment of interest or principal due on any Note on any Payment Date (including the calculation of any of the individual components of such calculation); or

(vii) permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of the Trust Estate or, except as otherwise permitted or contemplated herein, terminate the lien of this Indenture on any property at any time subject hereto or deprive the Holder of any Note of the security provided by the lien of this Indenture; and provided, further, that such action shall not, as evidenced by an Opinion of Counsel, cause the Issuer to be subject to an entity level tax.

and provided, further, that no such indenture supplements shall be entered into unless the Indenture Trustee shall have received an Opinion of Counsel that entering into such indenture supplement will not adversely affect in any material respect the interests of the Certificateholder or shall have received the express written consent of the Certificateholder to the indenture supplement.

The Indenture Trustee may in its discretion determine whether or not any Notes would be affected by any supplemental indenture and any such determination shall be conclusive upon the Holders of all Notes, whether theretofore or thereafter authenticated and delivered hereunder. The Indenture Trustee shall not be liable for any such determination made in good faith.

It shall not be necessary for any Act of Noteholders (as defined in Section 10.03) under this Section 9.02 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

Promptly after the execution by the Issuer and the Indenture Trustee of any supplemental indenture pursuant to this Section 9.02, the Indenture Trustee shall mail to the Holders of the Notes and the Custodian to which such amendment or supplemental indenture relates a notice setting forth in general terms the substance of such supplemental indenture. Any failure of the Indenture Trustee to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

49

Section 9.03. Execution of Supplemental Indentures.  In executing, or permitting the additional trusts created by, any supplemental  indenture permitted by this Article IX or the modification  thereby of the trusts created by this Indenture, the Indenture Trustee shall be entitled to receive, and subject to Sections 6.01 and 6.02,  shall be fully  protected  in relying  upon,  an  Opinion of Counsel stating that the  execution of  such  supplemental  indenture  is  authorized  or permitted by this  Indenture and  conforms  to the  requirements  of the Trust Indenture  Act. The Indenture  Trustee may, but shall not be obligated to, enter into any such  supplemental  indenture that affects the Indenture  Trustee's own rights, duties, liabilities or immunities under this Indenture or otherwise.

Section  9.04.  Effect of  Supplemental  Indenture.  Upon the  execution  of any supplemental  indenture pursuant to the provisions hereof,  this Indenture shall be and shall be deemed to be modified and amended in accordance  therewith  with respect to the Notes affected thereby, and the respective rights, limitations of rights, obligations,  duties, liabilities and immunities under this Indenture of the Indenture Trustee,  the Issuer and the Holders of the Notes shall thereafter be determined,  exercised and enforced hereunder subject in all respects to such modifications  and  amendments,  and all the  terms and  conditions  of any such supplemental  indenture  shall  be and be  deemed  to be part of the  terms  and conditions of this Indenture for any and all purposes.

Section 9.05.  Conformity  with Trust  Indenture  Act.  Every  amendment of this Indenture and every supplemental  indenture executed pursuant to this Article IX shall conform to the  requirements  of the Trust Indenture Act as then in effect so long as this Indenture shall then be qualified under the Trust Indenture Act.

Section 9.06. Reference in Notes to Supplemental Indentures. Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article IX may, and if required by the Indenture  Trustee shall, bear a notation in form approved by the Indenture  Trustee as to any matter provided for in such supplemental  indenture. If  the  Issuer  or the  Indenture  Trustee  shall  so determine,  new Notes so modified as to conform, in the opinion of the Indenture Trustee and the Issuer, to any such  supplemental  indenture may be prepared and executed by the Issuer and  authenticated and delivered by the Indenture Trustee in exchange for Outstanding Notes.

50

ARTICLE X

## MISCELLANEOUS

Section 10.01.  Compliance Certificates and Opinions, etc. (a) Upon any application or request by the Issuer to the Indenture Trustee to take any action under any provision of this Indenture, the Issuer shall furnish to the Indenture Trustee (i) an Officer's Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and (ii) an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that, in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture, no additional certificate or opinion need be furnished. Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(1)    a statement that each signatory of such certificate or opinion has read or has caused to be read such covenant or condition and the definitions herein relating thereto;

(2)    a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(3)    a statement that, in the opinion of each such signatory, such signatory has made such examination or investigation as is necessary to enable such signatory to express an informed opinion as to whether or not such covenant or condition has been complied with;

(4)    a statement as to whether, in the opinion of each such signatory, such condition or covenant has been complied with; and

(5)    if the Signer of such Certificate or Opinion is required to be Independent, the Statement required by the definition of the term "Independent".

(b)    (i) Prior to the deposit of any Collateral or other property or securities with the Indenture Trustee that is to be made the basis for the release of any property or securities subject to the lien of this Indenture, the Issuer shall, in addition to any obligation imposed in Section 10.01(a) or elsewhere in this Indenture, furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of each person signing such certificate as to the fair value (within 90 days of such deposit) to the Issuer of the Collateral or other property or securities to be so deposited.

(ii)    Whenever the Issuer is required to furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of any signer thereof as to the matters described in clause (i) above, the Issuer shall also deliver to the Indenture Trustee an Independent Certificate as to the same matters, if the fair value to the Issuer of the securities to be so deposited and of all other such securities made the basis of any such withdrawal or release since the commencement of the then-current fiscal year of the Issuer, as set forth in the certificates delivered pursuant to clause (i) above and this clause (ii), is 10% or more of the aggregate Note Balance of the Notes, but such a certificate need not be furnished with respect to any securities so deposited, if the fair value thereof to the Issuer as set forth in the related Officer's Certificate is less than $25,000 or less than one percent of the aggregate Note Balance of the Notes.

(iii)    Whenever any property or securities  are to be released from the lien of
         this Indenture,  the Issuer shall also furnish to the Indenture  Trustee
         an  Officer's  Certificate  certifying  or stating  the  opinion of each
         person signing such  certificate as to the fair value (within 90 days of
         such release) of the property or securities  proposed to be released and
         stating that in the opinion of such person the proposed release will not
         impair  the  security  under  this  Indenture  in  contravention of the
         provisions hereof.

(iv)     Whenever the Issuer is required to furnish to the  Indenture  Trustee an
         Officer's  Certificate  certifying  or stating the opinion of any signer
         thereof as to the matters  described in clause  (iii) above,  the Issuer
         shall also furnish to the Indenture  Trustee an Independent  Certificate
         as to the same matters if the fair value of the  property or  securities
         and of all other property, other than property as contemplated by clause
         (v) below or securities  released from the lien of this Indenture  since
         the commencement of the then-current  calendar year, as set forth in the
         certificates required by clause (iii) above and this clause (iv), equals
         10% or more  of the  aggregate  Note  Balance  of the  Notes,  but such
         certificate need not be furnished in the case of any release of property
         or  securities  if the fair value  thereof  as set forth in the  related
         Officer's  Certificate  is less than $25,000 or less than one percent of
         the then aggregate Note Balance of the Notes.

(v)      Notwithstanding any provision of this Indenture, the Issuer may, without
         compliance with the requirements of the other provisions of this Section
         10.01, (A) collect,  sell or otherwise  dispose of the Home Loans as and
         to the extent  permitted or required by the Basic  Documents or (B) make
         cash payments out of the Payment Account as and to the extent  permitted
         or required by the Basic Documents,  so long as the Issuer shall deliver
         to the Indenture  Trustee every six months,  commencing six months after
         the closing date, an Officer's  Certificate  of the Issuer  stating that
         all the dispositions of Collateral described in clauses (A) or (B) above
         that  occurred  during  the  preceding  six  calendar  months were in the
         ordinary course of the Issuer's  business and that the proceeds  thereof
         were applied in accordance with the Basic Documents.

Section 10.02.  Form of Documents  Delivered to Indenture  Trustee.  In any case
where several  matters are required to be certified by, or covered by an opinion
of, any specified Person, it is not necessary that all such matters be certified
by, or covered  by the  opinion  of,  only one such  Person,  or that they be so
certified  or covered by only one  document,  but one such Person may certify or
give an opinion  with respect to some matters and one or more other such Persons
as to other  matters,  and any such  Person may certify or give an opinion as to
such matters in one or several documents.

        Any certificate or opinion of an Authorized Officer of the Issuer may be
based, insofar as it relates to legal matters, upon a certificate or opinion of,
or representations by, counsel, unless such officer knows, or in the exercise of
reasonable care should know, that the certificate or opinion or  representations
with respect to the matters upon which his  certificate  or opinion is based are
erroneous.  Any such certificate of an Authorized  Officer or Opinion of Counsel
may be based,  insofar as it relates to factual  matters,  upon a certificate or
opinion of, or  representations  by, an officer or officers of the Seller or the
Issuer,  stating that the information with respect to such factual matters is in
the possession of the Seller or the Issuer, unless such counsel knows, or in the
exercise of  reasonable  care should know,  that the  certificate  or opinion or
representations with respect to such matters are erroneous.

52

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture, in connection with any application or certificate or report to the Indenture Trustee, it is provided that the Issuer shall deliver any document as a condition of the granting of such application, or as evidence of the Issuer's compliance with any term hereof, it is intended that the truth and accuracy, at the time of the granting of such application or at the effective date of such certificate or report (as the case may be), of the facts and opinions stated in such document shall in such case be conditions precedent to the right of the Issuer to have such application granted or to the sufficiency of such certificate or report. The foregoing shall not, however, be construed to affect the Indenture Trustee's right to rely upon the truth and accuracy of any statement or opinion contained in any such document as provided in Article VI.

Section 10.03. Acts of Noteholders. (a) Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Noteholders in person or by agents duly appointed in writing; and except as herein otherwise expressly provided such action shall become effective when such instrument or instruments are delivered to the Indenture Trustee, and, where it is hereby expressly required, to the Issuer. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 6.01) conclusive in favor of the Indenture Trustee and the Issuer, if made in the manner provided in this Section 10.03.

(b) The fact and date of the execution by any person of any such instrument or writing may be proved in any manner that the Indenture Trustee deems sufficient.

(c) The ownership of Notes shall be proved by the Note Registrar.

(d) Any request, demand, authorization, direction, notice, consent, waiver or other action by the Holder of any Notes shall bind the Holder of every Note issued upon the registration thereof or in exchange therefor or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Indenture Trustee or the Issuer in reliance thereon, whether or not notation of such action is made upon such Note.

Section 10.04. Notices, etc., to Indenture Trustee, Issuer and Rating Agencies. Any request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders or other documents provided or permitted by this Indenture shall be in writing and if such request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders is to be made upon, given or furnished to or filed with:

53

(i) the Indenture Trustee by any Noteholder or by the Issuer shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Indenture Trustee at the Corporate Trust Office. The Indenture Trustee shall promptly transmit any notice received by it from the Noteholders to the Issuer, or

(ii) the Issuer by the Indenture Trustee or by any Noteholder shall be sufficient for every purpose hereunder if in writing and mailed first-class, postage prepaid to the Issuer addressed to: Home Loan Trust 2005-HI2, in care of Wilmington Trust Company, or at any other address previously furnished in writing to the Indenture Trustee by the Issuer. The Issuer shall promptly transmit any notice received by it from the Noteholders to the Indenture Trustee.

Notices required to be given to the Rating Agencies by the Issuer, the Indenture Trustee or the Owner Trustee shall be in writing, personally delivered or mailed by certified mail, return receipt requested, to (i) in the case of Moody's, at the following address: Moody's Investors Service, Inc., ABS Monitoring Department, 99 Church Street, New York, New York 10007 and (ii) in the case of Standard & Poor's, at the following address: Standard & Poor's, A Division of the McGraw-Hill Companies, Inc., 55 Water Street - 41st Floor, New York, New York 10041, Attention of Asset Backed Surveillance Department; or as to each of the foregoing, at such other address as shall be designated by written notice to the other parties.

Section 10.05. Notices to Noteholders; Waiver. Where this Indenture provides for notice to Noteholders of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if in writing and mailed, first-class, postage prepaid to each Noteholder affected by such event, at such Person's address as it appears on the Note Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice. In any case where notice to Noteholders is given by mail, neither the failure to mail such notice nor any defect in any notice so mailed to any particular Noteholder shall affect the sufficiency of such notice with respect to other Noteholders, and any notice that is mailed in the manner herein provided shall conclusively be presumed to have been duly given regardless of whether such notice is in fact actually received.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Noteholders shall be filed with the Indenture Trustee but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such a waiver.

54

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Noteholders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Indenture Trustee shall be deemed to be a sufficient giving of such notice.

Where this Indenture provides for notice to the Rating Agencies, failure to give such notice shall not affect any other rights or obligations created hereunder, and shall not under any circumstance constitute an Event of Default.

Section 10.06.  Alternate Payment and Notice Provisions.  Notwithstanding any provision of this Indenture or any of the Notes to the contrary, the Issuer may enter into any agreement with any Holder of a Note providing for a method of payment, or notice by the Indenture Trustee to such Holder, that is different from the methods provided for in this Indenture for such payments or notices. The Issuer shall furnish to the Indenture Trustee a copy of each such agreement and the Indenture Trustee shall cause payments to be made and notices to be given in accordance with such agreements.

Section 10.07.  Conflict with Trust Indenture Act. If any provision hereof limits, qualifies or conflicts with another provision hereof that is required to be included in this Indenture by any of the provisions of the Trust Indenture Act, such required provision shall control. The provisions of TIA ss.ss. 310 through 317 that impose duties on any Person (including the provisions automatically deemed included herein unless expressly excluded by this Indenture) are a part of and govern this Indenture, whether or not physically contained herein.

Section 10.08.  Effect of Headings.  The Article and Section headings herein are for convenience only and shall not affect the construction hereof.

Section 10.09.  Successors and Assigns.  All covenants and agreements in this Indenture and the Notes by the Issuer shall bind its successors and assigns, whether so expressed or not. All agreements of the Indenture Trustee in this Indenture shall bind its successors, co-trustees and agents.

Section 10.10.  Separability.  In case any provision in this Indenture or in the Notes shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 10.11. Benefits of Indenture. Nothing in this Indenture or in the Notes, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, and the Noteholders and any other party secured hereunder, and any other Person with an ownership interest in any part of the Trust Estate, any benefit or any legal or equitable right, remedy or claim under this Indenture.

Section 10.12.  Legal Holidays.  In any case where the date on which any payment is due shall not be a Business Day, then (notwithstanding any other provision of the Notes or this Indenture) payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest shall accrue for the period from and after any such nominal date.

Section 10.13.  GOVERNING LAW. THIS INDENTURE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 10.14.  Counterparts.  This Indenture may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 10.15. Recording of Indenture. If this Indenture is subject to recording in any appropriate public recording offices, such recording is to be effected by the Issuer and at its expense accompanied by an Opinion of Counsel (which may be counsel to the Indenture Trustee or any other counsel reasonably acceptable to the Indenture Trustee) to the effect that such recording is necessary either for the protection of the Noteholders or any other Person secured hereunder or for the enforcement of any right or remedy granted to the Indenture Trustee under this Indenture.

Section 10.16. Issuer Obligation. No recourse may be taken, directly or indirectly, with respect to the obligations of the Issuer, the Owner Trustee or the Indenture Trustee on the Notes or under this Indenture or any certificate or other writing delivered in connection herewith or therewith, against (i) the Indenture Trustee or the Owner Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuer or (iii) any partner, owner, beneficiary, agent, officer, director, employee or agent of the Indenture Trustee or the Owner Trustee in its individual capacity, any holder of a beneficial interest in the Issuer, the Owner Trustee or the Indenture Trustee or of any successor or assign of the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such Person may have expressly agreed (it being understood that the Indenture Trustee and the Owner Trustee have no such obligations in their individual capacity) and except that any such partner, owner or beneficiary shall be fully liable, to the extent provided by applicable law, for any unpaid consideration for stock, unpaid capital contribution or failure to pay any installment or call owing to such entity. For all purposes of this Indenture, in the performance of any duties or obligations of the Issuer hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Article VI, VII and VIII of the Trust Agreement.

Section 10.17. No Petition. The Indenture Trustee, by entering into this Indenture, and each Noteholder, by accepting a Note, hereby covenant and agree that they will not at any time institute against the Depositor or the Issuer, or join in any institution against the Depositor or the Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to the Notes, this Indenture or any of the Basic Documents.

Section 10.18. Inspection. The Issuer agrees that, on reasonable prior notice, it shall permit any representative of the Indenture Trustee, during the Issuer's normal business hours, to examine all the books of account, records, reports and other papers of the Issuer, to make copies and extracts therefrom, to cause such books to be audited by Independent certified public accountants, and to discuss the Issuer's affairs, finances and accounts with the Issuer's officers, employees, and Independent certified public accountants, all at such reasonable times and as often as may be reasonably requested. The Indenture Trustee shall and shall cause its representatives to hold in confidence all such information except to the extent disclosure may be required by law (and all reasonable applications for confidential treatment are unavailing) and except to the extent that the Indenture Trustee may reasonably determine that such disclosure is consistent with its obligations hereunder.

56

IN WITNESS  WHEREOF,  the Issuer and the  Indenture  Trustee have caused
their names to be signed  hereto by their  respective  officers  thereunto  duly
authorized, all as of the day and year first above written.

                    HOME LOAN TRUST 2005-HI2,
                    as Issuer
                              By:  Wilmington   Trust  Company
                                   not  in   its   individual
                                   capacity   but   solely  as
                                   Owner Trustee


                    By:      /s/ Michele C. Harra..
                             Name: Michele C. Harra
                             ------------------------------------
                             Title: Financial Services Officer


                    JPMORGAN CHASE BANK, N.A.,
                    as Indenture Trustee


                    By:      /s/ Joanne Murray
                             Name:   Joanne Murray
                             ------------------------------------
                             Title:  Assistant Vice President

JPMORGAN CHASE BANK, N.A.
hereby  accepts the  appointment as Paying Agent pursuant to Section 3.03 hereof
and as Note Registrar pursuant to Section 4.02 hereof.


By:        /s/ Joanne Murray.....
           Name:   Joanne Murray
           ------------------------------------
           Title:  Assistant Vice President

```
STATE OF TEXAS                    )
                                 ) ss.:
COUNTY OF                         )
```

On this 29th day of June, 2005, before me personally appeared Joanne Murray, to me known, who being by me duly sworn, did depose and say, that she resides at Houston, Texas, that she is the Assistant Vice President of the Indenture Trustee, one of the corporations described in and which executed the above instrument; and that she signed her name thereto by like order.

```
                            ----------------------
                            Notary Public
```

STATE OF TEXAS                    )
                                  ) ss.:
COUNTY OF                         )

      On this 29th day of June, 2005, before me the undersigned, Notary Public
of said State, personally appeared Joanne Murray, personally known to me to be a
duly  authorized  officer of JPMorgan Chase Bank,  N.A. that executed the within
instrument and  personally  known to me to be the person who executed the within
instrument  on  behalf  of  JPMorgan  Chase  Bank,  N.A.  therein  named,  and
acknowledged to me such JPMorgan Chase Bank, N.A. executed the within instrument
pursuant to its by-laws.

                                  -----------------------
                                  Notary Public

STATE OF DELAWARE              )
                              ) ss.:
COUNTY OF NEW CASTLE          )

      On this 29th day of June, 2005, before me personally appeared
_____, to me known, who being by me duly sworn, did depose and say, that
he resides at Wilmington, DE, that he is the Vice President of Wilmington Trust
Company, as Owner Trustee, one of the corporations described in and which
executed the above instrument; and that he signed his name thereto by like
order.

                       -----------------------
                        Notary Public

NOTARIAL SEAL

EXHIBIT A-1

FORM OF NOTES

CLASS A-___ NOTES

UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY NOTE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

THE PRINCIPAL OF THIS NOTE IS PAYABLE IN INSTALLMENTS AS SET FORTH HEREIN. ACCORDINGLY, THE OUTSTANDING PRINCIPAL AMOUNT OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ON THE FACE HEREOF.

THIS NOTE DOES NOT REPRESENT AN INTEREST IN OR OBLIGATION OF THE SELLER, THE DEPOSITOR, THE MASTER SERVICER, THE INDENTURE TRUSTEE, THE OWNER TRUSTEE OR ANY OF THEIR RESPECTIVE AFFILIATES, EXCEPT AS EXPRESSLY PROVIDED IN THE INDENTURE OR THE BASIC DOCUMENTS.

THE HOLDER OF THIS NOTE IS DEEMED TO HAVE REPRESENTED THAT EITHER (1) IT IS NOT A PLAN NOR IS IT ACQUIRING THIS NOTE WITH PLAN ASSETS OR (2) THE ACQUISITION OF THIS NOTE BY THE HOLDER DOES NOT CONSTITUTE OR GIVE RISE TO A PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE, FOR WHICH NO STATUTORY, REGULATORY OR ADMINISTRATIVE EXEMPTION IS AVAILABLE.

HOME LOAN TRUST 2005-HI2

HOME LOAN-BACKED NOTE

Registered                        Principal Amount: $_____

Class A-__
No. __                            Percentage Interest: _____%

CUSIP No. _____            Note Rate: [___%][Adjustable Rate]

        Home Loan Trust 2005-HI2, a statutory trust duly organized and existing
under the laws of the State of Delaware (herein referred to as the "Issuer"),
for value received, hereby promises to pay to Cede & Co. or registered assigns,
the principal sum of $_____, payable on each Payment Date in an amount
equal to the Percentage Interest specified above of the aggregate amount, if
any, payable from the Payment Account in respect of principal on the Class A-__
Notes pursuant to Section 3.05 of the Indenture dated as of June 29, 2005 (the
"Indenture") between the Issuer, as Issuer, and JPMorgan Chase Bank, N.A., as
Indenture Trustee (the "Indenture Trustee"); provided, however, that the entire
unpaid principal amount of this Note shall be due and payable on the Payment
Date in May 2035, to the extent not previously paid on a prior Payment Date.
Capitalized terms used but not defined herein are defined in Appendix A of the
Indenture.

        [Interest on the Class A-__ Notes will be paid monthly on each Payment
Date at the Note Rate. The Note Rate for the Class A-__ Notes will be _____% per
annum. Interest will be computed on the basis of a 30-day month and a 360-day
year. Principal of and interest on this Note shall be paid in the manner
specified on the reverse hereof. On the Step-Up Date, the Note Rate on the Class
A-_ Notes will increase by 0.50% per annum.]

        [Interest on the Class A-1 Notes will be paid monthly on each Payment
Date at the Note Rate for the related Interest Accrual Period. The Note Rate for
each Interest Accrual Period will be equal to the lesser of (i) LIBOR plus___%
per annum and (ii) ___% per annum. LIBOR for each applicable Interest Accrual
Period will be determined on the second LIBOR Business Day immediately preceding
(i) the Closing Date in the case of the first Interest Accrual Period and (ii)
the first day of each succeeding Interest Accrual Period by the Indenture
Trustee as set forth in the Indenture. All determinations of LIBOR by the
Indenture Trustee shall, in the absence of manifest error, be conclusive for all
purposes, and each holder of this Class A-1 Note, by accepting this Class A-1
Note, agrees to be bound by such determination. Interest on this Class A-1 Note
will accrue for each Payment Date from the most recent Payment Date on which
interest has been paid (in the case of the first Payment Date, from the Closing
Date) to but excluding such Payment Date. Interest will be computed on the basis
of the actual number of days in each Interest Accrual Period and a year assumed
to consist of 360 days. Principal of and interest on this Class A-1 Note shall
be paid in the manner specified in the Indenture.]

        Principal of and interest on this Note are payable in such coin or
currency of the United States of America as at the time of payment is legal
tender for payment of public and private debts. All payments made by the Issuer
with respect to this Note shall be applied first to interest due and payable on
this Note as provided above and then to the unpaid principal of this Note.

Reference is made to the further provisions of this Note set forth on the reverse hereof, which shall have the same effect as though fully set forth on the face of this Note.

Unless the certificate of authentication hereon has been executed by the Indenture Trustee whose name appears below by manual signature, this Note shall not be entitled to any benefit under the Indenture referred to on the reverse hereof, or be valid or obligatory for any purpose.

This Note is one of a duly authorized issue of Notes of the Issuer, designated as its Home Loan-Backed Notes (herein called the "Notes"), all issued under the Indenture, to which Indenture and all indentures supplemental thereto reference is hereby made for a statement of the respective rights and obligations thereunder of the Issuer, the Indenture Trustee and the holders of the Notes. The Notes are subject to all terms of the Indenture.

The Notes are and will be equally and ratably secured by the collateral pledged as security therefor as provided in the Indenture.

Principal of and interest on this Note will be payable on each Payment Date, commencing on July 25, 2005, as described in the Indenture. "Payment Date" means the twenty-fifth day of each month, or, if any such date is not a Business Day, then the next Business Day.

The entire unpaid principal amount of this Note shall be due and payable in full on the Payment Date in May 2035 pursuant to the Indenture, to the extent not previously paid on a prior Payment Date. Notwithstanding the foregoing, if an Event of Default shall have occurred and be continuing, then the Indenture Trustee or the holders of Notes representing not less than a majority of the aggregate Note Balance of all Notes may declare the Notes to be immediately due and payable in the manner provided in Section 5.02 of the Indenture. All principal payments on the Notes shall be distributed in the manner and priority set forth in Section 3.05 of the Indenture.

Any installment of interest or principal, if any, payable on any Note that is punctually paid or duly provided for by the Issuer on the applicable Payment Date shall, if such Holder holds Notes of an aggregate initial Note Balance of at least $1,000,000, be paid to each Holder of record on the preceding Record Date, by wire transfer to an account specified in writing by such Holder reasonably satisfactory to the Indenture Trustee as of the preceding Record Date or in all other cases or if no such instructions have been delivered to the Indenture Trustee, by check or money order to such Noteholder mailed to such Holder's address as it appears in the Note Register the amount required to be distributed to such Holder on such Payment Date pursuant to such Holder's Securities; provided, however, that the Indenture Trustee shall not pay to such Holders any amount required to be withheld from a payment to such Holder by the Code.

As provided in the Indenture and subject to certain limitations set forth therein, the transfer of this Note may be registered on the Note Register upon surrender of this Note for registration of transfer at the Corporate Trust Office, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Indenture Trustee duly executed by, the holder hereof or such holder's attorney duly authorized in writing, with such signature guaranteed by an "eligible guarantor institution" meeting the requirements of the Note Registrar, which requirements include membership or participation in the Securities Transfer Agent's Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Note Registrar in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended, and thereupon one or more new Notes

in authorized  denominations and  in the same aggregate  principal amount will be
issued to the designated  transferee or  transferees.  No service charge will be
charged for any  registration of transfer  or exchange of this Note, but the Note
Registrar  shall  require  payment  of a sum  sufficient  to  cover  any  tax or
governmental  charge that may be imposed in connection with any  registration of
transfer or exchange of this Note.

Each holder or Beneficial  Owner of a Note, by acceptance of a Note, or,
in the case of a Beneficial  Owner of a Note,  a beneficial  interest in a Note,
covenants and agrees that no recourse may be taken, directly or indirectly, with
respect to the  obligations of the Issuer,  the Owner Trustee,  the Seller,  the
Master  Servicer,  the  Depositor or the Indenture  Trustee on the Notes or under
the  Indenture or any  certificate  or other  writing  delivered  in  connection
therewith,  against  (i) the  Indenture  Trustee  or the  Owner  Trustee  in its
individual  capacity,  (ii) any owner of a beneficial  interest in the Issuer or
(iii) any partner, owner,  beneficiary,  agent, officer, director or employee of
the  Indenture  Trustee  or the Owner  Trustee in its  individual  capacity,  any
holder  of a beneficial  interest  in the  Issuer,  the  Owner  Trustee  or the
Indenture  Trustee or of any successor or assign of the Indenture Trustee or the
Owner  Trustee in its  individual  capacity,  except as any such Person may have
expressly agreed and except that any such partner, owner or beneficiary shall be
fully  liable,  to  the  extent  provided  by  applicable  law  for  any  unpaid
consideration  for  stock,  unpaid  capital  contribution  or failure to pay any
installment or call owing to such entity.

Each holder or  Beneficial  Owner of a Note, by acceptance of a Note or,
in the case of a Beneficial  Owner of a Note,  a beneficial  interest in a Note,
covenants and agrees by accepting the benefits of the Indenture that such holder
or  Beneficial  Owner  of a Note  will  not at any time  institute  against  the
Depositor,  the  Seller,  the  Master  Servicer  or the  Issuer,  or join in any
institution against the Depositor, the Seller, the Master Servicer or the Issuer
of, any bankruptcy,  reorganization,  arrangement,  insolvency  or  liquidation
proceedings  under any United States federal or state  bankruptcy or similar law
in connection with any  obligations  relating to the Notes,  the Indenture or the
Basic Documents.

The Issuer has entered into the  Indenture  and this Note is issued with
the intention  that, for federal,  state and local income,  single  business and
franchise tax purposes,  the Notes will qualify as  indebtedness  of the Issuer.
Each holder of a Note, by acceptance of a Note (and each  Beneficial  Owner of a
Note by  acceptance  of a  beneficial  interest in a Note),  agrees to treat the
Notes for federal,  state and local  income,  single  business and franchise tax
purposes as indebtedness of the Issuer.

Prior to the due presentment for  registration of transfer of this Note,
the Issuer,  the Indenture  Trustee and any agent of the Issuer or the Indenture
Trustee  may treat the Person in whose name this Note is  registered  (as of the
day of  determination  or as of  such  other  date  as may be  specified  in the
Indenture)  as the owner  hereof for all  purposes,  whether or not this Note be
overdue,  and none of the Issuer,  the Indenture Trustee or any such agent shall
be affected by notice to the contrary.

The Indenture permits, with certain exceptions as therein provided,  the
amendment  thereof and the  modification  of the rights and  obligations  of the
Issuer and the  Indenture  Trustee  and the  rights of the  holders of the Notes
under the Indenture at any time by the Issuer and the Indenture Trustee with the
consent of the holders of Notes  representing  a majority of the aggregate  Note
Balance of all Notes at the time Outstanding and with prior notice to the Rating
Agencies. The Indenture also contains provisions permitting the holders of Notes
representing  specified  percentages of the aggregate  Note Balance of all Notes,
on behalf of the  holders of all the Notes,  to  waive  compliance  by the Issuer
with certain  provisions of the  Indenture  and certain past defaults  under the
Indenture  and their  consequences.  Any such consent or waiver by the holder of
this Note (or any one of more Predecessor Notes) shall be conclusive and binding

upon such holder and upon all future holders of this Note and of any Note issued upon the registration of transfer hereof or in exchange hereof or in lieu hereof whether or not notation of such consent or waiver is made upon this Note. The Indenture also permits the Issuer and the Indenture Trustee to amend or waive certain terms and conditions set forth in the Indenture without the consent of holders of the Notes issued thereunder but with prior notice to the Rating Agencies.

The term "Issuer" as used in this Note includes any successor or the Issuer under the Indenture.

The Issuer is permitted by the Indenture, under certain circumstances, to merge or consolidate, subject to the rights of the Indenture Trustee and the holders of Notes under the Indenture.

The Notes are issuable only in registered form in denominations as provided in the Indenture, subject to certain limitations therein set forth.

This Note and the Indenture shall be construed in accordance with the laws of the State of New York, without reference to its conflict of law provisions and the obligations, rights and remedies of the parties hereunder and thereunder shall be determined in accordance with such laws.

No reference herein to the Indenture and no provision of this Note or of the Indenture shall alter or impair, the obligation of the Issuer, which is absolute and unconditional, to pay the principal of and interest on this Note at the times, place and rate, and in the coin or currency herein prescribed.

Anything herein to the contrary notwithstanding, except as expressly provided in the Basic Documents, none of Wilmington Trust Company in its individual capacity, JPMorgan Chase Bank, N.A., in its individual capacity, any owner of a beneficial interest in the Issuer, or any of their respective partners, beneficiaries, agents, officers, directors, employees or successors or assigns shall be personally liable for, nor shall recourse be had to any of them for, the payment of principal of or interest on this Note or performance of, or omission to perform, any of the covenants, obligations or indemnifications contained in the Indenture. The holder of this Note by its acceptance hereof agrees that, except as expressly provided in the Basic Documents, in the case of an Event of Default under the Indenture, the holder shall have no claim against any of the foregoing for any deficiency, loss or claim therefrom; provided, however, that nothing contained herein shall be taken to prevent recourse to, and enforcement against, the assets of the Issuer for any and all liabilities, obligations and undertakings contained in the Indenture or in this Note.

     IN WITNESS WHEREOF, the Owner Trustee, on behalf of the Issuer and not in its individual capacity, has caused this Note to be duly executed.

                    HOME LOAN TRUST 2005-HI2

                    By    WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

Dated: June 29, 2005

                    By
                        Authorized Signatory
                        ----------------------------------------


              CERTIFICATE OF AUTHENTICATION

     This is one of the Class A-__ Notes referred to in the within mentioned Indenture.

                    JPMORGAN CHASE BANK, N.A., not in its individual capacity but solely as Indenture Trustee

Dated: June 29, 2005

                    By
                        Authorized Signatory
                        ----------------------------------------

ASSIGNMENT

Social Security or taxpayer I.D. or other identifying number of assignee:
_____


FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfer unto
_____
                        (name and address of assignee)

the within Note and all rights thereunder,  and hereby  irrevocably  constitutes
and appoints


_____,

attorney, to transfer said Note on the books kept for registration thereof, with
full power of substitution in the premises.

Dated: _____            _____ */
                                        Signature Guaranteed:


* NOTICE:  The signature to this assignment must correspond with the name of the
registered  owner  as  it  appears  on  the  face  of  the  within  Note  in  every
particular,  without  alteration,  enlargement  or  any  change  whatever.  Such
signature must be guaranteed by an "eligible guarantor  institution" meeting the
requirements  of  the  Note  Registrar,  which  requirements  include  membership  or
participation  in  STAMP  or  such  other  "signature  guarantee  program" as may be
determined by the Note Registrar in addition to, or in substitution  for, STAMP,
all  in  accordance  with  the  Securities  Exchange  Act of 1934,  as amended.

EXHIBIT A-2

FORM OF NOTES

CLASS M-___ NOTES

THIS NOTE IS SUBORDINATED IN RIGHT OF PAYMENT TO THE SENIOR NOTES AS DESCRIBED IN THE AGREEMENT (AS DEFINED BELOW).

UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY NOTE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

THE PRINCIPAL OF THIS NOTE IS PAYABLE IN INSTALLMENTS AS SET FORTH HEREIN. ACCORDINGLY, THE OUTSTANDING PRINCIPAL AMOUNT OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ON THE FACE HEREOF.

THIS NOTE DOES NOT REPRESENT AN INTEREST IN OR OBLIGATION OF THE SELLER, THE DEPOSITOR, THE MASTER SERVICER, THE INDENTURE TRUSTEE, THE OWNER TRUSTEE OR ANY OF THEIR RESPECTIVE AFFILIATES, EXCEPT AS EXPRESSLY PROVIDED IN THE INDENTURE OR THE BASIC DOCUMENTS.

THE HOLDER OF THIS NOTE IS DEEMED TO HAVE REPRESENTED THAT EITHER (1) IT IS NOT A PLAN NOR IS IT ACQUIRING THIS NOTE WITH PLAN ASSETS OR (2) THE ACQUISITION OF THIS NOTE BY THE HOLDER DOES NOT CONSTITUTE OR GIVE RISE TO A PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE, FOR WHICH NO STATUTORY, REGULATORY OR ADMINISTRATIVE EXEMPTION IS AVAILABLE.

HOME LOAN TRUST 2005-HI2

HOME LOAN-BACKED NOTE

Registered                              Principal Amount: $_____

Class M-__
No. __                                  Percentage Interest: _____%

CUSIP No. _____                  Note Rate: [___%]

Home Loan Trust 2005-HI2, a statutory trust duly organized and existing under the laws of the State of Delaware (herein referred to as the "Issuer"), for value received, hereby promises to pay to Cede & Co. or registered assigns, the principal sum of $_____, payable on each Payment Date in an amount equal to the Percentage Interest specified above of the aggregate amount, if any, payable from the Payment Account in respect of principal on the Class M-__ Notes pursuant to Section 3.05 of the Indenture dated as of June 29, 2005 (the "Indenture") between the Issuer, as Issuer, and JPMorgan Chase Bank, N.A., as Indenture Trustee (the "Indenture Trustee"); provided, however, that the entire unpaid principal amount of this Note shall be due and payable on the Payment Date in May 2035, to the extent not previously paid on a prior Payment Date. Capitalized terms used but not defined herein are defined in Appendix A of the Indenture.

[Interest on the Class M-__ Notes will be paid monthly on each Payment Date at the Note Rate. The Note Rate for the Class M-__ Notes will be _____% per annum. Interest will be computed on the basis of a 30-day month and a 360-day year. Principal of and interest on this Note shall be paid in the manner specified on the reverse hereof. On the Step-Up Date, the Note Rate on the Class M-__ Note will increase by 0.50% per annum.]

Principal of and interest on this Note are payable in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts. All payments made by the Issuer with respect to this Note shall be applied first to interest due and payable on this Note as provided above and then to the unpaid principal of this Note.

Reference is made to the further provisions of this Note set forth on the reverse hereof, which shall have the same effect as though fully set forth on the face of this Note.

Unless the certificate of authentication hereon has been executed by the Indenture Trustee whose name appears below by manual signature, this Note shall not be entitled to any benefit under the Indenture referred to on the reverse hereof, or be valid or obligatory for any purpose.

This Note is one of a duly authorized issue of Notes of the Issuer, designated as its Home Loan-Backed Notes (herein called the "Notes"), all issued under the Indenture, to which Indenture and all indentures supplemental thereto reference is hereby made for a statement of the respective rights and obligations thereunder of the Issuer, the Indenture Trustee and the holders of the Notes. The Notes are subject to all terms of the Indenture.

The Notes are and will be equally and ratably secured by the collateral pledged as security therefor as provided in the Indenture.

Principal of and interest on this Note will be payable on each Payment Date, commencing on July 25, 2005, as described in the Indenture. "Payment Date" means the twenty-fifth day of each month, or, if any such date is not a Business Day, then the next Business Day.

The entire unpaid principal amount of this Note shall be due and payable in full on the Payment Date in May 2035 pursuant to the Indenture, to the extent not previously paid on a prior Payment Date. Notwithstanding the foregoing, if an Event of Default shall have occurred and be continuing, then the Indenture Trustee or the holders of Notes representing not less than a majority of the aggregate Note Balance of all Notes may declare the Notes to be immediately due and payable in the manner provided in Section 5.02 of the Indenture. All principal payments on the Notes shall be distributed in the manner and priority set forth in Section 3.05 of the Indenture.

Any installment of interest or principal, if any, payable on any Note that is punctually paid or duly provided for by the Issuer on the applicable Payment Date shall, if such Holder holds Notes of an aggregate initial Note Balance of at least $1,000,000, be paid to each Holder of record on the preceding Record Date, by wire transfer to an account specified in writing by such Holder reasonably satisfactory to the Indenture Trustee as of the preceding Record Date or in all other cases or if no such instructions have been delivered to the Indenture Trustee, by check or money order to such Noteholder mailed to such Holder's address as it appears in the Note Register the amount required to be distributed to such Holder on such Payment Date pursuant to such Holder's Securities; provided, however, that the Indenture Trustee shall not pay to such Holders any amount required to be withheld from a payment to such Holder by the Code.

As provided in the Indenture and subject to certain limitations set forth therein, the transfer of this Note may be registered on the Note Register upon surrender of this Note for registration of transfer at the Corporate Trust Office, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Indenture Trustee duly executed by, the holder hereof or such holder's attorney duly authorized in writing, with such signature guaranteed by an "eligible guarantor institution" meeting the requirements of the Note Registrar, which requirements include membership or participation in the Securities Transfer Agent's Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Note Registrar in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended, and thereupon one or more new Notes in authorized denominations and in the same aggregate principal amount will be issued to the designated transferee or transferees. No service charge will be charged for any registration of transfer or exchange of this Note, but the Note Registrar shall require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any registration of transfer or exchange of this Note.

Each holder or Beneficial Owner of a Note, by acceptance of a Note, or, in the case of a Beneficial Owner of a Note, a beneficial interest in a Note, covenants and agrees that no recourse may be taken, directly or indirectly, with respect to the obligations of the Issuer, the Owner Trustee, the Seller, the Master Servicer, the Depositor or the Indenture Trustee on the Notes or under the Indenture or any certificate or other writing delivered in connection therewith, against (i) the Indenture Trustee or the Owner Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuer or (iii) any partner, owner, beneficiary, agent, officer, director or employee of the Indenture Trustee or the Owner Trustee in its individual capacity, any holder of a beneficial interest in the Issuer, the Owner Trustee or the Indenture Trustee or of any successor or assign of the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such Person may have expressly agreed and except that any such partner, owner or beneficiary shall be fully liable, to the extent provided by applicable law for any unpaid consideration for stock, unpaid capital contribution or failure to pay any

installment or call owing to such entity

Each holder or Beneficial Owner of a Note, by acceptance of a Note or, in the case of a Beneficial Owner of a Note, a beneficial interest in a Note, covenants and agrees by accepting the benefits of the Indenture that such holder or Beneficial Owner of a Note will not at any time institute against the Depositor, the Seller, the Master Servicer or the Issuer, or join in any institution against the Depositor, the Seller, the Master Servicer or the Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to the Notes, the Indenture or the Basic Documents.

The Issuer has entered into the Indenture and this Note is issued with the intention that, for federal, state and local income, single business and franchise tax purposes, the Notes will qualify as indebtedness of the Issuer. Each holder of a Note, by acceptance of a Note (and each Beneficial Owner of a Note by acceptance of a beneficial interest in a Note), agrees to treat the Notes for federal, state and local income, single business and franchise tax purposes as indebtedness of the Issuer.

Prior to the due presentment for registration of transfer of this Note, the Issuer, the Indenture Trustee and any agent of the Issuer or the Indenture Trustee may treat the Person in whose name this Note is registered (as of the day of determination or as of such other date as may be specified in the Indenture) as the owner hereof for all purposes, whether or not this Note be overdue, and none of the Issuer, the Indenture Trustee or any such agent shall be affected by notice to the contrary.

The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Issuer and the Indenture Trustee and the rights of the holders of the Notes under the Indenture at any time by the Issuer and the Indenture Trustee with the consent of the holders of Notes representing a majority of the aggregate Note Balance of all Notes at the time Outstanding and with prior notice to the Rating Agencies. The Indenture also contains provisions permitting the holders of Notes representing specified percentages of the aggregate Note Balance of all Notes, on behalf of the holders of all the Notes, to waive compliance by the Issuer with certain provisions of the Indenture and certain past defaults under the Indenture and their consequences. Any such consent or waiver by the holder of this Note (or any one of more Predecessor Notes) shall be conclusive and binding upon such holder and upon all future holders of this Note and of any Note issued upon the registration of transfer hereof or in exchange hereof or in lieu hereof whether or not notation of such consent or waiver is made upon this Note. The Indenture also permits the Issuer and the Indenture Trustee to amend or waive certain terms and conditions set forth in the Indenture without the consent of holders of the Notes issued thereunder but with prior notice to the Rating Agencies.

The term "Issuer" as used in this Note includes any successor or the Issuer under the Indenture.

The Issuer is permitted by the Indenture, under certain circumstances, to merge or consolidate, subject to the rights of the Indenture Trustee and the holders of Notes under the Indenture.

The Notes are issuable only in registered form in denominations as provided in the Indenture, subject to certain limitations therein set forth.

This Note and the Indenture shall be construed in accordance with the laws of the State of New York, without reference to its conflict of law provisions and the obligations, rights and remedies of the parties hereunder and thereunder shall be determined in accordance with such laws.

No reference herein to the Indenture and no provision of this Note or of the Indenture shall alter or impair, the obligation of the Issuer, which is absolute and unconditional, to pay the principal of and interest on this Note at the times, place and rate, and in the coin or currency herein prescribed.

Anything herein to the contrary notwithstanding, except as expressly provided in the Basic Documents, none of Wilmington Trust Company in its individual capacity, JPMorgan Chase Bank, N.A., in its individual capacity, any owner of a beneficial interest in the Issuer, or any of their respective partners, beneficiaries, agents, officers, directors, employees or successors or assigns shall be personally liable for, nor shall recourse be had to any of them for, the payment of principal of or interest on this Note or performance of, or omission to perform, any of the covenants, obligations or indemnifications contained in the Indenture. The holder of this Note by its acceptance hereof agrees that, except as expressly provided in the Basic Documents, in the case of an Event of Default under the Indenture, the holder shall have no claim against any of the foregoing for any deficiency, loss or claim therefrom; provided, however, that nothing contained herein shall be taken to prevent recourse to, and enforcement against, the assets of the Issuer for any and all liabilities, obligations and undertakings contained in the Indenture or in this Note.

      IN WITNESS  WHEREOF,  the Owner Trustee,  on behalf of the Issuer
and not in its individual capacity, has caused this Note to be duly executed.

                  HOME LOAN TRUST 2005-HI2

                  By    WILMINGTON  TRUST  COMPANY, not  in its
                      individual  capacity but solely as Owner
                      Trustee

Dated: June 29, 2005

                  By
                      Authorized Signatory
                      ----------------------------------------


            CERTIFICATE OF AUTHENTICATION

      This is one of the Class A-__ Notes referred to in the within  mentioned
Indenture.

                  JPMORGAN   CHASE BANK,  N.A.,  not  in  its
                  individual  capacity  but solely as  Indenture
                  Trustee

Dated: June 29, 2005

                  By
                      Authorized Signatory
                      ----------------------------------------

ASSIGNMENT

Social Security or taxpayer I.D. or other identifying number of assignee:
_____


FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfer unto
_____
(name and address of assignee)

the within Note and all rights thereunder,  and hereby  irrevocably  constitutes
and appoints


_____,

attorney, to transfer said Note on the books kept for registration thereof, with
full power of substitution in the premises.

Dated: _____          _____ */
                                         Signature Guaranteed:


* NOTICE:  The signature to this assignment must correspond with the name of the
registered  owner  as  it  appears  on  the  face  of  the  within  Note  in  every
particular,  without  alteration,  enlargement  or  any  change  whatever.  Such
signature must be guaranteed by an "eligible guarantor  institution" meeting the
requirements  of  the  Note  Registrar,  which  requirements  include  membership  or
participation  in  STAMP  or  such  other  "signature  guarantee  program"  as  may  be
determined  by  the  Note  Registrar  in  addition  to,  or  in  substitution  for,  STAMP,
all  in  accordance  with  the  Securities  Exchange  Act  of  1934,  as  amended.

EXHIBIT B

FORM OF BACK-UP CERTIFICATION TO FORM 10-K CERTIFICATE

The undersigned, a Responsible Officer of JPMorgan Chase Bank, N.A. (the "Indenture Trustee") certifies that:

1. The Indenture Trustee has performed all of the duties specifically required to be performed by it pursuant to the provisions of the Indenture dated as of June 29, 2005 (the "Indenture") by and between Home Loan Trust 2005-HI2, as the issuer (the "Issuer") and the Indenture Trustee in accordance with the standards set forth therein.

2. Based on my knowledge, the information that is provided by the Indenture Trustee pursuant to Section 7.05(I) of the Indenture is accurate as of the last day of the 20____ calendar year.

Capitalized terms used and not defined herein shall have the meanings given such terms in the Indenture.

IN WITNESS THEREOF, I have duly executed this certificate as of _____, 20____

Name:
_____

Title:
_____

APPENDIX A

DEFINITIONS

Administrative Fees: The Servicing Fees and the fees payable to the Owner Trustee and the Indenture Trustee.

Affiliate: With respect to any Person, any other Person controlling, controlled by or under common control with such Person. For purposes of this definition, "control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise and "controlling" and "controlled" shall have meanings correlative to the foregoing.

Appraised Value: For any Home Loan the value of the related Mortgaged Property determined by the appraisal, sales price for such Mortgaged Property or alternative valuation method used in the origination of such Home Loan (which may have been obtained at an earlier time); provided that if such Home Loan was originated simultaneously with or not more than 12 months after a senior lien on the related Mortgaged Property which was originated in a purchase or cash-out refinance transaction, the appraised value shall be the lesser of the appraised value at the origination of the senior lien and the sales price for such Mortgaged Property.

Assignment of Mortgage: With respect to any Mortgage, an assignment, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction in which the related Mortgaged Property is located to reflect the sale of the Mortgage, which assignment, notice of transfer or equivalent instrument may be in the form of one or more blanket assignments covering Mortgages secured by Mortgaged Properties located in the same jurisdiction.

Authorized Newspaper: A newspaper of general circulation in the Borough of Manhattan, The City of New York, printed in the English language and customarily published on each Business Day, whether or not published on Saturdays, Sundays or holidays.

Authorized Officer: With respect to the Issuer, any officer of the Owner Trustee who is authorized to act for the Owner Trustee in matters relating to the Issuer and who is identified on the list of Authorized Officers delivered by the Owner Trustee to the Indenture Trustee on the Closing Date (as such list may be modified or supplemented from time to time thereafter).

Bankruptcy Code: The Bankruptcy Code of 1978, as amended.

Basic Documents: The Trust Agreement, the Indenture, the Home Loan Purchase Agreement, the Servicing Agreement, the Custodial Agreement and the other documents and certificates delivered in connection with any of the above.

Beneficial Owner: With respect to any Note, the Person who is the beneficial owner of such Note as reflected on the books of the Depository or on the books of a Person maintaining an account with such Depository (directly as a Depository Participant or indirectly through a Depository Participant, in accordance with the rules of such Depository).

Book-Entry Custodian: The custodian appointed pursuant to Section 4.06 of the Indenture.

Book-Entry Notes: Beneficial interests in the Notes, ownership and transfers of which shall be made through book entries by the Depository as described in Section 4.06 of the Indenture.

Business Day: Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the States of New York, California, Texas, Minnesota, Pennsylvania, Illinois or Delaware are required or authorized by law to be closed.

Calendar Quarter: A Calendar Quarter shall consist of one of the following time periods in any given year: January 1 through March 31, April 1 through June 30, July 1 though September 30, and October 1 through December 31.

Certificate: The certificate issued in the form of Exhibit A to the Trust Agreement and outstanding pursuant to the terms of the Trust Agreement, evidencing a beneficial ownership interest in the Trust.

Certificate Distribution Account: The account or accounts created and maintained by the Certificate Paying Agent pursuant to Section 3.10(c) of the Trust Agreement. The Certificate Paying Agent will make all distributions on the Certificate from money on deposit in the Certificate Distribution Account. The Certificate Distribution Account shall be an Eligible Account.

Certificate Distribution Amount: The amount payable to the Certificate Paying Agent under Section 3.05 of the Indenture for payment to the holders of the Certificate under the Trust Agreement.

Certificate Paying Agent: The meaning specified in Section 3.10 of the Trust Agreement.

Certificate Percentage Interest: With respect to the Certificate and any date of determination, the percentage interest as stated on the face of the Certificate, which percentage may be recalculated in accordance with Section 3.03 of the Trust Agreement.

Certificate Principal Balance: As of any Payment Date, with respect to the Certificate, an amount equal to the then applicable Certificate Percentage Interest of such Certificate, multiplied by the Outstanding Reserve Amount immediately prior to such Payment Date.

Certificate Register: The register maintained by the Certificate Registrar in which the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges of the Certificates.

Certificate Registrar: Initially, the Indenture Trustee, in its capacity as Certificate Registrar, or any successor to the Indenture Trustee in such capacity.

Certificate of Trust: The Certificate of Trust filed for the Trust pursuant to Section 3810(a) of the Statutory Trust Statute, including all amendments and restatements.

Certificateholder: The Person in whose name a Certificate is registered in the Certificate Register except that, any Certificate registered in the name of the Issuer, the Owner Trustee or the Indenture Trustee or any Affiliate of any of them shall be deemed not to be outstanding and the registered holder will not be considered a Certificateholder or a holder for purposes of giving any request, demand, authorization, direction, notice, consent or waiver under the Indenture or the Trust Agreement provided that, in determining whether the Indenture Trustee or the Owner Trustee shall be protected in relying upon any such

request, demand, authorization, direction, notice, consent or waiver, only Certificates that the Indenture Trustee or the Owner Trustee knows to be so owned shall be so disregarded. Owners of the Certificates that have been pledged in good faith may be regarded as Holders if the pledgee establishes to the satisfaction of the Indenture Trustee or the Owner Trustee, as the case may be, the pledgee's right so to act with respect to such Certificates and that the pledgee is not the Issuer, any other obligor upon the Certificates or any Affiliate of any of the foregoing Persons.

Class:  Collectively, all of the Notes bearing the same designation.

Class A Notes or Senior Notes:  The Class A-1, Class A-2, Class A-3, Class A-4 and Class A-5 Notes.

Class M Notes:  The Class M-1, Class M-2, Class M-3, Class M-4 and Class M-5 Notes.

Class M-1 Principal Distribution Amount: With respect to any Payment Date: (1) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect, the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount, or (2) on or after the Stepdown Date if a Trigger Event is not in effect for that Payment Date, the lesser of:

o           the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount; and

o           the excess of (A) the sum of (1) the aggregate Note Balance of the Class A Notes (after taking into account the payment of the Senior Principal Distribution Amount for that Payment Date) and (2) the Note Balance of the Class M-1 Notes immediately prior to that Payment Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the Pool Balance after giving effect to distributions to be made on that Payment Date and (y) the excess of the Pool Balance after giving effect to distributions to be made on that Payment Date, over the Reserve Amount Floor.

    In no event will the Class M-1 Principal Distribution Amount be greater than the Note Balance of the Class M-1 Notes.

Class M-2 Principal Distribution Amount: With respect to any Payment Date: (1) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect, the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount and the Class M-1 Principal Distribution Amount, or (2) on or after the Stepdown Date if a Trigger Event is not in effect for that Payment Date, the lesser of:

o           the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount and the Class M-1 Principal Distribution Amount; and

o       the excess of (A) the sum of (1) the aggregate Note Balance of
        the Class A Notes and the Class M-1 Notes (after taking into
        account the payment of the sum of the Senior Principal
        Distribution Amount and Class M-1 Principal Distribution Amount
        for that Payment Date) and (2) the Note Balance of the Class M-2
        Notes immediately prior to that Payment Date over (B) the lesser
        of (x) the product of (1) the applicable Subordination
        Percentage and (2) the Pool Balance after giving effect to
        distributions to be made on that Payment Date and (y) the excess
        of the Pool Balance after giving effect to distributions to
        be made on that Payment Date, over the Reserve Amount Floor.

In no event will the Class M-2 Principal Distribution Amount be greater
than the Note Balance of the Class M-2 Notes.

Class M-3 Principal Distribution Amount: With respect to any Payment Date: (1)
prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event
is in effect, the remaining Principal Distribution Amount for that Payment Date
after distribution of the Senior Principal Distribution Amount, the Class M-1
Principal Distribution Amount and the Class M-2 Principal Distribution Amount,
or (2) on or after the Stepdown Date if a Trigger Event is not in effect for
that Payment Date, the lesser of:

o       the remaining Principal Distribution Amount for that Payment
        Date after distribution of the Senior Principal Distribution
        Amount, the Class M-1 Principal Distribution Amount and the
        Class M-2 Principal Distribution Amount; and

o       the excess of (A) the sum of (1) the aggregate Note Balance of
        the Class A, Class M-1 and Class M-2 Notes (after taking into
        account the payment of the sum of the Senior Principal
        Distribution Amount, the Class M-1 Principal Distribution Amount
        and the Class M-2 Principal Distribution Amount for that Payment
        Date) and (2) the Note Balance of the Class M-3 Notes
        immediately prior to that Payment Date over (B) the lesser of
        (x) the product of (1) the applicable Subordination Percentage
        and (2) the Pool Balance after giving effect to distributions to
        be made on that Payment Date and (y) the excess of the Pool
        Balance after giving effect to distributions to be made on that
        Payment Date, over the Reserve Amount Floor.

In no event will the Class M-3 Principal Distribution Amount be greater
than the Note Balance of the Class M-3 Notes.

Class M-4 Principal Distribution Amount: With respect to any Payment Date: (1)
prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event
is in effect, the remaining Principal Distribution Amount for that Payment Date
after distribution of the Senior Principal Distribution Amount, the Class M-1
Principal Distribution Amount, the Class M-2 Principal Distribution Amount and
the Class M-3 Principal Distribution Amount, or (2) on or after the Stepdown
Date if a Trigger Event is not in effect for that Payment Date, the lesser of:

o     the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount and the Class M-3 Principal Distribution Amount; and

o     the excess of (A) the sum of (1) the aggregate Note Balance of the Class A, Class M-1, Class M-2 and Class M-3 Notes (after taking into account the payment of the sum of the Senior Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount and the Class M-3 Principal Distribution Amount for that Payment Date) and (2) the Note Balance of the Class M-4 Notes immediately prior to that Payment Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the Pool Balance after giving effect to distributions to be made on that Payment Date and (y) the excess of the Pool Balance after giving effect to distributions to be made on that Payment Date, over the Reserve Amount Floor.

In no event will the Class M-4 Principal Distribution Amount be greater than the Note Balance of the Class M-4 Notes.

Class M-5 Principal Distribution Amount: With respect to any Payment Date: (1) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect, the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount and the Class M-4 Principal Distribution Amount, or (2) on or after the Stepdown Date if a Trigger Event is not in effect for that Payment Date, the lesser of:

o     the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount and the Class M-4 Principal Distribution Amount; and

o     the excess of (A) the sum of (1) the aggregate Note Balance of the Class A, Class M-1, Class M-2, Class M-3 and Class M-4 Notes (after taking into account the payment of the sum of the Senior Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount and the Class M-4 Principal Distribution Amount for that Payment Date) and (2) the Note Balance of the Class M-5 Notes immediately prior to that Payment Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the Pool Balance after giving effect to distributions to be made on that Payment Date and (y) the excess of the Pool Balance after giving effect to distributions to be made on that Payment Date, over the Reserve Amount Floor.

In no event will the Class M-5 Principal Distribution Amount be greater than the Note Balance of the Class M-5 Notes.

Class M-6 Principal Distribution Amount: With respect to any Payment Date: (1) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect, the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution Amount and the Class M-5 Principal Distribution Amount, or (2) on or after the Stepdown Date if a Trigger Event is not in effect for that Payment Date, the lesser of:

o    the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution Amount and the Class M-5 Principal Distribution Amount; and

o    the excess of (A) the sum of (1) the aggregate Note Balance of the Class A, Class M-1, Class M-2, Class M-3, Class M-4 and Class M-5 Notes (after taking into account the payment of the sum of the Senior Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution Amount and the Class M-5 Principal Distribution Amount for that Payment Date) and (2) the Note Balance of the Class M-6 Notes immediately prior to that Payment Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the Pool Balance after giving effect to distributions to be made on that Payment Date and (y) the excess of the Pool Balance after giving effect to distributions to be made on that Payment Date, over the Reserve Amount Floor.

In no event will the Class M-6 Principal Distribution Amount be greater than the Note Balance of the Class M-6 Notes.

Class M-7 Principal Distribution Amount: With respect to any Payment Date: (1) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect, the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution Amount, the Class M-5 Principal Distribution Amount and the Class M-6 Principal Distribution Amount, or (2) on or after the Stepdown Date if a Trigger Event is not in effect for that Payment Date, the lesser of:

o    the remaining Principal Distribution Amount for that Payment Date after distribution of the Senior Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution Amount, the Class M-5 Principal Distribution Amount and the Class M-6 Principal Distribution Amount; and

o    the excess of (A) the sum of (1) the aggregate Note Balance of
     the Class A, Class M-1, Class M-2, Class M-3, Class M-4, Class
     M-5 and Class M-6 Notes (after taking into account the payment
     of the sum of the Senior Principal Distribution Amount, the
     Class M-1 Principal Distribution Amount, the Class M-2 Principal
     Distribution Amount, the Class M-3 Principal Distribution
     Amount, the Class M-4 Principal Distribution Amount, the Class
     M-5 Principal Distribution Amount and the Class M-6 Principal
     Distribution Amount for that Payment Date) and (2) the Note
     Balance of the Class M-7 Notes immediately prior to that Payment
     Date over (B) the lesser of (x) the product of (1) the
     applicable Subordination Percentage and (2) the Pool Balance
     after giving effect to distributions to be made on that Payment
     Date and (y) the excess of the Pool Balance after giving effect
     to distributions to be made on that Payment Date, over the
     Reserve Amount Floor.

     In no event will the Class M-7 Principal Distribution Amount be greater
than the Note Balance of the Class M-7 Notes.

Class M-8 Principal Distribution Amount: With respect to any Payment Date: (1)
prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event
is in effect, the remaining Principal Distribution Amount for that Payment Date
after distribution of the Senior Principal Distribution Amount, the Class M-1
Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the
Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution
Amount, the Class M-5 Principal Distribution Amount, the Class M-6 Principal
Distribution Amount and the Class M-7 Principal Distribution Amount, or (2) on
or after the Stepdown Date if a Trigger Event is not in effect for that Payment
Date, the lesser of:

o    the remaining Principal Distribution Amount for that Payment
     Date after distribution of the Senior Principal Distribution
     Amount, the Class M-1 Principal Distribution Amount, the Class
     M-2 Principal Distribution Amount, the Class M-3 Principal
     Distribution Amount, the Class M-4 Principal Distribution
     Amount, the Class M-5 Principal Distribution Amount, the Class
     M-6 Principal Distribution Amount and the Class M-7 Principal
     Distribution Amount; and

o    the excess of (A) the sum of (1) the aggregate Note Balance of
     the Class A, Class M-1, Class M-2, Class M-3, Class M-4, Class
     M-5, Class M-6 and Class M-7 Notes (after taking into account
     the payment of the sum of the Senior Principal Distribution
     Amount, the Class M-1 Principal Distribution Amount, the Class
     M-2 Principal Distribution Amount, the Class M-3 Principal
     Distribution Amount, the Class M-4 Principal Distribution
     Amount, the Class M-5 Principal Distribution Amount, the Class
     M-6 Principal Distribution Amount and the Class M-7 Principal
     Distribution Amount for that Payment Date) and (2) the Note
     Balance of the Class M-8 Notes immediately prior to that Payment
     Date over (B) the lesser of (x) the product of (1) the
     applicable Subordination Percentage and (2) the Pool Balance
     after giving effect to distributions to be made on that Payment
     Date and (y) the excess of the Pool Balance after giving effect
     to distributions to be made on that Payment Date, over the
     Reserve Amount Floor.

In no event will the Class M-8 Principal  Distribution Amount be greater than the Note Balance of the Class M-8 Notes.

Class M-9 Principal  Distribution  Amount: With respect to any Payment Date: (1) prior to the Stepdown  Date or on or after the Stepdown  Date if a Trigger Event is in effect, the remaining Principal  Distribution Amount for that Payment Date after  distribution of the Senior Principal Distribution  Amount, the Class M-1 Principal  Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal  Distribution  Amount, the Class M-4 Principal  Distribution Amount,  the Class M-5 Principal  Distribution  Amount,  the Class M-6 Principal Distribution  Amount, the Class M-7 Principal  Distribution Amount and the Class M-8 Principal Distribution Amount,  or (2) on or after the Stepdown Date if a Trigger Event is not in effect for that Payment Date, the lesser of:

- the  remaining  Principal  Distribution  Amount for that Payment Date after  distribution  of the Senior  Principal  Distribution Amount, the Class M-1 Principal  Distribution  Amount, the Class M-2 Principal  Distribution  Amount,  the Class  M-3  Principal Distribution  Amount,  the  Class  M-4  Principal  Distribution Amount, the Class M-5 Principal  Distribution  Amount, the Class M-6 Principal  Distribution  Amount,  the Class  M-7  Principal Distribution  Amount  and the Class M-8  Principal  Distribution Amount; and

- the excess of (A) the sum of (1) the  aggregate  Note Balance of the Class A, Class M-1,  Class M-2,  Class M-3, Class M-4, Class M-5, Class M-6, Class M-7 and Class M-8 Notes (after taking into account  the  payment  of  the  sum  of  the  Senior  Principal Distribution  Amount,  the  Class  M-1  Principal  Distribution Amount, the Class M-2 Principal  Distribution  Amount, the Class M-3  Principal  Distribution  Amount,  the  Class  M-4  Principal Distribution  Amount,  the  Class  M-5  Principal  Distribution Amount, the Class M-6 Principal  Distribution  Amount, the Class M-7  Principal  Distribution  Amount and the Class M-8 Principal Distribution  Amount  for that  Payment  Date) and (2) the Note Balance of the Class M-9 Notes immediately prior to that Payment Date over  (B)  the  lesser  of (x)  the  product  of  (1)  the applicable  Subordination  Percentage  and (2) the Pool  Balance after giving effect to  distributions to be made on that Payment Date and (y) the excess of the Pool Balance  after giving effect to  distributions  to be made on that  Payment  Date,  over  the Reserve Amount Floor.

In no event will the Class M-9 Principal  Distribution Amount be greater than the Note Balance of the Class M-9 Notes.

Closing Date:  June 29, 2005.

Code:  The Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder.

Collateral: The meaning specified in the Granting Clause of the Indenture.

Collection Period:  As to any Payment Date, the calendar month preceding the month of that Payment Date.

Combined Loan-to-Value Ratio:  With respect to each Home Loan, the ratio, expressed as a percentage, of (i) the sum of (A) the original principal balance of such Home Loan, and (B) any outstanding principal balance, at origination of such Home Loan, of all other mortgage loans, if any, secured by senior or subordinate liens on the related Mortgaged Property, to (ii) the Appraised Value, or, if permitted by the Program Guide, a statistical valuation or the Stated Value.

Corporate Trust Office:  With respect to the Indenture Trustee, Certificate Registrar, Certificate Paying Agent and Paying Agent, the principal corporate trust office of the Indenture Trustee and Note Registrar at which at any particular time its corporate trust business shall be administered, which office at the date of the execution of this instrument is located at 4 New York Plaza, 6th Floor, New York, New York 10004, Attention: Worldwide Securities Services/Global Debt – Home Loan Trust 2005-HI2.  With respect to the Owner Trustee, the principal corporate trust office of the Owner Trustee at which at any particular time its corporate trust business shall be administered, which office at the date of the execution of this Trust Agreement is located at Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890, Attention: Corporate Trust Administration.

Credit Repository:  Equifax, Transunion and Experian, or their successors in interest.

Credit Scores: The figure assigned to a Home Loan that is designed to assess the Mortgagor's credit history which is obtained from credit reports provided by various credit reporting organizations and obtained by many lenders in connection with Home Loan applications to help assess a Mortgagor's creditworthiness.

Custodial Account:  The account or accounts created and maintained by the Master Servicer pursuant to Section 3.02(b) of the Servicing Agreement, in which the Master Servicer shall deposit or cause to be deposited certain amounts in respect of the Home Loans.

Custodial Agreement: Any Custodial Agreement among the Custodian, the Issuer and the Master Servicer relating to the custody of the Home Loans and the Related Documents.

Custodian:  Wells Fargo Bank, N.A., a national association, and its successors and assigns.

Cut-off Date:  June 1, 2005.

Cut-off Date Loan Balance:  With respect to any Home Loan, the unpaid principal balance thereof as of the close of business on the Business Day immediately prior to the Cut-off Date.

Default: Any occurrence which is or with notice or the lapse of time or both would become an Event of Default.

Deficient Valuation: With respect to any Home Loan, a valuation by a court of competent jurisdiction of the Mortgaged Property in an amount less than the then outstanding indebtedness under the Home Loan, or any reduction in the amount of principal to be paid in connection with any scheduled payment that constitutes a permanent forgiveness of principal, which valuation or reduction results from a proceeding under the Bankruptcy Code.

Definitive Notes: The meaning specified in Section 4.06 of the Indenture.

Deleted Loan: A Home Loan replaced or to be replaced with an Eligible Substitute Loan.

Delinquent: As used herein, a Home Loan is considered to be "30 to 59 days" or "30 or more days" delinquent when a payment due on any due date remains unpaid as of the close of business on the next following monthly due date. Since the determination as to whether a Home Loan falls into these categories is made as of the close of business on the last business day of each month, a Home Loan with a payment due on July 1 that remained unpaid as of the close of business on July 31 would still be considered current as of July 31. If that payment remained unpaid as of the close of business on August 31, the Home Loan would then be considered 30-59 days delinquent. Delinquency information as of the Cut-off Date is determined and prepared as of the close of business on the last business day immediately prior to the Cut-off Date.

Depositor: Residential Funding Mortgage Securities II, Inc., a Delaware corporation, or its successor in interest.

Depository or Depository Agency: The Depository Trust Company or a successor appointed by the Indenture Trustee with the approval of the Depositor. Any successor to the Depository shall be an organization registered as a "clearing agency" pursuant to Section 17A of the Exchange Act and the regulations of the Securities and Exchange Commission thereunder.

Depository Participant: A Person for whom, from time to time, the Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Derivative Contract: Any ISDA Master Agreement, together with the related schedule and confirmation, entered into by the Owner Trustee and a Derivative Counterparty in accordance with Section 5.06 of the Trust Agreement.

Derivative Counterparty: Any counterparty to a Derivative Contract as provided in Section 5.06 of the Trust Agreement.

Determination Date: With respect to any Payment Date, the 20th day of the month in which such Payment Date occurs or if such day is not a Business Day, the next succeeding Business Day.

Due Date: The date on which the Monthly Payment on the related Home Loan is due in accordance with the terms of the related Mortgage Note.

Eligible Account: An account that is any of the following: (i) maintained with a depository institution the short-term debt obligations of which have been rated by each Rating Agency in its highest rating category available, or (ii) an account or accounts in a depository institution in which such accounts are fully insured to the limits established by the FDIC, provided that any deposits not so insured shall, to the extent acceptable to each Rating Agency, as evidenced in

writing, be maintained such that (as evidenced by an Opinion of Counsel delivered to the Indenture Trustee and each Rating Agency) the Indenture Trustee has a claim with respect to the funds in such account or a perfected first security interest against any collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained, or (iii) in the case of the Custodial Account, either (A) a trust account or accounts maintained at the corporate trust department of the Indenture Trustee or (B) an account or accounts maintained at the corporate trust department of the Indenture Trustee, as long as its short term debt obligations are rated P-1 by Moody's and A-1+ by Standard & Poor's (or the equivalent) or better by each Rating Agency and its long term debt obligations are rated A2 by Moody's and AA- by Standard & Poor's (or the equivalent) or better, by each Rating Agency, or (iv) in the case of the Custodial Account and the Payment Account, a trust account or accounts maintained in the corporate trust division of the Indenture Trustee, or (v) an account or accounts of a depository institution acceptable to each Rating Agency (as evidenced in writing by each Rating Agency that use of any such account as the Custodial Account or the Payment Account will not reduce the rating assigned to any of the Securities by such Rating Agency as of the Closing Date by such Rating Agency).

Eligible Substitute Loan: A Home Loan substituted by the Seller for a Deleted Loan which must, on the date of such substitution, as confirmed in an Officers' Certificate delivered to the Indenture Trustee, (i) have an outstanding principal balance, after deduction of the principal portion of the monthly payment due in the month of substitution (or in the case of a substitution of more than one Home Loan for a Deleted Loan, an aggregate outstanding principal balance, after such deduction), not in excess of the outstanding principal balance of the Deleted Loan (the amount of any shortfall to be deposited by the Seller in the Custodial Account in the month of substitution); (ii) comply with each representation and warranty (other than a statistical representation or warranty) set forth in Section 3.1(b) of the Home Loan Purchase Agreement as of the date of substitution; (iii) have a Loan Rate no lower than and not more than 1% in excess of the Loan Rate of such Deleted Loan; (iv) have a Combined Loan-to-Value Ratio at the time of substitution no higher than that of the Deleted Loan at the time of substitution; (v) have, at the time of substitution, a remaining term to stated maturity not greater than (and not more than one year less than) that of the Deleted Loan; (vi) be ineligible for inclusion in a real estate mortgage investment conduit ("REMIC") (a "REMIC Ineligible Loan") if the Deleted Loan was a REMIC Ineligible Loan (because (a) the value of the real property securing the Deleted Loan was not at least equal to eighty percent of the adjusted issue price of such loan at the time of origination, calculated by subtracting the amount of any liens that are senior to such Home Loan and a proportionate amount of any lien of equal priority from the value of such property when the Deleted Loan was originated and (b) substantially all of the proceeds of the Deleted Loan were not used to acquire, improve or protect an interest in the real property securing such loan and such real property was the only security for such Deleted Loan); and (vii) not be 30 or more days delinquent.

ERISA: The Employee Retirement Income Security Act of 1974, as amended.

Event of Default: With respect to the Indenture, any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(i) a default in the payment of any interest on any Note when the same becomes due and payable, and such default shall continue for a period of five days; or

(ii) a default in the payment of the principal of or any installment of the principal of any Note when the same becomes due and payable, and such default shall continue for a period of five days; or

(iii) there occurs a default in the observance or performance of any covenant or agreement of the Issuer made in the Indenture, or any representation or warranty of the Issuer made in the Indenture or in any certificate or other writing delivered pursuant hereto or in connection herewith proving to have been incorrect in any material respect as of the time when the same shall have been made which has a material adverse effect on Securityholders, and such default shall continue or not be cured, or the circumstance or condition in respect of which such representation or warranty was incorrect shall not have been eliminated or otherwise cured, for a period of 30 days after there shall have been given, by registered or certified mail, to the Issuer by the Indenture Trustee or to the Issuer and the Indenture Trustee by the Holders of at least 25% of the outstanding Note Balance of the Notes, a written notice specifying such default or incorrect representation or warranty and requiring it to be remedied and stating that such notice is a notice of default hereunder; or

(iv) there occurs the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of the Issuer or any substantial part of the Trust Estate in an involuntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Trust Estate, or ordering the winding-up or liquidation of the Issuer's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or

(v) there occurs the commencement by the Issuer of a voluntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by the Issuer to the entry of an order for relief in an involuntary case under any such law, or the consent by the Issuer to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the assets of the Trust Estate, or the making by the Issuer of any general assignment for the benefit of creditors, or the failure by the Issuer generally to pay its debts as such debts become due, or the taking of any action by the Issuer in furtherance of any of the foregoing.

Event of Servicer Termination: With respect to the Servicing Agreement, a Servicing Default as defined in Section 7.01 of the Servicing Agreement.

Excess Reserve Amount: With respect to any Payment Date, the lesser of (i) the excess, if any, of the Outstanding Reserve Amount (after application of the Principal Collections and any Liquidation Loss Distribution Amounts for such Payment Date (assuming that the Net Monthly Excess Cash Flow is determined solely with respect to clause (i) of the definition thereof)) over the Reserve Amount Target and (ii) the Principal Collections for that Payment Date.

Exchange Act: The Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

Expenses:  The meaning specified in Section 7.02 of the Trust Agreement.

FDIC:  The Federal Deposit Insurance Corporation or any successor thereto.

FHLMC:  The Federal Home Loan Mortgage Corporation, or any successor thereto.

Final Scheduled Payment Date: The Payment Date in October 2013 with respect to the Class A-1 Notes, April 2015 with respect to the Class A-2 Notes, September 2018 with respect to the Class A- 3 Notes, February 2020 with respect to the Class A-4 Notes, and May 2035 with respect to the Class A-5 and Class M Notes.

FNMA:  The Federal National Mortgage Association, or any successor thereto.

Foreclosure Profit: With respect to a Liquidated Home Loan, the excess, if any, of (x) Net Liquidation Proceeds over (y) the sum of (a) the Loan Balance of the related Home Loan immediately prior to the date it became a Liquidated Home Loan, less any Net Liquidation Proceeds previously received with respect to such Home Loan and applied as a recovery of principal, and (b) accrued and unpaid interest on the related Home Loan at the Net Loan Rate through the date of receipt of the proceeds.

Grant: Pledge, bargain, sell, warrant, alienate, remise, release, convey, assign, transfer, create, and grant a lien upon and a security interest in and right of set-off against, deposit, set over and confirm pursuant to the Indenture. A Grant of the Collateral or of any other agreement or instrument shall include all rights, powers and options (but none of the obligations) of the granting party thereunder, including the immediate and continuing right to claim for, collect, receive and give receipt for principal and interest payments in respect of such collateral or other agreement or instrument and all other moneys payable thereunder, to give and receive notices and other communications, to make waivers or other agreements, to exercise all rights and options, to bring proceedings in the name of the granting party or otherwise, and generally to do and receive anything that the granting party is or may be entitled to do or receive thereunder or with respect thereto.

Holder:  Any of the Noteholders or Certificateholders.

Homeownership Act:  The Home Ownership Protection Act of 1994.

Home Loans:  At any time, the Home Loans that have been sold by the Seller under the Home Loan Purchase Agreement, together with the Related Documents, and that remain subject to the terms thereof.

Home Loan Purchase Agreement: The Home Loan Purchase Agreement, between the Seller, as seller, and the Depositor, as purchaser, with respect to the Home Loans, dated as of the Cut-off Date.

Home Loan Schedule: The initial schedule of Home Loans as of the Cut-off Date set forth in Exhibit A of the Servicing Agreement, which schedule sets forth as to each Home Loan, among other things:

(i) the Home Loan identifying number ("RFC LOAN #");

(ii) the state, city and zip code of the Mortgaged Property;

(iii) the maturity of the Mortgage Note ("MATURITY DATE");

(iv) the Loan Rate ("CUR RATE");

(v) the Principal Balance at origination ("ORG AMT");

(vi) the type of property securing the Mortgage Note ("PROPERTY TYPE");

(vii) the appraised value ("APPRSL");

(viii) the initial scheduled monthly payment of principal, if any, and interest ("ORIGINAL P & I");

(ix) the Cut-off Date Loan Balance ("CUT-OFF BAL");

(x) the Combined Loan-to-Value Ratio at origination ("CLTV");

(xi) the date of the Mortgage Note ("NOTE DATE");

(xii) the original term to maturity of the Home Loan ("ORIGINAL TERM");

(xiii) under the column "OCCP CODE," a code indicating whether the Home Loan is secured by a non-owner occupied residence; (xiv) the Principal Balance of any Home Loan senior thereto ("SR BAL");

(xv) the Credit Score ("CR SCORE");

(xvi) the debt to income ratio ("DTI");

(xvii) product code ("PRODUCT CODE");

(xviii) loan purpose ("PURPOSE");

(xix) the lien position of the related Mortgage ("LIEN");

(xx) the Subservicer loan number (SERVICER LOAN #); and

(xxi) the remaining term of the Home Loan (REMAINING TERM).

Such schedule may consist of multiple reports that collectively set forth all of the information required.

Indemnified Party: The meaning specified in Section 7.02 of the Trust Agreement.

Indenture: The indenture dated as of June 29, 2005 between the Issuer, as debtor, and the Indenture Trustee, as indenture trustee.

Indenture Trustee: JPMorgan Chase Bank, N.A., and its successors and assigns or any successor indenture trustee appointed pursuant to the terms of the Indenture.

Independent: When used with respect to any specified Person, the Person (i) is in fact independent of the Issuer, any other obligor on the Notes, the Seller, the Issuer, the Depositor and any Affiliate of any of the foregoing Persons, (ii) does not have any direct financial or any material indirect financial interest in the Issuer, any such other obligor, the Seller, the Issuer, the Depositor or any Affiliate of any of the foregoing Persons and (iii) is not connected with the Issuer, any such other obligor, the Seller, the Issuer, the Depositor or any Affiliate of any of the foregoing Persons as an officer, employee, promoter, underwriter, trustee, partner, director or person performing similar functions.

Independent Certificate: A certificate or opinion to be delivered to the Indenture Trustee under the circumstances described in, and otherwise complying with, the applicable requirements of Section 10.01 of the Indenture, made by an Independent appraiser or other expert appointed by an Issuer Order and approved by the Indenture Trustee in the exercise of reasonable care, and such opinion or certificate shall state that the signer has read the definition of "Independent" in this Indenture and that the signer is Independent within the meaning thereof.

Initial Certificate: The Home Loan-Backed Certificates, Series 2005-HI2, issued on the Closing Date, each evidencing undivided beneficial interests in the Issuer and executed by the Owner Trustee.

Initial Note Balance: With respect to the Class A-1 Notes, $78,315,000, with respect to the Class A-2 Notes, $20,999,000, with respect to the Class A-3 Notes, $43,781,000, with respect to the Class A-4 Notes, $15,951,000, with respect to the Class A-5 Notes, $28,154,000, with respect to the Class M-1 Notes, $9,000,000, with respect to the Class M-2 Notes, $7,800,000, with respect to the Class M-3 Notes, $7,200,000, with respect to the Class M-4 Notes, $6,000,000, with respect to the Class M-5 Notes, $5,400,000, with respect to the Class M-6 Notes, $4,200,000, with respect to the Class M-7 Notes, $4,800,000, with respect to the Class M-8 Notes, $5,160,000 and with respect to the Class M-9 Notes, $3,240,000.

Insolvency Event: With respect to a specified Person, (a) the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of such Person or any substantial part of its property in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for such Person or for any substantial part of its property, or ordering the winding-up or liquidation of such Person's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or (b) the commencement by such Person of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by such Person to the entry of an order for relief in an involuntary case under any such law, or the consent by such Person to the appointment of or taking possession by a receiver,

liquidator, assignee, custodian, trustee, sequestrator or similar official for such Person or for any substantial part of its property, or the making by such Person of any general assignment for the benefit of creditors, or the failure by such Person generally to pay its debts as such debts become due or the admission by such Person in writing (as to which the Indenture Trustee shall have notice) of its inability to pay its debts generally, or the adoption by the Board of Directors or managing member of such Person of a resolution which authorizes action by such Person in furtherance of any of the foregoing.

Insurance Proceeds: Proceeds paid by any insurer pursuant to any insurance policy covering a Home Loan which are required to be remitted to the Master Servicer, or amounts required to be paid by the Master Servicer pursuant to the next to last sentence of Section 3.04 of the Servicing Agreement, net of any component thereof (i) covering any expenses incurred by or on behalf of the Master Servicer in connection with obtaining such proceeds, (ii) that is applied to the restoration or repair of the related Mortgaged Property, (iii) released to the Mortgagor in accordance with the Master Servicer's normal servicing procedures or (iv) required to be paid to any holder of a mortgage senior to such Home Loan.

Interest Accrual Period: With respect to the Notes (other than the Class A-1 Notes) and as to any Payment Date, will be the calendar month preceding the month in which the related Payment Date occurs. With respect to the Class A-1 Notes and any Payment Date other than the first Payment Date, the period beginning on the preceding Payment Date and ending on the day preceding such Payment Date, and in the case of the first Payment Date, the period beginning on the Closing Date and ending on the day preceding the first Payment Date.

Interest Collections: With respect to any Payment Date, the sum of (i) the portion allocable to interest of all scheduled monthly payments on the Home Loans received during the related Collection Period reduced by the Administrative Fees for such Collection Period, (ii) the portion of all Net Liquidation Proceeds and proceeds from repurchases of, and some amounts received in connection with any substitutions for, the related Home Loans, received or deemed received during the related Collection Period, reduced by any related Administrative Fees for that Collection Period, (iii) the interest portion of the Repurchase Price for any Deleted Loans and the interest portion of the cash purchase price paid in connection with any optional purchase of the Home Loans by the Master Servicer and (iv) any proceeds and recoveries received during the related Collection Period on a Home Loan after it becomes a Liquidated Home Loan allocated to Interest Collections in accordance with the last paragraph of Section 3.07 of the Servicing Agreement, reduced by the Administrative Fees for such Collection Period.

Issuer or Trust: The Home Loan Trust 2005-HI2, a Delaware statutory trust, or its successor in interest.

Issuer Request: A written order or request signed in the name of the Issuer by any one of its Authorized Officers and delivered to the Indenture Trustee.

LIBOR: For any Interest Accrual Period other than the first Interest Accrual Period, the rate for United States dollar deposits for one month which appears on the Dow Jones Telerate Screen Page 3750 as of 11:00 A.M., London, England time, on the second LIBOR Business Day prior to the first day of such Interest Accrual Period. With respect to the first Interest Accrual Period, the rate for United States dollar deposits for one month which appears on the Dow Jones Telerate Screen Page 3750 as of 11:00 A.M., London, England time, two LIBOR Business Days prior to the Closing Date. If such rate does not appear on such

page (or such other page as may replace that page on that service, or if such service is no longer offered, such other service for displaying LIBOR or comparable rates as may be reasonably selected by the Indenture Trustee after consultation with the Master Servicer), the rate will be the Reference Bank Rate. If no such quotations can be obtained and no Reference Bank Rate is available, LIBOR will be LIBOR applicable to the preceding Payment Date.

LIBOR Business Day: Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the city of London, England are required or authorized by law to be closed.

Lien: Any mortgage, deed of trust, pledge, conveyance, hypothecation, assignment, participation, deposit arrangement, encumbrance, lien (statutory or other), preference, priority right or interest or other security agreement or preferential arrangement of any kind or nature whatsoever, including, without limitation, any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing and the filing of any financing statement under the UCC (other than any such financing statement filed for informational purposes only) or comparable law of any jurisdiction to evidence any of the foregoing; provided, however, that any assignment pursuant to Section 6.02 of the Servicing Agreement shall not be deemed to constitute a Lien.

Limited Repurchase Right Holder: The Master Servicer.

Liquidated Home Loan: As to any Payment Date, any Home Loan which the Master Servicer has determined, based on the servicing procedures specified in the Servicing Agreement, as of the end of the preceding Collection Period, that all Liquidation Proceeds which it expects to recover in connection with the disposition of the related Mortgaged Property have been recovered. In addition, the Master Servicer will treat any Home Loan that is 180 days or more delinquent as having been finally liquidated.

Liquidation Expenses: Out-of-pocket expenses (exclusive of overhead) which are incurred by or on behalf of the Master Servicer in connection with the liquidation of any Home Loan and not recovered under any insurance policy, such expenses including, without limitation, legal fees and expenses, any unreimbursed amount expended (including, without limitation, amounts advanced to correct defaults on any loan which is senior to such Home Loan and amounts advanced to keep current or pay off a loan that is senior to such Home Loan) respecting the related Home Loan and any related and unreimbursed expenditures for real estate property taxes or for property acquisition, restoration, preservation or disposition, or insurance against casualty loss or damage.

Liquidation Loss Amount: With respect to any Payment Date and any Home Loan that became a Liquidated Home Loan during the related Collection Period, the unrecovered portion of the related Loan Balance thereof at the end of such Collection Period, after giving effect to the Net Liquidation Proceeds applied to reduce the related Loan Balance. In addition, as to any Home Loan for which the principal balance has been reduced in connection with bankruptcy proceedings, the amount of the reduction will be treated as a Liquidation Loss Amount.

Liquidation Loss Distribution Amount: As to any Payment Date, an amount equal to the lesser of (i) 100% of the Liquidation Loss Amounts incurred on the related Home Loans during the related Collection Period and (ii) the Net Monthly Excess Cash Flow available for payment of the Liquidation Loss Distribution Amount for that Payment Date, as provided in clause (i) of Section 3.05(d) of the Indenture.

Liquidation Proceeds: Proceeds (including Insurance Proceeds) if any received in connection with the liquidation of any Home Loan or related REO, whether through trustee's sale, foreclosure sale, the exercise of the power of eminent domain or condemnation or otherwise.

Loan Balance: With respect to any Home Loan, other than a Liquidated Home Loan, and as of any day, the related Cut-off Date Loan Balance, minus all collections in respect of principal in accordance with the related Mortgage Note and applied in reduction of the Loan Balance thereof. For purposes of this definition, a Liquidated Home Loan shall be deemed to have a Loan Balance equal to zero.

Loan Rate or Mortgage Rate: With respect to any Home Loan and any day, the per annum rate of interest set forth in the related Mortgage Note.

Lost Note Affidavit: With respect to any Home Loan as to which the original Mortgage Note has been permanently lost or destroyed and has not been replaced, an affidavit from the Seller certifying that the original Mortgage Note has been lost, misplaced or destroyed (together with a copy of the related Mortgage Note).

Master Servicer: Residential Funding Corporation, a Delaware corporation, and its successors and assigns.

Master Servicing Fee: With respect to any Home Loan and any Collection Period, the product of (i) the Master Servicing Fee Rate divided by 12 and (ii) the Loan Balance of such Home Loan as of the first day of such Collection Period.

Master Servicing Fee Rate: With respect to any Home Loan, 0.08% per annum.

Monthly Payment: With respect to any Home Loan (including any REO Property) and any Due Date, the payment of principal and interest due thereon in accordance with the amortization schedule at the time applicable thereto (after adjustment, if any, for partial prepayments and for Deficient Valuations occurring prior to such Due Date but before any adjustment to such amortization schedule by reason of any bankruptcy, other than a Deficient Valuation, or similar proceeding or any moratorium or similar waiver or grace period).

Moody's: Moody's Investors Service, Inc. or its successor in interest.

Mortgage: The mortgage, deed of trust or other instrument creating a first or second lien on an estate in fee simple interest in real property securing a Home Loan.

Mortgage File: The file containing the Related Documents pertaining to a particular Home Loan and any additional documents required to be added to the Mortgage File pursuant to the Home Loan Purchase Agreement or the Servicing Agreement.

Mortgage Note:  With respect to a Home Loan, the mortgage note pursuant to which the related mortgagor agrees to pay the indebtedness evidenced thereby and secured by the related Mortgage as modified or amended.

Mortgaged Property:  The underlying property, including real property and improvements thereon, securing a Home Loan.

Mortgagor:  The obligor or obligors under a Mortgage Note.

Net Liquidation Proceeds:  As to any Liquidated Home Loan, the proceeds, including Insurance Proceeds, received in connection with the liquidation of the Home Loan, whether through trustee's sale, foreclosure sale or otherwise, reduced by related expenses, but not including the portion, if any, of the proceeds that exceed the principal balance of the Home Loan at the end of the Collection Period immediately preceding the Collection Period in which the Home Loan became a Liquidated Home Loan.

Net Loan Rate:  With respect to any Home Loan and any date of determination, a per annum rate of interest equal to the then applicable Loan Rate for such Home Loan minus the Servicing Fee Rate.

Net Monthly Excess Cash Flow:  For any Payment Date, the sum of (i) the excess, if any, of (a) Interest Collections for that Payment Date over (b) the amount payable to the Notes in respect of interest as provided in subsection (b) of Section 3.05 of the Indenture and (ii) the Excess Reserve Amount for that Payment Date.

Note Balance:  With respect to any Payment Date and any Class of Notes, the Initial Note Balance thereof reduced by the sum of (x) all payments of the Principal Distribution Amount thereon prior to and as of such Payment Date and (y) in the case of the Class M Notes, the aggregate, cumulative amount of Liquidation Loss Amounts allocated thereto on all prior Payment Dates.

Note Owner:  The Beneficial Owner of a Note.

Note Rate: With respect to the Class A-1 Notes, will be the lesser of (a) LIBOR plus 0.14% per annum and (b) 7.500% per annum; with respect to the Class A-2 Notes, 4.37% per annum; with respect to the Class A-3 Notes, 4.46% per annum; with respect to the Class A-4 Notes, 4.84% per annum; with respect to the Class A-5 Notes, 5.08% per annum; with respect to the Class M-1 Notes, 5.11% per annum; with respect to the Class M-2 Notes, 5.24% per annum; with respect to the Class M-3 Notes, 5.32% per annum; with respect to the Class M-4 Notes, 5.46% per annum; with respect to the Class M-5 Notes, 5.61% per annum; with respect to the Class M-6 Notes, 5.71% per annum; with respect to the Class M-7 Notes, 5.81% per annum; with respect to the Class M-8 Notes, 6.00% per annum; with respect to the Class M-9 Notes, 7.04% per annum; provided, that on the Step-Up Date, the Note Rate on the Class A-5, Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8 and Class M-9 Notes shall increase by 0.50% per annum.

Note Register:  The register  maintained by the Note Registrar in which the Note Registrar  shall  provide  for  the  registration  of Notes and of  transfers  and exchanges of Notes.

Note Registrar:   The Indenture Trustee, in its capacity as Note Registrar.

Noteholder: The Person in whose name a Note is registered in the Note Register, except that, any Note registered in the name of the Depositor, the Issuer or the Indenture  Trustee  or any  Affiliate  of any of them  shall be deemed not to be outstanding  and the  registered  holder will not be  considered a Noteholder or holder for purposes of giving any  request,  demand,  authorization,  direction, notice,  consent or waiver under the Indenture or the Trust  Agreement  provided that, in determining whether the Indenture Trustee shall be protected in relying upon any such request,  demand,  authorization,  direction,  notice,  consent or waiver,  only Notes that the Indenture  Trustee or the Owner Trustee knows to be so owned shall be so disregarded. Owners of Notes that have been pledged in good faith may be regarded as Holders if the pledgee  establishes to the satisfaction of the Indenture Trustee or the Owner Trustee the pledgee's right so to act with respect to such Notes and that the pledgee is not the Issuer,  any other obligor upon the Notes or any Affiliate of any of the foregoing Persons.

Notes: Any one of the Class A-1,  Class A-2,  Class A-3, Class A-4, Class A- 5, Class M-1,  Class M-2,  Class M-3,  Class M-4,  Class M-5, Class M-6, Class M-7, Class M-8 or Class M-9 Notes issued and  outstanding at any time pursuant to the Indenture.

Officer's Certificate: With respect to the Master Servicer, a certificate signed by  the  President,  Managing  Director,  a  Director,  a Vice  President  or an Assistant Vice President,  of the Master Servicer and delivered to the Indenture Trustee.  With respect to the Issuer,  a  certificate  signed by any  Authorized Officer of the  Issuer,  under the  circumstances  described  in, and  otherwise complying  with, the  applicable  requirements of Section 10.01 of the Indenture, and  delivered  to  the  Indenture  Trustee.  Unless  otherwise  specified,  any reference in the Indenture to an Officer's  Certificate shall be to an Officer's Certificate of any Authorized Officer of the Issuer.

Opinion of Counsel: A written opinion of counsel. Any Opinion of Counsel for the Master  Servicer may be provided by in-house  counsel for the Master Servicer if reasonably  acceptable  to  the  Indenture  Trustee  and the Rating  Agencies  or counsel for the Depositor, as the case may be.

Optional Redemption: The right of the Master Servicer to purchase the Home Loans on any Payment Date on which the aggregate  Principal  Balance of the Home Loans as of the end of the related  Collection  Period is less than 10% of the Cut-off Date Balance, pursuant to Section 8.08 of the Servicing Agreement.

Original  Trust  Agreement:  The  Trust  Agreement,  dated as of June 27,  2005, between the Owner Trustee and the Depositor.

Outstanding:  With respect to the Notes,  as of the date of  determination,  all Notes  theretofore  executed,  authenticated  and delivered under this Indenture except:

(i) Notes  theretofore  cancelled  by the Note  Registrar  or  delivered  to the Indenture Trustee for cancellation; and

(ii) Notes in exchange  for or in lieu of which other Notes have been  executed,
authenticated and delivered  pursuant to the Indenture unless proof satisfactory
to the Indenture  Trustee is presented  that any such Notes are held by a holder
in due course.

Outstanding  Reserve  Amount:  With respect to any Payment Date, the amount,  if
any,  by which (i) the Pool  Balance  after  applying  payments  received in the
related  Collection Period exceeds (ii) the sum of the aggregate Note Balance of
the Notes on such Payment Date after  application of Principal  Collections  and
the  Liquidation Loss Amounts for that Payment Date.

Owner  Trustee:  Wilmington  Trust  Company not in its  individual  capacity but
solely as Owner  Trustee of the Trust, and its  successors  and  assigns or any
successor owner trustee appointed pursuant to the terms of the Trust Agreement.

Paying Agent: Any paying agent or co-paying agent appointed  pursuant to Section
3.03 of the Indenture, which initially shall be the Indenture Trustee.

Payment Account:  The account  established by the Indenture  Trustee pursuant to
Section  8.02 of the  Indenture  and Section  5.01 of the  Servicing  Agreement.
Amounts  deposited in the Payment  Account will be  distributed by the Indenture
Trustee in accordance with Section 3.05 of the Indenture.

Payment Date: The 25th day of each month,  or if such day is not a Business Day,
then the next Business Day.

Percentage Interest: With respect to any Note and any date of determination, the
percentage  obtained by dividing the Note Balance of such Note, by the aggregate
of the Note Balances of all Notes of the same Class.

Permitted Investments:  One or more of the following:


        (i)  obligations of or guaranteed as to principal and interest by
the United States or any agency or instrumentality thereof when such obligations
are backed by the full faith and credit of the United States;

        (vi) repurchase agreements on obligations specified in clause (i)
maturing not more than one month from the date of acquisition thereof,  provided
that  the  unsecured  obligations  of the  party  agreeing  to  repurchase  such
obligations  are  at the  time  rated  by each  Rating  Agency  in its  highest
short-term rating category available;

        (vii) federal funds,  certificates of deposit,  demand  deposits,
time  deposits  and bankers'  acceptances  (which  shall each have an  original
maturity  of not more than 90 days and,  in the case of  bankers'  acceptances,
shall in no event have an original maturity of more than 365 days or a remaining
maturity of more than 30 days)  denominated in United States dollars of any U.S.
depository  institution  or trust  company  incorporated  under  the laws of the
United  States  or any  state  thereof  or of any  domestic  branch of a foreign
depository  institution or trust company;  provided that the debt obligations of
such  depository  institution or trust company (or, if the only Rating Agency is
Standard & Poor's,  in the case of the  principal  depository  institution  in a

depository institution holding company, debt obligations of the depository institution holding company) at the date of acquisition thereof have been rated by each Rating Agency in its highest short-term rating category available; and provided further that, if the only Rating Agency is Standard & Poor's and if the depository or trust company is a principal subsidiary of a bank holding company and the debt obligations of such subsidiary are not separately rated, the applicable rating shall be that of the bank holding company; and, provided further that, if the original maturity of such short-term obligations of a domestic branch of a foreign depository institution or trust company shall exceed 30 days, the short-term rating of such institution shall be A-1+ in the case of Standard & Poor's if Standard & Poor's is the Rating Agency;

(viii) commercial paper (having original maturities of not more than 365 days) of any corporation incorporated under the laws of the United States or any state thereof which on the date of acquisition has been rated by each Rating Agency in its highest short-term rating category available; provided that such commercial paper shall have a remaining maturity of not more than 30 days;

(ix) a money market fund or a qualified investment fund rated by each Rating Agency in its highest long-term rating category available; and

(x) other obligations or securities that are acceptable to each Rating Agency as an Permitted Investment hereunder and will not reduce the rating assigned to any Securities by such Rating Agency below the lower of the then-current rating or the rating assigned to such Securities as of the Closing Date by such Rating Agency, provided that if the Master Servicer or any other Person controlled by the Master Servicer is the issuer or the obligor of any obligation or security described in this clause (vi) such obligation or security must have an interest rate or yield that is fixed or is variable based on an objective index that is not affected by the rate or amount of losses on the Home Loans;

provided, however, that no instrument shall be a Permitted Investment if it represents, either (1) the right to receive only interest payments with respect to the underlying debt instrument or (2) the right to receive both principal and interest payments derived from obligations underlying such instrument and the principal and interest payments with respect to such instrument provide a yield to maturity greater than 120% of the yield to maturity at par of such underlying obligations References herein to the highest rating available on unsecured long-term debt shall mean AAA in the case of Standard & Poor's and Aaa in the case of Moody's, and references herein to the highest rating available on unsecured commercial paper and short-term debt obligations shall mean A-1+ in the case of Standard & Poor's and P-1 in the case of Moody's.

Person: Any legal individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Plan: Any employee benefit plan subject to ERISA and any plan or other arrangement described in Section 4975(e)(1) of the Code.

Plan Assets: The assets of a Plan as determined under Department of Labor regulation section 2510.3-101 or other applicable law.

Pool Balance: With respect to any date, the aggregate of the Loan Balances of all Home Loans as of such date.

Predecessor Note: With respect to any particular Note, every previous Note evidencing all or a portion of the same debt as that evidenced by such particular Note; and, for the purpose of this definition, any Note authenticated and delivered under Section 4.03 of the Indenture in lieu of a mutilated, lost, destroyed or stolen Note shall be deemed to evidence the same debt as the mutilated, lost, destroyed or stolen Note.

Prepayment Assumption: A 100% Prepayment Assumption used solely for determining the accrual of original issue discount, market discount and premium, if any, on the Notes for federal income tax purposes. A 100% Prepayment Assumption assumes a constant prepayment rate of 2% per annum for the first month, increasing each month by an additional 1.285714% until the fifteenth month. Beginning in the fifteenth month and in each month thereafter during the life of the Home Loans, a 100% Prepayment Assumption assumes a constant prepayment rate of 20% per annum each month.

Principal Collections: As to any Payment Date, an amount equal to the sum of:

(i) the principal portion of all scheduled Monthly Payments on the related Home Loans received during the related Collection Period;

(ii) the principal portion of all proceeds of the repurchase of any Home Loans (or, in the case of a substitution, any Substitution Adjustment Amounts) as required by the Servicing Agreement received during the related Collection Period and the principal portion of the cash purchase price paid in connection with any optional purchase of the Home Loans by the Master Servicer; and

(iii) the principal portion of all other unscheduled collections received on the Home Loans during the related Collection Period (or deemed to be received during the related Collection Period) (including, without limitation, full and partial Principal Prepayments made by the respective Mortgagors, Insurance Proceeds and Net Liquidation Proceeds), to the extent not previously distributed;

provided, however, that Principal Collections shall be reduced by any amounts withdrawn from the Custodial Account pursuant to Section 3.03(ii), (v), (vi) and (vii) of the Servicing Agreement.

Principal Distribution Amount: As to any Payment Date, the sum of the following:

(i) the Principal Collections for that Payment Date;

(ii) any Liquidation Loss Distribution Amounts for that Payment Date; and

(iii) the amount of any Reserve Increase Amount for that Payment Date;

        minus

(iv) the amount of any Excess Reserve Amount for that Payment Date.

Principal Prepayment: Any payment of principal made by the Mortgagor on a Home Loan which is received in advance of its scheduled Due Date and which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Proceeding: Any suit in equity, action at law or other judicial or administrative proceeding.

Program Guide: Together, the Seller's Seller Guide and Servicing Guide, as in effect from time to time.

Prospectus Supplement: The prospectus supplement, dated June 24, 2005, relating to the issuance of the Home Loan-Backed Notes, Series 2005-HI2.

Purchase Price: The meaning specified in Section 2.2(a) of the Home Loan Purchase Agreement.

Purchaser: Residential Funding Mortgage Securities II, Inc., a Delaware corporation, and its successors and assigns.

Qualified Insurer: A mortgage guaranty insurance company duly qualified as such under the laws of the state of its principal place of business and each state having jurisdiction over such insurer in connection with the insurance policy issued by such insurer, duly authorized and licensed in such states to transact a mortgage guaranty insurance business in such states and to write the insurance provided by the insurance policy issued by it, approved as an insurer by the Master Servicer and as a FNMA-approved mortgage insurer.

Rating Agency: Any nationally recognized statistical rating organization, or its successor, that rated the Securities at the request of the Depositor at the time of the initial issuance of the Securities, which initially shall be Moody's or Standard & Poor's. If such organization or a successor is no longer in existence, "Rating Agency" shall be such nationally recognized statistical rating organization, or other comparable Person, designated by the Depositor, notice of which designation shall be given to the Indenture Trustee. References herein to the highest short term unsecured rating category of a Rating Agency shall mean A-1 or better in the case of Standard & Poor's and P-1 or better in the case of Moody's and in the case of any other Rating Agency shall mean such equivalent ratings. References herein to the highest long-term rating category of a Rating Agency shall mean "AAA" in the case of Standard & Poor's and "Aaa" in the case of Moody's and in the case of any other Rating Agency, such equivalent rating.

Record Date: With respect to the Class A-1 Notes and any Payment Date, the Business Day next preceding such Payment Date and with respect to the Notes (other than the Class A-1 Notes) and the Certificates and any Payment Date, the last Business Day of the month preceding the month of such Payment Date.

Reference Bank Rate: With respect to any Interest Accrual Period, as follows: the arithmetic mean (rounded upwards, if necessary, to the nearest one sixteenth of a percent) of the offered rates for United States dollar deposits for one month which are offered by the Reference Banks as of 11:00 A.M., London, England time, on the second LIBOR Business Day prior to the first day of such Interest Accrual Period to prime banks in the London interbank market for a period of one month in amounts approximately equal to the sum of the outstanding Note Balance of the Class A-1 Notes; provided that at least two such Reference Banks provide such rate. If fewer than two offered rates appear, the Reference Bank Rate will be the arithmetic mean of the rates quoted by one or more major banks in New York City, selected by the Indenture Trustee after consultation with the Master Servicer, as of 11:00 a.m., New York time, on such date for loans in U.S. Dollars to leading European Banks for a period of one month in amounts

approximately equal to the aggregate Note Balance of the Class A-1 Notes. If no such quotations can be obtained, the Reference Bank Rate shall be LIBOR applicable to the preceding Payment Date; provided however, that if, under the priorities indicated above, LIBOR for a Payment Date would be based on LIBOR for the previous Payment Date for the third consecutive Payment Date, the Indenture Trustee shall select an alternative comparable index over which the Indenture Trustee has no control, used for determining one-month Eurodollar lending rates that is calculated and published or otherwise made available by an independent party.

Reference Banks: Barclays Bank PLC, Credit Suisse and Abbey National PLC.

Registered Holder: The Person in whose name a Note is registered in the Note Register on the applicable Record Date.

Related Documents: With respect to each Home Loan, the documents specified in Section 2.1(c) of the Home Loan Purchase Agreement and any documents required to be added to such documents pursuant to the Home Loan Purchase Agreement, the Trust Agreement or the Servicing Agreement.

Release Agreement: A Release Agreement as defined in Section 3.05 of the Servicing Agreement.

REO: A Mortgaged Property that is acquired by the Issuer in foreclosure or by deed in lieu of foreclosure.

Repurchase Event: With respect to any Home Loan, one of the following: (i) a discovery that, as of the Closing Date, the related Mortgage was not a valid lien on the related Mortgaged Property subject only to (A) the lien of any prior mortgage indicated on the Home Loan Schedule, (B) the lien of real property taxes and assessments not yet due and payable, (C) covenants, conditions, and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage and such other permissible title exceptions as are listed in the Program Guide and (D) other matters to which like properties are commonly subject which do not materially adversely affect the value, use, enjoyment or marketability of the related Mortgaged Property, or (ii) with respect to any Home Loan as to which the Seller delivers a Lost Note Affidavit, a subsequent default on such Home Loan if the enforcement thereof or of the related Mortgage is materially and adversely affected by the absence of the original Mortgage Note.

Repurchase Price: With respect to any Home Loan required to be repurchased on any date pursuant to the Home Loan Purchase Agreement or purchased by the Master Servicer or the Limited Repurchase Right Holder pursuant to the Servicing Agreement, an amount equal to the sum of (i) 100% of the Loan Balance thereof (without reduction for any amounts charged off) and (ii) unpaid accrued interest at the Loan Rate (or with respect to the last day of the month in the month of repurchase, the Loan Rate will be the Loan Rate in effect as to the second to last day in such month) on the outstanding principal balance thereof from the Due Date to which interest was last paid by the Mortgagor to the first day of the month following the month of purchase.

Request for Release:  The form attached as Exhibit 4 to the Custodial  Agreement
or an electronic request in a form acceptable to the Custodian.

Reserve  Amount  Floor:  An amount  equal to 0.50% of the Pool Balance as of the
Cut-off Date.

Reserve  Amount  Target:  As to any Payment Date prior to the Stepdown  Date, an
amount equal to 3.75% of the aggregate Cut-off Date Pool Balance. On any Payment
Date on or after the Stepdown Date so long as no Trigger Event is in effect, the
Reserve Amount Target will be equal to the greater of:

        (a) 7.50% of the Pool Balance after  applying  payments  received in the
related Collection Period; and

        (b)     the Reserve Amount Floor;

provided,  however, that any scheduled reduction to the Reserve Amount Target on
or after the Stepdown  Date as described  above shall not be made on any Payment
Date when a Trigger  Event is in  effect.  On any  Payment  Date on or after the
Stepdown  Date, if a Trigger Event is in effect,  the Reserve Amount Target will
equal the Reserve Amount Target on the previous  Payment Date. In addition,  the
Reserve  Amount Target may be reduced with the consent of the Rating Agencies but
without the consent of the Noteholders.

Reserve Increase  Amount:  With respect to the any Payment Date, an amount equal
to the lesser of (i) the Net Monthly  Excess Cash Flow  available for payment of
the Reserve Increase Amount for that Payment Date, as provided in clause (ii) of
Section 3.05(d) of the Indenture and (ii) the excess,  if any of (x) the Reserve
Amount Target over (y) the Outstanding Reserve Amount.

Responsible  Officer:  With respect to the Indenture Trustee, any officer of the
Indenture  Trustee,  with direct  responsibility  for the  administration of the
Indenture,  , as applicable,  and also, with respect to a particular matter, any
other  officer  to whom such  matter  is  referred  because  of such officer's
knowledge of and familiarity with the particular subject.

Sale:  The meaning specified in Section 5.15 of the Indenture.

Securities  Act:  The  Securities  Act of 1933,  as  amended,  and the rules and
regulations promulgated thereunder.

Security:  Any of the Certificates or Notes.

Securityholder or Holder:  Any Noteholder or a Certificateholder.

Security  Instrument:  A written  instrument  creating  a valid  first lien on a
Mortgaged Property securing a Mortgage Note, which may be any applicable form of
mortgage,  deed of trust,  deed to secure debt or security  deed,  including any
riders or addenda thereto.

Seller:  Residential  Funding  Corporation,  a  Delaware  corporation,  and  its
successors and assigns.

Senior Enhancement Percentage: With respect to each Payment Date on or after the Stepdown Date, a fraction (expressed as a percentage):

> (1) the numerator of which is the excess of:
>
> > (a) the aggregate Principal Balance of the Home Loans for the preceding Payment Date over
> >
> > (b) (i) before the Note Principal Balances of the Class A Notes have been reduced to zero, the aggregate Note Principal Balance of the Class A Notes, or (ii) after the Note Principal Balances of the Class A Notes have been reduced to zero, the Note Principal Balance of the most senior Class of Notes outstanding immediately prior to such Payment Date and
> >
> > (2) the denominator of which is the aggregate Principal Balance of the Home Loans for the preceding Payment Date.

Senior Principal Distribution Amount: With respect to any Payment Date, (1) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect, the Principal Distribution Amount for that Payment Date, or (2) on or after the Stepdown Date if a Trigger Event is not in effect for that Payment Date, the lesser of:

o        the Principal Distribution Amount for that Payment Date; and

o        the excess of (A) the aggregate Note Balance of the Senior Notes immediately prior to that Payment Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the Pool Balance after giving effect to distributions to be made on that Payment Date and (y) the excess of the Pool Balance after giving effect to distributions to be made on that Payment Date, over the Reserve Amount Floor.

In no event will the Senior Principal Distribution Amount be greater than the aggregate Note Balance of the Class A Notes.

Servicing Agreement: The Servicing Agreement dated as of June 29, 2005 among the Indenture Trustee, the Issuer and the Master Servicer, as master servicer.

Servicing Certificate: A certificate prepared by a Servicing Officer on behalf of the Master Servicer in accordance with Section 4.01 of the Servicing Agreement.

Servicing Default: The meaning specified in Section 7.01 of the Servicing Agreement.

Servicing Fee: With respect to any Home Loan, the sum of the related Master Servicing Fee and the related Subservicing Fee.

Servicing Fee Rate: With respect to any Home Loan, the sum of the related Master Servicing Fee Rate and the related Subservicing Fee Rate.

Servicing Officer: Any officer of the Master Servicer involved in, or responsible for, the administration and servicing of the Home Loans whose name and specimen signature appear on a list of servicing officers furnished to the Indenture Trustee by the Master Servicer, as such list may be amended from time to time.

Sixty-Plus Delinquency Percentage: For any Payment Date, the fraction, expressed as a percentage, equal to the aggregate principal balance of the Home Loans that are 60 or more days delinquent in payment of principal and interest, including Home Loans in foreclosure and Home Loans in REO, over the Pool Balance.

Standard & Poor's: Standard & Poor's, a Division of The McGraw-Hill Companies, Inc. or its successor in interest.

Stated Value: The value of the Mortgaged Property as stated by the related Mortgagor in his or her application.

Statutory Trust Statute: Chapter 38 of Title 12 of the Delaware Code, 12 Del. Code ss.ss.3801 et seq., as the same may be amended from time to time.

Step-Up Date: The second Payment Date immediately following the Payment Date on which the Master Servicer can purchase all or some of the Home Loans from the Trust pursuant to Section 8.08 of the Servicing Agreement.

Stepdown Date: The later of (a) the Payment Date in July 2008 and (b) the first Payment Date on which the aggregate Pool Balance, after applying payments received in the related Collection Period, is less than or equal to 50.00% of the aggregate Pool Balance as of the Cut-off Date.

Subordinate Note: Any of the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8 or Class M-9 Notes.

Subordination Percentage: As to any Class of Notes, the following percentages: with respect to the Class A Notes, 48.50%, with respect to the Class M-1 Notes, 56.00%, with respect to the Class M-2 Notes, 62.50%, with respect to the Class M-3 Notes, 68.50%, with respect to the Class M-4 Notes, 73.50%, with respect to the Class M-5 Notes, 78.00%, with respect to the Class M-6 Notes, 81.50%, with respect to the Class M-7 Notes, 85.50%, with respect to the Class M-8 Notes, 89.80% and with respect to the Class M-9 Notes, 92.50%.

Subservicer: Any Person with whom the Master Servicer has entered into a Subservicing Agreement as a Subservicer by the Master Servicer.

Subservicing Account: An Eligible Account established or maintained by a Subservicer as provided for in Section 3.02(c) of the Servicing Agreement.

Subservicing Agreement: The written contract between the Master Servicer and any Subservicer relating to servicing and administration of certain Home Loans as provided in Section 3.01 of the Servicing Agreement.

Subservicing Fee: With respect to any Collection Period, the fee retained monthly by the Subservicer (or, in the case of a nonsubserviced Home Loan, by the Master Servicer) equal to the product of (i) the Subservicing Fee Rate divided by 12 and (ii) the Pool Balance as of the first day of such Collection Period.

Subservicing Fee Rate: With respect to each Home Loan, the amount payable to the related Subservicer, equal to 0.50% per annum.

Substitution Adjustment Amounts: With respect to any Eligible Substitute Loan, the amount as defined in Section 3.1(b) of the Home Loan Purchase Agreement and any Deleted Loan, the amount, if any, as determined by the Master Servicer, by which the aggregate principal balance of all such Eligible Substitute Loans as of the date of substitution is less than the aggregate principal balance of all such Deleted Loans (after application of the principal portion of the Monthly Payments due in the month of substitution that are to be distributed to the Payment Account in the month of substitution).

Termination Price: In the event that all of the Home Loans are purchased by the Master Servicer, the Termination Price will be an amount equal to 100% of the unpaid Loan Balance of each Home Loan so purchased, plus accrued and unpaid interest thereon at the weighted average of the Loan Rates through the day preceding the Payment Date on which such purchase occurs, plus any amounts owed by the Seller pursuant to the second paragraph of Section 3.1(c) of the Home Loan Purchase Agreement in respect of any liability, penalty or expense that resulted from a breach of the representation and warranty set forth in clause (x) of Section 3.1(b) of the Home Loan Purchase Agreement, that remain unpaid on the date of such purchase.

Treasury Regulations: Regulations, including proposed or temporary Regulations, promulgated under the Code. References herein to specific provisions of proposed or temporary regulations shall include analogous provisions of final Treasury Regulations or other successor Treasury Regulations.

Trigger Event: A Trigger Event is in effect with respect to any Payment Date on or after the Stepdown Date if either:

(1)         the three-month average of the Sixty-Plus Delinquency Percentage, as determined as of that Payment Date and the immediately preceding two Payment Dates equals or exceeds 15.75% of the Senior Enhancement Percentage for such Payment Date; or

(2)         on or after the Payment Date in July 2008:

    o         if the Payment Date occurs on or after the 37th Payment Date through the 48th Payment Date, the aggregate amount of Liquidation Loss Amounts on the Home Loans since the Cut-off Date exceeds 7.75% of the Pool Balance as of the Cut-off Date on the 37th Payment Date, plus an additional 1/12th of 3.50% of the Pool Balance as of the Cut-off Date for each Payment Date thereafter up to an including the 48th Payment Date; or

    o         if the Payment Date occurs on or after the 49th Payment Date through the 60th Payment Date, the aggregate amount of Liquidation Loss Amounts on the Home Loans since the Cut-off Date exceeds 11.25% of the Pool Balance as of the Cut-off Date on the 49th Payment Date, plus an additional 1/12th of 3.25% of the Pool Balance as of the Cut-off Date for each Payment Date thereafter up to an including the 60th Payment Date; or

- o    if the Payment Date occurs on or after the 61st Payment Date
     through the 72nd Payment Date, the aggregate amount of
     Liquidation Loss Amounts on the Home Loans since the Cut-off
     Date exceeds 14.50% of the Pool Balance as of the Cut-off Date
     on the 61st Payment Date, plus an additional 1/12th of 2.50% of
     the Pool Balance as of the Cut-off Date for each Payment Date
     thereafter up to an including the 72nd Payment Date; or

- o    if the Payment Date occurs on or after the 73rd Payment Date,
     the aggregate amount of Liquidation Loss Amounts on the Home
     Loans since the Cut-off Date exceeds 17.00% of the Pool Balance
     as of the Cut-off Date;

provided, however, that if the six-month average of the aggregate Liquidation
Loss Amount, as determined for that Payment Date and the immediately preceding
five Payment Dates, is less than 50% of the six-month average of the Net Monthly
Excess Cash Flow, as determined for that Payment Date and the immediately
preceding five Payment Dates, a Trigger Event shall not be deemed to be in
effect. For purposes of determining whether a Trigger Event has occurred on any
Payment Date, Net Monthly Excess Cash Flow shall be determined assuming that the
Excess Reserve Amount is calculated without regard to the proviso set forth in
the definition of Reserve Amount Target.

Trust Agreement: The Amended and Restated Trust Agreement, dated as of June 29,
2005, between the Owner Trustee and the Depositor.

Trust Estate: The meaning specified in the Granting Clause of the Indenture.

Trust Indenture Act or TIA: The Trust Indenture Act of 1939, as amended from
time to time, as in effect on any relevant date.

UCC: The Uniform Commercial Code, as amended from time to time, as in effect in
any specified jurisdiction.

Underwriters: Bear, Stearns & Co. Inc. and Residential Funding Securities
Corporation.

Uniform Single Attestation Program for Mortgage Bankers: The Uniform Single
Attestation Program for Mortgage Bankers, as published by the Mortgage Bankers
Association of America and effective with respect to fiscal periods ending on or
after December 15, 1995.

United States Person: A citizen or resident of the United States, a corporation,
partnership or other entity created or organized in, or under the laws of, the
United States or any state thereof or the District of Columbia (except, in the
case of a partnership, to the extent provided in regulations), or an estate
whose income is subject to United States federal income tax regardless of its
source, or a trust other than a "foreign trust" within the meaning of Section
7701(a)(30) of the Code.