**<u>Exhibit PX-1519</u>**

GMACM HOME EQUITY LOAN TRUST 2006-HE2,

Issuer,

and

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,

Indenture Trustee

_____

INDENTURE

_____

Dated as of June 29, 2006

GMACM HOME EQUITY LOAN-BACKED TERM NOTES

---

RECONCILIATION AND TIE BETWEEN TRUST INDENTURE
ACT OF 1939 AND INDENTURE PROVISIONS*

| Trust Indenture Act Section | Indenture Section |
|---|---|
| 310(a)(1) | 6.11 |
| (a)(2) | 6.11 |
| (a)(3) | 6.10 |
| (a)(4) | Not Applicable |
| (a)(5) | 6.11 |
| (b) | 6.08, 6.11 |
| (c) | Not Applicable |
| 311(a) | 6.12 |
| (b) | 6.12 |
| (c) | Not Applicable |
| 312(a) | 7.01, 7.02(a) |
| (b) | 7.02(b) |
| (c) | 7.02(c) |
| 313(a) | 7.04 |
| (b) | 7.04 |
| (c) | 7.03(a)(iii), 7.04 |
| (d) | 7.04 |
| 314(a) | 3.10, 7.03(a) |
| (b) | 3.07 |
| (c)(1) | 8.05(c), 10.01(a) |
| (c)(2) | 8.05(c), 10.01(a) |
| (c)(3) | Not Applicable |
| (d)(1) | 8.05(c), 10.01(b) |
| (d)(2) | 8.05(c), 10.01(b) |
| (d)(3) | 8.05(c), 10.01(b) |
| (e) | 10.01(a) |
| 315(a) | 6.01(b) |
| (b) | 6.05 |
| (c) | 6.01(a) |
| (d) | 6.01(c) |

```
(d)(1)......................................................6.01(c)
(d)(2)......................................................6.01(c)
(d)(3)......................................................6.01(c)
(e)..........................................................5.13
316(a)(1)(A)................................................5.11
316(a)(1)(B)................................................5.12
316(a)(2)..........................................Not Applicable
316(b)......................................................5.07
317(a)(1)...................................................5.04
317(a)(2)................................................5.03(d)
317(b)...................................................3.03(a)
318(a).....................................................10.07
```

*This  reconciliation  and tie shall not, for any purpose,  be deemed to be part of the within
_____ indenture.

## TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| ARTICLE I | Definitions | 2 |
| Section 1.01 | Definitions | 2 |
| Section 1.02 | Incorporation by Reference of Trust Indenture Act | 2 |
| Section 1.03 | Rules of Construction | 2 |
| ARTICLE II | Original Issuance of Notes | 3 |
| Section 2.01 | Form | 3 |
| Section 2.02 | Execution, Authentication and Delivery | 3 |
| ARTICLE III | Covenants | 4 |
| Section 3.01 | Collection of Payments with Respect to the Mortgage Loans | 4 |
| Section 3.02 | Maintenance of Office or Agency | 4 |
| Section 3.03 | Money for Payments to Be Held in Trust; Paying Agent | 4 |
| Section 3.04 | Existence | 6 |
| Section 3.05 | Priority of Distributions; Defaulted Interest | 6 |
| Section 3.06 | Protection of Trust Estate | 9 |
| Section 3.07 | Opinions as to Trust Estate | 9 |
| Section 3.08 | Performance of Obligations; Servicing Agreement | 10 |
| Section 3.09 | Negative Covenants | 10 |
| Section 3.10 | Annual Statement as to Compliance | 11 |
| Section 3.11 | Recordation of Assignments | 11 |
| Section 3.12 | Representations and Warranties Concerning the Mortgage Loans | 11 |
| Section 3.13 | Assignee of Record of the Mortgage Loans | 11 |
| Section 3.14 | Servicer as Agent and Bailee of the Indenture Trustee | 12 |
| Section 3.15 | Investment Company Act | 12 |
| Section 3.16 | Issuer May Consolidate, etc. | 12 |
| Section 3.17 | Successor or Transferee | 14 |
| Section 3.18 | No Other Business | 14 |

Section 3.19    No Borrowing.......................................................14

Section 3.20    Guarantees, Loans, Advances and Other Liabilities...............14

Section 3.21    Capital Expenditures............................................14

Section 3.22    Owner Trustee Not Liable for Certificates or Related
                Documents.......................................................14

Section 3.23    Restricted Payments.............................................15

Section 3.24    Notice of Events of Default.....................................15

Section 3.25    Further Instruments and Acts....................................15

Section 3.26    Statements to Noteholders.......................................15

Section 3.27    Determination of Note Rate......................................16

Section 3.28    Payments under the Policy.......................................16

Section 3.29    Replacement/Additional Enhancement..............................16

Section 3.30    Additional Representations of Issuer............................17

ARTICLE IV      The Notes; Satisfaction And Discharge Of Indenture......................18

Section 4.01    The Notes.......................................................18

Section 4.02    Registration of and Limitations on Transfer and Exchange of
                Notes; Appointment of Certificate Registrar.....................18

Section 4.03    Mutilated, Destroyed, Lost or Stolen Notes......................19

Section 4.04    Persons Deemed Owners...........................................20

Section 4.05    Cancellation....................................................20

Section 4.06    Book-Entry Notes................................................21

Section 4.07    Notices to Depository...........................................21

Section 4.08    Definitive Notes................................................22

Section 4.09    Tax Treatment...................................................22

Section 4.10    Satisfaction and Discharge of Indenture.........................22

Section 4.11    Application of Trust Money......................................23

Section 4.12    Subrogation and Cooperation.....................................23

Section 4.13    Repayment of Monies Held by Paying Agent........................24

Section 4.14    Temporary Notes.................................................24

ARTICLE V       Default And Remedies...................................................25

Section 5.01    Events of Default...............................................25

Section 5.02    Acceleration of Maturity; Rescission and Annulment..............25

Section 5.03    Collection of Indebtedness and Suits for Enforcement by
                Indenture Trustee...............................................26

Section 5.04    Remedies; Priorities............................................28

Section 5.05    Optional Preservation of the Trust Estate.......................30

Section 5.06    Limitation of Suits.............................................30

Section 5.07    Unconditional Rights of Noteholders to Receive Principal and
                Interest........................................................31

Section 5.08    Restoration of Rights and Remedies..............................31

Section 5.09    Rights and Remedies Cumulative.......................................31

Section 5.10    Delay or Omission Not a Waiver........................................31

Section 5.11    Control by Enhancer or Noteholders.................................31

Section 5.12    Waiver of Past Defaults...................................................32

Section 5.13    Undertaking for Costs.....................................................32

Section 5.14    Waiver of Stay or Extension Laws....................................33

Section 5.15    Sale of Trust Estate.........................................................33

Section 5.16    Action on Notes..............................................................35

Section 5.17    Performance and Enforcement of Certain Obligations..............35

ARTICLE VI        The Indenture Trustee................................................36

Section 6.01    Duties of Indenture Trustee.............................................36

Section 6.02    Rights of Indenture Trustee.............................................37

Section 6.03    Individual Rights of Indenture Trustee...........................39

Section 6.04    Indenture Trustee's Disclaimer.......................................39

Section 6.05    Notice of Event of Default...............................................39

Section 6.06    Reports by Indenture Trustee to Noteholders.....................39

Section 6.07    Compensation and Indemnity...........................................39

Section 6.08    Replacement of Indenture Trustee..................................40

Section 6.09    Successor Indenture Trustee by Merger...........................41

Section 6.10    Appointment of Co-Indenture Trustee or Separate Indenture
                Trustee............................................................................41

Section 6.11    Eligibility; Disqualification.............................................42

Section 6.12    Preferential Collection of Claims Against Issuer.................43

Section 6.13    Representations and Warranties.......................................43

Section 6.14    Directions to Indenture Trustee.......................................43

Section 6.15    Indenture Trustee May Own Securities...........................44

ARTICLE VII        Noteholders' Lists and Reports....................................44

Section 7.01    Issuer to Furnish Indenture Trustee Names and Addresses of
                Noteholders......................................................................44

Section 7.02    Preservation of Information; Communications to Noteholders.......44

Section 7.03    Reports by Issuer............................................................44

Section 7.04    Reports by Indenture Trustee...........................................45

Section 7.05    Exchange Act Reporting..................................................45

ARTICLE VIII        Accounts, Disbursements and Releases........................45

Section 8.01    Collection of Money........................................................45

Section 8.02    Trust Accounts................................................................46

Section 8.03    Officer's Certificate.........................................................46
Section 8.04    Termination Upon Distribution to Noteholders..................47

Section 8.05    Release of Trust Estate....................................................47

Section 8.06    Surrender of Notes Upon Final Payment...........................47

ARTICLE IX       Supplemental Indentures....................................47

        Section 9.01    Supplemental Indentures Without Consent of Noteholders...........47

        Section 9.02    Supplemental Indentures With Consent of Noteholders..............49

        Section 9.03    Execution of Supplemental Indentures............................50

        Section 9.04    Effect of Supplemental Indenture................................50

        Section 9.05    Conformity with Trust Indenture Act.............................51

        Section 9.06    Reference in Notes to Supplemental Indentures...................51

ARTICLE X        Miscellaneous...............................................51

        Section 10.01   Compliance Certificates and Opinions, etc.......................51

        Section 10.02   Form of Documents Delivered to Indenture Trustee................53

        Section 10.03   Acts of Noteholders.............................................54

        Section 10.04   Notices, etc., to Indenture Trustee, Issuer, Enhancer and
                        Rating Agencies.................................................54

        Section 10.05   Notices to Noteholders; Waiver..................................55

        Section 10.06   Alternate Payment and Notice Provisions.........................55

        Section 10.07   Conflict with Trust Indenture Act...............................56

        Section 10.08   Effect of Headings..............................................56

        Section 10.09   Successors and Assigns..........................................56

        Section 10.10   Severability....................................................56

        Section 10.11   Benefits of Indenture...........................................56

        Section 10.12   Legal Holidays..................................................56

        Section 10.13   GOVERNING LAW...................................................56

        Section 10.14   Counterparts....................................................57

        Section 10.15   Recording of Indenture..........................................57

        Section 10.16   Issuer Obligation...............................................57

        Section 10.17   No Petition.....................................................57

        Section 10.18   Inspection......................................................57


EXHIBITS
Exhibit A        -Form of Notes
Exhibit B        -Form of 144A Investment Representation
Exhibit C        -Form of Investor Representation Letter
Exhibit D        -Form of Transferor Certificate
Appendix A       -Definitions

        This  Indenture,  dated as of June 29, 2006,  is between  GMACM Home Equity Loan Trust 2006-HE2, a Delaware  statutory  trust,  as issuer (the  "Issuer"),  and JPMorgan Chase Bank, National Association, as indenture trustee (the "Indenture Trustee").

WITNESSETH:

Each party hereto agrees as follows for the benefit of the other party and for the equal and ratable benefit of the Noteholders and the Enhancer of the Issuer's Series 2006-HE2 GMACM Home Equity Loan-Backed Term Notes (the "Notes").

GRANTING CLAUSE:

The Issuer hereby Grants to the Indenture Trustee on the Closing Date, as trustee for the benefit of the Noteholders and the Enhancer, all of the Issuer's right, title and interest in and to all accounts, chattel paper, general intangibles, contract rights, payment intangibles, certificates of deposit, deposit accounts, instruments, documents, letters of credit, money, advices of credit, investment property, goods and other property consisting of, arising under or related to whether now existing or hereafter created in any of the following: (a) the Initial Mortgage Loans and any Subsequent Mortgage Loans, and all monies due or to become due thereunder; (b) the Custodial Account, Note Payment Account, Pre-Funding Account and Capitalized Interest Account, and all funds on deposit or credited thereto from time to time; (c) all hazard insurance policies; and (d) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in respect of, any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in the conversion thereof, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, checks, deposit accounts, rights to payment of any and every kind, and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of any of the foregoing (collectively, the "Trust Estate" or the "Collateral").

The foregoing Grant is made in trust to secure the payment of principal of and interest on, and any other amounts owing in respect of, the Notes, equally and ratably without prejudice, priority or distinction, and to secure compliance with the provisions of this Indenture, all as provided in this Indenture.

The foregoing Grant shall inure to the benefit of the Enhancer in respect of draws made on the Policy and amounts owing from time to time pursuant to the Insurance Agreement (regardless of whether such amounts relate to the Notes or the Certificates), and such Grant shall continue in full force and effect for the benefit of the Enhancer until all such amounts owing to it have been repaid in full.

The Indenture Trustee, as trustee on behalf of the Noteholders, acknowledges such Grant, accepts the trust under this Indenture in accordance with the provisions hereof and agrees to perform its duties as Indenture Trustee as required herein.

ARTICLE I

Definitions

Section 1.01 Definitions. For all purposes of this Indenture, except as otherwise expressly provided herein or unless the context otherwise requires, capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Definitions attached hereto as Appendix A, which is incorporated by reference herein. All other capitalized terms used herein shall have the meanings specified herein.

Section 1.02 Incorporation by Reference of Trust Indenture Act. Whenever this Indenture refers to a provision of the Trust Indenture Act (the "TIA"), such provision is incorporated by reference in and made a part of this Indenture. The following TIA terms used in this Indenture have the following meanings:

"Commission" means the Securities and Exchange Commission.

"indenture securities" means the Notes.

"indenture security holder" means a Noteholder.

"indenture to be qualified" means this Indenture.

"indenture trustee" or "institutional trustee" means the Indenture Trustee.

"obligor" on the indenture securities means the Issuer and any other obligor on the indenture securities.

All other TIA terms used in this Indenture that are defined by TIA, defined by TIA reference to another statute or defined by Commission rule have the meaning assigned to them by such definitions.

Section 1.03 Rules of Construction. Unless the context otherwise requires:

(a)a term has the meaning assigned to it;

(b)an accounting term not otherwise defined has the meaning assigned to it in accordance with generally accepted accounting principles as in effect from time to time;

(c)"or" includes "and/or";

(d)"including" means "including without limitation";

(e)words in the singular include the plural and words in the plural include the singular;

(f)the term "proceeds" has the meaning ascribed thereto in the UCC; and

(g)any agreement, instrument or statute defined or referred to herein or in any instrument or certificate delivered in connection herewith means such agreement, instrument or statute as from time to time amended, modified or supplemented and includes (in the case of agreements or instruments) references to all attachments thereto and instruments incorporated therein; references to a Person are also to its permitted successors and assigns.

ARTICLE II

Original Issuance of Notes

Section 2.01 Form. The Notes, together with the Indenture Trustee's certificate of authentication, shall be in substantially the form set forth in Exhibit A, with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may, consistently herewith, be determined by the officers executing the Notes, as evidenced by their execution thereof. Any portion of the text of any Note may be set forth on the reverse thereof, with an appropriate reference thereto on the face of such Note.

The Notes shall be typewritten, printed, lithographed or engraved or produced by any combination of these methods, all as determined by the Authorized Officers executing such Notes, as evidenced by their execution of such Notes.

The terms of the Notes set forth in Exhibit A are part of the terms of this Indenture.

Section 2.02 Execution, Authentication and Delivery. The Notes shall be executed on behalf of the Issuer by any of its Authorized Officers. The signature of any such Authorized Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time Authorized Officers of the Issuer shall bind the Issuer, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of such Notes.

The Indenture Trustee shall upon Issuer Request authenticate and deliver Notes for original issue in an amount equal to the Initial Aggregate Note Balance. The Class A-1, Class A-2, Class A-3 and Class A-4 Notes shall have initial principal or notional amounts of the Initial Class A-1 Note Balance, Initial Class A-2 Note Balance, Initial Class A-3 Note Balance and Initial Class A-4 Note Balance, respectively.

Each Note shall be dated the date of its authentication. The Notes shall be issuable as registered Book-Entry Notes, and the Notes shall be issuable in minimum denominations of $25,000 and integral multiples of $1,000 in excess thereof.

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless there appears on such Note a certificate of authentication substantially in the form provided for herein executed by the Indenture Trustee by the manual signature of one of its authorized signatories, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been

duly authenticated and delivered hereunder.

ARTICLE III

Covenants

Section 3.01  Collection of Payments with Respect to the Mortgage Loans.  The Indenture Trustee shall establish and maintain with itself the Note Payment Account in which the Indenture Trustee shall, subject to the terms of this paragraph, deposit, on the same day as it is received from the Servicer, each remittance received by the Indenture Trustee with respect to the Mortgage Loans.  The Indenture Trustee shall make all payments of principal of and interest on the Notes, subject to Section 3.03 as provided in Section 3.05 herein from monies on deposit in the Note Payment Account.

Section 3.02  Maintenance of Office or Agency.  The Issuer will maintain in the City of New York, New York, an office or agency where, subject to satisfaction of conditions set forth herein, Notes may be surrendered for registration of transfer or exchange, and where notices and demands to or upon the Issuer in respect of the Notes and this Indenture may be served.  The Issuer hereby initially appoints the Indenture Trustee to serve as its agent for the foregoing purposes.  If at any time the Issuer shall fail to maintain any such office or agency or shall fail to furnish the Indenture Trustee with the address thereof, such surrenders, notices and demands may be made or served at the Corporate Trust Office, and the Issuer hereby appoints the Indenture Trustee as its agent to receive all such surrenders, notices and demands.

Section 3.03  Money for Payments to Be Held in Trust; Paying Agent.  As provided in Section 3.01, all payments of amounts due and payable with respect to any Notes that are to be made from amounts withdrawn from the Note Payment Account pursuant to Section 3.01 shall be made on behalf of the Issuer by the Indenture Trustee or by the Paying Agent, and no amounts so withdrawn from the Note Payment Account for payments of Notes shall be paid over to the Issuer except as provided in this Section 3.03.  The Issuer hereby appoints the Indenture Trustee to act as initial Paying Agent hereunder.  The Issuer will cause each Paying Agent other than the Indenture Trustee to execute and deliver to the Indenture Trustee an instrument in which such Paying Agent shall agree with the Indenture Trustee (and if the Indenture Trustee acts as Paying Agent, it hereby so agrees), subject to the provisions of this Section 3.03, that such Paying Agent will:

(a)  hold all sums held by it for the payment of amounts due with respect to the Notes in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided and pay such sums to such Persons as herein provided;

(b)  give the Indenture Trustee and the Enhancer written notice of any default by the Issuer of which it has actual knowledge in the making of any payment required to be made with respect to the Notes;

(c)  at any time during the continuance of any such default, upon the written request of the Indenture Trustee, forthwith pay to the Indenture Trustee all sums so held in trust by such Paying Agent;

(d)  immediately resign as Paying Agent and forthwith pay to the Indenture Trustee all sums held by it in trust for the payment of Notes, if at any time it ceases to meet the standards required to be met by a Paying Agent at the time of its appointment;

(e)  comply with all requirements of the Code with respect to the withholding from any payments made by it on any Notes of any applicable withholding taxes imposed thereon and with respect to any applicable reporting requirements in connection therewith; and

(f)  deliver to the Indenture Trustee a copy of the statement to Noteholders prepared with respect to each Payment Date by the Servicer pursuant to Section 4.01 of the Servicing Agreement.

The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, by Issuer Request direct any Paying Agent to pay to the Indenture Trustee all sums held in trust by such Paying Agent, such sums to be held by the Indenture Trustee upon the same trusts as those upon which the sums were held by such Paying Agent; and upon such payment by any Paying Agent to the Indenture Trustee, such Paying Agent shall be released from all further liability with respect to such money.

Subject to applicable laws with respect to escheat of funds, any money held by the Indenture Trustee or any Paying Agent in trust for the payment of any amount due with respect to any Note and remaining unclaimed for one year after such amount has become due and payable shall be discharged from such trust and be paid to the Issuer on Issuer Request; and the Noteholder of such Note shall thereafter, as an unsecured general creditor, look only to the Issuer for payment thereof (but only to the extent of the amounts so paid to the Issuer), and all liability of the Indenture Trustee or such Paying Agent with respect to such trust money shall thereupon cease; provided, however, that the Indenture Trustee or such Paying Agent, before being required to make any such repayment, shall at the expense and direction of the Issuer cause to be published once, in an Authorized Newspaper, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Issuer. The Indenture Trustee may also adopt and employ, at the expense and direction of the Issuer, any other reasonable means of notification of such repayment (including, but not limited to, mailing notice of such repayment to the Enhancer and Noteholders of the Notes which have been called but have not been surrendered for redemption or whose right to or interest in monies due and payable but not claimed is determinable from the records of the Indenture Trustee or of any Paying Agent, at the last address of record for each such Noteholder).

Section 3.04   Existence.  The Issuer will keep in full effect its existence, rights and franchises as a statutory trust under the laws of the State of Delaware (unless it becomes, or any successor Issuer hereunder is becomes, organized under the laws of any other state or of the United States of America, in which case the Issuer will keep in full effect its existence, rights and franchises under the laws of such other jurisdiction) and will obtain and preserve its qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture, the Notes, the Mortgage Loans and each other instrument or agreement included in the Trust Estate.

Section 3.05   Priority of Distributions; Defaulted Interest.

(a)     In accordance with Section 3.03(a) of the Servicing Agreement, the priority of distributions on each Payment Date from Principal Collections and Interest Collections with respect to the Mortgage Loans, any optional advance of delinquent principal or interest on the Mortgage Loans made by the Servicer in respect of the related Collection Period, any Policy Draw Amount deposited into the Note Payment Account (to be applied solely with respect to the payment of amounts described in clauses (i) and (vi) under this Section 3.05(a)), and any amounts transferred to the Note Payment Account from the Pre-Funding Account and Capitalized Interest Account pursuant to Sections 3.18 and 3.19 of the Servicing Agreement, is as follows:

(i)     from Interest Collections, to the Enhancer, the amount of the premium for the Policy and any unpaid premium for the Policy from prior Payment Dates, with interest thereon as provided in the Insurance Agreement;

(ii)    from Interest Collections, any Capitalized Interest Requirement pursuant to Section 3.19(b) of the Servicing Agreement and any Policy Draw Amount with respect to the Notes deposited into the Note Payment Account on such Payment Date pursuant to Section 3.28(a)(ii), to the Note Payment Account, for payment by the Paying Agent to the Noteholders, interest for the related Interest Period at the related Note Rate on the related Note Balance immediately prior to such Payment Date, excluding any Relief Act Shortfalls allocated thereto pursuant to Section 3.05(f), plus any such amount remaining unpaid from prior Payment Dates;

(iii)   from Principal Collections, for payment by the Paying Agent to the Noteholders, as a distribution of principal on the Notes, the Principal Distribution Amount for such Payment Date to be allocated to each Class of Notes as described in Section 3.05(b) below, until the Note Balances thereof have been reduced to zero;

(iv)    from Excess Spread, for payment by the Paying Agent to each Class of Notes, as a distribution of principal on the Notes, in the priority set forth in section 3.05(b), an amount equal to the Liquidation Loss Distribution Amount (excluding Liquidation Loss Amounts that have been allocated to the reduction of the Note Balance of the Notes pursuant to Section 3.05(c) hereof) until the Note Balance of each Class of Notes has been reduced to zero;

(v)     to the Enhancer, to reimburse it for prior draws made on the Policy, with interest thereon as provided in the Insurance Agreement;

(vi)    from Excess Spread, or payment by the Paying Agent to the Noteholders of the Class of Notes in the priority set forth in Section 3.05(b), the Overcollateralization Increase Amount, if any, until the Note Balance of each Class of Notes has been reduced to zero;

(vii) to the Enhancer, any amounts owed to the Enhancer pursuant to the Insurance Agreement other than amounts specified in clauses (i) or (vi) above;

(viii) to the Indenture Trustee, any amounts owing to the Indenture Trustee pursuant to Section 6.07 to the extent remaining unpaid; and

(ix) any remaining amount, to the Distribution Account, for distribution to the holders of the Certificates by the Certificate Paying Agent in accordance with the Trust Agreement;

provided, that on the Final Payment Date, the amount that is required to be paid pursuant to clause (iii) above shall be equal to the Note Balance immediately prior to such Payment Date.

Amounts distributed to the Noteholders pursuant to the above clauses (ii), (iii), (iv) and (vi) from Interest Collections, Principal Collections and the Policy Draw Amount shall be treated for tax purposes as distributions with respect to the REMIC II Regular Interests A-1, A-2, A-3 and A-4, respectively. Amounts distributed pursuant to clause (ix) shall be treated as having been distributed to the REMIC II Regular Interest SB-IO.

On each Payment Date, the Paying Agent shall apply, from amounts on deposit in the Note Payment Account, and in accordance with the Servicing Certificate, the amounts set forth above in the order of priority set forth in Section 3.05(a).

Amounts paid to Noteholders shall be paid in respect of the Notes in accordance with the applicable percentage as set forth in Section 3.05(e). Interest on the Notes will be computed on the basis of a 360-day year consisting of twelve 30-day months. Any installment of interest or principal payable on any Note that is punctually paid or duly provided for by the Issuer on the applicable Payment Date shall be paid to the Noteholder of record thereof on the immediately preceding Record Date by wire transfer to an account specified in writing by such Noteholder reasonably satisfactory to the Indenture Trustee, or by check or money order mailed to such Noteholder at such Noteholder's address appearing in the Note Register, the amount required to be distributed to such Noteholder on such Payment Date pursuant to such Noteholder's Notes; provided, that the Indenture Trustee shall not pay to any such Noteholder any amounts required to be withheld from a payment to such Noteholder by the Code.

(b)      The Principal Distribution Amount distributable pursuant to Section 3.05(a)(iii), Liquidation Loss Distribution Amounts distributable to the holders of the Notes pursuant to Section 3.05(a)(iv) and Overcollateralization Increase Amounts distributable to the holders of the Notes pursuant to Section 3.05(a)(vi) will be to the Class A-1, Class A-2, Class A-3 and Class A-4 Notes, in that order, in each case until the Note Balance thereof has been reduced to zero;

(c)      Principal of each Note shall be due and payable in full on the Final Payment Date as provided in the applicable form of Note set forth in Exhibits A. All principal payments on the Notes shall be made in accordance with the priorities set forth in Sections 3.05(a) and 3.05(b) to the Noteholders entitled thereto in accordance with the related Percentage Interests represented thereby. Upon written notice to the Indenture Trustee by the Issuer, the Indenture Trustee shall notify the Person in the name of which a Note is registered at the close of business on the Record Date preceding the Final Payment Date or other final Payment Date, as applicable. Such notice shall be mailed no later than five Business Days prior to the Final Payment Date or such other final Payment Date and, unless such Note is then a Book-Entry Note, shall specify that payment of the principal amount and any interest due with respect to such Note at the Final Payment Date or such other final Payment Date will be payable only upon presentation and surrender of such Note, and shall specify the place where such Note may be presented and surrendered for such final payment.

On each Payment Date, the Overcollateralization Amount available to cover any Liquidation Loss Amounts on such Payment Date shall be deemed to be reduced by an amount equal to such Liquidation Loss Amounts (except to the extent that such Liquidation Loss Amounts were covered on such Payment Date by a payment in respect of Liquidation Loss Amounts).

(d)      With respect to any Payment Date, interest payments on the Notes will be reduced by any Relief Act Shortfalls for the related Collection Period on a pro rata basis in accordance with the amount of interest payable on the Notes on such Payment Date, absent such reduction.

Section 3.06  Protection of Trust Estate.

(a)    The Issuer shall from time to time execute and deliver all such supplements and amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and will take such other action necessary or advisable to:

(i)    maintain or preserve the lien and security interest (and the priority thereof) of this Indenture or carry out more effectively the purposes hereof;

(ii)    perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

(iii)    cause the Trust to enforce any of the Mortgage Loans; or

(iv)    preserve and defend title to the Trust Estate and the rights of the Indenture Trustee and the Noteholders in such Trust Estate against the claims of all persons and parties.

(b)    Except as otherwise provided in this Indenture, the Indenture Trustee shall not remove any portion of the Trust Estate that consists of money or is evidenced by an instrument, certificate or other writing from the jurisdiction in which it was held at the date of the most recent Opinion of Counsel delivered pursuant to Section 3.07 (or from the jurisdiction in which it was held as described in the Opinion of Counsel delivered at the Closing Date pursuant to Section 3.07, if no Opinion of Counsel has yet been delivered pursuant to Section 3.07) unless the Indenture Trustee shall have first received an Opinion of Counsel to the effect that the lien and security interest created by this Indenture with respect to such property will continue to be maintained after giving effect to such action or actions.

The Issuer hereby designates the Indenture Trustee its agent and attorney-in-fact to execute any financing statement, continuation statement or other instrument required to be executed pursuant to this Section 3.06.

Section 3.07  Opinions as to Trust Estate.

On the Closing Date, the Issuer shall furnish to the Indenture Trustee and the Owner Trustee an Opinion of Counsel at the expense of the Issuer stating that, upon delivery of the Mortgage Notes relating to the Initial Mortgage Loans to the Indenture Trustee or the Custodian in the State of Pennsylvania, the Indenture Trustee will have a perfected, first priority security interest in such Mortgage Loans.

On or before December 31st in each calendar year, beginning in 2006, the Issuer shall furnish to the Indenture Trustee an Opinion of Counsel at the expense of the Issuer either stating that, in the opinion of such counsel, no further action is necessary to maintain a perfected, first priority security interest in the Mortgage Loans until December 31 in the following calendar year or, if any such action is required to maintain such security interest in the Mortgage Loans, such Opinion of Counsel shall also describe the recording, filing, re-recording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and the execution and filing of any financing statements and continuation statements that will, in the opinion of such counsel, be required to maintain the security interest in the Mortgage Loans until December 31 in the following calendar year.

Section 3.08  Performance of Obligations; Servicing Agreement.

(a)    The Issuer shall punctually perform and observe all of its obligations and agreements contained in this Indenture, the Basic Documents and in the instruments and agreements included in the Trust Estate.

(b)    The Issuer may contract with other Persons to assist it in performing its duties under this Indenture, and any performance of such duties by a Person identified to the Indenture Trustee in an Officer's Certificate of the Issuer shall be deemed to be action taken by the Issuer.

(c)    The Issuer shall not take any action or permit any action to be taken by others that would release any Person from any of such Person's covenants or obligations under any of the documents relating to the Mortgage Loans or under any instrument included in the Trust Estate, or that would result in the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any of the documents relating to the Mortgage Loans or any such instrument, except such actions as the Servicer is expressly permitted to take in the Servicing Agreement.

(d)    The Issuer may retain an administrator and may enter into contracts with other Persons for the performance of the Issuer's obligations hereunder, and performance of such obligations by such Persons shall be deemed to be performance of such obligations by the Issuer.

Section 3.09 Negative Covenants. So long as any Notes are outstanding, the Issuer shall not:

(a)   except as expressly permitted by this Indenture, sell, transfer, exchange or otherwise dispose of the Trust Estate, unless directed to do so in writing by the Indenture Trustee pursuant to Section 5.04 hereof;

(b)   claim any credit on, or make any deduction from the principal or interest payable in respect of, the Notes (other than amounts properly withheld from such payments under the Code) or assert any claim against any present or former Noteholder by reason of the payment of the taxes levied or assessed upon any part of the Trust Estate;

(c)   (i) permit the validity or effectiveness of this Indenture to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to the Notes under this Indenture except as may be expressly permitted hereby, (ii) permit any lien, charge, excise, claim, security interest, mortgage or other encumbrance (other than the lien of this Indenture) to be created on or extend to or otherwise arise upon or burden the Trust Estate or any part thereof or any interest therein or the proceeds thereof or (iii) permit the lien of this Indenture not to constitute a valid first priority security interest in the Trust Estate; or

(d)   impair or cause to be impaired the Issuer's interest in the Mortgage Loans, the Purchase Agreement or in any other Basic Document, if any such action would materially and adversely affect the interests of the Noteholders or the Enhancer.

Section 3.10 Annual Statement as to Compliance. The Issuer shall deliver to the Indenture Trustee, within 120 days after the end of each fiscal year of the Issuer (commencing with the fiscal year ending on December 31, 2006), an Officer's Certificate stating, as to the Authorized Officer signing such Officer's Certificate, that:

(a)   a review of the activities of the Issuer during such year and of its performance under this Indenture and the Trust Agreement has been made under such Authorized Officer's supervision; and

(b)   to the best of such Authorized Officer's knowledge, based on such review, the Issuer has complied with all conditions and covenants under this Indenture and the provisions of the Trust Agreement throughout such year, or, if there has been a default in its compliance with any such condition or covenant, specifying each such default known to such Authorized Officer and the nature and status thereof.

Section 3.11 Recordation of Assignments. The Issuer shall enforce the obligation, if any, of the Sellers under the Purchase Agreement to submit or cause to be submitted for recordation all Assignments of Mortgages within 60 days of receipt of recording information by the Servicer.

Section 3.12 Representations and Warranties Concerning the Mortgage Loans. The Indenture Trustee, as pledgee of the Mortgage Loans, shall have the benefit of (i) the representations and warranties made by GMACM in Section 3.1(a) and Section 3.1(b) of the Purchase Agreement, (ii) the benefit of the representations and warranties made by WG Trust 2003 in Section 3.1(d) of the Purchase Agreement and (iii) the benefit of the representations and warranties made by GMACM or WG Trust 2003, as applicable, in Section 2 of any Subsequent Transfer Agreement, in each case, concerning the Mortgage Loans and the right to enforce the remedies against GMACM or WG Trust 2003 provided in Section 3.1(e) of the Purchase Agreement, as applicable, to the same extent as though such representations and warranties were made directly to the Indenture Trustee.

Section 3.13 Assignee of Record of the Mortgage Loans. As pledgee of the Mortgage Loans, the Indenture Trustee shall hold title to the Mortgage Loans by being named as payee in the endorsements or assignments of the Mortgage Notes and assignee in the Assignments of Mortgage to be delivered under Section 2.1 of the Purchase Agreement. Except as expressly provided in the Purchase Agreement or in the Servicing Agreement with respect to any specific Mortgage Loan, the Indenture Trustee shall not execute any endorsement or assignment or otherwise release or transfer such title to any of the Mortgage Loans until such time as the remaining Trust Estate may be released pursuant to Section 8.05(b). The Indenture Trustee's holding of such title shall in all respects be subject to its fiduciary obligations to the Noteholders hereunder.

Section 3.14 Servicer as Agent and Bailee of the Indenture Trustee. Solely for purposes of perfection under Section 9-313 or 9-314 of the UCC or other similar applicable law, rule or regulation of the state in which such property is held by the Servicer, the Issuer and the Indenture Trustee hereby acknowledge that the Servicer is acting as agent and bailee of the Indenture Trustee in holding amounts on deposit in the Custodial Account pursuant to Section 3.02 of the Servicing Agreement that are allocable to the Mortgage Loans, as well as the agent and bailee of the Indenture Trustee in holding any Related Documents released to the Servicer pursuant to Section 3.06(c) of the Servicing Agreement,

and any other items constituting a part of the Trust Estate which from time to time come
into the possession of the Servicer. It is likewise, through the Servicer's acceptance of
such agency pursuant to Section 3.02 of the Servicing Agreement, the Indenture Trustee, as a
pledgee of the Mortgage Loans, will be deemed to have possession of such Related Documents,
such monies and such other items for purposes of Section 9-313 or 9-314 of the UCC of the
state in which such property is held by the Servicer.

Section 3.15 Investment Company Act. The Issuer shall not become an "investment
company" or under the "control" of an "investment company" as such terms are defined in the
Investment Company Act of 1940, as amended (or any successor or amendatory statute), and the
rules and regulations thereunder (taking into account not only the general definition of the
term "investment company" but also any available exceptions to such general definition);
provided, however, that the Issuer shall be in compliance with this Section 3.15 if it shall
have obtained an order exempting it from regulation as an "investment company" so long as it
is in compliance with the conditions imposed in such order.

Section 3.16 Issuer May Consolidate, etc.

(a)    The Issuer shall not consolidate or merge with or into any other
Person, unless:

(i)    the Person (if other than the Issuer) formed by or surviving
such consolidation or merger shall be a Person organized and existing under the laws
of the United States of America or any state or the District of Columbia and shall
expressly assume, by an indenture supplemental hereto, executed and delivered to the
Indenture Trustee, in form reasonably satisfactory to the Indenture Trustee, the due
and punctual payment of the principal of and interest on all Notes and to the
Certificate Paying Agent, on behalf of the Certificateholders and the performance or
observance of every agreement and covenant of this Indenture on the part of the
Issuer to be performed or observed, all as provided herein;

(ii)    immediately after giving effect to such transaction, no Event
of Default shall have occurred and be continuing;

(iii)    the Enhancer shall have consented thereto and each Rating
Agency shall have notified the Issuer that such transaction will not cause a Rating
Event, without taking into account the Policy;

(iv)    the Issuer shall have received an Opinion of Counsel (and shall
have delivered copies thereof to the Indenture Trustee and the Enhancer) to the
effect that such transaction will not have any material adverse tax consequence to
the Issuer, any Noteholder or any Certificateholder;

(v)    any action that is necessary to maintain the lien and security
interest created by this Indenture shall have been taken; and

(vi)    the Issuer shall have delivered to the Indenture Trustee an
Officer's Certificate and an Opinion of Counsel each stating that such consolidation
or merger and such supplemental indenture comply with this Article III and that all
conditions precedent herein provided for relating to such transaction have been
complied with (including any filing required by the Exchange Act).

(b)    The Issuer shall not convey or transfer any of its properties or
assets, including those included in the Trust Estate, to any Person, unless:

(i)    the Person that acquires by conveyance or transfer the
properties and assets of the Issuer the conveyance or transfer of which is hereby
restricted shall (A) be a United States citizen or a Person organized and existing
under the laws of the United States of America or any state, (B) expressly assumes,
by an indenture supplemental hereto, executed and delivered to the Indenture Trustee,
in form satisfactory to the Indenture Trustee, the due and punctual payment of the
principal of and interest on all Notes and the performance or observance of every
agreement and covenant of this Indenture on the part of the Issuer to be performed or
observed, all as provided herein, (C) expressly agrees by means of such supplemental
indenture that all right, title and interest so conveyed or transferred shall be
subject and subordinate to the rights of Noteholders of the Notes, (D) unless
otherwise provided in such supplemental indenture, expressly agrees to indemnify,
defend and hold harmless the Issuer against and from any loss, liability or expense
arising under or related to this Indenture and the Notes and (E) expressly agrees by
means of such supplemental indenture that such Person (or if a group of Persons, then
one specified Person) shall make all filings with the Commission (and any other
appropriate Person) required by the Exchange Act in connection with the Notes;

(ii)    immediately after giving effect to such transaction, no Default
or Event of Default shall have occurred and be continuing;

(iii) the Enhancer shall have consented thereto, and each Rating Agency shall have notified the Issuer that such transaction will not cause a Rating Event, if determined without regard to the Policy;

(iv) the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the Indenture Trustee) to the effect that such transaction will not have any material adverse tax consequence to the Issuer or any Noteholder;

(v) any action that is necessary to maintain the lien and security interest created by this Indenture shall have been taken; and

(vi) the Issuer shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel each stating that such conveyance or transfer and such supplemental indenture comply with this Article III and that all conditions precedent herein provided for relating to such transaction have been complied with (including any filing required by the Exchange Act).

Section 3.17 Successor or Transferee.

(a)Upon any consolidation or merger of the Issuer in accordance with Section 3.16(a), the Person formed by or surviving such consolidation or merger (if other than the Issuer) shall succeed to, and be substituted for, and may exercise every right and power of, the Issuer under this Indenture with the same effect as if such Person had been named as the Issuer herein.

(b)Upon a conveyance or transfer of all the assets and properties of the Issuer pursuant to Section 3.16(b), the Issuer shall be released from every covenant and agreement of this Indenture to be observed or performed on the part of the Issuer with respect to the Notes immediately upon the delivery of written notice to the Indenture Trustee of such conveyance or transfer.

Section 3.18 No Other Business. The Issuer shall not engage in any business other than financing, purchasing, owning and selling and managing the Mortgage Loans and the issuance of the Notes and Certificates in the manner contemplated by this Indenture and the Basic Documents and all activities incidental thereto.

Section 3.19 No Borrowing. The Issuer shall not issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness except for the Notes.

Section 3.20 Guarantees, Loans, Advances and Other Liabilities. Except as contemplated by this Indenture or the other Basic Documents, the Issuer shall not make any loan or advance or credit to, or guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire (or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other Person.

Section 3.21 Capital Expenditures. The Issuer shall not make any expenditure (by long-term or operating lease or otherwise) for capital assets (either realty or personally).

Section 3.22 Owner Trustee Not Liable for Certificates or Related Documents. The recitals contained herein shall be taken as the statements of the Issuer, and the Owner Trustee and the Indenture Trustee assume no responsibility for the correctness of the recitals contained herein. The Owner Trustee and the Indenture Trustee make no representations as to the validity or sufficiency of this Indenture or any other Basic Document, of the Certificates (other than the signatures of the Owner Trustee or the Indenture Trustee on the Certificates) or the Notes, or of any Related Documents. The Owner Trustee and the Indenture Trustee shall at no time have any responsibility or liability with respect to the sufficiency of the Trust Estate or its ability to generate the payments to be distributed to Certificateholders under the Trust Agreement or the Noteholders under this Indenture, including, the compliance by the Depositor or the Sellers with any warranty or representation made under any Basic Document or in any related document or the accuracy of any such warranty or representation, or any action of the Certificate Paying Agent, the Certificate Registrar or any other person taken in the name of the Owner Trustee or the Indenture Trustee.

Section 3.23 Restricted Payments. The Issuer shall not, directly or indirectly, (i) pay any dividend or make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof, to the Owner Trustee or any owner of a beneficial interest in the Issuer or otherwise with respect to any ownership or equity interest or security in or of the Issuer, (ii) redeem, purchase, retire or otherwise acquire for value any such ownership or equity interest or security or (iii) set aside or otherwise segregate any amounts for any such purpose; provided, however, that the Issuer may make, or

cause to be made, (x) distributions to the Owner Trustee and the Certificateholders as contemplated by, and to the extent funds are available for such purpose under, the Trust Agreement and (y) payments to the Servicer pursuant to the terms of the Servicing Agreement. The Issuer will not, directly or indirectly, make payments to or distributions from the Custodial Account except in accordance with this Indenture and the other Basic Documents.

Section 3.24 Notice of Events of Default. The Issuer shall give the Indenture Trustee, the Enhancer and the Rating Agencies prompt written notice of each Event of Default hereunder and under the Trust Agreement.

Section 3.25 Further Instruments and Acts. Upon request of the Indenture Trustee, the Issuer shall execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purposes of this Indenture.

Section 3.26 Statements to Noteholders. On each Payment Date, each of the Indenture Trustee and the Certificate Registrar shall make available to the Depositor, the Owner Trustee, each Rating Agency, each Noteholder and each Certificateholder, with a copy to the Enhancer, the Servicing Certificate provided to the Indenture Trustee by the Servicer relating to such Payment Date and delivered pursuant to Section 4.01 of the Servicing Agreement.

The Indenture Trustee will make the Servicing Certificate (and, at its option, any additional files containing the same information in an alternative format) available each month to Securityholders and the Enhancer, and other parties to this Indenture via the Indenture Trustee's internet website. The Indenture Trustee's internet website shall initially be located at "www.jpmorgan.com/sfr." Assistance in using the website can be obtained by calling the Indenture Trustee's customer service desk at (877) 722-1095. Parties that are unable to use the above distribution options are entitled to have a paper copy mailed to them via first class mail by calling the customer service desk and indicating such. The Indenture Trustee shall have the right to change the way the statement to Securityholders are distributed in order to make such distribution more convenient or more accessible to the above parties and the Indenture Trustee shall provide timely and adequate notification to all above parties regarding any such changes.

Section 3.28 Payments under the Policy.

(a)(i) If the Servicing Certificate specifies a Policy Draw Amount for any Payment Date, the Indenture Trustee shall make a draw on the Policy in an amount specified in the Servicing Certificate for such Payment Date or, if no amount is specified, the Indenture Trustee shall make a draw on the Policy in the amount by which the amount on deposit in the Note Payment Account is less than interest due on the Notes on such Payment Date.

(ii) The Indenture Trustee shall deposit or cause to be deposited such Policy Draw Amount into the Note Payment Account on such Payment Date to the extent such amount relates to clause (a) of the definition of "Deficiency Amount" or clause (b) of the definition of "Insured Payment".

(b) The Indenture Trustee shall submit, if a Policy Draw Amount is specified in any statement to Securityholders prepared pursuant to Section 4.01 of the Servicing Agreement, the Notice (in the form attached as Exhibit A to the Policy) to the Enhancer no later than 12:00 noon, New York City time, on the second (2nd) Business Day prior to the applicable Payment Date.

Section 3.29 Replacement/Additional Enhancement. The Issuer (or the Servicer on its behalf) may, at its expense, in accordance with and upon satisfaction of the conditions set forth herein, but shall not be required to, obtain a surety bond, letter of credit, guaranty or reserve account as a Permitted Investment for amounts on deposit in the Capitalized Interest Account, or may arrange for any other form of additional credit enhancement; provided, that after prior notice thereto, no Rating Agency shall have informed the Issuer that a Rating Event would occur as a result thereof (without taking the Policy into account); and provided further, that the issuer of any such instrument or facility and the timing and mechanism for drawing on such additional enhancement shall be acceptable to the Indenture Trustee and the Enhancer. It shall be a condition to procurement of any such additional credit enhancement that there be delivered to the Indenture Trustee and the Enhancer (a) an Opinion of Counsel, acceptable in form to the Indenture Trustee and the Enhancer, from counsel to the provider of such additional credit enhancement with respect to the enforceability thereof and such other matters as the Indenture Trustee or the Enhancer may require and (b) an Opinion of Counsel to the effect that the procurement of such additional enhancement would not (i) adversely affect in any material respect the tax status of the Notes or the Certificates or (ii) cause the Issuer to be taxable as an association (or a publicly traded partnership) for federal income tax purposes or to be classified as a taxable mortgage pool within the meaning of Section 7701(i) of the Code.

Section 3.30  Additional Representations of Issuer.

The Issuer hereby represents and warrants to the Indenture Trustee that as of the Closing Date (which representations and warranties shall survive the execution of this Indenture):

(a)     This Indenture creates a valid and continuing security interest (as defined in the applicable UCC) in the Mortgage Notes in favor of the Indenture Trustee, which security interest is prior to all other Liens (except as expressly permitted otherwise in this Indenture), and is enforceable as such as against creditors of and purchasers from the Issuer.

(b)     The Mortgage Notes constitute "instruments" within the meaning of the applicable UCC.

(c)     The Issuer owns and has good and marketable title to the Mortgage Notes free and clear of any Lien of any Person.

(d)     The original executed copy of each Mortgage Note (except for any Mortgage Note with respect to which a Lost Note Affidavit has been delivered to the Custodian) has been delivered to the Custodian.

(e)     The Issuer has received a written acknowledgment from the Custodian that the Custodian is acting solely as agent of the Indenture Trustee for the benefit of the Noteholders and the Enhancer.

(f)     Other than the security interest granted to the Indenture Trustee pursuant to this Indenture, the Issuer has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Mortgage Notes. The Issuer has not authorized the filing of and is not aware of any financing statements against the Issuer that include a description of collateral covering the Mortgage Notes other than any financing statement relating to the security interest granted to the Indenture Trustee hereunder or any security interest that has been terminated. The Issuer is not aware of any judgment or tax lien filings against the Issuer.

(g)     None of the Mortgage Notes has any marks or notations indicating that they have been pledged, assigned or otherwise conveyed to any Person other than the Indenture Trustee, except for (i) any endorsements that are part of a complete chain of endorsements from the originator of the Mortgage Note to the Indenture Trustee, and (ii) any marks or notations pertaining to Liens that have been terminated or released.

(h)     None of the provisions of this Section 3.30 shall be waived without the prior written confirmation from Standard & Poor's that such waiver shall not result in a reduction or withdrawal of the then-current rating of the Notes.

---

ARTICLE IV

The Notes; Satisfaction And Discharge Of Indenture

Section 4.01  The Notes

(a) The Notes shall be registered in the name of a nominee designated by the Depository. Beneficial Owners will hold interests in the Notes through the book-entry facilities of the Depository in minimum initial Note Balances of $25,000 and integral multiples of $1,000 in excess thereof.

The Indenture Trustee may for all purposes (including the making of payments due on the Notes) deal with the Depository as the authorized representative of the Beneficial Owners with respect to the Notes for the purposes of exercising the rights of Noteholders of Notes hereunder. Except as provided in the next succeeding paragraph of this Section 4.01, the rights of Beneficial Owners with respect to the Notes shall be limited to those established by law and agreements between such Beneficial Owners and the Depository and Depository Participants. Except as provided in Section 4.08, Beneficial Owners shall not be entitled to definitive certificates for the Notes as to which they are the Beneficial Owners. Requests and directions from, and votes of, the Depository as Noteholder of the Notes shall not be deemed inconsistent if they are made with respect to different Beneficial Owners. The Indenture Trustee may establish a reasonable record date in connection with solicitations of consents from or voting by Noteholders and give notice to the Depository of such record date. Without the consent of the Issuer and the Indenture Trustee, no Term Note may be transferred by the Depository except to a successor Depository that agrees to hold such Note for the account of the Beneficial Owners.

In the event the Depository Trust Company resigns or is removed as Depository, the

Indenture Trustee, at the request of the Servicer and with the approval of the Issuer may appoint a successor Depository. If no successor has been appointed within 30 days of the effective date of the Depository's resignation or removal, each Beneficial Owner shall be entitled to certificates representing the Notes it beneficially owns in the manner prescribed in Section 4.08.

The Notes shall, on original issue, be executed on behalf of the Issuer by the Owner Trustee, not in its individual capacity but solely as Owner Trustee and upon Issuer Order, authenticated by the Note Registrar and delivered by the Indenture Trustee to or upon the order of the Issuer.

Section 4.02 Registration of and Limitations on Transfer and Exchange of Notes; Appointment of Certificate Registrar. The Issuer shall cause to be kept at the Indenture Trustee's Corporate Trust Office a Note Register in which, subject to such reasonable regulations as it may prescribe, the Note Registrar shall provide for the registration of Notes and of transfers and exchanges of Notes as herein provided. The Issuer hereby appoints the Indenture Trustee as the initial Note Registrar.

Subject to the restrictions and limitations set forth below, upon surrender for registration of transfer of any Note at the Corporate Trust Office, the Issuer shall execute, and the Note Registrar shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Notes in authorized initial Note Balances evidencing the same aggregate Percentage Interests.

Subject to the foregoing, at the option of the Noteholders, Notes may be exchanged for other Notes of like tenor, in each case in authorized initial Note Balances evidencing the same aggregate Percentage Interests, upon surrender of the Notes to be exchanged at the Corporate Trust Office of the Note Registrar. Whenever any Notes are so surrendered for exchange, the Issuer shall execute and the Note Registrar shall authenticate and deliver the Notes which the Noteholder making the exchange is entitled to receive. Each Note presented or surrendered for registration of transfer or exchange shall (if so required by the Note Registrar) be duly endorsed by, or be accompanied by a written instrument of transfer in form reasonably satisfactory to the Note Registrar duly executed by, the Noteholder thereof or his attorney duly authorized in writing with such signature guaranteed by a commercial bank or trust company located or having a correspondent located in The City of New York. Notes delivered upon any such transfer or exchange will evidence the same obligations, and will be entitled to the same rights and privileges, as the Notes surrendered.

No service charge shall be imposed for any registration of transfer or exchange of Notes, but the Note Registrar shall require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any registration of transfer or exchange of Notes.

All Notes surrendered for registration of transfer and exchange shall be cancelled by the Note Registrar and delivered to the Indenture Trustee for subsequent destruction without liability on the part of either.

The Issuer hereby appoints the Indenture Trustee as Certificate Registrar to keep at its Corporate Trust Office a Certificate Register pursuant to Section 3.09 of the Trust Agreement in which, subject to such reasonable regulations as it may prescribe, the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges thereof pursuant to Section 3.05 of the Trust Agreement. The Indenture Trustee hereby accepts such appointment.

Each purchaser of a Note, by its acceptance of the Note, shall be deemed to have represented that the acquisition of such Note by the purchaser does not constitute or give rise to a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, for which no statutory, regulatory or administrative exemption is available.

Section 4.03 Mutilated, Destroyed, Lost or Stolen Notes. If (i) any mutilated Note is surrendered to the Indenture Trustee, or the Indenture Trustee receives evidence to its satisfaction of the destruction, loss or theft of any Note, and (ii) there is delivered to the Indenture Trustee such security or indemnity as may be required by it and the Issuer to hold the Issuer and the Indenture Trustee harmless, then, in the absence of notice to the Issuer, the Note Registrar or the Indenture Trustee that such Note has been acquired by a bona fide purchaser, and provided that the requirements of Section 8 405 of the UCC are met, the Issuer shall execute, and upon its request the Indenture Trustee shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Note, a replacement Note of the same class; provided, however, that if any such destroyed, lost or stolen Note, but not a mutilated Note, shall have become or within seven days shall be due and payable, instead of issuing a replacement Note, the Issuer may pay such destroyed, lost or stolen Note when so due or payable without surrender thereof. If, after the delivery of such replacement Note or payment of a destroyed, lost or stolen Note pursuant to the proviso to the preceding sentence, a bona fide purchaser of the original Note in lieu of which such replacement Note was issued presents for payment such original Note, the Issuer and the Indenture Trustee shall be entitled to recover such replacement Note (or such payment) from

the Person to whom it was delivered or any Person taking such replacement Note from such Person to whom such replacement Note was delivered or acquired by of such Person, except a bona fide purchaser, and shall be entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or expense incurred by the Issuer or the Indenture Trustee in connection therewith.

Upon the issuance of any replacement Note under this Section 4.03, the Issuer may require the payment by the Noteholder of such Note of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other reasonable expenses (including the fees and expenses of the Indenture Trustee) connected therewith.

Every replacement Note issued pursuant to this Section 4.03 in replacement of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Issuer, whether or not the mutilated, destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section 4.03 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

Section 4.04 Persons Deemed Owners. Prior to due presentment for registration of transfer of any Note, the Issuer, the Indenture Trustee and any agent of the Issuer or the Indenture Trustee may treat the Person in whose name any Note is registered (as of the day of determination) as the owner of such Note for the purpose of receiving payments of principal of and interest, if any, on such Note and for all other purposes whatsoever, whether or not such Note be overdue, and none of the Issuer, the Indenture Trustee or any agent of the Issuer or the Indenture Trustee shall be affected by notice to the contrary.

Section 4.05 Cancellation. All Notes surrendered for payment, registration of transfer, exchange or redemption shall, if surrendered to any Person other than the Indenture Trustee, be delivered to the Indenture Trustee and shall be promptly cancelled by the Indenture Trustee. The Issuer may at any time deliver to the Indenture Trustee for cancellation any Notes previously authenticated and delivered hereunder which the Issuer may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly cancelled by the Indenture Trustee. No Notes shall be authenticated in lieu of or in exchange for any Notes cancelled as provided in this Section 4.05, except as expressly permitted by this Indenture. All cancelled Notes may be held or disposed of by the Indenture Trustee in accordance with its standard retention or disposal policy as in effect at the time unless the Issuer shall direct by an Issuer Request that they be destroyed or returned to it; provided, however, that such Issuer Request is timely and the Notes have not been previously disposed of by the Indenture Trustee.

Section 4.06 Book-Entry Notes. The Notes, upon original issuance, shall be issued in the form of typewritten Notes representing the Book-Entry Notes, to be delivered to The Depository Trust Company, the initial Depository, by, or on behalf of, the Issuer. Such Notes shall initially be registered on the Note Register in the name of Cede & Co., the nominee of the initial Depository, and no Beneficial Owner shall receive a Definitive Note representing such Beneficial Owner's interest in such Note, except as provided in Section 4.08. Unless and until definitive, fully registered Notes (the "Definitive Notes") have been issued to Beneficial Owners pursuant to Section 4.08:

(a) the provisions of this Section 4.06 shall be in full force and effect;

(b) the Note Registrar and the Indenture Trustee shall be entitled to deal with the Depository for all purposes of this Indenture (including the payment of principal of and interest on the Notes and the giving of instructions or directions hereunder) as the sole holder of the Notes, and shall have no obligation to the Beneficial Owners;

(c) to the extent that the provisions of this Section 4.06 conflict with any other provisions of this Indenture, the provisions of this Section 4.06 shall control;

(d) the rights of Beneficial Owners shall be exercised only through the Depository and shall be limited to those established by law and agreements between such Owners of Notes and the Depository or the Depository Participants. Unless and until Definitive Notes are issued pursuant to Section 4.08, the initial Depository will make book-entry transfers among the Depository Participants and receive and transmit payments of principal of and interest on the Notes to such Depository Participants; and

(e) whenever this Indenture requires or permits actions to be taken based upon instructions or directions of Noteholders of Notes evidencing a specified percentage of the Note Balances of the Notes, the Depository shall be deemed to represent such percentage only to the extent that it has received instructions to such effect from Beneficial Owners or Depository Participants owning or representing, respectively, such required percentage of the beneficial interest in the Notes and has delivered such instructions to the Indenture

Section 4.07  Notices to Depository.  Whenever a notice or other communication to the Noteholders of the Notes is required under this Indenture, unless and until Definitive Notes shall have been issued to Beneficial Owners pursuant to Section 4.08, the Indenture Trustee shall give all such notices and communications specified herein to be given to Noteholders of the Notes to the Depository, and shall have no obligation to the Beneficial Owners.

Section 4.08  Definitive Notes. If (i) the Depositor determines that the Depository is no longer willing or able to properly discharge its responsibilities with respect to the Notes and the Depositor is unable to locate a qualified successor, (ii) the Depositor, with the prior consent of the Beneficial Owners, notifies the Indenture Trustee and the Depository that it has elected to terminate the book-entry system through the Depository, or (iii) after the occurrence of an Event of Default, Beneficial Owners of Notes representing beneficial interests aggregating at least a majority of the aggregate Term Note Balance of the Notes advise the Depository in writing that the continuation of a book-entry system through the Depository is no longer in the best interests of the Beneficial Owners, then the Depository shall notify all Beneficial Owners and the Indenture Trustee of the occurrence of any such event and of the availability of Definitive Notes to Beneficial Owners requesting the same. Upon surrender by the Depository to the Indenture Trustee of the typewritten Notes representing the Book-Entry Notes by the Depository (or Percentage Interest of the Book-Entry Notes being transferred pursuant to clause (iii) above), accompanied by registration instructions, the Issuer shall execute and the Indenture Trustee shall authenticate the Definitive Notes in accordance with the instructions of the Depository. None of the Issuer, the Note Registrar or the Indenture Trustee shall be liable for any delay in delivery of such instructions, and each may conclusively rely on, and shall be protected in relying on, such instructions. Upon the issuance of Definitive Notes, the Indenture Trustee shall recognize the Noteholders of the Definitive Notes as Noteholders.

Section 4.09  Tax Treatment.  The Issuer has entered into this Indenture, and the Notes will be issued, with the intention that, for federal, state and local income, single business and franchise tax purposes, the Notes will qualify as (i) regular interests in a REMIC as defined in the Code, which will be treated as indebtedness for purposes of such taxes and (ii) the right to receive payments from outside the REMIC. The Issuer, by entering into this Indenture, and each Noteholder, by its acceptance of its Note (and each Beneficial Owner by its acceptance of an interest in the applicable Book-Entry Note), agree to treat the Notes for federal, state and local income, single business and franchise tax purposes as (i) regular interests in a REMIC as defined in the Code, which will be treated as indebtedness for purposes of such taxes and (ii) the right to receive payments from outside the REMIC.

Section 4.10  Satisfaction and Discharge of Indenture.  This Indenture shall cease to be of further effect with respect to the Notes except as to (i) rights of registration of transfer and exchange, (ii) substitution of mutilated, destroyed, lost or stolen Notes, (iii) rights of Noteholders to receive payments of principal thereof and interest thereon, (iv) Sections 3.03, 3.04, 3.06, 3.09, 3.16, 3.18 and 3.19, (v) the rights, obligations and immunities of the Indenture Trustee hereunder (including the rights of the Indenture Trustee under Section 6.07 and the obligations of the Indenture Trustee under Section 4.11) and (vi) the rights of Noteholders as beneficiaries hereof with respect to the property so deposited with the Indenture Trustee payable to all or any of them, and the Indenture Trustee, on written demand of and at the expense of the Issuer, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture with respect to the Notes, when:

(A)  either:

(1) all Notes theretofore authenticated and delivered (other than (i) Notes that have been destroyed, lost or stolen and that have been replaced or paid as provided in Section 4.03 and (ii) Notes for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 3.03) have been delivered to the Indenture Trustee for cancellation; or

(2) all Notes not theretofore delivered to the Indenture Trustee for cancellation:

a)  have become due and payable;

b)  will become due and payable at the Final Payment Date within one year; or

c)  have been declared immediately due and payable pursuant to Section 5.02.

and the Issuer, in the case of (a) and (b) above, has irrevocably deposited or caused to be irrevocably deposited with the Indenture Trustee cash or direct obligations of

or obligations guaranteed by the United States of America (which will mature prior to the date such amounts are payable) in trust for such purpose, in an amount sufficient to pay and discharge the entire indebtedness on such Notes and Certificates then Outstanding not theretofore delivered to the Indenture Trustee for cancellation when due on the Final Payment Date;

(B)   the Issuer has paid or caused to be paid all other sums payable hereunder and under the Insurance Agreement by the Issuer; and

(C)   the Issuer has delivered to the Indenture Trustee and the Enhancer an Officer's Certificate and an Opinion of Counsel, each meeting the applicable requirements of Section 10.01 and each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with and, if the Opinion of Counsel relates to a deposit made in connection with Section 4.10(A)(2)b. above, such opinion shall further be to the effect that such deposit will not have any material adverse tax consequences to the Issuer, any Noteholders or any Certificateholders.

Section 4.11  Application of Trust Money. All monies deposited with the Indenture Trustee pursuant to Section 4.10 hereof shall be held in trust and applied by it, in accordance with the provisions of the Notes and this Indenture, to the payment, either directly or through any Paying Agent or Certificate Paying Agent, as the Indenture Trustee may determine, to the Securityholders of Securities, of all sums due and to become due thereon for principal and interest; but such monies need not be segregated from other funds except to the extent required herein or required by law.

Section 4.12  Subrogation and Cooperation. The Issuer and the Indenture Trustee acknowledge that (i) to the extent the Enhancer makes payments under the Policy on account of principal of or interest on the Notes, the Enhancer will be fully subrogated to the rights the Noteholders to receive such principal and interest, and (ii) the Enhancer shall be paid such principal and interest only from the sources and in the manner provided herein and in the Insurance Agreement for the payment of such principal and interest.

The Indenture Trustee shall cooperate in all respects with any reasonable request by the Enhancer for action to preserve or enforce the Enhancer's rights or interest under this Indenture or the Insurance Agreement, consistent with this Indenture and without limiting the rights of the Noteholders as otherwise set forth in the Indenture, including upon the occurrence and continuance of a default under the Insurance Agreement, a request (which request shall be in writing) to take any one or more of the following actions:

(i)   institute Proceedings for the collection of all amounts then payable on the Notes or under this Indenture in respect to the Notes and all amounts payable under the Insurance Agreement and to enforce any judgment obtained and collect from the Issuer monies adjudged due;

(ii)   sell the Trust Estate or any portion thereof or rights or interest therein, at one or more public or private Sales (as defined in Section 5.15 hereof) called and conducted in any manner permitted by law;

(iii)   file or record all assignments that have not previously been recorded;

(iv)   institute Proceedings from time to time for the complete or partial foreclosure of this Indenture; and

(v)   exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Enhancer hereunder.

Following the payment in full of the Notes, the Enhancer shall continue to have all rights and privileges provided to it under this Section and in all other provisions of this Indenture, until all amounts owing to the Enhancer have been paid in full.

Section 4.13  Repayment of Monies Held by Paying Agent. In connection with the satisfaction and discharge of this Indenture with respect to the Notes, all monies then held by any Paying Agent (other than the Indenture Trustee) under the provisions of this Indenture with respect to such Notes shall, upon demand of the Issuer, be paid to the Indenture Trustee to be held and applied according to Section 3.05; and thereupon, such Paying Agent shall be released from all further liability with respect to such monies.

Section 4.14  Temporary Notes. Pending the preparation of any Definitive Notes, the Issuer may execute and upon its written direction, the Indenture Trustee may authenticate and make available for delivery, temporary Notes that are printed, lithographed, typewritten, photocopied or otherwise produced, in any denomination, substantially of the tenor of the Definitive Notes in lieu of which they are issued and with such appropriate

insertions, omissions, substitutions and other variations as the officers executing such Notes may determine, as evidenced by their execution of such Notes.

If temporary Notes are issued, the Issuer will cause Definitive Notes to be prepared without unreasonable delay. After the preparation of the Definitive Notes, the temporary Notes shall be exchangeable for Definitive Notes upon surrender of the temporary Notes at the office or agency of the Indenture Trustee, without charge to the Noteholder. Upon surrender for cancellation of any one or more temporary Notes, the Issuer shall execute and the Indenture Trustee shall authenticate and make available for delivery, in exchange therefor, Definitive Notes of authorized denominations and of like tenor and aggregate principal amount. Until so exchanged, such temporary Notes shall in all respects be entitled to the same benefits under this Indenture as Definitive Notes.

ARTICLE V

Default And Remedies

Section 5.01 Events of Default. The Issuer shall deliver to the Indenture Trustee and the Enhancer, within five days after learning of the occurrence of any event that with the giving of notice and the lapse of time would become an Event of Default under clause (c) of the definition of "Event of Default" written notice in the form of an Officer's Certificate of its status and what action the Issuer is taking or proposes to take with respect thereto.

Section 5.02 Acceleration of Maturity; Rescission and Annulment. If an Event of Default shall occur and be continuing, then and in every such case the Indenture Trustee, acting at the direction of the Enhancer or the Noteholders of Notes representing not less than a majority of the aggregate Note Balance of the Notes, with the written consent of the Enhancer (so long as no Enhancer Default exists), may declare the Notes to be immediately due and payable by a notice in writing to the Issuer (and to the Indenture Trustee if given by Noteholders); and upon any such declaration, the unpaid principal amount of the Notes, together with accrued and unpaid interest thereon through the date of acceleration, shall become immediately due and payable.

At any time after such declaration of acceleration of maturity with respect to an Event of Default has been made and before a judgment or decree for payment of the money due has been obtained by the Indenture Trustee as hereinafter provided in this Article V, the Enhancer or the Noteholders of Notes representing a majority of the aggregate Note Balance of the Notes, with the written consent of the Enhancer, by written notice to the Issuer and the Indenture Trustee, may in writing waive the related Event of Default and rescind and annul such declaration and its consequences if:

(a) the Issuer has paid or deposited with the Indenture Trustee a sum sufficient to pay:

(i) all payments of principal of and interest on the Notes and all other amounts that would then be due hereunder or upon the Notes if the Event of Default giving rise to such acceleration had not occurred;

(ii) all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and its agents and counsel; and

(iii) all Events of Default, other than the nonpayment of the principal of the Notes that has become due solely by such acceleration, have been cured or waived as provided in Section 5.12.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

Section 5.03 Collection of Indebtedness and Suits for Enforcement by Indenture Trustee.

(a) The Issuer covenants that if default in the payment of (i) any interest on any Note when the same becomes due and payable, and such default continues for a period of five days, or (ii) the principal of or any installment of the principal of any Note when the same becomes due and payable, the Issuer shall, upon demand of the Indenture Trustee, pay to it, for the benefit of the Noteholders, the entire amount then due and payable on the Notes for principal and interest, with interest on the overdue principal, and in addition thereto such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Indenture

Trustee and its agents and counsel.

(b)In case the Issuer shall fail forthwith to pay such amounts upon such demand, the Indenture Trustee, in its own name and as trustee of an express trust, subject to the provisions of Section 10.17 hereof, may institute a Proceeding for the collection of the sums so due and unpaid, and may prosecute such Proceeding to judgment or final decree, and may enforce the same against the Issuer or other obligor on the Notes and collect in the manner provided by law out of the property of the Issuer or other obligor on the Notes, wherever situated, the monies adjudged or decreed to be payable.

(c)If an Event of Default shall occur and be continuing, the Indenture Trustee, subject to the provisions of Section 10.17 hereof, may, as more particularly provided in Section 5.04, in its discretion proceed to protect and enforce its rights and the rights of the Noteholders by such appropriate Proceedings as the Indenture Trustee shall deem most effective to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy or legal or equitable right vested in the Indenture Trustee by this Indenture or by law.

(d)If there shall be pending, relative to the Issuer or any other obligor on the Notes or any Person having or claiming an ownership interest in the Trust Estate, Proceedings under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law, or if a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuer or its property or such other obligor or Person, or if there shall be any other comparable judicial Proceedings relative to the Issuer or other any other obligor on the Notes, or relative to the creditors or property of the Issuer or such other obligor, then the Indenture Trustee, irrespective of whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise, and irrespective of whether the Indenture Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such Proceedings or otherwise:

(i)    to file and prove a claim or claims for the entire amount of principal and interest owing and unpaid in respect of the Notes and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee (including any claim for reasonable compensation to the Indenture Trustee and each predecessor Indenture Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee, except as a result of negligence, willful misconduct or bad faith) and of the Noteholders allowed in such Proceedings;

(ii)    unless prohibited by applicable law and regulations, to vote on behalf of the Noteholders in any election of a trustee, a standby trustee or Person performing similar functions in any such Proceedings;

(iii)    to collect and receive any monies or other property payable or deliverable on any such claims and to distribute all amounts received with respect to the claims of the Noteholders and of the Indenture Trustee on their behalf; and

(iv)    to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee or the Noteholders allowed in any judicial proceedings relative to the Issuer, its creditors and its property;

and any trustee, receiver, liquidator, custodian or other similar official in any such Proceeding is hereby authorized by each of such Noteholders to make payments to the Indenture Trustee, and, in the event the Indenture Trustee shall consent to the making of payments directly to such Noteholders, to pay to the Indenture Trustee such amounts as shall be sufficient to cover reasonable compensation to the Indenture Trustee, each predecessor Indenture Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee, except as a result of negligence, willful misconduct or bad faith.

(e)Nothing herein contained shall be deemed to authorize the Indenture Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Noteholder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Noteholder thereof or to authorize the Indenture Trustee to vote in respect of the claim of any Noteholder in any such proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar Person.

(f)All rights of action and of asserting claims under this Indenture, or under any of the Notes, may be enforced by the Indenture Trustee without the possession of any of the Notes or the production thereof in any trial or other Proceedings relative

thereto, and any such action or proceedings instituted by the Indenture Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Indenture Trustee, each predecessor Indenture Trustee and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the Notes.

(g)In any Proceedings to which the Indenture Trustee shall be a party (including any Proceedings involving the interpretation of any provision of this Indenture), the Indenture Trustee shall be held to represent all Noteholders, and it shall not be necessary to make any Noteholder a party to any such Proceedings.

Section 5.04  Remedies; Priorities.

(a)If an Event of Default shall have occurred and be continuing, then the Indenture Trustee, subject to the provisions of Section 10.17 hereof, with the written consent of the Enhancer may, or, at the written direction of the Enhancer, shall, do one or more of the following, in each case subject to Section 5.05:

(i)    institute Proceedings in its own name and as trustee of an express trust for the collection of all amounts then payable on the Notes or under this Indenture with respect thereto, whether by declaration or otherwise, and all amounts payable under the Insurance Agreement, enforce any judgment obtained, and collect from the Issuer and any other obligor on the Notes monies adjudged due;

(ii)    institute Proceedings from time to time for the complete or partial foreclosure of this Indenture with respect to the Trust Estate;

(iii)    exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Indenture Trustee and the Noteholders; and

(iv)    sell the Trust Estate or any portion thereof or rights or interest therein, at one or more public or private sales called and conducted in any manner permitted by law;

provided, however, that the Indenture Trustee may not sell or otherwise liquidate the Trust Estate following an Event of Default, unless (A) the Indenture Trustee obtains the consent of the Enhancer (or if an Enhancer Default has occurred and is continuing, the Noteholders of 100% of the aggregate Note Balance of the Notes), (B) the proceeds of such sale or liquidation distributable to Noteholders are sufficient to discharge in full all amounts then due and unpaid upon the Notes for principal and interest and to reimburse the Enhancer for any amounts drawn under the Policy and any other amounts due the Enhancer under the Insurance Agreement or (C) the Indenture Trustee determines that the Mortgage Loans will not continue to provide sufficient funds for the payment of principal of and interest on the Notes as they would have become due if the Notes had not been declared due and payable, and the Indenture Trustee obtains the consent of the Enhancer (or if an Enhancer Default has occurred and is continuing, and the Noteholders of 66 2/3% of the aggregate Note Balance of the Notes). In determining such sufficiency or insufficiency with respect to clause (B) and (C) above, the Indenture Trustee may, but need not, obtain and rely, and shall be protected in relying in good faith, upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose. Notwithstanding the foregoing, provided that a Servicing Default shall not have occurred, any Sale (as defined in Section 5.15 hereof) of the Trust Estate shall be made subject to the continued servicing of the Mortgage Loans by the Servicer as provided in the Servicing Agreement. Notwithstanding any sale of the Mortgage Loans pursuant to this Section 5.04(a), the Indenture Trustee shall, for so long as any principal or accrued interest on the Notes remains unpaid, continue to act as Indenture Trustee hereunder and to draw amounts payable under the Policy in accordance with its terms.

(b)If the Indenture Trustee collects any money or property pursuant to this Article V, it shall pay out such money or property in the following order:

FIRST: to the Indenture Trustee for amounts due under Section 6.07;

SECOND:to the Noteholders for amounts due and unpaid on the related Notes for interest, including accrued and unpaid interest on the Notes for any prior Payment Date, ratably, without preference or priority of any kind, according to the amounts due and payable on such Notes for interest from amounts available in the Trust Estate for such Noteholders;

THIRD: to the Noteholders for amounts due and unpaid on the related Notes for principal, ratably, without preference or priority of any kind, according to the amounts due and payable on such Notes for principal, from amounts available in the Trust Estate for such Noteholders, until the respective Note Balances of such Notes have been reduced to zero;

FOURTH: to the payment of all amounts due to the Enhancer under the Insurance Agreement; and

FIFTH: to the Certificate Paying Agent for amounts due under Article VIII of the Trust Agreement; and

SEVENTH:    to the payment of the remainder, if any, to the Issuer or any other person legally entitled thereto.

The Indenture Trustee may fix a record date and payment date for any payment to Noteholders pursuant to this Section 5.04. At least 15 days before such record date, the Indenture Trustee shall mail to each Noteholder a notice that states the record date, the payment date and the amount to be paid.

Section 5.05  Optional  Preservation  of  the  Trust  Estate.  If  the  Notes  have  been declared  due  and  payable  under  Section  5.02  following  an  Event  of  Default  and  such declaration and its consequences  have not been rescinded and annulled,  the Indenture Trustee may,  but need not (but shall at the written  direction of the Enhancer so long as no Enhancer default  exists),  elect  to  take  and  maintain  possession  of  the  Trust  Estate.  It  is  the desire  of the  parties hereto and the Noteholders  that there be at all times  sufficient funds for  the  payment  of  principal  of  and  interest  on  the  Notes  and  other  obligations  of  the Issuer  including  payment  to  the  Enhancer,  and  the  Indenture  Trustee  shall  take  such  desire into account  when  determining  whether  or not to take  and  maintain  possession  of  the  Trust Estate.  In  determining  whether  to take  and  maintain  possession  of  the  Trust  Estate,  the Indenture  Trustee  may,  but need  not,  obtain and  rely,  and  shall  be protected  in relying  in good  faith,  upon  an opinion of an  Independent  investment banking  or  accounting  firm of national  reputation  as to  the  feasibility  of such proposed  action and as to the sufficiency of the Trust Estate for such purpose.

Section 5.06  Limitation  of  Suits.  No  Noteholder  shall  have  any  right  to  institute any  Proceeding,  judicial  or  otherwise,  with  respect  to  this  Indenture,  or  for  the appointment  of  a receiver  or trustee,  or for any other  remedy  hereunder,  unless and subject to the provisions of Section 10.17 hereof:

(a) such  Noteholder  shall  have  previously  given  written  notice  to  the Indenture Trustee of a continuing Event of Default;

(b) the  Noteholders  of not less than 25% of the aggregate  Note Balance of the Notes shall have made written  request to the Indenture  Trustee to institute such  Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

(c) such  Noteholder  or  Noteholders  shall  have  offered  the  Indenture  Trustee reasonable  indemnity  against the  costs,  expenses  and  liabilities  to be incurred by it in complying with such request;

(d) the  Indenture  Trustee  for  60 days  after  its  receipt  of such  notice, request and offer of indemnity shall have failed to institute such Proceedings; and

(e) no direction  inconsistent  with such written  request shall have been given to the Indenture  Trustee  during such 60-day period by the  Noteholders  of a majority of the aggregate Note Balance of the Notes or by the Enhancer.

It is understood  and intended  that no Noteholder  shall have any right in any manner whatever by virtue of, or by availing  itself of, any  provision of this  Indenture to affect, disturb or  prejudice  the rights of any other  Noteholders  or to obtain or to seek to obtain priority  or  preference  over any  other  Noteholders  or to  enforce  any right  under  this Indenture, except in the manner herein provided.

In the event the Indenture Trustee shall receive conflicting or inconsistent  requests and indemnity from two or more groups of Noteholders,  each  representing less than a majority of the aggregate Note Balance of the Notes,  the Indenture  Trustee shall act at the direction of the group of  Noteholders  with the greater Note  Balance.  In the event that the Indenture Trustee shall receive  conflicting  or  inconsistent  requests and indemnity  from two or more groups of Noteholders  representing the same Note Balance,  then the Indenture  Trustee in its sole discretion may determine what action, if any, shall be taken,  notwithstanding  any other provisions of this Indenture.

Section 5.07  Unconditional  Rights  of Noteholders to Receive  Principal and Interest. Subject  to the  provisions  of this  Indenture,  the  Noteholder  of any Note  shall  have the right,  which is absolute  and  unconditional,  to receive  payment of the  principal  of and interest,  if any, on such Note on or after the  respective  due dates  thereof  expressed  in such  Note  or in  this  Indenture  and to  institute  suit  for  the  enforcement  of any  such payment, and such right shall not be impaired without the consent of such Noteholder.

Section 5.08  Restoration  of Rights and  Remedies.  If the  Indenture  Trustee or any Noteholder  has  instituted any  Proceeding to enforce any right or remedy under this Indenture

and such Proceeding has been discontinued or abandoned for any reason or has been determined adversely to the Indenture Trustee or to such Noteholder, then and in every such case the Issuer, the Indenture Trustee and the Noteholders shall, subject to any determination in such Proceeding, be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Indenture Trustee and the Noteholders shall continue as though no such Proceeding had been instituted.

Section 5.09  Rights and Remedies Cumulative.  No right or remedy herein conferred upon or reserved to the Indenture Trustee, the Enhancer or the Noteholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law, in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 5.10  Delay or Omission Not a Waiver.  No delay or omission of the Indenture Trustee, the Enhancer or any Noteholder to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article V or by law to the Indenture Trustee or to the Noteholders may be exercised from time to time, and as often as may be deemed expedient, by the Indenture Trustee or by the Noteholders, as the case may be.

Section 5.11  Control by Enhancer or Noteholders.  The Enhancer (so long as no Enhancer Default exists) or the Noteholders of a majority of the aggregate Note Balance of Notes with the consent of the Enhancer, shall have the right to direct the time, method and place of conducting any Proceeding for any remedy available to the Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee, provided that:

(a)such direction shall not be in conflict with any rule of law or with this Indenture;

(b)subject to the express terms of Section 5.04, any direction to the Indenture Trustee to sell or liquidate the Trust Estate shall be by the Enhancer (so long as no Enhancer Default exists) or by the Noteholders of Notes representing not less than 100% of the aggregate Note Balance of the Notes with the consent of the Enhancer;

(c)if the conditions set forth in Section 5.05 shall have been satisfied and the Indenture Trustee elects to retain the Trust Estate pursuant to such Section, then any direction to the Indenture Trustee by Noteholders of Notes representing less than 100% of the aggregate Note Balance of the Notes to sell or liquidate the Trust Estate shall be of no force and effect; and

(d)the Indenture Trustee may take any other action deemed proper by the Indenture Trustee that is not inconsistent with such direction.

Notwithstanding the rights of Noteholders set forth in this Section, subject to Section 6.01, the Indenture Trustee need not take any action that it determines (in its sole discretion) might involve it in liability or might materially adversely affect the rights of any Noteholders not consenting to such action, unless the Trustee has received satisfactory indemnity from the Enhancer or a Noteholder.

Section 5.12  Waiver of Past Defaults.  Prior to the declaration of the acceleration of the maturity of the Notes as provided in Section 5.02, the Enhancer (so long as no Enhancer Default exists) or the Noteholders of not less than a majority of the aggregate Note Balance of the Notes, with the consent of the Enhancer, may waive any past Event of Default and its consequences, except an Event of Default (a) with respect to payment of principal of or interest on any of the Notes or (b) in respect of a covenant or provision hereof that cannot be modified or amended without the consent of the Noteholder of each Note. In the case of any such waiver, the Issuer, the Indenture Trustee and the Noteholders shall be restored to their respective former positions and rights hereunder; but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereto.

Upon any such waiver, any Event of Default arising therefrom shall be deemed to have been cured and not to have occurred, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereto.

Section 5.13  Undertaking for Costs.  All parties to this Indenture agree, and each Noteholder by such Noteholder's acceptance of the related Note shall be deemed to have agreed, that any court may in its discretion require, in any Proceeding for the enforcement of any right or remedy under this Indenture, or in any Proceeding against the Indenture Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by any party litigant in such Proceeding of an undertaking to pay the costs of such Proceeding,

and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant (without regard to whether such party litigant is the plaintiff or the defendant in such Proceeding) having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section 5.13 shall not apply to (a) any Proceeding instituted by the Indenture Trustee, (b) any Proceeding instituted by any Noteholder, or group of Noteholders, in each case holding in the aggregate more than 10% of the aggregate Note Balance of the Notes or (c) any Proceeding instituted by any Noteholder for the enforcement of the payment of principal of or interest on any Note on or after the respective due dates expressed in such Note and in this Indenture.

Section 5.14  Waiver of Stay or Extension Laws.  The Issuer covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead or in any manner whatsoever, claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and the Issuer (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenants that it shall not hinder, delay or impede the execution of any power herein granted to the Indenture Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

Section 5.15  Sale of Trust Estate.

(a)The power to effect any sale or other disposition (a "Sale") of any portion of the Trust Estate pursuant to Section 5.04 is expressly subject to the provisions of Section 5.05 and this Section 5.15. The power to effect any such Sale shall not be exhausted by any one or more Sales as to any portion of the Trust Estate remaining unsold, but shall continue unimpaired until the entire Trust Estate shall have been sold or all amounts payable on the Notes and under this Indenture and under the Insurance Agreement shall have been paid. The Indenture Trustee may from time to time postpone any public Sale by public announcement made at the time and place of such Sale. The Indenture Trustee hereby expressly waives its right to any amount fixed by law as compensation for any Sale.

(b)The Indenture Trustee shall not in any private Sale sell the Trust Estate, or any portion thereof, unless:

(i)  the Enhancer direct(s) the Indenture Trustee in writing to make such Sale in accordance with the provisions of Section 5.04,

(ii)  the proceeds of such Sale would be not less than the entire amount that would be payable to the Noteholders under the Notes, the Certificateholders under the Certificates and the Enhancer in respect of amounts drawn under the Policy and any other amounts due the Enhancer under the Insurance Agreement, in full payment thereof in accordance with Section 5.02, on the Payment Date next succeeding the date of such Sale, or

(iii)  the Indenture Trustee determines, in its sole discretion, that the conditions for retention of the Trust Estate set forth in Section 5.05 cannot be satisfied (in making any such determination, the Indenture Trustee may rely and shall be protected in relying in good faith upon an opinion of an Independent investment banking firm obtained and delivered as provided in Section 5.05), and the Enhancer consents to such Sale.

The purchase by the Indenture Trustee of all or any portion of the Trust Estate at a private Sale shall not be deemed a Sale or other disposition thereof for purposes of this Section 5.15(b).

(c)Unless the Noteholders and the Enhancer shall have otherwise consented or directed the Indenture Trustee, at any public Sale of all or any portion of the Trust Estate at which a minimum bid equal to or greater than the amount described in paragraph (ii) of Section 5.15(b) has not been established by the Indenture Trustee and no Person bids an amount equal to or greater than such amount, then the Indenture Trustee shall bid an amount at least $1.00 more than the highest other bid, which bid shall be subject to the provisions of Section 5.15(d)(ii) herein.

(d)In connection with a Sale of all or any portion of the Trust Estate:

(i)  any Noteholder may bid for and, with the consent of the Enhancer, purchase the property offered for sale, and upon compliance with the terms of sale may hold, retain and possess and dispose of such property, without further accountability, and may, in paying the purchase money therefor, deliver any Notes or claims for interest thereon in lieu of cash up to the amount which shall, upon distribution of the net proceeds of such sale, be payable thereon, and such Notes, in case the amounts so payable thereon shall be less than the amount due thereon, shall be returned to the Noteholders thereof after being appropriately stamped to show such partial payment;

(ii) the Indenture Trustee may bid for and acquire the property offered for Sale in connection with the Notes secured hereby and, subject to any requirements of, and to the extent permitted by, applicable law in connection therewith, may purchase all or any portion of the Trust Estate in a private sale. In lieu of paying cash therefor, the Indenture Trustee may make settlement for the purchase price by crediting the gross Sale price against the sum of (A) the amount that would be distributable to the Noteholders and the Certificateholders and amounts owing to the Enhancer as a result of such Sale in accordance with Section 5.04(b) on the Payment Date next succeeding the date of such Sale and (B) the expenses of the Sale and of any Proceedings in connection therewith that are reimbursable to it, without being required to produce the Notes in order to complete any such Sale or in order for the net Sale price to be credited against such Notes, and any property so acquired by the Indenture Trustee shall be held and dealt with by it in accordance with the provisions of this Indenture;

(iii) the Indenture Trustee shall execute and deliver an appropriate instrument of conveyance transferring its interest in any portion of the Trust Estate in connection with a Sale thereof;

(iv) the Indenture Trustee is hereby irrevocably appointed the agent and attorney-in-fact of the Issuer to transfer and convey its interest in any portion of the Trust Estate in connection with a Sale thereof, and to take all action necessary to effect such Sale; and

(v) no purchaser or transferee at such a Sale shall be bound to ascertain the Indenture Trustee's authority, inquire into the satisfaction of any conditions precedent or see to the application of any monies.

Section 5.16   Action on Notes. The Indenture Trustee's right to seek and recover judgment on the Notes or under this Indenture shall not be affected by the seeking, obtaining or application of any other relief under or with respect to this Indenture. Neither the lien of this Indenture nor any rights or remedies of the Indenture Trustee or the Noteholders shall be impaired by the recovery of any judgment by the Indenture Trustee against the Issuer or by the levy of any execution under such judgment upon any portion of the Trust Estate or upon any of the assets of the Issuer. Any money or property collected by the Indenture Trustee shall be applied in accordance with Section 5.04(b).

Section 5.17   Performance and Enforcement of Certain Obligations.

(a) Promptly following a written request from the Enhancer or the Indenture Trustee (with the written consent of the Enhancer), the Issuer, in its capacity as owner of the Mortgage Loans, shall, with the written consent of the Enhancer, take all such lawful action as the Indenture Trustee may request to cause the Issuer to compel or secure the performance and observance by the Sellers and the Servicer, as applicable, of each of their obligations to the Issuer under or in connection with the Purchase Agreement and the Servicing Agreement, and to exercise any and all rights, remedies, powers and privileges lawfully available to the Issuer under or in connection with the Purchase Agreement and the Servicing Agreement to the extent and in the manner directed by the Indenture Trustee, as pledgee of the Mortgage Loans, including the transmission of notices of default on the part of the Sellers or the Servicer thereunder and the institution of legal or administrative actions or proceedings to compel or secure performance by the Sellers or the Servicer of each of their obligations under the Purchase Agreement and the Servicing Agreement.

(b) If an Event of Default shall have occurred and be continuing, the Indenture Trustee, as pledgee of the Mortgage Loans, subject to the rights of the Enhancer under the Servicing Agreement, may, and at the direction (which direction shall be in writing or by telephone (confirmed in writing promptly thereafter)) of the Noteholders of 66 2/3% of the aggregate Note Balance of the Notes, shall, exercise all rights, remedies, powers, privileges and claims of the Issuer against the Sellers or the Servicer under or in connection with the Purchase Agreement and the Servicing Agreement, including the right or power to take any action to compel or secure performance or observance by the Sellers or the Servicer, as the case may be, of each of their obligations to the Issuer thereunder and to give any consent, request, notice, direction, approval, extension or waiver under the Purchase Agreement and the Servicing Agreement, as the case may be, and any right of the Issuer to take such action shall not be suspended. In connection therewith, as determined by the Indenture Trustee, the Issuer shall take all actions necessary to effect the transfer of the Mortgage Loans to the Indenture Trustee.

ARTICLE VI

The Indenture Trustee

12-12020-mg    Doc 5677-4    Filed 11/12/13    Entered 11/12/13 18:48:56    Exhibit
PX-1519    Pg 29 of 80

12-12020-mg

Section 6.01  Duties of Indenture Trustee

(a)If an Event of Default shall have occurred and be continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of such Person's own affairs.

(b)Except during the continuance of an Event of Default:

(i)  the Indenture Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee; and

(ii)  in the absence of bad faith on its part, the Indenture Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, reports or opinions furnished to the Indenture Trustee and conforming to the requirements of this Indenture; provided, however, that the Indenture Trustee shall examine the certificates, reports and opinions to determine whether or not they conform to the requirements of this Indenture.

(c)The Indenture Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(i)  this paragraph does not limit the effect of Section 6.01(a);

(ii)  the Indenture Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent facts; and

(iii)  the Indenture Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 5.11 or any direction from the Enhancer that the Enhancer is entitled to give under any of the Basic Documents.

(d)The Indenture Trustee shall not be liable for interest on any money received by it except as the Indenture Trustee may agree in writing with the Issuer.

(e)Money held in trust by the Indenture Trustee need not be segregated from other funds except to the extent required by law or the terms of this Indenture or the Trust Agreement.

(f)No provision of this Indenture shall require the Indenture Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(g)Every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee shall be subject to the provisions of this Section and to the provisions of TIA.

(h)With respect to each Payment Date, on the Business Day following the related Determination Date, the Indenture Trustee shall forward or cause to be forwarded by mail, or other mutually agreed-upon method, to the Enhancer and the Servicer, a statement setting forth, to the extent applicable, during the Pre-Funding Period, the Pre-Funded Amount as of such Determination Date and any transfers of funds in connection therewith.

(i)The Indenture Trustee hereby accepts appointment as Certificate Paying Agent under the Trust Agreement and agrees to be bound by the provisions of the Trust Agreement relating to the Certificate Paying Agent. The Indenture Trustee hereby agrees to be bound by the provisions of Article IX of the Trust Agreement.

(j)The Indenture Trustee shall not be required to take notice or be deemed to have notice or knowledge of any Event of Default (except for an Event of Default specified in clause (a) of the definition thereof) unless a Responsible Officer of the Indenture Trustee shall have received written notice or has actual knowledge thereof. In the absence of receipt of such notice or such knowledge, the Indenture Trustee may conclusively assume that there is no default or Event of Default.

(k)The Indenture Trustee shall have no duty to see to any recording or filing of any financing statement or continuation statement evidencing a security interest or to see to the maintenance of any such recording or filing or to any rerecording or refiling of

any thereof.

Section 6.02  Rights of Indenture Trustee.

(a) The Indenture Trustee may rely and shall be protected in acting or refraining from acting in good faith upon any resolution, Officer's Certificate, opinion of counsel, certificate of auditors, or any other certificate, statement, instrument, report, notice, consent or other document believed by it to be genuine and to have been signed or presented by the proper person. The Indenture Trustee need not investigate any fact or matter stated in any such document.

(b) Before the Indenture Trustee acts or refrains from acting, it may require an Officer's Certificate or an Opinion of Counsel. The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on any such Officer's Certificate or Opinion of Counsel.

(c) The Indenture Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys or a custodian or nominee, and the Indenture Trustee shall not be responsible for any misconduct or negligence on the part of, or for the supervision of, any such agent, attorney, custodian or nominee appointed with due care by it hereunder.

(d) The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers; provided, however, that the Indenture Trustee's conduct does not constitute willful misconduct, negligence or bad faith.

(e) The Indenture Trustee may consult with counsel, and the advice or opinion of counsel with respect to legal matters relating to this Indenture and the Notes shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with the advice or opinion of such counsel.

(f) The Indenture Trustee shall not be personally liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Indenture, unless it shall be proved that the Indenture Trustee was negligent in ascertaining the pertinent facts.

(g) Prior to the occurrence of an Event of Default hereunder, and after the curing or waiver of all Events of Default that may have occurred, the Indenture Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Enhancer or the Noteholders representing a majority of the aggregate Note Balance; provided, however, that if the payment within a reasonable time to the Indenture Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Indenture Trustee, not assured to the Indenture Trustee by the security afforded to it by the terms of this Indenture, the Indenture Trustee may require indemnity satisfactory to the Indenture Trustee against such cost, expense or liability as a condition to taking any such action.

(h) The Indenture Trustee shall be under no obligation to exercise any of the trusts or powers vested in it by this Indenture or to institute, conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any of the Enhancer or the Noteholders, pursuant to the provisions of this Indenture, unless the Enhancer or the Noteholders shall have offered to the Indenture Trustee reasonable security or indemnity against the costs, expenses and liabilities which may be incurred therein or thereby; nothing contained herein shall, however, relieve the Indenture Trustee of the obligation, upon the occurrence of an Event of Default (which has not been cured or waived), to exercise such of the rights and powers vested in it by this Indenture, and to use the same degree of care and skill in their exercise as a prudent investor would exercise or use under the circumstances in the conduct of such investor's own affairs.

Section 6.03  Individual Rights of Indenture Trustee. The Indenture Trustee in its individual or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Issuer or its Affiliates with the same rights it would have if it were not Indenture Trustee. Any Note Registrar, co-registrar or co-paying agent may do the same with like rights. However, the Indenture Trustee must comply with Sections 6.11 and 6.12.

Section 6.04  Indenture Trustee's Disclaimer. The Indenture Trustee shall not be (i) responsible for and makes no representation as to the validity or adequacy of this Indenture or the Notes, (ii) accountable for the Issuer's use of the proceeds from the Notes or (iii) responsible for any statement of the Issuer in this Indenture or in any document issued in connection with the sale of the Notes or in the Notes, other than the Indenture Trustee's certificate of authentication thereon.

Section 6.05  Notice of Event of Default. If an Event of Default shall occur and be
continuing,  and if such Event of Default is known to a Responsible Officer of the Indenture
Trustee,  then the  Indenture  Trustee shall give prompt  notice  thereof to the Enhancer.  The
Indenture  Trustee  shall mail to each  Noteholder  notice of such Event of Default  within 90
days after it occurs.  Except in the case of an Event of Default  with  respect to the payment
of principal of or interest on any Note,  the  Indenture  Trustee may withhold  such notice if
and so long as a  committee of its  Responsible  Officers  in good  faith  determines  that
withholding such notice is in the interests of the Noteholders.

Section 6.06  Reports by  Indenture  Trustee to Noteholders.  The  Indenture  Trustee
shall  deliver  to  each  Noteholder  such  information  as may be  required  to enable  such
Noteholder  to prepare its federal and state  income tax returns.  In  addition,  upon Issuer
Request,  the  Indenture  Trustee shall promptly  furnish such information  reasonably requested
by the Issuer that is reasonably  available to the  Indenture  Trustee to enable the Issuer to
perform its federal and state income tax reporting obligations.

Section 6.07  Compensation and Indemnity.  The  Indenture  Trustee shall be compensated
and  indemnified  by the Servicer in accordance  with Section 6.06 of the Servicing  Agreement.
All amounts owing the  Indenture  Trustee  hereunder in excess of such amount,  as well as any
amount  owed to the  Indenture  Trustee  in  accordance  with  Section  6.06 of the  Servicing
Agreement,  to the extent the Servicer has failed to pay such amount,  shall be paid solely as
provided in Section 3.05 hereof (subject to the priorities set forth  therein).  The Indenture
Trustee's  compensation  shall not be  limited by any law on  compensation  of a trustee of an
express  trust.  The  Issuer  shall  reimburse  the  Indenture  Trustee  for all  reasonable
out-of-pocket  expenses incurred or made by it, including costs of collection,  in addition to
the  compensation for its services.  Such expenses shall include the reasonable  compensation,
expenses,  disbursements and advances of the Indenture Trustee's agents, counsel,  accountants
and experts.  The Issuer  shall  indemnify  the  Indenture  Trustee  against any and all loss,
liability  or expense  (including  attorneys'  fees)  incurred  by it in  connection  with the
administration  of this trust and the  performance  of its  duties hereunder.  The  Indenture
Trustee  shall  notify  the  Issuer  promptly  of any claim  for which it may seek  indemnity.
Failure by the  Indenture  Trustee to so notify the Issuer shall not relieve the Issuer of its
obligations  hereunder.  The Issuer shall  defend any such claim,  and the  Indenture  Trustee
may have  separate  counsel and the Issuer  shall pay the fees and expenses of such  counsel.
The  Issuer  is not  obligated  to  reimburse  any expense  or indemnify  against  any loss,
liability or expense  incurred by the Indenture  Trustee  through the Indenture  Trustee's own
willful misconduct, negligence or bad faith.

The  Issuer's  payment  obligations  to the  Indenture  Trustee pursuant to this
Section 6.07  shall survive the discharge of this Indenture or the  termination or resignation
of the  Indenture  Trustee.  When the Indenture  Trustee  incurs expenses after the occurrence
of an Event of Default  specified in clause (c) or (d) of the definition  thereof with respect
to the Issuer,  such  expenses are intended to  constitute  expenses of  administration  under
Title 11 of the United  States  Code or any other  applicable  federal  or state  bankruptcy,
insolvency or similar law.

Section 6.08  Replacement  of  Indenture  Trustee.  No  resignation  or removal of the
Indenture  Trustee and no  appointment  of a successor  Indenture  Trustee shall become effective
until the  acceptance of appointment  by the  successor  Indenture  Trustee  pursuant to this
Section  6.08.  The  Indenture  Trustee may resign at any time by so notifying  the Issuer and
the Enhancer.  The Enhancer or the  Noteholders  of a majority of the  aggregate  Note Balance
of the Notes may remove the  Indenture  Trustee by so notifying  the Indenture  Trustee and the
Enhancer  (if given by such  Noteholders)  and may  appoint  a  successor  Indenture  Trustee.
Unless a Servicer  Default has occurred and is  continuing,  the  appointment of any successor
Indenture  Trustee  shall be  subject  to the  prior  written  approval  of the  Servicer.  The
Issuer shall remove the Indenture Trustee if:

(a) the Indenture Trustee fails to comply with Section 6.11;

(b) the Indenture Trustee is adjudged a bankrupt or insolvent;

(c) a receiver or other public  officer  takes charge of the  Indenture  Trustee
or its property; or

(d) the Indenture  Trustee  otherwise becomes incapable of fulfilling its duties
under the Basic Documents.

If the Indenture  Trustee  resigns or is removed or if a vacancy  exists in the office
of the Indenture  Trustee for any reason (the  Indenture  Trustee in such event being referred
to herein as the retiring  Indenture  Trustee),  the Issuer shall promptly appoint a successor
Indenture  Trustee with the consent of the Enhancer,  which consent shall not be  unreasonably
withheld.  In  addition,  the  Indenture  Trustee  shall  resign  to avoid  being  directly  or
indirectly controlled by the Issuer.

A successor  Indenture  Trustee shall deliver a written  acceptance of its appointment
to the retiring  Indenture  Trustee and to the Issuer.  Thereupon,  the resignation or removal

of the retiring Indenture Trustee shall become effective, and the successor Indenture Trustee shall have all the rights, powers and duties of the successor Indenture Trustee under this Indenture. The successor Indenture Trustee shall mail a notice of its succession to the Noteholders. The retiring Indenture Trustee shall promptly transfer all property held by it as Indenture Trustee to the successor Indenture Trustee.

If a successor Indenture Trustee does not take office within 60 days after the retiring Indenture Trustee resigns or is removed, then the retiring Indenture Trustee, the Issuer or the Noteholders of a majority of aggregate Note Balance of the Notes may petition any court of competent jurisdiction for the appointment of a successor Indenture Trustee.

If the Indenture Trustee fails to comply with Section 6.11, any Noteholder may petition any court of competent jurisdiction for the removal of the Indenture Trustee and the appointment of a successor Indenture Trustee.

Notwithstanding the replacement of the Indenture Trustee pursuant to this Section, the Issuer's obligations under Section 6.07 shall continue for the benefit of the retiring Indenture Trustee.

Section 6.09  Successor Indenture Trustee by Merger. If the Indenture Trustee consolidates with, merges or converts into, or transfers all or substantially all its corporate trust business or assets to, another corporation or banking association, then the resulting, surviving or transferee corporation without any further act shall be the successor Indenture Trustee; provided, that such corporation or banking association shall be otherwise qualified and eligible under Section 6.11. The Indenture Trustee shall provide the Rating Agencies with written notice of any such transaction occurring after the Closing Date.

If at the time of any such succession by merger, conversion or consolidation, any of the Notes shall have been authenticated but not delivered, then any such successor to the Indenture Trustee may adopt the certificate of authentication of any predecessor trustee, and deliver such Notes so authenticated. If at such time any of the Notes shall not have been authenticated, any successor to the Indenture Trustee may authenticate such Notes either in the name of any predecessor hereunder or in the name of the successor to the Indenture Trustee; and in all such cases, such certificates shall have the full force that it is anywhere in the Notes or in this Indenture provided that the certificate of the Indenture Trustee shall have.

Section 6.10  Appointment of Co-Indenture Trustee or Separate Indenture Trustee.

(a)Notwithstanding any other provisions of this Indenture, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of the Trust Estate may at such time be located, the Indenture Trustee shall have the power and may execute and deliver all instruments to appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of the Issuer, and to vest in such Person or Persons, in such capacity and for the benefit of the Noteholders and the Enhancer, such title to the Trust Estate, or any part thereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Indenture Trustee may consider necessary or desirable. No co trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 6.11, and no notice to Noteholders of the appointment of any co trustee or separate trustee shall be required under Section 6.08 hereof.

(b)Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i)    all rights, powers, duties and obligations conferred or imposed upon the Indenture Trustee shall be conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Indenture Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed the Indenture Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the Trust Estate or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Indenture Trustee;

(ii)   no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii)  the Indenture Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

(c)Any notice, request or other writing given to the Indenture Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as

effectively as if given to each of them. Every  instrument  appointing  any separate  trustee
or  co-trustee  shall refer to this  Indenture  and the conditions of this Article VI. Each
separate  trustee  and co-trustee,  upon  its  acceptance  of the trusts  conferred,  shall be
vested  with the  estates or property  specified  in its  instrument  of appointment,  either
jointly with the Indenture Trustee or separately,  as may be provided therein,  subject to all
the provisions of this  Indenture,  specifically  including  every provision of this Indenture
relating to the conduct of its,  affecting  the  liability  of, or  affording  protection  to, the
Indenture  Trustee.  Every such instrument shall be filed with the Indenture Trustee.

(d)Any  separate  trustee  or  co-trustee  may  at  any  time  constitute  the
Indenture  Trustee,  its  agent  or  attorney-in-fact  with  full  power  and  authority,  to the
extent not  prohibited  by law, to do any lawful act under or in respect of this  Indenture on
its  behalf  and in its  name.  If any  separate  trustee  or co-trustee  shall die,  become
incapable of acting, resign or be removed, all of its estates,  properties,  rights,  remedies
and trusts shall vest in and be exercised by the Indenture  Trustee,  to the extent  permitted
by law, without the appointment of a new or successor trustee.

Section 6.11  Eligibility;  Disqualification.  The  Indenture  Trustee  shall at  all
times satisfy the  requirements of TIAss.310(a).  The  Indenture  Trustee shall have a combined
capital  and surplus of at least  $50,000,000 as set forth in its most recent  published  annual
report of condition  and it or its parent shall have a long-term  debt rating of "A" or better
by Moody's.  The Indenture  Trustee shall comply with TIAss.310(b);  provided,  however,  that
there shall be excluded  from the operation of TIAss.310(b)(1)  any  indenture or  indentures
under  which other  securities  of the Issuer are  outstanding  if the  requirements  for such
exclusion set forth in TIAss.310(b)(1) are met.

Section 6.12  Preferential  Collection of Claims Against Issuer.  The  Indenture
Trustee shall comply with TIAss.311(a),  excluding any creditor  relationship  listed in TIAss.
311(b).  An Indenture  Trustee  that has  resigned or been  removed  shall be subject to TIAss.
311(a) to the extent indicated.

Section 6.13  Representations  and  Warranties.  The  Indenture  Trustee  hereby
represents and warrants that:

(a)The  Indenture  Trustee  is duly  organized,  validly  existing  and in good
standing as a national  banking  association  with power and  authority to own its  properties
and to conduct its  business  as such  properties  are  currently  owned and such  business is
currently conducted.

(b)The  Indenture  Trustee has the power and  authority  to execute and deliver
this  Indenture and to carry out its terms;  and the  execution,  delivery and  performance of
this Indenture have been duly authorized by the  Indenture  Trustee by all necessary  corporate
action.

(c)The  consummation  of the  transactions  contemplated  by this Indenture and
the  fulfillment of the terms hereof do not conflict with,  result in any breach of any of the
terms  and  provisions  of, or  constitute  (with or without  notice or lapse of time) a default
under,  the  articles of  organization  or bylaws of the  Indenture  Trustee or any agreement or
other instrument to which the Indenture Trustee is a party or by which it is bound.

(d)To the Indenture  Trustee's  best  knowledge,  there are no Proceedings  or
investigations  pending  or  threatened  before  any court,  regulatory  body,  administrative
agency or other governmental  instrumentality  having  jurisdiction over the Indenture Trustee
or its properties (A) asserting the invalidity of this  Indenture,  (B) seeking to prevent the
consummation  of any of the  transactions  contemplated  by this  Indenture or (C) seeking any
determination  or ruling that might  materially  and adversely  affect  the  performance by the
Indenture  Trustee of its  obligations  under,  or the  validity  or  enforceability  of, this
Indenture.

(e)The  Indenture  Trustee  does not have notice of any adverse  claim (as such
terms are used in  Section 8-302  of the UCC in effect in the State of Delaware)  with respect
to the Mortgage Loans.

Section 6.14  Directions  to  Indenture  Trustee.  The  Indenture  Trustee  is  hereby
directed:

(a)to accept  the  pledge  of the  Mortgage  Loans  and hold the  assets of the
Trust in trust for the Noteholders and the Enhancer;

(b)to authenticate  and deliver the Notes  substantially  in the form prescribed
by Exhibit A in accordance with the terms of this Indenture; and

(c)to take all other  actions  as shall be  required to be taken by the terms of
this Indenture.

Section 6.15  Indenture  Trustee May Own  Securities.  The  Indenture  Trustee,  in its

individual or any other capacity, may become the owner or pledgee of securities with the same rights it would have if it were not Indenture Trustee.

ARTICLE VII

Noteholders' Lists and Reports

Section 7.01 Issuer to Furnish Indenture Trustee Names and Addresses of Noteholders. The Issuer shall furnish or cause to be furnished to the Indenture Trustee (a) not more than five days after each Record Date, a list, in such form as the Indenture Trustee may reasonably require, of the names and addresses of the Noteholders as of such Record Date, and (b) at such other times as the Indenture Trustee and the Enhancer may request in writing, within 30 days after receipt by the Issuer of any such request, a list of similar form and content as of a date not more than 10 days prior to the time such list is furnished; provided, however, that for so long as the Indenture Trustee is the Note Registrar, no such list need be furnished.

Section 7.02 Preservation of Information; Communications to Noteholders.

(a) The Indenture Trustee shall preserve, in as current a form as is reasonably practicable, the names and addresses of the Noteholders contained in the most recent list furnished to the Indenture Trustee as provided in Section 7.01 and the names and addresses of the Noteholders received by the Indenture Trustee in its capacity as Note Registrar. The Indenture Trustee may destroy any list furnished to it as provided in such Section 7.01 upon receipt of a new list so furnished.

(b) Noteholders may communicate pursuant to TIAss. 312(b) with other Noteholders and the Enhancer with respect to their rights under this Indenture or under the Notes.

(c) The Issuer, the Indenture Trustee and the Note Registrar shall have the protection of TIAss. 312(c).

Section 7.03 Reports by Issuer.

(a) The Issuer shall:

(i) file with the Indenture Trustee, within 15 days after the Issuer is required to file the same with the Commission, copies of the annual reports and the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may from time to time by rules and regulations prescribe) that the Issuer may be required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act;

(ii) file with the Indenture Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such additional information, documents and reports with respect to compliance by the Issuer with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

(iii) supply to the Indenture Trustee (and the Indenture Trustee shall transmit by mail to all Noteholders described in TIAss. 313(c)) such summaries of any information, documents and reports required to be filed by the Issuer pursuant to clauses (i) and (ii) of this Section 7.03(a) and by rules and regulations prescribed from time to time by the Commission.

(b) Unless the Issuer otherwise determines, the fiscal year of the Issuer shall end on December 31 of each year.

Section 7.04 Reports by Indenture Trustee. If required by TIAss.313(a), within 60 days after each January 1, beginning with January 1, 2007, the Indenture Trustee shall make available to each Noteholder as required by TIAss.313(c) and to the Enhancer a brief report dated as of such date that complies with TIAss.313(a). The Indenture Trustee also shall comply with TIAss.313(b).

A copy of each report at the time of its distribution to Noteholders shall be filed by the Indenture Trustee with the Commission, if required, and each stock exchange, if any, on which the Notes are listed. The Issuer shall notify the Indenture Trustee if and when the Notes are listed on any stock exchange.

Section 7.05 Exchange Act Reporting. In connection with the preparation and filing

of periodic reports by the Servicer pursuant to Article IV of the Servicing Agreement; the Indenture Trustee shall timely provide to the transferor of such Holders as shown on the Note Register or Certificate Register as of the end of each calendar year, (II) copies of all pleadings, other legal process and any other documents relating to any claims, charges or complaints involving the Indenture Trustee, as indenture trustee hereunder, or the Trust Estate that are received by the Indenture Trustee, (III) notice of all matters that, to the actual knowledge of a Responsible Officer of the Indenture Trustee, have been submitted to a vote of the Holders, other than those matters that have been submitted to a vote of the Holders at the request of the Depositor or the Servicer, and (IV) notice of any failure of the Indenture Trustee to make any payment to the Holders as required pursuant to this Indenture. The Indenture Trustee shall not have any liability with respect to the Servicer's failure to properly prepare or file such periodic reports and the Servicer shall not have any liability with respect to such failure resulting from or relating to the Servicer's inability or failure to obtain any information not resulting from the Servicer's own negligence or willful misconduct.

ARTICLE VIII

Accounts, Disbursements and Releases

Section 8.01 Collection of Money. Except as otherwise expressly provided herein, the Indenture Trustee may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all money and other property payable to or receivable by the Indenture Trustee pursuant to this Indenture. The Indenture Trustee shall apply all such money received by it as provided in this Indenture. Except as otherwise expressly provided in this Indenture, if any default occurs in the making of any payment or performance under any agreement or instrument that is part of the Trust Estate, the Indenture Trustee may take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate Proceedings. Any such action shall be without prejudice to any right to claim a Default or Event of Default under this Indenture and any right to proceed thereafter as provided in Article V.

Section 8.02 Trust Accounts.

(a) On or prior to the Closing Date, the Issuer shall cause the Indenture Trustee to establish and maintain, in the name of the Indenture Trustee, for the benefit of the Noteholders, the Certificate Paying Agent, on behalf of the Certificateholders, and the Enhancer, the Note Payment Account as provided in Section 3.01 of this Indenture.

(b) All monies deposited from time to time in the Note Payment Account pursuant to the Servicing Agreement and all deposits therein pursuant to this Indenture are for the benefit of the Noteholders, the Enhancer and the Certificate Paying Agent, on behalf of the Certificateholders, and all investments made with such monies, including all income or other gain from such investments, are for the benefit of the Servicer as provided in Section 5.01 of the Servicing Agreement.

On each Payment Date, the Indenture Trustee shall distribute all amounts on deposit in the Note Payment Account to the Noteholders in respect of the Notes and, in its capacity as Certificate Paying Agent, to the Certificateholders from the Distribution Account in the order of priority set forth in Section 3.05 (except as otherwise provided in Section 5.04(b)) and in accordance with the Servicing Certificate.

The Indenture Trustee shall invest any funds in the Note Payment Account in Permitted Investments selected in writing by the Servicer maturing no later than the Business Day preceding the next succeeding Payment Date (except that any investment in the institution with which the Note Payment Account is maintained may mature on such Payment Date) and shall not be sold or disposed of prior to the maturity. In addition, such Permitted Investments shall not be purchased at a price in excess of par. The Indenture Trustee shall have no liability whatsoever for investment losses on Permitted Investments, if such investments are made in accordance with the provisions of this Indenture and the Indenture Trustee is not the obligor under the Permitted Investment.

Section 8.03 Officer's Certificate. The Indenture Trustee shall receive at least seven days' notice when requested by the Issuer to take any action pursuant to Section 8.05(a), accompanied by copies of any instruments to be executed, and the Indenture Trustee shall also require, as a condition to such action, an Officer's Certificate, in form and substance satisfactory to the Indenture Trustee, stating the legal effect of any such action, outlining the steps required to complete the same, and concluding that all conditions precedent to the taking of such action have been complied with.

Section 8.04  Termination  Upon  Distribution to Noteholders.  This Indenture and the respective  obligations  and  responsibilities  of the Issuer  and the  Indenture Trustee created hereby shall  terminate upon the  distribution  to the Noteholders,  the Certificate  Paying Agent on behalf of the  Certificateholders  and the Indenture  Trustee of all amounts required to be distributed  pursuant to Article III and the  distribution to the Credit Enhancer of all amounts  owing to it;  provided,  however,  that in no event  shall the trust  created hereby continue  beyond the expiration of 21 years from the death of the survivor of the  descendants of Joseph P. Kennedy,  the late  ambassador of the United States to the Court of St.  James's, living on the date hereof.

Section 8.05  Release of Trust Estate.

(a)Subject  to the  payment  of its fees,  expenses  and  indemnification,  the Indenture  Trustee may,  and  when required by the  provisions  of this Indenture or the Servicing  Agreement,  shall,  execute  instruments to release  property from the lien of this Indenture,  or convey the  Indenture  Trustee's  interest  in the same,  in a manner and under circumstances  that are not  inconsistent  with the  provisions of this  Indenture.  No Person relying  upon an  instrument  executed by the  Indenture  Trustee as provided in Article  VIII hereunder  shall be bound to ascertain the  Indenture  Trustee's  authority,  inquire into the satisfaction of any conditions precedent, or see to the application of any monies.

(b)The  Indenture  Trustee shall,  at such  time  as  (i)  there  are no  Notes Outstanding,  (ii) all sums due the Indenture  Trustee  pursuant to this  Indenture  have been paid and  (iii)  all  sums due the Enhancer  have been paid and the Policy has been returned to the Credit Enhancer,  release any  remaining  portion of the Trust  Estate  that  secured the Notes from the lien of this Indenture.

(c)The  Indenture  Trustee  shall  release  property  from  the  lien  of  this Indenture  pursuant to this  Section 8.05  only upon receipt of an Issuer Request  accompanied by an Officers'  Certificate  and a letter from the Enhancer  stating that the Enhancer has no objection to such request from the Issuer.

(d)The  Indenture  Trustee  shall,  at  the  request  of  the  Issuer  or  the Depositor,  surrender  the Policy to the  Enhancer  for  cancellation,  upon final  payment of principal  of and interest on the Notes.

Section 8.06  Surrender of Notes Upon Final  Payment.  By acceptance of any Note,  the Noteholder  thereof agrees to surrender such Note to the Indenture Trustee promptly,  prior to such Noteholder's receipt of the final payment thereon.

---

ARTICLE IX

Supplemental Indentures

Section 9.01  Supplemental Indentures Without Consent of Noteholders.

(a)Without the consent of the  Noteholders of any Notes,  but with prior notice to the Rating  Agencies and the prior  written  consent of the Enhancer  (which  consent shall not be unreasonably  withheld and so long as no Enhancer  Default  exists),  the Issuer and the Indenture  Trustee,  when authorized by an Issuer Request,  at any time and from time to time, may  enter  into one or more  indentures  supplemental  hereto  (which  shall  conform to the provisions of the Trust  Indenture Act as in force at the date of the execution  thereof),  in form satisfactory to the Indenture Trustee, for any of the following purposes:

(i)   to correct or amplify  the  description  of any  property  at any time subject to the lien of this  Indenture,  or better to assure,  convey and confirm unto the  Indenture  Trustee any  property  subject or required to be subjected to the lien of this  Indenture,  or to  subject  to the  lien  of this  Indenture  additional property;

(ii)   to evidence the  succession,  in compliance  with the  applicable provisions  hereof,  of another  Person to the Issuer,  and the assumption by any such successor of the covenants of the Issuer herein and in the Notes contained;

(iii)  to add to the  covenants  of the  Issuer,  for the benefit of the Noteholders or the Enhancer,  or to surrender any right or power herein conferred upon the Issuer;

(iv)   to convey,  transfer,  assign, mortgage or pledge any property to or with the Indenture Trustee;

(v) to cure any ambiguity, to correct any error or to correct or supplement any provision herein or in any supplemental indenture that may be inconsistent with any other provision herein or in any supplemental indenture;

(vi) to make any other provisions with respect to matters or questions arising under this Indenture or in any supplemental indenture; provided, that such action shall not materially and adversely affect the interests of the Noteholders or the Enhancer (as evidenced by an Opinion of Counsel);

(vii) to evidence and provide for the acceptance of the appointment hereunder by a successor trustee with respect to the Notes and to add to or change any of the provisions of this Indenture as shall be necessary to facilitate the administration of the trusts hereunder by more than one trustee, pursuant to the requirements of Article VI; or

(viii) to modify, eliminate or add to the provisions of this Indenture to such extent as shall be necessary to effect the qualification of this Indenture under TIA or under any similar federal statute hereafter enacted and to add to this Indenture such other provisions as may be expressly required by TIA;

provided, however, that no such supplemental indenture shall be entered into unless the Indenture Trustee shall have received an Opinion of Counsel to the effect that the execution of such supplemental indenture will not give rise to any material adverse tax consequence to the Noteholders, including any Adverse REMIC Event.

The Indenture Trustee is hereby authorized to join in the execution of any such supplemental indenture and to make any further appropriate agreements and stipulations that may be therein contained.

(b)The Issuer and the Indenture Trustee, when authorized by an Issuer Request, may, without the consent of any Noteholder but with prior notice to the Rating Agencies and the Enhancer, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Noteholders under this Indenture; provided, however, that such action shall not, as evidenced by an Opinion of Counsel, (i) adversely affect in any material respect the interests of any Noteholder or the Enhancer or (ii) cause the Issuer to be subject to an entity level tax.

Section 9.02 Supplemental Indentures With Consent of Noteholders. The Issuer and the Indenture Trustee, when authorized by an Issuer Request, may, with prior notice to the Rating Agencies and with the consent of the Enhancer and the Noteholders of not less than a majority of the Note Balances affected thereby, by Act (as defined in Section 10.03 hereof) of such Noteholders delivered to the Issuer and the Indenture Trustee, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Noteholders under this Indenture; provided, however, that no such supplemental indenture shall, without the consent of the Noteholder of each Note affected thereby:

(a)change the date of payment of any installment of principal of or interest on any Note, or reduce the principal amount thereof or the Note Rate thereon, change the provisions of this Indenture relating to the application of collections on, or the proceeds of the sale of, the Trust Estate to payment of principal of or interest on the Notes, or change any place of payment where, or the coin or currency in which, any Note or the interest thereon is payable, or impair the right to institute suit for the enforcement of the provisions of this Indenture requiring the application of funds available therefor, as provided in Article V, to the payment of any such amount due on the Notes on or after the respective due dates thereof;

(b)reduce the percentage of the Note Balances, the consent of the Noteholders of which is required for any such supplemental indenture, or the consent of the Noteholders of which is required for any waiver of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences provided for in this Indenture;

(c)modify or alter the provisions of the proviso to the definition of the term "Outstanding" or modify or alter the exception in the definition of the term "Noteholder";

(d)reduce the percentage of the aggregate Note Balance of the Notes required to direct the Indenture Trustee to direct the Issuer to sell or liquidate the Trust Estate pursuant to Section 5.04;

(e)modify any provision of this Section 9.02 except to increase any percentage specified herein or to provide that certain additional provisions of this Indenture or the other Basic Documents cannot be modified or waived without the consent of the Noteholder of each Note affected thereby;

(f) modify any of the provisions of this Section in such manner as to affect the calculation of the amount of any payment of interest or principal due on any Note on any Payment Date (including the calculation of any of the individual components of such calculation); or

(g) permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of the Trust Estate or, except as otherwise permitted or contemplated herein, terminate the lien of this Indenture on any property at any time subject hereto or deprive the Noteholder of any Note of the security provided by the lien of this Indenture; and provided further, that such action shall not, as evidenced by an Opinion of Counsel, cause the Issuer to be subject to an entity level tax or cause any Adverse REMIC Event.

The Indenture Trustee may in its discretion determine whether or not any Notes would be affected by any supplemental indenture and any such determination shall be conclusive upon the Noteholders of all Notes, whether theretofore or thereafter authenticated and delivered hereunder. The Indenture Trustee shall not be liable for any such determination made in good faith.

It shall not be necessary for any Act (as defined in Section 10.03 hereof) of Noteholders under this Section 9.02 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

Promptly after the execution by the Issuer and the Indenture Trustee of any supplemental indenture pursuant to this Section 9.02, the Indenture Trustee shall mail to the Noteholders of the Notes to which such amendment or supplemental indenture relates a notice setting forth in general terms the substance of such supplemental indenture. Any failure of the Indenture Trustee to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

Section 9.03 Execution of Supplemental Indentures. In executing, or permitting the additional trusts created by, any supplemental indenture permitted by this Article IX or the modification thereby of the trusts created by this Indenture, the Indenture Trustee shall be entitled to receive and, subject to Sections 6.01 and 6.02, shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Indenture Trustee may, but shall not be obligated to, enter into any such supplemental indenture that affects the Indenture Trustee's own rights, duties, liabilities or immunities under this Indenture or otherwise.

Section 9.04 Effect of Supplemental Indenture. Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture shall be and shall be deemed to be modified and amended in accordance therewith with respect to the Notes affected thereby, and the respective rights, limitations of rights, obligations, duties, liabilities and immunities under this Indenture of the Indenture Trustee, the Issuer, the Enhancer and the Noteholders shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

Section 9.05 Conformity with Trust Indenture Act. Every amendment of this Indenture and every supplemental indenture executed pursuant to this Article IX shall conform to the requirements of TIA as in effect at the time of such amendment or supplement so long as this Indenture shall then be qualified under TIA.

Section 9.06 Reference in Notes to Supplemental Indentures. Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article IX may, and if required by the Indenture Trustee, shall, bear a notation in form approved by the Indenture Trustee as to any matter provided for in such supplemental indenture. If the Issuer or the Indenture Trustee shall so determine, new Notes so modified as to conform, in the opinion of the Indenture Trustee and the Issuer, to any such supplemental indenture may be prepared and executed by the Issuer and authenticated and delivered by the Indenture Trustee in exchange for Outstanding Notes.

ARTICLE X

Miscellaneous

Section 10.01 Compliance Certificates and Opinions, etc.

(a)Upon any application or request by the Issuer to the Indenture Trustee to take any action under any provision of this Indenture, the Issuer shall furnish to the Indenture Trustee and to the Enhancer (i) an Officer's Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and (ii) an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that, in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture, no additional certificate or opinion need be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(i)    a statement that each signatory of such certificate or opinion has read or has caused to be read such covenant or condition and the definitions herein relating thereto;

(ii)    a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(iii)    a statement that, in the opinion of each such signatory, such signatory has made such examination or investigation as is necessary to enable such signatory to express an informed opinion as to whether or not such covenant or condition has been complied with;

(iv)    a statement as to whether, in the opinion of each such signatory, such condition or covenant has been complied with; and

(v)    if the signer of such certificate or opinion is required to be Independent, the statement required by the definition of the term "Independent."

(b)(i) Prior to the deposit of any Collateral or other property or securities with the Indenture Trustee that is to be made the basis for the release of any property or securities subject to the lien of this Indenture, the Issuer shall, in addition to any obligation imposed in Section 10.01(a) or elsewhere in this Indenture, furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of each person signing such certificate as to the fair value (within 90 days of such deposit) to the Issuer of the Collateral or other property or securities to be so deposited.

(ii)    Whenever the Issuer is required to furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of any signer thereof as to the matters described in clause (i) above, the Issuer shall also deliver to the Indenture Trustee an Independent Certificate as to the same matters, if the fair value to the Issuer of the securities to be so deposited and of all other such securities made the basis of any such withdrawal or release since the commencement of the then-current fiscal year of the Issuer, as set forth in the certificates delivered pursuant to clause (i) above and this clause (ii), is 10% or more of the aggregate Note Balance of the Notes, but such a certificate need not be furnished with respect to any securities so deposited, if the fair value thereof to the Issuer as set forth in the related Officer's Certificate is less than $25,000 or less than one percent of the aggregate Note Balance of the Notes.

(iii)    Whenever any property or securities are to be released from the lien of this Indenture, the Issuer shall furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of each person signing such certificate as to the fair value (within 90 days of such release) of the property or securities proposed to be released and stating that in the opinion of such person the proposed release will not impair the security under this Indenture in contravention of the provisions hereof.

(iv)    Whenever the Issuer is required to furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of any signer thereof as to the matters described in clause (iii) above, the Issuer shall also furnish to the Indenture Trustee an Independent Certificate as to the same matters if the fair value of the property or securities and of all other property, other than property as contemplated by clause (v) below or securities released from the lien of this Indenture since the commencement of the then-current calendar year, as set forth in the certificates required by clause (iii) above and this clause (iv), equals 10% or more of the aggregate Note Balance of the Notes, but such certificate need not be furnished in the case of any release of property or securities if the fair value thereof as set forth in the related Officer's Certificate is less than $25,000 or less than one percent of the aggregate Note Balance of the Notes.

(v)    Notwithstanding the foregoing, this Section 10.01(b) shall not apply to (A) collection upon, sales or other dispositions of the Mortgage Loans as

and to the extent permitted or required by the Basic Documents or (B) the making of cash payments out of the Note Payment Account to the extent permitted or required by the Basic Documents, so long as the Issuer shall deliver to the Indenture Trustee every six months, commencing December 31, 2006, an Officer's Certificate of the Issuer stating that all the dispositions of Collateral described in clauses (A) or (B) above that occurred during the preceding six calendar months (or such longer period, in the case of the first such Officer's Certificate) were permitted or required by the Basic Documents and that the proceeds thereof were applied in accordance with the Basic Documents.

Section 10.02 Form of Documents Delivered to Indenture Trustee.

In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an Authorized Officer of the Issuer may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which his certificate or opinion is based are erroneous. Any such certificate of an Authorized Officer or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of any Seller or the Issuer, stating that the information with respect to such factual matters is in the possession of any Seller or the Issuer, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture, in connection with any application or certificate or report to the Indenture Trustee, it is provided that the Issuer shall deliver any document as a condition of the granting of such application, or as evidence of the Issuer's compliance with any term hereof, it is intended that the truth and accuracy, at the time of the granting of such application or at the effective date of such certificate or report (as the case may be), of the facts and opinions stated in such document shall in such case be conditions precedent to the right of the Issuer to have such application granted or to the sufficiency of such certificate or report. The foregoing shall not, however, be construed to affect the Indenture Trustee's right to rely upon the truth and accuracy of any statement or opinion contained in any such document as provided in Article VI.

Section 10.03 Acts of Noteholders.

(a)Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Noteholders in person or by agents duly appointed in writing; and except as herein otherwise expressly provided such action shall become effective when such instrument or instruments are delivered to the Indenture Trustee, and, where it is hereby expressly required, to the Issuer. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 6.01) conclusive in favor of the Indenture Trustee and the Issuer, if made in the manner provided in this Section 10.03.

(b)The fact and date of the execution by any person of any such instrument or writing may be proved in any manner that the Indenture Trustee deems sufficient.

(c)The ownership of Notes shall be proved by the Note Register.

(d)Any request, demand, authorization, direction, notice, consent, waiver or other action by the Noteholder of any Note shall bind the Noteholder of every Note issued upon the registration thereof or in exchange therefor or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Indenture Trustee or the Issuer in reliance thereon, whether or not notation of such action is made upon such Note.

Section 10.04 Notices, etc., to Indenture Trustee, Issuer, Enhancer and Rating Agencies. Any request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders or other documents provided or permitted by this Indenture shall be in writing and if such request, demand, authorization, direction, notice, consent, waiver or Act of

Noteholders is to be made upon, given or furnished to or filed with

(a)the Indenture Trustee by any Noteholder or by the Issuer shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Indenture Trustee at its Corporate Trust Office with a copy to JPMorgan Chase Bank, National Association, 227 W. Monroe Street, Chicago, Illinois 60606. The Indenture Trustee shall promptly transmit any notice received by it from the Noteholders to the Issuer,

(b)the Issuer by the Indenture Trustee or by any Noteholder shall be sufficient for every purpose hereunder if in writing and mailed first-class, postage prepaid to the Issuer addressed to: GMACM Home Equity Loan Trust 2006-HE2, in care of the Owner Trustee, or at any other address previously furnished in writing to the Indenture Trustee by the Issuer. The Issuer shall promptly transmit any notice received by it from the Noteholders to the Indenture Trustee, or

(c)the Enhancer by the Issuer, the Indenture Trustee or by any Noteholders shall be sufficient for every purpose hereunder to in writing and mailed, first-class postage pre-paid, or personally delivered or telecopied to: Financial Guaranty Insurance Company, 125 Park Avenue, New York, New York 10017, Attention: Structured Finance Surveillance (GMACM Home Equity Loan Trust 2006-HE2), telecopier number (212) 312-3220. The Enhancer shall promptly transmit any notice received by it from the Issuer, the Indenture Trustee or the Noteholders to the Issuer or Indenture Trustee, as the case may be.

Notices required to be given to the Rating Agencies by the Issuer, the Indenture Trustee or the Owner Trustee shall be in writing, personally delivered or mailed by certified mail, return receipt requested, to (i) in the case of Moody's, at the following address: Moody's Investors Service, Inc., ABS Monitoring Department, 99 Church Street, New York, New York 10007 and (ii) in the case of Standard & Poor's, at the following address: Standard & Poor's, 55 Water Street, New York, New York 10041-0003, Attention: Asset Backed Surveillance Department; or, as to each of the foregoing Persons, at such other address as shall be designated by written notice to the other foregoing Persons.

Section 10.05 Notices to Noteholders; Waiver. Where this Indenture provides for a Notice, certificate, opinion, report or similar delivery to be given to any transaction party or to a Rating Agency, a copy of such document shall be contemporaneously sent to the Enhancer. Where this Indenture provides for notice to Noteholders of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if in writing and mailed, first-class, postage prepaid to each Noteholder affected by such event, at such Person's address as it appears on the Note Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice. In any case where notice to Noteholders is given by mail, neither the failure to mail such notice nor any defect in any notice so mailed to any particular Noteholder shall affect the sufficiency of such notice with respect to other Noteholders, and any notice that is mailed in the manner herein provided shall conclusively be presumed to have been duly given regardless of whether such notice is in fact actually received.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Noteholders shall be filed with the Indenture Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such a waiver.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Noteholders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Indenture Trustee shall be deemed to be a sufficient giving of such notice.

Where this Indenture provides for notice to the Rating Agencies, failure to give such notice shall not affect any other rights or obligations created hereunder, and shall not under any circumstance constitute an Event of Default.

Section 10.06 Alternate Payment and Notice Provisions. Notwithstanding any provision of this Indenture or any of the Notes to the contrary, the Issuer may enter into any agreement with any Noteholder providing for a method of payment, or notice by the Indenture Trustee to such Noteholder, that is different from the methods provided for in this Indenture for such payments or notices. The Issuer shall furnish to the Indenture Trustee a copy of each such agreement and the Indenture Trustee shall cause payments to be made and notices to be given in accordance with such agreements.

Section 10.07 Conflict with Trust Indenture Act. If any provision hereof limits, qualifies or conflicts with another provision hereof that is required to be included in this Indenture by any of the provisions of TIA, such required provision shall control.

The provisions of TIAss.ss. 310 through 317 that impose duties on any Person (including the provisions automatically deemed included herein unless expressly excluded by this

Indenture) are a part of and govern this Indenture, whether or not physically contained herein.

Section 10.08 Effect of Headings. The Article and Section headings herein are for convenience only and shall not affect the construction hereof.

Section 10.09 Successors and Assigns. All covenants and agreements in this Indenture and the Notes by the Issuer shall bind its successors and assigns, whether so expressed or not. All agreements of the Indenture Trustee in this Indenture shall bind its successors, co-trustees and agents.

Section 10.10 Severability. In case any provision in this Indenture or in the Notes shall be held invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby.

Section 10.11 Benefits of Indenture. Nothing in this Indenture or in the Notes, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, and the Noteholders, the Enhancer, and any other party secured hereunder, and any other Person with an ownership interest in any part of the Trust Estate, any benefit or any legal or equitable right, remedy or claim under this Indenture. The Enhancer shall be a third party beneficiary of this Indenture.

Section 10.12 Legal Holidays. In any case where the date on which any payment is due shall not be a Business Day, then (notwithstanding any other provision of the Notes or this Indenture) payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest shall accrue for the period from and after any such nominal date.

Section 10.13 GOVERNING LAW. THIS AGREEMENT AND THE NOTES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES THEREOF, OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 10.14 Counterparts. This Indenture may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 10.15 Recording of Indenture. If this Indenture is subject to recording in any appropriate public recording offices, such recording is to be effected by the Issuer and at its expense accompanied by an Opinion of Counsel (which counsel shall be reasonably acceptable to the Indenture Trustee) to the effect that such recording is necessary either for the protection of the Noteholders or any other Person secured hereunder or for the enforcement of any right or remedy granted to the Indenture Trustee under this Indenture.

Section 10.16 Issuer Obligation. No recourse may be taken, directly or indirectly, with respect to the obligations of the Issuer, the Owner Trustee or the Indenture Trustee on the Notes or under this Indenture or any certificate or other writing delivered in connection herewith or therewith, against (i) the Indenture Trustee or the Owner Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuer or (iii) any partner, owner, beneficiary, agent, officer, director, employee or agent of the Indenture Trustee or the Owner Trustee in its individual capacity, any holder of a beneficial interest in the Issuer, the Owner Trustee or the Indenture Trustee or of any successor or assign of the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such Person may have expressly agreed (it being understood that the Indenture Trustee and the Owner Trustee have no such obligations in their respective individual capacities), and except that any such partner, owner or beneficiary shall be fully liable, to the extent provided by applicable law, for any unpaid consideration for stock, unpaid capital contribution or failure to pay any installment or call owing to such entity. For all purposes of this Indenture, in the performance of any duties or obligations of the Issuer hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VI, VII and VIII of the Trust Agreement.

Section 10.17 No Petition. The Indenture Trustee, by entering into this Indenture, and each Noteholder, by its acceptance of a Note, hereby covenant and agree that they will not at any time institute against the Depositor or the Issuer, or join in any institution against the Depositor or the Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to the Notes, this Indenture or any of the other Basic Documents.

Section 10.18 Inspection. The Issuer agrees that, on reasonable prior notice, it shall permit any representative of the Indenture Trustee, during the Issuer's normal business hours, to examine all the books of account, records, reports and other papers of the Issuer, to make copies and extracts therefrom, to cause such books to be audited by Independent certified public accountants, and to discuss the Issuer's affairs, finances and

accounts with the issuer's officers, employees and independent certified public
accountants, all at such reasonable times as may be reasonably requested. The
Indenture Trustee shall and shall cause its representatives to hold in confidence all such
information except to the extent disclosure may be required by law (and all reasonable
applications for confidential treatment are unavailing) and except to the extent that the
Indenture Trustee may reasonably determine that such disclosure is consistent with its
obligations hereunder.

---

ARTICLE XI

REMIC Provisions

Section 11.01 REMIC Administration.

(a)     The REMIC Administrator shall make an election to treat the Trust Estate, as set
forth in Section 2.06 of the Trust Agreement, as three REMICs under the Code and, if
necessary, under applicable state law, in accordance with Section 2.06 of the Trust
Agreement.  Such election will be made on Form 1066 or other appropriate federal tax or
information return (including Form 8811) or any appropriate state return for the taxable
year ending on the last day of the calendar year in which the Securities are issued.  For
the purposes of the REMIC elections in respect of the Trust Estate, Securities and interests
to be designated as the "regular interests" and the sole class of "residual interests" in
each REMIC will be set forth in Section 11.03.  The REMIC Administrator and the Indenture
Trustee shall not permit the creation of any "interests" (within the meaning of Section 860G
of the Code) in each REMIC elected in respect of the Trust Fund other than the "regular
interests" and "residual interests" so designated.  The REMIC Administrator shall prepare
and file or distribute such forms as may be required under the Code and related Treasury
Regulations with respect to any payments of Interest Carry Forward Amounts to the holders of
the Class A-IO Notes consistent with their treatment as payments pursuant to an interest
rate cap agreement for federal tax purposes. The REMIC Administrator may assume that such
interest rate cap contract has a value of zero.

(b)     The Closing Date is hereby designated as the "startup day" of each of REMIC I and
REMIC II as designated in Section 11.03 below, the Trust Estate within the meaning of
Section 860G(a)(9) of the Code.

(c)     GMAC Mortgage Corporation shall hold a Class R Certificate representing at least a
0.01% Percentage Interest in each Class of the Class R Certificates and shall be designated
as "the tax matters person" with respect to each REMIC in the manner provided under Treasury
regulations ss.1.860F-4(d) and Treasury regulations ss.301.6231(a)(7)-1.  The
REMIC Administrator, on behalf of the Tax Matters Partner, shall (i) act on behalf of each
REMIC in relation to any tax matter or controversy involving the Trust Estate and
(ii) represent the Trust Estate in any administrative or judicial proceeding relating to an
examination or audit by any governmental taxing authority with respect thereto. The legal
expenses, including without limitation attorneys' or accountants' fees, and costs of any
such proceeding and any liability resulting therefrom shall be expenses of the Trust Estate
and the REMIC Administrator shall be entitled to reimbursement therefor out of amounts
attributable to the Mortgage Loans on deposit in the Custodial Account unless such legal
expenses and costs are incurred by reason of the REMIC Administrator's willful misfeasance,
bad faith or gross negligence.

(d)     The REMIC Administrator shall prepare or cause to be prepared all of the Tax Returns
that it determines are required with respect to each REMIC created hereunder and, if
approval therefore is received from the applicable District Director of the Internal Revenue
Service, shall sign and file such returns in a timely manner and, otherwise, shall, shall
deliver such Tax Returns in a timely manner to the Owner Trustee, if the Owner Trustee is
required to sign such returns in accordance with Section 5.03 of the Trust Agreement, and
shall sign (if the Owner Trustee is not so required) and file such Tax Returns in a timely
manner. The expenses of preparing such returns shall be borne by the REMIC Administrator
without any right of reimbursement therefor. The REMIC Administrator agrees to indemnify
and hold harmless the Owner Trustee with respect to any tax or liability arising from the
Owner Trustee's signing of Tax Returns that contain errors or omissions. The Indenture
Trustee and Servicer shall promptly provide the REMIC Administrator with such information as
the REMIC Administrator may from time to time request for the purpose of enabling the
REMIC Administrator to prepare Tax Returns.

(e)     The REMIC Administrator shall provide (i) to any Transferor of a Class R Certificate
such information as is necessary for the application of any tax relating to the transfer of
a Class R Certificate to any Person who is not a Permitted Transferee, (ii) to the Indenture
Trustee, and the Indenture Trustee shall forward to the Noteholders and the
Certificateholders, such information or reports as are required by the Code or the

REMIC Provisions including reports relating to interest, original issue discount and market
discount or premium (using the Prepayment Assumption) and to the Internal Revenue
Service the name, title, address and telephone number of the person who will serve as the
representative of each REMIC.

(f)    The Servicer and the REMIC Administrator shall take such actions and shall cause each
REMIC created hereunder to take such actions as are reasonably within the Servicer's or the
REMIC Administrator's control and the scope of its duties more specifically set forth herein
as shall be necessary or desirable to maintain the status of each REMIC as a REMIC under the
REMIC Provisions (and the Indenture Trustee shall assist the Servicer and the
REMIC Administrator, to the extent reasonably requested by the Servicer and the
REMIC Administrator to do so). The Servicer and the REMIC Administrator shall not knowingly
or intentionally take any action, cause the Trust Estate to take any action or fail to take
(or fail to cause to be taken) any action reasonably within their respective control that,
under the REMIC Provisions, if taken or not taken, as the case may be, could (i) endanger
the status of any portion of any of the REMICs as a REMIC or (ii) result in the imposition
of a tax upon any of the REMICs (including but not limited to the tax on prohibited
transactions as defined in Section 860F(a)(2) of the Code and the tax on contributions to a
REMIC set forth in Section 860G(d) of the Code) (either such event, in the absence of an
Opinion of Counsel or the indemnification referred to in this sentence, an "Adverse
REMIC Event") unless the Servicer or the REMIC Administrator, as applicable, has received an
Opinion of Counsel (at the expense of the party seeking to take such action or, if such
party fails to pay such expense, and the Servicer or the REMIC Administrator, as applicable,
determines that taking such action is in the best interest of the Trust Estate and the
Noteholders and the Certificateholders, at the expense of the Trust Estate, but in no event
at the expense of the Servicer, the REMIC Administrator, the Owner Trustee or the Indenture
Trustee) to the effect that the contemplated action will not, with respect to each
REMIC created hereunder, endanger such status or, unless the Servicer, the
REMIC Administrator or both, as applicable, determine in its or their sole discretion to
indemnify the Trust Estate against the imposition of such a tax, result in the imposition of
such a tax. Wherever in this Agreement a contemplated action may not be taken because the
timing of such action might result in the imposition of a tax on the Trust Estate, or may
only be taken pursuant to an Opinion of Counsel that such action would not impose a tax on
the Trust Estate, such action may nonetheless be taken provided that the indemnity given in
the preceding sentence with respect to any taxes that might be imposed on the Trust Estate
has been given and that all other preconditions to the taking of such action have been
satisfied. The Indenture Trustee shall not take or fail to take any action (whether or not
authorized hereunder) as to which the Servicer or the REMIC Administrator, as applicable,
has advised it in writing that it has received an Opinion of Counsel to the effect that an
Adverse REMIC Event could occur with respect to such action. In addition, prior to taking
any action with respect to any of the REMICs created hereunder or any related assets
thereof, or causing any of the REMICs to take any action, which is not expressly permitted
under the terms of this Agreement, the Indenture Trustee will consult with the Servicer or
the REMIC Administrator, as applicable, or its designee, in writing, with respect to whether
such action could cause an Adverse REMIC Event to occur with respect to any of the REMICs,
and the Indenture Trustee shall not take any such action or cause either REMIC to take any
such action as to which the Servicer or the REMIC Administrator, as applicable, has advised
it in writing that an Adverse REMIC Event could occur. The Servicer or the
REMIC Administrator, as applicable, may consult with counsel to make such written advice, and
the cost of same shall be borne by the party seeking to take the action not expressly
permitted by this Agreement, but in no event at the expense of the Servicer or the
REMIC Administrator. At all times as may be required by the Code, the Servicer will to the
extent within its control and the scope of its duties more specifically set forth herein,
maintain substantially all of the assets of each REMIC created hereunder as "qualified
mortgages" as defined in Section 860G(a)(3) of the Code and "permitted investments" as
defined in Section 860G(a)(5) of the Code.

(g)    In the event that any tax is imposed on "prohibited transactions" of any of the
REMICs created hereunder as defined in Section 860F(a)(2) of the Code, on "net income from
foreclosure property" of any of the REMICs as defined in Section 860G(c) of the Code, on any
contributions to any of the REMICs after the Startup Day thereof pursuant to Section
860G(d) of the Code, or any other tax is imposed by the Code or any applicable provisions of
state or local tax laws, such tax shall be charged (i) to the Servicer, if such tax arises
out of or results from a breach by the Servicer of any of its obligations under this
Agreement or the Servicer has in its sole discretion determined to indemnify the Trust
Estate against such tax, (ii) to the Indenture Trustee, if such tax arises out of or results
from a breach by the Trustee of any of its obligations under this Article XI, or (iii)
otherwise against amounts on deposit in the Custodial Account and on the Payment Date(s)
following such reimbursement the aggregate of such taxes shall be allocated in reduction of
the accrued interest due on each Class entitled thereto on a pro rata basis.

(h)    The Indenture Trustee and the Servicer shall, for federal income tax purposes,
maintain books and records with respect to each REMIC created hereunder on a calendar year
and on an accrual basis or as otherwise may be required by the REMIC Provisions.

(i)    Following the Startup Day, neither the Servicer nor the Indenture Trustee shall

accept any contributions of assets to any of the REMICs created hereunder unless (subject to
Section 11.01(f)) the Servicer and the Indenture Trustee have received an Opinion of
Counsel (at the expense of the party seeking to make such contribution) to the effect that
the inclusion of such assets in such REMIC will not cause any of the REMICs to fail to
qualify as a REMIC at any time that any Notes or Certificates are outstanding or subject any
of the REMICs to any tax under the REMIC Provisions or other applicable provisions of
federal, state and local law or ordinances.

(j)    Neither the Servicer nor the Trustee shall (subject to Section 11.01(f)) enter into
any arrangement by which any of the REMICs created hereunder will receive a fee or other
compensation for services nor permit any of the REMICs to receive any income from assets
other than "qualified mortgages" as defined in Section 860G(a)(3) of the Code or "permitted
investments" as defined in Section 860G(a)(5) of the Code.

(k)    Solely for the purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations,
the "latest possible maturity date" by which the Certificate Principal Balance of each Class
of Notes and Certificates representing a regular interest in the applicable REMIC is the
Final Payment Date.

(l)    Within 30 days after the Closing Date, the REMIC Administrator shall prepare and file
with the Internal Revenue Service Form 8811, "Information Return for Real Estate Mortgage
Investment Conduits (REMIC) and Issuers of Collateralized Debt Obligations" for each
REMIC created hereunder.

(m)    Neither the Indenture Trustee nor the Servicer shall sell, dispose of or substitute
for any of the Mortgage Loans (except in connection with (i) the default, imminent default
or foreclosure of a Mortgage Loan, including but not limited to, the acquisition or sale of
a Mortgaged Property acquired by deed in lieu of foreclosure, (ii) the bankruptcy of any of
the REMICs created hereunder, (iii) the termination of the applicable REMIC pursuant to
Section 8.02 of the Trust Agreement or (iv) a purchase of Mortgage Loans pursuant to the
Purchase Agreement) nor acquire any assets for any of the REMICs, nor sell or dispose of any
investments in the Custodial Account or the Payment Account for gain nor accept any
contributions to any of the REMICs after the Closing Date unless it has received an Opinion
of Counsel that such sale, disposition, substitution or acquisition will not (a) affect
adversely the status of any of the REMICs as a REMIC or (b) unless the Servicer has
determined in its sole discretion to indemnify the Trust Estate against such tax, cause any
REMIC to be subject to a tax on "prohibited transactions" or "contributions" pursuant to the
REMIC Provisions.

(n)    The Indenture Trustee will apply for an employer identification number from the
Internal Revenue Service on a Form SS-4 or any other acceptable method for all tax entities.

Section 11.02 Servicer, REMIC Administrator and Indenture Trustee Indemnification.

The Indenture Trustee agrees to indemnify the Trust Estate, the
REMIC Administrator and the Servicer for any taxes and costs including, without limitation,
any reasonable attorneys fees imposed on or incurred by the Trust Estate or the Servicer, as
a result of a breach of the Indenture Trustee's covenants set forth in Article VIII or this
Article XI.

The REMIC Administrator agrees to indemnify the Trust Estate, the Servicer,
the Depositor, the Owner Trustee and the Indenture Trustee for any taxes and costs
(including, without limitation, any reasonable attorneys' fees) imposed on or incurred by
the Trust Estate, the Depositor, GMACM Mortgage Corporation, the Servicer, the Owner Trustee
or the Indenture Trustee, as a result of a breach of the REMIC Administrator's covenants set
forth in this Article XI with respect to compliance with the REMIC Provisions, including
without limitation, any penalties arising from the Owner Trustee's execution of Tax Returns
prepared by the REMIC Administrator that contain errors or omissions; provided, however,
that such liability will not be imposed to the extent such breach is a result of an error or
omission in information provided to the REMIC Administrator by the Servicer in which case
Section 11.02(c) will apply.

The Servicer agrees to indemnify the Trust Estate, the REMIC Administrator,
the Owner Trustee and the Indenture Trustee for any taxes and costs (including, without
limitation, any reasonable attorneys' fees) imposed on or incurred by the Trust Estate, the
REMIC Administrator, the Owner Trustee or the Indenture Trustee, as a result of a breach of
the Servicer's covenants set forth in this Article XI or in Article III with respect to
compliance with the REMIC Provisions, including without limitation, any penalties arising
from the Indenture Trustee's execution of Tax Returns prepared by the Servicer that contain
errors or omissions.

Section 11.03 Designation of REMIC(s).

The REMIC Administrator will make an election to treat the entire segregated pool of
assets described in the definition of Trust Estate (but excluding the Pre-Funding Account
and the Capitalized Interest Account), and subject to this Agreement (including the Mortgage

Loans, as set forth in Section 2.06 of the Trust Agreement) as a REMIC ("REMIC I") and will make an election to treat the pool of assets comprised of the REMIC I Regular Interests as a REMIC ("REMIC II") for federal income tax purposes.

The REMIC I Regular Interests will be "regular interests" in REMIC I and the Class R-I Certificates will be the sole class of "residual interests" in REMIC I for purposes of the REMIC Provisions under the federal income tax law.

The REMIC II Regular Interests will be "regular interests" in REMIC II and the Class R-II Certificates will be the sole class of "residual interests" therein for purposes of the REMIC Provisions (as defined herein) under federal income tax law.

---

IN WITNESS WHEREOF, the Issuer and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

GMACM HOME EQUITY LOAN TRUST 2006-HE2, as Issuer

By:  WILMINGTON TRUST COMPANY, not in its
     individual capacity but solely as Owner
     Trustee


By: _____
     Name:
     Title:


JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as
Indenture Trustee


By: _____
     Name:
     Title:

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
hereby accepts appointment as Paying
Agent pursuant to Section 3.03 hereof
and as Note Registrar pursuant to Section
4.02 hereof.

By: _____
     Name:
     Title:

Signatures and Seals

---

STATE OF _____   )
                             )
                             )      ss.:
COUNTY OF _____    )

On this ____ day of June 2006, before me personally appeared _____, to me known, who being by me duly sworn, did depose and say, that he/she resides at _____, that he/she is the _____ of Wilmington Trust Company, the Owner Trustee, one of the corporations described in and which executed the above instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal;

that it was so affixed by order of the Board of Directors of said corporation; and that
he/she signed his/her name thereto by like order.

_____
          Notary Public

Acknowledgements

STATE OF _____     )
                               ) ss.:
COUNTY OF _____      )

          On this ____ day of June 2006, before me personally appeared _____, to me known,
who being by me duly sworn, did depose and say, that he/she resides at _____; that
he/she is the _____ of JPMorgan Chase Bank, National Association as Indenture Trustee,
one of the corporations described in and which executed the above instrument; that he/she
knows the seal of said corporation; that the seal affixed to said instrument is such
corporate seal; that it was so affixed by order of the Board of Directors of said
corporation; and that he/she signed his/her name thereto by like order.

_____
          Notary Public

NOTORIAL SEAL

EXHIBIT A-1
FORM OF CLASS A-1, CLASS A-2, CLASS A-3 AND CLASS A-4 NOTE

UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST
COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF
TRANSFER, EXCHANGE OR PAYMENT, AND ANY NOTE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO.
OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY
PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED
REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY
OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN
INTEREST HEREIN.

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS NOTE IS A "REGULAR INTEREST" IN A "REAL
ESTATE MORTGAGE INVESTMENT CONDUIT" AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS
860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986 (THE "CODE").

THE PRINCIPAL OF THIS NOTE IS PAYABLE IN INSTALLMENTS AS SET FORTH HEREIN. ACCORDINGLY, THE
OUTSTANDING PRINCIPAL AMOUNT OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ON
THE FACE HEREOF.

THIS NOTE DOES NOT REPRESENT AN INTEREST IN OR OBLIGATION OF THE SELLERS, THE DEPOSITOR, THE
SERVICER, THE INDENTURE TRUSTEE, THE OWNER TRUSTEE OR GMAC MORTGAGE GROUP, INC. OR ANY OF
THEIR RESPECTIVE AFFILIATES, EXCEPT AS EXPRESSLY PROVIDED IN THE INDENTURE OR THE OTHER
BASIC DOCUMENTS.

THE HOLDER OF THIS NOTE IS DEEMED TO HAVE REPRESENTED THAT THE ACQUISITION OF THIS NOTE BY
THE HOLDER DOES NOT CONSTITUTE OR GIVE RISE TO A PROHIBITED TRANSACTION UNDER SECTION 406 OF
ERISA OR SECTION 4975 OF THE CODE, FOR WHICH NO STATUTORY, REGULATORY OR ADMINISTRATIVE
EXEMPTION IS AVAILABLE.

GMACM Home Equity Loan-Backed Term Note, Class A-[___]

Registered

Initial Note Balance:  $[    ]

No. A-[___]-__

Note Rate:  [____%]

CUSIP NO. [  ]

<hr/>

## GMACM HOME EQUITY LOAN TRUST 2006-HE2

GMACM Home Equity Loan Trust 2006-HE2, a statutory trust duly organized and existing under the laws of the State of Delaware (herein referred to as the "Issuer"), for value received, hereby promises to pay to Cede & Co. or its registered assigns, the principal sum of [_____] Dollars ($[_____]), payable on each Payment Date in an amount equal to the pro rata portion allocable hereto (based on the Initial Note Balance specified above and the Initial Note Balance of all A-[__] Notes) of the aggregate amount, if any, payable from the Note Payment Account in respect of principal of the Class A-[__] Notes (the "Notes") pursuant to Section 3.05 of the indenture dated as of June 29, 2006 (the "Indenture"), between the Issuer and JPMorgan Chase Bank, National Association as indenture trustee (the "Indenture Trustee"); provided, however, that the entire unpaid principal amount of this Note shall be due and payable on the Payment Date in May 2036, to the extent not previously paid on a prior Payment Date.  Capitalized terms used herein that are not otherwise defined shall have the meanings ascribed thereto in Appendix A to the Indenture.

Interest on the Notes will be paid monthly on each Payment Date at the Note Rate for the related Class of Notes for the Interest Period.

This Note is entitled to the benefits of an irrevocable and unconditional financial guaranty insurance policy issued by Financial Guaranty Insurance Company (the "Enhancer").

Principal of and interest on this Note are payable in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts.  All payments made by the Issuer with respect to this Note shall be applied first to interest due and payable on this Note as provided above and then to the unpaid principal of this Note.

Unless the certificate of authentication hereon has been executed by the Indenture Trustee whose name appears below by manual signature, this Note shall not be entitled to any benefit under the Indenture referred to herein, or be valid or obligatory for any purpose.

This Note is one of a duly authorized issue of Notes of the Issuer, designated as its GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE2 (the "Series 2006-HE2 Notes"), all issued under the Indenture, to which Indenture and all indentures supplemental thereto reference is hereby made for a statement of the respective rights and obligations thereunder of the Issuer, the Indenture Trustee and the Noteholders of the Series 2006-HE2 Notes.  The Series 2006-HE2 Notes are subject to all terms of the Indenture.

The Series 2006-HE2 Notes are and will be equally and ratably secured by the collateral pledged as security therefor as provided in the Indenture.

Principal of and interest on this Note will be payable on each Payment Date, commencing on July 25, 2006, as described in the Indenture.  "Payment Date" means the twenty-fifth day of each month, or, if any such date is not a Business Day, then the next succeeding Business Day.

The entire unpaid principal amount of this Note shall be due and payable in full on the Payment Date in May 2036 pursuant to the Indenture, to the extent not previously paid on a prior Payment Date.  Notwithstanding the foregoing, if an Event of Default shall have occurred and be continuing, then the Indenture Trustee, the Enhancer or the Noteholders of Notes representing not less than a majority of the aggregate Voting Rights of the Notes, with the consent of the Enhancer, may declare the Notes to be immediately due and payable in the manner provided in Section 5.02 of the Indenture.  All principal payments on the Notes shall be made pro rata to the Noteholders of Notes entitled thereto.

Any installment of interest or principal, if any, payable on any Note that is punctually paid or duly provided for by the Issuer on the applicable Payment Date shall be paid to the related Noteholder on the preceding Record Date, by wire transfer to an account specified in writing by such Noteholder reasonably satisfactory to the Indenture Trustee as of the preceding Record Date or, if no such instructions have been delivered to the Indenture Trustee, by check or money order to such Noteholder mailed to such Noteholder's address as it appears in the Note Register, the amount required to be distributed to such Noteholder on such Payment Date pursuant to such Noteholder's Notes; provided, however, that the Indenture Trustee shall not pay to such Noteholder any amount required to be withheld from a payment to such Noteholder by the Code.  Any reduction in the principal amount of this Note (or any one or more predecessor Notes) effected by any payments made on any

Payment Date shall be binding upon all future Noteholders of this Note and of any Note
issued upon the registration of transfer hereof or in exchange hereof or in lieu hereof,
whether or not noted hereon.  If funds are expected to be available, as provided in the
Indenture, for payment in full of the then remaining unpaid principal amount of this Note on
a Payment Date, then the Indenture Trustee, in the name of and on behalf of the Issuer, will
notify the Person who was the registered Noteholder hereof as of the Record Date preceding
such Payment Date by notice mailed or transmitted by facsimile prior to such Payment Date,
and the amount then due and payable shall be payable only upon presentation and surrender of
this Note at the address specified in such notice of final payment.

     As provided in the Indenture and subject to certain limitations set forth therein,
the transfer of this Note may be registered on the Note Register upon surrender of this Note
for registration of transfer at the Corporate Trust Office of the Indenture Trustee, duly
endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the
Indenture Trustee duly executed by, the Noteholder hereof or such Noteholder's attorney duly
authorized in writing, with such signature guaranteed by an "eligible guarantor institution"
meeting the requirements of the Note Registrar, which requirements include membership or
participation in the Securities Transfer Agent's Medallion Program ("STAMP") or such other
"signature guarantee program" as may be determined by the Note Registrar in addition to, or
in substitution for, STAMP, all in accordance with the Exchange Act, and thereupon one or
more new Notes in authorized denominations and in the same aggregate principal amount will
be issued to the designated transferee or transferees.  No service charge will be charged
for any registration of transfer or exchange of this Note, but the Note Registrar shall
require payment of a sum sufficient to cover any tax or governmental charge that may be
imposed in connection with any registration of transfer or exchange of this Note.

     Each Noteholder or Beneficial Owner of a Note, by its acceptance of a Note, or, in
the case of a Beneficial Owner of a Note, a beneficial interest in a Note, covenants and
agrees that no recourse may be taken, directly or indirectly, with respect to the
obligations of the Issuer, the Owner Trustee, the Sellers, the Servicer, the Depositor or
the Indenture Trustee on the Notes or under the Indenture or any certificate or other
writing delivered in connection therewith, against (i) the Indenture Trustee or the Owner
Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuer or
(iii) any partner, owner, beneficiary, agent, officer, director or employee of the Indenture
Trustee or the Owner Trustee in its individual capacity, any holder of a beneficial interest
in the Issuer, the Owner Trustee or the Indenture Trustee or of any successor or assign of
the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such
Person may have expressly agreed and except that any such partner, owner or beneficiary
shall be fully liable, to the extent provided by applicable law for any unpaid consideration
for stock, unpaid capital contribution or failure to pay any installment or call owing to
such entity.

     Each Noteholder or Beneficial Owner of a Note, by its acceptance of a Note or, in the
case of a Beneficial Owner of a Note, a beneficial interest in a Note, covenants and agrees
by accepting the benefits of the Indenture that such Noteholder or Beneficial Owner will not
at any time institute against the Depositor, the Sellers, the Servicer, GMAC Mortgage Group,
Inc. or the Issuer, or join in any institution against the Depositor, the Sellers, the
Servicer, GMAC Mortgage Group, Inc. or the Issuer of, any bankruptcy, reorganization,
arrangement, insolvency or liquidation proceedings under any United States federal or state
bankruptcy or similar law in connection with any obligations relating to the Notes, the
Indenture or the other Basic Documents.

     Prior to the due presentment for registration of transfer of this Note, the Issuer,
the Indenture Trustee and any agent of the Issuer or the Indenture Trustee may treat the
Person in the name of which this Note is registered (as of the day of determination or as of
such other date as may be specified in the Indenture) as the owner hereof for all purposes,
whether or not this Note be overdue, and none of the Issuer, the Indenture Trustee or any
such agent shall be affected by notice to the contrary.

     The Indenture permits, with certain exceptions therein provided, the amendment
thereof and the modification of the rights and obligations of the Issuer and the Indenture
Trustee and the rights of the Noteholders of the Series 2006-HE2 Notes under the Indenture
at any time by the Issuer and the Indenture Trustee with the consent of the Enhancer and the
Noteholders of Notes representing a majority of the aggregate Voting Rights of the Notes
then Outstanding and with prior notice to the Rating Agencies.  The Indenture also contains
provisions permitting the Noteholders of Notes representing specified percentages of the
Voting Rights of the Series 2006-HE2 Notes, on behalf of the Noteholders of all Series
2006-HE2 Notes, to waive compliance by the Issuer with certain provisions of the Indenture
and certain past defaults under the Indenture and their consequences.  Any such consent or
waiver by the Noteholder of this Note (or any one of more predecessor Notes) shall be
conclusive and binding upon such Noteholder and upon all future Noteholders of this Note and
of any Note issued upon the registration of transfer hereof or in exchange hereof or in lieu
hereof whether or not notation of such consent or waiver is made upon this Note.  The
Indenture also permits the Issuer and the Indenture Trustee to amend or waive certain terms
and conditions set forth in the Indenture without the consent of Noteholders of the Series
2006-HE2 Notes issued thereunder but with prior notice to the Rating Agencies and the

The term "Issuer" as used in this Note includes any successor or the Issuer under the Indenture.

The Issuer is permitted by the Indenture, under certain circumstances, to merge or consolidate, subject to the rights of the Indenture Trustee and the Noteholders of Notes under the Indenture.

The Notes are issuable only in registered form in denominations as provided in the Indenture, subject to certain limitations therein set forth.

This Note and the Indenture shall be construed in accordance with the laws of the State of New York, without reference to its conflicts of law provisions, and the obligations, rights and remedies of the parties hereunder and thereunder shall be determined in accordance with such laws.

No reference herein to the Indenture and no provision of this Note or of the Indenture shall alter or impair the obligation of the Issuer, which is absolute and unconditional, to pay the principal of and interest on this Note at the times, place and rate, and in the coin or currency herein prescribed.

Anything herein to the contrary notwithstanding, except as expressly provided in the Basic Documents, none of Wilmington Trust Company in its individual capacity, JPMorgan Chase Bank, National Association, in its individual capacity, any owner of a beneficial interest in the Issuer, or any of their respective partners, beneficiaries, agents, officers, directors, employees or successors or assigns shall be personally liable for, nor shall recourse be had to any of them for, the payment of principal of or interest on this Note or the performance of, or the failure to perform, any of the covenants, obligations or indemnifications contained in the Indenture.  The Noteholder of this Note, by its acceptance hereof, agrees that, except as expressly provided in the Basic Documents, in the case of an Event of Default under the Indenture, such Noteholder shall have no claim against any of the foregoing for any deficiency, loss or claim therefrom; provided, however, that nothing contained herein shall be taken to prevent recourse to, and enforcement against, the assets of the Issuer for any and all liabilities, obligations and undertakings contained in the Indenture or in this Note.

[Signature Page Follows]

IN WITNESS WHEREOF, the Owner Trustee, on behalf of the Issuer and not in its individual capacity, has caused this Note to be duly executed.


                              GMACM HOME EQUITY LOAN TRUST 2006-HE2


                              By:  WILMINGTON TRUST COMPANY, not in its
                                   individual capacity but solely as Owner
                                   Trustee

Dated:  June 29, 2006

                              By:  _____
                                        Authorized Signatory




CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture.


                              JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
                              not in its individual capacity but solely as
                              Indenture Trustee

By: _____
                          Authorized Signatory

Dated: June 29, 2006

---

ASSIGNMENT

Social Security or taxpayer I.D. or other identifying number of assignee:

        FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfer unto

_____
                          (name and address of assignee)

the within Note and all rights thereunder, and hereby irrevocably constitutes and appoints
_____,
attorney, to transfer said Note on the books kept for registration thereof, with full power
of substitution in the premises.

Dated: _____         _____*/
                                        Signature Guaranteed:

                                        _____*/


*     NOTICE: The signature to this assignment must correspond with the name of the
registered owner as it appears on the face of the within Note in every particular, without
alteration, enlargement or any change whatever. Such signature must be guaranteed by an
"eligible guarantor institution" meeting the requirements of the Note Registrar, which
requirements include membership or participation in STAMP or such other "signature guarantee
program" as may be determined by the Note Registrar in addition to, or in substitution for,
STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

---

EXHIBIT A
FORM OF NOTES

UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST
COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF
TRANSFER, EXCHANGE OR PAYMENT, AND ANY NOTE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO.
OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY
PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED
REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY
OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN
INTEREST HEREIN.

THE PRINCIPAL OF THIS NOTE IS PAYABLE IN INSTALLMENTS AS SET FORTH HEREIN. ACCORDINGLY, THE
OUTSTANDING PRINCIPAL AMOUNT OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ON
THE FACE HEREOF.

THIS NOTE DOES NOT REPRESENT AN INTEREST IN OR OBLIGATION OF THE SELLERS, THE DEPOSITOR, THE
SERVICER, THE INDENTURE TRUSTEE, THE OWNER TRUSTEE OR GMAC MORTGAGE GROUP, INC. OR ANY OF
THEIR RESPECTIVE AFFILIATES, EXCEPT AS EXPRESSLY PROVIDED IN THE INDENTURE OR THE OTHER
BASIC DOCUMENTS.

GMACM HOME EQUITY LOAN TRUST 2006-HE2

Registered                                                      Initial Note Balance:
                                                                $_____

No. A-___                                                       Note Rate:  Variable

                                                                CUSIP NO. _____


        GMACM Home Equity Loan Trust  2006-HE2,  a statutory trust duly organized and existing
under  the laws of the State of  Delaware  (herein referred  to as the  "Issuer"),  for value
received,  hereby promises to pay to Cede & Co. or its registered  assigns, the principal sum
of _____dollars ($_____), payable on each  Payment Date in an amount equal
to the pro rata portion  allocable  hereto (based on the Initial Note Balance  specified above
and the  Initial  Note  Balance  of all Class A-___  Notes)  of the  aggregate  amount,  if any,
payable from the Note  Payment  Account  in respect  of principal  of the Class A Notes (the
"Notes")  pursuant  to  Section  3.05  of  the  indenture  dated  as of  June  29,  2006  (the
"Indenture"),  between the Issuer and JPMorgan Chase Bank, National Association,  as indenture
trustee (the "Indenture  Trustee");  provided,  however,  provided however,  the entire unpaid
principal  amount of this Note shall be due and payable on the Payment  Date  occurring in May
2036, in each case,  to the extent not  previously  paid on a prior Payment  Date.  Capitalized
terms used herein that are not otherwise  defined shall have the meanings  ascribed thereto in
Appendix A to the Indenture.


        Interest on the Notes will be paid  monthly on each  Payment Date at the Note Rate for
the related  Interest  Period  subject to limitations  that may result in Interest  Shortfalls
(as further  described in the  Indenture).  Interest on this Note will accrue for each Payment
Date from the most recent  Payment  Date on which  interest  has been paid (in the case of the
first Payment  Date,  from the Closing  Date) to but  excluding  such Payment  Date.  Interest
will be  computed  on the basis of the  actual  number of days in each  Interest  Period and a
year assumed to consist of 360 days.


        Principal  of and  interest  on this Note are  payable in such coin or currency of the
United  States of America as at the time of payment is legal  tender for payment of public and
private  debts.  All  payments  made by the Issuer with  respect to this Note shall be applied
first to  interest  due and  payable  on this Note as  provided  above and then to the  unpaid
principal of this Note.


        Unless the  certificate  of  authentication  hereon has been executed by the Indenture
Trustee whose name appears below by manual  signature,  this Note shall not be entitled to any
benefit under the Indenture, or be valid or obligatory for any purpose.


        This Note is one of a duly authorized issue of Notes of the Issuer,  designated as its
GMACM Home Equity  Loan-Backed  Notes,  Series  2006-HE2 (the "Series  2006-HE2  Notes"),  all
issued under the  Indenture,  to which  Indenture  and all indentures  supplemental  thereto
reference is hereby made for a statement of the respective  rights and obligations  thereunder
of the Issuer,  the Indenture  Trustee and the Noteholders of the Series  2006-HE2 Notes.  The
Series 2006-HE2 Notes are subject to all terms of the Indenture.


        The Series  2006-HE2  Notes (the "Notes") are and will be equally and ratably  secured
by the collateral pledged as security therefor as provided in the Indenture.


        This Note is entitled to the benefits of an irrevocable  and  unconditional  financial
guaranty insurance policy issued by Financial Guaranty Insurance Company.


        Principal  of and  interest  on this Note will be payable  on each  Payment  Date,
commencing  on July 25,  2006, as described  in the  Indenture.  "Payment  Date" means  the
twenty-fifth  day of each  month,  or, if any such date is not a Business  Day,  then the next
succeeding Business Day.


        Unless an  Early  Amortization  Event (as defined in the Indenture) shall have occurred
and be continuing,  it is expected that the entire unpaid  principal amount of this Note shall
be due and payable on the related  Targeted  Final Payment Date in accordance  with the terms
of  the  Indenture,  to the  extent not  previously  paid on a prior  Payment  Date.
Notwithstanding the foregoing,  the entire unpaid  principal amount of this Note shall be due
and payable in full on the Payment Date in [August  2035] pursuant to the  Indenture,  to the
extent not  previously  paid on a prior Payment Date. Notwithstanding  the  foregoing,  if an
Event of Default  shall have  occurred and be  continuing,  then the Indenture  Trustee,  the
Enhancer or the  Noteholders of Notes  representing  not less than a majority of the aggregate
Note  Balance of the Notes,  with the consent of the  Enhancer,  may declare the Notes to be
immediately  due and payable in the manner  provided  in Section  5.02 of the  Indenture.  All
principal  payments on the Notes shall be made pro rata to the  Noteholders  of Notes entitled
thereto.


        Any  installment  of  interest  or  principal,  if any,  payable  on any Note  that is
punctually  paid or duly  provided  for by the Issuer on the  applicable  Payment Date shall be

paid to the related Noteholder on the preceding Record Date, by wire transfer to an account specified in writing by such Noteholder  reasonably satisfactory to the Indenture  Trustee as of the preceding Record Date  or,  if no  such instructions  have been delivered to the Indenture  Trustee,  by check or money order to such Noteholder's Noteholder's address as it appears in the Note  Register,  the amount  required to be  distributed  to such Noteholder on such Payment Date pursuant to such Noteholder's Notes;  provided,  however, that the Indenture  Trustee  shall not pay to such Noteholder  any amount  required to be withheld from a payment to such Noteholder  by the Code.  Any  reduction  in the  principal  amount  of this Note  (or  any one or more  predecessor  Notes)  effected  by any  payments made on any Payment  Date  shall be  binding  upon all  future  Noteholders  of this  Note and of any Note issued upon the  registration  of transfer  hereof or in  exchange  hereof or in lieu hereof, whether or not noted  hereon.  If funds are  expected to be  available,  as  provided in the Indenture,  for payment in full of the then remaining  unpaid principal amount of this Note on a Payment  Date, then the Indenture Trustee,  in the name of and on behalf of the Issuer, will notify the Person who was the  registered  Noteholder  hereof as of the Record Date  preceding such Payment Date by notice  mailed  or  transmitted  by facsimile  prior to such Payment Date, and the amount then due and payable shall be payable only upon  presentation  and surrender of this Note at the address specified in such notice of final payment.

As provided in the Indenture  and subject to certain  limitations  set forth  therein, the transfer of this Note may be  registered  on the Note Register upon  surrender of this Note for  registration  of transfer at the Corporate  Trust Office of the Indenture  Trustee,  duly endorsed by, or accompanied by a written  instrument of transfer in form  satisfactory to the Indenture Trustee duly executed by, the  Noteholder  hereof or such Noteholder's  attorney duly authorized in writing,  with such signature guaranteed by an "eligible guarantor  institution" meeting the  requirements  of the Note Registrar,  which  requirements  include  membership or participation in the Securities  Transfer Agent's  Medallion  Program  ("STAMP") or such other "signature  guarantee  program" as may be  determined  by the Note  Registrar in addition to, or in  substitution  for,  STAMP,  all in accordance  with the Exchange Act, and thereupon one or more new Notes in authorized  denominations  and in the same aggregate  principal  amount will be issued to the  designated  transferee  or  transferees.  No service  charge will be charged for any  registration  of  transfer or exchange  of this Note, but the Note  Registrar  shall require  payment  of a sum  sufficient  to cover any tax or  governmental  charge  that may be imposed in connection with any registration of transfer or exchange of this Note.

Each  Noteholder or Beneficial  Owner of a Note, by its  acceptance of a Note,  or, in the  case of a  Beneficial  Owner  of a Note,  a beneficial  interest in a Note,  covenants  and agrees  that no  recourse  may be  taken,  directly  or  indirectly,  with  respect  to the obligations of the Issuer,  the Owner  Trustee,  the Sellers,  the Servicer,  the Depositor or the  Indenture  Trustee  on the  Notes or under  the  Indenture  or any  certificate  or other writing  delivered in connection  therewith,  against (i) the  Indenture  Trustee or the Owner Trustee in its individual  capacity,  (ii) any owner of a beneficial  interest in the Issuer or (iii) any partner,  owner,  beneficiary,  agent, officer, director or employee of the  Indenture Trustee or the Owner Trustee in its individual  capacity,  any holder of a beneficial interest in the Issuer,  the Owner  Trustee or the  Indenture  Trustee or of any successor or assign of the Indenture  Trustee or the Owner  Trustee in its  individual  capacity,  except as any such Person may have  expressly  agreed and except  that any such partner,  owner or beneficiary shall be fully liable,  to the extent provided by applicable law for any unpaid  consideration for stock,  unpaid capital  contribution  or failure to pay any  installment or call owing to such entity.

Each Noteholder or Beneficial  Owner of a Note, by its  acceptance of a Note or, in the case of a Beneficial  Owner of a Note, a beneficial  interest in a Note,  covenants and agrees by accepting  the benefits of the Indenture that such  Noteholder or Beneficial  Owner will not at any time  institute  against  the  Depositor  or the  Issuer,  or join in any  institution against  the  Depositor  or the  Issuer  of, any  bankruptcy,  reorganization,  arrangement, insolvency or liquidation  proceedings  under any United States federal or state bankruptcy or similar law in connection  with any  obligations  relating to the Notes,  the Indenture or the other Basic Documents.

The Issuer has entered into the  Indenture  and this Note is issued with the intention that, for federal,  state and local income,  single  business and franchise tax purposes,  the Notes will qualify as  indebtedness  of the Issuer.  Each Noteholder  by its  acceptance of a Note (and each  Beneficial  Owner of a Note by its  acceptance  of a beneficial  interest in a Note),  agrees to treat the Notes for federal,  state and local  income,  single  business and franchise tax purposes as indebtedness of the Issuer.

Prior to the due  presentment  for  registration of transfer of this Note, the Issuer, the Indenture  Trustee  and any agent of the Issuer or the  Indenture  Trustee  may treat the Person in the name of which this Note is registered (as of the day of  determination  or as of such other date as may be specified in the  Indenture) as the  owner hereof for all  purposes, whether or not this Note be overdue,  and none of the  Issuer,  the  Indenture  Trustee or any such agent shall be affected by notice to the contrary.

The  Indenture  permits,  with certain  exceptions  therein  provided,  the  amendment thereof and the  modification  of the rights and  obligations  of the Issuer and the Indenture

Trustee and the rights of the Noteholders of the Series 2006-HE2 Notes under the Indenture at any time by the Issuer and the Indenture Trustee with the consent of the Enhancer and the Noteholders of Notes representing a majority of the aggregate Note Balance of the Notes then Outstanding and with prior notice to the Rating Agencies. The Indenture also contains provisions permitting the Noteholders of Notes representing specified percentages of the Note Balances of the Series 2006-HE2 Notes, on behalf of the Noteholders of all Series 2006-HE2 Notes, to waive compliance by the Issuer with certain provisions of the Indenture and certain past defaults under the Indenture and their consequences. Any such consent or waiver by the Noteholder of this Note (or any one of more predecessor Notes) shall be conclusive and binding upon such Noteholder and upon all future Noteholders of this Note and of any Note issued upon the registration of transfer hereof or in exchange hereof or in lieu hereof whether or not notation of such consent or waiver is made upon this Note. The Indenture also permits the Issuer and the Indenture Trustee to amend or waive certain terms and conditions set forth in the Indenture without the consent of Noteholders of the Series 2006-HE2 Notes issued thereunder but with prior notice to the Rating Agencies and the Enhancer.

The term "Issuer" as used in this Note includes any successor or the Issuer under the Indenture.

The Issuer is permitted by the Indenture, under certain circumstances, to merge or consolidate, subject to the rights of the Indenture Trustee and the Noteholders of Notes under the Indenture.

The Notes are issuable only in registered form in denominations as provided in the Indenture, subject to certain limitations therein set forth.

This Note and the Indenture shall be construed in accordance with the laws of the State of New York, without reference to its conflicts of law provisions, and the obligations, rights and remedies of the parties hereunder and thereunder shall be determined in accordance with such laws.

No reference herein to the Indenture and no provision of this Note or of the Indenture shall alter or impair the obligation of the Issuer, which is absolute and unconditional, to pay the principal of and interest on this Note at the times, place and rate, and in the coin or currency herein prescribed.

Anything herein to the contrary notwithstanding, except as expressly provided in the Basic Documents, none of Wilmington Trust Company in its individual capacity, JPMorgan Chase Bank, National Association. in its individual capacity, any owner of a beneficial interest in the Issuer, or any of their respective partners, beneficiaries, agents, officers, directors, employees or successors or assigns shall be personally liable for, nor shall recourse be had to any of them for, the payment of principal of or interest on this Note or the performance of, or the failure to perform, any of the covenants, obligations or indemnifications contained in the Indenture. The Noteholder of this Note, by its acceptance hereof, agrees that, except as expressly provided in the Basic Documents, in the case of an Event of Default under the Indenture, such Noteholder shall have no claim against any of the foregoing for any deficiency, loss or claim therefrom; provided, however, that nothing contained herein shall be taken to prevent recourse to, and enforcement against, the assets of the Issuer for any and all liabilities, obligations and undertakings contained in the Indenture or in this Note.

The Servicer shall have the right to purchase from the Issuer all of the Mortgage Loans and related REO Property if the aggregate Note Balance of the Notes as of any Payment Date is less than 10% of the aggregate Note Balance of the Notes as of the Closing Date, (provided that a draw on the Policy would not occur as a result of such purchase and provided further that the purchase price will provide sufficient funds to pay the outstanding Note Balance and accrued and unpaid interest on the Notes to the Payment Date on which such amounts are to be distributed to the Securityholders), at a price equal to 100% of the aggregate unpaid Principal Balance of all such remaining Mortgage Loans, plus accrued and unpaid interest thereon at the weighted average of the Loan Rates thereon up to the date preceding the Payment Date on which such amounts are to be distributed to the Securityholders (and in the case of REO Property, the fair market value of the REO Property), plus any amounts due and owing to the Enhancer under the Insurance Agreement related to the Mortgage Loans or the Notes (and any unpaid Servicing Fee relating to the Mortgage Loans shall be deemed to have been paid at such time), plus any Interest Shortfall and interest owed thereon to the Noteholders.

IN WITNESS WHEREOF, the Owner Trustee, on behalf of the Issuer and not in its individual capacity, has caused this Note to be duly executed.

GMACM HOME EQUITY LOAN TRUST 2006-HE2

By:  WILMINGTON    TRUST    COMPANY,    not    in    its
individual    capacity    but    solely    as    Owner
Trustee

Dated: _____

By: _____
                    Authorized Signatory


CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture.


JPMorgan Chase Bank, National Association.,
not in its individual capacity but solely as
Indenture Trustee

Dated: _____

By: _____
                    Authorized Signatory


ASSIGNMENT

Social Security or taxpayer I.D. or other identifying number of assignee: _____

        FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfer unto
_____
                        (name and address of assignee)

the within Note and all rights thereunder, and hereby irrevocably constitutes and appoints
_____,    attorney,    to  transfer  said  Note  on  the  books  kept  for
registration thereof, with full power of substitution in the premises.

Dated: _____        _____*/
                            Signature Guaranteed:

                            _____  */


*     NOTICE:  The  signature  to  this  assignment  must  correspond  with  the  name  of  the
registered  owner  as  it  appears  on  the  face  of  the  within  Term  Note  in  every  particular,
without  alteration,  enlargement  or  any  change  whatever.  Such  signature  must  be  guaranteed  by
an  "eligible  guarantor  institution"  meeting  the  requirements  of  the  Note  Registrar,  which
requirements  include  membership  or  participation  in  STAMP  or  such  other  "signature  guarantee
program"  as  may  be  determined  by  the  Note  Registrar  in  addition  to,  or  in  substitution  for,
STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

EXHIBIT B
FORM OF RULE 144A INVESTMENT REPRESENTATION

Description of Rule 144A Securities, including numbers:
_____
_____
_____
_____

        The undersigned buyer (the "Buyer"), intends to acquire the Rule 144A Securities described above from the seller (the "Seller").

        1.    In connection with such transfer and in accordance with the agreements pursuant to which the Rule 144A Securities were issued, the Seller hereby certifies the following facts: Neither the Seller nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security form, or otherwise approached or negotiated with respect to the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action, that would constitute a public offering of the Rule 144A Securities under the Securities Act of 1933, as amended (the "1933 Act"), or that would render the disposition of the Rule 144A Securities a violation of Section 5 of the 1933 Act or require registration pursuant thereto, and that the Seller has not offered the Rule 144A Securities to any person other than the Buyer or another "qualified institutional buyer" as defined in Rule 144A under the 1933 Act.

        2.    The Buyer warrants and represents to, and covenants with, the Indenture Trustee and the Issuer (as defined in the indenture dated as of June 29, 2006 (the "Indenture"), between GMACM Home Equity Loan Trust 2006-HE2, as Issuer, and JPMorgan Chase Bank, National Association, as Indenture Trustee, pursuant to Section 4.02 of the Indenture, as follows:

        a.    The Buyer understands that the Rule 144A Securities have not been registered under the 1933 Act or the securities laws of any state.

        b.    The Buyer considers itself a substantial, sophisticated institutional investor having such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of investment in the Rule 144A Securities.

        c.    The Buyer has been furnished with all information regarding the Rule 144A Securities that it has requested from the Seller, the Indenture Trustee, the Owner Trustee or the Servicer.

        d.    Neither the Buyer nor anyone acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security to, or solicited any offer to buy or accept a transfer, pledge or other disposition of the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security from, or otherwise approached or negotiated with respect to the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar security with, any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action, that would constitute a public offering of the Rule 144A Securities under the 1933 Act or that would render the disposition of the Rule 144A Securities a violation of Section 5 of the 1933 Act or require registration pursuant thereto, nor will it act, nor has it authorized or will it authorize any person to act, in such manner with respect to the Rule 144A Securities.

        e.    The Buyer is a "qualified institutional buyer" as that term is defined in Rule 144A under the 1933 Act and has completed either of the forms of certification to that effect attached hereto as Annex 1 or Annex 2. The Buyer is aware that the sale to it is being made in reliance on Rule 144A. The Buyer is acquiring the Rule 144A Securities for its own account or the accounts of other qualified institutional buyers, understands that such Rule 144A Securities may be resold, pledged or transferred only (i) to a person reasonably believed to be a qualified institutional buyer that purchases for its own account or for the account

of a qualified institutional buyer to whom notice is given that the resale, pledge or transfer is being made in reliance on Rule 144A, or (ii) pursuant to another exemption from registration under the 1933 Act.

3.     This document may be executed in one or more  counterparts and by the different parties hereto on separate counterparts,  each of which,  when so executed,  shall be deemed to be an original; such counterparts, together, shall constitute one and the same document.

IN  WITNESS  WHEREOF,  the Buyer has  executed  this  document as of the date set forth below.


Print Name of Buyer


By: _____
Name:
Title:

Taxpayer Identification:

No.
Date:

---

ANNEX 1 TO EXHIBIT B

QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

[For Buyers Other Than Registered Investment Companies]

The  undersigned  hereby  certifies  as  follows  in  connection  with the  Rule  144A Investment Representation to which this Certification is attached:

1.     As indicated below, the undersigned is the President,  Chief Financial Officer, Senior Vice President or other executive officer of the Buyer.

2.     In  connection  with  purchases  by  the  Buyer,  the  Buyer  is a "qualified institutional  buyer" as that term is defined in Rule 144A under the  Securities Act of 1933, as amended  ("Rule  144A")  because (i) the Buyer  owned  and/or  invested on a  discretionary basis $_____** in  securities (except for the excluded  securities  referred to below) as of the end of the Buyer's most recent  fiscal year (such amount being  calculated in  accordance  with Rule 144A) and (ii) the  Buyer  satisfies  the  criteria  in  the  category marked below.

____   Corporation,  etc. The Buyer is a corporation  (other than a bank,  savings and loan association or similar  institution),  Massachusetts or similar  statutory trust,  partnership,  or charitable organization described in Section 501(c)(3) of the Internal Revenue Code.

____   Bank. The Buyer (a) is a national bank or banking  institution  organized under the laws of any State,  territory or the District of Columbia,  the business of which is  substantially  confined to banking and is  supervised by the State or territorial  banking  commission  or similar  official or is a foreign  bank or equivalent  institution,  and  (b)  has  an  audited  net  worth  of  at  least $25,000,000 as demonstrated in its latest annual financial  statements,  a copy of which is attached hereto.

_____
** Buyer must own and/or invest on a  discretionary  basis at least $100,000,000  in securities  unless Buyer is a dealer,  and, in that case,  Buyer must own and/or  invest on a discretionary basis at least $10,000,000 in securities.

____    Savings and Loan. The Buyer (a) is a savings and loan association, building and loan association, cooperative bank, homestead association or similar institution, which is supervised and examined by a State or Federal authority having supervision over any such institutions or is a foreign savings and loan association or equivalent institution and (b) has an audited net worth of at least $25,000,000 as demonstrated in its latest annual financial statements.

____    Broker-Dealer. The Buyer is a dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended.

____    Insurance Company. The Buyer is an insurance company whose primary and predominant business activity is the writing of insurance or the reinsuring of risks underwritten by insurance companies and which is subject to supervision by the insurance commissioner or a similar official or agency of a state or territory or the District of Columbia.

____    State or Local Plan. The Buyer is a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of the state or its political subdivisions, for the benefit of its employees.

____    ERISA Plan. The Buyer is an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974, as amended.

____    Investment Adviser. The Buyer is an investment adviser registered under the Investment Advisers Act of 1940, as amended.

____    SBIC. The Buyer is a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958, as amended.

____    Business Development Company. The Buyer is a business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended.

____    Trust Fund. The Buyer is a trust fund whose trustee is a bank or trust company and whose participants are exclusively (a) plans established and maintained by a State, its political subdivisions, or any agency or instrumentality of the State or its political subdivisions, for the benefit of its employees, or (b) employee benefit plans within the meaning of Title I of the Employee Retirement Income Security Act of 1974, but is not a trust fund that includes as participants individual retirement accounts or H.R. 10 plans.

3.    The term "securities" as used herein does not include (i) securities of issuers that are Affiliated with the Buyer, (ii) securities that are part of an unsold allotment to or subscription by the Buyer, if the Buyer is a dealer, (iii) bank deposit notes and certificates of deposit, (iv) loan participations, (v) repurchase agreements, (vi) securities owned but subject to a repurchase agreement and (vii) currency, interest rate and commodity swaps.

4.    For purposes of determining the aggregate amount of securities owned and/or invested on a discretionary basis by the Buyer, the Buyer used the cost of such securities to the Buyer and did not include any of the securities referred to in the preceding paragraph. Further, in determining such aggregate amount, the Buyer may have included securities owned by subsidiaries of the Buyer, but only if such subsidiaries are consolidated with the Buyer in its financial statements prepared in accordance with generally accepted accounting principles and if the investments of such subsidiaries are managed under the Buyer's direction. However, such securities were not included if the Buyer is a majority-owned, consolidated subsidiary of another enterprise and the Buyer is not itself a reporting company under the Securities Exchange Act of 1934, as amended.

5.    The Buyer acknowledges that it is familiar with Rule 144A and understands that the seller to it and other parties related to the Rule 144A Securities are relying and will continue to rely on the statements made herein because one or more sales to the Buyer may be in reliance on Rule 144A.

____    ____    Will the Buyer be purchasing the Rule 144A
Yes    No    Securities only for the Buyer's own account?

6.    If the answer to the foregoing question is "no", the Buyer agrees that, in connection with any purchase of securities sold to the Buyer for the account of a third party (including any separate account) in reliance on Rule 144A, the Buyer will only purchase for the account of a third party that at the time is a "qualified institutional buyer" within the meaning of Rule 144A. In addition, the Buyer agrees that the Buyer will not purchase securities for a third party unless the Buyer has obtained a current representation letter from such third party or taken other appropriate steps contemplated by Rule 144A to conclude that such third party independently meets the definition of "qualified

institutional buyer" set forth in Rule 144A.

---

7.    The Buyer will notify each of the parties to which this certification is made of any changes in the information and conclusions herein. Until such notice is given, the Buyer's purchase of Rule 144A Securities will constitute a reaffirmation of this certification as of the date of such purchase.

Print Name of Buyer

By: _____
Name:
Title:

Date:

---

ANNEX 2 TO EXHIBIT B

QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

[For Buyers That Are Registered Investment Companies]

The undersigned hereby certifies as follows in connection with the Rule 144A Investment Representation to which this certification is attached:

1.    As indicated below, the undersigned is the President, Chief Financial Officer or Senior Vice President of the Buyer or, if the Buyer is a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act of 1933 ("Rule 144A") because Buyer is part of a Family of Investment Companies (as defined below), is such an officer of the Adviser (as defined below).

2.    In connection with purchases by Buyer, the Buyer is a "qualified institutional buyer" as defined in SEC Rule 144A because (i) the Buyer is an investment company registered under the Investment Company Act of 1940, and (ii) as marked below, the Buyer alone, or the Buyer's Family of Investment Companies, owned at least $100,000,000 in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year. For purposes of determining the amount of securities owned by the Buyer or the Buyer's Family of Investment Companies, the cost of such securities was used.

_____    The Buyer owned $_____ in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

_____    The Buyer is part of a Family of Investment Companies which owned in the aggregate $_____ in securities (other than the excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

3.    The term "Family of Investment Companies" as used herein means two or more registered investment companies (or series thereof) that have the same investment adviser or investment advisers (each, an "Adviser") that are affiliated (by virtue of being majority owned subsidiaries of the same parent or because one investment adviser is a majority owned subsidiary of the other).

4.    The term "securities" as used herein does not include (i) securities of issuers that are affiliated with the Buyer or are part of the Buyer's Family of Investment Companies, (ii) bank deposit notes and certificates of deposit, (iii) loan participations, (iv) repurchase agreements, (v) securities owned but subject to a repurchase agreement and (vi) currency, interest rate and commodity swaps.

5.    The Buyer is familiar with Rule 144A and understands that each of the parties to which this certification is made are relying and will continue to rely on the

statements made herein because one or more sales to the Buyer will be in reliance on Rule 144A. In addition, the Buyer will only purchase for the Buyer's own account.

    6.    The undersigned will notify each of the parties to which this certification is made of any changes in the information and conclusions herein. Until such notice, the Buyer's purchase of Rule 144A Securities will constitute a reaffirmation of this certification by the undersigned as of the date of such purchase.

                              Print Name of Buyer

                              By:  _____
                              Name:
                              Title:

                              IF AN ADVISER:

                              _____
                              Print Name of Buyer

                              Date:  _____

---

                              EXHIBIT C
                    FORM OF INVESTOR REPRESENTATION LETTER


                         _____ , 20___


          Re:    GMACM HOME EQUITY LOAN TRUST 2006-HE2
                 GMACM Home Equity Loan-Backed Variable Pay Revolving Note

Ladies and Gentlemen:

          [_____] (the "Purchaser") intends to purchase from [_____] (the "Seller") $[_____] Variable Pay Revolving Notes, GMACM Home Equity Loan Trust 2006-HE2 (the "Notes"), issued pursuant to the Indenture (the "Indenture"), dated as of June 29, 2006 between GMACM Home Equity Loan Trust 2006-HE2, as Issuer, and JPMorgan Chase Bank, National Association, as Indenture Trustee (the "Indenture Trustee"). All terms used herein and not otherwise defined shall have the meanings set forth in the Indenture. The Purchaser hereby certifies, represents and warrants to, and covenants with, the Issuer and the Indenture Trustee that:

          1.    The Purchaser understands that (a) the Notes have not been and will not be registered or qualified under the Securities Act of 1933, as amended (the "Act") or any state securities law, (b) the Depositor is not required to so register or qualify the Notes, (c) the Notes may be resold only if registered and qualified pursuant to the provisions of the Act or any state securities law, or if an exemption from such registration and qualification is available, (d) the Indenture contains restrictions regarding the transfer of the Notes and (e) the Notes will bear a legend to the foregoing effect.

          2.    The Purchaser is acquiring the Notes for its own account for investment only and not with a view to or for sale in connection with any distribution thereof in any manner that would violate the Act or any applicable state securities laws.

          3.    The Purchaser is (a) a substantial, sophisticated institutional investor having such knowledge and experience in financial and business matters, and, in particular, in such matters related to securities similar to the Notes, such that it is capable of evaluating the merits and risks of investment in the Notes, (b) able to bear the economic risks of such an investment and (c) an "accredited investor" within the meaning of Rule 501(a) promulgated pursuant to the Act.

          4.    The Purchaser has been furnished with, and has had an opportunity to review (a) a copy of the Indenture and (b) such other information concerning the Notes, the Mortgage Loans and the Depositor as has been requested by the Purchaser from the Depositor or the Seller and is relevant to the Purchaser's decision to purchase the Notes. The Purchaser has had any questions arising from such review

answered by the Depositor of the Seller to the satisfaction of the Purchaser.

5.     The Purchaser has not and will not nor has it authorized  or will it
authorize any person to (a) offer, pledge, sell, dispose of or otherwise transfer any
Note, any  interest  in any Note or any other  similar  security to any person in any
manner, (b)  solicit  any offer to buy or to accept a  pledge, disposition  of other
transfer of any Note, any interest in any Note or any other similar  security from any
person in any manner,  (c) otherwise  approach or negotiate  with respect to any Note,
any interest in any Note or any other similar  security with any person in any manner,
(d) make any  general  solicitation  by means of general  advertising  or in any other
manner or (e) take any other  action, that (as to any of (a) through (e) above) would
constitute  a public  offering  of any Note  under  the Act,  that  would  render  the
disposition  of any Note a violation  of Section 5 of the Act or any state  securities
law,  or that would require  registration  or  qualification  pursuant  thereto.  The
Purchaser will not sell or otherwise  transfer any of the Notes,  except in compliance
with the provisions of the Indenture.

6.     The Purchaser will comply  with  all  applicable  federal  and  state
securities  laws,  and with  the  terms  of  the  Indenture,  in  connection  with any
subsequent resale of the Notes by the Purchaser.

Very truly yours,

By: _____
Name:
Title:

---

EXHIBIT D
FORM OF TRANSFEROR CERTIFICATE

_____ , 20__

Re:   GMACM HOME EQUITY LOAN TRUST 2006-HE2
      GMACM Home Equity Loan-Backed Variable Pay Revolving Note

Ladies and Gentlemen:

This  letter  is  delivered  to  you  in  connection  with  the  transfer  by
[_____] (the "Seller") to  [_____] (the  "Purchaser") of
$[_____] Variable Pay Revolving Notes, GMACM Home Equity Loan  Trust 2006-HE2 (the
"Notes"),  issued  pursuant  to  the  Indenture  (the  "Indenture"),  dated  as of June 29, 2006
between GMACM Home Equity Loan Trust 2006-HE2, as Issuer,  and JPMorgan Chase Bank,  National
Association, as Indenture Trustee (the "Indenture  Trustee"). All terms used herein and not
otherwise  defined  shall have  the meanings  set forth in  the  Indenture.  The Seller  hereby
certifies, represents  and warrants to, and  covenants  with,  the Issuer and the  Indenture
Trustee that:

Neither  the Seller nor anyone  acting on its behalf has (a)  offered, pledged,
sold,  disposed of or otherwise  transferred  any Note,  any interest in any Note or any other
similar  security to any person  in any manner,  (b) has  solicited  any offer to buy or to
accept a pledge, disposition  or other  transfer of any Note, any interest in any Note or any
other  similar  security from any person in any  manner,  (c) has  otherwise  approached  or
negotiated  with respect to any Note,  any interest in any Note or any other similar  security
with any person in any  manner, (d) has  made any  general  solicitation  by means of general
advertising  or in any other manner,  or (e) has  taken any other  action,  that (as to any of
(a) through (e) above) would  constitute a distribution  of the Notes under the Securities Act
of 1933 (the "Act"),  that would render  the  disposition  of any Note a violation of Section 5
of the Act or any state  securities law,  or that would require  registration or  qualification
pursuant  thereto.  The  Seller  will not act,  in any  manner  set forth  in the  foregoing
sentence  with respect to any  Note.  The  Seller  has not and will  not  sell or  otherwise
transfer any of the Notes, except in compliance with the provisions of the Indenture.

Very truly yours,

(Seller)

By: _____

Name:

Title:

---

APPENDIX A

DEFINITIONS

Accrued Certificate Interest: With respect to the Class SB Certificates, interest accrued during the related Interest Period at the Certificate Rate for such Certificate on its Notional Amount for such Payment Date.

Addition Notice: With respect to the transfer of Subsequent Mortgage Loans to the Issuer by a Seller pursuant to Section 2.2 of the Purchase Agreement (in substantially the form set forth in Exhibit 3 to such agreement), a notice given by the respective Seller to the Rating Agencies, the Indenture Trustee, the Enhancer and the Owner Trustee, which shall be given not later than seven Business Days prior to the related Subsequent Transfer Date, of (i) the Seller's designation of Subsequent Mortgage Loans to be sold to the Issuer and (ii) the aggregate principal balance as of the Subsequent Cut-Off Date of such Subsequent Mortgage Loans.

Adverse REMIC Event: As defined in Section 11.01(f) of the Indenture.

Affiliate: With respect to any Person, any other Person controlling, controlled by or under common control with such Person. For purposes of this definition, "control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise and "controlling" and "controlled" shall have meanings correlative to the foregoing.

Appraised Value: With respect to any Mortgaged Property, either (x) the value as generally set forth in an appraisal of such Mortgaged Property used to establish compliance with the underwriting criteria then in effect in connection with the application for the Mortgage Loan secured by such Mortgaged Property, or (y) if the sales price of such Mortgaged Property is considered in accordance with the underwriting criteria applicable to the related Mortgage Loan, the lesser of (i) the appraised value referred to in (x) above and (ii) the sales price of such Mortgaged Property.

Assignment of Mortgage: With respect to any Mortgage, an assignment, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction in which the related Mortgaged Property is located to reflect the conveyance of such Mortgage, which assignment, notice of transfer or equivalent instrument may be in the form of one or more blanket assignments covering Mortgages secured by Mortgaged Properties located in the same jurisdiction.

Authorized Newspaper: A newspaper of general circulation in the Borough of Manhattan, The City of New York, printed in the English language and customarily published on each Business Day, whether or not published on Saturdays, Sundays or holidays.

Authorized Officer: With respect to the Issuer, any officer of the Owner Trustee who is authorized to act for the Owner Trustee in matters relating to the Issuer and who is identified on the list of Authorized Officers delivered by the Owner Trustee to the Indenture Trustee on the Closing Date (as such list may be modified or supplemented from time to time thereafter).

Bankruptcy Code: The Bankruptcy Code of 1978, as amended.

Basic Documents: The Trust Agreement, the Indenture, the Purchase Agreement, the Insurance Agreement, the Policy, the Servicing Agreement, the Custodial Agreement, any Subsequent Transfer Agreement and the other documents and certificates delivered in connection with any of the above.

Beneficial Owner: With respect to any Note, the Person who is the beneficial owner of such Note as reflected on the books of the Depository or on the books of a Person maintaining an account with such Depository (directly as a Depository Participant or indirectly through a Depository Participant, in accordance with the rules of such Depository).

Billing Cycle: With respect to any Mortgage Loan and Due Date, the calendar month preceding such Due Date.

Book-Entry Notes: Beneficial interests in the Notes, ownership and transfers of which shall be made

through book entries by the Depository as described in Section 1.06 of the Indenture.

Business Day: Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the States of New York, Pennsylvania, Delaware or any State in which the Corporate Trust Office are required or authorized by law to be closed.

Capitalized Interest Account: The account established and maintained pursuant to Section 3.19 of the Servicing Agreement.

Capitalized Interest Requirement: With respect to each Payment Date during the Pre-Funding Period and on the Payment Date immediately after the end of the Pre-Funding Period, the excess, if any of (i) the sum of (A) the amount of interest that would accrue at the Net WAC Rate for the related Interest Period on the amount on deposit in the Pre-Funding Account as of the close of business on the preceding Payment Date (or as of the Closing Date, in the case of the first Payment Date) and (B) the amount of any fees paid to the Enhancer for the Policy, over (ii) the amount of reinvestment earnings since the preceding Payment Date (or the Closing Date, in the case of the first Payment Date) in the Pre-Funding Account.

Certificate Balance: With respect to any Payment Date and the Class SB Certificates, an amount equal to the then applicable Certificate Percentage Interest of such Certificate multiplied by the Overcollateralization Amount.

Certificate Distribution Amount: For any Payment Date, the amount, if any, distributable on the Certificates for such Payment Date pursuant to Section 3.05(a)(xv) of the Indenture.

Certificate of Trust: The Certificate of Trust filed for the Trust pursuant to Section 3810(a) of the Statutory Trust Statute.

Certificate Paying Agent: The Certificate Paying Agent appointed pursuant to Section 3.10 of the Trust Agreement. Initially the Indenture Trustee has been appointed as the Certificate Paying Agent.

Certificate Percentage Interest: With respect to any Payment Date and any Certificate, the Percentage Interest for such Certificate.

Certificate Rate: With respect to the Class SB Certificates and REMIC II Regular Interest SB-IO and any Payment Date, a rate per annum equal to the percentage equivalent of a fraction, the numerator of which is the sum of the amounts calculated pursuant to clauses (i) through (iii) below, and the denominator of which is the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests. For purposes of calculating the Certificate Rate for the Class SB Certificates and REMIC II Regular Interest SB-IO, the numerator is equal to the sum of the following components:

(i)   the REMIC I Remittance Rate for REMIC I Regular Interest LT1 minus the SB-IO Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT1;

(ii)   the REMIC I Remittance Rate for REMIC I Regular Interest LT2 minus the SB-IO Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT2; and

(iii) the REMIC I Remittance Rate for REMIC I Regular Interest LT4 minus twice the SB-IO Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT4.

Certificate Register: The register maintained by the Certificate Registrar in which the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges of Certificates.

Certificate Registrar: The Certificate Registrar appointed pursuant to Section 3.05 of the Trust Agreement. Initially the Indenture Trustee has been appointed as the Certificate Registrar.

Certificateholder: The Person in whose name a Certificate is registered in the Certificate Register except that, any Certificate registered in the name of the Issuer, the Owner Trustee or the Indenture Trustee or any Affiliate of the Owner Trustee or the Indenture Trustee shall be deemed not to be outstanding and the registered holder will not be considered a Certificateholder for purposes of giving any request, demand, authorization, direction, notice, consent or waiver under the Indenture or the Trust Agreement; provided that, in determining whether the Indenture Trustee or the Owner Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Certificates that the Indenture Trustee or the Owner Trustee knows to be so owned shall be so disregarded. Owners of Certificates that have been pledged in good faith may be regarded as Certificateholders if the pledgee establishes to the satisfaction of the Indenture Trustee or the Owner Trustee, as the case may be, the pledgee's right so to act with respect to such Certificates and that the pledgee is not the Issuer, any other obligor upon the Certificates or any Affiliate of the Owner Trustee or the Indenture Trustee.

Certificates: The Collective the Class R and the Class SB Certificates.

Class : With respect to any Note, all Notes that bear the same Class designation, (i.e., the Class A-1 Notes as a group, Class A-2 Notes as a group, Class A-3 Notes as a group and the Class A-4 Notes as a group). With respect to any Certificate, all Certificates that bear the same Class designation, (i.e., the Class SB Certificates as a group, Class R-I Certificates as a group and Class R-II Certificates as a group). With respect to any Regular Interest, all Regular Interests that bear the same class designation.

Class A-1 Notes: The Class A-1 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE2, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-2 Notes: The Class A-2 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE2, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-3 Notes: The Class A-3 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE2, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-4 Notes: The Class A-4 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE2, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class Principal Balance: For each Class of Notes, the Initial Note Balance thereof as reduced on each successive Payment Date by principal distributed in respect thereof on such Payment Date pursuant to Section 3.03 of the Servicing Agreement and Section 3.05 of the Indenture.

Class R Certificates: The Class R-I Certificates and Class R-II Certificates, each as substantially in the form of Exhibit I to the Trust Agreement and entitled to distributions as provided in the Trust Agreement.

Class SB Certificates: The Class SB Certificates substantially in the form of Exhibit A to the Trust Agreement and entitled to distributions as provided in the Trust Agreement.

Class SB Distribution Amount: On any Payment Date, the sum of (i) Accrued Certificate Interest for such Payment Date, (ii) the amounts payable to the Certificates pursuant to Section 3.05(a)(ix) of the Indenture and (iii) the Overcollateralization Release Amount, if any, for the Determination Date related to such Payment Date, reduced, but not below zero, by the Liquidation Loss Distribution Amount and Overcollateralization Increase Amount for such Payment Date, all of the foregoing done without double counting either in addition or subtraction.

Closing Date: June 29, 2006.

Code: The Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder.

Collateral: The meaning specified in the Granting Clause of the Indenture.

Collection Period: With respect to any Mortgage Loan and Payment Date, the calendar month preceding any such Payment Date.

Collections: With respect to any Collection Period, all Interest Collections and Principal Collections during such Collection Period.

Combined Loan-to-Value Ratio or CLTV: With respect to each Mortgage Loan, the ratio, expressed as a percentage, of the sum of (i) the initial principal balance of such Mortgage Loan, and (ii) any outstanding principal balance, at origination of such Mortgage Loan, of all other mortgage loans, if any, secured by senior or subordinate liens on the related Mortgaged Property, to the Appraised Value, or, when not available, the Stated Value.

Commission: The Securities and Exchange Commission.

Corporate Trust Office: With respect to the Indenture Trustee, Certificate Registrar, Certificate Paying Agent and Paying Agent, the principal corporate trust office of the Indenture Trustee and Note Registrar at which at any particular time its corporate trust business shall be administered, which office at the date of the execution of this instrument is located at 4 New York Plaza, 6th Floor, New York, New York 10004, Attention: Worldwide Securities Services/Structured Finance Services-GMACM Series 2006-HE2. With respect to the Owner Trustee, the principal corporate trust office of the Owner Trustee at which at any particular time its corporate trust business shall be administered, which office at the date of the execution of this Trust Agreement is located at Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890, Attention: Corporate Trust Administration.

Custodial Account: The account or accounts created and maintained by the Servicer pursuant to Section 3.02(b) of the Servicing Agreement, in which the Servicer shall deposit or cause to be deposited certain amounts in respect of the Mortgage Loans.

Custodial Agreement: The Custodial Agreement, dated the Closing Date, among the Custodian, the Indenture Trustee, the Issuer and the Servicer relating to the custody of the Mortgage Loans and the Related Documents.

Custodian: GMAC Bank and its successors and assigns, as applicable pursuant to the Custodial Agreement, or any other successor custodian of the Mortgage Files appointed by the Indenture Trustee and reasonably acceptable to the Enhancer and the Servicer.

Cut-Off Date: June 1, 2006.

Cut-Off Date Principal Balance: With respect to any Initial Mortgage Loan or Subsequent Mortgage

Loan, the unpaid principal balance thereof as of the close of business on the last day of the Billing Cycle immediately prior to the Cut-Off Date or Subsequent Cut-Off Date, as the case may be.

Default:  Any occurrence which is or with notice or the lapse of time or both would become an Event of Default.

Deficiency Amount:  As defined in the Policy.

Definitive Notes:  Any definitive, fully registered Note, as described in Section 4.06 of the Indenture.

Deleted Loan:  A Mortgage Loan replaced or to be replaced with an Eligible Substitute Loan.

Delinquent:  As used herein, a Mortgage Loan is considered to be: "30 to 59 days" or "30 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the next following monthly due date.  Since the determination as to whether a Mortgage Loan falls into these categories is made as of the close of business on the last business day of each month, a Mortgage Loan with a payment due on July 1 that remained unpaid as of the close of business on July 31 would still be considered current as of July 31. If that payment remained unpaid as of the close of business on August 31, the Mortgage Loan would then be considered 30-59 days delinquent.  Delinquency information as of the Cut-off Date is determined and prepared as of the close of business on the last business day immediately prior to the Cut-off Date.

Delinquency Percentages:  With respect to any Payment Date, the percentage equivalent of a fraction (A) the numerator of which is the Principal Balance that are Delinquent for 60 days or more as of such Payment Date and (B) the denominator of which is the Pool Balance, in each case as of the beginning of the related Collection Period, expressed as a percentage.

Depositor:  Residential Asset Mortgage Products, Inc., a Delaware corporation, or its successor in interest.

Depository:  The Depository Trust Company or a successor appointed by the Indenture Trustee with the approval of the Issuer.  Any successor to the Depository shall be an organization registered as a "clearing agency" pursuant to Section 17A of the Exchange Act and the regulations of the Commission thereunder.

Depository Participant:  A Person for whom, from time to time, the Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Determination Date:  With respect to any Payment Date, the 18th day of the month in which such Payment Date occurs or if such day is not a Business Day, the next succeeding Business Day.

Disqualified Organization:  Any organization defined as a "disqualified organization" under Section 860E(e)(5) of the Code, and if not otherwise included, any of the following: (i) the United States, any State or political subdivision thereof, any possession of the United States, or any agency or instrumentality of any of the foregoing (other than an instrumentality which is a corporation if all of its activities are subject to tax and, except for Freddie Mac, a majority of its board of directors is not selected by such governmental unit), (ii) a foreign government, any international organization, or any agency or instrumentality of any of the foregoing, (iii) any organization (other than certain farmers' cooperatives described in Section 521 of the Code) which is exempt from the tax imposed by Chapter 1 of the Code (including the tax imposed by Section 511 of the Code on unrelated business taxable income), (iv) rural electric and telephone cooperatives described in Section 1381(a)(2)(C) of the Code, (v) any "electing large partnership," as defined in Section 775(a) of the Code and (vi) any other Person so designated by the Trustee based upon an Opinion of Counsel that the holding of an Ownership Interest in a Class R Certificate by such Person may cause the Trust Estate or any Person having an Ownership Interest in any Class of Certificates (other than such Person) to incur a liability for any federal tax imposed under the Code that would not otherwise be imposed but for the Transfer of an Ownership Interest in a Class R Certificate to such Person. The terms "United States," "State" and "international organization" shall have the meanings set forth in Section 7701 of the Code or successor provisions.

Distribution Account:  The account or accounts created and maintained by the Certificate Paying Agent pursuant to Section 3.10(c) of the Trust Agreement.  The Certificate Paying Agent will make all distributions on the Certificates from money on deposit in the Distribution Account.

Due Date: With respect to each Mortgage Loan, the date on which monthly payments on such Mortgage Loan are due.

Eligible Account:  An account that is any of the following: (i) maintained with a depository institution the short-term debt obligations of which have been rated by each Rating Agency in its highest rating category available, or (ii) an account or accounts in a depository institution in which such accounts are fully insured to the limits established by the FDIC, provided that any deposits not so insured shall, to the extent acceptable to each Rating Agency, as evidenced in writing, be maintained such that (as evidenced by an Opinion of Counsel delivered to the Indenture Trustee and each Rating Agency) the Indenture Trustee have a claim with respect to the funds in such account or a perfected first security interest against any collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained, or (iii) an account or accounts maintained with a depository institution or trust company, as long as its

short-term debt obligations are rated P-1 by Moody's, and A-1 by Standard & Poor's (or the equivalent) or better by each Rating Agency, and its long term obligations are rated A2 by Moody's and AA- by Standard & Poor's (or the equivalent) or better by each Rating Agency, or (iv) a segregated trust account or accounts maintained in the corporate trust division of a depository institution or trust company, acting in its fiduciary capacity, or (v) an account or accounts of a depository institution acceptable to each Rating Agency (as evidenced in writing by each Rating Agency that use of any such account will not cause a Rating Event (if determined without regard to the Policy).

Eligible Substitute Loan: A Mortgage Loan substituted by either Seller for a Deleted Loan, which must, on the date of such substitution, as confirmed in an Officers' Certificate delivered to the Indenture Trustee, (i) have an outstanding principal balance, after deduction of the principal portion of the monthly payment due in the month of substitution (or in the case of a substitution of more than one Mortgage Loan for a Deleted Mortgage Loan, an aggregate outstanding principal balance, after such deduction), not in excess of the outstanding principal balance of the Deleted Loan (the amount of any shortfall to be deposited by the Seller in the Custodial Account in the month of substitution); (ii) comply with each representation and warranty made by GMACM and set forth in Section 3.1(b) of the Purchase Agreement, other than clauses (viii), (xiii), (xxiv), (xxv)(B), (xxvi) and (xxvii) thereof, and comply with each of the representations and warranties made by WG Trust 2003 set forth in Section 3.1(d)(II) of the Purchase Agreement, as of the date of substitution; (iii) have a Loan Rate and Net Loan Rate no lower than and not more than 1% per annum higher than the Loan Rate and Net Loan Rate, respectively, of the Deleted Loan as of the date of substitution; (iv) have a CLTV at the time of substitution no higher than that of the Deleted Loan at the time of substitution; (v) have a remaining term to stated maturity not greater than (and not more than one year less than) that of the Deleted Loan; and (vi) not be 30 days or more delinquent.

Enhancer: Financial Guaranty Insurance Company, or any successor thereto.

Enhancer Default: Any failure by the Enhancer to make a payment required under the Policy in accordance with its terms.

Enhancer Optional Deposit: Amounts deposited by or on behalf of the Enhancer in the Note Payment Account, other than Insured Payments, to be applied to the Notes.

ERISA: The Employee Retirement Income Security Act of 1974, as amended.

Event of Default: With respect to the Indenture, any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(a)    a default in the payment of the principal of, any installment of the principal of or interest on any Note when the same becomes due and payable, and such default shall continue for a period of five days;

(b)    there occurs a default in the observance or performance in any material respect of any covenant or agreement of the Issuer made in the Indenture, or any representation or warranty of the Issuer made in the Indenture or in any certificate delivered pursuant hereto or in connection herewith proving to have been incorrect in any material respect as of the time when the same shall have been made that has a material adverse effect on the Noteholders or the Enhancer, and such default shall continue or not be cured, or the circumstance or condition in respect of which such representation or warranty was incorrect shall not have been eliminated or otherwise cured, for a period of 30 days after there shall have been given, by registered or certified mail, to the Issuer by the Indenture Trustee or to the Issuer and the Indenture Trustee by the Enhancer or the Noteholders of at least 25% of the aggregate Note Balance of the Notes, a written notice specifying such default or incorrect representation or warranty and requiring it to be remedied and stating that such notice is a notice of default hereunder;

(c)    there occurs the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of the Issuer or any substantial part of the Trust Estate in an involuntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Trust Estate, or ordering the winding-up or liquidation of the Issuer's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or

(d)    there occurs the commencement by the Issuer of a voluntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by the Issuer to the entry of an order for relief in an involuntary case under any such law, or the consent by the Issuer to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the assets of the Trust Estate, or the making by the Issuer of any general assignment for the benefit of creditors, or the failure by the Issuer generally to pay its debts as such debts become due, or the taking of any action by the Issuer in furtherance of any of the foregoing.

Exchange Act: The Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

Excess Spread: With respect to any Payment Date and without taking into account any Insured Payment, if any, paid by the Enhancer under the Policy for such Payment Date, the excess, if any, of (i) Interest

Collections for the related Collection Period plus (ii) the sum of (x) the premium allocable to such Payment Date and (B) any unpaid principal on the Notes, with interest thereon as provided in the Insurance Agreement and (y) the aggregate amount distributed to the Noteholders as interest on such Payment Date pursuant to Section 3.05(a)(i) of the Indenture.

Expenses:  The meaning specified in Section 7.02 of the Trust Agreement.

Fannie Mae:  Fannie Mae, formerly the Federal National Mortgage Association, or any successor thereto.

FDIC:  The Federal Deposit Insurance Corporation or any successor thereto.

Final Payment Date:  The Payment Date in May 2036.

Fiscal Year:  The fiscal year of the Trust, which shall end on December 31 of each year.

Foreclosure Profit:  With respect to a Liquidated Mortgage Loan, the amount, if any, by which (i) the aggregate of Liquidation Proceeds net of Liquidation Expenses exceeds (ii) the Principal Balance of such Liquidated Mortgage Loan (plus accrued and unpaid interest thereon at the applicable Loan Rate from the date interest was last paid through the date of receipt of the final Liquidation Proceeds) immediately prior to the final recovery of the related Liquidation Proceeds.

Form 10-K Certification:  As defined in Section 4.02(c) of the Servicing Agreement.

Freddie Mac:  Freddie Mac, formerly the Federal Home Loan Mortgage Corporation, or any successor thereto.

GAAP: Generally accepted accounting principles.

Grant: Pledge, bargain, sell, warrant, alienate, remise, release, convey, assign, transfer, create, and grant a lien upon and a security interest in and right of set-off against, deposit, set over and confirm pursuant to the Indenture. A Grant of the Collateral or of any other agreement or instrument shall include all rights, powers and options (but none of the obligations) of the granting party thereunder, including the immediate and continuing right to claim for, collect, receive and give receipt for principal and interest payments in respect of such collateral or other agreement or instrument and all other moneys payable thereunder, to give and receive notices and other communications, to make waivers or other agreements, to exercise all rights and options, to bring proceedings in the name of the granting party or otherwise, and generally to do and receive anything that the granting party is or may be entitled to do or receive thereunder or with respect thereto.

GMAC:  General Motors Acceptance Corporation, and its successors and assigns.

GMACM:  GMAC Mortgage Corporation, and its successors and assigns.

Indemnified Party:  The meaning specified in Section 7.02 of the Trust Agreement.

Indenture:  The indenture dated as of the Closing Date between the Issuer and the Indenture Trustee.

Indenture Trustee: JPMorgan Chase Bank, National Association, a national banking association, and its successors and assigns or any successor indenture trustee appointed pursuant to the terms of the Indenture.

Independent:  When used with respect to any specified Person, such Person (i) is in fact independent of the Issuer, any other obligor on the Notes, the Sellers, the Depositor and any Affiliate of any of the foregoing Persons, (ii) does not have any direct financial interest or any material indirect financial interest in the Issuer, any such other obligor, the Sellers, the Depositor or any Affiliate of any of the foregoing Persons and (iii) is not connected with the Issuer, any such other obligor, the Sellers, the Depositor or any Affiliate of any of the foregoing Persons as an officer, employee, promoter, underwriter, trustee, partner, director or person performing similar functions.

Independent Certificate:  A certificate or opinion to be delivered to the Indenture Trustee under the circumstances described in, and otherwise complying with, the applicable requirements of Section 10.01 of the Indenture, made by an Independent appraiser or other expert appointed by an Issuer Order and approved by the Indenture Trustee in the exercise of reasonable care, and such opinion or certificate shall state that the signer has read the definition of "Independent" in this Indenture and that the signer is Independent within the meaning thereof.

Initial Aggregate Note Balance:  $626,240,000.

Initial Class A-1 Note Balance:  $368,000,000.

Initial Class A-2 Note Balance:  $28,500,000.

Initial Class A-3 Note Balance:  $145,000,000.

Initial Class A-4 Note Balance:  $84,740,000.

Initial Certificate Balance: $13,760,000.

Initial Mortgage Loans: The mortgage loans initially transferred by the Depositor to the Issuer on the Closing Date, which are listed on the Mortgage Loan Schedule on such date.

Initial Note Balance: The Initial Class A-1 Note Balance, Initial Class A-2 Note Balance, Initial Class A-3 Note Balance or Initial Class A-4 Note Balance, as applicable.

Initial Pool Balance: The sum of (a) the aggregate Principal Balances of the Initial Mortgage Loans as of the Cut-off Date and (b) the Original Pre-Funded Amount.

Insolvency Event: With respect to a specified Person, (a) the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of such Person or any substantial part of its property in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for such Person or for any substantial part of its property, or ordering the winding-up or liquidation of such Person's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or (b) the commencement by such Person of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by such Person to the entry of an order for relief in an involuntary case under any such law, or the consent by such Person to the appointment of or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for such Person or for any substantial part of its property, or the making by such Person of any general assignment for the benefit of creditors, or the failure by such Person generally to pay its debts as such debts become due or the admission by such Person in writing (as to which the Indenture Trustee shall have notice) of its inability to pay its debts generally, or the adoption by the Board of Directors or managing member of such Person of a resolution which authorizes action by such Person in furtherance of any of the foregoing.

Insurance Agreement: The Insurance and Indemnity Agreement dated as of the Closing Date, among the Servicer, the Sellers, the Depositor, the Issuer, the Indenture Trustee and the Enhancer, including any amendments and supplements thereto.

Insurance Proceeds: Proceeds paid by any insurer (other than the Enhancer) pursuant to any insurance policy covering a Mortgage Loan which are required to be remitted to the Servicer, or amounts required to be paid by the Servicer pursuant to the next to last sentence of Section 3.04 of the Servicing Agreement, net of any component thereof (i) covering any expenses incurred by or on behalf of the Servicer in connection with obtaining such proceeds, (ii) that is applied to the restoration or repair of the related Mortgaged Property, (iii) released to the related Mortgagor in accordance with the Servicer's normal servicing procedures or (iv) required to be paid to any holder of a mortgage senior to such Mortgage Loan.

Insured Payment: As defined in the Policy.

Interest Collections: With respect to any Payment Date, the sum of all payments by or on behalf of Mortgagors and any other amounts constituting interest (including without limitation such portion of Insurance Proceeds, Net Liquidation Proceeds and Repurchase Prices as is allocable to interest on the applicable Mortgage Loan) as is paid by the Sellers or the Servicer (including any optional servicing advance) or is collected and applied by the Servicer under the Mortgage Loans during the related Collection Period, and reduced by the Servicing Fee for the related Collection Period and by any fees (including annual fees) or late charges or similar administrative fees paid by Mortgagors during the related Collection Period. The terms of the related Mortgage Note shall determine the portion of each payment in respect of such Mortgage Loan that constitutes principal or interest.

Interest Coverage Amount: The amount to be paid from proceeds from the sale of the Notes for deposit into the Capitalized Interest Account pursuant to Section 3.19 of the Servicing Agreement on the Closing Date, which amount initially shall be $1,759,315.20 and thereafter, shall be the amount computed in accordance with Section 3.19 of the Servicing Agreement.

Interest Period: With respect to the Notes and any Payment Date, the calendar month preceding such Payment Date.

Issuer or Trust: The GMACM Home Equity Loan Trust 2006-HE2, a Delaware statutory trust, or its successor in interest.

Issuer Order or Issuer Request: A written order or request signed in the name of the Issuer by any one of its Authorized Officers and delivered to the Indenture Trustee.

Lien: Any mortgage, deed of trust, pledge, conveyance, hypothecation, assignment, participation, deposit arrangement, encumbrance, lien (statutory or other), preference, priority right or interest or other security agreement or preferential arrangement of any kind or nature whatsoever, including, without limitation, any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing and the filing of any financing statement under the UCC (other than any such financing statement filed for informational purposes only) or comparable law of any jurisdiction to evidence any of the foregoing; provided, however, that any assignment pursuant to Section 6.02 of the Servicing Agreement shall not be deemed to constitute a Lien.

Liquidated Mortgage Loan: With respect to any Payment Date, any Mortgage Loan in respect of which the Servicer has determined, in accordance with the servicing procedures specified in the Servicing Agreement, as of the end of the related Collection Period that substantially all Liquidation Proceeds which it reasonably

expects to recover, if any, with respect to the disposition of the related REO Property have been recovered.

Liquidation Expenses: All out-of-pocket expenses (exclusive of overhead) incurred by or on behalf of the Servicer in connection with the liquidation of any Mortgage Loan and not recovered under any insurance policy, including legal fees and expenses, any unreimbursed amount expended (including, without limitation, amounts advanced to correct defaults on any mortgage loan which is senior to such Mortgage Loan and amounts advanced to keep current or pay off a mortgage loan that is senior to such Mortgage Loan) respecting such Mortgage Loan and any related and unreimbursed expenditures for real estate property taxes or for property restoration, preservation or insurance against casualty loss or damage.

Liquidation Loss Amount: With respect to any Payment Date and any Mortgage Loan that became a Liquidated Mortgage Loan during the related Collection Period, the unrecovered portion of the Principal Balance of such Mortgage Loan and any unpaid accrued interest thereon at the end of such Collection Period, after giving effect to the Net Liquidation Proceeds applied in reduction of such Principal Balance.

Liquidation Loss Distribution Amount: With respect to any Payment Date, an amount equal to the sum of (A) 100% of the Liquidation Loss Amounts on such Payment Date, plus (B) any Liquidation Loss Amounts remaining undistributed from any preceding Payment Date. Any Liquidation Loss Amount remaining undistributed from any preceding payment date shall not be required to be paid as a Liquidation Loss Distribution Amount to the extent that a Liquidation Loss Amount was paid on the notes by means of excess interest or a draw on the Policy or was reflected in the reduction of the Overcollateralization Amount.

Liquidation Proceeds: Proceeds (including Insurance Proceeds but not including amounts drawn under the Policy) if any received in connection with the liquidation of any Mortgage Loan or related REO Property, whether through trustee's sale, foreclosure sale or otherwise.

LT1 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT1 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT1 on such Payment Date.

LT2 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount REMIC I Regular Interest LT2 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT2 on such Payment Date.

LT3 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount REMIC I Regular Interest LT3 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT3 on such Payment Date.

LT4 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount REMIC I Regular Interest LT4 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT4 on such Payment Date.

Loan Rate: With respect to any Mortgage Loan and any day, the per annum rate of interest applicable under the related Mortgage Note.

Lost Note Affidavit: With respect to any Mortgage Loan as to which the original Mortgage Note has been permanently lost or destroyed and has not been replaced, an affidavit from the related Seller certifying that the original Mortgage Note has been lost, misplaced or destroyed (together with a copy of the related Mortgage Note, if available).

MERS: Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

MERS(R)System: The system of recording transfers of Mortgages electronically maintained by MERS.

MIN: The Mortgage Identification Number for Mortgage Loans registered with MERS on the MERS(R)System.

MOM Loan: With respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.

Monthly Payment: With respect to any Mortgage Loan (including any REO Property) and any Due Date, the payment of principal and interest due thereon in accordance with the terms of such Mortgage Loan.

Moody's: Moody's Investors Service, Inc., or its successor in interest.

Mortgage: The mortgage, deed of trust or other instrument creating a first or second lien on an estate in fee simple interest in real property securing a Mortgage Loan.

Mortgage File: With respect to each Mortgage Loan:

(i)    the original Mortgage Note endorsed or assigned without recourse in blank (which endorsement shall contain either an original signature or a facsimile signature of an authorized officer of GMACM) or, with respect to any Mortgage Loan as to which the original Mortgage Note has been permanently lost or destroyed and has not been replaced, a Lost Note Affidavit;

(ii)   the original Mortgage, noting the presence of the MIN of the Mortgage Loan, if the Mortgage is

registered on the MERS(R)System, and language, indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recordation thereon (if the original Mortgage has not yet been returned from the public recording office, a copy of the original Mortgage certified by GMACM that such Mortgage has been sent for recording, or a county certified copy of such Mortgage in the event the recording office keeps the original or if the original is lost;

(iii)   unless the Mortgage Loan is registered on the MERS(R)System, original assignments (which may be included in one or more blanket assignments if permitted by applicable law) of the Mortgage in recordable form from GMACM to "JPMorgan Chase Bank, as Indenture Trustee under that certain Indenture dated as of June 29, 2006, for GMACM Home Equity Loan Trust 2006-HE2, Home Equity Loan-Backed Term Notes" c/o the Servicer at an address specified by the Servicer;

(iv)   originals of any intervening assignments of the Mortgage from the originator to GMACM (or to MERS, if the Mortgage Loan is registered on the MERS(R)System, and which notes the presence of a MIN), with evidence of recording thereon, or, if the original of any such intervening assignment has not yet been returned from the public recording office, a copy of such original intervening assignment certified by GMACM that such original intervening assignment has been sent for recording; and

(v)   a true and correct copy of each assumption, modification, consolidation or substitution agreement, if any, relating to such Mortgage Loan; and

(vi)   any documents required to be added to such documents pursuant to the Purchase Agreement, the Trust Agreement or the Servicing Agreement.

It is understood that the Mortgage File (other than item (i) above) may be retained in microfilm, microfiche, optical storage or magnetic media in lieu of hard copy; provided, that with respect to any Mortgage Loan not registered on the MERS(R)System, the original assignment of Mortgage described in clause (iii) above shall be retained in the Mortgage File.

Mortgage Loan Schedule: The initial schedule of Initial Mortgage Loans as of the Cut-Off Date set forth in Exhibit A of the Servicing Agreement, and as of each Subsequent Cut-Off Date, any Subsequent Mortgage Loans, which schedule sets forth as to each Mortgage Loan (i) the Cut-Off Date Principal Balance, (ii) the loan number and (iii) the lien position of the related Mortgage.

Mortgage Loans: At any time, all Initial Mortgage Loans and Subsequent Mortgage Loans that have been sold to the Issuer pursuant to, in the case of Initial Mortgage Loans, the Trust Agreement, or, in the case of Subsequent Mortgage Loans, a Subsequent Transfer Agreement, together with all monies due or become due thereunder or the Related Documents, and that remain subject to the terms thereof.

Mortgage Note: With respect to a Mortgage Loan, the promissory note pursuant to which the related Mortgagor agrees to pay the indebtedness evidenced thereby and secured by the related Mortgage as modified or amended.

Mortgaged Property: The underlying property, including real property and improvements thereon, securing a Mortgage Loan.

Mortgagor: The obligor or obligors under a Mortgage Note.

Net Liquidation Proceeds: With respect to any Liquidated Mortgage Loan, Liquidation Proceeds net of amounts drawn on the Policy, Liquidation Expenses (but not including the portion, if any, of such amount that exceeds the Principal Balance of, plus accrued and unpaid interest on, such Mortgage Loan at the end of the Collection Period immediately preceding the Collection Period in which such Mortgage Loan became a Liquidated Mortgage Loan) and including any Recovery Amounts.

Net Loan Rate: With respect to any Payment Date and any Mortgage Loan, the Loan Rate of that Mortgage Loan applicable to the Due Date in the related Collection Period, net of the Servicing Fee Rate.

Net WAC Rate: With respect to any Payment Date, (i) a per annum rate equal to the weighted average of the Net Loan Rates of the Mortgage Loans as of the first day of the month preceding the month in which such Payment Date occurs, and weighted on the basis of the respective Principal Balances of such Mortgage Loans as of the first day of the related Collection Period, minus (ii) the premium rate on the Policy multiplied by a fraction, the numerator of which is the sum of the Note Balances and the denominator of which is the Pool Balance.

Net Worth: As of any date of determination, the net worth of GMACM and its consolidated subsidiaries, as determined in accordance with GAAP.

Non-United States Person: Any Person other than a United States Person.

Note Balance: With respect to any Payment Date and the Notes, the Initial Aggregate Note Balance reduced by all payments of principal on the Notes prior to such Payment Date.

Note Owner or Owner: The Beneficial Owner of a Note.

Note Payment Account: The account established by the Indenture Trustee pursuant to Sections 3.01 and 8.02 of the Indenture and Section 5.01 of the Servicing Agreement. Amounts deposited in the Note Payment

Account will be distributed by the Indenture Trustee in accordance with Section 3.05 of the Indenture.

Note Rate:  With respect to each Interest  Period and the related  Payment Date, a per annum rate equal to with respect to:

(a)     the Class A-1 Notes, the lesser of (i) 6.310% and (ii) the Net WAC Rate;

(b)     the Class A-2 Notes, the lesser of (i) 6.180% and (ii) the Net WAC Rate;

(c)     the Class A-3 Notes, the lesser of (i) 6.320% and (ii) the Net WAC Rate; and

(d)     the Class A-4 Notes, the  lesser of (i)  6.471% (or,  for any  Payment  Date after the second Payment  Date on which the Servicer  can  repurchase  the  Mortgage  Loans  pursuant to section  8.08(b) of the Servicing Agreement, 7.471% per annum) and (ii) the Net WAC Rate;.

Note Register:  The  register  maintained by the Note  Registrar  in which the Note  Registrar  shall provide for the registration of Notes and of transfers and exchanges of Notes.

Note Registrar:  The Indenture Trustee, in its capacity as Note Registrar.

Noteholder or Holder:  The  Person in whose name a Note is  registered  in the Note  Register,  except that, any Note  registered  in the name of the Depositor,  the Issuer or the Indenture  Trustee or any Affiliate of any of them shall be deemed  not to be  outstanding  and the  registered  holder  will not be  considered a Noteholder for purposes of giving any such request,  demand,  authorization,  direction,  notice,  consent or waiver under the Indenture or the Trust Agreement;  provided,  that in determining whether the Indenture Trustee shall be protected in relying upon any such request,  demand,  authorization,  direction,  notice, consent or waiver, only Notes that the  Indenture  Trustee or the Owner  Trustee  knows to be so owned  shall be so  disregarded. Owners of Notes that have been  pledged in good faith may be regarded  as  Noteholders  if the pledgee  thereof establishes to the  satisfaction  of the Indenture  Trustee or the Owner  Trustee such pledgee's right so to act with  respect to such  Notes and that such  pledgee is not the  Issuer,  any other  obligor on the Notes or any Affiliate of any of the foregoing Persons.

Notes:  Any of the Class A-1  Notes,  Class A-2 Notes,  Class A-3 Notes or Class A-4 Notes,  issued and outstanding pursuant to the Indenture.

Notional  Amount:  With  respect  to the Class SB  Certificates  and REMIC II Regular  Interest  SB-IO, immediately  prior to any  Payment  Date a notional  amount  equal  to the  aggregate  of the Uncertificated Principal Balances of the REMIC I Regular Interests.

Officer's  Certificate:  With respect to the Servicer, a certificate signed by the President,  Managing Director,  a Director,  a Vice President or an Assistant Vice  President,  of the Servicer and delivered to the Indenture  Trustee.  With respect to the Issuer, a certificate  signed by any Authorized Officer of the Issuer, under the  circumstances  described  in,  and  otherwise  complying  with,  the  applicable  requirements of Section 10.01  of the  Indenture,  and delivered to the Indenture  Trustee.  Unless  otherwise  specified,  any reference in the Indenture to an Officer's  Certificate shall be to an Officer's  Certificate of any Authorized Officer of the Issuer.

Opinion of Counsel:  A written opinion of counsel of a law firm reasonably  acceptable to the recipient thereof.  Any Opinion of Counsel for the  Servicer  may be  provided  by in-house  counsel for the  Servicer if reasonably acceptable.

Original  Pre-Funded  Amount: The amount deposited from the proceeds of the sale of the Securities into the Pre-Funding Account on the Closing Date, which amount is $160,042,722.

Outstanding:  With  respect  to the  Notes,  as of the date of  determination,  all Notes  theretofore executed, authenticated and delivered under this Indenture except:

(i)     Notes  theretofore  cancelled by the Note Registrar or delivered to the Indenture Trustee for cancellation; and

(ii)     Notes in exchange for or in lieu of which other Notes have been  executed,  authenticated and  delivered  pursuant  to the  Indenture  unless  proof  satisfactory  to the  Indenture  Trustee is presented that any such Notes are held by a holder in due course;

provided,  however,  that for purposes of effectuating  the  Enhancer's  right of  subrogation as set forth in Section 4.12  of the Indenture  only,  all Notes that have been paid with funds provided under the Policy shall be deemed to be Outstanding until the Enhancer has been reimbursed with respect thereto.

Overcollateralization  Amount:  With respect to any Payment  Date,  the amount (but not less than zero), if any, by which (a) the  aggregate  outstanding  Principal  Balance of the  Mortgage  Loans as of the close of business on the last day of the related Collection Period,  plus amounts on deposit in the Pre-Funding  Account (excluding any investment earnings thereon) exceeds (b) the aggregate Note Balance of the Notes.

Overcollateralization  Increase Amount: With respect to any Payment Date, an amount equal to the lesser of (1) the Excess  Spread  remaining  after the  application  thereof to the  payment of any  Liquidation  Loss Distribution  Amount on such  payment date and (2) the amount  necessary to increase the  Overcollateralization

Amount to the Overcollateralization Target Amount.

Overcollateralization Release Amount: With respect to any Payment Date, the excess, if any, of the Overcollateralization Amount over the Overcollateralization Target Amount, which, on such Payment Date, shall not exceed an amount equal to the total Principal Collections for such Payment Date.

Overcollateralization Target Amount: With respect to any Payment Date prior to the Stepdown Date, the Required Overcollateralization Amount will be 3.80% of the initial Pool Balance. With respect to any Payment Date on or after the Stepdown Date, an amount equal to the greater of (i) 7.60% of the Pool Balance as of the last day of the related Collection Period and (ii) 0.50% of the initial Pool Balance; provided, however, upon the occurrence of a Servicing Trigger Event, the Overcollateralization Target Amount shall be no less than the Overcollateralization Target Amount as of the previous Payment Date. The Overcollateralization Target Amount may be reduced from time to time with the consent of the Enhancer and written notice from each Rating Agency that the rating will not be reduced or withdrawn as a result of the change in the Overcollateralization Target Amount.

Owner Trust: GMACM Home Equity Loan Trust 2006-HE2, created by the Certificate of Trust pursuant to the Trust Agreement.

Owner Trustee: Wilmington Trust Company, not in its individual capacity but solely as owner trustee, and its successors and assigns or any successor Owner Trustee appointed pursuant to the terms of the Trust Agreement.

Ownership Interest: As to any Certificate, any ownership or security interest in such Certificate, including any interest in such Certificate as the Certificateholder thereof and any other interest therein, whether direct or indirect, legal or beneficial, as owner or as pledgee.

Paying Agent: Any paying agent or co-paying agent appointed pursuant to Section 3.03 of the Indenture, which initially shall be the Indenture Trustee.

Payment Date: The 25th day of each month, or if such day is not a Business Day, then the next Business Day.

Percentage Interest: With respect to any Note and Payment Date, the percentage obtained by dividing the Note Balance of such Note by the aggregate Note Balance of all Notes prior to such Payment Date. With respect to any Certificate and any Payment Date, the Percentage Interest stated on the face of such Certificate.

Permitted Investments: One or more of the following:

(i)   obligations of or guaranteed as to principal and interest by the United States or any agency or instrumentality thereof when such obligations are backed by the full faith and credit of the United States;

(ii)   repurchase agreements on obligations specified in clause (i) above maturing not more than one month from the date of acquisition thereof; provided, that the unsecured short-term debt obligations of the party agreeing to repurchase such obligations are at the time rated by each Rating Agency in its highest short-term rating category available;

(iii)   federal funds, certificates of deposit, demand deposits, time deposits and bankers' acceptances (which shall each have an original maturity of not more than 90 days and, in the case of bankers' acceptances, shall in no event have an original maturity of more than 365 days or a remaining maturity of more than 30 days) denominated in United States dollars of any U.S. depository institution or trust company incorporated under the laws of the United States or any state thereof or of any domestic branch of a foreign depository institution or trust company; provided, that the short-term debt obligations of such depository institution or trust company (or, if the only Rating Agency is Standard & Poor's, in the case of the principal depository institution in a depository institution holding company, debt obligations of the depository institution holding company) at the date of acquisition thereof have been rated by each Rating Agency in its highest short-term rating category available; and provided further, that if the only Rating Agency is Standard & Poor's and if the depository or trust company is a principal subsidiary of a bank holding company and the debt obligations of such subsidiary are not separately rated, the applicable rating shall be that of the bank holding company; and provided further, that if the only Rating Agency is Standard & Poor's and the original maturity of such short-term debt obligations of a domestic branch of a foreign depository institution or trust company shall exceed 30 days, the short-term rating of such institution shall be A-1+;

(iv)   commercial paper (having original maturities of not more than 365 days) of any corporation incorporated under the laws of the United States or any state thereof which on the date of acquisition has been rated by each Rating Agency in its highest short-term rating category available; provided, that such commercial paper shall have a remaining maturity of not more than 30 days;

(v)   a money market fund or a qualified investment fund (including without limitation, any such fund for which the Indenture Trustee or an Affiliate of the Indenture Trustee acts as an advisor or a manager) rated by each Rating Agency in one of its two highest long-term rating categories available (if so rated by such Rating Agency); and

(vi)   other obligations or securities that are acceptable to each Rating Agency as a Permitted Investment hereunder and will not cause a Rating Event, and which are acceptable to the Enhancer, as

evidenced in writing;

provided, however, that no instrument shall be a Permitted Investment if it represents, either (1) the right to receive only interest payments with respect to the underlying debt instrument or (2) the right to receive both principal and interest payments derived from obligations underlying such instrument and the principal and interest payments with respect to such instrument provide a yield to maturity greater than 120% of the yield to maturity at par of such underlying obligations. References herein to the highest long-term debt rating category available shall mean AAA in the case of Standard & Poor's and Aaa in the case of Moody's, and references herein to the highest short-term rating category available shall mean A-1 in the case of Standard & Poor's and P-1 in the case of Moody's.

Permitted Transferee: Any Transferee of a Class R Certificate, other than a Disqualified Organization or Non-United States Person.

Person: Any legal individual, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Plan: Any employee benefit plan or certain other retirement plans and arrangements, including individual retirement accounts and annuities, Keogh plans and bank collective investment funds and insurance company general or separate accounts in which such plans, accounts or arrangements are invested, that are subject to ERISA or Section 4975 of the Code, as described in Section 3.05 of the Trust Agreement.

Plan Assets: The meaning specified in Section 2510.3-101 of the Department of Labor Regulations and as described in Section 3.05 of the Trust Agreement.

Policy: The Financial Guaranty Insurance Policy 06030080, dated as of the Closing Date, issued by the Enhancer.

Policy Draw Amount: With respect to any Payment Date, the Insured Payment.

Pool Balance: With respect to any date, the aggregate Principal Balance of all Mortgage Loans as of such date plus, during the Pre-Funding Period, the Pre-Funded Amount.

Predecessor Note: With respect to any Note, every previous Note evidencing all or a portion of the same debt as that evidenced by such Note; and, for the purpose of this definition, any Note authenticated and delivered under Section 4.03 of the Indenture in lieu of a mutilated, lost, destroyed or stolen Note shall be deemed to evidence the same debt as such mutilated, lost, destroyed or stolen Note.

Pre-Funded Amount: With respect to any date of determination during the Pre-Funding Period, the amount on deposit in the Pre-Funding Account.

Pre-Funding Account: The account established and maintained pursuant to Section 3.18 of the Servicing Agreement.

Pre-Funding Period: The period commencing on the Closing Date until the earliest of (i) the date on which the amount on deposit in the Pre-Funding Account is less than $100,000, (ii) September 26, 2006 or (iii) the occurrence of a Servicing Default.

Principal Balance: With respect to any Mortgage Loan, other than a Liquidated Mortgage Loan, and as of any day, the related Cut-Off Date Principal Balance, minus all collections credited as principal in respect of any such Mortgage Loan in accordance with the related Mortgage Note and applied in reduction of the Principal Balance thereof. For purposes of this definition, a Liquidated Mortgage Loan shall be deemed to have a Principal Balance equal to the Principal Balance of the related Mortgage Loan immediately prior to the final recovery of substantially all related Liquidation Proceeds and a Principal Balance of zero thereafter.

Principal Collections: With respect to any Payment Date, an amount equal to the sum of (i) the principal portion of all scheduled Monthly Payments on the Mortgage Loans received during the related Collection Period, as reported by the Servicer or the related Subservicer; (ii) the principal portion of all proceeds of the repurchase of any Mortgage Loans (or, in the case of a substitution, any Substitution Adjustment Amounts) during the related Collection Period; (iii) the principal portion of all other unscheduled collections received on the Mortgage Loans during the related Collection Period (or deemed to be received during the related Collection Period), including, without limitation, full and partial Principal Prepayments made by the respective Mortgagors, Insurance Proceeds, Net Liquidation Proceeds and Subsequent Net Recovery Amounts, to the extent not previously distributed; and (iv) on the Payment Date immediately following the end of the Pre-Funding Period, any amount transferred from the Pre Funding Account to the Note Payment Account in accordance with Section 3.17 of the Servicing Agreement.

Principal Distribution Amount: For any Payment Date, the total Principal Collections for such Payment Date less any Overcollateralization Release Amount for such Payment Date; provided that the Principal Distribution Amount for any Payment Date shall not be less than $0.

Proceeding: Any suit in equity, action at law or other judicial or administrative proceeding.

Program Guide: The GMACM Home Equity Servicing Guidelines, as in effect from time to time.

Purchase Agreement: The mortgage loan purchase agreement dated as of the Closing Date, among the Sellers, the Purchaser, the Issuer and the Indenture Trustee.

Purchase Price: The amounts specified in Section 2.3(a) of the Purchase Agreement.

Purchaser: Residential Asset Mortgage Products, Inc., as purchaser under the Purchase Agreement.

Rating Agency: Each of Moody's and Standard & Poor's or, if any such organization or a successor thereto is no longer in existence, such nationally recognized statistical rating organization, or other comparable Person, designated by the Depositor, notice of which designation shall be given to the Indenture Trustee. References herein to the highest short term unsecured rating category of a Rating Agency shall mean A-1 or better in the case of Standard & Poor's and P-1 or better in the case of Moody's; and in the case of any other Rating Agency, shall mean such equivalent ratings. References herein to the highest long-term rating category of a Rating Agency shall mean "AAA" in the case of Standard & Poor's and "Aaa" in the case of Moody's; and in the case of any other Rating Agency, shall mean such equivalent rating.

Record Date: With respect to the Notes and any Payment Date, unless Notes are no longer held in book-entry form, the close of business on the Business Day immediately preceding such Payment Date and if the Notes are no longer held in book-entry form, the last Business Day of the calendar month preceding the month of such Payment Date.

Recovery Amount: Amounts collected on a Mortgage Loan after the Mortgage Loan becomes a Liquidated Mortgage Loan, net of any Servicing Fee, Recovery Fee and any reimbursement for advances and expenses of the Servicer.

Recovery Fee: A customary fee calculated based on additional recovery amounts charged for the collection of such additional recovery amounts on any Mortgage Loan after the date that such Mortgage Loan became a Liquidated Mortgage Loan.

Regular Interest: Any of the REMIC I Regular Interests or REMIC II Regular Interests.

Related Class: A Class of REMIC II Regular Interests and a class of Notes are related if, and only if, they bear the same Letter/number combination designating their Class, e.g. REMIC II Regular Interest A-2 is related to the Class A-2 Notes.

Regulation AB: Subpart 229.1100 - Asset Backed Securities (Regulation AB), 17 C.F.R. ss.ss.229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (January 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Related Documents: With respect to each Mortgage Loan, the documents contained in the Mortgage File.

Relief Act Shortfalls: With respect to any Payment Date, for any Mortgage Loan as to which there has been a reduction in the amount of interest collectible thereon for the related Collection Period as a result of the application of the Servicemembers Civil Relief Act, formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, or any similar state legislation or regulations, the shortfall, if any, equal to (i) one month's interest on the Principal Balance of such Mortgage Loan at the applicable Loan Rate, over (ii) the interest collectible on such Mortgage Loan during such Collection Period.

REMIC: A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

REMIC Administrator: JPMorgan Chase Bank, N.A.; provided that if the REMIC Administrator is found by a court of competent jurisdiction to no longer be able to fulfill its obligations as REMIC Administrator under this Agreement the Servicer or Indenture Trustee acting as Servicer shall appoint a successor REMIC Administrator, subject to assumption of the REMIC Administrator obligations under this Agreement.

REMIC I: The segregated pool of assets in the Trust Estate with respect to which a REMIC election is to be made.

REMIC I Certificates: The Class R-I Certificates and the REMIC I Regular Interests.

REMIC I Liquidation Loss Amounts: For any Payment Date, Liquidation Loss Amounts on the Mortgage Loans for the related Collection Period shall be allocated as follows: (i) the interest portion of Liquidation Loss Amounts, if any, shall be allocated pro rata to accrued interest on the REMIC I Regular Interests to the extent of such accrued interest, and (ii) any remaining interest portions of Liquidation Loss Amounts and any principal portions of Liquidation Loss Amounts shall be treated as principal portions of Liquidation Loss Amounts and allocated (a) to REMIC I Regular Interest LT2, REMIC I Regular Interest LT3 and REMIC I Regular Interest LT4, pro rata according to their respective REMIC I Principal Reduction Amounts, provided that such allocation to each of REMIC I Regular Interest LT2, REMIC I Regular Interest LT3 and REMIC I Regular Interest LT4 shall not exceed their respective REMIC I Principal Reduction Amounts for such Payment Date, and (b) any Liquidation Loss Amounts not allocated to any of REMIC I Regular Interest LT2, REMIC I Regular Interest LT3 or REMIC I Regular Interest LT4 pursuant to the proviso of clause (a) above shall be allocated to REMIC I Regular Interest LT1.

REMIC I Principal Reduction Amounts: For any Payment Date, the amounts by which the Uncertificated

Principal Balances of the REMIC I Regular Interests will be reduced on such Payment Date by the allocation of REMIC I Liquidation Loss Amounts and the distribution of principal, determined as follows:

For purposes of the succeeding formulas the following symbols shall have the meanings set forth below:

$Y1$ = the Uncertificated Principal Balance of REMIC I Regular Interest LT1 after distributions on the prior Payment Date.

$Y2$ = the Uncertificated Principal Balance of REMIC I Regular Interest LT2 after distributions on the prior Payment Date.

$Y3$ = the Uncertificated Principal Balance of REMIC I Regular Interest LT3 after distributions on the prior Payment Date.

$Y4$ = the Uncertificated Principal Balance of REMIC I Regular Interest LT4 after distributions on the prior Payment Date (note: $Y3 = Y4$).

$AY1$ = the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT1.

$AY2$ = the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT2.

$AY3$ = the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT3.

$AY4$ = the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT4.

$P0$ = the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests after distributions and the allocation of REMIC I Liquidation Loss Amounts on the prior Payment Date.

$P1$ = the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests after distributions and the allocation of REMIC I Liquidation Loss Amounts to be made on such Payment Date.

$AP$ = $P0 - P1$ = the aggregate of the REMIC I Principal Reduction Amounts.

= the aggregate of the principal portions of REMIC I Liquidation Loss Amounts to be allocated to, and the principal distributions to be made on, the Notes and the Certificates on such Payment Date (including distributions of accrued and unpaid interest on the Class SB Certificates for prior Payment Dates).

$R0$ = the Net WAC Rate (stated as a monthly rate) after giving effect to amounts distributed and Liquidation Loss Amounts allocated on the prior Payment Date.

$R1$ = the Net WAC Rate (stated as a monthly rate) after giving effect to amounts to be distributed and Liquidation Loss Amounts to be allocated on such Payment Date.

$a$ = $(Y2 + Y3)/P0$. The initial value of a on the Closing Date for use on the first Payment Date shall be 0.0001.

$a0$ = the lesser of (A) the sum for all Classes of Notes, of the product for each Class of (i) the monthly interest rate (as limited by the Net WAC Rate, if applicable) for such Class applicable for distributions to be made on such Payment Date and (ii) the aggregate Note Balance for such Class after distributions and the allocation of Liquidation Loss Amounts on the prior Payment Date and (B) $R0*P0$.

$a1$ = the lesser of (A) the sum for all Classes Notes, of the product for each Class of (i) the monthly interest rate (as limited by the Net WAC Rate, if applicable) for such Class applicable for distributions to be made on the next succeeding Payment Date and (ii) the aggregate Note Balance for such Class after distributions and the allocation of Liquidation Loss Amounts to be made on such Payment Date and (B) $R1*P1$.

Then, based on the foregoing definitions:

$AY1$ = $AP - AY2 - AY3 - AY4$;

$AY2$ = $(a/2)\{( a0R1 - a1R0)/R0R1\}$;

$AY3$ = $aAP - AY2$; and

$AY4$ = $AY3$.

if both AY2 and AY3, as so determined, are non-negative numbers. Otherwise:

(1) If AY2, as so determined, is negative, then

$AY2$ = 0;

$AY3$ = $a\{a1R0P0 - a0R1P1\}/\{a1R0\}$;

$AY4$ = $AY3$; and

AY1 = AP - AY2 - AY3 - AY4.

(2) If AY3, as so determined, is negative, then

AY3 = 0;

AY2 = a{a0R1P1 - a1R0P0}/{2R1R0P1 - a1R0};

AY4 = AY3; and

AY1 = AP - AY2 - AY3 - AY4.

REMIC I Regular Interests: Each of the following separate non-certificated beneficial ownership interests in REMIC I having the properties set forth in the following table and elsewhere herein:

| DESIGNATION FOR EACH REMIC I REGULAR INTEREST | REMIC I REMITTANCE RATE | INITIAL UNCERTIFICATED PRINCIPAL BALANCE | LATEST POSSIBLE MATURITY |
| --- | --- | --- | --- |
| LT1 | Variable(1) | $639,898,082.01 | May 25, 2036 |
| LT2 | Variable(1) | $26,082.42 | May 25, 2036 |
| LT3 | Variable(1) | $37,917.58 | May 25, 2036 |
| LT4 | Variable(1) | $37,917.58 | May 25, 2036 |

(1)    Calculated in accordance with the definition of "REMIC I Remittance Rate" herein.

REMIC I Remittance Rate: With respect to any Payment Date and (i) REMIC I Regular Interests LT1 and LT2, a per annum rate equal to the weighted average of the Net Loan Rates of the Loans applicable for the Interest Period for such Payment Date, (ii) REMIC I Regular Interest LT3, zero (0.00%), and (iii) REMIC I Regular Interest LT4, a per annum rate equal to twice the weighted average of the Net Loan Rates of the Loans applicable for the Interest Period for such Payment Date.

REMIC II: The segregated pool of assets subject hereto, constituting a portion of the primary trust created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be made, consisting of the REMIC I Regular Interests.

REMIC II Liquidation Loss Amounts: On any Payment Date, Liquidation Loss Amounts for the related Collection Period shall be allocated first to REMIC II Regular Interest SB-IO in reduction of the accrued and unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero, second to REMIC II Regular Interest SB-PO in reduction of the Uncertificated Principal Balance thereof until such Uncertificated Principal Balance shall have been reduced to zero and third to the Notes to the same extent, if any, that (i) amounts interest accrued on such Notes since the prior Payment Date remain unpaid after distributions on such Payment Date and (ii) the aggregate of the Class Principal Balances of the Notes following distributions on such Payment Date exceed the aggregate principal balance of the Loans by more than such excess, if any, after distributions on the immediately prior Payment Date.

REMIC II Regular Interest SB-IO: A regular interest in REMIC II with no entitlement to principal and entitled to (i) interest at the Certificate Rate on its Notional Amount and (ii) payments of prepayment charges.

REMIC II Regular Interest SB-PO: A regular interest in REMIC II with no entitlement to interest and entitled to principal in an amount equal to the Initial Certificate Balance and any amounts in the nature of prepayment charges received in connection with Loans, provided that any payment of prepayment charges shall not be deemed to reduce the Uncertificated Principal Balance of REMIC II Regular Interest SB-PO.

REMIC II Regular Interests: Each Class of the Notes and REMIC II Regular Interests SB-IO and SB-PO.

REMIC II Remittance Rate: With respect to each Class of Notes, the Note Rate for such Class. With respect to REMIC II Regular Interest SB-PO, 0% per annum. With respect to REMIC II Regular Interest SB-IO the Certificate Rate therefor.

REMIC Provisions: Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at Sections 860A through 860G of Subchapter M of Chapter 1 of the Code, and related provisions, and temporary and final regulations (or, to the extent not inconsistent with such temporary or final regulations, proposed regulations) and published rulings, notices and announcements promulgated thereunder, as the foregoing may be in effect from time to time.

Remittance Rate:  The REMIC I Remittance Rate or REMIC II Remittance Rate, as applicable.

Repurchase Event: With respect to any Mortgage Loan, either (i) a discovery that, as of the Closing Date with respect to an Initial Mortgage Loan or the related subsequent Transfer Date with respect to any Subsequent Mortgage Loan, the related Mortgage was not a valid lien on the related Mortgaged Property subject only to (A) the lien of any prior mortgage indicated on the Mortgage Loan Schedule, (B) the lien of real property taxes and assessments not yet due and payable, (C) covenants, conditions, and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage and such other permissible title exceptions as are customarily accepted for similar loans and (D) other matters to which properties are commonly subject that do not materially adversely affect the value, use, enjoyment or marketability of the related Mortgaged Property or (ii) with respect to any Mortgage Loan as to which either Seller delivers an affidavit certifying that the original Mortgage Note has been lost or destroyed, a subsequent default on such Mortgage Loan if the enforcement thereof or of the related Mortgage is materially and adversely affected by the absence of such original Mortgage Note.

Repurchase Price: With respect to any Mortgage Loan required to be repurchased on any date pursuant to the Purchase Agreement or purchased by the Servicer pursuant to the Servicing Agreement, an amount equal to the sum of (i) 100% of the Principal Balance thereof (without reduction for any amounts charged off), (ii) unpaid accrued interest at the Loan Rate (or with respect to the last day of the month in the month of repurchase, the Loan Rate will be the Loan Rate in effect as of the second to last day in such month) on the outstanding Principal Balance thereof from the Due Date to which interest was last paid by the related Mortgagor to the first day of the month following the month of purchase and (iii) in connection with any Mortgage Loan required to be repurchased pursuant to Sections 2.1 or 3.1 of the Purchase Agreement, any costs and damages incurred by the Trust Fund with respect to such Mortgage Loan in connection with a breach of Section 3.1(b)(x) of the Purchase Agreement.

Required Insurance Policy: With respect to any Mortgage Loan, any insurance policy which is required to be maintained from time to time under the Servicing Agreement or the related Subservicing Agreement in respect of such Mortgage Loan.

Responsible Officer: With respect to the Indenture Trustee, any officer of the Indenture Trustee with direct responsibility for the administration of the Indenture and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of and familiarity with the particular subject.

Rolling Six-Month Annualized Liquidation Loss Amounts: With respect to any Determination Date occurring after the fifth Determination Date, the product (expressed as a percentage) of (i) the aggregate Liquidation Loss Amounts as of the end of each of the six Collection Periods (reduced by the aggregate Subsequent Net Recovery Amounts for such Collection Periods) immediately preceding such Determination Date divided by the Initial Pool Balance and (ii) two (2).

Rolling Three Month Delinquency Percentage: With respect to any Payment Date and the Mortgage Loans, the arithmetic average of the Delinquency Percentages determined for such Payment Date and for each of the two preceding Payment Dates.

SB-IO Marker Rate: Two times the weighted average of the REMIC I Remittance Rates for REMIC I Regular Interests LT2 and LT3, weighted by their respective Uncertificated Principal Balances.

Secretary of State: The Secretary of State of the State of Delaware.

Securities Act: The Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

Securitization Transaction: Any transaction involving a sale or other transfer of mortgage loans directly or indirectly to an issuing entity in connection with an issuance of publicly offered or privately placed, rated or unrated mortgage-backed securities.

Securities Balance: The Note Balance or Certificate Balance, as the context may require.

Security: Any Certificate or a Note, as the context may require.

Securityholder: Any Noteholder or Certificateholder.

Seller or Sellers: GMAC Mortgage Corporation, a Pennsylvania corporation, and its successors and assigns, and Walnut Grove Mortgage Loan Trust 2003-A, a Delaware statutory trust, and its successors and assigns.

Servicer: GMAC Mortgage Corporation, a Pennsylvania corporation, and its successors and assigns.

Servicer Advances: Any advances the Servicer may make with respect to the Mortgage Loans, whether or not required, in respect of principal, interest, taxes, insurance or otherwise.

Servicing Agreement: The servicing agreement dated as of the Closing Date among the Servicer, the Issuer and the Indenture Trustee.

Servicing Certificate: A certificate completed and executed by a Servicing Officer on behalf of the Servicer in accordance with Section 4.01 of the Servicing Agreement.

Servicing Criteria:  The "Servicing Criteria" set forth in Item 1122(d) of Regulation AB, as such may be amended from time to time.

Servicing Default:  Any one of the following events:

(i)    any failure by the Servicer to deposit in the Custodial Account, , the Note Payment Account or the Distribution Account any deposit required to be made under the terms of the Servicing Agreement that continues unremedied for a period of five Business Days after the date upon which written notice of such failure shall have been given to the Servicer by the Issuer or the Indenture Trustee, or to the Servicer, the Issuer and the Indenture Trustee by the Enhancer;

(ii)   any failure on the part of the Servicer duly to observe or perform in any material respect any other covenants or agreements of the Servicer set forth in the Securities or in the Servicing Agreement, which failure, in each case, materially and adversely affects the interests of the Securityholders or the Enhancer, and which failure continues unremedied for a period of 45 days after the date on which written notice of such failure, requiring the same to be remedied, and stating that such notice is a "Notice of Default" under the Servicing Agreement, shall have been given to the Servicer by the Issuer or the Indenture Trustee, or to the Servicer, the Issuer and the Indenture Trustee by the Enhancer;

(iii)  the entry against the Servicer of a decree or order by a court or agency or supervisory authority having jurisdiction under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law, or if a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Servicer or its property, and the continuance of any such decree or order unstayed and in effect for a period of 60 consecutive days;

(iv)   the Servicer shall voluntarily submit to Proceedings under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law relating to the Servicer or of or relating to all or substantially all of its property; or the Servicer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors or voluntarily suspend payment of its obligations;

(v)    the Servicer's Tangible Net Worth at any time is less than $100,000,000 and GMAC fails to own, directly or indirectly, at least 51% of the common stock of the Servicer; or

(vi)   the Rolling Six-Month Annualized Liquidation Loss Amount with respect to the Mortgage Loans exceeds 1.50%.

Servicing Fee: With respect to any Mortgage Loan and any Collection Period, the product of (i) the Servicing Fee Rate divided by 12 and (ii) the related Principal Balance as of the first day of such Collection Period.

Servicing Fee Rate:  0.50% per annum.

Servicing Officer:  Any officer of the Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name and specimen signature appear on a list of servicing officers furnished to the Indenture Trustee (with a copy to the Enhancer) by the Servicer, as such list may be amended from time to time.

Servicing Termination Event: As of any Payment Date, the occurrence of any of the following scenarios:

(a)    the Rolling Three Month Delinquency Percentage is greater than 4.00% for the then-current Payment Date; or

(b)    on or after the Payment Date in October 2008, the aggregate amount of Liquidation Loss Amounts (reduced by the aggregate Subsequent Net Recovery Amounts, if any, with respect to such Payment Date) on the Mortgage Loans as a percentage of the Cut-Off Date Principal Balance exceeds the applicable amount set forth below:

| | |
|---|---|
| December 2008 to June 2009: | 2.00% with respect to December 2008, plus an additional 1/6th of 0.50% for each month thereafter. |
| July 2009 to June 2010: | 2.50% with respect to June 2009, plus an additional 1/12th of 0.60% for each month thereafter. |
| July 2010 to June 2011: | 3.10% with respect to June 2010, plus an additional 1/12th of 1.00% for each month thereafter. |
| July 2011 and thereafter: | 4.10%. |

Servicing Trigger Event: As of any Payment Date, the occurrence of any of the following scenarios:

(a)   the Rolling Three Month Delinquency Percentage is greater than 4.00% for the then-current Payment Date; or

(b)   on or after the Payment Date in December 2008, the aggregate amount of Liquidation Loss Amounts (reduced by the aggregate Subsequent Net Recovery Amounts, if any, with respect to such Payment Date) on the Mortgage Loans as a percentage of the Cut-Off Date Principal Balance exceeds the applicable amount set forth below:

| | |
|---|---|
| December 2008 to June 2009: | 1.50% with respect to December 2008, plus an additional 1/6th of 0.50% for each month thereafter; |
| April 2009 to June 2010: | 2.00% with respect to June 2009, plus an additional 1/12th of 0.60% for each month thereafter; |
| April 2010 to June 2011: | 2.60% with respect to June 2010, plus an additional 1/12th of 1.00% for each month thereafter; and |
| June 2011 and thereafter: | 3.60%. |

Standard & Poor's:  Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. or its successor in interest.

Stated Value:  With respect to any Mortgage Loan, the stated value of the related Mortgaged Property determined in accordance with the Program Guide and given by the related Mortgagor in his or her application.

Statutory Trust Statute:  Chapter 38 of Title 12 of the Delaware Code, 12 Del. Codess.ss.3801 et seq., as the same may be amended from time to time.

Stepdown Date:  The later of (i) the Payment Date in January 2009 and (ii) the Payment Date on which the Pool Balance (after applying payments received in the related Collection Period) as of such Payment Date is less than 50% of the Initial Pool Balance.

Subsequent Cut-Off Date:  With respect to any Subsequent Mortgage Loan, the date specified in the related Subsequent Transfer Agreement.

Subsequent Cut-Off Date Principal Balance:  With respect to any Subsequent Mortgage Loan, the Principal Balance thereof as of the close of business on the last day of the Collection Period immediately prior to the related Subsequent Cut-Off Date.

Subsequent Mortgage Loan: An mortgage loan sold by a Seller to the Issuer pursuant to Section 2.2 of the Purchase Agreement, such Mortgage Loan being identified on the Mortgage Loan Schedule attached to the related Subsequent Transfer Agreement, as set forth in such Subsequent Transfer Agreement.

Subsequent Net Recovery Amounts:  Recovery Amounts collected on a Mortgage Loan after the Mortgage Loan becomes a Liquidated Mortgage Loan, net of any Recovery Fee.

Subsequent Transfer Agreement:  Each Subsequent Transfer Agreement dated as of a Subsequent Transfer Date executed by the respective Seller and the Issuer substantially in the form of Exhibit 2 to the Purchase Agreement, by which the related Subsequent Mortgage Loans are sold to the Issuer.

Subsequent Transfer Date: With respect to each Subsequent Transfer Agreement, the date on which the related Subsequent Mortgage Loans are sold to the Issuer.

Subservicer:  Each Person that enters into a Subservicing Agreement as a subservicer of Mortgage Loans.

Subservicing Agreement:  The written contract between the Servicer and any Subservicer relating to servicing and administration of certain Mortgage Loans as provided in Section 3.01(b) of the Servicing Agreement.

Substitution Adjustment Amount:  With respect to any Eligible Substitute Loan and any Deleted Loan, the amount, if any, as determined by the Servicer, by which the aggregate principal balance of all such Eligible Substitute Loans as of the date of substitution is less than the aggregate Principal Balance of all such Deleted Loans (after application of the principal portion of the Monthly Payments due in the month of substitution that are to be distributed to the Securityholders in the month of substitution).

Tangible Net Worth:  Net Worth, less the sum of the following (without duplication): (a) any other assets of GMACM and its consolidated subsidiaries that would be treated as intangibles under GAAP including, without limitation, any write-up of assets (other than adjustments to market value to the extent required under GAAP with respect to excess servicing, residual interests in offerings of asset-backed securities and asset-backed securities that are interest-only securities), good-will, research and development costs, trade-marks, trade names, copyrights, patents and unamortized debt discount and expenses and (b) loans or other extensions of credit to officers of GMACM or its consolidated subsidiaries other than mortgage loans made to such Persons in the ordinary course of business.

Tax Matters Partner: GMACM, as the Servicer, for so long as the Servicer holds all or any portion of the Class R Certificates; if any other Person holds 100% of the Certificates, such Person; and otherwise as provided in the Code.

Tax Returns: The federal income tax return on Internal Revenue Service Form 1066, U.S. Real Estate Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice to Residual Interest Holders of REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be filed on behalf of each REMIC due to their classification as a REMIC under the REMIC Provisions, together with any and all other information, reports or returns that may be required to be furnished to the Certificateholders or filed with the Internal Revenue Service or any other governmental taxing authority under any applicable provisions of federal, state or local tax laws.

Transfer: Any direct or indirect transfer, sale, pledge, hypothecation or other form of assignment of any Ownership Interest in a Certificate.

Transfer Date: The Payment Date on which the Servicer, upon receipt of written notice and direction from the Issuer, shall cause the retransfer of Mortgage Loans from the Trust Estate to the Issuer, pursuant to Section 3.15(c) of the Servicing Agreement.

Transfer Notice Date: The fifth Business Day prior to the Transfer Date for which the Servicer shall give the Indenture Trustee, the Rating Agencies and the Enhancer a notice of the proposed retransfer of Mortgage Loans, pursuant to Section 3.15(c) of the Servicing Agreement.

Transferee: Any Person who is acquiring by Transfer any Ownership Interest in a Certificate.

Transferor: Any Person who is disposing by Transfer of any Ownership Interest in a Certificate.

Treasury Regulations: Regulations, including proposed or temporary Regulations, promulgated under the Code. References herein to specific provisions of proposed or temporary regulations shall include analogous provisions of final Treasury Regulations or other successor Treasury Regulations.

Trust Agreement: The trust agreement dated as of the Closing Date, between the Owner Trustee and the Depositor.

Trust Estate: The meaning specified in the Granting Clause of the Indenture.

Trust Indenture Act or TIA: The Trust Indenture Act of 1939, as amended from time to time, as in effect on any relevant date.

UCC: The Uniform Commercial Code, as in effect from time to time, as in effect in any specified jurisdiction.

Unpaid Principal Amount: As defined in Section 3.05(a) of the Indenture.

Uncertificated Accrued Interest: With respect to any REMIC I Regular Interest for any Payment Date, one month's interest at the related REMIC I Remittance Rate for such Payment Date, accrued on the Uncertificated Principal Balance immediately prior to such Payment Date. Uncertificated Accrued Interest for the REMIC I and REMIC II Regular Interests shall accrue on the basis of a 360-day year consisting of twelve 30-day months. For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC I Regular Interests for any Payment Date, any Prepayment Interest Shortfalls or Relief Act Shortfalls for such Payment Date shall be allocated among the REMIC I Regular Interests pro rata based on, and to the extent of, the Uncertificated Accrued Interest thereon, as calculated without the application of this sentence. With respect to any Payment Date and REMIC II Regular Interest SB-IO, one month's interest at the related Certificate Rate on the Notional Amount thereof reduced by its pro-rata share of any Prepayment Interest Shortfalls or Relief Act Shortfalls, but not reduced by amounts distributable pursuant to clauses (iv), (v) or (vi) of Section 3.05(a)(I) of the Indenture.

Uncertificated Principal Balance: With respect to any Payment Date and any REMIC I Regular Interest, the initial Uncertificated Principal Balance thereof as reduced on each successive Payment Date first by Liquidation Loss Amounts allocated to the principal thereof by the definition of REMIC I Liquidation Loss Amounts and second by principal deemed distributed in respect thereof on such Payment Date pursuant to Section 5.01(e) of the Trust Agreement. With respect to any Payment Date and REMIC II Regular Interest SB-PO, the Initial Certificate Balance reduced by the allocation to the principal thereof on prior Payment Dates of Liquidation Loss Amounts, to the extent such Liquidation Loss Amounts are allocated to the principal of the Class SB Certificates, and amounts deemed distributed with respect to such REMIC II Regular Interest.

Uncertificated Regular Interests: The REMIC I Regular Interests, REMIC II Regular Interest SB-IO and REMIC II Regular Interest SB-PO.

WG Trust 2003: Walnut Grove Mortgage Loan Trust 2003-A, a Delaware statutory trust.