**<u>Exhibit PX-1521</u>**

FINANCIAL GUARANTY INSURANCE COMPANY,
as Insurer,

GMAC MORTGAGE CORPORATION,
as a Seller and the Servicer,

WALNUT GROVE MORTGAGE LOAN TRUST 2003-A,
as a Seller,

RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC.,
as Depositor,

GMACM HOME LOAN TRUST 2006- HE1,
as Issuing Entity

and

JPMORGAN CHASE BANK, N.A.,
as Indenture Trustee

# INSURANCE AND INDEMNITY AGREEMENT

RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC.

GMACM HOME LOAN TRUST 2006- HE1

GMACM HOME LOAN-BACKED TERM NOTES, SERIES 2006- HE1

Dated as of March 30, 2006

Confidential

TABLE OF CONTENTS
(This Table of Contents is for convenience of reference only and shall not be deemed to be
part of this Agreement.  All capitalized terms used in this Agreement and not otherwise
defined shall have the meanings set forth in Article I of this Agreement.)

Page

ARTICLE I DEFINITIONS ...................................................................................................2
    Section 1.01.  Defined Terms. ........................................................................................2
ARTICLE II REPRESENTATIONS, WARRANTIES AND COVENANTS.............................5
    Section 2.01.  Representations and Warranties of GMACM, the WG Trust, the
        Issuing Entity and the Depositor...................................................................5
    Section 2.02.  Affirmative Covenants of GMACM, the WG Trust, the Issuing
        Entity and the Depositor. ..............................................................................10
    Section 2.03.  Negative Covenants of GMACM, the WG Trust, the Issuing
        Entity and the Depositor. ..............................................................................16
    Section 2.04.  Representations, Warranties and Covenants of the Insurer. .....................17
ARTICLE III THE POLICY; REIMBURSEMENT ...................................................................19
    Section 3.01.  Issuance of the Policy. .............................................................................19
    Section 3.02.  Payment of Fees and Premium. ...............................................................21
    Section 3.03.  Reimbursement Obligation. .....................................................................21
    Section 3.04.  Indemnification. .......................................................................................23
    Section 3.05.  Payment Procedure. .................................................................................25
    Section 3.06.  Joint and Several Liability. ......................................................................26
ARTICLE IV FURTHER AGREEMENTS .................................................................................26
    Section 4.01.  Effective Date; Term of the Insurance Agreement. .................................26
    Section 4.02.  Further Assurances and Corrective Instruments. .....................................26
    Section 4.03.  Obligations Absolute. ..............................................................................26
    Section 4.04.  Assignments; Reinsurance; Third-Party Rights......................................28
    Section 4.05.  Liability of the Insurer. ............................................................................28
    Section 4.06.  Annual Servicing Audit and Certification. ..............................................29
ARTICLE V DEFAULTS AND REMEDIES..............................................................................29
    Section 5.01.  Defaults. ...................................................................................................29
    Section 5.02.  Remedies; No Remedy Exclusive............................................................30
    Section 5.03.  Waivers. ...................................................................................................31
ARTICLE VI MISCELLANEOUS ..............................................................................................31
    Section 6.01.  Amendments, Etc. ....................................................................................31
    Section 6.02.  Notices. ....................................................................................................32
    Section 6.03.  Severability. .............................................................................................33
    Section 6.04.  Governing Law. .......................................................................................33
    Section 6.05.  Consent to Jurisdiction.............................................................................33
    Section 6.06.  Consent of the Insurer. .............................................................................34
    Section 6.07.  Counterparts. ............................................................................................34
    Section 6.08.  Headings. .................................................................................................34
    Section 6.09.  Trial by Jury Waived. ..............................................................................34
    Section 6.10.  Limited Liability. .....................................................................................35
    Section 6.11.  Entire Agreement.....................................................................................35
    Section 6.12.  No Petition. ..............................................................................................35

Confidential

INSURANCE AND INDEMNITY AGREEMENT (as may be amended, modified or supplemented from time to time, this "Insurance Agreement"), dated as of March 30, 2006, by and among FINANCIAL GUARANTY INSURANCE COMPANY, as Insurer, GMAC MORTGAGE CORPORATION, as a Seller and the Servicer, WALNUT GROVE MORTGAGE LOAN TRUST 2003-A ("WG Trust"), a Seller, RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., as Depositor, GMACM HOME LOAN TRUST 2006-HE1, as Issuing Entity, and JPMORGAN CHASE BANK, N.A., as Indenture Trustee.

## WITNESSETH:

WHEREAS, each of GMACM, as a Seller, and the WG Trust, as a Seller, have sold and assigned their entire interest to Residential Asset Mortgage Products, Inc. (the "Depositor"), and the Depositor has accepted from GMACM the sale and assignment of such interest, in the Mortgage Loans pursuant to the Mortgage Loan Purchase Agreement, dated as of March 30, 2006, by and among GMACM, the WG Trust, the Depositor, the Issuing Entity and the Indenture Trustee;

WHEREAS, a Servicing Agreement, dated as of March 30, 2006, by and among GMACM, as Servicer, the Issuing Entity and the Indenture Trustee provides for the administration and servicing of the Mortgage Loans;

WHEREAS, a Trust Agreement, dated as of March 30, 2006, by and between the Depositor and the Owner Trustee (as may be amended, modified or supplemented from time to time as set forth therein, the "Trust Agreement") provides for, among other things the formation of GMACM Home Loan Trust 2006-HE1 (the "Issuing Entity" or the "Trust") and the issuance of GMACM Home Loan-Backed Certificates, Series 2006-HE1 (the "Certificates") representing undivided beneficial ownership interests in the Trust;

WHEREAS, an Indenture, dated as of March 30, 2006, by and between the Trust and the Indenture Trustee (as may be amended, modified or supplemented from time to time as set forth therein, the "Indenture") provides for, among other things, the issuance of GMACM Home Loan-Backed Term Notes, Series 2006-HE1 (the "Notes") representing indebtedness of the Trust;

WHEREAS, the Notes will be secured by all of the Issuing Entity's right, title and interest in the Mortgage Loans and certain other accounts and funds;

WHEREAS, the Insurer has agreed to issue the Policy, pursuant to which it will agree to pay in favor of the Indenture Trustee on behalf of the Issuing Entity and for the benefit of the Holders of the Notes, certain amounts relating to interest and principal on the Notes;

WHEREAS, the Insurer shall be paid a Premium for the Policy as set forth herein; and

WHEREAS, each of GMACM, the WG Trust, the Issuing Entity and the Depositor has undertaken certain obligations in consideration for the Insurer's issuance of its Policy.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

Confidential

## ARTICLE I
## DEFINITIONS

Section 1.01.   Defined Terms.

Unless the context clearly requires otherwise, all capitalized terms used but not defined herein shall have the respective meanings assigned to them in the Indenture (including Appendix A thereto) or the Policy described below.   For purposes of this Insurance Agreement, the following terms shall have the following meanings:

"Certificates" means the GMACM Home Loan-Backed Certificates, Series 2006-HE1 issued pursuant to the Trust Agreement.

"Closing Date" means March 30, 2006.

"Commission" means the Securities and Exchange Commission.

"Confidentiality Agreement" means the confidentiality agreement dated June 28, 2001 between GMACM and the Insurer, as such agreement may be amended or superceded from time to time.

"Custodial Agreement" means that certain Custodial Agreement, dated as of March 30, 2006, among the Servicer, the Indenture Trustee and GMAC Bank, as custodian.

"Default" means any Event of Default or any event or circumstance that, with the giving of notice or the lapse of time or both, would result, in an Event of Default.

"Depositor" means Residential Asset Mortgage Products, Inc.

"Documents" has the meaning given such term in Section 2.01(j) herein.

"Event of Default" means any event of default specified in Section 5.01 of this Insurance Agreement.

"Final Offering Document" means the Prospectus, dated February 16, 2006, as supplemented by the final prospectus supplement (the "Prospectus Supplement"), dated March 29, 2006, in respect of the Notes.

"Financial Statements" means, with respect to GMACM, its (i) consolidated statements of financial condition as of December 31, 2004 and December 31, 2003 and the statements of operations, stockholders' equity and cash flows for each of the years in the three-year period ended December 31, 2004 and the notes thereto and (ii) unaudited, nine month consolidated statements of financial condition as of September 30, 2005 and September 30, 2004.

"GMACM" means GMAC Mortgage Corporation, as Seller under the Mortgage Loan Purchase Agreement and as Servicer under the Servicing Agreement, and any successor thereto under either such agreement.

Confidential

"Holder" means the holder of any Note.

"Indenture" has the meaning given such term in the recitals.

"Indenture Trustee" means JPMorgan Chase Bank, N.A., as indenture trustee under the Indenture, and any successor thereto under the Indenture.

"Insurance Agreement" has the meaning given such term in the preamble hereof.

"Insurer" means Financial Guaranty Insurance Company, or any successor thereto, as issuer of the Policy.

"Insurer Financial Statements" has the meaning given such term in Section 2.04(j) hereof.

"Insurer Information" means the information in the Preliminary Offering Document and the Final Offering Document regarding the Insurer and the Policy, which consists solely of the information set forth under the captions "The Credit Enhancer" and "Description of the Policy" in each such Offering Document and the financial statements of the Insurer as of December 31, 2005 and December 31, 2004 and for each of the years in the three-year period ended December 31, 2005 as provided to the Depositor for inclusion in the Offering Documents.

"Investment Company Act" means the Investment Company Act of 1940, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Issuing Entity" has the meaning given such term in the recitals.

"Late Payment Rate" means the lesser of (a) the greater of (i) the per annum rate of interest publicly announced from time to time by Citibank, N.A. as its prime or base lending rate (any change in such rate of interest to be effective on the date such change is announced by Citibank, N.A.), and (ii) the then applicable highest rate of interest on any of the Notes and (b) the maximum rate permissible under applicable usury or similar laws limiting interest rates. The Late Payment Rate shall be computed on the basis of the actual number of days elapsed over a year of 360 days.

"Material Adverse Change" means, in respect of any Person, a material adverse change in the ability of such Person to perform its obligations under any of the Operative Documents, including any material adverse change in the business, financial condition, results of operations or properties of such Person on a consolidated basis with its subsidiaries that might have such effect. References herein to a Material Adverse Change that do not refer to a particular Person mean a Material Adverse Change with respect to either of GMACM or the Depositor.

"Moody's" means Moody's Investors Service, Inc., and any successor thereto.

"Notes" has the meaning given such term in the recitals.

"Offering Documents" means any of the Preliminary Offering Document, the Final Offering Document (each as further supplemented by any subsequent amendment or supplement

Confidential

thereto), and any other offering document in respect of the Notes that makes reference to the Policy.

"Operative Documents" means this Insurance Agreement, the Securities, the Servicing Agreement, the Mortgage Loan Purchase Agreement, any Subsequent Transfer Agreement, the Custodial Agreement, the Trust Agreement and the Indenture.

"Owner Trustee" means Wilmington Trust Company, as owner trustee under the Trust Agreement, and any successor thereto under the Trust Agreement.

"Person" means an individual, joint stock company, trust, unincorporated association, joint venture, corporation, business, real estate investment trust, or owner trust, partnership, limited liability company or other organization or entity (whether governmental or private).

"Policy" means the Financial Guaranty Insurance Policy, No. 06030037, together with all endorsements thereto, issued by the Insurer in favor of the Indenture Trustee, for the benefit of the Holders of the Notes.

"Preliminary Offering Document" means the Prospectus, dated February 16, 2006, as supplemented by the preliminary prospectus supplement (the "Preliminary Prospectus Supplement"), dated March 27, 2006, in respect of the Notes.

"Premium" means the premium payable in accordance with the Policy and this Insurance Agreement.

"Premium Percentage" means 0.12% per annum.

"Registration Statement" means the registration statement on Form S-3 No. 333-125485 including the prospectus and prospectus supplement, relating to the Notes, at the time it became effective.

"Securities" means the Notes and the Certificates.

"Securities Act" means the Securities Act of 1933, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Securities Exchange Act" means the Securities Exchange Act of 1934, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"S&P" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., and any successor thereto.

"Shortfall Event" means on any Payment Date after the first Payment Date on which the related Overcollateralization Amount is equal to or greater than the related Required Overcollateralization Amount, the failure of the Overcollateralization Amount to be equal to or greater than 85% of the related Required Overcollateralization Amount.

Confidential

"Transaction" means the transactions contemplated by the Operative Documents, including the transactions described in the Offering Documents.

"Trust" means the GMACM Home Loan Trust 2006-HE1 created pursuant to the Trust Agreement.

"Trust Agreement" means the Amended and Restated Trust Agreement, dated as of March 30, 2006, between the Depositor and Wilmington Trust Company, as Owner Trustee.

"Trust Estate" has the meaning given such term in the Indenture.

"Trust Indenture Act" means the Trust Indenture Act of 1939, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Underwriters" means J.P. Morgan Securities Inc., Greenwich Capital Markets, Inc. and Residential Funding Securities Corporation.

"Underwriting Agreement" means the Underwriting Agreement, dated March 27, 2006, among the Underwriters, GMACM and the Depositor with respect to the offer and sale of the Notes, as such may be amended, modified or supplemented from time to time.

"WG Trust" means Walnut Grove Mortgage Loan Trust 2003-A, as a Seller under the Mortgage Loan Purchase Agreement, and any successor thereto under such agreement.

Section 1.02.   Other Definitional Provisions.

The words "hereof," "herein" and "hereunder" and words of similar import when used in this Insurance Agreement shall refer to this Insurance Agreement as a whole and not to any particular provision of this Insurance Agreement, and Section, subsection, Schedule and Exhibit references are to this Insurance Agreement unless otherwise specified. The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation."

## ARTICLE II
## REPRESENTATIONS, WARRANTIES AND COVENANTS

Section 2.01.   Representations and Warranties of GMACM, the WG Trust, the Issuing Entity and the Depositor.

Each of GMACM, the WG Trust, the Issuing Entity and the Depositor represents and warrants as of the Closing Date as follows:

(a)   *Due Organization and Qualification.*  Each of GMACM and the Depositor is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation and each of the WG Trust and the Issuing Entity is a statutory trust duly organized, validly existing and in good standing under the laws of Delaware. Each of GMACM, the WG Trust, the Issuing Entity and the Depositor is,

Confidential

duly qualified to do business, is in good standing and has obtained all necessary licenses, permits, charters, registrations and approvals (together, "approvals") necessary for the conduct of its business as currently conducted and as described in the Offering Document and the performance of its obligations under the Operative Documents to which it is a party in each jurisdiction in which the failure to be so qualified or to obtain such approvals would render any Operative Document to which it is a party unenforceable in any respect or would have a material adverse effect upon the Transaction.

(b)     *Power and Authority.* Each of GMACM, the WG Trust, the Issuing Entity and the Depositor has all necessary power and authority to conduct its business as currently conducted and as described in the Offering Document, to execute, deliver and perform its obligations under the Operative Documents to which it is a party and to consummate the Transaction.

(c)     *Due Authorization.* The execution, delivery and performance of the Operative Documents to which it is a party by each of GMACM, the WG Trust, the Issuing Entity and the Depositor has been duly authorized by all necessary action and does not require any additional approvals or consents, or other action by or any notice to or filing with any Person, including any governmental entity or any of the stockholders or beneficial owners, as applicable, of GMACM, the WG Trust, the Issuing Entity or the Depositor, which have not previously been obtained or given by GMACM, the WG Trust, the Issuing Entity or the Depositor.

(d)     *No contravention.* The execution and delivery by each of GMACM, the WG Trust, the Issuing Entity or the Depositor of the Operative Documents to which it is a party, the consummation of the Transaction and the satisfaction of the terms and conditions of the Operative Documents to which it is a party do not and will not:

(i)     conflict with or result in any breach or violation of any provision of the applicable organizational documents of GMACM, the WG Trust, the Issuing Entity or the Depositor or any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award currently in effect having applicability to GMACM, the WG Trust, the Issuing Entity or the Depositor or any of their respective material properties, including regulations issued by any administrative agency or other governmental authority having supervisory powers over GMACM, the WG Trust, the Issuing Entity or the Depositor, which conflict, breach or violation reasonably could be expected to result in a Material Adverse Change;

(ii)     constitute a default by GMACM, the WG Trust, the Issuing Entity or the Depositor under, result in the acceleration of any obligation under, or breach any provision of any loan agreement, mortgage, indenture or other agreement or instrument to which GMACM, the WG Trust, the Issuing Entity or the Depositor is a party or by which any of their respective properties is or may be bound or affected, which default, acceleration or breach reasonably could result in a Material Adverse Change; or

Confidential

(iii)    result in or require the creation of any lien upon or in respect of any assets of GMACM, the WG Trust, the Issuing Entity or the Depositor, which lien reasonably could be expected to result in a Material Adverse Change, except as otherwise contemplated by the Operative Documents.

(e)    *Legal Proceedings*. There is no action, proceeding or investigation by or before any court, governmental or administrative agency or arbitrator against or affecting GMACM, the WG Trust, the Issuing Entity or the Depositor or any of their respective subsidiaries, any properties or rights of GMACM, the WG Trust, the Issuing Entity or the Depositor or any of their respective subsidiaries or any of the Mortgage Loans pending or, to GMACM's, the WG Trust's, the Issuing Entity's or the Depositor's knowledge after reasonable inquiry, threatened, that could, if decided adversely to GMACM, the WG Trust, the Issuing Entity or the Depositor or any such subsidiary could result in a Material Adverse Change with respect to GMACM, the WG Trust, the Issuing Entity or the Depositor.

(f)    *Valid and Binding Obligations*. The Operative Documents (other than the Securities) to which it is a party, when executed and delivered by GMACM, the WG Trust, the Issuing Entity or the Depositor, will constitute the legal, valid and binding obligations of each of GMACM, the WG Trust, the Issuing Entity and the Depositor, enforceable in accordance with their respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and general equitable principles and public policy considerations as to rights of indemnification for violations of federal securities laws. The Notes, when executed, authenticated and delivered in accordance with the Indenture, will be validly issued and outstanding and entitled to the benefits of the Indenture, and the Certificates when executed, authenticated and delivered in accordance with the Trust Agreement, will be validly issued and outstanding and entitled to the benefits of the Trust Agreement.

(g)    *Financial Statements*. The Financial Statements of GMACM, copies of which have been furnished to the Insurer, (i) are, as of the dates and for the periods referred to therein, complete and correct in all material respects, (ii) present fairly the financial condition and results of operations of GMACM as of the dates and for the periods indicated and (iii) have been prepared in accordance with generally accepted accounting principles consistently applied, except as noted therein (subject as to interim statements to normal year-end adjustments). Since the date of the most recent Financial Statements, there has been no Material Adverse Change in respect of GMACM, the WG Trust, the Issuing Entity or the Depositor. Except as disclosed in the Financial Statements, GMACM is not subject to any contingent liabilities or commitments that, individually or in the aggregate, have a material possibility of causing a Material Adverse Change in respect of GMACM, the WG Trust, the Issuing Entity or the Depositor.

(h)    *Compliance with Law, Etc*. No practice, procedure or policy employed, or proposed to be employed, by GMACM, the WG Trust, the Issuing Entity or the Depositor in the conduct of its business violates any law, regulation, judgment, agreement, order or decree applicable to GMACM, the WG Trust, the Issuing Entity or

Confidential

the Depositor that, if enforced, could result in a Material Adverse Change with respect to GMACM, the WG Trust, the Issuing Entity or the Depositor.

(i)    *Taxes.* Each of GMACM, the WG Trust, the Issuing Entity and the Depositor has filed prior to the date hereof all federal and state tax returns that are required to be filed and has paid all taxes, including any assessments received by it that are not being contested in good faith, to the extent that such taxes have become due. Any taxes, fees and other governmental charges payable by GMACM, the WG Trust, the Issuing Entity or the Depositor in connection with the Transaction, the execution and delivery of the Operative Documents to which it is a party and the issuance of the Securities have been paid or shall have been paid at or prior to the Closing Date if such taxes, fees or other governmental changes were due on or prior to the Closing Date.

(j)    *Accuracy of Information.* Neither the Operative Documents to which it is a party nor other information relating to the Mortgage Loans, the operations of GMACM, the WG Trust, the Issuing Entity or the Depositor or the financial condition of GMACM, the WG Trust, the Issuing Entity or the Depositor (collectively, the "Documents"), as amended, supplemented or superseded, furnished to the Insurer in writing or in electronic form by GMACM, the WG Trust, the Issuing Entity or the Depositor, including the Offering Documents (other than the Insurer Information) contains any statement of a material fact which was untrue or misleading in any material respect when made. Each of GMACM, the WG Trust, the Issuing Entity and the Depositor has no knowledge of any circumstances that could reasonably be expected to cause a Material Adverse Change with respect to GMACM, the WG Trust, the Issuing Entity or the Depositor. Since the furnishing of the Documents, there has been no change nor any development or event involving a prospective change known to GMACM, the WG Trust, the Issuing Entity or the Depositor that would render any of the Documents untrue or misleading in any material respect.

(k)    *Compliance with Securities Laws.* The offering and sale of the Securities complies in all material respects with all requirements of law, including the registration requirements of the Securities Act and any other applicable securities laws. The Offering Documents do not contain any untrue statement of a material fact and do not omit to state a material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading as of the Closing Date and as of any amendment or supplement to the Offering Document; *provided, however,* that no representation is made with respect to the Insurer Information. The offering of the Notes has not been and will not be in violation of the Securities Act or any other federal or state securities laws. Based upon advice of legal counsel, the Trust Agreement is not required to be qualified under the Trust Indenture Act and each of the Issuing Entity and the Trust Estate is not required to be registered as an "investment company" under the Investment Company Act. GMACM will satisfy in all material respects any of the information reporting requirements of the Securities Exchange Act arising out of the Transaction to which it or the Issuing Entity or the Depositor are subject.

(l)    *Operative Documents.* Each of the representations and warranties of GMACM, the WG Trust, the Issuing Entity and the Depositor contained in the applicable

Confidential

Operative Documents and the Underwriting Agreement is true and correct in all material respects as of the date reflected therein and each of GMACM, the WG Trust, the Issuing Entity and the Depositor hereby makes each such representation and warranty to, and for the benefit of, the Insurer as if the same were set forth in full herein; *provided, however,* that the remedy for any breach of a representation and warranty of GMACM or the WG Trust in Section 3.1 of the Mortgage Loan Purchase Agreement and the remedy with respect to any defective Mortgage Loans under Section 3.1 of the Mortgage Loan Purchase Agreement shall be limited to the remedies specified in the Mortgage Loan Purchase Agreement.

(m)    *Solvency; Fraudulent Conveyance.* Each of GMACM, the WG Trust, the Issuing Entity and the Depositor is solvent and will not be rendered insolvent by the Transaction and, after giving effect to the Transaction, GMACM, the WG Trust, the Issuing Entity and the Depositor shall not be left with an unreasonably small amount of capital with which to engage in the ordinary course of its business, and each of GMACM, the WG Trust, the Issuing Entity and the Depositor does not intend to incur, or believe that it has incurred, debts beyond its ability to pay as they mature. Each of GMACM, the WG Trust, the Issuing Entity and the Depositor does not contemplate the commencement of insolvency, liquidation or consolidation proceedings or the appointment of a receiver, liquidator, conservator, trustee or similar official in respect of GMACM, the WG Trust, the Issuing Entity and the Depositor or any of their respective assets. The amount of consideration being received by GMACM and the WG Trust, as applicable, upon the sale of the Mortgage Loans to the Depositor constitutes reasonably equivalent value and fair consideration. The amount of consideration being received by the Depositor upon the transfer of the Mortgage Loans to the Trust constitutes reasonably equivalent value and fair consideration for ownership interest evidenced by the Mortgage Loans. The amount of consideration being received by the Issuing Entity upon the sale of the Securities constitutes reasonably equivalent value and fair consideration for the ownership and/or debt interest evidenced by the Securities. GMACM and the WG Trust, as applicable, is not transferring the Mortgage Loans to the Depositor nor is the Issuing Entity selling the Securities, as provided in the Operative Documents, with any intent to hinder, delay or defraud any of GMACM's, the WG Trust's, the Issuing Entity's or the Depositor's creditors.

(n)    *Jurisdiction of Organization.* GMACM is a Pennsylvania corporation. The Depositor is a Delaware corporation. The WG Trust and the Issuing Entity are organized under Delaware law.

(o)    *Qualified Special Purpose Entity.* The Issuing Entity is a qualified special purpose entity as the term is defined in Statement of Financial Accounting Standards No. 140 ("FAS 140") issued by the Financial Accounting Standards Board ("FASB").

Confidential

Section 2.02.    Affirmative Covenants of GMACM, the WG Trust, the Issuing Entity and the Depositor.

Each of GMACM, the WG Trust, the Issuing Entity and the Depositor hereby agrees that during the term of this Insurance Agreement, it will comply with the following covenants, unless the Insurer shall otherwise expressly consent in writing:

(a)    *Compliance With Agreements and Applicable Laws.*  Each of GMACM, the WG Trust, the Issuing Entity, and the Depositor shall comply in all material respects with the terms and conditions of and perform its obligations under the Operative Documents to which it is a party in all cases in which failure to so comply or perform would result in a default thereunder and shall comply with all requirements of any law, rule or regulation applicable to it in all circumstances where non-compliance reasonably could be expected to result in a Material Adverse Change.  Each of GMACM, the WG Trust, the Issuing Entity and the Depositor will not at any time in the future deny that the Operative Documents to which it is a party constitute the legal, valid and binding obligations of GMACM, the WG Trust, the Issuing Entity and the Depositor, as applicable.

(b)    *Corporate Existence.*  Each of GMACM, the WG Trust, the Issuing Entity and the Depositor and their respective successors and permitted assigns shall maintain its corporate or trust existence, as applicable, and shall at all times continue to be duly organized under the laws of their formation and duly qualified and duly authorized (as described in subsections 2.01(a), (b) and (c) hereof) and shall conduct its business in accordance with the terms of its applicable organizational documents.

(c)    *Financial Statements; Accountants' Reports; Other Information.*  Each of GMACM, the WG Trust, the Issuing Entity and the Depositor shall keep or cause to be kept in reasonable detail books and records of account of its assets and business relating to the Transaction, and shall, as applicable, clearly reflect therein the sale of the Mortgage Loans to the Depositor, the transfer of the Mortgage Loans by the Depositor to the Trust and the sale of the Certificates, respectively, as a sale of the Mortgage Loans by GMACM and the WG Trust, as applicable, to the Depositor, a sale of the Mortgage Loans by the Depositor to the Trust and a sale of the equity interest in the Trust to the Holders of the Certificates.  GMACM shall furnish or cause to be furnished to the Insurer:

(i)    *Annual Financial Statements.*  As soon as available, and in any event within 120 days after the close of each fiscal year of GMACM, the audited consolidated statements of financial condition of GMACM and its subsidiaries as of the end of such fiscal year and the related audited consolidated statements of operations, stockholders' equity and cash flows for such fiscal year, all in reasonable detail and stating in comparative form the respective figures for the corresponding date and period in the preceding fiscal year, prepared in accordance with generally accepted accounting principles, consistently applied, and accompanied by the audit opinion of GMACM's independent accountants (which

Confidential

shall be a nationally recognized independent public accounting firm or otherwise acceptable to the Insurer) and by the certificate specified in Section 2.02(d).

(ii)    *Quarterly Financial Statements.*  Upon the reasonable request of the Insurer, the unaudited consolidated statement of financial condition of GMACM and its subsidiaries as of the end of the first three quarters of each fiscal year of GMACM and the related unaudited consolidated statements of operations, stockholders' equity and cash flows for the portion of the fiscal year then ended, all in reasonable detail and stating in comparative form the respective figures for the corresponding date and period in the preceding fiscal year, prepared in accordance with generally accepted accounting principles consistently applied (subject to normal year-end adjustments); each delivery of quarterly financial statements shall be accompanied by a certificate of one (or more) corporate officers stating that the quarterly financial statements are correct in all material respects and present fairly the financial condition and results of operations of GMACM and its subsidiaries as of the dates and for the periods indicated, in accordance with generally accepted accounting principles consistently applied (subject to normal year-end adjustments).

(iii)    *Mortgage Loan Data.*  On or before the Closing Date, a magnetic tape containing information setting forth, as to each Mortgage Loan, the information required under the definition of "Mortgage Loan Schedule" in Appendix A to the Indenture.  At its option, GMACM may make updated Mortgage Loan data available to the Insurer on GMACM's or the Depositor's internet website, on a monthly basis.

(iv)    *Certain Information.*  Upon the reasonable request of the Insurer, copies of any requested proxy statements, financial statements, reports and registration statements that GMACM, the WG Trust, the Issuing Entity or the Depositor files with, or delivers to, the Commission or any national securities exchange.

(v)    *Other Information.*  (A) Promptly upon receipt thereof, copies of all schedules, financial statements or other similar reports delivered to or by GMACM, the WG Trust, the Issuing Entity, the Depositor, the Owner Trustee or the Indenture Trustee pursuant to the terms of any of the Operative Documents, including all reports provided to either the Indenture Trustee or any Securityholder pursuant to the Servicing Agreement, (B) promptly upon request, such other data as the Insurer may reasonably request and (C) all information required to be furnished to the Owner Trustee, the Indenture Trustee, the Noteholders or the Certificateholders simultaneously with the furnishing thereof to the Owner Trustee, the Indenture Trustee, the Noteholders or the Certificateholders, as the case may be.

All financial statements specified in clauses (i) and (ii) of this subsection (c) shall be furnished in consolidated form for GMACM and all its subsidiaries in the event that GMACM shall consolidate its financial statements with its

Confidential

subsidiaries.  To the extent available, the information supplied pursuant to this Section 2.02(c) will be in Excel or Word format or another form of an electronic data file accessible by the Insurer by means of standard application software.

(d)     *Compliance Certificate*.  Each of GMACM (in its capacity as Servicer), the WG Trust, the Issuing Entity and the Depositor shall deliver to the Insurer, on or before July 1 of each year beginning with 2006, certificates of one (or more) of its officers stating that:

(i)     a review of the performance of GMACM, the WG Trust, the Issuing Entity or the Depositor, as applicable, under the Operative Documents to which it is a party during the prior year has been made under such officer's supervision;

(ii)     to the best of such officer's knowledge following reasonable inquiry, no Default or Event of Default has occurred, or if a Default or Event of Default has occurred, specifying the nature thereof and, if GMACM, the WG Trust, the Issuing Entity or the Depositor has a right to cure pursuant to Section 5.01, stating in reasonable detail (including, if applicable, any supporting calculations) the steps, if any, being taken by GMACM, the WG Trust, the Issuing Entity or the Depositor to cure such Default or Event of Default or to otherwise comply with the terms of the agreement to which such Default or Event of Default relates; and

(iii)     GMACM, as Servicer, has in full force and effect a fidelity bond (or direct surety bond) and an errors and omissions policy in accordance with the terms and requirements of Section 3.13 of the Servicing Agreement.

So long as GMACM shall continue to act as Servicer, the annual Officer's Certificate prepared by GMACM as Servicer pursuant to Section 3.10 of the Servicing Agreement shall be deemed to satisfy GMACM's obligations as imposed by clauses (i) and (ii) of this Section 2.02(d).  The certificate required by this Section 2.02(d) may be delivered via electronic means if it constitutes an electronic record authenticated as the executed document of GMACM in accordance with applicable electronic signature laws.

(e)     *Access to Records; Discussions with Officers and Accountants*.  On an annual basis, or upon the occurrence of a Material Adverse Change, GMACM, the WG Trust, the Issuing Entity and the Depositor shall, upon the reasonable request of the Insurer, permit the Insurer or its authorized agents:

(i)     to inspect the books and records of GMACM, the WG Trust, the Issuing Entity and the Depositor as they may relate to the Securities, the obligations of GMACM, the WG Trust, the Issuing Entity and the Depositor under the Operative Documents to which it is a party and the Transaction (including, without limitation, but only if, after the Closing Date, there has been a change to FAS 140, FASB Financial Interpretation No. 46 ("FIN 46") or the interpretive guidance issued by FASB or, to any interpretation thereof by the

Confidential

Insurer's certified public accountants relating thereto, in any case that is applicable to the Insurer and the Truansaction, access to information reasonably required for purposes of complying with FASB Financial Interpretation No. 46; provided that the Insurer will maintain confidentiality with respect to such information in accordance with its internal policies and in accordance with the confidentiality provisions set forth in the Confidentiality Agreement);

(ii)    to discuss the affairs, finances and accounts of GMACM with the Chief Financial Officer of GMACM; and

(iii)    with GMACM's consent, which consent shall not be unreasonably withheld or delayed, to discuss the affairs, finances and accounts of GMACM with GMACM's independent accountants; *provided, however,* that an officer of GMACM shall have the right to be present during such discussions.

In addition, when a Shortfall Event shall have occurred, GMACM, the WG Trust, the Issuing Entity and the Depositor shall, upon the reasonable request of the Insurer, permit the Insurer or its authorized agents to conduct an inspection of the type described in clause (i) above.

Such inspections and discussions shall be conducted during normal business hours and shall not unreasonably disrupt the business of GMACM, the WG Trust, the Issuing Entity or the Depositor. The books and records of GMACM, the WG Trust and the Issuing Entity shall be maintained at the address of GMACM designated herein for receipt of notices, unless GMACM shall otherwise advise the parties hereto in writing. The books and records of the Depositor shall be maintained at the Depositor's principal place of business, unless the Depositor shall otherwise advise the parties hereto in writing.

(f)    *Notice of Material Events.* GMACM, the WG Trust, the Issuing Entity and the Depositor shall be obligated (which obligation shall be satisfied as to each if performed by GMACM, the WG Trust, the Issuing Entity or the Depositor) promptly to inform the Insurer in writing of the occurrence of any of the following:

(i)    the submission of any claim or the initiation or threat of any legal process, litigation or administrative or judicial investigation, or rule making or disciplinary proceeding by or against GMACM, the WG Trust, the Issuing Entity or the Depositor that (A) would be required to be disclosed to the Commission or GMACM's shareholders or (B) could result in a Material Adverse Change with respect to GMACM, the WG Trust, the Issuing Entity or the Depositor, or to the best of the knowledge of GMACM, the WG Trust, the Issuing Entity or the Depositor, the promulgation of any proceeding or any proposed or final rule which would likely result in a Material Adverse Change with respect to GMACM, the WG Trust, the Issuing Entity and the Depositor or any of their respective subsidiaries;

(ii)    any change in the location of jurisdiction of organization of GMACM, the WG Trust, the Issuing Entity or the Depositor;

Confidential

(iii)    the occurrence of any Default or Event of Default or any Material Adverse Change in respect of GMACM, the WG Trust, the Issuing Entity or the Depositor;

(iv)    the commencement of any proceedings by or against GMACM, the WG Trust, the Issuing Entity or the Depositor under any applicable bankruptcy, reorganization, liquidation, rehabilitation, insolvency or other similar law now or hereafter in effect or of any proceeding in which a receiver, liquidator, conservator, trustee or similar official shall have been, or may be, appointed or requested for GMACM, the WG Trust, the Issuing Entity or the Depositor or any of their respective assets; or

(v)    the receipt of notice that (A) GMACM, the WG Trust, the Issuing Entity or the Depositor is being placed under regulatory supervision, (B) any license, permit, charter, registration or approval necessary for the conduct of GMACM's, the WG Trust's, the Issuing Entity's or the Depositor's business is to be, or may be, suspended or revoked or (C) GMACM, the WG Trust, the Issuing Entity or the Depositor is to cease and desist any practice, procedure or policy employed by GMACM, the WG Trust, the Issuing Entity or the Depositor in the conduct of their respective business, and such suspension, revocation or cessation may reasonably be expected to result in a Material Adverse Change with respect to GMACM, the WG Trust, the Issuing Entity or the Depositor.

(g)    *Financing Statements and Further Assurances.*  GMACM shall cause to be filed all necessary financing statements or other instruments, and any amendments or continuation statements relating thereto, necessary to be kept and filed in such manner and in such places as may be required by law to preserve and protect fully the interest of the Indenture Trustee in the Trust Estate.  Each of GMACM, the WG Trust, the Issuing Entity and the Depositor shall, upon the reasonable request of the Insurer, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, within ten days of such request, such amendments hereto and such further instruments and take such further action as may be reasonably necessary to effectuate the intention, performance and provisions of the Operative Documents to which it is a party. In addition, each of GMACM, the WG Trust, the Issuing Entity and the Depositor agrees to cooperate with S&P and Moody's in connection with any review of the Transaction that may be undertaken by S&P and Moody's after the date hereof.

(h)    *Maintenance of Licenses.*  Each of GMACM, the WG Trust, the Issuing Entity and the Depositor, and any successors thereof, shall maintain all licenses, permits, charters and registrations the loss or suspension of which could result in a Material Adverse Change.

(i)    *Retirement of Notes.*  GMACM, the Issuing Entity and the Depositor shall instruct the Indenture Trustee, upon a retirement or other payment of all of the Notes, to surrender the Policy to the Insurer for cancellation.

(j)    [RESERVED.]

Confidential

(k)    *Third-Party Beneficiary.* Each of GMACM, the WG Trust, the Issuing Entity and the Depositor agrees that the Insurer shall have all rights provided to the Insurer in the Operative Documents and that the Insurer shall constitute a third-party beneficiary with respect to such rights in respect of the Operative Documents and hereby incorporates and restates its representations, warranties and covenants as set forth therein for the benefit of the Insurer; *provided, however,* that the remedy for any breach of a representation and warranty of GMACM or the WG Trust in Section 3.1 of the Mortgage Loan Purchase Agreement and the remedy with respect to any defective Mortgage Loans under Section 3.1 of the Mortgage Loan Purchase Agreement shall be limited to the remedies specified in the Mortgage Loan Purchase Agreement.

(l)    *Servicing of Mortgage Loans.* All Mortgage Loans will be serviced in all material respects in compliance with the Servicing Agreement and the Indenture, and GMACM, as Servicer, agrees that the Servicing Agreement shall provide that GMACM's obligations under this Insurance Agreement shall be binding on any successor Servicers thereunder but only to the extent of GMACM's obligations as Servicer under the Servicing Agreement and from the effective time of any such succession.

(m)    *Closing Documents.* GMACM, the Issuing Entity and the Depositor shall provide or cause to be provided to the Insurer an executed original copy of each document executed in connection with the Transaction within 60 days after the Closing Date.

(n)    *Custodial Account.* Monies on deposit in the Custodial Account shall be invested in Permitted Investments maturing as provided in the Servicing Agreement, and monies on deposit in the Note Payment Account shall be invested in Permitted Investments maturing as provided in the Indenture.

(o)    *Corporate Formalities.* Each of GMACM, the WG Trust, the Issuing Entity and the Depositor shall observe all the formalities necessary to preserve its corporate or trust existence, as applicable, under the laws of the State of its formation, including, as applicable, (i) the obligation to hold annual meetings of its beneficial owners, shareholders or its board of directors and (ii) the obligation to prepare and file annual income, franchise and other tax returns.

(p)    *Due Diligence.* The Insurer shall have the right, so long as any of the Notes remains outstanding, to conduct an ongoing review of GMACM's practices as Servicer through reviews of the Mortgage Loans, reappraisals of Mortgaged Properties and reviews of servicing practices. Such ongoing due diligence shall be conducted at the expense of the Insurer and in a reasonable manner convenient to both GMACM and the Insurer.

(q)    *Disclosure Document.* Upon the written direction of the Insurer prior to the delivery of such Offering Document, each Offering Document delivered with respect to the Notes shall clearly disclose that the Policy is not covered by the property/casualty insurance security fund specified in Article 76 of the New York Insurance Law

Confidential

(r)    *Notice to Insurer.* If the Depositor does not receive any Insurer Financial Statements pursuant to Section 2.04(j) herein at least five days prior to the date that such Insurer Financial Statements are to be filed with the Commission, the Depositor shall provide or shall cause the party responsible for filing the Depositor's Form 10-Ds and 10-Ks to provide written notice to the Insurer via electronic mail at RegAB@fgic.com, stating that it has not received the Insurer Financial Statements and requesting that such Insurer Financial Statements be emailed in accordance with Section 2.04(j) herein. Additionally, in the event that any Insurer Financial Information is to be included in a Form 10-D or Form 10-K filing of the Issuing Entity which occurs prior to the termination of the offering of the Notes, the Depositor shall provide written notice to the Insurer via electronic mail at least ten (10) days prior to such filing, stating that an accountant's consent will be required for such filing. In such event the Depositor shall be responsible for paying the Insurer's costs for obtaining such consent. All such emails shall identify the deal name and the policy number.

GMACM shall use its best efforts to cause the Issuing Entity, the WG Trust and the Depositor to observe the provisions of this Section 2.02.

Section 2.03.    Negative Covenants of GMACM, the WG Trust, the Issuing Entity and the Depositor.

Each of GMACM, the WG Trust, the Issuing Entity and the Depositor hereby agrees that during the term of this Insurance Agreement it will comply with the following covenants, unless the Insurer shall otherwise expressly consent in writing:

(a)    *Impairment of Rights.* Neither GMACM, the WG Trust, the Issuing Entity or the Depositor shall take any action, or fail to take any action, if such action or failure to take action may result in a Material Adverse Change with respect to GMACM, the WG Trust, the Issuing Entity or the Depositor, nor interfere in any material respect with the enforcement of any rights of the Insurer under or with respect to any of the Operative Documents or the Policy. GMACM, the WG Trust, the Issuing Entity and the Depositor shall give the Insurer written notice of any such action or, to the best of the knowledge of any of GMACM, the WG Trust, the Issuing Entity or the Depositor, any such failure to act on the earlier of: (i) the date upon which any publicly available filing or release is made with respect to such action or failure to act and (ii) promptly prior to the date of consummation of such action or failure to act. Each of GMACM, the WG Trust, the Issuing Entity and the Depositor shall furnish to the Insurer all information reasonably requested by the Insurer that is necessary to determine compliance with this paragraph.

(b)    *Waiver, Amendments, Etc.* Neither GMACM, the WG Trust, the Issuing Entity or the Depositor shall modify, waive or amend, or consent to any modification, waiver or amendment of, any of the terms, provisions or conditions of the Operative Documents to which it is a party (other than any amendment to the Offering Document required by law) without the prior written consent of the Insurer thereto, which consent shall not be unreasonably withheld, conditioned or delayed.

Confidential

(c)     *Limitation on Mergers, Etc.*  None of GMACM, the WG Trust, the Issuing Entity and the Depositor shall consolidate with or merge with or into any Person or transfer all or substantially all of its assets to any Person or liquidate or dissolve except as provided in the Operative Documents or as permitted hereby.  GMACM, the WG Trust, the Issuing Entity and the Depositor shall furnish to the Insurer all information requested by the Insurer that is reasonably necessary to determine compliance with this paragraph.

(d)     *Successors.*  Neither GMACM, the WG Trust, the Issuing Entity or the Depositor shall terminate or designate, or consent to the termination or designation of, any successor Servicer, Paying Agent, Custodian, Indenture Trustee or Owner Trustee without the prior written approval of the Insurer, which approval shall not be unreasonably withheld, conditioned or delayed.

GMACM shall use its best efforts to cause the Issuing Entity, the WG Trust and the Depositor to observe the provisions of this Section 2.03.

Section 2.04.    Representations, Warranties and Covenants of the Insurer.

The Insurer represents, warrants and covenants to the Indenture Trustee, GMACM, the WG Trust, the Issuing Entity and the Depositor as follows:

(a)     *Organization and Licensing.*  The Insurer is duly incorporated and validly existing as a New York stock insurance company in good standing and duly qualified to conduct an insurance business in the State of New York and in any other jurisdiction where qualification may be necessary to accomplish the Transaction.

(b)     *Corporate Power.*  The Insurer has the corporate power and authority to issue the Policy and execute and deliver this Insurance Agreement and to perform all of its obligations hereunder and thereunder.

(c)     *Authorization; Approvals.*  Proceedings legally required for the issuance and execution of the Policy and the execution, delivery and performance of this Insurance Agreement have been taken and licenses, orders, consents or other authorizations or approvals of any governmental boards or bodies legally required for the enforceability of the Policy and the conduct by the Insurer of the business and activities contemplated by the Transaction have been obtained; any proceedings not taken and any licenses, authorizations or approvals not obtained are not material to the enforceability of the Policy.

(d)     *Enforceability.*  The Policy, when issued, and this Insurance Agreement will each constitute a legal, valid and binding obligation of the Insurer, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium, receivership and other similar laws affecting creditors' rights generally and to general principles of equity and subject to principles of public policy limiting the right to enforce the indemnification provisions contained therein and herein, insofar as such provisions relate to indemnification for liabilities arising under federal securities laws.

Confidential

(e)    *Financial Information.* The consolidated balance sheets of the Insurer and its subsidiaries as of December 31, 2005 and December 31, 2004, the related consolidated statements of income, stockholder's equity and cashflows for the years ended December 31, 2005 and 2004 and for the periods from December 18, 2003 through December 31, 2003, and from January 1, 2003 through December 17, 2003, and the accompanying footnotes, together with an opinion thereon of Ernst & Young LLP, independent registered public accounting firm, a copy of which has been delivered to the Depositor to be incorporated by reference into the registration statement relating to the Offering Document, present fairly in all material respects the financial condition of the Insurer as of such dates and for the periods covered by such statements in accordance with generally accepted accounting principles consistently applied. Since December 31, 2005, there has been no material change in such financial condition of the Insurer that would materially and adversely affect its ability to perform its obligations under the Policy.

(f)    *Insurer Information.* The Insurer Information in the Preliminary Offering Document as of the date of the Preliminary Offering Document and the Insurer Information in the Final Offering Document as of the date of the Final Offering Document and as of the date hereof, is true and correct in all material respects and does not contain any untrue statement of a material fact.

(g)    *No Litigation.* There are no actions, suits, proceedings or investigations pending or, to the best of the Insurer's knowledge, threatened against it at law or in equity or before or by any court, governmental agency, board or commission or any arbitrator which, if decided adversely, would materially and adversely affect its ability to perform its obligations under the Policy or this Insurance Agreement.

(h)    *Confidential Information.* The Insurer agrees that it shall comply with the terms of that certain Confidentiality Agreement.

(i)    *Compliance with Law, Etc.* No practice, procedure or policy employed, or proposed to be employed, by the Insurer in the conduct of its business violates any law, regulation, judgment, agreement, order or decree applicable to the Insurer that, if enforced, could result in a Material Adverse Change with respect to the Insurer.

(j)    *Delivery of Financial Statements of Insurer.* As soon as reasonably practicable after the release of its unaudited financial statements for each of the March, June and September 2006 fiscal quarters and the release of its audited financial statements for the 2006 fiscal year, the Insurer shall furnish to the Depositor such unaudited or audited financial statements, as appropriate (the "Insurer Financial Statements") for the related period meeting the requirements of Regulation S-X of the Securities Act. The Insurer Financial Statements shall be delivered in electronic form via electronic mail to al_gentile@gmacm.com, or such other address that has been designated by the Depositor and provided in writing to the Insurer. To the extent that the Insurer shall have been notified in writing on or before March 31, 2007 that the Depositor's reporting obligations under the Securities Exchange Act have not been suspended in accordance with the Securities Exchange Act and the related rules and regulations thereto, the Insurer shall continue to furnish such quarterly and annual financial

Confidential

statements as set forth above for so long as such financial statements may be required for the Depositor to comply with its reporting requirements under the Securities Exchange Act. All written notices under this section shall be sent to the Insurer via electronic mail at RegAB@fgic.com. The requirement for the delivery of any Insurer Financial Statements pursuant to this Section 2.04(j) shall be satisfied to the extent that the Insurer has delivered the required Insurer Financial Statements pursuant to any similar transaction in which GMACM is acting as "Seller." The Insurer shall use commercially reasonable efforts to identify each transaction to which the delivery relates, provided that the failure to denote such transactions shall not be deemed a failure to deliver such Insurer Financial Statements pursuant to this Section 2.04(j).

## ARTICLE III
## THE POLICY; REIMBURSEMENT

Section 3.01.    Issuance of the Policy.

The Insurer agrees to issue the Policy on the Closing Date subject to satisfaction of the conditions precedent set forth below on or prior to the Closing Date; *provided, however*; that the Insurer, in its sole and absolute discretion, may waive any of the conditions precedent set forth below, by delivering a written waiver relating thereto:

(a)    [RESERVED];

(b)    *Operative Documents*. The Insurer shall have received a copy of each of the Operative Documents, in form and substance reasonably satisfactory to the Insurer, duly authorized, executed and delivered by each party thereto;

(c)    *Certified Documents and Resolutions*. The Insurer shall have received (i) a copy of the applicable organizational documents of GMACM, the WG Trust, the Issuing Entity and the Depositor and (ii) a certificate of the Secretary or Assistant Secretary of GMACM and the Depositor dated the Closing Date stating that attached thereto is a true, complete and correct copy of resolutions duly adopted by the Board of Directors or other governing body, as applicable, of GMACM and the Depositor authorizing the issuance of the Securities, the execution, delivery and performance by GMACM and the Depositor of the Operative Documents to which it is a party and the consummation of the Transaction and that such applicable organizational documents and resolutions are in full force and effect without amendment or modification on the Closing Date;

(d)    *Incumbency Certificate*. The Insurer shall have received a certificate of the Secretary or an Assistant Secretary of each of GMACM and the Depositor certifying the names and signatures of the officers of GMACM and the Depositor authorized to execute and deliver the Operative Documents to which it is a party and that shareholder or beneficial owner consent to the execution and delivery of such documents is not necessary or has been obtained;

(e)    *Representations and Warranties*. The representations and warranties of GMACM, the WG Trust, the Issuing Entity and the Depositor dated the Closing Date set

Confidential

forth or incorporated by reference in this Insurance Agreement shall be true and correct on and as of the Closing Date as if made on the Closing Date;

(f)     *Opinions of Counsel.*  The Insurer shall have received all opinions of counsel addressed to any of Moody's and S&P, the Indenture Trustee, the Owner Trustee, GMACM, the WG Trust, the Issuing Entity, the Depositor and the Underwriter, in respect of GMACM, the WG Trust, the Issuing Entity and the Depositor or any other parties to the Operative Documents and the Transaction dated the Closing Date in form and substance reasonably satisfactory to the Insurer, addressed to the Insurer and addressing such matters as the Insurer may reasonably request, and the counsel providing each such opinion shall have been instructed by its client to deliver such opinion to the addressees thereof;

(g)     *Approvals, Etc.*  The Insurer shall have received true and correct copies of all approvals, licenses and consents, if any, including any required approval of the shareholders or beneficial owners, as applicable, of GMACM, the WG Trust, the Issuing Entity and the Depositor, required in connection with the Transaction;

(h)     *No Litigation, Etc.*  No suit, action or other proceeding, investigation or injunction, or final judgment relating thereto, shall be pending or threatened before any court, governmental or administrative agency or arbitrator in which it is sought to restrain or prohibit or to obtain damages or other relief in connection with any of the Operative Documents or the consummation of the Transaction;

(i)     *Legality.*  No statute, rule, regulation or order shall have been enacted, entered or deemed applicable by any government or governmental or administrative agency or court that would make the Transaction illegal or otherwise prevent the consummation thereof;

(j)     *Satisfaction of Conditions of the Underwriting Agreement.*  All conditions in the Underwriting Agreement relating to the Underwriter's obligation, if any, to purchase the Notes shall have been satisfied, without taking into account any waiver by the Underwriter of any condition unless such waiver has been approved by the Insurer. The Insurer shall have received copies of each of the documents, and shall be entitled to rely on each of the documents, required to be delivered to the Underwriter pursuant to the Underwriting Agreement;

(k)     *Issuance of Ratings.*  The Insurer shall have received confirmation that the Notes insured by the Policy are rated at least "BBB" by S&P and at least "Baa2" by Moody's without regard to the Policy, and that the Notes, when issued, will be rated "AAA" by S&P and "Aaa" by Moody's.

(l)     *No Default.*  No Default or Event of Default shall have occurred;

(m)     [RESERVED];

(n)     *Satisfactory Documentation.*  The Insurer and its counsel shall have reasonably determined that all documents, certificates and opinions to be delivered in

Confidential

connection with the Securities conform to the terms of the Indenture, the Trust Agreement, the Registration Statement, the Offering Document and this Insurance Agreement; and

(o)    *Indemnification Letter.*   The Insurer shall have received from the Underwriter an indemnification letter or agreement with respect to securities law matters in form and substance reasonably satisfactory to the Insurer.

Section 3.02.  Payment of Fees and Premium.

(a)    *Legal and Accounting Fees; Fees for Loan File Review.*  GMACM shall pay or cause to be paid to the Insurer, at the Closing Date, legal fees, due diligence expenses and accounting fees in the aggregate amount not to exceed $34,000.

(b)    *Rating Agency Fees.*  GMACM shall promptly pay the initial fees of S&P and Moody's with respect to the Notes and the Transaction following receipt of a statement with respect thereto.  All periodic and subsequent fees of S&P and Moody's with respect to, and directly allocable to, the Notes shall be for the account of, and shall be billed to, GMACM.  The fees for any other rating agency shall be paid by the party requesting such other agency's rating unless such other agency is a substitute for S&P and Moody's in the event that S&P or Moody's is no longer rating the Notes, in which case the fees for such agency shall be paid by GMACM.

(c)    [Reserved].

(d)    *Premium.*

(i)    In consideration of the issuance by the Insurer of the Policy, the Insurer shall be entitled to receive the Premium for the Policy, as and when due on each Payment Date in accordance with and from the funds in respect of the Mortgage Loans.  The Premium due on each Payment Date in respect of the Policy shall be an amount equal to 1/12th of the product of (i) the Premium Percentage and (ii) the aggregate Note Balance of the Notes on the prior Payment Date (after giving effect to any distributions to be made on such Payment Date); provided that on the First Payment Date, the Premium will be equal the product of the (i) Premium Percentage converted to a daily rate and (ii) the aggregate Note Balance of the Notes as of the Closing Date and (iii) the number of days from and including the Closing Date to and including the first Payment Date.

(ii)    The Premiums paid under the Indenture in respect of the Policy shall be nonrefundable without regard to whether the Insurer makes any payment under the Policy or any other circumstances relating to any Notes or provision being made for payment of any Notes prior to maturity.

Section 3.03.  Reimbursement Obligation.

(a)    As and when due in accordance with and from the funds specified in Section 3.05(a) of the Indenture, the Insurer shall be entitled to reimbursement for any

payment made by the Insurer under the Policy, which reimbursement shall be due and payable on the date that any amount is paid thereunder, in an amount equal to the amount to be so paid and all amounts previously paid that remain unreimbursed, together with interest on any and all such amounts remaining unreimbursed (to the extent permitted by law, if in respect of any unreimbursed amounts representing interest) from the date such amounts became due until paid in full (after as well as before judgment), at a rate of interest equal to the Late Payment Rate.

(b)    GMACM agrees to pay to the Insurer as follows:  anything in Sections 2.01(l), 2.02(k) and 3.03(a) or in any Operative Document to the contrary notwithstanding, the Insurer shall be entitled to reimbursement from GMACM and shall have full recourse against GMACM for (i) any payment made under the Policy arising as a result of GMACM's or the WG Trust's failure to substitute for or deposit an amount in respect of any defective Mortgage Loan as required pursuant to Section 3.1 of the Mortgage Loan Purchase Agreement, together with interest on any and all such amounts remaining unreimbursed (to the extent permitted by law, if in respect of any such unreimbursed amounts representing interest) from the date such amounts became due until paid in full (after as well as before judgment), at a rate of interest equal to the Late Payment Rate, and (ii) any payment made under the Policy arising as a result of (A) GMACM's or the WG Trust's failure to pay or deposit any amount required to be paid or deposited pursuant to the Operative Documents or (B) GMACM's or the WG Trust's failure to honor any demand made by the Indenture Trustee under Section 3.12 of the Indenture in accordance with the terms thereof, together with interest on any and all such amounts remaining unreimbursed (to the extent permitted by law, if in respect to any such unreimbursed amounts representing interest) from the date such amounts became due until paid in full (after as well as before judgment), at a rate of interest equal to the Late Payment Rate.

(c)    GMACM agrees to pay to the Insurer any and all charges, fees, costs and expenses that the Insurer may reasonably pay or incur, including reasonable attorneys' and accountants' fees and expenses, in connection with (i) the enforcement, defense or preservation of any rights in respect of any of the Operative Documents, including defending, monitoring or participating in any litigation or proceeding (including any insolvency proceeding in respect of any Transaction participant or any affiliate thereof) relating to any of the Operative Documents, any party to any of the Operative Documents (in its capacity as such a party) or the Transaction or (ii) any amendment, waiver or other action with respect to, or related to, any Operative Document, whether or not executed or completed.  Provided that three Business Days written notice of the intended payment or incurrence shall have been given to GMACM by the Insurer, such reimbursement shall be due on the dates on which such charges, fees, costs or expenses are paid or incurred by the Insurer.

(d)    GMACM agrees to pay to the Insurer interest on any and all amounts described in subsections 3.03(b), 3.03(c) and 3.03(e) and Sections 3.02 and 3.04 from the date such amounts become due or, in the case of subsections 3.02(b) or 3.03(c) or Section 3.04, are incurred or paid by the Insurer until payment thereof in full (after as well as before judgment), at the Late Payment Rate.

Confidential

(e)      GMACM agrees to reimburse the Insurer for any payments made by the Insurer under the Policy that were made in connection with a failure by GMACM or the WG Trust to make any required payments or distributions under any Operative Documents. Any such reimbursement shall be payable by GMACM on the date any such payment is made by the Insurer.

Section 3.04.    Indemnification.

(a)      In addition to any and all of the Insurer's rights of reimbursement, indemnification, subrogation and to any other rights of the Insurer pursuant hereto or under law or in equity, GMACM, the WG Trust, the Issuing Entity and the Depositor agree, jointly and severally, to pay, and to protect, indemnify and save harmless, the Insurer and its officers, directors, shareholders, employees, agents and each Person, if any, who controls the Insurer within the meaning of either Section 15 of the Securities Act or Section 20 of the Securities Exchange Act from and against, any and all claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) of any nature arising out of or relating to the breach by GMACM, the WG Trust, the Issuing Entity or the Depositor of any of the representations or warranties contained in Section 2.01 or arising out of or relating to the transactions contemplated by the Operative Documents by reason of:

(i)      any omission or action (other than of or by the Insurer) in connection with the offering, issuance or delivery of the Securities by GMACM, the WG Trust, the Depositor, the Owner Trustee or the Indenture Trustee;

(ii)      the negligence, bad faith, willful misconduct, misfeasance, malfeasance or theft committed by any director, officer, employee or agent of GMACM, the WG Trust, the Depositor, the Owner Trustee or the Indenture Trustee in connection with any Transaction arising from or relating to the Operative Documents;

(iii)      the violation by GMACM, the WG Trust, the Issuing Entity or the Depositor of any domestic or foreign law, rule or regulation, or any judgment, order or decree applicable to it, which violation reasonably could result in a Material Adverse Change;

(iv)      the breach by GMACM, the WG Trust, the Issuing Entity or the Depositor of any representation, warranty (other than a representation or warranty in respect of the Mortgage Loans under Section 3.1 of the Mortgage Loan Purchase Agreement) or covenant under any of the Operative Documents to which it is a party or the occurrence, in respect of GMACM, the WG Trust, the Issuing Entity or the Depositor, under any of the Operative Documents of any "event of default" or any event which, with the giving of notice or the lapse of time or both, would constitute any "event of default"; or

Confidential

(v)    any untrue statement or alleged untrue statement of a material fact contained in the Offering Documents or the Registration Statement or any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, except insofar as such claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) arise out of or are based upon any untrue statement or alleged untrue statement of a material fact or omission or alleged omission of a material fact in information included in the Insurer Information.

(b)    The Insurer agrees to pay, and to protect, indemnify and save harmless, GMACM, WG, the Issuing Entity and the Depositor and their respective officers, directors, shareholders, employees, agents and each Person, if any, who controls GMACM, the WG Trust, the Issuing Entity and the Depositor within the meaning of either Section 15 of the Securities Act or Section 20 of the Securities Exchange Act from and against, any and all claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) of any nature arising out of or by reason of (i) any untrue statement or alleged untrue statement of a material fact contained in the Insurer Information or any omission or alleged omission to state in the Insurer Information a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, (ii) any failure of the Insurer to make a payment required to be made under the Policy or (iii) a breach of any of the representations and warranties of the Insurer contained in Section 2.04.

(c)    If any action or proceeding (including any governmental investigation) shall be brought or asserted against any Person (individually, an "Indemnified Party" and, collectively, the "Indemnified Parties") in respect of which the indemnity provided in Section 3.04(a) or (b) may be sought from GMACM, the WG Trust, the Issuing Entity or the Depositor, on the one hand, or the Insurer, on the other (each, an "Indemnifying Party") hereunder, each such Indemnified Party shall promptly notify the Indemnifying Party in writing, and the Indemnifying Party shall assume the defense thereof, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of all expenses.  The omission so to notify the Indemnifying Party will not relieve it from any liability which it may have to any Indemnified Party except to the extent the Indemnifying Party is prejudiced by such failure.  The Indemnified Party shall have the right to employ separate counsel in any such action and to participate in the defense thereof at the expense of the Indemnified Party; provided, however, that the fees and expenses of such separate counsel shall be at the expense of the Indemnifying Party if (i) the Indemnifying Party has agreed to pay such fees and expenses, (ii) the Indemnifying Party shall have failed within a reasonable period of time to assume the defense of such action or proceeding and employ counsel reasonably satisfactory to the Indemnified Party in any such action or proceeding or (iii) the named parties to any such action or proceeding (including any impleaded parties) include both the Indemnified

Confidential

Party and the Indemnifying Party, and the Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or additional to those available to the Indemnifying Party (in which case, if the Indemnified Party notifies the Indemnifying Party in writing that it elects to employ separate counsel at the expense of the Indemnifying Party, the Indemnifying Party shall not have the right to assume the defense of such action or proceeding on behalf of such Indemnified Party, it being understood, however, that the Indemnifying Party shall not, in connection with any one such action or proceeding or separate but substantially similar or related actions or proceedings in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of more than one separate firm of attorneys at any time for the Indemnified Parties, which firm shall be designated in writing by the Indemnified Party and shall be reasonably satisfactory to the Indemnifying Party). The Indemnifying Party shall not be liable for any settlement of any such action or proceeding effected without its written consent, which consent shall not be unreasonably withheld, conditioned or delayed, but, if settled with its written consent, or if there is a final judgment for the plaintiff in any such action or proceeding with respect to which the Indemnifying Party shall have received notice in accordance with this subsection (c), the Indemnifying Party agrees to indemnify and hold the Indemnified Parties harmless from and against any loss or liability by reason of such settlement or judgment.

(d)    To provide for just and equitable contribution if the indemnification provided by the Indemnifying Party is determined to be unavailable or insufficient to hold harmless any Indemnified Party (other than due to application of this Section), each Indemnifying Party shall contribute to the losses incurred by the Indemnified Party on the basis of the relative fault of the Indemnifying Party, on the one hand, and the Indemnified Party, on the other hand.

No Person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any Person who was not guilty of such fraudulent misrepresentation.

Section 3.05.   Payment Procedure.

In the event of any payment by the Insurer, the Indenture Trustee, GMACM, the WG Trust, the Issuing Entity and the Depositor agree to accept the voucher or other evidence of payment as prima facie evidence of the propriety thereof and the liability, if any, described in Section 3.03 therefor to the Insurer. All payments to be made to the Insurer under this Insurance Agreement shall be made to the Insurer in lawful currency of the United States of America in immediately available funds at the notice address for the Insurer as specified in the Indenture on the date when due or as the Insurer shall otherwise direct by written notice to the other parties hereto. In the event that the date of any payment to the Insurer or the expiration of any time period hereunder occurs on a day that is not a Business Day, then such payment or expiration of time period shall be made or occur on the next succeeding Business Day with the same force and effect as if such payment was made or time period expired on the scheduled date of payment or expiration date.

Confidential

Section 3.06.   Joint and Several Liability.

GMACM, the WG Trust, the Issuing Entity and the Depositor shall be jointly and severally liable for all amounts due and payable to the Insurer hereunder by any such parties.

## ARTICLE IV
## FURTHER AGREEMENTS

Section 4.01.   Effective Date; Term of the Insurance Agreement.

This Insurance Agreement shall take effect on the Closing Date and shall remain in effect until the later of (a) such time as the Insurer is no longer subject to a claim under the Policy and the Policy shall have been surrendered to the Insurer for cancellation and (b) all amounts payable to the Insurer by GMACM, the WG Trust, the Issuing Entity or the Depositor hereunder or from any other source hereunder or under the Operative Documents or the Policy and all amounts payable under the Notes have been paid in full; provided, however, that the provisions of Sections 3.02, 3.03, 3.04 and 3.06 hereof shall survive any termination of this Insurance Agreement.

Section 4.02.   Further Assurances and Corrective Instruments.

(a)    Except at such times as a default in payment under the Policy shall exist or shall have occurred, none of GMACM, the WG Trust, the Issuing Entity or the Depositor nor the Owner Trustee shall grant any waiver of rights under any of the Operative Documents to which any of them is a party without the prior written consent of the Insurer, which shall not be unreasonably withheld, conditioned or delayed and any such waiver without prior written consent of the Insurer shall be null and void and of no force or effect.

(b)    To the extent permitted by law, each of GMACM, the WG Trust, the Issuing Entity and the Depositor agrees that it will, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such supplements hereto and such further instruments as the Insurer may reasonably request and as may be required in the Insurer's reasonable judgment to effectuate the intention of or facilitate the performance of this Insurance Agreement.

Section 4.03.   Obligations Absolute.

(a)    So long as no Credit Enhancer Default shall have occurred and shall have continued beyond any period of cure applicable thereto, the obligations of GMACM, the WG Trust, the Issuing Entity and the Depositor hereunder shall be absolute and unconditional and shall be paid or performed strictly in accordance with this Insurance Agreement under all circumstances irrespective of:

(i)    any lack of validity or enforceability of, or any amendment or other modifications of, or waiver, with respect to any of the Operative Documents or the Securities that have not been approved by the Insurer;

Confidential

(ii)    any exchange or release of any other obligations hereunder;

(iii)    the existence of any claim, setoff, defense, reduction, abatement or other right that GMACM, the WG Trust, the Issuing Entity or the Depositor may have at any time against the Insurer or any other Person;

(iv)    any document presented in connection with the Policy proving to be forged, fraudulent, invalid or insufficient in any respect or any statement therein being untrue or inaccurate in any respect;

(v)    any payment by the Insurer under the Policy against presentation of a certificate or other document that does not strictly comply with terms of the Policy;

(vi)    any failure of GMACM, the WG Trust, the Issuing Entity or the Depositor to receive the proceeds from the sale of the Securities; and

(vii)    any other circumstances, other than payment in full, that might otherwise constitute a defense available to, or discharge of, GMACM, the WG Trust, the Issuing Entity or the Depositor in respect of any Operative Document.

(b)    So long as no Credit Enhancer Default shall have occurred and shall have continued beyond any period of cure applicable thereto, GMACM, the WG Trust, the Issuing Entity and the Depositor and any and all others who are now or may become liable for all or part of the obligations of GMACM, the WG Trust, the Issuing Entity or the Depositor under this Insurance Agreement renounce the right to assert as a defense to the performance of their respective obligations each of the following:  (i) to the extent permitted by law, any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness and obligations evidenced by any Operative Document or by any extension or renewal thereof; (ii) presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor and notice of protest; (iii) all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default or enforcement of any payment hereunder, except as required by the Operative Documents; and (iv) all rights of abatement, diminution, postponement or deduction, or to any defense other than payment, or to any right of setoff or recoupment arising out of any breach under any of the Operative Documents, by any party thereto or any beneficiary thereof, or out of any obligation at any time owing to GMACM, the WG Trust, the Issuing Entity or the Depositor.

(c)    GMACM, the WG Trust, the Issuing Entity and the Depositor and any and all others who are now or may become liable for all or part of the obligations of GMACM, the WG Trust, the Issuing Entity or the Depositor under this Insurance Agreement agree to be bound by this Insurance Agreement and (i) agree that any consent, waiver or forbearance hereunder with respect to an event shall operate only for such event and not for any subsequent event; (ii) consent to any and all extensions of time that may be granted by the Insurer with respect to any payment hereunder or other provisions

Confidential

hereof and to the release of any security at any time given for any payment hereunder, or any part thereof, with or without substitution, and to the release of any Person or entity liable for any such payment; and (iii) consent to the addition of any and all other makers, endorsers, guarantors and other obligors for any payment hereunder, and to the acceptance of any and all other security for any payment hereunder, and agree that the addition of any such obligors or security shall not affect the liability of the parties hereto for any payment hereunder.

(d)    Nothing herein shall be construed as prohibiting GMACM, the WG Trust, the Issuing Entity or the Depositor from pursuing any rights or remedies it may have against any Person in a separate legal proceeding.

Section 4.04.    Assignments; Reinsurance; Third-Party Rights.

(a)    This Insurance Agreement shall be a continuing obligation of the parties hereto and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Each of GMACM, the WG Trust, the Issuing Entity and the Depositor may not assign its rights under this Insurance Agreement or the Policy, or delegate any of its duties hereunder, without the prior written consent of the Insurer. Any assignments made in violation of this Insurance Agreement shall be null and void.

(b)    The Insurer shall have the right to give participations in its rights under this Insurance Agreement and to enter into contracts of reinsurance with respect to the Policy upon such terms and conditions as the Insurer may in its discretion determine; *provided, however*, that no such participation or reinsurance agreement or arrangement shall relieve the Insurer of any of its obligations hereunder or under the Policy.

(c)    Except as provided herein with respect to participants and reinsurers, nothing in this Insurance Agreement shall confer any right, remedy or claim, express or implied, upon any Person, including, particularly, any Holder, other than the Insurer against GMACM, the WG Trust, the Issuing Entity or the Depositor, or GMACM, the WG Trust, the Issuing Entity or the Depositor against the Insurer and all the terms, covenants, conditions, promises and agreements contained herein shall be for the sole and exclusive benefit of the parties hereto and their successors and permitted assigns. Neither the Indenture Trustee nor any Holder shall have any right to payment from any Premiums paid or payable hereunder or under the Indenture or from any amounts paid by GMACM pursuant to Sections 3.02 or 3.03.

Section 4.05.    Liability of the Insurer.

Neither the Insurer nor any of its officers, directors or employees shall be liable or responsible for: (a) the use that may be made of the Policy by the Indenture Trustee or for any acts or omissions of the Indenture Trustee in connection therewith; or (b) the validity, sufficiency, accuracy or genuineness of documents delivered to the Insurer in connection with any claim under the Policy, or of any signatures thereon, even if such documents or signatures should in fact prove to be in any or all respects invalid, insufficient, fraudulent or forged (unless

Confidential

the Insurer shall have actual knowledge thereof).  In furtherance and not in limitation of the foregoing, the Insurer may accept documents that appear on their face to be in order, without responsibility for further investigation.

Section 4.06.  <u>Annual Servicing Audit and Certification</u>.

The annual servicing audit required pursuant to Section 3.11 of the Servicing Agreement shall be performed by an independent third party reasonably acceptable to the Insurer.  Any one of the four major nationally recognized firms of independent public accountants is deemed to be acceptable.

**ARTICLE V**
**DEFAULTS AND REMEDIES**

Section 5.01.  <u>Defaults</u>.

The occurrence of any of the following shall constitute an Event of Default hereunder:

(a)     Any representation or warranty made by GMACM, the WG Trust, the Issuing Entity or the Depositor hereunder or under the Operative Documents, or in any certificate furnished hereunder or under the Operative Documents, shall prove to be untrue or incomplete in any material respect;

(b)     (i)     GMACM, the WG Trust, the Issuing Entity or the Depositor shall fail to pay when due any amount payable by GMACM, the WG Trust, the Issuing Entity or the Depositor hereunder or (ii) a legislative body has enacted any law that declares or a court of competent jurisdiction shall find or rule that this Insurance Agreement or any other Operative Document is not valid and binding on GMACM, the WG Trust, the Issuing Entity or the Depositor, provided that, with respect to any law or judicial action within the scope of this clause (ii), GMACM, the WG Trust, the Issuing Entity and the Depositor shall have 30 days to reinstate the binding effect of this Insurance Agreement or any other Operative Document; the Insurer agrees to take such actions as may be reasonably requested of it to facilitate the reinstatement of such binding effect;

(c)     The occurrence and continuance of an "event of default", or any event which given the lapse of time or notice would constitute an "event of default", under any Operative Document;

(d)     Any failure on the part of GMACM, the WG Trust, the Issuing Entity or the Depositor duly to observe or perform in any material respect any other of the covenants or agreements on the part of GMACM, the WG Trust, the Issuing Entity or the Depositor contained in this Insurance Agreement (other than the covenants or agreements contained in Sections 2.02(a), 2.02(l) and 2.02(n)) which continues unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to GMACM by the Insurer (with a copy to the Indenture Trustee) or by the Indenture Trustee (with a copy to the Insurer);

Confidential

(e)    A decree or order of a court or agency or supervisory authority having jurisdiction in the premises in an involuntary case under any present or future federal or state bankruptcy, insolvency or similar law or the appointment of a conservator or receiver or liquidator or other similar official in any bankruptcy, insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against GMACM, the WG Trust, or the Depositor and such decree or order shall have remained in force undischarged or unstayed for a period of 90 consecutive days;

(f)    GMACM, the WG Trust, or the Depositor shall consent to the appointment of a conservator or receiver or liquidator or other similar official in any bankruptcy, insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to GMACM, the WG Trust, or the Depositor or of or relating to all or substantially all of their respective property;

(g)    GMACM, the WG Trust, or the Depositor shall become insolvent or admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of or otherwise voluntarily commence a case or proceeding under any applicable bankruptcy, insolvency, reorganization or other similar statute, make an assignment for the benefit of its creditors or voluntarily suspend payment of its obligations; or

(h)    The Issuing Entity shall become subject to an entity level tax or to registration as an investment company under the Investment Company Act.

Section 5.02.   Remedies; No Remedy Exclusive.

(a)    Upon the occurrence of an Event of Default, the Insurer may exercise any one or more of the rights and remedies set forth below:

(i)    declare all indebtedness of every type or description then owed by GMACM, the WG Trust, the Issuing Entity or the Depositor to the Insurer with respect to this Residential Asset Mortgage Products, Inc. GMACM Home Loan-Backed Term Notes, Series 2006-HE1 transaction to be immediately due and payable, and the same shall thereupon be immediately due and payable;

(ii)    exercise any rights and remedies under the Trust Agreement in accordance with the terms thereof or direct the Owner Trustee to exercise such remedies in accordance with the terms of the Trust Agreement;

(iii)    exercise any rights and remedies under the Indenture in accordance with the terms thereof or direct the Indenture Trustee to exercise such remedies in accordance with the terms of the Indenture;

(iv)    exercise any rights and remedies under the Servicing Agreement in accordance with the terms thereof or direct the Servicer to exercise such remedies in accordance with the terms of the Servicing Agreement;

Confidential

(v)    exercise any rights and remedies under the Mortgage Loan Purchase Agreement in accordance with the terms thereof or direct the appropriate party to exercise such remedies in accordance with the terms thereof; or

(vi)    take whatever action at law or in equity as may appear necessary or desirable in its judgment to collect the amounts, if any, then due under this Insurance Agreement or any other Operative Document or to enforce performance and observance of any obligation, agreement or covenant of GMACM, the WG Trust, the Issuing Entity or the Depositor under this Insurance Agreement or any other Operative Documents.

(b)    Unless otherwise expressly provided, no remedy herein conferred or reserved is intended to be exclusive of any other available remedy, but each remedy shall be cumulative and shall be in addition to other remedies given under this Insurance Agreement, the Indenture or existing at law or in equity.   No delay or omission to exercise any right or power accruing under this Insurance Agreement or the Indenture upon the happening of any event set forth in Section 5.01 shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient.  In order to entitle the Insurer to exercise any remedy reserved to the Insurer in this Article, it shall not be necessary to give any notice, other than such notice as may be required by this Article.

Section 5.03.   Waivers.

(a)    No failure by the Insurer to exercise, and no delay by the Insurer in exercising, any right hereunder shall operate as a waiver thereof.  The exercise by the Insurer of any right hereunder shall not preclude the exercise of any other right, and the remedies provided herein to the Insurer are declared in every case to be cumulative and not exclusive of any remedies provided by law or equity.

(b)    The Insurer shall have the right, to be exercised in its complete discretion, to waive any Event of Default hereunder, by a writing setting forth the terms, conditions and extent of such waiver signed by the Insurer and delivered to GMACM.  Unless such writing expressly provides to the contrary, any waiver so granted shall extend only to the specific event or occurrence which gave rise to the Event of Default so waived and not to any other similar event or occurrence which occurs subsequent to the date of such waiver.

## ARTICLE VI
## MISCELLANEOUS

Section 6.01.   Amendments, Etc.

This Insurance Agreement may be amended, modified, supplemented or terminated only by written instrument or written instruments signed by the parties hereto.  GMACM agrees to provide a copy of any amendment to this Insurance Agreement promptly to the Indenture Trustee and each Rating Agency.   No act or course of dealing shall be deemed to constitute an amendment, modification, supplement or termination hereof.

Confidential

Section 6.02.  Notices.

All demands, notices and other communications to be given hereunder shall be in writing (except as otherwise specifically provided herein) and shall be mailed by registered mail or personally delivered and telecopied to the recipient as follows:

(a)  To the Insurer:

Financial Guaranty Insurance Company
125 Park Avenue
New York, New York 10017
Attention:  Structured Finance Surveillance GMACM 2006-HE1
Facsimile:  212-312-3220
Confirmation:  (800) 352-0001
E-mail:  SFSurveillance@fgic.com

(in each case in which notice or other communication to the Insurer refers to an Event of Default, a claim on the Policy, or with respect to which failure on the part of the Insurer to respond shall be deemed to constitute consent or acceptance, then a copy of such notice or other communication should also be sent to the attention of the general counsel of each of the Insurer, GMACM, the WG Trust, the Depositor and the Indenture Trustee and in all cases, both any original and all copies shall be marked to indicate "URGENT MATERIAL ENCLOSED.")  Any notice regarding delivery or non-delivery of the Insurer Financial Information shall be sent via electronic mail to the Insurer at RegAB@fgic.com and shall reference the deal name and policy number.

(b)  To GMACM:

GMAC Mortgage Corporation
100 Witmer Road
Horsham, Pennsylvania  19044
Attention:  Chief Financial Officer
Facsimile:  (215) 682-1515
Confirmation:  (215) 682-1000

Notice to GMACM shall also constitute notice to the WG Trust, the Issuing Entity and the Depositor to the extent the party providing such notice is required to provide notice to all such parties (in each case in which notice or other communication to GMACM refers to an Event of Default, a claim against GMACM, the WG Trust, the Issuing Entity or the Depositor or with respect to which failure on the part of GMACM, the WG Trust, the Issuing Entity or the Depositor to respond shall be deemed to constitute consent or acceptance, then a copy of such notice or other communication should also be sent to the attention of the general counsel of each of the Insurer, GMACM and the Indenture Trustee and, in all cases, both any original and all copies shall be marked to indicate "URGENT MATERIAL ENCLOSED.").

Confidential

(c)     To the Indenture Trustee, at its Corporate Trust Office, with a copy to:

JPMorgan Chase Bank, N.A.
4 New York Plaza, 6th Floor
New York, New York 10004
Facsimile: (212) 623-5858
Phone No.: (212) 623-5600

A party may specify an additional or different address or addresses by writing mailed or delivered to the other parties as aforesaid. All such notices and other communications shall be effective upon receipt.

Section 6.03.   Severability.

In the event that any provision of this Insurance Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, the parties hereto agree that such holding shall not invalidate or render unenforceable any other provision hereof. The parties hereto further agree that the holding by any court of competent jurisdiction that any remedy pursued by any party hereto is unavailable or unenforceable shall not affect in any way the ability of such party to pursue any other remedy available to it.

Section 6.04.   Governing Law.

This Insurance Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws provisions thereof other than Sections 5-1401 and 5-1402 of the General Obligations Law, which the Parties hereto expressly rely upon as the governing law hereunder).

Section 6.05.   Consent to Jurisdiction.

(a)     The parties hereto hereby irrevocably submit to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York and any court in the State of New York located in the City and County of New York, and any appellate court from any thereof, in any action, suit or proceeding brought against it and to or in connection with any of the Operative Documents, the Policy or the Transaction or for recognition or enforcement of any judgment, and the parties hereto hereby irrevocably and unconditionally agree that all claims in respect of any such action or proceeding may be heard or determined in such New York state court or, to the extent permitted by law, in such federal court. The parties hereto agree that a final unappealable judgment in any such action, suit or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. To the extent permitted by applicable law, the parties hereto hereby waive and agree not to assert by way of motion, as a defense or otherwise in any such suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such courts, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that the related documents or the subject matter thereof may not be litigated in or by such courts.

Confidential

(b)    To the extent permitted by applicable law, the parties hereto shall not seek and hereby waive the right to any review of the judgment of any such court by any court of any other nation or jurisdiction which may be called upon to grant an enforcement of such judgment.

(c)    Service on GMACM, the WG Trust, the Issuing Entity or the Depositor may be made by mailing or delivering copies of the summons and complaint and other process which may be served in any suit, action or proceeding to the Servicer addressed as follows: GMAC Mortgage Corporation, 100 Witmer Road, Horsham, Pennsylvania 19044, Attention: General Counsel. Such address may be changed by the applicable party or parties by written notice to the other parties hereto. The provision of notice to change the address set forth in Section 6.02 shall constitute notice for purposes of the preceding sentence, unless such notice shall expressly state to the contrary.

(d)    Nothing contained in this Insurance Agreement shall limit or affect any party's right to serve process in any other manner permitted by law or to start legal proceedings relating to any of the Operative Documents or the Policy against any other party or its properties in the courts of any jurisdiction.

Section 6.06.    Consent of the Insurer.

In the event that the consent of the Insurer is required under any of the Operative Documents, the determination whether to grant or withhold such consent shall be made by the Insurer in its sole discretion without any implied duty towards any other Person, except as otherwise expressly provided therein, and such consent is only effective when and if given by the Insurer in writing.

Section 6.07.    Counterparts.

This Insurance Agreement may be executed in counterparts by the parties hereto, and all such counterparts shall constitute one and the same instrument.

Section 6.08.    Headings.

The headings of Articles and Sections and the Table of Contents contained in this Insurance Agreement are provided for convenience only. They form no part of this Insurance Agreement and shall not affect its construction or interpretation.

Section 6.09.    Trial by Jury Waived.

Each party hereby waives, to the fullest extent permitted by law, any right to a trial by jury in respect of any litigation arising directly or indirectly out of, under or in connection with any of the Operative Documents or a Policy or any of the transactions contemplated thereunder. Each party hereto (A) certifies that no representative, agent or attorney of any party hereto has represented, expressly or otherwise, that it would not, in the event of litigation, seek to enforce the foregoing waiver and (B) acknowledges that it has been induced to enter into the Operative Documents to which it is a party (or, in the case of a Policy, the Insurer so acknowledges) by, among other things, this waiver.

Confidential

Section 6.10.  <u>Limited Liability</u>.

No recourse under any Operative Document or the Underwriting Agreement shall be had against, and no personal liability shall attach to, any officer, employee, director, affiliate or shareholder of any party hereto, as such, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute or otherwise in respect of any of the Operative Documents or the Underwriting Agreement, the Notes or the or the Policy, it being expressly agreed and understood that each Operative Document or the Underwriting Agreement is solely a corporate obligation of each party hereto, and that any and all personal liability, either at common law or in equity, or by statute or constitution, of every such officer, employee, director, affiliate or shareholder for breaches of any party hereto of any obligations under any Operative Document or the Underwriting Agreement is hereby expressly waived as a condition of and in consideration for the execution and delivery of this Insurance Agreement.

Section 6.11.  <u>Entire Agreement</u>.

This Insurance Agreement and the Policy set forth the entire agreement between the parties with respect to the subject matter hereof and thereof, and this Insurance Agreement supersedes and replaces any agreement or understanding that may have existed between the parties prior to the date hereof in respect of such subject matter.

Section 6.12.  <u>No Petition</u>.

The Insurer hereby covenants and agrees that it will not at any time institute against the Depositor or the WG Trust, or join in any institution against the Depositor or the WG Trust of, any bankruptcy proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations under this Agreement or any of the other Operative Documents.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Confidential

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

FINANCIAL GUARANTY INSURANCE
COMPANY, as Insurer

By: _____

Name: _____Benjamin Perlman_____

Title: _____Vice President_____

RESIDENTIAL ASSET MORTGAGE PRODUCTS,
INC., as Depositor

By: _____

Name: _____

Title: _____

GMAC MORTGAGE CORPORATION,
as a Seller and the Servicer

By: _____

Name: _____

Title: _____

GMACM HOME EQUITY LOAN TRUST 2006-HE1,
as Issuing Entity
   By: Wilmington Trust Company, not in its individual
        capacity but solely as Owner Trustee

By: _____

Name: _____

Title: _____

WALNUT GROVE MORTGAGE LOAN
TRUST 2003-A, as a Seller
By: Wilmington Trust Company, not in its
     individual capacity but solely as Owner
     Trustee

By: _____

Name: _____

Title: _____

JPMORGAN CHASE BANK, N.A.
as Indenture Trustee

By: _____

Name: _____

Title: _____

[Signature Page to Insurance and Indemnity Agreement for GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE1]

50887.000141 RICHMOND 1713526v3

Confidential

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

FINANCIAL GUARANTY INSURANCE
COMPANY, as Insurer

By:_____

Name:_____

Title:_____

RESIDENTIAL ASSET MORTGAGE PRODUCTS,
INC., as Depositor

By:_____

Name:_____ Patricia C. Taylor_____

Title:_____ Vice President_____

GMAC MORTGAGE CORPORATION,
as a Seller and the Servicer

By:_____

Name:_____ Sandy Bitzer_____

Title:_____ Vice President_____

GMACM HOME LOAN TRUST 2006-HE1, as Issuing
Entity
By: Wilmington Trust Company, not in its individual
      capacity but solely as Owner Trustee

By:_____

Name:_____

Title:_____

WALNUT GROVE MORTGAGE LOAN
TRUST 2003-A, as a Seller
By: Wilmington Trust Company, not in its
      individual capacity but solely as Owner
      Trustee

By:_____

Name:_____

Title:_____

JPMORGAN CHASE BANK, N.A.
as Indenture Trustee

By:_____

Name:_____

Title:_____

[Signature Page to Insurance and Indemnity Agreement for GMACM Home Loan-Backed Term Notes, Series 2006-HE1]

Confidential

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

FINANCIAL GUARANTY INSURANCE COMPANY, as Insurer

By:_____
Name: _____
Title: _____

RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., as Depositor

By:_____
Name: _____
Title: _____

GMAC MORTGAGE CORPORATION, as a Seller and the Servicer

By:_____
Name: _____
Title: _____

GMACM HOME EQUITY LOAN TRUST 2006-HE1, as Issuing Entity
  By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By:_____
Name:    **Patricia A. Evans**
         **Vice President**
Title: _____

WALNUT GROVE MORTGAGE LOAN TRUST 2003-A, as a Seller
By:  Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By:_____
Name:    **Patricia A. Evans**
         **Vice President**
Title: _____

JPMORGAN CHASE BANK, N.A. as Indenture Trustee

By:_____
Name:_____
Title:_____

[Signature Page to Insurance and Indemnity Agreement for GMACM Home Equity Loan-Backed Term Notes. Series 2006-HE1]

50887.000141 RICHMOND 1713526v3

Confidential

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

FINANCIAL GUARANTY INSURANCE
COMPANY, as Insurer

By:_____

Name: _____

Title: _____

RESIDENTIAL ASSET MORTGAGE PRODUCTS,
INC., as Depositor

By:_____

Name: _____

Title: _____

GMAC MORTGAGE CORPORATION,
as a Seller and the Servicer

By:_____

Name: _____

Title: _____

GMACM HOME LOAN TRUST 2006-HE1, as Issuing
Entity
By: Wilmington Trust Company, not in its individual
     capacity but solely as Owner Trustee

By:_____

Name: _____

Title: _____

WALNUT GROVE MORTGAGE LOAN
TRUST 2003-A, as a Seller
By: Wilmington Trust Company, not in its
     individual capacity but solely as Owner
     Trustee

By:_____

Name: _____

Title: _____

JPMORGAN CHASE BANK, N.A.
as Indenture Trustee

By:_____ Keith Richardson _____

Name:_____ Attorney-In-Fact _____

Title:_____

[Signature Page to Insurance and Indemnity Agreement for GMACM Home Loan-Backed Term Notes, Series 2006-HE1]

Confidential