bears interest at the related Uncertificated REMIC I Pass-Through Rate, and that has such other terms as are described herein.

REMIC I Regular Interest LT4 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC I Regular Interest LT4 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC I Regular Interest LT4 on such Distribution Date.

REMIC II: The segregated pool of assets subject hereto (exclusive of the Mortgage Insurance Premium Taxes Reserve Fund and the Hedge Agreement, which are not assets of any REMIC), constituting a portion of the primary trust created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be made (other than the items in clause (v) and the proceeds thereof), consisting of: (i) the Group II Loans and the related Mortgage Files; (ii) all payments on and collections in respect of the Group II Loans due after the Cut-off Date (other than Monthly Payments due in the month of the Cut-off Date) as shall be on deposit in the Custodial Account or in the Certificate Account and identified as belonging to the Trust Fund; (iii) property which secured a Group II Loan and which has been acquired for the benefit of the Certificateholders by foreclosure or deed in lieu of foreclosure; (iv) the hazard insurance policies and Primary Insurance Policies pertaining to the Group II Loans, if any; and (v) all proceeds of clauses (i) through (iv) above.

REMIC II Principal Reduction Amounts: For any Distribution Date, the amounts by which the principal balances of the REMIC II Regular Interests LT5, LT6, LT7 and LT8, respectively, will be reduced on such Distribution Date by the allocation of Realized Losses and the distribution of principal, determined as follows:

For purposes of the succeeding formulas the following symbols shall have the meanings set forth below:

$Y_5 =$   the principal balance of the REMIC II Regular Interest LT5 after distributions on the prior Distribution Date.

$Y_6 =$   the principal balance of the REMIC II Regular Interest LT6 after distributions on the prior Distribution Date.

$Y_7 =$   the principal balance of the REMIC II Regular Interest LT7 after distributions on the prior Distribution Date.

$Y_8 =$   the principal balance of the REMIC II Regular Interest LT8 after distributions on the prior Distribution Date (note:   $Y_7 = Y_8$).

? $Y_5 =$   the REMIC II Regular Interest LT5 Principal Reduction Amount.

? $Y_6 =$   the REMIC II Regular Interest LT6 Principal Reduction Amount.

? $Y_7 =$   the REMIC II Regular Interest LT7 Principal Reduction Amount.

? $Y_8 =$   the REMIC II Regular Interest LT8 Principal Reduction Amount.

$Q_0 =$   the aggregate principal balance of the REMIC II Regular Interests LT5, LT6, LT7 and LT8 after distributions and the allocation of Realized Losses on the prior Distribution Date.

DOCSLA1:476701.5                                         39

CONFIDENTIAL                                                                    RC_FGIC9019_00018164

$Q_1$ =   the aggregate principal balance of the REMIC II Regular Interests LT5, LT6, LT7 and LT8 after distributions and the allocation of Realized Losses to be made on such Distribution Date.

$?Q$ =   $Q_0$ - $Q_1$ = the aggregate of the REMIC II Regular Interests LT5, LT6, LT7 and LT8 Principal Reduction Amounts.

=   the aggregate of the principal portions of Realized Losses to be allocated to, and the principal distributions to be made on, the Group II Certificates on such Distribution Date (including distributions of accrued and unpaid interest on the Class SB-II Certificates for prior Distribution Dates).

$S_0$ =   the Group II REMIC Net WAC Rate (stated as a monthly rate) after giving effect to amounts distributed and Realized Losses allocated on the prior Distribution Date.

$S_1$ =   the Group II REMIC Net WAC Rate (stated as a monthly rate) after giving effect to amounts to be distributed and Realized Losses to be allocated on such Distribution Date.

$\beta$ =   $(Y_6 + Y_7)/Q_0$. The initial value of $\beta$ on the Closing Date for use on the first Distribution Date shall be 0.0001.

$G_0$ =   the lesser of (A) the sum of (x) the sum for all Classes of Group II Certificates other than the Class SB-II Certificates of the product for each Class of (i) the monthly interest rate (as limited by the Group II Net REMIC WAC Cap Rate, if applicable) for such Class applicable for distributions to be made on such Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses on the prior Distribution Date and (y) the aggregate Group II Basis Risk Shortfalls for such Distribution Date and (B) $S_0 * Q_0$.

$G_1$ =   the lesser of (A) the sum of (x) the sum for all Classes of Group II Certificates other than the Class SB-II Certificates of the product for each Class of (i) the monthly interest rate (as limited by the Group II Net REMIC WAC Cap Rate, if applicable) for such Class applicable for distributions to be made on the next succeeding Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses to be made on such Distribution Date and (y) the aggregate Group II Basis Risk Shortfalls for the next succeeding Distribution Date and (B) $S_1 * Q_1$.

Then, based on the foregoing definitions:

$?Y_5$ =   $?Q$ - $?Y_6$ - $?Y_7$ - $?Y_8$;

$?Y_6$ =   $(\beta/2)\{(G_1S_1 - G_1S_0)/S_0S_1\}$;

$?Y_7$ =   $\beta?Q$ - $?Y_6$; and

$?Y_8$ =   $?Y_7$.

if both $?Y_6$ and $?Y_7$, as so determined, are non-negative numbers. Otherwise:

(1)     If $?Y_6$, as so determined, is negative, then

$?Y_6$ = 0;

$?Y_7 = \beta\{G_1S_0Q_0 - G_1S_1Q_1\}/\{G_1S_0\}$;

$?Y_8$ = $?Y_7$; and

CONFIDENTIAL                                                                                          RC_FGIC9019_00018165

$? Y_5 = ? Q - ? Y_6 - ? Y_7 - ? Y_8.$

(2)      If $? Y_7$, as so determined, is negative, then

$? Y_7 = 0;$

$? Y_6 = \beta \{ G_1 S_0 Q_0 - G_0 S_1 Q_1 \} / \{ 2 S_1 S_0 Q_1 - G_1 S_0 \};$

$? Y_8 = ? Y_7;$ and

$? Y_5 = ? Q - ? Y_6 - ? Y_7 - ? Y_8.$

REMIC II Realized Losses: For any Distribution Date, Realized Losses on the Group II Mortgage Loans for the related Due Period shall be allocated, as follows:  (i) the interest portion of Realized Losses, if any, shall be allocated pro rata to accrued interest on the REMIC II Regular Interests to the extent of such accrued interest, and (ii) any remaining interest portions of Realized Losses and any principal portions of Realized Losses shall be treated as principal portions of Realized Losses and allocated (i) to the REMIC II Regular Interest LT6, REMIC II Regular Interest LT7 and REMIC I Regular Interest LT8, pro rata according to their respective Principal Reduction Amounts, provided that such allocation to each of the REMIC II Regular Interest LT6, REMIC II Regular Interest LT7 and REMIC II Regular Interest LT8 shall not exceed their respective Principal Reduction Amounts for such Distribution Date, and (ii) any Realized Losses not allocated to any of REMIC II Regular Interest LT6, REMIC II Regular Interest LT7 or REMIC II Regular Interest LT8 pursuant to the proviso of clause (i) above shall be allocated to the REMIC II Regular Interest LT5.

REMIC II Regular Interests: REMIC II Regular Interest LT5, REMIC II Regular Interest LT6, REMIC II Regular Interest LT7 and REMIC II Regular Interest LT8.

REMIC II Regular Interest LT5: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT5 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT5 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT5 on such Distribution Date.

REMIC II Regular Interest LT6: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT6 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT6 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT6 on such Distribution Date.

REMIC II Regular Interest LT7: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

CONFIDENTIAL                                                                 RC_FGIC9019_00018166

REMIC II Regular Interest LT7 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT7 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT7 on such Distribution Date.

REMIC II Regular Interest LT8: A regular interest in REMIC II that is held as an asset of REMIC III, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC II Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest LT8 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC II Regular Interest LT8 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC II Regular Interest LT8 on such Distribution Date.

REMIC III: The segregated pool of assets subject hereto, constituting a portion of the primary trust created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be made, consisting of the REMIC I Regular Interests and REMIC II Regular Interests.

REMIC III Regular Interest A-II-A: A regular interest in REMIC III which is has a principal balance equal to the principal balance of the Class A-II-A Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class A-II-A Margin and (ii) the Group II Weighted Average Maximum Net Mortgage Rate multiplied by a fraction whose numerator is 30 and whose denominator is the actual number of days in the related Interest Accrual Period, accruing during each Accrual Period for the Class A-II-A Certificates on the basis of a year of 360 days and the actual number of days in such Accrual Period. Interest accrued in any Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC III Regular Interest A-II-B1: A regular interest in REMIC III which is has a principal balance equal to the principal balance of the Class A-II-B1 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class A-II-B1 Margin and (ii) the Group II Weighted Average Maximum Net Mortgage Rate multiplied by a fraction whose numerator is 30 and whose denominator is the actual number of days in the related Interest Accrual Period, accruing during each Accrual Period for the Class A-II-B1 Certificates on the basis of a year of 360 days and the actual number of days in such Accrual Period. Interest accrued in any Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC III Regular Interest A-II-B2: A regular interest in REMIC III which is has a principal balance equal to the principal balance of the Class A-II-B2 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class A-II-B2 Margin and (ii) the Group II Weighted Average Maximum Net Mortgage Rate multiplied by a fraction whose numerator is 30 and whose denominator is the actual number of days in the related Interest Accrual Period, accruing during each Accrual Period for the Class A-II-B2 Certificates on the basis of a year of 360 days and the actual number of days in such Accrual Period. Interest accrued in any Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC III Regular Interest A-II-B3: A regular interest in REMIC III which is has a principal balance equal to the principal balance of the Class A-II-B3 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class A-II-B3 Margin and (ii) the Group II Weighted Average Maximum Net Mortgage Rate multiplied by a fraction whose numerator is 30 and whose denominator is the actual number of days in the related Interest Accrual Period, accruing during each Accrual Period for the Class A-II-B3 Certificates on the basis of a year of 360 days and the actual number

CONFIDENTIAL                                                                    RC_FGIC9019_00018167

of days in such Accrual Period. Interest accrued in any Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC Provisions: Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at Sections 860A through 860G of Subchapter M of Chapter 1 of the Code, and related provisions, and temporary and final regulations (or, to the extent not inconsistent with such temporary or final regulations, proposed regulations) and published rulings, notices and announcements promulgated thereunder, as the foregoing may be in effect from time to time.

REO Acquisition: The acquisition by the Master Servicer on behalf of the Trustee for the benefit of the Certificateholders of any REO Property pursuant to Section 3.14.

REO Disposition: With respect to any REO Property, a determination by the Master Servicer that it has received substantially all Insurance Proceeds, Liquidation Proceeds, REO Proceeds and other payments and recoveries (including proceeds of a final sale) which the Master Servicer expects to be finally recoverable from the sale or other disposition of the REO Property.

REO Imputed Interest: With respect to any REO Property, for any period, an amount equivalent to interest (at a rate equal to the sum of the Net Mortgage Rate, the Mortgage Insurance Premium Rate, if any, and the applicable Certificate Insurer Premium Modified Rate, that would have been applicable to the related Mortgage Loan had it been outstanding) on the unpaid principal balance of the Mortgage Loan as of the date of acquisition thereof for such period.

REO Proceeds: Proceeds, net of expenses, received in respect of any REO Property (including, without limitation, proceeds from the rental of the related Mortgaged Property) which proceeds are required to be deposited into the Custodial Account only upon the related REO Disposition.

REO Property: A Mortgaged Property acquired by the Master Servicer on behalf of the Trustee for the benefit of the Certificateholders and the Certificate Insurer through foreclosure or deed in lieu of foreclosure in connection with a defaulted Mortgage Loan.

Reportable Modified Mortgage Loan: Any Mortgage Loan that (a) has been subject to an interest rate reduction, (b) has been subject to a term extension or (c) has had amounts owing on such Mortgage Loan capitalized by adding such amount to the Stated Principal Balance of such Mortgage Loan; *provided*, *however*, that a Mortgage Loan modified in accordance with (a) above for a temporary period shall not be a Reportable Modified Mortgage Loan if such Mortgage Loan has not been delinquent in payments of principal and interest for six months since the date of such modification if that interest rate reduction is not made permanent thereafter.

Repurchase Event: As defined in the Assignment Agreement.

Request for Release: A request for release, the forms of which are attached as Exhibit G hereto, or an electronic request in a form acceptable to the Custodian.

Required Insurance Policy: With respect to any Mortgage Loan, any insurance policy which is required to be maintained from time to time under this Agreement, the Program Guide or the related Subservicing Agreement in respect of such Mortgage Loan.

Residential Funding: Residential Funding Corporation, a Delaware corporation, in its capacity as seller of the Mortgage Loans to the Depositor and any successor thereto.

CONFIDENTIAL                                                                      RC_FGIC9019_00018168

Responsible Officer: When used with respect to the Trustee, any officer of the Corporate Trust Department of the Trustee, including any Senior Vice President, any Vice President, any Assistant Vice President, any Assistant Secretary, any Trust Officer or Assistant Trust Officer, or any other officer of the Trustee, in each case, with direct responsibility for the administration of this Agreement.

Rolling Three-Month Delinquency Ratio: As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio for the Mortgage Loans for each of the three (or one and two, in the case of the first and second Distribution Dates) immediately preceding Due Periods.

Rule 144A: Rule 144A under the Securities Act of 1933, as in effect from time to time.

Seller: With respect to any Mortgage Loan, a Person, including any Subservicer, that executed a Seller's Agreement applicable to such Mortgage Loan.

Seller's Agreement: An agreement for the origination and sale of Mortgage Loans generally in the form of the seller contract referred to or contained in the Program Guide, or in such other form as has been approved by the Master Servicer and the Depositor, each containing representations and warranties in respect of one or more Mortgage Loans.

Servicing Accounts: The account or accounts created and maintained pursuant to Section 3.08.

Servicing Advances: All customary, reasonable and necessary "out of pocket" costs and expenses incurred in connection with a default, delinquency or other unanticipated event by the Master Servicer or a Subservicer in the performance of its servicing obligations, including, but not limited to, the cost of (i) the preservation, restoration and protection of a Mortgaged Property or, with respect to a cooperative loan, the related cooperative apartment, (ii) any enforcement or judicial proceedings, including foreclosures, including any expenses incurred in relation to any such proceedings that result from the Mortgage Loan being registered on the MERS® System, (iii) the management and liquidation of any REO Property, (iv) any mitigation procedures implemented in accordance with Section 3.07, and (v) compliance with the obligations under Sections 3.01, 3.08, 3.11, 3.12(a) and 3.14, including, if the Master Servicer or any Affiliate of the Master Servicer provides services such as appraisals and brokerage services that are customarily provided by Persons other than servicers of mortgage loans, reasonable compensation for such services.

Servicing Fee: With respect to any Mortgage Loan and Distribution Date, the fee payable monthly to the Master Servicer in respect of master servicing compensation that accrues at an annual rate equal to the Servicing Fee Rate multiplied by the Stated Principal Balance of such Mortgage Loan as of the related Due Date in the related Due Period, as may be adjusted pursuant to Section 3.16(e).

Servicing Fee Rate: With respect to any Mortgage Loan, the per annum rate designated on the Mortgage Loan Schedule as the "MSTR SERV FEE," as may be adjusted with respect to successor Master Servicers as provided in Section 7.02, which rate shall never be greater than the Mortgage Rate of such Mortgage Loan.

Servicing Modification: Any reduction of the interest rate on or the Stated Principal Balance of a Mortgage Loan, any extension of the final maturity date of a Mortgage Loan, and any increase to the Stated Principal Balance of a Mortgage Loan by adding to the Stated Principal Balance unpaid principal and interest and other amounts owing under the Mortgage Loan, in each case pursuant to a modification of a Mortgage Loan that is in default, or for which, in the judgment of the Master Servicer, default is reasonably foreseeable in accordance with Section 3.07(a).

CONFIDENTIAL                                                                              RC_FGIC9019_00018169

Servicing Officer:  Any officer of the Master Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name and specimen signature appear on a list of servicing officers furnished to the Trustee by the Master Servicer on the Closing Date, as such list may from time to time be amended.

Servicing Trigger:  As of any Distribution Date, for purposes of Section 7.05 hereof, the occurrence of any of the following scenarios:

(a)    the Rolling Three-Month Delinquency Ratio is greater than 20.00% for the then-current Distribution Date; or

(b)    the aggregate Realized Losses on the Mortgage Loans exceed (i) with respect to the 31st through the 36th Distribution Dates, inclusive, 2.00% of the aggregate Cut-off Date Principal Balance, (ii) with respect to the 37th through the 48th Distribution Dates, inclusive, 3.00% of the aggregate Cut-off Date Principal Balance, (iii) with respect to the 49th through 60th Distribution Dates, inclusive, 4.00%, and (iv) with respect to all Distribution Dates thereafter, 5.00% of the aggregate Cut-off Date Principal Balance.

Standard & Poor's:  Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. or its successors in interest.

Startup Date:  The day designated as such pursuant to Article X hereof.

Stated Principal Balance:  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the sum of (a) the Cut-off Date Principal Balance of the Mortgage Loan and (b) any amount by which the Stated Principal Balance of the Mortgage Loan has been increased pursuant to a Servicing Modification, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending with the Due Period relating to the most recent Distribution Date which were received or with respect to which an Advance was made, (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized Loss incurred with respect to such Mortgage Loan allocated to Certificateholders with respect thereto for any previous Distribution Date.

Sub-Group:  Each sub-group of Loan Group II referred to as Loan Group II-A and Loan Group II-B.

Subordination:  The provisions described in Section 4.05 relating to the allocation of Realized Losses.

Subsequent Recoveries:  As of any Distribution Date, amounts received by the Master Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 3.10) or surplus amounts held by the Master Servicer to cover estimated expenses (including, but not limited to, recoveries in respect of the representations and warranties made by the related Seller pursuant to the applicable Seller's Agreement and assigned to the Trustee pursuant to Section 2.04) specifically related to a Mortgage Loan that was the subject of a Cash Liquidation or an REO Disposition prior to the related Prepayment Period that resulted in a Realized Loss.

CONFIDENTIAL    RC_FGIC9019_00018170

Subserviced Mortgage Loan: Any Mortgage Loan that, at the time of reference thereto, is subject to a Subservicing Agreement.

Subservicer: Any Person with whom the Master Servicer has entered into a Subservicing Agreement and who generally satisfied the requirements set forth in the Program Guide in respect of the qualification of a Subservicer as of the date of its approval as a Subservicer by the Master Servicer.

Subservicer Advance: Any delinquent installment of principal and interest on a Mortgage Loan which is advanced by the related Subservicer (net of its Subservicing Fee) pursuant to the Subservicing Agreement.

Subservicing Account: An account established by a Subservicer in accordance with Section 3.08.

Subservicing Agreement: The written contract between the Master Servicer and any Subservicer relating to servicing and administration of certain Mortgage Loans as provided in Section 3.02, generally in the form of the servicer contract referred to or contained in the Program Guide or in such other form as has been approved by the Master Servicer and the Depositor.

Subservicing Fee: With respect to any Mortgage Loan, the fee payable monthly to the related Subservicer (or, in the case of a Nonsubserviced Mortgage Loan, to the Master Servicer) in respect of subservicing and other compensation that accrues with respect to each Distribution Date at an annual rate designated as "SUBSERV FEE" on the Mortgage Loan Schedule.

Tax Returns: The federal income tax return on Internal Revenue Service Form 1066, U.S. Real Estate Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice to Residual Interest Holders of REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be filed on behalf of REMIC I, REMIC II and REMIC III due to their classification as REMICs under the REMIC Provisions, together with any and all other information, reports or returns that may be required to be furnished to the Certificateholders or filed with the Internal Revenue Service or any other governmental taxing authority under any applicable provisions of federal, state or local tax laws.

Transfer: Any direct or indirect transfer, sale, pledge, hypothecation or other form of assignment of any Ownership Interest in a Certificate.

Transferee: Any Person who is acquiring by Transfer any Ownership Interest in a Certificate.

Transferor: Any Person who is disposing by Transfer of any Ownership Interest in a Certificate.

Trustee: As defined in the preamble hereto.

Trust Fund: The segregated pool of assets subject hereto, consisting of: (i) the Mortgage Loans and the related Mortgage Files; (ii) all payments on and collections in respect of the Mortgage Loans due after the Cut-off Date (other than Monthly Payments due in the month of the Cut-off Date) as shall be on deposit in the Custodial Account or in the Certificate Account and identified as belonging to the Trust Fund; (iii) property which secured a Mortgage Loan and which has been acquired for the benefit of the Certificateholders by foreclosure or deed in lieu of foreclosure; (iv) the hazard insurance policies and Primary Insurance Policies pertaining to the Mortgage Loans, if any, and rights under the MI Policy pertaining to certain Mortgage Loans, if any; and (v) all proceeds of clauses (i) through (iv) above.

Twelve-Month Loss Amount: With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.

CONFIDENTIAL                                                          RC_FGIC9019_00018171

Uniform Single Attestation Program for Mortgage Bankers: The Uniform Single Attestation Program for Mortgage Bankers, as published by the Mortgage Bankers Association of America and effective with respect to fiscal periods ending on or after December 15, 1995.

Uncertificated Accrued Interest: With respect to any Uncertificated Regular Interest for any Distribution Date, one month's interest at the related Uncertificated Pass-Through Rate for such Distribution Date, accrued on the Uncertificated Principal Balance or Uncertificated Notional Amount, as applicable, immediately prior to such Distribution Date. Uncertificated Accrued Interest for the Uncertificated Regular Interests shall accrue on the basis of a 360-day year consisting of twelve 30-day months. For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC I Regular Interest for any Distribution Date, any Prepayment Interest Shortfalls (to the extent not covered by Compensating Interest) relating to the Group I Loans for any Distribution Date shall be allocated among REMIC I Regular Interests LT1, LT2, LT3 and LT4, pro rata, based on, and to the extent of, Uncertificated Accrued Interest, as calculated without application of this sentence. For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC II Regular Interest for any Distribution Date, any Prepayment Interest Shortfalls (to the extent not covered by Compensating Interest) relating to the Group II Loans for any Distribution Date shall be allocated among REMIC II Regular Interests LT5, LT6, LT7 and LT8, pro rata, based on, and to the extent of, Uncertificated Accrued Interest, as calculated without application of this sentence. Uncertificated Accrued Interest on the REMIC III Regular Interest SB-I-PO and SB-II-PO shall be zero. Uncertificated Accrued Interest on the REMIC III Regular Interest SB-I-IO for each Distribution Date shall equal Accrued Certificate Interest for the Class SB-I Certificates and Uncertificated Accrued Interest on the REMIC III Regular Interest SB-II-IO for each Distribution Date shall equal Accrued Certificate Interest for the Class SB-II Certificates.

Uncertificated Notional Amount: With respect to REMIC III Regular Interest SB-I-IO or REMIC III Regular Interest SB-II-IO, the notional amount for such Class.

Uncertificated Pass-Through Rate: The Uncertificated REMIC I Pass-Through Rate or Uncertificated REMIC II Pass-Through Rate, as applicable.

Uncertificated Principal Balance: The principal amount of any Uncertificated Regular Interest outstanding as of any date of determination. The Uncertificated Principal Balance of each REMIC Regular Interest shall never be less than zero. With respect to the REMIC III Regular Interest SB-I-PO or REMIC III Regular Interest SB-II-PO, the initial amount set forth with respect thereto in the Preliminary Statement as reduced by distributions deemed made in respect thereof pursuant to Section 4.02 and Realized Losses allocated thereto pursuant to Section 4.05.

Uncertificated Regular Interests: The REMIC I Regular Interests, the REMIC II Regular Interests, the REMIC III Regular Interest SB-I-PO, the REMIC III Regular Interest SB-II-PO, the REMIC III Regular Interest SB-I-IO and the REMIC III Regular Interest SB-II-IO.

Uncertificated REMIC I Pass-Through Rate: With respect to the REMIC I Regular Interest LT1 and the REMIC I Regular Interest LT2 and any Distribution Date, a per annum rate equal to the Group I Net WAC Cap Rate for that Distribution Date. With respect to the REMIC I Regular Interest LT3 and any Distribution Date, 0.00%. With respect to the REMIC I Regular Interest LT4 and any Distribution Date, a per annum rate equal to twice the Group I Net WAC Cap Rate for that Distribution Date.

Uncertificated REMIC II Pass-Through Rate: With respect to the REMIC II Regular Interest LT7 and any Distribution Date, 0.00%. With respect to the REMIC II Regular Interest LT5 and the REMIC II Regular Interest LT6 and any Distribution Date, a per annum rate equal to the Group II REMIC Net WAC

CONFIDENTIAL    RC_FGIC9019_00018172

Rate for that Distribution Date.  With respect to the REMIC II Regular Interest LT8 and any Distribution Date, a per annum rate equal to twice the Group II REMIC Net WAC Rate for that Distribution Date.

Uninsured Cause:  Any cause of damage to property subject to a Mortgage such that the complete restoration of such property is not fully reimbursable by the hazard insurance policies.

United States Person:  A citizen or resident of the United States, a corporation, partnership or other entity (treated as a corporation or partnership for United States federal income tax purposes) created or organized in, or under the laws of, the United States, any state thereof, or the District of Columbia (except in the case of a partnership, to the extent provided in Treasury regulations) *provided* that, for purposes solely of the restrictions on the transfer of Class R Certificates, no partnership or other entity treated as a partnership for United States federal income tax purposes shall be treated as a United States Person unless all persons that own an interest in such partnership either directly or through any entity that is not a corporation for United States federal income tax purposes are required by the applicable operative agreement to be United States Persons, or an estate that is described in Section 7701(a)(30)(D) of the Code, or a trust that is described in Section 7701(a)(30)(E) of the Code.

Voting Rights:  The portion of the voting rights of all of the Certificates which is allocated to any Certificate. 98.00% of all of the Voting Rights shall be allocated among Holders of the Class A Certificates, in proportion to the outstanding Certificate Principal Balances of their respective Certificates; 1% of all of the Voting Rights shall be allocated to the Holders of the Class SB Certificates, and 0.33%, 0.33% and 0.34% of all of the Voting Rights shall be allocated to the Holders of the Class R-I Certificates, Class R-II Certificates and Class R-III Certificates, respectively; in each case to be allocated among the Certificates of such Class in accordance with their respective Percentage Interest; *provided*, that as long as there is no Certificate Insurer Default, the Voting Rights of the Class A Certificateholders may be exercised by the Certificate Insurer without the consent of such Holders and may only be exercised by such Holders with the prior written consent of the Certificate Insurer.

CONFIDENTIAL                                                                    RC_FGIC9019_00018173

Section 1.02.   Determination of LIBOR.

LIBOR applicable to the calculation of the Pass-Through Rate on the LIBOR Certificates for any Interest Accrual Period will be determined as of each LIBOR Rate Adjustment Date. On each LIBOR Rate Adjustment Date, or if such LIBOR Rate Adjustment Date is not a Business Day, then on the next succeeding Business Day, LIBOR shall be established by the Trustee and, as to any Interest Accrual Period, will equal the rate for one month United States dollar deposits that appears on the Telerate Screen Page 3750 as of 11:00 a.m., London time, on such LIBOR Rate Adjustment Date. "Telerate Screen Page 3750" means the display designated as page 3750 on the Bridge Telerate Service (or such other page as may replace page 3750 on that service for the purpose of displaying London interbank offered rates of major banks). If such rate does not appear on such page (or such other page as may replace that page on that service, or if such service is no longer offered, LIBOR shall be so established by use of such other service for displaying LIBOR or comparable rates as may be selected by the Trustee after consultation with the Master Servicer), the rate will be the Reference Bank Rate. The "Reference Bank Rate" will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the reference banks (which shall be any three major banks that are engaged in transactions in the London interbank market, selected by the Trustee after consultation with the Master Servicer) as of 11:00 a.m., London time, on the LIBOR Rate Adjustment Date to prime banks in the London interbank market for a period of one month in amounts approximately equal to the aggregate Certificate Principal Balance of the LIBOR Certificates then outstanding. The Trustee will request the principal London office of each of the reference banks to provide a quotation of its rate. If at least two such quotations are provided, the rate will be the arithmetic mean of the quotations rounded up to the next multiple of 1/16%. If on such date fewer than two quotations are provided as requested, the rate will be the arithmetic mean of the rates quoted by one or more major banks in New York City, selected by the Trustee after consultation with the Master Servicer, as of 11:00 a.m., New York City time, on such date for loans in U.S. Dollars to leading European banks for a period of one month in amounts approximately equal to the aggregate Certificate Principal Balance of the LIBOR Certificates then outstanding. If no such quotations can be obtained, the rate will be LIBOR for the prior Distribution Date; provided however, if, under the priorities described above, LIBOR for a Distribution Date would be based on LIBOR for the previous Distribution Date for the third consecutive Distribution Date, the Trustee, shall select an alternative comparable index (over which the Trustee has no control), used for determining one-month Eurodollar lending rates that is calculated and published (or otherwise made available) by an independent party. The establishment of LIBOR by the Trustee on any LIBOR Rate Adjustment Date and the Trustee's subsequent calculation of the Pass-Through Rate applicable to the LIBOR Certificates for the relevant Interest Accrual Period, in the absence of manifest error, will be final and binding. Promptly following each LIBOR Rate Adjustment Date the Trustee shall supply the Master Servicer with the results of its determination of LIBOR on such date. Furthermore, the Trustee will supply to any Certificateholder so requesting by calling the Bondholder Inquiry Line at 1-800-275-2048 the Pass-Through Rate on the LIBOR Certificates for the current and the immediately preceding Interest Accrual Period.

CONFIDENTIAL                                                                    RC_FGIC9019_00018174

## ARTICLE II
## CONVEYANCE OF MORTGAGE LOANS;
## ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01.    Conveyance of Mortgage Loans.

(a)    The Depositor, concurrently with the execution and delivery hereof, does hereby assign to the Trustee in respect of the Trust Fund without recourse all the right, title and interest of the Depositor in and to (i) the Mortgage Loans, including all interest and principal on or with respect to the Mortgage Loans due on or after the Cut-off Date (other than Monthly Payments due in the month of the Cut-off Date); (ii) the Mortgage Insurance Premium Taxes Reserve Fund Deposit; and (iii) all proceeds of the foregoing.

(b)    In connection with such assignment, and contemporaneously with the delivery of this Agreement, the Depositor delivered or caused to be delivered hereunder to the Trustee, each of the Certificate Guaranty Insurance Policies, the Hedge Agreement (the delivery of which shall evidence that the fixed payment for the Hedge Agreement has been paid and the Trustee and the Trust Fund shall have no further payment obligation thereunder and that such fixed payment has been authorized hereby) and the MI Policy, and except as set forth in Section 2.01(c) below and subject to Section 2.01(d) below, the Depositor does hereby deliver to, and deposit with, the Trustee, or to and with one or more Custodians, as the duly appointed agent or agents of the Trustee for such purpose, the following documents or instruments (or copies thereof as permitted by this Section) with respect to each Mortgage Loan so assigned:

(i)    The original Mortgage Note, endorsed without recourse to the order of the Trustee and showing an unbroken chain of endorsements from the originator thereof to the Person endorsing it to the Trustee, or with respect to any Destroyed Mortgage Note, an original lost note affidavit from the related Seller or Residential Funding stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note;

(ii)    The original Mortgage, noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recording indicated thereon or, if the original Mortgage has not yet been returned from the public recording office, a copy of the original Mortgage with evidence of recording indicated thereon;

(iii)    Unless the Mortgage Loan is registered on the MERS® System, the assignment (which may be included in one or more blanket assignments if permitted by applicable law) of the Mortgage to the Trustee with evidence of recording indicated thereon or a copy of such assignment with evidence of recording indicated thereon;

(iv)    The original recorded assignment or assignments of the Mortgage showing an unbroken chain of title from the originator to the Person assigning it to the Trustee (or to MERS, if the Mortgage Loan is registered on the MERS® System and noting the presence of a MIN) with evidence of recordation noted thereon or attached thereto, or a copy of such assignment or assignments of the Mortgage with evidence of recording indicated thereon; and

(v)    The original of each modification, assumption agreement or preferred loan agreement, if any, relating to such Mortgage Loan, or a copy of each modification, assumption agreement or preferred loan agreement.

CONFIDENTIAL                                                    RC_FGIC9019_00018175

The Depositor may, in lieu of delivering the original of the documents set forth in Section 2.01(b)(ii), (iii), (iv) and (v) (or copies thereof as permitted by Section 2.01(b)) to the Trustee or the Custodian or Custodians, deliver such documents to the Master Servicer, and the Master Servicer shall hold such documents in trust for the use and benefit of all present and future Certificateholders until such time as is set forth in the next sentence. Within thirty Business Days following the earlier of (i) the receipt of the original of all of the documents or instruments set forth in Section 2.01(b)(ii), (iii), (iv) and (v) (or copies thereof as permitted by such Section) for any Mortgage Loan and (ii) a written request by the Trustee to deliver those documents with respect to any or all of the Mortgage Loans then being held by the Master Servicer, the Master Servicer shall deliver a complete set of such documents to the Trustee or the Custodian or Custodians that are the duly appointed agent or agents of the Trustee.

(c)    Notwithstanding the provisions of Section 2.01(b), in the event that in connection with any Mortgage Loan, if the Depositor cannot deliver the original of the Mortgage, any assignment, modification, assumption agreement or preferred loan agreement (or copy thereof as permitted by Section 2.01(b)) with evidence of recording thereon concurrently with the execution and delivery of this Agreement because of (i) a delay caused by the public recording office where such Mortgage, assignment, modification, assumption agreement or preferred loan agreement as the case may be, has been delivered for recordation, or (ii) a delay in the receipt of certain information necessary to prepare the related assignments, the Depositor shall deliver or cause to be delivered to the Trustee or the respective Custodian a copy of such Mortgage, assignment, modification, assumption agreement or preferred loan agreement.

The Depositor shall promptly cause to be recorded in the appropriate public office for real property records the Assignment referred to in clause (iii) of Section 2.01(b), except (a) in states where, in the opinion of counsel acceptable to the Trustee, the Certificate Insurer and the Master Servicer, such recording is not required to protect the Trustee's interests in the Mortgage Loan or (b) if MERS is identified on the Mortgage or on a properly recorded assignment of the Mortgage, as applicable, as the mortgagee of record solely as nominee for Residential Funding and its successors and assigns. If any Assignment is lost or returned unrecorded to the Depositor because of any defect therein, the Depositor shall prepare a substitute Assignment or cure such defect, as the case may be, and cause such Assignment to be recorded in accordance with this paragraph. The Depositor shall promptly deliver or cause to be delivered to the Trustee or the respective Custodian such Mortgage or Assignment, as applicable (or copy thereof as permitted by Section 2.01(b)), with evidence of recording indicated thereon upon receipt thereof from the public recording office or from the related Subservicer or Seller.

If the Depositor delivers to the Trustee or Custodian any Mortgage Note or Assignment of Mortgage in blank, the Depositor shall, or shall cause the Custodian to, complete the endorsement of the Mortgage Note and the Assignment of Mortgage in the name of the Trustee in conjunction with the Interim Certification issued by the Custodian, as contemplated by Section 2.02.

Any of the items set forth in Sections 2.01(b)(ii), (iii), (iv) and (v) and that may be delivered as a copy rather than the original may be delivered to the Trustee or the Custodian.

In connection with the assignment of any Mortgage Loan registered on the MERS® System, the Depositor further agrees that it will cause, at the Depositor's own expense, within 30 Business Days after the Closing Date, the MERS® System to indicate that such Mortgage Loans have been assigned by the Depositor to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files (a) the code in the field which identifies the specific Trustee and (b) the code in the field "Pool Field" which identifies the series of the Certificates issued in connection with such Mortgage Loans. The Depositor further agrees that it will not, and will not permit the Master

DOCSLA1:476701.5                                              51

Servicer to, and the Master Servicer agrees that it will not, alter the codes referenced in this paragraph
with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage
Loan is repurchased in accordance with the terms of this Agreement.

(d)    It is intended that the conveyances by the Depositor to the Trustee of the Mortgage Loans
as provided for in this Section 2.01 and the Uncertificated Regular Interests be construed as a sale by the
Depositor to the Trustee of the Mortgage Loans and the Uncertificated Regular Interests for the benefit of
the Certificateholders. Further, it is not intended that any such conveyance be deemed to be a pledge of
the Mortgage Loans and the Uncertificated Regular Interests by the Depositor to the Trustee to secure a
debt or other obligation of the Depositor. Nonetheless, (a) this Agreement is intended to be and hereby is
a security agreement within the meaning of Articles 8 and 9 of the New York Uniform Commercial Code
and the Uniform Commercial Code of any other applicable jurisdiction; (b) the conveyances provided for
in this Section 2.01 shall be deemed to be (1) a grant by the Depositor to the Trustee of a security interest
in all of the Depositor's right (including the power to convey title thereto), title and interest, whether now
owned or hereafter acquired, in and to (A) the Mortgage Loans, including the related Mortgage Note, the
Mortgage, any insurance policies and all other documents in the related Mortgage File, (B) all amounts
payable pursuant to the Mortgage Loans in accordance with the terms thereof, (C) any Uncertificated
Regular Interests and any and all general intangibles, payment intangibles, accounts, chattel paper,
instruments, documents, money, deposit accounts, certificates of deposit, goods, letters of credit, advices
of credit and investment property and other property of whatever kind or description now existing or
hereafter acquired consisting of, arising from or relating to any of the foregoing, and (D) all proceeds of
the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other
property, including without limitation all amounts from time to time held or invested in the Certificate
Account or the Custodial Account, whether in the form of cash, instruments, securities or other property
and (2) an assignment by the Depositor to the Trustee of any security interest in any and all of Residential
Funding's right (including the power to convey title thereto), title and interest, whether now owned or
hereafter acquired, in and to the property described in the foregoing clauses (1)(A), (B), (C) and (D)
granted by Residential Funding to the Depositor pursuant to the Assignment Agreement; (c) the
possession by the Trustee, the Custodian or any other agent of the Trustee of Mortgage Notes or such
other items of property as constitute instruments, money, payment intangibles, negotiable documents,
goods, deposit accounts, letters of credit, advices of credit, investment property, certificated securities or
chattel paper shall be deemed to be "possession by the secured party," or possession by a purchaser or a
person designated by such secured party, for purposes of perfecting the security interest pursuant to the
Minnesota Uniform Commercial Code and the Uniform Commercial Code of any other applicable
jurisdiction as in effect (including, without limitation, Sections 8-106, 9-313 and 9-106 thereof); and
(d) notifications to persons holding such property, and acknowledgments, receipts or confirmations from
persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or
confirmations from, securities intermediaries, bailees or agents of, or persons holding for, (as applicable)
the Trustee for the purpose of perfecting such security interest under applicable law.

The Depositor and, at the Depositor's direction, Residential Funding and the Trustee shall, to the
extent consistent with this Agreement, take such reasonable actions as may be necessary to ensure that, if
this Agreement were deemed to create a security interest in the Mortgage Loans and the Uncertificated
Regular Interests and the other property described above, such security interest would be deemed to be a
perfected security interest of first priority under applicable law and will be maintained as such throughout
the term of this Agreement. Without limiting the generality of the foregoing, the Depositor shall prepare
and deliver to the Trustee not less than 15 days prior to any filing date and, the Trustee shall forward for
filing, or shall cause to be forwarded for filing, at the expense of the Depositor, all filings necessary to
maintain the effectiveness of any original filings necessary under the Uniform Commercial Code as in
effect in any jurisdiction to perfect the Trustee's security interest in or lien on the Mortgage Loans and the
Uncertificated Regular Interests, as evidenced by an Officers Certificate of the Depositor, with a copy

DOCSLA1:476701.5                                    52

delivered to the Certificate Insurer, including without limitation (x) continuation statements, and (y) such other statements as may be occasioned by (1) any change of name of Residential Funding, the Depositor or the Trustee (such preparation and filing shall be at the expense of the Trustee, if occasioned by a change in the Trustee's name), (2) any change of location of the place of business or the chief executive office of Residential Funding or the Depositor, (3) any transfer of any interest of Residential Funding or the Depositor in any Mortgage Loan or (4) any transfer of any interest of Residential Funding or the Depositor in any Uncertificated Regular Interests.

Section 2.02.    Acceptance by Trustee.

The Trustee acknowledges receipt (or, with respect to Mortgage Loans subject to a Custodial Agreement, and based solely upon a receipt or certification executed by the Custodian, receipt by the respective Custodian as the duly appointed agent of the Trustee) of the documents referred to in Section 2.01(b)(i) above (except that for purposes of such acknowledgement only, a Mortgage Note may be endorsed in blank and an Assignment of Mortgage may be in blank) and declares that it, or a Custodian as its agent, holds and will hold such documents and the other documents constituting a part of the Mortgage Files delivered to it, or a Custodian as its agent, in trust for the use and benefit of all present and future Certificateholders and the Certificate Insurer. The Trustee or Custodian (such Custodian being so obligated under a Custodial Agreement) agrees, for the benefit of Certificateholders and the Certificate Insurer, to review each Mortgage File delivered to it pursuant to Section 2.01(b) within 90 days after the Closing Date to ascertain that all required documents (specifically as set forth in Section 2.01(b)), have been executed and received, and that such documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule, as supplemented, that have been conveyed to it, and to deliver to the Trustee a certificate (the "Interim Certification") to the effect that all documents required to be delivered pursuant to Section 2.01(b) above have been executed and received and that such documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule, except for any exceptions listed on Schedule A attached to such Interim Certification. Upon delivery of the Mortgage Files by the Depositor or the Master Servicer, the Trustee shall acknowledge receipt (or, with respect to Mortgage Loans subject to a Custodial Agreement, and based solely upon a receipt or certification executed by the Custodian, receipt by the respective Custodian as the duly appointed agent of the Trustee) of the documents referred to in Section 2.01(b) above.

If the Custodian, as the Trustee's agent, finds any document or documents constituting a part of a Mortgage File to be missing or defective, upon receipt of notification from the Custodian as specified in the succeeding sentence, the Trustee shall promptly so notify or cause the Custodian to notify the Master Servicer and the Depositor. Pursuant to Section 2.03 of the Custodial Agreement, the Custodian will notify the Master Servicer, the Depositor and the Trustee of any such omission or defect found by it in respect of any Mortgage File held by it in respect of the items received by it pursuant to the Custodial Agreement. If such omission or defect materially and adversely affects the interests in the related Mortgage Loan of the Certificateholders or the Certificate Insurer, the Master Servicer shall promptly notify the related Subservicer or Seller of such omission or defect and request that such Subservicer or Seller correct or cure such omission or defect within 60 days from the date the Master Servicer was notified of such omission or defect and, if such Subservicer or Seller does not correct or cure such omission or defect within such period, that such Subservicer or Seller purchase such Mortgage Loan from the Trust Fund at its Purchase Price, in either case within 90 days from the date the Master Servicer was notified of such omission or defect; provided that if the omission or defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase must occur within 90 days from the date such breach was discovered. The Purchase Price for any such Mortgage Loan shall be deposited or caused to be deposited by the Master Servicer in the Custodial Account maintained by it pursuant to Section 3.07 and, upon receipt by the Trustee of written notification of such deposit signed by a Servicing Officer, the Trustee or any Custodian, as the case may

DOCSLA1:476701.5                                      53

CONFIDENTIAL                                                                        RC_FGIC9019_00018178

be, shall release to the Master Servicer the related Mortgage File and the Trustee shall execute and deliver such instruments of transfer or assignment prepared by the Master Servicer, in each case without recourse, as shall be necessary to vest in the Subservicer or Seller or its designee, as the case may be, any Mortgage Loan released pursuant hereto and thereafter such Mortgage Loan shall not be part of the Trust Fund. In furtherance of the foregoing and Section 2.04, if the Subservicer or Seller or Residential Funding that repurchases the Mortgage Loan is not a member of MERS and the Mortgage is registered on the MERS® System, the Master Servicer, at its own expense and without any right of reimbursement, shall cause MERS to execute and deliver an assignment of the Mortgage in recordable form to transfer the Mortgage from MERS to such Subservicer or Seller or Residential Funding and shall cause such Mortgage to be removed from registration on the MERS® System in accordance with MERS' rules and regulations. It is understood and agreed that the obligation of the Subservicer or Seller, to so cure or purchase any Mortgage Loan as to which a material and adverse defect in or omission of a constituent document exists shall constitute the sole remedy respecting such defect or omission available to Certificateholders or the Trustee on behalf of Certificateholders (except for the Certificate Insurer's rights under the Insurance Agreement).

Section 2.03.    Representations, Warranties and Covenants of the Master Servicer and the Depositor.

(a)    The Master Servicer hereby represents and warrants to the Trustee for the benefit of the Certificateholders and the Certificate Insurer that:

(i)    The Master Servicer is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and is or will be in compliance with the laws of each state in which any Mortgaged Property is located to the extent necessary to ensure the enforceability of each Mortgage Loan in accordance with the terms of this Agreement;

(ii)    The execution and delivery of this Agreement by the Master Servicer and its performance and compliance with the terms of this Agreement will not violate the Master Servicer's Certificate of Incorporation or Bylaws or constitute a material default (or an event which, with notice or lapse of time, or both, would constitute a material default) under, or result in the material breach of, any material contract, agreement or other instrument to which the Master Servicer is a party or which may be applicable to the Master Servicer or any of its assets;

(iii)    This Agreement, assuming due authorization, execution and delivery by the Trustee and the Depositor, constitutes a valid, legal and binding obligation of the Master Servicer, enforceable against it in accordance with the terms hereof subject to applicable bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law;

(iv)    The Master Servicer is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency, which default might have consequences that would materially and adversely affect the condition (financial or other) or operations of the Master Servicer or its properties or might have consequences that would materially adversely affect its performance hereunder;

(v)    No litigation is pending or, to the best of the Master Servicer's knowledge, threatened against the Master Servicer which would prohibit its entering into this Agreement or performing its obligations under this Agreement;

DOCSLA1:476701.5                                      54

CONFIDENTIAL                                                                    RC_FGIC9019_00018179

(vi)     The Master Servicer will comply in all material respects in the performance of this Agreement with all reasonable rules and requirements of each insurer under each Required Insurance Policy;

(vii)     No information, certificate of an officer, statement furnished in writing or report delivered to the Depositor, any Affiliate of the Depositor or the Trustee by the Master Servicer will, to the knowledge of the Master Servicer, contain any untrue statement of a material fact or omit a material fact necessary to make the information, certificate, statement or report not misleading;

(viii)     The Master Servicer has examined each existing, and will examine each new, Subservicing Agreement and is or will be familiar with the terms thereof. The terms of each existing Subservicing Agreement and each designated Subservicer are acceptable to the Master Servicer and any new Subservicing Agreements will comply with the provisions of Section 3.02;

(ix)     The Master Servicer is a member of MERS in good standing, and will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the Mortgage Loans that are registered with MERS; and

(x)     The Servicing Guide of the Master Servicer requires that the Subservicer for each Mortgage Loan accurately and fully reports its borrower credit files to each of the Credit Repositories in a timely manner.

It is understood and agreed that the representations and warranties set forth in this Section 2.03(a) shall survive delivery of the respective Mortgage Files to the Trustee or any Custodian. Upon discovery by either the Depositor, the Master Servicer, the Certificate Insurer, the Trustee or any Custodian of a breach of any representation or warranty set forth in this Section 2.03(a) which materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (any Custodian being so obligated under a Custodial Agreement). Within 90 days of its discovery or its receipt of notice of such breach, the Master Servicer shall either (i) cure such breach in all material respects or (ii) to the extent that such breach is with respect to a Mortgage Loan or a related document, purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that if the breach would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase must occur within 90 days from the date such breach was discovered. The obligation of the Master Servicer to cure such breach or to so purchase such Mortgage Loan shall constitute the sole remedy in respect of a breach of a representation and warranty set forth in this Section 2.03(a) available to the Certificateholders or the Trustee on behalf of the Certificateholders (except for the Certificate Insurer's rights under Section 3.03 of the Insurance Agreement).

(b)     The Depositor hereby represents and warrants to the Trustee for the benefit of the Certificateholders and the Certificate Insurer that as of the Closing Date (or, if otherwise specified below, as of the date so specified): (i) immediately prior to the conveyance of the Mortgage Loans to the Trustee, the Depositor had good title to, and was the sole owner of, each Mortgage Loan free and clear of any pledge, lien, encumbrance or security interest (other than rights to servicing and related compensation) and such conveyance validly transfers ownership of the Mortgage Loans to the Trustee free and clear of any pledge, lien, encumbrance or security interest; and (ii) each Mortgage Loan constitutes a qualified mortgage under Section 860G(a)(3)(A) of the Code and Treasury Regulations Section 1.860G-2(a)(1).

CONFIDENTIAL                                        RC_FGIC9019_00018180

It is understood and agreed that the representations and warranties set forth in this Section 2.03(b) shall survive delivery of the respective Mortgage Files to the Trustee or any Custodian.

Upon discovery by any of the Depositor, the Master Servicer, the Certificate Insurer, the Trustee or any Custodian of a breach of any of the representations and warranties set forth in this Section 2.03(b) which materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties and the Certificate Insurer (any Custodian being so obligated under a Custodial Agreement); *provided, however*, that in the event of a breach of the representation and warranty set forth in Section 2.03(b)(ii), the party discovering such breach shall give such notice within five days of discovery. Within 90 days of its discovery or its receipt of notice of breach, the Depositor shall either (i) cure such breach in all material respects or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that the Depositor shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; provided that if the omission or defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure, substitution or repurchase must occur within 90 days from the date such breach was discovered. Any such substitution shall be effected by the Depositor under the same terms and conditions as provided in Section 2.04 for substitutions by Residential Funding. It is understood and agreed that the obligation of the Depositor to cure such breach or to so purchase or substitute for any Mortgage Loan as to which such a breach has occurred and is continuing shall constitute the sole remedy respecting such breach available to the Certificateholders (other than the Certificate Insurer) or the Trustee on behalf of the Certificateholders (other than the Certificate Insurer). Notwithstanding the foregoing, the Depositor shall not be required to cure breaches or purchase or substitute for Mortgage Loans as provided in this Section 2.03(b) if the substance of the breach of a representation set forth above also constitutes fraud in the origination of the Mortgage Loan.

Section 2.04.   Representations and Warranties of Sellers.

The Depositor, as assignee of Residential Funding under the Assignment Agreement, hereby assigns to the Trustee for the benefit of the Certificateholders all of its right, title and interest in respect of the Assignment Agreement and each Seller's Agreement applicable to a Mortgage Loan as and to the extent set forth in the Assignment Agreement. Insofar as the Assignment Agreement or such Seller's Agreement relates to the representations and warranties made by Residential Funding or the related Seller in respect of such Mortgage Loan and any remedies provided thereunder for any breach of such representations and warranties, such right, title and interest may be enforced by the Master Servicer on behalf of the Trustee, the Certificate Insurer and the Certificateholders. Upon the discovery by the Depositor, the Master Servicer, the Certificate Insurer, the Trustee or any Custodian of a breach of any of the representations and warranties made in a Seller's Agreement or the Assignment Agreement in respect of any Mortgage Loan or of any Repurchase Event which materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in such Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties and the Certificate Insurer (any Custodian being so obligated under a Custodial Agreement). The Master Servicer shall promptly notify the related Seller and Residential Funding of such breach or Repurchase Event and request that such Seller or Residential Funding either (i) cure such breach or Repurchase Event in all material respects within 90 days from the date the Master Servicer was notified of such breach or Repurchase Event or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02.

Upon the discovery by the Depositor, the Master Servicer, the Trustee, or any Custodian of a breach of any of such representations and warranties set forth in the Assignment Agreement in respect of any Mortgage Loan which materially and adversely affects the interests of the Certificateholders or the

CONFIDENTIAL                                                    RC_FGIC9019_00018181

Certificate Insurer in such Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties (any Custodian being so obligated under a Custodial Agreement) at the same time as notice is given pursuant to the preceding paragraph of any corresponding breach of representation or warranty made in Seller's Agreement. The Master Servicer shall promptly notify Residential Funding of such breach of a representation or warranty set forth in the Assignment Agreement and request that Residential Funding either (i) cure such breach in all material respects within 90 days from the date the Master Servicer was notified of such breach or (ii) purchase such Mortgage Loan from the Trust Fund within 90 days of the date of such written notice of such breach at the Purchase Price and in the manner set forth in Section 2.02, but only if the Mortgage Loan has not been purchased by the Seller due to a breach of representation and warranty of the related Seller's Agreement as set forth in the preceding paragraph; provided that Residential Funding shall have the option to substitute a Qualified Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date; provided that if the breach would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or substitution must occur within 90 days from the date the breach was discovered. If the breach of representation and warranty that gave rise to the obligation to repurchase or substitute a Mortgage Loan pursuant to Section 4 of the Assignment Agreement was the representation and warranty set forth in clause (xlvii) of Section 4 thereof, then the Master Servicer shall request that Residential Funding pay to the Trust Fund, concurrently with and in addition to the remedies provided in the preceding sentence, an amount equal to any liability, penalty or expense that was actually incurred and paid out of or on behalf of the Trust Fund, and that directly resulted from such breach, or if incurred and paid by the Trust Fund thereafter, concurrently with such payment. In the event that Residential Funding elects to substitute a Qualified Substitute Mortgage Loan or Loans for a Deleted Mortgage Loan pursuant to this Section 2.04, Residential Funding shall deliver to the Trustee for the benefit of the Certificateholders with respect to such Qualified Substitute Mortgage Loan or Loans, the original Mortgage Note, the Mortgage, an Assignment of the Mortgage in recordable form, and such other documents and agreements as are required by Section 2.01, with the Mortgage Note endorsed as required by Section 2.01. No substitution will be made in any calendar month after the Determination Date for such month. Monthly Payments due with respect to Qualified Substitute Mortgage Loans in the month of substitution shall not be part of the Trust Fund and will be retained by the Master Servicer and remitted by the Master Servicer to Residential Funding on the next succeeding Distribution Date. For the month of substitution, distributions to the Certificateholders will include the Monthly Payment due on a Deleted Mortgage Loan for such month and thereafter Residential Funding shall be entitled to retain all amounts received in respect of such Deleted Mortgage Loan. The Master Servicer shall amend or cause to be amended the Mortgage Loan Schedule for the benefit of the Certificateholders to reflect the removal of such Deleted Mortgage Loan and the substitution of the Qualified Substitute Mortgage Loan or Loans and the Master Servicer shall deliver the amended Mortgage Loan Schedule to the Trustee. Upon such substitution, the Qualified Substitute Mortgage Loan or Loans shall be subject to the terms of this Agreement and the related Subservicing Agreement in all respects, the related Seller shall be deemed to have made the representations and warranties with respect to the Qualified Substitute Mortgage Loan made in the related Seller Agreements as of the date of substitution, Residential Funding shall be deemed to have made the representations and warranties with respect to the Qualified Substitute Mortgage Loan (other than those of a statistical nature) contained in the Assignment Agreement as of the date of substitution, and the covenants, representations and warranties set forth in this Section 2.04, and in Section 2.03(b) hereof.

In connection with the substitution of one or more Qualified Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Master Servicer will determine the amount (if any) by which the aggregate principal balance of all such Qualified Substitute Mortgage Loans as of the date of substitution is less than the aggregate Stated Principal Balance of all such Deleted Mortgage Loans (in each case after application of the principal portion of the Monthly Payments due in the month of substitution that are to be distributed to the Certificateholders in the month of substitution). Residential Funding shall deposit or

DOCSLA1:476701.5                                    57

cause the related Seller to deposit the amount of such shortfall into the Custodial Account on the day of substitution, without any reimbursement therefor. Residential Funding shall give notice in writing to the Trustee of such event, which notice shall be accompanied by an Officers' Certificate as to the calculation of such shortfall and (subject to Section 10.01(f) by an Opinion of Counsel to the effect that such substitution will not cause (a) any federal tax to be imposed on the Trust Fund, including without limitation, any federal tax imposed on "prohibited transactions" under Section 860F(a)(1) of the Code or on "contributions after the startup date" under Section 860G(d)(1) of the Code or (b) any portion of any REMIC created hereunder to fail to qualify as a REMIC at any time that any Certificate is outstanding.

It is understood and agreed that the obligation of the Seller or Residential Funding, as the case may be, to cure such breach or purchase (and in the case of Residential Funding to substitute for) such Mortgage Loan as to which such a breach has occurred and is continuing and to make any additional payments required under the Assignment Agreement in connection with a breach of the representation and warranty in clause (xlvii) of Section 4 thereof shall constitute the sole remedy respecting such breach available to the Certificateholders (other than the Certificate Insurer) or the Trustee on behalf of the Certificateholders (other than the Certificate Insurer). If the Master Servicer is Residential Funding, then the Trustee shall also have the right to give the notification and require the purchase or substitution provided for in the second preceding paragraph in the event of such a breach of a representation or warranty made by Residential Funding in the Assignment Agreement. In connection with the purchase of or substitution for any such Mortgage Loan by Residential Funding, the Trustee shall assign to Residential Funding all of the right, title and interest in respect of the Seller's Agreement and the Assignment Agreement applicable to such Mortgage Loan.

Section 2.05.    Execution and Authentication of Certificates; Conveyance of Uncertificated REMIC Regular Interests.

(a)    The Trustee acknowledges the assignment to it of the Mortgage Loans and the delivery of the Mortgage Files to it, or any Custodian on its behalf, subject to any exceptions noted, together with the assignment to it of all other assets included in the Trust Fund, receipt of which is hereby acknowledged. Concurrently with such delivery and in exchange therefor, the Trustee, pursuant to the written request of the Depositor executed by an officer of the Depositor, has executed and caused to be authenticated and delivered to or upon the order of the Depositor the Certificates in authorized denominations which evidence ownership of the entire Trust Fund.

(b)    The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Depositor in and to the REMIC I Regular Interests and the REMIC II Regular Interests for the benefit of the holders of the Regular Certificates and the Class R-III certificates. The Trustee acknowledges receipt of the REMIC I Regular Interests and the REMIC II Regular Interests (each of which are uncertificated) and declares that it holds and will hold the same in trust for the exclusive use and benefit of the holders of the Regular Certificates and the Class R-III Certificates. The interests evidenced by the Class R-III Certificate, together with the Regular Certificates, constitute the entire beneficial ownership interest in REMIC III.

CONFIDENTIAL                                                                    RC_FGIC9019_00018183

Section 2.06.    Purposes and Powers of the Trust.

The purpose of the trust, as created hereunder, is to engage in the following activities:

(a)      to sell the Certificates to the Depositor in exchange for the Mortgage Loans;

(b)      to enter into and perform its obligations under this Agreement;

(c)      to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(d)      subject to compliance with this Agreement, to engage in such other activities as may be required in connection with conservation of the Trust Fund and the making of distributions to the Certificateholders.

The trust is hereby authorized to engage in the foregoing activities.   Notwithstanding the provisions of Section 11.01, the trust shall not engage in any activity other than in connection with the foregoing or other than as required or authorized by the terms of this Agreement while any Certificate is outstanding, and this Section 2.06 may not be amended, without the consent of the Certificateholders evidencing a majority of the aggregate Voting Rights of the Certificates.

CONFIDENTIAL                                                          RC_FGIC9019_00018184

## ARTICLE III
## ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 3.01.    Master Servicer to Act as Servicer.

(a)      The Master Servicer shall service and administer the Mortgage Loans in accordance with the terms of this Agreement and the respective Mortgage Loans, following such procedures as it would employ in its good faith business judgment and which are normal and usual in its general mortgage servicing activities, and shall have full power and authority, acting alone or through Subservicers as provided in Section 3.02, to do any and all things which it may deem necessary or desirable in connection with such servicing and administration. Without limiting the generality of the foregoing, the Master Servicer in its own name or in the name of a Subservicer is hereby authorized and empowered by the Trustee when the Master Servicer or the Subservicer, as the case may be, believes it appropriate in its best judgment, to execute and deliver, on behalf of the Certificateholders and the Trustee or any of them, any and all instruments of satisfaction or cancellation, or of partial or full release or discharge, or of consent to assumption or modification in connection with a proposed conveyance, or of assignment of any Mortgage and Mortgage Note in connection with the repurchase of a Mortgage Loan and all other comparable instruments, or with respect to the modification or re-recording of a Mortgage for the purpose of correcting the Mortgage, the subordination of the lien of the Mortgage in favor of a public utility company or government agency or unit with powers of eminent domain, the taking of a deed in lieu of foreclosure, the completion of judicial or non-judicial foreclosure, the conveyance of a Mortgaged Property to the related insurer, the acquisition of any property acquired by foreclosure or deed in lieu of foreclosure, or the management, marketing and conveyance of any property acquired by foreclosure or deed in lieu of foreclosure with respect to the Mortgage Loans and with respect to the Mortgaged Properties. The Master Servicer further is authorized and empowered by the Trustee, on behalf of the Certificateholders and the Trustee, in its own name or in the name of the Subservicer, when the Master Servicer or the Subservicer, as the case may be, believes it is appropriate in its best judgment to register any Mortgage Loan on the MERS® System, or cause the removal from the registration of any Mortgage Loan on the MERS® System, to execute and deliver, on behalf of the Trustee and the Certificateholders or any of them, any and all instruments of assignment and other comparable instruments with respect to such assignment or re-recording of a Mortgage in the name of MERS, solely as nominee for the Trustee and its successors and assigns. Any expenses incurred in connection with the actions described in the preceding sentence shall be borne by the Master Servicer in accordance with Section 3.16(c), with no right of reimbursement; provided, that if, as a result of MERS discontinuing or becoming unable to continue operations in connection with the MERS® System, it becomes necessary to remove any Mortgage Loan from registration on the MERS® System and to arrange for the assignment of the related Mortgages to the Trustee, then any related expenses shall be reimbursable to the Master Servicer as set forth in Section 3.10(a)(ii).    Notwithstanding the foregoing, subject to Section 3.07(a), the Master Servicer shall not permit any modification with respect to any Mortgage Loan that would both constitute a sale or exchange of such Mortgage Loan within the meaning of Section 1001 of the Code and any proposed, temporary or final regulations promulgated thereunder (other than in connection with a proposed conveyance or assumption of such Mortgage Loan that is treated as a Principal Prepayment in Full pursuant to Section 3.13(d) hereof) and cause any REMIC created hereunder to fail to qualify as a REMIC under the Code. The Trustee shall furnish the Master Servicer with any powers of attorney and other documents necessary or appropriate to enable the Master Servicer to service and administer the Mortgage Loans. The Trustee shall not be liable for any action taken by the Master Servicer or any Subservicer pursuant to such powers of attorney or other documents. In servicing and administering any Nonsubserviced Mortgage Loan, the Master Servicer shall, to the extent not inconsistent with this Agreement, comply with the Program Guide as if it were the originator of such Mortgage Loan and had retained the servicing rights and obligations in respect thereof.

DOCSLA1:476701.5                                    60

CONFIDENTIAL                                                            RC_FGIC9019_00018185

If the Mortgage relating to a Mortgage Loan did not have a lien senior to the Mortgage Loan on the related Mortgaged Property as of the Cut-off Date, then the Master Servicer, in such capacity, may not consent to the placing of a lien senior to that of the Mortgage on the related Mortgaged Property. If the Mortgage relating to a Mortgage Loan had a lien senior to the Mortgage Loan on the related Mortgaged Property as of the Cut-off Date, then the Master Servicer, in such capacity, may consent to the refinancing of the prior senior lien, provided that the following requirements are met:

> (i)    (A)    the Mortgagor's debt-to-income ratio resulting from such refinancing is less than the original debt-to-income ratio as set forth on the Mortgage Loan Schedule; provided, however, that in no instance shall the resulting Combined Loan-to-Value Ratio ("Combined Loan-to-Value Ratio") of such Mortgage Loan be higher than that permitted by the Program Guide; or

> (B)    the resulting Combined Loan-to-Value Ratio of such Mortgage Loan is no higher than the Combined Loan-to-Value Ratio prior to such refinancing; provided, however, if such refinanced mortgage loan is a "rate and term" mortgage loan (meaning, the Mortgagor does not receive any cash from the refinancing), the Combined Loan-to-Value Ratio may increase to the extent of either (x) the reasonable closing costs of such refinancing or (y) any decrease in the value of the related Mortgaged Property, if the Mortgagor is in good standing as defined by the Program Guide;

> (ii)    the interest rate, or, in the case of an adjustable rate existing senior lien, the maximum interest rate, for the loan evidencing the refinanced senior lien is no more than 2.0% higher than the interest rate or the maximum interest rate, as the case may be, on the loan evidencing the existing senior lien immediately prior to the date of such refinancing; provided, however (A) if the loan evidencing the existing senior lien prior to the date of refinancing has an adjustable rate and the loan evidencing the refinanced senior lien has a fixed rate, then the current interest rate on the loan evidencing the refinanced senior lien may be up to 2.0% higher than the then-current loan rate of the loan evidencing the existing senior lien and (B) if the loan evidencing the existing senior lien prior to the date of refinancing has a fixed rate and the loan evidencing the refinanced senior lien has an adjustable rate, then the maximum interest rate on the loan evidencing the refinanced senior lien shall be less than or equal to (x) the interest rate on the loan evidencing the existing senior lien prior to the date of refinancing plus (y) 2.0%; and

> (iii)    the loan evidencing the refinanced senior lien is not subject to negative amortization.

(b)    The Master Servicer shall, to the extent consistent with the servicing standards set forth herein, take whatever actions as may be necessary to file a claim under or enforce or allow the Trustee to file a claim under or enforce any title insurance policy with respect to any Mortgage Loan including, without limitation, joining in or causing any Seller or Subservicer (or any other party in possession of any title insurance policy) to join in any claims process, negotiations, actions or proceedings necessary to make a claim under or enforce any title insurance policy. Notwithstanding anything in this Agreement to the contrary, the Master Servicer shall not (unless the Mortgagor is in default with respect to the Mortgage Loan or such default is, in the judgment of the Master Servicer, reasonably foreseeable) make or permit any modification, waiver, or amendment of any term of any Mortgage Loan that would both (i) effect an exchange or reissuance of such Mortgage Loan under Section 1001 of the Code (or final, temporary or proposed Treasury regulations promulgated thereunder) (other than in connection with a proposed conveyance or assumption of such Mortgage Loan that is treated as a Principal Prepayment in Full pursuant to Section 3.13(d) hereof) and (ii) cause any REMIC formed hereunder to fail to qualify as a

DOCSLA1:476701.5                            61

REMIC under the Code or the imposition of any tax on "prohibited transactions" or "contributions" after the startup date under the REMIC Provisions.

(c)    In connection with servicing and administering the Mortgage Loans, the Master Servicer and any Affiliate of the Master Servicer (i) may perform services such as appraisals and brokerage services that are customarily provided by Persons other than servicers of mortgage loans, and shall be entitled to reasonable compensation therefor in accordance with Section 3.10 and (ii) may, at its own discretion and on behalf of the Trustee, obtain credit information in the form of a "credit score" from a credit repository.

(d)    All costs incurred by the Master Servicer or by Subservicers in effecting the timely payment of taxes and assessments on the properties subject to the Mortgage Loans shall not, for the purpose of calculating monthly distributions to the Certificateholders, be added to the amount owing under the related Mortgage Loans, notwithstanding that the terms of such Mortgage Loan so permit, and such costs shall be recoverable to the extent permitted by Section 3.10(a)(ii).

(e)    The Master Servicer may enter into one or more agreements in connection with the offering of pass-through certificates evidencing interests in one or more of the Certificates providing for the payment by the Master Servicer of amounts received by the Master Servicer as servicing compensation hereunder and required to cover certain Prepayment Interest Shortfalls on the Mortgage Loans, which payment obligation will thereafter be an obligation of the Master Servicer hereunder.

(f)    The relationship of the Master Servicer (and of any successor to the Master Servicer) to the Depositor under this Agreement is intended by the parties to be that of an independent contractor and not that of a joint venturer, partner or agent.

(g)    The Master Servicer shall comply with the terms of Section 9 of the Assignment Agreement.

Section 3.02.    Subservicing Agreements Between Master Servicer and Subservicers; Enforcement of Subservicers' Obligations.

(a)    The Master Servicer may continue in effect Subservicing Agreements entered into by Residential Funding and Subservicers prior to the execution and delivery of this Agreement, and may enter into new Subservicing Agreements with Subservicers, for the servicing and administration of all or some of the Mortgage Loans. Each Subservicer shall be either (i) an institution the accounts of which are insured by the FDIC or (ii) another entity that engages in the business of originating or servicing mortgage loans, and in either case shall be authorized to transact business in the state or states in which the related Mortgaged Properties it is to service are situated, if and to the extent required by applicable law to enable the Subservicer to perform its obligations hereunder and under the Subservicing Agreement, and in either case shall be a Freddie Mac, Fannie Mae or HUD approved mortgage servicer. Each Subservicer of a Mortgage Loan shall be entitled to receive and retain, as provided in the related Subservicing Agreement and in Section 3.07, the related Subservicing Fee from payments of interest received on such Mortgage Loan after payment of all amounts required to be remitted to the Master Servicer in respect of such Mortgage Loan. For any Mortgage Loan that is a Nonsubserviced Mortgage Loan, the Master Servicer shall be entitled to receive and retain an amount equal to the Subservicing Fee from payments of interest. Unless the context otherwise requires, references in this Agreement to actions taken or to be taken by the Master Servicer in servicing the Mortgage Loans include actions taken or to be taken by a Subservicer on behalf of the Master Servicer. Each Subservicing Agreement will be upon such terms and conditions as are generally required by, permitted by or consistent with the Program Guide and are not inconsistent with this Agreement and as the Master Servicer and the Subservicer have agreed.

DOCSLA1:476701.5                    62

CONFIDENTIAL                                    RC_FGIC9019_00018187

With the approval of the Master Servicer, a Subservicer may delegate its servicing obligations to third-party servicers, but such Subservicer will remain obligated under the related Subservicing Agreement. The Master Servicer and a Subservicer may enter into amendments thereto or a different form of Subservicing Agreement, and the form referred to or included in the Program Guide is merely provided for information and shall not be deemed to limit in any respect the discretion of the Master Servicer to modify or enter into different Subservicing Agreements; provided, however, that any such amendments or different forms shall be consistent with and not violate the provisions of either this Agreement or the Program Guide in a manner which would materially and adversely affect the interests of the Certificateholders or the Certificate Insurer. The Program Guide and any other Subservicing Agreement entered into between the Master Servicer and any Subservicer shall require the Subservicer to accurately and fully report its borrower credit files to each of the Credit Repositories in a timely manner.

(b)    As part of its servicing activities hereunder, the Master Servicer, for the benefit of the Trustee, the Certificateholders and the Certificate Insurer, shall use its best reasonable efforts to enforce the obligations of each Subservicer under the related Subservicing Agreement and of each Seller under the related Seller's Agreement, to the extent that the non-performance of any such obligation would have a material and adverse effect on a Mortgage Loan, including, without limitation, the obligation to purchase a Mortgage Loan on account of defective documentation, as described in Section 2.02, or on account of a breach of a representation or warranty, as described in Section 2.04. Such enforcement, including, without limitation, the legal prosecution of claims, termination of Subservicing Agreements or Seller's Agreements, as appropriate, and the pursuit of other appropriate remedies, shall be in such form and carried out to such an extent and at such time as the Master Servicer would employ in its good faith business judgment and which are normal and usual in its general mortgage servicing activities. The Master Servicer shall pay the costs of such enforcement at its own expense, and shall be reimbursed therefor only (i) from a general recovery resulting from such enforcement to the extent, if any, that such recovery exceeds all amounts due in respect of the related Mortgage Loan or (ii) from a specific recovery of costs, expenses or attorneys fees against the party against whom such enforcement is directed. For purposes of clarification only, the parties agree that the foregoing is not intended to, and does not, limit the ability of the Master Servicer to be reimbursed for expenses that are incurred in connection with the enforcement of a Seller's obligations and are reimbursable pursuant to Section 3.10(a)(vii).

Section 3.03.    Successor Subservicers.

The Master Servicer shall be entitled to terminate any Subservicing Agreement that may exist in accordance with the terms and conditions of such Subservicing Agreement and without any limitation by virtue of this Agreement; provided, however, that in the event of termination of any Subservicing Agreement by the Master Servicer or the Subservicer, the Master Servicer shall either act as servicer of the related Mortgage Loan or enter into a Subservicing Agreement with a successor Subservicer which will be bound by the terms of the related Subservicing Agreement. If the Master Servicer or any Affiliate of Residential Funding acts as servicer, it will not assume liability for the representations and warranties of the Subservicer which it replaces. If the Master Servicer enters into a Subservicing Agreement with a successor Subservicer, the Master Servicer shall use reasonable efforts to have the successor Subservicer assume liability for the representations and warranties made by the terminated Subservicer in respect of the related Mortgage Loans and, in the event of any such assumption by the successor Subservicer, the Master Servicer may, in the exercise of its business judgment, release the terminated Subservicer from liability for such representations and warranties.

Section 3.04.    Liability of the Master Servicer.

Notwithstanding any Subservicing Agreement, any of the provisions of this Agreement relating to agreements or arrangements between the Master Servicer or a Subservicer or reference to actions taken

CONFIDENTIAL                                                      RC_FGIC9019_00018188

through a Subservicer or otherwise, the Master Servicer shall remain obligated and liable to the Trustee, the Certificate Insurer and Certificateholders for the servicing and administering of the Mortgage Loans in accordance with the provisions of Section 3.01 without diminution of such obligation or liability by virtue of such Subservicing Agreements or arrangements or by virtue of indemnification from the Subservicer or the Depositor and to the same extent and under the same terms and conditions as if the Master Servicer alone were servicing and administering the Mortgage Loans. The Master Servicer shall be entitled to enter into any agreement with a Subservicer or Seller for indemnification of the Master Servicer and nothing contained in this Agreement shall be deemed to limit or modify such indemnification.

Section 3.05.   No Contractual Relationship Between Subservicer and Trustee or Certificateholders.

Any Subservicing Agreement that may be entered into and any other transactions or services relating to the Mortgage Loans involving a Subservicer in its capacity as such and not as an originator shall be deemed to be between the Subservicer and the Master Servicer alone and the Trustee and Certificateholders shall not be deemed parties thereto and shall have no claims, rights, obligations, duties or liabilities with respect to the Subservicer in its capacity as such except as set forth in Section 3.06. The foregoing provision shall not in any way limit a Subservicer's obligation to cure an omission or defect or to repurchase a Mortgage Loan as referred to in Section 2.02 hereof.

Section 3.06.   Assumption or Termination of Subservicing Agreements by Trustee.

(a)   In the event the Master Servicer shall for any reason no longer be the master servicer (including by reason of an Event of Default), the Trustee, as successor Master Servicer, its designee or its successor shall thereupon assume all of the rights and obligations of the Master Servicer under each Subservicing Agreement that may have been entered into. The Trustee, its designee or the successor servicer for the Trustee shall be deemed to have assumed all of the Master Servicer's interest therein and to have replaced the Master Servicer as a party to the Subservicing Agreement to the same extent as if the Subservicing Agreement had been assigned to the assuming party except that the Master Servicer shall not thereby be relieved of any liability or obligations under the Subservicing Agreement.

(b)   The Master Servicer shall, upon request of the Trustee but at the expense of the Master Servicer, deliver to the assuming party all documents and records relating to each Subservicing Agreement and the Mortgage Loans then being serviced and an accounting of amounts collected and held by it and otherwise use its best efforts to effect the orderly and efficient transfer of each Subservicing Agreement to the assuming party.

(c)   Unless a Certificate Insurer Default exists, the Master Servicer will, if it is authorized to do so under the relevant Subservicing Agreement, upon request of the Certificate Insurer at a time when the Certificate Insurer may remove the Master Servicer under the terms hereof, terminate any Subservicing Agreement.

Section 3.07.   Collection of Certain Mortgage Loan Payments; Deposits to Custodial Account.

(a)   The Master Servicer shall make reasonable efforts to collect all payments called for under the terms and provisions of the Mortgage Loans, and shall, to the extent such procedures shall be consistent with this Agreement and the terms and provisions of any related Primary Insurance Policy, follow such collection procedures as it would employ in its good faith business judgment and which are normal and usual in its general mortgage servicing activities. Consistent with the foregoing, the Master Servicer may in its discretion (subject to the terms and conditions of the Assignment Agreement) (i) waive any late payment charge or any prepayment charge or penalty interest in connection with the

DOCSLA1:476701.5                                    64

prepayment of a Mortgage Loan and (ii) extend the Due Date for payments due on a Mortgage Loan in accordance with the Program Guide, provided, however, that the Master Servicer shall first determine that any such waiver or extension will not impair the coverage of any related Primary Insurance Policy or the MI Policy or materially adversely affect the lien of the related Mortgage. Notwithstanding anything in this Section to the contrary, the Master Servicer or any Subservicer shall not enforce any prepayment charge to the extent that such enforcement would violate any applicable law. In the event of any such arrangement, the Master Servicer shall make timely advances on the related Mortgage Loan during the scheduled period in accordance with the amortization schedule of such Mortgage Loan without modification thereof by reason of such arrangements unless otherwise agreed to by the Holders of the Classes of Certificates affected thereby; provided, however, that no such extension shall be made if any advance would be a Nonrecoverable Advance. Consistent with the terms of this Agreement, the Master Servicer may also waive, modify or vary any term of any Mortgage Loan or consent to the postponement of strict compliance with any such term or in any manner grant indulgence to any Mortgagor if in the Master Servicer's determination such waiver, modification, postponement or indulgence is not materially adverse to the interests of the Certificateholders or the Certificate Insurer (taking into account any estimated Realized Loss that might result absent such action), provided, however, that the Master Servicer may not modify materially or permit any Subservicer to modify any Mortgage Loan, including without limitation any modification that would change the Mortgage Rate, forgive the payment of any principal or interest (unless in connection with the liquidation of the related Mortgage Loan or except in connection with prepayments to the extent that such reamortization is not inconsistent with the terms of the Mortgage Loan), capitalize any amounts owing on the Mortgage Loan by adding such amount to the outstanding principal balance of the Mortgage Loan, or extend the final maturity date of such Mortgage Loan, unless such Mortgage Loan is in default or, in the judgment of the Master Servicer, such default is reasonably foreseeable. No such modification shall reduce the Mortgage Rate on a Mortgage Loan below the greater of (A) one-half of the Mortgage Rate as in effect on the Cut-off Date and (B) one-half of the Mortgage Rate as in effect on the date of such modification, but not less than the sum of the Servicing Fee Rate, the related Mortgage Insurance Premium Rate, if any, the applicable Certificate Insurer Premium Modified Rate and the per annum rate at which the Subservicing Fee accrues. The final maturity date for any Mortgage Loan shall not be extended beyond the Maturity Date. Also, the aggregate principal balance of all Reportable Modified Mortgage Loans subject to Servicing Modifications (measured at the time of the Servicing Modification and after giving effect to any Servicing Modification) can be no more than five percent of the aggregate principal balance of the Mortgage Loans as of the Cut-off Date, unless such limit is increased from time to time with the consent of the MI Policy Provider and each Rating Agency provides written confirmation that an increase in excess of that limit will not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then-current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency (without regard to the related Certificate Guaranty Insurance Policy). In addition, any amounts owing on a Mortgage Loan added to the outstanding principal balance of such Mortgage Loan must be fully amortized over the term of such Mortgage Loan, and such amounts may be added to the outstanding principal balance of a Mortgage Loan only once during the life of such Mortgage Loan. Also, the addition of such amounts described in the preceding sentence shall be implemented in accordance with the Program Guide and may be implemented only by Subservicers that have been approved by the Master Servicer for such purposes. In connection with any Curtailment of a Mortgage Loan, the Master Servicer, to the extent not inconsistent with the terms of the Mortgage Note and local law and practice, may permit the Mortgage Loan to be re-amortized such that the Monthly Payment is recalculated as an amount that will fully amortize the remaining principal balance thereof by the original maturity date based on the original Mortgage Rate; provided, that such reamortization shall not be permitted if it would constitute a reissuance of the Mortgage Loan for federal income tax purposes.

(b)      The Master Servicer shall establish and maintain a Custodial Account in which the Master Servicer shall deposit or cause to be deposited on a daily basis, except as otherwise specifically

CONFIDENTIAL                                                                            RC_FGIC9019_00018190

provided herein, the following payments and collections remitted by Subservicers or received by it in respect of the Mortgage Loans subsequent to the Cut-off Date (other than in respect of Monthly Payments due prior to or in the month of the Cut-off Date):

      (i)      All payments on account of principal, including Principal Prepayments made by Mortgagors on the Mortgage Loans and the principal component of any Subservicer Advance or of any REO Proceeds received in connection with an REO Property for which an REO Disposition has occurred;

      (ii)      All payments on account of interest at the Adjusted Mortgage Rate on the Mortgage Loans, including the interest component of any Subservicer Advance or of any REO Proceeds received in connection with an REO Property for which an REO Disposition has occurred;

      (iii)      Insurance Proceeds, Subsequent Recoveries and Liquidation Proceeds (net of any related expenses of the Subservicer);

      (iv)      All proceeds of any Mortgage Loans purchased pursuant to Section 2.02, 2.03, 2.04, 4.07 or 4.08 (including amounts received from Residential Funding pursuant to the last paragraph of Section 4 of the Assignment Agreement in respect of any liability, penalty or expense that resulted from a breach of the representation and warranty set forth in clause (xlvii) of Section 4 of the Assignment Agreement) and all amounts required to be deposited in connection with the substitution of a Qualified Substitute Mortgage Loan pursuant to Section 2.03 or 2.04; and

      (v)      Any amounts required to be deposited pursuant to Section 3.07(c) and any payments or collections received in the nature of prepayment charges.

The foregoing requirements for deposit in the Custodial Account shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments on the Mortgage Loans which are not part of the Trust Fund (consisting of Monthly Payments due before or in the month of the Cut-off Date) and payments or collections consisting of late payment charges or assumption fees may but need not be deposited by the Master Servicer in the Custodial Account. In the event any amount not required to be deposited in the Custodial Account is so deposited, the Master Servicer may at any time withdraw such amount from the Custodial Account, any provision herein to the contrary notwithstanding. The Custodial Account may contain funds that belong to one or more trust funds created for mortgage pass-through certificates of other series and may contain other funds respecting payments on mortgage loans belonging to the Master Servicer or serviced or master serviced by it on behalf of others. Notwithstanding such commingling of funds, the Master Servicer shall keep records that accurately reflect the funds on deposit in the Custodial Account that have been identified by it as being attributable to the Mortgage Loans. With respect to Insurance Proceeds, Liquidation Proceeds, REO Proceeds, Subsequent Recoveries and the proceeds of the purchase of any Mortgage Loan pursuant to Sections 2.02, 2.03, 2.04, 4.07 and 4.08 received in any calendar month, the Master Servicer may elect to treat such amounts as included in the Group I Available Distribution Amount or Group II Available Distribution Amount, as applicable, for the Distribution Date in the month of receipt, but is not obligated to do so. If the Master Servicer so elects, such amounts will be deemed to have been received (and any related Realized Loss shall be deemed to have occurred) on the last day of the month prior to the receipt thereof.

      (c)      The Master Servicer shall use its best efforts to cause the institution maintaining the Custodial Account to invest the funds in the Custodial Account attributable to the Mortgage Loans in Permitted Investments which shall mature not later than the Certificate Account Deposit Date next

CONFIDENTIAL                    RC_FGIC9019_00018191

following the date of such investment (with the exception of the Amount Held for Future Distribution) and which shall not be sold or disposed of prior to their maturities. All income and gain realized from any such investment shall be for the benefit of the Master Servicer as additional servicing compensation and shall be subject to its withdrawal or order from time to time. The amount of any losses incurred in respect of any such investments attributable to the investment of amounts in respect of the Mortgage Loans shall be deposited in the Custodial Account by the Master Servicer out of its own funds immediately as realized.

(d)     The Master Servicer shall give notice to the Trustee and the Depositor of any change in the location of the Custodial Account and the location of the Certificate Account prior to the use thereof.

Section 3.08.     Subservicing Accounts; Servicing Accounts.

(a)     In those cases where a Subservicer is servicing a Mortgage Loan pursuant to a Subservicing Agreement, the Master Servicer shall cause the Subservicer, pursuant to the Subservicing Agreement, to establish and maintain one or more Subservicing Accounts which shall be an Eligible Account or, if such account is not an Eligible Account, shall generally satisfy the requirements of the Program Guide and be otherwise acceptable to the Master Servicer, the Certificate Insurer and each Rating Agency. The Subservicer will be required thereby to deposit into the Subservicing Account on a daily basis all proceeds of Mortgage Loans received by the Subservicer, less its Subservicing Fees and unreimbursed advances and expenses, to the extent permitted by the Subservicing Agreement. If the Subservicing Account is not an Eligible Account, the Master Servicer shall be deemed to have received such monies upon receipt thereof by the Subservicer. The Subservicer shall not be required to deposit in the Subservicing Account payments or collections in the nature of late charges or assumption fees, or payments or collections received in the nature of prepayment charges to the extent that the Subservicer is entitled to retain such amounts pursuant to the Subservicing Agreement. On or before the date specified in the Program Guide, but in no event later than the Determination Date, the Master Servicer shall cause the Subservicer, pursuant to the Subservicing Agreement, to remit to the Master Servicer for deposit in the Custodial Account all funds held in the Subservicing Account with respect to each Mortgage Loan serviced by such Subservicer that are required to be remitted to the Master Servicer. The Subservicer will also be required, pursuant to the Subservicing Agreement, to advance on such scheduled date of remittance amounts equal to any scheduled monthly installments of principal and interest less its Subservicing Fees on any Mortgage Loans for which payment was not received by the Subservicer. This obligation to advance with respect to each Mortgage Loan will continue up to and including the first of the month following the date on which the related Mortgaged Property is sold at a foreclosure sale or is acquired by the Trust Fund by deed in lieu of foreclosure or otherwise. All such advances received by the Master Servicer shall be deposited promptly by it in the Custodial Account.

(b)     The Subservicer may also be required, pursuant to the Subservicing Agreement, to remit to the Master Servicer for deposit in the Custodial Account interest at the Adjusted Mortgage Rate (or Modified Net Mortgage Rate plus the rate per annum at which the Servicing Fee and the related Mortgage Insurance Premium Rate, if any, plus the applicable Certificate Insurer Premium Modified Rate, accrues in the case of a Modified Mortgage Loan) on any Curtailment received by such Subservicer in respect of a Mortgage Loan from the related Mortgagor during any month that is to be applied by the Subservicer to reduce the unpaid principal balance of the related Mortgage Loan as of the first day of such month, from the date of application of such Curtailment to the first day of the following month. Any amounts paid by a Subservicer pursuant to the preceding sentence shall be for the benefit of the Master Servicer as additional servicing compensation and shall be subject to its withdrawal or order from time to time pursuant to Sections 3.10(a)(iv) and (v).

CONFIDENTIAL                                                               RC_FGIC9019_00018192

(c)     In addition to the Custodial Account and the Certificate Account, the Master Servicer shall for any Nonsubserviced Mortgage Loan, and shall cause the Subservicers for Subserviced Mortgage Loans to, establish and maintain one or more Servicing Accounts and deposit and retain therein all collections from the Mortgagors (or advances from Subservicers) for the payment of taxes, assessments, hazard insurance premiums, Primary Insurance Policy premiums, if applicable, the Mortgage Insurance Premium, if applicable, or comparable items for the account of the Mortgagors. Each Servicing Account shall satisfy the requirements for a Subservicing Account and, to the extent permitted by the Program Guide or as is otherwise acceptable to the Master Servicer, may also function as a Subservicing Account. Withdrawals of amounts related to the Mortgage Loans from the Servicing Accounts may be made only to effect timely payment of taxes, assessments, hazard insurance premiums, Primary Insurance Policy premiums, if applicable, the Mortgage Insurance Premium, if applicable, or comparable items, to reimburse the Master Servicer or Subservicer out of related collections for any payments made pursuant to Sections 3.11 (with respect to the Primary Insurance Policy) and 3.12(a) (with respect to hazard insurance), to refund to any Mortgagors any sums as may be determined to be overages, to pay interest, if required, to Mortgagors on balances in the Servicing Account or to clear and terminate the Servicing Account at the termination of this Agreement in accordance with Section 9.01 or in accordance with the Program Guide. As part of its servicing duties, the Master Servicer shall, and the Subservicers will, pursuant to the Subservicing Agreements, be required to pay to the Mortgagors interest on funds in this account to the extent required by law.

(d)     The Master Servicer shall advance the payments referred to in the preceding subsection that are not timely paid by the Mortgagors or advanced by the Subservicers on the date when the tax, premium or other cost for which such payment is intended is due, but the Master Servicer shall be required so to advance only to the extent that such advances, in the good faith judgment of the Master Servicer, will be recoverable by the Master Servicer out of Insurance Proceeds, Liquidation Proceeds or otherwise.

Section 3.09.     Access to Certain Documentation and Information Regarding the Mortgage Loans.

In the event that compliance with this Section 3.09 shall make any Class of Certificates legal for investment by federally insured savings and loan associations, the Master Servicer shall provide, or cause the Subservicers to provide, to the Trustee, the Office of Thrift Supervision or the FDIC and the supervisory agents and examiners thereof access to the documentation regarding the Mortgage Loans required by applicable regulations of the Office of Thrift Supervision, such access being afforded without charge but only upon reasonable request and during normal business hours at the offices designated by the Master Servicer. The Master Servicer shall permit such representatives to photocopy any such documentation and shall provide equipment for that purpose at a charge reasonably approximating the cost of such photocopying to the Master Servicer.

Section 3.10.     Permitted Withdrawals from the Custodial Account.

(a)     The Master Servicer may, from time to time as provided herein, make withdrawals from the Custodial Account of amounts on deposit therein pursuant to Section 3.07 that are attributable to the Mortgage Loans for the following purposes:

(i)     to make deposits into the Certificate Account in the amounts and in the manner provided for in Section 4.01;

(ii)     to reimburse itself or the related Subservicer for previously unreimbursed Advances, Servicing Advances or other expenses made pursuant to Sections 3.01, 3.07(a), 3.08,

DOCSLA1:476701.5                              68

3.11, 3.12(a), 3.14 and 4.04 or otherwise reimbursable pursuant to the terms of this Agreement, such withdrawal right being limited to amounts received on the related Mortgage Loans (including, for this purpose, REO Proceeds, Insurance Proceeds, Liquidation Proceeds and proceeds from the purchase of a Mortgage Loan pursuant to Section 2.02, 2.03, 2.04, 4.07 or 4.08) which represent (A) Late Collections of Monthly Payments for which any such advance was made in the case of Subservicer Advances or Advances pursuant to Section 4.04 and (B) recoveries of amounts in respect of which such advances were made in the case of Servicing Advances;

    (iii)    to pay to itself or the related Subservicer (if not previously retained by such Subservicer) out of each payment received by the Master Servicer on account of interest on a Mortgage Loan as contemplated by Sections 3.14 and 3.16, an amount equal to that remaining portion of any such payment as to interest (but not in excess of the Servicing Fee and the Subservicing Fee, if not previously retained) which, when deducted, will result in the remaining amount of such interest being interest at a rate per annum equal to the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) plus the applicable Mortgage Insurance Premium Rate, if any, plus the applicable Certificate Insurer Premium Modified Rate, on the amount specified in the amortization schedule of the related Mortgage Loan as the principal balance thereof at the beginning of the period respecting which such interest was paid after giving effect to any previous Curtailments;

    (iv)    to pay to itself as additional servicing compensation any interest or investment income earned on funds or other property deposited in or credited to the Custodial Account that it is entitled to withdraw pursuant to Section 3.07(c);

    (v)    to pay to itself as additional servicing compensation any Foreclosure Profits, and any amounts remitted by Subservicers as interest in respect of Curtailments pursuant to Section 3.08(b);

    (vi)    to pay to itself, a Subservicer, a Seller, Residential Funding, the Depositor or any other appropriate Person, as the case may be, with respect to each Mortgage Loan or property acquired in respect thereof that has been purchased or otherwise transferred pursuant to Section 2.02, 2.03, 2.04, 4.07, 4.08 or 9.01, all amounts received thereon and not required to be distributed to Certificateholders as of the date on which the related Stated Principal Balance or Purchase Price is determined;

    (vii)    to reimburse itself or the related Subservicer for any Nonrecoverable Advance or Advances in the manner and to the extent provided in subsection (c) below, and any Advance or Servicing Advance made in connection with a modified Mortgage Loan that is in default or, in the judgment of the Master Servicer, default is reasonably foreseeable pursuant to Section 3.07(a), to the extent the amount of the Advance or Servicing Advance was added to the Stated Principal Balance of the Mortgage Loan in a prior calendar month;

    (viii)    to reimburse itself or the Depositor for expenses incurred by and reimbursable to it or the Depositor pursuant to Section 3.01(a), 3.11, 3.13, 3.14(c), 6.03, 10.01 or otherwise, or in connection with enforcing any repurchase, substitution or indemnification obligation of any Seller (other than the Depositor or an Affiliate of the Depositor) pursuant to the related Seller's Agreement;

    (ix)    to reimburse itself for amounts expended by it (a) pursuant to Section 3.14 in good faith in connection with the restoration of property damaged by an Uninsured Cause, and

CONFIDENTIAL                                                                RC_FGIC9019_00018194

(b) in connection with the liquidation of a Mortgage Loan or disposition of an REO Property to the extent not otherwise reimbursed pursuant to clause (ii) or (viii) above; and

(x)    to withdraw any amount deposited in the Custodial Account that was not required to be deposited therein pursuant to Section 3.07, including any payoff fees or penalties or any other additional amounts payable to the Master Servicer or Subservicer pursuant to the terms of the Mortgage Note.

(b)    Since, in connection with withdrawals pursuant to clauses (ii), (iii), (v) and (vi), the Master Servicer's entitlement thereto is limited to collections or other recoveries on the related Mortgage Loan, the Master Servicer shall keep and maintain separate accounting, on a Mortgage Loan by Mortgage Loan basis, for the purpose of justifying any withdrawal from the Custodial Account pursuant to such clauses.

(c)    The Master Servicer shall be entitled to reimburse itself or the related Subservicer for any advance made in respect of a Mortgage Loan that the Master Servicer determines to be a Nonrecoverable Advance by withdrawal from the Custodial Account of amounts on deposit therein attributable to the Mortgage Loans on any Certificate Account Deposit Date succeeding the date of such determination. Such right of reimbursement in respect of a Nonrecoverable Advance relating to an Advance made pursuant to Section 4.04 on any such Certificate Account Deposit Date shall be limited to an amount not exceeding the portion of such advance previously paid to Certificateholders (and not theretofore reimbursed to the Master Servicer or the related Subservicer).

Section 3.11.    Maintenance of MI Policy and Primary Insurance Coverage.

(a)    The Master Servicer shall not take, or permit any Subservicer to take, any action which would result in noncoverage under the MI Policy or any applicable Primary Insurance Policy of any loss which, but for the actions of the Master Servicer or Subservicer, would have been covered thereunder. To the extent coverage is available, the Master Servicer shall keep or cause to be kept in full force and effect each such Primary Insurance Policy until the principal balance of the related Mortgage Loan secured by a Mortgaged Property is reduced to 80% or less of the Appraised Value at origination in the case of such a Mortgage Loan having a Loan-to-Value Ratio at origination in excess of 80%, provided that such Primary Insurance Policy was in place as of the Cut-off Date and the Master Servicer had knowledge of such Primary Insurance Policy. The Master Servicer shall not cancel or refuse to renew any such Primary Insurance Policy applicable to a Nonsubserviced Mortgage Loan, or consent to any Subservicer canceling or refusing to renew any such Primary Insurance Policy applicable to a Mortgage Loan subserviced by it, that is in effect at the date of the initial issuance of the Certificates and is required to be kept in force hereunder unless the replacement Primary Insurance Policy for such canceled or non-renewed policy is maintained with an insurer whose claims-paying ability is acceptable to each Rating Agency for mortgage pass-through certificates having a rating equal to or better than the lower of the then-current rating or the rating assigned to the Certificates as of the Closing Date by such Rating Agency. The Master Servicer shall keep or cause to be kept in full force and effect the MI Policy, except as provided in Section 3.11(c).

(b)    In connection with its activities as administrator and servicer of the Mortgage Loans, the Master Servicer agrees to present or to cause the related Subservicer to present, on behalf of the Master Servicer, the Subservicer, if any, the Trustee and Certificateholders, claims to the MI Policy Provider under the MI Policy and to the insurer under any Primary Insurance Policies, in a timely manner in accordance with such policies, and, in this regard, to take or cause to be taken such reasonable action as shall be necessary to permit recovery under the MI Policy and any Primary Insurance Policies respecting defaulted Mortgage Loans. Pursuant to Section 3.07, any Insurance Proceeds collected by or remitted to the Master Servicer under the MI Policy or any Primary Insurance Policies shall be deposited in the

CONFIDENTIAL                                                            RC_FGIC9019_00018195

Custodial Account, subject to withdrawal pursuant to Section 3.10. In addition, the Master Servicer shall deposit any refunds of any Mortgage Insurance Premiums into the Custodial Account for inclusion in the Group I Available Distribution Amount or Group II Available Distribution Amount, as applicable, for the following Distribution Date.

(c)     In the event of a MI Policy Provider Default, if the MI Policy may be terminated without payment of any further premium for such policy, the Master Servicer shall use its best efforts to replace such policy with a substitute policy at a premium rate which is no greater than the premium rate that is charged under the MI Policy and with coverage for losses in amounts substantially similar to those under the MI Policy. Any substitute policy shall be entered into only with the written consent of the Certificate Insurer.

Section 3.12.     Maintenance of Fire Insurance and Omissions and Fidelity Coverage.

(a)     The Master Servicer shall cause to be maintained for each Mortgage Loan fire insurance with extended coverage in an amount which is equal to the lesser of the principal balance owing on such Mortgage Loan (together with the principal balance of any mortgage loan secured by a lien that is senior to the Mortgage Loan) or 100% of the insurable value of the improvements; *provided, however*, that such coverage may not be less than the minimum amount required to fully compensate for any loss or damage on a replacement cost basis. To the extent it may do so without breaching the related Subservicing Agreement, the Master Servicer shall replace any Subservicer that does not cause such insurance, to the extent it is available, to be maintained. The Master Servicer shall also cause to be maintained on property acquired upon foreclosure, or deed in lieu of foreclosure, of any Mortgage Loan, fire insurance with extended coverage in an amount which is at least equal to the amount necessary to avoid the application of any co-insurance clause contained in the related hazard insurance policy. Pursuant to Section 3.07, any amounts collected by the Master Servicer under any such policies (other than amounts to be applied to the restoration or repair of the related Mortgaged Property or property thus acquired or amounts released to the Mortgagor in accordance with the Master Servicer's normal servicing procedures) shall be deposited in the Custodial Account, subject to withdrawal pursuant to Section 3.10. Any cost incurred by the Master Servicer in maintaining any such insurance shall not, for the purpose of calculating monthly distributions to Certificateholders, be added to the amount owing under the Mortgage Loan, notwithstanding that the terms of the Mortgage Loan so permit. Such costs shall be recoverable by the Master Servicer out of related late payments by the Mortgagor or out of Insurance Proceeds and Liquidation Proceeds to the extent permitted by Section 3.10. It is understood and agreed that no earthquake or other additional insurance is to be required of any Mortgagor or maintained on property acquired in respect of a Mortgage Loan other than pursuant to such applicable laws and regulations as shall at any time be in force and as shall require such additional insurance. Whenever the improvements securing a Mortgage Loan are located at the time of origination of such Mortgage Loan in a federally designated special flood hazard area, the Master Servicer shall cause flood insurance (to the extent available) to be maintained in respect thereof. Such flood insurance shall be in an amount equal to the lesser of (i) the amount required to compensate for any loss or damage to the Mortgaged Property on a replacement cost basis and (ii) the maximum amount of such insurance available for the related Mortgaged Property under the national flood insurance program (assuming that the area in which such Mortgaged Property is located is participating in such program).

In the event that the Master Servicer shall obtain and maintain a blanket fire insurance policy with extended coverage insuring against hazard losses on all of the Mortgage Loans, it shall conclusively be deemed to have satisfied its obligations as set forth in the first sentence of this Section 3.12(a), it being understood and agreed that such policy may contain a deductible clause, in which case the Master Servicer shall, in the event that there shall not have been maintained on the related Mortgaged Property a policy complying with the first sentence of this Section 3.12(a) and there shall have been a loss which

CONFIDENTIAL                                                                                     RC_FGIC9019_00018196

would have been covered by such policy, deposit in the Certificate Account the amount not otherwise payable under the blanket policy because of such deductible clause. Any such deposit by the Master Servicer shall be made on the Certificate Account Deposit Date next preceding the Distribution Date which occurs in the month following the month in which payments under any such policy would have been deposited in the Custodial Account. In connection with its activities as administrator and servicer of the Mortgage Loans, the Master Servicer agrees to present, on behalf of itself, the Trustee and Certificateholders, claims under any such blanket policy.

(b)        The Master Servicer shall obtain and maintain at its own expense and keep in full force and effect throughout the term of this Agreement a blanket fidelity bond and an errors and omissions insurance policy covering the Master Servicer's officers and employees and other persons acting on behalf of the Master Servicer in connection with its activities under this Agreement. The amount of coverage shall be at least equal to the coverage that would be required by Fannie Mae or Freddie Mac, whichever is greater, with respect to the Master Servicer if the Master Servicer were servicing and administering the Mortgage Loans for Fannie Mae or Freddie Mac. In the event that any such bond or policy ceases to be in effect, the Master Servicer shall obtain a comparable replacement bond or policy from an issuer or insurer, as the case may be, meeting the requirements, if any, of the Program Guide and acceptable to the Depositor. Coverage of the Master Servicer under a policy or bond obtained by an Affiliate of the Master Servicer and providing the coverage required by this Section 3.12(b) shall satisfy the requirements of this Section 3.12(b).

Section 3.13.        Enforcement of Due-on-Sale Clauses; Assumption and Modification
Agreements; Certain Assignments.

(a)        When any Mortgaged Property is conveyed by the Mortgagor, the Master Servicer or Subservicer, to the extent it has knowledge of such conveyance, shall enforce any due-on-sale clause contained in any Mortgage Note or Mortgage, to the extent permitted under applicable law and governmental regulations, but only to the extent that such enforcement will not adversely affect or jeopardize coverage under any Required Insurance Policy. Notwithstanding the foregoing: (i) the Master Servicer shall not be deemed to be in default under this Section 3.13(a) by reason of any transfer or assumption which the Master Servicer is restricted by law from preventing; and (ii) if the Master Servicer determines that it is reasonably likely that any Mortgagor will bring, or if any Mortgagor does bring, legal action to declare invalid or otherwise avoid enforcement of a due-on-sale clause contained in any Mortgage Note or Mortgage, the Master Servicer shall not be required to enforce the due-on-sale clause or to contest such action.

(b)        Subject to the Master Servicer's duty to enforce any due-on-sale clause to the extent set forth in Section 3.13(a), in any case in which a Mortgaged Property is to be conveyed to a Person by a Mortgagor, and such Person is to enter into an assumption or modification agreement or supplement to the Mortgage Note or Mortgage which requires the signature of the Trustee, or if an instrument of release signed by the Trustee is required releasing the Mortgagor from liability on the Mortgage Loan, the Master Servicer is authorized, subject to the requirements of the sentence next following, to execute and deliver, on behalf of the Trustee, the assumption agreement with the Person to whom the Mortgaged Property is to be conveyed and such modification agreement or supplement to the Mortgage Note or Mortgage or other instruments as are reasonable or necessary to carry out the terms of the Mortgage Note or Mortgage or otherwise to comply with any applicable laws regarding assumptions or the transfer of the Mortgaged Property to such Person; *provided, however*, none of such terms and requirements shall both constitute a "significant modification" effecting an exchange or reissuance of such Mortgage Loan under the Code (or final, temporary or proposed Treasury regulations promulgated thereunder) and cause any REMIC created hereunder to fail to qualify as a REMIC under the Code or the imposition of any tax on "prohibited transactions" or "contributions" after the Startup Date under the REMIC Provisions. The Master Servicer

CONFIDENTIAL                                                                  RC_FGIC9019_00018197

shall execute and deliver such documents only if it reasonably determines that (i) its execution and
delivery thereof will not conflict with or violate any terms of this Agreement or cause the unpaid balance
and interest on the Mortgage Loan to be uncollectible in whole or in part, (ii) any required consents of
insurers under any Required Insurance Policies have been obtained and (iii) subsequent to the closing of
the transaction involving the assumption or transfer (A) the Mortgage Loan will continue to be secured by
a first mortgage lien (or, with respect to any junior lien, a junior lien of the same priority in relation to any
senior lien on such Mortgage Loan) pursuant to the terms of the Mortgage, (B) such transaction will not
adversely affect the coverage under any Required Insurance Policies, (C) the Mortgage Loan will fully
amortize over the remaining term thereof, (D) no material term of the Mortgage Loan (including the
interest rate on the Mortgage Loan) will be altered nor will the term of the Mortgage Loan be changed
and (E) if the seller/transferor of the Mortgaged Property is to be released from liability on the Mortgage
Loan, the buyer/transferee of the Mortgaged Property would be qualified to assume the Mortgage Loan
based on generally comparable credit quality and such release will not (based on the Master Servicer's or
Subservicer's good faith determination) adversely affect the collectability of the Mortgage Loan. Upon
receipt of appropriate instructions from the Master Servicer in accordance with the foregoing, the Trustee
shall execute any necessary instruments for such assumption or substitution of liability as directed by the
Master Servicer. Upon the closing of the transactions contemplated by such documents, the Master
Servicer shall cause the originals or true and correct copies of the assumption agreement, the release (if
any), or the modification or supplement to the Mortgage Note or Mortgage to be delivered to the Trustee
or the Custodian and deposited with the Mortgage File for such Mortgage Loan. Any fee collected by the
Master Servicer or such related Subservicer for entering into an assumption or substitution of liability
agreement will be retained by the Master Servicer or such Subservicer as additional servicing
compensation.

(c)     The Master Servicer or the related Subservicer, as the case may be, shall be entitled to
approve a request from a Mortgagor for a partial release of the related Mortgaged Property, the granting
of an easement thereon in favor of another Person, any alteration or demolition of the related Mortgaged
Property or other similar matters if it has determined, exercising its good faith business judgment in the
same manner as it would if it were the owner of the related Mortgage Loan, that the security for, and the
timely and full collectability of, such Mortgage Loan would not be adversely affected thereby and that
any REMIC created hereunder would not fail to continue to qualify as a REMIC under the Code as a
result thereof and (subject to Section 10.01(f)) that no tax on "prohibited transactions" or "contributions"
after the Startup Date would be imposed on any REMIC created hereunder as a result thereof. Any fee
collected by the Master Servicer or the related Subservicer for processing such a request will be retained
by the Master Servicer or such Subservicer as additional servicing compensation.

(d)     Subject to any other applicable terms and conditions of this Agreement, the Trustee and
Master Servicer shall be entitled to approve an assignment in lieu of satisfaction with respect to any
Mortgage Loan, provided the obligee with respect to such Mortgage Loan following such proposed
assignment provides the Trustee and Master Servicer with a "Lender Certification for Assignment of
Mortgage Loan" in the form attached hereto as Exhibit M, in form and substance satisfactory to the
Trustee and Master Servicer, providing the following: (i) that the Mortgage Loan is secured by
Mortgaged Property located in a jurisdiction in which an assignment in lieu of satisfaction is required to
preserve lien priority, minimize or avoid mortgage recording taxes or otherwise comply with, or facilitate
a refinancing under, the laws of such jurisdiction; (ii) that the substance of the assignment is, and is
intended to be, a refinancing of such Mortgage Loan and that the form of the transaction is solely to
comply with, or facilitate the transaction under, such local laws; (iii) that the Mortgage Loan following
the proposed assignment will have a rate of interest more than the greater of (A) 3% and (B) 5% of the
annual yield of the unmodified Mortgage Loan, below or above the rate of interest on such Mortgage
Loan prior to such proposed assignment; and (iv) that such assignment is at the request of the borrower
under the related Mortgage Loan. Upon approval of an assignment in lieu of satisfaction with respect to

CONFIDENTIAL                                                              RC_FGIC9019_00018198

any Mortgage Loan, the Master Servicer shall receive cash in an amount equal to the unpaid principal balance of and accrued interest on such Mortgage Loan and the Master Servicer shall treat such amount as a Principal Prepayment in Full with respect to such Mortgage Loan for all purposes hereof.

Section 3.14.    Realization Upon Defaulted Mortgage Loans.

(a)    The Master Servicer shall foreclose upon or otherwise comparably convert (which may include an REO Acquisition) the ownership of properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments pursuant to Section 3.07. Alternatively, the Master Servicer may take other actions in respect of a defaulted Mortgage Loan, which may include (i) accepting a short sale (a payoff of the Mortgage Loan for an amount less than the total amount contractually owed in order to facilitate a sale of the Mortgaged Property by the Mortgagor) or permitting a short refinancing (a payoff of the Mortgage Loan for an amount less than the total amount contractually owed in order to facilitate refinancing transactions by the Mortgagor not involving a sale of the Mortgaged Property), (ii) arranging for a repayment plan or (iii) agreeing to a modification in accordance with Section 3.07. In connection with such foreclosure or other conversion or action, the Master Servicer shall, consistent with Section 3.11, follow such practices and procedures as it shall deem necessary or advisable, as shall be normal and usual in its general mortgage servicing activities and as shall be required or permitted by the Program Guide; provided that the Master Servicer shall not be liable in any respect hereunder if the Master Servicer is acting in connection with any such foreclosure or other conversion or action in a manner that is consistent with the provisions of this Agreement. The Master Servicer, however, shall not be required to expend its own funds or incur other reimbursable charges in connection with any foreclosure, or attempted foreclosure which is not completed, or towards the correction of any default on a related senior mortgage loan, or towards the restoration of any property unless it shall determine (i) that such restoration and/or foreclosure will increase the proceeds of liquidation of the Mortgage Loan to Holders of Certificates of one or more Classes or the Certificate Insurer after reimbursement to itself for such expenses or charges and (ii) that such expenses and charges will be recoverable to it through Liquidation Proceeds, Insurance Proceeds, or REO Proceeds (respecting which it shall have priority for purposes of withdrawals from the Custodial Account pursuant to Section 3.10, whether or not such expenses and charges are actually recoverable from related Liquidation Proceeds, Insurance Proceeds or REO Proceeds). In the event of such a determination by the Master Servicer pursuant to this Section 3.14(a), the Master Servicer shall be entitled to reimbursement of its funds so expended pursuant to Section 3.10. In addition, the Master Servicer may pursue any remedies that may be available in connection with a breach of a representation and warranty with respect to any such Mortgage Loan in accordance with Sections 2.03 and 2.04. However, the Master Servicer is not required to continue to pursue both foreclosure (or similar remedies) with respect to the Mortgage Loans and remedies in connection with a breach of a representation and warranty if the Master Servicer determines in its reasonable discretion that one such remedy is more likely to result in a greater recovery as to the Mortgage Loan. Upon the occurrence of a Cash Liquidation or REO Disposition, following the deposit in the Custodial Account of all Insurance Proceeds, Liquidation Proceeds and other payments and recoveries referred to in the definition of "Cash Liquidation" or "REO Disposition," as applicable, upon receipt by the Trustee of written notification of such deposit signed by a Servicing Officer, the Trustee or any Custodian, as the case may be, shall release to the Master Servicer the related Mortgage File and the Trustee shall execute and deliver such instruments of transfer or assignment prepared by the Master Servicer, in each case without recourse, as shall be necessary to vest in the Master Servicer or its designee, as the case may be, the related Mortgage Loan, and thereafter such Mortgage Loan shall not be part of the Trust Fund. Notwithstanding the foregoing or any other provision of this Agreement, in the Master Servicer's sole discretion with respect to any defaulted Mortgage Loan or REO Property as to either of the following provisions, (i) a Cash Liquidation or REO Disposition may be deemed to have occurred if substantially all amounts expected by the Master Servicer to be received in connection with the related defaulted Mortgage Loan or REO

CONFIDENTIAL                                                              RC_FGIC9019_00018199

Property have been received, and (ii) for purposes of determining the amount of any Liquidation
Proceeds, Insurance Proceeds, REO Proceeds or other unscheduled collections or the amount of any
Realized Loss, the Master Servicer may take into account minimal amounts of additional receipts
expected to be received or any estimated additional liquidation expenses expected to be incurred in
connection with the related defaulted Mortgage Loan or REO Property.

(b)     In the event that title to any Mortgaged Property is acquired by the Trust Fund as an REO
Property by foreclosure or by deed in lieu of foreclosure, the deed or certificate of sale shall be issued to
the Trustee or to its nominee on behalf of Certificateholders. Notwithstanding any such acquisition of
title and cancellation of the related Mortgage Loan, such REO Property shall (except as otherwise
expressly provided herein) be considered to be an Outstanding Mortgage Loan held in the Trust Fund
until such time as the REO Property shall be sold. Consistent with the foregoing for purposes of all
calculations hereunder so long as such REO Property shall be considered to be an Outstanding Mortgage
Loan it shall be assumed that, notwithstanding that the indebtedness evidenced by the related Mortgage
Note shall have been discharged, such Mortgage Note and the related amortization schedule in effect at
the time of any such acquisition of title (after giving effect to any previous Curtailments and before any
adjustment thereto by reason of any bankruptcy or similar proceeding or any moratorium or similar
waiver or grace period) remain in effect.

(c)     In the event that the Trust Fund acquires any REO Property as aforesaid or otherwise in
connection with a default or imminent default on a Mortgage Loan, the Master Servicer on behalf of the
Trust Fund shall dispose of such REO Property as soon as practicable, giving due consideration to the
interests of the Certificateholders and the Certificate Insurer, but in all cases, within three full years after
the taxable year of its acquisition by the Trust Fund for purposes of Section 860G(a)(8) of the Code (or
such shorter period as may be necessary under applicable state (including any state in which such
property is located) law to maintain the status of each REMIC created hereunder as a REMIC under
applicable state law and avoid taxes resulting from such property failing to be foreclosure property under
applicable state law) or, at the expense of the Trust Fund, request, more than 60 days before the day on
which such grace period would otherwise expire, an extension of such grace period unless the Master
Servicer (subject to Section 10.01(f)) obtains for the Trustee and the Certificate Insurer an Opinion of
Counsel, addressed to the Trustee, the Certificate Insurer and the Master Servicer, to the effect that the
holding by the Trust Fund of such REO Property subsequent to such period will not result in the
imposition of taxes on "prohibited transactions" as defined in Section 860F of the Code or cause any
REMIC created hereunder to fail to qualify as a REMIC (for federal (or any applicable State or local)
income tax purposes) at any time that any Certificates are outstanding, in which case the Trust Fund may
continue to hold such REO Property (subject to any conditions contained in such Opinion of Counsel).
The Master Servicer shall be entitled to be reimbursed from the Custodial Account for any costs incurred
in obtaining such Opinion of Counsel, as provided in Section 3.10. Notwithstanding any other provision
of this Agreement, no REO Property acquired by the Trust Fund shall be rented (or allowed to continue to
be rented) or otherwise used by or on behalf of the Trust Fund in such a manner or pursuant to any terms
that would (i) cause such REO Property to fail to qualify as "foreclosure property" within the meaning of
Section 860G(a)(8) of the Code or (ii) subject any REMIC created hereunder to the imposition of any
federal income taxes on the income earned from such REO Property, including any taxes imposed by
reason of Section 860G(c) of the Code, unless the Master Servicer has agreed to indemnify and hold
harmless the Trust Fund with respect to the imposition of any such taxes.

(d)     The proceeds of any Cash Liquidation, REO Disposition or purchase or repurchase of any
Mortgage Loan pursuant to the terms of this Agreement, as well as any recovery (other than Subsequent
Recoveries) resulting from a collection of Liquidation Proceeds, Insurance Proceeds or REO Proceeds,
will be applied in the following order of priority: *first*, to reimburse the Master Servicer or the related
Subservicer in accordance with Section 3.10(a)(ii); *second*, to the Certificateholders to the extent of

CONFIDENTIAL                                                    RC_FGIC9019_00018200

accrued and unpaid interest on the Mortgage Loan, and any related REO Imputed Interest, at the Net Mortgage Rate (or the Modified Net Mortgage Rate in the case of a Modified Mortgage Loan), to the Due Date in the related Due Period prior to the Distribution Date on which such amounts are to be distributed; *third*, to the Certificateholders as a recovery of principal on the Mortgage Loan (or REO Property); *fourth*, to all Servicing Fees and Subservicing Fees payable therefrom (and the Master Servicer and the Subservicer shall have no claims for any deficiencies with respect to such fees which result from the foregoing allocation); *fifth*, to the Certificate Insurer for reimbursement for any payments made pursuant to the applicable Certificate Guaranty Insurance Policy to the extent not reimbursed pursuant to Section 4.02(c)(v) or (vi), or 4.02(d)(vi) or (vii); and *sixth*, to Foreclosure Profits.

(e)     In the event of a default on a Mortgage Loan one or more of whose obligors is not a United States Person, in connection with any foreclosure or acquisition of a deed in lieu of foreclosure (together, "foreclosure") in respect of such Mortgage Loan, the Master Servicer will cause compliance with the provisions of Treasury Regulation Section 1.1445-2(d)(3) (or any successor thereto) necessary to assure that no withholding tax obligation arises with respect to the proceeds of such foreclosure except to the extent, if any, that proceeds of such foreclosure are required to be remitted to the obligors on such Mortgage Loan.

Section 3.15.    Trustee to Cooperate; Release of Mortgage Files.

(a)     Upon becoming aware of the payment in full of any Mortgage Loan, or upon the receipt by the Master Servicer of a notification that payment in full will be escrowed in a manner customary for such purposes, the Master Servicer will immediately notify the Trustee (if it holds the related Mortgage File) or the Custodian by a certification of a Servicing Officer (which certification shall include a statement to the effect that all amounts received or to be received in connection with such payment which are required to be deposited in the Custodial Account pursuant to Section 3.07 have been or will be so deposited), substantially in one of the forms attached hereto as Exhibit G, or, in the case of a Custodian, an electronic request in a form acceptable to the Custodian, requesting delivery to it of the Mortgage File. Upon receipt of such certification and request, the Trustee shall promptly release, or cause the Custodian to release, the related Mortgage File to the Master Servicer. The Master Servicer is authorized to execute and deliver to the Mortgagor the request for reconveyance, deed of reconveyance or release or satisfaction of mortgage or such instrument releasing the lien of the Mortgage, together with the Mortgage Note with, as appropriate, written evidence of cancellation thereon and to cause the removal from the registration on the MERS® System of such Mortgage and to execute and deliver, on behalf of the Trustee and the Certificateholders or any of them, any and all instruments of satisfaction or cancellation or of partial or full release, including any applicable UCC termination statements. No expenses incurred in connection with any instrument of satisfaction or deed of reconveyance shall be chargeable to the Custodial Account or the Certificate Account.

(b)     From time to time as is appropriate for the servicing or foreclosure of any Mortgage Loan, the Master Servicer shall deliver to the Custodian, with a copy to the Trustee, a certificate of a Servicing Officer substantially in one of the forms attached as Exhibit G hereto, or, in the case of a Custodian, an electronic request in a form acceptable to the Custodian, requesting that possession of all, or any document constituting part of, the Mortgage File be released to the Master Servicer and certifying as to the reason for such release and that such release will not invalidate any insurance coverage provided in respect of the Mortgage Loan under any Required Insurance Policy. Upon receipt of the foregoing, the Trustee shall deliver, or cause the Custodian to deliver, the Mortgage File or any document therein to the Master Servicer. The Master Servicer shall cause each Mortgage File or any document therein so released to be returned to the Trustee, or the Custodian as agent for the Trustee when the need therefor by the Master Servicer no longer exists, unless (i) the Mortgage Loan has been liquidated and the Liquidation Proceeds relating to the Mortgage Loan have been deposited in the Custodial Account or

DOCSLA1:476701.5                 76

(ii) the Mortgage File or such document has been delivered directly or through a Subservicer to an attorney, or to a public trustee or other public official as required by law, for purposes of initiating or pursuing legal action or other proceedings for the foreclosure of the Mortgaged Property either judicially or non-judicially, and the Master Servicer has delivered directly or through a Subservicer to the Trustee a certificate of a Servicing Officer certifying as to the name and address of the Person to which such Mortgage File or such document was delivered and the purpose or purposes of such delivery. In the event of the liquidation of a Mortgage Loan, the Trustee shall deliver the Request for Release with respect thereto to the Master Servicer upon the Trustee's receipt of notification from the Master Servicer of the deposit of the related Liquidation Proceeds in the Custodial Account.

(c)     The Trustee or the Master Servicer on the Trustee's behalf shall execute and deliver to the Master Servicer, if necessary, any court pleadings, requests for trustee's sale or other documents necessary to the foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brought to obtain judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judgment, or to enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise available at law or in equity. Together with such documents or pleadings (if signed by the Trustee), the Master Servicer shall deliver to the Trustee a certificate of a Servicing Officer requesting that such pleadings or documents be executed by the Trustee and certifying as to the reason such documents or pleadings are required and that the execution and delivery thereof by the Trustee will not invalidate any insurance coverage under any Required Insurance Policy or invalidate or otherwise affect the lien of the Mortgage, except for the termination of such a lien upon completion of the foreclosure or trustee's sale.

Section 3.16.     Servicing and Other Compensation; Compensating Interest.

(a)     The Master Servicer, as compensation for its activities hereunder, shall be entitled to receive on each Distribution Date the amounts provided for by clauses (iii), (iv), (v) and (vi) of Section 3.10(a), subject to clause (e) below. The amount of servicing compensation provided for in such clauses shall be accounted for on a Mortgage Loan-by-Mortgage Loan basis. In the event that Liquidation Proceeds, Insurance Proceeds and REO Proceeds (net of amounts reimbursable therefrom pursuant to Section 3.10(a)(ii)) in respect of a Cash Liquidation or REO Disposition exceed the unpaid principal balance of such Mortgage Loan plus unpaid interest accrued thereon (including REO Imputed Interest) at a per annum rate equal to the related Net Mortgage Rate (or the Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) plus the Mortgage Insurance Premium Rate, if applicable, plus the applicable Certificate Insurer Premium Modified Rate, the Master Servicer shall be entitled to retain therefrom and to pay to itself and/or the related Subservicer, any Foreclosure Profits and any Servicing Fee or Subservicing Fee considered to be accrued but unpaid.

(b)     Additional servicing compensation in the form of assumption fees, late payment charges, investment income on amounts in the Custodial Account or the Certificate Account or otherwise shall be retained by the Master Servicer or the Subservicer to the extent provided herein, subject to clause (e) below. Prepayment charges shall be deposited into the Certificate Account and shall be paid on each Distribution Date to the holders of the related Class SB Certificates.

(c)     The Master Servicer shall be required to pay, or cause to be paid, all expenses incurred by it in connection with its servicing activities hereunder (including payment of premiums for the Primary Insurance Policies, if any, to the extent such premiums are not required to be paid by the related Mortgagors, and the fees and expenses of the Trustee and any Custodian) and shall not be entitled to reimbursement therefor except as specifically provided in Sections 3.10 and 3.14.

CONFIDENTIAL                                                      RC_FGIC9019_00018202

(d)     The Master Servicer's right to receive servicing compensation may not be transferred in whole or in part except in connection with the transfer of all of its responsibilities and obligations of the Master Servicer under this Agreement.

(e)     Notwithstanding clauses (a) and (b) above, the amount of servicing compensation that the Master Servicer shall be entitled to receive for its activities hereunder for the period ending on each Distribution Date shall be reduced (but not below zero) by the amount of Compensating Interest (if any) for such Distribution Date used to cover Prepayment Interest Shortfalls as provided in Section 3.16(f) below. Such reduction shall be applied during such period as follows: first, to any Servicing Fee or Subservicing Fee to which the Master Servicer is entitled pursuant to Section 3.10(a)(iii); and second, to any income or gain realized from any investment of funds held in the Custodial Account or the Certificate Account to which the Master Servicer is entitled pursuant to Sections 3.07(c) or 4.01(c), respectively. In making such reduction, the Master Servicer shall not withdraw from the Custodial Account any such amount representing all or a portion of the Servicing Fee to which it is entitled pursuant to Section 3.10(a)(iii); and (ii) shall not withdraw from the Custodial Account or Certificate Account any such amount to which it is entitled pursuant to Section 3.07(c) or 4.01(c).

(f)     With respect to any Distribution Date, Prepayment Interest Shortfalls on the Mortgage Loans will be covered first, by the Master Servicer, but only to the extent such Prepayment Interest Shortfalls do not exceed Eligible Master Servicing Compensation.

(g)     With respect to any Distribution Date, Compensating Interest derived from a particular Loan Group shall be used on such Distribution Date to cover any Prepayment Interest Shortfalls in such Loan Group and then to cover any Prepayment Interest Shortfalls on the other Loan Group in the same manner and priority as Excess Cash Flow would cover such shortfalls pursuant to Section 4.02.

Section 3.17.     Reports to the Trustee and the Depositor.

Not later than fifteen days after each Distribution Date, the Master Servicer shall forward to the Trustee, the Certificate Insurer and the Depositor a statement, certified by a Servicing Officer, setting forth the status of the Custodial Account as of the close of business on such Distribution Date as it relates to the Mortgage Loans and showing, for the period covered by such statement, the aggregate of deposits in or withdrawals from the Custodial Account in respect of the Mortgage Loans for each category of deposit specified in Section 3.07 and each category of withdrawal specified in Section 3.10.

Section 3.18.     Annual Statement as to Compliance.

The Master Servicer will deliver to the Depositor, the Trustee and the Certificate Insurer on or before the earlier of (a) March 31 of each year, beginning with the first March 31 that occurs at least six months after the Cut-off Date or (b) with respect to any calendar year during which the Depositor's annual report on Form 10-K is required to be filed in accordance with the Exchange Act and the rules and regulations of the Commission, on or before the date on which the annual report on Form 10-K is required to be filed in accordance with the Exchange Act and the rules and regulations of the Commission, an Officers' Certificate stating, as to each signer thereof, that (i) a review of the activities of the Master Servicer during the preceding calendar year related to its servicing of mortgage loans and of its performance under the pooling and servicing agreements, including this Agreement, has been made under such officers' supervision, (ii) to the best of such officers' knowledge, based on such review, the Master Servicer has complied in all material respects with the minimum servicing standards set forth in the Uniform Single Attestation Program for Mortgage Bankers and has fulfilled all of its material obligations relating to this Agreement in all material respects throughout such year, or, if there has been material noncompliance with such servicing standards or a default in the fulfillment in all material respects of any

CONFIDENTIAL                                                                    RC_FGIC9019_00018203

such obligation relating to this Agreement, such statement shall include a description of such
noncompliance or specify each such default, as the case may be, known to such officer and the nature and
status thereof and (iii) to the best of such officers' knowledge, each Subservicer has complied in all
material respects with the minimum servicing standards set forth in the Uniform Single Attestation
Program for Mortgage Bankers and has fulfilled all of its material obligations under its Subservicing
Agreement in all material respects throughout such year, or, if there has been material noncompliance
with such servicing standards or a material default in the fulfillment of such obligations relating to this
Agreement, such statement shall include a description of such noncompliance or specify each such
default, as the case may be, known to such officer and the nature and status thereof.

Section 3.19.   Annual Independent Public Accountants' Servicing Report.

On or before the earlier of (a) March 31 of each year, beginning with the first March 31 that
occurs at least six months after the Cut-off Date, or (b) with respect to any calendar year during which the
Depositor's annual report on Form 10-K is required to be filed in accordance with the Exchange Act and
the rules and regulations of the Commission, on or before the date on which the annual report is required
to be filed in accordance with the Exchange Act and the rules and regulations of the Commission, the
Master Servicer at its expense shall cause a firm of independent public accountants, which shall be
members of the American Institute of Certified Public Accountants, to furnish a report to the Depositor,
the Trustee and the Certificate Insurer stating its opinion that, on the basis of an examination conducted
by such firm substantially in accordance with standards established by the American Institute of Certified
Public Accountants, the assertions made pursuant to Section 3.18 regarding compliance with the
minimum servicing standards set forth in the Uniform Single Attestation Program for Mortgage Bankers
during the preceding calendar year are fairly stated in all material respects, subject to such exceptions and
other qualifications that, in the opinion of such firm, such accounting standards require it to report.  In
rendering such statement, such firm may rely, as to matters relating to the direct servicing of mortgage
loans by Subservicers, upon comparable statements for examinations conducted by independent public
accountants substantially in accordance with standards established by the American Institute of Certified
Public Accountants (rendered within one year of such statement) with respect to such Subservicers.

Section 3.20.   Right of the Depositor in Respect of the Master Servicer.

The Master Servicer shall afford the Depositor and the Trustee, upon reasonable notice, during
normal business hours access to all records maintained by the Master Servicer in respect of its rights and
obligations hereunder and access to officers of the Master Servicer responsible for such obligations.
Upon request, the Master Servicer shall furnish the Depositor with its most recent financial statements
and such other information as the Master Servicer possesses regarding its business, affairs, property and
condition, financial or otherwise.  The Master Servicer shall also cooperate with all reasonable requests
for information including, but not limited to, notices, tapes and copies of files, regarding itself, the
Mortgage Loans or the Certificates from any Person or Persons identified by the Depositor or Residential
Funding.  The Certificate Insurer hereby is so identified.  The Depositor may enforce the obligation of the
Master Servicer hereunder and may, but it is not obligated to, perform or cause a designee to perform, any
defaulted obligation of the Master Servicer hereunder or exercise the rights of the Master Servicer
hereunder; provided that the Master Servicer shall not be relieved of any of its obligations hereunder by
virtue of such performance by the Depositor or its designee.  Neither the Depositor nor the Trustee shall
have the responsibility or liability for any action or failure to act by the Master Servicer and the Depositor
is not obligated to supervise the performance of the Master Servicer under this Agreement or otherwise.

CONFIDENTIAL          RC_FGIC9019_00018204

Section 3.21. Duties of Trustee Under MI Policy.

(a) The Trustee hereby shall accept and hold the MI Policy on behalf of the Trust and to be the named insured under the MI Policy. The Trustee shall hold the MI Policy at its Corporate Trust Office.

(b) On each Distribution Date, the Trustee shall pay the premium for the MI Policy out of amounts on deposit in the Certificate Account. All claims under the MI Policy shall be made by the Master Servicer on behalf of the Trustee and any funds received by the Master Servicer with respect to the MI Policy will be deemed to have been received by the Master Servicer on behalf of the Trustee. Regardless, any funds received by the Trustee under the MI Policy shall be remitted to the Trustee within two Business Days for deposit to the Certificate Account.

(c) In the event of a MI Policy Provider Default under the MI Policy, the MI Policy Provider may be terminated by the Trustee on behalf of the Trust only if the Trustee is so directed in writing by the Certificate Insurer and the Master Servicer.

Section 3.22. Advance Facility.

(a) The Master Servicer is hereby authorized to enter into a financing or other facility (any such arrangement, an "Advance Facility") under which (1) the Master Servicer sells, assigns or pledges to another Person (an "Advancing Person") the Master Servicer's rights under this Agreement to be reimbursed for any Advances or Servicing Advances and/or (2) an Advancing Person agrees to fund some or all Advances and/or Servicing Advances required to be made by the Master Servicer pursuant to this Agreement. No consent of the Depositor, the Trustee, the Certificateholders or any other party shall be required before the Master Servicer may enter into an Advance Facility. Notwithstanding the existence of any Advance Facility under which an Advancing Person agrees to fund Advances and/or Servicing Advances on the Master Servicer's behalf, the Master Servicer shall remain obligated pursuant to this Agreement to make Advances and Servicing Advances pursuant to and as required by this Agreement. If the Master Servicer enters into an Advance Facility, and for so long as an Advancing Person remains entitled to receive reimbursement for any Advances including Nonrecoverable Advances ("Advance Reimbursement Amounts") and/or Servicing Advances including Nonrecoverable Advances ("Servicing Advance Reimbursement Amounts" and together with Advance Reimbursement Amounts, "Reimbursement Amounts") (in each case to the extent such type of Reimbursement Amount is included in the Advance Facility), as applicable, pursuant to this Agreement, then the Master Servicer shall identify such Reimbursement Amounts consistent with the reimbursement rights set forth in Section 3.10(a)(ii) and (vii) and remit such Reimbursement Amounts in accordance with this Section 3.22 or otherwise in accordance with the documentation establishing the Advance Facility to such Advancing Person or to a trustee, agent or custodian (an "Advance Facility Trustee") designated by such Advancing Person in an Advance Facility Notice described below in Section 3.22(b). Notwithstanding the foregoing, if so required pursuant to the terms of the Advance Facility, the Master Servicer may direct, and if so directed in writing, the Trustee is hereby authorized to and shall pay to the Advance Facility Trustee the Reimbursement Amounts identified pursuant to the preceding sentence. An Advancing Person whose obligations hereunder are limited to the funding of Advances and/or Servicing Advances shall not be required to meet the qualifications of a Master Servicer or a Subservicer pursuant to Section 3.02(a) or 6.02(c) hereof and shall not be deemed to be a Subservicer under this Agreement. Notwithstanding anything to the contrary herein, in no event shall Advance Reimbursement Amounts or Servicing Advance Reimbursement Amounts be included in the Available Distribution Amount or distributed to Certificateholders.

CONFIDENTIAL    RC_FGIC9019_00018205

(b)      If the Master Servicer enters into an Advance Facility and makes the election set forth in Section 3.22(a), the Master Servicer and the related Advancing Person shall deliver to the Certificate Insurer and the Trustee a written notice and payment instruction (an "Advance Facility Notice"), providing the Trustee with written payment instructions as to where to remit Advance Reimbursement Amounts and/or Servicing Advance Reimbursement Amounts (each to the extent such type of Reimbursement Amount is included within the Advance Facility) on subsequent Distribution Dates. The payment instruction shall require the applicable Reimbursement Amounts to be distributed to the Advancing Person or to an Advance Facility Trustee designated in the Advance Facility Notice. An Advance Facility Notice may only be terminated by the joint written direction of the Master Servicer and the related Advancing Person (and any related Advance Facility Trustee. The Master Servicer shall provide the Certificate Insurer with notice of any termination of any Advance Facility pursuant to this Section 3.22(b).

(c)      Reimbursement Amounts shall consist solely of amounts in respect of Advances and/or Servicing Advances made with respect to the Mortgage Loans for which the Master Servicer would be permitted to reimburse itself in accordance with Section 3.10(a)(ii) and (vii) hereof, assuming the Master Servicer or the Advancing Person had made the related Advance(s) and/or Servicing Advance(s). Notwithstanding the foregoing, except with respect to reimbursement of Nonrecoverable Advances as set forth in Section 3.10(c) of this Agreement, no Person shall be entitled to reimbursement from funds held in the Collection Account for future distribution to Certificateholders pursuant to this Agreement. Neither the Depositor nor the Trustee shall have any duty or liability with respect to the calculation of any Reimbursement Amount, nor shall the Depositor or the Trustee have any responsibility to track or monitor the administration of the Advance Facility and the Depositor shall not have any responsibility to track, monitor or verify the payment of Reimbursement Amounts to the related Advancing Person or Advance Facility Trustee. The Master Servicer shall maintain and provide to any successor master servicer a detailed accounting on a loan-by-loan basis as to amounts advanced by, sold, pledged or assigned to, and reimbursed to any Advancing Person. The successor master servicer shall be entitled to rely on any such information provided by the Master Servicer and the successor master servicer shall not be liable for any errors in such information.

(d)      Upon the direction of and at the expense of the Master Servicer, the Trustee agrees to execute such acknowledgments, certificates, and other documents reasonably satisfactory to the Trustee provided by the Master Servicer and reasonable satisfactory to the Trustee recognizing the interests of any Advancing Person or Advance Facility Trustee in such Reimbursement Amounts as the Master Servicer may cause to be made subject to Advance Facilities pursuant to this Section 3.22, and such other documents in connection with such Advance Facility as may be reasonably requested from time to time by any Advancing Person or Advance Facility Trustee and reasonably satisfactory to the Trustee.

(e)      Reimbursement Amounts collected with respect to each Mortgage Loan shall be allocated to outstanding unreimbursed Advances or Servic ing Advances (as the case may be) made with respect to that Mortgage Loan on a "first-in, first out" ("FIFO") basis, subject to the qualifications set forth below:

(i)      Any successor Master Servicer to Residential Funding (a "Successor Master Servicer") and the Advancing Person or Advance Facility Trustee shall be required to apply all amounts available in accordance with this Section 3.22(e) to the reimbursement of Advances and Servicing Advances in the manner provided for herein; provided, however, that after the succession of a Successor Master Servicer, (A) to the extent that any Advances or Servicing Advances with respect to any particular Mortgage Loan are reimbursed from payments or recoveries, if any, from the related Mortgagor, and Liquidation Proceeds or Insurance Proceeds, if any, with respect to that Mortgage Loan, reimbursement shall be made, first, to the Advancing Person or Advance Facility Trustee in respect of Advances and/or Servicing Advances related to that Mortgage Loan to the extent of the interest of the Advancing Person or

DOCSLA1:476701.5                                81

Advance Facility Trustee in such Advances and/or Servicing Advances, second to the Master Servicer in respect of Advances and/or Servicing Advances related to that Mortgage Loan in excess of those in which the Advancing Person or Advance Facility Trustee Person has an interest, and third, to the Successor Master Servicer in respect of any other Advances and/or Servicing Advances related to that Mortgage Loan, from such sources as and when collected, and (B) reimbursements of Advances and Servicing Advances that are Nonrecoverable Advances shall be made pro rata to the Advancing Person or Advance Facility Trustee, on the one hand, and any such Successor Master Servicer, on the other hand, on the basis of the respective aggregate outstanding unreimbursed Advances and Servicing Advances that are Nonrecoverable Advances owed to the Advancing Person, Advance Facility Trustee or Master Servicer pursuant to this Agreement, on the one hand, and any such Successor Master Servicer, on the other hand, and without regard to the date on which any such Advances or Servicing Advances shall have been made. In the event that, as a result of the FIFO allocation made pursuant to this Section 3.22(e), some or all of a Reimbursement Amount paid to the Advancing Person or Advance Facility Trustee relates to Advances or Servicing Advances that were made by a Person other than Residential Funding or the Advancing Person or Advance Facility Trustee, then the Advancing Person or Advance Facility Trustee shall be required to remit any portion of such Reimbursement Amount to the Person entitled to such portion of such Reimbursement Amount. Without limiting the generality of the foregoing, Residential Funding shall remain entitled to be reimbursed by the Advancing Person or Advance Facility Trustee for all Advances and Servicing Advances funded by Residential Funding to the extent the related Reimbursement Amount(s) have not been assigned or pledged to an Advancing Person or Advance Facility Trustee. The documentation establishing any Advance Facility shall require Residential Funding to provide to the related Advancing Person or Advance Facility Trustee loan by loan information with respect to each Reimbursement Amount distributed to such Advancing Person or Advance Facility Trustee on each date of remittance thereof to such Advancing Person or Advance Facility Trustee, to enable the Advancing Person or Advance Facility Trustee to make the FIFO allocation of each Reimbursement Amount with respect to each Mortgage Loan.

(ii)     By way of illustration, and not by way of limiting the generality of the foregoing, if the Master Servicer resigns or is terminated at a time when the Master Servicer is a party to an Advance Facility, and is replaced by a Successor Master Servicer, and the Successor Master Servicer directly funds Advances or Servicing Advances with respect to a Mortgage Loan and does not assign or pledge the related Reimbursement Amounts to the related Advancing Person or Advance Facility Trustee, then all payments and recoveries received from the related Mortgagor or received in the form of Liquidation Proceeds with respect to such Mortgage Loan (including Insurance Proceeds collected in connection with a liquidation of such Mortgage Loan) will be allocated first to the Advancing Person or Advance Facility Trustee until the related Reimbursement Amounts attributable to such Mortgage Loan that are owed to the Master Servicer and the Advancing Person, which were made prior to any Advances or Servicing Advances made by the Successor Master Servicer, have been reimbursed in full, at which point the Successor Master Servicer shall be entitled to retain all related Reimbursement Amounts subsequently collected with respect to that Mortgage Loan pursuant to Section 3.10 of this Agreement. To the extent that the Advances or Servicing Advances are Nonrecoverable Advances to be reimbursed on an aggregate basis pursuant to Section 3.10 of this Agreement, the reimbursement paid in this manner will be made pro rata to the Advancing Person or Advance Facility Trustee, on the one hand, and the Successor Master Servicer, on the other hand, as described in clause (i)(B) above.

(f)     The Master Servicer shall remain entitled to be reimbursed for all Advances and Servicing Advances funded by the Master Servicer to the extent the related rights to be reimbursed therefor have not been sold, assigned or pledged to an Advancing Person.

(g)     Any amendment to this Section 3.22 or to any other provision of this Agreement that may be necessary or appropriate to effect the terms of an Advance Facility as described generally in this

DOCSLA1:476701.5                          82

Section 3.22, including amendments to add provisions relating to a successor master servicer, may be entered into by the Trustee, Certificate Insurer, the Depositor and the Master Servicer without the consent of any Certificateholder, with written confirmation from each Rating Agency that the amendment will not result in the reduction of the ratings on any class of the Certificates below the lesser of the then current or original ratings on such Certificates and delivery of an Opinion of Counsel as required under Section 11.01(c), notwithstanding anything to the contrary in Section 11.01 of or elsewhere in this Agreement.

(h)   Any rights of set-off that the Trust Fund, the Trustee, the Depositor, any Successor Master Servicer or any other Person might otherwise have against the Master Servicer under this Agreement shall not attach to any rights to be reimbursed for Advances or Servicing Advances that have been sold, transferred, pledged, conveyed or assigned to any Advancing Person.

(i)   At any time when an Advancing Person shall have ceased funding Advances and/or Servicing Advances (as the case may be) and the Advancing Person or related Advance Facility Trustee shall have received Reimbursement Amounts sufficient in the aggregate to reimburse all Advances and/or Servicing Advances (as the case may be) the right to reimbursement for which were assigned to the Advancing Person, then upon the delivery of a written notice signed by the Advancing Person and the Master Servicer or its successor or assign) to the Trustee terminating the Advance Facility Notice (the "Notice of Facility Termination"), the Master Servicer or its Successor Master Servicer shall again be entitled to withdraw and retain the related Reimbursement Amounts from the Custodial Account pursuant to Section 3.10.

(j)   After delivery of any Advance Facility Notice, and until any such Advance Facility Notice has been terminated by a Notice of Facility Termination, this Section 3.22 may not be amended or otherwise modified without the prior written consent of the related Advancing Person.

CONFIDENTIAL                                                              RC_FGIC9019_00018208

## ARTICLE IV

## PAYMENTS TO CERTIFICATEHOLDERS

Section 4.01.    Certificate Account.

(a)    The Master Servicer acting as agent of the Trustee shall establish and maintain a Certificate Account in which the Master Servicer shall deposit or cause to be deposited on behalf of the Trustee on or before 2:00 P.M. New York time on each Certificate Account Deposit Date by wire transfer of immediately available funds an amount equal to the sum of (i) any Advance for the immediately succeeding Distribution Date, (ii) any amount required to be deposited in the Certificate Account pursuant to Section 3.12(a), (iii) any amount required to be deposited in the Certificate Account pursuant to Section 3.16(e), 4.07 or 4.08, (iv) any amount required to be paid pursuant to Section 9.01, (v) an amount equal to the Certificate Insurer Premium payable on such Distribution Date, (vi) an amount equal to the Mortgage Insurance Premium payable on such Distribution Date and (vii) other amounts constituting the Group I Available Distribution Amount or Group II Available Distribution Amount, as applicable, for the immediately succeeding Distribution Date. In addition, as and to the extent required pursuant to Section 4.12(b), the Trustee shall withdraw from the Insurance Account any Insured Payment then on deposit in the Insurance Account and deposit such amount into the Certificate Account.

(b)    On each Distribution Date, prior to making any other distributions referred to in Section 4.02 herein, the Trustee shall withdraw from the Certificate Account and pay to the Certificate Insurer, by wire transfer of immediately available funds to the Certificate Insurer Account, the Certificate Insurer Premium for such Distribution Date. In addition, on each Distribution Date, prior to making any other distributions referred to in Section 4.02 herein, the Trustee shall withdraw from the Certificate Account and pay to the MI Policy Provider, by wire transfer of immediately available funds, the Mortgage Insurance Premium for such Distribution Date.

(c)    The Trustee shall, upon written request from the Master Servicer, invest or cause the institution maintaining the Certificate Account to invest the funds in the Certificate Account in Permitted Investments designated in the name of the Trustee for the benefit of the Certificateholders and the Certificate Insurer, which shall mature not later than the Business Day next preceding the Distribution Date next following the date of such investment (except that (i) if such Permitted Investment is an obligation of the institution that maintains such account or fund for which such institution serves as custodian, then such Permitted Investment may mature on such Distribution Date and (ii) any other investment may mature on such Distribution Date if the Trustee shall advance funds on such Distribution Date to the Certificate Account in the amount payable on such investment on such Distribution Date, pending receipt thereof to the extent necessary to make distributions on the Certificates) and shall not be sold or disposed of prior to maturity. All income and gain realized from any such investment shall be for the benefit of the Master Servicer and shall be subject to its withdrawal or order from time to time. The amount of any losses incurred in respect of any such investments shall be deposited in the Certificate Account by the Master Servicer out of its own funds immediately as realized.

Section 4.02.    Distributions.

(a)    On each Distribution Date, the Trustee (or the Paying Agent on behalf of the Trustee) shall allocate and distribute the Group I Available Distribution Amount and Group II Available Distribution Amount (in each case, to the extent on deposit in the Certificate Account) for such date to the interests issued in respect of each REMIC as specified in this Section.

DOCSLA1:476701.5                                84

(b)    (1)    On each Distribution Date, the following amounts, in the following order of priority, shall be distributed by REMIC I to REMIC III on account of the REMIC I Regular Interests:

(i)    to the extent of the Group I Available Distribution Amount, to REMIC III as the holder of REMIC I Regular Interest LT1, REMIC I Regular Interest LT2, REMIC I Regular Interest LT3 and REMIC I Regular Interest LT4, pro rata, in an amount equal to (A) their Uncertificated Accrued Interest for such Distribution Date, plus (B) any amounts in respect thereof remaining unpaid from previous Distribution Dates; and

(ii)    on each Distribution Date, to REMIC III as the holder of the REMIC I Regular Interests, in an amount equal to the remainder of the Group I Available Distribution Amount after the distributions made pursuant to clause (i) above, allocated as follows (except as provided below):

(A)    in respect of the REMIC I Regular Interest LT2, REMIC I Regular Interest LT3 and REMIC I Regular Interest LT4, their respective Principal Distribution Amounts;

(B)    in respect of the REMIC I Regular Interest LT1 any remainder until the Uncertificated Principal Balance thereof is reduced to zero;

(C)    any remainder in respect of the REMIC I Regular Interest LT2, REMIC I Regular Interest LT3 and REMIC I Regular Interest LT4, pro rata according to their respective Uncertificated Principal Balances as reduced by the distributions deemed made pursuant to (i) above, until their respective Uncertificated Principal Balances are reduced to zero; and

(D)    any remaining amounts to the Holders of the Class R-I Certificates.

(2)    On each Distribution Date, the following amounts, in the following order of priority, shall be distributed by REMIC II to REMIC III on account of the REMIC I Regular Interests:

(i)    to the extent of the Group II Available Distribution Amount, to REMIC III as the holder of REMIC II Regular Interest LT5, REMIC II Regular Interest LT6, REMIC II Regular Interest LT7 and REMIC II Regular Interest LT8, pro rata, in an amount equal to (A) their Uncertificated Accrued Interest for such Distribution Date, plus (B) any amounts in respect thereof remaining unpaid from previous Distribution Dates; and

(ii)    on each Distribution Date, to REMIC III as the holder of the REMIC II Regular Interests, in an amount equal to the remainder of the Group II Available Distribution Amount after the distributions made pursuant to clause (i) above, allocated as follows (except as provided below):

(A)    in respect of the REMIC II Regular Interest LT6, REMIC II Regular Interest LT7 and REMIC II Regular Interest LT8, their respective Principal Distribution Amounts;

CONFIDENTIAL                                                                    RC_FGIC9019_00018210

(B)     in respect of the REMIC II Regular Interest LT5 any remainder until the Uncertificated Principal Balance thereof is reduced to zero;

(C)     any remainder in respect of the REMIC II Regular Interest LT6, REMIC II Regular Interest LT7 and REMIC II Regular Interest LT8, pro rata according to their respective Uncertificated Principal Balances as reduced by the distributions deemed made pursuant to (i) above, until their respective Uncertificated Principal Balances are reduced to zero; and

(D)     any remaining amounts to the Holders of the Class R-II Certificates.

(3) Notwithstanding the distributions on the REMIC Regular Interests described in this Section 4.02(b), distribution of funds from the Certificate Account shall be made only in accordance with Sections 4.02(c) and (d).

(c)     On each Distribution Date (x) the Master Servicer on behalf of the Trustee or (y) the Paying Agent appointed by the Trustee, shall distribute to each Certificateholder of record on the next preceding Record Date (other than as provided in Section 9.01 respecting the final distribution) either in immediately available funds (by wire transfer or otherwise) to the account of such Certificateholder at a bank or other entity having appropriate facilities therefor, if such Certificateholder has so notified the Master Servicer or the Paying Agent, as the case may be, or, if such Certificateholder has not so notified the Master Servicer or the Paying Agent by the Record Date, by check mailed to such Certificateholder at the address of such Holder appearing in the Certificate Register such Certificateholder's share (which share with respect to each Class of Certificates, shall be based on the aggregate of the Percentage Interests represented by Certificates of the applicable Class held by such Holder of the following amounts), in the following order of priority, in each case to the extent of the Group I Available Distribution Amount on deposit in the Certificate Account (or, with respect to clause (xviii)(B) below, to the extent of prepayment charges on deposit in the Certificate Account):

(i)     to the Class A-I Certificateholders, the related Accrued Certificate Interest payable on such Certificates with respect to such Distribution Date, plus any related Accrued Certificate Interest remaining unpaid from any prior Distribution Date, which amount shall be allocated to the Class A-I Certificateholders on a pro rata basis, based upon the amount of Accrued Certificate Interest due thereon;

(ii)     to the Class A-I Certificateholders, from the amount, if any, of the Group I Available Distribution Amount remaining after the foregoing distributions, the Group I Principal Distribution Amount (other than the amounts described in clauses (b)(iv) and (v) of the definition thereof), which amount shall be allocated in the manner and priority set forth in Section 4.02(e) below, until the aggregate Certificate Principal Balance of each Class of Class A-I Certificates has been reduced to zero;

(iii)     to the Class A-I Certificateholders, from the Group I Excess Cash Flow, an amount equal to the principal portion of Realized Losses (other than Excess Realized Losses) on the Group I Loans during the immediately preceding Due Period, which amount shall be included in the Group I Principal Distribution Amount and allocated in the manner and priority set forth in Section 4.02(e) below until the aggregate Certificate Principal Balance of each Class of Class A-I Certificates has been reduced to zero;

CONFIDENTIAL                                                                                                    RC_FGIC9019_00018211

(iv)    to the Class A-II Certificateholders, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, an amount equal to the principal portion of Realized Losses (other than Excess Realized Losses) on the Group II Loans during the immediately preceding Due Period, to the extent not covered by distributions of the Group II Excess Cash Flow on such Distribution Date, which amount shall be included in the Group II Principal Distribution Amount and allocated in the manner and priority set forth in Section 4.02(f) below, until the aggregate Certificate Principal Balance of each Class of Class A-II Certificates has been reduced to zero;

(v)    to the Certificate Insurer, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the amount of any Group I Cumulative Insurance Payments;

(vi)    to the Certificate Insurer, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the amount of any Group II Cumulative Insurance Payments, to the extent not covered by distributions of the Group II Excess Cash Flow on such Distribution Date;

(vii)    to the Class A-I Certificateholders, from the amount, f any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the Group I Overcollateralization Increase Amount, which amount shall be included in the Group I Principal Distribution Amount and allocated in the manner and priority set forth in Section 4.02(e) below, until the aggregate Certificate Principal Balance of each Class of Class A-I Certificates has been reduced to zero;

(viii)    to the Class A-II Certificateholders, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the Group II Overcollateralization Increase Amount for such Distribution Date, to the extent not covered by distributions of the Group II Excess Cash Flow on such Distribution Date, which amount shall be included in the Group II Principal Distribution Amount and allocated in the manner and priority set forth in Section 4.02(f) below, until the aggregate Certificate Principal Balance of each Class of Class A-II Certificates has been reduced to zero;

(ix)    to the Class A-I Certificateholders, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the amount of any related Prepayment Interest Shortfalls with respect to the Group I Loans for that Distribution Date, to the extent not covered by Compensating Interest on such Distribution Date, which amount shall be allocated to the Class A-I Certificateholders on a pro rata basis, based on the amount of Prepayment Interest Shortfalls allocated thereto for such Distribution Date;

(x)    beginning on the Distribution Date in February 2005, to the Class A-II Certificateholders, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the amount of any related Prepayment Interest Shortfalls with respect to the Group II Loans for that Distribution Date, to the extent not covered by Compensating Interest and distributions of the Group II Excess Cash Flow on such Distribution Date, which amount shall be allocated to the Class A-II Certificateholders on a pro rata basis, based on the amount of Prepayment Interest Shortfalls allocated thereto for such Distribution Date;

(xi)    to the Class A-I Certificateholders, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the amount of any Prepayment Interest Shortfalls allocated thereto remaining unpaid from prior Distribution Dates together with interest thereon at the related Pass-Through Rates, which amount shall be allocated to the

CONFIDENTIAL                                    RC_FGIC9019_00018212

Class A-I Certificateholders on a pro rata basis, based on the amount of Prepayment Interest Shortfalls allocated thereto and remaining unpaid;

(xii)    to the Class A-II Certificateholders, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the amount of any Prepayment Interest Shortfalls allocated thereto remaining unpaid from prior Distribution Dates together with interest thereon at the related Pass-Through Rates, to the extent not covered by distributions of the Group II Excess Cash Flow on such Distribution Date, which amount shall be allocated to the Class A-II Certificateholders on a pro rata basis, based on the amount of Prepayment Interest Shortfalls allocated thereto and remaining unpaid;

(xiii)    to the Class A-I Certificateholders, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the amount of any Group I Net WAC Cap Shortfalls on such Certificates, which amount shall be allocated to the Class A-I Certificateholders on a pro rata basis, based on their respective Group I Net WAC Cap Shortfalls;

(xiv)    (xii)    to the Class A-II Certificateholders, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the amount of any Group II Basis Risk Shortfalls on such Certificates to the extent not covered by distributions of the Group II Excess Cash Flow or the Hedge Payment on such Distribution Date, which amount shall be allocated to the Class A-II Certificateholders on a pro rata basis, based on their respective Group II Basis Risk Shortfalls;

(xv)    to the Class A-I Certificateholders, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the amount of any Relief Act Shortfalls allocated to such Certificates with respect to the Group I Loans for that Distribution Date, which amount shall be allocated to the Class A-I Certificateholders on a pro rata basis, based on the amount of Relief Act Shortfalls allocated thereto for that Distribution Date;

(xvi)    to the Class A-II Certificateholders, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the amount of any Relief Act Shortfalls allocated to such Certificates with respect to the Group II Loans for that Distribution Date, to the extent not covered by distributions of the Group II Excess Cash Flow on such Distribution Date, which amount shall be allocated to the Class A-II Certificateholders on a pro rata basis, based on the amount of Relief Act Shortfalls allocated thereto for that Distribution Date;

(xvii)    to the Depositor, for any amounts advanced with respect to Mortgage Insurance Premium Taxes Reserve Fund Deposit, from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions;

(xviii)    to the Class SB-I Certificates, (A) from the amount, if any, of the Group I Excess Cash Flow remaining after the foregoing distributions, the sum of (I) Accrued Certificate Interest thereon, (II) the amount of any Group I Overcollateralization Reduction Amount for such Distribution Date and (III) for any Distribution Date after the Certificate Principal Balance of each Class of Class A Certificates has been reduced to zero, the Group I Overcollateralization Amount, and (B) from prepayment charges on deposit in the Certificate Account, any prepayment charges received on the Group I Loans during the related Prepayment Period; and

(xix)    to the Class R-III Certificateholders, the balance, if any, of the Group I Excess Cash Flow.

CONFIDENTIAL                                                          RC_FGIC9019_00018213