Section 11.07.    Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or of the Certificates or the rights of the Holders thereof or the Certificate Insurer.

Section 11.08.    Supplemental Provisions for Resecuritization.

(a)        This Agreement may be supplemented by means of the addition of a separate Article hereto (a "Supplemental Article") for the purpose of resecuritizing any of the Certificates issued hereunder, under the following circumstances.  With respect to any Class or Classes of Certificates issued hereunder, or any portion of any such Class, as to which the Depositor or any of its Affiliates (or any designee thereof) is the registered Holder (the "Resecuritized Certificates"), the Depositor may deposit such Resecuritized Certificates into a new REMIC, grantor trust, FASIT or custodial arrangement (a "Restructuring Vehicle") to be held by the Trustee pursuant to a Supplemental Article.  The instrument adopting such Supplemental Article shall be executed by the Depositor, the Master Servicer and the Trustee; *provided*, that neither the Master Servicer nor the Trustee shall withhold their consent thereto if their respective interests would not be materially adversely affected thereby.  To the extent that the terms of the Supplemental Article do not in any way affect any provisions of this Agreement as to any of the Certificates initially issued hereunder, the adoption of the Supplemental Article shall not constitute an "amendment" of this Agreement.  Each Supplemental Article shall set forth all necessary provisions relating to the holding of the Resecuritized Certificates by the Trustee, the establishment of the Restructuring Vehicle, the issuing of various classes of new certificates by the Restructuring Vehicle and the distributions to be made thereon, and any other provisions necessary to the purposes thereof.  In connection with each Supplemental Article, the Depositor shall deliver to the Trustee an Opinion of Counsel to the effect that (i) the Restructuring Vehicle will qualify as a REMIC, grantor trust, FASIT or other entity not subject to taxation for federal income tax purposes and (ii) the adoption of the Supplemental Article will not endanger the status of any REMIC created hereunder as a REMIC or result in the imposition of a tax upon the Trust Fund (including but not limited to the tax on prohibited transaction as defined in Section 860F(a)(2) of the Code and the tax on contributions to a REMIC as set forth in Section 860G(d) of the Code.

Section 11.09.    Third-Party Beneficiary.

The Limited Repurchase Right Holder is an express third-party beneficiary of Section 4.08 of this Agreement, and shall have the right to enforce the related provisions of Section 4.08 of this Agreement as if it were a party hereto.

Section 11.10.    Rights of the Certificate Insurer.

(a)        The Certificate Insurer is an express third-party beneficiary of this Agreement.

(b)        The Trustee shall provide to the Certificate Insurer copies of any report, notice, Opinion of Counsel, Officers' Certificate, request for consent or request for amendment to any document related hereto promptly upon the Trustee's production or receipt thereof.

(c)        Unless a Certificate Insurer Default exists, the Trustee and the Depositor shall not agree to any amendment to this Agreement without first having obtained the prior written consent of the Certificate Insurer.

CONFIDENTIAL                                                                    RC_FGIC9019_00018264

(d)     So long as there does not exist a failure by the Certificate Insurer to make a required payment under either Certificate Guaranty Insurance Policy, the Certificate Insurer shall have the right to exercise all rights of the Holders of the Class A Certificates under this Agreement without any consent of such Holders, and such Holders may exercise such rights only with the prior written consent of the Certificate Insurer, except as provided herein.

(e)     The Certificate Insurer shall not be entitled to exercise any of its rights hereunder so long as there exists a failure by the Certificate Insurer to make a required payment under either Certificate Guaranty Insurance Policy.

DOCSLA1:476701.5                                    140

CONFIDENTIAL                                                   RC_FGIC9019_00018265

IN WITNESS WHEREOF, the Depositor, the Master Servicer and the Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized and their respective seals, duly attested, to be hereunto affixed, all as of the day and year first above written.

[Seal]

RESIDENTIAL ASSET SECURITIES
CORPORATION

Attest:_____

By:_____

    Name:

    Name: Benita Bjorgo

    Title:

    Title:   Vice President

[Seal]

RESIDENTIAL FUNDING CORPORATION

Attest:_____

By:_____

    Name:

    Name: Julie Steinhagen

    Title:

    Title:   Director

[Seal]

JPMORGAN CHASE BANK
as Trustee

Attest:_____

By:_____

    Name:

    Name:

    Title:

    Title:

DOCSLA1:476701.5

CONFIDENTIAL

RC_FGIC9019_00018266

STATE OF MINNESOTA    )
                     ) ss.:
COUNTY OF HENNEPIN    )

On the _____ day of _____, 2004 before me, a notary public in and for said State, personally appeared Benita Bjorgo, known to me to be a Vice President of Residential Asset Securities Corporation, one of the corporations that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public

_____

[Notarial Seal]

DOCSLA1:476701.5

STATE OF MINNESOTA      )
                        ) ss.:
COUNTY OF HENNEPIN      )

On the ____ day of _____, 2004 before me, a notary public in and for said State, personally appeared Julie Steinhagen, known to me to be a Director of Residential Funding Corporation, one of the corporations that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public

_____

[Notarial Seal]

DOCSLA1:476701.5

STATE OF           )
                          ) ss.:

COUNTY OF     )

On the _____ day of _____, 2004 before me, a notary public in and for said State, personally appeared _____, known to me to be a _____ of JPMorgan Chase Bank, a New York banking corporation that executed the within instrument, and also known to me to be the person who executed it on behalf of said banking corporation and acknowledged to me that such banking corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public

_____

[Notarial Seal]

DOCSLA1:476701.5

# **Exhibit 119**

**From:**          Siegel, Glenn
**To:**            Major, Robert H
**Sent:**          5/8/2013 11:44:02 AM
**Subject:**       FW: ResCap / FGIC Proposal (D&P Summary)
**Attachments:**   ResCap_FGIC Commutation Proposal_D&P Summary.pdf

As discussed

Glenn E. Siegel
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Phone: 212.698.3569
Cell: 917.270.3415
Fax:  212.314.0069
E-mail: glenn.siegel@dechert.com

**From:** Murphy, Brendan [mailto:Brendan.Murphy@duffandphelps.com]
**Sent:** Monday, May 06, 2013 4:54 PM
**To:** Johnson, Michael; Siegel, Glenn
**Cc:** Murphy, Brendan; Pfeiffer, Allen; Chong, Alice; Messenger, Zachary; Parekh, Charles
**Subject:** ResCap / FGIC Proposal (D&P Summary)

_**Privileged and Confidential / Attorney-Client Work Product**_



**Brendan J. Murphy**
Director, Restructuring & Special Situations

T  +1 212 277 0138
M  +1 713 628 0216
F  +1 917 267 7073

55 East 52nd Street
Floor 31
New York, NY 10055

This email is confidential and subject to important disclaimers and conditions, including those regarding

CONFIDENTIAL

EXHIBIT __4__
WIT: __MAJOR__
DATE: __7-17-13__
E. MULVENNA, CSR/RMR/CRR

BNYM-MS 0000079

**BNYM-MS 0000079**

confidentiality, legal privilege and certain legal entity disclaimers, available at
http://www.duffandphelps.com/disclosure. Circular 230 Disclosure: Any advice contained in this email (including any attachments unless expressly stated otherwise) is not intended or written to be used, and cannot be used, for purposes of avoiding tax penalties that may be imposed on any taxpayer.


This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

CONFIDENTIAL

BNYM-MS 0000080

**BNYM-MS 0000080**

# DUFF&PHELPS

# RESCAP

## Residential Capital, LLC

# FGIC Commutation Proposal
# Discussion Materials

## *DRAFT – Subject to Change*

May 2013

**DUFF&PHELPS**

*Duff & Phelps Securities, LLC is a FINRA Registered Broker-Dealer*

AMSTERDAM • ATLANTA • AUSTIN • BOSTON • CHICAGO • CINCINNATI • DALLAS • DENVER • DETROIT • HOUSTON • LONDON • LOS ANGELES • MORRISTOWN
MUNICH • NEW YORK • NEWPORT BEACH • PARIS • PHILADELPHIA • PLANO • SAN FRANCISCO • SEATTLE • SHANGHAI • SILICON VALLEY • TOKYO • TORONTO • WASHINGTON D.C.

*C O N F I D E N T I A L*
*Attorney-Client Privilege*

CONFIDENTIAL

BNYM-MS 0000081

BNYM-MS 0000081

# Situation Overview

In late March, FGIC delivered a commutation proposal ("Proposal") to the Steering Committee Group of RMBS Holders for ResCap-related trusts to provide a global resolution regarding the pending RMBS litigation.  The Proposal from FGIC sets forth a lump sum cash consideration paid to the policyholders of the Rescap-related wrapped trusts in exchange for the ability to assert a general unsecured claim in the Rescap bankruptcy cases.

- On June 11, 2012, Benjamin Lawsky, Superintendent of Financial Services of the State of New York (the "Rehabilitator"), filed a rehabilitation petition on behalf of FGIC with the Supreme Court of the State of New York.

  - The Rehabilitator filed an initial Plan of Rehabilitation for FGIC on September 27, 2012 and filed the First Amended Plan of Rehabilitation on December 12, 2012.

  - In connection with the First Amended Plan of Rehabilitation, Lazard, as financial advisor to the New York Liquidation Bureau, submitted an affidavit which contained revised projections.

  - The Rehabilitator filed a revised First Amended Plan of Rehabilitation for FGIC on April 12, 2013 (the "Plan") which is expected to be heard on June 11, 2013.

- Based on the current Plan, holders of permitted policy claims ("Policyholders") would receive (i) an upfront Cash Payment in an amount equal to a specified cash payout percentage upon the initial incurrence of the policy claim and (ii) additional catch-up payments through a ratable payout mechanism as set forth in the Plan.

  - In the revised Base Scenario, the Policyholders would receive a recovery of 28.5% on their claim (based on a net present value of the distributions discounted at an illustrative rate of 15%).

- In connection with the Plan, FGIC has presented the Proposal to the Steering Committee Group of RMBS Holders for ResCap-related RMBS trusts in late March.

  - The Proposal provides a cash payout from FGIC of approximately $253 million to the ResCap-related RMBS Policyholders in exchange for approximately $597 million of claims asserted in the ResCap case by FGIC.

- The following materials provide initial observations regarding the potential recoveries, timing, and risks to the Rescap-related RMBS Policyholders for both the current Plan and the Proposal.

---

DRAFT - Privileged & Confidential - Attorney Work Product
CONFIDENTIAL

BNYM-MS 0000082

BNYM-MS 0000082

# FGIC Proposal – Commutation and Claim

($ in millions)

**The Proposal outlines a cash payment of approximately $253 million by FGIC upon emergence in exchange for the ability for FGIC to assert approximately $597 million of allowed claims at Rescap.**

- The following Proposal is based on the following three main assumptions:

  - **[A]** Initial Cash Payment Percentage of 17.25% (based on the updated Stress Scenario pursuant to the Plan),

  - **[B]** Base Case Payout to policyholders of 28.5% (based on the updated Base scenario pursuant to the Plan assuming a 15% discount rate), and

  - **[J]** Haircut of 40% on unpaid payout claim estimates.

- In consideration for the cash commutation payment of approximately $253 million, FGIC in return would receive a claim in the Rescap case for the sum of the (i) payouts made to date related to the RFC- and GMACM-sponsored trusts and (ii) the cash commutation.

## Information Points

| | | |
|---|---:|---|
| Initial Cash Payment Percentage (CPP) | 17.25% | [A] |
| Base Case Payout (NPV @ 15.0%) | 28.50% | [B] |
| FGIC - Ch. 11 Proof of Claim (POC) Amount | $1,850.0 | |
| Less: Cost, Interest, etc. | (236.0) | |
| Total Projected Claims in POC | 1,614.0 | |
| Claims Paid to Date | 344.0 | [C] |
| Estimated Unpaid Claims | 1,270.0 | |
| Accrued and Unpaid ("A&U") Claims (as of 3/31/13) | 789.0 | [D] |
| Future Estimated Claims | $481.0 | [E] |

## Commutation Consideration

| | | |
|---|---:|---|
| Claims - A&U - Cash at Initial CPP | $136.1 | [F] = [A] x [D] |
| Claims - A&U - Base Case Payout less Initial CPP | $88.8 | [G] = [B] x [D] - [F] |
| Claims - Future Estimated Claims at Base Case Payout | 137.1 | [H] = [B] x [E] |
| Subtotal | $225.8 | [I] = [G] + [H] |
| Factor for Unpaid Payout | 60.0% | [J] |
| Value Attributable to Estimated Unpaid Claims | $135.5 | [K] = [I] x [J] |
| Total Value to Trusts | $271.6 | [L] = [F] + [K] |
| Less: Premiums waived by FGIC and retained by Trusts | 18.3 | [M] |
| | | [N] = [L] - [M] |

## FGIC Allowed Claims

| | | |
|---|---:|---|
| Prior Claims Paid | $344.0 | [C] |
| Cash Commutation | 253.3 | [N] |
| | | [O] = [C] + [N] |

DRAFT – Privileged & Confidential - Attorney Work Product

CONFIDENTIAL

3

BNYM-MS 0000083

BNYM-MS 0000083

# FGIC Plan of Rehabilitation – Summary

The current Plan of Rehabilitation provides all of the value of FGIC, after the payment of certain administrative expenses and other costs, to be ratably distributed to the all of FGIC's Policyholders in a fair and equitable manner.

- Per Lazard's Affidavit filed on December 12, 2012, the Policyholders are projected to receive a recovery of approximately 27-30% in the Base Scenario and 17-18% in the Stress Scenario (assuming a discount rate of approximately 10-20% on the distributions).

- The Policyholders would receive an initial cash payout percentage ("CPP") of 17.25% on accrued but unpaid claims on the effective date, an updated initial CPP on future claims as they arise, true-up payments for any upward changes in the CPP, and pro rata distribution of excess cash after accounting for appropriate reserves.

  - The Policyholders would receive distributions on an annual basis based on the updated Base and Stress Scenarios or if there an significant cash inflow event as further outlined in the Plan.

| | Base Scenario | Stress Scenario |
| --- | --- | --- |
| Summary | FGIC's current expectation of future claims, investment performance, recoveries, financial markets and other factors of relevance to CPP. Revaluation based on circumstances, events and projections that FGIC anticipates are reasonably likely to occur. | Non-catastrophic scenario envisioning a severe economic recession that is accompanied by (i) sharp declines in home prices and the financial markets (e.g., approximately 30% decrease from peak home values) (ii) significant unemployment (e.g., approximately 5% increase in unemployment rates) (iii) high mortgage default rates; and (iv) other negative economic indicators of potential relevance to FGIC's insured exposures. |
| Notional Claims | $6.3 billion | $11.7 billion |
| Total Payments | $2.8 billion | $2.6 billion |
| Initial CPP | 17.25% | 17.25% |
| Nominal Recovery | 45% | 23% |
| 10% Discount Rate | 30% | 18% |
| 15% Discount Rate | 28.5% | 17% |
| 20% Discount Rate | 27% | 17% |

4

DRAFT - Privileged & Confidential - Attorney Work Product

CONFIDENTIAL

BNYM-MS 0000087

BNYM-MS 0000084

# FGIC Plan of Rehabilitation – Base vs. Stress Scenario

($ in millions)

- FGIC's total notional claims estimates is approximately $6.3 billion in the base case and $11.7 billion in the stress case.
- Based on D&P loss estimates of approximately $1.1 billion to $1.5 billion, the Policyholders for the ResCap-related RMBS trusts may potentially represent 10% to 24% of the overall pool.
- A majority of the claims for the Policyholders of Rescap-related RMBS trusts are expected to arise in the next 5 years.

| | | 2012 | '13 - '17 | '18 - '22 | '23 - '27 | '28 - '32 | '33 - '37 | '38 - '42 | '43 - '47 | '48 - '52 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **All FGIC Policyholders (Lazard Affidavit)** | **BASE SCENARIO** | | | | | | | | | | |
| | Notional Claims - All | $2,133 | $1,655 | $585 | $229 | $160 | $948 | $600 | $6 | -- | $6,316 |
| | *Ending CPP* | *17%* | *23%* | *26%* | *29%* | *31%* | *34%* | *37%* | *37%* | *39%* | |
| | Total Payments | ($368) | ($516) | ($297) | ($197) | ($195) | ($536) | ($498) | ($2) | ($227) | ($2,840) |
| | **STRESS SCENARIO** | | | | | | | | | | |
| | Notional Claims - All | $2,399 | $3,874 | $1,247 | $675 | $637 | $1,696 | $1,130 | $12 | -- | $11,670 |
| | *Ending CPP* | *17%* | *17%* | *17%* | *17%* | *17%* | *17%* | *17%* | *17%* | *20%* | |
| | Total Payments | ($414) | ($668) | ($215) | ($116) | ($110) | ($293) | ($195) | ($2) | ($529) | ($2,642) |
| | **VARIANCE** | | | | | | | | | | |
| | Notional Claims - All | $266 | $2,219 | $662 | $446 | $477 | $748 | $530 | $6 | -- | $5,354 |
| | *Ending CPP* | *(0%)* | *(6%)* | *(9%)* | *(11%)* | *(13%)* | *(16%)* | *(19%)* | *(19%)* | *(18%)* | |
| | Total Payments | ($46) | ($152) | $82 | $81 | $85 | $243 | $303 | -- | ($402) | $198 |
| **Claims for Policyholders of ResCap-Related RMBS Trusts (Per D&P's Estimates)** | **LOW CASE** | | | | | | | | | | |
| | Notional Claims - ResCap | $709 | $152 | $74 | $54 | $74 | $58 | ($4) | ($1) | -- | $1,113 |
| | *% Cumulative* | *64%* | *77%* | *84%* | *89%* | *95%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| | **% of Total Notional Claims** | | | | | | | | | | |
| | Base Case | 33% | 9% | 13% | 23% | 46% | 6% | NM | NM | NM | 18% |
| | Stress Case | 30% | 4% | 6% | 8% | 12% | 3% | NM | NM | NM | 10% |
| | **HIGH CASE** | | | | | | | | | | |
| | Notional Claims - ResCap | $709 | $341 | $139 | $113 | $115 | $78 | ($3) | ($1) | -- | $1,491 |
| | *% Cumulative* | *48%* | *70%* | *80%* | *87%* | *95%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| | **% of Total Notional Claims** | | | | | | | | | | |
| | Base Case | 33% | 21% | 24% | 49% | 72% | 8% | NM | NM | NM | 24% |
| | Strass Case | 30% | 9% | 11% | 17% | 18% | 5% | NM | NM | NM | 13% |

DRAFT - Privileged & Confidential - Attorney Work Product

CONFIDENTIAL

BNYM-MS 0000085

# FGIC Plan of Rehabilitation – ResCap Trust Policyholders
($ in millions)

Under the Base Scenario, the ResCap RMBS Trust Policyholders may receive approximately $200-$320 million on a net present value basis.

| | Initial | '14 - '17 | '18-'52 | Total Recovery | Recovery % Based on: Notional % | Discounted % | Notes |
|---|---|---|---|---|---|---|---|
| **LOW CASE:** | | | | | | | |
| **Notional Claims - ResCap** | $709 | $152 | $253 | $1,113 | | | [A] |
| **Nominal Cash Flow** | | | | | | | |
| Initial CPP Payments | $130 | $32 | $72 | $234 | | | |
| Catch-Up CPP Payments | – | 36 | 160 | 196 | | | |
| Subtotal | 130 | 67 | 232 | 430 | | | |
| Portion of DPO Accretion Payout | – | 4 | 85 | 88 | | | |
| Total Payout | $130 | $71 | $317 | $518 | 47% | | [B] |
| **Discounted Cash Flows** | | | | | | | |
| 10% | $130 | $56 | $64 | $251 | 23% | 28% | [C] |
| 15% | 130 | 51 | 37 | 218 | 20% | 25% | |
| 20% | 130 | 46 | 23 | 200 | 18% | 24% | |
| **HIGH CASE:** | | | | | | | |
| **Notional Claims - ResCap** | $709 | $341 | $441 | $1,491 | | | [A] |
| **Nominal Cash Flow** | | | | | | | |
| Initial CPP Payments | $130 | $71 | $124 | $325 | | | |
| Catch-Up CPP Payments | – | 40 | 210 | 250 | | | |
| Subtotal | 130 | 111 | 334 | 575 | | | |
| Portion of DPO Accretion Payout | – | 4 | 108 | 112 | | | |
| Total Payout | $130 | $115 | $442 | $687 | 46% | | [B] |
| **Discounted Cash Flows** | | | | | | | |
| 10% | $130 | $92 | $93 | $316 | 21% | 28% | [C] |
| 15% | 130 | 83 | 54 | 268 | 18% | 25% | |
| 20% | 130 | 76 | 35 | 241 | 16% | 24% | |

[A] A majority of the notional claims for the ResCap RMBS Trust Policyholders are presented within the first 5 years post-emergence in both the low and high cases.

[B] However, the nominal cash flows to the Policyholders are mostly back-ended due to the true-up payments related to the projected CPP increases and the payments on account of the DPO accretion.

[C] When applying a 10-20% discount rate to the recovery cash flow stream, the illustrative recovery estimates are approximately $200-$320 million which implies a recovery rate of approximately 16-23% based on the notional claim amount and 24-28% based on the discounted claim amount.

DRAFT - Privileged & Confidential - Attorney Work Product

CONFIDENTIAL

6

BNYM-MS 0000087

# Comparison Between Commutation Proposal and Plan

The following table outlines the various considerations, risks and economics associated with the Proposal and the Plan.

- The payment and recovery estimates are based on D&P's assessment of the accrued and unpaid claims to date and projected claims for both a low and high case.

| | Proposal[a] | Plan[b] | |
| --- | --- | --- | --- |
| **Considerations and Risks** | ■ Provides a global resolution on outstanding ResCap RMBS litigation issues<br>■ One-time payment made to ResCap RMBS Policyholders upon plan confirmation (payout expected to occur on December 2013)<br>■ ResCap RMBS Trusts will not need to pay future premiums<br>■ Potential risk of relinquished upside economics in the event that the Base Scenario under the Plan is met and exceeded<br>■ Proposal terms subject to approval from the Rehabilitator and the New York Insurance Bureau | ■ Outstanding ResCap RMBS litigation issues would need to be resolved separately<br>■ RMBS Policyholders would receive approximately $130 million upon plan confirmation (payout expected to occur on December 2013) remainder to be made over 40 years<br>■ Recoveries based on financial projections and claim estimates from December 2011, updates have not yet been provided<br>■ RMBS Policyholders bear the exposure to upside opportunity and downside risk related to size of actual claim pool and cash flows versus the original projections<br>■ Recoveries may be influenced by other commutation proposals that are currently pending | |
| | | Base Scenario | Stress Scenario |
| **NPV of Payments** | $200-285 million | $200-320 million | $190-250 million |
| **Nominal Recovery** | ~19-20% | N/M | N/M |
| **Recovery @ 10-20% Discount Rate[b]** | N/A | 24-28% | 17-18% |

(a) Based on D&P's low and high claims estimates. Variance between NPV of payments due to the difference in starting claim amounts.

(b) Discrepancy between the stated discounted recovery per the estimates provided in the Lazard Affidavit is primarily due to the adjustments that are made to calculate recoveries on an annual basis versus the 5-year basis shown in the revised Scenarios.

DRAFT – Privileged & Confidential – Attorney Work Product

7

CONFIDENTIAL

BNYM-MS 0000087

# Next Steps and Follow-up Questions

**Prior to the confirmation hearing currently set for June 11, 2013, additional follow-up discussions on the commutation Proposal will likely be centered around the following key issues:**

- Base case payout assumption of 28.5% included in the Proposal;

- Factor of unpaid payout assumption of 60% included in the Proposal;

- Resolution regarding the accrued and unpaid claims to date;

- Resolution regarding the projected claim estimates;

- FGIC Allowed Claim in the ResCap cases (i.e., detail regarding the amount asserted to certain debtor entities);

- Timing and probability of receiving approval from the Rehabilitator and NYLB; and

- Timing of commutation related to overall FGIC rehabilitation proceeding.

DRAFT - Privileged & Confidential - Attorney Work Product

8

BNYM-MS 0000088

## Exhibit 123

DUFF&PHELPS

RESCAP

Residential Capital, LLC

FGIC Commutation Proposal
Discussion Materials

May 15, 2013

DUFF&PHELPS
Duff & Phelps Securities, LLC is a FINRA Registered Broker-Dealer

AMSTERDAM • ATLANTA • AUSTIN • BOSTON • CHICAGO • CINCINNATI • DALLAS • DENVER • DETROIT • HOUSTON • LONDON • LOS ANGELES • MORRISTOWN
MUNICH • NEW YORK • NEWPORT BEACH • PARIS • PHILADELPHIA • PLANO • SAN FRANCISCO • SEATTLE • SHANGHAI • SILICON VALLEY • TOKYO • TORONTO • WASHINGTON D.C.

CONFIDENTIAL

CONFIDENTIAL
Attorney-Client Privilege

TR-MS000001

EXHIBIT 6
WIT: SOLLBEE G
DATE: 7-16-13
E. MULVENNA, CSR/RMR/CRR

# Executive Summary

In late March, FGIC delivered a commutation proposal ("Proposal") to the Steering Committee Group of RMBS Holders for ResCap sponsored trusts to provide a global resolution regarding the pending RMBS litigation. The Proposal from FGIC sets forth a lump sum cash consideration paid to the policyholders of the ResCap-related wrapped trusts in exchange for the ability to assert a general unsecured claim in the ResCap bankruptcy cases.

- On June 11, 2012, Benjamin Lawsky, Superintendent of Financial Services of the State of New York (the "Rehabilitator"), filed a rehabilitation petition on behalf of FGIC with the Supreme Court of the State of New York.

  - The Rehabilitator filed an initial Plan of Rehabilitation for FGIC on September 27, 2012 and filed the First Amended Plan of Rehabilitation on December 12, 2012.

  - In connection with the First Amended Plan of Rehabilitation, Lazard, as financial advisor to the New York Liquidation Bureau, submitted an affidavit which contained revised projections.

  - The Rehabilitator filed a revised First Amended Plan of Rehabilitation for FGIC on April 12, 2013 (the "Plan") which is expected to be heard on June 11, 2013.

- Based on the current Plan, holders of permitted policy claims ("Policyholders") would receive (i) an upfront Cash Payment in an amount equal to a specified cash payout percentage upon the initial incurrence of the policy claim and (ii) additional catch-up payments through a ratable payout mechanism as set forth in the Plan.

  - In the revised Base Scenario, the Policyholders would receive an initial recovery of ~17.25% and then a subsequent distribution of up to 28.5% on their claim (based on a net present value of the distributions discounted at an illustrative rate of 15%).

- In connection with the Plan, FGIC presented the Proposal to the Steering Committee Group of RMBS Holders for ResCap trusts in late March.

  - The Proposal provides a cash payout from FGIC of approximately <u>$253 million</u> to the ResCap-related RMBS Policyholders in exchange for FGIC to have the right to assert a <u>~$597 million claim</u> in the ResCap case.

*Privileged & Confidential – Attorney Work Product*
CONFIDENTIAL

TR-MS000002

2

# Executive Summary (cont'd)

Based on D&P's loss estimates of the wrapped portion of the ResCap-sponsored RMBS trusts, the cash commutation proposal provided by FGIC is within the range of expected payments under the Plan of Rehabilitation on discounted cash flow basis.

| | FGIC Settlement Proposal | FGIC Plan |
|---|---|---|
| **Considerations** (Benefits and Risks) | ■ RMBS Policyholders would receive approximately $253 million upon plan confirmation (on or around December 2013)<br><br>　■ *Benefit:* Provides a global resolution on outstanding ResCap RMBS litigation issues.<br><br>　■ *Benefit:* One-time cash payment made to ResCap RMBS Policyholders upon plan confirmation.<br><br>　■ *Benefit:* ResCap RMBS Trusts will not need to pay future premiums.<br><br>　■ *Risk:* Potential risk of relinquished upside economics in the event that the Base Scenario under the Plan is met and correspondingly exceeded. | ■ RMBS Policyholders would receive approximately $150 million upon plan confirmation (on or around December 2013), remainder of the payments will be made over 40 years.<br><br>　■ *Benefit / Risk:* RMBS Policyholders bear the exposure to upside opportunity (benefit) and downside (risk) related to size of actual claim pool(s) and cash flows.<br><br>　■ *Risk:* A significant portion of cash distributions from Deferred Payout Obligations and other true-up payments are significantly back-ended, although a majority of the claims are expected to arise in the first five years (>70%).<br><br>　■ *Risk:* Outstanding ResCap RMBS litigation issues would need to be resolved separately.<br><br>　■ *Risk:* Recoveries are based on stale financial projections and claim estimates; updated estimates have not yet been provided. |
| **Cash Payments** (NPV for the Plan) | $253 million | **Base Scenario**: ~$220 to $340 million[a]　　**Stress Scenario**: ~$190 to $250 million[a][b]<br><br>*Settlement Proposal is within the range of reasonableness under either scenario(s). Distributions are subject to additional unforeseen risks not identified above* |
| **Duff & Phelps' Recommendation** | X | |

a) Range reflects 10% to 20% discount rate applied to the projected payouts.
b) Reflects 17-18% recovery on D&P's low and high loss estimates.
Note: D&P has not estimated projected losses that correspond to the underlying macro assumptions as assumed under the Stress Scenario (per the Lazard Affidavit).

Privileged Confidential, Attorney Work Product
CONFIDENTIAL

# FGIC Settlement Proposal

1

TR-MS000004

CONFIDENTIAL

# FGIC Settlement Proposal – Commutation and Claim

($ in millions)

The Proposal outlines a cash payment of approximately $253 million by FGIC upon emergence in exchange for the ability for FGIC to assert approximately $597 million of allowed claims at Rescap.

- The following Proposal is based on the following three main assumptions:

  - [A] Initial Cash Payment Percentage of 17.25% (based on the updated Stress Scenario pursuant to the Plan).

  - [B] Base Case Payout to policyholders of 28.5% (based on the updated Base scenario pursuant to the Plan assuming a 15% discount rate), and

  - [J] Haircut of 40% on unpaid payout claim estimates.

- In consideration for the cash commutation payment of approximately $253 million, FGIC in return would receive a claim in the Rescap case for the sum of the (i) payouts made to date related to the RFC- and GMACM-sponsored trusts and (ii) the cash commutation.

## Information Points

| | | |
|---|---|---|
| Initial Cash Payment Percentage (CPP) | 17.25% | [A] |
| Base Case Payout (NPV @ 15.0%) | 28.50% | [B] |
| | | |
| ResCap Sponsored RMBS Claim (Per FGIC) | $1,850.0 | |
| Less: Cost, Interest, etc. | (236.0) | |
| Total Projected Claims in POC | 1,614.0 | |
| Claims Paid to Date | 344.0 | [C] |
| Estimated Unpaid Claims | 1,270.0 | [D] |
| Accrued and Unpaid ("A&U") Claims (as of 3/31/13) | 789.0 | [D] |
| Future Estimated Claims | $481.0 | [E] |

## Commutation Consideration

| | | |
|---|---|---|
| Claims - A&U - Cash at Initial CPP | $136.1 | [F] = [A] x [D] |
| | | |
| Claims - A&U - Base Case Payout less Initial CPP | $88.8 | [G] = [B] x [D] - [F] |
| Claims - Future Estimated Claims at Base Case Payout | 137.1 | [H] = [B] x [E] |
| Subtotal | $225.8 | [I] = [G] + [H] |
| | | |
| Factor % of Unpaid Payout | 60.0% | [J] |
| Value Attributable to Estimated Unpaid Claims | $135.5 | [K] = [I] x [J] |
| | | |
| Total Value to Trusts | $271.6 | [L] = [F] + [K] |
| Less: Premiums waived by FGIC and retained by Trusts | 18.3 | [M] |
| Cash Commutation paid by FGIC | $253.3 | [N] = [L] - [M] |

## FGIC Allowed Claims

| | | |
|---|---|---|
| Prior Claims Paid | $344.0 | [C] |
| Cash Commutation | 253.3 | [N] |
| Amount of FGIC Allowed Claim | $597.3 | [C] + [N] |

Privileged & Confidential, Attorney Work Product
CONFIDENTIAL

# Plan of Rehabilitation

2

TR-MS000006

CONFIDENTIAL

# FGIC Plan of Rehabilitation – Summary

The current Plan of Rehabilitation provides all of the value of FGIC, after the payment of certain administrative expenses and other costs, to be ratably distributed to the all of FGIC's Policyholders in a fair and equitable manner.

■ Per Lazard's Affidavit filed on December 12, 2012, the Policyholders are projected to receive a recovery of approximately 27-30% in the Base Scenario and 17-18% in the Stress Scenario (assuming a discount rate of approximately 10-20% on the distributions).

■ The Policyholders would receive: **(1)** an initial cash payout percentage ("CPP") of 17.25% on accrued but unpaid claims on the effective date, **(2)** an updated initial CPP on future claims as they arise, **(3)** true-up payments for any upward changes in the CPP, and **(4)** pro rata distribution of excess cash after accounting for appropriate reserves.

 – The Policyholders would receive distributions on an annual basis based on the updated Base and Stress Scenarios or if there an significant cash inflow event as further outlined in the Plan.

|  | Base Scenario | Stress Scenario |
|---|---|---|
| Summary | ■ FGIC's current expectation of future Claims, investment performance, recoveries, financial markets and other factors of relevance to CPP Revaluations based on circumstances, events and projections that FGIC anticipates are reasonably likely to occur. | ■ Non-catastrophic scenario envisioning a severe economic recession that is accompanied by:<br>– (i) sharp declines in home prices and the financial markets (e.g., approximately 30% decrease from peak home values),<br>– (ii) significant unemployment (e.g., approximately 5% increase in unemployment rates);<br>– (iii) high mortgage default rates, and<br>– (iv) other negative economic indicators of potential relevance to FGIC's insured exposures. |
| Notional Claims | $6.3 billion | $11.7 billion |
| Total Payments | $2.8 billion | $2.6 billion |
| Initial CPP | 17.25% | 17.25% |
| Nominal Recovery | 45% | 23% |
| 10% Discount Rate | 30% | 18% |
| 15% Discount Rate | 28.5% | 17% |
| 20% Discount Rate | 27% | 17% |

Privileged Confidential, Attorney Work Product
CONFIDENTIAL

TR-MS000007

7

# FGIC Plan of Rehabilitation – Base vs. Stress Scenario

($ in millions)

- FGIC's total notional claims estimates is approximately $4.3 billion in the base case and $11.7 billion in the stress case.
- Based on D&P loss estimates of approximately $1.2 billion to $1.5 billion, the Policyholders for the ResCap-sponsored RMBS trusts may potentially represent 10% to 24% of the overall pool.
- A majority of the claims for the Policyholders of Rescap-sponsored RMBS trusts are expected to arise within the next 5 years.

| | | 2012 | '13 - '17 | '18 - '22 | '23 - '27 | '28 - '32 | '33 - '37 | '38 - '42 | '43 - '47 | '48 - '52 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **All FGIC Policyholders (Lazard Affidavit)** | **BASE SCENARIO** | | | | | | | | | | |
| | Notional Claims - All | $2,133 | $1,655 | $585 | $229 | $160 | $948 | $600 | $6 | - | $6,316 |
| | Ending CPP | 17% | 23% | 28% | 29% | 31% | 34% | 37% | 37% | - | 39% |
| | Total Payments | ($368) | ($516) | ($297) | ($197) | ($195) | ($536) | ($498) | ($2) | ($227) | ($2,840) |
| | **STRESS SCENARIO** | | | | | | | | | | |
| | Notional Claims - All | $2,399 | $3,874 | $1,247 | $675 | $637 | $1,696 | $1,130 | $12 | - | $11,670 |
| | Ending CPP | 17% | 17% | 17% | 17% | 17% | 17% | 17% | 17% | 20% | |
| | Total Payments | ($414) | ($668) | ($215) | ($116) | ($110) | ($293) | ($195) | ($52) | ($629) | ($2,642) |
| | **VARIANCE** | | | | | | | | | | |
| | Notional Claims - All | $266 | $2,219 | $662 | $446 | $477 | $748 | $530 | $6 | - | $5,354 |
| | Ending CPP | (0%) | (6%) | (9%) | (11%) | (13%) | (16%) | (19%) | (19%) | (18%) | |
| | Total Payments | ($46) | ($152) | ($82) | ($81) | ($85) | $243 | $303 | - | ($402) | $198 |
| **Claims for Policyholders of ResCap-Related RMBS Trusts (Per D&P's Estimates)** | **LOW CASE** | | | | | | | | | | |
| | Notional Claims - ResCap | $753 | $173 | $69 | $53 | $174 | $40 | ($0) | ($0) | $0 | $1,162 |
| | % Cumulative | 65% | 80% | 86% | 90% | 97% | 100% | 100% | 100% | 100% | 100% |
| | % of Total Notional Claims | | | | | | | | | | |
| | Base Case | 35% | 10% | 12% | 23% | 46% | 4% | NM | NM | NM | 18% |
| | Stress Case(a) | 31% | 4% | 6% | 8% | 12% | 2% | NM | NM | NM | 10% |
| | **HIGH CASE** | | | | | | | | | | |
| | Notional Claims - ResCap | $753 | $386 | $124 | $115 | $110 | $59 | $0 | ($0) | $0 | $1,546 |
| | % Cumulative | 49% | 74% | 82% | 89% | 96% | 100% | 100% | 100% | 100% | 100% |
| | % of Total Notional Claims | | | | | | | | | | |
| | Base Case | 35% | 23% | 21% | 50% | 69% | 6% | 0% | NM | NM | 24% |
| | Stress Case(a) | 31% | 10% | 10% | 17% | 17% | 3% | 0% | NM | NM | 13% |

(a) D&P has not estimated projected losses that reflect the same underlying macro assumptions as the Stress Scenario included in the Affidavit.

Privileged & Confidential. Attorney Work Product
CONFIDENTIAL

TR-MS000008

8

# FGIC Plan of Rehabilitation – ResCap Trust Policyholders

($ in millions)

Under the Base Scenario, the ResCap-Sponsored RMBS Trust Policyholders may receive approximately $220-$340 million on a net present value basis.

**Plan of Rehabilitation – Base Scenario**

| | Initial | '14 - '17 | '18 - '52 | Total Recovery | Recovery % Based on: % Notional | % Discounted | Notes |
|---|---|---|---|---|---|---|---|
| **LOW CASE** | | | | | | | |
| Notional Claims - ResCap | $814 | $112 | $236 | $1,162 | | | [A] |
| Nominal Cash Flow | | | | | | | |
| Initial CPP Payments | $150 | $23 | $67 | $240 | | | |
| Catch-Up CPP Payments | -- | 40 | 164 | 204 | | | |
| Subtotal | 150 | 63 | 231 | 444 | | | |
| Portion of DPO Accretion Payout | -- | 4 | 70 | 74 | | | |
| Total Payout | $150 | $67 | $301 | $518 | 45% | | [B] |
| Discounted Cash Flows | | | | | | | |
| 10% | $150 | $53 | $65 | $268 | 23% | 27% | [C] |
| 15% | 150 | 48 | 38 | 235 | 20% | 25% | |
| 20% | 150 | 43 | 24 | 217 | 19% | 24% | |
| **HIGH CASE** | | | | | | | |
| Notional Claims - ResCap | $888 | $251 | $408 | $1,546 | | | [A] |
| Nominal Cash Flow | | | | | | | |
| Initial CPP Payments | $163 | $52 | $114 | $330 | | | |
| Catch-Up CPP Payments | -- | 46 | 214 | 261 | | | |
| Subtotal | 163 | 99 | 328 | 590 | | | |
| Portion of DPO Accretion Payout | -- | 5 | 89 | 94 | | | |
| Total Payout | $163 | $103 | $418 | $664 | 44% | | [B] |
| Discounted Cash Flows | | | | | | | |
| 10% | $163 | $82 | $93 | $339 | 22% | 28% | [C] |
| 15% | 163 | 74 | 54 | 292 | 19% | 25% | |
| 20% | 163 | 68 | 35 | 266 | 17% | 24% | |

[A] A majority of the notional claims for the ResCap RMBS Trust Policyholders are presented within the first 5 years post-emergence in both the low and high cases.

[B] However, the nominal cash flows to the Policyholders are mostly back-ended due to the true-up payments related to the projected CPP increases and the payments on account of the DPO accretion.

[C] When applying a 10-20% discount rate to the recovery cash flow stream, the illustrative recovery estimates are approximately $220-$340 million which implies a recovery rate of approximately 17-23% based on the notional claim amount and 24-28% based on the discounted claim amount.

Note: Assumes emergence occurs at the end of 2013.

Privileged & Confidential Attorney Work Product
CONFIDENTIAL

# Exhibit 128

**TIME SENSITIVE NOTICE
REGARDING (A) PLAN SUPPORT AGREEMENT AMONG THE RESCAP DEBTORS
AND THE RMBS TRUSTEES, AMONG OTHERS, AND (B) SETTLEMENT
AGREEMENT AMONG THE DEBTORS, FINANCIAL GUARANTY INSURANCE
COMPANY AND CERTAIN OF THE RMBS TRUSTEES**

**NOTICE IS HEREBY GIVEN BY:**

**THE BANK OF NEW YORK MELLON,
THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,
DEUTSCHE BANK NATIONAL TRUST COMPANY,
DEUTSCHE BANK TRUST COMPANY AMERICAS,
U.S. BANK NATIONAL ASSOCIATION,
WELLS FARGO BANK, N.A.,
HSBC BANK USA, N.A., AND
LAW DEBENTURE TRUST COMPANY OF NEW YORK**

**IN THEIR SEVERAL CAPACITIES AS TRUSTEES, MASTER SERVICERS, AND/OR
INDENTURE TRUSTEES OR SEPARATE TRUSTEES (COLLECTIVELY, THE
"RMBS TRUSTEES" AND EACH, AN "RMBS TRUSTEE"), TO THE HOLDERS (THE
"CERTIFICATEHOLDERS") OF CERTIFICATES, NOTES OR OTHER SECURITIES
(COLLECTIVELY, THE "CERTIFICATES") UNDER THE RESIDENTIAL
MORTGAGE-BACKED SECURITIZATION TRUSTS IDENTIFIED ON SCHEDULE A
AT http://www.rescaprmbssettlement.com (COLLECTIVELY, THE "TRUSTS" AND
EACH A "TRUST").**

**THIS NOTICE CONTAINS IMPORTANT TIME-SENSITIVE INFORMATION FOR
CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY INTERESTED IN
THE TRUSTS.  ALL DEPOSITORIES, CUSTODIANS AND OTHER
INTERMEDIARIES RECEIVING THIS NOTICE, AS APPLICABLE, ARE
REQUESTED TO EXPEDITE ITS RE-TRANSMITTAL TO CERTIFICATEHOLDERS
IN A TIMELY MANNER.**

Dated:  May 24, 2013

This notice (the "**Notice**") is given to you by the RMBS Trustees under the Pooling and
Servicing Agreements (including Series Supplements and Standard Terms of Pooling and
Servicing Agreements), Indentures and related Servicing Agreements (collectively, the
"**Governing Agreements**") governing the Trusts.  Capitalized terms used but not defined herein
shall have the meanings assigned to them in the Governing Agreements.

**THIS NOTICE CONCERNS PROPOSED SETTLEMENTS IN A PLAN SUPPORT AGREEMENT, INCLUDING:[1]**

**1) A SETTLEMENT OF ALL THE TRUSTS' CLAIMS AGAINST THE DEBTORS IN THE CHAPTER 11 CASES, AND AFI, INCLUDING, WITHOUT LIMITATION, AND WHERE APPLICABLE, CLAIMS RELATING TO THE ORIGINATION AND SALE BY A DEBTOR OF MORTGAGE LOANS TO THE TRUSTS, AND CLAIMS ARISING OUT OF A DEBTOR'S SERVICING OF THE MORTGAGE LOANS; AND**

**2) A SETTLEMENT OF, AMONG OTHER THINGS, THE CLAIMS OF CERTAIN OF THE TRUSTS AGAINST FINANCIAL GUARANTY INSURANCE CORPORATION ("FGIC") UNDER THE INSURANCE POLICIES ISSUED BY FGIC IN RESPECT OF THE TRUSTS. A LIST OF THOSE TRUSTS AFFECTED BY THE FGIC SETTLEMENT IS AVAILABLE AT http://www.rescaprmbssettlement.com AS SCHEDULE B.**

**IF CERTIFICATEHOLDERS DO NOT OBJECT TO THESE SETTLEMENTS BEFORE THE DEADLINE OF JUNE 19, 2013 AT 4:00 P.M. (PREVAILING EASTERN TIME) TO OBJECT TO THE PLAN SUPPORT AGREEMENT MOTION, SUCH CERTIFICATEHOLDERS MAY BE PRECLUDED FROM OBJECTING TO THE PLAN AND THE BANKRUPTCY COURT MAY FIND THAT SUCH CERTIFICATEHOLDERS DO NOT HAVE STANDING TO OBJECT.**

**EACH OF THE PROPOSED SETTLEMENTS, IF APPROVED BY THE BANKRUPTCY COURT, AND ADDITIONALLY IN THE CASE OF THE FGIC SETTLEMENT AGREEMENT, BY THE NEW YORK STATE SUPREME COURT, WOULD BIND EACH APPLICABLE TRUST AND THE RELATED CERTIFICATEHOLDERS. THE PROPOSED SETTLEMENTS MATERIALLY AFFECT THE INTERESTS OF CERTIFICATEHOLDERS. THE RMBS TRUSTEES THEREFORE RESPECTFULLY REQUEST THAT ALL CERTIFICATEHOLDERS AND OTHER NOTICE RECIPIENTS READ THIS NOTICE AND RELATED MATERIALS CAREFULLY IN CONSULTATION WITH THEIR LEGAL AND FINANCIAL ADVISORS.**

## I.   Background -- Residential Capital Bankruptcy Filing

On May 14, 2012, Residential Capital, LLC, and certain of its direct and indirect subsidiaries (collectively, "**ResCap**" or the "**Debtors**") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") (*In re Residential Capital, LLC*, Case No. 12-12020 (MG) and related cases) (collectively, the "**Chapter 11 Cases**").  To obtain information regarding the Chapter 11 Cases, please see Section VI, below.

## II.   The Plan Support Agreement and Term Sheets

On May 13, 2013, the Debtors, Ally Financial Inc. ("**AFI**"), the Official Committee of Unsecured Creditors (the "**Committee**"), and the Consenting Claimants (as defined in the Plan Support Agreement, which defined term includes the RMBS Trustees; collectively with the Debtors, AFI, and the Committee, the "**Plan Support Agreement Parties**") entered into the Plan Support Agreement

---

[1]   Terms not otherwise defined in these initial summary paragraphs are defined below.

2

(the "**Plan Support Agreement**") pursuant to which the Plan Support Agreement Parties agreed to the terms of a consensual Chapter 11 plan of reorganization (the "**Plan**") and resolution of all claims and disputes between them as set forth in the Plan Term Sheet (the "**Plan Term Sheet**") and the Supplemental Term Sheet[2] (the "**Supplemental Term Sheet**," together with the Plan Term Sheet, the "**Term Sheets**") attached respectively as Exhibits A and B to the Plan Support Agreement. Copies of the Plan Support Agreement and the Term Sheets are available at **http://www.rescaprmbssettlement.com** or from The Garden City Group ("**GCG**") by contacting GCG in the manner described in Section VI, below.

The Plan Support Agreement and the Term Sheets provide for a payment by AFI to the Debtors' estates and its creditors totaling $2.1 billion and for an agreed upon division of that amount, as well as ResCap's other available assets, among all ResCap creditors.  More specifically with respect to the Trusts, the Plan Support Agreement and Term Sheets settle (a) the claims of those Trusts (the "**Original Settlement Trusts**") that were originally included in the RMBS Trust Settlement Agreements, dated May 13, 2012, as amended, against the Debtors arising, among other things, from the origination and sale by the Debtors of mortgage loans (the "**Buyback Claims**"), (b) the Buyback Claims, if any, held by those Trusts that are not Original Settlement Trusts (the "**Additional Settlement Trusts**"), and (c) claims held by certain of the Trusts against the Debtors relating to alleged defaults under any servicing agreements or other executory contracts that were assumed by the Debtors and assigned to Ocwen Loan Servicing LLC or other successor servicers, if any, pursuant to the Bankruptcy Court's orders approving the sale of the Debtors' mortgage servicing rights or similar orders regarding the assignment or other disposition of such agreements(the "**Cure Claims**," and together with the Buyback Claims, the "**Claims**").  All the Claims that the Trusts have against AFI and ResCap will be released under the Plan in exchange for the consideration to be received pursuant to the Plan.

If the Plan Support Agreement is approved by the Bankruptcy Court, the RMBS Trustees will vote in favor of the Plan on behalf of each Trust, and the Certificateholders will be precluded from providing contrary direction to the RMBS Trustees with respect to the Plan.

**Under the Plan, if confirmed, all entities, including the Trusts, will be permanently enjoined after the effective date of the Plan, from commencing any actions against any of the Plan Support Agreement Parties with respect to the Claims.  Pursuant to the Plan Support Agreement, it is contemplated that the Bankruptcy Court's order approving the Plan Support Agreement will contain findings that (a) the Plan Support Agreement, the Term Sheets, the RMBS Settlement (as defined in the Plan Support Agreement), and the FGIC Settlement Agreement contemplated thereunder are in the best interests of the investors in each of the RMBS Trusts, each such RMBS Trust and the RMBS Trustees, (b) the RMBS Trustees have acted reasonably, in good faith and in the best interests of the investors in each RMBS Trust and each such RMBS Trust in agreeing to the Plan Support Agreement, the Term Sheets, the RMBS Settlement, and the FGIC Settlement Agreement contemplated thereunder, and (c) the RMBS Trustees' notice of the Plan Support Agreement, the RMBS Settlement, the Term Sheets, and the FGIC Settlement Agreement was sufficient and effective.  It is further contemplated that the order confirming the Plan will contain exculpatory provisions barring any entity from making any claim against the**

---

[2]    The Supplemental Tern Sheet was agreed to by the Plan Support Agreement Parties on May 23, 2013, as contemplated by the Plan Term Sheet.

**Plan Support Agreement Parties, including the RMBS Trustees, arising from their agreement to enter into the Plan Support Agreement, their consent to the terms in the Terms Sheets, or their agreement to support the Plan.**

The Supplemental Term Sheet sets forth the approximate percentage of ResCap assets and the amounts contributed by AFI that will be distributed under the Plan for the benefit of all the Trusts that have Claims.[3]  The allocation of such settlement amounts among the Trusts (the "**Allocation**") shall be determined by the RMBS Trustees pursuant to the advice of Duff & Phelps, LLC ("**Duff & Phelps**"), the primary financial advisor retained by the RMBS Trustees, and upon which advice the RMBS Trustees shall exclusively rely upon for the determination of the Allocation.  For all Trusts other than the Original Settlement Trusts, the Buyback Claims will be subject to further review, including objections as to the existence or amount of such claims asserted by the Institutional Investors (as defined in the Plan Support Agreement).

Information concerning the methodology to be used by Duff & Phelps to perform the Allocation can be found in Annex III and Schedule A to Annex III to the Supplemental Term Sheet, as amended from time to time.  Pursuant to the Allocation, the percent recovery on the Claims of any Trust will likely vary materially from, and in all cases be lower than, the recovery of other claims allowed against the relevant Debtors' estates.  This variation will be caused by a number of factors including, but not limited to: (i) the inclusion in the Allocation of the claims of the Additional Settlement Trusts and the inclusion of Cure Claims, none of which were fully factored into the Debtors' claims models, but which are, as a result of the settlement under the Plan Support Agreement, required to be paid out of the fixed aggregate allowed claims and recoveries to be received by the Trusts, and (ii) the determinations made, and to be made, by Duff & Phelps as required by the RMBS Trust Allocation Protocol attached to the Supplemental Term Sheet as Annex III, including Schedule A thereto.

*Please note that, based on each Trust's Governing Agreements and the facts and circumstances surrounding each Trust, each Trust has its own unique claim against one or more of the Debtors.  As a result, not all Trusts will be allocated amounts in respect of Cure Claims and not all Additional Settlement Trusts will be allocated amounts in respect of Buyback Claims. Further, the amounts available for distribution from the estate of each Debtor will differ.  Thus, the amounts recovered by each Trust may vary considerably, and some Trusts may not be entitled to any recovery, including certain Trusts that are subject to insurance policies issued by certain monoline insurance companies.*

On May 23, 2013, the Debtors filed with the Bankruptcy Court a motion to approve the Plan Support Agreement (the "**Plan Support Agreement Motion**") and to authorize the RMBS Trustees and ResCap to enter into the Plan Support Agreement. Pursuant to the Term Sheets, the Bankruptcy Court is to enter an order approving the Plan Support Agreement by no later than July 3, 2013.  **The hearing on the Plan Support Agreement Motion is scheduled for June 26, 2013 at 10:00 a.m. (prevailing Eastern Time), and objections, if any, must be filed and served by June 19, 2013 at 4:00 p.m. (prevailing Eastern Time).**  The Plan Support Agreement Motion and any notices and pleadings regarding same are available or will be available shortly after they are filed at **http://www.rescaprmbssettlement.com**, or by contacting

---

[3]  Trusts for which an RMBS Trustee acts as master servicer and for which no other RMBS Trustee acts as trustee are identified on Schedule A by an asterisk. Pursuant to the Plan Support Agreement, any allowed Buyback Claims that any such Trusts may have will be included in, and treated consistently with, the Plan Support Agreement. Certificateholders of such Trusts should contact their trustees with respect to matters described in this Notice.

GCG in the manner described in Section VI, below.  The RMBS Trustees intend to provide evidence to support certain findings in the proposed order approving  the Plan Support Agreement Motion.  To the extent filed, the RMBS Trustees' additional evidence will be available at **http://www.rescaprmbssettlement.com** and from GCG not less than fourteen  (14) days before the hearing on the Plan Support Agreement Motion.

**Pursuant to the Plan Support Agreement, if Certificateholders do not desire the Trusts in which they hold Certificates to be bound by the Plan Support Agreement and the Term Sheets, they have the option, if they meet the requirements set forth in the applicable Governing Agreements, to issue a direction, which shall include an indemnity satisfactory to the applicable RMBS Trustee, directing the RMBS Trustee to withdraw its execution of the Plan Support Agreement in respect of the applicable Trust.  Any direction and indemnity must be in a form satisfactory to the applicable RMBS Trustee and must be received by such RMBS Trustee on or before June 19, 2013.  Any Certificateholder that intends to issue such a direction is strongly urged to contact the relevant RMBS Trustee as soon as possible.  If the Plan Support Agreement is approved by the Bankruptcy Court, the RMBS Trustees will vote in favor of the Plan on behalf of each Trust, and the Certificateholders will be precluded from providing contrary direction to the RMBS Trustees with respect to the Plan.**

Upon acceptance by the RMBS Trustee of any Trust of a valid and satisfactory direction to withdraw its execution of the Plan Support Agreement, that RMBS Trustee shall withdraw its execution of the Plan Support Agreement on behalf of such Trust and such Trust will no longer be subject to the Plan Support Agreement.  **The relevant RMBS Trustee may determine not to accept such an instruction for a number of reasons, including, but not limited to, its determination that (a) Certificateholders having greater voting rights in such Trust have indicated, in a manner satisfactory to such RMBS Trustee, their support for the Plan Support Agreement, (b) the indemnification tendered is insufficient in any respect, or (c) the direction tendered is not in the best interests of the Trust.  Any claims of a withdrawing Trust against the Debtors must be pursued individually against the appropriate Debtors**.

**Even if the Certificateholders provide a valid direction to the RMBS Trustees to withdraw their execution of the Plan Support Agreement in respect of the applicable Trust, the Plan Proponents (as defined in the Plan Support Agreement) may still seek confirmation of the Plan that provides the same treatment of that Trust's Claims as set forth in the Plan Support Agreement.  Certificateholders who provide a valid direction to the RMBS Trustees to withdraw their execution of the Plan Support Agreement will maintain their ability to object to the treatment of the applicable Trust's Claims under the Plan, although the Bankruptcy Court may find that such Certificateholders lack standing to object.**

**Certificateholders may also individually object to the Plan Support Agreement by filing and serving an objection to the Plan Support Agreement Motion by June 19, 2013 at 4:00 p.m. (prevailing Eastern Time) pursuant to the terms of the Plan Support Agreement Motion and any accompanying notices filed regarding the Plan Support Agreement Motion**.

*If a Certificateholder (a) does not file a timely objection to the Plan Support Agreement, (b) files a timely objection that is overruled by the Bankruptcy Court, or (c) does not timely issue a valid direction and indemnity to its respective RMBS Trustee to withdraw its execution of the Plan Support Agreement with respect to any Trust, and the Plan Support Agreement is approved by the Bankruptcy Court, the Certificateholder will be bound by the the Plan Support Agreement and the Plan once it is confirmed and becomes effective, including with respect to its recovery, if any, in respect of its Certificates pursuant to the Allocation and with respect to the releases as set forth in the Term Sheets.*

**CERTIFICATEHOLDERS ARE URGED TO REVIEW THE PLAN SUPPORT AGREEMENT AND TERM SHEETS CAREFULLY AND TO CONSULT WITH THEIR ADVISORS.**

### III.    The FGIC Settlement Agreement

The Plan Support Agreement incorporates a settlement agreement (the "**FGIC Settlement Agreement**") dated May 23, 2013, pursuant to which ResCap, FGIC, The Bank of New York Mellon and the Bank of New York Mellon Trust Company, N.A., US Bank National Association, Wells Fargo Bank, N.A., and Law Debenture Trust Company of New York (collectively, the "**FGIC Trustees**") as trustees or separate trustees under certain Trusts (the "**FGIC Trusts**") as set forth in the FGIC Settlement Agreement (as defined below) (collectively, the "**FGIC Settlement Parties**") settled their claims against each other, including the claims of the FGIC Trusts against FGIC for claims under the insurance policies issued by FGIC (the "**Policies**") in respect of the FGIC Trusts.[4]   Pursuant to the terms of the FGIC Settlement Agreement, among other things, (a) each FGIC Settlement Party shall release the other FGIC Settlement Parties in respect of the Policies and other Policy Agreements (as defined in the FGIC Settlement Agreement), (b) FGIC will pay to the FGIC Trusts certain amounts in settlement of the FGIC Trusts' claims against FGIC as set forth in the FGIC Settlement Agreement, (c) the FGIC Trustees shall release the Debtors in respect of Origination-Related Provisions (as defined in the FGIC Settlement Agreement), (d) the Policies and other Policy Agreements will be commuted, (e) FGIC will not be liable for any further payments under the Policies and other Policy Agreements, and (f) the FGIC Trusts will no longer make premium, reimbursement, or other payments to FGIC.  Copies of the FGIC Settlement will be made available on or after May 29, 2013 at **http://www.rescaprmbssettlement.com** or from GCG by contacting GCG in the manner described in Section VI, below.

By May 29, 2013, an affirmation (the "**Affirmation**") in support of a motion seeking approval of the FGIC Settlement Agreement will be filed in the New York State Supreme Court with jurisdiction over FGIC's rehabilitation proceeding (the "**State Court**"), and by June 4, 2013, a motion to approve the FGIC Settlement Agreement (the "**FGIC Motion**") will be filed in the Bankruptcy Court.  The FGIC Settlement Agreement shall not become effective unless and until it is approved by the Bankruptcy Court and the State Court.  In the Bankruptcy Court, the notice filed regarding the FGIC Motion will include the hearing date on the FGIC Motion and the

---

[4]  The Supplemental Term Sheet sets forth the  terms of any settlements with the other monoline insurance companies that are among the Plan Support Agreement Parties.  To the extent monoline insurance companies are not parties to the Plan Support Agreement, the Trusts reserve any and all claims against them.

procedures for objecting to same.  The FGIC Settlement Agreement, the FGIC Motion, the
Affirmation, and any notices will be available once they have been filed at
**http://www.rescaprmbssettlement.com** or from GCG by contacting GCG in the manner
described in Section VI, below.

**Any Certificateholder of a FGIC Trust may object to the approval of the FGIC Settlement
Agreement in the Bankruptcy Court pursuant to the terms of the FGIC Motion.  Any
Certificateholder of a FGIC Trust also might have an opportunity in the State Court to
object to the Affirmation and approval of the FGIC Settlement Agreement.**

*If a Certificateholder of a FGIC Trust does not file a timely objection to the FGIC Settlement
Agreement Motion or if such Certificateholder's  timely objection is overruled, so long as the
FGIC Settlement Agreement  and the Plan Support Agreement are approved by the
Bankruptcy Court and the State Court, and the Bankruptcy Court confirms the Plan, such
Certificateholder will be bound by the terms of the FGIC Settlement Agreement.*

**CERTIFICATEHOLDERS OF A FGIC TRUST ARE URGED TO CAREFULLY
REVIEW THE FGIC SETTLEMENT AGREEMENT ONCE IT IS AVAILABLE AND
TO CONSULT WITH THEIR ADVISORS.**

IV.    **Other RMBS Trusts that Have an Insurance Policy with a Monoline Insurance
Company.**

Pursuant to the Plan Support Agreement and the Term Sheets, any RMBS Trust that has an
insurance policy with a Monoline (as defined in the Plan Support Agreement) reserves the ability
to enforce its rights, in the Bankruptcy Court or otherwise, against any Monoline (other than
FGIC) that does not, in the future, perform in accordance with an insurance policy for the benefit
of that Trust.

V.    **This Notice Is a Summary.**

This Notice is not intended as, nor does not provide, a detailed restatement of the Plan Support
Agreement, the Term Sheets, the RMBS Settlement or the FGIC Settlement Agreement, relevant
law or relevant legal procedures.  The RMBS Trustees, do not intend to send any further notices
with respect to the matters addressed herein, and Certificateholders and other potentially
interested persons are urged to review carefully the Plan Support Agreement, the Term Sheets,
the FGIC Settlement Agreement, any related notices, and other related pleadings that have been
filed, and that subsequently may be filed, in the Chapter 11 Cases, and to consult with their own
legal and financial advisors.

VI.    **Other Sources of Information.**

The Committee appointed in the Chapter 11 Cases has established an official website (the
"**Committee Website**"), on which basic information concerning the Chapter 11 Cases has been
posted, including, but not limited to, relevant contact information, upcoming dates and deadlines,
statements and schedules filed by ResCap and a list of answers to frequently asked questions.
The Committee Website can be reached at **http://dm.epiq11.com/RES/Project**.

Information relevant to the Plan Support Agreement Motion, the Plan, the Affirmation, the FGIC Settlement Agreement, and any notices thereof will be available at **http://www.rescaprmbssettlement.com,** which will be updated regularly with related material documents filed or orders entered by the Bankruptcy Court or the State Court.  If a Certificateholder has any questions or would like to request copies of any of the relevant documents, Certificateholders may call GCG at (866) 241-7538 in the United States, +1 (202) 470-4565 outside the United States, or send an email to **questions@ rescaprmbssettlement.com**.

Certificateholders may also obtain any documents filed with the Bankruptcy Court in the Chapter 11 Cases by visiting ResCap's claims agent website at **http://www.kccllc.net/rescap,** or by logging on to PACER at **https://www.uscourts.gov** (a small fee is charged for this service). Documents filed in the Chapter 11 Cases may also be viewed during normal business hours at the Clerk's Office of the Bankruptcy Court, located at One Bowling Green, New York, New York 10004.

Inquiries with respect to any particular Trust for which The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Deutsche Bank National Trust Company, Deutsche Bank Trust Company Americas, or US Bank National Association, Wells Fargo Bank, N.A., serves as RMBS Trustee may be directed to the RMBS Trustee for such Trust using the "RMBS Trustee Contact Information" for such RMBS Trustee at **http://www.rescaprmbssettlement.com**.  With respect to those Trusts for which HSBC Bank USA, N.A. serves as RMBS Trustee, inquiries may be directed to **US.CTLA.Structured.Unit@us.hsbc.com**.  With respect to those Trusts for which Law Debenture Trust Company of New York serves as RMBS Trustee, inquires may be directed to **nytrustco@lawdeb.com.  With respect to all other trusts, Certificateholders of those trusts should refer to their respective Governing Agreements for contact information.**

## VII.   Other Matters.

Certificateholders and other persons interested in the Trusts should not rely on the RMBS Trustees, or on counsel or other advisors retained by the RMBS Trustees, as their sole source of information.

Please note that the foregoing is not intended and should not be construed as investment, accounting, financial, legal or tax advice by or on behalf of the RMBS Trustees, or their directors, officers, affiliates, agents, attorneys or employees. Each person or entity receiving this Notice should seek the advice of its own advisers in respect of the matters set forth herein.

Please be further advised that each of the RMBS Trustees reserves all of the rights, powers, claims and remedies available to it under the Governing Agreements and applicable law. No delay or forbearance by an RMBS Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Governing Agreements, other documentation relating thereto or under applicable law, shall impair any such right or remedy or constitute a waiver thereof or acquiescence therein.

Each of the RMBS Trustees expressly reserves its rights under each applicable Governing Agreement, including without limitation, its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by such RMBS Trustee in performing its duties, indemnities owing or to become owing to such RMBS Trustee, compensation for such RMBS Trustee's time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with any applicable Governing Agreement at the request or direction of any Certificateholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

Please be advised that with respect to any particular inquiry from individual Certificateholders, an RMBS Trustee may conclude that a specific response to such inquiry is not consistent with requirements under applicable law and regulation of equal and full dissemination of information to all Certificateholders.

THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, U.S. BANK NATIONAL ASSOCIATION, WELLS FARGO BANK, N.A., HSBC BANK USA, N.A., AND LAW DEBENTURE TRUST COMPANY OF NEW YORK, severally, as trustees, master servicers, and/or indenture trustees or separate trustees of the Trusts

## Schedule A

### The Bank of New York Mellon
### The Bank of New York Mellon Trust Company, N.A.

**GMACM Mortgage Loan Trust 2004-AR1**

36185NX21
36185NX39
36185NX47
36185NX54
36185NX62
36185NX70
36185NX88
36185NX96
36185NY20
36185NY38
36185NY46
36185NY53
36185NY61
36185NY79
36185NY87
36185NY95
36185NZ29
36185NZ37
36185NZ45
36185NZ52
36185NZ60

**GMACM Mortgage Loan Trust 2004-AR2**

36185N3R9
36185N3S7
36185N3T5
36185N3U2
36185N3V0

36185N3W8
36185N3X6
36185N3Y4
36185N3Z1
36185N4A5
36185N4B3
36185N4C1
36185N4D9

**GMACM Mortgage Loan Trust 2004-GH1**

36185HDW0
36185HDX8
36185HDY6
36185HDZ3
36185HEA7
36185HEB5
36185HEC3
36185HED1
36185HEE9
N/C107490
N/C107495
N/C107496

**GMACM Home Loan Trust 2004-HLTV1**

36185HDT7
36185HDU4
36185HDV2

**GMACM Mortgage Loan Trust 2004-J1**

36185NT26
36185NT34
36185NT42

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

**The Bank of New York Mellon**
**The Bank of New York Mellon Trust Company, N.A.**

| | |
|---|---|
| 36185NT59 | 36185N2D1 |
| 36185NT83 | 36185N2E9 |
| 36185NT91 | 36185N2F6 |
| 36185NU24 | 36185N2G4 |
| 36185NU32 | 36185N2H2 |
| 36185NU57 | 36185N2J8 |
| 36185NU65 | 36185N2K5 |
| 36185NU73 | 36185N2L3 |
| 36185NU81 | 36185N2M1 |
| 36185NU99 | 36185N2N9 |
| 36185NV23 | 36185N2P4 |
| 36185NV31 | 36185N2Q2 |
| 36185NV49 | 36185N2R0 |
| 36185NV56 | 36185N2S8 |
| 36185NV64 | 36185N2T6 |
| 36185NV72 | 36185N2U3 |
| 36185NV80 | 36185NZ78 |
| 36185NV98 | **GMACM Mortgage Loan Trust 2004-J3** |
| 36185NW22 | 36185N2V1 |
| 36185NW30 | 36185N2W9 |
| 36185NW48 | 36185N2Y5 |
| 36185NW55 | 36185N2Z2 |
| 36185NW63 | 36185N3A6 |
| 36185NW71 | 36185N3B4 |
| 36185NW89 | 36185N3C2 |
| 36185NW97 | 36185N3D0 |
| **GMACM Mortgage Loan Trust 2004-J2** | 36185N3E8 |
| 36185N2A7 | 36185N3F5 |
| 36185N2B5 | 36185N3G3 |
| 36185N2C3 | 36185N3H1 |

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

**The Bank of New York Mellon**
**The Bank of New York Mellon Trust Company, N.A.**

| | |
|---|---|
| 36185N3J7 | 36185N5D8 |
| 36185N3K4 | 36185N5E6 |
| 36185N3L2 | 36185N5F3 |
| 36185N3M0 | 36185N5G1 |
| 36185N3N8 | 36185N5H9 |
| 36185N3P3 | 36185N5J5 |
| 36185N3Q1 | 36185N5K2 |
| **GMACM Mortgage Loan Trust 2004-J4** | 36185N5L0 |
| 36185N4E7 | 36185N5M8 |
| 36185N4F4 | 36185N5N6 |
| 36185N4H0 | 36185N5P1 |
| 36185N4J6 | 36185N5Q9 |
| 36185N4K3 | 36185N5R7 |
| 36185N4L1 | **GMACM Mortgage Loan Trust 2004-J6** |
| 36185N4N7 | 36185N5S5 |
| 36185N4P2 | 36185N5T3 |
| 36185N4Q0 | 36185N5U0 |
| 36185N4R8 | 36185N5V8 |
| 36185N4S6 | 36185N5W6 |
| 36185N4T4 | 36185N5X4 |
| 36185N4U1 | 36185N5Y2 |
| 36185N4V9 | 36185N5Z9 |
| 36185N4W7 | 36185N6A3 |
| 36185N4X5 | 36185N6B1 |
| **GMACM Mortgage Loan Trust 2004-J5** | 36185N6C9 |
| 36185N4Y3 | 36185N6D7 |
| 36185N4Z0 | 36185N6E5 |
| 36185N5A4 | 36185N6F2 |
| 36185N5B2 | 36185N6G0 |
| 36185N5C0 | 36185N6H8 |

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

**The Bank of New York Mellon
The Bank of New York Mellon Trust Company, N.A.**

36185N6K1

36185N6L9

**GMACM Mortgage Loan Trust 2005-AR1**

76112BKK5

76112BKL3

76112BKM1

76112BKN9

76112BKP4

76112BKQ2

76112BKR0

76112BKS8

76112BKT6

76112BKU3

76112BKV1

76112BKW9

76112BKX7

76112BKY5

**GMACM Mortgage Loan Trust 2005-AR2**

36185N2R6

36185N6M7

36185N6N5

36185N6P0

36185N6Q8

36185N6S4

36185N6T2

36185N6U9

36185N6V7

36185N6W5

36185N6X3

**GMACM Mortgage Loan Trust 2006-AR2**

36185MET5

36185MEU2

36185MEV0

36185MEW8

36185MEX6

36185MEZ1

36185MFA5

36185MFB3

36185MFC1

36185MFD9

36185MFE7

36185MFF4

36185MFG2

36185MFH0

36185MFJ6

36185MFK3

36185MFL1

**GMACM Home Loan Trust 2006-HLTV1**

36185HEF6

36185HEG4

36185HEH2

36185HEJ8

36185HEK5

N/C133485

**GMACM Home Equity Loan Trust 2006-HE1**

361856ER4

N/C133479

**GMACM Home Equity Loan Trust 2006-**

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

### The Bank of New York Mellon
### The Bank of New York Mellon Trust Company, N.A.

**HE2**

38011AAB0

38011AAC8

38011AAD6

**GMACM Home Equity Loan Trust 2006-HE3**

38012TAA0

38012TAB8

38012TAC6

38012TAD4

38012TAE2

N/A142614

**GMACM Home Equity Loan Trust 2006-HE5**

38012EAA3

38012EAB1

38012EAC9

**GMACM Home Equity Loan Trust 2007-HE2**

36186LAA1

36186LAB9

36186LAC7

36186LAD5

36186LAE3

36186LAF0

36186LAG8

N/C160336

N/C160337

**GMACM Home Equity Loan Trust 2007-HE3**

36186MAA9

36186MAB7

36186MAC5

36186MAD3

36186MAE1

36186MAF8

N/C165704

N/C165705

N/C165706

**RAMP Series 2004-KR1**

7609852E0

7609852F7

760985X89

760985X97

760985Y88

760985Y96

N/A94270

N/A94271

N/A95493

**RAMP Series 2004-KR2**

76112BCV0

76112BCW8

76112BCX6

76112BDB3

76112BDC1

76112BDD9

76112BDJ6

76112BDK3

N/C104555

N/C104556

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders. No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

**The Bank of New York Mellon**
**The Bank of New York Mellon Trust Company, N.A.**

| | |
|---|---|
| N/C104557 | 76112BEJ5 |
| **RAMP Series 2004-RS1** | N/C106148 |
| 760985M73 | N/C106149 |
| 760985M81 | N/C106150 |
| 760985M99 | N/C106151 |
| 760985N49 | **RAMP Series 2004-RS11** |
| 760985N56 | 76112BFH8 |
| 760985N64 | 76112BFJ4 |
| 760985N72 | 76112BFK1 |
| 760985N80 | 76112BFL9 |
| 760985N98 | 76112BFM7 |
| 760985P21 | 76112BFN5 |
| 760985P62 | N/C107783 |
| 760985P70 | N/C107784 |
| N/A82146 | **RAMP Series 2004-RS12** |
| N/A82147 | 76112BFS4 |
| N/A82148 | 76112BFT2 |
| N/A82149 | 76112BFU9 |
| **RAMP Series 2004-RS10** | 76112BFV7 |
| 76112BDS6 | 76112BFW5 |
| 76112BDT4 | 76112BFX3 |
| 76112BDU1 | 76112BFY1 |
| 76112BDV9 | 76112BGD6 |
| 76112BDW7 | 76112BGE4 |
| 76112BEC0 | 76112BGF1 |
| 76112BED8 | 76112BGG9 |
| 76112BEE6 | 76112BGH7 |
| 76112BEF3 | 76112BGJ3 |
| 76112BEG1 | N/C108738 |
| 76112BEH9 | N/C108739 |

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

**The Bank of New York Mellon
The Bank of New York Mellon Trust Company, N.A.**

N/C108740

N/C108741

N/C108742

N/C108743

**RAMP Series 2004-RS2**

760985Q38

760985Q46

760985Q53

760985Q61

760985Q79

760985Q87

760985R37

760985R45

760985R52

760985R94

760985S28

N/A92036

N/A92037

N/A92038

N/A92039

**RAMP Series 2004-RS3**

7609852C4

760985V32

760985V40

760985V65

760985V73

760985V81

760985V99

N/A94284

N/A94285

**RAMP Series 2004-RS4**

7609852X8

7609852Y6

7609853E9

7609853F6

7609853G4

7609853H2

7609853J8

7609853K5

7609853L3

7609853N9

7609853P4

N/A95998

N/A95999

N/A96000

N/A96001

**RAMP Series 2004-RS5**

7609853W9

7609853Z2

7609854A6

7609854B4

7609854D0

7609854F5

7609854G3

7609854H1

7609854J7

7609854K4

7609854L2

7609854M0

7609854N8

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

**The Bank of New York Mellon
The Bank of New York Mellon Trust Company, N.A.**

N/A97460

N/A97461

N/A97462

N/A97463

**RAMP Series 2004-RS6**

7609854X6

7609855A5

7609855B3

7609855C1

7609855D9

7609855E7

7609855F4

7609855G2

7609855H0

7609855L1

7609855M9

7609855N7

7609855P2

7609855Q0

7609856P1

7609856Q9

N/C98807

N/C98808

N/C98809

N/C98810

**RAMP Series 2004-RS7**

7609857C9

7609857D7

7609857E5

7609857F2

7609857G0

7609857J4

7609857K1

7609857L9

7609857M7

N/C100700

N/C100701

N/C100702

N/C100703

**RAMP Series 2004-RS8**

76112BAD2

76112BAE0

76112BAF7

76112BAG5

76112BAH3

76112BAJ9

76112BAM2

76112BAN0

76112BAP5

76112BAQ3

76112BAT7

76112BAU4

N/C103114

N/C103115

N/C103116

N/C103117

**RAMP Series 2004-RS9**

76112BCF5

76112BCG3

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

**The Bank of New York Mellon
The Bank of New York Mellon Trust Company, N.A.**

| | |
|---|---|
| 76112BCH1 | 7609856S5 |
| 76112BCM0 | 7609856T3 |
| 76112BCN8 | N/C98823 |
| 76112BCP3 | N/C98824 |
| 76112BCQ1 | N/C98825 |
| 76112BCR9 | N/C98918 |
| 76112BDE7 | N/C98919 |
| N/C104627 | **RAMP Series 2004-RZ3** |
| N/C104628 | 76112BAY6 |
| N/C104629 | 76112BAZ3 |
| N/C104630 | 76112BBA7 |
| **RAMP Series 2004-RZ1** | 76112BBB5 |
| 7609852B6 | 76112BBC3 |
| 760985T84 | 76112BBD1 |
| 760985T92 | 76112BBE9 |
| 760985U25 | 76112BBJ8 |
| 760985U33 | 76112BBK5 |
| 760985U41 | 76112BBL3 |
| 760985U58 | 76112BBM1 |
| 760985U66 | 76112BBN9 |
| 760985U74 | 76112BDG2 |
| N/A94504 | 76112BDH0 |
| N/A94505 | N/C104592 |
| N/A94506 | N/C104593 |
| **RAMP Series 2004-RZ2** | N/C104594 |
| 7609854S7 | N/C104595 |
| 7609854T5 | N/C104596 |
| 7609854U2 | **RAMP Series 2004-RZ4** |
| 7609854V0 | 76112BHF0 |
| 7609854W8 | 76112BHG8 |

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

**The Bank of New York Mellon
The Bank of New York Mellon Trust Company, N.A.**

| | |
|---|---|
| 76112BHH6 | N/C110292 |
| 76112BHJ2 | N/C110293 |
| 76112BHK9 | **RAMP Series 2005-RS2** |
| 76112BHL7 | 76112BJW1 |
| 76112BHM5 | 76112BKB5 |
| 76112BHN3 | 76112BKC3 |
| 76112BHP8 | 76112BKD1 |
| 76112BHQ6 | 76112BKE9 |
| N/A109040 | 76112BKF6 |
| N/A109040 | 76112BKG4 |
| N/C109041 | 76112BKZ2 |
| N/C109041 | N/C111831 |
| **RAMP Series 2005-RS1** | N/C111832 |
| 76112BHV5 | **RAMP Series 2005-RS3** |
| 76112BHW3 | 76112BLD0 |
| 76112BHX1 | 76112BLE8 |
| 76112BHY9 | 76112BLF5 |
| 76112BHZ6 | 76112BLG3 |
| 76112BJA9 | 76112BLH1 |
| 76112BJB7 | 76112BLJ7 |
| 76112BJC5 | 76112BLK4 |
| 76112BJG6 | 76112BLL2 |
| 76112BJH4 | 76112BLM0 |
| 76112BJJ0 | 76112BLN8 |
| 76112BJK7 | 76112BLP3 |
| 76112BJL5 | 76112BLQ1 |
| 76112BJM3 | 76112BLR9 |
| 76112BJN1 | 76112BND8 |
| N/C110290 | N/A114662 |
| N/C110291 | N/C113171 |

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

**The Bank of New York Mellon**
**The Bank of New York Mellon Trust Company, N.A.**

| | |
|---|---|
| N/C113172 | N/C117186 |
| N/C113646 | N/C117187 |
| N/C113647 | N/C117188 |
| N/C113648 | N/C117189 |
| **RAMP Series 2005-RS4** | N/C117190 |
| 76112BPA2 | **RAMP Series 2005-RS6** |
| 76112BPB0 | 76112BTP5 |
| 76112BPC8 | 76112BTQ3 |
| 76112BPD6 | 76112BTR1 |
| 76112BPE4 | 76112BTS9 |
| 76112BPF1 | 76112BTT7 |
| 76112BPG9 | 76112BTU4 |
| 76112BPH7 | 76112BTV2 |
| 76112BPJ3 | 76112BTW0 |
| N/C115787 | 76112BTX8 |
| N/C115788 | 76112BTY6 |
| N/C115789 | 76112BTZ3 |
| N/C115790 | 76112BVL1 |
| N/C115791 | N/C119140 |
| **RAMP Series 2005-RS5** | N/C119141 |
| 76112BPU8 | N/C119142 |
| 76112BPV6 | N/C119143 |
| 76112BPW4 | N/C119144 |
| 76112BPX2 | **RAMP Series 2005-RS7** |
| 76112BPY0 | 76112BWV8 |
| 76112BPZ7 | 76112BWW6 |
| 76112BQA1 | 76112BWX4 |
| 76112BQB9 | 76112BWY2 |
| 76112BQC7 | 76112BWZ9 |
| 76112BQK9 | 76112BXA3 |

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.

## Schedule A

**The Bank of New York Mellon**
**The Bank of New York Mellon Trust Company, N.A.**

| | |
|---|---|
| 76112BXB1 | 76112BMA5 |
| 76112BXC9 | 76112BMB3 |
| 76112BXD7 | 76112BMC1 |
| 76112BXG0 | 76112BMD9 |
| N/A120701 | 76112BME7 |
| N/C120702 | 76112BMF4 |
| **RAMP Series 2005-RS8** | 76112BMG2 |
| 76112BZF0 | 76112BMH0 |
| 76112BZG8 | 76112BMJ6 |
| 76112BZJ2 | 76112BMK3 |
| 76112BZK9 | 76112BNE6 |
| 76112BZL7 | N/C113078 |
| 76112BZM5 | N/C113080 |
| 76112BZN3 | **RAMP Series 2005-RZ2** |
| 76112BZP8 | 76112BWD8 |
| 76112BZU7 | 76112BWE6 |
| 76112BZV5 | 76112BWF3 |
| N/C125141 | 76112BWG1 |
| N/C125142 | 76112BWH9 |
| **RAMP Series 2005-RS9** | 76112BWJ5 |
| 76112BL73 | 76112BWK2 |
| 76112BL81 | 76112BWL0 |
| 76112BL99 | 76112BWM8 |
| 76112BM23 | 76112BXJ4 |
| N/A128298 | 76112BXK1 |
| N/A128299 | 76112BXL9 |
| **RAMP Series 2005-RZ1** | **RAMP Series 2005-RZ3** |
| 76112BLX6 | 76112BA26 |
| 76112BLY4 | 76112BA34 |
| 76112BLZ1 | 76112BA42 |

The CUSIP numbers appearing herein have been included solely for the convenience of the Holders.  No representation is made as to the correctness of the CUSIP numbers either as printed on the certificates or notes related to the Trusts or as contained in this notice.