**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** ) | **Case No. 12-12020 (MG)** |
| ) | |
| **RESIDENTIAL CAPITAL, LLC,** *et al.,* ) | |
| ) | **Chapter 11** |
| **Debtors.** ) | |
| ) | **Jointly Administered** |

DECLARATION OF ALLEN M. PFEIFFER

TABLE OF CONTENTS

I.      Experience and Qualifications.................................................................3

II.     Assignment.............................................................................................4

III.    Summary of Conclusion ........................................................................5

IV.     Allocation of the Claims of the RMBS Trusts Under the Plan................5

        *D&P's Work to Evaluate and Calculate the RMBS Trust Claims*......................5

            The RMBS 9019 Motion ...................................................................5

            D&P's Assignments...........................................................................6

            Modification of the Original Claim Allocation Methodology......................7

            Review of Mortgage Files and Methodology Used ......................................7

            Results of D&P's Calculations for RMBS R+W Claims for the Original Settling
            RMBS Trusts ...................................................................................8

            Results of D&P's Calculations for RMBS R+W Claims for the Additional Settling
            RMBS Trusts ...................................................................................9

            Results of D&P's Calculations for RMBS Servicing Damage Claims ........................9

        *Impact of Monoline Insurance on RMBS Trust Claims*......................................*10*

        *The "Recognized" Claims of RMBS Trusts*.................................................*11*

        *Distribution of Units for the Benefit of the RMBS Trusts*................................*12*

        *Calculation of GMACM Weighted Claims and RFC Weighted Claims* ............................*13*

V.      Conclusion .........................................................................................14

VI.     Reservation of Rights and Compensation Disclosure ..........................................15

VII.    Attachment 1 – Resume and Testimony Experience............................................16

VIII.   Attachment 2 – Documents Reviewed and / or Considered ............................................26

IX.     Attachment 3 – Exhibit 9 to the Disclosure Statement........................................41

## I.   Experience and Qualifications

1.      I, Allen M. Pfeiffer, have been asked by the RMBS Trustees[1] to serve as an expert witness in connection with the hearing on confirmation of the Plan on the matters discussed in this Declaration (this "**Declaration**").  The conclusions presented in this Declaration result from work done by Duff & Phelps, LLC ("**D&P**") in its role as financial advisor to the RMBS Trustees.[2]

2.      I am a Managing Director in the New York, NY and the Morristown, NJ offices of D&P.  I am the Global Service Leader of Dispute Consulting-Complex Valuation and Bankruptcy Litigation.  D&P is a leading financial advisory and investment banking firm offering an array of services in the areas of valuation, investment banking and transaction advice, and dispute consulting.

3.      I have more than seventeen years of experience in valuation, solvency, damages cash flow assessment and capital structure analysis and have led hundreds of engagements related to the valuation of an entire business, a security, an interest in a business, or an asset. During my professional career, the New York Supreme Court, the United States Bankruptcy Court, the American Arbitration Association, and arbitrators operating under the rules of the International Chamber of Commerce have accepted me as a valuation and cash flow expert.  In addition to my testifying experience, I have worked as a lead consultant to attorneys and corporations in the context of solvency and many other valuation and corporate finance matters. I

---

[1]      The RMBS Trustees are BNY Mellon, DB, HSBC, LDTC, USB and WFB, each solely in their respective capacities as trustees, indenture trustees or separate trustees for certain of the RMBS Trusts.  Capitalized terms used herein without definitions have the meanings ascribed to them in the Plan.  For the convenience of the reader, in some cases the definitions found in the Plan are repeated herein or a citation to the Plan's definition of such term is given.

[2]      D&P was originally retained by BNY Mellon, DB, USB and WFB.  After LDTC was appointed as separate trustee for certain RMBS Trusts, LDTC joined in the retention of D&P.  Later, HSBC also joined in the retention of D&P.

also led the team of financial advisors to Anton Valukus, who served as the Examiner in the Lehman Brothers bankruptcy case.

4.      My residential mortgage-backed securities experience includes serving as a consultant on the valuation and cash flows as part of a solvency matter related to a multi-billion-dollar, leading financial services company, retention to advise counsel with regard to the valuation of RMBS securities as part of the reorganization of an international, multi-billion-dollar financial services entity, serving as a debtor advisor in litigation related to the reorganization of a leading residential lender, and lead advisor on the solvency of a large, residential real estate subsidiary.

5.      The conclusions set forth in this Declaration are my own, and are based on work that I personally have performed or work performed by my colleagues at Duff & Phelps at my direction.  In those instances where tasks were performed by my colleagues, I reviewed their work and determined that it was appropriate to rely upon that work.

6.      My resume, including a list of testimony given in the past four years, and publications, for at least the last ten years, are attached to this Declaration as **Attachment 1**.

## II.      Assignment

7.      My assignment is to describe the analysis undertaken by D&P to determine a fair allocation of the claims of the RMBS Trusts and the distributions thereon under the Plan, and to explain my basis for concluding that this allocation is proper and fair.

8.      **Attachment 2** lists all of the documents that were reviewed and/or considered in forming the basis for my conclusions. I reserve the right to update Attachment 2 as additional documentation is reviewed and/or considered.

### III.    Summary of Conclusion

9.      The claims of the RMBS Trusts, and the distributions thereon, are properly and

fairly allocated under the Plan.

### IV.    Allocation of the Claims of the RMBS Trusts Under the Plan

*D&P's Work to Evaluate and Calculate the RMBS Trust Claims*

<u>The RMBS 9019 Motion</u>

10.     Shortly after these Chapter 11 cases were filed the Debtors filed a motion,[3] which

was later amended (as amended, the "**RMBS 9019 Motion**"[4]), seeking approval of the **Original**

**RMBS Settlement Agreements** [5] with the **Institutional Investors** [6] (*i.e.*, the **Steering**

**Committee Consenting Claimants**[7] and the **Talcott Franklin Consenting Claimants**[8]).  The

Original RMBS Settlement Agreements related to claims of the Original Settling RMBS Trusts

against the Debtors arising from any obligations or liability in respect of the origination and sale

of mortgage loans to the RMBS Trusts (referred to in the Plan as "**RMBS R+W Claims**"[9]).

11.     Under the Original RMBS Settlement Agreements, the Original Settling RMBS

Trusts were to be granted an allowed aggregate claim of up to $8.7 billion[10]  to be allocated

among the Original Settling RMBS Trusts in accordance with certain formulas set forth in

---

[3]      *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [ECF No. 320].

[4]      *Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [ECF No. 1176] and the *Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [ECF No. 1887].

[5]      Defined at Art.I.A.194 of the Plan.

[6]      Defined at Art.I.A.131 of the Plan.

[7]      Defined at Art.I.A.278 of the Plan.

[8]      Defined at Art.I.A.280 of the Plan.

[9]      Defined at Art.I.A.257 of the Plan.

[10]     In support of the RMBS 9019 Motion, the Debtors submitted an expert report that calculated the Original Settling RMBS Trusts' repurchase claims at between $6.7 billion and $10.3 billion.  *Declaration of Frank Sillman in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements*, ECF No. 320-8, at ¶¶  68 and 69.

Exhibit B to each of the Original RMBS Settlement Agreements (the "**Original Claim Allocation Methodology**").

12.    In light of the then-pending RMBS 9019 Motion, four of the RMBS Trustees (DB, BNY Mellon, USB and WFB) retained D&P to assist them in these Chapter 11 cases, including in the identification, quantification, litigation and/or resolution of the RMBS Trust Claims.[11]

### D&P's Assignments

13.    D&P's was initially asked by the RMBS Trustees to evaluate the reasonableness of the Original RMBS Settlement Agreements as they related to the RMBS R+W Claims of the Original RMBS Settling Trusts.

14.    The RMBS Trustees also determined, however, that the resolution of the RMBS Trust Claims would need to include the RMBS R+W Claims of all RMBS Trusts for which they acted, and not just such claims of the Original Settling RMBS Trusts (such other trusts are referred to in the Plan as the "**Additional Settling RMBS Trusts**"[12]).  Accordingly, D&P was also asked to calculate the RMBS R+W Claims of the Additional Settling RMBS Trusts using the same methodologies D&P had employed to quantify the RMBS R+W Claims of the Original Settling RMBS Trusts.

15.    The RMBS Trustees also asked D&P to determine the servicing damage claims of the RMBS Trusts.

---

[11]    The RMBS 9019 Motion provided that "[w]hile the [Original RMBS Settlement Agreements were] negotiated by the Institutional Investors, the Trustees of each of the [Original Settling RMBS] Trusts will also evaluate the reasonableness of the settlement and can accept or reject the proposed compromise on behalf of each Trust."  See ECF No. 320 at ¶4.  On May 23, 2013, the day the motion to approve the Plan Support Agreement was filed, see ECF No. 3814, the trial dates and other matters related to the RMBS 9019 Motion were adjourned.  See ECF Nos. 3815 and 3816.

[12]    Defined at Art.I.A.2. of the Plan.  This concept is contained in the Plan at Art.IV.C.1, which provides that "The Original RMBS Settlement Agreements are hereby expanded to include all RMBS Trusts holding RMBS Trust Claims and are otherwise modified as set forth herein."

16.    The RMBS Trustees also asked D&P to advise them regarding any proposed plan of reorganization or liquidation of the Debtors, and distributions thereunder.

Modification of the Original Claim Allocation Methodology

17.    As part of its analysis of the RMBS R+W Claims, D&P evaluated the Original Claim Allocation Methodology, which would have allocated RMBS R+W Claims among the Original Settling RMBS Trusts *pro rata* on the basis of the sum of the net losses that have been experienced and are estimated to be experienced by each such RMBS Trust through the date of its termination.   Based on D&P's suggestion, and after lengthy discussions with the Steering Committee Consenting Claimants, the Debtors, and other parties in interest, the Original Claim Allocation Methodology was modified to provide for RMBS R+W Claims to be allocated *pro rata* based on differences among the RMBS Trusts (i) losses *and* (ii) in the incidence of breaches of representations and warranties, as revealed by loan sampling and statistical work to be performed by D&P.[13]

Review of Mortgage Files and Methodology Used

18.    In order to determine the RMBS R+W Claims, D&P conducted a sampling review of more than 6,500 mortgage loan files provided by the Debtors.   The purpose of that review was to identify breaches of representations and warranties made by the Debtors, and that review used statistical methodologies to estimate the incidence of those breaches across the population of mortgage loans in the RMBS Trusts.   D&P also used historical information and financial analysis to calculate the total present and projected future losses of the RMBS Trusts that were associated with breaches of representations and warranties by the Debtors.

---

[13]    Column F (Losses Due to Breach) in each of Schedules 2G, 2R, 3G and 4R filed as part of the Plan Supplement [ECF No. 5342] reflect this calculation.

19.     The methodology used by D&P to calculate the RMBS R+W Claims is set out in detail at paragraph 1 of Exhibit 9 to the Disclosure Statement filed on August 23, 2013 [ECF No. 4819-3] (the "**Methodology Explanation**"), a copy of which is also attached hereto as Attachment 3 and is incorporated herein by reference.

Results of D&P's Calculations for RMBS R+W Claims for the Original Settling RMBS Trusts

20.     The results of D&P's calculations of the RMBS R+W Claims of the Original Settling RMBS Trusts are set out in Schedules 2G and 2R (filed as part of the Plan Supplement [ECF No. 5342].[14]

21.     Schedule 2G lists the Original Settling RMBS Trusts that have RMBS R+W Claims against GMACM[15] and Schedule 2R lists the Original Settling RMBS Trusts that have RMBS R+W Claims against RFC.[16]  Those claims total $8.7 billion, before the adjustments made in the case of Insured RMBS Trusts (discussed below).[17]

---

[14]     As noted before, there are 392 Original Settling RMBS Trusts.  However, some RMBS Trusts have separate Loan Groups.  A Loan Group is "any group of loans established by the governing agreements for an RMBS Trust so that only a particular class or classes of securities issued by such RMBS Trust benefit from the proceeds of such loans."  Art.I.A.169 of the Plan.  The defined term, RMBS Trust, includes a "Loan Group in such RMBS Trust." Art.I.A.262 of the Plan.  Both Schedules 2G and 2R list RMBS R+W Claims on a Loan Group basis.

[15]     There are 41 such RMBS Trusts included on Schedule 2G.  As noted above, however, such claims are shown on a Loan Group basis.

[16]     There are 351 such RMBS Trusts included on Schedule 2R.  As noted above, such claims are shown on a Loan Group basis.

[17]     The numbers shown in Column F of Schedules 2G (GMACM Claim) and 2R (RFC Claim) reflect a reduction of the numbers shown in Column E (Losses Due to Breach) so that the total of the claims in Column F for Schedules 2G and 2R for the Original Settling RMBS Trusts total $8.7 billion. That same "sizing" factor is used in the same way in the calculations shown in Schedules 3G and 3R for the Additional Settling RMBS Trusts.

Results of D&P's Calculations for RMBS R+W Claims for the Additional Settling
RMBS Trusts

22.     The results of D&P's calculations of the RMBS R+W Claims of the Additional

Settling RMBS Trusts are set out in Schedules 3G and 3R (filed as part of the Plan

Supplement).[18]

23.     Schedules 3G lists the Additional Settling RMBS Trusts that have RMBS R+W

Claims against GMACM[19] and Schedule 3R lists the Additional Settling Trusts that have RMBS

R+W Claims against RFC.[20]  Those claims total $976 million, before the adjustments made in

the case of Insured RMBS Trusts (discussed below).[21]

Results of D&P's Calculations for RMBS Servicing Damage Claims

24.     The methodology used by D&P to calculate the servicing damage claims of the

RMBS Trusts is set out in detail at paragraph 2 of the Methodology Explanation.  The servicing

damage claims of the RMBS Trusts[22] are divided into two groups. If the Servicing Agreement

for the RMBS Trust has been assumed and assigned by the **Effective Date**[23] pursuant to a Final

Order, the servicing damage claim will be listed on either Schedule 1G (where GMACM was the

servicer) or 1R (where RFC was the servicer).  If the Servicing Agreement was not so assumed

and assigned, the servicing damage claim will be listed on either Schedule 4G (where GMACM

---

[18]     There are 311 Additional Settling RMBS Trusts.  Both Schedules 3G and 3R list R+W Claims on a Loan
Group basis.  See footnote 14.

[19]     There are 115 Additional Settling RMBS Trusts that have RMBS R+W Claims only against GMACM and
25 that have RMBS R+W Claims against both GMACM and RFC.  As noted above, such claims are shown on a
Loan Group basis.

[20]     There are 171 Additional Settling Trusts that have RMBS R+W claims only against RFC, and, as noted
above, 25 that have RMBS R+W claims against both GMACM and RFC.  As noted above, such claims are shown
on a Loan Group basis.

[21]     See fn. 17.

[22]     There are 394 RMBS Trusts that do not have RMBS R+W claims but do have servicing damage claims.

[23]     Defined at Art.I.A.86 of the Plan.

was the servicer) or Schedule 4R (where RFC was the servicer).[24]  Because the Effective Date of the Plan has not yet occurred, Schedules 1G, 1R, 4G and 4R filed with the Plan Supplement will have to be updated and finalized after the Effective Date.[25]

*Impact of Monoline Insurance on RMBS Trust Claims*

25.     Under the Original RMBS Settlement Agreements, it was contemplated that all or some of the distributions made to an **Insured RMBS Trust**[26] under a plan in these Chapter 11 cases would be paid to the **Monoline**[27] under the transaction documents applicable to the RMBS Trust, and accordingly, the Original RMBS Settlement Agreements provided that:

> To the extent any credit enhancer or financial guarantee insurer receives a distribution on account of the Allowed Claim, such distribution shall be credited at least dollar for dollar against the amount of any claim it files against the Debtor that does not arise under the Governing Agreements.[28]

26.     The integrated settlements contained in the Plan Support Agreement, and later the Plan, provide instead that Monolines would receive a direct distribution on their claims.  In order to avoid a double recovery to any Monoline, the Plan therefore provides that "no distributions [to an Insured RMBS Trust] will be paid over to any Monoline."[29]  The Plan also includes provisions to eliminate or reduce distributions under the Plan to an Insured RMBS Trust where a

---

[24]     All such claims are shown on a Loan Group basis.

[25]     For example, the Debtors filed a stipulation relating to the potential assumption and assignment of certain Servicing Agreements just two days before the deadline for the filing of the Plan Supplement [ECF No. 5321].  If any of the Servicing Agreements referenced therein are assumed and assigned by the Effective Date pursuant to a Final Order, the servicing damage claims of the affected RMBS Trusts will need to be moved from Schedule 4G or 4R, as applicable, to Schedule 1G or 1R, as applicable.

[26]     The Plan defines an Insured RMBS Trust as one that "has an insurance policy with a Monoline. Art.I.A.134.  Of the RMBS Trusts that have RMBS R+W claims, 111 are "fully wrapped" by the Monoline, 48 are "partially wrapped" and 574 are not an Insured RMBS Trust.

[27]     Defined at Art.I.A.174 of the Plan.

[28]     *See, e.g.*, ¶ 5 at ECF No. 320-2.

[29]     Art.IV.C.3(e).

10

Monoline is paying the claims of such trust in full or in part,[30] as applicable, unless an exception is applicable.[31]

*The "Recognized" Claims of RMBS Trusts*

27.     After taking into account all of the foregoing matters, the claim of an RMBS Trust that will be entitled to a distribution under the Plan is referred to as that trust's "recognized" claim.  A trust may have one or more[32] of the following "recognized" claims: (i) a GMAC Recognized Cure Claim (if GMACM was responsible for servicing and if that servicing agreement was assumed and assigned),[33] (ii) an RFC Recognized Cure Claim (if RFC was responsible for servicing and if that servicing agreement was assumed and assigned),[34] (iii) Recognized Original R+W Claim (if it is an Original Settling RMBS Trust),[35] (iv) a Recognized Additional R+W Claim (if it is an Additional Settling RMBS Trust),[36] (v) a GMACM Recognized Unsecured Servicing Claim (if GMACM was responsible for servicing and if that servicing agreement was not assumed and assigned), or (vi) an RFC Recognized Unsecured Servicing Claims (if RFC was responsible for servicing and if that servicing agreement was not assumed and assigned).[37]

28.     The total number of RMBS Trusts that have a claim on at least one of the RMBS Trust Claim Schedules is 1,129.  Of these, for the reasons described above, 35 do not have a

---

[30]     D&P will recalculate the value of such partial payments as of the Effective Date, which will affect the amounts shown on the Schedules.

[31]     Art.IV.C.3(a)(iv).

[32]     After the proofs of claim were filed by the RMBS Trustees, additional due diligence was completed, and it was determined that certain of the RMBS Trusts that were included on the proofs of claims did not have claims against any of the Debtors, and accordingly, such trusts are not included in the RMBS Trust Claims Schedules.

[33]     Art.IV.C.3(a)(i).

[34]     *Id.*

[35]     Art.IV.C.3(a)(i).

[36]     Art.IV.C.3(a)(ii).

[37]     Art.IV.3.C(a)(iii).

Recognized Claim, leaving a total of 1,094 RMBS Trust that will be entitled to a distribution of

Units under the Plan.

*Distribution of Units for the Benefit of the RMBS Trusts*

> 29.    The Plan provides that:

> Entry of the Confirmation Order shall constitute approval of the Allowed amount
> of the RMBS Trust Claims as non-subordinated Unsecured Claims, subject only
> to the Allowed Fee Claim, in the aggregate amounts of (i) $209.8 million against
> the GMACM Debtors; (ii) $7,091.2 million against the RFC Debtors; and (iii) $0
> against the ResCap Debtors.

Art.IV.C.2(a) of the Plan.   The aforesaid "Allowed amounts" were used by the Consenting

Claimants during the Mediation[38] that resulted in the agreed distributions to the RMBS Trusts –

*in the aggregate* – under the Plan Support Agreement (and now the Plan).   However, there were

certain significant differences between the "Allowed amounts" and the claims of the RMBS

Trusts as determined by D&P, particularly with respect to (i) the aggregate amount of the RMBS

R+W claims of the Additional Settling RMBS Trusts and (ii) the aggregate amount of the

Recognized Cure Claims.   In addition, there were disputes between the Debtors and the RMBS

Trustees regarding which Debtor was responsible for certain of those claims.   Finally, as of the

time the Plan Support Agreement was negotiated, there was substantial remaining due diligence

needed to confirm that certain of these claims were properly asserted under the provisions of the

governing documents of certain of the RMBS Trusts, and if they were, to determine the

responsible Debtor under the governing documents.

> 30.    Accordingly, the RMBS Trustees required that the Plan include provisions that

would allow them, after completing due diligence, to use their completed due diligence and

---

[38]    "Mediation" refers to the mediation process supervised by U.S. Bankruptcy Judge Peck that resulted in the
Plan Support Agreement (and now the Plan).  *See* Order Appointing Mediator, ECF No. 2519.

D&P's final calculations of the RMBS Claims to re-allocate the Units that will be distributed based on the "aggregate amounts of (i) $209.8 million against the GMACM Debtors; (ii) $7,091.2 million against the RFC Debtors."[39] The re-allocation of Units from the RFC Pool to the GMACM Pool avoids significant distortions in distributions to the RMBS Claims, as finally calculated, that would otherwise occur if distributions were made based on the above-referenced "aggregate" allowed amounts contained in the Plan. The re-allocation calculations were last made by D&P in advance of the filing of the revised Plan on August 23, 2013 [ECF No. 4819-1].[40] Those same re-allocation calculations will need to be made again following the Effective Date of the Plan, in order to take into account (i) the final waterfall calculations made by the Plan Proponents as of the Effective Date for the purpose of making distributions of Units to, among others, the RMBS Claims Trust, and (ii) the final updates to the RMBS Claims Schedules required to take into account any additional Servicing Agreements that are assumed and assigned by the Effective Date pursuant to a Final Order.

*Calculation of GMACM Weighted Claims and RFC Weighted Claims*

31.    At the time the Plan Support Agreement was agreed to, the RMBS Trustees contemplated that servicing damage claims of RMBS Trusts whose Servicing Agreements had been assumed would be paid first, in full, from cash distributed on the Units distributed under the Plan on account of the RMBS Claims.[41] Thereafter, it was learned that a priority distribution of cash proceeds would adversely affect the REMIC status of the applicable RMBS Trusts. To avoid such an adverse tax effect while at the same time honoring the priority nature of a servicing damage claim where the Servicing Agreement has been assumed and assigned,

---

[39]    Art.IV.C.2(a) of the Plan.

[40]    Art.IV.C.3(b) of the Plan.

[41]    *See, e.g.*, Annex III to the Plan Support Agreement [ECF No. 3814].

13

Art.IV.C.3(c) and (d) of the Plan implements the concept of an RMBS Trust's total "weighted claim." In order to calculate the GMACM Weighted Claim of an RMBS Trust, the GMACM Recognized Cure Claim is valued at 100%, and the GMACM Recognized Original R+W Claims, the GMACM Additional R+W Claims and the GMACM Recognized Unsecured Servicing Claims, if any, are valued at percentage distribution available from the GMACM Pool after the calculations made by D&P described in the Plan. After the Weighted Claims are calculated, distributions are made based on a RMBS Trust's *pro rata* share of all of the Weighted Claims in the GMAC Pool. The same process applies to calculate the RFC Weighted Claim of an RMBS Trust.

32.    The calculations of the applicable percentage distributions were last made by D&P in advance of the filing of the revised Plan on August 23, 2013 [ECF No. 4819-1].[42] Those same percentage distribution calculations will need to be made again following the Effective Date of the Plan, in order to take into account (i) the final waterfall calculations made by the Plan Proponents as of the Effective Date for the purpose of making distributions of Units to, among others, the RMBS Claims Trust, and (ii) the final updates to the RMBS Claims Schedules required to take into account any additional Servicing Agreements that are assumed and assigned by the Effective Date pursuant to a Final Order.

## V.    Conclusion

33.    The claims of the RMBS Trusts, and the distributions thereon, are properly and fairly allocated under the Plan to the RMBS Trusts.

---

[42]    Art.IV.C.3(c) and (d).

### VI.    Reservation of Rights and Compensation Disclosure

34.    Although my Declaration is based upon the current record, and I am in a position to render conclusions at this time based upon such information, I reserve the right to revise or expand my conclusions to reflect any additional conclusions that I may formulate based upon newly acquired information or arising from reflection and reconsideration of the conclusions based upon views expressed by expert witnesses, if any, and upon further study and information, including, among other things, subsequently introduced documentary and testimonial evidence.

35.    D&P charges rates of $130 – $835 per hour for my professional services and the services of supporting staff in this matter. D&P has no financial interest in the outcome of this matter.

36.    This Declaration is not to be reproduced, distributed, disclosed or used for any purposes other than the above-referenced proceedings without prior written approval.

I declare under penalty of perjury that the foregoing is true and correct.

Executed the 12th day of November, 2013 in New York, NY

_____

Allen M. Pfeiffer

**VII.    Attachment 1 – Resume and Testimony Experience**



*Mr. Allen M. Pfeiffer*
*Managing Director*
*Duff & Phelps, LLC*

# PROFESSIONAL CREDENTIALS

*Allen Pfeiffer is a Managing Director in the New York and New Jersey offices of Duff & Phelps and is the Global Service Leader of Dispute Consulting-Complex Valuation and Bankruptcy Litigation. Mr. Pfeiffer has more than eighteen years of valuation, solvency, cash flow assessment and capital structure analysis experience and has led hundreds of engagements related to the valuation of an entire business, a security, an interest in a business or an asset.*

*Professional*
*Experience*

- Mr. Pfeiffer has advised both foreign and domestic buyers, sellers, joint venture partners, hedge funds, private equity funds, plaintiffs and defendants in mergers and acquisitions/corporate finance situations with regard to business valuation, strategic planning, raising financing, spin-offs, transaction support, bankruptcy, litigation, tax, financial reporting, solvency, valuing derivatives, fairness opinions, IP holding companies, restructurings and capital structure analysis.
- The New York Supreme Court, the United States Bankruptcy Court, the American Arbitration Association and arbitrators operating under the rules of the International Chamber of Commerce have accepted Mr. Pfeiffer as a valuation and cash flow expert. In addition to his testifying experience, he has worked often as a lead consultant to attorneys in the context of retrospective solvency and many other valuation and corporate finance matters. Mr. Pfeiffer also led the team as the financial advisors to the Bankruptcy Examiner for Lehman Brothers (Anton Valukas).
- Mr. Pfeiffer was a Managing Director with Standard & Poor's Corporate Value Consulting at the time of its merger with Duff & Phelps in September 2005 and was a member of the CVC practice of PricewaterhouseCoopers LLP at the time of its sale to Standard & Poor's. Prior to joining Coopers & Lybrand in 1995, and prior to receiving his MBA finance at Columbia Business School, Mr. Pfeiffer worked for an affiliate of Alex Brown and worked as an actuarial analyst at Kwasha Lipton, a benefit consulting firm. Mr. Pfeiffer successfully completed four professional exams within his tenure as an actuary: multivariable calculus, probability theory, mathematical statistics and numerical equations.

**Selected Experience – Bankruptcy Litigation:**

- Financial advisor to RMBS Trustees in ResCap bankruptcy.
- Retained by Trustees in multi-billion dollar repurchase/put back claim in a major bankruptcy matter.
- Lead consultant to bank trustee related to multi-billion repurchase/ put-back claim associated with a bank merger.
- Lead financial advisor to the Bankruptcy Examiner for Lehman Brothers (Anton Valukas). Advised the attorneys relating to broad-reaching issues such as: valuation, solvency analysis, avoidance actions, dealings with secured lenders and the Barclays transaction. This led to a 2,200 page report released by the Examiner;
- Leading analysis of solvency for a fraudulent conveyance lawsuit filed against a leading company related to a former multi-billion dollar real estate subsidiary company claiming damages in excess of $1 billion.
- Project lead in assisting the Administrator of a UK entity with an independent third-party evaluation of historical valuation methodologies for a portfolio of 5,000+ assets as well as independent historical valuations on highly illiquid assets. The work resulted in the full recovery and fair distribution to represented creditors in one of the largest bankruptcy filings in US history
- Testified as an expert witness in Philadelphia Bankruptcy Court (Oct. 2003) on behalf of secured lenders regarding the solvency of a manufacturer of technology;

*Professional
Experience
(continued)*

### Selected Experience – Bankruptcy Litigation – (continued):

- Testified in deposition as an expert witness in defense of an investment bank related to alleged damages in association with advice regarding the timing of a restructuring/bankruptcy of a mobile home manufacturer;

- Testified in deposition as an expert witness on the reasonableness of a business case and budget for a large retailer in a bankruptcy/contract dispute;

- Testified in arbitration on behalf of a tractor company in a dispute regarding the value of recovered assets in bankruptcy;

- Testified in deposition as an expert witness on behalf of a large cable company (MSO) against its joint venture partner with regard to cable systems in Puerto Rico;

- Led analysis of solvency at various transaction dates for a multi-billion dollar commercial real estate finance company in bankruptcy;

- Advised the U.S. government related to the viability of a proposed reorganization plan;

- Led analysis of solvency for a fraudulent conveyance lawsuit filed against a leading global company by a former subsidiary claiming damages in excess of $2 billion;

- Advised counsel for a multi-national bank in defense of their investment banking work performed for a multi-billion dollar planned joint venture;

- Advised counsel and several hedge funds on the valuation of the derivative features attached to convertible bonds for purposes of arriving at OID (original issues discount) in bankruptcy litigation;

- Led analysis with respect to solvency and valuation issues related to the merger and refinancing of a corporate finance advisory firm;

- Advised on the valuation of a hedge fund relative to the reasonableness of a major transaction prior to the filing for bankruptcy;

- Advised counsel with respect to solvency in large anticipated litigation against group of pre-petition lenders to an international financial services company that spiraled into bankruptcy after fraud was detected;

- Led the retrospective solvency analysis of a supermarket business at various dates for a private equity fund and assisted counsel and insurance companies in effectuating a successful mediation;

- Led the analysis of a preference case filed against a private equity firm and related to the bankruptcy filing of a large financial services company; analyzed convertible preferred stock, produced expert report and rebuttal report and assisted attorneys in deposition preparation;

- Led analysis of solvency for a large fraudulent conveyance lawsuit filed against an international consumer products company; produced expert report and rebuttal report, assisted attorneys in preparation for depositions, drafting of certain motions, development of case strategy, preparation for and participation in trial and post-trial submissions;

- Led analysis of solvency for a preference lawsuit related to a multi-billion dollar pharmaceutical distribution company; produced expert report and rebuttal report, assisted attorneys in preparation for depositions, drafting of certain motions, development of case strategy and preparation for trial;

- Advised on a retrospective solvency analysis for a large retailer in a preference action.

| | |
|---|---|
| *Professional Experience (continued)* | **Selected Experience – Complex Litigation:** |

- Retained to provide the analysis of damages sustained by a new private equity advisory firm that was spun out of one of the largest banks. The analysis focused on the compensation lost by the private equity firm due to the poor decision making by the larger bank post the spin-off transaction.
- Testified in trial with respect to the value of the founder's ownership interest in a technology company in conjunction with a matrimonial action;
- Testified as an expert witness in arbitration, International Chamber of Commerce (Sept. 2002) regarding the valuation of a minority interest in a European Internet service provider; also quantified damages;
- Testified as an expert witness in New York Supreme Court (Nov. 2002) regarding the value of the unregistered shares of a public Internet company; both sides in case unanimously accepted the testimony;
- Testified as an expert witness in arbitration (AAA) related to fair and reasonable terms and fair market value associated with a long-term agreement between a cable company and a content provider (Feb. 2004);
- Testified as an expert witness in deposition and at a hearing.  Produced an expert report on diminution of enterprise value, damages and lost profits to a cruise business due to the outbreak of disease caused by a vendor;
- Testified as a fact witness in deposition and advised counsel on behalf of private equity firm and a multi-billion dollar chemical company relating to an acquisition. Assessed the pro forma financial outlook and solvency of the combined entity;
- Testified in arbitration for a hedge fund related to the capital adequacy of the fund, reasonableness of projections and economic uncertainty in 2008;
- Advised a law firm in defense of a damages claim of lost income by a private equity firm from an alleged reduction of capital commitments from investors;
- Advised counsel related to the valuation of a multi-billion dollar leasing company;
- Advised counsel related to damages associated with a failed telecommunications joint venture;
- Advised counsel related to the value of the common equity of a technology company for a Delaware shareholder action;
- Advised counsel on the appropriate financing terms for a telecommunications transaction in preparation for a potential litigation;
- Led the analysis of damages sustained by a leading communications company in connection with a malpractice claim related to a multi-billion dollar transaction;
- Led the assessment of damages for an early-stage cable television company;
- Advised counsel on the relative value of two contracts and related clauses in the cable and entertainment industry;
- Advised counsel on the appropriate care, transaction price and valuation methodologies in defense of a lead advisor investment bank in the technology and consumer product industry; produced expert report and rebuttal report and assisted attorneys in depositions;
- Advised majority shareholder group related to disputed terms of the purchase of controlling voting shares in a large Canadian company with dual-class ownership structure;
- Advised governmental agency relating to insider trading probe;
- Advised counsel relative to damages associated with a hedge fund (fund of funds);

*Professional*
*Experience*
*(continued)*

**Selected Experience – Complex Litigation – (continued):**

- Advised counsel in preparation of a preliminary injunction hearing regarding the financial position of a regional airline company post-termination of a contract with a national airline;
- Advised counsel with respect to theories related to damages on a high profile insurance matter;
- Led the analysis of value provided by executives in managing large company-invested hedge funds;
- Led the analysis of a multitude of derivative transactions for a litigation;
- Advised counsel with respect to solvency and litigation issues in a large planned spin-off of a subsidiary;
- Led the analysis of the value of divisions of a large consumer products company in defense of an IRS probe related to a tax-free spin-off;
- Led the analysis of a merger between two market-leading companies and provided a retrospective fairness opinion; conversion ratio.
- Led the analysis of whether a material adverse change clause applied to the circumstances associated with the decline in 2000 venture capital funding levels;
- Advised a utilities company on the issuance of new securities – debt vs. equity considerations for cost of capital purposes in arbitration;
- Led analysis of a shareholder oppression lawsuit filed in New Jersey regarding the valuation of a privately held trucking company;
- Assisted attorneys in the valuation of a manufacturing company in a purchase price dispute;
- Advised plaintiff on the value of complex options and warrants for purposes of assessing damages in litigation.

**Selected Experience – Corporate Finance:**

*Transaction Advisory:*
- Advised an international private equity fund on the value of a major real estate subsidiary to be spun-off and the value of options held.
- Advised by large telecommunications company to value certain tangible and intangible assets related to an acquisition of a controlling stake in a company;
- Advising the board of a publicly traded company regarding company and broad economic trends in the mobile telecommunications industry;
- Advised an investment firm with respect to the price paid for an ownership interest in a telecommunications company, associated warrants and other deal terms;
- Advised the board of an international bank regarding the fairness of a bank merger;
- Advised on many buy-side valuation issues as part of due diligence efforts for a major telecommunications company;
- Advised the board of a public company related to the fairness of a reverse merger transaction;
- Advised government ministers in their consideration of the privatization of a telecommunications company, a bank and an airline;
- Advised and presented to the board of directors and senior management of a leading technology company on the value of its total intellectual property portfolio for the application of the Delaware Law capital surplus test;
- Advised special committee of the board and largest minority shareholder with respect to the value of intellectual property of a technology company that received a buyout offer determined to be inadequate by the special committee;

*Professional
Experience*
*(continued)*

**Selected Experience – Corporate Finance – (continued):**

- Advised a technology company in its negotiations with several international top-tier companies and several venture capital firms;
- Advised a technology company on valuation of the various levels of preferred stock prior to its successful initial public offering;
- Advised a technology company on the benefits of spin-off vs. divestiture;
- Advised on terms of transaction and negotiated on behalf of a technology company;
- Advised on valuation of subsidiary of a technology company for issuance of executive warrants;
- Advised on transactions and valuation matters related to more than ten major Israeli companies;
- Advised shareholder and founder on the value of his company for purposes of put option rights;
- Advised a large private equity fund with respect to the value of their illiquid investments for a corporate reorganization;
- Advised a large equity hedge fund with respect to the value of a partnership interest;
- Advised hedge fund executives on the discount associated with shares contributed to a GRAT;
- Advised the board of directors of a leading international company with respect to potential responses to a potential hostile takeover bid;
- Advised a private equity firm on the value of the intellectual property of a large electronics equipment manufacturer for purposes of refinancing;
- Advised a large hedge fund with respect to due diligence and the value of loan collateral;

*Transaction Advisory:*

- Advised on the issuance of a solvency opinion for "RemainCo" relative to two of the largest spin-offs in history;
- Assisted in the issuance of transaction opinions for several large transactions;
- Advised an international entertainment conglomerate with respect to pre-deal due diligence and valuation analysis;
- Provided independent valuation assessment of investments to board of directors of a major investment fund;
- Sell-side advisory work for a major international IT services company;
- Advised in the successful resolution of a joint venture in a buy/sell option discrepancy;
- For several companies, advised on the value of common shares for issuance of new warrants to management;
- Advised on the restructuring of five distinct businesses owned in a holding company;
- Advised on numerous fairness opinions as a member of review committees in Duff & Phelps and Standard & Poor's Corporate Value Consulting.

*Strategic Planning:*

- Advised a telecommunications company relative to financial planning and funding for the launching of a CLEC business;
- Advised a private equity fund focused on technology and telecommunications with respect to the components of several transactions and assessing the value of its common stock;
- Advised on new e-commerce business opportunities and capital investments within large multi-national corporations;
- Advised a subsidiary of an international entertainment conglomerate with respect to the value of its contingent liabilities;
- Developed business case, strategy and valuations for many late stage start-ups;

*Mr. Allen M. Pfeiffer*
*Managing Director*
**Page 6**

*Professional*
*Experience*
*(continued)*

Selected **Experience – Corporate Finance – (continued):**

- Corporate Finance liaison with the PwC Israel office;
- Valuation and advisory work associated with a dramatic operational turnaround of a multi-billion dollar company on behalf of an LBO fund over three years;
- Utilized real option valuation metrics to solve complex and uncertain value propositions;
- Advised on the strategic modeling and valuation regarding the combination of major professional sports teams in a joint venture.

**Selected Experience – Valuation for Tax Restructuring and Reporting:**

- Valued dozens of subsidiaries worldwide in connection with the spin-off of major technology businesses for determining tax gain/loss;
- Led numerous tax restructuring engagements for a multi-billion dollar telecommunications company;
- Analyzing broker quote information in determining whether loans, after modifications, are considered publicly traded under the tax rules;
- Advised the owners of a sports team related to the allocation of purchase price to the sports arena for tax purposes;
- Valuation of the subsidiaries and assets of a chemical company as part of the consideration of the tax structure of a large contemplated transaction;
- Valuation of worldwide subsidiaries of a biotech company for the planning of intellectual property holding company restructuring;
- Determined the value of restricted stock discount and/or lack of marketability discount for dozens of companies;
- Valued several businesses for estate tax purposes.

**Selected Experience – Valuation for Financial Reporting:**

- Valuation of the common equity and an embedded derivative for a privately held, telecommunications software company;
- Valued the Series C Preferred Stock of an independent marketer of natural gas and electricity;
- Led dozens of engagements related to purchase price allocations and intangible asset impairments - SFAS 141/SFAS 142, SFAS 121, SFAS 133 and APB 16;
- Participated on PwC task force committee to communicate with the SEC on the valuation of In-Process Research and Development;
- Drafted numerous SEC response letters for several major companies on valuation issues, in all cases avoiding financial restatements;
- Numerous engagements related to valuation of options in connection with SFAS 123 and as components of purchase price;
- Assessed discounts for blockage, minority holdings, lack of marketability and restricted stock.

*Professional*
*Experience*
*(continued)*

**Presentations and Articles:**

- Strategic Advisory Board member ABI VALCON 2012-2014
- Panelist ABI VALCON February 2012 "Amend and Pretend:  The Role of Accounting Rules, Bank Regulatory concerns and Market Values".
- Visiting Lecturer at Sy Syms Executive MBA program "Fundamentals of Valuation and Common Pitfalls"
- Lectured at several conferences in 2011 "Lessons Learned from Lehman Brothers Failure"
- Visiting Lecturer at Yeshiva University - "Security Analysis and Valuation", March 2009;
- Presented as part of a 2008 TMA panel in a conference entitles "Valuation: A Minefield for the Expert and Counsel"
- Authored 2006 Financier Worldwide article titled "Inadequate capital: examining the tests for fraudulent conveyance"
- Led development and presented many Continuing Learning Education courses for attorneys regarding legal and financial analysis issues related to fairness opinions, valuation, expert witnesses and fraudulent conveyance;
- Led PwC's and S&P's internal training programs in corporate finance and valuation each year from 1997 through 2002;
- For S&P in 2004-2005, designed curriculum for national training and analysis of complex client issues along with New York University professor Dr. Aswath Damodaran;
- Presented various topics at industry, accounting and valuation seminars and conferences; participant in ALI-ABA conferences, ABI conferences and other industry conferences;

**Trial and Arbitration Testimony:**

- ***In re: Residential Capital, LLC, et al., Debtors***
  United States Bankruptcy Court, Southern District of New York
  Case No. 12-12020 (MG)
  August 2013

  - Expert testimony on behalf of the Trustees relating to the reasonableness of a settlement to resolved claims by several Trusts against a Monoline insurer.

- ***Aris Multi-Strategy Fund, L.P. v. Quantek Opportunity Fund, L.P., et al***
  American Arbitration Association, New York
  Case No. 13 181 02839 03
  April 2011

  - Testified in arbitration for a hedge fund related to the capital adequacy of the fund, reasonableness of projections and economic uncertainty in 2008.

- ***Lee v. Chou***
  Supreme Court of the State of New York, County of New York
  Index No. 350601/03
  October 2006

  - Testimony in a matrimonial action on behalf of the Defendant with respect to the value of Plaintiff's ownership interest in a business that he founded.

- ***Suraleb, Inc. v. Production Association "Minsk Tractor Works", Republic of Belarus.***
  Arbitration Institute of the Stockholm Chamber of Commerce
  December 2005

  - Testimony in arbitration on behalf of the Respondent, Minsk Tractor Works, as an expert witness related to the value of recovered assets in bankruptcy.

| | |
|---|---|
| *Professional Experience (continued)* | **Trial and Arbitration Testimony – (continued):** |

- ***CSC Holdings, Inc. v. Yankees Entertainment and Sports Network, LLC***
  American Arbitration Association, New York
  Case No. 13 181 02839 03
  February 2004

  - Testimony on behalf of the Claimant as an expert witness related to fair and reasonable terms and fair market value associated with a long-term agreement between Cablevision and YES Network.

- ***Official Committee of Unsecured Creditors (Exide Technologies), v. Credit Suisse First Boston***
  United States Bankruptcy Court, District of Delaware
  Case No. 02-11125
  October 2003

  - Testimony on behalf of the Defendant on the solvency of Exide Technologies in a fraudulent conveyance lawsuit.

- ***Commonwealth Associates, LP v. Smartserv Online, Inc.***
  Supreme Court of the State of New York, Southern District
  Index No. 600869/00
  November 2002

  - Testimony on behalf of the Plaintiff of restricted shares in a publicly traded Internet company.

- ***Banestyrelsen et al. v. France Telecom***
  International Chamber of Commerce
  Case No. 11351
  September 2002

  - Testimony on behalf of the Plaintiff of a minority equity investment in an international Internet service provider.

**Deposition Testimony:**

- ***In re: Residential Capital, LLC, et al., Debtors***
  United States Bankruptcy Court, Southern District of New York
  Case No. 12-12020 (MG)
  August 2013

  - Expert testimony on behalf of the Trustees relating to the reasonableness of a settlement to resolved claims by several Trusts against a Monoline insurer.

- ***NAF Holding, LLC v. Li & Fung (Trading) Ltd.***
  United States District Court, Southern District of New York
  Civil Action No. 10 Civ. 05762
  April 2012

  - Deposition testimony on behalf of the Plaintiff in a commercial dispute relating to lost profits pertaining to an unconsummated disputed transaction.

- ***Hexion Specialty Chemicals, Inc.; et. al. v. Huntsman Corp.***
  The Court of Chancery of the State of Delaware
  Civil Action No. 3841
  August 2008

  - Deposition testimony as a fact witness on behalf of the plaintiff assessing the pro forma financial outlook and solvency of the combined entity.

*Mr. Allen M. Pfeiffer*
*Managing Director*
**Page 9**

**Professional**
**Experience**
*(continued)*

**Deposition Testimony – (continued):**

- ***OHC Liquidation Trust v. Credit Suisse First Boston, et al.***
  United States District Court for the District of Delaware
  Case No. 07-799
  March 2008

  - Deposition testimony on behalf of the Defense as an expert witness related to alleged damages in association with advice regarding the timing of a restructuring/bankruptcy of a mobile home manufacturer.

- ***In re:  Adelphia Communications Corp., et al.***
  United States Bankruptcy Court, Southern District of New York
  Case No. 02-41729
  March 2006

  - Deposition testimony on behalf of the Debtors as an expert witness related to the value of a cable company in conjunction with the failed buyout of a joint venture partner.

- ***Celebrity Cruises, Inc., et al. v. Essef Corp., et al.***
  United States District Court, Southern District of New York
  Case No. 96-Civ-3135
  July 2005

  - Deposition and hearing testimony on behalf of the Plaintiff as an expert witness on diminution of enterprise value, damages and lost profits related to disease outbreak in the cruise industry.

- ***In re: Footstar, Inc., et al.***
  United States Bankruptcy Court, Southern District of New York
  Case No. 04-22350
  June 2005

  - Deposition testimony on behalf of Kmart Corporation, Respondent, as an expert witness related to reasonableness of income projections, in dispute against Footstar, Inc., et al. as Debtors.

**Education**

M.B.A. - Finance, *with distinct honors*, Columbia Business School

B.A. - Economics and Mathematics, *cum laude*, Yeshiva University

**VIII.    Attachment 2 – Documents Reviewed and / or Considered**

**Documents Reviewed and / or Considered**

| Number | Date | Document |
|--------|------|----------|
| 1 | 6/11/2012 | Notice of Hearing and Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Settlement Agreements; to be Held on July 10, 2012 at 10:00 a.m. (ET) |
| 2 | 6/12/2012 | Notice of Filing of Corrected Exhibit 6 to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements |
| 3 | 6/12/2012 | Notice of Filing of Corrected Exhibit 5 to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements |
| 4 | 8/15/2012 | Notice of Hearing and Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements |
| 5 | 10/19/2012 | Notice of Hearing and Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements; to be Held on January 14, 2013 at 9:00 A.M. (Prevailing Eastern Time) |
| 6 | 2/1/2013 | Reply Declaration of Frank Sillman in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements |
| 7 | 2/4/2013 | RMBS Trustees' Statement Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval or RMBS Trust Settlement Agreements |
| 8 | 2/19/2013 | Supplemental Declaration of Frank Sillman in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements |
| 9 | 2/22/2013 | The Steering Committee Investors' Reply to the Objections of Assured Guaranty and the Junior Secured Noteholders to the RMBS Trust Settlement Agreement |
| 10 | 5/23/2013 | Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363 (b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants; Hearing to be Held on June 26, 2013 at 10:00 a.m. (ET) |
| 11 | 6/7/2013 | Notice of Hearing and Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, The FGIC Trustees and Certain Institutional Lenders; Hearing to be Held on June 26, 2013 at 10:00 a.m. (ET) |
| 12 | 6/24/2013 | Omnibus Reply of Certain RMBS Trustees to Responses to the Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants |
| 13 | 6/25/2013 | Statement of the Steering Committee Group of RMBS Holders in Support of the Omnibus Reply of Certain RMBS Trustees to Responses to the Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants |
| 14 | 6/26/2013 | Notice of Withdrawal of RMBS Trust from Plan Support Agreement |
| 15 | 6/26/2013 | Order Granting Debtors' Motion Authorizing the Debtors to Enter Into a Plan Support Agreement with Ally Financial Inc., The Creditors' Committee, and Certain Consenting Claimants |
| 16 | 6/27/2013 | Memorandum Opinion Approving the Plan Support Agreement |
| 17 | 7/3/2013 | Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors |
| 18 | 7/4/2013 | [Proposed] Disclosure Statement for the Joint Chapter 11 Plan of Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors |

## Documents Reviewed and / or Considered

| Number | Date | Document |
|--------|------|----------|
| 19 | 8/23/2013 | Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of Plan, and (VI) Granting Related Relief |
| 20 | 8/23/2013 | Notice of Filing of Corrected Solicitation Version of the Disclosure Statement and Joint Chapter 11 Plan |
| 21 | 9/16/2013 | Notice of Presentment of Stipulation and Order Resolving Certain RMBS Servicing |
| 22 | 9/13/2013 | Memorandum Opinion and Order, and Findings of Fact and Conclusions of Law, Approving the FGIC Settlement Motion |
| 23 | 9/16/2013 | Stipulation and Order Resolving Certain RMBS Servicing Claims |
| 24 | 9/20/2013 | Order Granting Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, The Trustees and the Institutional Investors |
| 25 | 10/11/2013 | Notice of Filing of Exhibits 2 through 21 Comprising the Plan Supplement to the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors |
| 26 | NA | 7,552 Loan Files Received from ResCap |
| 27 | NA | GMAC ResCap Vision Website |
| 28 | NA | Intex Solutions |
| 29 | NA | Bloomberg Terminal |
| 30 | NA | Prospectuses for RMBS trusts |
| 31 | NA | Servicer Reports for RMBS trusts |
| 32 | NA | Trustee Websites |
| 33 | NA | Barclays Bank PLC, "Mortgage Credit Tracker - July" 7/5/2012. |
| 34 | NA | Barclays Bank PLC, "Mortgage Credit Tracker - April" 4/4/2012. |
| 35 | NA | Fitch Ratings Ltd, "Fitch RMBS Performance Metrics" June 2012. |
| 36 | NA | Fitch Ratings Ltd, "U.S. RMBS Loan Loss Model Criteria" 8/10/2012. |
| 37 | NA | The TCW Group Inc., "Mortgage Market Monitor" 7/10/2012. |
| 38 | NA | Standard & Poor's Rating Services, "Methodology And Assumptions: U.S. RMBS Surveillance Credit And Cash Flow Analysis for Pre-2009 Originations" 8/9/2012. |
| 39 | NA | Moody's Investor Service, "2005-2008 US RMBS Surveillance Methodology" 7/15/2011. |
| 40 | NA | Fabozzi, Frank J. "The Handbook of Mortgage Backed Securities", Sixth Edition. 2006. |
| 41 | NA | 30.11.1 Small file, change of address |
| 42 | NA | 30.11.2 Update to down payment funding qualification |
| 43 | NA | 30.11.3 Expanded Criteria No Income/No Asset Program |
| 44 | NA | 30.11.4 Changes to the 125 Loan Program |
| 45 | NA | 30.11.5 Improved Marketing for Seasoned Loans |
| 46 | NA | 30.11.6 Guidelines |
| 47 | NA | 30.11.7 Easy Fi Adjustment |
| 48 | NA | 30.11.8 Enhancements to 1998 Guidelines |
| 49 | NA | 30.11.9 Guidelines |
| 50 | NA | 30.11.10 Changed to the 1998 Client Guide |
| 51 | NA | 30.11.11 Updated AlterNet Designated Service Directory |

### Documents Reviewed and / or Considered

| Number | Date | Document |
|--------|------|----------|
| 52 | NA | 30.11.12 Guidelines |
| 53 | NA | 30.11.13 Enhancements to 1999 Guidelines |
| 54 | NA | 30.11.14 Guidelines |
| 55 | NA | 30.11.15 Amendment to the client guide |
| 56 | NA | 30.11.16 Correction to Guideline |
| 57 | NA | 30.11.17 Correction to Guideline |
| 58 | NA | 30.11.18 Client Guideline |
| 59 | NA | 30.11.19 Revised Bulletin |
| 60 | NA | 30.11.20 Changes/Clarification to Loan programs |
| 61 | NA | 30.11.21 Home Equity Program Enhancement |
| 62 | NA | 30.11.22 Client Guideline |
| 63 | NA | 30.11.23 Client Guide Bulletin |
| 64 | NA | 30.11.24 Amendment to the client guide |
| 65 | NA | 30.11.25 Enhancements/Changes to Client Guide |
| 66 | NA | 30.11.26 Client Guideline |
| 67 | NA | 30.11.27 Enhancements/Changes to Client Guide |
| 68 | NA | 30.11.28 Client Guideline |
| 69 | NA | 30.11.29 Client Guideline |
| 70 | NA | 30.11.30 Amendment to the client guide |
| 71 | NA | 30.11.31 Client Guideline |
| 72 | NA | 30.11.32 Client Guideline |
| 73 | NA | 30.11.33 Amendment to the client guide |
| 74 | NA | 30.11.34 Client Guideline |
| 75 | NA | 30.11.35 Amendment to the client guide |
| 76 | NA | 30.11.36 Amendment to the client guide |
| 77 | NA | 30.11.37 Amendment to the client guide |
| 78 | NA | 30.11.38 Amendment to the client guide |
| 79 | NA | 30.11.39 Amendment to the client guide |
| 80 | NA | 30.11.40 Client Guideline |
| 81 | NA | 30.11.41 Amendment to the client guide |
| 82 | NA | 30.11.42 Client Guideline |
| 83 | NA | 30.11.43 Amendment to the client guide |
| 84 | NA | 30.11.44 Client Guideline |
| 85 | NA | 30.11.45 Client Guideline |
| 86 | NA | 30.11.46 Amendment to the client guide |
| 87 | NA | 30.11.47 Client Guideline |
| 88 | NA | 30.11.48 Client Guideline |
| 89 | NA | 30.11.49 Client Guideline |
| 90 | NA | 30.11.50 Client Guideline |
| 91 | NA | 30.11.51 Amendment to the client guide |
| 92 | NA | 30.11.52 Client Guideline |
| 93 | NA | 30.11.53 Amendment to the client guide |
| 94 | NA | 30.11.54 Amendment to the client guide |
| 95 | NA | 30.11.55 Amendment to the client guide |

### Documents Reviewed and / or Considered

| Number | Date | Document |
|---|---|---|
| 96 | NA | 30.11.56 Client Guideline |
| 97 | NA | 30.11.57 Amendment to the client guide |
| 98 | NA | 30.11.58 Amendment to the client guide |
| 99 | NA | 30.11.59 Client Guideline |
| 100 | NA | 30.11.60 Amendment to the client guide |
| 101 | NA | 30.11.61 Amendment to the client guide |
| 102 | NA | 30.11.62 Client Guideline |
| 103 | NA | 30.11.63 Client Guideline |
| 104 | NA | 30.11.64 Client Guideline |
| 105 | NA | 30.11.65 Client Guideline |
| 106 | NA | 30.11.66 Client Guideline |
| 107 | NA | 30.11.67 Client Guideline |
| 108 | NA | 30.11.68 Client Guideline |
| 109 | NA | 30.11.69 Client Guideline |
| 110 | NA | 30.11.70 Client Guideline |
| 111 | NA | 30.11.71 Client Guideline |
| 112 | NA | 30.11.72 Amendment to the client guide |
| 113 | NA | 30.11.73 Client Guideline |
| 114 | NA | 30.11.74 Amendment to the client guide |
| 115 | NA | 30.11.75 Client Guideline |
| 116 | NA | 30.11.76 Client Guideline |
| 117 | NA | 30.11.77 Client Guideline |
| 118 | NA | 30.11.78 Client Guideline |
| 119 | NA | 30.11.79 Client Guideline |
| 120 | NA | 30.11.80 Client Guideline |
| 121 | NA | 30.11.81 Client Guideline |
| 122 | NA | 30.11.82 Client Guideline |
| 123 | NA | 30.11.83 Amendment to the client guide |
| 124 | NA | 30.11.84 Client Guideline |
| 125 | NA | 30.11.85 Client Guideline |
| 126 | NA | 30.11.86 Client Guideline |
| 127 | NA | 30.11.87 Client Guideline |
| 128 | NA | 30.11.88 Client Guideline |
| 129 | NA | 30.11.89 Client Guideline |
| 130 | NA | 30.11.90 Client Guideline |
| 131 | NA | 30.11.91 Client Guideline |
| 132 | NA | 30.11.92 Client Guideline |
| 133 | NA | 30.11.93 Client Guideline |
| 134 | NA | 30.11.94 Client Guideline |
| 135 | NA | 30.11.95 Client Guideline |
| 136 | NA | 30.11.96 Client Guideline |
| 137 | NA | 30.11.97 Client Guideline |
| 138 | NA | 30.11.98 Client Guideline |
| 139 | NA | 30.11.99 Client Guideline |

**Documents Reviewed and / or Considered**

| Number | Date | Document |
|--------|------|----------|
| 140 | NA | 30.11.100 Client Guideline |
| 141 | NA | RCa-9019_00003986.pdf |
| 142 | NA | RC-9019_00000001 (native).xls |
| 143 | NA | RC-9019_00000002 (native).xls |
| 144 | NA | RC-9019_00000003.pdf |
| 145 | NA | RC-9019_00000055.pdf |
| 146 | NA | RC-9019_00000146.pdf |
| 147 | NA | RC-9019_00000190.pdf |
| 148 | NA | RC-9019_00000312.pdf |
| 149 | NA | RC-9019_00000314.pdf |
| 150 | NA | RC-9019_00000316.pdf |
| 151 | NA | RC-9019_00000408.pdf |
| 152 | NA | RC-9019_00000412.pdf |
| 153 | NA | RC-9019_00000416.pdf |
| 154 | NA | RC-9019_00000666.pdf |
| 155 | NA | RC-9019_00000901.pdf |
| 156 | NA | RC-9019_00001139.pdf |
| 157 | NA | RC-9019_00001145.pdf |
| 158 | NA | RC-9019_00001151.pdf |
| 159 | NA | RC-9019_00001159.pdf |
| 160 | NA | RC-9019_00001167.pdf |
| 161 | NA | RC-9019_00001429.pdf |
| 162 | NA | RC-9019_00001654.pdf |
| 163 | NA | RC-9019_00001662.pdf |
| 164 | NA | RC-9019_00001670.pdf |
| 165 | NA | RC-9019_00001677.pdf |
| 166 | NA | RC-9019_00001965.pdf |
| 167 | NA | RC-9019_00002236.pdf |
| 168 | NA | RC-9019_00002244.pdf |
| 169 | NA | RC-9019_00002252.pdf |
| 170 | NA | RC-9019_00002260.pdf |
| 171 | NA | RC-9019_00002268.pdf |
| 172 | NA | RC-9019_00002556.pdf |
| 173 | NA | RC-9019_00002832.pdf |
| 174 | NA | RC-9019_00002838.pdf |
| 175 | NA | RC-9019_00002844.pdf |
| 176 | NA | RC-9019_00002850.pdf |
| 177 | NA | RC-9019_00002856.pdf |
| 178 | NA | RC-9019_00002861.pdf |
| 179 | NA | RC-9019_00002866.pdf |
| 180 | NA | RC-9019_00002875.pdf |
| 181 | NA | RC-9019_00002884.pdf |
| 182 | NA | RC-9019_00002888.pdf |
| 183 | NA | RC-9019_00002892.pdf |

**Documents Reviewed and / or Considered**

| Number | Date | Document |
|--------|------|----------|
| 184 | NA | RC-9019_00033288.pdf |
| 185 | NA | RC-9019_00033183.pdf |
| 186 | NA | RC-9019_00033219.pdf |
| 187 | NA | RC-9019_00033230.pdf |
| 188 | NA | RC-9019_00033234 (native).xlsx |
| 189 | NA | RC-9019_00033235 (native).xlsx |
| 190 | NA | RC-9019_00033236 (native).xlsx |
| 191 | NA | RC-9019_00033237.pdf |
| 192 | NA | RC-9019_00003191.pdf |
| 193 | NA | RC-9019_00003427.pdf |
| 194 | NA | RC-9019_00003683.pdf |
| 195 | NA | RC-9019_00003924.pdf |
| 196 | NA | RC-9019_00003933.pdf |
| 197 | NA | RC-9019_00003942.pdf |
| 198 | NA | RC-9019_00033304.pdf |
| 199 | NA | RC-9019_00033319.pdf |
| 200 | NA | RC-9019_00033345.pdf |
| 201 | NA | RC-9019_00033369.pdf |
| 202 | NA | RC-9019_00033855.pdf |
| 203 | NA | RC-9019_00033857.pdf |
| 204 | NA | RC-9019_00033904.pdf |
| 205 | NA | RC-9019_00034123.pdf |
| 206 | NA | RC-9019_00034310.pdf |
| 207 | NA | RC-9019_00034330.pdf |
| 208 | NA | RC-9019_00034345.pdf |
| 209 | NA | RC-9019_00034386.pdf |
| 210 | NA | RC-9019_00034425.pdf |
| 211 | NA | RC-9019_00034445.pdf |
| 212 | NA | RC-9019_00034478.pdf |
| 213 | NA | RC-9019_00034513.pdf |
| 214 | NA | RC-9019_00034543.pdf |
| 215 | NA | RC-9019_00034566.pdf |
| 216 | NA | RC-9019_00034575.pdf |
| 217 | NA | RC-9019_00034586.pdf |
| 218 | NA | RC-9019_00034710.pdf |
| 219 | NA | RC-9019_00034818.pdf |
| 220 | NA | RC-9019_00034827.pdf |
| 221 | NA | RC-9019_00034890.pdf |
| 222 | NA | RC-9019_00034942.pdf |
| 223 | NA | RC-9019_00034977.pdf |
| 224 | NA | RC-9019_00035009.pdf |
| 225 | NA | RC-9019_00035011.pdf |
| 226 | NA | RC-9019_00035014.pdf |
| 227 | NA | RC-9019_00035023.pdf |

## Documents Reviewed and / or Considered

| Number | Date | Document |
|--------|------|----------|
| 228 | NA | RC-9019_00035051.pdf |
| 229 | NA | RC-9019_00035054.pdf |
| 230 | NA | RC-9019_00035057.pdf |
| 231 | NA | RC-9019_00035173.pdf |
| 232 | NA | RC-9019_00035334.pdf |
| 233 | NA | RC-9019_00035512.pdf |
| 234 | NA | RC-9019_00035887.pdf |
| 235 | NA | RC-9019_00035929.pdf |
| 236 | NA | RC-9019_00035962.pdf |
| 237 | NA | RC-9019_00035972.pdf |
| 238 | NA | RC-9019_00036005.pdf |
| 239 | NA | RC-9019_00036054.pdf |
| 240 | NA | RC-9019_00036103.pdf |
| 241 | NA | RC-9019_00036281.pdf |
| 242 | NA | RC-9019_00036312.pdf |
| 243 | NA | RC-9019_00036363.pdf |
| 244 | NA | RC-9019_00036556.pdf |
| 245 | NA | RC-9019_00036710.pdf |
| 246 | NA | RC-9019_00036953.pdf |
| 247 | NA | RC-9019_00037006.pdf |
| 248 | NA | RC-9019_00037010.pdf |
| 249 | NA | RC-9019_00037019.pdf |
| 250 | NA | RC-9019_00037024.pdf |
| 251 | NA | RC-9019_00037037.pdf |
| 252 | NA | RC-9019_00037048.pdf |
| 253 | NA | RC-9019_00037087.pdf |
| 254 | NA | RC-9019_00037208.pdf |
| 255 | NA | RC-9019_00037243.pdf |
| 256 | NA | RC-9019_00037270.pdf |
| 257 | NA | RC-9019_00037300.pdf |
| 258 | NA | RC-9019_00037372.pdf |
| 259 | NA | RC-9019_00037374.pdf |
| 260 | NA | RC-9019_00037395.pdf |
| 261 | NA | RC-9019_00037410.pdf |
| 262 | NA | RC-9019_00037421.pdf |
| 263 | NA | RC-9019_00037474.pdf |
| 264 | NA | RC-9019_00037492.pdf |
| 265 | NA | RC-9019_00037498.pdf |
| 266 | NA | RC-9019_00037510.pdf |
| 267 | NA | RC-9019_00037520.pdf |
| 268 | NA | RC-9019_00037567.pdf |
| 269 | NA | RC-9019_00037614.pdf |
| 270 | NA | RC-9019_00037625.pdf |
| 271 | NA | RC-9019_00037627.pdf |

### Documents Reviewed and / or Considered

| Number | Date | Document |
|--------|------|----------|
| 272 | NA | RC-9019_00037632.pdf |
| 273 | NA | RC-9019_00037634.pdf |
| 274 | NA | RC-9019_00037661.pdf |
| 275 | NA | RC-9019_00037670.pdf |
| 276 | NA | RC-9019_00037694.pdf |
| 277 | NA | RC-9019_00037718.pdf |
| 278 | NA | RC-9019_00037721.pdf |
| 279 | NA | RC-9019_00037730.pdf |
| 280 | NA | RC-9019_00037735.pdf |
| 281 | NA | RC-9019_00037766.pdf |
| 282 | NA | RC-9019_00037770.pdf |
| 283 | NA | RC-9019_00037774.pdf |
| 284 | NA | RC-9019_00037852.pdf |
| 285 | NA | RC-9019_00038008.pdf |
| 286 | NA | RC-9019_00038119.pdf |
| 287 | NA | RC-9019_00038194.pdf |
| 288 | NA | RC-9019_00038244.pdf |
| 289 | NA | RC-9019_00038294.pdf |
| 290 | NA | RC-9019_00038297.pdf |
| 291 | NA | RC-9019_00038300.pdf |
| 292 | NA | RC-9019_00038310.pdf |
| 293 | NA | RC-9019_00038322.pdf |
| 294 | NA | RC-9019_00038335.pdf |
| 295 | NA | RC-9019_00038338.pdf |
| 296 | NA | RC-9019_00038341.pdf |
| 297 | NA | RC-9019_00038344.pdf |
| 298 | NA | RC-9019_00038347.pdf |
| 299 | NA | RC-9019_00038350.pdf |
| 300 | NA | RC-9019_00038353.pdf |
| 301 | NA | RC-9019_00038356.pdf |
| 302 | NA | RC-9019_00038369.pdf |
| 303 | NA | RC-9019_00038380.pdf |
| 304 | NA | RC-9019_00038398.pdf |
| 305 | NA | RC-9019_00038446.pdf |
| 306 | NA | RC-9019_00038525.pdf |
| 307 | NA | RC-9019_00038529.pdf |
| 308 | NA | RC-9019_00038542.pdf |
| 309 | NA | RC-9019_00038562.pdf |
| 310 | NA | RC-9019_00038577.pdf |
| 311 | NA | RC-9019_00038582.pdf |
| 312 | NA | RC-9019_00038590.pdf |
| 313 | NA | RC-9019_00039130.pdf |
| 314 | NA | RC-9019_00039144.pdf |
| 315 | NA | RC-9019_00039156.pdf |

**Documents Reviewed and / or Considered**

| Number | Date | Document |
|--------|------|----------|
| 316 | NA | RC-9019_00039251_PROFESSIONALS' EYES ONLY.xls |
| 317 | NA | RC-9019_00039250_PROFESSIONALS' EYES ONLY.xls |
| 318 | NA | RC-9019_00039252_PROFESSIONALS' EYES ONLY.xls |
| 319 | NA | RC-9019_00056673.pdf |
| 320 | NA | RC-9019_00056671.pdf |
| 321 | NA | RC-9019_00039253.pdf |
| 322 | NA | RC-9019_00039254.pdf |
| 323 | NA | RC-9019_00056670.pdf |
| 324 | NA | RC-9019_00039253_PROFESSIONALS' EYES ONLY.xls |
| 325 | NA | RC-9019_00039254_PROFESSIONALS' EYES ONLY.xls |
| 326 | NA | RC-9019_00056670.xls |
| 327 | NA | RC-9019_00039157.pdf |
| 328 | NA | RC-9019_00039163.pdf |
| 329 | NA | RC-9019_00039192.pdf |
| 330 | NA | RC-9019_00039223.pdf |
| 331 | NA | RC-9019_00039227.pdf |
| 332 | NA | RC-9019_00039250.pdf |
| 333 | NA | RC-9019_00039251.pdf |
| 334 | NA | RC-9019_00039252.pdf |
| 335 | NA | RC-9019_00045357.pdf |
| 336 | NA | RC-9019_00045459.xls |
| 337 | NA | RC-9019_00056670.xls |
| 338 | NA | RC-9019_00054000.xls |
| 339 | NA | Response_to_Trustees_1st_Set_of_Interrogatories.pdf |
| 340 | NA | Response_to_UCC_2d_Doc_Requests.pdf |
| 341 | NA | Response_to_UCC_2d_Set_of_Interrogatories.pdf |
| 342 | NA | FGIC_Request_for_Documents_Responses.pdf |
| 343 | NA | ResCap_s_responses_to_FGIC_s_1st_Interrogatories.pdf |
| 344 | NA | Debtors Response to MBIA Interrogatories.pdf |
| 345 | NA | MBIA_First_Set_of_Requests_for_Documents_Responses.pdf |
| 346 | NA | MBIA_Second_Set_of_Requests_for_Documents_Responses.pdf |
| 347 | NA | Response_to_Wilmington_Trust_s_1st_Interrogatories.pdf |
| 348 | NA | Wilmington_Trust_Request_for_Documents_Responses.pdf |
| 349 | NA | Response_to_UCC_Interrogatories.pdf |
| 350 | NA | UCC_First_Doc_Request_Responses.pdf |
| 351 | NA | ResCap Residuals and Associated Schedule Qs (Jan. 2011 - Dec. 2011).xls |
| 352 | NA | Trading Securities as of (2012.06.30).xlsx |
| 353 | NA | RC-9019_00056646.pdf |
| 354 | NA | RC-9019_00056644.pdf |
| 355 | NA | RC-9019_00056645.xlsx |
| 356 | NA | 5-13-12 Interco (9-26-12)_Final.pdf |
| 357 | NA | RC-9019_00054000 (2).xls |
| 358 | NA | RC-9019_00064969 (2).xls |
| 359 | NA | RC-9019_00064970 (2).xls |

## Documents Reviewed and / or Considered

| Number | Date | Document |
|--------|------|----------|
| 360 | NA | RC-9019_00066117 (2).xls |
| 361 | NA | RC-9019_00066118 (2).xlsx |
| 362 | NA | RC-9019_00066119 (2).xls |
| 363 | NA | RC-9019_00066148 (2).xls |
| 364 | NA | RC-9019_00066149 (2).xlsx |
| 365 | NA | RC-9019_00064971.pdf |
| 366 | NA | RC-9019_00064981.pdf |
| 367 | NA | RC-9019_00064991.pdf |
| 368 | NA | RC-9019_00066120.pdf |
| 369 | NA | RC-9019_00066121.pdf |
| 370 | NA | RC-9019_00054000 (2).xls |
| 371 | NA | RC-9019_00067623.pdf |
| 372 | NA | RC-9019_00067614.pdf |
| 373 | NA | RC-9019_00067610.pdf |
| 374 | NA | RC-9019_00054587.xls |
| 375 | NA | RC-9019_00055935.xls |
| 376 | NA | RC-9019_00055965.xlsx |
| 377 | NA | RC-9019_00055964.xlsx |
| 378 | NA | RC-9019_00052346.xls |
| 379 | NA | RC-9019_00049660.xlsx |
| 380 | NA | RC-9019_00050464.xlsx |
| 381 | NA | RC-9019_00048981.xlsx |
| 382 | NA | RC-9019_00049185.xlsx |
| 383 | NA | RC-9019_00051764.xls |
| 384 | NA | RC-9019_00047237.xlsx |
| 385 | NA | RC-144A_00001467.xls |
| 386 | NA | RC-144A_00000001.xlsx |
| 387 | NA | RC-144A_00000607.txt |
| 388 | NA | RC-144A_00000002.txt |
| 389 | NA | RC-144A_00001948.pdf |
| 390 | NA | RC-144A_00001968.pdf |
| 391 | NA | RC-144A_00001988.pdf |
| 392 | NA | RC-144A_00001999.pdf |
| 393 | NA | RC-144A_00002008.pdf |
| 394 | NA | RC-144A_00002017.pdf |
| 395 | NA | RC-144A_00002026.pdf |
| 396 | NA | RC-144A_00002035.pdf |
| 397 | NA | RC-144A_00002044.txt |
| 398 | NA | RC-9019_00084863.xls |
| 399 | NA | RC-9019_00067804.xlsx |
| 400 | NA | RC-9019_00067970.XLS |
| 401 | NA | RC-9019_00069827.XLSX |
| 402 | NA | RC-9019_00070942.XLSX |
| 403 | NA | RC-9019_00071809.xlsx |

**Documents Reviewed and / or Considered**

| Number | Date | Document |
|--------|------|----------|
| 404 | NA | RC-9019_00071810.xlsx |
| 405 | NA | RC-9019_00071811.xlsx |
| 406 | NA | RC-9019_00071812.xlsx |
| 407 | NA | RC-9019_00071813.xlsx |
| 408 | NA | RC-9019_00071814.xlsx |
| 409 | NA | RC-9019_00071815.xlsx |
| 410 | NA | RC-9019_00071816.xlsx |
| 411 | NA | RC-9019_00071817.xlsx |
| 412 | NA | RC-9019_00071818.xlsx |
| 413 | NA | RC-9019_00071819.xls |
| 414 | NA | RC-9019_00071820.xlsm |
| 415 | NA | RC-9019_00071821.xls |
| 416 | NA | RC-9019_00071822.xlsx |
| 417 | NA | RC-9019_00071823.xlsx |
| 418 | NA | RC-9019_00071824.xls |
| 419 | NA | RC-9019_00071825.xlsx |
| 420 | NA | RC-9019_00071826.xlsx |
| 421 | NA | RC-9019_00075836.XLSX |
| 422 | NA | RC-9019_00075837.XLSX |
| 423 | NA | RC-9019_00075865.xls |
| 424 | NA | RC-9019_00075975.xls |
| 425 | NA | RC-9019_00076308.xls |
| 426 | NA | RC-9019_00076313.xlsx |
| 427 | NA | RC-9019_00076508.xlsx |
| 428 | NA | RC-9019_00076584.xlsx |
| 429 | NA | RC-9019_00076790.xlsx |
| 430 | NA | RC-9019_00076941.xls |
| 431 | NA | RC-9019_00076949.xls |
| 432 | NA | RC-9019_00076950.xls |
| 433 | NA | RC-9019_00076951.xls |
| 434 | NA | RC-9019_00077211.XLS |
| 435 | NA | RC-9019_00077935.xls |
| 436 | NA | RC-9019_00077948.xls |
| 437 | NA | RC-9019_00078011.xls |
| 438 | NA | RC-9019_00078219.xls |
| 439 | NA | RC-9019_00078507.XLS |
| 440 | NA | RC-9019_00078508.XLS |
| 441 | NA | RC-9019_00078509.XLS |
| 442 | NA | RC-9019_00078510.XLS |
| 443 | NA | RC-9019_00078526.XLS |
| 444 | NA | RC-9019_00078527.XLS |
| 445 | NA | RC-9019_00078528.XLS |
| 446 | NA | RC-9019_00078529.XLS |
| 447 | NA | RC-9019_00078530.XLS |

## Documents Reviewed and / or Considered

| Number | Date | Document |
|--------|------|----------|
| 448 | NA | RC-9019_00078531.XLS |
| 449 | NA | RC-9019_00078588.xlsx |
| 450 | NA | RC-9019_00078652.xls |
| 451 | NA | RC-9019_00078653.xls |
| 452 | NA | RC-9019_00078655.xlsx |
| 453 | NA | RC-9019_00078807.xls |
| 454 | NA | RC-9019_00078809.xls |
| 455 | NA | RC-9019_00079286.xls |
| 456 | NA | RC-9019_00079287.xls |
| 457 | NA | RC-9019_00079317.XLS |
| 458 | NA | RC-9019_00079523.xls |
| 459 | NA | RC-9019_00079546.XLS |
| 460 | NA | RC-9019_00079788.xls |
| 461 | NA | RC-9019_00079919.xls |
| 462 | NA | RC-9019_00080172.xls |
| 463 | NA | RC-9019_00080224.xlsx |
| 464 | NA | RC-9019_00080226.xlsx |
| 465 | NA | RC-9019_00080263.xls |
| 466 | NA | RC-9019_00080271.xls |
| 467 | NA | RC-9019_00080274.xls |
| 468 | NA | RC-9019_00080741.XLS |
| 469 | NA | RC-9019_00080742.XLS |
| 470 | NA | RC-9019_00080743.XLS |
| 471 | NA | RC-9019_00080744.XLS |
| 472 | NA | RC-9019_00080745.XLS |
| 473 | NA | RC-9019_00080746.XLS |
| 474 | NA | RC-9019_00080747.XLS |
| 475 | NA | RC-9019_00081312.xls |
| 476 | NA | RC-9019_00081403.xls |
| 477 | NA | RC-9019_00081405.xls |
| 478 | NA | RC-9019_00081455.xls |
| 479 | NA | RC-9019_00081482.xls |
| 480 | NA | RC-9019_00081484.xls |
| 481 | NA | RC-9019_00081487.xlsx |
| 482 | NA | RC-9019_00081489.xls |
| 483 | NA | RC-9019_00081563.XLS |
| 484 | NA | RC-9019_00081567.xls |
| 485 | NA | RC-9019_00081580.xlsx |
| 486 | NA | RC-9019_00081583.xls |
| 487 | NA | RC-9019_00081586.xlsx |
| 488 | NA | RC-9019_00081589.xlsx |
| 489 | NA | RC-9019_00081606.xls |
| 490 | NA | RC-9019_00081611.xls |
| 491 | NA | RC-9019_00081613.xls |

**Documents Reviewed and / or Considered**

| Number | Date | Document |
|--------|------|----------|
| 492 | NA | RC-9019_00081628.xls |
| 493 | NA | RC-9019_00081630.xls |
| 494 | NA | RC-9019_00081633.xls |
| 495 | NA | RC-9019_00081656.xls |
| 496 | NA | RC-9019_00082255.XLS |
| 497 | NA | RC-9019_00082256.XLS |
| 498 | NA | RC-9019_00083747.xls |
| 499 | NA | RC-9019_00083770.XLS |
| 500 | NA | RC-9019_00084696.xlsx |
| 501 | NA | RC-9019_00084712.xlsx |
| 502 | NA | RC-9019_00084729.xlsx |
| 503 | NA | RC-9019_00084744.xlsx |
| 504 | NA | RC-9019_00084759.xlsx |
| 505 | NA | RC-9019_00084791.xlsx |
| 506 | NA | RC-9019_00084847.XLSX |
| 507 | NA | RC-9019_00084849.xls |
| 508 | NA | RC-9019_00084850.xls |
| 509 | NA | RC-9019_00084852.xls |
| 510 | NA | RC-9019_00084853.xls |
| 511 | NA | RC-9019_00084859.xls |
| 512 | NA | RC-9019_00084861.xls |
| 513 | NA | RC-9019_00093272.xlsx |
| 514 | NA | RC-9019_00093196.TIF - RC-9019_00093417.TIF |
| 515 | 8/22/2012 | TIME-SENSITIVE NOTICE REGARDING A PROPOSED SETTLEMENT BETWEEN RESIDENTIAL CAPITAL, LLC, et al., AND THE SETTLEMENT TRUSTS, DATED AUGUST 22, 2012 |
| 516 | 8/22/2012 | CUSIP List For Time-Sensitive Notice Regarding a Proposed Settlement Between Residential Capital, LLC, et al. and the Settlement Trusts dated August 22, 2012 |
| 517 | 10/17/2012 | TIME SENSITIVE NOTICE REGARDING (a) ORDER SETTING LAST DATE TO FILE CLAIMS AGAINST DEBTORS RESIDENTIAL CAPITAL, LLC AND CERTAIN OF ITS DIRECT AND INDIRECT SUBSIDIARIES, AND (b) UPDATES OF MATTERS RELEVANT TO CERTAIN CERTIFICATEHOLDERS, DATED OCTOBER 17, 2012 |
| 518 | 10/17/2012 | ResCap Cusip List from October 17, 2012 Bar Date Notice |
| 519 | 5/24/2013 | TIME SENSITIVE NOTICE REGARDING (A) PLAN SUPPORT AGREEMENT AMONG THE RESCAP DEBTORS AND THE RMBS TRUSTEES, AMONG OTHERS, AND (B) SETTLEMENT AGREEMENT AMONG THE DEBTORS, FINANCIAL GUARANTY INSURANCE COMPANY AND CERTAIN OF THE RMBS TRUSTEES, DATED MAY 24, 2013 |
| 520 | 5/24/2013 | Schedule A (to above) |
| 521 | 5/24/2013 | Schedule B (to above) |
| 522 | 6/4/2013 | NOTICE OF FGIC SETTLEMENT, DATED JUNE 4, 2013 |
| 523 | 6/4/2013 | Notice of FGIC Settlement Schedule A (to above) |

## Documents Reviewed and / or Considered

| Number | Date | Document |
|--------|------|----------|
| 524 | 8/8/2013 | TIME SENSITIVE NOTICE REGARDING ALLOCATION OF CERTAIN SETTLEMENT AMOUNTS UNDER THE SETTLEMENT AGREEMENT AMONG THE RESCAP DEBTORS, FINANCIAL GUARANTY INSURANCE COMPANY, AND THE FGIC TRUSTEES, DATED AUGUST 8, 2013 |
| 525 | 8/30/2013 | TIME SENSITIVE NOTICE REGARDING (A) APPROVAL OF DISCLOSURE STATEMENT FOR RESCAP CHAPTER 11 PLAN, AND (B) HEARING ON CONFIRMATION OF PLAN, DATED AUGUST 30, 2013 |
| 526 | 8/30/2013 | Schedule A (to above) |
| 527 | 8/30/2013 | Schedule B (to above) |
| 528 | 10/1/2013 | TIME SENSITIVE NOTICE REGARDING (A) HEARING ON CONFIRMATION OF PROPOSED RESCAP CHAPTER 11 PLAN, AND (B) COURT APPROVALS OF THE FGIC SETTLEMENT AGREEMENT, DATED OCTOBER 1, 2013 |
| 529 | 10/1/2013 | Schedule A (to above) |

**IX.**    **Attachment 3 – Exhibit 9 to the Disclosure Statement**

**Exhibit 9**

## RMBS Trusts: Methodology For Calculation Of Recognized Claims

### 1.    CALCULATION OF RECOGNIZED RMBS R+W CLAIMS

**Step 1:  Calculate Total Collateral Losses**

The calculation of each trust's[1] Recognized R+W Claim begins with estimating each trust's Total Collateral Losses, which is the sum of the trust's (i) Realized Collateral Losses and (ii) Projected Collateral Losses.  Realized Collateral Losses were obtained from the Debtors' VISION platform for Debtor-sponsored RMBS Trusts, and through databases from Intex and Bloomberg for non-Debtor-sponsored RMBS Trusts.  Projected Collateral Losses were estimated by Duff & Phelps ("**Duff**")—the RMBS Trustees' expert—using a proprietary loss model.

**Step 2:  Calculate Net Total Collateral Losses after PMI**

Net Total Collateral Losses of a trust is the sum of the trust's (i) Realized Collateral Losses and (ii) Projected Collateral Losses, less (iii) any Insurance Benefit.  Insurance Benefit is calculated for any trust that has a monoline insurance policy, as the sum of (i) any Net Unreimbursed Insurance Payments, (ii) and Accrued & Unpaid losses, and (iii) any and all estimated future policy payments.  For any monoline insurer that, as of the Effective Date, has not made all outstanding policy payments to the insured trust, the Insurance Benefit is reduced to take into account the partial payments.  These Insurers are Ambac and FGIC.

For Ambac Duff estimates a partial payment benefit of 92.5%, because, under Ambac current rehabilitation plan, Ambac is required to make 25% of policy payments in cash and pay the remaining 75% of the policy payment in the form of a surplus note.  The surplus note is currently quoted at approximately 90 cents on the dollar.  Thus, the weighted average of 100% * 25 in cash + 75% * 90 = 92.5%.[2]

For FGIC, Duff calculates the Insurance Benefit as the sum of FGIC's Net Unreimbursed payments plus the trust's allocable portion of the Commutation Payment, on the assumption that the FGIC Settlement Agreement will be approved, as is contemplated by the Plan.  Any Pool Mortgage Insurance ("**PMI**") benefit is calculated per the terms of the pool policy and already reflected in the Total Collateral Losses.

---

[1]    To the extent that the collateral in any RMBS Trust is divided by the governing agreements into Loan Groups each  Loan Group shall be deemed to be separate trusts for purposes of the methodology set forth herein, and the Claim of any such RMBS Trust shall be the sum of the claim of all of its constituent Loan Groups.  Duff utilized Intex (a third party RMBS cash flow data source) for Loan Group classifications.  Accordingly, in this Exhibit, the terms "trust" or "RMBS trust" refers to an RMBS Trust or Loan Group in such RMBS Trust, as applicable.

[2]    The 92.5% estimate is Duff's estimate alone.  Ambac played no part in the formulation of the estimate, and Ambac has not expressed a view on this issue to Duff, the Debtors, the Creditors' Committee, or any other party.

**Step 3:** **Calculate Debtor's Attributable Portion of Net Collateral Losses**

The Net Total Collateral Loss for each trust is then multiplied by the percentage of a trust's loans sold into that trust by a Debtor (the "**Seller Percentage**"). This result is the Debtor's Attributable Portion of Net Collateral Losses.

For (i) Original Settling RMBS Trusts and (ii) Debtor sponsored Additional Settling RMBS Trusts, the Debtor's Seller Percentage is assumed to be 100%.

For third party sponsored Additional Settling RMBS Trusts, the Seller Percentage is obtained, in the first instance, from the trust's Prospectus. Where the Seller Percentage is not available from a trust's prospectus, the Seller Percentage is obtained from a third-party data source (*e.g.*, Intex). If the Seller Percentage is neither available from the trust's prospectus, nor from a third party data source, the percentage of loans serviced by a Debtor entity (the "**Servicer Percentage**") is employed as a proxy for the Seller Percentage. The Servicer Percentage is capped at 100% less the sum of the non-Debtor entity Seller Percentage(s) listed in the trust's prospectus, provided, however, that if neither the Seller Percentage nor Servicer Percentage is available, then the Seller Percentage is set at 5% for vintages 2006 and later, and at 9% for vintages prior to 2006. Further, if the Debtor entity associated with the assumed Seller Percentage cannot be identified, the assumed Seller Percentage is divided evenly between RFC and GMACM.

**Step 4:** **Calculate Recognized RMBS R&W Claim**

Each trust's  Recognized R&W Claim is equal to the Claim, unless the trust is an Insured RMBS Trust that has made policy claims against its monoline insurer and as of the Effective Date has received full payment of such claims, in which case the Recognized Claim of such Insured RMBS Trust will set to zero, unless (a) such Insured RMBS Trust is one for which the sum of the net unreimbursed insurance payments, the accrued and unpaid losses, and projected future policy payments is zero or close to zero, (b) such Insured RMBS Trust contains one or more unwrapped tranches of securities that rank senior or equal in priority to tranches insured by a Monoline, in which case the portion of such Insured RMBS Trust's Claims allocable to such unwrapped tranches shall not be set to zero and any distribution on such unwrapped tranches shall be allocable only to such unwrapped tranches, or (c) the RMBS Trustees, with the advice of Duff, reasonably determine that, based on a particular Insured RMBS Trust's structure it would be unfair or inequitable to set the Recognized Claim to zero (each of (a), (b) or (c), an "**Insured Exception**"), in each case as determined by Duff.

**2.**     **CALCULATION OF SERVICING CURE CLAIM AND SERVICING DAMAGE CLAIM**

Each trust's Servicing Damage Claim is equal to the total servicing claim amount (*i.e.*, $96 million) multiplied by that trust's Servicing Claim Share.

Each trust's Servicing Claim Share is equal to: the product of that trust's Estimated Servicing Losses divided by the sum of each and every trust's Estimated Servicing Losses, as determined by Duff.

2

(Part 3) Pg 45 of 45

Estimated Servicing Losses are related to 1) misapplied and miscalculated payments, 2) wrongful foreclosure and improper loss mitigation practices, and 3) extended foreclosure timing issues caused by improper affidavits, documentation and collection practices. Information employed to calculate Estimated Servicing Losses was obtained from a review of 146 non-Debtor servicing related litigations and approximately 1,500 Debtor servicing litigations, a review of complaints filed with the Debtor on Debtor-serviced loans, and a review of a sample of Debtor-serviced loans.

Each trust's Estimated Servicing Losses is adjusted by the Servicer Percentage to reflect liability only for those loans serviced by Debtor entities. The Servicer Percentage is obtained from the applicable governing documents, the RMBS Trusts' prospectus where such information in the prospectus, and, if not available, from third-party sources (*e.g.*, Intex). In those cases where the Servicer Percentage was unavailable from the governing documents, the prospectus or other third-party sources, the Servicer Percentage was assumed to be the trust shelf's average Servicer Percentage. If it is not possible to calculate a shelf average, the Servicer Percentage is assumed to be the Stratum average. For some RMBS Trusts, Duff determined that GMACM serviced 100% of the loans; for others, Duff determined that RFC serviced 100% of the loans; and for the rest, Duff determined that both GMACM and RFC serviced a portion of the loans, and the claims are listed against GMACM or RFC or both in accordance with those determinations.

The Servicing Damages Claims of the trusts are divided into two groups: If the Servicing Agreement of a trust was assumed by the applicable Debtor by July 1, 2013, the Servicing Damage Claim is a cure claim; if it was not assumed by that date, the Servicing Damage Claim is an unsecured claim. Since a Servicing Agreement that had not been assumed by July 1, 2013 may be assumed as late as the Effective Date, the two groups may have to be updated after the filing of the Plan, which will impact many of the calculations contained in the RMBS Trust Claim Schedules.

Each trust's Recognized Cure Claim is equal to the Servicing Damage Claim, unless the trust is an Insured RMBS Trust that has made policy claims against its monoline insurer and as of the Effective Date has received full payment of such claims, in which case the Recognized Claim of such Insured RMBS Trust will set to zero unless one of Insured Exceptions applies, in each case as determined by Duff.