# EXHIBIT PX-1582

# AFFIDAVITS

**IN THE MATTER**
**OF:** THE BANK OF NY MELLON, THE BANK OF NY MELLON TRUST COMPANY, DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, US BANK NATIONAL ASSOCIATION AND WELLS FARGO BANK N.A.

**STATE OF NEW YORK:**

**ss:**

**COUNTY OF NEW YORK:**

I, Tim Hart, being duly sworn, hereby certify that (a) I am the Vice President - Financial Advertising of FT Publications, Inc., Publisher of the FINANCIAL TIMES, a daily newspaper published and of general circulation in the City and County of New York, and (b) that the Notice of which the annexed is a copy was published in ALL EDITIONS OF THE FINANCIAL TIMES ON THE 8TH DAY OF OCTOBER 2012.

**TIM HART VICE-PRESIDENT OF ADVERTISING -FINANCIAL ADVERTISING:**

**SWORN TO BEFORE ME THIS:**

Hope Kaye

**NOTARY PUBLIC**

HOPE KAYE
Notary Public, State of New York
No. 01KA4944197
Qualified in New York County
Commission Expires 3/20/15

ADVERTISEMENT

# TIME SENSITIVE NOTICE REGARDING A PROPOSED SETTLEMENT BETWEEN CERTAIN SETTLEMENT TRUSTS RELATED TO SECURITIZATIONS SPONSORED BY RESIDENTIAL CAPITAL, LLC, AND CERTAIN OF ITS SUBSIDIARIES, INCLUDING GMAC MORTGAGE, LLC AND RESIDENTIAL FUNDING COMPANY, LLC

NOTICE IS HEREBY GIVEN BY:

THE BANK OF NEW YORK MELLON,
THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,
DEUTSCHE BANK NATIONAL TRUST COMPANY,
DEUTSCHE BANK TRUST COMPANY AMERICAS,
U.S. BANK NATIONAL ASSOCIATION AND
WELLS FARGO BANK, N.A.

IN THEIR SEVERAL CAPACITIES AS TRUSTEES OR INDENTURE TRUSTEES (COLLECTIVELY, THE "RMBS TRUSTEES" AND EACH, AN "RMBS TRUSTEE"), TO THE HOLDERS OF CERTIFICATES, NOTES OR OTHER SECURITIES (THE "CERTIFICATEHOLDERS") UNDER THE RESIDENTIAL MORTGAGE-BACKED SECURITIZATION TRUSTS IDENTIFIED IN EXHIBIT A, AVAILABLE AT WWW.RESCAPRMBSSETTLEMENT.COM (COLLECTIVELY, THE "SETTLEMENT TRUSTS" AND EACH A "SETTLEMENT TRUST").

**THIS NOTICE CONTAINS IMPORTANT TIME-SENSITIVE INFORMATION FOR CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY INTERESTED IN THE SETTLEMENT TRUSTS. ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE, AS APPLICABLE, ARE REQUESTED TO EXPEDITE THE RE-TRANSMITTAL TO CERTIFICATEHOLDERS IN A TIMELY MANNER.**

Dated: August 22, 2012 (date on which notice was delivered to registered Certificateholders)

This notice (the "Notice") is given to you by the RMBS Trustees under the Pooling and Servicing Agreements (including Series Supplements and Standard Terms of Pooling and Servicing Agreements), Indentures and related Servicing Agreements (collectively, the "Governing Agreements") governing the Settlement Trusts. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Governing Agreements.

## I. Background.

As Certificateholders have previously been notified by each RMBS Trustee, on May 14, 2012, Residential Capital, LLC, and certain of its direct and indirect subsidiaries (collectively, "ResCap") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") (*In re Residential Capital, LLC*, Case No. 12-12020 (MG) and related cases) (collectively, the "Chapter 11 Cases").

**THIS NOTICE CONCERNS A PROPOSED SETTLEMENT OF CLAIMS OF THE SETTLEMENT TRUSTS AGAINST RESCAP IN THE CHAPTER 11 CASES. THESE CLAIMS INCLUDE, WITHOUT LIMITATION, CERTAIN CLAIMS RELATING TO THE ORIGINATION AND SALE BY RESCAP OF MORTGAGE LOANS AND TO CERTAIN ASPECTS OF RESCAP'S SERVICING OF THOSE MORTGAGE LOANS. THE PROPOSED SETTLEMENT WOULD, IF APPROVED BY THE COURT AND ACCEPTED BY THE RMBS TRUSTEE OF A SETTLEMENT TRUST, BIND THAT SETTLEMENT TRUST AND RELATED CERTIFICATEHOLDERS. ACCORDINGLY, THE PROPOSED SETTLEMENT AND RELATED COURT APPROVAL PROCEDURES MATERIALLY AFFECT THE INTERESTS OF THE CERTIFICATEHOLDERS, AND THE RMBS TRUSTEES RESPECTFULLY REQUEST THAT ALL CERTIFICATEHOLDERS AND OTHER NOTICE RECIPIENTS READ THIS NOTICE AND RELATED MATERIALS CAREFULLY IN CONSULTATION WITH THEIR LEGAL AND FINANCIAL ADVISORS.**

## II. The Proposed Settlement.

On May 13, 2012, ResCap entered into separate agreements with two sets of Certificateholders (collectively, the "Institutional Investors"), each of which was titled an "RMBS Trust Settlement Agreement" (collectively, the "Original Proposed RMBS Trust Settlement Agreements"). On August 15, 2012, the Original Proposed RMBS Trust Settlement Agreements were amended (the "Amended Proposed RMBS Trust Settlement Agreements," and together with the Original Proposed RMBS Trust Settlement Agreements, the "Proposed RMBS Trust Settlement Agreements"). (Copies of these documents can be obtained as explained in Part IV below.) The Proposed RMBS Trust Settlement Agreements seek to, among other things, settle the claims of the Settlement Trusts concerning ResCap's alleged breaches of representations and warranties in the Governing Agreements and certain alleged violations of ResCap's servicing obligations. The Proposed RMBS Trust Settlement Agreements are subject to the approval of the Court and the settlements set forth therein cannot be offered to or accepted by the Settlement Trusts until and unless such approval is granted by the Court (see Part III below).

The Proposed RMBS Trust Settlement Agreements provide that in settlement of the Proposed Settled Claims (as defined below) against ResCap, each Settlement Trust that accepts the settlement (an "Accepting Trust") will be allowed a general unsecured claim against the estates of certain ResCap entities in the Chapter 11 Cases. If all Settlement Trusts become Accepting Trusts, such allowed claims will aggregate $8,700,000,000 (US$8.7 billion), less an allocation of the allowed claims for the payment of fees and expenses of the attorneys for the Institutional Investors as set forth in the Proposed RMBS Trust Settlement Agreements (the "Settlement Claims Allowance"). The Proposed RMBS Trust Settlement Agreements further provide that each Accepting Trust shall have the option (the "HoldCo Option"), at any time prior to confirmation of a chapter 11 plan in the Chapter 11 Cases (a "Plan"), to elect to receive up to twenty percent of that Accepting Trust's Settlement Claims Allowance as an allowed general unsecured claim against the estate of Residential Capital, LLC ("HoldCo"), in lieu of a general unsecured claim against the estates of certain of its direct and indirect subsidiaries thereby reducing each Accepting Trust's allowed general unsecured claim against such estates to the extent each Accepting Trust exercises the HoldCo Option. **The determination of the Settlement Claims Allowance of each Accepting Trust (*i.e.*, each Accepting Trust's share of the aggregate Settlement Claims Allowance) is subject to an allocation procedure set forth in the Proposed RMBS Trust Settlement Agreements and all recipients of this Notice are referred to such agreements for the details of that procedure.**

The Proposed RMBS Trust Settlement Agreements allow each related Settlement Trust to accept or reject the settlement offer independently without affecting the rights of any other Settlement Trust (including the share of the Settlement Claims Allowance to which any other Settlement Trust is entitled if it becomes an Accepting Trust). If approved by the Court, the Proposed RMBS Trust Settlement Agreements would affect the rights and interests of all Certificateholders, and their successors-in-interests and assigns, in any Accepting Trusts. The affected rights and interests will include, among other things, the release of claims against Rescap on behalf of the RMBS Trustee, the Accepting Trusts and all Certificateholders in the Accepting Trusts, arising out of or relating to (i) the origination and sale of mortgages to the Accepting Trusts, including representations and warranties made with respect to those mortgages and any mortgage repurchase obligations; (ii) documentation of the mortgages in the Accepting Trusts, with certain exceptions; (iii) servicing of the mortgages in the Accepting Trusts, with certain exceptions; (iv) certain setoff or recoupment under the Governing Agreements against ResCap; and (v) any loan seller that either sold loans to ResCap or Ally Financial Inc. that were sold or transferred to the Accepting Trusts (collectively, the "Proposed Settled Claims").

**The acceptance of the Proposed RMBS Trust Settlement Agreements by an Accepting Trust would not, at present, entitle such Accepting Trust to receive any specific amount of money or other consideration, at any specific time, as a distribution from the ResCap debtor entities' bankruptcy estates.** Rather, the Settlement Claims Allowance would entitle the Accepting Trust to receive such consideration as is eventually afforded to the claims of general unsecured creditors in the Chapter 11 Cases that are classified in the same manner as the claims of the Accepting Trusts. Accordingly, at present, Certificateholders cannot assume that acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement will result in any particular recovery with respect to the Settlement Claims Allowance of such Settlement Trust. Acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement would, however, resolve disputes with ResCap and other parties in interest to the Chapter 11 Cases as to the amount and general unsecured claim status of any claims such Settlement Trust may have with respect to the Proposed Settled Claims.

The RMBS Trustees have jointly engaged Duff & Phelps, LLC as their primary advisor with respect to their evaluation of the Proposed RMBS Trust Settlement Agreements and with respect to certain other matters in the Chapter 11 Cases. Each RMBS Trustee has also engaged independent counsel to advise it with respect to relevant legal matters affecting the particular Settlement Trusts that they administer. **None of the RMBS Trustees has made a determination, as of the date of this Notice, as to the reasonableness of, or the advisability of entering into, the Proposed RMBS Trust Settlement Agreements on behalf of any Settlement Trust. None of the RMBS Trustees anticipates making its decision as to whether or not to accept the proposed settlement on behalf of any Settlement Trust until and unless the proposed settlement has been approved by the Court (see Part III below). Although the RMBS Trustees are cooperating with each other in their evaluation of the proposed settlement, each RMBS Trustee will make its own decision as to whether or not to accept the proposed settlement on behalf of any Settlement Trust, and for each Accepting Trust, whether, and in what amount, to elect to exercise the HoldCo Option, on the basis of information available to that RMBS Trustee at the time of such decision.**

**Settlement Trusts that do not accept the Proposed RMBS Trust Settlement Agreements and do not become Accepting Trusts will be subject to the procedures of the Bankruptcy Code and the Court (including the scheduling order for the Chapter 11 Cases entered by the Court) relating to the assertion and allowance of claims, including, but not limited to, ResCap's right to object to the claims.**

## III. ResCap's Motion for Approval of the Proposed RMBS Trust Settlement Agreements by the Court; The Rights of Certificateholders and Other Parties to Appear and Object.

The Proposed RMBS Trust Settlement Agreements are agreements between ResCap and the Institutional Investors and will not become effective or binding as to any Settlement Trust until and unless both (a) ResCap obtains Court approval to make the settlement offer to the Settlement Trusts and (b) such Settlement Trust, acting through its respective RMBS Trustee, accepts the Proposed RMBS Trust Settlement Agreements. Accordingly, on June 11, 2012, ResCap filed a motion with the Court seeking Court approval of the Proposed RMBS Trust Settlement Agreements and of ResCap's offer of the settlement proposed thereunder to each of the RMBS Trustees on behalf of the Settlement Trusts (the "Original 9019 Motion"). On August 15, 2012, ResCap filed a Supplement to the 9019 Motion (together with the Original 9019 Motion, the "9019 Motion").

Among other things, the 9019 Motion seeks a finding by the Court that the settlements proposed under the Proposed RMBS Trust Settlement Agreements are fair and reasonable to, and in the best interest of, all interested parties, including but not limited to, ResCap's creditors, the Institutional Investors, the Certificateholders for each Accepting Trust and each such Accepting Trust, the RMBS Trustees, and certain other persons, as a compromise of the claims asserted by each Accepting Trust against ResCap.

On July 31, 2012, the Court entered an order setting forth a schedule of deadlines and the date of a hearing related to the 9019 Motion and the RMBS Trustees' acceptance or rejection of the settlement under the Proposed RMBS Trust Settlement Agreements (the "Order"). **Pursuant to the Order, the Court will commence an evidentiary hearing on the 9019 Motion (the "Hearing") on November 5, 2012.** If the Court grants the 9019 Motion, the RMBS Trustees must accept or reject the Proposed RMBS Trust Settlement Agreements on behalf of any Settlement Trust on or before the later of (a) November 12, 2012 or (b) five business days after the entry of an order granting the 9019 Motion. The RMBS Trustees have until the confirmation of a Plan to elect to exercise the HoldCo Option on behalf of each Accepting Trust.

**[NOTE: Dates set forth in this Notice and in the Order may have changed between the date that this Notice was written and the date of publication or reading and are subject to subsequent change. Accordingly, Certificateholders and other persons interested in the Settlement Trusts should refer to the sources of information described in Part IV below for up-to-date scheduling information.]**

**Any Certificateholder or other person potentially having an interest in the Settlement Trusts may object to the 9019 Motion or any aspect of the Proposed RMBS Trust Settlement Agreements, may seek discovery regarding the 9019 Motion or the Proposed RMBS Trust Settlement Agreements, and may participate in the Hearing.** The Court has directed that:

- any objections to the 9019 Motion, along with any supporting expert reports, must be filed with the Court by **October 5, 2012**;
- the RMBS Trustees' objections or responses to the 9019 Motion, if any, must be served by **October 15, 2012**; and
- any reply to objections to the 9019 Motion must be filed by **October 29, 2012**.

(Further information regarding additional deadlines regarding the 9019 Motion is contained in the Order which can be obtained as explained in Part IV below.)

**If the Court approves the 9019 Motion and an RMBS Trustee agrees to accept the settlement under the Proposed RMBS Trust Settlement Agreements on behalf of an Accepting Trust, all Certificateholders under the Accepting Trust will be bound by the Proposed RMBS Trust Settlement Agreements and the releases contained therein, whether or not the Certificateholder appeared in the Hearing or submitted an objection to the 9019 Motion or the Proposed RMBS Trust Settlement Agreements. Accordingly, any Certificateholder that has concerns about or might object to the Proposed RMBS Trust Settlement Agreements should consider with their legal advisors whether to participate in the Court proceedings pursuant to any of the means described in the preceding paragraph. There will likely be no forum other than such Court proceedings in which a Certificateholder's objection to the Proposed RMBS Trust Settlement Agreements will be able to be heard. If the Court approves the Proposed RMBS Trust Settlement Agreements, the decision of the applicable RMBS Trustee to accept or reject the proposed settlement on behalf of an individual Settlement Trust, and to exercise the HoldCo Option on behalf of an Accepting Trust, will be informed by each RMBS Trustee's analysis of the settlement taking into account interests of all of its respective Certificateholders and will not necessarily be based on the interests, objections or other position of any individual Certificateholder.**

## IV. This Notice is a Summary; Other Sources of Information.

This Notice summarizes the Proposed RMBS Trust Settlement Agreements, the 9019 Motion and the Order and is not a complete statement of those documents, of relevant law or of relevant legal procedures. The RMBS Trustees do not intend to send any further notices with respect to the matters addressed herein, and Certificateholders and other potentially interested persons are urged to carefully review the Proposed RMBS Trust Settlement Agreements, the 9019 Motion and the Order and other pleadings that have been filed, and that subsequently may be filed, in the Chapter 11 Cases, and to consult with their own legal and financial advisors. The Proposed RMBS Trust Settlement Agreements and other related, material documents, including certain orders entered by the Court and other information relevant to the Proposed RMBS Trust Settlement Agreements, are available at **http://www.rescaprmbssettlement.com**, which will be updated each time additional, related, material papers are filed or orders are entered by the Court. You may also obtain any documents filed with the Court in the Chapter 11 Cases by logging on to PACER at https://www.uscourts.gov or by visiting ResCap's claims agent website at http://www.kccllc.net/rescap. If you have any questions, you may call (866) 241-7538 in the United States, +1 (202) 470-4565 outside the United States or send an email to questions@rescaprmbssettlement.com.

Inquiries regarding the matters set forth in this Notice may be directed to questions@rescaprmbssettlement.com or, with respect to any particular Settlement Trust, to the RMBS Trustee for such Settlement Trust using the "RMBS Trustee Contact Information" for such RMBS Trustee at **http://www.rescaprmbssettlement.com**.

## V. Other Matters.

Certificateholders and other persons interested in the Settlement Trusts should not rely on the RMBS Trustees, or on counsel or other advisors retained by the RMBS Trustees, as their sole source of information.

Please note that the foregoing is not intended and should not be construed as investment, accounting, financial, legal or tax advice by or on behalf of the RMBS Trustees, or their directors, officers, affiliates, agents, attorneys or employees. Each person or entity receiving this Notice should seek the advice of its own advisers in respect of the matters set forth herein.

Please be further advised that each of the RMBS Trustees reserves all of the rights, powers, claims and remedies available to it under the Governing Agreements and applicable law. No delay or forbearance by an RMBS Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Governing Agreements, other documentation relating thereto or under applicable law, shall impair any such right or remedy or constitute a waiver thereof or an acquiescence therein.

Each of the RMBS Trustees expressly reserve all rights in respect of each applicable Governing Agreement, including without limitation its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by such RMBS Trustee in performing its duties, indemnities owing or to become owing to such RMBS Trustee, compensation for such RMBS Trustee's time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with any applicable Governing Agreement at the request or direction of any Certificateholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

Please be advised that with respect to any particular inquiry from individual Certificateholders, an RMBS Trustee may conclude that a specific response to such inquiry is not consistent with requirements under applicable law and regulation of equal and full dissemination of information to all Certificateholders.

THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, U.S. BANK NATIONAL ASSOCIATION OR WELLS FARGO BANK, N.A., severally, as trustees or indenture trustees of the Settlement Trusts

B5

The New York Times
620 8TH AVENUE • NEW YORK, NY 10018

## CERTIFICATION OF PUBLICATION

OCT 0 2 2012 20

I, Alice Weber, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

OCT 0 2 2012 20

Alice Weber

Approved:

Maria Pannullo

THIS CERTIFICATION NOT VALID WITHOUT NYT RAISED SEAL

THE NEW YORK TIMES, TUESDAY, OCTOBER 2, 2012 N B5

# ...ARDING A PROPOSED SETTLEMENT BETWEEN CERTAIN SETTLEMENT TRUSTS ...ATIONS SPONSORED BY RESIDENTIAL CAPITAL, LLC, AND CERTAIN OF ITS ...ING GMAC MORTGAGE, LLC AND RESIDENTIAL FUNDING COMPANY, LLC

...UST COMPANY, N.A.,
...OMPANY,
...MERICAS,
...ND.

...TRUSTEES OR INDENTURE TRUSTEES (COLLECTIVELY, THE "RMBS TRUSTEES" AND EACH, AN "RMBS ...RTIFICATES, NOTES OR OTHER SECURITIES (THE "CERTIFICATEHOLDERS") UNDER THE RESIDENTIAL ...ION TRUSTS IDENTIFIED IN EXHIBIT A, AVAILABLE AT WWW.RESCAPRMBSSETTLEMENT.COM ...TRUSTS" AND EACH A "SETTLEMENT TRUST").

...T TIME-SENSITIVE INFORMATION FOR CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY ...TRUSTS. ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE, ...EXPEDITE THE RE-TRANSMITTAL TO CERTIFICATEHOLDERS IN A TIMELY MANNER.

...delivered to

...BS Trustees ...uding Series ...d Servicing ... Agreements ...verning the ... not defined ...hem in the

...ied by each ...apital, LLC, ...(collectively, ...r 11 of the ...y Code") in ...hern District ...*apital, LLC*, ...lectively, the

and (v) any loan seller that either sold loans to ResCap or Ally Financial Inc. that were sold or transferred to the Accepting Trusts (collectively, the "Proposed Settled Claims").

**The acceptance of the Proposed RMBS Trust Settlement Agreements by an Accepting Trust would not, at present, entitle such Accepting Trust to receive any specific amount of money or other consideration, at any specific time, as a distribution from the ResCap debtor entities' bankruptcy estates.** Rather, the Settlement Claims Allowance would entitle the Accepting Trust to receive such consideration as is eventually afforded to the claims of general unsecured creditors in the Chapter 11 Cases that are classified in the same manner as the claims of the Accepting Trusts. Accordingly, at present, Certificateholders cannot assume that acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement will result in any particular recovery with respect to the Settlement Claims Allowance of such Settlement Trust. Acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement would, however, resolve disputes with ResCap and other parties in interest to the Chapter 11 Cases as to the amount and general

- the RMBS Trustees' objections or responses to the 9019 Motion, if any, must be served by **October 15, 2012**; and
- any reply to objections to the 9019 Motion must be filed by **October 29, 2012**.

(Further information regarding additional deadlines regarding the 9019 Motion is contained in the Order which can be obtained as explained in Part IV below.)

**If the Court approves the 9019 Motion and an RMBS Trustee agrees to accept the settlement under the Proposed RMBS Trust Settlement Agreements on behalf of an Accepting Trust, all Certificateholders under the Accepting Trust will be bound by the Proposed RMBS Trust Settlement Agreements and the releases contained therein, whether or not the Certificateholder appeared in the Hearing or submitted an objection to the 9019 Motion or the Proposed RMBS Trust Settlement Agreements. Accordingly, any Certificateholder that has concerns about or might object to the Proposed RMBS Trust Settlement Agreements should consider with their legal advisors whether to participate in the Court proceedings pursuant to any of the means described in the preceding**

# AFFIDAVIT

**STATE OF TEXAS )**
**)**
**CITY AND COUNTY OF DALLAS)**

I, Albert Fox, being duly sworn, depose and say that I am the Advertising Clerk of the Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general circulation throughout the United States, Asia and Europe, and that the notice attached to this Affidavit has been regularly published in THE WALL STREET JOURNAL for Global distribution for

1 insertion(s) on the following date(s):

OCT-08-2012;

ADVERTISER: RESIDENTIAL CAPITAL, LLC;

and that the foregoing statements are true and correct to the best of my knowledge.

Albert Fox

Sworn to before me this
8 day of October 2012

Donna Hester
Notary Public

DONNA HESTER
Notary Public, State of Texas
My Commission Expires
October 29, 2014
NOTARY PUBLIC
STATE OF TEXAS

# TIME SENSITIVE NOTICE REGARDING A PROPOSED SETTLEMENT BETWEEN CERTAIN SETTLEMENT TRUSTS RELATED TO SECURITIZATIONS SPONSORED BY RESIDENTIAL CAPITAL, LLC, AND CERTAIN OF ITS SUBSIDIARIES, INCLUDING GMAC MORTGAGE, LLC AND RESIDENTIAL FUNDING COMPANY, LLC

NOTICE IS HEREBY GIVEN BY:

THE BANK OF NEW YORK MELLON,
THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,
DEUTSCHE BANK NATIONAL TRUST COMPANY,
DEUTSCHE BANK TRUST COMPANY AMERICAS,
U.S. BANK NATIONAL ASSOCIATION AND
WELLS FARGO BANK, N.A.

IN THEIR SEVERAL CAPACITIES AS TRUSTEES OR INDENTURE TRUSTEES (COLLECTIVELY, THE "RMBS TRUSTEES" AND EACH, AN "RMBS TRUSTEE"), TO THE HOLDERS OF CERTIFICATES, NOTES OR OTHER SECURITIES (THE "CERTIFICATEHOLDERS") UNDER THE RESIDENTIAL MORTGAGE-BACKED SECURITIZATION TRUSTS IDENTIFIED IN EXHIBIT A, AVAILABLE AT WWW.RESCAPRMBSSETTLEMENT.COM (COLLECTIVELY, THE "SETTLEMENT TRUSTS" AND EACH A "SETTLEMENT TRUST").

THIS NOTICE CONTAINS IMPORTANT TIME-SENSITIVE INFORMATION FOR CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY INTERESTED IN THE SETTLEMENT TRUSTS. ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE, AS APPLICABLE, ARE REQUESTED TO EXPEDITE THE RE-TRANSMITTAL TO CERTIFICATEHOLDERS IN A TIMELY MANNER.

Dated: August 22, 2012 (date on which notice was delivered to registered Certificateholders)

This notice (the "Notice") is given to you by the RMBS Trustees under the Pooling and Servicing Agreements (including Series Supplements and Standard Terms of Pooling and Servicing Agreements), Indentures and related Servicing Agreements (collectively, the "Governing Agreements") governing the Settlement Trusts. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Governing Agreements.

## I. Background.

As Certificateholders have previously been notified by each RMBS Trustee, on May 14, 2012, Residential Capital, LLC, and certain of its direct and indirect subsidiaries (collectively, "ResCap") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") (*In re Residential Capital, LLC*, Case No. 12-12020 (MG) and related cases) (collectively, the "Chapter 11 Cases").

THIS NOTICE CONCERNS A PROPOSED SETTLEMENT OF CLAIMS OF THE SETTLEMENT TRUSTS AGAINST RESCAP IN THE CHAPTER 11 CASES. THESE CLAIMS INCLUDE, WITHOUT LIMITATION, CERTAIN CLAIMS RELATING TO THE ORIGINATION AND SALE BY RESCAP OF MORTGAGE LOANS AND TO CERTAIN ASPECTS OF RESCAP'S SERVICING OF THOSE MORTGAGE LOANS. THE PROPOSED SETTLEMENT WOULD, IF APPROVED BY THE COURT AND ACCEPTED BY THE RMBS TRUSTEE OF A SETTLEMENT TRUST, BIND THAT SETTLEMENT TRUST AND RELATED CERTIFICATEHOLDERS. ACCORDINGLY, THE PROPOSED SETTLEMENT AND RELATED COURT APPROVAL PROCEDURES MATERIALLY AFFECT THE INTERESTS OF THE CERTIFICATEHOLDERS, AND THE RMBS TRUSTEES RESPECTFULLY REQUEST THAT ALL CERTIFICATEHOLDERS AND OTHER NOTICE RECIPIENTS READ THIS NOTICE AND RELATED MATERIALS CAREFULLY IN CONSULTATION WITH THEIR LEGAL AND FINANCIAL ADVISORS.

## II. The Proposed Settlement.

On May 13, 2012, ResCap entered into separate agreements with two sets of Certificateholders (collectively, the "Institutional Investors"), each of which was titled an "RMBS Trust Settlement Agreement" (collectively, the "Original Proposed RMBS Trust Settlement Agreements"). On August 15, 2012, the Original Proposed RMBS Trust Settlement Agreements were amended (the "Amended Proposed RMBS Trust Settlement Agreements," and together with the Original Proposed RMBS Trust Settlement Agreements, the "Proposed RMBS Trust Settlement Agreements"). (Copies of these documents can be obtained as explained in Part IV below.) The Proposed RMBS Trust Settlement Agreements seek to, among other things, settle the claims of the Settlement Trusts concerning ResCap's alleged breaches of representations and warranties in the Governing Agreements and certain alleged violations of ResCap's servicing obligations. The Proposed RMBS Trust Settlement Agreements are subject to the approval of the Court and the settlements set forth therein cannot be offered to or accepted by the Settlement Trusts until and unless such approval is granted by the Court (see Part III below).

The Proposed RMBS Trust Settlement Agreements provide that in settlement of the Proposed Settled Claims (as defined below) against ResCap, each Settlement Trust that accepts the settlement (an "Accepting Trust") will be allowed a general unsecured claim against the estates of certain ResCap entities in the Chapter 11 Cases. If all Settlement Trusts become Accepting Trusts, such allowed claims will aggregate $8,700,000,000 (US$8.7 billion), less an allocation of the allowed claims for the payment of fees and expenses of the attorneys for the Institutional Investors as set forth in the Proposed RMBS Trust Settlement Agreements (the "Settlement Claims Allowance"). The Proposed RMBS Trust Settlement Agreements further provide that each Accepting Trust shall have the option (the "HoldCo Option"), at any time prior to confirmation of a chapter 11 plan in the Chapter 11 Cases (a "Plan"), to elect to receive up to twenty percent of that Accepting Trust's Settlement Claims Allowance as an allowed general unsecured claim against the estate of Residential Capital, LLC ("HoldCo"), in lieu of a general unsecured claim against the estates of certain of its direct and indirect subsidiaries thereby reducing each Accepting Trust's allowed general unsecured claim against such estates to the extent each Accepting Trust exercises the HoldCo Option. **The determination of the Settlement Claims Allowance of each Accepting Trust (*i.e.*, each Accepting Trust's share of the aggregate Settlement Claims Allowance) is subject to an allocation procedure set forth in the Proposed RMBS Trust Settlement Agreements and all recipients of this Notice are referred to such agreements for the details of that procedure.**

The Proposed RMBS Trust Settlement Agreements allow each related Settlement Trust to accept or reject the settlement offer independently without affecting the rights of any other Settlement Trust (including the share of the Settlement Claims Allowance to which any other Settlement Trust is entitled if it becomes an Accepting Trust). If approved by the Court, the Proposed RMBS Trust Settlement Agreements would affect the rights and interests of all Certificateholders, and their successors in-interests and assigns, in any Accepting Trusts. The affected rights and interests will include, among other things, the release of claims against Rescap on behalf of the RMBS Trustee, the Accepting Trusts and all Certificateholders in the Accepting Trusts, arising out of or relating to (i) the origination and sale of mortgages to the Accepting Trusts, including representations and warranties made with respect to those mortgages and any mortgage repurchase obligations; (ii) documentation of the mortgages in the Accepting Trusts, with certain exceptions; (iii) servicing of the mortgages in the Accepting Trusts, with certain exceptions; (iv) certain setoff or recoupment under the Governing Agreements against ResCap; and (v) any loan seller that either sold loans to ResCap or Ally Financial Inc. that were sold or transferred to the Accepting Trusts (collectively, the "Proposed Settled Claims").

The acceptance of the Proposed RMBS Trust Settlement Agreements by an Accepting Trust would not, at present, entitle such Accepting Trust to receive any specific amount of money or other consideration, at any specific time, as a distribution from the ResCap debtor entities' bankruptcy estates. Rather, the Settlement Claims Allowance would entitle the Accepting Trust to receive such consideration as is eventually afforded to the claims of general unsecured creditors in the Chapter 11 Cases that are classified in the same manner as the claims of the Accepting Trusts. Accordingly, at present, Certificateholders cannot assume that acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement will result in any particular recovery with respect to the Settlement Claims Allowance of such Settlement Trust. Acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement would, however, resolve disputes with ResCap and other parties in interest to the Chapter 11 Cases as to the amount and general unsecured claim status of any claims such Settlement Trust may have with respect to the Proposed Settled Claims.

The RMBS Trustees have jointly engaged Duff & Phelps, LLC as their primary advisor with respect to their evaluation of the Proposed RMBS Trust Settlement Agreements and with respect to certain other matters in the Chapter 11 Cases. Each RMBS Trustee has also engaged independent counsel to advise it with respect to relevant legal matters affecting the particular Settlement Trusts that they administer. **None of the RMBS Trustees has made a determination, as of the date of this Notice, as to the reasonableness of, or the advisability of entering into, the Proposed RMBS Trust Settlement Agreements on behalf of any Settlement Trust. None of the RMBS Trustees anticipates making its decision as to whether or not to accept the proposed settlement on behalf of any Settlement Trust until and unless the proposed settlement has been approved by the Court (see Part III below). Although the RMBS Trustees are cooperating with each other in their evaluation of the proposed settlement, each RMBS Trustee will make its own decision as to whether or not to accept the proposed settlement on behalf of any Settlement Trust, and for each Accepting Trust, whether, and in what amount, to elect to exercise the HoldCo Option, on the basis of information available to that RMBS Trustee at the time of such decision.**

**Settlement Trusts that do not accept the Proposed RMBS Trust Settlement Agreements and do not become Accepting Trusts will be subject to the procedures of the Bankruptcy Code and the Court (including the scheduling order for the Chapter 11 Cases entered by the Court) relating to the assertion and allowance of claims, including, but not limited to, ResCap's right to object to the claims.**

## III. ResCap's Motion for Approval of the Proposed RMBS Trust Settlement Agreements by the Court; The Rights of Certificateholders and Other Parties to Appear and Object.

The Proposed RMBS Trust Settlement Agreements are agreements between ResCap and the Institutional Investors and will not become effective or binding as to any Settlement Trust until and unless both (a) ResCap obtains Court approval to make the settlement offer to the Settlement Trusts and (b) such Settlement Trust, acting through its respective RMBS Trustee, accepts the Proposed RMBS Trust Settlement Agreements. Accordingly, on June 11, 2012, ResCap filed a motion with the Court seeking Court approval of the Proposed RMBS Trust Settlement Agreements and of ResCap's offer of the settlement proposed thereunder to each of the RMBS Trustees on behalf of the Settlement Trusts (the "Original 9019 Motion"). On August 15, 2012, ResCap filed a Supplement to the 9019 Motion (together with the Original 9019 Motion, the "9019 Motion").

Among other things, the 9019 Motion seeks a finding by the Court that the settlements proposed under the Proposed RMBS Trust Settlement Agreements are fair and reasonable to, and in the best interest of, all interested parties, including but not limited to, ResCap's creditors, the Institutional Investors, the Certificateholders for each Accepting Trust and each such Accepting Trust, the RMBS Trustees, and certain other persons, as a compromise of the claims asserted by each Accepting Trust against ResCap.

On July 31, 2012, the Court entered an order setting forth a schedule of deadlines and the date of a hearing related to the 9019 Motion and the RMBS Trustees' acceptance or rejection of the settlement under the Proposed RMBS Trust Settlement Agreements (the "Order"). **Pursuant to the Order, the Court will commence an evidentiary hearing on the 9019 Motion (the "Hearing") on November 5, 2012.** If the Court grants the 9019 Motion, the RMBS Trustees must accept or reject the Proposed RMBS Trust Settlement Agreements on behalf of any Settlement Trust on or before the later of (a) November 12, 2012 or (b) five business days after the entry of an order granting the 9019 Motion. The RMBS Trustees have until the confirmation of a Plan to elect to exercise the HoldCo Option on behalf of each Accepting Trust.

**[NOTE: Dates set forth in this Notice and in the Order may have changed between the date that this Notice was written and the date of publication or reading and are subject to subsequent change. Accordingly, Certificateholders and other persons interested in the Settlement Trusts should refer to the sources of information described in Part IV below for up-to-date scheduling information.]**

**Any Certificateholder or other person potentially having an interest in the Settlement Trusts may object to the 9019 Motion or any aspect of the Proposed RMBS Trust Settlement Agreements, may seek discovery regarding the 9019 Motion or the Proposed RMBS Trust Settlement Agreements, and may participate in the Hearing.** The Court has directed that:

- any objections to the 9019 Motion, along with any supporting expert reports, must be filed with the Court by **October 5, 2012;**
- the RMBS Trustees' objections or responses to the 9019 Motion, if any, must be served by **October 15, 2012;** and
- any reply to objections to the 9019 Motion must be filed by **October 29, 2012.**

(Further information regarding additional deadlines regarding the 9019 Motion is contained in the Order which can be obtained as explained in Part IV below.)

**If the Court approves the 9019 Motion and an RMBS Trustee agrees to accept the settlement under the Proposed RMBS Trust Settlement Agreements on behalf of an Accepting Trust, all Certificateholders under the Accepting Trust will be bound by the Proposed RMBS Trust Settlement Agreements and the releases contained therein, whether or not the Certificateholder appeared in the Hearing or submitted an objection to the 9019 Motion or the Proposed RMBS Trust Settlement Agreements. Accordingly, any Certificateholder that has concerns about or might object to the Proposed RMBS Trust Settlement Agreements should consider with their legal advisors whether to participate in the Court proceedings pursuant to any of the means described in the preceding paragraph. There will likely be no forum other than such Court proceedings in which a Certificateholder's objection to the Proposed RMBS Trust Settlement Agreements will be able to be heard. If the Court approves the Proposed RMBS Trust Settlement Agreements, the decision of the applicable RMBS Trustee to accept or reject the proposed settlement on behalf of an individual Settlement Trust, and to exercise the HoldCo Option on behalf of an Accepting Trust, will be informed by each RMBS Trustee's analysis of the settlement taking into account interests of all of its respective Certificateholders and will not necessarily be based on the interests, objections or other position of any individual Certificateholder.**

## IV. This Notice is a Summary; Other Sources of Information.

This Notice summarizes the Proposed RMBS Trust Settlement Agreements, the 9019 Motion and the Order and is not a complete statement of those documents, of relevant law or of relevant legal procedures. The RMBS Trustees do not intend to send any further notices with respect to the matters addressed herein, and Certificateholders and other potentially interested persons are urged to carefully review the Proposed RMBS Trust Settlement Agreements, the 9019 Motion and the Order and other pleadings that have been filed, and that subsequently may be filed, in the Chapter 11 Cases, and to consult with their own legal and financial advisors. The Proposed RMBS Trust Settlement Agreements and other related, material documents, including certain orders entered by the Court and other information relevant to the Proposed RMBS Trust Settlement Agreements, are available at http://www.rescaprmbssettlement.com, which will be updated each time additional, related, material papers are filed or orders are entered by the Court. You may also obtain any documents filed with the Court in the Chapter 11 Cases by logging on to PACER at https://www.uscourts.gov or by visiting ResCap's claims agent website at http://www.kccllc.net/rescap. If you have any questions, you may call (866) 241-7538 in the United States, +1 (202) 470-4565 outside the United States or send an email to questions@rescaprmbssettlement.com.

Inquiries regarding the matters set forth in this Notice may be directed to questions@rescaprmbssettlement.com or, with respect to any particular Settlement Trust, to the RMBS Trustee for such Settlement Trust using the "RMBS Trustee Contact Information" for such RMBS Trustee at http://www.rescaprmbssettlement.com.

## V. Other Matters.

Certificateholders and other persons interested in the Settlement Trusts should not rely on the RMBS Trustees, or on counsel or other advisors retained by the RMBS Trustees, as their sole source of information.

Please note that the foregoing is not intended and should not be construed as investment, accounting, financial, legal or tax advice by or on behalf of the RMBS Trustees, or their directors, officers, affiliates, agents, attorneys or employees. Each person or entity receiving this Notice should seek the advice of its own advisers in respect of the matters set forth herein.

Please be further advised that each of the RMBS Trustees reserves all of the rights, powers, claims and remedies available to it under the Governing Agreements and applicable law. No delay or forbearance by an RMBS Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Governing Agreements, other documentation relating thereto or under applicable law shall impair any such right or remedy or constitute a waiver thereof or an acquiescence therein.

Each of the RMBS Trustees expressly reserve all rights in respect of each applicable Governing Agreement, including without limitation its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by such RMBS Trustee in performing its duties, indemnities owing or to become owing to such RMBS Trustee, compensation for such RMBS Trustee's time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with any applicable Governing Agreement at the request or direction of any Certificateholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

Please be advised that with respect to any particular inquiry from individual Certificateholders, an RMBS Trustee may conclude that a specific response to such inquiry is not consistent with requirements under applicable law and regulation of equal and full dissemination of information to all Certificateholders.

THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, U.S BANK NATIONAL ASSOCIATION OR WELLS FARGO BANK, N.A., severally, as trustees or indenture trustees of the Settlement Trusts

WORLD NEWS

# West Seizes On Iran's Currency Woes

*U.S., Europe Prepare Sanctions to Accelerate Decline of Rial; Officials Seek to Choke Off Central Bank*

By Jay Solomon And Laurence Norman

WASHINGTON—The U.S. and Europe are working on new coordinated measures intended to accelerate the recent plunge of Iran's currency and drain its foreign-exchange reserves, according to officials from the Obama administration, U.S. Congress and European Union.

The first salvos in this stepped-up sanctions campaign are expected at a meeting of EU foreign ministers on Oct. 15, including a ban on Iranian natural-gas exports and tighter restrictions on transactions with Tehran's central bank, European officials said.

A number of additional banks are also expected to be targeted, in the continuing effort to press Supreme Leader Ayatollah Ali Khamenei to curb his country's nuclear program.

The U.S. and EU are also considering imposing a de facto trade embargo early next year by moving to block all export and import transactions through Iran's banking system—which could further choke off Tehran's access to foreign currency, U.S. and European officials said.

To that end, U.S. lawmakers are drafting legislation that would require the White House to block all international dealings with Iran's central bank, while also seeking to enforce a ban on all outside insuring of Iranian companies. There is also a legislative push to block investment in Iran's energy sector by closing loopholes in existing sanctions.

The EU could follow up on implementing these U.S. measures, just as it backed the White House's moves to impede Iran's oil trade this year, officials said.

"You could see a move for a total embargo," said a senior European official involved in the sanctions debate. "This could fall in line with what Congress is thinking."

A nearly 40% drop in the Iranian rial's value against the dollar since Sept. 24 has lifted confidence in the U.S. and Europe that Western sanctions are starting to significantly erode Tehran's finances, senior U.S. and European officials said.

The rial's fall, which traders blame in part on mismanagement by Iranian authorities, is also seen to be fueling splits among Tehran's political elites over who is to blame.

Iranian lawmakers Sunday attacked President Mahmoud Ahmadinejad over the rial's decline—questioning a subsidy reform the president has championed and demanding he account for his handling of the economy—as the currency crisis threatens to morph into a broader political showdown.

A centerpiece of the president's policies, the so-called "targeted subsidy plan"—which was expected to save about $100 billion a year when first proposed—has been lauded by the International Monetary Fund as one of the few meaningful attempts in the region to cut back on massive government subsidies for everything from food to fuel.

The first phase helped push up prices for consumers as it lowered government costs, and the program has been blamed for at least some of the country's high inflation rate. A majority of lawmakers in Iran's Parliament voted in favor of an urgent debate over whether to proceed with the second phase of the subsidy reform. On Sunday, 179 members of Parliament out of 240 present voted for an urgent review of the plan because of the rial's recent plunge, according to the Iran Labour News Agency.

In an indication that the turmoil may not be over, many money changers refused to trade on Sunday, either out of fear of arrest or because a refusal to comply with a government order imposing a fixed dollar rate. President Ahmadinejad has blamed the decline on speculators and on sanctions.

It is unclear if the financial panic will force Tehran to make concessions on its nuclear program—the ultimate aim of the West's sanctions campaign. But the rial's plunge is undercutting views held by some in the U.S. and Europe that Tehran's oil wealth could make it immune from financial pressure, U.S. and European officials working on Iran said.

"There has been the perception that Iran is unmovable because of its oil resources," said a European official. "This perception is quickly shifting."

Iranian oil exports have fallen by more than 50% this year, according to Iranian officials and independent shipping trackers. U.S. and European officials said their moves to cut off those exports have been aided by ramped-up production in the U.S., Saudi Arabia, Iraq, Libya and other countries, which has helped keep global energy prices stable.

U.S. officials and analysts see Washington and its allies now in a race with Tehran to see what is achieved first—a balance-of-payments crisis in Iran or its acquisition of a nuclear-weapons capability. Tehran says its nuclear program is for peaceful purposes.

"The currency is dropping like a stone, there are riots, and Obama has harangued [Israeli leader Benjamin] Netanyahu not to bomb because there is time to economically cripple Iran," said Mark Dubowitz of the Foundation for Defense of Democracies, a conservative think tank that advises U.S. lawmakers on sanctions policy. "So if the economic cripple-date occurs before the nuclear red line, then great, economic warfare may work."

U.S. and European officials believe Western sanctions and the EU's oil embargo, instituted in July, are costing Tehran $15 billion in lost energy revenue every quarter. This, in turn, is helping to force down the government's foreign-exchange reserves, which were estimated to be between $90 billion and $110 billion at the start of the year.

Some member states still have concerns about taking steps that could disproportionately harm the Iranian population. There have been reports of food and medicine shortages in Iran in recent days, fueled by the weakening of the rial and dwindling imports.

Secretary of State Hillary Clinton last week sought to deflect charges that sanctions are harming the Iranian people, saying Tehran's decisions were responsible for any economic hardships. "They have made their own government decisions—having nothing to do with the sanctions—that have had an impact on the economic conditions inside of the country," Mrs. Clinton said. "Of course, the sanctions have had an impact as well, but those could be remedied in short order if the Iranian government were willing to work with...the international community in a sincere manner."

*—Benoît Faucon contributed to this article.*

A meeting Thursday in Tehran attended by President Ahmadinejad. Iran's leaders are struggling with the currency's slide.

**Squeezed**

Iran's crude-oil exports, in millions of barrels a day

2.0 1.5 1.0 0.5 0
'11 '12
September 1 million barrels

Sources: Iranian officials; independent shipping trackers

Media Sponsor THE WALL STREET JOURNAL.

asia

7-9 November, 2012
Hong Kong Convention & Exhibition Centre

Where the world's property leaders converge in Asia Pacific

REGISTER NOW AT www.mipimasia.com
CONTACT US AT +852 2965 1679

Discover the new MIPIM Asia Property Summit, a unique 3-in-1 event: Investment Summit, Retail Real Estate Summit and Sustainable Property Expo

- 2,000 Participants
- 450 Investors, End-Users and Hotel Groups
- 40 Dedicated conference sessions
- 200 Retailers
- 115 Exhibiting companies
- 125 High profile speakers

MEET SOME OF THIS YEAR'S TOP INDUSTRY SPEAKERS:
INVESTMENT SUMMIT RETAIL SUMMIT

For more information, please contact:
Christine Lam - Senior Regional Director of Sales - christine.lam@reedmidem.com
Julien Saussez - MIPIM Asia Sales Director - julien.saussez@reedmidem.com

## TIME SENSITIVE NOTICE REGARDING A PROPOSED SETTLEMENT BETWEEN CERTAIN SETTLEMENT TRUSTS RELATED TO SECURITIZATIONS SPONSORED BY RESIDENTIAL CAPITAL, LLC, AND CERTAIN OF ITS SUBSIDIARIES, INCLUDING GMAC MORTGAGE, LLC AND RESIDENTIAL FUNDING COMPANY, LLC

NOTICE IS HEREBY GIVEN BY:

THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, U.S. BANK NATIONAL ASSOCIATION AND WELLS FARGO BANK, N.A.

IN THEIR SEVERAL CAPACITIES AS TRUSTEES OR INDENTURE TRUSTEES (COLLECTIVELY, THE "RMBS TRUSTEES" AND EACH, AN "RMBS TRUSTEE"), TO THE HOLDERS OF CERTIFICATES, NOTES OR OTHER SECURITIES (THE "CERTIFICATEHOLDERS") UNDER THE RESIDENTIAL MORTGAGE-BACKED SECURITIZATION TRUSTS IDENTIFIED IN EXHIBIT A, AVAILABLE AT WWW.RESCAPRMBSSETTLEMENT.COM (COLLECTIVELY, THE "SETTLEMENT TRUSTS" AND EACH A "SETTLEMENT TRUST").

THIS NOTICE CONTAINS IMPORTANT TIME-SENSITIVE INFORMATION FOR CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY INTERESTED IN THE SETTLEMENT TRUSTS. ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE, AS APPLICABLE, ARE REQUESTED TO EXPEDITE THE RE-TRANSMITTAL TO CERTIFICATEHOLDERS IN A TIMELY MANNER.

Dated: August 22, 2012 (date on which notice was delivered to registered Certificateholders)

This notice (the "Notice") is given to you by the RMBS Trustees under the Pooling and Servicing Agreements (including Series Supplements and Standard Terms of Pooling and Servicing Agreements), Indentures and related Servicing Agreements (collectively, the "Governing Agreements") governing the Settlement Trusts. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Governing Agreements.

### I. Background.

As Certificateholders have previously been notified by each RMBS Trustee, on May 14, 2012, Residential Capital, LLC, and certain of its direct and indirect subsidiaries (collectively, "ResCap") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") (*In re Residential Capital, LLC*, Case No. 12-12020 (MG)) and related cases (collectively the "Chapter 11 Cases").

THIS NOTICE CONCERNS A PROPOSED SETTLEMENT OF CLAIMS OF THE SETTLEMENT TRUSTS AGAINST RESCAP IN THE CHAPTER 11 CASES. THESE CLAIMS INCLUDE, WITHOUT LIMITATION, CERTAIN CLAIMS RELATING TO THE ORIGINATION AND SALE BY RESCAP OF MORTGAGE LOANS AND TO CERTAIN ASPECTS OF RESCAP'S SERVICING OF THOSE MORTGAGE LOANS. THE PROPOSED SETTLEMENT WOULD, IF APPROVED BY THE COURT AND ACCEPTED BY THE RMBS TRUSTEE OF A SETTLEMENT TRUST, BIND THAT SETTLEMENT TRUST AND RELATED CERTIFICATEHOLDERS. ACCORDINGLY, THE PROPOSED SETTLEMENT AND RELATED COURT APPROVAL PROCEDURES MATERIALLY AFFECT THE INTERESTS OF THE CERTIFICATEHOLDERS, AND THE RMBS TRUSTEES RESPECTFULLY REQUEST THAT ALL CERTIFICATEHOLDERS AND OTHER NOTICE RECIPIENTS READ THIS NOTICE AND RELATED MATERIALS CAREFULLY IN CONSULTATION WITH THEIR LEGAL AND FINANCIAL ADVISORS.

### II. The Proposed Settlement.

On May 13, 2012, ResCap entered into separate agreements with two sets of Certificateholders (collectively, the "Institutional Investors"), each of which was titled an "RMBS Trust Settlement Agreement" (collectively, the "Original Proposed RMBS Trust Settlement Agreements"). On August 15, 2012, the Original Proposed RMBS Trust Settlement Agreements were amended (the "Amended Proposed RMBS Trust Settlement Agreements" and together with the Original Proposed RMBS Trust Settlement Agreements, the "Proposed RMBS Trust Settlement Agreements"). (Copies of these documents can be obtained as explained in Part IV below.) The Proposed RMBS Trust Settlement Agreements seek to, among other things, settle the claims of the Settlement Trusts concerning ResCap's alleged breaches of representations and warranties in the Governing Agreements and certain alleged violations of ResCap's servicing obligations. The Proposed RMBS Trust Settlement Agreements are subject to the approval of the Court and the settlements set forth therein cannot be offered to or accepted by the Settlement Trusts until and unless such approval is granted by the Court (see Part III below).

The Proposed RMBS Trust Settlement Agreements provide that in settlement of the Proposed Settled Claims (as defined below) against ResCap, each Settlement Trust that accepts the settlement (an "Accepting Trust") will be allowed a general unsecured claim against the estates of certain ResCap entities in the Chapter 11 Cases. If all Settlement Trusts become Accepting Trusts, such allowed claims will aggregate $8,700,000,000 (US$8.7 billion) less an allocation of the allowed claims for the payment of fees and expenses of the attorneys for the Institutional Investors as set forth in the Proposed RMBS Trust Settlement Agreements (the "Settlement Claims Allowance"). The Proposed RMBS Trust Settlement Agreements further provide that each Accepting Trust shall have the option (the "HoldCo Option"), at any time prior to confirmation of a chapter 11 plan in the Chapter 11 Cases (a "Plan"), to elect to receive up to twenty percent of that Accepting Trust's Settlement Claims Allowance as an allowed general unsecured claim against the estate of Residential Capital, LLC ("HoldCo"), in lieu of a general unsecured claim against the estates of certain of its direct and indirect subsidiaries thereby reducing each Accepting Trust's allowed general unsecured claims against such estates to the extent each Accepting Trust exercises the HoldCo Option. The determination of the Settlement Claims Allowance of each Accepting Trust (i.e., such Accepting Trust's share of the aggregate Settlement Claims Allowance) is subject to an allocation procedure set forth in the Proposed RMBS Trust Settlement Agreements and all recipients of this Notice are referred to such agreements for the details of that procedure.

The Proposed RMBS Trust Settlement Agreements allow each related Settlement Trust to accept or reject the settlement offer independently without affecting the rights of any other Settlement Trust (including the share of the Settlement Claims Allowance to which any other Settlement Trust is entitled if it becomes an Accepting Trust). If approved by the Court, the Proposed RMBS Trust Settlement Agreements would affect the rights and interests of all Certificateholders, and their successors-in-interests and assigns, in any Accepting Trusts. The affected rights and interests will include, among other things, the release of claims against Rescap on behalf of the RMBS Trustee, the Accepting Trusts and all Certificateholders in the Accepting Trusts, arising out of or relating to (i) the origination and sale of mortgages to the Accepting Trusts, including representations and warranties made with respect to those mortgages and any mortgage repurchase obligations; (ii) documentation of the mortgages in the Accepting Trusts, with certain exceptions; (iii) servicing of the mortgages in the Accepting Trusts, with certain exceptions; (iv) certain setoff or recoupment under the Governing Agreements against ResCap; and (v) any loan seller that either sold loans to ResCap or Ally Financial Inc. that were sold or transferred to the Accepting Trusts (collectively the "Proposed Settled Claims").

The acceptance of the Proposed RMBS Trust Settlement Agreements by an Accepting Trust would not, at present, entitle such Accepting Trust to receive any specific amount of money or other consideration, at any specific time, as a distribution from the ResCap debtor entities' bankruptcy estates. Rather, the Settlement Claims Allowance would entitle the Accepting Trust to receive such consideration as is eventually afforded to the claims of general unsecured creditors in the Chapter 11 Cases that are classified in the same manner as the claims of the Accepting Trusts. Accordingly, at present, Certificateholders cannot assume that acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement will result in any particular recovery with respect to the Settlement Claims Allowance of such Settlement Trust. Acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement would, however, resolve disputes with ResCap and other parties in interest to the Chapter 11 Cases as to the amount and general unsecured claim status of any claims such Settlement Trust may have with respect to the Proposed Settled Claims.

The RMBS Trustees have jointly engaged Duff & Phelps, LLC as their primary advisor with respect to their evaluation of the Proposed RMBS Trust Settlement Agreements and with respect to certain other matters in the Chapter 11 Cases. Each RMBS Trustee has also engaged independent counsel to advise it with respect to relevant legal matters affecting the particular Settlement Trusts that they administer. None of the RMBS Trustees has made a determination, as of the date of this Notice, as to the reasonableness of, or the advisability of entering into, the Proposed RMBS Trust Settlement Agreements on behalf of any Settlement Trust. None of the RMBS Trustees anticipates making its decision as to whether or not to accept the proposed settlement on behalf of any Settlement Trust until and unless the proposed settlement has been approved by the Court (see Part III below). Although the RMBS Trustees are cooperating with each other in their evaluation of the proposed settlement, each RMBS Trustee will make its own decision as to whether or not to accept the proposed settlement on behalf of any Settlement Trust, and for each Accepting Trust, whether, and in what amount, to elect to exercise the HoldCo Option, on the basis of information available to that RMBS Trustee at the time of such decision.

Settlement Trusts that do not accept the Proposed RMBS Trust Settlement Agreements and do not become Accepting Trusts will be subject to the procedures of the Bankruptcy Code and the Court (including the scheduling order for the Chapter 11 Cases entered by the Court) relating to the assertion and allowance of claims, including, but not limited to, ResCap's right to object to the claims.

### III. ResCap's Motion for Approval of the Proposed RMBS Trust Settlement Agreements by the Court; The Rights of Certificateholders and Other Parties to Appear and Object.

The Proposed RMBS Trust Settlement Agreements are agreements between ResCap and the Institutional Investors and will not become effective or binding as to any Settlement Trust until and unless both (a) ResCap obtains Court approval to make the settlement offer to the Settlement Trusts and (b) such Settlement Trust, acting through its respective RMBS Trustee, accepts the Proposed RMBS Trust Settlement Agreements. Accordingly, on June 11, 2012, ResCap filed a motion with the Court seeking Court approval of the Proposed RMBS Trust Settlement Agreements and of ResCap's offer of the settlement proposed thereunder to each of the RMBS Trustees on behalf of the Settlement Trusts (the "Original 9019 Motion"). On August 15, 2012, ResCap filed a Supplement to the 9019 Motion (together with the Original 9019 Motion, the "9019 Motion").

Among other things, the 9019 Motion seeks a finding by the Court that the settlements proposed under the Proposed RMBS Trust Settlement Agreements are fair and reasonable to, and in the best interest of, all interested parties, including but not limited to, ResCap's creditors, the Institutional Investors, the Certificateholders for each Accepting Trust and each such Accepting Trust, the RMBS Trustees, and certain other persons, as a compromise of the claims asserted by each Accepting Trust against ResCap.

On July 31, 2012, the Court entered an order setting forth a schedule of deadlines and the date of a hearing related to the 9019 Motion and the RMBS Trustees' acceptance or rejection of the settlement under the Proposed RMBS Trust Settlement Agreements (the "Order"). Pursuant to the Order, the Court will commence an evidentiary hearing on the 9019 Motion (the "Hearing") on November 5, 2012. If the Court grants the 9019 Motion, the RMBS Trustees must accept or reject the Proposed RMBS Trust Settlement Agreements on behalf of any Settlement Trust on or before the later of (a) November 12, 2012 or (b) five business days after the entry of an order granting the 9019 Motion. The RMBS Trustees have until the confirmation of a Plan to elect to exercise the HoldCo Option on behalf of each Accepting Trust.

[NOTE: Dates set forth in this Notice and in the Order may have changed between the date that this Notice was written and the date of publication or reading and are subject to subsequent change. Accordingly, Certificateholders and other persons interested in the Settlement Trusts should refer to the sources of information described in Part IV below for up-to-date scheduling information.]

Any Certificateholder or other person potentially having an interest in the Settlement Trusts may object to the 9019 Motion or any aspect of the Proposed RMBS Trust Settlement Agreements, may seek discovery regarding the 9019 Motion or the Proposed RMBS Trust Settlement Agreements, and may participate in the Hearing. The Court has directed that:

- any objections to the 9019 Motion, along with any supporting expert reports, must be filed with the Court by October 5, 2012;
- the RMBS Trustees' objections or responses to the 9019 Motion, if any, must be served by October 15, 2012; and
- any reply to objections to the 9019 Motion must be filed by October 29, 2012.

(Further information regarding additional deadlines regarding the 9019 Motion is contained in the Order which can be obtained as explained in Part IV below.)

If the Court approves the 9019 Motion and an RMBS Trustee agrees to accept the settlement under the Proposed RMBS Trust Settlement Agreements on behalf of an Accepting Trust, all Certificateholders under the Accepting Trust will be bound by the Proposed RMBS Trust Settlement Agreements and the releases contained therein, whether or not the Certificateholder appeared in the Hearing or submitted an objection to the 9019 Motion or the Proposed RMBS Trust Settlement Agreements. Accordingly, any Certificateholder that has concerns about or might object to the Proposed RMBS Trust Settlement Agreements should consider with their legal advisors whether to participate in the Court proceedings pursuant to any of the means described in the preceding paragraph. There will likely be no forum other than such Court proceedings in which a Certificateholder's objection to the Proposed RMBS Trust Settlement Agreements will be able to be heard. If the Court approves the Proposed RMBS Trust Settlement Agreements, the decision of the applicable RMBS Trustee to accept or reject the proposed settlement on behalf of an individual Settlement Trust, and to exercise the HoldCo Option on behalf of an Accepting Trust, will be informed by each RMBS Trustee's analysis of the settlement taking into account interests of all of its respective Certificateholders and will not necessarily be based on the interests, objections or other position of any individual Certificateholder.

### IV. This Notice is a Summary; Other Sources of Information.

This Notice summarizes the Proposed RMBS Trust Settlement Agreements, the 9019 Motion and the Order and is not a complete statement of the documents, of relevant law or of relevant legal procedures. The RMBS Trustees do not intend to send any further notices with respect to the matters addressed herein, and Certificateholders and other potentially interested persons are urged to carefully review the Proposed RMBS Trust Settlement Agreements, the 9019 Motion and the Order and other pleadings that have been filed, and that subsequently may be filed, in the Chapter 11 Cases, and to consult with their own legal and financial advisors. The Proposed RMBS Trust Settlement Agreements and other related, material documents, including certain orders entered by the Court and other information relevant to the Proposed RMBS Trust Settlement Agreements, are available at http://www.rescaprmbssettlement.com, which will be updated each time additional, related, material papers are filed or orders are entered by the Court. You may also obtain any documents filed with the Court in the Chapter 11 Cases by logging on to PACER at https://www.uscourts.gov or by visiting ResCap's claims agent website at http://www.kccllc.net/rescap. If you have any questions, you may call (866) 241-7538 in the United States, +1 (202) 470-4565 outside the United States or send an email to questions@rescaprmbssettlement.com.

Inquiries regarding the matters set forth in this Notice may be directed to questions@rescaprmbssettlement.com or, with respect to any particular Settlement Trust, to the RMBS Trustee for such Settlement Trust using the "RMBS Trustee Contact Information" for such RMBS Trustee at http://www.rescaprmbssettlement.com.

### V. Other Matters.

Certificateholders and other persons interested in the Settlement Trusts should not rely on the RMBS Trustees, or on counsel or other advisors retained by the RMBS Trustees, as their sole source of information.

Please note that the foregoing is not intended and should not be construed as investment, accounting, financial, legal or tax advice by or on behalf of the RMBS Trustees, or their directors, officers, affiliates, agents, attorneys or employees. Each person or entity receiving this Notice should seek the advice of its own advisers in respect of the matters set forth herein.

Please be further advised that each of the RMBS Trustees reserves all of the rights, powers, claims and remedies available to it under the Governing Agreements and applicable law. No delay or forbearance by an RMBS Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Governing Agreements, other documentation relating thereto or under applicable law, shall impair any such right or remedy or constitute a waiver thereof or an acquiescence therein.

Each of the RMBS Trustees expressly reserve all rights in respect of each applicable Governing Agreement, including without limitation its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by such RMBS Trustee in performing its duties, indemnities owing or to become owing to such RMBS Trustee, compensation for such RMBS Trustee's time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with any applicable Governing Agreement at the request or direction of any Certificateholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

Please be advised that with respect to any particular inquiry from individual Certificateholders, an RMBS Trustee may conclude that a specific response to such inquiry is not consistent with requirements under applicable law and regulation of equal and full dissemination of information to all Certificateholders.

THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, U.S. BANK NATIONAL ASSOCIATION OR WELLS FARGO BANK, N.A., severally, as trustees or indenture trustees of the Settlement Trusts

**TIME SENSITIVE NOTICE REGARDING A PROPOSED SETTLEMENT BETWEEN CERTAIN SETTLEMENT TRUSTS RELATED TO SECURITIZATIONS SPONSORED BY RESIDENTIAL CAPITAL, LLC, AND CERTAIN OF ITS SUBSIDIARIES, INCLUDING GMAC MORTGAGE, LLC AND RESIDENTIAL FUNDING COMPANY, LLC**

NOTICE IS HEREBY GIVEN BY:

THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, U.S. BANK NATIONAL ASSOCIATION AND WELLS FARGO BANK, N.A.

IN THEIR SEVERAL CAPACITIES AS TRUSTEES OR INDENTURE TRUSTEES (COLLECTIVELY, THE "RMBS TRUSTEES" AND EACH, AN "RMBS TRUSTEE"), TO THE HOLDERS OF CERTIFICATES, NOTES OR OTHER SECURITIES (THE "CERTIFICATEHOLDERS") UNDER THE RESIDENTIAL MORTGAGE-BACKED SECURITIZATION TRUSTS IDENTIFIED IN EXHIBIT A, AVAILABLE AT WWW.RESCAPRMBSSETTLEMENT.COM (COLLECTIVELY, THE "SETTLEMENT TRUSTS" AND EACH A "SETTLEMENT TRUST").

THIS NOTICE CONTAINS IMPORTANT TIME-SENSITIVE INFORMATION FOR CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY INTERESTED IN THE SETTLEMENT TRUSTS. ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE, AS APPLICABLE, ARE REQUESTED TO EXPEDITE THE RE-TRANSMITTAL TO CERTIFICATEHOLDERS IN A TIMELY MANNER.

Dated: August 17, 2012 (date on which notice was delivered to registered Certificateholders)

This notice (the "Notice") is given to you by the RMBS Trustees under the Pooling and Servicing Agreements, including Series Supplements and Standard Terms of Pooling and Servicing Agreements, Indentures and related Servicing Agreements (collectively, the "Governing Agreements") governing the Settlement Trusts. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Governing Agreements.

I. Background.

As Certificateholders have previously been notified by each RMBS Trustee, on May 14, 2012, Residential Capital, LLC, and certain of its direct and indirect subsidiaries (collectively, "ResCap") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") (*In re Residential Capital, LLC*, Case No. 12-12020 (MG)) and related cases (collectively, the "Chapter 11 Cases").

**THIS NOTICE CONCERNS A PROPOSED SETTLEMENT OF CLAIMS OF THE SETTLEMENT TRUSTS AGAINST RESCAP IN THE CHAPTER 11 CASES. THESE CLAIMS INCLUDE, WITHOUT LIMITATION, CERTAIN CLAIMS RELATING TO THE ORIGINATION AND SALE BY RESCAP OF MORTGAGE LOANS AND TO CERTAIN ASPECTS OF RESCAP'S SERVICING OF THOSE MORTGAGE LOANS. THE PROPOSED SETTLEMENT WOULD, IF APPROVED BY THE COURT AND ACCEPTED BY THE RMBS TRUSTEE OF A SETTLEMENT TRUST, BIND THAT SETTLEMENT TRUST AND RELATED CERTIFICATEHOLDERS. ACCORDINGLY, THE PROPOSED SETTLEMENT AND RELATED COURT APPROVAL PROCEDURES MATERIALLY AFFECT THE INTERESTS OF THE CERTIFICATEHOLDERS, AND THE RMBS TRUSTEES RESPECTFULLY REQUEST THAT ALL CERTIFICATEHOLDERS AND OTHER NOTICE RECIPIENTS READ THIS NOTICE AND RELATED MATERIALS CAREFULLY IN CONSULTATION WITH THEIR LEGAL AND FINANCIAL ADVISORS.**

II. The Proposed Settlement.

On May 13, 2012, ResCap entered into separate agreements with two sets of certain investors (collectively, the "Institutional Investors"), each of which was titled an "RMBS Trust Settlement Agreement" (collectively, the "Original Proposed RMBS Trust Settlement Agreements"). On August 15, 2012, the Original Proposed RMBS Trust Settlement Agreements were amended (the "Amended Proposed RMBS Trust Settlement Agreements" and together with the Original Proposed RMBS Trust Settlement Agreements, the "Proposed RMBS Trust Settlement Agreements"). (Copies of these documents can be obtained as explained in Part IV below.) The Proposed RMBS Trust Settlement Agreements seek to, among other things, settle the claims of the Settlement Trusts concerning ResCap's alleged breaches of representations and warranties in the Governing Agreements and certain alleged violations of ResCap's servicing obligations. The Proposed RMBS Trust Settlement Agreements are subject to the approval of the Court and the settlements set forth therein cannot be offered to or accepted by the Settlement Trusts until and unless such approval is granted by the Court (see Part III below).

The Proposed RMBS Trust Settlement Agreements provide that in settlement of the Proposed Settled Claims (as defined below) against ResCap, each Settlement Trust that accepts the settlement (an "Accepting Trust") will be allowed a general unsecured claim against the estates of certain ResCap entities in the Chapter 11 Cases. If all Settlement Trusts become Accepting Trusts, such allowed claims will aggregate $8,700,000,000 (US$8.7 billion), less an allocation of the allowed claims for the payment of fees and expenses of the attorneys for the Institutional Investors as set forth in the Proposed RMBS Trust Settlement Agreements (the "Settlement Claims Allowance"). The Proposed RMBS Trust Settlement Agreements further provide that each Accepting Trust shall have the option (the "HoldCo Option"), at any time prior to confirmation of a chapter 11 plan in the Chapter 11 Cases (a "Plan"), to elect to receive up to twenty percent of that Accepting Trust's Settlement Claims Allowance as an allowed general unsecured claim against the estate of Residential Capital, LLC ("HoldCo"), in lieu of a general unsecured claim against the estates of certain of its direct and indirect subsidiaries, thereby reducing each Accepting Trust's allowed general unsecured claim against such estates to the extent each Accepting Trust exercises the HoldCo Option. **The determination of the Settlement Claims Allowance of each Accepting Trust (i.e., each Accepting Trust's share of the aggregate Settlement Claims Allowance) is subject to an allocation procedure set forth in the Proposed RMBS Trust Settlement Agreements and all recipients of this Notice are referred to such agreements for the details of that procedure.**

The Proposed RMBS Trust Settlement Agreements allow each related Settlement Trust to accept or reject the settlement offer independently without affecting the rights of any other Settlement Trust (including the share of the Settlement Claims Allowance to which any other Settlement Trust is entitled if it becomes an Accepting Trust). If approved by the Court, the Proposed RMBS Trust Settlement Agreements would affect the rights and interests of all Certificateholders, and their successors in interests and assigns, in any Accepting Trusts. The affected rights and interests will include, among other things, the release of claims against ResCap on behalf of the RMBS Trustee, the Accepting Trusts and all Certificateholders in the Accepting Trusts, arising out of or relating to (i) the origination and sale of mortgages to the Accepting Trusts, including representations and warranties made with respect to those mortgages and any mortgage repurchase obligations, (ii) documentation of the mortgages in the Accepting Trusts, with certain exceptions, (iii) servicing of the mortgages in the Accepting Trusts, with certain exceptions, (iv) certain setoff or recoupment under the Governing Agreements against ResCap, and (v) any loan seller that either sold loans to ResCap or Ally Financial Inc. that were sold or transferred to the Accepting Trusts (collectively, the "Proposed Settled Claims").

The acceptance of the Proposed RMBS Trust Settlement Agreements by an Accepting Trust would not, at present, entitle such Accepting Trust to receive any specific amount of money or other consideration, at any specific time, as a distribution from the ResCap debtor entities' bankruptcy estates. Rather, the Settlement Claims Allowance would entitle the Accepting Trust to receive such consideration as is eventually allocated to the claims of general unsecured creditors in the Chapter 11 Cases that are classified in the same manner as the claims of the Accepting Trusts. Accordingly, at present, Certificateholders cannot assume that acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement will result in any particular recovery with respect to the Settlement Claims Allowance of such Settlement Trust. Acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement would, however, resolve disputes with ResCap and other parties in interest to the Chapter 11 Cases as to the amount and general unsecured claim status of any claims such Settlement Trust may have with respect to the Proposed Settled Claims.

The RMBS Trustees have jointly engaged Duff & Phelps, LLC as their financial advisor with respect to their evaluation of the Proposed RMBS Trust Settlement Agreements and with respect to certain other matters in the Chapter 11 Cases. Each RMBS Trustee has also engaged independent counsel to advise it with respect to relevant legal matters affecting the particular Settlement Trusts that they administer. None of the RMBS Trustees has made a determination, as of the date of this Notice, as to the reasonableness of, or the advisability of entering into, the Proposed RMBS Trust Settlement Agreements on behalf of any Settlement Trust. None of the RMBS Trustees anticipates making its decision as to whether or not to accept the proposed settlement on behalf of any Settlement Trust until and unless the proposed settlement has been approved by the Court (see Part III below). Although the RMBS Trustees are cooperating with each other in their evaluation of the proposed settlement, each RMBS Trustee will make its own decision as to whether or not to accept the proposed settlement on behalf of any Settlement Trust, and for each Accepting Trust, whether, and in what amount, to elect to exercise the HoldCo Option, on the basis of information available to that RMBS Trustee at the time of such decision.

Settlement Trusts that do not accept the Proposed RMBS Trust Settlement Agreements and do not become Accepting Trusts will be subject to the procedures of the Bankruptcy Code and the Court (including the scheduling order for the Chapter 11 Cases entered by the Court) relating to the assertion and allowance of claims, including, but not limited to, ResCap's right to object to the claims.

III. ResCap's Motion for Approval of the Proposed RMBS Trust Settlement Agreements by the Court; The Rights of Certificateholders and Other Parties to Answer and Object.

The Proposed RMBS Trust Settlement Agreements are agreements between ResCap and the Institutional Investors and will not become effective or binding as to any Settlement Trust until and unless both (a) ResCap obtains Court approval to make the settlement offer to the Settlement Trusts and (b) such Settlement Trust, acting through its respective RMBS Trustee, accepts the Proposed RMBS Trust Settlement Agreements. Accordingly, on June 11, 2012, ResCap filed a motion with the Court seeking Court approval of the Proposed RMBS Trust Settlement Agreements and of ResCap's offer of the settlement proposed thereunder to each of the RMBS Trustees on behalf of the Settlement Trusts (the "Original 9019 Motion"). On August 15, 2012, ResCap filed a Supplement to the 9019 Motion (together with the Original 9019 Motion, the "9019 Motion").

Among other things, the 9019 Motion seeks a finding by the Court that the settlements proposed under the Proposed RMBS Trust Settlement Agreements are fair and reasonable to, and in the best interest of, all interested parties, including but not limited to, ResCap's creditors, the Institutional Investors, the Certificateholders for each Accepting Trust and each such Accepting Trust, the RMBS Trustees, and certain other persons, as a compromise of the claims asserted by each Accepting Trust against ResCap.

On July 31, 2012, the Court entered an order setting forth a schedule of deadlines and the date of a hearing related to the 9019 Motion and the RMBS Trustees' acceptance or rejection of the settlement under the Proposed RMBS Trust Settlement Agreements (the "Order"). **Pursuant to the Order, the Court will commence an evidentiary hearing on the 9019 Motion (the "Hearing") on November 5, 2012.** If the Court grants the 9019 Motion, the RMBS Trustees must accept or reject the Proposed RMBS Trust Settlement Agreements on behalf of any Settlement Trust on or before the later of (a) November 12, 2012 or (b) five business days after the entry of an order granting the 9019 Motion. The RMBS Trustees have until the confirmation of a Plan to elect to exercise the HoldCo Option on behalf of each Accepting Trust.

**[NOTE: Dates set forth in this Notice and in the Order may have changed between the date that this Notice was written and the date of publication or reading and are subject to subsequent change. Accordingly, Certificateholders and other persons interested in the Settlement Trusts should refer to the sources of information described in Part IV below for up-to-date scheduling information.]**

**Any Certificateholder or other person potentially having an interest in the Settlement Trusts may object to the 9019 Motion or any aspect of the Proposed RMBS Trust Settlement Agreements, may seek discovery regarding the 9019 Motion or the Proposed RMBS Trust Settlement Agreements, and may participate in the Hearing.** The Court has directed that:

- any objections to the 9019 Motion, along with any supporting expert reports, must be filed with the Court by **October 5, 2012;**
- the RMBS Trustees' objections or responses to the 9019 Motion, if any, must be served by **October 15, 2012;** and
- any reply to objections to the 9019 Motion must be filed by **October 29, 2012.**

(Further information regarding additional deadlines regarding the 9019 Motion is contained in the Order which can be obtained as explained in Part IV below.)

**If the Court approves the 9019 Motion and an RMBS Trustee agrees to accept the settlement under the Proposed RMBS Trust Settlement Agreements on behalf of an Accepting Trust, all Certificateholders under the Accepting Trust will be bound by the Proposed RMBS Trust Settlement Agreements and the releases contained therein, whether or not the Certificateholder appeared in the Hearing or submitted an objection to the 9019 Motion or the Proposed RMBS Trust Settlement Agreements. Accordingly, any Certificateholder that has concerns about or might object to the Proposed RMBS Trust Settlement Agreements should consider with their legal advisors whether to participate in the Court proceedings pursuant to any of the means described in the preceding paragraph. There will likely be no forum other than such Court proceedings in which a Certificateholder's objection to the Proposed RMBS Trust Settlement Agreements will be able to be heard. If the Court approves the Proposed RMBS Trust Settlement Agreements, the decision of the applicable RMBS Trustee to accept or reject the proposed settlement on behalf of an individual Settlement Trust, and to exercise the HoldCo Option on behalf of an Accepting Trust, will be informed by each RMBS Trustee's analysis of the settlement taking into account interests of all of its respective Certificateholders and will not necessarily be based on the interests, objections or other position of any individual Certificateholder.**

IV. This Notice is a Summary; Other Sources of Information.

This Notice summarizes the Proposed RMBS Trust Settlement Agreements, the 9019 Motion and the Order and is not a complete statement of those documents, of relevant law or of relevant legal procedures. The RMBS Trustees do not intend to send any further notices with respect to the matters addressed herein, and Certificateholders and other potentially interested persons are urged to carefully review the Proposed RMBS Trust Settlement Agreements, the 9019 Motion and the Order and other pleadings that have been filed, and that subsequently may be filed, in the Chapter 11 Cases, and to consult with their own legal and financial advisors. The Proposed RMBS Trust Settlement Agreements and other related, material documents, including certain orders entered by the Court and other information relevant to the Proposed RMBS Trust Settlement Agreements, are available at http://www.rescaprmbssettlement.com, which will be updated each time additional, related, material papers are filed or orders are entered by the Court. You may also obtain any documents filed with the Court in the Chapter 11 Cases by logging on to PACER at https://www.nysb.uscourts.gov or by visiting ResCap's claims agent website at http://www.kccllc.net/rescap. If you have any questions, you may call (866) 241-7538 in the United States, +1 (202) 470-4565 outside the United States or send an email to questions@rescaprmbssettlement.com.

Inquiries regarding the matters set forth in this Notice may be directed to questions@rescaprmbssettlement.com or, with respect to any particular Settlement Trust, to the RMBS Trustee for such Settlement Trust using the "RMBS Trustee Contact Information" for such RMBS Trustee at http://www.rescaprmbssettlement.com.

V. Other Matters.

Certificateholders and other persons interested in the Settlement Trusts should not rely on the RMBS Trustees, or on counsel or other advisors retained by the RMBS Trustees, as their sole source of information.

Please note that the foregoing is not intended and should not be construed as investment, accounting, financial, legal or tax advice by or on behalf of the RMBS Trustees, or their directors, officers, affiliates, agents, attorneys or employees. Each person or entity receiving this Notice should seek the advice of its own advisers in respect of the matters set forth herein.

Please be further advised that each of the RMBS Trustees reserves all of the rights, powers, claims and remedies available to it under the Governing Agreements and applicable law. No delay or forbearance by an RMBS Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Governing Agreements, other documentation relating thereto or under applicable law, shall impair any such right or remedy or constitute a waiver thereof or an acquiescence therein.

Each of the RMBS Trustees expressly reserve all rights in respect of each applicable Governing Agreement, including without limitation its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by such RMBS Trustee in performing its duties, indemnities owing or to become owing to such RMBS Trustee, compensation for such RMBS Trustee's time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with any applicable Governing Agreement at the request or direction of any Certificateholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

Please be advised that with respect to any particular inquiry from individual Certificateholders, an RMBS Trustee may conclude that a specific response to such inquiry is not consistent with requirements under applicable law and regulation of equal and full dissemination of information to all Certificateholders.

THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, U.S. BANK NATIONAL ASSOCIATION OR WELLS FARGO BANK, N.A., severally, as trustees or indenture trustees of the Settlement Trusts

**WORLD NEWS**

# Japan Seeks Agreement With Myanmar on Debt

BY YOREE KOH

TOKYO—When the world's top economic policy makers converge in Tokyo later this week, a prominent agenda item alongside the euro crisis and global slowdown will be debt relief for rapidly reforming Myanmar.

While a comprehensive pact isn't expected, host country Japan is trying to broker a deal that would cover about one-fifth of the outstanding arrears of the Southeast Asian nation—a step that Japanese officials hope will cement their role as the country leading the charge to welcome the once-pariah state back into the fold of the global economy.

Japan's aggressive actions to put Myanmar on the agenda at the annual meetings of the International Monetary Fund could move up the timetable for opening Myanmar's economy, and possibly give Japanese companies a leg up in the new rush to commercialize the nation.

Specifically, on Thursday the Japanese and Myanmar finance ministers will jointly gather senior officials from the IMF, the World Bank, the Asian Development Bank, and the Group of Seven advanced economies together in the same room for the first time to discuss ways to settle the Southeast Asian nation's overdue payments.

Seeking to take the lead on making Myanmar's reforms a top priority for the world's leading finance ministers and central bankers, the Japanese government is considering offering to take a big first step by lining up a group of Japanese banks to offer a $900 million bridge loan to cover some of Myanmar's arrears, according to a senior Japanese finance ministry official.

Those loans—owed to the World Bank and ADB—represented about 18% of the country's total debt outstanding in 2010, the most recent figure available, which totaled $5.4 billion at the time.

But that won't lead to a broader agreement, at least not this week. "The Paris Club won't sign an agreement with Myanmar in Tokyo," Clotilde L'Angevin, secretary-general of the group of sovereign creditors, said in an interview last week in Paris. "It's too premature."

**Debt Collection**

Myanmar's outstanding debt owed to selected countries, in millions of U.S. dollars

| | |
|---|---|
| Paris Club* | $3,777 |
| ADB | 493 |
| World Bank | 391 |
| Germany | 209 |
| Denmark | 43 |

*The Paris Club is a group of sovereign creditor countries including U.S., Japan, members

Note: As of Dec. 2011 (Paris Club); As of Jan. 2012 (Asian Development Bank and World Bank); End March 2012 (Germany and Denmark)

Sources: Ministry of Economic Cooperation and Development (Germany); IMF (ADB and World Bank); Paris Club

But, Ms. L'Angevin added, "Japan has a certain influence in the negotiations because it's Myanmar's largest creditor."

Indeed, moves by Japanese government officials to bring Myanmar counterparts into contact with the international financial community underline Japan's attempts to take on the role of de facto liaison between the emerging Southeast Asian country and the rest of the developed world, giving Tokyo an unusual opportunity to play a central role in global diplomacy.

What's at issue is overdue debt owed to multiple institutions and countries that stood at $5.4 billion at the end of 2010, according to an IMF report issued in March. That number included about $400 million to the World Bank, $500 million to the Asian Development Bank and another $3.77 billion to the Paris Club of sovereign creditors.

With a steady flow of Japanese businesses now streaming back into Myanmar, Japan became the first developed country to reach a deal when it forgave Y303.5 billion ($3.86 billion) in loans and interest during President Thein Sein's trip here in April this year, signaling Tokyo's commitment to Myanmar.

Part of Japan's enthusiasm stems from its historical relationship with Myanmar, which it occupied for three years during World War II from 1942.

In one of the few foreign-policy areas where Tokyo deviated from the U.S., Japan had maintained some openness with the country over the past two decades, even as the military-controlled state fell further into turmoil. Its sentimental attachment has become more politically motivated over the last decade as China's boom threatened Japan's influence in the region, and Japan has tried to maintain allies to counter China's rise.

So Japan jumped in amid the drastic reforms that have swept the country in the 18 months since a nominally civilian government took over from a military regime that had controlled MyanmarSoutheast Asian for nearly five decades.

Japan has spearheaded debt-forgiveness talks on Myanmar's behalf since the winter, and the campaign has picked up speed since Tokyo made its own call on debt forgiveness in April. Tokyo has played lobbyist, chaperone and "messenger boy," as one senior finance ministry official describes it, in becoming Myanmar's behind-the-scenes mediator to push for debt-settling deals. "The government of Japan has led this initiative," Takehiko Nakao, vice finance minister for international affairs, said last week of the country's work on Myanmar, often called the last frontier.

Major trading houses like **Itochu Corp.**, **Mitsubishi Corp.**, **Mitsui & Co.** and **Sumitomo Corp.** have increased staff to scout out potential projects to fix Myanmar's crumbling infrastructure. **Marubeni Corp.** was the first Japanese company to receive an infrastructure order when it was asked to repair an idled power plant in July. But the possibility of fresh and much-needed loans to fund massive infrastructure projects remains shut until Myanmar's debt obligations are resolved.

Japan has played a major role in organizing at least five sit-downs between Myanmar and parties such as the ADB and the Paris Club since the beginning of the year, according to the finance ministry. Re-establishing communication channels has been laborious.

**Slowdown | The world awaits action from U.S., euro zone**

Growth in gross domestic product

*2012 figures are estimates
Source: IMF

Share of global gross domestic product

The Wall Street Journal

# Pressure on Europe, U.S. to Fix Fiscal Ills

*Continued from first page*

Congress will revive memories of 2011, when worries about extending the U.S. debt ceiling and the August downgrade of the nation's triple-A credit rating roiled world markets.

As the U.S. nears the deadline to act, Europe's three-year-old crisis is flaring anew. In both situations, politicians are unlikely to take tough decisions until markets force them into action. The European Central Bank's latest pledge to save the euro had eased turmoil in the currency bloc in recent months. But renewed worries will be center stage in Tokyo.

The IMF will need to secure support from its members on two key fronts: fixing Greece's bailout without bending the IMF's rules, and finding a way to help Spain as the country weighs a government bailout.

The IMF has committed more than $100 billion in loans to euro-zone members, about one-third of it to Greece. But Athens repeatedly has failed to meet the terms of its bailouts as its economy weakens and the rest of Europe tips into recession, dragging down the rest of the world.

Some IMF member countries are questioning whether the fund has yielded too much power to European policy makers. The IMF is one-third of the "troika" overseeing rescues in Europe. Many of its calls to action have been drowned out by opposition from European nations.

Among the critiques: The IMF has failed to break the European push toward belt-tightening that sends euro-zone countries deeper into trouble. Instead, the fund needs to push new ideas and demand more from Europe in exchange for the IMF's money and seal of approval, said Arvind Subramanian, a senior fellow at the Peterson Institute for International Economics and a former IMF official. "At what point does the fund say, 'We don't think it's workable and we're going to walk away?'" he said.

IMF officials maintain they have been the leading voices encouraging Europe to change course, pushing for more fiscal unity within the euro zone, a centralized bank supervisor for the continent and other steps to unify Europe. They aren't willing to walk away from countries that request its help.

Now, the fund faces critical questions about how to step in to support Spain and Italy under the ECB's latest program. The central bank has agreed to contain its nations' borrowing costs if they submit to aid from European governments and monitoring of their economic programs by the IMF.

Spain and Italy are resisting aid if the IMF is involved, fearing the prospect of ceding their sovereignty to an institution outside Europe. In Tokyo, the rest of the world will be pushing them to take the help from someone.

# Hong Kong Ferry Crews Eyed

BY JOANNE CHIU

HONG KONG—Concerns over long work hours for ferry crews after last week's deadly crash highlight the difficulty in this Chinese city of attracting new talent to the industry, an unusual paradox given Hong Kong's historic role as a global shipping center.

Last Monday night, a high-speed commuter ferry collided with a boat filled with workers and their families on a company pleasure trip to view fireworks celebrating China's National Day, in the city's worst sea-borne accident in over four decades.

The death toll in the crash rose to 39 late Friday after a young girl hospitalized in critical condition succumbed to her injuries. All the fatalities were recorded on the pleasure boat, which quickly sank. Authorities over the weekend appealed for eyewitnesses to help them piece together events, in an investigation they say may take several months to complete.

As investigators continue to probe the causes of the disaster, some passengers and lawmakers question whether the ferry captain was overworked over the holiday weekend as the crash occurred, when crowds flocked to Lamma Island, the ferry's destination and a popular retreat for tourists and home to an expatriate community.

Industry executives say ferry crews in Hong Kong typically work full-day shifts, and are often required to spend the night on their boats before having the next day off.

Though the ferry operator, **Hong Kong & Kowloon Ferry Holdings Ltd.**, has rejected suggestions that the 54-year-old captain was too tired after working a shift of around 10 hours, the difficult conditions and unattractive salaries have made it more challenging for operators to hire and retain staff.

The ferry company has declined to comment further on the crash. The seven crew members on both vessels were arrested on suspicion of endangering the safety of others at sea, but haven't been charged.

The ages of those crew members, ranging between 50 and 63 years old, are indicative of an aging workforce in a declining industry serving commuters across the former British colony. Still, there was no evidence to suggest that working hours or age played any part in the cause of Monday's crash.

"Many local ferry companies have sought help because of difficulties in recruitment," says Ching Ngon-lai, chairwoman of the Small Craft Workers Union, which represents local ferry services staff. She said the average age is 54.8 for the city's 4,000 workers of small crafts, including ferries, tugboats and motorboats, up from the mid-40s more than a decade ago. At its height in the 1980s, the industry employed over 6,000 people.

"There's just not enough young people willing to enter the industry...We have no choice but to promote job vacancies among foreign workers but even they are reluctant to join," said Ms. Ching.

Passengers on a Hong Kong ferry look at the ferry involved in last week's crash.