# Exhibit PX-750

# Servicer Review

## GMAC Servicing

### March 25, 2009

and

# Servicing Surveillance

## RASC 2007-EMX1

November 2008 – February 2009

Performed by



PX
750

1

**CONFIDENTIAL**

RCPC00065140

## Overview

EdgeMAC and FGIC performed a joint servicing review of GMAC at their headquarters in Fort Washington Pennsylvania on March 25th, 2009. Managers of the various servicing departments were interviewed either in person or via teleconference during the times allotted to discuss their operations. GMAC did not have information formally prepared in advance for our review and no reports or presentation slides were provided for discussion purposes. This review is based solely on the conversations, loan file review, and analysis of monthly information obtained from the RASC 2007-EMX1 transaction.

In order to give a complete depiction of the servicer, the review and surveillance have been combined. No empirical information was provided by GMAC during the review. The data provided by FGIC for the surveillance was used to verify the information obtained during the formal review. In many cases and as noted throughout the document the data contradicted information gathered from GMAC. EdgeMAC attempted to validate all data by comparing disparate files prior to generating its final output. Data was inconsistent and EdgeMAC used its best efforts to identify the best source when reporting information about the pool and servicer.

EdgeMAC was asked to specifically review November 2008 to February 2009. While performing the analysis it often times made more sense to look at servicing practices from the inception of the transaction. Activity in the four designated months needed to be compared to the life of the transaction to determine if there were anomalies in the servicer's activities and performance that was not programmatic, in some circumstances EdgeMAC was validating that a minimal number of loans were being processed.

2

CONFIDENTIAL

RCPC00065141

## Mortgage Pool

The mortgage pool consists of 1st and 2nd lien loans originated by Mortgage Lending Network predominately in the second half of 2006 prior to its closure on December 29, 2006. Based on information obtained by sources that were intimate with the sale transactions, it is noted that the collateral in this pool was delivered and purchased by GMAC prior to any diligence being performed. Given the state of the originator at the time of origination and the purchasing practices of GMAC, higher delinquencies and losses should be expected.

| Origination Date | Total | |
|---|---|---|
| Pre June | 3,942,850 | 0.5% |
| June | 23,524,857 | 3.1% |
| July | 39,513,088 | 5.3% |
| August | 142,219,297 | 19.0% |
| September | 298,385,127 | 39.8% |
| October | 152,259,629 | 20.3% |
| November | 90,420,065 | 12.1% |
| | | |
| Total | 750,264,913 | |

The loan attributes remained consistent for the months the pool was under surveillance. The interest rate on the pool declined by 5 basis points from November to February. This is attributable primarily to the loans that were liquidated or prepaid voluntarily. Another factor contributing to the decline was a mass modification of 278 loans that took place in November 2008. Further information is provided in the document regarding this event. The overall percent of second lien loans declined by 10 basis points per month during the evaluation period. This decrease was the result of GMAC charging off this product.

The attributes of the pool are also fairly consistent with the pool upon securitization. The overall concentrations have not shifted significantly but some variations in the pool are noted. The percentage of second lien loans has dropped from 7.6% of the pool at securitization to 4.8% in February 2009.

Pool stratifications are attached as Exhibit A. Five individual stratification reports were produced, one for each month of the evaluation and one for the original securitized pool based on the balances provided on the deal tape. Each stratification report breaks down the components of the loans and identifies key attributes for each of those components.

3

CONFIDENTIAL

## Securitization Structure

The securitization is structured as a typical senior-subordinate transaction wrapped by FGIC. Several issues will be raised and addressed throughout this document as it relates to specific structural considerations for this transaction and potential areas of concern to be reviewed in other transactions where FGIC has exposure.

The target overcollateralization amount for the transaction is 7.5%. The high figure in this transaction suggests that the deal structure was attempting to offset the fact that the originator had ceased operations and the collateral was potentially going to underperform. There is no way to quantify how much of the problems associated with this transaction are attributable to the underlying collateral.

4

CONFIDENTIAL                                        **RCPC00065143**

## Collections Practices

Over the past 2 years the servicing operation has undergone a major consolidation and transformation of the staff size and servicing sites.  GMAC moved its PA operations from the Horsham site to Fort Washington.  It also closed its special servicing operation in Shelton, CT and consolidated it with the former HomeComings Financial office in Dallas, TX.

The Dallas office's call center management group was interviewed by conference call and discussed the collections process including the calling campaigns, technology and procedures. The call center handles an average of 150,000 inbound calls monthly from pre-foreclosure accounts and a total of 300,000 calls for the entire GMAC portfolio.  The Dallas operation call hours are from 7am to 11pm central time Monday through Thursday and 7am to 6pm central time Friday, Saturday and Sunday.   Campaigns are designed using the Early Indicator scores with high risk rated loans scheduled to be called first in the queue, including 30 plus days delinquent accounts.  The daytime campaigns are set up to call the borrower work number first and then rolls to the co-borrower, the system rolls to each available borrower phone number on file.  If no contact is made the loan is set up for a future campaign and additional calling efforts.  The evening calling campaigns are designed to call the home phone numbers first.

The servicer estimates that it handles approximately 5 million total outbound call attempts monthly of which 1.2 million to 1.5 million calls are 'manned' versus automated.  A third party vendor, Barolli, assists with automated calls which make up to 3 attempts to reach the borrower in the morning, afternoon and evening.

Risk based calling campaigns are established for early calls on the 2nd day of delinquency of the current month and similar campaigns are run every day or every other day with a minimum of 2 attempts per week for accounts deemed to be low risk.  Various call campaigns are designed in accordance with investor requirements and servicing agreements.  The servicer establishes low, moderate and high risk account calling campaigns depending on the type of account, using identifiers in the system such as an Early Indicator software score and internal Risk Scores. Agency loans with Freddie Mac and Fannie Mae are considered low risk loans for these calling campaigns.  All calls regardless of product type, lien position or other loan attributes go into one queue and are routed to the next available collector regardless of the type of loan.  The system uses a screen pop to advise the collector who the investor or loan brand is for proper handling.

GMAC has initiated a hiring campaign to handle the increases in recent call volume during the past Fall and Winter. The servicer reported a 62 second average speed to answer inbound calls from March 2008 thru March 2009, and explained that the high inbound call volume in the October through January period caused them to increase staff from under 200 to 300 full time equivalents.  They currently have an additional 80 staff recs outstanding.  A 62 second ASA is high by industry standards.  We should expect to see no more than a 30 to 45 second wait time.

5

**CONFIDENTIAL**

**RCPC00065144**

Follow up should be performed to determine if the additional staffing is in place and to determine if the hold times have improved and are within acceptable levels. Despite the high wait times, GMAC reports an acceptable inbound call abandonment rate of 5.5% for the past 12 months. We have no information as to the abandonment rate prior to the increase hold time to make an evaluation as to the effect on delinquency.

The servicer tracks the borrower reason for default on the MortgageServ system for inbound and outbound calls. The Customer Care division handles calls for accounts which are less than 30 days delinquent, and the Early Stage collections staff handles loans that are delinquent from 30 days to time of foreclosure referral. The collections function is further segmented to Late Stage collections handling accounts which are post foreclosure referral. Outbound calls for loans past due 1 day to foreclosure referral are made by the Early Stage collectors and post foreclosure outbound calls are handled by the Late Stage collectors. No differentiations between product types or investors are made when calls are assigned. GMAC also uses a third party vendor ICT located in Manila, Philippines to handle 60% of inbound calls from borrowers who are up to 60 days delinquent. There was no information provided in regards to wait time or abandonment levels for this vendor  The servicer is planning to hire an additional 80 in house representatives to handle more calls inbound (between 60%-70% of calls) because it feels that the vendor is not capable of handling complex calls. This would seem to indicate that using an offsite vendor has had little benefit in reducing delinquency justifying an increased cost of using in house, and in country staff.

Collectors use a solution hierarchy to collect the debt. Initially they try to cure or reinstate the account. If this is unsuccessful they review the borrower's current financial situation for a possible repayment plan spanning up to six months. Most servicers offer longer term plans that can extend from 12 to 18 months. Cash flow information is referred to the loan modification group for review. If a loan modification is warranted, they discuss the terms with the borrower. Loan workouts are established in accordance with the permissible resolutions in the specific investor matrix for each loan. GMAC stated the most common reasons for default include loss of income, disability, unemployment, and interest rate changes. If the borrower's financial situation is not sufficient to maintain the loan, GMAC stated they may counsel the borrower to sell the property.

The servicer utilizes a skip tracing process which is 99% automated through a third party vendor, CBS Innovis.  The files are sent to the vendor and the vendor does a file scrub for new borrower information and new location. The servicer sends a weekly file to the vendor and receives the vendor feedback weekly. There is also a manual skip trace group located in Waterloo, IA for unique cases. The servicer is considering incorporating door knock campaigns in its strategy but currently does not provide this service. Door knocking campaigns are commonplace in the industry and an effective tool in obtaining a right party contact. GMAC's lack of utilization of this practice hinders their ability to obtain contact with borrowers that are reluctant to pick up the phone. Door knock campaigns are more costly than other automated services which may be why GMAC has not incorporated them into their strategy.

6

CONFIDENTIAL                                                              RCPC00065145

Call center staff turnover is estimated at a high 40% for 2008, and running at 20% in 2009. The Dallas call center is located in a very competitive labor market and customer care and collector personnel move frequently for salary increases.   All collectors receive base salary plus incentive pay, with call monitoring of 7-10 of their calls and six deal reviewed monthly.  A monitoring score of 85% or better is required.  There was no discussion as to disciplinary actions or extra training if staff does not obtain the required score.  No information was provided as to how many employees fall below this threshold as well.  Collectors receive an acceptable level of 4 weeks of training, where the first 2 weeks entail classroom and mentor training and then go from listening to actual handling of calls. FDCPA training and testing are a regular part of the training course.

7

**CONFIDENTIAL**

**RCPC00065146**

## Delinquencies

Delinquencies in the RASC pool were reviewed in detail along with the roll rates for the individual buckets of delinquency. As of February 2009, 52.7% of the pool was delinquent. A delinquency stratification is provided as Exhibit B. The strat could not be prepared for the other months under surveillance due to a lack of information in the data files. The delinquency breakdown is consistent with general industry trends. Only 39.6% of the stated loans are current. Multi-family and other property types have poorer performance than SFR and PUDs. Later in this document EdgeMAC addresses the consideration of paying GMAC additional monies for enhanced servicing efforts. At that time we will also make recommendations for potentially shifting servicing focus to high risk loans.

A migration, or roll rate, report is provided for each month of surveillance. With the exception of November, the monthly figures were fairly consistent. The report is constructed to show what percent of loans rolled forward, rolled backwards, or stayed in the same delinquency bucket from one month to the next. Typically, the cure rate of loans decreases as they become more delinquent. Ideally, early stage delinquencies have a fairly low roll forward. From December to January 5.5% of the current loans rolled to 30 days delinquent. This rate is fairly typical and well below the other months which had 8.2%, 8.3% and 13.7% for Oct to Nov, Nov to Dec, and Jan to Feb respectively. The rolls from 30 to 60 days and 60 to 90 days average approximately 53% and 70% respectively in the months under surveillance which is high. Multiplying the 30 and 60 day figures together identifies that approximately 37% of all loans that become 30 days late will become seriously delinquent. The excessively high roll rates in 3 out of the 4 months from current to 30 days and the high roll rates in the early stage delinquencies are reflective of the poor performance of the transaction which we can refer back to the long hold times and GMAC's initiative for increased staffing since the current to 60 day loans are being handled by the call center staff.

The roll rates show that some loans in both early and late stage delinquency are rolling to current. The rates are lower than industry norms but are characteristic of GMAC's efforts to modify loans and bring them current. The schedule does not differentiate between loans brought current through payments made and loans brought current from loss mitigation efforts. Furthermore, as noted in the document, modified loans have a high recidivism rate. All delinquency migration reports are attached as Exhibit C

This document goes into detail regarding GMAC's collection and loss mitigation efforts. The roll rates clearly demonstrate how loans are rolling through the delinquency buckets and generating the high level of delinquencies and losses being experienced by the transaction.

8

CONFIDENTIAL                                          RCPC00065147

**Loss Mitigation Practices**

Borrowers who call with payment problems are routed to Customer Care which, in turn, forwards a loss mitigation package to the borrower or directs them to the GMAC online forms for completion. The servicer requests a 10 day turnaround from the borrower. Upon submission the package is reviewed to determine if it is viable. Upon acceptance it is forwarded to the loan modification group for analysis; the modification group has 10 days to review the case. The servicer estimates that approximately 10%-20% of borrowers requesting modifications result from the announced 'Obama plan'. The servicer estimates it handles approximately 75,000 loss mitigation cases monthly.

The standard Freddie Mac and Fannie Mae loans are resolved for loss mitigations through the GSE established programs, known as 'core servicing' by GMAC. Loans requiring more detailed analysis such as subprime, Alt-A and high LTV loans are handled by the Special Servicing group, which is more flexible in its resolution options than the core group for agency loans. GMAC applies the standard loss mitigation resolution options to its efforts with borrowers to stave off foreclosure action, these include repayment plans, forbearance agreements, short sales, deeds in lieu, modifications and charge offs of principal. The department permits a maximum of three repayment plans, and then the account will be reviewed for a possible modification of the terms, depending on the reason for default. Loans are usually modified only once. Investor requirements must be met for a second modification to be approved. The servicer reports a 10% increase in forgiveness of debt (principal charge off) over the past 12 months due to the economic climate. GMAC also reports a 45% recidivism rate for loans which were modified. The servicer has established a special task force to study the causes of the redefault. With the new agency and federal government programs the servicer now gathers financial packages from the borrowers including those who were originally stated income loans. Loss mitigation workouts have different requirements for levels of authorization based on the investor. Cases are reviewed by team leads, supervisors, managers, directors or vice presidents as required by the investors.

A compliance group oversees the compliance and regulatory requirements for loss mitigation resolutions via a specific loan modification matrix for each investor's requirements, if any. A separate quality investigation team in Minneapolis reviews requests for loan repurchases in view of possible loan fraud.

BPO vendors and comparables from local brokers are utilized to validate property values especially concerning short sale options. The NPV model guides decisions on best workout solutions, combining the knowledge and experience of the loss mitigator with the objectivity of the software model regarding property value and equity. The model is used to ensure that the loss mitigation resolution is a better financial solution than the property going to foreclosure and REO status.

The loss mitigation staff handles an average caseload of 250 loans, with segmentation of the

9

CONFIDENTIAL                                                                **RCPC00065148**

package, analysis and liquidation processes internally. The servicer plans to address the increase in current caseload due to the economy by increasing staff by 30% to 300 FTE within the near future. The expected turnaround time for processing a web site originated financial package entered by the borrower is about one week. The staff verifies expenses against the national living costs averages and via credit bureau reports on the borrowers. Credit reports are obtained for all loans being considered for a modification to compare the CB information to the borrower's financial package. Short sale options are considered for borrowers whose loans are very delinquent and the analysis indicates a dim outlook for a workout resolution.

GMAC's training regimen for the loss mitigation group new hires includes a 3 week course including side by side training plus training on the floor with live borrower situations, and includes a written test at the conclusion of the training. Performance incentives are driven by goals for minimum productivity and quality of work. The department is now conducting look backs on prior loss mitigation workouts by each specialist to evaluate long term effectiveness and borrower recidivism.

Further work on second lien charge offs is conducted by a Recovery Group.
Second lien loss mitigation is handled through a decision tool which evaluates the net present value and equity in the property. Servicer practice per industry standards is to charge off a second lien once it reaches 180 days delinquent and continue to work the loan without releasing the lien.

In several transactions there are restrictions on modifications to loans in the securitizations to no more than 5% of the deal's original unpaid principal balance. During the meeting FGIC's management indicated it would like GMAC to contact the appropriate parties for approval if they find they are nearing the 5% limit in modifications regarding interest rate changes, principal reductions, etc. FGIC is keenly interested in being consulted in regards to loan modifications and their potential effect on a securitization.

10

CONFIDENTIAL

RCPC00065149

## Modifications

The information obtained on GMAC's modification activity was limited. We were not provided servicing notes, financial statements, reinstatement figures, or income documentation from the borrower. During the site visit modifications were discussed but not how the loans were qualified. It is understood that rate reductions as well as principal reductions are allowed under the program. Data was provided as to which loans had been modified as well as when the loan had been modified. Exhibit D shows the number of loans modified per month from the inception of the transaction. Based on this information it is reasonable to conclude there was a change in processing of loan modifications in November of 2008. Prior to and after this date modifications represented a small number of monthly loss mitigation work outs. The 278 modifications performed in November were done across all delinquent buckets on loans that were as much as 20 months delinquent.

The report also shows the delinquency status of all modified loans broken down by month of modification. Modifications performed and the associated delinquencies were calculated for all loans in the transaction to show trends up to the engagement period of Nov 2008 through Feb 2009. There appears to be an easing of the rules utilized to modify loans based on the fact that after four months only 107 loans out of the 278 modified in November remained current. This represents 38.5% of the loans modified in November 2008. 171 loans are delinquent which may result in only extending the foreclosure out further with the potential of greater losses as the real estate markets continue to decline. Additionally, as losses are pushed into the future there will be less excess interest to absorb the shortfall. FGIC is put at risk if cash is distributed to bondholders rather than being trapped in the transaction to absorb losses that are incurred. Exhibit E shows a stratification of all loans that were modified. The loans modified were different from the total pool in many areas. There was a slight bias to modify owner occupied, stated loans. 98.2% of the loans modified were owner occupied versus the total pool amount of approximately 93.5%. 37.4% of the loans modified had stated documentation versus the total pool of approximately 31.0%. 73.4% of the modifications performed were on 2/28 product and 8.3% were fixed versus 57.0% and 24.3% on the total pool respectively. Additionally, the FICO score of the modified loans was 597 versus the total pool amount of 616 and the DTI on the modified pool versus the total pool was 43.7% and 40.7% respectively. The parameter differences of the modified loans are typical for this type of pool and within expectations.

A number of the servicers have adopted a managed approach to modifications requiring the borrower to provide current income documentation. This approach would apply to all loans regardless of documentation type at originations. This method allows the servicer to determine the borrower's front end DTI. The DTI was one of the qualifiers at origination and is a better measure of affordability than a typical servicer financial statement. The typical financial statement in use today collects all monthly expense for the borrower; these numbers can cause a wide swing in the borrower's expenses, since these are typically estimates.

11

**CONFIDENTIAL**

**RCPC00065150**

The servicer will know the exact PITI for the borrower. This, in conjunction with their current income documentation would give a more accurate picture of affordability. Typical front end ratios of 40 to 45% are common and would give a managed approach on how much to lower the interest rate for the loan. This methodology is widely accepted by a number of advocacy groups as well as most A.G. and Congressional offices handling borrower requests.

It is also recommended to collect several payments based on the modified payment at the time of the modification. This insures the borrower is really willing to reestablish monthly payments instead of just moving the foreclosure out further. EdgeMAC is not able to determine how GMAC is using the financial records they are requesting. The mass modification in November suggests that they either relaxed their standards of approval or had some other event occur that was not explained during the course of our review.

12

**CONFIDENTIAL**

**RCPC00065151**

**Short Sales**

In the review period of November 08 through February 09 only 3 short sales where completed. Short sales can reduce losses by having the borrower market the property and help maintain the property in a condition better than the typically REO property management firms.  It also reduces the loss severity by mitigating foreclosure fees and eliminating or reducing property preservation fees and the cost of eviction.    This type of workout has the potential to reduce losses by as much as 50%.  Properties that are sold by owner have a much higher net sales price than vacant REO properties.

This area needs increased focus by GMAC to help mitigate losses.   The first step would involve increasing a borrower's interest in selling the property.  This can be done in at least three areas. The first is to ensure the loss mitigation staff is trying to sell this program if the borrower cannot afford their home.  This entails having adequate scripts and knowledge to complete the workout and using aggressive incentives to motivate them.   This also saves on the cost of internal REO specialists.

 The second step would be to utilize a door knock company, this is an important element for this program to be successful.   Most door knock services use Real Estate agents to perform this task and if they cannot help to get the borrower to re-perform then they can help talk the borrower into listing the property for sale.   Again, this has the advantage of the property being kept in better condition and secure.

The final step is to notify and incent your BK and FC attorneys if they bring a borrower to the table that otherwise would not contact the servicer.

The Data provided did not indicate how many loans were being worked as potential short sales. If this process is being highlighted by the servicer with the proper incentive programs 15 to 25% of all foreclosures should be listed for sale and documented by the servicer as to whom the agent is, listing prices and follow up on showings.

13

**CONFIDENTIAL**                                                                    **RCPC00065152**

## Forbearance Plans

Typically Forbearance plans for 90+ day accounts should represent 20 to 30% of the total population with approximately 30% completing the plan and bringing the loan current. Servicing notes were not provided so it is difficult to determine how aggressively workout plans were pursued. The report shown below depicts the number of 90+ accounts vs. those shown in a forbearance plan. As indicated, forbearance plans only represent 8% of the total 90+ day population which is below industry norms. Additionally the data shows that of the forbearance plans closed none had a favorable outcome and only 5 out of 36 active plans are current, these figures are well below industry norms.

Currently GMAC is only offering forbearance plans up to 6 months and requiring three plans before they consider a modification. Typical industry standards are for informal forbearance plans to 6 months with plans up to 12 months which require a more formal basis. The limited term being offered limits the abilities of borrowers to successfully complete a plan and substantiates the high re default rates based on a 90 day delinquent borrower being required to make a payment and a half each month to bring them self current in a 6 month window. GMAC is also requiring three defaulted plans before considering a modification. This practice requires a great deal of employee time to monitor and re establish plans. It also worsens the borrowers overall position with outstanding arrearages. It is much more efficient to move to a modification if the loss mitigator does not feel that they can get the borrower to re perform based on their ability to make a payment plus an additional repayment plan

|  | Current | 30 Days DLQ | 60 Days DLQ | 90+ Days DLQ | Foreclosure | Total |
|---|---|---|---|---|---|---|
| Canceled/Failed | 0 | 2 | 3 | 6 | 21 | 32 |
| Complete | 0 | 3 | 0 | 6 | 0 | 9 |
| Open | 5 | 2 | 4 | 7 | 18 | 36 |
| Total | 5 | 7 | 7 | 19 | 39 | 77 |

14

CONFIDENTIAL

**Loss Mitigation Data**

The chart below reflects all statuses associated with 90+ delinquencies for the month of February.  27% of the loans don't have any status or workout solution in process.  This percent falls well outside of industry standards of 10 to 15%.  Accounts that are 90+ that have no workout program in process. Loans should be in the process of being referred to foreclosure or charge off review.   As previously stated, GMAC may be actively working on some form of work out that is not indicated and without servicing notes it cannot be determined.



## Status of 90+ Delinquent Accounts

The chart indicates that over 52% of the loans are either in FC or REO which clearly demonstrates that more effort is needed on loss mitigation.  These percentages may be due to many accounts being assigned to one specialist or a lack of a sophisticated compensation program to incent the loss mitigator to work towards the right solutions. There should be further review as to how many accounts each employee is assigned and compensation/incentive structures. GMAC would not provide any detail regarding compensation plans during the review.  Underlying technology could also be used to assist the loss mitigators in effectively handling their workload.

It is also strongly recommended that a managed approach be used for modifications requiring documentation, underwriting review, and funds from the borrower to ensure that there is a real desire on the borrowers part to resolve the delinquency instead of just extending the amount of time the individual can reside in the property and unnecessarily delaying an inevitable foreclosure – which results in additional expenses.

15

CONFIDENTIAL

RCPC00065154

Fitch was recently quoted in American Banker in the June 1st edition as to the makeup of resolutions for RMBS defaulted loans should include the following: "Modifications, Forbearance Plans, Short Sales and Deed in Lieu's  Typically you would see 120 accounts per associate depending on the types of automation and systems they have available."  The information provided by GMAC is indicating that Loss Mitigation employees are handling approximately 250 accounts per associates.  This number is extremely high and would likely be the cause for the results being seen with low numbers of forbearance plans and modifications.  Fitch also presented the July to December 2008 RMBS resolution by type.  The graph below shows the Fitch findings.  The two graphs can be loosely compared.  The Fitch graph shows ultimate resolution and the GMAC graph has active 90+ day delinquencies.  GMAC will need to focus its effort and alter existing practices in order to come in line with the more favorable finds depicted in the Fitch Graph.

## Fitch RMBS Resolutions by Type



The chart below shows the activity of loans in the months of November through February.  The amount of loss mitigation activity is minimal other than the anomaly of the November modifications.

| | November | December | January | February | Total |
|---|---|---|---|---|---|
| Forbearance Agreements | 0 | 3 | 5 | 12 | 20 |
| Modifictions | 289 | 42 | 25 | 24 | 380 |
| Short Sales | 0 | 0 | 0 | 3 | 3 |
| REO | 11 | 3 | 6 | 12 | 32 |
| Foreclosure | 29 | 66 | 70 | 24 | 189 |
| Total | 329 | 114 | 106 | 75 | 624 |

16

CONFIDENTIAL

## Foreclosure Practices

GMAC's caseload had slightly decreased from 63,473 foreclosures in February 2008 to 61,933 cases in February 2009. The servicer states that moratoriums by states, federal and municipal authorities have slowed down the process towards foreclosure sale date. The foreclosure department includes 42 GMAC FTE, 20 CBC Innovis personnel and 6 ISGN mortgage hub staff, within a functionalized environment where the CBS people have been integrated with the GMAC employees. This is a common servicing practice where a vendor is brought in to work on site with the foreclosure case workflow. The loss mitigation department makes the determination to refer a loan to foreclosure.

An experienced special assets team in the department handles contested cases, payment disputes, title issues, etc. outside of the normal process flow. The loss mitigation department works in parallel with the foreclosure team and inbound calls from borrowers and attorneys are routed to loss mitigation from foreclosure. The loss mitigation team can stop a foreclosure action if they are working on a resolution, and this group also makes decisions on making advances for taxes, insurance, and other costs. Another group manages the actual foreclosure process utilizing the Business Objects software to obtain regular performance reports. Two other teams in the department handle document executions and foreclosure sales resulting in REO or third party sales.

When breach letters expire at 32 days, accounts are eligible for foreclosure referral, (by the 63rd day of delinquency) or at 90 days of delinquency depending on the investor. All loans that are 120 days delinquent are referred to foreclosure. The servicer states that common causes of delays in foreclosure referral include an invalid breach letter which must be reissued and low loan balances.

Additional software systems utilized by the department include the main system MortgageServ, New Trac for attorney communication; Invoice Management for attorney fees tracking, and Process Management. A vendor management team manages the network of approved attorneys and monitors the various service level agreements for individual law firm performance, and attorney report cards are used to regularly evaluate attorney comparative effectiveness in timeline management. GMAC regularly reviews its attorney network for qualifications, adherence to GSE requirements, financial requirements, security and system requirements to remain in the network. Attorneys with direct access to GMAC's' system (Direct Source) can obtain reinstatement quotes and documents directly from the servicing system and speed up the timeline process. GMAC has adopted Milestone pricing for foreclosure which allows them to pay attorneys based on the work completed for the file. This allows for lower advances if the borrower wants to reinstate or become involved in a loss mitigation work out. Milestone pricing has been a positive step in reducing costs and foreclosures by the legislative and advocacy communities.

17

CONFIDENTIAL

RCPC00065156

GMAC measures its timeline performance against Freddie Mac standards from referral to foreclosure sale period, excluding allowable delays and states they have a 95% compliance with service level agreements.  The servicer also measures itself to HUD first legal timelines but did not provide any metrics.  The Property Preservation department orders inspections initially at 45 days of delinquency and subsequently every 30 days while in default.  BPOs are obtained every 6 months while in foreclosure and in REO.  Both are industry accepted practices.

A few challenges that the foreclosure department currently faces are the increase in government ordered moratoriums which slow down the legal process and more demanding state specific breach letter requirements which also delay the foreclosure process.  Some state's sheriff's departments are unable to keep up with the caseload and it may take 6-8 additional months to complete a foreclosure in that state due to the backlog.

18

CONFIDENTIAL                                           RCPC00065157

**Foreclosure Referral Process**

The referral process occurs between 90 and 120 days of delinquency but there are a number of extreme exceptions to this timeframe.  EdgeMAC attempted to justify the delays due to bankruptcy filings but numerous exceptions still occur monthly.  A number or files are missed each month in the referral process, examples are noted in the table below and expressed in the number of days since last payment to the foreclosure referral date.  Additionally, Exhinit F lists all loans with exceptionally long foreclosure referrals.  GMAC should be questioned and explain the nature of the delays for these loans.

The monthly foreclosure report shown below shows extreme spikes in foreclosure filings such as October 2007 and February 2008.  These spikes do not follow delinquency trends and cannot be rationalized by the data available for the analysis.  Spikes in several processes are noted throughout the document.  These spikes may be attributable to inadequate staffing that falls behind and must get caught up in future periods or some other situation that is occurring with the servicer.  Follow up should be sought to identify the nature of these spikes.



EdgeMAC noted four loans referred to foreclosure in the month of February that had an excessive number of days since there last payment.  They were not shown to be in any type of loss mitigation work, no bankruptcy filings are noted and they were not located in states with a foreclosure moratorium.

19

| Loan Number | Last paid | Number of days to referral |
|---|---|---|
| 10616362 | 7/1/2008 | 210 |
| 10758476 | 5/1/2008 | 270 |
| 10626040 | 4/1/2008 | 300 |
| 10775088 | 4/1/2008 | 300 |

The analysis identifies a problem with the Foreclosure referral process.  Without further investigation and access to additional information it cannot be determined if the delays are in the referral process with loss mitigation or the foreclosure departments.   Typically files are referred to FC either at 90 or 120 days if the borrower has not been willing to engage in a loss mitigation or reinstatement work out.  The only exception to this would be the borrower filing a BK prior to the FC referral.   The below graph shows the number of days it took to place a loan into foreclosure from the last payment date.  A listing of all loans with excessive referral times is included as exhibit XX.



In the absence of additional data to justify the files with foreclosure referral times greater than 120 days EdgeMAC can only conclude that there is a flaw in GMAC's process in regards to foreclosure referrals.

20

CONFIDENTIAL

RCPC00065159

## REO Management Practices

GMAC operates it REO asset management out of three offices: Dallas, TX; Atlanta, GA; and special operations in Carlsbad, CA. The group manages approximately 15,500 real estate owned assets utilizing these three offices split functionally between operations and sales. GMAC advises that there has been a decline in REO portfolio assets over the past 12 months from 18,000 to 15,500 partly due to the numerous foreclosure moratoriums, foreclosure sales to third parties, and GMAC new limited offers to finance the purchase of REO assets. The sales group is responsible for pre and post marketing of assets, investigations of any issues, cash for keys offers, title issue resolution, and a billing group for invoices from vendors. The REO department runs a primary servicing group and a fee for servicing group for 50 clients. The department currently employs 114 full time employees and 89 contractors on site which is adequate by industry standards. The servicer states that it faces 3 challenges with its REO portfolio: downward price pressure, the influx of new REO assets and competition in the Dallas area for talent.

The department's current initiatives include implementing portfolio segmentation, determining optimal disposition strategy by property type, converting the previous year's transactions to the REOTrans system, and looking further at property leasing strategy when the sales option is unfeasible.

The department utilizes four major liquidation strategies for asset disposition, they include:

1) A broker network of local real estate agents market the assets, selling repaired or as-is, with monthly marketing strategy calls with GMAC employees. Fifty percent of the assets are managed by brokers.
2) Five specific vendors who handle off beat assets such as properties in rural areas, low balance assets and properties in metropolitan (city) areas.
3) An Auction group handles properties which have been difficult to sell through brokers and are put up for auction; the auction program uses major auction vendors such as REDC, Kazork.com, Multiple Listings, etc. In general, aged assets and rural properties go to auction.
4) Bulk sales in areas with heavy concentrations such as Florida and California which have 1,200 and 5,000 REO assets respectively, plus assets in the states of Arizona, Texas, Nevada and Michigan.

The average liquidation timeline for the entire portfolio is about 175 days, which is within the 180 day industry standard. GMAC states that the average liquidation timeline for its own REO portfolio is 160 days.

The servicer has used the REO Trans system since June 2008 to manage the assets and document approvals of work, and utilizes Invoice Management software to track billing. The main servicing system MortgageServ is used to manage the entire REO function.

21

CONFIDENTIAL

RCPC00065160

REO specialist incentives can range up to 60% of salary and is based on number of units sold, liquidation timeline, percent of aged inventory, net execution to value, and turnover rates. The department also conducts separate quality control reviews of the work process along the entire REO liquidation timeline.

The in-house property valuation department provides the REO department with one appraisal and a BPO, and a second BPO is provided by a broker. Variances in value are escalated for management's review, reviewing cases where the list price is below the expected market value. The properties can be listed from 93% to 105% of expected market value or manager approval is required to list outside of this range. The REOTrans system automatically calls for review of the asset list prices every 30 days or as frequently as every 14-20 days depending on the asset.

Property preservation repairs are usually made prior to listing the property, and asset managers establish an as-is listing price at current condition for 90 days. REO specialists review the estimated costs of repair to as-is and look for a $1.30 to $1.50 return on each dollar invested in repairs. Currently only 6%-8% of properties receive cosmetic repairs, major repairs are rare. Tenants of borrowers are allowed to rent the properties per a court order in the state of Massachusetts, but GMAC has no large scale rental program in place at this time. GMAC states that its current strategy is to liquidate properties as soon as possible. The servicer will refer to an investor requirements matrix on REOTrans and contact the investor for approval of repairs, listing price, or sales price in accord with the matrix investor requirements.

## Property Valuations

This group provides the REO, foreclosure and loss mitigation departments with property valuations when needed and conducts valuation comparisons of BPOs, appraisals and AVMs to adjust for variances in value. The group runs an analysis of the portfolio of non conforming loans monthly and then orders BPOs through the vendor VMA. The team uses four vendors for BPOs, does a quality control check through the system and then reviews an average of 40% of the BPOs kicked out by the system for manual review by in-house appraisers. Over the recent 12 months the department has ordered 28,000 BPOs from vendors, obtained 8,000 interior BPOs, and obtained 1,700 full appraisals from outside appraisers.

The department consists of 22 valuation reviewers who are licensed and certified appraisers in various states. The specialists review high risk assets by location, market, balance and other factors to arrive at an objective value. The department also runs monthly reports which compare BPO vendor performance and broker performance using vendor scorecards. This group reports to Risk Management not to Servicing Management to ensure independent opinion on property values. As an additional quality control measure, the department tracks REO asset sales results compared with the values established by the property valuation department.

22

**CONFIDENTIAL**                                                          **RCPC00065161**

**REO Data**

During our review of the data we have noted that there are some extreme timelines for property liquidation and high losses.  The graph below list shows GMAC's results for timely liquidation of reo assets.  EdgeMAC needs additional information to examine that would allow us to determine if the delays in sale of assets or the high loss severities are attributed to economic considerations or mismanagement of the files.  Exhibit G is a listing of the REO loans with excessive times on market.  GMAC should receive follow up questions to determine the nature of the delay.



23

CONFIDENTIAL                                                    RCPC00065162

**Bankruptcy Practices**

GMAC utilizes the Process Management system to refer accounts to bankruptcy in its servicing system, and also uses Invoice Management for attorney billing and tracking and the BANKO software for monitoring new bankruptcy filings in the servicing portfolio through daily downloads from the vendor. The servicer currently handles about 50,000 bankruptcy cases of which approximately 32% are Chapter 7, 67% are Chapter 13 and the remainder are Chapter 11 & 12 cases. GMAC noticed a large increase in BK filings in 2008 which has subsequently slowed in January 2009 due to moratoriums and the impact of new legislation.

The systems effect an automated stop of collection activity once bankruptcy information is received and an exception report is reviewed by the department to determine if a BK account should be set up in the servicing system for a loan. The BANKO system also looks at BK discharges and dismissals by the courts, with an ensuing review by the department, which GMAC claims is a faster and more proactive process than waiting for mail notification from the courts. A separate team handles filing proofs of claim for the cases through designated attorneys, with checks and balances in place for verification of the claim amounts filed. Fees and court costs are monitored on GMAC's servicing system for recovery from the borrower or the investor as appropriate. Another team handles the filing of motions for relief from stay by reviewing all Chapter 13 filings which are 60 days or more delinquent on plan payments and files the MFR. The team utilizes daily system reports to track delinquent plans. The team also reviews post petition payment histories for possible MFR filings. In 2008 the servicer moved up the referral date for MFRs from 45 days to 60 days delinquent to enhance accuracy and also hired an attorney to audit all attorney filings and proofs of claim. GMAC reports an average of 65 days to file MFRs while Fannie Mae targets 74 days on average.

The loss mitigation department works with the bankruptcy department to determine if the borrower wants to establish a workout after the MFR has been approved by the court and sends the borrower a letter per HUD requirements. Chapter 7 bankruptcy filers are also contacted by the specialists to determine if the borrower wants to reaffirm his mortgage debt. A separate closing team monitors discharges, dismissals, surrenders, Chapter 7 closing orders, fees and costs incurred. A special team monitors Chapter 13 discharges for a possible complete reinstatement of the account and perform an audit of the amounts owed and actually paid by the borrower. Another BK team performs customer research, manages cash application, monitors delinquent taxes, payment changes, pre and post petition payments and notifies all concerned parties.

The servicer uses the Process Management system to measure BK staff productivity and processes completed including POCs, MFRs, affirmations, payment applications, etc. GMAC utilizes a monthly report card and dashboard reports to evaluate attorney performance.

24

**CONFIDENTIAL**

## Charge Off - Recovery

The Recovery Department operates as the Executive Trustee Services group, and 90% of the recovery portfolio is serviced by the front end; charge offs are referred to the Recovery group and reviewed for asset values and then attempts are made to contact the borrower for repayment. Mass mailing campaigns are used to contact borrowers of charged off assets and the department is more flexible in its recovery options when compared with departments working loans prior to charge off. The group contacts borrowers on second liens to try to establish some cash flow sufficient to payoff the amount within a 6-8 month span. The second lien note holder can sell its note and can determine the value of the note. The department evaluates assets and develops settlement campaigns to offer to borrowers. Current borrower financial information is utilized to determine what settlement is possible as a second lien holder. The department rarely if ever files a deficiency judgment because the action is too costly compared to the mere 1%-2% recovery experienced to date. GMAC does not garnish wages to recover debt.

The department's main focus is the state of California where there is the largest portfolio concentration and the fastest deterioration in value. The group's recent experience over the past year has been that 5% of borrowers of second lien charge offs are now negotiating settlements which equates to 250-300 deals monthly versus half that one year prior. The department noted that the most successful results are from collection efforts within 60-180 days from initial referral to the recovery group. After a period of six months without a settlement or cash flow the department puts the note out for sale in a blind bid for 2.5-3 cents on the dollar. The recovery department keeps 30% of any settlement funds collected and remits the rest to the note owner. 99% of the department's clients give delegated authority to dispose of their assets.

GMAC has an active 2nd lien modification plan. Borrowers are offered stated mods on 2nd lien loans in an effort to have them cashflow. GMAC stated that 25% of the 2nd lien loans are offered modification and 25% of those loans are successfully modified. To date based on the data provided 17 second lien loans have been modified in the EMX1 transaction which contradicts the statements made by GMAC during the servicing review.

We recommended GMAC perform process reviews in this area that should include the following:

1st TD all loans with a UPB of $50,000 or less should have a drive by BPO completed to determine if the current value supports continued servicing of the loan or being recommended for charge off. This should be ordered at 120 days delinquent. Current advances along with estimated future advances should be added to the UPB to determine if the loan meets established thresholds for charge off. This concern is being addressed since there does not appears to be an adequate timeline being met and not being provided with updated value

25

information.  While GMAC has a stated policy on when updated values are obtained we were not provided with that information to allow any type of validation to occur.

2nd TD loans should all be required to get updated values at 120 days delinquency.  In addition to following the same rules recommended for the 1st TD loans.  In either the 1st or 2nd TD scenario if the loan is cured and then becomes delinquent again values should be updated if it has been at least 6 months from the last value obtained.

Charge offs that are not sold need to be reviewed for determination if the lien is to be retained on the loan or released.  A number of cities and counties are now charging back to the lender / servicer the cost of repairs on abandoned properties and or the cost of tear down if the city deems the property uninhabitable.  This can contribute significantly to an increased loss on the loan.

It appears that at least on 2nd trust deeds being charged off there is little if no review done and the charge off is only based on the depth of the delinquency.   It is reasonable to expect an adequate review process in conjuncture with a charge off review to be completed by loss mitigation management for both 1st and 2nd's.

Implementing additional processes in this area will help reduce losses in the portfolio.

26

CONFIDENTIAL

RCPC00065165

## Charge Off Data

There are a significant number of 2nd Trust Deeds that exceed the 180 day threshold for Charge off. Servicing notes were not provided for the loans that were charged off to determine if adequate work or analysis was completed prior to the charge off of the loan.    In reviewing the Charged off loans after 210 days for 2nd Trust Deeds you will note a wide range in dates from the "Last Paid to Date" and the "Original Charge Off Date", it would appear that there are no set time lines for processing or review of a loan file for charge off established.   Exhibit H is a list of 2nd lien loans with excessive times to charge off.  GMAC should be questioned regarding this timeframe.



### 2nd Lien Days to Charge Off

There is a conflict of interest for GMAC when processing the charge off and recovery of loans. GMAC retains 30% of sale proceeds as income on loans that are charged off and subsequently sold. This practice disincents them from aggressively working 2nd lien loans prior to charge off. They are financially incented to allow loans to charge off in order to collect a fee for their recovery.  EdgeMAC was unable to identify specific language in the document that allows GMAC to collect this fee.  The PSA references a 50bp servicing fee and ancillary income off of the loans.  Proceeds from the transactions do not represent ancillary income and EdgeMAC encourages FGIC to consult counsel to determine the legitimacy of paying for this service. Safeguards should be put in place that removes this conflict so that GMAC works the loans in the most prudent manner available.

27

CONFIDENTIAL

RCPC00065166

## Loss Severity

Loss severities for 1st lien loans liquidated in an REO sale are typical given the current economic environment. The weighted average severity for these loans is 51.0%. GMAC is experiencing a loss severity on short sales of 23.6%. As stated in other sections, EdgeMAC believes that a more focused effort on short sales by GMAC would improve the overall performance of the transaction and help reduce losses. 1st Lien loans that were written off have a total loss severity of 105.1%. The non recoverable losses associated with these loans more than likely results from the advancing of interest on the loans. Advancing of principal and interest is discussed in the advancing section of this document.

Per policy, second lien loans are to be charged off at 180 days and interest stops advancing at 90 days. The loss severity on a standard amortizing 2nd lien loan with a 10% interest rate under these advancing terms should be approximately 103.5%. This amount will vary based on the age of the loan and the interest rate being advanced. There are loans that fall outside of the norm for the transaction. EdgeMAC advises that any loan with a severity in excess of 107% should be analyzed to determine the nature of the excessive loss. Exhibit I lists loans that have a severity in excess of 107%.



## Loss Severity Breakdown in Units

**CONFIDENTIAL**

**RCPC00065167**

## Repurchase Reviews

To date based on the Trustee statements, GMAC has Repurchased 25 loans for $9.7 million from the transaction which represents approximately 1.3% of the issuance amount. GMAC has an inherent conflict of interest when reviewing loans for breaches of Reps and Warrants. As servicer they are tasked with identifying loans that are in breach, but because they are the Depositor, they are also obligating themselves to repurchase the loans at what would ultimately be a substantial loss to their company. EdgeMAC strongly encourages FGIC to initiate an independent review of the loans for possible breaches.   Other monolines routinely undertake these reviews and have had extremely favorable results.

The review should be targeted to loans that generated a substantial loss to the transaction and became delinquent quickly after the transaction closed.  The lack of upfront due diligence on the initial sale and the distressed state of the originator will more than likely result in higher than usual breaches.  Targeting these loans initially has the highest probability of identifying issues and will allow FGIC to identify systemic issues that may help identify other segments of the pool for review.

## Reconciliation of Remittances

Data was not provided by GMAC to provide a reconciliation of remittances or prepayment penalties earned.   While this was in the scope of requested oversight the data was requested but never provided. EdgeMAC reviewed the trust statements for each month of review. We performed a reasonableness check on the information in the report based on the data that was provided and did not note any exceptional items on the reports.

There are two servicer trigger tests that are applied to the transaction.  The first is a rolling 60 day delinquency test.  The threshold for the test is 30%.  The servicer is currently out of compliance with this test.  The second test is a loss test that does not become applicable until September of 2009.  When the testing period is reached GMAC will be well outside of the thresholds and out of compliance with the test.  The trigger test does not require both tests be failed.  Being out of compliance with either test is a failure of the trigger and can result in the removal of the servicer.

29

**CONFIDENTIAL**

**RCPC00065168**

**Reconciliation of Compliance and Documents**

Data was not provided by GMAC to provide a reconciliation of compliance of documents. While this was in the scope of requested oversight the data was requested but never provided. No verbal representations made by GMAC as to how correspondence and payment reporting is handled

This is a critical area to be reviewed. Qualified written request come in almost daily and they must be responded to in a timely manner and acknowledge receipt of the request.   This falls under RESPA compliance rules in acted on servicers.

**Advancing**

GMAC has a standard advancing policy for both 1st and 2nd lien loans.  Based on conversations during the servicing review there is a little work done on a loan level to determine if advances are being made that are non recoverable.  GMAC should look into this issue further, non recoverable advances put stress on the cashflows of the securitization as loans are liquidated or charged off.  GMAC is properly reimbursing itself for advances in the EMX1 trasnaction.  This particular trade allows for reimbursement of non recoverable advances from the all loans with cash deposited in the collection account.  Some transactions only allow for reimbursement of non recoverable from the specific loan that the advance was made.  FGIC should review its other transactions and determine if advances are being properly handled in all of the deals it insures.

As discussed in the review, GMAC has a stop advance policy for 2nds at 90 days delinquent. FGIC has asked GMAC to revise this policy and stop advancing earlier.  This will reduce the severities on the charged off loans and help the timing of the cashflows in the securitizations.

30

**CONFIDENTIAL**

**RCPC00065169**

## Loan File Review

The loan file review of 98 loans was completed utilizing the limited information available within the loan histories provided by GMAC. After repeated requests for additional loan information were ignored, this reviewer worked on the file review with only the loan history, some collection comments and credit file available for review. The findings below are based on the information that could be gathered from the histories and collections comments.

The following are some of the issues that were uncovered during the file review of 98 accounts:

- There was no way of knowing which phone numbers for the borrowers were called when the servicer is unable to contact the borrower for a period of time. The history doesn't show if the collectors used auto dialers or systems that left automated messages as well as manned phone calls. The servicer seemed to be doing the minimum amount of effort to collect these loans. There was little mention of skip tracing or property inspection used as tools to determine the location of the borrower. Many loans indicated days and weeks calling the same number with no result. There appeared to be no deeper level of investigations into a borrower's current financial situation, and the borrower's reason for default many times changed throughout the loan histories.

- Loss mitigation efforts were focused on repayment plans and some type of loan modification program such as the "blind bulk permanent modification program" which offered the borrower a chance to begin to reinstate the loan and make an initial down payment. These programs and the standard repayment plans failed because the borrowers usually offered these programs had unreliable income, if any and they would make one or two payments and then fail the plan. Often the servicer would put a borrower on 3-4 different repayment plans which the borrower failed to maintain and then the servicer would offer a modification of the loan when the borrower was not in a position to pay. The servicer rarely noted in the loan history any other loss mitigation options except for short sales. A deed in lieu of foreclosure was not an option noted in the loan histories. There were instances where the borrower assumed that a loss mitigation review for a loan modification was underway, but the property was foreclosed on. One loan (Brown FGIC # 431351) was serviced by GMAC where major water damage occurred at the property and a loss draft was in process, and the servicer foreclosed and sold the property before the loss draft could be processed and the property repaired by the borrower.

- Skip tracing was rarely mentioned in the loan histories nor were the results of the skip tracing noted. Based on a review of credit files provided on site the original application and loan closing information provided valuable information such as the borrower and co borrower's place of employment, and home and cell phone numbers at the time of application. The reviewer couldn't tell from the loan history provided if all of these

31

CONFIDENTIAL

RCPC00065170

contact possibilities were checked by the servicer during skip tracing efforts or regular calling campaigns.

- There was little, if any, mention of contacting a first lien holder when GMAC serviced the second lien, even if GMAC or Homecomings serviced the first lien. There appeared to be little or no coordination of information or action between the first and second lien servicing when GMAC appeared to be handling the servicing for both loans. The combined loan to value and the delinquency status of each lien on the property are certainly critical factors to consider when a second lien servicer is considering loss mitigation options, foreclosure or charge offs.

- There were no indications if the servicer attempted to determined occupancy by the borrower or a tenant even when the property contained 2 or more living units. There were mentions of inspections requested but no results incorporated in the loan history provided. This is important information to consider when dealing with 2nd liens or multiple unit dwellings.

- No doorknockers were evident in the history and GMAC confirmed that they don't use this tool. This service would have been very useful when the servicer was unable to obtain a response through phone attempts or written correspondence.

- There were some net equity analysis results indicated in the loan histories for second liens, but the details on the first lien were not evident. To provide the full analysis of the loan, the current market or BPO value and the UPB of the first lien, if any should have been part of the comments in the history. The status of the first lien was rarely mentioned in the history received for review.

- There were a number of loans where the escrow balance was negative, meaning the servicer had advanced funds to protect the property. There are only a few instances in the file review where the servicer insisted on repayment of these advances from the borrower. The status of property taxes and lapsed insurance policies or unpaid premiums were rarely mentioned in the loan history so it was difficult to determine if the servicer was closely monitoring these escrow items in order to protect the properties from loss due to tax lien sale or fire hazard loss due to lapsed coverage.

- Reasons for default are numerous, and some borrowers have 4-5 reasons for default; the reviewer couldn't determine if the servicer can verify these reasons through financial info taken or just notates the information for the record. Some borrowers advised that they can't continue paying because their tenant stopped paying. The servicer could be more aggressive in seeking payment with borrowers who are acting as landlords if there is equity in the properties. It should also be noted that per the original loan documents if the property was to be owner occupied and there is mention of a

32

tenant by the borrower in the the servicing notes this may trigger a repurchase demand.

- When loans were reviewed for foreclosure there was no analysis of the decision noted within the loan history provided. Factors such as the borrower payment history, property loan to value, property condition, lien position, were not detailed in an analysis and approval comment in the history provided.

- When a loan was charged off there was no analysis of the delinquency status, first lien status, net equity, or probability of borrower payment noted in the loan history provided. Most of the second lien loans charged off in full remained on the system with the unpaid principal balance remaining for possible future collection. There appeared to be minimal follow up by the recovery department on charged off second lien balances noted in the loan history provided.

- When an REO was acquired, there was no market analysis noted in the loan history; and when an REO was sold or liquidated there was no analysis of the net proceeds and losses absorbed by the investors.

In summary, GMAC uses standard calling campaigns to contact borrowers but rarely utilizes skip tracing or other additional methods such as doorknockers or property inspections to reach borrowers when they fail to respond or phone number have been disconnected and this is an industry standard practice. When a second lien is being serviced the history does not provide any information related to first lien status, current market value, property condition, borrower financial information which would enable a proper analysis for charge off consideration. When servicing second liens it is not clear in the history whether the loan is junior or senior and there is no clear information about first lien status, which is important in determining next course of action for delinquent junior liens. Loss mitigation efforts by the servicer do not provide evidence in the history that all possible workout alternatives were at least mentioned in discussions with the borrowers. Charge off and foreclosure reviews information in the history does not provide quantified information for the approval in terms of property value, borrower financial situation, etc. Tracking of bankruptcy proceedings are difficult to extract from the loan history comments, and it appears for one loan (FGIC 322253 Miller & Taylor), the proof of claim was filed a year after the original bankruptcy filing.

Exhibit J details the loan files reviewed

33

CONFIDENTIAL

RCPC00065172

## Calling Effort Targets

GMAC provided their matrix that identifies the amount of activity that is performed based on their classification of the risk profile of the transactions. The matrix that they provided is below.

| Service Category | Risk Tier | Pre-30 | | 30-Plus |
|---|---|---|---|---|
| | | Start Day | Campaigns Per Month | Campaigns Per Month |
| Standard | High | 16 | 3 | 8 |
| | Moderate | 22 | 2 | 6 |
| | Low | 25 | 1 | 4 |
| Moderate | High | 5 | 8 | 15 |
| | Moderate | 12 | 5 | 12 |
| | Low | 20 | 2 | 9 |
| Accelerated | High | 2 | 15 | 20 |
| | Moderate | 8 | 9 | 16 |
| | Low | 16 | 4 | 12 |

| Risk | EI Coll Scores | EI LM Scores | FICO Scores |
|---|---|---|---|
| High | 0-44 | 100-310 | < 620 |
| Moderate | 45-70 | 311-390 | n/a |
| Low | 97-99 | 391-400 | ≥ 620 |

Below is the breakdown of where all FGIC loans fall within the servicing matrix. All loans fall into the lowest servicing category. Within this ranking 74% of the loans have the lowest risk tier, meaning that they receive the least amount of attention by GMAC compared to all other loans GMAC is servicing. This same category is where GMAC stated that the Agency and Government loans that are serviced fall. Given the profile of the pool it is unreasonable that GMAC has assigned them this level of risk relative to other loans that they service.

| | |
|---|---|
| 67,667 | Standard/Low |
| 1,362 | Standard/Moderate |
| 22,258 | Standard/High |
| 91,287 | Total loans |

While early calling is important to mitigate future delinquency, call campaigns tend to have a great number of unanswered calls as well as just leaving messages. The real problem with default is the low conversion of accounts to a current status. This is shown in the low numbers

34

**CONFIDENTIAL**

**RCPC00065173**

of modifications and forbearance plans that are being set up by the Loss Mitigation department.   The account to associate count is very high.

In addition loss mitigation is not utilizing outside services such as door knock services or participating in local Outreach events sponsored by Congressman, Governors', AG Offices, Mayors or Advocacy groups such as Acorn on a national level or ESOP on a local level in Ohio just to address a few.  These types of activities are usually tied through the servicers Office of the President or Customer Complaint departments and can be very productive if managed properly in conjunction with the servicer's loss mitigation department.

Information was not provided in this review to show the number and or quality of outbound or inbound calls to the 90+ borrowers.  This is the area that can see the greatest results if the number of accounts is lowered to a more manageable level.

The Call Center has recently increased their staff by 100 associates and has open requisitions for an additional 80.   These will all by new associates that will need to be trained to GMAC's standards on policy and practices and will not be as effective as a more seasoned employee. This area also experienced a high turnover rate in 08 of 40%.  In GMAC's search for additional employees it suggests that they also are seeing the below par results and that their associates are handling too many accounts and not effectively.

Before FGIC considers increasing GMAC's compensation to move the loans into a more aggressive campaign, GMAC should be questioned about why the loans are considered Standard/Low and what attributes are used to make this determination.  As stated, given the composition of the EMX1 transaction, EdgeMAC is perplexed at the categorization. Additionally, it is difficult to determine how effective a more aggressive early calling campaign will be given some of the servicer's shortcomings.  Also noted is that a great deal of the loss exposure resides in the loss mitigation area which will not be changed by adjusting the servicing matrix.

35

CONFIDENTIAL

RCPC00065174

## Summary

The servicing review and surveillance project of GMAC identified numerous areas that need to be addressed. The underlying collateral in the transaction is contributing to the overall poor performance but the servicer has several areas which need improvement. There were no materials prepared by GMAC in advance of the March 25th review. Specific information requested during the course of the review was also generally not made available. EdgeMAC drew many of its conclusions from the data provided by FGIC. Numerous inconsistencies were noted between the verbal information provided by GMAC and the underlying performance of the security as identified through an analysis of the data.

Additional information provided directly by the servicer may alter some of our findings. Several data tapes were made available for each month and many of the fields did not reconcile to one another. EdgeMAC used its best efforts to validate the information being used in this assignment. The servicer was not forthcoming in this review so many conclusions were drawn from the underlying data.

The servicer has not changed many of its processes to keep current with industry standards however new management is in place which could change future activities. In many areas employees were assigned excessive accounts which affect their ability to work the loans appropriately. GMAC noted that they have numerous vacancies and are attempting to increase staff to reduce the workload. It was unclear how long the job requisitions had been outstanding and how aggressively GMAC is attempting to fill the positions.

EdgeMac's review of GMAC's operation on site revealed the following positive operational areas:

- Highly experienced senior management team combining the strong knowledge and experience of executives consolidated from the prior organizations of GMAC Mortgage, GMAC-RFC and Homecomings Financial.
- Strong experience servicing a range of loan products including consumer loans (HELOC and second mortgages), prime, Alt-A, subprime, FHA/VA, Fannie Mae and Freddie Mac loans, as well as performing primary, special, master and subservicing for its own portfolio and for clients.
- Advanced technology capable of automating the workflow for servicing millions of loans.
- Ability to service loans of any type at any of its servicing locations through use of its debt service utility system developed with the MortgageServ system of FiServ.

EdgeMac identified the following areas for risk with opportunities for improvement:

- Heavy reliance on dialer driven technology. The servicer does not drill down further to contact borrowers when there are no viable phone numbers or the borrower is unresponsive to messages left.

36

- Lack of skip tracing efforts that actually visit the property. Doorknockers are not used by the servicer as of the March 2009 on site review.
- Infrequent use of alternative loss mitigation strategies such as deed in lieu when borrower minimal income and excessive obligations make it difficult to arrive at a realistic modification, repayment plan or short sale payoff. The review of the loan file sample indicated that very few short sale offers actually resulted in actual payoffs. In the current economic climate there are a large number of foreclosed properties competing for the same limited number of qualified buyers.
- The servicer rarely differentiates junior lien and senior lien collection efforts. It is extremely important to reach a junior lien borrower as early as possible in delinquency and achieve a workable loss mitigation alternative for the borrower. Routine calling campaigns to junior lien borrowers are insufficient to achieve positive results with this loan product. More focused effort to contact the borrower is called for.
- The effect of the consolidation of the mortgage operations and the subsequent reduction in force of a large number of experienced staff and managers that handled the loans. There is a currently a strain on the labor resources of all servicers due to the need for trained loss mitigation staff to handle the greatly increased number of requests for workouts and relief from high interest rates. The servicer needs to develop a strategy to provide service to its borrowers in need while keeping its own costs of servicing under control.
- Consideration of the impact of the bankruptcy filing by General Motors, former parent company of the three firms operating separately prior to the consolidation under GMAC.

In general, this servicer uses standard servicing practices to handle a multi-billion dollar loan portfolio in an advanced technology environment. This approach works in a portfolio of prime product first liens where a disciplined borrower with solid credit history is responsible about his financial obligations. Some loan products such as second mortgages, HELOCs and subprime mortgages require more hands on management when delinquent than the standard first lien mortgage. The borrower naturally has less interest in preserving a second lien than he does in protecting his first lien from foreclosure. These issues have been raised with GMAC in the past prior to the arrival of the new management staff. Raising this issue again could be beneficial.

The sample files reviewed indicated a number of second liens that were charged off in full without significant discussion of the delinquency with the borrowers. Where a borrower was delinquent and treating the mortgage as an investment property, the borrower rarely took funds from his own pocket to keep the loan current and usually blamed the past tenants for the payment arrears. This servicer has to be more proactive in visiting these rental properties early in the delinquency cycle to determine the asset's physical condition, occupancy and estimated market value in order to make an informed decision about default management.

The mortgage industry is experiencing unprecedented delinquencies. Servicers are challenged to effectively collect on the loans in their portfolio. GMAC does not appear to be addressing

37

many of the issues that it is facing as compared to some more proactive and innovative approaches by others to effectively collect on difficult loan portfolios.

38

CONFIDENTIAL

RCPC00065177

## Recommendations

Summarized below are EdgeMAC's recommendations to FGIC for consideration.

- Perform a repurchase file review on loans which experienced high loss severities that became delinquent early in the securitization. The number of loans repurchased in the transaction is minimal. Given the status of the originator at the time of sale and GMAC's conflict of interest regarding repurchases, a third party review is warranted.
- Change the advancing of 2nd lien loans to 30 days. The excessive severities and non recoverable advances are attributable to the current advancing policy,
- Remove the delegated authority from GMAC regarding the charge off of 2nd lien loans. GMAC appears to be neglecting these loans in loss mitigation and financially benefits from allowing the loans to charge off and be sold by their recovery unit. Prior to any loan being charged off an equity analysis must be performed and a review of the collection efforts must be completed to ensure loans were given proper attention.
- EdgeMAC was unable to locate any language in the PSA that allows GMAC to take a fee for disposing of the charged off loans. We encourage FGIC to discuss this with their counsel and determine if it is an acceptable practice. EdgeMAC has seen language built into other documents that addresses this behavior. The documents on the EMX1 transaction are silent.
- Challenge the existing modification process where GMAC requires forbearance agreements to be completed prior to a loan modification.
- Seek alternatives to paying an additional fee to increase the collection efforts on the front end. Without door knock and other outreach programs improvement is questionable. A trial of 4-6 months may be prudent. Incentive based programs for GMAC may also be more beneficial.
- Require GMAC to reduce the amount of loans being managed per associate.
- Require GMAC to add remote REO Asset Managers in metropolitan areas with high foreclosure rates and high losses. Local employees can visit properties, deal more effectively with local Real Estate Agents and local building departments as needed and stay abreast of local Real Estate trends.
- Require GMAC to provide monthly aging reports for loans not referred to foreclosure
- Require GMAC to provide a list 1st TD loans monthly with LTV's based on updated values greater than 85% and explanations as to why advances have not been stopped
- Perform a cost benefit analysis of removing GMAC as servicer from the transaction. A trigger event has taken place with the 60 day delinquent accounts and GMAC can be removed.
- Obtain updated credit score and property values (where appropriate) to allow EdgeMAC to identify high risk loans that are current right now. This will allow FGIC to work with GMAC to potentially shift loans into different collection queues to help mitigate future delinquency. The additional information is required to assist EdgeMAC in narrowing the focus of high risk loans. General indications can be made regarding loans with a high risk profile but additional data is needed to derive loan level results.

39

- Obtain GMAC's equity analysis and updated credit scores to identify delinquent loans that have a reasonable chance of reperformance. As in the prior recommendation general indications can be made regarding loans with a high risk profile but additional data is needed to derive loan level results.

40

CONFIDENTIAL                    RCPC00065179

**Legal Statement**

The information contained in this report is confidential.  By accepting this report, the recipient agrees that it will use, and it will cause its directors, officers, employees, agents, professional advisors and representatives to use, the information herein for internal purposes only and will not divulge any such information to any other person without EdgeMAC's prior consent.

The information is an analysis of GMAC's servicing operation and deal surveillance.  It is based solely on data obtained from FGIC and interviews with individuals of GMAC.  Neither EdgeMAC nor its representatives or affiliated make any representation or warranty as to the accuracy of the underlying data utilized to complete the analysis.  No one assumes any duty to update this presentation or revise any of the statements contained herein, whether as a result of new information, future developments or otherwise.

Do not distribute this report in any manner to any third party without our prior written consent.

41

CONFIDENTIAL

RCPC00065180

# Exhibit A

CONFIDENTIAL

RCPC00065181

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC – RASC 2B07 EMXA1
Balances at Origination

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 4,051 | 750,264,926 | | 8.40% | 83.97% | 616 | 40.67% | 66.9% | 33.1% | 24.3% | 92.7% | 63.4% | |
| **Property Type** | | | | | | | | | | | | | |
| SFR | 2,696 | 475,692,633 | 63.4% | 8.37% | 83.24% | 613 | 40.27% | 69.3% | 30.7% | 25.5% | 94.6% | 100.0% | 0.0% |
| PUD | 366 | 50,473,641 | 6.7% | 8.27% | 86.28% | 623 | 39.91% | 52.4% | 47.6% | 19.3% | 82.3% | 0.0% | 0.0% |
| Multi Family | 298 | 78,230,519 | 19.4% | 8.37% | 88.03% | 630 | 41.24% | 57.4% | 42.6% | 13.8% | 88.7% | 0.0% | 0.0% |
| Other | 72 | 11,129,498 | 1.5% | 8.80% | 83.68% | 613 | 39.19% | 61.5% | 38.5% | 29.0% | 81.8% | 0.0% | 0.0% |
| Condo | 635 | 134,734,569 | 15.6% | 8.37% | 85.42% | 612 | 41.94% | 63.8% | 36.2% | 24.8% | 93.1% | 0.0% | 0.0% |
| **Occupancy** | | | | | | | | | | | | | |
| Owner | 3,732 | 685,652,143 | 92.7% | 8.35% | 83.91% | 615 | 40.80% | 67.7% | 32.8% | 25.1% | 100.0% | 64.7% | |
| Non Owner | 213 | 35,155,763 | 4.7% | 9.02% | 85.07% | 623 | 38.62% | 75.1% | 24.9% | 13.9% | 0.0% | 48.6% | |
| 2nd Home | 106 | 19,457,020 | 2.6% | 9.17% | 87.61% | 641 | 39.74% | 41.6% | 58.4% | 17.3% | 0.0% | 46.9% | |
| **Loan Purpose** | | | | | | | | | | | | | |
| Purchase | 2,018 | 325,480,647 | 43.2% | 8.49% | 88.86% | 620 | 41.83% | 95.0% | 5.0% | 19.2% | 91.0% | 54.8% | |
| Rate/Term | 203 | 17,886,519 | 2.3% | 9.93% | 86.62% | 551 | 38.07% | 78.3% | 21.7% | 70.6% | 92.8% | 67.7% | |
| Cash Out | 1,830 | 406,505,837 | 54.5% | 8.09% | 79.56% | 617 | 40.51% | 75.5% | 24.2% | 26.3% | 94.1% | 70.0% | |
| **Documentation Type** | | | | | | | | | | | | | |
| Full / Alt | 2,724 | 501,656,333 | 66.9% | 8.25% | 83.68% | 609 | 39.51% | 100.0% | 0.0% | 26.4% | 93.1% | 65.7% | |
| Stated | 1,328 | 248,988,593 | 33.1% | 8.81% | 84.14% | 629 | 42.81% | 0.0% | 100.0% | 20.1% | 91.9% | 58.7% | |
| **Original FICO Score** | | | | | | | | | | | | | |
| Less than 500 | 110 | 29,175,324 | 2.7% | 8.66% | 83.42% | 476 | 40.99% | 82.7% | 17.3% | 13.0% | 99.6% | 70.6% | |
| 500 to 549 | 477 | 83,336,789 | 11.1% | 8.58% | 82.41% | 530 | 40.35% | 76.8% | 23.2% | 20.3% | 94.5% | 66.7% | |
| 550 to 599 | 975 | 176,972,570 | 22.8% | 8.49% | 82.92% | 577 | 40.72% | 74.5% | 25.5% | 21.0% | 94.7% | 68.6% | |
| 600 to 649 | 1,437 | 278,264,808 | 37.1% | 8.47% | 85.18% | 624 | 40.70% | 83.7% | 36.3% | 22.9% | 92.6% | 61.4% | |
| 650 to 699 | 786 | 141,790,527 | 18.9% | 8.22% | 84.16% | 671 | 40.77% | 62.4% | 37.6% | 30.0% | 89.0% | 54.9% | |
| 700 to 749 | 206 | 42,476,597 | 5.7% | 8.49% | 84.32% | 718 | 41.75% | 49.7% | 48.4% | 32.9% | 92.8% | 44.7% | |
| 750 to 799 | 56 | 17,283,310 | 1.6% | 7.56% | 75.93% | 767 | 37.68% | 49.6% | 51.4% | 60.5% | 89.2% | 46.7% | |
| 800 and greater | 5 | 1,141,090 | 0.2% | 7.99% | 75.79% | 802 | 28.19% | 48.2% | 51.8% | 58.6% | 100.0% | 100.0% | |
| **Original Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 24 | 14,268,180 | 1.9% | 5.59% | 67.91% | 708 | 29.58% | 61.9% | 38.1% | 90.3% | 100.0% | 71.5% | |
| 6.00% to 6.99% | 226 | 60,604,516 | 8.1% | 6.72% | 76.00% | 640 | 32.37% | 87.2% | 12.8% | 38.3% | 96.7% | 67.2% | |
| 7.00% to 7.99% | 783 | 197,258,287 | 26.3% | 7.51% | 80.23% | 628 | 33.68% | 79.1% | 20.9% | 22.0% | 96.5% | 66.5% | |
| 8.00% to 8.99% | 945 | 205,976,516 | 28.0% | 8.24% | 83.83% | 608 | 41.13% | 88.9% | 32.1% | 12.1% | 90.8% | 60.5% | |
| 9.00% to 9.99% | 814 | 154,481,396 | 20.8% | 8.38% | 85.06% | 597 | 41.72% | 55.3% | 44.7% | 10.8% | 89.0% | 63.4% | |
| **Current Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 197 | 56,415,983 | 7.5% | 4.93% | 79.17% | 631 | 32.92% | 67.6% | 32.7% | 28.5% | 98.3% | 68.1% | |
| 6.00% to 6.99% | 296 | 78,906,958 | 10.5% | 6.52% | 79.50% | 626 | 40.47% | 73.0% | 27.0% | 30.2% | 97.3% | 56.9% | |
| 7.00% to 7.99% | 790 | 175,568,676 | 23.4% | 7.38% | 81.38% | 624 | 39.41% | 79.2% | 20.8% | 23.1% | 96.8% | 66.1% | |
| 8.00% to 8.99% | 793 | 185,843,084 | 22.1% | 8.48% | 82.84% | 611 | 40.78% | 70.8% | 29.6% | 14.7% | 89.9% | 60.5% | |
| 9.00% to 9.99% | 771 | 150,570,076 | 20.1% | 9.45% | 86.50% | 602 | 41.31% | 86.3% | 35.7% | 11.6% | 87.1% | 62.9% | |

CONFIDENTIAL

RCPC00065182

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC – RASC 2B07 EMXA1
Balances at Origination

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 4,051 | 750,264,926 | | 8.40% | 83.97% | 616 | 40.67% | 66.9% | 33.1% | 24.3% | 92.7% | 63.4% | |
| **Original Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 552 | 19,762,569 | 2.6% | 11.48% | 96.56% | 613 | 41.28% | 54.7% | 35.3% | 89.4% | 93.4% | 64.3% | |
| $50,000 to $99,999 | 648 | 47,260,273 | 6.3% | 10.36% | 89.63% | 612 | 40.33% | 66.4% | 33.6% | 66.4% | 89.3% | 67.8% | |
| $100,000 to $199,999 | 1,437 | 209,486,603 | 27.9% | 8.67% | 82.59% | 609 | 40.33% | 70.8% | 29.6% | 24.5% | 91.9% | 71.3% | |
| $200,000 to $299,999 | 750 | 184,797,116 | 24.6% | 8.09% | 83.12% | 618 | 43.65% | 66.0% | 34.0% | 18.0% | 93.1% | 64.0% | |
| $300,000 to $399,999 | 345 | 118,261,692 | 15.8% | 7.98% | 84.58% | 619 | 42.19% | 65.0% | 35.0% | 11.8% | 94.5% | 67.9% | |
| $400,000 to $499,999 | 162 | 72,144,261 | 8.4% | 7.90% | 86.11% | 621 | 43.44% | 63.8% | 36.2% | 15.3% | 93.6% | 51.5% | |
| $500,000 to $599,999 | 83 | 44,846,647 | 6.0% | 7.52% | 83.35% | 631 | 38.62% | 50.4% | 49.6% | 13.7% | 92.7% | 52.9% | |
| $600,000 to $699,999 | 38 | 24,364,972 | 3.2% | 7.86% | 84.93% | 638 | 40.67% | 55.8% | 44.2% | 33.1% | 89.4% | 45.4% | |
| $700,000 to $799,999 | 11 | 10,525,600 | 1.4% | 6.88% | 82.89% | 635 | 78.22% | 82.2% | 17.8% | 54.6% | 100.0% | 63.3% | |
| Greater than $1,000,000 | 2 | 2,000,000 | 0.3% | 7.04% | 70.18% | 583 | 40.50% | 100.0% | 0.0% | 50.0% | 100.0% | 58.8% | |
| **Current Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 552 | 19,762,569 | 2.6% | 11.48% | 96.56% | 613 | 41.28% | 54.7% | 35.3% | 89.4% | 93.4% | 64.3% | |
| $50,000 to $99,999 | 648 | 47,260,273 | 6.3% | 10.36% | 89.63% | 612 | 40.33% | 66.4% | 33.6% | 66.4% | 89.3% | 67.8% | |
| $100,000 to $199,999 | 1,437 | 209,486,603 | 27.9% | 8.67% | 82.59% | 609 | 40.33% | 70.8% | 29.6% | 24.5% | 91.9% | 71.3% | |
| $200,000 to $299,999 | 750 | 184,797,116 | 24.6% | 8.09% | 83.12% | 618 | 43.65% | 66.0% | 34.0% | 18.0% | 93.1% | 64.0% | |
| $300,000 to $399,999 | 345 | 118,261,692 | 15.8% | 7.98% | 84.58% | 619 | 42.19% | 65.0% | 35.0% | 11.8% | 94.5% | 67.9% | |
| $400,000 to $499,999 | 162 | 72,144,261 | 8.4% | 7.90% | 86.11% | 621 | 43.44% | 63.8% | 36.2% | 15.3% | 93.6% | 51.5% | |
| $500,000 to $599,999 | 83 | 44,846,647 | 6.0% | 7.52% | 83.35% | 631 | 38.62% | 50.4% | 49.6% | 13.7% | 92.7% | 52.9% | |
| $600,000 to $699,999 | 36 | 24,364,972 | 3.2% | 7.86% | 84.93% | 638 | 40.67% | 55.8% | 44.2% | 33.1% | 89.4% | 45.4% | |
| $700,000 to $799,999 | 11 | 10,525,600 | 1.4% | 6.88% | 82.89% | 635 | 78.22% | 82.2% | 17.8% | 54.6% | 100.0% | 63.3% | |
| Greater than $1,000,000 | 2 | 2,000,000 | 0.3% | 7.04% | 70.18% | 583 | 40.50% | 100.0% | 0.0% | 50.0% | 100.0% | 58.8% | |
| **Balloon** | | | | | | | | | | | | | |
| Yes | 2,453 | 437,797,133 | 58.4% | 8.59% | 85.98% | 614 | 42.44% | 55.5% | 44.5% | 13.5% | 91.9% | 59.4% | |
| No | 1,598 | 312,467,775 | 41.6% | 8.13% | 81.29% | 619 | 38.19% | 68.8% | 31.2% | 31.9% | 93.9% | 69.0% | |
| **Amortization Term** | | | | | | | | | | | | | |
| 180 | 22 | 1,569,999 | 0.2% | 10.33% | 83.29% | 643 | 35.97% | 58.3% | 31.7% | 100.0% | 94.0% | 78.3% | |
| 240 | 83 | 4,773,463 | 0.6% | 10.95% | 72.68% | 635 | 40.32% | 84.5% | 15.5% | 100.0% | 92.5% | 24.6% | |
| 360 | 2,344 | 355,520,652 | 47.4% | 8.58% | 83.94% | 620 | 38.91% | 57.0% | 33.0% | 40.2% | 93.9% | 66.7% | |
| 480 | 1,546 | 382,187,463 | 50.9% | 8.17% | 84.13% | 611 | 42.29% | 66.3% | 33.7% | 8.2% | 91.4% | 59.9% | |
| **Product Type** | | | | | | | | | | | | | |
| Arm 10/20 | 3 | 868,890 | 0.1% | 7.93% | 69.38% | 646 | 49.57% | 80.7% | 19.3% | 0.6% | 100.0% | 100.0% | |
| Arm 2/28 | 1,285 | 433,580,649 | 57.7% | 8.28% | 83.87% | 609 | 41.65% | 64.0% | 36.0% | 0.0% | 90.8% | 56.9% | |
| Arm 2/28 IO | 113 | 35,564,541 | 4.7% | 8.00% | 88.34% | 654 | 38.36% | 76.0% | 24.0% | 0.0% | 91.0% | 56.9% | |
| Arm 3/27 | 490 | 91,210,060 | 12.2% | 8.18% | 84.57% | 599 | 41.22% | 72.2% | 27.8% | 0.0% | 93.6% | 66.6% | |
| Arm 3/27 IO | 21 | 6,376,540 | 0.8% | 7.57% | 83.58% | 641 | 36.42% | 80.1% | 19.9% | 0.0% | 100.0% | 52.8% | |
| Arm 5/25 | 15 | 3,565,986 | 0.5% | 7.04% | 79.43% | 630 | 40.01% | 100.0% | 0.0% | 0.0% | 100.0% | 37.3% | |
| Arm 5/25 IO | 4 | 1,503,780 | 0.2% | 6.85% | 83.21% | 633 | 27.05% | 100.0% | 0.0% | 0.0% | 95.5% | 43.1% | |
| Fixed | 1,500 | 182,610,197 | 24.3% | 8.92% | 83.99% | 629 | 38.76% | 72.6% | 27.4% | 100.0% | 95.5% | 66.5% | |
| **Original DTI** | | | | | | | | | | | | | |
| Less than 20% | 214 | 50,101,977 | 6.7% | 8.06% | 82.10% | 616 | 12.44% | 93.0% | 7.0% | 34.5% | 88.2% | 65.5% | |
| 20.0% to 29.9% | 424 | 75,988,111 | 10.1% | 8.10% | 81.55% | 613 | 24.99% | 73.8% | 26.2% | 35.4% | 91.3% | 66.4% | |
| 30.0% to 39.9% | 860 | 144,293,126 | 19.2% | 8.33% | 83.12% | 618 | 35.06% | 68.7% | 31.3% | 22.3% | 92.3% | 68.9% | |
| 40.0% to 49.9% | 1,513 | 299,514,269 | 39.9% | 8.45% | 84.24% | 620 | 44.86% | 57.7% | 42.3% | 22.2% | 94.3% | 61.5% | |
| 50.0% to 59.9% | 935 | 180,224,433 | 24.0% | 8.47% | 85.08% | 612 | 52.63% | 75.5% | 24.5% | 22.2% | 92.8% | 65.7% | |
| 60.0% and greater | 1 | 141,920 | 0.0% | 9.88% | 75.60% | 704 | 61.00% | 100.0% | 0.0% | 0.0% | 100.0% | 100.0% | |

**CONFIDENTIAL**

RCPC00000065183

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC – RASC 2B07 EMAX1
Balances at Origination

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 4,051 | 750,264,926 | | 8.40% | 83.97% | 616 | 40.67% | 66.9% | 33.1% | 24.3% | 92.7% | 63.4% | |
| **Lien Position** | | | | | | | | | | | | | |
| 1st | 3,038 | 689,097,761 | 92.4% | 8.13% | 82.63% | 617 | 40.47% | 67.6% | 32.6% | 13.5% | 92.6% | 63.9% | |
| 2nd | 1,013 | 57,167,152 | 7.6% | 11.68% | 97.75% | 611 | 43.03% | 59.9% | 40.1% | 100.0% | 94.8% | 57.9% | |
| **State** | | | | | | | | | | | | | |
| AL | 53 | 5,465,802 | 0.8% | 9.27% | 85.96% | 587 | 36.93% | 78.0% | 22.0% | 36.3% | 92.8% | 79.9% | |
| AZ | 206 | 32,874,622 | 4.4% | 8.62% | 85.60% | 626 | 39.72% | 66.8% | 33.7% | 11.5% | 90.8% | 62.5% | |
| CA | 196 | 57,938,567 | 7.7% | 8.22% | 82.31% | 638 | 41.13% | 58.8% | 41.2% | 25.4% | 95.3% | 80.9% | |
| CO | 18 | 5,812,444 | 0.7% | 8.44% | 86.00% | 616 | 38.09% | 87.6% | 12.4% | 20.5% | 92.8% | 65.7% | |
| CT | 160 | 28,202,217 | 3.8% | 8.33% | 80.56% | 611 | 41.24% | 74.6% | 25.4% | 37.7% | 95.5% | 70.8% | |
| DC | 13 | 3,698,775 | 0.5% | 8.24% | 81.33% | 623 | 43.09% | 86.7% | 13.7% | 13.7% | 100.0% | 98.5% | |
| DE | 30 | 4,946,166 | 0.6% | 8.84% | 85.44% | 638 | 38.93% | 78.8% | 21.6% | 13.4% | 92.1% | 79.6% | |
| FL | 543 | 115,137,586 | 15.4% | 8.27% | 84.61% | 601 | 39.13% | 60.6% | 39.5% | 28.9% | 87.2% | 54.8% | |
| GA | 242 | 37,176,851 | 5.0% | 8.96% | 88.06% | 597 | 41.79% | 63.0% | 37.0% | 26.3% | 89.7% | 49.0% | |
| HI | 34 | 5,353,057 | 0.7% | 8.39% | 82.79% | 621 | 38.45% | 92.3% | 7.7% | 28.9% | 93.1% | 58.9% | |
| IL | 194 | 35,609,603 | 4.6% | 8.59% | 86.16% | 606 | 42.72% | 71.5% | 28.5% | 16.9% | 95.9% | 67.4% | |
| IN | 19 | 2,316,050 | 0.3% | 8.75% | 87.87% | 596 | 42.43% | 96.1% | 3.9% | 19.1% | 90.7% | 62.9% | |
| KY | 31 | 3,739,638 | 0.5% | 8.79% | 87.67% | 623 | 41.89% | 71.8% | 28.2% | 40.4% | 92.8% | 92.9% | |
| LA | 67 | 6,473,625 | 1.1% | 8.58% | 86.93% | 597 | 37.12% | 66.5% | 33.5% | 26.0% | 94.8% | 97.2% | |
| MA | 186 | 39,657,363 | 5.3% | 8.22% | 83.68% | 623 | 41.89% | 59.1% | 30.9% | 26.6% | 92.8% | 56.9% | |
| MD | 236 | 56,477,243 | 7.5% | 8.13% | 83.24% | 612 | 43.68% | 66.1% | 33.9% | 30.8% | 95.1% | 57.1% | |
| ME | 43 | 6,166,980 | 0.8% | 8.13% | 79.19% | 630 | 36.27% | 81.3% | 18.7% | 42.9% | 100.0% | 87.9% | |
| MI | 61 | 8,354,304 | 1.1% | 8.85% | 86.64% | 601 | 35.55% | 81.2% | 18.9% | 31.4% | 82.8% | 97.5% | |
| MN | 58 | 8,737,176 | 1.2% | 8.40% | 85.25% | 595 | 41.70% | 79.2% | 20.8% | 72.4% | 100.0% | 87.7% | |
| MO | 19 | 2,466,575 | 0.3% | 8.58% | 84.77% | 601 | 39.90% | 68.3% | 31.8% | 18.4% | 84.7% | 66.6% | |
| MS | 8 | 765,038 | 0.1% | 9.28% | 88.39% | 573 | 43.62% | 98.2% | 1.8% | 41.7% | 100.0% | 100.0% | |
| NC | 61 | 9,265,209 | 1.2% | 9.03% | 85.13% | 619 | 35.32% | 66.9% | 33.1% | 26.6% | 85.7% | 47.5% | |
| NH | 3 | 363,900 | 0.0% | 9.34% | 85.45% | 641 | 52.05% | 90.9% | 9.1% | 37.3% | 100.0% | 100.0% | |
| NJ | 217 | 53,670,767 | 7.1% | 8.23% | 82.13% | 609 | 44.25% | 70.6% | 29.4% | 20.5% | 94.0% | 57.8% | |
| NM | 21 | 2,716,020 | 0.4% | 9.45% | 84.13% | 598 | 34.18% | 75.5% | 24.5% | 26.6% | 92.9% | 72.2% | |
| NV | 43 | 10,266,545 | 1.4% | 8.66% | 85.01% | 627 | 43.74% | 72.6% | 27.5% | 53.3% | 83.0% | 37.9% | |
| NY | 272 | 74,561,939 | 9.9% | 8.20% | 83.67% | 636 | 42.14% | 47.0% | 53.0% | 26.7% | 96.8% | 55.3% | |
| OH | 74 | 7,931,896 | 0.3% | 9.63% | 89.04% | 598 | 40.02% | 82.7% | 17.3% | 23.1% | 90.3% | 87.6% | |
| OK | 26 | 2,376,620 | 0.3% | 8.98% | 88.10% | 591 | 41.95% | 85.1% | 14.9% | 45.8% | 98.7% | 89.6% | |
| OR | 37 | 5,440,482 | 0.9% | 8.33% | 81.67% | 638 | 46.57% | 85.0% | 15.0% | 8.9% | 95.9% | 83.9% | |
| PA | 219 | 27,922,790 | 3.7% | 8.84% | 82.72% | 606 | 39.32% | 79.5% | 20.5% | 39.2% | 93.6% | 75.6% | |
| RI | 28 | 5,813,702 | 0.8% | 7.99% | 80.79% | 620 | 41.18% | 74.8% | 25.3% | 51.7% | 95.1% | 59.7% | |
| SC | 39 | 4,817,932 | 0.6% | 9.21% | 79.70% | 600 | 35.56% | 75.1% | 24.9% | 31.6% | 95.3% | 61.3% | |
| SD | 2 | 222,030 | 0.0% | 10.13% | 90.17% | 501 | 37.27% | 100.0% | 0.0% | 0.0% | 100.0% | 100.0% | |
| TN | 138 | 11,691,339 | 1.6% | 9.45% | 86.63% | 601 | 38.33% | 81.5% | 18.5% | 39.8% | 94.8% | 77.4% | |
| TX | 50 | 5,477,248 | 0.8% | 8.63% | 86.13% | 605 | 41.13% | 86.9% | 13.1% | 31.6% | 100.0% | 44.7% | |
| UT | 34 | 4,849,964 | 0.6% | 8.20% | 79.34% | 624 | 40.06% | 89.1% | 10.9% | 28.7% | 100.0% | 49.8% | |
| VA | 158 | 35,062,375 | 4.7% | 8.32% | 86.54% | 603 | 41.44% | 71.1% | 28.0% | 35.1% | 97.2% | 58.8% | |
| WA | 60 | 11,410,721 | 1.5% | 8.52% | 86.57% | 637 | 40.76% | 86.4% | 13.6% | 13.1% | 82.1% | 73.5% | |
| WI | 19 | 2,657,765 | 0.4% | 8.42% | 85.69% | 602 | 39.62% | 90.7% | 9.3% | 28.0% | 100.0% | 76.2% | |
| WV | 5 | 858,250 | 0.1% | 8.58% | 83.66% | 642 | 38.34% | 100.0% | 0.0% | 13.5% | 100.0% | 100.0% | |

**CONFIDENTIAL**

RCPC00065184

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC - RASC 2B07 EMAX1
Balances at Origination

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 4,051 | 750,264,926 | | 8.40% | 83.97% | 616 | 40.67% | 66.9% | 33.1% | 24.3% | 92.7% | 63.4% | |
| **Original LTV** | | | | | | | | | | | | | |
| <= 60% | 172 | 28,327,790 | 3.8% | 7.88% | 49.60% | 620 | 34.70% | 56.7% | 33.0% | 46.8% | 84.3% | 77.8% | |
| 60.1% to 65.6% | 96 | 16,262,682 | 2.5% | 7.55% | 63.64% | 610 | 36.38% | 60.1% | 19.9% | 50.6% | 92.8% | 83.6% | |
| 65.1% to 70.0% | 119 | 25,060,275 | 3.3% | 7.70% | 68.88% | 607 | 34.39% | 62.9% | 37.1% | 41.6% | 57.2% | 75.4% | |
| 70.1% to 75.0% | 170 | 36,314,055 | 4.8% | 7.94% | 74.18% | 594 | 38.34% | 66.7% | 33.3% | 27.5% | 92.8% | 67.8% | |
| 75.1% to 80.0% | 1,287 | 293,528,946 | 39.1% | 7.86% | 79.88% | 623 | 40.52% | 61.8% | 38.3% | 16.2% | 93.8% | 60.0% | |
| 80.1% to 85.0% | 255 | 60,901,864 | 8.1% | 8.08% | 84.08% | 604 | 39.36% | 78.7% | 23.8% | 20.6% | 94.5% | 68.8% | |
| 85.1% to 90.0% | 497 | 106,318,907 | 14.6% | 8.60% | 89.79% | 600 | 40.94% | 84.5% | 13.8% | 17.2% | 85.5% | 67.3% | |
| 90.1% to 95.0% | 199 | 48,990,253 | 6.3% | 8.34% | 94.77% | 611 | 42.13% | 74.9% | 23.1% | 23.1% | 91.3% | 67.2% | |
| 95.1% to 100.0% | 1,256 | 134,528,430 | 18.0% | 10.18% | 99.92% | 626 | 42.72% | 56.3% | 43.7% | 46.3% | 94.8% | 57.9% | |
| **I/O Flag** | | | | | | | | | | | | | |
| Yes | 158 | 51,753,831 | 6.9% | 7.70% | 81.18% | 660 | 36.81% | 75.6% | 24.4% | 16.0% | 98.7% | 58.5% | |
| No | 3,893 | 698,511,082 | 93.1% | 8.65% | 84.17% | 612 | 40.96% | 66.2% | 33.8% | 25.6% | 92.2% | 63.7% | |
| **Modifications** | | | | | | | | | | | | | |
| Yes | 533 | 128,541,534 | 17.3% | 6.44% | 85.45% | 599 | 43.26% | 53.5% | 36.5% | 8.1% | 98.0% | 63.8% | |
| No | 2,024 | 374,988,311 | 50.0% | 8.57% | 82.83% | 622 | 39.14% | 71.7% | 26.8% | 31.4% | 92.1% | 66.1% | |
| **Bankruptcy** | | | | | | | | | | | | | |
| Yes | 77 | 12,703,479 | 1.7% | 8.55% | 83.45% | 608 | 43.36% | 56.0% | 33.4% | 20.0% | 94.2% | 74.7% | |
| No | 3,974 | 737,561,434 | 98.3% | 8.40% | 83.98% | 616 | 40.62% | 66.9% | 33.1% | 24.4% | 92.7% | 63.2% | |

CONFIDENTIAL

RCPC00065185

CONFIDENTIAL                                                    RCPC00065186

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC - RASC 2B07 EMX1
Data File of 11/30/2006

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 2,765 | 545,739,020 | | 8.07% | 83.76% | 616 | 40.39% | 68.5% | 31.5% | 24.4% | 93.7% | 63.9% | 29.0% |
| **Property Type** | | | | | | | | | | | | | |
| SFR | 1,885 | 348,567,674 | 63.8% | 8.08% | 83.37% | 613 | 40.02% | 70.3% | 29.7% | 26.3% | 95.7% | 100.0% | 26.6% |
| PUD | 222 | 33,253,022 | 6.1% | 8.37% | 85.65% | 624 | 39.98% | 53.5% | 46.5% | 27.0% | 86.3% | 0.0% | 31.2% |
| Multi-Family | 205 | 60,674,232 | 11.1% | 8.00% | 83.41% | 637 | 42.88% | 60.4% | 39.6% | 18.1% | 89.8% | 0.0% | 14.9% |
| Other | 51 | 7,713,925 | 1.4% | 7.94% | 83.02% | 621 | 32.81% | 66.4% | 33.6% | 22.2% | 88.1% | 0.0% | 13.6% |
| Condo | 419 | 95,726,007 | 17.5% | 7.92% | 94.80% | 614 | 40.68% | 72.8% | 27.6% | 25.0% | 93.7% | 0.0% | 13.2% |
| **Occupancy** | | | | | | | | | | | | | |
| Owner | 2,552 | 511,298,935 | 93.7% | 8.04% | 83.78% | 615 | 40.47% | 68.9% | 31.1% | 25.1% | 100.0% | 64.9% | 28.3% |
| Non Owner | 149 | 23,633,349 | 4.3% | 8.94% | 82.16% | 627 | 38.24% | 75.2% | 24.8% | 14.8% | 0.0% | 45.1% | 36.3% |
| 2nd Home | 64 | 10,806,723 | 2.0% | 9.05% | 86.33% | 616 | 38.73% | 86.3% | 63.7% | 11.4% | 0.6% | 56.7% | 54.7% |
| **Loan Purpose** | | | | | | | | | | | | | |
| Purchase | 1,331 | 231,540,032 | 42.4% | 8.16% | 86.13% | 625 | 40.74% | 56.5% | 43.5% | 13.5% | 92.0% | 56.7% | 31.2% |
| Rate/Term | 127 | 13,851,132 | 2.1% | 9.33% | 84.89% | 626 | 35.38% | 84.5% | 15.5% | 68.0% | 93.8% | 66.2% | 21.3% |
| Cash Out | 1,307 | 300,341,854 | 55.4% | 7.98% | 81.91% | 617 | 40.11% | 77.1% | 21.9% | 79.2% | 95.0% | 69.7% | 76.9% |
| **Documentation Type** | | | | | | | | | | | | | |
| Full / Alt | 1,939 | 373,857,347 | 68.5% | 7.94% | 83.14% | 619 | 39.49% | 100.0% | 0.0% | 27.5% | 94.2% | 65.5% | 25.8% |
| Stated | 827 | 171,881,673 | 31.5% | 8.33% | 83.81% | 630 | 42.33% | 0.0% | 100.0% | 17.5% | 92.6% | 60.3% | 36.0% |
| **Original FICO Score** | | | | | | | | | | | | | |
| Less than 500 | 21 | 14,948,464 | 2.7% | 8.64% | 83.12% | 478 | 41.70% | 83.8% | 16.2% | 12.5% | 98.5% | 72.3% | 37.2% |
| 500 to 549 | 346 | 62,846,347 | 11.5% | 8.29% | 82.29% | 530 | 40.36% | 77.8% | 22.2% | 20.9% | 95.9% | 68.3% | 30.3% |
| 550 to 599 | 656 | 122,332,269 | 22.4% | 8.09% | 83.01% | 576 | 40.52% | 76.8% | 23.2% | 20.9% | 94.8% | 69.7% | 29.4% |
| 600 to 649 | 964 | 198,570,780 | 36.4% | 8.13% | 85.07% | 624 | 40.40% | 83.9% | 36.1% | 22.2% | 93.7% | 61.1% | 20.1% |
| 650 to 699 | 534 | 102,423,518 | 18.8% | 7.94% | 84.23% | 671 | 40.48% | 66.4% | 33.6% | 31.4% | 90.5% | 60.5% | 22.1% |
| 700 to 749 | 139 | 33,651,041 | 6.2% | 7.98% | 83.54% | 724 | 40.52% | 52.6% | 47.4% | 41.6% | 93.8% | 62.2% | 25.0% |
| 750 to 799 | 40 | 9,937,208 | 1.8% | 7.31% | 75.26% | 766 | 37.31% | 53.0% | 47.0% | 64.0% | 89.6% | 43.6% | 20.6% |
| 800 and greater | 4 | 1,046,803 | 0.2% | 7.83% | 73.51% | 803 | 25.84% | 51.3% | 48.7% | 54.9% | 100.0% | 100.0% | 30.5% |
| **Original Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 24 | 13,950,218 | 2.6% | 5.59% | 67.98% | 708 | 29.98% | 62.1% | 37.3% | 93.2% | 100.0% | 71.4% | 9.7% |
| 6.00% to 6.99% | 182 | 43,644,552 | 9.1% | 6.73% | 76.39% | 640 | 37.99% | 87.2% | 12.8% | 39.0% | 97.2% | 62.6% | 23.1% |
| 7.00% to 7.99% | 592 | 149,022,861 | 27.3% | 7.61% | 80.13% | 626 | 39.15% | 80.5% | 19.5% | 24.3% | 97.0% | 65.1% | 27.9% |
| 8.00% to 8.99% | 703 | 192,544,628 | 29.1% | 8.06% | 84.47% | 610 | 41.06% | 69.5% | 30.5% | 13.9% | 91.8% | 60.4% | 31.5% |
| 9.00% to 9.99% | 562 | 109,675,592 | 20.1% | 8.79% | 88.65% | 595 | 42.30% | 54.2% | 45.8% | 10.5% | 90.3% | 63.9% | 34.5% |
| **Current Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 196 | 50,792,189 | 11.6% | 4.91% | 79.62% | 628 | 39.11% | 87.7% | 32.3% | 25.7% | 98.9% | 67.5% | 9.6% |
| 6.00% to 6.99% | 262 | 70,160,220 | 12.8% | 6.48% | 80.17% | 634 | 40.51% | 69.7% | 30.3% | 30.0% | 98.0% | 58.7% | 13.2% |
| 7.00% to 7.99% | 525 | 131,999,578 | 22.1% | 7.44% | 81.98% | 622 | 39.63% | 79.6% | 20.2% | 26.6% | 97.2% | 65.5% | 23.3% |
| 8.00% to 8.99% | 552 | 114,059,773 | 20.9% | 8.48% | 83.45% | 615 | 40.55% | 71.8% | 28.2% | 18.3% | 90.3% | 60.4% | 33.6% |
| 9.00% to 9.99% | 511 | 100,638,456 | 18.4% | 9.65% | 86.98% | 603 | 41.29% | 53.7% | 38.3% | 11.3% | 88.2% | 63.8% | 46.8% |

CONFIDENTIAL

RCPC00065187

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC - RASC 2B07 EMXX1
Data File of  11/30/2006

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,765 | 545,739,020 | | 8.07% | 83.76% | 616 | 40.39% | 68.5% | 31.5% | 24.4% | 93.7% | 63.9% | 29.0% |
| **Original Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 385 | 13,108,352 | 2.3% | 11.62% | 76.63% | 620 | 41.22% | 71.2% | 28.8% | 93.0% | 84.0% | 88.8% | 32.4% |
| $50,000 to $99,999 | 366 | 27,043,272 | 5.0% | 9.72% | 87.93% | 607 | 39.95% | 73.7% | 26.3% | 36.1% | 86.8% | 73.3% | 29.9% |
| $100,000 to $199,999 | 1,602 | 247,096,283 | 27.6% | 8.63% | 82.80% | 608 | 40.04% | 72.1% | 27.9% | 25.3% | 91.9% | 71.3% | 35.6% |
| $200,000 to $299,999 | 527 | 141,200,629 | 25.9% | 7.84% | 84.63% | 619 | 41.55% | 66.8% | 33.2% | 19.9% | 94.2% | 64.8% | 28.8% |
| $300,000 to $399,999 | 208 | 85,695,756 | 15.7% | 7.64% | 84.28% | 621 | 42.27% | 67.8% | 32.2% | 16.1% | 94.3% | 85.5% | 13.4% |
| $400,000 to $499,999 | 114 | 50,887,782 | 9.3% | 7.78% | 86.11% | 621 | 41.70% | 65.1% | 34.9% | 23.5% | 94.8% | 55.0% | 42.4% |
| $500,000 to $599,999 | 67 | 36,746,190 | 6.7% | 7.63% | 84.56% | 616 | 37.28% | 62.5% | 37.9% | 13.4% | 94.3% | 50.3% | 32.8% |
| $600,000 to $699,999 | 11 | 15,694,339 | 2.9% | 7.71% | 82.95% | 632 | 40.31% | 62.7% | 37.9% | 16.0% | 96.8% | 43.2% | 13.2% |
| $700,000 to $799,999 | 11 | 10,416,707 | 1.9% | 6.88% | 73.59% | 635 | 38.45% | 82.1% | 17.7% | 53.5% | 100.0% | 62.9% | 0.6% |
| Greater than or $1,000,000 | 2 | 1,978,513 | 0.4% | 7.95% | 70.62% | 583 | 40.38% | 100.0% | 0.0% | 49.4% | 100.0% | 49.4% | 0.0% |
| **Current Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 352 | 12,112,802 | 2.2% | 11.56% | 76.56% | 620 | 41.66% | 71.0% | 29.0% | 93.2% | 83.9% | 69.3% | 71.8% |
| $50,000 to $99,999 | 370 | 28,259,859 | 5.2% | 9.64% | 87.98% | 609 | 39.79% | 73.9% | 26.1% | 56.8% | 86.0% | 71.9% | 20.0% |
| $100,000 to $199,999 | 987 | 245,882,271 | 26.7% | 8.46% | 82.73% | 608 | 40.08% | 72.3% | 27.7% | 26.1% | 91.8% | 71.3% | 29.0% |
| $200,000 to $299,999 | 530 | 137,083,099 | 25.1% | 7.97% | 83.83% | 609 | 41.53% | 67.9% | 32.1% | 20.1% | 93.9% | 64.1% | 29.1% |
| $300,000 to $399,999 | 255 | 87,431,913 | 16.0% | 7.56% | 84.23% | 620 | 42.73% | 65.0% | 34.0% | 13.4% | 96.0% | 66.1% | 31.7% |
| $400,000 to $499,999 | 116 | 51,074,550 | 9.4% | 7.63% | 83.62% | 623 | 40.91% | 63.8% | 36.7% | 22.8% | 94.8% | 57.3% | 43.1% |
| $500,000 to $599,999 | 62 | 33,577,515 | 6.2% | 7.72% | 84.01% | 632 | 38.03% | 64.1% | 35.9% | 14.6% | 93.6% | 50.1% | 31.3% |
| $600,000 to $699,999 | 32 | 20,617,531 | 3.8% | 7.01% | 84.18% | 642 | 38.89% | 59.1% | 40.9% | 18.8% | 92.8% | 37.9% | 21.6% |
| $700,000 to $999,999 | 12 | 10,526,661 | 1.9% | 6.98% | 80.55% | 633 | 38.77% | 90.8% | 9.2% | 35.9% | 100.0% | 63.8% | 14.8% |
| $1,000,000 and greater | 1 | 1,000,000 | 0.1% | 7.95% | 80.00% | 635 | 40.00% | 100.0% | 0.0% | 0.0% | 100.0% | 0.0% | 0.0% |
| **Balloon** | | | | | | | | | | | | | |
| Yes | 1,592 | 310,561,997 | 56.9% | 8.19% | 85.00% | 613 | 42.65% | 57.1% | 32.9% | 15.6% | 93.3% | 60.9% | 34.4% |
| No | 1,173 | 237,148,010 | 43.1% | 7.91% | 81.88% | 620 | 37.45% | 70.4% | 29.6% | 35.9% | 94.2% | 68.1% | 21.9% |
| **Amortization Term** | | | | | | | | | | | | | |
| 180 | 14 | 1,092,276 | 0.2% | 9.70% | 80.38% | 643 | 34.56% | 71.1% | 28.9% | 100.0% | 100.0% | 75.3% | 2.2% |
| 240 | 52 | 2,973,971 | 0.5% | 10.95% | 74.32% | 636 | 37.97% | 88.7% | 11.3% | 100.0% | 98.3% | 29.9% | 2.6% |
| 360 | 1,543 | 254,235,601 | 46.6% | 8.26% | 83.98% | 621 | 38.02% | 70.0% | 30.0% | 40.7% | 94.2% | 66.9% | 23.6% |
| 480 | 1,117 | 287,727,519 | 51.8% | 7.95% | 84.02% | 611 | 42.52% | 66.6% | 33.4% | 8.4% | 93.1% | 60.6% | 34.7% |
| **Product Type** | | | | | | | | | | | | | |
| Arm 10/20 | 2 | 624,053 | 0.1% | 8.32% | 65.07% | 633 | 49.63% | 44.7% | 55.3% | 0.6% | 100.0% | 100.0% | 0.6% |
| Arm 2/28 | 1,337 | 309,616,820 | 56.7% | 8.01% | 84.13% | 608 | 41.82% | 62.5% | 37.4% | 0.0% | 93.9% | 63.2% | 33.6% |
| Arm 2/28 IO | 75 | 22,861,272 | 4.2% | 8.02% | 85.84% | 642 | 39.33% | 77.4% | 22.6% | 0.0% | 99.3% | 48.6% | 45.8% |
| Arm 3/27 | 294 | 69,684,352 | 12.8% | 7.88% | 85.34% | 610 | 40.48% | 72.8% | 27.2% | 0.0% | 93.8% | 63.7% | 25.9% |
| Arm 3/27 IO | 18 | 5,303,579 | 1.0% | 7.63% | 86.14% | 645 | 38.17% | 76.3% | 23.7% | 0.0% | 100.0% | 58.9% | 31.8% |
| Arm 5/25 | 13 | 3,216,913 | 0.6% | 7.00% | 79.65% | 627 | 38.86% | 100.0% | 0.0% | 0.0% | 100.0% | 46.7% | 20.1% |
| Arm 5/25 IO | 4 | 1,501,060 | 0.3% | 6.85% | 83.22% | 633 | 27.66% | 100.0% | 0.0% | 0.0% | 100.0% | 45.0% | 0.0% |
| Fixed | 1,022 | 132,940,559 | 24.4% | 8.33% | 82.03% | 632 | 37.75% | 77.4% | 22.6% | 100.0% | 95.0% | 69.0% | 19.2% |
| **Original DTI** | | | | | | | | | | | | | |
| Less than 20% | 162 | 40,492,447 | 7.4% | 7.75% | 80.86% | 622 | 12.58% | 93.4% | 6.6% | 98.1% | 90.9% | 69.0% | 15.8% |
| 20.0% to 29.9% | 297 | 55,184,721 | 10.1% | 7.95% | 81.67% | 615 | 24.84% | 72.1% | 27.9% | 97.3% | 93.5% | 63.7% | 26.8% |
| 30.0% to 39.9% | 584 | 106,231,092 | 19.5% | 8.06% | 83.80% | 613 | 34.95% | 69.3% | 30.7% | 71.1% | 93.5% | 67.2% | 27.4% |
| 40.0% to 49.9% | 1,087 | 215,882,711 | 39.6% | 8.18% | 84.23% | 613 | 44.97% | 68.3% | 41.7% | 46.7% | 95.1% | 65.2% | 35.5% |
| 50.0% to 59.9% | 634 | 127,584,711 | 23.4% | 8.06% | 85.19% | 611 | 52.66% | 74.1% | 21.2% | 93.1% | 93.1% | 65.7% | 24.7% |
| 60.0% and greater | 1 | 141,309 | 0.0% | 9.38% | 75.00% | 704 | 61.00% | 100.0% | 0.0% | | 100.0% | 100.0% | 0.0% |

CONFIDENTIAL
RCPC00000065188

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC - RASC 2B07 EMXA1
Data File of 11/30/2006

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,765 | 545,739,020 | | 8.07% | 83.76% | 616 | 40.39% | 68.5% | 31.5% | 24.4% | 93.7% | 63.9% | 29.0% |
| **Lien Position** | | | | | | | | | | | | | |
| 1st | 2,231 | 518,050,453 | 94.9% | 7.88% | 83.01% | 615 | 40.27% | 68.6% | 31.4% | 20.3% | 93.6% | 64.0% | 28.2% |
| 2nd | 534 | 27,688,596 | 5.1% | 11.88% | 97.36% | 633 | 42.55% | 71.8% | 28.2% | 100.0% | 95.3% | 62.0% | 28.5% |
| **State** | | | | | | | | | | | | | |
| AL | 41 | 4,680,098 | 0.9% | 9.11% | 84.15% | 590 | 37.19% | 78.9% | 21.1% | 37.1% | 93.3% | 74.0% | 55.7% |
| AZ | 129 | 20,163,928 | 3.7% | 8.31% | 83.91% | 627 | 40.79% | 63.9% | 36.1% | 9.3% | 93.1% | 63.2% | 42.9% |
| CA | 175 | 41,923,000 | 7.7% | 7.83% | 80.83% | 637 | 40.22% | 53.7% | 36.3% | 24.1% | 95.4% | 81.1% | 43.7% |
| CO | 28 | 3,618,323 | 0.7% | 8.07% | 85.28% | 615 | 39.18% | 92.0% | 9.0% | 33.9% | 92.8% | 71.6% | 21.3% |
| CT | 130 | 24,077,372 | 4.4% | 8.88% | 86.14% | 614 | 41.18% | 74.7% | 25.3% | 76.9% | 94.7% | 70.7% | 16.9% |
| DC | 7 | 2,387,389 | 0.4% | 8.39% | 81.68% | 617 | 64.07% | 51.5% | 8.7% | 100.0% | 39.2% | 73.6% | 11.6% |
| DE | 73 | 8,181,341 | 1.6% | 8.14% | 87.18% | 646 | 41.18% | 76.3% | 24.2% | 15.2% | 88.3% | 73.6% | 33.4% |
| FL | 658 | 92,512,020 | 17.0% | 7.85% | 83.13% | 601 | 38.39% | 61.6% | 37.6% | 27.6% | 88.1% | 57.6% | 32.6% |
| GA | 154 | 22,988,359 | 6.1% | 8.77% | 86.77% | 595 | 42.13% | 57.6% | 32.2% | 33.4% | 92.0% | 49.2% | 32.6% |
| HI | 25 | 11,890,720 | 0.7% | 8.29% | 82.33% | 616 | 36.96% | 91.1% | 8.9% | 16.5% | 99.8% | 57.4% | 41.9% |
| IL | 118 | 22,662,382 | 6.1% | 8.34% | 87.18% | 603 | 42.46% | 75.4% | 24.6% | 17.2% | 95.5% | 64.8% | 32.6% |
| IN | 26 | 3,413,762 | 0.6% | 8.53% | 85.66% | 593 | 42.55% | 73.2% | 27.0% | 35.9% | 92.9% | 97.4% | 31.3% |
| KY | 58 | 7,842,887 | 1.3% | 8.33% | 86.89% | 596 | 37.21% | 67.9% | 32.1% | 29.0% | 93.8% | 95.8% | 7.5% |
| LA | 151 | 25,657,098 | 4.7% | 7.63% | 82.43% | 624 | 41.24% | 70.2% | 29.8% | 26.6% | 95.7% | 57.9% | 74.6% |
| MA | 117 | 38,959,300 | 7.3% | 7.86% | 82.63% | 629 | 43.10% | 86.7% | 13.3% | 31.1% | 94.8% | 60.9% | 27.4% |
| MD | 30 | 4,168,719 | 0.8% | 7.53% | 79.10% | 620 | 36.26% | 81.6% | 18.0% | 41.6% | 88.0% | 83.8% | 24.6% |
| MI | 65 | 8,806,751 | 1.6% | 8.55% | 87.02% | 564 | 35.54% | 81.6% | 18.3% | 18.4% | 87.5% | 58.1% | 37.3% |
| MN | 43 | 5,861,793 | 1.1% | 8.12% | 85.00% | 585 | 44.28% | 80.3% | 19.9% | 12.3% | 100.0% | 85.4% | 52.4% |
| MO | 13 | 1,713,751 | 0.3% | 8.43% | 84.62% | 612 | 36.89% | 82.9% | 17.1% | 26.1% | 78.2% | 94.9% | 28.3% |
| MS | 6 | 528,866 | 0.1% | 9.02% | 88.93% | 565 | 44.33% | 97.6% | 2.9% | 52.1% | 100.0% | 100.0% | 11.3% |
| NC | 40 | 5,587,784 | 1.0% | 8.56% | 82.55% | 615 | 33.58% | 83.1% | 16.9% | 18.5% | 99.0% | 54.2% | 6.0% |
| NH | 3 | 395,574 | 0.1% | 9.32% | 85.35% | 601 | 52.12% | 91.2% | 8.8% | 26.8% | 100.0% | 100.0% | 0.6% |
| NJ | 176 | 34,923,302 | 6.4% | 7.77% | 81.21% | 607 | 43.53% | 93.8% | 6.2% | 20.2% | 95.1% | 59.9% | 12.7% |
| NM | 24 | 2,943,823 | 0.4% | 9.70% | 85.38% | 599 | 34.74% | 73.1% | 26.9% | 26.6% | 93.2% | 54.3% | 17.8% |
| NV | 34 | 8,608,509 | 1.6% | 8.35% | 84.68% | 629 | 43.14% | 58.6% | 31.0% | 100.0% | 89.5% | 43.9% | 27.0% |
| NY | 286 | 100,955,880 | 11.1% | 7.85% | 83.24% | 636 | 41.06% | 47.4% | 52.6% | 20.9% | 98.3% | 53.4% | 25.5% |
| OH | 71 | 1,624,783 | 0.3% | 9.48% | 87.17% | 607 | 38.11% | 86.6% | 13.0% | 27.4% | 98.5% | 84.3% | 9.3% |
| OK | 23 | 2,081,632 | 0.4% | 8.77% | 80.35% | 594 | 40.98% | 81.9% | 18.1% | 46.7% | 98.0% | 90.8% | 22.6% |
| OR | 21 | 3,909,446 | 0.7% | 8.24% | 82.07% | 625 | 47.72% | 89.4% | 10.9% | 6.7% | 98.0% | 81.3% | 19.3% |
| PA | 156 | 23,545,600 | 3.9% | 8.64% | 82.64% | 602 | 38.64% | 82.0% | 18.0% | 39.0% | 92.9% | 75.5% | 6.1% |
| RI | 71 | 4,895,738 | 0.9% | 7.75% | 80.78% | 629 | 40.23% | 73.3% | 26.2% | 50.9% | 100.0% | 67.0% | 31.1% |
| SC | 28 | 3,178,213 | 0.6% | 8.87% | 86.33% | 591 | 32.87% | 86.7% | 13.8% | 31.6% | 95.0% | 70.2% | 41.7% |
| SD | 2 | 222,198 | 0.0% | 10.31% | 90.26% | 602 | 37.23% | 100.0% | 0.0% | 0.4% | 100.0% | 100.0% | 47.3% |
| TN | 79 | 9,848,829 | 1.7% | 8.64% | 86.82% | 601 | 38.02% | 73.5% | 26.5% | 31.6% | 77.5% | 27.5% | 21.6% |
| TX | 40 | 4,666,406 | 0.9% | 8.64% | 86.24% | 600 | 38.57% | 76.4% | 23.6% | 36.2% | 98.5% | 37.1% | 21.8% |
| UT | 22 | 3,337,764 | 0.6% | 7.96% | 77.46% | 623 | 41.68% | 88.6% | 11.6% | 36.7% | 100.0% | 42.3% | 25.5% |
| VA | 90 | 21,713,406 | 6.0% | 7.79% | 85.10% | 600 | 40.12% | 77.3% | 22.2% | 27.5% | 96.0% | 59.7% | 20.4% |
| WA | 65 | 9,101,649 | 1.7% | 8.36% | 85.91% | 622 | 39.51% | 83.6% | 16.4% | 18.7% | 98.0% | 79.4% | 40.8% |
| WI | 13 | 1,983,981 | 0.4% | 7.78% | 88.94% | 623 | 38.43% | 91.0% | 9.0% | 22.5% | 100.0% | 87.5% | 59.5% |
| WV | 3 | 346,237 | 0.1% | 8.11% | 88.64% | 646 | 45.10% | 100.0% | 0.0% | 32.8% | 100.0% | 100.0% | 0.0% |

CONFIDENTIAL

RCPC00065189

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC - RASC 2B07 EMX1
Data File of  11/30/2008

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,765 | 545,739,020 | | 8.07% | 83.76% | 616 | 40.39% | 68.5% | 31.5% | 24.4% | 93.7% | 63.9% | 29.0% |
| **Original LTV** | | | | | | | | | | | | | |
| <= 60% | 98 | 18,267,451 | 3.4% | 7.58% | 50.36% | 636 | 36.52% | 68.5% | 31.5% | 58.7% | 82.2% | 73.3% | 93.7% |
| 60.1% to 65.6% | 59 | 13,680,258 | 2.4% | 7.33% | 53.54% | 619 | 32.66% | 77.3% | 22.7% | 60.5% | 90.8% | 77.6% | 7.2% |
| 65.1% to 70.0% | 84 | 17,278,293 | 3.2% | 7.62% | 68.78% | 608 | 37.13% | 82.3% | 17.7% | 49.1% | 98.1% | 76.1% | 15.4% |
| 70.1% to 75.0% | 127 | 27,064,356 | 5.1% | 7.67% | 74.27% | 596 | 37.79% | 68.9% | 31.1% | 100.0% | 93.2% | 64.9% | 23.3% |
| 75.1% to 80.0% | 965 | 224,248,187 | 41.1% | 7.63% | 79.88% | 623 | 40.47% | 63.2% | 36.8% | 16.1% | 94.4% | 60.8% | 12.6% |
| 80.1% to 85.0% | 194 | 45,962,593 | 8.6% | 7.80% | 84.03% | 593 | 39.08% | 79.9% | 20.1% | 23.2% | 96.9% | 65.6% | 28.3% |
| 85.1% to 90.0% | 372 | 79,367,517 | 14.3% | 8.62% | 89.78% | 600 | 41.36% | 87.9% | 12.1% | 19.3% | 87.0% | 66.9% | 30.2% |
| 90.1% to 95.0% | 162 | 35,091,629 | 6.4% | 8.07% | 94.31% | 621 | 42.58% | 67.0% | 33.0% | 18.3% | 94.1% | 65.0% | 38.5% |
| 95.1% to 100.0% | 704 | 84,942,815 | 15.6% | 9.50% | 99.91% | 626 | 43.78% | 58.8% | 41.2% | 85.5% | 96.7% | 63.9% | 30.2% |
| **I/O Flag** | | | | | | | | | | | | | |
| Yes | 115 | 37,555,024 | 6.9% | 7.65% | 81.01% | 667 | 35.90% | 75.5% | 24.5% | 21.0% | 98.2% | 56.6% | 34.9% |
| No | 2,650 | 508,188,594 | 93.1% | 8.10% | 83.91% | 614 | 40.72% | 68.0% | 32.0% | 24.6% | 93.3% | 64.9% | 28.8% |
| **Modifications** | | | | | | | | | | | | | |
| Yes | 528 | 155,546,540 | 28.8% | 6.89% | 85.43% | 599 | 43.22% | 52.7% | 37.3% | 7.8% | 98.8% | 63.3% | 15.1% |
| No | 2,023 | 370,139,642 | 67.8% | 8.57% | 82.87% | 622 | 39.18% | 71.7% | 26.8% | 31.3% | 92.1% | 66.1% | 28.5% |
| **Bankruptcy** | | | | | | | | | | | | | |
| Yes | 77 | 12,823,033 | 2.3% | 8.56% | 83.44% | 608 | 43.32% | 56.7% | 33.3% | 19.6% | 93.9% | 75.2% | |
| No | 2,688 | 532,915,984 | 97.7% | 8.05% | 83.77% | 616 | 40.37% | 68.5% | 31.5% | 24.5% | 93.7% | 63.6% | |

CONFIDENTIAL

RCPC00065190

**CONFIDENTIAL**

**RCPC00065191**

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC – RASC 2B07 EMXA1
Data File of 12/31/2006

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 2,678 | 527,496,833 | | 8.04% | 83.67% | 616 | 40.32% | 68.7% | 31.3% | 24.6% | 93.6% | 64.2% | 29.4% |
| **Property Type** | | | | | | | | | | | | | |
| SFR | 1,813 | 338,483,461 | 64.2% | 8.00% | 83.24% | 617 | 39.94% | 70.1% | 29.9% | 26.7% | 55.7% | 100.0% | 27.6% |
| PUD | 216 | 31,435,630 | 6.0% | 8.29% | 86.58% | 622 | 39.90% | 54.2% | 45.8% | 27.2% | 86.8% | 0.6% | 29.1% |
| Multi-Family | 293 | 58,096,257 | 11.0% | 7.98% | 83.37% | 635 | 42.77% | 62.5% | 37.0% | 16.3% | 89.4% | 0.0% | 16.4% |
| Other | 56 | 7,415,610 | 1.4% | 7.89% | 83.14% | 622 | 38.12% | 69.0% | 31.0% | 23.7% | 87.3% | 0.0% | 13.9% |
| Condo | 491 | 91,727,874 | 17.4% | 7.98% | 84.86% | 615 | 40.84% | 72.8% | 27.2% | 25.0% | 93.7% | 0.0% | 16.3% |
| **Occupancy** | | | | | | | | | | | | | |
| Owner | 2,478 | 493,996,914 | 93.6% | 7.98% | 83.66% | 616 | 40.42% | 69.0% | 31.0% | 25.4% | 100.0% | 65.8% | 28.5% |
| Non Owner | 149 | 23,659,339 | 4.5% | 8.93% | 82.16% | 627 | 39.24% | 75.2% | 24.8% | 14.1% | 0.6% | 45.7% | 37.6% |
| 2nd Home | 50 | 9,840,616 | 1.9% | 8.94% | 86.33% | 641 | 38.17% | 59.2% | 66.8% | 13.4% | 0.6% | 57.5% | 53.6% |
| **Loan Purpose** | | | | | | | | | | | | | |
| Purchase | 1,275 | 227,541,311 | 42.2% | 8.20% | 86.14% | 620 | 40.89% | 56.8% | 43.2% | 15.8% | 92.6% | 57.3% | 34.0% |
| Rate/Term | 124 | 13,158,617 | 2.1% | 9.35% | 84.39% | 614 | 35.25% | 82.8% | 13.2% | 71.1% | 93.8% | 67.8% | 28.0% |
| Cash Out | 1,275 | 293,845,991 | 55.7% | 7.92% | 83.74% | 617 | 40.24% | 77.1% | 21.9% | 29.5% | 94.9% | 69.8% | 26.4% |
| **Documentation Type** | | | | | | | | | | | | | |
| Full/Alt | 1,887 | 362,620,962 | 68.7% | 7.93% | 83.67% | 619 | 39.47% | 100.0% | 0.0% | 27.9% | 94.0% | 65.5% | 25.8% |
| Stated | 792 | 164,875,851 | 31.3% | 8.23% | 83.66% | 628 | 42.21% | 0.0% | 100.0% | 17.4% | 92.8% | 61.5% | 37.4% |
| **Original FICO Score** | | | | | | | | | | | | | |
| Less than 500 | 21 | 14,937,679 | 2.8% | 8.64% | 83.12% | 478 | 41.71% | 83.8% | 16.2% | 12.5% | 98.5% | 72.3% | 41.2% |
| 500 to 549 | 336 | 61,560,858 | 11.7% | 8.27% | 82.24% | 531 | 40.33% | 78.2% | 21.8% | 20.0% | 96.0% | 68.4% | 32.6% |
| 550 to 599 | 632 | 117,200,884 | 22.2% | 8.07% | 82.95% | 576 | 40.45% | 76.7% | 23.3% | 20.4% | 94.9% | 70.1% | 30.4% |
| 600 to 649 | 990 | 191,935,840 | 36.4% | 8.09% | 84.88% | 624 | 40.39% | 63.6% | 36.3% | 22.4% | 93.7% | 61.6% | 29.3% |
| 650 to 699 | 523 | 100,247,348 | 19.0% | 7.91% | 84.18% | 671 | 40.32% | 66.8% | 33.2% | 31.8% | 90.4% | 60.3% | 29.6% |
| 700 to 749 | 138 | 32,250,015 | 6.1% | 7.83% | 83.55% | 721 | 40.48% | 47.2% | 42.8% | 31.8% | 93.5% | 61.9% | 28.0% |
| 750 to 799 | 35 | 8,642,043 | 1.6% | 7.07% | 72.92% | 769 | 36.35% | 61.6% | 38.3% | 73.5% | 82.0% | 49.5% | 13.9% |
| 800 and greater | 3 | 722,246 | 0.1% | 6.87% | 70.66% | 804 | 37.13% | 73.8% | 26.2% | 79.0% | 100.0% | 100.0% | 0.0% |
| **Original Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 24 | 13,940,442 | 2.6% | 5.59% | 87.93% | 708 | 29.98% | 62.1% | 37.3% | 90.2% | 100.0% | 71.4% | 9.2% |
| 6.00% to 6.99% | 185 | 48,331,070 | 9.2% | 6.72% | 76.30% | 639 | 37.79% | 86.9% | 13.1% | 40.0% | 97.1% | 67.2% | 24.1% |
| 7.00% to 7.99% | 971 | 242,702,602 | 27.1% | 7.38% | 80.40% | 626 | 39.09% | 80.7% | 19.3% | 24.6% | 95.8% | 66.0% | 27.7% |
| 8.00% to 8.99% | 931 | 152,867,548 | 29.0% | 8.03% | 84.22% | 609 | 41.11% | 80.7% | 30.8% | 14.4% | 91.2% | 60.7% | 31.3% |
| 9.00% to 9.99% | 548 | 106,542,343 | 20.2% | 8.67% | 86.61% | 595 | 42.28% | 55.2% | 44.8% | 10.6% | 90.5% | 64.9% | 35.1% |
| **Current Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 106 | 55,124,030 | 11.3% | 4.91% | 79.33% | 628 | 39.03% | 87.5% | 32.5% | 25.9% | 98.4% | 67.4% | 6.3% |
| 6.00% to 6.99% | 262 | 70,870,503 | 13.8% | 6.48% | 80.07% | 624 | 40.59% | 59.8% | 36.2% | 30.2% | 98.0% | 58.7% | 13.2% |
| 7.00% to 7.99% | 505 | 127,060,383 | 20.1% | 7.14% | 82.09% | 620 | 39.04% | 79.1% | 20.7% | 26.8% | 97.1% | 55.5% | 22.8% |
| 8.00% to 8.99% | 535 | 100,642,557 | 20.8% | 8.68% | 83.37% | 615 | 40.62% | 72.2% | 27.8% | 18.9% | 90.0% | 50.6% | 34.4% |
| 9.00% to 9.99% | 439 | 95,306,589 | 18.1% | 9.46% | 86.79% | 601 | 41.10% | 52.2% | 37.8% | 11.7% | 87.9% | 64.0% | 48.5% |

CONFIDENTIAL

RCPC00065192

EdgeMAC Corporation  
Loan Stratification  
All Loans

FGIC - RASC 2B07 EMX1  
Data File of 12/31/2006

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,678 | 527,496,833 | | 8.04% | 83.67% | 616 | 40.32% | 68.7% | 31.3% | 24.6% | 93.6% | 64.2% | 29.4% |
| **Original Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 320 | 10,797,863 | 2.0% | 11.58% | 76.48% | 620 | 41.17% | 72.3% | 27.7% | 83.6% | 94.3% | 67.9% | 23.9% |
| $50,000 to $99,999 | 390 | 26,170,043 | 5.0% | 9.68% | 87.78% | 606 | 39.95% | 79.9% | 26.1% | 35.5% | 86.3% | 71.4% | 21.3% |
| $100,000 to $199,999 | 975 | 143,280,811 | 27.1% | 8.48% | 82.72% | 608 | 39.97% | 72.8% | 27.3% | 25.8% | 93.8% | 71.6% | 26.2% |
| $200,000 to $299,999 | 585 | 146,844,351 | 25.9% | 7.81% | 83.30% | 619 | 43.56% | 67.1% | 32.9% | 20.2% | 94.3% | 65.8% | 30.9% |
| $300,000 to $399,999 | 240 | 83,234,030 | 15.8% | 7.63% | 84.14% | 621 | 42.99% | 67.1% | 32.9% | 13.4% | 95.5% | 64.9% | 33.3% |
| $400,000 to $499,999 | 111 | 49,307,550 | 9.3% | 7.79% | 86.17% | 622 | 43.69% | 62.1% | 37.9% | 23.0% | 94.5% | 55.5% | 40.9% |
| $500,000 to $599,999 | 62 | 34,100,116 | 6.5% | 7.54% | 83.97% | 632 | 36.60% | 62.2% | 37.8% | 14.8% | 93.7% | 59.9% | 28.2% |
| $600,000 to $699,999 | 21 | 15,660,772 | 2.9% | 7.18% | 83.09% | 632 | 40.38% | 64.7% | 35.3% | 28.6% | 95.3% | 45.0% | 24.5% |
| $700,000 to $799,999 | 10 | 9,450,694 | 1.8% | 6.74% | 80.76% | 638 | 70.38% | 80.3% | 19.3% | 57.3% | 100.0% | 59.2% | 10.8% |
| $800,000 to $999,999 | 2 | 1,978,513 | 0.4% | 7.05% | 70.53% | 581 | 30.00% | 100.0% | 0.0% | 49.4% | 100.0% | 49.4% | 0.0% |
| Greater than $1,000,000 | | | | | | | | | | | | | |
| **Current Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 335 | 11,569,721 | 2.2% | 11.56% | 95.86% | 620 | 41.08% | 72.0% | 28.0% | 93.1% | 94.5% | 68.8% | 23.6% |
| $50,000 to $99,999 | 392 | 27,598,221 | 5.3% | 9.61% | 87.21% | 601 | 39.82% | 77.8% | 26.1% | 54.6% | 86.9% | 73.0% | 20.7% |
| $100,000 to $199,999 | 958 | 141,575,973 | 26.8% | 8.44% | 82.62% | 609 | 40.00% | 72.8% | 27.5% | 26.4% | 93.0% | 71.7% | 27.2% |
| $200,000 to $299,999 | 542 | 132,843,154 | 25.2% | 7.89% | 83.03% | 609 | 41.65% | 68.4% | 31.8% | 20.3% | 93.9% | 64.5% | 31.8% |
| $300,000 to $399,999 | 247 | 84,811,704 | 16.1% | 7.52% | 84.56% | 620 | 42.66% | 56.7% | 34.3% | 13.4% | 95.9% | 65.4% | 31.6% |
| $400,000 to $499,999 | 112 | 49,691,196 | 9.4% | 7.55% | 83.63% | 622 | 40.77% | 62.5% | 37.5% | 12.4% | 94.7% | 55.8% | 40.7% |
| $500,000 to $599,999 | 58 | 31,671,863 | 6.0% | 7.64% | 83.77% | 629 | 37.19% | 63.4% | 36.9% | 15.1% | 93.2% | 48.9% | 30.1% |
| $600,000 to $699,999 | 31 | 19,984,705 | 3.8% | 6.99% | 83.12% | 642 | 38.92% | 61.0% | 39.0% | 19.4% | 96.8% | 39.1% | 29.1% |
| $700,000 to $799,999 | 9 | 8,706,480 | 1.7% | 6.67% | 79.65% | 632 | 37.02% | 88.8% | 11.2% | 58.6% | 100.0% | 55.5% | 14.5% |
| $800,000 to $999,999 | | | | | | | | | | | | | |
| $1,000,000 and greater | 1 | 1,000,060 | 0.1% | 7.95% | 80.60% | 635 | 30.00% | 100.0% | 0.0% | 0.0% | 100.0% | 0.0% | 0.0% |
| **Balloon** | | | | | | | | | | | | | |
| Yes | 1,529 | 287,873,353 | 56.5% | 8.16% | 85.17% | 614 | 42.61% | 57.2% | 37.2% | 15.7% | 93.3% | 61.0% | 35.3% |
| No | 1,149 | 239,623,481 | 43.5% | 7.88% | 81.71% | 620 | 37.36% | 70.7% | 29.3% | 36.3% | 94.1% | 68.5% | 21.8% |
| **Amortization Term** | | | | | | | | | | | | | |
| 180 | 14 | 1,026,768 | 0.2% | 9.70% | 80.38% | 643 | 34.54% | 71.1% | 28.9% | 100.0% | 100.0% | 75.3% | 2.2% |
| 240 | 52 | 2,965,362 | 0.6% | 8.44% | 74.33% | 635 | 37.97% | 88.7% | 11.3% | 100.0% | 98.3% | 29.9% | 4.0% |
| 360 | 1,499 | 247,834,936 | 47.0% | 8.16% | 83.41% | 620 | 37.92% | 70.4% | 29.6% | 40.9% | 94.2% | 67.4% | 23.1% |
| 480 | 1,077 | 271,265,764 | 51.4% | 7.87% | 84.01% | 611 | 42.53% | 66.7% | 33.3% | 8.6% | 93.0% | 60.9% | 35.2% |
| **Product Type** | | | | | | | | | | | | | |
| Arm 10/20 | 2 | 623,824 | 0.1% | 8.32% | 85.08% | 633 | 49.60% | 44.7% | 55.3% | 0.0% | 100.0% | 100.0% | 0.0% |
| Arm 2/28 | 1,294 | 286,100,025 | 56.5% | 7.99% | 84.10% | 607 | 41.82% | 62.5% | 32.5% | 0.0% | 91.0% | 60.6% | 33.7% |
| Arm 2/28 IO | 73 | 23,420,715 | 4.3% | 8.08% | 84.04% | 636 | 55.74% | 75.3% | 24.7% | 0.0% | 99.7% | 49.0% | 42.6% |
| Arm 2/27 | 283 | 67,282,950 | 12.7% | 7.99% | 85.46% | 610 | 40.41% | 72.7% | 27.3% | 0.0% | 93.4% | 63.2% | 26.0% |
| Arm 3/27 IO | 18 | 5,803,164 | 1.0% | 7.63% | 84.16% | 645 | 38.17% | 76.1% | 23.9% | 0.0% | 100.0% | 58.5% | 35.2% |
| Arm 5/25 | 13 | 3,214,697 | 0.6% | 7.05% | 79.24% | 627 | 38.89% | 100.0% | 0.0% | 0.0% | 100.0% | 49.7% | 20.1% |
| Arm 5/25 IO | 4 | 1,561,014 | 0.3% | 6.85% | 83.22% | 633 | 27.06% | 100.0% | 0.0% | 0.0% | 100.0% | 43.0% | 0.0% |
| Fixed | 991 | 129,951,440 | 24.6% | 8.29% | 81.78% | 704 | 37.69% | 77.9% | 22.1% | 100.0% | 95.0% | 69.7% | 19.8% |
| **Original DTI** | | | | | | | | | | | | | |
| Less than 20% | 132 | 33,750,685 | 7.5% | 7.74% | 80.82% | 622 | 12.54% | 93.3% | 6.7% | 38.5% | 90.3% | 69.4% | 16.2% |
| 20.0% to 29.9% | 293 | 54,152,248 | 10.3% | 7.94% | 80.95% | 614 | 24.81% | 71.6% | 28.6% | 37.7% | 92.2% | 63.9% | 27.2% |
| 30.0% to 39.9% | 562 | 105,643,696 | 19.5% | 8.04% | 82.73% | 614 | 34.98% | 68.5% | 31.3% | 22.9% | 93.6% | 67.2% | 26.9% |
| 40.0% to 49.9% | 1,041 | 209,388,564 | 39.9% | 8.09% | 84.40% | 618 | 44.75% | 68.2% | 31.8% | 22.5% | 94.3% | 64.3% | 31.0% |
| 50.0% to 59.9% | 618 | 124,523,747 | 23.6% | 8.06% | 85.13% | 614 | 53.56% | 73.6% | 26.4% | 21.5% | 93.2% | 65.2% | 36.2% |
| 60.0% and greater | 1 | 141,283 | 0.0% | 9.38% | 75.00% | 704 | 61.00% | 100.0% | 0.0% | 0.0% | 100.0% | 100.0% | 0.0% |

CONFIDENTIAL

RCPC00065193

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC - RASC 2B07 EMXX1
Data File of  12/31/2006

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,678 | 527,496,833 | | 8.04% | 83.67% | 616 | 40.32% | 68.7% | 31.3% | 24.6% | 93.6% | 64.2% | 29.4% |
| **Lien Position** | | | | | | | | | | | | | |
| 1st | 2,169 | 501,124,482 | 95.0% | 7.88% | 82.93% | 615 | 40.22% | 68.6% | 31.4% | 20.2% | 93.6% | 64.3% | 29.4% |
| 2nd | 505 | 26,372,337 | 5.0% | 11.34% | 97.69% | 631 | 42.55% | 72.8% | 28.2% | 100.0% | 95.4% | 62.8% | 28.9% |
| **State** | | | | | | | | | | | | | |
| AL | 38 | 4,534,842 | 0.9% | 9.14% | 88.11% | 592 | 36.99% | 78.2% | 21.8% | 37.5% | 93.1% | 73.2% | 32.2% |
| AZ | 119 | 16,071,890 | 3.4% | 8.39% | 83.99% | 626 | 40.46% | 62.0% | 38.0% | 9.9% | 93.6% | 63.9% | 52.7% |
| CA | 115 | 38,617,780 | 7.3% | 7.78% | 80.19% | 635 | 39.38% | 52.2% | 37.8% | 25.5% | 95.0% | 79.6% | 46.3% |
| CO | 20 | 3,613,620 | 0.7% | 8.07% | 85.22% | 613 | 39.18% | 92.0% | 9.0% | 33.9% | 92.8% | 71.4% | 18.8% |
| CT | 19 | 3,860,780 | 0.5% | 8.89% | 89.17% | 614 | 41.24% | 75.1% | 24.7% | 37.1% | 94.7% | 70.4% | 19.4% |
| DC | 7 | 2,386,621 | 0.5% | 8.39% | 81.93% | 617 | 60.07% | 51.5% | 48.5% | 8.7% | 100.0% | 100.0% | 48.9% |
| DE | 23 | 3,163,361 | 0.6% | 8.14% | 87.70% | 645 | 41.45% | 76.7% | 23.3% | 15.2% | 89.7% | 73.9% | 24.8% |
| FL | 461 | 86,090,015 | 16.9% | 7.75% | 83.22% | 601 | 39.55% | 62.7% | 37.8% | 12.8% | 88.6% | 57.0% | 32.0% |
| GA | 148 | 22,061,374 | 6.2% | 8.73% | 84.34% | 595 | 42.66% | 58.5% | 31.5% | 24.5% | 92.4% | 49.0% | 32.3% |
| ID | 24 | 3,583,628 | 0.7% | 8.33% | 82.50% | 616 | 33.78% | 90.5% | 9.4% | 38.7% | 99.6% | 54.8% | 49.1% |
| IL | 134 | 21,662,419 | 6.1% | 8.35% | 87.30% | 602 | 42.67% | 75.1% | 24.9% | 17.2% | 95.4% | 64.6% | 36.2% |
| IN | 18 | 1,897,641 | 0.4% | 8.33% | 85.03% | 585 | 44.80% | 95.0% | 5.0% | 35.1% | 100.0% | 64.0% | 36.7% |
| KY | 26 | 3,408,425 | 0.6% | 8.56% | 85.66% | 593 | 42.55% | 73.1% | 26.9% | 36.5% | 52.5% | 97.4% | 31.3% |
| LA | 56 | 7,335,368 | 1.4% | 8.34% | 86.09% | 596 | 37.22% | 67.8% | 32.2% | 29.0% | 93.8% | 95.8% | 6.3% |
| MA | 116 | 25,226,332 | 4.8% | 7.76% | 82.28% | 625 | 41.12% | 69.7% | 30.3% | 35.1% | 95.6% | 96.8% | 75.3% |
| MD | 146 | 38,935,449 | 7.4% | 7.85% | 87.17% | 609 | 41.00% | 66.8% | 33.2% | 30.1% | 94.7% | 60.8% | 29.0% |
| MI | 30 | 4,357,150 | 0.8% | 7.93% | 79.11% | 620 | 36.28% | 58.0% | 41.8% | 41.6% | 48.3% | 83.0% | 77.5% |
| MN | 64 | 11,171,422 | 1.6% | 7.53% | 87.24% | 661 | 35.93% | 83.5% | 16.5% | 12.8% | 97.3% | 85.1% | 31.4% |
| MO | 40 | 6,269,456 | 1.2% | 8.11% | 84.80% | 581 | 44.28% | 78.7% | 21.3% | 13.5% | 87.4% | 87.0% | 53.3% |
| MS | 13 | 1,779,480 | 0.3% | 8.41% | 84.63% | 612 | 36.96% | 88.3% | 11.7% | 25.9% | 78.3% | 94.9% | 7.0% |
| NC | 6 | 638,489 | 0.1% | 9.06% | 88.93% | 565 | 44.38% | 97.4% | 2.6% | 52.1% | 100.0% | 100.0% | 21.3% |
| NE | 38 | 5,388,552 | 1.0% | 8.58% | 82.83% | 611 | 32.56% | 82.5% | 17.5% | 19.5% | 95.8% | 52.8% | 6.5% |
| NH | 3 | 295,475 | 0.1% | 9.32% | 85.30% | 641 | 52.12% | 91.2% | 8.8% | 26.8% | 100.0% | 100.0% | 0.8% |
| NJ | 151 | 51,956,994 | 6.4% | 7.91% | 81.21% | 607 | 43.54% | 93.8% | 6.3% | 26.6% | 99.9% | 99.9% | 24.1% |
| NM | 173 | 34,988,696 | 6.4% | 7.72% | 82.97% | 624 | 41.62% | 73.6% | 26.3% | 70.7% | 95.0% | 55.8% | 76.3% |
| NV | 43 | 4,771,278 | 0.9% | 9.73% | 84.65% | 635 | 33.45% | 69.8% | 18.9% | 19.7% | 92.8% | 44.9% | 29.7% |
| NY | 82 | 8,511,560 | 1.6% | 8.65% | 94.16% | 633 | 42.18% | 89.0% | 19.0% | 32.6% | 89.4% | 55.5% | 53.5% |
| OH | 151 | 56,691,561 | 11.1% | 7.85% | 83.66% | 637 | 40.57% | 40.8% | 51.2% | 24.7% | 98.2% | 55.4% | 23.5% |
| OK | 71 | 1,613,002 | 0.3% | 9.43% | 87.17% | 607 | 38.11% | 86.4% | 13.6% | 27.2% | 18.5% | 84.3% | 6.7% |
| OR | 23 | 2,078,691 | 0.4% | 8.77% | 80.80% | 594 | 40.08% | 82.0% | 18.0% | 46.3% | 98.0% | 90.8% | 9.2% |
| PA | 71 | 3,909,489 | 0.7% | 8.24% | 80.87% | 625 | 47.73% | 89.5% | 10.9% | 6.7% | 78.2% | 81.0% | 15.6% |
| RI | 153 | 20,977,126 | 4.0% | 8.65% | 83.86% | 601 | 38.56% | 81.6% | 18.4% | 40.0% | 92.7% | 76.1% | 21.8% |
| SC | 71 | 4,889,521 | 0.9% | 7.85% | 80.78% | 629 | 40.22% | 73.8% | 26.2% | 50.9% | 67.0% | 67.0% | 15.7% |
| SD | 27 | 3,363,718 | 0.6% | 5.97% | 85.33% | 591 | 32.89% | 86.9% | 13.1% | 29.9% | 96.0% | 71.8% | 29.4% |
| TN | 2 | 422,179 | 0.0% | 10.33% | 90.16% | 564 | 37.28% | 100.0% | 0.0% | 0.0% | 100.0% | 100.0% | 40.7% |
| TX | 78 | 8,942,874 | 1.7% | 8.03% | 86.14% | 562 | 38.36% | 95.8% | 20.2% | 36.5% | 49.4% | 77.2% | 20.3% |
| UT | 40 | 4,643,177 | 0.9% | 8.63% | 87.18% | 600 | 38.50% | 70.5% | 29.7% | 86.3% | 48.4% | 37.8% | 9.6% |
| VA | 88 | 21,346,107 | 4.0% | 7.96% | 94.99% | 610 | 40.22% | 77.7% | 22.3% | 26.2% | 95.9% | 42.5% | 34.4% |
| WA | 62 | 6,751,366 | 1.7% | 8.32% | 85.17% | 622 | 39.34% | 82.5% | 17.1% | 18.7% | 83.7% | 79.5% | 14.8% |
| WI | 12 | 1,844,442 | 0.3% | 7.73% | 89.95% | 623 | 38.63% | 92.6% | 7.6% | 23.8% | 100.0% | 86.8% | 45.5% |
| WV | 3 | 349,090 | 0.1% | 8.11% | 88.64% | 646 | 45.10% | 100.0% | 0.0% | 32.7% | 100.0% | 100.0% | 0.0% |

CONFIDENTIAL

RCPC00065194

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC - RASC 2007 EMX1
Data File of 12/31/2008

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 2,678 | 527,496,833 | | 8.04% | 83.67% | 616 | 40.32% | 68.7% | 31.3% | 24.6% | 93.6% | 64.2% | 29.4% |
| **Original LTV** | | | | | | | | | | | | | |
| <= 60% | 97 | 17,826,296 | 3.4% | 7.56% | 50.53% | 627 | 36.44% | 57.7% | 32.3% | 57.2% | 57.0% | 75.0% | 11.6% |
| 60.1% to 65.6% | 59 | 13,066,570 | 2.5% | 7.33% | 63.14% | 610 | 102.65% | 77.3% | 22.7% | 60.5% | 90.8% | 77.6% | 8.0% |
| 65.1% to 70.0% | 84 | 17,059,510 | 3.3% | 7.62% | 68.78% | 608 | 37.12% | 62.3% | 37.7% | 49.1% | 58.1% | 76.1% | 16.4% |
| 70.1% to 75.0% | 125 | 27,688,140 | 5.2% | 7.66% | 74.21% | 623 | 37.97% | 68.6% | 31.0% | 50.3% | 93.2% | 65.1% | 28.5% |
| 75.1% to 80.0% | 931 | 215,326,027 | 40.8% | 7.96% | 79.88% | 623 | 40.46% | 63.4% | 36.6% | 16.6% | 94.4% | 61.3% | 12.6% |
| 80.1% to 85.0% | 133 | 46,602,792 | 8.8% | 7.80% | 84.85% | 598 | 39.07% | 79.7% | 20.3% | 22.5% | 96.4% | 65.5% | 28.6% |
| 85.1% to 90.0% | 365 | 75,971,419 | 14.4% | 8.63% | 89.79% | 600 | 41.26% | 88.1% | 11.9% | 13.5% | 86.6% | 66.5% | 30.8% |
| 90.1% to 95.0% | 135 | 32,588,282 | 6.2% | 8.09% | 94.79% | 621 | 42.64% | 85.9% | 14.1% | 17.6% | 94.8% | 64.3% | 32.8% |
| 95.1% to 100.0% | 690 | 82,912,002 | 15.3% | 9.40% | 99.93% | 625 | 43.02% | 93.2% | 40.3% | 85.4% | 86.7% | 61.4% | 31.9% |
| **I/O Flag** | | | | | | | | | | | | | |
| Yes | 113 | 36,177,733 | 6.9% | 7.54% | 81.10% | 660 | 35.55% | 76.7% | 23.3% | 23.8% | 98.3% | 56.5% | 33.6% |
| No | 2,555 | 491,319,507 | 93.1% | 8.08% | 83.85% | 614 | 40.68% | 68.2% | 31.8% | 24.8% | 93.7% | 64.8% | 29.3% |
| **Modifications** | | | | | | | | | | | | | |
| Yes | 524 | 134,318,837 | 25.5% | 6.40% | 85.43% | 558 | 43.22% | 52.6% | 37.4% | 7.9% | 98.3% | 62.9% | 13.3% |
| No | 2,024 | 370,179,003 | 70.2% | 8.58% | 82.87% | 522 | 39.18% | 71.7% | 26.8% | 31.7% | 92.1% | 66.1% | 32.2% |
| **Bankruptcy** | | | | | | | | | | | | | |
| Yes | 77 | 12,807,616 | 2.4% | 8.52% | 83.44% | 608 | 43.32% | 55.7% | 33.3% | 19.7% | 93.9% | 75.1% | |
| No | 2,601 | 514,689,204 | 97.6% | 8.09% | 83.67% | 616 | 40.25% | 68.8% | 31.2% | 24.8% | 93.6% | 64.0% | |

CONFIDENTIAL

RCPC00065195

CONFIDENTIAL    RCPC00065196

**EdgeMAC Corporation**
Loan Stratification
All Loans

FGIC - RASC 2B07 EMX1
Data File of 1/31/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 2,616 | 517,087,397 | | 8.02% | 83.59% | 616 | 40.26% | 68.8% | 31.2% | 24.8% | 93.7% | 64.2% | 32.7% |
| **Property Type** | | | | | | | | | | | | | |
| SFR | 1,775 | 331,982,137 | 64.2% | 8.04% | 83.14% | 612 | 39.66% | 71.5% | 28.8% | 26.6% | 95.2% | 55.2% | 31.6% |
| PUD | 207 | 31,193,616 | 6.0% | 8.29% | 86.55% | 621 | 39.79% | 65.3% | 45.7% | 27.3% | 86.6% | 0.0% | 39.7% |
| Multi-Family | 292 | 56,317,785 | 10.9% | 7.70% | 88.33% | 636 | 42.74% | 62.3% | 37.7% | 16.6% | 85.9% | 0.0% | 35.7% |
| Other | 48 | 7,166,860 | 1.4% | 7.87% | 83.22% | 625 | 38.29% | 67.9% | 32.1% | 22.4% | 88.1% | 0.0% | 26.1% |
| Condo | 395 | 90,427,227 | 17.5% | 7.92% | 84.71% | 614 | 40.58% | 72.7% | 27.3% | 25.2% | 93.9% | 0.0% | 36.5% |
| **Occupancy** | | | | | | | | | | | | | |
| Owner | 2,416 | 484,690,615 | 93.7% | 7.96% | 83.62% | 616 | 40.33% | 69.0% | 31.0% | 25.6% | 100.0% | 65.2% | 32.6% |
| Non Owner | 145 | 23,126,246 | 4.5% | 8.94% | 82.17% | 627 | 39.49% | 75.2% | 24.8% | 14.4% | 0.0% | 46.7% | 37.9% |
| 2nd Home | 54 | 9,270,536 | 1.8% | 8.93% | 85.53% | 641 | 38.36% | 38.3% | 61.7% | 32.1% | 0.6% | 55.2% | 54.6% |
| **Loan Purpose** | | | | | | | | | | | | | |
| Purchase | 1,239 | 217,105,159 | 42.0% | 8.24% | 88.07% | 621 | 40.61% | 56.7% | 43.3% | 15.8% | 92.5% | 56.9% | 36.5% |
| Rate/Term | 122 | 14,790,905 | 2.1% | 9.92% | 84.69% | 531 | 35.39% | 84.4% | 13.6% | 70.9% | 91.3% | 63.7% | 29.4% |
| Cash Out | 1,255 | 285,190,133 | 55.9% | 7.81% | 81.65% | 617 | 40.17% | 77.8% | 21.8% | 79.9% | 95.0% | 89.9% | 30.1% |
| **Documentation Type** | | | | | | | | | | | | | |
| Full / Alt | 1,845 | 355,528,753 | 68.8% | 7.91% | 83.68% | 619 | 39.99% | 100.0% | 0.0% | 28.1% | 94.1% | 65.5% | 28.5% |
| Stated | 771 | 161,568,644 | 31.2% | 8.26% | 83.40% | 628 | 42.16% | 0.0% | 100.0% | 17.6% | 92.9% | 61.4% | 41.8% |
| **Original FICO Score** | | | | | | | | | | | | | |
| Less than 500 | 77 | 13,754,860 | 2.7% | 8.62% | 82.95% | 476 | 41.24% | 85.3% | 14.7% | 13.6% | 92.6% | 72.2% | 40.8% |
| 500 to 549 | 390 | 60,817,289 | 11.8% | 8.27% | 82.24% | 531 | 40.27% | 78.2% | 21.8% | 20.2% | 96.0% | 68.7% | 32.9% |
| 550 to 599 | 615 | 114,601,190 | 22.2% | 8.03% | 82.88% | 576 | 40.28% | 76.4% | 23.6% | 20.4% | 94.8% | 69.9% | 33.6% |
| 600 to 649 | 911 | 188,512,217 | 36.5% | 8.09% | 84.81% | 624 | 40.35% | 63.6% | 36.3% | 22.5% | 94.0% | 61.8% | 33.1% |
| 650 to 699 | 514 | 92,898,592 | 19.1% | 7.89% | 84.68% | 671 | 40.28% | 67.2% | 32.8% | 31.8% | 90.5% | 60.5% | 33.8% |
| 700 to 749 | 133 | 31,795,519 | 6.2% | 7.90% | 83.83% | 720 | 40.39% | 54.4% | 45.6% | 33.4% | 92.4% | 61.4% | 34.5% |
| 750 to 799 | 36 | 8,721,281 | 1.6% | 6.06% | 71.72% | 770 | 36.02% | 51.6% | 48.6% | 78.1% | 87.2% | 46.2% | 14.5% |
| 800 and greater | 1 | 532,450 | 0.1% | 5.80% | 66.00% | 804 | 7.06% | 100.0% | 0.0% | 100.0% | 100.0% | 100.0% | 0.0% |
| **Original Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 24 | 13,927,036 | 2.7% | 5.59% | 67.93% | 708 | 29.98% | 62.1% | 37.3% | 90.2% | 100.0% | 71.4% | 9.2% |
| 6.00% to 6.99% | 181 | 47,236,352 | 9.2% | 6.71% | 76.33% | 640 | 37.83% | 87.0% | 13.0% | 40.4% | 97.3% | 67.3% | 22.8% |
| 7.00% to 7.99% | 561 | 140,278,159 | 27.1% | 7.37% | 80.16% | 626 | 38.92% | 80.5% | 19.5% | 24.9% | 95.9% | 65.9% | 12.3% |
| 8.00% to 8.99% | 662 | 143,707,670 | 25.0% | 8.01% | 84.25% | 609 | 40.98% | 70.1% | 29.9% | 12.5% | 91.2% | 60.7% | 33.2% |
| 9.00% to 9.99% | 531 | 103,254,885 | 20.0% | 8.68% | 88.49% | 595 | 42.22% | 54.9% | 45.1% | 13.7% | 90.9% | 64.8% | 37.8% |
| **Current Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 139 | 57,000,167 | 11.4% | 4.91% | 79.74% | 628 | 32.97% | 87.5% | 12.5% | 27.2% | 98.4% | 67.2% | 3.7% |
| 6.00% to 6.99% | 248 | 66,625,983 | 13.5% | 5.48% | 80.47% | 632 | 40.53% | 89.7% | 20.3% | 30.3% | 92.1% | 54.7% | 15.4% |
| 7.00% to 7.99% | 505 | 126,375,543 | 24.4% | 7.14% | 82.19% | 623 | 39.34% | 79.7% | 20.3% | 26.8% | 97.1% | 65.5% | 24.9% |
| 8.00% to 8.99% | 523 | 107,017,514 | 20.7% | 8.68% | 83.30% | 615 | 40.44% | 72.2% | 27.8% | 13.2% | 89.8% | 60.3% | 19.0% |
| 9.00% to 9.99% | 472 | 91,556,112 | 17.6% | 9.46% | 86.72% | 601 | 41.02% | 52.1% | 37.9% | 11.9% | 88.4% | 64.1% | 50.9% |

CONFIDENTIAL

RCPC00065197

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC – RASC 2B07 EMX1
Data File of 1/31/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,616 | 517,087,397 | | 8.02% | 83.59% | 616 | 40.26% | 68.8% | 31.2% | 24.8% | 93.7% | 64.2% | 32.7% |
| **Original Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 310 | 10,475,563 | 2.0% | 11.57% | 86.38% | 610 | 41.08% | 73.1% | 26.9% | 83.5% | 53.9% | 67.2% | 44.6% |
| $50,000 to $99,999 | 367 | 26,587,247 | 4.9% | 9.65% | 87.60% | 606 | 39.83% | 73.7% | 26.3% | 55.3% | 86.7% | 71.1% | 23.6% |
| $100,000 to $199,999 | 560 | 81,317,673 | 27.3% | 8.48% | 82.75% | 608 | 40.02% | 72.8% | 27.6% | 25.8% | 91.8% | 71.1% | 20.9% |
| $200,000 to $299,999 | 535 | 132,765,886 | 25.7% | 7.79% | 83.13% | 611 | 43.43% | 67.7% | 32.8% | 20.6% | 94.6% | 65.2% | 34.4% |
| $300,000 to $399,999 | 283 | 80,804,526 | 15.6% | 7.95% | 83.97% | 623 | 42.38% | 67.2% | 32.8% | 16.3% | 94.7% | 65.9% | 35.6% |
| $400,000 to $499,999 | 135 | 60,447,212 | 9.4% | 7.74% | 86.20% | 622 | 43.57% | 63.4% | 38.6% | 14.3% | 94.3% | 55.8% | 46.6% |
| $500,000 to $599,999 | 62 | 34,028,596 | 6.6% | 7.54% | 83.97% | 632 | 36.60% | 62.2% | 37.8% | 14.4% | 93.7% | 59.5% | 31.4% |
| $600,000 to $699,999 | 28 | 18,057,765 | 2.9% | 7.18% | 83.01% | 632 | 40.38% | 64.7% | 35.3% | 18.6% | 95.3% | 45.0% | 21.4% |
| $700,000 to $999,999 | 10 | 9,475,919 | 1.8% | 6.74% | 80.76% | 638 | 28.32% | 80.3% | 19.3% | 56.6% | 100.0% | 59.2% | 10.8% |
| Greater than $1,000,000 | 2 | 1,595,232 | 0.4% | 7.05% | 70.82% | 583 | 40.37% | 100.0% | 0.0% | 92.3% | 100.0% | 49.4% | 50.6% |
| **Current Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 326 | 11,288,091 | 2.2% | 11.56% | 86.33% | 609 | 40.56% | 73.8% | 26.1% | 83.1% | 53.7% | 67.7% | 44.5% |
| $50,000 to $99,999 | 351 | 25,755,407 | 5.1% | 9.55% | 87.61% | 605 | 39.71% | 78.5% | 28.4% | 56.7% | 86.7% | 72.8% | 22.8% |
| $100,000 to $199,999 | 543 | 79,604,331 | 27.6% | 8.44% | 82.07% | 609 | 40.08% | 72.8% | 27.6% | 26.3% | 91.9% | 71.8% | 29.7% |
| $200,000 to $299,999 | 527 | 130,288,486 | 25.6% | 7.85% | 83.84% | 609 | 41.55% | 68.7% | 31.3% | 20.7% | 94.4% | 64.4% | 35.7% |
| $300,000 to $399,999 | 238 | 81,746,463 | 15.8% | 7.56% | 84.03% | 624 | 42.47% | 65.3% | 34.7% | 13.4% | 94.8% | 66.2% | 44.5% |
| $400,000 to $499,999 | 111 | 49,163,071 | 9.5% | 7.54% | 83.70% | 629 | 42.69% | 62.1% | 37.9% | 13.3% | 93.2% | 59.8% | 36.5% |
| $500,000 to $599,999 | 58 | 31,460,376 | 6.1% | 6.99% | 83.98% | 629 | 37.44% | 53.4% | 46.9% | 15.1% | 93.2% | 48.4% | 36.9% |
| $600,000 to $699,999 | 31 | 19,957,343 | 3.9% | 6.99% | 84.11% | 642 | 38.92% | 61.0% | 39.4% | 19.4% | 96.8% | 39.1% | 22.5% |
| $700,000 to $999,999 | 9 | 8,701,435 | 1.7% | 6.57% | 79.65% | 640 | 31.02% | 88.8% | 11.2% | 56.6% | 100.0% | 55.6% | 14.9% |
| $1,000,000 and greater | 2 | 1,000,060 | 0.1% | 7.95% | 80.80% | 635 | 50.00% | 100.0% | 0.0% | 0.0% | 100.0% | 0.0% | 100.0% |
| **Balloon** | | | | | | | | | | | | | |
| Yes | 1,483 | 289,079,555 | 56.1% | 8.11% | 85.07% | 613 | 42.56% | 57.1% | 37.9% | 15.7% | 93.3% | 60.9% | 34.6% |
| No | 1,133 | 227,007,829 | 43.9% | 7.88% | 81.69% | 620 | 37.34% | 70.9% | 29.1% | 36.5% | 94.1% | 68.4% | 29.6% |
| **Amortization Term** | | | | | | | | | | | | | |
| 180 | 14 | 1,066,029 | 0.2% | 9.70% | 80.38% | 643 | 34.55% | 71.1% | 28.9% | 100.0% | 100.0% | 76.2% | 6.6% |
| 240 | 52 | 2,964,243 | 0.6% | 10.66% | 74.33% | 635 | 37.97% | 88.7% | 11.3% | 100.0% | 98.3% | 29.9% | 7.5% |
| 360 | 1,464 | 244,134,118 | 47.2% | 8.15% | 83.34% | 621 | 37.86% | 70.5% | 29.5% | 40.9% | 94.3% | 67.2% | 25.9% |
| 480 | 1,051 | 264,084,628 | 51.7% | 7.85% | 83.93% | 611 | 42.45% | 66.5% | 33.4% | 8.8% | 93.1% | 60.9% | 39.5% |
| **Product Type** | | | | | | | | | | | | | |
| Arm 10/20 | 2 | 623,593 | 0.1% | 8.32% | 85.08% | 633 | 49.63% | 44.8% | 55.2% | 0.6% | 100.0% | 100.0% | 44.8% |
| Arm 2/28 | 1,261 | 291,043,742 | 56.3% | 7.97% | 84.65% | 608 | 41.78% | 62.2% | 37.8% | 0.0% | 91.9% | 63.7% | 37.1% |
| Arm 2/28 IO | 73 | 21,434,007 | 4.2% | 6.05% | 80.15% | 658 | 36.74% | 78.8% | 20.8% | 0.0% | 99.7% | 45.0% | 23.0% |
| Arm 3/27 | 276 | 66,580,136 | 12.7% | 7.88% | 85.63% | 599 | 40.21% | 73.7% | 26.3% | 0.0% | 93.6% | 62.8% | 27.8% |
| Arm 3/27 IO | 18 | 5,309,055 | 1.0% | 7.63% | 84.16% | 645 | 38.17% | 76.1% | 23.9% | 0.0% | 100.0% | 58.5% | 35.2% |
| Arm 5/25 | 13 | 3,213,633 | 0.6% | 7.09% | 79.24% | 627 | 38.89% | 100.0% | 0.0% | 0.0% | 100.0% | 40.7% | 36.1% |
| Arm 5/25 IO | 4 | 1,506,707 | 0.3% | 6.83% | 83.72% | 633 | 27.03% | 100.0% | 0.0% | 0.0% | 100.0% | 43.0% | 24.8% |
| Fixed | 969 | 128,353,130 | 24.8% | 8.25% | 81.62% | 632 | 37.64% | 77.9% | 22.1% | 100.0% | 95.5% | 69.5% | 22.6% |
| **Original DTI** | | | | | | | | | | | | | |
| Less than 20% | 156 | 33,537,835 | 7.6% | 7.73% | 80.82% | 622 | 12.54% | 93.7% | 6.8% | 38.4% | 90.9% | 69.4% | 15.8% |
| 20.0% to 29.9% | 289 | 53,616,151 | 10.4% | 7.99% | 81.60% | 614 | 24.89% | 71.8% | 28.2% | 37.8% | 97.3% | 64.0% | 27.7% |
| 30.0% to 39.9% | 558 | 101,140,767 | 19.6% | 8.03% | 82.77% | 614 | 34.98% | 68.5% | 31.5% | 71.0% | 94.2% | 67.4% | 32.4% |
| 40.0% to 49.9% | 1,010 | 201,322,873 | 38.9% | 8.08% | 84.79% | 615 | 44.99% | 65.4% | 34.6% | 22.3% | 93.1% | 64.2% | 36.8% |
| 50.0% to 59.9% | 603 | 121,243,693 | 23.5% | 8.06% | 85.18% | 613 | 52.56% | 74.6% | 25.4% | 21.1% | 93.0% | 59.8% | 30.5% |
| 60.0% and greater | 1 | 141,277 | 0.0% | 9.38% | 75.60% | 704 | 61.00% | 100.0% | 0.0% | 0.0% | 100.0% | 100.0% | 0.0% |

**CONFIDENTIAL**

RCPC00065198

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC – RASC 2B07 EMXX1
Data File of  1/31/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,616 | 517,087,397 | | 8.02% | 83.59% | 616 | 40.26% | 68.8% | 31.2% | 24.8% | 93.7% | 64.2% | 32.7% |
| **Lien Position** | | | | | | | | | | | | | |
| 1st | 2,226 | 491,823,727 | 95.1% | 7.96% | 82.87% | 615 | 40.24% | 68.8% | 31.4% | 24.6% | 93.7% | 64.3% | 32.8% |
| 2nd | 498 | 25,273,658 | 4.9% | 11.33% | 97.62% | 633 | 42.53% | 72.8% | 28.2% | 100.0% | 95.2% | 62.4% | 31.7% |
| **State** | | | | | | | | | | | | | |

*(Remaining state-level rows and numeric data are illegible at this resolution.)*

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC - RASC 2B07 EMX1
Data File of 1/31/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 2,616 | 517,087,397 | | 8.02% | 83.59% | 616 | 40.26% | 68.8% | 31.2% | 24.8% | 93.7% | 64.2% | 32.7% |
| **Original LTV** | | | | | | | | | | | | | |
| <= 60% | 96 | 17,497,318 | 3.4% | 7.53% | 50.54% | 627 | 36.55% | 63.1% | 31.0% | 57.5% | 92.6% | 75.6% | 13.3% |
| 60.1% to 65.0% | 58 | 12,922,568 | 2.5% | 7.32% | 63.16% | 610 | 42.43% | 77.0% | 23.0% | 61.2% | 89.8% | 75.7% | 11.0% |
| 65.1% to 70.0% | 84 | 17,257,079 | 3.3% | 7.62% | 68.78% | 608 | 37.12% | 62.3% | 37.7% | 49.6% | 98.1% | 76.1% | 16.2% |
| 70.1% to 75.0% | 125 | 27,676,286 | 5.4% | 7.66% | 74.21% | 598 | 37.71% | 68.6% | 31.2% | 50.3% | 93.2% | 65.1% | 28.9% |
| 75.1% to 80.0% | 912 | 211,627,857 | 40.9% | 7.58% | 79.88% | 623 | 40.50% | 63.7% | 36.3% | 36.5% | 94.8% | 61.0% | 18.5% |
| 80.1% to 85.0% | 138 | 45,466,599 | 8.8% | 7.78% | 84.62% | 591 | 38.83% | 80.0% | 20.0% | 22.8% | 96.0% | 67.2% | 31.7% |
| 85.1% to 90.0% | 358 | 74,757,515 | 14.5% | 8.35% | 89.79% | 601 | 41.11% | 88.0% | 12.0% | 13.5% | 86.5% | 66.1% | 33.6% |
| 90.1% to 95.0% | 129 | 31,185,227 | 6.0% | 8.04% | 94.33% | 624 | 42.67% | 85.9% | 14.1% | 18.7% | 95.3% | 64.7% | 35.3% |
| 95.1% to 100.0% | 667 | 78,658,617 | 15.2% | 9.62% | 99.93% | 625 | 43.78% | 93.0% | 41.0% | 83.2% | 96.8% | 61.4% | 36.2% |
| **I/O Flag** | | | | | | | | | | | | | |
| Yes | 113 | 36,174,167 | 7.0% | 7.54% | 81.11% | 665 | 35.55% | 76.1% | 23.8% | 21.8% | 99.3% | 56.5% | 37.5% |
| No | 2,503 | 480,913,718 | 93.0% | 8.06% | 83.77% | 612 | 40.61% | 68.2% | 31.8% | 25.1% | 93.3% | 64.9% | 32.3% |
| **Modifications** | | | | | | | | | | | | | |
| Yes | 520 | 134,383,761 | 26.0% | 6.40% | 85.45% | 598 | 43.26% | 52.6% | 37.4% | 7.9% | 98.3% | 62.8% | 13.6% |
| No | 2,024 | 376,038,618 | 71.8% | 8.58% | 82.47% | 622 | 39.18% | 71.7% | 26.3% | 31.2% | 92.1% | 66.1% | 37.5% |
| **Bankruptcy** | | | | | | | | | | | | | |
| Yes | 77 | 12,805,011 | 2.5% | 8.52% | 83.44% | 608 | 43.32% | 55.7% | 33.3% | 19.7% | 93.9% | 75.1% | |
| No | 2,539 | 504,282,373 | 97.5% | 8.01% | 83.59% | 616 | 40.18% | 68.8% | 31.2% | 25.0% | 93.7% | 63.9% | |

**CONFIDENTIAL**

RCPC00065200

CONFIDENTIAL

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC - RASC 2B07 EMX1
Data File of 7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 2,531 | 499,222,834 | | 8.02% | 83.52% | 616 | 40.23% | 69.3% | 30.7% | 25.3% | 93.7% | 64.7% | 33.2% |
| **Property Type** | | | | | | | | | | | | | |
| SFR | 1,713 | 333,046,065 | 66.7% | 8.03% | 88.07% | 613 | 38.85% | 70.2% | 29.8% | 27.2% | 95.1% | 100.0% | 42.1% |
| PUD | 202 | 30,584,335 | 6.1% | 8.31% | 86.68% | 622 | 39.89% | 54.7% | 45.3% | 27.3% | 86.2% | 0.0% | 39.9% |
| Multi-Family | 283 | 53,722,672 | 10.8% | 7.97% | 88.40% | 637 | 42.77% | 61.3% | 38.2% | 17.6% | 89.4% | 0.0% | 36.4% |
| Other | 64 | 6,131,509 | 1.2% | 8.01% | 83.52% | 621 | 36.56% | 78.1% | 21.9% | 25.7% | 87.1% | 0.0% | 31.7% |
| Condo | 260 | 85,738,314 | 17.2% | 7.58% | 84.55% | 614 | 40.59% | 73.4% | 26.6% | 26.6% | 94.4% | 0.0% | 36.4% |
| **Occupancy** | | | | | | | | | | | | | |
| Owner | 2,337 | 467,758,809 | 93.7% | 7.95% | 83.56% | 615 | 40.31% | 69.6% | 30.4% | 26.0% | 100.0% | 65.6% | 32.5% |
| Non Owner | 144 | 27,811,465 | 6.6% | 8.94% | 102.16% | 627 | 38.58% | 74.3% | 25.2% | 14.6% | 0.6% | 46.8% | 40.2% |
| 2nd Home | 50 | 3,652,548 | 1.7% | 8.86% | 84.92% | 649 | 37.30% | 41.0% | 59.0% | 32.5% | 0.6% | 61.3% | 55.1% |
| **Loan Purpose** | | | | | | | | | | | | | |
| Purchase | 1,191 | 208,740,745 | 41.8% | 8.24% | 88.11% | 621 | 40.47% | 57.8% | 42.3% | 55.5% | 92.1% | 57.9% | 38.4% |
| Rate/Term | 116 | 13,685,399 | 2.1% | 9.27% | 84.13% | 537 | 35.34% | 63.0% | 33.0% | 70.5% | 93.6% | 63.2% | 22.7% |
| Cash Out | 1,222 | 279,767,778 | 56.0% | 7.80% | 81.55% | 613 | 40.24% | 77.4% | 23.0% | 80.6% | 94.8% | 69.9% | 74.8% |
| **Documentation Type** | | | | | | | | | | | | | |
| Full / Alt | 1,800 | 346,037,867 | 69.3% | 7.92% | 83.44% | 619 | 39.42% | 100.0% | 0.0% | 28.4% | 94.6% | 66.0% | 29.8% |
| Stated | 732 | 153,184,967 | 30.7% | 8.23% | 83.48% | 628 | 42.04% | 0.0% | 100.0% | 18.2% | 92.9% | 61.8% | 41.0% |
| **Original FICO Score** | | | | | | | | | | | | | |
| Less than 500 | 74 | 13,142,860 | 2.6% | 8.98% | 83.22% | 478 | 41.11% | 85.6% | 14.4% | 14.2% | 98.3% | 70.9% | 30.9% |
| 500 to 549 | 322 | 58,906,072 | 11.8% | 8.23% | 82.21% | 530 | 40.12% | 79.3% | 20.7% | 20.7% | 95.8% | 69.1% | 34.6% |
| 550 to 599 | 598 | 111,578,875 | 22.4% | 8.04% | 82.60% | 576 | 40.35% | 76.4% | 23.6% | 20.6% | 94.0% | 70.7% | 34.3% |
| 600 to 649 | 882 | 181,876,653 | 36.4% | 8.11% | 84.88% | 624 | 40.31% | 84.0% | 16.0% | 36.0% | 94.1% | 62.3% | 33.7% |
| 650 to 699 | 490 | 93,632,570 | 18.8% | 7.95% | 83.93% | 671 | 40.34% | 63.3% | 36.7% | 33.0% | 90.4% | 61.1% | 34.6% |
| 700 to 749 | 130 | 31,152,796 | 6.3% | 6.92% | 63.52% | 718 | 40.45% | 51.2% | 48.8% | 33.0% | 93.4% | 62.3% | 22.7% |
| 750 to 799 | 30 | 8,097,513 | 1.6% | 5.94% | 71.65% | 771 | 55.88% | 53.6% | 46.4% | 78.8% | 83.0% | 46.7% | 12.5% |
| 800 and greater | 5 | 531,795 | 0.1% | 5.80% | 66.00% | 804 | 7.06% | 100.0% | 0.0% | 100.0% | 100.0% | 100.0% | 0.0% |
| **Original Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 24 | 13,913,966 | 2.8% | 5.59% | 67.99% | 708 | 29.38% | 62.1% | 37.3% | 90.2% | 100.0% | 71.3% | 13.2% |
| 6.00% to 6.99% | 178 | 47,066,245 | 9.4% | 6.70% | 76.27% | 640 | 37.90% | 87.4% | 12.6% | 41.0% | 97.3% | 67.3% | 29.5% |
| 7.00% to 7.99% | 543 | 134,176,122 | 26.9% | 7.48% | 80.39% | 626 | 38.99% | 80.9% | 19.1% | 25.7% | 96.0% | 66.9% | 34.6% |
| 8.00% to 8.99% | 651 | 145,640,751 | 29.1% | 8.02% | 84.23% | 609 | 40.92% | 70.3% | 29.7% | 24.7% | 91.2% | 61.8% | 33.3% |
| 9.00% to 9.99% | 515 | 99,321,456 | 19.9% | 8.68% | 88.50% | 595 | 42.12% | 56.3% | 43.7% | 11.1% | 91.0% | 65.3% | 36.7% |
| **Current Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 157 | 56,864,575 | 11.4% | 4.64% | 79.26% | 628 | 39.01% | 86.4% | 13.6% | 28.2% | 98.4% | 67.8% | 1.4% |
| 6.00% to 6.99% | 293 | 68,388,751 | 13.7% | 5.49% | 80.59% | 615 | 40.47% | 70.2% | 30.3% | 30.7% | 98.0% | 56.0% | 15.6% |
| 7.00% to 7.99% | 409 | 101,706,655 | 20.4% | 7.14% | 82.81% | 620 | 39.06% | 79.5% | 20.5% | 27.4% | 97.0% | 66.0% | 29.6% |
| 8.00% to 8.99% | 511 | 104,294,726 | 20.9% | 8.47% | 83.33% | 614 | 40.42% | 72.8% | 27.6% | 19.3% | 89.7% | 61.2% | 38.1% |
| 9.00% to 9.99% | 455 | 87,037,311 | 17.4% | 9.47% | 86.79% | 601 | 40.84% | 83.9% | 35.1% | 12.4% | 88.5% | 64.2% | 50.9% |

CONFIDENTIAL

RCPC00065202

**EdgeMAC Corporation**
Loan Stratification
All Loans

FGIC – RASC 2B07 EMXX1
Data File of   7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 2,531 | 499,222,834 | | 8.02% | 83.52% | 616 | 40.23% | 69.3% | 30.7% | 25.3% | 93.7% | 64.7% | 33.2% |
| **Original Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 291 | 9,820,116 | 2.6% | 11.96% | 86.13% | 620 | 40.77% | 74.5% | 26.6% | 98.8% | 93.9% | 66.7% | 44.2% |
| $50,000 to $99,999 | 388 | 24,284,736 | 5.0% | 9.64% | 87.54% | 604 | 39.73% | 74.5% | 25.4% | 54.9% | 86.8% | 72.7% | 22.9% |
| $100,000 to $199,999 | 640 | 88,493,105 | 27.7% | 8.38% | 82.71% | 607 | 40.12% | 73.0% | 27.1% | 28.5% | 93.7% | 71.7% | 20.7% |
| $200,000 to $299,999 | 522 | 129,299,581 | 25.9% | 7.77% | 83.13% | 619 | 41.51% | 68.0% | 32.0% | 23.2% | 94.6% | 65.8% | 33.3% |
| $300,000 to $399,999 | 271 | 75,604,346 | 15.4% | 7.61% | 83.96% | 621 | 42.53% | 67.8% | 32.3% | 13.0% | 94.4% | 65.5% | 36.7% |
| $400,000 to $499,999 | 134 | 45,054,341 | 9.2% | 7.81% | 84.28% | 622 | 43.41% | 62.4% | 37.6% | 23.0% | 94.2% | 58.5% | 51.2% |
| $500,000 to $599,999 | 60 | 32,996,250 | 6.6% | 7.53% | 83.28% | 632 | 46.33% | 52.8% | 47.6% | 14.6% | 93.5% | 51.1% | 32.4% |
| $600,000 to $699,999 | 22 | 14,405,186 | 2.9% | 7.15% | 83.28% | 639 | 43.47% | 63.1% | 36.9% | 32.4% | 95.7% | 47.0% | 30.8% |
| $700,000 to $799,999 | 9 | 6,514,096 | 1.7% | 6.72% | 78.03% | 643 | 76.28% | 78.3% | 21.7% | 56.6% | 100.0% | 65.9% | 11.2% |
| Greater than $1,000,000 | 2 | 1,579,572 | 0.4% | 7.95% | 70.62% | 583 | 40.37% | 100.0% | 0.0% | 49.4% | 100.0% | 49.4% | 50.6% |
| **Current Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 306 | 10,565,566 | 2.1% | 11.96% | 86.97% | 621 | 40.61% | 74.5% | 26.6% | 97.5% | 93.8% | 67.6% | 76.3% |
| $50,000 to $99,999 | 342 | 20,097,315 | 5.7% | 9.56% | 86.69% | 607 | 39.63% | 74.4% | 25.6% | 54.1% | 87.0% | 73.3% | 23.3% |
| $100,000 to $199,999 | 921 | 135,545,150 | 27.3% | 8.43% | 82.40% | 608 | 40.15% | 72.6% | 27.1% | 26.5% | 93.8% | 71.9% | 30.2% |
| $200,000 to $299,999 | 514 | 125,775,931 | 25.2% | 7.84% | 83.67% | 609 | 41.63% | 89.5% | 30.5% | 21.5% | 94.5% | 64.5% | 36.4% |
| $300,000 to $399,999 | 227 | 77,961,078 | 15.6% | 7.56% | 83.80% | 619 | 42.43% | 55.6% | 34.2% | 13.7% | 96.9% | 66.0% | 36.6% |
| $400,000 to $499,999 | 196 | 86,893,658 | 9.4% | 7.63% | 83.99% | 622 | 42.52% | 68.7% | 31.8% | 13.0% | 94.8% | 59.4% | 48.5% |
| $500,000 to $599,999 | 55 | 29,762,931 | 6.0% | 6.96% | 83.99% | 631 | 36.94% | 53.3% | 36.7% | 16.4% | 92.8% | 51.1% | 37.9% |
| $600,000 to $699,999 | 36 | 19,300,661 | 3.9% | 6.96% | 81.17% | 641 | 39.79% | 59.7% | 40.3% | 96.8% | 96.8% | 63.6% | 23.5% |
| $700,000 to $799,999 | 8 | 7,717,413 | 1.5% | 5.63% | 77.14% | 643 | 36.92% | 87.6% | 12.0% | 62.5% | 96.0% | 67.5% | 12.2% |
| $1,000,000 and greater | 2 | 1,600,560 | 0.1% | 7.95% | 80.66% | 635 | 50.00% | 100.0% | 0.0% | 0.0% | 100.0% | 0.0% | 100.0% |
| **Balloon** | | | | | | | | | | | | | |
| Yes | 1,423 | 279,371,901 | 56.0% | 8.12% | 85.09% | 612 | 42.65% | 57.6% | 37.6% | 15.7% | 93.3% | 61.3% | 39.5% |
| No | 1,508 | 219,850,920 | 44.0% | 7.89% | 81.35% | 620 | 37.28% | 72.4% | 28.6% | 37.5% | 94.2% | 69.2% | 25.2% |
| **Amortization Term** | | | | | | | | | | | | | |
| 180 | 13 | 1,024,606 | 0.2% | 9.63% | 79.94% | 645 | 34.44% | 72.6% | 27.4% | 100.0% | 100.0% | 75.7% | 4.6% |
| 240 | 52 | 2,959,777 | 0.6% | 9.65% | 74.14% | 636 | 37.97% | 88.7% | 11.3% | 98.6% | 98.3% | 89.9% | 8.5% |
| 360 | 1,414 | 235,746,733 | 47.2% | 8.15% | 83.15% | 620 | 37.81% | 71.1% | 28.9% | 41.7% | 94.2% | 68.0% | 26.6% |
| 480 | 1,017 | 256,234,792 | 51.1% | 7.84% | 83.98% | 616 | 42.44% | 67.2% | 32.8% | 8.9% | 93.1% | 61.2% | 39.5% |
| **Product Type** | | | | | | | | | | | | | |
| Arm 10/20 | 2 | 623,360 | 0.1% | 8.32% | 65.09% | 633 | 49.60% | 44.8% | 55.2% | 0.6% | 100.0% | 100.0% | 44.8% |
| Arm 2/28 | 1,219 | 279,737,608 | 56.0% | 7.95% | 84.67% | 607 | 41.65% | 62.5% | 37.5% | 0.0% | 91.9% | 56.4% | 37.5% |
| Arm 2/28 IO | 65 | 19,543,807 | 3.3% | 7.13% | 84.07% | 658 | 37.11% | 77.0% | 23.0% | 0.0% | 93.8% | 51.3% | 54.8% |
| Arm 3/27 | 271 | 64,045,148 | 12.8% | 7.88% | 85.56% | 599 | 40.25% | 74.9% | 25.1% | 0.0% | 93.4% | 61.9% | 28.6% |
| Arm 3/27 IO | 17 | 5,142,448 | 1.0% | 7.63% | 84.13% | 645 | 38.26% | 78.5% | 21.5% | 0.0% | 100.0% | 57.3% | 50.0% |
| Arm 5/25 | 12 | 2,831,634 | 0.6% | 7.22% | 79.15% | 633 | 40.86% | 100.0% | 0.0% | 0.0% | 100.0% | 46.2% | 40.9% |
| Arm 5/25 IO | 4 | 1,506,603 | 0.3% | 6.85% | 83.22% | 653 | 27.06% | 100.0% | 0.0% | 0.0% | 100.0% | 43.0% | 24.8% |
| Fixed | 937 | 125,188,713 | 25.3% | 3.23% | 81.42% | 632 | 37.63% | 77.9% | 22.1% | 100.0% | 95.5% | 69.6% | 21.9% |
| **Original DTI** | | | | | | | | | | | | | |
| Less than 20% | 153 | 18,436,597 | 7.7% | 7.71% | 80.46% | 621 | 12.56% | 93.0% | 7.0% | 39.0% | 90.2% | 70.7% | 19.6% |
| 20.0% to 29.9% | 280 | 51,969,602 | 10.4% | 7.95% | 81.66% | 615 | 24.79% | 71.2% | 28.8% | 38.7% | 92.5% | 64.7% | 27.2% |
| 30.0% to 39.9% | 537 | 96,709,890 | 39.4% | 8.01% | 82.84% | 613 | 34.94% | 78.0% | 25.8% | 21.4% | 93.5% | 67.4% | 31.9% |
| 40.0% to 49.9% | 978 | 177,755,168 | 38.8% | 8.10% | 84.08% | 612 | 44.88% | 70.3% | 30.2% | 33.0% | 93.8% | 64.5% | 35.4% |
| 50.0% to 59.9% | 582 | 177,755,760 | 23.6% | 8.04% | 85.19% | 612 | 53.63% | 74.9% | 24.8% | 22.3% | 93.8% | 69.9% | 30.4% |
| 60.0% and greater | 1 | 141,267 | 0.0% | 9.38% | 79.60% | 704 | 61.90% | 100.0% | 0.0% | 0.0% | 100.0% | 100.0% | 0.0% |

**CONFIDENTIAL**

RCPC00065203

EdgeMAC Corporation
Loan Stratification
All Loans

FGIC – RASC 2007 EMX1
Data File of   1/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 2,531 | 499,222,834 | | 8.02% | 83.52% | 616 | 40.23% | 69.3% | 30.7% | 25.3% | 93.7% | 64.7% | 33.2% |
| **Lien Position** | | | | | | | | | | | | | |
| 1st | 2,068 | 475,241,276 | 95.2% | 7.96% | 82.82% | 615 | 40.12% | 69.2% | 30.8% | 21.5% | 93.6% | 64.8% | 43.2% |
| 2nd | 460 | 23,981,546 | 4.8% | 11.33% | 97.46% | 633 | 42.54% | 72.7% | 27.8% | 100.0% | 95.1% | 62.7% | 33.9% |
| **State** | | | | | | | | | | | | | |
| AL | 33 | 4,135,660 | 0.9% | 9.14% | 95.93% | 591 | 36.94% | 77.7% | 22.3% | 86.9% | 92.7% | 71.8% | 14.6% |
| AZ | 160 | 41,258,356 | 8.3% | 8.20% | 83.66% | 627 | 40.85% | 63.1% | 36.9% | 9.3% | 94.2% | 65.1% | 52.6% |
| CA | 105 | 35,859,709 | 7.2% | 7.73% | 79.76% | 636 | 38.94% | 52.5% | 37.5% | 27.2% | 94.6% | 78.9% | 49.9% |
| CO | 26 | 3,615,358 | 0.7% | 8.07% | 85.21% | 613 | 39.18% | 92.0% | 9.0% | 33.8% | 92.6% | 71.4% | 29.4% |
| CT | 178 | 27,800,466 | 6.4% | 8.99% | 96.00% | 617 | 41.18% | 74.2% | 25.8% | 26.6% | 94.5% | 69.1% | 31.9% |
| DC | 7 | 2,385,363 | 0.5% | 8.39% | 81.19% | 617 | 60.07% | 51.5% | 48.5% | 8.7% | 100.0% | 100.0% | 16.5% |
| DE | 71 | 3,342,597 | 0.6% | 7.93% | 87.83% | 642 | 41.40% | 82.0% | 18.0% | 16.5% | 94.5% | 77.8% | 16.2% |
| FL | 439 | 85,958,540 | 18.8% | 8.70% | 83.63% | 617 | 39.55% | 63.5% | 37.5% | 18.5% | 89.8% | 55.9% | 46.4% |
| GA | 141 | 21,388,271 | 6.3% | 8.77% | 86.74% | 596 | 42.26% | 58.0% | 31.0% | 27.6% | 92.6% | 48.5% | 16.4% |
| HI | 22 | 8,673,568 | 0.7% | 8.27% | 82.68% | 616 | 35.55% | 90.7% | 9.8% | 40.0% | 89.8% | 52.6% | 58.7% |
| IL | 105 | 20,328,491 | 4.1% | 8.13% | 87.58% | 603 | 42.36% | 77.4% | 22.6% | 13.0% | 95.1% | 64.9% | 36.8% |
| IN | 14 | 3,440,160 | 0.9% | 8.49% | 86.32% | 584 | 42.37% | 93.0% | 7.0% | 13.0% | 100.0% | 33.4% | 10.4% |
| KY | 26 | 3,440,160 | 0.7% | 8.85% | 86.60% | 593 | 42.68% | 73.3% | 26.7% | 37.4% | 92.5% | 97.5% | 23.5% |
| LA | 55 | 7,183,184 | 1.4% | 8.41% | 86.12% | 596 | 37.84% | 89.1% | 10.9% | 29.5% | 93.8% | 95.8% | 24.4% |
| MA | 110 | 23,814,847 | 4.8% | 7.75% | 82.00% | 625 | 41.12% | 71.5% | 28.1% | 36.6% | 95.3% | 57.8% | 31.3% |
| MD | 140 | 37,191,978 | 7.4% | 7.82% | 82.03% | 612 | 40.65% | 88.4% | 11.6% | 31.3% | 94.8% | 61.9% | 30.7% |
| MI | 29 | 4,198,566 | 0.8% | 7.85% | 78.89% | 623 | 36.60% | 81.0% | 19.0% | 41.1% | 87.8% | 82.8% | 31.3% |
| MN | 62 | 10,345,681 | 1.6% | 7.74% | 87.23% | 604 | 38.55% | 63.6% | 12.5% | 12.5% | 87.6% | 85.4% | 27.0% |
| MO | 37 | 5,987,541 | 1.2% | 8.04% | 94.87% | 585 | 44.07% | 77.6% | 22.9% | 13.0% | 100.0% | 97.0% | 86.2% |
| MS | 12 | 1,468,890 | 0.3% | 7.97% | 91.70% | 601 | 36.78% | 74.5% | 25.5% | 10.4% | 74.7% | 94.0% | 8.3% |
| NC | 6 | 537,942 | 0.1% | 9.07% | 88.93% | 565 | 42.48% | 97.4% | 7.0% | 52.1% | 100.0% | 100.0% | 37.1% |
| NE | 38 | 5,382,045 | 1.1% | 8.59% | 82.53% | 611 | 32.56% | 82.5% | 17.5% | 19.1% | 99.3% | 52.6% | 8.3% |
| NH | 3 | 484,859 | 0.1% | 9.52% | 85.35% | 541 | 52.13% | 91.3% | 8.7% | 26.8% | 100.0% | 100.0% | 0.6% |
| NJ | 30 | 4,983,771 | 1.0% | 7.88% | 81.11% | 619 | 43.27% | 93.6% | 6.4% | 27.7% | 100.0% | 63.6% | 20.5% |
| NM | 116 | 32,857,162 | 6.5% | 7.73% | 92.09% | 625 | 41.63% | 73.6% | 26.4% | 21.1% | 94.7% | 58.1% | 27.3% |
| NV | 23 | 3,635,250 | 0.8% | 9.82% | 84.17% | 594 | 33.38% | 78.8% | 21.2% | 28.1% | 92.8% | 21.9% | 31.9% |
| NY | 25 | 6,159,401 | 1.3% | 7.95% | 87.88% | 635 | 43.58% | 76.2% | 23.8% | 26.3% | 86.7% | 40.7% | 35.8% |
| OH | 181 | 55,837,305 | 11.2% | 7.77% | 83.62% | 636 | 40.78% | 50.7% | 49.8% | 25.3% | 98.3% | 56.0% | 30.8% |
| OK | 19 | 1,946,484 | 0.3% | 9.38% | 86.63% | 607 | 39.45% | 88.3% | 11.7% | 46.3% | 88.0% | 83.0% | 14.6% |
| OR | 23 | 2,076,094 | 0.4% | 8.79% | 86.19% | 594 | 40.97% | 62.0% | 18.0% | 46.7% | 98.0% | 90.8% | 25.3% |
| PA | 140 | 23,179,548 | 4.6% | 8.50% | 86.51% | 620 | 46.44% | 87.5% | 12.5% | 5.7% | 92.7% | 77.9% | 27.6% |
| RI | 71 | 4,383,329 | 1.0% | 7.75% | 80.79% | 624 | 40.22% | 80.8% | 19.2% | 19.9% | 92.7% | 75.8% | 27.9% |
| SC | 26 | 8,265,389 | 0.7% | 8.93% | 85.19% | 592 | 32.35% | 73.3% | 26.2% | 50.9% | 95.9% | 67.0% | 15.7% |
| SD | 2 | 422,514 | 0.1% | 10.33% | 90.78% | 591 | 37.28% | 100.0% | 0.0% | 9.8% | 100.0% | 100.0% | 30.7% |
| TN | 75 | 8,061,541 | 1.7% | 8.03% | 85.16% | 562 | 37.53% | 82.7% | 17.3% | 17.9% | 95.3% | 75.9% | 46.7% |
| TX | 93 | 4,431,002 | 0.9% | 8.45% | 87.45% | 601 | 40.18% | 82.2% | 17.9% | 84.1% | 93.0% | 93.1% | 26.6% |
| UT | 20 | 3,156,258 | 0.6% | 7.83% | 77.10% | 612 | 43.47% | 73.1% | 26.8% | 37.9% | 100.0% | 91.5% | 45.1% |
| VA | 87 | 20,165,019 | 4.1% | 7.62% | 94.78% | 611 | 40.04% | 76.7% | 23.3% | 27.5% | 95.7% | 67.1% | 24.6% |
| WA | 61 | 8,674,607 | 1.7% | 8.80% | 85.63% | 623 | 39.59% | 82.7% | 17.3% | 18.4% | 83.1% | 70.2% | 51.1% |
| WI | 12 | 1,889,867 | 0.4% | 7.72% | 89.95% | 604 | 38.65% | 92.6% | 7.6% | 33.7% | 100.0% | 86.8% | 11.4% |
| WV | 3 | 848,791 | 0.1% | 8.11% | 88.64% | 646 | 45.10% | 100.0% | 0.0% | 32.7% | 100.0% | 100.0% | 0.6% |

**CONFIDENTIAL**

RCPC00065204

**EdgeMAC Corporation**
Loan Stratification
All Loans

FGIC - RASC 2807 EMX1
Data File of  7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,531 | 499,222,834 | | 8.02% | 83.52% | 616 | 40.23% | 69.3% | 30.7% | 25.3% | 93.7% | 64.7% | 33.2% |
| **Original LTV** | | | | | | | | | | | | | |
| <= 60% | 96 | 17,482,863 | 3.5% | 7.53% | 50.54% | 627 | 36.55% | 63.1% | 31.0% | 57.5% | 92.6% | 75.5% | 12.7% |
| 60.1% to 65.6% | 57 | 12,766,367 | 2.6% | 7.36% | 63.18% | 612 | 32.47% | 76.7% | 23.3% | 61.9% | 89.8% | 76.4% | 11.1% |
| 65.1% to 70.0% | 81 | 16,937,928 | 3.4% | 7.60% | 68.77% | 608 | 37.09% | 61.8% | 38.6% | 49.5% | 98.1% | 76.1% | 19.2% |
| 70.1% to 75.0% | 123 | 27,869,093 | 5.5% | 7.63% | 74.22% | 596 | 37.84% | 68.7% | 31.3% | 30.7% | 93.1% | 65.2% | 29.2% |
| 75.1% to 80.0% | 883 | 202,936,792 | 40.4% | 7.95% | 79.88% | 623 | 40.10% | 64.2% | 35.8% | 17.3% | 94.2% | 61.9% | 36.9% |
| 80.1% to 85.0% | 132 | 40,198,575 | 8.1% | 7.78% | 84.64% | 600 | 38.60% | 83.1% | 16.9% | 20.0% | 96.0% | 62.6% | 32.6% |
| 85.1% to 90.0% | 351 | 73,234,212 | 14.7% | 8.35% | 89.80% | 600 | 41.27% | 84.7% | 11.3% | 19.1% | 86.8% | 65.5% | 33.2% |
| 90.1% to 95.0% | 125 | 28,563,466 | 6.0% | 7.99% | 94.52% | 622 | 42.45% | 88.6% | 11.4% | 19.0% | 96.0% | 64.5% | 32.7% |
| 95.1% to 100.0% | 638 | 75,284,403 | 15.1% | 9.68% | 99.92% | 624 | 43.07% | 88.3% | 11.2% | 34.8% | 96.8% | 67.1% | 36.2% |
| **I/O Flag** | | | | | | | | | | | | | |
| Yes | 138 | 33,681,112 | 6.7% | 7.57% | 80.63% | 662 | 35.64% | 76.5% | 23.5% | 23.4% | 98.3% | 56.6% | 43.6% |
| No | 2,433 | 465,541,716 | 93.3% | 8.05% | 83.74% | 614 | 40.56% | 68.8% | 31.2% | 25.4% | 93.3% | 65.2% | 32.5% |
| **Modifications** | | | | | | | | | | | | | |
| Yes | 507 | 129,324,061 | 25.9% | 6.41% | 85.58% | 597 | 43.27% | 52.6% | 37.4% | 8.3% | 98.2% | 63.6% | 13.7% |
| No | 2,024 | 369,899,760 | 74.1% | 8.58% | 82.87% | 622 | 39.18% | 71.7% | 26.3% | 31.7% | 92.1% | 65.1% | 40.4% |
| **Bankruptcy** | | | | | | | | | | | | | |
| Yes | 77 | 12,801,843 | 2.6% | 8.56% | 83.44% | 608 | 43.32% | 55.7% | 33.3% | 19.7% | 93.9% | 75.1% | |
| No | 2,454 | 486,420,972 | 97.4% | 8.00% | 83.52% | 616 | 40.15% | 69.4% | 30.6% | 25.4% | 93.7% | 64.4% | |

**CONFIDENTIAL**

RCPC00065205

# Exhibit B

CONFIDENTIAL

RCPC00065206

EdgeMAC Corporation
Delinquency Strat
All Loans

FGIC - RASC 2B07 EMXA1
Data File of 7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | Current | 30 | 60 | 90+ | FC | BK | REO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,531 | 499,222,834 | | 8.02% | 83.52% | 616 | 52.7% | 9.0% | 2.7% | 5.0% | 25.4% | 2.6% | 2.7% |
| **Property Type** | | | | | | | | | | | | | |
| SFR | 1,723 | 383,646,806 | 83.7% | 8.03% | 83.67% | 612 | 54.24% | 8.5% | 3.2% | 4.3% | 34.2% | 3.0% | 2.5% |
| PUD | 202 | 30,504,335 | 6.1% | 8.33% | 85.66% | 622 | 51.53% | 11.0% | 2.3% | 6.5% | 22.7% | 0.8% | 1.3% |
| Multi-Family | 180 | 52,723,672 | 10.8% | 7.97% | 83.60% | 637 | 45.12% | 2.9% | 2.9% | 7.4% | 35.2% | 2.4% | 3.3% |
| Other | 44 | 6,331,509 | 1.2% | 8.11% | 88.52% | 601 | 43.59% | 24.3% | 2.9% | 3.2% | 25.6% | 0.0% | 0.0% |
| Condo | 382 | 85,738,514 | 17.2% | 7.89% | 84.55% | 614 | 52.02% | 5.3% | 2.2% | 5.8% | 30.9% | 1.5% | 2.8% |
| **Occupancy** | | | | | | | | | | | | | |
| Owner | 2,337 | 467,750,809 | 93.7% | 7.98% | 83.56% | 615 | 52.92% | 9.1% | 2.7% | 5.2% | 24.9% | 2.9% | 2.4% |
| Non Owner | 144 | 22,831,465 | 4.6% | 8.94% | 82.11% | 627 | 53.36% | 5.0% | 2.8% | 1.8% | 27.7% | 2.1% | 7.7% |
| 2nd Home | 50 | 8,652,543 | 1.7% | 8.85% | 84.97% | 640 | 39.44% | 6.1% | 0.8% | 6.1% | 48.6% | 3.6% | 3.4% |
| **Loan Purpose** | | | | | | | | | | | | | |
| Purchase | 1,191 | 208,713,245 | 41.8% | 8.24% | 86.12% | 621 | 46.19% | 8.4% | 3.2% | 6.3% | 19.2% | 2.7% | 3.9% |
| Rate / Term | 118 | 10,681,799 | 2.1% | 9.27% | 84.35% | 617 | 71.83% | 4.6% | 1.9% | 3.1% | 9.8% | 1.6% | 0.9% |
| Cash-Out | 1,222 | 279,797,778 | 56.0% | 7.86% | 81.15% | 612 | 56.87% | 9.6% | 2.8% | 3.9% | 33.3% | 2.4% | 1.8% |
| **Documentation Type** | | | | | | | | | | | | | |
| Full / Alt | 1,806 | 346,037,867 | 69.3% | 7.92% | 83.54% | 610 | 58.53% | 8.3% | 2.4% | 4.8% | 21.6% | 2.5% | 1.5% |
| Stated | 732 | 153,184,967 | 30.7% | 8.23% | 83.46% | 628 | 39.56% | 10.6% | 3.6% | 5.5% | 33.8% | 2.8% | 4.3% |
| **Original FICO Score** | | | | | | | | | | | | | |
| Less than 500 | 74 | 13,142,890 | 2.6% | 8.36% | 83.72% | 478 | 46.83% | 13.3% | 3.8% | 7.6% | 20.6% | 4.0% | 4.6% |
| 500 to 549 | 322 | 58,905,972 | 11.8% | 8.23% | 82.21% | 530 | 50.31% | 10.6% | 3.3% | 5.4% | 26.7% | 3.1% | 0.7% |
| 550 to 599 | 598 | 111,576,875 | 22.4% | 8.04% | 82.65% | 576 | 49.88% | 10.4% | 2.4% | 5.6% | 25.7% | 2.4% | 3.7% |
| 600 to 649 | 882 | 181,870,663 | 36.4% | 8.11% | 84.88% | 624 | 52.38% | 7.7% | 2.9% | 5.4% | 26.9% | 2.5% | 2.2% |
| 650 to 699 | 490 | 93,642,570 | 18.8% | 7.85% | 83.73% | 671 | 52.16% | 9.0% | 6.8% | 4.0% | 26.9% | 3.6% | 3.6% |
| 700 to 749 | 130 | 31,522,396 | 6.3% | 7.65% | 83.42% | 718 | 44.71% | 7.8% | 5.6% | 3.3% | 15.7% | 6.0% | 3.1% |
| 750 to 799 | 33 | 8,507,983 | 1.6% | 6.94% | 84.53% | 771 | 82.62% | 4.6% | 5.2% | 0.6% | 6.5% | 0.0% | 0.0% |
| 800 and greater | 1 | 532,196 | 0.1% | 5.95% | 66.60% | 804 | 100.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| **Original Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 24 | 13,613,706 | 2.8% | 5.56% | 67.95% | 708 | 88.80% | 0.6% | 0.6% | 0.0% | 13.2% | 0.0% | 0.0% |
| 6.00% to 6.99% | 178 | 47,055,245 | 9.4% | 6.79% | 76.27% | 640 | 62.09% | 7.2% | 2.9% | 2.5% | 22.3% | 1.1% | 1.0% |
| 7.00% to 7.99% | 548 | 134,176,122 | 26.9% | 7.40% | 80.29% | 626 | 54.95% | 8.3% | 3.2% | 3.4% | 26.2% | 2.7% | 1.6% |
| 8.00% to 8.99% | 651 | 145,040,761 | 29.1% | 8.02% | 84.23% | 606 | 50.47% | 9.6% | 1.4% | 5.7% | 26.4% | 3.3% | 3.2% |
| 9.00% to 9.99% | 515 | 99,321,456 | 19.9% | 8.63% | 86.59% | 595 | 47.46% | 12.3% | 2.4% | 3.8% | 31.2% | 2.4% | 4.5% |
| **Current Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 187 | 56,894,976 | 11.4% | 4.94% | 79.20% | 628 | 60.90% | 17.2% | 0.9% | 0.4% | 19.7% | 1.9% | 0.0% |
| 6.00% to 6.99% | 262 | 68,388,751 | 13.7% | 6.49% | 80.39% | 625 | 61.63% | 15.9% | 2.6% | 2.4% | 17.3% | 0.8% | 0.6% |
| 7.00% to 7.99% | 493 | 121,706,955 | 24.4% | 7.44% | 82.01% | 622 | 57.49% | 6.8% | 1.3% | 3.2% | 25.1% | 2.1% | 1.9% |
| 8.00% to 8.99% | 511 | 104,294,726 | 20.9% | 8.34% | 83.39% | 614 | 53.85% | 7.4% | 1.5% | 5.7% | 26.7% | 4.0% | 3.4% |
| 9.00% to 9.99% | 455 | 87,037,311 | 17.4% | 9.67% | 85.75% | 601 | 42.57% | 5.5% | 2.3% | 5.0% | 36.3% | 1.9% | 6.4% |

CONFIDENTIAL

RCPC00065207

EdgeMAC Corporation
Delinquency Strat
All Loans

FGIC - RASC 2B07 EMX1
Data File of   7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | Current | 30 | 60 | 90+ | FC | BK | REO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,531 | 499,222,834 | | 8.02% | 83.52% | 616 | 52.7% | 9.0% | 2.7% | 5.0% | 25.4% | 2.6% | 2.7% |
| **Original Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 291 | 9,423,116 | 2.0% | 11.96% | 96.13% | 620 | 57.03% | 7.4% | 6.0% | 14.4% | 0.0% | 4.8% | 0.0% |
| $50,000 to $99,999 | 388 | 24,284,738 | 5.0% | 9.64% | 87.54% | 604 | 62.65% | 6.3% | 3.8% | 11.0% | 1.8% | 4.2% | 7.5% |
| $100,000 to $199,999 | 640 | 138,450,105 | 27.7% | 8.38% | 92.71% | 607 | 58.22% | 8.3% | 2.6% | 15.1% | 20.8% | 2.6% | 2.7% |
| $200,000 to $299,999 | 528 | 129,295,801 | 25.9% | 7.77% | 83.30% | 618 | 58.11% | 9.9% | 2.9% | 8.5% | 37.3% | 2.7% | 3.5% |
| $300,000 to $399,999 | 271 | 75,634,146 | 15.4% | 7.61% | 88.98% | 621 | 58.42% | 9.9% | 2.3% | 7.1% | 28.8% | 0.9% | 2.5% |
| $400,000 to $499,999 | 194 | 65,054,141 | 9.2% | 7.81% | 86.91% | 622 | 56.27% | 7.4% | 2.7% | 2.8% | 40.3% | 3.5% | 4.6% |
| $500,000 to $599,999 | 60 | 32,996,250 | 6.6% | 7.53% | 83.28% | 632 | 54.30% | 11.1% | 3.1% | 3.2% | 30.7% | 3.2% | 0.0% |
| $600,000 to $699,999 | 22 | 14,406,186 | 2.9% | 7.16% | 83.28% | 639 | 59.50% | 33.7% | 0.0% | 4.1% | 38.2% | 6.4% | 0.0% |
| $700,000 to $999,999 | 9 | 8,514,099 | 1.7% | 6.72% | 78.03% | 643 | 80.34% | 0.2% | 0.0% | 0.0% | 21.7% | 0.0% | 0.0% |
| Greater than $1,000,000 | 2 | 1,975,575 | 0.4% | 7.05% | 70.62% | 583 | 0.00% | 49.4% | 0.0% | 0.0% | 50.6% | 0.0% | 0.0% |
| **Current Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 306 | 10,568,556 | 2.1% | 11.92% | 96.07% | 620 | 56.61% | 7.3% | 6.0% | 14.3% | 0.0% | 5.0% | 0.0% |
| $50,000 to $99,999 | 342 | 24,097,315 | 5.1% | 9.56% | 86.59% | 607 | 59.45% | 5.3% | 3.8% | 10.8% | 4.2% | 4.0% | 2.4% |
| $100,000 to $199,999 | 921 | 138,526,150 | 27.3% | 8.43% | 92.69% | 608 | 58.22% | 8.1% | 2.3% | 10.1% | 20.5% | 2.9% | 2.6% |
| $200,000 to $299,999 | 514 | 125,775,931 | 25.2% | 7.84% | 83.67% | 609 | 49.86% | 9.0% | 3.0% | 3.7% | 78.1% | 2.6% | 3.8% |
| $300,000 to $399,999 | 227 | 77,961,073 | 15.6% | 7.58% | 83.80% | 619 | 49.25% | 10.5% | 2.8% | 6.6% | 26.6% | 1.3% | 2.5% |
| $400,000 to $499,999 | 196 | 68,893,658 | 9.4% | 7.63% | 83.43% | 622 | 55.46% | 7.5% | 1.8% | 4.7% | 42.1% | 3.8% | 4.5% |
| $500,000 to $599,999 | 55 | 29,792,931 | 6.0% | 7.60% | 83.99% | 631 | 51.82% | 5.3% | 5.1% | 10.7% | 30.7% | 3.5% | 0.0% |
| $600,000 to $699,999 | 36 | 19,300,661 | 3.9% | 6.95% | 81.17% | 641 | 63.29% | 26.3% | 3.6% | 0.0% | 13.1% | 3.3% | 0.0% |
| $700,000 to $999,999 | 8 | 7,717,433 | 1.5% | 6.62% | 77.14% | 641 | 75.13% | 12.6% | 0.0% | 0.0% | 12.3% | 0.0% | 0.0% |
| $1,000,000 and greater | 1 | 1,000,060 | 0.1% | 7.95% | 80.66% | 635 | 0.00% | 0.0% | 0.0% | 0.0% | 100.0% | 0.0% | 0.0% |
| **Balloon** | | | | | | | | | | | | | |
| Yes | 1,423 | 279,371,901 | 56.0% | 8.12% | 85.09% | 612 | 45.26% | 9.1% | 2.9% | 7.2% | 29.6% | 2.6% | 2.9% |
| No | 1,106 | 219,850,920 | 44.0% | 7.89% | 81.15% | 620 | 62.25% | 8.9% | 2.4% | 2.3% | 19.4% | 2.5% | 2.4% |
| **Amortization Term** | | | | | | | | | | | | | |
| 180 | 13 | 1,046,606 | 0.2% | 9.53% | 79.94% | 645 | 88.37% | 4.6% | 0.0% | 4.6% | 0.0% | 2.8% | 0.6% |
| 240 | 52 | 2,959,777 | 0.6% | 10.60% | 74.34% | 635 | 84.98% | 2.4% | 1.0% | 3.8% | 2.3% | 5.4% | 0.0% |
| 360 | 1,414 | 235,746,733 | 47.2% | 8.15% | 83.13% | 620 | 60.95% | 8.9% | 2.9% | 4.5% | 18.1% | 2.9% | 2.2% |
| 480 | 1,017 | 256,234,792 | 51.1% | 7.84% | 83.96% | 610 | 44.60% | 9.3% | 2.5% | 5.6% | 32.5% | 2.4% | 3.1% |
| **Product Type** | | | | | | | | | | | | | |
| Arm 10/20 | 2 | 623,860 | 0.1% | 8.32% | 65.09% | 633 | 55.23% | 0.0% | 0.0% | 0.0% | 44.8% | 0.0% | 0.0% |
| Arm 2/28 | 1,219 | 279,787,408 | 56.0% | 7.95% | 84.67% | 607 | 46.63% | 9.6% | 2.3% | 3.9% | 32.3% | 2.3% | 3.6% |
| Arm 2/28 IO | 65 | 19,143,807 | 3.8% | 8.96% | 83.62% | 636 | 35.62% | 9.8% | 2.2% | 3.6% | 45.0% | 4.4% | 0.0% |
| Arm 3/27 | 271 | 64,045,148 | 12.8% | 7.88% | 85.56% | 599 | 51.17% | 13.7% | 2.8% | 5.1% | 21.4% | 4.3% | 1.5% |
| Arm 3/27 IO | 17 | 5,142,468 | 1.0% | 7.63% | 84.13% | 645 | 50.00% | 0.0% | 10.3% | 0.0% | 12.8% | 6.9% | 20.5% |
| Arm 5/25 | 12 | 2,831,634 | 0.6% | 7.22% | 79.15% | 633 | 59.08% | 0.0% | 0.0% | 0.0% | 40.9% | 0.0% | 0.0% |
| Arm 5/25 IO | 4 | 1,566,603 | 0.3% | 6.85% | 63.22% | 633 | 75.21% | 0.0% | 0.0% | 0.0% | 24.8% | 0.0% | 0.6% |
| Fixed | 937 | 126,188,713 | 25.3% | 8.23% | 81.42% | 632 | 69.35% | 7.3% | 3.3% | 8.0% | 9.1% | 2.0% | 0.9% |
| **Original DTI** | | | | | | | | | | | | | |
| Less than 20% | 152 | 38,436,597 | 7.7% | 7.71% | 80.46% | 621 | 70.26% | 7.2% | 3.5% | 1.1% | 15.2% | 1.1% | 1.7% |
| 20.0% to 29.9% | 280 | 51,983,602 | 10.4% | 7.95% | 81.04% | 615 | 62.75% | 8.8% | 1.0% | 2.7% | 21.3% | 2.1% | 1.5% |
| 30.0% to 39.9% | 537 | 96,709,890 | 19.4% | 8.01% | 82.69% | 618 | 54.61% | 12.9% | 2.9% | 3.8% | 23.2% | 2.3% | 3.6% |
| 40.0% to 49.9% | 978 | 194,775,168 | 38.8% | 8.08% | 84.15% | 612 | 45.26% | 9.4% | 2.7% | 5.5% | 23.8% | 2.2% | 1.9% |
| 50.0% to 59.9% | 583 | 117,176,700 | 23.6% | 8.04% | 85.15% | 613 | 53.74% | 5.9% | 2.9% | 6.9% | 21.8% | 3.4% | 1.9% |
| 60.0% and greater | 1 | 141,267 | 0.0% | 9.38% | 75.00% | 704 | 100.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |

EdgeMAC Corporation
Delinquency Strat
All Loans

FGIC - RASC 2B07 EMX1
Data File of   7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | Current | 30 | 60 | 90+ | FC | BK | REO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 2,531 | 499,222,834 | | 8.02% | 83.52% | 616 | 52.7% | 9.0% | 2.7% | 5.0% | 25.4% | 2.6% | 2.7% |
| **Lien Position** | | | | | | | | | | | | | |
| 1st | 2,068 | 475,241,276 | 95.2% | 7.98% | 82.62% | 615 | 52.54% | 9.0% | 2.6% | 4.5% | 26.7% | 2.5% | 2.8% |
| 2nd | 463 | 23,981,546 | 4.8% | 11.33% | 97.49% | 633 | 56.00% | 8.1% | 7.3% | 23.1% | 0.8% | 4.8% | 0.0% |
| **State** | | | | | | | | | | | | | |
| AL | 33 | 4,135,661 | 0.8% | 9.14% | 85.93% | 591 | 62.3% | 4.3% | 3.3% | 0.0% | 22.9% | 5.4% | 2.4% |
| AZ | 160 | 16,258,356 | 3.3% | 8.20% | 83.08% | 627 | 38.4% | 3.6% | 2.2% | 2.9% | 43.2% | 0.0% | 9.8% |
| CA | 105 | 35,859,709 | 7.2% | 7.71% | 79.76% | 636 | 38.3% | 6.8% | 3.1% | 9.1% | 37.5% | 2.9% | 2.5% |
| CO | 26 | 3,615,258 | 0.7% | 8.07% | 85.22% | 613 | 63.7% | 1.3% | 5.6% | 13.9% | 15.8% | 0.0% | 0.0% |
| CT | 173 | 22,980,466 | 4.6% | 8.99% | 86.07% | 617 | 64.2% | 3.3% | 3.2% | 1.8% | 22.7% | 2.6% | 2.2% |
| DC | 71 | 2,385,613 | 0.5% | 8.39% | 81.19% | 617 | 43.5% | 0.0% | 0.0% | 0.0% | 38.9% | 8.5% | 9.0% |
| DE | 71 | 3,942,597 | 0.8% | 7.93% | 87.83% | 642 | 67.8% | 15.7% | 2.9% | 4.5% | 21.3% | 0.0% | 0.8% |
| FL | 439 | 81,988,540 | 16.8% | 7.74% | 83.62% | 607 | 39.8% | 3.6% | 6.5% | 7.9% | 42.3% | 1.6% | 2.7% |
| GA | 141 | 21,188,371 | 6.3% | 8.70% | 88.74% | 595 | 56.2% | 3.8% | 3.8% | 7.5% | 12.7% | 4.6% | 6.9% |
| HI | 22 | 8,473,568 | 0.7% | 8.27% | 82.98% | 618 | 29.3% | 6.8% | 5.1% | 4.9% | 47.7% | 0.0% | 6.3% |
| IL | 105 | 20,028,491 | 4.1% | 8.33% | 87.58% | 603 | 55.6% | 5.4% | 0.0% | 6.5% | 29.0% | 0.9% | 2.5% |
| IN | 14 | 1,345,636 | 0.3% | 8.49% | 86.12% | 584 | 89.6% | 0.0% | 0.0% | 0.0% | 10.4% | 0.0% | 0.0% |
| KY | 26 | 3,440,160 | 0.7% | 8.55% | 86.60% | 593 | 57.3% | 2.3% | 0.0% | 2.3% | 16.4% | 21.2% | 0.0% |
| LA | 55 | 7,183,334 | 1.4% | 8.41% | 86.12% | 596 | 70.8% | 6.7% | 0.0% | 0.0% | 12.2% | 3.7% | 0.0% |
| MA | 110 | 23,614,847 | 4.7% | 7.75% | 82.00% | 625 | 56.6% | 13.5% | 6.3% | 11.5% | 7.7% | 2.7% | 2.3% |
| MD | 140 | 37,191,578 | 7.4% | 7.87% | 82.13% | 612 | 55.1% | 8.6% | 0.4% | 4.7% | 36.9% | 2.3% | 1.8% |
| ME | 29 | 4,188,546 | 0.8% | 7.88% | 70.89% | 625 | 81.2% | 10.8% | 0.0% | 1.0% | 4.6% | 0.0% | 1.2% |
| MI | 42 | 3,607,581 | 0.6% | 8.71% | 87.21% | 604 | 61.0% | 6.1% | 0.0% | 0.0% | 18.8% | 6.6% | 7.1% |
| MN | 37 | 5,907,541 | 1.2% | 8.04% | 84.87% | 585 | 25.8% | 5.7% | 5.0% | 14.7% | 32.5% | 6.7% | 9.3% |
| MO | 12 | 1,668,650 | 0.3% | 7.97% | 86.77% | 601 | 66.6% | 25.1% | 0.0% | 0.0% | 8.3% | 0.0% | 0.0% |
| MS | 6 | 587,942 | 0.1% | 9.05% | 88.58% | 565 | 62.2% | 0.6% | 0.0% | 4.5% | 16.4% | 0.0% | 0.0% |
| NC | 38 | 5,382,045 | 1.1% | 8.59% | 82.83% | 610 | 82.7% | 3.5% | 0.4% | 1.5% | 3.6% | 5.8% | 0.0% |
| NE | 3 | 264,859 | 0.1% | 9.32% | 85.35% | 541 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| NH | 30 | 4,988,771 | 1.0% | 7.88% | 81.11% | 619 | 86.4% | 3.1% | 0.0% | 6.8% | 3.7% | 0.0% | 0.0% |
| NJ | 116 | 32,367,562 | 6.5% | 7.71% | 82.95% | 625 | 56.8% | 13.2% | 0.0% | 2.7% | 27.6% | 4.8% | 1.2% |
| NM | 11 | 1,635,290 | 0.3% | 9.82% | 86.17% | 632 | 68.1% | 0.0% | 0.0% | 0.0% | 18.6% | 0.0% | 13.5% |
| NV | 25 | 5,429,631 | 1.1% | 8.86% | 87.42% | 605 | 54.0% | 2.9% | 0.0% | 5.3% | 44.4% | 0.0% | 2.7% |
| NY | 181 | 56,837,305 | 11.3% | 7.77% | 83.62% | 616 | 48.8% | 19.7% | 10.1% | 5.1% | 16.0% | 1.5% | 2.5% |
| OH | 19 | 1,946,404 | 0.3% | 9.34% | 86.63% | 607 | 81.4% | 0.0% | 0.0% | 0.0% | 10.1% | 6.7% | 0.8% |
| OK | 23 | 2,076,634 | 0.4% | 8.79% | 88.19% | 594 | 70.4% | 4.4% | 16.1% | 0.0% | 15.3% | 0.0% | 0.0% |
| OR | 18 | 3,453,441 | 0.7% | 8.58% | 81.51% | 620 | 61.3% | 10.5% | 3.7% | 0.0% | 22.5% | 0.0% | 0.5% |
| PA | 148 | 20,179,648 | 4.0% | 8.68% | 82.64% | 604 | 63.4% | 5.8% | 2.7% | 3.4% | 18.7% | 4.4% | 0.5% |
| RI | 71 | 4,803,329 | 1.0% | 7.75% | 80.79% | 629 | 76.2% | 0.0% | 0.0% | 1.3% | 22.0% | 0.0% | 0.0% |
| SC | 26 | 3,265,389 | 0.7% | 8.93% | 85.19% | 592 | 63.5% | 0.0% | 3.8% | 7.3% | 6.3% | 5.8% | 13.4% |
| SD | 2 | 222,514 | 0.0% | 10.33% | 90.35% | 601 | 51.3% | 0.0% | 0.0% | 0.0% | 48.7% | 0.0% | 0.0% |
| TN | 75 | 8,045,541 | 1.7% | 8.45% | 85.10% | 562 | 70.3% | 5.7% | 2.4% | 6.4% | 11.2% | 0.0% | 0.8% |
| TX | 99 | 4,613,403 | 0.9% | 8.65% | 87.54% | 601 | 84.3% | 0.0% | 0.0% | 0.0% | 10.7% | 0.0% | 2.3% |
| UT | 20 | 5,156,258 | 0.6% | 7.83% | 77.10% | 612 | 54.9% | 0.0% | 0.0% | 2.5% | 42.6% | 0.0% | 0.0% |
| VA | 87 | 20,165,019 | 4.1% | 7.62% | 94.78% | 611 | 67.3% | 5.1% | 1.9% | 8.0% | 15.3% | 2.9% | 0.0% |
| WA | 61 | 8,674,629 | 1.7% | 8.30% | 85.63% | 621 | 37.5% | 8.0% | 5.7% | 6.7% | 32.1% | 0.4% | 9.9% |
| WI | 12 | 1,859,847 | 0.4% | 7.72% | 89.95% | 606 | 83.0% | 0.0% | 4.2% | 7.4% | 0.0% | 0.0% | 0.0% |
| WV | 3 | 348,791 | 0.1% | 8.11% | 88.04% | 646 | 89.9% | 10.1% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |

CONFIDENTIAL

RCPC00065209

**EdgeMAC Corporation**
Delinquency Strat
All Loans

FGIC - RASC 2B07 EMX1
Data File of 7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | Current | 30 | 60 | 90+ | FC | BK | REO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 2,531 | 499,222,834 | | 8.02% | 83.52% | 616 | 52.7% | 9.0% | 2.7% | 5.0% | 25.4% | 2.6% | 2.7% |
| **Original LTV** | | | | | | | | | | | | | |
| <= 60% | 86 | 17,884,863 | 3.5% | 7.51% | 50.54% | 607 | 78.6% | 7.7% | 6.6% | 1.1% | 10.3% | 2.7% | 0.0% |
| 60.1% to 65.0% | 57 | 12,756,567 | 2.6% | 7.30% | 49.65% | 612 | 74.2% | 12.8% | 0.3% | 3.9% | 5.3% | 0.0% | 1.2% |
| 65.1% to 70.0% | 81 | 16,837,525 | 3.4% | 7.60% | 68.77% | 608 | 69.9% | 16.9% | 2.7% | 0.0% | 17.7% | 2.8% | 0.0% |
| 70.1% to 75.0% | 133 | 27,169,091 | 5.5% | 7.62% | 74.22% | 596 | 59.2% | 8.2% | 1.4% | 3.1% | 25.9% | 0.7% | 1.6% |
| 75.1% to 80.0% | 820 | 202,796,292 | 40.6% | 7.59% | 79.38% | 622 | 47.9% | 9.5% | 3.3% | 6.1% | 28.7% | 5.2% | 3.3% |
| 80.1% to 85.0% | 182 | 43,198,575 | 8.7% | 7.78% | 84.64% | 600 | 53.2% | 7.1% | 2.0% | 7.2% | 25.4% | 2.0% | 3.5% |
| 85.1% to 90.0% | 351 | 73,334,232 | 14.7% | 8.39% | 89.39% | 603 | 59.7% | 7.9% | 2.6% | 4.1% | 24.3% | 2.4% | 2.1% |
| 90.1% to 95.0% | 175 | 29,863,426 | 6.0% | 7.95% | 94.82% | 622 | 49.4% | 9.2% | 1.6% | 2.6% | 30.3% | 4.0% | 3.2% |
| 95.1% to 100.0% | 634 | 75,384,460 | 15.1% | 9.43% | 99.95% | 624 | 48.1% | 10.3% | 3.9% | 13.1% | 33.9% | 1.8% | 2.9% |
| **I/O Flag** | | | | | | | | | | | | | |
| Yes | 108 | 33,681,314 | 6.7% | 7.57% | 81.48% | 645 | 48.8% | 6.5% | 1.8% | 4.2% | 32.0% | 3.9% | 1.3% |
| No | 2,423 | 465,541,730 | 93.3% | 8.05% | 83.74% | 614 | 52.9% | 9.1% | 2.7% | 5.1% | 24.9% | 2.5% | 2.6% |
| **Modifications** | | | | | | | | | | | | | |
| Yes | 507 | 129,324,064 | 25.9% | 6.45% | 85.16% | 597 | 52.1% | 18.5% | 0.8% | 2.2% | 33.2% | 1.9% | 0.8% |
| No | 2,024 | 369,898,760 | 74.1% | 8.56% | 82.87% | 622 | 52.9% | 5.5% | 3.3% | 6.6% | 26.1% | 2.8% | 3.3% |
| **Bankruptcy** | | | | | | | | | | | | | |
| Yes | 77 | 12,801,843 | 2.6% | 8.50% | 83.44% | 608 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 100.0% | 0.0% |
| No | 2,454 | 486,420,979 | 97.4% | 8.00% | 83.52% | 616 | 54.1% | 9.2% | 2.8% | 5.2% | 26.0% | 0.0% | 5.2% |

CONFIDENTIAL

RCPC00065210

# Exhibit C

CONFIDENTIAL

RCPC00065211



**EdgeMAC Corporation**
Delinquency Roll Rates

CONFIDENTIAL

RCPC00065212

**EdgeMAC Corporation**
Delinquency Roll Rates



CONFIDENTIAL

RCPC00065213



EdgeMAC Corporation
Delinquency Roll Rates

CONFIDENTIAL

RCPC00065214



EdgeMAC Corporation
Delinquency Roll Rates

CONFIDENTIAL

RCPC00065215

# Exhibit D

CONFIDENTIAL

RCPC00065216

**EdgeMAC Corporation**
Modification Redefault Rates

| February Delinquency | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | **Modification Date** | | | | | | | | | | |
| | Nov-07 | Dec-07 | Jan-08 | Feb-08 | Mar-08 | Apr-08 | May-08 | Jun-08 | Jul-08 | Aug-08 | Sep-08 | Oct-08 | Nov-08 | Dec-08 | Jan-09 | Feb-09 | Total |
| 0 | | 1 | 6 | 5 | 1 | 2 | 6 | 3 | 7 | 7 | 10 | 10 | 107 | 26 | 21 | 24 | 226 |
| 30 | | | | | | | 5 | 2 | 3 | 5 | 6 | 3 | 35 | 12 | 3 | | 75 |
| 60 | | | 1 | | | | 3 | 1 | 1 | 1 | 2 | 5 | 126 | 2 | 1 | | 145 |
| 90 | | | | | 1 | 1 | | 1 | 3 | 5 | 1 | 2 | 2 | | | | 11 |
| 120 | | | 2 | | | 1 | 1 | 2 | 4 | | 1 | 1 | | | | | 12 |
| 150 | | | 1 | | | 1 | | | | | 2 | | | | | | 7 |
| 180 | | | | | 1 | | 1 | | 3 | | | | | | | | 7 |
| 210 | | | | | 1 | | | | 2 | | | | 1 | | | | 4 |
| 240 | | | 1 | 1 | | | | | | 1 | | | | | | | 4 |
| 270 | | | | | | | | | | 1 | | | 1 | | | | 3 |
| 300 | | | | | | | | | 1 | | | | 1 | | | | 3 |
| 330 | | | 1 | | | | | | | | | | | | | | 2 |
| 360 | | | | | | | | | | | | | 1 | | | | 1 |
| 420 | | | | | | | | | | | | | | | | | 1 |
| 450 | 1 | | | | | | | | 1 | | | | | | | | 1 |
| 480 | | | | | | | | | | | | | | | | | 1 |
| 510 | | | | | | | | | | | 1 | | 1 | | | | 1 |
| 540 | | | | | | | | | | | | | 1 | 1 | | | 3 |
| 570 | | | | | | | | | | | | | | 1 | | | 1 |
| Loss | | | | | | | | | | 1 | | | 1 | | | | 2 |
| Total Mods | 1 | 1 | 6 | 5 | 3 | 5 | 16 | 9 | 26 | 21 | 24 | 21 | 278 | 42 | 25 | 24 | 507 |

| February Delinquency | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | **Modification Date** | | | | | | | | | |
| | Nov-07 | Dec-07 | Jan-08 | Feb-08 | Mar-08 | Apr-08 | May-08 | Jun-08 | Jul-08 | Aug-08 | Sep-08 | Oct-08 | Nov-08 | Dec-08 | Jan-09 | Feb-09 | Total |
| 0 | | 100.0% | 16.7% | 40.0% | 33.3% | 40.0% | 37.5% | 33.3% | 26.9% | 33.3% | 41.7% | 47.6% | 38.5% | 61.9% | 84.0% | 100.0% | 44.6% |
| 30 | | | | | | | 31.3% | 22.2% | 11.5% | 23.8% | 25.0% | 14.3% | 12.6% | 28.6% | 12.0% | | 14.8% |
| 60 | | | 16.7% | 20.0% | 33.3% | | 18.8% | 11.1% | 3.8% | 4.8% | 8.3% | 23.8% | 45.3% | 4.8% | 4.0% | | 28.6% |
| 90 | | | | | 33.3% | 20.0% | | 11.1% | 11.5% | 23.8% | 4.2% | 9.5% | 0.7% | | | | 2.2% |
| 120 | | | 33.3% | | | 20.0% | | 22.2% | 15.4% | | 4.2% | 4.8% | | | | | 2.4% |
| 150 | | | 16.7% | | | 20.0% | 6.3% | | | | 8.3% | | | | | | 1.4% |
| 180 | | | | | 33.3% | | 6.3% | | 11.5% | | | | | | | | 1.4% |
| 210 | | | | | 33.3% | | | | 7.7% | | | | 0.4% | | | | 0.8% |
| 240 | | | 16.7% | 20.0% | | | | | | 4.8% | | | | | | | 0.8% |
| 270 | | | | | | | | | | 4.8% | | | 0.4% | | | | 0.6% |
| 300 | | | | | | | | | 3.8% | | | | 0.4% | | | | 0.6% |
| 330 | | | 16.7% | | | | | | | | | | | | | | 0.4% |
| 360 | | | | | | | | | | | | | 0.4% | | | | 0.2% |
| 420 | | | | | | | | | | | | | | | | | 0.2% |
| 450 | 100.0% | | | | | | | | 3.8% | | | | | | | | 0.2% |
| 480 | | | | | | | | | | | | | | | | | 0.2% |
| 510 | | | | | | | | | | | 4.2% | | 0.4% | | | | 0.6% |
| 540 | | | | | | | | | | | | | 0.4% | 2.4% | | | 0.2% |
| 570 | | | | | | | | | | | | | | 2.4% | | | 0.2% |
| Loss | | | | | | | | | | 4.8% | | | 0.4% | | | | 0.4% |

CONFIDENTIAL

RCPC00065217



Exhibit E

CONFIDENTIAL

EdgeMAC Corporation
Loan Stratification
Modified Loans Only

FGIC - RASC 2B07 EMX1
Data File of 7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 507 | 129,324,074 | | 6.41% | 85.38% | 597 | 43.27% | 62.6% | 37.4% | 8.3% | 98.2% | 63.6% | 46.4% |
| **Property Type** | | | | | | | | | | | | | |
| SFR | 341 | 83,247,069 | 63.6% | 6.40% | 84.96% | 593 | 42.89% | 55.4% | 34.6% | 10.5% | 97.7% | 100.0% | 44.6% |
| PUD | 56 | 7,214,787 | 5.5% | 6.24% | 84.54% | 591 | 39.08% | 52.3% | 47.7% | 3.1% | 95.1% | 0.0% | 49.5% |
| Multi-Family | 38 | 14,960,995 | 11.5% | 6.48% | 88.84% | 630 | 45.57% | 53.2% | 46.8% | 10.5% | 100.0% | 0.0% | 40.2% |
| Other | 2 | 1,213,655 | 1.4% | 5.95% | 82.15% | 578 | 42.15% | 62.7% | 37.3% | 0.0% | 100.0% | 0.0% | 52.1% |
| Condo | 83 | 23,174,567 | 17.9% | 6.52% | 87.08% | 593 | 44.28% | 61.3% | 38.7% | 6.5% | 99.2% | 0.0% | 44.7% |
| **Occupancy** | | | | | | | | | | | | | |
| Owner | 498 | 126,981,663 | 98.2% | 6.41% | 85.41% | 598 | 43.23% | 62.3% | 37.7% | 8.1% | 100.0% | 63.3% | 46.8% |
| Non Owner | 7 | 1,800,873 | 1.4% | 6.32% | 81.16% | 574 | 45.78% | 83.0% | 16.6% | 20.4% | 0.0% | 73.0% | 70.9% |
| 2nd Home | 2 | 541,535 | 0.4% | 6.39% | 80.06% | 613 | 42.44% | 88.1% | 41.9% | 0.0% | 0.0% | 100.0% | 41.9% |
| **Loan Purpose** | | | | | | | | | | | | | |
| Purchase | 232 | 58,561,514 | 45.3% | 6.23% | 84.04% | 608 | 42.85% | 44.8% | 55.2% | 1.2% | 97.6% | 56.8% | 52.2% |
| Rate / Term | 5 | 838,376 | 0.6% | 6.15% | 87.60% | 510 | 45.90% | 42.3% | 57.7% | 42.3% | 100.0% | 19.8% | 0.0% |
| Cash Out | 270 | 69,896,171 | 54.0% | 6.58% | 86.40% | 589 | 44.27% | 77.3% | 22.8% | 12.1% | 98.6% | 69.8% | 42.3% |
| **Documentation Type** | | | | | | | | | | | | | |
| Full / Alt | 331 | 80,955,133 | 62.6% | 6.36% | 85.34% | 587 | 42.63% | 100.0% | 0.0% | 10.4% | 97.4% | 66.0% | 40.4% |
| Stated | 177 | 48,368,941 | 37.4% | 6.50% | 85.42% | 615 | 44.33% | 0.0% | 100.0% | 4.7% | 98.9% | 58.5% | 56.5% |
| **Original FICO Score** | | | | | | | | | | | | | |
| Less than 500 | 25 | 4,716,070 | 3.6% | 6.93% | 84.13% | 473 | 45.48% | 90.0% | 10.0% | 12.5% | 95.4% | 73.9% | 33.3% |
| 500 to 549 | 88 | 20,360,173 | 15.7% | 6.63% | 83.89% | 529 | 42.46% | 77.6% | 22.4% | 8.8% | 99.5% | 62.9% | 42.6% |
| 550 to 599 | 156 | 37,477,154 | 29.0% | 6.38% | 83.67% | 577 | 42.17% | 71.6% | 28.4% | 8.8% | 96.8% | 74.0% | 45.5% |
| 600 to 649 | 165 | 47,125,224 | 36.4% | 6.52% | 87.64% | 623 | 43.88% | 51.3% | 48.7% | 5.9% | 98.7% | 59.4% | 49.3% |
| 650 to 699 | 59 | 15,835,642 | 12.2% | 5.95% | 85.16% | 667 | 43.83% | 57.8% | 42.2% | 10.7% | 98.7% | 48.6% | 42.2% |
| 700 to 749 | 13 | 3,809,812 | 2.9% | 6.53% | 86.52% | 715 | 45.52% | 78.3% | 21.7% | 23.6% | 100.0% | 66.8% | 42.8% |
| 750 to 799 | 0 | 0 | 0.0% | 0.0% | 0.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| 800 and greater | 0 | 0 | 0.0% | 0.00% | 0.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| **Original Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 0 | 0 | 0.0% | 0.00% | 0.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| 6.00% to 6.99% | 23 | 5,964,335 | 4.3% | 5.32% | 78.87% | 617 | 39.12% | 100.0% | 0.0% | 3.3% | 100.0% | 65.6% | 28.9% |
| 7.00% to 7.99% | 91 | 26,208,648 | 20.3% | 5.75% | 81.28% | 612 | 42.62% | 81.7% | 18.3% | 12.1% | 99.5% | 65.5% | 48.3% |
| 8.00% to 8.99% | 161 | 47,344,436 | 36.5% | 6.23% | 84.58% | 594 | 43.73% | 72.5% | 27.5% | 7.1% | 98.4% | 62.2% | 44.6% |
| 9.00% to 9.99% | 142 | 36,027,015 | 27.1% | 6.81% | 87.00% | 591 | 44.32% | 94.9% | 5.1% | 6.2% | 98.1% | 64.1% | 51.4% |
| **Current Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 165 | 43,261,197 | 33.5% | 4.75% | 82.81% | 603 | 43.93% | 68.0% | 32.0% | 8.0% | 97.8% | 66.0% | 41.7% |
| 6.00% to 6.99% | 130 | 35,028,963 | 27.1% | 6.39% | 84.44% | 603 | 43.84% | 56.0% | 44.0% | 6.8% | 99.0% | 64.9% | 46.3% |
| 7.00% to 7.99% | 121 | 31,764,343 | 24.6% | 7.26% | 87.78% | 580 | 44.19% | 62.0% | 38.0% | 7.0% | 97.2% | 63.0% | 45.6% |
| 8.00% to 8.99% | 53 | 10,934,956 | 8.5% | 8.35% | 86.90% | 574 | 44.81% | 58.9% | 31.1% | 16.7% | 98.9% | 64.6% | 42.2% |
| 9.00% to 9.99% | 28 | 6,515,580 | 5.0% | 9.36% | 90.57% | 582 | 40.66% | 59.2% | 40.8% | 59.1% | 97.1% | 67.3% | 58.9% |

CONFIDENTIAL

RCPC00065219

EdgeMAC Corporation
Loan Stratification
Modified Loans Only

FGIC - RASC 2B07 EMX1
Data File of    7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 507 | 129,324,074 | | 6.41% | 85.38% | 597 | 43.27% | 62.0% | 37.4% | 8.3% | 98.2% | 63.6% | 46.4% |
| **Original Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 7 | 226,142 | 0.2% | 8.3% | 95.9% | 570 | 38.22% | 56.2% | 43.8% | 100.0% | 100.0% | 74.5% | 43.9% |
| $50,000 to $99,999 | 64 | 3,599,130 | 2.8% | 6.68% | 87.57% | 569 | 42.25% | 59.9% | 35.1% | 90.3% | 93.2% | 73.7% | 23.1% |
| $100,000 to $199,999 | 280 | 38,802,276 | 22.3% | 6.63% | 88.62% | 588 | 44.98% | 74.3% | 29.3% | 11.2% | 95.5% | 71.1% | 34.3% |
| $200,000 to $299,999 | 146 | 38,229,286 | 30.3% | 6.86% | 84.72% | 593 | 43.45% | 69.3% | 36.4% | 10.5% | 98.0% | 67.1% | 53.3% |
| $300,000 to $399,999 | 74 | 27,177,993 | 21.0% | 6.13% | 84.47% | 610 | 44.12% | 61.2% | 38.8% | 7.6% | 100.0% | 69.9% | 38.2% |
| $400,000 to $499,999 | 21 | 11,230,330 | 9.1% | 6.72% | 86.27% | 603 | 41.94% | 55.1% | 44.9% | 0.0% | 100.0% | 38.8% | 59.9% |
| $500,000 to $599,999 | 20 | 11,695,882 | 9.0% | 6.52% | 85.44% | 617 | 41.64% | 53.8% | 46.2% | 0.0% | 100.0% | 41.4% | 51.3% |
| $600,000 to $699,999 | 17 | 4,900,465 | 3.8% | 6.79% | 92.13% | 609 | 45.53% | 42.6% | 57.4% | 0.0% | 100.0% | 63.6% | 57.7% |
| $700,000 to $999,999 | 1 | 992,413 | 0.8% | 6.83% | 97.00% | 518 | 56.30% | 100.0% | 0.0% | 0.0% | 100.0% | 0.0% | 0.0% |
| Greater than $1,000,000 | 0 | | 0.0% | 0.0% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| **Current Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 6 | 194,644 | 0.1% | 8.3% | 95.9% | 570 | 38.22% | 43.5% | 57.6% | 100.0% | 100.0% | 65.9% | 43.1% |
| $50,000 to $99,999 | 42 | 3,385,792 | 2.6% | 6.68% | 88.61% | 573 | 41.79% | 58.4% | 31.6% | 34.3% | 95.8% | 71.7% | 27.8% |
| $100,000 to $199,999 | 263 | 34,912,797 | 19.3% | 6.67% | 88.20% | 588 | 41.98% | 58.6% | 31.6% | 11.2% | 95.9% | 72.8% | 29.1% |
| $200,000 to $299,999 | 146 | 36,834,995 | 28.5% | 6.47% | 84.93% | 589 | 43.81% | 67.1% | 32.9% | 12.3% | 98.1% | 65.5% | 55.6% |
| $300,000 to $399,999 | 84 | 29,077,705 | 22.6% | 6.13% | 83.72% | 604 | 43.63% | 51.7% | 38.3% | 5.6% | 98.9% | 69.8% | 36.7% |
| $400,000 to $499,999 | 31 | 13,745,331 | 10.6% | 6.31% | 84.05% | 611 | 42.68% | 55.3% | 44.7% | 3.1% | 100.0% | 59.8% | 63.8% |
| $500,000 to $599,999 | 17 | 9,407,277 | 7.3% | 6.97% | 85.93% | 608 | 43.56% | 58.3% | 41.7% | 0.0% | 100.0% | 53.7% | 47.3% |
| $600,000 to $699,999 | 12 | 7,617,767 | 5.9% | 6.46% | 89.63% | 624 | 46.64% | 41.1% | 58.9% | 0.0% | 100.0% | 25.3% | 75.8% |
| $700,000 to $999,999 | 1 | 992,413 | 0.8% | 6.83% | 97.00% | 518 | 56.30% | 100.0% | 0.0% | 0.0% | 0.3% | 0.0% | 0.0% |
| $1,000,000 and greater | 0 | | 0.0% | 0.0% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| **Balloon** | | | | | | | | | | | | | |
| Yes | 315 | 84,040,534 | 65.4% | 6.43% | 84.93% | 598 | 43.77% | 61.9% | 38.1% | 5.1% | 98.2% | 59.7% | 46.7% |
| No | 192 | 44,093,527 | 34.6% | 6.38% | 86.22% | 597 | 42.90% | 61.9% | 36.1% | 14.3% | 98.2% | 71.0% | 45.8% |
| **Amortization Term** | | | | | | | | | | | | | |
| 180 | 0 | 0 | 0.0% | 0.0% | 0.00% | - | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| 240 | 0 | 0 | 0.0% | 0.0% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| 360 | 205 | 45,542,605 | 35.2% | 6.41% | 86.49% | 597 | 42.36% | 54.3% | 35.7% | 16.0% | 98.3% | 70.8% | 45.3% |
| 480 | 298 | 83,255,215 | 64.4% | 6.41% | 84.76% | 597 | 43.72% | 61.8% | 38.2% | 4.0% | 98.1% | 59.7% | 47.2% |
| **Product Type** | | | | | | | | | | | | | |
| Arm 10/20 | 0 | 0 | 0.0% | 0.0% | 0.00% | - | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Arm 2/28 | 354 | 94,905,998 | 73.4% | 6.28% | 85.16% | 596 | 43.88% | 58.5% | 41.1% | 0.0% | 98.6% | 63.1% | 47.1% |
| Arm 2/28 IO | 4 | 1,408,060 | 1.0% | 6.56% | 83.83% | 622 | 43.87% | 76.0% | 23.6% | 0.0% | 68.7% | 67.7% | 64.1% |
| Arm 3/27 | 79 | 21,114,468 | 16.3% | 6.64% | 85.98% | 606 | 41.25% | 68.0% | 32.0% | 0.0% | 97.1% | 56.9% | 40.3% |
| Arm 3/27 IO | 2 | 313,521 | 0.2% | 5.92% | 82.28% | 610 | 45.44% | 45.0% | 55.0% | 0.0% | 100.0% | 100.0% | 0.0% |
| Arm 5/25 | 0 | | 0.0% | 0.0% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Arm 5/25 IO | 0 | | 0.0% | 0.0% | 0.00% | - | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Fixed | 64 | 10,705,961 | 8.3% | 7.05% | 84.16% | 593 | 42.04% | 78.9% | 21.1% | 100.0% | 95.0% | 81.0% | 32.0% |
| **Original DTI** | | | | | | | | | | | | | |
| Less than 20% | 17 | 5,251,954 | 4.1% | 5.83% | 81.39% | 593 | 13.02% | 100.0% | 0.0% | 2.1% | 100.0% | 71.1% | 62.8% |
| 20.0% to 29.9% | 35 | 7,265,523 | 5.6% | 6.21% | 83.38% | 591 | 24.02% | 72.7% | 27.3% | 15.5% | 100.0% | 49.5% | 31.5% |
| 30.0% to 39.9% | 102 | 22,786,032 | 17.2% | 6.38% | 85.72% | 597 | 34.72% | 64.4% | 35.6% | 8.5% | 96.9% | 68.7% | 24.3% |
| 40.0% to 49.9% | 206 | 54,409,740 | 42.1% | 6.48% | 85.85% | 602 | 45.07% | 70.8% | 29.2% | 6.0% | 84.4% | 64.6% | 39.9% |
| 50.0% to 59.9% | 146 | 40,115,178 | 31.0% | 6.44% | 85.95% | 595 | 53.85% | 70.8% | 29.2% | 0.0% | 97.8% | 55.6% | 37.2% |
| 60.0% and greater | 0 | | 0.0% | 0.0% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |

CONFIDENTIAL

RCPC00065220

EdgeMAC Corporation
Loan Stratification
Modified Loans Only

FGIC - RASC 2B07 EMX1
Data File of   1/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 507 | 129,324,074 | | 6.41% | 85.38% | 597 | 43.27% | 62.6% | 37.4% | 8.3% | 98.2% | 63.6% | 46.4% |
| **Lien Position** | | | | | | | | | | | | | |
| 1st | 490 | 128,326,920 | 99.2% | 6.40% | 85.76% | 597 | 43.24% | 62.3% | 33.5% | 7.6% | 98.2% | 63.6% | 46.6% |
| 2nd | 17 | 997,141 | 0.8% | 8.31% | 100.00% | 611 | 46.93% | 72.5% | 27.5% | 100.0% | 100.0% | 65.7% | 27.2% |
| **State** | | | | | | | | | | | | | |
| AL | 4 | 679,186 | 0.5% | 7.38% | 79.76% | 511 | 26.93% | 80.5% | 19.3% | 66.5% | 100.0% | 100.0% | 0.0% |
| AZ | 18 | 3,799,445 | 2.9% | 6.24% | 82.61% | 619 | 46.21% | 77.7% | 22.3% | 2.4% | 100.0% | 61.6% | 35.3% |
| CA | 70 | 8,440,769 | 6.5% | 6.78% | 55.99% | 599 | 44.24% | 54.3% | 45.2% | 6.3% | 100.0% | 66.7% | 55.6% |
| CO | 5 | 636,132 | 0.5% | 6.72% | 82.22% | 556 | 38.33% | 100.0% | 0.0% | 8.1% | 100.0% | 55.8% | 72.0% |
| CT | 23 | 5,594,541 | 4.3% | 5.83% | 84.97% | 600 | 44.18% | 55.9% | 44.1% | 10.7% | 100.0% | 67.8% | 32.8% |
| DC | 6 | | 0.0% | 6.00% | 0.00% | | 0.00% | 0.0% | 0.0% | 6.3% | 0.0% | 0.0% | 0.0% |
| DE | 6 | 848,761 | 0.6% | 6.13% | 94.01% | 678 | 46.32% | 78.0% | 72.0% | 5.3% | 99.7% | 74.8% | 78.0% |
| FL | 112 | 28,131,4486 | 22.8% | 6.97% | 85.60% | 581 | 41.05% | 61.5% | 38.5% | 5.1% | 95.1% | 59.3% | 74.8% |
| GA | 3 | 4,763,019 | 3.7% | 7.28% | 46.83% | 573 | 45.10% | 58.3% | 31.6% | 16.8% | 96.0% | 29.3% | 74.0% |
| ID | 2 | 396,527 | 0.3% | 6.07% | 82.96% | 586 | 36.43% | 100.0% | 0.0% | 6.8% | 100.0% | 42.0% | 58.0% |
| IL | 76 | 5,264,966 | 4.9% | 7.28% | 89.54% | 596 | 40.62% | 78.3% | 21.7% | 4.4% | 100.0% | 74.0% | 38.3% |
| KY | 3 | 471,685 | 0.4% | 7.77% | 94.59% | 585 | 42.44% | 79.9% | 20.1% | 0.0% | 93.5% | 100.0% | 29.7% |
| LA | 8 | 1,269,166 | 0.9% | 6.48% | 83.18% | 593 | 44.32% | 52.6% | 38.0% | 30.1% | 100.0% | 100.0% | 22.3% |
| MA | 11 | 1,885,553 | 1.5% | 8.17% | 84.19% | 615 | 42.48% | 62.4% | 17.6% | 0.0% | 94.8% | 100.0% | 34.5% |
| MD | 33 | 7,603,377 | 5.9% | 6.03% | 84.90% | 622 | 40.06% | 57.2% | 37.2% | 13.2% | 98.7% | 72.3% | 46.5% |
| ME | 8 | 1,079,592 | 0.2% | 3.24% | 79.97% | 538 | 40.84% | 37.7% | 61.3% | 62.3% | 100.0% | 54.6% | 82.7% |
| MI | 8 | 1,554,295 | 1.0% | 8.65% | 88.62% | 581 | 40.77% | 59.3% | 6.7% | 0.0% | 100.0% | 41.6% | 36.8% |
| MN | 6 | 1,413,331 | 1.1% | 5.93% | 85.12% | 640 | 43.93% | 82.7% | 17.3% | 0.0% | 100.0% | 79.3% | 43.6% |
| MO | 2 | 309,139 | 0.2% | 5.85% | 86.92% | 576 | 45.15% | 100.0% | 0.0% | 0.0% | 100.0% | 100.0% | 49.3% |
| MS | 1 | 142,560 | 0.1% | 6.19% | 95.00% | 591 | 45.56% | 100.2% | 0.0% | 0.0% | 100.0% | 100.0% | 0.0% |
| NC | 4 | 522,695 | 0.4% | 7.41% | 91.04% | 556 | 45.89% | 82.8% | 17.7% | 21.8% | 82.8% | 82.8% | 31.4% |
| NH | 5 | | 0.0% | 0.38% | 0.00% | | 0.56% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| NJ | 5 | 3,298,949 | 1.0% | 7.07% | 83.68% | 573 | 46.08% | 100.0% | 44.0% | 5.3% | 100.0% | 76.2% | 26.1% |
| NM | 31 | 9,830,342 | 7.3% | 6.03% | 81.85% | 616 | 44.19% | 55.6% | 44.0% | 7.6% | 100.0% | 55.2% | 46.3% |
| NV | 3 | | 0.8% | 7.4% | 0.96% | 600 | 0.00% | 48.6% | 53.6% | 0.0% | 0.0% | 29.0% | 0.0% |
| NY | 461 | 17,597,063 | 13.5% | 6.15% | 82.65% | 622 | 47.84% | 35.7% | 64.3% | 6.0% | 100.0% | 57.6% | 46.3% |
| OH | 3 | 354,535 | 0.3% | 6.77% | 88.12% | 592 | 42.22% | 100.0% | 0.0% | 43.0% | 100.0% | 64.2% | 0.0% |
| OK | 1 | 178,230 | 0.1% | 6.60% | 100.00% | 631 | 42.00% | 0.0% | 100.0% | 0.0% | 100.0% | 100.0% | 37.5% |
| OR | 4 | 802,379 | 0.7% | 7.53% | 57.58% | 580 | 44.11% | 78.1% | 21.9% | 0.0% | 78.1% | 100.0% | 51.5% |
| PA | 12 | 2,087,590 | 1.6% | 6.81% | 82.74% | 534 | 40.55% | 57.4% | 2.6% | 29.4% | 84.5% | 100.0% | 51.5% |
| RI | 2 | 372,122 | 0.3% | 7.19% | 80.00% | 592 | 46.55% | 55.2% | 44.8% | 0.0% | 44.8% | 44.8% | 100.0% |
| SC | 5 | 730,779 | 0.6% | 3.15% | 86.43% | 526 | 37.47% | 100.0% | 0.0% | 29.8% | 100.0% | 100.0% | 23.8% |
| SD | 7 | | 0.0% | 0.38% | 0.00% | | 0.38% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| TN | 7 | 714,332 | 0.6% | 7.37% | 92.40% | 585 | 39.45% | 64.5% | 35.5% | 25.4% | 83.5% | 83.5% | 0.0% |
| TX | 7 | 486,764 | 0.3% | 5.66% | 94.35% | 623 | 34.64% | 53.8% | 46.2% | 41.8% | 100.0% | 9.7% | 74.2% |
| UT | 4 | 566,856 | 0.4% | 6.62% | 82.34% | 642 | 42.00% | 100.0% | 0.0% | 10.0% | 100.0% | 100.0% | 0.0% |
| VA | 22 | 5,524,571 | 4.3% | 5.56% | 85.43% | 582 | 44.03% | 75.7% | 24.3% | 2.1% | 97.5% | 53.1% | 19.4% |
| WA | 6 | 1,870,243 | 1.3% | 7.09% | 88.19% | 612 | 38.19% | 51.6% | 48.4% | 0.0% | 74.5% | 75.1% | 0.0% |
| WI | 3 | 729,608 | 0.2% | 4.49% | 82.06% | 576 | 36.32% | 100.0% | 0.0% | 0.0% | 100.0% | 100.0% | 0.0% |
| WV | | | 0.0% | 0.00% | 0.00% | | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |

**CONFIDENTIAL**

RCPC00065221

EdgeMAC Corporation
Loan Stratification
Modified Loans Only

FGIC - RASC 2B07 EMX1
Data File of 7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | DTI | % Full Doc | % Stated Doc | % Fixed | % Owner Occ | % SFR | % 60+ Delinq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 507 | 129,324,074 | | 6.41% | 85.38% | 597 | 43.27% | 62.6% | 37.4% | 8.3% | 98.2% | 63.6% | 46.4% |
| **Original LTV** | | | | | | | | | | | | | |
| <= 60% | 6 | 989,077 | 0.5% | 4.98% | 48.11% | 569 | 42.68% | 81.5% | 18.5% | 15.1% | 100.0% | 100.0% | 18.5% |
| 60.1% to 65.6% | 7 | 2,264,899 | 1.0% | 6.56% | 63.34% | 601 | 65.95% | 47.1% | 52.9% | 36.9% | 100.0% | 69.7% | 0.0% |
| 65.1% to 70.0% | 17 | 4,386,983 | 3.4% | 7.28% | 69.23% | 563 | 54.22% | 56.8% | 43.6% | 14.6% | 100.0% | 66.0% | 57.1% |
| 70.1% to 75.0% | 28 | 5,481,221 | 4.2% | 5.92% | 74.01% | 561 | 39.90% | 72.3% | 27.7% | 22.2% | 97.3% | 62.6% | 27.7% |
| 75.1% to 80.0% | 215 | 56,172,986 | 43.4% | 5.89% | 79.91% | 599 | 42.93% | 57.5% | 42.5% | 15.4% | 98.7% | 61.7% | 51.4% |
| 80.1% to 85.0% | 51 | 11,648,444 | 9.0% | 6.34% | 84.68% | 589 | 43.80% | 76.5% | 23.5% | 3.2% | 100.0% | 77.8% | 43.4% |
| 85.1% to 90.0% | 72 | 16,878,203 | 13.1% | 7.00% | 89.85% | 582 | 44.50% | 86.9% | 13.1% | 3.6% | 98.0% | 65.6% | 31.6% |
| 90.1% to 95.0% | 34 | 10,705,172 | 8.3% | 6.18% | 94.35% | 617 | 43.50% | 59.9% | 40.1% | 3.2% | 100.0% | 71.2% | 43.3% |
| 95.1% to 100.0% | 86 | 22,046,795 | 17.1% | 7.28% | 99.87% | 612 | 44.22% | 50.2% | 49.8% | 3.6% | 100.0% | 52.8% | 56.7% |
| **I/O Flag** | | | | | | | | | | | | | |
| Yes | 10 | 2,593,699 | 2.0% | 6.49% | 82.11% | 562 | 44.06% | 88.6% | 11.4% | 0.0% | 91.2% | 65.6% | 55.8% |
| No | 497 | 126,730,362 | 98.0% | 6.41% | 85.43% | 597 | 43.25% | 62.1% | 37.9% | 8.4% | 98.3% | 63.6% | 46.2% |
| **Modifications** | | | | | | | | | | | | | |
| Yes | 507 | 129,324,061 | 100.0% | 6.41% | 85.38% | 597 | 43.27% | 62.6% | 37.4% | 8.3% | 98.2% | 63.6% | 46.4% |
| No | 0 | 0 | 0.0% | 0.00% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| **Bankruptcy** | | | | | | | | | | | | | |
| Yes | 11 | 2,518,632 | 1.9% | 6.02% | 84.79% | 615 | 43.22% | 56.7% | 33.3% | 9.5% | 87.5% | 88.8% | 73.4% |
| No | 496 | 126,805,439 | 98.1% | 6.42% | 85.39% | 597 | 43.28% | 62.5% | 37.5% | 8.3% | 92.4% | 63.1% | 45.9% |

CONFIDENTIAL

RCPC00065222

**CONFIDENTIAL**

**RCPC00065223**

EdgeMAC Corporation
Delinquency Strat
Modified Loans

FGIC - RASC 2B07 EMX1
Data File of  7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | Current | 30 | 60 | 90+ | FC | BK | REO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 507 | 129,324,074 | | 6.41% | 85.33% | 597 | 52.1% | 18.9% | 0.8% | 2.2% | 23.2% | 1.9% | 0.8% |
| **Property Type** | | | | | | | | | | | | | |
| SFR | 343 | 82,207,899 | 63.6% | 6.40% | 84.59% | 591 | 52.65% | 18.6% | 1.3% | 1.8% | 25.3% | 2.7% | 0.5% |
| PUD | 38 | 7,314,787 | 5.6% | 6.24% | 88.54% | 591 | 50.53% | 31.6% | 0.8% | 0.0% | 7.5% | 0.2% | 0.0% |
| Multi Family | 58 | 14,853,896 | 11.5% | 6.85% | 84.24% | 534 | 50.75% | 35.8% | 0.6% | 2.7% | 8.2% | 0.0% | 2.5% |
| Other | 8 | 1,820,555 | 1.4% | 5.95% | 82.53% | 578 | 47.92% | 42.1% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Condo | 60 | 23,126,937 | 17.9% | 6.52% | 87.08% | 580 | 55.98% | 9.8% | 0.6% | 0.3% | 28.3% | 1.2% | 0.9% |
| **Occupancy** | | | | | | | | | | | | | |
| Owner | 493 | 126,901,603 | 98.2% | 6.43% | 85.46% | 598 | 51.92% | 19.1% | 0.9% | 2.2% | 23.3% | 1.7% | 0.8% |
| Non Owner | 12 | 1,880,873 | 1.4% | 6.37% | 81.11% | 574 | 79.14% | 11.4% | 0.0% | 0.0% | 9.4% | 0.0% | 0.0% |
| 2nd Home | 2 | 541,585 | 0.4% | 6.32% | 98.00% | 613 | 0.00% | 0.0% | 0.0% | 0.0% | 41.9% | 58.1% | 0.0% |
| **Loan Purpose** | | | | | | | | | | | | | |
| Purchase | 212 | 58,621,930 | 45.3% | 6.21% | 86.04% | 616 | 46.88% | 18.1% | 0.6% | 3.3% | 28.8% | 1.3% | 1.0% |
| Rate / Term | 5 | 802,976 | 0.6% | 6.83% | 07.00% | 610 | 100.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Cash-Out | 270 | 69,899,171 | 54.0% | 6.58% | 84.80% | 589 | 55.87% | 19.9% | 1.1% | 1.3% | 18.9% | 2.5% | 0.5% |
| **Documentation Type** | | | | | | | | | | | | | |
| Full / Alt | 331 | 80,965,133 | 62.6% | 6.33% | 85.24% | 587 | 58.05% | 17.1% | 1.0% | 2.3% | 18.7% | 2.1% | 0.7% |
| Stated | 177 | 48,358,941 | 37.4% | 6.55% | 85.61% | 615 | 42.99% | 21.9% | 0.6% | 2.1% | 30.8% | 1.7% | 0.3% |
| **Original FICO Score** | | | | | | | | | | | | | |
| Less than 500 | 25 | 4,711,070 | 3.6% | 6.93% | 84.13% | 473 | 66.73% | 20.1% | 0.0% | 3.7% | 4.9% | 0.0% | 4.6% |
| 500 to 549 | 86 | 20,360,173 | 15.7% | 6.63% | 83.89% | 529 | 58.00% | 14.8% | 0.0% | 3.4% | 23.6% | 0.0% | 0.0% |
| 550 to 599 | 158 | 37,477,154 | 29.0% | 6.60% | 83.67% | 577 | 53.11% | 16.7% | 1.8% | 3.9% | 21.4% | 2.0% | 1.0% |
| 600 to 649 | 166 | 47,125,224 | 36.4% | 6.52% | 87.64% | 623 | 48.35% | 17.1% | 0.9% | 1.1% | 29.7% | 2.9% | 0.0% |
| 650 to 699 | 59 | 15,835,582 | 12.2% | 5.82% | 85.10% | 667 | 45.03% | 31.2% | 0.0% | 0.0% | 14.9% | 2.9% | 2.4% |
| 700 to 749 | 13 | 3,895,872 | 2.9% | 6.13% | 84.83% | 715 | 51.21% | 33.7% | 0.0% | 0.0% | 15.0% | 0.0% | 0.0% |
| 750 to 799 | 0 | 0 | 0.0% | 0.00% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| 800 and greater | 0 | 0 | 0.0% | 0.00% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| **Original Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 0 | 0 | 0.0% | 0.00% | 0.50% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| 6.00% to 6.99% | 23 | 5,954,335 | 4.8% | 5.32% | 78.87% | 612 | 71.09% | 20.2% | 0.0% | 0.0% | 3.7% | 5.0% | 0.0% |
| 7.00% to 7.99% | 91 | 26,208,648 | 20.3% | 5.71% | 81.28% | 612 | 49.93% | 23.1% | 1.3% | 0.0% | 24.2% | 1.5% | 0.0% |
| 8.00% to 8.99% | 161 | 43,344,439 | 33.5% | 6.23% | 84.98% | 596 | 53.78% | 17.0% | 0.5% | 3.2% | 22.7% | 2.8% | 0.0% |
| 9.00% to 9.99% | 142 | 35,627,015 | 27.1% | 6.81% | 87.00% | 591 | 47.20% | 21.2% | 0.8% | 3.3% | 24.1% | 1.7% | 1.7% |
| **Current Coupon** | | | | | | | | | | | | | |
| Less than 6.0% | 165 | 43,351,197 | 33.5% | 4.75% | 82.81% | 603 | 52.94% | 22.5% | 0.5% | 0.5% | 21.6% | 2.4% | 0.0% |
| 6.00% to 6.99% | 130 | 35,038,843 | 27.1% | 6.39% | 84.84% | 608 | 52.84% | 28.0% | 1.4% | 0.0% | 19.0% | 0.8% | 0.0% |
| 7.00% to 7.99% | 212 | 51,764,343 | 40.0% | 7.20% | 85.78% | 589 | 53.57% | 13.8% | 1.1% | 1.8% | 25.5% | 3.5% | 0.7% |
| 8.00% to 8.99% | 21 | 10,844,354 | 8.4% | 8.35% | 86.59% | 574 | 55.11% | 0.2% | 6.6% | 10.4% | 22.7% | 0.0% | 3.6% |
| 9.00% to 9.99% | 29 | 8,515,580 | 5.0% | 9.39% | 90.57% | 582 | 41.07% | 0.0% | 0.2% | 14.2% | 39.0% | 0.0% | 5.7% |

CONFIDENTIAL

RCPC00065224

EdgeMAC Corporation
Delinquency Strat
Modified Loans

FGIC - RASC 2B07 EMX1
Data File of   7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | Current | 30 | 60 | 90+ | FC | BK | REO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 507 | 129,324,074 | | 6.41% | 85.33% | 597 | 52.1% | 18.9% | 0.8% | 2.2% | 23.2% | 1.9% | 0.8% |
| **Original Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 7 | 214,142 | 0.2% | 8.35% | 95.99% | 570 | 76.22% | 0.2% | 0.0% | 23.59% | 0.1% | 0.0% | 0.0% |
| $50,000 to $99,999 | 64 | 3,599,350 | 2.8% | 7.38% | 87.57% | 568 | 101.90% | 7.3% | 0.0% | 6.7% | 0.28% | 4.1% | 0.0% |
| $100,000 to $149,999 | 100 | 28,902,276 | 22.3% | 6.63% | 88.65% | 588 | 81.42% | 16.3% | 1.2% | 0.6% | 16.6% | 1.2% | 0.8% |
| $150,000 to $199,999 | 146 | 30,225,205 | 30.3% | 6.86% | 84.72% | 591 | 43.59% | 19.6% | 2.9% | 2.0% | 28.7% | 4.1% | 0.0% |
| $200,000 to $249,999 | 74 | 27,177,953 | 21.0% | 6.18% | 84.47% | 610 | 50.92% | 15.8% | 0.2% | 2.6% | 16.6% | 1.6% | 2.8% |
| $250,000 to $299,999 | 25 | 11,230,350 | 9.1% | 6.72% | 86.72% | 601 | 40.08% | 21.5% | 0.2% | 7.5% | 30.3% | 0.0% | 0.0% |
| $300,000 to $349,999 | 20 | 11,695,482 | 9.0% | 6.52% | 88.44% | 617 | 38.68% | 31.2% | 0.0% | 0.0% | 30.2% | 0.0% | 0.0% |
| $350,000 to $699,999 | 17 | 9,507,237 | 3.8% | 6.59% | 88.98% | 609 | 25.34% | 27.5% | 0.0% | 0.0% | 47.1% | 0.0% | 0.0% |
| $500,000 to $699,999 | 1 | 4,500,465 | 0.8% | 6.82% | 92.31% | 518 | 100.00% | 0.2% | 0.0% | 0.0% | 0.6% | 0.0% | 0.0% |
| Greater than $1,000,000 | 0 | 992,413 | 0.0% | 0.00% | 97.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.8% | 0.0% | 0.0% |
| **Current Principal Balance** | | | | | | | | | | | | | |
| Less than $50,000 | 6 | 164,644 | 0.1% | 8.37% | 95.99% | 567 | 100.00% | 0.1% | 0.0% | 0.1% | 0.1% | 0.1% | 0.1% |
| $50,000 to $99,999 | 42 | 3,385,742 | 2.6% | 7.63% | 88.51% | 573 | 82.73% | 4.6% | 0.0% | 8.7% | 0.2% | 4.4% | 0.0% |
| $100,000 to $149,999 | 163 | 24,912,297 | 19.3% | 6.47% | 88.70% | 588 | 84.61% | 16.1% | 0.9% | 0.7% | 13.8% | 1.4% | 0.8% |
| $150,000 to $199,999 | 146 | 36,834,065 | 28.5% | 6.47% | 85.69% | 589 | 42.80% | 17.7% | 2.8% | 2.1% | 31.1% | 3.8% | 0.6% |
| $200,000 to $249,999 | 84 | 29,077,705 | 22.6% | 6.13% | 83.22% | 604 | 62.13% | 17.5% | 0.0% | 2.5% | 12.8% | 2.4% | 2.3% |
| $250,000 to $299,999 | 31 | 13,745,331 | 10.6% | 6.81% | 86.07% | 611 | 36.36% | 39.6% | 0.0% | 6.4% | 37.5% | 0.0% | 0.0% |
| $300,000 to $349,999 | 17 | 9,407,237 | 7.3% | 6.97% | 85.93% | 608 | 52.73% | 18.2% | 0.0% | 0.0% | 29.1% | 0.0% | 0.0% |
| $350,000 to $699,999 | 12 | 7,617,767 | 5.9% | 6.46% | 89.62% | 624 | 26.16% | 58.3% | 0.0% | 0.0% | 17.3% | 0.0% | 0.0% |
| $500,000 to $699,999 | 1 | 992,413 | 0.8% | 6.82% | 97.00% | 518 | 100.00% | 0.2% | 0.0% | 0.0% | 0.8% | 0.0% | 0.0% |
| $1,000,000 and greater | 0 | | 0.0% | 0.00% | 0.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| **Balloon** | | | | | | | | | | | | | |
| Yes | 315 | 84,630,534 | 55.4% | 6.43% | 84.93% | 598 | 51.76% | 15.3% | 1.7% | 2.3% | 24.8% | 1.9% | 1.2% |
| No | 193 | 44,093,527 | 34.6% | 6.89% | 86.22% | 597 | 52.68% | 23.4% | 0.6% | 1.0% | 30.2% | 2.0% | 0.0% |
| **Amortization Term** | | | | | | | | | | | | | |
| 180 | 0 | 0 | 0.0% | 0.00% | 0.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| 240 | 0 | 0 | 0.0% | 0.00% | 0.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| 360 | 205 | 45,562,605 | 35.2% | 6.43% | 86.49% | 597 | 53.23% | 23.0% | 0.9% | 1.5% | 19.8% | 1.9% | 0.6% |
| 480 | 298 | 83,255,215 | 64.4% | 6.41% | 84.76% | 597 | 51.25% | 16.8% | 1.0% | 2.6% | 25.2% | 1.9% | 1.2% |
| **Product Type** | | | | | | | | | | | | | |
| Arm 10/20 | 0 | 0 | 0.0% | 0.00% | 0.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Arm 2/28 | 354 | 94,909,598 | 73.4% | 6.28% | 85.61% | 596 | 51.06% | 19.7% | 0.9% | 2.0% | 24.0% | 1.0% | 0.4% |
| Arm 2/28 IO | 8 | 2,390,578 | 1.8% | 6.68% | 85.62% | 622 | 39.40% | 13.7% | 0.0% | 0.0% | 34.6% | 25.8% | 0.0% |
| Arm 3/27 | 79 | 21,114,408 | 16.3% | 6.64% | 85.98% | 605 | 49.16% | 13.5% | 1.3% | 3.5% | 21.4% | 3.4% | 1.8% |
| Arm 3/27 IO | 2 | 313,521 | 0.2% | 5.92% | 82.28% | 610 | 100.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Arm 5/25 | 0 | 0 | 0.0% | 0.00% | 0.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.6% | 0.0% | 0.0% |
| Arm 5/25 IO | 0 | 0 | 0.0% | 0.00% | 0.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.6% | 0.6% | 0.0% |
| Fixed | 64 | 10,705,961 | 8.3% | 7.05% | 84.16% | 593 | 60.83% | 12.8% | 0.0% | 2.0% | 20.1% | 2.2% | 2.0% |
| **Original DTI** | | | | | | | | | | | | | |
| Less than 20% | 17 | 5,261,964 | 4.1% | 5.83% | 81.39% | 593 | 37.19% | 32.0% | 0.0% | 0.0% | 30.8% | 0.0% | 0.0% |
| 20.0% to 29.9% | 35 | 7,205,528 | 5.6% | 6.21% | 83.38% | 591 | 65.98% | 17.8% | 0.0% | 0.0% | 13.9% | 2.5% | 0.0% |
| 30.0% to 39.9% | 102 | 22,285,034 | 17.2% | 6.38% | 85.75% | 597 | 40.31% | 25.0% | 2.1% | 2.7% | 22.1% | 2.7% | 1.7% |
| 40.0% to 49.9% | 206 | 54,000,740 | 41.8% | 6.48% | 85.35% | 602 | 49.12% | 15.4% | 0.6% | 2.6% | 28.3% | 1.2% | 1.2% |
| 50.0% to 59.9% | 146 | 40,115,078 | 31.0% | 6.44% | 88.59% | 595 | 59.77% | 15.4% | 1.9% | 1.7% | 17.7% | 2.6% | 1.0% |
| 60.0% and greater | 0 | 0 | 0.0% | 0.00% | 0.00% | | 0.00% | 0.2% | 0.0% | 0.0% | 0.6% | 0.0% | 0.0% |

CONFIDENTIAL

RCPC00065225

EdgeMAC Corporation
Delinquency Strat
Modified Loans

FGIC - RASC 2B07 EMAX1
Data File of  7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | Current | 30 | 60 | 90+ | FC | BK | REO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Portfolio** | 507 | 129,324,074 | | 6.41% | 85.33% | 597 | 52.1% | 18.9% | 0.8% | 2.2% | 23.2% | 1.9% | 0.8% |

**Lien Position**

| | Count | Balance | Pct | Coupon | LTV | FICO | Current | 30 | 60 | 90+ | FC | BK | REO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st | 490 | 128,326,920 | 99.2% | 6.40% | 85.26% | 597 | 51.80% | 13.5% | 0.9% | 2.4% | 23.4% | 1.9% | 0.8% |
| 2nd | 17 | 997,141 | 0.8% | 8.31% | 100.00% | 611 | 72.7% | 0.0% | 0.0% | 21.8% | 0.3% | 5.4% | 0.0% |

**State**

| | Count | Balance | Pct | Coupon | LTV | FICO | Current | 30 | 60 | 90+ | FC | BK | REO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AL | 4 | 676,186 | 0.5% | 7.38% | 79.76% | 611 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| AZ | 18 | 3,799,045 | 2.9% | 6.24% | 82.61% | 619 | 64.8% | 4.4% | 0.0% | 0.0% | 30.8% | 0.0% | 0.0% |
| CA | 70 | 8,440,769 | 6.5% | 6.76% | 85.99% | 599 | 45.4% | 12.9% | 0.9% | 0.0% | 42.7% | 0.0% | 0.0% |
| CO | 5 | 636,132 | 0.5% | 6.72% | 82.22% | 556 | 28.0% | 31.8% | 0.0% | 8.1% | 32.1% | 0.0% | 0.0% |
| CT | 23 | 5,594,641 | 4.3% | 8.28% | 94.97% | 600 | 55.6% | 7.0% | 0.0% | 0.0% | 30.4% | 7.0% | 0.0% |
| DC | 0 | 0 | 0.0% | 0.00% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| DE | 6 | 688,761 | 0.5% | 6.13% | 94.07% | 638 | 74.8% | 20.8% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| FL | 112 | 28,131,4856 | 22.8% | 5.97% | 85.69% | 581 | 38.5% | 24.8% | 0.0% | 1.0% | 37.2% | 1.5% | 0.0% |
| GA | 24 | 4,765,019 | 3.7% | 7.28% | 98.37% | 573 | 71.6% | 13.8% | 0.0% | 1.1% | 8.5% | 0.0% | 6.3% |
| HI | 2 | 396,527 | 0.3% | 6.07% | 82.80% | 586 | 42.0% | 0.0% | 0.0% | 0.0% | 58.0% | 0.0% | 0.0% |
| IL | 26 | 5,264,9966 | 4.5% | 7.28% | 89.54% | 579 | 61.9% | 3.6% | 0.0% | 3.4% | 31.8% | 0.0% | 0.0% |
| IN | 3 | 471,685 | 0.4% | 7.77% | 95.59% | 585 | 70.8% | 0.0% | 0.0% | 0.0% | 29.2% | 0.0% | 0.0% |
| KY | 8 | 1,269,166 | 0.9% | 6.48% | 94.99% | 593 | 56.3% | 0.0% | 0.0% | 0.0% | 23.1% | 22.3% | 0.0% |
| LA | 11 | 1,881,553 | 1.5% | 8.17% | 83.10% | 615 | 65.4% | 12.4% | 0.0% | 0.0% | 22.2% | 0.0% | 0.0% |
| MA | 24 | 7,603,177 | 5.5% | 6.03% | 94.07% | 622 | 54.5% | 28.3% | 0.0% | 0.0% | 16.6% | 0.0% | 0.0% |
| MD | 33 | 10,272,372 | 7.9% | 7.02% | 85.18% | 589 | 50.7% | 19.1% | 0.0% | 3.3% | 36.8% | 0.0% | 0.0% |
| MI | 3 | 277,982 | 0.2% | 3.04% | 75.97% | 558 | 67.3% | 32.7% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| MN | 8 | 1,554,275 | 1.0% | 6.65% | 88.02% | 595 | 63.7% | 25.1% | 0.0% | 0.0% | 11.3% | 0.0% | 0.0% |
| MS | 6 | 1,413,331 | 1.1% | 5.92% | 87.12% | 540 | 52.6% | 0.0% | 0.0% | 20.5% | 27.1% | 0.0% | 0.0% |
| MO | 2 | 390,129 | 0.3% | 5.85% | 86.92% | 576 | 30.8% | 69.1% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| MS | 1 | 142,556 | 0.1% | 6.19% | 95.00% | 591 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| NC | 4 | 522,695 | 0.4% | 7.41% | 86.92% | 586 | 68.6% | 0.0% | 0.0% | 0.0% | 31.4% | 0.0% | 0.0% |
| NE | 0 | 0 | 0.0% | 0.00% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| NH | 2 | 298,949 | 0.2% | 7.07% | 83.68% | 571 | 73.9% | 0.0% | 0.0% | 26.1% | 0.0% | 0.0% | 0.0% |
| NJ | 31 | 9,480,342 | 7.3% | 6.03% | 81.85% | 614 | 51.9% | 13.5% | 0.0% | 6.3% | 21.9% | 4.1% | 1.9% |
| NV | 3 | 968,029 | 0.8% | 6.06% | 95.30% | - | 0.0% | 0.0% | 0.0% | 48.0% | 0.0% | 0.0% | 0.0% |
| NY | 46 | 17,597,061 | 13.5% | 6.16% | 82.95% | 622 | 53.7% | 42.0% | 2.5% | 0.5% | 2.2% | 29.0% | 0.0% |
| OH | 3 | 354,535 | 0.3% | 6.77% | 83.77% | 592 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| OK | 1 | 176,230 | 0.1% | 6.60% | 100.00% | 633 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| OR | 4 | 862,379 | 0.7% | 7.53% | 67.58% | 580 | 62.3% | 0.0% | 15.9% | 0.0% | 21.9% | 0.0% | 0.0% |
| PA | 12 | 2,087,990 | 1.6% | 6.81% | 82.74% | 584 | 24.5% | 34.0% | 0.0% | 0.0% | 14.9% | 26.5% | 0.0% |
| RI | 2 | 372,122 | 0.3% | 7.04% | 80.00% | 592 | 76.1% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| SC | 5 | 730,779 | 0.6% | 3.16% | 86.43% | 525 | 76.7% | 0.0% | 0.0% | 23.8% | 0.0% | 0.0% | 0.0% |
| SD | 0 | 0 | 0.0% | 0.00% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| TN | 7 | 734,212 | 0.6% | 6.33% | 90.22% | 585 | 82.8% | 0.0% | 0.0% | 0.0% | 16.3% | 0.0% | 0.0% |
| TX | 7 | 986,764 | 0.8% | 6.96% | 94.55% | 623 | 83.5% | 0.0% | 0.0% | 0.0% | 16.5% | 0.0% | 0.0% |
| UT | 4 | 566,856 | 0.4% | 6.42% | 82.34% | 642 | 80.3% | 0.0% | 0.0% | 0.0% | 19.7% | 0.0% | 0.0% |
| VA | 22 | 5,514,571 | 4.3% | 5.56% | 85.43% | 582 | 40.4% | 0.0% | 0.0% | 6.5% | 12.7% | 0.0% | 0.0% |
| WA | 6 | 1,670,643 | 1.3% | 7.09% | 88.13% | 612 | 25.1% | 18.5% | 0.0% | 0.0% | 32.9% | 0.0% | 23.5% |
| WI | 3 | 729,608 | 0.6% | 4.49% | 62.06% | 576 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| WV | 0 | 0 | 0.0% | 0.00% | 0.00% | - | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |

CONFIDENTIAL

RCPC00065226

EdgeMAC Corporation
Delinquency Strat
Modified Loans

FGIC - RASC 2B07 EMX1
Data File of    7/28/2009

| | Count | Balance | Pct | Coupon | LTV | FICO | Current | 30 | 60 | 90+ | FC | BK | REO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Portfolio | 507 | 129,324,074 | | 6.41% | 85.33% | 597 | 52.1% | 18.9% | 0.8% | 2.2% | 23.2% | 1.9% | 0.8% |
| **Original LTV** | | | | | | | | | | | | | |
| <= 50% | 6 | 591,677 | 0.5% | 4.5% | 66.13% | 560 | 81.5% | 2.5% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| 50.1% to 65.0% | 7 | 1,264,038 | 1.0% | 5.56% | 69.57% | 603 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| 65.1% to 70.0% | 17 | 4,386,740 | 3.4% | 7.06% | 69.23% | 563 | 42.9% | 23.1% | 6.2% | 0.0% | 37.8% | 0.0% | 0.0% |
| 70.1% to 75.0% | 20 | 5,481,221 | 6.2% | 6.92% | 74.01% | 561 | 72.3% | 4.4% | 0.0% | 0.0% | 23.7% | 0.0% | 0.0% |
| 75.1% to 80.0% | 215 | 56,173,584 | 43.4% | 5.98% | 79.19% | 608 | 45.9% | 22.9% | 1.0% | 3.6% | 13.8% | 2.7% | 0.4% |
| 80.1% to 85.0% | 51 | 11,604,466 | 9.0% | 6.34% | 84.68% | 580 | 56.8% | 17.1% | 0.2% | 0.0% | 26.8% | 0.2% | 0.0% |
| 85.1% to 90.0% | 72 | 18,808,201 | 13.1% | 7.00% | 89.85% | 562 | 69.0% | 2.5% | 0.0% | 1.0% | 10.1% | 2.8% | 0.0% |
| 90.1% to 95.0% | 34 | 10,705,572 | 8.3% | 6.18% | 94.85% | 617 | 52.3% | 16.1% | 2.3% | 0.0% | 22.7% | 5.4% | 0.0% |
| 95.1% to 100.0% | 85 | 22,348,595 | 17.1% | 7.5% | 98.37% | 612 | 45.8% | 26.1% | 0.0% | 3.0% | 31.9% | 0.2% | 3.5% |
| **I/O Flag** | | | | | | | | | | | | | |
| Yes | 10 | 2,993,699 | 2.0% | 6.65% | 72.81% | 620 | 44.2% | 10.8% | 0.0% | 0.0% | 22.3% | 22.3% | 0.0% |
| No | 497 | 126,330,362 | 98.0% | 6.41% | 85.63% | 597 | 52.2% | 19.1% | 0.9% | 2.3% | 23.2% | 1.5% | 0.8% |
| **Modifications** | | | | | | | | | | | | | |
| Yes | 507 | 129,324,064 | 100.0% | 6.41% | 85.16% | 597 | 52.1% | 18.9% | 0.8% | 2.2% | 23.2% | 1.9% | 0.8% |
| No | 0 | 0 | 0.0% | 0.00% | 0.00% | | 0.00% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| **Bankruptcy** | | | | | | | | | | | | | |
| Yes | 11 | 2,518,622 | 1.9% | 6.00% | 84.46% | 615 | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 100.0% | 0.0% |
| No | 496 | 125,805,438 | 98.1% | 6.42% | 85.39% | 597 | 53.1% | 19.3% | 0.9% | 2.2% | 23.7% | 0.0% | 0.0% |

CONFIDENTIAL

RCPC00065227

# Exhibit F

CONFIDENTIAL

RCPC00065228

**EdgeMAC Corporation**
Days from last payment to foreclosure
Loan Number Listing

| 180 Days | 210 Days | 240 Days | 270 Days | 360 Days |
|----------|----------|----------|----------|----------|
| 10778072 | 10616362 | 10717282 | 10758476 | 10761916 |
| 10757678 | 11213763 | 10774874 | 11212667 | 11213503 |
| 11212801 | 10618118 | 11212475 | 11212833 | 11213027 |
| 11212967 | 10758054 | 11212861 | 10717460 | 10775068 |
| 11213255 | 10775778 | 11213073 | 10758174 | 10716978 |
| 11214761 | 10777182 | 11213555 | 10645626 | 10625526 |
| 10689754 | 10778044 | 11214419 | 11213845 | 10646756 |
| 11213159 | 11212565 | 11214779 | 11214561 |          |

| | | | | 390 Days |
|---|---|---|---|----------|
| 11213861 | 11213079 | 10776636 | 11214457 | 10756926 |
| 11214423 | 11213647 | 11213149 | 10689568 | 10756984 |
| 10775756 | 11214169 | 11213171 | 10717060 | 10756316 |
| 10775848 | 10756618 | 11213581 | 10762030 | 10777122 |
| 10776252 | 10757220 | 11214219 | 11212581 | 10777104 |
| 11214027 | 10688360 | 11214455 | 11212817 |          |
| 10757260 | 10761946 | 10647012 | 11212867 |          |

| | | | | 420 Days |
|---|---|---|---|----------|
| 11218995 | 11212577 | 10778016 | 10757662 | 10775124 |
| 10616596 | 11213461 | 11213983 | 10777072 | 10775610 |
| 10628252 | 11213609 | 10755590 | 11212403 | 10776222 |
| 10646858 | 11213771 | 11213789 | 10775262 | 10687630 |
| 10758398 | 11214655 | 10756374 | 10626040 |          |
| 10758468 | 11214721 | 10775996 |          |          |

| | | | 300 Days | 450 Days |
|---|---|---|----------|----------|
| 10776614 | 10756432 | 11213115 | 10775088 | 11214353 |
| 10776644 | 10756518 | 11213793 | 10775916 |          |

| | | | | 570 Days |
|---|---|---|---|----------|
| 10646788 | 10757628 | 11213833 | 10776154 | 10756146 |
| 10717352 | 11214047 | 11214223 | 10778014 |          |
| 10757332 | 10644534 | 11214775 | 11214061 |          |

| | | | | 600 Days |
|---|---|---|---|----------|
| 10757434 | 10628744 | 10717036 | 10757032 | 10756936 |
| 10758242 | 10756108 | 10757486 | 10756838 | 10756250 |
| 10774746 | 10757772 |          | 10757492 |          |
| 10775924 | 10758384 |          | 11212597 |          |

| | | | | 630 Days |
|---|---|---|---|----------|
| 10646832 | 10774910 |          | 10757078 | 10777954 |
| 10776862 | 10775022 |          | 10757710 | 10717432 |
| 11212437 | 11213589 |          | 10777098 |          |
| 10777894 | 11214371 |          | 10717450 |          |
| 10777936 | 10756932 |          | 10755030 |          |
| 11213529 | 10717392 |          | 10717468 |          |
| 10775628 | 10757912 |          |          |          |
| 10776406 |          |          |          |          |
| 10618044 |          |          |          |          |
| 10717200 |          |          |          |          |
| 10757508 |          |          |          |          |
| 10776480 |          |          |          |          |

CONFIDENTIAL

RCPC00065229

# Exhibit G

CONFIDENTIAL

RCPC00065230

## Loans with Excessive days in REO

| Loan Number | REO days |
|---|---|
| 10643434 | 570 |
| 10756540 | 510 |
| 10758412 | 510 |
| 11212587 | 450 |
| 10761946 | 420 |
| 10775628 | 420 |
| 10717020 | 360 |
| 10762022 | 330 |
| 10754166 | 330 |
| 10776494 | 330 |
| 10757004 | 330 |
| 10625616 | 300 |
| 10757032 | 300 |
| 10756256 | 300 |
| 10757474 | 300 |
| 10757330 | 300 |
| 10757172 | 300 |
| 10774760 | 300 |
| 10618044 | 270 |
| 10613350 | 270 |
| 10757996 | 270 |
| 10688474 | 270 |
| 10689482 | 270 |
| 10754118 | 270 |
| 10758514 | 270 |
| 11212417 | 270 |
| 10625634 | 270 |
| 10645356 | 270 |
| 10689434 | 270 |
| 10753932 | 270 |
| 10756212 | 270 |
| 10775200 | 270 |
| 10775048 | 270 |
| 10774890 | 270 |
| 11214721 | 270 |
| 10527838 | 240 |
| 10628252 | 240 |
| 10689392 | 240 |
| 10756854 | 240 |
| 10628812 | 240 |
| 10628414 | 240 |
| 10757250 | 240 |
| 10689430 | 240 |
| 10757980 | 240 |
| 10717456 | 240 |
| 10756374 | 240 |
| 10757468 | 240 |
| 10757062 | 240 |
| 11213529 | 240 |
| 11214223 | 240 |

CONFIDENTIAL

RCPC00065231

# Exhibit H

CONFIDENTIAL

RCPC00065232

| 2nd Lien Loans Charged Off after 300 Days delinquent | | | | | | | |
|---|---|---|---|---|---|---|---|
| Loan Number | Original charge off date | Last Paid to date | Days to chargeoff | Loan Number | Original charge off date | Last Paid to date | Days to chargeoff |
| 10754344 | 10/31/07 | 01/01/07 | 300 | 10755532 | 02/29/08 | 01/01/07 | 418 |
| 10775636 | 10/31/07 | 01/01/07 | 300 | 10774828 | 03/31/08 | 06/01/07 | 300 |
| 10567734 | 11/30/07 | 01/01/07 | 329 | 10567376 | 03/31/08 | 04/01/07 | 360 |
| 10754640 | 12/31/07 | 03/01/07 | 300 | 10776040 | 03/31/08 | 03/01/07 | 390 |
| 11213591 | 12/31/07 | 03/01/07 | 300 | 10755286 | 05/31/08 | 08/01/07 | 300 |
| 10754780 | 12/31/07 | 02/01/07 | 330 | 10775350 | 05/31/08 | 08/01/07 | 300 |
| 10590718 | 12/31/07 | 01/01/07 | 360 | 10717354 | 05/31/08 | 07/01/07 | 330 |
| 10754048 | 12/31/07 | 01/01/07 | 360 | 10754028 | 05/31/08 | 07/01/07 | 330 |
| 10755278 | 12/31/07 | 01/01/07 | 360 | 10754772 | 05/31/08 | 07/01/07 | 330 |
| 10774696 | 12/31/07 | 01/01/07 | 360 | 10644322 | 05/31/08 | 06/01/07 | 360 |
| 10755146 | 01/31/08 | 04/01/07 | 300 | 10717210 | 05/31/08 | 06/01/07 | 360 |
| 10755246 | 01/31/08 | 04/01/07 | 300 | 10717248 | 05/31/08 | 06/01/07 | 360 |
| 10775288 | 01/31/08 | 04/01/07 | 300 | 10774772 | 05/31/08 | 06/01/07 | 360 |
| 10776490 | 01/31/08 | 04/01/07 | 300 | 10775724 | 05/31/08 | 06/01/07 | 360 |
| 10567796 | 01/31/08 | 03/01/07 | 330 | 10755536 | 05/31/08 | 05/01/07 | 390 |
| 10753980 | 01/31/08 | 03/01/07 | 330 | 10775264 | 05/31/08 | 05/01/07 | 390 |
| 10755616 | 01/31/08 | 03/01/07 | 330 | 10776506 | 05/31/08 | 04/01/07 | 420 |
| 10754786 | 01/31/08 | 01/01/07 | 390 | 10717022 | 05/31/08 | 02/01/07 | 480 |
| 10775104 | 02/29/08 | 05/02/07 | 297 | 10754800 | 05/31/08 | 02/01/07 | 480 |
| 10617588 | 02/29/08 | 05/01/07 | 298 | 10774688 | 05/31/08 | 02/01/07 | 480 |
| 10717062 | 02/29/08 | 05/01/07 | 298 | 10717394 | 05/31/08 | 01/01/07 | 510 |
| 10754004 | 02/29/08 | 05/01/07 | 298 | 10754520 | 06/30/08 | 09/01/07 | 299 |
| 10754478 | 02/29/08 | 05/01/07 | 298 | 10755368 | 07/31/08 | 08/01/07 | 360 |
| 10754656 | 02/29/08 | 05/01/07 | 298 | 10717108 | 08/31/08 | 11/01/07 | 300 |
| 10755204 | 02/29/08 | 05/01/07 | 298 | 10754178 | 08/31/08 | 11/01/07 | 300 |
| 10755598 | 02/29/08 | 05/01/07 | 298 | 10754600 | 08/31/08 | 09/01/07 | 360 |
| 10776376 | 02/29/08 | 05/01/07 | 298 | 10717226 | 08/31/08 | 02/01/07 | 570 |
| 10618134 | 02/29/08 | 04/01/07 | 328 | 10754820 | 09/30/08 | 12/01/07 | 299 |
| 10754326 | 02/29/08 | 04/01/07 | 328 | 10753970 | 10/31/08 | 01/01/08 | 300 |
| 10754568 | 02/29/08 | 04/01/07 | 328 | 10754690 | 10/31/08 | 01/01/08 | 300 |
| 10755352 | 02/29/08 | 04/01/07 | 328 | 10645286 | 10/31/08 | 12/01/07 | 330 |
| 10716992 | 02/29/08 | 03/01/07 | 358 | 10753994 | 10/31/08 | 12/01/07 | 330 |
| 10755606 | 02/29/08 | 03/01/07 | 358 | 10755120 | 10/31/08 | 12/01/07 | 330 |
| 10755968 | 02/29/08 | 03/01/07 | 358 | 10755160 | 10/31/08 | 12/01/07 | 330 |
| 10755294 | 02/29/08 | 03/01/07 | 358 | 10755224 | 10/31/08 | 12/01/07 | 330 |
| 10776612 | 02/29/08 | 03/01/07 | 358 | 10755408 | 11/30/08 | 11/01/07 | 389 |
| 10753984 | 02/29/08 | 02/01/07 | 388 | 10754944 | 12/31/08 | 02/01/08 | 330 |
| 10775050 | 02/29/08 | 02/01/07 | 388 | 10754804 | 12/31/08 | 01/01/08 | 360 |
| 10567650 | 02/29/08 | 01/01/07 | 418 | 11214553 | 01/31/09 | 04/01/08 | 300 |
| 10567740 | 02/29/08 | 01/01/07 | 418 | 10753926 | 01/31/09 | 02/01/08 | 360 |
| 10617942 | 02/29/08 | 01/01/07 | 418 | 11214171 | 01/31/09 | 02/01/08 | 360 |
| 10717038 | 02/29/08 | 01/01/07 | 418 | 10776600 | 02/28/09 | 04/01/08 | 327 |
| 10755132 | 02/29/08 | 01/01/07 | 418 | 10754442 | 02/28/09 | 03/01/08 | 357 |
| 10755282 | 02/29/08 | 01/01/07 | 418 | 10716944 | 02/28/09 | 08/01/07 | 567 |

CONFIDENTIAL

RCPC00065233

# Exhibit I

CONFIDENTIAL

RCPC00065234

## Excessive Loss Severities

| Loan Number | Lien | Loss Severity | Loan Number | Lien | Loss Severity |
|---|---|---|---|---|---|
| 11214221 | 2 | 107.00% | 10775888 | 1 | 108.57% |
| 10755052 | 2 | 107.01% | 10776376 | 2 | 108.61% |
| 10754584 | 2 | 107.03% | 10754842 | 2 | 108.69% |
| 10755104 | 2 | 107.05% | 10754478 | 2 | 108.75% |
| 10755084 | 2 | 107.05% | 10754656 | 2 | 108.77% |
| 10755228 | 2 | 107.08% | 10775102 | 2 | 108.83% |
| 10717102 | 2 | 107.12% | 10755236 | 2 | 108.91% |
| 10687372 | 2 | 107.12% | 10754326 | 2 | 108.92% |
| 10586544 | 2 | 107.15% | 10717002 | 2 | 108.97% |
| 10567734 | 2 | 107.16% | 10776612 | 2 | 108.98% |
| 10617782 | 2 | 107.19% | 10775954 | 2 | 109.02% |
| 10617708 | 2 | 107.19% | 10717210 | 2 | 109.04% |
| 10754676 | 2 | 107.25% | 10608828 | 1 | 109.17% |
| 10755168 | 2 | 107.25% | 10774772 | 2 | 109.19% |
| 11213583 | 2 | 107.26% | 10756754 | 1 | 109.20% |
| 10754028 | 2 | 107.28% | 10756998 | 1 | 109.31% |
| 10717268 | 2 | 107.29% | 10717062 | 2 | 109.32% |
| 10754572 | 2 | 107.31% | 10755204 | 2 | 109.38% |
| 10754544 | 2 | 107.37% | 10754786 | 2 | 109.56% |
| 10754468 | 2 | 107.39% | 10776506 | 2 | 109.64% |
| 10754440 | 2 | 107.40% | 10754772 | 2 | 109.64% |
| 10754520 | 2 | 107.46% | 10618134 | 2 | 109.72% |
| 10586156 | 2 | 107.47% | 10753980 | 2 | 109.74% |
| 10617018 | 2 | 107.58% | 10775724 | 2 | 109.80% |
| 10754674 | 2 | 107.58% | 10755246 | 2 | 109.85% |
| 10717278 | 2 | 107.59% | 10644322 | 2 | 109.90% |
| 10754588 | 2 | 107.61% | 10774696 | 2 | 109.94% |
| 10754760 | 2 | 107.62% | 10775264 | 2 | 109.95% |
| 10753914 | 2 | 107.64% | 10717108 | 2 | 110.00% |
| 10755004 | 2 | 107.66% | 10617700 | 2 | 110.12% |
| 10755342 | 2 | 107.68% | 10567796 | 2 | 110.18% |
| 10761944 | 1 | 107.71% | 10755146 | 2 | 110.21% |
| 11212871 | 2 | 107.72% | 10755282 | 2 | 110.40% |
| 10776484 | 2 | 107.72% | 10755352 | 2 | 110.64% |
| 10645236 | 2 | 107.73% | 10754780 | 2 | 110.71% |
| 10775486 | 1 | 107.77% | 10775104 | 2 | 110.94% |
| 10754688 | 2 | 107.86% | 10775294 | 2 | 111.08% |
| 10778080 | 2 | 107.88% | 10755968 | 2 | 111.16% |
| 10754036 | 2 | 107.98% | 10755278 | 2 | 111.37% |
| 10717270 | 2 | 107.99% | 10755000 | 2 | 111.58% |
| 10717168 | 2 | 108.01% | 10775050 | 2 | 111.64% |
| 10775350 | 2 | 108.02% | 10775514 | 1 | 111.80% |
| 10775738 | 2 | 108.08% | 10754568 | 2 | 111.85% |
| 10755286 | 2 | 108.16% | 10755132 | 2 | 112.93% |
| 10774860 | 2 | 108.16% | 10753984 | 2 | 112.97% |
| 10774828 | 2 | 108.18% | 10758386 | 1 | 113.57% |
| 10758054 | 1 | 108.29% | 10758436 | 1 | 113.80% |
| 10754580 | 2 | 108.30% | 10717226 | 2 | 113.84% |
| 10617588 | 2 | 108.30% | 10717022 | 2 | 114.22% |
| 10755006 | 2 | 108.32% | 10775298 | 1 | 114.35% |
| 10717354 | 2 | 108.35% | 10755532 | 2 | 114.40% |
| 10687192 | 2 | 108.38% | 10567740 | 2 | 114.47% |
| 11213591 | 2 | 108.44% | 10717404 | 1 | 116.41% |
| 10717156 | 2 | 108.48% | 10625606 | 1 | 116.84% |
| 10755598 | 2 | 108.50% | 10757068 | 1 | 118.16% |
| 10754526 | 2 | 108.51% | 10756392 | 1 | 121.52% |

CONFIDENTIAL

RCPC00065235

# Exhibit J

CONFIDENTIAL

RCPC00065236

# Loan Default Activity Review Format

## Loan # 76505050001 — Status: in mod

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | yes | Loan was originated by MLN in 2006 and then serviced by HFN in 2007. Small income residential property with one or two tenants. Borrower says shows both working and also living at a different address in Cicero, IL. Collection notes don't indicate what phone numbers were called and stop changes between unable to skip trace and receiving calls and promises to pay from borrower. |
| 2 | Was the transaction history complete (as of loan set-up)? | yes |  |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | DNK | Property was appraised in 7-2006 at $355,000 for a loan made of $352,000 in 6-2006. Reason for default varied from tenants not paying to excessive obligations. Loss mitigation was discussed with borrower a few times but fall through until a recent loan mod was completed with a formal loan modification this month reducing the rate to 5.7% and deferring real interest rate adjustment to 2014. |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | minimal |  |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | maybe | No information in notes about bids charge notices. NC checks, or standard default efforts letters, though a few breach letters were mentioned. Hard to tell if collectors were blindly calling the same number without success or relying on the autodialer to reach a useless phone number. No indication of calling the borrower at work numbers or even verifying where the borrowers worked per the information on the loan application. Unable to tell the effectiveness. |
| 6 |  | N/A |  |
| 7 | Were REO / BK / foreclosure efforts appropriate? | N/A |  |
| 8 | Were the processes generally performed timely? | calls OK |  |
| 9 | Did you grade any of the process steps 'C'? | no |  |
| 10 | Was there adequate property inspection and preservation practices? | DNK |  |
| 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | maybe |  |
| 12 | Was there any major issues with the loan origination or default management of the loan? |  |  |

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 8/25/2006 | Loan closer for $352,000 with $355,000 appraised value. |
| 2 | 5/5/2007 | Reason for default- bad tenants |
| 3 | 8/15/2007 | Reason for default- excessive obligations |
| 4 | 1/15/2008 | To reinstate loan-discussed options to avoid foreclosure |
| 5 | 6/8/2008 | obtained financial info from borrower, possible loan mod, never received borrower's down payment for loan modification. |
| 6 | 12/9/2008 | Bwr received next trial period letter, approved borrower for 4 month trial loan mod agreement; received $2233 down payment |
| 7 | 1/12/2009 | Permanent mod agreement approved with 5.7% rate, new margin, new floor of a 7%, next ARM adjustment in 2014 |
| 8 | 3/14/2009 | Reason for default- curtailment of income |
| 9 |  |  |
| 10 |  |  |
| 11 |  |  |
| 12 |  |  |
| 13 |  |  |
| 14 |  |  |
| 15 |  |  |

## Loan # 76505050002 — Status: current

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | Y | Loan is for a one family condo unit, for $365,000, with original appraisal for $365,000. Bwrs are both teachers and claim reason for default was job loss & curtailment of income. Note timely follow up calls, attempts to obtain a loss mitigation workout, and attempts to bwrs to cooperate and requested a loan modification. Servicer approved a trial mod agreement in 11/08 and bwrs made required down payment, loan is now due for 4/1/09 payment. Current BPO value of $335,000 and UPB is $391,000 now. $391,000 after loan mod in place. Loan is now current on payments after loan modification put in system. Prior loan status showed 120 days delinquent. |
| 2 | Was the transaction history complete (as of loan set-up)? | Y |  |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | DNK |  |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | Y |  |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | Y |  |
| 6 | Were there any unnecessary F/C or BK delays? | N/A |  |
| 7 | Were REO / BK / foreclosure efforts appropriate? | N/A |  |
| 8 | Were the processes generally performed timely? | Y |  |
| 9 | Did you grade any of the process steps 'C'? | No |  |
| 10 | Was there adequate property inspection and preservation practices? | N/A |  |
| 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | Y |  |
| 12 | Was there any major issues with the loan origination or default management of the loan? |  |  |

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 4/30/2007 | Bwr asked why its given default, so servicer said did not escrow for it |
| 2 | 12/7/2007 | Reviewed for Bush rate freeze, LTV must be less than 97% |
| 3 | 6/9/2008 | Bwr asked about a loan mod, rate not adjusting till 10-09, contact servicer 60-90 days prior to adjust |
| 4 | 9/17/2008 | Bwr discussed establishing to save equity program |
| 5 | 10/2/2008 | Advised bwr owes 2 payments, they claim discussing loan mod with another company, bwr wants to cancel biweekly program, collect loan mod. |
| 6 | 10/9/2008 | Breach letters sent to bwrs |
| 7 | 10/14/2008 | Discussed options to avoid f/c. Loan mod agent contactor GMAC permanent mod approved with gmac, for default is |
| 8 | 10/25/2008 | loss of job and loss of income |
| 9 | 11/14/2008 | Report plan recommendation to invest and approved, both teachers with reduced income |
| 10 | 11/21/2008 | 3 month trial notification approved, BPO value of $335,000, UPB is $391,000, notes bwrs don't have enough $ to reinstate loan and financials do not support a repay plan. |
| 11 | 12/23/2008 | permanent mod approved with $4209 down pmt, reason for default- unemployment |
| 12 |  |  |
| 13 |  |  |
| 14 |  |  |
| 15 |  |  |

## Loan # 76505051841 — Status: FC

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | Y | ARM mtg on single family house serviced by Homecomings by one bwr. Original loan amt $246,600 and orig appraised was $274,000 in 2006. Servicer made numerous calls to bwr throughout default timeline but bwr was using funds to support a new business of a salon for many years. Bwr fell behind, service made several attempts at trial and permanent modifications attempted by servicer with bwr but failed to make the required down pmt towards modifications. Bwr has an extreme equity in home now of $2/16,000. Loan was referred to atty for foreclosure action in March 2009 after servicer gave bwr every chance to make good on down pmt to loan mod. |
| 2 | Was the transaction history complete (as of loan set-up)? | Y |  |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | dnk |  |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y |  |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | y |  |
| 6 | Were there any unnecessary F/C or BK delays? | n/a |  |
| 7 | Were REO / BK / foreclosure efforts appropriate? | n/a |  |
| 8 | Were the processes generally performed timely? | y |  |
| 9 | Did you grade any of the process steps 'C'? | n/a |  |
| 10 | Was there adequate property inspection and preservation practices? | y |  |
| 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | y |  |
| 12 | Was there any major issues with the loan origination or default management of the loan? | y |  |

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 1/20/2005 | FEMA announces disaster victims (through Rita's floods and storms) bwr received call to make Feb 08 pmt on mtg, no reason for default noted. |
| 2 | 1/11/2006 |  |
| 3 | 7/14/2008 | Bwr advised started a salon, excessive obligations, pmts for 2 months on mtg |
| 4 | 7/23/2008 | reason for default changed to curtailment of income |
| 5 | 8/4/2008 | Breach letter to borrower |
| 6 | 8/6/2008 | Bwr owns 2 salons, bwr lost husband but bwr has insufficient income to cover this mtg |
| 7 | 8/13/2008 | trial modification agreement for a trial, not enough $ to reinstate |
| 8 | 10/9/2008 | Breach letter to borrower |
| 9 | 10/15/2008 | Property inspection- 4 month thereafter |
| 10 | 3/10/2009 | loss mit agreement cancelled, bwr never made down pmt, acct approved for foreclosure action referred to atty 3/14/09 |
| 11 |  |  |
| 12 |  |  |
| 13 |  |  |
| 14 |  |  |
| 15 |  |  |

CONFIDENTIAL

RCPC00065237

## Loan # 7655569004 — Status: 120 dys

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 10/4/2007 | pmt dispute about posting of payment, rfd noted as servicing prob |
| 2 | 12/4/2007 | breach letter sent |
| 3 | 1/4/2008 | property inspection: breach letter |
| 4 | 1/16/2008 | FEMA declaration in property area due to severe storms |
| 5 | 2/13/2008 | pmt by phone for Jan installment |
| 6 | 3/14/2008 | FEMA declaration in property area due to severe storms |
| 7 | 3/25/2008 | borrowing 2 months to bail for delinquency, property inspection ordered |
| 8 | 9/5/2008 | loan sent to vendor to skip trace |
| 9 | 11/19/2008 | loan qualified for blanket modification program rfd not clear |
| 10 | 12/12/2008 | returned her contract check for down pmt; requested certified $ |
| 11 | 2/3/2009 | FEMA declaration in property area due to severe storms |
| 12 | 3/11/2009 | loss mit agreement cancelled, bwr failed to make payments |
| 13 | 3/11/2009 | change in bwr primary address but not changed on printout |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | Loan on SFR to 2 bwrs, he construction worker, she housewife. Original loan for 191,316; orig/val appraisal for $209,500 in 06/2006. Recent BPO in 9/08 for $139,000. Initial delinq by bwr due to confusion about payments made and still due. Servicer offered loss mit options a number of times and bwr was approved for loan mod but never made the required down payment. Reason for default not clear. Account now due for 09/01/08. HUD-dedlna at disaster in 02/2009; servicer should quickly refer to foreclosure. bwr does not make down payment for arrears and modification inspections were ordered, no information in history on results of inspection. No calls to verify employment noted in history. |
| 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | y | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts)? | y | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted)? | y | |
| 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | y | |
| 9 | Did you grade any of the process steps "C"? | no | |
| 10 | Was there adequate property inspection and preservation practices? | y | |
| 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | y | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | n | |

## Loan # 7655569580 — Status: REO

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 1/12/2008 | bwr stated work is slow, works in mobile building but as contractor, borrower address different than property address |
| 2 | 5/2/2008 | bwr complained that 2 pmts taken thru, double draft, servicer advised will not refund 2nd payment it will be applied to May pmt due |
| 3 | 7/4/2008 | breach letter sent |
| 4 | 7/15/2008 | loss mit standard letter sent explaining options to avoid f/c |
| 5 | 7/16/2008 | chg in bwr primary address |
| 6 | 8/11/2008 | bwr enclosed out of work for 2 months, expects to work next wk |
| 7 | 8/21/2008 | foreclosure referral reviewed and approved |
| 8 | 8/25/2008 | referred atty to start f/c action |
| 9 | 9/2/2008 | worst package sent to bwr; tries to avoid f/c |
| 10 | 9/24/2008 | first legal action, workout package again mailed to bwr |
| 11 | 11/21/2008 | foreclosure sale completed; no redemption period, property day |
| 12 | 12/4/2008 | foreclosure deed recorded, sale held |
| 13 | 12/5/2008 | started eviction proceedings; property vacated |
| 14 | 1/2/2009 | submit mktng plan, loss review, order inspection, order BPO property listed |
| 15 | 1/30/2009 | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | SFR property only, loan amount of $114,366 with orig appraisal of $144,000 in 09/2006. BPO in 09/2008 for $146,300 was first. BPO 01/2009 for $139,900 as is last. Bwr worked in aluminum siding business and was out of work, loss mitigation packages were offered but no response from bwr, bwr went through the collection, loss mitigation, foreclosure and REO processes smoothly and without delay. Borrower still owns a mobile home in Mascot TN which was orig bwr dwelling. Marketing startup, loss review BPO completed and property now listed. Investor may still be making whole if property sells for BPO value of $139,900 since loan balance is $112, $522 and foreclosure only took a few months to complete. |
| 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | dnk | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts)? | y | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted)? | y | |
| 6 | Were there any unnecessary FC or BK delays? | no | |
| 7 | Were REO / liquidation efforts appropriate? | y | |
| 8 | Were the processes generally performed timely? | y | |
| 9 | Did you grade any of the process steps "C"? | no | |
| 10 | Was there adequate property inspection and preservation practices? | y | |
| 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | y | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | no | |

## Loan # 7655569978 — Status: 120 days

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 8/2/2007 | borrower requested waiver of PPP to refinance; denied due to it is an investor loan |
| 2 | 11/9/2007 | chk returned NSF due to stopped payment, sent ltr to bwr. bwr promised pay by phone |
| 3 | 8/25/2008 | bwr did pay by phone |
| 4 | 10/10/2008 | ARM rmax & pmt change notice letter sent to bwr |
| 5 | 10/15/2008 | standard breach letter to bwr for now next month |
| 6 | 11/4/2008 | bwr advised income effected by stock market crash, doesn't know when can make payments, reason for default, business failure, potential loss of income. new story by bwr that he's been in hospital for 2 mos and affairs are being handled by an atty; no info noted on history but atty name and phone number now a reason for default is illness of bwr. bwr refused to give details on situation |
| 7 | 11/21/2008 | bwr advised income completed and approved, inspection requested |
| 8 | 12/12/2008 | sent loss mit pkge to bwr, he said his atty was working on |
| 9 | 1/14/2009 | BPO report received |
| 10 | 3/2/2009 | foreclosure review completed and approved, inspection requested |
| 11 | 3/11/2009 | referred to atty to start f/c action |
| 12 | 3/13/2009 | bwr advised income has dropped by 50% in last 6 mos, atty still working on loan mod documentation |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | Original loan for $495,000 in 11/2006 with orig appraisal of $580,000; bwr self employed as owner of Project Resources White Plains, bwr explained reason for default as cust effected income due to his business involvement with stock market and that he was in the hospital for two months. Servicer made standard loss mit offers to bwr but breach letters and loss mitigation letters to borrower, sent breach letters that went to standard foreclosure. Reason for default in history is not clear, was referred to foreclosure in this year after a number of attempts to complete a loan mod/loan failed; timely effort to review and approve loss mitigation. No info noted to refer to attorney. Servicer continue to talk to bwr about loss mit possibility. |
| 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | dnk | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts)? | y | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted)? | y | |
| 6 | Were there any unnecessary FC or BK delays? | not yet | |
| 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | y | |
| 9 | Did you grade any of the process steps "C"? | no | |
| 10 | Was there adequate property inspection and preservation practices? | y | |
| 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | yes | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | no | |

**CONFIDENTIAL**

RCPC00065238

**Loan #: 7392147757    Status: current**

| Time Line (Detailed) | Trans Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 4/14/2008 | bwr serviced who was not told she had a 2nd mtg, first mtg probably closed around the same time as 2nd lien | 1 | Was the servicing record history provided (hard or soft copy)? | y | Property is a second home in FL with a $150K HELOC funded in 2006, with a $550,000 1st lien ahead of this loan. The loan is now due for the 2/20/09 pmt and bwr advised that some of the clients who owe their concrete business money have been slow in paying to them. Servicer should continue to monitor the status of the first mortgage regularly. |
| 2 | 7/18/2008 | RFD: curtailment of income/bwr lives in Massachusetts, mtg property is second home in Jupiter FL | 2 | Was the transaction history complete (ies of loan set-up)? | y | |
| 3 | | | 3 | Was the level of customer service appropriate, including A/M change notifications? | y | |
| 4 | | | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y | |
| 5 | | | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | y | |
| 6 | | | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | | | 7 | Were REO liquidation efforts appropriate? | n/a | |
| 8 | | | 8 | Were the processes generally performed timely? | y | |
| 9 | | | 9 | Did you grade any of the process steps "C"? | n/a | |
| 10 | | | 10 | Was there adequate property inspection and preservation practices? | n/a | |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | no | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

**Loan #: 7392148789    Status: liquidated**

| Time Line (Detailed) | Trans Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/20/2006 | bwr advised she wants out of this loan and pmts probably closed around the same time as 2nd lien. pmts were reversed from this loan and reapplied to other loan on this property #7392150266 | 1 | Was the servicing record history provided (hard or soft copy)? | y | Borrower lives on South La Brea Ave and mortgaged property is on Avallon Blvd in Los Angeles. Loan is a second lien Borrower claims she was tricked at closing and didn't know she had a first and second lien on property. Owed the loan indicates she signed off on Feldman Law Center representing her at the closing. This is a 2 lien residence with a HELOC/second with a $90K credit limit that went up to $170,280. Orig subpriced was $450,000 in 2005. BPO obtained in 9/2008 indicated a recommended list price of $319,000. |
| 2 | 7/6/2007 | bwr advised the can no longer make pmts on this loan and can't refinance the loan, wants to speak to loss mit, RFD - servicing problem? Bwr will never unable to sell property and pmt is getting too high. RFD changed to other | 2 | Was the transaction history complete (ies of loan set-up)? | y | |
| 3 | 8/30/2007 | change in primary bwr address noted in history bur to what? | 3 | Was the level of customer service appropriate, including A/M change notifications? | dnk | Numerous reasons for default mentioned in history: didn't know there was two mtgs; curtailment of income; loss of job; pmts too high; family stopped helping financially; tenant in rental unit stopped paying. No follow up on status of rental unit owing the entire history, no mention of verifying employment or loss of. borrower change in mailing address but inspection results not indicated in history provided as to current occupants. Little if any communication with 1st lien holder who is probably HFN also. Collector attempts appear to be the usual autodial calls, but no indication of any live calls made to house or to job. borrower advised numerous requests for completed financials regarding a workout, bwr requested pmts lower interest rate and a loan mod for the HELOC but no turned down by the servicer. bwr stated sit and just wants to away from property.Servicer sent settlement letter offering to pay $76K debt for $6K. Loan was charged off at end of Jan 2008, recovery dept should follow up for short sale or other recovery. communicate with first lien holder. |
| 4 | 10/12/2007 | pmt was reversed from other loan and reapplied to this loan, seems to be a recurring problem | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | maybe | |
| 5 | 12/28/2007 | RFD changed to excessive obligations | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | maybe | |
| 6 | 6/27/2008 | bwr advised again that at time of closing she was unaware that she had a first and second lien on the property | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | 7/14/2008 | bwr advised that her duplex tenant is not paying her rent, requested consideration for a loan mod to help her keep property | 7 | Were REO liquidation efforts appropriate? | n/a | |
| 8 | 7/15/2008 | RFD changed to curtailment of income, first lien has been set up with trial modification, bwr claims was cheated for the 2nd mtg, earns $3k monthly and has been borrowing from relatives to help pay loans, wants to set up a loan mod on the second lien servicer notes file not able to mod loan since it is a LOC and monthly pmt would increase and bwr cannot afford; higher pmt that had also requested forgiveness of $30 K of UPB, not approved | 8 | Were the processes generally performed timely? | yes | |
| 9 | 8/4/2008 | | 9 | Did you grade any of the process steps "C"? | | |
| 10 | 8/21/2008 | BPO rec'd as recommended list price of $319,000 as-is | 10 | Was there adequate property inspection and preservation practices? | dnk | |
| 11 | 9/12/2008 | bank charge off debt | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | OK | |
| 12 | 10/3/2008 | RFD changed to payment dispute | 12 | Were there any major issues with the loan origination or default management of the loan? | y | |
| 13 | 10/8/2008 | note to history that bwr is unwilling to sell property and wants to offended again if the servicer will work with her, she plans to vacate. RFD changed to curtailment of income | | | | |
| 14 | 12/4/2008 | servicer sent ltr to borrower offering settlement of 2nd lien for $6500.00 | | | | |
| 15 | 1/28/2009 | charge of completed, recovery should follow up for settlement or repayment plan, determine status of first lien. | | | | |

CONFIDENTIAL

RCPC00065239

## Loan # 7392151197  Status: Liquidated

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 11/18/2005 | HELLOCin for $100,350 on townhome purchase appraised at $400,000 |
| 2 | 3/30/2007 | Ifm from bwr authorizing his wife to handle arrangements on loan |
| 3 | 7/15/2008 | Ifm for bwr requesting the contact servicer; unable to contact by phone |
| 4 | 7/28/2008 | history w/notes provided; payoff figures to bwr; no reason indicat note to history indicates HFN is first lien holder, writing for them to order BPO. No indication of calls by 2nd lien servicer to the first lien servicer or balter for updated status. |
| 5 | 8/4/2008 | history indicates inspection results received, but not detailed in history |
| 6 | 8/8/2008 | bwr evicted pmts too high, neg financials, no funds for pmt, trying to achieve a short sale of property, reason for default, excessive obligations |
| 7 | 8/13/2008 | servicer rec'd info; pkge for short sale from bwr, reason for default is stated as multiple issues: curtailment of income, unemployment (reason letter to bwr |
| 8 | 8/22/2008 | servicer notes analysis of loss mit financial package, ordered BPO, reviewed offer/listing for short sale. RFD curtailment of income and variables on equity left (+24k-389) after 1st lien to justify a foreclosure on the 2nd lien. |
| 9 | 9/10/2008 | short sale approved for $4520 against balance due of $99,695 |
| 10 | 9/16/2008 | notes indicate HFN value $163,000 with short sale and leaves 4.5% for this 2nd lien |
| 11 | 12/1/2008 | reject reason due to borrower refused to contribute? |
| 12 | 2/24/2009 | charge off completed, cre fees and costs exist on the loan |
| 13 | 2/25/2009 | another offer of a short sale with offer of $190K and $4520 goes to 2nd lien, servicer issued approval letter to bwr, continue to follow up |
| 14 | 3/20/2009 | |
| 15 | | |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | dnk |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | y |
| 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | Were REO / liquidation efforts appropriate? | y |
| 8 | Were the processes generally performed timely? | y |
| 9 | Did you grade any of the process steps "C"? | no |
| 10 | Were there adequate property inspection and preservation practices? | no |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no |
| 12 | Were there any major issues with the loan origination or default management of the loan? | no |

Comments: Second lien for $100K, history reports HFN as first lien holder, so Res Cap is servicing both liens, there should be coordination on the handling of the debts. Servicer notes the usual collection calls to bwr, can't tell from history if calls were made to work and home phone numbers; bwr authorized wife to discuss loan although she is not legally liable for the note. Org pmt of first lien was $308,650, sale, and appraised value was $400,000 with purchase price of $400K in 2005. Reason for default include curtailment of income from job & non worker whose tax return showed $62K in wages at time of application, history tells a few attempts by the bwr to complete a short sale thru the first lien holder at the end of 2008 and the beginning of 2009. There is no indication in the loan history that the first lien holder HFN was contacted to confirm the terms of sale & the amount of $4250 appears from the history to be what the first lien holder will give to the second lien from the short sale. After a few cancelled short sales the history indicates in March 2009 that short sale may take place in the near future. The servicer charged off the second lien and transferred the account to recovery. Recovery dept should follow up for the short sale proceeds, if any.

## Loan # 7392154005

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 4/9/2008 | Ifm for bwr that HELLOC line has been frozen due to drop in MV and equity in property |
| 2 | 6/26/2008 | bwr evicted change in income due to job loss? JaP and property is now for sale for $1-3 million Claims he hasn't worked in a year |
| 3 | 7/18/2008 | notes change in borrower primary address but pmt/col shows mailing and property address as the same notes indicate prop inspect received, no info about findings in history |
| 4 | 8/5/2008 | BPO value by MURICOR indicates a recommended list price of $1,180,000.00 |
| 5 | 8/27/2008 | history notes inspections stopped due to 2nd mortgage; what is rationale for cessation of process steps "C"? |
| 6 | 9/29/2008 | Ifm from bwr that short sale offer is for $400K purchase price by Mr. Ramirez; copies of bwr financial package received on 10/28 with hardship letter and bank statement reasons for default JaP loss and 2 litigation cases requiring pmt of legal fees. Review of initial loan appl info by bwr revealed that bwr had owned 5 properties free and clear and 2 or 3 more with mortgages at time of application. No indication of discussion of this by servicer with bwr |
| 7 | 10/23/2008 | settlement offer sent to bwr for $297,500 for UPB of $486,000 |
| 8 | 1/7/2009 | charge of completed, servicer transferred to recovery dept |
| 9 | 1/26/2009 | Did notes sent to bwr |
| 10 | 1/26/2009 | |
| 11 | 1/28/2009 | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | n/a |
| 2 | Was the transaction history complete (as of loan set-up)? | dnk |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | maybe |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | maybe |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | maybe |
| 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | no |
| 9 | Did you grade any of the process steps "C"? | no |
| 10 | Were there adequate property inspection and preservation practices? | maybe |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | yes |
| 12 | Were there any major issues with the loan origination or default management of the loan? | maybe |

Comments: this loan is a second lien for $486,000 on SFR in Wellington, FL. This borrower had 2-3 other liens on the property based on the initial application information. Also, list of real estate owned at time of application noted 4-5 properties owned free and clear. The automated calls were made to bwr, bwr advised he lost his construction job and has been OOW for a year. Loan history indicates attempts at short sale in half 2008 but HM through ordered by servicer in 9/2008 indicates a recommended list price of $1,180,000; however, the borrower forwarded a short sale offer of $400K in 10/2008. No indication of servicer communicating the $400K with the first lien holder to determine status of loan, no discussion with borrower the fact that their loan application showed 4-5 other properties owned free and clear that could have been used to pay this mortgage? In 01/2009 servicer sent to borrower offering to settle the debt for $297,500; but no indication of interest from bwr. Loan was charged off in 2009 and transferred to recovery. Recovery should follow up for potential funds from a short sale.

CONFIDENTIAL

RCPC00065240

## Loan # 7392165085 — Status: Liquidated

### Time Line (Detailed)

| Line | Tran Date | Description |
|---|---|---|
| 1 | 10/9/2007 | bwr inside test property address wrong, should be in Vallejo, CA, claims sold property. |
| 2 | 9/6/2008 | BPO recvd with recommended list price of $550,000 for 823 Tiper C1. However, all of the loan documents indicated that the mortgaged property is 119 Sageway, Napa. |
| 3 | 9/10/2008 | Equity analysis indicates negative $301,289 equity, this must be a second lien. |
|   | 9/19/2008 | History indicates that property was sold for $330,000 on 1/28/08, reverted to a beneficiary. Numerari senior lien foreclosed, no equity. However was this transaction concerning the correct mortgaged property 119 Sageway or the incorrect property 823 Tiper C1? |
| 4 | 9/26/2008 |  |
| 5 | 2/19/2008 | sent settlement offer to bwr, amount not mentioned in history |
| 6 | 10/27/2008 | Change off completed. |
| 7 | 2/19/2009 | 2/22/08 recovered 20% of balance by 3/14/08 |
| 8 |  |  |
| 9 |  |  |
| 10 |  |  |
| 11 |  |  |
| 12 |  |  |
| 13 |  |  |
| 14 |  |  |

### Questions

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)?? |  | Review of the small second lien indicates that bwr has made a number of comments that the property address for this loan, 823 Tiper C1, Vallejo is wrong because they sold that property at 119 Sageway Way, Napa. The credit file presented to me indicates in each document that the property address is 119 Sageway, Napa and the mailing address at the time of funding was 823 Tiper C1. Sage Way is the property address. The ResCap MortgageServ system appears to have the mailing and property addresses reversed. No real reason for default explained and the bwr did not pay off 04/2008 until the indication as to whether the borrower was called at home or work numbers, no financial information received, and there is no indication that since lien pointed out in 2007 anyone investigated the bwr's claim that the property address was wrong. Servicer needs to review this loan and check all the records to determine what property should be the mortgaged property and also check with any senior lien holders. How did the senior lien actually foreclose on this property. In January 2008 and this servicer knew nothing about it? Perhaps that mortgaged property had a senior lien and the mortgage property at 119 Sageway. A check with the title company to determine the current lien holders is also important. If it's found that the servicer charged off the loan because it thought it had no property had been foreclosed on, the loan must be put back on the books and the first correct details of the property put on the system. |
| 2 | Was the transaction history complete (as of loan set-up)?? | y |  |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | dnk |  |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no |  |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | n/a |  |
| 6 | Were there any unnecessary FC or BK delays? | no |  |
| 7 | Were REO / liquidation efforts appropriate? | n/a |  |
| 8 | Were the processes generally performed timely? | yes |  |
| 9 | Did you grade any of the process steps "C"? | yes |  |
| 10 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no |  |
| 11 | Was adequate property inspection and preservation practices? | no |  |
| 12 | Were there any major issues with the loan origination or default management of the loan? | yes |  |

## Loan # 7392165502 — Status: Liquidated

### Time Line (Detailed)

| Line | Tran Date | Description |
|---|---|---|
| 1 | 3/22/2000 | bwr's broker called to advise that bwr cannot afford current interest rate. It seems it took the servicer a number of months to research and correct the issue on the bwr's behalf, should have taken less time by just reviewing the loan note and making the adjustments by phone after the loan was set-up. |
| 2 | 10/19/2000 | request for contact letter sent to bwr |
|   |  | Reason for default: curtailment of income, bwr advised: work has been curtailed, bwr won't be able to make any more payments, servicer requested financials, bwr refused, told servicer to call his mother, has property up for sale. |
| 3 | 3/21/2008 |  |
| 4 | 4/20/2008 | breach letter to bwr |
| 5 | 6/23/2008 | note to individual that equity analysis indicates no equity wrt property, the photos make it not place off advised bwr of workout options by phone, mailed loss mit page |
| 6 | 6/25/2008 | bwr advised he is working with first mtg on completing a short sale |
| 7 | 7/17/2008 |  |
|   |  | in from bwr stating curtailment in income and tenants will be moving out of property. Will not be able to make any more payments on property. Refused to set up a short sale. |
| 8 | 8/6/2008 |  |
| 9 | 8/24/2008 | recd answers from bwr regarding short sale of property |
| 10 | 8/27/2008 | full change off completed by servicer |
|   |  | no evidence in loan history provided of further contact with bwr |
| 11 | 3/27/2008 | release of this second lien |
| 12 |  | history notes no foreclosure activity |
| 13 |  |  |
| 14 |  |  |
| 15 |  |  |

### Questions

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)?? |  | This is a second lien on a property in Riverside CA, servicer notes many call attempts with fairly up to date comments until the bwr who explained has income curtailed. his line of work not mentioned in the loan history or why it was curtailed. Bwr sent letters in 2/08 that this loan meant his lease would end and were moving out. No further details on tenants in history. Comments in history regarding first lienholder accepting a short sale for a loss as sales price of $388,000. No indication of recovery efforts prior to charge off. |
| 2 | Was the transaction history complete (as of loan set-up)?? | y |  |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | dnk |  |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no |  |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |  |
| 6 | Were there any unnecessary FC or BK delays? | no |  |
| 7 | Were REO / liquidation efforts appropriate? | no |  |
| 8 | Were the processes generally performed timely? | ok |  |
| 9 | Did you grade any of the process steps "C"? | n |  |
| 10 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | n |  |
| 11 | Was adequate property inspection and preservation practices? | y |  |
| 12 | Were there any major issues with the loan origination or default management of the loan? | y |  |

## Loan # 7392165734 — Status: Liquidated

### Time Line (Detailed)

| Line | Tran Date | Description |
|---|---|---|
| 1 | 5/7/2008 | bwr called unable to make pmts and property for sale, tenant made too much money to qualify to sell RFD in file, curtailment of income |
| 2 | 5/19/2008 | realtor called, had prop listed for $374K, no offers, bwr requested deed in lieu, vacant since tenant moved out 3 mos ago. |
| 3 | 11/4/2008 | BPO received with recommended list price of $310,000 as is |
| 4 | 1/29/2008 | Credit file has copy of listing agreement for $300K, bwr assessed realtor advised that first lienholder does not accept $15,000 for release of this second lien. |
| 5 | 1/29/2009 | history notes no foreclosure activity |
| 6 | 3/5/2009 |  |
| 7 |  |  |
| 8 |  |  |
| 9 |  |  |
| 10 |  |  |
| 11 |  |  |
| 12 |  |  |
| 13 |  |  |
| 14 |  |  |
| 15 |  |  |

### Questions

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)?? |  | On original loan sign in credit file bwr was living in Richmond, CA and mailing address indicates mailing address outside this area. It seems to be a mistake and actually be Richmond CA? HELLOC bwr as a second mortgage for $150k. Limit with UPB of $149,882.03, reasonable for default has curtailment of income and vacancy by tenant. Borrower doesn't live in mtg property. Most recent BPO in 11/2008 indicates value of $310,000. Bwr offered deed in lieu, bwr provides financial info, copy of listing agreement that no sale! offers from purchasers is noted. If any communication with bwr noted. Final entries on history do not indicate that loan was charged off system yet. Handle if any property inspections not indicated on loan history. Noted that first lien accepted only $15,000 for the release of 2nd lien from GMAC/M, possible pursuit of deficiency judgment on this second lien? |
| 2 | Was the transaction history complete (as of loan set-up)?? | y |  |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | dnk |  |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y |  |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |  |
| 6 | Were there any unnecessary FC or BK delays? | n/a |  |
| 7 | Were REO / liquidation efforts appropriate? | n/a |  |
| 8 | Were the processes generally performed timely? | n |  |
| 9 | Did you grade any of the process steps "C"? | n |  |
| 10 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | n |  |
| 11 | Was adequate property inspection and preservation practices? | n |  |
| 12 | Were there any major issues with the loan origination or default management of the loan? | y |  |

CONFIDENTIAL
RCPC00065241

## Loan # 7392166825 — Status: current

| Time Line (Detailed) | Status | Tran Date | Description |
|---|---|---|---|
| 1 | current | 7/17/2008 | Suspected further draws on line of credit due to delinquency |
| 2 | | 12/3/2007 | inactivate draw after payment receipt |
| 3 | | 5/25/2007 | reason for default reported as illness by mortgagor |
| 4 | | 11/19/2007 | sent certified letter to bwr re: no contact made |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (ie of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | dnk |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | n/a |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | n/a |
| 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | y |
| 9 | Did you grade any of the process steps "C"? | n |
| 10 | Was there adequate property inspection and preservation practices? | y |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | n |
| 12 | Were there any major issues with the loan origination or default management of the loan? | n |

Comments: This is a second lien for a SFR in CA, original balance of $260,000, has kept the loan current except for a few late payments. Servicer has made the routine calls and the routine notices when payments were late, and took 2m for phone. Original appraised for $768,000, property purchased for $775,847. 1st lien for $359,935.

## Loan # 7392166844 — Status: liquidated

| Time Line (Detailed) | Status | Tran Date | Description |
|---|---|---|---|
| 1 | liquidated | 7/17/2008 | breach letter sent |
| 2 | | 7/30/2008 | inspection requested |
| 3 | | 8/1/2008 | loss mit pkge sent to bwrs |
| 4 | | 8/4/2008 | spoke with wife, she could not make pymt arrangements |
| 5 | | 8/24/2008 | loss mit pkge sent to bwrs |
| 6 | | 9/24/2008 | loss mit pkge sent to bwrs |
| 7 | | 10/28/2008 | loss mit pkge sent to bwrs |
| 8 | | 11/12/2008 | settlement offer related to bwrs for $35,519 in certified funds |
| 9 | | 11/21/2008 | loss mit pkge sent to bwrs |
| 10 | | 11/24/2008 | full charge off |
| 11 | | 3/19/2009 | history mentions Chapter 7, no other information review for disch |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (ie of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | dnk |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | almost |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | OK |
| 6 | Were there any unnecessary FC or BK delays? | OK |
| 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | n/a |
| 9 | Did you grade any of the process steps "C"? | n/a |
| 10 | Was there adequate property inspection and preservation practices? | yes |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | yes |
| 12 | Were there any major issues with the loan origination or default management of the loan? | no |

Comments: 11/2005 appraised report indicated a $880,000 value, this loan is a second mortgage. During OK, loan for $142,000, was charged off. Servicer in 2003 after a number of no communicating frequently with servicer. Bwr lives in Daphne Alabama and owns this property in 3-4 blocks... reason for default not relief, contacts with borrower, did not mention calls to work. loan was charged off after 120 days delinquent as a second lien. insufficient information in loan history to determine status of lien. Borrower is self servicing/D owner at Clarion Furniture Fair in Mobile, AL.

## Loan # 7392168944 — Status: liquidated

| Time Line (Detailed) | Status | Tran Date | Description |
|---|---|---|---|
| 1 | liquidated | 3/14/2008 | unable to establish contact with borrower |
| 2 | | 3/21/2008 | FEMA declared disaster due to storms and flooding |
| 3 | | 4/22/2008 | skip trace resulted in no phone number found |
| 4 | | 6/19/2008 | breach letter sent to bwr |
| 5 | | 6/24/2008 | automated BPO ordered |
| 6 | | 7/1/2008 | reviewed equity position with negative $54,000 |
| 7 | | 8/19/2008 | BK filed, Chapter 7, set up pet petition payment plan; loan in 180+ days delinquent, unclear status of senior lien; escalate to liquidation |
| 8 | | 9/12/2008 | loss mit pkge sent to bwrs |
| 9 | | 11/22/2008 | full charge off completed |
| 10 | | 8/5/2009 | Chap 7 BK discharged; awaiting trustee report |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (ie of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | dnk |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | yes |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | ok |
| 6 | Were there any unnecessary FC or BK delays? | ok |
| 7 | Were REO / liquidation efforts appropriate? | yes |
| 8 | Were the processes generally performed timely? | no |
| 9 | Did you grade any of the process steps "C"? | yes |
| 10 | Was there adequate property inspection and preservation practices? | yes |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | yes |
| 12 | Were there any major issues with the loan origination or default management of the loan? | no |

Comments: Loan is a 2nd lien HELOC for original amt of $267,000 on 7/27/06, first lien estimated at $407,000, original appraised of $750,000 in 2006, owner occupied, stated income is/... not employed borrower is Homecoming's 'N', self employed borrower owner of Sports, Imports and Classics in A/phoenix and... business called Devils Peak. Limited contact with borrower. foreclosure... information lost relief or loss borrower then Chapter 7 review of BK and BK was discharged recently, recovery department will... situation... at 180 days delinquent the second lien was charged... continue to monitor status of 1st mortgage BPO obtained on 6/26/08 indicated value of $505,00 as is, and combined liens total more than $500,000.

## Loan # 7392968681 — Status: 90 days

| Time Line (Detailed) | Status | Tran Date | Description |
|---|---|---|---|
| 1 | 90 days | 3/21/2008 | ltr to bwr HELOC frozen due to decline in equity |
| 2 | | 6/9/2008 | inspection requested but results not livable in the house |
| 3 | | 6/25/2008 | ltr advised bwr of death in family, RFD cut/default |
| 4 | | 8/5/2008 | living with them |
| 5 | | 8/6/2008 | BPO report received indicating recommended list price of $199,000 |
| 6 | | 8/18/2008 | Lpstv analysis indicated no equity, negative equity of $198,000 |
| 7 | | 8/20/2008 | breach letter to bwr |
| 8 | | 9/?/2008 | inspected requested for possible modification, no equity to offer for forec |
| 10 | | | bwr completed to say that he wants to obtain a loan mod but... after months of review and calls by bwr a loan mod was registered requiring a down payment of $305.59 by 3/30/09, low mte and maturity of 2035, lowers pmt by only $45 per month |
| 11 | | 2/20/2009 | inspection completed |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (ie of loan set-up)? | n |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | no |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | maybe |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | n/a |
| 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | no |
| 9 | Did you grade any of the process steps "C"? | maybe |
| 10 | Was there adequate property inspection and preservation practices? | y |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | some |
| 12 | Were there any major issues with the loan origination or default management of the loan? | yes |

Comments: Borrower's reason for default was loss of job in August 2008 and death in family. He called the servicer repeatedly for months to get a workable loan modification completed and a modification was finally created and presented to the borrower in February 2009. Borrower is still unemployed and has to contribute $305 towards his down payment so the modification is not certain. Loss mitigation will follow up for the down payment and executed documents. Poor handling of the borrower regarding customer service and trying to handle the modification efficiently. He deals/was on hold for 45 minutes when he called the servicer many times, and no one's making an effort asking about the status of the workout agreement. The bwr was evidencing his concern about the servicer and making an effort to follow up and do what's necessary to keep his home. The bwr calls and requests for updates on the loan (most agreement) should have been handled better.

CONFIDENTIAL

RCPC00065242

## Loan # 744654582 — Status:

**Time Line (Detailed)**

| # | Tran Date | Description |
|---|---|---|
| 1 | 10/31/2006 | Bwr advises death of son in law funeral expenses RFD |
| 2 | 11/17/2006 | post breach workout ltr sent to bwr - 3 borrowers on loan |
| 3 | 1/9/2007 | repayment plan solicited by collector |
| 4 | 3/27/2007 | per BANKO bwr filed Chapter 7 BK |
| 5 | 6/15/2007 | referred to MFR |
| 6 | 6/21/2007 | BK ... bwr letters sent to borrowers |
| 7 | 7/13/2007 | Chapt 7 BK discharged, RFD excessive obligations |
| 8 | 12/9/2008 | bwr rept help but refused to give updated financial information |
| 9 | 1/7/2009 | bwr P/P arrears of $4,144 by end of month |
| 10 | 1/25/2008 | bwr called and requested a workout |
| 11 | 12/25/2008 | Loan referred to attorney for foreclosure action (Cal. Reconveyance) |
| 12 | 2/2/2009 | Fwd legal action completed |
| 13 | 2/4/2009 | NOD filed |
| 14 | | |
| 15 | 3/19/2009 | bwr was advised need financial info to review for workout |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (ies of loan set-up)? | n/a |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | y |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | unknown |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | unknown |
| 6 | Were there any unnecessary FC or BK delays? | unknown |
| 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | n/a |
| 9 | Did you grade any of the process steps "C"? | n/a |
| 10 | Was there adequate property inspection and preservation practices? | unknown |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | unknown |
| 12 | Were there any major issues with the loan origination or default management of the loan? | unknown |

**Comments:** This loan has three borrowers including the daughter of the borrower and coborrower. Her fiance's death and the fiance's expenses was a reason for default in late 2006. Other reasons for default were a complication of not receiving a modification. One of the borrowers filed Chapter 7 BK in March 2007 which was discharged in July 2007. There were some efforts to offer loss mitigation to the borrower but the borrower did not provide updated financial information when requested. There appears to be little if any contact with the borrower and coborrower and most current status is the daughter. After borrower failure to bring the loan current the loan was referred to foreclosure on January 27, 2008 with next pymt dte 11/1/2006. In March 2009 the borrower requested another workout which was advised to provide financials to move forward with review. The servicer was not able to get updated financial information to conduct a loss mitigation analysis on the loan.

## Loan # 825351488 — Status:

**Time Line (Detailed)**

| # | Tran Date | Description |
|---|---|---|
| 1 | 10/31/2007 | bwr1 called to advise separated from bwr2, problem with pymt |
| 2 | 8/8/2007 | bwr failed to make payment - this is a 2nd lien on loan |
| 3 | 8/14/2008 | ltr to bwr no contact advise options to avoid F/C |
| 4 | 10/21/2008 | bwr advised divorce, property for sale, contact her for pmt idea |
| 5 | 10/30/2008 | Realtor sked listed at $30K, no offers to date |
| 6 | 11/19/2008 | bwr financial and borrower pymt status for review, short sale |
| 7 | 12/22/2008 | new financial info with short sale request |
| 8 | 12/22/2008 | offered bwr full modification by letter to bwrs |
| 9 | 1/9/2009 | want financial to get modification |
| 10 | 1/9/2009 | rec'd financial info for possible mod of loan |
| 11 | 2/19/2009 | approved for LMT, referred to loss mitigation, assess financials |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (ies of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | unknown |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | y |
| 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | n/a |
| 9 | Did you grade any of the process steps "C"? | n/a |
| 10 | Was there adequate property inspection and preservation practices? | y |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | unknown |
| 12 | Were there any major issues with the loan origination or default management of the loan? | unknown |

**Comments:** This loan is a second lien of UPB $20,230 on a SFH in Frisco TX. Only one insertion in the history that GMACM has for the first lien and no indication of any information regarding the disposition of the record of the second lien at foreclosure throughout the loan history. The borrowers are divorcing and the reasons for default include the death, unable to sell the property and excessive debt obligations. The servicer history shows many outbound calls but can't tell if message was left. No skip trace efforts in history. The loan was referred to foreclosure in December 2008 and is currently in active foreclosure status. The servicer did attempt loss mitigation a few times and the borrower has provided financial info but incomplete. In Dec 2008 the borrower requested consideration of a short sale, and then in Jan 2009 requested consideration for a loan modification and provided financial information. Notation on 2/19/09 states that the loan is approved for LMT and was referred to loss mitigation. History does not indicate a formal modification, foreclosure plan at a short sale status or a...

## Loan # 744653552 — Status: REO

**Time Line (Detailed)**

| # | Tran Date | Description |
|---|---|---|
| 1 | 12/4/2007 | breach letter sent to borrower |
| 2 | 12/24/2007 | borrower advised out of work and no funds to pay |
| 3 | 1/9/2008 | referred to loss mitigation |
| 4 | 1/9/2008 | skip trace results in no phone number |
| 5 | 1/23/2008 | loan approved for foreclosure |
| 6 | 2/15/2008 | sale scheduled for 4/1/2008 |
| 7 | 3/11/2008 | contacted bwr advised 3 pmts due, bwr advised working with ... |
| 8 | 3/11/2008 | LMT on loan most claims working ... |
| 9 | 3/31/2008 | received incomplete financial pkg from borrower, follow up ltr |
| 10 | 4/2/2008 | servicer unable to recommend options, borrower still unemployed |
| 11 | 9/25/2008 | property liquid vacant, winterization ordered |
| 12 | 9/29/2008 | approved for foreclosure BK discharged |
| 13 | 10/20/2008 | property is REO, to be listed and secured |
| 14 | 11/1/2008 | first legal action completed |
| 15 | 3/19/2009 | Sale completed |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (ies of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | Were there any unnecessary FC or BK delays? | no |
| 7 | Were REO / liquidation efforts appropriate? | y |
| 8 | Were the processes generally performed timely? | no |
| 9 | Did you grade any of the process steps "C"? | yes |
| 10 | Was there adequate property inspection and preservation practices? | y |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no |
| 12 | Were there any major issues with the loan origination or default management of the loan? | y |

**Comments:** This loan was for a non owner occupied property in Mound, MN. The borrower lived in Salina, TX. Unable to tell from history if the borrower was a second home type of investment property purchase and rest day for 11/1/07 payment. Borrower advised 4/1/08, foreclosure action put on hold. Borrower advised unemployed and unable to make payments. No mod type of loss mitigation or any service payment history workout is evident in the history. Workout financial packages were incomplete or servicer could not come up with a viable loss mit option. Property inspection in 2008 loan actually vacant and borrowers evident during the foreclosure period to try to avoid foreclosure. Foreclosure sale was extended from original 11/15/09 date to 3/19/09 and became REO. Property went to foreclosure on 3/19/09 and became REO. No information on redemption period in history.

## Loan # 765552831 — Status:

**Time Line (Detailed)**

| # | Tran Date | Description |
|---|---|---|
| 1 | | loan transfer to Homecomings from LSAMS |
| 2 | | bwr's atty requested loss mit pkdg |
| 3 | 8/6/2008 | approved for loss mit review RFD curtailment of income |
| 4 | 8/25/2008 | bwr requested loan modification had least mitig surplus income, no reason given |
| 5 | 10/6/2008 | breach letter sent |
| 6 | 11/7/2008 | contacted bwr advised 3 pmts due, bwr advised working with ... |
| 7 | 11/16/2008 | bwr advised on making pmts, spk to her atty |
| 8 | 11/22/2008 | bwr advised out making pmts, spk to her atty |
| 9 | 12/9/2008 | Loan mod group called to get status of loan mod transferred |
| 10 | 12/9/2008 | workout pkg sent to borrower |
| 11 | 12/29/2008 | loan mod group called to get status of loan mod transferred |
| 12 | | loan modification reviewed, borrower surplus income ... |
| 13 | 2/19/2009 | trial mod docs were executed, set up down payment and trial mod payments |
| 14 | 3/4/2009 | trial mod docs were executed, set up down payment and trial mod payments |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (ies of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | y |
| 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | y |
| 9 | Did you grade any of the process steps "C"? | no |
| 10 | Was there adequate property inspection and preservation practices? | y |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | y |
| 12 | Were there any major issues with the loan origination or default management of the loan? | y |

**Comments:** This loan is a second lien for a SFH owner occupied property in Newton, CT. There is no information on the first lien UPB, current status, or any communication noted with the first lien servicer. In Dec 2008 the servicer conducted an equity analysis and calculated a negative equity of $92K but no explanation provided for any RFD prior to late 2008. One of the reasons for default noted 180 days delinquent. RFD includes curtailment of income, borrowers obligations, and 'servicing problems' encountered. Borrower is retained by the property for loan modification but no reasoning noted in history. Borrower first requested help from the servicer in July 2008 but was turned down for a loan modification, with no good reason noted. Finally in January 2009 a loan modification group set up A 4 month trial modification was established in February 2009 and the executed documents were received from the borrower on 3/4/09. Notation on 3/4/09 is that a trial modification with the borrower and information noted in history about the second lien except for the negative equity of $92K.

CONFIDENTIAL

## Table 1

| Loan # | Status | Time Line (Detailed) | Tran Date | Description |
|---|---|---|---|---|
| 7655526673 | foreclosure | 1 | 5/29/2007 | bwr mailed $2K towards arrears w/o verification of bwr info, indicated |
| | | 2 | 6/14/2007 | returned chk for $2K, property inspection states owner occupied |
| | | 3 | 6/25/2007 | bwr advised this is a rental property, tenants able to pay |
| | | 4 | 6/26/2007 | repayment plan established for 4 month trial |
| | | 5 | 8/3/2007 | plan cancelled by servicer due to default |
| | | 6 | 9/12/2007 | loss mitigation foreclosure referral |
| | | 7 | 9/14/2007 | bwr reviewed for loan modification, inquired $4K in damages |
| | | 8 | 10/16/2007 | bwr requested loan modification, tenant moved out |
| | | 9 | 12/18/2007 | Chapter 7 BK filed by borrower, 59 month bk pmt plan |
| | | 10 | 12/4/2008 | loan mod denied 4 months after request due to active BK |
| | | 11 | 11/10/2008 | BK dismissed, bwr requested loan modification again |
| | | 12 | 2/26/2009 | undear if foreclosure sale completed or postponed till 3/26/09 |
| | | 13 | | |
| | | 14 | | |
| | | 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | The borrower advised that this is an income property and had to evict tenant and repair damages. No mention of a hazard insurance claim. Servicer set up repayment plan in June 2007 which was defaulted by borrower. Foreclosure was initiated in Dec 2007, bwr requested help and was reviewed for possible deed in lieu or short sale but neither materialized. In Oct 2007 bwr requested a loan modification, first legal action on loan completed on 12/18/07, on Chapter 7 BK filed by bwr, bk claim for 59 pay period. Unclear for this in 2008 loan mod request was denied 4 months after request due to active BK. Unclear why the BK process took the servicer so long. The proof of claim and motion for relief. Unclear if this borrower also filed a Chapter 13 BK from 176 pages history. Appears the loan foreclosure sale was either completed on 2/27/09 or postponed till 3/26/09. Unclear from history. No indication in history provided that an equity analysis was done. The servicer should have been more engaged. |
| 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | unclear | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | Were there any unnecessary F/C or BK delays? | y | |
| 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | n | |
| 9 | Did you grade any of the process steps "C"? | y | |
| 10 | Was there adequate property inspection and preservation practices? | n/a | |
| 11 | Were the processes generally completed/performed timely? | n | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | y | |

## Table 2

| Loan # | Status | Time Line (Detailed) | Tran Date | Description |
|---|---|---|---|---|
| 7655530707 | foreclosure | 1 | 3/6/2007 | bwr advised bwr1 was in car accident, pymts will be slow |
| | | 2 | 6/6/2007 | breach letter dated |
| | | 3 | 9/12/2007 | bwr was now 4 mos but now back, repay plan set up |
| | | 4 | 11/1/2007 | repay plan cancelled due to no payments received |
| | | 5 | 11/14/2007 | bwr2 claims will receive settlement check in Dec 2007 to pay loan current, no settlement check noted history, does not indicate servicer asked bwr if they ever received the chk or what they did with the funds |
| | | 6 | 12/1/2007 | borrower can't make payment till receive tax refund; no mention of settlement chk, tenant moved out, undear if borrower lives at property or rents out the entire property |
| | | 7 | 2/7/2008 | REO liquidation initiated |
| | | 8 | | |
| | | 9 | 4/8/2008 | servicer recorded financial reform, set up another repay plan |
| | | 10 | 5/14/2008 | trial mod approved, then cancelled again 5/21/08 for non pmt |
| | | 11 | 7/22/2008 | foreclosure approved, first legal completed |
| | | 12 | 9/12/2008 | mediation held & requested by bwr per CT state law |
| | | 13 | 10/9/2008 | pursuing bwr not again |
| | | 14 | 1/12/2009 | judgment entered, bwr requests loan mod for 4th or 5th time |
| | | 15 | 2/19/2009 | appears that foreclosure sale completed |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | The servicer tried to work with the borrowers while he was recovering from a car accident and he was out of work 4 months, months or a year depending on the collection comments with minimal income. The servicer offered 4 or 5 repayment or modification plans and the borrowers defaulted or did not qualify for any of these workouts. The borrower mentioned a large settlement check related to the car accident was expected in Dec 2007 but there was no inquiry made by the servicer in December 07 or January 08 about the check. After much delays from the workout attempts the servicer moved to foreclosure in July 2008, then subsequently requested another modification in August 08 and then another modification in October 2008. The servicer should have set reasonable timeframes and worked to enforce them and move to foreclosure quickly. The fact that there may have been tenants to supplement the cash flow made it less accessible to delay the foreclosure action so many plans. Unclear from the history if the foreclosure sale was completed on 2/19/09, with 166 pages history for loan. |
| 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | Were there any unnecessary F/C or BK delays? | no | |
| 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | no | |
| 9 | Did you grade any of the process steps "C"? | y | |
| 10 | Was there adequate property inspection and preservation practices? | n/a | |
| 11 | Were the processes generally completed/performed timely? | no | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | no | |

## Table 3

| Loan # | Status | Time Line (Detailed) | Tran Date | Description |
|---|---|---|---|---|
| 7655531291 | REO sold | 1 | 5/25/2007 | 90 days delinquent per history |
| | | 2 | 6/8/2007 | bwr requested w/o pkg, RFD is 6 ismth of mother in law and curtailment of income as a realtor |
| | | 3 | 6/13/2007 | referred to atty for foreclosure initiation |
| | | 4 | 7/3/2007 | bwr requested payoff figures, advised second mtg already in foreclosure |
| | | 5 | 7/30/2007 | bwr referred for Chapter 13 BK |
| | | 6 | 12/27/2007 | motion by bwr to convert to Chapter 7 BK |
| | | 7 | 1/30/2008 | conflicting reports about property being vacant or occupied, not dear if second lien from realtor foreclosed |
| | | 8 | 5/12/2008 | bwr calls and advises do not want property, sell or short sale? |
| | | 9 | 5/21/2008 | first legal action completed |
| | | 10 | 6/25/2008 | undear if foreclosure sale completed |
| | | 11 | 6/30/2008 | eviction initiated |
| | | 12 | 12/16/2008 | marketing plan approved almost 6 months after foreclosure sale |
| | | 13 | 2/13/2009 | REO property sale, no details on closing information |
| | | 14 | | |
| | | 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan was delinquent very quickly after becoming and the reasons for default were the death of a mother in law and curtailment of income in borrower's job as a realtor. There were several number of workout packages sent to the borrower but the borrower defaulted on each plan. Once the property was referred to foreclosure the bwr filed Chapter 13 BK in Oct 2007 and then moved to foreclose the bwr filed Chapter 13 BK in Oct 2007 and then moved to convert to Chapter 7 BK in Dec 2007 and was completed. No explanation why borrower was never able to reinstate this loan. There were scarce comments about a second mortgage in foreclosure that occurred on property as well. There was confusion in the history on whether this property was occupied or vacant and whether the property should be secured and winterized. The servicer's loss mitigation efforts were not successful and the foreclosure is history to have been advanced to REO sale status in June 2008. The marketing plan was approved in Dec 2008, several months after acquisition. The history notes that the REO was sold on 2/13/09 but no details on the sale price, net proceeds, or actions by the second mortgagee are mentioned. |
| 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | Were there any unnecessary F/C or BK delays? | no | |
| 7 | Were REO / liquidation efforts appropriate? | no | |
| 8 | Were the processes generally performed timely? | no | |
| 9 | Did you grade any of the process steps "C"? | y | |
| 10 | Was there adequate property inspection and preservation practices? | no | |
| 11 | Were the processes generally completed/performed timely? | no | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | no | |

CONFIDENTIAL

RCPC00065244

## Loan # 7655557489 — Status: In foreclosure

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer |
|---|---|---|---|---|---|
| 1 | 9/4/2007 | breach letter to bwr | 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | 9/17/2007 | bwr2 is teacher, not working in summer, loss of income | 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | 10/9/2007 | relative died & used for funeral, loss of income | 3 | Was the level of customer service appropriate, including ARM change notifications? | y |
| 4 | 11/28/2007 | repayment plan established | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y |
| 5 | 12/20/2007 | foreclosure approved | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | 1/9/2008 | repayment plan established again; rec'd partial down payment, cancelled; repayment plan run 12/20 to pay off third repayment plan 2/29/08 cancelled | 6 | Were there any unnecessary FC or BK delays? | |
| 7 | 2/14/2008 | breach letter/bankruptcy; no details; service subjected to plan that costs out arrears | 7 | Were REO liquidation efforts appropriate? | n/a |
| 8 | 4/14/2008 | debtor requests loan modification, can't until bitty filled | 8 | Did the processes generally performed timely? | |
| 9 | 10/2/2008 | servicer filed motion for relief 6 months after BK filing | 9 | Did you grade any of the process steps "C"? | no |
| 10 | 11/3/2008 | court case grants relief from stay | 10 | Was there adequate property inspection and preservation practices? | no |
| 11 | 12/9/2008 | initiated foreclosure action again | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | y |
| 12 | 12/17/2008 | note to history that NJ courts are experiencing delays of 22-25 weeks due to backlogs | 12 | Were there any major issues with the loan origination or default management of the loan? | no |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |

**Comments:** The borrower mailing address was Neptune, NJ and the mortgaged property was in Asbury Park, NJ, and the history did not indicate if this property was a vacation home or an income property. Husband's occupation not indicated in history; wife is a teacher. Reasons for default included funeral expenses and loss of teaching income during summer. The servicer attempted at least 3 workout efforts during the borrower delinquency. The borrower also requested a loan modification but this was not considered by the servicer per this history. The borrower filed bankruptcy in April 2008 but Chapter not indicated. It is not until November 2008 that the servicer files a motion for relief from stay. Loan is now in foreclosure and the courts will delay the case now for 22-25 weeks due to backlogs in cases. The servicer should have determined who occupies the property, updated financials, and began foreclosure immediately after the repay plan down payment was returned for insufficient funds. Also not clear why a loan modification was not fully explored.

## Loan # 7655557272 — Status:

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer |
|---|---|---|---|---|---|
| 1 | 9/11/2007 | servicer paid RE tax, charged servicer to previous servicer? | 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | 5/21/2008 | letter to bwr, requesting contact, near 30 days delinquent | 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | 9/5/2008 | history note 'vacant', no explanation | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | 10/14/2008 | foreclosure alternative - if it is rental property and his business partner abandoned their properties and bwr is 600 miles away with limited funds | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y |
| 5 | | Nothing mentioned by servicer about resolution - short sale, deed in lieu or other solution for this income property | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | | Bwr claims he has multiple rental properties; financial hardship. No indication if servicer checked for multiple loans to the bwr in the portfolio | 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | | | 7 | Were REO liquidation efforts appropriate? | n/a |
| 8 | 12/26/2008 | foreclosure approved | 8 | Did the processes generally performed timely? | y |
| 9 | 12/29/2009 | approved for 3 month trial modification | 9 | Did you grade any of the process steps "C"? | |
| 10 | 3/20/2009 | approved for 3 month trial modification with changes to interest rate, maturity date, P&I payment, etc. | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |

**Comments:** Borrower lives in Ohio and property is an investment property in Delaware. Borrower found fuck story is that he owns multiple income properties and this one is vacant and his business partner abandoned management of the property and left the borrower with no money. No indication in loan history about the servicer recommending sale of the house or deed in lieu. No current market valuation raised by the servicer noted in the history either, so can't tell if the property is marketable. The servicer did not file in foreclosure until bwr worked out a permanent loan modification with the borrower in March 2009 as the loan history ends. Borrower is due for October 2006 payment until the modification is updated in the system.

## Loan # 7655536274 — Status: REO sold

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer |
|---|---|---|---|---|---|
| 1 | 3/2/2007 | bwr and second got married, moved and disorganized; husband not on this loan per history; no info on new address or status of property in 1X | 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | 5/8/2007 | breach letter sent | 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | 7/17/2007 | inspection results rec'd; no indication throughout loan history about which hold, who resides in the property? Took financial info from bwr, real story of misestimates and out of work and loss of income; no update on the property in 1X and whether she is selling it | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | 7/19/2007 | 2nd mortgage is mentioned in this history but no details | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y |
| 5 | 8/29/2007 | referred to atty for F/C; Hope Now letter sent 11/28/07 | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | y |
| 6 | 11/16/2007 | | 6 | Were there any unnecessary FC or BK delays? | no |
| 7 | 12/12/2007 | sent bwr workout package; 10KEM bwr called (loan?) have down payment but not real thing about working or crop, also moved; Repay plan started; servicer says takes them 30-45 days to review for a modification; 30 day decline plan; Short sale review; bwr not clear advises can't do it modification; counselled to sell; servicer says financial info was not set up accurately for bwr reviewing | 7 | Were REO liquidation efforts appropriate? | y |
| 8 | 2/4/2008 | 1st legal action completed | 8 | Did the processes generally performed timely? | y |
| 9 | 4/23/2008 | foreclosure sale completed, redemption period, now bwr REO liquidation | 9 | Did you grade any of the process steps "C"? | y |
| 10 | 5/22/2008 | reviewing | 10 | Was there adequate property inspection and preservation practices? | no |
| 11 | 10/15/2008 | 1st legal action completed | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | unknown |
| 12 | 11/14/2008 | foreclosure sale completed, redemption period, now bwr REO liquidation | 12 | Were there any major issues with the loan origination or default management of the loan? | no |
| 13 | 1/27/2009 | winterized, secured, marketing, plan approved | | | |
| 14 | 2/12/2009 | REO sold, no details on proceeds or net loss or gain | | | |
| 15 | | | | | |

**Comments:** The servicer knew that the borrower had moved from the property 1X to a new home in San Diego, CA. The loan was an early payment default and should have been handled more proactively, especially if the servicer had more than 1 hazard or flood insurance or occupancy status or condition of the mortgaged property anywhere in the loan history. The servicer offered the borrower a number of loss mitigation workouts and each failed. There is no indication of the borrower wanting to keep the property and why the new husband wasn't put on an additional borrower in a possible loan modification. The servicer should have been able to investigate why the new husband wasn't... There is no mention of property valuation or equity analysis for the loss mitigation review. In Sept 2008 there was a FEMA declaration for a hurricane, but no mention of a hazard or flood insurance claim filed. Once all workout attempts had failed the servicer completed the foreclosure sale on 11/4/08. The REO property was rather quickly sold on 2/12/09, but no details on net proceeds were indicated in the history.

CONFIDENTIAL

RCPC00065245

**Loan #** 8253536745  **Status:** current

| Time Line (Detailed) | Status | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|
| 1 | current | 8/15/2007 | subordination approved for Wash Mutual Bank | 1 | Was the servicing record history provided (hard or soft copy)? | y | History indicates borrower due for the 3/23/09 payment as of 3/23/09 for this apparent second lien; no mention in history of status of first lien but a subordination to Washington Mutual Bank was approved on 8/15/07. Borrower had a number of reasons for default, family member illness, someone stole his checkbook, he didn't receive his monthly statements, his work hours were cut back and excessive obligations. The borrower requested setting up ACH account debits for the loan a number of times and not clear why the servicer failed to complete this request. An equity analysis on 2/23/09 indicates negative equity of $82K for the property but no information about the first lien. On 3/3/09 the borrower owed the November 2008 through Feb 2009 payments on a balance of $19,263, which became current by 3/23/09. |
| 2 | | 9/12/2007 | due 3 pmts, bwer send save rec'd statements but never called to | 2 | Was the transaction history complete (as of loan set-up)? | no | |
| 3 | | 9/27/2007 | loss mitigation referral | 3 | Was the level of customer service appropriate, including AVM change notifications? | no | |
| 4 | | | NO information in history about status of first lien | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y | |
| 5 | | 3/31/2008 | RFD family member illness and someone stole his checkbook | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | | |
| 6 | | 5/28/2008 | FNMA declaration for charms and tornado; no mention how it affected this loan | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | | 12/26/2008 | letter to bwer requesting contact servicer | 7 | Were REO / liquidation efforts appropriate? | | |
| 8 | | 1/7/2009 | bwer reviewed last up ACH payments, servicer slow to resp to request | 8 | Were the processes generally performed timely? | y | |
| 9 | | | RFD excessive obligations, now situation better | 9 | Did you grade any of the process steps "C"? | | |
| 10 | | 2/23/2009 | servicer only analysis indicates negative equity of $82K, no information on status of first lien in history provided | 10 | Was there adequate property inspection and preservation practices? | n/a | |
| 11 | | 3/3/2009 | RFD curtailment of income, no financial reserves, due for Nov, Dec, Jan and Feb payments | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | 3/23/2009 | as of history, history says borrower due for 3/26/09 payment; no indication when loan was brought current | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |

**Loan #** 8253530271  **Status:** delinquent

| Time Line (Detailed) | Status | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|
| 1 | delinquent | 8/15/2006 | bwer called asking about set up of ACH; no resolution | 1 | Was the servicing record history provided (hard or soft copy)? | y | This is a second lien on a home in Las Vegas NV. There is no indication in the history provided about the first lien status. The borrower R-2 was out of work, no savings and no resources. The borrower mentioned he gets some rental income but not specified from this property or another. How the servicer was contacted for loan modification with the first lien but no details. No equity analysis was done per the history, and the borrower owed 5 payments as of 1/9/2009 but there is no property value of $135K but there was no information on the first lien. Also in January 2009 an AVM indicated a property value of $135K but there was no information on the first lien. Also in January 2008 it appears that servicer approved a loan modification with reduced rate and payment and then states unable to get in contact with borrower to get a workout package. No indication in the notes about any less mitigation options discussed. It is unclear from the loan history if the borrower will actually make payments to the loan modification. The borrower is still reduced. An equity analysis at 180 days delinquent should recommend charge off if the borrower cannot comply with the payment terms of the modification. |
| 2 | | | bwer owes/b since Oct 08; no other income, has rental income but uses to live on | 2 | Was the transaction history complete (as of loan set-up)? | n/a | |
| 3 | | 12/5/2006 | No information in history about the first lien status | 3 | Was the level of customer service appropriate, including AVM change notifications? | n/a | |
| 4 | | 12/19/2008 | 1st mortgage but no money left to pay 20k lien; financial situation not detailed in history provided | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | | |
| 5 | | 12/22/2008 | rec'd borrower financial offers; no details in history | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | | 1/5/2009 | combined loan to value of first and second lien | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | | 1/9/2009 | code be almost a total loss | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | | 3/5/2009 | payments per new modification agreement | 8 | Were the processes generally performed timely? | y | |
| 9 | | | | 9 | Did you grade any of the process steps "C"? | | |
| 10 | | | | 10 | Was there adequate property inspection and preservation practices? | n/a | |
| 11 | | | | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | | | 12 | Were there any major issues with the loan origination or default management of the loan? | y | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |

CONFIDENTIAL

RCPC00065246

**Loan #** 744FC55093  **Status:** storm forbearance e? Due 9/1/08

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 1/14/2008 | force placed insurance issue, no details | 1 | Was the servicing record history provided (hard or soft copy)? | y | This is a first lien property in Galveston, TX, probably a condo or townhouse due to the low balance of $94K. Property sustained severe damage from Hurricane Ike in September 2008, but had wind, flood and Hurricane insurance coverage. Unclear from the history if the borrower and servicer had insurance coverage on property. The servicer placed the loan in a natural disaster forbearance while the borrower settled with the insurance companies. However, 6 months after the hurricane the history does not indicate where and when loss drafts will be received to cover the estimated $100K in repairs. Galveston city bar zoned the property and requires that the rebuilt 15 feet higher in order to do new permits. Borrower moved elsewhere and lost tenant, no payments made since hurricane struck. No indication by servicer history of any property inspection results, public insurance adjuster repair estimates, amount of loss drafts, or when repairs will start or be completed. Servicer advised bwr will have to establish approximate plan once property is rebuilt, but no specific information obtained by servicer on basic information related to loss drafts and repairs progress. |
| 2 | 2/5/2008 | skip trace, no new numbers, no contact with borrower, no property inspections or lock knocks done by servicer | 2 | Was the transaction history complete (as of loan set-up)? | n/a | |
| 3 | 4/25/2008 | change in borrow primary address, no further details | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 6/6/2008 | servicer advanced for delinquent taxes, as of March 2009 the escrow balance was negative $13,371.66 for taxes and insurance unpaid by borrower | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | 9/30/2008 | bwr advised house damaged by Hurricane Ike, requested pmt assistance, has insurance but advised has to advance funds to rebuild? | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 10/21/2008 | history states prop'y sustained collateral damage, his job affected temporarily, servicer will set up reduced disaster forbearance agreement, this property is in a federal disaster area | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | 11/17/2008 | bwr requested copies of all insurance policies, insurance agent? | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | 12/15/2008 | breach letter can't w/ba loan in forbearance? | 8 | Were the processes generally performed timely? | n/a | |
| 9 | 12/22/2008 | bwr advised house in mid zone, repairs estimate at $100K, have to raise house 15 feet, wants update on loss drafts- servicer had no details in history on status of loss drafts | 9 | Did you grade any of the process steps "C"? | no | |
| 10 | 1/29/2009 | contractor confused over 2 units and which ones are the property | 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | | | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | 2/4/2009 | | 12 | Were there any major issues with the loan origination or default management of the loan? | no | |
| 13 | 2/13/2009 | | | | | |
| 14 | 3/13/2009 | received $587 loss draft check? | | | | |
| 15 | | | | | | |

**Loan #** 744FC55093  **Status:** f/c moratorium

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 11/28/2007 | bwr requested modification, no reason indicated, no contact with borrower prior to this state in history | 1 | Was the servicing record history provided (hard or soft copy)? | y | The borrower had a number of reasons for default on this first-lien property, can't afford ARM loan increase, unexpected increase in pregnancy expenses, loss of income due to lost his job, etc. Borrower requested employment plans and modifications at least 4 times during history and either failed to come up with the down payment or failed to make the trial payments. Even when payments were adjusted to make them affordable bwr would call to advise can't afford it. Loss mit sept of not given adequate disclosure of short sale or value to the bwr despite bwr could not make payments. Property AVM indicated value of $89K against a UPB of $116K, negative equity. The servicer wanted to keep the loan cash flowing but the borrower rarely had any cash to contribute to the workout plans. No info on property condition or occupancy noted in history. There was a lot of confusion about a Sept 2008 modification that the bwr arranged through a 3rd party National Direct who failed to forward the mod docs to the servicer. But the borrower failed to make payments toward the modification for 3 months. Poor follow up and poor coordination of the modification process by the servicer on this loan. It was evident the borrower had no money to pay and just prolonging the inevitable. Finally started foreclosure in Feb 2009 but then GMAC declared a moratorium in March 2009 per history. No terms of moratorium indicated in history. |
| 2 | 12/12/2007 | bwr claims can't afford ARM loan pmt increase due to hardship | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | | bwr advised won't pay unless gets 'freeze zen?', servicer recommended modification | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 1/10/2008 | bwr claims unexpected pregnancy expenses caused loss of income, discussed possible mod again, servicer recommended | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y | |
| 5 | 1/14/2008 | AVM values property at $89K, UPB is $117K, negative equity | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 3/26/2008 | bwr failed to pay down pmt on repay plan, so cancelled by servicer | 6 | Were there any unnecessary FC or BK delays? | no | |
| 7 | 7/7/2008 | another trial modification approved by servicer | 7 | Were REO / liquidation efforts appropriate? | no | |
| 8 | 9/11/2008 | mod docs need to be redrawn and bwr2 forgot to sign, redraw mod docs | 8 | Were the processes generally performed timely? | no | |
| 9 | 12/17/2008 | servicer won't pay RFDs, no 5, 3rd party National Direct failed to forward the executed mod docs to servicer, loan not denied due to no payments since Sept 2008 | 9 | Did you grade any of the process steps "C"? | no | |
| 10 | 2/9/2009 | another trial mod approved, bwr calls to advise can't afford pmt | 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | 2/19/2009 | first legal action completed, when was it referred for foreclosure? | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | 3/12/2009 | GMAC declared a moratorium, no indication of length or intent of moratorium | 12 | Were there any major issues with the loan origination or default management of the loan? | no | |
| 13 | 3/16/2009 | history mentions postponement request completed, no followup date indicated, bwr owes pmts back to April 2008, 12 months | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

CONFIDENTIAL

RCPC00065247

## Loan # 7440540138 — Status: REO re-sale

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 6/16/2006 | bwr accesses re divorce, wants to get wife off loan and do an assumption. Servicer says no, must refinance |
| 2 | 6/22/2007 | bwr inquired about PPP waiver, servicer denied request |
| 3 | 8/24/2007 | bwr accesses slow business, curtailment of income, no financial info collected, no loss mit options discussed by servicer |
| 4 | 10/22/2007 | bwr inquired about short sale, transferred to loss mit, no results noted |
| 5 | 12/5/2007 | rec'd divorce decree removing wife from acct, bwr servicer says still his loan |
| 6 | 1/3/2008 | breach letter sent |
| 7 | 2/26/2008 | foreclosure referral approved |
| 8 | 3/11/2008 | first legal action completed |
| 9 | 7/25/2008 | history mentions property occupied, no details on who is in the property, or if facility liens right |
| 10 | 9/15/2008 | REO marketing plan and REO liquidation approved |
| 11 | 1/5/2009 | REO liquidation approved |
| 12 | 2/13/2009 | REO marketing plan approved |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | Borrowers were in divorce and he wanted to get her off the mortgage and assume the entire loan. The servicer denied the request and told him to refinance. Borrower could not refinance, no information regarding the bwr financial information noted in history. Discussion of loss mitigation options with bwr not apparent. In Dec 2007 the servicer removed the wife from account per divorce decree but still his loan liability for account. Last payment made in November 07, foreclosure was finally approved in Feb 2008. First legal was completed on 3/11/08. Property reported vacant as of 7/25/08. There's confusion in the history about the filing bankruptcy prior to the notice of intent letter but no details on the filing or the issue in the history. Also mentioned asset of stay in New Century mortgage but unclear how related to this loan. Subsequent inspection report indicates property occupied in Sept 2008. The foreclosure sale was completed on 18/09 and a marketing plan approved on 2/12/09. No apparent effort at loss mitigation such as short sale, deed in lieu, etc. No property valuation or LTV calculation indicated in history. |
| 2 | Was the transaction history complete (as of loan set-up)? | no | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | yes | |
| 6 | Were there any unnecessary FC or BK delays? | yes | |
| 7 | Were REO liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | | |
| 9 | (Did you grade any of the process steps 'C'?) | yes | |
| 10 | Were there adequate property inspection and preservation practices? | | |
| 11 | Was the collection, loss mit, FC, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | | |

## Loan # 7440541597 — Status: Foreclosure

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 6/2/2006 | repayment plan set up, delinquent tax issue |
| 2 | 12/20/2006 | RFD curtailment of income, bwr sent CFK |
| 3 | 8/20/2007 | RFD husband laid off, no servicer discussion of loss mitigation in history |
| 4 | 9/22/2007 | bwr requested 2 mos pmt deferment, servicer declined |
| 5 | 10/17/2007 | bwr inquired about disability insurance, no follow-up in history, borrower advised in process of refinance |
| 6 | 1/2/2008 | servicer discussed another repmt plan, bwr declined; advised bring current ASAP, then bwr... he unemployed, were not able to refinance due to bad credit |
| 7 | 1/11/2008 | insufficient income to pay escrow |
| 8 | 9/24/2008 | blanket pmt modification approved, NO EQUITY ANALYSIS in history, no Property inspection results noted |
| 9 | 12/17/2008 | loss mit ceased - borrower failed to contribute funds |
| 10 | 12/22/2008 | foreclosure action approved |
| 11 | 2/6/2009 | first legal action completed |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | This first lien in Louisiana is due for the June 2006 payment and if currently in foreclosure. The servicer attempted a number of loss mitigation plans which failed and it evaluated a few modification to the borrower. The borrowers reason for default included husband out of work for a number of months, wife out of work due to injury. They were seriously behind on the loan, did not appear from the servicing noticed from the history are as follows: no indication of discussion of loss mit options with the borrower except repayment plans or modifications; no NPV or equity analysis noted in the history to indicate value of property; since the borrower does not live at the property, no indication of property inspections or occupancy during default timeline, very little communication from borrower during the foreclosure process to try and work out a resolution. A work out package was marked but no indication follow up efforts by the servicer. |
| 2 | Was the transaction history complete (as of loan set-up)? | n/a | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | Were there any unnecessary FC or BK delays? | | |
| 7 | Were REO liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | y | |
| 9 | (Did you grade any of the process steps 'C'?) | no | |
| 10 | Were there adequate property inspection and preservation practices? | y | |
| 11 | Was the collection, loss mit, FC, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | y | |

## Loan # 8255542265 — Status: current

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 11/28/2007 | LM to borrower options to avoid foreclosure |
| 2 | 3/23/2009 | loan payment next due for 4/16/09, no issues noted in history |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | With a UPB of $16,727.42 the loan appears to be a second lien. Borrower maintained loan current throughout the loan history, and borrower has not apparently maintained appropriate level of attention for a current account. |
| 2 | Was the transaction history complete (as of loan set-up)? | n/a | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | n/a | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | n/a | |
| 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | Were REO liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | y | |
| 9 | (Did you grade any of the process steps 'C'?) | no | |
| 10 | Were there adequate property inspection and preservation practices? | n/a | |
| 11 | Was the collection, loss mit, FC, foreclosure and REO liquidation timeliness acceptable? | y | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | y | |

CONFIDENTIAL

## Loan # 7440544179 — Status: Chp7 BK

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 12/4/2007 | borrower advises husband in hospital | 1 | Was the servicing record history provided (hard or soft copy?) | y | This is a rental property with a UPB of $405,000 and next payment due 1/1/08. The borrowers reason for default was the husband's bout with cancer and unexpected out of pocket $22K for bone marrow transplant. However this is a rental property. The servicer tried a number of repayment plans and trial modifications over the years which all seemed to fail, although the bwrs claimed steady income. Foreclosure action was approved January 2008 and was delayed a number of times by repayment plans; borrower never able to continue payments. Servicing actions not indicated in history were, no property inspection to determine occupancy, no equity analysis to determine best loss mit options; servicer did not note status of tenants or rental income. No skip tracing done. Borrower filed petition for Chapter 7 BK, no details in history. Foreclosure stopped for unknown period. More than one year of payments due. |
| 2 | 1/3/2008 | wife called advised husband has cancer, need time to sell property, call transferee to loss mit dept, no indication of conversation held | 2 | Was the transaction history complete (as of loan set-up?) | ✓ | |
| | | foreclosure action approved, bwr advised trying to evict current tenant and replace, financials indicate $200 negative cash flow, service advises no mod programs available for bwr, no explanation why, no discussion indicated of other options to avoid foreclosure | | | | |
| 3 | 1/24/2008 | | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 1/25/2008 | first trial plan completed | 4 | Was collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | 3/26/2008 | bwr requested consider for mod, servicer mailed w/o pkg | 5 | Was loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 4/1/2008 | serv rec'd w/o pkg incomplete, RFD excessive med expenses, seek reinstatement, 3 month trial plan | 6 | Were there any unnecessary FC or BK delays? | yes | |
| 7 | 4/30/2008 | repmt plan broke, husband needs emergency surgery, No discussion of rental income or borrower medical insurance covering medical expenses noted in history | 7 | Was REO / liquidation efforts appropriate? | n/a | |
| 8 | 5/14/2008 | serv rec'd returned $5700 from bwr, no logical explanation | 8 | Was the processes generally performed timely? | | |
| 9 | 5/19/2008 | another trial mod plan approved | 9 | Did you grade any of the process steps "C"? | | |
| 10 | 1/30/2009 | lost mit denied again, bwr refuses to contribute, f/c sale | 10 | Was there adequate property inspection and preservation practices? | no | |
| 11 | 3/1/09 | postponed foreclosure to 3/09/08 due to GMACM moratorium; history unclear on borrower filing Chapter 7 BK, end of history. Unclear why bwr could not make payments and why medical insurance did not cover illness; unclear about tenants and rental income from property; equity analysis not indicated in history; bwrs do not live at property, why not foreclose earlier unless negative equity? | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | no | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

## Loan # 7655442501 — Status: Foreclosure

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/9/2007 | first payment default tbr | 1 | Was the servicing record history provided (hard or soft copy?) | ✓ | Borrower, for this investment property, never made a payment on a loan that was serviced by GMACM. The servicer discussed various options with the borrower who originally said his partner handles account and didn't know loan was delinquent. Borrower said he was out of workout packages and never made a payment. No information was found for default except curtailment of income. No discussion about reason for default except occupancy of property, tenant rent or any property condition in the history. Foreclosure started 6/26/07 because the first legal action completed 6/26/07. History mentions possible title issue concerning identity fraud but no details provided. Various offers and counter offers were made for a short sale, a payoff of the property was in foreclosure. Servicer best offer received was $265K for a UPB of $414K. No real equity analysis evident, a short sale would have resolved this issue for at least a year's worth of workout and Stewart Title had offered a deed in law to give clean title but history notes that title was rejected by MI company because of disputed title. Unclear what the title issue was. Meanwhile the property value drops each month. No info on origination to refuse or curtail loan to value. |
| 2 | 4/25/2007 | bwr about short sale tried call to loss mit, no problems | 2 | Was the transaction history complete (as of loan set-up?) | ✓ | |
| 3 | 5/22/2007 | no indication about short sale, tried call to loss mit, no details | 3 | Was the level of customer service appropriate, including ARM change notifications? | no | |
| 4 | 6/14/2007 | foreclosure approved, 6/26/07 first legal action completed | 4 | Was collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | 7/3/2007 | history mentions possible title issue affecting foreclosure | 5 | Was loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 7/16/2007 | bwr offered short sale, still no RFD; servicer advised Deed in law or short sale process, bwr had inquired 3 months ago already, no analysis No information on a second bwr, assume this is a first time homeowner in loss mit process | 6 | Were there any unnecessary FC or BK delays? | yes | |
| 7 | 8/15/2007 | Stewart Title offered to give deed in law for property to clear title, history notes MI company rejected offer due to disputed title, unclear why title issue, no analysis per history | 7 | Was REO / liquidation efforts appropriate? | n/a | |
| 8 | 10/22/2007 | bwr wants prop vacant & knows it, ordered secured bwr receives $265K offer, servicer stands at $265K; Loan history stretches out $265K to $285K at the time versus REO with a 98.9% FMV and saves $23K compared to foreclosure. Sale never appeared to be completed per history, no reason; no follow up indicated | 8 | Was the processes generally performed timely? | no | |
| 9 | 1/11/2008 | no action for prop tax sold to investor | 9 | Did you grade any of the process steps "C"? | | |
| 10 | 8/5/2008 | Stewart Title offered to give deed in law for property to clear title, history notes MI company rejected offer due to disputed title, unclear why title issue, no analysis would be clear title and MI company said it would be disputed | 10 | Was there adequate property inspection and preservation practices? | yes | |
| 11 | 12/29/2008 | Title still not resolved by servicer, attys, title company and the bwr never made pmt on the loan in 3 years. | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | 3/23/2009 | | 12 | Were there any major issues with the loan origination or default management of the loan? | no | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

CONFIDENTIAL

RCPC00065249

## Loan # 7440546275 — Status: REO

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer |
|---|---|---|---|---|---|
| 1 | 7/23/2006 | bwr suprised ecct is non escrow - claims hardship paying escrow advance in lump sum, no solution indicated for servicer | 1 | Was the servicing record history provided (hard or soft copy)? | |
| 2 | 12/4/2006 | bwr claims the bank docs stolen can't make payment | 2 | Was the transaction history complete (as of loan set-up)? | n/a |
| 3 | 4/10/2007 | bwr RFD pymt adjustment for ARM and escrow and bank issues; no mention of lssent at property by bwr or servicer | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | 8/16/2007 | bwr claims out of work for year | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no |
| 5 | 9/17/2007 | bwr advises fully disabled due to job injury for 19 months, no benefits yet requested pmt deferment or extension, transferred call to loss mit dept, no mention of this as a rental property | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | 10/5/2007 | trial mody plan, 10/30/07 trial mod fails due to no pmt made | 6 | Were there any necessary FC or BK delays? | yes |
| 7 | 11/1/2007 | foreclosure approved 11/15/07 servicer advised bwr to sell | 7 | Were REO / liquidation efforts appropriate? | no |
| 8 | 11/26/2007 | first legal action completed | 8 | Was the processes generally performed timely? | no |
| 9 | 3/4/2008 | bwr advised property has been vacant for a year; servr sent w/o pkg to bwr again, new tenants since Dec 2007; bwr said able to make regular pmts but not qualified for mod or repay plan | 9 | Did you grade any of the process steps "C"? | |
| 10 | 3/31/2008 | trial mod failed; no pmt from bwr again | 10 | Was there adequate property inspection and preservation practices? | no |
| 11 | 4/2/2008 | 4/28/08 REO FC MBK listed and granted | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no |
| 12 | 10/1/2008 | foreclosure sale and becomes REO | 12 | Were there any major issues with the loan origination or default management of the loan? | no |
| 13 | 2/23/2009 | marketing plan approved and property listed | | | |
| 14 | | | | | |
| 15 | | | | | |

**Comments:** This is a loan on an investment property with a UPB of $115K, presumed to be first lien, with the next payment due af 8/1/07 as of March 2009. The servicer advanced $9890 in taxes and insurance for the borrower and ended up foreclosing on the property either a number of delays (a repayment plans and the borrower filing bankruptcy). The RFD included claims of ordinary payment of taxes by current and prior servicer, surprise at being non escrow loan not being asked to pay lump sum to reimburse, pymt adjustment hardship, all the bank docs were stolen, the was out of work for a year, and he is fully disabled due to job injury. **No mention by servicer notes of tenant occupancy, rental income, wife contribution to family income, or an equity analysis of the property.** Servicer reviewed the borrower financial info a number of times but analysis not detailed in history, and borrower listed each pymt plan. Foreclosure started in Nov 2007 and servicer advised bwr to sell property. In March 3008 bwr advised he rental property vacant for a year, no detail on property inspections by servicer although this. 4/3/08 bwr filed Chp 13 BK, after HFC restarted in July 2008 and went to FC sale Oct 2008. Now in REO and no offers to date. **Too much delay in foreclosure process concerning an investment property, no mention of short sale deed in lieu by servicer. Took 4 months to list property- too long.**

## Loan # 8255546975 — Status: current

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer |
|---|---|---|---|---|---|
| 1 | 3/5/2006 | boarded loan to system | 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | 2/17/2009 | bwr claimed ostering biz slowed down while building remodeled should be okay to pay | 2 | Was the transaction history complete (as of loan set-up)? | n/a |
| 3 | | | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | | | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y |
| 5 | | | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | n/a |
| 6 | | | 6 | Were there any necessary FC or BK delays? | n/a |
| 7 | | | 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | | | 8 | Was the processes generally performed timely? | y |
| 9 | | | 9 | Did you grade any of the process steps "C"? | n/a |
| 10 | | | 10 | Was there adequate property inspection and preservation practices? | n/a |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | n/a |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | n/a |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |

**Comments:** Borrowers current on this loan, with a UPB of $49,991, due for 3/30/09 as of 3/23/09; possibly an investment property due for mailing address is different street in same town. No issues with loan

## Loan # 7440547347 — Status: foreclosure

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer |
|---|---|---|---|---|---|
| 1 | 9/29/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | 7/10/2008 | bwr inquires about FPP which serv advises expires 9/27/08 | 2 | Was the transaction history complete (as of loan set-up)? | n/a |
| 3 | 12/4/2008 | breach fe sent | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | 12/10/2008 | bwr can't make pmt; RFD curtailment of income, business slow; savings wiped out; serv discussed loss mit options but no solution reached; should recommend sale of house or DIL if no way to make payments | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y |
| 5 | 12/31/2008 | bwr requested loan mod; no pymts made | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | 1/11/2009 | bwr was advised due 3 pmts; bwr claims no funds, possible BK filing, husband lost his business, used up savings, no FPP, no funds; negotiator noted in history | 6 | Won there any necessary FC or BK delays? | no |
| 7 | | Foreclosure approved, 1/26/09 bwr's financial info rec'd for review | 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | 1/23/2009 | serv advises mod not possible, no steady source of income | 8 | Was the processes generally performed timely? | yes |
| 9 | 2/11/2009 | first legal action completed | 9 | Did you grade any of the process steps "C"? | |
| 10 | 2/19/2009 | workout package sent to bwr | 10 | Was there adequate property inspection and preservation practices? | no |
| 11 | 3/5/2009 | advised bwr excl workout package, will review and respond | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no |
| 12 | 3/16/2009 | serv advises mod not possible, no steady source of income | 12 | Were there any major issues with the loan origination or default management of the loan? | no |
| 13 | | No equity analysis noted in history | | | |
| 14 | | No equity analysis results noted in history | | | |
| 15 | | No efforts by bwr to sell or deed the property to servicer | | | |

**Comments:** This loan appears to be a first lien inhabited by borrower, next payment due is Nov 2008 with a UPB of $211K. Borrower RFD includes borrower lost business, curtailment of income, and no steady source of future income. Servicer does not indicate in history discussions about all possible loss mit options including sale of house or deed in lieu. No equity analysis indicated in history to determine NPV of loan. No property inspection. No property inspection results or BPOs noted in history. Servicer discusses workout packages with borrower but since the borrower claims has no income to make payments, there could be no payment concerning an investment property, deed in lieu, no short sale or foreclosure process which started in January 2009. Unclear why borrower has not tried to sell house.

CONFIDENTIAL

RCPC00065250

## Loan # 9253549102

| Time Line (Detailed) | Status | Tran Date | Description |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | | No documents found in image web |
| 2 | Was the transaction history complete (as of loan set-up)? | | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts)? | | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | | |
| 6 | Were there any unnecessary FC or BK delays? | | |
| 7 | Was there any REO / liquidation efforts appropriate? | | |
| 8 | Were the processes generally performed timely? | | |
| 9 | Did you grade any of the process steps "C"? | | |
| 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | | |

## Loan # 7655553014

| Time Line (Detailed) | Status | Tran Date | Description |
|---|---|---|---|
| 1 | REO | 2/7/2007 | loan boarded |
| | | | bwr inquired about short sale; can't afford property, renter pays $2700 and to pay difference in payment; has 6 rentals and can't refinance due to negative NPV claims had prop/p up for |
| 2 | | 10/3/2007 | sale in 2006 for $300K and in 2007 for $420K but no offers rec'd referred to loss mit dept |
| 3 | | 10/15/2007 | bwr suggested deed in lieu and sent workout pkg |
| 4 | | 1/23/2008 | sent another loan mod pkg for DIL, denied mod because indicated negative drop in fees |
| 5 | | 1/28/2008 | sent another workout pkg to bwr for DIL, denied mod because print on fees are low as paid/kept but noted has up for sale but no offers rec'd for a year; what about deed in lieu? |
| 6 | | 4/2/2008 | servicer rep at property reports vacant and locked, up for sale |
| 7 | | 4/9/2008 | referred property to foreclosure |
| 8 | | 5/22/2008 | first legal action completed |
| 9 | | 9/5/2008 | contractor reports someone living in house, no identity given |
| 10 | | 9/19/2008 | broker called with offer of $135K short sale; servicer advised atty to hold off foreclosure for 3 weeks, no evaluation of decision noted about offer in history by servicer |
| 11 | | 10/14/2008 | NO equity analysis evident in history; no reason for failure to obtain deed in lieu, no communication with bwr noted |
| 12 | | 10/14/2008 | REO started in 2/24/08 |
| 13 | | 10/15/2008 | referred property to broker |
| 14 | | 11/3/2008 | auction started |
| 15 | | 12/24/2008 | property listed for sale, no details given regarding market analysis, listing price, current market value, condition of property in history |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | This investment property is presumed to be first lien with a UPB of $92,112, next payment due 3/1/08, which went through the foreclosure process and is now in REO asset. The borrower made various inquiries about short sales and loan mods but nothing materialized. The servicer did discuss deed in lieu and short sale with borrower and sent out workout packages. Borrower admits |
| 2 | Was the transaction history complete (as of loan set-up)? | y | owns 6 investment properties and can't afford this property because the tenant pays $2700 monthly and she pays the balance, can't refinance because of negative LTV. Had listed this property for |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | $500K for in 2006 and dropped it to $420K this year but no offers. Servicer rep noted in April 2008 that this property was vacant and locked, up for sale with no damages. On 4/9/08 the loan was |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts)? | no | referred for foreclosure. On 5/22/08 the first legal action was completed. On 9/5/08 a contractor reports someone has moved in the house, but can't wait because foreclosure not completed. A broker |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | called in Sept 2008 with a purchase offer of $135K but no indication in history what servicer analysis revealed, but servicer advised atty to postpone foreclosure for 3 weeks. The foreclosure sale took place |
| 6 | Were there any unnecessary FC or BK delays? | yes | on 10/14/08 and the property was listed on 12/24/08. No indication why servicer did not push for a deed in lieu from the borrower. |
| 7 | Was there any REO / liquidation efforts appropriate? | yes | |
| 8 | Were the processes generally performed timely? | | |
| 9 | Did you grade any of the process steps "C"? | | |
| 10 | Was there adequate property inspection and preservation practices? | yes | |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | no | |

## Loan # 7655553014   180+ days

| Time Line (Detailed) | Status | Tran Date | Description |
|---|---|---|---|
| 1 | 180+ days | 2/7/2007 | loan boarded |
| 2 | | 8/5/2008 | breach letter to bwr |
| 3 | | 9/2/2008 | Was the level of customer service appropriate, no ARM change |
| 4 | | 9/19/2008 | vacant noted in history, no explanation, loss mit 1d referral |
| 5 | | 9/24/2008 | BPO value requested, inspection results, no details in history |
| 6 | | 9/27/2008 | noted equity analysis figure of $274,000, no details |
| 7 | | 9/30/2008 | bwr advises unemployed, servicer advises bwr to sell, bwr doesn't want to sell, no other options mentioned by servicer |
| 8 | | 10/30/2008 | workout pkg mailed, no conversations with bwr noted |
| 9 | | 11/14/2008 | delinquent 120 days, no reason noted for not foreclosing |
| 10 | | 12/9/2008 | servicer received a "demand letter", a consumer complaint, HUD form and info related to workout package, now CA state involved, no details on what the complaint is about; bwr still not in foreclosure |
| 11 | | 1/16/2009 | history notes 180+ days delinquent; no reason for foreclosure |
| 12 | | 1/27/2009 | servicer received another workout package |
| 13 | | 3/2/2009 | history notes no activity at >$265K, no updates on legal action or lack thereof |
| 14 | | | |
| 15 | | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | This property is presumed to be a first lien with a UPB of $92,112, next payment due 7/1/08. There was no phone contact with the borrower but an investor option recommendation (IOR) was documented for 2008. There were no stop traces performed, and in Sept 2008 the servicer noted a less mit referral, a BPO value |
| 2 | Was the transaction history complete (as of loan set-up)? | n/a | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts)? | no | request and inspection results received but no details in history. In Sept 2008 the servicer noted an equity analysis indicating negative |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | equity of $274,094! No details provided, no mention of a second lien. Borrower was advised to sell; no income; servicer advised to sell property but bwr didn't want to sell. On 12/9/08 the servicer |
| 6 | Were there any unnecessary FC or BK delays? | no | received a "demand letter", a complaint letter, and parts of the workout pkg. No details on the complaint. On 1/27/09 servicer received another workout package and still no reason provided |
| 7 | Was there any REO / liquidation efforts appropriate? | n/a | given for not starting foreclosure; no details on property condition; no details about consumer complaint, and loan is due for 9 |
| 8 | Were the processes generally performed timely? | yes | payments without foreclosure initiation. |
| 9 | Did you grade any of the process steps "C"? | | |
| 10 | Was there adequate property inspection and preservation practices? | unknown | |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | | |

CONFIDENTIAL

RCPC00065251

**Loan #** 7655550914  **Status** 90 days

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 2/7/2007 | loan boarded |
| 2 | 3/6/2007 | bwr arcitved financial hrdship no PTP mode |
| 3 | 7/2/2007 | borrower/spouse hsp, did not want reprmt plan, will get $ from savings to bring current |
| 4 | 9/20/2007 | bwr evicted house for sale, unable to sell so far |
| 5 | 11/9/2007 | repay plan set up; 12/27/07 about 2 months behind on payment; 120 days delinquent approved for foreclosure; 7/23/08 first legal action completed |
| 6 | 1/11/2008 | |
| 7 | 1/31/2008 | another repayment plan; bwr paid $41K (downpynt for repay plan closed repay plan for non payment; 8/27/08 another repay plan set up for non payment; foreclosure on hold; 7/14/08 plan cancelled again for non payment; bwr wants to reset repay plan again; servicer said no because he failed 3 repay plans already |
| 8 | 6/2/2008 | borrwr RFD business decline (mortgage business); considering short payoff NO EQUITY AREA, YSR, no property inspection results, no loss mit analysis of options, no discussion of deed in lieu, no information on borrower source of funds noted in history provided |
| 9 | 10/9/2008 | |
| 10 | 10/27/2007 | foreclosure reassignment repay plan again, but servicer sent back $175K to borrower with no reason given |
| 11 | 3/6/2009 | bwr accepted hsp & slow for 1 1/2 years, used up savings, wife lost her job, had $10K per month in income no discussion of deed in lieu by servicer with borrower noted |
| 12 | 3/19/2009 | Servicer states review of financials do not support a mod nor a repayment plan at this tim, referred account to atty for foreclosure again |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including AVM change notifications? | n/a |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | yes |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | Were there any unnecessary FC or BK delays? | yes |
| 7 | Were REO liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | y |
| 9 | Did you grade any of the process steps "C"? | |
| 10 | Was there adequate property inspection and preservation practices? | unknown |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | yes |
| 12 | Were there any major issues with the loan origination or default management of this loan? | |

**Comments:** This loan is a first lien on a SFR in Ridgefield, CT with a UPB of $789K, next payment due 10/1/08. The borrowers claimed: RFD was the business slowed (mortgage business) and then slowed down, have used up savings and trying to sell home. The servicer arranged for at least 4 repayment plans with the borrowers, who managed to make a number of down payments including one pmt for $41,000 towards a plan, but by failing the plans while they did not make the following payments. The servicer initially referred the loan for foreclosure in January 2008 and then a number of repayment plans put the foreclosure process on hold. The servicer history lacks any details on the NPV or an equity analysis, no current appraisal or market value for the property, no information on the borrower's cash flow available to maintain an equitable plan, no property inspection results, and very little discussion about loss mit options such as a deed in lieu or short sale. The property is in the process of foreclosure as of March 2009

---

**Loan #** 7655560803  **Status** 1804 days

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 2/7/2007 | loan boarded |
| 2 | 5/6/2007 | breach letter sent |
| 3 | 10/9/2007 | skip trace, provides phone update information |
| 4 | 1/7/2008 | short sale pckg received; no information or conversations with borrower |
| 5 | 3/29/2008 | approved short sale to pay $5200 on this UPB of $119K and payoff first lien with offer of $445K; no info on first lienholder or first lien status; in depth analysis in history on why this offer should be rejected; short sale review. No discussion to foreclosure |
| 6 | 4/22/2008 | NPV calculations indicated negative equity of -$145K -$207K, and -$245K on different occasions for this property |
| 7 | 4/23/2009 | No evidence of follow up with borrower for short sale; payment plan or other option. No recommendation for charge off bore. This account shouldn't have been charged off after 180 days delinquent if a second lien with no equity in property. Servicer does not appear to be following up on this account to make a decision |
| 8 | 3/20/2009 | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including AVM change notifications? | n/a |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | Were there any unnecessary FC or BK delays? | yes |
| 7 | Were REO liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | no |
| 9 | Did you grade any of the process steps "C"? | |
| 10 | Was there adequate property inspection and preservation practices? | unknown |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no |
| 12 | Were there any major issues with the loan origination or default management of this loan? | |

**Comments:** This second lien on a property in Brooklyn, NY lien is a UPB of $119K, next payment due 7/1/07. It appears from the loan history that no phone contact was made after its first lien in 2007 and no 2008, with a few skip traces, but no information on property inspections or cook won't be visits by loan. In January 2008 the servicer conducted a charge off review but no results noted history. There were a few charges noted to the primary borrower but no details to help contact borrower by phone. In March 2008 servicer received a short sale package, no bwr info noted in history. In April 2008 a short sale was approved by servicer with negative equity value of -$145K, -$207K, and -$245K within the span of a few months. A final entry in March 2009 states that there has been no offer or contract received from the borrower. There is no update on the status of the first lien or charge off this second lien. Very little if any phone conversations with the bwr are documented throughout the 3 years of servicing this loan.

CONFIDENTIAL

RCPC00065252

### Loan # 7655597470 — Status: 90 days

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 2/7/2007 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan appears to be a second lien on a property in Hartford, CT with a UPB of $43,624.00 and payment next due for 1/1/09. The borrower stated OOW, no "P1P", has tenants but not paying rent, and had to evict, no funds to pay, and he is only one making payments. The servicer fails to provide any information in the history about the first lien and its status. There are no property inspection results, and the NPV analysis shows negative equity but does not indicate the market value for the first lien UPB. The servicer was delayed by the bwr filing Chapter 7 BK in May 2008, but it's unclear how it was monitored by servicer. The borrower requested repayment plans and modifications a number of times, and unexplainedly the servicer approved a loan modification in March 2009 while the loan is 90 days delinquent. No detail as to the status of the first mortgage at the time of the modification or the borrower financial condition.  No detail on whether this is an investment property or does the borrower live at the premises. |
| 2 | 3/15/2007 | bwr OOW, no "P1P", has tenants but not paying rent, has 2 (properties?)'s on market | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | 9/15/2007 | bwr states tenants didn't pay, had to evict, will try to catch up. No servicer mention of loss mit efforts, sale or deed in lieu, status of first lien, occupancy of property or financial situation | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 10/15/2007 | bwr states new tenants are in and paying, has 27 Loans and not able to bring current, took financial info, bwr has surplus income. No info on cash flow, property condition , no P1P, bwr set up a repayment plan | 4 | Were collection efforts appropriate?  (i.e. were there enough attempts?) | no | |
| 5 | 11/26/2007 | repay plan cancelled for non payment, unclear but appears to be a second lien no information in history about first lien or if servicer ever contacted first lienholder for current status. | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 1/15/2008 | bwr now says is that tenants not paying, he is out of $, he is making payments when can. No discussion of loss mit options or alternatives with first lien | 6 | Were there any unnecessary FC or BK delays? | yes | |
| 7 | 5/9/2008 | bwr petition for Chpter 7 BK filing, no details on first lien | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | 5/16/2008 | NPV analysis, negative equity of -$61K, no details on first lien balance | 8 | Were the processes generally performed timely? | n/a | |
| 9 | 12/15/2008 | Chap7 7 discharged without reaffirmation? Unclear from history | 9 | Did you grade any of the process steps "C"? | unknown | |
| 10 | 12/29/2008 | NPV analysis, negative equity of -$511K, bwr recevied a modification of loan | 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | 1/28/2009 | note in history says: primary has already been modified without explanation.  Probably first lien modified but not clear | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | unknown | |
| 12 | 3/16/2009 | servicer approved modification with changes in pmt, interest rate, terms, etc. No information on first lien status or bwr financial condition to pay the two mortgages. | 12 | Were there any major issues with the loan origination or default management of the loan? | no | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

### Loan # 7655563328 — Status: 120 days

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 2/22/2007 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan appears to be a first lien at BRE in Sacramento, CA with a UPB of $247K and next payment due of 12/1/08. The servicer provides little information in detail in the history about the borrower financial condition, the property condition, reason for default, and any of the LM mitigation alternatives. In January 2008 the bwr advised can't pay and wants a modification and the ARM payment adjustment, no other reason.  The servicer advises the bwr to sell.  There was no other details about the mod request. In May 2008 the bwr inquires about a modification in July 2008 the servicer approves a major modification of the loan with changes in rate, P&I, terms, etc, but does not note these details or work status of borrower. Servicer says bwr doesn't have savings to reinstate loan, on 7/28/08 bwr reants DP of $2014, which than is $187 on 9/2/08. Note on 11/13/08 mentions more documents completed, signed docs not received, no evidence of strong attempt to follow up. by servicer to get this done; bwr had paid the required money.  On 2/6/09 the servicer receives more documents from borrower, 7 months after it mod was approved, no explanation why going over the same ground. On 3/10/09 the servicer states 'loss mit denied' because bwr failed to contribute money. There is no equity analysis, no property inspection, no financial info available. the loan history to determine the current status of the bwr and the property. 3/16/09 a 3rd party inquired about the loan then of the property, bwr failed to complete the mod requirements, the servicer next action loan is now due for 4 payments.  Servicer has to be proactive, is foreclosure recommended now? |
| 2 | 1/25/2008 | bwr states can't afford payment, requests modification, servicer took some financial info, no RFD or reason for request noted, servicer responds unsuitable mod, bwr ok. (over extended?). recommends sell house | 2 | Was the transaction history complete (as of loan set-up)? | n/a | |
| 3 | 5/23/2008 | No details in history on financial status, property value, net equity, or borrower cash flow | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 5/23/2008 | bwr inquired again about a modification, no servicer response in history | 4 | Were collection efforts appropriate?  (i.e. were there enough attempts?) | no | |
| 5 | 7/23/2008 | service approved modification with interest rate, P&I and term changes based on financial review, property assessment and pay history. No details in history. No note liens mit options mentioned | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 9/2/2008 | received funds from bwr | 6 | Were there any unnecessary FC or BK delays? | no | |
| 7 | 11/13/2008 | Avoid FC earlier if mod executed docs or more payments; no indication in history of any follow up by servicer to complete the requirements until... (multiple issues for RFD, no details, no information on why its taken since July 2008 to get this modification completed) | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | 2/6/2009 | servicer confirmed with 3rd party that workout package completed, no update on the modification approved in July | 8 | Were the processes generally performed timely? | no | |
| 9 | 2/19/2009 | bwr advised that mod's biz is slow, no details on his job, no equity analysis, no property inspection, no documents in history about steps | 9 | Did you grade any of the process steps "C"? | no | |
| 10 | 3/16/2009 | information provided in history to ascertain current status. 3rd party asked about loan modification again and servicer advised bwr need more work because bwr failed to make payments and did not return completed documents | 10 | Was there adequate property inspection and preservation practices? | no | |
| 11 | 3/16/2009 | Now that this loan is 4 payment in arrears, the servicer does not indicate what course of action will be taken, foreclosure, short sale, or other loss mit alternative. Servicer does not note in history any discussion of loss mit alternatives besides modification and repayment plan. | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | unknown | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

CONFIDENTIAL

RCPC00065253

| Loan # | Status | Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|---|
| 9255565074 | 90 days | 1 | 7/8/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This second lien is on a SFR in Teaneck, NJ with a UPB of $392K and inst pmt due of 11/2008. The borrower gave various RFD including financial crisis, excessive obligations, returned to school, curtailment of income and unable to pay both mortgages. The servicer tried a number of trial mods and it mods but these were cancelled for various reasons by servicer. Bwr advised that Wells Fargo initially modified the first mortgage for her with lower rate to make pmts more affordable. There were little if any discussions why the borrower about loss mit options except repay plans and loan modifications. The servicer determined that the bwr could not afford a repay plan because she did not have surplus funds to catch up arrears. In January 2008 the history notes a recommendation for charge off, stating a best recovery scenario would be $3442, but that decision was given on this analysis. No data available on the first lien in history. Servicer analysis stated there was no valid equity to seek foreclosure on the 2nd mtg, should do loan mod and it cancelled the trial mod but no detailed explanation given. There was confusion in the history as to which loan mod was in question and why it was cancelled. On 2/10/08 history states 2nd due to short payoff/cancellation of debt. But there was no prior reference to a short payoff or cancellation of debt so this is questionable. The servicer needs to establish a solid decision on the 2nd lien to charge it off and keep trying to collect or to find a reasonable loan modification that the bwr can afford |
|  |  | 2 | 7/19/2007 | bwr requested workout, RFD financial crisis, set up repayment plan, also RFD curtailment of income | 2 | Was the transaction history complete (as of loan set-up)? | y |  |
|  |  | 3 | 7/30/2007 | bwr actioned return to school affected income, RFD excessive obligations, cancelled repay plan, no discussion in history of how bwr... | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |  |
|  |  | 4 | 11/5/2007 | now she is 3 pmts per comments; bwr stated hard to make both mtg payments, this is a second lien; bwr requested a loan mod similar to what she arranged with first mortgage, no details on 1st mtg in history; bwr won't agree to repayment plan; has no funds to make bigger payments | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no |  |
|  |  | 5 | 12/12/2007 | bwr won't make payments, requested loan mod again; servicer analysis states best recovery on 2nd lien would be $3442, but that doesn't have funds for repay plan. GMACM recommends a 3 month trial mod | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |  |
|  |  | 6 | 1/7/2008 | servicer history notes recommendation of a charge off with estimated best recovery of $3442, states no valid equity to seek foreclosure action. Servicer does not provide NPV analysis or information on first lien status. | 6 | Were there any unnecessary FC or BK delays? | n/a |  |
|  |  | 7 | 1/14/2008 | servicer states 2nd due to short payoff on 6/16/08 servicer cancelled mod and reversed the 4/08 and 5/08 pmts to current some wrong instruction, will reapply when loan gets current. No servicer explanation for next cancellation or reversal of payments | 7 | Were REO liquidation efforts appropriate? | n/a |  |
|  |  | 8 | 6/16/2008 | servicer advised bwr that mod not in place now, just had mod in 5/08, bwr requested another loan mod. Not clear in history what the servicer is doing by making new loan mods every few months. | 8 | Were the processes generally performed timely? | y |  |
|  |  | 9 | 11/14/2008 | history says "2008 1096C issued due to short payoff/cancellation of debt". There is nothing in history to indicate that this loan was previously paid off or debt cancelled to warrant this statement, this loan balance on the system is $392K | 9 | Did you grade any of the process steps "C"? | no |  |
|  |  | 10 | 11/26/2008 | breach letter sent | 10 | Was there adequate property inspection and preservation practices? | unknown |  |
|  |  | 11 | 2/12/2009 | NPV analysis indicates negative equity of $266,709, no information about first lien or status. | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? |  |  |
|  |  | 12 | 2/17/2009 | servicer states that 2008 payment reversal of a second lien and 180 days delinquent should be charged off. | 12 | Were there any major issues with the loan origination or default management of the loan? |  |  |
|  |  | 13 |  |  |  |  |  |  |
|  |  | 14 |  |  |  |  |  |  |
|  |  | 15 |  |  |  |  |  |  |

| Loan # | Status | Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|---|
| 9255565111 | 150 days | 1 | 7/27/2007 | loan boarded as second lien | 1 | Was the servicing record history provided (hard or soft copy)? | y | This is a second lien for a SFR in McDonough, GA with a UPB of $40K and inst due for 3/2009 pmt. Practically no communication with borrower by phone for 2006, 2007 and 2008. The realtor took the initiative to work through his own doc knowledge or property inspection results mentioned in history. Nov 2008 a realtor called with an offer of $165K with a listing price of $195K for the property. There is no information in the comments regarding the first lien status. In January 2009 the servicer states that the prospective buyer walked because the servicer wouldn't pay his closing costs for him. The servicer analysis of the short payoff decision for recovery of $3000 for the 2nd lien is questionable, but recovery scenario, bwr RFD is has no money for repayment, can't afford to sign a note for the 2nd lien balance, lost job as a car salesman and spouse is out of work. No data in history about the first lien in the comments. The servicer sent a bulk permanent mod with offer to settle for $3275 by 3/23/09 but no responses are out of history. Questions for servicer: when will this loan be charged off? what is the net present value? are there any loss mit options unexplored? what is the status of the first lien? what is the current financial condition? Why has it been so difficult to get the borrower on the phone? The mailing address is in Miami and the property is in Georgia, is this a rental property? |
|  |  | 2 | 11/26/2008 | unable to contact bwr, no skip trace, no property inspection, no information on 1st lien or net equity, advised realtor to send docs so bwr can be considered for short sale | 2 | Was the transaction history complete (as of loan set-up)? | y |  |
|  |  | 3 | 11/28/2008 | realtor called with offer of $165K, no information on 1st lien or net equity, advised realtor to send docs so bwr can be considered for short sale | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |  |
|  |  | 4 | 12/15/2008 | servicer analysis states 1st lien is delinquent and foreclosure would wipe out 2nd mtg, bwr has no $ for repayment plan; recommend short payoff to bank for debt recovery of $12K on UPB of $40K seriously delinquent 1st lien, 2nd lien on property is at risk | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no |  |
|  |  | 5 | 1/5/2009 | servicer states that buyer walked because would not pay closing costs for him, listing expired and bank will not reinstate, no response by bwr | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |  |
|  |  | 6 | 1/21/2009 | no response by bwr | 6 | Were there any unnecessary FC or BK delays? | n/a |  |
|  |  | 7 |  |  | 7 | Were REO liquidation efforts appropriate? | n/a |  |
|  |  | 8 | 3/5/2009 | servicer sent settlement offer to bwr for pmt of $3275 by 3/23/09, no bwr response by end of this period. Questions not clearly answered by servicer history: what is the net present value? What is the property condition and occupancy? Are there any options unexplored? what is the status of the first lien? what is the bwr financial condition? Why has it been so difficult to get the borrower on the phone? The mailing address is in Miami and property is a rental practice. | 8 | Were the processes generally performed timely? | n/a |  |
|  |  | 9 |  |  | 9 | Did you grade any of the process steps "C"? | unknown |  |
|  |  | 10 |  |  | 10 | Was there adequate property inspection and preservation practices? | no |  |
|  |  | 11 |  |  | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? |  |  |
|  |  | 12 |  |  | 12 | Were there any major issues with the loan origination or default management of the loan? |  |  |
|  |  | 13 |  |  |  |  |  |  |
|  |  | 14 |  |  |  |  |  |  |
|  |  | 15 |  |  |  |  |  |  |

CONFIDENTIAL

RCPC00065254

## Table 1

| Loan # | Status | Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|---|
| 8253574926 | 180 days | 1 | 7/17/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan appears to be a second lien on a property in Louisville, CO with a UPB of $81,174 with next payment due 9/1/08. The borrower lives in FL and the property is in CO. Borrower RFD during one of the rare conversations with servicer were only working contract work and curtailment of income. There were no conversations with borrowers in 2006, 2007 and most of 2008. On 11/23/08 the servicer offered a blind bulk mod trial in the mail to the bwr. On 1/6/09 the servicer sent the same offer in the mail. And on 2/4/09 the servicer mailed a settlement offer to the bwr for $56,931 to be paid by 2/20/09. The bwr did not respond to these offers. There is no mention of skip tracing, property inspection results and whether tenants were in property, and there are a number of questions the servicer needs to answer about this loan What is GMACM doing about these loans it both serviced by company? Has a short sale, deed in lieu or other loss mit alternative been discussed with the borrower? Why have they only been one or two conversations with the borrower since 2006? It it an investment property with tenants? and the property is in CO is it an investment property with tenants? What is the present status of the first lien and how is it coordinated with the second lien? What is the property condition and occupancy? What is the borrower current financial condition? Should this second lien be charged off? has there been any follow up with the borrower concerning the settlement offers? |
| | | 2 | 8/18/2006 | chg in bwr address | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| | | 3 | 10/16/2006 | Bwr first conversation since loan boarded. RFD only working contract work for FT emp, getting help from family for payments on both accounts, servicer took financial info; 2nd RFD: curtailment of income | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| | | | | comment that GMACM may have the 1st and second lien? Unclear from history and no apparent coordination of default mgmt for first and second liens in organization. No NPV or CLTV analysis in history comments | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| | | 4 | 11/11/2006 | servicer offered blind bulk mod trial by mail to bwr, property inspection and BPO ordered but no results in loan history | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| | | 5 | 11/25/2006 | indicated | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| | | 6 | 12/10/2006 | bwr pg 8639 by 12/15/08 for trial mod but broke promise | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| | | 7 | 1/6/2009 | another blind bulk mod trial offered by mail again | 8 | Were the processes generally performed timely? | | |
| | | 8 | 2/4/2009 | servicer sent settlement offer to bwr for $56,931 due by 2/20/09 | 9 | Did you grade any of the process steps "C"? | | |
| | | 9 | recap | | 10 | Was there adequate property inspection and preservation practices? | unknown | |
| | | 10 | | | 11 | Were FC, foreclosure and / or BK liquidation timeliness acceptable? | | |
| | | 11 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| | | 12 | | | | | | |
| | | 13 | | | | | | |
| | | 14 | | | | | | |
| | | 15 | | | | | | |

## Table 2

| Loan # | Status | Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|---|
| 8253577657 | 30+ days | 1 | 7/31/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is presumably a second lien on a SFR in Palm Arbor, FL with a UPB of $52,783 and next due for 2/30/09 payment. There were very few conversations with the borrower during the life of this loan. Bwr RFD in 2006 was that he bought back his car that was repossessed and borrower has been current for most of the time. Bwr contacted servicer in Oct 2008 to advise RFD included: car was repossessed and he had to pay $3k to redeem; son had medical costs out of pocket, bwr used up savings and has no cash reserves, has no benefits and has lost an estimated $3200 of monthly income. The loan has been current practically the whole time as mentioned in the comments provided. There are a number of questions the servicer should provide answers to what is the status of the first lien? What is the borrower current financial condition? There are a number of this first lien? What is present value of the property? Is this property in FC foreclosure? What is the borrower current financial condition? What alternatives have been discussed with the borrower? What is the net present value of the property? Does GMACM service both the 1st and 2nd liens and if what is GMACM's plan for these loans? |
| | | 2 | 10/11/2006 | bwr lesson prom. RFD: due to car that he bought back from reposession and bwr work hours cut back, no cash reserves and can't borrow from anyone. | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| | | 3 | 1/6/2009 | breach letter sent | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| | | 4 | 1/6/2009 | advised that the first lien is due for Nov 2008 and the 2nd lien is due for Oct 2008. Bwr RFD: repossession of car, son medical costs out of pocket, used up savings, both working, will borrow $ from work to... | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y | |
| | | 5 | 3/6/2009 | bwr advised recvd federal check, servicer offered repay plan to bwr, bwr claims loss of $3200 in monthly income, no further details in history | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| | | 6 | Recap | | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| | | 7 | | | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| | | 8 | | | 8 | Were the processes generally performed timely? | | |
| | | 9 | | | 9 | Did you grade any of the process steps "C"? | | |
| | | 10 | | | 10 | Was there adequate property inspection and preservation practices? | unknown | |
| | | 11 | | | 11 | Were FC, foreclosure and / or BK liquidation timeliness acceptable? | | |
| | | 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| | | 13 | | | | | | |
| | | 14 | | | | | | |
| | | 15 | | | | | | |

CONFIDENTIAL

RCPC00065255

**Loan # 8253578904 — Status: current**

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 7/23/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This is either a first or second lien on a SFR in Des Moines, IA with a UPB of $31,488 next due for the 3/18/08 pmt as of 3/23/09. No issues noted in loan history provided, loan due for the current payment and no history of delinquent payments. Unclear if this is a first or second lien. |
| 2 | 3/23/2009 | loan due for 3/18/08 pmy | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | | | 3 | Was the level of customer service appropriate, including ARM change notifications? | y | |
| 4 | | | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y | |
| 5 | | | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | y | |
| 6 | | | 6 | Were there any un-necessary FC or BK delays? | no | |
| 7 | | | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | | | 8 | Were the processes generally performed timely? | y | |
| 9 | | | 9 | Did you grade any of the process steps "C"? | no | |
| 10 | | | 10 | Was there adequate property inspection and preservation practices? | n/a | |
| 11 | | | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | n/a | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | n/a | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

**Loan # 8253584745 — Status: 60 days**

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 7/3/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is presumed to be a second lien on a SFR in Lewersburg, MI with a UPB of $52,337.86 and next payment due for 1/30/09. The servicer rarely spoke with the borrower since the loan was boarded in Nov 2006; the borrower first advised of hardship due to work hours cut and funds curtailed. In April 2008 and July 2008 the servicer discussed bwr some reasons for default but no loss mit alternatives discussed in the loan history. In Feb 2009 the borrower again gave RFD as cut in work hours but with gas company, heating bills, etc for not paying on time. No loss mitigation efforts by servicer were evident in the history. No proactive servicing or collection effort by GMACM. Questions for the servicer/Why has there been so little contact with the borrower by phone? Is this a second lien and if so what is the first lien status? What is the property condition and occupancy? What is the CLTV and NPV of this property? What loss mit alternatives have been discussed with the borrower and why not all alternatives? If GMAC handles both the first and second lien what is the plan to resolve the loan arrears? has dead in lieu or short sale been discussed with the borrower? |
| 2 | 11/16/2006 | bwr received of work slow down, PTP Sept pmt by e/o/m, did not have more funds; RFD curtailment of income | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | 1/12/2007 | loan delinquent 60 days comment in history | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 4/15/2008 | advised bwr due for 1/08, Mar and Apr pmts, no promise to pay, no loss mit alternatives discussed, first and second lien statuses not discussed, no net equity analysis, no financial info update per history / bwr advised can only make one payment; refused to provide updated financial information, RFD wers wife work was slow, no savings, job picked up but not steady. No details on what jobs are, no loss mit alternatives discussed, no discussion of first lien status | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | 7/18/2008 | bwr advised can't make payment, has to make arrangements with the gas company, RFD- work slow for both of them, car ins rates up and had to buy a different car, heating bills have been up; very little savings; NO promise to pay or resolution of arrears by servicer | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 2/12/2009 | servicer sends request for contact letter | 6 | Were there any un-necessary FC or BK delays? | n/a | |
| 7 | 2/23/2009 | | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | 2/26/2009 | bwr advised work hours out again PTP 1 pmt in March, not sure about the other payments | 8 | Were the processes generally performed timely? | no | |
| 9 | Recap | questions for servicer/Why has there been so little contact with the borrower by phone? Is this a second lien and if so what is the first lien status? What is the property condition and occupancy? What is the CLTV and NPV of this property? What loss mit alternatives have been discussed with the borrower and why not all alternatives? What is the plan to resolve the first and second lien what is the plan to resolve the loan arrears? has dead in lieu or short sale been discussed with borrower? | 9 | Did you grade any of the process steps "C"? | unknown | |
| 10 | | | 10 | Was there adequate property inspection and preservation practices? | unknown | |
| 11 | | | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | unknown | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

CONFIDENTIAL

RCPC00065256

**Table 1**

| Loan # | Status | Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|---|
| 8100240/02 | foreclosure | 1 | 1/12/2007 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is presumable a first lien on a SFR in Peoria, AZ with a UPB of $387,326 and next payment due of 10/1/08; the property appears to be owner occupied. The borrower advised the servicer in 2007 that the ARM loan in rate increases every 6 months would be a problem and requested a loan mod to a lower fixed rate. The servicer requested consideration for the loan mod on 5/29/08, 7/3/08. Bwr advised she is self employed and is his work is slow, can't refinance due to LTV of property. The bwr inquired about the status of the loan mod in Sept 2008, and in Oct 2008 the servicer advised bwr to consider an offer of a loan mod with a 3 year rate freeze requiring a down payment of $2900. Not clear if servicer checked with bwr if they had the $2900 for the DP. On 11/10/08 the bwr was advised they could not afford the loan mod and unable to make down payment. The bwr advised on 12/16/08 loan was B1 sxk and unable to work. On Oct 2008, bwr income from having to take care of husband. On 2/24/09 an trial modification plan was approved, but then denied in Feb 2009 because bwr failed to make any payments. On 2/24/09 foreclosure was approved and on 3/2/09 first legal action was completed. Questions for the servicer were: there is no equity analysis done? Where there property inspections and the results? Are the taxes and insurance current since this is a non escrowed loan? Why is there no indication of servicer discussing loss mit alternatives besides loan mod? Could the servicer have made a more affordable loan mod that the bwr could have handled? |
| | | 2 | 11/19/2007 | bwr pictures unaware this is ARM loan, servicer advised ie 2yr fixed with forces adjustments thereafter | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| | | 3 | 5/29/2008 | bwr requested lower rate due to can't afford, servicer said to contact the dept to have her assessed mod, this is non escrow account. No loss mit effort or concern indicated by servicer | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| | | 4 | 7/3/2008 | bwr asked again about lowering int rate and was told may qualify of a 3 yr rate freeze but that is to b4 then up by servicer. bwr advised can't refinance due to low appraised value, requested loan mod, servicer declined loan mod request, no request plan | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| | | 5 | 7/31/2008 | servicer now indicates bwr loan being considered for rate change | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| | | 6 | 8/7/2008 | bwr asked about status of loan mod, no answer after month | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| | | 7 | 9/17/2008 | bwr offered 3 yr ARM freeze but requires $2900 down payment | 7 | Were RELO / liquidation efforts appropriate? | n/a | |
| | | 8 | 10/21/2008 | towards mod, bwr owe advised can't afford $2900 down payment but can make regular pmts, no response by servicer | 8 | Were the processes generally performed timely? | no | |
| | | 9 | 12/9/2008 | servicer denies loan mod because bwr did not make down pmt nor return executed docs, bwr said income curtailed, requested if can re-modify the loan | 9 | Did you grade any of the process steps "C"? | no | |
| | | 10 | 12/16/2008 | Bwr RFD noted B1 sxk in October 2008, unable to work. $2 bxt time from work caring for B1. lost $5k in income, asked for extension til Feb 2009 to make payment, can't refinance loan due to LTV | 10 | Was there adequate property inspection and preservation practices? | unknown | |
| | | 11 | 12/25/2008 | servicer denies trial mod plan | 11 | Were the collection, loss mit, BK, foreclosure and RELO liquidation timeliness acceptable? | | |
| | | 12 | 2/19/2009 | servicer closes loan mod, bwr failed to contribute payments | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| | | 13 | 2/24/2009 | foreclosure approved | | | | |
| | | 14 | 3/2/2009 | first legal action completed | | | | |
| | | 15 | Recap | | | | | |

**Table 2**

| Loan # | Status | Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|---|
| 8100247/08 | 90 days | 1 | 1/20/2007 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan appears to be a second lien on a SFR in Phoenix next payment due for 10/1/08 with a UPB of $50,825. No information on the first lien or any, but a note in history says the GMACM has the 1st lien, but no information in history. The bwr requested assistance in March 2008 and was told to contact the customer / in Nov 2008 the bwr advised RFD is curtailment income by $2000 per month with work as landscaper, no information on bwr working. On 7/26/09 the bwr RFD is reduced income, slow down. No loss mitigation documented as indicated on either doc. On 1/26/09 servicer performed an equity analysis which indicated a negative equity of $168K but no alternative solutions besides loan mod? Could the loan be conducted by the servicer for this loan? |
| | | 2 | 3/14/2008 | bwr requested pmt assistance, servicer suggested contact Direct of customers | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| | | 3 | 11/17/2008 | bwr RFD works in landscaping, business slows in October, reduction of $2000 monthly income, no loss mitigation documented, note in history senior lien is with GMACM, if so, why isn't the servicing coordinated for both liens? | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| | | 4 | 12/16/2008 | RFD same, curtailment of income | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| | | 5 | | | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| | | 6 | 1/26/2009 | equity analysis indicates negative equity of -$168K, no information in history concerning financial status, 1st lien status, pmt status does bwr have repayment intent | 6 | Were there any unnecessary FC or BK delays? | no | |
| | | 7 | 3/13/2009 | system note that loan is 150 days delinquent | 7 | Were RELO / liquidation efforts appropriate? | n/a | |
| | | 8 | | | 8 | Were the processes generally performed timely? | n/a | |
| | | 9 | | | 9 | Did you grade any of the process steps "C"? | no | |
| | | 10 | | | 10 | Was there adequate property inspection and preservation practices? | no | |
| | | 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and RELO liquidation timeliness acceptable? | unknown | |
| | | 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| | | 13 | | | | | | |
| | | 14 | | | | | | |
| | | 15 | | | | | | |

**CONFIDENTIAL**

RCPC00065257

## First Table

| Loan # | Status | Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|---|
| 810024811 | 120 days | 1 | 1/29/2007 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan appears to be a first lien on a SFR in Montebello, CA with a UPB of $268,317 and next payment due 11/1/08. The borrowers bounced at least three checks for monthly payments in 2007 and certified funds were required after that. On 1/24/07 a breach letter was sent to the bwr, and on 1/18/08 the servicer advised the borrower of loan arrears. bwr did not provide financials at that time, condition of property, etc. On 10/2/08 bwr called in and was transferred to Spanish speaking collector; servicer advised that loan mod team would review for workout; there is no follow up information about this in the rest of the history. On 2/3/09 a mailer called regarding a short sale, no follow up by servicer. The servicer approved foreclosure action on 2/19/09 and first legal action was completed on 2/26/09. On 3/12/09 a realtor from Coldwell Banker called with a short sale offer of $179K for the property, and on 3/23/09 the servicer received a workout package from the borrower. Questions for the servicer: Why is there no indications of loss mitigation discussions with the borrower in the history? What were the reasons for default? What was the borrower's financial condition? Was there any equity analysis done to augment the foreclosure decision analysis process? What is the property condition and occupancy status? Why were there so few conversations with the borrower over the timeline of this loan? |
| | | 2 | 4/2/2007 | Nov 2006 returned NSF?; Jan 2007 check also NSF | 2 | Was the transaction history complete (as of loan set-up)? | no | |
| | | 3 | 9/27/2007 | another NSF check for pmt received 9/14/07 | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| | | 4 | 1/24/2007 | breach letter sent | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| | | 5 | 1/18/2008 | advised bwr of arrears, bwr did not provide financials, claims sent 3 separate checks to cover pmts | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| | | 6 | 10/3/2008 | breach letter sent | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| | | 7 | | loan due for Aug, Sept, Oct pmts; transferred bwr to Spanish speaking collector; servicer advised w/ workout referral with modification team. There was no indication in loan history if the loss mitigation group ever reviewed this bwr situation or offered any solution to the borrower. NO HRD mentioned, no loan level detail/employment information indicated in loan history. | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| | | 8 | 2/3/2009 | mailer called regarding possible short sale; no followup by servicer, indicated in loan history | 8 | Were the processes generally performed timely? | no | |
| | | 9 | 2/19/2009 | foreclosure action approved | 9 | Did you grade any of the process steps "C"? | unknown | |
| | | 10 | 3/12/2009 | Realtor for Coldwell Banker called with short sale offer of $179K arrange RFD of sale/ not booth; no explanation, details or method to reference to REO. servicer also gave bwr information on ptd on 1st pmt to 2007, so both bwrs must be serviced by GMACM. | 10 | Was there adequate property inspection and preservation practices? | | |
| | | 11 | 3/23/2009 | servicer indicates received short sale workout package from bwrs or 3rd party | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timelines acceptable? | no | |
| | | 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| | | 13 | | | | | | |
| | | 14 | | | | | | |
| | | 15 | | | | | | |

## Second Table

| Loan # | Status | Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|---|
| 825480864 | 5 pmts | 1 | 8/21/2004 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | | This loan appears to be a second lien on a property in Apple Valley, CA with a UPB of $55,401 and next payment due 11/16/08. The borrower contacted the servicer in January 2008 to inquire about and complained of income, requested pmt arrangement but the did not have funds to pay. servicer advised to refinance and transferred loan to refinance dept. How does a bwr attempt to refinance his mortgage? In January 2009 the borrower advised been OOW since Aug 2008 and now recently back to work. Provided servicer with updated financials and servicer referred loan mod consideration. On 2/6/09 the servicer recommended loan mod reducing the interest rate, P&I payment, and extending the term 31 months, with a required down payment of $4950. On 2/25/09. Servicer claims not enough equity to foreclose. An equity analysis on 2/12/09 indicated negative equity of -$191,786. Questions for the servicer: What is the first lien status and if GMACM is servicing both the first and 2nd liens how are they coordinated? Why is there no information in the history provided about the borrower's financial condition and occupancy status and is the property still a viable loss mitigation options, and if the borrower lives at a different address than the property, who occupies the property and is there rental income? |
| | | 2 | 1/29/2008 | bwr bwrt job (2 wks ago, RFD unemployment) and curtailment of income and transferred to collections when inquired about pmt arrangement; servicer offered repay plan and bwr said can't afford; servicer advised bwr to refinance and transferred to Refi dept. bwr asked about available $ from 2nd and was advised a c/d closed 2nd lien isn't a HELOC. servicer also gave bwr information on ptd on 1st pmt to 2007, so both bwrs must be serviced by GMACM | 2 | Was the transaction history complete (as of loan set-up)? | | |
| | | 3 | 1/23/2008 | change in bwr address, note that mailing address is in same complex as property address | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| | | 4 | 1/29/2009 | bwr stated RFD out of work since Aug 2008, just started back to work, bwr gave updated financial info, servicer said would refer for loan mod | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| | | 5 | 2/6/2009 | servicer recommends a permanent mod of loan with reduced rate, payment and extension of term by 31 months; servicer comment that there is not enough equity to foreclose on property. Loan mod requires payment of $4950 down payment by 2/22/09 from bwr | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| | | 6 | 2/12/2009 | Equity analysis by servicer indicates negative equity of -$191,786. No information about 1st lien in history | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| | | 7 | | | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| | | 8 | | | 8 | Were the processes generally performed timely? | | |
| | | 9 | | | 9 | Did you grade any of the process steps "C"? | | |
| | | 10 | | | 10 | Was there adequate property inspection and preservation practices? | unknown | |
| | | 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timelines acceptable? | | |
| | | 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| | | 13 | | | | | | |
| | | 14 | | | | | | |
| | | 15 | | | | | | |

**CONFIDENTIAL**

RCPC00065258

## Loan # 8254543078 — Status: 30 days

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 8/15/2006 | loan boarded |
| 2 | 11/2/2006 | funds reversed and applied to 1st mortgage |
| 3 | 5/11/2007 | bwr requested deferment of 2 pmts because needed $for other expenses, no explanation of expenses, servicer told bwr that account is current to call back when delinquent, no resolution of bwr request by servicer |
| 4 | 8/29/2007 | |
| 5 | 3/13/2009 | delinquent 90 days |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | no |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | n/a |
| 9 | Did you grade any of the process steps "C"? | unknown |
| 10 | Was there adequate property inspection and preservation practices? | |
| 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | |

**Comments:** This loan is a second lien on a property in Phoenix, AZ with a UPB of $61,710 and next pmt due 2/15/09. Minimal conversations between servicer and borrower but borrower requested pmt deferment at least twice and request was not resolved by servicer, nor was an explanation for the deferment request noted. Servicer told borrower no deferments, call back when she is delinquent. As of 3/2009 the borrower was due for the 2/15/09 and 3/15/09 payments. There is no information about the first lien ever though this servicer had to reverse and reapply a payment from this loan to the first lien. There is no equity analysis, no property inspection history, no apparent coordination of handling the two liens. No financial information on the borrower noted in history.

## Loan # 7350066667 — Status: 180 days +

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 3/6/2006 | loan boarded |
| 2 | 6/9/2008 | NSF check |
| 3 | 6/23/2008 | bwr advised using 3rd party to assist with this mtg, RFD is biz failure in March 2008, bwr wouldn't provide details |
| 4 | 7/9/2008 | 3rd party inquired about short sale, transferred to loss mit dept, no details on discussion with borrower. On 7/16/08 a 3rd party on short sale pkg, on 7/22/08 the servicer sent the bwr a breach letter |
| 5 | 8/12/2008 | 3rd party advises that a short sale offer of $362K was made and first time/home still reviewing, no other details |
| 6 | 8/19/2008 | bwr advised doesn't have funds to make pmts, biz is slow, wouldn't provide details on RFD or financials over phone. The servicer calls the bwr 5 times in August and asks the same questions and gets the same answers |
| 7 | 9/22/2008 | short payoff approved where 2nd lien receives $10K settlement towards amounts due, servicer states MV is $429K, this declined $270K in 3 years, Fifth Third Bank is first lien holder and making offer of $10K for 2nd lien |
| 8 | 11/24/2008 | two months later history notes that short sale did not close, no explanation provided, no follow up anchored by servicer |
| 9 | 11/26/2008 | Servicer decides to do a full charge off of loan, to "charge off recovery amount that will not be liquidated". Unclear as to what that means |
| 10 | 12/17/2008 | bwr advised that first lien now in foreclosure, bwr still at property, only gets $3K monthly towards all expenses, can't make payments on 2nd lien now |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | no |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | Were REO / liquidation efforts appropriate? | |
| 8 | Were the processes generally performed timely? | |
| 9 | Did you grade any of the process steps "C"? | n/a |
| 10 | Was there adequate property inspection and preservation practices? | |
| 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | n/a |

**Comments:** This loan is a second lien on a property in Clermont, FL, owner occupied, with a UPB of $99,000 and next payment due 5/2008. The borrower called in June 2008 to make payments due 5/08 and to assist with the mortgage. RFD was failure of business in March 2008 and very little income now, not enough to make payments on all debts. The bwr wouldn't provide financial info. On 7/16/08 a 3rd party inquired about a short sale and was transferred to loss mit dept, no details provided in history. On 7/16/08 the servicer rec'd a short sale information pkg from the bwr. A breach letter was sent to the bwr on 8/1/08. The bwr advises that he doesn't have funds, biz is closed, wouldn't provide more details. The servicer called bwr at least 5 times in same month and got the same story. No info provided in history about first lien status, value and condition of property, or other loss mitigation. An equity analysis on 9/19/08 indicated a negative equity of -$383,939. On 9/22/08 the servicer approved a proposed short sale where the first lien holder (Fifth Third Bank) offered $10K to the second lien as a settlement. Why say that property has declined in value by almost $270K in three years. On 11/24/08, note in history says short sale did not close, no explanation provided, and on 11/26/08 note says that full charge off of this lien was completed. On 12/17/08 the bwr and he advised that the first lien is in foreclosure and he is still in house, only has $3K in monthly income, can't make payments on 2nd lien. No note collected on this note. Servicer should continue to follow up to see if can be collected on note.

CONFIDENTIAL

RCPC00065259

**Loan #** 8254071631    **Status** 90 days

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer |
|---|---|---|---|---|---|
| 1 | 9/5/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | 1/11/2009 | fir to bwr on options to avoid foreclosure | 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | 2/6/2009 | bwr advises in real estate biz which is greatly reduced now, no cash flow, no savings, no 401K request assistance, RFD curtailment of income | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | 2/10/2009 | blind bulk permanent modification offer mailed to bwr | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | n/a |
| 5 | 2/13/2009 | servicer equity analysis indicates negative -$520K equity, no resolution of arrears, no response by borrower to modification offer, no info on a 1st or second lien besides this loan, no info on property value or condition, no info on financial condition noted in history by servicer | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | 3/23/2009 | | 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | | | 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | | | 8 | Were the processes generally performed timely? | n/a |
| 9 | | | 9 | Did you grade any of the process steps "C"? | n/a |
| 10 | | | 10 | Was there adequate property inspection and preservation practices? | n/a |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |

**Comments:** This loan could be a first or second lien on a residence in Haines Beach, FL with a UPB of $531,7223 and next pmt due for 12/9/08. There were no conversations documented between the servicer and borrower until 2/6/09 when the bwr's husband explained that they are in the real estate business and it is really slow now, have no 401K, no savings, down to 1 income and will not be able to make payments. This conversation resulted in no 1st or 2nd loss mitigation discussion, no financial info taken, no resolution of loan arrears documented in history provided. On 2/10/09 the servicer mailed a blind bulk permanent mod offer to the bwr. On 2/26/09 the servicer equity analysis indicated a negative equity of -$520K for the property. As of the end of the history on 3/23/09 there is no resolution of the arrears, no response by the bwr to offer, no mention of short sale deed in lieu or other options with the loan, no info on property condition or value, no information on a first or second lien on the property. This is a large loan balance and should be monitored by the servicer closely.

---

**Loan #** 8658106566    **Status** 180 days

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer |
|---|---|---|---|---|---|
| 1 | 7/2/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | 3/26/2009 | servicer contact borrower, was also tracing bwr down? | 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | 7/14/2008 | bwr requested hardship package, no details provided why | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | 11/25/2008 | bwr advised unable to pay at all now, will call back with financial info, also calling HOPE NOW program for assistance with this 2nd lien and the first lien. No info on 1st lien. bwr advised RFD is work hours slow for past 14 months, wife is OOW, curtailment of income. What's his occupation? He advised tied to stock market and income cut in half for past 2 years. | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no |
| 5 | 12/5/2008 | servicer sent blind bulk perm mod offer to bwr | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | 12/22/2008 | servicer negative equity calculation of -$463K, no info on first lien | 6 | Were there any unnecessary FC or BK delays? | n/a |
| 7 | 1/16/2009 | lien in loan history provided | 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | 2/4/2009 | another mod offer sent to bwr | 8 | Were the processes generally performed timely? | no |
| 9 | 2/22/2009 | 3rd party inquired about its fit to sell short sale offer | 9 | Did you grade any of the process steps "C"? | y |
| 10 | 3/5/2009 | servicer sent settlement offer of $15,526 to bwr if paid by 3/23/09 | 10 | Was there adequate property inspection and preservation practices? | unknown |
| 11 | 3/21/2009 | servicer reject authorization from bwr to deal with 3rd party regarding possible short sale offer. No mention of first lien status or terms of short sale in lien history. | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |

**Comments:** This loan is a 2nd lien on a property in Stanside, FL with a UPB of $194K and next payment due 10/1/08. The bwr mailing address is in Minneapolis, MN and the property occupancy and condition is not mentioned in the loan history. There were minimal contacts with borrower in the 2 years of loan. In March 2008 bwr says unable to contact borrower no also trace efforts mentioned in history. On 7/14/08 the borrower advised having financial problems and requested a hardship package, no details in history on bwr's situation. On 11/25/08 the bwr advised can't pay anything right now will call back with financial info, advised also calling HOPE NOW program for help, which is helping bwr with the first lien. This second lien is rather large at $194K and there is no first lien information anywhere in the loan history regarding UPB, delinquency, foreclosure action, or lienholder identity. Bwr claims RFD is work hours slow for 14 months and curtailment of income as tied to stock market and income was cut in half for past 2 years. On 12/22/08 and again on 2/4/09 the servicer sent 12/5/08 the bwr gave financial info by phone but not details on blind bulk permanent modifier offer letter to the borrower stated against negative equity of -$483,536 on 1/16/09, no on first ring. A 3rd party inquired about sending a short sale and received the package on 3/21/09 from bwr. On 3/5/09 the servicer sent a settlement offer of $15,526 if paid by 3/23/09. Question for servicer: borrower doesn't live in Florida home, who does? Rental income? Who has the first mortgage and what is the loan status? What are the results of the property inspection and condition?

CONFIDENTIAL

RCPC00065260

**Loan #** 7392120330J    **Status** liquidated

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 3/9/2006 | loan boarded |
| 2 | 9/5/2008 | equity analysis indicates negative value of -$333K; workout package sent to bwr at 45 pymts delinquent; no contacts with borrower apparently for 3 years. A charge off review should be prepared |
| 3 | 9/24/2008 | servicer sent settlement offer of $40K at pyd by 11/21/08 |
| 4 | 11/12/2008 | workout package sent to bwr, no session given |
| 5 | 11/21/2008 | full charge off of balance per history, loan UPB remains on system |
| 6 | 11/24/2008 | servicer sent another settlement offer of 50%UPB if pd by 12/18/08 |
| 7 | 12/8/2008 | bwr advised he is arranging a short payoff |
| 8 | 1/15/2009 | servicer sent another settlement offer offering 10% UPB by 3/30/09 or 20% UPB by 4/14/09 |
| 9 | 3/17/2009 | bwr called about settlement for 10%UPB, wanted to pay over 3 months but servicer said lump sum payment required; borrower said had been ill for 6 months and not paying. she advised that lien is now in foreclosure and has insurance issues; end of loan history provided |
| 10 | 3/29/2009 | No historical info, no rpt lse info, no discussion of loss mit options including sale of trustee and other options; equity analysis, negative equity, -$189K; no information about first lien, property value, property condition, occupancy, financial info |
| 11 | | no tenant rental income info made available if any in history provided |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a second lien not owner occupied property in Queens Village, NY with a UPB of $114,396 and next payment due for 5/20/06. The borrower mailing address is Jamaica, NY nearby. There was no information on the first lien in this loan history. There was no contact with the borrower for all of 2006, 2007 and most of 2008. There was no skip traces indicated in the history. On 9/30/08 when the loan was due for 5 pymts the servicer did an equity analysis and determined a negative equity of -$333K for the property. At this stage of delinquency for a 2nd lien there should have been a charge off review. On 11/12/08 the servicer sent a settlement offer for $40K which was ignored, another settlement offer for 40% of UPB on 12/8/08, and another settlement letter for 10% UPB by 3/30/09 or 20%UPB by 4/14/09. On 11/24/08 the history notes a full charge off was completed*, but the loan balance remains on the system for future possible collections. No analysis the charge off transaction indicated in the history. On 3/20/09 the borrower inquired about paying the 10% UPB over 3 months and servicer stated must be lump sum. Bwr advised the 'had been ill for 5 months and best income. Questions for servicer who is living at the property and is there rental income? What is the first lien status and how they been contacted; what is the property value, occupancy status and property condition? What best mitigation options did you discuss with the borrower. None of these question appear to be answered within the loan history and the servicer did not do a thorough job prior to charge of |
| 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | no | |
| 9 | Did you grade any of the process steps "C"? | unknown | |
| 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | | |

**Loan #** 7392130597    **Status** settlement

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 3/12/2006 | loan boarded |
| 2 | 9/26/2007 | bwr advised renter is not paying; requested waiver of speedpay |
| 3 | 3/21/2008 | servicer to advise HELOC line closed due to equity drop; advised bwr owes 4 pmts; bwr did not provide financials, RFD; slow work on contractor, renter not paying, repairs using up savings |
| 4 | 5/22/2008 | RO: tenants not paying rent; servicer should discuss loss mit options including sale of trustee and other options; equity analysis, negative equity, -$158K; no information about first lien, property value, property condition, occupancy, financial info |
| 5 | 5/29/2008 | loss mitigation efforts appropriate; no information about first lien, property value, property condition, occupancy, financial info |
| 6 | 6/11/2008 | bwr advised again he is 4x slow for 12 months, said $15K refused to provide updated financial info |
| 7 | 6/17/2008 | bwr requested pymt plan, no followup by servicer noted in history |
| 8 | 6/23/2008 | note states senior lien holder is current and past due for 8/08 pmt |
| 9 | 8/6/2008 | note that this loan is 90 days delinquent |
| 10 | 8/6/2008 | modification approved for this loan, and then servicer denied it because bwr would not pay towards agreement |
| 11 | 8/12/2008 | servicer settlement letter |
| 12 | 10/9/2008 | servicer recommends accepting $59X3 as settlement of loan at charge off remaining balance |
| 13 | 11/17/2008 | servicer received $56K3 from bwr and charged off rest of UPB |
| 14 | 11/18/2008 | servicer received $56K3 from bwr and charged off rest of UPB of initial $25K |
| 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a 2nd lien on a property in Modesto, CA with a UPB of $25K and next payment due for 4/20/08. The borrower RFD of slow work and reduced income as a contractor for the prior 6 months and renter started missing rent payment, and repairs were using up his savings. There is no information on the tenant, the income, property value or the first lien status, or borrower inquired about modification in this loan history provided. The HELOC line was frozen as of 3/21/08 due to decline in value. On 1/5/2208 the bwr was advised the loan was froze, then servicer advised bwr the $25/20/08 the bwr was advised his servicer's equity analysis on 6/11/08 indicated negative equity of -$158K for the property. On 6/23/08 the bwr requested a pymt plan from bwr. On 8/7/08 a modification was approved but servicer received no followup on bwr. On 10/8/08 the servicer sent a settlement offer and bwr accepts. On 11/17/08 servicer received $56X3 to pay the second lien and charged off the remaining balance. |
| 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | no | |
| 4 | Were collection service appropriate? (i.e. were there enough attempts?) | no | |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | no | |
| 9 | Did you grade any of the process steps "C"? | unknown | |
| 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | | |

CONFIDENTIAL

RCPC00065261

**Loan # 7392153303 — Status: Serious**

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/14/2008 | loan boarded; ltter to borrower advising HELOC line of credit closed due to drop in equity | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan was a 2nd lien on a property in Ladera Ranch, CA with a UPB of $162K and met payment due for 6/2008. There was no information regarding a first lien within the loan history provided. |
| 2 | 4/14/2008 | borrower advised about loan mod and was declined; no further comments by servicer to discuss loss mit options noted in history | 2 | Was the transaction history complete (ex of loan set-up)? | y | There practically no contact with the borrower per the history and no reason for default noted in the history. On 4/23/08 the borr inquired about a loan modification but was declined but no explanation in history. The HELOC was frozen by the servicer in April 2008 due the drop in equity in the property. No information in history regarding property value decline. In Sept 2008 a workout pkg was sent to the borr without explanation, and an equity analysis states negative equity of -$465K; no info on 1st lien, the property value and condition, financial info, possible tenants, etc. |
| 3 | 4/23/2008 | servicer unable to discuss loan mod options; workout pkg sent, equity analysis states negative equity of -$465K; no info on 1st lien, the property value and condition, | 3 | Was the level of customer service appropriate, including ARM change notifications? | unknown | determined that the property had a negative equity of -$465K. On 12/4/08 this servicer sent a settlement offer to settle for $40K by 12/19/08 but no response. On 12/29/08 the servicer completed a full charge off of the loan. It seems that the servicer never reached the borrower to discuss the loan, loss mit options or determine the condition of the property. The servicer charged off the loan |
| 4 | 9/24/2008 | financial info, possible tenants, etc.; servicer sent settlement offer by mail to borr for $40,500 if paid by 12/19/08, but no response by borrower | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | without trying to work with the borrower to resolve the financial issues but no reason for default was obtained. No comments by servicer about trying to collect on the charged off balance |
| 5 | | | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 12/29/2008 | full charge off of UPB completed; no analysis of property or borrower indicated in loan history; no indication of servicer strategy for future attempts to collect or to determine first lien status... | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | | | 7 | Were the processes generally performed timely? | | |
| 8 | | | 8 | Did you grade any of the process steps "C"? | unknown | |
| 9 | | | 9 | Was there adequate property inspection and preservation practices? | | |
| 10 | | | 10 | Were REO liquidation efforts appropriate? | | |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

**Loan # 7392136032 — Status: Charge off**

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 4/14/2008 | ltr to borr regarding no contact; no skip trace or door knocker indicated in history | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is apparently a 2nd lien on a property in Laguna Niguel, CA with a UPB of $109,948, and next payment due for 5/2008. It appears that little if no contact was made with the borrower for the past 3 years as there is no indication of phone calls with the borrower anywhere. An equity analysis on 7/7/08 reports negative equity of -$294,765 for this property. The servicer ran a fee workout pkg and settlement lettrn to the bwr who did not respond and no loan balance in full on 9/25/08. The loan history provided did not indicate any first lien info, no property condition, market value or occupancy, no financial information from borrower, no loss mitigation efforts by servicer; no record of contacts with borrower or first lien holder. The servicer made very little effort to collect this loan according to the history provided. |
| 2 | 5/20/2008 | note loan is 60 days delinquent; sent another request for contact | 2 | Was the transaction history complete (ex of loan set-up)? | y | |
| 3 | 6/20/2008 | moves skip trace dept no uncover any new phone numbers | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 7/7/2008 | Equity analysis: negative equity of -$294,765; no contact with bwr by phone for 3 years, | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | 8/25/2008 | sent settlement offer to bwr with response required by 9/22/08; no response by bwr | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 9/5/2008 | no response to bwr | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | 9/12/2008 | servicer declares loan delinquent 150 days | 7 | Were the processes generally performed timely? | | |
| 8 | 9/25/2008 | full charge off of account completed | 8 | Did you grade any of the process steps "C"? | unknown | |
| 9 | | | 9 | Was there adequate property inspection and preservation practices? | | |
| 10 | | | 10 | Were REO liquidation efforts appropriate? | | |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

**Loan # 7392142453 — Status: Charge off**

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/24/2008 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan appears to be a second lien on a property in Oceanside, CA with a UPB of $109,948, and next payment due for 5/2008. There are no indications of any conversations with the borrower during the history of this loan, and a few skip trace efforts did not uncover any new phone numbers. The borrower filed a Chapter 7 BK in June 2008 which was discharged in December 2008. The servicer provided did not indicate any first lien info, no property condition, market value or occupancy, no financial information from borrower, no loss mitigation efforts by servicer; no record of contacts with borrower or first lien holder. The servicer made very little effort to collect this loan according to the history provided. |
| 2 | 3/24/2008 | HELOC line frozen due to delinquency | 2 | Was the transaction history complete (ex of loan set-up)? | y | |
| 3 | 4/22/2008 | moves skip trace found no new numbers | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 5/8/2008 | comment in history 'vacant', but no property inspection reports results in history | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | 6/5/2008 | bwr filed Chapter 7 BK; file being reviewed for possible MFR | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | | Comment: per coll evaluation, will not refer at this time, no equity | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | 6/11/2008 | Equity analysis: negative-$251,692 | 7 | Were the processes generally performed timely? | | |
| 8 | 9/25/2008 | full charge off of loan balance by servicer | 8 | Did you grade any of the process steps "C"? | unknown | |
| 9 | 12/22/2008 | history note: BK discharged without reaffirmation | 9 | Was there adequate property inspection and preservation practices? | no | |
| 10 | | | 10 | Were REO liquidation efforts appropriate? | n/a | |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

CONFIDENTIAL

RCPC00065262

## Loan # 7392147500 — Status: charge off

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 3/16/2006 | loan boarded |
| 2 | 3/21/2008 | ltr to bwr that HELOC line frozen due to drop in equity |
| 3 | 7/7/2008 | RFD unable to contact bwr; no indication of skip trace, doorknockers or property inspection to ascertain if bwr at property |
| 4 | 8/27/2008 | rec'd hardship letter and financial info from bwr; RFD lost job; servicer sent flag ltr for missing items |
| 5 | 10/28/2008 | workout package sent to bwr; no comments on information received 2 months prior |
| 6 | 11/6/2008 | RFD unable to contact bwr; no indication of skip trace, doorknockers or property inspection to ascertain if bwr at property |
| 7 | 11/14/2008 | account is 120 days delinquent |
| 8 | 12/4/2008 | servicer mails settlement ltr to bwr, will accept $5493 if paid by 12/19/08, no response by bwr |
| 9 | 12/29/2008 | full charge off of UPB completed |
| 10 | 1/12/2009 | realtor called and advised property on market; on 1/14/09 partial short payoff pkg docs were received, flag for missing items |
| 11 | 3/23/2009 | servicer following up for missing docs for short sale offer review |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | This is a lien on a property in Chula Vista, CA with a UPB of $68,073 and next payment due for 6/20/08. Presumed to be a 2nd lien as loan was charged off in full on 12/29/08. There are no conversations with the borrower noted in the history provided, and the servicer attempted a few skip traces to no avail. The servicer sent a few workout packages to the bwr, and a settlement offer letter. On 1/14/09 the servicer received an incomplete short payoff package from the borrower; no details of the short sale are noted in the history. Minimal information provided in the history about the status/occupancy of the property or whether the borrower was in the home. Questions for the servicer include whether or not the bwr was spoken to and if not what was reason for default? What is the status of the fist lien? What is the property condition, occupancy value and occupancy? What was net equity value and property value? What was the NPV for the property and what is the current status of the proposed short sale? What net proceeds does the servicer expect for the mortgage from the short sale? |
| 2 | Was the transaction record history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | Were mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | | |
| 9 | Did you grade any of the process steps 'C'? | | |
| 10 | Was there adequate property inspection and preservation practices? | unknown | |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | | |

## Loan # 7392170972 — Status: charge off

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 6/20/2007 | payoff quote prepared - no reason given |
| 2 | 12/17/07 | bwr inquired on how to lower int rate and was referred to HELOC dept, no follow up on reason for inquiry |
| 3 | 1/11/2008 | Change in bwr address, no details |
| 4 | 3/25/2008 | ltr to bwr advising HELOC line closed due to equity drop |
| 5 | 7/22/2008 | breach letter sent |
| 6 | 7/22/2008 | request for contact letter sent to bwr |
| 7 | 8/22/2008 | account charged off - balance $360,395 |
| 8 | 10/28/2008 | workout pkg sent to bwr |
| 9 | 11/12/2008 | settlement offer ltr sent to bwr for $31K by 11/21/08 |
| 10 | 11/14/2008 | account is 150 days delinquent |
| 11 | 11/24/2008 | servicer charged off balance in full |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | This lien is a HELOC 2nd lien in a property in Las Vegas, NV with a UPB of $360,395 and next payment due 6/20/08. The history notes that the bwr had another property in Las Vegas. There is only one borrower contact noted when she inquired in Dec 2007 about lowering her rate and was referred to the HELOC dept. The servicer sent breach letters, request for contact letters, workout packages and settlement offer letters by mail to the borrower. What is the negative equity position on the 1st and 2nd? The lien was charged off in full on 11/24/08 when 180 days delinquent. Questions for the servicer: were skip traces, doorknockers or property inspections used to contact the bwr/hesitate none noted in history? What was the fist lien status and did they have contact with the borrower. What was the CLTV and the market value of the property to service at the negative equity number? Were any contacts made with the borrower and if so what loss mit options were discussed? What is the servicer's plans now to collect on the debt since the charge off? |
| 2 | Was the transaction record history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | Were mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | | |
| 9 | Did you grade any of the process steps 'C'? | unknown | |
| 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | | |

## Loan # 7392177227 — Status: charge off

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 7/11/2006 | no contact with bwr |
| 2 | 8/20/2008 | note that acct is 60 days delinquent |
| 3 | 9/5/2008 | bwr called in, servicer advised owed $9500, transferred to loss mitigation dept, no reason for delinquency, net equity analysis indicates -$1,395,000 negative equity, no information in history regarding fist lien or property value |
| 4 | 9/24/2008 | breach letter sent |
| 5 | 10/28/2008 | workout pkg sent to bwr |
| 6 | 11/21/2008 | workout letter sent to bwr |
| 7 | 12/4/2008 | settlement letter sent requesting $125K by 12/19/08; full charge off of entire $500K HELOC balance, no analysis of account in loan history provided |
| 8 | 12/29/2008 | account in loan history provided |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer | Comments |
|---|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y | This lien appears to be a 2nd lien HELOC in Southport, CT with a UPB of $500K with next payment due for 6/20/08. The loan was charged off in full after it turned 180 days delinquent. There is no evidence of any conversation with the borrower in three years except when he called in Sept 2008 to speak to the loss mitigation department. In the same month the servicer noted a negative equity position of $1.3 million. The lack of information on borrower contacts, status of the first lien, property condition, occupancy or market value, borrower financial condition, borrower location efforts through skip tracing, door knockers or property inspections, no analysis of the charge off and no strategy for collection of the debt post charge off. Not much effort by servicer for some standard workout letters and a settlement letter sent to borrower. |
| 2 | Was the transaction record history complete (as of loan set-up)? | y | |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | Were mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | Were the processes generally performed timely? | | |
| 9 | Did you grade any of the process steps 'C'? | | |
| 10 | Was there adequate property inspection and preservation practices? | unknown | |
| 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | Were there any major issues with the loan origination or default management of the loan? | no | |

CONFIDENTIAL
RCPC00065263

**Loan # 7392171567 — Status: Charge off**

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/20/2008 | loan boarded — bwr advised he moved out and inept property manager will fall into default. | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a second lien on a property in Kapolei, Hawaii with a UPB of $125K and next payment due for 5/02/08. The borrower's first mailing address was in Burke, VA, and this loan was charged off in full on 12/28/08, owing 5 payments since May 2008. Per the comments in the loan history, the borrower had lived in and then moved out of the property in 2007 and left it to a local property manager to handle the tenants renting the property. The borrower first called in May 2008 to state that he could not make payments anymore and requested that he speak with loss mitigation. The details of the discussions with bwr and issues are noted in the history. In July 2008 the bwr advised that two tenants caused $3K of damage that he had to be cleaned up and he is now unable to rent out. Servicer rep noted the non-payment issue but been filed. The borrower advised to provide updated financial information and advised he will put up the property for short sale. He also advised he will not be making any more payments on the property. In August 2008 the servicer noted the property inspection cancelled for this 2nd lien; a breach letter was sent; a separate letter to bwr sent advising line of credit frozen due to delinquency. As of Oct 2008 acct was 90 days delinquent per history and another workout pkg was sent to bwr. On 12/4/08 a settlement offer letter was sent to bwr with no response. On 12/24/08 the account balance was charged off in full. Questions for the servicer: What was the first lien status? Were there any other loss mit options for tenant damage and fix the property for rent? When does the borrower move now? Was the property reinspected and were a budget selected to seek source? What loss mitigation options were discussed with the borrower because none are noted in the comments except a short sale by the borrower. |
| 2 | 5/29/2008 | called bwr at POB, 3rd party advised doesn't work there | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | 7/8/2008 | called bwr and POB and party advised doesn't work there end 7/08/08 bwr advised two tenants caused $3K worth of damage and moved out, now he can't afford payments anymore, refused to provide updated financial info; he advised he will be putting house up for sale. Servicer did not ask about hazard insurance to cover the property damage, did not ask about hazard lien, did not ask about replacement of property manager, did not ask about current estimated listing price for property, did not ask what the expected income was | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 7/16/2008 | bwr advised he would not make any more payments, will be pursuing a short sale, no details on listing price or broker selected | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | 7/28/2008 | note to file that servicer cancelled inspection on this property because it is a 2nd lien. Has servicer contacted the first lienholder yet? | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 8/6/2008 | breach letter sent to bwr; 8/26/08 letter to bwr advising HELOC line frozen due to delinquent | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | 8/22/2008 | 90 days delinquent, workout pkg sent to bwr | 7 | Were REO / liquidation efforts appropriate? | y | |
| 8 | 10/10/2008 | note to history "per rep no FC activity, per CBR 1st lien due for 7/1/08, will monitor for 1st lien delinquency" who is the 1st lienholder and what is the UPB? | 8 | Were the processes generally performed timely? | y | |
| 9 | 10/31/2008 | another workout pkg sent to bwr | 9 | Did you grade any of the process steps "C"? | no | |
| 10 | 11/12/2008 | settlement offer $32,420 by 12/19/08 | 10 | Was there adequate property inspection and preservation practices? | unknown | |
| 11 | 12/24/2008 | settlement offer above $32,420 by 12/19/08 | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | 12/28/2008 | full charge off completed | 12 | Were there any major issues with the loan origination or default management of the loan? | no | |
| 13 | 1/9/2009 | settlement offer sent to bwr 30% by 1/22/09 | | | | |
| 14 | 3/11/2009 | foreclosure data, no arrangements could be made | | | | |
| 15 | | | | | | |

**Loan # 7392172241 — Status: Charged 1**

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/23/2008 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a second lien on a property in Tracy, CA with a UPB of $61K and next payment due for 6/26/08. This loan was charged off in full on 12/23/08 for reason of no equity in property. According to the loan history, this loan has a... As of comments in the history the servicer was first contacted in March 2009 after the loan was charged off 4 months ago. There was no mention of this loan since the loan was charged off in Oct 2008... but no details provided in the history. The servicer seemed to make minimal efforts to contact the borrower and collect, but then charged it off at year end. Questions for the servicer: was the contact with borrower for 3 years; was skip trace, door knockers used? Why were property inspections cancelled for this property? What was the property condition and occupancy? What occupancy did the borrower give a reason why she didn't contact the servicer until the loan was charged off this year and to help set up any financial info to help set up the proper recovery payment plan? |
| 2 | 7/14/2008 | RHD unable to contact bwr, request for contact be sent to bwr | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | 8/26/2008 | bwr 60 days delinquent, letter sent | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 10/16/2008 | equity analysis indicates negative equity of $36K | 4 | Were collection efforts appropriate? | no | |
| 5 | 10/28/2008 | workout pkg sent to bwr | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 12/4/2008 | settlement offer for $4881 by 12/19/08 sent to bwr | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | 12/23/2008 | settlement offer above 30% by 1/22/09 | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | 1/9/2009 | settlement for 30% UPB by 1/22/09 | 8 | Were the processes generally performed timely? | y | |
| 9 | 3/19/2009 | first indication of conversation with borrower since loan boarded bwr advised minimal efforts to contact her about this property. This loan not possible, RHD overextended budget, sister had been helping with bills but got married and moved out, bwr advised can't afford 5 yr recovery plan nor settlement but can send in $150 per month, sent $100 pmt from bwr and applied to recovery | 9 | Did you grade any of the process steps "C"? | y | |
| 10 | | | 10 | Was there adequate property inspection and preservation practices? | unknown | |
| 11 | | | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

CONFIDENTIAL

## Loan # 7440322253  Status BK-1051-days

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 3/1/2006 | loan boarded. RFD bwr illness & placed funds in wrong bank account |
| 2 | 6/1/2006 | bwr had problems with NG checks. servicer should require certified funds. RFD "checking acct funds were stolen" |
| 3 | 6/29/2006 | foreclosure started. RFD both bwrs are paid once monthly and paychecks were late |
| 4 | 7/3/2006 | foreclosure sale date scheduled for 8/24/06; then recd reinstatement funds put hold on f/c; 7/24/06 RFD borrower had unexpected medical bills |
| 5 | 12/12/2006 | problems with NG checks and ACH funds drawn from wrong account. 5/22/06 foreclosure referral approved |
| 6 | 1/2/2007 | RFD bwr DUI conviction caused loss of about $10K for court costs, atty fees, cost of purchasing income to drive to work |
| 7 | 2/8/2008 | bwr files Chapter 13 BK. 10/22/07 case supposedly dismissed. 11/12/07 foreclosure referral approved again. 11/30/07 BK dismissed entire acct set aside and BK is active again |
| 8 | 12/14/2007 | account now 180 + days delinquent |
| 9 | 1/17/2008 | note says BK proof of claim not found |
| 10 | 1/24/2008 | RFD bwr complains proof of claim not needed. this is one year after the borrower originally filed. no excuse for the delay |
| 11 | 5/5/2008 | BK payment plan confirmed for $188.67 monthly |
| 12 | 2/25/2009 | bwrs called in inquiring about loss mitigation options and servicer advised that they need their atty to give authorization for servicer to discuss options with them since the BK is active |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | Were there any unnecessary FC or BK delays? | yes |
| 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | no |
| 9 | Did you grade any of the process steps "C"? | |
| 10 | Was there adequate property inspection and preservation practices? | unknown |
| 11 | Were there any major issues with the loan origination or default management of the loan? | no |
| 12 | | |

Comments: This loan is a first lien on a property in Kernersville, NC with a UPB of $114K and next due for 2/1/08 pmt. The loan history is 264 pages of mostly repetitious servicing notes about BK processes, holds on inspections and other administrative processes. The borrower stated numerous reason as excuses for default: borrower illness, funds placed in wrong account; excessive obligation to; borrowers paychecks were late, unexpected medical bills and the last one was borrower was arrested for DUI and had to pay nearly $10K for court and attorneys fees and to buy a scooter to drive. The servicer started foreclosure in July 2006 but the borrower reinstated the loan. The servicer again started foreclosure in Dec 2006 and the borrower filed Chapter 13 BK in Feb 2007 there was a dismissal order issued in Oct 2007 and the dismissal was set aside in Nov 2007. On 1/24/08 the servicer notes proof of claim order was completed and the actual court filing of the POC took place on 2/8/08 according to history. one year after the borrower filed. The payment plan was confirmed on 4/5/08 and the history over a year after the initial filing. On 2/25/09 the borrower inquired about loss mitigation options and was told to obtain authorization from their atty since the BK is active. In July 2006 but the borrower reinstated the loan. any extra time in BK. The servicer note indicates this is an active bankruptcy. No further developments in history provided.

---

## Loan # 7440530850  Status BK-122-days

| Time Line (Detailed) | Tran Date | Description |
|---|---|---|
| 1 | 3/7/2006 | loan boarded |
| 2 | 5/15/2006 | repay plan submitted. financials taken. servicer notes qualifies for 5 month plan |
| 3 | 7/26/2006 | RFD bwr motion to vacate ACH was set up to "handle pmts. just after bwr had requested that ACH be stopped |
| 4 | 9/20/2006 | RFD excessive obligations. 9/26/06 repay plan activated again bwr can only remit 1 pymt but owes 3 pmts. servicer won't accept due to failed repay plans and 3 payments due. RFD medical bills and car repair costs. workout plan sent to bwrs |
| 5 | 11/8/2006 | foreclosure action started |
| 6 | 12/6/2006 | Chapter 13 BK filed by bwrs |
| 7 | 10/16/2007 | releasing from BK as relief has been granted. 10/17/07 breach letter sent |
| 8 | 10/25/2007 | bwr filed motion to vacate the relief granted by MFR filing |
| 9 | 11/2/2007 | bwr advised going back to court with atty to reactivate BK |
| 10 | 11/15/2007 | court granted bwr request and set aside relief and established new SMS payment plan |
| 11 | 11/19/2007 | Relief granted but bwr has to make $4175 down payment to enter into Adequate Protection Order |
| 12 | 11/15/2008 | foreclosure status all pmts received. AO cured to 1/15/09. Loan continues in Chapter 13 BK |
| 13 | | |
| 14 | | |
| 15 | | |

| Question Number | Question | Answer |
|---|---|---|
| 1 | Was the servicing record history provided (hard or soft copy)? | y |
| 2 | Was the transaction history complete (as of loan set-up)? | y |
| 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a |
| 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y |
| 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no |
| 6 | Were there any unnecessary FC or BK delays? | no |
| 7 | Were REO / liquidation efforts appropriate? | n/a |
| 8 | Were the processes generally performed timely? | y |
| 9 | Did you grade any of the process steps "C"? | |
| 10 | Was there adequate property inspection and preservation practices? | unknown |
| 11 | Were there any major issues with the loan origination or default management of the loan? | no |
| 12 | | |

Comments: This loan is a first lien on a property in DeSoto, MO with a UPB of $116K and next payment due for 12/01/08. The loan is currently under Chapter 13 bankruptcy protection and the borrower is making payments under the plan. The history has previous repayment plans and workouts. The borrowers' RFD included they thought ACH was taking care of payments, ACH rejected due to non-sufficient funds, excessive obligations, medical bills and car repair costs. The borrower filed for Chapter 13 the next month. The servicer started foreclosure in Nov 2006 but the borrower filed Chapter 13 the next month. The servicer received notice on 10/16/07 that relief from the BK stay was filed and the borrower went to court in Nov 2007 and had the stay reinstated and a new payment plan was established. The property was not included in the original filing petition. Further notes state payments received, AO cured to 1/15/09. The history does not indicate the NPV or the occupancy of the property. This history is 213 pages long. |

---

**CONFIDENTIAL**

RCPC00065265

**Loan #** 7440334662    **Status** REO

| Time Line (Detailed) | Status | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|
| 1 | REO | 3/7/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a first lien on an investment property in Social Circle, GA with a UPB of $199K and next payment due for 2/1/08. The borrower advised the servicer of RFD. he had a tenant died, struggling to make payment because only one tenant at property, used up savings, can't afford house, bwr out of work for a year. Foreclosure action was approved in April 2008 and in June 2008 GMACM announced a maintenance. A realtor contacted the servicer on the day of the sale with a buyer offer of $140K (short payoff) and said put on hold. On 10/17/08 the foreclosure sale was completed. the $140K offer for marketing. There was no redemption period. On 11/25/08 the marketing plan for the REO was approved and the property was listed. Questions for the servicer: what was the property condition, occupancy, and market value at the time of foreclosure? Did the servicer discuss all possible loss mit options with the borrower including deed in lieu? If the husband (coborrower) had passed, did the wife receive life insurance proceeds to help with living costs? |
| 2 | | 6/19/2007 | RFD bwd said oversight | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | | 2/6/2008 | RFD there is one, husband, bwr (servicer did dq ask fo death certificate), used up savings, property for sale | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | | 2/25/2008 | Bwr called still not working in 1 year, can't afford house, unable to sell house yet. Savings ran out, now have only one tenant paying rent, behind his is an investment property. bwr advised unable to rent out part of property, has potential buyers but sale questionable | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y | |
| 5 | | 4/7/2008 | servicer approves foreclosure, 4/25/08, comment in history | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | | 4/23/2008 | actual fwr, but no details or further info | 6 | Were there any unnecessary FC or BK delays? | no | |
| 7 | | 6/2/2008 | servicer rep of property reports vacant and locked, 6/3/08 GMACM announces foreclosure maintenance | 7 | Were REO / liquidation efforts appropriate? | yes | |
| 8 | | 8/5/2008 | on day of foreclosure sale realtor called with offer for $140K, claims they are trying to get the contract from buyer who was just in a week | 8 | Was the processes generally performed timely? | yes | |
| 9 | | 10/17/2008 | foreclosure sale completed now REO, buyer did not come through with purchase | 9 | Did you grade any of the process steps "C"? | | |
| 10 | | 11/25/2008 | marketing plan approved | 10 | Was there adequate property inspection and preservation practices? | unknown | |
| 11 | | | | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |

**Loan #** 7440431195    **Status** 150 days

| Time Line (Detailed) | Status | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|
| 1 | 150 days | 3/6/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a first lien on a property in Houston, TX with a UPB of $77K and next payment due for 9/1/08. The borrower advised the servicer of RFD: he had been sick at least 4 repayment plans to help this borrower through his troubles and in Feb 2009 approved a permanent modification which adds the payment, etc. As of the 3/23/09 history end date the terms of the new modification had not been entered to the loan system. no explanation given. The borrower had numerous reasons for default: illness, out of work for a year, has no savings, son's legal problems for attorney fees, storm damaged his car and he couldn't work, not indicted in the history provided what is the status of the property market value, property condition, borrower financial any other fees, or if all loss mit loss mitigation options were discussed with the borrower. There was no indication in the history why the permanent modification terms approved in Feb 2009 had not incorporated in the loan servicing system by 3/23/09. The servicer may have been better off evaluating and approving a permanent modification earlier in the default timeline instead of setting up 4 failed repayment plans with the borrower. |
| 2 | | 1/29/2006 | RFD bwr has other obligations, no financial info taken, loss mit options discussed? | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | | 2/22/2006 | RFD bwr had been sick, claims mailed pmt | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | | 4/3/2006 | RFD borrower owe for year | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | y | |
| 5 | | 6/9/2006 | RFD borrower owe for taxes, pmt account on escrow accruals, current esc bal is negative $4500, 6/24/08 RFD hospitalized is month and QOW | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | | 8/21/2006 | foreclosure action approved | 6 | Were there any unnecessary FC or BK delays? | no | |
| 7 | | 9/12/2006 | bwr RFD legal problems and expenses with son who got in legal trouble, bwr does not qualify for mod due to low income, bwr sent reinstate $ amt to reinstate | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | | 10/23/2008 | replay plan cancelled, no pmt made, 10/17/08 RFD: storm damaged his car, not able to work, servicer set up another replay plan | 8 | Was the processes generally performed timely? | | |
| 9 | | 12/4/2008 | replay plan cancelled again, pmt not made | 9 | Did you grade any of the process steps "C"? | | |
| 10 | | 12/17/2008 | trial mod plan setup replay plan, 2/6/09 replay plan cancelled 3rd time | 10 | Was there adequate property inspection and preservation practices? | n/a | |
| 11 | | 2/6/2009 | permanent mod approved, add arrears to bal, new rate and terms | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | 2/23/2009 | rec'd loss draft for $1200 for property damage | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | 3/23/2009 | amt end of history provided the modification terms have not been entered into loan servicing system, no reason or details | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |

CONFIDENTIAL

RCPC00065266

## Loan # 7440431351 — Status: REO

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/1/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | Y | This loan is a first lien on a property in Fresno, CA with a UPB of $224,116.00 and next payment due for 10/1/07. The property was foreclosed on 9/2/08 and the REO appears to have been sold on 3/17/09. The servicer notes a multitude of reasons for default offered by the borrower: curtailment of income, family medical problem, excessive obligations; mother ill, helping her with bills; plumbing problems; had to pay rent for months apt living in hotel after house was flooded; high out of pocket expenses; death in family and had to pay to ship body for burial. The servicer tried to work with the borrower but each modification plan failed. A loan modification was not completed. It was unclear from the history what the loss draft amount was and whether that amount would be sufficient to repair the house or pay off the loan. There was no information on the property condition and no discussions with the insurance company noted. The REO was sold in March 2009 but no details were given about the net proceeds. No information in history provided about disposition of the loss draft proceeds. |
| 2 | 3/5/2007 | RFD curtailment of income, work pays at e/o/m, repay plan, financial info discussed | 2 | Was the transaction history complete (as of loan set-up)? | Y | |
| 3 | 9/10/2007 | RFD family medical problem, asks for loss mit help, RFD excessive obligations | 3 | Was the level of customer service appropriate, including AVM change notifications? | Y | |
| 4 | 10/5/2007 | foreclosure approved, referred to atty | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | Y | |
| 5 | 11/30/2007 | RFD mother ill, helping her with bills, mom had accident, prior repay plan failed due to these expenses | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 2/7/2008 | repay plan cancelled; 2/22/08 loan mod request denied, RFD mom has Alzheimers got lost, had to pay for new apt for her, cost $16K | 6 | Were there any unnecessary FC or BK delays? | no | |
| 7 | 3/11/2008 | RFD home flooded, now living at hotel, servicer reset repayment plan; servicer didn't note if insurance claim was filed and amount bwr received still at hotel talking to insurance company about claim. Servicer should inspect property and note results in history | 7 | Were REO liquidation efforts appropriate? | Y | |
| 8 | 5/12/2008 | set up temp payment plan, RFD spent money due to Mom's Alzheimers disease, property uninhabitable since Feb 2008, overnight insurance money estimated impact $40K, unable to repair property and reinstate account; BPO value $ $100K and total debt is $265K | 8 | Were the processes generally performed timely? | Y | |
| 9 | 7/14/2008 | RFD can't pay due to death in family had to pay to ship body for burial. Received loss draft but no info on amount if enough to repair property and reinstate account. BPO value $ $100K and total debt is $265K | 9 | Did you grade any of the process steps "C"? | | |
| 10 | 9/2/2008 | foreclosure sale completed, bwr thought they were still working to pay loss draft | 10 | Was there adequate property inspection and preservation practices? | unknown | |
| 11 | 9/29/2008 | REO marketing plan approved | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | 11/12/2008 | REO purchase offer reviewed, approved | 12 | Were there any major issues with the loan origination or default management of this loan? | | |
| 13 | 3/2/2009 | REO purchase offer reviewed, approved | | | | |
| 14 | 3/17/2008 | property sold to 3rd party | | | | |
| 15 | | | | | | |

## Loan # 8253435223 — Status: 120+ Dys

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 6/5/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | Y | This loan appears to be a second lien on a property in Steamboat Springs, CO with a UPB of $175,585 and next payment due for 9/25/08. It is unclear if GMACM services the first lien also. By 9/25/08 the servicing of the two loans should be coordinated. The balloon loan reason for default is that borrower was laid off, self employment caused him to move out of town to look for a job, and tenant moved out of property. Trying to do a short sale, first listed at $415k, then dropped to $359K in Oct 2008. An equity analysis performed on 12/17/08 indicates negative equity of $129K, but no information was in the history provided regarding the first lien UPB or the property market value. On 12/22/08 the servicer offered a bulk permanent modification with new terms to the borrower. As of 3/23/09 and if history the loan was 150 days delinquent, with no change of review completed yet, no updated property condition, no updated list price, no information on first lien status or a foreclosure review. |
| 2 | 9/24/2008 | bwr employed has to move to where work is, has to move out and try to sell property, was rented out and tenant moved out RFD curtailment of income | 2 | Was the transaction history complete (as of loan set-up)? | Y | |
| 3 | 9/29/2008 | restore enclosed property listed at $415K; 10/15/08 house now listed at $359K | 3 | Was the level of customer service appropriate, including AVM change notifications? | n/a | |
| 4 | 10/31/2008 | report that property is vacant, difficult for har to find work, trying to achieve a short sale | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | Y | |
| 5 | 11/12/2008 | advised that 1st mtg already handled by loss mit and 2nd mtg has no referrals on loss mit, unclear if GMACM services both the first and second liens info. Not clear if GMACM services both the first and second liens being coordinated | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 12/17/2008 | equity analysis, negative -$129K, borrower requested consideration for short or workout | 6 | Were there any unnecessary FC or BK delays? | no | |
| 7 | 12/22/2008 | bwr sent failed bulk permanent modification offer to bwr, no response | 7 | Were REO liquidation efforts appropriate? | no | |
| 8 | | 150 days delinquent, so far no change of review, no apparent coordination with owner on inspection or property condition or occupancy. What is servicer doing next? | 8 | | | |
| 9 | 3/13/2009 | | 9 | Did you grade any of the process steps "C"? | | |
| 10 | | | 10 | Was there adequate property inspection and preservation practices? | unknown | |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of this loan? | no | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

CONFIDENTIAL

RCPC00065267

## Loan # 9252481041 — Status: 90+ days

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 6/9/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a second lien on a property in Kapolei, Hawaii with a UPB of $200,654 and next pmt due for 12/0/08. The bwr reasons for default include employment change, excessive obligations, depletion of savings, and 4 years of tuition expenses. The borrower requested a loan workout in Dec 2008 and again in Jun 2009. The borrower instead that he would not promise to pay until he got a servicer response concerning a loan modification. Finally, on 3/5/09 the modification was approved with lower rate, payments better terms. On 3/20/09 the servicer received the executed mod docs from the bwr. The servicer should have provided this borrower with response earlier, but with the huge case flow of loan mod requests from the borrowers it takes time to process the paperwork. |
| 2 | 8/12/2008 | husband would not discuss acct, told servicer to call wife | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | 12/5/2008 | bwr requested a workout, RFD lots of bills which started test year and holiday expenses, 401K savings depleted, no other sources of income | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 1/7/2009 | wife advised bwr paying bill get a response about a loan mod or a workout | 4 | Were collection efforts appropriate? (i.e. were there enough notifications?) | yes | |
| 5 | 1/27/2009 | bwr advised hasn't heard response to workout request | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 2/25/2009 | Bwr due for Dec 2008 pmt, would not make PTP until gets response concerning loan mod/ request RFD admits overextended self with credit cards doing house renovations and paying 4 years of college tuition for son. Bwr advised that first loss modification already did & loan mod and his credit card creditors would not lower his balances | 6 | Were there any unnecessary FC or BK delays? | n/a | |
| 7 | 2/27/2009 | workout pkg sent from bwr | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | 3/3/2009 | workout pkg sent from bwr | 8 | Were the processes generally performed timely? | | |
| 9 | 3/5/2009 | loan mod permanent modification offer mailed to bwr | 9 | Did you grade any of the process steps "C"? | | |
| 10 | 3/20/2009 | received executed mod docs from bwr | 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | | | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |

## Loan # 7440482013 — Status: Chap 13 BK

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 6/20/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a first lien on a property in Newark, NJ with a UPB of $57,199 in its next pmt due for 11/1/08. The reasons for default include switching tenants caused him to be late with payment. An action was started soon after the March 2008 boarding on 6/26/08. The bwr wanted to make 2 pmts on 6/26/08, the servicer advised the bwr he was unable to reinstate, he needed to be current and could not afford to reinstate. No RFD given throughout the default timeline. On 7/3/08 there was a pmt dispute in that the bwr did not understand his monthly billing was in question and was not current at should be. No details on how this payment dispute was resolved with the borrower. The foreclosure process generally performed timely by the servicer but apparently never completed by borrower. |
| 2 | 6/26/2008 | foreclosure started, referred to atty | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | 6/30/2008 | bwr wanted to make 2 pmts, servicer explained RI & PPLD options but the bwr was unable to reinstate, servicer said he had to be current | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 7/3/2008 | bwr didn't understand how monthly billing worked, claimed didn't what servicer stated was due, pmt dispute, no details on how resolved with bwr | 4 | Were collection efforts appropriate? (i.e. were there enough notifications?) | n/a | |
| 5 | 7/19/2008 | bwr gave authorization for services to speak with 3rd party at Houston Mortgage Funding for payoff quote, payoff obv/aaally | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | n/a | |
| 6 | 7/31/2008 | loan rescheduled for 8/1/08 foreclosure sale, on 8/1/08 the bwr filed Chapter 13 BK to put halt on foreclosure sale | 6 | Were there any unnecessary FC or BK delays? | yes | |
| 7 | 11/25/2007 | servicer notes the BK proof of claim record not found | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | 12/15/2007 | posted for bankruptcy | 8 | Were the processes generally performed timely? | no | |
| 9 | 12/14/2009 | loan is 150 days delinquent | 9 | Did you grade any of the process steps "C"? | unknown | |
| 10 | 1/4/2008 | pymt plan set up for 60 arrears pmts plus pmt petition payments | 10 | Was there adequate property inspection and preservation practices? | no | |
| 11 | 11/27/2007 | MFH request referred to atty | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | 12/27/2009 | signed order default, debtor has until 2/7/09 to cure | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | 3/23/2009 | still an active bankruptcy action | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

## Loan # 7440490003 — Status: Foreclosure

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/6/2006 | request for contract letter | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a first lien on a property in Newark, NJ with a UPB of $52,778 with its next due for 9/1/08 pmt. The reasons for default include switching tenants but the servicer does not provide any information on the occupancy of the property and the point at which the borrower became delinquent or the reason for default. Letter was sent out at least 4 times and foreclosure was started three times with the borrower reinstating in full the first two occurrences. The servicer had trouble reaching the borrower by phone and there is no indication in the notes about door knockers or property inspections to ascertain occupancy and property condition since this was a rental property. The servicer followed its standard collection policies and timelines but could have been more aggressive in determining the property information. No equity analysis was evident in the history, and discussion of loss mitigation alternatives between the servicer and borrower were not present before the Hope Now mitigation package and the bulk mod program. The borrower failed all three workouts and the property is now in the foreclosure process. The servicer could continue to work on loss mitigation alternatives up to the foreclosure sale. |
| 2 | 6/15/2006 | late with payment | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | 8/8/2006 | breach ltr sent, 10/24/06 foreclosure approved | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 10/24/2006 | 2nd breach letter sent to bwr | 4 | Were collection efforts appropriate? (i.e. were there enough notifications?) | n/a | |
| 5 | 11/27/2006 | bwr reinstated loan in full | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | n/a | |
| 6 | 4/3/2007 | breach ltr sent and again sent on 7/3/07 | 6 | Were there any unnecessary FC or BK delays? | no | |
| 7 | 11/27/2007 | skip trace effort done, not find new phone number | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | 7/28/2008 | breach ltr sent again | 8 | Were the processes generally performed timely? | no | |
| 9 | 2/12/2008 | 1st legal action completed | 9 | Did you grade any of the process steps "C"? | n/a | |
| 10 | 2/27/2008 | bwr called to make pmt arrangements, sent request to ltr atty 2 weeks ago, no response from atty, RFD: had a side job and saved funds to reinstate loan also his ceiling collapsed not covered by insurance and cost $5K to repair. On 3/21/08 the loan was current | 10 | Was there adequate property inspection and preservation practices? | no | |
| 11 | 8/21/2008 | loan reached end of interest only term and will revert to P&I pmts | 11 | Was the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | no | |
| 12 | 11/19/2008 | bulk blanket perm mod program approved and sent offer to bwr | 12 | Were there any major issues with the loan origination or default management of the loan? | unknown | |
| 13 | 12/16/2008 | bwr called to clarify terms of modification offer | | | | |
| 14 | 2/23/2009 | blanket mod program failed due to failure to pay | | | | |
| 15 | 2/26/2009 | foreclosure approved again; 3/16/09 first legal action completed | | | | |

CONFIDENTIAL

## Loan # 7440501187 — Status: 180+days

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 7/12/2007 | bwr called RFD can't make payment, curtailment of income, no other information details in history | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a first lien on a property located in Grafton, MA with a UPB of $559,214 and next payment due for 11/1/07. The borrower advised the servicer in July 2007 that his RFD was curtailment of income but the details of the bw situation were not in the history. On 8/30/07 the bwr called and gave I his RFD that he had been out of work for a month, not receiving unemployment benefits and now living on savings. The bwr also stated he is able to keep his home and not rent house to tenants. Again on 9/11/07 the bwr discussed delinquency and refused to provide financial information. Then on 11/6/07 the bwr filed Chapter 13 BK, the servicer filed its proof of claim on 12/3/07 and there is a comment on 12/14/07 that there was a petition to file Chapter 11 but no details were provided. On 2/27/08 the bwr inquired about a modification. The history does not indicate property condition, property value, current net equity, or borrower current ability and willingness to pay. |
| 2 | 8/30/2007 | bwr inquired about 3 months, now for 1 month, no unemployment benefits, wife working, but living on savings, borrower said will be filing bankruptcy | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | 9/11/2007 | bwr owes 3 pmts doesn't want to provide financial info, has no funds, doesn't want to talk to loss mit dept | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 11/6/2007 | bwr filed Chapter 13 BK, 12/3/07 proof of claim filed, petition for Chapter 11? No explanation | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | n/a | |
| 5 | 2/27/2008 | bwr inquired about a modification, while I BK? Unclear | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | Mar-08 | MFR filed, on 4/11/08 MFR granted, between April 08 and March 2009 no detail from history how servicer was handling the loan and BK case. Why no foreclosure start if relief was granted? | 6 | Were there any unnecessary FC or BK delays? | yes | |
| 7 | 11/5/2008 | bwr verified he has tenant at the property | 7 | Were REO / liquidation efforts appropriate? | no | |
| 8 | 12/15/2008 | comment in history 'breach letter placed, expiration date 1/30/04 no activity on this loan for months, no explanation for not starting foreclosure action or discussing loss mit options with the borrower since the last bwr end to get help 3/23/09, is delinquent. What is he does not want to keep property and property condition for this property? What is holding up legal action? | 8 | Were the processes generally performed timely? | n/a | |
| 9 | 3/23/2009 | | 9 | Did you gauge any of the process steps "C"? | | |
| 10 | | | 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

## Loan # 7440500134 — Status: BK 13

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/15/2006 | loan booked | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a first lien on a property in Sacramento, CA with a UPB of $454,322 and next payment due for the 10/1/08 payment. The bwr called the servicer for help on 7/9/08 and on 9/15/08 requested a loan modification. The bwr RFD back drove job loss slowed with less income. It does not appear the servicer ever sent the bwr any loss mitigation packages or requested financial information. The servicer refused bwr's request to secure stating the property was occupied. There were numerous conversations about the borrower and about borrower financial condition, property condition, makes no reasons for default or loss mitigation alternatives discussed and no BK filing. The servicer indicated the loan had not been confirmed as of 3/23/09, with no explanation for the delay indicated. |
| 2 | 7/25/2006 | bwr called to make pmt arrangements and transferred to collections | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | 9/11/2007 | collectors Chapter 13 BK plan filed | 3 | Was the level of customer service appropriate, including ARM change notifications? | n/a | |
| 4 | 2/22/2008 | bwr owes 3 pmts doesn't want to sell house, bwr set-up on collateral | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | no | |
| 5 | 9/15/2008 | Motion for relief filed for stay | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | no | |
| 6 | 10/27/2008 | servicer rep found property vacancy but cannot secure until stay is granted and property secured | 6 | Were there any unnecessary FC or BK delays? | yes | |
| 7 | 11/5/2008 | servicer won't count 12/2008 per debtor's atty property is not vacant | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | 2/19/2009 | servicer contacted post petition due date to next due 11/09 | 8 | Were the processes generally performed timely? | no | |
| 9 | 3/4/2009 | property occupied as of 1/16/09 and 2/24/09 inspections as of end of history provided the BK plan has not been confirmed by the courts since the original filing in Feb 2008 no explanation for court delay. Next payment due for 7/1/08 | 9 | Did you gauge any of the process steps "C"? | unknown | |
| 10 | 3/23/2009 | | 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

## Loan # 7440500355

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/15/2006 | loan booked | 1 | Was the servicing record history provided (hard or soft copy)? | y | This loan is a first lien on a property in Van Nuys,CA with a UPB of $473,222 and next payment due for the 9/1/08 payment. The bwr first contacted the servicer for help on 7/9/08 and on 9/15/08 requested a loan modification. The bwr RFD back drove job loss slowed with less income. There was a permanent modification submitted on 10/28/08 that would qualify for a repayment plan or a loan modification. On 9/22/08 the servicer considered a 3 month trial plan so that the servicer considered a permanent modification and sent the bwr the docs for execution. It wasn't until 1/14/09 that the bwr made the required down payment towards modification. The executed loan mod docs made it to the bwr on 1/12/09 and as of the 3/23/09 end of history provided the bwr is still due for the 7/1/08 payment. The loan terms have not been entered into the system. |
| 2 | 7/5/2006 | bwr requested loan mitigation options | 2 | Was the transaction history complete (as of loan set-up)? | y | |
| 3 | 9/11/2007 | bwr inquired about loan modification, advised work slow down as a trucker for past 3 months reducing monthly income by $2K from $5K to $3K a month, no explanation for delay, no explanation, no information in the history about current property value, property condition, equity analysis | 3 | Was the level of customer service appropriate, including ARM change notifications? | ? | |
| 4 | 9/15/2008 | bwr owes 3 pmts doesn't want to sell house, bwr set-up on repay plan, bwr advised he'd paid 2007 re taxes yet | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | ? | |
| 5 | 9/22/2008 | bwr received trial 3 month temporary modification plan, 10/28/08 servicer approved permanent modification for bwr | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | n/a | |
| 6 | 12/11/2008 | bwr received trial I rec'd loan mod docs yet, on 12/15/08 the servicer rec'd executed docs from bwr | 6 | Were there any unnecessary FC or BK delays? | ? | |
| 7 | 1/12/2009 | servicer called bwr for down payment funds (1 month later) and bwr sends in required $2754 on 1/4/09 | 7 | Were REO / liquidation efforts appropriate? | n/a | |
| 8 | 3/11/2009 | history indicates loan mod complete | 8 | Were the processes generally performed timely? | ? | |
| 9 | 3/23/2009 | as of end of history provided the servicer system has not been updated with new loan mod terms, no explanation for delay, no information in the history about current property value, property condition, equity analysis | 9 | Did you gauge any of the process steps "C"? | | |
| 10 | | | 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

CONFIDENTIAL

RCPC00065269

**Loan #: 7446569521**  Status: (0 late to 3rd pty)

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/1/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | | This loan is a first lien on a property in Moreno Valley, CA with a UPB of $270K and next payment due for 7/1/08. The borrower is renting out his property since he lives in Arizona, but property was vacant in 2008. There is no indication of loss mitigation efforts by the servicer in the history provided such as suggesting sale of property or deed in lieu. On 9/10/08 foreclosure action was started and then the borrower submitted a short sale offer package for $140K in October 2008. The foreclosure sale was postponed 45 days from 1/22/09 in order to obtain the second lien servicer's approval of a $2K settlement offer as part of the short sale. Cowen accepted the $2k offer on 1/29/09 but the short sale apparently fell through. On 3/16/09 the foreclosure sale took place and the property was sold to a third party for $91,000. The history did not provide any explanation for the delay. The history did not provide any information on property value, property condition, net equity, or bidding calculations. Unclear why the servicer accepted $91K at foreclosure sale when it just processed a short sale offer of $140K. |
| 2 | 1/17/2007 | pmt plan set up indicated, no explanation | 2 | Was the transaction history complete (ie of loan set-up)? | | |
| 3 | 3/28/2007 | bwr inquired about pmt increase and was advised due to escrow arrears for tax and insurance costs | 3 | Was the level of customer service appropriate, including ARM change notifications? | | |
|  |  | bwr lives in Arizona, property in CA, bwr advised property is vacant and trying to rent out; claims maintaining property; not sure when can make payment; no indication of service intervening | | | | |
| 4 | 6/9/2008 | bwr letter to servicer requesting cease and desist future phone calls | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | | |
| 5 | 8/4/2008 | vacant property noted, no other details | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | | |
| 6 | 8/29/2008 | foreclosure action started | 6 | Were there any unnecessary FC or BK delays? | | |
| 7 | 9/11/2008 | bwr provided short sale info pkg for $149K offer where GMACM receives $158K end 2nd lien gets $2k; sent offer to Cowen for $2k as second lien servicer | 7 | Were REO / liquidation efforts appropriate? | | |
| 8 | 10/16/2008 | postponed foreclosure sale for obtaining Cowen consent to short payoff end $2K offer to settle 2nd lien | | | | |
| 9 | 1/22/2009 | SPO approved; Cowen accepted offer; no further word on short sale offer this is in bwr history | 9 | Did you grade any of the process steps "C"? | | |
| 10 | 1/29/2009 | RFD death of family, don't know why relevant info in history at this point | 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | 2/9/2009 | foreclosure sale end simultaneous sale to 3rd party for $91K. No analysis of bidding amount or why $91K was accepted at foreclosure sale. No equity analysis, property condition, market value or indication of loss mit alternatives discussion with borrower contained in history prior to foreclosure sale | 11 | | | |
| 12 | 3/16/2009 | as of this date the $91K has not been applied to pay off this loan and charge off the remaining balance. No explanation in history for delay in processing funds to account. | 12 | Were the collection, loss mit, BK, foreclosure and REO liquidation timelines acceptable? | | |
| 13 | 8/29/2009 | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

**Loan #: 7446569848**  Status: BK or 150 days delinq?

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|
| 1 | 3/1/2006 | loan boarded, bwr advised income is slow; income reduced, curtailment of income, looking for additional work, no indication in servicer history of loss mitigation alternatives were discussed with the borrower | 1 | Was the servicing record history provided (hard or soft copy)? | | This loan appears to be a first lien on a property in Chattanooga with a UPB of $106,796 and next payment due for 1/1/08. The borrower first contacted the servicer in March 2006 to advise that work slowed down and income has been curtailed. Per the loan history provided there is no indication that the servicer discussed loss mitigation alternatives with the borrower. On 8/29/06 the bwr filed Chapter 13 BK and on 9/9/06 the servicer sent its proof of claim referral to the atty. On 4/29/08 the bwr called about loan modification apparently while still in bankruptcy. On 8/15/08 the bwr asked about loss mitigation workout pkg by the servicer and a hardship letter. It is unclear if BK case was active, had been dismissed or discharged by the court. The bwr inquired in January 2009 and again in March 2009 about the loan modification status and was told that the request would be forwarded to loss mitigation for review and to get back in 2-3 weeks. No indication in history why servicer takes 8 months to refer the information to the loss mitigation. This is terrible servicing if the notes are interpreted correctly. Unclear if this loan is still part of an active bankruptcy filing, or the service is just letting the bwr remain delinquent without starting a foreclosure to clear or if BK case was active, had been dismissed or discharged by the court. The history does not provide information in history about property condition, occupancy or market value. No indication if loss mitigation alternatives other than loan modification were ever discussed with the borrower. |
| 2 | 9/26/2006 | bwr filed Chapter 13 BK | 2 | Was the transaction history complete (ie of loan set-up)? | | |
| 3 | 9/9/2006 | Proof of claim referral letter sent to atty | 3 | Was the level of customer service appropriate, including ARM change notifications? | | |
| 4 | 4/29/2008 | bwr inquired about possible loan mod, bwr was advised to have atty provide authorization to discuss with servicer, servicer rec'd loss mit package from bwr; unclear if bankruptcy case was dismissed, discharged or still active | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | | |
| 5 | 8/15/2008 | bwr inquired about status of loan mod request and what is happening again; unclear if case was dismissed or still active | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | | |
| 6 | 1/5/2009 | bwr again inquired about status of loan mod requested in June 2008; servicer said would forward information to loss mitigation back in 2-3 weeks; no explanation in history why servicer takes 8 months to refer the information to the loss mitigation. This is terrible servicing if the notes are interpreted correctly. Unclear if this loan is still part of an active bankruptcy filing. | 6 | Were there any unnecessary FC or BK delays? | | |
| 7 | 3/6/2009 | bwr inquired about status of loan mod request and what is happening again | 7 | Were REO / liquidation efforts appropriate? | | |
| 8 | | | 8 | Were the processes generally performed timely? | | |
| 9 | | | 9 | Did you grade any of the process steps "C"? | | |
| 10 | | | 10 | Was there adequate property inspection and preservation practices? | | |
| 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timelines acceptable? | | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

CONFIDENTIAL

RCPC00065270

**Loan #: 744051(0758)    Status: Foreclosure**

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer / Comments |
|---|---|---|---|---|---|
| 1 | 7/24/2007 | servicer advances funds to pay delinquent taxes; establishes escrow payment on T&I | 1 | Was the servicing record history provided (hard or soft copy)? | This loan is a first lien on a property in Balch Springs, TX with a UPB of $125K and next pmt due for 6/1/08. This bwr was enrolled in a 2-3 repayment plans and failed each one. The servicer went through a loan mod analysis in October 2008 after the bwr had been requesting a loan mod consideration since July 2008. The bwr advised of a number of reasons for default - out of work, curtailment of income, excessive obligations, ARM adjustment increase too high to pay, overextended with bills. The loan history does not indicate the servicer discussing any loss mitigation alternative but loan modification. The bwr financial info, property value, condition and occupancy are not equity were not detailed. The loan history provided. A permanent modification of the loan was approved subject to a down payment of $1400 by 11/20/08, which was paid. The servicer cancelled the loan mod in March 2009 when the borrower failed to make the required loan mod payments for Jan, Feb and March 2009. Subsequently on 3/16/09 the servicer started foreclosure action with the loan due for 6 payments. |
| 2 | 9/2/2006 | bwr wants to pay T&I only, says pmt too high with escrow; servicer advised must pay escrow due to bwr tax delinquency; | 2 | Was the transaction history complete (as of loan set-up)? | |
| 3 | 10/5/2007 | BWR RFD: out of work without pay for half of September | 3 | Was the level of customer service appropriate, including ARM change notifications? | |
| 4 | 3/6/2008 | RFD: back at work reduced, curtailment of income | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | |
| 5 | 5/22/2008 | RFD: excessive obligations and curtailment of inc. RFD: ARM adjustment increased pmt too high, needs to lower pmt to keep house | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | |
| 6 | 7/16/2008 | 3 month trial mod approved; failed due to no funds paid | 6 | Were there any unnecessary FC or BK delays? | |
| 7 | 9/1/2008 | bwr inquired about loan mod and servicer advised still pending | 7 | Were REO / liquidation efforts appropriate? | |
| 8 | 10/17/2008 | 3 months after request, sent mod docs to bwr | 8 | Were the processes generally performed timely? | |
| 9 | 11/20/2008 | servicer rec'd signed docs and initial required down payment from bwr | 9 | Did you grade any of the process steps "C"? | |
| 10 | 2/16/2009 | advised bwr pe loan mod; made Jan, Jan and Feb pmts ASAP | 10 | Was there adequate property inspection and preservation practices? | |
| 11 | 3/11/2009 | loan mod cancelled due to bwr failure to make scheduled pmts | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | |
| 12 | 3/15/2009 | foreclosure action approved | 12 | Were there any major issues with the loan origination or default management of the loan? | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |

**Loan #: 744051(1575) [SGI Fraud]    Status:**

| Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer / Comments |
|---|---|---|---|---|---|
| 1 | 3/20/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | The loan is a first lien on a property in Houston, TX with a UPB of $83K and next payment due for 9/1/08. The bwr reasons for default included unemployment, excessive obligations, marital dispute, payment dispute, letters of mortgage and natural disaster claim. After approving the modification in November 2008 the servicer notes that now the loan mod has been denied by reason of financials show borrower is not qualified for modification financially, which is odd that the property is not qualified for modification financially, only that the property is not of income. As 9/23/09 this loan is over 150 days late, there is no loss mitigation plan in effect and foreclosure action should have been started. There is no information in the loan history provided concerning the property value, condition or occupancy, discussion of loss mitigation alternatives with the borrower, or analysis or analysis of recommendation for foreclosure. |
| 2 | 8/27/2007 | RFD: excessive obligations | 2 | Was the transaction history complete (as of loan set-up)? | |
| 3 | 2/14/2008 | bwr inquired about reducing payment; RFD spouse left her; she gave financial info, servicer indicated positive cash flow, account current; servicer says no evidence of hardship | 3 | Was the level of customer service appropriate, including ARM change notifications? | |
| 4 | 3/13/2008 | RFD: she has been ill | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | |
| 5 | 4/14/2008 | bwr 2 claims didn't know about payment plan set up in March 2008; servicer explained, set 4/28 expiry plan was cancelled due to non payment | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | |
| 6 | 8/1/2008 | payment dispute about what was received and what was applied to account by bwr and servicer; servicer appears to be correct | 6 | Were there any unnecessary FC or BK delays? | |
| 7 | 9/15/2008 | FEMA disaster declaration due to Hurricane Ike | 7 | Were REO / liquidation efforts appropriate? | |
| 8 | 10/3/2008 | bwr advised no major damage to home; RFD: property problem; bwr claims couldn't work for week due to hurricane; no insurance claim discussed; 10/13/08 servicer mentions a "natural disaster forbearance"; no more details in history | 8 | Were the processes generally performed timely? | |
| 9 | 11/18/2008 | bwr approved a blanket permanent modification with $517 required down payment; on 12/21/09 2 months later the bwr advised hasn't received the mod docs | 9 | Did you grade any of the process steps "C"? | |
| 10 | 2/6/2009 | After approving the modification in November 2008 the servicer notes that now the loan mod has been denied by reason of financials show borrower is not qualified for modification financially. There is no information in the history provided concerning the property value, condition or occupancy; discussion of loss mitigation alternatives with the borrower, or analysis of recommendation for foreclosure. | 10 | Was there adequate property inspection and preservation practices? | |
| 11 | 3/23/2009 | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | |
| 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |

**CONFIDENTIAL**

RCPC00065271

| Loan # | Status | Time Line (Detailed) | Tran Date | Description | Question Number | Question | Answer | Comments |
|---|---|---|---|---|---|---|---|---|
| 82535152737 | 90 days | 1 | 6/10/2006 | loan boarded | 1 | Was the servicing record history provided (hard or soft copy)? | | This loan appears to be a second lien on a property in Tustin, CA with a UPB of $50,195.92 next due for the 11/10/08 payment. The borrower main RFD is illness of the mortgagor but there are no facts indicating how this impacts the borrower making payments. There were two instances where the borrower replied to inquiries concerning wildfires in So. California and bwr advised no impact to this property. The servicer set up a repay plan in 10/2008 which was cancelled due to non payment; and then in 2/4/09 pre-approved under one of the servicer's blind bulk permanent modifications which has yet to be responded to by borrower. On 3/23/09 the servicer noted that the loan is approved for LMT, meaning unclear. The loan is now due for 6 payments and the servicer has not established a viable loss mitigation alternative, has not performed an equity analysis and had not conducted a charge off analysis. There is no information in the loan history provided concerning first lien status, current market value, property condition or occupancy, nor bwr's ability to pay. |
| | | 2 | 11/26/2007 | bwr acct not affected by wildfires in area | 2 | Was the transaction history complete (ex of loan set-up)? | | |
| | | 3 | 7/9/2008 | bwr declared RHD illness of mortgagor; no details on length of illness or how it affects payment on the mortgage | 3 | Was the level of customer service appropriate, including AVM change notifications? | | |
| | | 4 | 9/12/2008 | repay plan set up;no details in history or terms or analysis | 4 | Were collection efforts appropriate? (i.e. were there enough attempts?) | | |
| | | 5 | 10/2/2008 | bwr requested modification of loan; servicer updated financial info, 1st rmg surplus but not enough for DPY; unclear on the rest of the comments, no further details | 5 | Were loss mitigation efforts appropriate? (Were realistic LM efforts attempted?) | | |
| | | 6 | 10/9/2008 | repay plan cancelled due to non payment | 6 | Were there any unnecessary FC or BK delays? | | |
| | | 7 | 12/24/2008 | bwr divided recent wildfires in area did not affect property | 7 | Were REO / liquidation efforts appropriate? | | |
| | | 8 | 2/4/2009 | blind bulk permanent modification approved by servicer | 8 | Were the processes generally performed timely? | | |
| | | 9 | 3/23/2009 | now approved for lmt RHD illness of mortgagor | 9 | Did you grade any of the process steps 'C'? | | |
| | | 10 | 3/23/2009 | The loan is now due for 6 payments and the servicer has not established a viable loss mitigation alternative, has not performed an equity analysis and had not conducted a charge off analysis. There is no information in the loan history provided concerning first lien status, current market value, property condition or occupancy, nor bwr's ability to pay. | 10 | Was there adequate property inspection and preservation practices? | | |
| | | 11 | | | 11 | Were the collection, loss mit, BK, foreclosure and REO liquidation timeliness acceptable? | | |
| | | 12 | | | 12 | Were there any major issues with the loan origination or default management of the loan? | | |
| | | 13 | | | | | | |
| | | 14 | | | | | | |
| | | 15 | | | | | | |

CONFIDENTIAL

RCPC00065272

**CONFIDENTIAL**

CONFIDENTIAL

RCPC00065274

# Exhibit PX-751

Fitch Assigns Resi Servicer Ratings to Residential Capital LLC                    Page 1 of 2
12-12020-mg   Doc 5692-2   Filed 11/12/13   Entered 11/12/13 21:05:16   Part 2 of 5
Pg 138 of 139



## Better Be Business Wired.

Business Wire is the leading source for **press releases**, photos, multimedia and **regulatory filings** from companies and groups throughout the world.

December 12, 2007 03:54 PM Eastern Time

### Fitch Assigns Resi Servicer Ratings to Residential Capital LLC

NEW YORK--(BUSINESS WIRE)--Fitch Ratings has assigned the following servicer ratings to Residential Capital LLC (ResCap):

--Residential primary servicer rating for prime product of 'RPS2+';

--Residential primary servicer rating for Alt-A product of 'RPS2+';

--Residential primary servicer rating for subprime product of 'RPS2';

--Residential primary servicer rating for HLTV product of 'RPS2';

--Residential primary servicer rating for HE/HELOC product of 'RPS2';

--Residential primary sub-servicer rating of 'RPS2+';

--Residential master servicer rating of 'RMS2+';

--Residential special servicer rating of 'RSS2+'.

The primary, special and subservicer ratings are based on the company's experienced management team, solid loan administration practices, comprehensive internal controls, robust technology platform, and demonstrated ability to provide effective subservicing for third party portfolios. The master servicer rating is based on the company's strong master servicing experience and proven ability to effectively oversee the servicing activities of its primary and special servicers. All of the servicer ratings incorporate ResCap's financial rating (rated 'BB+'; Rating Watch Negative, by Fitch).

ResCap was originally created as a holding company for financing purposes for General Motors Acceptance Corporation's (GMAC) residential mortgage businesses. In November 2006, General Motors sold a 51% stake in GMAC to an investor group led by Cerberus FIM Investors, LLC. Over the past year, the primary, master, special and subservicing operations of GMAC's residential mortgage servicing businesses which includes GMAC Mortgage, GMAC-RFC, and Homecomings Financial Network have been integrated in an effort to create a servicing platform capable of supporting any loan product (including mortgages, consumer loans, and leases), brand or servicing requirements. In conjunction with the operational integration, ResCap has consolidated its mortgage servicing sites to three locations in Waterloo, IA, Dallas, TX, and Fort Washington, PA. The master servicing operation remains in Burbank, CA. As of June 30, 2007, ResCap was servicing over 3.4 million mortgage loans totaling $481 billion. The portfolio was comprised of over 1.6 million prime loans for $287 billion, 323,000 Alt-A loans for $81 billion, 428,000 subprime loans for $56 billion, 85,000 HLTV loans for $3.4 billion, and 748,000 HE/HELOC loans for $32 billion.

Fitch has reviewed the company's servicing operations and believes ResCap has the appropriate staff, default procedures, and controls in place to continue to manage its servicing portfolio while maintaining performance. However, Fitch will continue to monitor ResCap's performance and evaluate its progress as it pursues its servicing initiatives, including the use of offshore resources, in a high delinquency environment.

Fitch rates residential mortgage primary, master, and special servicers on a scale of 1 to 5, with 1 being the highest rating. Within some of these rating levels, Fitch further differentiates ratings by plus (+) and minus (-) as well as the flat rating. For

**PX**

**751**

more information on Fitch's residential servicer rating program, please see Fitch's report 'Rating U.S. Residential Mortgage Servicers', dated Nov. 29, 2006, which is available on the Fitch Ratings web site at www.fitchratings.com.

Fitch's rating definitions and the terms of use of such ratings are available on the agency's public site, www.fitchratings.com. Published ratings, criteria and methodologies are available from this site, at all times. Fitch's code of conduct, confidentiality, conflicts of interest, affiliate firewall, compliance and other relevant policies and procedures are also available from the 'Code of Conduct' section of this site.

## Contacts

Fitch Ratings, New York
Thomas Crowe, 212-908-0227
Mary Kelsch, 212-908-0563
or
Media Relations:
Sandro Scenga, 212-908-0278

RCPC00065276