# Exhibit PX-890

*Excerpt of Exhibit*

## In Re:

*RESIDENTIAL CAPITAL, LLC, et al.*

*Case No. 12-12020-mg*

*August 19, 2013*

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us.*



Min-U-Script® with Word Index

PX
890

243

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12020-mg

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              August 19, 2013

19              8:59 AM

20

21   B E F O R E:

22   HON. MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

244

1

2  Trial RE: FGIC Settlement

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  David Rutt

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

245

```
 1
 2   A P P E A R A N C E S :
 3   MORRISON & FOERSTER LLP
 4        Attorneys for Debtors
 5        1290 Avenue of the Americas
 6        New York, NY 10104
 7
 8   BY:   CHARLES L. KERR, ESQ.
 9         JOSEPH ALEXANDER LAWRENCE, ESQ.
10
11
12   ALSTON & BIRD LLP
13        Attorneys for Wells Fargo Bank
14        1201 West Peachtree Street
15        Atlanta, GA 30309
16
17   BY:   JOHN "KIT" C. WEITNAUER, ESQ.
18
19
20   CLEARY GOTTLIEB STEEN & HAMILTON LLP
21        Attorneys for Wilmington Trust
22        One Liberty Plaza
23        New York, NY 10006
24
25   BY:   MARK A. LIGHTNER, ESQ.
```

246

1

2  DECHERT LLP

3       Attorneys for Bank of New York Mellon

4       1095 Avenue of the Americas

5       New York, NY 10036

6

7  BY:   GLENN E. SIEGEL, ESQ.

8        REBECCA S. KAHAN, ESQ.

9        MAURICIO A. ESPANA, ESQ.

10       HECTOR GONZALEZ, ESQ.

11

12

13  GIBBS & BRUNS, LP

14       Attorneys for Steering Committee of RMBS Investors

15       1100 Louisiana

16       Suite 5300

17       Houston, TX 77002

18

19  BY:   KATHY PATRICK, ESQ.

20

21

22

23

24

25

247

```
 1
 2   JONES DAY
 3        Attorneys for FGIC
 4        222 East 41st Street
 5        New York, NY 10017
 6
 7   BY:   RICHARD L. WYNNE, ESQ.
 8         HOWARD SIDMAN, ESQ.
 9         STEVEN BENNETT, ESQ.
10
11   JONES DAY
12        Attorneys for FGIC
13        901 Lakeside Avenue
14        Cleveland, OH 44114
15
16   BY:   CARL E. BLACK, ESQ. (TELEPHONICALLY)
17
18   KIRKLAND & ELLIS LLP
19        Attorneys for Ally Bank and Ally Financial, Inc.
20        153 East 53rd Street
21        New York, NY 10022
22
23   BY:   PETER TSAO, ESQ.
24         VICTORIA COLE, ESQ. (TELEPHONICALLY)
25
```

1

2   KRAMER LEVIN NAFTALIS & FRANKEL LLP

3        Attorneys for Official Creditors' Committee

4        1177 Avenue of the Americas

5        New York, NY 10036

6

7   BY:   PHILIP S. KAUFMAN, ESQ.

8         RACHAEL RINGER, ESQ. (TELEPHONICALLY)

9

10  LOEB & LOEB

11        Attorneys for Wilmington Trust, N.A. at Trustee

12        345 Park Avenue

13        New York, NY 10154

14

15  BY:   WALTER H. CURCHACK, ESQ.

16

17  MCKOOL SMITH, P.C.

18        Attorneys for Freddie Mac

19        One Bryant Park

20        47th Floor

21        New York, NY 10036

22

23  BY:   ANN SCHOFIELD BAKER, ESQ.

24        MICHAEL R. CARNEY, ESQ.

25        PETER S. GOODMAN, ESQ.

249

```
 1
 2   MOSS & KALISH, PLLC
 3         Attorneys for Freddie Mac
 4         125 East 42nd Street
 5         New York, NY 10168
 6
 7   BY:   DAVID B. GELFARB, ESQ.
 8
 9
10   ROPES & GRAY
11         Attorneys for Steering Committee of RMBS Investors
12         800 Boylston Street
13         Boston, MA 02199
14
15   BY:   D. ROSS MARTIN, ESQ.
16         ANDREW G. DEVORE, ESQ.
17
18
19
20
21
22
23
24
25
```

250

```
 1

 2   SEWARD & KISSEL LLP

 3        Attorneys for US Bank as RMBS Trustee

 4        One Battery Park Plaza

 5        New York, NY 10004

 6

 7   BY:   MARK D. KOTWICK, ESQ.

 8         THOMAS ROSS HOOPER, ESQ.

 9         ARLENE R. ALVES, ESQ.

10         BRIAN P. MALONEY, ESQ.

11         DALE C. CHRISTENSEN, JR. ESQ.

12         JEFFREY M. DINE, ESQ.

13

14

15   WHITE & CASE LLP

16        Attorneys for Ad Hoc Group of Junior Secured Noteholders

17        1155 Avenue of the Americas

18        New York, NY 10036

19

20   BY:   J. CHRISTOPHER SHORE, ESQ.

21         VANESSA D. SODERBERG, ESQ.

22         HARRISON DENMAN, ESQ.

23         DWIGHT A. HEALY, ESQ.

24

25
```

251

1

2  WILLKIE FARR & GALLAGHER LLP

3       Attorneys for Monarch, Stonehill, CQS, Bayview

4       787 Seventh Avenue

5       New York, NY 10019

6

7  BY:   JOSEPH T. BAIO, ESQ.

8        MARY EATON, ESQ.

9        EMMA J. JAMES, ESQ.

10        MARC ABRAMS, ESQ.

11

12  BAYVIEW ASSET MANAGEMENT

13       4425 Ponce de Leon Boulevard

14       5th Floor

15       Coral Gables, FL 33146

16

17  BY:   MICHAEL B. GUSS, ESQ.

18

19  MORRISON COHEN LLP

20       909 Third Avenue

21       New York, NY 10022`

22

23  BY:   ROBERT K. DAKIS, ESQ. (TELEPHONICALLY)

24        JOSEPH T. MOLDOVAN, ESQ. (TELEPHONICALLY)

25

252

```
 1
 2   MUNGER, TOLLES & OLSON LLP
 3        Attorneys for Berkshire Hathaway, Inc.
 4        355 South Grand Avenue
 5        35th Floor
 6        Los Angeles, CA 90071
 7
 8   BY:   SETH GOLDMAN, ESQ. (TELEPHONICALLY)
 9        THOMAS B. WALPER, ESQ. (TELEPHONICALLY)
10
11
12   PATTERSON BELKNAP WEBB & TYLER LLP
13        Attorneys for Anbac Insurance
14        1133 Avenue of the Americas
15        New York, NY 10036
16
17   BY:   BRIAN P. GUINEY, ESQ. (TELEPHONICALLY)
18
19
20   WINSTON & STRAWN LLP
21        Attorneys for Wells Fargo Bank, N.A.
22        200 Park Avenue
23        New York, NY 10166
24   BY:   JAMES DONNELL, ESQ. (TELEPHONICALLY)
25
```

1

2   MONARCH ALTERNATIVE CAPITAL LP

3   BY:    MICHAEL J. KELLY (TELEPHONICALLY)

4

5

6   REORG RESEARCH, INC.

7   BY:    KENT COLLIER (TELEPHONICALLY)

8

9

10   SOUTHPAW ASSET MANAGEMENT

11   BY:    ANDREW M. THAU (TELEPHONICALLY)

12

13

14   STONEHILL CAPITAL MANAGEMENT

15   BY:    PAUL MALEK (TELEPHONICALLY)

16

17

18   VARDE PARTNERS, INC.

19   BY:    DI WU (TELEPHONICALLY)

20

21

22   WATERSHED ASSET MANAGEMENT, LLC

23   BY:    MICHELE F. KYROUZ (TELEPHONICALLY)

24

25

**RESIDENTIAL CAPITAL, LLC, et al.**

452

1          MR. WYNNE:  -- Your Honor, but we're --

2          THE COURT:  All right.

3          MR. WYNNE:  -- we're actually not intending on using

4   all the documents --

5          THE COURT:  Go ahead.

6          MR. WYNNE:  -- in it.

7          THE COURT:  Go ahead, Mr. Wynne.

8   DIRECT EXAMINATION

9   BY MR. WYNNE:

10   Q.   Mr. Dubel, you were present in court, I believe, when

11   Ms. Healy, the Freddie Mac representative, testified?

12   A.   I was.

13   Q.   And you heard her testimony that, to her knowledge,

14   neither FGIC or the rehabilitator had commuted or terminated

15   any RMBS policies during FGIC's rehabilitation?

16   A.   I did.

17   Q.   Could you describe how many asset categories FGIC has

18   issued insurance for?

19   A.   Yes.  We've insured basic -- four basic categories:

20   credit default swaps; public finance; other structured finance;

21   and RMBS.

22   Q.   Could you briefly describe each category, very briefly?

23   A.   Yes.  Credit default swaps are just that.  Public finance

24   are bonds or securities issued by municipalities, states'

25   governments, local governments, et cetera.  Other structured

**RESIDENTIAL CAPITAL, LLC, et al.**

453

1  may be other commercial transactions that were put in a

2  structured finance format.  And then RMBS would be anything

3  related to RMBS securitizations.

4  Q.    How familiar are you with FGIC's rehabilitation

5  proceeding?

6              MR. BAIO:  Objection.

7              THE COURT:  Overruled.

8              MR. BAIO:  This could all be in direct.

9              THE COURT:  Overruled.

10  A.    I am very familiar, as the CEO of FGIC.

11  Q.    During the rehabilitation proceeding, what types of

12  policies were commuted or terminated?

13  A.    We commuted CDS -- the credit default swaps -- policies,

14  we commuted RMBS policies, and also a public-finance policy.

15  Q.    Can you describe the public-finance policy that you

16  commuted?

17  A.    Yes.  There was a policy that had exposure of about 1.4

18  billion dollars; it was a hospital in Australia that we

19  commuted and terminated.

20  Q.    So FGIC -- does FGIC have any remaining exposure on that

21  policy?

22  A.    No, it does not.

23  Q.    Were any RMBS-related policies commuted during the

24  rehabilitation?

25  A.    Yes.  We did two of them.

**RESIDENTIAL CAPITAL, LLC, et al.**

454

1   Q.   Could you describe them?

2   A.   Yes.  One was called Aardvark; I think it's been

3   referenced earlier in the testimony.  And the other one was

4   related to a confidential policyholder; I'll refer to it as

5   Contract M right now.

6   Q.   Could you describe when these policies were commuted?

7   A.   Yes.  The Aardvark RMBS transaction was commuted in

8   November of 2012, and the Contract M RMBS transaction was

9   commuted in June of this year.

10   Q.   Did FGIC or the rehabilitator provide any public

11   information or notice with respect to these two specific RMBS

12   commutations?

13   A.   Yes.  When the order was signed by Justice Ling-Cohan on

14   those two particular transactions -- in fact, on all of the

15   commutations that FGIC did during the rehabilitation period,

16   the order was posted up on FGIC -- www.fgicrehabilitation.com,

17   which is a Web site hosted by Garden City Group, which is a

18   well-known docketing clerical service.

19   Q.   Was there any other notice provided?

20   A.   Yes.  As it related to all of these transactions, notice

21   was given to the steering committee and its counsel Bingham

22   McCutchen, and also to McKool Smith --

23   Q.   I'd like to --

24   A.   -- on behalf of Freddie Mac.

25   Q.   Mr. Dubel, I'd like to direct your attention to tab 5 in

**RESIDENTIAL CAPITAL, LLC, et al.**

455

1    the binder that's in front of you; it's Exhibit number 318;

2    previously been marked.  Do you recognize this exhibit?

3    A.    I do.

4    Q.    Could you describe it for the Court, please?

5    A.    It is an e-mail which is a notice provided by Dana

6    Kaufman -- who is an attorney at the Weil Gotshal firm, counsel

7    for the rehabilitator and FGIC -- provided to John Briody at

8    McKool Smith; it was sent on Wednesday, November 7th of 2012,

9    and there were multiple parties copied on it, including

10   Mr. Goodman and Mr. Holtzer and others.  And it's noted

11   "NYLB" --

12            MR. GOODMAN:  Your Honor?

13   A.    -- "FGIC termination agreement filing".

14            MR. GOODMAN:  I mean, I'm going to object to this line

15   of questioning.  Ms. Healy did not deny that she received the

16   proposal that's reflected in Exhibit number 5.  That was -- he

17   had the chance to explain these transactions on direct --

18            THE COURT:  Overruled.

19   A.    And there's an attachment, which is the Aardvark -- a PDF

20   of the Aardvark agreement.

21   Q.    At the time that this was sent, did you know that this was

22   being sent?

23   A.    Yes, I did.

24   Q.    Was this the regular practice, as you understood it, that

25   notices of this type were sent to counsel for both Freddie Mac

**RESIDENTIAL CAPITAL, LLC, et al.**

456

1   and counsel for the --

2           MR. GOODMAN:   Objection.

3   Q.   -- steering-committee group?

4           THE COURT:   Overruled.

5           Go ahead.

6   A.   Yes, it is.

7   Q.   And the Aardvark transaction that is the subject of this

8   notice, that is related to RMBS products?

9   A.   Yes, it is.

10  Q.   Mr. Dubel, I'd like to --

11          MR. WYNNE:   I'd like to move, Your Honor, Exhibit 318

12  into evidence.

13          THE COURT:   Hearing no objections, it's --

14          MR. GOODMAN:   No, Your Honor.

15          THE COURT:   It's in evidence.

16  (11/7/12 e-mail notice by Dana Kaufman, entitled "NYLB FGIC

17  termination agreement filing", was hereby received into

18  evidence as Exhibit 318, as of this date.)

19  Q.   Mr. Dubel, I'd like to show you -- if you'd turn to tab 6,

20  Exhibit 317.  Do you recognize this exhibit --

21  A.   I --

22  Q.   -- this document?

23  A.   I do.

24  Q.   Could you briefly describe this document?

25  A.   Yes.  This is an e-mail notice; in this case it was sent

**RESIDENTIAL CAPITAL, LLC, et al.**

457

1    both to the Bingham McCutchen firm, Mr. Horwich, along with the

2    McKool Smith firm, and multiple other parties were attached to

3    it.  It's referenced "FGIC filing".  It was sent from the same

4    person, Ms. Kaufman, and it's dated June 18th of 2013.  The

5    attachment, which the Court will see is redacted here, relates

6    to Contract M; the actual name was included on the e-mail.  And

7    it sends over a copy of the affirmation, all the supporting

8    termination agreements related to the Contract M RMBS

9    commutation.

10   Q.    The -- is this the Contract -- this is the Contract M that

11   you referred to before?

12   A.    Yes, it is.

13   Q.    And Contract M, did that also relate to an RMBS policy?

14   A.    Yes, it did.  Had RMBS assets in it, yes.

15         MR. WYNNE:  Your Honor, I'd like to move Exhibit 317

16   into evidence as well.

17         THE COURT:  It's in evidence.

18   (6/18/13 e-mail notice by Dana Kaufman, entitled "FGIC filing",

19   was hereby received into evidence as Exhibit 317, as of this

20   date.)

21         MR. WYNNE:  Thank you.

22   Q.    Mr. Dubel, were there any other public disclosures

23   concerning that there were commutations of RMBS-related

24   policies, to your knowledge?

25   A.    Yes.  There were multiple --

**RESIDENTIAL CAPITAL, LLC, et al.**

458

1          MR. GOODMAN:  Objection, Your Honor.

2          THE COURT:  Overruled.

3   A.   Yes.  There were multiple disclosures in our financial

4   statements, both in our statutory -- what's referred to as the

5   yellow book, but also in our statutory quarterly and year-end

6   financial statements for 2012.

7   Q.   Mr. Dubel, could you turn to Exhibit -- tab 3, which is

8   Exhibit 316, and describe for me what that exhibit is?

9   A.   Yes.  This is our quarterly statement that's required to

10  be filed with the NAIC; it's commonly referred to as the yellow

11  book because it has a yellow cover on it.  And it's the -- it

12  represents the quarterly statement for September 30th of 2012.

13  Q.   Do you know when that document was filed publicly?

14  A.   It was filed on or about December 17th of 2012, within a

15  day of that date.

16  Q.   And, Mr. Dubel, are these -- when you say they're filed,

17  how are these statements publicly available, if you know?

18  A.   Yes, this statement is filed with the NAIC -- National

19  Association of Insurance Commissioners -- which is a public

20  database that anyone around the country can get access to.  But

21  within a day of filing this, FGIC also posted it up on its Web

22  page, under the Investor Relations Financial Reports section,

23  and so it's available even now.

24  Q.   Is there a disclosure, in this Exhibit 316, with respect

25  to the commutation of RMBS policies, Mr. Dubel?

**RESIDENTIAL CAPITAL, LLC, et al.**

459

1  A.    Yes, there is.

2  Q.    Could you point it out to the Court?

3  A.    Yes, it's on -- I'll have to be careful here.  It's on

4  page 6.19, but at the very bottom I believe it says "Exhibit

5  316, page 25 of 55".

6  Q.    And where on that page?

7  A.    It's in note 25, "change in incurred losses and loss

8  adjustment expenses", the first paragraph.  The -- about

9  halfway down in the paragraph, there's a sentence that starts,

10 "The decrease in projected claims for RMBS backed by first-

11 lien" -- "backed by first-lien mortgage loans reflects the

12 completion of policy terminations in November 2012, with no

13 payment by FGIC."

14 Q.    Do you know what that sentence is referring to, which

15 transaction, Mr. Dubel?

16 A.    Yes.  The only RMBS transaction that we did during that

17 period, which is the Aardvark transaction that I referred to

18 earlier.

19         MR. WYNNE:  Your Honor, I'd like to move Exhibit 316

20 into evidence at this time.

21         THE COURT:  Any objections?

22         MR. GOODMAN:  No objection, Your Honor.

23         MR. KERR:  No, Your Honor.

24         THE COURT:  Exhibit 316 is in evidence.

25 (FGIC quarterly statement for 9/30/12 was hereby received into

**RESIDENTIAL CAPITAL, LLC, et al.**

460

1    evidence as Exhibit 316, as of this date.)

2    Q.   Mr. Dubel, are you familiar with the FGIC plan of

3    rehabilitation?

4    A.   I am.

5    Q.   I believe that you have also in front of you Exhibit 238,

6    which is --

7          MR. WYNNE:  It's not in the binder, but we have it

8    loose, Your Honor.

9          UNIDENTIFIED SPEAKER:  It's already in.

10          MR. WYNNE:  Exhibit 238 is already in.

11   Q.   Mr. Dubel, are there any provisions of the FGIC

12   rehabilitation plan that discuss settlement or commutation of

13   RMBS policies?

14          MR. GOODMAN:  Your Honor, I object.  This was clearly

15   covered on day one.

16          THE COURT:  This is rebuttal.  Overruled.

17          MR. GOODMAN:  Okay.

18   A.   I'm sorry, could you repeat the question, please?

19   Q.   Are there any provisions of the FGIC rehabilitation plan

20   that discuss settlements or commutations -- I'll start -- well,

21   first, generally?

22   A.   Yes.

23   Q.   Can you describe those?

24   A.   In section 4.8, which I believe is --

25          THE COURT:  25 of 73?

**RESIDENTIAL CAPITAL, LLC, et al.**

461

1           THE WITNESS:  Yes, Your Honor.

2     A.    It's "Alternative resolution of claims".

3     Q.    Are there any limitations that -- to your knowledge, in

4     the plan, that limit FGIC's ability with respect to commuting

5     any type of policies?

6           MR. GOODMAN:  Object to the form.  Legal conclusion.

7           THE COURT:  Sustained.

8           MR. WYNNE:  Mr. Dubel testified that he's very

9     familiar with it.  He's the CEO of FGIC.

10          THE COURT:  All right, ask your question.

11    Q.    Are there any provisions that you're aware of in the plan,

12    that restrict or limit FGIC's ability to commute any specific

13    type of policies?

14    A.    No specific types of policies.  We have the ability to

15    commute, settle, terminate any of our policies, just subject to

16    the two provisions -- A and B -- in 4.8.

17    Q.    When was this plan filed?

18    A.    This plan was filed on June 4th of 2013.

19    Q.    Are you aware if there were any prior versions of this

20    plan filed?

21    A.    Yes.  There were several other versions filed.

22    Q.    Do you know -- if you know, did --

23          THE COURT:  Tell me how come it's got a file stamp of

24    June 13th rather than June 4th.

25          THE WITNESS:  Your Honor, I believe this is the order

**RESIDENTIAL CAPITAL, LLC, et al.**

462

1  being entered, as opposed to the plan being filed.

2          THE COURT:  Okay.

3          THE WITNESS:  The order was entered on --

4          THE COURT:  All right.

5          THE WITNESS:  -- or about the 13th.

6          THE COURT:  Thank you.

7  Q.   Do you know if Section 4.8 changed from the other plans

8  that were filed to this final version?

9  A.   The first plan that was filed by the rehabilitator was

10  filed in September of 2012.  There were two or three other

11  version of this plan that were filed.  This is the first

12  amended plan.  And this section, 4.8, has not changed at all

13  since the original plan was filed on September -- in September

14  of 2012.

15  Q.   When the FGIC settlement agreement was signed that is the

16  subject of today's hearing was the rehabilitation plan

17  effective?

18  A.   It was not.

19  Q.   Do you have any understanding of what authority the

20  rehabilitator had to commute policies prior to the plan

21  becoming effective?

22          MR. BAIO:  Objection.

23          MR. GOODMAN:  Same objection, Your Honor.

24          THE COURT:  Overruled.

25  A.   I do.

**RESIDENTIAL CAPITAL, LLC, et al.**

463

1   Q.   Can you tell us what your understanding is?

2   A.   Yes.  On June 28th of 2012 Judge Ling-Cohan issued the

3   order of rehabilitation that put FGIC in rehabilitation and

4   appointed the Superintendent, New York State Department of

5   Financial Services, as the rehabilitator, and his authority was

6   vested in that specifically in two areas, one that said they --

7   he was required to remove the causes of the rehabilitation, and

8   the other area that authorized him to run FGIC in the ordinary

9   course as he saw it was appropriate, subject to certain things

10  that would go in front of the Court.

11  Q.   Is it your understanding that the rehabilitator acted

12  under the authority granted in that order with respect to all

13  of the commutations that FGIC did during the rehabilitation?

14           MR. GOODMAN:  Objection.

15  Q.   Do you have an understanding?

16  A.   I do.

17  Q.   What is your understanding?

18           MR. GOODMAN:  Objection.

19           THE COURT:  Overruled.

20  A.   That he did act in accordance with the rehabilitation

21  order and that as it related to commutations that were done by

22  FGIC during the rehabilitation proceeding, that they were all

23  brought in front of the Court for review and approval, and they

24  were all approved by the Court.

25  Q.   Did you ever discuss the concept of commutation of

**RESIDENTIAL CAPITAL, LLC, et al.**

464

1    policies with the ad hoc steering committee or steering group?

2            MR. BAIO:  Objection.

3            MR. GOODMAN:  Same objection.

4            MR. WYNNE:  Ms. Healy clearly testified about --

5            THE COURT:  Your question about the ad hoc, you're

6    talking about the steering committee in --

7            MR. WYNNE:  She testified she was --

8            MR. WYNNE:  Oh.

9            THE WITNESS:  Which steering committee?

10           THE COURT:  Steering committee in the rehabilitation

11   proceeding.

12           MR. WYNNE:  In the rehabilitation, Your Honor.

13           THE COURT:  Overruled.

14   A.   I'm sorry.  Could you just --

15   Q.   Did you have discussions about the concept of commutation

16   of policies with the ad hoc steering committee in the

17   rehabilitation proceeding?

18   A.   Yes, I did.

19   Q.   Could you describe those conversations?

20   A.   We talked about early on the commutation of CDS

21   transactions but also talked in general terms about the ability

22   to commute any and all types of policies.  In fact, certain

23   members of the steering committee encouraged FGIC to commute

24   other policies that would be accretive.

25   Q.   Were there negotiations with the steering committee with

**RESIDENTIAL CAPITAL, LLC, et al.**

465

1  respect to limiting FGIC's rights to commute or terminate

2  policies?

3  A.    No.

4  Q.    Do you recall whether Freddie Mac or any member of the ad

5  hoc steering committee group attempted to negotiate any such

6  limitations with respect to the type of policies that could be

7  commuted with respect to the rehabilitation plan?

8  A.    There were none to my knowledge.

9  Q.    Okay.  Mr. Dubel, you also have, I believe, been here and

10  heard the testimony of the trustees and the opening statements

11  that were made on last Friday.  Is that correct?

12  A.    Yes, that's correct.

13  Q.    Okay.  And you have been -- how were you involved in the

14  negotiations with respect to the FGIC settlement agreement?

15         MR. BAIO:  Objection.

16         THE COURT:  I'm going to sustain the objection to the

17  form of that question, because the mediation is off limits.

18         MR. WYNNE:  Okay.  I understand, Your Honor, and --

19         THE COURT:  So ask another question.

20  Q.    Mr. Dubel, can you explain your role with respect to the

21  FGIC settlement agreement?  Just your role, not the content of

22  any negotiations.

23  A.    Yes.  I was the lead negotiator for FGIC.

24  Q.    Okay.

25         THE COURT:  I think that's in your direct testimony.

**RESIDENTIAL CAPITAL, LLC, et al.**

466

1          MR. WYNNE:  I was just doing it for context, Your

2     Honor.

3          THE COURT:  Okay.

4          MR. WYNNE:  The question I was just doing for --

5     I'm --

6          THE COURT:  Go ahead.

7          MR. WYNNE:  -- switching subjects to our final

8     subject --

9          THE COURT:  All right.  Go ahead.

10         MR. WYNNE:  -- so I was just doing that.

11    Q.   Without revealing the substance of the negotiations that

12    occurred during the mediation were there negotiations with

13    respect to the commutation amount of 253 million dollars?

14         MR. BAIO:  Objection.

15         THE COURT:  Sustained.

16         MR. WYNNE:  Your Honor, I'd like to be able to

17    inquire.  There was clear testimony that there were no

18    negotiations.  In the opening statements they have made a

19    point, and we think it's very misleading the way that they have

20    done it, that there were no negotiations with respect to the

21    253.

22         THE COURT:  I'll permit the question.

23         MR. WYNNE:  What?

24         THE COURT:  I'll permit that question.

25         MR. WYNNE:  Thank you, Your Honor.

**RESIDENTIAL CAPITAL, LLC, et al.**

467

1          THE COURT:  But not the details of the negotiations.

2          MR. WYNNE:  Not the details.  Just whether or not

3    there were.

4          THE COURT:  Go ahead.

5    Q.   Mr. Dubel, do you want me to repeat it or do you --

6          THE COURT:  Yes, please.  Go ahead.  So we have a

7    clear --

8    Q.   Without revealing the substance of the negotiations, were

9    there negotiations with respect to the commutation amount of

10   253 million dollars?

11   A.   There were extensive negotiations.

12   Q.   With the same preface, without revealing the substance of

13   the negotiations, were there negotiations over other terms that

14   are in the FGIC-ResCap settlement agreement?  I don't want to

15   hear any specific substance, just were there those

16   negotiations?

17         MR. BAIO:  Same objection.

18         THE COURT:  Overruled.  You opened the door to this.

19   A.   There were extensive negotiations.

20   Q.   Mr. Dubel, when did those negotiations occur?

21         MR. BAIO:  Same objection.

22         THE COURT:  Sustained.  That I'm not letting.  He said

23   there were negotiations.

24         MR. WYNNE:  Okay.  Thank you, Your Honor.

25         THE COURT:  You got what you wanted.

**RESIDENTIAL CAPITAL, LLC, et al.**

468

1   Q.   Mr. Dubel, who participated in those negotiations,

2   without, again, telling me the substance of any negotiations?

3          THE COURT:  His direct testimony is he was the lead

4   negotiator.

5          MR. WYNNE:  No.  Who participated on the other side?

6          MR. BAIO:  Same objection.

7          THE COURT:  Sustained.

8          MR. WYNNE:  Your Honor, I'd like one moment.

9   Q.   Mr. Dubel, have there been any material changes with

10  respect to FGIC since you testified on Friday?

11         MR. BAIO:  Objection.

12         THE COURT:  Overruled.

13  A.   Yes, there has.

14  Q.   Could you describe that?

15  A.   Yes.  The rehabilitator determined that it was appropriate

16  for us to go effective, and we went effective on the plan of

17  rehabilitation this morning.  We are no longer in

18  rehabilitation.

19         MR. WYNNE:  Thank you, Your Honor.  Your Honor, I

20  recognize that was, sort of, beyond the scope, but we thought

21  it was important to at least inform the parties and the

22  Court --

23         THE COURT:  Okay.

24         MR. WYNNE:  -- about that, which is why I asked that

25  question.

**RESIDENTIAL CAPITAL, LLC, et al.**

469

1   THE COURT:  Okay.

2   MR. WYNNE:  Thank you.

3   THE COURT:  Cross-examination?

4   CROSS-EXAMINATION

5   BY MR. GOODMAN:

6   Q.   Good afternoon, Mr. Dubel.  In your witness binder that

7   your counsel handed out, can you turn to that for a moment,

8   please?

9   A.   Yes, sir.

10  Q.   And I believe it's Exhibit 6.

11  THE COURT:  Tab 6?

12  MR. GOODMAN:  Excuse me.  Tab 6.

13  Q.   It says it's --

14  THE COURT:  It's Exhibit 3?

15  Q.   I believe it's dated June 18, 2013 from --

16  THE COURT:  Exhibit 317?

17  MR. GOODMAN:  Exhibit 317.  Thank you, Your Honor.

18  Q.   Now, the date of this exhibit, this e-mail from Dana

19  Kaufman is June 18, 2013.  Is that correct?

20  A.   That is correct.

21  Q.   And that was after the time when FGIC filed its order to

22  show cause in order to enter into the settlement, the ResCap

23  settlement.  Isn't that correct?

24  A.   Yes, that is correct.

25  Q.   So I would believe by about that time our client would

**RESIDENTIAL CAPITAL, LLC, et al.**

470

1   have realized that all bets are off with respect to commutation

2   of the RMBS policies.  Is that correct?

3   A.    I don't know what your client would believe.

4   Q.    Okay.

5   A.    I'm sorry.

6   Q.    Well, thank you.  But the settlement, the order to show

7   cause to approve the settlement had already been filed,

8   correct?

9   A.    That's correct.

10  Q.    Okay.  Thank you.  Now, I believe you were in court when

11  the trustees testified that as of May 24, 2013 they started to

12  notify the certificate holders of the fact that there was a

13  settlement.  Is that correct?  Were you there?

14  A.    I believe that I stepped out at that point in time when

15  that discussion came up.

16  Q.    Is that your understanding?

17  A.    As I understand it they started the process right

18  thereafter.  I'm not sure whether it was 24th, 25th, but

19  shortly thereafter.

20  Q.    Okay.  But it became public knowledge about that time, the

21  24th, 25th, correct?

22  A.    It would have become public knowledge when it was filed

23  with the bankruptcy court and the rehabilitation court.

24  Q.    Okay.  So it wouldn't have become --

25  A.    And I'm not sure when it was, but --

**RESIDENTIAL CAPITAL, LLC, et al.**

471

1    Q.    It wouldn't have become -- and that was when?

2    A.    In that general time frame, yes.

3    Q.    Around that general time frame.  Did you bother at that

4    point in time to notify my client the fact that you were going

5    to commute their FGIC-wrapped ResCap securities policies?

6    A.    I believe that there was a -- that you had actually --

7    Mr. Goodman, that you had actually reached out to me and to

8    Mr. Holtzer to discuss the affirmation of Mr. Holtzer.

9    Q.    Okay.  That wasn't my question.  My question was, at the

10   time that the trustees were filing the notice, public notice

11   that the settlement -- that they were entering into the

12   settlement with FGIC and ResCap, did you notify my client, at

13   that time, that you intended to commute their ResCap policies?

14   A.    At that specific time, no.

15   Q.    Okay.  Thank you.  Please turn to tab 3; it's Exhibit 316,

16   I believe.

17   A.    Yes, sir.

18   Q.    And this -- you just testified a few minutes early to,

19   this was the Aardvark transaction; is that what you referred to

20   it as?

21            THE COURT:  No, he testified this is the quarterly

22   financial statement, and there's --

23            MR. GOODMAN:  Okay, I apologize.

24            THE COURT:  -- a footnote that has the --

25            MR. GOODMAN:  I apologize; I got a little ahead of

**RESIDENTIAL CAPITAL, LLC, et al.**

472

1   myself.

2   Q.   Please turn to page 25.

3   A.   25 of 55?

4   Q.   25 of 55.

5   A.   Yes, sir.

6   Q.   6.19.

7   A.   Yes, sir.

8   Q.   Your counsel directed you to that page a few minutes ago.

9   And you were looking at the first full paragraph, regarding an

10  RMBS commutation, is that correct?

11  A.   Yes, this is what I referred to, not what my counsel

12  directed me to.  Yes.

13  Q.   Okay.  Well, thank you for sharing that.  Was this the

14  Aardvark transaction that's referred to in here?

15  A.   As I said earlier, yes, this -- what is referred in that

16  sentence is referring to the Aardvark transaction, yes.

17  Q.   Thank you.  And was that commutation done with the consent

18  of the RMBS policyholder?

19  A.   Yes, it was.  Yes.

20  Q.   And if you look at one, two, three -- I believe it's the

21  third sentence, or at the very least, the sentence in that

22  paragraph starting with "the decrease in projected claim

23  amounts"?  Do you see that sentence?

24  A.   Yes, "The decrease in projected claims" --

25  Q.   Okay.  And --

**RESIDENTIAL CAPITAL, LLC, et al.**

473

1  A.   -- "projected claims"; that's the -- yes.

2  Q.   Um-hum.  And at the end of that sentence, does it say,

3  "with no payment by FGIC"?

4  A.   That's correct.

5  Q.   Um-hum.  And this was a consensual deal, right?

6  A.   Yes, it was.

7  Q.   Okay.  Thank you.

8          THE COURT:  Who is the policyholder?

9          THE WITNESS:  Bank of New York -- Bank of New York

10  Mellon or one of its entities as the trustee.

11          THE COURT:  So when you say it was done with the

12  consent of the policyholders, whose consent are you referring

13  to?

14          THE WITNESS:  The Bank of New York, as the

15  policyholder.

16  Q.   And was Bank of New York a trustee -- in a position of a

17  trustee in that transaction?

18  A.   Yes.

19  Q.   Okay.  And were there any objections by the investors in

20  the underlying --

21          MR. GOODMAN:  Well, strike that.

22  Q.   Were there investors holding on to securities that were

23  part of that trust that Bank of New York acted as trustee on

24  behalf of?

25  A.   Yes, there were.

**RESIDENTIAL CAPITAL, LLC, et al.**

474

1    Q.    Um-hum.  And do you know if any of them objected?

2    A.    They did not.

3    Q.    Thank you.  Now, am I correct that with respect to the

4    members of the steering committee, the steering committee that

5    my client, Freddie Mac, was participating in -- you know which

6    steering committee I'm referring to?

7    A.    I assume you're referring to the one that was involved in

8    the FGIC rehabilitation, since the term steering committee is

9    probably used five or six times in different areas here.

10   Q.    Exactly; I'm just trying to clarify.  Thank you.

11   A.    Yes.

12   Q.    That's the one I'm referring --

13   A.    Yes.

14   Q.    So when I say steering committee, that's the one I'm

15   referring to.

16   A.    I'll assume that, unless you say differently, yes.

17   Q.    Now, the committee was composed, largely, of RMBS security

18   holders, correct?

19   A.    It had a mix of everybody that held various different

20   securities.

21   Q.    Um-hum.  But there were significant amounts of RMBS

22   security holders on that committee, correct?

23   A.    That is correct, yes.

24   Q.    And my client was one of the largest, if not the largest,

25   right?

**RESIDENTIAL CAPITAL, LLC, et al.**

475

1   A.   They were one of the largest, if not the largest --

2   Q.   Okay.

3   A.   I don't recall --

4   Q.   Thank you.

5   A.   -- where their size ratio was, yes.

6   Q.   During the rehabilitation proceeding, did you ever commute

7   any of those policies prior to entry into the settlement

8   agreement with FGIC and ResCap?

9   A.   Any of which policies?  Any of --

10   Q.   Any of the RMBS policies held by the steering committee --

11   members of the steering committee?

12   A.   Yes.

13   Q.   And which one was that?

14   A.   I believe the Aardvark transaction.

15   Q.   The one we just talked about earlier, that was the only

16   one, and they were on the steering committee?

17        THE COURT:  The they -- was Bank of New York on the

18   steering committee or were they investors?

19        THE WITNESS:  No, Your Honor, it was not -- the

20   trustees were not -- they separately were involved in the

21   process.

22        I'm sorry, Mr. Goodman, your question again?  I

23   apologize.

24   Q.   I'm trying to focus you in on the members of the

25   steering --

**RESIDENTIAL CAPITAL, LLC, et al.**

476

1          THE COURT:  Just ask your question.

2          MR. GOODMAN:  Thank you, Your Honor.

3    Q.    Prior to entering into the settlement agreement with FGIC

4    and ResCap, did you commute any of the RMBS policies that

5    members of -- excuse me, that members of the steering committee

6    held certificates for?

7    A.    I believe we did.

8    Q.    And the ones -- which one was that?

9    A.    I believe it was the Aardvark transaction.

10   Q.    That was Aardvark; that was it.

11   A.    I may have mixed up, but I believe it was the Aardvark

12   transaction.

13   Q.    Okay.  And we just discussed the Aardvark was a consensual

14   transaction, correct?

15   A.    Yes, it was.

16   Q.    And no one objected to that, correct?

17   A.    That's correct.

18   Q.    And you provided the steering committee with information

19   about that transaction, am I right?

20   A.    We did.

21   Q.    Prior to entering into it, or after you entered into it?

22   A.    Prior -- prior to court approval, after it was entered

23   into.

24   Q.    Okay.  Thanks.  Okay.  Now, just so I'm clear --

25          THE COURT:  Whether you're clear or not --

**RESIDENTIAL CAPITAL, LLC, et al.**

477

```
 1              MR. GOODMAN:  Fair --

 2              THE COURT:  -- you're on borrowed time.

 3              MR. GOODMAN:  I'm just about out of time, I

 4    understand.  This is an important question.

 5              THE COURT:  You're out of time, but I'm allowing you

 6    to ask these questions.

 7              MR. GOODMAN:  I appreciate that, Your Honor.

 8    Q.   Am I correct that you never -- you never communicated to

 9    the steering committee members that you would commute the RMBS

10    policies, is that correct?

11    A.   No.

12    Q.   Okay.

13         (Pause)

14              MR. GOODMAN:  Okay.  Your Honor, the issue here is

15    that I want to examine the witness on statements he made at his

16    deposition, and we don't have that binder here with his

17    deposition, that I'm aware of.

18              THE COURT:  It's got to be here.  I mean, I've got --

19    this courtroom is filled with documents, and I'm sure it

20    includes the Dubel transcript.  Can somebody help Mr. Goodman

21    out?

22              UNIDENTIFIED SPEAKER:  Yeah, it's Exhibit FG, Your

23    Honor.

24              MR. GOODMAN:  FG, thank you.

25              UNIDENTIFIED SPEAKER:  FG.
```

**RESIDENTIAL CAPITAL, LLC, et al.**

478

1        (Pause)

2            THE COURT:  Alex, go ahead.  We're going to give the

3    witness a copy.

4            MR. GOODMAN:  Yeah --

5            THE COURT:  Let's --

6            MR. GOODMAN:  -- thank you.

7            THE COURT:  Let's move on here.

8            MR. GOODMAN:  Thank you, Your Honor.  I appreciate

9    that.

10           THE WITNESS:  Thank you.

11   Q.   Mr. Dubel, you have Exhibit FG in front of you?

12   A.   I do.

13   Q.   Okay, I ask you to turn to page 58, line 16.  Just let me

14   know when you're there.

15           UNIDENTIFIED SPEAKER:  Can I see what you're --

16           MR. GOODMAN:  Yeah, sure.  You can look on, sorry.

17           UNIDENTIFIED SPEAKER:  It's okay.  What line?

18           MR. GOODMAN:  Line 16, starting here.

19   Q.   You with me, Mr. Dubel?

20   A.   Line 16?

21   Q.   Yeah, and it -- it states:

22       "And did the committee, the steering committee agree with

23   you that you had the right to commute the policies insuring the

24   trust that had issued their securities?

25   "A.   They agreed that they were in full agreement that we

**RESIDENTIAL CAPITAL, LLC, et al.**

479

1   should have the right to commute any policies that -- that we

2   could work our arrangements with.

3   "Q.   Including the policies insuring the underlying securities

4   in the trust?

5   "A.   I don't believe that we talked about specific policies.

6   We talked about any policies that FGIC had issue, and they were

7   fully supportive of us commuting any policies that FGIC had

8   issue."

9        So you had no specific discussions with them regarding

10  commuting RMBS policies, am I correct?

11  A.   Well, I believe, as I stated here, that it's any policies

12  and RMBS policies are part of the policies that FGIC issued, so

13  I'm referring to that.

14  Q.   Did you have specific discussion with them regarding

15  commuting the RMBS policies that were insuring their

16  securities?

17  A.   I did not have specific discussions about that.

18  Q.   Thank you.

19  A.   It --

20          MR. GOODMAN:   No further questions, Your Honor.

21          THE COURT:   Mr. Wynne?

22          MR. BAIO:   May I ask a few, Your Honor, just a few?

23          THE COURT:   Go ahead, Mr. Baio.

24          MR. BAIO:   Thank you.

25  CROSS-EXAMINATION

**RESIDENTIAL CAPITAL, LLC, et al.**

480

1    BY MR. BAIO:

2    Q.    Sir, you testified just a while ago, that the steering

3    committee encouraged commutations because they were accretive.

4    Do you remember saying that?

5    A.    I do.

6    Q.    And the steering committee encouraged those commutations

7    because they believed, in your view, that the accretive quality

8    would redound to their benefit, correct?

9    A.    I don't know what they believed.  I know that from my

10   point of view if it would be accretive it would redound to all

11   of the policy holders that remained at FGIC.

12   Q.    So it would eliminate those policyholders' claims in the

13   future who were being commuted, but it would improve or be

14   accretive for everybody else, correct?

15   A.    That would be the intention, yes.

16   Q.    And the steering committee encouraged that.  Isn't that

17   correct?

18   A.    That is correct.

19   Q.    Okay, now in connection with the commutations that you

20   identified, they were all consensual, correct?

21   A.    Yes, they were.

22   Q.    And in connection with those commutations, the trustees

23   did not seek any orders from either the state court or any

24   bankruptcy court that the commutations were in the best

25   interests of the policyholders, correct?

**RESIDENTIAL CAPITAL, LLC, et al.**

481

1              MR. WYNNE:  Objection, beyond the scope, Your Honor.

2              THE COURT:  Sustained.

3              MR. BAIO:  Your Honor, he -- he asked specifically

4     about --

5              THE COURT:  Ask your next question.

6     Q.   Did the trustees seek any exculpation in connection with

7     the commutations, from any courts?

8              MR. WYNNE:  Objection, it's beyond the scope, Your

9     Honor.

10             THE COURT:  Sustained.

11    Q.   Were the commutations court approved?

12    A.   They were approved by the Rehabilitation Court.

13    Q.   Not by any bankruptcy court?

14    A.   There were no bankruptcy courts involved in those

15    transactions.

16    Q.   No other court was involved.

17    A.   No other court.

18    Q.   And to the extent there were findings, they are in those

19    publicly filed documents, correct?

20             MR. WYNNE:  Objection.

21             THE COURT:  Sustained.

22    Q.   Now, do you -- do you know who Dave Williams is?

23    A.   I do.

24    Q.   And --

25    A.   I assume you're talking Dave Williams of CQS?

**RESIDENTIAL CAPITAL, LLC, et al.**

482

1  Q.   Yes, of CQS.

2  A.   I do.

3        MR. WYNNE:  Objection, beyond the scope.

4        THE COURT:  Sustained.

5  Q.   Well, you were negotiating with a number of people as to

6  withdrawing objections to the FGIC rehabilitation plan, which

7  you've testified about here.

8        MR. WYNNE:  Objection.

9        THE COURT:  Sustained.

10 Q.   Do you recall notifying Mr. Williams that in fact policies

11 would be commuted, policies in which he had an interest?

12       MR. WYNNE:  Objection.

13       THE COURT:  Overruled as per yes or no.

14 A.   No, sorry.

15 Q.   And you -- you never told him, isn't that correct?

16 A.   No, he never asked me.

17 Q.   But he was in discussions with you, correct?

18 A.   I had to be careful what I said to him because he told me

19 repeatedly that he did not want to have what he would view as

20 material amount of public information.  So I was very careful

21 in -- in what I provided to him because he wanted to you know,

22 stay on what's referred to as the public side.

23 Q.   But you continued to keep from him the commutation, even

24 when you were no longer bound by the mediation agreement.

25 Isn't that correct, by the mediation order, isn't that correct?

**RESIDENTIAL CAPITAL, LLC, et al.**

483

1              MR. WYNNE:  Objection.

2              THE COURT:  Sustained.

3    Q.   Well, there came a time when you were no longer bound by

4    the mediation order to talk about commutation, correct?

5              MR. WYNNE:  Objection.

6              THE COURT:  Sustained.

7              MR. BAIO:  One second, Your Honor.

8    Q.   There were no objections files to any of the commutations?

9    Is that correct?

10   A.   You're referring to the other commutations in the FGIC --

11   Q.   Yes.

12   A.   -- there were none, to my knowledge, no.

13   Q.   Unlike in this case, correct?

14   A.   That is correct.

15             THE COURT:  Your time is up, Mr. Baio.

16             Mr. Shore?

17             MR. SHORE:  It felt so lonely there in the back, so I

18   mean --

19             THE COURT:  Yeah, I'm sure.

20   CROSS-EXAMINATION

21   BY MR. SHORE:

22   Q.   Mr. Dubel, I think we've only met outside the context of

23   the case, outside in the hallway.  I'm Chris Shore, from White

24   & Case on behalf of the ad hoc group of junior secured note

25   holders. I don't know whether you read it or not, but it's in

**RESIDENTIAL CAPITAL, LLC, et al.**

484

1    evidence as Exhibit C.  It's the debtors' motion and in

2    particular, their omnibus reply in further support of the

3    motion.

4        At heading B which is the ad hoc group's objections to the

5    minimum allowed claim amount provided in the settlement

6    agreement has no merit is a heading 1: "Providing FGIC the

7    minimum allowed claim amount in advance of a plan is entirely

8    appropriate."  And at paragraph 34, the debtors say, "In light

9    of the pending proceedings in the Rehabilitation Court, the

10   parties sought approval of the settlement agreement in

11   connection with and prior to FGIC's imminent emergence from

12   rehabilitation, and separate from and prior to the plan-

13   confirmation process in this Court."

14       So I have two questions.  Is it fair that you did not need

15   a ruling from this Court prior to your emergence from the

16   rehabilitation?

17            MR. WYNNE:  Objection, beyond the scope, Your Honor.

18            THE COURT:  Sustained.

19   Q.  And one other question, you didn't need a ruling from the

20   state court in the approval of the settlement agreement before

21   you exited?

22            MR. WYNNE:  Objection.

23            THE COURT:  Sustained.

24            Mr. Wynne, any further questions?

25            MR. WYNNE:  No, Your Honor.

**RESIDENTIAL CAPITAL, LLC, et al.**

485

1          THE COURT:  You're excused, Mr. Dubel.

2          THE WITNESS:  Your Honor, will somebody get this?

3          THE COURT:  Yeah, one of my -- one of my law clerks,

4     as if we don't have enough copies of it already.

5          All right, do the proponents rest?

6          MR. KERR:  Your Honor, I just need to do one quick

7     circle around just to make sure.

8          THE COURT:  Go ahead.

9          MR. KERR:  We rest.

10         THE COURT:  All right, all parties have rested.

11    It's -- depending on which clock one looks at, it's -- on my

12    watch it's 3:11.  We're going to take a fifteen minute recess

13    and then despite the fact that the objector's time has expired,

14    I'm going to hear closing statements.

15         How long do you estimate you would be, your side would

16    be?

17         MR. KERR:  Your Honor, I think we could be an hour and

18    I say that with this caveat:  I'm going to speak.  Mr. Siegel's

19    going to speak on behalf of the trustee.  And Mr. Wynne is

20    going to speak on behalf of FGIC, and then Mr. Kaufman will

21    speak on behalf of the committee.  And we're going to try to

22    keep it -- and we worked to not duplicate each other.

23         THE COURT:  Well, let's -- and let me hear from the

24    other side.

25         How long do you estimate you would be?

# Exhibit PX-892

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore
Harrison L. Denman

     and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi

*Attorneys for the Ad Hoc Group*
*of Junior Secured Noteholders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

PX
892

### DESIGNATION OF RECORD BY APPELLANT THE AD HOC GROUP
### OF JUNIOR SECURED NOTEHOLDERS PURSUANT TO FEDERAL
### RULE OF BANKRUPTCY PROCEDURE 8006

     Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, the Ad Hoc Group

of Junior Secured Noteholders, by and through its undersigned counsel, hereby designates the

issues and record presented on appeal to the United States District Court for the Southern District

of New York from the Order Granting Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for

Approval of the Settlement Agreement Among FGIC, the Debtors, the Trustees and the

Institutional Investors (the "FGIC Order") [Docket No. 5125] and the Memorandum Opinion and



1212020131018000000000020

Order, and Finding of Fact and Conclusions of Law, Approving the FGIC Settlement Motion
[Docket No. 5042], in the above-referenced chapter 11 cases of the United States Bankruptcy
Court for the Southern District of New York (the "Bankruptcy Court") by the Honorable Martin
Glenn on September 20, 2013:

## Statement of Issues Presented on Appeal

A.    Did the Bankruptcy Court err in approving the settlement, which did not account
for the potential subordination of the FGIC Claims pursuant to section 510(b) of the Bankruptcy
Code?

B.    Did the Bankruptcy Court err in allowing FGIC Claims against specific Debtors
without any evidence that such Debtors owed any liability to FGIC?

C.    Did the Bankruptcy Court err in approving the settlement of FGIC Claims without
sufficient evidence of arm's-length negotiation between the settling parties and after precluding
discovery with respect to any such negotiations?

D.    Did the Bankruptcy Court err in making a factual finding that the Ad Hoc Group
of Junior Secured Noteholders "declined to participate" in the mediation in the absence of record
evidence to support that finding?

## Designation of Items to Be Included in the Record on Appeal

1. Debtors' Motion Pursuant to Fed. R. of Bankr. P. 9019 for Approval of the Settlement
   Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional
   Investors [Docket No. 3929]

2. Objection of The Ad Hoc Group of Junior Secure Noteholders to the Debtors' Motion
   Pursuant To Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among
   The Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No.
   4027]

3. Supplemental Objection of The Ad Hoc Group of Junior Secured Noteholders to the
   Debtors' FGIC Settlement Motion [Docket No. 4401]

**PX 0892 pg. 2 of 4**

4. Debtors' Omnibus Reply in Further Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4474]

5. Financial Guaranty Insurance Company's Reply in Support Of Debtors' Motion Pursuant To Fed. R. Bankr. P. 9019 for Approval of Settlement Agreement Among The Debtors, FGIC, the FGIC Trustees and Certain Individual Investors [Docket No. 4707]

6. Financial Guaranty Insurance Company's Reply in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket. No. 4476]

7. Order Granting Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among FGIC, The Debtors, the Trustees and the Institutional Investors [Docket No. 5042]

8. Consolidated Designations of Lewis Kruger's Deposition Testimony [Docket No. 4803]

9. Consolidated Designations of the Deposition Testimony of Jeffrey Lipps and Ron D'Vari [Docket No. 4802]

10. Direct Testimony of Lewis Kruger [Docket No. 4431]

11. Direct Testimony of Jeffrey A. Lipps [Docket No. 4433]

12. Amended Direct Testimony of Jeffrey A. Lipps [Docket No. 4689]

13. Direct Testimony of Ron D'Vari [Docket No. 4432]

14. Objecting Parties' Exhibits filed in connection with the Hearing on the FGIC Settlement Motion held on August 16 & 19, 2013 [Exhibit Nos. AJ, FX, FY, FZ, GB, GC, HZ]

15. Settlement Parties' Exhibits filed in connection with the Hearing on the FGIC Settlement Motion held on August 16 & 19, 2013 [Exhibit Nos. 8-19, 114-118, 226]

16. Transcript of Hearing Held on May 29, 2013

17. Transcript of Hearing Held on June 26, 2013

18. Transcript of Hearing Held on August 16, 2013

19. Transcript of Hearing Held on August 19, 2013

PX 0892 pg. 3 of 4

20. Letter from Charles L. Kerr to Judge Glenn Re: In re Residential Capital, LLC, 12-12020
(MG) Proposed Order (September 19, 2013)

Dated: October 18, 2013
New York, New York                        Respectfully submitted,

                                          By: /s/ J. Christopher Shore
                                          J. Christopher Shore

                                          WHITE & CASE LLP
                                          1155 Avenue of the Americas
                                          New York, New York 10036
                                          Telephone: (212) 819-8200
                                          Facsimile: (212) 354-8113
                                          J. Christopher Shore
                                          Harrison L. Denman

                                                    and

                                          MILBANK, TWEED, HADLEY &
                                          MCCLOY LLP
                                          1 Chase Manhattan Plaza
                                          New York, New York 10005
                                          Telephone: (212) 530-5000
                                          Facsimile: (212) 530-5219
                                          Gerard Uzzi

                                          *Attorneys for the Ad Hoc Group of Junior
                                          Secured Noteholders*

PX 0892 pg. 4 of 4

# Exhibit PX-893

**MORRISON & FOERSTER LLP**
Gary S. Lee
Charles L. Kerr
J. Alexander Lawrence
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900

*Counsel for the Debtors and Debtors in Possession, as Appellee*

**JONES DAY**
Richard L. Wynne
Howard F. Sidman
Erin Brady (*pro hac vice*)
222 East 41st Street
New York, New York 10017
Telephone:    (212) 326-3939
Facsimile:    (212) 755-7306

*Attorneys for Creditor Financial Guaranty Insurance Company, as Appellee*

**DECHERT LLP**
Craig P. Druehl
Mauricio A. España
Rebecca S. Kahan
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts, as a Party to the FGIC Order*

**ALSTON & BIRD LLP**
John C. Weitnauer (*pro hac vice*)
Michael E. Johnson
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts, as a Party to the FGIC Order*

**SEWARD & KISSEL LLP**
Mark D. Kotwick
Arlene R. Alves
Brian P. Maloney
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts, as a Party to the FGIC Order*

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
Kenneth H. Eckstein
Philip S. Kaufman
Daniel M. Eggermann
1177 Avenue of Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel to the Official Committee of Unsecured Creditors, as a Party to the Appeal*



PX
893

1212020131104000000000008

**MORGAN, LEWIS & BOCKIUS LLP**
Glenn E. Siegel
Rachel Jaffe Mauceri
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to The Bank of New York Mellon and*
*The Bank of New York Mellon Trust Company,*
*N.A., as Trustee of Certain Mortgage-Backed*
*Securities Trusts, as a Party to the FGIC*
*Order*

**SEWARD & KISSEL LLP**
Dale C. Christensen, Jr.
Thomas Ross Hooper
Benay L. Josselson
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to Law Debenture Trust Company of*
*New York, as Separate Trustee of Certain*
*Mortgage-Backed Securities Trusts, as a Party*
*to the FGIC Order*

2

PX 0893 pg. 2 of 21

**UNITED STATES BANKRUPTCY COURT SOUTHERN
DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**DESIGNATION OF RECORD BY APPELLEES AND CERTAIN OTHER PARTIES TO
THE FGIC ORDER PURSUANT TO FEDERAL
RULE OF BANKRUPTCY PROCEDURE 8006**

Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, the Appellees

Residential Capital, LLC, and each of its debtor affiliates (collectively, the "**Debtors**"), and

Financial Guaranty Insurance Company ("**FGIC**"), together with the Official Committee of

Unsecured Creditors, the FGIC Trustees,[1] and the Institutional Investors[2], each identified as

"other parties to the [FGIC] Order" (defined below) by the Appellant in its Notice of Appeal,

dated October 4, 2014 [Docket No. 5286], by and through their undersigned counsel, hereby

designate the following additional items to the record presented on appeal to the United States

District Court for the Southern District of New York (the "**District Court**") from the Order

Granting Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement

---

1 The "FGIC Trustees" include The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Law Debenture Trust Company of New York, U.S. Bank National Association and Wells Fargo Bank, N.A., each solely in their respective capacities as trustees, indenture trustees or separate trustees for certain residential mortgage-backed securities trusts insured by FGIC. While the Appellant's Notice of Appeal characterizes certain of the FGIC Trustees as "Other Parties to the [FGIC] Order," it fails to identify Law Debenture Trust Company of New York in that request, notwithstanding that it is a party to the FGIC Order. The FGIC Trustees reserve their rights with respect to such characterization and also reserve their right to appear as parties to this proceeding before either the District Court (as defined below) or the Bankruptcy Court (as defined below) on matters related to the appeal.

2 The "Institutional Investors" include certain members of the Steering Committee Consenting Claimants and the Talcott Franklin Consenting Claimants (each as defined in the Plan Support Agreement, approved by the Court on June 26, 2013, ECF No. 4098).

ny-1114137

3

Agreement Among FGIC, the Debtors, the Trustees and the Institutional Investors (the "**FGIC Order**") [Docket No. 5125] and the Memorandum Opinion and Order, and Finding of Fact and Conclusions of Law, Approving the FGIC Settlement Motion [Docket No. 5042], in the above-referenced chapter 11 cases of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") by the Honorable Martin Glenn on September 20, 2013:

### Designation of Additional Items to Be Included in the Record on Appeal

1. Notice of Appearance and Demand for Service of Papers by McKool Smith P.C. and Freddie Mac on Behalf of Freddie Mac [Docket No. 0008]

2. Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (II) the RMBS Trustees' Limited Objection to the Sale Motion [Docket No. 0945]

3. Verified Statement of Gibbs and Bruns LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019 [Docket No. 1741]

4. Order Appointing Mediator [Docket No. 2519]

5. Transcript Regarding Hearing Held on March 1, 2013 RE: Status Conference RE: Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements. [Docket No. 3119]

6. Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants; Hearing to be Held on June 26, 2013 at 10:00 a.m. (ET) [Docket No. 3814]

7. Transcript regarding Hearing Held on May 29, 2013 at 2:05 p.m. re: Status Conference Re: Debtors' Motion Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., The Creditors' Committee, and Certain Consenting Claimants. [Docket No. 3875]

8. Amended Notice of Hearing on Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors; Hearing to be Held June 26, 2013 at 10:00 a.m. (ET) (as Approved by the Court) [Docket No. 3939]

9. Joinder of Certain RMBS Trustees to the Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter

4

into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants [Docket No. 3940]

10. Joinder of FGIC Trustee to the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 3982]

11. Affidavit of Service of Clarissa D. Cu re: Documents Served on June 7, 2013 [Docket No. 3992]

12. Reservation of Rights with Respect to Debtors' Motion for an Order Under Bankruptcy Code Sections 105(A) and 363(B) Authorizing the Debtors to Enter into and Perform Under a Plan Support Agreement with Ally Financial, Inc., the Creditors' Committee, and Certain Consenting Claimants [Docket No. 4023]

13. Affidavit of Service of Michael J. Wang re: Objection of the Ad Hoc Group of Junior Secured Noteholders to the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors; Hearing to be Held June 26, 2013 at 10:00 a.m. [Docket No. 4042]

14. Certificate of Service of Laurie R. Binder re: Joinder of FGIC Trustee to the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4065]

15. Order Granting Debtors' Motion Authorizing the Debtors to Enter Into a Plan Support Agreement with Ally Financial Inc., The Creditors' Committee, and Certain Consenting Claimants [Docket No. 4098]

16. Memorandum Opinion Approving the Plan Support Agreement [Docket No. 4102]

17. Transcript regarding Hearing Held on June 26, 2013 RE: Debtors' Motion for an Order Authorizing the Debtors to Advance the NJ Carpenters Notice Costs and Transfer Those Funds into Escrow Filed by Gary S. Lee on Behalf of Residential Capital, LLC. [Docket No. 4121]

18. Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [Docket No. 4153]

19. Scheduling Order re: Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Individual Investors [Docket No. 4168]

20. Order Concerning use of Discovery Obtained in Connection with the Rule 9019 FGIC Settlement Hearing [Docket No. 4191]

5

21. Transcript regarding Hearing Held on July 10, 2013 at 10:04 AM RE: Status Conference Re: Dispute in Reference to Confirmation Order of FGIC Settlement; Status Conference Re: Motion to Approve Motion by Ally Financial Inc. and Ally Bank for an Order Enforcing the Automatic Stay Pursuant to 11 U.S.C. 362 (a) (3) By (1) Enjoining Prosecution of AlterEgo and Veil Piercing Claims in the Class Action Entitled Landon Rothstein, Et Al. v. GMAC Mortgage, LLC et al., and (2) Declaring Such Claims Void Ab Initio; Evidentiary Hearing Re: Debtors Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral; Motion for Relief from Stay as to the property located at 11941 Delvin, Sterling Heights, MI 48313. [Docket No. 4248]

22. Order Regarding the Exchange of Confidential Information [Docket No. 4249]

23. The FGIC Trustees' Letter re: FGIC 9019 Motion [Docket No. 4251]

24. Transcript regarding Hearing Held on July 17, 2013 RE: On the record, status conference re: FGIC 9019 settlement. [Docket No. 4276]

25. Notice of Motion of the Ad Hoc Group of Junior Secured Noteholders for Entry of an Order (i) Directing Each of Debtors' Counsel, Including Kramer Levin Naftalis & Frankel LLP, and the Debtors' Management to Remain Strictly Neutral in Any Dispute Regarding Claims by and Between Any Debtors, (ii) Ordering the Limited Disqualification of Each of the Foregoing to the Extent Necessary to Effectuate the Foregoing, and (iii) Granting Related Relief [Docket No. 4289]

26. Order Shortening Notice with Respect to Motion for Order in Aid of Mediation and Settlement [Docket No. 4304]

27. FGIC Settlement Supplemental Scheduling and Trial Procedures Order [Docket No. 4363]

28. Transcript regarding Hearing Held on July 22, 2013 at 3:51 PM RE: In-Person Status Conference Re: Motion of the Ad Hoc Group of Junior Secured Noteholders, for the Order Directing Each of Debtor's Counsel to Remain Neutral in Any Dispute re: Claims, etc. [Docket No. 4373]

29. Order in Aid of Mediation and Settlement [Docket No. 4379]

30. Transcript regarding Hearing Held on July 25, 2013 at 9:03 AM RE: Status Conference, on the Record, Re: FGIC 9019 Settlement. [Docket No. 4380]

31. Transcript Regarding Hearing Held on July 26, 2013 at 10:06 a.m. [Docket No. 4397]

32. Ex Parte Motion of Federal Home Loan Mortgage Corporation to Exceed Page Limit for Objection to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4399]

6

ny-1114137

33. Objection of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4400]

34. Declaration of Paul V. Shalhoub in Support of Objection of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC Trustees and Certain Institutional Investors [Docket No. 4402]

35. Notice of Presentment of Application of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited Pursuant to 11 U.S.C. § 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure to Filed Unredacted Objection to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC Trustees and Certain Institutional Investors Under Seal [Docket No. 4403]

36. Federal Home Loan Mortgage Corporation's Objection to Debtors' Motion Pursuant to Fed. R. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4406]

37. Order Denying JSNs' Conflicts Motion [Docket No. 4415]

38. The Ad Hoc Group of Junior Secured Noteholders' Adverse Witness List and Designations of Deposition Testimony [Docket No. 4424]

39. Declaration of K. Austin McQuillen [Docket No. 4425]

40. The FGIC Trustees' Exhibit List [Docket No. 4426]

41. Declaration of Adam Sklar [Docket No. 4427]

42. The Debtors' Exhibit List [Docket No. 4428]

43. The Settlement Parties' Adverse Witness List [Docket No. 4429]

44. Declaration of David Williams [Docket No. 4430]

45. Financial Guaranty Insurance Company's Pretrial Submissions [Docket No. 4434]

46. Declaration of Charles R. Goldstein in Support of Objection of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master

7

Fund Limited to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for
Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC
Trustees and Certain Institutional Investors [Docket No. 4435]

47.    Witness Statement of John S. Dubel [Docket No. 4436]

48.    Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS
Alpha Master Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund
Management LLC's List of Adverse Witnesses for Hearing on Debtors' 9019
Motion [Docket No. 4437]

49.    Notice of Filing of Declaration of Robert H. Major, as Officer of the Bank of New
York Mellon Trust Company, N.A., RMB Trustee, in Support of Debtors' Motion
Pursuant to Fed. R. Bankr. P. 9019 [Docket No. 4438]

50.    Affidavit of Service of Hannah E. Lee re: Supplemental Objection of the Ad Hoc
Group of Junior Secured Noteholders to the Debtors' FGIC Settlement Motion
[Docket No. 4439]

51.    Notice of Filing of Direct Testimony Declaration of Allen M. Pfeiffer, Regarding
Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the
Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain
Individual Investors [Docket No. 4440]

52.    Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS
Alpha Master Fund Limited, CQS Master Fund Limited, and Bayview Fund
Management LLC's Exhibit List for Hearing on Debtors' 9019 Motion [Docket
No. 4441]

53.    Notice of Filing of Declaration of Mary L. Sohlberg, as Officer of Wells Fargo
Bank, N.A., RMBS Trustee, in Support of Debtors' Motion Pursuant to Fed. R.
Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors,
FGIC, the FGIC Trustees, and Certain Individual Investors [Docket No. 4442]

54.    Notice of Filing of Direct Testimony Declaration of S.P. Kothari, PH.D.,
Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of
the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and
Certain Individual Investors [Docket No. 4443]

55.    Notice of Filing of Declaration of Mamta K. Scott, as Officer of U.S. Bank, as
RMBS Trustee, in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019
for Approval of the Settlement Agreement Among the Debtors, FGIC Trustees
and Certain Individual Investors [Docket No. 4444]

56.    Federal Home Loan Mortgage Corporation's List of Potential Witnesses and
Potential Exhibits for Hearing on Debtors' Motion Pursuant to Fed. R. Bankr. P.
9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the
FGIC Trustees and Certain Institutional Investors [Docket No. 4445]

8

PX 0893 pg. 8 of 21

57.   Declaration of Gina Healy in Support of Federal Home Loan Mortgage Corporation's Objection to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4446]

58.   Transcript Regarding Hearing Held on July 30, 2013 at 10:05 a.m. [Docket No. 4452]

59.   Federal Home Loan Mortgage Corporation's Objection to Debtors' Motion Pursuant to Fed. R. R. Bankr. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4453]

60.   Notice of Filing of Corrected Direct Testimony Declaration of Allen M. Pfeiffer, Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Individual Investors [Docket No. 4454]

61.   Affidavit of Service of Denise Hirtzel re: 1) Financial Guaranty Insurance Company's Pretrial Submissions; and 2) Witness Statement of John S. Dubel [Docket No. 4465]

62.   Affidavit of Service of Alison R. Ambeault re: 1) Objection of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors; 2) Declaration of Paul V. Shahoub in Support of Objection of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC Trustees and Certain Institutional Investors; and 3) Notice of Presentment of Application of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited Pursuant to 11 U.S.C. § 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure to Filed Unredacted Objection to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC Trustees and Certain Institutional Investors Under Seal [Docket No. 4466]

63.   Order Granting Request to Allow Financial Guaranty Insurance Company to Exceed Page Limit [Docket No. 4470]

64.   Order Authorizing Debtors to Exceed Page Limit for Debtors' Omnibus Reply to Objections to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval

9

PX 0893 pg. 9 of 21

of the Settlement Agreement Among the Debtors, FGIC, FGIC Trustees and Certain Institutional Investors [Docket No. 4471]

65.   Reply of the Steering Committee Group of RMBS Holders in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4472]

66.   Statement of the Official Committee of Unsecured Creditors (I) in Support of the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors and (II) in Response to the Objections Thereto [Docket No. 4473]

67.   Statement of the FGIC Trustees (I) in Support of the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors and (II) in Reply to Certain Objections Thereto [Docket No. 4475]

68.   Declaration of Howard F. Sidman in Support of Financial Guaranty Insurance Company's Reply in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Individual Investors [Docket No. 4477]

69.   Affidavit of Service of Leslie Salcedo re: 1) Notice of Filing of Direct Testimony Declaration of Allen M. Pfeiffer, Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Individual Investors; 2) Notice of Filing of Declaration of Mary L. Sohlberg, as Officer of Wells Fargo Bank, N.A., RMBS Trustee, in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Individual Investors; and 3) Notice of Filing of Direct Testimony Declaration of S.P. Kothari, PH.D., Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Individual Investors [Docket No. 4499]

70.   Affidavit of Service of Denise Hirtzel re: 1) Financial Guaranty Insurance Company's Reply in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Individual Investors; and 2) Declaration of Howard F. Sidman in Support of Financial Guaranty Insurance Company's Reply in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Individual Investors [Docket No. 4501]

10

PX 0893 pg. 10 of 21

71.   Affidavit of Service of Pete Caris re: Statement of the Official Committee of Unsecured Creditors (I) in Support of the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors and (II) in Response to the Objections Thereto [Docket No. 4504]

72.   Affidavit of Service of Meir Weinberg re: Reply of the Steering Committee Group of RMBS Holders in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4508]

73.   Affidavit of Service of Clarissa D. Cu re: 1) Order Authorizing Debtors to Exceed Page Limit for Debtors' Omnibus Reply to Objections to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, FGIC Trustees and Certain Institutional Investors; 2) Debtors' Omnibus Reply in Further Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4510]

74.   Affidavit of Service of Jason W. Smith re: Statement of the FGIC Trustees (I) in Support of the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors and (II) in Reply to Certain Objections Thereto [Docket No. 4516]

75.   Notice of Filing of Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund Management LLC's Motion in Limine to Preclude the Testimony of Jeffrey A. Lipps Regarding the Debtors' 9019 Motion (in Limine Motion One) [Docket No. 4539]

76.   Notice of Filing of Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund Management LLC's Motion in Limine to Preclude the Testimony of S.P. Kothari Regarding the Debtors' 9019 Motion (in Limine Motion Two) [Docket No. 4541]

77.   Notice of Filing of Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund Management LLC's Motion in Limine to Preclude Evidence on the Debtors' 9019 Motion Concerning the Negotiations Leading up to the FGIC Settlement Agreement and the Conclusory Statements Offered by the FGIC Trustees and Others About the Nature of those Negotiations (in Limine Motion Five) [Docket No. 4545]

78.   Notice of Filing of Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master

11

PX 0893 pg. 11 of 21

Fund Limited, and Bayview Fund Management LLC's Motion in Limine to Preclude the Testimony of Allen M. Pfeiffer Regarding the Debtors' 9019 Motion (Motion in Limine Three) [Docket No. 4546]

79.     Notice of Filing of Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund Management LLC's Motion in Limine to Preclude the Trustees from Offering Any Evidence of their Reliance on Counsel in Support of Debtors' 9019 Motion (in Limine Motion Four) [Docket No. 4548]

80.     Omnibus Motion in Limine of the Ad Hoc Group of Junior Secured Noteholders to Preclude Certain Aspects of the Testimony of Lewis Kruger and John Dubel and the Expert Testimony of Ron D'Vari and Jeffrey Lipps Proffered in Connection with the FGIC Settlement Motion [Docket No. 4549]

81.     Financial Guaranty Insurance Company's Motion in Limine [Docket No. 4550]

82.     Motion in Limine of Federal Home Loan Mortgage Corporation to Preclude Certain Expert Testimony of Dr. Ron D'Vari in Connection with the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4554]

83.     Declaration of Mary Eaton in Support of Investors' Motions in Limine [Docket No. 4567]

84.     Affidavit of Service of Michael Birnbaum re: Objection of the Federal Housing Finance Agency to Approval of Proposed Disclosure Statement of the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [Docket No. 4607]

85.     Order Granting Application of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited Pursuant to 11 U.S.C. § 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure to File that Unredacted Objection to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Under Seal [Docket No. 4613]

86.     Order Authorizing the Official Committee of Unsecured Creditors (I) in Support of the Debtors' Motion Pursuant to Fed. R. Bankr. P. 90019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors and (II) in Response to the Objections thereto [Docket No. 4614]

87.     Affidavit of Service of Hannah E. Lee re: Omnibus Motion in Limine of the Ad Hoc Group of Junior Secured Noteholders to Preclude Certain Aspects of the Testimony of Lewis Kruger and John Dubel and the Expert Testimony of Ron

12

PX 0893 pg. 12 of 21

D'Vari and Jeffrey Lipps Proffered in Connection with the FGIC Settlement Motion [Docket No. 4616]

88.    FGIC Settlement Supplemental Scheduling and Trial Procedures Order #2; Hearing to be Held on August 14, 2013 at 4:00 p.m. [Docket No. 4621]

89.    Objection of Federal Home Loan Mortgage Corporation to Financial Guaranty Insurance Company's Motion in Limine [Docket No. 4622]

90.    Response of the Official Committee of Unsecured Creditors to those Portions of the Motion in Limine Filed by the Monarch Group and the JSNs that Seek to Exclude Evidence Concerning the General Nature and Characteristics of the Mediation Process through which the FGIC 9019 Settlement was Reached [Docket No. 4623]

91.    Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund Management LLC's Opposition to Finance Guaranty Insurance Company's Motion in Limine [Docket No. 4624]

92.    The Debtors' Omnibus Opposition to the Motions in Limine of the Parties Objecting to the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4625]

93.    Joinder of the Trustees to Oppositions to in Limine Motion Five [Docket No. 4626]

94.    Declaration of Mary Eaton in Support of Investors' Opposition to Financial Guaranty Insurance Company's Motion in Limine [Docket No. 4627]

95.    Financial Guaranty Insurance Company's Omnibus Opposition to Motions in Limine Seeking Exclusion of Certain Testimony of John Dubel Concerning Negotiations Leading up to Settlement Agreement [Docket No. 4628]

96.    Notice of Filing of FGIC Trustees' Response to Motion in Limine Three (Pfeiffer Testimony) [Docket No. 4629]

97.    The Trustees' Response to the Objectors' Motion in Limine to Preclude the Trustees from Offering Any Evidence of their Reliance on Counsel in Support of Debtors' 9019 Motion (in Limine Motion Four) [Docket No. 4630]

98.    Notice of Filing of Declaration of William Hao in Support of FGIC Trustees' Response to Motion in Limine Three (Pfeiffer Testimony) [Docket No. 4631]

99.    Notice of Filing of Declaration of Alice Chong in Support of FGIC Trustees' Response to Motion in Limine Three (Pfeiffer Testimony) [Docket No. 4633]

13

PX 0893 pg. 13 of 21

100. Notice of Filing of FGIC Trustees' Response to Motion in Limine Two (Kothari Testimony) [Docket No. 4634]

101. Joinder of Financial Guaranty Insurance Company in Support of Proponent Replies to Objector Motions in Limine [Docket No. 4636]

102. Certificate of Service of Joinder of Financial Guaranty Insurance Company in Support of Proponent Replies to Objector Motions in Limine [Docket No. 4645]

103. Affidavit of Service of Pete Caris re: Response of the Official Committee of Unsecured Creditors to those Portions of the Motion in Limine Filed by the Monarch Group and the JSNs that Seek to Exclude Evidence Concerning the General Nature and Characteristics of the Mediation Process through which the FGIC 9019 Settlement was Reached [Docket No. 4669]

104. Order Granting in Part and Denying in Part Motion in Limine Regarding Directing Testimony of Jeffrey A. Lipps [Docket No. 4671]

105. Objection of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4673]

106. Declaration of Paul V. Shalhoub in Support of Objection of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4674]

107. Declaration of Charles R. Goldstein in Support of Objection of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4675]

108. Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund Management LLC's Motion in Limine to Preclude the Testimony of Jeffrey A. Lipps Regarding the Debtors' 9019 Motion (in Limine Motion One) [Docket No. 4676]

109. Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS Master Fund Limited, and Bayview Fund Management LLC's Motion in Limine to Preclude the Testimony of S.P. Kothari Regarding the Debtors' 9019 Motion (in Limine Motion Two) [Docket No. 4677]

14

110. Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS Master Fund Limited, and Bayview Fund Management LLC's Motion in Limine to Preclude Evidence on the Debtors' 9019 Motion Concerning the Negotiations Leading up the FGIC Settlement Agreement and the Conclusory Statements Offered by the FGIC Trustees and Others About the Nature of those Negotiations (in Limine Motion Five) [Docket No. 4678]

111. Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund Management LLC's Motion in Limine to Preclude the Testimony of Allen M. Pfeiffer Regarding the Debtors' 9019 Motion (Motion in Limine Three) [Docket No. 4679]

112. Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS Master Fund Limited, and Bayview Fund Management LLC's Motion in Limine to Preclude the Trustees from Offering Any Evidence of their Reliance on Counsel in Support of Debtors' 9019 Motion (in Limine Motion Four) [Docket No. 4680]

113. Declaration of Mary Eaton in Support of Investors' Motions in Limine [Docket No. 4681]

114. Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund Management LLC's Opposition to Financial Guaranty Insurance Company's Motion in Limine [Docket No. 4682]

115. Declaration of Mary Eaton in Support of Investors' Opposition to Financial Guaranty Insurance Company's Motion in Limine [Docket No. 4683]

116. Declaration of Charles R. Goldstein in Support of the Motion in Limine of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Limited [Docket No. 4684]

117. Transcript Regarding Hearing Held on August 14, 2013 [Docket No. 4686]

118. Amended Order Granting in Part and Denying in Part Motion in Limine Regarding Direct Testimony of Jeffrey A. Lipps [Docket No. 4687]

119. Notice of Debtors' Objection to Proof of Claim No. 5677 Filed by Galina Valeeva and Evelina Okouneva [Docket No. 4688]

120. Notice of Filing of Unredacted FGIC Trustees' Letter Brief Regarding FGIC 9019 Motion [Docket No. 4690]

121. Declaration of Gina Healy in Support of Federal Home Loan Mortgage Corporation's Objection to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019

15

ny-1114137

for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4691]

122. Notice of Filing of Unredacted Declaration of Robert H. Major, as Officer of the Bank of New York Mellon Trust Company, N.A., RMBS Trustee, in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 [Docket No. 4692]

123. Declaration of Scott R. Gibson [Docket No. 4693]

124. Notice of Filing of Unredacted Direct Testimony Declaration of Allen M. Pfeiffer, Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Individual Investors [Docket No. 4694]

125. Notice of Filing of Unredacted Declaration of Mary L. Sohlberg, as Officer of Wells Fargo Bank, N.A., RMBS Trustee, in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Individual Investors [Docket No. 4695]

126. Notice of Filing of Unredacted Direct Testimony Declaration of S.P. Kothari, PH.D. Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Individual Investors [Docket No. 4696]

127. Notice of Filing of Unredacted Declaration of Mamta K. Scott, as Officer of U.S. Bankr, as RMBS Trustee, in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Investors [Docket No. 4697]

128. Notice of Filing of Unredacted Statement of the FGIC Trustees (I) in Support of the Debtors' Motion Pursuant to Fed. R. Bankr. P. 90019 for Approval of the Settlement Agreement Among the Debtors, FGIC Trustees and Certain Institutional Investors and (II) in Reply to Certain Objections thereto [Docket No. 4698]

129. Notice of Filing of Unredacted FGIC Trustees' Response to Motion in Limine of Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master Fund Limited and Bayview Fund Management LLC to Preclude the Testimony of S.P. Kothari (in Limine Motion Two) [Docket No. 4699]

130. Notice of Filing of Redacted FGIC Trustees' Response to Motion in Limine Three (Pfeiffer Testimony) [Docket No. 4700]

131. Federal Home Loan Mortgage Corporation's Objection to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement

16

Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4701]

132. Notice of Filing of Undredacted Declaration of William Hao in Support of FGIC Trustees' Response to Motion in Limine Three (Pfeiffer Testimony) [Docket No. 4702]

133. Reply of the Steering Committee Group of RMBS Holders in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 4703]

134. Notice of Filing of Unredacted Declaration of Alice Chong in Support of FGIC Trustees' Response to Motion in Limine Three (Pfeiffer Testimony) [Docket No. 4704]

135. Memorandum Endorsed So Ordered Letter Signed on August 15, 2013. FGIC's Request to Add the FHFA Affirmation to the FGIC Exhibit List is GRANTED [Docket No. 4705]

136. Affidavit of Service of Emma J. James re: 1) Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund Management LLC's Opposition to Finance Guaranty Insurance Company's Motion in Limine; and 2) Declaration of Mary Eaton in Support of Investors' Opposition to Financial Guaranty Insurance Company's Motion in Limine [Docket No. 4708]

137. Declaration of Howard F. Sidman in Support of Financial Guaranty Insurance Company's Reply in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Individual Investors [Docket No. 4709]

138. The Ad Hoc Group of Junior Secured Noteholders' Designations of Deposition Testimony [Docket No. 4712]

139. Transcript Regarding Hearing Held on August 16, 2013 [Docket No. 4759]

140. Transcript Regarding Hearing Held on August 19, 2013 [Docket No. 4776]

141. Designations from Deposition of Michael J. Thoyer as the Rule 30(B)(6) Designee of Stonehill Capital Management LLC [Docket No. 4795]

142. Designations from Deposition of Adam Sklar as the Rule 30(B)(6) Designee of Monarch Alternative Capital LP [Docket No. 4796]

143. Designations from Deposition of David Williams as the Rule 30(B)(6) Designee of CQS ABS Alpha Master Fund Limited and CQS ABS Master Fund Limited [Docket No. 4797]

17

ny-1114137

144. Designations from Deposition of Gina Healy as the Rule 30(B)(6) Designee of Federal Home Loan Mortgage Corp. [Docket No. 4798]

145. The Objectors' Designations of Trustees' Deposition Testimony [Docket No. 4799]

146. The Objectors' Designations of Deposition Testimony of John S. Dubel [Docket No. 4800]

147. Financial Guaranty Insurance Company's Rebuttal Designations of Deposition Testimony [Docket No. 4801]

148. Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of Plan, and (VI) Granting Related Relief [Docket No. 4809]

149. Notice of Filing of Corrected Solicitation Version of the Disclosure Statement and Joint Chapter 11 Plan [Docket No. 4819]

150. Settlement Parties' Proposed Findings of Fact and Conclusions of Law [Docket No. 4823]

151. Order Denying Additional Discovery [Docket No. 4881]

152. Letter to the Honorable Martin Glenn Submitting Lists of the Exhibits that were Admitted into Evidence at Trial in Connection with the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Individual Investors [Docket No. 4899]

153. Memorandum Endorsed So Ordered Letter Signed on September 4, 2013 Regarding Request to Admit Documents into Evidence [Docket No. 4928]

154. Notice of Withdrawal of Objection of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 5020]

155. Notice of Withdrawal of Federal Home Loan Mortgage Corporation's Objection to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 5021]

18

ny-1114137

156.  Order Granting Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, The Trustees and the Institutional Investors  [Docket No. 5125]

157.  Objecting Parties' Exhibits filed in connection with the Hearing on the FGIC Settlement Motion held on August 16 & 19, 2013 [Exhibit Nos. J, U, AS, BX, GD]

158.  Settlement Parties' Exhibits filed in connection with the Hearing on the FGIC Settlement Motion held on August 16 & 19, 2013 [Exhibit Nos. 1-7, 30-32, 34-43, 53-59, 101-104, 109, 119-123, 125, 128, 129, 170, 174, 204-206, 208, 209, 212, 216, 227, 310, 311, 313, 316-318]

159.  July 23, 2013 Letter from Howard F. Sidman to Judge Glenn re: In re Residential Capital, LLC, Ch. 11 Case No. 12-12020 (MG).

160.  July 24, 2013 Letter from Michael E. Johnson to Judge Glenn re: In re Residential Capital, LLC, 12-12020 (MG); Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors.

161.  July 24, 2013 Letter from Howard F. Sidman to Judge Glenn re: In re Residential Capital, LLC, Ch. 11 Case No. 12-12020 (MG).

162.  July 24, 2013 Letter from Mary Eaton to Judge Glenn re:  In re Residential Capital, LLC, et al., Chapter 11 Case No. 12-12020 (MG).

19

PX  0893 pg.  19 of 21

New York, New York
Dated: November 4, 2013


/s/ Gary S. Lee
Gary S. Lee
Charles L. Kerr
J. Alexander Lawrence
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:      (212) 468-7900

*Counsel for the Debtors and Debtors in Possession, as Appellee*


/s/ John C. Weitnauer
John C. Weitnauer (*pro hac vice*)
Michael E. Johnson
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts, as a Party to the FGIC Order*


/s/ Richard L. Wynne
Richard L. Wynne
Howard F. Sidman
Erin Brady (*pro hac vice*)
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:     (212) 326-3939
Facsimile:      (212) 755-7306

*Attorneys for Creditor Financial Guaranty Insurance Company, as Appellee*


/s/ Mark D. Kotwick
Mark D. Kotwick
Arlene R. Alves
Brian P. Maloney
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts, as a Party to the FGIC Order*

ny-1114137

/s/ Craig P. Druehl
Craig P. Druehl
Mauricio A. España
Rebecca S. Kahan
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon and
The Bank of New York Mellon Trust Company,
N.A., as Trustee of Certain Mortgage-Backed
Securities Trusts, as a Party to the FGIC
Order*

/s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Philip S. Kaufman
Daniel M. Eggermann
KRAMER LEVIN NAFTALIS & FRANKEL
LLP
1177 Avenue of Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel to the Official Committee of
Unsecured Creditors, as a Party to the
Appeal*

/s/ Glenn E. Siegel
Glenn E. Siegel
Rachel Jaffe Mauceri
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to The Bank of New York Mellon and
The Bank of New York Mellon Trust Company,
N.A., as Trustee of Certain Mortgage-Backed
Securities Trusts, as a Party to the FGIC
Order*

/s/ Dale C. Christensen, Jr.
Dale C. Christensen, Jr.
Thomas Ross Hooper
Benay L. Josselson
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to Law Debenture Trust Company of
New York, as Separate Trustee of Certain
Mortgage-Backed Securities Trusts, as a Party
to the FGIC Order*

21

ny-1114137

# Exhibit PX-951

B 10 Modified (Official Form 10) (12/11)

Claim #4870   Date Filed: 11/16/2012

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **Residential Capital, LLC, Case No. 12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Financial Guaranty Insurance Company

Name and address where notices should be sent:

Financial Guaranty Insurance Company
Attn: Timothy Travers
125 Park Avenue
New York, NY 10017
Tel: (212) 312-3000
Email: tim.travers@fgic.com

Copy to:
Carl Black, Esq.
Jones Day
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Tel: (216) 586-3939
Email: ceblack@jonesday.com

Telephone number:                    email:

Name and address where payment should be sent (if different from above):

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
*(If known)*

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

Telephone number:                    email:

1. Amount of Claim as of Date Case Filed: $  **See Attachment**

If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: **See Attachment**
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor:

3a. Debtor may have scheduled account as:

(See instruction #3a)

3b. Uniform Claim Identifier (optional):

(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:
Value of Property: $_____   Annual Interest Rate_____% ☐ Fixed ☐ Variable
                                                    (when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $_____                      Basis for perfection:_____

Amount of Secured Claim: $_____      Amount Unsecured: $_____

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
              $_____            (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain: Due to their volume, not attached hereto.

12120201211160000000000100

9. Signature: (See instruction #9) Check the appropriate box.
☑ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: Winston Wohr
Title: Managing Director
Company: Financial Guaranty Insurance Company    (Signature)    11/15/12 (Date)
Address and telephone number (if different from notice address above):

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**RECEIVED**

NOV 1 6 2012

KURTZMAN CARSON CONSULTANTS

COURT USE ONLY

Telephone number:                    Email:

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

PX
951

RC_FGIC9019_00001143

PX 0951 pg. 1 of 20

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017.6702
TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number: 212.326.3960
llswanson@jonesday.com

JP014179
207061-600005

November 15, 2012

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**DELIVERY CONFIRMATION REQUESTED**

ResCap Claims Processing Center c/o KCC
2335 Alaska Ave
El Segundo, California 90245

Re:    Proof of Claims in Residential Capital, LLC, *et al.*

To Whom it May Concern:

Please find enclosed one original and one copy each of Financial Guaranty Insurance
Company's three proof of claims against debtors Residential Capital, LLC, Residential Funding
Company, LLC and GMAC Mortgage, LLC. Please time stamp one copy each and return in the
self-addressed envelope also enclosed.

Very truly yours,

Laura L. Swanson

Enclosure:    3 originals of Proof of Claim
3 copies of Proof of Claim
1 self-addressed envelope

NXLKHOBAMVI  ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI
DUSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

RC_FGIC9019_00001144

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x
In re:                                      :        Chapter 11
                                            :
RESIDENTIAL CAPITAL, LLC, et al.,           :        Case No. 12-12020 (MG)
                                            :
                    Debtors.                :        Jointly Administered
                                            :
———————————————————————x

### ATTACHMENT TO PROOFS OF CLAIM OF FINANCIAL GUARANTY INSURANCE COMPANY AGAINST (I) RESIDENTIAL CAPITAL, LLC (CASE NO. 12-12020); (II) GMAC MORTGAGE, LLC (CASE NO. 12-12032); AND (III) RESIDENTIAL FUNDING COMPANY, LLC (CASE NO. 12-12019)

1.      This document provides detail in connection with and in support of the Proofs of Claim filed by Financial Guaranty Insurance Company ("Claimant" or "FGIC") against (i) Residential Capital, LLC ("ResCap") (Case No. 12-12020); (ii) GMAC Mortgage LLC ("GMACM") (Case No. 12-12032); and (iii) Residential Funding Company, LLC ("RFC") (Case No. 12-12019) (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned proceeding.

2.      On May 14, 2012 (the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Pursuant to an order entered on November 7, 2012 (Docket No. 2093), the Bankruptcy Court established November 16, 2012 as the date by which parties other than governmental entities must file a proof of claim against the Debtors.

## A.      BACKGROUND

3.      GMACM and RFC originated, acquired, sold and serviced residential mortgage loans (the "Mortgage Loans"). From time to time, GMACM and RFC facilitated the

RC_FGIC9019_00001145

critical aspects of a number of transactions (each a "Transaction" and collectively the

"Transactions"), whereby GMACM and RFC (collectively with respect to such Transactions, the

"Sponsors") arranged for the securitization of the Mortgage Loans and the sale to investors of

either certificates or notes (the "Securities") collateralized by the Mortgage Loans in the form of

residential mortgage-backed securities ("RMBS").

       4.     In addition to acting as Sponsors and sellers of Mortgage Loans within the

Transactions, the Sponsors also acted as mortgage loan servicers for many of the Transactions.

In its role as servicer, each Sponsor was responsible for, among other things, collecting borrower

payments, modifying delinquent mortgage loans and performing other loss mitigation tasks,

preserving the mortgaged property with respect to defaulted mortgage loans, liquidating

defaulted mortgage loans, and performing other servicing duties set forth in the applicable

securitization servicing agreements.

       5.     FGIC, a monoline financial guaranty insurance company, was in the

business of writing financial guaranty insurance policies with respect to asset-backed securities,

including RMBS. FGIC's financial guaranty insurance policies for the Transactions at issue (the

"Policies") guaranteed the payment of principal and interest due on the insured securities. At the

various times FGIC issued the relevant Policies, FGIC's financial strength was rated triple-A by

rating agencies, which enabled securities insured by FGIC to be highly rated as well, and more

highly rated than they otherwise would have been absent the Policies. FGIC's participation in

the Transactions enhanced the ratings and marketability of the Sponsors' RMBS which, in turn,

made the securitizations viable. Consequently, the Sponsors, along with their parent companies

ResCap and Ally Financial ("Ally Financial") and numerous affiliates, were able to strengthen

-2-

RC_FGIC9019_00001146

their balance sheets, grow their mortgage origination businesses through such off-balance sheet financing vehicles, and earn substantial fees, including ongoing servicing fees.

6.    With respect to any RMBS covered by the Policies, FGIC—as the financial guaranty insurer—is exposed to any unpaid losses on such securities. FGIC's risk in securitization transactions such as those engineered by the Sponsors is dependent on, among other things, (i) the credit quality of the underlying mortgage loans and (ii) the servicing of such mortgage loans. Within the Transactions, FGIC is obligated to make payments on any RMBS it insured if the cash flow from the underlying Mortgage Loans is insufficient to satisfy in a timely manner the payments due to holders of the Securities, including, for example, if the servicer of the Mortgage Loans is not properly collecting borrower payments or is otherwise not servicing in accordance with industry standards and/or their stated practices. Accordingly, FGIC has a significant economic interest in the proper servicing of the Mortgage Loans and the maximization of collections from borrowers.

7.    Currently, FGIC insures securities in 43 of the Debtors' securitization transactions. FGIC is the largest monoline insurer in terms of exposure to the Debtors by balance of securities issued. Each securitization transaction consists of either a Pooling & Servicing Agreement or Sale and Servicing Agreement (each referred to as a "Servicing Agreement" herein), which anticipates that there be a companion Insurance & Indemnity Agreement ("I&I Agreement"), and a Custodial Agreement. In each case, these agreements were executed and delivered simultaneously as part of the closing of the related securitization transactions. The obligations of the servicers in these agreements are indivisible.

8.    The Servicing Agreements associated with the 43 securitization transactions that FGIC insures were listed in the First Amended and Restated Notice of (I)

-3-

RC_FGIC9019_00001147

Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of

Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts

Related Thereto (Docket No. 1484) (the "Assumption Notice") or were otherwise incorporated

into the Assumption Notice and are part of the sale of the servicing business to the bidder who

prevailed at the auction—Ocwen Financial Corp. As of the date of this filing, neither the

Debtors nor Ocwen Financial Corp. have informed FGIC of their final intentions with respect to

the agreements between the Debtors and FGIC. To the extent that FGIC's servicing claims are

paid as part of the assumption and assignment process, FGIC acknowledges that certain of the

claims asserted herein would be duplicative. As the status of its agreements is still in flux,

however, FGIC is forced to include amounts owing on account of servicing breaches in this

Proof of Claim.

        9.      FGIC has brought twelve civil actions against the Debtors and Ally

Financial, each of which are currently pending in the United States District Court for the

Southern District of New York before the Honorable Paul A. Crotty.[1] Broadly, the claims arise

from the financial guaranty insurance policies issued by FGIC in connection with the Debtors'

RMBS transactions. Against the Debtors, FGIC has alleged, among other things, breach of

contract and, in some instances, fraudulent inducement to enter into the I&I Agreement and issue

the Policies. The Complaints FGIC has filed against the Debtors and the underlying

Transactions are summarized in the following chart:[2]

---

[1] Copies of the complaints that initiated these actions are not attached hereto due to their voluminous nature, but are available upon request.

[2] This chart does not include claims FGIC has brought against Ally Financial or Ally Bank.

-4-

RC_FGIC9019_00001148

| Case No. | Transactions | Major Causes of Action (Defendant) |
|---|---|---|
| **GMACM-Sponsored Transactions** | | |
| 12-cv-00780 | GMACM 2005-HE1 | Breach of Contract (GMACM, ResCap) |
| 11-cv-09729 | GMACM 2006-HE1 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| 12-cv-1658 | GMACM 2006-HE3 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| 12-cv-1818 | GMACM 2006-HE2<br>GMACM 2007-HE2 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| **RFC-Sponsored Transactions** | | |
| 11-cv-9737 | RAMP 2005-RS9 | Breach of Contract (RFC) |
| 11-cv-9736 | RFMSII 2005-HS1<br>RFMSII 2005-HS2 | Breach of Contract (RFC) |
| 12-cv-0338 | RAMP 2005-EFC7 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0339 | RAMP 2005-NC1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0341 | RASC 2005-EMX5 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-1601 | RASC 2007-EMX1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0340 | RFMSII 2006-HSA1<br>RFMSII 2005-HSA1<br>RFMSII 2006-HSA2 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-1860 | RFMSII 2006-HI2<br>RFMSII 2006-HI3<br>RFMSII 2006-HI4<br>RFMSII 2006-HI5<br>RFMSII 2007-HI1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |

      10.    As mentioned, FGIC's participation in the Transactions was essential to

their viability and enhanced the Sponsors' ability to market the securitizations effectively. For

each Transaction, FGIC and either RFC or GMACM executed an I&I Agreement, pursuant to

which FGIC issued the applicable financial guaranty insurance policy to insure payment on the

-5-

RC_FGIC9019_00001149

Securities sold to investors in a particular Transaction. Each I&I Agreement typically was signed by, among others, FGIC (as the "Insurer" of each Transaction); RFC or GMACM (as the "Seller" and Servicer and/or Master Servicer for each Transaction); and the respective Trustee for the Transaction.

11.    Each I&I Agreement provides that FGIC as the Insurer is a third-party beneficiary of, and shall have all of the rights provided for in, the "Operative Documents." *See, e.g.*, 2006-HE2 Transaction, I&I Agreement § 2.02(k). The definition of "Operative Documents" depended on whether GMACM or RFC sponsored the Transaction. For GMACM-sponsored Transactions, "Operative Documents" are defined to typically include: (i) the Securities; (ii) a Mortgage Loan Purchase Agreement ("MLPA"); (iii) a Servicing Agreement; (iv) an Indenture between the relevant Trust and Indenture Trustee; and (v) a Custodial Agreement. *See, e.g.*, 2006-HE2 Transaction, I&I Agreements § 1.01. For RFC-sponsored Transactions, "Operative Documents" are defined to typically include: (i) the Securities; (ii) a Pooling and Servicing Agreement; and (iii) an Assignment and Assumption Agreement. *See, e.g.*, 2006-HI4 Transaction, I&I Agreement § 1.01.

12.    The Sponsor, together with the "Depositor" of the Mortgage Loans into the relevant Trust, offered the Securities for sale pursuant to a Prospectus and a Prospectus Supplement, each of which discussed the relevant Policy and the triple-A initial rating of the Securities that was made possible by FGIC's issuance of that Policy. The Prospectus and Prospectus Supplement, together with certain preliminary offering documents, each as further supplemented by any subsequent amendment or supplement thereto, and any other offering document that make reference to the Policies, are referred to collectively as the "Offering Documents."

-6-

RC_FGIC9019_00001150

## B.    BREACH OF CONTRACT

13.    In the Complaints, FGIC has alleged four distinct claims for breach of contract against the Sponsors. These claims include: (i) breach of both transaction-level and loan-level representations, warranties, and affirmative covenants; (ii) breach of the applicable Sponsor's duty to repurchase, cure, or substitute defective Mortgage Loans; (iii) breach of the applicable Sponsor's duties regarding the servicing of the Mortgage Loans; and (iv) breach of the applicable Sponsor's duty to provide FGIC with access to information regarding the Mortgage Loans.

14.    FGIC brings each of these four claims as a breach of the I&I Agreement between FGIC and the applicable Sponsor. FGIC's rights and remedies under the I&I Agreement are distinct from any rights and remedies that FGIC holds as a third party beneficiary of the contractual obligations GMACMM and RFC owe to the Trusts. Moreover, FGIC, as a financial guaranty insurer is entitled under applicable law to seek rescissory damages in addition to all other damages allowable by law.

15.    In the I&I Agreement and other Operative Documents incorporated into the I&I Agreement by reference, GMACM and RFC made numerous representations, warranties, and affirmative covenants regarding their loan origination, selection, and evaluation process, the characteristics of the Mortgage Loans, and the accuracy and completeness of the information supplied to FGIC. GMACM and RFC also expressly represented and warranted the accuracy of the mortgage loan characteristics provided to FGIC in an extensive and detailed schedule known as the "Mortgage Loan Schedule." FGIC has determined that GMACM and RFC not only breached numerous transaction-level representations and warranties, but also revealed that a shockingly high percentage of the Mortgage Loans—contrary to the information disclosed to

-7-

RC_FGIC9019_00001151

FGIC in the Mortgage Loan Schedule and stated in the Offering Documents and Operative Documents—contained defects constituting breaches of loan-level representations and warranties. These transaction-level and loan-level breaches of representations and warranties constitute the Sponsors' first material breach of the I&I Agreement.

16.    Pursuant to its rights under the I&I Agreement and the provisions of certain Operative Documents incorporated therein, FGIC demanded that the applicable Sponsor repurchase the defective Mortgage Loans. Despite an explicit duty to repurchase defective loans, GMACM and RFC refused to comply with FGIC's demand for the repurchase of numerous such Mortgage Loans. The Sponsors' failure to repurchase these loans constitutes a second material breach of the I&I Agreement.

17.    In addition, GMACM and RFC represented to FGIC in an affirmative covenant under the I&I Agreements that all Mortgage Loans would be serviced in all material respects in compliance with the Servicing Agreement entered into between the applicable Sponsor, the relevant Trust, and the Trustee. The Servicing Agreements require that the servicer of the loans comply with the normal and usual collection and servicing procedures and otherwise service the loans in accordance with appropriate procedures. Through an on-site diligence review of ResCap servicing practices and additional information discovered by FGIC relating to the servicing of Mortgage Loans, FGIC learned that GMACM and RFC were deficient in borrower contact, collections, and loss mitigation standards. FGIC also discovered evidence that ResCap's servicing practices had led to the miscategorization and neglect of certain FGIC-insured Mortgage Loans. For these reasons, GMACM and RFC committed a third material breach of the I&I Agreement by failing to act in accordance with the affirmative covenant regarding their duty to service the Mortgage Loans in accordance with the Servicing Agreement.

-8-

RC_FGIC9019_00001152

18.    The Sponsors committed a fourth breach of the I&I Agreement by denying

FGIC access to certain information to which it was contractually entitled.  Pursuant to the I&I

Agreement, the applicable Sponsor agreed to furnish or cause to be furnished to FGIC financial

statements, accountants' reports, and other information.  Such other information includes, but is

not limited to, data relating to the Mortgage Loans, the servicing of the Mortgage Loans, and the

Transactions.  Notwithstanding FGIC's multiple reasonable requests and subsequent demands

for access to this information, the Sponsors have denied FGIC access in direct breach of the I&I

Agreement.

19.    Further, as concerns a series of RFC-sponsored Transactions—known as

2005-EMX5, 2005-RS9, 2005-NC1, and 2007-EMX1—RFC committed an additional breach of

the I&I Agreement by improperly executing modifications to certain Mortgage Loans in

accordance with the federal Home Affordable Modification Program without FGIC's required

consent.  RFC had originally asked FGIC for its consent to amend the relevant Pooling and

Servicing Agreements in order to effectuate the loan modifications.  Although FGIC requested

additional documentation to evaluate the proposed modifications and accompanying

amendments, RFC implemented the loan modifications without supplying FGIC with the

requested information or otherwise receiving FGIC's consent.

20.    Also, as concerns two particular GMACM-sponsored Transactions—

known as 2005-HE1 and 2006-HE1—GMACM committed another breach of the I&I Agreement

by improperly transferring thousands of additional mortgage loans into the related Trusts

following the occurrence of a contractually defined amortization event which terminated the

period during which subsequent mortgage loans could permissibly be transferred into the trusts

following the closing of these Transactions.  As a result of this breach, FGIC has received claims

-9-

RC_FGIC9019_00001153

caused in part by losses attributable to a substantial number of loans that were added to the related trusts in violation of the Transactions' operative documents, the terms of which were incorporated by reference into the I&I Agreement for FGIC's benefit.

21.    Additionally, as concerns another GMACM-sponsored Transaction—known as 2006-HE3—GMACM committed a further breach of the I&I Agreement by improperly including within the Transaction at least 3,013 more high-risk balloon Mortgage Loans—accounting for at least $160 million in aggregate principal amount—than the offering documents and operative documents represented and warranted the Transaction would contain. The credit risk inherent in a balloon mortgage loan is typically much higher than that of a non-balloon mortgage loan, and the undisclosed balloon Mortgage Loans in the 2006-HE3 Transaction have performed significantly worse than the non-balloon Mortgage Loans in the same Transaction. Consequently, FGIC has received claims caused in part by losses attributable to the substantial number of loans in the 2006-HE3 Transaction that were misrepresented by GMACM as being less risky non-balloon loans.

22.    Pursuant to the I&I Agreement, GMACM and RFC must indemnify FGIC for any and all claims, losses, liabilities, demands, damages, costs or expenses of any nature arising out of or relating to the breach by the applicable Sponsor of any of the representations or warranties contained in the I&I Agreement or arising out of the transactions contemplated by the related Operative Documents. As explained above, GMACM and RFC breached numerous representations, warranties, and covenants in the I&I Agreements and the Operative Documents incorporated by reference therein. These breaches have caused, and will continue to cause, FGIC to pay claims and to incur losses, costs, and expenses.

-10-

RC_FGIC9019_00001154

23.    In addition to an enforcement of the Sponsors' indemnification obligations under the I&I Agreements, FGIC seeks all legal, rescissory, equitable, consequential, and/or punitive damages for the Sponsors' material breaches of the Transactions.

24.    With regard to ResCap, FGIC has alleged that the substantial breaches of contract committed by GMACM and RFC were carried out at the direction of ResCap, which was acting at the direction of Ally Financial—the ultimate parent company of the Debtors.

25.    ResCap is the immediate parent company of and wholly owns both GMACM and RFC. ResCap and its subsidiaries share numerous directors, senior management and employees, and, together with Ally Financial, share significant resources and operations. Indeed, ResCap did not conduct any business operations whatsoever until GMAC Residential Holding Corp. and GMAC-RFC Holding Corp.—two of Ally Financial's wholly-owned subsidiaries—were transferred to it in March 2005. Those two subsidiaries represented substantially all of Ally Financial's mortgage securitization business.

26.    FGIC has asserted that, due to Ally Financial's domination and control over its subsidiaries, including ResCap, GMACM, and RFC, as well as the failure of Ally Financial and its subsidiaries to observe relevant corporate formalities in distinguishing themselves as independent entities, Ally Financial's mortgage operations units are in reality a single enterprise. As such, ResCap is indistinguishable from each of GMACM and RFC, and is thus jointly and severally liable to FGIC under a theory of alter ego liability for the harms FGIC has suffered from the breaches of contract committed by GMACM and RFC.

27.    In addition, due to, among other things, the fully integrated nature of Ally Financial's mortgage operations units, which operate as a single enterprise, each of GMACM and RFC are indistinguishable and were treated as, and are, alter egos of one another. As such,

-11-

RC_FGIC9019_00001155

GMACM and RFC are jointly and severally liable to FGIC for the harms FGIC has suffered as a result of the breaches of contract committed by each of the Sponsors.

## C.    FRAUDULENT INDUCEMENT

28.    In the relevant Complaints, FGIC has alleged that GMACM or RFC, as relevant, fraudulently induced FGIC into issuing Policies for the Transactions through knowing misrepresentations and omissions on which FGIC was intended to rely. To induce FGIC's participation in the Transactions—which participation was essential to their success—GMACM and RFC made material representations and warranties to FGIC about the manner in which the Mortgage Loans were selected and evaluated for inclusion in the Transactions and the credit characteristics of the Mortgage Loans. Those representations and warranties were materially false when stated by the applicable Sponsor, which intended for FGIC to rely on the misrepresentations and omissions in order to obtain needed financial guaranty insurance—and the accompanying credit enhancement—for the Transactions.

29.    FGIC reasonably relied on the Sponsors' representations and warranties when deciding to enter into the Transactions. GMACM and RFC represented in the Operative Documents and the Offering Documents, among other things, that the underwriting standards relating to the Mortgage Loans generally would conform to the published criteria applicable to the particular Mortgage Loans to be included in the various Transactions.

30.    FGIC and the relevant Sponsor entered into the I&I Agreements, which restated for FGIC's benefit the representations and warranties that the Sponsors had offered in other of the Operative Documents and Offering Documents, and thereby issued Policies for the Transactions on certain specified terms. In doing so, FGIC agreed to insure payment on the Securities, which were backed by pools of Mortgage Loans that were, in actuality, materially

-12-

RC_FGIC9019_00001156

different (and worse) than the applicable Sponsor had represented  As a result, the credit risk

assumed by FGIC in connection with these Transactions was far greater than it would have been

had the representations and warranties been true, as demonstrated by the overwhelming number

of claims that have been subsequently presented to FGIC.

31.    Had the information provided to FGIC directly and indirectly by GMACM

and RFC been accurate and truthful, FGIC would not have issued the Policies on the agreed

terms, or would have refused to issue the Policies altogether.  As a result of GMACM's and

RFC's materially false statements and omissions in information provided to FGIC and the credit

ratings agencies, FGIC has been damaged and will continue to be damaged.

32.    For the reasons discussed above in paragraphs 24 to 26, and further in

FGIC's Complaints, ResCap is jointly and severally liable to FGIC under a theory of alter ego

liability for the harms FGIC has suffered from the fraudulent inducement committed by

GMACM and RFC.  In addition, because GMACM and RFC were acting at the direction of

ResCap, ResCap may be jointly and severally liable to FGIC for the harms FGIC has suffered

from the fraudulent inducement committed by GMACM and RFC.

33.    Similarly, for the reasons discussed above in paragraph 27, RFC and

GMACM are jointly and severally liable to FGIC for the fraudulent inducement committed by

each of the Sponsors.  Moreover, because, among other things, GMACM and RFC each serviced

loans wrapped by FGIC by originated by the other and in such capacity aided and abetted the

misconduct of the other as originators, GMACM and RFC may be jointly and severally liable to

FGIC under an aiding and abetting theory of liability.

-13-

RC_FGIC9019_00001157

## D.    DAMAGES

34.    FGIC seeks legal, rescissory, equitable, consequential, and/or punitive damages against the Debtors for GMACM's and RFC's material breaches of the Transactions and their fraudulent inducement of FGIC to enter into the I&I Agreements and issue Policies for the Transactions.

35.    FGIC is entitled to receive rescissory damages in an amount equal to the amount it has been required to pay pursuant to the Policies. Rescissory damages is a more appropriate award than its equitable equivalent, actual rescission. Rescission would be impractical because: (i) the Policies are held by the Trustee for the benefit of the holders of the Securities; (ii) the Policies by their terms are expressly irrevocable (and thus cannot be rescinded) for any reason; and (iii) rescission of the Policies may lead to even greater economic harm to clean-handed parties to the securitizations.

36.    Also, as discussed above, under the I&I Agreements, the Sponsors must indemnify FGIC for any and all claims, losses, liabilities, demands, damages, costs or expenses of any nature arising out of or relating to the breach by the Sponsors of any of the representations or warranties contained in the I&I Agreement or arising out of the transactions contemplated by the related Operative Documents.

37.    Furthermore, pursuant to the Sponsors' express reimbursement obligation under the I&I Agreement, FGIC is also entitled to full reimbursement from the Debtors for any payment made by FGIC under the Policies arising from the applicable Sponsor's failure to substitute, repurchase, or cure a defective mortgage loan, as well as interest accrued on any unreimbursed amount. Further, also pursuant to the Sponsors' express reimbursement obligation, the Debtors must reimburse FGIC for any and all charges, fees, costs and expenses—including

-14-

RC_FGIC9019_00001158

but not limited to attorneys' and accountants' fees and expenses—that FGIC has and will

reasonably pay or incur in connection with the enforcement, defense or preservation of any of its

rights under the Transactions, including defending, monitoring or participating in any litigation

or proceeding, including any insolvency proceeding of any participant in the Transactions.

      38.    Accordingly, FGIC is entitled to receive damages from each of the

Debtors, in an amount not less than $1.85 Billion, for (i) all amounts it has paid pursuant to the

Policies, plus interest[3]; (ii) all claims FGIC has been presented with under the Policies and has

not yet paid, plus interest; (iii) expectation damages for any losses on the Trusts; and (iv)

additional damages, including but not limited to reimbursement of expenses and fees as well as

consequential damages, including any currently unliquidated future expenses or losses.

      39.    As discussed above, ResCap is jointly and severally liable for all such

damages as the alter ego and parent company of GMACM and RFC. Additionally, as described

previously, GMACM and RFC are likewise jointly and severally liable for FGIC's damages.

## E.    RESERVATION OF RIGHTS

      40.    Claimant does not waive, and hereby expressly reserves, all rights and

remedies at law or in equity that it has or may have against the Debtors and/or any other person

or entity, including, but not limited to, any rights and remedies of Claimant arising under or in

connection with the I&I Agreements, any of the Operative Documents, or any other legal or

equitable source. Claimant reserves the right to amend or supplement this Proof of Claim at any

time and in any respect, including, without limitation, as necessary or appropriate to amend,

quantify or correct amounts, to provide additional detail regarding the claims set forth herein or

---

[3] Included in this amount is $46,235,293 that FGIC is seeking on account of accrued prepetition interest on amounts paid out by FGIC under the Policies.

-15-

RC_FGIC9019_00001159

the basis therefor, to fix the amount of any contingent or unliquidated claim and/or to assert that

this claim is entitled to be treated as an administrative expense or other priority. Claimant further

reserves the right to file and assert any additional claims or requests for payment of

administrative expense of whatever kind or nature that may be or later become due from the

Debtors under the I&I Agreements or any other agreement or otherwise, including, without

limitation, any secured, priority, administrative expense or general unsecured claims under the

Bankruptcy Code, whether known or unknown, liquidated or unliquidated, choate or inchoate,

disputed or undisputed or contingent or fixed.

      41.    The filing of this Proof of Claim is not and shall not be deemed or

construed as: (a) a waiver or release of Claimant's rights against any person, entity or property,

including the Debtors, that may be liable for all or part of the claims set forth herein; (b) a

consent by Claimant to the jurisdiction of the Bankruptcy Court or any other court with respect

to proceedings, if any, commenced in any case against or otherwise involving Claimant; (c) a

waiver or release of Claimant's right to trial by jury in the Bankruptcy Court or any other court

in any proceeding as to any and all matters so triable herein, whether or not the same be

designated legal or private rights, or in any case, controversy or proceeding related hereto,

notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28

U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States

Constitution; (d) a consent by Claimant to a jury trial in the Bankruptcy Court or any other court

in any proceeding as to any and all matters so triable herein or in any case, controversy or

proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of

Claimant's right to have any and all final orders in any and all non-core matters or proceedings

entered only after de novo review by a United States District Court Judge; (f) a waiver of

-16-

RC_FGIC9019_00001160

Claimant's right to move to withdraw the reference with respect to: (1) the subject matter of this

Proof of Claim, (2) any objection thereto or (3) any other proceeding which may be commenced

in this case relating to this claim or otherwise involving Claimant; (g) an election of remedies; (h)

an acknowledgment that Claimant received adequate notice of any bar date fixed in these cases;

(i) a waiver of Claimant's right to assert that this or any other claim is entitled to administrative

or other priority; or (j) an admission that any valid claims or causes of action exist against

Claimant.

      42.    Claimant does not waive any right to any security held by or for it or any

right to claim specific assets or any right or rights of action that it has or may have against the

Debtors or any other person or persons who may be liable for all or any part of this Proof of

Claim.

      43.    To the extent that Claimant is entitled to assert this Proof of Claim as a

setoff or recoupment against any claim or cause of action that the Debtors may assert against

Claimant in the future (or against any claim or cause of action that may be asserted on behalf of

the Debtors), Claimant hereby preserves its rights with respect to such setoff and recoupment,

and any such right of setoff or recoupment shall survive the closing of this bankruptcy case.

      44.    The filing of this Proof of Claim in no respect waives, alters or otherwise

affects any rights that Claimant may have with regard to any claims created or otherwise arising

on or subsequent to the Petition Date. Claimant reserves all rights to argue that any right to

payment is a postpetition claim.

-17-

RC_FGIC9019_00001161

E.    **NOTICES**

45.    Copies of all notices and communications concerning this Proof of Claim

should be sent to:

> Financial Guaranty Insurance Company
> Attn:  Timothy Travers
> 125 Park Avenue
> New York, NY 10017
> Tel:  (212) 312-3000
> Email: tim.travers@fgic.com

With a copy to:

> Carl E. Black, Esq.
> Jones Day
> 901 Lakeside Avenue
> Cleveland, Ohio  44114-1190
> Tel:  (216) 586-3939
> Email: ceblack@jonesday.com

-18-

RC_FGIC9019_00001162

# Exhibit PX-952

B 10 Modified (Official Form 10) (12/11)

**Claim #4868  Date Filed: 11/16/2012**

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **Residential Funding Company, LLC, Case No. 12-12019**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Financial Guaranty Insurance Company

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:

Financial Guaranty Insurance Company
Attn: Timothy Travers
125 Park Avenue
New York, NY 10017
Tel: (212) 312-3000
Email: tim.travers@fgic.com

Copy to:
Carl Black, Esq.
Jones Day
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Tel: (216) 586-3939
Email: ceblack@jonesday.com

**Court Claim**
Number: _____
*(If known)*

Filed on: _____

Telephone number:                                    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Name and address where payment should be sent (if different from above):

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

Telephone number:                  email:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

1. Amount of Claim as of Date Case Filed: $ **See Attachment**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

**2. Basis for Claim:** See Attachment
(See instruction #2)

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|---|
| _ _ _ _ | (See instruction #3a) | (See instruction #3b) |

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other

Describe:

Value of Property: $_____ Annual Interest Rate_____% ☐ Fixed ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,

if any: $_____                     Basis for perfection: _____

Amount of Secured Claim: $_____          Amount Unsecured: $_____

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**Amount entitled to priority:**

$_____

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence ... definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED D...

If the documents are not available, please explain: Due to their v not attached t.

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
12120191211160000000000045

**9. Signature:** (See instruction #9) Check the appropriate box.

☑ I am the creditor.   ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)

☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)

☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Winston Wohr
Title: Managing Director
Company: Financial Guaranty Insurance Company     (Signature)     11/15/12 (Date)
Address and telephone number (if different from notice address above):

**RECEIVED**

**NOV 1 6 2012**

**KURTZMAN CARSON CONSULTANTS**

Telephone number:              Email:

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

**COURT USE ONLY**

**PX 952**

RC_FGIC9019_00001275

# JONES DAY

222 EAST 41ST STREET · NEW YORK, NEW YORK 10017.6702
TELEPHONE: +1.212.326.3939 · FACSIMILE: +1.212.755.7306

Direct Number: 212.326.3960
llswanson@jonesday.com

JP014179
207061-600005

November 15, 2012

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED
## DELIVERY CONFIRMATION REQUESTED

ResCap Claims Processing Center c/o KCC
2335 Alaska Ave
El Segundo, California  90245

Re:    Proof of Claims in Residential Capital, LLC, et al.

To Whom it May Concern:

Please find enclosed one original and one copy each of Financial Guaranty Insurance Company's three proof of claims against debtors Residential Capital, LLC, Residential Funding Company, LLC and GMAC Mortgage, LLC.  Please time stamp one copy each and return in the self-addressed envelope also enclosed.

Very truly yours,

Laura L. Swanson

Enclosure:    3 originals of Proof of Claim
3 copies of Proof of Claim
1 self-addressed envelope

NXLKHOBAHVI  ATLANTA · BEIJING · BOSTON · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · DUBAI
DÜSSELDORF · FRANKFURT · HONG KONG · HOUSTON · IRVINE · JEDDAH · LONDON · LOS ANGELES · MADRID
MEXICO CITY · MILAN · MOSCOW · MUNICH · NEW YORK · PARIS · PITTSBURGH · RIYADH · SAN DIEGO
SAN FRANCISCO · SÃO PAULO · SHANGHAI · SILICON VALLEY · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON

RC_FGIC9019_00001276

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

In re:                                          :        Chapter 11

RESIDENTIAL CAPITAL, LLC, et al.,               :        Case No. 12-12020 (MG)

                    Debtors.                    :        Jointly Administered

                                                :
———————————————————————x

## ATTACHMENT TO PROOFS OF CLAIM OF FINANCIAL GUARANTY INSURANCE COMPANY AGAINST (I) RESIDENTIAL CAPITAL, LLC (CASE NO. 12-12020); (II) GMAC MORTGAGE, LLC (CASE NO. 12-12032); AND (III) RESIDENTIAL FUNDING COMPANY, LLC (CASE NO. 12-12019)

1.      This document provides detail in connection with and in support of the

Proofs of Claim filed by Financial Guaranty Insurance Company ("Claimant" or "FGIC") against

(i) Residential Capital, LLC ("ResCap") (Case No. 12-12020); (ii) GMAC Mortgage LLC

("GMACM") (Case No. 12-12032); and (iii) Residential Funding Company, LLC ("RFC") (Case

No. 12-12019) (collectively, the "Debtors"), debtors and debtors-in-possession in the above-

captioned proceeding.

2.      On May 14, 2012 (the "Petition Date"), the Debtors filed a voluntary

petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court"). Pursuant to an order entered on November 7, 2012 (Docket No. 2093), the Bankruptcy

Court established November 16, 2012 as the date by which parties other than governmental

entities must file a proof of claim against the Debtors.

## A.    BACKGROUND

3.      GMACM and RFC originated, acquired, sold and serviced residential

mortgage loans (the "Mortgage Loans"). From time to time, GMACM and RFC facilitated the

RC_FGIC9019_00001277

critical aspects of a number of transactions (each a "Transaction" and collectively the

"Transactions"), whereby GMACM and RFC (collectively with respect to such Transactions, the

"Sponsors") arranged for the securitization of the Mortgage Loans and the sale to investors of

either certificates or notes (the "Securities") collateralized by the Mortgage Loans in the form of

residential mortgage-backed securities ("RMBS").

    4.  In addition to acting as Sponsors and sellers of Mortgage Loans within the

Transactions, the Sponsors also acted as mortgage loan servicers for many of the Transactions.

In its role as servicer, each Sponsor was responsible for, among other things, collecting borrower

payments, modifying delinquent mortgage loans and performing other loss mitigation tasks,

preserving the mortgaged property with respect to defaulted mortgage loans, liquidating

defaulted mortgage loans, and performing other servicing duties set forth in the applicable

securitization servicing agreements.

    5.  FGIC, a monoline financial guaranty insurance company, was in the

business of writing financial guaranty insurance policies with respect to asset-backed securities,

including RMBS. FGIC's financial guaranty insurance policies for the Transactions at issue (the

"Policies") guaranteed the payment of principal and interest due on the insured securities. At the

various times FGIC issued the relevant Policies, FGIC's financial strength was rated triple-A by

rating agencies, which enabled securities insured by FGIC to be highly rated as well, and more

highly rated than they otherwise would have been absent the Policies. FGIC's participation in

the Transactions enhanced the ratings and marketability of the Sponsors' RMBS which, in turn,

made the securitizations viable. Consequently, the Sponsors, along with their parent companies

ResCap and Ally Financial ("Ally Financial") and numerous affiliates, were able to strengthen

-2-

RC_FGIC9019_00001278

their balance sheets, grow their mortgage origination businesses through such off-balance sheet financing vehicles, and earn substantial fees, including ongoing servicing fees.

6.    With respect to any RMBS covered by the Policies, FGIC—as the financial guaranty insurer—is exposed to any unpaid losses on such securities. FGIC's risk in securitization transactions such as those engineered by the Sponsors is dependent on, among other things, (i) the credit quality of the underlying mortgage loans and (ii) the servicing of such mortgage loans. Within the Transactions, FGIC is obligated to make payments on any RMBS it insured if the cash flow from the underlying Mortgage Loans is insufficient to satisfy in a timely manner the payments due to holders of the Securities, including, for example, if the servicer of the Mortgage Loans is not properly collecting borrower payments or is otherwise not servicing in accordance with industry standards and/or their stated practices. Accordingly, FGIC has a significant economic interest in the proper servicing of the Mortgage Loans and the maximization of collections from borrowers.

7.    Currently, FGIC insures securities in 43 of the Debtors' securitization transactions. FGIC is the largest monoline insurer in terms of exposure to the Debtors by balance of securities issued. Each securitization transaction consists of either a Pooling & Servicing Agreement or Sale and Servicing Agreement (each referred to as a "Servicing Agreement" herein), which anticipates that there be a companion Insurance & Indemnity Agreement ("I&I Agreement"), and a Custodial Agreement. In each case, these agreements were executed and delivered simultaneously as part of the closing of the related securitization transactions. The obligations of the servicers in these agreements are indivisible.

8.    The Servicing Agreements associated with the 43 securitization transactions that FGIC insures were listed in the First Amended and Restated Notice of (I)

-3-

RC_FGIC9019_00001279

Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of

Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts

Related Thereto (Docket No. 1484) (the "Assumption Notice") or were otherwise incorporated

into the Assumption Notice and are part of the sale of the servicing business to the bidder who

prevailed at the auction—Ocwen Financial Corp. As of the date of this filing, neither the

Debtors nor Ocwen Financial Corp. have informed FGIC of their final intentions with respect to

the agreements between the Debtors and FGIC. To the extent that FGIC's servicing claims are

paid as part of the assumption and assignment process, FGIC acknowledges that certain of the

claims asserted herein would be duplicative. As the status of its agreements is still in flux,

however, FGIC is forced to include amounts owing on account of servicing breaches in this

Proof of Claim.

        9.     FGIC has brought twelve civil actions against the Debtors and Ally

Financial, each of which are currently pending in the United States District Court for the

Southern District of New York before the Honorable Paul A. Crotty.[1] Broadly, the claims arise

from the financial guaranty insurance policies issued by FGIC in connection with the Debtors'

RMBS transactions. Against the Debtors, FGIC has alleged, among other things, breach of

contract and, in some instances, fraudulent inducement to enter into the I&I Agreement and issue

the Policies. The Complaints FGIC has filed against the Debtors and the underlying

Transactions are summarized in the following chart:[2]

---

[1] Copies of the complaints that initiated these actions are not attached hereto due to their voluminous nature, but are available upon request.

[2] This chart does not include claims FGIC has brought against Ally Financial or Ally Bank.

-4-

RC_FGIC9019_00001280

| Case No. | Transactions | Major Causes of Action (Defendant) |
|---|---|---|
| **GMACM-Sponsored Transactions** | | |
| 12-cv-00780 | GMACM 2005-HE1 | Breach of Contract (GMACM, ResCap) |
| 11-cv-09729 | GMACM 2006-HE1 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| 12-cv-1658 | GMACM 2006-HE3 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| 12-cv-1818 | GMACM 2006-HE2<br>GMACM 2007-HE2 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| **RFC-Sponsored Transactions** | | |
| 11-cv-9737 | RAMP 2005-RS9 | Breach of Contract (RFC) |
| 11-cv-9736 | RFMSII 2005-HS1<br>RFMSII 2005-HS2 | Breach of Contract (RFC) |
| 12-cv-0338 | RAMP 2005-EFC7 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0339 | RAMP 2005-NC1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0341 | RASC 2005-EMX5 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-1601 | RASC 2007-EMX1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0340 | RFMSII 2006-HSA1<br>RFMSII 2005-HSA1<br>RFMSII 2006-HSA2 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-1860 | RFMSII 2006-HI2<br>RFMSII 2006-HI3<br>RFMSII 2006-HI4<br>RFMSII 2006-HI5<br>RFMSII 2007-HI1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |

10.    As mentioned, FGIC's participation in the Transactions was essential to

their viability and enhanced the Sponsors' ability to market the securitizations effectively.  For

each Transaction, FGIC and either RFC or GMACM executed an I&I Agreement, pursuant to

which FGIC issued the applicable financial guaranty insurance policy to insure payment on the

RC_FGIC9019_00001281

Securities sold to investors in a particular Transaction. Each I&I Agreement typically was signed by, among others, FGIC (as the "Insurer" of each Transaction); RFC or GMACM (as the "Seller" and Servicer and/or Master Servicer for each Transaction); and the respective Trustee for the Transaction.

      11.     Each I&I Agreement provides that FGIC as the Insurer is a third-party beneficiary of, and shall have all of the rights provided for in, the "Operative Documents." *See, e.g.*, 2006-HE2 Transaction, I&I Agreement § 2.02(k). The definition of "Operative Documents" depended on whether GMACM or RFC sponsored the Transaction. For GMACM-sponsored Transactions, "Operative Documents" are defined to typically include: (i) the Securities; (ii) a Mortgage Loan Purchase Agreement ("MLPA"); (iii) a Servicing Agreement; (iv) an Indenture between the relevant Trust and Indenture Trustee; and (v) a Custodial Agreement. *See, e.g.*, 2006-HE2 Transaction, I&I Agreements § 1.01. For RFC-sponsored Transactions, "Operative Documents" are defined to typically include: (i) the Securities; (ii) a Pooling and Servicing Agreement; and (iii) an Assignment and Assumption Agreement. *See, e.g.*, 2006-HI4 Transaction, I&I Agreement § 1.01.

      12.     The Sponsor, together with the "Depositor" of the Mortgage Loans into the relevant Trust, offered the Securities for sale pursuant to a Prospectus and a Prospectus Supplement, each of which discussed the relevant Policy and the triple-A initial rating of the Securities that was made possible by FGIC's issuance of that Policy. The Prospectus and Prospectus Supplement, together with certain preliminary offering documents, each as further supplemented by any subsequent amendment or supplement thereto, and any other offering document that make reference to the Policies, are referred to collectively as the "Offering Documents."

-6-

RC_FGIC9019_00001282

## B.    BREACH OF CONTRACT

13.    In the Complaints, FGIC has alleged four distinct claims for breach of

contract against the Sponsors.  These claims include: (i) breach of both transaction-level and

loan-level representations, warranties, and affirmative covenants; (ii) breach of the applicable

Sponsor's duty to repurchase, cure, or substitute defective Mortgage Loans; (iii) breach of the

applicable Sponsor's duties regarding the servicing of the Mortgage Loans; and (iv) breach of the

applicable Sponsor's duty to provide FGIC with access to information regarding the Mortgage

Loans.

14.    FGIC brings each of these four claims as a breach of the I&I Agreement

between FGIC and the applicable Sponsor.  FGIC's rights and remedies under the I &I

Agreement are distinct from any rights and remedies that FGIC holds as a third party beneficiary

of the contractual obligations GMACMM and RFC owe to the Trusts.  Moreover, FGIC, as a

financial guaranty insurer is entitled under applicable law to seek rescissory damages in addition

to all other damages allowable by law.

15.    In the I&I Agreement and other Operative Documents incorporated into

the I&I Agreement by reference, GMACM and RFC made numerous representations, warranties,

and affirmative covenants regarding their loan origination, selection, and evaluation process, the

characteristics of the Mortgage Loans, and the accuracy and completeness of the information

supplied to FGIC.  GMACM and RFC also expressly represented and warranted the accuracy of

the mortgage loan characteristics provided to FGIC in an extensive and detailed schedule known

as the "Mortgage Loan Schedule."  FGIC has determined that GMACM and RFC not only

breached numerous transaction-level representations and warranties, but also revealed that a

shockingly high percentage of the Mortgage Loans—contrary to the information disclosed to

-7-

RC_FGIC9019_00001283

FGIC in the Mortgage Loan Schedule and stated in the Offering Documents and Operative

Documents—contained defects constituting breaches of loan-level representations and warranties.

These transaction-level and loan-level breaches of representations and warranties constitute the

Sponsors' first material breach of the I&I Agreement.

        16.      Pursuant to its rights under the I&I Agreement and the provisions of

certain Operative Documents incorporated therein, FGIC demanded that the applicable Sponsor

repurchase the defective Mortgage Loans. Despite an explicit duty to repurchase defective loans,

GMACM and RFC refused to comply with FGIC's demand for the repurchase of numerous such

Mortgage Loans. The Sponsors' failure to repurchase these loans constitutes a second material

breach of the I&I Agreement.

        17.      In addition, GMACM and RFC represented to FGIC in an affirmative

covenant under the I&I Agreements that all Mortgage Loans would be serviced in all material

respects in compliance with the Servicing Agreement entered into between the applicable

Sponsor, the relevant Trust, and the Trustee. The Servicing Agreements require that the servicer

of the loans comply with the normal and usual collection and servicing procedures and otherwise

service the loans in accordance with appropriate procedures. Through an on-site diligence

review of ResCap servicing practices and additional information discovered by FGIC relating to

the servicing of Mortgage Loans, FGIC learned that GMACM and RFC were deficient in

borrower contact, collections, and loss mitigation standards. FGIC also discovered evidence that

ResCap's servicing practices had led to the miscategorization and neglect of certain FGIC-

insured Mortgage Loans. For these reasons, GMACM and RFC committed a third material

breach of the I&I Agreement by failing to act in accordance with the affirmative covenant

regarding their duty to service the Mortgage Loans in accordance with the Servicing Agreement.

-8-

RC_FGIC9019_00001284

18.    The Sponsors committed a fourth breach of the I&I Agreement by denying

FGIC access to certain information to which it was contractually entitled. Pursuant to the I&I

Agreement, the applicable Sponsor agreed to furnish or cause to be furnished to FGIC financial

statements, accountants' reports, and other information. Such other information includes, but is

not limited to, data relating to the Mortgage Loans, the servicing of the Mortgage Loans, and the

Transactions. Notwithstanding FGIC's multiple reasonable requests and subsequent demands

for access to this information, the Sponsors have denied FGIC access in direct breach of the I&I

Agreement.

19.    Further, as concerns a series of RFC-sponsored Transactions—known as

2005-EMX5, 2005-RS9, 2005-NC1, and 2007-EMX1—RFC committed an additional breach of

the I&I Agreement by improperly executing modifications to certain Mortgage Loans in

accordance with the federal Home Affordable Modification Program without FGIC's required

consent. RFC had originally asked FGIC for its consent to amend the relevant Pooling and

Servicing Agreements in order to effectuate the loan modifications. Although FGIC requested

additional documentation to evaluate the proposed modifications and accompanying

amendments, RFC implemented the loan modifications without supplying FGIC with the

requested information or otherwise receiving FGIC's consent.

20.    Also, as concerns two particular GMACM-sponsored Transactions—

known as 2005-HE1 and 2006-HE1—GMACM committed another breach of the I&I Agreement

by improperly transferring thousands of additional mortgage loans into the related Trusts

following the occurrence of a contractually defined amortization event which terminated the

period during which subsequent mortgage loans could permissibly be transferred into the trusts

following the closing of these Transactions. As a result of this breach, FGIC has received claims

-9-

RC_FGIC9019_00001285

caused in part by losses attributable to a substantial number of loans that were added to the related trusts in violation of the Transactions' operative documents, the terms of which were incorporated by reference into the I&I Agreement for FGIC's benefit.

21.    Additionally, as concerns another GMACM-sponsored Transaction—known as 2006-HE3—GMACM committed a further breach of the I&I Agreement by improperly including within the Transaction at least 3,013 more high-risk balloon Mortgage Loans—accounting for at least $160 million in aggregate principal amount—than the offering documents and operative documents represented and warranted the Transaction would contain. The credit risk inherent in a balloon mortgage loan is typically much higher than that of a non-balloon mortgage loan, and the undisclosed balloon Mortgage Loans in the 2006-HE3 Transaction have performed significantly worse than the non-balloon Mortgage Loans in the same Transaction. Consequently, FGIC has received claims caused in part by losses attributable to the substantial number of loans in the 2006-HE3 Transaction that were misrepresented by GMACM as being less risky non-balloon loans.

22.    Pursuant to the I&I Agreement, GMACM and RFC must indemnify FGIC for any and all claims, losses, liabilities, demands, damages, costs or expenses of any nature arising out of or relating to the breach by the applicable Sponsor of any of the representations or warranties contained in the I&I Agreement or arising out of the transactions contemplated by the related Operative Documents. As explained above, GMACM and RFC breached numerous representations, warranties, and covenants in the I&I Agreements and the Operative Documents incorporated by reference therein. These breaches have caused, and will continue to cause, FGIC to pay claims and to incur losses, costs, and expenses.

-10-

RC_FGIC9019_00001286

23.    In addition to an enforcement of the Sponsors' indemnification obligations under the I&I Agreements, FGIC seeks all legal, rescissory, equitable, consequential, and/or punitive damages for the Sponsors' material breaches of the Transactions.

24.    With regard to ResCap, FGIC has alleged that the substantial breaches of contract committed by GMACM and RFC were carried out at the direction of ResCap, which was acting at the direction of Ally Financial—the ultimate parent company of the Debtors.

25.    ResCap is the immediate parent company of and wholly owns both GMACM and RFC. ResCap and its subsidiaries share numerous directors, senior management and employees, and, together with Ally Financial, share significant resources and operations. Indeed, ResCap did not conduct any business operations whatsoever until GMAC Residential Holding Corp. and GMAC-RFC Holding Corp.—two of Ally Financial's wholly-owned subsidiaries—were transferred to it in March 2005. Those two subsidiaries represented substantially all of Ally Financial's mortgage securitization business.

26.    FGIC has asserted that, due to Ally Financial's domination and control over its subsidiaries, including ResCap, GMACM, and RFC, as well as the failure of Ally Financial and its subsidiaries to observe relevant corporate formalities in distinguishing themselves as independent entities, Ally Financial's mortgage operations units are in reality a single enterprise. As such, ResCap is indistinguishable from each of GMACM and RFC, and is thus jointly and severally liable to FGIC under a theory of alter ego liability for the harms FGIC has suffered from the breaches of contract committed by GMACM and RFC.

27.    In addition, due to, among other things, the fully integrated nature of Ally Financial's mortgage operations units, which operate as a single enterprise, each of GMACM and RFC are indistinguishable and were treated as, and are, alter egos of one another. As such,

-11-

RC_FGIC9019_00001287

GMACM and RFC are jointly and severally liable to FGIC for the harms FGIC has suffered as a

result of the breaches of contract committed by each of the Sponsors.

## C.    FRAUDULENT INDUCEMENT

28.    In the relevant Complaints, FGIC has alleged that GMACM or RFC, as

relevant, fraudulently induced FGIC into issuing Policies for the Transactions through knowing

misrepresentations and omissions on which FGIC was intended to rely. To induce FGIC's

participation in the Transactions—which participation was essential to their success—GMACM

and RFC made material representations and warranties to FGIC about the manner in which the

Mortgage Loans were selected and evaluated for inclusion in the Transactions and the credit

characteristics of the Mortgage Loans. Those representations and warranties were materially

false when stated by the applicable Sponsor, which intended for FGIC to rely on the

misrepresentations and omissions in order to obtain needed financial guaranty insurance—and

the accompanying credit enhancement—for the Transactions.

29.    FGIC reasonably relied on the Sponsors' representations and warranties

when deciding to enter into the Transactions. GMACM and RFC represented in the Operative

Documents and the Offering Documents, among other things, that the underwriting standards

relating to the Mortgage Loans generally would conform to the published criteria applicable to

the particular Mortgage Loans to be included in the various Transactions.

30.    FGIC and the relevant Sponsor entered into the I&I Agreements, which

restated for FGIC's benefit the representations and warranties that the Sponsors had offered in

other of the Operative Documents and Offering Documents, and thereby issued Policies for the

Transactions on certain specified terms. In doing so, FGIC agreed to insure payment on the

Securities, which were backed by pools of Mortgage Loans that were, in actuality, materially

RC_FGIC9019_00001288

different (and worse) than the applicable Sponsor had represented  As a result, the credit risk

assumed by FGIC in connection with these Transactions was far greater than it would have been

had the representations and warranties been true, as demonstrated by the overwhelming number

of claims that have been subsequently presented to FGIC.

31.    Had the information provided to FGIC directly and indirectly by GMACM

and RFC been accurate and truthful, FGIC would not have issued the Policies on the agreed

terms, or would have refused to issue the Policies altogether.  As a result of GMACM's and

RFC's materially false statements and omissions in information provided to FGIC and the credit

ratings agencies, FGIC has been damaged and will continue to be damaged.

32.    For the reasons discussed above in paragraphs 24 to 26, and further in

FGIC's Complaints, ResCap is jointly and severally liable to FGIC under a theory of alter ego

liability for the harms FGIC has suffered from the fraudulent inducement committed by

GMACM and RFC.  In addition, because GMACM and RFC were acting at the direction of

ResCap, ResCap may be jointly and severally liable to FGIC for the harms FGIC has suffered

from the fraudulent inducement committed by GMACM and RFC.

33.    Similarly, for the reasons discussed above in paragraph 27, RFC and

GMACM are jointly and severally liable to FGIC for the fraudulent inducement committed by

each of the Sponsors.  Moreover, because, among other things, GMACM and RFC each serviced

loans wrapped by FGIC by originated by the other and in such capacity aided and abetted the

misconduct of the other as originators, GMACM and RFC may be jointly and severally liable to

FGIC under an aiding and abetting theory of liability.

-13-

RC_FGIC9019_00001289

**D.    DAMAGES**

34.    FGIC seeks legal, rescissory, equitable, consequential, and/or punitive damages against the Debtors for GMACM's and RFC's material breaches of the Transactions and their fraudulent inducement of FGIC to enter into the I&I Agreements and issue Policies for the Transactions.

35.    FGIC is entitled to receive rescissory damages in an amount equal to the amount it has been required to pay pursuant to the Policies. Rescissory damages is a more appropriate award than its equitable equivalent, actual rescission. Rescission would be impractical because: (i) the Policies are held by the Trustee for the benefit of the holders of the Securities; (ii) the Policies by their terms are expressly irrevocable (and thus cannot be rescinded) for any reason; and (iii) rescission of the Policies may lead to even greater economic harm to clean-handed parties to the securitizations.

36.    Also, as discussed above, under the I&I Agreements, the Sponsors must indemnify FGIC for any and all claims, losses, liabilities, demands, damages, costs or expenses of any nature arising out of or relating to the breach by the Sponsors of any of the representations or warranties contained in the I&I Agreement or arising out of the transactions contemplated by the related Operative Documents.

37.    Furthermore, pursuant to the Sponsors' express reimbursement obligation under the I&I Agreement, FGIC is also entitled to full reimbursement from the Debtors for any payment made by FGIC under the Policies arising from the applicable Sponsor's failure to substitute, repurchase, or cure a defective mortgage loan, as well as interest accrued on any unreimbursed amount. Further, also pursuant to the Sponsors' express reimbursement obligation, the Debtors must reimburse FGIC for any and all charges, fees, costs and expenses—including

-14-

RC_FGIC9019_00001290

but not limited to attorneys' and accountants' fees and expenses—that FGIC has and will

reasonably pay or incur in connection with the enforcement, defense or preservation of any of its

rights under the Transactions, including defending, monitoring or participating in any litigation

or proceeding, including any insolvency proceeding of any participant in the Transactions.

        38.     Accordingly, FGIC is entitled to receive damages from each of the

Debtors, in an amount not less than $1.85 Billion, for (i) all amounts it has paid pursuant to the

Policies, plus interest[3]; (ii) all claims FGIC has been presented with under the Policies and has

not yet paid, plus interest; (iii) expectation damages for any losses on the Trusts; and (iv)

additional damages, including but not limited to reimbursement of expenses and fees as well as

consequential damages, including any currently unliquidated future expenses or losses.

        39.     As discussed above, ResCap is jointly and severally liable for all such

damages as the alter ego and parent company of GMACM and RFC. Additionally, as described

previously, GMACM and RFC are likewise jointly and severally liable for FGIC's damages.

## E.    RESERVATION OF RIGHTS

        40.     Claimant does not waive, and hereby expressly reserves, all rights and

remedies at law or in equity that it has or may have against the Debtors and/or any other person

or entity, including, but not limited to, any rights and remedies of Claimant arising under or in

connection with the I&I Agreements, any of the Operative Documents, or any other legal or

equitable source. Claimant reserves the right to amend or supplement this Proof of Claim at any

time and in any respect, including, without limitation, as necessary or appropriate to amend,

quantify or correct amounts, to provide additional detail regarding the claims set forth herein or

---

[3] Included in this amount is $46,235,293 that FGIC is seeking on account of accrued prepetition interest on amounts paid out by FGIC under the Policies.

RC_FGIC9019_00001291

the basis therefor, to fix the amount of any contingent or unliquidated claim and/or to assert that

this claim is entitled to be treated as an administrative expense or other priority. Claimant further

reserves the right to file and assert any additional claims or requests for payment of

administrative expense of whatever kind or nature that may be or later become due from the

Debtors under the I&I Agreements or any other agreement or otherwise, including, without

limitation, any secured, priority, administrative expense or general unsecured claims under the

Bankruptcy Code, whether known or unknown, liquidated or unliquidated, choate or inchoate,

disputed or undisputed or contingent or fixed.

       41.    The filing of this Proof of Claim is not and shall not be deemed or

construed as: (a) a waiver or release of Claimant's rights against any person, entity or property,

including the Debtors, that may be liable for all or part of the claims set forth herein; (b) a

consent by Claimant to the jurisdiction of the Bankruptcy Court or any other court with respect

to proceedings, if any, commenced in any case against or otherwise involving Claimant; (c) a

waiver or release of Claimant's right to trial by jury in the Bankruptcy Court or any other court

in any proceeding as to any and all matters so triable herein, whether or not the same be

designated legal or private rights, or in any case, controversy or proceeding related hereto,

notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28

U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States

Constitution; (d) a consent by Claimant to a jury trial in the Bankruptcy Court or any other court

in any proceeding as to any and all matters so triable herein or in any case, controversy or

proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of

Claimant's right to have any and all final orders in any and all non-core matters or proceedings

entered only after de novo review by a United States District Court Judge; (f) a waiver of

RC_FGIC9019_00001292

Claimant's right to move to withdraw the reference with respect to: (1) the subject matter of this Proof of Claim, (2) any objection thereto or (3) any other proceeding which may be commenced in this case relating to this claim or otherwise involving Claimant; (g) an election of remedies; (h) an acknowledgment that Claimant received adequate notice of any bar date fixed in these cases; (i) a waiver of Claimant's right to assert that this or any other claim is entitled to administrative or other priority; or (j) an admission that any valid claims or causes of action exist against Claimant.

42.    Claimant does not waive any right to any security held by or for it or any right to claim specific assets or any right or rights of action that it has or may have against the Debtors or any other person or persons who may be liable for all or any part of this Proof of Claim.

43.    To the extent that Claimant is entitled to assert this Proof of Claim as a setoff or recoupment against any claim or cause of action that the Debtors may assert against Claimant in the future (or against any claim or cause of action that may be asserted on behalf of the Debtors), Claimant hereby preserves its rights with respect to such setoff and recoupment, and any such right of setoff or recoupment shall survive the closing of this bankruptcy case.

44.    The filing of this Proof of Claim in no respect waives, alters or otherwise affects any rights that Claimant may have with regard to any claims created or otherwise arising on or subsequent to the Petition Date. Claimant reserves all rights to argue that any right to payment is a postpetition claim.

-17-

RC_FGIC9019_00001293

E.    NOTICES

45.    Copies of all notices and communications concerning this Proof of Claim

should be sent to:

Financial Guaranty Insurance Company
Attn:  Timothy Travers
125 Park Avenue
New York, NY 10017
Tel:  (212) 312-3000
Email: tim.travers@fgic.com

With a copy to:

Carl E. Black, Esq.
Jones Day
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Tel:  (216) 586-3939
Email: ceblack@jonesday.com

-18-

RC_FGIC9019_00001294

# Exhibit PX-953

B 10 Modified (Official Form 10) (12/11)

Claim #4871  Date Filed: 11/16/2012

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **GMAC Mortgage, LLC, Case No. 12-12032**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Financial Guaranty Insurance Company**

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:
Financial Guaranty Insurance Company
Attn: Timothy Travers
125 Park Avenue
New York, NY 10017
Tel: (212) 312-3000
Email: tim.travers@fgic.com
Telephone number:

Copy to:
Carl Black, Esq.
Jones Day
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Tel: (216) 586-3939
Email: ceblack@jonesday.com
email:

**Court Claim**
**Number:** _____
*(If known)*

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Name and address where payment should be sent (if different from above):

Telephone number:                                    email:

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

1. Amount of Claim as of Date Case Filed: $ **See Attachment**
If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: **See Attachment**
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor:

| 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|
| (See instruction #3a) | (See instruction #3b) |

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:
Value of Property: $_____  Annual Interest Rate _____ % ☐ Fixed ☐ Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $_____                          Basis for perfection: _____

Amount of Secured Claim: $_____        Amount Unsecured: $_____

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #7, and the definition of "redacted".)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED D...
If the documents are not available, please explain: Due to their v... not attached t...

‖‖‖‖‖‖‖‖‖‖‖ 12120321211 16000000000054

9. Signature: (See instruction #9) Check the appropriate box.
☑ I am the creditor.  ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)
I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: Winston Wohr
Title: Managing Director
Company: Financial Guaranty Insurance Company        (Signature)        11/15/12 (Date)
Address and telephone number (if different from notice address above):

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**RECEIVED**
**NOV 1 6 2012**
**KURTZMAN CARSON CONSULTANTS**

**COURT USE ONLY**

Telephone number:                    Email:

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

PX
953

RC_FGIC9019_00001425

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017.6702
TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number: 212.326.3960
llswanson@jonesday.com

JP014179                                November 15, 2012
207061-600005

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**DELIVERY CONFIRMATION REQUESTED**

ResCap Claims Processing Center c/o KCC
2335 Alaska Ave
El Segundo, California  90245

Re:    Proof of Claims in Residential Capital, LLC, *et al.*

To Whom it May Concern:

Please find enclosed one original and one copy each of Financial Guaranty Insurance
Company's three proof of claims against debtors Residential Capital, LLC, Residential Funding
Company, LLC and GMAC Mortgage, LLC.  Please time stamp one copy each and return in the
self-addressed envelope also enclosed.

Very truly yours,

Laura L. Swanson

Enclosure:    3 originals of Proof of Claim
3 copies of Proof of Claim
1 self-addressed envelope

NXLKHOBAHVI  ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI
DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

RC_FGIC9019_00001426

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x

In re:                                                    :     **Chapter 11**

RESIDENTIAL CAPITAL, LLC, et al.,          :     **Case No. 12-12020 (MG)**

                 **Debtors.**          :     **Jointly Administered**

————————————————————————x

## ATTACHMENT TO PROOFS OF CLAIM OF FINANCIAL GUARANTY INSURANCE COMPANY AGAINST (I) RESIDENTIAL CAPITAL, LLC (CASE NO. 12-12020); (II) GMAC MORTGAGE, LLC (CASE NO. 12-12032); AND (III) RESIDENTIAL FUNDING COMPANY, LLC (CASE NO. 12-12019)

1.    This document provides detail in connection with and in support of the Proofs of Claim filed by Financial Guaranty Insurance Company ("Claimant" or "FGIC") against (i) Residential Capital, LLC ("ResCap") (Case No. 12-12020); (ii) GMAC Mortgage LLC ("GMACM") (Case No. 12-12032); and (iii) Residential Funding Company, LLC ("RFC") (Case No. 12-12019) (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned proceeding.

2.    On May 14, 2012 (the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Pursuant to an order entered on November 7, 2012 (Docket No. 2093), the Bankruptcy Court established November 16, 2012 as the date by which parties other than governmental entities must file a proof of claim against the Debtors.

## A.    BACKGROUND

3.    GMACM and RFC originated, acquired, sold and serviced residential mortgage loans (the "Mortgage Loans"). From time to time, GMACM and RFC facilitated the

RC_FGIC9019_00001427

critical aspects of a number of transactions (each a "Transaction" and collectively the

"Transactions"), whereby GMACM and RFC (collectively with respect to such Transactions, the

"Sponsors") arranged for the securitization of the Mortgage Loans and the sale to investors of

either certificates or notes (the "Securities") collateralized by the Mortgage Loans in the form of

residential mortgage-backed securities ("RMBS").

      4.      In addition to acting as Sponsors and sellers of Mortgage Loans within the

Transactions, the Sponsors also acted as mortgage loan servicers for many of the Transactions.

In its role as servicer, each Sponsor was responsible for, among other things, collecting borrower

payments, modifying delinquent mortgage loans and performing other loss mitigation tasks,

preserving the mortgaged property with respect to defaulted mortgage loans, liquidating

defaulted mortgage loans, and performing other servicing duties set forth in the applicable

securitization servicing agreements.

      5.      FGIC, a monoline financial guaranty insurance company, was in the

business of writing financial guaranty insurance policies with respect to asset-backed securities,

including RMBS. FGIC's financial guaranty insurance policies for the Transactions at issue (the

"Policies") guaranteed the payment of principal and interest due on the insured securities. At the

various times FGIC issued the relevant Policies, FGIC's financial strength was rated triple-A by

rating agencies, which enabled securities insured by FGIC to be highly rated as well, and more

highly rated than they otherwise would have been absent the Policies. FGIC's participation in

the Transactions enhanced the ratings and marketability of the Sponsors' RMBS which, in turn,

made the securitizations viable. Consequently, the Sponsors, along with their parent companies

ResCap and Ally Financial ("Ally Financial") and numerous affiliates, were able to strengthen

RC_FGIC9019_00001428

their balance sheets, grow their mortgage origination businesses through such off-balance sheet financing vehicles, and earn substantial fees, including ongoing servicing fees.

6.      With respect to any RMBS covered by the Policies, FGIC—as the financial guaranty insurer—is exposed to any unpaid losses on such securities. FGIC's risk in securitization transactions such as those engineered by the Sponsors is dependent on, among other things, (i) the credit quality of the underlying mortgage loans and (ii) the servicing of such mortgage loans. Within the Transactions, FGIC is obligated to make payments on any RMBS it insured if the cash flow from the underlying Mortgage Loans is insufficient to satisfy in a timely manner the payments due to holders of the Securities, including, for example, if the servicer of the Mortgage Loans is not properly collecting borrower payments or is otherwise not servicing in accordance with industry standards and/or their stated practices. Accordingly, FGIC has a significant economic interest in the proper servicing of the Mortgage Loans and the maximization of collections from borrowers.

7.      Currently, FGIC insures securities in 43 of the Debtors' securitization transactions. FGIC is the largest monoline insurer in terms of exposure to the Debtors by balance of securities issued. Each securitization transaction consists of either a Pooling & Servicing Agreement or Sale and Servicing Agreement (each referred to as a "Servicing Agreement" herein), which anticipates that there be a companion Insurance & Indemnity Agreement ("I&I Agreement"), and a Custodial Agreement. In each case, these agreements were executed and delivered simultaneously as part of the closing of the related securitization transactions. The obligations of the servicers in these agreements are indivisible.

8.      The Servicing Agreements associated with the 43 securitization transactions that FGIC insures were listed in the First Amended and Restated Notice of (I)

-3-

RC_FGIC9019_00001429

Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of

Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts

Related Thereto (Docket No. 1484) (the "Assumption Notice") or were otherwise incorporated

into the Assumption Notice and are part of the sale of the servicing business to the bidder who

prevailed at the auction—Ocwen Financial Corp. As of the date of this filing, neither the

Debtors nor Ocwen Financial Corp. have informed FGIC of their final intentions with respect to

the agreements between the Debtors and FGIC. To the extent that FGIC's servicing claims are

paid as part of the assumption and assignment process, FGIC acknowledges that certain of the

claims asserted herein would be duplicative. As the status of its agreements is still in flux,

however, FGIC is forced to include amounts owing on account of servicing breaches in this

Proof of Claim.

    9.    FGIC has brought twelve civil actions against the Debtors and Ally

Financial, each of which are currently pending in the United States District Court for the

Southern District of New York before the Honorable Paul A. Crotty.[1] Broadly, the claims arise

from the financial guaranty insurance policies issued by FGIC in connection with the Debtors'

RMBS transactions. Against the Debtors, FGIC has alleged, among other things, breach of

contract and, in some instances, fraudulent inducement to enter into the I&I Agreement and issue

the Policies. The Complaints FGIC has filed against the Debtors and the underlying

Transactions are summarized in the following chart:[2]

---

[1] Copies of the complaints that initiated these actions are not attached hereto due to their voluminous nature, but are available upon request.

[2] This chart does not include claims FGIC has brought against Ally Financial or Ally Bank.

-4-

RC_FGIC9019_00001430

| Case No. | Transactions | Major Causes of Action (Defendant) |
|---|---|---|
| **GMACM-Sponsored Transactions** | | |
| 12-cv-00780 | GMACM 2005-HE1 | Breach of Contract (GMACM, ResCap) |
| 11-cv-09729 | GMACM 2006-HE1 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| 12-cv-1658 | GMACM 2006-HE3 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| 12-cv-1818 | GMACM 2006-HE2<br>GMACM 2007-HE2 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| **RFC-Sponsored Transactions** | | |
| 11-cv-9737 | RAMP 2005-RS9 | Breach of Contract (RFC) |
| 11-cv-9736 | RFMSII 2005-HS1<br>RFMSII 2005-HS2 | Breach of Contract (RFC) |
| 12-cv-0338 | RAMP 2005-EFC7 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0339 | RAMP 2005-NC1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0341 | RASC 2005-EMX5 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-1601 | RASC 2007-EMX1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0340 | RFMSII 2006-HSA1<br>RFMSII 2005-HSA1<br>RFMSII 2006-HSA2 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-1860 | RFMSII 2006-HI2<br>RFMSII 2006-HI3<br>RFMSII 2006-HI4<br>RFMSII 2006-HI5<br>RFMSII 2007-HI1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |

10.    As mentioned, FGIC's participation in the Transactions was essential to their viability and enhanced the Sponsors' ability to market the securitizations effectively.  For each Transaction, FGIC and either RFC or GMACM executed an I&I Agreement, pursuant to which FGIC issued the applicable financial guaranty insurance policy to insure payment on the

-5-

RC_FGIC9019_00001431

Securities sold to investors in a particular Transaction. Each I&I Agreement typically was

signed by, among others, FGIC (as the "Insurer" of each Transaction); RFC or GMACM (as the

"Seller" and Servicer and/or Master Servicer for each Transaction); and the respective Trustee

for the Transaction.

11.     Each I&I Agreement provides that FGIC as the Insurer is a third-party

beneficiary of, and shall have all of the rights provided for in, the "Operative Documents." *See,*

*e.g.*, 2006-HE2 Transaction, I&I Agreement § 2.02(k). The definition of "Operative Documents"

depended on whether GMACM or RFC sponsored the Transaction. For GMACM-sponsored

Transactions, "Operative Documents" are defined to typically include: (i) the Securities; (ii) a

Mortgage Loan Purchase Agreement ("MLPA"); (iii) a Servicing Agreement; (iv) an Indenture

between the relevant Trust and Indenture Trustee; and (v) a Custodial Agreement. *See, e.g.*,

2006-HE2 Transaction, I&I Agreements § 1.01. For RFC-sponsored Transactions, "Operative

Documents" are defined to typically include: (i) the Securities; (ii) a Pooling and Servicing

Agreement; and (iii) an Assignment and Assumption Agreement. *See, e.g.*, 2006-HI4

Transaction, I&I Agreement § 1.01.

12.     The Sponsor, together with the "Depositor" of the Mortgage Loans into

the relevant Trust, offered the Securities for sale pursuant to a Prospectus and a Prospectus

Supplement, each of which discussed the relevant Policy and the triple-A initial rating of the

Securities that was made possible by FGIC's issuance of that Policy. The Prospectus and

Prospectus Supplement, together with certain preliminary offering documents, each as further

supplemented by any subsequent amendment or supplement thereto, and any other offering

document that make reference to the Policies, are referred to collectively as the "Offering

Documents."

-6-

RC_FGIC9019_00001432

## B.    BREACH OF CONTRACT

13.    In the Complaints, FGIC has alleged four distinct claims for breach of

contract against the Sponsors. These claims include: (i) breach of both transaction-level and

loan-level representations, warranties, and affirmative covenants; (ii) breach of the applicable

Sponsor's duty to repurchase, cure, or substitute defective Mortgage Loans; (iii) breach of the

applicable Sponsor's duties regarding the servicing of the Mortgage Loans; and (iv) breach of the

applicable Sponsor's duty to provide FGIC with access to information regarding the Mortgage

Loans.

14.    FGIC brings each of these four claims as a breach of the I&I Agreement

between FGIC and the applicable Sponsor. FGIC's rights and remedies under the I &I

Agreement are distinct from any rights and remedies that FGIC holds as a third party beneficiary

of the contractual obligations GMACMM and RFC owe to the Trusts. Moreover, FGIC, as a

financial guaranty insurer is entitled under applicable law to seek rescissory damages in addition

to all other damages allowable by law.

15.    In the I&I Agreement and other Operative Documents incorporated into

the I&I Agreement by reference, GMACM and RFC made numerous representations, warranties,

and affirmative covenants regarding their loan origination, selection, and evaluation process, the

characteristics of the Mortgage Loans, and the accuracy and completeness of the information

supplied to FGIC. GMACM and RFC also expressly represented and warranted the accuracy of

the mortgage loan characteristics provided to FGIC in an extensive and detailed schedule known

as the "Mortgage Loan Schedule." FGIC has determined that GMACM and RFC not only

breached numerous transaction-level representations and warranties, but also revealed that a

shockingly high percentage of the Mortgage Loans—contrary to the information disclosed to

-7-

RC_FGIC9019_00001433

FGIC in the Mortgage Loan Schedule and stated in the Offering Documents and Operative

Documents—contained defects constituting breaches of loan-level representations and warranties.

These transaction-level and loan-level breaches of representations and warranties constitute the

Sponsors' first material breach of the I&I Agreement.

   16.  Pursuant to its rights under the I&I Agreement and the provisions of

certain Operative Documents incorporated therein, FGIC demanded that the applicable Sponsor

repurchase the defective Mortgage Loans. Despite an explicit duty to repurchase defective loans,

GMACM and RFC refused to comply with FGIC's demand for the repurchase of numerous such

Mortgage Loans. The Sponsors' failure to repurchase these loans constitutes a second material

breach of the I&I Agreement.

   17.  In addition, GMACM and RFC represented to FGIC in an affirmative

covenant under the I&I Agreements that all Mortgage Loans would be serviced in all material

respects in compliance with the Servicing Agreement entered into between the applicable

Sponsor, the relevant Trust, and the Trustee. The Servicing Agreements require that the servicer

of the loans comply with the normal and usual collection and servicing procedures and otherwise

service the loans in accordance with appropriate procedures. Through an on-site diligence

review of ResCap servicing practices and additional information discovered by FGIC relating to

the servicing of Mortgage Loans, FGIC learned that GMACM and RFC were deficient in

borrower contact, collections, and loss mitigation standards. FGIC also discovered evidence that

ResCap's servicing practices had led to the miscategorization and neglect of certain FGIC-

insured Mortgage Loans. For these reasons, GMACM and RFC committed a third material

breach of the I&I Agreement by failing to act in accordance with the affirmative covenant

regarding their duty to service the Mortgage Loans in accordance with the Servicing Agreement.

-8-

RC_FGIC9019_00001434

18.    The Sponsors committed a fourth breach of the I&I Agreement by denying

FGIC access to certain information to which it was contractually entitled.  Pursuant to the I&I

Agreement, the applicable Sponsor agreed to furnish or cause to be furnished to FGIC financial

statements, accountants' reports, and other information.  Such other information includes, but is

not limited to, data relating to the Mortgage Loans, the servicing of the Mortgage Loans, and the

Transactions.  Notwithstanding FGIC's multiple reasonable requests and subsequent demands

for access to this information, the Sponsors have denied FGIC access in direct breach of the I&I

Agreement.

19.    Further, as concerns a series of RFC-sponsored Transactions—known as

2005-EMX5, 2005-RS9, 2005-NC1, and 2007-EMX1—RFC committed an additional breach of

the I&I Agreement by improperly executing modifications to certain Mortgage Loans in

accordance with the federal Home Affordable Modification Program without FGIC's required

consent.  RFC had originally asked FGIC for its consent to amend the relevant Pooling and

Servicing Agreements in order to effectuate the loan modifications.  Although FGIC requested

additional documentation to evaluate the proposed modifications and accompanying

amendments, RFC implemented the loan modifications without supplying FGIC with the

requested information or otherwise receiving FGIC's consent.

20.    Also, as concerns two particular GMACM-sponsored Transactions—

known as 2005-HE1 and 2006-HE1—GMACM committed another breach of the I&I Agreement

by improperly transferring thousands of additional mortgage loans into the related Trusts

following the occurrence of a contractually defined amortization event which terminated the

period during which subsequent mortgage loans could permissibly be transferred into the trusts

following the closing of these Transactions.  As a result of this breach, FGIC has received claims

-9-

RC_FGIC9019_00001435

caused in part by losses attributable to a substantial number of loans that were added to the

related trusts in violation of the Transactions' operative documents, the terms of which were

incorporated by reference into the I&I Agreement for FGIC's benefit.

21.    Additionally, as concerns another GMACM-sponsored Transaction—

known as 2006-HE3—GMACM committed a further breach of the I&I Agreement by

improperly including within the Transaction at least 3,013 more high-risk balloon Mortgage

Loans—accounting for at least $160 million in aggregate principal amount—than the offering

documents and operative documents represented and warranted the Transaction would contain.

The credit risk inherent in a balloon mortgage loan is typically much higher than that of a non-

balloon mortgage loan, and the undisclosed balloon Mortgage Loans in the 2006-HE3

Transaction have performed significantly worse than the non-balloon Mortgage Loans in the

same Transaction. Consequently, FGIC has received claims caused in part by losses attributable

to the substantial number of loans in the 2006-HE3 Transaction that were misrepresented by

GMACM as being less risky non-balloon loans.

22.    Pursuant to the I&I Agreement, GMACM and RFC must indemnify FGIC

for any and all claims, losses, liabilities, demands, damages, costs or expenses of any nature

arising out of or relating to the breach by the applicable Sponsor of any of the representations or

warranties contained in the I&I Agreement or arising out of the transactions contemplated by the

related Operative Documents. As explained above, GMACM and RFC breached numerous

representations, warranties, and covenants in the I&I Agreements and the Operative Documents

incorporated by reference therein. These breaches have caused, and will continue to cause,

FGIC to pay claims and to incur losses, costs, and expenses.

-10-

RC_FGIC9019_00001436

23.    In addition to an enforcement of the Sponsors' indemnification obligations under the I&I Agreements, FGIC seeks all legal, rescissory, equitable, consequential, and/or punitive damages for the Sponsors' material breaches of the Transactions.

24.    With regard to ResCap, FGIC has alleged that the substantial breaches of contract committed by GMACM and RFC were carried out at the direction of ResCap, which was acting at the direction of Ally Financial—the ultimate parent company of the Debtors.

25.    ResCap is the immediate parent company of and wholly owns both GMACM and RFC.  ResCap and its subsidiaries share numerous directors, senior management and employees, and, together with Ally Financial, share significant resources and operations. Indeed, ResCap did not conduct any business operations whatsoever until GMAC Residential Holding Corp. and GMAC-RFC Holding Corp.—two of Ally Financial's wholly-owned subsidiaries—were transferred to it in March 2005.  Those two subsidiaries represented substantially all of Ally Financial's mortgage securitization business.

26.    FGIC has asserted that, due to Ally Financial's domination and control over its subsidiaries, including ResCap, GMACM, and RFC, as well as the failure of Ally Financial and its subsidiaries to observe relevant corporate formalities in distinguishing themselves as independent entities, Ally Financial's mortgage operations units are in reality a single enterprise.  As such, ResCap is indistinguishable from each of GMACM and RFC, and is thus jointly and severally liable to FGIC under a theory of alter ego liability for the harms FGIC has suffered from the breaches of contract committed by GMACM and RFC.

27.    In addition, due to, among other things, the fully integrated nature of Ally Financial's mortgage operations units, which operate as a single enterprise, each of GMACM and RFC are indistinguishable and were treated as, and are, alter egos of one another.  As such,

-11-

RC_FGIC9019_00001437

GMACM and RFC are jointly and severally liable to FGIC for the harms FGIC has suffered as a result of the breaches of contract committed by each of the Sponsors.

## C.    FRAUDULENT INDUCEMENT

28.    In the relevant Complaints, FGIC has alleged that GMACM or RFC, as relevant, fraudulently induced FGIC into issuing Policies for the Transactions through knowing misrepresentations and omissions on which FGIC was intended to rely.  To induce FGIC's participation in the Transactions—which participation was essential to their success—GMACM and RFC made material representations and warranties to FGIC about the manner in which the Mortgage Loans were selected and evaluated for inclusion in the Transactions and the credit characteristics of the Mortgage Loans.  Those representations and warranties were materially false when stated by the applicable Sponsor, which intended for FGIC to rely on the misrepresentations and omissions in order to obtain needed financial guaranty insurance—and the accompanying credit enhancement—for the Transactions.

29.    FGIC reasonably relied on the Sponsors' representations and warranties when deciding to enter into the Transactions.  GMACM and RFC represented in the Operative Documents and the Offering Documents, among other things, that the underwriting standards relating to the Mortgage Loans generally would conform to the published criteria applicable to the particular Mortgage Loans to be included in the various Transactions.

30.    FGIC and the relevant Sponsor entered into the I&I Agreements, which restated for FGIC's benefit the representations and warranties that the Sponsors had offered in other of the Operative Documents and Offering Documents, and thereby issued Policies for the Transactions on certain specified terms.  In doing so, FGIC agreed to insure payment on the Securities, which were backed by pools of Mortgage Loans that were, in actuality, materially

-12-

RC_FGIC9019_00001438

different (and worse) than the applicable Sponsor had represented  As a result, the credit risk

assumed by FGIC in connection with these Transactions was far greater than it would have been

had the representations and warranties been true, as demonstrated by the overwhelming number

of claims that have been subsequently presented to FGIC.

        31.    Had the information provided to FGIC directly and indirectly by GMACM

and RFC been accurate and truthful, FGIC would not have issued the Policies on the agreed

terms, or would have refused to issue the Policies altogether.  As a result of GMACM's and

RFC's materially false statements and omissions in information provided to FGIC and the credit

ratings agencies, FGIC has been damaged and will continue to be damaged.

        32.    For the reasons discussed above in paragraphs 24 to 26, and further in

FGIC's Complaints, ResCap is jointly and severally liable to FGIC under a theory of alter ego

liability for the harms FGIC has suffered from the fraudulent inducement committed by

GMACM and RFC.  In addition, because GMACM and RFC were acting at the direction of

ResCap, ResCap may be jointly and severally liable to FGIC for the harms FGIC has suffered

from the fraudulent inducement committed by GMACM and RFC.

        33.    Similarly, for the reasons discussed above in paragraph 27, RFC and

GMACM are jointly and severally liable to FGIC for the fraudulent inducement committed by

each of the Sponsors.  Moreover, because, among other things, GMACM and RFC each serviced

loans wrapped by FGIC by originated by the other and in such capacity aided and abetted the

misconduct of the other as originators, GMACM and RFC may be jointly and severally liable to

FGIC under an aiding and abetting theory of liability.

-13-

RC_FGIC9019_00001439

### D.    DAMAGES

34.    FGIC seeks legal, rescissory, equitable, consequential, and/or punitive damages against the Debtors for GMACM's and RFC's material breaches of the Transactions and their fraudulent inducement of FGIC to enter into the I&I Agreements and issue Policies for the Transactions.

35.    FGIC is entitled to receive rescissory damages in an amount equal to the amount it has been required to pay pursuant to the Policies. Rescissory damages is a more appropriate award than its equitable equivalent, actual rescission. Rescission would be impractical because: (i) the Policies are held by the Trustee for the benefit of the holders of the Securities; (ii) the Policies by their terms are expressly irrevocable (and thus cannot be rescinded) for any reason; and (iii) rescission of the Policies may lead to even greater economic harm to clean-handed parties to the securitizations.

36.    Also, as discussed above, under the I&I Agreements, the Sponsors must indemnify FGIC for any and all claims, losses, liabilities, demands, damages, costs or expenses of any nature arising out of or relating to the breach by the Sponsors of any of the representations or warranties contained in the I&I Agreement or arising out of the transactions contemplated by the related Operative Documents.

37.    Furthermore, pursuant to the Sponsors' express reimbursement obligation under the I&I Agreement, FGIC is also entitled to full reimbursement from the Debtors for any payment made by FGIC under the Policies arising from the applicable Sponsor's failure to substitute, repurchase, or cure a defective mortgage loan, as well as interest accrued on any unreimbursed amount. Further, also pursuant to the Sponsors' express reimbursement obligation, the Debtors must reimburse FGIC for any and all charges, fees, costs and expenses—including

-14-

RC_FGIC9019_00001440

but not limited to attorneys' and accountants' fees and expenses—that FGIC has and will

reasonably pay or incur in connection with the enforcement, defense or preservation of any of its

rights under the Transactions, including defending, monitoring or participating in any litigation

or proceeding, including any insolvency proceeding of any participant in the Transactions.

38.    Accordingly, FGIC is entitled to receive damages from each of the

Debtors, in an amount not less than $1.85 Billion, for (i) all amounts it has paid pursuant to the

Policies, plus interest[3]; (ii) all claims FGIC has been presented with under the Policies and has

not yet paid, plus interest; (iii) expectation damages for any losses on the Trusts; and (iv)

additional damages, including but not limited to reimbursement of expenses and fees as well as

consequential damages, including any currently unliquidated future expenses or losses.

39.    As discussed above, ResCap is jointly and severally liable for all such

damages as the alter ego and parent company of GMACM and RFC. Additionally, as described

previously, GMACM and RFC are likewise jointly and severally liable for FGIC's damages.

## E.    RESERVATION OF RIGHTS

40.    Claimant does not waive, and hereby expressly reserves, all rights and

remedies at law or in equity that it has or may have against the Debtors and/or any other person

or entity, including, but not limited to, any rights and remedies of Claimant arising under or in

connection with the I&I Agreements, any of the Operative Documents, or any other legal or

equitable source. Claimant reserves the right to amend or supplement this Proof of Claim at any

time and in any respect, including, without limitation, as necessary or appropriate to amend,

quantify or correct amounts, to provide additional detail regarding the claims set forth herein or

---

[3] Included in this amount is $46,235,293 that FGIC is seeking on account of accrued prepetition interest on
amounts paid out by FGIC under the Policies.

-15-

RC_FGIC9019_00001441

the basis therefor, to fix the amount of any contingent or unliquidated claim and/or to assert that

this claim is entitled to be treated as an administrative expense or other priority. Claimant further

reserves the right to file and assert any additional claims or requests for payment of

administrative expense of whatever kind or nature that may be or later become due from the

Debtors under the I&I Agreements or any other agreement or otherwise, including, without

limitation, any secured, priority, administrative expense or general unsecured claims under the

Bankruptcy Code, whether known or unknown, liquidated or unliquidated, choate or inchoate,

disputed or undisputed or contingent or fixed.

41.    The filing of this Proof of Claim is not and shall not be deemed or

construed as: (a) a waiver or release of Claimant's rights against any person, entity or property,

including the Debtors, that may be liable for all or part of the claims set forth herein; (b) a

consent by Claimant to the jurisdiction of the Bankruptcy Court or any other court with respect

to proceedings, if any, commenced in any case against or otherwise involving Claimant; (c) a

waiver or release of Claimant's right to trial by jury in the Bankruptcy Court or any other court

in any proceeding as to any and all matters so triable herein, whether or not the same be

designated legal or private rights, or in any case, controversy or proceeding related hereto,

notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28

U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States

Constitution; (d) a consent by Claimant to a jury trial in the Bankruptcy Court or any other court

in any proceeding as to any and all matters so triable herein or in any case, controversy or

proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of

Claimant's right to have any and all final orders in any and all non-core matters or proceedings

entered only after de novo review by a United States District Court Judge; (f) a waiver of

-16-

RC_FGIC9019_00001442

Claimant's right to move to withdraw the reference with respect to: (1) the subject matter of this Proof of Claim, (2) any objection thereto or (3) any other proceeding which may be commenced in this case relating to this claim or otherwise involving Claimant; (g) an election of remedies; (h) an acknowledgment that Claimant received adequate notice of any bar date fixed in these cases; (i) a waiver of Claimant's right to assert that this or any other claim is entitled to administrative or other priority; or (j) an admission that any valid claims or causes of action exist against Claimant.

42.     Claimant does not waive any right to any security held by or for it or any right to claim specific assets or any right or rights of action that it has or may have against the Debtors or any other person or persons who may be liable for all or any part of this Proof of Claim.

43.     To the extent that Claimant is entitled to assert this Proof of Claim as a setoff or recoupment against any claim or cause of action that the Debtors may assert against Claimant in the future (or against any claim or cause of action that may be asserted on behalf of the Debtors), Claimant hereby preserves its rights with respect to such setoff and recoupment, and any such right of setoff or recoupment shall survive the closing of this bankruptcy case.

44.     The filing of this Proof of Claim in no respect waives, alters or otherwise affects any rights that Claimant may have with regard to any claims created or otherwise arising on or subsequent to the Petition Date. Claimant reserves all rights to argue that any right to payment is a postpetition claim.

-17-

RC_FGIC9019_00001443

E.    **NOTICES**

45.    Copies of all notices and communications concerning this Proof of Claim

should be sent to:

Financial Guaranty Insurance Company
Attn:  Timothy Travers
125 Park Avenue
New York, NY 10017
Tel:  (212) 312-3000
Email: tim.travers@fgic.com

With a copy to:

Carl E. Black, Esq.
Jones Day
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Tel:  (216) 586-3939
Email: ceblack@jonesday.com

-18-

RC_FGIC9019_00001444