AMENDED AND RESTATED AGREEMENT FOR THE ALLOCATION
OF UNITED STATES FEDERAL INCOME TAXES

This AMENDED AND RESTATED AGREEMENT made as of November 1, 2009, is by and between GMAC Mortgage Group LLC, a Delaware limited liability company (hereinafter referred to as "Mortgage"), ResCap Investments LLC, a Delaware limited liability company (hereinafter referred to as ("Investments"), and Residential Capital, LLC, a Delaware limited liability company (hereinafter referred to as "ResCap") and supersedes in its entirety that certain Agreement for the Allocation of Income Taxes, dated December 1, 2006, between GMAC LLC and Residential Capital, LLC.

WHEREAS, Ally Financial Inc. (formerly known as GMAC Inc. and hereinafter referred to as "Ally") is the common parent of the Ally Group (as hereinafter defined), an affiliated group of corporations within the meaning of §1504(a) of the Internal Revenue Code of 1986, as amended (hereinafter referred to as the "Code"), which Group includes the Mortgage Group (as hereinafter defined); and

WHEREAS, Mortgage is a domestic eligible entity with a single owner electing to be disregarded as a taxable entity pursuant to Treas. Reg. § 301.7701-3; and

WHEREAS, Mortgage directly owns a ninety-nine percent interest in ResCap; and

WHEREAS, Mortgage indirectly owns the remaining one percent interest in ResCap through its one-hundred percent ownership in Investments; and

WHEREAS, as a result of Mortgage's direct and indirect ownership interests, ResCap is wholly owned by Mortgage and is a domestic eligible entity with a single owner electing to be disregarded as a taxable entity pursuant to Treas. Reg. § 301.7701-3; and

WHEREAS, Mortgage would be the common parent of the Mortgage Group (as hereinafter defined), an affiliated group of corporations within the meaning of § 1504(a) of the Internal Revenue Code of 1986, as amended (hereinafter referred to as the "Code"), if it were to elect to be classified as an association taxable as a corporation pursuant to Treas. Reg. § 301.7701-3; and

WHEREAS, the taxable income, deductions, and other tax attributes of Mortgage, Investments, and ResCap are reflected in the consolidated U.S. Federal income tax returns of Ally; and

WHEREAS, Ally and Mortgage have separately agreed to provide for the allocation of the consolidated Federal income tax liability between Ally and Mortgage, which allocation includes the taxable income, deductions, and other tax attributes of Investments and ResCap; and

WHEREAS, it is the desire and intention of Mortgage, Investments, and ResCap to provide for the allocation of a portion of the Federal income tax liability to ResCap and that the method of allocation shall fairly preserve the economic rights and privileges which would have accrued to ResCap from the filing of separate Federal income tax returns if ResCap was treated as a corporation for U.S. Federal income tax purposes;

1

CONFIDENTIAL
RC00028796

NOW THEREFORE, in consideration of the covenants and agreements hereinafter set forth, Mortgage, Investments, and ResCap agree as follows:

## Section 1 - Definitions

1.01 Application of Code. Unless otherwise indicated, the terms and concepts used in this AGREEMENT shall be given the same definitions and meaning ascribed to them by the Code, as amended from time to time, and by the regulations promulgated thereunder from time to time (hereinafter referred to as the "Regulations"). Any alteration, modification, addition, or other change in the consolidated return provisions of the Code or the Regulations shall automatically be applicable to this AGREEMENT mutatis mutandis. Unless otherwise indicated, all references herein to a particular section of the Code or Regulations shall include any successor provision designated by a different or additional section reference.

1.02 Internal Revenue Service. In the administration of this agreement, where ResCap would have dealt with the Internal Revenue Service (IRS) if ResCap were not included in the Mortgage Group (as hereinafter defined), Mortgage shall stand in place of the IRS for all purposes.

1.03 General Terms. For purposes of this AGREEMENT, the terms set forth below shall have the following meanings:

A. "Ally Group" means Ally and all corporations and limited liability companies that join with Ally in filing a consolidated Federal income tax return for any taxable year with Ally as the common parent of such group.

B. "Mortgage Group" means Mortgage and all corporations and limited liability companies that would be required to join with Mortgage in filing a consolidated Federal income tax return for any taxable year with Mortgage as the common parent of such group if Mortgage were to elect to be a domestic eligible entity electing to be classified as an association taxable as a corporation pursuant to Treas. Reg. § 301.7701-3, and it were not a member of the Ally Group.

C. "ResCap Group" means ResCap and all corporations and limited liability companies that would be required to join with ResCap in filing a consolidated Federal income tax return for any taxable year with ResCap as the common parent of such group if ResCap were to elect to be a domestic eligible entity electing to be classified as an association taxable as a corporation pursuant to Treas. Reg. § 301.7701-3 and if ResCap were not included in the Mortgage Group.

D. "Separate ResCap Group Tax Liability" means the hypothetical consolidated Federal income tax liability of the ResCap Group for any taxable year determined as if the ResCap Group were a separate affiliated group of corporations filing a consolidated Federal income tax return, including any elections and accounting methods available under existing facts that have been or could be made by the ResCap Group pursuant to the Code and Regulations and other administrative promulgations (as determined by ResCap). For the avoidance of doubt, any (a) foreign tax credits, (b) capital losses, (c) net operating losses or

2

confidential

CONFIDENTIAL    RC00028797

(d) similar tax attributes that are generated by the ResCap Group in any taxable period (to the extent not previously utilized pursuant to this sentence in prior periods) shall be taken into account and treated as available and unutilized in determining the Separate ResCap Group Tax Liability for any subsequent periods even if those losses and attributes have been utilized by the Ally Group, the Mortgage Group or their members.

E. This AGREEMENT relates to the allocation of the consolidated Federal income tax liability of the ResCap Group determined under existing facts. Any other agreement between Mortgage and ResCap binding either party to act or to forbear from acting in a manner which would alter either or both of their respective group tax liabilities is beyond the scope of this agreement. Such other agreement must be executed independently between the parties and shall be effective only after review by Mortgage senior management, ResCap senior management, the Ally Tax Staff, and the Ally, Mortgage, and ResCap Legal Staffs.

## Section 2 - Agreement to File Consolidated Returns and Pay Tax

2.01 **Agreement to File.** As long as ResCap is a member of the Mortgage Group, Mortgage and ResCap hereby agree to include ResCap's results of operations in the consolidated Federal income tax returns filed by Ally in the United States, and to execute such documents and take such action as is necessary or appropriate in connection therewith.

2.02 **Elections.** All elections that are available to the Mortgage Group or any of its members under the Code and Regulations relating to the filing of consolidated Federal income tax returns shall be made by Mortgage at its sole discretion in determining the Mortgage Group tax liability.

2.03 **Payment of Tax.** For each taxable year covered by this AGREEMENT, ResCap will pay to Mortgage, or to such other payee as may be required by the Code, in accordance with the terms of section 3 of this Agreement, the Separate ResCap Group Tax Liability as determined under this AGREEMENT.

## Section 3 - Certain Payments Required Under This AGREEMENT

3.01 **Estimated Tax Payments.** No later than ResCap would be required to make payments of estimated tax as a separate taxpayer (as determined in § 6655 of the Code), for any quarter in which ResCap is includable in the Mortgage Group, ResCap shall pay to Mortgage the Separate ResCap Group estimated tax, determined on the basis of the estimated Separate ResCap Group Tax Liability.

3.02 **Payment of Separate Group Tax Liability.** Within forty-five (45) days following the filing of the Ally Group consolidated Federal income tax return for any taxable year during which ResCap is includable in such return, Mortgage shall notify ResCap of the amount of the Separate ResCap Group Tax Liability. Within fifteen (15) days after such notification, ResCap shall pay to Mortgage or Mortgage shall pay to

CONFIDENTIAL                                                                                                    RC00028798

ResCap as the circumstances warrant, the difference between the Separate ResCap Group Tax Liability and the estimated tax payments previously made by ResCap.

3.03 **Method of Payment.** Unless otherwise mutually agreed by the parties hereto, all payments required by this AGREEMENT shall be made by wire transfer to the appropriate bank account as may from time to time be designated by the parties for such purposes, provided that on the date of such wire transfer notice of the transfer is given to the recipient thereof in accordance with Section 5.06 of this AGREEMENT.

3.04 **Interest.** If any payment required by this AGREEMENT is not timely paid, interest shall accrue on the unpaid amount at the rate provided by § 6621 of the Code with respect to deficiencies or refunds under the Code. For this purpose, a payment will be deemed to be timely paid only if actually received by the payee on or before the due date thereof. In addition, interest shall also accrue at the rate specified in this section on the excess, if any, of the estimated tax payments previously paid by the ResCap Group over the Separate ResCap Group Tax, from the earlier of (1) two business days after Mortgage receives a refund of such overpayment and (2) the date on which the ResCap Group would have been entitled to interest under the Code if it had filed as a separate consolidated group, until the actual date of payment of such amount by Mortgage to ResCap.

## Section 4 - Recomputations and Adjustments

4.01 **IRS Adjustments of ResCap Group Tax Liability.** If any item of income, loss, expense, or credit that enters into the computation of the ResCap Group Tax Liability is changed or adjusted by the IRS and such change or adjustment is part of a final determination, as that term is defined in § 1313(a) of the Code, then the parties hereto shall make such payments to each other (which payments shall include interest computed under Section 3.04 of this AGREEMENT), as may be necessary and appropriate to reflect such adjustment and the intent of this AGREEMENT.

4.02 **Other Recomputations.** If there is any change of or adjustment to any item relating to the computation of payments under this AGREEMENT of a type not provided for in Section 4.01 above (such as a recomputation of amounts due hereunder to reflect a carryback of an item of loss or credit, or a correction of any erroneous calculation previously made hereunder), then the parties thereto shall make such payments to each other in such manner and at such time as may be necessary and appropriate to reflect the intent of this AGREEMENT.

4.03 **Settlement Dates.** All payments required by Section 4 of this AGREEMENT shall be made by the due date of the additional liability to the IRS, or in the case of a mutually agreed change or adjustment by the parties hereto, within fifteen (15) days of the date of the agreed change or adjustment; provided, however, that where a refund is due to Ally from the Internal Revenue Service, Ally shall pay to Mortgage and Mortgage shall pay to the ResCap Group its portion of the payment as soon as practicable upon receipt of such payment by Ally, but in no event more than fifteen (15) business days after receipt of such payment from the Internal Revenue Service. All such payments shall be made in the manner provided in Section 3.03 of this AGREEMENT.

confidential

CONFIDENTIAL                                                                                   RC00028799

## Section 5 - Miscellaneous Provisions

5.01 **Additional Members.** The parties hereto specifically recognize that from time to time other corporations may become members of the Mortgage Group during the term of this AGREEMENT, and they hereby agree to use their best efforts to cause such corporations to be bound by all of the terms and conditions hereof.

5.02 **Other Jurisdictional Taxes.** It is the intent of the parties hereto that the concepts and methods defined herein for allocation of United States Federal income taxes be applied in a similar manner to tax liability assessed by state, local, or foreign taxing jurisdictions where there is combined tax liability between Mortgage and the ResCap Group (or any subset of members of the ResCap Group).

5.03 **Successors and Assigns.** This AGREEMENT shall bind and inure to the respective successors and assigns of the parties hereto, but no assignment shall relieve any party's obligations hereunder without the written consent of the other party.

5.04 **Entire Understanding.** This AGREEMENT supersedes any earlier agreement for the allocation of income taxes between the parties. This AGREEMENT contains the entire understanding of the parties hereto with respect to the subject matter contained herein. This AGREEMENT may not be amended without the written consent of each of the parties hereto. The parties recognize and acknowledge their intention to enter into additional agreements from time to time with respect to the allocation of taxes not covered by this AGREEMENT.

5.05 **Conflict of Law.** The validity, interpretation, and performance of this AGREEMENT shall be controlled and construed under the laws of the State of Michigan.

5.06 **Notices.** Every notice, request, statement, or bill provided for in this AGREEMENT shall be in writing directed to the party to whom given, made, or delivered to such party at the following address (or at such other address as such party shall from time to time designate as the address for such purpose):

| To GMAC Mortgage Group LLC: | To Residential Capital, LLC: |
|---|---|
| Vice President | Chief Financial Officer |
| GMAC Mortgage Group LLC | Residential Capital, LLC |
| c/o Ally Tax Staff | c/o Ally Tax Staff |
| 200 Renaissance Center | 200 Renaissance Center |
| MC 482-B15-B34 | MC 482-B15-B34 |
| Detroit, MI 48265 | Detroit, MI 48265 |

5.07 **Counterparts.** This AGREEMENT may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

5.08 **Effective Date.** This AGREEMENT shall be effective as of November 1, 2009, and shall continue in effect until ResCap is no longer included in the consolidated Federal income tax return of the Ally Group, in which case the AGREEMENT shall nevertheless continue to apply to all years and that part of a year ending prior to the date of termination.

5

CONFIDENTIAL    RC00028800

5.09 <u>Disagreements.</u> In the event of any disagreement between Mortgage and ResCap with respect to the application or interpretation of the AGREEMENT or to the computation of any tax liability hereunder, a determination of such application, interpretation, or computation shall be made by the Chief Tax Officer of Ally.

IN WITNESS WHEREOF, the parties hereto have executed this AGREEMENT on the dates indicated below, to have effect from and as of the day and year first indicated above.

GMAC Mortgage Group LLC

By: *[signature]*

Cathy L. Quenneville

Secretary

Date: 1/26/11

Residential Capital, LLC

By: *[signature]*

James Young

Chief Financial Officer

Date: 1/24/2011

ResCap Investments LLC

By: *[signature]*

William J. Marx

Vice President

Date: 1/25/2011

Ally Financial Inc.

By: *[signature]*

David DeBrunner

Vice President and Chief Accounting Officer

Date: 1/24/11

6

CONFIDENTIAL                                                                                                                                RC00028801