MINUTES of a Special Meeting of the Board of Residential Capital, LLC ("ResCap" or the "Company"), held by teleconference on December 22, 2010, at 9:00 a.m. (Eastern).

PRESENT:    Steven M. Abreu
            Thomas F. Marano
            Edward F. Smith, III
            Pamela E. West
            James N. Young

who are all the members of the Board.

Invited guests in attendance were Tammy Hamzehpour (for a portion of the meeting), Gerald A. Lombardo (for a portion of the meeting), Cathy L. Quenneville, and Joseph B. Ruhlin (for a portion of the meeting).

The Chairman, Mr. Marano, presided and the Secretary, Ms. Quenneville, recorded.

### Liquidity Update and Approval of LOC Swingline Facility

Mr. Lombardo presented written presentation materials that had been previously distributed to the members of the Board that provided the liquidity overview and update. Mr. Lombardo discussed forecast projections and cash needs through mid-May 2011. He reported that the accelerated liquidity need is primarily due to the removal of domestic loan sales for the remainder of 2010; net hedge, swap, pair-off, and Citibank mortgage servicing rights ("MSR") outflows from September 1 through December 20, 2010; and the addition of the $425 million Fannie Mae settlement in December 2010, offset by the release of a $300 million cash collateral deposit and a credit for a prior payment of $50 million. Mr. Lombardo discussed forecasted cash outflows from December 2010 through the first half of 2011, as described in the presentation materials.

Mr. Lombardo then presented a detailed review of items not included in the forecast and the potential impact in December 2010, January 2011, and February 2011 of these items on ResCap's cash position. Considerable discussion was given to the information presented. Mr. Lombardo and Mr. Young responded to a variety of related questions asked by the members of the Board throughout the discussion.

Mr. Lomardo directed the Board's attention to a chart that displayed year-to-date through December 16, 2010, sources and uses data. Mr. Lombardo pointed out and discussed noteworthy entries and total cash generated from each line item reported. Mr. Lombardo discussed the sources of liquidity used to fund bond principal and interest payments due in the reporting period.

1

CONFIDENTIAL
RC40018857

Mr. Lombardo reviewed and discussed ResCap hedge-swap activity year-to-date 2010, and performance of the hedge at December 16, 2010. Mr. Lombardo commented on the impact of interest rate movement on net hedge activity.

The Board reviewed and discussed a proposal for approval of additional financing from Ally Financial Inc. Using presentation materials that had been previously distributed to the members of the Board, Mr. Young commented on the key terms and structure of the proposed LOC Swingline Facility. In the discussion that took place, Ms. West and Mr. Smith reported that the terms of the facility have been reviewed and discussed with Goldin Associates, independent financial consultants, and that a fairness opinion in respect of the facility will be issued by Goldin Associates.

After the conclusion of the discussion, upon motion made, seconded and carried, the following preambles and resolutions were unanimously adopted by the Board:

WHEREAS, the Company has previously entered into that certain Amended and Restated Loan Agreement, dated as of December 30, 2009 (as amended or supplemented from time to time, the "Loan Agreement"), by and among GMAC Mortgage, LLC, a Delaware limited liability company ("GMAC Mortgage"), Residential Funding Company, LLC, a Delaware limited liability company ("RFC" and, together with GMAC Mortgage, each a "Borrower" and collectively, the "Borrowers"), Residential Capital, LLC, a Delaware limited liability company ("ResCap"), and the various other parties signatory thereto as Guarantors (together with ResCap, each a "Guarantor" and collectively, the "Guarantors"), Ally Financial Inc. (f/k/a GMAC Inc.), a Delaware corporation ("Ally Financial"), as the initial lender (in such capacity, the "Initial Lender"), the financial institutions and other Persons that are or may from time to time become parties thereto as Lenders (together with the Initial Lender and their respective successors and assigns, each a "Lender" and collectively, the "Lenders"), and Ally Financial, as agent for the Lenders (in such capacity, together with its successors and assigns in such capacity, the "Lender Agent");

WHEREAS, the Board previously adopted resolutions authorizing and approving, among other things, the amendment of the Loan Agreement and the execution, delivery and performance thereof with any such amendments as have been approved by any Authorized Person (as defined in the relevant resolutions);

WHEREAS, the Board desires to ratify and approve the execution and delivery by it and certain of its subsidiaries of certain amendments to the Loan Agreement (such amendments collectively, the "Amendment Documents"), which amendment documents provide, among other things and subject to the terms and conditions set forth therein, that (i) during the remaining term of the Loan Agreement, the Lenders may make, and GMAC Mortgage may borrow, unsecured loans ("Swingline Loans") from the Lenders in an amount of up to $500 million, (ii) the interest rate on the Swingline Loans will be LIBOR plus 600 basis points, subject to increase following maturity, (iii) the Swingline Loans will be in addition to the other loans, in an amount of up to $1.1 billion, which may be borrowed by the Borrowers under the existing terms of the Loan Agreement, and (iv)

2

CONFIDENTIAL                                                                                                          RC40018858

the Swingline Loans will be guaranteed by the Guarantors other than RFC, its Subsidiaries and GMAC-RFC Holding Co.; and

WHEREAS, after review and due consideration, the Board has determined that it is advisable and in the best interests of the Company, the Borrowers and the other Guarantors to enter into and perform their obligations under the Amendment Documents and, as amended by the Amendment Documents, the Loan Agreement.

NOW THEREFORE, it is hereby

THE TRANSACTION

RESOLVED, that to the extent the Company is a party thereto, the Company is authorized to enter into, execute, deliver and perform the following agreements in such form as any of the Chief Executive Officer, President, Chief Financial Officer, Treasury Executive, Treasurer, any Assistant Treasurer, any Vice President, Secretary or any Assistant Secretary of the Company (the "Authorized Persons") shall approve, such approval to be conclusively evidenced by such Authorized Person's execution and delivery thereof:

1) the Amendment Documents; and

2) all promissory notes, guaranty agreements, other pledge agreements, security agreements, control agreements, deeds of trust, mortgages, assignments, financing statements, hedging agreements and other agreements, certificates, instruments and documents as may be contemplated by or required in connection with the transaction contemplated by the Amendment Documents and/or the transactions contemplated by the Loan Agreement (together with the Amendment Documents, the "Transaction Documents");

and it is further

RESOLVED, that the Company hereby consents to borrowing of Swingline Loans by GMAC Mortgage, the guaranty thereof by the relevant Guarantors and the execution, delivery and performance of the Transaction Documents by each of the Company's subsidiaries party thereto in such form as such subsidiary's authorized persons (as identified in such entity's relevant resolutions) (the "Applicable Transaction Authorized Persons") shall approve, such approval to be conclusively evidenced by such Applicable Transaction Authorized Person's execution and delivery thereof; and it is further

RESOLVED, that the Transaction Documents are being entered into on terms that are not materially less favorable to the Company and/or its subsidiaries party thereto than those that could reasonably have been obtained in a comparable arm's length transaction by such parties with an unaffiliated party; and it is further

RESOLVED, that the Authorized Persons, or any of them, be and each of them hereby is, authorized, empowered and directed, to do or cause to be done all such acts or things and to sign and deliver, or cause to be signed and delivered, the Transaction

3

CONFIDENTIAL

Documents and all such documents, instruments, agreements and certificates, in the name and on behalf of the Company or otherwise, as such persons may deem necessary, advisable or appropriate to effectuate or carry out the purposes and intent of the foregoing resolutions and to perform the obligations of the Company under the Transaction Documents; and it is further

RESOLVED, that the Authorized Persons, or any of them, are hereby authorized to perform or make any amendments, restatements, modifications and supplements in the Transaction Documents, or consent to any amendments, restatements, modifications and supplements in the Transaction Documents to which it is a party, on the behalf of the Company, as from time to time may be agreed upon by any Authorized Person, and each Authorized Person is each hereby authorized on behalf of the Company, and in the name of the Company, to execute, deliver and perform the Transaction Documents with such modifications, changes, deletions, supplements or amendments as have been approved by any Authorized Person, each with such additional changes thereto as any Authorized Person executing the same shall in his own discretion approve, such approval to be conclusively evidenced by such Authorized Person's execution and delivery thereof; and it is further

## GENERAL AUTHORIZING RESOLUTIONS

RESOLVED, that the Authorized Persons, or any of them, be, and each of them hereby is, authorized, in the name and on behalf of the Company, to prepare, execute, deliver and file such certificates, documents, financing statements, instruments or other papers and to do or cause to be done all such acts and things (including the payment of all necessary expenses and the retention of the services of attorneys, accountants, printers and others) as the Authorized Persons, or any of them, may deem necessary or appropriate to effect fully the intent and purposes of any and all of these resolutions; and it is further

RESOLVED, that any and all action heretofore or hereafter taken by the Authorized Persons, or any of them, within the terms of the foregoing resolutions, be and hereby is, ratified and confirmed as the act and deed of the Company.

The Board thanked Messrs. Lombardo and Ruhlin for their participation and they then left the meeting.

### 2011 Financial Plan

Mr. Young presented a series of charts that had been previously distributed to the members of the Board that comprised the overview of the preliminary 2011-2013 Business Plan. Mr. Young reported that the 2011 Business Plan reflects $323 million of pre-tax income and that core origination and servicing business drives $156 million of pre-tax income. He said that 2011 strategic initiatives include reinvesting in the origination and servicing business including reinvestment in the platform to build origination capability, to support further expansion into new channels to replace lost refinance volume, and to drive further efficiencies.

CONFIDENTIAL
RC40018860

Mr. Young presented the 2011 consolidating balance sheet. The Board engaged in discussion with the members of management in attendance at the meeting with respect to the matters covered in the preliminary Business Plan. During the discussion that ensued, Mr. Abreu responded to questions regarding outsource activity and matters related thereto. Following discussion, it was agreed that a detailed presentation on quality control of outsourced companies will be made at an upcoming Board meeting. The Board reviewed and discussed the key elements of the origination and servicing business strategy, such as growth and investment, productivity, and risk management.

In the discussion of the Business Plan, Mr. Young reported on, among other things, Business Plan financial highlights; the mortgage market, key market metrics, and ResCap's competitive positioning; assumptions included in the Business Plan; consolidated income statements and consolidated balance sheets for 2010 through 2013; and risks and opportunities to the Business Plan. Mr. Young responded to questions regarding net financing revenue projections, gross margin projections, and expenses.

Throughout the presentation, the Board asked questions of the members of management in attendance at the meeting regarding various aspects of the 2011-2013 Business Plan and matters related thereto.

### *FNMA Settlement Update*

Mr. Marano reported to the Board on the terms and structure of the repurchase settlement agreed to with Fannie Mae. Discussion took place during which Mr. Marano responded to questions asked by the members of the Board. After the conclusion of the discussion and having considered the information presented at this meeting and at prior Board meetings, upon motion made, seconded and carried, it was unanimously

RESOLVED, that the directors hereby authorize, approve and ratify the transactions described at this meeting and at prior Board meetings regarding the repurchase settlement with Fannie Mae, and they are hereby authorized and approved, and any of the President, Chief Financial Officer or General Counsel (or delegated outside counsel) of the Company or of Residential Funding Company, LLC (the "Authorized Officers") are authorized and directed to execute such transactions on behalf of the Company and its subsidiaries as he or she may authorize or approve as necessary or desirable, such approval or authorization to be conclusively evidenced by the signature of the Authorized Officer on such document; and it was further

RESOLVED, that any and all action heretofore or hereafter taken by the Authorized Officers in accordance with the preceding resolution is hereby approved, ratified and confirmed as the act and deed of the Company or its relevant subsidiaries; and it was further

RESOLVED, that any officer of the Company is, and they are hereby are, authorized and directed to do and perform, or cause to be done or performed, all such

CONFIDENTIAL
RC40018861

acts, deeds and things and to make, execute or deliver, or cause to be made, executed and delivered, all such agreements, undertakings, documents, instruments or certificates in the name and on behalf of the Company or otherwise as such officer may deem necessary or appropriate to effectuate or carry out fully the purpose and intent of the foregoing resolutions.

At this time, Ms. Hamzehpour joined the meeting.

### Tax Allocation Agreement

Mr. Young referred to previous discussions with the Board regarding the proposed tax allocation agreement among Ally Financial and ResCap and certain of its subsidiaries. Full discussion took place. After the conclusion of such discussion, it was agreed that the tax allocation agreement will be reviewed with counsel to the Independent Directors to ensure that the agreement as structured is not unfair to ResCap. Following discussion, upon motion made, seconded and carried, it was unanimously

RESOLVED, that this Board approves the tax allocation agreement among Ally Financial Inc., Residential Capital, LLC and certain of Residential Capital, LLC's subsidiaries substantially as discussed at its December 22, 2010 meeting and at prior Board meetings, subject to inclusion in the tax allocation agreement of edits provided by counsel to the Independent Directors of the Residential Capital, LLC Board; and it was further

RESOLVED, that the proper officers of Residential Capital, LLC are fully authorized to take any and all necessary and/or appropriate action to implement the foregoing resolution and the transactions contemplated thereby.

### Subservicing Agreement

Mr. Marano referred to discussions of the Board held at prior Board meetings regarding the Subservicing Agreement between GMAC Mortgage, LLC and Ally Bank. The Board most recently discussed the Subservicing Agreement at its meeting on December 7, 2010. Mr. Marano and Ms. Hamzehpour recapped the terms of the liability provision of the agreement and, after conclusion of the discussion that ensued, upon motion made, seconded and carried, it was unanimously

RESOLVED, that this Board approves the Subservicing Agreement by and between GMAC Mortgage, LLC and Ally Bank substantially in the form discussed at its meeting on December 22, 2010; and it was further

RESOLVED, that the proper officers of Residential Capital, LLC are fully authorized to take any and all necessary and/or appropriate action to implement the foregoing resolution and the transactions contemplated thereby.

CONFIDENTIAL                                                                                                  RC40018862

*Master Servicing Agreements*

Mr. Young and Ms. Hamzehpour discussed the proposed inclusion of the compliance addendum to the Subservicing Agreement, which had been reviewed with the Board at its meeting on October 5, 2010, to the Master Servicing Agreements in place between Ally Bank and ResCap. After the conclusion of the discussion that took place, upon motion made, seconded and carried, it was unanimously

RESOLVED, that this Board approves inclusion of the Compliance Addendum attached to the Subservicing Agreement by and between GMAC Mortgage, LLC and Ally Bank, to existing Master Servicing Agreements in place between Ally Bank and Residential Capital, LLC and any of Residential Capital, LLC's subsidiaries.

Mr. Young informed the Board that a new Administrative Services Agreement between ResCap and Ally Bank is being drafted and will be brought to the Board for review and approval at an upcoming meeting. Mr. Young briefly discussed key considerations relating to the Administrative Services Agreement.

*Non-Employee Director Compensation*

Discussion of non-employee director compensation was deferred to an upcoming meeting of the Board.

## ADJOURNMENT

There being no further business to come before the Board, the meeting was adjourned at 11:00 a.m. The charts presented at this meeting are on file with the Secretary.

DATED December 22, 2010.

*[signature]*
Secretary

CONFIDENTIAL

RC40018863