# Exhibit 1

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**BPL FOR FINANCIAL INSTITUTIONS**[SM]

**Chubb Group of Insurance Companies**
15 Mountain View Road,
Warren, New Jersey 07059

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**

A stock insurance company, incorporated under the laws of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

Policy Number: 82077768

**NOTICE: THIS IS A CLAIMS MADE POLICY, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR AN APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION AMOUNT. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR ANY OTHER "LOSS" IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY. READ THE ENTIRE POLICY CAREFULLY.**

ITEM 1.   **Parent Organization** (Name and Address):

GMAC LLC

200 RENAISSANCE CENTER
DETROIT, MI 48265

ITEM 2.   Limits of Liability (inclusive of **Defense Costs**):

(A)   Each **Loss** Limit of Liability:              $    15,000,000

(B)   Aggregate Limit of Liability for the **Policy Period**: $    15,000,000

ITEM 3.   Coinsurance Percentage:       0%

ITEM 4.   Retention Amount each **Loss**:              $    25,000,000

ITEM 5.   **Policy Period**:

(A)   Inception Date:       December 31, 2007

(B)   Expiration Date:      December 31, 2008

at 12:01 a.m. both dates at the Address in ITEM 1.

ITEM 6.   Extended Reporting Period:

(A)   Additional Period:      1 year

(B)   Additional Premium:     150.00% of Annualized Premium for the expiring **Policy Period**

ITEM 7.   Pending or Prior Date:       December 31, 2006

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

ITEM 8.    Endorsement(s) Effective at Inception:

    (A)    Lender Liability Coverage Endorsement which includes the deletion of
        Exclusion o.                     Attached   X YES     NO

    (B)    Other Endorsements:

        Endorsements 1 - 16

These Declarations, the completed signed Application and this Policy with Endorsements shall constitute
the contract between the Insured and the Company.

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized
officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

*W. Andrew Macon*
Secretary

*Thomas F. Motamed*
President

January 14, 2008
Date

*Robert Hamburger*
Authorized Representative

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

# BPL FOR FINANCIAL INSTITUTIONS<sup>SM</sup>

In consideration of payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the Company and the **Insured** agree as follows:

## 1.    INSURING CLAUSE

The Company shall pay, on behalf of an **Insured**, **Loss** on account of any **Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed by an **Insured** or any person for whose acts the **Insured** is legally liable while performing **Professional Services**, including failure to perform **Professional Services**.

## 2.    DEFINITIONS

**Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insured** to the Company for this Policy or for any policy of which this Policy is a direct or indirect renewal or replacement.

**Application** shall also include all of the following documents whether or not submitted with or attached to any such signed application:

a.    the Annual Report (including financial statements) last issued to shareholders before this Policy's inception date;

b.    the report last filed with the Securities and Exchange Commission on Form 10-K before this Policy's inception date; and

c.    the report last filed with the Securities and Exchange Commission on Form 10-Q before this Policy's inception date.

All such applications, attachments, materials and other documents are deemed attached to, incorporated into and made a part of this Policy.

**Biological Agents** means:

a.    bacteria; mildew, mold, or other fungi; other microorganisms; or any mycotoxins, spores, or other by-products of any of the foregoing;

b.    viruses or other pathogens (whether or not a microorganism); or

c.    colony or group of any of the foregoing.

**Claim** means:

a.    a written demand for monetary damages;

b.    a civil proceeding commenced by the service of a complaint or similar pleading; or

c.    an arbitration proceeding commenced by the submission of a statement of claim or similar document,

brought by or on behalf of a **Customer** against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

d.    a criminal proceeding commenced by the service of an indictment, against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

Except as may otherwise be provided in Section 6, Section 7 or Subsection 8b of this Policy, a **Claim** shall be deemed to have first been made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand for monetary damages, when such demand is first received by an **Insured**).

**Customer** means any person or entity that:

a.    has or had a written agreement with the **Organization**;

b.    submitted a written application to the **Organization**; or

c.    is a named beneficiary of any account held by the **Organization's** Trust Department and who is entitled

to receive **Professional Services** permitted by law or regulation.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

**Financial Impairment** means the status of an **Organization** resulting from:

a.    the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

b.    such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Insured** means the **Organization** and any **Insured Person**.

**Insured Person** means any natural person who was, now is or shall become:

a.    a full-time, part-time, temporary, leased or seasonal employee or volunteer of the **Organization** but only while acting in his or her capacity as such;

b.    a duly elected director or a duly elected or appointed officer of any **Organization** but only while acting in his or her capacity as such; or

c.    with respect to any **Organization** formed outside the United States of America, any equivalent executive position described in item b, under applicable law in any country other than the United States of America, but only while acting in his or her capacity as such.

**Loan Servicing** means the servicing of any loan, lease or extension of credit (whether consumer, commercial, mortgage banking or otherwise, but not including financing for investment banking, or leveraged or management buyouts). **Loan Servicing** includes the following servicing activities: record keeping, billing and disbursements of principal or interest, receipt or payment of insurance premiums and taxes, credit reporting or statements of creditworthiness, determination of the depreciation amount of property (but not projections of or an appraisal for residual or future value of property) or any similar administrative activity.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

## BPL FOR FINANCIAL INSTITUTIONS<sup>SM</sup>

**Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insured**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**. **Loss** does not include:

a.   any amount not indemnified by the **Organization** for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

b.   any costs incurred by an **Insured** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

c.   any amount incurred by an **Insured** in the defense or investigation of any action, proceeding, investigation or demand that is not then a covered **Claim** even if:

(1)   such amount also benefits the defense of a covered **Claim**; or

(2)   such action, proceeding, investigation or demand subsequently gives rise to a covered **Claim**;

d.   taxes, fines or penalties, or the multiple portion of any multiplied damage award, except as provided above with respect to punitive or exemplary damages;

e.   any amount not insurable under the law pursuant to which this Policy is construed;

f.   any amount allocated to noncovered loss pursuant to Section 10;

g.   regular or overtime wages, salaries or fees of **Insured Persons**;

h.   diminution in value or damages resulting from the diminution in value of money, securities, property or any other item of value unless caused by a **Wrongful Act** of an **Insured** in the execution or implementation of investment advice or investment decisions;

i.   loss of the actual money, securities, property or other items of value in the custody or control of an **Insured**;

j.   amounts otherwise reimbursable to an **Insured** by any trust, estate, plan or fund or any similar entity or the sponsor of any such trust, estate plan or fund or any similar entity; or

k.   principal, interest or other monies whether paid, accrued or due as the result of any loan, lease or extension of credit;

l.   any amount which constitutes disgorgement, including restitution.

**Organization** means the **Parent Organization** and any **Subsidiary** including any such organization in its capacity as a debtor in possession under the United States bankruptcy law or in an equivalent status under the law of any other country.

**Parent Organization** means the entity that is named in ITEM 1 of the Declarations as legally constituted at the inception date of this Policy.

**Policy Period** means the period of time specified in ITEM 5 of the Declarations, subject to prior termination in accordance with Section 22. If this period is less than or greater than one year, then the limits of liability specified in the Declarations shall be the Company's maximum limit of liability for the entire **Policy Period**.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**Pollutants** means:

a.  any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof, including, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials; or

b.  any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products or any noise.

**Professional Services** means those services, including **Loan Servicing**, performed or required to be performed by an **Insured** for or on behalf of a **Customer**:

a.  for a fee, commission or other monetary consideration;

b.  where a fee, commission or other monetary consideration would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**; or

c.  for other remuneration which inures to the benefit of such **Insured**.

**Related Claims** means all **Claims** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Subsidiary** means any organization, at or prior to the inception date of this Policy, in which more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of directors of such organization are owned, directly or indirectly, in any combination, by one or more **Organizations**.

**Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, before or during the **Policy Period** by any **Insured** or any person for whose acts the **Insured** is legally liable.

---

3.  **EXCLUSIONS**

The Company shall not be liable for **Loss** on account of any **Claim**:

a.  based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the Inception Date set forth in ITEM 5 of the Declarations, was the subject of any notice given under any policy of which this Policy is a direct or indirect renewal or replacement;

b.  based upon, arising from, or in consequence of any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the Pending or Prior Date set forth in ITEM 7 of the Declarations, or the same or substantially the same fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged therein;

c.  brought or maintained by or on behalf of any **Insured** in any capacity; or by or on behalf of, or at the behest of any business enterprise which is operated, managed or owned directly or indirectly, in whole or in part by an **Insured**; provided that this Exclusion 3c shall not apply:

   (1)  where the claimant is an **Insured Person** and was provided with or entitled to be provided with **Professional Services** and is bringing such **Claim** solely in the capacity as a **Customer**, where the **Claim** is brought without the solicitation, assistance or participation of any other **Insured**; or

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**BPL FOR FINANCIAL INSTITUTIONS**<sup>SM</sup>

      (2)    to a **Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this Policy;

d.    based upon, arising from, or in consequence of:

      (1)    any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

      (2)    any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request;

e.    based upon, arising from, or in consequence of:

      (1)    the actual, alleged, or threatened discharge, release, escape, dispersal or disposal of **Biological Agents** into or on real or personal property, buildings, water, land or atmosphere; or

      (2)    any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Biological Agents**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request;

f.    for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person;

g.    based upon, arising from or in consequence of damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed;

h.    based upon, arising from or in consequence of any actual or alleged violation of the responsibilities, obligations or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974, or any amendments thereto, or any rules or regulations promulgated thereunder, or any amendments to or rules or regulations promulgated pursuant to these laws, or similar provisions of any federal, state, or local statutory law or common law  as respects any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of the **Organization**;

i.    for any **Wrongful Act** of an **Insured Person** in his or her capacity as a director, officer, manager, trustee, regent, governor, partner, or employee of any entity other than the **Organization**, even if the **Insured Person's** service in such capacity is with the knowledge or consent or at the request of the **Organization**;

j.    based upon, arising from, or in consequence of:

      (1)    the committing in fact of any deliberately fraudulent or deliberately criminal act or omission or any willful violation of any statute or regulation by any **Insured** or any person for whose acts any **Insured** is legally liable; or

      (2)    any **Insured** having gained in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled,

    as evidenced by:

      (a)    any written statement or written document by any **Insured**; or

      (b)    any judgment, award, order, decree or ruling or equivalent determination in any judicial, administrative or alternative dispute resolution proceeding;

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

k.   for discrimination, libel, slander, wrongful termination of employment, disparagement, sexual harassment, violation of rights of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault or battery;

l.   based upon, arising from, or in consequence of:

   (1)   the insolvency of any bank, banking firm, broker, or dealer in securities, or any other person or entity, or the inability of any such entity or person to make any payment or settle or effect any transaction of any kind; provided that this Exclusion 3l(1) shall not apply to **Wrongful Acts** solely in connection with an **Insured's** investment on behalf of the claimant in the stock of any of the foregoing entities; or

   (2)   **Financial Impairment**;

m.   based upon, arising from, or in consequence of any investment banking or related activities, actual or alleged, or the failure to engage in or complete any such activities including, without limitation, the following:

   (1)   the underwriting, placement, securitizing, syndicating, promoting, conversion, sale, purchase or market making (as defined in section 3(A)(38) of the Securities Exchange Act of 1934 as amended) of any security or instrument or other evidence of indebtedness, whether or not registered under the Securities Act of 1933, as amended;

   (2)   the rendering of advice or recommendations regarding any actual, potential, attempted or threatened merger, consolidation, or business combination, acquisition, sale, purchase, divestiture or distribution, tender or exchange offer, proxy contest or solicitation, leveraged or management buy-out, going private transaction, partnership, minority investment, joint or collaborative venture, dissolution, liquidation, rehabilitation, conservatorship, or insolvency proceeding, reorganization, restructuring, recapitalization, spin-off, primary or secondary private or public offering of debt or equity securities or other instruments or evidences of indebtedness, or sale of assets or operations of any enterprise or entity, or any effort to raise or furnish capital or financing for any enterprise or entity under any of the foregoing;

   (3)   the rendering of analysis, advice or fairness opinions or valuations regarding any enterprise or entity or any of the assets or liabilities of, or interests in, any entity not held by the **Insured** as trustee;

   (4)   any acquisition, sale, conversion or transfer of securities, assets or liabilities by the **Insured** for such **Insured's** own account or as an original purchaser in a transaction under Regulation 144A under the Securities Act of 1933, as amended;

   (5)   the forming, syndicating, operating, administering, advising or rolling up a limited partnership or real estate investment trust;

   (6)   any use by any **Insured** of, or aiding and abetting or any other participation by any **Insured** in the use of, non-public information in a manner prohibited by the laws of the United States of America including but not limited to the Insider Trading and Securities Fraud Enforcement Act of 1988 (as amended), section 10(b) of the Securities Exchange Act of 1934 (as amended) and Rule 10(b)(5) promulgated thereunder, or prohibited by the laws of any state, territory or subdivision thereof, or prohibited by the laws of any other jurisdiction, or any rules or regulations promulgated under any of the foregoing; and

   (7)   any disclosure or statement or omission in any disclosure, filing or **Loan Servicing** in connection with any investment banking activities, including any of the activities listed in this Exclusion 3m(1) through (6);

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

## BPL FOR FINANCIAL INSTITUTIONS[SM]

n.   based upon, arising from, or in consequence of any fees or charges;

o.   based upon, arising from, or in consequence of:

   (1)   the purchase, sale, participation, syndication, grant, or commitment to; or

   (2)   any act of restructure, termination, transfer, repossession or foreclosure on;

   any loan, lease or extension of credit or any failure to do the activities described in this Exclusion 3o. However, this Exclusion 3o shall not apply to **Loan Servicing**;

p.   based upon, arising from, or in consequence of any act arising out of the operation or control of any entity or property that the **Insured** acquired as security or collateral for; or the rendering of advice in connection with any loan, lease or extension of credit;

q.   based upon, arising from, or in consequence of any function or activity as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors;

r.   based upon, arising from, or in consequence of the rendering of or failing to render any information, system or network technology service or advice, including the development, design or implementation of software or other systems;

s.   based upon, arising from, or in consequence of mechanical or electronic failure, faulty construction, error in design, latent defect, wear or tear, gradual deterioration, electrical disturbance, media failure or breakdown or malfunction or error in programming involving any electronic or computer system;

t.   based upon, arising from or in consequence of any unauthorized instructions that are designed to modify, alter, impair, damage, destroy, delete, record, input or transmit information within any electronic or computer system;

u.   based upon, arising from, or in consequence of the notarization of any signature without the physical appearance at the time of notarization of the person who is or claims to be the person signing the instrument;

v.   based upon, arising from or in consequence of serving as a trustee under bond indenture;

w.   based upon, arising from, or in consequence of the liability of others assumed by any **Insured** under any written or oral contract or agreement; provided that this Exclusion 3w shall not apply to the extent that an **Insured** would have been liable in the absence of such contract or agreement;

x.   based upon, arising from or in consequence of the rendering of or failure to render any of the following professional services: medical or health care services, real estate appraisal services, accounting services, data processing services, architectural or construction management services, the practice of law or the rendering of legal services, securities broker or dealer services or insurance agent or brokerage services;

y.   based upon, arising from, or in consequence of any oral or written representation, promise or guarantee regarding any rate of return or the fulfillment of any minimum performance standards; or

z.   by, on behalf of, or at the behest of any natural person or concern (including but not limited to any shareholder, bondholder, or debenture holder), their estate, heirs, legal representatives or assigns, that has a legal or equitable interest in any stock, bond, debenture, or other form of security or ownership interest of the **Organization**, when such **Claim** is based upon, arises out of, or pertains to any interest in such security or ownership interest; provided that this Exclusion 3z shall not apply:

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

(1)    to any **Claim** for a **Wrongful Act** in which an **Insured Person** was provided with or was entitled to be provided with **Professional Services** and such **Claim** is brought solely in his or her capacity as a **Customer**, and

(2)    such **Claim** is brought without the solicitation, assistance or participation of any other **Insured**.

## 4.    SEVERABILITY OF EXCLUSIONS

No fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of applying Exclusion 3j.

## 5.    SPOUSES, DOMESTIC PARTNER, ESTATES AND LEGAL REPRESENTATIVES

Coverage shall extend to **Claims** for the **Wrongful Acts** of an **Insured Person** made against:

a.    the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is incompetent, insolvent or bankrupt; or

b.    the lawful spouse or **Domestic Partner** of such **Insured Person** solely by reason of such spouse's or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse's or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

All terms and conditions of this Policy, including without limitation the Retention Amount applicable to **Loss** incurred by the **Insured Person**, shall also apply to **Loss** incurred by the estate, heirs, legal representatives, assigns, and spouse or **Domestic Partner** of such **Insured Person**. The coverage provided by this Section 5 shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

## 6.    EXTENDED REPORTING PERIOD

If the Company or the **Parent Organization** terminates or does not renew this Policy, other than termination by the Company for nonpayment of premium, then the **Parent Organization** shall have the right, upon payment of the Additional Premium set forth in ITEM 6(B) of the Declarations, to an extension of the coverage granted by this Policy for **Claims** that are:

a.    first made during the period set forth in ITEM 6(A) of the Declarations (the "Extended Reporting Period") following the effective date of termination or nonrenewal; and

b.    reported to the Company in writing within the time provided in Section 8, Reporting and Notice,

but only to the extent such **Claims** are for **Wrongful Acts** committed, attempted or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal or the date of the first merger, consolidation, acquisition, cessation or **Financial Impairment** event described in Section 13, Acquisition by Another Organization.

The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew. The right to purchase an extension of coverage as described in this Section 6 shall lapse unless written notice of election to purchase the extension, together with payment of the additional premium due, is received by the Company within thirty (30) days after the effective date of termination or nonrenewal. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**BPL FOR FINANCIAL INSTITUTIONS**<sup>SM</sup>

7.    **LIMITS OF LIABILITY, RETENTION AMOUNT AND COINSURANCE**

a.    All **Loss** arising out of the same **Wrongful Act** and all **Related Claims** of the **Insured** shall be deemed one **Loss**, and such **Loss** shall be deemed to have originated in the earliest **Policy Period** in which a **Claim** is first made against the **Insured** alleging such **Wrongful Act** or **Related Claims**.

b.    The Company's maximum liability for each **Loss**, shall be the Limit of Liability for each **Loss** set forth in ITEM 2(A) of the Declarations. The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period**, shall be the Aggregate Limit of Liability for the **Policy Period** set forth in ITEM 2(B) of the Declarations.

c.    **Defense Costs** are part of, and not in addition to, the Limits of Liability set forth in ITEM 2 of the Declarations, and the payment by the Company of **Defense Costs** shall reduce and may exhaust such Limits of Liability. **Defense Costs** shall be applied against the Retention Amount set forth in ITEM 4 of the Declarations.

d.    The Company's liability under this Policy shall apply only to that part of each **Loss**, which is excess of the Retention Amount set forth in ITEM 4 of the Declarations and such Retention Amount shall be borne by the **Insured** uninsured and at the **Insured's** own risk. In the event that any **Insured** is unwilling or unable to bear the Retention Amount it shall be the obligation of the **Parent Organization** to bear such Retention Amount uninsured and at its own risk.

e.    With respect to all **Loss** (excess of the Retention Amount) originating in any one **Policy Period**, the **Insured** shall bear uninsured that percentage of all such **Loss** specified as the Coinsurance Percentage in ITEM 3 of the Declarations, and the Company's liability hereunder shall apply only to the remaining percentage of all such **Loss**.

f.    The Limit of Liability available during the Extended Reporting Period, if exercised, shall be the remaining portion, if any, of the Aggregate Limit of Liability provided in the immediately preceding **Policy Period**.

8.    **REPORTING AND NOTICE**

a.    The **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of any **Claim** as soon as practicable, but in no event later than the earliest of the following dates:

(1)    sixty (60) days after the date on which any **Insured** first becomes aware that the **Claim** has been made;

(2)    sixty (60) days after the effective date of expiration or termination, if this Policy expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased; or

(3)    the expiration date of the Extended Reporting Period, if purchased;

provided that if the Company sends written notice to the **Insured**, at any time before the date set forth in Subsection 8a(1) with respect to any **Claim**, stating that this Policy is being terminated for nonpayment of premium, the **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

b.    If during the **Policy Period** an **Insured**:

(1)    becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company; or

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

(2)    receives a written request to toll or waive a statute of limitations applicable to a **Wrongful Act** before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Act** to the Company,

then any **Claim** subsequently arising from the circumstances referred to in Subsection 8b(1), or from such **Wrongful Act** referred to in Subsection 8b(2), shall be deemed to have been first made during the **Policy Period** in which the written notice described in Subsection 8b(1) or (2) was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company in the manner set forth in Subsection 8a(1). With respect to any such subsequent **Claim**, no coverage under this Policy shall apply to any loss incurred prior to the date such subsequent **Claim** is actually made.

c.    The **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company such information, assistance, and cooperation as the Company may reasonably require, and shall include in any notice under Subsections 8a or 8b, a description of the **Claim** or circumstances, the nature of any alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential parties, and the manner in which such **Insured** first became aware of the **Claim** or circumstances.

## 9.    DEFENSE AND SETTLEMENT

a.    It shall be the duty of the **Insured** and not the duty of the Company to defend **Claims** made against the **Insured**. The **Insured** shall have the sole obligation under this Policy to retain defense counsel, which shall be subject to the approval of the Company, which shall not be unreasonably withheld.

b.    The Company may make any investigation it deems necessary and may, with the consent of the **Parent Organization**, make any settlement of any **Claim** it deems expedient. If the **Parent Organization** withholds consent to any settlement acceptable to the claimant in accordance with the Company's recommendation (a "Proposed Settlement"), the Company's liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed:

(1)    the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to the Proposed Settlement of such **Claim**; plus

(2)    seventy percent (70%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in Subsection 9b(1), incurred in connection with such **Claim**; subject in all events to the applicable Retention Amount and the available Limits of Liability for such **Claim**. The remaining thirty percent (30%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in Subsection 9b(1) shall be borne by the **Insured** uninsured and at the **Insured's** own risk, in addition to amounts not covered pursuant to the provisions of Section 10, Allocation.

c.    The **Insured** agrees not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, any **Defense Costs**, any element of **Loss** incurred, any obligation assumed, or any admission made, by any **Insured** without the Company's prior written consent.

d.    The **Insured** agrees to provide the Company with all information, assistance and cooperation which the Company reasonably requests. The **Insured** further agrees that, in the event of a **Claim**, the **Insured** shall do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

BPL FOR FINANCIAL INSTITUTIONS[SM]

## 10.  ALLOCATION

If both **Loss** covered by this Policy and loss not covered by this Policy are incurred, either because a **Claim** against an **Insured** includes both covered and noncovered matters or because a **Claim** is made against both an **Insured** and others, then the **Insured** and the Company shall allocate such amount between covered **Loss** and noncovered loss based upon the relative legal and financial exposures of the parties to covered and noncovered matters and, in the event of a settlement in such **Claim**, also based upon the relative benefits to the parties from such settlement. The Company shall not be liable under this Policy for the portion of such amount allocated to noncovered loss.

If the **Insured** and the Company agree on an allocation of **Defense Costs**, then the Company shall advance on a current basis **Defense Costs** allocated to covered **Loss**. If the **Insured** and the Company cannot agree on an allocation:

a.    no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

b.    the Company shall advance on a current basis **Defense Costs** which the Company believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined; and

c.    the Company, if requested by the **Insured**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insured**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** on account of a **Claim** shall be applied retroactively to all **Defense Costs** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim**.

## 11.  OTHER INSURANCE

If any **Loss** under this Policy is insured under any other valid insurance, prior or current and regardless of whether collectible, then this Policy shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable deductible (or retention) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this Policy.

Any payment by any **Insured** of a retention or deductible under such other insurance shall reduce, by the amount of such payment which would otherwise have been covered under this Policy, the applicable Retention Amount under this Policy.

## 12.  CHANGES IN EXPOSURE ACQUISITION/CREATION OF ANOTHER ORGANIZATION

If, before or during the **Policy Period**, any **Organization**:

a.    acquires securities or voting rights in another organization, or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

b.    acquires another organization by merger into or consolidation with an **Organization** such that the **Organization** is the surviving entity,

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

then such other organization and its **Insured Persons** shall be **Insureds** under this Policy, if such other organization's primary business is to offer both deposit and loan services, but only with respect to **Wrongful Acts** after such acquisition or creation, unless the Company agrees, after presentation of a complete application and all other appropriate information, to provide coverage by endorsement for **Wrongful Acts** before such acquisition or creation.

If the total assets of any such new **Subsidiary** or newly acquired organization exceed ten percent (10%) of the total assets of the **Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Organization**, respectively, as of the date of such acquisition or creation), the value of the fiduciary assets under management by the acquired organization exceeds ten percent (10%) of the combined total fiduciary assets under management of the **Organization** (as reflected in their most recent audited consolidated financial statements) or such new **Subsidiary's** or newly acquired organization's primary business is not to offer both deposit and loan services, then the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require, and shall pay any reasonable additional premium required by the Company. If the **Insured** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, then coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

13.    **ACQUISITION BY ANOTHER ORGANIZATION**

If:

a.    the **Parent Organization** merges into or consolidates with another organization and the **Parent Organization** is not the surviving entity;

b.    another organization, person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by such other organization or persons of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors of the **Parent Organization**;

c.    the **Organization** completely ceases to actively engage in its primary business ("cessation"); or

d.    **Financial Impairment** occurs,

then coverage under this Policy shall continue until termination of this Policy, but only with respect to **Claims** for **Wrongful Acts** before such merger, consolidation, acquisition, cessation or **Financial Impairment**. Upon the occurrence of any event described in Section 13a through 13d, the entire premium for this Policy shall be deemed fully earned.

The **Parent Organization** shall give written notice of such merger, consolidation, acquisition, cessation or **Financial Impairment** to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such merger, consolidation, acquisition, cessation or **Financial Impairment**, together with such other information as the Company may require. Upon receipt of such notice and information and at the request of the **Parent Organization**, the Company may provide to the **Parent Organization** a quotation for an extension of coverage (for such period as may be negotiated between the Company and the **Parent Organization**) with respect to **Claims** for **Wrongful Acts** before such merger, consolidation, acquisition, cessation or **Financial Impairment**. Any coverage extension pursuant to such quotation shall be subject to such additional or different terms, conditions and limitations of coverage, and payment of additional premium, as the Company in its sole discretion may require.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**BPL FOR FINANCIAL INSTITUTIONS**<sup>SM</sup>

**14.    CESSATION OF SUBSIDIARY**

In the event an organization ceases to be a **Subsidiary** before or during the **Policy Period**, then coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this Policy, but only with respect to **Claims** for **Wrongful Acts** while such organization was a **Subsidiary**.

**15.    REPRESENTATIONS AND SEVERABILITY**

In issuing this Policy, the Company has relied upon the statements, representations and information in the **Application**. All of the **Insureds** acknowledge and agree that all such statements, representations and information:

a.      are true and accurate;

b.      were made or provided in order to induce the Company to issue this Policy; and

c.      are material to the Company's acceptance of the risk to which this Policy applies.

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this Policy shall be void with respect to any **Insured** who knew as of the date the **Application** was signed the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful or inaccurate disclosure in the **Application**) or to whom knowledge of such facts is imputed.

For purposes of the preceding sentence:

(1)    the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of an **Organization** shall be imputed to such **Organization**;

(2)    the knowledge of the persons who signed the **Application** shall be imputed to all of the **Insureds**; and

(3)    except as provided in Subsection 15(1), the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.

**16.    TERRITORY**

Coverage shall extend anywhere in the world.

**17.    NOTICE**

Notice to the Company of a **Claim**, or circumstance which could give rise to a **Claim**, shall be given in writing addressed to:

Attn: Home Office Claims Department
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

All other notices to the Company shall be given in writing addressed to:

Attn: Department of Financial Institutions
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

Any such notice shall be effective the date of receipt by the Company at such address.

## 18.    VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If a judgment is rendered, a settlement is denominated or any element of **Loss** under this Policy is stated in a currency other than United States dollars, then payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon or the element of **Loss** is due, respectively.

## 19.    SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

## 20.    ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability, nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

## 21.    ALTERATION AND ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by a duly authorized representative of the Company.

## 22.    TERMINATION OF POLICY

This Policy shall terminate at the earliest of the following times:

a.    sixty (60) days after receipt by the **Parent Organization** of written notice of nonrenewal from the Company;

b.    ten (10) days after receipt by the **Parent Organization** of written notice of termination from the Company for nonpayment of premium;

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

BPL FOR FINANCIAL INSTITUTIONS<sup>SM</sup>

c.   upon receipt by the Company of written notice of termination from the **Parent Organization**; provided that this Policy may not be terminated by the **Insured** after the effective date of any acquisition of the **Parent Organization** as described in Section 13, Acquisition by Another Organization;

d.   upon expiration of the **Policy Period** set forth in ITEM 5 of the Declarations; or

e.   at such other time as may be agreed upon by the Company and the **Parent Organization**.

The Company shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Organization**.  Under any other circumstances the refund shall be computed pro rata.  Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made as soon as practicable thereafter.

## 23.  BANKRUPTCY

Bankruptcy or insolvency of any **Insured** or the estate of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

## 24.  AUTHORIZATION CLAUSE

By acceptance of this Policy, the **Parent Organization** agrees to act on behalf of all **Insureds** with respect to the giving and receiving of notice of **Claim** or termination, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for in this Policy, and each **Insured** agrees the **Parent Organization** shall act on behalf of such **Insured**.

## 25.  COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the Company from providing insurance.

## 26.  HEADINGS

The descriptions in the headings and subheadings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

Effective date of
this Endorsement: December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement No:    1

To be attached to and form part of
Policy Number:    82077768

Issued to:  GMAC LLC

---

### DELETION OF EXCLUSION ENDORSEMENT

It is agreed that Section 3., Exclusions, is amended by deleting Exclusion n. in its entirety.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: January 14, 2008

By  *Robert Hamburger*
_____
Authorized Representative

BPL for Financial Institutions
Form 17-02-6765 (01/2005)

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

Effective date of
this Endorsement: December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement No:    2

To be attached to and form part of
Policy Number:       82077768

Issued to:  GMAC LLC

---

### LIMITED LIABILITY CORPORATION ENDORSEMENT

It is agreed that:

1.  The definition of **Insured Person** in Section 2., Definitions, is amended to include, with respect to any **Organization** that is a limited liability corporation, any natural person who has been, now is, or shall become a duly elected director, duly elected or appointed officer, member manager, member of the management committee or board of managers, or equivalent executive of the **Organization**.

2.  The definition of **Subsidiary** in Section 2., Definitions, is amended by adding the following:

    Subsidiary also means any organization in which one or more of the Organizations, in any combination directly or indirectly owns or controls fifty percent (50%) or more of the outstanding securities or voting rights representing, in the case of a limited liability corporation, the present right to vote for election of or appoint directors, member managers, members of the management committee or board of managers, or equivalent executives.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: January 14, 2008                          By _____
                                                        *Robert Hamburger*
                                                        Authorized Representative

BPL for Financial Institutions
Form 17-02-6771 (01/2005)

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

Effective date of
this Endorsement: December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement No:    3

To be attached to and form part of
Policy Number:    82077768

Issued to:  GMAC LLC

---

### MODIFIED EXCLUSION 3j. - FINAL ADJUDICATION ENDORSEMENT

It is agreed that Section 3, Exclusions, is amended by deleting Exclusion j. in its entirety and replacing it
with the following:

j.    based upon, arising from, or in consequence of:

    (1)    the committing in fact of any deliberately fraudulent or deliberately criminal act or omission or
any willful violation of any statute or regulation by any **Insured**; or any person for whom any
**Insured** is legally liable; or

    (2)    any **Insured** having gained in fact any profit, remuneration or advantage to which such
**Insured** was not legally entitled,

    as evidenced by any judgment or ruling in any judicial, administrative or alternative dispute
resolution proceeding;

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: January 14, 2008

By _____
                    Authorized Representative

BPL for Financial Institutions
Form 17-02-6774 (03/2005) rev.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

Effective date of
this Endorsement: December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement No:   4

To be attached to and form part of
Policy Number:      82077768

Issued to:  GMAC LLC

---

### PREMIUM ENDORSEMENT

It is agreed that:

1.    The premium for this Policy for the period December 31, 2007 to December 31, 2008 is:

      Premium:  One Million Eighty Six Thousand Seven Hundred Fifty ($1,086,750)

2.    This premium is subject to change during the period in 1. above if amendments are added to this
      Policy at the request of the **Parent Organization**.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: January 14, 2008

By_____
                Authorized Representative

BPL for Financial Institutions
Form 17-02-6778 (01/2005)

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

Effective date of
this Endorsement: December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement No:    5

To be attached to and form part of
Policy Number:    82077768

Issued to:  GMAC LLC

---

**AMEND EXCLUSION f. - MENTAL ANGUISH, EMOTIONAL DISTRESS ENDORSEMENT**

It is agreed that Section 3., Exclusions f., is deleted in its entirety, and replaced as follows:

f.    based upon, arising from, or in consequence of bodily injury, sickness, disease or death of
any person;

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: January 14, 2008

By _Robert Hamburger_____
                    Authorized Representative

BPL for Financial Institutions
Form 17-02-6790 (01/2005)

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

Effective date of
this Endorsement: December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement No:    6

To be attached to and form part of
Policy Number:        82077768

Issued to:  GMAC LLC

---

### AMEND EXCLUSION v. - TRUSTEE INDENTURE ENDORSEMENT

It is agreed that Section 3., Exclusions v., is deleted in its entirety and replaced as follows:

v.    based upon, arising from, or in consequence of any conflicts of interest as addressed in Section 310 (b) of the Trust Indenture Act of 1939;

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: January 14, 2008

By _____
              Authorized Representative

BPL for Financial Institutions
Form 17-02-6791 (01/2005)

**PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408**

Effective date of
this Endorsement: December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement No:    7

To be attached to and form part of
Policy Number:    82077768

Issued to:   GMAC LLC

---

### NOTICE TO MICHIGAN INSUREDS

THIS POLICY IS EXEMPT FROM THE FILING REQUIREMENTS OF SECTION 2236
OF THE INSURANCE CODE OF 1956, 1956 PA 218, MCL 500.2236.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

Effective date of
this Endorsement: December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement No:    8

To be attached to and form part of
Policy Number:        82077768

Issued to:  GMAC LLC

---

### MICHIGAN AMENDATORY ENDORSEMENT

It is agreed that:

1.  The following is added to the NOTICE provision on the Declarations Page:

    **"PLEASE READ AND REVIEW THIS INSURANCE POLICY CAREFULLY AND DISCUSS THE
    COVERAGE WITH YOUR INSURANCE AGENT."**

2.  Section 8. Reporting and Notice is amended to add the following paragraphs (d) and (e) at the end
    of such Section:

    "(d)   Notice of a **Claim** given by or on behalf of the **Parent Organization** to any licensed agent of
    the Company in the state of Michigan, with particulars sufficient to identify the person or
    entity entitled to coverage under this Policy, shall be deemed to be notice to the Company,
    provided that such notice is given in accordance with the terms and conditions of this Section
    8. and all other applicable provisions of this Policy for notice to the Company.

    (e)    Failure by an **Insured** to give notice within a prescribed time will not invalidate any coverage
    that would have been available under this Policy if it is shown that it was not reasonably
    possible to give such notice within the prescribed time, and that notice was given as soon as
    reasonably possible."

3.  The first paragraph of Section 11. Other Insurance is amended to read as follows:

    "If any **Loss** under this Policy is insured under any other valid insurance policy(ies) subject to the
    same terms, conditions and provisions as the insurance provided by this Policy, then this Policy
    shall cover its share of such **Loss**, subject to its limitations, conditions, provisions and other terms,
    in an amount equal to the proportion that the then-available limit of liability under this Policy bears
    to the aggregate of all limits of liability of all insurance covering such **Loss**, whether such other
    policy(ies) is stated to be primary, contributory, excess, contingent or otherwise, unless such other
    policy(ies) is written only as specific excess insurance over the Limits of Liability provided in this
    Policy.  If any **Loss** under this Policy is insured under any other valid insurance policy(ies) other
    than as described above, then this Policy shall cover such **Loss**, subject to its limitations,
    conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess
    of the applicable deductible (or retention) and limit of liability under such other insurance, whether
    such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless
    such other insurance is written only as specific excess insurance over the Limits of Liability
    provided in this Policy."

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

4.   Section 17. Notice is amended to add the following at the end of such Section:

"Notice of a **Claim** given by or on behalf of the **Parent Organization** to any licensed agent of the Company in the state of Michigan, with particulars sufficient to identify the person or entity entitled to coverage under this Policy, shall be deemed to be notice to the Company, provided that such notice is given in accordance with the terms and conditions of this Policy for such notice to the Company."

5.   The last paragraph of Section 22. Termination of Policy is amended to read as follows:

"If this Policy is terminated by the **Parent Organization** or the Company, the minimum earned premium shall be the greater of the pro-rata amount of the annualized premium or twenty-five dollars ($25).   Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made as soon as practicable thereafter."

6.   Any terms of the Policy which are in conflict with the statutes of the state wherein the Policy is issued are hereby amended to conform to such statutes.

The Policy will be deemed to have been amended as necessary to effect the purpose of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of Michigan.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: January 14, 2008

By _____ _Robert Hamburger_ _____
                     Authorized Representative

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider:  December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement/Rider No. 9

To be attached to and
form part of Policy No.   82077768

Issued to:   GMAC LLC

---

AMENDED SECTION 12 ENDORSEMENT

In consideration of the premium charged, it is agreed that Section 12., CHANGES IN EXPOSURE ACQUISITION/ CREATION OF ANOTHER ORGANIZATION, is deleted and replaced with the following:

12.    CHANGES IN EXPOSURE ACQUISITION/CREATION OF ANOTHER ORGANIZATION

If, before or during the **Policy Period**, any **Organization**:

a.    acquires securities or voting rights in another organization, or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

b.    acquires another organization by merger into or consolidation with an unaffiliated entity such that the **Organization** is the surviving entity,

then such other organization and its **Insured Persons** shall be **Insureds** under this Policy, but only with respect to **Wrongful Acts** after such acquisition or creation, unless the Company agrees, after presentation of a complete application and all other appropriate information, to provide coverage by endorsement for **Wrongful Acts** before such acquisition or creation.

If the total assets of any such new **Subsidiary** or newly acquired organization exceed twenty-five percent (25%) of the total assets of the **Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Organization**, respectively, as of the date of such acquisition or creation), or the value of the fiduciary assets under management by the acquired organization exceeds twenty-five percent (25%) of the combined total fiduciary assets under management of the **Organization** (as reflected in their most recent audited consolidated financial statements), then the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require, and shall pay any reasonable additional premium required by the Company.  If the **Insured** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, then coverage for such acquired or created organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation.  Coverage for any acquired or created organization described in this paragraph, and for the **Insured Persons** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

## PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

Notwithstanding the foregoing, solely with respect to the creation of a new **Subsidiary**, this Section 12 shall not apply if an **Organization** directly funded or contributed one hundred percent (100%) of such **Subsidiary's** total assets as of the date of such creation.

The securitization of the corporate assets of an **Organization** into **Securitized Debt Instruments** shall not constitute an acquisition, creation, or merger as described in a. and b. above.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_Robert Hamburger_

Authorized Representative

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider:  December 31, 2007          **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No.  10

To be attached to and
form part of Policy No.  82077768

Issued to:   GMAC LLC

---

AMENDED DEFINITIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that Section 2, DEFINITIONS, is amended as follows:

(1)    The definition of **Application** is deleted and replaced with the following:

> **Application** means all signed applications, including attachments and other materials submitted therewith or expressly incorporated therein, submitted by the **Insured** to the Company for this Policy or for any policy of which this Policy is a direct or indirect renewal or replacement. **Application** shall also include all of the following documents, whether or not submitted with or attached to any such signed application:
>
> a.    the Annual Report (including financial statements) last issued to shareholders before this Policy's inception date;
>
> b.    the report last filed with the Securities and Exchange Commission on Form 10-K before this Policy's inception date; and
>
> c.    the report last filed with the Securities and Exchange Commission on Form 10-Q before this Policy's inception date.
>
> All such applications, attachments, materials and other documents expressly incorporated thereto are deemed attached to, incorporated into and made a part of this Policy.

(2)    The definition of **Claim** is deleted and replaced with the following:

> **Claim** means any **BPL Claim**, **Broker-Dealer Claim**, **Insurance Services Claim**, **Insurance Agent and Broker Claim**, or **Lending Claim**.

(3)    The definition of **Loan Servicing** is deleted and replaced with the following:

> **Loan Servicing** means the servicing of any loan, lease or extension of credit (whether consumer, commercial, mortgage banking or otherwise, but not including financing for investment banking, or leveraged or management buyouts).  **Loan Servicing** includes but is not limited to the following servicing activities: record keeping, billing and disbursements of principal or interest, receipt or payment of insurance premiums and taxes, credit reporting or statements of creditworthiness, determination of the depreciation amount of property (but not projections of or an appraisal for residual or future value of property), master servicing activities in connection with **Securitized Debt Instruments**, or any similar administrative activity.  **Loan Servicing** shall also include, but solely with respect to the servicing of a loan, lease or extension of credit: foreclosure activities, management and preservation of collateral, or administration or liquidation of real estate properties.

Q07-1094 (05/2007)                    Page 1

**PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408**

(4)    The definition of **Loss** is deleted and replaced with the following:

**Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive, multiplied or exemplary damages if and to the extent that such punitive, multiplied or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insured**, to the **Company**, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**.  **Loss** does not include:

a.    any amount not indemnified by the **Organization** for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

b.    any costs incurred by an **Insured** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

c.    any amount incurred by an **Insured** in the defense or investigation of any action, proceeding, investigation or demand that is not then a covered **Claim** even if:

(1)    such amount also benefits the defense of a covered **Claim**; or

(2)    such action, proceeding, investigation or demand subsequently gives rise to a covered **Claim**;

d.    taxes, fines or penalties, except as provided above with respect to punitive, multiplied or exemplary damages;

e.    any amount not insurable under the law pursuant to which this Policy is construed;

f.    any amount allocated to noncovered loss pursuant to Section 10;

g.    regular or overtime wages, salaries or fees of **Insured Persons**;

h.    diminution in value or damages resulting from the diminution in value of money, securities, property or any other item of value unless caused by a **Wrongful Act** of an **Insured** in the execution or implementation of investment advice or investment decisions;

i.    loss of the actual money, securities, property or other items of value in the custody or control of an **Insured**;

j.    amounts otherwise reimbursable to an **Insured** by any trust, estate, plan or fund or any similar entity or the sponsor of any such trust, estate, plan or fund or any similar entity;

k.    principal, interest or other monies whether paid, accrued or due as the result of any loan, lease or extension of credit; or

l.    any amount which in fact constitutes disgorgement, including restitution.

(5)    The definition of **Professional Services** is deleted and replaced with the following:

**Professional Services** means any **BPL Services**, **Broker-Dealer Services**, **Insurance Services**, **Insurance Agent and Broker Services**, or **Lending Services**.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

(6)    The definition of **Wrongful Act** is deleted and replaced with the following:

> **Wrongful Act** means any **BPL Wrongful Act, Broker-Dealer Wrongful Act, Insurance Services Wrongful Act, Insurance Agent and Broker Wrongful Act,** or **Lending Wrongful Act**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

Authorized Representative

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

ENDORSEMENT/RIDER

Effective date of
this endorsement/rider:  December 31, 2007      **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No. 11

To be attached to and
form part of Policy No.  82077768

Issued to:   GMAC LLC

---

AMENDED EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that Section 3., EXCLUSIONS, is amended as follows:

(1)    Exclusion 3d is deleted and replaced with the following:

d.    based upon, arising from, or in consequence of:

(1)    any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

(2)    any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request;

provided that this Exclusion 3d shall not apply to an **Insurance Services Claim** that arises out of the **Insured's** claim handling and adjusting;

(2)    Exclusion 3e is deleted and replaced with the following:

e.    based upon, arising from, or in consequence of:

(1)    the actual, alleged, or threatened discharge, release, escape, dispersal or disposal of **Biological Agents** into or on real or personal property, buildings, water, land or atmosphere; or

(2)    any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Biological Agents**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request;

provided that this Exclusion 3e shall not apply to an **Insurance Services Claim** arising out of the **Insured's** claim handling and adjusting;

Q07-1095 (05/2007)                    Page 1

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

(3)    Exclusion 3g is deleted and replaced with the following:

g.    for damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed;

(4)    Exclusion 3m is deleted and replaced with the following:

m.    based upon, arising from, or in consequence of any investment banking or related activities, actual or alleged, or the failure to engage in or complete any such activities including, without limitation, the following:

(1)    the underwriting, placement, syndicating, promoting, conversion, sale, purchase or market making (as defined in section 3(A)(38) of the Securities Exchange Act of 1934 as amended) of any security or instrument or other evidence of indebtedness, whether or not registered under the Securities Act of 1933, as amended;

(2)    the rendering of advice or recommendations regarding any actual, potential, attempted or threatened merger, consolidation, or business combination, acquisition, sale, purchase, divestiture or distribution, tender or exchange offer, proxy contest or solicitation, leveraged or management buy-out, going private transaction, partnership, minority investment, joint or collaborative venture, dissolution, liquidation, rehabilitation, conservatorship, or insolvency proceeding, reorganization, restructuring, recapitalization, spin-off, primary or secondary private or public offering of debt or equity securities or other instruments or evidences of indebtedness, or sale of assets or operations of any enterprise or entity, or any effort to raise or furnish capital or financing for any enterprise or entity under any of the foregoing;

(3)    the rendering of analysis, advice or fairness opinions or valuations regarding any enterprise or entity or any of the assets or liabilities of, or interests in, any entity not held by the **Insured** as trustee;

(4)    any acquisition, sale, conversion or transfer of securities, assets or liabilities by the **Insured** for such **Insured's** own account or as an original purchaser in a transaction under Regulation 144A under the Securities Act of 1933, as amended;

(5)    the forming, syndicating, operating, administering, advising or rolling up a limited partnership or real estate investment trust;

(6)    any use by any **Insured** of, or aiding and abetting or any other participation by any **Insured** in the use of, non-public information in a manner prohibited by the laws of the United States of America including but not limited to the Insider Trading and Securities Fraud Enforcement Act of 1988 (as amended), section 10(b) of the Securities Exchange Act of 1934 (as amended) and Rule 10(b)(5) promulgated thereunder, or prohibited by the laws of any state, territory or subdivision thereof, or prohibited by the laws of any other jurisdiction, or any rules or regulations promulgated under any of the foregoing; and

(7)    any disclosure or statement or omission in any disclosure or filing in connection with any activities listed in this Exclusion 3m(1) through (6);

provided that this Exclusion 3m shall not apply to a **Broker-Dealer Claim** arising out of **Broker-Dealer Services** related to a **Securitized Debt Instrument**;

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

(5)    Exclusion 3p is deleted and replaced with the following:

    p.    based upon, arising from or in consequence of any act arising out of the operation or control of any entity or property that the **Insured** acquired as security or collateral for any loan, lease or extension of credit;

(6)    Exclusion 3q is deleted and replaced with the following:

    q.    based upon, arising from, or in consequence of any function or activity as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of others; provided that this Exclusion 3q shall not apply to **Loan Servicing**.

(7)    Exclusion 3x is deleted and replaced with the following:

    x.    based upon, arising from, or in consequence of the rendering of or failure to render any of the following professional services: medical or health care services; real estate appraisal services; accounting services; data processing services; architectural or construction management services; or the practice of law or the rendering of legal services except to the extent such legal services are required in the course of providing **Professional Services**;

(8)    Exclusion 3y is deleted and replaced with the following:

    y.    based upon, arising from, or in consequence of any oral or written representation (other than a written representation made in a prospectus issued in connection with a **Securitized Debt Instrument**), promise or guarantee regarding any rate of return or the fulfillment of any minimum performance standards; or

(9)    Exclusion 3z is deleted and replaced with the following:

    z.    by, on behalf of, or at the behest of any natural person or concern and their heirs, legal representatives, and assigns (including but not limited to any shareholder, bondholder, or debenture holder), that has a legal or equitable interest in any stock, bond, debenture, or other form of security or ownership interest of the **Organization**, when such **Claim** is based upon, arises out of, or pertains to any interest in such security or ownership interest; provided that this Exclusion 3z shall not apply:

        (1)    to any **Claim** for a **Wrongful Act** in which an **Insured Person** was provided with or was entitled to be provided with **Professional Services**, where such **Claim** is brought solely in his or her capacity as a **Customer**, and is brought without the solicitation, assistance or participation of any other **Insured**; or

        (2)    to any **Broker-Dealer Claim** brought by, on behalf of, or at the behest of a holder of a **Securitized Debt Instrument**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_Robert Hamburger_

Authorized Representative

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

ENDORSEMENT/RIDER

Effective date of
this endorsement/rider: December 31, 2007        **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No. 12

To be attached to and
form part of Policy No.  82077768

Issued to:   GMAC LLC

---

**AMENDED REPRESENTATIONS AND SEVERABILITY ENDORSEMENT**

In consideration of the premium charged, it is agreed that Section 15., REPRESENTATIONS AND SEVERABILITY, is deleted and replaced with the following:

15.   REPRESENTATIONS AND SEVERABILITY

In issuing this Policy, the Company has relied upon the statements, representations and information in the **Application**. All of the **Insureds** acknowledge and agree that all such statements, representations and information:

a.    are true and accurate;

b.    were made or provided in order to induce the Company to issue this Policy; and

c.    are material to the Company's acceptance of the risk to which this Policy applies.

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this Policy shall be void with respect to any **Insured** who knew as of the date the **Application** was signed the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful or inaccurate disclosure in the **Application**) or to whom knowledge of such facts is imputed.

For purposes of the preceding sentence:

(1)    the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of an **Organization** shall be imputed to such **Organization**;

(2)    the knowledge of the persons who signed the **Application** shall be imputed to the **Organization**; and

(3)    except as provided in Subsection 15(1), the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.

Q07-1096 (05/2007)                    Page 1

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

Authorized Representative

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

ENDORSEMENT/RIDER

Effective date of
this endorsement/rider: December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement/Rider No.  13

To be attached to and
form part of Policy No.  82077768

Issued to:  GMAC LLC

---

BROAD FORM EXTENSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Section 1., INSURING CLAUSE, is deleted and replaced with the following:

    1.    INSURING CLAUSES

       *BPL Services Liability Coverage*

       The Company shall pay, on behalf of an **Insured, Loss** on account of any **BPL Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **BPL Wrongful Act** committed by an **Insured** or any person for whose acts the **Insured** is legally liable solely while performing **BPL Services**, including failure to perform **BPL Services**.

       *Broker-Dealer Services Liability Coverage*

       The Company shall pay, on behalf of an **Insured, Loss** on account of any **Broker-Dealer Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Broker-Dealer Wrongful Act** committed by an **Insured** or any person for whose acts the **Insured** is legally liable solely while performing **Broker-Dealer Services**, including failure to perform **Broker-Dealer Services**.

       *Insurance Services Liability Coverage*

       The Company shall pay, on behalf of an **Insured, Loss** on account of any **Insurance Services Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for an **Insurance Services Wrongful Act** committed by an **Insured** or any person for whose acts the **Insured** is legally liable solely while performing **Insurance Services**, including failure to perform **Insurance Services**.

       *Insurance Agent and Broker Services Liability Coverage*

       The Company shall pay, on behalf of an **Insured, Loss** on account of any **Insurance Agent and Broker Services Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for an **Insurance Agent and Broker Wrongful Act** committed by an **Insured** or any person for whose acts the **Insured** is legally liable solely while performing **Insurance Agent and Broker Services**, including failure to perform **Insurance Agent and Broker Services**.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

*Lending Services Liability Coverage*

The Company shall pay, on behalf of an **Insured**, **Loss** on account of any **Lending Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Lending Wrongful Act** committed by an **Insured** or any person for whose acts the **Insured** is legally liable solely while performing **Lending Services**, including failure to perform **Lending Services**.

(2)    Section 2., DEFINITIONS, is amended by adding the following Definitions:

**BPL Claim** means:

a.    a written demand for monetary damages or non-monetary relief;

b.    a civil proceeding commenced by the service of a complaint or similar pleading;

c.    an arbitration proceeding commenced by the submission of a statement of claim or similar document,

brought by or on behalf of a **BPL Customer** against an **Insured** for a **BPL Wrongful Act**, including any appeal therefrom; or

d.    a criminal proceeding commenced by the service of an indictment or similar document, against an **Insured** for a **BPL Wrongful Act**, including any appeal therefrom.

**BPL Claim** does not include any **Broker-Dealer Claim**, **Insurance Services Claim**, **Insurance Agent and Broker Services Claim**, or **Lending Claim**.

Except as may otherwise be provided in Section 6, Section 7 or Subsection 8b of this Policy, a **BPL Claim** shall be deemed to have first been made when such **BPL Claim** is commenced as set forth in this definition (or, in the case of a written demand for monetary damages or non-monetary relief, when such demand is first received by an **Insured**).

**BPL Customer** means any person or entity that:

a.    has or had a written agreement with the **Organization**;

b.    submitted a written application to the **Organization**; or

c.    is a named beneficiary of any account held by the **Organization's** Trust Department and who is entitled

to receive **BPL Services** permitted by law or regulation.

**BPL Services** means those services, including **Loan Servicing**, performed or required to be performed by an **Insured** for or on behalf of a **BPL Customer**:

a.    for a fee, commission or other monetary consideration;

b.    where a fee, commission or other monetary consideration would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**; or

c.    for other remuneration which inures to the benefit of such **Insured**.

**BPL Services** does not include any **Broker-Dealer Services**, **Insurance Services**, **Insurance Agent and Broker Services**, or **Lending Services**.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**BPL Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty that:

a.  is committed, attempted, or allegedly committed or attempted, before or during the **Policy Period** by an **Insured** or any person for whose acts the **Insured** is legally liable; and

b.  arises solely from the performance of **BPL Services**.

**Broker-Dealer Claim** means:

a.  a written demand for monetary damages or non-monetary relief;

b.  a civil proceeding commenced by the service of a complaint or similar pleading;

c.  an arbitration proceeding commenced by the submission of a statement of claim or similar document,

brought by or on behalf of a **Broker-Dealer Customer** against an **Insured** for a **Broker-Dealer Wrongful Act**, including any appeal therefrom; or

d.  a criminal proceeding commenced by the service of an indictment or similar document, against an **Insured** for a **Broker-Dealer Wrongful Act**, including any appeal therefrom.

**Broker-Dealer Claim** does not include any **BPL Claim**, **Insurance Services Claim**, **Insurance Agent and Broker Services Claim**, or **Lending Claim**.

Except as may otherwise be provided in Section 6, Section 7 or Subsection 8b of this Policy, a **Broker-Dealer Services Claim** shall be deemed to have first been made when such **Broker-Dealer Services Claim** is commenced as set forth in this definition (or, in the case of a written demand for monetary damages or non-monetary relief, when such demand is first received by an **Insured**).

**Broker-Dealer Customer** means any person or entity that:

a.  has or had a written agreement with the **Organization**; or

b.  submitted a written application to the **Organization**

to receive **Broker-Dealer Services**.

**Broker-Dealer Customer** shall also mean the original purchaser of a **Securitized Debt Instrument** from the **Organization**.

**Broker-Dealer Services** means any act performed for a fee by an **Insured** for a **Broker-Dealer Customer** of the **Organization** arising from:

a.  the sale and/or servicing of **Securities**, **Securitized Debt Instruments**, or life, health, annuities, accident and disability products, but only to the extent performed by **Registered Representatives** who are duly licensed to do so and solely with respect to products that have been approved by the **Organization**;

b.  financial, economic, investment advice, or financial planning but only in connection with the services described in a. above; or

c.  the underwriting, placement, securitizing, syndicating and promotion of **Securitized Debt Instruments**.

**Broker-Dealer Services** does not include any **BPL Services**, **Insurance Services**, **Insurance Agent and Broker Services**, or **Lending Services**.

**PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408**

---

**Broker-Dealer Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty that:

a.    is committed, attempted, or allegedly committed or attempted, before or during the **Policy Period** by an **Insured** or any person for whose acts the **Insured** is legally liable; and

b.    arises solely from the performance of **Broker-Dealer Services**.

**ERISA** means the Employee Retirement Income Security Act of 1974, the Pension Protection Act of 2006, the English Pension Scheme Act 1993, the English Pensions Act 1995, all as amended, any similar common or statutory law anywhere in the world, and any rules or regulations promulgated under any such Act or law.

**Insurance Services** means only those services rendered or required to be rendered by or on behalf of the **Insureds** for an **Insurance Services Customer** in the conduct of the **Insureds'** claim handling and adjusting; safety engineering, inspection and loss control operations; personal injury rehabilitation operations; salvage operations; recovery subrogation services; premium financing operations; or insurance pool management. **Insurance Services** does not include:

a.    managed care; medical or health care services; real estate appraisal, development or management services; architectural or construction management services; the practice of law or the rendering of legal services except to the extent such legal services are required in connection with **Insurance Services**; or actuarial consulting services;

b.    services performed by any entity of which the **Insureds** shall have acquired ownership or control as security for a loan or other extension of credit; or

c.    any **BPL Services**, **Broker-Dealer Services**, **Insurance Agent and Broker Services**, or **Lending Services**.

**Insurance Services Claim** means:

a.    a written demand for monetary damages or non-monetary relief;

b.    a civil proceeding commenced by the service of a complaint or similar pleading;

c.    an arbitration proceeding commenced by the submission of a statement of claim or similar document,

brought by or on behalf of an **Insurance Services Customer** against an **Insured** for a **Insurance Services Wrongful Act**, including any appeal therefrom; or

d.    a criminal proceeding commenced by the service of an indictment or similar document, against an **Insured** for a **Insurance Services Wrongful Act**, including any appeal therefrom.

**Insurance Services Claim** does not include any **BPL Claim**, **Broker-Dealer Claim**, **Insurance Agent and Broker Services Claim**, or **Lending Claim**.

Except as may otherwise be provided in Section 6, Section 7 or Subsection 8b of this Policy, an **Insurance Services Claim** shall be deemed to have first been made when such **Insurance Services Claim** is commenced as set forth in this definition (or, in the case of a written demand for monetary damages or non-monetary relief, when such demand is first received by an **Insured**).

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**Insurance Services Customer** means any person or entity that:

a.    has or had a written agreement with the **Organization**; or

b.    submitted a written application to the **Organization**,

to receive **Insurance Services** permitted by law or regulation.

**Insurance Services Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty that:

a.    is committed, attempted, or allegedly committed or attempted, before or during the **Policy Period** by an **Insured** or any person for whose acts the **Insured** is legally liable; and

b.    arises solely from the performance of **Insurance Services**.

**Insurance Agent and Broker Claim** means:

a.    a written demand for monetary damages or non-monetary relief;

b.    a civil proceeding commenced by the service of a complaint or similar pleading;

c.    an arbitration proceeding commenced by the submission of a statement of claim or similar document,

brought by or on behalf of an **Insurance Agent and Broker Customer** against an **Insured** for a **Insurance Agent and Broker Wrongful Act**, including any appeal therefrom; or

d.    a criminal proceeding commenced by the service of an indictment or similar document, against an **Insured** for a **Insurance Agent and Broker Wrongful Act**, including any appeal therefrom.

**Insurance Agent and Broker Claim** does not include any **BPL Claim**, **Broker-Dealer Claim**, **Insurance Services Claim**, or **Lending Claim**.

Except as may otherwise be provided in Section 6, Section 7 or Subsection 8b of this Policy, an **Insurance Agent and Broker Claim** shall be deemed to have first been made when such **Insurance Agent and Broker Claim** is commenced as set forth in this definition (or, in the case of a written demand for monetary damages or non-monetary relief, when such demand is first received by an **Insured**).

**Insurance Agent and Broker Customer** means any person or entity that:

a.    has or had a written agreement with the **Organization**; or

b.    submitted a written application to the **Organization**,

to receive **Insurance Agent and Broker Services** permitted by law or regulation.

**Insurance Agent and Broker Services** means only those services performed by an **Insured** for an **Insurance Agents and Broker Customer** while acting as an insurance agent, insurance broker, insurance consultant, or insurance risk manager.  **Insurance Agents or Insurance Brokerage Services** does not include any **BPL Services**, **Broker-Dealer Services**, **Insurance Services**, or **Lending Services**.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**Insurance Agent and Broker Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty that:

a.   is committed, attempted, or allegedly committed or attempted, before or during the **Policy Period** by an **Insured** or any person for whose acts the **Insured** is legally liable; and

b.   arises solely from the performance of **Insurance Agent and Broker Services**.

**Lending Claim** means:

a.   a written demand for monetary damages or non-monetary relief;

b.   a civil proceeding commenced by the service of a complaint or similar pleading;

c.   an arbitration proceeding commenced by the submission of a statement of claim or similar document,

brought by or on behalf of a **Lending Customer** against an **Insured** for a **Lending Wrongful Act**, including any appeal therefrom; or

d.   a criminal proceeding commenced by the service of an indictment or similar document, against an **Insured** for a **Lending Wrongful Act**, including any appeal therefrom.

**Lending Claim** does not include any **BPL Claim**, **Broker-Dealer Claim**, **Insurance Services Claim**, or **Insurance Agent and Broker Claim**.

Except as may otherwise be provided in Section 6, Section 7 or Subsection 8b of this Policy, a **Lending Claim** shall be deemed to have first been made when such **Lending Claim** is commenced as set forth in this definition (or, in the case of a written demand for monetary damages or non-monetary relief, when such demand is first received by an **Insured**).

**Lending Customer** means any person or entity to which an extension of credit, an agreement to extend credit, or a refusal to extend credit was made or negotiated by or on behalf of the **Organization**.

**Lending Services** means only those services performed by or on behalf of an **Insured** for a **Lending Customer** arising from the extending or refusal to extend credit or granting or refusal to grant a loan or any transaction in the nature of a loan. **Lending Services** does not include any **BPL Services**, **Broker-Dealer Services**, **Insurance Services**, or **Insurance Agent and Broker Services**.

**Lending Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty that:

a.   is committed, attempted, or allegedly committed or attempted, before or during the **Policy Period** by an **Insured** or any person for whose acts the **Insured** is legally liable; and

b.   arises solely from the performance of **Lending Services**.

**Registered Representative** means any individual who is licensed as a registered representative or registered principal by the National Association of Securities Dealers, Inc. and who is employed by the **Organization** during the **Policy Period**, but solely with respect to such individual's rendering of **Broker-Dealer Services** on behalf of the **Organization**.

**Securitized Debt Instrument** means any **Security** issued by the **Organization** in relation to the securitization of a pool of loans, receivables or other assets into asset-backed securities offered for sale by the **Organization**.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**Security** means common or preferred stocks or bonds, mutual fund shares, variable annuities, and any other instrument that is a "security" as that term is defined in the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, or any rules or regulations made pursuant to any such law.

(3) Section 5., EXCLUSIONS, is amended by deleting Exclusion 3c and Exclusion 3o.

(4) Section 5., EXCLUSIONS, is amended by adding the following Exclusion applicable only to **BPL Claims**:

The Company shall not be liable for **Loss** on account of any **BPL Claim** brought or maintained by or on behalf of any **Insured** in any capacity, or by, on behalf of, or at the behest of any business enterprise which is operated, managed or owned, directly or indirectly, in whole or in part, by an **Insured**; provided that this Exclusion shall not apply:

(1) where the claimant is an **Insured Person** and was provided with or was entitled to be provided with **BPL Services** and is bringing such **BPL Claim** solely in the capacity as a **BPL Customer**, and such **BPL Claim** is brought without the solicitation, assistance or participation of any other **Insured**; or

(2) to a **BPL Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if the **BPL Claim** directly results from another **BPL Claim** covered under this Policy.

(5) Section 5., EXCLUSIONS, is amended by adding the following Exclusions applicable only to **Broker-Dealer Claims**:

The Company shall not be liable for **Loss** on account of any **Broker-Dealer Claim**:

(A) based upon, arising from, or in consequence in fact of the willful or intentional violation of any law, statute, rule or regulation regulating (i) the issuance, purchase or sale of securities or securities transactions on any security or commodity exchanges or the over-the-counter market or (ii) any investment companies or investment advisors;

(B) brought or maintained by or on behalf of any **Insured** in any capacity, or by, on behalf of, or at the behest of any business enterprise which is operated, managed or owned, directly or indirectly, in whole or in part, by an **Insured**; provided that this Exclusion (B) shall not apply:

(1) where the claimant is an **Insured Person** and was provided with or was entitled to be provided with **Broker-Dealer Services** and is bringing such **Broker-Dealer Claim** solely in the capacity as a **Broker-Dealer Customer**, and the **Broker-Dealer Claim** is brought without the solicitation, assistance or participation of any other **Insured**; or

(2) to a **Broker-Dealer Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if the **Broker-Dealer Claim** directly results from another **Broker-Dealer Claim** covered under this Policy;

(C) based upon, arising from, or in consequence of the commingling of any funds;

(D) based upon, arising from, or in consequence of any civil, criminal, administrative, or arbitration proceeding as to which any **Insured** has received written notice prior December 31, 2006, or any matter, fact, circumstance, transaction, or event underlying or alleged in such proceeding;

(E) based upon, arising from, or in consequence of any **Insured** acting or serving as a clearing agent, specialist, or market maker for any securities or for failing to clear or make a market for any securities;

**PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408**

(F) based upon, arising from, or in consequence of a transaction involving any of the following: non-covered options; commodities; any type of futures contract; or any equity **Security** priced under five dollars ($5.00) at the time of any transaction unless the **Security** is (i) traded on a national securities exchange, (ii) NASDAQ approved or authorized, or (iii) part of a mutual fund; or

(G) based upon, arising from, or in consequence of any security or investment products not approved or not authorized by the **Organization** for sale by a **Registered Representative**.

(6) Section 5., EXCLUSIONS, is amended by adding the following Exclusions applicable only to **Insurance Services Claims**:

The Company shall not be liable to make any payment for **Loss** in connection with any **Insurance Services Claim**:

(A) based upon, arising from, or in consequence of the underwriting of insurance, including without limitation any decisions involving the classification, selection, or renewal or risks as well as the rates and premiums charged to insure or reinsure risks;

(B) brought or maintained by or on behalf of any **Insured** in any capacity, or by, on behalf of, or at the behest of any business enterprise which is operated, managed or owned, directly or indirectly, in whole or in part, by an **Insured**; provided that this Exclusion (B) shall not apply:

    (1) where the claimant is an **Insured Person** and was provided with or was entitled to be provided with **Insurance Services** and is bringing such **Insurance Services Claim** solely in his or her capacity as an **Insurance Services Customer**, and the **Insurance Services Claim** is brought without the solicitation, assistance or participation of any other **Insured**; or

    (2) to an **Insurance Services Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if the **Insurance Services Claim** directly results from another **Insurance Services Claim** covered under this Policy;

(C) for any express representations, warranties or guarantees, estimates of construction costs, or costs exceeding estimates made in connection with **Insurance Services**;

(D) based upon, arising from, or in consequence of the adequacy or inadequacy of any claim reserves of the **Organization** or of any **Insurance Services Customer**; or

(E) for any amounts which constitute benefits, coverage, or amounts due or allegedly due, including without limitation any amount which constitutes interest thereon, from the **Insureds** as an insurer or reinsurer under any policy or contract or treaty of insurance, reinsurance, suretyship, annuity or endowment.

(7) Section 5., EXCLUSIONS, is amended by adding the following Exclusions applicable only to **Insurance Agent and Broker Claims**:

The Company shall not be liable for **Loss** on account of any **Insurance Agent and Broker Claim**:

(A) based upon, arising from, or in consequence of any extension of credit;

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

(B)   brought or maintained by or on behalf of any **Insured** in any capacity, or by, on behalf of, or at the behest of any business enterprise which is operated, managed or owned, directly or indirectly, in whole or in part, by an **Insured**; provided that this Exclusion (B) shall not apply:

    (1)   where the claimant is an **Insured Person** and was provided with or was entitled to be provided with **Insurance Agent and Broker Services** and is bringing such **Insurance Agent Broker Claim** solely in his or her capacity as an **Insurance Agent and Broker Customer**, and the **Insurance Agents or Insurance Brokerage Claim** is brought without solicitation, assistance or participation of any other **Insured**; or

    (2)   to an **Insurance Agent and Broker Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if the **Insurance Agent and Broker Claim** directly results from another **Insurance Agent and Broker Claim** covered under this Policy;

(C)   based upon, arising from, or in consequence of any **Insurance Agent and Broker Services** that contributed or led to the financial impairment or insolvency of any insurer;

(D)   based upon, arising from, or in consequence of the performance of, or the failure to perform, **Insurance Agent and Broker Services** not authorized by contract or agreement with any insurer;

(E)   based upon, arising from, or in consequence of any actuarial services;

(F)   based upon, arising from, or in consequence of any computer software development, customization, design, or any electronic data consulting services;

(G)   based upon, arising from, or in consequence of:

    (1)   any advice to participate or not participate in any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan; or

    (2)   any termination of any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan,

    as each such term is defined in **ERISA**;

(H)   for any financial inability of any insurer (including without limitation any reinsurer, pool, syndicate, association or any other organization formed for the purpose of providing insurance or reinsurance) to make any payment due, or the bankruptcy, insolvency, liquidation or receivership of any insurer rated as A- or higher by AM Best at the time of placement of such insurance;

(I)   for any inability or refusal to pay, collect, or return any premium, commission, escrow, or tax funds or money;

(J)   based upon, arising from, or in consequence of any performance or failure to perform of any mutual fund or investment company;

(K)   based upon, arising from, or in consequence of any violation of any securities, antitrust, or restraint of trade laws;

(L)   based upon, arising from, or in consequence of any warranties or guarantees by any person in the capacity of a risk manager, loss control engineer, or safety inspector; or

(M)   for the performance of any annuity, variable annuity or variable life insurance product.

**PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408**

(8)   Section 5., EXCLUSIONS, is amended by adding the following Exclusions applicable only to **Lending Claims**:

The Company shall not be liable for **Loss** on account of any **Lending Claim**:

(A)   based upon, arising from, or in consequence of, or in any way involving, directly or indirectly, any extension of credit which, at the time of its making, was in excess of the legal lending limit of the **Organization**;

(B)   brought or maintained by or on behalf of any **Insured** in any capacity, or by, on behalf of, or at the behest of any business enterprise which is operated, managed or owned, directly or indirectly, in whole or in part, by an **Insured**; provided that this Exclusion (B) shall not apply:

    (1)   where the claimant is an **Insured Person** and was provided with or entitled to be provided with **Lending Services** and is bringing such **Lending Claim** solely in his or her capacity as a **Lending Customer**, and the **Lending Claim** is brought without solicitation, assistance or participation of any other **Insured**; or

    (2)   to a **Lending Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if the **Lending Claim** directly results from another **Lending Claim** covered under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_Robert Hamburger_
_____
Authorized Representative

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider:  December 31, 2007          **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No.  14

To be attached to and
form part of Policy No.  82077768

Issued to:   GMAC LLC

---

AMENDED NOTICE AND REPORTING; DEFENSE AND SETTLEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Section 2., DEFINITIONS, is amended by adding the following Definitions:

**Mass or Class Action** means any **Claim** brought or maintained by or on behalf of five (5) or more persons or entities who are acting in concert, whether or not such persons or entities are represented by one or more legal counsel;

**Semi-Annual Reporting Period** means each consecutive period of six (6) consecutive calendar months commencing on June 30, 2007.

(2)    Section 8., NOTICE AND REPORTING, is deleted and replaced with the following:

8.    REPORTING AND NOTICE

a.    Subject to Subsection 8b, if a **Claim** is made against an **Insured**, then the **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of such **Claim** in the form of a bordereau report no later than thirty (30) days following the end of the **Semi-Annual Reporting Period** during which any member of the Risk Management Department or Office of the General Counsel of the **Parent Organization** first received notice of such **Claim**.  Such bordereau report submitted pursuant to this Subsection 8a shall contain information including, but not limited to, a description of the **Claim**, the nature of the alleged **Wrongful Act**, the nature of the alleged damage, the names of the claimants, and the manner in which the **Insured** first became aware of the **Claim**.  Upon the request of the Company, the **Insured** shall forward to the Company every demand, notice, summons, complaint or other process received by any **Insured** or **Insured** representative in connection with any **Claim** for which notice is submitted in a bordereau report under this Subsection 8a.

Notwithstanding the foregoing, if this Policy expires (or is otherwise terminated) without being renewed and no Extended Reporting Period is purchased, the **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give written notice to the Company of any **Claim** made against the **Insured** which has not yet been reported to the Company pursuant to this Subsection 8a as soon as practicable but in no event later than sixty (60) days after the effective date of such expiration or termination. If this Policy expires (or is otherwise terminated) without being renewed and the Extended Reporting Period is purchased, the **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give written notice to the Company of any **Claim** made against the **Insured** which has not yet been reported to the Company

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

pursuant to this Subsection 8a as soon as practicable but in no event later than the expiration date of the Extended Reporting Period.

Notwithstanding any statutory, administrative or common law obligations governing claim handling practices, the Company shall be entitled to fully reserve its rights (including, but not limited to, denial of coverage) in connection with any **Claim** for which notice is provided to the Company pursuant to this Subsection 8a.

b.  Notwithstanding Subsection 8a, if a **Claim** is made against any **Insured** and:

(1)  such **Claim** constitutes or becomes a **Mass or Class Action**;

(2)  such **Claim** constitutes a criminal proceeding commenced by the service of an indictment or similar document;

(3)  the Office of the General Counsel of the **Parent Organization** reasonably believes that **Loss** on account of such **Claim** will equal or exceed $12,500,000; or

(4)  such **Claim** is scheduled to proceed to trial within one hundred twenty (120) days,

then the **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of any such **Claim** as soon as practicable, after any member of the Risk Management Department or Office of the General Counsel of the **Parent Organization** first received notice of the **Claim**, separate and apart from any bordereau report required under Subsection 8a. Such written notice shall contain information including, but not limited to, a description of the **Claim**, the nature of the alleged **Wrongful Act**, the nature of the alleged damage, the names of the claimants and the manner in which a member of the **Parent Organization's** Risk Management Department or Office of the General Counsel first received notice of the **Claim**. The **Insureds** shall immediately forward to the Company every demand, notice, summons, complaint or other process received by any **Insured** or **Insured** representative in connection with any **Claim** for which notice is required under this Subsection 8b.

Notwithstanding the foregoing, if this Policy expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased, the **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give written notice to the Company of any **Claim** made against any **Insured** which has not yet been reported to the Company pursuant to this Subsection 8b as soon as practicable but in no event later than sixty (60) days after the effective date of such expiration or termination. If this Policy expires (or is otherwise terminated) without being renewed and the Extended Reporting Period is purchased, the **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give written notice to the Company of any **Claim** made against the **Insured** which has not yet been reported to the Company pursuant to this Subsection 8b as soon as practicable but in no event later than the expiration date of the Extended Reporting Period.

c.  If during the **Policy Period** an **Insured**:

(1)  becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company; or

(2)  receives a written request to toll or waive a statute of limitations applicable to a **Wrongful Act** before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Act** to the Company,

then any **Claim** subsequently arising from the circumstances referred to in Subsection 8c(1), or from such **Wrongful Act** referred to in Subsection 8c(2), shall be deemed to have been first made during the **Policy Period** in which the written notice described in

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

Subsection 8c(1) or (2) was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company in the manner set forth in Subsection 8a or 8b, as applicable. In providing written notice to the Company pursuant to Subsection 8c(1) or (2), the **Insured** shall include a description of the circumstances or **Wrongful Act**, the nature of any alleged **Wrongful Act**, the nature of the alleged or potential damages, the names of all potential claimants, the names of all potential parties, and the manner in which the member of the **Parent Organization's** Risk Management Department or Office of the General Counsel first received notice of the circumstances or **Wrongful Act**.

d.    The **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company such information, assistance and cooperation as the Company may reasonably require. Without limiting the generality of the preceding sentence:

(1)    the **Insured** shall provide the Company with all information required under Subsections 8a, 8b or 8c, as applicable;

(2)    with respect to any **Claim** reported pursuant to Subsection 8a that at any time thereafter becomes a **Mass or Class Action**, the **Insured** shall give the Company written notice that such **Claim** constitutes a **Mass or Class Action** as soon as practicable but in no event later than sixty (60) days after such **Claim** becomes a **Mass or Class Action**, and shall immediately forward to the Company every demand, notice, summons, complaint or other process received by any **Insured** or **Insured** representative in connection with any such **Claim**;

(3)    with respect to any **Claim** reported pursuant to Subsection 8a that at any time thereafter the Office of the General Counsel of the **Parent Organization** reasonably believes that **Loss** on account of such **Claim** will equal or exceed $12,500,000, the **Insured** shall give the Company written notice thereof as soon as practicable, and shall immediately forward to the Company every demand, notice, summons, complaint or other process received by any **Insured** or **Insured** representative in connection with any such **Claim**; and

(4)    with respect to any **Claim** reported pursuant to Subsection 8a that at any time thereafter is scheduled to proceed to trial within one hundred twenty (120) days, the **Insured** shall give the Company written notice thereof as soon as practicable, and shall immediately forward to the Company every demand, notice, summons, complaint or other process received by any **Insured** or **Insured** representative in connection with any such **Claim**.

(2)    Section 9., DEFENSE AND SETTLEMENT, is deleted and replaced with the following:

9.    DEFENSE AND SETTLEMENT

a.    It shall be the duty of the **Insured** and not the duty of the Company to defend **Claims** made against the **Insured**. The **Insured** shall have the sole obligation under this Policy to retain defense counsel, which shall be subject to the approval of the Company, which shall not be unreasonably withheld.

b.    The Company may make any investigation it deems necessary and may, with the consent of the **Parent Organization**, make any settlement of any **Claim** it deems expedient.

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

c.    Except as provided in Subsection 9d, the **Insured** agrees not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any settlement, any **Defense Costs**, any element of **Loss** incurred, any obligation assumed, or any admission made, by any **Insured** without the Company's prior written consent.

d.    Notwithstanding Subsection 9c, the **Insured** may settle any **Claim** or incur any **Defense Costs** with respect to any **Claim** without the Company's prior written consent; provided that (1) the total amount of such settlement or **Defense Costs**, separately or combined, does not exceed $12,500,000, and (2) such **Claim**:

    i.    is not a **Mass or Class Action**;

    ii.   is not an action in which a party or a judicial panel seeks consolidation or transfer to a Multidistrict Litigation Panel in accordance with 28 U.S.C. §1407;

    iii.  does not have any scheduled trial date; or

    iv.   is not a criminal proceeding commenced by the service of an indictment or similar document.

e.    The **Insured** agrees to provide the Company with all information, assistance and cooperation which the Company reasonably requests.  The **Insured** further agrees that, in the event of a **Claim**, the **Insured** shall do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_Robert Hamburger_

Authorized Representative

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

ENDORSEMENT/RIDER

Effective date of
this endorsement/rider:  December 31, 2007          **FEDERAL INSURANCE COMPANY**

Endorsement/Rider No.  15

To be attached to and
form part of Policy No.  82077768

Issued to:   GMAC LLC

---

GNMA, FHLMA and FNMA LOSS PAYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)   If a **Claim** against an **Insured** also includes a claim against the Government National Mortgage
Association ("GNMA"), Federal Home Loan Mortgage Corporation ("FHLMC") or Federal National
Mortgage Association ("FNMA") solely by reason of GNMA, FHLMC or FNMA's ownership interest in
property which the claimant seeks as recovery for a **Wrongful Act** of such **Insured**, all loss which
GNMA, FHLMC or FNMA becomes legally obligated to pay on account of such **Claim** shall be
treated as **Loss** which the **Insured** becomes legally obligated to pay on account of the **Claim** made
against such **Insured**.  However, the foregoing provision shall not apply to the extent any claim or
**Claim** alleges any error, misstatement, misleading statement, act, omission, neglect or breach of
duty committed, attempted or allegedly committed or attempted by GNMA, FHLMC or FNMA.  Any
payment due under this Endorsement for such **Loss** shall be made by an instrument issued to the
**Parent Organization** and GNMA, FHLMC or FNMA, their successors and assigns, as joint loss
payees.  All limitations, conditions, provisions and other terms of coverage applicable to the
**Insured's Loss** shall also be applicable to GNMA, FHLMC or FNMA 's loss.

(2)   Nothing in this Endorsement is intended nor shall be construed to give GNMA, FHLMC or FNMA
any rights under this Policy or to include GNMA, FHLMC or FNMA as an **Insured** or as a third party
beneficiary under this Policy.

(3)   The Company's failure to provide payment in the manner set forth above in paragraph (1) shall not
serve to change or increase the amount of such **Loss** due and payable by the Company on any
**Claim**.  Nothing in this endorsement is intended nor shall be interpreted to increase the Company's
limit of liability for any **Loss**, its Each **Loss** Limit of Liability or its Aggregate Limit of Liability Each
**Policy Period** set forth in the Declarations.

(4)   The coverage under this Policy shall not apply on an excess or contributing basis with any policies
which may be available to GNMA, FHLMC or FNMA, its successors and assigns .

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Name and Address of Insured:

GMAC LLC

200 RENAISSANCE CENTER
DETROIT, MI 48265

_____
Signature of Authorized **Insured** Representative

_____
Position/Title

_____
Date

*Robert Hamburger*
_____
Authorized Representative

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

ENDORSEMENT/RIDER

Effective date of
this endorsement/rider: December 31, 2007

**FEDERAL INSURANCE COMPANY**

Endorsement/Rider No.    16

To be attached to and
form a part of Policy No.   82077768

Issued to:   GMAC LLC

---

AMEND SECTION 13., ACQUISITION BY ANOTHER ORGANIZATION, ENDORSEMENT

In consideration of the premium charged, it is agreed that Section 13. of the Policy, ACQUISITION BY ANOTHER ORGANIZATION, is amended by deleting the first paragraph and replacing it with the following:

If:

a.   the **Parent Organization** merges into or consolidates with another organization and the **Parent Organization** is not the surviving entity;

b.   another organization, person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by such other organization or persons of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors of the **Parent Organization**;

c.   the **Organization** completely ceases to actively engage in its primary business ("cessation"); or

d.   **Financial Impairment** occurs,

then coverage under this Policy shall continue until termination of this Policy, but only with respect to **Claims** for **Wrongful Acts** before such merger, consolidation, acquisition, cessation or **Financial Impairment**. Notwithstanding the foregoing, in the event of the **Financial Impairment** of a **Subsidiary**:

(1)   coverage under this Policy with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this Policy, but only with respect to **Claims** for **Wrongful Acts** before such **Financial Impairment**; and

(2)   coverage under this Policy with respect to all other **Insureds** shall not be affected by such **Financial Impairment**.

Upon the occurrence of any event described above, including but not limited to Section 13a through 13d, the entire premium for this Policy shall be deemed fully earned.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*
Authorized Representative

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

### Notice of Loss Control Services

As a Chubb policyholder, you have loss prevention information and/or services available to you, as described in this Notice.

### Errors and Omissions Liability Loss Prevention Services

- *What is E&O Liability Insurance* Booklet
  *What is E&O Liability Insurance* discusses general principles governing E&O liability and potential exposures facing professionals in their performance as professionals. To order *What is E&O Liability Insurance*, simply call 1.866.282.9001, order 14-01-0157, and provide your mailing address.

-------------------

The services provided are advisory in nature. While this program is offered as a resource in developing or maintaining a loss prevention program, you should consult competent legal counsel to design and implement your own program. No liability is assumed by reason of the services, access or information provided. All services are subject to change without notice.

14-02-7964 (Ed. 5/2004)

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

**Chubb & Son**, div. of Federal Insurance Company
as manager of the member insurers of the
Chubb Group of Insurance Companies

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, this policy makes available to you insurance for losses arising out of certain acts of international terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ -0-.

If you have any questions about this notice, please contact your agent or broker.

Form 10-02-1281 (Ed. 1/2003)

PROFESSIONAL EYES ONLY; SUBJECT TO FRE 408

## IMPORTANT NOTICE TO POLICYHOLDERS

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers").  Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478.  Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 5/2007)