# **EXHIBIT 2**

# **Thompson Declaration**

ny-1053977

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors | Jointly Administered |

**DECLARATION OF WILLIAM R. THOMPSON IN SUPPORT OF DEBTORS' MOTION PURSUANT TO SECTION 362 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 (A) GRANTING RELIEF FROM AUTOMATIC STAY AND (B) APPROVING THE DEBTORS' ENTRY INTO THE SETTLEMENT AGREEMENT REGARDING THE PENDING STATE COURT CLASS ACTION LITIGATION, AUTHORIZING THE DEBTORS TO PERFORM THE OBLIGATIONS THEREUNDER AND FIXING THE AMOUNT OF AN ALLOWED GENERAL UNSECURED CLAIM FOR THE CLASS ACTION PLAINTIFFS**

I, William R. Thompson, under penalty of perjury, declare as follows:

1.  I am General Counsel to Residential Funding Company, LLC, a debtor and debtor in possession in the above-captioned Chapter 11 cases and a subsidiary of Residential Capital, LLC, a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**"). I have been employed by GMAC Mortgage, LLC since April 2005 and I have held my current position since February 2013. I am authorized to make this declaration on behalf of the Debtors and in support of the motion (the "**Motion**")[1] of the Debtors for entry of an order (a) modifying the automatic stay to allow the claimant to proceed in the class action case captioned *Steven and Ruth Mitchell v. Residential Funding Company, LLC, et al.* (Case No. 03-CV-220489-01) (this case and Case No. 03-CV-220489-01 are referred to as the

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

ny-1053977

"**Class Action**"), currently pending in the Circuit Court of Jackson County, Missouri, Division 4 (the "**State Court**"), so as to participate in a settlement hearing seeking final approval of a proposed settlement between the Plaintiffs (defined below) and a certain Debtor, and (b) approving the settlement, authorizing the Debtors' entry into the settlement, authorizing it to perform the obligations thereunder and fixing the amount of an allowed general unsecured claim for the class action Plaintiffs.

2. In my capacity as General Counsel, I am familiar with the Debtors' ongoing litigation matters, including the Class Action. I submit this declaration (the "**Declaration**") on the Debtors' behalf in conjunction with and in support of the Motion. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the various business units of the Debtors; my review of the Debtors' relevant documents; or my general experience, expertise, and knowledge of the Debtors' ongoing litigation. In making my statements based on my review of the Debtors' relevant documents and other information prepared or collected by the Debtors' employees, I have relied upon these employees accurately recording, preparing, collecting, or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

**A.    The Class Action**

3. In July 2003, Steven L. and Ruth E. Mitchell (the "**Plaintiffs**") initiated the putative Class Action in the State Court individually and as proposed representatives of certain similarly-situated borrowers who, on or after July 29, 1997, each obtained a Second Mortgage Loan (as defined by the Missouri Second Mortgage Loan Act ("**MSMLA**")) from Mortgage Capital Resource Corporation ("**MCR**") on real property located in Missouri (collectively, the "**Litigation Class**"). On December 8, 2006, the State Court certified the Litigation Class.

4. I understand that the Plaintiffs allege in the Class Action (a) that MCR,[2] a California corporation, charged fees prohibited by the MSMLA when originating their Second Mortgage Loans and (b) that all interest on those loans was, as a result, illegal. More specifically, the Plaintiffs, among other things, challenged the following fees that were charged, contracted for or received by MCR: loan discount; credit report fee; custodial fee; underwriting fee; processing fee; Federal Express fee; document preparation fee; attorney's fees; flood certification fee; wire transfer fee; administration fee; no prepay fee; and two-point reduction fee. The Plaintiffs contend that the challenged fees charged by MCR either: (a) were not authorized by section 408.233.1 of the MSMLA because they were not enumerated therein; (b) were not bona fide closing costs paid to third parties as allowed by section 408.233.1(3) of the MSMLA; or (c) were not amounts paid by someone other than the borrower as permitted under section 408.233.1(6) of the MSMLA.

5. I further understand that, among other entities, the Plaintiffs named Debtors Residential Funding Corporation (now Residential Funding Company, LLC ("**RFC**")) and Homecomings Financial Network, Inc. (now Homecomings Financial, LLC ("**Homecomings**")) as investor defendants (the "**Investor Defendants**") in the Class Action. According to the Plaintiffs, the Investor Defendants purchased, were assigned, serviced, or master serviced the second mortgage loans of the Litigation Class.[3] Consequently, the Plaintiffs alleged that the Investor Defendants, including RFC and Homecomings, were liable for (a) all prohibited fees, (b) all interest collected on the loans or to be collected on loans that are still being serviced, (c) prejudgment interest on the fees and the past interest paid and (d) punitive damages.

---

[2] MCR commenced a bankruptcy case before the Petition Date and was not named as a defendant in the Class Action.

[3] RFC purchased 248 of the loans held by the Litigation Class, and Homecomings serviced some of those loans.

B.  **The Initial State Court Trial**

6. On December 3, 2007, the Class Action proceeded to trial (the "**Initial State Court Trial**") with respect to RFC and Homecomings, as well as with respect to non-debtors Household Finance Corporation III ("**Household**") and Wachovia Equity Servicing, LLC ("**Wachovia**") (now Wells Fargo Bank, N.A.), neither of which are affiliates with the Debtors.[4] I have been informed that the Plaintiffs alleged and argued, among other things, that RFC should be found liable because: (a) RFC should have double-checked MCR's state law compliance when purchasing the loans at issue; (b) RFC's failure to double-check warranted an award of punitive damages against RFC; and (c) that such damages against RFC needed to be large enough to capture the attention of the entire industry because double-checking was not industry practice. I have been further informed that the Plaintiffs urged the jury to award punitive damages of approximately 9.29% of RFC's net worth as stated on RFC's balance sheet (then showing approximately $5.7 billion) because the prohibited fees charged to the named Plaintiffs by MCR were approximately 9.29% of the Plaintiffs' net worth as stated on their loan application.

7. The State Court ruled in favor of the Plaintiffs on liability, and a jury awarded the Plaintiffs compensatory damages, interest penalties, and $92 million in punitive damages against RFC alone.

8. The State Court entered judgment on June 24, 2008, and after post-trial motions, entered a modified Nunc Pro Tunc Judgment and Order on October 6, 2008 (the "**Modified Order**") that awarded a total of $99,651,115.09 against RFC in relation to the 248 loans that are

---

[4] Although Wachovia and Household were named as defendants in the Class Action, the Released Persons under the Settlement Agreement do not include Household and Wachovia, rather the Settlement Agreement only resolves the claims of the members of the Litigation Class who obtained an MCR loan that was purchased by, assigned to, serviced by and/or master serviced by RFC (collectively, the "**MCR-RFC Loans**").

4

ny-1053977

the subject of the Settlement Agreement. The award of $99,651,115.09 included: (a) $798,832.00 in unauthorized settlement charges or fees; (b) $3,414,962.00 in interest paid by the Class members; (c) $115,254.00 in future interest payable;[5] (d) $92,000,000.00 in punitive damages; (e) $642,066.00 in prejudgment interest on the unauthorized settlement charges or fees; and (f) $2,680,001.09 in statutory attorneys' fees. The State Court did not award prejudgment interest on past interest paid.

9. The Modified Order also awarded a total of $706,042.00 in compensatory damages against Homecomings, which was comprised of $682,992.00 in interest paid by the Class members and $23,050.00 in future interest payable; however, the amount awarded with respect to Homecomings was later determined to be included within, and not in addition to, the amounts awarded against RFC.

C.     **The Appeal**

10. RFC and Homecomings, along with Wachovia and Household, filed an appeal in the Missouri Court of Appeals (the "**Court of Appeals**") with respect to the Modified Order, and the Plaintiffs cross-appealed the denial of prejudgment interest on the award of past interest paid, among other issues (the "**Appeal**").

11. While the Appeal was pending, the Plaintiffs filed a motion for sanctions in the Court of Appeals based on allegations that RFC, Wachovia, and each of their trial counsel perpetrated a fraud on the court (the "**Appellate Sanctions Motion**"). Specifically, the Plaintiffs alleged (a) that RFC's counsel failed to produce documents that Wachovia and its counsel had discovered before the Initial State Court Trial, and that RFC's counsel had obtained before such

---

[5] Certain of the 248 loans purchased by RFC were still being serviced. The award of "future interest payable" pertains to the loans that were still being serviced and was designed to reimburse the holders of such loans for interest that had not yet been paid by the claimant, but would be paid on the loan in the course of the servicing of such loan.

5

ny-1053977

trial in the course of representing Wachovia in another case and (b) that RFC's counsel made improper arguments or permitted Wachovia's counsel to make improper arguments during the Initial State Court Trial despite the existence of those documents. I am further informed that the Plaintiffs asked the Court of Appeals to dismiss RFC's appeal and to award the Plaintiffs an additional $8 to $20 million in monetary sanctions.

12. Ultimately, the Court of Appeals: (a) affirmed the award of $7,651,115.09 in compensatory damages and related interest and fees, which included $798,832.00 in unauthorized settlement charges or fees, $3,414,962.00 in past interest paid, $115,254.00 in future interest payable, 642,066.00 in prejudgment interest on unauthorized settlement charges or fees and $2,680,001.09 in statutory attorneys fees; (b) reversed and remanded the denial of prejudgment interest on the award of $3,414,962.00 in past interest paid and remanded to the State Court to award additional interest; (c) reversed the $92,000,000.00 punitive damages award because the jury instructions improperly permitted the jury to punish RFC for MCR's conduct in originating the loans at issue, as opposed to punishing RFC for its own conduct in purchasing or collecting payments on the loans; (d) remanded for a new trial on punitive damages; (e) granted the Plaintiffs' request for attorneys' fees on appeal and remanded the matter to the State Court to determine a reasonable fee; and (f) denied the Plaintiffs' Appellate Sanctions Motion without explanation.

13. After applications to transfer the case to the Missouri Supreme Court were denied, the Court of Appeals, on April 28, 2011, issued its mandate remanding the punitive damages case for retrial against RFC, Household, and Wachovia.

**D.    The Remand Trial**

14. The State Court scheduled the remand trial (the "**Remand Trial**") to begin on March 12, 2012, and expected such trial to last three (3) to five (5) weeks.

6

ny-1053977

15. After the Court of Appeals' remand, RFC paid the Plaintiffs a total of $12,868,502.74,[6] which included all amounts affirmed by the Court of Appeals, plus the amounts awarded by the State Court after remand for prejudgment interest on the award of past interest paid and for postjudgment interest on the amounts affirmed by the Court of Appeals.[7]

16. In addition, it is my understanding that the Plaintiffs began comprehensive discovery into the conduct they alleged in connection with the Appellate Sanctions Motion, including taking the depositions of several of RFC's and Wachovia's former attorneys, and, on February 8, 2012, filed a motion for sanctions against RFC and Wachovia in the State Court based on the same alleged conduct (the "**Trial Sanctions Motion**").  The Trial Sanctions Motion sought, among other things, (a) entry of default judgment, (b) an order striking RFC's defenses to punitive damages, (c) an instruction informing the jury that RFC had committed fraud on the court, had hidden and destroyed documents and had done so in order to avoid discovery of evidence that was damaging to RFC's case and (d) monetary sanctions of up to $20 million against RFC and Wachovia.

17. The State Court denied requests to continue the Remand Trial or to postpone decision on the Trial Sanctions Motion until after the Remand Trial, and instead set the Trial

---

[6] The $12,868,502.74 was paid to the Plaintiffs in two payments, the first of which was on September 7, 2011 and the second of which was on October 5, 2011.

[7] On August 29, 2011 and September 16, 2011, the State Court issued the Partial Judgment & Order and the Nunc Pro Tunc Order, respectively.  The Partial Judgment & Order awarded the Plaintiffs $1,423,100.55 in postjudgment interest on the compensatory damages against RFC, $1,121,604.51 in prejudgment interest on the award of past interest paid against RFC, and $767,214.34 in postjudgment interest on the award of statutory attorneys' fees against RFC.  The Nunc Pro Tunc Order awarded the Plaintiffs an additional $1,868,949 in prejudgment interest on the award of past interest paid against RFC to correct for the State Court's miscalculation in the Partial Judgment & Order.  Additionally, postjudgment interest continued to accrue at a rate of 9% per year between the time that the Partial Judgment & Order and the Nunc Pro Tunc Order were entered and the time that RFC made the payments to the Plaintiffs (the "**Accrued Interest**").  RFC paid the following amounts in Accrued Interest: $11,031.75 in additional postjudgment interest on the compensatory damages against RFC; $2,489.04 in postjudgment interest on the award of prejudgment interest on past interest paid against RFC; $5,947.38 in additional postjudgment interest on the award of statutory attorneys' fees against RFC; and $17,051.08 in postjudgment interest.

7

Sanctions Motion for a week-long evidentiary hearing beginning March 5, 2012, with the Remand Trial beginning on March 12, 2012.

18.   The Plaintiffs also filed a motion pursuant to the Court of Appeals' award of attorneys' fees (the "**Attorneys' Fees Motion**").  By the Attorneys' Fees Motion, the Plaintiffs requested a total award of $6,708,456.50 (twice the amount of actual fees incurred by the Plaintiffs over the three-year period between the end of the Initial State Court Trial and the Remand Trial), of which $2,780,365.38 was attributed to RFC.  The Attorneys' Fees Motion was set for further briefing and decision after the Remand Trial.

### E.   The Settlement[8]

19.   On February 27, 2012 (the "**Settlement Date**"), the Plaintiffs and RFC entered into the Settlement Agreement.  The parties to the Settlement Agreement include RFC, and various affiliated entities and individuals, on the one hand, and the Plaintiffs and certain members of the Litigation Class (the "**Mitchell Settlement Class**"),[9] on the other hand.  The Settlement Agreement addresses the Plaintiffs' remaining punitive damages claims against RFC with respect to the 248 loans held by the approximately 365 members of the Mitchell Settlement Class as well as any purported liability stemming from the Trial Sanctions Motion, thereby eliminating the risk of an allowed punitive damage claim that could exceed the original $92 million award and an additional award of potentially $8 to $20 million in monetary sanctions

---

[8] This Declaration summarizes several aspects of the Settlement Agreement.  Nothing in this Declaration is intended to or should be considered to alter, amend, limit, expand or otherwise interpret the terms of the Settlement Agreement.

[9] More specifically, the Mitchell Settlement Class includes all members of the Litigation Class that did not timely exclude themselves from the Litigation Class as certified by the State Court on December 8, 2006; provided, however, that the Mitchell Settlement Class does not include any members of the Litigation Class who obtained an MCR loan that was not purchased by, assigned to, serviced by and/or master serviced by RFC.

8

against RFC.[10]  On April 16, 2012, the Mitchell Settlement Class received preliminary certification from the State Court.

20.    Under the terms of the Settlement Agreement, RFC agreed to the payment of $14.5 million to the Mitchell Settlement Class and an additional $2,780,365.38 million in attorneys' fees[11] (collectively, the "**Mitchell Settlement Amount**").  I believe this to be a favorable agreement, particularly in light of the result from the Initial State Court Trial, and do not believe that the Mitchell Settlement Class would agree to a resolution upon better terms than those provided.

21.    Moreover, it is my understanding that the terms of the Settlement Agreement provide that the Mitchell Settlement Amount will be paid to the members of the Mitchell Settlement Class in proportion to each member's share of the Net Distributable Settlement Fund, which is the Mitchell Settlement Amount less: (a) the amount of any awards for attorneys' fees or attorney compensation approved by the State Court and awarded to Plaintiffs' counsel and (b) any interest earned and attributable to the amount of such awards while in escrow.  Specifically, the Plaintiffs are seeking payment of $25,000.00 of the Mitchell Settlement Amount as an incentive award, counsel to the Mitchell Settlement Class is seeking payment of $6,487,749.32 of the Mitchell Settlement Amount as attorneys' fees and $57,779.28 of the Mitchell Settlement Amount as reimbursement for a share of litigation costs and expenses since the remand, and the remaining portion of the Mitchell Settlement Amount is to be paid to the members of the Mitchell Settlement Class.

---

[10] The difference in the number of loans and the number of potential claimants is due to certain loans involving multiple borrowers and certain borrowers filing for bankruptcy protection, resulting in the substitution of a bankruptcy trustee as the claimant.

[11] The approximately $2.78 million in statutory attorneys' fees was paid in full by RFC to Plaintiffs' counsel on March 2, 2012 in resolution of the Attorneys' Fees Motion.

9

22. In light of the fact that the Mitchell Settlement Class, the Plaintiffs and counsel to the Plaintiffs will each receive a portion of the Mitchell Settlement Amount (upon the Motion being granted), it is my further understanding that the Plaintiffs and their counsel agree that the proceeds of the Allowed Mitchell Claim will be allocated in the following manner: (a) Plaintiffs' counsel will have a claim for the amount that the State Court approves, provided that such award does not exceed $6,487,749.32 in attorneys' fees and $57,779.28 in litigation costs and expenses, (b) the Plaintiffs will have a claim for an incentive award for the amount that the State Court approves, provided that such amount does not exceed $25,000 and (iii) the Mitchell Settlement Class will have a claim for the sum of $14.5 million less the approved amounts of the allowed general unsecured claims for the Plaintiffs and Plaintiffs' counsel set forth in items (i) and (ii) above.

23. I further believe that several factors support RFC's decision to enter into the Settlement Agreement and to consummate the Settlement Agreement in the Chapter 11 Cases, including, without limitation, that:

(a) at the time of the Settlement Date, the State Court had either sustained, sustained by agreement, or withheld ruling on all of the Plaintiffs' motions in limine, which included precluding RFC from (i) arguing that it had been adequately punished by the awards of compensatory damages, prejudgment and postjudgment interest, and attorneys' fees that far exceeded the prohibited fees at issue and (ii) presenting evidence of any economic benefits that the Plaintiffs received from their loans, each of which are defenses that RFC would have raised in response to the Plaintiffs' request for punitive damages during the Remand Trial;

(b) research indicated that the jury pool in Jackson County, Missouri had become significantly less favorable to financial institutions since the Initial State Court Trial due to the economic crisis;

(c) recent Missouri decisions regarding due process limitations on punitive damages awards suggested that higher ratios of punitive damages were reasonable, and although the Court of Appeals had reversed the previous punitive damages award, that reversal was based on instructional error and

10

ny-1053977

        provided no guidance regarding the due process standards at issue before the State Court;

(d)     recent Missouri decisions concerning the scope of the punitive damages multiplier suggest the potential for greater liability than was originally awarded by the State Court; and

(e)     the Mitchell Settlement Class will only be awarded an allowed claim.

24.     The Settlement Agreement was executed on February 27, 2012 and preliminary approval of the Settlement Agreement was obtained on April 16, 2012. However, after notice of the Settlement Agreement was given to the Mitchell Settlement Class (none of whom opted out), but before final approval of the Settlement Agreement was obtained from the State Court and the $14.5 million was paid to the Mitchell Settlement Class, the Debtors commenced these Chapter 11 cases.

25.     Following further negotiations with counsel to the Plaintiffs, the Plaintiffs agreed that in lieu of receiving payment of the $14.5 million settlement amount, the Mitchell Settlement Class would receive an allowed general unsecured claim in the amount of $14.5 million.

26.     A condition precedent to effectiveness of the Settlement Agreement is that final approval must be obtained by the State Court.

27.     If the Settlement Agreement is not effectuated and the Debtors were to proceed objecting to the claims related to the matters at issue in the Remand Trial and the Trial Sanctions Motion, then the Debtors would risk the allowance of a claim similar to or higher than the amount of the original punitive damages judgment as well as a further award of $8 to $20 million in monetary sanctions against RFC. Moreover, based on the duration and complexity of the Initial State Court Trial and the addition of the Trial Sanctions Motion, the Debtors estimate that if RFC litigated the issues involved with the Remand Trial before the State Court, it would expend approximately $1-2 million in fees and expenses.

11

ny-1053977

28.     Consequently, after an assessment of the possibility of success of the litigation and the benefit of the settlement, approval of the Settlement Agreement is in the best interest of the Debtors' estates and creditors because (a) RFC will obtain the benefit of resolving all of the Released Claims (as defined in Section 2.23 of the Settlement Agreement) by the Plaintiffs and the Mitchell Settlement Class against RFC and any other of the Released Persons (as defined in section 2.22 of the Settlement Agreement) and (b) the Debtors will avoid needing to participate in protracted and costly litigation or claims resolution proceedings that may distract key parties from these Chapter 11 cases and could ultimately result in an award of damages that vastly exceed the Mitchell Settlement Amount.

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on November 12, 2013

> By:  /s/ William R. Thompson
> William R. Thompson
> General Counsel for Residential Funding
> Company, LLC

ny-1053977