# **EXHIBIT 5**

## **Appellate Sanctions Motion**

ny-1053977

IN THE MISSOURI COURT OF APPEALS
WESTERN DISTRICT

| | |
|---|---|
| STEVEN AND RUTH MITCHELL, | |
| Plaintiffs-Respondents, | Consol. Appeal No. WD70210 |
| vs. | |
| RESIDENTIAL FUNDING CORPORATION, et al., | |
| Defendants-Appellants. | |

**MOTION TO DISMISS APPEALS NOS. WD70244 AND WD70210
AND AWARD OF MONETARY SANCTIONS
BASED UPON PLAINTIFFS' POST-TRIAL DISCOVERY OF
FRAUD PERPETRATED ON THE COURT, JURY AND PLAINTIFFS**

Plaintiffs-Respondents, on behalf of themselves and the Class, respectfully move the Court to dismiss, with prejudice, Appeal Nos. WD70244 and WD 70210 filed by Defendants-Appellants Wachovia Equity Serving, LLC ("Wachovia") and Residential Funding Company, LLC and Homecomings Financial, LLC ("the RFC Defendants") and impose jointly a monetary assessment as sanctions for the most serious of frauds repeatedly perpetrated on the court, jury and Plaintiffs by Wachovia and the RFC Defendants during the proceedings below. The fraud was discovered, post-trial, only because of the discovery by Plaintiffs' Counsel of a continuation of this same fraud perpetrated in a different case involving defendant Wachovia, whose counsel in that case was trial counsel here for the RFC Defendants.

Plaintiffs request the dismissal of the two appeals and a joint monetary sanction of $8-20 million but no less than $8 million against Wachovia and the RFC Defendants because severe sanctions are necessary to punish and deter Wachovia, the RFC Defendants and other similarly motivated or situated litigants from attempting and/or perpetuating the same type of fraud. That

1

fraud and its particulars are described in the accompanying *Suggestions in Support* ("*Suggestions*"), which detail the fraud, its long history, the circumstances of its discovery by Plaintiffs and the great lengths that Wachovia and the RFC Defendants pursued to maintain the secrecy of the concealed documents.

## The Fraud

As explained in detail in the accompanying *Suggestions* which are adopted and incorporated, Plaintiffs have, after the judgment was entered in this lawsuit, discovered that Wachovia with the participation, knowledge, concurrence, assistance and knowing silence of the RFC Defendants, deliberately and intentionally concealed numerous and critical documents and records (in excess of 20,000 pages) from Plaintiffs during the proceedings below.

This case is all about illegal second mortgage loan fees and resulting illegal interest charged to the Plaintiffs and the Class and, for punitive damage purposes, the conduct of the Defendants regarding such illegal fees and interest. Wachovia and the RFC Defendants vigorously jointly defended this action by asserting that it was the "industry standard or practice" for indirect lender/purchasers to **not** review the loans for state law fee restrictions and to instead solely rely on the originating lender for state law compliance. The records intentionally concealed by Wachovia and the RFC Defendants unequivocally show, in direct contravention of evidence it and other defendants presented at trial, that Defendants **could and did** review second mortgage loans for compliance with Missouri law at the time of purchase, using fee charts or "matrices." The concealed documents further demonstrated that the practices of Wachovia, one of the largest, if not the largest purchaser of loans in the secondary market, directly contradicted the alleged "industry standards and practices" evidence and defense presented jointly by the RFC Defendants and Wachovia in the trial of this case. The claimed "industry practices" defense was

premised on the blatantly false assertion that the purchasers did not review purchased loans for state law fee restrictions but rather solely relied on the loan originators representations and warranties that the loans complied with state law. That defense was used by the RFC Defendants and Wachovia as part of their defense to not only the actual damages, but most importantly to the punitive damage phase of the trial. Indeed, it is still being argued on appeal. The RFC Defendants' participation in, knowledge of and silence about Wachovia's concealment of the documents allowed the RFC Defendants and Wachovia to make their "industry standards and practices" defense. The concealed documents would have laid bare the defense by unequivocally establishing that it **was not** industry practice to merely rely on loan originators to ensure that loans complied with applicable state law. Furthermore, the concealed documents also demonstrated that loan purchasers could and did review loans for state law compliance! Those concealed facts would have been additional persuasive evidence that RFC by using its intentional "blind eye" approach was, at a minimum, recklessly indifferent as to whether loans it purchased were illegal.

During discovery, and notwithstanding the trial court's order compelling production, Wachovia intentionally and contumaciously concealed and refused to produce its state fee matrix records to Plaintiffs. Incredibly, it asserted in filed pleadings and in argument (including its closing argument to the jury) that such records "did not exist" and "could not exist."

On the eve of trial Plaintiffs moved the trial court to require production and impose sanctions for Wachovia's refusal to produce such records. The trial court judge, The Hon. Justine E. Del Muro, pointedly resolved the matter as follows:

> THE COURT: You know what, there is a lot of that [allegations of holding back documents] going on here. Plaintiffs are accusing you guys of doing the same thing with respect to the matrix and other documents. I don't know how to flush that out. ***The problem with this kind of paper litigation is it's just too***

3

> *convenient for the parties to say, I don't know where the document is.* It's just too convenient and I don't know how to address that issue.
>
> *And entering an order demanding them [the defendants] to produce documents when you [the attorneys] are all officers of court representing to me that you've produced everything and anything and I've got to live with that.*

**Exhibit 1**, (TR-347:10-24) (bracketed material and emphasis added).

What the court and Plaintiffs did not know at the time of Judge Del Muro's prescient ruling and warning was that such documents actually existed and Wachovia and the RFC Defendants had already intentionally concealed such documents and would continue to cover up that concealment throughout the trial and post-trial proceedings in order to advantage themselves. For example, whether Wachovia had or used "fee matrices" to review loans it purchased for compliance with state law fee restrictions was a critical core fact issue in the case. And, Wachovia, in response to *Plaintiffs' Renewed Motion for Sanctions,* before the trial represented that:

"...*such a rate fee matrix does not and never did exist*"[1]

Not content to just defend with an untruth, Wachovia repeated the lie in its *Motion in Limine No.5* to prohibit any discussion of a fee matrix by the Plaintiffs. Wachovia again represented:

"**. . . no such document has ever existed or was ever used.**"[2]

Those statements were absolutely false when made and Wachovia and the RFC defendants[3] knew they were false. In truth, as Plaintiffs have recently learned, the fee matrices did exist and Wachovia did use them to review purchased loans despite its false assertions to the

---

[1] See **Exhibit 16**, *Opposition to Plaintiffs' Renewed Motion for Sanctions*, dated November 28, 2007.
[2] See **Exhibit 18**, *Motion in Limine No.5 to Exclude Evidence Regarding the Alleged Existence of a State Fee Matrix Created by the Money Store* dated November 29, 2007.
[3] The RFC Defendants knew these representations to the Court were false because the RFC Defendants, through their agents and attorneys had been furnished the very fee matrices.

4

contrary. *See* **Exhibit 55**. Even more astounding, Wachovia's lawyers and the RFC Defendants' lawyers each had the matrices in their respective files at the time these false statements were made. *See* **Exhibits 8, 54**.

Not only did Wachovia with the participation, knowledge and concurrence of the RFC Defendants conceal documents, it and the RFC Defendants furthered the fraud and repeatedly used the concealment to their advantage in the litigation. In stark contrast to the content of the concealed documents, Wachovia consistently through its examination, cross examination and argument asserted that fee matrices "could not" and "did not exist" and that it did not review fees on purchased loans for compliance with state law fee restrictions. As but two examples of this knowingly false argument, Wachovia in its closing argument, stated:

> *"Because of the magnitude and complexity of applying all these separate laws and regulations of 50 different states, The Money Store [Wachovia] could not practically determine whether each loan met all these state requirements."* [4]

\*\*\*

> *"Now, nobody ever produced or had ever seen any kind of spread sheet or matrix that any correspondent lending department ever used."* [5]

At the time Wachovia made these statements, its lawyers had **in their files** the concealed documents which revealed Wachovia "could" not only "practically" determine whether the fees charged on a loan violated state fee requirements but had, in fact, done so by the creation and use of such fee matrices. Particularly insulting is the closing argument that *"nobody ever produced or had ever seen any kind of spread sheet or matrix...."* Ironically, that was true only because Wachovia and the RFC Defendants had fraudulently concealed the documents. In fact, Wachovia and the RFC Defendants had, indeed, seen and received such fee matrix documents. Just these two examples among many make undeniably clear Wachovia's motive and malicious

---

[4] *See* **Exhibit 1**, TR 3971:15-19
[5] *See* **Exhibit 1**, TR 3972:14-16

5

intent.

The RFC Defendants, who, unacceptably, sat smugly silent during the fraud perpetrated on the court, the jury and the Plaintiffs by Wachovia's argument, also participated in and profited by Wachovia's concealment and argument because the RFC Defendants' "industry standards and practices" defense would have been wholly contradicted by the concealed documents, which proved that Wachovia, one of the largest secondary market purchasers in the industry, did, in truth, review loans for compliance with state law fee restrictions rather than rely on the loan originator. In fact, the RFC Defendants spent a great deal of effort through examination, cross-examination, expert testimony and argument espousing the position that the "industry practice" was not to review loans for compliance with state law fee restrictions and that the RFC Defendants acted consistently with this claimed "industry practice." However, the concealed documents would have revealed the truth about Wachovia's practices - that Wachovia did in fact review loans for compliance with state law fee restrictions. Those facts which were known to the RFC Defendants made their "industry practice" position difficult if not impossible to present with any credibility. Thus, because the RFC Defendants were so heavily invested in the assertion of this sham position, they had obvious reasons and motives to participate, as they did, in the fraud and its continuation.

Three examples, among many, illustrate the RFC Defendants' persistent assertion and use of the sham "industry standard" position which the concealment by both Wachovia and the RFC Defendants made possible. The following excerpts from the RFC Defendants' opening statement, elicited testimony and the RFC Defendants' closing argument are instructive:

*Opening Statement Excerpt*:

"But RFC did not check to see if they – each and every loan complied with each and every state law that could apply to the loan. Now, you are going to hear evidence in this

6

case from two of our expert witnesses that RFC's actions were completely consistent with the industry practice."[6]

*Elicited Testimony Excerpt*:

"Q. What is that opinion?
A. It is my opinion that RFC's practices were absolutely consistent with the rest of the industry."[7]

*Closing Argument Excerpt*:

"And there was a number of – a few different witnesses testified about how RFC's methods and the checking that RFC was doing was consistent with what others in the industry were doing."[8]

The concealed documents revealed that the RFC Defendants' practices were **not** "completely" or "absolutely" consistent with either the "rest" of the industry or what "others" in the industry were doing because Wachovia, who was not only one of the "rest" or "others" in the "industry," but, perhaps, the largest in the "industry," could and did review loans for illegal state fees via use of the state fee matrices. Because the RFC Defendants made the "industry standard" argument the centerpiece of their defense, they could not and deliberately did not come clean and disclose the fraud that Wachovia and they had continuously perpetrated on the court, the jury and the Plaintiffs. Instead, they intentionally made arguments and presented evidence they knew to be false in order to bolster the defenses of all of these concealing defendants. The conspiracy to withhold the truth by concealment of literally thousands of documents and then to subsequently cover up the concealment was due to the joint defense agreement between the Defendants in the *Mitchell* matter, the industry standard defense jointly asserted by Wachovia and the RFC Defendants as well as the cross representation by the same lawyers in the *Mitchell* case and the *Schwartz* case (see below). That resulted in a "one for all and all for one approach" not only in

---

[6] *See* **Exhibit 1**, TR- 930:2-8 RFC Defendants' opening statement.
[7] *See* **Exhibit 1**, TR- 3417:24-2418:2 Mr. David Lykken's testimony.
[8] *See* **Exhibit 1**, TR- 3926:10-14 RFC Defendants' closing argument.

7

this *Mitchell* case, but also in the *Schwartz* case where Wachovia was a defendant and in the other second mortgage cases in which the RFC Defendants are defendants.

### Discovery of the Fraud

Subsequent to the entry of final judgment in *Mitchell*, and through an investigation by the Plaintiffs' Counsel in another matter involving class action claims for violations of Missouri's Second Mortgage Loans Act by Wachovia and others, *Schwartz v. Bann-Cor Mortgage, et al.*, ("*Schwartz*"), Case No. 00-CV-226639 (Circuit Court of Jackson County, Div. 14), the undersigned counsel for the Plaintiffs discovered that the very records that Wachovia repeatedly represented "did not exist" and "could not exist" were, in fact, in its possession and in the possession of its counsel at the very same time those representations were being made, and at the time the trial court pointedly warned all counsel of their obligations as "officers of the court." These concealed records consisted of the very fee charts and matrices used by Wachovia in its operations, records identifying its practices and procedures, and internal reports which unequivocally demonstrated Wachovia's belief that it **was not justified** in relying upon its originating lender's representations and warranties.

This investigation also revealed that Wachovia's misconduct was clearly deliberate and intentional, and not merely the product of ignorance of the existence of the records by Wachovia's transitional employees or a lack of diligence to obtain them. Instead, it is irrefutable that Wachovia and the RFC Defendants were determined to conceal the records from the Plaintiffs and prevent their use at trial through a fraud perpetrated on the trial court, the jury and the Plaintiffs. The fraud involved the preparation of false responses to discovery, false deposition and trial testimony, false argument and misrepresentations in filed pleadings. All were undertaken in order to benefit Wachovia's defense, the RFC Defendants' defense, and the joint

8

defense and trial strategy of the Defendants in this action as well as serve the defense interests of Wachovia in the related *Schwartz* matter and the RFC Defendants in other litigation.

Moreover, the Plaintiffs' investigation further revealed that the RFC Defendants and their counsel were well aware of this fraud and discovery misconduct as it was being perpetrated, but refused to disclose the misconduct to the court or Plaintiffs or to remedy it as officers of the court because their defense was benefited by Wachovia's concealment of such records. Specifically, Plaintiffs learned through their investigation that Wachovia exchanged the records it was concealing from Plaintiffs and the trial court with the RFC Defendants and their counsel prior to the trial in this matter in order to coordinate their joint defense and trial strategy in this *Mitchell* matter which was, in substantial part, based upon the claimed "industry standards" defense. Wachovia and the RFC Defendants all had motive and opportunity to collude in Wachovia's fraud on the court because the records that Wachovia and the RFC Defendants possessed and deliberately concealed directly controverted and undermined the "industry standards" joint defense and trial strategy in *Mitchell*.

Importantly, during the time that Wachovia was defending the class action claims in the *Mitchell* matter, it was also defending the *Schwartz* matter, which was pending in another division of the Circuit Court of Jackson County, Missouri. In this matter, *Mitchell*, Wachovia was represented by lawyers at the Husch & Eppenberger law firm (n/k/a Husch Blackwell Sanders LLP). In the *Schwartz* matter, however, Wachovia was represented by the Reed Smith and Rasmussen, Willis, Dickey & Moore, law firms – the same lawyers that represented the RFC Defendants in *Mitchell*.[9] The joint defense of Wachovia in the separate *Mitchell* and *Schwartz* actions by both sets of lawyers as well as the joint defense agreement that governed their defense

---

[9] The Plaintiffs note that the firms of Bryan Cave LLP and Meyer Brown, LLP have entered their appearance as counsel for the RFC Defendants' on appeal.

9

12-12020-mg    Doc 5700-5    Filed 11/12/13    Entered 11/12/13 22:20:28    Exhibit 5 -
Appellate Sanctions Motion    Pg 11 of 16

of Wachovia and the RFC Defendants in *Mitchell* further provided Wachovia and the RFC Defendants with motive and opportunity to collude and participate in Wachovia's fraud on the court in *Mitchell*. That motive and opportunity resulted in the initial concealment and its continued cover up until the persistence of Plaintiffs' Counsel finally discovered an index of documents that "outed" the fraud and made its continued concealment impossible.

The *Suggestions* accompanying this *Motion* provide evidentiary and chronological detail to Wachovia's and the RFC Defendants' fraud on the court, jury and Plaintiffs, and provide this Court with the factual, evidentiary and legal basis for the requested sanctions. Indeed, the evidence upon which Plaintiffs rely to support this *Motion* and requested sanctions is clear, convincing and irrefutable. Wachovia's deliberate concealment of records is absolutely proven not only by the Plaintiffs' discovery of the concealed records themselves in the *Schwartz* matter, but also by the deposition testimony of Wachovia's own lawyers given in the *Schwartz* case. The RFC Defendants' knowledge, concurrence, participation and collusion in the fraud is also absolutely proven by their counsel's communications with Wachovia's lawyers as part of their joint defense and trial strategy, their knowledge, their conduct in the *Mitchell* matter as well as their lawyer's conduct and statements in filed pleadings and affidavits in the *Schwarz* matter.

### The Relief Requested

Plaintiffs are mindful of the fact that they obtained substantial jury verdicts of compensatory and punitive damages against Wachovia and the RFC Defendants, and a third defendant in this matter, Household Finance Corp. III. It is for that reason that Plaintiffs are ***not*** asking the Court to vacate the judgment or to order a new trial against Defendants, or any of them. Such an Order vacating the judgment or granting a new trial at this juncture would serve and reward only the wrongdoers and would not serve as either a punishment or effective

10

deterrent to Wachovia and the RFC Defendants or similarly situated defendants. Instead, a new trial is exactly what they hope to achieve by this appeal and thus a new trial would reward each of the Defendants for Wachovia's and the RFC Defendants' fraud and misconduct, and thereby, encourage similarly motivated defendants to flout the rules of discovery and discovery orders of trial courts knowing that, if they lose, the Plaintiffs' only remedy is to seek a new trial. That result would extend absurdity to a new level. Further, such an Order would be unfair to the Plaintiff Class and would serve no purpose but to penalize the Plaintiff Class for Defendants' misconduct. Instead, the Plaintiffs are asking this Court to use its inherent equitable power, an exercise clearly permitted by the law, and enter sanctions against both Wachovia and the RFC Defendants, dismissing their appeals and order a joint monetary sanction against them. These sanctions are not as severe as could have occurred in the trial court below, because instead of striking their pleadings and entering judgment against the defendants, these Defendants were permitted to try the case and pursue their defenses on the merits, but lost, even in the face of concealing critical evidence. Their position has already been heard.

At first blush, one might argue the "no harm, no foul" idiom because, notwithstanding their intentional concealment of critical evidence, there were judgments consisting of actual and punitive damages entered against these wrongdoing Defendants. Even if it were true, that argument is misplaced because it would encourage parties to conceal materials, knowing that the worst that can happen is a new trial if the concealment doesn't produce a winner and if there is a loss, it will be mitigated by a trial that has the truth, but not the whole truth.

Moreover, in this case there was indeed harm. One of these Defendants' primary issues on appeal is the amount of the punitive damages awarded against them. And, with an unmasking of the concealed materials, there are several additional factors that support such punitive awards,

11

none of which are part of the record before this Court. First, the concealment itself is very persuasive evidence of the reprehensibility of these Defendants' conduct and supports the award of punitive damages. Second, the falsity of their defenses (including the "industry standards" defense) is evidenced by the concealed documents. Third, the concealed documents and the concealment itself are additional evidence of the Defendants' knowledge that the fees were illegal. Fourth, the concealment is very strong evidence of the Defendants' "evil motive" and/or "reckless indifference" of the Plaintiffs' rights. Fifth, the subsequent intentional cover-up, its duration and the circumstance surrounding the discovery of the fraud are very powerful additional facts probative on the Defendants reprehensibility, "evil motive" and "reckless indifference." So the argument that there has been "no harm and no foul" is simply without merit.

The only just, reasoned, and fair course of action for the Court to take under the extraordinary circumstances presented here is for the Court to exercise its inherent and equitable discretion and authority over the parties, their attorneys and the circuit court, and directly sanction Wachovia and the RFC Defendants for their fraudulent conduct during the proceedings below by dismissing their appeals and entering an award of monetary sanctions. As the *Suggestions* detail, the fraud was enormous, it was longstanding, the arguments that it permitted were important, and it included affirmative actions in furtherance of a cover-up. Ours is a judicial system founded upon the discovery and presentation of the truth and this type of fraud shakes the very foundations of our judicial system and betrays century's old trust that the citizenry should and must have in the integrity of the judicial system. It would be the ultimate irony if Wachovia and the RFC Defendants practiced a fraud on the court and thereby make obvious their disrespect for the judicial system, but yet be able to ask this same judicial system to

save them on appeal by vacating the judgments against them. The misconduct of Wachovia and the RFC Defendants is intolerable, improper, and can in no way be excused or condoned. It must be countered with the harshest of sanctions.

### PLAINTIFFS' ALTERNATIVE MOTION TO REMAND APPEAL NOS. WD70244 AND WD70210 TO THE CIRCUIT COURT FOR FURTHER, LIMITED PROCEEDINGS ON THE PROPRIETY OF AN AWARD OF SANCTIONS

Although Plaintiffs do not believe it is required, should the Court determine that a hearing is necessary with respect to this matter, and that the Court is unable for any reason as an appellate court to conduct such a hearing, then Plaintiffs alternatively request that the Court remand Appeal Nos. WD70244 and WD70210 to the trial court for limited proceedings to address the propriety, type and amount of sanctions to be awarded to Plaintiffs. The trial court has extensive experience with the parties, the discovery and the issues in the matter which would be very helpful to expeditious consideration and informed findings with respect to this motion. Given that the sanctions requested include dismissal of the appeals, Plaintiffs further suggest that the order on remand also appoint and designate the trial judge as a Special Master under Rule 68.03 so that there is no question about the authority of the trial court to dismiss or recommend dismissal of the appeals.

Dated: November 25, 2009

Respectfully Submitted,

WALTERS BENDER STROHBEHN
&. VAUGHAN, P.C.

By /s/ Frederick Walters
R. Frederick Walters - Mo. Bar 25069
Kip D. Richards - Mo. Bar 39743
David M. Skeens - Mo. Bar 35728
J. Michael Vaughan - Mo. Bar 24989
Garrett M. Hodes - Mo. Bar 50221
Bruce Nguyen – Mo. Bar 52893
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, MO 64196
(816) 421-6620
(816) 421-4747 (Facsimile)

ATTORNEYS FOR PLAINTIFFS AND
CLASS COUNSEL

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the above document was transmitted by email, hand-delivery of a cd or first class mail this 25th day of November, 2009 to:

Ann K. Covington
K. Lee Marshall
Bryan Cave, LLP
221 Bolivar Street
Jefferson City, MO 65101

and

Evan M. Tager
Miriam R. Nemetz
Craig W. Canetti
Mayer Brown, LLP
1909 K Street N.W.
Washington, D.C. 20006
*Attorneys for Defendants/Appellants, Residential Funding Company, LLC & Homecomings Financial, LLC*

Todd W. Ruskamp
Shook, Hardy & Bacon LLP
2555 Grand
Kansas City, Missouri 64108
*Attorneys for Defendant/Appellant Household Finance Corporation III*

R. Kent Sellers
Jennifer M. McAdam
Lothrop & Gage
2345 Grand Avenue
Suite 2800
Kansas City, Missouri 64108-2612

*Attorneys for Defendants/Appellants Wachovia Equity Servicing LLC (f/k/a HomEq Servicing Corporation f/k/a TMS Mortgage, Inc. d/b/a The Money Store)*

/s/ Roy Frederick Walters
Attorneys for Plaintiffs and Class Counsel

15