**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
)
In re:                                                            )    Case No. 12-12020 (MG)
                                                                  )
RESIDENTIAL CAPITAL, LLC, et al.,    )    Chapter 11
                                                                  )
                                            Debtors.      )    Jointly Administered
---------------------------------------------------------------------)

# DIRECT TESTIMONY OF RONALD J. FRIEDMAN

I, Ronald J. Friedman, under penalty of perjury, testify as follows:

1.  I am a member of the firm of SilvermanAcampora LLP ("SilvermanAcampora"), special counsel to the Official Committee of Unsecured Creditors (the "Committee") for Borrower-related issues in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").[1] As used herein, the term "Borrower" means a person who is or was a mortgagor under a mortgage loan originated, serviced and/or purchased or sold by one or more of the Debtors.

2.  I respectfully submit this witness statement, in lieu of direct testimony, on behalf of the Committee and in support of confirmation of the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Plan") [Docket No. 4153], as may be amended from time to time (the "Plan"). I will make myself available for cross-examination and further testimony at the hearing on confirmation of the Plan.

3.  I have read and am familiar with the terms and provisions of the Plan, the Disclosure Statement, as amended [Docket No. 4819] and the Plan Supplements [Docket No. 5342].

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

A.  **Retention of SilvermanAcampora**

4. The Committee retained SilvermanAcampora as special counsel for Borrower issues in these Chapter 11 Cases. I have directly supervised the team of SilvermanAcampora professionals providing services to the Committee.

5. Since its retention, SilvermanAcampora has represented the Committee with respect to (a) responding to questions and concerns of current and former Borrowers regarding these Chapter 11 Cases; (b) providing assistance to Borrowers regarding the chapter 11 process and developments in the Chapter 11 Cases; and (c) communicating with Borrowers, primarily through the creation and operation of a dedicated toll-free hotline, about Borrower-specific issues, including (i) matters relating to the bar date in the Chapter 11 Cases and the claims objection process, (ii) the interpretation and scope of the Supplemental Servicing Order [Docket No. 397], and (iii) the effect of these Chapter 11 Cases on individual current and former Borrowers. SilvermanAcampora has, under my supervision, received and responded to over 7,500 calls from Borrowers.

6. Both at the Debtors' request or on its own initiative, SilvermanAcampora has also affirmatively contacted Borrowers that have appeared in the Chapter 11 Cases, whether by filing motions for allowance of late-filed claim, motions for relief from the automatic stay, responses to omnibus claims objections or letters to the Court regarding various concerns of the individual Borrower. My firm has attempted to resolve these Borrower-specific matters without the need for the Court's intervention.

7. SilvermanAcampora also played a prominent role in the Borrower Claims reconciliation process. To help ensure that Borrowers receive an opportunity to support the allegations asserted in their Claims, SilvermanAcampora, working closely with the Debtors, and

other estate professionals, drafted special procedures to govern the administration of Borrower Claims. These procedures (the "Borrower Claims Procedures"), described in further detail below and approved by the Court on March 21, 2013, provided Borrowers with expanded procedural protections prior to the filing of a formal claims objection. In addition, SilvermanAcampora, as also described below, has reviewed and analyzed all Borrower Claims and has worked closely with the Debtors and other estate professionals to formulate a strategy to most efficiently and effectively address issues unique to Borrowers in these Chapter 11 Cases.

**B.**     **Borrower Claims Reconciliation**

8.     To date, 2,991 Individual Borrower Claims have been filed, asserting claims of approximately over $12.7 billion, in the aggregate.[2] In addition, 23 putative Borrower class action claims representing 16 pending or proposed putative class actions have also been asserted claiming damages in excess of $3.6 billion.

9.     SilvermanAcampora has reviewed the allegations contained in each Borrower Claim (and Borrower Class Action) to determine if the claim contained sufficient information to establish the priority and amount asserted and whether the claim was legally supportable. To the extent that the Borrower Claim did not contain adequate information, SilvermanAcampora worked with the Debtors and other estate professionals to obtain additional historical information from the Debtors' books and records and reviewed case dockets and substantive pleadings when the Borrower Claim was based on a pending state or federal court litigation.

10.    When appropriate, in accordance with the Claims Procedures, the Debtors sent letters (the "Request Letters") to Borrowers asking for supplementary supporting materials. In May and June 2013, the Debtors sent Request Letters to approximately 1,785 Borrowers requesting additional documentation in support of such claims. The overwhelming majority of

---

[2] The claim of one Borrower was filed in the amount of $10 billion.

3

Borrowers either did not respond to the Request Letters or did not provide a substantive response that supported the allowance of the claim. To the extent a Borrower responded and provided supporting information, SilvermanAcampora reviewed and analyzed that information.

11. It is my understanding that the Debtors separately reviewed the responses to the Request Letters and reviewed their books and records—including loan files, payment histories, internal loan servicing notes, litigation files and other relevant documents—to assess the basis and validity of each Borrower Claim. The results of these reviews were reported to SilvermanAcampora. To the extent that the Debtors determined that they were not liable on a Borrower Claim, the Debtors, with SilvermanAcampora's consent, filed an objection to that Borrower Claim. As a result of the Borrower Claims reconciliation process, the Debtors, with the consent of SilvermanAcampora, have filed 45 omnibus and Borrower-specific objections to Borrower Claims. To date, (a) 1,314 Borrower Claims totaling approximately $595.2 million have been expunged by Bankruptcy Court order or withdrawn by the Borrower, and (b) 878 Borrower Claims (including 35 unliquidated claims) are subject to a pending objection scheduled to be heard before the contemplated Effective Date. In addition to the filed objections, the Debtors have informed SilvermanAcampora that 230 additional Borrower Claims will be the subject of a claims objection that will be filed prior to the contemplated Effective Date.

12. It is my understanding that the Debtors are continuing to analyze 248 Borrower Claims (including 71 unliquidated Borrower Claims), but have advised SilvermanAcampora that there are likely grounds on which to object to such claims. 86 Borrower Claims relate to loans that are currently being serviced by Ocwen and others, and 162 relate to loans that are not being serviced (i.e., a foreclosure has already occurred). In each of these types of Borrower Claims, the current servicer has the ability to offer non-monetary relief such as loan modifications, debt

4

forgiveness and credit report adjustments, which relief may result in the voluntarily elimination or reduction of such Borrower Claim.

13. Finally, 385 Borrower Claims, in the face amount of $100,000 or less, have not yet undergone a substantive review. It is expected that this review will be done by the Borrower Claims Trustee after the occurrence of the Effective Date.

14. As a result of the substantive claims analysis and the claims reconciliation process described above, I am familiar with the Borrower Claims and understand the various types of those claims, and the likely ranges of the Debtors' liabilities with respect thereto.

C. **Plan Treatment of Borrowers and Borrower Trust True Up**

15. The Plan provides for the treatment of Borrower Claims through the establishment of a Borrower Claims Trust. (Plan. Art. IV.F) The Borrower Claims Trust will be funded with $57.6 million in Cash, less any amounts paid by the Debtors to or on behalf of holders of Allowed Borrower Claims as a cash settlement done outside of the Plan, in contrast to the Units that will be funding the Liquidating Trust. By funding the Borrower Claims Trust with Cash, holders of Allowed Borrower Claims will receive immediate Cash payments on account of their Allowed Borrower Claim and will eliminate any negative variation in the projected distributable value for unsecured creditors as the Debtors' assets are liquidated by the Liquidating Trust.

16. In addition, the Plan requires that Borrowers who receive insurance proceeds on account of their claims must return a portion of those recoveries to the Borrower Claims Trust. The funding of the Borrower Claims Trust, however, was subject to the Borrower Trust True-Up to the extent it was determined that the projected amount to be funded to the Borrower Claims Trust would be insufficient to provide holders of Allowed Borrower Claims with a recovery

5

percentage comparable to that received by the general unsecured creditors of the applicable Debtor Groups.  (Id., Art IV.F.6.)

17.    The Borrower Claims Trust will be administered by the Borrower Claims Trustee. (Plan. Art. IV.F).  Pursuant to the Borrower Claims Trust Agreement, the Borrower Claims Trustee is authorized to adopt a flexible approach to the resolution of Borrower Claims and will be vested with the authority to compromise Borrower Claims.  SilvermanAcampora expects to have a continuing role as counsel for the Borrower Claims Trust and will be able to assist the Borrower Claims Trustee in liquidating Borrower Claims and understanding the issues unique to these claims.  Once liquidated, the Borrower Claims Trust will be able to make immediate Cash distributions on account of Allowed Borrower Claims.

18.    Based upon SilvermanAcampora's analysis of the Borrower Claims, a review of the pending and concluded objections to Borrower Claims filed by the Debtors, my understanding of the settlements reached by the Debtors with respect to the Class Action Claims, and the Debtors' historical settlement information for Individual Borrower Claims, I believe that the holders of Allowed Borrower Claims will be treated fairly and equally with other similarly situated, but separately classified, General Unsecured Claims under the Plan and no Borrower Trust True-Up is needed.

* * * *

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed the 12th day of November, 2013, at Jericho, New York

/s/ Ronald J. Friedman
Ronald J. Friedman