**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | ) Case No. 12-12020 (MG) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

---

| | |
|---|---|
| RESIDENTIAL CAPITAL, LLC; <u>et al.</u>, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. Case No. 13-01343 (MG) |
| | ) |
| UMB BANK, N.A., IN ITS CAPACITY AS INDENTURE TRUSTEE FOR THE 9.625% JUNIOR SECURED GUARANTEED NOTES, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

---

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the estate of the Debtors, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Adv. Case No. 13-01277 (MG) |
| v. | ) |
| | ) |
| UMB BANK, N.A., AS SUCCESSOR INDENTURE TRUSTEE UNDER THAT CERTAIN INDENTURE, dated as of June 6, 2008, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

---

1

## JOINT PRETRIAL ORDER (PROPOSED)

The parties having conferred among themselves and with the Court pursuant to Fed

R. Civ. P. 16, as incorporated by Fed. R. Bankr. P. 7016, the following statements, directions and

agreements are adopted as the Pretrial Order herein.

## I.    NATURE OF THE CASE

The above-captioned proceedings (together, the "Consolidated Proceedings") are

adversary proceedings commenced by the above-captioned debtors and debtors in possession

(collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the

"Committee" and, together with the Debtors, the "Plan Proponents"), on behalf of the Debtors'

estates, against UMB Bank, N.A. ("UMB"), in its capacity as successor indenture trustee (in

such capacity, the "Notes Trustee") for the 9.625% Junior Secured Guaranteed Notes due 2015

issued by Debtor Residential Capital, LLC (the "Junior Secured Notes"); Wells Fargo Bank,

N.A. ("Wells Fargo"), in its capacity as third priority collateral agent and collateral control agent

(in such capacities, the "Third Priority Collateral Agent") for the Junior Secured Notes; and the

ad hoc group of holders of Junior Secured Notes (together with the Notes Trustee and the Third

Priority Collateral Agent, the "JSNs" or the "Defendants").

The Consolidated Proceedings have been divided into two phases, which are

described in the parties' joint Statement of Issues, dated August 23, 2013 [Adv. No. 13-01277,

Dkt. No. 84; Adv. No. 13-01343, Dkt. No. 45] (the "Statement of Issues"). The Statement of

Issues set forth those issues designated as Phase I and those issues designated as Phase II. Trial

on Phase I of the Consolidated Proceedings was held from October 15 through October 23, 2013,

with closing arguments held on November 6, 2013.

In Phase II of the Consolidated Proceedings, the parties seek to have the Court determine, the causes of action and issues identified in Section V, *infra*.[1]

The Phase II issues are being tried in tandem with Plan Confirmation. Issues, claims, or defenses not raised herein are not waivers of those issues, claims, or defenses for purposes of Plan Confirmation.

## II.    BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and (e); this is a civil proceeding arising under, arising in or related to cases under Title 11 of the United States Code (the "Bankruptcy Code"). This proceeding is referred to this Court pursuant to 28 U.S.C. § 157(a) and the Standing Order of Referral of Cases to Bankruptcy Judges in this District.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (F), (K), (L), (M), and (O).

The Plan Proponents contend that the Court has authority to enter final orders and judgments with respect to all claims asserted by the Plan Proponents against the JSNs and all counterclaims asserted by the JSNs against the Plan Proponents. If it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution, Plan Proponents consent to entry of final orders and

---

[1] The Plan Proponents contend that all Phase II issues can be considered as resolved in connection with approval of the Global Settlement and confirmation of the Plan, and that, if the Plan is confirmed, all Phase II issues will have been resolved and no further adjudication will be necessary. The Defendants disagree, and contend that (a) approval of the Global Settlement does not compel confirmation of the Plan, and (b) whether or not the Court accepts or approves the Global Settlement and/or confirms the Plan, there will have to be a Phase II trial if the Court has not already found in Phase I that the JSNs are entitled to post-petition interest.

judgments by this Court with respect to all claims asserted by the Plan Proponents against the JSNs and all counterclaims asserted by the JSNs against the Plan Proponents. If it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution, the JSNs do not consent to the entry of final orders and judgment by this Court with respect to all claims asserted by the Plan Proponents against the JSNs and all counterclaims asserted by the JSNs against the Plan Proponents.

## III.   STIPULATED FACTS

In addition to those facts stipulated in the Revised Joint Pretrial Order [Adv. No. 13-01343, Dkt. No. 105; Adv. No. 13-01277, Dkt. No. 161] and the So Ordered Stipulation Amending the Pretrial Order [Adv. No. 13-01277, Dkt. No. 160; Adv. No. 13-01343, Dkt. No. 104] to the extent relevant to Phase II, the parties admit, stipulate and agree that:

1.   On or about June 6, 2008, Residential Capital, LLC ("ResCap"), as issuer, GMAC-RFC Holding Company, LLC ("GMAC-RFC"), GMAC Mortgage, LLC ("GMACM"), GMAC Residential Holding Company, LLC ("ResHolding"), Homecomings Financial, LLC ("Homecomings"), and Residential Funding Company, LLC ("RFC"), as guarantors, entered into that certain Indenture (the "Notes Indenture") with U.S. Bank, National Association, as the original indenture trustee.

2.   Subsequently, ResCap, as issuer, and GMAC-RFC; GMACM; ResHolding; Homecomings; and RFC, as guarantors (the "Guarantor Debtors"), entered into the Amended and Restated Third Priority Pledge and Security Agreement and Irrevocable Proxy, dated as of December 30, 2009 (the "JSN Security Agreement").

3.   Pursuant to the JSN Security Agreement, the JSNs received a security interest in certain of the assets of ResCap and the Guarantor Debtors (the "JSN Collateral").

4

4.       The Intercompany Balances[4] were recorded and tracked by the Debtors.

5.       In certain instances, Intercompany Balances were forgiven to ensure that the Debtor entities would be in compliance with certain regulatory or contractual solvency and net worth requirements.

6.       In June and July of 2012, the Debtors filed their Schedules of Assets and Liabilities with the Court.

7.       On June 28, 2012, the Court appointed an examiner ("Examiner") to investigate and report on certain prepetition actions of the Debtors, including their transactions with Ally [Dkt. No. 536].

8.       On May 13, 2013, the Examiner issued its report (the "Examiner's Report") under seal.

9.       On May 23, 2013, the Debtors filed a motion seeking approval of the Debtors' entry into the PSA and related term sheets (the "PSA Motion").

10.     After the Court approved the PSA Motion, on June 26, 2013, the Examiner's Report was unsealed by the Court and became available to all parties for the first time [Dkt. No. 3698].

11.     On July 3, 2013, the Plan Proponents filed the Plan and related disclosure statement on July 4, 2013.  On August 16, 2013, the Plan Proponents filed the revised disclosure statement in support of the Plan (the "Disclosure Statement"), which the Court approved on August 23, 2013.

12.     On August 23, 2013, the Court entered an order approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code.

---

[4] "Intercompany Balance" shall be defined as it is in the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors, In re: Residential Capital, LLC, et al., No. 12-12010 (MG) (Aug. 23, 2013) [Dkt. No. 4819-2] (the "Plan").

Thereafter, the Plan Proponents filed the solicitation version of the Plan and Disclosure Statement [Dkt. No. 4819], and commenced soliciting votes on the Plan.

13.     As part of the Plan, various parties including the Debtors, the Creditors Committee, the Consenting Claimants, and Ally entered into a global settlement (the "Global Settlement") of a number of issues and claims among the claimants consenting to the Plan.

14.     The Global Settlement embodied in the Plan provides for, among other things, (a) the settlement of various claims against Ally and a grant to Ally of broad estate and third-party releases in exchange for a payment from Ally in the amount of $2.1 billion (the "Ally Contribution"); (b) a compromise of all Intercompany Balances, which include any related subrogation claims owed by any Debtor to any other Debtor; (c) a settlement of issues relating to substantive consolidation; and (d) a resolution of claims of (i) certain holders of residential mortgage-backed securities (the "RMBS Trust Claims"); (ii) certain monoline insurers (the "Monoline Insurer Claims"); and (iii) certain private securities litigation claimants (the "Private Securities Claims").

## IV.    PARTIES' CONTENTIONS

Except as to issues addressed in Phase I, the pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

### PLAINTIFFS' CONTENTIONS

The Plaintiffs' Contentions are organized as follows:

(i)     Overview of Plaintiffs' Contentions

(ii)    Burden of Proof

(iii)   Mootness

(iv)    Contentions Regarding Intercompany Balances

(v)     Contentions Regarding AFI Contribution

(vi)    Contentions Regarding Adequate Protection

(vii)    Contentions Regarding Subordination of Claims

(viii)    Contentions Regarding Default Interest and Fees

(ix)    Contentions Regarding Aggregation of Collateral

**(i)  Overview of Plaintiffs' Contentions[2]**

1.    The Phase I trial disposed of most of the major issues in these consolidated adversary proceedings, demonstrating, among other things, that the JSNs are undersecured and (pending limited issues to be resolved in Phase II) are not entitled to adequate protection because they failed to demonstrate their aggregate collateral has diminished in value during these cases.  Other issues, such as the Debtors' ability to release claims against AFI, settle Intercompany Balances, and resolve disputed issues relating to the subordination of RMBS Trust claims, monoline claims, and securities claims, will be conclusively resolved by confirmation of the Plan, and therefore for purposes of this adversary proceeding as well.  Assuming the Plan is confirmed, three limited issues remain: (i) whether the JSNs have liens on the Intercompany Balances or the AFI Contribution; (ii) if so, what the value of such liens was as of the Petition Date; and (iii) whether the treatment of the Intercompany Balances and AFI Contribution under the Plan causes a diminution in the aggregate value of the JSNs' collateral, thereby entitling them to an adequate protection claim.  All three issues should be resolved in the Plaintiffs' favor.

2.    First, neither the Intercompany Balances nor the AFI Contribution constitute the JSNs' collateral.  The JSNs' lien does not attach to the Intercompany Balances because the JSNs will not be able to demonstrate that such balances are "general intangibles"

---

[2] To the extent not resolved in Phase I, the Plaintiffs incorporate by reference their arguments and contentions from the Revised Joint Pretrial Order, Plaintiffs' Phase I Post-Trial Brief, and Plaintiffs' Proposed Findings of Fact submitted in connection with Phase I [Adv. No. 13-01277, Dkt. Nos. 161, 186, & 187, respectively].

covered by their lien.  The JSNs do not, and could not, have a valid lien on the AFI Contribution

because the Court has already held that they did not have liens on avoidance actions or

commercial torts and the remaining claims allegedly settled in the Global Settlement – contract

claims – were not subject to the JSNs' lien.  The JSNs did not, and could not, have liens on

contract claims that were inchoate at the time the Notes Security Agreement was entered into.

Furthermore, the "contract" claims that the JSNs now seek to use to enhance their secured

recovery are, in reality, (i) either avoidance claims or commercial tort claims, as to which no lien

could attach, or (ii) not otherwise subject to the JSNs' lien.  Finally, any purported lien on the

AFI Contribution should be viewed as unenforceable: (i) because the settlement constitutes after-

acquired property under section 552(a) of the Bankruptcy Code; or (ii) pursuant to the "equities

of the case" doctrine of section 552(b).

3.      Second, even if the JSNs had liens on any Intercompany Balances or some

portion of the AFI Contribution, the liens were valueless.  The Debtors waived the Intercompany

Balances under the Plan because, among other things, they were comprised of bookkeeping

entries kept for GAAP purposes and were routinely forgiven before the Petition Date.  The same

reasons prevent the JSNs from proving a lien on the Intercompany Balances or that any such lien

has value.  In any event, the JSNs have no protectable property interest in the balances because

the Notes Indenture and the Intercreditor Agreement gave both the Debtors and the First Priority

Secured Parties free rein to dispose of and waive Intercompany Balances without the JSN

Objectors' consent.

4.      The JSNs' lien, if any, on the AFI Contribution is likewise without value.

AFI is paying $2.1 billion to achieve a global resolution of all claims (known or unknown)

against it – an objective far different from merely resolving a discrete number of identified

claims.  The parties did not purport to "allocate" the AFI Contribution among particular causes of action, and any attempt to do so after the fact would be inconsistent with the integrated nature of the settlement.  Moreover, it is apparent that, at the time of the negotiations, while the Creditors' Committee had sought authority to pursue claims based on certain of the conduct underlying the contract claims now championed by the JSNs, it viewed such claims as either commercial torts or avoidance actions and ascribed no value to any contract claims against AFI. This is evident from the Standing Motion, which set forth the claims for which the Committee sought leave to sue AFI.  The Standing Motion described in detail the estates' veil-piercing and alter ego claims, as well as an array of avoidance claims, but did not seek to pursue any of the contract claims to which the JSNs now hitch their wagon.  Finally, as will be proven at trial, the contract claims the JSNs value lack merit in any event.

5.    Third, for substantially the same reasons the JSNs' liens on the Intercompany Balances and AFI Contribution (if any) on the Petition Date were without value, the JSNs are likewise not entitled to an adequate protection claim.  Adequate protection is designed to ensure that a creditor receives the benefit of its bargain.  Here, the JSNs' bargain permitted the Debtors and/or AFI to dispose of these types of assets without their consent.  As a result, their failure to receive value under the Plan on account of these purported liens results in no diminution in the aggregate value of their collateral.

6.    For these and other reasons discussed below, the JSNs – who, notwithstanding their misstatement of the law in the Phase I trial, bear the burden of proof – will not be able to establish an aggregate diminution in value of their collateral.  Assorted remaining issues (*e.g.*, subordination, default interest and fees, aggregation of collateral, and others

discussed below or in prior briefing) to the extent not mooted by Phase I or confirmation, should be resolved in the Plaintiffs' favor as well.

### (ii) Burden of Proof

7.      The Defendants bear the burden of proof with respect to both the allowance of their secured claim and the allowance of any adequate protection claim.

8.      As this Court has held, and the Defendants have acknowledged, the Defendants, as secured creditors, have the burden of establishing both the validity and extent of their liens as well as the value of their collateral. *See Off. Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC)*, 497 B.R. 403, 412 (Bankr. S.D.N.Y. 2013) (the "September 20 Opinion"); *In re Sneijder*, 407 B.R. 46, 55 (Bankr. S.D.N.Y. 2009); *see also* Corrected Post-Trial Memorandum of Law of the Ad Hoc Group of Junior Secured Noteholders and UMB Bank, N.A. at 2 [Adv. No. 13-01277, Dkt. No. 191] ("A secured creditor bears the burden of demonstrating the amount of its claim and the extent to which that claim is secured under section 506(a).").

9.      The Defendants also have the burden of establishing any diminution in value of their collateral for purposes of determining the scope and value of their adequate protection liens and superpriority claims, if any. *See* 11 U.S.C. § 363(p)(2) ("In any hearing under this section . . . the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest"); *Qmect, Inc. v. Burlingame Capital Partners II, L.P.*, 373 B.R. 682, 690 (N.D. Cal. 2007) (secured creditors not entitled to foreclose on replacement liens absent proof collateral had diminished in value as result of automatic stay or collateral's use).

10.      The Defendants have previously erroneously represented to the Court that there are no cases deciding the issue of who has the burden of establishing that there has been a

diminution in the value of a secured creditor's collateral. This is false. *Qmect*, cited above and in the Plaintiffs' Phase I briefing, is directly on point. In addition (and as also reflected in the Plaintiffs' earlier briefs), numerous cases addressing superpriority claims for the failure of adequate protection have held that the secured creditor bears the burden of proof. *See, e.g.*, *Bank of N.Y. Trust Co. N.A. v. Pac. Lumber Co. (In re Scopac)*, 624 F.3d 274, 284 (5th Cir. 2010), *opinion modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011).[3] Finally, and perhaps most importantly, section 363(p)(2) places the burden of proof squarely on the secured creditor. Under that section, the secured creditor, in any hearing on adequate protection, "has the burden of proof on the issue of the validity, priority, or *extent* of such interest." 11 U.S.C. § 363(p)(2) (emphasis added).

11.    In sum, the JSNs have acknowledged that they bear the burden of proof with respect to their secured claim for principal and interest on the Notes. They likewise bear the burden of proof with respect to their secured claim for an alleged diminution in the aggregate value of their collateral.[4]

### (iii)  Mootness

12.    The Plaintiffs contend that several of the issues the JSNs seek to litigate in Phase II will be rendered moot in the event the Court confirms the Plan. Under the terms of the Plan, litigation concerning the Intercompany Balances and potential estate and third party claims

---

[3] *See also In re Mary Holder Agency, Inc.*, No. 11-34280, 2012 WL 4434362, at *2 (Bankr. D. N.J. Sept. 24, 2012); *In re McFarlin's, Inc.*, 33 B.R. 788, 791 (Bankr. W.D.N.Y. 1983).

[4] The cases cited by the JSNs that deal with who bears the burden of proof at the outset of the case in a contested cash collateral hearing are irrelevant. The JSNs have already been granted adequate protection. The issue, once the JSNs have been *given* their lien at the outset of the case, is what is the *value* of the lien (*i.e.*, the "extent" of the lien, in the terminology of section 363(p)(2)) at the end of the case.

Moreover, even if the Court were deciding adequate protection, not entitlement to an adequate protection *claim*, the AFI DIP Order found that the JSNs were adequately protected and placed the burden on the JSNs to seek modification of the order in the event they sought additional adequate protection. *See* AFI DIP Order at ¶ 23.

against AFI is being settled, with the result that:  (i) any purported intercompany claims will receive no distribution; and (ii) no part of the AFI Contribution will be allocated to purported claims on which the JSNs assert a lien.  Similarly, the Plan settles issues relating to the subordination of securities claims, monoline claims, and RMBS claims, rendering unnecessary any litigation on the propriety of subordination.  Thus, assuming the Plan is confirmed, the only open Phase II issue relating to Intercompany Balances and the AFI Contribution is adequate protection – *i.e.*, whether the Plan's treatment of those issues has resulted in a diminution in the aggregate value of the JSNs' collateral from the Petition Date to the effective date of the Plan.

### (iv)  Contentions Regarding Intercompany Balances

*Overview*

13.     In connection with confirmation, the Plaintiffs will show that they had authority to settle issues concerning the Intercompany Balances and that waiver of the balances under the Plan was reasonable.  The Plaintiffs do not believe that the Defendants are harmed by the treatment of the balances, because they do not have a lien on Intercompany Balances and even if they did, that lien was valueless.  The JSNs disagree, arguing:  (i) that they have a lien on the Intercompany Balances; (ii) that such lien has value to which they are entitled notwithstanding the waiver of Intercompany Balances under the Plan; and (iii) that the waiver of the Intercompany Balances under the Plan results in a diminution in the aggregate value of their collateral giving rise to an adequate protection claim.  It is the JSNs' burden to prove these points – and they cannot.

14.     First, the JSNs cannot prove that they have a lien on the Intercompany Balances.  As the JSNs concede, they do not have a pledge of a specific intercompany note or loan.  Instead, they argue that the Intercompany Balances are "general intangibles" and therefore subject to their liens.  But to establish that the Intercompany Balances qualify as "general

intangibles," the JSNs must prove that they represent a bona fide right to payment or a

receivable.  The JSNs can make no such showing, because the Intercompany Balances bear few,

if any, indicia of real debt.

15.     Second, any lien the JSNs established would be illusory.  Under the Notes

Indenture and the Intercreditor Agreement, the Debtors and AFI, as the First Priority Secured

Party and Lender Agent, had the unrestricted right to forgive or release the Intercompany

Balances without the consent of the JSNs – which they exercised routinely in the years before the

Petition Date.  Under the Intercreditor Agreement, the JSNs are bound by AFI's determination to

consent to the waiver of such claims.  As a result, any lien the JSNs establish on Intercompany

Balances should be ascribed no value.

16.     Third, under the terms of the AFI DIP Order, the JSNs are not entitled to

an adequate protection claim because, as was shown at the Phase I trial, the JSNs cannot prove

that the *aggregate* value of their collateral package as of the Petition Date has declined in value.

Among other reasons, the evidence will show that the Intercompany Balances had little, if any,

value as of the Petition Date, especially in light of the litigation costs that would have been

incurred were there an attempt to enforce them.  Even if this were not the case, however,

adequate protection grants a secured lender no more than the benefit of its bargain.  The JSNs'

"bargain" allowed Intercompany Balances to be waived or disposed of without their consent.

Accordingly, the waiver of the Intercompany Balances in the Global Settlement gave the JSNs

no less than that to which they were entitled and cannot support an adequate protection claim.

### *Factual Background*

17.     In the ordinary course of business, the Debtors entered into various

transactions with their Debtor and non-Debtor affiliates which resulted in the creation of

ny-1114420

intercompany balances on the Debtors' books and records.  These intercompany balances were reflected in various journal entries and ledger accounts on the ResCap general ledgers.  The balances accumulated over many years, often as a result of tens of thousands of separate, individual transactions that were recorded on the general ledger for a number of reasons, including (a) the movement of cash within the capital structure of the various Debtors, (b) the movement of assets among the Debtors without cash settlement, (c) the allocation or payment of expenses by one Debtor on behalf of another, and (d) other journal entries representing book entry movements of cash down the corporate structure.

18.    As of the Petition Date, approximately $8.2 billion in aggregate net intercompany balances existed among or between the Debtors.  The details of the Intercompany Balances, including, among other things, their origins, the Debtors' historical practices with respect to them, the Debtors' investigation of the balances, the accounting treatment of the balances, and the factors supporting their treatment as equity rather than debt are set forth in more detail in the Direct Testimony of Barbara Westman (the "Westman Declaration"), the Direct Testimony of Tammy Hamzehpour (the "Hamzehpour Declaration"), and the Direct Testimony of Gina Gutzeit (the "Gutzeit Declaration"), each filed contemporaneously herewith.

19.    The Westman Declaration, Hamzehpour Declaration and Gutzeit Declaration make clear that the JSNs cannot satisfy their burden of demonstrating that the Intercompany Balances constitute enforceable debt claims.  Among other things, the balances largely:  (i) did not arise under written agreements evidencing debt; (ii) had no fixed maturity dates, interest rates, security, or sinking funds associated with them; (iii) did not accrue interest (and interest was paid only in the case of one of the balances); (iv) were forgiven routinely and on a massive scale (well over $16 billion in forgiveness from 2008 through the Petition Date) in

14

the years before bankruptcy whenever covenants in debt documents or regulatory obligations were tripped or in danger of being tripped, and such forgiveness was recorded as adjustments to equity; (v) arose between entities that shared common control and were not at arms'-length; and (vi) are based on numerical entries in the Debtors' general ledger, without notes or explanation, making it impossible to determine with any precision how or why the entries arose or to verify their accuracy. These facts and circumstances underlying the Intercompany Balances, moreover, are starkly different than the Debtors' lending relationships even with related parties – for example under the AFI Revolver and AFI LOC – which were thoroughly documented.

20.    The Defendants' purported expert, Robert S. Bingham, opines that the Debtors' maintenance of journal entries documenting the Intercompany Balances shows that they were regarded as valid and collectible obligations. But his assertion that the recording of an intercompany receivable or payable on the Debtors' books and records proves that the balance was "debt" is incorrect and cannot satisfy the JSNs' burden on this issue. As set forth in the Gutzeit Declaration, that reporting was done primarily for GAAP accounting purposes, pursuant to AFI's accounting policies, which required that the Debtors' books and records be maintained so that AFI could track its subsidiaries' intercompany balances and eliminate them for purposes of preparing and filing consolidated GAAP-compliant financial statements. The Debtors' compliance with AFI's accounting policies does not prove that the balances were viewed as valid and collectible debt. Indeed, the presumption in GAAP and AFI's own policies is that transactions between related parties are not carried out on an arms'-length basis.

21.    In addition, Mr. Bingham fails to address the many other hurdles to treating the Intercompany Balances as fully enforceable debt, including the following:

15

22.    <u>Journal entries did not reflect bases for the balances</u>.  In connection with the Debtors' operations, journal entries would be entered into the general ledger.  As a general matter, however, individual account entries were not coded to reflect the reason for a specific entry (for example, a transfer of cash, allocation of expenses, funding/repayment of an intercompany receivable or payable, or the sale of an asset).  Thus, it is impossible to determine with precision from the general ledger the reason why journal entries were made and/or why intercompany payables or receivables have accumulated over time.

23.    <u>Different record-keeping systems used over time</u>.  Historically, different systems were used to operate the general ledgers used by GMACM and its subsidiaries on the one hand and by RFC and its subsidiaries on the other.  The method for recording intercompany transactions, including intercompany payables and receivables, differed between the systems.  Through April of 2009, journal entries were made directly into the different, underlying systems and were not combined in one system or the other.  Beginning in May of 2009, summarized monthly data was fed into a single system, and in November 2010, this feed became daily – but the system still reflected only summarized activity entered in separate systems.  As of November 2011, all journal entries for all entities were performed directly in the same system.  As a result of this history, tracking historical transactions across company lines is more difficult.

24.    <u>No central repository for backup documentation</u>.  The Debtors do not have a central repository for backup documentation that reflects why individual journal entries tied to Intercompany Balances were made.  Because the entries that make up the Intercompany Balances were made over many years, by different departments and business units, in different physical locations, and were overseen by different supervisors with different record-keeping practices, there was no set practice of retaining backup documentation for intercompany journal

16

entries across all of the ResCap companies.  As a result, any investigation of the Intercompany

Balances on a transaction-by-transaction basis necessarily involves an exhaustive, time-

consuming, and expensive process and often requires significant guesswork in trying to identify

or recreate the reason for a specific transaction or series of transactions.

    25. <u>Payables not always calculated to reflect realities of transactions</u>.  Prior to

the Petition Date, the Debtors were parties to various lending facilities with AFI.  AFI would

honor funding requests by the Debtors under these facilities by depositing cash into a centralized

account held by ResCap – even when the "borrowers" under the facilities were, for example,

RFC or GMACM, not ResCap.  Cash would be distributed as needed by ResCap to subsidiary

borrowers.  However, the allocation of the borrowed cash would be predetermined and reflected

on the Debtors' ledgers at the time of the initial draw, based not on cash disbursements (because

they had not yet occurred) but instead on asset values at each entity.  Accordingly, the amount of

cash actually transferred to a subsidiary borrower could be inconsistent with that entity's payable

to ResCap, and, indeed, Debtor subsidiaries that never in fact used AFI funds could still have

account payables to ResCap on their books.

    26. <u>No formal settlement process</u>.  With the exception of the balance between

RFC and GMACM, there was no uniform practice of repayment or cash settlement of the

Intercompany Balances.  Many of the Intercompany Balances fluctuated regularly, but had no

formal settlement process and were never fully "repaid."  Periodically, significant forgiveness of

these balances occurred from 2008 through the Petition Date.  During that period, there were 149

individual instances of forgiveness by Debtor entities totaling approximately $16.6 billion.  In all

but one instance, the forgiveness was recorded as an adjustment to equity rather than a loss on

the profit and loss statement.

ny-1114420

27.    <u>Inaccurate or nonexistent documentation</u>.  In most instances, the top nine

Intercompany Balances do not correspond to a specific intercompany agreement.  From time to

time, individual Debtors entered into loan agreements and/or intercompany advance agreements

with affiliates.  However, despite a comprehensive search for such documents, for the period

from 2006 to the Petition Date the Debtors were able to locate only four such agreements

between domestic Debtor entities.  It is difficult to determine whether an intercompany

transaction can be tied to these agreements because the Debtors did not designate intercompany

entries in the general ledger as having resulted from, or being made under, any particular

intercompany advance or funding agreement.  Furthermore, at least two of the four intercompany

agreements contemplate a "lending" relationship that is the reverse of the intercompany balance

that existed on the Debtors' books and records as of the Petition Date and at least two of them

are between entities that do not have an existing balance among the top nine intercompany

balances.  Finally, three of the four agreements contain a "bankruptcy standstill" provision,

which provides that the "lender" entity will not commence bankruptcy against the "borrower"

entity or seek to foreclose on any property of the borrowing entity, and that obligations under the

agreement will not constitute a claim against the "borrower" if such entity's assets are

insufficient to pay those obligations in full.

28.    <u>Control by common management</u>.  A common management team

allocated capital among ResCap and its subsidiaries based on cash needs, licensing requirements,

financial covenants, and cross default provisions, *i.e.*, the same individuals, entities, or affiliates

controlled both the "lender" and the net receiver.

29.    The seven largest Intercompany Balances (comprising 96% of all such

balances) are reflected in Exhibit 6 to the Disclosure Statement.  The JSNs have identified two

ny-1114420

additional Intercompany Balances.  The top nine Intercompany Balances (which are described in detail in the Westman Declaration and Gutzeit Declaration, and summarized briefly here) bear many of the characteristics discussed above:

30.    Intercompany Balance No. 1 ($3.334 billion from ResHolding to ResCap). This balance arose from transactions where GMAC Residential Holding Company, LLC ("ResHolding") received funds from ResCap and then distributed funds to GMACM for general operating purposes.  ResHolding was not an operating entity and was reliant upon its subsidiaries to meet its obligations.  In 2009, ResHolding forgave a payable from GMACM in the amount of $2.52 billion but no corresponding forgiveness of the payable from ResHolding to ResCap was effectuated.  Presumably, if the balance running from ResHolding to ResCap were a valid obligation entered into in an arms'-length transaction with ResCap as a true "lender," the "lender" (ResCap) would never have permitted its "borrower" (ResHolding) to forgive and write off such a large asset, the recovery from which would have been key to repaying the obligation to ResCap had repayment been intended.  This is particularly true because ResHolding had *de minimis* assets.  And, while there is an agreement relating to portions of the balance, it is very limited in nature and has no stated interest rate, maturity, repayment schedule, or security. Because ResHolding has no assets, even were this Intercompany Balance deemed debt, there would be no material distribution on it.

31.    Intercompany Balance No. 2 ($1.96 billion from ResCap to RFC).  This balance arose out of many journal entries and generally was reflective of a process by which, as cash was generated by RFC, it would at times be centralized and swept upward to the parent company, ResCap.  In the years before the Petition Date, RFC's operations were being wound down, and its balance sheet was rapidly shrinking.  Because RFC was in the process of closing,

ny-1114420

there was no reason to downstream funds to this entity other than to address temporary liquidity and capital needs.  Moreover, from 2008 through 2012, billions of intercompany payables from RFC and its subsidiaries to ResCap were forgiven.  But for this forgiveness, RFC would have an intercompany payable to ResCap rather than the other way around.  Other factors also support the proposed waiver of this balance under the Plan, including the lack of an agreement and no accrual or payment of interest, no fixed maturity date or repayment schedule, and no security.

32.    Intercompany Balance No. 3 ($1.252 billion from RFC to Homecomings). As part of its business operations, Homecomings Financial LLC ("Homecomings") sold loans to RFC for securitization, serviced loans, and generated other cash through operations that was swept up to RFC.  Intercompany Balance No. 3 arose out of these activities, less payables to RFC for general overhead expenses.  In 2008, Homecomings essentially ceased operations following large losses.  In early 2012, as part of the normal course of business, accounting personnel identified various intercompany balances to be forgiven, including the entirety of Intercompany Balance No. 3, but due to ResCap's bankruptcy, forgiveness was not implemented. There was no agreement reflecting the intercompany relationship, and no defined interest rate, maturity date, repayment schedule, or security.

33.    Intercompany Balance No. 4 ($697 million from GMACM to PATI). PATI was formed as a passive holding company to hold certain notes from international non-Debtor entities because AFI insisted that the notes, which secured the AFI LOC facility, be held in a separate legal entity.  Under the AFI LOC facility, the Debtors were required to use any excess cash over $300 million to pay down that facility.  The majority of the Intercompany Balance thus reflects cash collected by PATI from the non-Debtor entities that was thereafter swept to GMACM and then to ResCap.  The assets underlying the notes pledged to PATI were

amortizing mortgages which were designed to run off over time.  In addition, in 2008, $44 million of the Intercompany Balance payable by PATI to GMACM was forgiven so that PATI could meet certain tangible net worth debt covenants.  Further, prior to the Petition Date, the entire outstanding balance had been identified for forgiveness by PATI.  There was no applicable agreement, and no defined interest rate, maturity date, or repayment schedule.

34.    Intercompany Balance No. 5 ($265 million from GMACM to ETS).  ETS performed foreclosure related services for defaulted loans.  ETS also collected fees from the sale of charged off loans.  Revenue received by ETS (as foreclosure trustee) was swept up to GMACM and GMACM, in turn, satisfied ETS's cash needs.  The ETS business was profitable, and as a result, ETS was in a position to consistently upstream funds to GMACM.  ETS had minimal liabilities, and its unsecured creditors are projected to recover 100% on their claims under the Plan.  There was no expectation that ETS would be repaid for the cash transfers to GMACM, as the entity was profitable and did not require cash or reinvestment of capital.  In addition, there is no agreement reflecting this intercompany relationship, and the intercompany balance from GMACM to ETS represented nearly the entirety of ETS's asset base.  Moreover, the balance was scheduled for forgiveness prior to the Petition Date.  There is no lending agreement, defined interest rate, maturity date, or repayment schedule.

35.    Intercompany Balance No. 6 ($232 million from RAHI to RFC).  RFC would pay RAHI's tax liabilities and create an intercompany balance reflecting these payments. As of the Petition Date, RAHI had assets of $204 million and negative equity of in excess of $640 million.  In 2008, $1.2 billion of intercompany balance was forgiven by RFC in favor of RAHI so that RAHI could meet certain tangible net worth debt covenants.  The payable increased after that forgiveness.  This balance was identified by accounting personnel as one to

21

be forgiven if not for the bankruptcy filing.  Because the calculation of the JSNs' secured claims includes all of the value available at RAHI (either through a direct lien or equity pledge), allowance of this intercompany claim for the benefit of the JSNs would provide them with no additional value.

36.    Intercompany Balance No. 7 ($140 million from GMACM to RFC).  This balance represents the only intercompany relationship that does not involve a parent-subsidiary structure.  RFC and GMACM were sister organizations, each reporting up to a common parent, ResCap.  The majority of the balance consists of amounts recorded in connection with AFI billings for shared services (*e.g.* payroll, outside counsel) and service fee income received by GMACM as subservicer relating to RFC master servicing rights.  RFC routinely remitted payment to AFI for services, and RFC then charged GMACM for its portion.  Interest on the outstanding balance did not accrue and was not paid.  The receivable to RFC from GMACM was cash settled on a monthly basis per AFI accounting policies as it would not have been eliminated during financial statement consolidation at RFC and GMACM.  There is no agreement reflecting the intercompany relationship, nor any interest rate, maturity date, repayment schedule, or security.

37.    Intercompany Balance No. 8 ($55 million from ResHolding to HomeConnect).  HomeConnect is a subsidiary of ResHolding that sold insurance and other lending services.  HomeConnect earned fees and passed these fees to ResHolding and ultimately to ResCap.  HomeConnect ceased operations in 2008, but borrowers continued to make premium payments on old policies, and cash flows were swept upstream as the business operations had been closed.  As in the case of other entities whose operations were shut down or in the process of being wound down, the outstanding intercompany balance from ResHolding to HomeConnect

22

was identified for forgiveness but was not actually forgiven due to the bankruptcy filing. Because ResHolding has no assets, even were the claim not settled, there could be no distribution on it.

38.    <u>Intercompany Balance No. 9</u> ($51 million from GMACM to ResHolding). This balance is related to the receivable from ResHolding to ResCap (Intercompany Balance No. 1). As discussed above, ResHolding served as a holding company, with funding for operations from ResCap to GMACM advanced through ResHolding. GMACM was one of the two main operating subsidiaries of ResCap. Between 2007 and 2011, GMACM's consolidated income statements reflected net losses of approximately $3.5 billion. Due to the losses, GMACM was in danger of failing to meet regulatory requirements for net worth. As a consequence, in 2009, approximately $2.52 billion of intercompany balances payable by GMACM to ResHolding was forgiven so that GMACM could meet certain tangible net worth covenants. Following this forgiveness, GMACM continued to be a money-losing subsidiary that would continue to incur losses and require additional funding. There is no agreement reflecting the intercompany relationship, and no defined interest rate, maturity date, repayment schedule, or security.

### The JSNs Do Not Have Liens on "Intercompany Claims"

39.    The JSNs glibly refer to "intercompany claims" as if they are a recognized and well-defined category of asset to which their liens unquestionably attach under the Notes Security Agreement and applicable law. In fact, the Intercompany Balances at issue here are ill-defined and not capable of generic classification. As discussed above, they arise from a variety of transactions and circumstances and, depending on the balance, regularly were recorded with no expectation, intent, or requirement that the balance be repaid. Indeed, certain of the balances do not even reflect any actual movement of money between the entities identified in the Debtors'

23

ledgers. Thus, there are substantial questions as to whether the Intercompany Balances reflected underlying obligations to make payments and a corresponding right to receive payment.

40.    The JSNs concede that they have no lien on any specific notes or loans underlying the Intercompany Balances. Instead, they claim that they have a lien on "general intangibles." Simply labeling certain balances in the Debtors' books and records "intercompany claims" does not make them general intangibles. Rather, the JSNs must show that each specific Intercompany Balance is more than just an entry on a ledger and is actually a "general intangible" asset subject to their liens.

41.    In relevant part, the Uniform Commercial Code (the "UCC") defines a "general intangible" as "any personal property, including things in action" and "payment intangibles." U.C.C. § 9-102(a)(42).[5] A "payment intangible" is defined as "a general intangible under which the account debtor's principal obligation is a monetary obligation." UCC § 9 -102(a)(61). Accordingly, before an Intercompany Balance may be classified as a general intangible, the JSNs must prove that it is a legally enforceable obligation, and that the applicable account debtor in fact had a legal obligation to pay the balance.

42.    Moreover, the JSNs do not have a lien on all "general intangibles" in any event. As was demonstrated in Phase 1, as a result of the May 14, 2010 release, all intangibles associated with the mortgage loans pledged to the AFI LOC and PLS MRS were released. As a result, the JSNs must demonstrate that, even if the Intercompany Balances are "general intangibles," such intangibles were not among those released and fall within the scope of their existing lien.

---

[5] The definition of "General Intangibles" provided by the Notes Security Agreement incorporates the definition of the term found in the Uniform Commercial Code.

24

43.     Further, it is without dispute that the JSNs do not have liens on Intercompany Balances of PATI, ETS or Home Connect (Intercompany Balances Nos. 4, 5 & 8). ETS is neither an obligor nor a pledgor under the Notes Security Agreement and never pledged any of its assets (including any Intercompany Balances) in favor of the Secured Parties.[6]  PATI was only a limited pledgor – an "Equity Pledgor" and a "FABS Grantor" – under the Notes Security Agreement and in such limited capacity it pledged only certain categories of assets.[7] Intercompany Balance No. 4 does not fit within the limited scope of PATI's pledged collateral: it is not a Financial Asset under UCC § 8-102 and while GMACM is a Pledged Interest Issuer whose membership interests PATI pledged, it is not a Pledged Notes Issuer and therefore any notes it may have issued were not pledged by PATI.  Similarly, Home Connect was also a limited pledgor – an "Additional Account Party" – under the Notes Security Agreement and as such pledged only certain categories of assets.[8]  Intercompany Balance No. 8 does not fit within the limited scope of HomeConnect's pledged collateral: it is neither a deposit account listed on Schedule X of the Notes Security Agreement nor proceeds thereof.[9]

---

[6] *See* Plaintiffs' Proposed Findings of Fact [Adv. No. 13-01277, Dkt. No. 187] at ¶¶ 303-04.  ETS was among the Non-Obligor Debtors identified by the Committee in connection with Count III of the Committee Complaint (PX 248.2), and the JSNs offered no evidence and made no argument to the contrary in either the Revised Joint Pretrial Order [Adv. No. 13-01277, Dkt. No. 161] or the Corrected Proposed Findings of Fact of the Ad Hoc Group of Junior Secured Noteholders and UMB Bank, N.A., dated November 4, 2013 [Adv. No. 13-01277, Dkt. No. 190].

[7] PATI pledged only: (i) "Financial Assets" (as defined in Article 8 of the UCC); (ii) equity interests of each "Pledged Share Issuer" and each "Pledged Interest Issuer" (*i.e.*, entities identified on Items A and B of Attachment I of the Notes Security Agreement); (iii) all promissory notes issued by each "Pledge Note Issuer" (*i.e.*, entities issued by entities identified on Item D of Attachment I); and (iv) certain other assets related to the foregoing.  Notes Security Agreement §§ 3-4.

[8] Home Connect pledged only (a) those deposit accounts listed on Schedule X of the Notes Security Agreement, which identifies only one such account held at Bank of America, and (b) proceeds, products and distributions on account thereof.  *Id*. § 5.

[9] Further, even if Intercompany Balance No. 8 falls within the limited category of collateral pledged by Home Connect (which it does not), the JSNs would only have a right to proceeds of such collateral if they meet their burden of proving that their security interest in the underlying deposit accounts pledged by Home Connect was perfected – *i.e.*, by virtue of control under UCC § 9-314.

25

***If the Global Settlement Is Approved, the JSNs' Lien (If Any) Has Zero Value For Determining the Amount of Their Secured Claim***

44.    If the Plan is confirmed and the Global Settlement approved, each Debtor that is found to hold a claim under an Intercompany Balance will receive no distribution on account of that claim.  Thus, even if the JSNs prove that they have a lien on the Intercompany Balances (and leaving aside the issue of adequate protection, discussed below), confirmation will render that lien valueless.

45.    Any lien the JSNs could establish on any identifiable Intercompany Balance, moreover, would not give them a meaningful property interest in those balances.  Under the Notes Indenture, the Intercreditor Agreement, and related documents, both the Debtors and the First Priority Collateral Agent were permitted to dispose of and waive Intercompany Balances without requiring the JSNs' consent.  Upon such disposition, the JSNs' liens (if any) on the Intercompany Balances would be released.

46.    Specifically, none of the extensive covenants in the Indenture or the Notes Security Agreement limits the Debtors' rights regarding, or protected the JSNs' interests in, the Intercompany Balances.  To the contrary, Section 8.04(a) of the Notes Indenture (Release of Collateral) provides that "upon the sale, transfer or other disposition of [Collateral] . . . , the Lien of the Security Documents shall be released on the assets so transferred" so long as the disposition is not prohibited by Section 4.10 of the Notes Indenture.

47.    While Section 4.10 – the asset sale covenant – limits the Debtors' ability to consummate dispositions of Collateral, *see* § 4.10(a), the definition of "Collateral" was carefully crafted to mean only "Primary Collateral," which is defined to exclude Intercompany

Balances.[10] Thus, the asset sale covenant does not apply to dispositions of Intercompany

Balances or any other assets that do not constitute Primary Collateral.  *See* Notes Indenture

§ 8.04(a); Notes Security Agreement § 10.

48.    Just as the definition of the Collateral in the context of Asset Sales was

carefully constructed to permit the disposition of the Intercompany Balances and other non-

Primary Collateral, the affiliate transaction covenant in the Notes Indenture clearly states that the

covenant "shall not apply to . . . transactions between or among [ResCap] and/or its

Subsidiaries."  Notes Indenture § 4.11(b)(4).  Accordingly, the Indenture does not restrict in any

way the settlement, release, waiver, or disposition of Intercompany Balances.  The Debtors'

unrestricted right to do so renders the JSNs' purported lien valueless.

49.    In addition, the First Priority Collateral Agent and AFI as the agent lender

under the Revolver Facility (*i.e.*, the "Lender Agent") have the unfettered right to release their

liens on, or otherwise dispose of, the collateral (including the Intercompany Balances, if

collateral), and the JSNs agreed in the Notes Indenture and the Intercreditor Agreement that such

release will release their liens as well.  Section 8.04(a) of the Notes Indenture provides that the

"Collateral may be released from the Lien and security interest created by the Security

Documents at any time or from time to time in accordance with the provisions of the

Intercreditor Agreement."  The Intercreditor Agreement, in turn, provides that the First Priority

Collateral Agent and the Lender Agent have "the exclusive right to . . . make determinations

regarding release or disposition of Collateral" without the consent of Secured Parties, *see*

---

[10] None of the Intercompany Balances constitute Primary Collateral, which the Indenture defines by reference to the Notes Security Agreement as "Initial Collateral [defined in Schedule VI as certain Mortgage Loans, Servicing Advances, Securities Accounts, Pledged Interests, Pledged Notes and Construction, Mezzanine and Working Capital Loans], REO Property acquired as the result of foreclosure on Primary Collateral, Reinvestment Collateral, any assets acquired as a result of exercising remedies under any Initial Collateral or Reinvestment Collateral that was designated as such prior to the Amendment Closing Date or Substitute Collateral, and all proceeds of the foregoing."

§ 3.1(a)(ii)(A), and that when the First Priority Collateral Agent or the Lender Agent releases its lien on any collateral, the Secured Parties' lien on the collateral "shall in each case be automatically and unconditionally released with no further consent or action of any Person," *see* § 5.1(a).  Further, the Intercreditor Agreement provides that the First Priority Collateral Agent and the Lender Agent may release and otherwise deal with in any manner collateral to the fullest extent permitted under law without the consent of or notice to and without incurring any liabilities to the Secured Parties.  *See* § 7.3(b)(iii).

50.    Here, AFI, as the Lender Agent under the Revolver Facility, has agreed to the waiver of any and all Intercompany Balances under the Plan Support Agreement.  As discussed above, the Lender Agent – along with the First Priority Collateral Agent – has the exclusive right to release liens on, surrender, or otherwise dispose of the collateral, including any Intercompany Balances if they are indeed collateral.  Accordingly, AFI's consent under the Plan Support Agreement to waiver of the Intercompany Balances is binding on the JSNs and automatically releases the JSNs' liens, if any, on the Intercompany Balances.

51.    In addition to being bound by the release of their liens and waiver of the Intercompany Balances, the JSNs expressly waived any claim against the First Priority Collateral Agent and the Lender Agent arising out of their action or inaction with respect to the collateral. The Intercreditor Agreement provides that the JSNs waive "any claim against any First Priority Secured Party, arising out of any action which such holders of First Priority Claims may take or permit or omit to take with respect to the foreclosure upon, or sale, liquidation or other disposition of, the Collateral."  Intercreditor Agreement § 7.3(d).  This waiver remains fully enforceable against the JSNs in bankruptcy pursuant to section 510(a) of the Bankruptcy Code.

ny-1114420

52.     The right to dispose of Intercompany Balances was more than theoretical. In accordance with the Notes Indenture and Notes Security Agreement, prior to the Petition Date, the Debtors routinely settled Intercompany Balances for no value.  In fact, from June 2008 through the Petition Date, the Debtors forgave well over $16 billion in Intercompany Balances, and as of the Petition Date, approximately $2.375 billion of the approximately $8.2 billion in aggregate outstanding net intercompany balances was flagged for forgiveness by the accounting department.

53.     Thus, even if the JSNs were able to establish a technical lien on the Intercompany Balances, that lien was valueless and wholly illusory.  Because the Debtors (under the Notes Indenture) and AFI (under the Intercreditor Agreement) retained the unilateral right to compromise and release those balances without the JSNs' consent, their compromise of those balances in the Global Settlement did not violate any contractual rights of the JSNs and infringed on no protectable property right of the JSNs.

### The Waiver of the Intercompany Balances Does Not Give Rise to An Adequate Protection Claim

54.     The waiver of the Intercompany Balances in the Global Settlement also does not entitle the JSNs to an adequate protection claim.  Adequate protection ensures only that a secured creditor receives the benefit of its bargain.  *See, e.g., In re WorldCom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004).  The JSNs bargained only for a lien that could be *compromised at will by the Debtors and the Lender Agent for no consideration*.  The JSNs have no legally cognizable interest in the Intercompany Balances entitling them to adequate protection.  As such, the waiver of the Intercompany Balances in the Global Settlement could not

result in a diminution of value, because the JSNs are getting exactly what they bargained for with respect to the Intercompany Balances.[11]

55.     In addition, under the terms of the AFI DIP Order, the JSNs have no adequate protection claim unless they prove that the *aggregate* value of their collateral package as of the Petition Date has declined in value, *i.e.*, that the aggregate value of their collateral package as of the Petition Date was in excess of the value of their collateral today ($1.745 billion in the Disclosure Statement).  The Intercompany Balances cannot get the JSNs above this threshold because the JSNs cannot get over the numerous hurdles to enforceability of those balances as valid and collectible obligations.

56.     The JSNs also will not be able to meet their burden of proving that the Intercompany Balances constitute debts.  As set forth in the Westman and Gutzeit Declarations, there were grave informational deficiencies concerning the balances.  Even assuming complete information, when considering the creation and extinguishment of the Intercompany Balances, the balances lack many of the indicia of valid and collectible debt obligations under the eleven-factor *Autostyle* test for recharacterization[12]: (i) the names given to the certificates evidencing the indebtedness; (ii) the presence or absence of a fixed maturity date and schedule of payments; (iii) the presence or absence of a fixed rate of interest and interest payments; (iv) the source of repayments; (v) the adequacy or inadequacy of capitalization; (vi) identity of interest between creditor and stockholders; (vii) the security, if any, for the advances; (viii) the corporation's ability to obtain financing from outside lending institutions; (ix) the extent to which the advances were subordinated to the claims of outside creditors; (x) the extent to which the advance was

---

[11] The Ad Hoc Group's agreement to waiver of the Intercompany Balances in the prepetition plan support agreement lends further credence to this view.  Under the plan term sheet that was agreed upon by AFI and the JSNs pursuant to their respective prepetition plan support agreements, the JSNs agreed to waive Intercompany Balances.

[12] *Bayer Corp. v. MascoTech, Inc.* (*In re Autostyle Plastics, Inc.*), 269 F.3d 726, 749-50 (6th Cir. 2001).

ny-1114420

used to acquire capital assets; and (xi) the presence or absence of a sinking fund to provide repayments.

57.    The factors that the JSNs' expert, Mr. Bingham, has identified in his expert report (the "Bingham Report") as supporting treatment of certain Intercompany Balances as debt are similarly unpersuasive.  Mr. Bingham contends that (i) the balances were reported as receivables/payables in internal accounting records and external financial reports and (ii) certain internal memoranda and correspondence suggest that balances were treated as assets and liabilities.  The Bingham Report presents only a limited and distorted view of the Intercompany Balances that ignores the reality that these were merely GAAP-driven bookkeeping entities that were routinely forgiven and not treated as real debt.

58.    As explained in the Gutzeit Declaration, the Debtors' intent to repay, or demand repayment of, the balances cannot be inferred from the Debtors' reporting and accounting of intercompany transactions as "intercompany receivables" and "intercompany payables."  The Debtors' accounting of intercompany transactions was done in accordance with the accounting policies of AFI, which accounting policies were, in turn, consistent with GAAP. The principal purpose for the Debtors' compliance with AFI's policies was to ensure that the Intercompany Balances on the Debtors' books would properly eliminate so that AFI's consolidated financial reports would be in compliance with GAAP.  This conclusion is further supported by the presumption in GAAP and AFI's policy that transactions between related parties are not carried out at arms'-length.

59.    In addition, the approval process by which the Debtors and non-Debtors forgave Intercompany Balances does not indicate that the Intercompany Balances being forgiven constituted true "debt."  When balances were forgiven, the Debtors typically recorded the

ny-1114420

forgiveness as a capital contribution rather than as an impact to the profit and loss of either the obligor or the obligee.  The fact that approval was required does not prove that the Intercompany Balances constituted true "debt."  As subsidiaries of AFI, the Debtors were required to follow the corporate policies that were implemented by AFI, and AFI's corporate policies required approval for capital contributions above a threshold.

### (v) Contentions Regarding the AFI Contribution

*Overview*

60.    In Counterclaims 7, 10, and 35, the JSNs ask the Court to determine that their liens extend to some portion of the AFI Contribution.  The Court has already ruled that the JSNs do not have a lien on commercial tort claims or avoidance actions.  *See* September 20 Opinion, 497 B.R. at 414-16.  Because potential breach of contract claims are the only other type of claims that the JSNs contend the Debtors could have asserted against AFI, the JSNs can succeed in their counterclaims only if they establish that some portion of the AFI Contribution can be attributed to potential breach of contract claims on which the JSNs had a lien.  The JSNs' request to allocate the AFI Contribution to potential breach of contract claims on which they have a purported lien fails as a matter of law and fact.

61.    It is the JSNs' burden to prove:  (i) that they have a lien on any purported contract claims; (ii) if there is such a lien, the value attributable to it; and (iii) if there is such a lien, that the release of the lien gives rise to a claim for adequate protection.  The JSNs have not, and cannot, meet any of those burdens.

62.    First, the JSNs cannot meet their burden of showing a lien on any potential breach of contract claims, because the Notes Security Agreement, as a matter of law, could not have granted the JSNs a lien on contract claims that were inchoate at the time the Notes Security Agreement was entered into.  Because the Purported Contract Claims between a parent and its

32

wholly owned subsidiary were unasserted and inchoate prior to the Petition Date, none of these claims could be subject to the JSNs' lien.

63.     Second, even if the JSNs could prove that they have a lien on purported contract claims, the JSNs cannot carry their burden of establishing the value of any such lien. The AFI Contribution cannot be allocated among causes of action.  The JSNs will not be able to show that any such claims were ever filed, nor were any even alleged as contract claims.

64.     Third, as explained above, the JSNs are not entitled to an adequate protection claim because they cannot prove that the *aggregate* value of their collateral package as of the Petition Date has declined in value, *i.e.*, that the aggregate value of their collateral package as of the Petition Date (inclusive of any contract claims against AFI on which they can prove they have a lien) was greater than $1.745 billion.  Among other reasons, based on the facts set forth below, there are serious issues as to whether the claims they are relying upon were contract claims at all, as well as serious issues with respect to the merits of any such purported claims.  The JSNs cannot demonstrate that the failure to allocate for these purported claims somehow resulted in a diminution in value of their collateral, entitling them to an adequate protection claim for the failure to allocate.

65.     Moreover, even if the JSNs would otherwise have a lien on any portion of the AFI Contribution, the lien should not attach pursuant to the "equities of the case" exception of section 552(b) of the Bankruptcy Code.

### Factual Background: The Committee's Investigation, the Global Settlement, and the Examiner Report

66.     The Debtors entered bankruptcy having pre-negotiated the terms of a chapter 11 plan with their parent, AFI, certain holders of Junior Secured Notes, and certain holders of RMBS.  Pursuant to several interrelated plan support agreements entered with these

33

parties, the Debtors had agreed to pursue the expedited confirmation of a plan premised on AFI's payment of $750 million in exchange for the broad release of claims against it and its non-debtor subsidiaries and affiliates held by the estates and third parties (the "Original AFI Settlement").

67.    For a variety of reasons, discussed in the Direct Testimony of John S. Dubel (the "Dubel Declaration"), submitted contemporaneously herewith, the Committee was dissatisfied with the Original AFI Settlement and related agreements, and determined to commence an investigation of both the process by which the various settlements were entered and the underlying merits of the settlements.

68.    On June 5, 2012, the Court granted the Committee's request for authority to serve a subpoena seeking discovery from the Debtors, AFI, and AFI's parent, Cerberus Capital Management LP, and the Committee commenced an investigation of pre- and post-petition transactions among the Debtors and AFI (the "AFI Investigation").

69.    While the AFI Investigation was underway, the Bankruptcy Court appointed the Honorable Arthur J. Gonzalez as examiner (the "Examiner") and authorized him to conduct a separate investigation.  The respective investigations of the Examiner and the Committee, as authorized by the Bankruptcy Court, were co-extensive.

70.    The Committee was heavily engaged in the discovery and investigation of claims against AFI from June 2012 through the first half of 2013.  During this period, the Committee Professionals reviewed nearly nine million pages of documents and applied extensive accounting, financial, economic, tax, and valuation expertise.

71.    Based on its investigation, the Committee determined that the estates held claims against AFI based on alter ego/veil piercing, fraudulent conveyance, preferential transfer, recharacterization, equitable subordination, breach of fiduciary duty, and aiding and abetting

34

breach of fiduciary duty.  Notably, the alter ego/veil piercing claims had the potential to impose

responsibility for *all* liabilities of the estates on AFI.  The Committee's conclusion, based on

months of diligence and analysis, was that $750 million would provide an insufficient recovery

for creditors that did not justify the proposed releases.

72.    By January 2013, the Committee began active negotiations with AFI.  The

Committee and AFI made presentations to one another concerning the potential claims and

defenses.  The Committee similarly made presentations to the Examiner concerning the same

potential estate claims.

73.    On April 11, 2013, the Committee filed a motion seeking standing to

prosecute and settle claims against AFI on the estates' behalf (the "Standing Motion").  The

claims the Committee sought standing to prosecute sounded in veil-piercing, fraudulent transfer,

indemnification, pre-petition preference, and equitable subordination.  The Standing Motion did

*not* seek standing to prosecute any contract claim against AFI.  The Debtors, the only other estate

fiduciary, supported the Standing Motion.

74.    On April 19, 2013, Wilmington Trust, National Association ("Wilmington

Trust"), solely in its capacity as indenture trustee for the Senior Unsecured Notes issued by

ResCap (the "Senior Unsecured Notes Trustee"), filed a motion seeking standing to prosecute

claims belonging to the ResCap estate, including: claims based on the fraudulent transfer of

ResCap's interest in Ally Bank; fraudulent transfer claims against AFI, GMACM, and RFC

relating to debt forgiveness; the disallowance of certain claims of AFI, GMACM, and RFC;

constructive trust, indemnification, contribution, and aiding and abetting breach of fiduciary duty

claims against AFI; and breach of fiduciary duty claims against the directors and officers of ResCap.[13]

75.    The Honorable James M. Peck was appointed as global plan mediator (the "Mediator") on December 26, 2012.  From January through the end of May 2013, in dozens of meetings and innumerable conference calls, the principal creditor constituencies in these cases met with the Mediator and with one another.

76.    Beginning in late April 2013, the Mediator convened a series of large group mediation sessions at Kramer Levin's offices in New York.  The first of these sessions lasted approximately twelve hours and was attended by over 140 participants, consisting of approximately 29 creditors or creditor group business representatives, accompanied by approximately 75 attorneys and 36 financial advisers.  Over the next month, approximately six more large group mediation sessions were held, as well as numerous conference calls and smaller group meetings.

77.    After months of intensive, arms-length negotiations at the global mediation sessions, the Mediation yielded a global compromise of estate and creditor claims and issues (the "Global Settlement").  On or about May 13, 2013, the Debtors, the Committee, a majority of the Debtors' creditor constituencies, and AFI executed a plan support agreement and term sheet (the "Plan Support Agreement" and "Plan Term Sheet," respectively).  These documents outlined the main terms of the Plan and the resolution of many complex legal issues involving the Debtors' largest claimant constituencies, and provided a framework for the Debtors' emergence from bankruptcy.

---

[13] Wilmington Trust also asserted claims it believed belonged to the Senior Unsecured Notes Trustee, including breach of the Notes Indenture, successor liability, breach of good faith and fair dealing and alter ego, tortious interference with contract, and equitable subordination.

ny-1114420

78.     By its terms, the Plan Support Agreement expressly denied the signatories an opportunity to renegotiate following release of the Examiner's Report.  This reflected the parties' view that the Examiner's analysis and conclusions were not the basis of the Global Settlement and, in fact, could jeopardize all progress achieved in the Mediation.

79.     Among other things, the Plan Term Sheet provided for AFI to furnish the estates with $2.1 billion in plan funding (the "AFI Contribution") and to receive a global release of estate and third party claims.

80.     After entry into the Plan Support Agreement, the parties resumed large group mediation over the terms of a supplemental plan term sheet (the "Supplemental Plan Term Sheet" and together with the Plan Term Sheet, the "Term Sheets").  The key subject of the Supplement Plan Term Sheet was the resolution of intercreditor and inter-debtor disputes made possible by AFI's commitment to contribute $2.1 billion.

81.     These negotiations culminated at approximately 9:00 a.m. on May 23, 2013, when the parties released their signature pages to the Supplemental Term Sheet and the Debtors filed a motion seeking authority to enter into and perform under the Plan Support Agreement and Terms Sheets.

82.     On May 23, 2013, the Debtors filed a motion seeking approval of the Debtors' entry into the PSA and related term sheets (the "PSA Motion").  On June 26, 2013, the Bankruptcy Court authorized the Debtors to enter into and perform under the Plan Support Agreement and Term Sheets.  In accordance with this agreement, the Debtors and the Committee proposed the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Plan").  The Plan implements and embodies the Global Settlement.

83.     Also on May 13, 2013 – the same day the Plan Term Sheet was agreed –
the Examiner issued his report (the "Examiner Report") detailing his investigation and
identifying and evaluating certain claims purportedly held by the estates and third parties.  The
Examiner did not release his report to the public or the parties to the case.  Rather, he delivered it
to the Bankruptcy Court where it was placed under seal.  After the Court approved the PSA
Motion, on June 26, 2013 – more than a month after the Global Settlement and the Term Sheets
had been fully agreed – the Bankruptcy Court unsealed the Examiner's Report, and the
Examiner's conclusions became available to the Debtors, their creditors and other stakeholders
for the first time.

84.     The Examiner Report identified a variety of potential claims that the
Examiner believed the estates could have been brought against AFI, many of which were
avoidance or commercial tort claims (on which, per the Court's earlier ruling, the JSNs could
have no lien).  The Examiner Report also identified the following potential claims that the JSNs
are now characterizing as contract claims:  (i) misallocation of revenues on loans brokered by
GMACM (the "Revenue Misallocation Claim"); (ii) failure to pay the value of purchased MSRs
(the "MSR Swap Claim"); and (iii) avoidance of a 2009 tax allocation agreement (the "Tax
Allocation Claim" and together with the Revenue Misallocation Claim and the MSR Swap
Claim, the "Purported Contract Claims").[14]  The Purported Contract Claims have never been
asserted against AFI by any party.

85.     As set forth in the Dubel Declaration, the Examiner's conclusions had no
influence on the Committee's approach to the Mediation and did not affect the terms of the

---

[14] The JSNs identified another contract claim as well, but Judge Lyons allocated it no value in his analysis.

Global Settlement.  In fact, the Examiner's Report remained under seal in the Bankruptcy Court until after the Plan Support Agreement had been signed and submitted to the Court for approval.

86.    AFI's agreement to the Global Settlement also was not based upon the Examiner's conclusions or the claims he purported to identify.  AFI, like everyone else, was able to review the Examiner Report only *after* the Global Settlement had been reached.  Moreover, as set forth in the Direct Testimony of James N. Young, Chief Financial Officer of Ally Bank, AFI does not believe the Purported Contract Claims to be meritorious.  And, as set forth in the Direct Testimony of Michael A. Carpenter, Chief Executive Officer of AFI, AFI did not allocate the AFI Contribution among the individual Debtor entities or to any particular cause of action asserted against AFI.  Instead, while AFI believed it would have defeated any claims asserted by the Debtors or other parties, AFI believed it would have taken an extended period of time to litigate those claims and it entered into the Global Settlement to achieve global peace.

### The JSNs Have Not Met Their Burden To Prove a Lien on Contract Claims

87.    Before even reaching the issue of allocation, the JSNs must show that they have a security interest that extends to the Purported Contract Claims.  They cannot.  The Notes Security Agreement, as a matter of law, could not have granted the JSNs a lien on contract claims that were inchoate at the time the Notes Security Agreement was entered into and as to which no claims were asserted prior to the Petition Date.  *See Capital Nat'l Bank of N.Y. v. McDonald's Corp.*, 625 F. Supp. 874, 879 (S.D.N.Y. 1986) ("[O]ne can only assign a chose in action that is sufficiently choate. . . . A breach of contract claim that existed at the time a security interest was granted, then unbeknownst to the creditor, does not 'partake of the requisite nature of collateral to which a security interest may adhere.'") (citation omitted); *Gonzalez v. Profile Sanding Equip. Inc.*, 776 N.E. 2d 667, 680 (Ill. App. Ct. 2002) ("chose in action" does not

39

include potential or inchoate claims; putative claim that has neither been asserted nor commenced is a "*potential* chose in action") (emphasis in original).

88.     Because the Purported Contract Claims between a wholly owned subsidiary and its parent company were unasserted and inchoate prior to the Petition Date, none of these claims could be subject to the JSNs' lien.  To date, none of these claims has been brought against AFI (or even asserted in the Standing Motion).  As a result, even if the Notes Security Agreement had purported to grant the JSNs a lien on contract claims, the JSNs have no lien on any of the potential claims identified by the JSNs.

89.     Even if the JSNs could prove that they had a lien on any identifiable contract claim against AFI, under the Intercreditor Agreement, AFI, as First Priority Collateral Agent, retained the ability to release that lien.  By entering into the Global Settlement which provides for the release of all estate claims, AFI effectively released any lien the JSNs can assert.

90.     In any event, the JSNs do not have a lien on the MSR Swap Claim because, as was proven in Phase I of the JSN Adversary Proceeding, as part of the May 14, 2010 release of Collateral, the JSNs released all "Servicing Rights Collateral," "all agreements, contracts, documents, and instruments if and to the extent evidencing or related to the Servicing Rights Collateral," and all "General Intangibles (including Payment Intangibles)" related thereto.

91.     As noted in the Lyons Report, the MSR Swap Claim arises under a swap arrangement that transferred the economics of Ally Bank's MSRs, including the daily fluctuations in Ally Bank-originated MSR values and the economics of servicing (i.e., the servicing related income and fees) to GMACM in exchange for GMACM paying a LIBOR-based rate of return to Ally Bank.  (*See* Lyons Report at 16.)  The servicing-related income and fees were derived from a servicing agreement, dated as of August 21, 2001, as amended,

ny-1114420

between GMACM and the Bank (the "Servicing Agreement") under which Ally Bank's MSRs were serviced by GMACM for a fee. Thus, the MSR Swap was related to and worked in conjunction with the Servicing Agreement, as GMACM's compensation under the Servicing Agreement directly impacted GMACM's recovery under the MSR Swap.

92.     Because the release includes "all agreements, contracts, documents, and instruments if and to the extent evidencing or related to the Servicing Rights Collateral," and because Servicing Rights Collateral is defined to include, *inter alia*, the "Servicing Rights," "the Servicing Contracts and all rights and claims thereunder," and all income associated with the Debtors' mortgage servicing rights (in each case, other than GSE MSRs), that release unquestionably covers the Servicing Agreement and therefore covers any alleged value that could have been recovered on account of the MSR Swap Claim.

### If The Global Settlement Is Approved, The JSNs' Lien (If Any) Has Zero Value For Determining The Amount Of Their Secured Claim

93.     If the Plan is confirmed and the Global Settlement approved, there will be no allocation of the AFI Contribution among causes of action. As a result, no value adheres to any lien on the Purported Contract Claims from the AFI Contribution. Neither the parties nor the Court is required to allocate the AFI Contribution, because it is simply not allocable.

94.     Moreover, the very concept of "allocation" of the settlement among potential causes of action is fundamentally misplaced. Where, as here, a settlement fund relates to a broad array of potential claims, some of which might be encumbered by a creditor's lien and others not, a court is not required to trace recoveries to specific causes of action. Rather, the settlement fund is better viewed as a "new asset," not subject to preexisting liens. *See, e.g., Nat'l Commc'ns Ass'n v. Nat'l Telcommc'ns Ass'n*, 1995 WL 236731 (S.D.N.Y. Apr. 14, 1995).

95.     Treating the AFI Contribution as a new asset rather than "proceeds" of any preexisting collateral is particularly appropriate in this case, for at least two reasons.  First, no claims were ever asserted against AFI.  The JSNs rely on the Examiner Report to identify claims, but the Examiner Report is hearsay and does not constitute evidence of the existence or merit of any claims against AFI.  Moreover, the claims identified in the Examiner Report could not have served as a basis for the AFI Contribution for the simple reason that the report was released *after* the settlement with AFI was reached.  Finally, neither the Committee nor the SUN Trustee, in their Standing Motions (filed prior to the settlement), referenced the Purported Contract Claims.  To allocate or trace any portion of the proceeds of the AFI Contribution to such contract claims would amount to a determination that AFI had paid a substantial sum to settle claims that no one had asserted – an absurd result.

96.     Second, even more so than in *National Communications*, the settlement proceeds at issue here are truly a "new" asset in that they never could have been obtained absent the intervention of bankruptcy.  Pursuant to section 552(a) of the Bankruptcy Code, "property that the estate acquired after the petition is not subject to the prepetition security agreement, even though the agreement expressly provided that it extends to after-acquired property."  *Nanuet Nat'l Bank v. Photo Promotion Assocs., Inc. (In re Photo Promotion Assocs, Inc.)*, 61 B.R. 936, 938 (Bankr. S.D.N.Y. 1986); *see* 11 U.S.C. § 552(a).  As with liens generally (*see* above discussion of burden), "[f]or purposes of section 552(a), the burden of proving that a lien survives postpetition has been placed upon the secured party."  5 Collier on Bankruptcy ¶ 552.01[4] (16th ed. 2013).  The JSNs cannot meet their burden.  Without the promise of broad estate and third party releases, which were obtainable only in bankruptcy, AFI would not have agreed to the $2.1 billion AFI Contribution.  The settlement fund is after-acquired property – not

proceeds of any prepetition collateral – and is therefore not subject to the JSNs' liens pursuant to section 552 of the Bankruptcy Code.

### The JSNs Have Not Met Their Burden of Establishing That Their Liens Extend to Any Portion of the AFI Contribution

97.    Even if the Court undertook to allocate the AFI Contribution, the JSNs – who bear the burden of proof – have provided no basis on which to allocate value to the Purported Contract Claims.  The JSNs rely on the Examiner Report to identify claims as to which portions of the AFI Contribution should be allocated.  But the Examiner Report, as just explained, did not form the basis for the Global Settlement.  The Committee conducted an extensive investigation, reviewing many species of claims held by the estates.  Based on that investigation – and alongside the Mediation – the Committee filed a motion seeking standing to prosecute certain claims against AFI.  The Committee's motion, and the standing motion filed by the SUN Trustee – which are the best contemporaneous evidence of what the settling parties believed the potential claims against AFI to be – identified claims based on theories of veil piercing/alter ego claims, tort and various forms of avoidance action.  The motions did not seek to pursue contract claims on behalf of the estates.  The evidence will show, moreover, that AFI assigned no value to the Purported Contract Claims in agreeing to the Global Settlement.  In fact, AFI did not assign value to any individual claims – which it viewed as universally weak – but rather paid for global peace and a blanket release.

98.    The JSNs' failure of proof is not remedied by the report (the "Lyons Report") of their proffered expert, Raymond T. Lyons.  Judge Lyons did little more than review the Examiner Report (which constitutes inadmissible hearsay), adopt certain of its conclusions about the viability of potential claims as his own, and then arbitrarily assign values to those claims.  The Lyons Report's opinions regarding the potential value of certain causes of action

ny-1114420

add nothing to this Court's own review of the potential claims.  In fact, the Lyons Report violates the well-settled rule barring purported expert opinion on domestic legal issues – again, usurping the Court's role.  Moreover, the Lyons Report relies on no independent or corroborative factual investigation.  Other than a handful of contracts, the report's conclusions rely on none of the approximately 10 million pages of documents in the Examiner Database.  And Judge Lyons interviewed none of the 83 witnesses to whom the Examiner spoke.

99.    In addition, as a substantive matter the Lyons Report does not meet the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and subsequent case law and rules.  The report expressly disclaims employing mathematical models – even as it proceeds to apply "a non-formulaic, nuanced approach" to calculating disparate ranges of ostensibly reasonable settlement values for dozens of hypothetical claims.  (*See* Lyons Report at 3.)  No authoritative texts or treatises are cited in support of this non-formulaic, nuanced approach.  Meanwhile, methods that the report does employ – *e.g.*, a "discount method," "settlement value" assessments, and "likely settlement negotiation scenario[s]" (*id.*) – are subjective, inconsistent, and in no apparent way verifiable.  The methods are also inherently speculative, inasmuch as none of the parties in these cases have instituted litigation of the claims that the report identifies, much less negotiated over their resolution.  For these and other reasons, the Plaintiffs have filed a motion *in limine* to preclude the JSNs from offering Judge Lyons' testimony.  Even if admitted, the Lyons Report should be accorded no weight.

100.    Finally, certain of the purported contract claims identified by the JSNs are not contract claims at all.  The Tax Allocation Claim and the Revenue Misallocation Claim are avoidance actions or commercial tort claims.  The Tax Allocation Claim is premised on the alleged failure to honor payment obligations under an initial 2009 agreement that ResCap never

44

signed.[15]  That agreement was expressly superseded by a second tax allocation agreement, executed by all parties, which contained no such payment obligations.  As Judge Lyons states, "to prevail on a claim for breach of contract damages related to the First 2009 Tax Allocation Agreement," a court would have "to set aside the Second 2009 Tax Allocation Agreement . . . as a fraudulent transfer."  (Lyons Report at 37.)  He proceeds to concede that "there are still significant risks associated with that claim."  (*Id.*)  Accordingly, any proceeds of that claim must be considered avoidance action proceeds upon which the JSNs do not have a lien.  Alternatively, any such claim premised on breach of contract would have no value to the JSNs as the predicate act – *i.e.*, the avoidance of the subsequent tax allocation agreement – will never occur.[16]

101.    In addition, the JSNs' characterization of the Revenue Misallocation Claim as a contract claim is misplaced.  First, the Committee sought standing to pursue claims sounding not in contract but in constructive and actual fraudulent transfer arising from the MMLPSA and Swap agreements between Ally Bank and GMACM.  In any event, the JSNs do not point to a single contractual provision that was in fact breached by AFI.  Nor could they, as this alleged claim arises from the interaction of multiple agreements executed for different purposes over many years – namely, the MMLPSA, the Pipeline Swap and MSR Swap, and a Broker Agreement.  Rather, their own purported expert, Judge Lyons, acknowledges that, in order to succeed on a contract-based claim, a plaintiff would need to rely on alleged oral modifications to preexisting agreements that did not permit such oral modifications.  (Lyons

---

[15] In his November 6, 2013 deposition in this matter, Mr. James Young, the ResCap officer who would have signed that agreement, described it as a "draft [that] was not arm's-length."  (Young Deposition at 142:18.)

[16] The JSNs have previously argued that the Second 2009 Tax Allocation Agreement would fail for lack of consideration, such that an avoidance action would not be necessary.  This is incorrect as a matter of law.  The state law rule on which the JSNs relied, which held that performance of a "pre-existing duty" cannot be consideration for modification, has been eliminated by two separate Michigan statutes, each providing that written modification of existing contracts need not be supported by consideration.  *See* Mich. Comp. Laws §566.1; *id.* §440.2209.  The two cases the JSNs have previously cited address oral modifications, and are thus irrelevant to the written modification of the tax allocation agreement.

45

Report at 13.)  As the Lyons Report tellingly observes, "it is possible that the contemplated

allocation of revenues was not mandated by the terms of the 2008 MMLPSA and Pipeline Swap.

If so, GMACM would need to prove that the contemporaneous Brokering Consumer Loans to

Bank Project documentation and the parties' ensuing implementation of the arrangement

constituted a written modification of those agreements to provide for the contemplated revenue

allocation."  (*Id.*)

        102.    Finally, the JSNs assert that they have a lien on a contract claim arising

from transactions under the MSR Swap.  This is an absurd proposition, in the first place because

the JSNs' own expert, who describes his views on this claim as being in "agree[ment] with the

Examiner's analysis and conclusions" (Lyons Report at 19), affirmed at deposition that "the

examiner concluded this claim was more likely not to prevail."  (Lyons Deposition 323:21-

24.)  Substantively, the claim ostensibly turns on what Mr. Young described as the "nonsensical"

notion that Ally Bank insufficiently compensated GMACM for MSRs arising from mortgage

loans that the Bank acquired independently of GMACM.  (*See* Young Deposition at 203.)  It also

would require that a court reform the parties' contractual agreement in a manner contrary to the

parties' consistent practice, and quite possibly contrary to Ally Bank's regulatory requirements,

as the JSNs' own expert also notes.  (*See* Lyons Report at 19.)

### *The Failure To Allocate The AFI Contribution Does Not Give Rise To An Adequate Protection Claim*

        103.    As with the Intercompany Balances, assuming the JSNs could prove that

they had a lien on any identifiable contract claim against AFI, the lien was illusory and without

value as of the Petition Date.  Any contract claim against AFI held by RFC, ResCap or other

grantors and obligors under the Revolver Facility would constitute collateral of the Lender

Agent.  As discussed above, under the Intercreditor Agreement, the Lender Agent – along with

ny-1114420

the First Priority Collateral Agent – retained the exclusive right to release its liens on any collateral and such release would be automatically binding on the JSNs, without the need for their consent.  *See* Intercreditor Agreement §§ 3.1(b), 5.1(a), 7.3(d) and Notes Indenture § 8.04(a).  Accordingly, the JSNs' purported lien on contract claims against AFI was valueless and wholly illusory, and the waiver of the JSNs' purported liens on contract claims against AFI did not result in a diminution in value of their collateral for purposes of adequate protection.

104.    Even assuming the JSNs' liens on contract claims were not valueless, under the terms of the Cash Collateral Order, the JSNs are not entitled to an adequate protection claim unless they prove that the *aggregate* value of their collateral package as of the Petition Date has declined in value, *i.e.,* that the aggregate value of their collateral package as of the Petition Date was greater than $1.745 billion.  The Purported Contract Claims cannot get the JSNs above this threshold, because, as noted above, (i) all of the Purported Contract Claims were inchoate at the time the Notes Security Agreement was entered into, (ii) at least two of the Purported Contract Claims were actually avoidance action on which the JSNs have no lien, (iii) the third Purported Contract Claim (the MSR Swap Claim) is not subject to their lien as a result of the May 14, 2010 release, and (iv) all of the claims faced numerous hurdles to enforceability as valid claims that make it impossible for the JSNs to carry their burden of proving that the Purported Contract Claims had a specified inherent value on the Petition Date.

### Section 552(b) Cuts Off the JSNs' Lien (If Any) on the AFI Contribution

105.    As set forth above, the AFI Contribution is best viewed as a new asset – *i.e.*, after-acquired property rather than the proceeds of prepetition collateral.  Under section 552(a) of the Bankruptcy Code, the JSNs' lien does not extend to after-acquired property that is not proceeds of their original collateral.

47

106.    If the Court were to conclude that the JSNs' lien otherwise would extend to some portion of the AFI Contribution, the Court should exercise its discretion to apply section 552(b) of the Bankruptcy Code to the JSNs' liens.  Under the "equities of the case" doctrine, the JSNs should not benefit from the $2.1 billion AFI Contribution that is an essential element of an extensively-negotiated postpetition global settlement that the JSNs had no role in creating and, indeed, have actively opposed.  It would be inequitable and contrary to section 552(b) for the JSNs to agree to a lower initial settlement, sit on the sidelines as the Committee worked to increase the size of the AFI Contribution, and then receive a windfall from the Committee's efforts.  The JSNs are sharing in the AFI Settlement by receiving full payment of their unsecured deficiency claims under the Plan; they are entitled to no more.

### (vi)  Contentions Regarding Adequate Protection

107.    If the Plan is confirmed, the JSNs' liens – if any – on Intercompany Balances and potential claims against AFI will be released.  The JSNs assert that this will result in a diminution in value of their aggregate collateral from the Petition Date to the Plan's effective date.  The JSNs are incorrect.  Even assuming the JSNs had any liens on any Intercompany Balances or claims against AFI, the value of those liens was negligible, if not zero.  Among other things, the JSNs' liens on both Intercompany Balances and claims against AFI, if any, were subject to waiver at any time without the JSNs' consent.  Such illusory liens have no value and their waiver under the Plan for no consideration is perfectly in keeping with the rights the JSNs' bargained for.  The JSNs bear the burden of proof in establishing a diminution in value, and they will not be able to show that the waiver of their purported liens resulted in any diminution in value.[17]

---

[17] At a minimum, the value of the Intercompany Balances should not take into account the AFI Contribution, which is only being funded as part of the Global Settlement.  As noted in the Confirmation Brief, each settlement that is

ny-1114420

### (vii)    Contentions Regarding Subordination of Claims

108.    In Counterclaims 32-34, the JSNs ask the Court to declare that "any allowed claim asserted by" an RMBS Trust, Monoline Insurer, or RMBS Certificate-Holder "be subordinated to all general unsecured claims, including intercompany claims, pursuant to [sic] section 11 U.S.C. § 510(b) of the Bankruptcy Code."  Defs.' First Amended Counterclaims [Adv. No. 13-01277, Dkt. No. 60] ¶¶ 238, 242, 246.  The Court should dismiss these counterclaims for two separate and independent reasons.

109.    First, the claims of the RMBS Trusts, Monoline Insurers, and RMBS Certificate-Holders (the "RMBS Claims") are being settled as part of the Global Settlement.  The Court has already held that it is permissible for a debtor to settle claims that could potentially be subject to § 510(b) subordination.  *In re Residential Capital, LLC*, 497 B.R. 720, 751-52 (Bankr. S.D.N.Y. 2013) (approving FGIC settlement agreement).  This settlement and plan treatment necessarily resolves any allegation by any party in interest, including the JSNs, that the RMBS Claims are subject to mandatory subordination under § 510(b).  As a result, there is no actual, substantial, or justiciable controversy between the Debtors and the Defendants that could warrant declaratory relief under 28 U.S.C. § 2201, and Counterclaims 32-34 should be dismissed.  Also, the counterclaims should be dismissed because the Global Settlement has currently rendered them moot, they are not ripe for adjudication, and they will be permanently mooted if the Plan is approved.  The JSNs have tacitly conceded that their § 510(b) claims are not properly asserted in these adversary proceedings by having asserted them in their Plan objection, which will be

---

part of the Global Settlement, including the agreement to waive the Intercompany Balances, was an integral part of the Global Settlement.  Thus, the Global Settlement (and concomitant AFI Contribution) would not have been possible without the waiver of the Intercompany Balances as true debt.

resolved through plan confirmation proceedings.  JSN Plan Obj. [Case No. 12-12020, Dkt. No. 5443] ¶¶ 75-91.

110.    Second, the RMBS Trustees, Monoline Insurers, and RMBS Certificate-Holders are required parties to these adversary proceedings because a judgment on Counterclaims 32-34 would impair or impede their ability to protect their interests.  *See* Fed. R. Civ. P. 19(a).  The JSNs' failure to join them as parties bars the Court from granting relief under Counterclaims 32-34 in their absence, and may also warrant dismissal of the counterclaims.  *See* Fed. R. Civ. P. 41(b).  Plaintiffs preserved their right to assert this defense, and put the JSNs on notice of their failure to join all required parties, through Plaintiffs' Twelfth Affirmative Defense:  "The Defendants' claims are barred, in whole or in part, because the Defendants failed to join a party under Rule 19 of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding by Rule 7019 of the Federal Rules of Bankruptcy Procedure."  Pls.' Answer [Adv. Case No. 13-01277, Dkt. No. 69] ¶ 263.

### (viii)    Contentions Regarding Default Interest and Fees

111.    While the JSNs' entitlement to default rate interest and fees is technically a Phase II issue, the Court has previously indicated it will not rule on the issue unless and until it determines that the JSNs are oversecured.  *See* Aug. 28 Hr'g Tr. 179:22-180:10.  Nevertheless, the Defendants now contend that they are entitled to reimbursement for fees and expenses of $38.8 million incurred between June 1, 2013 through October 31, 2013 (and additional fees and expenses incurred thereafter), regardless of whether they are oversecured.  Plaintiffs contend that Defendants are not entitled to reimbursement of these fees and expenses because the Defendants are undersecured and because the asserted fees and expenses are patently unreasonable.  The JSNs cannot burden the estates with such enormous expense (their own in addition to those

imposed in defense), particularly in the event the outcome of their scorched-earth litigation strategy is a determination that they are undersecured.

112.     Indeed, in Count XIV of the Committee Complaint, the Committee seeks to recharacterize all postpetition payments of fees, costs, and expenses made to, or incurred for the benefit of, the Secured Parties, as undersecured creditors, as payments against the principal amount of the Notes Obligations.

113.     The Defendants have no right to recover postpetition fees, costs, and expenses from the estates over and above the amount of the JSNs' claim recovery because the JSNs are undersecured.  While the Notes Trustee is entitled to *reasonable*[18] postpetition fees and expenses out of the JSNs' claim recovery as provided for by the charging lien mechanism contained in the Notes Indenture, *nothing* in the Notes Indenture, the JSN Security Agreement, any other relevant prepetition agreement, the Bankruptcy Code, or applicable law provides the Ad Hoc Group or individual Junior Secured Noteholders with a similar right – whether the JSNs are determined to be over *or* undersecured.  Moreover, to the extent that the JSNs are oversecured, the Notes Trustee's recovery of postpetition fees, costs and expenses (upon mandatory application pursuant to Bankruptcy Rule 2016) is expressly limited to those fees, costs and expenses determined by the Court to be "reasonable" pursuant to section 506(b) of the Bankruptcy Code and applicable case law.  The JSNs have not met their burden to show the amount of their fees, costs and expenses at all let alone their reasonableness.

114.     In addition, for the reasons set forth in the Plaintiffs' briefing in connection with the earlier motions to dismiss in these adversary proceedings, the JSNs are not

---

[18] The Notes Trustee's entitlement to any such fees, costs and expenses from the estates is expressly subject to the reasonableness requirements contained both in the Notes Indenture, and, *inter alia*, section 1129(a)(4) of the Bankruptcy Code.

entitled to default rate interest, and, depending on the equities of the case, may not even be entitled to base contract rate interest.[19]  As the Second Circuit has made clear, the contract rate does *not* control for purposes of awarding interest under section 506 of the Bankruptcy Code. *See Key Bank, N.A. v. Milham (In re Milham)*, 141 F.3d 420, 423 (2d Cir. 1998) (contract rate does not control).[20]  Finally, the Plaintiffs will present argument regarding the proper accretion of OID over the course of the bankruptcy proceedings at the appropriate time, if the issue becomes necessary to decide.

### (ix)  Contentions Regarding Aggregation of Collateral

115.    The Plaintiffs have previously argued that the JSNs could be entitled to post-petition interest only if they are oversecured by reference to the assets at any given debtor, *i.e.*, each of the JSNs' claims must be evaluated to determine whether it is oversecured by assets at the Debtor against which the claim is asserted.[21]  In response to this argument, the JSNs have suggested that they may have responses or defenses emanating from sections 502(e) and 509(c) of the Bankruptcy Code.  The JSNs have steadfastly refused to explain or substantiate these theories, and the Plaintiffs do not believe they have any bearing on the allowance of the JSNs' claims.  However, the Plaintiffs reserve the right to respond to any additional arguments raised by the JSNs in this regard.

---

[19] *See* Memorandum of Law in Support of the Debtors' and Official Committee of Unsecured Creditors' Motion to Dismiss Certain of the Defendants' Counterclaims at 27-28 [Adv. No. 13-01343, Dkt. No. 22]; Reply Brief of the Debtors and Official Committee of Unsecured Creditors in Support of Their Motion to Dismiss Certain of the Defendants' Counterclaims at 23-25 [Adv. No. 13-01343, Dkt. No. 40].

[20] *See also, e.g., In re Coram Healthcare Corp.*, 315 B.R. 321, 347 (Bankr. D. Del. 2004) (determining, based on unsecured noteholders' conduct, that awarding interest at contract rate would be inequitable).

[21] *See* Debtors' and Official Committee of Unsecured Creditors' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Debtors' First Amended Complaint at 5-16 [Adv. No. 13-01343, Dkt. No. 30]; Plaintiffs' Phase I Post-Trial Brief at 60-66 [Adv. No. 13-01343, Dkt. No. 134].

ny-1114420

## INDENTURE TRUSTEE AND AD HOC GROUP
## OF JUNIOR SECURED CREDITORS' CONTENTIONS

### I.    RESERVATION OF RIGHTS AND INCORPORATION BY REFERENCE

1.    Set forth below is a non-exhaustive statement of the JSNs' contentions as to the ultimate issues of fact and law to be tried.  The statement is not intended to waive, and does not waive, any rights with respect to claims previously dismissed.

2.    The JSNs hereby incorporate by reference the factual and legal arguments set forth in the Objection of the Notes Trustee and Ad Hoc Committee of Junior Secured Noteholders to Confirmation of Plan Proponents' Chapter 11 Plan, dated October 22, 2013 [Dkt. No. 5443] (the "Plan Objection") and the Statement of UMB Bank, N.A. With Respect to Objection of Wells Fargo Bank, N.A. to Confirmation of the Joint Chapter 11 Plan [Dkt. No. 5636].

### II.    THE JSNs HAVE VALID AND ENFORCEABLE LIENS ON THE DEBTORS' BREACH OF CONTRACT CLAIMS AND INTERCOMPANY CLAIMS

#### A.    The JSNs' Collateral Package

3.    On or about June 6, 2008, Residential Capital, LLC ("ResCap"), as issuer, entered into an indenture with U.S. Bank National Association as Indenture Trustee (the "Notes Indenture").

4.    Pursuant to the Notes Indenture, ResCap obligated itself to pay in full all principal, interest, and fees due to the JSNs under the Notes Indenture.  (Notes Indenture §§ 4.01, 10.01.)

5.    Simultaneously with the Notes Indenture, ResCap, as issuer (the "Issuer"), and GMAC-RFC Holding Company, LLC; GMAC Mortgage, LLC ("GMACM"); GMAC Residential Holding Company, LLC ("ResHolding"); HomeComings Financial, LLC

53

("HomeComings"); and Residential Funding Company, LLC ("RFC"), as guarantors (the "Guarantor Debtors," and together with the Issuer, the "Grantors"), entered into the Amended and Restated Third Priority Pledge and Security Agreement and Irrevocable Proxy, dated as of December 30, 2009 (the "JSN Security Agreement").

6.      Pursuant to the JSN Security Agreement, the JSNs received security interests (collectively, the "JSN Liens") in certain of the assets of the Grantors (the "JSN Collateral"), including an "all asset" lien on the assets of the Grantors, as well as security interests and pledges as to specific assets, including "General Intangibles" and the proceeds therefrom.  (JSN Security Agreement § 2.)

7.      The JSN Security Agreement grants the JSNs a blanket lien on "all Assets" of the Grantors, "whether now or hereafter existing, owned, or acquired," including, inter alia, Accounts, Chattel Paper, Deposit Accounts, Documents, General Intangibles, Goods, Instruments, Money, and, "to the extent not included in the foregoing, all other personal assets and property of any kind or description."  (JSN Security Agreement § 2.)

8.      The grant of these security interests is subject only to a very few, expressly identified exceptions.  For example, the JSNs' security interest in the Grantors' commercial tort claims was limited to those specifically listed on a schedule to the JSN Security Agreement.  (Id.)  Although the JSNs' security interest in commercial tort claims was limited to those claims specifically identified on the schedule, no such effort was made to limit the JSNs' security interest in the Grantors' breach of contract claims.

9.      In addition, pursuant to the JSN Security Agreement, certain Debtors (the "Equity Pledgors")[22] granted to the JSNs pledges of equity (the "Equity Pledges") in certain other Debtors (the "Pledged Equity Issuers")[23].

10.     The Pledged Equity Issuers have granted releases to Ally under the Plan and are the beneficiaries of material intercompany claims from Debtor and non-Debtor entities. (JSN Security Agreement §§ 2, 3, 4.)  Because most of the Pledged Equity Issuers have no material creditors, any distributions to debtor entities who owe money to the Pledged Equity Issuers would result in the intercompany debts owned by the Pledged Equity Issuers having value.[24]

11.     The JSN Security Agreement granted a security interest in these assets "whether now or hereafter existing, owned or acquired and wherever located and howsoever created, arising or evidenced as."  (*Id*. § 2.)

12.     The Debtors have stipulated that "the liens and security interests granted to secure the [JSNs] . . . are valid, binding, perfected, and enforceable first priority liens on and security interests" in the property constituting collateral under the Indenture and Notes Security Agreement.[25]

13.     The JSN Collateral includes (i) intercompany claims on which the JSNs possess a direct lien (the "Direct Lien Intercompany Claims"); (ii) claims against Ally, such as

---

[22] The Equity Pledgors are GMAC Model Home Finance I, LLC; Developers of Hidden Springs, LLC; DOA Holding Properties, LLC; Equity Investment IV, LLC; RFC Construction Funding, LLC; RFC Asset Holdings II, LLC; and Passive Asset Transactions, LLC.

[23] The Pledged Equity Issuers are identified in Items A through C of Attachment I to the JSN Security Agreement.

[24] Rescap and the Guarantor Debtors are also "Pledgors" under the JSN Security Agreement.  (JSN Security Agreement § 1.)

[25] Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to use Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties (the "Cash Collateral Order") ¶ 5(g) [Dkt. No. 491].

breach of contract claims, on which the JSNs possess a direct lien (the "Direct Lien Ally Claims"); and (iii) intercompany claims (the "Indirect Lien Intercompany Claims," and together with the Direct Lien Intercompany Claims, the "Intercompany Claims") and/or claims against Ally (the "Indirect Lien Ally Claims," and, together with Direct Line Ally Claims, the "Ally Claims") in favor of the Pledged Equity Issuers (together with the Intercompany Claims and the Ally Claims, the "Subject Collateral").

### B.    The "Global" Settlement

14.    On July 3, 2013, ResCap and its affiliated Debtors (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Creditors' Committee," and together with the Debtors, the "Plan Proponents") filed the Joint Chapter 11 Plan of Residential Capital, LLC, et al. (the "Plan") and filed the related disclosure statement on July 4, 2013.  On August 23, 2013, the Plan Proponents filed the Corrected Solicitation Version of the Disclosure Statement and Joint Chapter 11 Plan (the "Disclosure Statement" [Dkt. No. 4819]), which the Court approved on August 23, 2013.  (Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on the Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of the Plan, and (VI) Granting Related Relief [Dkt. No. 4809].)

15.    The Plan is also supported by Ally Financial Inc. ("AFI," and together with its direct and indirect subsidiaries, "Ally"), the Debtors' ultimate corporate parent, and certain other of the Debtors' creditors (the "Consenting Claimants").

16.     As part of the Plan, various parties including the Debtors, the Creditors'

Committee, and Ally entered into what they call a "global" settlement (the "Global Settlement")

of a number of issues and claims among the Consenting Claimants.

17.     The Global Settlement embodied in the Plan provides for, among other

things, (a) the settlement of various claims against Ally and a grant to Ally of broad estate and

third-party releases (the "Third-Party Releases") in exchange for a payment from Ally in the

amount of $2.1 billion[26] (the "Ally Contribution"); (b) a compromise of all Intercompany Claims

for zero consideration; (c) a settlement of issues relating to substantive consolidation by

providing for partial consolidation of the Debtors into three Debtor groups; (d) a resolution of

claims of (i) certain holders of residential mortgage-backed securities (the "RMBS Trust

Claims"); (ii) certain monoline insurers (the "Monoline Insurer Claims"); and (iii) certain private

securities litigation claimants (the "Private Securities Claims"; together with the RMBS Claims

and the Monoline Insurer Claims, the "Securities-Related Claims").  (Disclosure Statement at 2-

4.)

18.     Under the Global Settlement, the Debtors are divided into three groups

receiving the following from the Ally Contribution: the "ResCap Debtors"[27]–$782.74 million;

the "GMACM Debtors"[28]– $462.32 million; and the "RFC Debtors"[29] – $462.32 million.  (*Id.* at

43.)  In addition, three groups of claimants would receive direct allocations of the Ally

---

[26] The Ally Contribution consists of $1.95 billion in cash to be paid on the effective date of the Plan and "the first $150 million received by Ally for any Directors and Officers or Errors and Omissions claims it pursues against its insurance carriers related to the claims released in connection with the Plan . . . ." (Disclosure Statement at 22.)

[27] Included among the "ResCap Debtors" are ResCap, ResHolding, and GMAC-RFC Holding Company, LLC. (Disclosure Statement at 6.)

[28] Included among the "GMACM Debtors" are each of the direct and indirect Debtor subsidiaries of GMAC Residential Holding Company, LLC.  (Disclosure Statement at 6.)

[29] Included among the "RFC Debtors" are each of the direct and indirect Debtor subsidiaries of GMAC-RFC Holding Company, LLC.  (Disclosure Statement at 6.)

ny-1114420

Contribution (if approved):  the Private Securities Claims Trust – $235.00 million; the Borrower

Claims Trust – $57.62 million; and the NJ Carpenters Claims Distribution – $100.00 million.

19.    Lewis Kruger, the Debtors' Chief Restructuring Officer, testified that the

allocations of the direct claims to the three Debtor groups was determined to be "an appropriate

allocation of funds in order to both reflect the claims that were present in the various Debtors'

estates in these three silos, the assets that were available there, and the distribution of the Ally

proceeds that would encompass the results that creditors wanted to see achieved. . . ."

(Designated Deposition Testimony of Lewis Kruger, dated October 30, 2010 ("<u>Kruger Tr.</u>") at

112:15-113:18.)

20.    Thus, when it suited their interests to do so, the Debtors were able to and,

in fact, did allocate portions of the Ally Contribution directly to constituencies in these cases in

consideration for their claims asserted against Ally, among others.

21.    Although the bulk of the Ally Contribution was allocated directly to the

claimants identified above on account of particular claims asserted, the Debtors did not further

allocate the Ally Contribution on a claim-by-claim basis among the claims that the Debtors had

against Ally.  In other words, the Debtors failed to allocate the Ally Contribution to particular

claims, *e.g.*, potential commercial tort claims, avoidance claims, or breach of contract claims

against Ally.  Nor did the Debtors seek to allocate the Ally Contribution among any other

Debtors.

22.    The Debtors failed to do so, notwithstanding the fact that the JSNs have direct liens on the proceeds of all claims (excluding only commercial tort and avoidance action claims and including breach of contract claims) that any Debtor had against Ally.[30]

23.    The Global Settlement is contingent upon the confirmation of the Plan. (*See* Residential Capital, LLC and Certain of its Direct and Indirect Subsidiaries Term Sheet for Proposed Joint Chapter 11 Plan, at 4; Plan Support Agreement, dated May 13, 2013, § 6.1(i).) The proposed waiver of the intercompany balances for zero value, therefore, occurs only to the extent that the Consenting Claimants receive their agreed-upon distributions under the Global Settlement.

C.    **The JSNs Have Valid Liens on the Breach of Contract Claims and Intercompany Claims that Are to Be Settled as Part of the Global Settlement**

1.    **The JSNs Have a Valid Lien on the Breach of Contract Claims**

24.    The Debtors' strongest claims against Ally are breach of contract claims, with potential damages exceeding several billion dollars.[31]  The Plan Proponents, however, made no effort to allocate any portion of the Ally Contribution to the breach of contract claims, *i.e.,* the claims on which the JSNs have liens.

25.    Without providing any evidence, legal authority, or expert opinion, the Debtors assert that "there is no basis for allocating the Ally Contribution to specific third party or estate causes of action—let alone allocating any portion of it to potential causes of action on

---

[30] With respect to the claims arising out of Ally's use of ResCap's tax attributes, the JSNs also have a lien on all tax refunds.  (JSN Security Agreement § 1 (General Intangibles) (including "tax refunds claims" within the definition of "general intangibles").)

[31] The JSNs have a lien on all breach of contract claims, whether against Ally or against other third parties, including certain breach of contract claims that have not been analyzed herein for allocation purposes (for example, AFI's breach of the 2005 Operating Agreement).  The JSNs expressly reserve all rights with respect to those breach of contract claims not referenced herein.  Similarly, the JSNs expressly reserve all rights with respect to all breach of contract claims against any third parties, whether or not disclosed.

which the JSNs have asserted liens."[32]  The Debtors' lead financial advisor, Mark Renzi,

conceded at deposition that the Debtors could have performed this analysis—they simply chose

not to:

> Q: Did you ever analyze claims that ResCap entities might have against Ally?
>
> A: I don't think so.  I think that's what the Examiner did.
>
> Q: Could you have done it if you were asked?
>
> A: ***I am sure that we could have assembled a team that did the work that the examiner's advisors have done, so yes***, I know it was a pretty exhaustive and long process.
>
> (Designated Deposition Testimony of Mark Renzi, dated November 6, 2013 ("Renzi Tr."), at 17:20-18:8 (emphasis added).)

26.    The Debtors further contend that an attempt to "'allocate' the proceeds of

the Ally Contribution in these circumstances to one claim or another, or to one Debtor or

another, is contrary to the terms of the Global Settlement."[33]  In point of fact, the only reason the

Plan Proponents chose not to allocate any value to (or even analyze) the breach of contract

claims on which the JSNs have liens is because doing by itself so would result in the JSNs being

indisputably vastly oversecured.

27.    The failure to allocate the value arising from the compromise of the breach

of contract claims against Ally violates the JSNs' rights under the JSN Security Agreement.  As

set forth *infra*, the JSN Security Agreement granted the JSNs a security interest in the breach of

contract claims held by ResCap and the Guarantor Debtors and proceeds derived therefrom by

way of the grant of a security interest in "General Intangibles."  (JSN Security Agreement § 2(i).)

---

[32] Disclosure Statement Omnibus Reply [Dkt. No. 4723] at 16.
[33] Disclosure Statement Omnibus Reply at 16.

ny-1114420

28.    The JSN Security Agreement defines "General Intangibles" by reference to the Uniform Commercial Code (the "UCC")[34] (JSN Security Agreement § 1), which defines general intangibles as "any personal property, including things in action," other than, *inter alia*, accounts and commercial tort claims.[35]  The express exclusion of commercial tort claims from the definition of "general intangibles" is important.  To the extent that the drafters of the UCC intended to also exclude breach of contract claims from the definition of "General Intangibles" (*i.e.,* "things in action"), they certainly could have done so expressly, as they did in excluding commercial tort claims.  *See, e.g.*, *Hoerger v. Spota*, 109 A.D.3d 564, 568 (N.Y. App. Div. 2013) ("Pursuant to the maxim of statutory construction 'expressio unius est exclusio alterius,' where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded") (internal quotations omitted).

29.    The JSN Security Agreement's definition of General Intangibles also includes, "without limitation," the Grantors' "licenses, franchises, tax refund claims, guarantee claims, security interests and rights to indemnification."  (JSN Security Agreement § 1.)

30.    New York courts that have considered this issue have all found that a creditor's lien on "general intangibles" encompasses breach of contract claims.  *See Urban Communicators PCS Ltd. P'ship v. Gabriel Capital, L.P.*, 394 B.R. 325, 337 (Bankr. S.D.N.Y. 2008) ("[L]iens on the Debtors' general intangibles encompassed . . . any claims and causes of action possessed by the Debtors."); *see also In re Iroquois Energy Mgmt., LLC*, 284 B.R. 28, 31 (Bankr. W.D.N.Y. 2002) (debtor's right to a refund under a contract was a "general intangible" under the UCC).

---

[34] The JSN Security Agreement states that "the terms . . . General Intangibles . . . [and] Proceeds have the respective meanings assigned thereto in Article 8 or Article 9 of the UCC . . . ."  (JSN Security Agreement § 1.)
[35] NYUCC § 9-102(a)(42).

31.     Courts outside of New York, which sometimes use the synonymous term "choses in action,"[36] also have regularly held that breach of contract claims constitute general intangibles to which a creditor's lien attaches.  *See Merchants Nat'l Bank of Mobile v. Ching*, 681 F.2d 1383, 1385, 1388-89 (11th Cir. 1982) (claim for damages under breach of contract theory constitutes a chose in action); *In re Bell Fuel Corp.*, 99 B.R. 602, 605-06 (E.D. Pa. 1989) ("contractual right to receive payment qualifies as a chose in action"); *Virginia Nat'l Bank v. Phoenix Marine Corp. (In re Phoenix Marine Corp.)*, 20 B.R. 424, 426 (Bankr. E.D. Va. 1982) (secured party's interest in general intangibles covered choses in action and therefore covered proceeds of settlement of lawsuit); *see also* 63C Am. Jur. 2d Property § 23 (2013) ("The general class of choses in action includes money due on a bond, note, or other contract, [and] damages due for breach of contract . . . .").  Accordingly, the breach of contract claims are General Intangibles within the meaning of the JSN Security Agreement and thus subject to the JSNs' liens.

32.     The fact that this case is about the *proceeds* of a putative settlement of, *inter alia*, breach of contract claims does not change the legal or contractual analysis.  The JSN Security Agreement granted the JSNs a lien on the "proceeds" of General Intangibles, and thus of the contracts of the Grantors.  (JSN Security Agreement § 2.)  The UCC defines "proceeds" as including "rights arising out of collateral . . . claims arising out of the loss, noncomformity, or interference with the use of, defects, or infringement of rights in, or damage to, the collateral . . . ."[37]

33.     Again, the law is clear that damages on breach of contract claims constitute "proceeds" of the contracts themselves and are part of a secured party's lien on general

---

[36] *See First Am. Bank Valley v. George J. Hegstrom Co.*, 551 N.W.2d 288, 291 (N.D. 1996) ("A thing in action is the same as a 'chose in action'").

[37] NYUCC § 9-102(a)(64).

intangibles.  *See Effect Commc'ns W., Inc. v. BOCES*, 84 A.D.2d 941, 942 (N.Y. App. Div.

1981) (proceeds of a secured party's interest in all present and future contract rights included

judgment on contract claim); *In re Chase Manhattan Bank v. New York*, 48 A.D.2d 11, 12-14

(N.Y. App. Div. 1975) (including "contract rights" in personal property and finding that security

interest in contract attached to proceeds of contract).

        34.      Accordingly, as both General Intangibles and proceeds of a General

Intangible, the breach of contract claims and proceeds derived as a result of a settlement of the

breach of contract claims both constitute collateral over which the JSNs have a lien under the

JSN Security Agreement.  *See First Am. Bank Valley v. George J. Hegstrom Co.*, 551 N.W.2d

288, 291-92 (N.D. 1996) ("proceeds from an anticipated recovery from an impending lawsuit

constitute general intangibles . . . .  Logically, the proceeds of a resulting settlement are also

considered general intangibles") (collecting cases); *see also In re Boogie Enter.*, 866 F.2d 1172,

1174 (9th Cir. 1989) (settlement proceeds are a "general intangible").  And Section 552(b)(1) of

the Bankruptcy Code recognizes as valid the grant to the JSNs of the proceeds of General

Intangibles, including any proceeds of breach of contract claims.  *See* 11 U.S.C. §

552(b)(1).  This is true even where the underlying property subject to the security interest (*e.g.*,

rights to enforce the breach of contract claims) is transformed into something else (*e.g.*, the Ally

Contribution).  *See Bradt v. Woodlawn Auto Workers F.C.U. (In re Bradt)*, 757 F.2d 512, 515

(2d Cir. 1985) (stating that "[p]roceeds is intended to be a broad term to encompass all proceeds

of property of the estate") (internal quotations omitted).

        35.      A portion of the Ally Contribution was made to settle the Debtors' breach

of contract claims: the releases Ally obtained from the Debtors as part of the Global Settlement

"include any and all Causes of Action, including tort, fraud, contract, violations of federal or

state securities laws, and veil-piercing or alter-ego theories of liability, whether known or unknown, asserted or unasserted . . . ." (Disclosure Statement at 23.) The JSNs are, therefore, entitled to the value of at least a portion of the Ally Contribution.

36.     The Debtors and the Creditors' Committee are estopped from challenging the validity of the JSNs' liens on the breach of contract claims. Under the Cash Collateral Order, the Debtors stipulated to the validity of the JSN Liens, and the Creditors' Committee was given 90 days from the entry of the Cash Collateral Order to challenge the stipulations in the Cash Collateral Order. (Cash Collateral Order ¶ 28.) If no challenge was filed, the stipulations, admissions, and releases contained in Paragraph 5 of the Cash Collateral Order would be binding, and if a challenge was filed, any unchallenged stipulations, admissions, or releases would be binding against the Creditors' Committee. (*Id.*)

37.     Although the Creditors' Committee asserted that the JSNs do not have liens on commercial tort or avoidance actions, its challenge to the Cash Collateral Order did not challenge the stipulation to the validity of the JSNs' liens on General Intangibles, or more specifically, contract claims, as it did with commercial tort and avoidance actions, rendering that stipulation binding against the Creditors' Committee. Because the breach of contract claims and the proceeds therefrom are General Intangibles, the Creditors' Committee has waived its right to challenge the JSN Liens on those claims.

38.     In response, the Plan Proponents have offered two new principal arguments in an attempt to circumvent their prior waiver.

39.     *First*, the Plan Proponents contend that the JSNs do not have a lien on the breach of contract claims because the JSN Security Agreement "could not have granted the JSNs a lien on contract claims that were inchoate" when the JSN Security Agreement was entered into

"and as to which no claims were asserted prior to the Petition Date." (Joint Pretrial Order, dated October 9, 2013 ("Phase I PTO"), at 39.)

40.     As an initial matter, even if the claims were in fact inchoate, which they were not, the Debtors and the Creditors' Committee waived this argument. As noted above, the Debtors stipulated in the Cash Collateral Order that "the liens and security interests granted to [the JSNs] . . . are valid, binding, perfected, and enforceable . . . ." (Cash Collateral Order ¶ 5(g).) The JSN Security Agreement expressly stated that the JSN Liens extended to collateral "whether now or hereafter existing, owned, or acquired . . . ." (JSN Security Agreement § 2.) The Creditors' Committee failed to challenge the liens on after-acquired "inchoate claims" and is, therefore, bound by the stipulation in the Cash Collateral Order.

41.     The Creditors' Committee's argument is also incorrect as a matter of fact and law and is inconsistent with the plain text of the JSN Security Agreement. As noted below, the most material breach of contract claims accrued prior to the execution of the JSN Security Agreement on December 30, 2009.[38] The Grantors, therefore, possessed the causes of action on the date they entered into the JSN Security Agreement, and those causes of action, whether prosecuted or not, constituted general intangibles subject to the JSNs' liens.[39]

42.     The distinction the Plan Proponents seek to draw—that contract claims accruing after the execution of the Security Agreement render those claims outside of the JSNs' security interest—is simply incorrect as a matter of law. All of the breach of contract claims constitute the proceeds of the contracts themselves, which, as general intangibles, were collateral

---

[38] Under New York law, a cause of action for breach of contract is deemed to accrue as of the occurrence of the conduct giving rise to the breach. *Chelsea Piers, L.P. v. Hudson River Park Trust*, 106 A.D.3d 410, 412 (N.Y. App. Div. 2013).

[39] *See Urban Communicators*, 394 B.R. at 337 ("liens on the Debtors' general intangibles encompassed . . . any claims and *causes of action* possessed by the Debtors") (emphasis added).

ny-1114420

under the JSN Security Agreement. And the Bankruptcy Code expressly allows the extension of liens to cover post-petition proceeds of pre-petition collateral.[40]

43.    Even had the breach of contract claims accrued at some point after the execution of the JSN Security Agreement, the JSNs were also granted a security interest on the Grantors' General Intangibles "whether now or hereafter existing, owned, or acquired . . . ." (*i.e.*, the JSN Security Agreement includes an "after-acquired property clause"). (JSN Security Agreement § 2.)

44.    Indeed, the UCC specifically recognizes such security interests in after-acquired property. *See* NYUCC § 9-204(a) ("a security agreement may create or provide for a security interest in after-acquired collateral"); 1-13 N.Y. Comm. Lit. Guide § 13.15 ("Article 9 permits a security agreement to provide for extension of a security interest to after-acquired property . . . . Such interests are of equal force as security interests created in specific, extant collateral in which the debtor has rights at the time of the formation of the security agreement."); *see also Algonquin Power Income Fund v. Trafalgar Power, Inc.*, 509 F. App'x 82, 85-86 (2d Cir. 2013) (holding that security agreement's grant of lien on rights in action was sufficient to grant a lien on claim "even if [grantor's] interest in the claim was granted after execution" of the security agreement); *In re Heron, Burchette, Ruckert & Rothwell*, 148 B.R. 660, 683 (Bankr. D.D.C. 1992) ("Where the parties include an after acquired property clause, inchoate causes in action are brought within the grasp of the security interest").

45.    The Creditors' Committee cites two cases in support of its argument that the JSN Liens do not attach to "inchoate" breach of contract claims. The first, *Capital National Bank of New York v. McDonald's Corp.*, 625 F. Supp. 874, 879 (S.D.N.Y. 1986), is of no

---

[40] *See* 11 U.S.C. 552(b)(1) (if a security agreement grants a creditor a security interest in the proceeds of collateral, "such security interest extends to such proceeds . . . acquired by the estate after the commencement of the case to the extent provided by such security agreement . . . .").

ny-1114420

precedential value because it was decided before the UCC was amended to recognize security interests in after-acquired property.  The court's reasoning "is an example of the reasoning the U.C.C. after-acquired property provisions rejected."  *Parker Roofing Co. v. Pac. First Fed. Sav. Bank*, 796 P.2d 732, 735 (Wash. Ct. App. 1990).

46.     The second case the Creditors' Committee cites, *Gonzalez v. Profile Sanding Equip. Inc.*, 776 N.E.2d 667 (Ill. App. 2002), is inapposite.  In *Gonzalez*, the Illinois appellate court interpreted "chose in action" outside the context of the UCC to exclude "potential or inchoate claims."  *Id.* at 680.  The statute at issue in *Gonzalez* dealt with the power of a court to order the turnover of assets from a judgment creditor to a judgment debtor.  In that context, the court held that a chose of action, to be subject to the court's turnover powers, must be "capable of delivery and to which [the judgment debtor's] title or right of possession is not substantially disputed."  *Id.* at 678 (citing 735 ILCS 5/2-1402).  But determining whether a chose of action may be "delivered" is a substantially different question than determining whether an after-acquired security interest may be granted in that chose.  The case involved no provision of law analogous to the after-acquired property clause in the JSN Security Agreement.[41]

47.     *Second*, the Creditors' Committee has argued that the JSN Liens do not attach to any post-petition proceeds of the Debtors' causes of action against Ally because the Plan Proponents' efforts in negotiating the Global Settlement and increasing the amount of the Ally Contribution trigger the "equities of the case" exception set forth in Section 552(b)(1) of the Bankruptcy Code.[42]  (Phase I PTO at 40-41.)  Because the definition of collateral includes the

---

[41] Additionally, the chose of action at issue in *Gonzalez* was a breach of fiduciary duty/legal malpractice claim, which the court found to be non-assignable based on public policy grounds.  *See Gonzalez*, 776 N.E.2d at 695-96 (legal malpractice claims are not assignable because of the "nature of the attorney-client relationship and public policy.").

[42] As part of the Cash Collateral Order, the Debtors waived the "equities of the case" exception with respect to prepetition collateral.  (Cash Collateral Order ¶ 18(c).)

proceeds of collateral, the Creditors' Committee was required to raise this argument within the challenge period.  By failing to do so, the Creditors' Committee has waived the right to make it. The Creditors' Committee's "equities of the case" argument is also without merit.

48.    Generally, Section 552(b)(1) allows a secured creditor with a valid pre-bankruptcy lien on the "proceeds, products, offspring, or profits" of collateral to have that interest enforced against such proceeds acquired *after* the commencement of the bankruptcy, unless the court, "after notice and a hearing based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b)(1).

49.    The "equities of the case" exception is "intended to ensure that secured creditors do not receive a windfall benefit when a trustee uses assets of the estate, for example, to finish uncompleted inventory, and it is also used to adjust recovery by a secured creditor in situations where there is an improvement or decline in the post-petition collateral, especially in situations where the change in value is brought about by a party in the bankruptcy."  *In re Barbara K. Enter., Inc.*, No. 08-11474, 2008 WL 2439649, at *11 (Bankr. S.D.N.Y. June 16, 2008) (Glenn, J.); *see also In re Photo Promotion Assoc., Inc.*, 61 B.R. 936, 939 (Bankr. S.D.N.Y. 1986) (quoting *J. Cotton Farms, Inc. v. First Nat'l Bank of Chi.*, 779 F.2d 1242, 1246 (7th Cir. 1985) (observing that "[t]he equity exception is meant for the case where the trustee or debtor in possession uses other assets of the bankrupt estate (assets that would otherwise go to the general creditors) to increase the value of the collateral").

50.    But when encumbered assets are used to increase the value of pre-petition collateral, the law is clear that the "equities of the case" exception does not apply, and the secured party is entitled to the value of their security interests.  *See, e.g.*, *Barbara K. Enter.*, 2008 WL 2439649, at *13 (declining to apply the "equities of the case" exception when the debtor

sought to use the secured party's collateral or wholly encumbered funds of the estate to fund the reorganization plan); *In re Muma Servs., Inc.*, 322 B.R. 541, 559 (Bankr. D. Del. 2005) (because "all assets were the security of the [secured creditors], it was only through the use of the [secured creditor's] cash collateral [] that the estate was able to continue to operate and maintain the value of the assets" and the equities of the case exception therefore did not apply); *see also In re Laurel Hill Paper Co.*, 393 B.R. 89, 94 (Bankr. M.D.N.C. 2008) (holding that equities of the case exception did not apply because "[t]he costs of the alleged enhancement [] were paid from encumbered funds and not from unencumbered funds of the estate" and "[p]ayments at the expense of secured creditors rather than at the expense of the estate do not support an equities of the case award to the unsecured creditors").

51.    The Ally Contribution of $2.1 billion was made in part to settle claims that certain Debtors had against Ally, including the breach of contract claims subject to the JSNs' liens.  (*See* Disclosure Statement at 22-24.)  The Creditors' Committee contends that it "worked to increase the size of the [Ally] Contribution" from the initial offer of $750 million by "engag[ing] in a thorough investigation of claims against AFI, present[ing] its theories of recovery to AFI, and enag[ing] in extensive negotiations with AFI . . . ."  (Phase I PTO at 40-41.) Accordingly, the Creditors' Committee argues that the JSNs are therefore not entitled to security interests on *any portion* of the Ally Contribution.

52.    The "equities of the case" exception, however, only applies to the extent there has been an actual enhancement of the collateral (*e.g.*, where raw materials are converted into inventory, or inventory into accounts, at some expense to the estate).  *See, e.g., In re Muma Serv., Inc.*, 322 B.R. at 559.  Here, the collateral in issue is made up of the actual claims against Ally.  There is no evidence that the Creditors' Committee's negotiation of a settlement with Ally

ny-1114420

served to convert such collateral into more valuable proceeds.  These claims existed as of the

Petition Date, and the Committee's efforts have not enhanced the underlying claims.  In fact, by

"settling" the Debtors' causes of action against Ally, the Plan Proponents are compromising the

Subject Collateral and in so doing are seeking to prevent the JSNs from potentially realizing

even greater amounts.

53.    Even if the value of the Subject Collateral has increased, which it has not,

the JSNs' cash collateral has been used to fund these Chapter 11 cases (*see* Cash Collateral Order

¶ 13), and the law is clear that the "equities of the case" exception cannot apply when the

enhancement in value is funded by the secured creditor.

### 2.    The JSNs Have Liens on the Debtors' Intercompany Claims

54.    There exist a number of intercompany balances among the Issuer, the

Guarantor Debtors, and the Pledged Equity Issuers on which the JSNs have a lien.

55.    As noted *supra* at II.A, the JSN Security Agreement granted the JSNs a

lien on "all assets" of the Grantors, including General Intangibles.  The UCC definition of

"general intangibles," incorporated into the JSN Security Agreement by its express terms,

includes "things in action," also referred to as "choses in action," which New York courts

construe to mean a "right to receive or recover a debt, demand, or damages on a cause of action

ex-contractu or for a tort or omission of a duty."[43]  "The terms 'choses in action' and 'debts' are

used by courts to represent the same thing when viewed from opposite sides.  The chose in action

is the right of the creditor to be paid, while the debt is the obligation of the debtor to pay."[44]

---

[43]*Sheahan v. Rodriguez*, 753 N.Y.S.2d 664, 667 (N.Y. Sur. 2002) (quoting *Black's Law Dictionary* 1326 (5th ed. 1979) (defining "things in action" as a "right to recover money or other personal property by judicial proceeding")); *see also Black's Law Dictionary* 275 (9th ed. 2011) (defining "chose in action" as a "right to bring an action to recover a debt, money, or thing")

[44] 63C Am. Jur. 2d Property § 22 (2008); *see also* 63C Am. Jur. 2d Property § 23 (2013) ("a chose in action may include open or unliquidated accounts . . . [and] bills and accounts receivable . . . .").

ny-1114420

56.     Thus, as claims based on debts, the Intercompany Claims are choses in action subject to the JSNs' liens.

57.     In addition, the UCC definition of "general intangibles" includes "Payment Intangibles," defined as "a general intangible under which the account debtor's principal obligation is a monetary obligation."[45]

58.     The Intercompany Claims are monetary obligations on the part of the Grantors and the Pledged Equity Issuers, and these intercompany debts, therefore, constitute Payment Intangibles.  The law is clear that this type of debt, *i.e.*, a right to receive payment, constitutes a Payment Intangible for purposes of the UCC.  *See, e.g., In re Premier Golf Props., LP*, 477 B.R. 767, 777 (B.A.P. 9th Cir. 2012) (citing *In re the Wright Grp., Inc.*, 443 B.R. 795, 801-03 (Bankr. N.D. Ind. 2011)) (finding a debt or money obligation to constitute a payment intangible); *In re IndyMac Bancorp, Inc.,* No. 08-bk-21752, 2012 WL 1037481, at *37 n.26 (Bankr. C.D. Cal. Mar. 29, 2012) (noting that a "payment intangible" involves a debtor-creditor relationship).

59.     Accordingly, the Intercompany Claims are also "payment intangibles" subject to the JSN Liens.

60.     General Intangibles is a catch-all class of personal property subject to a number of enumerated exclusions, such as Accounts, Documents, or Instruments (as those terms are defined in the UCC).  NYUCC § 9-102(a)(42).  Even if the Intercompany Claims were classified as an Account, Document, or Instrument, the JSN Security Agreement expressly grants the JSNs a lien on all of those exceptions.  (JSN Security Agreement § 2.)

---

[45] NYUCC § 9-102(a)(61).

61.     In sum, the Debtors determined to grant the JSNs an "all asset" lien subject to a narrow set of agreed-upon exclusions.  None of those exclusions are alleged to apply to the Intercompany Claims, and the UCC does not contain any exclusion that would otherwise except the Intercompany Claims from being covered by the broad liens provided for in the JSN Security Agreement.

62.     Finally, any Intercompany Claims due to a Pledged Equity Issuer entitles that Pledged Equity Issuer to receive any funds owed with respect to that Intercompany Claim. To the extent that the Pledged Equity Issuer has no other creditors, the funds received on account of the Intercompany Claims would be distributable to the equity holders, and that equity has been pledged to the JSNs.  The JSNs, therefore, have an indirect lien on the Intercompany Claims belonging to Pledged Equity Issuers.

63.     As with the breach of contract claims, the Debtors and the Creditors' Committee are estopped from challenging the validity of the liens on the Intercompany Claims. Under the Cash Collateral Order, the Debtors stipulated to the validity of the JSN Liens, and the Creditors' Committee was given 90 days from the entry of the Cash Collateral Order to challenge the stipulations in the Cash Collateral Order.  (Cash Collateral Order ¶ 28.)  If no challenge was filed, the stipulations, admissions, and releases contained in Paragraph 5 of the Cash Collateral Order would be binding, and if a challenge was filed, any unchallenged stipulations, admissions, or releases would be binding against the Creditors' Committee.  (*Id.*) The Creditors' Committee's challenge to the Cash Collateral Order did not challenge the stipulation to the validity of the JSNs' liens on General Intangibles or the proceeds thereof, rendering that stipulation binding against the Creditors' Committee.  Because the Intercompany

Claims are General Intangibles, the Creditors' Committee has waived its right to challenge the JSN Liens on those claims.

### III.    THE DEBTORS DO NOT HAVE THE AUTHORITY TO SETTLE ANY CLAIMS UPON WHICH THE JSNS HAVE A LIEN WITHOUT THE CONSENT OF THE JSNS, AND THE JSNS ARE ENTITLED TO ADEQUATE PROTECTION

64.    A security interest is a property right that, like all property rights, "is subject to the Fifth Amendment's prohibition against taking private property without compensation." *United States v. Sec. Indus. Bank*, 459 U.S. 70, 75-76 (1982); *see In re Treco,* 240 F.3d 148, 159-60 (2d Cir. 2001) ("security interests have been recognized as property rights protected by our Constitution's prohibition against takings without just compensation"). The bankruptcy court's powers are subject to this prohibition. *Sec. Indus. Bank*, 459 U.S. at 75-76.

65.    Because of this prohibition, secured creditors enjoy "special protected status . . . under United States law." *In re Treco,* 240 F.3d at 159-60. The Bankruptcy Code protects the property rights of secured creditors through, *inter alia*, section 363 of the Bankruptcy Code, which protects secured creditors in the event the debtor seeks to "use" or "sell" property that is the secured creditor's collateral.[46] The disposition of the Subject Collateral contemplated by the Global Settlement is a "use" and "sale" of property subject to existing liens and thus its treatment under the Global Settlement must comply with the protections afforded to secured creditors under section 363. *See, e.g., In re Moore,* 608 F.3d 253, 265 (5th Cir. 2010) (settlement of estate assets implicated section 363); *In re Telesphere Commc'ns, Inc.,* 179 B.R. 544, 552 n.7 (Bankr. N.D. Ill. 1994) ("settlement of a cause of action held by the estate is plainly the equivalent of a sale of that claim").

---

[46] *See* 11 U.S.C. §363.

66.    Pursuant to section 363(f) of the Bankruptcy Code, the JSN Liens (*i.e.,* the JSNs' property rights) can only be taken if one of the following four factors exists: (1) applicable nonbankruptcy law permits disposition of the Subject Collateral free and clear of the JSNs' interest; (2) the price at which the Subject Collateral is being "sold" is greater than the aggregate value of all liens on the Subject Collateral; (3) the JSNs' interest is in bona fide dispute; or (4) the JSNs could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of their interest.  *See* 11 U.S.C. § 363(f).  If none of these factors exists, the Subject Collateral can only be sold if the JSNs consent.  *See id.*

67.    None of the above-listed criteria can be satisfied here.  Consequently, the Debtors can only compromise the Subject Collateral free and clear of the JSN Liens if the JSNs consent to the compromise—which the JSNs have not done.  Without such consent (or a showing by the Debtors that any of the other section 363(f) factors have been satisfied), the Debtors do not have the authority to deprive the JSNs of their security interests by refusing to allocate full collateral value to the JSNs and instead settling the Intercompany Claims and the breach of contract claims against Ally for zero value.

68.    Moreover, each of the JSN impaired classes has rejected the Plan.  Accordingly, the Plan Proponents, to confirm their Plan, must prove, *inter alia*, that the Plan is fair and equitable with respect to such JSN impaired classes.  To establish that a plan is "fair and equitable" with respect to a dissenting class of secured claims, a plan proponent must establish at a minimum one of the enumerated requirements set forth in section 1129(b)(2)(A) of the Bankruptcy Code.  The Plan Proponents cannot satisfy the requirements of section 1129(b)(2)(A) and thus have failed to meet their burden in proving that the Plan is fair and equitable—as it must be for confirmation to be possible.  This issue is set forth more fully in the

JSNs' Plan Objection and the arguments set forth in the Plan Objection are incorporated herein by reference.  (Plan Objection [Dkt. No. 5443], at ¶¶ 38-42.)

69.     Similarly, because the Plan diminishes the value of the JSN Collateral, the Plan Proponents bear the burden of demonstrating that the JSNs are adequately protected.  The Plan Proponents have not even attempted to do so here.  Indeed, the compromise of the collateral for zero value to the JSNs without any attempt to protect the JSNs from the diminution in the value of their collateral is a plain violation of the Cash Collateral Order and relevant bankruptcy law.  This issue is set forth more fully in the JSNs' Plan Objection, and the arguments set forth in the Plan Objection are incorporated herein by reference.  (Plan Objection [Dkt. No. 5443], at ¶¶ 46-49, 98-99.)

## IV.    THE COURT MUST ALLOCATE AN APPROPRIATE PORTION OF THE ALLY CONTRIBUTION TO THE JSNS' COLLATERAL IN SATISFACTION OF THE JSNS' LIENS ON THE BREACH OF CONTRACT CLAIMS AGAINST ALLY

70.     The Plan Proponents contend that it is impossible to allocate the Ally Contribution on a claim-by-claim basis.  (Disclosure Statement Omnibus Reply at 16 ¶ 29.)  But as Mr. Renzi conceded at deposition, the Plan Proponents could have performed the requisite allocation, but simply chose not to conduct the type of claim-by-claim analysis necessary to allocate the value of the Ally Contribution.

71.     By failing to allocate the Ally Contribution at all, the Plan Proponents purport to extinguish the JSNs' security interest in all the claims, including the breach of contract claims, that the Debtors have against Ally, for no value.  Worse yet, the Plan Proponents plainly had the ability to allocate the claim value.  As Mr. Renzi conceded at deposition, the Examiner conducted an exhaustive claim-by-claim analysis, but the Plan Proponents elected not to follow in his footsteps or use his analysis to assist their review.  The

75

Plan Proponents did at least partially allocate the Ally Contribution, as demonstrated by the distributions to the Private Securities Claimants and Borrower Claimants.

72.    The Plan Proponents' conduct simply cannot be condoned under either Section 363(f), 1129(b)(2)(A), or the law requiring fairness and equity to third-parties directly impacted by putative settlements.  If the Court is not prepared to order the discharge of the JSN Liens through the payment in full of all amounts owing under the Indenture, including post-petition interest at the default rate and reimbursement of fees and expenses, the law requires the Court to undertake an allocation of the Ally Contribution, allocating, in the process, at least a portion of the Ally Contribution to the breach of contract claims in which the JSNs have a security interest.

A.    **Courts Are Required to Allocate the Proceeds of a Settlement in Circumstances Where, As Here, the Settlement Impacts the Rights of a Non-Settling Party**

73.    It is well established that settling parties must consider the interests of non-settling parties if the terms of a settlement affect the rights of those non-settling parties. *See Cullen v. Riley* (*In re Masters Mates & Pilots Pension Plan and IRAP Litig.*), 957 F.2d 1020, 1026 (2d Cir. 1992) (where "the rights of third parties are affected . . . their interests too must be considered. . . . .").  "In other words, where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval." *Id.*; *see also Drexel Burnham Lambert Group, Inc. v. Claimants (In re Drexel Burnham Lambert Grp., Inc.)*, 995 F.2d 1138, 1146-47 (2d Cir. 1993).

74.    Accordingly, in circumstances where the rights of non-settling parties are impacted, a Court is required to conduct an allocation of the settlement proceeds.  *See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 172 (2d Cir. 2001); *Lendvest Mortgage, Inc. v. DeArmond (In re Lendvest Mortg., Inc.)*, 42 F.3d 1181, 1184-1185 (9th Cir. 1994);

76

*Slottow v. Am. Cas. Co. of Reading, Pa.*, 10 F.3d 1355, 1359 (9th Cir. 1993).  The settlement

allocation process is one that must be undertaken by the Court and not the parties that have

settled their dispute.  Courts recognize that the allocations proposed by the settling parties must

be viewed with "considerable suspicion because of the risk that [the allocation was effectuated]

for strategic reasons."  *Slottow,* 10 F.3d at 1359.  That is because delegating to the settling

parties the right to allocate (or, in this case, to simply ignore the allocation process) may be

"inherently prejudicial to the interests of non-settling parties."  *Lendvest*, 42 F.3d at 1184-85.

> **B.    Courts Frequently Assess the Value of Claims and Allocate Settlement Proceeds**

75.    Notwithstanding the fact that the JSNs have a lien on some (but not all) of

the Debtors' claims against Ally that are to be released under the Global Settlement, the Ally

Contribution is not allocated among any of those claims.  This arrangement eliminates, without

compensation, the value of the JSN Liens on the Debtors' claims against Ally.

76.    The sole basis for the Global Settlement's requirement that the Ally

Contribution not be allocated to particular causes of action is the Debtors' contention that it is

impossible to do so.  This contention has no basis in fact or law.

77.    First, the contention that a settlement allocation is impossible is belied by

the fact that the Debtors have broadly allocated the Ally Contribution among ResCap Debtors,

GMACM Debtors, RFC Debtors, Private Securities Claims Trust, Borrower Claims Trust, and

the New Jersey Carpenters Claims Distribution.  (Disclosure Statement at 22.)  In order to

allocate the Ally Contribution as they have done, the Debtors must have undertaken the kind of

analysis they now claim to be impossible.

78.    Nor does the law permit a court to simply accept the self-serving

allocation of an interested party. *See In re Masters Mates & Pilots Pension Plan and IRAP*

ny-1114420

*Litig.*, 957 F.2d at 1031.  The Plan Proponents' failure to allocate the Ally Contribution to specific causes of action is nothing more than an attempt to render the JSNs undersecured by refusing to adequately protect or otherwise credit the JSNs for the use of their collateral in securing the Ally Contribution.

79.    The Plan Proponents ignore the fact that courts commonly conduct settlement allocations.  *See, e.g.*, *Lendvest*, 42 F.3d at 1185 ("[T]he bankruptcy court must undertake an independent allocation of the settlement before it may conclude that [a particular] claim has been completely or partially satisfied.")  *Lendvest* is instructive.  In that case, a bankruptcy trustee sought to recover an alleged preferential transfer to two investors in the debtor.  *Id.* at 1182.  In a prior action concerning the same preferential transfer, the Trustee settled with the recipient of the funds from the preferential transfer.  *Id.*  The Bankruptcy Court dismissed the second action (against the investors) because it "held that unless there has been a prior notice of the settlement to the jointly liable parties and a judicially approved allocation of the settlement, the jointly liable parties may apply the entire amount of the settlement toward their joint liability."  *Id.* at 1183.  Noting the potential for collusion between settling parties in allocating the settlement—which renders the parties' allocation "virtually meaningless"—the Ninth Circuit rejected the bankruptcy court's decision, holding instead that "the bankruptcy court must undertake an independent allocation of the settlement."  *Id.* at 1184-85.  In so holding, the Ninth Circuit recognized the burden that allocating a settlement might entail.  *Id.* at 1184.  Nevertheless, it concluded that such an allocation is necessary:

> While we sympathize with the desire to avoid imposing upon the bankruptcy court the substantial burden of finding some sort of fair allocation, delegating that determination to the parties (even subject to judicial approval) when such collusive potential exists may be worse than an arbitrary allocation by the court.  It may be inherently prejudicial to the interests of the non-settling parties.

78

*Id.*

80.    To apportion the Ally Contribution, the court would need to assess the

strengths, weaknesses and potential values of various claims, which is commonly done in the

bankruptcy context.  For example, this type of analysis occurs frequently in the context of

claims estimations.  The Fourth Circuit has noted that "estimations of the debtors' potential

personal injury tort liabilities as an incident of the development of a plan of reorganization are

core proceedings within the bankruptcy court's jurisdiction. . . ."  *A.H. Robins Co. v. Piccinin*,

788 F.2d 994, 1012-13 (4th Cir. 1986) (also stating that "the process of estimation will involve

some examination of the claims"); *see also Roberts v. Johns-Manville Corp. (In re Johns-

Manville Corp.)*, 45 B.R. 823, 826 (S.D.N.Y. 1984) ("Section 502(c) of the [Bankruptcy] Code

provides for the estimation of claims for the purpose of allowance if liquidation of contingent or

unliquidated claims would unduly delay the administration of the case"); *Owens Corning v.

Credit Suisse First Bos.*, 322 B.R. 719, 720-21 (D. Del. 2005) (using an estimation trial to

estimate the value of claims against debtor for personal injury or death caused by exposure to

asbestos).

81.    Settlement allocations commonly occur outside of the bankruptcy context

as well.  For example, courts are frequently required to allocate settlement funds among

different tort claimants with different types of claims.  For example, in *Force v. United States

Department of Labor*, 938 F.2d 981, 984-85 (9th Cir. 1991), a case between an employer and

the wife of a former employee, the employer requested that the court allocate (for set-off

purposes) settlement proceeds from a prior, factually-related case.  In the prior case, the

employee, his wife and children reached a settlement with certain third parties.  *Id.* at 982.  The

Ninth Circuit held that the judge below "should have apportioned the third party settlement"

79

ny-1114420

among each family member because the employer was entitled to offset the settlement amounts allocated to the employee and his wife but not amounts allocated to their children. *Force*, 938 F.2d at 985.

82.     Similarly, courts are frequently required to allocate settlement funds in connection with determining different tortfeasors' contribution rights.  For example, in *Cullen*, the Second Circuit overturned the approval of a class action settlement agreement because the district court had failed to conduct an evidentiary hearing on the fairness of the proposed settlement, including its fairness to non-parties. *Cullen*, 957 F.2d at 1031-32.  The Second Circuit held that the court below was required to hold an evidentiary hearing to determine the relative value of the claims against each of the settling defendants and a non-party (who was jointly and severally liable) in order to allow the court to "make a proper determination that the settlement would compensate [the non-party] fairly for his lost right to contribution." *Id.* at 1032; *see also Slottow*, 10 F.3d at 1359 (9th Cir. 1993) ("the district court was required to determine that the allocation of defendants' respective shares of the total settlement award reasonably reflected, among other things, their proportional share of comparative liability for the plaintiff's injuries and their financial ability to satisfy a judgment") (quotations omitted).

83.     Courts determine the relative value of different claims and allocate settlement proceeds among claimants in a variety of other contexts as well.  *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981) (remanding to trial court for determination of relative merits of different claimants' claims in an antitrust suit because, "if the settlement's adequacy rests on the value of one set of claims, distribution of the settlement should be weighed heavily in favor of plaintiffs whose claims comprise that set"); *Mullins v. United States Dep't of Energy*, 50 F.3d 990, 991-92 (Fed. Cir. 1995) (affirming

80

allocation of 90% of settlement funds to one of two pools of claimants under petroleum price control regulations).

### C.    Courts Are Entitled to Rely on Expert Testimony in Performing a Settlement Allocation

84.    Having established that (i) the Court is required to allocate the value of the Ally Contribution and (ii) courts regularly conduct such settlement allocations, the only remaining procedural question is how best to conduct the allocation.

85.    The JSNs will proffer Judge Raymond Lyons to offer an opinion on the appropriate settlement allocation in this case.  In estimating claim values, the court may consider the opinions of experts retained by the parties.  *See, e.g.*, *In re Specialty Prods. Holding Corp.*, Nos. 10-11780 & 10-11779, 2013 WL 2177694, at *1 (Bankr. D. Del. May 20, 2013) (conducting estimation trial using expert reports and prior tort history to estimate contingent and liquidated asbestos claims).  In other cases, courts have actually gone so far as to retain their own expert to aid in the exercise.  *See Menard-Sanford v. Mabey (In re A.H. Robbins Co., Inc.)*, 880 F.2d 694, 698-99 (4th Cir. 1989) (court appointed own expert under Federal Rule of Evidence 706 to make a fair estimation of the value of certain claims against the Debtor); *see also In re UNR Indus., Inc.*, 45 B.R. 322, 326 (N.D. Ill. 1984) (holding that court may rely on claims valuation conducted by financial consultant).

86.    Judge Lyons adopted the most reliable methodology available in these cases.  He reviewed the extensive (over 2,000 page) report prepared by Judge Gonzalez in this case and assigned settlement values to each of the dozens of claims examined in the report.

87.    There can be no doubt that Judge Gonzalez's findings (upon which Judge Lyons based his allocation analysis) are independent and thorough.  Judge Gonzalez was appointed to investigate the entire course of conduct and all material intercompany dealings

involving ResCap, AFI, Ally Bank, and Cerberus over a period of almost a decade.  (Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner [Dkt. No. 925], at 1 & Ex. A at 4.)  Judge Gonzalez was also specifically tasked with reviewing and evaluating the Debtors' claims against Ally, including the breach of contract claims over which the JSNs have liens. (*Id.*)

88.     Judge Gonzalez conducted an extensive investigation, which included an examination of almost nine million pages of documents, ninety-nine formal interviews of eighty-three witnesses, and sixty-six meetings with interested parties.  His counsel at Chadbourne & Parke LLP attended the depositions of twelve witnesses and reviewed the deposition transcripts of at least six other witnesses.  The Examiner's thorough review cost the estate in excess of $80 million.  (*See* Disclosure Statement at 79.)

89.     In contrast to the JSNs, the Debtors have made no attempt to allocate the value of the Ally Contribution at any point in these cases.  Indeed, the Plan Proponents even failed to conduct an allocation in rebuttal after receiving Judge Lyons' report.  As a practical matter, the Plan Proponents had no choice—any reasonable allocation of value to the breach of contract claims that are part of the Subject Collateral will render the JSNs oversecured.

90.     The Debtors' only response (other than to seek to have Judge Lyons' report stricken) appears to be that they were not able to perform such an allocation.  But the difficulty and imprecision inherent in allocating settlement proceeds among different claims does not relieve a settling party (or a reviewing court) from the burden of doing so.  *See, e.g.*, *Cagan v. Anchor Sav. Bank*, CV-88-3024, 1990 WL 73423, at *5 (E.D.N.Y. May 22, 1990) (noting that theoretically ideal distribution of securities class action settlement funds "cannot be done with mathematical precision" so "rough" allocation was reasonable).  Indeed, the

Bankruptcy Code "sometimes demands that bankruptcy judges decide questions using approximation and conjecture, including the valuation of legal claims. . . ." *In re Prudential of Fla. Leasing, Inc.*, 478 F.3d 1291, 1303 (11th Cir. 2007).

91.     In sum, at least a portion of the Ally Contribution must be allocated to the JSNs' liens.  Court oversight of the allocation methodology is required to ensure that the Ally Contribution is allocated fairly and equitably.  The Plan Proponents cannot be permitted to strategically deprive the JSNs of the benefit of their collateral by asserting, without any proof, that an allocation is not possible in this case.  As demonstrated below, the means and opportunity to conduct such an allocation was available to the Plan Proponents; they chose not to avail themselves of this opportunity and now ask the Court to approve the Global Settlement with absolutely no proof as to the "impossibility" of the required allocation.

### D.     Judge Lyons' Unrebutted Allocation of the Ally Contribution

92.     Based on a careful review of the Examiner's Report, his 25 years as a bankruptcy practitioner, his fourteen years as a Bankruptcy Judge, and his experience as a mediator assisting parties in valuing and compromising claims, Judge Lyons assigned a settlement value to each of the potential causes of action released as part of the Global Settlement in order to allocate the Ally Contribution among the various claims.  (Lyons Report at 3.)

93.     Judge Lyons considered the strength of the legal arguments underlying each claim by reviewing the Examiner's legal conclusions and reviewing the statutory and judicial authority upon which those conclusions were based.  (Lyons Report at 3.)  Judge Lyons generally agreed with and relied upon the Examiner's legal conclusions.  (*Id.*)

94.     Using his assessment of the legal strength of each claim, Judge Lyons determined the potential damages, and a reasonable settlement amount, for each claim.  (Lyons

Report at 93.)  He then calculated a settlement value for each claim by using an appropriate

methodology or, where useful, multiple methodologies.  (*Id.*)

95.    Judge Lyons took a conservative approach to allocating the Ally

Contribution; for example, although it would have been appropriate under the absolute priority

rule to allocate the entirety of the Ally Contribution to secured claims, such as the JSN Claims,

and then to unsecured claims, he instead made allocations pro rata based on the reasonable

settlement value of each claim.  (*Id.* at 3.)

96.    Consistent with the Examiner's finding that the majority of the Debtors'

strongest claims against Ally were claims sounding in breach of contract, Judge Lyons

concluded that the breach of contract causes of action have a settlement value of not less than

$1.369 billion, while the commercial tort, avoidance, and third-party claims against Ally have a

reasonable settlement value of $1.03 billion.  (Lyons Report at 4.)  In Judge Lyons' Opinion, the

Ally Contribution of $2.1 billion should be allocated pro rata among the reasonable settlement

value of each claim as set forth below.  (*Id.*)  The pro rata settlement amount allocated to the

claims on which the JSNs have liens is 1.198 billion; the pro rata settlement amount allocated to

the commercial tort, avoidance, and third-party claims against Ally should be 902.1 million.

## V.    THE BREACH OF CONTRACT CLAIMS RELEASED IN CONSIDERATION OF THE ALLY CONTRIBUTION

97.    According to the Examiner's Report, the Debtors' most valuable litigation

claims against Ally are three breach of contract claims.  The JSNs have a lien on each of those

claims and the proceeds attributable to them.  Potential damages on these breach of contract

claims exceeds several billion dollars. (Lyons Report at 4-5.)

98.    The first substantial breach of contract claim on which the JSNs have a

lien is a breach of a loan brokerage agreement between GMACM and Ally Bank.  The basis for

84

GMACM's claim is the contention that $520.5 million in revenue should have been allocated to

GMACM rather than to Ally Bank under the broker agreement and related purchase and sale

agreement between the parties.  Beginning in 2009, GMACM brokered mortgage loans to Ally

Bank, which then originated the loans and sold them back to GMACM, which pooled them for

subsequent sale to third parties.  The intended combined effect of the purchase and sale

agreement, the brokering agreement, and a related hedging swap was that GMACM was to retain

the entire gain on sale for these loans; Ally Bank would retain only the net carry interest for the

time each loan was on its books.  As agreed upon in the purchase and sale agreement, this effect

was accomplished through the use of deferrals in hedge accounting.

99.    The second substantial breach of contract action on which the JSNs have a

lien is GMACM's claim against Ally Bank for the failure to make swap payments based upon

the value on Ally's entire mortgage servicing rights ("MSR") portfolio pursuant to the terms of

the MSR Swap between the parties.  Specifically, the August 2007 FMV Schedule to the ISDA

Master Agreement required tracking and payment of the daily changes in the value of Ally's

entire MSR portfolio.  Despite this, Ally consistently made payments on the value of only a

portion of the MSRs on its books, excluding from the calculations MSRs that were purchased

separately or acquired from correspondent banks.  The value of the MSR Swap payments

wrongfully withheld from GMACM total $1.725 billion.

100.    The third substantial breach of contract claim on which the JSNs have a

lien is a breach of a tax allocation agreement between, *inter alia,* AFI and ResCap, which was

approved by the ResCap Board on August 6, 2010 (the "First Tax Allocation Agreement" or, the

"First Agreement").  The First Tax Allocation Agreement provides for the allocation of tax

liabilities and benefits between AFI and ResCap.  AFI breached this agreement when it failed to

make payments to ResCap for AFI's use of ResCap's tax benefits. As a result, ResCap has a claim for damages for breach of the First Tax Allocation Agreement in excess of $1.9 billion.

## A.    Breach of Contract for Misallocation of Net Revenues on Loans Brokered by GMACM

101.    GMACM has a $520.5 million claim against Ally based on Ally Bank's breach of a loan brokerage agreement. Notwithstanding that the parties had a clear agreement about how to allocate revenues on loans GMACM brokered—and notwithstanding that they had established a years-long practice that conformed to this agreement—Ally Bank unilaterally changed its allocation methodology during the term of the agreement, depriving GMACM of hundreds of millions of dollars that it was due.

### 1.    The Agreements Governing the Brokerage Arrangement

#### a.    2001-2008: Master Mortgage Loan Purchase and Sale Agreement

102.    In 2001, GMACM and Old GMAC Bank (the predecessor to Ally Bank) executed the 2001 Master Mortgage Loan Purchase and Sale Agreement ("2001 MMLPSA") and a Correspondent Agreement under which Old GMAC Bank would purchase loans from GMACM that GMACM had originated or purchased. To take advantage of its lower cost of funds, these loans were warehoused with Old GMAC Bank until GMACM was ready to pool them with other loans for sale to a government-sponsored entity ("GSE") or to another investor. At that point, Old GMAC Bank would sell the loans back to GMACM pursuant to the 2001 MMLPSA.

103.    The majority of loans sold by Old GMAC Bank to GMACM under the 2001 MMLPSA were originated by third parties so as to avoid violating Federal Reserve Act

86

Section 23a[47] (the "250.250 Rule").  The 250.250 Rule limits the number of loans affiliates of an originator may purchase; for example, Old GMAC Bank could not purchase more than 50% of the loans originated by GMACM in the preceding 12 months.

104.    Under an Addendum to the 2001 MMLPSA, executed on or about January 22, 2002, the revenue for loans that GMACM bought from Old GMAC Bank was required to be allocated as follows: GMACM would recognize the gain or loss on the subsequent sale of the loans and Old GMAC Bank would retain the "net interest carry" only for the period the loan was on its books.

### b.    2004-2008: The Pipeline Swap

105.    On October 1, 2004, GMACM and Old GMAC Bank executed the 2004 Schedule to the 2004 Pipeline Swap (the "Pipeline Swap"), which was designed to insulate Old GMAC Bank from changes in the market value of loans to be sold to GMACM for the time the loans were on Old GMAC Bank's books.

106.    As a result of this change, Old GMAC Bank avoided a loss on the change in value of the loans while the loans remained on its books.  In turn, GMACM hedged the risk of the change in market value, and therefore did not realize any gain or loss from the Pipeline Swap.

### c.    2008:  The 2008 MMLPSA and the 2008 Pipeline Swap

107.    In July 2008, Ally Bank (as successor to Old GMAC Bank) and GMACM entered into amended versions of the MMLPSA (the "2008 MMLPSA") and the Pipeline Swap (the "2008 Pipeline Swap"), which required them to more accurately document the method by which they were purchasing and selling loans.

---

[47] 12 C.F.R. 250.250.

108.    The 2008 MMLPSA changed the definition of price to "Cost Basis plus reserves associated," and defined Cost Basis as "the unpaid principal balance of such Mortgage Loan, plus or minus any premium or discount paid, *net deferral fees or costs,* accrued interest and basis adjustments from derivative loan commitments, *hedge accounting* or *lower of cost or market adjustments.*"  (DX AKD (ALLY_0201210) §§ 1.9, 1.24 (emphasis added).)

109.    Accordingly—and just as the parties intended—Ally Bank would continue to earn the net interest carry for the period the loan was on its books (and would be hedged against market, interest, and fallout risk) while GMACM would earn the gain on sale (and would bear all market, interest, and fallout risk).

110.    Because of the limitations imposed by the 250.250 exemption to Regulation W and ResCap's severe liquidity concerns, Ally Bank and ResCap developed the "Brokering Consumer Loans to Bank" project (the "Broker to Bank Project").  This project sought to take advantage of the fact that loans brokered by GMACM and originated by Ally Bank were not subject to the 250.250 Exemption.  Ally Bank's ability to grow its asset base was therefore not limited by the number of loans it could purchase from GMACM.  Ally Bank originating the loans (rather than GMACM) also relieved GMACM's serious liquidity problems.

### d.    The 2008 Broker Agreement

111.    GMACM and Ally Bank entered into a Broker Agreement on November 20, 2008 (the "2008 Broker Agreement").  As with the 2008 MMLPSA and the Pipeline Swap, the parties structured the 2008 Broker Agreement to "maintain the same economics that had been in place for loans sold under the 250.250 program;" namely, Ally Bank would recognize only net interest carry on the loans sold to GMACM, and GMACM would recognize the profit or loss on the subsequent sale of the loans.

88

112.    To achieve this goal, the 2008 Broker Agreement required the borrower to pay origination fees to Ally Bank, which in turn would defer and capitalize that income. Because that income was deferred, and because the Cost Basis under the 2008 MMPLSA was expressly net of any deferrals, it reduced the Cost Basis of the loan, which in turn reduced the purchase price paid by GMACM when it purchased the loan under the MMLPSA.  Similarly, any brokerage fees Ally Bank paid to GMACM would also be deferred and capitalized, which would increase GMACM's purchase price and allow Ally Bank to recoup the broker fees.  As a result, broker fees were a wash.

113.    A November 19, 2008 presentation entitled "Brokering Consumer Loans 2 Bank Project (BCL2B), Legal Entity Revenue, Expense, and Broker Fee Proposal" (the "BCL2B Presentation") evidenced the intentions of the parties.  Specifically, the BCL2B Presentation stated the following as "Base Assumptions":

- Ally Bank "will remain P&L neutral from the brokered transaction with the exception of net interest carry";

- Ally Bank will account at loan level for "deferrable fees and expenses" and "include Broker Fee expense"; and

- The purchase price on the sale of a loan from Ally Bank to GMACM will equal "the originated cost basis of the loan rather than a purchase price equal to the capital markets required price," and "would include any origination and loan processing fee income and any broker fee expenses."

(DX ALZ (EXAM00075394) at 00075399.)

114.    The BCL2B Presentation also stated that Ally Bank would "recognize" origination income, overage/shortage or pricing subsidies, broker fees, and underwriting expenses, but defer and capitalize those items, and transfer their resulting economic effects to GMACM, via the Pipeline Swap and MMLPSA, upon purchase of the loan.  Ally Bank would retain the net interest carry.  (DX ALZ (EXAM00075394) at 00075401.)

115.    The BCL2B Presentation further stated that the broker fee would be set at GMACM's cost, and would ultimately be a "wash," since it would be paid by Ally Bank, and then recouped through deferral, thereby increasing the MMLPSA/Pipeline Swap cost-based purchase price of the loan.  (DX ALZ (EXAM00075394) at 00075401.)

116.    To illustrate the agreed-upon allocation of revenue and expenses, the BCL2B Presentation included loan-level hedge accounting examples.  These examples evidenced the parties' understanding that, through the deferrals described above, the economic effect of all revenues and expenses would be transferred to GMACM.

117.    The intention of the parties was also evidenced in contemporaneous emails, which state that the parties did not intend for Ally Bank to retain any portion of the gain on sale, and instead, intended Ally Bank to receive only the net interest carry for the time the loans were on Ally Bank's balance sheet.

118.    The broker's fees to be paid to GMACM were based on GMACM's costs, as opposed to a market-based fee.

### 2.    Ally Bank's Allocation of Revenue from January 1, 2009 through July 30, 2009

119.    From January 1, 2009 through July 30, 2009, Ally Bank and GMACM implemented the 2008 Broker Agreement and allocated the revenues and expenses as the parties had intended.  By using "hedge accounting," Ally Bank realized only net carry interest for each loan sold, and GMACM recognized the profit/loss of interest rate premiums and other origination-related revenues, while at the same time absorbing the impact of capitalized expenses.  (Memoranda from C. Dondzila and J. Cortese, Mar. 10 and 13, 2012, EXAM12219169, ALLY_0401565; Lyons Report at 9; Designated Deposition Testimony of Joe Cortese, dated October 30, 2013 ("Cortese Tr.") at 139:9-139:16.)  The accounting used during

90

ny-1114420

this period matched the sample accounting set forth in the BCL2B Presentation.  (BCL2B

Presentation, EXAM00075395, at EXAM00075401; Lyons Report at 9.)

120.    The net revenue allocated to GMACM during this period was $47.18

million.  (BCL2B Presentation, EXAM00075395, at EXAM00075401; Lyons Report at 9.)

### 3.    Ally Bank's Misallocation of Revenue from August 2009 through April 2012

121.    Beginning August 1, 2009, Ally Bank stopped utilizing hedge accounting

and instead elected "fair value accounting."  Under fair value accounting, loans were marked-to-

market and Ally Bank no longer recorded deferrals.

122.    As a result, there were no deferrals to net out of Ally Bank's cost basis,

thus depriving GMACM of the negotiated-for benefits of Ally Bank's deferred income and

expenses.  Ally Bank now received revenue under the 2008 MMLPSA equal to the

discount/premium paid, broker fee paid, *and* net interest carry.

123.    By switching to fair value accounting, Ally Bank kept a portion of the gain

on sale of each loan without assuming any of the risks.  Because Ally Bank switched its

accounting treatment but not the risk structure, GMACM—unbeknownst to its employees—

began to receive significantly less revenue while retaining the same amount of risk.

124.    GMACM did not consent to Ally Bank's unilateral revision of the

allocation of revenue under the 2008 Broker Agreement, 2008 MMLPSA, and 2008 Pipeline

Swap.  No additional agreements were executed to support this change in the allocation of

revenues and expenses.  The effect of Ally Bank's election of fair value accounting was

completely contrary to the parties' intentions, as evidenced by the BCL2B Presentation and

contemporaneous emails between the parties.

### 4.    Discovery of Ally Bank's Misallocation

125.    In December 2011, Ally Bank Senior Managing Director Adam Glassner became concerned that Ally Bank was recognizing some of the revenue that should have been allocated to GMACM.

126.    Mr. Glassner brought his concerns to the attention of James Whitlinger, CFO of Ally Bank, and James Young, CFE of Ally Bank.  They in turn raised the issue with several additional AFI executives.

127.    Joseph Cortese, Chief Accounting Officer for Ally Bank, was tasked with the internal investigation of Mr. Glassner's concerns.  All of the Ally Bank executives that had been at Ally Bank during the genesis of the BCL2B Project had been terminated and replaced in 2009 with the arrival of the new CEO.  Al Celini was one of the last executives at Ally Bank when he was terminated in November 2009.  During his investigation, the only person Mr. Cortese spoke to with contemporaneous knowledge of the BCL2B project recalled that the project was intended to be economically neutral as between Ally Bank and GMACM.

128.    The investigation's preliminary conclusion was that the parties intended for GMACM to recognize the entire portion of the gain on sale, and for Ally Bank to not retain any portion of the gain on sale.

129.    On March 13, 2012, Cathy Dondzila for ResCap and Mr. Cortese for Ally Bank collaborated and issued nearly identical memoranda characterizing the accounting utilized during the January 1, 2009 through July 31, 2009 time period as "done in error."  (Memoranda from C. Dondzila and J. Cortese, Mar. 10 and 13, 2012, EXAM12219169, ALLY_0401565; Lyons Report at 10-11; Cortese Tr. at 150:7 – 150:16.

130.    These memoranda noted that there were "conflicting corporate evidential documents" and that there was some support for the view that Ally Bank was not to retain any

portion of the gain on sale. (Memoranda from C. Dondzila and J. Cortese, Mar. 10 and 13, 2012, EXAM12219169, ALLY_0401565; Lyons Report at 10 -11.)

131.    The accounting methods utilized from January 1, 2009 through July 31, 2009 were in accordance with U.S. Generally Accepted Accounting Principles ("GAAP") and neither the Ally Bank memorandum nor the GMACM memorandum claimed otherwise.

### 5.    The Financial Impact of Ally Bank's Misallocation of Revenues on GMACM

132.    Based on its conclusion that fair value accounting was proper, Ally Bank demanded that GMACM reimburse it for the $47.18 million in revenues allocated to GMACM from January 1, 2009 through July 31, 2009. Ally Bank also demanded interest on that amount. ("Forgiveness of Certain Indebtedness Under LOC Loan Agreement," Mar. 27, 2012 EXAM40066674; Lyons Report at 11.)

133.    Additionally, Ally Bank concluded that the $47.18 million "error" was not material for accounting purposes, and therefore would not require either party to restate its financials. (Memoranda from C. Dondzila and J. Cortese, Mar. 10 and 13, 2012, EXAM12219169, ALLY_0401565.) On the other hand, Mr. Cortese conceded that if the fair value accounting utilized from August 1, 2009 forward had been found to be in "error," that would have been material, (Cortese Tr. at 139:17 - 140:15) and Ally Bank's publicly filed financial statements would have to have been restated.

134.    On March 27, 2012, GMACM remitted $51.4 million to Ally Bank (in consideration for the purported $47.18 million "error" plus interest). At the same time, a debt of GMACM to Ally Bank in the same amount was forgiven. ("Forgiveness of Certain Indebtedness Under LOC Loan Agreement," Mar. 27, 2012 EXAM40066674; Lyons Report at 11.)

135.    Between August 2009 and April 2012, Ally Bank continued to apply fair value accounting in order to improperly retain $469.1 million in revenue.  (Lyons Report at 11.)

136.    In addition, the actual broker fees Ally Bank paid to GMACM did not cover GMACM's costs of brokering the loans to Ally Bank.  Mr. Whitlinger of Ally Bank examined the issue and determined that the difference between the cost-based fee GMACM charged and what it would have received in an arm's-length transaction would have been between $162.1 million and $343.9 million for the period 2009 through 2011.  ("Consumer - Broker to Bank, HFS Loans," EXAM00003654; Lyons Report at 9.)  Transactions between Ally Bank and affiliates, such as GMACM, were required to be on arms-length terms or better. (Cortese Tr. at 51:14 – 53:16.)

> **6.    GMACM Has a Strong Breach of Contract Claim against Ally Bank Based on Ally Bank's Misallocation of Revenue from August 2009 through April 2012**

137.    The 2008 MMLPSA and 2008 Broker Agreement are governed by Delaware Law.  (2008 MMLPSA §8.5, ALLY_0201210; 2008 Broker Agreement §17, RC00030534.)  The 2008 Pipeline Swap is governed by New York Law.  (2008 Pipeline Swap, part 4(h), ALLY_0018074.)

138.    Under Delaware law, the elements of a breach of contract claim are "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."[48]

139.    Under New York law, the elements of a breach of contract claim are: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."[49]

---

[48] *Universal Enter. Grp., L.P. v. Duncan Petroleum Corp.*, No. C.A. 4948, 2013 WL 3353743, at *17 (Del. Ch. July 1, 2013) (quoting *VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

140.    There is no dispute that the 2008 MMLPSA was a valid contract between GMACM and Ally Bank.  Under the 2008 MMLPSA, Ally Bank was obligated to base accounting treatment upon the definitions of "price" and "cost basis" as set forth therein.  The price of the loan sold to GMACM by Ally Bank was defined as "cost basis plus reserves associated."  Cost basis was defined as "the unpaid principal balance of such Mortgage Loan, plus or minus any premium or discount paid, *net deferral fees or costs,* accrued interest and basis adjustments from derivative loan commitments, *hedge accounting* or *lower of cost or market adjustments."*  (2008 MMLPSA; Cortese Tr. at 67:16 – 68:18.)

141.    Ally Bank breached the pricing terms of the 2008 MMLPSA when it switched to fair value accounting and stopped deferring the fees and costs associated with originating the loans.  Put differently, the net revenue to Ally Bank went from only net interest carry, to "discount*/premium; broker fee paid; and interest carry."*  This resulted in GMACM paying an increased price for the loan, directly decreasing its profits.   (Memoranda from C. Dondzila and J. Cortese, Mar. 10 and 13, 2012, EXAM12219169, ALLY_0401565.)

142.    As a result of the breach by Ally Bank, GMACM is owed approximately $520.5 million, which consists of: (i) $51.4 million, representing return of GMACM's March 2012 payment to Ally Bank for amounts received by GMACM between January 1, 2009 and July 31, 2009; and (ii) $469.1 million in additional revenues that, but for Ally Bank's unauthorized switch to fair value accounting, GMACM would have received for the period August 1, 2009 to April 30, 2012.  (Lyons Report at 12.)

**B.    MSR Swap**

143.    GMACM has a $1.725 billion breach of contract claim against Ally Bank (as successor to Old GMAC Bank) related to a swap agreement concerning MSRs owned by

[49] *Terwilliger v. Terwilliger*, 206 F. 3d 240, 246 (2d Cir. 2000).

Ally Bank.  As explained in more detail below, Ally Bank was required to make certain

payments to GMACM based on the daily gain in the fair market value of all MSRs owned by

Ally Bank and reflected on its accounting ledger.  Instead, Ally Bank made payments for gains

from only a subset of the MSRs on Ally Bank's accounting ledger, denying GMACM of

substantial payments that were due to it.

   144. An MSR is a contractual right to service loans and receive the related fees

and certain ancillary income.  As an Ally Bank memorandum explained:

> MSRs represent the capitalized value of the right to receive future
> cash flows from the servicing of mortgage loans for others.
> Because residential mortgage loans typically contain a prepayment
> option, borrowers often elect to prepay their mortgage loan by
> refinancing at lower rates during declining interest rate
> environments. When this occurs, the stream of cash flows
> generated from servicing the original mortgage loan is terminated.
> As such, the market value of mortgage servicing rights has
> historically been very sensitive to changes in interest rates and
> tends to decline as market interest rates decline and increase as
> interest rates rise.

(DX AJZ (ALLY_0171117) at 6.)

   145. Ally Bank determined to retain MSRs derived from loans originated or

otherwise acquired by Ally Bank because it would significantly lower associated financing costs.

To effectuate this arrangement, Ally Bank was required, by Ally Bank's regulators, to enter into

a "total return swap" with ResCap.  The total return swap would have the effect of transferring

all of the economics (positive and negative) of the MSRs to GMACM in exchange for providing

Ally Bank with a fixed rate of return.

ny-1114420

1.        **The MSR Swap Agreements**

a.        **The 2007 MSR Swap**

146.    To effectuate the arrangement described above, Ally Bank and GMACM entered into an MSR swap on August 31, 2007, which they documented on an ISDA Master Agreement with two schedules: (i) the FMV Schedule and (ii) the Net Funding Schedule (collectively, the "2007 MSR Swap").

147.    Under the 2007 MSR Swap, each party received the following from the other:

| Ally Bank | GMACM |
|---|---|
| "Funding Fee" (a fixed rate of return) (per the Net Funding Schedule) | Daily change in value of MSRs (per the FMV Schedule) |
| Servicing revenues (per the Net Funding Schedule) | "Net Servicing Fee" from MSRs (per the Net Funding Schedule) |

148.    The Net Funding Schedule provided for two payments.  First, Ally Bank was obligated to pay GMACM a "Net Servicing Fee," which was defined as equal to all the servicing income Ally Bank received on its portfolio of MSRs, net of the expenses it incurred.  Second, GMACM was required to pay Ally Bank a "Funding Fee," which was a LIBOR-based fixed rate payment calculated on the value of the of the MSRs and servicing revenues.

149.    Under the FMV Schedule, the "FAS 156 mark to market" value of all MSRs reported on Ally Bank's accounting ledger was measured each business day.  Positive changes in the value of the MSRs required Ally Bank to pay GMACM the difference.  If the value of the MSRs on Ally Bank's books decreased, GMACM would pay Ally Bank the amount of the decrease.

150.    Significantly, the FMV Schedule did not distinguish between MSRs arising from loans originated by Ally Bank and those arising from loans purchased and retained

by Ally Bank from correspondent bank or third parties.  However, the FMV Schedule required

that the daily gains (or losses) from Ally Bank's *entire* MSR portfolio reflected on its accounting

ledger be transferred to GMACM.  For example, if Ally Bank sold loans to GMACM and

retained the related servicing rights, it capitalized these MSRs, adding their value to its

accounting ledger.  Accordingly, under the FMV Schedule, these MSRs—as well as MSRs that

Ally Bank purchased from third parties—were required to be included in the daily gain/loss

calculation.

### b.    The 2011 MSR Swap

151.    In April 2011, the parties replaced the 2007 MSR Swap with a revised

swap agreement (the "2011 MSR Swap"), which was memorialized using a 2002 ISDA Master

Agreement.  This revised agreement maintained the same general structure as the one it replaced

but made even clearer that any net daily gain due to GMACM was to be calculated based on the

change in value of Ally Bank's entire MSR portfolio (not just gains on loans originated by Ally

Bank).  Specifically, the 2011 MSR Swap provided that the daily calculation was to include

> (i) the net loss recorded by [Ally Bank] in respect of the sale of
> mortgage servicing rights then on [Ally Bank's] general ledger,
> taking into account *any gain on new origination and capitalization
> of mortgage servicing rights*, or gain or loss on the disposition
> thereof or in respect of the prepayment of any related mortgage
> loans, or (ii) the net gain recorded by [Ally Bank] in respect of the
> sale of mortgage servicing rights then on [Ally Bank's] general
> ledger, taking into account any *gain on new origination and
> capitalization of mortgage servicing rights*, or gain or loss on the
> disposition thereof or in respect of the prepayment of any related
> mortgage loans, including those purchased separately or acquired
> through correspondent loans purchased by Ally Bank.

(DX AJQ (ALLY_0041799) § 2 (emphasis added).)

**2.    Ally Bank Failed to Pay GMACM Gains From Its Entire MSR Portfolio**

152.    Notwithstanding the clear language of both the 2007 MSR Swap and the 2011 MSR Swap (together, the "MSR Swaps") that required Ally Bank to pay GMACM the amount of increases in the value of Ally Bank's entire MSR portfolio, Ally Bank paid GMACM only for increases related to loans originated by Ally Bank. This was insufficient under the MSR Swaps because Ally Bank had other MSRs that were included on its accounting ledger.

153.    By contrast, GMACM's Funding Fee payments to Ally Bank reflected the value of newly recognized MSRs (such as MSRs on loans Ally Bank sold to GMACM and MSRs that Ally Bank purchased from third parties), not just loans originated by Ally Bank.

154.    As a result of this breach of the MSR Swaps, Ally Bank failed to pay GMACM $1.725 billion that was due to it in connection with Ally Bank's MSR assets attributable to correspondent loans and purchased MSRs. This figure includes $1.329 billion for the period before the 2011 MSR Swap took effect.

**3.    Applicable Law**

155.    The MSR Swaps are governed by New York law. Under New York Law, the elements of a breach of contract claim are: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."[50]  Each of these elements is satisfied with respect to the MSR Swaps. First, there is no dispute that the MSR Swaps are valid contracts between GMACM and Ally Bank. Second, GMACM performed its duties under the MSR Swaps. Third, Ally Bank breached the MSR Swaps when it did not pay GMACM for the gains related to the MSRs it had purchased and that had originated from correspondent loans. Fourth, as a result of this breach, GMACM suffered damages of $1.725 billion.

---

[50] *Terwilliger*, 206 F.3d at 246.

**C.      The Debtors Have a Claim Against Ally for Breach of the First Tax Allocation Agreement**

156.      The final of the three substantial breach of contract claims arises from AFI's breach of the First Tax Allocation Agreement.

**1.      Overview of Tax Allocation Agreements**

157.      Affiliate entities within a corporate structure may choose to file one consolidated federal tax return.[51] If they choose to file a consolidated return, the income, gain, deduction, and loss of each corporate member of the group is reported on one consolidated federal income tax return. Certain wholly owned entities, including limited liability companies, may be treated as disregarded as separate from the entity's owner for federal income tax purposes (a disregarded entity). In such a case, the income, gain, deduction, and loss of the disregarded entity is included on the tax return of its owner, the owner is responsible for any income taxes relating to that income, and the owner's income can be reduced by any deductions or losses of the disregarded entity.

158.      In the case of a consolidated federal income tax group, each corporate member of the group can be held liable for the federal income taxes applicable to the income of the entire group, and the Internal Revenue Service can choose to collect any taxes from any such member.[52] The tax law does not dictate how members of the consolidated group allocate financial responsibility for tax liabilities and rights to tax refunds or credits, nor does the tax law address allocation of any such liability or rights to refunds when a taxpayer owns equity in a disregarded entity.[53] Parents and subsidiaries in consolidated tax groups typically address this

---

[51] I.R.C. § 1501.

[52] Treas. Reg. § 1.1502-6.

[53] I.R.C. § 1.01, 1–2; ANDREW J. DUBROFF ET AL., FEDERAL INCOME TAXATION OF CORPORATIONS FILING CONSOLIDATED RETURNS § 71.02[4][a], 71–195 (2d ed. 2012).

ny-1114420

allocation in negotiated tax allocation agreements.[54]  With the increasing use of disregarded entities, it is not unusual for tax allocation agreements to exist between a disregarded entity and its owner, allocating taxes and tax benefits between the two by treating the disregarded entity as if it was a corporate member of the consolidated federal income tax group.

## 2.    The First Tax Allocation Agreement

159.    The 2005 Operating Agreement and amendments thereto required that AFI (which filed consolidated tax returns) and ResCap have a tax allocation agreement in place.  On November 2, 2009, ResCap became a disregarded entity, which raised questions about whether the then-existing tax allocation agreement was adequate.  As a result, AFI decided it needed a new tax allocation agreement with ResCap.  So, at the end of 2009, AFI drafted, and sent to ResCap for review, the First Tax Allocation Agreement (to apply retroactively to November 2, 2009).[55]

160.    The First Tax Allocation Agreement gave ResCap full rights to receive payment for the use of its tax attributes (*i.e.*, foreign tax credits, net operating losses, or capital losses) by AFI.  AFI included a provision in the First Agreement that required it to pay ResCap for any ResCap tax attribute that AFI was able to use, even if ResCap as a standalone entity would not have been able to use the tax benefit in that particular tax year.

161.    Indeed, William Marx, Executive Director of Tax Operations and Analysis at AFI and drafter of the First Tax Allocation Agreement, told both AFI and ResCap that the proposed First Agreement would "in all cases be either neutral or more beneficial to ResCap" compared to its treatment as a strict standalone corporate entity.  (DX APE (EXAM12308200);

---

[54] *See* ANDREW J. DUBROFF ET AL., FEDERAL INCOME TAXATION OF CORPORATIONS FILING CONSOLIDATED RETURNS § 41.01, 41–5 (2d ed. 2012).

[55] The retroactive November 2, 2009 date was intended to coincide with the date ResCap became a disregarded entity for federal income tax purposes.

ny-1114420

*see also* Designated Deposition Testimony of William Marx, dated October 18, 2013 ("Marx Tr."), at 61:4-17.)  Specifically, Mr. Marx explained to ResCap and Ally:

> If ResCap or any of its relevant sub-groups or subsidiaries generates foreign tax credits, net operating losses, or capital losses that it would not be able to use on a stand-alone basis in the current period, but the [AFI] group can utilize the benefits on the consolidated [AFI] return, then the ResCap entity will be paid currently for those benefits. This deviation from strict stand-alone accounting will in all cases be either neutral or more beneficial to ResCap than strict stand-alone. [AFI] drafted the agreements in this manner to be consistent with other allocation agreements in the Group (Bank and Insurance have similar agreements already in place).

(DX APE (EXAM12308200).)

162.    As Mr. Marx explained in his email, this type of provision was not uncommon for AFI—it was included in certain other tax allocation agreements between AFI and its affiliates.  (DX APE (EXAM12308200); *see also* Marx Tr. at 45:10-19**.**)  AFI specifically chose to include this provision in the First Tax Allocation Agreement with ResCap.

### 3.    The ResCap Board Approved the First Tax Allocation Agreement After Extensive Negotiations Between ResCap and AFI

163.    Counsel to ResCap (Morrison & Foerster) and counsel to the Independent Directors (Morrison Cohen) both reviewed the draft agreement and provided comments shortly after receiving the agreement in December 2009.

164.    In June 2010, AFI sent a revised draft to ResCap.  The revised draft retained the provision that ResCap would be compensated based on AFI's use of ResCap's tax attributes, including tax attributes that ResCap would not have been able to use as a standalone entity during the fiscal year in which AFI used the tax attributes.

165.    AFI and ResCap continued to negotiate and exchange drafts of the agreement.

166.    After AFI and ResCap agreed to the terms of the First Agreement, Mr.

Marx, James Young (Chief Financial Officer ("CFO") at ResCap), and Tammy Hamzehpour

(General Counsel at ResCap) sent a memorandum to the ResCap Board seeking approval of the

proposed First Tax Allocation Agreement.

167.    After discussion at an August 6, 2010 Board meeting, the ResCap Board

specifically found that the Agreement was made "on terms consistent with those that parties at

arms' length would agree to and for fair value."  (DX AQV (RC40016362) at 40016372.)

168.    The ResCap Board then unanimously approved the First Tax Allocation

Agreement and "authorized and empowered" officers of Rescap to execute the First Agreement.

(DX AQV (RC40016362) at 40016372.)

### 4.    AFI Signed the Agreement But Decided Not to Deliver a Final Agreement to ResCap For Signature

169.    AFI was responsible for organizing the signing of the First Tax Allocation

Agreement that was approved by the ResCap Board on August 6, 2010.

170.    Mr. Marx prepared a September 9, 2010 memorandum with instructions

for signing and returning several final tax agreements, including the First Tax Allocation

Agreement.  The memorandum was directed to, *inter alia,* David DeBrunner, Chief Accounting

Officer of AFI, and Mr. Young, ResCap CFO.

171.    Mr. DeBrunner was authorized to sign the First Agreement on behalf of

AFI.  Mr. DeBrunner received the memorandum and attachments from Mr. Marx and ultimately

signed the First Agreement sometime around September 13, 2010.  At the time Mr. DeBrunner

signed the First Agreement, he and the AFI Tax group, including Mr. Marx, believed that

agreement "was the allocation agreement that would be put in place" and that the "signature

indicated the signatories' understanding that [the First Agreement] was an authorized

agreement."  (Marx Tr. at 28:15-29-8; 31:5-9; 54:5-12.)

172.    Mr. Marx, however, failed to send the memorandum and First Agreement

to Mr. Young for signature.  Later in September, Jay Frucci, AFI's Chief Tax Officer was

supposed to deliver the First Agreement to Mr. Young in person in Minneapolis.  Mr. Frucci, like

Mr. Marx, failed to deliver the First Agreement to Mr. Young.  Had the First Agreement been

mailed by Mr. Marx or delivered by Mr. Frucci, Mr. Young would have signed the First

Agreement.

### 5.    AFI Files Its 2009 Tax Returns and Calculates How Much Is Owed To ResCap Under the First Tax Allocation Agreement

173.    AFI filed its consolidated 2009 tax return on September 15, 2010, and then

calculated its tax payment to ResCap under the terms of the First Tax Allocation Agreement.

Calculations indicated that AFI would owe ResCap as much as $250 million in 2009 and as

much as $400 million in 2010 under the First Tax Allocation Agreement.

174.    AFI had not anticipated such a large payment to ResCap under the First

Tax Allocation Agreement.  Indeed, despite having plenty of time during the eight-month

negotiation period (December 2009 through August 2010) to run preliminary calculations *prior*

to signing the First Agreement, Mr. Marx never ran any such calculations until *after* AFI signed

the First Agreement.  Once Mr. Marx finally ran his calculations and discovered the substantial

payments it owed ResCap, AFI moved quickly to protect its interest at the expense of ResCap.

175.    On October 13, 2010, Mr. Marx sent an email to AFI interim Chief

Financial Officer James Mackey expressing concern about the amounts AFI was obligated to pay

ResCap pursuant to the First Tax Allocation Agreement (which Mr. Marx himself drafted).

176.    Mr. Marx presented two options in his email: (i) perform under the First Agreement and make the payments to ResCap that AFI had agreed to make only one month earlier, or (ii) exploit the fact that AFI (specifically, Mr. Marx) failed to send the First Agreement to ResCap for a signature, assert that the First Agreement was invalid, and insist upon a "new, strict, standalone agreement." (DX ALF (ALLY_0424660) at 0424664.)

177.    In his email, Mr. Marx recognized that:

- "The ResCap agreement was reviewed and approved by the ResCap Board.";

- "There is sensitivity here regarding arms-length dealings with affiliates."; and

- A new agreement "would likely require a fairness opinion of outside counsel."

(DX ALF (ALLY_0424660) at 0424664.)

178.    Mr. Marx asked for guidance from Mr. Mackey on how to handle the payment to ResCap. CFO Mackey's guidance was telling: "just ignore it" and hope that ResCap does not "think about it." (DX ALF (ALLY_0424660) at 0424663.)

179.    Mr. Marx ultimately decided to pursue a second tax allocation agreement. On October 18, 2010, he told Mr. Young and Ms. Hamzehpour in an email that AFI "may be proposing changes to the tax allocation agreement." (DX ALE (ALLY_0424659).)

180.    Mr. Marx later notified Ms. Hamzehpour that "the ResCap tax allocation agreement is back on the table" and sent a revised allocation agreement (the "Second Tax Allocation Agreement" or, the "Second Agreement"), representing that the draft was "virtually identical to the previously approved agreement, but for the deletion of language related to" the payments from AFI to ResCap. (DX ALH (ALLY_0424667) at 0424669.)

181.    The Second Agreement was extremely favorable to AFI. All payment rights for use of ResCap's tax attributes by AFI had been stripped out of this Second Agreement.

Moreover, the Second Agreement failed to (i) meet the standard set by the ResCap Board when it approved the First Tax Allocation Agreement–that the agreement be "on terms not more disadvantageous in any material respect to the holders of [ResCap's] notes than those existing tax allocation agreement(s) [it] [is] intended to replace" (DX AQW (RC40018729)), and (ii) meet the requirement of the 2006 Amended Operating Agreement that it "shall provide for two-way sharing payments."  (DX AJS (ALLY_0041818).)

182.    ResCap's outside counsel, Morrison Cohen, highlighted the unfairness of the Second Agreement in comments they provided to Ms. Hamzehpour that were then passed on to Mr. Marx:  "It seems unfair that if Rescap earns profits but Mortgage/Ally has losses and no tax is ultimately due, then Rescap still must pay Mortgage/Ally the hypothetical tax on Rescap's profit.  However, if Mortgage/Ally earns profit but Rescap has losses and no tax is ultimately due, then Mortgage/Ally need not pay Rescap the hypothetical tax on Mortgage/Ally's profit. It seems like Rescap is not paid for utilized losses but Mortgage/Ally is paid for utilized losses." (DX APW (EXAM20266669).)  Counsel also noted that "[w]hile the cover email suggests that the losses used up by [AFI] can reduce future income of ResCap, that doesn't seem to be spelled out in the agreement."  (DX APW (EXAM20266669).)

183.    During a subsequent conference call between the independent directors, their counsel, and representatives of AFI, including Mr. Marx, fairness issues with the Second Tax Allocation Agreement were repeatedly raised.

184.    Despite the fairness concerns that ResCap expressed to AFI, the Second Tax Allocation Agreement was ultimately executed on January 26, 2011.

185.    After the Second Agreement was signed, Mr. Marx destroyed all copies of the First Tax Allocation Agreement signed by Mr. DeBrunner.

6.    **The First Tax Allocation Agreement is an Enforceable
Contract That Governs the Parties' Tax Allocation
Relationship**

186.    The First Tax Allocation Agreement is an enforceable contract.  Although

the Second Tax Allocation Agreement purports to "supersede any earlier agreement for the

allocation of income taxes between the parties" (DX AQV (RC40016362) at § 5.05), the Second

Agreement involved, among other things, the incurrence of constructively fraudulent obligations

by the ResCap estate that are avoidable under the Bankruptcy Code.  (*See* Part V.C.7 *infra.*)

Thus, the First Agreement is the agreement that governs appropriately ResCap and AFI's tax

allocation relationship.

187.    Under Michigan law[56], a valid contract must have: "(1) parties competent

to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and

(5) mutuality of obligation."[57]  The only question with respect to the First Agreement is whether,

because the First Agreement was only partially executed, there was "mutuality of agreement"

between the parties, or, in other words, whether there was a "meeting of the minds."[58]  The

evidence here shows that there was.

188.    Two aspects of Michigan law are important to the meeting of the minds

analysis here.  First, a partially signed agreement may be enforceable against the party who

signed the agreement (*i.e.* AFI) unless the evidence shows that the parties did not intend to be

---

[56] The First Tax Allocation Agreement includes a choice of law provision designating Michigan as the governing law.  New York courts enforce contractual choice of law provisions.  *See Gambar Enters. v. Kelly Servs.*, 418 N.Y.S.2d 818, 822 (N.Y. App. Div. 1979) (applying choice of law provision in contract specifying application of Michigan law).

[57] *Hess v. Cannon Twp.*, 696 N.W.2d 742, 748 (Mich. 2005) (citations omitted).

[58] *Garrison Co. v. Bishop Int'l Airport Auth.*, No. 293415, 2010 WL 4679501, at *3 (Mich. Ct. App. Nov. 18, 2010) (citation omitted).

107

bound absent a fully signed agreement.[59]  The "question as to whether those who have signed are

bound is generally to be determined by the intention and understanding of the parties at the time

of the execution of the instrument."[60]  Second, where, as here, "a written agreement is silent as to

whether the persons who sign it intend to become legally obligated to each other before all

persons named in it as parties have signed, parole evidence is admissible to show the intention of

the parties."[61]

189.    Here, there is no question that AFI and ResCap came to a mutual

agreement as to the terms of the First Agreement and no question that they both intended to be

bound by the terms of the First Agreement.  AFI and ResCap negotiated the First Agreement and

agreed to its final terms.  ResCap presented it to its Board, which passed a resolution approving

the First Agreement and authorizing a ResCap representative to sign the First Agreement.

Contrary to the direction of the Board, ResCap's authorized representative, CFO James Young,

failed to sign the approved First Agreement.  AFI presented the First Agreement to its authorized

signatory, Mr. DeBrunner, for execution, believing that the parties had reached a final, effective

agreement that Mr. DeBrunner could sign—which he did.  There is nothing in the evidence to

indicate that the parties only intended the contract to become enforceable once it had been signed

by all parties.  In fact, AFI's actions in September and October of 2010, after its 2009 federal tax

return was filed, belie any such argument—AFI calculated payments it owed to ResCap based on

the terms of the First Tax Allocation Agreement, *i.e.*, the agreement that AFI believed governed

the parties' tax allocation relationship at the time.

---

[59] *Wiegand v. Tringali*, 177 N.W.2d 435, 437–38 (Mich. Ct. App. 1970); *see also Am. Bentonite Corp. v. Clark Equip. Co.*, 43 F.2d 392 (W.D. Mich. 1928); *High v. Capital Senior Living Props. 2-Heatherwood, Inc.*, 594 F. Supp. 2d 789, 798 (E.D. Mich. 2008) ("The absence of a signature is not necessarily fatal to a finding of an agreement.  Michigan law permits an inference that an offeree accepted the terms of the agreement when she signaled her assent through conduct.") (citations omitted).

[60] *Wiegand*, 177 N.W.2d at 437–38.

[61] *Id.* at 438 n.7.

### 7.    The Second Tax Allocation Agreement Involves a Constructive Fraudulent Transfer and Should Be Avoided

190.    Under the Bankruptcy Code, an obligation incurred or a transfer made by a debtor within two years of the filing of the bankruptcy petition may be avoided as a constructive fraudulent transfer if, *inter alia*, the debtor "received less than reasonably equivalent value in exchange for [a] transfer or obligation" and was insolvent or had unreasonably small capital at the time of the transfer or obligation.[62]  A contract releasing an existing obligation is a transfer within the meaning of section 548.[63]

191.    The Debtors filed for bankruptcy on May 14, 2012.  The Second Tax Allocation Agreement was executed on January 26, 2011, and thus easily falls within the two-year fraudulent transfer look-back period.

192.    Further, ResCap did not receive reasonably equivalent value in exchange for the obligations incurred under the Second Tax Allocation Agreement or for the release of the benefits to ResCap under the First Tax Allocation Agreement.  The Second Agreement requires ResCap to make certain payments to AFI with respect to taxes associated with ResCap income even though ResCap, as a disregarded entity, is not responsible to pay taxes under the federal income tax law.  Notwithstanding the fact that the Second Agreement requires ResCap to make tax-related payments to AFI as if ResCap was a standalone taxpayer, it does not give ResCap the benefit to receive certain tax refunds that it would have had as a standalone taxpayer—benefits it had under the First Agreement.  As a result, the Second Agreement places ResCap in a worse position than it would have been (i) on a standalone basis, or (ii) if the First Tax Allocation Agreement was an enforceable contract.

---

[62] 11 U.S.C. § 548 (a)(1)(B).

[63] *See, e.g., Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.)*, 432 B.R. 583, 600 (Bankr. S.D. Tex. 2010).

ny-1114420

193.    ResCap was also likely insolvent or had unreasonably small capital in January 2011, when the Second Agreement was executed.

194.    In October of 2008, ResCap predicted that it would run of out of money by mid-November of 2008, and seriously considered filing for bankruptcy.

195.    The Debtors apparently believe that they were either insolvent or had unreasonably small capital in January 2011 given their assertion that intercompany debt forgiveness that occurred as far back as 2007 could be subject to avoidance actions.[64]

196.    The Creditors' Committee also apparently believed that ResCap was likely insolvent in 2011.  In its Motion for Entry of an Order Authorizing the Committee to prosecute and Settle Certain Claims on Behalf of the Debtors' Estates, dated April 11, 2013 [Dkt. No. 3412] (the "Standing Motion"), the Creditors' Committee argued that between 2007 and 2012, ResCap was on "life-support."[65]  The Creditors' Committee described the cash infusions that Ally "dribbled out" between 2007 and 2012 as simply a way to "delay the inevitable ResCap bankruptcy."[66]

197.    The obligations incurred by the Debtors under the Second Tax Allocation Agreement meet all the requirements of a constructive fraudulent transfer under the Bankruptcy Code.  Thus, the Second Tax Allocation Agreement should be avoided and the parties returned to the positions they would have been in had the obligations under the Second Agreement never been incurred—that is, the parties' rights and responsibilities to each other as they relate to certain taxes should be governed by the First Tax Allocation Agreement.[67]

---

[64] *See* Disclosure Statement at 41-42.
[65] Standing Motion ¶ 45.
[66] *Id.*.
[67] *See Gibson v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991).

ny-1114420

**8.** **ResCap is Entitled To Damages Based on AFI's Breach of the First Tax Allocation Agreement**

198.    Because the First Tax Allocation Agreement governs the parties' tax allocation relationship, ResCap has a breach of contract claim against AFI in which it can seek payment from AFI for AFI's use of ResCap's tax benefits, as contemplated by the First Tax Allocation Agreement.  This is true regardless of whether the Second Agreement is avoided. The First Agreement is a valid and enforceable contract and ResCap can pursue a breach of that contract even in the absence of a successful fraudulent transfer of the Second Agreement.

199.    Absent enforcement of the First Agreement, AFI will reap a ***$2.2 billion tax benefit*** as a result of the Global Settlement from the use of ResCap's favorable tax attributes and will have no obligation to compensate ResCap for that use.  The chart[68] at Figure 1 on the following page demonstrates this inequitable result.

---

[68] This table originated in the Examiner's Report but has been updated to include the results of the $2.1 billion Global Settlement.

ny-1114420

**Figure 1.  Calculation of Damages From Tax Allocation Agreement Under The Global Settlement**

|  | Examiner Report | Adjustment for Higher AFI Contribution | New POR |
|---|---|---|---|
| **Expected amount of cancellation of debt income (in millions)** |  |  |  |
| ResCap tax liabilities | 10,154 |  | 10,154 |
| Less: Creditors' expected recovery | -6,233 | -1,350 | -7,583 |
| **Cancellation of Debt Income** | **3,921** | **-1,350** | **2,571** |
| **Amount of built-in losses expected to be realized by ResCap during the Chapter 11 Cases (in millions)** |  |  |  |
| Creditors' expected Recovery | 6,233 | 1,350 | 7,583 |
| Less assumed contribution by AFI to creditors' recovery | -750 | -1,350 | -2,100 |
| Less tax basis in ResCap assets | -11,387 |  | -11,387 |
| **Built-in losses Expected to be Realized by ResCap** | **-5,904** | **0** | **-5,904** |
| **Amount of ResCap tax benefits available for AFI's use (in millions)** |  |  |  |
| ResCap NOLs generated (11/2/2009-12/31/2012) | 1,444 |  | 1,444 |
| ResCap capital losses generated (11/2/2009-12/31/2012) | 1,629 |  | 1,629 |
| ResCap losses to be realized during Chapter 11 cases | 5,904 |  | 5,904 |
| Less: Expected amount of cancellation of debt income | -3,921 | 1,350 | -2,571 |
| **Tax Benefits to AFI** | **5,056** | **1,350** | **6,406** |
| Federal income tax rate | 35.00% | 35.00% | 35.00% |
| **Value of Tax Benefits to AFI** | **1,770** | **473** | **2,242** |

200.    In other words, AFI's failure to abide by the First Tax Allocation Agreement will result in damages to ResCap of over $1.7 billion based on the initial $750 million proposed settlement contribution and over $2.2 billion based on the $2.1 billion Ally

Contribution.[69]  This means that Ally's tax savings from use of losses generated by ResCap's activities will exceed Ally's $2.1 billion contribution by over $100 million.

201.    Indeed, Ally does not meaningfully dispute the calculation of tax benefits as set forth above, and Ally admitted that it was possible that it would realize tax benefits of at least $2.1 billion.  (Aretakis Tr. at 53:13-20.)  At the end of 2012, Ally recorded $1.7 billion of

---

[69] Ally's Corporate Representative (Aretakis) testified that in September 2013—as a result of the progression of this case—Ally determined that there would be no cancellation of debt income ("CODI"), but rather, Ally would determine the "gain or loss on exchange."  (Designated Deposition Testimony of James Aretakis, dated November 6, 2013 ("Aretakis Tr.") at 32:25-33:18; 74:6-18.)  Mr. Aretakis conceded, however, that the change from CODI to "gain or loss on exchange" has no material effect on the "bottom line" tax benefit to Ally stemming from Ally's $2.1 billion contribution.  (Aretakis Tr. at 74:19-77:8.)  The following table illustrates Mr. Aretakis' testimony.

| | Examiner Report | Adjustment for Higher AFI Contribution | New POR |
|---|---|---|---|
| **Expected Gain or Loss on Exchange** | | | |
| ResCap tax basis in assets | 12,137[1] | 1,350 | 13,487 |
| Less:  ResCap tax liabilities[2] | -10,154 | | -10,154 |
| **Loss on Exchange** | 1,983 | | 3,333 |
| **Amount of ResCap tax benefits available for AFI's use (in millions)** | | | |
| ResCap NOLs generated (11/2/2009-12/31/2012) | 1,444 | | 1,444 |
| ResCap capital losses generated (11/2/2009-12/31/2012) | 1,629 | | 1,629 |
| ResCap losses to be realized during Chapter 11 cases | | | |
| Loss on Exchange | 1,983 | | 3,333 |
| **Tax Benefits to AFI** | **5,056** | | **6,406** |
| Federal income tax rate | 35.00% | | 35.00% |
| **Value of Tax Benefits to AFI** | **1,770** | | **2,242** |

---

*1. Includes $750 million initial Ally Contribution*

*2. Mr. Aretakis objected to the "total liabilities" figure used by the Examiner and the JSNs because, according to Mr. Aretakis, the total liability basis is not yet fixed.  (Aretakis Tr. at 51:10-18.)  However, with the exception of legal fees and other non-deductible liabilities not yet updated on ResCap's books, any additional liabilities would themselves generate a tax attribute in favor of Ally.*

gross deferred tax assets attributable to ResCap (DX AYZ ("ResCap vs Non-ResCap Deferred

Inventory as of December 31, 2012")) and in 2013 recorded an additional $1.35 billion expense

in connection with the increased contribution.  (DX BAO (AFI June 30, 2013 Form 8-Q) at 8.)

An internal memorandum reveals that as a result of the increased contribution, Ally will record

an additional deferred tax asset of at least $510,570,000 ($1.35B X 37.82%) (see DX AJA at

AFIJSN_0121144), which is publicly tied to Ally's Form 8-K, filed on July 31, 2013.  (DX AZF

(AFI (July 31, 2013 Form 8-K) at 1; Aretakis Tr. at 61:9-18.)  Consequently, though the JSNs

allege the overall tax benefit to Ally is indeed higher, for financial accounting purposes, Ally

will likely realize at least a $2.2 billion tax benefit.

    202.    Moreover, Ally has already begun to use tax benefits attributable to

ResCap.  In its Current Report, filed on July 31, 2013, Ally disclosed that its net loss was

"primarily due to a $1.6 billion charge resulting from Ally's comprehensive settlement

agreement in the ResCap Chapter 11 bankruptcy case" but that "***this was partially offset by

approximately $600 million in tax benefits related to the settlement charge*** and the sales of

certain of Ally's international businesses."  (DX AZF (AFI (July 31, 2013 Form 8-K) at 1

(emphasis added); Aretakis Tr. at 61:9-18.)  Further, when Mr. Aretakis was asked "whether

Ally expects to use any of the ResCap capital tax loss carried forwards in 2013," Mr. Aretakis

admitted that he expected Ally to use a "substantial amount."  (Aretakis Tr. 22:7-13.)  Thus the

tax benefits attributable to ResCap are not of some hypothetical economic benefit to Ally, but are

real assets which Ally has already started to utilize.

9. **ResCap's Claim Against Ally for Breach of the First Tax Allocation Agreement Is Subject to the JSN Liens Notwithstanding Avoidance of the Second Tax Allocation Agreement**

203.     The Plan Proponents assert that, because the Second Tax Allocation Agreement is subject to an avoidance action, claims arising from the breach of the First Tax Allocation Agreement constitute after-acquired property that are not subject to the JSN Liens.[70] The Plan Proponents are wrong.

204.     If the Second Tax Allocation Agreement is avoided as a fraudulent transfer pursuant to section 548 of the Bankruptcy Code, the estate receives no recovery based upon damages arising under the First Agreement;[71] the Second Agreement is simply rendered null and void. *See Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*, 178 B.R. 753, 756, 758 (Bankr. C.D. Ill. 1995) (explaining the difference between avoidance and recovery). In other words, "the [Second Agreement] is retroactively ineffective and the transferee legally acquired nothing through it." *In re Pearson Indus., Inc.,* 178 B.R. at 759. Avoidance of the Second Agreement simply returns the parties to the positions they were in before the Second Agreement was purportedly effective. *See id.; see also Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.),* 380 B.R. 324, 337 (Bankr. S.D.N.Y. 2008) (concluding that the debtor's release of a former employee's obligation to repay a loan was a fraudulent transfer and finding that, ordinarily, "avoiding the release . . . . leaves the transferor free to enforce the underlying debt"); *Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavour Highrise,*

---

[70] *See* Memorandum of Law in Support of the Debtors' and Official Committee of Unsecured Creditors' Motion to Dismiss Certain of the Defendants' Counterclaims, dated July 16, 2013 [Dkt. No. 22] at 10 n.8; Plan Proponents Omnibus Objection, dated August 16, 2013 [Dkt. No. 4723] at ¶ 30.

[71] The trustee can seek recovery under section 550 of the Bankruptcy Code, but only with respect to damages resulting from an avoidance of the Second Agreement. Those damages are equal to the amount that ResCap paid to AFI pursuant to the terms of the Second Agreement—$50 million. The $50 million recovery resulting from avoidance of the Second Agreement has nothing to do with the $2.4 billion recovery resulting from AFI's breach of the First Agreement.

*L.P.)*, 432 B.R. 583, 670 (Bankr. S.D. Tex. 2010) (after finding certain contract releases invalid because they lacked consideration or were avoidable as fraudulent transfers, the court permitted enforcement of the contracts as though the releases had never been entered into, allowing the trustee to collect liquidated damages pursuant to the contracts).

205.    Having been restored to their prior positions, the First Agreement becomes the operative document governing ResCap and Ally's tax allocation relationship.  AFI owes ResCap payments pursuant to the terms of the First Agreement, and thus ResCap has a breach of contract claim against Ally in the amount of $2.4 billion.  This $2.4 billion in proceeds is not a new asset; rather, the $2.4 billion flows directly from the breach of the First Agreement—it existed prior to the bankruptcy, and was then, as now, subject to the JSN Liens.  It is not a recovery that arises from any fraudulent transfer action, nor is it a recovery reliant on a fraudulent transfer action—ResCap (and the JSNs upon enforcement of their Liens) could pursue a breach of the First Agreement even in the absence of an avoidance of the Second Agreement.

206.    The JSNs clearly have a lien on any proceeds flowing from the breach of the First Agreement and the estate cannot recover any such proceeds in absence of enforcement of the First Agreement.  Where, as here, a secured creditor has, pursuant to a security agreement, a lien on property acquired pre-petition (*i.e.*, the breach of contract claims) and a lien on the proceeds, products, offspring, or profits of such property, the lien "extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case."[72]  The proceeds arising from the secured property to do not have to be in existence at the time the bankruptcy petition is filed.  *See Chem. Bank v. United States Lines (S.A.), Inc. (In re McLean Indus., Inc.),* 132 B.R. 271, 283-84 (Bankr. S.D.N.Y. 1991).  Here, per the terms of the Security

---

[72] 11 U.S.C. §552(b)(1).

Agreement, the JSNs have a lien on breach of contract claims and any proceeds that arise

therefrom.  Thus, the JSNs have a lien on all proceeds—potentially $2.4 billion in damages—

arising from AFI's breach of the First Tax Allocation Agreement.

207.    The proceeds from the breach of the First Agreement are subject to the

JSN Liens, regardless of the fact that the Second Agreement is subject to an avoidance action.[73]

### D.    Judge Lyons' Opinions on Claim Allocation

208.    Judge Lyons has opined that Ally Bank breached its agreements with

GMACM by converting to fair value accounting in August 2009, which caused $469.1 million in

damages to GMACM.  (Lyons Report at 12.)  He also concluded that GMACM would likely

prevail on a contractual claim that the allocation of revenues from January 1, 2009 to July 31,

2009 was proper and that it is, therefore, entitled to recover the $51.4 million payment that it

made to Ally Bank.  (Lyons Report at 12.)  Judge Lyons also concluded that GMACM is entitled

prejudgment interest on the total amount, at a rate of either 9% (under New York law) or 5%

above the Federal Reserve rate (under Delaware law).  (Lyons Report at 14.)  Judge Lyons

further concluded that, due to the magnitude of the claim, Ally Bank would likely settle this

claim for $268.2 million.  (Lyons Report at 14.)  According to the pro rata methodology of

allocating the Ally Contribution adopted by Judge Lyons, $234.6 million of the $2.1 billion Ally

Contribution should be attributed to this claim.  (Lyons Report at 95.)

209.    Judge Lyons has concluded that GMACM has a potential claim against

Ally Bank for the breach of a swap agreement relating to MSRs arising out of correspondent

loans originated by Ally Bank or purchased by Ally Bank from third parties.  The potential

damages for this claim are $1.725 billion.  (Lyons Report at 18-19.)  Judge Lyons found that

---

[73] This result is consistent with the intent of the parties in entering into the JSN Security Agreement, which
expressly provides for liens on any tax refunds or the proceeds thereof.  (*See supra* at II.A.)

given the size of the claim, Ally Bank would likely settle with GMACM, and a reasonable settlement value for this claim is $387.2 million. (Lyons Report at 21.) According to the pro rata methodology of allocating the Ally Contribution adopted by Judge Lyons, $338.8 million of the $2.1 billion AFI settlement should be attributed to this claim. (Lyons Report at 95.)

210.    Judge Lyons also concluded that ResCap has a potential breach of contract claim against AFI for AFI's breach of the First Tax Allocation Agreement. (Lyons Report at 40.) According to the pro rata methodology of allocating the Ally Contribution adopted by Judge Lyons, $713.7 million is a reasonable settlement value for this breach of contact claim, and $624.5 million of the $2.1 billion Ally Contribution should be allocated to the claim. (Lyons Report at 40, 96.)

## VI.    THE DEBTORS' INTERCOMPANY CLAIMS ARE VALID AND ENFORCEABLE

211.    The Intercompany Claims "reflect intercompany receivables and payments made [between Debtor entities] in the ordinary course of the Debtors' businesses."[74] These intercompany receivables and payables were recorded and tracked by the Debtors' centralized cash management system ("Cash Management System.")

212.    The balances underlying the Intercompany Claims developed over time as a result of several factors:

- Functioning of the Cash Management System:  Typically, cash generated at the subsidiary level was swept up to the parent level as part of the Debtors' Cash Management System.  The recipient of cash recorded an intercompany payable to the transferor and the transferor recorded an intercompany receivable from the recipient.

- Intercompany Loans:  Loans from one entity to another generated an intercompany note or accounts payable on the books of the borrower and an intercompany note or accounts receivable on the books of the lender.

---

[74] Debtors' Motion For Order Authorizing Continued Use of Cash Management Services and Practices [Dkt. No. 16] ("Cash Management Motion") ¶ 71.

- <u>Charges for Services</u>:  Charges for services provided by affiliates created an intercompany liability on the books of the service beneficiary to the service provider and an intercompany receivable from the beneficiary on the books of the service provider for the value of the services provided**.**

- <u>Interest Accrual</u>:  The accrual of interest on certain intercompany loans generated an intercompany accounts payable on the books of the borrower and an intercompany accounts receivable on the books of the lender**.**

- <u>Payments</u>:  Payments against intercompany notes payable or accrued intercompany interest payable reduced the intercompany assets on the books of the lender and the intercompany liabilities on the books of the borrower.

- <u>Transfers or Sales of Assets</u>:  A transfer or sale of assets between Debtor entities created an intercompany receivable from the transferee on the books of the transferor and an intercompany payable to the transferor on the books of the transferee for the value of the assets transferred.

- <u>Debt Forgiveness</u>:  Occasional forgiveness of intercompany obligations resulted in a reduction of the intercompany note or account payable on the books of the obligor and a reduction in the intercompany note or account receivable on the books of the beneficiary.

213.    Intercompany cash movement that resulted in intercompany payables and receivables was formally documented by (i) wire transfers, (ii) bank account records, and (iii) entries on the general ledger**.**  Moreover, the intercompany balances were consistently recorded in the general ledger as payables, receivables, or borrowings.  Specifically, the Debtors recorded the intercompany balances in the general ledger using the following titles: "Note Receivable," "Intercompany," "Intercompany Receivable," "Intercompany Recvable," "Intercompany Rec," "Intercompany Payable/Recvable," "Interco LOC," "Interco Payable," "Intracompany payable – US Subs" and/or "A/P affiliates."  These intercompany balances were similarly recorded in the Debtors' trial balances as payables, receivables, or borrowings.

214.    The Debtors' entry of the intercompany balances underlying the Intercompany Claims in the general ledger and trial balances as receivables, payables, or

ny-1114420

borrowings indicates that the Debtors believed, at the time the debt was incurred, the balances reflected bona fide debt that would be repaid.

215. Indeed, the Debtors' Controller, Cathy Dondzila, confirmed in a writing prepared in connection with FTI Consulting's ("FTI") review of the intercompany balances that intercompany debt was expected to be repaid. (DX AUI (RCUCCJSN30023149) at 30023151.)

216. There is no evidence that the intercompany balances were incurred as a result of fraudulent activity or that they were fabricated in any way.

217. Other internal documents also indicate that the Debtors intended to repay intercompany balances that were recorded as payables or borrowings. For example, a 2011 netting agreement between GMACM, RFC, ResHolding, and ResCap, executed in connection with the sale of certain mortgage loans from GMACM to RFC, recognized that "[p]ursuant to various intercompany loans," ResHolding owed money to ResCap that needed to be repaid, ResCap owed money to RFC that needed to be repaid, and GMACM owed money to ResHolding that needed to be repaid. (DX AYI (RCJSNII10074531) at 10074537.) The netting agreement provides for the repayment of these Debtor entity loan obligations. Pursuant to the agreement, the loan obligations will be "netted against each other so that the respective obligations will be discharged." (Id. at 10074538.) According to the operative accounting policy, when an obligation is "discharged" in a netting agreement, "the debt is considered paid, and the amount will never have to be paid to the creditor in the future." (DX AYH (RC40000082) at 40000086.)

218. In evaluating intercompany transactions, courts must consider whether the transactions were properly characterized as debt or equity transactions when they occurred.[75] In addition to having many indicia of debt, the intercompany balances have no indicia of equity. If

---

[75] *In re BH S&B Holdings LLC*, 420 B.R. 112, 155 (Bankr. S.D.N.Y. 2009).

the Debtors had intended to treat the intercompany cash movement as capital contributions from

a parent to a subsidiary, they would have recorded the balances as additional paid-in capital, not

as a payable and a receivable.  Indeed, as expert Robert S. Bingham will explain at trial, the

frequent movement of cash between an operating subsidiary and parent company, with both

entities playing the roles of lender and borrower at various times, is not consistent with an equity

investment.  Moreover, if the Debtors had intended to treat the intercompany cash movement as

a dividend or a distribution from a parent to a subsidiary, they would have recorded the balances

as reductions of paid-in capital from a subsidiary, not as a payable and receivable.

219.    Further, both a capital contribution and a dividend or distribution required

Board approval, while the ordinary course intercompany debt transactions did not.

220.    Finally, equity investments in the parent-subsidiary context tend to be

made by the parent to the operating subsidiary, typically to facilitate large capital expenditures

and without recording an intercompany obligation**.**  Here, however, the transferred funds were

not used to facilitate any material capital expenditures.  Indeed, the Debtors' Corporate

Representative, Cathy Dondzila, testified that there were no material capital improvements

undertaken during her tenure as ResCAp Controller.  (Designated Deposition Testimony of

Cathy Dondzila, dated October 17, 2013 ("Dondzila Tr."), at 91:5-9.)  Instead, the funds were

generally used to maintain liquidity or to ensure subsidiaries met various solvency and/or net

worth requirements.

A.    **The Debtors' Debt Forgiveness Process Indicates That The Debtors
Believed the Intercompany Balances Represented Valid Debt**

221.    According to the Debtors' Disclosure Statement, approximately $16.6

billion of "debt obligations were forgiven among the Debtors and certain non-Debtor subsidiaries

in connection with the Debtors' international transactions and the dissolution of entities."[76] Some of this debt was forgiven so that the Debtor entities would be in compliance with certain regulatory or contractual solvency and net worth requirements.

222.    To ensure they were in compliance with these regulatory and/or contractual solvency and net worth requirements, the Debtors frequently performed solvency and net worth analyses.  For purposes of evaluating the solvency of the Debtor entities, the Debtors considered intercompany receivables to be assets and intercompany payables to be liabilities.

223.    Debt forgiveness resulted in a reduction of the intercompany note or account payable on the books of the obligor and a reduction in the intercompany note or account receivable on the books of the beneficiary.

224.    The Debtors' Corporate Representative, Cathy Dondzila, testified that debt forgiveness was effectuated through a capital contribution (*i.e.,* through the equity account) to comply with GAAP requirements.  (Dondzila Tr. at 84:13-86:6.)  Internal communications reflect that the Debtors relied upon AICPA Practice Alert 00-1 (Extinguishment of Related Party Debt ¶¶ 27-28) in arriving at their determination to use the equity account to effectuate the debt forgiveness.

225.    Intercompany debt forgiveness required various levels of approval depending upon the amount forgiven.  Debt forgiveness in amounts less than $50 million required approval of ResCap's Chief Financial Officer, Board of Directors and/or Executive Committee.  Debt forgiveness in amounts greater than $50 million also required the approval of the Ally Board of Directors.  All debt forgiveness received appropriate approvals as required by a particular transaction.

---

[76] Disclosure Statement at 47.

226.    This formal approval process contrasts with the ordinary course intercompany transactions (which did not require any approvals) that created the intercompany payables and receivables and indicates that the Debtors regarded the underlying intercompany balances as debt.  If the intercompany balances underlying the Intercompany Claims were actually created by way of capital contributions or equity distributions, debt forgiveness would have been unnecessary.  Instead, the intercompany transactions created a bona fide liability requiring that the liability be repaid or forgiven.  Moreover, if the ordinary course intercompany transactions were actually capital contributions, they would have required the approvals described *supra*.

227.    Indeed, Mr. Young, former Chief Financial Officer of ResCap, agreed that to forgive a debt you must, in the first place, have debt:

> Q. Without a debt -- you can't forgive debt that isn't owed, do you agree with that?
>
> A.   I agree with that.
>
> Q.   Okay.  So if you're talking about forgiving debt, there has to be a debt that's owed, right?
>
> A. On the face of it, yes.  (Designated Deposition Testimony of James Young, dated November 6, 2013 ("Young Tr."), at 117:3-9; 120:6-10.)

**B.      The Debtors Consistently Represented to Others that the Intercompany Balances Were Valid Debt**

228.    In all of its important governmental filings, as well as the audited financials prepared for individual Debtor subsidiaries, ResCap and the subsidiaries reported the Intercompany Claims as debt.  In contrast, the Debtors cannot point to any pre-petition filing with a governmental entity or audited financial statement where the intercompany balances were reflected as equity.

229.    **Tax Filings.**  In its 2009, 2010, and 2011 federal income tax returns, ResCap reported intercompany payables as "Other Liabilities" (line 21) in Schedule L ("Balance Sheet per Books") of its Form 1120.  The supporting schedule for the "Other Liabilities" category on Schedule L indicates that there are "Intercompany Payables" and "Accounts Payable – Affiliates" that are recorded as liabilities on ResCap's balance sheet.

230.    **SEC Filings.**  ResCap regularly reported supplemental financial information that included separate parent and subsidiary balance sheet information to the Securities and Exchange Commission ("SEC").  For example, in its Form 10Q/A for the quarterly period ended June 30, 2009, ResCap reported in excess of $5.5 billion of borrowings outstanding among ResCap and its subsidiaries as of June 30, 2009 in the liabilities section of its condensed consolidating balance sheet.  ResCap similarly disclosed borrowings by its subsidiaries as liabilities in its SEC filings for the years ended December 31, 2007 and December 31, 2008, and for the quarterly periods ended March 31, 2008, June 30, 2008, September 30, 2008 and March 31, 2009.

231.    **Audited Financial Statements.**  Because of various state licenses and certain liquidity facilities and contracts, including contracts with the Department of Housing and Urban Development and certain government-sponsored enterprises like Ginnie Mae, GMACM, RFC, and HomeComings were required to have their own independent financial statements.  The independently audited financial statements of all three Debtor entities treated the intercompany balances as debt.

232.    For example:

- RFC identified and reported $1.84 billion and $2.30 billion of receivables from its ResCap in the asset section of its balance sheet as of December 31, 2011 and December 31, 2010, respectively.

- Homecomings reported $1.05 billion of affiliate receivables, net, as of December 31, 2008 in the assets section of its balance sheet. Homecomings also stated that "affiliate receivables are comprised of amounts due for servicing advances transferred at carrying value, fees charged for subservicing activities, and mortgage loans sold to affiliates of the Company. These receivables are recorded at their net realizable value." (DX AME EXAM00122166 at 00122176.)

- GMACM reported $69.79 million of payables owed to RFC as of December 31, 2011.

- GMACM reported $515.89 million and $358.71 million of borrowings from parent (ResHolding) as of December 31, 2010 and 2009, respectively.

233.    In preparing financial statements in accordance with GAAP, the Debtors regularly conducted impairment analyses to assess the obligors' ability to satisfy these intercompany liabilities before determining whether they should be included in the reported financial statements.

234.    **The Debtors' Own Employees Confirmed that the Intercompany Balances Were Debt.**  On the eve of bankruptcy, at the same time that ResCap and FTI were examining the intercompany balances, Barbara Westman drafted a memorandum analyzing the RFC intercompany receivable from ResCap for impairment purposes.  (DX ATQ (RCUCCJSN20051023).)  Ms. Westman, in consultation with ResCap auditor Deloitte and Touche, determined that it should be treated as a *fully collectible intercompany receivable* for accounting purposes, explaining that "management concludes that ResCap maintains the ability to support its intercompany obligations with RFC, and therefore, no impairment of this receivable is warranted."  (DX ATQ (RCUCCJSN20051023).)

235.    As a result of this analysis, in its independently audited financial statements for the years ended December 31, 2011 and 2010, RFC treated and recorded its intercompany balance due from ResCap as a fully collectible intercompany receivable.  RFC

identified and reported $1.84 billion and $2.30 billion of receivables from ResCap in the asset

section of its balance sheet as of December 31, 2011 and December 31, 2010, respectively.

236.    Around the same time, the Debtors' Controller, Cathy Dondzila, received

a number of intercompany-related inquiries from FTI, the Debtors' financial advisor.  Her

answers to those inquiries confirm that the Debtors' employees considered the intercompany

balances to be debt:

- FTI asked whether intercompany balances were considered loans or equity
  infusions and whether there was an expectation that the balances would be repaid.
  Ms. Dondzila replied that, "[t]o the extent we have deemed a collateralized
  affiliate balance impaired we have impaired it through earnings.  Otherwise we
  have concluded for GAAP financial statement purposes the balances were
  expected to be repaid."

- FTI asked whether intercompany balances were reported in public or regulatory
  filings reported as debt or equity.  Ms. Dondzila explained that "in standalone
  financial statements of the operating companies [intercompany balances] are
  reported as affiliate receivables/payables/debt."

- Ms. Dondzila also explained that, "[a]s the operating companies generate cash,
  through asset sales, borrowings, asset liquidations etc., this cash moves upstream
  to ResCap.  This again creates the payable on the Parent and the receivable at the
  operating company."

(DX AUI (RCUCCJSN30023149) at 30023151.)

237.    Mr. Young, who sought consent from the ResCap Board to forgive

intercompany debt confirmed that he considered the debt for which he asked forgiveness to be

debt that was owed and that needed to be paid back to the lender.  (Young Tr. at 116:9-117:19;

120:6-10.)

C.    **The Debtors Analyzed the Intercompany Balances Before
Determining That They Should Be Scheduled As Intercompany
Claims on The Debtors' Schedules of Assets and Liabilities**

238.    Prior to filing their Schedules of Assets and Liabilities ("SOALs") in this

bankruptcy, the Debtors, and the Debtors' financial advisor FTI, did a significant amount of

126

work analyzing the intercompany balances.  The Debtors' Corporate Representative, Cathy Dondzila, who was responsible for preparing the SOALS, testified that the intercompany balances were an "area of focus" for her and her team during this time period.  (Dondzila Tr. at 129:19-130:16; 135:14-136:5.)  Ms. Dondzila and her team never considered excluding the intercompany balances from the schedule of claims on the Debtors' SOALs.

239.    The Debtors' counsel, Morrison & Foerster, conducted their own detailed evaluation of whether the intercompany balances underlying the Intercompany Claims should be characterized as debt prior to the filing of the SOALs.  Debtors' counsel created a chart of the top 10 intercompany balances and laid out the facts that supported treating the intercompany balances as debt and the facts that supported treating them as equity.  (DX ANH (UCC12846) at 12848-51.)  In this chart, Debtors' counsel recognized that "intercompany claims arising from operation of the cash management system [i.e,. the majority of the Intercompany Claims here] are enforceable as debt." (*Id.* at 12848.)  In fact, Debtors' counsel noted in the chart that, because certain "[c]laims were identified as receivable and payable on interco books," "[s]ufficient formality [exists] for an intercompany loan." (*Id.*)

240.    Based on this extensive analysis by the Debtors, the Debtors' advisors, and the Debtors' counsel, the Debtors determined to represent to the Court, by scheduling the claims on their SOALs, that the intercompany balances represented valid, collectible debt.  The Debtors knew that the values assigned to each Intercompany Claim on the SOALs would have an impact on the Debtors' waterfall analysis.  The Debtors' Controller, Cathy Dondzila, recognized that "that there could be different views about the treatment of these balances as either debt or equity.  And yes, I was aware that that could have an impact on the financial disposition of the net assets of the company." (Dondzila Tr. at 42:5-17.)

241.    In June and July of 2012, the Debtors filed their SOALs with the Court. The Debtors listed the intercompany balances on each SOAL's "General Claims" schedule under the sub-heading "Creditors Holding Unsecured Claims."  They did not schedule the Intercompany Claims as contingent, unliquidated, or disputed.  And the Debtors assigned a value to each of the Intercompany Claims on the schedules.  Those balances were all accurately reported on the Debtors' SOALs.

242.    The Debtors' Corporate Representative, Barbara Westman, testified that the Debtors believed that the information on the SOALs—including the information regarding the Intercompany Claims— was accurate.  (Westman Tr. at 112:7-15.)  The Debtors' Corporate Representative and Chief Restructuring Officer, Lewis Kruger, confirmed that the Debtors were accurate and honest when they prepared the SOALs.  (Kruger Tr. at 130:5-23, 126:6-20.)

243.    In depositions, the Plan Proponents have focused on the fact that each individual Debtor, in its SOAL, purported to reserve the right to recharacterize its intercompany claims between Debtors and between Debtors and non-Debtor affiliates.  But this same reservation makes clear that each Debtor had, by June/July 2012, already "made every attempt to properly characterize, prioritize, and classify all intercompany transaction[s]."  (*See, e.g.,* Dkt. No. 586 at 6.)

244.    The SOALs included nine intercompany balances each over $50 million. These nine balances represent the largest Intercompany Claims, which together comprise $8 billion of the total $8.4 billion intercompany balances scheduled by the Debtor.  These Intercompany Claims are described in more detail in the sections below.

ny-1114420

245.    Each of the nine Intercompany Claims discussed below is represented graphically on the demonstrative at Figure 2 on the following page, which will be presented at trial.

ny-1114420



ny-1114

130

**Figure 2**

Source: Document 3.3.2 (ResCap Org Chart including International as of 2012.04.10) in ResCap's Intralinks dataroom
Note: This chart is not inclusive of all subsidiaries of Ally Financial and Residential Capital. Subsidiaries excluded, among others, include foreign entities and minority interests.

1.    **Intercompany Claim No. 1:  Residential Capital, LLC Against GMAC Residential Holding Company, LLC**

246.    ResCap has an outstanding net claim of $3,333.9 million against ResHolding.  The balances underlying Intercompany Claim No. 1 (ResCap/ResHolding) were accurately reported as intercompany receivables and intercompany payables on the general ledger.  The balances were also accurately reported as debt on ResHolding's SOAL.

247.    ResCap's intercompany receivable is a result of a "line of credit" extended by ResCap to ResHolding for the benefit of GMACM, one of ResHolding's operating subsidiaries.  (Dondzila Tr. at 30:13-32:16.)

248.    The lending relationship between ResCap and ResHolding is documented in a 2006 loan agreement (the "ResCap Loan Agreement") between and among ResCap, ResHolding, GMACM, and RFC.  The ResCap Loan Agreement automatically renewed every year unless it was terminated in writing by either party.  There is no indication that the ResCap Loan Agreement was ever terminated.

249.    Interest accrued on the ResCap/ResHolding intercompany balance, and ResHolding regularly (up until the Petition Date) paid interest on this balance at an average rate of 9.6%.

250.    Part of this "intercompany loan[]" balance was repaid in 2011 pursuant to a netting agreement between GMACM, RFC, ResHolding, and ResCap, executed in connection with the sale of certain mortgage loans from GMACM to RFC.  The netting agreement explained that, "[p]ursuant to various intercompany loans, [ResHolding] owes amounts to [ResCap]."  (DX AYI (RCJSNII10074531) at 10074537.)  Pursuant to the netting agreement, among other things, ResCap agreed to "fully and finally discharge[] [ResHolding] from its obligation to repay

131

$171,323,565.91 to ResCap under the intercompany loans (and subtracts such amount from the total amount due by [ResHolding] to ResCap under the intercompany loans)." (*Id.* at 10074538.)

251.    In an email exchange right before the filing of the SOALs, the Debtors' financial advisor, FTI, referred to this Intercompany Claim as "debt [that] should be frozen at the filing date as a pre-petition unsecured liability." (DX ARV (RCUCCJSN10895541) at 10895547.)

## 2.    Intercompany Claim No. 2:  Residential Funding Company, LLC against Residential Capital, LLC

252.    RFC has an outstanding net claim of $1,955 million against ResCap.

253.    The balances underlying Intercompany Claim No. 2 (RFC/ResCap) were accurately reported as intercompany receivables and intercompany payables on the general ledger.  The balances were also accurately reported on ResCap's SOAL.

254.    RFC's intercompany receivable is a result of the operation of the Debtors' Cash Management System—cash was swept from RFC up to ResCap.  The Debtors' internal analysis, which was shared with the Creditors' Committee, demonstrates that balances arising from operation of a company's cash management system are treated as debt by reviewing courts. As Debtors' counsel states in its analysis, "[c]ases note that intercompany claims arising from the operation of the cash management system are enforceable as debt." (DX ANH (UCC12848).)

255.    The RFC/ResCap intercompany balance is documented, at least in part, by a 2010 loan agreement.  The loan agreement provides a line of credit to ResCap in order to "enable [ResCap] to conduct business activities." (DX ASY (RCUCCJSN10745612) at 10745614.)  The Debtors' Corporate Representative, Cathy Dondzila, also explained that the

RFC/ResCap receivable acted as a "line of credit" between RFC and ResCap.  (Dondzila Tr. at 31:6-32:11.)

256.    In a memorandum drafted in March 2012 (*i.e.*, on the eve of the filing of these cases), Barbara Westman (as part of the 2011 year-end audit) analyzed the RFC receivable from ResCap for impairment purposes and determined that it should be treated as a *fully collectible intercompany receivable* for accounting purposes, explaining that "management concludes that ResCap maintains the ability to support its intercompany obligations with RFC, and therefore, no impairment of this receivable is warranted."  (DX ATQ (RCUCCJSN20051022); Westman Tr. at 183:19-190:11.)

257.    As a result of this analysis, in its independently audited financial statements for the years ended December 31, 2011 and 2010, RFC treated and recorded its intercompany balance due from ResCap as a fully collectible intercompany receivable.   RFC identified and reported $1.84 billion and $2.30 billion of receivables from ResCap in the asset section of its balance sheet as of December 31, 2011 and December 31, 2010, respectively.

258.    The Debtors used periodic repayments of this and other intercompany balances to effectuate ordinary course asset sales between the Debtor entities.  For example, part of the "intercompany loan[]" balance was repaid in 2011 pursuant to a netting agreement between GMACM, RFC, ResHolding, and ResCap, executed in connection with the sale of certain mortgage loans from GMACM to RFC.  (DX AYI (RCJSNII10074531) at 10074537.) The netting agreement explained that, "[p]ursuant to various intercompany loans, ResCap owes amounts to [RFC]."  (*Id.*)  Under this netting agreement, RFC agreed to "fully and finally discharge[] ResCap from its obligation to repay $171,323,565.91 to [RFC] under the

intercompany loans (and subtracts such amount from the total amount due by ResCap to [RFC] under the intercompany loans)." (*Id*. at 10074537.)

### 3. Intercompany Claim No. 3: Homecomings Financial LLC against Residential Funding Company, LLC

259.    Homecomings has an outstanding net claim of $1,252 million against RFC.

260.    The balances underlying Intercompany Claim No. 3 (Homecomings/RFC) were accurately reported as intercompany receivables and intercompany payables on the general ledger.  The balances were also accurately reported on RFC's SOAL.

261.    Homecomings' intercompany receivable is a result of the operation of the Debtors' cash management system— cash was swept from HomeComings up to RFC.  The Debtors' internal analysis, which was shared with the Creditors' Committee, demonstrates that balances arising from operation of a company's cash management system are treated as debt by reviewing courts.  As Debtors' counsel states in its analysis, "[c]ases note that intercompany claims arising from the operation of the cash management system are enforceable as debt."  (DX ANH (UCC12848).)

262.    Interest accrued on the Homecomings/RFC intercompany balance and was recorded in the general ledger as a receivable or a payable.

263.    Homecomings' independently audited financial statements recorded interest income.  For example, the Homecomings' December 31, 2008 audited financial statement states that "[Homecomings] is charged or credited interest by RFC for the net affiliate receivable/payable balance outstanding each month at a rate that represents RFC's borrowing rate.  At December 31, 2008, $1,051,047 [$ is thousands] net receivable was outstanding at an

134

interest rate of 8.9%. The net interest credited and included in the consolidated statement of operations for the year ended December 31, 2008 is $45,125 [$ in thousands]."

264.     A loan agreement exists that documents a lending relationship between Homecomings and RFC.  Although the lender-borrower relationship appears to have reversed, the Debtors treated the loan agreement as documenting the Homecomings/RFC Intercompany Claim and accrued interest accordingly.

265.     Homecomings identified and reported intercompany receivable balances as affiliate receivables (net) in its independently audited financial statements.  For example, Homecomings reported $1.05 billion of affiliate receivables, net, as of December 31, 2008 in the assets section of its balance sheet.  Homecomings also stated that "affiliate receivables are comprised of amounts due for servicing advances transferred at carrying value, fees charged for subservicing activities, and mortgage loans sold to affiliates of the Company.  These receivables are recorded at their net realizable value."  None of the receivables were recorded as equity on Homecomings' books.

### 4.     Intercompany Claim No. 4: Passive Asset Transactions, LLC ("PATI") against GMACM, LLC

266.     PATI has an outstanding net claim of $697 million against GMACM.

267.     The balances underlying Intercompany Claim No. 4 (PATI/GMACM) were accurately reported as intercompany receivables and intercompany payables on the general ledger.  The balances were also accurately reported on GMACM's SOAL.

268.     PATI's intercompany receivable is a result of the operation of the Debtors' cash management system—cash was swept from PATI up to GMACM and finally up to RFC.  The Debtors' internal analysis, which was shared with the Creditors' Committee, demonstrates that balances arising from operation of a company's cash management system are

treated as debt by reviewing courts.  As Debtors' counsel states in its analysis, "[c]ases note that intercompany claims arising from the operation of the cash management system are enforceable as debt."  (DX ANH (UCC12848).)

269.    The lending relationship between PATI and RFC is documented by a loan agreement.

### 5.    Intercompany Claim No. 5: Executive Trustee Services, LLC ("ETS") against GMACM

270.    ETS has an outstanding net claim of $265 million against GMACM.

271.    The balances underlying Intercompany Claim No. 5 (ETS/GMACM) were accurately reported as intercompany receivables and intercompany payables on the general ledger.  The balances were also accurately reported on GMACM's SOAL.

272.    ETS's intercompany receivable is a result of the operation of the Debtors' cash management system—cash was swept from ETS up to GMACM and finally up to RFC. The Debtors' internal analysis, which was shared with the Creditors' Committee, demonstrates that balances arising from operation of a company's cash management system are treated as debt by reviewing courts.  As Debtors' counsel states in its analysis, "[c]ases note that intercompany claims arising from the operation of the cash management system are enforceable as debt."  (DX ANH (UCC12848).)

273.    Moreover, interest accrued on the ETS/GMACM intercompany balance and was recorded in the general ledger as a receivable or a payable, which is consistent with an intent to treat the balance in question as debt.

### 6.    Intercompany Claim No. 6: RFC against RFC Asset Holdings, II LLC

274.    RFC has an outstanding net claim of $232 million against RFC Asset Holdings II, LLC ("RAHI").

275.   The balances underlying Intercompany Claim No. 6 (RFC/RAHI) were accurately reported as intercompany receivables and intercompany payables on the general ledger.  The balances were also accurately reported on RAHI's SOAL.

276.   RFC's intercompany receivable is a result of the operation of the Debtors' cash management system.  The Debtors' internal analysis, which was shared with the Creditors' Committee, demonstrates that balances arising from operation of a company's cash management system are treated as debt by reviewing courts.  As Debtors' counsel states in its analysis, "[c]ases note that intercompany claims arising from the operation of the cash management system are enforceable as debt."  (DX ANH (UCC12848).)

277.   Interest accrued on the RFC/RAHI intercompany balance and was recorded in the general ledger as a receivable or a payable, which is consistent with an intention to treat the balance in question as debt.

### 7.   Intercompany Claim No. 7: RFC against GMACM

278.   RFC has an outstanding net claim of approximately $139.7 million against GMACM.

279.   The balances underlying Intercompany Claim No. 7 (RFC/GMACM) were accurately reported as intercompany receivables and intercompany payables on the general ledger.  The balances were also accurately reported on GMACM's SOAL.

280.   RFC and GMACM were "sister" entities.  That is, they were on the same subsidiary level, so money moving between the two by operation of the cash management system moved laterally, as opposed to being swept up to a parent.  The Debtors' internal analysis, which was shared with the Creditors' Committee, demonstrates that balances arising from operation of a company's cash management system are treated as debt by reviewing courts.  As Debtors' counsel states in its analysis, "[c]ases note that intercompany claims arising from

137

ny-1114420

the operation of the cash management system are enforceable as debt."  (DX ANH (UCC12848).)  Moreover, the fact that this balance moved between two sister entities (rather than from a parent to a wholly-owned subsidiary, which could be construed as an investment) strongly indicates that this intercompany transaction was intended as debt.

281.    Mr. Bingham will testify at trial that it would be unusual for an *equity investment* between sister companies to be reflected on a company's books and records as an intercompany receivable—which is how this intercompany balance was recorded.

282.    GMACM clearly identified and reported intercompany balances as "Other Liabilities – Payable to RFC" in its independently audited financial statements.  For example, GMACM reported approximately $70 million of payables owed to RFC as of December 31, 2011.  Similarly, in its audited financial statements for that year, RFC clearly identified and reported an intercompany receivable of approximately $70 million.

283.    It is apparent from these contemporaneous financial statements that the intercompany balance was treated as a valid liability on GMACM's statements and as a valid and collectible receivable on RFC's statements.  Such accounting is an indication that these entities expected the intercompany balances would be repaid, and/or that repayment could be demanded.

284.    Even the Debtors' expert, Mark Renzi, acknowledged the enforceability of this Intercompany Claim.  Mr. Renzi includes a variety of scenarios in his rebuttal report designed to support the recharacterization or offset of the nine largest Intercompany Claims. Scenario 1D, which purports to combine all of those challenges, leaves Intercompany Claim Nos. 1, 7, and 9 as fully enforceable.  Similary, Gina Gutzeit acknowledges in her rebuttal report that, "[u]nlike the other top receivables which represented intercompany relationships between a parent company and a subsidiary, the receivable to RFC from GMACM was between two sister

companies and was cash settled on a monthly basis per AFI accounting policies as it would not have been eliminated during financial statement consolidation at RFC and GMACM." (*See* Gutzeit Rebuttal Report at 34.)

8.      **Intercompany Claim No. 8: Home Connect Lending Services, LLC Claim against ResHolding**

285.    Home Connect Lending Services, LLC ("Home Connect") has an outstanding net claim of $54.6 million claim against ResHolding.

286.    The balances underlying Intercompany Claim No. 8 (Home Connect/ResHolding) were accurately reported as intercompany receivables and intercompany payables on the general ledger.  The balances were also accurately reported on ResHolding's SOAL.

287.    According to a document prepared by the Debtors (or representatives of the Debtors) the Home Connect/ResHolding balance resulted from "intercompany transfers and clean up to the closure of [Home Connect] and related entities."  (DX AUC (RCUCCJSN30004106) at 30004113.)  The Debtors' Corporate Representative, Barbara Westman, testified that this intercompany balance also reflected, in part, the movement of cash through the cash management system.  (Westman Tr. at 79:12-18.)  The Debtors' internal analysis, which was shared with the Creditors' Committee, demonstrates that balances arising from operation of a company's cash management system are treated as debt by reviewing courts. As Debtors' counsel states in its analysis, "[c]ases note that intercompany claims arising from the operation of the cash management system are enforceable as debt."  (DX ANH (UCC12848).)

### 9.      Intercompany Claim No. 9: ResHolding against GMACM

288.    ResHolding has an outstanding net claim of $51.4 million against GMACM.

289.    The balances underlying Intercompany Claim No. 9 (ResHolding/GMACM) were accurately reported as intercompany receivables and intercompany payables on the general ledger.  The balances were also accurately reported on GMACM's SOAL.

290.    According to a document prepared by the Debtors (or representatives of the Debtors) the ResHolding/GMACM balance represents borrowings under an unsecured credit facility between GMACM and its parent, ResHolding.  The agreement documenting this facility was executed in December 1998.

291.    According to the same document, "[t]he monthly activity represents the borrowings for the general operating needs of [GMACM]."  (DX AUC (RCUCCJSN30004106) at 30004113.)  The Debtors' Corporate Representative, Barbara Westman, testified that this intercompany balance also reflected, in part, the movement of cash through the cash management system.  (Westman Tr. at 79:12-18.)

292.    This credit facility was payable upon demand, and repayments were made on a recurring basis until the Petition Date.

293.    Interest accrued on the ResHolding/GMACM intercompany balance monthly until the Petition Date, and was recorded in the general ledger as a receivable or a payable.  The interest rate under the facility agreement "fluctuates monthly and is a stated margin, agreed between the Company and RHC, which is generally between 100 and 300 basis points above a quoted short-term market rate."

294.    GMACM clearly identified and reported intercompany balances, including the Intercompany Balance between GMACM and ResHolding, as receivables from affiliates or borrowings from parent (ResHolding) in its independently audited financial statements.  For example, GMACM reported $4.1 million of affiliate borrowings as of December 31, 2007. Similarly, in its audited financial statements for that year ResHolding reported "Accounts receivable – intercompany" of $4.5 million, which included the $4.1 million from GMACM as well as borrowings from other entities.

295.    It is apparent from these contemporaneous financial statements that the intercompany balance was treated as a valid liability on GMACM's statements and as a valid and collectible receivable on RFC's statements.  Such accounting is an indication that these entities expected the intercompany balances would be repaid, and/or that repayment could be demanded.

296.    The audited financial statements prepared by GMACM clearly reports that the interest expense, like the principal, was recorded on the books and records of GMACM.  For example, GMACM reported $15.54 million and $30.15 million of interest expense on borrowings from parent (ResHolding) for the years ended December 31, 2010 and December 31, 2009, respectively.

**D.    The Debtors Determined to Pay the Post-Petition Intercompany Balances as Administrative Claims**

297.    As set forth above, the Debtors conducted an extensive review of the intercompany balances prior to the filing of these cases and ultimately concluded that the intercompany balances should be scheduled as debt on the SOALs.  Intercompany balances continued to accrue post-petition as a result of the continued operation of the cash management system.

141

298.    Indeed, ResCap's Controller, Cathy Dondzilla, (i) explained in an email that ResCap "expects to continue to follow its cash management practices post-petition" (*i.e*., the same cash management practices from which many of the intercompany balances arose) and (ii) testified that FTI did not inform her that the Debtors needed to change their practices or that she was doing anything wrong with respect to the intercompany balances.  (DX AUI (RCUCCJSN30023149); Dondzila Tr. at 87:16-88:18.)

299.    Notwithstanding the Debtors' apparent contention that the *pre-petition* intercompany balances have little or no value (*see infra*), the *post-petition* intercompany balances are being treated as bona fide debt and paid as administrative claims.  (Renzi Tr. at 153:17-23.)

E.    **The Debtors and the Creditors' Committee Determined to Ignore the Pre-Petition Intercompany Balances in the Plan**

300.    As set forth above, the Debtors engaged in an extensive analysis of the intercompany balances pre-petition, which culminated in the decision to schedule the balances as valid debt on their SOALs.  The impact of allowing the Intercompany Claims quickly became apparent to the Creditors' Committee, which recognized that allowance of those claims would, assuming a contribution from Ally, easily render the JSNs oversecured.  As a result, the Creditors' Committee determined to seek a plan that disallowed the Intercompany Claims.  Mr. Renzi confirmed that the Creditors' Committee insisted on a resolution of the Intercompany Claims before consenting to any proposed plan.  (Renzi Tr. at 182:20-184:3.)  Michael Carpenter, CEO of AFI, testifed that he did not "lay down as a condition" of the Ally Contribution, the settlement of Intercompany Claims, and that Ally was indifferent as to "how the creditors divide up the spoils."  (Deposition Transcript of Michael Carpenter (Rough), dated November 12, 2013 at 46:15-47:4; 48:7-20.)

ny-1114420

301.     In a September 2012 communication discussing a draft plan of

reorganization, counsel for the Creditors' Committee told Debtors' counsel that if the

intercompany claims were allowed in the plan as general unsecured claims, the Creditors'

Committee would have "potentially a major issue."  (DX AYQ (UCC13005).)

302.     The Debtors thereafter began sharing information and documents

regarding intercompany claims with Alix Partners, the Creditors' Committee's financial advisor.

303.     The Debtors ultimately decided to work with the Creditors' Committee to

create a plan palatable to the Creditors' Committee—*i.e.,* one that completely eliminated the

value of the Intercompany Claims.

304.     After already scheduling the intercompany balances as general unsecured

claims on their SOALs, the Debtors suddenly reversed course and claimed that the balances were

more like equity than debt, and thus subject to recharacterization, and, as a result, asserted that

they were justified in waiving the Intercompany Claims for zero value.  They did so even though,

as the Debtors' Corporate Representative and Chief Restructuring Officer Lewis Kruger

admitted, the Debtors never concluded that the claims had no value.  (Kruger Tr. at 133:6-12.)

305.     The Debtors claim that "[s]ince the filling of [the SOALs], the Debtors

conducted an extensive analysis of the Intercompany Balances" and it is this analysis that has

prompted their reversal of position and decision to treat the intercompany as equity instead of

debt.  (Disclosure Statement at 38.)  Exhibit 6 to the Disclosure Statement (the "Disclosure

Statement Chart") belies this assertion.

306.     The Disclosure Statement Chart includes the *six largest intercompany*

*claims*, which were analyzed by Debtors' counsel in a chart created in connection with their

review of the intercompany claims (the "Original Chart").  (DX ANH (UCC12846).)  This chart

was apparently drafted before the Intercompany Claims were scheduled as liabilities on the

Debtors' SOALs.  The two charts are similar in many respects.  In fact, with respect to the six

largest claims, the Disclosure Statement Chart includes very little additional, substantive

information.  In one instance, the Disclosure Statement Chart actually deletes information that

was included in the Original Chart.  In the row discussing Claim No. 2 (RFC/ResCap), the

Disclosure Statement Chart removes information that supports the classification of the

RFC/ResCap intercompany balances as debt, deleting the following notes:

- "Cases note that intercompany claims arising from the operation of the cash management system are enforceable as debt."

- "Sufficient formality for an intercompany loan."

307.    Further, the Disclosure Statement Chart states that the RFC/ResCap claim

is not supported by documentation.  The Original Chart, however, notes that supporting

documentation for this loan exists:  "Supporting doc. sill evidences relationship between entities

and parties' original intent."   In fact, the RFC/ResCap intercompany balance is documented, at

least in part, by a 2010 loan agreement.

308.    Despite the Debtors' claim that analysis conducted after the filing of the

SOALs prompted their reversal of position, a comparison of the Original Chart and the

Disclosure Statement Chart makes clear that nothing changed from the filing of the SOALs to

the filing of the Plan except the Debtors' determination that treating the Intercompany Claims as

"equity" and not "debt" would be more convenient for them and the Creditors' Committee.

309.    The Debtors assert that the Intercompany Claims can be waived and

settled for zero value because, *inter alia,* the underlying intercompany debt can be

recharacterized as equity.  This assertion is wrong.  The Intercompany Claims are valid,

enforceable debt that should yield distributable value for the JSNs.

ny-1114420

### F.    Recharacterization of Debt as Equity Is a Rarely Used Remedy And Is In No Way Warranted Here

310.    The Plan Proponents assert that the Intercompany Claims can be waived and settled for zero value because, *inter alia*, the underlying intercompany debt can be recharacterized as equity.  This assertion is wrong.  The Intercompany Claims are valid, enforceable debt that should yield distributable value for the JSNs.

311.    Recharacterization is an equitable remedy that allows a court to treat a debt transaction as an equity contribution if "circumstances show that a debt transaction was actually an equity contribution *ab initio*."  *In re BH S&B Holdings LLC*, 420 B.R. 112, 155 (Bankr. S.D.N.Y. 2009) (Glenn, J.) (summarizing and applying the *Autostyle* test to deny recharacterization).  Recharacterization is a "dramatic remedy."[77]  In fact, we have been able to identify only one instance of a court in New York recharacterizing debt as equity.[78]  Mark Renzi, one of the Debtors' financial advisors, admitted that it is rare for companies using centralized cash management systems like the Debtors', where balances are accrued pursuant to the centralized cash management process, to recharacterize those balances from debt to equity. (Renzi Tr. at 152:16-23.)

312.    To determine whether to recharacterize debt as equity, courts look beyond the form of the transaction and analyze the substance of the transaction at the time that it was made.  The focus of a recharacterization inquiry is "whether a debt actually exists, or, put another way . . . what is the proper characterization in the first instance of an investment."[79]

---

[77] *See In re Franklin Equip. Co.*, 418 B.R. 176, 193 (Bankr. E.D. Va. 2009).

[78] *See Gasser v. Infanti Int'l, Inc.*, No. 03 CV 6413, 2008 WL 2876531 (E.D.N.Y. July 23, 2008).  Compare to *BH S & B Holdings*, 420 B.R., 112 (Bankr. S.D.N.Y. 2009), *aff'd* 807 F. Supp. 2d at 199; *In re Kalisch*, 413 B.R. 115 (Bankr. S.D.N.Y. 2008); and *In re Adelphia Commc'ns Corp.*, 365 B.R. 24 (Bankr. S.D.N.Y. 2007).

[79] *Cohen v. KB Mezzanine Fund II, LP (In re Submicron Sys. Corp.)*, 432 F.3d 448, 454 (3d Cir. 2006) (internal quotation omitted).

313.     Courts use a number of factors to help them determine whether debt should be recharacterized.[80]  Bankruptcy courts in the Second Circuit generally use an 11-factor test articulated by the Sixth Circuit in *In re Autostyle Plastics, Inc*. to determine whether a debt should be recharacterized as equity.[81]  But as the *AutoStyle* court made clear, "[n]o one factor is controlling or decisive" and the "factors must be considered within the circumstances of each case."[82]

314.     Some courts may consider slightly different factors to determine whether recharacterization is appropriate, but the substance of all the tests is essentially the same.[83]  The main purpose of the test is to ascertain the ***intent*** of the parties ***at the time of the transaction***. The court must focus on "how the parties intended the contributions to be characterized, a determination that doesn't always lend itself to a mechanical application of factors."[84]  As Judge Gerber explained in *Adelphia*:

> While these tests undoubtedly include pertinent factors, they devolve to an overarching inquiry: the characterization as debt or equity is a court's attempt to discern whether the parties called an instrument one thing when in fact they intended it as something else.  That intent may be inferred from what the parties say in their contracts, from what they do through their actions, and from the economic reality of the surrounding circumstances.  Answers lie in facts that confer context case-by-case.[85]

315.     From the origination of the balances underlying the Intercompany Claims through the Petition Date and filing of the Debtors' SOALs, all available evidence demonstrates

---

[80] *See, e.g.*, the 11 factor test of *Autostyle* and the 13 factor test of *Sender v. Bronze Grp., Ltd. (In re Hedged Inv. Assocs., Inc.)*, 380 F.3d 1292 (10th Cir. 2004).

[81] *See, e.g., In re BH S&B Holdings*, 420 B.R. at 155 (Glenn J.); *In re Adelphia Commc'ns Corp.*, 365 B.R. at 74 (J. Gerber).

[82] *In re AutoStyle Plastics, Inc.*, 269 F.3d at 750.

[83] *See In re Adelphia Commc'ns Corp.*, 2006 WL 687153, at *10 (quoting *Submicron Sys. Corp.*, 432 F.3d at 455-6).

[84] *Id.*

[85] *Id.* (quoting *Submicron Sys. Corp.*, 432 F.3d at 455-56).  *See also In re Daewoo Motor Am., Inc.*, 471 B.R. 721, 730 (C.D. Cal. 2012) ("[T]he question of whether an advance to a corporation is debt or equity is "primarily directed at ascertaining the intent of the parties.") (quoting *A.R. Lantz Co. v. United States*, 424 F.2d 1330, 1333 (9th Cir.1970)).

that the Debtors considered the intercompany balances to be debt and treated them as such.  The

Debtors' intent to create debt is evidenced by their conduct.

- The Debtors formally recorded, tracked, and documented the intercompany balances as receivables, payables and borrowings in the Debtors' general ledger and trial balances.  This is significant, as courts "frequently look at the label placed upon the advance on the corporate books" when determining whether to characterize a balance as debt or equity.[86]  "[T]he labeling of the transactions as payables" evidences "the parties' intent to treat the advances as loans."[87] Moreover, "intercompany accounts have been held to be sufficient documentation of debt"[88] and there is a general presumption that corporate books and records are valid.[89]

- The Debtors reported the intercompany balances as receivables from affiliates or borrowings from the parent in independently audited financial statements for certain Debtors.[90]

- The Debtors filed federal tax returns and reported financial information to the SEC that referred to borrowings as liabilities and payables.

- The Debtors further formalized some of the balances by entering into agreements.[91]

- A number of the intercompany balances accrue interest.  In some cases, the interest was paid regularly.

- The Debtors sometimes forgave debt related to intercompany balances, indicating that the balances, *when incurred*, were intended to be repaid.  Indeed, the debt forgiveness took place through a formal process, requiring board or senior management approvals, which would be unneeded if the balances were equity contributions.

---

[86] *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 474 (Bankr. M.D. Fla. 1994), *aff'd*, 176 B.R. 223 (M.D. Fla. 1994).

[87] *Id.* at 248 (citing *United States v. Fid. Capital Corp.*, 920 F.2d 827, 838 (11th Cir. 1991) (holding that under Georgia law, entry on the corporate books of a loan is sufficient formality to characterize the obligation as a loan)).

[88] *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 192 (Bankr. S.D.N.Y. 2007).

[89] *See, e.g., Stein Hall & Co. v. S.S. Concordia Viking*, 494 F.2d 287, 291 (2d Cir. 1974) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 113, 63 S.Ct. 477, 481, 87 L.Ed. 645 (1943)).

[90] *See* RFC (Intercompany Claim No. 2), Homecomings (Intercompany Claim No. 3), GMACM (Intercompany Claim Nos. 7 and 9).

[91] The absence of formal loan documentation, however, does not mean that a balance should be recharacterized as equity.  *See In re Hillsborough Holdings Corp.*, 176 B.R. at 248-49 (holding that intercompany payable lacking formal documentation more closely exhibited characteristics of debt than equity).

- The Debtors generally used the transferred funds to maintain liquidity or to ensure subsidiaries met various solvency and/or net worth requirements rather than for material capital expenditures.

- The Debtors planned to repay intercompany balances and, in some cases, made scheduled payments.

- The intercompany debt was not subordinated to the debt to the claims of outside creditors.

- Repayment of the debt was not tied to the profitability of the debtor.

- The subsidiary was the creditor and the parent company was the debtor for many of the balances at issue, which is not consistent with the pattern of a parent company making an equity investment in a subsidiary.[92]

- The Debtors, after extensive analysis, scheduled the intercompany balances as the debt on the SOALs filed with this Court.

- There is nothing that suggests that the intercompany balances were incurred as a result of fraudulent activity or that they were fabricated in any way. These balances reflect valid transfers within the Debtors' Cash Management System.

316.    On the pre-petition occasions when the Debtors reviewed whether the balances had been properly characterized, they consistently came to the same conclusion: that the balances were, indeed, debt.

317.    There is no evidence suggesting that the Intercompany Claims were intended to be equity transactions when they occurred and were deceptively carried on the Debtors' books and records for years as debt. Such a finding would mean that the parties incorrectly prepared and filed audited financial statements, failed to gain proper Board approval for the transactions, imposed on themselves additional burdens when undertaking to forgive intercompany debt, and filed inaccurate statements with the SEC, the IRS, and this Court.

---

[92] *See In re Adelphia Commc'ns*, 368 B.R. at 192.

148

318.    Taken together, the evidence is clear that the transactions underlying the intercompany balances were intended as debt, *ab initio*, and that that understanding and treatment by the Debtors did not change until far into the bankruptcy process.

319.    There is no evidence that the "dramatic remedy" of recharacterization is appropriate here, and certainly no evidence that a recharacterization claim is so strong that it ought to be resolved by settling all Intercompany Claims at $0.

### G.    The Intercompany Claims Have Real, Distributable Value

320.    The Debtors propose to "waive, cancel, and discharge" the Intercompany Claims without ascribing any value to them.  The Debtors themselves, however, acknowledge that the Intercompany Claims have value and have set forth that value in their SOALs.

321.    The trial testimony of Michael Fazio will make clear that, on an aggregate and individual basis, the Intercompany Claims will yield distributable value that will have a material impact on the recovery of the JSNs.  Once the Ally Contribution flows through the capital structure (and there is no reason or principled rationale that it should not), the value of the Intercompany Claims substantially increases.  These are valid unsecured claims and should receive distributions in the same manner.  The Debtors cannot trade that value away from the JSNs by settling the claims for zero value without the JSNs' consent.

### VII.    AVOIDANCE OF PRE-PETITION DEBT FORGIVENESS WOULD NOT HAVE A MATERIAL IMPACT ON THE JSNs' OVERSECURED STATUS

322.    In the Disclosure Statement, the Debtors contend that, even if the Intercompany Claims represent valid and enforceable debt, those claims would be subject to material reduction or elimination due to the Debtors' historical practice of forgiving intercompany debt (the "Intercompany Debt Forgiveness Transfers").[93]  Due to the potential for

---

[93] Disclosure Statement at 41-42.

ny-1114420

avoidance[94] of such forgiven intercompany debt and the impact of the resulting reinstated

Intercompany Claims (the "Reinstated Intercompany Claims") on the net value of the

Intercompany Claims, the Debtors argue—even though there are no actions currently pending to

avoid any previously forgiven debt—that the Intercompany Claims should be deemed to have no

value for purposes of determining the value of the JSN Collateral.[95]

323.    This assertion is flawed for at least two reasons: (i) under the

circumstances of these cases, the Debtors holding Reinstated Intercompany Claims in their favor

cannot, under applicable law, set off such claims against Intercompany Claims in favor of other

Debtors, and (ii) even if the Reinstated Intercompany Claims could be set off against

Intercompany Claims, the net value of Intercompany Claims—and thus the value of the JSN

Collateral—would not be materially reduced.

### A.    Under Applicable Precedent and the Circumstances of these Cases, Reinstated Intercompany Claims Cannot Be Set Off Against Related Intercompany Claims.

324.    If the Intercompany Debt Forgiveness Transfers could be avoided

(although it is unlikely that an avoidance action would be successful), the net value of the

Intercompany Claims would not be affected because, under applicable authority, the resulting

Reinstated Intercompany Claims could not be set off against related Intercompany Claims for

two reasons.

325.    First, the forgiven Intercompany Claims underlying the Reinstated

Intercompany Claims were themselves all subject, prior to forgiveness, to the JSN Liens. The

Debtors undertook the corporate actions required to implement the forgiveness, but such actions

did not include seeking or obtaining a lien release from the JSNs. Upon avoidance, under well-

---

[94] Moreover, the Debtors will not be able to prove that the debt forgiveness transactions were avoidable fraudulent transfers.

[95] *Id.*

established precedent, the Reinstated Intercompany Claims each come back into the relevant

Debtor's estate subject to the JSN Liens. *See Moore v. Bay (In re Estate of Sassard & Kimball, Inc.),* 284 U.S. 4, 5 (1931) (avoided fraudulent transfers are "recovered for the benefit of the

estate . . . to be distributed in 'dividends of an equal per centum on all allowed claims, except

such as have priority or are secured'").[96]  Given the continuing attachment of the JSN Liens, and

the priority of the JSN Claims vis-à-vis any Intercompany Claims, any value in a Reinstated

Intercompany Claim would have to be applied to satisfy the JSN Claims before it could be

applied to satisfy any Intercompany Claim.[97]

       326.    Second, applicable precedent bars each of the Debtors holding potentially

relevant Reinstated Intercompany Claims—as parties with "notice" of the existence of the JSN

Liens—from setting off Reinstated Intercompany Claims in their favor against Intercompany

Claims in favor of the same counterparty Debtor.

       327.    Under UCC § 9-404, the rights of a secured creditor are subject to all

terms of an agreement between the bankrupt debtor and its account debtors, including any setoff

rights arising under such agreement.  *See In re U.S. Aeroteam, Inc.,* 327 B.R. 852, 870-71

(Bankr. S.D. Ohio 2005) (creditor holding security interest in debtor's accounts receivable took

such security interest subject to all contractual terms and defenses belonging to account debtor

---

[96] *See also Ivester v. Miller,* 398 B.R. 408, 430 (M.D.N.C. 2008) ("Any property the Trustee recovers as a result of the avoided transfers remains subject to any valid liens and must be distributed to creditors in accordance with their order of priority"); *In re Figearo,* 79 B.R. 914, 917 (Bankr. D. Nev. 1987) (distinguishing between right to avoid a prepetition transfer, which belongs to the debtor's estate,  and property recovered by the estate trustee, to which secured creditor's lien could attach); *Mitchell v. Rock Hill Nat'l Bank (In re Mid-Atl. Piping Prods. of Charlotte, Inc.),* 24 B.R. 314, 322 (Bankr. W.D.N.C. 1982) (holding that the trustee's recovery of inventory transferred to a third party in satisfaction of a debt is still subject to a secured party's security interest).

[97] Even if the JSN Liens were held not to attach to the Reinstated Intercompany Claims, the JSNs would still have, as the Court noted in its September 20, 2013 decision on the motions to dismiss, an "equitable" interest in those claims that would weigh against permitting setoff.  *See In re Residential Capital LLC,* 497 B.R. 403, 415 n.6 (Bankr. S.D.N.Y.  2013) ("The Court notes that in *In re Schick,* 246 B.R. 41, 47 n.9 (Bankr. S.D.N.Y. 2001), Judge Bernstein reasoned that an aggrieved party whose property was improperly transferred during the preference period may retain some equitable remedy in any avoidance recovery by a trustee.")

asserting setoff right); *In re New Haven Foundry, Inc.,* 285 B.R. 646, 649-50 (Bankr. E.D. Mich. 2002) (permitting creditor/account debtor to exercise right of setoff despite another secured creditor's lien on account receivable under UCC § 9-318(1)).  However, there is an exception to this general rule, providing that if the account debtor asserting the setoff right received notice of any liens on the relevant accounts receivable, any claims and defenses that accrue after such notice will not have priority over those liens.  *See In re Commc'n Dynamics, Inc.,* 300 B.R. 220, 225 (Bankr. D. Del. 2003) (concluding that the fact that the creditor seeking to exercise its setoff right had notice of lenders' lien, which deprived creditor of its setoff right of priority over lenders' lien); *CNH Capital Am. LLC v. Trainor Grain & Supply Co. (In re Printz),* 478 B.R. 876, 887 (Bankr. C.D. Ill. 2012) (holding that actual notice of secured creditor's interest in crops and proceeds defeated claim of setoff).

328.    Here, the Debtors potentially seeking to set off the Reinstated Intercompany Claims against the Intercompany Claims all unequivocally have actual notice of the JSNs' liens on the Intercompany Claims for purposes of UCC § 9-404(a)(2).  Each of these Debtors was, in fact and in one capacity or another, a signatory of the JSN Security Agreement and, thus can be charged with knowledge of the JSNs' overall security package.  Under such circumstances, the only reasonable conclusion is that the setoff rights of such Debtors are subordinate to the JSN Liens and their right to realize on the value of the Intercompany Claims as part of the JSN Collateral.

**B.**    **Even if the Reinstated Intercompany Claims Could Be Set Off Against Intercompany Claims, the Net Value of the Intercompany Claims, And the JSN Collateral, Would Not Be Materially Reduced**

329.    Even if the Reinstated Intercompany Claims could be set off against the Intercompany Claims, the net value of the Intercompany Claims, and thus the value of the JSN Collateral, would not be materially reduced.  This is the case because not all of the $16.6 billion

in Intercompany Claims forgiven between 2008 and 2013 would be affected by potential

avoidance actions based on historical intercompany debt forgiveness.

330.    Expert Michael Fazio analyzed the effect that avoidance of intercompany

debt forgiveness transfers would have on the value of the JSN Collateral.  (Fazio Report at 14-

16.)  Of the $16.6 billion in debt forgiveness, he concluded that only $9.1 billion of forgiven

debts are between Debtor entities that have distributable assets of value that are material to a

recovery analyses, *i.e.,* the 27 entities in Mr. Fazio's recovery analysis model.  (Fazio Report at

7, 15.)

331.    Of this $9.1 billion, $2.6 billion in forgiven debts run between legal

entities with existing Intercompany Claim relationships, but in the opposite lending direction:

332.    There are $2.2 billion of previously-forgiven intercompany claims owed

from RFC to ResHolding, which if reinstated could offset a $2.0 billion existing Intercompany

Claim owed from ResHolding to RFC. If this Reinstated Intercompany Claim is set off against

the existing Intercompany Claim, the adjusted net balance would be a $0.2 billion claim from

RFC to ResHolding, which would reduce the net value of the Intercompany Claims to the JSNs

by a corresponding amount.

333.    The remaining $0.4 billion of previously-forgiven claims running in the

opposite lending direction of existing Intercompany Claims relates to outstanding balances of $5

million or less.

334.    Significantly, $6.5 billion of Reinstated Intercompany Claims would

revert to legal entities that have no existing Intercompany Claims in the opposite lending

direction.  As a result, the reinstatement of these intercompany claims would generally increase

the net value of the Intercompany Claims to the JSNs (as the JSNs would have a direct lien on certain of the receivables and an indirect benefit from others through Equity Pledges)

335.    In light of all the foregoing, even if the Reinstated Intercompany Claims could be set off against relevant Intercompany Claims, the value of the JSN Collateral would remain in a range between $2.451 billion and $2.467 billion, still well above the $2.22 billion threshold required for the JSNs to be over-secured.  (Fazio Report at 15-16.)

## VIII.  THE DEBTORS' ESTIMATES OF THE JSNS' SECURED RECOVERY ARE INACCURATE AND MISLEADING

336.    The secured recovery assumptions and methodology ("Debtors' Collateral Scenario") employed by the Debtors in their Disclosure Statement are inaccurate and misleading because the Debtors' Collateral Scenario: (i) assumes the truth of alleged facts and legal arguments that are in dispute in this adversary proceeding, and (ii) omits or disregards important details, as explained below.

337.    The Debtors' Collateral Scenario, as modeled in the Expert Report of Mark A. Renzi, dated October 18, 2013, attributes a maximum adjusted secured recovery of only $1.888 billion to the JSNs.  If, however, one assumes that the JSNs will prevail on certain of the arguments at issue in the Adversary Proceeding, the JSNs' recovery increases exponentially.  If, for example, all Intercompany Claims (which the Debtors' Collateral Scenario ignores) are deemed valid and valued as scheduled in the Debtors' own SOALs, the JSN's maximum adjusted secured recovery increases to an estimated $2.628 billion.  Alternatively, if the JSNs are found to have a direct lien on recoveries on certain claims against Ally proposed to be extinguished by the $2.1 billion Ally Contribution (which the Debtors' Collateral Scenario fails to allocate to specific claims), the JSNs' maximum adjusted secured recovery increases to an estimated $3.086 billion.  If the foregoing two scenarios are combined, and all Intercompany

Claims are valid and the JSNs have a direct lien on certain recoveries proposed to be

extinguished by the Ally Contribution, the JSNs' maximum adjusted secured recovery increases

to an estimated $3.486 billion.

338.    In addition to the above adjustments, if the RMBS Trust and Monoline

Insurer Claims, which are currently treated as allowed, non-subordinated claims in the Global

Settlement, are subordinated (as they should be pursuant to the section 510(b) of the Bankruptcy

Code, *see infra*), the JSNs' maximum adjusted secured recovery increases further in two of the

above-described scenarios.  If all Intercompany Claims are valid and valued as scheduled in the

Debtors' SOALs and such subordination is taken into account, the JSNs' maximum adjusted

secured recovery increases to an estimated $4.215 billion.  Finally, if all Intercompany Claims

are valid, the JSNs have a direct lien on Ally Claims, and such subordination is ordered, the

increase in the secured recovery value of the pre-petition claims increases the JSNs' maximum

adjusted secured recovery to a total of approximately $4.609 billion.

339.    Equally flawed is the Debtors' Liquidation Analysis, which provides low

and high liquidation recovery scenarios and under which the JSNs purportedly do not recover

their full $2.223 billion assumed allowed claim.  The Liquidation Analysis is misleading for

several reasons, including:

- The Debtors' liquidation analysis ascribes zero value to claims against Ally, despite (i) the $2.1 billion settlement between ResCap and Ally contemplated by the Plan and Global Settlement, (ii) the approximately $3.1 billion worth of ResCap claims identified by the Examiner as "likely to prevail" or "more than likely to prevail," and (iii) the approximately $5.5 billion worth of total ResCap claims identified by the Examiner;

- The Debtors' Liquidation Analysis ascribes zero value to valid, valuable Intercompany Claims;[98] and

---

[98] By ignoring the value of the breach of contract claims and Intercompany Claims in their Liquidation Analysis, the Debtors have failed to meet their burden under Section 1129(a)(7) of the Bankruptcy Code (the "best interests test"),

- The Debtors' Liquidation Analysis makes certain disputed assumptions about the size and priority of unsecured claims.

340.    For these and other reasons, the Liquidation Analysis is fatally flawed insofar as it relates to the JSNs, making it impossible for the Plan Proponents to demonstrate, as section 1129(a)(7) requires, that the JSNs will do no worse under the Plan than in a Chapter 7 liquidation.

### IX.    THE RMBS TRUST CLAIMS, THE MONOLINE INSURER CLAIMS, AND THE PRIVATE SECURITIES CLAIMS MUST BE SUBORDINATED TO ALL GENERAL UNSECURED CLAIMS, INCLUDING INTERCOMPANY CLAIMS, PURSUANT TO SECTION 510(B) OF THE BANKRUPTCY CODE

341.    The Global Settlement embodied in the Plan provides for, *inter alia*, a resolution of the Securities-Related Claims.[99]  Pursuant to the Global Settlement, the Securities-Related Claims are allowed, non-subordinated claims, the holders of which will receive substantial distributions.

342.    The Plan Proponents' failure to subordinate the Securities-Related Claims in the Global Settlement violates section 510(b) of the Bankruptcy Code, which states, in relevant part, that "a claim arising from rescission of a purchase or sale of a security of the

---

which requires them to show that the JSNs receive a greater recovery under the Plan than in a Chapter 7 proceeding. *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 366 (S.D.N.Y. 2007) (plan proponent bears burden of establishing by a preponderance of the evidence that its plan meets the best interests test).  The Debtors' Liquidation Analysis assigns zero value to the Intercompany Claims, which, absent the Global Settlement, are assets with monetized value that would be accounted for in a Chapter 7 proceeding, and thus should be accounted for in the Debtors' Liquidation Analysis.  (*See* Plan at 16; Disclosure Statement, Exhibit 8 at 24; Kruger Tr. at 131:12-22, 133:6-12; Renzi Tr. at 40:2-40:8, 53:11-53:19, 61:9-61:10, 65:6-65:10, 65:21-65:24 (Nov. 6, 2013).)  The Liquidation Analysis also fails to ascribe value to the Debtors' causes of action against Ally.  These omissions directly contradict case law holding that all contingent claims must be reflected in a liquidation analysis.  By ignoring the Intercompany Claims and causes of action against Ally in their Liquidation Analysis, the Debtors have failed to meet their burden under Section 1129(a)(7) of the Bankruptcy Code.  *See In re Sierra–Cal*, 210 B.R. 168, 172 (Bankr. E.D. Cal. 1997) (liquidation analysis requires an estimation of the value of all of the bankruptcy estate's assets, including disputed and contingent claims, the potential disallowance of claims, the probability of success and value of causes of action held by the estate); *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1158 (5th Cir. 1988) (same).

[99] Disclosure Statement at 34-35.

debtor or of an affiliate of the debtor, [or] for damages arising from the purchase or sale of such a security . . . shall be subordinated . . . ." 11 U.S.C. § 510(b).

343.    It does not matter whether the "securities" are "equity interests" or "notes," whether there are intervening entities between the Debtors and the purchasers, or whether the claims sound in tort or contract—all such claims are subject to subordination under section 510(b).  *See Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 260 B.R. 517, 522-24 (10th Cir. BAP 2001) (affirming a bankruptcy court decision to subordinate claims arising from the purchase or sale of notes under section 510(b)); 17 C.F.R. § 230.191 (providing that "issuer" with respect to asset-back securities is the "depositor" (*i.e.*, the Debtors), not the "trust" receiving the assets or issuing the certificates); *In re Med Diversified, Inc.*, 46 1 F.3d 251, 256-57 (2d Cir. 2006) (claim for breach of termination agreement for failure to issue stock subject to section 510(b) subordination).

344.    The Securities-Related Claims, none of which are subordinated in the Global Settlement, each fall within the ambit of section 510(b)—they are all the direct result of, and are intended to seek compensation for, damages sustained on account of the purchase of "securities" of one or more Debtors.

### A.    The Private Securities Claims

345.    First, in the Disclosure Statement, the Debtors acknowledged that the Private Securities Claims "comprise securities litigation claims against the Debtors and Ally, arising from the purchase or sale of [residential mortgage-back securities ("RMBS")], asserted by parties who have filed a lawsuit against the Debtors and Ally."[100] Second, in an adversary proceeding (the "Subordination Adversary Proceeding") that they filed to seek subordination of the Private Securities Claims, the Debtors argued that the Private Securities Claims "arise out of

---

[100] Disclosure Statement at 34.

ny-1114420

the purchase of securities of the Debtor" and thus should be subject to section 510(b)

subordination.[101]   Finally, one of the scenarios contemplated by the Debtors' Liquidation

Analysis includes the subordination of the Private Securities Claims.[102]

346.    In summary judgment briefing in the Subordination Adversary

Proceeding, the Private Securities Claimants themselves conceded that their claims sought

"damages arising from the purchase or sale of a security," and would, in fact, be subject to

subordination under section 510(b) if those securities were "securities" "of a debtor" or "of an

affiliate" of a debtor.   The Private Securities Claimants' sole argument against such

subordination was that the residential mortgage-backed securities ("Certificates") they purchased

were not "securities" of a debtor or an "affiliate" of a debtor.

347.    Here, the securities at issue are securities "of  the debtor."   Indeed, the

securities were created by the Debtors, structured by the Debtors, marketed by the Debtors, and

backed by assets originated or purchased and serviced by the Debtors.   Thus, the Debtors were

the "issuers" in every relevant sense, and they are recognized as such under the securities laws

and relevant section 510(b) precedent.   *See In re Geneva Steel Co.*, 281 F.3d at 1177 (for

purposes of Section 510(b), securities are securities "of a debtor" if the securities were "issued

by the debtor"); *see also Alfa, S.A.B. de C.V. v. Enron Creditors Recovery Corp. (In re Enron*

*Creditors Recovery Corp.)*, 422 B.R. 423, 437 (S.D.N.Y. 2009), *aff'd*, 651 F.3d 329 (2d Cir.

2011) ("The securities laws, and their interpretations, are thus a natural and logical place to turn

for definitions of terms within the Bankruptcy Code that are otherwise undefined.").

---

[101] Memorandum of Law in Support of Debtors' Motion for Summary Judgment, Adv. Case No. 13-01262 (April 2, 2013) (the "Section 510(b) Memorandum") [Dkt. No. 26] at 2.  The Private Securities Claimants also admit that their claims seek "damages and/or rescission arising from the purchase or sale of a security.  *See id.*

[102] Disclosure Statement, Ex. 8, at 8.  The Plan also purports to subordinate the claims of FHFA pursuant to section 510(b).  The FHFA claims, in terms of legal theory, are virtually identical to the Private Securities Claims.  *See* Plan § III.D.1(k).

348.    With respect to mortgage-backed securities specifically, the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") both provide that the "'issuer' means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued." Securities Act § 2(a), 15 U.S.C. § 77b(a)(4); Exchange Act § 3(a)(8), 15 U.S.C. § 78c(a)(8) (verbatim). The federal regulations promulgated under both Acts, SEC Rules 191 and 3b-19, similarly provide that "[t]he depositor for the asset-backed securities acting solely in its capacity as depositor to the issuing entity is the 'issuer' for purposes of the asset-backed securities of that issuing entity." 17 C.F.R. § 230.191(a); 17 C.F.R. § 240.3b-19(a) (verbatim). Pursuant to this authority, the RMBS at issue here are plainly securities "of a debtor."

349.    Even if the RMBS were not "securities" of a "debtor," section 510(b) would still be implicated because the RMBS were securities "of an affiliate" of the debtor. The various securitization trusts (the "RMBS Trusts"), which issued the RMBS, are plainly "affiliates" of the Debtors as defined in Section 101(2)(C) of the Bankruptcy Code, because at the time that the Private Securities Claims arose, the Debtors operated the business or substantially all of the property of the RMBS Trusts as servicers of the mortgage loans held by the trusts pursuant to pooling and servicing agreements. The Private Securities Claimants might argue, as they did in the Subordination Adversary Proceeding, that the RMBS Trusts were not "business trusts," and therefore, not "persons" eligible to be "business trusts." However, the only reported decision to address asset-backed securitization trusts in this context held that they were business trusts. *Nationsbank, N.A. v. Commercial Fin. Serv., Inc. (In re Commercial Fin. Serv., Inc.)*, 268 B.R. 579, 589, 600 (Bankr. N.D. Okla. 2001).

350.    "Congress enacted §510(b) to prevent disappointed shareholders from recovering their investment loss by using fraud and other securities claims to bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding." *In re Enron Corp.*, 341 B.R. 141, 158 (Bankr. S.D.N.Y. 2006). The same rationale applies to the ultimate treatment of the Private Securities Claims.  The Private Securities Claimants may be "disappointed," but they assumed the risk that the securities they purchased could decrease in value or otherwise give rise to damages against their holders, so their claims must be subordinated pursuant to section 510(b).

### B.    Monoline Insurer Claims

351.    The Monoline Insurer Claims, asserted by insurers MBIA Insurance Corporation, Financial Guaranty Insurance Company ("FGIC"), Assured Guaranty Municipal Corp., and Ambac Assurance Corporation, "generally relate to alleged breaches of representations and warranties and fraud" by the RMBS Trusts (*i.e.*, the Debtors) in connection with the issuance of securities insured by the Monoline Insurers.  (Disclosure Statement at 30-33.)

352.    In agreeing to insure these securities, as an inextricable component of the securitization process, the Monoline Insurers assumed the same risk of loss as the ultimate purchasers of the RMBS Trust securities and, thus, have asserted fraud and breach of contract claims with respect to the underlying securities.  Indeed, at least one of the Monoline Insurers has described its insurance policies as being inextricably linked with, and playing a crucial role in, the sale of the Debtors' securities.  (*See* Limited Objection of Financial Guaranty Insurance Company to the Debtors' Sale Motion and Assumption Notice [Dkt. No. 1746] at ¶ 4 ("FGIC's financial guaranty insurance policies enhanced the ratings and marketability of the Debtors' RMBS, which, in turn made the Debtors' securitization transactions viable.").)  These are unequivocally claims arising out of the purchase of Debtor securities, and thus subject, for all the

160

reason set forth above with respect to the Private Securities Claims, to subordination under section 510(b) of the Bankruptcy Code.

353.    The fact that these claims arise out of post-RMBS purchase breaches of representations and warranties contained in contracts between the Trusts and entities "depositing" mortgage loans into the Trusts does not change this outcome.  The language of section 510(b) does not limit subordination to securities fraud or fraud of any kind.  Nor does the statute exclude claims that arise under contracts relating to the purchase or sale of securities, such as the breach of representation and warranty claims asserted by the holders of the RMBS Trust Claims.

354.    To the contrary, many courts have reached the conclusion that contractual claims can be subordinated under section 510(b).  *See, e.g.*, *In re Med Diversified*, 461 F.3d at 254-59; *In re Telegroup, Inc.*, 281 F.3d at 138-39 (claims for breach of contractual requirement to use best efforts to register stock); *Am. Broad. Sys. Inc. v. Nugent (In re Betacom of Phx., Inc.)*, 240 F.3d 823, 827-28 (9th Cir. 2001) (claim for failure to convey stock in breach of merger agreement); *Aristeia Capital, L.L.C. v. Calpine Corp. (In re Calpine Corp.)*, No. 05-60200,2007 WL 4326738, at *1, 9 (S.D.N.Y. Nov. 21, 2007) (claim for loss of conversion rights based on breach of indenture); *In re Kaiser Group Int'I, Inc. v. Pippin (In re Kaiser Grp. Int'l, Inc.)*, 326 B.R. 265 (D. Del. 2005) (claim for breach of "fill up" provision in merger agreement based on stock price); *In re Int'l Wireless Commc'ns Holdings, Inc.,* 257 B.R. 739,743, 746 (Bankr. D. Del. 2001), *aff'd*, 279 B.R. 463 (D. Del. 2002), *aff'd*, 68 Fed. Appx. 275 (3d Cir. 2003) (claim for breach of stock purchase agreement); *In re Enron Corp.,* 341 B.R. at 161 (contract claims based on loss of stock options).

355.    The breaches of contracts at issue, moreover, need not relate to the actual purchase of the security, but can arise out of events that occur after purchase of the security and relate to obligations that go beyond the actual purchase or sale of the security.  In *In re Telegroup, Inc.*, for example, the Third Circuit held that breach of contract claims arising out of a security issuer's failure to register stock within the period specified in the stock purchase agreement were properly subject to subordination under section 510(b).  281 F.3d at 144.  In so holding, the *Telegroup* court accepted the debtor's argument that "claims for breach of a stock purchase agreement, which would not have arisen but for the purchase of [the debtor's] stock, may arise from that purchase, even though the actionable conduct occurred after the transaction was completed."  *Id*. at 135.

356.    More generally, courts have held that claims arising from the purchase or sale of a security under section 510(b) include claims predicated on post-issuance conduct.  *See In re Geneva Steel Co.*, 260 B.R. at 524 (holding that claims alleging that the debtor fraudulently induced the claimants to retain securities they had purchased from the debtor arise from the purchase or sale of those securities, for purposes of section 510(b)); *In re Granite Partners, L.P.*, 208 B.R. 332, 342-43 (Bankr. S.D.N.Y. 1997) (holding that claims that debtor fraudulently induced claimants to retain debtor's securities arise from the purchase or sale of those securities); *see also In re Lenco, Inc.*, 116 B.R. 141, 143 (Bankr. E.D. Mo. 1990) (holding that claims for ERISA violations arose from the purchase or sale of debtor's securities).

357.    The Monoline Insurer Claims are claims arising out of the purchase of securities of the Debtor and, like the Private Securities Claimants, are clearly the type of claims encompassed by section 510(b)'s mandatory subordination provision.

### C.    RMBS Trust Claims

358.    The claims of the RMBS Trusts are also subject to subordination under section 510(b).   Each of the requirements for mandatory subordination of RMBS Trust Claims is met:  (i) the RMBS sold, as part of the overall securitization transaction, constitute "securities," as defined under section 101(49) of the Bankruptcy Code"; (ii) the RMBS are "securities" of "the debtor" or of "an affiliate of the debtor," for the reasons set forth above; and (iii) the breaches of representations and warranties with respect to the underlying pooling and servicing and related agreements give rise to breach of contract claims that are as susceptible as fraud claims to section 510(b) subordination under applicable precedent.  *See* 11 U.S.C. §§ 101(49), 510(b).

359.    The RMBS Trust Claims should also be subordinated pursuant to section 510(b) of the Bankruptcy Code because they materially overlap with securities fraud claims that have been, or could be, asserted against the Debtors − which are the quintessential claims subject to subordination under section 510(b).   In addition to their common factual bases, the objective of each of the RMBS breach of representation and warranty claims and securities fraud claims arising in connection with the issuance of the RMBS is the same − each seeks reimbursement for losses suffered by the RMBS Trusts' certificate holders.  Under sections 11(e), 12(a)(2), or 15 of the Securities Act, a fraudulent description of mortgages in a prospectus would entitle security holders to recover damages or rescind their investment.  *See* 15 U.S.C. §§ 77k(e), 77l(a)(2), 77o. Similarly, a material breach of the RMBS representations and warranties would entitle the RMBS Trust to rescind its purchase of the deficient mortgages and receive either a substitution of eligible mortgages, which is not feasible, or a refund of the purchase price.   Accordingly, both breach of contract and fraud claims seek to restore the RMBS holders to the same position they would have been in had the mortgages been represented properly at the time of the securitization.

163

360.    In a similar situation, former Chief Judge Gonzalez recognized that section 510(b) may require subordination of contractual claims, such as the representation and warranty claims at issue here, when they are substantively similar to claims for fraudulent issuance.  *See In re Enron*, 341 B.R. at 144 (subordinating claims, including breach of contract, of employees with stock option components to their compensation packages).  In connection with the breach of contract claim at issue in *Enron*, the Court determined that the claimants' chief contention was that Enron fraudulently misrepresented the value of the stock options that it offered to its employees.  *Id.* at 162.  Therefore, the Court held that the breach of contract claim was a disguised claim of fraud in the issuance and that such fraud claims are clearly subject to subordination under section 510(b) of the Bankruptcy Code.

361.    The RMBS Trust Claims, like the Private Securities Claims and the Monoline Insurer Claims, arise out of the purchase of securities of the Debtor and are clearly the type of claims encompassed by section 510(b)'s mandatory subordination provision.  It would be inappropriate, and a manifest violation of section 1129(b)(1)'s "fair and equitable" standard, to allow a claim that is otherwise subject to section 510(b) subordination to recover *pari passu* with general unsecured claims, such as the Intercompany Balance Claims, even if such treatment is contemplated by a settlement agreement.  *See Anchorage Police & Fire Ret. Sys. v. Official Comm. of Unsecured Creditors of the Holding Co. Debtors (In re Conseco, Inc.)*, No. 03-CV-7054, 2004 WL 1459270, at * 3 (N.D. Ill. June 25, 2004) (finding that "[t]here is no rational explanation why a settlement agreement . . . should dramatically alter the nature, let alone the treatment, of the underlying claim, particularly given the plain terms and purpose of § 510(b)"); *In re Cincinnati Microwave, Inc.*, 210 B.R. 130, 132-33 (Bankr. S.D. Oh. 1997) (holding that

settlement was not in the best interests of the estate where it failed to recognize that claims should have been subordinated under section 510(b)).

362.    In allowing the Securities-Related Claims to recover ahead of and in place of other unsecured claims, the Plan violates the absolute priority rule as reflected in section 1129(b)(2)(B) of the Bankruptcy Code.  *See In re Iridium Operating, LLC*, 478 F.3d 452, 463 (2d Cir. 2007).   For the Global Settlement to be approved and the Plan confirmed, the Securities-Related Claims can only be paid after the Intercompany Claims and JSNs' deficiency claims, have been satisfied in full.

## X.    THE JSNS ARE ENTITLED TO VOLUNTARILY REDUCE THEIR CLAIMS AT CERTAIN DEBTOR ENTITIES TO AN AMOUNT LESS THAN THE VALUE OF THE JSN COLLATERAL AT SUCH ENTITIES AND EARN POST-PETITION INTEREST ON SUCH REDUCED AMOUNTS

363.    Even if the Court determines that the aggregate value of all JSN collateral does not exceed the aggregate amount of the JSNs' claims, the JSNs are nonetheless entitled (but not required) to apply and credit any portion of their recoveries in an amount that they choose (whether secured or unsecured) to be received from certain Debtor entities (*e.g.*, Rescap and RFC) to their claims against other Debtor entities (*e.g.*, GMACM).  Such reduction will render the JSNs oversecured relative to the balance of the claim remaining at GMACM, entitling the JSNs to interest on such reduced claim.

364.    In the Supreme Court's seminal decision *Ivanhoe Building & Loan Association of Newark v. Orr*, 295 U.S. 243 (1935), the Court determined that a creditor's claim need not be reduced by the value of collateral received from a third party.  Thus, a creditor is entitled, but not required, to continue to assert the full amount of its claim against each and every debtor obligor until the creditor has been satisfied in full.  In so ruling, the *Ivanhoe* Court endorsed the "chancery rule" and rejected a rule that would require secured creditors to first

exhaust their security interests before pursuing unsecured recoveries.  *See* D. W. Markham, *Bankruptcy--Rights of Partially Secured Creditors*, 14 N.C. L. REV. 79, 80 (1936).[103]  Thus, <u>Ivanhoe</u> stands for the clear proposition that a secured creditor can take full advantage of its collateral without impairing or diminishing its claims against other distinct legal entities.[104]

365.    Under this construct, the JSNs are entitled to assert their full claims at certain Debtors and collect whatever amounts are owing to them from such entities.  The JSNs are equally entitled to reduce the amount of their claims against certain other Debtors to an amount that is less than the value of the JSN collateral at such Debtors.  Such reduction will render the JSNs' indisputably oversecured at such Debtors, entitling the JSNs to earn post-petition interest on the reduced claim up to the value of the collateral at such Debtors.  By way of example, if the Court were to determine that the Debtors' valuation were to control, JSN collateral at GMACM would be $1.576 billion.  Assuming a December 15, 2013 emergence date, the JSNs may voluntarily reduce their claims at GMACM to $1.337 billion, either through a credit of a portion of their recoveries from Rescap or RFC or otherwise, entitling the JSNs to

---

[103] In applying the "chancery rule," the *Ivanhoe* Court declined to apply the competing ancient rule of the time—known as the "bankruptcy rule"—that required a secured creditor to exhaust its collateral before asserting unsecured claims.  *See Merrill v. Bank*, 173 U.S. 131, 139, 154-55 (1899) (applying "chancery rule" and explaining that the "bankruptcy rule" "required the secured creditor to account for his security before proving against the general assets . . .").

[104] The reasoning of *Ivanhoe* has been subsequently endorsed by various courts post-enactment of the Bankruptcy Code.  *See, e.g., In re Gessin*, 668 F.2d 1105, 1107 (9th Cir. 1982) ("It has long been established that a creditor is entitled to pursue his claims against others liable on the same debt to the full extent of the amount owed on that debt"); *In re Washington Bancorporation*, Civ. No. 95-1340, 1996 WL 148533, at *18 (D.D.C. March 19, 1996) (applying the principle that "a bankruptcy claim is not reduced or impaired by subsequent payments received from third party obligors until such claim has been satisfied in full"); *In re F.W.D.C., Inc.*, 158 B.R. 523, 528 (Bankr. S.D. Fla. 1993) (finding that a creditor is allowed to "prove the total amount of an indebtedness against a guarantor-debtor without deducting the amount of collateral received from a third party"); *In re Northeast Dairy Co-op. Fed'n, Inc.*, 88 B.R. 21 (Bankr. N.D.N.Y. 1988) (permitting creditor to assert the full amount of its claim against each debtor that is jointly and severally liable on the claim and finding that the joint and several nature of the debtors' obligation does not affect the total amount due on the claim); *In re Coastland Chrysler Plymouth, Inc.*, 76 B.R. 212, 213 (Bankr. S.D. Fla. 1987) (finding that a creditor's claim should not be reduced unless and until it has been paid in full).

payment of not less than $239 million of post-petition interest from GMACM.[105]  Such outcome

does not prejudice the creditors of Rescap or RFC as such creditors have no legal entitlement to

rely on or insist upon the JSNs asserting anything but their full claims at such estates, and

benefits the creditors of GMACM through the voluntary reduction in claims at such estate.

### XI.   THE JSNS ARE ENTITLED TO POST-PETITION INTEREST AT THE DEFAULT RATE AND TO FEES, EXPENSES, AND OTHER CHARGES

#### A.   The JSNs Are Entitled to Post-Petition Interest at the Contractual Default Rate

366.   The JSNs are entitled to post-petition interest at the contractual rate of

9.625% plus 1% as a default premium, for a total rate of 10.625%.  (Indenture § 4.01 (noting that

ResCap "will pay interest (including post-petition interest in any proceeding under any

Bankruptcy Law) on overdue principal at the rate equal to 1% per annum in excess of the then

applicable interest rate on the Notes . . .").)

367.   Section 506(b) of the Bankruptcy Code provides that the holder of an

allowed secured claim shall be paid post-petition interest to the extent that the property securing

the claim exceeds the claim itself.  Because Section 506(b) does not set a specific rate of post-

petition interest, "[t]he great majority of courts to have considered the issue . . . have concluded

that post-petition interest should be computed at the rate provided in the agreement, or other

applicable law, under which the claim arose – the so-called 'contract rate' of interest."[106]

368.   Courts in the Second Circuit hold that there is a "rebuttable presumption

that the oversecured creditor is entitled to default interest at the contract rate subject to

---

[105] The amounts set forth in this paragraph 361 do not refect the prior "paydowns" and are for illustrative purposes only.

[106] 4 Collier on Bankruptcy ¶ 506.04[2][b][i] (2013); *see In re Terry Ltd. P'ship*, 27 F.3d 241, 244 (7th Cir. 1994) (applying contract rate).

adjustment based on equitable considerations." *In re 785 Partners LLC*, 470 B.R. 126, 134

(Bankr. S.D.N.Y. 2012).[107]

369.    Bankruptcy courts "have very limited discretion to deviate from the

interest rate imposed under the contract." *In re Madison 92nd St. Assocs. LLC*, 472 B.R. 189,

198 (Bankr. S.D.N.Y. 2012).  To rebut the presumption that an oversecured creditor is entitled to

default interest at the contract rate, a debtor must show: "(i) there has been creditor misconduct;

(ii) application of the contractual interest rate would cause harm to the unsecured creditors; (iii)

the contractual interest rate constitutes a penalty; or (iv) its application would impair the debtor's

fresh start." *In re Gen. Growth Props., Inc.*, 451 B.R. 323, 328 (Bankr. S.D.N.Y. 2011).

370.    Pursuant to the Court's decision that JSN Counterclaims Five and Six,

relating to whether the JSNs are entitled to post-petition interest at the default interest rate, are

not ripe until the Court determines that the JSNs are oversecured,[108] the JSNs reserve their rights

to calculate the appropriate post-petition interest rate at a later time in the event the Court decides

that the JSNs are oversecured.

**B.    The JSNs Are Entitled to Fees, Expenses, and Other Charges**

371.    The JSNs expect that the professional fees incurred in the prosecution of

this case following termination of the Cash Collateral Order will be at least $60 million.[109]  The

JSNs are entitled to recover these fees from the Debtors.[110]

---

[107] *See also In re Milham*, 141 F.3d 420, 423 (2d Cir. 1998) ("Most courts have awarded pendency interest at the contractual rate . . . ."); *Urban Commc'ns*, 394 B.R. at 338; *In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122, 134 (Bankr. E.D.N.Y. 2002).

[108] Memorandum Opinion Denying Without Prejudice UMB Bank's Motion to Dismiss Counts 3 and 5, and Granting in Part and Denying in Part the Committee's Motion to Dismiss Certain Junior Secured Noteholder Counterclaims, dated September 20, 2013 [Dkt. No. 5128].

[109] To the extent the Creditors' Committee seeks to recharacterize any payments made prior to the termination of the Cash Collateral Order, such amounts would also be added to the allowed amount of the prepetition claim.

372.     Regardless of whether the JSNs are oversecured, the JSNs' attorney and financial advisor fees form part of the JSNs' allowed pre-petition claims under controlling Second Circuit case law.  The Second Circuit has made clear that an "unsecured claim for post-petition fees, authorized by a valid pre-petition contract [*i.e.,* the Notes Indenture],"[111] "but contingent on post-petition events," "is allowable under section 502(b)" of the Bankruptcy Code.  *Ogle v. Fid. & Deposit Co. of Maryland*, 586 F.3d 143, 145, 147 (2d Cir. 2009).  Pursuant to the Notes Indenture, ResCap and its guarantors are obligated to pay in full all principal, interest, and fees due under the Notes Indenture to the JSNs "whether or not arising on or after the commencement of a case under Title 11, U.S."  (Notes Indenture §§ 1.01, 4.01, 7.07, 10.01.)  The Debtors have stipulated that the JSNs are entitled to "any fees and expenses of the [JSNs'] attorneys and financial advisors that are chargeable or reimbursable under the [JSN] Documents."  (Cash Collateral Order ¶ 5(a).)  Thus, pursuant to the Notes Indenture, the JSNs are entitled to attorney and financial advisor fees as part of their pre-petition claims as well as other charges due under the Notes Indenture.[112]  As a consequence, under the Plan, the Debtors are required to pay those fees as part of the treatment of the JSNs' claims.

373.     The Bankruptcy Code further states that if a holder of a claim is oversecured, "there shall be allowed to the holder of such claim . . . any reasonable fees, costs, or charges provided for under the agreement . . . ."  11 U.S.C. § 506(b); *see also In re Hatcher*, 208 B.R. 959, 964 (B.A.P. 10th Cir. 1997) (under Section 506(b), "secured creditors are entitled to post-petition attorney's fees provided that (i) the creditor is oversecured, (ii) the fees are

---

[110] Collateral Agent Wells Fargo Bank, N.A., and Notes Trustee UMB Bank, N.A., are also entitled to recover fees incurred in connection with this case.

[111] The Debtors do not dispute that the Notes Indenture is a valid contact.  *See* Cash Collateral Order ¶ 5(c) ("the Junior Secured Notes Obligations constitute legal, valid and binding obligations of Residential Capital LLC and the Junior Secured Notes Guarantors, enforceable in accordance with their terms.")

[112] The other charges include any and all claims including but not limited to indemnification claims, under the indenture as set forth in the JSNs' proof of claim and the Notes Trustee Statement.

reasonable, *and* (iii) the fees are provided for in the agreement between the parties"). Thus,

whether oversecured or undersecured, the Debtors are responsible for paying the fees, expenses,

and other charges of the JSNs.

> **C.     The JSNs May Apply Recoveries Received from Any Debtors at
> Which the Plan Deems the JSNs to be Unimpaired to Post-petition
> Interest Regardless of Whether the JSNs are Oversecured or
> Undersecured**

374.    The Plan Proponents have treated the JSNs' claims against certain Debtors

as unimpaired. Each one of these Debtors has pledged its assets to the JSNs to secure all

obligations owing under the JSN Indenture, including the obligation to pay interest. Section

1124 of the Bankruptcy Code requires, among other things, that the Plan leave "unaltered the

legal, equitable, and contractual rights" of the claimant. 11 U.S.C. § 1124; *see also In re Union

Meeting Partners*, 160 B.R. 757, 771 (Bankr. E.D. Pa. 1993) ("[I]mpairment is a term of art and

includes virtually any alteration of claimant's rights"). As a consequence, post-petition interest

with respect to the obligations owing by such Debtors continues to accrue and be owing

regardless of whether the JSNs are oversecured or undersecured. The JSNs are entitled to apply

recoveries from such Debtors to the payment of accrued postpetition interest as a result of the

Plan treating the JSNs as unimpaired. *See generally Ivanhoe*, 295 U.S. 243. According to the

Debtors, the JSN recoveries on account of unimpaired claims are estimated to range in the

aggregate from $80 to $100 million.

## DEFENDANT THIRD PRIORITY COLLATERAL AGENT'S CONTENTIONS

1.    Wells Fargo contends that it has the right to have its fees, expenses, and other

indemnification claims paid by the Debtors directly, based on contractual indemnification (*see,

e.g.*, AFI Revolver, §§ 3.03, 10.01, 10.02, 13.15; Revolver Security Agreement, §§ 14(r), 14(t);

Intercreditor Agreement, §§ 5.6(k), 5.6(o), 5.6(q), 5.6(bb); Notes Security Agreement, §§ 15(r),

170

15(t); Notes Indenture, §§ 7.07(a), 7.07(g)), and from distributions made on account of the AFI

Revolver and the Junior Secured Notes (*see, e.g.*, AFI Revolver, § 3.01(f); Revolver Security

Agreement, § 12(f); Intercreditor Agreement, § 4.1; Notes Security Agreement, § 13(f); Notes

Indenture, §§ 6.10, 7.07(d), 8.03(b)).

2.      Wells Fargo further contends that to the extent not paid by the Debtors directly,

Wells Fargo has the right to have its fees, expenses, and other indemnification claims paid by the

Lender Agent, as defined under the AFI Revolver.  *See e.g.*, AFI Revolver, § 12.07.

3.      In addition, Wells Fargo contends that it holds independent claims against those

who delivered documents upon which Wells Fargo relied conclusively when releasing collateral

securing the AFI Revolver and the Junior Secured Notes.

## V.      ISSUES TO BE TRIED

As set forth in the parties' joint Statement of Issues, certain causes of action or

issues relating to the JSNs' recoveries are to be adjudicated in the "Phase II Trial" of the

Consolidated Proceedings, scheduled to take place on November 19, 2013.

Pursuant to the Statement of Issues, the following claims and defenses are to be

tried in Phase II.  However, the parties have fundamentally different positions regarding how

these issues arise for resolution.  The Plan Proponents believe all the issues below have been

subsumed in the Plan including the Global Settlement, and can be considered by the Court in

connection with consideration of the Global Settlement and confirmation of the Plan.  The

Defendants disagree.[113]

### A.      Intercompany Balances

1.      Whether the JSNs have a lien on Intercompany Balances.

---

[113] In addition, the Plan Proponents also contend that certain of the issues listed below are not properly before the
Court in Phase II because they were not pleaded in the JSNs' counterclaims

2.      The Defendants contend that one of the issues to be tried in Phase II is "whether and to what extent the Debtors have the authority to settle the Intercompany Balances and any claim against Ally upon which the JSNs have a security interest without the consent of the JSNs."  The Plan Proponents disagree and contend that this issue was not pleaded in the JSNs' counterclaims.

3.      Whether the Intercompany Balances have value for distribution purposes, what that amount is, and the value of any JSN liens on the Intercompany Balances.

4.      The Defendants contend that one of the issues to be tried in Phase II is "whether and to what extent the Intercompany Balances are valid prepetition claims that are not subject to defense, waiver, counterclaim, setoff, avoidance or disallowance."  The Plan Proponents disagree and contend that this was not pleaded as a counterclaim by the JSNs, but rather only as a factual assertion in support of their claims regarding the Intercompany Balances.

5.      Whether, to the extent any Intercompany Balances are "waived" or settled for no consideration under the Plan, the JSNs are entitled to an adequate protection claim for any diminution in the value of any JSN interests in the Intercompany Balances.

## B.      Treatment of Various Classes of Claimants

1.      Whether, for purposes of determining the allowance of the JSN Claims, including entitlement to postpetition interest at the default rate plus reimbursement of legal fees, any of the RMBS Trust Claims, the Monoline Insurer Claims, or the Private Securities Claims for damages must be subordinated to all general unsecured claims including Intercompany Balances, pursuant to section 510(b) of the Bankruptcy Code.

ny-1114420

C.    **Ally Contribution**

1.    Whether the JSNs have a lien on any portion of the Ally Contribution and/or any proceeds from the Debtors' claims and causes of action against Ally, with the exception of commercial tort claims and avoidance actions, and the value of any such lien.

2.    Whether the Debtors must allocate the proceeds of any claims and causes of action against Ally, including the Ally Contribution.

3.    Whether the JSNs are entitled to an adequate protection claim for the release of any of the Debtors' claims and causes of action against Ally contemplated by the Plan.

D.    **The Value of Collateral, Oversecurity (Whether and to What Extent), Default Interest, Fees (to the Extent Not Determined in Phase I), and the Amount of the JSN Prepetition Claim**

1.    The Defendants contend that one of the issues to be tried in Phase II is "whether and to what extent the JSNs are entitled to aggregate or credit recoveries on deficiency claims; or to voluntarily reduce the amount of the secured claims to pay postpetition interest." The Plan Proponents disagree and contend that this issue was not pleaded in the JSNs' counterclaims.

2.    Whether and to what extent the JSNs have an allowed claim for fees (including legal fees), costs, charges, and any other obligations owing under the Notes Indenture, including any indemnification obligations, through a combination of their secured and unsecured deficiency claims, as well as postpetition interest and default interest under section 506(b) of the Bankruptcy Code.

## VI.    PLAINTIFFS AND PLAN PROPONENTS' EXHIBITS

The Plaintiffs and Plan Proponents' exhibit list for Phase II of the Consolidated Proceedings and for Plan Confirmation is attached as Exhibit A hereto.

## VII.    DEFENDANTS' EXHIBITS

The JSNs and Notes Trustees' exhibit list for Phase II of the Consolidated Proceedings and for Plan Confirmation is attached as Exhibit B hereto.  Plaintiffs have represented that certain documents were admitted in Phase I.  Relying upon that representation, the JSNs and Notes Trustees have not asserted objections to such documents on Plaintiffs' list, but reserve their right to do so in the event that any such document was not in fact admitted in Phase I or to the extent the document was admitted for a limited purpose and Plaintiffs seek to use it for a different purpose in Phase II

The Third Priority Collateral Agent's exhibit list for Phase II of the Consolidated Proceedings and for Plan Confirmation is attached as Exhibit C hereto.

No exhibit not listed by the Parties may be used at trial except (a) for cross-examination purposes; (b) such exhibit is included on the supplemental exhibit lists to be exchanged on November 13, 2013 in accordance with the Stipulated Scheduling Order [Dkt. No. 5638]; or (c) if good cause for its exclusion from the pretrial order and/or supplement exhibit list is shown.

## VIII.    STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

The Parties' stipulations with respect to the authenticity and admissibility of exhibits and objections with respect to exhibits are set forth in Exhibits A through C, attached hereto.  The Parties will continue to meet and confer in an effort to resolve objections to exhibits.  Any objections not set forth herein will be considered waived absent good cause shown.

## IX.    PLAINTIFFS AND PLAN PROPONENTS' WITNESS LIST

The Plaintiffs and Plan Proponents intend to call the following witnesses in their case in chief at the Phase II and Plan Confirmation trial:

(i)    Lucy Allen

(ii)    John Dubel

(iii)    Gina Gutzeit

(iv)    Ronald Friedman

(v)    Tammy Hamzehpour

(vi)    Susheel Kirpalani

(vii)    Lewis Kruger

(viii)    Jeffrey A. Lipps

(ix)    Thomas Marano

(x)    Joseph Morrow

(xi)    Mark A. Renzi

(xii)    Frank Sillman

(xiii)    William Thompson

(xiv)    Barbara Westman

The Plaintiffs and Plan Proponents intend to call the following additional witnesses in their case in chief by deposition designation at the Phase II and Plan Confirmation trial:

(i)    James Aretakis

(ii)    Conor Bastable

(iii)    Al Celini

(iv)    Cathy Dondzila

(v)    Michael Fazio

(vi)    William Marx

(vii)    Reid Snellenbarger

(viii)    James Young

## X.    DEFENDANTS' WITNESS LIST

The JSNs and Notes Trustees intend to call the following witnesses in their case in chief at the Phase II and Plan Confirmation trial:

(i)      James Aretakis (adverse)

(ii)     Robert Bingham

(iii)    Michael Carpenter (adverse)

(iv)     Al Celini (adverse)

(v)      Joe Cortese (adverse)

(vi)     Cathy Dondzila (adverse)

(vii)    Michael Fazio

(viii)   Tammy Hamzehpour (adverse)

(ix)     Lewis Kruger (adverse)

(x)      Raymond Lyons

(xi)     William Marx (adverse)

(xii)    Mark Renzi (adverse)

(xiii)   Barbara Westman (adverse)

(xiv)    James Young (adverse)

The JSNs and Notes Trustees intend to call the following additional witnesses in their case in chief by deposition designation at the Phase II and Plan Confirmation trial:

(i)      Adam Glassner (adverse)

(ii)     Reid Snellenbarger

The Third Priority Collateral Agent intends to call the following witnesses in their case in chief at the Phase II and Plan Confirmation trial:

(i)      Michael Pinzon

The Third Priority Collateral Agent intends to call the following additional witnesses in their case in chief by deposition designation at the Phase II and Plan Confirmation trial:

(i)      Theresa Farley

ny-1114420

(ii)      Michael Pinzon

(iii)     Reid Snellenbarger

The witnesses listed may be called at trial. No witness not identified herein shall be permitted to testify in any Party's case in chief absent good cause shown.

In accordance with the Stipulated Scheduling Order [Docket No. 5638], the Parties will separately file all designations of deposition testimony and counter-designations and objections thereto and a copy of any depositions which are intended to be offered into evidence, marked to show all designations and counter-designations and unresolved objections, if any.

## XI.    RELIEF SOUGHT

### A.    Plaintiffs and Plan Proponents' Relief

With respect to the Consolidated Proceedings, in addition to the relief sought in Phase 1, the Plaintiffs and Plan Proponents' request that the Court declare the following:

(i) Post-petition fees and expenses paid to the Indenture Trustee and JSN professionals be recharacterized as payments of principal.

(ii) The JSNs are not entitled to any adequate protection claim because there has been no diminution in the aggregate value of their collateral.

(iii) The JSNs are undersecured for purposes of Bankruptcy Code section 506(b) and therefore not entitled to post-petition interest or other fees, costs or charges

(iv) The JSNs have no lien of any value with respect to Intercompany Balances or any liens of value on claims released in connection with the AFI Contribution.

### B.    Defendants' Relief

The Defendants seek an award of the full amount of the fees (including legal fees), costs, charges, and any other obligations owing under the Notes Indenture, including any indemnification obligations, as well as postpetition interest and default interest.

ny-1114420

Dated: November 12, 2013

**MORRISON & FOERSTER LLP**

/s/ *Gary S. Lee*

Gary S. Lee
Charles L. Kerr
Darryl P. Rains
J. Alexander Lawrence
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

-and-

**CURTIS, MALLET-PREVOST, COLT
& MOSLE LLP**

/s/ *Steven J. Reisman*

Steven J. Reisman
Theresa A. Foudy
Michael Moscato
101 Park Avenue
New York, New York 10178
Telephone: (212) 696-8860
Facsimile: (212) 697-1559

*Counsel to the Debtors and
Debtors in Possession*

**KRAMER LEVIN NAFTALIS
& FRANKEL LLP**

/s/ *Kenneth H. Eckstein*

Kenneth H. Eckstein
Gregory A. Horowitz
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

-and-

**PACHULSKI STANG ZIEHL
& JONES LLP**

/s/ *Robert J. Feinstein*

Robert J. Feinstein
John A. Morris
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

*Counsel to the Official Committee of
Unsecured Creditors*

ny-1114420

Dated: November 12, 2013

**REED SMITH LLP**

*/s/ Eric A. Schaffer*

Eric A. Schaffer
David M. Schlecker
Sarah K. Kam
599 Lexington Avenue
New York, New York 10022
Telephone: 212-521-5400
Facsimile: 212-561-5450

*Counsel for Defendant Wells Fargo Bank, N.A., in its capacity as third priority collateral agent and collateral control agent*

**AKIN GUMP STRAUSS HAUER & FELD LLP**

*/s/   Daniel H. Golden*

Daniel H. Golden
David M. Zensky
Deborah J. Newman
Brian T. Carney
One Bryant Park
Bank of America Tower
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Attorneys for UMB Bank, N.A.*

**WHITE & CASE LLP**

*/s J. Christopher Shore*

J. Christopher Shore
Dwight Healy
Douglas Baumstein
Julia Winters
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200

*Attorneys for the Ad Hoc Group*

**MILBANK, TWEED, HADLEY & MCCLOY LLP**

*/s/   Gerard Uzzi*

Gerard Uzzi
Dennis O'Donnell
David S. Cohen
Daniel M. Perry
Atara Miller
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219

*Attorneys for the Ad Hoc Group and UMB Bank, N.A.*

Dated: _____

**IT IS SO ORDERED:**

_____
**Martin Glenn**
**UNITED STATES BANKRUPTCY JUDGE**

ny-1114420

# EXHIBIT A

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 1 | 6/6/2008 | ALIX 003152-ALIX 003271 | | Indenture for the Residential Capital, LLC and each of the Guarantors from time to time party hereto, 9.625% Junior Secured Guaranteed Notes Due 2015 | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 2 | 6/6/2008 | WELLS FARGO_000368-WELLS FARGO_000450 | | Intercreditor Agreement among Wells Fargo, N.A., GMAC LLC, U.S. Bank National Association, Residential Funding Company, LLC, GMAC Mortgage, LLC and Residential Capital, LLC | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 3 | 6/6/2008 | RCUCCJSN10275127-RCUCCJSN10275227 | | Third Priority Pledge and Security Agreement and Irrevocable Proxy among Residential Capital, LLC, U.S. Bank National Association and Wells Fargo Bank, N.A. | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 4 | 12/30/2009 | WELLS FARGO_002995-WELLS FARGO_003051 | | Amended and Restated Third Priority Pledge and Security Agreement and Irrevocable Proxy among Residential Capital, LLC, U.S. Bank National Association and Wells Fargo Bank, N.A. | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 5 | 6/4/2008 | WELLS FARGO_000014-WELLS FARGO_000228 | | Loan Agreement by and among Residential Funding Company, LLC and GMAC Mortgage, LLC as Borrowers and GMAC LLC as Initial Lender and Lender Agent | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 6 | 12/30/2009 | WELLS FARGO_002568-WELLS FARGO_002737 | | Amended and Restated Loan Agreement by and among Residential Funding Company and GMAC Mortgage, LLC as Borrowers and GMAC Inc. as Initial Lender (Senior Debt Loan Agreement) | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 7 | 6/4/2008 | WELLS FARGO_000229-WELLS FARGO_000335 | | First Priority Pledge and Security Agreement and Irrevocable Proxy among Residential Funding Company, LLC, GMAC Mortgage, LLC, GMAC, LLC and Wells Fargo Bank, N.A. | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 8 | 12/30/2009 | WELLS FARGO_002738-WELLS FARGO_002866 | | Amended and Restated First Priority Pledge and Security Agreement and Irrevocable Proxy among Residential Funding Company, LLC, GMAC Mortgage, LLC, GMAC, Inc. and Wells Fargo Bank, N.A. (Senior Debt Loan Agreement) | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 9 | 12/30/2009 | RCUCCJSN10144081-RCUCCJSN10144229 | | Amended and Restated Loan Agreement by and among Residential Funding Company, LLC, GMAC Mortgage, LLC, Residential Capital, LLC and GMAC Inc. (Line of Credit Agreement) | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 10 | 5/14/2010 | AFIJSN_0043084-AFIJSN_0043252 | | Second Amendment to the Amended and Restated Loan Agreement by and among Residential Funding Company, LLC, GMAC Mortgage LLC, Residential Capital, LLC and Ally Financial Inc. | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 11 | 12/21/2011 | RCUCCJSN10377429-RCUCCJSN10377534 | | Master Repurchase Agreement by and among BMMZ Holdings LLC, GMAC Mortgage, LLC, Residential Funding Company, LLC and Residential Capital, LLC, | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 12 | 3/15/2011 | EXAM00111687-EXAM00111947 | | Fourth Amended and Restated Indenture among GMAC Mortgage Servicer Advance Funding Company, Ltd, The Bank of New York Mellon, GMAC Mortgage, LLC, and Residential Funding LLC | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 13 | 11/1/2009 | RC00028796-RC00028801 | | Amended and Restated Agreement for the Allocation of United States Federal Income Taxes | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 14 | 7/1/2008 | ALLY_0018237-ALLY_0018244 | | Schedule to the ISDA Master Agreement | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 15 | 7/1/2008 | ALLY_0201210-ALLY_0201225 | | Amended and Restated Master Mortgage Loan Purchase and Sale Agreement Residential Mortgage Loans and Home Equity Loans/Lines of Credit between GMAC Bank and GMAC Mortgage, LLC | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 16 | | ALLY_0074221 | | Exhibit A to the Second Amendment to Senior Loan Agreement Schedule 7.01(t) Bilateral Facilities | | | | Yes | Yes | | | Admitted Farley 10/16, p. 175 |
| 17 | 2/17/2012 | RCUCCJSN11297525-RCUCCJSN11297538 | | Letter of Intent from Lance West of Centerbridge Partners, L.P. to Centerview Partners LLC | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 18 | 2/28/2012 | RCUCCJSN11297539-RCUCCJSN11297545 | | Letter of Intent from Lance West of Centerbridge Partners, L.P. to Centerview Partners LLC | | | | Yes | Yes | | | Admitted 10/22, p. 111 |

1

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 19 | 11/2/2012 | RCUCCJSN11280685-RCUCCJSN11280788 | | Asset Purchase Agreement between Ocwen Loan Servicing, LLC and Residential Capital, LLC et al. | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23 |
| 20 | 11/2/2012 | RCUCCJSN11280960-RCUCCJSN11281164 | | Schedules to the Ocwen Asset Purchase Agreement | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141 |
| 21 | | RCUCCJSN11332855-RCUCCJSN11333030 | | Amendment No. 1 to Ocwen Asset Purchase Agreement | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 22 | | RCUCCJSN11148681-RCUCCJSN11148689 | | Amendment No. 2 to Ocwen Asset Purchase Agreement | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 23 | | RCUCCJSN00049394-RCUCCJSN00049401 | | Amendment No. 3 to Ocwen Asset Purchase Agreement | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 24 | | RCUCCJSN00049411-RCUCCJSN00049418 | | Amendment No. 4 to Ocwen Asset Purchase Agreement | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 25 | 2/20/2012 | CCM004483239-CCM00483244 | | Ocwen Bid for Servicing Assets Submitted February 20, 2012 | | | | Yes | Yes | | | Admitted Puntus 10/16, p. 23 |
| 26 | 2/15/2013 | RCUCCJSN11138073-RCUCCJSN11138152 | | Subservicing Agreement Among GMAC Mortgage, LLC et al. and Ocwen Loan Servicing, LLC | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 27 | 2/17/2012 | RCUCCJSN11671038-RCUCCJSN11671039 | | Letter of Intent from Wesley Edens of Fortress Investment Group to Ally Bank re: Project Bounce | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 28 | 2/28/2012 | RCUCCJSN11297557-RCUCCJSN11297563 | | Letter of Intent from Wesley Edens of Fortress Investment Group to Centerview Partners LLC re: Project Bounce | | | | Yes | Yes | | | Admitted Puntus 10/16, p. 23 |
| 29 | | RCUCCJSN11291425-RCUCCJSN11291426 | | Berkshire Bid for Held-for-Sale Loan Portfolio (Mini Auction) | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 30 | 6/28/2012 | RCUCCJSN11657234-RCUCCJSN11657289 | | Asset Purchase Agreement between Berkshire Hathaway Inc. and Residential Capital, LLC et al. | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 31 | 11/2/2012 | RCUCCJSN11333455-RCUCCJSN11333513 | | Amended and Restated Asset Purchase Agreement between Berkshire Hathaway Inc. and Residential Capital, LLC et al. | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 32 | | ALIX 006258 | | Walter Purchase Price Summary | | | F, H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 33 | 5/13/2012 | ALIX 006259-ALIX 006375 | | Asset Purchase Agreement between Nationstar Mortgage LLC and Residential Capital, LLC et al. | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 34 | 6/28/2012 | RCUCCJSN11657130-RCUCCJSN11657231 | | Amended and Restated Asset Purchase Agreement between Nationstar Mortgage LLC and Residential Capital, LLC | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 35 | 5/13/2012 | RCUCCJSN10713962-RCUCCJSN10714205 | | Schedules to the Asset Purchase Agreement Between Nationstar Mortgage LLC and Residential Capital, LLC | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 36 | | ALIX 006252-ALIX 006257 | | Final Ocwen True-up Purchase Price Calculation Schedules | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 43 | 7/31/2012 | Docket No. 945 | | Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtor's Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements and (II) the RMBS Trustees' Limited Objection to the Sale Motion | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141 |
| 44 | 6/28/2012 | RCUCCJSN11281360-RCUCCJSN11281381; Docket No. 538 | | Order Under 11 U.S.C. §§ 105, 363(b) and 365 (I) Authorizing and Approving Sale Procedures, Including Payment of Break-Up Fees; (II) Scheduling Bid Deadline, Auction (if Necessary) and Sale Hearing; (III) Establishing Assumption and Assignment Procedures, Including Procedures for Fixing Cure Amounts; and (IV) Establishing Notice Procedures and Approving Forms of Notice | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141 |

2

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 45 | 11/19/2012 | Docket No. 2246 | | Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23 |
| 46 | 11/21/2012 | Docket No. 2247 | | Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Berkshire Hathaway, Inc.; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (C) Related Agreements; and (II) Granting Related Relief | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23 |
| 47 | 10/19/2012 | WALTER000293-WALTER000301 | | Joint Bidding Agreement between Ocwen Loan Servicing, LLC and Walter Investment Management Corporation | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 48 | 10/19/2012 | RCUCCJSN30007303-RCUCCJSN30007533 | | Ocwen Bid Proposal and cover email | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23 |
| 49 | | RCUCCJSN30007842-RCUCCJSN30007854 | | Centerview: Discussion Materials for October 22, 2012 Board Meeting and cover email | | | H | | Yes | H | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23; for limited purpose |
| 50 | 2/24/2012 | RCUCCJSN20032666-RCUCCJSN20032678 | | Centerview Presentation: ResCap Materials for Discussion | | | R | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 51 | 2/29/2012 | RCUCCJSN11321052; RCUCCJSN11321053; RCUCCJSN11600105-RCUCCJSN11600123 | | Centerview Presentation: ResCap Materials for Discussion | | | | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 52 | 5/4/2012 | RC40020568-RC40020574 | | Centerview Partners Material for Discussion | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 53 | 1/31/2013 | WALTER038309-WALTER038311 | | Walter Bill of Sale | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141 |
| 54 | 6/27/2012 | RCUCCJSN11958286-RCUCCJSN11958289 | | Ocwen Bill of Sale | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141 |
| 55 | 11/12/2012 | Docket No. 2141 | | Declaration of Ronald M. Faris of Ocwen Loan Servicing, LLC in Support of Debtors' Sale Motion | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 56 | 10/23/2012 | | | Auction Proceedings Transcript | | | | Yes | Yes | | | Admitted Puntus 10/16, p. 23; Levine 10/22 p. 109 |
| 57 | 10/24/2012 | | | Auction Proceedings Transcript | | | | Yes | Yes | | | Admitted Puntus 10/16, p. 23 |
| 58 | 10/25/2012 | | | Auction Proceedings Transcript | | | | Yes | Yes | | | Admitted Puntus 10/16, p. 23 |
| 59 | 1/31/2013 | RCUCCJSN11154065-RCUCCJSN11154065.14 | | Agreement for Partial Assignment and Assumption under the Asset Purchase Agreement | | | | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| | | | | | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
| 60 | | Docket No. 2642 | | Notice of Filing of Form of Mortgage Loan Purchase and Interim Servicing Agreement and Amended Exhibits to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m) and Fed. R. Bankr. P. 2002, 6004 and 9007 for Orders: (A)(I) Authorizing and Approving Sale Procedures; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain FHA Loans Free and Clear of Liens, Claims, Encumbrances and Other Interests; (II) Authorizing and Approving Mortgage Loan Purchase and Interim Servicing Agreement; and (III) Granting Related Relief | | | | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 61 | 5/14/2012 | Docket No. 61 | | Motion to Sell Free and Clear of Liens / Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 For Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief | | | | | Yes | H | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23; for limited purpose |
| 62 | 6/19/2012 | | | Transcript of hearing | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 63 | 2/6/2008 | RC00017398-RC00017422 | | Minutes of the Meeting of the Special Committee of the Independent Directors of the Board of ResCap | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 64 | 4/20/2008 | RC00018090-RC00018170 | | Minutes of Special Meeting of the Board of Directors of ResCap | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 65 | 5/13/2012 | RC_FGIC9019_00034884-RC_FGIC9019_00034886 | | Minutes of Meeting of ResCap Board of Directors | | | H | | Yes | H | | Admitted Marano 10/15, p. 141; for limited purpose |
| 66 | 10/22/2012 | RCUCCJSN30046700-RCUCCJSN30046703 | | Minutes of ResCap Board Meeting | | | H | | Yes | H | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23; for limited purpose |
| 67 | 2/14/2013 | RCUCCJSN30046930-RCUCCJSN30046932 | | Board Minutes | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 68 | 4/26/2013 | RCUCCJSN30047024-RCUCCJSN30047025 | | Board Minutes | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 69 | 5/11/2013 | RCUCCJSN30046970-RCUCCJSN30046994 | | Board Minutes | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 70 | 5/22/2013 | RC_FGIC9019_00034899-RC_FGIC9019_00034906 | | Board Minutes | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 74 | 6/30/2010 | EXAM00113271-EXAM00113352 | | Amended and Restated Loan and Security Agreement by and among GMAC Mortgage, LLC, Residential Capital, LLC, and Citibank, N.A. | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 75 | 9/10/2007 | GOLDIN00044759-GOLDIN00044827 | | Loan and Security Agreement by and among GMAC Mortgage, LLC, Residential Capital, LLC, and Citibank, N.A. | | | | Yes | Yes | | | Admitted 10/22, p. 111 |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 76 | 6/25/2012 | Docket No. 491 | | Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23 |
| 77 | 4/8/2013 | Docket No. 3374 | | Debtors' Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral | | | | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 78 | 2/15/2013 | Docket No. 2927 | | Second Stipulation and Order Amending the AFI DIP and Cash Collateral Order | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 79 | 3/18/2013 | Docket No. 3230 | | Third Stipulation and Order Amending the AFI DIP and Cash Collateral Order | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 80 | 4/17/2013 | Docket No. 3458 | | Fourth Stipulation and Order Amending the AFI DIP and Cash Collateral Order | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 81 | 4/26/2013 | Docket No. 3534 | | Fifth Stipulation and Order Amending the AFI DIP and Cash Collateral Order | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 82 | 5/14/2013 | Docket No. 3720 | | Sixth Stipulation and Order Amending the AFI DIP and Cash Collateral Order | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 83 | 6/14/2013 | Docket No. 3981 | | Seventh Stipulation and Order Amending the AFI DIP and Cash Collateral Order | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 84 | 6/28/2013 | Docket No. 4115 | | Eighth Stipulation and Order Amending the AFI DIP and Cash Collateral Order | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 85 | 7/10/2013 | Docket No. 4193 | | Stipulation and Order In Respect of the Debtors' Motion For Entry of an Order to Permit the Debtors' to Continue Using Cash Collateral | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 86 | 12/20/2012 | Docket No. 2495 | | Stipulation and Order Amending the AFI DIP and Cash Collateral Order | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 87 | 4/8/2013 | Docket No. 3375 | | Declaration of Marc D. Puntus in Support of Debtors' Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 88 | 5/14/2012 | Docket No. 13 | | Motion to Approve Debtor in Possession Financing / Debtors Motion For Interim And Final Orders Pursuant To 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) And 364(e) And Bankruptcy Rules 4001 And 6004 (I) Authorizing The Debtors To (A) Enter Into And Perform Under Receivables Purchase Agreements And Mortgage Loan Purchase And Contribution Agreements Relating To Initial Receivables And Mortgage Loans And Receivables Pooling Agreements Relating To Additional Receivables, And (B) Obtaining Postpetition Financing On A Secured, Superpriority Basis, (II) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(b) and 4001(c), And (III) Granting Related Relief filed by Lorenzo Marinuzzi on behalf of Residential Capital, LLC. | | | H | | Yes | H | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23; for limited purpose |
| 89 | 5/15/2012 | Docket No. 69 | | Interim Order, Signed on 5/15/2012 by Judge James M. Peck, Under Bankruptcy Code Sections 105(a), 345, 363, 364, And 503(b)(1) And Bankruptcy Rules 6003 And 6004 Authorizing (I) Continued Use Of Existing Cash Management Services And Practices, (II) Continued Use Of Existing Bank Accounts, Checks, And Business Forms, (III) Implementation Of Modified Cash Management Procedures, (IV) Interim Waiver Of The Investment And Deposit Requirements Of Bankruptcy Code Section 345, (V) Debtors To Honor Specified Outstanding Prepetition Payment Obligations, (VI) Continuation Of Intercompany Transactions, Including Intercompany Transactions With Future Debtors, And Granting Administrative Expense Status To Intercompany Claims, And (VII) Scheduling A Final Hearing On The Relief Requested | | | | Yes | Yes | | | Admitted 10/22, p. 111 |

5

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 90 | 5/23/2013 | Docket No. 3814-1 | | Notice of Debtors' Motion for an Order Under Bankruptcy Code Sections 105(A) and 363(B) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement With Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants | | | | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 105 | 5/14/2012 | EXAM00126372-EXAM00126430 | | GMAC ResCap Draft DIP Projections (FTI Presentation to Stakeholders) | | | | | Yes | H | | Admitted Puntus 10/16, p. 23 |
| 107 | | RENZI00000002 | | Project Bounce Estimated Recovery on Unsold Collateral by Asset Class | | | | | Yes | EXP | | Admitted Renzi 10/16 p. 170; for limited purpose |
| 111 | | EXAM00176554-EXAM00176564 | | Historical and Current Waterfall Model | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 113 | | ALIX 006544-ALIX 006552 | | Financial Reporting Data Dictionary CFDR Mart Table Definitions | | | | | Yes | H | | Admitted Farley 10/17, p. 38 |
| 116 | 5/31/2010 | RCUCCJSN10353806-RCUCCJSN10353820_003 | | Letter from J. Young to Ally Financial, Inc. relating to Collateral Value Report, with attached report as of May 31, 2010 | | | | | Yes | H | | Admitted Farley 10/17, p. 39 |
| 117 | 6/30/2010 | RCUCCJSN10677818-RCUCCJSN10677834 | | Letter from J. Young to Ally Financial, Inc. relating to Collateral Value Report, with attached report as of June 30, 2010 | | | | | Yes | H | | Admitted Farley 10/17, p. 39 |
| 118 | 5/31/2010 | RCUCCJSN10353821-RCUCCJSN10353841 | | Letter from J. Young to Ally Financial, Inc. relating to Collateral Value Report, with attached report as of May 31, 2010 | | | | | Yes | H | | Admitted Farley 10/17, p. 39 |
| 119 | 6/30/2010 | RCUCCJSN10338320-RCUCCJSN10338340 | | Letter from C. Dondzila to Ally Financial, Inc. relating to Collateral Value Report, with attached report as of June 30, 2010 | | | | | Yes | H | | Admitted Farley 10/17, p. 39 |
| 120 | | RCUCCJSN00050528 | | DVD containing UCC-3 Financing Statement Amendments, Releases of Collateral, and Ordinary Course of Business Releases | | | | | Yes | T, H | | Admitted 10/22, p. 114 |
| 122 | | | | Exhibit G to Committee Complaint (UCC-3 Termination Statements) | | | | | Yes | No objection per plaintiffs' representation that the document is being offered solely to demonstrate that such UCC-3s were filed and therefore allegedly have an "independent legal significance" and not for the truth of the matter(s) asserted therein | | Admitted 10/22, p. 111; for limited purpose |
| 123 | | | | Schedule 1 to the Committee Complaint: Released Bilateral Facilities (and backup) | | | | | Yes | H | | Admitted Landy 10/17, p. 114; for limited purpose |
| 124 | | | | Schedule 2 to the Committee Complaint: Unencumbered Real Property (and backup) | | | | | Yes | H | | Admitted Landy 10/17, p. 114; for limited purpose |
| 125 | | | | Schedule 3 to the Committee Complaint: Released Mortgage Loans (and backup) | | | | | Yes | H | | Admitted Landy 10/17, p. 114; for limited purpose |
| 126 | | | | Schedule 5 to the Committee Complaint: Deposit Accounts (and backup) | | | | | Yes | H | | Admitted Landy 10/17, p. 114; for limited purpose |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 127 | | | | Schedule 6 to the Committee Complaint: Preference Assets (and backup) | | | | | Yes | H | | Admitted Landy 10/17, p. 114; for limited purpose |
| 128 | | | | Examples and Excerpts of Collateral Released, Ex. 5 to Debtors' Compl. | | | | | Yes | H | | Admitted 10/22, p. 113 |
| 129 | | | | Examples and Excerpts of Collateral Released, Ex. 6 to Debtors' Compl. | | | | | Yes | H | | Admitted 10/22, p. 113 |
| 130 | | Wells Fargo 30(b)(6) Deposition Exhibit 16 A-D | | Series of Collateral Releases and UCC-3s Introduced as Exhibits 16A-D at the Wells Fargo 30(b)(6) Deposition | | | | | Yes | H | | Admitted Farley 10/16, p. 175 |
| 131 | | Wells Fargo 30(b)(6) Deposition Exhibit 17 A-B | | Series of Collateral Releases and UCC-3s Introduced as Exhibits 17A-B at the Wells Fargo 30(b)(6) Deposition | | | | | Yes | H | | Admitted Farley 10/16, p. 175 |
| 132 | 7/16/2003 | Docket No. 23 | | UCC Financing Statements Annexed as Exhibit 1 to the Declaration of Jamie A. Levitt in Support of the Debtors' and Official Committee of Unsecured Creditors' Motion to Dismiss Certain of the Defendant's Counterclaims | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 133 | 5/25/2010 | ALLY_0070463-ALLY_0070622 | | UCC Financing Statement Amendment | | | | | Yes | No objection per plaintiffs' representation that the document is being offered solely to demonstrate that such UCC-3s were filed and therefore allegedly have an "independent legal significance" and not for the truth of the matter(s) asserted therein | | Admitted Farley 10/16, p. 175 |
| 134 | 5/14/2010 | ALLY_0070276-ALLY_0070462 | | Partial release of Collateral (Pledge of MSRs and Additional Assets Under LOC Loan Facility) | | | | | Yes | H | | Admitted Farley 10/16, p. 175 |
| 135 | 5/17/2010 | ALLY_0070767-ALLY_0070875 | | Partial release of Collateral (Pledge of Repo Loans) | | | | Yes | Yes | | | Admitted Landy 10/17, p. 114 |
| 136 | 5/17/2010 | ALLY_0070876-ALLY_0070899 | | UCC Financing Statement Amendment Filed May 17, 2010 | | | | | Yes | No objection per plaintiffs' representation that the document is being offered solely to demonstrate that such UCC-3s were filed and therefore allegedly have an "independent legal significance" and not for the truth of the matter(s) asserted therein | | Admitted Landy 10/17, p. 114 |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Objections and Information Relating to Phase II** | | | **Objections and Information Relating to Phase I** | | | | |
| 137 | 5/14/2012 | ALIX 002060-ALIX 002629; Docket No. 6 | | Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings | | | | | Yes | H | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23; for limited purpose |
| 138 | 4/30/2013 | RENZI00000001 | | Project Bounce Illustrative Waterfall Analysis Asset and Liability Input Preliminary Draft | | | H | | Yes | H | | Admitted Renzi 10/16, p. 170; for limited purpose |
| 139 | | RCUCCJSN00030168 | | CFDR | | | | | | H, BE, A | DX AEN | Admitted Farley 10/17, p. 33 |
| 154 | | RCUCCJSN00049269-RCUCCJSN00049270 | | Revolver and DIP Island Loan and Asset Tapes as of Petition Date | | | | | Yes | H | | Admitted Farley 10/17, p. 38 |
| 161 | 9/20/2012 | RCUCCJSN11026679-RCUCCJSN11026680 | | Email exchange between L. Chase, P. Gordon, and D. Howard re: CFDR Process | | | | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 162 | | RCUCCJSN11026681-RCUCCJSN11026696 | | PRJ211581 Consolidated Financial Data Repository (CFDR) Reconciliation Process 2012 | | | | | Yes | H | | Admitted Farley 10/17, p. 39 |
| 163 | 8/12/2011 | ALLY_0150091 | | Email from J. Whitlinger to J. Mackey attaching letter from T. Marano to M. Carpenter | | | | | Yes | H | | Admitted Marano 10/15, p. 141 |
| 164 | 8/12/2011 | ALLY_0150092-ALLY_0150093 | | Letter from T. Marano to M. Carpenter | | | | | Yes | H | | Admitted Marano 10/15, p. 141; for limited purpose |
| 165 | | WELLS FARGO_025279-WELLS FARGO_025400 | | Email from L. Shansky to R. Newman et al. re: Ally/ResCap/Wells Fargo--Sale of Mortgage Loans with attachments | | | | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 167 | 5/7/2012 | RCUCCJSN11316411-RCUCCJSN11316413 | | Email from R. Shrock to L. Nashelsky et al. re: 3rd Lien Terms. Privileged. Subject to FRE 408 | | | | Yes | Yes | H, R | DX LI | Admitted 10/22, p. 111 |
| 168 | 4/4/2013 | RCUCCJSN10981017-RCUCCJSN10981028 | | ResCap-Intercompany Transactions-DRAFT | | | | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 169 | 5/1/2012 | AHG00004690 – AHG00004723 | | Restricted Presentation to the Ad Hoc Noteholder Group by Houlihan Lokey | | | | Yes | Yes | H – Rule 805 | DX LF | Admitted 10/22, p. 111 |
| 170 | 4/1/2012 | AHG00003730 – AHG00003753 | | Houlihan Lokey Discussion Materials – Financials Updated for 4Q 2011 | | | | Yes | Yes | H – Rule 805 | DX LB | Admitted 10/22, p. 111 |
| 171 | | AHG00004022 – AHG00004074 | | Houlihan Lokey Discussion Materials – Financials Updated for 3Q 2011 | | | | Yes | Yes | H – Rule 805 | DX ABQ | Admitted 10/22, p. 111 |
| 172 | 7/18/2012 | Notes Trustee 00004135 – Notes Trustee 00004137 | | U.S. Bank Notice of Bankruptcy Filing and Event of Default | | | | | Yes | No objection per plaintiffs' representation that the document is being offered solely to show that it exists and therefore allegedly has an "independent legal significance" and not for the truth of the matter(s) asserted therein | DX MU | Admitted 10/22, p. 111; for limited purpose |

8

Plaintiffs and Plan Proponents' Exhibit List and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Objections and Information Relating to Phase II** | | | **Objections and Information Relating to Phase I** | | | | |
| 173 | 2/15/2012 | Notes Trustee 00004138 | | U.S. Bank Notice to the Junior Secured Noteholders | | | H | | Yes | No objection per plaintiffs' representation that the document is being offered solely to show that it exists and therefore allegedly has an "independent legal significance" and not for the truth of the matter(s) asserted therein | | Admitted 10/22, p. 111; for limited purpose |
| 174 | 5/21/2013 | Notes Trustee 00004117 – Notes Trustee 00004120 | | UMB Notice to the Junior Secured Noteholders of Significant Events | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 175 | 5/5/2008 | AFIJSN_0120864-AFIJSN_0121002 | | Offering Memorandum for Exchange Offer | | | | | Yes | No objection per plaintiffs' representation that the document is being offered solely to show that it exists and therefore allegedly has an "independent legal significance" and not for the truth of the matter(s) asserted therein | DX BB | Admitted 10/22, p. 111; for limited purpose |
| 181 | 5/14/2008 | AFIJSN_0003313-AFIJSN_0003317 | | First Supplemental Offering Memorandum for Exchange Offer | | | H | | Yes | R; No hearsay objection per plaintiffs' representation that the document is being offered solely to show that it exists and therefore allegedly has an "independent legal significance" and not for the truth of the matter(s) asserted therein | | Admitted 10/22, p. 111; for limited purpose |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Objections and Information Relating to Phase II** | | | **Objections and Information Relating to Phase I** | | | | |
| 182 | 5/29/2008 | AFIJSN_0003318-AFIJSN_0003321 | | Second Supplemental Offering Memorandum for Exchange Offer | | | H | | Yes | R; No hearsay objection per plaintiffs' representation that the document is being offered solely to show that it exists and therefore allegedly has an "independent legal significance" and not for the truth of the matter(s) asserted therein | | Admitted 10/22, p. 111; for limited purpose |
| 184 | 6/6/2008 | Notes Trustee 00003320-Notes Trustee 00003346 | | Closing Memorandum for Exchange Offer | | | H | | Yes | No objection per plaintiffs' representation that the document is being offered solely to show that it exists and therefore allegedly has an "independent legal significance" and not for the truth of the matter(s) asserted therein | | Admitted 10/22, p. 111; for limited purpose |
| 189 | 1/21/2013 | RCUCCJSN30002701-RCUCCJSN30002703 | | PwC Work Papers, Residential Capital Corporation, Tax Gain on Debt Restructuring, Tax Year 2012 | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 191 | | CCM00273477 | | Email from Lenard Tessler (Cerberus Partners) to Thomas Marano (Cerberus Partners), cc to James Young (ResCap), Subject: RE: RESCAP: There is a view that the bond exchange may have caused, dated September 10, 2008 | | | H | | Yes | EXP | DX DW | Admitted 10/22, p. 111; for limited purpose |
| 240 | 9/20/2013 | | | Expert Report of Marc D. Puntus and exhibits thereto | | | | Yes | Yes | | | Admitted Puntus 10/15, p. 235 |
| 241 | 9/20/2013 | | | Expert Report of Marc E. Landy and exhibits thereto | | | | Yes | Yes | | | Admitted Landy 10/17, p. 112 |
| 242 | | | | Expert Report of Mark A Renzi and exhibits thereto | | | H | Yes | Yes | | | |
| 243 | 9/20/2013 | | | Expert Report of John D. Finnerty, Ph.D. and exhibits thereto | | | | Yes | Yes | | | Admitted Finnerty 10/21, p. 10 |
| 244 | 9/20/2013 | | | Expert Report of James Gadsden and exhibits thereto | | | H | Yes | Yes | | | |
| 245 | | ALIX 000001-ALIX 000979 | | Adversary Complaint for Declaratory Judgment, Avoidance of Liens, and Disallowance of Claims, dated February 28, 2013 (unredacted; with exhibits) | | | | | Yes | No objection per plaintiffs' representation that the document is being offered solely because it is "part of the record of the case (and not for the truth of the matters asserted)" | DX CR is an Exhibit to PX245 | Admitted 10/22, p. 111; for limited purpose |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
| 246 | 6/19/2013 | Docket No. 8 | | First Amended Complaint to Determine Extent of Liens and for Declaratory Judgment with its exhibits | | | | | Yes | No objection per plaintiffs' representation that the document is being offered solely because it is "part of the record of the case (and not for the truth of the matters asserted)" | | Admitted 10/22, p. 111; for limited purpose |
| 248 | 5/23/2013 | Docket No. 28 | | Official Committee of Unsecured Creditor's Opposition to Defendant UMB Bank, N.A.'s Partial Motion to Dismiss Pursuant to FRCP 12(b)(6) | | | | | Yes | No objection per plaintiffs' representation that the document is being offered solely because it is "part of the record of the case (and not for the truth of the matters asserted)" | | Admitted 10/22, p. 111; for limited purpose |
| 248.2 | | | | Chart of Non-Obligor Debtors | | | | | | | | Admitted 10/23, p. 208; for limited purpose |
| 252 | 5/14/2012 | ALIX 002528-ALIX 002599 | | Plan Support Agreement  (Exhibit 10 to Whitlinger Affidavit) | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 253 | 6/6/2012 | | | Objection of the RMBS Trustees to the Debtors' Post-Petition Filing Motions | | | | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 254 | 3/26/2012 | Docket No. 3317 | | Periodic Report Regarding Value, Operations, and Profitability of Entities in which the Debtors' Estates Hold a Substantial Controlling Interest | | | | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |
| 256 | 7/4/2013 | ALIX 003329-ALIX 003992; Docket No. 4819 | | Debtor's Disclosure Statement and Amendments (with exhibits, including Plan and Hypothetical Liquidation Analysis, Recovery Analysis and Approval) [approved Aug. 21, 2013] | | | | | Yes | EXP (and Hearsay) | | Admitted Renzi 10/16, p. 169; for limited purpose |
| 355 | 2/17/2012 | EXAM00069563-EXAM00069587 | | Letter from P. Eric Siegert of Houlihan Lokey to the Ad Hoc Group of Junior Secured Noteholders Relating to Houlihan Lokey's Engagement | | | | Yes | Yes | | | Admitted 10/22, p. 111 |
| 356 | 5/6/2012 | EXAM00069563-EXAM00069587 | | Email from R. Kielty to J. Lewis, et al. re: ResCap-Revised Restricted Materials-Confidential | | | | | Yes | H (to Centerview emails); no objection to admission of HL emails | | Admitted 10/22, p. 111; for limited purpose |
| 357 | 5/14/2012 | AHG00003473-AHG00003475 | | Presentation prepared by Houlihan Lokey relating to Residential Capital LLC | | | | Yes | Yes | H – Rule 805 | | Admitted 10/22, p. 111 |
| 358 | 5/14/2012 | AHG00004638-AHG00004674 | | Email from R. Snellenbarger to R. Kielty, et al. re: ResCap-Revised Restricted Materials-Confidential and attached presentation | | | | Yes | Yes | H (to Centerview emails); no objection to admission of HL emails | | Admitted 10/22, p. 111 |
| 359 | 6/18/2012 | publicly available | | Citi Equities: Report on Nationstar Mortgage Holdings Inc. | | | H | | Yes | H | | Admitted 10/22, p. 111; for limited purpose |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 360 | 10/4/2013 | | | Rebuttal Expert Report of John D. Finnerty, Ph.D | | | | | Yes | EXP | | Admitted Finnerty cross 10/21, p. 10 |
| 361 | 10/4/2013 | | | Rebuttal Report of Marc D. Puntus | | | | | Yes | EXP | | Admitted Puntus 10/15, p. 235 |
| 362 | 1/10/2013 | Docket No. 2599 | | Statement of the United States of America Concerning Debtors' Motion for Orders Authorizing and Approving Sale Procedures and Authorizing the Sale of Certain FHA Loans | | | | | Yes | H | | Admitted Puntus 10/16, p. 23 |
| 363 | 6/11/2012 | Docket No. 288 | | Limited Objection of Certain Trustees for Residential Mortgage Backed Securities Trusts to the Debtors' Postpetition Financing Motions | | | H | | Yes | H | | Admitted Puntus 10/16, p. 23; Levine cross 10/22, p. 109; for limited purpose |
| 364 | 5/15/2012 | Docket No. 82 | | "Amended" Interim Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Existing Cash Management Services and Practices, (II) Continued Use of Existing Bank Accounts, Checks, and Business Forms, (IV) Interim Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, (VI) Continuation of Intercompany Transactions, Including Intercompany Transactions with Future Debtors, Granting Administrative Expense Status to Intercompany Claims, and Scheduling a Final Hearing on the Relief Requested | | | | Yes | Yes | | | Admitted Marano 10/15, p. 141; Puntus 10/16, p. 23 |
| 366 | 2/22/2012 | RC00003293-RC00003294 | | Letter from S.Greene to Fortress Investment Group LLC re: Bid Clarification | | | | | Yes | T, H | | Admitted Puntus 10/16, p. 25 |
| 369 | | EXAM00069563-EXAM00069587 | | Letter from P. Eric Siegert to Members of the Ad Hoc Group of Junior Secured Noteholders | | | | | | | | Admitted Siegert cross 10/23, p. 201 |
| 388 | 1/31/2013 | Docket No. 2769 | | Stipulation and Order for the Assumption and Assignment of Certain Agreement of Fannie Mae Pursuant to Section 365 of the Bankruptcy Code and Related Relief | | | | | | | | Admitted Levine cross 10/22, p. 109; for limited purpose |
| 407 | 5/9/2012 | RCUCCJSN11316302-RCUCCJSN11316304.047 | | Email from T. Goren to J. Ruhlin, et al., att Draft Postpetition Financing Order | | | | | | | | Admitted Siegert cross 10/23, p. 201 |
| 408 | | AHG000001463-AHG000001466 | | Email from G. Uzzi to L. Nashelsky., et al, att Draft Settlement Proposal | | | | | | | | Admitted Siegert 10/23, p. 201 |
| 411 | 3/20/2012 | RCUCCJSN11151922-RCUCCJSN11151956 | | UCC Estate Management Plan Update | | | | | | | | Admitted Fazio cross 10/22, p. 240 |
| 432 | 5/14/2012 | Docket No. 6-8 | | Term Sheet for Proposed Joint Chapter 11 Plan of Reorganization | | | | | | | | Admitted Siegert cross 10/23, p. 201 |
| 500 | 6/6/2008 | AFIJSN_0005280-AFIJSN_0005342 | | 8.5% Senior Secured Guaranteed Notes due 2010, Nos. A-1, A-2, A-3 and A-4 | Yes | Yes | | | | | | |
| 501 | 3/1/2008 | ALLY_0018074-ALLY_0018083 | | Schedule to the ISDA Master Agreement (amending and superceding Schedule dated as of May 1, 2007) | Yes | Yes | | | | | | |
| 502 | 7/1/2008 | ALLY_0018237-ALLY_0018244 | | Schedule to the ISDA Master Agreement (amending and superceding Schedule dated as of May 1, 2007) | Yes | Yes | | | | | | |
| 503 | 12/15/2004 | ALLY_0018253-ALLY_0018274 | | Master Mortgage Loan Purchase and Sale Agreement: Residential Mortgage Loans and Home Equity Loans/Lines of Credit, between GMAC Bank and GMAC Mortgage LLC | Yes | Yes | | | | | | |
| 504 | 10/1/2004 | ALLY_0041583-ALLY_0041600 | | ISDA Master Agreement between GMAC Mortgage Corporation and GMAC Bank | Yes | Yes | | | | | | |
| 505 | Removed | Removed | | Removed | | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
| 506 | 5/20/2009 | ALLY_0057715-ALLY_0057719 | | UCC Financing Statement Amendment Releasing Certain Collateral, Amendment # 2009 1611497 | Yes | Yes | | | | | | |
| 507 | 5/20/2009 | ALLY_0057728-ALLY_0057731 | | UCC Financing Statement Amendment Releasing Certain Collateral, Amendment # 2009 1611562 | Yes | Yes | | | | | | |
| 508 | 12/30/2009 | ALLY_0071285-ALLY_0071331 | | Amended and Restated Pledge and Security Agreement and Irrevocable Proxy, among RFC Asset Holdings II, LLC; Passive Asset Transactions, LLC; Residential Capital, LLC; Residential Funding Company, LLC; GMAC Mortgage, LLC; Equity Investment, LLC; GMAC Investment Management LLC; and GMAC Inc. | Yes | Yes | | | | | | |
| 509 | 10/5/2009 | ALLY_0115241-ALLY_0115243 | | Minutes of a Special Meeting of the Board of GMAC Inc. | | Yes | H | | | | | |
| 510 | 6/24/2005 | ALLY_0140795-ALLY_0140808 | | 2005 Operating Agreement | Yes | Yes | | | | | | |
| 511 | 12/9/2008 | ALLY_0178787-ALLY_0178791 | | Agreement for the Allocation of Income Taxes | Yes | Yes | | | | | | |
| 512 | 7/12/2010 | ALLY_0207447 | | Email from J. Young to T. Marano and S. Abreu re ResCap Tax Attributes | | Yes | H | | | | | |
| 513 | 5/12/2006 | ALLY_0401600-ALLY_0401603 | | Memo from D. Marple to E. Schenk | | Yes | H | | | | | |
| 514 | 10/15/2010 | ALLY_0424657-ALLY_0424658 | | Email from W. Marx to J. Mackey and J. Aretakis re High Priority-Tax Allocation Large Payment Possibly due ResCap October 30 | Yes | Yes | | | | | | |
| 515 | 10/18/2010 | ALLY_0424659 | | Email from W. Marx to J. Young and T. Hamzehpour re ResCap Tax Allocation Agreement | Yes | Yes | | | | | | |
| 516 | 12/21/2010 | ALLY_0424667-ALLY_0424669 | Young Interview Ex. 18 | Email from W. Marx to J. Aretakis and J. Frucci re ResCap Tax Allocation Agreement | Yes | Yes | | | | | | |
| 517 | 1/28/2009 | ALLY_PEO_0093197-ALLY_PEO_0093261 | | BPL For Financial Institutions Policy | | Yes | R | | | | | |
| 518 | 12/15/2011 | ALLY_PEO_0093898-ALLY_PEO_0093928 | | Allied World Assurance: Side 'A' Directors & Officers Excess and Lead Difference-In-Conditions Insurance Policy No. C012138/004 | | Yes | R | | | | | |
| 519 | 12/15/2011 | ALLY_PEO_0093929-ALLY_PEO_0093937 | | Allied World Assurance: Apex Policy No. C006451/006 | | Yes | R | | | | | |
| 520 | 12/15/2011 | ALLY_PEO_0093938-ALLY_PEO_0093968 | | Chartis: Executive Liability Value Proposition and Excess Insurance Policy No. 01-420-29-34 | | Yes | R | | | | | |
| 521 | 12/15/2011 | ALLY_PEO_0093969-ALLY_PEO_0093975 | | Axis Insurance Company: Excess Policy No. MNN 756715/01/2011 | | Yes | R | | | | | |
| 522 | 12/15/2011 | ALLY_PEO_0093976-ALLY_PEO_0093988 | | Chartis Excess Limited: Excess Financial Lines Insurance Policy No. 28330162 | | Yes | R | | | | | |
| 523 | 12/15/2011 | ALLY_PEO_0093989-ALLY_PEO_0093998 | | Chartis Excess Limited: Excess Financial Lines Insurance Policy No. 28330161 | | Yes | R | | | | | |
| 524 | 12/15/2011 | ALLY_PEO_0093999-ALLY_PEO_0094062 | | Chubb: Fiduciary Liability Policy No. 8207-6453 | | Yes | R | | | | | |
| 525 | 12/15/2011 | ALLY_PEO_0094063-ALLY_PEO_0094146 | | Chubb: DFI Primary Professional Liability Policy No. 8207-6455 | | Yes | R | | | | | |
| 526 | 12/15/2011 | ALLY_PEO_0094147-ALLY_PEO_0094165 | | Everest National Insurance: Excess Liability Policy No. FL5EA00002-111 | | Yes | R | | | | | |
| 527 | 12/15/2011 | ALLY_PEO_0094166-ALLY_PEO_0094189 | | The Hartford: Universal Excess Simplified Policy No. 00 DA 0272515-11 | | Yes | R | | | | | |
| 528 | 12/15/2011 | ALLY_PEO_0094190-ALLY_PEO_0094198 | | Ironshore Indemnity: Excess Liability Insurance Policy No. 000050103 | | Yes | R | | | | | |
| 529 | 12/15/2011 | ALLY_PEO_0094199-ALLY_PEO_0094204 | | Iron-Starr Excess Agency: Excess Follow Form Liability Policy No. ISF0000783 | | Yes | R | | | | | |
| 530 | 12/15/2011 | ALLY_PEO_0094205-ALLY_PEO_0094219 | | CNA: Excess Insurance Policy No. 287384587 | | Yes | R | | | | | |

12-12020-mg   Doc 5716   Filed 11/12/13   Entered 11/12/13 23:19:47   Pg 195 of
264
Plaintiffs and Plan Proponents' Exhibits to and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
| 531 | 12/15/2011 | ALLY_PEO_0094220-ALLY_PEO_0094233 | | Torus US Intermediaries: State National Insurance Company Excess Side A Directors & Officers Liability Insurance Policy No. TVS 45259A111ASP | Yes | R | | | | | | |
| 532 | 12/15/2011 | ALLY_PEO_0094234-ALLY_PEO_0094252 | | Travelers: Excess Policy No. EC09004443 | Yes | R | | | | | | |
| 533 | 12/15/2011 | ALLY_PEO_0094253-ALLY_PEO_0094273 | | Zigex: Financial Institutions Excess Insurance Policy No. DOC-6726360-01 | Yes | R | | | | | | |
| 534 | 12/15/2011 | ALLY_PEO_0094274-ALLY_PEO_0094293 | | Liberty International Underwriters: Management Liability and Professional Liability Follow Form Excess Policy No. 204183-211 | Yes | R | | | | | | |
| 535 | 12/15/2011 | ALLY_PEO_0094294-ALLY_PEO_0094304 | | RSUI: Excess Liability Policy No. HS644283 | Yes | R | | | | | | |
| 536 | 12/15/2011 | ALLY_PEO_0094305-ALLY_PEO_0094325 | | Starr Indemnity & Liability: Excess Insurance Following Form Policy No. SISIXFL21011711 | Yes | R | | | | | | |
| 537 | 12/15/2011 | ALLY_PEO_0094326-ALLY_PEO_0094346 | | Ace USA: Excess Directors & Officers and Fiduciary Liability Policy No. DOX G23651257 006 | Yes | R | | | | | | |
| 538 | 12/15/2011 | ALLY_PEO_0094347-ALLY_PEO_0094357 | | Arch Insurance: Essential Excess Policy No. DOX0019002-005 | Yes | R | | | | | | |
| 539 | 12/15/2011 | ALLY_PEO_0094358-ALLY_PEO_0094371 | | Alterra: Excess Liability Insurance Policy No. 73567-4741-PLFF-2011 | Yes | R | | | | | | |
| 540 | 12/15/2011 | ALLY_PEO_0094372-ALLY_PEO_0094389 | | Alterra: Excess Liability Insurance Policy No. 73672-4743-PLFF-2011 | Yes | R | | | | | | |
| 541 | 3/15/2013 | ALLY_PEO_0094390-ALLY_PEO_0094393 | | Ally's 2011-2013 Management Liability Insurance Coverages | Yes | R | | | | | | |
| 542 | 8/21/2012 | ALLY_PEO_0094394-ALLY_PEO_0094410 | | Ally Financial Annual Corporate Insurance Review with Board of Directors | Yes | H, R | | | | | | |
| 543 | 12/15/2011 | ALLY_PEO_0094411-ALLY_PEO_0094420 | | U.S. Specialty Insurance: Excess Indemnity Policy No. 24-MGU-11-A25533 | Yes | R | | | | | | |
| 544 | 12/15/2011 | ALLY_PEO_0094421-ALLY_PEO_0094433 | | U.S. Specialty Insurance: Excess Indemnity Policy No. 24-MGU-11-A25534 | Yes | R | | | | | | |
| 545 | | ALLY_PEO_0094434-ALLY_PEO_0094434 | | 2012 Ally Securities Transactions Spreadsheet | Yes | F, R | | | | | | |
| 546 | | ALLY_PEO_0094435-ALLY_PEO_0094435 | | Loan Level Information Spreadsheet | Yes | F, R | | | | | | |
| 547 | | ALLY_PEO_0094448-ALLY_PEO_0094471 | | Correspondence with insurers regarding Allstate PLS Litigation | Yes | H, R | | | | | | |
| 548 | | ALLY_PEO_0094472-ALLY_PEO_0094497 | | Correspondence with insurance regarding Cambridge Place PLS Litigation | Yes | H, R | | | | | | |
| 549 | | ALLY_PEO_0094498-ALLY_PEO_0094576 | | Correspondence with insurance regarding FHFA PLS Litigation | Yes | H, R | | | | | | |
| 550 | | ALLY_PEO_0094577-ALLY_PEO_0094593 | | Correspondence with insurers regarding FHLB of Chicago PLS Litigation | Yes | H, R | | | | | | |
| 551 | | ALLY_PEO_0094594-ALLY_PEO_0094612 | | Correspondence with insurers regarding FHLB of Boston PLS Litigation | Yes | H, R | | | | | | |
| 552 | | ALLY_PEO_0094613-ALLY_PEO_0094622 | | Correspondence with insurers regarding Huntington Bancshares PLS Litigation | Yes | H, R | | | | | | |
| 553 | | ALLY_PEO_0094623-ALLY_PEO_0094669 | | Correspondence with insurers regarding Mass Mutual PLS Litigation | Yes | H, R | | | | | | |
| 554 | | ALLY_PEO_0094670-ALLY_PEO_0094724 | | Correspondence with insurers regarding NCUA PLS Litigation | Yes | H, R | | | | | | |
| 555 | | ALLY_PEO_0094725-ALLY_PEO_0094734 | | Correspondence with insurers regarding NCUA PLS Litigation | Yes | H, R | | | | | | |
| 556 | | ALLY_PEO_0094735-ALLY_PEO_0094787 | | Correspondence with insurers regarding NJ Carpenters PLS Litigation | Yes | H, R | | | | | | |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 557 | | ALLY_PEO_0094788-ALLY_PEO_0094801 | | Correspondence with insurers regarding Stichting PLS Litigation | | Yes | H, R | | | | | |
| 558 | | ALLY_PEO_0094802-ALLY_PEO_0094821 | | Correspondence with insurers regarding Thrivent Financial PLS Litigation | | Yes | H, R | | | | | |
| 559 | | ALLY_PEO_0094822-ALLY_PEO_0094883 | | Correspondence with insurers regarding Union Central PLS Litigation | | Yes | H, R | | | | | |
| 560 | | ALLY_PEO_0094884-ALLY_PEO_0094900 | | Correspondence with insurers regarding West Virginia Investment PLS Litigation | | Yes | H, R | | | | | |
| 561 | | ALLY_PEO_0094901-ALLY_PEO_0094958 | | Correspondence with insurers regarding Western & Southern PLS Litigation | | Yes | H, R | | | | | |
| 562 | | ALLY_PEO_0094959-ALLY_PEO_0094981 | | Correspondence with insurers regarding CBNV Communications | | Yes | H, R | | | | | |
| 563 | | ALLY_PEO_0094982-ALLY_PEO_0095054 | | Correspondence with insurers regarding Mitchell Communications | | Yes | H, R | | | | | |
| 564 | | ALLY_PEO_0095055-ALLY_PEO_0095119 | | Correspondence with insurers regarding Mitchell Communications | | Yes | H, R | | | | | |
| 565 | | ALLY_PEO_0095120-ALLY_PEO_0095130 | | Correspondence with insurers regarding FGIC Representation & Warranty Claims | | Yes | H, R | | | | | |
| 566 | | ALLY_PEO_0095131-ALLY_PEO_0095138 | | Correspondence with insurers regarding FGIC Representation & Warranty Claims | | Yes | H, R | | | | | |
| 567 | | ALLY_PEO_0095139-ALLY_PEO_0095147 | | Correspondence with insurers regarding FGIC Representation & Warranty Claims | | Yes | H, R | | | | | |
| 568 | | ALLY_PEO_0095148-ALLY_PEO_0095171 | | Correspondence with insurers regarding FGIC Representation & Warranty Claims | | Yes | H, R | | | | | |
| 569 | | ALLY_PEO_0095172-ALLY_PEO_0095211 | | Correspondence with insurers regarding MBIA Representation & Warranty Claims | | Yes | H, R | | | | | |
| 570 | | ALLY_PEO_0095212-ALLY_PEO_0095215 | | Correspondence with insurers regarding Weaver-Simmons | | Yes | H, R | | | | | |
| 571 | 9/13/2011 | ALLY_PEO_0095216-ALLY_PEO_0095218 | | Chubb Specialty Insurance: DFI Primary Professional Liability Policy No. 8207-6455 Endorsement No. 38 | | Yes | R | | | | | |
| 572 | 7/10/2012 | DK_0000005 | DK19 | Email from C. Bastable of Davidson Kempner to himself re intercompany balances | | Yes | F, H | | | | | |
| 573 | 5/20/2009 | Docket No. 8-7; ALLY_0057715 – ALLY_0057719, ALLY_0057728 – ALLY_0057731, ALLY_0057631 – ALLY_0057704 | | UCC Financing Statement Amendments for Residential Funding Company, LLC and GMAC Mortgage, LLC & Partial Release of Capital (13-01343 Proceedings) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 574 | 7/1/2008 | EXAM00000111-EXAM00000126 | | Master Mortgage Loan Purchase and Sale Agreement: Residential Mortgage Loans and Home Equity Loans/Lines of Credit, between GMAC Bank and GMAC Mortgage LLC | Yes | Yes | | | | | | |
| 575 | 6/1/2009 | EXAM00107022-EXAM00107029 | | Intercompany Advance Agreement, between Residential Capital, LLC, as borrower, and RAHI, as lender ("RAHI Intercompany Advance Agreement") | Yes | Yes | | | | | | |
| 576 | 6/30/2006 | EXAM00107030-EXAM00107035 | | Amended and Restated Intercompany Advance Agreement, between Homecomings, as borrower, and RFC, as lender | Yes | Yes | | | | | | |
| 577 | 1/1/2006 | EXAM00107037-EXAM00107041 | | ResCap Restated Loan Agreement, dated January 1, 2006, among ResCap, as lender, and GMAC Residential Holding Corp. ("GMAC Residential"), GMAC Mortgage, and RFC, as borrowers (the "ResCap Restated Loan Agreement") | Yes | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
| 578 | 6/1/2009 | EXAM00107300-EXAM00107307 | | Intercompany Advance Agreement (Passive Asset Transactions, LLC), dated June 1, 2009, between ResCap, as borrower, and Passive Asset Transactions, LLC ("PATI"), as lender ("PATI Intercompany Advance Agreement") | Yes | Yes | | | | | | |
| 579 | 2/16/2011 | EXAM00110299-EXAM00110300 | | Joinder Agreement among AFI, ETS, RFC and GMAC Mortgage | Yes | Yes | | | | | | |
| 580 | | EXAM00111595-EXAM00111621 | | GSAP Facility Agreement ( the nonrecourse servicing advance facility under which the Debtors funded advances for specified PLS Trusts prepetition) | | Yes | R | | | | | |
| 581 | | EXAM00111670-EXAM00111677 | | GSAP Facility Agreement ( the nonrecourse servicing advance facility under which the Debtors funded advances for specified PLS Trusts prepetition) | | Yes | R | | | | | |
| 582 | | EXAM00111678-EXAM00111686 | | GSAP Facility Agreement ( the nonrecourse servicing advance facility under which the Debtors funded advances for specified PLS Trusts prepetition) | | Yes | R | | | | | |
| 583 | | EXAM00111687-EXAM00111947 | | GSAP Facility Agreement ( the nonrecourse servicing advance facility under which the Debtors funded advances for specified PLS Trusts prepetition) | | Yes | R | | | | | |
| 584 | | EXAM00112169-EXAM00112179 | | GSAP Facility Agreement ( the nonrecourse servicing advance facility under which the Debtors funded advances for specified PLS Trusts prepetition) | | Yes | R | | | | | |
| 585 | 12/31/2010 | EXAM00123277-EXAM00123336 | Westman 27 | Residential Funding Company, LLC's Consolidated Financial Statements for the Years Ended December 31, 2010 and 2009 | Yes | Yes | | | | | | |
| 586 | | EXAM00124578-EXAM00124669 | | GMAC Mortgage, LLC's Consolidated Financial Statements for the Years Ended December 31, 2009 and 2008 | Yes | Yes | | | | | | |
| 587 | 12/31/2009 | EXAM00124670-EXAM00124749 | | Residential Funding Company, LLC's Consolidated Financial Statements for the Years Ended December 31, 2009 and 2008 | Yes | Yes | | | | | | |
| 588 | 8/18/2009 | EXAM00124750-EXAM00124987 | | Residential Capital, LLC's 10-K/A for the period ending December 21, 2008, filed with the S.E.C. on August 18, 2009, and signed on August 25, 2009 | Yes | Yes | | | | | | |
| 589 | 11/27/2006 | EXAM00295603-EXAM00295614 | | Amended and Restated Operating Agreement, by and between General Motors Corporation, GMAC LLC and ResCap | Yes | Yes | | | | | | |
| 590 | 3/31/2008 | EXAM00295633-EXAM00295652 | | Amended and Restated Limited Liability Company Agreement of Residential Capital, LLC | | Yes | R | | | | | |
| 591 | 4/4/2013 | EXAM00345894-EXAM00345905 | | Presentation: ResCap – Intercompany Transactions | Yes | Yes | | | | | | |
| 592 | 8/27/2008 | EXAM10277434-EXAM10277446 | | Residential Capital, LLC  Delegation of Authority | | Yes | H, R | | | | | |
| 593 | 3/26/2010 | EXAM10362088-EXAM10362154 | | Email from B. Westman with attachments | Yes | Yes | | | | | | |
| 594 | 11/12/2009 | EXAM10362091-EXAM10362095 | | RFC Written Consent in Lieu of Meeting of Board of Directors | Yes | Yes | | | | | | |
| 595 | 12/10/2009 | EXAM10362096-EXAM10362099 | | GMAC Mortgage Written Consent in Lieu of Meeting of Board of Directors | Yes | Yes | | | | | | |
| 596 | 4/20/2006 | EXAM11248642-EXAM11248647 | | Marple Memorandum | | Yes | H | | | | | |
| 597 | 4/2/2006 | EXAM11265206-EXAM11265211 | | E-mail from D. Appelgate to S. Khattri | | Yes | H, C | | | | | |
| 598 | 3/2/2006 | EXAM11740350-EXAM11740351 | | E-mail from D. Appelgate to R. Hall | | Yes | H, C | | | | | |
| 599 | 10/29/2009 | EXAM12005261-EXAM12005262 | | Written Consent of the Executive Committee of the Board of Directors of Residential Capital, LLC | | Yes | H | | | | | |
| 600 | | EXAM12005521-EXAM12005601 | | Residential Funding Company, LLC's Consolidated Financial Statements for the Years Ended December 31, 2008 and 2007 | Yes | Yes | | | | | | |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 601 | 7/28/2010 | EXAM12027113-EXAM12027114 | | Memorandum from B. Westman and C. Dondzila | | Yes | H, C | | | | | |
| 602 | 11/6/2009 | EXAM12210531 | | Email from J. Young to J. Bazella | | Yes | H | | | | | |
| 603 | | EXAM12253847 – EXAM12253858 | | Consent Order | | Yes | R | | | | | |
| 604 | 2/7/2012 | EXAM12263346-EXAM12263347 | | Email from B. Westman to Cathy Dondzila with attachment | | Yes | H | | | | | |
| 605 | 6/25/2009 | EXAM12302924-EXAM12302927 | | Memorandum from Jim Young | | Yes | H | | | | | |
| 606 | 1/19/2011 | EXAM12360535 | | Email from C. Dondzila to W. Marx and J. Young re Mortgage Tax Allocation Agreements | Yes | Yes | | | | | | |
| 607 | 12/23/2009 | EXAM12370795 | | Accounting for Income Taxes Draft 12/23/2009 | | Yes | H, C | | | | | |
| 608 | 3/22/2012 | EXAM12412896-EXAM12412898 | Westman 32 | Email from C. Dondzila to B. Westman with attachment | Yes | Yes | | | | | | |
| 609 | 12/30/2009 | EXAM20145314-EXAM20145439 | | Amended and Restated Third Priority Pledge and Security Agreement and Irrevocable Proxy among Residential Capital, LLC, U.S. Bank National Association and Wells Fargo Bank, N.A. (the "Amended and Restated JSN Pledge Agreement) | Yes | Yes | | | | | | |
| 610 | 10/6/2011 | EXAM30120867-EXAM30120936 | | Complaint in *Thrivent Financial for Lutherans, et al., v. Residential Funding Company, LLC, et al.,* No. 27-CV-11-5830 | | Yes | H, R, | | | | | |
| 611 | 5/10/2006 | JACOB.000010-JACOB.000011 | | E-mail from S. Schenk to D. Marple | | Yes | H, R | | | | | |
| 612 | | Marathon_0000351 | | Marathon recovery analysis | | Yes | R | | | | | |
| 613 | 7/5/2012 | Pentwater_0001860 | | Email from A. Kaz to B. Eynon re July 5, 2012 Letter from M. Brodsky | | Yes | R | | | | | |
| 614 | 6/29/2006 | RC_FGIC9019_00013751-RC_FGIC9019_00013771 | | Custodial Agreement, by and between JPMorgan Chase Bank, National Association, GMAC Mortgage and Ally Bank | | Yes | R | | | | | |
| 615 | 6/14/2013 | RC_FGIC9019_00034890-RC_FGIC9019_00034891 | | June 14, 2013 Board of Directors Meeting Minutes [approving Supp. Term Sheet] | | Yes | H | | | | | |
| 616 | 4/1/2011 | RC00027879-RC00027891 | | Amended and Restated Schedule to the 2002 ISDA Master Agreement, dated as of April 1, 2011, between Ally Bank and GMAC Mortgage LLC | Yes | Yes | | | | | | |
| 617 | 4/1/2011 | RC00027962-RC00027989 | | ISDA 2002 Master Agreement, dated April 1, 2011 | Yes | Yes | | | | | | |
| 618 | 11/20/2008 | RC00030534-RC00030550 | | Broker Agreement between GMAC Bank, GMAC Mortgage LLC, and Ditech LLC | Yes | Yes | | | | | | |
| 619 | 2/23/2012 | RC00076419-RC00076443 | | CT Corporation System Search Report for Equity Investment I, LLC, UCC and Federal Tax Liens, Delaware | | Yes | R, F | | | | | |
| 620 | 4/23/2007 | RC20211307-RC20211337 | | Residential Funding Mortgage Securities II, Inc. Home Equity Loan Pass-Through Certificates, Series 2007-HSA2 Underwriting Agreement | Yes | Yes | | | | | | |
| 621 | 12/29/2010 | RC40000118-RC40000137 | | Ally Accounting Policy 1040  Intercompany Accounting | Yes | Yes | | | | | | |
| 622 | 11/20/2006 | RC40008925-RC40008953 | | Walker Report | | Yes | H, F, C | | | | | |
| 623 | 8/6/2010 | RC40016379-RC40016384 | | Exhibit A: Amended and Restated Agreement for the Allocation of United States Federal Income Taxes | Yes | Yes | | | | | | |
| 624 | 12/22/2010 | RC40018857-RC40018863 | | Minutes of a Special Meeting of the Board of Residential Capital, LLC | | Yes | H | | | | | |
| 625 | 3/20/2012 | RC40019169-RC40019173 | | Minutes of the Residential Capital, LLC Audit Committee meetings held on March 20, 2012 and March 21, 2012 | | Yes | H | | | | | |
| 626 | 3/19/2012 | RC40022044-RC40022122 | Dondzila Ex. 18 | Residential Capital, LLC Audit Committee Meeting invitation and materials | Yes | Yes | | | | | | |
| 627 | 1/31/2013 | RCJSNII00000014 | | Native Excel (01-2013 GMACM Covenants.xls) | | Yes | F, H | | | | | |
| 628 | 1/13/2010 | RCJSNII00000015-RCJSNII00000017 | | GMAC Mortgage, LLC-Written Consent In Lieu of Meeting of Board of Directors | | Yes | H | | | | | |
| 629 | 1/31/2013 | RCJSNII00000037 | | Native Excel (2013-01 RFC Covenants.xls) | | Yes | F, H | | | | | |
| 630 | 1/31/2013 | RCJSNII00000121 | | Native Excel (ResCap CTNW January 2013.xls) | | Yes | F, H | | | | | |
| 631 | | RCJSNII00000125-RCJSNII00000191 | | Share Sale Agreement | Yes | Yes | | | | | | |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 632 | 2/29/2012 | RCJSNII00003625 | | Excel worksheet entitled "Copy of Intercompany Relationships 02-29-12 V2 | | Yes | F, C, H | | | | | |
| 633 | 4/2/2013 | RCJSNII00025738-RCJSNII00025745 | | Email from B. Westman with attachment | | Yes | F, C, H | | | | | |
| 634 | | RCJSNII00026038 | | HUD Net Worth Adjustments | | Yes | F, H | | | | | |
| 635 | 11/12/2009 | RCJSNII10005644-RCJSNII10005646 | | GMAC Mortgage, LLC-Written Consent In Lieu of Meeting of Board of Directors | | Yes | H | | | | | |
| 636 | 5/21/2010 | RCJSNII10119754-RCJSNII10119856 | | Ally Financial Inc. Amended and Restated Certificate of Incorporation | Yes | Yes | | | | | | |
| 637 | 5/21/2010 | RCJSNII10121553-RCJSNII10121637 | | Ally Financial Inc. Amended and Restated Certificate of Incorporation | Yes | Yes | | | | | | |
| 638 | 11/28/2011 | RCJSNII10131858-RCJSNII10131878 | | Ally General Intercompany Accounting Policy | Yes | Yes | | | | | | |
| 639 | 10/2/2013 | RCPC00064332-RCPC00064340 | | Stipulation with National Credit Union Administration Board Regarding Allowed Claims | | Yes | R | | | | | |
| 640 | 6/27/2004 | RCPC00064695-RCPC00064931 | | [Sample RMBS Transaction Documents] GMACM Mortage Loan Trust 2004-AR2: Pooling & Servicing Agreement between Residential Asset Mortgage Products, Inc., GMAC Mortage Corporation, and JPMorgan Chase Bank | | Yes | R | | | | | |
| 641 | 6/29/2004 | RC00058604-RC00058618 | | [Sample RMBS Transaction Documents] RALI 2004-QA2: Assignment and Assumption agreement between Residential Funding Corporation, a Delaware corporation ("RFC"), and Residential Accredit Loans, Inc. | | Yes | R | | | | | |
| 642 | 4/1/2004 | RCPC00062623-RCPC00062900 | | [Sample RMBS Transaction Documents] RALI 2004-QA2: Pooling & Servicing Agreement between Residential Accredit Loans, Inc., Residential Funding Corporation, and Deutsche Bank Trust Company Americas | | Yes | R | | | | | |
| 643 | 8/6/2004 | RC00059234-RC00059245 | | [Sample RMBS Transaction Documents] RAMP 2004-SP2: Assignment and Assumption Agreement between Residential Funding Corporation, a Delaware corporation and Residential Asset Mortgage Products, Inc. | | Yes | R | | | | | |
| 644 | 7/1/2004 | RCPC00062901-RCPC00063043 | | [Sample RMBS Transaction Documents] RAMP 2004-SP2: Pooling & Servicing Agreement between Residential Asset Mortgage Products, Inc., Residential Funding Corporation, and JP Morgan Chase Bank | | Yes | R | | | | | |
| 645 | 4/27/2007 | RC00065243-RC00065283 | | [Sample RMBS Transaction Documents] RASC 2007-KS4: Assignment and Assumption Agreement between Residential Funding Corporation, and Residential Asset Securities Corporation | | Yes | R | | | | | |
| 646 | 4/1/2007 | EXAM10228354-EXAM10228504 | | [Sample RMBS Transaction Documents] RASC 2007-KS4: Pooling & Servicing Agreement between Residential Asset Securities Corporation, Residential Funding Corporation, and LaSalle Bank National Association | | Yes | R | | | | | |
| 647 | 6/29/2005 | RCPC00063044-RCPC00063124 | | [Sample RMBS Transaction Documents] RFMSII 2005-HI2: Indenture between Home Loan Trust 2005-HI2 and JP Morgan Chase Bank, N.A> | | Yes | R | | | | | |
| 648 | 10/20/2010 | RCPC00064609-RCPC00064694 | | Complaint filed in *Peel v. Residential Funding Company, LLC* , No. 30-2010-00348134, in the Superior Court for the State of California, Orange County | | Yes | H, R | | | | | |
| 649 | 9/28/2012 | RCPC00064932-RCPC00065025 | | First Amended Complaint filed in Landon Rothstein, individually and on behalf of all others similarly situated v. GMAC Mortgage, LLC, et al., No. 12-cv-3412 (S.D.N.Y. Apr. 30, 2012) | | Yes | H, R | | | | | |
| 650 | 4/30/2012 | RCPC00065026-RCPC00065069 | | Initial Complaint filed in Landon Rothstein, individually and on behalf of all others similarly situated v. GMAC Mortgage, LLC, et al., No. 12-cv-3412 (S.D.N.Y. Apr. 30, 2012) | | Yes | H, R | | | | | |
| 651 | 1/22/2013 | RCJSNII10114450-RCJSNII10114561 | | Second Amended Complaint filed in Landon Rothstein, individually and on behalf of all others similarly situated v. GMAC Mortgage, LLC, et al., No. 12-cv-3412 (S.D.N.Y. Apr. 30, 2012) | | Yes | H, R | | | | | |
| 652 | 10/24/2006 | ALLY_0255865-ALLY_0255881 | | Limited Liability Company Agreement of Residential Capital, LLC | | Yes | R | | | | | |

18

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 653 | 4/15/2011 | RCPC00037049-RCPC00037310 | | First Amended Complaint in *Allstate Insurance Company v. GMAC Mortgage, LLC* , No. 27-CV-11-3480 (4th Dist. Hennepin Cty. Minn. ) | | Yes | H, R | | | | | |
| 654 | 9/9/2011 | RCPC00037391-RCPC00037527 | | Amended Complaint in *The Western and Southern Life Insurance Company v. Residential Funding Company, LLC, et al.* , No. A 1105042 | | Yes | H, R | | | | | |
| 655 | 6/29/2011 | RCPC00037806-RCPC00037869 | | Complaint, *West Virginia Investment Management Board v. Residential Accredit Loans, Inc., et al.* , No. 10-C-412, Circuit Court of Kanawha County, West Virginia | | Yes | H, R | | | | | |
| 656 | 10/14/2011 | RCPC00037870-RCPC00038180 | | Amended Complaint and Jury Demand in *Cambridge Place Investment Management Inc. v. Morgan Stanley & Co., Inc .,* No. 10-2741-BLS1 (Sup. Ct. Mass.) | | Yes | H, R | | | | | |
| 657 | | RCPC00038181-RCPC00038461 | | Amended Complaint and Jury Demand in *Cambridge Place Investment Management Inc. v. Morgan Stanley & Co. , et al. ("CPIM II" ),* No. 11-00555 (Super Ct. Mass. February 11, 2011) | | Yes | H, R | | | | | |
| 658 | 4/20/2011 | RCPC00038498-RCPC00038875 | | Complaint for Rescission and Damages and Demand for Jury Trial in *Federal Home Loan Bank of Boston v. Ally Financial, Inc.* , No. 11-15333 | | Yes | H, R | | | | | |
| 659 | 4/8/2011 | RCPC00039065-RCPC00039380 | | Corrected Amended Complaint for Rescission and Damages in *Federal Home Loan Bank of Chicago v. Banc of America Funding Corp* ., No. 10 CH 45033 | | Yes | H, R | | | | | |
| 660 | 7/14/2011 | RCPC00039381-RCPC00039791 | | Amended Complaint for Rescission and Damages in *Federal Home Loan Bank of Indianapolis v. Banc of America Mortgage Securities, Inc.* , No. 49 D05 10 10 PL 045071 | | Yes | H, R | | | | | |
| 661 | 10/19/2011 | RCPC00040259-RCPC00040356 | | Amended Summons and Amended Complaint, *Huntington Bancshares, Inc. v. Ally Financial Inc., et al.,* No. 27-CV-11-20276 | | Yes | H, R | | | | | |
| 662 | 2/9/2011 | RCPC00040370-RCPC00040449 | | Complaint in *Massachusetts Mutual Life Insurance Company v. Residential Funding Company, LLC* , No. 3:11-cv-30035-KPN | | Yes | H, R | | | | | |
| 663 | 10/11/2011 | RCPC00040593-RCPC00040709 | | Summons and Complaint in *Stichting Pensioenfonds ABP v. Ally Financial Inc., et al.,* No. 27-CV-11-20426 | | Yes | H, R | | | | | |
| 664 | 4/28/2011 | RCPC00041007-RCPC00041089 | | Complaint for Violations of the Federal Securities Laws and New York Common Law Fraud, Negligent Misrepresentation and Unjust Enrichment in *The Union Central Life Insurance Co. v. Credit Suisse First Boston Mortgage Securities Corp* ., No. 11-cv-02890-GBD-JCF | | Yes | H, R | | | | | |
| 665 | 5/10/2013 | RCPC00045519-RCPC00045599 | | Consolidated Third Amended Securities Class Action Complaint, *New Jersey Carpenters Health Fund, et al. v. RALI Series 2006-QO1 Trust, et al.* , No. 08-CV-08781-HB (S.D.N.Y.) | | Yes | H, R | | | | | |
| 666 | 7/12/2013 | RCPC00047058-RCPC00047070 | | Amendment of Consent Order, Before the Board of Governors of the Federal Reserve System, FDIC-11-123b | | Yes | R | | | | | |
| 667 | 6/12/2012 | RCPC00052806-RCPC00053162 | | Complaint, *Federal Housing Finance Agency v. Ally Financial, Inc., et al.* , No. 11-cv-7010 (DLC) (S.D.N.Y.) | | Yes | H, R | | | | | |
| 668 | 10/1/2012 | RCPC00053163-RCPC00053447 | | Complaint, *Sealink Funding Ltd. v. Royal Bank of Scotland , et al.* , No. 650484/2012 (New York Supreme Court February 21, 2012); | | Yes | H, R | | | | | |
| 669 | 2/9/2012 | RCPC00053448-RCPC00053775 | | DOJ/AG Settlement (settlement with the Department of Justice, the Department of Housing and Urban Development, and the attorneys general of 49 states, effective as of February 9, 2012) | | Yes | R | | | | | |
| 670 | 10/29/2012 | RCPC00053776-RCPC00053970 | | Complaint, *National Credit Union Administration Board v. Goldman Sachs & Co., et al.,* No. 2:11-cv-06521-GW-JEM (C.D. Cal. Aug. 9, 2011); | | Yes | H, R | | | | | |
| 671 | 6/20/2011 | RCPC00054296-RCPC00054477 | | Complaint, *National Credit Union Administration Board v. RBS Securities, Inc ., et al.* , No. 2:11-cv-02340-RDR-KGS (D. Kan. June 20, 2011). | | Yes | H, R | | | | | |
| 672 | | RCPC00061866-RCPC00062071 | | Consolidated Audit Guide for Audits of HUD Programs | Yes | Yes | | | | | | |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 673 | 11/5/2013 | RCPC00062420-RCPC00062421 | | Notice of Settling Parties' Joint Motion for Voluntary Dismissal with Prejudice and "Bar Order", FHFA v. Ally Financial Inc., No. 11-cv-7010 (DLC) (S.D.N.Y.) [Document 723] | | Yes | H, R | | | | | |
| 674 | 11/5/2013 | RCPC00062422-RCPC00062428 | | [Proposed] Order of Voluntary Dismissal with Prejudice and Bar Order, FHFA v. Ally Financial Inc., No. 11-cv-7010 (DLC) (S.D.N.Y.) [Document 723-1] | | Yes | H, R | | | | | |
| 675 | 10/16/2013 | RCPC00062541-RCPC00062547 | | Stipulation with West Virginia Investment Management Board Regarding Allowed Claims | | Yes | H, R | | | | | |
| 676 | 6/14/2013 | RCPC00062570-RCPC00062611 | | Stipulation and Agreement of Settlement with Certain Defendants, New Jersey Carpenters Health Fund, et al. v. RALI Series 2006-QO1 Trust, et al., No. 08-CV-08781-HB (S.D.N.Y.) | | Yes | H | | | | | |
| 677 | 10/7/2013 | RCPC00062612-RCPC00062620 | | Order and Final Judgment, New Jersey Carpenters Health Fund, et al. v. RALI Series 2006-QO1 Trust, et al., No. 08-CV-08781-HB (S.D.N.Y.) | | Yes | R | | | | | |
| 678 | 6/11/2013 | RCPC00062621-RCPC00062622 | | Borrower Request Letter for Claim No. 5420 | | Yes | H, R | | | | | |
| 679 | 6/6/2008 | RCUCCJSN000000287-RCUCCJSN00000311 | | UCC Financing Statement | Yes | Yes | | | | | | |
| 680 | 6/6/2008 | RCUCCJSN00000297-RCUCCJSN00000299 | | UCC Financing Statement, Initial Filing No. 2008 1954724 | Yes | Yes | | | | | | |
| 681 | 5/12/2012 | RCUCCJSN00030215 | | Native Excel (Debt Forgiveness Summary_2008-May 13 2012_Distribution.xls) | Yes | Yes | | | | | | |
| 682 | 10/7/2009 | RCUCCJSN10912152-RCUCCJSN10912155 | | Email from D. Schaeffer with attachment | | Yes | H, R | | | | | |
| 683 | 10/29/2010 | RCUCCJSN10974267-RCUCCJSN10974268 | | Written Consent of the Executive Committee of the Board of Directors of Residential Capital, LLC | | Yes | H, R | | | | | |
| 684 | 6/6/2013 | RCUCCJSN11270924 | | Native excel (Debt Forgiveness Summary_20130606_1115_Presentation version.xls) | | Yes | H | | | | | |
| 685 | 12/10/2012 | RCUCCJSN11676165 | | Residential Capital, LLC-Certificate of Assistant Secretary | Yes | Yes | | | | | | |
| 686 | 8/6/2008 | RCUCCJSN11676166-RCUCCJSN11676168 | | Email from T. Mir to P. Berman | | Yes | H | | | | | |
| 687 | 6/3/2009 | RCUCCJSN11676839-RCUCCJSN11676841 | | Memorandum from J. Young | | Yes | H | | | | | |
| 688 | 6/25/2009 | RCUCCJSN11676842-RCUCCJSN11676843 | | Memorandum from J. Young re: Request for Action by the ResCap Executive Committee | | Yes | H | | | | | |
| 689 | 9/21/2009 | RCUCCJSN11676855-RCUCCJSN11676868 | | Written Consent of the Executive Committee of Residential Capital, LLC | | Yes | H | | | | | |
| 690 | 1/28/2010 | RCUCCJSN11676869-RCUCCJSN11676870 | | Written Consent of the Executive Committee of the Board of Directors of Residential Capital, LLC | | Yes | H | | | | | |
| 691 | 12/30/2009 | RCUCCJSN11676871-RCUCCJSN11676880 | | Unanimous Consent to Action | | Yes | H | | | | | |
| 692 | 12/11/2009 | RCUCCJSN11857407-RCUCCJSN11857408 | | Email from B. Westman to J. Bazella | | Yes | H | | | | | |
| 693 | 11/2/2011 | RCUCCJSN20062689-RCUCCJSN20062695 | | Memorandum from J. Whitlinger to ResCap Executive Committee | | Yes | H | | | | | |
| 694 | 1/1/2012 | RCUCCJSN20087196-RCUCCJSN20087214 | | Ally Accounting Policy 1075 Related Parties | | Yes | H | | | | | |
| 695 | 11/12/2009 | RCUCCJSN30002765-RCUCCJSN30002769 | | Residential Funding Company, LLC-Written Consent In Lieu of Meeting of Board of Directors | | Yes | H | | | | | |
| 696 | 5/12/2012 | SilverPoint_0000063-SilverPoint_0000064 | | Email from H. Hu to J. Forlizzi attaching SilverPoint recovery analysis | | Yes | F, H | | | | | |
| 697 | 3/20/2013 | AFIJSN_0124052-AFIJSN_0124053 | | Ally Financial / Residential Capital Tax Sharing Discussion | | Yes | H | | | | | |
| 698 | 2010 | ALLY_0018110-ALLY_0018117 | | Schedule to the ISDA Master Agreement (FMV) | Yes | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 699 | | ALLY_0018118-2010 ALLY_0018126 | | Schedule to the ISDA Master Agreement (Net Funding) | Yes | Yes | | | | | | |
| 700 | 6/12/2007 | ALLY_0041610-ALLY_0041627 | | 2007 MSR Swap ISDA | Yes | Yes | | | | | | |
| 701 | 4/1/2011 | ALLY_0041799-ALLY_00141807 | | 2011 MSR Swap Confirmation | Yes | Yes | | | | | | |
| 702 | 5/28/2009 | ALLY_0114978-ALLY_0114981 | | Minutes of a Special Meeting of the Board of GMAC LLC | | Yes | H | | | | | |
| 703 | 7/22/2008 | ALLY_0260216-ALLY_0260418 | | Ally Bank Board Materials | | Yes | H | | | | | |
| 704 | 6/22/2009 | ALLY_0351244-ALLY_0351257 | | E-mail from J.Ruhlin attaching presentation | | Yes | H | | | | | |
| 705 | | ALLY_0402366-ALLY_0402394 | | Fair Value Accounting Policy | Yes | Yes | | | | | | |
| 706 | 4/3/2013 | ALLY_0402447 | | Loan Information Revenue on Select Loans | Yes | Yes | | | | | | |
| 707 | 1/24/2011 | ALLY_0424649-ALLY_0424650 | | Email from T. Hamzehpour to W. Marx re Proposed Language | | Yes | H | | | | | |
| 708 | 11/2/2010 | ALLY_0424660-ALLY_0424664 | | Email from J. Mackey to W. Marx and J. Aretakis re ResCap Tax Allocation Agreement | Yes | Yes | | | | | | |
| 709 | 7/2/2008 | ALLY_PEO_0008380-ALLY_PEO_0008471 | | Ally Bank Board Materials | Yes | Yes | | | | | | |
| 710 | 3/10/2011 | ALLY_PEO_0042123-ALLY_PEO_0042130 | | E-mail attaching Ally Bank Overview Accounting for Mortgage Servicing Rights | Yes | Yes | | | | | | |
| 711 | 12/30/2009 | ALLY_PEO_0075648-ALLY_PEO_0075657 | | GMAC Board of Directors' Unanimous Consent to Action | | Yes | H | | | | | |
| 712 | 12/31/2008 | EXAM00234112-EXAM00234188 | | GMAC Mortgage, LLC's Consolidated Financial Statements for the Years Ended December 31, 2008 and 2007 | Yes | Yes | | | | | | |
| 713 | 11/27/2006 | EXAM10804520-EXAM10804532 | | Amended and Restated Operating Agreement | Yes | Yes | | | | | | |
| 714 | 12/30/2009 | EXAM10969005-EXAM10969007 | | Press Release, "GMAC Financial Services Announces Key Capital and Strategic Actions" | | Yes | H | | | | | |
| 715 | | EXAM11006372-EXAM11006386 | | Ally Financial Inc. Global Security Report | | Yes | H | | | | | |
| 716 | 2/10/2011 | EXAM11190197-EXAM11190208 | | E-mail attaching MSR Swap presentation | | Yes | H | | | | | |
| 717 | 12/22/2010 | EXAM11200636 | | Email from J. Young to W. Marx re Call | | Yes | H | | | | | |
| 718 | 10/18/2010 | EXAM20317195-EXAM20317196 | | Email from J. Young to J. Mackey re ResCap Tax Allocation Agreement | | Yes | C | | | | | |
| 719 | 3/6/2012 | RC_FGIC9019_00000009-RC_FGIC9019_00000106 | | Complaint, FGIC v. Ally Fin. Inc., et al, No. 12-cv-01658 (SDNY Mar. 6, 2012) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 720 | 1/13/2012 | RC_FGIC9019_00000107-RC_FGIC9019_00000185 | | Complaint, FGIC v. Ally Fin. Inc., et al, No. 12-cv-00338 (SDNY Jan. 13, 2012) [removed from NY Sup Ct. 653623-2011] | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 721 | 12/30/2011 | RC_FGIC9019_00000286-RC_FGIC9019_00000327 | | Complaint, FGIC v. Residential Funding Co. et al, No. 11-cv-09737 (SDNY Dec. 30, 2011) [removed from NY Sup Ct No. 653304-2011] | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 722 | 3/5/2012 | RC_FGIC9019_00000401-RC_FGIC9019_00000494 | | Complaint, FGIC v. Ally Fin. Inc., et al, No. 12-cv-01601 (SDNY Mar. 5, 2012) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 723 | 3/12/2012 | RC_FGIC9019_00000495-RC_FGIC9019_00000598 | | Complaint, FGIC v. Ally Fin. Inc., et al, No. 12-cv-01818 (SDNY Mar. 12, 2012) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 724 | 1/31/2012 | RC_FGIC9019_00000634-RC_FGIC9019_00000697 | | Complaint, FGIC v. Ally Fin. Inc., et al, No. 12-CIV-0780 (SDNY Jan. 31, 2012) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 725 | 3/30/2012 | RC_FGIC9019_00000704-RC_FGIC9019_00000803 | | Amended Complaint, FGIC v. Ally Fin. Inc., et al, 11-cv-09729 (SDNY Mar. 30, 2012) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 726 | 12/30/2011 | RC_FGIC9019_00000992-RC_FGIC9019_00001044 | | Complaint, FGIC v. Residential Funding Co. et al, No. 11-cv-09736 (SDNY Dec. 30, 2011) [removed from NY Sup Ct. 653303-2011] | Yes, for limited purpose (ILS) | Yes | | | | | | |

12-12020-mg    Doc 5716    Filed 11/12/13    Entered 11/12/13 23:19:47    Pg 203 of
264
Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Objections and Information Relating to Phase II** | | | **Objections and Information Relating to Phase I** | | | | |
| 727 | 1/13/2012 | RC_FGIC9019_00001465-RC_FGIC9019_00001537 | | Complaint, FGIC v. Ally Fin. Inc., et al, No. 12-cv-00339 (SDNY Jan. 13, 2012) [removed from NY Sup Ct. 653622-2011] | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 728 | 1/13/2012 | RC_FGIC9019_00001617-RC_FGIC9019_00001695 | | Complaint, FGIC v. Ally Fin. Inc., et al, No. 12-cv-00340 (SDNY Jan. 13, 2012) [removed from NY Sup Ct. 653621-2011] | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 729 | 1/13/2012 | RC_FGIC9019_00001756-RC_FGIC9019_00001822 | | Complaint, FGIC v. Ally Fin. Inc., et al, No. 12-cv-00341 (SDNY Jan. 13, 2012) [removed from NY Sup. Ct. 653493-2011] | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 730 | 3/13/2012 | RC_FGIC9019_00001876-RC_FGIC9019_00001973 | | Complaint, FGIC v. Ally Fin. Inc., et al, No. 12-cv-01860 (SDNY Mar. 13, 2012) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 731 | 8/31/2007 | RC00027822-RC00027828 | | Schedule to the ISDA Master Agreement (FMV) | Yes | Yes | | | | | | |
| 732 | 8/31/2007 | RC00027852-RC00027858 | | Schedule to the ISDA Master Agreement (Net Funding) | Yes | Yes | | | | | | |
| 733 | 8/6/2010 | RC40016374-RC40016378 | | Memorandum to Board of Residential Capital, LLC re Agreements for Allocation of Taxes | | Yes | H | | | | | |
| 734 | 8/6/2010 | RC40018819-RC40018823 | | Minutes of a Regular Meeting of the Board of Residential Capital, LLC | | Yes | H | | | | | |
| 735 | 8/6/2010 | RC40018819-RC40018823 | | Minutes of ResCap Board Meeting | | Yes | H | | | | | |
| 736 | 11/5/2010 | RC40018844-RC40018848 | | Minutes of a Special Meeting of the Board of Residential Capital, LLC | | Yes | H | | | | | |
| 737 | 9/1/2006 | RCPC00041568-RCPC00041636 | | [Sample RMBS Transaction Documents] GMACM 06-HE4 Insurance Agreement | | Yes | R | | | | | |
| 738 | 3/19/2010 | RCPC00054996-RCPC00055050 | | Amended Complaint, MBIA Ins. Corp. v. Residential Funding Co., 603552/2008 (N.Y. Sup. Ct.) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 739 | 4/1/2010 | RCPC00055051-RCPC00055111 | | Complaint, MBIA Ins. Corp. v. GMAC, 600837-2010 (N.Y. Sup. Ct.) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 740 | 9/17/2012 | RCPC00055163-RCPC00055221 | | Complaint, MBIA v. Ally, 27-CV-12-18889 (Minn. Dist. Ct.) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 741 | 5/11/2012 | RCPC00061655-RCPC00061699 | | Complaint, Assured Guar. Mun. Corp. v. GMAC Mortgage, 12 Civ. 3776 (JPO) (S.D.N.Y.) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 742 | 12/22/2009 | RCPC00062548-RCPC00062552 | | Order on Motion to Dismiss, MBIA Ins. Corp. v. GMAC, 914 N.Y.S.2d 604 (N.Y. Sup. Ct.) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 743 | 12/22/2009 | RCPC00062553-RCPC00062558 | | Order on Motion to Dismiss, MBIA Ins. Corp. v. Residential Funding Co., 906 N.Y.S.2d 781 (N.Y. Sup. Ct.) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 744 | 11/9/2010 | RCPC00062559-RCPC00062563 | | Order on Motion to Dismiss in MBIA Ins. Corp. v. Residential Funding Co., 603552-2008 (N.Y. Sup. Ct.) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 745 | 7/1/2009 | RCPC00065070-RCPC00065073 | | FASB Accounting Standards Codification 810-10-45 | | Yes | F | | | | | |
| 746 | 10/1/2012 | RCPC00065074-RCPC00065082 | | FASB Accounting Standards Codification 835-30-00 | | Yes | F | | | | | |
| 747 | 7/1/2009 | RCPC00065083-RCPC00065089 | | FASB Accounting Standards Codification 850-10-05 | | Yes | F | | | | | |
| 748 | 10/1/2012 | RCPC00065090-RCPC00065129 | | FASB Accounting Standards Codification 310-10-00 | | Yes | F | | | | | |
| 749 | 12/23/2009 | RCPC00065130-RCPC00065139 | | FASB Accounting Standards Codification 470-50-00 | | Yes | F | | | | | |
| 750 | 3/25/2009 | RCPC00065140-RCPC00065274 | | Edge Mortgage Advisory Corporation's Servicing Review--GMAC Servicing | | Yes | H | | | | | |
| 751 | 12/12/2007 | RCPC00065275-RCPC00065276 | | BusinessWire Article: Fitch Assigns Resi Servicer Ratings to Residential Capital LLC | | Yes | H | | | | | |
| 752 | 3/30/2006 | RCPC00065277 | | GMACM 2006-HE1 Closing Transcript Disc | | Yes | R | | | | | |
| 753 | 3/12/2007 | RCPC00065278 | | RASC 2007-EMX1 Closing Transcript Disc | | Yes | R | | | | | |
| 754 | | RCPC00065279-RCPC00065280 | | Chart of FGIC Claims Against Debtors and/or Ally Financial alleged in the FGIC RMBS Litigation | | Yes | F, H | | | | | |
| 755 | 5/6/2012 | AHG00004687-AHG00004723 | AHG 17/Siegert 8 | Email chain between R. Kielty and J. Lewis attaching Houlihan Presentation to Ad Hoc Group | Yes | Yes | | | | | | |
| 756 | 5/11/2012 | AHG2_00009538-AHG2_00009614 | AHG 9 | Email from B. Ilhardt to A. Leavitt attaching discussion materials for 3Q and 4Q 2011 and ResCap org chart | | Yes | H | | | | | |
| 757 | 5/9/2012 | AHG2_0009676-79 | AHG 16 | Email from M. Renzi to J. Lewis attaching ResCap assets chart | | Yes | H | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 758 | 5/8/2012 | AHG2_0009723-AHG2_0009724 | AHG 21 | Email from R. Snellenbarger to K. Chopra attaching Revised Secured Recovery Analysis | | Yes | H | | | | | |
| 759 | 6/26/2012 | DK_0000512-DH_0000515 | DK12/AHG 23 | Email from D. Prieto to AHG Members attaching June 26 Brodsky Letter | Yes | Yes | | | | | | |
| 760 | 7/5/2012 | DK_0000901-DK_0000903 | DK14/AHG 26 | Email from D. Prieto to AHG Members attaching July 5 Brodsky Letter | Yes | Yes | | | | | | |
| 801 | 2/19/2013 | Docket No. 1 | | Complaint in Residential Capital LLC v. Allstate Insurance Co., Adv. Case No. 13-01262 (MG) | | Yes | H, R | | | | | |
| 802 | 5/14/2012 | Docket No. 1 | | Complaint, Case No. 12-ap-01671 (MG) | | Yes | H | | | | | |
| 803 | 5/25/2012 | Docket No. 4 | | Motion to Extend Stay or for Injunctive Relief, Case No. 12-ap-01671 (MG) | | Yes | R, H | | | | | |
| 804 | 5/25/2012 | Docket No. 6 | | Declaration of Jeffrey A. Lipps in Residential Capital, LLC v. Allstate Ins. Co., Case No. 12-ap-1671 (MG) | | Yes | H | | | | | |
| 805 | 5/14/2012 | Docket No. 6-10 | | Prepetition Plan Support Agreement and RMBS Trust Settlement Agreement (Exhibit 10 to Whitlinger First Day Affidavit) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 806 | 5/14/2012 | Docket No. 6-8 | | Prepetition Plan Support Agreement with AFI (Exhibit 8 to Whitlinger First Day Affidavit) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 807 | 5/14/2012 | Docket No. 6-9 | | Prepetition Plan Support Agreement with certain Junior Secured Noteholders (Exhibit 9 to Whitlinger First Day Affidavit) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 808 | 4/2/2013 | Docket No. 26 | | Memorandum of Law in Support of Motion for Summary Judgment in Residential Capital LLC v. Allstate Insurance Co., Adv. Case No. 13-01262 (MG) | | Yes | H | | | | | |
| 809 | 7/6/2012 | Docket No. 59 | | Supplemental Declaration of Jeffrey A. Lipps in Residential Capital, LLC v. Allstate Ins. Co., Case No. 12-ap-1671 (MG) | | Yes | H | | | | | |
| 810 | 6/11/2012 | Docket No. 320 | | Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 811 | 6/11/2012 | Docket No. 320-8 | | Declaration of Frank Sillman | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 812 | 5/25/2012 | Docket No. 320-9 | | Declaration of Jeffrey A. Lipps | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 813 | | Docket No. 490 | | Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter Into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables and (B) to Obtain Post Petition Financing on a Secured Superpriority Basis and (II) Granting Related Relief | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 814 | 6/30/2012 | Docket No. 548–649 | | Schedules of Assets and Liabilities/Statements of Financial Affairs | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 815 | 6/30/2012 | Docket No. 586 | | Schedules of Assets and Liabilities for RFC Asset Holdings, II, LLC (Case No. 12-12065) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 816 | 7/3/2012 | Docket Nos. 683-688 | | Amended Schedules of Assets and Liabilites | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 817 | 7/13/2012 | Docket No. 774 | | Final Supplemental Order (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 818 | 7/19/2012 | Docket Nos. 834-848 | | Amended/Supplemental Statements of Financial Affairs | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Objections and Information Relating to Phase II** | | | **Objections and Information Relating to Phase I** | | | | |
| 819 | 8/7/2012 | Docket No. 1023 | | Debtors' Objection to Motion of the Federal Housing Finance Agency for Relief from the Automatic Stay | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 820 | 8/15/2012 | Docket No. 1176 | | Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 821 | 8/28/2012 | Docket No. 1295 | | Debtors' Supplemental Brief in Support of Its Objection to Motion of the Federal Housing Finance Agency for Relief from the Automatic Stay | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 822 | 10/19/2012 | Docket No. 1887 | | Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 823 | 9/28/2012 | Docket No. 1887-4 | | Supplemental Declaration of Jeffrey A. Lipps | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 824 | 10/19/2012 | Docket No. 1887-6 | | Supplemental Declaration of Frank Sillman | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 825 | 11/27/2012 | Docket No. 2284 | | Motion of AIG Asset Management (U.S.), LLC, the Allstate Entities, Massachusetts Mutual Life Insurance Company, and the Prudential Entities for an Order Under Bankruptcy Rule 3013 (i) Classifying RMBS Fraud Claims in the Same Class as the Securitization Trusts Claims for Purposes of any Chapter 11 Plan for the Debtors and (ii) Directing that Misrepresentation Claims Cannot Be Placed in a Plan Class That Will Be Subordinated Under Bankruptcy Code Section 510(b) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 826 | 11/28/2012 | Docket No. 2297 | | Limited Objection to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreement | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 827 | 11/29/2012 | Docket No. 2302 | | Lead Plaintiff's Limited Objection to Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 828 | 11/29/2012 | Docket No. 2304 | | Joinder of Union Central Life Insurance Company, Ameritas Life Insurance Corp., and Acacia Life Insurance Company to Lead Plaintiff's Limited Objection to Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 829 | 11/29/2012 | Docket No. 2306 | | Joinder of Cambridge Place Investment Management Inc. to Lead Plaintiff's Limited Objection to Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 830 | 11/29/2012 | Docket No. 2307 | | Response of AIG Asset Management (U.S.), LLC the Allstate Entities, Massachusetts Mutual Life Insurance Company, and the Prudential Entities to Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreement | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 831 | 11/29/2012 | Docket No. 2308 | | Objection to the Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 832 | 12/6/2012 | Docket No. 2357 | | Debtors' Motion for Appointment of a Mediator | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 833 | 12/11/2012 | Docket No. 2382-2389 | | Amended Statements of Financial Affairs | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 834 | | Docket No. 2511 | | Motion By Ally Financial Inc. and Ally Bank for an Order Enforcing the Automatic Stay Pursuant to 11 U.S.C. 362 (a)(3) By (1) Enjoining Prosecution of Alter Ego and Veil Piercing Claims in the Class Action Entitled Landon Rothstein Et Al. v GMAC Mortgage, LLC Et Al., and (2) Declaring Such Claims Void Ab Initio | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 835 | 12/26/2012 | Docket No. 2519 | | Order Appointing Mediator | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 836 | 2/1/2013 | Docket No. 2791 | | Objection of Assured Guaranty Municipal Corp. and Certain Affiliates to Debtors' Motion Pursuant to Bankruptcy Rule 9019 for Order Approving RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits to and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Objections and Information Relating to Phase II** | | | **Objections and Information Relating to Phase I** | | | | |
| 837 | 2/1/2013 | Docket No. 2803 | | Debtors' Reply Brief Re Iridium Factors in Support of Motion for Approval of RMBS Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 838 | 1/15/2013 | Docket No. 2805 | | Reply Declaration of Jeffrey A. Lipps | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 839 | 2/1/2013 | Docket No. 2807 | | Reply Declaration of Frank Sillman in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 840 | 2/1/2013 | Docket No. 2808 | | Steering Committee Investors' Consolidated Reply to the Objections to the RMBS Settlement Agreement | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 841 | 2/1/2013 | Docket No. 2810 | | Objection MBIA Insurance Corporation to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements; Hearing to be Held March 18, 2013 at 9:00 a.m. (ET) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 842 | 2/1/2013 | Docket No. 2814 | | Objection of Wilmington Trust, National Association to the Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements; Hearing to be Held March 18, 2013 | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 843 | 2/1/2013 | Docket No. 2819 | | Objection of Financial Guaranty Insurance Company to the Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 844 | 2/1/2013 | Docket No. 2824 | | Objection of the Ad Hoc Group of Junior Secured Noteholders to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 845 | 2/1/2013 | Docket No. 2825 | | Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 846 | 2/11/2013 ; 3/1/2013 | Docket No. 2887-5 & 3074-1 | | Engagement Letter for Lewis Kruger as amended | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 847 | | Docket No. 3055 | | Debtors Motion Pursuant to Bankruptcy Rule 3013 and Bankruptcy Code Section 362(a) for a Determination That (I) GMAC Mortgages FRB Foreclosure Review Obligation Is a General Unsecured Claim and (II) The Automatic Stay Prevents Enforcement of the FRB Foreclosure Review Obligation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 848 | 3/5/2013 | Docket No. 3101 | | Order Extending Appointment of Hon. James M. Peck as Mediator | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 849 | 3/5/2013 | Docket No. 3103 | | Order Granting Debtors' Motion Pursuant to Sections105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 850 | 3/15/2013 | Docket No. 3221 | | Debtors' Reply Brief re Objection of Junior Secured Noteholders to Motion for Approval of RMBS Settlement Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 851 | 3/21/2013 | Docket No. 3294 | | Order Pursuant to Sections 105(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 3007 and 9019(b) Approving (I) Claim Objection Procedures, (II) Borrower Claim Procedures, (III) Settlement Procedures, and (IV) Schedule Amendment Procedures | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 852 | 4/11/2013 | Docket No. 3412 | | Motion of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Committee to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 853 | 4/19/2013 | Docket No. 3475 | | Motion of Wilmington Trust, National Association, Solely in Its Capacity as Indenture Trustee for the Senior Unsecured Notes Issued by Residential Capital, LLC for an Order Authorizing It to Prosecute Claims and Other Causes of Action on Behalf of the Residential Capital, LLC Estate | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
| 854 | 4/22/2013 | Docket No. 3490 | | Amended Order Approving Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and (d), Bankruptcy Rules 1015(c), 2002(m), 7016, and 9007 and Local Bankruptcy Rule 2002-2 for Entry of an Order Approving (A) Supplemental to Case Management Order Establishing Mandatory Procedures for Management of Adversary Proceedings Commenced by Borrowers and Former Borrowers and (B) Related Relief | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 855 | 5/13/2013 | Docket No. 3814-4 | | Joint Chapter 11 Plan Support Agreement | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 856 | 6/4/2013 | Docket No. 3877 | | Order Further Extending Appointment of Honorable James M. Peck as Mediator | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 857 | 6/26/2013 | Docket No. 4098 | | Order Granting Debtors' Motion for an Order Under Bankruptcy Code Sections 105(A) and 363(B) Authorizing the Debtors to Enter into a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 858 | 7/3/2013 | Docket No. 4153 | | Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 859 | 7/4/2013 | Docket No. 4157 | | [Proposed] Disclosure Statement for the Joint Chapter 11 Plan of Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 860 | 7/26/2013 | Docket No. 4365 | | Order Granting Debtors' Motion Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 363(b)(1) Authorizing the Debtors to Enter Into and Perform Under Amendment to Consent Order | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 861 | 7/31/2013 | Docket No. 4451 | | Joint Motion Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 7023 and 9019 for an Order (1) Granting Class Certification for Purposes of Settlement Only, (2) Appointing Class Representative and Class Counsel for Purposes of Settlement Only, (3) Preliminarily Approving the Settlement Agreement Between Plaintiffs, on their Own Behalf and on Behalf of the Class of Similarly Situated Persons, and the Debtors, (4) Approving the Form and Manner of Notice to the Class, (5) Scheduling a Fairness Hearing to Consider Approval of the Settlement Agreement on a Final Basis and Related Relied and (6) Approving the Settlement Agreement on a Final Basis and Granting Related Relief | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 862 | | Docket No. 4733 | | Notice of Filing of Revised Disclosure Statement for Debtors Revised Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 863 | | Docket No. 4770 | | Notice of Filing of Revised Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 864 | | Docket No. 4808 | | Order Pursuant to Rules 7023 and 9019 of the Federal Rules of Bankruptcy Procedure (1) Preliminarily Approving Settlement Agreement Between Named Plaintiffs, Individually and as Representatives of the Kessler Settlement Class, and the Settling Defendants; (2) Granting Class Certification for Purposes of Settlement Only; (3) Approving the Form and Manner of Notice of Kessler Settlement Class Members of the Settlement Agreement; (4) Scheduling a Fairness Hearing to Consider Final Approval of the Settlement Agreement; and (5) Granting Related Relief | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 865 | | Docket No. 4809 | | Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of Plan, and (VI) Granting Related Relief | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 866 | | Docket No. 4811 | | Notice of Filing of the Solicitation Version of the Disclosure Statement and Joint Chapter 11 Plan | Yes, for limited purpose (ILS) | Yes | | | | | | |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Objections and Information Relating to Phase II** | | | **Objections and Information Relating to Phase I** | | | | |
| 867 | 8/23/2013 | Docket No. 4814, Ex. A-5 | | Sample General Ballot | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 868 | 7/3/2013 | Docket No. 4819-2 | | Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors, Schedules 1G-4R | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 869 | 8/23/2013 | Docket No. 4819-3 | | Exhibit 6 to the Disclosure Statement For The Joint Chapter 11 Plan Proposed By Residential Capital, LLC, et al., And The Official Committee Of Unsecured Creditors | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 870 | 8/28/2013 | Docket No. 4871 | | Joint Motion for an Order Extending the Automatic Stay Pursuant to 11 U.S.C. §§ 362(A) and 105(A) to Enjoin Prosecution of Claims Against Debtors' Non-Debtor Affiliates in the Putative Class Action Entitled Rothstein, et al. v. GMAC Mortgage, LLC, et al. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 871 | 9/3/2013 | Docket No. 4913 | | Order Granting Motion to Implement Discovery Protocol Related to Plan Confirmation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 872 | | Docket No. 5042 | | Memorandum Opinion and Order, and Findings of Fact and Conclusions of Law, Approving the FGIC Settlement Motion | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 873 | 9/27/2013 | Docket No. 5227-2 | | Amendment No. 2 To Engagement Letter. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 874 | 10/9/2013 | Docket No. 5318 | | Order Granting Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Approving Amendment to Engagement Letter with Debtors' Chief Restructuring Officer, Lewis Kruger | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 875 | 10/11/2013 | Docket No. 5342 | | Notice Of Filing Of Exhibits 2 Through 21 Comprising The Plan Supplement To The Joint Chapter 11 Plan Proposed By Residential Capital, LLC, Et Al. And The Official Committee Of Unsecured Creditors, dated October 11, 2013 (the "Plan Supplement") | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 876 | 10/11/2013 | Docket No. 5342-9 | | Borrower Trust True-Up | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 877 | | Docket No. 5389 | | Stipulation and Order: (I) Resolving the Objection of Ambac Assurance Corporation and the Segregated Account of Ambac Assurance Corporation to Debtors' Proposed Assumption and Assignment of Certain Executory Contracts, (II) Approving Sale, Assumption and Assignment of Certain Servicing Rights to Ocwen Loan Servicing, LLC, and (III) Granting Related Relief | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 878 | 10/29/2013 | Docket No. 5526 | | Notice of Filing of the Assumption Schedule Constituting Exhibit 1 to the Plan Supplement | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 879 | | Docket No. 27 | | Motion for Summary Judgment in Residential Capital LLC v. Allstate Insurance Co., Adv. Case No. 13-01262 (MG) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 880 | 7/10/2012 | Docket No. 750 | | Hearing Transcript | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 881 | 7/25/2012 | Docket No. 902 | | Order Under Sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor Nunc Pro Tunc to May 14, 2012 | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 882 | 2/27/2013 | Docket No. 3104 | | Order Under Bankruptcy Code Sections 327(a), 328(a), and 363 Approving Second Addendum to Engagement Agreement with FTI Consulting, Inc., Nunc Pro Tunc to December 5, 2012, and Granting Related Relief | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 883 | 3/25/2013 | Docket No. 3308 | | Order Under Bankruptcy Code Sections 327(a), 328(a) and 363 Approving Third Addendum to Engagement Agreement with FTI Consulting, Inc., as Financial Advisor to the Debtors | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 884 | 5/23/2013 | Docket No. 3929-2 | | FGIC Settlement Agreement | Yes, for limited purpose (ILS) | Yes | | | | | | |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Objections and Information Relating to Phase II** | | | **Objections and Information Relating to Phase I** | | | | |
| 885 | 6/13/2013 | Docket No. 3971 | | Order Approving Fourth Addendum to Engagement Agreement with FTI Consulting., as Financial Advisor to the Debtors, Authorizing Provision of Litigation Support Services Nunc Pro Tunc to March 1, 2013 | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 886 | 7/30/2013 | Docket No. 4417 | | First Supplemental Declaration of William J. Nolan Pursuant to Fourth Addendum to Engagement Agreement with FTI Consulting, Inc., as Financial Advisor to the Debtors | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 887 | 7/31/2013 | Docket No. 4436 | | Witness Statement of John S. Dubel, including Exhibits | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 888 | 7/30/2013 | Docket No. 4452 | | Hearing Transcript | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 889 | 8/16/2013 | Docket No. 4759 | | August 16, 2013 Hearing Transcript | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 890 | 8/19/2013 | Docket No. 4776 | | August 19, 2013 Hearing Transcript | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 891 | 8/21/2013 | Docket No. 4815 | | Hearing Transcript | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 892 | 10/18/2013 | Docket No. 5391 | | Designation of Records by Appellant the Ad Hoc Group of Junior Secured Noteholders Pursuant to Federal Rule of Bankruptcy Procedure 8006 | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 893 | 11/4/2013 | Docket No. 5596 | | Designation of Record by Appellees and Certain Other Parties to the FGIC Order Pursuant to Federal Rule of Bankruptcy Procedure 8006 | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 894 | 7/6/2012 | Docket No. 57 | | Debtors' Omnibus Reply in Support of Their Motion to Extend the Automatic Stay or, in the Alternative, for Injunctive Relief Enjoining the Prosecution of Certain Litigation Against Debtors' Directors and Officers and Non-Debtor Corporate Affiliates, Case No. 12-ap-01671 (MG) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 895 | 8/18/2013 | Docket No. 4741 | AHG 32 | Notice of Ad Hoc Group of Junior Secured Noteholders of Filing of Information Pursuant to Confidentiality Agreements | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 951 | 11/16/2012 | RC_FGIC9019_00001143-RC_FGIC9019_00001162 | | Case No. 12-12020-Proof of Claim #4870 against Residential Capital, LLC with attachments-Notice sent to creditor Federal Guaranty Insurance Company from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 952 | 11/16/2012 | RC_FGIC9019_00001275-RC_FGIC9019_00001294 | | Case No. 12-12019-Proof of Claim #4868 against Residential Funding Company, LLC with attachments-Notice sent to creditor Federal Guaranty Insurance Company from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 953 | 11/16/2012 | RC_FGIC9019_00001425-RC_FGIC9019_00001444 | | Case No. 12-12032-Proof of Claim #4871 against GMAC Mortgage, LLC with attachments-Notice sent to creditor Federal Guaranty Insurance Company from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 954 | 3/4/2012 | RC_FGIC9019_00034907-RC_FGIC9019_00034939 | | Claim Nos. 6604-6654 filed by Law Debenture Trust Company of New York and Wells Fargo Bank, N.A. as Separate Trustee and Trustee (All Debtors) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 955 | 3/4/2012 | RC_FGIC9019_00034940-RC_FGIC9019_00035050 | | Claim Nos. 6655-6705 filed by U.S. Bank N.A. (All Debtors) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 956 | 3/4/2012 | RC_FGIC9019_00035051-RC_FGIC9019_00035436 | | Claim Nos. 6758-6767 and 6772-6779 filed by Bank of New York Mellon Trust Co., N.A. (Nine Debtors) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 957 | 11/16/2012 | RCPC00064200-RCPC00064211 | | Proof of Claim Nos. 4788, 4796, 4802 filed by the New Jersey Carpenters Health Fund and New Jersey Carpenters Vacation Fund | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 958 | 11/15/2012 | RCPC00064247-RCPC00064287 | | Proof of Claim No. 4911 filed by Elizabeth Cronk, Individually and on Behalf of All Others Similarly Situated | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 959 | 11/5/2012 | RCPC00063439-RCPC00063448 | | Proof of Claim No. 2243 filed by Daughtery, Crawford, Fuller & Brown, LLP | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 960 | 11/7/2012 | RCPC00063824-RCPC00063920 | | Proof of Claim No. 2881 filed by Schroeter Goldmark & Bender | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 961 | 11/16/2012 | RCPC00064341-RCPC00064608 | | Proofs of Claim No. 5594 and 5684 filed by Ricardo Guerra, Eric Ochoa, Gus Richard Davis and a Class of Similarly Situated Borrowers | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 962 | 11/16/2012 | RCPC00064385-RCPC00064514 | | Proof of Claim No. 5596 filed by Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard, and Rebecca Picard on Behalf of Themselves | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 963 | 11/2/2012 | RCPC00063192-RCPC00063438 | | Proof of Claim No. 2110 and 2117 filed by Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard & Rebecca Picard et al. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 964 | 11/5/2012 | RCPC00063449-RCPC00063577 | | Proof of Claim No. 2254 filed by Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard & Rebecca Picard et al. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 965 | 11/2/2012 | RCPC00063125-RCPC00063191 | | Proof of Claim No. 2106 filed by Kenneth L Kral on behalf himself and all others similarly situated | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 966 | 11/16/2012 | RCPC00064515-RCPC00064581 | | Proof of Claim No. 5626 filed by Darlene Manson | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 967 | 11/16/2012 | RCPC00064288-RCPC00064331 | | Proof of Claim No. 5284 filed by Donna Moore, Frenchola Holden, Keith McMillon and a Class of Similarly Situated Borrowers | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 968 | 11/6/2012 | RCPC00063578-RCPC00063618 | | Proof of Claim No. 2530 filed by Russ Bebout, Michael Sanford and Marilyn Sanford, and Desiree Mcilrath | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 969 | 11/7/2012 | RCPC00063762-RCPC00063823 | | Proof of Claim No. 2764 filed by Tiffany Smith | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 970 | 11/15/2012 | RCPC00064212-RCPC00064246 | | Proof of Claim No. 4902 filed by Dennis A. Throm, Individually and On Behalf Of All Others Similarly Situated | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 971 | 11/6/2012 | RCPC00063619-RCPC00063761 | | Proof of Claim No. 2531 filed by Christina Ulbrich | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 972 | 11/9/2012 | RCPC00063921-RCPC00064199 | | Proof of Claim Nos. 3966 and 4074 filed by Landon Rothstein, Jennifer Davidson, Robert Davidson, and Ihor Kobryn, individually and on behalf of a putative class consisting of all residential mortgage loan borrowers who have been charged for lender-placed insurance in connection with loans serviced by GMAC Mortgage at any time from March 6, 2003 to the present | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 973 | 11/14/2012 | RCPC00000001-RCPC00000136 | | Case No. 12-12053-Proof of Claim #4778 against Residential Asset Mortgage Products, Inc. ("RAMP") with attachments-Notice sent to AIG Securities Lending Company by debtor RAMP | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 974 | 11/14/2012 | RCPC00000275-RCPC00000414 | | Case No. 12-12042-Proof of Claim #5321 against Homecomings Financial, LLC with attachments-Notice sent to AIG Securities Lending Company by debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 975 | 11/14/2012 | RCPC00000918-RCPC00000962 | | Case No. 12-12052-Proof of Claim #5344 against Residential Accredit Loans, Inc. ("RALI") with attachments-Notice sent to AIG Securities Lending Company by debtor RALI | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 976 | 11/14/2012 | RCPC00000963-RCPC00001040 | | Case No. 12-12065-Proof of Claim #5346 against GMAC Mortgage, LLC with attachments-Notice sent to AIG Securities Lending Company by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 977 | 11/14/2012 | RCPC00001041-RCPC00001145 | | Case No. 12-12054-Proof of Claim #5347 against Residential Asset Securities Corporation ("RASC") with attachments-Notice sent to AIG Securities Lending Company by debtor RASC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 978 | 11/15/2012 | RCPC00001457-RCPC00001764 | | Case No. 12-12060-Proof of Claim #4499 against Residential Funding Mortgage Securities I, Inc. with attachments-Notice sent to creditor Allstate Insurance Co. from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 979 | 11/15/2012 | RCPC00001765-RCPC00002072 | | Case No. 12-12032-Proof of Claim #4500 against GMAC Mortgage, LLC with attachments-Notice sent to creditor Allstate Life Insurance Co. from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 980 | 11/15/2012 | RCPC00002073-RCPC00002380 | | Case No. 12-12029-Proof of Claim #4501 against GMAC-RFC Holding Company, LLC with attachments-Notice sent to creditor Allstate Life Insurance Co. from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
| 981 | 11/15/2012 | RCPC00002381-RCPC00002688 | | Case No. 12-12029-Proof of Claim #4502 against GMAC-RFC Holding Company, LLC with attachments-Notice sent to creditor Allstate Insurance Co. from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 982 | 11/15/2012 | RCPC00002689-RCPC00002996 | | Case No. 12-12054-Proof of Claim #4503 against Residential Asset Securities Corporation with attachments-Notice sent to creditor Allstate Life Insurance Company from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 983 | 11/15/2012 | RCPC00002997-RCPC00003304 | | Case No. 12-12053-Proof of Claim #4504 against Residential Asset Mortgage Products, Inc. with attachments-Notice sent to creditor Allstate Life Insurance Company from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 984 | 11/15/2012 | RCPC00003305-RCPC00003612 | | Case No. 12-12020-Proof of Claim #4505 against Residential Capital, LLC with attachments-Notice sent to creditor Allstate Insurance Company from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 985 | 11/15/2012 | RCPC00003613-RCPC00003920 | | Case No. 12-12029-Proof of Claim #4506 against GMAC-RFC Holding Company, LLC with attachments-Notice sent to creditor Allstate New Jersey Insurance Co. from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 986 | 11/15/2012 | RCPC00004229-RCPC00004536 | | Case No. 12-12019-Proof of Claim #4509 against Residential Funding Company, LLC (f/k/a Residential Funding Corporation) with attachments-Notice sent to creditor Allstate New Jersey Insurance Company from debtor Residential Funding Company, LLC (f/k/a Residential Funding Corporation) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 987 | 11/15/2012 | RCPC00004845-RCPC00005152 | | Case No. 12-12052-Proof of Claim #4515 against Residential Accredit Loans, Inc. with attachments-Notice sent to creditor Allstate New Jersey Insurance Company from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 988 | 11/15/2012 | RCPC00005153-RCPC00005460 | | Case No. 12-12019-Proof of Claim #4516 against Residential Funding Company, LLC (f/k/a Residential Funding Corporation) with attachments-Notice sent to creditor Allstate Insurance Company from debtor Residential Funding Company, LLC (f/k/a Residential Funding Corporation) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 989 | 11/15/2012 | RCPC00005461-RCPC00005768 | | Case No. 12-12052-Proof of Claim #4517 against Residential Accredit Loans, Inc. with attachments-Notice sent to creditor Allstate Insurance Company from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 990 | 11/15/2012 | RCPC00006077-RCPC00006384 | | Case No. 12-12020-Proof of Claim #4656 against Residential Capital, LLC with attachments-Notice sent to creditor Allstate Life Insurance Company from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 991 | 11/15/2012 | RCPC00006385-RCPC00006692 | | Case No. 12-12061-Proof of Claim #4931 against Residential Funding Mortgage Securities II, Inc. with attachments-Notice sent to creditor Allstate Insurance Company from debtor Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 992 | 11/15/2012 | RCPC00007309-RCPC00007616 | | Case No. 12-12053-Proof of Claim #4957 against Residential Asset Mortgage Products, Inc. with attachments-Notice sent to creditor Allstate Insurance Company from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 993 | 11/15/2012 | RCPC00007617-RCPC00007924 | | Case No. 12-12032-Proof of Claim #4958 against GMAC Mortgage, LLC with attachments-Notice sent to creditor Allstate Insurance Co. from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 994 | 11/15/2012 | RCPC00007925-RCPC00008232 | | Case No. 12-12019-Proof of Claim #4960 against Residential Funding Company, LLC (f/k/a Residential Funding Corporation) with attachments-Notice sent to creditor Allstate Insurance Company from debtor Residential Funding Company, LLC (f/k/a Residential Funding Corporation) | Yes, for limited purpose (ILS) | Yes | | | | | | |

30

Plaintiffs and Plan Proponents' Exhibits to and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 995 | 11/15/2012 | RCPC00008233-RCPC00008540 | | Case No. 12-12061-Proof of Claim #4963 against Residential Funding Mortgage Securities II, Inc. with attachments-Notice sent to creditor Allstate Life Insurance Company from debtor  Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 996 | 11/15/2012 | RCPC00009773-RCPC00010080 | | Case No. 12-12052-Proof of Claim #5078 against Residential Accredit Loans, Inc.  with attachments-Notice sent to creditor Allstate Life Insurance Company from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 997 | 11/15/2012 | RCPC00010081-RCPC00010388 | | Case No. 12-12020-Proof of Claim #5079 against Residential Capital, LLC with attachments-Notice sent to creditor Allstate New Jersey Insurance Company from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 998 | 11/8/2012 | RCPC00010696-RCPC00010701 | | Case No. 12-12019-Proof of Claim #2647 with attachments-Notice sent to creditor Asset Management Fund d/b/a AMF Funds; AMF Intermediate Mortgage Fund; AMF Ultra Short Mortgage Fund from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 999 | 11/8/2012 | RCPC00010702-RCPC00010707 | | Case No. 12-12052-Proof of Claim #2648 against Residential Accredit Loans, Inc.-Notice sent to creditor Asset Management Fund d/b/a AMF Funds; AMF Intermediate Mortgage Fund; AMF Ultra Short Mortgage Fund from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1000 | 11/8/2012 | RCPC00010708-RCPC00010713 | | Case No. 12-12060-Proof of Claim #2650 against Residential Funding Mortgage Securities I, Inc.-Notice sent to creditor Asset Management Fund d/b/a AMF Funds; AMF Intermediate Mortgage Fund; AMF Ultra Short Mortgage Fund from debtor Residential  Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1001 | 11/9/2012 | RCPC00010714-RCPC00010719 | | Case No. 12-12019-Proof of Claim #2927 against Residential Funding Company, LLC-Notice sent to creditor  Asset Management Fund d/b/a AMF Funds; AMF Intermediate Mortgage Fund; AMF Ultra Short Mortgage Fund from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1002 | 11/8/2012 | RCPC00010720-RCPC00010726 | | Case No. 12-12019-Proof of Claim #2660 against Residential Funding Company, LLC-Notice sent to creditor Bank Hapoalim B.M.  from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1003 | 11/8/2012 | RCPC00010727-RCPC00010733 | | Case No. 12-12032-Proof of Claim #2661 against GMAC Mortgage, LLC-Notice sent to Bank Hapoalim B.M. from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1004 | 11/8/2012 | RCPC00010734-RCPC00010740 | | Case No. 12-12052-Proof of Claim #2662 Residential Accredit Loans, Inc.-Notice sent to Bank Hapoalim B.M. from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1005 | 11/8/2012 | RCPC00010741-RCPC00010747 | | Case No. 12-12053-Proof of Claim #2663 against Residential Asset Mortgage Products, Inc.-Notice sent to  Bank Hapoalim B.M. from debtor Residential Asset Mortgage Products, Inc | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1006 | 11/8/2012 | RCPC00010748-RCPC00010754 | | Case No. 12-12061-Proof of Claim #2664 against Residential Funding Mortgage Securities II, Inc.-Notice sent to Bank Hapoalim B.M. from debtor Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1007 | 11/16/2012 | RCPC00010755-RCPC00010760 | | Case No. 12-12054-Proof of Claim #5305 against Residential Asset Securities Corporation-Notice sent to Cambridge Place Investment Management, Inc. from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1008 | 11/16/2012 | RCPC00010761-RCPC00010766 | | Case No. 12-12052-Proof of Claim #5313 against Residential Accredit Loans, Inc.-Notice sent to Cambridge Place Investment Management, Inc. from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1009 | 11/16/2012 | RCPC00010767-RCPC00010772 | | Case No. 12-12053-Proof of Claim #5331 against Residential Asset Mortgage Products, Inc.-Notice sent to Cambridge Place Investment Management, Inc. from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |

31

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 1010 | 11/8/2012 | RCPC00010773-RCPC00010778 | | Case No. 12-12054-Proof of Claim #2654 against Residential Asset Securities Corp.-Notice sent to Deutsche Zentral-Genossenschaftsbank, New York Branch d/b/a DZ Bank AG, New York; DG Holding Trust from debtor Residential Asset Securities Corp. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1011 | 11/8/2012 | RCPC00010779-RCPC00010784 | | Case No. 12-12053-Proof of Claim #2655 against Residential Accredit Loans, Inc.-Notice sent to Deutsche Zentral-Genossenschaftsbank, New York Branch d/b/a DZ Bank AG, New York; DG Holding Trust from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1012 | 11/8/2012 | RCPC00010785-RCPC00010790 | | Case No. 12-12019-Proof of Claim #2657 against Residential Funding Company, LLC-Notice sent to Deutsche Zentral-Genossenschaftsbank, New York Branch d/b/a DZ Bank AG, New York; DG Holding Trust from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1013 | 11/8/2012 | RCPC00010791-RCPC00010796 | | Case No. 12-12052-Proof of Claim #2658 against Residential Accredit Loans, Inc.-Notice sent to Deutsche Zentral-Genossenschaftsbank, New York Branch d/b/a DZ Bank AG, New York; DG Holding Trust from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1014 | 11/8/2012 | RCPC00010797-RCPC00011784 | | Case No. 12-12052-Proof of Claim #2641 against Residential Funding Company, LLC-Notice sent to Federal Home Loan Bank of Boston from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1015 | 11/8/2012 | RCPC00011785-RCPC00012772 | | Case No. 12-12052-Proof of Claim #3661 against Residential Accredit Loans, Inc. with attachments-Notice sent to Federal Home Loan Bank of Boston from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1016 | 11/8/2012 | RCPC00012773-RCPC00013282 | | Case No. 12-12053-Proof of Claim #2637 with attachments-Notice sent to creditor Federal Home Loan Bank of Chicago from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1017 | 11/8/2012 | RCPC00013283-RCPC00013792 | | Case No. 12-12019-Proof of Claim #2638 with attachments-Notice sent to creditor Federal Home Loan Bank of Chicago from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1018 | 11/8/2012 | RCPC00013793-RCPC00014302 | | Case No. 12-12054-Proof of Claim #2639 with attachments-Notice sent to creditor Federal Home Loan Bank of Chicago from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1019 | 11/8/2012 | RCPC00014303-RCPC00014812 | | Case No. 12-12060-Proof of Claim #2640 with attachments-Notice sent to creditor Federal Home Loan Bank of Chicago from debtor Residential Funding Mortgage Securities I. Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1020 | 11/8/2012 | RCPC00014813-RCPC00015228 | | Case No. 12-12060-Proof of Claim #3785 with attachments-Notice sent to creditor Federal Home Loan Bank of Indianapolis from debtor Residential Funding Mortgage Securities I. Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1021 | 11/8/2012 | RCPC00015229-RCPC00015235 | | Case No. 12-12019-Proof of Claim #2646 with attachments-Notice sent to creditor HSH Nordbank AG; HSH Nordbank AG Luxembourg Branch; HSN Nordbank AG New York Branch; HSN Nordank Securities S.A. from debtor Residential Funding Mortgage Company LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1022 | 11/8/2012 | RCPC00015236-RCPC00015242 | | Case No. 12-12054-Proof of Claim #2649 with attachments-Notice sent to creditor HSH Nordbank AG; HSH Nordbank AG Luxembourg Branch; HSN Nordbank AG New York Branch; HSN Nordank Securities S.A. from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1023 | 11/8/2012 | RCPC00015243-RCPC00015249 | | Case No. 12-12053-Proof of Claim #2651 with attachments-Notice sent to creditor HSH Nordbank AG; HSH Nordbank AG Luxembourg Branch; HSN Nordbank AG New York Branch; HSN Nordank Securities S.A. from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1024 | 11/14/2012 | RCPC00015250-RCPC00015256 | | Case No. 12-12052-Proof of Claim #4269 with attachments-Notice sent to creditor Huntington Bancshares Inc. from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |

32

Plaintiffs' and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 1025 | 11/14/2012 | RCPC00015257-RCPC00015263 | | Case No. 12-12042-Proof of Claim #4272 with attachments-Notice sent to creditor Huntington Bancshares Inc. from debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1026 | 11/14/2012 | RCPC00015264-RCPC00015367 | | Case No. 12-12020-Proof of Claim #4282 with attachments-Notice sent to creditor Huntington Bancshares Inc. from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1027 | 11/14/2012 | RCPC00015368-RCPC00015374 | | Case No. 12-12019-Proof of Claim #4354 with attachments-Notice sent to creditor Huntington Bancshares Inc. from Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1028 | 11/14/2012 | RCPC00015375-RCPC00015381 | | Case No. 12-12029-Proof of Claim #4356 with attachments-Notice sent to creditor Huntington Bancshares Inc. from GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1029 | 11/14/2012 | RCPC00015382-RCPC00015388 | | Case No. 12-12060-Proof of Claim #4359 with attachments-Notice sent to creditor Huntington Bancshares Inc. from debtor Residential Funding Mortgage Securities, I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1030 | 11/14/2012 | RCPC00015389-RCPC00015397 | | Case No. 12-12061-Proof of Claim #2644 with attachments-Notice sent to creditor IKB Deutsche Industriebank AG; IKB International S.A. in Liquidation from debtor Residential Funding Mortgage Securities, II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1031 | 11/5/2012 | RCPC00015398-RCPC00015406 | | Case No. 12-12019-Proof of Claim #2652 with attachments-Notice sent to creditor IKB Deutsche Industriebank AG; IKB International S.A. in Liquidation from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1032 | 11/8/2012 | RCPC00015407-RCPC00015415 | | Case No. 12-12053-Proof of Claim #2653 with attachments-Notice sent to creditor IKB Deutsche Industriebank AG; IKB International S.A. in Liquidation from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1033 | 11/8/2012 | RCPC00015416-RCPC00015424 | | Case No. 12-12054-Proof of Claim #2656 with attachments- Notice sent to creditor IKB Deutsche Industriebank AG; IKB International S.A. in Liquidation from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1034 | 11/14/2012 | RCPC00015425-RCPC00015776 | | Case No. 12-12019-Proof of Claim #4221 with attachments- Notice sent to creditor John Hancock Strategic Series from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1035 | 11/14/2012 | RCPC00015777-RCPC00016128 | | Case No. 12-12020-Proof of Claim #4223 with attachments-Notice sent to creditor John Hancock Strategic Series from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1036 | 11/14/2012 | RCPC00016129-RCPC00016480 | | Case No. 12-12052-Proof of Claim #4224 with attachments-Notice sent to creditor John Hancock Strategic Series from Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1037 | 11/14/2012 | RCPC00016481-RCPC00016832 | | Case No. 12-12042-Proof of Claim #4225 with attachments-Notice sent to creditor John Hancock Strategic Series from debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1038 | 11/14/2012 | RCPC00016833-RCPC00017184 | | Case No. 12-12032-Proof of Claim #4226 with attachments-Notice sent to creditor John Hancock Strategic Series from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1039 | 11/14/2012 | RCPC00017185-RCPC00017536 | | Case No. 12-12029-Proof of Claim #4228 with attachments-Notice sent to creditor John Hancock Strategic Series from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1040 | 11/14/2012 | RCPC00017537-RCPC00017888 | | Case No. 12-12042-Proof of Claim #4231 with attachments-Notice sent to creditor John Hancock Income Securities Trust from debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1041 | 11/14/2012 | RCPC00017889-RCPC00018240 | | Case No. 12-12029-Proof of Claim #4233 with attachments-Notice sent to creditor John Hancock Income Securities Trust from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1042 | 11/14/2012 | RCPC00018241-RCPC00018592 | | Case No. 12-12032-Proof of Claim #4234 with attachments-Notice sent to creditor John Hancock Income Securities Trust from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
| 1043 | 11/14/2012 | RCPC00018593-RCPC00018944 | | Case No. 12-12019-Proof of Claim #4235 with attachments-Notice sent to creditor John Hancock Income Securities Trust from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1044 | 11/14/2012 | RCPC00018945-RCPC00019296 | | Case No. 12-12020-Proof of Claim #4237 with attachments-Notice sent to creditor John Hancock Income Securities Trust from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1045 | 11/14/2012 | RCPC00019297-RCPC00019648 | | Case No. 12-12052-Proof of Claim #4238 with attachments-Notice sent to creditor John Hancock Income Securities Trust from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1046 | 11/14/2012 | RCPC00019649-RCPC00020000 | | Case No. 12-12052-Proof of Claim #4239 with attachments-Notice sent to creditor John Hancock Income Securities Trust from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1047 | 11/14/2012 | RCPC00020001-RCPC00020352 | | Case No. 12-12020-Proof of Claim #4241 with attachments-Notice sent to creditor John Hancock Bond Trust from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1048 | 11/14/2012 | RCPC00020353-RCPC00020704 | | Case No. 12-12042-Proof of Claim #4243 with attachments-Notice sent to creditor John Hancock Bond Trust from debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1049 | 11/14/2012 | RCPC00020705-RCPC00020712 | | Case No. 12-12054-Proof of Claim #4245 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1050 | 11/14/2012 | RCPC00020713-RCPC00021064 | | Case No. 12-12029-Proof of Claim #4246 with attachments-Notice sent to creditor John Hancock Bond Trust from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1051 | 11/14/2012 | RCPC00021065-RCPC00021416 | | Case No. 12-12032-Proof of Claim #4248 with attachments-Notice sent to creditor John Hancock Bond Trust from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1052 | 11/14/2012 | RCPC00021417-RCPC00021768 | | Case No. 12-12019-Proof of Claim #4250 with attachments-Notice sent to creditor John Hancock Bond Trust from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1053 | 11/14/2012 | RCPC00021769-RCPC00021776 | | Case No. 12-12042-Proof of Claim #4252 with attachments-Notice sent to creditor John hancock Life Insurance Company (U.S.A.) from debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1054 | 11/14/2012 | RCPC00021777-RCPC00021784 | | Case No. 12-12032-Proof of Claim #4273 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1055 | 11/14/2012 | RCPC00021785-RCPC00021791 | | Case No. 12-12042-Proof of Claim #4274 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1056 | 11/14/2012 | RCPC00021792-RCPC00021798 | | Case No. 12-12029-Proof of Claim #4277 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1057 | 11/14/2012 | RCPC00021799-RCPC00022150 | | Case No. 12-12019-Proof of Claim #4278 with attachments-Notice sent to creditor John Hancock Funds II from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1058 | 11/14/2012 | RCPC00022151-RCPC00022502 | | Case No. 12-12029-Proof of Claim #4281 with attachments-Notice sent to creditor John Hancock Funds II from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1059 | 11/14/2012 | RCPC00022503-RCPC00022854 | | Case No. 12-12032-Proof of Claim #4283 with attachments-Notice sent to creditor John Hancock Funds II from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1060 | 11/14/2012 | RCPC00022855-RCPC00023206 | | Case No. 12-12042-Proof of Claim #4285 with attachments-Notice sent to creditor John Hancock Funds II from debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
| 1061 | 11/14/2012 | RCPC0023207-RCPC0023214 | | Case No. 12-12019-Proof of Claim #4286 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1062 | 11/14/2012 | RCPC0023215-RCPC0023566 | | Case No. 12-12052-Proof of Claim #4287 with attachments-Notice sent to creditor John Hancock Funds II from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1063 | 11/14/2012 | RCPC0023567-RCPC0023918 | | Case No. 12-12020-Proof of Claim #4288 with attachments-Notice sent to creditor John Hancock Sovereign Bond Fund from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1064 | 11/14/2012 | RCPC0023919-RCPC0024270 | | Case No. 12-12060-Proof of Claim #4289 with attachments-Notice sent to creditor John Hancock Funds II from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1065 | 11/14/2012 | RCPC0024271-RCPC0024622 | | Case No. 12-12019-Proof of Claim #4290 with attachments-Notice sent to creditor John Hancock Sovereign Bond Fund from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1066 | 11/14/2012 | RCPC0024623-RCPC0024974 | | Case No. 12-12032-Proof of Claim #4291 with attachments-Notice sent to creditor John Hancock Sovereign Bond Fund from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1067 | 11/14/2012 | RCPC00024975-RCPC0025326 | | Case No. 12-12042-Proof of Claim #4292 with attachments-Notice sent to creditor John Hancock Sovereign Bond Fund from debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1068 | 11/14/2012 | RCPC0025327-RCPC0025678 | | Case No. 12-12052-Proof of Claim #4293 with attachments-Notice sent to creditor John Hancock Sovereign Bond Fund from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1069 | 11/14/2012 | RCPC0025679-RCPC0026030 | | Case No. 12-12020-Proof of Claim #4294 with attachments-Notice sent to creditor John Hancock Funds II from debtor Residential Capital LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1070 | 11/14/2012 | RCPC0026031-RCPC0026378 | | Case No. 12-12020-Proof of Claim #4295 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Residential Capital LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1071 | 11/14/2012 | RCPC0026379-RCPC0026731 | | Case No. 12-12053-Proof of Claim #4296 with attachments-Notice sent to creditor John Hancock Funds II from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1072 | 11/14/2012 | RCPC0026732-RCPC0026739 | | Case No. 12-12060-Proof of Claim #4297 with attachments-Notice sent to creditor John Hancock Life Insurance Company from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1073 | 11/14/2012 | RCPC0026740-RCPC00027092 | | Case No. 12-12020-Proof of Claim #4298 with attachments-Notice sent to creditor John Hancock Variable Insurance Trust from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1074 | 11/14/2012 | RCPC00027093-RCPC0027099 | | Case No. 12-12052-Proof of Claim #4300 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1075 | 11/14/2012 | RCPC00027100-RCPC0027452 | | Case No. 12-12019-Proof of Claim #4301 with attachments-Notice sent to creditor John Hancock Variable Insurance Trust from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1076 | 11/14/2012 | RCPC00027453-RCPC0027805 | | Case No. 12-12029-Proof of Claim #4302 with attachments-Notice sent to creditor John Hancock Variable Insurance Trust from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1077 | 11/14/2012 | RCPC00027806-RCPC0028158 | | Case No. 12-12032-Proof of Claim #4303 with attachments-Notice sent to creditor John Hancock Variable Insurance Trust from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1078 | 11/14/2012 | RCPC00028159-RCPC00028166 | | Case No. 12-12054-Proof of Claim #4305 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits to and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
| 1079 | 11/14/2012 | RCPC00028167-RCPC00028519 | | Case No. 12-12042-Proof of Claim #4306 with attachments-Notice sent to creditor John Hancock Variable Insurance Trust from debtor Homecomings Financial | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1080 | 11/14/2012 | RCPC00028520-RCPC00028872 | | Case No. 12-12052-Proof of Claim #4314 with attachments-Notice sent to creditor John Hancock Variable Insurance Trust from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1081 | 11/14/2012 | RCPC00028873-RCPC00029220 | | Case No. 12-12020-Proof of Claim #4315 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1082 | 11/14/2012 | RCPC00029221-RCPC00029573 | | Case No. 12-12053-Proof of Claim #4317 with attachments-Notice sent to creditor John Hancock Variable Insurance Trust from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1083 | 11/14/2012 | RCPC00029574-RCPC00029581 | | Case No. 12-12052-Proof of Claim #4319 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1084 | 11/14/2012 | RCPC00029582-RCPC00029934 | | Case No. 12-12054-Proof of Claim #4321 with attachments-Notice sent to creditor John Hancock Variable Insurance Trust from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1085 | 11/14/2012 | RCPC00029935-RCPC00030287 | | Case No. 12-12060-Proof of Claim #4323 with attachments-Notice sent to creditor John Hancock Variable Insurance Trust from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1086 | 11/14/2012 | RCPC00030288-RCPC00030295 | | Case No. 12-12019-Proof of Claim #4324 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1087 | 11/14/2012 | RCPC00030296-RCPC00030648 | | Case No. 12-12061-Proof of Claim #4325 with attachments-Notice sent to creditor John Hancock Variable Insurance Trust from debtor Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1088 | 11/14/2012 | RCPC00030649-RCPC00030656 | | Case No. 12-12029-Proof of Claim #4329 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1089 | 11/14/2012 | RCPC00030657-RCPC00030664 | | Case No. 12-12053-Proof of Claim #4335 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1090 | 11/14/2012 | RCPC00030665-RCPC00030672 | | Case No. 12-12053-Proof of Claim #4336 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1091 | 11/14/2012 | RCPC00030673-RCPC00031024 | | Case No. 12-12059-Proof of Claim #4361 with attachments-Notice sent to creditor John Hancock Sovereign Bond Fund from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1092 | 11/14/2012 | RCPC00031025-RCPC00031031 | | Case No. 12-12032-Proof of Claim #4363 with attachments-Notice sent to creditor John Hancock Life Insurance Company (U.S.A.) from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1093 | 11/15/2012 | RCPC00031032-RCPC00031183 | | Case No. 12-12054-Proof of Claim #5013 against Residential Asset Securities Corp. with attachments-Notice sent to creditor Massachusetts Mutual Life Insurance Company from debtor Residential Asset Securities Corp. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1094 | 11/15/2012 | RCPC00031184-RCPC00031338 | | Case No. 12-12019-Proof of Claim #5033 against Residential Funding Company, LLC with attachments-Notice sent to creditor Massachusetts Mutual Life Insurance Company from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1095 | 11/15/2012 | RCPC00031339-RCPC00031490 | | Case No. 12-12053-Proof of Claim #5042 against Residential Asset Mortgage Products, Inc. ("RAMP") with attachments-Notice sent to creditor Massachusetts Mutual Life Insurance Company from debtor RAMP | Yes, for limited purpose (ILS) | Yes | | | | | | |

12-12020-mg   Doc 5716   Filed 11/12/13   Entered 11/12/13 23:19:47   Pg 218 of
264
Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 1096 | 11/15/2012 | RCPC00031491-RCPC0031643 | | Case No. 12-12052-Proof of Claim #5060 against Residential Accredit Loans, Inc. with attachments-Notice sent to creditor Massachusetts Mutual Life Insurance Company from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1097 | 11/8/2012 | RCPC00031644-RCPC0031649 | | Case No. 12-12054-Proof of Claim #2751-Notice sent to creditor Principal Life Insurance Company; Principal Funds, Inc.; Principal Variable Contracts Funds, Inc. from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1098 | 11/8/2012 | RCPC00031650-RCPC0031655 | | Case No. 12-12019-Proof of Claim #2752-Notice sent to creditor Principal Life Insurance Company; Principal Funds, Inc.; Principal Variable Contracts Funds, Inc. from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1099 | 11/8/2012 | RCPC00031656-RCPC0031661 | | Case No. 12-12032-Proof of Claim #2753-Notice sent to creditor Principal Life Insurance Company; Principal Funds, Inc.; Principal Variable Contracts Funds, Inc. from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1100 | 11/8/2012 | RCPC00031662-RCPC0031667 | | Case No. 12-12052-Proof of Claim #2754-Notice sent to creditor Principal Life Insurance Company; Principal Funds, Inc.; Principal Variable Contracts Funds, Inc. from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1101 | 11/8/2012 | RCPC00031668-RCPC0031673 | | Case No. 12-12053-Proof of Claim #2755-Notice sent to creditor Principal Life Insurance Company; Principal Funds, Inc.; Principal Variable Contracts Funds, Inc. from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1102 | 11/15/2012 | RCPC00031711-RCPC0031748 | | Case No. 12-12054-Proof of Claim #4512-Notice sent to creditor Pru Alpha Income Opportunity Master Fund I, L.P. from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1103 | 11/15/2012 | RCPC00031749-RCPC0031786 | | Case No. 12-12019-Proof of Claim #4513-Notice sent to creditor Pru Alpha Income Opportunity Master Fund I, L.P. from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1104 | 11/15/2012 | RCPC00031787-RCPC0031823 | | Case No. 12-12020-Proof of Claim #4514-Notice sent to creditor Pruco Life Insurance Company of New Jersey from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1105 | 11/15/2012 | RCPC00031861-RCPC0031898 | | Case No. 12-12019-Proof of Claim #4521-Notice sent to creditor Prudential Trust Company from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1106 | 11/15/2012 | RCPC00031899-RCPC0031937 | | Case No. 12-12020-Proof of Claim #4524-Notice sent to creditor Prudential Trust Company from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1107 | 11/15/2012 | RCPC00031938-RCPC0031974 | | Case No. 12-12053-Proof of Claim #4525-Notice sent to creditor Prudential Investment Portfolios 2 from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1108 | 11/15/2012 | RCPC00031975-RCPC0032011 | | Case No. 12-12019-Proof of Claim #4529-Notice sent to creditor Prudential Investment Portfolios 2 from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1109 | 11/15/2012 | RCPC0003012-RCPC00032048 | | Case No. 12-12032-Proof of Claim #4532-Notice sent to creditor Prudential Investment Portfolios 2 from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1110 | 11/15/2012 | RCPC00032049-RCPC0032085 | | Case No. 12-12054-Proof of Claim #4660-Notice sent to creditor Prudential Investment Portfollios 2 from debtor Residential Asset Securities Corp. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1111 | 11/15/2012 | RCPC00032086-RCPC0032122 | | Case No. 12-12061-Proof of Claim #4661-Notice sent to creditor Prudential Investment Portfolios 2 from debtor Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1112 | 11/15/2012 | RCPC00032123-RCPC0032160 | | Case No. 12-12029-Proof of Claim #4675-Notice sent to creditor Prudential Investment Portfolios 2 from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs' and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 1113 | 11/15/2012 | RCPC00032161-RCPC00032198 | | Case No. 12-12020-Proof of Claim #4683-Notice sent to creditor Prudential Investment Portfolios 2 from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1114 | 11/15/2012 | RCPC00032236-RCPC00032273 | | Case No. 12-12054-Proof of Claim #4937-Notice sent to creditor Prudential Trust Company from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1115 | 11/15/2012 | RCPC00032274-RCPC00032310 | | Case No. 12-12061-Proof of Claim #4968-Notice sent to creditor Pruco Life Insurance Company from debtor Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1116 | 11/15/2012 | RCPC00032348-RCPC00032385 | | Case No. 12-12053-Proof of Claim #4991-Notice sent to creditor Pru Alpha Fixed Income Opportunity Master Fund I, L.P. from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1117 | 11/15/2012 | RCPC00032612-RCPC00032648 | | Case No. 12-12029-Proof of Claim #5097-Notice sent to creditor Prudential Annuities Life Assurance Corp. from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1118 | 11/15/2012 | RCPC00032649-RCPC00032685 | | Case No. 12-12019-Proof of Claim #5098-Notice sent to creditor Prudential Annuities Life Assurance Corporation from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1119 | 11/15/2012 | RCPC00032686-RCPC00032722 | | Case No. 12-12020-Proof of Claim #5099-Notice sent to creditor Prudential Annuities Life Assurance Corporation from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1120 | 11/15/2012 | RCPC00032723-RCPC00032759 | | Case No. 12-12061-Proof of Claim #5100-Notice sent to creditor Prudential Annuities Life Assurance Corporation from debtor Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1121 | 11/15/2012 | RCPC00032760-RCPC00032796 | | Case No. 12-12029-Proof of Claim #5101-Notice sent to creditor Prudential Retirement Insurance & Annuities Company from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1122 | 11/15/2012 | RCPC00032797-RCPC00032833 | | Case No. 12-12054-Proof of Claim #5102-Notice sent to creditor Prudential Retirement Asset Securities Corporation from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1123 | 11/15/2012 | RCPC00032834-RCPC00032870 | | Case No. 12-12061-Proof of Claim #5103-Notice sent to creditor Prudential Retirement Insurance & Annuities Company from debtor Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1124 | 11/15/2012 | RCPC00032871-RCPC00032907 | | Case No. 12-12020-Proof of Claim #5104-Notice sent to creditor Prudential Retirement Insurance & Annuities Company from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1125 | 11/15/2012 | RCPC00032908-RCPC00032944 | | Case No. 12-12019-Proof of Claim #5105-Notice sent to creditor Prudential Retirement Insurance & Annuities Company from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1126 | 11/15/2012 | RCPC00032945-RCPC00032981 | | Case No. 12-12019-Proof of Claim #5108-Notice sent to creditor Prudential Total Return Bond Fund, Inc. from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1127 | 11/15/2012 | RCPC00032982-RCPC00033018 | | Case No. 12-12020-Proof of Claim #5110-Notice sent to creditor Prudential Total Return Bond Fund, Inc. from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1128 | 11/15/2012 | RCPC00033019-RCPC00033055 | | Case No. 12-12029-Proof of Claim #5112-Notice sent to creditor Prudential Total Return Bond Bund from debtor Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1129 | 11/15/2012 | RCPC00033056-RCPC00033092 | | Case No. 12-12053-Proof of Claim #5113-Notice sent to creditor Prudential Total Return Bond Fund from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1130 | 11/15/2012 | RCPC00033093-RCPC00033131 | | Case No. 12-12029-Proof of Claim #5116-Notice sent to creditor Prudential Trust Company from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 1131 | 11/15/2012 | RCPC00033132-RCPC00033169 | | Case No. 12-12053-Proof of Claim #5117-Notice sent to creditor Prudential Trust Company from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1132 | 11/15/2012 | RCPC00033170-RCPC00033207 | | Case No. 12-12061-Proof of Claim #5119-Notice sent to creditor Prudential Trust Company from debtor Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1133 | 11/8/2012 | RCPC00033286-RCPC00033292 | | Case No. 12-12054-Proof of Claim #2642-Notice sent to creditor Sealink Funding Limited from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1134 | 11/14/2012 | RCPC00033293-RCPC00033299 | | Case No. 12-12053-Proof of Claim #4266-Notice sent to creditor Stichting Pensioenfonds ABP from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1135 | 11/14/2012 | RCPC00033300-RCPC00033306 | | Case No. 12-12052-Proof of Claim #4268-Notice sent to creditor Stichting Pensioenfonds ABP from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1136 | 11/14/2012 | RCPC00033307-RCPC00033313 | | Case No. 12-12042-Proof of Claim #4270-Notice sent to creditor Stichting Pensioenfonds ABP from debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1137 | 11/14/2012 | RCPC00033314-RCPC00033438 | | Case No. 12-12020-Proof of Claim #4279-Notice sent to creditor Stichting Pensioenfonds ABP from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1138 | 11/14/2012 | RCPC00033439-RCPC00033445 | | Case No. 12-12032-Proof of Claim #4284-Notice sent to creditor Stichting Pensioenfonds ABP from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1139 | 11/14/2012 | RCPC00033446-RCPC00033452 | | Case No. 12-12019-Proof of Claim #4355-Notice sent to creditor Stichting Pensioenfonds ABP from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1140 | 11/14/2012 | RCPC00033453-RCPC00033459 | | Case No. 12-12029-Proof of Claim #4357-Notice sent to creditor Stichting Pensioenfonds ABP from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1141 | 11/14/2012 | RCPC00033460-RCPC00033466 | | Case No. 12-12060-Proof of Claim #4358-Notice sent to creditor Stichting Pensioenfonds ABP from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1142 | 11/14/2012 | RCPC00033467-RCPC00033473 | | Case No. 12-12054-Proof of Claim #4360-Notice sent to creditor Stichting Pensioenfonds ABP from debtor Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1143 | 11/16/2012 | RCPC00033474-RCPC00033477 | | Case No. 12-12052-Proof of Claim #4808-Notice sent to creditor Ameritas Life Insurance Corp. from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1144 | 11/16/2012 | RCPC00033478-RCPC00033481 | | Case No. 12-12019-Proof of Claim #4810-Notice sent to creditor Acacia Life Insurance Company from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1145 | 11/16/2012 | RCPC00033482-RCPC00033485 | | Case No. 12-12052-Proof of Claim #4813-Notice sent to creditor The Union Central Life Insurance Company from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1146 | 11/16/2012 | RCPC00033486-RCPC00033489 | | Case No. 12-12019-Proof of Claim #4814-Notice sent to creditor The Union Central Life Insurance Company from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1147 | 11/7/2012 | RCPC00033490-RCPC00033652 | | Case No. 12-12052-Proof of Claim #2422-Notice sent to creditor Western-Southern Life Assurance Company from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1148 | 11/7/2012 | RCPC00033653-RCPC00033815 | | Case No. 12-12052-Proof of Claim #2424-Notice sent to creditor Columbus Life Insurance Company from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1149 | 11/7/2012 | RCPC00033816-RCPC00033978 | | Case No. 12-12052-Proof of Claim #2425 with attachments-Notice sent to creditor The Western and Southern Life Insurance Company from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 1150 | 11/7/2012 | RCPC00033979-RCPC00034141 | | Case No. 12-12032-Proof of Claim #2426 with attachments-Notice sent to creditor Integrity Life Insurance Company from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1151 | 11/7/2012 | RCPC00034142-RCPC00034304 | | Case No. 12-12032-Proof of Claim #2430 with attachments-Notice sent to creditor National Integrity Life Insurance Company from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1152 | 11/7/2012 | RCPC00034305-RCPC00034467 | | Case No. 12-12053-Proof of Claim #2433 with attachments-Notice sent to creditor Fort Washington Advisors, Inc. from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1153 | 11/7/2012 | RCPC00034468-RCPC00034630 | | Case No. 12-12052-Proof of Claim #2434 with attachments-Notice sent to creditor National Integrity Life Insurance Company from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1154 | 11/7/2012 | RCPC00034631-RCPC00034793 | | Case No. 12-12053-Proof of Claim #2437 with attachments-Notice sent to creditor Western-Southern Life Assurance Company from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1155 | 11/7/2012 | RCPC00034794-RCPC00034956 | | Case No. 12-12053-Proof of Claim #2438 with attachments-Notice sent to creditor The Western and Southern Life Insurance Company from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1156 | 11/7/2012 | RCPC00034957-RCPC00035119 | | Case No. 12-12053-Proof of Claim #2440 with attachments-Notice sent to creditor Columbus Life Insurance Company from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1157 | 11/7/2012 | RCPC00035120-RCPC00035282 | | Case No. 12-12053-Proof of Claim #2443 with attachments-Notice sent to creditor National Integrity Life Insurance Company from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1158 | 11/7/2012 | RCPC00035283-RCPC00035445 | | Case No. 12-12032-Proof of Claim #2460 with attachments-Notice sent to creditor The Western and Southern Life Insurance Company from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1159 | 11/7/2012 | RCPC00035446-RCPC00035608 | | Case No. 12-12032-Proof of Claim #2463 with attachments-Notice sent to creditor Columbus Life Insurance Company from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1160 | 11/7/2012 | RCPC00035609-RCPC00035771 | | Case No. 12-12053-Proof of Claim #2464 with attachments-Notice sent to creditor Fort Washington Investment Advisors, Inc. from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1161 | 11/7/2012 | RCPC00035772-RCPC00035934 | | Case No. 12-12060-Proof of Claim #2466 with attachments-Notice sent to creditor National Integrity Life Insurance Company from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1162 | 11/7/2012 | RCPC00035935-RCPC00036097 | | Case No. 12-12032-Proof of Claim #2467 with attachments-Notice sent to creditor Fort Washington Advisors, Inc. from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1163 | 11/7/2012 | RCPC00036098-RCPC00036260 | | Case No. 12-12060-Proof of Claim #2614 with attachments-Notice sent to creditor Western-Southern Life Assurance Company from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1164 | 11/7/2012 | RCPC00036261-RCPC00036423 | | Case No. 12-12060-Proof of Claim #3500 with attachments-Notice sent to creditor Columbus Life Insurance Company from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1165 | 11/7/2012 | RCPC00036424-RCPC00036586 | | Case No. 12-12060-Proof of Claim #3505 with attachments-Notice sent to creditor Fort Washington Advisors, Inc. from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1166 | 11/7/2012 | RCPC00036587-RCPC00036749 | | Case No. 12-12060-Proof of Claim #3514 with attachments-Notice sent to creditor Western & Southern Life Insurance Company from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1167 | 11/7/2012 | RCPC00036750-RCPC00036912 | | Case No. 12-12032-Proof of Claim #3518 with attachments-Notice sent to creditor Western-Southern Life Assurance Company from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
| 1168 | 11/7/2012 | RCPC00047080-RCPC00047242 | | Case No. 12-12053-Proof of Claim #2458 with attachments-Notice sent to Integrity Life Insurance Company fro debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1169 | 11/7/2012 | RCPC00047243-RCPC00047405 | | Case No. 12-12052-Proof of Claim #2465 with attachments-Notice sent to creditor Integrity Life Insurance Company from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1170 | 11/8/2012 | RCPC00047406-RCPC00047412 | | Case No. 12-12053- Proof of Claim #2643 -Notice sent to creditor Sealink Funding Limited from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1171 | 11/8/2012 | RCPC00047413-RCPC00047419 | | Case No. 12-12052 - Proof of Claim #2645 -Notice sent to creditor Sealink Funding Limited from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1172 | 11/8/2012 | RCPC00047420-RCPC00047426 | | Case No. 12-12019- Proof of Claim #2659-Notice sent to creditor Sealink Funding Limited from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1173 | 11/7/2012 | RCPC00047427-RCPC00047589 | | Case No. 12-12060-Proof of Claim #3493 with attachments-Notice sent to creditor Integrity Life Insurance Company from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1174 | 11/15/2012 | RCPC00047590-RCPC00047594 | | Case No. 12-12032-Proof of Claim #4662 against GMAC Mortgage, LLC-Notice sent to creditor Assured Guaranty Municipal Corp. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1175 | 11/15/2012 | RCPC00047595-RCPC00047599 | | Case No. 12-12032-Proof of Claim #4665 against GMAC Mortgage, LLC - Notice sent to creditor Assured Guaranty Corp. from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1176 | 11/15/2012 | RCPC00047600-RCPC00047604 | | Case No. 12-12032-Proof of Claim #4669 against GMAC Mortgage, LLC - Notice sent to creditor Assured Guaranty Municipal Corp. from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1177 | 11/15/2012 | RCPC00047605-RCPC00047609 | | Case No. 12-12060-Proof of Claim #4672 against Residential Funding Mortgage Securities I, Inc.-Notice sent to Assured Guaranty Corp. from debtor Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1178 | 11/15/2012 | RCPC00047610-RCPC00047614 | | Case No. 12-12032-Proof of Claim #4674 against GMAC Mortgage, LLC-Notice sent to Assured Guaranty Municipal Corp. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1179 | 11/15/2012 | RCPC00047615-RCPC00047619 | | Case No. 12-12032-Proof of Claim #4677 against GMAC Mortgage, LLC-Notice sent to Assured Guaranty Corp. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1180 | 11/15/2012 | RCPC00047620-RCPC00047624 | | Case No. 12-12032-Proof of Claim #4682 against GMAC Mortgage, LLC-Notice sent to Assured Guaranty Corp. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1181 | 11/15/2012 | RCPC00047625-RCPC00047629 | | Case No. 12-120032-Proof of Claim #4705 against  GMAC Mortgage, LLC - Notice sent to AIG Financial Products, Inc. by debtor  GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1182 | 11/16/2012 | RCPC00047625-RCPC00047629 | | Case No. 12-12032-Proof of Claim #5264 against GMAC Mortgage, LLC-Notice sent to Assured Guaranty Municipal Corp. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1183 | 11/15/2012 | RCPC00047630-RCPC00047634 | | Case No. 12-12032-Proof of Claim #4706 against GMAC Mortgage, LLC-Notice sent to Assured Guaranty Municipal Corp. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1184 | 11/15/2012 | RCPC00047635-RCPC00047639 | | Case No. 12-12019-Proof of Claim #4707 against Residential Funding Company, LLC-Notice sent to Assured Guaranty Corp. by debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1185 | 11/15/2012 | RCPC00047640-RCPC00047644 | | Case No. 12-12019-Proof of Claim #4708 against Residential Funding Company, LLC-Notice sent to Assured Guaranty Municipal Corp. by debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits, and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
| 1186 | 11/15/2012 | RCPC00047645-RCPC00047696 | | Case No. 12-12032-Proof of Claim #4710 against GMAC Mortgage, LLC-Notice sent to Assured Guaranty Municipal Corp. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1187 | 11/15/2012 | RCPC00047697-RCPC00047747 | | Case No. 12-12019-Proof of Claim #4712 against Residential Funding Company, LLC with attachments-Notice sent to Assured Guaranty Corp. by debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1188 | 11/15/2012 | RCPC00047748-RCPC00047752 | | Case No. 12-12032-Proof of Claim #4713 against GMAC Mortgage, LLC-Notice sent to Assured Guaranty Municipal Corp. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1189 | 11/15/2012 | RCPC00047753-RCPC00047757 | | Case No. 12-12032-Proof of Claim #4715 against GMAC Mortgage, LLC-Notice sent to AG Financial Products Inc. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1190 | 11/16/2012 | RCPC00047894-RCPC00047897 | | Case No. 12-12020-Proof of Claim #4809-Notice sent to creditor Ameritas Life Insurance Corp. from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1191 | 11/16/2012 | RCPC00047898-RCPC00047901 | | Case No. 12-12020-Proof of Claim #4811-Notice sent to creditor Acacia Life Insurance Corp. from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1192 | 11/16/2012 | RCPC00047902-RCPC00047905 | | Case No. 12-12052-Proof of Claim #4812 -Notice sent to creditor Acacia Life Insurance Corp. from debtor Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1193 | 11/16/2012 | RCPC00047906-RCPC00047909 | | Case No. 12-12020-Proof of Claim #4815-Notice sent to creditor The Union Central Life Insurance Company from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1194 | 11/16/2012 | RCPC00047910-RCPC00047913 | | Case No. 12-12019-Proof of Claim #4816-Notice sent to creditor Ameritas Life Insurance Corp. from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1195 | 11/15/2012 | RCPC00047914-RCPC00047918 | | Case No. 12-12032-Proof of Claim #4877 against GMAC Mortgage, LLC-Notice sent to AG Financial Products Inc. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1196 | 11/15/2012 | RCPC00047919-RCPC00047957 | | Case No. 12-12020-Proof of Claim #4928-Notice sent to creditor Pru Alpha Fixed Income Opportunity Master Fund I, L.P. from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1197 | 11/15/2012 | RCPC00047958-RCPC00047996 | | Case No. 12-12029-Proof of Claim #4933-Notice sent to creditor Pru Alpha Fixed Income Opportunity Master Fund I, L.P. from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1198 | 11/15/2012 | RCPC00047997-RCPC00048033 | | Case No. 12-12019-Proof of Claim #5091 -Notice sent to creditor Pruco Life Insurance Company of New Jersey from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1199 | 11/15/2012 | RCPC00048034-RCPC00048070 | | Case No. 12-12019-Proof of Claim #5092 -Notice sent to creditor Pruco Life Insurance Co. from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1200 | 11/15/2012 | RCPC00048071-RCPC00048107 | | Case No. 12-12020-Proof of Claim #5093-Notice sent to creditor Pruco Insurance Co. from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1201 | 11/15/2012 | RCPC00048108-RCPC00048144 | | Case No. 12-12029-Proof of Claim #5094 -Notice sent to creditor Pruco Life Insurance Company of New Jersey from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1202 | 11/15/2012 | RCPC00048145-RCPC00048181 | | Case No. 12-12029-Proof of Claim #5095 -Notice sent to creditor Pruco Insurance Co. from debtor GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1203 | 11/15/2012 | RCPC00048182-RCPC00048218 | | Case No. 12-12061-Proof of Claim #5096 -Notice sent to creditor Pruco Life Insurance Company of New Jersey from debtor Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1204 | 11/16/2012 | RCPC00048219-RCPC00048330 | | Case No. 12-12019, Proofs of Claim #5130-5145-Notice sent to creditor HSBC Bank USA, N.A., as Trustee from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1205 | 11/16/2012 | RCPC00048331-RCPC00049100 | | Case No. 12-12032, Proofs of Claim #5146-5255-Notice sent to creditor HSBC Bank USA, N.A., as Trustee from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1206 | 11/16/2012 | RCPC00049106-RCPC00049118 | | Case No. 12-12032-Proof of Claim #5266 against GMAC Mortgage, LLC-Notice sent to AMBAC Assurance Corp. and the Segregated Account of AMBAC Assurance Corp. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1207 | 11/16/2012 | RCPC00049119-RCPC00049131 | | Case No. 12-12053-Proof of Claim #5269 against Residential Asset Mortgage Products, Inc. sent to AMBAC Assurance Corp. and the Segregated Account of AMBAC Assurance Corp. by debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1208 | 11/16/2012 | RCPC00049132-RCPC00049148 | | Case No. 12-12019-Proof of Proof of Claim #5274 against Residential Funding Company, LLC-Notice sent to AMBAC Assurance Corp. and the Segregated Account of AMBAC Assurance Corp. by debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1209 | 11/16/2012 | RCPC00049517-RCPC00049521 | | Case No. 12-12019-Proof of Claim #5357 against Residential Funding Company, LLC-Notice sent to Assured Guaranty Municipal Corp. by debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1210 | 11/16/2012 | RCPC00049522-RCPC00049526 | | Case No. 12-12032-Proof of Claim #5382 against GMAC Mortgage, LLC-Notice sent to Assured Guaranty Corp. by debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1211 | 11/16/2012 | RCPC00049527-RCPC00049665 | | Case No. 12-12042-Proof of Claim #5846 against Homecomings Financial, LLC with attachments-Notice sent to creditor MBIA Insurance Company from debtor Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1212 | 11/16/2012 | RCPC00049666-RCPC00049804 | | Case No. 12-12020-Proof of Claim #5847 against Residential Capital, LLC with attachments-Notice sent to creditor MBIA Insurance Company from debtor Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1213 | 11/16/2012 | RCPC00049805-RCPC00049943 | | Case No. 12-12061-Proof of Claim #5848 against Residential Funding Mortgage Securities II, LLC with attachments-Notice sent to creditor MBIA Insurance Company from debtor Residential Funding Mortgage Securities II, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1214 | 11/16/2012 | RCPC00049944-5RCPC0000082 | | Case No. 12-12019-Proof of Claim #5849 against Residential Funding Company, LLC with attachments-Notice sent to creditor MBIA Insurance Company from debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1215 | 11/16/2012 | RCPC00050083-RCPC00050221 | | Case No. 12-12053-Proof of Claim #5850 against Residential Asset Mortgage Products, Inc. with attachments-Notice sent to creditor MBIA Insurance Company from debtor Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1216 | 11/16/2012 | RCPC00050222-RCPC00050360 | | Case No. 12-12032-Proof of Claim #5851 against GMAC Mortgage, LLC  with attachments-Notice sent to creditor MBIA Insurance Company from debtor GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1217 | 11/21/2012 | RCPC00050361-RCPC00050411 | | Case No. 12-12019-Proof of Claim #5879 by Assured Guaranty Municipal Corp. against Residential Funding Company, LLC  with attachments-Notice sent to Assured Guaranty Municipal Corp. by debtor Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1218 | 11/30/2012 | RCPC00050412-RCPC00050763 | | FHFA Proofs of Claim 6296-6301 | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1219 | | RCPC00052524-RCPC00052618 | | Case Nos. 12-12019-12040, 12-12042-12066, 12-12068-12071, Proofs of Claims #6451-6501 with attachment -Notice sent to Deutsche Bank National Trust Company and Deutsche Bank Trust Co. Americas, as trustee of certain mortgage-backed securities trusts, and certain affiliates, from Debtors Residential Capital, LLC, et al. (All Debtors) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1220 | | RCPC00052619-RCPC00052648 | | Case Nos. 12-12019-12040, 12-12042-12066, 12-12068-12071, Proofs of Claim #6502-6552-Notice sent to creditor Wells Fargo Bank, as Trustee, from All Debtors | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1221 | | RCPC00052649-RCPC00052682 | | Case Nos. 12-12019-12040, 12-12042-12066, 12-12068-12071, Proofs of Claim #6553-6603-Notice sent to creditor Wells Fargo Bank, as Master Servicer, from All Debtors | Yes, for limited purpose (ILS) | Yes | | | | | | |

43

Plaintiffs and Plan Proponents' Exhibits, and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Admit Without Objection** | **Authentication Waiver** | **JSN Phase II Objections** | **Admit Without Objection** | **Authentication Waiver** | **Phase I Objection** | **Phase I JSN Duplicate** | |
| 1222 | 3/4/2013 | RCPC00052683-RCPC00052777 | | Case Nos. 12-12019-12040, 12-12042-12066, 12-12068-71, First Amended Proofs of Claims #6706-6756 with attachment -Notice sent to Deutsche Bank National Trust Company and Deutsche Bank Trust Co. Americas, as trustee of certain mortgage-backed securities trusts, and certain affiliates, from Debtors Residential Capital, LLC, et al. (All Debtors) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1223 | | RCPC00052778-RCPC00052805 | | Case No. 12-12020-Proof of Claim #6757 filed by Bank of NY Mellon as Master Servicer | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1224 | 10/15/2012 | RCPC00054893-RCPC00054898 | | Proof of Claim No. 1210 (Example Loan Modification Claim) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1225 | 6/25/2012 | RCPC00055222-RCPC00055223 | | Proof of Claim No. 205 (Example Servicing Claim) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1226 | 10/31/2012 | RCPC00055224 | | Proof of Claim No. 2051 (Example Insurance Claim) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1227 | 11/5/2012 | RCPC00055225 | | Proof of Claim No. 2374 (Example Standing Claim) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1228 | 7/18/2012 | RCPC00055226-RCPC00055242 | | Proof of Claim No. 332 (Example Other/Indiscernible Claim) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1229 | 11/7/2012 | RCPC00055243-RCPC00055261 | | Proof of Claim No. 3502 (Example Origination Claim) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1230 | 11/12/2012 | RCPC00055262-RCPC00055272 | | Case No. 12-12019-Ally Commercial Finance, LLC Proof of Claim #3957 against Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1231 | 11/12/2012 | RCPC00055273-RCPC00055284 | | Case No. 12-12020-Ally Commercial Finance, LLC Proof of Claim #3958 against Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1232 | 11/12/2012 | RCPC00055285-RCPC00055375 | | Case No. 12-12032-Ally Commercial Finance, LLC Proof of Claim #3959 against GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1233 | 11/12/2012 | RCPC00055376-RCPC00055386 | | Case No. 12-12032-BMMZ Holdings LLC Proof of Claim #3960 against GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1234 | 11/12/2012 | RCPC00055387-RCPC00055422 | | Case No. 12-12061-Ally Bank Proof of Claim #3961 against Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1235 | 11/12/2012 | RCPC00055423-RCPC00055458 | | Case No. 12-12053-Ally Bank Proof of Claim #3962 against Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1236 | 11/12/2012 | RCPC00055459-RCPC00055494 | | Case No. 12-12054-Ally Bank Proof of Claim #3963 against Residential Assets Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1237 | 11/12/2012 | RCPC00055495-RCPC00055589 | | Case No. 12-12059-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3964 against Residential Funding Mortgage Exchange, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1238 | 11/12/2012 | RCPC00055590-RCPC00055686 | | Case No. 12-12063-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3967 against Residential Mortgage Real Estate Holdings, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1239 | 11/12/2012 | RCPC00055687-RCPC00055783 | | Case No. 12-12052-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3968 against Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1240 | 11/12/2012 | RCPC00055784-RCPC00055880 | | Case No. 12-12065-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3972 against RFC Asset Holdings II, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1241 | 11/12/2012 | RCPC00055881-RCPC00055977 | | Case No. 12-12055-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3973 against Residential Services of Alabama, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1242 | 11/12/2012 | RCPC00055978-RCPC00056071 | | Case No. 12-12060-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3974 against Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1243 | 11/12/2012 | RCPC00056072-RCPC00056165 | | Case No. 12-12061-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3975 against Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1244 | 11/12/2012 | RCPC00056166-RCPC00056259 | | Case No. 12-12062-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3976 against Residential Funding Real Estate Holdings, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1245 | 11/12/2012 | RCPC00056260-RCPC00056353 | | Case No. 12-12071-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3977 against RFC SFJV-2002, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1246 | 11/12/2012 | RCPC00056354-RCPC00056447 | | Case No. 12-12053-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3978 against Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | |
| 1247 | 11/12/2012 | RCPC00056448-RCPC00056541 | | Case No. 12-12069-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3979 against RFC Construction Funding, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1248 | 11/12/2012 | RCPC00056542-RCPC00056636 | | Case No. 12-12020-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3980 against Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1249 | 11/12/2012 | RCPC00056637-RCPC00056726 | | Case No. 12-12039-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3981 against Home Connects Lending Services, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1250 | 11/12/2012 | RCPC00056727-RCPC00056816 | | Case No. 12-12042-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3982 against Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1251 | 11/12/2012 | RCPC00056817-RCPC00056906 | | Case No. 12-12023-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3983 against DOA Properties IX (Lots-Other), LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1252 | 11/12/2012 | RCPC00056907-RCPC00056996 | | Case No. 12-12024-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3984 against EPRE LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1253 | 11/12/2012 | RCPC00056997-RCPC00057086 | | Case No. 12-12025-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3985 against Equity Investment I, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1254 | 11/12/2012 | RCPC00057087-RCPC00057176 | | Case No. 12-12028-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3986 against Executive Trustee Services, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1255 | 11/12/2012 | RCPC00057177-RCPC00057265 | | Case No. 12-12050-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3987 against RAHI Real Estate Holdings, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1256 | 11/12/2012 | RCPC00057266-RCPC00057360 | | Case No. 12-12058-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3988 against Residential Consumer Services, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1257 | 11/12/2012 | RCPC00057361-RCPC00057455 | | Case No. 12-12056-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3989 against Residential Consumer Services of Ohio, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1258 | 11/12/2012 | RCPC00057456-RCPC00057550 | | Case No. 12-12019-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3990 against Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1259 | 11/12/2012 | RCPC00057551-RCPC00057645 | | Case No. 12-12057-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3991 against Residential Consumer Services of Texas, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1260 | 11/12/2012 | RCPC00057646-RCPC00057740 | | Case No. 12-12066-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3992 against RFC Asset Management, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1261 | 11/12/2012 | RCPC00057741-RCPC00057830 | | Case No. 12-12026-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3993 against ETS of Virginia, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1262 | 11/12/2012 | RCPC00057831-RCPC00057925 | | Case No. 12-12054-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3994 against Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1263 | 11/12/2012 | RCPC00057926-RCPC00058020 | | Case No. 12-12070-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3995 against RFC REO LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1264 | 11/12/2012 | RCPC00058021-RCPC00058115 | | Case No. 12-12064-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3996 against RFC-GSAP Servicer Advance, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1265 | 11/12/2012 | RCPC00058116-RCPC00058210 | | Case No. 12-12069-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3997 against RFC Borrower LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1266 | 11/12/2012 | RCPC00058211-RCPC00058305 | | Case No. 12-12035-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3998 against GMACM Borrower LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1267 | 11/12/2012 | RCPC00058306-RCPC00058400 | | Case No. 12-12031-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #3999 against GMAC Mortgage USA Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1268 | 11/12/2012 | RCPC00058401-RCPC00058497 | | Case No. 12-12046-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4000 against PATI B, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1269 | 11/12/2012 | RCPC00058498-RCPC00058592 | | Case No. 12-12033-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4001 against GMAC Residential Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1270 | 11/12/2012 | RCPC00058593-RCPC00058687 | | Case No. 12-12034-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4002 against GMAC RH Settlement Services, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1271 | 11/12/2012 | RCPC00058688-RCPC00058782 | | Case No. 12-12037-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4003 against GMACR Mortgage Products, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1272 | 11/12/2012 | RCPC00058783-RCPC00058877 | | Case No. 12-12043-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4004 against Ladue Associates, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1273 | 11/12/2012 | RCPC00058878-RCPC00058972 | | Case No. 12-12051-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4005 against RCSFJV2004, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

12-12020-mg   Doc 5716   Filed 11/12/13   Entered 11/12/13 23:19:47   Pg 227 of
264
Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Objections and Information Relating to Phase II** | | | **Objections and Information Relating to Phase I** | | | | |
| 1274 | 11/12/2012 | RCPC00058973-RCPC00058996 | | Case No. 12-12058-Motors Insurance Corporation Proof of Claim # 4006 against Residential Consumer Services, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1275 | 11/12/2012 | RCPC00058997-RCPC00059091 | | Case No. 12-12036-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4007 against GMACM REO LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1276 | 11/12/2012 | RCPC00059092-RCPC00059115 | | Case No. 12-12028-Motors Insurance Corporation Proof of Claim # 4008 against Executive Trustee Services, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1277 | 11/12/2012 | RCPC00059116-RCPC00059139 | | Case No. 12-12019-Motors Insurance Corporation Proof of Claim # 4009 against Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1278 | 11/12/2012 | RCPC00059140-RCPC00059181 | | Case No. 12-12029-Ally Securities, LLC Proof of Claim #4011 against GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1279 | 11/12/2012 | RCPC00059182-RCPC00059276 | | Case No. 12-12027-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4013 against ETS of Washington, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1280 | 11/12/2012 | RCPC00059277-RCPC00059300 | | Case No. 12-12042-Motors Insurance Corporation Proof of Claim # 4015 against Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1281 | 11/12/2012 | RCPC00059301-RCPC00059343 | | Case No. 12-12020-Ally Securities, LLC Proof of Claim #4016 against Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1282 | 11/12/2012 | RCPC00059344-RCPC00059367 | | Case No. 12-12032-Motors Insurance Corporation Proof of Claim # 4018 against GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1283 | 11/12/2012 | RCPC00059368-RCPC00059462 | | Case No. 12-12032-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4019 against GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1284 | 11/12/2012 | RCPC00059463-RCPC00059487 | | Case No. 12-12020-Motors Insurance Corporation Proof of Claim # 4020 against Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1285 | 11/12/2012 | RCPC00059488-RCPC00059529 | | Case No. 12-12019-Ally Securities, LLC Proof of Claim #4022 against Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1286 | 11/12/2012 | RCPC00059530-RCPC00059624 | | Case No. 12-12030-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4023 against GMAC Model Home Finance I, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1287 | 11/12/2012 | RCPC00059625-RCPC00059666 | | Case No. 12-12032-Ally Securities, LLC Proof of Claim #4024 against GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1288 | 11/12/2012 | RCPC00059667-RCPC00059690 | | Case No. 12-12027-Motors Insurance Corporation Proof of Claim # 4025 against ETS of Washington, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1289 | 11/12/2012 | RCPC00059691-RCPC00059732 | | Case No. 12-12042-Ally Securities, LLC Proof of Claim #4026 against Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1290 | 11/12/2012 | RCPC00059733-RCPC00059756 | | Case No. 12-12021-Motors Insurance Corporation Proof of Claim # 4028 against ditech, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1291 | 11/12/2012 | RCPC00059757-RCPC00059798 | | Case No. 12-12052-Ally Securities, LLC Proof of Claim #4029 against Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1292 | 11/12/2012 | RCPC00059799-RCPC00059892 | | Case No. 12-12022-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4030 against DOA Holding Properties, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1293 | 11/12/2012 | RCPC00059893-RCPC00059934 | | Case No. 12-12053-Ally Securities, LLC Proof of Claim #4031 against Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1294 | 11/12/2012 | RCPC00059935-RCPC00059976 | | Case No. 12-12054-Ally Securities, LLC Proof of Claim #4033 against Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1295 | 11/12/2012 | RCPC00059977-RCPC00060073 | | Case No. 12-12029-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4034 against GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1296 | 11/12/2012 | RCPC00060074-RCPC00060088 | | Case No. 12-12032-Ally Investment Management, LLC Proof of Claim #4035 against GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1297 | 11/12/2012 | RCPC00060089-RCPC00060101 | | Case No. 12-12020-Ally Investment Management, LLC Proof of Claim #4036 against Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1298 | 11/12/2012 | RCPC00060102-RCPC00060195 | | Case No. 12-12044-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4037 against Passive Asset Transactions, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1299 | 11/12/2012 | RCPC00060196-RCPC00060232 | | Case No. 12-12060-GMAC Mortgage Group, LLC Proof of Claim # 4039 against Residential Funding Mortgage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1300 | 11/12/2012 | RCPC00060233-RCPC00060326 | | Case No. 12-12021-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4041 against ditech, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits to and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Objections and Information Relating to Phase II** | | | **Objections and Information Relating to Phase I** | | | | |
| 1301 | 11/12/2012 | RCPC00060327-RCPC00060366 | | Case No. 12-12020-GMAC Mortgage Group, LLC Proof of Claim # 4043 against Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1302 | 11/12/2012 | RCPC00060367-RCPC00060402 | | Case No. 12-12039-GMAC Mortgage Group, LLC Proof of Claim # 4045 against Home Connects Lending Services, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1303 | 11/12/2012 | RCPC00060403-RCPC00060499 | | Case No. 12-12047-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4046 against PATI Real Estate Holdings, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1304 | 11/12/2012 | RCPC00060500-RCPC00060537 | | Case No. 12-12032-GMAC Mortgage Group, LLC Proof of Claim # 4047 against GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1305 | 11/12/2012 | RCPC00060538-RCPC00060574 | | Case No. 12-12019-GMAC Mortgage Group, LLC Proof of Claim # 4048 against Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1306 | 11/12/2012 | RCPC00060575-RCPC00060611 | | Case No. 12-12052-GMAC Mortgage Group, LLC Proof of Claim # 4049 against Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1307 | 11/12/2012 | RCPC00060612-RCPC00060705 | | Case No. 12-12045-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4050 against PATI A, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1308 | 11/12/2012 | RCPC00060706-RCPC00060741 | | Case No. 12-12054-GMAC Mortgage Group, LLC Proof of Claim # 4051 against Residential Asset Securities Corporation | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1309 | 11/12/2012 | RCPC00060742-RCPC00060783 | | Case No. 12-12061-Ally Securities, LLC Proof of Claim #4052 against Residential Funding Mortgage Securities II, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1310 | 11/12/2012 | RCPC00060784-RCPC00060880 | | Case No. 12-12038-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4053 against HFN REO Sub II, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1311 | 11/12/2012 | RCPC00060881-RCPC00060977 | | Case No. 12-12048-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4054 against RAHI A, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1312 | 11/12/2012 | RCPC00060978-RCPC00061013 | | Case No. 12-12019-Ally Bank Proof of Claim #4055 against Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1313 | 11/12/2012 | RCPC00061014-RCPC00061049 | | Case No. 12-12029-Ally Bank Proof of Claim #4057 against GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1314 | 11/12/2012 | RCPC00061050-RCPC00061085 | | Case No. 12-12039-Ally Bank Proof of Claim #4058 against Home Connects Lending Services, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1315 | 11/12/2012 | RCPC00061086-RCPC00061121 | | Case No. 12-12052-Ally Bank Proof of Claim #4059 against Residential Accredit Loans, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1316 | 11/12/2012 | RCPC00061122-RCPC00061157 | | Case No. 12-12042-Ally Bank Proof of Claim #4061 against Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1317 | 11/12/2012 | RCPC00061158-RCPC00061204 | | Case No. 12-12032-Ally Bank Proof of Claim #4062 against GMAC Mortgage, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1318 | 11/12/2012 | RCPC00061205-RCPC00061250 | | Case No. 12-12020-Ally Bank Proof of Claim #4063 against Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1319 | 11/12/2012 | RCPC00061251-RCPC00061287 | | Case No. 12-12042-GMAC Mortgage Group, LLC Proof of Claim #4065 against Homecomings Financial, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1320 | 11/12/2012 | RCPC00061288-RCPC00061324 | | Case No. 12-12053-GMAC Mortgage Group, LLC Proof of Claim #4066 against Residential Asset Mortgage Products, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1321 | 11/12/2012 | RCPC00061325-RCPC00061361 | | Case No. 12-12028-GMAC Mortgage Group, LLC Proof of Claim #4067 against Executive Trustee Services, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1322 | 11/12/2012 | RCPC00061362-RCPC00061398 | | Case No. 12-12029-GMAC Mortgage Group, LLC Proof of Claim #4068 against GMAC-RFC Holding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1323 | 11/12/2012 | RCPC00061399-RCPC00061440 | | Case No. 12-12060-Ally Securities, LLC Proof of Claim #4069 against Residential Funding Mortage Securities I, Inc. | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1324 | 11/12/2012 | RCPC00061441-RCPC00061451 | | Case No. 12-12019-BMMZ Holdings LLC Proof of Claim #4070 against Residential Funding Company, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1325 | 11/12/2012 | RCPC00061452-RCPC00061463 | | Case No. 12-12020-BMMZ Holdings LLC Proof of Claim #4071 against Residential Capital, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1326 | 11/12/2012 | RCPC00061464-RCPC00061560 | | Case No. 12-12049-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4072 against RAHI B, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |

Plaintiffs and Plan Proponents' Exhibits and JSNs and Notes Trustees' Objections

| Exhibit No. | Date | Bates Range | Dep. Ex. No. | Description | Objections and Information Relating to Phase II | | | Objections and Information Relating to Phase I | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Admit Without Objection | Authentication Waiver | JSN Phase II Objections | Admit Without Objection | Authentication Waiver | Phase I Objection | Phase I JSN Duplicate | Admitted |
| 1327 | 11/12/2012 | RCPC00061561-RCPC00061650 | | Case No. 12-12040-Ally Financial Inc. and Non-Debtor Affiliates Proof of Claim #4073 against Homecomings Financial Real Estate Holdings, LLC | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1328 | 11/9/2012 | RCPC00061651-RCPC00061654 | | Proof of Claim No. 4167 (Example Wrongful Foreclosure Claim) | Yes, for limited purpose (ILS) | Yes | | | | | | |
| 1329 | 11/7/2012; 9/5/2013; 9/16/2013 | RCPC00061800-RCPC00061865 | | Proof of Claim Nos. 2781 , 7164, and 7170 filed by Syncora Guarantee f/k/a XL Capital | Yes, for limited purpose (ILS) | Yes | | | | | | |

| Objection Key | |
|---|---|
| R | Relevance (FRE 402) |
| F | Lack of Foundation (FRE 602) |
| H | Hearsay (FRE 802) |
| C | Completeness (FRE 106) |

# EXHIBIT B

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AJA | Memorandum sent from S. Rohlig to OneSource Workflow Manager; cc to J. Frucci, J. Aretakis; re: Revised ResCap Bankruptcy Settlement | 6/19/2013 | AFIJSN_0121140 | AFIJSN_0121152 | Confidential | Aretakis Ex. 6 | | Yes | H | |
| DX AJB | Memorandum sent from A. Celini, Senior Vice President, GMAC Bank, cc M. Rizzo; re: Broker Agreement - GMAC Mortgage LLC & GMAC Bank | 11/30/2008 | ALLY_0017944 | ALLY_0017947 | Confidential | | | Yes | H | |
| DX AJC | Schedule to the ISDA Master Agreement dated as of March 14, 2008 between GMAC Mortgage, LLC and GMAC Bank | 3/14/2008 | ALLY_0018074 | ALLY_0018083 | Confidential | | Yes for limited purpose (ILS) | Yes | | PX 501 |
| DX AJD | Amended and Restated Schedule (Net Funding) dated as of July 1, 2010 to the ISDA Master Agreement dated as of August 31, 2007 between GMAC Mortgage LLC and Ally Bank (f/k/a/ GMAC Bank) | 7/1/2010 | ALLY_0018118 | ALLY_0018126 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJE | Schedule to the ISDA Master Agreement dated as of July 1, 2008 (amending and superseding Schedule dated as of May 1, 2007) between GMAC Mortgage, LLC and GMAC Bank | 7/1/2008 | ALLY_0018237 | ALLY_0018244 | Confidential | Cortese Ex. 12 | Yes for limited purpose (ILS) | Yes | | PX 502 |
| DX AJF | Second Addendum to Master Mortgage Loan Purchase and Sale Agreeement dated as of December 15, 2001 and amended as of January 22, 2002 between GMAC Mortgage Corporation and GMAC Bank | 6/4/2002 | ALLY_0018245 | ALLY_0018246 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJG | Third Addendum to Master Mortgage Loan Purchase and Sale Agreement dated as of December 15, 2001 and amended as of January 22, 2002 and June 4, 2002 between GMAC Mortgage Corporation and GMAC Bank | 1/1/2003 | ALLY_0018247 | ALLY_0018248 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJH | Fourth Addendum to Master Mortgage Loan Purchase and Sale Agreement dated as of December 15, 2001 and amended as of January 22, 2002, June 4, 2002, and January 1, 2003 between GMAC Mortgage Corporation and GMAC Bank | 9/1/2004 | ALLY_0018249 | ALLY_0018250 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJI | Master Mortgage Loan Purchase and Sale Agreement Residential Mortgage Loans and Home Equity Loans/Lines of Credit between GMAC Bank "Seller" and GMAC Mortgage Corporation "Purchaser" | 12/15/2001 | ALLY_0018253 | ALLY_0018274 | Confidential | | Yes for limited purpose (ILS) | Yes | | PX 503 |
| DX AJJ | Amended and Restated Master Mortgage Loan Purchase and Sale Agreement between GMAC Bank "Seller" and GMAC Mortgage, LLC "Purchaser" | 6/1/2007 | ALLY_0018275 | ALLY_0018290 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJK | Master Mortgage Loan Purchase and Sale Agreement Residential Mortgage Loans and Home Equity Loans/Lines of Credit between GMAC Bank "Seller" and GMAC Mortgage, LLC "Purchaser" | 10/31/2006 | ALLY_0018291 | ALLY_0018319 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJL | $430,000,000 Loan Agreement by and among Passive Asset Transactions, LLC, as Borrower, RFC Asset Holdings II, LLC, as Borrower, Residential Funding Company, LLC, as Guarantor, Residential Capital, LLC as Guarantor, GMAC LLC as Initial Lender and as Lender Agent and Certain Other Financial Institutions and Persons from time to time party hereto as Lenders | 11/20/2008 | ALLY_0023145 | ALLY_0023206 | Confidential | | Yes for limited purpose (ILS) | Yes | | |

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AJM | 370,000,000 Credit Agreement by and among Passive Asset Transactions, LLC, as Borrower, RFC Asset Holdings II, LLC, as Borrower, Residential Funding Company, LLC, as Guarantor, GMAC Mortgage, LLC, as Guarantor, Residential Capital, LLC, as Guarantor, GMAC LLC, as Initial Lender and as Credit Agent and Omnibus Agent and Certain Other Financial Institutions and Persons from time to time party hereto as Lenders | 6/1/2009 | ALLY_0023953 | ALLY_0024093 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJN | Schedule to the ISDA Master Agreement dated as of October 1, 2004 and amended as of March 30, 2005 between GMAC Mortgage Corporation and GMAC Bank | 3/30/2005 | ALLY_0041601 | ALLY_0041609 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJO | ISDA Master Agreement between GMAC Mortgage, LLC and GMAC Bank | 6/12/2007 | ALLY_0041610 | ALLY_0041627 | Confidential | Cortese Ex. 14 | Yes for limited purpose (ILS) | Yes | | |
| DX AJP | Amended and Restated Schedule to the 2002 ISDA Master Agreement dated as of April 1, 2011 between GMAC Mortgage, LLC and Ally Bank | 4/1/2011 | ALLY_0041665 | ALLY_0041677 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJQ | Letter Agreement between GMAC Mortgage LLC and Ally Bank re: Confirmation of the Total Return Swap Relating to Mortgage Servicing Rights of Ally Bank | 4/1/2011 | ALLY_0041799 | ALLY_0041807 | Confidential | Cortese Ex. 17 | Yes for limited purpose (ILS) | Yes | | |
| DX AJR | Schedule to the ISDA Master Agreement dated as of October 1, 2004 between GMAC Mortgage Corporation and GMAC Bank | 10/1/2004 | ALLY_0041808 | ALLY_0041817 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJS | Amended and Restated Operating Agreement between General Motors Corporation, GMAC LLC, and Residential Capital LLC | 11/27/2006 | ALLY_0041818 | ALLY_0041830 | Confidential | Cortese Ex. 1 | Yes for limited purpose (ILS) | Yes | | PX 505 |
| DX AJT | Amended and Restated Loan Agreement by and among Residential Funding Company, LLC, as Borrower, GMAC Mortgage, LLC, as Borrower, Residential Capital, LLC and Certain Other Affiliates of the Borrowers, as Guarantors, Certain Affiliates of the Borrowers and the Guarantors party hereto as Obligors, GMAC Inc., as Initial Lender and as Lender Agent and Certain Other Financial Institutions and Persons from time to time party hereto as Lenders | 12/30/2009 | ALLY_0066146 | ALLY_0066213 | Confidential | | Admitted Phase I | Yes | | PX 6 |
| DX AJU | Intercreditor Agreement | 6/8/2008 | ALLY_0066819 | ALLY_0066901 | Confidential | | Admitted Phase I | Yes | | PX 2 |
| DX AJV | Email and attachment sent from J. Ebacher to T. Marano, J. Jones, J. Young, T. Hamzehpour, D. Flavin, T. Marshall, S. Hengel, J. Owings, T. Mortensen, B. Hall, L. Voss, K. Boland, S. Yablonowitz, R. Herbert, and R. Kent; cc to M. Calderwood and T. Rowe; re: FW: Houlihan - Resort Finance Valuation Report | 7/24/2008 | ALLY_0102228 | ALLY_0102284 | Confidential | | Yes | Yes | | |
| DX AJW | Amended and Restated Servicing Agreement by and between Ally Bank Owner and GMAC Mortgage, LLC Servicer | 5/11/2012 | ALLY_0114469 | ALLY_0114703 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AJX | GMAC LLC Consent to Action (Dec. 21, 2008) | 1/16/2009 | ALLY_0114717 | ALLY_0115342 | Confidential | | | Yes | H | |
| DX AJY | Operating Agreement between General Motors Corporation, General Motors Acceptance Corporation and Residential Capital Corporation | 6/24/2005 | ALLY_0140795 | ALLY_0140808 | Confidential | | Yes for limited purpose (ILS) | Yes | | PX 510 |

2

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AJZ | Memorandum sent from J. Cortese to File; re: Ally Bank/GMAC Mortgage Affiliate total Return Swap Accounting analysis Revised for April 2011 Agreement | 7/25/2011 | ALLY_0171117 | ALLY_0171124 | Confidential | | | Yes | H | |
| DX AKA | Email sent from C. Quenneville to W. Marx; re: ResCap Board Action - Tax Allocation Agreement | 9/18/2012 | ALLY_0178777 | ALLY_0178777 | Confidential | | | Yes | H | |
| DX AKB | 2005 and 2006 Agreements for the Allocation of United States Federal Income Taxes between General Motors Acceptance Corporation and Residential Capital Corporation | | ALLY_0178779 | ALLY_0178804 | Confidential | | | Yes | H in part | |
| DX AKC | Email and attachment sent from B. Yastine to X. Portillo; re: FW: Support Letter (Executed Copy) | 1/31/2012 | ALLY_0194816 | ALLY_0194845 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AKD | Amended and Restated Master Mortgage Loan Purchase and Sale Agreement Residential Mortgage Loans and Home Equity Loans/Lines of Credit between GMAC Bank "Seller" and GMAC Mortgage, LLC "Purchaser" | 6/26/2008 | ALLY_0201210 | ALLY_0201225 | Confidential | Cortese Ex. 2; Young Ex. 6 | Admitted Phase I | Yes | | PX 15 |
| DX AKE | Addendum to Master Mortgage Purchase and Sale Agreement dated as of December 15, 2001 between GMAC Mortgage Corporation and GMAC Bank | 1/22/2002 | ALLY_0201226 | ALLY_0201227 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AKF | Memorandum sent from W. Marx to Tax Accounting File-Final GM Tax Allocation True-Up Accounting; re: RE: Final Tax Liabilities Allocated From GM, November 30 2006 | 1/25/2008 | ALLY_0208456 | ALLY_0208460 | Confidential | | | Yes | H | |
| DX AKG | $1,100,000,000 Amended and Restated Loan Agreement by and among Residential Funding Company, LLC and GMAC Mortgage, LLC, as Borrowers, Residential Capital, LLC and Certain Other Affiliates of the Borrowers, as Guarantors, GMAC Inc. as Initial Lender and as Lender Agent and Certain Other Financial Institutions and Persons from time to time party hereto as Lenders | 12/30/2009 | ALLY_0240633 | ALLY_0240782 | Confidential | | Admitted Phase I | Yes | | PX 9 |
| DX AKH | Email chain and attachment sent from J. Young to J. Cortese; cc to L. LaCombe, and M. Anspach; re: FW Bank R&W Deloitte Memo | 2/20/2012 | ALLY_0242452 | ALLY_0242460 | Confidential | | | Yes | H | |
| DX AKI | Email sent from J. Mackey to W. Marx; cc to J. Aretakis; re: RE: High Priority-Tax Allocation- Large Payment Possibly due ResCap October 30 | 10/15/2010 | ALLY_0245484 | ALLY_0245485 | Confidential | Young Ex. 4 | | Yes | H | |
| DX AKJ | Email sent from J. Young to J. Kearney; re: FW: Interview Summary | 2/24/2012 | ALLY_0253931 | ALLY_0253932 | Confidential | | | Yes | H | |
| DX AKK | ResCap Consolidation, 2011 U.S. Corporation Income Tax Return (Form 1120) | | ALLY_0336317 | ALLY_0336756 | Confidential | | Yes | Yes | | |
| DX AKL | Ally, Residential Capital, LLC, Consolidated Financial Statements for the Years Ended December 31, 2011 and 2010 | | ALLY_0336757 | ALLY_0336836 | Confidential | | Yes | Yes | | |
| DX AKM | ResCap Consolidation, 2010 U.S. Corporation Income Tax Return (Form 1120) | | ALLY_0337039 | ALLY_0337127 | Confidential | | Yes | Yes | | |
| DX AKN | ResCap Consolidation, U.S. Corporation Income Tax Return for the tax year beginning 11/02/2009 and ending 12/31/2009 (Form 1120) | | ALLY_0337325 | ALLY_0337408 | Confidential | | Yes | Yes | | |
| DX AKO | Description of 2005 and 2006 Tax Allocation to ResCap | 11/27/2012 | ALLY_0338094 | ALLY_0338097 | Confidential | | | Yes | H | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AKP | Email sent from T. Kushman to J. Young, J. Centurino, C. Evans, J. Gravelle, C. Scott; cc to L. LaCombe, J. Cortese, D. Shevsky , T. Houghton, H. Benton; re: RE: Loan Repurchases post filing | 4/3/2012 | ALLY_0341669 | ALLY_0341670 | Confidential | | | Yes | H | |
| DX AKQ | Email sent from T. Frogge to J. Young; re: FW: Broker to Bank Agreement Review | 2/28/2012 | ALLY_0366331 | ALLY_0366334 | Confidential | | | Yes | H | |
| DX AKR | Email chain sent from J. Cortese to T. Kushman; cc to J. Young, N. Rock, C. Dondzila, and S. Vandolsen; re: RE: Bank_ResCap Gain on Sale | 3/13/2012 | ALLY_0381701 | ALLY_0381702 | Confidential | | | Yes | H | |
| DX AKS | Email chain sent from J. Mackey to J. Young, B. Yastine, and J. Brown; cc to H. Benton; re: RE: Meeting tomorrow re: consumer lending bank/non-bank economics/swap | 12/15/2011 | ALLY_0387143 | ALLY_0387144 | Confidential | Cortese Ex. 5 | | Yes | H | |
| DX AKT | Email chain sent from T. Kushman to E. Reilly, J. Cortese, J. Young, P. Fleming; cc to L. Nees, L. Reichel, J. Bilko, H. Benton, mbeck@mofo.com, kkohler@mofo.com, N. Rock, P. Murray, L. Corrigan, J. Gravelle, M. Carnevale, C. Eubanks, C. Brady, D. Linley; re: RE: Clarifying the Adjusted Carry Value | 4/24/2012 | ALLY_0388740 | ALLY_0388744 | Confidential | | | Yes | H in part | |
| DX AKU | Email and attachments sent from J. Cortese to T.Robinson, and B. Stevenson; cc to J. Young, L. LaCombe, R. Hahn, and J. Brown; re: Ally Bank 2009 Broker Materiality Analysis | 3/13/2012 | ALLY_0401562 | ALLY_0401575 | Confidential | Contains Dondzila Ex. 17 | | Yes | H | |
| DX AKV | Memorandum sent from A. Cummings, S. Cohen, J. Cortese, and M. Riskey to December Loan Transfer Files; re: Ally Loan Sale to GMAC and Contribution to ResCap - Transaction Summary | | ALLY_0402179 | ALLY_0402190 | Confidential | | | Yes | H | |
| DX AKW | Brokering Consumer Loans to Bank project (BCL2B) Powerpoint Deck | 11/19/2008 | ALLY_0402191 | ALLY_0402191 | Confidential | | | Yes | H | |
| DX AKX | J. Cortese, Brokering Consumer Loans to Bank: Assumption Review | 2/6/2012 | ALLY_0402192 | ALLY_0402195 | Confidential | Cortese Ex. 7 | | Yes | H | |
| DX AKY | GMAC Financial Services Accounting Policy #1060: Fair Value Measurement | 3/14/2008 | ALLY_0402366 | ALLY_0402394 | Confidential | | | Yes | H | |
| DX AKZ | Ally Accounting Policy 1060: Fair Value Measurement | 7/1/2012 | ALLY_0402395 | ALLY_0402446 | Confidential | | | Yes | H | |
| DX ALA | Ally Bank, Certain Loan Origination Balances as Requested by Examiner | | ALLY_0402447 | ALLY_0402447 | Confidential | | | Yes | H | |
| DX ALB | Email chain sent from J. Bilko to T. Kushman, J. Cortese, J. Young, ereilly@mayerbrown.com, P. Fleming; cc to L. Nees, L. Reichel, H. Benton, mbeck@mofo.com; kkohler@mofo.com; N. Rock, P. Murray, L. Corrigan, J. Gravelle, M. Carnevale, and C. Eubanks; re: Re: Clarifying the Adjusted Carry Value | 4/21/2012 | ALLY_0422575 | ALLY_0422578 | Confidential | | | Yes | H | |
| DX ALC | Ally Federal Tax Benefit from ResCap Losses: July 1, 2009 through December 31, 2011 | | ALLY_0424651 | ALLY_0424652 | Confidential | | | Yes | H | |
| DX ALD | Email chain sent from W. Marx to J. Mackey; cc to J. Aretakis; re: RE: High Priority-Tax Allocation- Large Payment Possibly due ResCap October 30 | 10/15/2010 | ALLY_0424657 | ALLY_0424658 | Confidential | Young Ex. 5 | Yes | Yes | | PX 514 |
| DX ALE | Email sent from W. Marx to J. Young, T. Hamzehpour; cc to J. Mackey, C. Dondzila, J. Aretakis, and J. Frucci; re: ResCap Tax Allocation Agreement | 10/18/2010 | ALLY_0424659 | ALLY_0424659 | Confidential | | Yes | Yes | | PX 515 |

4

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX ALF | Email chain sent from J. Mackey to W. Marx; cc to J. Aretakis; re: RE: ResCap Tax Allocation | 11/2/2010 | ALLY_0424660 | ALLY_0424664 | Confidential | | | Yes | H | |
| DX ALG | Email sent from J. Frucci to W. Marx; re: FW: ResCap Tax Allocation Agreement | 12/16/2010 | ALLY_0424665 | ALLY_0424666 | Confidential | | | Yes | H in part | |
| DX ALH | Email sent from W. Marx to J. Aretakis and J. Frucci; re: FW: ResCap Tax Allocation Agreement | 12/16/2010 | ALLY_0424667 | ALLY_0424669 | Confidential | | Yes | Yes | | PX 516 |
| DX ALI | Email and attachment sent from W. Marx to T. Baker; re: FW: ResCap Tax Allocation Agreement | 1/6/2011 | ALLY_0424670 | ALLY_0424677 | Confidential | | | Yes | H in part | BK |
| DX ALJ | Email chain sent from J. Mackey to W. Marx; cc to J. Aretakis; re: Re: ResCap Tax Allocation | 11/2/2010 | ALLY_0434931 | ALLY_0434935 | Confidential | | | Yes | H | |
| DX ALK | Email chain sent from W. Marx to T. Baker; re: FW: ResCap Tax Allocation Agreement | 1/6/2011 | ALLY_0434938 | ALLY_0434945 | Confidential | | | Yes | H in part | BI |
| DX ALL | Memorandum sent from "Bill" to D. DeBrunner, J. Young, C. Dondzila, C. Quenneville; re: RE: Action Required - Mortgage Tax Allocation Agreements for Execution | 1/19/2011 | ALLY_0434955 | ALLY_0434955 | Confidential | | | Yes | H | |
| DX ALM | Memorandum sent from "Bill" to D. DeBrunner, J. Young, C. Dondzila, and C. Quenneville; re: RE: ACTION REQUIRED - ResCap Tax Allocation Agreements for Execution | 9/9/2010 | ALLY_0435003 | ALLY_0435003 | Confidential | Young Ex. 3 | | Yes | H | |
| DX ALN | Email and attachment sent from J. Cortese to L. Gerner, M. Hales, G. Norwood, A. Glassner, J. Young, and J. Whitlinger; re: Fed Request | 3/10/2011 | ALLY_PEO_0042123 | ALLY_PEO_0042130 | Professionals' Eyes Only | Cortese Ex. 16 | | Yes | H | |
| DX ALO | Calendar invitation and attachments sent from C. Dondzila to J. Whitlinger, J. Young, J. Cortese, M. Anspach, and S. Cohen; re: Affiliate Agreements | 2/28/2012 | ALLY_PEO_0042152 | ALLY_PEO_0042183 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ALP | Email and attachment sent from J. Cortese to B. Frank, J. Young, and L. LaCombe; cc to C. Dondzila; re: RE: ResCap Q1 Financial Statements - Transactions with Ally Bank | 4/30/2012 | ALLY_PEO_0065336 | ALLY_PEO_0065341 | Professionals' Eyes Only | | | Yes | H in part | |
| DX ALQ | Email and attachment sent from J. Young to T. Frogge; re: FW: Amended and Restated MMLPA | 5/2/2012 | ALLY_PEO_0072126 | ALLY_PEO_0072147 | Professionals' Eyes Only | | Yes for limited purpose (ILS) | Yes | | PX 593 |
| DX ALR | Email sent from J. Young to T. Frogge; cc to V. Singh; re: Ally Bank Affiliate Transactions - Mortgage | 3/27/2012 | ALLY_PEO_0084690 | ALLY_PEO_0084767 | Professionals' Eyes Only | | | Yes | H | |
| DX ALS | Email and attachments sent from J. Young to B. Yastine; cc to P. Murray, D. Schevsky, and J. Cortese; re: Rep and Warrant request | 1/27/2012 | ALLY_PEO_0086855 | ALLY_PEO_0087138 | Professionals' Eyes Only | Contains Cortese Ex. 13 | | Yes | H | |
| DX ALT | Email chain and attachment sent from E. Reilly to T. Kushman, J. Cortese, J. Young, P. Fleming, L. Nees, L. Reichel, J. Bilko; H. Benton; mbeck@mofo.com, kkohler@mofo.com, N. Rock, P. Murray, L. Corrigan, J. Gravelle, M. Carnevale, C. Eubanks, N. Rosenbaum, M. Carnevale; cc to C. Brady, E. Reilly, and D. Linley; re: Revised Draft Flow Agreement | 4/21/2012 | ALLY_PEO_0088686 | ALLY_PEO_0088729 | Professionals' Eyes Only | | | Yes | H | |
| DX ALU | Email sent from N. Rock to J. Cortese, T. Kushman, J. Young, ereilly@mayerbrown.com, and P. Fleming; cc to L. Nees, L. Reichel, J. Bilko, H. Benton, mbeck@mofo.com, Kkohler@mofo.com, P. Murray, L. Corrigan, J. Gravelle, M. Carnevale, and C. Eubanks; re: Clarifying the Adjusted Carry Value | 4/21/2012 | ALLY_PEO_0088730 | ALLY_PEO_0088733 | Professionals' Eyes Only | | | Yes | H | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX ALV | Email chain sent from J. Cortese to T. Kushman, J. Young, ereilly@mayerbrown.com, and P. Fleming; cc to L. Nees, L. Reichel, J. Bilko, H. Benton, mbeck@mofo.com, kkohler@mofo.com, N. Rock, P. Murray, L. Corrigan, J. Gravelle, M. Carnevale, and C. Eubanks; re: RE: Clarifying the Adjusted Carry Value | 4/21/2012 | ALLY_PEO_0088734 | ALLY_PEO_0088737 | Professionals' Eyes Only | | | Yes | H | |
| DX ALW | Email with attachment sent from J. Whitlinger to S. Griffith; re: Origination Income by LE 2009-2011 v5.xls | 3/26/2012 | EXAM00003653 | EXAM00003654 | Confidential | | Yes | Yes | | |
| DX ALX | Email chain and attachment sent from J. Whitlinger to A. Cummings; cc to C. Dondzila, and J. Young; re: FW Follow up to Friday's discussion | 3/2/2012 | EXAM00003975 | EXAM00003987 | Confidential | Cortese Ex. 4 | | Yes | H in part | |
| DX ALY | Calendar invitation and attachments sent from C. Dondzila to C. Dondzila, J Whitlinger, J. Young, J. Cortese, M. Anspach, and S. Cohen; re: Affiliate Agreements | 2/28/2012 | EXAM00015453 | EXAM00015484 | Confidential | Cortese Ex. 8 | Yes | Yes | | |
| DX ALZ | Email and attachments sent from T. Marano to T. Marano; re: glassner | 2/28/2012 | EXAM00075394 | EXAM00075416 | Confidential | | Yes | Yes | | |
| DX AMA | Email and attachments sent from B. Westman to M. Talarico, S. Lyman, and M. Stone; re: Top 10 Balances | 8/7/2012 | RCJSNII10028117 | RCJSNII10028123 | Confidential | Contains Westman Ex. 14 | Yes | Yes | | |
| DX AMB | The Ad Hoc Group of Junior Secured Noteholders' Notice of Rule 30(b)(6) Deposition to Residential Capital, LLC and its Affiliated Debtors | 10/2/2013 | | | | Westman Ex. 1; Dondzila Ex. 15 | | Yes | R; H | |
| DX AMC | Amended Schedules of Assets and Liabilities for Residential Capital, LLC (Case No. 12-12020 (MG)) (dkt #683) | 7/3/2012 | | | | Westman Ex. 10 | Yes for limited purpose (ILS) | Yes | | PX 816 (partial) |
| DX AMD | Amended Schedules of Assets and Liabilities for Residential Funding Company, LLC (Case No. 12-12019 (MG)) (dkt #684) | 7/3/2012 | | | | Westman Ex. 11 | Yes for limited purpose (ILS) | Yes | | PX 816 (partial) |
| DX AME | HomeComings Financial, LLC Consolidated Financial Statements for the Year Ended December 31, 2008 | | EXAM00122166 | EXAM00122194 | Confidential | Dondzila Ex. 1 | Yes | Yes | | |
| DX AMF | Ally, Residential Capital, LLC Consolidated Financial Statements for the Years Ended December 31, 2010 and 2009 | | EXAM00123128 | EXAM00123203 | Confidential | | Yes | Yes | | |
| DX AMG | Amended Schedules of Assets and Liabilities for GMAC Mortgage, LLC (Case No. 12-12032 (MG)) (dkt #685) | 7/3/2012 | | | | Westman Ex. 12 | Yes for limited purpose (ILS) | Yes | | PX 816 (partial) |
| DX AMH | Residential Funding Company, LLC, Consolidated Financial Statements for the Years Ended December 31, 2008 and 2007 | | EXAM00124988 | EXAM00125068 | Confidential | | Yes | Yes | | |
| DX AMI | Residential Funding Company, LLC, Consolidated Financial Statements for the Years Ended December 31, 2007 and 2006 | | EXAM00125159 | EXAM00125213 | Confidential | | Yes | Yes | | |
| DX AMJ | Amended Schedules of Assets and Liabilities for GMAC Residential Holding Company, LLC (Case No. 12-12033 (MG)) (dkt #687) | 7/3/2012 | | | | Westman Ex. 13 | Yes for limited purpose (ILS) | Yes | | PX 816 (partial) |
| DX AMK | HomeComings Financial, LLC., Consolidated Financial Statements for the Year Ended December 31, 2006 | | EXAM00125417 | EXAM00125439 | Confidential | | Yes | Yes | | |
| DX AML | Residential Funding Company, LLC, Consolidated Financial Statements for the Years Ended December 31, 2006 and 2005 | | EXAM00125452 | EXAM00125501 | Confidential | | Yes | Yes | | |
| DX AMM | GMAC Residential Holding Company, LLC, Consolidated Financial Statements as of and for the years ended December 31, 2006 and 2005 | | EXAM00125624 | EXAM00125684 | Confidential | | Yes | Yes | | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AMN | GMAC Residential Holding Corp., Consolidated Financial Statements as of and for the years ended December 31, 2005 and 2004 (Restated) | | EXAM00125685 | EXAM00125737 | Confidential | | Yes | Yes | | |
| DX AMO | HomeComings Financial Network, Inc., Consolidated Financial Statements for the Year End December 31, 2005 | | EXAM00125738 | EXAM00125759 | Confidential | | Yes | Yes | | |
| DX AMP | HomeComings Financial Network, Inc., Consolidated Financial Statements for the Year Ended December 31, 2004 | | EXAM00125930 | EXAM00125948 | Confidential | | Yes | Yes | | |
| DX AMQ | Mortgage Group: ResCap Basis Detailed Hyperion Trial Balance (Dec. 2008) | | EXAM00231095 | EXAM00231095 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AMR | RESI Trial Balance – Legal Entity Detail, 2008-12-31 Year-to-Date, Unaudited | 12/31/2008 | EXAM00231097 | EXAM00231097 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AMS | RFC Trial Balance - Legal Entity Detail, 2008-12-31 Year-to-Date, Unaudited | 12/31/2008 | EXAM00231098 | EXAM00231098 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AMT | ResCap Parent and Eliminations, 2008-12-31 Year-to-Date, Unaudited | 12/31/2008 | EXAM00231100 | EXAM00231100 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AMU | Residential Capital, LLC External Reporting - YTD Trial Balance (LE View) | 12/31/2011 | EXAM00231101 | EXAM00231101 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AMV | RFC Trial Balance - Legal Entity Detail, 2011-12-31 Year-to-Date, Unaudited | 12/31/2011 | EXAM00231104 | EXAM00231104 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AMW | RESI Trial Balance - Legal Entity Detail, 2010-12-31 Year-to-Date, Unaudited | 12/31/2010 | EXAM00231105 | EXAM00231105 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AMX | RFC Trial Balance - Legal Entity Detail, 2010-12-31 Year-to-Date, Unaudited | 12/31/2010 | EXAM00231106 | EXAM00231106 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AMY | ResCap Parent and Eliminations, 2010-12-13 Year-to-Date, Unaudited | 12/31/2010 | EXAM00231108 | EXAM00231108 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AMZ | ResCap Parent and Eliminations, 2009-12-31 Year-to-Date, Unaudited | 12/31/2009 | EXAM00231110 | EXAM00231110 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ANA | Mortgage Group: ResCap Basis, Detailed Hyperion Trial Balance (Jan. 2009) | | EXAM00231113 | EXAM00231113 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ANB | MSR ARB Interest Expense Allocation | 3/31/2012 | EXAM00233968 | EXAM00233968 | Professionals' Eyes Only | | | Yes | H | |
| DX ANC | MSR ARB Interest Expense Allocation | 4/30/2012 | EXAM00233969 | EXAM00233969 | Professionals' Eyes Only | | | Yes | H | |
| DX AND | GMAC Mortgage, LLC, Consolidated Financial Statements as of and for the years ended December 31, 2006 and 2005 | | EXAM00234004 | EXAM00234057 | Confidential | | Yes | Yes | | |
| DX ANE | GMAC Mortgage, LLC, Consolidated Financial Statements as of and for the years ended December 31, 2007 and 2006 | | EXAM00234058 | EXAM00234111 | Confidential | | Yes | Yes | | |
| DX ANF | GMAC Mortgage, LLC, Consolidated Financial Statements as of and for the years ended December 31, 2008 and 2007 | | EXAM00234112 | EXAM00234188 | Confidential | | Yes | Yes | | |
| DX ANG | GMAC Mortgage, LLC, Consolidated Financial Statements For the Years Ended December 31, 2009 and 2008 | | EXAM00234189 | EXAM00234280 | Confidential | | Yes | Yes | | |
| DX ANH | Email and attachment sent from M. Renzi to standberg@alixpartners.com, aholtz@alixpartners.com, meisenberg@alixpartners.com, D. Mannal, and K. Eckstein; cc to A. Barrage, T. Goren, GLee@mofo.com, APrinci@mofo.com, JLevitt@mofo.com, W. Nolan, F. Szymik, and liz.park@fticonsulting.com; re: Bounce: Interco follow up | 9/17/2012 | UCC12846 | UCC12852 | Confidential | Westman Ex. 15; Kruger Ex. 3 | | Yes | R; 408 | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX ANI | GMAC Mortgage, LLC Consolidated Financial Statements for the Years Ended December 31, 2010 and 2009 | | EXAM00234350 | EXAM00234412 | Confidential | | Yes | Yes | | |
| DX ANJ | Residential Capital, LLC, Debt Forgiveness, Jan. 1, 2008 - May 13, 2012 | | EXAM00268011 | EXAM00268011 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ANK | Email chain and attachments sent from B. Westman to M. Renzi, and B. McDonald; cc to J. Bazella, and J. Horner; re: Intercompany and OID Discussion. | 3/4/2013 | RCUCCJSN30002758 | RCUCCJSN30002769 | Confidential | Westman Ex. 16 | Yes | Yes | | |
| DX ANL | Email and attachments sent from S. McCumber to L. Gess; re: FW: Brokering Consumer Loans to Bank- Kick-off (attachments) - FYI | 3/11/2008 | EXAM10087768 | EXAM10087775 | Confidential | | | Yes | H in part | |
| DX ANM | Email sent from L. Kelly to R. Kovach; cc to J. Thomchick, D. Bridge, P. Briggs, J. Lombardo, C. Halmy, R. Tadokoro, and T. Houghton; re: Questions -- Held-for-sale Loans | 7/23/2009 | EXAM10115666 | EXAM10115666 | Confidential | | | Yes | H | |
| DX ANN | Email sent from G. Kruszewski to J. Young; cc to L. Zukauckas, and D. Walker; re: ResCap Tax Receivable - DTA | 5/18/2006 | EXAM10168408 | EXAM10168408 | Confidential | | Yes | Yes | | |
| DX ANO | Email chain and attachment sent from J. Young to barbara.belfore@gm.com, D. Olson (CFO), J. Hillsman, and karen.sabatowski@gm.com; re: rescap tax alloc agreemt may 25 versn.DOC | 5/31/2005 | EXAM10220414 | EXAM10220423 | Confidential | | | Yes | H in part | |
| DX ANP | Email sent from D. Scott to A. Freitag; cc to S. Spears, A. Celini, G. Pesci, A. Lumbis, P. Shields, J. Bunnel, M. Whitehead, E. Maffey, S. Ruby, L. Corrigan, J. Kothe, B. Jack, J. Adams, K. Walsh, L. Benner, B. Streshinsky, AJ Bachman, M. Goeller, J. Horner, C. Hasson, and G. Shannon; re: RE: Finance Questions | 8/28/2008 | EXAM10286218 | EXAM10286220 | Confidential | | | Yes | H | |
| DX ANQ | Email and attachment sent from B. Westman to T. Hamzehpour; cc to S. Bode; re: Debt Forgiveness Procedures and Related Documents | 3/26/2010 | EXAM10362088 | EXAM10362154 | Confidential | Hamzehpour Ex. 1 | Yes | Yes | | |
| DX ANR | Email and attachment sent from A. Ellenburg to J. Young, P. West, S. Abreu, T. Smith, and T. Marano; cc to T. Hamzehpour, E. Buttacavoli, T. Frogge, T. Grzeskiewicz, C. Quenneville, and A. Ellenburg; re: Residential Capital, LLC Board of Directors Meeting - September 10, 2010 | 9/9/2010 | EXAM10422780 | EXAM10422879 | Confidential | | | Yes | Yes | |
| DX ANS | Email chain sent from W. Marx to T. Hamzehpour; cc to J. Aretakis and J. Frucci; re: RE: ResCap Tax Allocation Agreement | 12/20/2010 | EXAM10432501 | EXAM10432504 | Confidential | | | Yes | H in part | |
| DX ANT | Email sent from M. Connolly to T. Hamzehpour; re: RE: Tax Agreement | 12/17/2010 | EXAM10432517 | EXAM10432519 | Confidential | | Yes | Yes | | |
| DX ANU | Email sent from J. Young to C. Quenneville; re: RE: Mortgage Tax Allocation Agreements | 1/22/2011 | EXAM10434605 | EXAM10434606 | Confidential | | | Yes | H in part | |
| DX ANV | Email sent from T. Hamzehpour to T. Marano, W. Marx, cc J. Young, S. Abreu, and E. Buttavoli; re: RE: ResCap Tax Allocation Agreement | 12/20/2010 | EXAM10434843 | EXAM10434846 | Confidential | | | Yes | H in part | |
| DX ANW | Email sent from K. Skover to J. Young, and T. Hamzehpour; re: RE: ResCap Tax Allocation Agreement | 11/4/2010 | EXAM10434863 | EXAM10434865 | Confidential | | Yes | Yes | | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX ANX | Email sent from K. Skover to J. Young; cc T. Marano, T. Hamzehpour, C. Quenneville; re: RE: ResCap Tax Allocation Agreement | 11/4/2010 | EXAM10434867 | EXAM10434869 | Confidential | | Yes | Yes | | |
| DX ANY | Email sent from J. Young to L. Gerner; re: RE: Quick Question | 9/15/2010 | EXAM10435863 | EXAM10435863 | Confidential | | | Yes | H in part | |
| DX ANZ | Email sent from J. Young to T. Hamzehpour; re: Re: Did we ever sign the tax allocation agreement with Ally? | 12/8/2010 | EXAM10436116 | EXAM10436116 | Confidential | | Yes | Yes | | |
| DX AOA | Email sent from J. Young to C. Queeneville; re: Re: ResCap Board Meeting Minutes | 11/29/2010 | EXAM10436231 | EXAM10436231 | Confidential | | Yes | Yes | | |
| DX AOB | Email and attachment sent from J. Young to S. Erickson; re: FW: Review Brokering Loans to the Bank | 11/20/2008 | EXAM10608856 | EXAM10608877 | Confidential | | Yes | Yes | | |
| DX AOC | Email chain and attachment sent from M. Whitehead to J. Horner, J. Whitlinger, J. Cortese, J. Kothe and E. Maffey; cc to J. Adams, T. Schoen, S. Ruby; E. Maffey, J. Cortese, S. Ruby, J. Adams, E. Maffey, J. Cortese, and S. Ruby; re: RE Brokering Consumer Loans to Bank - Review/Signoff of revenue & expense recognition assumptions & requirements | 8/11/2008 | EXAM10770041 | EXAM10770052 | Confidential | Cortese Ex. 3 | Yes | Yes | | |
| DX AOD | Email chain and attachment sent from M. Whitehead to J. Horner, J. Young, and T. Schoen; re: Review Brokering Loans to the Bank | 11/20/2008 | EXAM10809734 | EXAM10809755 | Confidential | | Yes | Yes | | |
| DX AOE | Email sent from C. Dondzila to B. Cox, L. Gerner, D. Shapiro, W. Marx; cc to J. Schugel, R. Walsh, P. Grande, J. Young; re: RE: NAO Tax Issue | 4/6/2010 | EXAM10873065 | EXAM10873066 | Confidential | | Yes | Yes | | |
| DX AOF | Email sent from J. Lombardo to J. Young; re: FW: 250/250 Bank Capacity and Untag loan request | 5/27/2010 | EXAM10873226 | EXAM10873231 | Confidential | | | Yes | H in part | |
| DX AOG | Email chain and attachments sent from J. Cortese to D. DeBrunner, C. Dondzila, M. Anspach, and J. Whitlinger; re: RE: ResCap materiality assessment - broker to bank error | 3/14/2012 | EXAM10988172 | EXAM10988188 | Confidential | Cortese Ex. 11 | | Yes | H in part | |
| DX AOH | Email and attachment sent from J. Kearney to J. Whitlinger; re: Interview Summaries Whitlinger | 2/10/2012 | EXAM10988407 | EXAM10988409 | Confidential | | | Yes | H | |
| DX AOI | Email chain with attachment sent from J. Whitlinger to efs345@gmail.com; re: FW: Revenue Recognition- Glassner Final [SEND SECURE] | 3/19/2012 | EXAM11006371 | EXAM11006416 | Confidential | | | Yes | H | |
| DX AOJ | Email chain and attachment sent from Jonathan.Heeringa@Amsterdam.AllenOvery.com to J. Anderson, T. Hamzehpour, H. Geberbauer; cc to Jelle.MenaldavanSchouwenburg@Amsterdam.AllenOvery.com; re: RE: PTT: International Coop (0090263-0000009) | 6/11/2010 | EXAM11144172 | EXAM11144174 | Confidential | | Yes | Yes | | |
| DX AOK | Email sent from T. Hamzehpour to T. Marano, and J. Young; re: RE: Debt Forgiveness | 3/22/2010 | EXAM11148024 | EXAM11148024 | Confidential | Hamzehpour Ex. 4 | Yes | Yes | | |
| DX AOL | Email and attachments sent from T. Hamzehpour to J. Young, and T. Marano; re: RE: Getting cash out of RFC | 12/15/2010 | EXAM11150308 | EXAM11150311 | Confidential | Hamzehpour Ex. 6 | Yes | Yes | | |
| DX AOM | Email sent from L. Zukauckas to R. Wheeler, D. Olson; cc G. Kruszewski, J. Aretakis, S. Khattri, and W. Marx; re: Re: GMAC and Mortgage Company Tax Allocation | 12/22/2005 | EXAM11242928 | EXAM11242928 | Confidential | | | Yes | H | |
| DX AON | Email and attachment sent from J. Young to J. Jones; cc to T. Hamzehpour; re: ResCap forgiveness of debt to RFC - subsidiary capital need | 3/20/2008 | EXAM11316929 | EXAM11316944 | Confidential | Hamzehpour Ex. 2 | Yes | Yes | | |

9

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AOO | Email and attachment sent from barbara.belfore@gm.com to D. Olson, jim_hillsman@gmacm.com; K. Duncan, D. Walker, Richard_V._Kent/US/GMACFS/GMC@GMAC.gm.com, and L. Zukauckas; cc to james.aretakis@gm.com, and william.j.marx@gm.com; re: revised gmac / rescap tax allocation agreement | 4/28/2005 | EXAM11839057 | EXAM11839064 | Confidential | | | Yes | H | |
| DX AOP | Email chain sent from C. Donzila to W. Marx; re: RE: Tax Allocation Agreements for ResCap-High Importance | 12/8/2009 | EXAM11890894 | EXAM11890894 | Confidential | | | Yes | H in part | |
| DX AOQ | GMAC Residential Holding Corp, Consolidated Financial Statements as of and for the years ended December 31, 2003 and 2002 | | EXAM11944646 | EXAM11944691 | Confidential | | Yes | Yes | | |
| DX AOR | Email chain and attachment sent from C. Dondzila to C. Borchart, R. Hahn, J. Bazella, S. Bode, N. Rock, L. Corrigan, M. Riskey, P. Grande, B. Cox, J. Cortese, C. Applebaum, L. Grasso-Moon, J. Demro, D. Shapiro, and W. Marx; re: RE: Update on tax status for Dec close | 1/8/2010 | EXAM12019123 | EXAM12019124 | Confidential | | Yes | Yes | | |
| DX AOS | Email chain and attachment sent from C. Dondzila to W. Marx; re; RE: Tax Allocation Agreements for ResCap-High Importance | 12/8/2009 | EXAM12019139 | EXAM12019145 | Confidential | | | Yes | H in part | |
| DX AOT | Email chain and attachment sent from J. Cortese to S. Bode, and B. Farrell; cc to C. Dondzila; re: RE: 250.250 Balance | 3/17/2009 | EXAM12042900 | EXAM12042913 | Confidential | Cortese Ex. 10 | Yes | Yes | | |
| DX AOU | Email sent from J. Bazella to W. Marx, B. Farrell, M. Riskey; cc to S. Conley, C. Dondzila, D. Shapiro, J. Bentz, P. Domke; re: RE: ResCap 99%/1% Accounting | 7/6/2009 | EXAM12057859 | EXAM12057861 | Confidential | | | Yes | H in part | |
| DX AOV | Email sent from D. Shapiro to J. Demro, C. Dondzila; cc to W. Marx, and L. Grasso-Moon; re: RE: Proposed GMAC December Close Calendar | 12/3/2009 | EXAM12210659 | EXAM12210660 | Confidential | | | Yes | H in part | |
| DX AOW | Email and attachments received by J. Whitlinger, J. Cortese, M. Anspach, and D. DeBrunner; re: Draft Materiality Analysis - ResCap/GMACM | | EXAM12219168 | EXAM12219193 | Confidential | Contains Dondzila Ex. 16 | Yes | Yes | | |
| DX AOX | Email and attachment sent from S. Ruby to J. Cortese, C. Dondzila, R. McKendrick, S. Griffith, E. Cantwell, C. Cowley, C. Conover, and N. Rock; re: 2009 - 2011 HFS Consumer Broker to Bank | 12/16/2011 | EXAM12253153 | EXAM12253154 | Confidential | Cortese Ex. 6 | | Yes | H | |
| DX AOY | Email chain and attachments sent from N. Rock to S. Griffith, C. Dondzila, and R. McKendrick; re: FW: | 12/16/2011 | EXAM12253214 | EXAM12253243 | Confidential | | | Yes | Admit Broker Agreement for limited purpose (ILS); H for remainder | |
| DX AOZ | Email and attachment sent from J. Cortese to C. Dondzila, J. Young, J. Whitlinger, and J. Andrews; re: Broker to Bank Agreement Review | 2/27/2012 | EXAM12253505 | EXAM12253508 | Confidential | Cortese Ex. 9 | | Yes | H | |
| DX APA | FTI Consulting, ResCap – Intercompany Transactions - DRAFT | 4/4/2013 | EXAM00345894 | EXAM00345905 | Professionals' Eyes Only | Westman Ex. 18 | Yes | Yes | | PX 168; PX 591 |
| DX APB | ResCap Restated Loan Agreement between Residential Capital Corporation, GMAC Residential Holding Corporation, and Residential Funding Corporation | 1/1/2006 | EXAM00107037 | EXAM00107041 | Confidential | Westman Ex. 19 | Yes for limited purpose (ILS) | Yes | | PX 577 |

10

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX APC | Email and attachments sent from C. Quenneville to P. West, E. Smith, J. Mack, J. Ilany; cc to T. Hamzehpour, J. Whitlinger, D. Klepchick, C. Dondzila; re: ResCap Audit Committee Meeting Minutes | 3/20/2012 | EXAM12272208 | EXAM12272217 | Confidential | Contains Dondzila Ex. 19 | Yes | Yes | | |
| DX APD | Email chain and attachments sent from C. Dondzila to J. Cortese and J. Lhotka; re: FW: GMAC Accounting Policies to approve by EOD Aug 7th | 8/5/2009 | EXAM12299898 | EXAM12299995 | Confidential | | | Yes | H | |
| DX APE | Email chain and attachments sent from C. Dondzila to M. Fields; re: RE: Year End planning | 12/7/2009 | EXAM12308199 | EXAM12308222 | Confidential | | | Yes | H in part | |
| DX APF | Email and attachments sent from C. Dondzila to L. Corrigan; re: FW: | 11/8/2010 | EXAM12353962 | EXAM12354159 | Confidential | | | Yes | H | |
| DX APG | Email sent from C. Dondzila to W. Marx, J. Young; cc to T. Frogge, and C. Applebaum; re: RE: Mortgage Tax Allocation Agreements | 1/19/2011 | EXAM12360535 | EXAM12360535 | Confidential | | | Yes | H in part | PX 606 |
| DX APH | Email sent from C. Dondzila to D. DeBrunner; re: FW: ~$ 250 mm cash impact FAS 157 treatment of Total return swap | 12/29/2008 | EXAM12378490 | EXAM12378499 | Confidential | | | Yes | H in part | |
| DX API | Email chain sent from C. Dondzila to C. Dondzila, J. Whitlinger, J. Young, J. Cortese, M. Anspach, and S. Cohen; cc to D. DeBrunner; re: RE: Affiliate Agreements | 2/28/2012 | EXAM12400028 | EXAM12400029 | Confidential | | Yes | Yes | | |
| DX APJ | Email sent from J. Cortese to C. Dondzila; re: FW: Broker tot Bank -Board Minutes from 5/2008 -9/2008 | 2/29/2012 | EXAM12400030 | EXAM12400032 | Confidential | | | Yes | H | |
| DX APK | Email chain and attachments sent from S. Venne to B. Westman; re: FW: Intercompany Files | 9/10/2011 | RCJSNII10041452 | RCJSNII10041457 | Confidential | Westman Ex. 2 | Yes | Yes | | |
| DX APL | Email sent from C. Dondzila to J. Demro, and B. Farrell; cc to W. Marx, M. Kulbieda, P. Domke, Z. Matice, J. Katz, L. Grasso-Moon, D. Smith, R. Arneson, J. Bazella, and S. Bode; re: RE: ResCap June 30 2009 Deferred Tax Balance and Tax Provision | 7/15/2009 | EXAM12432261 | EXAM12432261 | Confidential | | | Yes | H in part | |
| DX APM | Email chain and attachments sent from S. McCumber to L. Gess; re: FW: Brokering Direct to Bank - Agenda and Issues | 7/7/2008 | EXAM20052672 | EXAM20052677 | Confidential | | | Yes | H | |
| DX APN | Email and attachment sent from C. Quenneville to S. Abreu, T. Marano, E. Smith, alemapew45@bellsouth.net, J. Young; cc to T. Hamzehpour, T. Grzeskiewicz, E. Buttavoli; re: Written Consent - Approval of ResCap Board Meeting Minutes | 2/7/2011 | EXAM20118572 | EXAM20118590 | Confidential | | Yes | Yes | | |
| DX APO | Email chain and attachments sent from W. Marx to T. Hamzehpour; re: FW: Mortgage Group Executed Tax Allocation Agreements | 1/26/2011 | EXAM20118591 | EXAM20118633 | Confidential | | | Yes | H in part | |
| DX APP | Email and attachment sent from T. Hamzehpour to J. Ruckdaschel; re: DIP documents | 4/20/2012 | EXAM20122477 | EXAM20122555 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX APQ | Email and attachments sent from W. Marx to T. Hamzehpour, cc J. Aretakis; re: ResCap Tax Allocation Agreement | 7/19/2010 | EXAM20132705 | EXAM20132711 | Confidential | | | Yes | H | |
| DX APR | Email chain with attachments sent from T. Hamzehpour to T. Marano, L. Nashelsky, and J. Tanenbaum; re: FW: Confirmation | 5/9/2012 | EXAM20169858 | EXAM20169868 | Confidential | | | Yes | H in part | |
| DX APS | Email chain sent from T. Hamzehpour to W. Marx; re: RE: ResCap Tax Allocation Agreement | 1/3/2011 | EXAM20176570 | EXAM20176570 | Confidential | | | Yes | H in part | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX APT | Email chain and attachment sent from M. Whitehead to J. Horner, J. Whitlinger, J. Cortese, J. Kothe, and E. Maffey; cc to J. Adams, T. Schoen, S. Ruby, E. Maffey, J. Cortese, S. Ruby, and J. Adams; re: RE: Brokering Consumer Loans to Bank - Review/Signoff of revenue & expense recognition assumptions & requirements | 8/7/2008 | EXAM20230961 | EXAM20230968 | Confidential | | Yes | Yes | | |
| DX APU | Calendar invitation and attachments sent from C. Kujawa to J. Mackey, J. Delvecchio, J. Aretakis, J. Ahem, W. Marx, A. Steele, K. Cotter, W. Morris, J. Frucci, J. Katz, P. Leonard, L. Gerner, M. Brown, M. Constantino, M. Scheipe, C. Winterfield, D. DeBrunner, J. Young, A. Cummings, L. Voss, K. Coffey, C. Hinson, J. Lauko, T. Frogge, W. Rosenberg; re: Updated: Tax Deep Dive | 1/16/2013 | EXAM20251771 | EXAM20251814 | Confidential | | | Yes | H | |
| DX APV | Email chain sent from J. Young to W. Marx, C. Dondzila, and T. Hamzehpour; cc to D. Shapiro, D. DeBrunner, and J. Lombardo; re: RE: Tax Allocation Agreements for ResCap-High Importance | 12/7/2009 | EXAM20253371 | EXAM20253372 | Confidential | | | Yes | H in part | |
| DX APW | Email chain sent from T. Hamzehpour to W. Marx; cc to J. Young, T. Marano, and S. Abreu; re: RE: ResCap Tax Allocation Agreement | 12/17/2010 | EXAM20266669 | EXAM20266671 | Confidential | | | Yes | H in part | |
| DX APX | Email chain and attachment sent from T. Marano to J. Young; re: FW: NEW_YORK-#931365-V3-Residential_Capital_LLC_-_Tax_Allocation_Agreements_-_Memo.DOC | 7/12/2010 | EXAM20269708 | EXAM20269710 | Confidential | | Yes | Yes | | |
| DX APY | Email chain sent from G. Lee to T. Hamzehpour, and J. Whitlinger; cc to G. Lee, and L. Nashelsky; re: Re: Voice Mail from Jim Whitlinger(Cell) (13 seconds) | 3/16/2012 | EXAM20272731 | EXAM20272734 | Confidential | | | Yes | H in part | |
| DX APZ | Email chain and attachment sent from L. Nees to J. Whitlinger; re: FW: Amended and Restated MMLPA | 5/23/2012 | EXAM20277121 | EXAM20277141 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AQA | Email chain sent from J. Frucci to D. DeBrunner, J. Schugel, J. Young, M. Brown, A. Cummings, W. Marx; cc to T. Frogge, and M. Cardani; re: RE: Tax impacts on segments | 1/31/2011 | EXAM20295203 | EXAM20295206 | Confidential | | | Yes | H | |
| DX AQB | Email chain and attachment sent from K. Skover to J. Young; cc to T. Frogge; re: RE: NEW TIME: ResCap Board Meeting Will Begin at 9:15 am | 11/5/2010 | EXAM20298582 | EXAM20298583 | Confidential | | Yes | Yes | | |
| DX AQC | Email and attachment from K. Skover to J. Young, P. West, S. Abreu, T. Smith, and T. Marano; cc to T. Hamzehpour, E. Buttacavoli, T. Frogge, T. Grzeskiewicz, D. Dicicco, A. Ellenbury, C. Quenneville, K. Skover, and B. Tayllor; re; Materials - ResCap Board Meeting, November 5, 2010, 9:00 - 10:30 am (ET) | 11/4/2010 | EXAM20298586 | EXAM20298645 | Confidential | | Yes | Yes | | |
| DX AQD | Email and attachment sent from K. Skover to J. Young, P. West, S. Abreu, T. Smith, and T. Marano; cc to T. Hamzehpour, C. Quenneville, E. Buttacavoli, T. Frogge, T. Grzeskiewicz, and K. Skover; re: Materials - ResCap Board Meeting, January 27, 2011, 1:00 to 3:30 pm (ET) | 1/26/2011 | EXAM20298846 | EXAM20298933 | Confidential | | Yes | Yes | | |

12

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AQE | Email and attachments sent from C. Quenneville to S. Abreu, T. Marano, E. Smith, alemapew45@bellsouth.net, and J. Young; cc to T. Hamzehpour, T. Grzeskiewicz, and E. Buttacavoli; re: [PRINTED] Written Consent - Approval of ResCap Board Meeting Minutes | 2/7/2011 | EXAM20298972 | EXAM20298990 | Confidential | | Yes | Yes | | |
| DX AQF | Email sent from J. Young to T. Hamzehpour; re: FW: ResCap Tax Attributes | 7/14/2010 | EXAM20314202 | EXAM20314202 | Confidential | | | Yes | H | |
| DX AQG | Email sent from J. Young to T. Marano, and S. Abreu; re: FW: ResCap Tax Attributes | 7/12/2010 | EXAM20314261 | EXAM20314261 | Confidential | | | Yes | H | |
| DX AQH | Email chain sent from J. Young to J. Mackey; re: RE: ResCap Tax Allocation Agreement | 10/18/2010 | EXAM20317195 | EXAM20317196 | Confidential | | | Yes | H in part | |
| DX AQI | Email chain and attachments sent from S. McCumber to J. Miller; cc to K. Coit, E. Johnson, C. Corbett, B. Manning, and S. Whilden; re: FW: GMAC Bank Compliance Policies LETTERED REGULATIONS Part 3 of 4 | 3/30/2006 | EXAM30198061 | EXAM30198110 | | | | Yes | H | |
| DX AQJ | Letter from the Treasurer of Ally Financial Inc. to Residential Capital, LLC, attn: T. Hamzehpour, Residential Funding Company, LLC, attn: Joe Ruhlin, and GMAC Mortgage, LLC, c/o Residential Funding Company, LLC, attn Joe Ruhlin; re: Re: Forgiveness of Certain Indebtedness under LOC Loan Agreement | 3/27/2012 | EXAM40066674 | EXAM40066677 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AQK | Email chain and attachments sent from T. Melzer to jlnouss@bryancave.com; cc to mot452@aol.com; re: FW: Note from Eric Feldstein | 5/8/2006 | MELZER.004846 | MELZER.004846 | Confidential | | | Yes | H | |
| DX AQL | Sarbanes Oxley Mega Process: Cash Management, Sub-Process: ResCap Funds Transfer Process - Quantum | 10/28/2009 | PWC_001_1_00000154 | PWC_001_1_00000154 | | | | Yes | NPP | |
| DX AQM | Amended and Restated Agreement for the Allocation of United States Federal Income Taxes between GMAC Mortgage Group LLC and ResCap Investments LLC | 11/2/2009 | RC00028796 | RC00028801 | Confidential | Marx Ex. 4 | Admitted Phase I | Yes | | PX 13 |
| DX AQN | Broker Agreement between GMAC Bank, GMAC Mortgage, LLC and Ditech LLC | 11/20/2008 | RC00030534 | RC00030550 | Confidential | | Yes for limited purpose (ILS) | Yes | | PX 618 |
| DX AQO | HomeComings Financial, LLC., Consolidated Financial Statements for the Year Ended December 31, 2007 | | RC00034684 | RC00034707 | Confidential | | Yes | Yes | | |
| DX AQP | Senior Secured Notes Indenture among ResCap, the guarantors party thereto, and U.S. Bank National Association, as trustee | 6/6/2008 | RC00037081 | RC00037196 | Confidential | | Yes for limited purpose (ILS) | Yes | | PX 500 |
| DX AQQ | Secured Revolver Loan Agreement among RFC and GMAC Mortgage, as borrowers, ResCap and certain other affiliated entities, as guarantors, and GMAC, as initial lender and lender agent | 6/4/2008 | RC00037708 | RC00037924 | | | Admitted Phase I | Yes | | PX 5 |
| DX AQR | First Priority Pledge and Security Agreement and Irrevocable Proxy dated as of June 4, 2008 among Residential Funding Company, LLC, GMAC Mortgage, LLC and certain of their Affiliates from time to time parties hereto, as Grantors GMAC, LLC, as Lender and Lender Agent and Wells Fargo Bank, N.A., as First Priority Collateral Agent | | RC00038119 | RC00038225 | | | Admitted Phase I | Yes | | PX 7 |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AQS | Amended and Restated Intercompany Advance Agreement between Homecomings Financial Network, Inc. and Residential Funding Corporation | 6/30/2006 | EXAM00107030 | EXAM00107035 | Confidential | Westman Ex. 20 | Yes for limited purpose (ILS) | Yes | | PX 576 |
| DX AQT | Ally Accounting Policy 3330: Accounting for Income Taxes | 5/20/2011 | RC40001284 | RC40001300 | Confidential | | | Yes | H | |
| DX AQU | Written Consent of the Executive Committee of Residential Capital, LLC (Mar. 31, 2009); Memo sent by J. Young to ResCap Executive Committee; cc to T. Hamzehpour, T. Neary, and C. Dondzila; re: Request for Action by the ResCap Executive Committee Capital Allocation from GMAC Residential Holding Company to GMAC Mortgage, LLC (GMACM) (June 25, 2009) | 3/31/2009 | RC40006523 | RC40006610 | Confidential | Contains Hamzehpour Ex. 3 | Yes | Yes | | |
| DX AQV | Meeting invitation and attachment from C. Quenneville to S. Abreu, T. Marano, T. Smith, P. West, and J. Young; re: Residential Capital, LLC Board of Directors Meeting Friday, August 6, 2010 from 9:00 to 10:30 am (ET) | 8/5/2010 | RC40016362 | RC40016394 | Confidential | Marx Ex. 3 | Yes | Yes | | |
| DX AQW | Meeting Minutes of a Special Meeting of the Board of Residential Capital, LLC, held by teleconference, T. Marano, E. Smith III, P. West, J. Young present | 1/11/2010 | RC40018729 | RC40018863 | Confidential | | Yes | Yes | | |
| DX AQX | Memorandum and attachments sent by C. Quenneville to J. Ilany, J. Mack, T. Smith, and P. West; cc to S. Abreu, T. Marano, and J. Whitlinger re: Residential Captial, LLC Audit Committee Meeting Tuesday, March 20, 2012, 7:30 - 8:30 AM (ET) | 3/19/2012 | RC40022044 | RC40022137 | Confidential | Dondzila Ex. 18 | Yes | Yes | | PX 626 |
| DX AQY | Intercompany Advance Agreement between Residential Capital, LLC and RFC Asset Holdings II, LLC | 6/1/2009 | EXAM00107022 | EXAM00107029 | Confidential | Westman Ex. 21 | Yes for limited purpose (ILS) | Yes | | PX 575 |
| DX AQZ | ResCap Intercompany Certification Document | 1/6/2012 | RCJSNII00003341 | RCJSNII00003341 | Confidential | | | Yes | H | |
| DX ARA | ResCap Intercompany Certification Document | 1/6/2012 | RCJSNII00003347 | RCJSNII00003347 | Confidential | Cortese Ex. 18 | | Yes | H | |
| DX ARB | ResCap Intercompany Certification Document | 1/4/2012 | RCJSNII00003354 | RCJSNII00003354 | Confidential | | Yes | Yes | | |
| DX ARC | Email chain sent from J. Bazella to M. Fasching; re: FW: Quarterly Intercompany Certification | 8/13/2012 | RCJSNII00003580 | RCJSNII00003581 | Confidential | | Yes | Yes | | |
| DX ARD | Memorandum sent from J. Young, ResCap CFO to ResCap Executive Committee; cc to T. Hamzehpour, T. Neary, and C. Dondzila; re: Request for Action by the ResCap Executive Committee Captial Allocation from GMAC Residential Holding Company to GMAC Mortgage, LLC (GMACM) | 6/25/2009 | RCJSNII00025553 | RCJSNII00025556 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ARE | Memorandum sent from J. Young, ResCap CFO to GMAC Inc. Board of Directors, cc T. Marano, T. Hamzehpour, C. Dondzila; re: Request for Action by the Board of Directors, GMAC Inc. Approval of Capital Allocation from Residential Capital, LLC (ResCap) to Residential Funding Company, LLC (RFC) | 12/8/2009 | RCJSNII00025675 | RCJSNII00025676 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ARF | Email and attachment sent from B. Westman to M. Renzi, and F. Szymik; re: RE: Additional Intercompany Information | 3/29/2013 | RCJSNII00025680 | RCJSNII00025681 | Professionals' Eyes Only | Westman Ex. 17 | Yes | Yes | | |
| DX ARG | Email chain with attachments from B. McDonald to F. Szymik; re: FW: ResCap - Debt Forgiveness | 3/28/2013 | RCJSNII00025761 | RCJSNII00025766 | Professionals' Eyes Only | | Yes | Yes | | |

14

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX ARH | Memorandum sent from S. Khattri to ResCap Executive Committee; cc to J. Young, T. Hamzehpour, D. Marple, H. Benton, B. Case, J. Peterson, and L. Schiltgen re: Request for Action by the ResCap Executive Committee Capital Allocation from ResCap to Residential Funding Company, LLC (RFC), GMAC Residential Holdings, LLC (Resi) and GMAC Mortgage, LLC (GMACM) for Q4 TNW Shortfall | 12/28/2007 | RCJSNII00025838 | RCJSNII00025839 | Professionals' Eyes Only | Young Ex. 2 | Yes | Yes | | |
| DX ARI | Notice of Meeting - Residential Capital, LLC Executive Committee | 3/25/2008 | RCJSNII00025829 | RCJSNII00025837 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ARJ | Memorandum sent from J. Young, ResCap CFO to GMAC Inc. Board of Directors; cc to T. Marano, T. Hamzehpour, C. Dondzila; re: Request For Action by the Board of Directors, GMAC Inc. Approval of Capital Allocation from Residential Capital, LLC (ResCap) to Residential Funding Company, LLC (RFC) and certain of its subsidiaries | 12/28/2009 | RCJSNII00026048 | RCJSNII00026051 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ARK | Email chain sent from B. Westman to C. Dondzila; re: RE: ResCap - Intercompany Balances | 6/30/2012 | RCJSNII10011510 | RCJSNII10011515 | Confidential | Dondzila Ex. 14 | | Yes | H in part | |
| DX ARL | Email sent from B. Westman to M. McGarvey, and C. Dondzila; re: RE: $19M Ally DIP | 7/3/2012 | RCJSNII10011549 | RCJSNII10011552 | Confidential | | | Yes | H | |
| DX ARM | Email and attachments sent from C. Dondzila to B. Westman; re: RFC | 3/9/2012 | RCJSNII10013201 | RCJSNII10013283 | Confidential | | Yes | Yes | | |
| DX ARN | Email chain and attachments sent from B. Westman to J. Stern; cc to C. Dondzila; re: RE: Waterfall Questions | 3/20/2012 | RCJSNII10015113 | RCJSNII10015121 | Confidential | Dondzila Ex. 07 | Yes for limited purpose (ILS) | Yes | | |
| DX ARO | Intercompany Advance Agreement between Residential Capital, LLC, and Passive Asset Transactions, LLC | 6/1/2009 | EXAM00107300 | EXAM00107307 | Confidential | Westman Ex. 22 | Yes for limited purpose (ILS) | Yes | | PX 578 |
| DX ARP | Email chain and attachment sent from B. Westman to J. Stern, and M. Renzi; cc to L. Park, and C. Dondzila; re: RE: Waterfall Questions | 3/22/2012 | EXAM12263381 | EXAM12263406 | Confidential | Westman Ex. 23 | Yes for limited purpose (ILS) | Yes | | |
| DX ARQ | Email chain and attachments sent from B. Westman to J. Stern, and M. Renzi; cc to L. Park, and C. Dondzila; re: RE: Waterfall Questions | 4/19/2013 | RCJSNII10030809 | RCJSNII10030834 | Confidential | Dondzila Ex. 11 | Yes for limited purpose (ILS) | Yes | | |
| DX ARR | Email sent from B. Westman to C. Dondzila; re: RE: ResCap - Intercompany Balances | | RCJSNII10033817 | RCJSNII10033822 | Confidential | | | Yes | H in part | |
| DX ARS | Email and attachment sent from B. Westman, and C. Dondzila; re: Discuss GSAP and Legal Entity Certifications | 1/12/2012 | RCJSNII10034044 | RCJSNII10034050 | Confidential | Westman Ex. 24 | Yes | Yes | | |
| DX ART | Email sent by K. Sathre to B. Westman; re: other checklist item | 2/10/2011 | RCJSNII10034313 | RCJSNII10034313 | Confidential | | Yes | Yes | | |
| DX ARU | Email and attachment sent from J. Farley to RS-US-MN-MSP-Normandale-CR-12-1202, L. Konowal, N. Rock, T. Towers, J. Castano, D. Guarracino, G. Clase, M. McGarvey, J. Santangelo, J. Simpson, F. Brandee, G. Sonnenburg, D. Goembel, S. Swagger, B. Westman, J. Bazella, K. Sathre, A. Letourneau, and RS-US-PA-FTW-Virginia-CR-A 5Q05; re: Updated: Accounting Convention: Policy #1040 Intercompany Accounting | 8/24/2011 | RCJSNII10036954 | RCJSNII10036974 | Confidential | | | Yes | H | |
| DX ARV | Email chain sent from J. Ruhlin to T. McDonagh, T. Grossman, and M. McGarvey; re: RE: Resi interest - May | 6/1/2012 | RCUCCJSN10895541 | RCUCCJSN10895550 | Confidential | Westman Ex. 25 | | Yes | H in part | |

15

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX ARW | Email chain and attachments sent from B. Westman to B. McDonald, M. Renzi, and L.Park, cc to C. Dondzila, and J. Horner; re: RE: Open Items for Various Requests | 12/1/2012 | RCUCCJSN10692261 | RCUCCJSN10692266 | Confidential | Westman Ex. 26 | Yes | Yes | | |
| DX ARX | Residential Funding Company, LLC Consolidated Financial Statements for the Years Ended December 31, 2010 and 2009 | | EXAM00123277 | EXAM00123336 | Confidential | Westman Ex. 27 | Yes | Yes | | PX 585 |
| DX ARY | Email chain sent from B. Westman to K. Sathre; re: FW: Fortress – Intercompany Balances | 9/14/2011 | RCJSNII10041531 | RCJSNII10041540 | Confidential | | | Yes | H in part | |
| DX ARZ | Email sent from B. Westman to C. Gordy; re: RE: RFC Equity FW: Unacceptable Assets-JT | 3/16/2011 | RCJSNII10045489 | RCJSNII10045495 | Confidential | | | Yes | H in part | |
| DX ASA | Email and attachments sent from B. Westman to B. Westman and R. Hahn; re: Intercompany Processes | 7/10/2008 | RCJSNII10047196 | RCJSNII10047199 | Confidential | | Yes | Yes | | |
| DX ASB | Email sent from B. Westman to J. Bazella; cc to J. Horner, and M. Renzi; re: RE: UCC request | 1/21/2013 | RCJSNII10054524 | RCJSNII10054527 | Confidential | | Yes | Yes | | |
| DX ASC | Email chain sent from B. Westman to M. Renzi, T. Hamzehpour, L. Park, cc to C. Dondzila, J. Bazella; re: RE: Intercompany | 10/16/2012 | RCJSNII10056817 | RCJSNII10056819 | Confidential | | Yes | Yes | | |
| DX ASD | Email and attachment sent from J. Bazella to J. Young; cc to C. Dondzila, S. Bode, B. Westman, N. Johnson, and M. Fasching; re: RFC debt forgiveness | 12/7/2009 | RCJSNII10059357 | RCJSNII10059360 | Confidential | | Yes | Yes | | |
| DX ASE | Email and attachments sent from S. Bode to B. Westman; re: FW: ResCap resolutions | 2/8/2010 | RCJSNII10059731 | RCJSNII10059757 | Confidential | | Yes | Yes | | |
| DX ASF | Email sent from B. Westman to D. Goembel; re: RE: BCG Intercompany Debt | 2/18/2010 | RCJSNII10060034 | RCJSNII10060039 | Confidential | | Yes | Yes | | |
| DX ASG | Memorandum sent from J. Young to ResCap Executive Committee; cc to T. Hamzehpour, T. Neary, and C. Dondzila; re: Request for Action by the ResCap Executive Committee Capital Allocation from GMAC Residential Holding Company to GMAC Mortgage, LLC (GMACM) for adjusted net worth shortfall re: GNMA agreement; Written Consent of the Executive Committee of the Board of Directors of Residential Capital, LLC | 6/3/2009 | RCJSNII10118386 | RCJSNII10118388 | Confidential | | Yes | Yes | | |
| DX ASH | GMAC Mortgage, LLC Consolidated Financial Statements for the Years Ended December 31, 2011 and 2010 | | EXAM00234281 | EXAM00234349 | Confidential | Westman Ex. 28 | Yes | Yes | | |
| DX ASI | Residential Funding Company, LLC, Consolidated Financial Statements For The Years Ended December 31, 2011 and 2010 | | RCUCCJSN00007239 | RCUCCJSN00007299 | Confidential | Dondzila Ex. 10 | Yes | Yes | | |
| DX ASJ | GMAC Residential Holding Company, LLC, Consolidated Financial Statements as of and for the Years Ended December 31, 2007 and 2006 | | EXAM00125358 | EXAM00125416 | Confidential | Westman Ex. 29 | Yes | Yes | | |
| DX ASK | Email chain and attachment sent from R. Thompson to T. Neary, and S. Blitzer; cc to S. Bode, and J. Young; re: RE unencumbered assets | 8/12/2008 | RCUCCJSN10004340 | RCUCCJSN10004341 | Confidential | | Yes | Yes | | |
| DX ASL | Written Consent of the Executive Committee of the Board of Directors of Residential Capital, LLC | 6/30/2008 | RCUCCJSN10005622 | RCUCCJSN10005624 | Confidential | | Yes | Yes | | |
| DX ASM | Email chain sent from J. Young to J. Lundgren; re: Re: Debt-to-Equity Conversion | 7/9/2008 | RCUCCJSN10005688 | RCUCCJSN10005689 | Confidential | | Yes | Yes | | |
| DX ASN | Email sent from J. Jones to J. Young; re: Fw: 250.250 & "Agent for" | 6/19/2008 | RCUCCJSN10007353 | RCUCCJSN10007355 | Confidential | | | Yes | H in part | |

16

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX ASO | Email chain sent from J. Young to D. Flavin; re: FW: Requesting EC approval for CE debt equity | 6/2/2008 | RCUCCJSN10011161 | RCUCCJSN10011162 | Confidential | | Yes | Yes | | |
| DX ASP | Email chain sent from J. Young to L. Schiltgen, and G. Sonnenburg; re: RE: EC approval for capital allocation to RFC | 3/26/2008 | RCUCCJSN10025065 | RCUCCJSN10025066 | Confidential | | Yes | Yes | | |
| DX ASQ | Email chain sent from K. Walsh to J. Cortese, J. Peterson, C. Dondzila, and J. Lhotka; cc to '/O=GMAC MORTGAGE CORP/OU=Dallas-IT/cn=Recipients/cn=MScarse'[/O=GMAC MORTGAGE CORP/OU=DALLAS-IT/CN=RECIPIENTS/CN-MSCARSE]; re: RE: Netting | 12/22/2008 | RCUCCJSN10064220 | RCUCCJSN10064224 | Confidential | | | Yes | H in part | |
| DX ASR | Memorandum sent from J. Young to GMAC Inc. Board of Directors, cc T. Marano, T Hamzehpour, C. Dondzila; re: Request for Action by the Board of Directors, GMAC Inc. Approval of Capital Allocation from Residential Capital, LLC (ResCap) to Residential Funding Company, LLC (RFC) and Capital Allocation from RFC to RFC Asset Holdings II LLC | 12/14/2009 | RCUCCJSN10293887 | RCUCCJSN10293888 | Confidential | | Yes | Yes | | |
| DX ASS | Email chain and attachments sent from B. Westman to B. Westman, B. McDonald, M. Renzi, and liz.park@fticonsulting.com; cc to C. Dondzila and J. Horner; re: RE: Open Items for Various Requests | 12/17/2012 | RCUCCJSN10354687 | RCUCCJSN10354692 | Confidential | | Yes | Yes | | |
| DX AST | Email chain and attachment sent from B. Westman to C. Dondzila; re: FW: Interco file | 6/14/2012 | RCUCCJSN10357468 | RCUCCJSN10357470 | Confidential | | Yes | Yes | | |
| DX ASU | Email chain sent from R. Grant to S. Bode; re: FW: November Reg K File | 12/17/2009 | RCUCCJSN10566662 | RCUCCJSN10566668 | Confidential | | | Yes | H in part | |
| DX ASV | Email chain and attachment sent from S. Bode to B. Westman; re: FW: RFC subsidiaries/PATI (Debt Forgiveness) -Written Consents | 11/12/2009 | RCUCCJSN10567350 | RCUCCJSN10567355 | Confidential | | Yes | Yes | | |
| DX ASW | Memorandum sent from J. Young to GMAC Inc. Board of Directors; cc to T. Marano, T. Hamzehpour, and C. Dondzila; re: Request for Action by the Board of Directors, GMAC Inc. Approval of Capital Allocation from Residential Capital, LLC ("ResCap") to Residential Funding COmpany, LLC ("RFC") and certain of its subsidiaries | 1/3/2010 | RCUCCJSN10605076 | RCUCCJSN10605078 | Confidential | | Yes | Yes | | |
| DX ASX | Email chain sent from B. Jeffress-Roebuck to K. Gyasi-twum, and S. Venne; cc to B. Westman; re: RE: Cash Management Policy | 9/12/2011 | RCJSNII10041500 | RCJSNII10041502 | Confidential | Westman Ex. 3 | Yes | Yes | | |
| DX ASY | Email chain and attachments sent from J. Ruhlin to H. Anderson; re: FW: UK advance agreement (Revised draft)/RFC-ResCap advance Agreement (first draft) | 11/18/2010 | RCUCCJSN10745612 | RCUCCJSN10745628 | Confidential | Contains Hamzehpour Ex. 5 | | Yes | H in part | |
| DX ASZ | Email and attachments sent from R. Bluhm to R. Crisafulli, and B. McDonald; cc to J. Lombardo, and J. Ruhlin; re: I/C Transactions for ResCap | 2/15/2012 | RCUCCJSN10880200 | RCUCCJSN10880258 | Confidential | | Yes | Yes | | |
| DX ATA | Email chain sent from T. McDonagh to C. Dondzila, J. Ruhlin, and M. Scarseth; cc to W. Nolan, M. Renzi, and B. Witherell; re: RE: Cash Balances without Intercompany Movement of Cash | 11/4/2012 | RCUCCJSN10891987 | RCUCCJSN10891992 | Confidential | Dondzila Ex. 13 | Yes | Yes | | |

17

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX ATB | Email chain sent from B. Westman to L. Park, and F. Szymik; cc to M. Renzi, and R. Joslin; re: RE: Legal Entity Trial Balance. | 7/11/2012 | RCUCCJSN30014296 | RCUCCJSN30014299 | Confidential | Westman Ex. 30 | Yes | Yes | | |
| DX ATC | Email from J. Young to T. Hamzehpour; cc to T. Frogge; re: FW: Board Doc - Debt Forgiveness | 4/8/2011 | RCUCCJSN10935402 | RCUCCJSN10935408 | Confidential | | Yes | Yes | | |
| DX ATD | Email and attachment sent from K. Linhoff to M. Winchell and J. Young; cc to B. Westman and J. Horner; re: RE: Debt Forgiveness Memo - change | 10/22/2010 | RCUCCJSN11243603 | RCUCCJSN11243607 | Confidential | | Yes | Yes | | |
| DX ATE | Email and attachments sent from B. Ziegenfuse to C. Dondzila, J. Ruhlin, D. Miraglia, M. McGarvey, J. Santangelo, B. Westman, M. Renzi, W. Nolan, T. Hamzehpour, and J. Whitlinger; cc to J. Horner; re: RE: Mesirow Meeting Preparation | 12/3/2012 | RCUCCJSN11254247 | RCUCCJSN11254307 | Confidential | | Yes | Yes | | |
| DX ATF | Residential Capital LLC, Debt Forgiveness Schedule by Legal Entity | | RCUCCJSN11270924 | RCUCCJSN11270924 | Confidential | | Yes | Yes | | PX 684 |
| DX ATG | Email and attachments sent from M. Winchell to L. Godfrey and S. Padmanathan; cc to J. Horner, M. Riskey, B. Westman, T. Farley, and K. Sathre; re: Debt forgiveness on the Flume and Viaduct Notes resulting from PTT transaction | 7/30/2010 | RCUCCJSN11465342 | RCUCCJSN11465353 | Confidential | | Yes | Yes | | |
| DX ATH | Email from L. Konowal to D. Guarracino, T. Yu; cc to N. Rock, T. Towers, R. McKendrick, P. Rangel, S. Griffith, L. Damico, L. Torbenson, and M. Rachel; re: Ally Bank MSR Swap JE 3/31/10 | 4/2/2010 | RCUCCJSN11811163 | RCUCCJSN11811166 | Confidential | | | Yes | H | |
| DX ATI | Email chain sent from C. Laube to B. Westman, S. Hengel, T. North, K. Ahmed, G. Sonnenburg, D. Goembel, S. Sider, and A. Johnson; cc to M. Scarseth, M. Winchell, T. Farley, and C. Laube; re: RE: BCG Intercompany Debt | 1/26/2010 | RCUCCJSN11857973 | RCUCCJSN11857977 | Confidential | | Yes | Yes | | |
| DX ATJ | Email chain and attachment sent from B. Westman to liz.park@fticonsulting.com; cc to M. Renzi and C. Dondzila; re: RE: Intercompany | 3/30/2012 | RCUCCJSN11921440 | RCUCCJSN11921442 | Confidential | | Yes | Yes | | |
| DX ATK | ResCap Bank Account Structure as of April 16, 2012 (DRAFT - Subject to Change) | | RCUCCJSN11922194 | RCUCCJSN11922209 | Confidential | | Yes | Yes | | |
| DX ATL | Email and attachment sent from M. Renzi to J. Lewis, R. Snellenbarger, and B. Illhardt; cc to T. Goren, J. Marines, B. McDonald, F. Syzmik, W. Nolan, and L. Marinuzzi; re: ResCap - Interco Notes | 4/11/2013 | RCUCCJSN11979451 | RCUCCJSN11979463 | Confidential | | Yes | Yes | | |
| DX ATM | Email sent from T. Hamzehpour to W. Marx; cc to J. Young, and C. Dondzila; re: RE: Rescap-Ally Tax Allocation Agreements | 1/24/2011 | RCUCCJSN12065027 | RCUCCJSN12065029 | Confidential | | | Yes | H in part | |
| DX ATN | Email chain with attachment sent from A. Cummings to T. Marano, and P. West; cc to J. Whilinger; re: FW: Revenue Recognition - Glassner Final [SEND SECURE] | 3/19/2012 | RCUCCJSN20030975 | RCUCCJSN20030990 | Professionals' Eyes Only | | | Yes | H | |
| DX ATO | Email and attachment sent from C. Dondzila to C. Quenneville; cc to J. Whitlinger; re: Cathy can you please distribute this to the Audit Committee members | 3/16/2012 | RCUCCJSN20045171 | RCUCCJSN20045184 | Confidential | | Yes | Yes | | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX ATP | Email and attachments sent from C. Dondzila to J. Whitlinger, J. Young, J. Cortese, D. DeBrunner, and M. Anspach; re: Updated materiality memo | 3/13/2012 | RCUCCJSN20045234 | RCUCCJSN20045260 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ATQ | Email and attachment sent from B. Westman to C. Dondzila; re: RFC Receivable | 3/23/2012 | RCUCCJSN20051022 | RCUCCJSN20051024 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ATR | Email chain sent from B. Westman to C. Dondzila; re: RE: GMACM Management Fee writeup | 3/19/2012 | RCUCCJSN20054889 | RCUCCJSN20054892 | Professionals' Eyes Only | Dondzila Ex. 5 | Yes | Yes | | |
| DX ATS | Email and attachment sent from A. McGrath to C. Dondzila, B. Westman, and K. Sathre; cc to H. McKay; re: RE: accounting framework - flume/Viaduct | 10/6/2011 | RCUCCJSN20062406 | RCUCCJSN20062411 | Professionals' Eyes Only | | | Yes | H | |
| DX ATT | Email chain and attachment sent from J. Farley to B. Westman; re: RE: Q1 2011 ResCap Policy and Disclosure Items | 3/21/2012 | RCJSNII10015251 | RCJSNII10015268 | Confidential | Westman Ex. 31 | | Yes | H | |
| DX ATU | Email and attachment sent from C. Dondzila to C. Weiss; cc to J. Whitlinger; re: Draft significant affiliate agreement disclosure for ResCap related party footnote | 2/20/2012 | RCUCCJSN20068828 | RCUCCJSN20068830 | Professionals' Eyes Only | | Yes | Yes | | |
| DX ATV | Email and attachment sent from C. Dondzila to B. Westman; re: RE: RFC/ResCap Receivable Support Memo | 3/22/2012 | RCUCCJSN20080064 | RCUCCJSN20080066 | Professionals' Eyes Only | Dondzila Ex. 8 | Yes | Yes | | JW |
| DX ATW | Email chain and attachment sent from C. Dondzila to B. Westman; re: RE: RFC/ResCap Receivable Support Memo | 3/22/2012 | EXAM12412896 | EXAM12412898 | Confidential | Westman Ex. 32 | Yes | Yes | | PX 608; JV |
| DX ATX | Email and attachment sent from B. Westman to C. Dondzila; re: Intercompany Questions | 2/23/2012 | RCUCCJSN20085254 | RCUCCJSN20085255 | Professionals' Eyes Only | Dondzila Ex. 2 | Yes | Yes | | |
| DX ATY | Email chain sent from N. Rock to B. McDonald; cc to M. Renzi; re: RE: GSE Settlement Data (2010) | 4/23/2013 | RCUCCJSN30001327 | RCUCCJSN30001332 | Confidential | | Yes | Yes | | |
| DX ATZ | Email and attachments sent from B. Mcdonald to J. Horner; cc to M. Renzi; re: FW: Examiner Follow-Ups | 3/26/2013 | RCUCCJSN30002271 | RCUCCJSN30002276 | Confidential | | Yes | Yes | | |
| DX AUA | Email and attachments sent from J. Bazella to B. Westman, and M. Renzi; cc to C. Dondzila; re: RE: Interco file | 2/8/2013 | RCUCCJSN30003025 | RCUCCJSN30003029 | Confidential | Westman Ex. 34 | Yes | Yes | | |
| DX AUB | Ally Accounting Policy 1040: Intercompany Accounting | 12/29/2010 | RC40000118 | RC40000137 | Confidential | Westman Ex. 36 | | Yes | H | PX 621 |
| DX AUC | Email chain and attachment sent from B. McDonald to ttoaso@alixpartners.com; cc to TGoren@mofo.com, mlandy@alixpartners.com, liz.park@fticonsulting.com, mark.renzi@fticonsulting.com, and SZide@KRAMERLEVIN.com; re: FW: Open Items | 1/17/2013 | RCUCCJSN30004106 | RCUCCJSN30004114 | Confidential | Dondzila Ex. 6 | Yes | Yes | | |
| DX AUD | GMAC Residential Holding Corp, Consolidated Financial Statements as of and for the years ended December 31, 2004 and 2003 (Restated) | 12/31/2004 | RCUCCJSN30005418 | RCUCCJSN30005470 | Confidential | | Yes | Yes | | |
| DX AUE | Email and attachment sent from C. Donzila to B. McDonald; cc to L. Park, T. McDonagh, M. Renzi, and B. Westman; re: RE: Intercompany Follow-up | 11/1/2012 | RCUCCJSN30006785 | RCUCCJSN30006872 | Confidential | | Yes | Yes | | |
| DX AUF | Email and attachment sent from B. McDonald to B. Westman; cc to L. Park, T. McDonagh, C. Dondzila, and M. Renzi; re: RE: Intercompany Follow-up | 10/25/2012 | RCUCCJSN30007029 | RCUCCJSN30007044 | Confidential | Dondzila Ex. 12 | Yes | Yes | | |
| DX AUG | Email and attachment sent from liz.park@fticonsulting.com to B. Westman, M. Renzi, F. Szymik, and C. Dondzila; cc to M. McGarvey, J. Bazella, and M. Brennan; re: RE: Intercompany Relationships 05-31-12-New_V3.xlsx | 7/21/2012 | RCUCCJSN30014140 | RCUCCJSN30014143 | Confidential | | Yes | Yes | | |
| DX AUH | Ally General Intercompany Accounting Policy | 11/28/2011 | RCJSNII10131858 | RCJSNII10131878 | Confidential | Westman Ex. 37 | | Yes | H | PX 638 |

19

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AUI | Email chain and attachment sent from C. Dondzila to M. Renzi; cc to W. Nolan, L. Park, F. Szymik; re: RE: Bounce - Intercompany Follow Up | 4/22/2012 | RCUCCJSN30023149 | RCUCCJSN30023156 | Confidential | Dondzila Ex. 9 | Yes | Yes | | |
| DX AUJ | Calendar invitation and attachments sent from B. Westman to B. Westman, M. McGarvey, G. Clase, J. Bazella, L. Park, and M. Renzi; re: Intercompany file | | RCUCCJSN30047165 | RCUCCJSN30047169 | Confidential | | Yes | Yes | | |
| DX AUK | GMAC ResCap Project Bounce: Illustrative Waterfall Analysis Asset and Liabilities Input and Preliminary Draft | 4/30/2013 | RENZI00000001 | RENZI00000001 | Confidential | | Admitted Phase I | Yes | | PX 138 |
| DX AUL | Email chain and attachment sent from C. Dondzila to M. Renzi, and B. Westman; cc to W. Nolan, L. Park, and F. Szymik; re: RE: Bounce - Intercompany Follow Up | 4/22/2012 | RCUCCJSN20080786 | RCUCCJSN20080790 | Professionals' Eyes Only | Westman Ex. 38 | Yes | Yes | | |
| DX AUM | Email and attachment sent from M. Renzi to mlandy@alixpartners.com, ttoaso@alixpartners.com; cc to W. Nolan, T. Goren, S. Zide, C. Dondzila, J. Horner, and B. McDonald; re: ResCap - Intercompany Rollforward | 1/21/2013 | UCC17941 | UCC17942 | Confidential | | Yes | Yes | | |
| DX AUN | Email and attachment sent from M. Renzi to M. Landy; cc to B. Jenkins, B. McDonald, T. Goren, A. Barrage, and J. Marines; re: FW: Intercompany OID Discussion | 3/5/2013 | UCC27519 | UCC27525 | Confidential | | Yes | Yes | | |
| DX AUO | Schedules of Assets and Liabilities for Residential Funding Company, LLC (Case No. 12-12019 (MG)) (dkt #548) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUP | Schedules of Assets and Liabilities for Residential Capital, LLC (Case No. 12-12020 (MG)) (dkt #549) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUQ | Schedules of Assets and Liabilities for GMAC Mortgage, LLC (Case No. 12-12032 (MG)) (dkt #550) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUR | Schedules of Assets and Liabilities for ditech, LLC (Case No. 12-12021 (MG)) (dkt #551) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUS | Schedules of Assets and Liabilities for PATI Real Estate Holdings, LLC (Case No. 12-12047 (MG)) (dkt #552) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUT | Schedules of Assets and Liabilities for DOA Holding Properties, LLC (dkt #553) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUU | Schedules of Assets and Liabilities for DOA Properties IX (Lots-Other), LLC (Case No. 12-12023 (MG)) (dkt #554) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUV | Schedules of Assets and Liabilities for RAHI A, LLC (Case No. 12-12048 (MG)) (dkt #555) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUW | Schedules of Assets and Liabilities for EPRE LLC (Case No. 12-12024 (MG)) (dkt #556) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUX | Schedules of Assets and Liabilities for Equity Investment I, LLC (Case No. 12-12025 (MG)) (dkt #557) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUY | Schedules of Assets and Liabilities for ETS of Virginia, Inc. (Case No. 12-12026 (MG)) (dkt #558) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AUZ | Schedules of Assets and Liabilities for ETS of Washington, Inc. (Case No. 12-12027 (MG)) (dkt #559) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVA | Schedules of Assets and Liabilities for RAHI B, LLC (Case No. 12-12049 (MG)) (dkt #560) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVB | Schedules of Assets and Liabilities for Executive Trustee Services, LLC (Case No. 12-12028 (MG)) (dkt #561) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AVC | Schedules of Assets and Liabilities for GMAC Model Home Finance I, LLC (Case No. 12-12030 (MG)) (dkt #562) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVD | Schedules of Assets and Liabilities for RAHI Real Estate Holdings, LLC (Case No. 12-12050 (MG)) (dkt #563) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVE | Schedules of Assets and Liabilities for GMAC Mortgage USA Corporation (Case No. 12-12031 (MG)) (dkt #564) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVF | Schedules of Assets and Liabilities for GMAC Residential Holding Company, LLC (Case No. 12- 12033 (MG)) (dkt #565) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVG | Schedules of Assets and Liabilities for RCSFJV2004, LLC (Case No. 12-12051 (MG)) (dkt #566) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVH | Schedules of Assets and Liabilities for GMAC RH Settlement Services, LLC (Case No. 12-12034 (MG)) (dkt #567) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVI | Schedules of Assets and Liabilities for GMACM Borrower LLC (Case No. 12-12035 (MG)) (dkt #568) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVJ | Schedules of Assets and Liabilities for Residential Accredit Loans, Inc. (Case No. 12-12052 (MG)) (dkt #569) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVK | Schedules of Assets and Liabilities for GMACM REO LLC (Case No. 12-12036 (MG)) (dkt #570) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVL | Schedules of Assets and Liabilities for GMACR Mortgage Products, LLC (Case No. 12-12037 (MG)) (dkt #571) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVM | Schedules of Assets and Liabilities for GMAC-RFC Holding Company, LLC (Case No. 12- 12029 (MG)) (dkt #572) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVN | Schedules of Assets and Liabilities for Residential Asset Securities Corporation (Case No. 12- 12054 (MG)) (dkt #573) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVO | Schedules of Assets and Liabilities for HFN Reo Sub II, LLC (Case No. 12-12038 (MG)) (dkt #574) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVP | Schedules of Assets and Liabilities for Home Connects Lending Services, LLC (Case No. 12-12039 (MG)) (dkt #575) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVQ | Schedules of Assets and Liabilities for Residential Services of Alabama, LLC (Case No. 12- 12055 (MG)) (dkt #576) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVR | Schedules of Assets and Liabilities for Homecomings Financial Real Estate Holdings, LLC (Case No. 12-12040 (MG)) (dkt #577) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVS | Schedules of Assets and Liabilities for Residential Consumer Services of Ohio, LLC (Case No. 12-12056 (MG)) (dkt #578) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVT | Schedules of Assets and Liabilities for Homecomings Financial, LLC (Case No. 12-12042 (MG)) (dkt #579) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVU | Schedules of Assets and Liabilities for Ladue Associates, Inc. (Case No. 12-12043 (MG)) (dkt #580) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVV | Schedules of Assets and Liabilities for Residential Consumer Services of Texas, LLC (Case No. 12-12057 (MG)) (dkt #581) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVW | Schedules of Assets and Liabilities for Passive Asset Transactions, LLC (Case No. 12-12044 (MG)) (dkt #582) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVX | Schedules of Assets and Liabilities for PATI A, LLC (Case No. 12-12045 (MG)) (dkt #583) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AVY | Schedules of Assets and Liabilities for Residential Consumer Services, LLC (Case No. 12-12058 (MG)) (dkt #584) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AVZ | Schedules of Assets and Liabilities for PATI B, LLC (Case No. 12-12046 (MG) (dkt #585) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWA | Residential Capital, LLC, Debt Forgiveness: Excludes Ally and Less than $20M, January 1, 2008-May 13, 2012 | 5/13/2012 | RCUCCJSN00030215 | RCUCCJSN00030215 | Professionals' Eyes Only | Westman Ex. 39 | Yes | Yes | | PX 681 |
| DX AWB | Schedules of Assets and Liabilities for Residential Funding Mortgage Exchange, LLC (Case No. 12-12059 (MG)) (dkt #587) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWC | Schedules of Assets and Liabilities for RFC Asset Management, LLC (Case No. 12-12066 (MG)) (dkt #588) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWD | Schedules of Assets and Liabilities for Residential Funding Mortgage Securities I, LLC (Case No. 12-12060 (MG)) (dkt #589) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWE | Schedules of Assets and Liabilities for RFC Borrower LLC (Case No. 12-12068 (MG)) (dkt #590) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWF | Schedules of Assets and Liabilities for RFC Construction Funding, LLC (Case No. 12-12069 (MG)) (dkt #591) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWG | Schedules of Assets and Liabilities for Residential Funding Mortgage Securities II, LLC (Case No. 12-12061 (MG)) (dkt #592) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWH | Schedules of Assets and Liabilities for RFC REO LLC (Case No. 12-12070 (MG)) (dkt #593) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWI | Schedules of Assets and Liabilities for Residential Funding Real Estate Holdings, LLC (Case No. 12-12062 (MG)) (dkt #594) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWJ | Schedules of Assets and Liabilities for RFC SFJV-2002, LLC (Case No. 12-12071 (MG)) (dkt #595) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWK | Schedules of Assets and Liabilities for Residential Mortgage Real Estate Holdings, LLC (Case No. 12-12063 (MG)) (dkt #596) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWL | Schedules of Assets and Liabilities for RFC-GSAP Servicer Advance, LLC (Case No. 12-12064 (MG)) (dkt #597) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWM | Schedules of Assets and Liabilities for Residential Asset Mortgage Products, Inc. (Case No. 12-12053 (MG)) (dkt #649) | 6/30/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 814 (partial) |
| DX AWN | General Ledger Account No. 2020100001 (Account Name GMAC RESI Intercompany) | | RCUCCJSN00012497 | RCUCCJSN00012497 | Professionals' Eyes Only | | Yes | Yes | | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AWO | The Debtors' Motion for Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Cash Management Services and Practices (II) Continued Use Of Existing Bank Accounts, Checks, And Business Forms, (III) Implementation Of Modified Cash Management Procedures, (IV) Interim Waiver Of The Investment And Deposit Requirements Of Bankruptcy Code Section 345, (V) Debtors To Honor Specified Outstanding Prepetition Payment Obligations, (VI) Continuation Of Intercompany Transactions, Including Intercompany Transactions With Future Debtors, And Granting Administrative Expense Status To Intercompany Claims, And (VII) Scheduling A Final Hearing On The Relief Requested (Case No. 12-12020-MG) (dkt #16) | 5/14/2012 | | | | | Yes for limited purpose (ILS) | Yes | | |
| DX AWP | Residential Capital, LLC, Quarterly Report (Form 10-Q/A 1) | 8/25/2009 | | | | | Yes | Yes | | |
| DX AWQ | Revised Disclosure Statement for Debtors' Revised Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (Case No. 12-12020-MG) (dkt #4733) | 8/16/2013 | | | | | Yes for limited purpose (ILS) | Yes | | PX 862 |
| DX AWR | Disclosure Statement / Notice of Filing of Corrected Solicitation Version of the Disclosure Statement and Joint Chapter 11 Plan (Case No. 12-12020-MG) (dkt #4819) | 8/23/2013 | | | | | Yes for limited purpose (ILS) | Yes | | PX 256 |
| DX AWS | Schedule to the ISDA Master Agreement (FMV) between GMAC Mortgage, LLC and GMAC Bank. | 8/31/2007 | RC00027822 | RC00027828 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AWT | Residential Capital, LLC, Amendment No. 1 Registration Statement Exhibit 10.3 (Form S-4/A) | 9/22/2005 | | | | | Yes for limited purpose (ILS) | Yes | | |
| DX AWU | Junior Secured Notes Indenture among ResCap, as Issuer, GMAC Holding, RFC Holding, GMAC Mortgage, RFC, and Homecomings Financial, as Guarantors, and U.S. Bank National Association, as Trustee (dkt #1 Ex. 4.4 in Case No. 13-01277-MG) | 6/6/2008 | | | | | Yes for limited purpose (ILS) | Yes | | PX 801, 802 |
| DX AWV | Interim Order Signed on 5/15/2012 by the Honorable James M. Peck Authorizing The Debtors To Continue To Perform Under The Ally Bank Servicing Agreements In The Ordinary Course Of Business (Case No. 12-12020-MG) (dkt #90) | 5/16/2012 | | | | | Yes for limited purpose (ILS) | Yes | | |
| DX AWW | Ex. 8 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings (Case No. 12-12020-MG) (dkt #6) | 5/14/2012 | | | | | Yes for limited purpose (ILS) | Yes | | |
| DX AWX | Motion to Approve / Debtors Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Settlement Agreements (Case No. 12-12020-MG) (dkt #320) | 6/12/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 810 |
| DX AWY | Motion to Approve / Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements (Case No. 12-12020-MG) (dkt #1176) | 8/15/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 820 |

23

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AWZ | Ex. 8 to the Motion to Approve / Debtors Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Settlement Agreements (Case No. 12-12020-MG) (dkt #320) | 6/11/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 810 (partial) |
| DX AXA | Order Approving Scope of Investigation of A. Gonzalex, Examiner (Case No. 12-12020-MG) (dkt #925) | 7/27/2012 | | | | | | Yes | R; H | |
| DX AXB | Ellen M. Ryan & Laura E. Simmons, Securities Class Action Settlements-2012 Review and Analysis (2013) | | | | | | | Yes | H (703 only) | |
| DX AXC | Dr. Renzo Comolli, et al., Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review (2013) | | | | | | | Yes | H (703 only) | |
| DX AXD | Kevin M. LaCroix, The D&O Diary, Subprime and Credit Crisis-Related Lawsuits Settlements, Dismissals and Denials (2013) | April 2013 | | | | | | Yes | H (703 only) | |
| DX AXE | Ex. 9 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings (Case No. 12-12020-MG) (dkt #6) | 5/14/2012 | | | | | Admitted Phase I | Yes | | PX 137 |
| DX AXF | Memorandum Opinion signed on 6/27/2013 Approving the Plan Support Agreement (Case No. 12-12020-MG) (dkt #4102) | 6/27/2013 | | | Not for Publication | | Yes for limited purpose (ILS) | Yes | | |
| DX AXG | The Ad Hoc Group of Junior Secured Noteholders' Notice of Subpoena to Ally Financial Inc. | 10/4/2013 | | | | Marx Ex. 1; Aretakis Ex. 1 | | Yes | R; H | |
| DX AXH | Excerpts from the Report of Arthur J. Gonzalez, as Examiner (Case No. 12-12020-MG) (dkt #3698) (Marx Dep. Ex. 2) | 5/13/2013 | | | | Marx Ex. 2 | | Yes | H | |
| DX AXI | Email and attachments sent from B. Westman to Donna.Healy@ally.com, Gary.Sonnenburg@ally.com, Jacob.Bazella@ally.com, and MaryLou.Lee@ally.com; re: RE: ResCap Intercompany Information | 11/15/2011 | RCJSNII10037951 | RCJSNII10037953 | Confidential | Westman Ex. 4 | Yes | Yes | | |
| DX AXJ | ResCap Intercompany Certification Document | 1/6/2012 | RCJSNII00003340 | RCJSNII00003340 | Confidential | Westman Ex. 5 | Yes | Yes | | |
| DX AXK | Email chain and attachment sent from B. Westman to C. Dondzila; re: FW: Bounce - Intercompany Follow Up | 4/20/2012 | RCUCCJSN20064737 | RCUCCJSN20064802 | Professionals' Eyes Only | Westman Ex. 7 | Yes | Yes | | |
| DX AXL | Email chain and attachment sent from M. Renzi to T. Goren, and A. Barrage; cc to W. Nolan, L. Park, F. Szymik, C. Dondzila and B. Westman; re: RE: Bounce - Intercompany Follow Up - request for call tomorrow at 1-2PM | 4/23/2012 | EXAM12263518 | EXAM12263521 | Confidential | Westman Ex. 8 | Yes | Yes | | |
| DX AXM | Amended Schedules of Assets and Liabilities for GMAC-RFC Holding Company, LLC (Case No. 12-12029 (MG)) (dkt #686) | 7/3/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 816 (partial) |
| DX AXN | Schedules of Assets and Liabilities for RFC Asset Holdings II, LLC (Case No. 12-12065 (MG)) (dkt #586) | 6/30/2012 | | | | Westman Ex. 9 | Yes for limited purpose (ILS) | Yes | | PX 815 |
| DX AXO | Amended Schedules of Assets and Liabilities for Homecomings Financial, LLC (Case No. 12-12042 (MG)) (dkt #688) | 7/3/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 816 (partial) |
| DX AXP | Amended Schedules of Assets and Liabilities for Passive Asset Transactions, LLC (Case No. 12-12044 (MG)) (dkt #834) | 7/19/2012 | | | | | Yes for limited purpose (ILS) | Yes | | PX 818 (partial) |
| DX AXQ | Notice of Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer | 2/11/2013 | | | | Kruger Ex. 1 | Yes for limited purpose (ILS) | Yes | | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AXR | Notice of Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Approving Amendment to Engagement Letter with Debtors' Chief Restructuring Officer, Lewis Kruger | 9/27/2013 | | | | Kruger Ex. 2 | Yes for limited purpose (ILS) | Yes | | |
| DX AXS | Notice of Filing of Revised Disclosure Statement for Debtors' Revised Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code | 8/16/2013 | | | | Kruger Ex. 4 | Yes for limited purpose (ILS) | Yes | | |
| DX AXT | Excerpts from the Report of Arthur J. Gonzalez, as Examiner (Case No. 12-12020-MG) (dkt #3698) (Kruger Dep. Ex. 2) | 5/13/2013 | | | | Kruger Ex. 5 | | Yes | H | |
| DX AXU | Schedule to the ISDA Master Agreement (FMV) between GMAC Mortgage, LLC and GMAC Bank (Net Funding) dated as of August 31, 2007 | 8/31/2007 | | | Confidential | Cortese Ex. 15 | Yes for limited purpose (ILS) | Yes | | |
| DX AXV | Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (Case No. 12-12010 (MG)) (dkt #4153) | 7/3/2013 | | | | | Yes for limited purpose (ILS) | Yes | | PX 858 |
| DX AXW | Agreement for the Allocation of United States Federal Income Taxes between Residential Capital, LLC, and GMAC-RFC Holding Company, LLC | 11/1/2009 | AFIJSN_0121112 | AFIJSN_0121137 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AXX | Correspondent Agreement for Purchase and Sale of Residential Home Equity Loan and Lines of Credit Between GMAC Bank and GMAC Mortgage Corporation | 8/21/2001 | ALLY_0017350 | ALLY_0017356 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AXY | Memorandum sent from A. Celini to File; re: Master Mortgage Loan Purchase and Sale Agreement | 6/6/2007 | ALLY_0017783 | ALLY_0017785 | Confidential | | | Yes | H | |
| DX AXZ | Memorandum sent from A. Celini to File; re: RE: Master Mortgage Loan Purchase and Sale Agreement Amended and Restated 6/1/07 | 10/31/2007 | ALLY_0017869 | ALLY_0017877 | Confidential | | | Yes | H | |
| DX AYA | Memorandum sent from A. Celini to File; re: Re: July 1, 2008 Schedule to ISDA Master Agreement | 6/30/2008 | ALLY_0017919 | ALLY_0017922 | Confidential | | | Yes | H | |
| DX AYB | Memorandum sent from A. Celini, CFO GMAC Bank to File; re: RE: Master Mortgage Loan Purchase and Sale Agreement | 12/14/2001 | ALLY_0018320 | ALLY_0018321 | Confidential | | | Yes | H | |
| DX AYC | Amended and Restated Third Priority Pledge and Security Agreement and Irrevocable Proxy among Residential Capital, LLC, U.S. Bank National Association, and Wells Fargo Bank, N.A. | 12/30/2009 | ALLY_0066573 | ALLY_0066629 | Confidential | | Admitted Phase I | Yes | | PX 4 |
| DX AYD | Ally, Accounting Policy 1075 Related Party | 1/1/2010 | ALLY_0242848 | ALLY_0242866 | Confidential | Young Ex. 1 | | Yes | H | |
| DX AYE | Email chain and attachment sent from J. Young to J. Svitak; re; FW: Final ResCap BOD package for 9/26/07 | 9/23/2007 | EXAM10199063 | EXAM10199064 | Confidential | | Yes | Yes | | |
| DX AYF | Email chain and attachment from A. Cummings to T. Marano, and P. West; cc to J. Whitlinger; re: FW: Revenue Recognition- Glassner Final [SEND SECURE] | 3/19/2012 | EXAM11097950 | EXAM11097995 | Confidential | | | Yes | H | |
| DX AYG | Email and attachment from R. Kennedy to A. Celini, M. Detwiler, J. Gray, R. Groody, D. Keith, M. Mainardi, M. Hales, J. Meehan, M. Rizzo, S. Sabia, M. Schroeter, P. Simon, R. Smith, cc J. Cole C. Fletcher, L. Gess, J. Manzari, J. Redmond, S. Schubert, A. Sotoodehnia; re: GMAC Bank Mortgage Credit Policy Committee Meeting Minutes For May 28, 2008 | 7/28/2008 | EXAM11445639 | EXAM11445642 | Confidential | | | Yes | H | |
| DX AYH | Ally, Accounting Policy 1030 Offsetting and Netting | 12/1/2011 | RC40000082 | RC40000098 | Confidential | | | Yes | H | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AYI | Email chain and attachments sent from B. Westman to R. Nielsen; re: RE: Asset Sales Info | | RCJSNII10074529 | RCJSNII10075107 | Professionals Eyes Only | Contains Westman Ex. 33 | Yes; Agreements ILS only | Yes | | |
| DX AYJ | Privileged email and attachments | | RCUCCJSN11241765 | RCUCCJSN11241799 | Confidential | Renzi Ex. 2 | Yes | Yes | | |
| DX AYK | Email sent from W. Nolan to W. Tyson, C. Gordy, and T. McDonagh; cc to M. Renzi, and T. Meerovich; re: FW: Liquidation Analysis | 7/1/2013 | RCUCCJSN11874351 | RCUCCJSN11874364 | Professionals Eyes Only | Renzi Ex. 4 | Yes | Yes | | |
| DX AYL | Email chain and attachment sent from J. Cortese to C. Dondzila, and J. Whitlinger; re: FW: Follow up to Friday's discussion | 3/2/2012 | RCUCCJSN20065433 | RCUCCJSN20065444 | Professionals Eyes Only | | | Yes | H in part | |
| DX AYM | Calendar invitation sent from F. Szymik to J. Horner, C. Gordy, T. Hamzehpour, T. McDonagh, W. Tyson, W. Nolan, M. Renzi; cc to B. Westman, P. Grande, and T. Hamzehpour; re: Liquidation Analysis | 7/1/2013 | RCUCCJSN30047089 | RCUCCJSN30047121 | Professionals Eyes Only | Renzi Ex. 3 | Yes | Yes | | |
| DX AYN | Correspondent Agreement for Purchase and Sale of Residential Mortgage Loans Between GMAC Bank and Freedom Mortgage Corporation | 4/4/2006 | RCUW00140906 | RCUW00140946 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AYO | Correspondent Agreement for Purchase and Sale of Residential Mortgage Loans Between GMAC Bank and Capital Mortgage Funding, LLC | 9/24/2004 | RCUW00141132 | RCUW00141156 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AYP | Correspondent Agreement for Purchase and Sale of Residential Mortgage Loans, Between GMAC Bank and Axiom Financial, LLC | 10/17/2005 | RCUW00145416 | RCUW00145450 | Confidential | | Yes for limited purpose (ILS) | Yes | | |
| DX AYQ | Email chain sent from K. Eckstein to D. Mannal, tgoren@mofo.com, glee@mofo.com; cc to lmarinuzzi@mofo.com; re: RE: Rescap - Plan | 9/4/2012 | UCC13005 | UCC13007 | Confidential | | Yes | Yes | | |
| DX AYR | Notice of Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Approving Amendment to Engagement Letter with Debtors' Chief Restructuring Officer, Lewis Kruger (Case No. 12-12020 (MG)) (dkt #5227) | 9/27/2013 | | | | | Yes for limited purpose (ILS) | Yes | | |
| DX AYS | Notice of Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer (Case No. 12-12020 (MG)) (dkt #2887) | 2/11/2013 | | | | | Yes for limited purpose (ILS) | Yes | | |
| REMOVED | Disclosure Statement / Notice of Filing of Corrected Solicitation Version of the Disclosure Statement and Joint Chapter 11 Plan (Case No. 12-12020-MG) (dkt #4819) | 8/23/2013 | | | | | Admitted Phase I | Yes | | PX 256 |
| REMOVED | Notice of Filing of Corrected Solicitation Version of the Disclosure Statement and Joint Chapter 11 Plan  (Case No. 12-12020 (MG)) (dkt #4819) | 8/23/2013 | | | | | Renzi Ex. 6 | Yes for limited purpose (ILS) | Yes | |
| DX AYV | Disclosure Statement for the Joint Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (dkt #4157) | | | | | | | Yes for limited purpose (ILS) | Yes | PX 859 |
| DX AYW | Memorandum of Law in Support of Debtors' Motion for Summary Judgment, Adv. Case No. 13-01262 (April 2, 2013) (the "Section 510(b) Memorandum") (dkt #26) | 4/2/2013 | | | | | | Yes for limited purpose (ILS) | Yes | PX 808 |

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AYX | Order (I) Approving Disclosure Statement, (II) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject The Plan Proponents' Joint Chapter 11 Plan, (III) Approving The Form Of Ballots, (Iv) Scheduling A Hearing On Confirmation Of The Plan, (V) Approving Procedures For Notice Of The Confirmation Hearing And For Filing Objections To Confirmation Of The Plan, And (Vi) Granting Related Relief (dkt #4809) | 8/23/2013 | | | | | Yes for limited purpose (ILS) | Yes | | PX 865 |
| DX AYY | American Institute of Certified Public Accountants, Practice Alert 00-1: Accounting for Certain Equity Transactions (January 2000) | 8/23/2013 | | | | | | Yes | H (703 only) | |
| DX AYZ | ResCap vs Non-ResCap Deferred Inventory as of December 31, 2012 | | | | | Aretakis Ex. 2 | | Yes | H | |
| DX AZA | Excerpts from the Report of Arthur J. Gonzalez, as Examiner (Case No. 12-12020-MG) (dkt #3698) (Aretakis Dep. Ex. 3) | | | | | Aretakis Ex. 3 | | Yes | H | |
| DX AZB | Ordinary & Capital Losses Generated by ResCap - July 1, 2009 through December 31, 2012 (projected) | | ALLY_0424653 | ALLY_0424654 | Confidential | Aretakis Ex. 4 | | Yes | H | |
| DX AZC | Excerpt from Ally Financial Inc., Annual Report (Form 10-K) | 3/1/2013 | | | | Aretakis Ex. 5 | | Yes | H | |
| DX AZD | Tax Basis Balance Sheet 12/31/2012 | | ALLY_PEO_0094436 | ALLY_PEO_0094436 | Professional Eyes' Only | Aretakis Ex. 7 | | Yes | H | |
| DX AZE | Email chain and attachment sent from J. Frucci to J. Horner, B. Westman, C. Gordy, J. Demro, stephen.sacks@ey.com, john.letzia@ey.com, howard_tucker@ey.com, W. Marx, and L. Grasso-Moon; re: RE: Follow-up call to 6/18 tax meeting (11:30am ET) | 6/21/2013 | RCUCCJSN11242595 | RCUCCJSN11242597 | Confidential | Aretakis Ex. 8 | | Yes | H | |
| DX AZF | Ally Financial Inc., Current Report (Form 8-K) | 7/31/2013 | | | | Aretakis Ex. 9 | | Yes | H | |
| DX AZG | Objection of Ad Hoc Group of Junior Secured Noteholders to Plan Proponents' Motion for an Order, Inter Alia, Approving the Disclosure Statement amd Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan | 8/8/2013 | | | | Aretakis Ex. 10 | Yes for limited purpose (ILS) | Yes | | |
| DX AZH | Email and attachments sent from F. Brandee to C. Dondzila and B. Westman; re: GMACM | 3/15/2012 | RCJSNII10014058 | RCJSNII10014107 | Confidential | Dondzila Ex. 3 | Yes | Yes | | |
| DX AZI | Email chain and attachment sent from J. Stern to M. Renzi, C. Dondzila, and B. Westman; cc to L. Park; re: RE: Waterfall Questions | 3/19/2012 | RCJSNII10014735 | RCJSNII10014737 | Confidential | Dondzila Ex. 4 | Yes | Yes | | |
| DX AZJ | Email chain and attachments sent from T. Frogge to J. Young; re: FW: How's the doc coming? Jim is actually ready to review while on calls. He's starting on the last version. | 5/4/2012 | ALLY_0368242 | ALLY_0368262 | Confidential | | | Yes | H | |
| DX AZK | ResCap Consolidated MSR Rollforward (Dec. 2009) | | EXAM00232590 | EXAM00232590 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AZL | ResCap Consolidated MSR Rollforward (Dec. 2010) | | EXAM00232591 | EXAM00232591 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AZM | ResCap Consolidated MSR Rollforward (Dec. 2011) | | EXAM00232592 | EXAM00232592 | Professionals' Eyes Only | | Yes | Yes | | |
| DX AZN | Transactions Detail Archive re: Book Transfer Debit | 3/28/2012 | EXAM00339992 | EXAM00339992 | Professionals' Eyes Only | | Yes | Yes | | |

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX AZO | Calendar invitation and attachment sent from L. Heigh to R. Groody, J. Lombardo, J. Peterson, J. Young, and B. Bier; re: Cash Flow Impact of Bank MSR's | | EXAM10092811 | EXAM10092813 | Confidential | | | Yes | H | |
| DX AZP | Email and attachments sent from A. Cummings to R. Egan, and D. Augustyn; re: DRAFT Ally Financial Report_Issue #1_clean_v2 | 3/13/2012 | EXAM10999918 | EXAM10999946 | Confidential | | | Yes | H | |
| DX AZQ | Email and attachments sent from A. Cummings to J. Kearney, R. Egan, and D. Augustyn; cc to J. Whitlinger; re: Revenue Recognition - Glassner (4) | 3/13/2012 | EXAM11000013 | EXAM11000056 | Confidential | | | Yes | H | |
| DX AZR | Email and attachment sent from J. Whitlinger to J. Kearney; re: Interview Summaries Whitlinger.docx | 3/7/2012 | EXAM11006650 | EXAM11006652 | Confidential | | | Yes | H in part | |
| DX AZS | Email chain and attachment sent from J. Whitlinger to C. Dondzila; re: FW: Interview Summaries Whitlinger (2).docx | 2/27/2012 | EXAM11006784 | EXAM11006786 | Confidential | | | Yes | H in part | |
| DX AZT | Email chain and attachment sent from D. Applegate to J. Heigh; re: FW: bankexamp.xls | 1/15/2007 | EXAM11248133 | EXAM11248134 | Confidential | | | Yes | H | |
| DX AZU | Notice of Telephonic Residential, LLC Audit Committee Meeting including Agenda and Supporting Materials | 10/28/2009 | RC40017954 | RC40017985 | Confidential | | Yes | Yes | | |
| DX AZV | Email and attachments sent from M. McGarvey to C. Dondzila, J. Horner, and P. Grande; cc to B. Westman, and R. Hahn; re: RE: Intercompany Allocations | 4/23/2012 | RCUCCJSN20087175 | RCUCCJSN20087214 | Professionals' Eyes Only | | | Yes | H in part | |
| DX AZW | Email and attachments sent from D. Gropper to K. Eckstein; cc to D. Mannal; re: RE: Rescap - FOR HEARING | 12/20/2012 | AHG2_0002731 | AHG2_0002745 | | Dubel Ex. 1 | | Yes | H in part | |
| DX AZX | Email chain sent from D. Gropper to K. Eckstein; re: RE: Rescap | 1/4/2013 | AHG2_0002746 | AHG2_0002747 | | | | Yes | H in part | |
| DX AZY | Email and attachments sent from D. Gropper to K. Eckstein; re: FW: Rescap | 1/15/2013 | AHG2_0002748 | AHG2_0002758 | | | | Yes | H in part | |
| DX AZZ | Email and attachments sent from D. Gropper to K. Eckstein; re: Rescap | 1/8/2013 | AHG2_0002759 | AHG2_0002768 | | | | Yes | H | |
| DX BAA | Federal Register: Part IV- Department of Housing and Urban Development - Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers; Final Rule | 3/1/1999 | AHG_JSN_0001358 | AHG_JSN_0001366 | | | Yes for limited purpose (ILS) | Yes | | |
| DX BAB | Email sent from J. Peterson to J. Lombardo, and L. Kelly; re: FW: Direct Seller - Update | 3/13/2009 | ALLY_0329052 | ALLY_0329054 | Confidential | | | Yes | H in part | |
| DX BAC | Residential, LLC, Annual Report (Form 10-K) | 12/31/2008 | | | | | Yes | Yes | | |
| DX BAD | Residential, LLC, Annual Report - Amendment No. 1 (Form 10-K/A) | 12/31/2008 | | | | | Yes | Yes | | PX 588 |
| DX BAE | Residential, LLC, Quarterly Report (Form 10-Q) | 3/31/2008 | | | | | | Yes | | |
| DX BAF | Residential, LLC, Quarterly Report (Form 10-Q) | 3/31/2009 | | | | | Yes | Yes | | |
| DX BAG | Residential, LLC, Quarterly Report (Form 10-Q) | 6/30/2008 | | | | | | Yes | | |
| DX BAH | Residential, LLC, Quarterly Report (Form 10-Q) | 9/30/2008 | | | | | | Yes | | |
| DX BAI | Residential, LLC, Annual Report (Form 10-K) | 12/31/2007 | | | | | | Yes | | |

28

Junior Secured Notes and Notes Trustees' Exhibit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX BAJ | Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to use Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection (Case No. 12-12020-MG)) (dkt #491) | 6/25/2012 | | | | | Admitted Phase I | Yes | | PX 76 |
| DX BAK | Objection of the Notes Trustee and Ad Hoc Committee of Junior Secured Noteholders to Confirmation of Plan Proponents' Chapter 11 Plan (Case No. 12-12020 (MG)) (dkt #5443-1) | 10/22/2013 | | | | | Yes for limited purpose (ILS) | Yes | | |
| DX BAL | Memorandum Opinion Denying Without Prejudice UMB Bank's Motion to Dismiss Counts 3 and 5, and Granting in Part and Denying in Part the Committee's Motion to Dismiss Certain Junior Secured Noteholder Counterclaims (Case No. 12-12020-MG)) (dkt #5128) | 9/20/2013 | | | | | Yes for limited purpose (ILS) | Yes | | |
| DX BAM | Email chain from J. Lewis to M. Renzi and L. Park; cc to W. Nolan, F. Karl, R. Snellenbarger, B. Illhardt, and F. Karl; re: FW: ResCap - Intercompany Balances | 6/29/2012 | AHG2_0010659 | AHG2_0010660 | Confidential | | | Yes | H | |
| DX BAN | Email chain and attachments sent from liz.park@fticonsulting.com to liz.park@fticonsulting.com, M. Renzi, W. Nolan, T. Goren, C. Dondzila, and B. Westman; cc to F. Szymik and B. McDonald; re: RE: Intercompany info request from Houlihan | 6/22/2012 | RCUCCJSN30016034 | RCUCCJSN30016164 | Confidential | Contains Westman Ex. 6; Contains Westman Ex. 35 | Yes | Yes | | |

# EXHIBIT C

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX A | Indenture for the Residential Capital, LLC and each of the Guarantors from time to time party hereto, 9.625% Junior Secured Guaranteed Notes Due 2015 | 6/6/2008 | ALIX 003152 | ALIX 003271 | | | Yes | Yes | | |
| DX B | Intercreditor Agreement among Wells Fargo, N.A., GMAC LLC, U.S. Bank National Association, Residential Funding Company, LLC, GMAC Mortgage, LLC and Residential Capital, LLC | 6/6/2008 | WELLS FARGO_000368 | WELLS FARGO_000450 | | | Yes | Yes | | |
| DX C | Third Priority Pledge and Security Agreement and Irrevocable Proxy among Residential Capital, LLC, U.S. Bank National Association and Wells Fargo Bank, N.A. | 6/6/2008 | RCUCCJSN10275127 | RCUCCJSN10275227 | | | Yes | Yes | | |
| DX D | Amended and Restated Third Priority Pledge and Security Agreement and Irrevocable Proxy among Residential Capital, LLC, U.S. Bank National Association and Wells Fargo Bank, N.A. | 12/30/2009 | WELLS FARGO_002995 | WELLS FARGO_003051 | | | Yes | Yes | | |
| DX E | Loan Agreement by and among Residential Funding Company, LLC and GMAC Mortgage, LLC as Borrowers and GMAC LLC as Initial Lender and Lender Agent | 6/4/2008 | WELLS FARGO_000014 | WELLS FARGO_000228 | | | Yes | Yes | | |
| DX F | Amended and Restated Loan Agreement by and among Residential Funding Company and GMAC Mortgage, LLC as Borrowers and GMAC Inc. as Initial Lender (Senior Debt Loan Agreement) | 12/30/2009 | WELLS FARGO_002568 | WELLS FARGO_002737 | | | Yes | Yes | | |
| DX G | First Priority Pledge and Security Agreement and Irrevocable Proxy among Residential Funding Company, LLC, GMAC Mortgage, LLC, GMAC, LLC and Wells Fargo Bank, N.A. | 6/4/2008 | WELLS FARGO_000229 | WELLS FARGO_000335 | | | Yes | Yes | | |
| DX H | Amended and Restated First Priority Pledge and Security Agreement and Irrevocable Proxy among Residential Funding Company, LLC, GMAC Mortgage, LLC, GMAC, Inc. and Wells Fargo Bank, N.A. (Senior Debt Loan Agreement) | 12/30/2009 | WELLS FARGO_002738 | WELLS FARGO_002866 | | | Yes | Yes | | |
| DX I | Amended and Restated Loan Agreement by and among Residential Funding Company, LLC, GMAC Mortgage, LLC, Residential Capital, LLC and GMAC Inc. (Line of Credit Agreement) | 12/30/2009 | RCUCCJSN10144081 | RCUCCJSN10144229 | | | Yes | Yes | | |
| DX J | Second Amendment to the Amended and Restated Loan Agreement by and among Residential Funding Company, LLC, GMAC Mortgagae LLC, Residential Capital, LLC and Ally Financial Inc. | 5/14/2010 | AFIJSN_0043084 | AFI0043252 | | | Yes | Yes | | |
| DX K | Series of Collateral Releases and UCC-3s Introduced as Exhibits 16A-D at the Wells Fargo 30(b)(6) Deposition | | Wells Fargo 30(b)(6) Deposition Exhibit 16 A-D | | | | Yes | Yes | | |
| DX L | Series of Collateral Releases and UCC-3s Introduced as Exhibits 17A-B at the Wells Fargo 30(b)(6) Deposition | | Wells Fargo 30(b)(6) Deposition Exhibit 17 A-B | | | | Yes | Yes | | |
| DX M | Partial release of Collateral (Pledge of MSRs and Additional Assets Under LOC Loan Facility) | 5/14/2010 | ALLY_0070276 | ALLY_0070462 | | | Yes | Yes | | |
| DX N | Partial release of Collateral (Pledge of Repo Loans) | 5/17/2010 | ALLY_0070767 | ALLY_0070875 | | | Yes | Yes | | |

Third Priority Collateral Agent's Exhbit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX O | UCC Financing Statement Amendment Filed May 17, 2010 | | ALLY_0070876 | ALLY_0070899 | | | Yes | Yes | | |
| DX P | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5609, filed at ditech, LLC #12-12021 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX Q | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5616, filed at DOA Holding Properties, #12-12022 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX R | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5619, filed at DOA Properties IX (Lots-Other), #12-12023 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX S | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5623, filed at Equity Investment I, LLC, #12-12025 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX T | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5627, filed at GMAC Model Home Finance I, LLC, #12-12030 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX V | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5629, filed at GMAC Mortgage, LLC, #12-12032 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX W | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5631, filed at GMAC Mortgage USA Corporation, #12-12031 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX X | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5639, filed at GMAC Residential Holding Company, #12-12033 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX Y | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5650, filed at GMACR Mortgage Products, LLC, #12-12037 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX Z | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5654, filed at GMAC-RFC Holding Company, LLC, #12-12029 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX AA | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5657, filed at Home Connects Lending Service, LLC, #12-12039 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX BB | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5660, filed at Homecomings Financial, LLC, #12-12042 | | | | Yes for limited purpose (ILS) | Yes | | |

4

Third Priority Collateral Agent's Exhbit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX CC | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5663, filed at Homecomings Financial Real Estate Holdings, LLC #12-12040 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX DD | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5668, filed at Passive Asset Transactions, LLC, #12-12044 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX EE | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5671, filed at RCSFJV2004, LLC, #12-12051 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX FF | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5673, filed at Residential Capital, LLC, #12-12020 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX GG | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5678, filed at Residential Consumer Services, LLC, #12-12058 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX HH | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5685, filed at Residential Funding Company, LLC, #12-12019 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX II | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5697, filed at Residential Funding Mortgage Securities, I, Inc., #12-12060 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX JJ | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5699, filed at Residential Funding Real Estate Holdings, LLC, #12-12062 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX KK | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Proof of Claim #5700, filed at Residential Mortgage Real Estate Holdings, LLC #12-12063 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX LL | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5702, filed at RFC Asset Holdings, II, LLC, #12-12065 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX MM | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5757, filed at RFC Asset Management, LLC, #12-12066 | | | | Yes for limited purpose (ILS) | Yes | | |

Third Priority Collateral Agent's Exhbit List and Plaintiffs and Plan Proponents' Objections

| Exhibit No. | Description | Date | Begin Bates Number | End Bates Number | Exhibit Designation | Deposition | Admit Without Objection | Authentication Waiver | Objection | Duplicate |
|---|---|---|---|---|---|---|---|---|---|---|
| DX NN | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5759, RFC Construction Funding, LLC, #12-12069 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX OO | Proof of Claim of Wells Fargo Bank, N.A., as First Priority Collateral Agent, Third Priority Collateral Agent and Collateral Control Agent | | Claim #5760, RFC SFJV-2002, LLC, #12-12071 | | | | Yes for limited purpose (ILS) | Yes | | |
| DX PP | Objection of Wells Fargo Bank, N.A., in its Capacities as First Priority Collateral Agent, Third Priority Collateral Agent, and Collateral Control Agent, to Confirmation of the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors | 10/21/2013 | Docket Number 5410 | | | | Yes for limited purpose (ILS) | Yes | | |