# Exhibit I

# ally

| **ACCOUNTING POLICY 1030** **OFFSETTING AND NETTING** | | **Division/Dept:** Accounting | **Page** 1 of 17 |
|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | **Published Date:** December 1, 2011 |

## Table of Contents

1.0  Approvals and Revision History...................................................................................... 2
2.0  Purpose............................................................................................................................ 2
3.0  Scope .............................................................................................................................. 2
4.0  Definitions ...................................................................................................................... 2
5.0  Policy Statement............................................................................................................. 3
6.0  Standards, Practices and Procedures ............................................................................. 3
    6.1  Applicable Laws and Regulations ........................................................................ 4
    6.2  Policy .................................................................................................................... 5
    6.3  Derivative Payables and Receivables ................................................................... 6
    6.4  General Concepts .................................................................................................. 7
        6.4.1  Master Netting Arrangements .................................................................. 7
        6.4.2  Cash Collateral ......................................................................................... 7
        6.4.3  Use of an Agent ........................................................................................ 7
        6.4.4  Exchange Settled Transactions ................................................................ 7
        6.4.5  Non-Derivative Payables and Receivables .............................................. 8
        6.4.6  Repurchase and Reverse Repurchase Agreements .................................. 8
        6.4.7  Repurchase Agreements Related to Separate Security Transactions ...... 8
        6.4.8  Repurchase Agreements Related to Contemporaneous Security Transactions ..... 9
        6.4.9  Accounting for Cash Collateral .............................................................. 10
        6.4.10 Accounting for Non-Cash Collateral (Securities) ................................. 11
        6.4.11 Broker Dealer Unsettled Trades ............................................................ 11
    6.5  Documentation Requirements ............................................................................ 12
    6.6  Financial Statement Disclosures - US GAAP and SEC requirements .............. 12
    6.7  Regulatory Reporting and Other Information .................................................... 12
7.0  Accountability .............................................................................................................. 13
8.0  Information and Communication................................................................................. 14
9.0  Policy Monitoring and Maintenance ........................................................................... 15
10.0 Affected Areas and Exceptions ................................................................................... 15
11.0 Review Cycle ............................................................................................................... 15
12.0 Effective Date .............................................................................................................. 15
13.0 Appendices .................................................................................................................. 15
    Appendix I.   Related Policies Referenced .................................................................. 15
    Appendix II.  Revision History..................................................................................... 16
    Appendix III. Securities Lending Transaction Gross vs. Net Decision Tree ............. 17

ALLY CONFIDENTIAL    1030 Offsetting & Netting v2.0.doc

CONFIDENTIAL    RC40000082

# ally

| ACCOUNTING POLICY 1030 OFFSETTING AND NETTING | | Division/Dept: Accounting | Page 2 of 17 |
|---|---|---|---|
| Supersedes: Version Dated November 1, 2009 | Distribution: All Ally | Issued by: Director of Accounting Policy | Approval Authority: Accounting Policy Committee |
| Effective Date: December 1, 2011 | Last Review Date: November 9, 2011 | Next Review Date: November 1, 2013 | Published Date: December 1, 2011 |

## 1.0  Approvals and Revision History

| Version | Author | Approval Date | Approved By Name and Title |
|---|---|---|---|
| 1.0 | Gary Ford | 10/19/09 | Accounting Policy Committee |
| 2.0 | Mark Sitlinger | 11/09/2011 | Accounting Policy Committee |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## 2.0  Purpose

The purpose of this Accounting Policy 1030, *Offsetting and Netting* (Policy) is to establish guidelines for the accounting of certain financial assets and liabilities and whether those assets should be reported on a gross or net basis. This policy provides a uniform standard for such items and is applicable throughout all Ally Financial Inc. and its direct or indirect subsidiaries, including all Lines of Business (LoBs), Business Units (BUs), and Global Functions, (collectively, Ally). Adherence to this policy is the responsibility of the LoB Controller, or similar role.

## 3.0  Scope

This Policy addresses U.S. Generally Accepted Accounting Principles (US GAAP) and reporting requirements related to offsetting and netting of assets and liabilities. This policy also addresses additional reporting requirements which pertain to Bank Holding Companies and are enforced by various regulatory authorities including the Federal Reserve (the Fed), the Federal Financial Institutions Examination Council (FFIEC), the Office of the Comptroller of the Currency (OCC), the Federal Deposit Insurance Corporation (FDIC), and the Office of Thrift Supervision (OTS). These additional regulatory reports should be prepared in accordance with US GAAP as outlined in this policy and with the instructions provided for the reports.

## 4.0  Definitions

Definitions of significant terms used in this Policy are listed below:

**Business Unit (BU)** – An organizational entity within Ally, which is distinguishable from other Ally business units because it serves a defined external market where management can conduct strategic planning in relation to products and markets.

**ally**

| ACCOUNTING POLICY 1030 *OFFSETTING AND NETTING* | | **Division/Dept:** Accounting | **Page** 3 of 17 |
|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | **Published Date:** December 1, 2011 |

**Global Function** – Those organization groups that combine or consolidate certain globally-required support services, some of which may be responsible for corporate policy making corporate governance, including such functions as audit, compliance, corporate communications, legal, marketing, risk, finance, human resources, and technology and operations.

**Line of Business (LoB)** – An organization reporting entity involved in the origination of products or services such as GMAC Insurance (GMACI), North American Operations (NAO), International Operations (IO), Commercial Finance (CF), and Mortgage Operations.

**U.S. Generally Accepted Accounting Principles** – US GAAP

## 5.0   Policy Statement

This policy provides Ally applicable guidance and accounting requirements for most general transactions or issues associated with this accounting topic. For guidance regarding the proper accounting treatment of any significant new or atypical transactions, or questions on particular items contained within this policy, please contact the Global Accounting Policy Department.

## 6.0   Standards, Practices and Procedures

It is a general principle of accounting that the offsetting of assets and liabilities in the balance sheet is improper except if the **right of offset** exists. This policy provides criteria for offsetting amounts related to certain contracts and provides guidance on presentation. This policy applies to unconditional receivables and payable to another party as well as conditional contracts under which the amounts to be received or paid or items to be exchanged in the future depend on future interest rates, future exchange rates or other factors.

Ally enters into various conditional contracts including, but not limited to, short securities, reverse repos, to-be-announced securities (TBAs), options, futures, swaps and caps. Due to the nature of these instruments, they may be in a receivable (asset) position or a payable (liability) position at the end of any accounting period.

Amounts payable to, and receivable from, the same party under contracts may be offset as long as certain conditions are met. These conditions must be met before offsetting is permitted, and the decision to offset should be consistently applied throughout Ally.

If the conditions to offset are not met, amounts payable to and receivable from must be presented on a gross basis in Ally's financial statements.



| **ACCOUNTING POLICY 1030** <br> ***OFFSETTING AND NETTING*** | | **Division/Dept:** Accounting | **Page** 4 of 17 |
|---|---|---|---|
| **Supersedes:** <br> Version Dated <br> November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** <br> December 1, 2011 | **Last Review Date:** <br> November 9, 2011 | **Next Review Date:** <br> November 1, 2013 | **Published Date:** <br> December 1, 2011 |

## 6.1 Applicable Laws and Regulations

This Policy, including all risk standards described herein, is intended to be consistent with all applicable legal and regulatory requirements regarding their subject matter.

GAAP/SEC References

| | |
|---|---|
| FASB ASC 210-20 | *Balance Sheet→Offsetting* |
| FASB ASC 815-10 | *Derivatives and Hedging→Overall* |
| FASB ASC 860-10 | *Transfers and Servicing→Overall* |
| FASB ASC 860-30 | *Transfers and Servicing→Secured Borrowing and Collateral* |

GAAP References Superseded by FASB Codification

| | |
|---|---|
| SFAS 140 | *Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities* |
| FIN 39 | *Offsetting of Amounts Related to Certain Contracts* |
| FIN 41 | *Offsetting of Amounts Related to Certain Repurchase and Reverse Repurchase Agreements* |
| APB Opinion No. 10 | *Omnibus Opinion – 1966* |
| FSP FAS 140-3 | *Accounting for Transfers of Financial Assets and Repurchase Financing Transactions* |
| FSP FIN 39-1 | *Amendment of FASB Interpretation No. 39, Offsetting of Amounts Related to Certain Contracts* |

Bank Regulatory References

| | |
|---|---|
| Bank Holding Company Supervision Manual | *Sections 3240 Underwriting and Dealing in U.S. Obligations, Municipal Securities, and Money Market Instruments, 4060.3.5.3.15 Netting of Swaps and Similar Contracts* |
| Commercial Bank Examination Manual | *Sections 2020.1, 2030.1, 2030.3, 2030.4, 3020.1* |
| Trading and Capital Markets Activities Manual | *Section 2120.1 Accounting for netting for various products* |



| ACCOUNTING POLICY 1030 *OFFSETTING AND NETTING* || **Division/Dept:** Accounting | **Page** 5 of 17 |
|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | **Published Date:** December 1, 2011 |

Federal Reserve

*Consolidated Financial Statements for Bank Holding Companies: Reporting Form & Instructions for FR Y-9C*

### 6.2   Policy

The netting of assets and liabilities in the balance sheet is improper except where a right of offset exists. A **right of offset** is defined as a borrower's legal right, by contract or otherwise, to discharge all or a portion of the debt owed to another party by applying against the debt an amount that the other party owes to the borrower. In this context, "borrower" is the specific entity that is a party to the agreement from which the debt arises, which is generally a single legal entity, not a consolidated group. A separate agreement may permit multiple entities of a group to be responsible for each others debts (see additional discussion of other types of "master netting arrangements" below). "Discharge" means that the debt is considered paid, and the amount will never have to be paid to the creditor in the future.

A right of offset exists when <u>all</u> of the following conditions are met:

1. Each of <u>two</u> parties owes the other determinable amounts
2. The reporting party has the right to offset the amount owed with the amount owed by the other party.
3. The reporting party intends to offset (except as discussed in the Derivative Payables and Receivables section below). The "intent to offset" does not refer to intent to present the amounts net in the financial statements, but rather the intent to <u>pay or receive</u> only the net amount to or from the other party. Intent of the parties may be established via specific contractual terms or their actions in the normal course of business. Presenting assets and liabilities as net amounts is inappropriate if the full amount of the payable will be paid, and the full amount of the receivable will be received. For example, when the due dates of the amounts are different, such that the payable is due currently but the receivable is not due for several months or years, the intent to offset typically does not exist and the amounts should be presented gross.
4. The right of offset is enforceable by law.

Offsetting is permitted only if the payable and the receivable are due to and from the same counterparty. Additionally, legal constraints should be considered to determine whether the right of offset is enforceable. For example, the U.S. Bankruptcy Code imposes restrictions on, or prohibitions against, the right of offset in bankruptcy under



| ACCOUNTING POLICY 1030<br>*OFFSETTING AND NETTING* | | Division/Dept: Accounting | Page 6 of 17 |
|---|---|---|---|
| **Supersedes:**<br>Version Dated<br>November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:**<br>Accounting Policy Committee |
| **Effective Date:**<br>December 1, 2011 | **Last Review Date:**<br>November 9, 2011 | **Next Review Date:**<br>November 1, 2013 | **Published Date:**<br>December 1, 2011 |

certain conditions. The right to offset the payable and receivable amounts should generally be evidenced by a contractual agreement signed by both parties, to provide assurance that the right of offset would be enforceable in a court of law.

When all of the above four conditions are met a valid right of offset exists. In such cases, LoBs may offset the related asset and liability and report the net amount in the balance sheet. If the four conditions are **not** met, the LoBs should report the amounts gross in the balance sheet.

For futures contracts, offsetting is permissible when the futures contracts with the same settlement date are settled through an exchange or a clearinghouse, provided the exchange or clearinghouse provides a guarantee on the settlement of the trades. In other words, the exchange or clearinghouse would be viewed as the counterparty to the transaction. A clearinghouse typically acts as an intermediary in futures transactions. If Ally chooses to offset at the exchange or clearinghouse level, an assessment of whether the exchange or clearinghouse is guaranteeing settlement, as well as if such settlement will occur on a net basis, should be made. If settlement is guaranteed by the exchange or clearinghouse, the transaction can be netted, provided settlement is performed on a net basis. However, some contracts, regardless of guarantee features by a clearinghouse could be settled gross, therefore a blanket assumption that these contracts are settled net should not be made without further review of the settlement attributes.

The LoB should review historic practice; however consideration must also be given to intent in assessing whether the above criteria are met. In some circumstances, a LoB may have transactions which meet the four criteria and therefore are reported on a net basis; however, it may also have transactions with the same type of instrument which do not meet the four criteria and therefore are reported gross.

### 6.3 Derivative Payables and Receivables

If all but criteria 3 (the intent to offset) are met in section 6.2 above, the guidance allows an entity to make an election regarding the offsetting of fair value amounts recognized for derivative instruments and fair value amounts recognized for the right to reclaim cash collateral (receivable) or the obligation to return cash collateral (payable) arising from derivative instruments recognized at fair value executed with the same counterparty under a master netting arrangement. Ally has elected to present derivatives which **do not meet** all of the four criteria listed above on a **gross** basis in the balance sheet. For those derivative payable and receivable instruments that meet all of the four criteria above, LoBs may offset these amounts and report the net amount in the balance sheet.



| ACCOUNTING POLICY 1030  *OFFSETTING AND NETTING* | | **Division/Dept:** Accounting | **Page** 7 of 17 |
|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | **Published Date:** December 1, 2011 |

### 6.4 General Concepts

#### 6.4.1 Master Netting Arrangements

A master netting arrangement exists if one of Ally's legal entities has multiple contracts (whether for the same type of derivative instrument or for different types of derivative instruments) with a single counterparty. These contracts must be subject to a contractual agreement that provides for the net settlement of all contracts through a single payment in a single currency in the event of default on or termination of any one contract. The master netting arrangement need not be a separate agreement as long as the settlement provisions within **each** contract acknowledges the existence of the other contracts and provides that **all** contracts executed between the parties will be settled with a single net payment in the event of default or termination of one of the contracts.

#### 6.4.2 Cash Collateral

Cash Collateral (margin deposits) paid to a counterparty or received from a counterparty in connection with certain derivative or repurchase contracts may be included in the netting process, if the terms of the netting arrangement specify that the party holding the margin cash may use that cash as a portion of the settlement, requiring the counterparty to pay only the net additional amount necessary to settle the contract(s).

#### 6.4.3 Use of an Agent

In general, the use of an "agent", such as a clearinghouse that does not provide a guarantee on the settlement of its trades, to process derivative contract settlements with various counterparties does not create a netting arrangement. Such contracts should be netted only at the counterparty level and only if the agreements with the counterparty permits netting of multiple contracts.

#### 6.4.4 Exchange Settled Transactions

An exception to the "by counterparty" rule relates to instruments settled through exchanges (e.g. Chicago Futures Exchange) where the exchange is viewed as the counterparty. In these instances, the exchange has a margin agreement which contains a feature that guarantees settlement. Therefore, instruments settled through an exchange meet all of the four criteria, have offsetting positions, and therefore may be reported net in the balance sheet.

NOTE: This logic also applies to a clearinghouse, if the clearinghouse guarantees the settlement of the trades.



| ACCOUNTING POLICY 1030 *OFFSETTING AND NETTING* | | Division/Dept: Accounting | Page 8 of 17 |
|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | **Published Date:** December 1, 2011 |

#### 6.4.5 Non-Derivative Payables and Receivables

If a right of offset exists, and Ally <u>intends</u> to offset a payable to another party with a receivable from that same party, only the net payable or receivable will actually be exchanged in cash in the future, Ally may report those balances on a net basis.

#### 6.4.6 Repurchase and Reverse Repurchase Agreements

Ally enters into repurchase and reverse repurchase transactions in the normal course of business. An agreement that both entitles and obligates the transferor to repurchase or redeem transferred assets from the transferee maintains the transferor's effective control over those assets, and the transfer is therefore accounted as a secured borrowing, if and only if all of the following conditions are met:

- The assets to be repurchased or redeemed are the same or substantially the same as those transferred
- The transferor is able to repurchase or redeem them on substantially the agreed terms, even in the even of default by the transferee
- The agreement is to repurchase or redeem them before maturity at a fixed determinable price
- The agreement is entered into concurrently with the transfer.

In situations where the above criteria are met, Ally should record the transaction as a secured borrowing to reflect its economic substance.

With respect to receivables and payables related to repurchase and reverse repurchase agreements, the guidance allows an entity an election to present those receivables and payables on a net basis, by counterparty, provided certain conditions are met. With respect to this election, Ally has elected to present receivables and payables related to repurchase and reverse repurchase agreements on a gross basis in the balance sheet, unless they meet all 4 of the criteria in Section 6.2 above. This treatment should be applied consistently across all LoBs.

#### 6.4.7 Repurchase Agreements Related to Separate Security Transactions

In circumstances where the security under the repurchase or reverse repurchase agreement is the same or similar to a security that was separately purchased or sold in a recent transaction, the transferor and transferee should account for the purchase and/or sale transaction and the related repurchase and reverse repurchase

**ally**

| ACCOUNTING POLICY 1030 *OFFSETTING AND NETTING* | | **Division/Dept:** Accounting | | **Page** 9 of 17 |
|---|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | | **Published Date:** December 1, 2011 |

agreements as a single transaction (i.e. on a net basis, as a secured financing) unless:

- The two transactions have a valid and distinct business purpose for being entered into separately and;

- The repurchase financing does not result in the initial transferor regaining control over the financial asset (in other words, does the initial transfer qualify as a sale under Ally Accounting Policy 2280, *Loan Sales and Securitizations*).

### 6.4.8 Repurchase Agreements Related to Contemporaneous Security Transactions

An initial transfer of a financial asset and repurchase financing that are entered into contemporaneously with (i.e. at the same time), or in contemplation of (i.e. consideration at the same time of initial transfer), one another shall be considered linked (and therefore reported on a net basis, as a secured financing) unless **all** of the following criteria are met at the inception of the transaction:

- The initial transfer and the repurchase financing are not contractually contingent on one another. Even if no contractual relationship exists, the pricing and performance of either the initial transfer or the repurchase financing must not be dependent on the terms and execution of the other transaction. Repos involving less liquid securities (e.g. residual bonds) should be netted regardless of whether or not there is a contractual link to the two sides of the transaction.

- The repurchase financing provides the initial transferor with recourse to the initial transferee upon default. That recourse must expose the initial transferor to the credit risk of the initial transferee, or its affiliates, and not solely to the market risk of the transferred financial asset. The initial transferee's agreement to repurchase the previously transferred financial asset (or substantially the same asset) is for a fixed price and not fair value.

- The financial asset subject to the initial transfer and repurchase financing is readily obtainable in the marketplace. In addition, the initial transfer of a financial asset and the repurchase financing are executed at market rates. This criterion may not be circumvented by embedding off-market terms in a separate transaction contemplated with the initial transfer or the repurchase financing.

| ACCOUNTING POLICY 1030 *OFFSETTING AND NETTING* | | **Division/Dept:** Accounting | **Page** 10 of 17 |
|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | **Published Date:** December 1, 2011 |

- The financial asset and repurchase agreement are not coterminous (the maturity date of the repurchase financing must be prior to the maturity date of the financial asset)

Additionally, if Ally buys or sells a security and then contemporaneously enters into a repurchase agreement for the same or substantially the same security with the same counterparty (similar to a securities lending arrangement), those transactions should be viewed as linked and therefore netted unless all of the above criteria are met at the inception of the transaction.

If the transactions meet all of these provisions, then the initial transfer and the repurchase financing should be accounted for as two separate transactions (i.e. reported gross). Also, at this point, the initial transfer should be evaluated to determine if it meets sale accounting under FASB ASC 860 (refer to Ally Accounting Policy 2280, *Loan Sales and Securitizations*).

If any of the provisions above are not met, the transactions should be considered linked (i.e. reported on a net basis). The linked transaction would generally be accounted for as a forward contract and should be evaluated to determine whether or not it is a derivative. If the linked transaction is deemed to be a derivative, it should be accounted for and disclosed along with other derivatives of Ally (refer to Ally Accounting Policy 2800, *Derivative and Hedge Accounting)*.

Refer to Appendix III – Securities Lending Transaction Gross vs. Net Decision Tree for additional information related to offsetting and netting.

### 6.4.9  Accounting for Cash Collateral

In a derivatives, securities lending or repurchase transactions, cash may be received as collateral. We account for that cash collateral by recording the cash and an offsetting liability to return the cash collateral. If we are restricted from using this cash under the ISDA Credit Support Annex (derivative), Securities Lending Agreement (securities lending), Master Repurchase Agreement (repo) or other contract, we record the cash as restricted cash on our balance sheet. If we need to post cash collateral with our counterparty, we remove the cash from our balance sheet and record a receivable for the cash due back to us. The accounting is illustrated below.

*Receiving Cash Collateral*

Debit        Cash/Restricted Cash (depends on contractual terms)

Credit       Obligation to Return Cash Collateral



| ACCOUNTING POLICY 1030 *OFFSETTING AND NETTING* || Division/Dept: Accounting | Page 11 of 17 |
|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | **Published Date:** December 1, 2011 |

*Posting Cash Collateral*

Debit         Right to Reclaim Cash Collateral

Credit         Cash

Since transactions vary, the facts and circumstances of each transaction should be reviewed to determine whether cash collateral is required to be classified as restricted cash. Note: Refer to Ally Accounting Policy 1040, *Intercompany Accounting* for treatment of intercompany cash collateral.

### 6.4.10 Accounting for Non-Cash Collateral (Securities)

Recognition of non-cash collateral depends on whether the secured party (the transferee or the party receiving the collateral) has the right to sell or repledge the collateral and whether the borrower (the transferor or posting party) has defaulted. The following details the recognition principles:

- Securities or other non-cash instruments received by the transferee (collateral receiving entity) as collateral should continue to be recognized on the transferor's (collateral posting entity) balance sheet regardless of whether or not the transferee has the right to sell or repledge the collateral.

- When the transferee sells the non-cash collateral, it should recognize any proceeds it receives from the transaction and record a liability for its obligation to return the collateral. Prior to the sale, the pledged asset should not be recognized on the transferee's balance sheet unless the transferor has defaulted on its obligation.

- If the transferor defaults and is no longer entitled to redeem the assets pledged as collateral, it should derecognize the collateral and the transferee should either (1) recognize the collateral as its own asset at fair value or (2) derecognize any obligation to return the collateral if an obligation was previously recognized.

- If the transferee has the ability (implicitly or through the contract terms) to sell or repledge the collateral it receives, separate classification is required by the transferor in either the balance sheet or noted in the notes to the financial statements.

### 6.4.11 Broker Dealer Unsettled Trades

Specific to our broker dealer entity, payable and receivable balances that arise from unsettled regular way security trades may be recorded and reported on a net



| ACCOUNTING POLICY 1030 *OFFSETTING AND NETTING* | | Division/Dept: Accounting | Page 12 of 17 |
|---|---|---|---|
| Supersedes: Version Dated November 1, 2009 | Distribution: All Ally | Issued by: Director of Accounting Policy | Approval Authority: Accounting Policy Committee |
| Effective Date: December 1, 2011 | Last Review Date: November 9, 2011 | Next Review Date: November 1, 2013 | Published Date: December 1, 2011 |

basis. See definition of regular way securities in Ally Accounting Policy 2110, *Investment Securities*.

## 6.5 Documentation Requirements

Sufficient documentation must be maintained in order to support the decision to offset and net certain assets and liabilities in accordance with this policy. Documentation should include, but is not limited to: name of the counterparties involved, a detailed description of the asset or liability and transaction(s), and an analysis which discusses why and/or how the items meet the offsetting criteria.

## 6.6 Financial Statement Disclosures - US GAAP and SEC requirements

For consolidated financial reporting, Ally will disclose its policy to offset or not offset certain assets and liabilities in accordance with this policy. Ally will disclose, if material:

- An accounting policy statement regarding Ally's election of gross or net presentation; and
- At the end of each reporting period the amounts recognized for the right to reclaim cash collateral or the obligation to return cash collateral under master netting arrangements.

## 6.7 Regulatory Reporting and Other Information

The list below represents forms and related instructions issued by bank regulatory authorities pertaining to offsetting and netting. These forms and instructions can be accessed by the links below. Information reported to the Federal Reserve on the FR Y series reports represent the consolidated activity for Ally as a bank holding company while information reported to the FFIEC on the 041 (i.e. call report) is limited to the activity of Ally Bank. In addition, please contact the Corporate Regulatory Reporting department to determine if data gaps or errors warrant any notification or restatement.



| ACCOUNTING POLICY 1030 OFFSETTING AND NETTING | | Division/Dept: Accounting | Page 13 of 17 |
|---|---|---|---|
| Supersedes: Version Dated November 1, 2009 | Distribution: All Ally | Issued by: Director of Accounting Policy | Approval Authority: Accounting Policy Committee |
| Effective Date: December 1, 2011 | Last Review Date: November 9, 2011 | Next Review Date: November 1, 2013 | Published Date: December 1, 2011 |

| Regulatory Reports and Schedules | Regulatory Authority | Regulatory Report | Regulatory Report Instructions |
|---|---|---|---|
| Consolidated Financial Statements for Bank Holding Companies - Form FR Y-9C<br><br>Schedule HC: Trading Assets<br>Schedule HC-B: Securities<br>Schedule HC-D: Derivatives with a positive/negative fair value<br>Schedule HC-G: Other Liabilities<br>Schedule HC-M: Memorandum<br>Schedule HC-Q: Financial Assets and Liabilities Measured at Fair Value<br>Instructions: See Glossary for definitions | Federal Reserve | FR Y-9C | FR Y-9C Instructions |
| Consolidated Reports of Condition and Income for A Bank With Domestic Offices Only -- Form FFIEC 041<br><br>Schedule RC: Trading Assets<br>Schedule RC-B: Securities<br>Schedule RC-D: Derivatives with positive/negative fair value<br>Schedule RC-G: Other Liabilities<br>Schedule RC-M: Memorandum<br>Schedule RC-Q: Financial Assets and Liabilities Measured at Fair Value<br>Instructions: See Glossary for definitions | FFIEC | FFIEC 041 | FFIEC 041 Instructions |

## 7.0    Accountability

Treasury

- Initiate transactions

Line of Business Accounting Department / TAG / Global Function

- Review and record offsetting and netting transactions
- Maintain transaction documentation and decision support



| ACCOUNTING POLICY 1030 *OFFSETTING AND NETTING* | | Division/Dept: Accounting | Page 14 of 17 |
|---|---|---|---|
| Supersedes: Version Dated November 1, 2009 | Distribution: All Ally | Issued by: Director of Accounting Policy | Approval Authority: Accounting Policy Committee |
| Effective Date: December 1, 2011 | Last Review Date: November 9, 2011 | Next Review Date: November 1, 2013 | Published Date: December 1, 2011 |

- Each line of business and/or department (e.g., Tax, Treasury Accounting, etc.) is responsible for preparing and reviewing data sent to the SEC and Regulatory Reporting groups to ensure accurate disclosure.

Corporate Accounting Policy

- Review and approve new significant, unusual, or complex offsetting and netting transactions

SEC Reporting

- The SEC Reporting group is responsible for ensuring that disclosures as defined in section 6.6 are completed in compliance with the FASB and SEC.

Corporate Regulatory Reporting

- The Regulatory Reporting group is responsible for ensuring that all relevant reports and related disclosures as defined in section 6.7 are completed in compliance with regulatory requirements.
- In gathering information for the regulatory reports, the Regulatory Reporting group will gather data from the lines of business or coordinate with the SEC Reporting group.

## 8.0   Information and Communication

Management will communicate to the Accounting Policy Committee information regarding major changes in corporate strategy, the regulatory environment, or financial conditions that may necessitate revision of this Policy and recommend changes.

This Policy and any updates to it are accessible on the Policy Library page of the Ally Pulse website.

https://exchange.gmacfs.com/web/controllers/accountingpolicies

This Policy will be communicated to all organization employees affected. Training for this Policy will be by notification only.  Should training be required, it will be implemented through the Ally Learning Center.

All new and/or amended polices will be distributed to the LoB CFOs and/or Controllers. Policy distribution is the responsibility of the LoB and should include (but not be limited to) key employees and departments involved in the activities supporting each respective policy (e.g. accounting, tax, internal audit, controls).  All issued policies will be made available on-line to all employees across Ally via Ally Pulse on the Ally Corporate Accounting Policy webpage.  A listing of all recent policy updates and accounting policies in process are separately identified on the website.



| **ACCOUNTING POLICY 1030** *OFFSETTING AND NETTING* | | **Division/Dept:** Accounting | **Page** 15 of 17 |
|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | **Published Date:** December 1, 2011 |

## 9.0 Policy Monitoring and Maintenance

Compliance with this Policy will be monitored through the processes and departments listed in Section 7.0. Evidence of non-compliance with this Policy must be reported to the appropriate LoB Controller (or similar role). Any such issues that are either not promptly corrected or are material to Ally must be reported to the Global Accounting Policy Department and SEC Reporting on a quarterly basis.

The updating of all Ally Accounting Policies is to be performed by the Global Accounting Policy Department. Any updates or revisions will be approved by the Accounting Policy Committee before issuance. Modifications will be made to this policy to incorporate changes that impact the provisions of this policy due to new or revised laws, regulations, standards or authoritative guidance. Questions or requested modification to this policy should be directed to the Global Accounting Policy Department.

## 10.0 Affected Areas and Exceptions

This Policy applies to all of Ally. There are no exceptions to this Policy.

## 11.0 Review Cycle

This Policy will be reviewed and approved by the Accounting Policy Committee every two years. Additional reviews may be triggered by major changes in corporate strategy, the regulatory environment, or financial market conditions.

## 12.0 Effective Date

This Policy is effective December 1, 2011 and supersedes all previous versions and/or other policies that cover the same subject matter.

## 13.0 Appendices

### Appendix I.    Related Policies Referenced

The policies listed below may be in varying stages of publication and implementation and are found in the Global Policy Library.

- Ally Accounting Policy 1040 – *Intercompany Accounting*
- Ally Accounting Policy 2280 – *Loans, Sales, and Securitizations*
- Ally Accounting Policy 2800 – *Derivatives and Hedge Accounting*

# ally

| **ACCOUNTING POLICY 1030** *OFFSETTING AND NETTING* | | **Division/Dept:** Accounting | **Page** 16 of 17 |
|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | **Published Date:** December 1, 2011 |

## Appendix II.    Revision History


Policy Revision History



| ACCOUNTING POLICY 1030 *OFFSETTING AND NETTING* | | **Division/Dept:** Accounting | **Page** 17 of 17 |
|---|---|---|---|
| **Supersedes:** Version Dated November 1, 2009 | **Distribution:** All Ally | **Issued by:** Director of Accounting Policy | **Approval Authority:** Accounting Policy Committee |
| **Effective Date:** December 1, 2011 | **Last Review Date:** November 9, 2011 | **Next Review Date:** November 1, 2013 | **Published Date:** December 1, 2011 |

**Appendix III.   Securities Lending Transaction Gross vs. Net Decision Tree**



**ALLY CONFIDENTIAL**        1030 Offsetting & Netting v2.0.doc