# **<u>Exhibit K</u>**

| | |
|---|---|
| **To:** | Anderson, Heather[Heather.Anderson@ally.com] |
| **From:** | Ruhlin, Joe |
| **Sent:** | Thur 11/18/2010 3:27:03 PM |
| **Subject:** | FW: UK advance Agreement (Revised draft)/RFC-ResCap advance agreement (first draft) |

RFCRESCAP INTERCOMPANY ADVANCE AGREEMENT.doc
REVISED UNCOMMITTED INTERCOMPANY ADVANCE AGREEMENT (4).doc
DVComparison_#1911388v1_DAL_ - Revised Uncommitted Intercompany Advance Agreem-
#1911388v2_DAL_ - Revised Uncommitted Intercompany Advance Agreem.doc

Since you're named on the RFC-ResCap line...

---

**From:** Porto, Frederico
**Sent:** Wednesday, November 17, 2010 5:21 PM
**To:** Fjellman, Scott - MN (Fourpoint LLC); Farley, Terry; Horner, Jill; Ruhlin, Joe; Steele, Andrew; McDonald, John; Switzer, Michelle; Gregory, Janet; Malloy, John - PA; Tweed, Mark; Brading, D
**Cc:** Hamzehpour, Tammy
**Subject:** UK advance Agreement (Revised draft)/RFC-ResCap advance agreement (first draft)

Attached is a revised version (clean and marked against the version previously distributed) of the uncommitted intercompany advance agreement between GMAC-RFC Holdings Limited and Residential Funding Company, LLC ("RFC") reflecting comments from Tax (interest rate, maturity/renewal) and Treasury (currency denomination, Maximum amount of the Line and notice section). I understand that GMAC Holdings will hold a board meeting on November 22, 2010 to approve the execution of the agreement.

Also attached is a first draft of the uncommitted intercompany advance agreement between RFC and Residential Capital, LLC. Should you have any question or comments re the attachments, please fell free to contact me. Best regards.

Frederico Porto

Ally Financial Inc.

**Ally** | Legal - Global Treasury/Capital Markets

2711 N. Haskell Avenue, Suite 900, Dallas, Texas, 75204

T + 214 874 6381 | M + 972 333 0099

frederico.porto@ally.com

*Please note my new e-mail address*

*CONFIDENTIALITY NOTICE:* The information contained in this e-mail communication and any attached documentation may be privileged, confidential or otherwise protected from disclosure and is intended only for the use of the designated recipient(s). It is not intended for transmission to, or receipt by, any unauthorized person. The use, distribution, transmittal or re-transmittal by an unintended recipient of this communication is strictly prohibited without our express approval in writing or by e-mail. If you are not the intended recipient of this e-mail, please delete it from your system without copying it and notify the above sender so that our e-mail address may be corrected. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work-product privilege.

CONFIDENTIAL

RCUCCJSN10745613

# UNCOMMITTED INTERCOMPANY ADVANCE AGREEMENT

THIS INTERCOMPANY ADVANCE AGREEMENT is made as of November [22], 2010 (the "Agreement") between Residential Funding Company, LLC, a Delaware limited liability company (the "Lender"), and Residential Capital, LLC, a Delaware limited liability company (the "Borrower").

WHEREAS, the Borrower has requested that the Lender make available to it an uncommitted, unsecured, line of credit in order to enable the Borrower to conduct business activities. The Lender is willing to make such line of credit available to the Borrower on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. <u>Advances</u>. Subject to the terms and conditions hereof (including, without limitation, the representations and warranties of the Borrower set forth herein) and prior to the Termination Date the Lender may, upon the Borrower's request therefore, make loans (each an "Advance"), to the Borrower on a business day in New York, United States of America ("Business Day") in U.S. dollars ("USD" or "US$"); provided, that the amount of any such Advances when added to the unpaid principal amount of all other Advances then outstanding shall not exceed US$175,000,000 (the "Maximum Amount"). The amount of each Advance will be agreed upon by the Borrower and the Lender on an on-going basis. The date of maturity of each Advance (each, a "Maturity Date") shall be specified in the relevant Borrower's Confirmation Letter provided that no Advance made under this Agreement may have a Maturity Date falling more than 360 days after the related Drawdown Date.

2. <u>Currency</u>. Except as specifically indicated in this Agreement, all calculations and reports shall be made in USD.

3. <u>Interest</u>. Each Advance will bear interest at rates agreed to by the Borrower and the Lender at the time of the borrowing and shall be contained in the relevant Borrower's Confirmation Letter. Interest shall be paid in arrears on the Maturity Date of each Advance (or the date of earlier prepayment hereunder). Interest shall accrue on an Actual / 365 day basis for each Advance.

4. <u>Draws</u>. Any request by the Borrower for an Advance shall be by telephone by the Borrower's president, chief financial officer, controller or treasurer (or a duly appointed agent thereof) to the Lenders' Funding Desk Operations followed by an e-mail confirmation in accordance with Section 11 herein, including the relevant banking or wire transfer instructions for receipt of such Advances, and must be given by the Borrower so as to be received by the Lender not later than 9 a.m. (New York time) one Business Day prior to the Business Day for which such Advance is requested (the

"Drawdown Date") or such other time as the Lender and the Borrower shall agree. Advances shall be evidenced by the Borrower's confirmation letter to the Lender in substantially the form of <u>Exhibit A</u> attached hereto ("Borrower's Confirmation Letter"). Each request by the Borrower for an Advance hereunder will be deemed to constitute a representation by the Borrower that the representations and warranties set forth in paragraph 7 below are true and correct as of the date of such request. The Borrower and the Lender agree that the amount of the requested Advance may be approved by the Lender at the Lender's discretion.

5.  Repayment, Payments and Withholdings.

    5.1    To the extent not prepaid hereunder, the principal amount of each Advance shall be repaid by the Borrower in full on its Maturity Date (as specified in the relevant Borrower's Confirmation Letter) unless, and to the extent, redrawn on the relevant Maturity Date by way of a further Advance (in which case the Borrower's obligation to repay the maturing Advance and the Lender's obligation to transfer funds to the Borrower in respect of such further Advance shall be discharged by way of set-off). All payments by the Borrower of principal or interest in respect of the Advances shall be made in the United Kingdom (or in a USD denominated account) and shall be made in the same currency in which such Advances shall have been made. For the avoidance of doubt, the Lender may also, at its sole discretion, extend the Maturity Date pursuant to the submission of an e-mail confirmation to the Borrower in accordance with Section 11 herein.

    5.2    The Borrower may, by giving not less the 1 (one) Business Day's prior notice to the Lender, prepay any Advance at any time prior to its Maturity Date in whole or in part.

    5.3    All payments shall be made in full without any deduction or withholding (whether in respect of set-off, counterclaim, duties, taxes, charges or otherwise) provided that if the Borrower is required by law to make any such deduction or withholding, then it shall:

    (a)    subject to Section 5.3(b) below, ensure that the deduction or withholding does not exceed the minimum amount legally required;

    (b)    subject to Section 5.5, pay to the Lender such additional amount as shall be required to ensure that the net amount received and retained by the Lender (free of any liability in respect of any deduction or withholding) will equal the full amount which the Lender would have received and retained had no such deduction or withholding been required to be made;

    (c)    pay to the relevant taxation or other authorities, as appropriate, the full amount of the deduction or withholding; and

    (d)    furnish to the Lender within 30 days of such payment an official receipt from such authorities for all amounts deducted or withheld if such is available, or otherwise a certificate of deduction or equivalent evidence

CONFIDENTIAL                                                                                                              RCUCCJSN10745615

Pg 6 of 18

of the relevant deduction or withholding.

5.4    To the extent that any deduction or withholding in respect of which the Borrower has paid an additional amount under Section 5.3 results in the Lender obtaining a relief in respect of tax (including any allowance, credit, deduction, exemption or set-off in relation to tax), the Lender shall repay to the Borrower an amount equal to such amount as the Lender determines has been saved by virtue of the relief (less the amount of all reasonable costs and expenses in obtaining such relief), provided that the amount of any such repayment shall not exceed the amount which will secure that the Lender is left in no worse an after-tax position by virtue of making such repayment than it would have been in had the deduction or withholding not been required. The Lender shall use its reasonable endeavors to obtain any such relief in respect of tax.

5.5    Upon reasonable demand made by the Borrower, the Lender will use its reasonable endeavours to supply to the Borrower, or to such taxation or other authority as the Borrower directs, any form or document that may be required or reasonably requested in order to allow the Borrower to make a payment under this Agreement without any deduction or withholding for or on account of tax, or with such deduction or withholding at a reduced rate (a "Payment Direction"). Provided that it has complied with its obligations as aforementioned under this clause, and in circumstances where the Lender reasonably considers that a Payment Direction will be obtained from the relevant taxation or other authority, the Lender may require the Borrower to defer payment of any amounts due under this Agreement pending receipt of such Payment Direction. Any amounts so deferred will bear interest at a rate of 1% over the applicable rate of interest on such Advance, and will become payable (together with interest) on the earliest to occur of (i) receipt of valid Payment Direction, (ii) notice from the Lender revoking its direction to the Borrower to defer payment, and (iii) the Termination Date.

5.6    Subject to Section 10, the Borrower shall repay the whole of the Advances then outstanding (together with all accrued interest, charges, fees, costs and expenses due under this Agreement) on the Termination Date.

6.    Bankruptcy Standstill.  The Lender agrees that it will not commence, or join with any other creditor of the Borrower in commencing, against the Borrower, any bankruptcy, insolvency, arrangement, reorganization, receivership, relief or similar proceeding under any bankruptcy or similar law or assignment for the benefit of creditors or any marshalling of assets and liabilities, that it will not look to property or assets of the Borrower in respect to the Advances or interest thereon, and that such obligations shall not constitute a claim against the Borrower in the event that the Borrower's assets are insufficient to pay in full such obligations.

7.    Borrower's Representations.  The Borrower hereby represents and warrants that:

(a)    The Borrower is a limited liability company validly existing and in good standing in the United States of America and has all requisite corporate power and authority to perform the obligations on its part arising hereunder; and

3

CONFIDENTIAL
RCUCCJSN10745616

(b) The execution, delivery and performance of this Agreement by the Borrower, and any borrowing hereunder or thereunder, has been duly and effectively authorized by all necessary corporate action, and this Agreement has been duly executed and delivered by the Borrower and is the valid and binding obligation of the Borrower.

8. Events of Default.

(a) Definition. An "Event of Default" shall occur if the Borrower shall default in the payment of interest and any other amounts when due or shall fail to pay the outstanding principal of any Advance within five days after its Maturity Date (unless, and to the extent, redrawn on the relevant Maturity Date by way of a further Advance).

(b) Consequences of Event of Default. Subject to Section 6 hereof, if an Event of Default shall occur and be continuing, the Lender may, at its option, (a) declare the Termination Date to have occurred, (b) reduce the Maximum Amount to zero and/or (c) by written notice to the Borrower, declare the unpaid balance on any outstanding Advance and any interest accrued thereon and all other liabilities of the Borrower to the Lender hereunder to be forthwith due and payable, and the same shall thereupon become and be immediately due and payable, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived.

9. Termination. The original term of this Agreement is for one year and shall commence on November [22], 2010. On the expiration of the original term (or any subsequent renewal term) the term of this Agreement will automatically renew for one year unless, at least one month prior to the end of the original one year term (or any subsequent renewal term, as appropriate), a written notice of termination as of the end of such original term (or such renewal term) is provided by either party to the other (the "Termination Date"). Notwithstanding any termination of this Agreement, the Borrower's obligation to pay interest and repay principal on the Maturity Date with respect to any outstanding Advance, and all related rights and obligations of the parties under the Agreement in respect to any such outstanding Advance, shall continue in full force and effect.

10. Governing Law. This Agreement and the Advances shall be deemed to be made under, and shall be construed and enforced in accordance with the laws of the State of New York.

11. Notices. Except as otherwise expressly provided herein, all notices or other communications hereunder will be in writing and will be delivered by electronic email, in person or by courier or by telecopy, to the parties at the following addresses:

To Lender:    Residential Funding Company, LLC
              8400 Normandale Lake Blvd, Suite [350]
              Minneapolis, Minnesota 55437

4

CONFIDENTIAL                                                            RCUCCJSN10745617

|  |  |
|---|---|
|  | United States of America<br>Attn: Joe Ruhlin<br>Email: Joseph.Ruhlin@ally.com |
| To Borrower: | Residential Capital, LLC<br>8400 Normandale Lake Blvd, Suite [350]<br>Minneapolis, Minnesota 55437<br>United States of America<br>Attn: Heather Anderson<br>Email Jill.Horner@gmacrescap.com<br>With a copy to: Jill.Horner@gmacrescap.com and |

michelle.switzer@ally.com

Or to such other address or to the attention of such other person as the recipient has previously designated to the sender in writing. All such notices and communications will be effective when delivered (if delivered personally or by courier) or received (in the case of telecopy).

12. Miscellaneous.

    (a) Modification and Amendment of Agreement. The provisions of this Agreement may be modified, amended or waived, but only by a written document signed by both parties or, in the case of a waiver, signed by the party against which such waiver is being enforced. No delay of the Lender in exercising any remedies hereunder or under applicable law shall be deemed to constitute waiver by the Lender of any of its rights hereunder or thereunder or preclude any further exercise thereof.

    (b) Paragraph Headings. Paragraph headings in this Agreement are for convenience only and shall not affect its interpretation.

    (c) Counterparts. This Agreement may be executed and delivered by each party hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original and both of which taken together shall constitute but one and the same agreement.

    (d) Assignment of Agreement. This Agreement shall not be assigned or transferred by the Lender to any person other than a direct or indirect subsidiary of the Lender or a direct or indirect subsidiary of the Lender's shareholder. This Agreement shall not be assigned or transferred by the Borrower.

5

**IN WITNESS WHEREOF**, this Agreement has been executed as of the date first written above.

**RESIDENTIAL FUNDING COMPANY, LLC**

By: _____
    Name:

    Title:

**RESIDENTIAL CAPITAL, LLC**

By: _____
    Name:

    Title:

CONFIDENTIAL

Exhibit A<br>
to Intercompany Agreement

# FORM OF BORROWER'S CONFIRMATION LETTER TO LENDER

_____, 2010

      To:      Residential Funding Company, LLC
               8400 Normandale Lake Blvd, Suite [350]
               Minneapolis, Minnesota 55437
               United States of America
               Attn: Treasury Operations - Joe Ruhlin
               Email: Joseph.Ruhlin@ally.com

This Confirmation Letter is governed by and subject to the provisions of the InterCompany Advance Agreement, dated _____, 2010, between Residential Funding Company, LLC and Residential Capital, LLC. Any terms used in this Confirmation Letter shall have the same meaning as defined therein.

Following are the details of the terms for an Advance as agreed between the Borrower and the Lender:

1. Principal Amount: [Currency and Amount]
2. Drawdown Date: [Date]
3. Maturity Date: [Date]
4. Interest Rate: [5.53] percent
6. Borrower's Bank and Account Number for Deposit of the Funds: [Name of Bank, Account Number]
7. Other:

Residential Funding Company, LLC

By:_____
Name:_____
Title:_____

Residential Capital, LLC

By:_____
Name:_____
Title:_____

# UNCOMMITTED INTERCOMPANY ADVANCE AGREEMENT

THIS INTERCOMPANY ADVANCE AGREEMENT is made as of November [22], 2010 (the "Agreement") between Residential Funding Company, LLC, a Delaware limited liability company (the "Borrower"), and GMAC-RFC Holdings Limited, a limited liability company registered in England and Wales (the "Lender").

WHEREAS, the Borrower has requested that the Lender make available to it an uncommitted, unsecured, line of credit in order to enable the Borrower to conduct business activities. The Lender is willing to make such line of credit available to the Borrower on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. <u>Advances</u>. Subject to the terms and conditions hereof (including, without limitation, the representations and warranties of the Borrower set forth herein) and prior to the Termination Date the Lender may, upon the Borrower's request therefore, make loans (each an "Advance"), to the Borrower on a business day in London, United Kingdom, ("London Business Day") in U.S. dollars ("USD" or "US$"); provided, that the amount of any such Advances when added to the unpaid principal amount of all other Advances then outstanding shall not exceed US$175,000,000 (the "Maximum Amount"). The amount of each Advance will be agreed upon by the Borrower and the Lender on an on-going basis. The date of maturity of each Advance (each, a "Maturity Date") shall be specified in the relevant Borrower's Confirmation Letter provided that no Advance made under this Agreement may have a Maturity Date falling more than 360 days after the related Drawdown Date.

2. <u>Currency</u>. Except as specifically indicated in this Agreement, all calculations and reports shall be made in USD.

3. <u>Interest</u>. Each Advance will bear interest at rates agreed to by the Borrower and the Lender at the time of the borrowing and shall be contained in the relevant Borrower's Confirmation Letter. Interest shall be paid in arrears on the Maturity Date of each Advance (or the date of earlier prepayment hereunder). Interest shall accrue on an Actual / 365 day basis for each Advance.

4. <u>Draws</u>. Any request by the Borrower for an Advance shall be by telephone by the Borrower's president, chief financial officer, controller or treasurer (or a duly appointed agent thereof) to the Lenders' Funding Desk Operations followed by an e-mail confirmation in accordance with Section 11 herein, including the relevant banking or wire transfer instructions for receipt of such Advances, and must be given by the Borrower so as to be received by the Lender not later than 9 a.m. (London time) one London Business Day prior to the London Business Day for which such Advance is

requested (the "Drawdown Date") or such other time as the Lender and the Borrower shall agree. Advances shall be evidenced by the Borrower's confirmation letter to the Lender in substantially the form of <u>Exhibit A</u> attached hereto ("Borrower's Confirmation Letter"). Each request by the Borrower for an Advance hereunder will be deemed to constitute a representation by the Borrower that the representations and warranties set forth in paragraph 7 below are true and correct as of the date of such request. The Borrower and the Lender agree that the amount of the requested Advance may be approved by the Lender at the Lender's discretion.

5.  <u>Repayment, Payments and Withholdings</u>.

    5.1    To the extent not prepaid hereunder, the principal amount of each Advance shall be repaid by the Borrower in full on its Maturity Date (as specified in the relevant Borrower's Confirmation Letter) unless, and to the extent, redrawn on the relevant Maturity Date by way of a further Advance (in which case the Borrower's obligation to repay the maturing Advance and the Lender's obligation to transfer funds to the Borrower in respect of such further Advance shall be discharged by way of set-off). All payments by the Borrower of principal or interest in respect of the Advances shall be made in the United Kingdom (or in a USD denominated account) and shall be made in the same currency in which such Advances shall have been made. For the avoidance of doubt, the Lender may also, at its sole discretion, extend the Maturity Date pursuant to the submission of an e-mail confirmation to the Borrower in accordance with Section 11 herein.

    5.2    The Borrower may, by giving not less the 1 (one) London Business Day's prior notice to the Lender, prepay any Advance at any time prior to its Maturity Date in whole or in part.

    5.3    All payments shall be made in full without any deduction or withholding (whether in respect of set-off, counterclaim, duties, taxes, charges or otherwise) provided that if the Borrower is required by law to make any such deduction or withholding, then it shall:

    (a)    subject to Section 5.3(b) below, ensure that the deduction or withholding does not exceed the minimum amount legally required;

    (b)    subject to Section 5.5, pay to the Lender such additional amount as shall be required to ensure that the net amount received and retained by the Lender (free of any liability in respect of any deduction or withholding) will equal the full amount which the Lender would have received and retained had no such deduction or withholding been required to be made;

    (c)    pay to the relevant taxation or other authorities, as appropriate, the full amount of the deduction or withholding; and

    (d)    furnish to the Lender within 30 days of such payment an official receipt from such authorities for all amounts deducted or withheld if such

2

is available, or otherwise a certificate of deduction or equivalent evidence of the relevant deduction or withholding.

5.4    To the extent that any deduction or withholding in respect of which the Borrower has paid an additional amount under Section 5.3 results in the Lender obtaining a relief in respect of tax (including any allowance, credit, deduction, exemption or set-off in relation to tax), the Lender shall repay to the Borrower an amount equal to such amount as the Lender determines has been saved by virtue of the relief (less the amount of all reasonable costs and expenses in obtaining such relief), provided that the amount of any such repayment shall not exceed the amount which will secure that the Lender is left in no worse an after-tax position by virtue of making such repayment than it would have been in had the deduction or withholding not been required. The Lender shall use its reasonable endeavors to obtain any such relief in respect of tax.

5.5    Upon reasonable demand made by the Borrower, the Lender will use its reasonable endeavours to supply to the Borrower, or to such taxation or other authority as the Borrower directs, any form or document that may be required or reasonably requested in order to allow the Borrower to make a payment under this Agreement without any deduction or withholding for or on account of tax, or with such deduction or withholding at a reduced rate (a "Payment Direction"). Provided that it has complied with its obligations as aforementioned under this clause, and in circumstances where the Lender reasonably considers that a Payment Direction will be obtained from the relevant taxation or other authority, the Lender may require the Borrower to defer payment of any amounts due under this Agreement pending receipt of such Payment Direction. Any amounts so deferred will bear interest at a rate of 1% over the applicable rate of interest on such Advance, and will become payable (together with interest) on the earliest to occur of (i) receipt of valid Payment Direction, (ii) notice from the Lender revoking its direction to the Borrower to defer payment, and (iii) the Termination Date.

5.6    Subject to Section 10, the Borrower shall repay the whole of the Advances then outstanding (together with all accrued interest, charges, fees, costs and expenses due under this Agreement) on the Termination Date.

6.   Bankruptcy Standstill. The Lender agrees that it will not commence, or join with any other creditor of the Borrower in commencing, against the Borrower, any bankruptcy, insolvency, arrangement, reorganization, receivership, relief or similar proceeding under any bankruptcy or similar law or assignment for the benefit of creditors or any marshalling of assets and liabilities, that it will not look to property or assets of the Borrower in respect to the Advances or interest thereon, and that such obligations shall not constitute a claim against the Borrower in the event that the Borrower's assets are insufficient to pay in full such obligations.

7.   Borrower's Representations. The Borrower hereby represents and warrants that:

(a)    The Borrower is a limited liability company validly existing and in good standing in the United States of America and has all requisite corporate power and authority to perform the obligations on its part arising hereunder; and

3

    (b)    The execution, delivery and performance of this Agreement by the Borrower, and any borrowing hereunder or thereunder, has been duly and effectively authorized by all necessary corporate action, and this Agreement has been duly executed and delivered by the Borrower and is the valid and binding obligation of the Borrower.

8.    <u>Events of Default</u>.

    (a)    <u>Definition</u>. An "Event of Default" shall occur if the Borrower shall default in the payment of interest and any other amounts when due or shall fail to pay the outstanding principal of any Advance within five days after its Maturity Date (unless, and to the extent, redrawn on the relevant Maturity Date by way of a further Advance).

    (b)    <u>Consequences of Event of Default</u>. Subject to Section 6 hereof, if an Event of Default shall occur and be continuing, the Lender may, at its option, (a) declare the Termination Date to have occurred, (b) reduce the Maximum Amount to zero and/or (c) by written notice to the Borrower, declare the unpaid balance on any outstanding Advance and any interest accrued thereon and all other liabilities of the Borrower to the Lender hereunder to be forthwith due and payable, and the same shall thereupon become and be immediately due and payable, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived.

9.    <u>Termination</u>. The original term of this Agreement is for one year and shall commence on November [22], 2010. On the expiration of the original term (or any subsequent renewal term) the term of this Agreement will automatically renew for one year unless, at least one month prior to the end of the original one year term (or any subsequent renewal term, as appropriate), a written notice of termination as of the end of such original term (or such renewal term) is provided by either party to the other (the "Termination Date"). Notwithstanding any termination of this Agreement, the Borrower's obligation to pay interest and repay principal on the Maturity Date with respect to any outstanding Advance, and all related rights and obligations of the parties under the Agreement in respect to any such outstanding Advance, shall continue in full force and effect.

10.    <u>Governing Law</u>. This Agreement and the Advances shall be deemed to be made under, and shall be construed and enforced in accordance with English law.

11.    <u>Notices</u>. Except as otherwise expressly provided herein, all notices or other communications hereunder will be in writing and will be delivered by electronic email, in person or by courier or by telecopy, to the parties at the following addresses:

    To Borrower:    Residential Funding Company, LLC
                        8400 Normandale Lake Blvd, Suite [350]
                        Minneapolis, Minnesota 55437
                        United States of America

CONFIDENTIAL

RCUCCJSN10745624

                                        Attn: Joe Ruhlin
                                        Email: Joseph.Ruhlin@ally.com
                                        With a copy to: michelle.switzer@ally.com

To Lender:        GMAC-RFC Holdings Limited
                     [No. 5 Arlington Sq
                     Downshire Way
                     Bracknell RG12 1 WA
                     United Kingdom ]
                     Attn: Jill Horner
                     Email: Jill.Horner@gmacrescap.com
                     With a copy to: janet.gregory@gmacfs.com and mark.tweed@gmacfs.com

Or to such other address or to the attention of such other person as the recipient has previously designated to the sender in writing. All such notices and communications will be effective when delivered (if delivered personally or by courier) or received (in the case of telecopy).

12.    <u>Miscellaneous</u>.

        (a)    <u>Modification and Amendment of Agreement</u>. The provisions of this Agreement may be modified, amended or waived, but only by a written document signed by both parties or, in the case of a waiver, signed by the party against which such waiver is being enforced. No delay of the Lender in exercising any remedies hereunder or under applicable law shall be deemed to constitute waiver by the Lender of any of its rights hereunder or thereunder or preclude any further exercise thereof.

        (b)    <u>Paragraph Headings</u>. Paragraph headings in this Agreement are for convenience only and shall not affect its interpretation.

        (c)    <u>Counterparts</u>. This Agreement may be executed and delivered by each party hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original and both of which taken together shall constitute but one and the same agreement.

        (d)    <u>Assignment of Agreement</u>. This Agreement shall not be assigned or transferred by the Lender to any person other than a direct or indirect subsidiary of the Lender or a direct or indirect subsidiary of the Lender's shareholder. This Agreement shall not be assigned or transferred by the Borrower.

CONFIDENTIAL        RCUCCJSN10745625

**IN WITNESS WHEREOF**, this Agreement has been executed as of the date first written above.

**RESIDENTIAL FUNDING COMPANY, LLC**

By: _____
    Name:

    Title:

**GMAC-RFC HOLDINGS LIMITED**

By: _____
    Name:

    Title:

CONFIDENTIAL
RCUCCJSN10745626

Exhibit A<br>
to Intercompany Agreement

## FORM OF BORROWER'S CONFIRMATION LETTER TO LENDER

_____, 2010

To:         GMAC-RFC Holdings Limited
            No. 5 Arlington Sq
            Downshire Way
            Bracknell RG12 1 WA
            United Kingdom
            Attn: Treasury Operations IBG
            Email: Jill.Horner@gmacrescap.com

This Confirmation Letter is governed by and subject to the provisions of the InterCompany Advance Agreement, dated _____, 2010, between Residential Funding Company, LLC and GMAC-RFC Holdings Limited. Any terms used in this Confirmation Letter shall have the same meaning as defined therein.

Following are the details of the terms for an Advance as agreed between the Borrower and the Lender:

1. Principal Amount:            [Currency and Amount]
2. Drawdown Date:               [Date]
3. Maturity Date:       [Date]
4. Interest Rate:               [5.53] percent
6. Borrower's Bank and
   Account Number for Deposit
   of the Funds:                [Name of Bank, Account Number]
7. Other:

Residential Funding Company, LLC

By:_____
Name:_____
Title:_____

GMAC-RFC Holdings Limited

By:_____
Name:_____
Title:_____

Withheld for:    Not Responsive

RCUCCJSN10745628