# Exhibit L

# PRICEWATERHOUSECOOPERS 🅁

# HomeComings Financial, LLC

Consolidated Financial Statements
for the Year Ended December 31, 2008

**CONFIDENTIAL**

**EXAM00122166**



PricewaterhouseCoopers LLP
300 Madison Avenue
New York NY 10017
Telephone (646) 471-3000
www.pwc.com

### Report of Independent Auditors

To the Board of Directors and Member of Homecomings Financial, LLC:

In our opinion, the accompanying consolidated balance sheets and the related consolidated statements of income, of changes in member's equity and of cash flows present fairly, in all material respects, the financial position of Homecomings Financial, LLC ("the Company") at December 31, 2008, and the results of their operations and their cash flows for the years then ended in conformity with accounting principles generally accepted in the United States of America. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits of these statements in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

As more fully discussed in footnote 1, the Company is a wholly-owned subsidiary of Residential Capital, LLC, and, as disclosed in the consolidated financial statements, the Company has extensive transactions and relationships with affiliates. The financial results of the Company are not necessarily indicative of those which would have occurred had the Company operated independently.

The accompanying consolidated financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 1 to the consolidated financial statements, the Company's liquidity and capital needs, combined with volatile conditions in the marketplace raise substantial doubt about its ability to continue as a going concern. Management's plans in regard to these matters are also described in Note 1. The consolidated financial statements do not include any adjustments that might result from the outcome of this uncertainty.

As discussed in Notes 2 and 8 to the consolidated financial statements, effective January 1, 2008 the Company has adopted SFAS No. 157, "Fair Value Measurements."

*PricewaterhouseCoopers LLP*

March 25, 2009

**HOMECOMINGS FINANCIAL, LLC**
**CONSOLIDATED BALANCE SHEET**
December 31, 2008
(Dollars in Thousands)

| | |
|---|---:|
| **ASSETS** | |
| Cash and cash equivalents | $1,217 |
| Affiliate receivables, net | 1,051,047 |
| Accounts receivable | 20,025 |
| Other assets | 4,326 |
| **TOTAL ASSETS** | **$1,076,615** |
| | |
| **LIABILITIES** | |
| Liability for assets sold with recourse | 64,813 |
| Other liabilities | 15,932 |
| **TOTAL LIABILITIES** | 80,745 |
| | |
| **MEMBER'S INTEREST** | |
| Member's interest | 129,103 |
| Retained earnings | 866,767 |
| **TOTAL MEMBER'S INTEREST** | 995,870 |
| | |
| **TOTAL LIABILITIES AND MEMBER'S INTEREST** | **$1,076,615** |

*The notes to the consolidated financial statements are an integral part of these statements.*

2

**HOMECOMINGS FINANCIAL, LLC**
**CONSOLIDATED STATEMENT OF OPERATIONS**
For the year ended December 31, 2008
(Dollars in Thousands)

| | |
|---|---:|
| REVENUE | |
| Interest income | $57,964 |
| Interest expense | 1,331 |
| Net interest income | 56,633 |
| | |
| Gain on sale of mortgage loans, net | 10,280 |
| Servicing fees | 134,139 |
| Loss on foreclosed real estate | (16,060) |
| Other income | 456 |
| Total net revenue | 185,448 |
| | |
| Provision for loan losses | 24,471 |
| | |
| EXPENSES | |
| Compensation and benefits | 30,605 |
| Professional fees | 3,786 |
| Data processing and telecommunications | 1,802 |
| Occupancy | 1,571 |
| Restructuring | 14,682 |
| Loan processing | 2,888 |
| Provision for assets sold with recourse | 51,758 |
| Management fees to affiliates | 87,143 |
| Other | 7,539 |
| Total expenses | 201,774 |
| | |
| Loss before income tax benefit | (40,797) |
| Income tax benefit | (184) |
| | |
| NET LOSS | ($40,613) |

*The notes to the consolidated financial statements are an integral part of these statements.*

3

EXAM00122169

**HOMECOMINGS FINANCIAL, LLC**
**CONSOLIDATED STATEMENT OF EQUITY**
For the year ended December 31, 2008
(Dollars in Thousands)

| | Member's Interest | Retained Earnings | Total Equity |
|---|---|---|---|
| BALANCE AT DECEMBER 31, 2007 | $129,103 | $905,013 | $1,034,116 |
| Cumulative effect of change in accounting principles as of | | | |
| January 1, 2008, net of tax: | | | |
| Adoption of Statement of Financial Accounting Standards No. 157 | | 2,367 | 2,367 |
| Comprehensive Income: | | | |
| Net loss | | (40,613) | (40,613) |
| BALANCE AT DECEMBER 31, 2008 | $129,103 | $866,767 | $995,870 |

*The notes to the consolidated financial statements are an integral part of these statements.*

4

EXAM00122170

# HOMECOMINGS FINANCIAL, LLC
## CONSOLIDATED STATEMENT OF CASH FLOWS

For the year ended December 31, 2008
(Dollars in Thousands)

| | |
|---|---:|
| **CASH FLOWS FROM OPERATING ACTIVITIES:** | |
| Net loss | ($40,613) |
| Reconciliation of net loss to net cash used in operating activities: | |
| Depreciation, amortization and market valuation | (6,296) |
| Provision for loan losses | 24,471 |
| Gain on sale of mortgage loans, net | (10,280) |
| Loss on sale of foreclosed assets | 21,411 |
| Originations and purchases of mortgage loans held for sale | (5,416,447) |
| Proceeds from sales and repayments of mortgage loans held for sale | 5,586,967 |
| Deferred income tax | (30) |
| Net change in: | |
| Affiliate receivables, net | (437,729) |
| Accounts receivable | 91,749 |
| Other assets | 9,172 |
| Servicing liabilities | (18,625) |
| Other liabilities | 7,098 |
| Net cash used in operating activities | (189,152) |
| | |
| **CASH FLOWS FROM INVESTING ACTIVITIES:** | |
| Originations and purchases of mortgage loans held for investment | (256,947) |
| Proceeds from sales and repayments of mortgage loans held for investment | 469,874 |
| Proceeds from sales of foreclosed assets | 63,999 |
| Other assets, net | 4,072 |
| Net cash provided by investing activities | 280,998 |
| | |
| **CASH FLOWS FROM FINANCING ACTIVITIES:** | |
| Proceeds from borrowings | 69,069 |
| Repayments of borrowings | (205,678) |
| Net cash used in financing activities | (136,609) |
| | |
| NET DECREASE IN CASH AND CASH EQUIVALENTS | (44,763) |
| CASH AND CASH EQUIVALENTS AT BEGINNING OF YEAR | 45,980 |
| | |
| CASH AND CASH EQUIVALENTS AT END OF YEAR | $1,217 |
| | |
| SUPPLEMENTAL DISCLOSURES: | |
| Interest paid | $957 |
| Taxes paid (received) | (445) |
| | |
| Non-cash transactions: | |
| Mortgage loans held for investment transferred to mortgage loans held for sale | 12,228 |
| Mortgage loans held for investment transferred to other assets | 19,769 |

*The notes to the consolidated financial statements are an integral part of these statements.*

5

CONFIDENTIAL
EXAM00122171

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

## 1. Organization and Operations

HomeComings Financial, LLC (the Company) is a wholly-owned subsidiary of Residential Funding Company, LLC (RFC or the Parent). RFC is a wholly-owned subsidiary of Residential Capital, LLC (ResCap), which is a wholly-owned subsidiary of GMAC Mortgage Group, LLC (GMACMG). GMACMG is a wholly-owned subsidiary of GMAC LLC (GMAC).

Prior to 2008, the Company had been engaged in the business of originating and acquiring residential mortgage loans for resale. These loans were typically sold to affiliated entities along with their servicing rights. The Company also acquired mortgage loans and other real estate at a discount for resolution through special servicing or sale to RFC. During 2008, the Company suspended mortgage loan production due to current market conditions and sold its remaining mortgage loans held for sale and investment to affiliates. The Company's primary business activity involves performing subservicing activities for substantially all of the primary mortgage servicing rights owned by its Parent.

Mortgage loans originated and acquired are referred to as prime conforming, prime non-conforming, nonprime and prime second-lien. Prime conforming mortgage loans are prime credit quality first-lien mortgage loans secured by single-family residences that meet or "conform" to the underwriting standards established by Fannie Mae or Freddie Mac for inclusion in their guaranteed mortgage securities programs. Prime non-conforming mortgage loans are prime credit quality first-lien mortgage loans secured by single-family residences that either (1) do not conform to the underwriting standards established by Fannie Mae or Freddie Mac, because they have original principal amounts exceeding Fannie Mae and Freddie Mac limits, which are commonly referred to as jumbo mortgage loans, or (2) have alternative documentation requirements and property or credit-related features (e.g., higher loan-to-value or debt-to-income ratios) but are otherwise considered prime credit quality due to other compensating factors. Nonprime mortgage loans are first-lien mortgage loans secured by single-family residences that are either (a) made to individuals with credit profiles that do not qualify for a prime loan; (b) have credit-related features that fall outside the parameters of traditional prime mortgage products; or (c) have performance characteristics that otherwise expose the Company to a comparatively higher risk of loss. Prime second-lien mortgage loans are open- and closed-end mortgage loans secured by a second or more junior lien on single-family residences, which include home equity mortgage loans. Mortgage loans are either originated by the Company or are purchased from mortgage brokers, correspondents, banks, or other institutions.

The Company and its parent and affiliates have been negatively impacted by the events and conditions in the mortgage banking industry and the broader economy. The market deterioration has led to fewer sources of, and significantly reduced levels of, liquidity available to finance the Company's operations. Most recently, the widely publicized credit defaults and/or acquisitions of large financial institutions in the marketplace has further restricted credit in the United States and international lending markets. As a result, during 2008 the Company has undertaken a significant restructuring initiative, including the suspension of all loan production activities, and on going primary focus on loan subservicing activities.

6

**EXAM00122172**

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

ResCap, RFC and the Company actively manage their liquidity and capital position and are continually working on initiatives to address any liquidity or capital needs. Although GMAC's continued actions through various funding and capital initiatives demonstrate support to ResCap, RFC and the Company, and GMAC's status as a bank holding company and completion of its debt exchange better positions GMAC to be capable of supporting ResCap, RFC and the Company, there are currently no commitments or assurances for future funding and/or capital support, except as otherwise provided in these financial statements. Consequently, there remains substantial doubt about ResCap, RFC's and the Company's ability to continue as a going concern. Should GMAC no longer continue to support the capital or liquidity needs of ResCap and/or ResCap elect not to support the liquidity needs of the Company or should the Company be unable to successfully execute other initiatives, it would have a material adverse effect on its business, results of operations and financial position.

7

CONFIDENTIAL

EXAM00122173

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

## 2. Critical Accounting Estimates and Significant Accounting Policies

### Basis of Presentation

The accompanying consolidated financial statements of the Company were prepared on a going concern basis, which contemplates the realization of assets and the satisfaction of liabilities in the normal course of business. The consolidated financial statements include the accounts of the Company after eliminating all significant intercompany balances and transactions. The accounting and reporting policies of the Company conform with accounting principles generally accepted in the United States of America ("GAAP").

### Use of Estimates and Assumptions

The preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and income and expenses during the reporting period. The Company's estimates and assumptions primarily arise from risks and uncertainties associated with prepayment estimates, interest rate volatility, and credit exposure. In developing the estimates and assumptions, management uses all available evidence. Because of uncertainties associated with estimating the amounts, timing and likelihood of possible outcomes, actual results could differ from the Company's estimates.

*Allowance for Loan Losses*
The allowance for loan losses is management's estimate of incurred losses inherent in the mortgage loans held for investment portfolio. Additions to the allowance for loan losses are reflected within the provision for loan losses on the statement of income. The allowance for loan losses consists of a component for individual loan impairment recognized and measured in accordance with Statement of Financial Accounting Standards ("SFAS") No. 114, *Accounting by Creditors for Impairment of a Loan,* and one or more components of collective loan impairment recognized in accordance with SFAS No. 5, *Accounting for Contingencies.* A loan is considered impaired when, based on current information and events, it is probable that the Company will be unable to collect all amounts due according to the contractual terms of the loan agreement.

Loans outside the scope of SFAS No. 114 and loans that are individually evaluated and determined not to be impaired under SFAS No. 114 are grouped into pools, based on similar risk characteristics, and evaluated for impairment in accordance with SFAS No. 5. Impairment of loans determined to be impaired under SFAS No. 114 is measured based on the present value of expected future cash flows discounted at the loan's effective interest rate, an observable market price, or the fair value of the collateral, whichever is determined to be the most appropriate. Included in the impairment measurement are estimated costs to sell or realize the value of the collateral on a discounted basis.

8

CONFIDENTIAL

EXAM00122174

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

Management's judgment as to the adequacy of the allowance is a result of the Company's ongoing, consistently applied methodology taking into consideration historical loss experience, changes in the size or characteristics of the portfolio, economic conditions and other relevant factors. The uncollectible portion of loans is charged off against the allowance when they are deemed uncollectible. Recoveries of previously charged-off amounts increase the allowance for loan losses. The adequacy of the allowance for loan losses is highly dependent upon management's estimate of variables affecting valuation of collateral, evaluation of performance and status, and the amounts and timing of future cash flows expected to be received on impaired loans. Such estimates, appraisals, evaluations, and cash flows may be subject to frequent adjustments due to changing economic conditions of borrowers or the value of the underlying collateral. These estimates are reviewed periodically and adjustments, if necessary, are recorded in the provision for loan losses in the periods in which they become known.

**Significant Accounting Policies**

*Cash and Cash Equivalents*
Cash and cash equivalents include cash on hand and short-term investments with original maturities of 90 days or less. Cash and cash equivalents that have restrictions as to the Company's ability to withdraw the funds are included in other assets in the consolidated balance sheet.

*Mortgage Loans Held for Sale*
Mortgage loans held for sale are carried at the lower of cost or estimated fair value on an aggregate basis. Fair value is based on contractually established commitments from investors or current investor yield requirements. Mortgage loans held for sale are placed on nonaccrual status when contractually delinquent for 60 days. Interest income accrued at the date a loan is placed on nonaccrual status is reversed and subsequently realized only to the extent it is received in cash. Loan origination fees, as well as discount points and incremental direct origination costs, are initially recorded as an adjustment of the cost of the loan and are reflected in gain on sale of mortgage loans when the loan is sold.

*Mortgage Loans Held for Investment*
The carrying value of mortgage loans held for investment includes the principal amount outstanding, purchase premium and discount, net deferred origination fees and allowance for loan losses. The Company's classification of its mortgage loans between loans held for sale and loans held for investment is based on management's assessment of its intent and ability to hold loans for the foreseeable future or until maturity. Management's intent and ability with respect to certain mortgage loans may change from time to time depending on a number of factors, including economic conditions. Net deferred origination fees, which include origination fees reduced by origination costs, are amortized as a yield adjustment over the estimated remaining life of the related loan. Mortgage loans held for investment are placed on nonaccrual status when contractually delinquent for 60 days. Interest income accrued at the date a loan is placed on nonaccrual status is reversed and subsequently realized only to the extent it is received in cash. Loans are restored to accrual status only when contractually current and the collection of future payments is reasonably assured.

9

EXAM00122175

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

*Affiliate Receivables*
Affiliate receivables are comprised of amounts due for servicing advances transferred at carrying value, fees charged for subservicing activities, and mortgage loans sold to affiliates of the Company. These receivables are recorded at their net realizable value.

*Accounts Receivable*
Accounts receivable are recorded at net realizable value and include subservicing related receivables.

*Foreclosed Assets*
Foreclosed assets represents properties acquired through foreclosure and are carried at the lower of cost or fair value less estimated selling costs. Cost associated with foreclosure proceedings are expensed as incurred. Gains and losses on the sale of foreclosed assets are reported in loss on foreclosed real estate.

*Property and Equipment*
Property and equipment, stated at cost net of accumulated depreciation and amortization, are reported in other assets. Depreciation is computed on the straight-line basis over the estimated useful lives of the assets, which generally ranges from two to ten years. Direct software development costs associated with the design, coding and testing of internally developed software are capitalized. Capitalized software is generally amortized on a straight-line basis over its useful life for a period not to exceed three years. Capitalized software that is not expected to have substantive service potential or development costs that significantly exceed the amount originally expected are considered impaired and written down to fair value. Software expenditures that are considered general, administrative or of a maintenance nature are expensed as incurred.

*Liability for Assets Sold with Recourse*
In connection with the sale of certain mortgage loans, the Company estimates a liability for representations and warranties made in the normal course of the sales process for assets sold with recourse. The Company provides for such exposures at the time the loans are sold based upon management's estimate of losses. The liability is adjusted through provision for assets sold with recourse to reflect changes in the anticipated liability. Management believes that the liability for assets sold with recourse is adequate to provide for probable losses related to loans sold with limited recourse obligations.

10

EXAM00122176

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

*Derivative Instruments and Hedging Activities*

All derivative financial instruments, whether designated for hedging relationships or not, are recorded on the consolidated balance sheet as assets or liabilities and carried at fair value. At the inception of the derivative contract, the Company designates each qualifying derivative financial instrument as a hedge of the fair value of a recognized asset or liability (fair value hedge) or a hedge of the variability of cash flows to be received or paid related to a recognized asset or liability (cash flow hedge). The Company also uses derivative financial instruments that do not qualify as hedges under GAAP. Changes in the fair value of derivative financial instruments that are designated and qualify as fair value hedges, along with the gain or loss on the hedged asset or liability attributable to the hedged risk, are recorded in the current period earnings. For qualifying cash flow hedges, the effective portion of the change in the fair value of the derivative financial instruments is recorded in other comprehensive income, a component of stockholder's equity, and recognized in the income statement when the hedged cash flows affect earnings. Changes in the fair value of derivative financial instruments held for risk management purposes that do not meet the criteria to qualify as hedges under GAAP are reported in current period earnings. The ineffective portions of fair value and cash flow hedges are immediately recognized in earnings.

The Company formally documents all relationships between hedging instruments and hedged items, as well as its risk management objectives for undertaking various hedge transactions. This process includes linking all derivatives that are designated as fair value or cash flow hedges to specific assets and liabilities on the consolidated balance sheet, to specific firm commitments or the forecasted transactions. Both at the hedge's inception and on an ongoing basis, the Company formally assesses whether the derivatives that are used in hedging transactions are highly effective in offsetting changes in fair values or cash flows of hedged items. The Company did not hold any derivative instruments designated as fair value or cash flow hedges during 2008.

11

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

---

*Loan commitments*

The Company enters into commitments to make loans whereby the interest rate on the loan is set prior to funding (i.e. interest rate lock commitments or "IRLCs"). IRLCs for loans to be originated or purchased for sale, and for loans to be purchased and held for investment, are derivative financial instruments carried at fair value in accordance with SFAS No. 133, *Accounting for Derivative Instruments and Hedging Activities,* and Staff Accounting Bulletin ("SAB") No. 105, *Application of Accounting Principles to Loan Commitments.* In November 2007, the SEC issued Staff Accounting Bulletin No. 109, *Written Loan Commitments Recorded at Fair Value Through Earnings.* SAB No. 109 superseded previous SEC guidance on written loan commitments and now requires expected net future cash flows related to the associated servicing of the loan be included in the measurement of all written loan commitments that are accounted for at fair value through earnings. Effective January 1, 2008, the expected net future cash flows related to the associated servicing of the loan are accounted for through earnings for all written loan commitments accounted at fair value. Servicing assets are recognized as distinct assets once they are contractually separated from the underlying loan by sale or securitization. IRLCs are recorded at fair value with changes in value recognized in current period earnings. The determination of the change in fair value includes an estimate of the future mortgage servicing rights that will arise when the loan is sold or securitized. Additionally, Emerging Issues Task Force ("EITF") issue No. 02-3, *Issues Involved in Accounting for Derivative Contracts Held for Trading Purposes and Contracts Involved in Energy Trading and Risk Management Activities,* was rescinded by SFAS No. 157, *Fair Value Measurements*; accordingly, the Company now recognizes day-one gains on derivative IRLCs when applicable.

*Income Taxes*

The Company, and its Parent, are pass-through entities for U.S. tax purposes and therefore, they do not provide for federal income tax. The Company is included in the consolidated GMAC unitary and/or consolidated state income tax returns. The Company provides for its unitary and/or consolidated filings pursuant to a tax sharing arrangement with GMAC. GMAC will periodically settle these income tax liabilities or receivables. Any separate state tax filing liabilities are accrued on a stand-alone basis.

On January 1, 2007, the Company adopted Financial Accounting Standards Board ("FASB") Interpretation No. 48, *Accounting for Uncertainty in Income Taxes*, which supplements SFAS No. 109, *Accounting for Income Taxes*, by defining the confidence level that a tax position must meet in order to be recognized in the financial statements. The Interpretation requires that the tax effects of a position recognized only if it is more-likely-than-not to be sustained solely on its technical merits as of the reporting date. The more-likely-than-not threshold represents a positive assertion by management that a company is entitled to the economic benefits of a tax position. If a tax position is not considered more-likely-than-not to be sustained based solely on its technical merits, no benefits of the position are to be recognized.

CONFIDENTIAL                                                              EXAM00122178

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

Income taxes are accounted for using the asset and liability method. Under this method, deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax basis. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in income in the period that includes the enactment date. Deferred tax assets are recognized subject to management's judgment that realization is more-likely-than-not.

In November 2006, GMAC elected to be treated as a multi-member LLC and to be taxed as a partnership for federal income tax purposes. At the same time, the Company was converted to an LLC for tax purposes. Prior to the election, the Company was included in the consolidated U.S. federal income tax return and several unitary and/or consolidated state returns of GM. The Company provided for its unitary and/or consolidated state filings pursuant to a tax sharing arrangement with GM. Periodically, GM settled these income tax liabilities or receivables. Any separate state tax filing liabilities were accrued on a stand-alone basis.

**Recently Issued Accounting Standards**

*Statement of Financial Accounting Standards No. 141(R)* — In December 2007, the FASB issued SFAS No. 141(R), *Business Combinations,* which replaces SFAS No. 141, *Business Combinations.* SFAS No. 141(R) establishes principles and requirements for how an acquiring company (1) recognizes and measures in its financial statements the identifiable assets acquired, the liabilities assumed, and any noncontrolling interest in the acquiree, (2) recognizes and measures the goodwill acquired in the business combination or a gain from a bargain purchase, and (3) determines what information to disclose to enable users of the financial statements to evaluate the nature and financial effects of the business combination. SFAS No. 141(R) is effective for business combinations occurring on or after December 15, 2008. SFAS No. 141(R), effective for the Company on January 1, 2009, applies to all transactions or other events in which the Company obtains control in one or more businesses. Management will assess each transaction on a case-by-case basis as they occur.

*Statement of Financial Accounting Standards No. 160* — In December 2007, the FASB also issued SFAS No. 160, *Noncontrolling Interests in Consolidated Financial Statements — an amendment of ARB No. 51,* which requires the ownership interests in subsidiaries held by parties other than the parent be clearly identified, labeled, and presented in the consolidated statement of financial position within equity, but separate from the parent's equity. It also requires the amount of consolidated net income attributable to the parent and to the noncontrolling interest be clearly identified and presented on the face of the consolidated statement of income. SFAS No. 160 is effective for fiscal years, and interim periods within those fiscal years, beginning on or after December 15, 2008, and early adoption is prohibited. SFAS No. 160 shall be applied prospectively as of the beginning of the fiscal year in which it is initially applied, except for the presentation and disclosure requirements. Management will assess each transaction on a case-by-case basis as they occur.

13

CONFIDENTIAL                                                  EXAM00122179

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

*FASB Staff Position ("FSP") SFAS No. 140-3* — In February 2008, the FASB issued FSP SFAS No. 140-3, *Accounting for Transfers of Financial Assets and Repurchase Financing Transactions*, which provides a consistent framework for the evaluation of a transfer of a financial asset and subsequent repurchase agreement entered into with the same counterparty. FSP SFAS No. 140-3 provides guidelines that must be met in order for an initial transfer and subsequent repurchase agreement to not be considered linked for evaluation. If the transactions do not meet the specified criteria, they are required to be accounted for as one transaction. This FSP is effective for fiscal years beginning after November 15, 2008, and shall be applied prospectively to initial transfers and repurchase financings for which the initial transfer is executed on or after adoption. The Company believes the impact of adopting FSP SFAS No. 140-3 will not have a material effect on the consolidated financial statements.

*Statement of Financial Accounting Standards No. 161* — In March 2008, the FASB issued SFAS No. 161, *Disclosures about Derivative Instruments and Hedging Activities*. SFAS No. 161 requires specific disclosures regarding the location and amounts of derivative instruments in the financial statements; how derivative instruments and related hedged items are accounted for; and how derivative instruments and related hedged items affect the financial position, financial performance, and cash flows. SFAS No. 161 is effective for financial statements issued for fiscal years and interim periods beginning after November 15, 2008; however, early application is permitted. Because SFAS No. 161 impacts the disclosure and not the accounting treatment for derivative instruments and related hedged items, the adoption of SFAS No. 161 will not have an impact on the Company's consolidated financial statements.

*EITF Issue No. 08-5* — In September 2008, the EITF issued EITF No. 08-5, *Issuer's Accounting for Liabilities at Fair Value with a Third-Party Credit Enhancement*. EITF No. 08-5 states that the issuer of debt with a third-party credit enhancement that is inseparable from the debt instrument shall not include the effect of the credit enhancement in the fair value measurement of the liability. This Issue is effective on a prospective basis for periods beginning after December 15, 2008. The impact of adopting Issue No. 08-5 is not expected to have a material impact on the consolidated financial statements.

*FSP SFAS 132(R)-1* — In December 2008, the FASB issued FSP SFAS 132(R)-1, *Employers' Disclosures about Postretirement Benefit Plan Assets*, to provide guidance on an employer's disclosure about plan assets of a defined benefit pension or other postretirement plan. This FSP provides objectives for the disclosure about the Company's (1) investment policies and strategies, (2) categories of plan assets, (3) fair value measurements, and (4) significant concentrations of risk. This FSP is effective for fiscal years ending after December 15, 2009. Upon initial application, the provisions of this FSP are not required for earlier periods that are presented for comparative purposes. Earlier adoption is permitted. Because this impacts the disclosure and not the accounting treatment for benefit and other postretirement plans, adoption of this FSP will not have a material effect on the Company's consolidated financial statements.

14

CONFIDENTIAL

EXAM00122180

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

## Recently Adopted Accounting Standards

*Statement of Financial Accounting Standards No. 157* — On January 1, 2008, the Company adopted SFAS No. 157, *Fair Value Measurements*. SFAS No. 157 provides a definition of fair value, establishes a framework for measuring fair value under GAAP, and requires expanded disclosures about fair value measurements. The standard applies when GAAP requires or allows assets or liabilities to be measured at fair value and, therefore, does not expand the use of fair value in any new circumstance. The Company adopted SFAS No. 157 on a prospective basis. SFAS No. 157 required retrospective adoption of the revision of EITF issue No. 02-3, *Issues Involved in Accounting for Derivative Contracts Held for Trading Purposes and Contracts Involved in Energy Trading and Risk Management Activities* and certain other guidance. The impact of adopting SFAS No. 157 and the revision of EITF No. 02-3 on January 1, 2008, was an increase to beginning retained earnings through a cumulative effect of a change in accounting principle of approximately $2,367, related to the recognition of day-one gains on certain residential loan commitments. Refer to Note 8 - Fair Value - for further detail.

*Statement of Financial Accounting Standards No. 159* — On January 1, 2008, the Company adopted SFAS No. 159, *The Fair Value Option for Financial Assets and Financial Liabilities*. SFAS No. 159 permits entities to choose to measure at fair value many financial instruments and certain other items that are not currently required to be measured at fair value. Subsequent changes in fair value for designated items are required to be reported in earnings in the current period. SFAS No. 159 also establishes presentation and disclosure requirements for similar types of assets and liabilities measured at fair value. The Company adopted SFAS No. 159 on January 1, 2008 without impact to its financial condition or results of operation.

15

EXAM00122181

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

*SEC Staff Accounting Bulletin No. 109* — On January 1, 2008, the Company adopted Staff Accounting Bulletin ("SAB") No. 109, *Written Loan Commitments Recorded at Fair Value Through Earnings*. SAB No. 109 provides the SEC staff's views on the accounting for written loan commitments recorded at fair value under GAAP, and revises and rescinds portions of SAB No. 105, *Application of Accounting Principles to Loan Commitments*. SAB No. 105 provided the views of the SEC staff regarding derivative loan commitments that are accounted for at fair value through earnings pursuant to SFAS No. 133. SAB No. 105 states that in measuring the fair value of a derivative loan commitment, the staff believed it would be inappropriate to incorporate the expected net future cash flows related to the associated servicing of the loan. SAB No. 109 supersedes SAB No. 105 and expresses the current view of the SEC staff that, consistent with the guidance in SFAS No. 156, *Accounting for Servicing of Financial Assets*, and SFAS No. 159, the expected net future cash flows related to the associated servicing of the loan should be included in the measurement of all written loan commitments that are accounted for at fair value through earnings. SAB No. 105 also indicated that the SEC staff believed that internally developed intangible assets (such as customer relationship intangible assets) should not be recorded as part of the fair value of a derivative loan commitment. SAB No. 109 retains that SEC staff view and broadens its application to all written loan commitments that are accounted for at fair value through earnings. The adoption of SAB No. 109 did not have a material impact on the Company's consolidated financial statements.

*FSP FIN No. 39-1* — On January 1, 2008, the Company adopted FSP Interpretation No. ("FIN") 39-1, *Amendment of FASB Interpretation No. 39*. FSP FIN No. 39-1 defines "right of setoff" and specifies what conditions must be met for a derivative contract to qualify for this right of setoff. It also addresses the applicability of a right of setoff to derivative instruments and clarifies the circumstances in which it is appropriate to offset amounts recognized for those instruments in the statement of financial position. In addition, this FSP requires an entity to make an election related to the offsetting of fair value amounts recognized for multiple derivative instruments executed with the same counterparty under a master netting arrangement and fair value amounts recognized for the right to reclaim cash collateral (a receivable) or the obligation to return cash collateral (a payable) arising from the same master netting arrangement as the derivative instruments without regard to the company's intent to settle the transactions on a net basis. The adoption of FSP FIN No. 39-1 did not have a material impact on the Company's consolidated financial statements.

*Statement of Financial Accounting Standards No. 162* — In May 2008, the FASB issued SFAS No. 162, *The Hierarchy of Generally Accepted Accounting Principles*. SFAS No. 162 identifies a consistent framework, or hierarchy, for selecting accounting principles to be used in preparing financial statements that are presented in conformity with GAAP for nongovernmental entities (the "Hierarchy"). The Hierarchy within SFAS No. 162 is consistent with that previously defined in the AICPA Statement on Auditing Standards ("SAS") No. 69, *The Meaning of Present Fairly in Conformity With Generally Accepted Accounting Principles*. SFAS No. 162 was effective as of November 2008, 60 days following the SEC approval of the Public Company Accounting Oversight Board amendments to AU Section 411, *The Meaning of Present Fairly in Conformity With Generally Accepted Accounting Principles* approved in September 2008. The adoption of SFAS No. 162 did not have a material effect on the consolidated financial statements because the Company has utilized the guidance within SAS No. 69.

16

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

*FSP SFAS No. 133-1 and FIN No. 45-4* — In September 2008, the FASB issued FSP SFAS No. 133-1 and FIN No. 45-4, *Disclosures about Credit Derivatives and Certain Guarantees: An Amendment of FASB Statement No. 133 and FASB Interpretation No. 45; and Clarification of the Effective Date of FASB Statement No. 161.* FSP SFAS No. 133-1 and FIN No. 45-4 amends FASB Statement No. 133, *Accounting for Derivative Instruments and Hedging Activities*, to require disclosures by sellers of credit derivatives, including credit derivatives embedded in a hybrid instrument. This FSP also amends FASB Interpretation No. 45, *Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others*, to require an additional disclosure about the current status of the payment/performance risk of a guarantee. Further, this FSP clarifies the Board's intent about the effective date of SFAS No. 161, *Disclosures about Derivative Instruments and Hedging*. FSP SFAS No. 133-1 and FIN No. 45-4 are effective for annual and interim reporting periods ending after November 15, 2008. In addition, this FSP encourages that the amendments be applied in periods earlier than the effective date to facilitate comparisons at initial adoption. Because this impacts the disclosure and not the accounting treatment for credit derivative instruments and other guarantees, the adoption of this FSP will not have an impact on the consolidated financial statements.

*FSP SFAS 157-3* — In October 2008, the FASB directed the FASB Staff to issue FSP SFAS No. 157-3, *Determining Fair Value of a Financial Asset in a Market that is Not Active*. This FSP applies to financial assets within the scope of all accounting pronouncements that require or permit fair value measurements in accordance with SFAS No. 157. This FSP clarifies the application of SFAS No. 157 in a market that is not active and provides key considerations in determining the fair value of a financial asset when the market for that financial asset is not active. This FSP is effective upon issuance, including prior periods for which financial statements have not been issued. Revisions resulting from a change in the valuation technique or its application shall be accounted for as a change in accounting estimate (SFAS No. 154, *Accounting Changes and Error Corrections*, paragraph 19). The disclosure provisions of SFAS No. 154 for a change in accounting estimate are not required for revisions resulting from a change in valuation technique or its application. The impact of adopting FSP SFAS No. 157-3 did not have a material impact on the Company's consolidated financial statements.

17

EXAM00122183

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

---

*FSP SFAS No. 140-4 and FIN No. 46(R)-8* — In December 2008, the FASB directed the FASB Staff to issue FSP SFAS No. 140-4 and FIN No. 46(R)-8, *Disclosures about Transfers of Financial Assets and Interests in Variable Interest Entities: An amendment to FASB Statement No. 140, Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities,* to require public entities to provide additional disclosures about transfers of financial assets. It also amends *FASB Interpretation No. 46, Consolidation of Variable Interest Entities,* to require public enterprises to provide additional disclosures about their involvement with variable interest entities. Additionally, this FSP requires certain disclosures to be provided by a public enterprise that is a sponsor that has a variable interest in a variable interest entity and an enterprise that holds a significant variable interest in a qualifying special-purpose entity but was not the transferor of financial assets to the qualifying special-purpose entity. The disclosures are intended to provide greater transparency to financial statement users about a transferor's continuing involvement with transferred financial assets and enterprise's involvement with variable interest entities. FSP SFAS No. 140-4 and FIN No. 46(R)-8 are effective for the first reporting period ending after December 15, 2008. Because this impacts the disclosure and not the accounting treatment for transfers of financial assets, extinguishments of liabilities and involvements with variable interest entities and other guarantees, the adoption of this FSP did not have a material impact on the consolidated financial statements.

*FSP EITF 99-20-1* — In January 2009, the FASB issued FSP EITF 99-20-1, *Amendments to the Impairment and Interest Income Measurement Guidance of EITF Issue No. 99-20,* to achieve a more consistent determination of whether an other-than-temporary impairment has occurred for debt securities classified as available-for-sale or held-to-maturity. This FSP amends Issue 99-20 to align the impairment guidance for beneficial interests with that of other investments analyzed for impairment under Statement of Financial Accounting Standards No. 115, *Accounting for Certain Investment is Debt and Equity Securities.* This FSP shall be effective for interim and annual reporting periods ending after December 15, 2008, and shall be applied prospectively. The adoption of this FSP did not have a material impact on the Company's consolidated financial statements.

18

EXAM00122184

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

---

### 3. Allowance for Loan Losses

The following is a summary of the activity in the allowance for loan losses for mortgage loans held for investment:

| | | |
|---|---|---:|
| Balance at December 31, 2007 | $ | 8,748 |
| Provision for loan losses | | 24,471 |
| Net charge-offs | | (33,219) |
| Balance at December 31, 2008 | $ | - |

### 4. Liability for Assets Sold with Recourse

The following is a summary of the activity in the liability for assets sold with recourse:

| | | |
|---|---|---:|
| Balance at December 31, 2007 | $ | 54,748 |
| Provision for assets sold with recourse | | 51,758 |
| Net charge-offs | | (41,693) |
| Balance at December 31, 2008 | $ | 64,813 |

Certain mortgage loans are sold under agreements that contain limited recourse provisions. These recourse provisions consist of customary mark representations and warranty provisions. Generally, representations and warranty provisions require the Company to repurchase loans to the extent it is subsequently determined that the loans were ineligible or were otherwise defective at the time of sale.

### 5. Other Assets

Other assets consisted of the following:

| | | |
|---|---|---:|
| Property and equipment, net | $ | 3,814 |
| Prepaid expenses | | 60 |
| Foreclosed assets | | 357 |
| Other | | 95 |
| Total other assets | $ | 4,326 |

Depreciation and amortization expense was $2,064 for the year ended December 31, 2008.

19

**CONFIDENTIAL**                                                                    **EXAM00122185**

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

## 6. Income Taxes

In November 2006, GMAC elected to be treated as a multi-member LLC to be taxed as a partnership for federal income tax purposes. At the same time, the Company was converted to an LLC for tax purposes. Subsequent to the tax conversion date, income taxes are accrued at the member level with the exception of certain local jurisdictions that tax LLCs as entities, despite their pass-thru status.

The significant components of income tax expense were as follows:

| | | |
|---|---|---:|
| Current income tax benefit: | | |
| U.S. federal | $ | - |
| State and local | | (155) |
| | $ | (155) |
| Deferred income tax benefit: | | |
| U.S. federal | $ | - |
| State and local | | (29) |
| | $ | (29) |
| Total income tax benefit | $ | (184) |

The tax effect of temporary differences that give rise to deferred tax assets and liabilities include the following:

| | | |
|---|---|---:|
| Deferred tax assets: | | |
| Allowance for loan losses | $ | 205 |
| Loss carryforwards | | 4 |
| Accruals not currently deductible | | 34 |
| Depreciation | | 29 |
| Gross deferred tax asset | $ | 272 |
| Valuation allowance | | (207) |
| Net deferred tax asset | $ | 65 |
| | | |
| Deferred tax liabilities: | | |
| Expense deductible when paid | $ | 65 |
| Total deferred tax liabilities | $ | 65 |
| Net deferred tax asset (liability) | $ | - |

At December 31, 2008, a valuation allowance has been established against the domestic net deferred tax asset. A valuation allowance has been established because the Company has determined that it is more-likely-than-not that all such tax assets will not be realized.

At December 31, 2008 the Company has a state net operating loss carryforward of $1,378. The net operating loss carryforward relates to certain states that impose an income tax on limited liability companies. The state net operating loss carryforward expires in the years 2008 - 2028.

20

CONFIDENTIAL

EXAM00122186

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

The Company adopted the provisions of FASB Interpretation No. 48, *Accounting for Uncertainty in Income Taxes*, on January 1, 2007. As of the adoption date, the Company had no uncertain tax positions. Consequently, the adoption of the interpretation had no impact on retained earnings. As of December 31, 2008, the Company had no uncertain tax positions.

The following table is a reconciliation of the statutory federal income tax benefit and rate to the effective income tax benefit and rate:

|  | Amount | Percent |
|---|---|---|
| Tax at statutory rate | $ (14,209) | 35.00 % |
| State income taxes | (391) | 0.96 |
| Valuation allowance | 207 | (0.51) |
| LLC losses not subject to federal tax | 14,209 | (35.00) |
| Total income tax benefit | $ (184) | 0.45 % |

## 7. Employee Benefit Plans

The Company participates in GMAC Mortgage Group, LLC's (the Group) defined contribution savings plan for domestic employees meeting certain eligibility requirements. Employees may contribute a percentage of base compensation to the plan, not to exceed annual limits. The Company matches employee contributions up to 6% each year, with certain limitations. Funds contributed and earned by the defined contribution savings plans can be withdrawn only under specific conditions. The Company's expense for the plan was $1,997 in 2008.

## 8. Fair Value of Financial Instruments

*Fair Value Measurements (SFAS No. 157)*

The Company adopted SFAS No. 157 on January 1, 2008, which provides a definition of fair value, establishes a framework for measuring fair value, and requires expanded disclosures about fair value measurements. The standard applies when GAAP requires or allows assets or liabilities to be measured at fair value and, therefore, does not expand the use of fair value in any new circumstance.

SFAS No. 157 nullified guidance in EITF 02-3. EITF 02-3 required the deferral of day-one gains on derivative contracts, unless the fair value of the derivative contracts were supported by quoted market prices or similar current market transactions. In accordance with EITF 02-3, the Company previously deferred day-one gains on purchased mortgage servicing rights and certain residential loan commitments. When SFAS No. 157 was adopted, the day-one gains previously deferred under EITF 02-3 were recognized as a cumulative effect adjustment that increased beginning retained earnings by $2,367.

21

**CONFIDENTIAL**

**EXAM00122187**

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

---

SFAS No. 157 defines fair value as the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date. SFAS No. 157 clarifies that fair value should be based on the assumptions market participants would use when pricing an asset or liability and establishes a fair value hierarchy that prioritizes the information used to develop those assumptions. The fair value hierarchy gives the highest priority to quoted prices available in active markets (i.e. observable inputs) and the lowest priority to data lacking transparency (i.e. unobservable inputs). Additionally, SFAS No. 157 requires an entity to consider all aspects of nonperformance risk, including the entity's own credit standing, when measuring fair value of a liability. SFAS No. 157 establishes a three level hierarchy to be used when measuring and disclosing fair value. An instrument's categorization within the fair value hierarchy is based on the lowest level of significant input to its valuation.

Following is a description of the three levels:

**Level 1**   Inputs are quoted prices in active markets for identical assets or liabilities as of the measurement date. Additionally, the entity must have the ability to access the active market and the quoted prices cannot be adjusted by the entity.

**Level 2**   Inputs include quoted prices in active markets for similar assets or liabilities; quoted prices in inactive markets for identical or similar assets or liabilities; or inputs that are observable or can be corroborated by observable market data by correlation or other means for substantially the full-term of the assets or liabilities.

**Level 3**   Unobservable inputs are supported by little or no market activity. The unobservable inputs represent management's best assumptions of how market participants would price the assets and liabilities. Generally, Level 3 assets and liabilities are valued using pricing models, discounted cash flow methodologies, or similar techniques that require significant judgment or estimation.

22

CONFIDENTIAL                                                                              EXAM00122188

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

---

### Recurring Fair Value

Due to the suspension of mortgage loan production, the Company has no assets or liabilities measured at fair value on a recurring basis at December 31, 2008.

The table below presents the reconciliation for all of the Company's Level 3 assets and liabilities measured at fair value on a recurring basis. The Level 3 items presented below may be hedged by derivatives and other financial instruments that are classified as Level 1 or Level 2. Thus, the table below does not fully reflect the impact of the Company's risk management activities.

**Level 3 Recurring Fair Value Measurements**
**Year Ended December 31, 2008**

|  | January 1, 2008 Level 3 Fair Value | Realized Gains (Losses) | Purchases, Sales, Issuances and Settlements, Net | December 31, 2008 Level 3 Fair Value |
|---|---|---|---|---|
| **Assets:** |  |  |  |  |
| Loan commitments in asset positions | 3,546 | 15,910 | (19,456) | - |
| **Total** | $ 3,546 | $ 15,910 | $ (19,456) | $ - |

### Nonrecurring Fair Value

The Company may be required to measure certain assets or liabilities at fair value from time-to-time. These periodic fair value measures typically result from application of lower of cost or estimated fair value (LOCOM) or certain impairment measures under GAAP. These items would constitute nonrecurring fair value measures under SFAS No. 157.

The table below presents the items which the Company measures at fair value on a nonrecurring basis. The year ended December 31, 2008 losses are shown below for those items.

**Level 3 Nonrecurring Fair Value Measurements**
**Year Ended December 31, 2008**

|  | Level 1 | Level 2 | Level 3 | Total Estimated Fair Value | LOCOM or Credit Allowance |
|---|---|---|---|---|---|
| **Assets:** |  |  |  |  |  |
| Foreclosed assets | - | - | 357 | 357 | (109) |
| **Total** | $ - | $ - | $ 357 | $ 357 | $ (109) |

23

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

---

*Fair Value of Financial Instruments (SFAS No. 107)*

In accordance with SFAS No. 107, *Disclosures about Fair Value of Financial Instruments*, the Company is required to disclose the fair value of financial instruments, both assets and liabilities recognized and not recognized in the statement of financial position, for which it is predictable to estimate fair value.

The fair value of financial instruments is the amount at which a financial instrument could be exchanged in a current transaction between willing parties other than in a forced sale or liquidation. When possible, the Company uses quoted market prices to determine fair value. Where quoted market prices are not available, the fair value is internally derived based upon appropriate valuation methodologies with respect to the amount and timing of future cash flows and estimated discount rates. Changes to these estimation methodologies could significantly affect fair value, and accordingly, the net realizable value could be materially different from the estimates presented below. In addition, the estimates below are only indicative of individual financial instrument fair values and should not be considered an indication of the fair value of the Company taken as a whole.

The following table presents the carrying amounts and estimated fair values of the Company's financial instruments:

|  | Carrying | Estimated |
|---|---|---|
| **Assets** | | |
| Cash and cash equivalents | $    1,217 | $    1,217 |

The following methods and assumptions were used to estimate the fair value of each class of financial instrument for which it is practicable to estimate such value:

*Cash and cash equivalents* – The estimated fair value for these financial instruments approximates carrying value due to the relatively short-term period of time between origination of the instrument and its expected realization and/or due to the short-term floating interest rates on such investments.

## 9. Derivative Instruments

The Company's historic risk management objectives were to minimize market risk and cash flow volatility associated with interest rate risk related to certain assets and liabilities. Derivative financial instruments were used as part of the Company's risk management policy to manage interest rate risk related to mortgage loans held for sale and mortgage loans held for investment. The Company also held derivative instruments such as commitments to purchase or originate mortgage loans that it entered into in the normal course of business.

The Company entered into commitments to sell the majority of its mortgage loans held for sale at the time of entering into the interest rate lock. These forward sales were also derivatives. At December 31, 2008, the Company did not hold any interest rate lock commitments or other derivative instruments.

24

**EXAM00122190**

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

## 10. Related Party Transactions

During 2008, the Company sold to affiliates $5,813,256 of mortgage loans at market prices, recognizing $13,537 in gains on these sales.

The Company performed subservicing activities for its Parent's primary mortgage loan servicing portfolio during 2008. A Company affiliate performed subservicing activities for certain loans in the Company's loan portfolio. The Company received approximately $134,139 in net servicing fees.

The Company is allocated a monthly management fee from an affiliate for certain servicing functions performed by the affiliate including customer operations, investor reporting, default operations, claims and collections. During 2008, these management fees totaled $87,143.

The Company currently receives certain management, operational and accounting services from its Parent for which no costs are allocated or fees charged. In addition, the Company's employees participate in RFC's bonus plan for which no costs are allocated or fees charged.

The Company is subject to potential liability under laws and government regulation and various claims and legal actions that are pending or may be asserted against it. Liabilities related to such potential claims of the Company are recorded and held by RFC.

In addition, RFC enters into derivative contracts on behalf of the Company to mitigate risks associated with the Company's mortgage loans held for investment. These derivatives are not on the balance sheet of the Company. However, an allocation of the gain or loss on these instruments is recorded in the Company's income statement. RFC allocated a $2,608 gain related to derivative contracts specific to mortgage loans held for investment for the year ended December 31, 2008.

The Company is charged or credited interest by RFC for the net affiliate receivable/payable balance outstanding each month at a rate that represents RFC's borrowing rate. At December 31, 2008, $1,051,047 net receivable was outstanding at an interest rate of 8.9%. The net interest credited and included in the consolidated statement of operations for the year ended December 31, 2008 is $45,125.

The following represents the components of the affiliate receivables, net:

| Affiliate Receivables, net: | | |
|---|---|---|
| Servicing advances sold | $ | (55,908) |
| Loan portfolio servicing fees | | 996,701 |
| Loans sold to affiliates | | 1,191,730 |
| General overhead expenses | | (716,447) |
| Loan funding by Parent | | (351,921) |
| Other | | (13,108) |
| Total affiliate receivables, net | $ | 1,051,047 |

CONFIDENTIAL                                                                 EXAM00122191

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

## 11. Commitments and Contingencies

At December 31, 2008, the Company was obligated under non-cancelable operating leases for office space and equipment.

Future minimum rental payments, including escalation clauses, under leases with terms of one year or more at December 31, 2008, were as follows:

| | | |
|---|---|---|
| 2009 | $ | 77 |
| 2010 | | 40 |
| 2011 | | - |
| 2012 | | - |
| 2013 and thereafter | | - |
| | $ | 117 |

Rental expense recorded by the Company for the year ended December 31, 2008 was $1,281.

The Company is subject to potential liability under laws and government regulation and various claims and legal actions that are pending or may be asserted against it. Some of the pending actions purport to be class actions. Liabilities are established for legal claims when payments associated with the claims become probable and the costs can be reasonably estimated. Such liabilities of the Company are recorded and held by RFC. The actual costs of resolving legal claims may be substantially higher or lower than the amounts established for those claims. Based on information currently available, advice of counsel, available insurance coverage and established liabilities, it is the opinion of management that the eventual outcome of the actions will not have a material adverse effect on the Company's consolidated statements of financial condition, income or cash flows.

During 2008, RFC and GMAC Mortgage, LLC ("GMAC Mortgage"), an affiliate of the Company, entered into a Senior Secured Credit Facility with GMAC with a borrowing capacity of up to $3,500,000. Proceeds from the GMAC Senior Secured Credit Facility were used to repay debt on or prior to its maturity, to acquire certain assets, and for working capital purposes. Under the GMAC Senior Secured Credit Facility, GMAC agreed to make revolving loans to RFC and GMAC Mortgage. This facility is scheduled to mature on May 1, 2010. The facility is collateralized mainly by mortgage loans, servicing advances and equity interests in affiliate companies. The collateralized assets are not eligible to be pledged elsewhere and are not held in a separate or special purpose entity related to this facility. As of December 31, 2008, the combined lending capacity was reduced to $2,969,294 and the combined RFC and GMAC Mortgage amount outstanding was $2,355,769. The obligations of RFC and GMAC Mortgage under the Senior Secured Credit Facility are guaranteed by the Company, ResCap, GMAC-RFC Holding Company, LLC, and GMAC Residential Holding Company, LLC, each subsidiaries of ResCap.

26

CONFIDENTIAL

EXAM00122192

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

## 12. Mortgage Loans Serviced

The Company performs subservicing activities for its Parent's primary loan servicing portfolio. Under the subservicing arrangement, the Company receives a monthly fee and is paid a standard amount for each loan serviced. At December 31, 2008, the balance of loans serviced and subserviced by the Company consists of the following:

|  | Number Of Loans | Unpaid Principal Balance | Weighted Average Coupon | Weighted Average Remaining Maturity Months | Weighted Average Service Fees |
|---|---|---|---|---|---|
| Prime conforming | 14,272 | $ 2,544,039 | 7.28% | 344.95 | 0.33% |
| Prime non-conforming | 170,730 | 40,371,187 | 6.46% | 310.68 | 0.25% |
| Government | 84 | 6,656 | 7.28% | 344.98 | 0.33% |
| Nonprime | 241,096 | 27,448,034 | 8.24% | 314.15 | 0.40% |
| Prime second-lien | 115,366 | 4,990,875 | 7.93% | 266.45 | 0.48% |
| Total | 541,548 | $ 75,360,791 | | | |

The Company performs, or pays third parties to perform, primary servicing on loans in all fifty states. At December 31, 2008, the five largest concentrations for the Company's servicing portfolio are as follows:

| | |
|---|---|
| California | 23% |
| Florida | 9% |
| Texas | 6% |
| Virginia | 5% |
| Washington | 3% |
| All other | 54% |
| Total | 100% |

At December 31, 2008, the Company has fiduciary responsibility for mortgage escrow and custodial funds totaling approximately $47,187. These funds are segregated in custodial bank accounts, which are not included in the assets and liabilities of the Company.

27

CONFIDENTIAL   EXAM00122193

**HOMECOMINGS FINANCIAL, LLC**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
For the year ended December 31, 2008
(Dollars in Thousands)

## 13. Restructuring Charges

In 2008, the Company announced a restructuring initiative to reduce the workforce and streamline operations. During the fourth quarter of 2008, the Company incurred pre-tax restructuring costs related to severance and related costs associated with the workforce reduction of $5,330 and contract and lease termination related to the closure of facilities of $9,352.

The following table summarizes by category the Company's restructuring charge activity for the period ended December 31, 2008:

|  | Liability Balance at January 1, 2008 | Restructuring Charges Through December 31, 2008 | Costs Paid or Otherwise Settled Through December 31, 2008 | Liability Balance at December 31, 2008 |
|---|---|---|---|---|
| Restructuring Charges: |  |  |  |  |
| Employee severance | $ - | $ 5,330 | $ 5,330 | $ - |
| Lease terminations and fixed asset write-offs | - | 9,352 | 1,103 | 8,249 |
| Total | $ - | $ 14,682 | $ 6,433 | $ 8,249 |

## 14. Regulatory Matters

The Company is required to maintain minimum adjusted net worth requirements established by the Department of Housing and Urban Development ("HUD") for Federal Housing Administration ("FHA") lender seller-servicers. For the period from July 31, 2008 up through and including December 31, 2008, the Company did not maintain the required minimum adjusted net worth. As a result, the Company expects to request a voluntary withdrawal of its FHA lender seller-servicer status. As the Company does not originate, sell or service FHA loans, the withdrawal of its FHA lender seller-servicer status is not expected to have a material adverse effect on the Company's operations or financial position.

The Company is also required to maintain mortgage servicer licenses in certain states as a result of its ongoing servicing activities for which its affiliate, GMAC Mortgage, acts as sub-servicer. The majority of these state licenses require the Company to maintain minimum net worth, as defined by GAAP, but at least two states apply adjusted net worth standards similar to those of HUD. Failure to maintain required minimum net worth, as defined, is grounds for license suspension or revocation and could result in monetary penalties. In another state the Company is exempt from state licensing solely based upon satisfactory FHA lender seller-servicer status, so relinquishing that status will mean that the Company must cease servicing in that state or obtain the requisite license. The Company could also be required to cease servicing in other affected states and would, in that event, transfer servicing to its affiliate, GMAC Mortgage. The Company does not expect the resolution of these issues to have a material adverse effect on the Company's operations or financial position.

CONFIDENTIAL

EXAM00122194