## EXHIBIT 4

**Borrower Claims Trust Agreement**

**THE RESCAP BORROWER CLAIMS TRUST**

**TRUST AGREEMENT**

**BY AND AMONG**

**THE BORROWER CLAIMS TRUSTEE,**

**[THE DELAWARE TRUSTEE],**

**RESIDENTIAL CAPITAL, LLC**

**AND**

**THE OTHER DEBTORS LISTED ON THE SIGNATURE PAGES HERETO**

[●], 2013

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS ....................................................................................2
1.1   Definitions Incorporated from the Plan ........................................... 2
1.2   Other Definitions ............................................................................. 2
1.3   Meanings of Other Terms ................................................................ 6

ARTICLE II CREATION OF BORROWER CLAIMS TRUST .................................7
2.1   Creation of Trust ............................................................................. 7
2.2   Purpose of Borrower Claims Trust .................................................. 7
2.3   Status of Borrower Claims Trust and the Trust Committee ............ 7
2.4   Transfer of Borrower Available Assets ........................................... 8
2.5   Borrower Return Amounts............................................................... 9
2.6   Title to Borrower Claims Trust Assets .......................................... 10
2.7   No Reversion to Debtors; Distribution of Remaining Assets ........ 10
2.8   Fiscal Year .................................................................................... 10
2.9   Borrower Claims Trust Budget ...................................................... 10
2.10  Insurance ....................................................................................... 11
2.11  Books and Records ........................................................................ 11
2.12  No Interest or Accruals ................................................................. 12

ARTICLE III TRUST BENEFICIARIES ..............................................................12
3.1   Receipt of Borrower Claims Trust Beneficial Interest .................. 12
3.2   Evidence of Borrower Claims Trust Beneficial Interest................. 12
3.3   Non-Transferability of the Borrower Claims Trust Beneficial Interests ..... 13
3.4   Borrower Claims Trust Beneficial Interests Not Securities............ 13
3.5   Rights of Trust Beneficiaries ........................................................ 13
3.6   Interest Beneficial Only ................................................................ 13
3.7   Conflicting Claims ........................................................................ 13
3.8   Trust Beneficiary Liability to Third Persons ................................ 14
3.9   Actions in the Right of the Borrower Claims Trust ....................... 14

ARTICLE IV SATISFACTION OF BORROWER CLAIMS ...................................14
4.1   General ........................................................................................... 14
4.2   Borrower Claims Payments ........................................................... 15
4.3   Distributions of Distributable Cash .............................................. 16
4.4   Delivery of Payments and Distributions........................................ 16
4.5   Undeliverable and Unclaimed Payments and Distributions .......... 16
4.6   Withholding and Reporting Requirements ..................................... 17
4.7   Disbursing Agent ........................................................................... 17
4.8   Minimum Payments; Other Limitations ........................................ 18
4.9   Subordination................................................................................. 18

ARTICLE V TRUST COMMITTEE ...................................................................18
5.1    General.........................................................................................18
5.2    Membership...................................................................................18
5.3    Authority.......................................................................................19
5.4    Meetings of the Trust Committee ................................................19
5.5    Compensation................................................................................20
5.6    Bylaws...........................................................................................20

ARTICLE VI OPERATION OF THE BORROWER CLAIMS TRUST ...................21
6.1    Prohibited Activities......................................................................21
6.2    Resolution of Disputed Borrower Claims......................................21
6.3    Disputed Claims Reserve...............................................................22
6.4    Borrower Claims Trust Administrative Reserve.............................22
6.5    Return Amount Reserve.................................................................23
6.6    Reporting........................................................................................24
6.7    Borrower Claims Trust Agents; Employees. .................................24

ARTICLE VII BORROWER CLAIMS TRUSTEE.............................................25
7.1    Borrower Claims Trustee Generally ..............................................25
7.2    Appointment and Removal of Borrower Claims Trustee. ...............26
7.3    Borrower Claims Trustee Compensation........................................27
7.4    Authority of the Borrower Claims Trustee.....................................27
7.5    Limitations on Borrower Claims Trustee Authority .......................30
7.6    Conflicts of Interest.......................................................................31
7.7    Fiduciary Duty and Standard of Care ............................................31
7.8    Bond or Insurance .........................................................................31

ARTICLE VIII DELAWARE TRUSTEE..........................................................31
8.1    Appointment ..................................................................................31
8.2    Powers............................................................................................32
8.3    Compensation................................................................................34
8.4    Duration and Replacement............................................................34

ARTICLE IX TAX MATTERS.......................................................................34
9.1    Tax Treatment................................................................................34
9.2    Tax Reporting................................................................................35
9.3    Tax Payment..................................................................................35

ARTICLE X LIMITATION OF LIABILITY AND INDEMNIFICATION................35
10.1    Limitation of Liability...................................................................35
10.2    Indemnification.............................................................................36

ARTICLE XI DURATION OF BORROWER CLAIMS TRUST ..........................37
11.1    Duration ......................................................................................37
11.2    Post-Termination...........................................................................37
11.3    Destruction of Books and Records ...............................................38
11.4    Discharge ......................................................................................38

ARTICLE XII MISCELLANEOUS PROVISIONS ...................................................................38
   12.1    Governing Law ......................................................................................... 38
   12.2    Jurisdiction .............................................................................................. 38
   12.3    Severability ............................................................................................. 38
   12.4    Notices .................................................................................................... 39
   12.5    Headings ................................................................................................. 39
   12.6    Plan Documents ...................................................................................... 39
   12.7    Cooperation ............................................................................................ 39
   12.8    Confidentiality ....................................................................................... 39
   12.9    Entire Borrower Claims Trust Agreement .............................................. 40
   12.10   Named Party ........................................................................................... 40
   12.11   Amendment ............................................................................................ 40
   12.12   Counterparts ........................................................................................... 40

**Exhibits**

Exhibit A – Certificate of Trust
Exhibit B – Initial Borrower Claims Trust Budget
Exhibit C –Trust Committee Members

## THE RESCAP BORROWER CLAIMS TRUST
## TRUST AGREEMENT

This Borrower Claims Trust Agreement, dated as of [_____], 2013 (this "Borrower Claims Trust Agreement"), is entered into by and among Residential Capital, LLC ("ResCap"), ditech, LLC, DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC (each as a debtor and debtor-in-possession, and collectively, the "Debtors"), [_____], or its successor, as Delaware Trustee, and [_____], or his successor, as the Borrower Claims Trustee.

## <u>RECITALS</u>

A.     On May 14, 2012, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B.     On or about August 23, 2013, the Debtors filed the Joint Chapter 11 Plan of Residential Capital, LLC, *et al.*, dated August 23, 2013 (as amended and supplemented and as confirmed, the "Plan", and the related disclosure statement, the "Disclosure Statement").

C.     On or about August 23, 2013, the Bankruptcy Court approved the Disclosure Statement.

D.     On or about [_____], 2013, the Bankruptcy Court issued an order confirming the Plan.

E.     On [_____], 2013, the Effective Date of the Plan occurred.

F.     The Plan provides for a trust (as so formed and administered in accordance with the terms of this Borrower Claims Trust Agreement, the "Borrower Claims Trust") to

administer and distribute the Borrower Claims Trust Assets to holders of Borrower Claims that are Allowed on the Effective Date or that become Allowed after the Effective Date.

G.    This Borrower Claims Trust Agreement is being executed to establish and provide for the administration of the Borrower Claims Trust and the distribution of Borrower Claims Trust Assets as contemplated by the Plan.

H.    The Borrower Claims Trust is intended to qualify as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-2 and to be exempt from the requirements of the Investment Company Act of 1940 pursuant to Section 3(c)(5) and Sections 7(a) and 7(b) thereof.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.1    <u>Definitions Incorporated from the Plan</u>.  Other than the terms defined below or elsewhere in this Borrower Claims Trust Agreement, capitalized terms shall have the meaning assigned to them in the Plan.

1.2    <u>Other Definitions</u>.

(a)    "**Administrative Funding Payment**" means the one-time cash payment of $[___] made to the Borrower Claims Trust by the Liquidating Trust on the Effective Date, which amount represents the amount of the administrative costs and expenses of the Borrower Claims Trust to be funded as of the Effective Date by the Liquidating Trust.

(b)    "**Borrower Available Assets**" has the meaning assigned in <u>Section 2.4</u>.

(c)    "**Borrower Claims Payment**" has the meaning assigned in <u>Section 4.1(a)</u>.

(d)    "**Borrower Claims Recovery Percentage**" means (i) in the case of a Borrower Claim against a GMACM Debtor, [30.1%]; (ii) in the case of a Borrower Claim against an RFC Debtor, [9.0%]; and (iii) in the case of a Borrower Claim against ETS, 100%.

(e)    "**Borrower Claims Register**" has the meaning assigned in <u>Section 2.4(d)</u>.

(f)    "**Borrower Claims Trust**" has the meaning assigned in the Recitals.

(g)    "**Borrower Claims Trust Administrative Reserve**" means the reserve established for paying costs, fees and expenses, and reserving for liabilities, of the Borrower Claims Trust.

(h)    "**Borrower Claims Trust Agents**" means the advisors, professionals, other agents and such other Persons to whom the Borrower Trustee delegates authority, including any disbursement agent, of the Borrower Claims Trust appointed or engaged by the Borrower Claims Trustee in accordance with the provisions of this Borrower Claims Trust Agreement.

(i)    "**Borrower Claims Trustee**" means [_____], or his successor, appointed in accordance with this Borrower Claims Trust Agreement.

(j)    "**Borrower Claims Trust Agreement**" has the meaning assigned in the Recitals.

(k)    "**Borrower Claims Trust Assets**" means (i) all Borrower Available Assets, (ii) Cash constituting Return Amounts returned to the Borrower Claims Trust following the Effective Date in accordance with Section 2.5 and (iii) any interest, income or proceeds of any of the foregoing.

(l)    "**Borrower Claims Trust Beneficial Interest**" means a non-transferable and non-assignable uncertificated beneficial interest in the Borrower Claims Trust to be issued to each holder of an Allowed Borrower Claim, other than an Allowed ETS Borrower Claim and an Allowed Borrower Convenience Claim, the amount of which for each holder shall be calculated as provided in Section 3.1, which entitles its holder to receive distributions of Distributable Excess Cash from the Borrower Claims Trust as set forth in this Borrower Claims Trust Agreement.

(m)    "**Borrower Claims Trust Budget**" has the meaning assigned in Section 2.9(a).

(n)    "**Borrower Claims Trust Website**" means an internet website maintained by the Borrower Claims Trust in accordance with this Borrower Claims Trust Agreement.

(o)    "**Borrower Convenience Claim**" means (i) a Claim that would otherwise be classified as an Allowed Borrower Claim, but, (A) in the case of a Claim against a GMACM Debtor, the aggregate Allowed amount of such Claim is, or is reduced to, $8,500 or less (or such other value as determined by the Trust Committee) and (B) in the case of a claim against an RFC Debtor, the aggregate Allowed amount of such Claim is, or is reduced to, $28,000 or less (or such other value as determined by the Trust Committee) or (ii) such other Claim or class of Claim that the Trust Committee has determined shall be classified as a Borrower Convenience Claim for purposes of this Borrower Claims Trust Agreement.

(p)    "**Borrower Convenience Claim Payment**" means, an amount in Cash equal to $500.00 (or such other amount determined by the Trust Committee) plus the amount of such Allowed Borrower Convenience Claim multiplied by (i) in the case of an Allowed Borrower Convenience Claim against a GMACM Debtor, [30.1%] and (ii) in the case of an Allowed Borrower Convenience Claim against an RFC Debtor, [9.0%].

(q)     "**Business Day**" means any day other than a Saturday, Sunday or legal holiday on which the banks in the City of New York, Borough of Manhattan, are authorized to remain closed.

(r)     "**Cause**" means, with respect to the Borrower Claims Trustee, (i) an act of fraud, embezzlement or theft by the Borrower Claims Trustee in connection with the performance of his or her duties under this Borrower Claims Trust Agreement; (ii) intentional misconduct by the Borrower Claims Trustee with respect to the maintenance and disposition of the Borrower Claims Trust Assets; (iii) intentional disclosure of confidential information by the Borrower Claims Trustee in violation of Section 12.8; or (iv) gross negligence by the Borrower Claims Trustee in the performance of his or her duties under this Borrower Claims Trust Agreement.

(s)     "**Case Management and Servicing Orders**" means (i) the Order Approving Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and (d), Bankruptcy Rules 1015(c), 2002(m), 7016, and 9007 and Local Bankruptcy Rule 2002-2 for Entry of an Order Approving (A) Supplement to Case Management Order Establishing Mandatory Procedures for Management of Adversary Proceedings Commenced by Borrowers and Former Borrowers and (B) Related Relief [Docket No. 3293], as amended by the Amended Order Approving Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and (d), Bankruptcy Rules 1015(c), 2002(m), 7016, and 9007 and Local Bankruptcy Rule 2002-2 for Entry of an Order Approving (A) Supplemental to Case Management Order Establishing Mandatory Procedures for Management of Adversary Proceedings Commenced by Borrowers and Former Borrowers and (B) Related Relief [Docket No. 3490], and (ii) Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 3007 and 9019(b) Approving (I) Claim Procedures, (II) Borrower Claim Procedures, (III) Settlement Procedures, and (IV) Schedule Amendment Procedures [Docket No. 3294].

(t)     "**Certificate of Trust**" means the certificate of trust of the Borrower Claims Trust as required by section 3810 of the Trust Act, substantially in the form set forth in Exhibit A to this Borrower Claims Trust Agreement, and filed in connection with the formation of the Borrower Claims Trust pursuant to the Trust Act.

(u)     "**Confidentiality Parties**" has the meaning assigned in Section 12.8.

(v)     "**Conflicted Member**" has the meaning assigned in Section 5.4(d).

(w)     "**Cooperation Agreement**" means that certain Cooperation Agreement, dated the date hereof, by and between the Borrower Claims Trust and the Liquidating Trust.

(x)     "**Debtors**" has the meaning assigned in the Preamble.

(y)     "**Delaware Trustee**" means [_____], or its successor, which is appointed in accordance with this Borrower Claims Trust Agreement to comply with the requirement of section 3807 of the Trust Act.

(z)     "**Designee**" has the meaning assigned in Section 7.6.

(aa)   "**Disputed Borrower Claims**" means Borrower Claims that at any relevant time are Disputed Claims.

(bb)   "**Disputed Claims Reserve**" means the reserve of Cash maintained by the Borrower Claims Trust, for distribution to holders of Disputed Borrower Claims that are subsequently Allowed.

(cc)   "**Dispute Resolution**" has the meaning assigned in Section 3.7.

(dd)   "**Distributable Excess Cash**" means Cash included at any time in the Borrower Claims Trust Assets, other than the Return Amount Reserve, in excess, but without duplication, of (i) the amount of Cash required for making Borrower Claims Payments in respect of Allowed Borrower Claims, (ii) the minimum amount of Cash required be held in the Disputed Claims Reserve for making payments in respect of Disputed Borrower Claims that may become Allowed pursuant to Section 6.3, and (iii) the amount of Cash required to fund the Borrower Claims Trust Administrative Reserve and any other reserve required to be maintained under this Borrower Claims Trust Agreement.

(ee)   "**Estimated Amount**" means the estimated amount of a Disputed Borrower Claim, as determined by the Borrower Claims Trustee, which shall either be the filed amount of the Claim or such amount as estimated by the Bankruptcy Court at the request of the Debtors or the Borrower Claims Trust pursuant to Bankruptcy Code section 502(c) or such other estimated amount determined in accordance with the Plan, including Article VIII.A.4. thereof.

(ff)   "**ETS Borrower Claim**" means a Borrower Claim against ETS.

(gg)   "**Fee and Expense Report**" has the meaning assigned in Section 6.7(c).

(hh)   "**Fee Notice Period**" has the meaning assigned in Section 6.7(c).

(ii)   "**FDIC**" means the Federal Deposit Insurance Corporation or any successor institution.

(jj)   "**Fiscal Year**" means any fiscal year of the Borrower Claims Trust, as provided in Section 2.8 hereof.

(kk)   "**KSC Committee Member**" has the meaning assigned in Section 5.1(a).

(ll)   "**Plan**" has the meaning assigned in the Recitals.

(mm)   "**Plan Documents**" means, collectively, the Plan, the Confirmation Order and this Borrower Claims Trust Agreement.

(nn)   "**Return Amount**" has the meaning assigned in Section 2.4(a).

5

(oo)    "**Return Amount Reserve**" means the reserve of Cash maintained by the Borrower Claims Trust for distribution to certain Trust Beneficiaries as provided in <u>Section 6.5</u>.

(pp)    "**Tax Authority**" means a federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, court or other body (if any) charged with the administration of any law relating to Taxes.

(qq)    "**Taxes**" means all (i) federal, state, local, or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, estimated, property, transfer and sales or use taxes, and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (i) hereof.

(rr)    "**Tax Return**" means a return, declaration, form, election, letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Taxes, including any schedule or attachment thereto or amendment thereof, including any claim for a Tax refund.

(ss)    "**Trust Act**" means, the Delaware Statutory Trust Act, 12 Del. C. § 3801 et seq., as the same may from time to time be amended, or any successor statute.

(tt)    "**Trust Beneficiaries**" means (i) the holders of Allowed Borrower Claims and (ii) any holder of a Disputed Borrower Claim that may in the future be entitled to receive a distribution of Distributable Excess Cash from the Disputed Claims Reserve.

(uu)    "**Trust Beneficiary Committee Member**" " has the meaning assigned in <u>Section 5.1(a)</u>.

(vv)    "**Trust Committee**" means the committee of individuals appointed to administer and oversee the affairs of the Borrower Claims Trust, as provided in this Borrower Claims Trust Agreement.

(ww)    "**Trustee**" means either of the Borrower Claims Trustee or the Delaware Trustee.

1.3    <u>Meanings of Other Terms</u>.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include firms, associations, corporations and other entities.   All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code; the Bankruptcy Rules; or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Borrower Claims Trust Agreement, and the word "herein" and words of similar import refer to this Borrower Claims Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Borrower Claims Trust Agreement.   The term "including" shall mean "including, without limitation."

## ARTICLE II
## CREATION OF BORROWER CLAIMS TRUST

2.1     Creation of Trust.  The Borrower Claims Trust shall be deemed to have been created by the Debtors and the Trustees effective as of the time of filing of the Certificate of Trust.  The Borrower Claims Trust shall bear the name "ResCap Borrower Claims Trust" and the Borrower Claims Trustee may, in connection with the exercise of his powers and duties hereunder, either use this name or such variation thereof from time to time.

2.2     Purpose of Borrower Claims Trust.

(a)     The Borrower Claims Trust is established for the purpose of directing the reconciliation, processing, liquidation and payment of the Allowed Borrower Claims in accordance with this Borrower Claims Trust Agreement, and preserving, holding and managing the Borrower Claims Trust Assets.  For the avoidance of doubt, the Borrower Claims Trust shall be completely independent of the Liquidating Trust, and neither the Liquidating Trust nor its agents shall have any authority over the Borrower Claims Trust or the Borrower Claims Trustee.

(b)     This Borrower Claims Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Borrower Claims Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall any of the Trustees or the Trust Beneficiaries, for any purpose be, or be deemed to be or be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Trust Beneficiaries to the Trustees shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Borrower Claims Trust Agreement.

2.3     Status of Borrower Claims Trust and the Trust Committee.

(a)     Subject to the terms of the Confirmation Order, the Borrower Trust shall be the successor-in-interest to the Debtors with respect to any (a) Available Asset constituting Borrower-Related Causes of Action to the extent not waived and released under the Plan and (b) any objection or motion objecting to Borrower Claims that was, is, or could have been commenced or filed, as applicable, by any of the Debtors prior to the Effective Date and shall be deemed substituted for each such Debtor as the party in any such litigation or contested matter.

(b)     The Borrower Claims Trust, acting through the Borrower Claims Trustee under the supervision of the Trust Committee, will be the representative of the Estates as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with respect to the Borrower-Related Causes of Action and shall have the rights and powers provided in the Bankruptcy Code in addition to any rights and powers granted in the Plan Documents, including the rights to object to Borrower Claims.  The Borrower Claims Trust shall be the

successor-in-interest to the Debtors with respect to any and all such matters and shall be deemed substituted for each such Debtor as the party in any such litigation or contested matter.

(c)    All Borrower-Related Causes of Action are preserved and retained and may be enforced by the Borrower Claims Trust pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to the extent not waived and released under the Plan.

2.4    Transfer of Borrower Available Assets.

(a)    On the Effective Date, subject to the terms of the Confirmation Order, (i) the Liquidating Trust, in its capacity as disbursing agent for the Debtors, if such distribution is not otherwise made by the Debtors, shall transfer (I) Cash in the amount of $57,600,000 (A) less any amounts paid by the Debtors to or on behalf of the holders of Allowed Borrower Claims prior to the Effective Date pursuant to the Case Management and Servicing Orders or any other order of the Bankruptcy Court and (B) plus the amount, if any, of the Borrower Trust True-Up, and (II) the Administrative Funding Payment and (ii) the Debtors shall transfer all of the Available Assets constituting Borrower-Related Causes of Action, in the form thereof existing on such date (clauses (i) and (ii) collectively, the "Borrower Available Assets"), in each case, to the Borrower Claims Trust, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other persons and entities to the maximum extent contemplated by and permissible under section 1141 of the Bankruptcy Code.  For the avoidance of doubt, the Borrower-Related Causes of Action shall not include Estates' claims, rights and remedies with respect to any note and accompanying mortgage or deed of trust originated, owned, acquired or serviced by the Estates as of the Effective Date and any such claim, right or remedy shall constitute an Available Asset to be assigned to the Liquidating Trust; provided, however, the Estates shall expressly reserve and assign to the Borrower Claims Trust, all claims, defenses, set-offs, cross-claims and counterclaims that the Debtors may have against Borrowers with respect to any Borrower Claim.  The Borrower Claims Trust shall have such incidents of ownership in such transferred assets as are necessary to undertake the actions and transactions authorized in the Plan Documents.  The transfer of the Borrower Available Assets shall be exempt from any stamp, real estate transfer, mortgage recording, sales, use or other similar tax pursuant to section 1146 of the Bankruptcy Code. Upon the transfer of the Borrower Available Assets to the Borrower Claims Trust, such assets shall become Borrower Claims Trust Assets.

(b)    Notwithstanding the foregoing, if on the Effective Date, any of the Borrower Available Assets cannot be transferred to the Borrower Claims Trust for any reason, for example, because the Borrower Claims Trust has not yet established accounts for the purpose of holding Cash or because of a restriction on transferability under applicable non-bankruptcy law that is not superseded by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Debtors (or successors thereto) or the Liquidating Trust, as applicable, shall continue to hold such Borrower Claims Trust Assets, as bailee for the account of the Borrower Claims Trust, until such time as the Borrower Claims Trust informs the Debtors (or successors thereto) or the Liquidating Trust, as applicable, that the Borrower Claims Trust may receive such Borrower Available Assets, whereupon such assets shall be promptly transferred to the Borrower Claims Trust and become Borrower Claims Trust Assets; provided that any proceeds realized from such assets retained by the Debtors (or any

successors thereto) or the Liquidating Trust, as applicable, shall nevertheless be deemed to constitute Borrower Claims Trust Assets, and to likewise be held by the Debtors (or successors thereto) or the Liquidating Trust, as applicable, as bailee, and be turned over as soon as practicable to the Borrower Claims Trust pursuant to this Borrower Claims Trust Agreement as if such transfer had not been restricted under applicable non-bankruptcy law.  The Borrower Claims Trustee may commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any Borrower Available Assets retained by the Debtors (or any successors thereto) or the Liquidating Trust, as applicable, pursuant to the Plan Documents.

(c)    On or prior to the Effective Date, the Debtors shall deliver or cause to be delivered to the Liquidating Trust any and all of the Debtors' books and records that relate primarily to or that may be reasonably required in connection with the Borrower Available Assets, whether held by the Debtors, their agents, representatives, advisors, attorneys, accountants and any other professionals hired by the Debtors and provide reasonable access to such employees, agents, advisors, attorneys, accountants or any other Debtor professionals with knowledge of matters relevant to the Borrower Available Assets.  The Liquidating Trust shall store and maintain such books and records for the benefit of the Borrower Claims Trust, the Borrower Claims Trustee, and Borrower Claims Trust Agents shall be afforded access to such books and records, in each case, in accordance with the terms of the Cooperation Agreement.

(d)    On or prior to the Effective Date, the Debtors shall deliver, or cause to be delivered, to the Borrower Claims Trust a complete list of all Allowed Borrower Claims, including Allowed ETS Borrower Claims, Allowed Borrower Convenience Claims, if any, and Disputed Borrower Claims, reflected on the claims registry (the "Borrower Claims Register") as of the Effective Date.  The list shall include the names and addresses of the holders of such Claims and, in the case of Allowed Borrower Claims, Allowed ETS Borrower Claims and Allowed Borrower Convenience Claims, the amounts thereof, and in the case of Disputed Borrower Claims, the amounts thereof as filed and the Estimated Amounts (if any) thereof. The list of Disputed Borrower Claims shall include the details of all objections, including filed objections and identified potential objections (if any), in respect of such the Claims.

(e)    The Borrower Claims Trust, as successor-in-interest to the Estates with respect to the Borrower Available Assets, may (i) execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), and (ii) take, or cause to be taken, all such further action in order to evidence, vest, perfect or effectuate the transfer of all of the Borrower Available Assets to the Borrower Claims Trust and consummate transactions contemplated by and to otherwise carry out the intent of the Plan Documents with respect to such assets.

2.5    Borrower Return Amounts.  Subject to the Kessler Settlement Agreement [and the Mitchell Settlement Agreement], to the extent a Trust Beneficiary recovers insurance proceeds on account of all or some of an Allowed Borrower Claim, and payments on account of such Allowed Borrower Claim have been made pursuant to this Borrower Claims Trust Agreement, the Trust Beneficiary shall be required to return a portion of such payments received by such Trust Beneficiary to the Borrower Claims Trust, in accordance with Article

IV.F.6. of the Plan (such returned amount, a "Return Amount"). Any Return Amounts received by the Borrower Claims Trust shall be added to the Return Amount Reserve.

  2.6 Title to Borrower Claims Trust Assets. Subject to Section 2.4(a), upon the transfer of Available Assets, the Borrower Claims Trust shall succeed to all of the Debtors' right, title and interest in the Borrower Available Assets, and the Debtors will have no further rights or interest in or with respect to the Borrower Claims Trust Assets or the Borrower Claims Trust.

  2.7 No Reversion to Debtors; Distribution of Remaining Assets.

  (a) In no event shall any part of the Borrower Claims Trust Assets revert to or be distributed to or for the benefit of any Debtor.

  (b) To the extent that after satisfaction in full of all of the costs and expenses of the administration of the Borrower Claims Trust, after all Disputed Borrower Claims have been either Allowed or disallowed, after all Allowed Borrower Claims have been paid pursuant to the Plan Documents, after satisfaction of all other obligations or liabilities of the Borrower Claims Trust incurred or assumed in accordance with the Plan Documents, after the Borrower Claims Trust has made the maximum distribution of Distributable Excess Cash to the Trust Beneficiaries to the extent reasonably practicable, after the Borrower Claims Trust has distributed all of the Cash held in the Return Amount Reserve in accordance with Section 6.5, and after the affairs of the Borrower Claims Trust have been finally wound up and concluded in accordance with the provisions of Article XI hereof and section 3808 of the Trust Act, there shall remain any Borrower Claims Trust Assets, the Borrower Claims Trust shall distribute such remaining Borrower Claims Trust Assets to an organization, selected by the Trust Committee, described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code that is unrelated to the Debtors, the Borrower Claims Trust or the Borrower Claims Trustee.

  2.8 Fiscal Year. Except for the first and last years of the Borrower Claims Trust, the Fiscal Year of the Borrower Claims Trust shall be the calendar year. For the first and last years of the Borrower Claims Trust, the Fiscal Year of the Borrower Claims Trust shall be such portion of the calendar year that the Borrower Claims Trust is in existence. The terms fiscal quarter, or similar references, as used in this Borrower Claims Trust Agreement, shall have a correlative meaning.

  2.9 Borrower Claims Trust Budget.

  (a) There shall be prepared an annual plan and budget for the Borrower Claims Trust (any such plan and budget, as it may be amended from time to time in accordance with the terms hereof, the "Borrower Claims Trust Budget") for each Fiscal Year, except that the Borrower Claims Trust Budget for the first Fiscal Year, if less than six calendar months, may be combined with the Borrower Claims Trust Budget for the next succeeding Fiscal Year, and the Borrower Claims Trust Budget for the last Fiscal Year, if less than six calendar months, may be combined with the Borrower Claims Trust Budget for the immediate prior Fiscal Year, unless the Trust Committee determines that a Borrower Claims Trust Budget is

not necessary for such Fiscal Year. Except as otherwise determined by the Trust Committee, the Borrower Claims Trust Budget shall set forth (on an annual basis) in reasonable detail the anticipated expenses of the Borrower Claims Trust for the relevant period and the sources of funding available to satisfy the expenses.

(b)    The initial Borrower Claims Trust Budget is attached as <u>Exhibit B</u> to this Borrower Claims Trust Agreement. Except as otherwise approved by the Trust Committee, the form of each Borrower Claims Trust Budget shall be substantially the same as the form of the initial Borrower Claims Trust Budget.

(c)    Not less than thirty (30) days before the beginning of each Fiscal Year (other than the first Fiscal Year and other than the second Fiscal Year, if the initial Borrower Claims Trust Budget covers such Fiscal Year and other than the last Fiscal Year, if the Borrower Claims Trust Budget for the next preceding Fiscal Year covers such Fiscal Year), the Borrower Claims Trustee shall submit to the Trust Committee a proposed Borrower Claims Trust Budget for such Fiscal Year, together with a comparison to the Borrower Claims Trust Budget then in effect and an explanation of the differences between the two in reasonable detail. The Borrower Claims Trust Budget for such Fiscal Year shall not become effective until approved by the Trust Committee, and until so approved, the Borrower Claims Trust Budget for the prior year shall constitute the Borrower Claims Trust Budget for the subsequent year on an interim basis.

(d)    Amendments, if any, to the Borrower Claims Trust Budget shall not become effective unless and until approved by the Trust Committee.

(e)    Except as otherwise approved by the Trust Committee, the amount expended in any Fiscal Year (or, if the initial or final Borrower Claims Trust Budget shall cover a combined period as provided above, in such combined period) on any item of expense set forth in the Borrower Claims Trust Budget shall not exceed by more than twenty percent (20)% the budgeted amount therefor set forth in the Borrower Claims Trust Budget for the relevant Fiscal Year.

2.10    <u>Insurance</u>.    The Borrower Claims Trust shall maintain customary insurance coverage for the protection of the Trustees and Trust Committee (which coverage shall be primary to any other coverage potentially available to such Persons), and may procure insurance coverage for such employees and Borrower Claims Trust Agents as the Trust Committee may determine in its discretion, and the cost thereof shall be reflected in the Borrower Claims Trust Budget.

2.11    <u>Books and Records</u>.

(a)    The Borrower Claims Trustee shall cause to be stored and maintained books and records for the period commencing on the date hereof through the termination of the Borrower Claims Trust, containing such information concerning the Borrower Claims Trust Assets, the conduct of the affairs of the Borrower Claims Trust and the Trust Beneficiaries, in such detail and for such periods of time as may be necessary to enable the Borrower Claims Trust to make full and proper accounting in respect thereof and to comply with applicable

provisions of law. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Borrower Claims Trust.

(b)     The Borrower Claims Trust shall be authorized without further application to the Bankruptcy Court or notice to any party, to abandon or otherwise destroy books and records (whether in electronic or paper format) in accordance with Section 11.2.

(d)     Anything in the Trust Act to the contrary notwithstanding, no Trust Beneficiary shall have the right to obtain from the Borrower Claims Trust any of its books or records except as expressly provided in this Borrower Claims Trust Agreement or as may otherwise be expressly permitted by the Borrower Claims Trustee.

2.12    No Interest or Accruals. Except as otherwise may be expressly provided in the Plan Documents, holders of Borrower Claims shall not be entitled to interest on the distributions provided for in this Borrower Claims Trust Agreement, regardless of whether such distributions are deliverable on or at any specified time after the Effective Date.

## ARTICLE III
## TRUST BENEFICIARIES

3.1    Receipt of Borrower Claims Trust Beneficial Interest. Subject to Section 4.1(c), on the Effective Date, each holder of an Allowed Borrower Claim as of the Effective Date shall be deemed to receive a Borrower Claims Trust Beneficial Interest in an amount corresponding to the amount of such holder's Allowed Claim multiplied by the applicable Borrower Claims Recovery Percentage. Subject to Section 4.1(c), the holder of a Borrower Claim that is a Disputed Claim on the Effective Date and that subsequently becomes Allowed, in whole or in part, shall be deemed to receive a Borrower Claims Trust Beneficial Interest in an amount corresponding to the amount of such holder's Allowed Claim multiplied by the applicable Borrower Claims Recovery Percentage at such time as such Claim becomes Allowed.

3.2    Evidence of Borrower Claims Trust Beneficial Interest. Ownership of a Borrower Claims Trust Beneficial Interest shall be evidenced by appropriate notation on the books and records maintained for that purpose by the Borrower Claims Trust or an agent of the Borrower Claims Trust. Such notation shall be conclusive absent manifest error, and the Borrower Claims Trust and the Borrower Claims Trustee shall treat each Person whose name is recorded on the books and records of the Borrower Claims Trust as aforesaid as the owner of the Borrower Claims Trust Beneficial Interest indicated therein for all purposes of this Borrower Claims Trust Agreement, notwithstanding notice to the contrary. The notation shall be in such form as the Borrower Claims Trustee shall determine, but shall correspond in amount or quantity to the amount of the Allowed Borrower Claim in respect of which the Borrower Claims Trust Beneficial Interest was issued. A Trust Beneficiary shall be deemed the "holder of record" of such beneficiary's Borrower Claims Trust Beneficial Interest for purposes of all applicable laws, rules and regulations. The Borrower Claims Trustee shall, upon the written request of a Trust Beneficiary, provide reasonably adequate documentary evidence of such Trust Beneficiary's Borrower Claims Trust Beneficial Interest; provided that

the Borrower Claims Trustee shall not be required to provide such evidence to a Trust Beneficiary in response to more than one request of such Trust Beneficiary during any twelve-month period. The expense (including Borrower Claims Trustee fees and professional fees) of providing such documentation shall be borne by the requesting Trust Beneficiary.

3.3    Non-Transferability of the Borrower Claims Trust Beneficial Interests. Borrower Claims Trust Beneficial Interests shall not be transferable or assignable except by will, intestate succession or operation of law; provided that any transfer or assignment of a Borrower Claims Trust Beneficial Interest by will, intestate succession or operation of law shall not be effective unless and until such transfer or assignment is recorded on the books and records of the Borrower Claims Trust maintained for that purpose, as provided in Section 3.2. Notwithstanding any other provision to the contrary, the Borrower Claims Trustee may disregard any purported transfer or assignment of Borrower Claims Trust Beneficial Interests by will, intestate succession or operation of law if necessary information (as reasonably determined by the Borrower Claims Trustee), including applicable Tax-related information, is not provided by such purported transferee or assignee to the Borrower Claims Trustee.

3.4    Borrower Claims Trust Beneficial Interests Not Securities. The Borrower Claims Trust Beneficial Interests shall not constitute "securities" and shall not be registered pursuant to the Securities Act of 1933, as amended, or any state securities law. However, if it should be determined that the Borrower Claims Trust Beneficial Interests constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code shall apply to the Borrower Claims Trust Beneficial Interests.

3.5    Rights of Trust Beneficiaries. Each Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Trust Beneficiary hereunder on account of its Borrower Claims Trust Beneficial Interest. Each Trust Beneficiary shall take and hold the same, subject to all the terms and conditions of the Plan Documents. The interest of a Trust Beneficiary is hereby declared and shall be, in all respects, personal property.

3.6    Interest Beneficial Only. Except as expressly provided hereunder, a Trust Beneficiary shall have no title to, right to, possession of, management of or control of the Borrower Claims Trust or the Borrower Claims Trust Assets. The ownership of a Borrower Claims Trust Beneficial Interest in the Borrower Claims Trust shall not entitle any Trust Beneficiary to any title in or to the Borrower Claims Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

3.7    Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to a Borrower Claims Trust Beneficial Interest, the Borrower Claims Trust (as determined by the Trust Committee at its sole election or by the Borrower Claims Trustee pursuant to delegated authority of the Trust Committee) shall be entitled to refuse to comply with any such conflicting claims or demands. In so refusing, the Borrower Claims Trust may elect to make no payment or distribution with respect to the Borrower Claims Trust Beneficial Interest at issue subject to the claims or demands involved, or any part thereof, and the Borrower Claims Trust shall be entitled to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive and continuing jurisdiction over resolution of

such conflicting claims or demands.  Neither the Borrower Claims Trust, the Trust Committee nor the Borrower Claims Trustee shall be or become liable to any party for either (x) the election to continue making payments or distributions pursuant to its books and records, without regard to the conflicting claims or demands; or (y) the election to cease payments or distributions with respect to the subject Borrower Claims Trust Beneficial Interest(s).  In the event that the Borrower Claims Trust elects to cease payments, it shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or such other court of proper jurisdiction) or (ii) all differences have been resolved by a written agreement among all of such parties and the Borrower Claims Trust, which agreement shall include a complete release of the Borrower Claims Trust, the Trust Committee and the Borrower Claims Trustee in form and substance reasonably satisfactory to the Trust Committee (the occurrence of either (i) or (ii), a "Dispute Resolution").  Promptly after a Dispute Resolution is reached, the Borrower Claims Trust shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income earned thereon, if any, in accordance with the terms of such Dispute Resolution.

3.8    Trust Beneficiary Liability to Third Persons.  No Trust Beneficiary shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Borrower Claims Trust Assets or the affairs of the Borrower Claims Trust to the fullest extent provided by section 3803(a) of the Trust Act.

3.9    Actions in the Right of the Borrower Claims Trust.  No Trust Beneficiary shall have the right to bring an action in the right of the Borrower Claims Trust to recover a judgment pursuant to section 3816 of the Trust Act unless such Trust Beneficiary or Trust Beneficiaries individually or collectively own ten percent (10%) or more of the total Borrower Claims Trust Beneficial Interests outstanding.

## ARTICLE IV
## SATISFACTION OF BORROWER CLAIMS

4.1    General.

(a)    Each holder of an Allowed Borrower Claim shall be entitled to receive (i) Cash in an amount equal to the Allowed amount of such Claim multiplied by the applicable Borrower Claims Recovery Percentage (a "Borrower Claims Payment") and (ii) its Borrower Claim Trust Beneficial Interest, as provided in Section 3.1.  For the avoidance of doubt, any insurance proceeds to which a holder of an Allowed Borrower Claim may be entitled shall be in addition to, and not inclusive of, a Borrower Claims Payment, subject to the right of the Borrower Claims Trust to any Return Amounts pursuant to Section 2.5, and any Cash distributions from the Return Amount Reserve shall be made in accordance with Section 6.5(b).

(b)    For the purposes of determining the Allowed amount of a Borrower Claim, if such Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Bankruptcy Court.

(c)      Notwithstanding the provisions of subsection (a) above, (i) each holder of a Borrower Convenience Claim that is or becomes Allowed shall receive a payment in Cash in an amount equal to the Borrower Convenience Claim Payment with respect to such Claim and (ii) each holder of an ETS Borrower Claim that is or becomes Allowed shall receive a Borrower Claim Payment with respect to such Claim.  For the avoidance of doubt, the payments received by holders of Borrower Convenience Claims and ETS Borrower Claims pursuant to this Section 4.1(c) shall represent the full and final satisfaction of such Claims and such holders shall not receive Borrower Claims Trust Beneficial Interests.

(d)      The Borrower Claims Payment is intended to be comparable to the recovery that the holder of an Allowed Claim in the same amount against the same Debtor Group would realize from distributions made by the Liquidating Trust on Units issued to Unitholders with respect to such Allowed Claim, based on the estimated value of the Liquidating Trust Assets available for distribution to Unitholders as of the Effective Date (without, in each case, giving effect to any insurance proceeds, including proceeds from the GM Policies that may be received in respect of certain Allowed Borrower Claims or to the time delay in receipt of distributions in respect of the Units).  Notwithstanding the foregoing and subject to the terms of the Confirmation Order, the allocated share of Cash available for distributions from the Borrower Claims Trust shall be solely determined by the provisions of this Borrower Claims Trust Agreement, and not by the Liquidating Trust Agreement or any other Plan Document.

4.2      Borrower Claims Payments.

(a)      As soon as practicable following the Effective Date, the Borrower Claims Trust shall make a Borrower Claims Payment to each holder of a Borrower Claim that is Allowed as of the Effective Date.

(b)      Each holder of a Borrower Claim that was not Allowed as of the Effective Date and that is subsequently Allowed, in whole or in part, shall receive from the Disputed Claims Reserve a Borrower Claims Payment in respect of such Claim following the date such Claim becomes Allowed.  Such Borrower Claims Payments shall be made at such time and from time to time as determined by the Trust Committee, provided that a Borrower Claims Payment shall be made no later than ninety (90) days following date on which the respective Borrower Claim becomes Allowed.

(c)      At the time a Borrower Claims Payment is made in respect of a Borrower Claim that becomes Allowed following the Effective Date, there shall also be paid to the holder of such Borrower Claim from the Disputed Claims Reserve an amount of Cash equal to all distribution that the holder of a Borrower Claims Trust Beneficial Interest corresponding to such Allowed Borrower Claim would have received had such holder received such Borrower Claims Trust Beneficial Interest as of the Effective Date; provided, that with respect to Borrower Convenience Claims and ETS Borrower Claims that become Allowed following the Effective Date, there shall be paid to each such holder of a Borrower Convenience Claim or ETS Borrower Claim, such amounts that such holder would have received under Section 4.1(c) had such Claim been Allowed as of the Effective Date.

(d)    Notwithstanding anything to the contrary herein, the Borrower Claims Trust shall in no event be obligated to make any payment to a holder of a Borrower Claim, whether by Borrower Claims Payment or distribution in respect of a Borrower Claims Trust Beneficial Interest or otherwise, in the event the total amount of such Borrower Claim, after giving effect to payment of any Return Amount, has been satisfied in full, and such holder has collected the total amount of such Borrower Claim, whether through the receipt of insurance proceeds, payments hereunder, other sources or a combination of the foregoing, or otherwise.

(e)    Notwithstanding anything to the contrary herein, the Trust Committee may determine to adjust the timing and amount of a Borrower Claims Payment to the extent necessary for the Borrower Claims Trust to meet the Cash maintenance requirements of the Disputed Claims Reserve and the Borrow Claims Trust Administrative Reserve set forth in this Trust Agreement.

4.3    Distributions of Distributable Excess Cash.

(a)    Subject to Section 6.5, if at any time the Trust Committee determines that there exists any Distributable Excess Cash held by the Borrower Claim Trust, including Cash in the Disputed Claims Reserve in excess of the minimum amount specified in Section 6.3, the Trust Committee may, but shall not be required to, make a distribution of all or part of such Distributable Excess Cash to holders of Borrower Claims Trust Beneficial Interests. Such distribution shall be made pro rata to all holders of Borrower Claims Trust Beneficial Interests; provided that in connection with such distribution the Disputed Claims Reserve shall be deemed to have a Borrower Claims Trust Beneficial Interest corresponding to the Estimated Amount of all Disputed Borrower Claims as of the relevant time. The Trust Committee shall establish a record date, which shall be no earlier than fifteen (15) calendar days prior to the date of the distribution, for the purpose of determining the holders of Borrower Claims Trust Beneficial Interests entitled to receive such distribution and the Borrower Claims Trust Beneficial Interest deemed held for these purposes by the Disputed Claims Reserve.

(b)    At such time as all Cash in the Disputed Claims Reserve shall have been distributed, and Borrower Claim Payments have been made to all holders of Allowed Borrower Claims, any remaining Distributable Cash shall be distributed to the holders of Borrower Claims Trust Beneficial Interests pro rata.

4.4    Delivery of Payments and Distributions. Subject to Bankruptcy Rule 9010, and except as provided in this Section 4.4, all payments and distributions to any holder of an Allowed Borrower Claim shall be made at the address of such holder as set forth on the Borrower Claims Register delivered to the Borrower Claims Trust pursuant to Section 2.4(d), unless the Debtors or the Borrower Claims Trustee has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Borrower Claims Register.

4.5    Undeliverable and Unclaimed Payments and Distributions. In the event that any payment or distribution to any holder of an Allowed Borrower Claim or Allowed Borrower Convenience Claim is returned as undeliverable, the Borrower Claims Trust in

consultation with the Borrower Claims Trustee shall use commercially reasonable efforts to determine the current address of each holder, but no payment or distribution to such holder shall be made unless and until the Borrower Claims Trust has determined the then current address of such holder; provided, however, that all payments and distributions made pursuant to this Borrower Claims Trust Agreement that are unclaimed for a period of six (6) months after payment or distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Borrower Claims Trust and any entitlement of any holder of any Claims to such payments or distributions shall be extinguished and forever barred. The Borrower Claims Trust shall have no further obligation to make any payment or distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such payments or distributions shall be extinguished and forever barred; provided, however, that the holder of such Claim may receive future payments or distributions on account of such Claim by contacting the Borrower Claims Trustee prior to the final distribution by the Borrower Claims Trust pursuant to Section 4.3(b).

4.6    Withholding and Reporting Requirements. The Borrower Claims Trust may withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Trust Beneficiaries. All such amounts withheld and paid to the appropriate Tax Authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such holders for all purposes of the Plan and this Borrower Claims Trust Agreement. The Borrower Claims Trust shall be authorized to collect such tax information from the Trust Beneficiaries including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this Borrower Claims Trust Agreement. To receive distributions under the Plan, the Trust Beneficiaries shall be required to identify themselves to the Borrower Claims Trust and provide tax information and the specifics of their holdings, to the extent the Borrower Claims Trust or such disbursing agent deems appropriate (including completing the appropriate Internal Revenue Service Form W-8 or Internal Revenue Service Form W-9, as applicable to each holder). The Borrower Claims Trust may refuse to make a distribution to any Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a Trust Beneficiary, the Borrower Claims Trust shall make such distribution to which the Trust Beneficiary is entitled, without interest; and provided further that, if the holder fails to comply with such a request within one (1) year, such distribution shall be deemed an unclaimed distribution to be treated as the Trust Committee determines in its discretion; and provided further that, if the Borrower Claims Trust fails to withhold in respect of amounts received or distributable with respect to any such holder and the Borrower Claims Trust is later held liable for the amount of such withholding, such holder shall reimburse the Borrower Claims Trust for such liability including interest, penalties, fines and other additions thereto. Notwithstanding the foregoing, each Trust Beneficiary that receives a distribution under the Plan shall have the sole and exclusive responsibility for the payment of any Taxes imposed by any governmental unit, including income, withholding and other Taxes, on account of such distribution.

4.7    Disbursing Agent. Upon prior approval by the Trust Committee, the Borrower Claims Trustee may engage one or more agents to make payments and distributions.

References in this Borrower Claims Trust Agreement to distributions by the Borrower Claims Trust shall include distributions made by a disbursing agent.

        4.8    <u>Minimum Payments; Other Limitations</u>.  No Cash payment of less than $50.00 shall be made by the Borrower Claims Trust to a holder of an Allowed Claim on account of such Allowed Claim. If a holder of an Allowed Claim would be entitled to receive less than $50.00 as of the time of a particular payment, but would be entitled to receive more than $50.00 in combination with later payments or distributions, the Borrower Claims Trust will combine such payments with later payments or distributions to such holder of an Allowed Claim so that such holder may eventually be entitled to a payment or distribution of at least $50.00 in value.  Whenever any payment of Cash of a fraction of a dollar would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

        4.9    <u>Subordination</u>.  All distributions pursuant to this Borrower Claims Trust Agreement shall be subject to the subordination provisions of the Plan.  The Borrower Claims Trust reserves the right to seek subordination of any Claim in accordance with applicable law.

## ARTICLE V
## TRUST COMMITTEE

        5.1    <u>General</u>.  The affairs of the Borrower Trust shall be managed by, or under the direction, of the Trust Committee, which shall have such powers and authority as are provided in this <u>Article V</u> and as elsewhere set forth in this Borrower Trust Agreement and in the Trust Act.

        5.2    <u>Membership</u>

        (a)    The Trust Committee shall consist of no more than three (3) members, one of whom shall be either a member of the Kessler Settlement Class or a representative of counsel for the Kessler Settlement Class (the "<u>KSC Committee Member</u>").  Each other initial member of the Trust Committee shall be a Borrower (or representative thereof) that holds a Borrower Claims Trust Beneficial Interest appointed by counsel for the Kessler Settlement Class with the consent of the Plan Proponents, which consent shall not be unreasonably withheld (each such other member, a "<u>Trust Beneficiary Committee Member</u>").  Each member of the Trust Committee shall be a natural person at least 18 years of age.  The identity of the initial members of the Borrow Claims Trust Committee, including the KSC Committee Member and the Trust Beneficiary Committee Members, if any, is set forth on <u>Exhibit C</u> hereto.

        (b)    Each member of the Trust Committee shall hold office until the earlier of (i) the termination of the Borrower Claims Trust, (ii) the resignation, death, incapacity or bankruptcy of such member, or (iii) the removal of such member by counsel for the Kessler Settlement Class.  In the event of a vacancy on the Trust Committee resulting from the foregoing clauses (ii) or (iii), a replacement KSC Committee Member or Trust Beneficiary Committee Member, as applicable, shall be appointed by the representatives of the Kessler Settlement Class.

(c)      The Trust Committee shall act by affirmative consent of a majority of the members constituting the Trust Committee, unless otherwise provided in this Borrower Claims Trust Agreement, given at a meeting called for that purpose, or by written consent in lieu of meeting, in accordance with this Borrower Claims Trust Agreement.  Members of the Trust Committee may vote by proxies duly authorized in writing.

(d)      In the event that, following the failure of counsel for the Kessler Settlement Class to appoint a successor member when required pursuant to Section 5.2(b), there is at any time no member on the Trust Committee, the Borrower Claims Trustee may serve as a temporary member of the Trust Committee while promptly filing a motion with the Bankruptcy Court for approval, after notice and hearing, of a successor member as designated by the Borrower Claims Trustee in the motion.

(e)      The Borrower Claims Trustee shall, as frequently as requested by the Trust Committee, provide the Trust Committee with an update (verbal or written, as determined by the Trust Committee) as to the various actions the Borrower Claims Trustee has taken (or declined to take) during the relevant time period, and shall offer the Trust Committee an opportunity to ask questions with respect to such actions or inactions.  The Borrower Claims Trustee shall, on a regular basis, inform the Trust Committee of actions that the Borrower Claims Trustee is pursuing and is planning to pursue in connection with the discharge of the Borrower Claims Trustee's duties and responsibilities pursuant to the Plan Documents, including with respect to the resolution or prosecution of Borrower Claims and Borrower-Related Causes of Action.  The Borrower Claims Trustee shall seek the advice, consent, and approval of the Trust Committee when required by the Plan Documents.

5.3      Authority.  The Trust Committee shall be responsible for exercising the authority and performing the obligations of the Borrower Claims Trust expressly provided for in this Borrower Claims Trust Agreement and otherwise giving effect to the intents and purposes of this Borrower Claims Trust Agreement.  Without limiting the generality of the preceding sentence, and in furtherance thereof, the Trust Committee shall be expressly authorized and empowered to undertake, acting as appropriate through the Borrower Claims Trustee, the following actions on behalf of the Borrower Claims Trust, without the need for any additional approvals, authorization, or consents and without any further notice to or action, order or approval of the Bankruptcy Court; provided, that all such actions are undertaken in a manner consistent with the purposes of the Borrower Claims Trust (a) review and supervise the activities of the Borrower Claims Trustee, (b) have authority to remove and replace the Borrower Claims Trustee in accordance with Article VI hereof and (c) perform all other actions specified to be performed by the Trust Committee in this Borrower Claims Trust Agreement and the Plan Documents.

5.4      Meetings of the Trust Committee.

(a)      Meetings of the Trust Committee may be called by any member of the Trust Committee, by delivery of written notice of the time and place of such special meeting to each member of the Trust Committee by personal delivery, facsimile or other means of electronic communication at least two (2) Business Days prior to such meeting.

(b)    The presence at a meeting of all of the members of the Trust Committee shall constitute a quorum for the transaction of business at such meeting of the Trust Committee, but if less than all members are present at a meeting, any member of the Trust Committee present may adjourn the meeting from time to time.  When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Trust Committee may transact any business which might have been transacted at the original meeting.

(c)    Meetings may be held in person within or without the State of Delaware, telephonically or electronically, and upon such notice as may be determined from time to time in accordance with the rules and procedures adopted by the Trust Committee, and any member of the Trust Committee who participates by such means shall be deemed to be present for purposes of quorum under Section 5.4(b).  Members of the Trust Committee may also act by written consent in lieu of a meeting, which consent may be less than unanimous, provided each of the members of the Trust Committee shall have received notice of the action to be taken by written consent in lieu of a meeting at least two (2) Business Days in advance of the effectiveness thereof.  Any such written consents shall be filed with the minutes of the proceedings of the Trust Committee

(d)    Individual members of the Trust Committee may participate in discussions at meetings, but shall recuse themselves from any confidential discussion designated as such by the other members of the Trust Committee and from voting on any proposed action by the Borrower Claims Trustee that involves (i) an objection to any Borrower Claim held by such member or by the Trust Beneficiary that any member represents, or any Insider (as defined in section 101(31) of the Bankruptcy Code) of such member or Trust Beneficiary (such member, a "Conflicted Member"), (ii) the initiation by the Borrower Claims Trustee of any litigation or prosecution of any Borrower-Related Cause of Action against the Conflicted Member or the Trust Beneficiary represented by such member, (iii) the settlement of any Borrower-Related Cause of Action against the Conflicted Member or the Beneficiary represented by such member, or (iv) any other matter as to which the any member or the Trust Beneficiary represented by such member that presents a conflict of interest.

5.5    Compensation.  Other than (a) a fee of $250.00 per meeting of the Trust Committee or any committee thereof in the case of a Trust Beneficiary Committee Member who is not a Borrower Claims Trust Agent and (b) the reasonable expenses, if any, of attendance at such meetings, the members of the Trust Committee shall not be entitled to compensation for time spent in preparation for and participation in meetings of the Trust Committee or any committee thereof; provided, however, that nothing contained herein shall preclude a member of the Trust Committee who is a Borrower Claims Trust Agent engaged to perform services from charging for services that are professional in nature in connection with a meeting of the Trust Committee.  Fees payable to members of the Trust Committee pursuant to this Section 5.5 shall be satisfied from the Borrower Claims Trust Administrative Reserve.

5.6    Bylaws.  The Trust Committee may adopt bylaws or protocols which shall contain such additional provisions, procedures and protocols for the governance of the Borrower Claims Trust and as shall be determined from time to time by the Trust Committee;

provided that no such provisions, procedures and protocols shall in any way be inconsistent with the terms of this Borrower Claims Trust Agreement or the other Plan Documents.

## ARTICLE VI
## OPERATION OF THE BORROWER CLAIMS TRUST

6.1     Prohibited Activities.

(a)     The Borrower Claims Trustee and the Borrower Claims Trust Agents shall hold the Borrower Claims Trust out as a trust in the process of liquidation, whose activities are limited to the liquidation of the Borrower Claims Trust Assets on behalf, and for the benefit, of the Trust Beneficiaries and the other purposes set forth in this Borrower Claims Trust Agreement. Without limiting the foregoing, the Borrower Claims Trust shall not hold itself out as an investment company, and no part of the Borrower Claims Trust Assets shall be caused by the Borrower Claims Trustee to be used or disposed of in furtherance of any trade or business.

6.2     Resolution of Disputed Borrower Claims.

(a)     The Borrower Claims Trustee, or one or more Borrower Claims Trust Agents designated by the Borrower Claims Trustee if, and to the extent, authorized by the Trust Committee, shall be authorized to resolve, on behalf of the Borrower Claims Trust, all Disputed Borrower Claims without further Bankruptcy Court order, provided, however, that the Borrower Claims Trustee must obtain the prior approval of the Trust Committee in the event the resolution of a Disputed Borrower Claim would result in an Allowed Claim that exceeds $100,000. Without limiting the foregoing, the Borrower Claims Trust may, as successor-in-interest to the Debtors, continue to prosecute objections to Borrower Claims pursuant to the Case Management and Servicing Orders as the same may be amended or replaced from time to time or pursuant to any other order of the Bankruptcy Court, as determined by the Trust Committee.

(b)     If the Borrower Claims Trust and the holder of a Disputed Borrower Claim are unable to reach a settlement on a Disputed Borrower Claim, or if the Borrower Claims Trust determines to disallow a Disputed Borrower Claim, such Disputed Borrower Claim shall be submitted to the Bankruptcy Court for adjudication by way of an objection to such Borrower Claim. If it is determined that the Bankruptcy Court does not have jurisdiction to resolve any Disputed Borrower Claim, then such Disputed Borrower Claim shall be submitted to the District Court or other court of appropriate jurisdiction for resolution. The Borrower Claims Trust shall file with the Bankruptcy Court a quarterly notice of Disputed Borrower Claims resolved and/or settled during the prior quarter following the end of each fiscal quarter, starting with the first complete fiscal quarter after the Effective Date.

(c)     Disputed Borrower Claims that become Allowed, in whole or in part, shall be satisfied exclusively out of the Disputed Claims Reserve, in the manner provided in Article IV, and in the order in which such Disputed Borrower Claims are Allowed. In the event the Cash remaining in the Disputed Claims Reserve shall be insufficient to satisfy all of the Disputed Borrower Claims that have become Allowed and are due to be satisfied with

distributions from the Disputed Claims Reserve, such Disputed Borrower Claims shall be satisfied pro rata in proportion to their respective Allowed Claim amounts.  After (i) all Cash has been distributed from the Disputed Claims Reserve, (ii) no available Cash remains in the Borrower Claims Trust Assets that is not otherwise reserved for use for other purposes in accordance with the provisions of this Borrower Claims Trust Agreement, and (iii) the Trust Committee does not have a reasonable expectation that additional funds will be added to the Borrower Claims Trust Assets in the future, no further distributions shall be made in respect of Disputed Borrower Claims.

(d)    The Trust Committee may, from time to time, make immaterial technical adjustments, or seek an adjusted determination from the Bankruptcy Court of, the Estimated Amounts of the Disputed Borrower Claims.

6.3    Disputed Claims Reserve.

(a)    On or as soon as practicable following the Effective Date, the Borrower Claims Trust shall establish the Disputed Claims Reserve.

(b)    The Borrower Claims Trustee shall, at the direction of the Trust Committee, cause to be added to and maintained in the Disputed Claims Reserve, from time to time, at least that amount of Cash sufficient (i) to make Borrower Claims Payments in respect of all Disputed Borrower Claims or in the case of Borrower Convenience Claims or ETS Borrower Claims, the amount provided in Section 4.1(c), as if such Claims had been Allowed in the amount of their respective Estimated Amounts and (ii) to pay to such holders, other than in respect of Borrower Convenience Claims and ETS Borrower Claims, the amount of all distributions made to holders of Borrower Claims Trust Beneficial Interests since the Effective Date as if such holders of Disputed Borrower Claims had received Borrower Claims Trust Beneficial Interest corresponding to the Estimated Amount of such Claims; provided that Cash shall only be required to be added to the Disputed Claims Reserve to the extent of available Cash included in the Borrower Claims Trust Assets that is not otherwise reserved for use for other purposes in accordance with the provisions of this Borrower Claims Trust Agreement.

(c)    All Cash held in the Disputed Claims Reserve shall be maintained with a United States FDIC insured financial institution, and may be maintained in an interest-bearing account, as the Trust Committee may from time to time determine.  The Cash in the Disputed Claims Reserve shall be held separately and shall not be commingled with any other Cash constituting Borrower Claims Trust Assets.

6.4    Borrower Claims Trust Administrative Reserve.

(a)    On the Effective Date, there shall be established a Borrower Claims Trust Administrative Reserve for the purpose of maintaining Cash allocated and retained by the Borrower Claims Trust from time to time in an amount necessary (subject to the Borrower Claims Trust Budget) to satisfy reasonable costs and expenses of the Borrower Claims Trust and other obligations and liabilities incurred, assumed or reasonably anticipated by the Borrower Claims Trust (or to which the Borrower Claims Trust Assets are otherwise subject) in accordance with the Plan Documents, including without limitation (i) fees and costs incurred

22

in connection with the protection, preservation, liquidation and distribution of the Borrower Claims Trust Assets; (ii) the fees and costs incurred in connection with investigating, prosecuting and resolving Disputed Borrower Claims and other Borrower-Related Causes of Action; (iii) the fees and costs of maintaining the Disputed Claims Reserve, the Borrower Claims Trust Administrative Reserve and the Return Amount Reserve; (iv) reserves for any judgments, settlements or other Cash liabilities or potential liabilities that are or may be payable by the Borrower Claims Trust, as determined by the Trust Committee; (v) any Taxes imposed on the Borrower Claims Trust or in respect of the Borrower Claims Trust Assets or otherwise, including the Disputed Claims Reserve; (vi) costs and expenses of the Borrower Claims Trustee, the Trust Committee, the Borrower Claims Trust Agents, and their respective employees, professionals and advisors (but not including expenses and fees incurred by the Kessler Class Claimants pursuant to the GM Insurance Rights) and (vii) such other costs, fees and expenses as shall be provided for in the Borrower Claims Trust Budget and as may be incurred in carrying out the purposes and intents of this Borrower Claims Trust Agreement. The Administrative Funding Payment shall be used to fund the Borrower Claims Trust Administrative Reserve. In the event the Trust Committee determines that additional Cash is necessary to satisfy the administrative costs and expenses of the Borrower Claims Trust, the Borrower Claims Trustee, at the direction of the Trust Committee, may fund the Borrower Claims Trust Administrative Reserve with other Borrower Available Assets, as necessary or appropriate in furtherance of the purposes thereof, provided that in no event may the Borrower Claims Trust receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities of the Borrower Claims Trust or to maintain the value of the Borrower Claims Trust Assets. Any Cash released from the Borrower Claims Trust Administrative Reserve shall be available for distribution in accordance with the provisions of Article IV.

(c)     Cash in the Borrower Claims Trust Administrative Reserve shall be held separately and shall not be commingled with any other Cash constituting Borrower Claims Trust Assets.

6.5     Return Amount Reserve.

(a)     There shall be established a Return Amount Reserve for the purpose of maintaining Return Amounts received and retained by the Borrower Claims Trust from time to time.

(b)     Notwithstanding anything to the contrary in this Borrower Claims Trust Agreement, if at any time the Trust Committee determines that Cash held in the Return Amount Reserve may be distributed in accordance herewith, the Trust Committee shall direct the Borrower Claims Trustee to make a distribution of such Cash to holders of Borrower Claims Trust Beneficial Interests; provided, however, that such distribution shall (i) in the event the Return Amount was paid to the Borrower Claims Trust by a Trust Beneficiary in connection with its Allowed Borrower Claim against a GMACM Debtor, be made only to Trust Beneficiaries that received a Borrower Claims Payment in respect of Allowed GMACM Claims, pro rata in accordance with the Allowed GMACM Claim corresponding to such Trust Beneficiary's Borrower Claims Trust Beneficial Interest, or (ii) in the event the Return Amount was paid to the Borrower Claims Trust by a Trust Beneficiary in connection with its Allowed

Borrower Claim against a RFC Debtor, be made only to Trust Beneficiaries that received a Borrower Claims Payment in respect of Allowed RFC Claims, pro rata in accordance with the Allowed RFC Claim corresponding to such Trust Beneficiary's Borrower Claims Trust Beneficial Interest; provided, further, that prior to making any distribution pursuant to this Section 6.5(b), the Borrower Claims Trustee shall first fund the Borrower Claims Trust Administrative Reserve with Cash from the Return Amount Reserve necessary to satisfy the costs and expenses associated with such distribution.

(c)     All Cash held in the Return Amount Reserve shall be maintained with a United States FDIC insured financial institution, and may be maintained in an interest-bearing account, as the Trust Committee may from time to time determine.  The Cash in the Return Amount Reserve shall be held separately and shall not be commingled with any other Cash constituting Borrower Claims Trust Assets.

6.6     <u>Reporting</u>.  The Borrower Claims Trust shall cause to be prepared, and shall post to the Borrower Claims Trust Website, on a semi-annual basis, reports containing the following information regarding the activity of the Borrower Claims Trust during the most recently completed fiscal semi-annual period, and in the report prepared after the end of each Fiscal Year, the most recently completed Fiscal Year and since the Effective Date:

(a)     The Borrower Claims Payments made and Distributable Cash distributed during the relevant period and in the aggregate;

(b)     The amount of Return Amounts added to the Borrower Claims Trust Assets and Cash distributed from the Return Amount Reserve during the relevant period and in the aggregate;

(c)     Cash added to or withdrawn from the Borrower Claims Trust Administrative Reserve during the relevant period, and Cash held in the Borrower Claims Trust Administrative Reserve as of the end of such period;

(d)     the amount of Disputed Borrower Claims resolved by the Borrower Claims Trust during the relevant period, including, separately, the amounts of the Claims that were Allowed, in whole or in part, including both the Estimated Amounts thereof and amounts in which such Claims were Allowed, and the Estimated Amounts of the Claims that were not Allowed, in whole or in part, the amounts of the Disputed Borrower Claims remaining to be resolved as of the end of such period;

(e)     Cash distributed to holders of Disputed Borrower Claims that were Allowed, in whole or in part, during the relevant period, and the Cash in respect thereof released from the Disputed Claims Reserve, during the relevant period, and Cash held in the Disputed Claims Reserve as of the end of such period; and

(f)     such other information as the Trust Committee may determine to include from time to time.

6.7     <u>Borrower Claims Trust Agents; Employees</u>.

(a)      The Borrower Claims Trust may employ or engage such Borrower Claims Trust Agents, including counsel, advisors, administrators and other professionals (which may have represented parties in the Chapter 11 Cases, to the extent permissible by applicable law), as deemed reasonably necessary or desirable by the Borrower Claims Trustee to carry out the intents and purposes of the Borrower Claims Trust, without further order from the Bankruptcy Court, upon prior approval by the Trust Committee.  Borrower Claims Trust Agents shall be appointed, and their appointment may be terminated, by the Borrower Claims Trustee, in each case upon prior approval by the Trust Committee, unless authority in respect thereof is delegated by the Trust Committee to the Borrower Claims Trustee.  Borrower Claims Trust Agents shall be compensated at standard billing rates in effect at the time of service or such other rate of compensation that is reasonable and agreed to by the Borrower Claims Trustee, with the approval of the Trust Committee, and shall be paid without further motion, application, notice or other order of the Bankruptcy Court, except described in Section 6.7(c). All reasonable out-of-pocket expenses incurred by the Borrower Claims Trust Agents shall be reimbursed.

(b)      The Borrower Claims Trustee shall be authorized to hire such employees he or she deems appropriate, subject to such limitations, conditions and qualifications as may be imposed by the Trust Committee.

(c)      On a monthly basis, or as otherwise agreed by the Borrower Claims Trustee with approval of the Trust Committee, the Borrower Claims Trustee and each Borrower Claims Trust Agent performing services for the Borrower Claims Trust shall provide to the Borrower Claims Trust Committee a statement setting forth his, her or its aggregate fees and expenses (to the extent unbilled and outstanding) incurred in connection with its engagement, together with reasonable documentation of such expenses (any such report, a "Fee and Expense Report").  Such Borrower Claims Trust Agents shall be entitled to receive payment of such fees and expenses not later than 10 days after providing the Fee and Expense Report to the Trust Committee (the "Fee Notice Period").  Notwithstanding the foregoing, if any member of the Trust Committee objects to such Fee and Expense Report within the Fee Notice Period, the Borrower Claims Trust Agent and the Trust Committee may seek to resolve such objection on a consensual basis.  If a majority of the members of the Trust Committee and the Borrower Claims Trust Agent are unable to reach a consensual resolution within 30 days of the Trust Committee member's objection, the Borrower Claims Trust Agent shall be entitled to payment of the contested portion of its fees and/or expenses only pursuant to a Final Order of the Bankruptcy Court after notice and opportunity for a hearing, provided that the Borrower Claims Trust Agent shall be entitled to payment of the uncontested portion, if any, of such fees and expenses upon expiration of the Fee Notice Period.

## ARTICLE VII
## BORROWER CLAIMS TRUSTEE

7.1      Borrower Claims Trustee Generally.   The Borrower Claims Trustee shall have the general executive responsibility for the conduct of the affairs of the Borrower Claims Trust, and shall have such other functions, authority and duties as are provided in this Article VII and as elsewhere set forth in this Borrower Claims Trust Agreement and in the Trust Act, or as may be prescribed by the Trust Committee.  The Borrower Claims Trustee shall report to

Trust Committee, which shall be entitled to remove and replace the Borrower Claims Trustee in accordance with Section 7.2 .

7.2    Appointment and Removal of Borrower Claims Trustee.

(a)    By execution hereof, the Borrower Claims Trustee accepts his trusteeship of the Borrower Claims Trust on the terms set forth herein. The Borrower Claims Trustee shall be a natural person at least 18 years of age, and upon his or her appointment, shall be deemed a trustee under the Trust Act, with all privileges and immunities appurtenant thereto, and, as necessary or applicable, shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(b)    The Borrower Claims Trustee shall hold office until the earlier of (i) the termination of the Borrower Claims Trust, (ii) his or her resignation, death or incapacity or (iii) his or her removal in accordance with this Borrower Claims Trust Agreement.

(c)    The Borrower Claims Trustee may resign upon sixty (60) days' prior written notice to the Trust Committee. The Borrower Claims Trustee may be removed by the Trust Committee (x) for Cause, upon motion filed with the Bankruptcy Court, with the consent of a majority of the members of the Trust Committee (which removal shall be effective upon order of the Bankruptcy Court); or (y) by unanimous action of the members of the Trust Committee with or without Cause at any time; provided, that (i) in the case of removal pursuant to clause (y), the Trust Committee shall give notice of removal to the Borrower Claims Trustee no less than fifteen (15) days prior to the effectiveness of the Borrower Claims Trustee's removal, and (ii) notice of removal of a Borrower Claims Trustee shall be promptly filed with the Bankruptcy Court and posted to the Borrower Claims Trust Website.

(d)    In the event of a vacancy of the position of the Borrower Claims Trustee, whether as a result of the resignation, death, disability or removal of such Borrower Claims Trustee, a successor Borrower Claims Trustee shall be promptly appointed by the Trust Committee. Notice of the appointment of any replacement Borrower Claims Trustee shall be filed with the Bankruptcy Court and posted to the Borrower Claims Trust Website. If a majority of the members of the Trust Committee cannot agree on designation of such successor within 30 days after the occurrence of the event giving rise to the vacancy, the Bankruptcy Court shall determine such successor upon motion filed by any party in interest with the consent of any member of the Trust Committee.

(e)    Immediately upon appointment of any successor Borrower Claims Trustee, all rights, powers, duties, authority, and privileges of the predecessor Borrower Claims Trustee hereunder shall be vested in and undertaken by the successor Borrower Claims Trustee without any further act by any party, and the successor Borrower Claims Trustee shall not be liable personally for any act or omission of the predecessor Borrower Claims Trustee.

(f)    If the Borrower Claims Trustee is removed for Cause, he or she shall not be entitled to any accrued but unpaid fees, expenses or other compensation for services performed under this Borrower Claims Trust Agreement. If the Borrower Claims Trustee resigns or is removed or replaced for a reason other than for Cause, he or she shall be entitled

26

to all accrued but unpaid fees, expenses, and other compensation for services performed under this Borrower Claims Trust Agreement, to the extent incurred, arising or relating to events occurring before his or her removal or resignation, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Borrower Claims Trustee.

       7.3    <u>Borrower Claims Trustee Compensation</u>.  The Borrower Claims Trustee shall be (a) compensated for services in the administration of the Borrower Claims Trust from the Borrower Claims Trust Administrative Reserve at a fixed monthly rate and (b) reimbursed from the Borrower Claims Trust Administrative Reserve for reasonable and customary costs and expenses commensurate with U.S. Trustee guidelines in effect from time to time.

       7.4    <u>Authority of the Borrower Claims Trustee</u>.

       (a)    The Borrower Claims Trustee shall be responsible for performing the obligations of the Borrower Claims Trust expressly provided for in this Borrower Claims Trust Agreement, otherwise giving effect to the intents and purposes of this Borrower Claims Trust Agreement and exercising the rights of trustees under the Trust Act.

       (b)    Without limiting the generality of the preceding subsection, and in furtherance thereof, the Borrower Claims Trustee shall be expressly authorized and empowered to undertake, acting as appropriate through Borrower Claims Trust Agents, the following actions on behalf of the Borrower Claims Trust, and, except as otherwise provided in this Trust Agreement with respect to approvals, authorizations, or consents of the Trust Committee, without the need for any additional approvals, authorization, or consents, and without any further notice to or action, order or approval of the Bankruptcy Court, except as otherwise provided herein; <u>provided</u>, that all such actions are undertaken in a manner consistent with the purposes of the Borrower Claims Trust:

       (i)    to hold, manage and monetize (to the extent such assets are non-Cash), and distribute the Borrower Claims Trust Assets for the benefit of Trust Beneficiaries, whether such beneficiaries' Claims are Allowed on or after the Effective Date;

       (ii)    to hold the right to vote any claim or interest in any case under the Bankruptcy Code and receive distributions therein on behalf of the Borrower Claims Trust;

       (iii)    to the extent consistent with the terms of the Plan, to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the Borrower Claims Trust Assets, including Borrower-Related Causes of Action;

       (iv)    to engage in litigation in the name of the Borrower Claims Trust and file or pursue Borrower-Related Causes of Action and objections to Borrower Claims (including seeking to settle or disallow, recharacterize, reclassify, subordinate, or estimate any of them), and compromise, adjust, arbitrate, sue on or defend, prosecute, abandon or otherwise deal with, any Borrower Claim or Borrower-Related Cause of Action;

(v)      to assert, enforce, waive or release rights, defenses, privileges or immunities related to the Borrower Claims Trust Assets or the Borrower Claims;

(vi)     to perform the duties, exercise the powers and asset the rights of a trustee under section 704 and section 1106 of the Bankruptcy Code, including holding and asserting applicable privileges and defenses with respect to the Borrower Claims, filing, commencing or prosecuting (x) objections to Borrower Claims under section 502 of the Bankruptcy Code, (y) turnover actions under sections 542 and 543 of the Bankruptcy Code and (z) avoidance actions against Borrowers under sections 544, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code;

(vii)    to establish and administer the Borrower Claims Trust Administrative Reserve;

(viii)   to establish and administer the Disputed Claims Reserve;

(ix)     to establish and administer the Return Amount Reserve;

(x)      subject to Section 7.1, to appoint, engage, review, supervise, remove, replace and determine the compensation payable to Borrower Claims Trust Agents and waive any conflicts of interest as deemed necessary or appropriate in the discretion of the Borrower Claims Trustee;

(xi)     to settle or otherwise resolve Disputed Borrower Claims;

(xii)    to monitor and enforce the implementation of the Plan insofar as relating to the Borrower Claims Trust Assets;

(xiii)   to file all Tax Returns and regulatory forms, returns, reports and other documents and financial information required to be filed with respect to the Borrower Claims Trust, including filing Tax Returns as a qualified settlement fund;

(xiv)    to request any appropriate Tax determination with respect to the Borrower Claims Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xv)     to seek the examination of any Entity under, and subject to, the provisions of the Bankruptcy Rules, including Bankruptcy Rule 2004;

(xvi)    to abandon any property that the Borrower Claims Trustee determines in his or her reasonable discretion to be de minimis value or otherwise burdensome to the Borrower Claims Trust, including any pending adversary proceeding or other legal action (by abandonment, dismissal, or any other discontinuance thereof);

(xvii)   to make Borrower Claims Payments to holders of Allowed Borrower Claims and distributions of Distributable Excess Cash to holders of Borrower Claims Trust Beneficial Interests;

(xviii) to make Cash distributions from the Return Amount Reserve in accordance with Section 6.5;

(xix)   to prepare and disseminate reports, as provided in <u>Section 6.6</u>;

(xx)   to determine and satisfy all liabilities created, incurred or assumed by the Borrower Claims Trust, including all expenses and other payments relating to the Borrower Claims Trust Assets, including reasonable fees and expenses of the Borrower Claims Trustee pursuant to this Borrower Claims Trust Agreement;

(xxi)   to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Borrower Claims Trust and execute any documents or pleadings related to the liquidation of the Borrower Claims Trust Assets or other matters related to the Borrower Claims Trust;

(xxii)   to borrow funds on behalf of, and solely as a liability of, the Borrower Claims Trust, which loans may be secured by the Borrower Claims Trust Assets but shall be without recourse to the Borrower Claims Trustee in his or her individual capacity, as are necessary to enable the Borrower Claims Trustee to discharge his or her duties under this Borrower Claims Trust Agreement;

(xxiii)   to establish and maintain bank accounts and terminate such accounts on behalf of the Borrower Claims Trust;

(xxiv)   to set off amounts owed to the Debtors against distributions to Trust Beneficiaries;

(xxv)   to bring suits or defend itself against such suits, if any, in connection with any matter arising from or related to the Plan Documents that affects in any way the rights or obligations of the Borrower Claims Trust, the Trust Beneficiaries (whether such Borrower Claims are Allowed as of the Effective Date or become Allowed at any subsequent time), in their capacities as such;

(xxvi)   to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Borrower Claims Trustee, and, if so determined by the Borrower Claims Trustee, any Borrower Claims Trust Agents, and such other insurance as the Borrower Claims Trustee determines as appropriate for the circumstances from time to time;

(xxvii) to invest Borrower Claims Trust Assets (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684;

(xxviii)to take all actions necessary and appropriate to minimize any adverse Tax consequences to the holders of Allowed Borrower Claims; <u>provided</u> that such actions do not result in an adverse Tax consequence to the Borrower Claims Trust and

are consistent with and are not contrary to the treatment of the Borrower Claims Trust as a "qualified settlement fund" for United States federal income Tax purposes;

(xxix)   to remove and replace the Delaware Trustee;

(xxx)   to protect and enforce the rights of the Borrower Claims Trust Assets by any lawful method deemed appropriate by the Borrower Claims Trustee, including by judicial proceedings or pursuant to applicable bankruptcy, insolvency, moratorium or similar law or general principles of equity;

(xxxi) to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions, as determined by the Borrower Claims Trustee to be necessary or appropriate to effectuate the terms of the Plan regarding the Borrower Claims Trust Assets following the Effective Date; and

(xxxii) to take such other and further actions, including, transfers or other corporate transactions, as determined by the Borrower Claims Trustee to be necessary or appropriate, in furtherance of the purposes of the Plan Documents in respect of the Borrower Claims Trust Assets as are not inconsistent with this Borrower Claims Trust Agreement or the other Plan Documents.

(c)     The Borrower Claims Trustee shall comply with all applicable laws, shall act to maximize the distributions to Trust Beneficiaries to the extent reasonably possible under the circumstances and in furtherance of the purposes of this Borrower Claims Trust.

(d)     To the extent provided in the Cooperation Agreement, certain of the functions of the Borrower Claims Trust may be performed by the Liquidating Trust on behalf of the Borrower Claims Trust in accordance with the terms of the Cooperation Agreement.

7.5     Limitations on Borrower Claims Trustee Authority.  Notwithstanding any provision in this Borrower Claims Trust Agreement to the contrary, the Borrower Claims Trustee shall not do or undertake any of the following on behalf of the Borrower Claims Trust without the prior approval of the Trust Committee:

(a)     Guarantee any debt;

(b)     Loan to any Person, any portion of the Borrower Claims Trust Assets;

(c)     Transfer or commingle Borrower Claims Trust Assets with any account of another trust established under the Plan;

(d)     Make any transfer, assignment or distribution of Borrower Claims Trust Assets, other than as expressly authorized hereunder; or

(e)     Permit or cause the Borrower Claims Trust to hold 50% or more of the stock (in either vote or value) of any Entity that is treated as a corporation for federal income tax purposes or have any interest in an Entity that is treated as a partnership for federal income

tax purposes, unless such stock or partnership interest was obtained involuntarily or as a matter of practical economic necessity, including enforcement of and execution of judgments, in order to preserve the value of the Borrower Claims Trust Assets.

       7.6    <u>Conflicts of Interest</u>.  If the Borrower Claims Trustee determines, in his or her reasonable discretion, that he or she has a material conflict of interest with respect to the settlement of a Borrower Claim, the resolution or prosecution of a Borrower-Related Cause of Action, or any other matter, the Borrower Claims Trustee shall select a designee approved by the Trust Committee to act on behalf of the Borrower Claims Trust solely with respect to such matter (the "<u>Designee</u>"), with such Designee's authority to act on behalf of the Borrower Claims Trust to terminate upon the matter's conclusion.  If the Designee files a pleading, motion, or other paper with a court or tribunal on behalf of the Borrower Claims Trust, it shall do so in its own name as "Designee of the ResCap Borrower Claims Trust".

       7.7    <u>Fiduciary Duty and Standard of Care</u>.

       (a)    The Borrower Claims Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Borrower Claims Trust and not otherwise, and in accordance with applicable law, including the Trust Act.

       (b)    The Borrower Claims Trustee in the exercise of his or her duties hereunder shall act in accordance with principles of good faith and fair dealing.

       7.8    <u>Bond or Insurance</u>.  The Borrower Claims Trustee shall obtain a trustee's bond (a "<u>Trustee's Bond</u>") from an Entity approved by the Trust Committee to protect the Trust Beneficiaries with respect to his obligations as Borrower Claims Trustee.  The premiums for such the Trustee's Bond shall be paid with Borrower Claims Trust Assets as an expense of administering the Borrower Claims Trust.  The amount of the Trustee's Bond shall be determined based upon the amount of Cash under the control of the Borrower Claims Trustee at any time, and shall be adjusted from time to time in accordance with Cash receipts and disbursements by the Borrower Claims Trust.  Alternatively, with approval of the Trust Committee, the Borrower Claims Trustee may satisfy the requirement to obtain a Trustee's Bond with insurance coverage for the liabilities, duties and obligations of the Borrower Claims Trustee and his agents, employees, and professionals (in the form of an errors and omissions policy or otherwise) which may, at the option of the Borrower Claims Trustee unless unanimously disapproved by the Trust Committee, remain in effect for a reasonable period after the conclusion of the Borrower Claims Trustee's service.  In the event the Borrower Claims Trustee elects to satisfy the requirements of this <u>Section 7.9</u> with insurance coverage, such insurance coverage shall be maintained by the Borrower Claims Trust in accordance with <u>Section 2.11</u>.

## ARTICLE VIII
## <u>DELAWARE TRUSTEE</u>

       8.1    <u>Appointment</u>.  The Delaware Trustee shall act solely for the purpose of complying with the requirement of section 3807 of the Trust Act, and its powers and

obligations hereunder shall become effective upon its execution of this Borrower Claims Trust Agreement.

8.2    Powers.

(a)    The duties and responsibilities of the Delaware Trustee shall be limited solely to (i) accepting legal process served on the Borrower Claims Trust in the State of Delaware, (ii) the execution of any certificates required to be filed with the office of the Delaware Secretary of State that the Delaware Trustee is required to execute under section 3811 of the Trust Act (including without limitation the Certificate of Trust), and (iii) any other duties specifically allocated to the Delaware Trustee in this Borrower Claims Trust Agreement. Except as provided in the foregoing sentence, the Delaware Trustee shall have no management responsibilities or owe any fiduciary duties to the Borrower Claims Trust, the Borrower Claims Trustee, or the Trust Beneficiaries. The filing of the Certificate of Trust with the Secretary of State of the State of Delaware as provided under the Trust Act is hereby ratified.

(b)    By its execution hereof, the Delaware Trustee accepts the trusteeship of the Borrower Claims Trust on the terms set forth herein. Except as otherwise expressly set forth in Section 8.2(a), the Delaware Trustee shall not have any duty or liability with respect to the administration of the Borrower Claims Trust, the investment of the Borrower Claims Trust Assets or the distribution of the Borrower Claims Trust Assets to the Trust Beneficiaries, and no such duties shall be implied. The Delaware Trustee shall not be liable for the acts or omissions of the Borrower Claims Trustee, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Borrower Claims Trustee under this Borrower Claims Trust Agreement.  The Delaware Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Delaware Trustee shall not be personally liable under any circumstances, except for its own gross negligence, bad faith or willful misconduct.  Without limiting the foregoing:

(i)    the Delaware Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence;

(ii)    the Delaware Trustee shall not have any duty or obligation to manage or deal with the Borrower Claims Trust Assets, or to otherwise take or refrain from taking any action under the Borrower Claims Trust Agreement except as expressly provided by the terms hereof, and no implied trustee duties or obligations shall be deemed to be imposed on the Delaware Trustee;

(iii)    no provision of this Borrower Claims Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Delaware Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iv)   the Delaware Trustee shall not be personally liable for the validity or sufficiency of this Borrower Claims Trust Agreement or for the due execution hereof by the other parties hereto;

(v)   the Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect;

(vi)   the Delaware Trustee may request the Borrower Claims Trustee to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vii)   in the exercise of its duties hereunder, the Delaware Trustee (I) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and (II) may consult with nationally recognized counsel selected by it in good faith and with due care and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel; and

(viii)   the Delaware Trustee acts solely as Delaware Trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Borrower Claims Trust Agreement shall look only to the Borrower Claims Trust Assets for payment or satisfaction thereof;

(ix)   the Delaware Trustee shall not be personally liable for any representation, warranty, covenant, agreement, or indebtedness of the Borrower Claims Trust;

(x)   the Delaware Trustee shall not incur liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the Borrower Claims Trustee, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon; and

(xi)    the Delaware Trustee shall not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Agreement under any circumstances.

8.3    Compensation. The Delaware Trustee shall be entitled to receive compensation out of Borrower Claims Trust Administrative Reserve for the services that the Delaware Trustee performs in accordance with this Borrower Claims Trust Agreement in accordance with such fee schedules as shall be agreed from time to time by the Delaware Trustee and the Borrower Claims Trustee, and if so required by the Plan Documents or applicable law, as approved by the Bankruptcy Court. The Delaware Trustee may also consult with counsel (who may be counsel for the Borrower Claims Trustee) with respect to those matters that relate to the Delaware Trustee's role as the Delaware Trustee of the Borrower Claims Trust, and the reasonable legal fees incurred in connection with such consultation shall be reimbursed out of Borrower Claims Trust Administrative Reserve.

8.4    Duration and Replacement.   The Delaware Trustee shall serve for the duration of the Borrower Claims Trust or until the earlier of (i) the effective date of the Delaware Trustee's resignation, or (ii) the effective date of the removal of the Delaware Trustee. The Delaware Trustee may resign at any time by giving thirty (30) days' written notice to the Borrower Claims Trustee; provided, however, that such resignation shall not be effective until such time as a successor Delaware Trustee has accepted appointment. The Delaware Trustee may be removed with the Borrower Claims Trustee, by providing thirty (30) days' written notice to the Delaware Trustee; provided, however, that such removal shall not be effective until such time as a successor Delaware Trustee has accepted appointment. Upon the resignation or removal of the Delaware Trustee, the Borrower Claims Trustee shall appoint a successor Delaware Trustee.  If no successor Delaware Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the Delaware Trustee may petition the Bankruptcy Court for the appointment of a successor Delaware Trustee. Any successor Delaware Trustee appointed pursuant to this Section shall be eligible to act in such capacity in accordance with this Borrower Claims Trust Agreement and, following compliance with this Section, shall become fully vested with the rights, powers, duties and obligations of its predecessor under this Borrower Claims Trust Agreement, with like effect as if originally named as Delaware Trustee. Any such successor Delaware Trustee shall notify the Delaware Trustee of its appointment by providing written notice to the Delaware Trustee and upon receipt of such notice, the Delaware Trustee shall be discharged of its duties herein.  Any such successor Delaware Trustee shall also file an amendment to the Certificate of Trust as required by the Trust Act.

## ARTICLE IX
## TAX MATTERS

9.1    Tax Treatment.

(a)    For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Borrower Claims Trustee and the Trust Beneficiaries) shall treat the Borrower Claims Trust as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-2.

9.2     Tax Reporting.

(a)     The Borrower Claims Trust shall file Tax Returns treating the Borrower Claims Trust as a qualified settlement fund and in accordance with the Plan.  The Borrower Claims Trust also shall timely file (or cause to be timely filed) and/or provide to the Trust Beneficiaries any other statements, returns, or disclosures relating to the Borrower Claims Trust that are required by any Governmental Unit.

(b)     The Borrower Claims Trust may request an expedited determination of Taxes of the Borrower Claims Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Borrower Claims Trust for all taxable periods through the dissolution of the Borrower Claims Trust.

9.3     Tax Payment.  The Borrower Claims Trust shall be responsible for the payment, out of the Borrower Claims Trust Administrative Reserve, of any Taxes imposed on the Borrower Claims Trust or the Borrower Claims Trust Assets, including the Disputed Claims Reserve.  In the event, and to the extent, that any Cash retained on account of Disputed Borrower Claims in the Disputed Claims Reserve is insufficient to pay any portion of such Taxes attributable to the taxable income arising from the assets held in the Disputed Claims Reserve, such Taxes shall be (x) reimbursed from any subsequent Cash amounts retained on account of the respective classes of Disputed Borrower Claims or (y) to the extent such Disputed Borrower Claims subsequently have been resolved, deducted from any amounts distributable by the Borrower Claims Trust as a result of the resolutions of such Disputed Borrower Claims.

## ARTICLE X
## LIMITATION OF LIABILITY AND INDEMNIFICATION

10.1     Limitation of Liability.

(a)     None of the Delaware Trustee, the Borrower Claims Trustee, the members of the Trust Committee or any Borrower Claims Trust Agent, or their respective advisors or professionals, shall be liable to the Borrower Claims Trust or any Trust Beneficiary for any damages arising out of the creation, operation or termination of the Borrower Claims Trust, including actions taken or omitted in fulfillment of his or her duties with respect to the Borrower Claims Trust, except in the case of such party's gross negligence, bad faith or willful misconduct; provided, that in no event will any such party be liable for punitive, exemplary, consequential or special damages under any circumstances.  Furthermore, none of the Delaware Trustee, the Borrower Claims Trustee or members of the Trust Committee shall be liable to the Borrower Claims Trust or any Trust Beneficiary for any action taken in good faith reliance upon the advice of counsel or other Borrower Claims Trust Agent.

(b)     None of the Delaware Trustee, the Borrower Claims Trustee, the members of the Trust Committee or the Borrower Claims Trust Agents, when acting in such capacities, shall be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any person, other than the Borrower Claims Trust, in connection with the affairs of the Borrower Claims Trust to the fullest extent provided under section 3803 of the Trust

Act, and all persons claiming against any of the Delaware Trustee, the Borrower Claims Trustee, or Borrower Claims Trust Agent, or otherwise asserting claims of any nature in connection with affairs of the Borrower Claims Trust, shall look solely to the Borrower Claims Trust Assets for satisfaction of any such claims.

(c)     Nothing contained in the Plan Documents shall be deemed to be an assumption by the Delaware Trustee, the Borrower Claims Trustee, the Trust Committee or any Borrower Claims Trust Agent of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by any of them to assume or accept any such liability, obligation or duty.

10.2    Indemnification.

(a)     The Delaware Trustee, the Borrower Claims Trustee, the members of the Trust Committee, and their respective affiliates, and the officers, directors, partners, managers, members, and employees of each of them, as the case may be (all persons so entitled to indemnification, collectively, the "Covered Parties"), shall be indemnified and held harmless, to the fullest extent permitted by law by the Borrower Claims Trust from and against any and all losses, claims, taxes, damages, reasonable expenses and liabilities (including liabilities under state or federal securities laws) of any kind and nature whatsoever, to the extent that such expenses arise out of or are imposed upon or asserted against such indemnified persons with respect to the creation, operation or termination of the Borrower Claims Trust or the execution, delivery or performance of this Borrower Claims Trust Agreement or the transactions contemplated hereby and shall not be liable for actions taken or omitted in their capacity, as Delaware Trustee, Borrower Claims Trustee or a member of the Trust Committee, on behalf of, or in fulfillment of their duties with respect to, the Borrower Claims Trust, except those acts that are determined by Final Order to have arisen out of their own gross negligence, bad faith or willful misconduct, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities regarding the implementation or administration of the Plan Documents or the discharge of their respective duties hereunder or thereunder or in respect thereof, except for any actions or inactions that are determined by Final Order to have arisen out of their own gross negligence, bad faith, or willful misconduct.

(b)     The Covered Parties shall be entitled to obtain advances from the Borrower Claims Trust to cover their reasonable expenses of defending themselves in any action threatened or brought against them as a result of the acts or omissions, actual or alleged, of any such party in its capacity as such; provided, however, that the Covered Parties receiving such advances shall repay the amounts so advanced to the Borrower Claims Trust immediately upon the entry of a Final Order finding that such parties were not entitled to any indemnity under the provisions of this Section 10.2.

(c)     Any claim of the Covered Parties to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Borrower Claims Trust Assets, bonds (if any) or any applicable insurance that the Borrower Claims Trust has purchased, as provided in Section

2.10, and no recourse may be had to the Liquidating Trust, the Released Parties or any creditor in the Chapter 11 Cases.

(d)    The Borrower Claims Trust may also determine to provide indemnification to Borrower Claims Trust Agents and their respective officers, directors, partners, managers, members and employees, on such terms as the Borrower Claims Trustee may determine, provided that any claim for indemnification shall be satisfied solely from the Borrower Claims Trust Assets or insurance.

## ARTICLE XI
## DURATION OF BORROWER CLAIMS TRUST

11.1    Duration.

(a)    The Borrower Claims Trust shall be dissolved as soon as practicable after the date that is the earliest to occur of: (i) the distribution of all Borrower Claims Trust Assets pursuant to the Plan Documents, (ii) the determination of the Trust Committee that the administration of the Borrower Claims Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all the distributions required to be made under this Borrower Claims Trust Agreement have been completed and, in each case, all Borrower Claims have been resolved by Final Order, written agreement or pursuant to the Plan Documents; provided, however, that in no event shall the Borrower Claims Trust be dissolved later than three (3) years from the Effective Date, unless the Bankruptcy Court, upon motion within the six (6) months prior to the third (3rd) anniversary of the Effective Date (or within six (6) months prior to the end of an extension period), determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidation of the Borrower Claims Trust Assets (without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a qualified settlement fund for United States federal income tax purposes).

(b)    If at any time the Trust Committee determines, in reliance upon its professionals, that the expense of administering the Borrower Claims Trust, including the making of a final distribution to the Trust Beneficiaries, is likely to exceed the value of the assets remaining in the Borrower Claims Trust, the Borrower Claims Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Borrower Claims Trust, (ii) donate any balance to an organization selected by the Trust Committee which is described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code, as provided in Section 2.7(b) hereof, and (iii) dissolve the Borrower Claims Trust.

11.2    Post-Termination.    After the termination of the Borrower Claims Trust and solely for the purpose of liquidating and winding up the affairs of the Borrower Claims Trust, the Borrower Claims Trustee and the Delaware Trustee shall continue to act as such until their duties have been fully performed.    Upon distribution of all the Borrower Claims Trust Assets, the Borrower Claims Trustee shall designate the Liquidating Trust (or an agent thereof) to continue to retain all books and records pertaining to the Borrower Claims Trust Assets that have been delivered to the Liquidating Trust on the Effective Date, or created and

maintained by the Borrower Claims Trust thereafter, subject to the provisions of the Cooperation Agreement.

11.3   <u>Destruction of Books and Records</u>.  If so determined by the Borrower Claims Trustee, or absent such determination, in the discretion of the Liquidating Trust or agent thereof appointed pursuant to <u>Section 11.2</u>, all books and records pertaining to the Borrower Claims Trust and the Trust Beneficiaries that have been created and maintained by the Borrower Claims Trust after the Effective Date may be destroyed at any time following the date that is six (6) years after the final distribution of Borrower Claims Trust Assets (unless such records and documents are necessary to fulfill the Borrower Claim Trust's remaining obligations) subject to the terms of any joint prosecution and common interests agreement(s) to which the Borrower Claims Trust may be a party, or such earlier date as set by the Bankruptcy Court; <u>provided</u>, <u>however</u>, that the Borrower Claims Trust or the designee appointed pursuant to <u>Section 11.2</u> shall obtain an order of the Bankruptcy Court before disposing of any books and records that are reasonably likely to pertain to pending litigation in which the Borrower Claims Trust or Borrower Claims Trustee is involved.

11.4   <u>Discharge</u>.  Except as otherwise specifically provided herein, upon the final distribution of Borrower Claims Trust Assets and the filing by the Delaware Trustee of a Certificate of Cancellation with the Secretary of State of the State of Delaware, the Delaware Trustee and the Borrower Claims Trustee shall be deemed discharged and have no further duties or obligations hereunder, and the Borrower Claims Trust will be deemed to have been dissolved.  In the event that there are Borrower Claims Trust Assets at the termination of the Borrower Claims Trust, the Trust Committee shall cause to be donated such Borrower Claims Trust Assets to a charitable organization of the Borrower Claims Trustee's choice described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code, as provided in <u>Section 2.7(b)</u>.

## ARTICLE XII
## <u>MISCELLANEOUS PROVISIONS</u>

12.1   <u>Governing Law</u>.  This Borrower Claims Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to conflicts of law).

12.2   <u>Jurisdiction</u>.  Subject to the proviso below, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Borrower Claims Trust, including, without limitation, the administration and activities of the Borrower Claims Trust, <u>provided</u>, <u>however</u>, that notwithstanding the foregoing or anything to the contrary set forth in the Plan, the Borrower Claims Trustee shall have power and authority to bring (or cause to be brought) any action in any court of competent jurisdiction to prosecute any Borrower-Related Causes of Action.

12.3   <u>Severability</u>.  In the event that any provision of this Borrower Claims Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Borrower Claims Trust Agreement or the application of such provision to

persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Borrower Claims Trust Agreement shall be valid and enforceable to the fullest extent permitted by law.

    12.4    Notices.  Any notice or other communication required or permitted to be made under this Borrower Claims Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile, sent by nationally recognized overnight delivery service, or mailed by first-class mail:

      (i)    if to the Delaware Trustee, to:

        [_____]
        [_____]
        [_____]
        Attention: Trust Administration

      (iii)    if to the Borrower Claims Trustee, to:

        [_____]
        [_____]
        [_____]

      (iii)    if to any Trust Beneficiary, to the last known address of such Trust Beneficiary according to the records of the Borrower Claims Trust.

    12.5    Headings.  The headings contained in this Borrower Claims Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Borrower Claims Trust Agreement or of any term or provision hereof.

    12.6    Plan Documents.  Nothing contained herein shall modify the terms of any other Plan Document, which are intended to be supplemented by the terms of this Borrower Claims Trust Agreement.  However, to the extent that the terms of any of the other Plan Documents are inconsistent with the terms set forth in this Borrower Claims Trust Agreement with respect to the Borrower Claims Trust, then the terms of this Borrower Claims Trust Agreement shall govern.

    12.7    Cooperation.  The Debtors and the Liquidating Trust shall reasonably cooperate with the Borrower Claims Trust in carrying out its duties and exercising its rights hereunder.

    12.8    Confidentiality.  The Borrower Claims Trustee, the Delaware Trustee, the members of the Trust Committee and the Borrower Claims Trust Agents, and their respective officers, directors, partners, managers, members and employees (the "Confidentiality Parties"), shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidentiality Party of or pertaining to the Debtors, the Borrower Claims Trust, the Trust Beneficiaries or the Borrower Claims Trust Assets; provided, however, that such information may be disclosed if—

(i)     it is now or in the future becomes generally available to the public other than as a result of a disclosure by any of the Confidentiality Parties;

(ii)    such disclosure is required of any of the Confidentiality Parties pursuant to legal process, including subpoena or other court order or other applicable laws or regulations; or

(iii)   the Borrower Claims Trustee determines that such disclosure is in the interests of the Borrower Claims Trust or the Trust Beneficiaries.

12.9   <u>Entire Borrower Claims Trust Agreement</u>.  This Borrower Claims Trust Agreement and the Exhibits attached hereto, and the Plan Documents, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

12.10  <u>Named Party</u>.  In pursuing any Borrower-Related Causes of Action, or otherwise administering the Borrower Claims Trust or any Borrower Claims Trust Assets, including, without limitation, the execution of documents, such as bills of sale, releases, and agreements, the Borrower Claims Trustee may authorize the pursuit of such matters and/or execution of any such documents in the name of "ResCap Borrower Claims Trust" or in such other names or such representative capacities as necessary or appropriate.

12.11  <u>Amendment</u>.  This Borrower Claims Trust Agreement may be amended by the Trust Committee; <u>provided</u>, <u>however</u>, that no amendment shall be made to this Borrower Claims Trust Agreement that makes it inconsistent with the provisions of the Plan or the Confirmation Order.  Notwithstanding this <u>Section 12.11</u> no amendments to this Borrower Claims Trust Agreement shall be inconsistent with the purpose and intention of the Borrower Claims Trust to liquidate in an orderly manner the Borrower Claims Trust Assets (which will maximize the value of such assets).

12.12  <u>Counterparts</u>.  This Borrower Claims Trust Agreement may be executed in any number of counterparts, each of which shall be deemed original, but such counterparts shall together constitute one and the same instrument.  A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

**[REMAINDER OF PAGE BLANK]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Borrower Claims Trust Agreement or caused this Borrower Claims Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

Residential Capital, LLC, ditech, LLC, DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC

By: _____
Name:
Title:


By: _____
Name:
Title:

[_____], as Delaware Trustee

By:             _____
Name:
Title:

_____, as Borrower Claims Trustee

## EXHIBIT A

### FORM OF
### CERTIFICATE OF TRUST
### OF
### RESCAP BORROWER CLAIMS TRUST

This Certificate of Trust of ResCap Borrower Claims Trust is being duly executed and filed on behalf of such trust by the undersigned, as trustee, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 et seq.) (the "Trust Act").

1.    Name.  The name of the Delaware statutory trust formed by this Certificate of Trust is ResCap Borrower Claims Trust.

2.    Delaware Trustee.  The name and business address of the trustee of the Trust with a principal place of business in the State of Delaware are [_____].

3.    Effective Date.  This Certificate of Trust shall be effective upon its filing with the Secretary of State of the State of Delaware.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Trust in accordance with section 3811(a)(1) of the Trust Act.

[DELAWARE TRUSTEE], not in its individual capacity but solely as trustee

By:_____
Name:
Title:

_____

[BORROWER CLAIMS TRUSTEE], not in [his/her] individual capacity but solely as trustee

# EXHIBIT B

## Initial Borrower Claims Trust Budget

[To come]

## EXHIBIT C

**Initial Committee Members**

**Initial Members of the Borrower Claims Trust Committee**

Set forth below is information regarding the initial members of the Borrower Claims Trust Committee upon the Effective Date.[1]

1.    Rowena Drennen for the Kessler Settlement Class in the consolidated class action styled *In re Community Bank of Northern Virginia Second Mortgage Lending Practice Litigation*, consolidated in the United States District Court for the Western District of Pennsylvania, MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688, 05-1386.

2.    Steven Mitchell for the Mitchell Settlement Class in the civil action styled *Steven and Ruth Mitchell v. Residential Funding Company, LLC, et al.*, currently pending before the Circuit Court of Jackson County, Missouri, Division 4, Case No. 03-CV-220489.

3.    [Mark Strauss as proposed counsel for the putative Rothstein Class].

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4819, Ex. 1] (as may be amended from time to time, the "***Plan***").

# EXHIBIT 4

**Blackline**

**Borrower Claims Trust Agreement**

**THE RESCAP BORROWER CLAIMS TRUST**

**TRUST AGREEMENT**

**BY AND AMONG**

**THE BORROWER CLAIMS TRUSTEE,**

**[THE DELAWARE TRUSTEE],**

**RESIDENTIAL CAPITAL, LLC**

**AND**

**THE OTHER DEBTORS LISTED ON THE SIGNATURE PAGES HERETO**

[●], 2013

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ................................................................................................ 2
    1.1    Definitions Incorporated from the Plan ................................................................ 2
    1.2    Other Definitions ................................................................................................ 2
    1.3    Meanings of Other Terms .................................................................................... 6

ARTICLE II CREATION OF BORROWER CLAIMS TRUST .......................................... 7
    2.1    Creation of Trust ................................................................................................ 7
    2.2    Purpose of Borrower Claims Trust ...................................................................... 7
    2.3    Status of Borrower Claims Trust and the Trust Committee ................................... 7
    2.4    Transfer of Borrower Available Assets ................................................................ 8
    2.5    Borrower Return Amounts ................................................................................... 9
    2.6    Title to Borrower Claims Trust Assets ................................................................ 10
    2.7    No Reversion to Debtors; Distribution of Remaining Assets ................................ 10
    2.8    Fiscal Year ......................................................................................................... 10
    2.9    Borrower Claims Trust Budget ............................................................................ 10
    2.10    Insurance ............................................................................................................ 11
    2.11    Books and Records ............................................................................................. 11
    2.12    No Interest or Accruals ....................................................................................... 12

ARTICLE III TRUST BENEFICIARIES ........................................................................... 12
    3.1    Receipt of Borrower Claims Trust Beneficial Interest ......................................... 12
    3.2    Evidence of Borrower Claims Trust Beneficial Interest ....................................... 12
    3.3    Non-Transferability of the Borrower Claims Trust Beneficial Interests ................ 13
    3.4    Borrower Claims Trust Beneficial Interests Not Securities ................................... 13
    3.5    Rights of Trust Beneficiaries .............................................................................. 13
    3.6    Interest Beneficial Only ...................................................................................... 13
    3.7    Conflicting Claims ............................................................................................. 13
    3.8    Trust Beneficiary Liability to Third Persons ...................................................... 14
    3.9    Actions in the Right of the Borrower Claims Trust .............................................. 14

ARTICLE IV SATISFACTION OF BORROWER CLAIMS .............................................. 14
    4.1    General .............................................................................................................. 14
    4.2    Borrower Claims Payments ................................................................................. 15
    4.3    Distributions of Distributable Cash ..................................................................... 16
    4.4    Delivery of Payments and Distributions .............................................................. 16
    4.5    Undeliverable and Unclaimed Payments and Distributions .................................. 16
    4.6    Withholding and Reporting Requirements ........................................................... 17
    4.7    Disbursing Agent ............................................................................................... 17
    4.8    Minimum Payments; Other Limitations ............................................................... 17
    4.9    Subordination .................................................................................................... 18

ARTICLE V TRUST COMMITTEE ................................................................... 18
  5.1    General ................................................................................................. 18
  5.2    Membership ......................................................................................... 18
  5.3    Authority ............................................................................................. 19
  5.4    Meetings of the Trust Committee ........................................................ 19
  5.5    Compensation ...................................................................................... 20
  5.6    Bylaws ................................................................................................ 20

ARTICLE VI OPERATION OF THE BORROWER CLAIMS TRUST ............. 21
  6.1    Prohibited Activities ........................................................................... 21
  6.2    Resolution of Disputed Borrower Claims ............................................ 21
  6.3    Disputed Claims Reserve .................................................................... 22
  6.4    Borrower Claims Trust Administrative Reserve ................................... 22
  6.5    Return Amount Reserve ...................................................................... 23
  6.6    Reporting ............................................................................................ 24
  6.7    Borrower Claims Trust Agents; Employees ........................................ 24

ARTICLE VII BORROWER CLAIMS TRUSTEE ......................................... 25
  7.1    Borrower Claims Trustee Generally .................................................... 25
  7.2    Appointment and Removal of Borrower Claims Trustee ...................... 26
  7.3    Borrower Claims Trustee Compensation ............................................. 27
  7.4    Authority of the Borrower Claims Trustee .......................................... 27
  7.5    Limitations on Borrower Claims Trustee Authority ............................. 30
  7.6    Conflicts of Interest ............................................................................ 31
  7.7    Fiduciary Duty and Standard of Care .................................................. 31
  7.8    Bond or Insurance ............................................................................... 31

ARTICLE VIII DELAWARE TRUSTEE ....................................................... 31
  8.1    Appointment ....................................................................................... 31
  8.2    Powers ................................................................................................ 32
  8.3    Compensation ...................................................................................... 34
  8.4    Duration and Replacement .................................................................. 34

ARTICLE IX TAX MATTERS ...................................................................... 34
  9.1    Tax Treatment ..................................................................................... 34
  9.2    Tax Reporting ..................................................................................... 34
  9.3    Tax Payment ....................................................................................... 35

ARTICLE X LIMITATION OF LIABILITY AND INDEMNIFICATION ........ 35
  10.1  Limitation of Liability ........................................................................ 35
  10.2  Indemnification ................................................................................... 36

ARTICLE XI DURATION OF BORROWER CLAIMS TRUST ...................... 37
  11.1  Duration ............................................................................................. 37
  11.2  Post-Termination ................................................................................ 37
  11.3  Destruction of Books and Records ...................................................... 38

11.4    Discharge............................................................................................................38

ARTICLE XII MISCELLANEOUS PROVISIONS..................................................................38
12.1    Governing Law...................................................................................................38
12.2    Jurisdiction.........................................................................................................38
12.3    Severability........................................................................................................38
12.4    Notices................................................................................................................39
12.5    Headings.............................................................................................................39
12.6    Plan Documents..................................................................................................39
12.7    Cooperation........................................................................................................39
12.8    Confidentiality....................................................................................................39
12.9    Entire Borrower Claims Trust Agreement.........................................................40
12.10   Named Party.......................................................................................................40
12.11   Amendment.........................................................................................................40
12.12   Counterparts........................................................................................................40

**Exhibits**

Exhibit A – Certificate of Trust
Exhibit B – Initial Borrower Claims Trust Budget
Exhibit C –Trust Committee Members

# THE RESCAP BORROWER CLAIMS TRUST
## TRUST AGREEMENT

This Borrower Claims Trust Agreement, dated as of [_____], 2013 (this "Borrower Claims Trust Agreement"), is entered into by and among Residential Capital, LLC ("ResCap"), ditech, LLC, DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC (each as a debtor and debtor-in-possession, and collectively, the "Debtors"), [_____], or its successor, as Delaware Trustee, and [_____], or his successor, as the Borrower Claims Trustee.

## RECITALS

A.      On May 14, 2012, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B.      On or about August 23, 2013, the Debtors filed the Joint Chapter 11 Plan of Residential Capital, LLC, *et al.*, dated August 23, 2013 (as amended and supplemented and as confirmed, the "Plan", and the related disclosure statement, the "Disclosure Statement").

C.      On or about August 23, 2013, the Bankruptcy Court approved the Disclosure Statement.

D.      On or about [_____], 2013, the Bankruptcy Court issued an order confirming the Plan.

E.      On [_____], 2013, the Effective Date of the Plan occurred.

F.      The Plan provides for a trust (as so formed and administered in accordance with the terms of this Borrower Claims Trust Agreement, the "Borrower Claims Trust") to

administer and distribute the Borrower Claims Trust Assets to holders of Borrower Claims that are Allowed on the Effective Date or that become Allowed after the Effective Date.

G.     This Borrower Claims Trust Agreement is being executed to establish and provide for the administration of the Borrower Claims Trust and the distribution of Borrower Claims Trust Assets as contemplated by the Plan.

H.     The Borrower Claims Trust is intended to qualify as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-2 and to be exempt from the requirements of the Investment Company Act of 1940 pursuant to Section 3(c)(5) and Sections 7(a) and 7(b) thereof.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.1     <u>Definitions Incorporated from the Plan</u>.  Other than the terms defined below or elsewhere in this Borrower Claims Trust Agreement, capitalized terms shall have the meaning assigned to them in the Plan.

1.2     <u>Other Definitions</u>.

(a)     "**Administrative Funding Payment**" means the one-time cash payment of $[___] made to the Borrower Claims Trust by the Liquidating Trust on the Effective Date, which amount represents the amount of the administrative costs and expenses of the Borrower Claims Trust to be funded as of the Effective Date by the Liquidating Trust.

(b)     "**Borrower Available Assets**" has the meaning assigned in <u>Section 2.4</u>.

(c)     "**Borrower Claims Payment**" has the meaning assigned in <u>Section 4.1(a)</u>.

(d)     "**Borrower Claims Recovery Percentage**" means (i) in the case of a Borrower Claim against a GMACM Debtor, [30.1%]; (ii) in the case of a Borrower Claim against an RFC Debtor, [9.0%]; and (iii) in the case of a Borrower Claim against ETS, 100%.

(e)     "**Borrower Claims Register**" has the meaning assigned in <u>Section 2.4(d)</u>.

(f)     "**Borrower Claims Trust**" has the meaning assigned in the Recitals.

(g)     "**Borrower Claims Trust Administrative Reserve**" means the reserve established for paying costs, fees and expenses, and reserving for liabilities, of the Borrower Claims Trust.

(h)    "**Borrower Claims Trust Agents**" means the advisors, professionals, other agents and such other Persons to whom the Borrower Trustee delegates authority, including any disbursement agent, of the Borrower Claims Trust appointed or engaged by the Borrower Claims Trustee in accordance with the provisions of this Borrower Claims Trust Agreement.

(i)    "**Borrower Claims Trustee**" means [_____], or his successor, appointed in accordance with this Borrower Claims Trust Agreement.

(j)    "**Borrower Claims Trust Agreement**" has the meaning assigned in the Recitals.

(k)    "**Borrower Claims Trust Assets**" means (i) all Borrower Available Assets, (ii) Cash constituting Return Amounts returned to the Borrower Claims Trust following the Effective Date in accordance with Section 2.5 and (iii) any interest, income or proceeds of any of the foregoing.

(l)    "**Borrower Claims Trust Beneficial Interest**" means a non-transferable and non-assignable uncertificated beneficial interest in the Borrower Claims Trust to be issued to each holder of an Allowed Borrower Claim, other than an Allowed ETS Borrower Claim and an Allowed Borrower Convenience Claim, the amount of which for each holder shall be calculated as provided in Section 3.1, which entitles its holder to receive distributions of Distributable Excess Cash from the Borrower Claims Trust as set forth in this Borrower Claims Trust Agreement.

(m)    "**Borrower Claims Trust Budget**" has the meaning assigned in Section 2.9(a).

(n)    "**Borrower Claims Trust Website**" means an internet website maintained by the Borrower Claims Trust in accordance with this Borrower Claims Trust Agreement.

(o)    "**Borrower Convenience Claim**" means (i) a Claim that would otherwise be classified as an Allowed Borrower Claim, but, (A) in the case of a Claim against a GMACM Debtor, the aggregate Allowed amount of such Claim is, or is reduced to, $8,500 or less (or such other value as determined by the Trust Committee) and (B) in the case of a claim against an RFC Debtor, the aggregate Allowed amount of such Claim is, or is reduced to, $28,000 or less (or such other value as determined by the Trust Committee) or (ii) such other Claim or class of Claim that the Trust Committee has determined shall be classified as a Borrower Convenience Claim for purposes of this Borrower Claims Trust Agreement.

(p)    "**Borrower Convenience Claim Payment**" means, an amount in Cash equal to $500.00 (or such other amount determined by the Trust Committee) plus the amount of such Allowed Borrower Convenience Claim multiplied by (i) in the case of an Allowed Borrower Convenience Claim against a GMACM Debtor, [30.1%] and (ii) in the case of an Allowed Borrower Convenience Claim against an RFC Debtor, [9.0%].

(q)   "**Business Day**" means any day other than a Saturday, Sunday or legal holiday on which the banks in the City of New York, Borough of Manhattan, are authorized to remain closed.

(r)   "**Cause**" means, with respect to the Borrower Claims Trustee, (i) an act of fraud, embezzlement or theft by the Borrower Claims Trustee in connection with the performance of his or her duties under this Borrower Claims Trust Agreement; (ii) intentional misconduct by the Borrower Claims Trustee with respect to the maintenance and disposition of the Borrower Claims Trust Assets; (iii) intentional disclosure of confidential information by the Borrower Claims Trustee in violation of Section 12.8; or (iv) gross negligence by the Borrower Claims Trustee in the performance of his or her duties under this Borrower Claims Trust Agreement.

(s)   "**Case Management and Servicing Orders**" means (i) the Order Approving Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and (d), Bankruptcy Rules 1015(c), 2002(m), 7016, and 9007 and Local Bankruptcy Rule 2002-2 for Entry of an Order Approving (A) Supplement to Case Management Order Establishing Mandatory Procedures for Management of Adversary Proceedings Commenced by Borrowers and Former Borrowers and (B) Related Relief [Docket No. 3293], as amended by the Amended Order Approving Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and (d), Bankruptcy Rules 1015(c), 2002(m), 7016, and 9007 and Local Bankruptcy Rule 2002-2 for Entry of an Order Approving (A) Supplemental to Case Management Order Establishing Mandatory Procedures for Management of Adversary Proceedings Commenced by Borrowers and Former Borrowers and (B) Related Relief [Docket No. 3490], and (ii) Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 3007 and 9019(b) Approving (I) Claim Procedures, (II) Borrower Claim Procedures, (III) Settlement Procedures, and (IV) Schedule Amendment Procedures [Docket No. 3294].

(t)   "**Certificate of Trust**" means the certificate of trust of the Borrower Claims Trust as required by section 3810 of the Trust Act, substantially in the form set forth in Exhibit A to this Borrower Claims Trust Agreement, and filed in connection with the formation of the Borrower Claims Trust pursuant to the Trust Act.

(u)   "**Confidentiality Parties**" has the meaning assigned in Section 12.8.

(v)   "**Conflicted Member**" has the meaning assigned in Section 5.4(d).

(w)   "**Cooperation Agreement**" means that certain Cooperation Agreement, dated the date hereof, by and between the Borrower Claims Trust and the Liquidating Trust.

(x)   "**Debtors**" has the meaning assigned in the Preamble.

(y)   "**Delaware Trustee**" means [_____], or its successor, which is appointed in accordance with this Borrower Claims Trust Agreement to comply with the requirement of section 3807 of the Trust Act.

(z)   "**Designee**" has the meaning assigned in Section 7.6.

(aa)    "**Disputed Borrower Claims**" means Borrower Claims that at any relevant time are Disputed Claims.

(bb)    "**Disputed Claims Reserve**" means the reserve of Cash maintained by the Borrower Claims Trust, for distribution to holders of Disputed Borrower Claims that are subsequently Allowed.

(cc)    "**Dispute Resolution**" has the meaning assigned in Section 3.7.

(dd)    "**Distributable Excess Cash**" means Cash included at any time in the Borrower Claims Trust Assets, other than the Return Amount Reserve, in excess, but without duplication, of (i) the amount of Cash required for making Borrower Claims Payments in respect of Allowed Borrower Claims, (ii) the minimum amount of Cash required be held in the Disputed Claims Reserve for making payments in respect of Disputed Borrower Claims that may become Allowed pursuant to Section 6.3, and (iii) the amount of Cash required to fund the Borrower Claims Trust Administrative Reserve and any other reserve required to be maintained under this Borrower Claims Trust Agreement.

(ee)    "**Estimated Amount**" means the estimated amount of a Disputed Borrower Claim, as determined by the Borrower Claims Trustee, which shall either be the filed amount of the Claim or such amount as estimated by the Bankruptcy Court at the request of the Debtors or the Borrower Claims Trust pursuant to Bankruptcy Code section 502(c) or such other estimated amount determined in accordance with the Plan, including Article VIII.A.4. thereof.

(ff)    "**ETS Borrower Claim**" means a Borrower Claim against ETS.

(gg)    "**Fee and Expense Report**" has the meaning assigned in Section 6.7(c).

(hh)    "**Fee Notice Period**" has the meaning assigned in Section 6.7(c).

(ii)    "**FDIC**" means the Federal Deposit Insurance Corporation or any successor institution.

(jj)    "**Fiscal Year**" means any fiscal year of the Borrower Claims Trust, as provided in Section 2.8 hereof.

(kk)    "**KSC Committee Member**" has the meaning assigned in Section 5.1(a).

(ll)    "**Plan**" has the meaning assigned in the Recitals.

(mm)    "**Plan Documents**" means, collectively, the Plan, the Confirmation Order and this Borrower Claims Trust Agreement.

(nn)    "**Return Amount**" has the meaning assigned in Section 2.4(a).

(oo)    "**Return Amount Reserve**" means the reserve of Cash maintained by the Borrower Claims Trust for distribution to certain Trust Beneficiaries as provided in Section 6.5.

(pp)    "**Tax Authority**" means a federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, court or other body (if any) charged with the administration of any law relating to Taxes.

(qq)    "**Taxes**" means all (i) federal, state, local, or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, estimated, property, transfer and sales or use taxes, and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (i) hereof.

(rr)    "**Tax Return**" means a return, declaration, form, election, letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Taxes, including any schedule or attachment thereto or amendment thereof, including any claim for a Tax refund.

(ss)    "**Trust Act**" means, the Delaware Statutory Trust Act, 12 Del. C. § 3801 et seq., as the same may from time to time be amended, or any successor statute.

(tt)    "**Trust Beneficiaries**" means (i) the holders of Allowed Borrower Claims and (ii) any holder of a Disputed Borrower Claim that may in the future be entitled to receive a distribution of Distributable Excess Cash from the Disputed Claims Reserve.

(uu)    "**Trust Beneficiary Committee Member**" " has the meaning assigned in Section 5.1(a).

(vv)    "**Trust Committee**" means the committee of individuals appointed to administer and oversee the affairs of the Borrower Claims Trust, as provided in this Borrower Claims Trust Agreement.

(ww)    "**Trustee**" means either of the Borrower Claims Trustee or the Delaware Trustee.

1.3    Meanings of Other Terms.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include firms, associations, corporations and other entities.  All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code; the Bankruptcy Rules; or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Borrower Claims Trust Agreement, and the word "herein" and words of similar import refer to this Borrower Claims Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Borrower Claims Trust Agreement.  The term "including" shall mean "including, without limitation."

## ARTICLE II
## CREATION OF BORROWER CLAIMS TRUST

2.1    Creation of Trust.  The Borrower Claims Trust shall be deemed to have been created by the Debtors and the Trustees effective as of the time of filing of the Certificate of Trust.  The Borrower Claims Trust shall bear the name "ResCap Borrower Claims Trust" and the Borrower Claims Trustee may, in connection with the exercise of his powers and duties hereunder, either use this name or such variation thereof from time to time.

2.2    Purpose of Borrower Claims Trust.

(a)    The Borrower Claims Trust is established for the purpose of directing the reconciliation, processing, liquidation and payment of the Allowed Borrower Claims in accordance with this Borrower Claims Trust Agreement, and preserving, holding and managing the Borrower Claims Trust Assets.  For the avoidance of doubt, the Borrower Claims Trust shall be completely independent of the Liquidating Trust, and neither the Liquidating Trust nor its agents shall have any authority over the Borrower Claims Trust or the Borrower Claims Trustee.

(b)    This Borrower Claims Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Borrower Claims Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall any of the Trustees or the Trust Beneficiaries, for any purpose be, or be deemed to be or be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Trust Beneficiaries to the Trustees shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Borrower Claims Trust Agreement.

2.3    Status of Borrower Claims Trust and the Trust Committee.

(a)    Subject to the terms of the Confirmation Order, the Borrower Trust shall be the successor-in-interest to the Debtors with respect to any (a) Available Asset constituting Borrower-Related Causes of Action to the extent not waived and released under the Plan and (b) any objection or motion objecting to Borrower Claims that was, is, or could have been commenced or filed, as applicable, by any of the Debtors prior to the Effective Date and shall be deemed substituted for each such Debtor as the party in any such litigation or contested matter.

(b)    The Borrower Claims Trust, acting through the Borrower Claims Trustee under the supervision of the Trust Committee, will be the representative of the Estates as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with respect to the Borrower-Related Causes of Action and shall have the rights and powers provided in the Bankruptcy Code in addition to any rights and powers granted in the Plan Documents, including, but not limited to, the rights to object to Borrower Claims.  The Borrower Claims Trust shall be the successor-in-interest to the Debtors with respect to any and all such matters

and shall be deemed substituted for each such Debtor as the party in any such litigation or contested matter.

(c)     All Borrower-Related Causes of Action are preserved and retained and may be enforced by the Borrower Claims Trust pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to the extent not waived and released under the Plan.

2.4     Transfer of Borrower Available Assets.

(a)     On the Effective Date, subject to the terms of the Confirmation Order, (i) the Liquidating Trust, in its capacity as disbursing agent for the Debtors, if such distribution is not otherwise made by the Debtors, shall transfer (I) Cash in the amount of $57,600,000 (A) less any amounts paid by the Debtors to or on behalf of the holders of Allowed Borrower Claims prior to the Effective Date pursuant to the Case Management and Servicing Orders or any other order of the Bankruptcy Court and (B) plus the amount, if any, of the Borrower Trust True-Up, and (II) the Administrative Funding Payment and (ii) the Debtors shall transfer all of the Available Assets constituting Borrower-Related Causes of Action, in the form thereof existing on such date (clauses (i) and (ii) collectively, the "Borrower Available Assets"), in each case, to the Borrower Claims Trust, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other persons and entities to the maximum extent contemplated by and permissible under section 1141 of the Bankruptcy Code. For the avoidance of doubt, the Borrower-Related Causes of Action shall not include Estates' claims, rights and remedies with respect to any note and accompanying mortgage or deed of trust originated, owned, acquired or serviced by the Estates as of the Effective Date and any such claim, right or remedy shall constitute an Available Asset to be assigned to the Liquidating Trust; provided, however, the Estates shall expressly reserve and assign to the Borrower Claims Trust, all claims, defenses, set-offs, cross-claims and counterclaims that the Debtors may have against Borrowers with respect to any Borrower Claim. The Borrower Claims Trust shall have such incidents of ownership in such transferred assets as are necessary to undertake the actions and transactions authorized in the Plan Documents. The transfer of the Borrower Available Assets shall be exempt from any stamp, real estate transfer, mortgage recording, sales, use or other similar tax pursuant to section 1146 of the Bankruptcy Code. Upon the transfer of the Borrower Available Assets to the Borrower Claims Trust, such assets shall become Borrower Claims Trust Assets.

(b)     Notwithstanding the foregoing, if on the Effective Date, any of the Borrower Available Assets cannot be transferred to the Borrower Claims Trust for any reason, for example, because the Borrower Claims Trust has not yet established accounts for the purpose of holding Cash or because of a restriction on transferability under applicable non-bankruptcy law that is not superseded by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Debtors (or successors thereto) or the Liquidating Trust, as applicable, shall continue to hold such Borrower Claims Trust Assets, as bailee for the account of the Borrower Claims Trust, until such time as the Borrower Claims Trust informs the Debtors (or successors thereto) or the Liquidating Trust, as applicable, that the Borrower Claims Trust may receive such Borrower Available Assets, whereupon such assets shall be promptly transferred to the Borrower Claims Trust and become Borrower Claims Trust Assets; provided that any proceeds realized from such assets retained by the Debtors (or any

successors thereto) or the Liquidating Trust, as applicable, shall nevertheless be deemed to constitute Borrower Claims Trust Assets, and to likewise be held by the Debtors (or successors thereto) or the Liquidating Trust, as applicable, as bailee, and be turned over as soon as practicable to the Borrower Claims Trust pursuant to this Borrower Claims Trust Agreement as if such transfer had not been restricted under applicable non-bankruptcy law.  The Borrower Claims Trustee may commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any Borrower Available Assets retained by the Debtors (or any successors thereto) or the Liquidating Trust, as applicable, pursuant to the Plan Documents.

(c)    On or prior to the Effective Date, the Debtors shall deliver or cause to be delivered to the Liquidating Trust any and all of the Debtors' books and records that relate primarily to or that may be reasonably required in connection with the Borrower Available Assets, whether held by the Debtors, their agents, representatives, advisors, attorneys, accountants and any other professionals hired by the Debtors and provide reasonable access to such employees, agents, advisors, attorneys, accountants or any other Debtor professionals with knowledge of matters relevant to the Borrower Available Assets.  The Liquidating Trust shall store and maintain such books and records for the benefit of the Borrower Claims Trust, the Borrower Claims Trustee, and Borrower Claims Trust Agents shall be afforded access to such books and records, in each case, in accordance with the terms of the Cooperation Agreement.

(d)    On or prior to the Effective Date, the Debtors shall deliver, or cause to be delivered, to the Borrower Claims Trust a complete list of all Allowed Borrower Claims, including Allowed ETS Borrower Claims, Allowed Borrower Convenience Claims, if any, and Disputed Borrower Claims, reflected on the claims registry (the "Borrower Claims Register") as of the Effective Date.  The list shall include the names and addresses of the holders of such Claims and, in the case of Allowed Borrower Claims, Allowed ETS Borrower Claims and Allowed Borrower Convenience Claims, the amounts thereof, and in the case of Disputed Borrower Claims, the amounts thereof as filed and the Estimated Amounts (if any) thereof.  The list of Disputed Borrower Claims shall include the details of all objections, including filed objections and identified potential objections (if any), in respect of such the Claims.

(e)    The Borrower Claims Trust, as successor-in-interest to the Estates with respect to the Borrower Available Assets, may (i) execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), and (ii) take, or cause to be taken, all such further action in order to evidence, vest, perfect or effectuate the transfer of all of the Borrower Available Assets to the Borrower Claims Trust and consummate transactions contemplated by and to otherwise carry out the intent of the Plan Documents with respect to such assets.

2.5    Borrower Return Amounts.  Subject to the Kessler Settlement Agreement [and the Mitchell Settlement Agreement], to the extent a Trust Beneficiary recovers insurance proceeds on account of all or some of an Allowed Borrower Claim, and payments on account of such Allowed Borrower Claim have been made pursuant to this Borrower Claims Trust Agreement, the Trust Beneficiary shall be required to return a portion of such payments received by such Trust Beneficiary to the Borrower Claims Trust, in accordance with Article

IV.F.6. of the Plan (such returned amount, a "Return Amount"). Any Return Amounts received by the Borrower Claims Trust shall be added to the Return Amount Reserve.

2.6    Title to Borrower Claims Trust Assets. Subject to Section 2.4(a), upon the transfer of Available Assets, the Borrower Claims Trust shall succeed to all of the Debtors' right, title and interest in the Borrower Available Assets, and the Debtors will have no further rights or interest in or with respect to the Borrower Claims Trust Assets or the Borrower Claims Trust.

2.7    No Reversion to Debtors; Distribution of Remaining Assets.

(a)    In no event shall any part of the Borrower Claims Trust Assets revert to or be distributed to or for the benefit of any Debtor.

(b)    To the extent that after satisfaction in full of all of the costs and expenses of the administration of the Borrower Claims Trust, after all Disputed Borrower Claims have been either Allowed or disallowed, after all Allowed Borrower Claims have been paid pursuant to the Plan Documents, after satisfaction of all other obligations or liabilities of the Borrower Claims Trust incurred or assumed in accordance with the Plan Documents, after the Borrower Claims Trust has made the maximum distribution of Distributable Excess Cash to the Trust Beneficiaries to the extent reasonably practicable, after the Borrower Claims Trust has distributed all of the Cash held in the Return Amount Reserve in accordance with Section 6.5, and after the affairs of the Borrower Claims Trust have been finally wound up and concluded in accordance with the provisions of Article XI hereof and section 3808 of the Trust Act, there shall remain any Borrower Claims Trust Assets, the Borrower Claims Trust shall distribute such remaining Borrower Claims Trust Assets to an organization, selected by the Trust Committee, described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code that is unrelated to the Debtors, the Borrower Claims Trust or the Borrower Claims Trustee.

2.8    Fiscal Year. Except for the first and last years of the Borrower Claims Trust, the Fiscal Year of the Borrower Claims Trust shall be the calendar year. For the first and last years of the Borrower Claims Trust, the Fiscal Year of the Borrower Claims Trust shall be such portion of the calendar year that the Borrower Claims Trust is in existence. The terms fiscal quarter, or similar references, as used in this Borrower Claims Trust Agreement, shall have a correlative meaning.

2.9    Borrower Claims Trust Budget.

(a)    There shall be prepared an annual plan and budget for the Borrower Claims Trust (any such plan and budget, as it may be amended from time to time in accordance with the terms hereof, the "Borrower Claims Trust Budget") for each Fiscal Year, except that the Borrower Claims Trust Budget for the first Fiscal Year, if less than six calendar months, may be combined with the Borrower Claims Trust Budget for the next succeeding Fiscal Year, and the Borrower Claims Trust Budget for the last Fiscal Year, if less than six calendar months, may be combined with the Borrower Claims Trust Budget for the immediate prior Fiscal Year, unless the Trust Committee determines that a Borrower Claims Trust Budget is

not necessary for such Fiscal Year.  Except as otherwise determined by the Trust Committee, the Borrower Claims Trust Budget shall set forth (on an annual basis) in reasonable detail the anticipated expenses of the Borrower Claims Trust for the relevant period and the sources of funding available to satisfy the expenses.

(b)     The initial Borrower Claims Trust Budget is attached as <u>Exhibit B</u> to this Borrower Claims Trust Agreement.   Except as otherwise approved by the Trust Committee, the form of each Borrower Claims Trust Budget shall be substantially the same as the form of the initial Borrower Claims Trust Budget.

(c)     Not less than thirty (30) days before the beginning of each Fiscal Year (other than the first Fiscal Year and other than the second Fiscal Year, if the initial Borrower Claims Trust Budget covers such Fiscal Year and other than the last Fiscal Year, if the Borrower Claims Trust Budget for the next preceding Fiscal Year covers such Fiscal Year), the Borrower Claims Trustee shall submit to the Trust Committee a proposed Borrower Claims Trust Budget for such Fiscal Year, together with a comparison to the Borrower Claims Trust Budget then in effect and an explanation of the differences between the two in reasonable detail.  The Borrower Claims Trust Budget for such Fiscal Year shall not become effective until approved by the Trust Committee, and until so approved, the Borrower Claims Trust Budget for the prior year shall constitute the Borrower Claims Trust Budget for the subsequent year on an interim basis.

(d)     Amendments, if any, to the Borrower Claims Trust Budget shall not become effective unless and until approved by the Trust Committee.

(e)     Except as otherwise approved by the Trust Committee, the amount expended in any Fiscal Year (or, if the initial or final Borrower Claims Trust Budget shall cover a combined period as provided above, in such combined period) on any item of expense set forth in the Borrower Claims Trust Budget shall not exceed by more than twenty percent (20)% the budgeted amount therefor set forth in the Borrower Claims Trust Budget for the relevant Fiscal Year.

2.10    <u>Insurance</u>.  The Borrower Claims Trust shall maintain customary insurance coverage for the protection of the Trustees and Trust Committee (which coverage shall be primary to any other coverage potentially available to such Persons), and may procure insurance coverage for such employees and Borrower Claims Trust Agents as the Trust Committee may determine in its discretion, and the cost thereof shall be reflected in the Borrower Claims Trust Budget.

2.11         <u>Books and Records</u>.

(a)     The Borrower Claims Trustee shall cause to be stored and maintained books and records for the period commencing on the date hereof through the termination of the Borrower Claims Trust, containing such information concerning the Borrower Claims Trust Assets, the conduct of the affairs of the Borrower Claims Trust and the Trust Beneficiaries, in such detail and for such periods of time as may be necessary to enable the Borrower Claims Trust to make full and proper accounting in respect thereof and to comply with applicable

provisions of law.  Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Borrower Claims Trust.

(b)    The Borrower Claims Trust shall be authorized without further application to the Bankruptcy Court or notice to any party, to abandon or otherwise destroy books and records (whether in electronic or paper format) in accordance with Section 11.2.

(d)    Anything in the Trust Act to the contrary notwithstanding, no Trust Beneficiary shall have the right to obtain from the Borrower Claims Trust any of its books or records except as expressly provided in this Borrower Claims Trust Agreement or as may otherwise be expressly permitted by the Borrower Claims Trustee.

2.12    No Interest or Accruals.  Except as otherwise may be expressly provided in the Plan Documents, holders of Borrower Claims shall not be entitled to interest on the distributions provided for in this Borrower Claims Trust Agreement, regardless of whether such distributions are deliverable on or at any specified time after the Effective Date.

## ARTICLE III
## TRUST BENEFICIARIES

3.1    Receipt of Borrower Claims Trust Beneficial Interest.  Subject to Section 4.1(c), on the Effective Date, each holder of an Allowed Borrower Claim as of the Effective Date shall be deemed to receive a Borrower Claims Trust Beneficial Interest in an amount corresponding to the amount of such holder's Allowed Claim multiplied by the applicable Borrower Claims Recovery Percentage.  Subject to Section 4.1(c), the holder of a Borrower Claim that is a Disputed Claim on the Effective Date and that subsequently becomes Allowed, in whole or in part, shall be deemed to receive a Borrower Claims Trust Beneficial Interest in an amount corresponding to the amount of such holder's Allowed Claim multiplied by the applicable Borrower Claims Recovery Percentage at such time as such Claim becomes Allowed.

3.2    Evidence of Borrower Claims Trust Beneficial Interest.  Ownership of a Borrower Claims Trust Beneficial Interest shall be evidenced by appropriate notation on the books and records maintained for that purpose by the Borrower Claims Trust or an agent of the Borrower Claims Trust.  Such notation shall be conclusive absent manifest error, and the Borrower Claims Trust and the Borrower Claims Trustee shall treat each Person whose name is recorded on the books and records of the Borrower Claims Trust as aforesaid as the owner of the Borrower Claims Trust Beneficial Interest indicated therein for all purposes of this Borrower Claims Trust Agreement, notwithstanding notice to the contrary.  The notation shall be in such form as the Borrower Claims Trustee shall determine, but shall correspond in amount or quantity to the amount of the Allowed Borrower Claim in respect of which the Borrower Claims Trust Beneficial Interest was issued.  A Trust Beneficiary shall be deemed the "holder of record" of such beneficiary's Borrower Claims Trust Beneficial Interest for purposes of all applicable laws, rules and regulations. The Borrower Claims Trustee shall, upon the written request of a Trust Beneficiary, provide reasonably adequate documentary evidence of such Trust Beneficiary's Borrower Claims Trust Beneficial Interest; provided that

the Borrower Claims Trustee shall not be required to provide such evidence to a Trust Beneficiary in response to more than one request of such Trust Beneficiary during any twelve-month period. The expense (including Borrower Claims Trustee fees and professional fees) of providing such documentation shall be borne by the requesting Trust Beneficiary.

3.3    Non-Transferability of the Borrower Claims Trust Beneficial Interests. Borrower Claims Trust Beneficial Interests shall not be transferable or assignable except by will, intestate succession or operation of law; provided that any transfer or assignment of a Borrower Claims Trust Beneficial Interest by will, intestate succession or operation of law shall not be effective unless and until such transfer or assignment is recorded on the books and records of the Borrower Claims Trust maintained for that purpose, as provided in Section 3.2. Notwithstanding any other provision to the contrary, the Borrower Claims Trustee may disregard any purported transfer or assignment of Borrower Claims Trust Beneficial Interests by will, intestate succession or operation of law if necessary information (as reasonably determined by the Borrower Claims Trustee), including applicable Tax-related information, is not provided by such purported transferee or assignee to the Borrower Claims Trustee.

3.4    Borrower Claims Trust Beneficial Interests Not Securities. The Borrower Claims Trust Beneficial Interests shall not constitute "securities" and shall not be registered pursuant to the Securities Act of 1933, as amended, or any state securities law. However, if it should be determined that the Borrower Claims Trust Beneficial Interests constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code shall apply to the Borrower Claims Trust Beneficial Interests.

3.5    Rights of Trust Beneficiaries. Each Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Trust Beneficiary hereunder on account of its Borrower Claims Trust Beneficial Interest. Each Trust Beneficiary shall take and hold the same, subject to all the terms and conditions of the Plan Documents. The interest of a Trust Beneficiary is hereby declared and shall be, in all respects, personal property.

3.6    Interest Beneficial Only. Except as expressly provided hereunder, a Trust Beneficiary shall have no title to, right to, possession of, management of or control of the Borrower Claims Trust or the Borrower Claims Trust Assets. The ownership of a Borrower Claims Trust Beneficial Interest in the Borrower Claims Trust shall not entitle any Trust Beneficiary to any title in or to the Borrower Claims Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

3.7    Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to a Borrower Claims Trust Beneficial Interest, the Borrower Claims Trust (as determined by the Trust Committee at its sole election or by the Borrower Claims Trustee pursuant to delegated authority of the Trust Committee) shall be entitled to refuse to comply with any such conflicting claims or demands. In so refusing, the Borrower Claims Trust may elect to make no payment or distribution with respect to the Borrower Claims Trust Beneficial Interest at issue subject to the claims or demands involved, or any part thereof, and the Borrower Claims Trust shall be entitled to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive and continuing jurisdiction over resolution of

such conflicting claims or demands.  Neither the Borrower Claims Trust, the Trust Committee nor the Borrower Claims Trustee shall be or become liable to any party for either (x) the election to continue making payments or distributions pursuant to its books and records, without regard to the conflicting claims or demands; or (y) the election to cease payments or distributions with respect to the subject Borrower Claims Trust Beneficial Interest(s).  In the event that the Borrower Claims Trust elects to cease payments, it shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or such other court of proper jurisdiction) or (ii) all differences have been resolved by a written agreement among all of such parties and the Borrower Claims Trust, which agreement shall include a complete release of the Borrower Claims Trust, the Trust Committee and the Borrower Claims Trustee in form and substance reasonably satisfactory to the Trust Committee (the occurrence of either (i) or (ii), a "Dispute Resolution").  Promptly after a Dispute Resolution is reached, the Borrower Claims Trust shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income earned thereon, if any, in accordance with the terms of such Dispute Resolution.

3.8    Trust Beneficiary Liability to Third Persons.  No Trust Beneficiary shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Borrower Claims Trust Assets or the affairs of the Borrower Claims Trust to the fullest extent provided by section 3803(a) of the Trust Act.

3.9    Actions in the Right of the Borrower Claims Trust.  No Trust Beneficiary shall have the right to bring an action in the right of the Borrower Claims Trust to recover a judgment pursuant to section 3816 of the Trust Act unless such Trust Beneficiary or Trust Beneficiaries individually or collectively own ten percent (10%) or more of the total Borrower Claims Trust Beneficial Interests outstanding.

# ARTICLE IV
## SATISFACTION OF BORROWER CLAIMS

4.1    General.

(a)    Each holder of an Allowed Borrower Claim shall be entitled to receive (i) Cash in an amount equal to the Allowed amount of such Claim multiplied by the applicable Borrower Claims Recovery Percentage (a "Borrower Claims Payment") and (ii) its Borrower Claim Trust Beneficial Interest, as provided in Section 3.1.  For the avoidance of doubt, any insurance proceeds to which a holder of an Allowed Borrower Claim may be entitled shall be in addition to, and not inclusive of, a Borrower Claims Payment, subject to the right of the Borrower Claims Trust to any Return Amounts pursuant to Section 2.5, and any Cash distributions from the Return Amount Reserve shall be made in accordance with Section 6.5(b).

(b)    For the purposes of determining the Allowed amount of a Borrower Claim, if such Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim, the Allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Bankruptcy Court.

(c)     Notwithstanding the provisions of subsection (a) above, (i) each holder of a Borrower Convenience Claim that is or becomes Allowed shall receive a payment in Cash in an amount equal to the Borrower Convenience Claim Payment with respect to such Claim and (ii) each holder of an ETS Borrower Claim that is or becomes Allowed shall receive a Borrower Claim Payment with respect to such Claim.   For the avoidance of doubt, the payments received by holders of Borrower Convenience Claims and ETS Borrower Claims pursuant to this Section 4.1(c) shall represent the full and final satisfaction of such Claims and such holders shall not receive Borrower Claims Trust Beneficial Interests.

(d)     The Borrower Claims Payment is intended to be comparable to the recovery that the holder of an Allowed Claim in the same amount against the same Debtor Group would realize from distributions made by the Liquidating Trust on Units issued to Unitholders with respect to such Allowed Claim, based on the estimated value of the Liquidating Trust Assets available for distribution to Unitholders as of the Effective Date (without, in each case, giving effect to any insurance proceeds, including proceeds from the GM Policies that may be received in respect of certain Allowed Borrower Claims or to the time delay in receipt of distributions in respect of the Units).   Notwithstanding the foregoing and subject to the terms of the Confirmation Order, the allocated share of Cash available for distributions from the Borrower Claims Trust shall be solely determined by the provisions of this Borrower Claims Trust Agreement, and not by the Liquidating Trust Agreement or any other Plan Document.

4.2          Borrower Claims Payments.

(a)     As soon as practicable following the Effective Date, the Borrower Claims Trust shall make a Borrower Claims Payment to each holder of a Borrower Claim that is Allowed as of the Effective Date.

(b)     Each holder of a Borrower Claim that was not Allowed as of the Effective Date and that is subsequently Allowed, in whole or in part, shall receive from the Disputed Claims Reserve a Borrower Claims Payment in respect of such Claim following the date such Claim becomes Allowed.   Such Borrower Claims Payments shall be made at such time and from time to time as determined by the Trust Committee, provided that a Borrower Claims Payment shall be made no later than ninety (90) days following date on which the respective Borrower Claim becomes Allowed.

(c)     At the time a Borrower Claims Payment is made in respect of a Borrower Claim that becomes Allowed following the Effective Date, there shall also be paid to the holder of such Borrower Claim from the Disputed Claims Reserve an amount of Cash equal to all distribution that the holder of a Borrower Claims Trust Beneficial Interest corresponding to such Allowed Borrower Claim would have received had such holder received such Borrower Claims Trust Beneficial Interest as of the Effective Date; provided, that with respect to Borrower Convenience Claims and ETS Borrower Claims that become Allowed following the Effective Date, there shall be paid to each such holder of a Borrower Convenience Claim or ETS Borrower Claim, such amounts that such holder would have received under Section 4.1(c) had such Claim been Allowed as of the Effective Date.

(d)    Notwithstanding anything to the contrary herein, the Borrower Claims Trust shall in no event be obligated to make any payment to a holder of a Borrower Claim, whether by Borrower Claims Payment or distribution in respect of a Borrower Claims Trust Beneficial Interest or otherwise, in the event the total amount of such Borrower Claim, after giving effect to payment of any Return Amount, has been satisfied in full, and such holder has collected the total amount of such Borrower Claim, whether through the receipt of insurance proceeds, payments hereunder, other sources or a combination of the foregoing, or otherwise.

(e)    Notwithstanding anything to the contrary herein, the Trust Committee may determine to adjust the timing and amount of a Borrower Claims Payment to the extent necessary for the Borrower Claims Trust to meet the Cash maintenance requirements of the Disputed Claims Reserve and the Borrow Claims Trust Administrative Reserve set forth in this Trust Agreement.

4.3    Distributions of Distributable Excess Cash.

(a)    Subject to Section 6.5, if at any time, the Trust Committee determines that there exists any Distributable Excess Cash held by the Borrower Claim Trust, including Cash in the Disputed Claims Reserve, in excess of the minimum amount specified in Section 6.3, the Trust Committee may, but shall not be required to, make a distribution of all or part of such Distributable Excess Cash to holders of Borrower Claims Trust Beneficial Interests.  Such distribution shall be made pro rata to all holders of Borrower Claims Trust Beneficial Interests; provided that in connection with such distribution the Disputed Claims Reserve shall be deemed to have a Borrower Claims Trust Beneficial Interest corresponding to the Estimated Amount of all Disputed Borrower Claims as of the relevant time.  The Trust Committee shall establish a record date, which shall be no earlier than fifteen (15) calendar days prior to the date of the distribution, for the purpose of determining the holders of Borrower Claims Trust Beneficial Interests entitled to receive such distribution and the Borrower Claims Trust Beneficial Interest deemed held for these purposes by the Disputed Claims Reserve.

(b)    At such time as all Cash in the Disputed Claims Reserve shall have been distributed, and Borrower Claim Payments have been made to all holders of Allowed Borrower Claims, any remaining Distributable Cash shall be distributed to the holders of Borrower Claims Trust Beneficial Interests pro rata.

4.4    Delivery of Payments and Distributions.  Subject to Bankruptcy Rule 9010, and except as provided in this Section 4.4, all payments and distributions to any holder of an Allowed Borrower Claim shall be made at the address of such holder as set forth on the Borrower Claims Register delivered to the Borrower Claims Trust pursuant to Section 2.4(d), unless the Debtors or the Borrower Claims Trustee has been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Borrower Claims Register.

4.5    Undeliverable and Unclaimed Payments and Distributions.  In the event that any payment or distribution to any holder of an Allowed Borrower Claim or Allowed Borrower Convenience Claim is returned as undeliverable, the Borrower Claims Trust in

consultation with the Borrower Claims Trustee shall use commercially reasonable efforts to determine the current address of each holder, but no payment or distribution to such holder shall be made unless and until the Borrower Claims Trust has determined the then current address of such holder; provided, however, that all payments and distributions made pursuant to this Borrower Claims Trust Agreement that are unclaimed for a period of six (6) months after payment or distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Borrower Claims Trust and any entitlement of any holder of any Claims to such payments or distributions shall be extinguished and forever barred.  The Borrower Claims Trust shall have no further obligation to make any payment or distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such payments or distributions shall be extinguished and forever barred; provided, however, that the holder of such Claim may receive future payments or distributions on account of such Claim by contacting the Borrower Claims Trustee prior to the final distribution by the Borrower Claims Trust pursuant to Section 4.3(b).

4.6     Withholding and Reporting Requirements.  The Borrower Claims Trust may withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Trust Beneficiaries. All such amounts withheld and paid to the appropriate Tax Authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such holders for all purposes of the Plan and this Borrower Claims Trust Agreement. The Borrower Claims Trust shall be authorized to collect such tax information from the Trust Beneficiaries including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan and this Borrower Claims Trust Agreement. To receive distributions under the Plan, the Trust Beneficiaries shall be required to identify themselves to the Borrower Claims Trust and provide tax information and the specifics of their holdings, to the extent the Borrower Claims Trust or such disbursing agent deems appropriate (including completing the appropriate Internal Revenue Service Form W-8 or Internal Revenue Service Form W-9, as applicable to each holder).  The Borrower Claims Trust may refuse to make a distribution to any Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a Trust Beneficiary, the Borrower Claims Trust shall make such distribution to which the Trust Beneficiary is entitled, without interest; and provided further that, if the holder fails to comply with such a request within one (1) year, such distribution shall be deemed an unclaimed distribution to be treated as the Trust Committee determines in its discretion; and provided further that, if the Borrower Claims Trust fails to withhold in respect of amounts received or distributable with respect to any such holder and the Borrower Claims Trust is later held liable for the amount of such withholding, such holder shall reimburse the Borrower Claims Trust for such liability including interest, penalties, fines and other additions thereto.  Notwithstanding the foregoing, each Trust Beneficiary that receives a distribution under the Plan shall have the sole and exclusive responsibility for the payment of any Taxes imposed by any governmental unit, including income, withholding and other Taxes, on account of such distribution.

4.7     Disbursing Agent.  Upon prior approval by the Trust Committee, the Borrower Claims Trustee may engage one or more agents to make payments and distributions.

References in this Borrower Claims Trust Agreement to distributions by the Borrower Claims Trust shall include distributions made by a disbursing agent.

4.8     Minimum Payments; Other Limitations.  No Cash payment of less than $50.00 shall be made by the Borrower Claims Trust to a holder of an Allowed Claim on account of such Allowed Claim. If a holder of an Allowed Claim would be entitled to receive less than $50.00 as of the time of a particular payment, but would be entitled to receive more than $50.00 in combination with later payments or distributions, the Borrower Claims Trust will combine such payments with later payments or distributions to such holder of an Allowed Claim so that such holder may eventually be entitled to a payment or distribution of at least $50.00 in value.  Whenever any payment of Cash of a fraction of a dollar would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

4.9     Subordination.  All distributions pursuant to this Borrower Claims Trust Agreement shall be subject to the subordination provisions of the Plan.  The Borrower Claims Trust reserves the right to seek subordination of any Claim in accordance with applicable law.

## ARTICLE V
## TRUST COMMITTEE

5.1     General.  The affairs of the Borrower Trust shall be managed by, or under the direction of, the Trust Committee, which shall have such powers and authority as are provided in this Article V and as elsewhere set forth in this Borrower Trust Agreement and in the Trust Act.

5.2     Membership

(a)     The Trust Committee shall consist of no more than three (3) members, one of whom shall be either a member of the Kessler Settlement Class or a representative of counsel for the Kessler Settlement Class (the "KSC Committee Member").  Each other initial member of the Trust Committee shall be a Borrower (or representative thereof) that holds a Borrower Claims Trust Beneficial Interest appointed by counsel for the Kessler Settlement Class with the consent of the Plan Proponents, which consent shall not be unreasonably withheld (each such other member, a "Trust Beneficiary Committee Member").  Each member of the Trust Committee shall be a natural person at least 18 years of age.  The identity of the initial members of the Borrow Claims Trust Committee, including the KSC Committee Member and the Trust Beneficiary Committee Members, if any, is set forth on Exhibit C hereto.

(b)     Each member of the Trust Committee shall hold office until the earlier of (i) the termination of the Borrower Claims Trust, (ii) the resignation, death, incapacity or bankruptcy of such member, or (iii) the removal of such member by counsel for the Kessler Settlement Class.  In the event of a vacancy on the Trust Committee resulting from the foregoing clauses (ii) or (iii), a replacement KSC Committee Member or Trust Beneficiary Committee Member, as applicable, shall be appointed by the representatives of the Kessler Settlement Class.

(c)    The Trust Committee shall act by affirmative consent of a majority of the members constituting the Trust Committee, unless otherwise provided in this Borrower Claims Trust Agreement, given at a meeting called for that purpose, or by written consent in lieu of meeting, in accordance with this Borrower Claims Trust Agreement.  Members of the Trust Committee may vote by proxies duly authorized in writing.

(d)    In the event that, following the failure of counsel for the Kessler Settlement Class to appoint a successor member when required pursuant to Section 5.2(b), there is at any time no member on the Trust Committee, the Borrower Claims Trustee may serve as a temporary member of the Trust Committee while promptly filing a motion with the Bankruptcy Court for approval, after notice and hearing, of a successor member as designated by the Borrower Claims Trustee in the motion.

(e)    The Borrower Claims Trustee shall, as frequently as requested by the Trust Committee, provide the Trust Committee with an update (verbal or written, as determined by the Trust Committee) as to the various actions the Borrower Claims Trustee has taken (or declined to take) during the relevant time period, and shall offer the Trust Committee an opportunity to ask questions with respect to such actions or inactions.  The Borrower Claims Trustee shall, on a regular basis, inform the Trust Committee of actions that the Borrower Claims Trustee is pursuing and is planning to pursue in connection with the discharge of the Borrower Claims Trustee's duties and responsibilities pursuant to the Plan Documents, including with respect to the resolution or prosecution of Borrower Claims and Borrower-Related Causes of Action.  The Borrower Claims Trustee shall seek the advice, consent, and approval of the Trust Committee when required by the Plan Documents.

5.3    Authority.  The Trust Committee shall be responsible for exercising the authority and performing the obligations of the Borrower Claims Trust expressly provided for in this Borrower Claims Trust Agreement and otherwise giving effect to the intents and purposes of this Borrower Claims Trust Agreement.  Without limiting the generality of the preceding sentence, and in furtherance thereof, the Trust Committee shall be expressly authorized and empowered to undertake, acting as appropriate through the Borrower Claims Trustee, the following actions on behalf of the Borrower Claims Trust, without the need for any additional approvals, authorization, or consents and without any further notice to or action, order or approval of the Bankruptcy Court; provided, that all such actions are undertaken in a manner consistent with the purposes of the Borrower Claims Trust (a) review and supervise the activities of the Borrower Claims Trustee, (b) have authority to remove and replace the Borrower Claims Trustee in accordance with Article VI hereof and (c) perform all other actions specified to be performed by the Trust Committee in this Borrower Claims Trust Agreement and the Plan Documents.

5.4    Meetings of the Trust Committee.

(a)    Meetings of the Trust Committee may be called by any member of the Trust Committee, by delivery of written notice of the time and place of such special meeting to each member of the Trust Committee by personal delivery, facsimile or other means of electronic communication at least two (2) Business Days prior to such meeting.

(b)     The presence at a meeting of all of the members of the Trust Committee shall constitute a quorum for the transaction of business at such meeting of the Trust Committee, but if less than all members are present at a meeting, any member of the Trust Committee present may adjourn the meeting from time to time.  When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Trust Committee may transact any business which might have been transacted at the original meeting.

(c)     Meetings may be held in person within or without the State of Delaware, telephonically or electronically, and upon such notice as may be determined from time to time in accordance with the rules and procedures adopted by the Trust Committee, and any member of the Trust Committee who participates by such means shall be deemed to be present for purposes of quorum under Section 5.4(b).  Members of the Trust Committee may also act by written consent in lieu of a meeting, which consent may be less than unanimous, provided each of the members of the Trust Committee shall have received notice of the action to be taken by written consent in lieu of a meeting at least two (2) Business Days in advance of the effectiveness thereof.  Any such written consents shall be filed with the minutes of the proceedings of the Trust Committee

(d)     Individual members of the Trust Committee may participate in discussions at meetings, but shall recuse themselves from any confidential discussion designated as such by the other members of the Trust Committee and from voting on any proposed action by the Borrower Claims Trustee that involves (i) an objection to any Borrower Claim held by such member or by the Trust Beneficiary that any member represents, or any Insider (as defined in section 101(31) of the Bankruptcy Code) of such member or Trust Beneficiary (such member, a "Conflicted Member"), (ii) the initiation by the Borrower Claims Trustee of any litigation or prosecution of any Borrower-Related Cause of Action against the Conflicted Member or the Trust Beneficiary represented by such member, (iii) the settlement of any Borrower-Related Cause of Action against the Conflicted Member or the Beneficiary represented by such member, or (iv) any other matter as to which the any member or the Trust Beneficiary represented by such member that presents a conflict of interest.

5.5     Compensation.  Other than (a) a fee of $250.00 per meeting of the Trust Committee or any committee thereof in the case of a Trust Beneficiary Committee Member who is not a Borrower Claims Trust Agent and (b) the reasonable expenses, if any, of attendance at such meetings, the members of the Trust Committee shall not be entitled to compensation for time spent in preparation for and participation in meetings of the Trust Committee or any committee thereof; provided, however, that nothing contained herein shall preclude a member of the Trust Committee who is a Borrower Claims Trust Agent engaged to perform services from charging for services that are professional in nature in connection with a meeting of the Trust Committee.  Fees payable to members of the Trust Committee pursuant to this Section 5.5 shall be satisfied from the Borrower Claims Trust Administrative Reserve.

5.6     Bylaws.  The Trust Committee may adopt bylaws or protocols which shall contain such additional provisions, procedures and protocols for the governance of the Borrower Claims Trust and as shall be determined from time to time by the Trust Committee;

provided that no such provisions, procedures and protocols shall in any way be inconsistent with the terms of this Borrower Claims Trust Agreement or the other Plan Documents.

## ARTICLE VI
## OPERATION OF THE BORROWER CLAIMS TRUST

6.1        Prohibited Activities.

(a)        The Borrower Claims Trustee and the Borrower Claims Trust Agents shall hold the Borrower Claims Trust out as a trust in the process of liquidation, whose activities are limited to the liquidation of the Borrower Claims Trust Assets on behalf, and for the benefit, of the Trust Beneficiaries and the other purposes set forth in this Borrower Claims Trust Agreement.  Without limiting the foregoing, the Borrower Claims Trust shall not hold itself out as an investment company, and no part of the Borrower Claims Trust Assets shall be caused by the Borrower Claims Trustee to be used or disposed of in furtherance of any trade or business.

6.2        Resolution of Disputed Borrower Claims.

(a)        The Borrower Claims Trustee, or one or more Borrower Claims Trust Agents designated by the Borrower Claims Trustee if, and to the extent, authorized by the Trust Committee, shall be authorized to resolve, on behalf of the Borrower Claims Trust, all Disputed Borrower Claims without further Bankruptcy Court order, provided, however, that the Borrower Claims Trustee must obtain the prior approval of the Trust Committee in the event the resolution of a Disputed Borrower Claim would result in an Allowed Claim that exceeds $100,000.  Without limiting the foregoing, the Borrower Claims Trust may, as successor-in-interest to the Debtors, continue to prosecute objections to Borrower Claims pursuant to the Case Management and Servicing Orders as the same may be amended or replaced from time to time or pursuant to any other order of the Bankruptcy Court, as determined by the Trust Committee.

(b)        If the Borrower Claims Trust and the holder of a Disputed Borrower Claim are unable to reach a settlement on a Disputed Borrower Claim, or if the Borrower Claims Trust determines to disallow a Disputed Borrower Claim, such Disputed Borrower Claim shall be submitted to the Bankruptcy Court for adjudication by way of an objection to such Borrower Claim.  If it is determined that the Bankruptcy Court does not have jurisdiction to resolve any Disputed Borrower Claim, then such Disputed Borrower Claim shall be submitted to the District Court or other court of appropriate jurisdiction for resolution. The Borrower Claims Trust shall file with the Bankruptcy Court a quarterly notice of Disputed Borrower Claims resolved and/or settled during the prior quarter following the end of each fiscal quarter, starting with the first complete fiscal quarter after the Effective Date.

(c)        Disputed Borrower Claims that become Allowed, in whole or in part, shall be satisfied exclusively out of the Disputed Claims Reserve, in the manner provided in Article IV, and in the order in which such Disputed Borrower Claims are Allowed.  In the event the Cash remaining in the Disputed Claims Reserve shall be insufficient to satisfy all of the Disputed Borrower Claims that have become Allowed and are due to be satisfied with

distributions from the Disputed Claims Reserve, such Disputed Borrower Claims shall be satisfied pro rata in proportion to their respective Allowed Claim amounts.  After (i) all Cash has been distributed from the Disputed Claims Reserve, (ii) no available Cash remains in the Borrower Claims Trust Assets that is not otherwise reserved for use for other purposes in accordance with the provisions of this Borrower Claims Trust Agreement, and (iii) the Trust Committee does not have a reasonable expectation that additional funds will be added to the Borrower Claims Trust Assets in the future, no further distributions shall be made in respect of Disputed Borrower Claims.

(d)    The Trust Committee may, from time to time, make immaterial technical adjustments, or seek an adjusted determination from the Bankruptcy Court of, the Estimated Amounts of the Disputed Borrower Claims.

6.3        Disputed Claims Reserve.

(a)    On or as soon as practicable following the Effective Date, the Borrower Claims Trust shall establish the Disputed Claims Reserve.

(b)    The Borrower Claims Trustee shall, at the direction of the Trust Committee, cause to be added to and maintained in the Disputed Claims Reserve, from time to time, at least that amount of Cash sufficient (i) to make Borrower Claims Payments in respect of all Disputed Borrower Claims or in the case of Borrower Convenience Claims or ETS Borrower Claims, the amount provided in Section 4.1(c), as if such Claims had been Allowed in the amount of their respective Estimated Amounts and (ii) to pay to such holders, other than in respect of Borrower Convenience Claims and ETS Borrower Claims, the amount of all distributions made to holders of Borrower Claims Trust Beneficial Interests since the Effective Date as if such holders of Disputed Borrower Claims had received Borrower Claims Trust Beneficial Interest corresponding to the Estimated Amount of such Claims; provided that Cash shall only be required to be added to the Disputed Claims Reserve to the extent of available Cash included in the Borrower Claims Trust Assets that is not otherwise reserved for use for other purposes in accordance with the provisions of this Borrower Claims Trust Agreement.

(c)    All Cash held in the Disputed Claims Reserve shall be maintained with a United States FDIC insured financial institution, and may be maintained in an interest-bearing account, as the Trust Committee may from time to time determine.  The Cash in the Disputed Claims Reserve shall be held separately and shall not be commingled with any other Cash constituting Borrower Claims Trust Assets.

6.4        Borrower Claims Trust Administrative Reserve.

(a)    On the Effective Date, there shall be established a Borrower Claims Trust Administrative Reserve for the purpose of maintaining Cash allocated and retained by the Borrower Claims Trust from time to time in an amount necessary (subject to the Borrower Claims Trust Budget) to satisfy reasonable costs and expenses of the Borrower Claims Trust and other obligations and liabilities incurred, assumed or reasonably anticipated by the Borrower Claims Trust (or to which the Borrower Claims Trust Assets are otherwise subject) in accordance with the Plan Documents, including without limitation (i) fees and costs incurred

in connection with the protection, preservation, liquidation and distribution of the Borrower Claims Trust Assets; (ii) the fees and costs incurred in connection with investigating, prosecuting and resolving Disputed Borrower Claims and other Borrower-Related Causes of Action; (iii) the fees and costs of maintaining the Disputed Claims Reserve, the Borrower Claims Trust Administrative Reserve and the Return Amount Reserve; (iv) reserves for any judgments, settlements or other Cash liabilities or potential liabilities that are or may be payable by the Borrower Claims Trust, as determined by the Trust Committee; (v) any Taxes imposed on the Borrower Claims Trust or in respect of the Borrower Claims Trust Assets or otherwise, including the Disputed Claims Reserve; (vi) costs and expenses of the Borrower Claims Trustee, the Trust Committee, the Borrower Claims Trust Agents, and their respective employees, professionals and advisors (but not including expenses and fees incurred by the Kessler Class Claimants pursuant to the GM Insurance Rights) and (vii) such other costs, fees and expenses as shall be provided for in the Borrower Claims Trust Budget and as may be incurred in carrying out the purposes and intents of this Borrower Claims Trust Agreement. The Administrative Funding Payment shall be used to fund the Borrower Claims Trust Administrative Reserve. In the event the Trust Committee determines that additional Cash is necessary to satisfy the administrative costs and expenses of the Borrower Claims Trust, the Borrower Claims Trustee, at the direction of the Trust Committee, may fund the Borrower Claims Trust Administrative Reserve with other Borrower Available Assets, as necessary or appropriate in furtherance of the purposes thereof, provided that in no event may the Borrower Claims Trust receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities of the Borrower Claims Trust or to maintain the value of the Borrower Claims Trust Assets. Any Cash released from the Borrower Claims Trust Administrative Reserve shall be available for distribution in accordance with the provisions of <u>Article IV</u>.

(b) Cash in the Borrower Claims Trust Administrative Reserve shall be held separately and shall not be commingled with any other Cash constituting Borrower Claims Trust Assets.

6.5 <u>Return Amount Reserve</u>.

(a) There shall be established a Return Amount Reserve for the purpose of maintaining Return Amounts received and retained by the Borrower Claims Trust from time to time.

(b) Notwithstanding anything to the contrary in this Borrower Claims Trust Agreement, if at any time the Trust Committee determines that Cash held in the Return Amount Reserve may be distributed in accordance herewith, the Trust Committee shall direct the Borrower Claims Trustee to make a distribution of such Cash to holders of Borrower Claims Trust Beneficial Interests; provided, however, that such distribution shall (i) in the event the Return Amount was paid to the Borrower Claims Trust by a Trust Beneficiary in connection with its Allowed Borrower Claim against a GMACM Debtor, be made only to Trust Beneficiaries that received a Borrower Claims Payment in respect of Allowed GMACM Claims, pro rata in accordance with the Allowed GMACM Claim corresponding to such Trust Beneficiary's Borrower Claims Trust Beneficial Interest, or (ii) in the event the Return Amount was paid to the Borrower Claims Trust by a Trust Beneficiary in connection with its Allowed Borrower Claim against a RFC Debtor, be made only to Trust Beneficiaries that

received a Borrower Claims Payment in respect of Allowed RFC Claims, pro rata in accordance with the Allowed RFC Claim corresponding to such Trust Beneficiary's Borrower Claims Trust Beneficial Interest; provided, further, that prior to making any distribution pursuant to this Section 6.5(b), the Borrower Claims Trustee shall first fund the Borrower Claims Trust Administrative Reserve with Cash from the Return Amount Reserve necessary to satisfy the costs and expenses associated with such distribution.

(c)    All Cash held in the Return Amount Reserve shall be maintained with a United States FDIC insured financial institution, and may be maintained in an interest-bearing account, as the Trust Committee may from time to time determine. The Cash in the Return Amount Reserve shall be held separately and shall not be commingled with any other Cash constituting Borrower Claims Trust Assets.

6.6    <u>Reporting</u>. The Borrower Claims Trust shall cause to be prepared, and shall post to the Borrower Claims Trust Website, on a semi-annual basis, reports containing the following information regarding the activity of the Borrower Claims Trust during the most recently completed fiscal semi-annual period, and in the report prepared after the end of each Fiscal Year, the most recently completed Fiscal Year and since the Effective Date:

(a)    The Borrower Claims Payments made and Distributable Cash distributed during the relevant period and in the aggregate;

(b)    The amount of Return Amounts added to the Borrower Claims Trust Assets and Cash distributed from the Return Amount Reserve during the relevant period and in the aggregate;

(c)    Cash added to or withdrawn from the Borrower Claims Trust Administrative Reserve during the relevant period, and Cash held in the Borrower Claims Trust Administrative Reserve as of the end of such period;

(d)    the amount of Disputed Borrower Claims resolved by the Borrower Claims Trust during the relevant period, including, separately, the amounts of the Claims that were Allowed, in whole or in part, including both the Estimated Amounts thereof and amounts in which such Claims were Allowed, and the Estimated Amounts of the Claims that were not Allowed, in whole or in part, the amounts of the Disputed Borrower Claims remaining to be resolved as of the end of such period;

(e)    Cash distributed to holders of Disputed Borrower Claims that were Allowed, in whole or in part, during the relevant period, and the Cash in respect thereof released from the Disputed Claims Reserve, during the relevant period, and Cash held in the Disputed Claims Reserve as of the end of such period; and

(f)    such other information as the Trust Committee may determine to include from time to time.

6.7    <u>Borrower Claims Trust Agents; Employees</u>.

(a)    The Borrower Claims Trust may employ or engage such Borrower Claims Trust Agents, including counsel, advisors, administrators and other professionals (which may have represented parties in the Chapter 11 Cases, to the extent permissible by applicable law), as deemed reasonably necessary or desirable by the Borrower Claims Trustee to carry out the intents and purposes of the Borrower Claims Trust, without further order from the Bankruptcy Court, upon prior approval by the Trust Committee.  Borrower Claims Trust Agents shall be appointed, and their appointment may be terminated, by the Borrower Claims Trustee, in each case upon prior approval by the Trust Committee, unless authority in respect thereof is delegated by the Trust Committee to the Borrower Claims Trustee.  Borrower Claims Trust Agents shall be compensated at standard billing rates in effect at the time of service or such other rate of compensation that is reasonable and agreed to by the Borrower Claims Trustee, with the approval of the Trust Committee, and shall be paid without further motion, application, notice or other order of the Bankruptcy Court, except described in Section 6.7(c). All reasonable out-of-pocket expenses incurred by the Borrower Claims Trust Agents shall be reimbursed.

(b)    The Borrower Claims Trustee shall be authorized to hire such employees he or she deems appropriate, subject to such limitations, conditions and qualifications as may be imposed by the Trust Committee.

(c)    On a monthly basis, or as otherwise agreed by the Borrower Claims Trustee with approval of the Trust Committee, the Borrower Claims Trustee and each Borrower Claims Trust Agent performing services for the Borrower Claims Trust shall provide to the Borrower Claims Trust Committee a statement setting forth his, her or its aggregate fees and expenses (to the extent unbilled and outstanding) incurred in connection with its engagement, together with reasonable documentation of such expenses (any such report, a "Fee and Expense Report").  Such Borrower Claims Trust Agents shall be entitled to receive payment of such fees and expenses not later than 10 days after providing the Fee and Expense Report to the Trust Committee (the "Fee Notice Period").  Notwithstanding the foregoing, if any member of the Trust Committee objects to such Fee and Expense Report within the Fee Notice Period, the Borrower Claims Trust Agent and the Trust Committee may seek to resolve such objection on a consensual basis.  If a majority of the members of the Trust Committee and the Borrower Claims Trust Agent are unable to reach a consensual resolution within 30 days of the Trust Committee member's objection, the Borrower Claims Trust Agent shall be entitled to payment of the contested portion of its fees and/or expenses only pursuant to a Final Order of the Bankruptcy Court after notice and opportunity for a hearing, provided that the Borrower Claims Trust Agent shall be entitled to payment of the uncontested portion, if any, of such fees and expenses upon expiration of the Fee Notice Period.

## ARTICLE VII
## BORROWER CLAIMS TRUSTEE

7.1    Borrower Claims Trustee Generally.  The Borrower Claims Trustee shall have the general executive responsibility for the conduct of the affairs of the Borrower Claims Trust, and shall have such other functions, authority and duties as are provided in this Article VII and as elsewhere set forth in this Borrower Claims Trust Agreement and in the Trust Act, or as may be prescribed by the Trust Committee.  The Borrower Claims Trustee shall report to

Trust Committee, which shall be entitled to remove and replace the Borrower Claims Trustee in accordance with Section 7.2 .

7.2     <u>Appointment and Removal of Borrower Claims Trustee</u>.

(a)     By execution hereof, the Borrower Claims Trustee accepts his trusteeship of the Borrower Claims Trust on the terms set forth herein.  The Borrower Claims Trustee shall be a natural person at least 18 years of age, and upon his or her appointment, shall be deemed a trustee under the Trust Act, with all privileges and immunities appurtenant thereto, and, as necessary or applicable, shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(b)     The Borrower Claims Trustee shall hold office until the earlier of (i) the termination of the Borrower Claims Trust, (ii) his or her resignation, death or incapacity or (iii) his or her removal in accordance with this Borrower Claims Trust Agreement.

(c)     The Borrower Claims Trustee may resign upon sixty (60) days' prior written notice to the Trust Committee.  The Borrower Claims Trustee may be removed by the Trust Committee (x) for Cause, upon motion filed with the Bankruptcy Court, with the consent of a majority of the members of the Trust Committee (which removal shall be effective upon order of the Bankruptcy Court); or (y) by unanimous action of the members of the Trust Committee with or without Cause at any time; provided, that (i) in the case of removal pursuant to clause (y), the Trust Committee shall give notice of removal to the Borrower Claims Trustee no less than fifteen (15) days prior to the effectiveness of the Borrower Claims Trustee's removal, and (ii) notice of removal of a Borrower Claims Trustee shall be promptly filed with the Bankruptcy Court and posted to the Borrower Claims Trust Website.

(d)     In the event of a vacancy of the position of the Borrower Claims Trustee, whether as a result of the resignation, death, disability or removal of such Borrower Claims Trustee, a successor Borrower Claims Trustee shall be promptly appointed by the Trust Committee.  Notice of the appointment of any replacement Borrower Claims Trustee shall be filed with the Bankruptcy Court and posted to the Borrower Claims Trust Website.  If a majority of the members of the Trust Committee cannot agree on designation of such successor within 30 days after the occurrence of the event giving rise to the vacancy, the Bankruptcy Court shall determine such successor upon motion filed by any party in interest with the consent of any member of the Trust Committee.

(e)     Immediately upon appointment of any successor Borrower Claims Trustee, all rights, powers, duties, authority, and privileges of the predecessor Borrower Claims Trustee hereunder shall be vested in and undertaken by the successor Borrower Claims Trustee without any further act by any party, and the successor Borrower Claims Trustee shall not be liable personally for any act or omission of the predecessor Borrower Claims Trustee.

(f)     If the Borrower Claims Trustee is removed for Cause, he or she shall not be entitled to any accrued but unpaid fees, expenses or other compensation for services performed under this Borrower Claims Trust Agreement.  If the Borrower Claims Trustee resigns or is removed or replaced for a reason other than for Cause, he or she shall be entitled

to all accrued but unpaid fees, expenses, and other compensation for services performed under this Borrower Claims Trust Agreement, to the extent incurred, arising or relating to events occurring before his or her removal or resignation, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Borrower Claims Trustee.

7.3       Borrower Claims Trustee Compensation.    The Borrower Claims Trustee shall be (a) compensated for services in the administration of the Borrower Claims Trust from the Borrower Claims Trust Administrative Reserve at a fixed monthly rate (as in effect from time to time) of the Borrower Claims Trustee and/or his or her professionals and staff and (b) reimbursed from the Borrower Claims Trust Administrative Reserve for reasonable and customary costs and expenses commensurate with U.S. Trustee guidelines in effect from time to time.

7.4       Authority of the Borrower Claims Trustee.

(a)       The Borrower Claims Trustee shall be responsible for performing the obligations of the Borrower Claims Trust expressly provided for in this Borrower Claims Trust Agreement, otherwise giving effect to the intents and purposes of this Borrower Claims Trust Agreement and exercising the rights of trustees under the Trust Act.

(b)       Without limiting the generality of the preceding subsection, and in furtherance thereof, the Borrower Claims Trustee shall be expressly authorized and empowered to undertake, acting as appropriate through Borrower Claims Trust Agents, the following actions on behalf of the Borrower Claims Trust, and, except as otherwise provided in this Trust Agreement with respect to approvals, authorizations, or consents of the Trust Committee, without the need for any additional approvals, authorization, or consents, and without any further notice to or action, order or approval of the Bankruptcy Court, except as otherwise provided herein; provided, that all such actions are undertaken in a manner consistent with the purposes of the Borrower Claims Trust:

(i)       to hold, manage and monetize (to the extent such assets are non-Cash), and distribute the Borrower Claims Trust Assets for the benefit of Trust Beneficiaries, whether such beneficiaries' Claims are Allowed on or after the Effective Date;

(ii)       to hold the right to vote any claim or interest in any case under the Bankruptcy Code and receive distributions therein on behalf of the Borrower Claims Trust;

(iii)       to the extent consistent with the terms of the Plan, to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the Borrower Claims Trust Assets, including Borrower-Related Causes of Action;

(iv)       to engage in litigation in the name of the Borrower Claims Trust and file or pursue Borrower-Related Causes of Action and objections to Borrower Claims (including seeking to settle or disallow, recharacterize, reclassify, subordinate, or estimate any of them), and compromise, adjust, arbitrate, sue on or defend, prosecute,

abandon or otherwise deal with, any Borrower Claim or Borrower-Related Cause of Action;

(v)    to assert, enforce, waive or release rights, defenses, privileges or immunities related to the Borrower Claims Trust Assets or the Borrower Claims;

(vi)    to perform the duties, exercise the powers and asset the rights of a trustee under section 704 and section 1106 of the Bankruptcy Code, including holding and asserting applicable privileges and defenses with respect to the Borrower Claims, filing, commencing or prosecuting (x) objections to Borrower Claims under section 502 of the Bankruptcy Code, (y) turnover actions under sections 542 and 543 of the Bankruptcy Code and (z) avoidance actions against Borrowers under sections 544, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code;

(vii)    to establish and administer the Borrower Claims Trust Administrative Reserve;

(viii)    to establish and administer the Disputed Claims Reserve;

(ix)    to establish and administer the Return Amount Reserve;

(x)    subject to Section 7.1, to appoint, engage, review, supervise, remove, replace and determine the compensation payable to Borrower Claims Trust Agents and waive any conflicts of interest as deemed necessary or appropriate in the discretion of the Borrower Claims Trustee;

(xi)    to settle or otherwise resolve Disputed Borrower Claims;

(xii)    to monitor and enforce the implementation of the Plan insofar as relating to the Borrower Claims Trust Assets;

(xiii)    to file all Tax Returns and regulatory forms, returns, reports and other documents and financial information required to be filed with respect to the Borrower Claims Trust, including filing Tax Returns as a qualified settlement fund;

(xiv)    to request any appropriate Tax determination with respect to the Borrower Claims Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xv)    to seek the examination of any Entity under, and subject to, the provisions of the Bankruptcy Rules, including Bankruptcy Rule 2004;

(xvi)    to abandon any property that the Borrower Claims Trustee determines in his or her reasonable discretion to be de minimis value or otherwise burdensome to the Borrower Claims Trust, including any pending adversary proceeding or other legal action (by abandonment, dismissal, or any other discontinuance thereof);

(xvii)  to make Borrower Claims Payments to holders of Allowed Borrower Claims and distributions of Distributable Excess Cash to holders of Borrower Claims Trust Beneficial Interests;

(xviii) to make Cash distributions from the Return Amount Reserve in accordance with Section 6.5;

(xix)   to prepare and disseminate reports, as provided in Section 6.6;

(xx)    to determine and satisfy all liabilities created, incurred or assumed by the Borrower Claims Trust, including all expenses and other payments relating to the Borrower Claims Trust Assets, including reasonable fees and expenses of the Borrower Claims Trustee pursuant to this Borrower Claims Trust Agreement;

(xxi)   to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Borrower Claims Trust and execute any documents or pleadings related to the liquidation of the Borrower Claims Trust Assets or other matters related to the Borrower Claims Trust;

(xxii)  to borrow funds on behalf of, and solely as a liability of, the Borrower Claims Trust, which loans may be secured by the Borrower Claims Trust Assets but shall be without recourse to the Borrower Claims Trustee in his or her individual capacity, as are necessary to enable the Borrower Claims Trustee to discharge his or her duties under this Borrower Claims Trust Agreement;

(xxiii) to establish and maintain bank accounts and terminate such accounts on behalf of the Borrower Claims Trust;

(xxiv)  to set off amounts owed to the Debtors against distributions to Trust Beneficiaries;

(xxv)   to bring suits or defend itself against such suits, if any, in connection with any matter arising from or related to the Plan Documents that affects in any way the rights or obligations of the Borrower Claims Trust, the Trust Beneficiaries (whether such Borrower Claims are Allowed as of the Effective Date or become Allowed at any subsequent time), in their capacities as such;

(xxvi)  to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Borrower Claims Trustee, and, if so determined by the Borrower Claims Trustee, any Borrower Claims Trust Agents, and such other insurance as the Borrower Claims Trustee determines as appropriate for the circumstances from time to time;

(xxvii) to invest Borrower Claims Trust Assets (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684;

(xxviii)      to take all actions necessary and appropriate to minimize any adverse Tax consequences to the holders of Allowed Borrower Claims; provided that such actions do not result in an adverse Tax consequence to the Borrower Claims Trust and are consistent with and are not contrary to the treatment of the Borrower Claims Trust as a "qualified settlement fund" for United States federal income Tax purposes;

(xxix)   to remove and replace the Delaware Trustee;

(xxx)   to protect and enforce the rights of the Borrower Claims Trust Assets by any lawful method deemed appropriate by the Borrower Claims Trustee, including by judicial proceedings or pursuant to applicable bankruptcy, insolvency, moratorium or similar law or general principles of equity;

(xxxi)  to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions, as determined by the Borrower Claims Trustee to be necessary or appropriate to effectuate the terms of the Plan regarding the Borrower Claims Trust Assets following the Effective Date; and

(xxxii) to take such other and further actions, including, transfers or other corporate transactions, as determined by the Borrower Claims Trustee to be necessary or appropriate, in furtherance of the purposes of the Plan Documents in respect of the Borrower Claims Trust Assets as are not inconsistent with this Borrower Claims Trust Agreement or the other Plan Documents.

(c)      The Borrower Claims Trustee shall comply with all applicable laws, shall act to maximize the distributions to Trust Beneficiaries to the extent reasonably possible under the circumstances and in furtherance of the purposes of this Borrower Claims Trust.

(d)      To the extent provided in the Cooperation Agreement, certain of the functions of the Borrower Claims Trust may be performed by the Liquidating Trust on behalf of the Borrower Claims Trust in accordance with the terms of the Cooperation Agreement.

7.5      Limitations on Borrower Claims Trustee Authority.  Notwithstanding any provision in this Borrower Claims Trust Agreement to the contrary, the Borrower Claims Trustee shall not do or undertake any of the following on behalf of the Borrower Claims Trust without the prior approval of the Trust Committee:

(a)      Guarantee any debt;

(b)      Loan to any Person, any portion of the Borrower Claims Trust Assets;

(c)      Transfer or commingle Borrower Claims Trust Assets with any account of another trust established under the Plan;

(d)      Make any transfer, assignment or distribution of Borrower Claims Trust Assets, other than as expressly authorized hereunder; or

(e)      Permit or cause the Borrower Claims Trust to hold 50% or more of the stock (in either vote or value) of any Entity that is treated as a corporation for federal income tax purposes or have any interest in an Entity that is treated as a partnership for federal income tax purposes, unless such stock or partnership interest was obtained involuntarily or as a matter of practical economic necessity, including enforcement of and execution of judgments, in order to preserve the value of the Borrower Claims Trust Assets.

7.6      Conflicts of Interest.  If the Borrower Claims Trustee determines, in his or her reasonable discretion, that he or she has a material conflict of interest with respect to the settlement of a Borrower Claim, the resolution or prosecution of a Borrower-Related Cause of Action, or any other matter, the Borrower Claims Trustee shall select a designee approved by the Trust Committee to act on behalf of the Borrower Claims Trust solely with respect to such matter (the "Designee"), with such Designee's authority to act on behalf of the Borrower Claims Trust to terminate upon the matter's conclusion.  If the Designee files a pleading, motion, or other paper with a court or tribunal on behalf of the Borrower Claims Trust, it shall do so in its own name as "Designee of the ResCap Borrower Claims Trust".

7.7      Fiduciary Duty and Standard of Care.

(a)      The Borrower Claims Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Borrower Claims Trust and not otherwise, and in accordance with applicable law, including the Trust Act.

(b)      The Borrower Claims Trustee in the exercise of his or her duties hereunder shall act in accordance with principles of good faith and fair dealing.

7.8      Bond or Insurance.  The Borrower Claims Trustee shall obtain a trustee's bond (a "Trustee's Bond") from an Entity approved by the Trust Committee to protect the Trust Beneficiaries with respect to his obligations as Borrower Claims Trustee.  The premiums for such the Trustee's Bond shall be paid with Borrower Claims Trust Assets as an expense of administering the Borrower Claims Trust.  The amount of the Trustee's Bond shall be determined based upon the amount of Cash under the control of the Borrower Claims Trustee at any time, and shall be adjusted from time to time in accordance with Cash receipts and disbursements by the Borrower Claims Trust.  Alternatively, with approval of the Trust Committee, the Borrower Claims Trustee may satisfy the requirement to obtain a Trustee's Bond with insurance coverage for the liabilities, duties and obligations of the Borrower Claims Trustee and his agents, employees, and professionals (in the form of an errors and omissions policy or otherwise) which may, at the option of the Borrower Claims Trustee unless unanimously disapproved by the Trust Committee, remain in effect for a reasonable period after the conclusion of the Borrower Claims Trustee's service.  In the event the Borrower Claims Trustee elects to satisfy the requirements of this Section 7.9 with insurance coverage, such insurance coverage shall be maintained by the Borrower Claims Trust in accordance with Section 2.11.

**ARTICLE VIII**
**DELAWARE TRUSTEE**

31

8.1    <u>Appointment</u>.  The Delaware Trustee shall act solely for the purpose of complying with the requirement of section 3807 of the Trust Act, and its powers and obligations hereunder shall become effective upon its execution of this Borrower Claims Trust Agreement.

8.2    <u>Powers</u>.

(a)    The duties and responsibilities of the Delaware Trustee shall be limited solely to (i) accepting legal process served on the Borrower Claims Trust in the State of Delaware, (ii) the execution of any certificates required to be filed with the office of the Delaware Secretary of State that the Delaware Trustee is required to execute under section 3811 of the Trust Act (including without limitation the Certificate of Trust), and (iii) any other duties specifically allocated to the Delaware Trustee in this Borrower Claims Trust Agreement. Except as provided in the foregoing sentence, the Delaware Trustee shall have no management responsibilities or owe any fiduciary duties to the Borrower Claims Trust, the Borrower Claims Trustee, or the Trust Beneficiaries. The filing of the Certificate of Trust with the Secretary of State of the State of Delaware as provided under the Trust Act is hereby ratified.

(b)    By its execution hereof, the Delaware Trustee accepts the trusteeship of the Borrower Claims Trust on the terms set forth herein. Except as otherwise expressly set forth in <u>Section 8.2(a)</u>, the Delaware Trustee shall not have any duty or liability with respect to the administration of the Borrower Claims Trust, the investment of the Borrower Claims Trust Assets or the distribution of the Borrower Claims Trust Assets to the Trust Beneficiaries, and no such duties shall be implied. The Delaware Trustee shall not be liable for the acts or omissions of the Borrower Claims Trustee, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Borrower Claims Trustee under this Borrower Claims Trust Agreement.  The Delaware Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Delaware Trustee shall not be personally liable under any circumstances, except for its own gross negligence, bad faith or willful misconduct.  Without limiting the foregoing:

(i)    the Delaware Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence;

(ii)    the Delaware Trustee shall not have any duty or obligation to manage or deal with the Borrower Claims Trust Assets, or to otherwise take or refrain from taking any action under the Borrower Claims Trust Agreement except as expressly provided by the terms hereof, and no implied trustee duties or obligations shall be deemed to be imposed on the Delaware Trustee;

(iii)    no provision of this Borrower Claims Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Delaware Trustee has reasonable grounds to believe that the payment of

32

such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iv)    the Delaware Trustee shall not be personally liable for the validity or sufficiency of this Borrower Claims Trust Agreement or for the due execution hereof by the other parties hereto;

(v)    the Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect;

(vi)    the Delaware Trustee may request the Borrower Claims Trustee to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vii)    in the exercise of its duties hereunder, the Delaware Trustee (I) may act directly or through agents or attorneys pursuant to agreements entered into with any of them, and (II) may consult with nationally recognized counsel selected by it in good faith and with due care and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel; and

(viii)    the Delaware Trustee acts solely as Delaware Trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Borrower Claims Trust Agreement shall look only to the Borrower Claims Trust Assets for payment or satisfaction thereof;

(ix)    the Delaware Trustee shall not be personally liable for any representation, warranty, covenant, agreement, or indebtedness of the Borrower Claims Trust;

(x)    the Delaware Trustee shall not incur liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by the Borrower Claims Trustee, as to such fact or matter, and such certificate shall

constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon; and

(xi)     the Delaware Trustee shall not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Agreement under any circumstances.

8.3     <u>Compensation</u>. The Delaware Trustee shall be entitled to receive compensation out of Borrower Claims Trust Administrative Reserve for the services that the Delaware Trustee performs in accordance with this Borrower Claims Trust Agreement in accordance with such fee schedules as shall be agreed from time to time by the Delaware Trustee and the Borrower Claims Trustee, and if so required by the Plan Documents or applicable law, as approved by the Bankruptcy Court. The Delaware Trustee may also consult with counsel (who may be counsel for the Borrower Claims Trustee) with respect to those matters that relate to the Delaware Trustee's role as the Delaware Trustee of the Borrower Claims Trust, and the reasonable legal fees incurred in connection with such consultation shall be reimbursed out of Borrower Claims Trust Administrative Reserve.

8.4     <u>Duration and Replacement</u>.  The Delaware Trustee shall serve for the duration of the Borrower Claims Trust or until the earlier of (i) the effective date of the Delaware Trustee's resignation, or (ii) the effective date of the removal of the Delaware Trustee. The Delaware Trustee may resign at any time by giving thirty (30) days' written notice to the Borrower Claims Trustee; <u>provided</u>, <u>however</u>, that such resignation shall not be effective until such time as a successor Delaware Trustee has accepted appointment. The Delaware Trustee may be removed with the Borrower Claims Trustee, by providing thirty (30) days' written notice to the Delaware Trustee; <u>provided</u>, <u>however</u>, that such removal shall not be effective until such time as a successor Delaware Trustee has accepted appointment. Upon the resignation or removal of the Delaware Trustee, the Borrower Claims Trustee shall appoint a successor Delaware Trustee.  If no successor Delaware Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the Delaware Trustee may petition the Bankruptcy Court for the appointment of a successor Delaware Trustee. Any successor Delaware Trustee appointed pursuant to this Section shall be eligible to act in such capacity in accordance with this Borrower Claims Trust Agreement and, following compliance with this Section, shall become fully vested with the rights, powers, duties and obligations of its predecessor under this Borrower Claims Trust Agreement, with like effect as if originally named as Delaware Trustee. Any such successor Delaware Trustee shall notify the Delaware Trustee of its appointment by providing written notice to the Delaware Trustee and upon receipt of such notice, the Delaware Trustee shall be discharged of its duties herein.  Any such successor Delaware Trustee shall also file an amendment to the Certificate of Trust as required by the Trust Act.

# ARTICLE IX
# TAX MATTERS

9.1     <u>Tax Treatment</u>.

(a)      For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Borrower Claims Trustee and the Trust Beneficiaries) shall treat the Borrower Claims Trust as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-2.

9.2      Tax Reporting.

(a)      The Borrower Claims Trust shall file Tax Returns treating the Borrower Claims Trust as a qualified settlement fund and in accordance with the Plan.  The Borrower Claims Trust also shall timely file (or cause to be timely filed) and/or provide to the Trust Beneficiaries any other statements, returns, or disclosures relating to the Borrower Claims Trust that are required by any Governmental Unit.

(b)      The Borrower Claims Trust may request an expedited determination of Taxes of the Borrower Claims Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Borrower Claims Trust for all taxable periods through the dissolution of the Borrower Claims Trust.

9.3      Tax Payment.  The Borrower Claims Trust shall be responsible for the payment, out of the Borrower Claims Trust Administrative Reserve, of any Taxes imposed on the Borrower Claims Trust or the Borrower Claims Trust Assets, including the Disputed Claims Reserve.  In the event, and to the extent, that any Cash retained on account of Disputed Borrower Claims in the Disputed Claims Reserve is insufficient to pay any portion of such Taxes attributable to the taxable income arising from the assets held in the Disputed Claims Reserve, such Taxes shall be (x) reimbursed from any subsequent Cash amounts retained on account of the respective classes of Disputed Borrower Claims or (y) to the extent such Disputed Borrower Claims subsequently have been resolved, deducted from any amounts distributable by the Borrower Claims Trust as a result of the resolutions of such Disputed Borrower Claims.

## ARTICLE X
## LIMITATION OF LIABILITY AND INDEMNIFICATION

10.1      Limitation of Liability.

(a)      None of the Delaware Trustee, the Borrower Claims Trustee, the members of the Trust Committee or any Borrower Claims Trust Agent, or their respective advisors or professionals, shall be liable to the Borrower Claims Trust or any Trust Beneficiary for any damages arising out of the creation, operation or termination of the Borrower Claims Trust, including actions taken or omitted in fulfillment of his or her duties with respect to the Borrower Claims Trust, except in the case of such party's gross negligence, bad faith or willful misconduct; provided, that in no event will any such party be liable for punitive, exemplary, consequential or special damages under any circumstances.  Furthermore, none of the Delaware Trustee, the Borrower Claims Trustee or members of the Trust Committee shall be liable to the Borrower Claims Trust or any Trust Beneficiary for any action taken in good faith reliance upon the advice of counsel or other Borrower Claims Trust Agent.

(b)     None of the Delaware Trustee, the Borrower Claims Trustee, the members of the Trust Committee or the Borrower Claims Trust Agents, when acting in such capacities, shall be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any person, other than the Borrower Claims Trust, in connection with the affairs of the Borrower Claims Trust to the fullest extent provided under section 3803 of the Trust Act, and all persons claiming against any of  the Delaware Trustee, the Borrower Claims Trustee, or Borrower Claims Trust Agent, or otherwise asserting claims of any nature in connection with affairs of the Borrower Claims Trust, shall look solely to the Borrower Claims Trust Assets for satisfaction of any such claims.

(c)     Nothing contained in the Plan Documents shall be deemed to be an assumption by the Delaware Trustee, the Borrower Claims Trustee, the Trust Committee or any Borrower Claims Trust Agent of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by any of them to assume or accept any such liability, obligation or duty.

10.2     <u>Indemnification</u>.

(a)     The Delaware Trustee, the Borrower Claims Trustee, the members of the Trust Committee, and their respective affiliates, and the officers, directors, partners, managers, members, and employees of each of them, as the case may be (all persons so entitled to indemnification, collectively, the "<u>Covered Parties</u>"), shall be indemnified and held harmless, to the fullest extent permitted by law by the Borrower Claims Trust from and against any and all losses, claims, taxes, damages, reasonable expenses and liabilities (including liabilities under state or federal securities laws) of any kind and nature whatsoever, to the extent that such expenses arise out of or are imposed upon or asserted against such indemnified persons with respect to the creation, operation or termination of the Borrower Claims Trust or the execution, delivery or performance of this Borrower Claims Trust Agreement or the transactions contemplated hereby and shall not be liable for actions taken or omitted in their capacity, as Delaware Trustee, Borrower Claims Trustee or a member of the Trust Committee, on behalf of, or in fulfillment of their duties with respect to, the Borrower Claims Trust, except those acts that are determined by Final Order to have arisen out of their own gross negligence, bad faith or willful misconduct, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities regarding the implementation or administration of the Plan Documents or the discharge of their respective duties hereunder or thereunder or in respect thereof, except for any actions or inactions that are determined by Final Order to have arisen out of their own gross negligence, bad faith, or willful misconduct.

(b)     The Covered Parties shall be entitled to obtain advances from the Borrower Claims Trust to cover their reasonable expenses of defending themselves in any action threatened or brought against them as a result of the acts or omissions, actual or alleged, of any such party in its capacity as such; <u>provided</u>, <u>however</u>, that the Covered Parties receiving such advances shall repay the amounts so advanced to the Borrower Claims Trust immediately

upon the entry of a Final Order finding that such parties were not entitled to any indemnity under the provisions of this Section 10.2.

(c)     Any claim of the Covered Parties to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Borrower Claims Trust Assets, bonds (if any) or any applicable insurance that the Borrower Claims Trust has purchased, as provided in Section 2.10, and no recourse may be had to the Liquidating Trust, the Released Parties or any creditor in the Chapter 11 Cases.

(d)     The Borrower Claims Trust may also determine to provide indemnification to Borrower Claims Trust Agents and their respective officers, directors, partners, managers, members and employees, on such terms as the Borrower Claims Trustee may determine, provided that any claim for indemnification shall be satisfied solely from the Borrower Claims Trust Assets or insurance.

## ARTICLE XI
## DURATION OF BORROWER CLAIMS TRUST

11.1     Duration.

(a)     The Borrower Claims Trust shall be dissolved as soon as practicable after the date that is the earliest to occur of: (i) the distribution of all Borrower Claims Trust Assets pursuant to the Plan Documents, (ii) the determination of the Trust Committee that the administration of the Borrower Claims Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all the distributions required to be made under this Borrower Claims Trust Agreement have been completed and, in each case, all Borrower Claims have been resolved by Final Order, written agreement or pursuant to the Plan Documents; provided, however, that in no event shall the Borrower Claims Trust be dissolved later than three (3) years from the Effective Date, unless the Bankruptcy Court, upon motion within the six (6) months prior to the third (3rd) anniversary of the Effective Date (or within six (6) months prior to the end of an extension period), determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidation of the Borrower Claims Trust Assets (without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a qualified settlement fund for United States federal income tax purposes).

(b)     If at any time the Trust Committee determines, in reliance upon its professionals, that the expense of administering the Borrower Claims Trust, including the making of a final distribution to the Trust Beneficiaries, is likely to exceed the value of the assets remaining in the Borrower Claims Trust, the Borrower Claims Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Borrower Claims Trust, (ii) donate any balance to an organization selected by the Trust Committee which is described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code, as provided in Section 2.7(b) hereof, and (iii) dissolve the Borrower Claims Trust.

11.2    <u>Post-Termination</u>.  After the termination of the Borrower Claims Trust and solely for the purpose of liquidating and winding up the affairs of the Borrower Claims Trust, the Borrower Claims Trustee and the Delaware Trustee shall continue to act as such until their duties have been fully performed.  Upon distribution of all the Borrower Claims Trust Assets, the Borrower Claims Trustee shall designate the Liquidating Trust (or an agent thereof) to continue to retain all books and records pertaining to the Borrower Claims Trust Assets that have been delivered to the Liquidating Trust on the Effective Date, or created and maintained by the Borrower Claims Trust thereafter, subject to the provisions of the Cooperation Agreement.

11.3    <u>Destruction of Books and Records</u>.  If so determined by the Borrower Claims Trustee, or absent such determination, in the discretion of the Liquidating Trust or agent thereof appointed pursuant to <u>Section 11.2</u>, all books and records pertaining to the Borrower Claims Trust and the Trust Beneficiaries that have been created and maintained by the Borrower Claims Trust after the Effective Date may be destroyed at any time following the date that is six (6) years after the final distribution of Borrower Claims Trust Assets (unless such records and documents are necessary to fulfill the Borrower Claim Trust's remaining obligations) subject to the terms of any joint prosecution and common interests agreement(s) to which the Borrower Claims Trust may be a party, or such earlier date as set by the Bankruptcy Court; <u>provided</u>, <u>however</u>, that the Borrower Claims Trust or the designee appointed pursuant to <u>Section 11.2</u> shall obtain an order of the Bankruptcy Court before disposing of any books and records that are reasonably likely to pertain to pending litigation in which the Borrower Claims Trust or Borrower Claims Trustee is involved.

11.4    <u>Discharge</u>.  Except as otherwise specifically provided herein, upon the final distribution of Borrower Claims Trust Assets and the filing by the Delaware Trustee of a Certificate of Cancellation with the Secretary of State of the State of Delaware, the Delaware Trustee and the Borrower Claims Trustee shall be deemed discharged and have no further duties or obligations hereunder, and the Borrower Claims Trust will be deemed to have been dissolved.  In the event that there are Borrower Claims Trust Assets at the termination of the Borrower Claims Trust, the Trust Committee shall cause to be donated such Borrower Claims Trust Assets to a charitable organization of the Borrower Claims Trustee's choice described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code, as provided in <u>Section 2.7(b)</u>.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1    <u>Governing Law</u>.  This Borrower Claims Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to conflicts of law).

12.2    <u>Jurisdiction</u>.  Subject to the proviso below, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Borrower Claims Trust, including, without limitation, the administration and activities of the Borrower Claims Trust, <u>provided</u>, <u>however</u>, that notwithstanding the foregoing or anything to the contrary set forth in the Plan, the Borrower Claims Trustee shall have power and authority to bring (or cause to be brought) any

action in any court of competent jurisdiction to prosecute any Borrower-Related Causes of Action.

12.3    Severability.  In the event that any provision of this Borrower Claims Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Borrower Claims Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Borrower Claims Trust Agreement shall be valid and enforceable to the fullest extent permitted by law.

12.4    Notices.  Any notice or other communication required or permitted to be made under this Borrower Claims Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile, sent by nationally recognized overnight delivery service, or mailed by first-class mail:

> (i)    if to the Delaware Trustee, to:
>
>> [_____]
>> [_____]
>> [_____]
>> Attention: Trust Administration
>
> (iii)    if to the Borrower Claims Trustee, to:
>
>> [_____]
>> [_____]
>> [_____]
>
> (iii)    if to any Trust Beneficiary, to the last known address of such Trust Beneficiary according to the records of the Borrower Claims Trust.

12.5    Headings.  The headings contained in this Borrower Claims Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Borrower Claims Trust Agreement or of any term or provision hereof.

12.6    Plan Documents.  Nothing contained herein shall modify the terms of any other Plan Document, which are intended to be supplemented by the terms of this Borrower Claims Trust Agreement.  However, to the extent that the terms of any of the other Plan Documents are inconsistent with the terms set forth in this Borrower Claims Trust Agreement with respect to the Borrower Claims Trust, then the terms of this Borrower Claims Trust Agreement shall govern.

12.7    Cooperation.  The Debtors and the Liquidating Trust shall reasonably cooperate with the Borrower Claims Trust in carrying out its duties and exercising its rights hereunder.

12.8    Confidentiality.  The Borrower Claims Trustee, the Delaware Trustee, the members of the Trust Committee and the Borrower Claims Trust Agents, and their respective officers, directors, partners, managers, members and employees (the "Confidentiality Parties"), shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidentiality Party of or pertaining to the Debtors, the Borrower Claims Trust, the Trust Beneficiaries or the Borrower Claims Trust Assets; provided, however, that such information may be disclosed if—

> (i)    it is now or in the future becomes generally available to the public other than as a result of a disclosure by any of the Confidentiality Parties;

> (ii)    such disclosure is required of any of the Confidentiality Parties pursuant to legal process, including subpoena or other court order or other applicable laws or regulations; or

> (iii)    the Borrower Claims Trustee determines that such disclosure is in the interests of the Borrower Claims Trust or the Trust Beneficiaries.

12.9    Entire Borrower Claims Trust Agreement.  This Borrower Claims Trust Agreement and the Exhibits attached hereto, and the Plan Documents, contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

12.10    Named Party.  In pursuing any Borrower-Related Causes of Action, or otherwise administering the Borrower Claims Trust or any Borrower Claims Trust Assets, including, without limitation, the execution of documents, such as bills of sale, releases, and agreements, the Borrower Claims Trustee may authorize the pursuit of such matters and/or execution of any such documents in the name of "ResCap Borrower Claims Trust" or in such other names or such representative capacities as necessary or appropriate.

12.11    Amendment.  This Borrower Claims Trust Agreement may be amended by the Trust Committee; provided, however, that no amendment shall be made to this Borrower Claims Trust Agreement that makes it inconsistent with the provisions of the Plan or the Confirmation Order.  Notwithstanding this Section 12.11 no amendments to this Borrower Claims Trust Agreement shall be inconsistent with the purpose and intention of the Borrower Claims Trust to liquidate in an orderly manner the Borrower Claims Trust Assets (which will maximize the value of such assets).

12.12    Counterparts.  This Borrower Claims Trust Agreement may be executed in any number of counterparts, each of which shall be deemed original, but such counterparts shall together constitute one and the same instrument.  A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

**[REMAINDER OF PAGE BLANK]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Borrower Claims Trust Agreement or caused this Borrower Claims Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

Residential Capital, LLC, ditech, LLC, DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC

By: _____

Name:

Title:

By: _____

Name:

Title:

[_____], as Delaware Trustee

By:        _____
Name:
Title:


_____, as Borrower Claims Trustee

## EXHIBIT A

### FORM OF
### CERTIFICATE OF TRUST
### OF
### RESCAP BORROWER CLAIMS TRUST

This Certificate of Trust of ResCap Borrower Claims Trust is being duly executed and filed on behalf of such trust by the undersigned, as trustee, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. C. § 3801 et seq.) (the "Trust Act").

1.    Name.  The name of the Delaware statutory trust formed by this Certificate of Trust is ResCap Borrower Claims Trust.

2.    Delaware Trustee.  The name and business address of the trustee of the Trust with a principal place of business in the State of Delaware are [_____].

3.    Effective Date.  This Certificate of Trust shall be effective upon its filing with the Secretary of State of the State of Delaware.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Trust in accordance with section 3811(a)(1) of the Trust Act.

[DELAWARE TRUSTEE], not in its individual capacity but solely as trustee


By:_____
Name:
Title:


_____

[BORROWER CLAIMS TRUSTEE], not in [his/her] individual capacity but solely as trustee

## EXHIBIT B

**Initial Borrower Claims Trust Budget**

[To come]

**<u>EXHIBIT C</u>**

**Initial Committee Members**

**Initial Members of the Borrower Claims Trust Committee**

Set forth below is information regarding the initial members of the Borrower Claims Trust Committee upon the Effective Date.[1]

1.   Rowena Drennen for the Kessler Settlement Class in the consolidated class action styled *In re Community Bank of Northern Virginia Second Mortgage Lending Practice Litigation*, consolidated in the United States District Court for the Western District of Pennsylvania, MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688, 05-1386.

2.   Steven Mitchell for the Mitchell Settlement Class in the civil action styled *Steven and Ruth Mitchell v. Residential Funding Company, LLC, et al.*, currently pending before the Circuit Court of Jackson County, Missouri, Division 4, Case No. 03-CV-220489.

3.   [Mark Strauss as proposed counsel for the putative Rothstein Class].

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4819, Ex. 1] (as may be amended from time to time, the "**Plan**").