| MORRISON & FOERSTER LLP | KRAMER LEVIN NAFTALIS & FRANKEL LLP |
|---|---|
| Gary S. Lee | Kenneth H. Eckstein |
| Lorenzo Marinuzzi | Douglas H. Mannal |
| Todd M. Goren | Stephen D. Zide |
| Jennifer L. Marines | Rachael L. Ringer |
| 1290 Avenue of the Americas | 1177 Avenue of the Americas |
| New York, New York 10104 | New York, New York 10036 |
| Telephone: (212) 468-8000 | Telephone: (212) 715-9100 |
| Facsimile: (212) 468-7900 | Facsimile: (212) 715-8000 |
| | |
| *Counsel for Debtors and Debtors-in-Possession* | *Counsel for the Official Committee of Unsecured Creditors* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— )
In re: )                         Case No. 12-12020 (MG)
)
RESIDENTIAL CAPITAL, LLC, et al., )      Chapter 11
)
Debtors. )                       Jointly Administered
---------------------------------------------------------------- )

**NOTICE OF FILING OF PROPOSED ORDER CONFIRMING FIRST AMENDED**
**JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC, et al.**
**AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**PLEASE TAKE NOTICE** that on November 12 2013, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") and the official committee of unsecured creditors (the "Creditors' Committee" and together with the Debtors, the "Plan Proponents") filed their proposed *Order Confirming First Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Proposed Confirmation Order"). A copy of the Proposed Confirmation Order is attached hereto as Exhibit 1.

- 1 -

Dated: November 12, 2013

Respectfully submitted,

/s/ Gary S. Lee
Gary S. Lee
Lorenzo Marinuzzi
Todd M. Goren
Jennifer L. Marines
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile:  (212) 468-7900

-and-

Kenneth H. Eckstein
Doughlas H. Mannal
Stephen D. Zide
Rachael L. Ringer
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-3280
Facsimile:  (212) 715-8000

*Counsel for the Official Committee of
Unsecured Creditors*

**<u>Exhibit 1</u>**

ny-1117420

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 12-12010 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |

**ORDER CONFIRMING FIRST AMENDED JOINT CHAPTER 11 PLAN**
**PROPOSED BY RESIDENTIAL CAPITAL, LLC, et al. AND**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Residential Capital, LLC ("**ResCap**")[1] and its direct and indirect subsidiaries,

each as a chapter 11 debtor and debtor-in-possession (collectively, the "**Debtors**") in the above-

referenced chapter 11 cases (the "**Chapter 11 Cases**"), and the Official Committee of Unsecured

Creditors (the "**Creditors Committee**" and, together with the Debtors, the "**Plan Proponents**")

having proposed the First Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC,

et al. and the Official Committee of Unsecured Creditors [Docket No. --], dated [November 12],

2013 (the "**Plan**," a copy of which is attached hereto as **Appendix 1**); the Court having

conducted a hearing to consider confirmation of the Plan on November 19, 2013 through

November [ ], 2013 (the "**Confirmation Hearing**"); the Court having considered: (i) each of the

Confirmation Declarations,[2] each admitted into evidence at the Confirmation Hearing, (ii) the

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[2] The "**Direct Testimony**" consists of the: (a) Affidavit of P. Joseph Morrow IV Certifying the Tabulation of Votes on the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (the "**Voting Declaration**") [Docket No. --], (b) Direct Testimony of Fernando Acebedo [Docket No. --], (c) Direct Testimony of Lucy Allen [Docket No. --]; (d) Direct Testimony of Martin Blumentritt [Docket No --]; (e) Direct Testimony of Michael Carpenter [Docket No. --]; (f) Direct Testimony of John Dubel [Docket No. --]; (g) Direct Testimony of Jose Fraga [Docket No. --]; (h) Direct Testimony of Ronald Friedman [Docket No. --]; (i) Direct Testimony of Gina Gutzeit [Docket No. --]; (j) Direct Testimony of Tammy Hamzehpour [Docket No. --]; (k) Direct Testimony of Susheel Kirpalani [Docket No. --]; (l) Direct Testimony of Lewis Kruger [Docket No. --]; (m) Direct Testimony of Jeffrey A. Lipps [Docket No. --]; (n) Direct Testimony of Ralph Mabey [Docket No. --]; (o) Direct Testimony of Robert Major [Docket No. --]; (p) Direct Testimony of Thomas Marano [Docket No. --]; (q) Direct Testimony of Brendan Meyer [Docket No. --]; (r) Direct Testimony of Nancy Mueller-Handal [Docket

arguments of counsel presented at the Confirmation Hearing, (iii) the objections filed with respect to confirmation of the Plan, (iv) the Plan Proponents Memorandum of Law in Support of Confirmation of the Plan (the "**Confirmation Memorandum**") [Docket No. --], (v) the Plan Proponents' Omnibus Response to Certain Objections to Confirmation (the "**Reply**") [Docket No. --], and (vi) the various responses and statements in support of confirmation filed by parties in interest [Docket Nos. --]; and the Court being familiar with the Plan and other relevant factors affecting these Chapter 11 Cases pending under the Bankruptcy Code; and the Court having taken judicial notice of the entire docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Court and/or its duly appointed agent, and all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases; and the Court having found that due and proper notice has been given with respect to the Confirmation Hearing and the deadlines and procedures for filing objections to the Plan; and the Court having heard the statements, arguments and objections made in respect of Confirmation of the Plan, the Court having considered any and all objections to the Plan and to Confirmation and all such objections being consensually resolved, withdrawn, or overruled on the merits; and the appearance of all interested parties having been duly noted in the record of the Confirmation Hearing; and upon the record of the Confirmation Hearing, and after due deliberation thereon, and sufficient cause appearing therefor;

---

No. --]; (s) Direct Testimony of Thomas Musarra [Docket No. --]; (t) Direct Testimony of Alan Pfeiffer [Docket No. --]; (u) Direct Testimony of Mark Renzi [Docket No. --]; (v) Direct Testimony of Mamta Scott [Docket No. --]; (w) Direct Testimony of Michael Pinzon [Docket No. --]; (x) Direct Testimony of Kathy Priore [Docket No. --]; (y) Direct Testimony of Mark A. Renzi [Docket No. --]; (z) Direct Testimony of Mamta Scott [Docket No. --]; (aa) Direct Testimony of Frank Sillman [Docket No. --]; (bb) Direct Testimony of Mary Sohlberg [Docket No. --]; (cc) Direct Testimony of William Thompson [Docket No. --]; (dd) Direct Testimony of Barbara Westman [Docket No. --]; (ee) Declaration of Jim Young [Docket No. -].

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND CONCLUDED, that:

### JURISDICTION AND VENUE

A.    **Jurisdiction and Venue**.   The Court has jurisdiction over this matter and these Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), this Court has jurisdiction to enter a final order with respect thereto, and this Court's exercise of such jurisdiction is constitutional in all respects.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are proper debtors under section 109 of the Bankruptcy Code, and the Debtors and the Creditors' Committee are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

B.    **Proper Notice**.  As described below and as evidenced by the Affidavit of Service of P. Joseph Morrow IV re: Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of Plan, and (VI) Granting Related Relief [Docket No. 5196], dated September 25, 2013, due, adequate and sufficient notice of the Disclosure Statement, the Plan, including the Debtor Release and the Third Party Release, the Plan Supplement, and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan and with respect to confirmation was given in compliance with the Bankruptcy Rules, and no other or further notice is or shall be required.

- 3 -

C.    **Transmission of Ballots**. Ballots were transmitted to holders of Claims and Equity Interests in the Classes under the Plan that are treated as impaired ("**Impaired**") within the meaning of section 1124 of the Bankruptcy Code (the "**Voting Impaired Classes**") and entitled to vote on the Plan in accordance with the Plan and the Disclosure Statement Orders.

D.    **Good Faith Solicitation (11 U.S.C. § 1125(e))**. The Plan Proponents solicited votes for the Plan from the holders of Claims in the Voting Impaired Classes in good faith and in a manner consistent with the Bankruptcy Code, including, but not limited to, section 1125(e) of the Bankruptcy Code.

E.    **Modification of the Plan (11 U.S.C. § 1127(a))**. Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3018, the Plan Proponents proposed certain modifications to the Plan (i) as reflected in the modified version of the Plan filed on November [12], 2013, and (ii) [on the record at the Confirmation Hearing] (collectively, the "**Plan Modifications**").   In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (1) affect the classification of Claims or Equity Interests, (2) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (3) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (4) materially and adversely change the treatment of Claims or Equity Interests (other than any Claims and Equity Interests held by those who have accepted such Plan Modifications in writing or in open court), (5) require resolicitation of acceptances or rejections from any holders of Claims or Equity Interests, or (6) require that any such holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Under the

circumstances, the form and manner of notice of the proposed Modifications are adequate, and

no other or further notice of the proposed Modifications is necessary or required.

## STANDARDS FOR CONFIRMATION
## <u>UNDER SECTION 1129 OF THE BANKRUPTCY CODE</u>

F.    The Plan Proponents, as proponents of the Plan, have met their burden of

proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a

preponderance of the evidence, which is the applicable evidentiary standard for confirmation of

the Plan.    Further, the Plan Proponents have proven the elements of sections 1129(a) and

1129(b) of the Bankruptcy Code by clear and convincing evidence.    The evidentiary record of

the Confirmation Hearing supports the findings of fact and conclusions of law set forth in the

following paragraphs.

G.    **Section 1129(a)(1).**    The Plan complies with each applicable provision of

the Bankruptcy Code.    Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code,

Article III of the Plan provides for the classification of Claims and Interests into separate

Classes, based on differences in the legal nature or priority of such Claims and Interests (other

than Administrative Claims, Fee Claims, Priority Tax Claims, and Statutory Fees, which are

addressed in Article II of the Plan and which are not required to be designated as separate

Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).    In particular, the Plan

complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code as follows:

> 1.    In accordance with section 1122(a) of the Bankruptcy Code,
> Article III of the Plan classifies each Claim against and Equity Interest in
> the Debtors into a Class containing only substantially similar Claims or
> Equity Interests;
>
> 2.    In accordance with section 1123(a)(1) of the Bankruptcy Code,
> Article III of the Plan properly classifies all Claims and Equity
> Interests that require classification.    With respect to Claims and Equity Interests in
> all Classes, the Plan Proponents have provided proof of a legitimate reason
> for the separate classification of such Claims and Equity Interests, and

such classification is justified.   Separate classification was not done for any improper purpose and does not unfairly discriminate between or among holders of Claims or Equity Interests;

3.      In accordance with section 1123(a)(2) of the Bankruptcy Code, Article III of the Plan properly identifies and describes each Class of Claims and Equity Interests that is Unimpaired under the Plan;

4.      In accordance with section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan properly identifies and describes the treatment of each Class of Claims or Equity Interests that is Impaired under the Plan;

5.      In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Equity Interest within a particular Class unless the holder of such a Claim or Equity Interest has agreed to less favorable treatment;

6.      In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan, including the Plan Supplement, provides in detail adequate and proper means for its implementation, including, pursuant to Section 1123(a)(5)(B), transfer and assignment of certain GM Insurance Rights to the Kessler Settlement Class, the Liquidating Trust, and others;

7.      Pursuant to Article IV.O of the Plan, the Debtors will be dissolved on or after the Effective Date.   Accordingly, section 1123(a)(6) of the Bankruptcy Code is not applicable in these cases;

8.      Pursuant to Article IV.O of the Plan, the Debtors will be dissolved on or after the Effective Date and no individuals will serve as officers, directors or voting trustees of the Debtors after the Effective Date. Accordingly, section 1123(a)(7) of the Bankruptcy Code is inapplicable in these cases.   Nevertheless, the initial members of the Liquidating Trust Board and Liquidating Trust Management were set forth in Exhibits 6 and 7 to the Plan Supplement and, thus, were disclosed prior to the Hearing. The Liquidating Trust Board and Liquidating Trust Management were selected by members of the Consenting Claimants in accordance with the terms of the Plan Support Agreement.   No party has objected to the identity of the members of the Liquidating Trust Board or Liquidating Trust Management.   In light of the foregoing, the manner of selection of the Liquidating Trust Board and Liquidating Trust Management is consistent with the interests of holders of Claims and Equity Interests and public policy;

H.    **Section 1129(a)(2).**   The Plan Proponents have complied with all

applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the

Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1127 and 1128 of the

Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019, and all other applicable rules,

laws and regulations with respect to the Plan and the solicitation of acceptances or rejections

thereof.  In particular, acceptances or rejections of the Plan were solicited in good faith and in

compliance with the requirements of sections 1125 and 1126 of the Bankruptcy Code as

follows:

> 1.      In compliance with the *Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of the Plan, and (VI) Granting Related Relief* entered on August 23, 2013 [Docket No. 4809] (the "**Disclosure Statement Order**"), on August 29, 2013, the Plan Proponents, through the Debtors' claims and noticing agent, Kurtzman Carson Consultants ("**KCC**"), caused copies of the following materials to be served on all holders of Claims in Classes that were entitled to vote to accept or reject the Plan (i.e., Claims in Classes R-3, RS-3, GS-3, R-4, GS-4A, GS-4B, RS-4, R-5, GS-5, RS-5, R-6, GS-6, RS-6, R-7, RS-7, R-8, GS-7, RS-8, R-11, RS-11, R-12, GS-10, and RS-12); *see* Affidavit of Service by KCC [Docket No. 5196], dated September 25, 2013 (the "**KCC Service Affidavit**"):
>
> > •      a written notice (the "**Confirmation Hearing Notice**") of (a) the Court's approval of the Disclosure Statement, (b) the deadline for voting on the Plan, (c) the date of the Confirmation Hearing, (d) the deadline for objections to the confirmation of the Plan, and (e) the Plan Releases (as defined herein);
> >
> > •      the Disclosure Statement (together with the exhibits thereto, including the Plan and the Disclosure Statement Order) in a CD-ROM;
> >
> > •      the letter from the Creditors' Committee to holders of General Unsecured Claims (the "**Committee Letter to GUCs**") in Classes R-4, GS-4A, GS-4B, RS-4, R-6, GS-6, RS-6, R-7, RS-7, R-8, GS-7, RS-8, R-11, and RS-11 and the letter from the Creditors' Committee to holders of Borrower Claims (the "**Committee Letter to Borrowers**") in Classes R-5, GS-5, and RS-5;

- the appropriate form of Ballot with a postage prepaid return envelope.

2.      In compliance with the Disclosure Statement Order, on  August 29, 2013, the Plan Proponents, through KCC, caused copies of the Disclosure Statement and the Confirmation Hearing Notice to be served on (and made available on the Debtors' restructuring website at www.kccllc.net/rescap) the parties comprising the Monthly Service List (as defined in the *Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 And Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management And Administrative Procedures* [Docket No. 141]). *See* KCC Service Affidavit [Docket No. 5196].

3.      In compliance with the Disclosure Statement Order, on August 29, 2013, the Plan Proponents, through KCC, caused a copy of the notice of non-voting status to be served on all holders of Claims and Equity Interests in the non-voting classes (i.e., Classes R-1, GS-1, RS-1, R-2, GS-2, RS-2, R-9, R-10, GS-8, GS-9, RS-9, RS-10).   *See* KCC Service Affidavit [Docket No. 5196].

4.      In compliance with the Disclosure Statement Order, on August 29, 2013, the Plan Proponents, through KCC, caused a copy of the Confirmation Hearing Notice to be served on all parties in the creditor database maintained by KCC not otherwise served pursuant to paragraphs 1 and 3 above, including, but not limited to, (a) all non-Debtor parties to Executory Contracts or Unexpired Leases, (b) all holders of Administrative Claims and Priority Tax Claims, (c), all parties to litigation with the Debtors, (d) all parties to litigation with Ally relating to the Debtors' businesses, regardless of whether such parties were entitled to vote on the Plan, (e) all known members of potential class action lawsuits, and (f) individual borrowers whose loans were serviced by the Debtors as of September 20, 2012.  *See* KCC Service Affidavit [Docket No. 5196]

5.      In compliance with the Disclosure Statement Order, on September 3, 2013, the Plan Proponents, through KCC, caused a copy of the Confirmation Hearing Notice to be published in the *Wall Street Journal* and *USA Today*.  *See* KCC Affidavit of Publication [Docket No. 5025], dated September 11, 2012.

6.      On October 11, 2013, the Plan Proponents filed (and made available on the Debtors' restructuring website at www.kccllc.net/rescap) the following exhibits to the Plan Supplement (together with the Plan and any and all documents executed in connection therewith including the FGIC Settlement, the "**Plan Documents**"), in substantially final forms [Docket No. 5342]:

- the Liquidating Trust Agreement (**Exhibit 2** to the Plan Supplement)

- the RMBS Claims Trust Agreement (**Exhibit 3** to the Plan Supplement);

- the Borrower Claims Trust Agreement (**Exhibit 4** to the Plan Supplement);

- the Private Securities Claims Trust Agreement (**Exhibit 5** to the Plan Supplement);

- the Initial Members of the Liquidating Trust Board (**Exhibit 6** to the Plan Supplement);

- the Initial Members of Liquidating Trust Management (**Exhibit 7** to the Plan Supplement);

- the Initial Members of the Borrower Claims Trust Committee and Identity of the Borrower Claims Trustee (**Exhibit 8** to the Plan Supplement);

- the Identity of the Private Securities Claims Trustee (**Exhibit 9** to the Plan Supplement);

- the Borrower Trust True-Up (**Exhibit 10** to the Plan Supplement)

- the Cooperation Agreement between the Liquidating Trust and the Kessler Settlement Class (**Exhibit 11** to the Plan Supplement);

- the Policy Numbers for the GM Policies (**Exhibit 12** to the Plan Supplement);

- the Liquidating Trust Causes of Action (**Exhibit 13** to the Plan Supplement);

- the Stipulated Allocation of the Allowed Fee Claim (**Exhibit 14** to the Plan Supplement);

- the Borrower-Related Causes of Action (**Exhibit 15** to the Plan Supplement);

- the Updated RMBS Trust Claims Schedules (**Exhibit 16** to the Plan Supplement);

- • the Ally Contract Claims Estimate (**Exhibit 17** to the Plan Supplement);

- • the identity of the RMBS Claims Trust Trustee (**Exhibit 18** to the Plan Supplement);

- • the Material Terms on which the Plan Proponents may Pay Post-Petition Interest Over Time (**Exhibit 19** to the Plan Supplement);

- • the Initial List of Claims to be Subordinated under the Plan (**Exhibit 20** to the Plan Supplement); and

- • the Updated Disclosure Statement Exhibits 12 and 13 (**Exhibit 21** to the Plan Supplement).

7.     On October 29, 2013, the Plan Proponents filed (and made available on the Debtors' restructuring website at www.kccllc.net/rescap) and served the Assumption Schedule setting forth Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan [Docket No. 5547] as **Exhibit 1** to the Plan Supplement. *See* Affidavit of Service [Docket No. 5561].

8.     On [November 12, 2013], the Plan Proponents filed (and made available on the Debtors' restructuring website at www.kccllc.net/rescap), certain technical modifications to the *First Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "**Technical Modifications**") [Docket No. --] and the Confirmation Memorandum [Docket No. --].

9.     On [November 12], 2013, the Plan Proponents, through KCC, caused copies of the Technical Modifications and the Confirmation Memorandum to be served on the parties comprising the Monthly Service List.  *See* Affidavit of Service by KCC [Docket No. --], dated [--], 2013.

10.    On [November 12], 2013, the Plan Proponents filed (and made available on the Debtors' restructuring website at www.kccllc.net/rescap) the following amended Plan Supplement documents, in substantially final form [Docket No. --]:

- • the Assumption Schedule (**Amended Exhibit 1** to the Plan Supplement);

- • the Liquidating Trust Agreement (**Amended Exhibit 2** to the Plan Supplement);

- the Borrower Claims Trust Agreement (**Amended Exhibit 4** to the Plan Supplement);

- the Liquidating Trust Causes of Action (**Amended Exhibit 13** to the Plan Supplement); and

- the Borrower-Related Causes of Action (**Amended Exhibit 15** to the Plan Supplement).

11.     The Confirmation Hearing Notice provided due and proper notice of the Confirmation Hearing and all relevant dates, deadlines, procedures and other information relating to the Plan and/or the solici tation of votes thereon, including, without limitation, the voting deadline, the objection deadline, the time, date and place of the Confirmation Hearing and the release provisions in the Plan, including the Debtor Release and the Third Party Release.

12.     All persons entitled to receive notice of the Disclosure Statement, the Plan and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Disclosure Statement Order and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto.

13.     The Plan Proponents solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.  Accordingly, the Plan Proponents are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article IX.G of the Plan.

14.     Claims in Classes R-1, R-2, GS-1, GS-2, RS-1 and R-2, and the Claims in certain sub-Classes of GS-3[3] and RS-3[4] under the Plan are Unimpaired, and such Classes are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

---

[3] With respect to the GMACM Debtors, the Junior Secured Noteholders are unimpaired and presumed to accept the Plan at the following Debtors:  GMAC Passive Asset Transactions, LLC, Residential Mortgage Real Estate Holdings, LLC, Home Connects Lending Services, LLC, GMACR Mortgage Products, LLC, ditech, LLC, Residential Consumer Services, LLC, and GMAC Mortgage USA Corporation (collectively, the "**GMACM Unimpaired JSN Classes**").

[4] With respect to the RFC Debtors, the Junior Secured Noteholders are Unimpaired and presumed to accept the Plan at the following Debtors:  GMAC Model Home Finance I, LLC, DOA Holding Properties, LLC, RFC Asset Holdings II, LLC, RFC Construction Funding, LLC, Residential Funding Real Estate Holdings, LLC, Homecomings Financial Real Estate Holdings, LLC, Residential Funding Mortgage Securities, I, Inc., RFC Asset Management, LLC, RFC SFJV-2002, LLC, and RCSFJV2004, LLC (together with the GMACM Unimpaired JSN Classes, the "**JSN Unimpaired Sub-Classes**").

15.     The Plan was voted on by 183 sub-Classes of Impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order (i.e., each sub-Class entitled to vote within Classes R-3, R-4, R-5, R-6, R-7, R-8, R-11, R-12, GS-3, GS-4A, GS-4B, GS-5, GS-6, GS-7, GS-10, RS-3, RS-4, RS-5, RS-6, RS-7, RS-8, RS-11, and RS-12).

16.     KCC has made a final determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in each sub-Class entitled to vote within Classes R-3, R-4, R-5, R-6, R-7, R-8, R-11, R-12, GS-3, GS-4A, GS-4B, GS-5, GS-6, GS-7, GS-10, RS-3, RS-4, RS-5, RS-6, RS-7, RS-8, RS-11, and RS-12 under the Plan.  *See* Voting Declaration at Exhibit B.

17.     Each of the sub-Classes within Classes R-4, R-5, R-6, R-7, R-8, R-11, R-12, GS-4A, GS-4B, GS-5, GS-6, GS-7, GS-10, RS-4, RS-5 (at all sub-Classes other than Residential Funding Real Estate Holdings, LLC), RS-6, RS-7, RS-8, RS-11, and RS-12 have accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in such Classes actually voting. *See* Voting Declaration, at Exhibit B.

I.     **Section 1129(a)(3).**  The Plan has been proposed in good faith and not by any means forbidden by law.  The Plan Proponents' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating an orderly liquidation of the Debtors.  The Plan is the result of extensive good faith, arm's-length negotiations between the Debtors, the Creditors' Committee, Ally, and certain of the Debtors' principal creditor constituencies, including each of the Consenting Claimants and their respective representatives, and reflects substantial input from the principal constituencies having an interest in the Chapter 11 Cases.  The Plan Proponents and each of their respective officers, directors, employees, advisors and professionals, as applicable: (i) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and

agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, including, but not limited to, the Plan Supplement documents, and (b) take any actions authorized and directed or contemplated by this Order.  Thus, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

J.    **Section 1129(a)(4).**  The Plan provides that Professional Fee Claims submitted by Professionals for services incurred prior to the Effective Date will receive payment only if and to the extent they are approved by the Court.  The Plan also provides for the payment of the reasonable pre and postpetition fees and expenses of the RMBS Trustees pursuant to the provisions of and subject to the procedures set forth in the *Final Supplemental Order (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774], and the *Order under 11 U.S.C. §§ 105, 363, and 365, and Fed Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief* [Docket No. 2246], which provisions and procedures will also apply to HSBC.  The Plan further provides for the allowance of the Allowed Fee Claim, with Units and distributions on

- 13 -

account of such claim made to counsel for the Institutional Investors. In accordance with the Plan, all other Administrative Claims will receive payment only to the extent they are Allowed Claims. Thus, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

K. **Section 1129(a)(5).** Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Plan discloses the identities and compensation structure for the members of the Liquidating Trust Board, Liquidating Trust Management, the Private Securities Claims Trustee, the RMBS Claims Trust Trustee, the Borrower Claims Trustee and the Borrower Claims Trust Committee. In addition, members of the Liquidating Trust Board and Liquidating Trust Management set forth on Exhibits 6 and 7 to the Plan Supplement are qualified, and their selection is consistent with the interests of holders of Claims and Equity Interests and with public policy.

L. **Section 1129(a)(6).** The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency. Accordingly section 1129(a)(6) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

M. **Section 1129(a)(7).** The liquidation analysis set forth in Exhibit 8 to the Disclosure Statement, as well as other evidence proffered or adduced at or prior to, or in declarations in connection with, the Confirmation Hearing (a) are reasonable, persuasive, accurate and credible, (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence, and (d) establish that each holder of a Claim or Equity Interest in an Impaired Class either (i) has accepted the Plan or (ii) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors

- 14 -

were liquidated under Chapter 7 of the Bankruptcy Code on such date.    Thus, the Plan Proponents have demonstrated that the Plan is in the best interests of creditors.

N.    **Section 1129(a)(8).** Claims in Classes R-1, R-2, GS-1, GS-2, RS-1, RS-2, and the JSN Unimpaired Sub-Classes are Unimpaired and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.    As set forth in the Voting Declaration, each sub-Class entitled to vote within Classes R-4, R-5, R-6, R-7, R-8, R-11, R-12, GS-4A, GS-4B, GS-5, GS-6, GS-7, GS-10, RS-4, RS-5 (at all sub-Classes other than Residential Funding Real Estate Holdings, LLC), RS-6, RS-7, RS-8, RS-11, and RS-12 have voted to accept the Plan, and all of the sub-Classes entitled to vote in Classes R-3, GS-3, RS-3, and RS-5 at the Residential Funding Real Estate Holdings, LLC sub-Class have voted to reject the Plan.    In addition, holders of Intercompany Claims in Classes R-9, GS-8, and RS-9, and holders of Equity Interests in R-10, GS-9 and RS-10 are deemed to have rejected the Plan (collectively with Classes R-3, GS-3, RS-3, and RS-5 (at the Residential Funding Real Estate Holdings, LLC sub-Class), the "**Rejecting Classes**").    Nevertheless, the Plan is confirmable because it does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes and thus satisfies section 1129(b)(1) of the Bankruptcy Code (as set forth in paragraph U below).

O.    **Section 1129(a)(9).** The Plan provides treatment for Administrative Claims, Priority Tax Claims and Other Priority Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

P.    **Section 1129(a)(10).** The Plan has been accepted by at least one class of Impaired Claims at each Debtor that is entitled to vote on the Plan, determined without including any acceptance of the Plan by any "insider."  *See* Voting Declaration, Exhibit B.

Q.    **Section 1129(a)(11).**  The Plan is feasible, within the meaning of section 1129(a)(11) of the Bankruptcy Code.  The Debtors' projections show that the Debtors expect to have sufficient funds to make the payments required under the Plan.

R.    **Section 1129(a)(12).**  The Plan provides that fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors on or before the Effective Date.  On and after the Effective Date, notwithstanding the grouping of the Debtors into the Debtor Groups under the Plan, each of the Debtors shall (i) pay the applicable U.S. Trustee fees when due in the ordinary course until such time as the Bankruptcy Court enters a final decree in such Debtors' Chapter 11 Case or until each Chapter 11 Case is converted or dismissed, and (ii) file consolidated post-confirmation quarterly status reports.

S.    **Section 1129(a)(13).**    The retirement plan covering the Debtors' employees is sponsored by AFI, the indirect parent of ResCap and a non-Debtor.  Article IX.E of the Plan provides that nothing in the Plan releases AFI or any other party from the obligations under the Employees Retirement Plan for GMAC Mortgage Group, LLC and ERISA.  The Debtors have no other retiree benefit obligations.  Therefore, to the extent applicable, section 1129(a)(13) of the Bankruptcy Code is satisfied.

T.    **Sections 1129(a)(14), (15) and (16).**  The Debtors do not owe any domestic support obligations and are not individuals.  Therefore, sections 1129(a)(14) and (15) of the Bankruptcy Code do not apply to the Debtors.  Further, the Debtors are moneyed, business, or commercial corporations or trusts, not nonprofit entities, and, therefore, section 1129(a)(16) of the Bankruptcy Code does not apply to the Debtors.  To the extent that any transfer of property under the Plan will be made by a nonprofit corporation or trust and section 1129(a)(16) of the Bankruptcy Code is thus applicable to the Debtors, such transfers shall be

made in accordance with applicable non-bankruptcy law, thereby satisfying section 1129(a)(16) of the Bankruptcy Code.

U. **Section 1129(b).** The Plan satisfies section 1129(b) of the Bankruptcy Code with respect to the Rejecting Classes. The evidence proffered or adduced at the Confirmation Hearing is persuasive and credible, has not been controverted by other evidence, and establishes that the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes. As required by section 1129(b)(2)(A) of the Bankruptcy Code, the Plan is fair and equitable with respect to the Junior Secured Notes Claims, as they are receiving the indubitable equivalent of such Claims under the Plan. As required by section 1129(b)(2)(B) and 1129(b)(2)(C) of the Bankruptcy Code, the Plan is fair and equitable with respect to the Intercompany Balances and Equity Interests because (a) no holder of a Claim or Equity Interest will receive more than it is legally entitled to receive on account of its Claim or Equity Interest, and (b) the Plan does not provide a recovery on account of any Claim or Equity Interest that is junior to the Rejecting Classes. As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied. After entry of the Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Rejecting Classes.

V. **Section 1129(c).** The Plan (including previous versions thereof) is the only plan that has been filed in these Chapter 11 Cases that has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code. Accordingly, confirmation of the Plan complies with the requirements of section 1129(c) of the Bankruptcy Code.

W. **Section 1129(d).** No party in interest has requested that the Court deny Confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and the principal purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

X. **Section 1129(e).** None of these Chapter 11 Cases is a small business case within the meaning of the Bankruptcy Code.

Y. Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors as proponents of the Plan satisfy the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## IMPLEMENTATION OF THE PLAN

Z. All documents and agreements necessary to implement the Plan, including, but not limited to, the Plan Documents, are essential elements of the Plan and consummation of each agreement is in the best interests of the Debtors, the Estates and holders of Claims. The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and each of the Plan Documents have been negotiated in good faith, at arm's length, are fair and reasonable, and shall, upon execution and upon the occurrence of the Effective Date, constitute legal, valid, binding, enforceable, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan Supplement documents, and any other agreements necessary to implement the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

- 18 -

## CONDITIONS TO THE CONFIRMATION OF THE PLAN

AA.   Each of the conditions precedent to entry of this Order has been satisfied in accordance with Article X.A of the Plan or properly waived in accordance with Article X.C of the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

BB.   Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Article V of the Plan provides for the assumption, assumption and assignment, or rejection of certain Executory Contracts and Unexpired Leases. The Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of Claims and other parties in interest in the Chapter 11 Cases.  The Plan Proponents have filed the Assumption Schedule (as it may have been amended or supplemented) and have provided notice to counterparties of the Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases and any related Cure Claims.  *See* KCC Affidavit of Service [Docket No. 5581].

## GLOBAL SETTLEMENT UNDER THE PLAN

CC.   The Plan settles numerous litigable issues in the Chapter 11 Cases pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code.   These settlements are in consideration for the compromises, distributions and other benefits provided under the Plan.  The Plan constitutes a compromise of all Claims, Equity Interests or Causes of Action relating to the contractual, legal and subordination rights that a holder of a Claim or

Equity Interest may have with respect to any Allowed Claim or Equity Interest or any distribution to be made on account of such an Allowed Claim or Equity Interest.

DD. **The Global Settlement.**    The Plan includes an integrated and comprehensive settlement that resolves various inter-Debtor, Debtor-Creditor and inter-Creditor issues through (i) the Ally Settlement, including the funding of the Ally Contribution, (ii) the RMBS Settlement, (iii) the settlement of the allowed amount and priority of Claims held by certain monoline insurers, including the FGIC Settlement Agreement, (iv) the settlement of the Private Securities Claims, (v) the settlement of the allowed amount and priority of the Claims of the Kessler Class Claimants, (vi) the NJ Carpenters Claims Settlement, (vii) the settlement of the claims held by the Senior Unsecured Notes Indenture Trustee, on behalf of the Senior Unsecured Noteholders, (viii) the settlement with FHFA and Freddie Mac, (ix) the division of the Ally Contribution and Administrative Expenses among Debtor Groups, (x) a settlement of issues regarding substantive consolidation, and (xi) a settlement of the treatment of the Intercompany Balances.  Each component of the Global Settlement is an integral and inextricable part thereof that cannot be severed from the whole without unraveling the entire Plan.  The creditors supporting the Global Settlement include each of the Consenting Claimants, the NJ Carpenters Class, Ambac, Assured, Syncora, the FHFA, Fannie Mae, and Freddie Mac, each of which is a sophisticated party and represented by counsel that is recognized as being knowledgeable and experienced in the field of complex chapter 11 cases.  The Global Settlement, and each of the settlements embodied within the Global Settlement, is a result of good faith arm's-length negotiations, is in the best interests of the Debtors, the Estates, the RMBS Trusts, Investors, and other parties-in-interest, and is fair, equitable, and within the range of reasonableness.

EE.    In reaching its decision on the substantive fairness of the Global Settlement and the various settlement incorporated therein, the Court considered the following factors:  (i) the balance between the litigation's possibility of success and the settlement's future benefits; (ii) the likelihood of complex and protracted litigation with attendant expense, inconvenience and delay; (iii) the paramount interests of creditors, including the relative benefits to each affected class and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (iv) whether other parties in interest support the settlement; (v) the competency and experience of counsel and the experience and knowledge of the bankruptcy judge; (vi) the nature and breadth of releases to be obtained by officers and directors; and (vii) the extent to which the settlement is the product of arm's length bargaining.

FF.    As set forth in Article IV.B. of the Plan, pursuant to the Global Settlement, Ally shall pay the Estates the Ally Contribution in accordance with the Plan.  In addition, Ally has made numerous substantial contributions to the Estates during the chapter 11 cases that were essential to the success of the Debtors' bankruptcy, e.g., serving as the stalking horse bidder for the Debtors' portfolio of HFS loans; enabling the Debtors to continue originating loans during the chapter 11 cases by funding the loans on market terms, which sustained and enhanced the value of the Debtors' servicing platform sold to Ocwen Loan Servicing, LLC for $3 billion; providing the Debtors with DIP financing of up to $220 million; permitting the Debtors to use Ally Bank's portfolio of loans to satisfy their obligations to various regulators so that the Debtors could continue operations and reduce liabilities; providing certain shared services to the Debtors; and supporting certain pension obligations of the Debtors.  In exchange for the Ally Contribution and the Ally Released Parties' other substantial contributions during the Chapter 11 Cases, Ally shall receive the following consideration:  (i) the Debtor Releases,

- 21 -

(ii) the Third Party Releases, (iii) a settlement of the Debtors' rights to and under the

Settlement Insurance Policies, (iv) the transfer by the Debtors of the funds held in the Ally

Indemnity Escrow Account and the remission of the Misdirected Funds to Ally, and Ally's

release of the approximately $1.787 million in Cash overfunded by the Debtors prior to the

Petition Date and which is currently held by Ally, (v) the Debtors' performance of the

obligations under the DOJ/AG Settlement, the Consent Order and the Order of Assessment on

the terms set forth in Article IV.B(e) of the Plan, and (vi) the allowance and payment in full of

the Ally Contract Claims as provided in the Plan.

GG.    The consideration provided to the Ally Released Parties as part of the

Global Settlement, including the rights and obligations accorded elsewhere in the Plan to Ally

is: (1) in exchange for the good, valuable and substantial consideration from the Ally Released

Parties; (2) in the best interests of the Debtors, the Estates, the Plan Trusts and all holders of

Claims and Equity Interests; (3) a good faith settlement and compromise of the claims released

under the Plan; (4) fair, equitable and reasonable; (5) given and made after due notice and

opportunity for a hearing; (6) justified by truly unusual circumstances; (7) an essential

component and critical to the success of the Plan; (8) resulting in distributions to the creditors

that would otherwise have been unavailable; (9) the result of an identity of interest between the

Debtors and the Ally Released Parties regarding the Plan; and (10) a bar to the Debtors, the

Plan Trusts, in the case of the Debtor Releases, and any party asserting a claim or cause of

action released against any of the Ally Released Parties in connection with the Third Party

Release.

HH. As one component of the Global Settlement, the Plan implements the

FGIC Settlement Agreement.  The Court approved the FGIC Settlement Agreement by order

dated September 16, 2013.  The findings of fact and conclusions of law in support of the

Court's approval of the FGIC Settlement are set forth in the Court's *Memorandum Decision*

*and Order, and Findings of Fact and Conclusions of Law, Approving the FGIC Settlement*

*Motion* [Docket No. 5042] (the "<u>FGIC Settlement Approval Decision</u>"), dated September 13,

2013, and included, among other things, that the FGIC Settlement is an "essential, inextricable,

and critical cornerstone of the Global Settlement" underlying the Plan. (FGIC Settlement

Approval Decision, at *35; *see also id.* at *20 ("The Settlement Agreement that is the subject

of this Motion, while a stand-alone agreement, represents a critical component of the Global

Settlement.").  Among other things, the FGIC Settlement Approval Decision overruled an

objection by the Ad Hoc Group of Junior Secured Noteholders (the "<u>JSNs</u>") that the FGIC

Settlement Agreement did not subordinate the Monoline Claims pursuant to section 510(b) of

the Bankruptcy Code.  The JSNs object to confirmation on this same basis.  That objection is

overruled, for the same reasons as set forth in the FGIC Settlement Approval Decision, the

findings of fact and conclusions of law from which are afforded preclusive effect in connection

with the JSNs' objection to confirmation of the Plan.  *See Proctor v. LeClaire*, 715 F.3d 402,

414-15 (2d Cir. 2013).

       II.    As one component of the Global Settlement, the Plan also implements the

RMBS Settlement, and the Global Settlement reflects a good faith compromise and settlement

of all objections to the Original RMBS Settlement Agreements by the Creditors' Committee,

certain of the Consenting Claimants, and certain other parties.

       JJ.    The Plan Support Agreement, the Plan, the Global Settlement, the RMBS

Settlement, the FGIC Settlement Agreement, and all transactions contemplated by each of the

foregoing, including the releases given therein, are in the best interests of the Debtors, their

Estates, their creditors, the Investors in each RMBS Trust, each such RMBS Trust, the RMBS

Trustees and all other parties in interest.  The RMBS Trustees acted reasonably, in good faith

and in the best interests of the Investors in each RMBS Trust and each such RMBS Trust in (i)

entering into the Plan Support Agreement, (ii) performing their obligations under the Plan

Support Agreement, including voting in favor of the Plan, where applicable, and (iii) agreeing

to, and performing under, the Global Settlement and each of the settlements embodied therein,

including the RMBS Settlement and the FGIC Settlement Agreement.  The RMBS Trustees'

Notice of the Plan Support Agreement, the Plan, the Global Settlement, the RMBS Settlement,

the FGIC Settlement Agreement, and all the transactions contemplated by each of the

foregoing, including the releases given therein, was sufficient and effective in satisfaction of

federal and state due process requirements and other applicable law to put the parties in interest

in these Chapter 11 Cases and others, including the Institutional Investors and the Investors in

each RMBS Trust, on notice of the Plan Support Agreement, the Plan, the Global Settlement,

the RMBS Settlement, the FGIC Settlement Agreement, and all the transactions contemplated

by each of the foregoing, including the releases given therein.  The findings of fact and

conclusions of law set forth in this paragraph shall be binding solely in connection with the

RMBS Trustees, the RMBS Trusts (including the Investors in the RMBS of such RMBS

Trusts) and the actions of the RMBS Trusts and the RMBS Trustees with respect to the Plan

Support Agreement and Plan, including the RMBS Settlement and the FGIC Settlement

Agreement.  In addition, the Allowed Fee Claim is reasonable and appropriate under the

circumstances.

KK. The Global Settlement gives due consideration to the strengths and

weaknesses of potential arguments that have been made for and against substantive

consolidation of the Debtors' estates.  As set forth in the Confirmation Brief and the Direct Testimony, litigation regarding substantive consolidation of the Debtors would require vast amounts of discovery and investigation into the Debtors' operations prior to the Petition Date, would be extraordinarily complex and costly for all parties involved and would significantly delay distributions to creditors.  The proposed partial consolidation under the Plan, as a key element of the Global Settlement, is reasonable and appropriate under the circumstances, and does not adversely affect any holders of Claims or Equity Interests.

LL.   Prior to the Petition Date, the Debtors entered into tens of thousands of transactions over a period of years which led to intercompany balances on the Debtors' books and records as of the Petition Date.  The Debtors conducted an extensive analysis of the Intercompany Balances and, based on the facts and analyses set forth in the Disclosure Statement, Confirmation Brief, and the Direct Testimony, believe, with the support of the Creditors' Committee, that such Intercompany Balances lack many of the indicia of true debt and enforceable claims.  The treatment of Intercompany Balances pursuant to the Global Settlement gives due consideration to the strengths and weaknesses of potential arguments for and against the enforcement of the Intercompany Balances.   Litigation regarding the enforceability of the Intercompany Balances would be extremely time consuming and expensive, would delay distributions to all creditors, and would have a substantial detrimental impact on all creditor recoveries.  The waiver of Intercompany Balances as one part of the Global Settlement embodied in the Plan is therefore in the best interest of the Debtors' estates and all creditors.

MM. **Releases, Exculpations, and Injunctions of Released Parties.**  Each non-Debtor Released Party that will benefit from the releases, exculpations and related

- 25 -

injunctions set forth in the Plan (collectively, the "**Plan Releases**") either shares an identity of interest with the Debtors (either by way of right to indemnity, contribution, or otherwise), was instrumental to the successful prosecution of the Chapter 11 Cases or their resolution pursuant to the Plan, and/or provided a substantial contribution to the Debtors, which value provided a significant benefit to the Debtors' estates and general unsecured creditors, and which will allow for distributions that would not otherwise be available but for the contributions made by such non-Debtor parties.   The Plan, including the Plan Releases, garnered overwhelming support from the Debtors' creditor constituencies.   The Plan Releases are, individually and collectively, integral to, and necessary for the successful implementation of, the Plan, essential to the Debtors' orderly liquidation and supported by reasonable consideration.

NN.   <u>Debtor Releases</u>. The releases and discharges of Claims and Causes of Action by the Debtors described in Article IX.C of the Plan (the "<u>Debtor Releases</u>") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment. Settling such claims against the Debtor Released Parties is in the best interest of the Debtors' estates as the benefits of settling such claims outweigh any potential benefit from pursuing such claims in light of, among other things, the cost and risk involved in litigation.   Thus, the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Debtor Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtors' release; (3) in the best interests of the Debtors, the Estates, the Plan Trusts and all holders of Claims and Equity Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to the Debtors, the Plan Trusts and any holder of a Claim or Equity Interest or other Entity who would have been legally entitled to assert such Claim or Equity Interest on behalf of any of the Debtors or

any of their Estates from asserting any Claim or Cause of Action released pursuant to the Debtors' release.

OO. <u>Third Party Releases</u>. The circumstances of these Chapter 11 Cases are unique and truly unusual and they render the releases of Claims and Causes of Action by Holders of Claims and Interests described in Article IX.D of the Plan (the "**Third Party Release**") critical to the success of the Plan. The Ally Contribution constitutes a substantial contribution to the estates by the Ally Released Parties and constitutes the vast majority of the $2.6 billion that is estimated to be available for distribution to unsecured creditors. In addition, the Ally Released Parties made several non-economic contributions to the Estates during the Chapter 11 Cases, including cooperation with the Debtors to enable their operations to continue unabated following the Petition Date and to achieve the sale of their key assets as a going concern. Ally also permitted the Debtors to continue to originate and subservice loans that were sold to Ally Bank, which helped maintain the value of the Debtors' origination and servicing platform. Ally also provided a DIP loan to the Debtors and was willing to serve as the stalking horse bidder for the Debtors' legacy loan portfolio, each of which contributed significant incremental value to the Debtors' estates.

PP. The individual officers and directors of Ally and its subsidiaries (including the Debtors' directors, officers, and employees) covered by the Third Party Release have also made a substantial contribution to the Plan by giving up their rights to shared insurance that they would otherwise have access to defend themselves against such potential claims. The amount of the coverage that Ally's individual officers and directors have sacrificed is directly related to $150 million of the Ally Contribution. These parties have also agreed to forego their own claims for indemnity and contribution from the estates. By giving up their insurance and

- 27 -

contractual indemnity claims, the Debtors' officers and directors have provided substantial consideration to the Debtors' Estates.

QQ. In consideration for the Ally Contribution and as part of the Global Settlement, the Ally Released Parties required that the Third Party Release be included in the Plan. The Ally Contribution is the lynchpin of the Plan, without which the cases would devolve into endless litigation, the Plan would not be confirmable or feasible, and the recoveries currently contemplated by the Plan would not exist. These facts are unprecedented and justify the approval of the Third Party Releases.

RR. There is an identity of interest between the Debtors and the beneficiaries of the Third Party Releases. The Ally Released Parties have the right to seek indemnity, contribution or other reimbursement from the Debtors with respect to the Debtors' activities. The Third Party Releases appropriately relieve the Debtors from these potential expenses. Finally, Ally and the Debtors' officers, directors, and employees are co-insured parties on "wasting asset" errors and omissions and directors and officers insurance. Any claim against Ally, or its subsidiaries or affiliates, or against any of its directors, officers, or employees, that is covered by any of these policies could reduce the amount of insurance available to the Debtors.

SS. The Third Party Releases are overwhelmingly consensual as they are supported by all parties to the Global Settlement, are not opposed by any clearly affected creditors, and numerous additional creditors have expressed their consent as part of individual or group settlements entered into subsequent to Plan solicitation. The Third Party Release is also consensual as to those parties that affirmatively voted to approve the Plan. The Third Party Release was extensively disclosed in the Disclosure Statement and the Ballots and

consented to by all parties who either voted in favor of the Plan and/or failed to properly submit a ballot voting on the Plan.

TT.   The Third Party Releases satisfy the applicable standards contained in In re Metromedia Fiber Network, Inc., 416 F.3d 136 (2d Cir. 2005), are otherwise appropriate under In re Johns-Manville Corp., 600 F.3d 135 (2d Cir. 2010), and are: (1) in exchange for the good, valuable and substantial consideration provided by the Ally Released Parties; (2) in the best interests of the Debtors, the Estates, the Plan Trusts and all holders of Claims and Equity Interests; (3) fair, equitable and reasonable; (4) given and made after due notice and opportunity for a hearing; (5) justified by truly unusual circumstances; (6) an essential component and critical to the success of the Plan; (7) the primary source of distributions to the Creditors that would otherwise have been unavailable; (8) the result of an identity of interest between the Debtors and the Ally Released Parties regarding the Plan; and (9) a bar to any party asserting a claim or cause of action released pursuant to this Third Party Release against any of the Ally Released Parties.

UU.   Exculpation.   The exculpation provisions set forth in Article IX.G of the Plan are essential to the Plan. The record in the Chapter 11 Cases fully supports the Exculpation, and the Exculpation provisions set forth in Article IX.G of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation. The Exculpation shall have no effect on the liability of any Entity that results from any act or omission that is determined in a final, non-appealable, order to have constituted gross negligence or willful misconduct; provided, however, that each Exculpated Party shall be entitled to rely upon the advice of counsel and financial advisors concerning his, her, or its duties pursuant to, or in connection with, any prepetition plan support agreement, the Plan

Support Agreement, the Plan, the Disclosure Statement, the FGIC Settlement Agreement, and the RMBS Settlement.

VV.  <u>Injunction</u>.  The injunction provisions set forth in Article IX.H of the Plan are essential to the Plan and are necessary to preserve and enforce the Debtor Releases, the Third Party Releases, and the exculpation provisions in Article IX of the Plan, and are narrowly tailored to achieve that purpose.

WW. Each of the Debtor Releases, the Third Party Releases, and the injunction and exculpation provisions set forth in the Plan: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, the Estates, and their Creditors; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Debtor Releases, the Third Party Releases, and the injunction and exculpation provisions contained in Article IX of the Plan.

## **MISCELLANEOUS**

XX.  **Objections**.  All parties have had a full and fair opportunity to litigate all issues raised in the objections (excluding any timely filed objections that relate solely to the assumption of any executory contract), or which might have been raised, and the objections

- 30 -

(excluding any timely filed objections that relate solely to the assumption of any executory

contract) have been fully and fairly litigated.

YY.  **Waiver of Stay**.  Under the circumstances, it is appropriate that the 14-

day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.

ZZ.    **Retention of Jurisdiction**.  This Court is authorized to retain jurisdiction

over the matters set forth in Article XII of the Plan and sections 105(a) and 1142 of the

Bankruptcy Code.

## II.    **ORDER**

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS
OF LAW, IT IS THEREFORE HEREBY ORDERED, ADJUDGED AND DECREED AS
FOLLOWS:

1.    **Confirmation of the Plan.**  The Plan (including the Plan Supplement), is

CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code, and

the terms of the Plan (including the Plan Supplement) are incorporated by reference into, and

are an integral part of, this Order.  The Effective Date of the Plan shall occur on the date

determined by the Plan Proponents when the conditions set forth in Article X.B of the Plan have

been satisfied or, if applicable, have been waived in accordance with Article X.C of the Plan.

The failure to specifically include or to refer to any particular article of the Plan, section or

provision of the Plan, Plan Supplement or any related document in this Order shall not diminish

or impair the effectiveness of such article, section or provision, it being the intent of the Court

that this Order confirm the Plan and any related documents in their entirety.

2.    **Objections to the Plan are Overruled**.  All parties have had a full and

fair opportunity to litigate all issues raised by objections to confirmation of the Plan.  Any

objections or responses to confirmation of the Plan and the reservation of rights contained

therein that (a) have not been withdrawn, waived or settled prior to the entry of this Order or (b) are not cured by the relief granted herein are hereby OVERRULED in their entirety and on their merits, and all withdrawn objections or responses are hereby deemed withdrawn with prejudice.

3.    **Modifications or Amendments**.    After the Confirmation Date, but prior to Consummation of the Plan, the Plan Proponents may, in accordance with Articles XI.A and IV.C.3 of the Plan, amend, modify, or supplement the Plan and the Plan Supplement without further order of the Bankruptcy Court to (i) remedy any defect or omission, (ii) reconcile any inconsistencies in the Plan or the Confirmation Order, or (iii) amend or modify the Plan Supplement as contemplated by the Plan.    At all times, the Plan Proponents may amend, modify, or supplement the Plan and the Plan Supplement without the consent of any other Entity to the extent that such amendments, modifications, or supplements are non-material.

4.    **Notice**.    Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.    In addition, due, adequate and sufficient notice of the Assumption Schedule was provided to all counterparties to Executory Contracts and Unexpired Leases with the Debtors, in substantial compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017 and 3020(b), and no other or further notice is or shall be required.

5.    **Plan Classification Controlling.**    The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder.    The classifications set forth on the Ballots tendered to or returned by the holders of Claims or Equity Interests in connection with voting on the Plan pursuant to the

Disclosure Statement Approval Order: (a) were set forth on the Ballots solely for purposes of voting on the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Equity Interest as representing the actual classification of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors or the Plan Trusts except for voting purposes.

6. **Order Binding on All Parties.** Subject to Article X.A of the Plan, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and this Order shall be immediately effective and enforceable and deemed binding upon, and inure to the benefit of: (a) the Debtors; (b) the Plan Trusts; (c) any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan); (d) all Entities that are parties to or subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan; (e) each Entity acquiring property under the Plan; (f) any and all non-Debtor parties to Executory Contracts or Unexpired Leases with any of the Debtors; and (g) the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries (including the Investors), guardians, successors or assigns, if any, of any of the foregoing. On the Effective Date, all settlements, compromises, releases (including, without limitation, the Plan Releases), waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on all Persons.

7. **Other Essential Documents and Agreements.** The form of documents comprising the Plan Supplement, any other agreements, instruments, certificates or documents

related thereto, including any amendments permitted or contemplated by paragraph 3 of this

Order, and the transactions contemplated by each of the foregoing are approved and, upon

execution and delivery of the agreements and documents relating thereto by the applicable

parties, shall be in full force and effect and valid, binding and enforceable in accordance with

their terms without the need for any further notice to or action, order or approval of this Court,

or other act or action under applicable law, regulation, order or rule.  The Debtors, and after the

Effective Date, the Plan Trusts, are authorized, without further approval of this Court or any

other party, to execute and deliver all agreements, documents, instruments, securities and

certificates relating to such agreements and perform their obligations thereunder, including,

without limitation, payment of all fees due thereunder or in connection therewith.

        8.    **Global Settlement**.  The Global Settlement set forth in Article IV of the

Plan, and each component of the Global Settlement, are hereby approved pursuant to section

1123 of the Bankruptcy Code and Bankruptcy Rule 9019 as fair and reasonable and in the best

interests of each of the Debtors, their estates and Creditors.  Each provision of the Global

Settlement is non-severable from each other and the remaining terms of the Plan.  The

compromises and settlements embodied in the Global Settlement are in the best interests of the

Debtors, their Estates, Creditors, the RMBS Trusts, Investors, and other parties-in-interest, and

are fair, equitable, and within the range of reasonable results if the issues were litigated and

therefore falls above the lowest point in the range of reasonableness.  The Debtors or the Plan

Trusts, as applicable, are duly authorized to execute, deliver, implement and fully perform any

and all obligations, instruments, documents, and papers, including each of the Plan Documents,

and to take any and all actions reasonably necessary or appropriate to consummate the Global

Settlement and each of the settlements embodied therein, including waiving any conditions precedent to their effectiveness, and performing any and all obligations contemplated therein.

9.    Ally Settlement. The Ally Settlement set forth in Article IV.B of the Plan is hereby approved as part of the Global Settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

10.    RMBS Settlement. The RMBS Settlement, including the Allowed Fee Claim, set forth in Article IV.C of the Plan is hereby approved as part of the Global Settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.  To the extent applicable, the Allowed Fee Claim is hereby approved as reasonable pursuant to section 1129(a)(4) of the Bankruptcy Code.  Pursuant to section 502 of the Bankruptcy Code, the RMBS Trusts shall have Allowed Claims against the Debtor Groups in the amounts and allocations set forth in Article IV.C.2 of the Plan, with distributions on account of such Claims subject to the RMBS Trust Allocation Protocol, and the Allowed Fee Claim shall be payable to counsel to the Institutional Investors in the amount set forth in Article IV.C.6 of the Plan and the Plan Supplement.  Upon entry of this Order, all objections to the Original RMBS Settlement Agreement by the Creditors' Committee and the Consenting Claimants, as applicable, shall be deemed settled.

11.    Settlement of Monoline Claims. The settlements of the Allowed amount and priority of the Claims held by certain monoline insurers set forth in Article IV.D of the Plan are hereby approved as part of the Global Settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to section 502 of the Bankruptcy Code, MBIA, FGIC, Assured, and Ambac shall have Allowed General Unsecured Claims against the

Debtor Groups in the amounts and allocations set forth in Article IV.D.1, IV.D.2, IV.D.3, and IV.D.4 of the Plan, respectively.

12. <u>Settlement of Settling Private Securities Claimants' Claims</u>. The settlements of the Allowed amount and priority of the Claims held by the Settling Private Securities Claimants set forth in Article IV.E of the Plan are hereby approved as part of the Global Settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to section 502 of the Bankruptcy Code, the Settling Private Securities Claimants shall have Allowed Claims for voting purposes in the amounts set forth in Article IV.E.6 of the Plan.

13. <u>Settlement of Senior Unsecured Notes Claims</u>. The settlement of the Senior Unsecured Notes Claims set forth in Article IV.I of the Plan is hereby approved as part of the Global Settlement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to section 502 of the Bankruptcy Code, the Senior Unsecured Noteholders shall have Allowed Claims in the amounts set forth in Article IV.I of the Plan.

14. <u>Partial Consolidation of the Debtors</u>. The partial consolidation of the Debtors into Debtor Groups solely for purposes of describing treatment under the Plan and making distributions under the Plan is fair and appropriate and approved as one component of the Global Settlement. The partial consolidation of the Debtors, however, shall not (other than for purposes relating to making distributions under the Plan) affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets except as contemplated by the Plan; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities until dissolved in accordance with the Plan.

15.     **Compromise and Settlement of Claims, Equity Interests, and Controversies.** In accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall, upon consummation, constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest.  All such compromises or settlements of Claims, Equity Interests and controversies, are approved, in the best interests of the Debtors, their Estates and holders of Claims and Equity Interests are entirely fair and are fair, equitable and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trust may compromise and settle Claims against the Debtors and Causes of Action against other Entities.

16.     **Implementation of the Plan**.  This Confirmation Order authorizes (a) the creation and implementation of the Liquidating Trust, the RMBS Claims Trust, the Private Securities Claims Trust and the Borrower Claims Trust in accordance with the terms of the Confirmation Order, the Plan, the Liquidating Trust Agreement, the RMBS Claims Trust Agreement, the Private Securities Claims Trust Agreement and the Borrower Claims Trust Agreement, and (b) the Liquidating Trust Board and Liquidating Trust Management, the RMBS Claims Trust Trustee, the Private Securities Claims Trustee, and the Borrower Claims Trustee to accomplish the purposes of the Liquidating Trust, the RMBS Claims Trust, the Private Securities Claims Trust and the Borrower Claims Trust, respectively, as set forth in the

Liquidating Trust Agreement, the RMBS Claims Trust Agreement, the Private Securities Claims Trust Agreement and the Borrower Claims Trust Agreement, respectively, notwithstanding any otherwise applicable nonbankruptcy law.  The Liquidating Trust, the RMBS Claims Trust, the Private Securities Claims Trust and the Borrower Claims Trust may be established prior to the Effective Date to the extent necessary, desirable, or appropriate to effectuate the Plan.  The Liquidating Trust, the RMBS Claims Trust, the Private Securities Claims Trust and the Borrower Claims Trust, and each of their respective boards, trustees, and management, as applicable, shall have no liability other than as set forth in the Plan or the applicable trust agreement, and shall have no other obligations other than to carry out the purpose and obligations of the respective Plan Trust.

17.    The Debtors, the Liquidating Trust, the Liquidating Trust Manager, their respective members, directors, officers, representatives and agents are hereby authorized to enter into, execute, deliver, file and/or implement any documents and instruments substantially consistent with or incidental to the Plan, and any amendments, supplements or modifications thereto as may be appropriate, and to take such other steps and perform such other acts as may be necessary, useful or appropriate to implement and effectuate the Plan and all other related instruments and documents and this Confirmation Order, and to satisfy all other conditions precedent to the implementation and effectiveness of the Plan.  The Liquidating Trust Manager is hereby authorized to make distributions and other payments in accordance with the Plan and the Liquidating Trust Agreement, regardless of whether any appeal of this Confirmation Order has been filed, except where a stay pending appeal has been granted. The signature of the Liquidating Trust Manager, or any other member of the Liquidating Trust Management duly authorized by the Liquidating Trust Board, on any check issued by the Debtors or the

Liquidating Trust in payment of Distributions or other amounts contemplated by the Plan shall be sufficient authorization for the drawee bank to honor such check, and no other signature shall be required.

18.     On the Effective Date, Jeffrey A. Brodsky shall be appointed as the Liquidating Trust Manager and the initial members of the Liquidating Trust Board will consist of John S. Dubel, Mitchell Sonkin, Matthew Doheny, Paul J. Weber, Samuel L. Molinaro, Jr. The appointment of the Liquidating Trust Manager and the Liquidating Trust Board is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy.

19.     As provided in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, the Debtors will transfer and assign to the Liquidating Trust the Available Assets in accordance with Article VI.C of the Plan, which shall be deemed vested in the Liquidating Trust.  On and after the Effective Date, the Liquidating Trust Board shall have discretion with respect to the timing of the transfers of Liquidating Trust Assets.  The Liquidating Trust will hold and administer the Available Assets, including among other things, (i) Cash in bank account(s), (ii) the Liquidating Trust Expenses Set Aside, (iii) the Administrative, Priority, Secured and Convenience Distribution Reserve, (iv) the DOJ/AG Settlement Reserve, and (v) the Disputed Claims Reserve.

20.     All transfers of property by the Debtors to the Liquidating Trust (i) are or shall be legal, valid and effective transfers of property, (ii) vest or shall vest the Liquidating Trust with good title to such property free and clear of all liens, charges, claims, encumbrances or interests, except as expressly provided in the Plan or in this Confirmation Order, (iii) do not and shall not constitute voidable transfers under the Bankruptcy Code or under applicable non-

bankruptcy law, (iv) shall be exempt from any transfer, sales, stamp or other similar tax (which exemption shall also apply to the transfers by the Liquidating Trust) and (v) do not and shall not subject the Liquidating Trust Board, Liquidating Trust Management, or holders of Claims to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

21.    On and after the Effective Date, the Liquidating Trust Board shall be authorized, in its sole and absolute discretion, to take all actions reasonably necessary to manage or dissolve the Debtors and their subsidiaries, including the Non-Debtor Subsidiaries, under applicable laws, including the laws of the jurisdictions in which they may be organized or registered, notwithstanding any applicable consent requirements or other restrictions contained in any financing agreements or other debt documents to which any Debtor is a party, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation.  The Liquidating Trust Board shall have no liability for using its discretion to dissolve or not dissolve any of the Debtors or their subsidiaries.  Whether or not dissolved, the Debtors shall have no authorization to implement the provisions of the Plan from and after the Effective Date except as specifically provided otherwise in the Plan or as directed by the Liquidating Trust.  Notwithstanding the foregoing, the Liquidating Trust Board shall not dissolve any Debtor to the extent such Debtor is required to hold Available Assets after the Effective Date pursuant to Article VI.C of the Plan, and any such Debtors shall be authorized to take such actions at the direction of the Liquidating Trust Board as may be necessary to implement the provisions of the Plan with respect to such Available Assets.

22.     **Waiver of Rights to and Under Settlement Insurance Policies**.  Article
IV.B.c of the Plan provides that the Debtors shall: (a) permit Ally to recover under the
Settlement Insurance Policies, and (b) relinquish in favor of Ally and its Representatives all
coverage that might otherwise belong to, or inure to the benefit of, the Debtors under such
Settlement Insurance Policies.  Subject to Article IV.B.c of the Plan, in exchange for the Third
Party Releases under the Plan, the Debtors' former and current officers and former and current
directors that would otherwise have indemnity rights against the Debtors or rights as an
"insured" under applicable insurance policies, shall be deemed to have waived such rights
against the Debtors.

23.     **Exemption from Certain Taxes and Fees**.  Pursuant to Bankruptcy Code
section 1146(a), any transfers of property pursuant to the Plan shall not be subject to any stamp,
real estate transfer, mortgage reporting, or other similar tax or governmental assessment in the
United States, and this Confirmation Order shall direct and be deemed to direct the appropriate
state or local governmental officials or agents to forego the collection of any such tax or
governmental assessment and to accept for filing and recordation instruments or other
documents pursuant to such transfers of property without the payment of any such tax or
governmental assessment.

24.     **Governmental Approvals Not Required**. Except as otherwise expressly
provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and
consents required, if any, by the laws, rules, or regulations of any state or any other
governmental authority with respect to the implementation or consummation of the Plan and
any documents, instruments, or agreements, and any amendments or modifications thereto, and
any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any

documents, instruments, or agreements, and any amendments or modifications thereto. Each federal, state, commonwealth, local, foreign, or other governmental agency is directed and authorized to accept the validity of (a) any and all documents, trust agreements, mortgages, and instruments and (b) all actions of the Liquidating Trust and those acting on its behalf, that are necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan, this Confirmation Order, and the agreements created or contemplated by the Plan.

25.   **Vesting of Assets**. From and after the Effective Date, the Liquidating Trust may take any action, including, without limitation, the use, acquisition, sale, lease and disposition of property, and the entry into transactions, agreements, understandings or arrangements, subject to the Liquidating Trust Agreement, whether or not in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions in the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as explicitly provided in the Plan.

26.   **Obligations Under Ocwen APA and Ocwen Sale Order**. Notwithstanding anything to the contrary in the Plan, on the Effective Date, the Ocwen APA (as defined in the *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief* [Docket No. 2246] (the "Ocwen Sale Order")) and that certain

AFI/ResCap/Ocwen/Walter Cooperation Agreement, dated as of January 31, 2013 (which for the purposes hereof shall be included in the definition of Ocwen APA) shall vest in the Liquidating Trust in accordance with the Plan and the Ocwen Sale Order.  The Liquidating Trust shall assume and perform any and all rights, benefits, duties and obligations of the Debtors under the Ocwen APA and the Ocwen Sale Order in accordance with their terms, and such rights, benefits, duties and obligations shall not be deemed to have been released or discharged by the occurrence of the Effective Date, by any provisions of the Plan (including, but not limited to, the provisions of Article IX of the Plan), or otherwise.  Nothing in the Plan Documents or this Confirmation Order shall, or shall be deemed or construed to, alter, change, modify or amend the terms and provisions of the Ocwen APA and Ocwen's, the Debtors', and the Liquidating Trust's rights, as applicable, thereunder, which rights shall continue in full force and effect and be enforceable following the Effective Date in accordance with the terms thereof. For the avoidance of doubt, Ocwen shall not be required to file an Administrative Claim to preserve its rights or Claims arising after the Effective Date from or related to the Ocwen APA.

27.    **Substitution in Pending Legal Actions**.  Except as otherwise provided in this Confirmation Order or in the Plan, on the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party to any litigation in which the Debtors are a party, including, but not limited to: (i) pending and contested matters or adversary proceedings in the Court, (ii) any appeals of orders of the Court, and (iii) any state court or federal or state administrative proceeding pending as of the Petition Date. The Liquidating Trust, and professionals for the Liquidating Trust are not required to, but may, take such steps as are appropriate to provide notice of such substitution.

28.     **Plan Distributions.**  On or as soon as practicable after the Effective Date,
(i) Cash distributions to holders of Allowed Administrative, Priority, Secured, ETS Unsecured
and General Unsecured Convenience Claims, the Borrower Claims Trust, the NJ Carpenters
Settlement, (ii) the issuance of Units to the RMBS Claims Trust, the Private Securities Claims
Trust, the Disputed Claims Reserve, and the holders of Allowed Unsecured Claims (other than
the Allowed Unsecured Claims otherwise provided for under the Plan), and (iii) distributions of
Distributable Cash paid by the Liquidating Trust, shall each be effectuated in accordance with
Article VIII of the Plan and the Liquidating Trust Agreement.

29.     **No Reserve for Disallowed or Expunged Claims**.  None of the Debtors,
the Liquidating Trust, the RMBS Claims Trust, the Private Securities Claims Trust or the
Borrower Claims Trust shall be required to establish reserves for Claims that have been
disallowed or expunged by order of the Bankruptcy Court in the absence of an order of the
Bankruptcy Court expressly directing the Debtors to establish such a reserve.

30.     **Setoffs and Recoupment**.  The Liquidating Trust may, but shall not be
required to, setoff against or recoup from any Claims of any nature whatsoever that it may have
against the claimant, including any Causes of Action transferred to the Liquidating Trust by the
Debtors, but neither the failure to do so nor the Allowance of any Claim shall constitute a
waiver or release by the Debtors or the Liquidating Trust of any such Claim it may have against
the holder of such Claim.

31.     Before the Liquidating Trust or the Borrower Claims Trust can set-off or
recoup against the distribution to be made on account of an Allowed Claim, the holder of the
Claim shall be served with written notice of the proposed setoff or recoupment at least thirty
(30) days prior to exercising any asserted setoff or recoupment right, and, if such claimant

serves a written objection to such asserted setoff or recoupment on or before thirty (30) days of

receipt of such written notice, (i) the objection shall be deemed to initiate a contested matter

governed by, inter alia, Bankruptcy Rule 9014 and Local Bankruptcy Rules 9014-1 and 9014-2,

(ii) nothing in the Plan shall affect the respective burden of each party in connection with such

contested matter, and (iii) the Liquidating Trust and the Borrower Claims Trust shall not

proceed with the asserted setoff or recoupment absent the withdrawal of such objection or by

order of the Bankruptcy Court overruling such objection.

32.   **Securities Laws Exemption**. The offering, issuance, or distribution of the

Units by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement

is exempt from the provisions of Section 5 of the Securities Act of 1933, as amended, and any

state or local law requiring registration for the offer, issuance, or distribution of a security by

reason of section 1145(a) of the Bankruptcy Code. The Units shall be transferrable to the extent

permitted by applicable securities laws.

33.   **Releases, Exculpations and Injunctions of Released Parties.**

(a)   The Plan Releases set forth in Article IX of the Plan are approved

and authorized in their entirety, are so ordered and shall be immediately effective on the

Effective Date of the Plan without further order or action on the part of the Court, any of the

parties to such releases or any other party:

**A.    Releases by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable
consideration, including with respect to the Ally Released Parties, the Ally
Contribution provided to the Estates under the Plan and otherwise, on and as of the
Effective Date of the Plan, the Debtor Released Parties are deemed released and
discharged by the Debtors, the Estates and the Liquidating Trust from any and all
Causes of Action whatsoever, whether known or unknown, asserted or unasserted,
derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law,
equity, or otherwise, whether for tort, fraud, contract, violations of federal or state
securities laws, or otherwise, including those Causes of Action based on avoidance**

liability under federal or state laws, veil piercing or alter-ego theories of liability, a theory of debt recharacterization, or equitable subordination liability, arising from or related in any way to the Debtors, including those that any of the Debtors would have been legally entitled to assert against a Debtor Released Party in its own right (whether individually or collectively) or that any holder of a Claim or Equity Interest, the Liquidating Trust, or other Entity would have been legally entitled to assert on behalf of any of those Debtors or any of their Estates, including those in any way related to the Chapter 11 Cases or the Plan to the fullest extent of the law.

**B.    Third Party Release**

On and as of the Effective Date of the Plan, except as provided by Article IX.E of the Plan, the holders of Claims and Equity Interests shall be deemed to provide a full and complete discharge and release to the Ally Released Parties and their respective property from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to the Debtors, including those in any way related to RMBS issued and/or sold by the Debtors or their affiliates and/or the Chapter 11 Cases or the Plan, the Consent Order, and the Order of Assessment.

**C.    Third Party Release Carve-Out**

Notwithstanding anything to the contrary in the Plan, the Third Party Release shall not apply to any claims held by: (i) the FHFA, as conservator for Fannie Mae, and/or Fannie Mae against Ally Bank, including, without limitation, any claims of FHFA and/or Fannie Mae against Ally Bank for continuing liabilities, obligations, and duties owed by Ally Bank to FHFA and/or Fannie Mae under the Fannie Mae Contract, including the obligations and duties to honor all selling and servicing representations and warranties related to the portfolio of loans sold and/or serviced, or that were previously serviced, by Ally Bank; (ii) the FHFA and Freddie Mac (a) against Ally Bank for any selling and servicing representation and warranty claims for loans sold to Freddie Mac directly by Ally Bank subsequent and pursuant to the May 1, 2012 and August 1, 2012 master selling and servicing agreements among Ally Bank and Freddie Mac, and (b) against Ally Financial Inc. as guarantor for the limited time that the Debtors subserviced the Ally Bank loans sold pursuant to the agreements set forth in clause (a) above, (iii) the United States and the DOJ/AG Settling States with regard to any monetary obligation the Ally Released Parties may have arising under the DOJ/AG Settlement or causes of action preserved under Article V of the Plan and Exhibits F and G of the DOJ/AG Settlement; and shall not apply to (iv) any liability or obligation of AFI to the United States or the States arising under the Internal Revenue Code, environmental laws, civil fraud laws, or criminal laws. Nothing herein is intended to expand any liabilities under any agreement set forth above or applicable law; the carve outs set forth above in clauses (ii) and (iii) are limited to liabilities under agreements referenced therein and Ally expressly reserves all rights, claims, and defenses against persons and entities carved out under Article IX.E of the Plan regarding any liability that is the subject of Article IX.E of the Plan.

Notwithstanding anything to the contrary in the Plan, in the event of a "**Cap Re Settlement Denial**" (as defined below), the Third Party Release shall, solely with respect to non-Debtor Cap Re of Vermont, LLC ("**Cap Re**"), not apply to the claims pled by plaintiffs Donna Moore, Frenchola Holden, and Keith McMillon (the "**Cap Re Plaintiffs**") against Cap Re in the action commenced by the Cap Re Plaintiffs pending in the United States District Court for the Eastern District of Pennsylvania (the "**Cap Re District Court**"), captained *Moore v. GMAC Mortgage, LLC*, No. 2:07-cv-04926-PD (the "**Cap Re Action**") and if there is a subsequent adjudication in the Cap Re Action against Cap Re or a settlement with Cap Re, a recovery against Cap Re consistent with that adjudication or settlement. In all other respects, the Third Party Release shall remain in full force and effect with respect to all other parties named as defendants in the Cap Re Action, including GMACM and GMAC Bank (now known as Ally Bank), and the limited carve-out provided for herein is intended solely for the Cap Re Plaintiffs and the putative class they represent in the Cap Re Action and no other Person or Entity in any capacity. As used herein, the term "**Cap Re Settlement Denial**" means the failure of the Cap Re District Court to grant final approval of the settlement of the Cap Re Action among the Cap Re Plaintiffs, GMACM, and Cap Re of the Cap Re Action, or the subsequent reversal or set aside of the Cap Re District Court's final approval of such settlement.[5]

For the avoidance of doubt, Released Claims in connection with Article IX.E(i) of the Plan shall constitute any Claims, Equity Interests, Causes of Action or liabilities against the Debtors held by Ally or Fannie Mae.

Nothing in the Plan releases AFI or any other party from the obligations under the Employees Retirement Plan for GMAC Mortgage Group, LLC (the "Pension Plan") and ERISA. Notwithstanding the foregoing, upon the Effective Date, the Debtors and the Plan Trusts shall be released from all obligations under the Pension Plan and ERISA related thereto, except for any Claims for fiduciary breaches or prohibited transactions (as defined in ERISA) relating to the Pension Plan under applicable law.

**D.    Ally Release**

**Except with respect to the Ally Contract Claims, on and as of the Effective Date of the Plan, the Ally Released Parties shall release the Creditors' Committee, the Debtors, and the Consenting Claimants and their respective successors and assigns, members, partners, advisors, and Representatives, in their capacities as such, from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise arising from or related to the Debtors' liquidation, including the negotiation, formulation, or preparation of the Plan Support Agreement, the Plan, the Disclosure Statement, and any other Plan Documents and related disclosures, as well as any counterclaims in commenced or tolled litigation with the Debtors or the Consenting Claimants.**

---

[5] Language subject to Ally review.

### E.    Exculpation

The Exculpated Parties shall neither have, nor incur, any liability to any entity for any pre-petition or post-petition act or omission taken in connection with, or related to, formulating, negotiating, preparing, disseminating, soliciting, implementing, administering, confirming, or effecting the consummation of any prepetition plan support agreements, the Plan Support Agreement, the Plan, the Disclosure Statement, the FGIC Settlement Agreement, the Kessler Settlement Agreement, the RMBS Settlement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, provided, however, that the foregoing provisions of this Exculpation shall have no effect on the liability of any entity that results from any such act that is determined in a final, non-appealable order to have constituted gross negligence or willful misconduct; provided, however, that the Exculpated Parties shall be entitled to rely upon the advice of counsel and financial advisors concerning his, her, or its duties pursuant to, or in connection with, any prepetition plan support agreement, the Plan Support Agreement, the Plan, the Disclosure Statement, the FGIC Settlement Agreement, the Kessler Settlement Agreement, and the RMBS Settlement. Notwithstanding the foregoing or any other provision in the Plan to the contrary, as to the DOJ-Represented Agencies, nothing in this paragraph shall release or exculpate any of the Exculpated Parties from any liability or obligation to the DOJ-Represented Agencies for any pre-petition act or omission, or from any liability or obligations arising under the tax laws, the environmental laws, civil fraud laws, criminal laws, or the police or regulatory powers of the United States, except (i) to the extent the discharge, release or injunction provisions of the Plan bar the United States from pursuing pre-petition Claims against the Debtors or the Liquidating Trust and (ii) to the extent the United States released or settled any causes of action against any of the Exculpated Parties, including but not limited to under the DOJ/AG Settlement (including exhibits). For the avoidance of doubt, nothing in the foregoing provisions shall release or exculpate the Ally Released Parties from any claims or obligations to the United States and the DOJ/AG Settling States arising under the DOJ/AG Settlement or causes of action preserved under Article V of the Plan and Exhibits F and G of the DOJ/AG Settlement.

### F.    Injunction

Except as otherwise provided in the Plan or this Order and in accordance with Article IX.H of the Plan, all Entities, including Investors, who have held, hold or may hold Claims, Equity Interests, Causes of Action or liabilities that constitute Released Claims, are permanently enjoined and precluded, from and after the Effective Date of the Plan, from: (a) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party whether directly, derivatively or otherwise, on account of or in connection with or with respect to any Released Claims; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Released Party on account of or in connection with or with respect to any Released Claims; (c) creating, perfecting or enforcing any lien (other than any charging lien of a trustee

- 48 -

under its respective indenture), claim or encumbrance of any kind against any Released Party on account of or in connection with or with respect to any Released Claims; (d) asserting any right to setoff, subrogation or recoupment of any kind against any obligation due from any Released Party on account of or in connection with or with respect to any Released Claims unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in a Proof of Claim or Equity Interest or otherwise that such holder asserts, has or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; (e) commencing or continuing in any manner or action or other proceeding of any kind against any Released Party on account of or in connection with or with respect to any Released Claims; and (f) seeking relief or collecting judgments on an Investor-related securities claim in a manner that fails to conform with the terms of the judgment reduction provision set forth in the Plan and the Confirmation Order; **provided,** that nothing contained in the Plan shall be construed to prevent any entity from objecting to claims or defending against claims objections or collection actions whether by asserting a right of setoff or otherwise to the extent permitted by law.  Such injunction shall extend to the successors of the Liquidating Trust, if any, and to their respective properties and interests in property.  Any person injured by any willful violation of this injunction shall be entitled to recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

34.    **Release of Liens**. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of any Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall vest in the Liquidating Trust.

35.    **Discharge**. Except as expressly provided in the Plan or the Confirmation Order, (a) each holder (as well as any trustees and agents on behalf of each holder) of a Claim against or Equity Interest in a Debtor shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code,

of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date and (b) all such holders shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated Equity Interest in the Debtors.

36.    **Satisfaction and Release of Claims and Equity Interests**. The rights afforded in the Plan and the treatment of all Claims and Equity Interests under the Plan shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Plan Trusts, or any of their respective assets or properties arising prior to the Effective Date.  Except as otherwise expressly specified in the Plan, after the Effective Date, any holder of such Claim or Equity Interest shall be precluded from asserting against the Debtors, the Plan Trusts, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of this Order.

37.    **Judgment Reduction** A defendant against whom a judgment of a court of competent jurisdiction is obtained (whether in a proceeding now pending or hereafter commenced) on an Investor-related securities claim where such defendant has a claim for indemnity or contribution that is subject to the Third Party Releases shall be entitled to a judgment credit in the underlying litigation in the amount and on the terms that would be available if the Third Party Releases were treated as a bar order in the underlying litigation, in accordance with, and to the extent permitted under, applicable statutory or common law, as determined by a court of competent jurisdiction.  For the avoidance of doubt, judgment reduction in the NJ Carpenters Class Action shall be governed by the terms of the Order and

Final Judgment entered by the District Court granting final approval to the NJ Carpenters

Settlement. *See* [Docket No. 5354].  Notwithstanding the foregoing and without limitation (i)

no Ally Released Party shall be deemed to have admitted to such fault by virtue of this

provision; (ii) nothing in the Plan or Confirmation Order shall create any right for a defendant

that it does not have under applicable statutory or common law, if any, to obtain discovery from

any Ally Released Party, or create an obligation for any Ally Released Party to participate in

any proceeding to determine fault that does not exist under applicable statutory or common law,

if any, in connection with such claim; and (iii) no finding in any proceeding to determine fault

shall create any claim against any Ally Released Party or obligation of any Ally Released Party

to satisfy any claim.  For the avoidance of doubt, nothing in Article IX.K of the Plan affects the

Third Party Releases, and all parties' rights under applicable law with respect to discovery and

any Ally Released Party's participation in any proceeding to determine fault are preserved.

### 38. <u>Special Provisions for the United States and the States.</u>

(a)    As to the United States, except where the Plan or Confirmation

Order explicitly states otherwise as to the United States, nothing in the Plan or Confirmation

Order shall limit or expand the scope of discharge, release or injunction to which the Debtors or

Liquidating Trust are entitled to under the Bankruptcy Code, if any.  The discharge, release,

exculpation and injunction provisions contained in the Plan and Confirmation Order are not

intended and shall not be construed to bar the United States and the States from, subsequent to

the Bankruptcy Court's entry of the Confirmation Order, pursuing any police or regulatory action

against the Debtors or the Liquidating Trust, except (i) to the extent those discharge, release,

exculpation or injunction provisions bar a Governmental Unit from pursuing pre-petition Claims

against the Debtors or the Liquidating Trust and (ii) to the extent a Governmental Unit released

or settled any causes of action against the Debtors or the Liquidating Trust, including but not limited to under the DOJ/AG Settlement (including exhibits).

(b)        Notwithstanding anything contained in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability of the Debtors or the Liquidating Trust to the United States and the States that is not a Claim; (2) any Claim of the United States and the States against the Debtors or the Liquidating Trust arising on or after the Confirmation Date; (3) any valid right of setoff or recoupment of any Governmental Unit against any of the Debtors, regardless of whether (a) a right of setoff was reserved in a proof of claim filed with respect to the debt subject to setoff or (b) the setoff has been authorized or approved by the Bankruptcy Court; or (4) any liability of the Debtors or the Liquidating Trust to any Governmental Unit under environmental law as the owner or operator of property that such entity owns or operates after the Confirmation Date.  Nor shall anything in this Confirmation Order or the Plan:  (i) enjoin or otherwise bar the United States or the States from seeking to assert or enforce outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by the United States or the States are discharged or otherwise barred by this Confirmation Order, the Plan, or the Bankruptcy Code. Notwithstanding the foregoing, (1) to the extent any Governmental Unit has (i) in connection with these Chapter 11 Cases, entered into any stipulation or settlement of claims, or been subject to a Bankruptcy Court order and (ii) there is any conflict between the terms of such stipulation or settlement of claims or Bankruptcy Court order and this paragraph, the terms of such stipulation, settlement or Bankruptcy Court order shall control; and (2) this paragraph shall not expand or limit the scope of any releases or settlement of causes of action granted to or for the benefit of

the Debtors or the Liquidating Trust by any Governmental Unit, including but not limited to

under the DOJ/AG Settlement (including exhibits).

(c)       Nothing in the Confirmation Order or the Plan shall bar the United

States and the States from pursuing any police and regulatory action against any non-Debtor.

Further, nothing in the Confirmation Order or Plan shall release or exculpate any non-Debtor

(other than AFI, which for purposes of this paragraph shall be governed by Article IX.D and

IX.E of the Plan) from any liability to any DOJ-Represented Agency including, but not limited

to, any liabilities arising under the Internal Revenue Code, the environmental laws, the civil

fraud laws, or the criminal laws, nor shall anything in this Confirmation Order or Plan enjoin any

DOJ-Represented Agency from bringing any claim, suit, action, or other proceeding against any

non-Debtor in connection therewith, except as provided by sections 1125(e) and 1145 of the

Bankruptcy Code; *provided*, *however*, that the foregoing sentence shall not expand or limit the

scope of discharge granted to the Debtors and the Liquidating Trust under sections 524 and 1141

of the Bankruptcy Code; and *provided further, however,* that this paragraph shall not expand or

limit the scope of any exculpations or releases granted to the Exculpated Parties and the Ally

Released Parites, which shall be governed by Article IX.G of the Plan; and *provided further,*

*however*, that this paragraph shall not expand or limit the scope of any releases or settlement of

causes of action granted to or for the benefit of any non-Debtor by the United States or the

States, including but not limited to under the DOJ/AG Settlement (including exhibits).

(d)       Nothing contained in the Plan or Confirmation Order shall

constitute a determination of the United States regarding the federal tax liability of any person or

entity, including but not limited to the Debtors or the Liquidating Trust, nor shall the Plan or

Confirmation Order be deemed to have determined the federal tax treatment by the United States

of any item, distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in the Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make such determinations, except as provided under 11 U.S.C. § 505.

(e)    Nothing in the Plan or the Confirmation Order shall limit or expand the scope of the Debtors' or the Liquidating Trust's ability to estimate a Disputed Claim of the United States or the DOJ/AG Settling States pursuant to 11 U.S.C. § 502(c) of the Bankruptcy Code.

(f)    Notwithstanding any other provision in the Plan, the Liquidating Trust shall not retain and may not enforce any cause of action, whether based upon 11 U.S.C. §§ 547 and 548 or otherwise, against either the United States or any DOJ/AG Settling States under the DOJ/AG Settlement, for any transaction required by the DOJ/AG Settlement, whether arising before or after the Petition Date.

39.    **Limitation on Obligations to the Ally Released Parties.**  Except with respect to the Debtors' and the Liquidating Trust's obligations to Ally as specifically set forth in the Plan (including their obligations to perform under the Ally Contracts in accordance with their terms), on and after the Effective Date the Debtors and the Plan Trusts shall have no other obligations to the Ally Released Parties.

40.    **Executory Contracts and Unexpired Leases.**

(a)    The Executory Contract and Unexpired Lease provisions of Article V of the Plan are specifically approved in all respects, are incorporated herein in their entirety and are so ordered.  The Debtors are authorized to assume, assign and/or reject Executory Contracts or Unexpired Leases in accordance with Article V of the Plan.

(b)        Pursuant to Article V of the Plan, on the Effective Date each

Executory Contract and Unexpired Lease not previously assumed shall be deemed automatically

rejected pursuant to sections 365 and 1123 of the Bankruptcy Code unless any such Executory

Contract or Unexpired Lease:  (i) is expressly identified on the Assumption Schedule; (ii) has

been previously assumed by the Debtors by Final Order or has been assumed by the Debtors by

order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after

the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; or

(iv) is otherwise assumed pursuant to the terms of the Plan.  This Order will constitute an order

of the Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy

Code as of the Effective Date or as otherwise set forth in the Plan Supplement.

(c)        Unless withdrawn from the Assumption Schedule by the Plan

Proponents prior to the Effective Date, each Executory Contract and Unexpired Lease identified

on the Assumption Schedule shall be deemed assumed pursuant to sections 365 and 1123 of the

Bankruptcy Code as of the Effective Date or as otherwise set forth in the Plan Supplement.

(d)        Any request for payment of a Cure Claim that is not timely filed

and served shall be disallowed automatically, forever barred and not be enforceable against any

Debtor or the Liquidating Trust, without the need for an objection by the Debtors or the

Liquidating Trust or order of the Court.  The Plan Proponents, prior to the Effective Date, or the

Liquidating Trust, following the Effective Date, may settle any dispute on the amount of a Cure

Claim without further notice to any party or action, approval, or order of the Bankruptcy Court.

If the Plan Proponents, prior to the Effective Date, or the Liquidating Trust, following the

Effective Date, object to any request for payment of a Cure Claim, the Bankruptcy Court shall

determine the Allowed amount of such Cure Claim and any related issues.  Unless the parties to

the Executory Contract or Unexpired Lease agree otherwise, all disputed defaults that are required to be cured shall be cured by the later of (i) ten (10) days after entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto and (ii) the Effective Date. The Plan Proponents, prior to the Effective Date, or the Liquidating Trust, following the Effective Date, reserve the right either to reject or nullify the assumption of any Executory Contract or Unexpired Lease no later than thirty (30) days after a Final Order determining a Cure Claim greater than that proposed by the Debtors.

(e)     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date the Debtors or the Liquidating Trust assume such Executory Contract or Unexpired Lease. Any proofs of claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

(f)     Notwithstanding anything herein or in the Plan to the contrary, the rights of Ally, Impac Funding Corporation, and Impac Mortgage Holdings, Inc. regarding the civil action entitled *Ally Bank f/k/a GMAC Bank v. Impac Funding Corporation et al.*, No. 13-Civ-5789 (S.D.N.Y. 2013) are fully preserved.

41.     **Preservation of Causes of Action.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan (including pursuant to the Plan Support Agreement), or by a Final Order, in accordance

with section 1123(b) of the Bankruptcy Code, the Borrower Claims Trust with respect to Borrower-Related Causes of Action, and the Liquidating Trust with respect to all other Causes of Action, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors or the Debtors' Estates, whether arising before or after the Petition Date, including, without limitation, any Causes of Action specifically enumerated in the Plan Supplement, and the Liquidating Trust's and Borrower Claims Trust's respective rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Liquidating Trust and the Borrower Claims Trust may pursue their respective Causes of Action, as appropriate, in accordance with the best interests of the respective Trust.  **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against such Entity as any indication that the Liquidating Trust or Borrower Claims Trust, as the case may be, will not pursue any and all available Causes of Action against such Entity. The Liquidating Trust and the Borrower Claims Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Liquidating Trust expressly reserves all Causes of Action other than Borrower-Related Causes of Action, and the Borrower Claims Trust expressly reserves all Borrower-Related Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation, the Global Settlement, the Plan Settlements, or Consummation. For the

avoidance of doubt, the Plan does not release any Causes of Action that the Plan Proponents or

the Liquidating Trust or Borrower Claims Trust have or may have now or in the future against

any Entity other than the Released Parties (and only in their capacity as Released Parties).

42.    Except as otherwise provided in the Plan or in a Final Order, the

Liquidating Trust reserves and shall retain Causes of Action notwithstanding the rejection of

any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the

Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that

the Debtors may hold against any Entity that is not released under the Plan or a separate

settlement approved by Final Order shall vest in the Borrower Claims Trust with respect to

Borrower-Related Causes of Action and in the Liquidating Trust with respect to all other Causes

of Action. The Liquidating Trust and Borrower Claims Trust, as the case may be, through their

respective authorized agents or representatives, shall retain and may exclusively enforce any

and all such Causes of Action. The Liquidating Trust has the exclusive right, authority, and

discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise,

release, withdraw, or litigate to judgment any Causes of Action other than Borrower-Related

Causes of Action, or to decline to do any of the foregoing, without the consent or approval of

any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

The Borrower Claims Trust has the exclusive right, authority, and discretion to determine and to

initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to

judgment any Borrower-Related Causes of Action, or to decline to do any of the foregoing,

without the consent or approval of any third party or any further notice to or action, order, or

approval of the Bankruptcy Court.  In pursuing any claim, right, Cause of Action or objection,

the Liquidating Trust or the Borrower Claims Trust shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code.

43.    **Claims Bar Dates and Other Claims Matters.**

(a)    **Professional Claims.**  All requests for compensation or reimbursement of Professional Claims accrued through the Effective Date shall be Filed no later than seventy-five (75) days after the Effective Date.

(b)    Other than as set forth herein or in the Plan, the procedures set forth in the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals  (the "**Interim Compensation Order**") [Docket No. 797] shall remain in effect through the Effective Date.

(c)    **Bar Date for Rejection Claims.** Claims arising from the rejection of Executory Contracts or Unexpired Leases must be Filed with the Court no later than the Rejection Damages Claims Bar Date, which is: (a) with respect to an Executory Contract or Unexpired Lease that is rejected pursuant to the Plan, forty-five (45) days after the Effective Date, or (b) with respect to an Executory Contract or Unexpired Lease that is otherwise rejected, the applicable bar date established by the Bar Date Order or other order of the Bankruptcy Court. For the avoidance of doubt, all Allowed Claims arising from the rejection of Executory Contracts or Unexpired Leases shall be treated as General Unsecured Claims against the applicable Debtor Groups.

(d)    Any Claims arising from the rejection of Executory Contracts or Unexpired Leases that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trust, or their assets

- 59 -

or properties without the need for any objection by the Liquidating Trust or further notice to, or action, order, or approval of the Bankruptcy Court.

(e) **Administrative Claims Bar Date.** Except as provided for in the Plan, this Confirmation Order, or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Claims that arose prior to the Effective Date (other than holders of Administrative Claims paid in the ordinary course of business, holders of Professional Claims, holders of Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code, and holders of Postpetition Intercompany Balances) must File and serve on the Plan Proponents or the Liquidating Trust, as applicable, requests for the payment of such Administrative Claims not already Allowed by Final Order in accordance with the procedures specified in the Confirmation Order, on or before the first Business Day that is thirty (30) days following the Effective Date, or be forever barred, estopped, and enjoined from asserting such Claims against the Debtors, the Plan Trusts, or their assets or properties, and such Claims shall be deemed discharged as of the Effective Date.

(f) **Statutory Fees.** Notwithstanding anything to the contrary contained in the Plan, on the Effective Date or as soon as practicable thereafter, the Liquidating Trust shall pay all U.S. Trustee Fees that are due and owing on the Effective Date. For the avoidance of doubt, nothing in the Plan shall release the Liquidating Trust from its obligation to pay all U.S. Trustee Fees due and owing after the Effective Date before a Final Order is entered by the Bankruptcy Court concluding or closing the Chapter 11 Cases.

44. **No Change in Control.** Pursuant to Article V.F. of the Plan, the consummation of the Plan or the assumption of any Executory Contract or Unexpired Lease is not intended to, and shall not, constitute a change in ownership or change in control under any

employee benefit plan or program, financial instrument, loan or financing agreement, Executory

Contract or Unexpired Lease or contract, lease or agreement in existence on the Effective Date

to which a Debtor is a party.

45.    **Cancellation of Existing Securities.**  Subject to Article IV.C.8 of the Plan

and the assumption of Executory Contracts and Unexpired Leases as set forth in the Plan, and

except for purposes of evidencing a right to distributions under the Plan or in order to prosecute

preserved Causes of Action, on the Effective Date, all notes, stock, instruments, certificates,

indentures, guarantees, and other documents or agreements evidencing a Claim against or

Equity Interest in the Debtors will be deemed automatically cancelled with respect to the

Debtors and shall be of no further force or effect as against the Debtors, whether such document

is surrendered for cancellation or not, and the obligations of Ally, the Debtors, or the

Liquidating Trust, thereunder or in any way related thereto will be discharged.

46.    Notwithstanding anything to the contrary in the Plan, (i) the Senior

Unsecured Notes Indenture will continue in effect for the limited purposes of: (a) allowing the

Senior Unsecured Noteholders to receive distributions on account of their Senior Unsecured

Notes Claims, and (b) allowing the Senior Unsecured Notes Indenture Trustee to make

distributions in accordance with the terms of the Plan, to fund the Senior Unsecured Notes

Indenture Trustee Reserve, and to exercise its Senior Unsecured Notes Indenture Trustee

Charging Lien against distributions under the Plan and against the Senior Unsecured Notes

Indenture Trustee Reserve for payment of Senior Unsecured Notes Indenture Trustee Fees and

Expenses; (ii) the First Priority Security Agreement will continue in effect for the limited

purposes of allowing the First Priority Collateral Agent to exercise its First Priority Collateral

Agent Lien for the payment of First Priority Collateral Agent Fees and Expenses; and (iii) all

Junior Secured Notes, the Junior Secured Notes Indenture and the Junior Secured Notes

Security Agreement shall be deemed automatically canceled and discharged on the Effective

Date, underlined, however, that the Junior Secured Notes, the Junior Secured Notes Indenture and

the Junior Secured Notes Security Agreement shall continue in effect solely for the purposes of

(x) allowing the Junior Secured Noteholders to receive distributions on account of their Junior

Secured Notes Claims as provided in the Plan, (y) allowing the Junior Secured Notes Indenture

Trustee to make the distributions to be made on account of the Junior Secured Notes; and (z)

permitting the Junior Secured Notes Indenture Trustee to assert its Junior Secured Notes

Indenture Trustee Charging Lien against such distributions for payment of the Junior Secured

Notes Indenture Trustee Fees and the Junior Secured Notes Collateral Agent Fees and

Expenses.

47. **Binding Effect of Prior Orders.**  Pursuant to section 1141 of the

Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the

Effective Date and subject to the terms of the Plan and this Order, all prior orders entered in the

Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and

directed thereunder and all motions or requests for relief by the Debtors pending before the

Court as of the Effective Date shall be binding upon and shall inure to the benefit of any parties

thereto, including the Debtors, the Plan Trusts, and any heir, executor, administrator, successor

or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if

any, of each Entity.

48. **Reversal.**  If any or all of the provisions of this Order are hereafter

reversed, modified or vacated by subsequent order of this Court or any other court, such

reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred

or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of such order.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

49.    **Notice of Confirmation of the Plan.**    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtors or the Liquidating Trust are directed to serve a notice of the entry of this Order and the establishment of bar dates for Administrative Claims hereunder, substantially in the form of Appendix 2 attached hereto and incorporated herein by reference (the "**Confirmation Notice**"), to all parties in the creditor database maintained by KCC, no later than 5 Business Days after the Confirmation Date; provided, however, that the Debtors or the Liquidating Trust shall be obligated to serve the Confirmation Notice only on the record holders of Claims or Equity Interests as of the Confirmation Date.  The Debtors are directed to publish the Confirmation Notice once in the *Wall Street Journal* and *USA Today* as soon as reasonably practicable after the Confirmation Date.  As soon as practicable after the entry of this Order, the Debtors shall make copies of this Order and the Confirmation Notice available on the Debtors' restructuring website at www.kccllc.net/rescap.  As soon as practicable after the occurrence of the Effective Date pursuant to the terms of the Plan, the Debtors or the Liquidating Trust shall serve the notice of Effective Date, substantially in the form attached hereto as Appendix 3 (the "**Notice of Effective Date**") on all parties served with the Confirmation Notice, and shall publish the Notice of Effective Date in the *Wall Street Journal* and *USA Today*.

50. **Modification of the Plan.** The Plan Proponents and the Liquidating Trust are authorized to amend or modify the Plan in accordance with Article XI of the Plan  at any time prior to the substantial consummation of the Plan without further order of the Court, or if requested by the Plan Proponents or the Liquidating Trust, pursuant to a subsequent order of the Court.  In addition, without the need for a further order or authorization of this Court, but subject to the express provisions of this Order and the Plan, the Plan Proponents and the Liquidating Trust shall be authorized and empowered to make non-material modifications to the documents filed with the Court, including the Plan Supplement, in their reasonable business judgment as may be necessary.

51. **Dissolution of Creditors' Committee.**   On the Effective Date, the Creditors' Committee shall dissolve; provided, however, that, following the Effective Date, the Creditors' Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (i) Claims and/or applications for compensation by Professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; (ii) any appeals of the Confirmation Order that remain pending as of the Effective Date; (iii) any adversary proceedings or contested matters as of the Effective Date to which the Creditors' Committee is a party; and (iv) responding to creditor inquiries for one-hundred-twenty (120) days following the Effective Date.  Upon the dissolution of the Creditors' Committee, the current and former members of the Creditors' Committee and their respective officers, employees, counsel, advisors and agents, shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases, and the

retention or employment of the Creditors' Committee's respective attorneys, accountants and other agents shall terminate, except with respect to matters (i) through (iv) above.

52. **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws that would require application of the law of another jurisdiction, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, securities, instruments, or other documents executed or delivered in connection with the Plan (except as otherwise set forth in those documents, in which case the governing law of such documents shall control); provided, however, that governance matters relating to the Debtors, the Liquidating Trust, the Borrower Claims Trust, the RMBS Claims Trust, or the Private Securities Claims Trust, as applicable, shall be governed by the laws of the State of organization or formation thereof.

53. **Miscellaneous Provisions.**

(a)    The rights of the Plan Proponents, the Liquidating Trustee, the Private Securities Claims Trustee, the RMBS Claims Trustee, and the Borrower Claims Trustee to investigate and object, on any basis, to any request for payment or reimbursement of fees and expenses of the ad hoc group of Junior Secured Noteholders that are referred to in the AFI/JSN Cash Collateral Order as the "Ad Hoc Committee of Holders of Junior Secured Notes," any individual Junior Secured Noteholder, the Junior Secured Notes Indenture Trustee, and Wells Fargo, N.A. in its capacity as First Priority Collateral Agent or Junior Secured Notes Collateral Agent that may be payable pursuant to the Bankruptcy Code, applicable documents or otherwise (but excluding any fees previously paid by the Debtors to or on behalf of Junior Secured

Noteholders in accordance with the AFI/JSN Cash Collateral Order, which fees and expenses shall remain subject to the recharacterization claims pursuant to the JSN Adversary Proceeding) are hereby expressly reserved.

(b)     Except as otherwise provided in the Plan and this Order, following the Effective Date, notice of all subsequent pleadings in the Chapter 11 Cases shall be limited to counsel to the Debtors, counsel to the Liquidating Trust, the U.S. Trustee and any party known to be directly affected by the relief sought.

(c)     On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Liquidating Trust, as applicable, and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

(d)     Any document related to the Plan that refers to a plan of liquidation or chapter 11 plan of the Debtors other than the Plan confirmed by this Order shall be, and it hereby is, deemed to be modified such that the reference to a plan of liquidation or chapter 11 plan of the Debtors in such document shall mean the Plan confirmed by this Order, as appropriate.

(e)     Without intending to modify any prior Order of this Court (or any agreement, instrument or document addressed by any prior Order), in the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the

Plan shall govern (unless otherwise expressly provided for in the Plan or such agreement, instrument, or document).  In the event of any inconsistency between the Plan or any agreement, instrument, or document intended to implement the Plan, on the one hand, and this Order, on the other, the provisions of this Order shall govern.

(f)        In accordance with Article X.D. of the Plan, if the Effective Date does not occur on or before the earlier of thirty (30) days after the Confirmation Date or December 15, 2013, then upon motion by the Plan Proponents or Ally made before the Effective Date, this Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the Filing of such motion to vacate, this Order may not be vacated if the Effective Date occurs before the Bankruptcy Court enters an order granting such motion.  If this Order is vacated, then, except as provided in any order of the Bankruptcy Court vacating this Order, the Plan, including the assumptions, assignments or rejections of Executory Contracts, will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Equity Interests or Causes of Action; (2) prejudice in any manner the rights of any Debtor or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking of any sort by such Debtor or any other Entity.

(g)        Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan and this Order shall remain in full force and effect in accordance with their terms, provided, however, that, with respect to individual matters, any and all relief from the automatic stay granted by the Court

- 67 -

during these Chapter 11 Cases shall not be subject to the injunction provisions of this Order or the Plan.

        (h)      Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms and (b) integral to the Plan and may not be deleted or modified without the consent of the Plan Proponents.

        54.    **Findings and Conclusions**.  The determinations, findings, judgments, decrees, and orders set forth and incorporated into this Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.   The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference to, and are an integral part of, this Order.  The terms of the Plan, the Plan Documents, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.

        55.    **Headings**.   The headings contained within this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

        56.    **Retention of Jurisdiction**.   The business and assets of the Debtors shall remain subject to the jurisdiction of this Court until the Effective Date.   Notwithstanding the entry of this Order, from and after the Effective Date, the Court shall retain such jurisdiction

over the Chapter 11 Cases as is legally permissible, including jurisdiction over those matters and issues described in Article XII of the Plan.

57.    **Order Effective Immediately**. Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, the stay provided for under Bankruptcy Rule 3020(e) shall be waived and this Order shall be effective and enforceable immediately upon entry.  The Debtors are authorized to consummate the Plan and the transactions contemplated thereby immediately after entry of this Order and upon, or concurrently with, satisfaction of the conditions set forth in the Plan.

Dated: _____2013
        New York, New York


                                    _____
                                    THE HONORABLE MARTIN GLENN
                                    UNITED STATES BANKRUPTCY JUDGE