**Hearing Date:  November 15, 2013 at 10:00 a.m. (EST)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
                                              )
In re:                                        )   Case No. 12-12020 (MG)
                                              )
RESIDENTIAL CAPITAL, LLC, et al.,             )   Chapter 11
                                              )
                              Debtors.         )   Jointly Administered
                                              )
---------------------------------------------------------

**DEBTORS' SUPPLEMENTAL OMNIBUS REPLY IN SUPPORT OF
DEBTORS' THIRTIETH OMNIBUS OBJECTION TO CLAIMS
(NO LIABILITY BORROWER CLAIMS – BOOKS AND RECORDS)**

## **Table of Contents**

Page

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND .................................................................................................................2

REPLY .............................................................................................................................3

    A.    Judith A. Winkler and James C. Winkler (Claim No. 3582)..................................3

    B.    M. Francine Modderno (Claim No. 4866)..........................................................10

CONCLUSION ..................................................................................................................17

## **Exhibit List**

Exhibit 1        Responses to Thirtieth Omnibus Objection to Claims

Exhibit 2        Disputed Claims

Exhibit 3        Second Supplemental Declaration

Exhibit 4        August 16 Letter

Exhibit 5        Amended Complaint

Exhibit 6        Motion to Dismiss

Exhibit 7        Memorandum in Support of Motion to Dismiss

Exhibit 8        Dismissal Order

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Aliff v. Joy Manufacturing Co.,
    914 F.2d 39 (4th Cir. 1990) ........................................................................... 15, 16

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ....................................................................................... 14

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ........................................................................................... 14

Chaudhary v. Stevens,
    2005 U.S. Dist. LEXIS 27447 (E.D. Va. Aug. 9, 2005), aff'd, 182 Fed. Appx. 204
    (4th Cir. 2006) ................................................................................................... 15

Enzo Therapeutics, Inc. v. Yeda Resource and Development Co.,
    467 F. Supp. 2d 579 (E.D. Va. 2006) .............................................................. 15

Federated Department Stores, Inc. v. Moitie,
    452 U.S. 394 (1981) ........................................................................................... 15

Feinberg v. Bank of New York (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) ................................................................ 3

Laurel Sand & Gravel, Inc. v. Wilson,
    519 F.3d 156 (4th Cir. 2008) ............................................................................ 16

Montana v. United States,
    440 U.S. 147 (1979) ........................................................................................... 15

Ohio Valley Environmental. Coalition v. Aracoma Coal Co.,
    556 F.3d 177 (4th Cir. 2009) ............................................................................ 16

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co., L.P. v.
    Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) ........... 1

Pittston Co. v. United States,
    199 F.3d 694 (4th Cir. 1999) ............................................................................ 16

In re Rockefeller Center Properties,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Center
    Properties (In re Rockefeller Center Properties), 266 B.R. 52 (S.D.N.Y. 2001), aff'd,
    46 Fed. Appx. 40 (2d Cir. 2002) ........................................................................ 1

State Water Control Bd. v. Smithfield Foods, Inc.,
    542 S.E.2d 766 (Va. 2001) .................................................................... 14, 15, 16

ny-1114062

Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency,
    322 F.3d 1064 (9th Cir. 2003) .............................................................................................. 16

Warwick Corp. v. Maryland Department of Transportation,
    573 F. Supp. 1011 (D. Md. 1983), aff'd, 735 F.2d 1359 (4th Cir. 1984).............................. 14

STATUTES

11 U.S.C. 502(b)(1) ........................................................................................................................ 3

11 U.S.C. § 502(a) ........................................................................................................................... 3

Residential Capital, LLC (ResCap) and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby submit this supplemental omnibus reply (the "Supplemental Reply") to certain responses, objections, and oppositions (collectively, the "Responses") interposed by those claimants (collectively, the "Claimants"), listed on Exhibit 1 annexed hereto, to the *Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* [Docket No. 4887] (the "Objection").  In support of the Supplemental Reply, the Debtors submit the Second Supplemental Declaration of Deanna Horst, ResCap's Chief Claims Officer, annexed hereto as Exhibit 3 (the "Supplemental Declaration").  In further support hereof, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors have examined each of the Responses and the statements and exhibits submitted in support thereof.  Exhibit 1 contains a brief summary of each Claimant's Response.  The Debtors examined their books and records in an effort to validate the claimants' allegations, and as described in greater detail herein, have not discovered any facts that provide a basis for liability with respect to the asserted claims.  Copies of the claims that are at issue in the Responses are attached hereto as Exhibit 2.

2.      If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co., L.P. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002).  Each Claimant has failed to provide a sufficient explanation as to

why its claim represents a valid claim that should be allowed against the Debtors. Accordingly, the relief sought in the Objection should be granted with respect to the Claimants.

## BACKGROUND

3.      In connection with the claims reconciliation process, the Debtors identified certain claims filed by Borrowers[1] that either (i) contradict the information in the Debtors' books and records and/or (ii) fail to establish a liability reflected in the Debtors' books and records (together, the "No Liability Borrower Claims").

4.      After consulting with SilvermanAcampora LLP, special borrowers' counsel to the official committee of unsecured creditors ("Special Counsel"), the Debtors sent Request Letters to those Borrowers who filed the No Liability Borrower Claims with insufficient or no supporting documentation requesting additional documentation in support of such claims. The Request Letters required the Claimant to substantiate the legal and factual reasons as to why the Claimant believes it is owed money or is entitled to other relief from the Debtors, and the Claimant was required to provide copies of any and all documentation that the Claimant believes supports the basis for its claim.

5.      The Debtors either did not receive any response to the Request Letters or received insufficient information to establish a basis for liability with respect to the applicable No Liability Borrower Claims.

6.      Accordingly, on August 29, 2013, the Debtors filed the Objection to the No Liability Borrower Claims. After the Debtors filed the Objection, each of the Claimants submitted a Response, as summarized on Exhibit 1 annexed hereto.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in each Objection.

## REPLY

7.      A filed proof of claim is "deemed allowed, unless a party in interest . . .

objects." 11 U.S.C. § 502(a).  Moreover, section 502(b)(1) of the Bankruptcy Code provides, in

relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable

against the debtor and property of the debtor, under any agreement or applicable law…." 11

U.S.C. 502(b)(1).  Furthermore, the burden of persuasion is on the holder of a proof of claim to

establish a valid claim against a debtor.  Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R.

215, 220-22 (Bankr. S.D.N.Y. 2010).

8.      Upon review of the Responses and as explained in further detail below and

in the Second Supplemental Declaration, the Debtors conducted an exhaustive examination of

their books and records to assess the allegations made in the No Liability Borrower Claims and

the Responses.  The Debtors determined that the Claimants' allegations of liability have no

validity and are simply unsubstantiated allegations devoid of fact.  Accordingly, for the reasons

discussed herein, the No Liability Borrower Claims should be disallowed and expunged from the

Debtors' claims register.

## A.      Judith A. Winkler and James C. Winkler (Claim No. 3582)

9.      Mr. and Ms. Winkler filed proof of claim number 3582 in the amount of

$298,682.96 (the "Winkler Claim") in relation to their mortgage note, which secured a loan (the

"Winkler Loan") that originated with GMAC Mortgage, LLC ("GMACM") on January 28, 2008.

See Supplemental Declaration at ¶ 4.  Federal Home Loan Mortgage Corporation ("Freddie

Mac") is the investor for the Winkler Loan.  See id.  GMACM began servicing the Winkler Loan

on January 28, 2008, and on February 15, 2013, servicing of the Winkler Loan was transferred to

Ocwen Loan Servicing, LLC ("Ocwen").  See id.

10.     The Debtors initially believed that the Winkler Claim related to prior

litigation between the parties in the District Court of Minnesota.  See id. at ¶ 5.  However, upon

further review, the Debtors understand the Winkler Claim to relate to loan modification requests

and alleged late and/or misapplied payments occurring after the conclusion of the litigation in the

District Court of Minnesota.  See id.  Specifically, the letter from claimants' counsel attached to

the Winkler Claim advises GMACM that it should "offer the Winklers a permanent modification

under fair and equitable terms, as they are entitled."

11.     In connection with the Winkler Loan, the Debtors reviewed Mr. and Ms.

Winkler's payment history, the Debtors' internal servicing notes, as well as Mr. and Ms.

Winkler's loan modification applications, loan modification denial letters, loan modification

document request letters and any applicable investor guidelines.  See id. at ¶ 6.  Based on such

review, the Debtors verified that from April 2012 through July 2013 GMACM and Mr. and Ms.

Winkler, and/or their authorized representatives, engaged in regular communication regarding

loan modification requests and payment issues.  See id.  More importantly, as described herein,

the Winklers obtained a permanent loan modification from the Debtors earlier this year, and

therefore, have no valid basis for a claim against Residential Capital or any of its debtor-

affiliates.

12.     On April 3, 2012, Mr. and Ms. Winkler were denied a HAMP loan

modification due to GMACM's misapplication of Mr. and Ms. Winkler's March 2012 payment.[2]

See id. at ¶ 7.  As a result of GMACM's error, Mr. and Ms. Winkler's April 2012 payment could

---

[2] GMACM erroneously placed Mr. and Ms. Winkler's March 12, 2012 payment into a suspense account instead of
applying such payment toward the trial loan modification.  See Supplemental Declaration at ¶ 7, n. 2.  A suspense
account refers to an account in which payments that are less than the amount of the regular monthly payment are
held until such time that payments totaling the regular monthly payment have been received.  See id.

not be applied toward the trial HAMP loan modification because the trial plan was not active.

See id.  Ultimately, Mr. and Ms. Winkler were denied a HAMP permanent loan modification due

to GMACM's misapplication of the March 2012 payment.  See id.

13.    On June 20, 2012, the Debtors received a new loan modification request

from Mr. and Ms. Winkler; however, certain documents were missing from the information

submitted to the Debtors.  See id. at ¶ 8.  The Debtors informed Mr. and Ms. Winkler's attorney,

Patrick Boyle, of the missing documents on June 26, 2012, and the Debtors mailed missing item

letters to Mr. and Ms. Winkler on June 26, 2012 and July 28, 2012.  See id.

14.    On August 9, 2012, GMACM spoke with Mr. and Ms. Winkler's

authorized representative, Austin Bowyer, regarding the misapplication of Mr. and Ms.

Winkler's March 2012 payment and the denial of the HAMP permanent loan modification.  See

id. at ¶ 9.  Mr. Bowyer was advised that if Mr. and Ms. Winkler would make the April 2012

payment required to complete the HAMP trial loan modification, then Mr. and Ms. Winkler

would be approved for a HAMP permanent loan modification.  See id.  Mr. Bowyer was further

informed that payment would remain due on the Winkler Loan for the months of June 2012

through August 2012 because the HAMP trial loan modification was only in effect through May

2012.  See id.  On August 10, 2012, Mr. Bowyer inquired about certain property inspection fees

that were incurred by Mr. and Ms. Winkler for the months of June 2012 through August 2012,

and noted that such fees would not have been incurred had the permanent loan modification been

approved.  See id.  Due to the fact that the HAMP permanent loan modification was denied due

to GMACM's error, GMACM agreed to waive the property inspection fees, which totaled

$56.50.  See id.

5

15.     On August 10, 2012, a GMACM representative again spoke with Mr. Bowyer, who indicated that Mr. and Ms. Winkler would submit the final trial loan modification payment that was due in April 2012 and would make the needed payments for June 2012 through August 2012. See id. at ¶ 10.

16.     On August 14, 2012, Mr. and Ms. Winkler submitted a payment of $2,169.43, plus $8.15 for the pay-by-phone fee, to complete the April 2012 HAMP trial loan modification payment. See id. at ¶ 11. Mr. Bowyer then inquired as to whether two of Mr. and Ms. Winkler's remaining due payments could be included in the loan modification. See id. GMACM advised that Mr. and Ms. Winkler could make two payments equal to one and a half payments to cover the amounts due on the Winkler Loan for the moths of June 2012 through August 2012. See id. Moreover, on August 16, 2012, GMACM sent a letter (the "August 16 Letter") to Mr. Boyle explaining: (i) why Mr. and Mr. Winkler's HAMP trial loan modification was previously cancelled; (ii) that Mr. and Ms. Winkler's April payment was received; and (iii) that GMACM, in an effort to correct the cancellation of the HAMP trial loan modification resulting from the misapplication of the March 2012 payment, offered to Mr. and Ms. Winkler the original HAMP permanent loan modification and waived the $56.50 in property inspection fees. See id. A copy of the August 16 Letter is attached hereto as Exhibit 4.

17.     On August 20, 2012, a GMACM representative advised Mr. Bowyer that the HAMP permanent loan modification would be effective as of June 1, 2012 and that Mr. and Ms. Winkler would need to make payments on the Winkler Loan for the months of June 2012 through August 2012 to bring their account current. See id. at ¶ 12. On August 22, 2012, the HAMP permanent loan modification documents were mailed to Mr. and Ms. Winkler. See id.

18.    On September 7, 2012, a GMACM representative advised Mr. Boyle that Mr. and Ms. Winkler needed to sign the HAMP permanent loan modification documents and return such documents to GMACM no later than September 29, 2012.  See id. at ¶ 13.  Mr. Boyle was further advised that GMACM would work with Mr. and Ms. Winkler to establish a repayment plan to bring the past due payments for June 2012 through August 2012 current.  See id.  Mr. Boyle requested that GMACM refrain from assessing any fees or late charges while the parties were working to establish a repayment plan.  See id.  GMACM agreed to waive any such late charges.  See id.

19.    On September 18, 2012, Mr. Boyle inquired as to whether any funds on Mr. and Ms. Winkler's account could be used toward the past due payments.  See id. at ¶ 14.  A GMACM representative informed Mr. Boyle that any such funds have already been applied to the permanent loan modification and could not be used by Mr. and Ms. Winkler toward payments due on their account.[3]  See id.  In addition, Mr. Boyle was reminded that the signed permanent loan modification documents needed to be received by GMACM no later than September 29, 2012.  See id.  On September 20, 2012, Mr. and Ms. Winkler inquired as to what payments would be due on the Winkler Loan once the HAMP permanent loan modification became effective, and were advised that payments would be due for the months of June 2012 through September 2012.  See id.

20.    On September 26, 2012, Mr. Boyle spoke with a GMACM representative and was advised that Mr. and Ms. Winkler could apply for a new loan modification if they were

---

[3] More specifically, Mr. Boyle wanted to use any of Mr. and Ms. Winkler's funds that were still held in a suspense account toward their mortgage account.  However, the Debtors were unable to do so because any of Mr. and Ms. Winkler's funds that were held in a suspense account would have been received as part of a trial loan modification, and thus would have already been included in the terms of the permanent loan modification offered to Mr. and Ms. Winkler.  See id. at ¶ 14, n.3.

ny-1114062

unable to make payments on the Winkler Loan for the months of June 2012 through September

2012; however, Mr. and Ms. Winkler would not qualify for another HAMP loan review due to

their account having already been approved for a HAMP permanent loan modification.  See id. at

¶ 15.  Mr. Boyle inquired as to whether eighteen months of late charges[4] could be waived and

was advised that GMACM would not approve such a waiver.  See id.  On September 27, 2012,

Mr. Boyle notified GMACM that Mr. and Ms. Winkler had still not yet decided whether they

want to accept the HAMP permanent loan modification.  See id.  Mr. Boyle was reminded that

the signed permanent loan modification documents needed to be received by GMACM no later

than September 29, 2012.  See id.  On September 28, 2012, Mr. Boyle inquired as to whether a

manager could re-review Mr. and Ms. Winkler's account for a HAMP loan modification.  See id.

Mr. Boyle was advised that a HAMP loan modification would no longer be an option for Mr. and

Ms. Winkler,[5] but that Mr. and Ms. Winkler could apply for a traditional loan modification.  See

id.

      21.     On October 12, 2012, a GMACM representative advised Mr. Boyle that

Mr. and Ms. Winkler could either (i) move forward with the HAMP permanent loan modification

and GMACM would provide a twelve month repayment plan to assist Mr. and Ms. Winkler with

bringing their account current or (ii) apply for a traditional loan modification.  See id. at ¶ 16.

On October 15, 2012, Mr. Boyle advised GMACM that he would be speaking with Mr. and Ms.

---

[4] Mr. and Ms. Winkler incurred late charges when they failed to make a mortgage payment by the 16th of any given month.  See id. at ¶ 15, n.4.  GMACM received late payments from Mr. and Ms. Winkler for the following months: May and June 2008, September and October 2008, December 2008 through March 2009, May 2009, July through November 2009, April and May 2010 and July 2010 through April 2011.  See id.

[5] In general, once a borrower is approved for a HAMP loan modification and such modification is put into place, the borrower cannot obtain another HAMP loan modification in the future.  Moreover, if a borrower was approved for a HAMP loan modification but does not return the necessary paperwork, does not accept the terms of the HAMP loan modification or cancels the HAMP loan modification, then such borrower still would not be eligible for another HAMP loan modification in the future.

8

Winkler regarding their loan modification options, and on October 16, 2012, a GMACM

representative twice attempted to follow-up with Mr. Boyle, but such attempts were

unsuccessful.  See id.

      22.    On or about October 29, 2012, Mr. Boyle informed GMACM that Mr. and

Ms. Winkler decided to apply for a traditional loan modification.  See id. at ¶ 17.  Accordingly,

GMACM denied and closed-out the HAMP permanent loan modification, and (i) notified Mr.

and Ms. Winkler of the denial of the HAMP permanent loan modification and (ii) mailed to Mr.

and Ms. Winkler a financial package to be completed in connection with the requested traditional

loan modification.  See id.

      23.    On November 14, 2012, GMACM received a blank loan modification

package from Mr. and Ms. Winkler, and, on November 19, 2012, GMACM mailed to Mr. and

Ms. Winkler a missing items letter.  See id. at ¶ 18.  On November 30, 2012, Mr. Boyle spoke

with a GMACM representative and was advised of the missing items letter and the process for

obtaining a loan modification package from GMACM's website.  See id.  On December 28,

2012, another missing items letter was mailed to Mr. and Ms. Winkler, and on January 16, 2013,

GMACM mailed a loan modification denial letter to Mr. and Ms. Winkler due to not receiving

the requested missing information.  See id.  January 23, 2013, GMACM received another loan

modification package from Mr. and Ms. Winkler, and on January 25, 2013, a follow-up missing

items letter was mailed to Mr. and Ms. Winkler.  See id.

      24.    On March 4, 2013, Mr. and Ms. Winkler's attorney inquired as to whether

Mr. and Ms. Winkler could still submit the documents needed for a loan modification review,

and was advised that Mr. and Ms. Winkler could have until March 15, 2013 to submit the

documents.  See id. at ¶ 19.  On March 19, 2013, a letter was mailed to Mr. and Ms. Winkler

denying the requested loan modification due to their account previously receiving a HAMP trial

loan modification and indicating that their account would be reviewed for a traditional loan

modification.  See id.  On March 20, 2013, a traditional trial loan modification was approved.

See id.  On April 5, 2013, Mr. Boyle advised GMACM that Mr. and Ms. Winkler accepted the

trial plan and would submit the executed trial loan modification documents.  See id.

25.     On July 26, 2013, a traditional permanent loan modification was approved

and, as of that date, Mr. and Ms. Winkler's account was current.  See id. at ¶ 20.

26.     In addition to the above described correspondence, Mr. Boyle also sent

several letters to GMACM, most of which requested, inter alia, information regarding the denial

of the HAMP loan modification and other loan modification options.  See id. at ¶ 21.  GMACM

responded to Mr. Boyle's letters on the following dates: August 16, 2012; September 17, 2012;

October 12, 2012; December 3, 2012; December 17, 2012; December 27, 2012; and January 18,

2013.  See id.

27.     Based on the above information, the Debtors believe that they have no

liability with respect to the Winkler Claim because the Debtors, at all times, complied with the

appropriate guidelines and policies governing the loan modification process and acted

appropriately to correct GMACM's misapplication of Mr. and Ms. Winkler's March 2012

payment.

**B.     M. Francine Modderno (Claim No. 4866)**

28.     On November 15, 2012, Ms. Modderno filed proof of claim number 4866

(the "Modderno Claim") against Residential Funding Company, LLC ("Residential Funding") in

the amount of $720,000.00.  Ms. Modderno is a borrower under a loan evidenced by a note dated

October 20, 2003 (the "Note"), in favor of First Savings Mortgage Corporation ("First Savings"),

which is secured by a mortgage on property located at 17147 Needles Court, Leesburg, Virginia

10

20176 (the "Modderno Property").  See Supplemental Declaration at ¶ 22.  First Savings sold

Ms. Modderno's loan to Residential Funding on or about October 31, 2003, and Residential

Funding then sold the loan to ING on or about January 1, 2004.  See id.

29.    The Debtors believe that the Modderno Claim relates to the foreclosure

against the claimant.  The asserted basis for the Modderno Claim is that Residential Funding was

not legally assigned the Note.  Ms. Modderno, on October 8, 2013, filed a response to the

Objection (the "Response") [Docket No. 5317].  In the Response, Ms. Modderno asserts that (i)

the Debtors do not own the Modderno Property due to fraud and (ii) the Note bears a fraudulent

assignment.[6]  See Response at 2-3.

30.    On April 5, 2009, GMACM mailed the claimant a breach of contract letter

because the loan was owing for the March and April, 2009 payments.  See id. at ¶ 23.  On May 6,

2009, a "referral to foreclosure" letter was mailed to the claimant inform her that the account was

being referred to foreclosure because no arrangement was made to bring the account current.

See id.  On May 13, 2009, the account was referred to foreclosure because the March, 2009

through May, 2009 payments were outstanding.  See id.  However, the account did not move

forward to a foreclosure sale because a loan modification was approved on October 1, 2009,

thereby bringing the account current.  See id.  Ms. Modderno made monthly payments from

November, 2009 through November, 2010, but no other payments were received after November

16, 2010.  See id.

---

[6] In the Response, Ms. Modderno further asserts that she did not receive the Objection and only learned of the
Objection on or around October 4, 2013 when she contacted the Court regarding another matter.  See Response at 1-
2.  However, as evidenced by the Affidavit of Service [Docket No. 4958] filed by the Debtors' claims agent,
Kurtzman Carson Consultants, Ms. Modderno was served via First Class Mail with a customized notice regarding
the Objection at the address provided on the Modderno Claim.  See Affidavit of Service at Exhibit C.

31.     On December 7, 2010, the claimant sent in workout documents for a loan modification, but the account was denied a HAMP modification because the investor of the loan was not participating in HAMP.  See id. at ¶ 24.  On February 7, 2011, the claimant reapplied for a loan modification and the account was denied a HAMP modification because the investor was not participating in the HAMP program.  See id.  On February 25, 2011, a missing items letter was mailed to the claimant requesting the financial form and hardship letter, and Ms. Modderno sent additional documents on March 11 and 14, 2011.  See id.  On March 23, 2011, the account was denied a traditional modification because the net present value on the property was negative.  See id.  The account was referred to foreclosure on March 28, 2011 as the loan was owing for December, 2010 through March, 2011 payments.  See id.  As discussed in greater detail below, the foreclosure was stopped September 27, 2011 due to claimant commencing litigation. See id.

32.     Ms. Modderno, on or around September 6, 2011, filed a complaint for wrongful foreclosure in the District Court of Loudoun County.  The case was removed, by notice of removal filed on September 28, 2011, to the United States District Court for the Eastern District of Virginia (the "District Court") (the "District Court Action").  See Amended Complaint (defined below) at ¶ 1, which is attached hereto as Exhibit 5; Memorandum in Support of Motion to Dismiss (defined below) at 1, which is attached hereto as Exhibit 7.  After removal, Residential Funding and ETS of Virginia ("ETS") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and the matter was dismissed, without prejudice, on October 19, 2011, with leave to file an amended complaint by November 2, 2011.  See Memorandum in Support of Motion to Dismiss at 1-2.

33.     On November 2, 2011, Ms. Modderno filed an amended complaint (the "Amended Complaint") in the District Court, a copy of which is attached hereto as Exhibit 5.

See Amended Complaint.  According to the Amended Complaint, Ms. Modderno initiated the

lawsuit because ETS, on behalf of Residential Funding, purportedly commenced a wrongful

foreclosure sale with respect to the Modderno Property.  Ms. Modderno alleges that Residential

Funding had no lawful claim to be a holder in due course of the Note securing the Modderno

Property.  See id. at ¶ 16.  Ms. Modderno further alleged that Residential Funding, among other

defendants,[7] (i) violated various law and regulations governing fraud and mortgage servicing and

securitization of mortgages and (ii) abused the law, the courts and Ms. Modderno by committing

fraud and unfair, deceptive and unconscionable acts and practices.  See id. at ¶ 17.

34.    The Amended Complaint contained twenty-two (22) causes of action

including, without limitation, federal and Virginia Racketeer Influenced and Corrupt

Organizations Act ("RICO") violations, fraud, forgery, defamation, intentional infliction of

emotional distress, and violations of the Real Estate Settlement Procedures Act ("RESPA"), the

Truth in Lending Act ("TILA"), the Home Ownership Equity Protection Act ("HOEPA") and the

Fair Debt Collection Practices Act ("FDCPA").  See id. at ¶¶ 50-124.

35.    On November 16, 2011, certain of the Defendants, including Residential

Funding, GMACM, Ally, Homecomings, Ally Securities, Tom Marano, GMAC-RFC, ETS and

Mary Lynch, filed an amended motion to dismiss (the "Motion to Dismiss") and a Memorandum

of Law in Support of Defendants' Motion to Dismiss (the "Memorandum in Support of Motion

to Dismiss"), copies of which are attached hereto as Exhibit 6 and Exhibit 7, respectively.  By

---

[7] The Amended Complaint names the following defendants (collectively, the "Defendants"): (i) Residential
Funding; (ii) GMACM, incorrectly identified as GMAC Mortgage Group, Inc.; (iii) Ally Financial Inc. ("Ally"),
incorrectly identified as Ally Financial, Inc.; (iv) Homecomings Financial, LLC ("Homecomings"), incorrectly
identified as Homecomings Financial; (v) Ally Securities LLC ("Ally Securities"), incorrectly identified as Ally
Securities, LLC; (vi) Tom Marano; (vii) GMAC-RFC Holding Company, LLC ("GMAC-RFC"), incorrectly
identified as GMACM RFC Holding Company; (viii) ETS, incorrectly identified as Executive Trust Services of
Virginia, Inc.; (ix) Mary Lynch; (x) First Savings; (xi) Larry Pratt; and (xii) Peggy Clift.

way of the Memorandum in Support of Motion to Dismiss, the applicable Defendants asserted

that Ms. Modderno failed to state a cause of action upon which relief may be granted.  See

Memorandum in Support of Motion at 4.

36.    On December 20, 2011, the District Court entered an order (the

"Dismissal Order"), a copy of which is attached hereto as Exhibit 8, granting the Motion to

Dismiss and denying Ms. Modderno's motion for leave to amend the Amended Complaint.  See

Dismissal Order.   Specifically, the District Court explained that Ms. Modderno's "First

Amended Complaint, which includes 22 causes of action for alleged violations of various federal

and Virginia statutes and Virginia common law relating to Defendants' involvement in

foreclosure proceedings on Plaintiff's home, fails to meet the pleading standards set forth in the

Federal Rules of Civil Procedure and the United States Supreme Court decisions in Ashcroft v.

Iqbal, 129 S. Ct. 1937 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)."  Dismissal

Order at 1-2.

37.    The Debtors assert that the Modderno Claim is based on the same

allegations that were asserted in the District Court.  Accordingly, the Modderno Claim should be

disallowed and expunged because the claims upon which it is based are barred by the doctrine of

res judicata.

38.    The doctrine of res judicata precludes the same parties from litigating

claims in a subsequent suit based on the same cause of action if there has been a final judgment

on those claims.  See State Water Control Bd. v. Smithfield Foods, Inc., 542 S.E.2d 766, 769

(Va. 2001).  The doctrine applies to the District Court Action because the Modderno Claim was

filed after the District Court entered a final judgment against Ms. Modderno in the District Court

Action. Id. at 771 (affirming plea of res judicata based on prior federal litigation). Accordingly, the District Court Action is a proper basis for application of res judicata to the Modderno Claim.

39.      To establish res judicata under federal law, the proponent must establish three elements: (1) a final judgment on the merits; (2) that is between the same parties or their privies; and (3) a subsequent suit based on the same cause of action or same nucleus of operative facts. See Aliff v. Joy Mfg. Co., 914 F.2d 39, 42 (4th Cir. 1990) (citing Montana v. United States, 440 U.S. 147, 153 (1979)). The claims believed to be asserted by the Modderno Claim: (1) were decided in the District Court Action; (2) are between the same parties as in the District Court Action, or their privies; and (3) are based on the same cause of action and the same nucleus of operative facts as in the dismissed District Court Action, and based on legal theories that might have been raised in the prior federal litigation. Therefore, all claims brought by Ms. Modderno against the Debtors are barred by the doctrine of res judicata.

40.      The District Court's Dismissal Order granting the applicable Defendant's Motion to Dismiss "constitutes a [final] judgment on the merits and…triggers claim preclusive and res judicata effect." Enzo Therapeutics, Inc. v. Yeda Res. and Dev. Co., 467 F. Supp. 2d 579, 585 (E.D. Va. 2006) (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981) (dismissal under Fed. R. Civ. P. 12(b)(6) is a determination on the merits)). In federal practice, judgments are deemed to be final even while the judgment is on appeal. See Chaudhary v. Stevens, 2005 U.S. Dist. LEXIS 27447, at *14 (E.D. Va. Aug. 9, 2005), aff'd, 182 Fed. Appx. 204 (4th Cir. 2006) (citing Warwick Corp. v. Md. Dep't of Transp., 573 F. Supp. 1011, 1014 (D. Md. 1983), aff'd, 735 F.2d 1359 (4th Cir. 1984)).

41.      The second prong of the res judicata doctrine is that the "the same parties or their privies" in the case at bar must have been involved in the prior lawsuit. Aliff, 914 F.2d

at 42.  Privity is determined on a case-by-case basis by examining the relationship and interests

of the parties.  State Water Control Bd., 542 S.E.2d at 769.  The Court must determine whether

"a party's interest is so identical with another that representation by one party is representation of

the other's legal right."  Id.  Here, Ms. Modderno and Residential Funding, among other Debtors,

were parties to the prior District Court Action.  Thus, the second element of res judicata is

satisfied.

    42.    The test for deciding "whether causes of action are identical for claim

preclusion purposes is whether the claim presented in the new litigation 'arises out of the same

transaction or series of transactions as the claim resolved by the prior judgment.'"  Pittston Co. v.

United States, 199 F.3d 694, 704 (4th Cir. 1999) (citation omitted).  "Newly articulated claims

based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if

the claims could have been brought in the earlier action."  Tahoe-Sierra Pres. Council, Inc. v.

Tahoe Regional Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 2003) (quoted in Laurel Sand

& Gravel, Inc. v. Wilson, 519 F.3d 156, 161 (4th Cir. 2008)).  In considering a res judicata

argument, the Court "need not find that the plaintiff in the second suit is proceeding on the same

legal theory [she] or [her] privies advanced in the first suit."  Ohio Valley Envtl. Coalition v.

Aracoma Coal Co., 556 F.3d 177, 210 (4th Cir. 2009).  Further, "if the claim existed at the time

of the first suit and "might have been offered" in the same cause of action, then it is barred by res

judicata from being brought in a subsequent suit."  Aliff, 914 F.2d at 43-44.

    43.    The Modderno Claim is based on the same allegations that were asserted

and dismissed in the District Court Action, and such action has not been appealed by Ms.

Modderno.  See Supplemental Declaration at ¶ 25.  The allegations in the Modderno Claim are

no different than the allegations in the twenty-two count complaint, which included a count of

fraud (*see* Count IV) related to the purported fraudulent note utilized to foreclose on the Modderno Property.  Thus, because Ms. Modderno's claims were raised in the District Court Action, and are based on the same nucleus of operative facts that were raised in the Amended Complaint and in the Modderno Claim, the third element of res judicata is satisfied, thereby making the doctrine fully applicable to the Modderno Claim.

44.    Accordingly, the Debtors have no liability with respect to the Modderno Claim and the Modderno Claim should be disallowed and expunged in its entirety based upon the doctrine of res judicata.

45.    Therefore, in light of the information set forth above and as further supported by the Supplemental Declaration, the No Liability Borrower Claims to which the Responses apply should be disallowed and expunged.

## CONCLUSION

46.    WHEREFORE, the Debtors respectfully submit that the relief sought in the Objection should be granted with respect to the Claimants.

Dated:  November 13, 2013
        New York, New York

/s/  Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and*
*Debtors in Possession*

17