# **Exhibit 2**

# **Disputed Claims**

**<u>Winkler Claim # 3582</u>**

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **Residential Capital, LLC, Case No. 12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Judith A. Winkler and James C. Winkler**

Name and address where notices should be sent:

c/o Law Office of Patrick D. Boyle
222 South 9th Street, Suite 3220
Minneapolis, MN 55402

Telephone number: (612) 353-6086        email: pboyle@boylelawbiz.com

Name and address where payment should be sent (if different from above):
1845 Dunkirk Lane
Plymouth, MN 55447

Telephone number: (763) 367-0569        email: jjwinkler@q.com

1. Amount of Claim as of Date Case Filed: $ **298,682.96**

   If all or part of the claim is secured, complete item 4.
   If all or part of the claim is entitled to priority, complete item 5.
   ☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: _____
   (See instruction #2)

3. Last four digits of any number by which creditor identifies debtor: **5356**

3a. Debtor may have scheduled account as: _____ (See instruction #3a)

3b. Uniform Claim Identifier (optional): _____ (See instruction #3b)

4. **Secured Claim** (See instruction #4)
   Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
   Describe:
   Value of Property: $_____  Annual Interest Rate _____% ☐ Fixed ☐ Variable
   (when case was filed)
   Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
   if any: $_____        Basis for perfection: _____
   Amount of Secured Claim: $_____        Amount Unsecured: $_____

5. **Claim Pursuant to 11 U.S.C. § 503(b)(9):**
   Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
   $_____ (See instruction #6)

7. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

   DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

   If the documents are not available, please explain:

9. **Signature:** (See instruction #9) Check the appropriate box.
   ☐ I am the creditor.  ■ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or  ☐ I am a guarantor, surety,
   (Attach copy of power of attorney, if any.)   their authorized agent.   indorser, or other codebtor.
   (See Bankruptcy Rule 3004.)  (See Bankruptcy Rule 3005.)

   I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

   Print Name: Patrick D. Boyle
   Title: Attorney
   Company: Law Office of Patrick D. Boyle        (Signature)        10-30-12
   Address and telephone number (if different from notice address above):        (Date)
   222 South 9th Street, Suite 3220 / Minneapolis, MN 55402

   222 South 9th Street, Suite 3220 / Minneapolis, MN 55402
   Telephone number: (612) 353-6086        Email: pboyle@boylelawbiz.com

   *Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both.

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**RECEIVED**

**NOV 0 8 2012**

**KURTZMAN CARSON CONSULTANTS**

12120201211080000000000021

## AUTHORIZATION

We, Judith and James Winkler, are residents of the State of Minnesota and our mailing address is 1845 Dunkirk Lane North, Minneapolis, Minnesota, 55447. We hereby authorize Patrick Boyle, or any other attorney or paralegal at the law firm Law Office of Patrick D. Boyle, P.A., to discuss and negotiate on my behalf with respect to that certain loan I have with Bank of America, Mortgage Loan No. ▮▮▮▮▮5356. My attorney's phone number is (612) 746-2560. The property encumbered by this loan is located at 1845 Dunkirk Lane North, Minneapolis, Minnesota, 55447. Our telephone number is (763) 367-0569.

_____          _____
Judith Winkler                                James Winkler

Subscribed this _15_ day of June, 2012.

(763) 367-0569

# LAW OFFICE OF PATRICK D. BOYLE

Campbell Mithun Tower
222 S. 9th St. Suite 3220
Minneapolis, MN 55402
612.353.6086 (p)   651.344.4389 (f)
EMAIL: pboyle@boylelawbiz.com

September 28, 2012

*VIA FACSIMILE AND U.S. MAIL*

Ms. Jennifer Vance
Loan Specialist
GMAC Mortgage
3451 Hammond Ave
Waterloo, IA 50702
313-665-6189 (facsimile)

Re:   My Client: James and Judith Winkler
      Matter: *Winkler v. GMAC Mortgage Services*
      Loan No. ████5356

Dear Ms. Vance:

As you are aware, this firm represents James and Judith Winkler ("the Winklers") with respect to the above-referenced case and their mortgage with GMAC Mortgage Services ("GMAC"), referenced as Mortgage Loan No. Loan No. ████5356.

This letter is in response to the conveyances you made to this firm via telephone on September 27 and 28, 2012. I will reiterate these conveyances in writing below:

First, on September 27, 2012, you stated during a telephonic conversation that the Winklers' would not be provided a separate written contract to cover the $8,653.44 arrearage for the months of June, July, August and September, 2012, which had been orally agreed to be satisfied through the Winklers' payments of $500.00 in monthly installments in addition to their regular $2,163.36 payments over the course of eighteen (18) months.

Additionally, on September 27, 2012, you confirmed my clients' fears that if they were to sign the permanent loan modification offered without a separate agreement covering the arrearages, then they would receive a letter every month from GMAC stating that they were in arrears or in breach of contract. You then attempted to reassure me that GMAC's letters can be ignored and that the Winklers can make the $500.00 per month payments to cover the arrearage. However, in light of recent case law's interpretation of Minn. Stat. 513.33, I cannot in good conscience advise my clients to agree to a contract of which they would be in instant breach. I also cannot advise my clients to sign a document that has already been greatly modified orally.

Ms. Jennifer Vance
September 28, 2012
Page 2 of 3
Loan No. ████5356

Second, on September 27, 2012, you stated during a telephonic conversation that although the Winklers would not be subject to interest on the $8,653.44 in arrearage, they would instead continue to receive penalties / fees for the due amounts. As explained below, the permanent modification was not offered until four months after the Winklers' full and adequate completion of the Trial Period Plan ("TPP") during which GMAC categorically refused to acknowledge its mistake. Because of this glaring fact, the Winklers' should in no way be assessed any fees / penalties for the delay in the permanent loan modification due to GMAC's blatant mistakes and misrepresentations.

It is undisputed that GMAC failed to honor the Winklers' timely payments for March, 2012 and April, 2012, and thus initiated this current fiasco. Because of GMAC's mistake, the Winklers incurred many additional expenses, including my own legal fees, for which they have been forced to accommodate.

As you recall, my office initially brought GMAC's mistake to its attention on a letter sent on June 19, 2012, in which I stated that "[t]he Winklers had made their payments pursuant to the TPP in a full and timely fashion, thus the currently foreclosure proceedings are unwarranted and invalid." Subsequently, during a June 26, 2012 telephonic communications, a GMAC agent named Ally expressed that the Winklers had failed to submit a full and timely TPP payment for the month of March, 2012. This, obviously, has been proven false. On June 29, 2012 – **nearly two months ago** – my firm disputed GMAC's conclusions and went so far as to provide copies of checks demonstrating unequivocally that the Winklers had fully performed under the TPP. Rather than acknowledging its clear error based on the checks provided, GMAC instead on July 16, 2012 – two more weeks later – provided my office with a payment history that clarified **none** of the pending issues. My office sent a letter detailing the inadequacies of GMAC's response on July 23, 2012. On July 25, 2012, GMAC sent my office a letter stating that "[o]n April 4, 2012, the HAMP trial modification was denied, **as only the February 2012 payment was received.**" As you have since acknowledged, the above emphasized statement was categorically false. On July 26, 2012, my office sent a final letter demonstrating the fallacy of GMAC's position and once again including proof of all TPP payments.

On August 15, 2012, nearly two months after my firm's initial letter to GMAC and only after the exchange of more than five letters, GMAC **finally** acknowledged that it had erred with respect to the manner in which it applied the Winklers' TPP payments. In other words, it took an attorney sending multiple letters, at least two of which directly included evidence of GMAC's mistake, for GMAC to cease its misrepresentations and admit an obvious truth.

GMAC did not instruct the Winklers to self-escrow their mortgage payments because, up until August 16, 2012, GMAC did not admit to any fault for rejecting the Winklers' April, 2012 payment. Despite multiple letters and phone calls between my office and GMAC personnel during the months of June, July and August, 2012, no one from GMAC ever indicated that any payments would be due or accepted for those months. For GMAC to demand payments for June, July, August, and September 2012 – months during which the Winklers were not making monthly payments only because of GMAC's fraud – is unconscionable. My office and my

Ms. Jennifer Vance
September 28, 2012
Page 3 of 3
Loan No. ▇▇▇▇5356

clients demand that GMAC immediately relinquish its request for a lump sum payment of $8,653.44, which should be added to the principal of the permanent modification, as well as any penalties or fees associated with this arrearage.

Third, on September 28, 2012, you stated during a telephonic conversation that the Winklers would not be (re)considered for a modification under the Home Affordable Modification Program ("HAMP"). Despite my attempts to reach alternatives to an agreement that I cannot, in good faith, advise my clients to accept, GMAC has rejected every proposal, including reconsideration for a HAMP modification, even though this would easily rectify GMAC's mistakes and put the parties back at square one. I find this position unconscionable because since our discussions beginning on August 20, 2012, GMAC has emphatically rejected any proposal which would put the Winklers in a fair position to modify the loan and save their home, even though GMAC admitted to making the mistakes and misrepresentations which initiated this dilemma.

As a result of your aforementioned conveyances, the Winklers cannot sign the permanent loan modification offered and may seek redress through litigation until GMAC truly fulfills its obligations under the TPP and offers the Winklers a permanent modification under fair and equitable terms, as they are entitled.

This firm strongly suggests that GMAC offer the Winklers a permanent loan modification that does not attempt to cover up GMAC's mistakes and misrepresentations, but rather waives the payments due for June, July, August and September, 2012 or applies these payments to the principal of the Winklers' permanent loan modification. Alternatively, this firm suggests that GMAC offer a **written payment plan** for the back payments **without penalties or fees** so that the Winklers can make themselves current under more reasonable terms, i.e. $500.00 per month.

These are reasonable requests, but your current conveyances cannot be accepted based on the current status of this matter; therefore, I strongly suggest that GMAC adjust the terms of its permanent modification offer so that these parties can amicably reach an agreement. If you have any questions or concerns or would like to discuss the terms of the Winklers' permanent modification further, please feel free to contact me by 5:00 p.m., Central Time, on October 7, 2012. Otherwise, my firm will seek redress through litigation for the above mentioned matters.

Very truly yours,

Law Office of Patrick D. Boyle, P.A.

Patrick D. Boyle
Attorney at Law

Cc:   Client (via electronic mail)

# LAW OFFICE OF PATRICK D. BOYLE

Campbell Mithun Tower
222 S. 9th St. Suite 3220
Minneapolis, MN 55402
612.353.6086 (p)    651.344.4389 (f)
EMAIL: pboyle@boylelawbiz.com

October 9, 2012

*VIA FACSIMILE AND U.S. MAIL*

Ms. Jennifer Vance
Loan Specialist
GMAC Mortgage
3451 Hammond Ave
Waterloo, IA 50702
313-665-6189 (facsimile)

Re:   My Client: James and Judith Winkler
      Matter: *Winkler v. GMAC Mortgage Services*
      Loan No. ▆▆▆▆5356

Dear Ms. Vance:

As you are aware, this firm represents James and Judith Winkler ("the Winklers") with respect to the above-referenced case and their mortgage with GMAC Mortgage Services ("GMAC"), referenced as Mortgage Loan No. Loan No. ▆▆▆▆5356.

This letter is to follow up on my letter sent on September 28, 2012, where I stated that "as a result of your aforementioned conveyances, the Winklers cannot sign the permanent loan modification offered and may seek redress through litigation until GMAC truly fulfills its obligations under the TPP and offers the Winklers a permanent modification under fair and equitable terms, as they are entitled." As of this date, I have not received any response from GMAC regarding this request and would further request your attention to this matter; otherwise, I will be force to seek redress through litigation.

As I stated more thoroughly in my September 28, 2012 letter, I believe that GMAC's request for the Winklers to pay an $8,653.44 arrearage for the months of June, July, August and September, 2012, even though the Winklers had properly performed under the Trial Period Plan ("TPP") and it took an attorney sending multiple letters, at least two of which directly included evidence of GMAC's mistake, for GMAC to cease its misrepresentations and admit that this was true.

In my response to the conveyances you made to this firm via telephone on September 27 and 28, 2012, I requested that you address the three issues below:

Ms. Jennifer Vance
October 9, 2012
Page 2 of 3
Loan No. 0687015356

(1) You stated that GMAC would not agree to a separate written-agreement covering the arrearages and that my Clients would receive a letter every month from GMAC stating that they were in arrears or in breach of contract.

However, as I stated in my September 28, 2012 letter, I cannot in good conscience advise my clients to agree to a contract of which they would be in instant breach. I also cannot advise my clients to sign a document that has already been greatly modified orally. **Therefore, I request (at a minimum) that the payment plan to the Winklers' supposed arrears be formally documented in writing and agreed upon by both parties.**

(2) You stated that although the Winklers would not be subject to interest on the $8,653.44 in arrearage, they would instead continue to receive penalties / fees for the due amounts.

However, as I stated in my September 28, 2012 letter, the permanent modification was not offered until four months after the Winklers' full and adequate completion of the Trial Period Plan ("TPP") during which GMAC categorically refused to acknowledge its mistake. Because of this glaring fact, the Winklers' should in no way be assessed any fees / penalties for the delay in the permanent loan modification due to GMAC's blatant mistakes and misrepresentations. **Therefore, I request (at a minimum) that any penalties or fees associated with this arrearage be ceased if the parties can agree to the above request.**

(3) You stated during a telephonic conversation that the Winklers would not be (re)considered for a modification under the Home Affordable Modification Program ("HAMP").

However, as stated in my September 28, 2012 letter and for the reasons set forth above, tI cannot, in good faith, advise my clients to accept GMAC's proposal and GMAC has rejected every proposal, including reconsideration for a HAMP modification, even though this would easily rectify GMAC's mistakes and put the parties back at square one. I find this position unconscionable because since our discussions beginning on August 20, 2012, GMAC has emphatically rejected any proposal which would put the Winklers in a fair position to modify the loan and save their home, even though GMAC admitted to making the mistakes and misrepresentations which initiated this dilemma. **Therefore, if the parties cannot agree to the requests above, I alternatively request that GMAC reconsider the Winkers for a permanent loan modification because they continue to be excellent candidates for HAMP.**

As a result of my aforementioned requests, the Winklers cannot sign the permanent loan modification offered and may seek redress through litigation until GMAC truly fulfills its obligations under the TPP and offers the Winklers a permanent modification under fair and equitable terms, as they are entitled.

Ms. Jennifer Vance
October 9, 2012
Page 3 of 3
Loan No. ▬▬5356

I once again strongly suggest that GMAC offer the Winklers a permanent loan modification that does not attempt to cover up GMAC's mistakes and misrepresentations, but rather waives the payments due for June, July, August and September, 2012 or applies these payments to the principal of the Winklers' permanent loan modification. Alternatively, this firm suggests that GMAC offer a **written payment plan** for the back payments **without penalties or fees** so that the Winklers can make themselves current under more reasonable terms, i.e. $500.00 per month.

These are reasonable requests, but your current conveyances cannot be accepted based on the current status of this matter; therefore, I strongly suggest that GMAC adjust the terms of its permanent modification offer so that these parties can amicably reach an agreement. If you have any questions or concerns or would like to discuss the terms of the Winklers' permanent modification further, please feel free to contact me by 5:00 p.m., Central Time, on October 17, 2012. Otherwise, my firm **will seek redress through litigation** for the above mentioned matters.

          Very truly yours,

          Law Office of Patrick D. Boyle, P.A.

          Patrick D. Boyle
          Attorney at Law

Cc:    Client (via electronic mail)

## Modderno Claim # 4866

Claim #4866  Date Filed: 11/15/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **Residential Funding Company, LLC, Case No. 12-12019**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**M. Francine Modderno**

Name and address where notices should be sent:

**M. Francine Modderno**         Co-owner Claude V. Bache is deceased.
**17147 Needles Court**          M. Francine Modderno is the executor of his estate.
**Leesburg, VA 20176-7181**

Telephone number: 703-669-8687         email: fmodderno@aol.com

Name and address where payment should be sent (if different from above):
**SAME AS ABOVE**

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____ (*If known*)

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed: $ **720,000.00**
   If all or part of the claim is secured, complete item 4.
   If all or part of the claim is entitled to priority, complete item 5.
   ☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Residential Funding not legally assigned mortgage note
   (See instruction #2)

3. Last four digits of any number by which creditor identifies debtor: ___ ___ ___ ___
   3a. Debtor may have scheduled account as: _____ (See instruction #3a)
   3b. Uniform Claim Identifier (optional): _____ (See instruction #3b)

4. Secured Claim (See instruction #4)
   Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.
   Nature of property or right of setoff: ■Real Estate  ☐Motor Vehicle  ☐Other
   Describe:
   Value of Property: $ **720,000.00**   Annual Interest Rate _____% ☐Fixed ☐Variable
   (when case was filed)
   Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
   if any: $ court costs    Basis for perfection: _____
   Amount of Secured Claim: $ **720,000.00**   Amount Unsecured: $ _____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

   ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

   ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

   ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

   ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

   Amount entitled to priority:

   $ _____

   * Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
   Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
   $_____ (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #8, and the definition of "redacted".*)
   DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
   If the documents are not available, please explain:

9. Signature: (See instruction #9) Check the appropriate box.
   ■ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent.   ☐ I am a guarantor, surety, indorser, or other codebtor.
   (Attach copy of power of attorney, if any.)   (See Bankruptcy Rule 3004.)   (See Bankruptcy Rule 3005.)

   I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
   Print Name: M. Francine Modderno
   Title: _____
   Company: _____                                    *[Signature]* M Francine Modderno  11/05/2012
   Address and telephone number (if different from notice address above):     (Signature)              (Date)
   SAME AS ABOVE
   SAME AS ABOVE
   Telephone number: _____    Email: _____

**RECEIVED**
**NOV 15 2012**
**KURTZMAN CARSON CONSULTANTS**
**COURT USE ONLY**

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18*

12120191211150000000000023

APP #: 24503051
LN #: 24503051

# FIXED/ADJUSTABLE RATE NOTE
(1 Year LIBOR Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

October 20, 2003      WOODBRIDGE          Virginia
[Date]                [City]              [State]

CERTIFIED TRUE COPY

17147 NEEDLES COURT          , LEESBURG, VA 20176
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 600,000.00      (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is FIRST SAVINGS MORTGAGE CORPORATION, A VIRGINIA CORPORATION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 4.2500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
(A) Time and Place of Payments
Beginning on the first day of December 1, 2003, and on the first day of every month thereafter until the first day of November 1, 2008, I will pay only the interest on the unpaid balance of the Note. Thereafter, I will pay principal and interest by making payments every month as provided below.
I will make my monthly payments of principal and interest on the first day of each month beginning DECEMBER 1, 2008. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on November 1, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 1950 OLD GALLOWS RD, 8TH FL, VIENNA, VA 22182 or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,125.00      . This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of November 1, 2008, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One / Quarter percentage points ( 2.2500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 9.2500 % or less than 2.2500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 9.2500 %.

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of change in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note and to pay the interest then accruing at the Note rate as of the date my prepayments are applied. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. Any partial prepayment made on or before the first Change Date may reduce the amount of my monthly payments. Any partial

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
GMACM-CNS.1013.FIX(INT)/ADJ(P&I)-VA (9808)      01/99 Page 1 of 3       Initials: CB MM

prepayment made after the first Change Date may reduce the amount of my monthly payments when the amount of such payments are determined at the next Change Date. However, any such reduction is any monthly payments may be off set by an interest rate increase.

### 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require, upon such notice as required by law, payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANTS 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION (11)A ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in the Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require, upon such notice as required by law, payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in the Security Instrument. Borrower will continue to be obligated under the Note and the Security Instrument unless Lender releases Borrower in writing.

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
GMACM-CNS.1013.FIX(INT)/ADJ(P&I)-VA (9808)        01/00Page 2 of 3)        Initials: CVB MAM

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_____(Seal)
CLAUDE V. BACHE                    -Borrower

_____(Seal)
M. FRANCINE RODDERNO               -Borrower

_____(Seal)
                                   -Borrower

_____(Seal)
                                   -Borrower

*[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated    October 20, 2003
on the property located in    LOUDOUN COUNTY                                      , Virginia.

My Commission Expires: 12/31/06    _____
                                    Notary Public

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
GMACM-CNS.1013.FIX(INT)/ADJ(P&I)-VA (0800)          01/00 Page 3 of 3




COMMONWEALTH OF VIRGINIA
# COUNTY OF LOUDOUN
### OFFICE OF THE CLERK OF CIRCUIT COURT
P.O. BOX 550
LEESBURG, VIRGINIA 20178
LOCAL 703-777-0270
www.loudoun.gov/clerk

**Brenda S. Butler**
**Chief Deputy**

**Gary M. Clemens**
**Clerk**

**William L. Loy**
**Assistant Chief Deputy**

## CERTIFICATE/LETTER OF QUALIFICATION
VIRGINIA CODE §§ 6.1-70, 6.1-195.28, 6.1-208.3, 6.1-208.5, 13.1-428, 64.1-122, 64.1-128

Probate File Number: **13245**

I, the duly qualified Deputy Clerk of this Court, **CERTIFY** that on:

**AUGUST 20, 2010**

**MARSHA FRANCINE MODDERNO**

duly qualified before the Clerk, under applicable provisions of law, as:

**EXECUTOR** of the **ESTATE** of:

**CLAUDE VALENTINE BACHE,** deceased.

The appropriate bond required by Statute has been posted.

The powers of the Executor named above continue in full force and effect.

Given under my hand and the seal of this Court on **AUGUST 20, 2010**

Gary M. Clemens, Clerk

*[signature]*
Deputy Clerk