# Exhibit 3

## Second Supplemental Declaration

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- )
                                                                  )
In re:                                                            )   Case No. 12-12020 (MG)
                                                                  )
RESIDENTIAL CAPITAL, LLC, et al.,                                 )   Chapter 11
                                                                  )
                                        Debtors.                  )   Jointly Administered
                                                                  )
----------------------------------------------------------------- )

**SECOND SUPPLEMENTAL DECLARATION OF DEANNA HORST WITH RESPECT TO DEBTORS' THIRTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS – BOOKS AND RECORDS)**

Deanna Horst, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1. I am the Chief Claims Officer for Residential Capital, LLC and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since August of 2001, and have held my current position since June of 2012. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC ("GMACM") and Ally Bank in this role. In my current position, I am responsible for Claims Management and Reconciliation and Client Recovery. I am authorized to submit this second supplemental declaration (the "Second Supplemental Declaration") with respect to the *Debtors'*

ny-1114062

*Supplemental Omnibus Reply in Support of Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims - Books and Records)* (the "Supplemental Reply").[1]

2. Except as otherwise indicated, all facts set forth in this Second Supplemental Declaration are based upon my familiarity with the Debtors' books and records, information learned from my review of relevant documents and information I have received through my discussions with other members of the Debtors' management or other employees of the Debtors, and/or the Debtors' professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Supplemental Reply on that basis.

3. The Debtors have examined each of the Responses and the statements and exhibits submitted in support thereof. Upon review of the Responses, the Debtors diligently examined their books and records in order to assess the validity of the allegations made in the No Liability Borrower Claims and the Responses. For the reasons set forth below, the Debtors determined that the Claimants' allegations of liability are unsubstantiated and have no validity.

**A.    Judith A. Winkler and James C. Winkler (Claim No. 3582)**

4. Mr. and Ms. Winkler filed proof of claim number 3582 in the amount of $298,682.96 (the "Winkler Claim") in relation to their mortgage note, which secured a loan (the "Winkler Loan") that originated with GMACM on January 28, 2008. Federal Home Loan Mortgage Corporation ("Freddie Mac") is the investor for the Winkler Loan. GMACM began servicing the Winkler Loan on January 28, 2008, and on February 15, 2013, servicing of the Winkler Loan was transferred to Ocwen Loan Servicing, LLC ("Ocwen").

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

2

5. The Debtors initially believed that the Winkler Claim related to prior litigation between the parties in the District Court of Minnesota. However, upon further review, the Debtors now understand the Winkler Claim to relate to loan modification requests and alleged late and/or misapplied payments occurring after the conclusion of the litigation in the District Court of Minnesota.

6. In connection with the Winkler Claim, the Debtors reviewed Mr. and Ms. Winkler's payment history, the Debtors' internal servicing notes, as well as Mr. and Ms. Winkler's loan modification applications, loan modification denial letters, loan modification document request letters and any applicable investor guidelines. Based on such review, the Debtors verified that from April 2012 through July 2013 GMACM and Mr. and Ms. Winkler, and/or their authorized representatives, engaged in regular communication regarding loan modification requests and payment issues.

7. More specifically, on April 3, 2012, Mr. and Ms. Winkler were denied a HAMP loan modification due to GMACM's misapplication of Mr. and Ms. Winkler's March 2012 payment.[2] As a result of GMACM's error, Mr. and Ms. Winkler's April 2012 payment could not be applied toward the trial HAMP loan modification because the trial plan was not active. Ultimately, Mr. and Ms. Winkler were denied a HAMP permanent loan modification due to GMACM's misapplication of the March 2012 payment; however, GMACM took prompt and specific steps to correct the error.

---

[2] GMACM erroneously placed Mr. and Ms. Winkler's March 12, 2012 payment into a suspense account instead of applying such payment toward the trial loan modification. A suspense account refers to an account in which payments that are less than the amount of the regular monthly payment are held until such time that payments totaling the regular monthly payment have been received.

3

ny-1114062

8. On June 20, 2012, the Debtors received a new loan modification request from Mr. and Ms. Winkler; however, certain documents were missing from the information submitted to the Debtors. The Debtors informed Mr. and Ms. Winkler's attorney, Patrick Boyle, of the missing documents on June 26, 2012, and the Debtors mailed missing item letters to Mr. and Ms. Winkler on June 26, 2012 and July 28, 2012.

9. On August 9, 2012, a GMACM representative spoke with Mr. and Ms. Winkler's authorized representative, Austin Bowyer, regarding the misapplication of Mr. and Ms. Winkler's March 2012 payment and the denial of the HAMP permanent loan modification. Mr. Bowyer was advised that if Mr. and Ms. Winkler would make the April 2012 payment required to complete the HAMP trial loan modification, then Mr. and Ms. Winkler would be approved for a HAMP permanent loan modification. Mr. Bowyer was further informed that payment would remain due on the Winkler Loan for the months of June 2012 through August 2012 because the HAMP trial loan modification was only in effect through May 2012. On August 10, 2012, Mr. Bowyer inquired about certain property inspection fees that were incurred by Mr. and Ms. Winkler for the months of June 2012 through August 2012, and noted that such fees would not have been incurred had the permanent loan modification been approved. Due to the fact that the HAMP permanent loan modification was denied due to GMACM's error, GMACM agreed to waive the property inspection fees, which totaled $56.50.

10. On August 10, 2012, a GMACM representative again spoke with Mr. Bowyer, who indicated that Mr. and Ms. Winkler would submit the final trial loan modification payment that was due in April 2012 and would make the needed payments for June 2012 through August 2012.

4

11. On August 14, 2012, Mr. and Ms. Winkler submitted a payment of $2,169.43, plus $8.15 for the pay-by-phone fee, to complete the April 2012 HAMP trial loan modification payment. Mr. Bowyer then inquired as to whether two of Mr. and Ms. Winkler's remaining due payments could be included in the loan modification. GMACM advised that Mr. and Ms. Winkler could make two payments equal to one and a half payments to cover the amounts due on the Winkler Loan for the moths of June 2012 through August 2012. Moreover, on August 16, 2012, GMACM sent a letter to Mr. Boyle explaining: (i) why Mr. and Mr. Winkler's HAMP trial loan modification was previously cancelled; (ii) that Mr. and Ms. Winkler's April payment was received; and (iii) that GMACM, in an effort to correct the cancellation of the HAMP trial loan modification resulting from the misapplication of the March 2012 payment, offered to Mr. and Ms. Winkler the original HAMP permanent loan modification and waived the $56.50 in property inspection fees.

12. On August 20, 2012, a GMACM representative advised Mr. Bowyer that the HAMP permanent loan modification would be effective as of June 1, 2012 and that Mr. and Ms. Winkler would need to make payments on the Winkler Loan for the months of June 2012 through August 2012 to bring their account current. On August 22, 2012, the HAMP permanent loan modification documents were mailed to Mr. and Ms. Winkler.

13. On September 7, 2012, a GMACM representative advised Mr. Boyle that Mr. and Ms. Winkler needed to sign the HAMP permanent loan modification documents and return such documents to GMACM no later than September 29, 2012. Mr. Boyle was further advised that GMACM would work with Mr. and Ms. Winkler to establish a repayment plan to bring the past due payments for June 2012 through August 2012 current. Mr. Boyle requested

5

ny-1114062

that GMACM refrain from assessing any fees or late charges while the parties were working to establish a repayment plan. GMACM agreed to waive any such late charges.

    14. On September 18, 2012, Mr. Boyle inquired as to whether any funds on Mr. and Ms. Winkler's account could be used toward the past due payments. A GMACM representative informed Mr. Boyle that any such funds had already been applied to the permanent loan modification and could not be used by Mr. and Ms. Winkler toward payments due on their account.[3] In addition, Mr. Boyle was reminded that the signed permanent loan modification documents needed to be received by GMACM no later than September 29, 2012. On September 20, 2012, Mr. and Ms. Winkler inquired as to what payments would be due on the Winkler Loan once the HAMP permanent loan modification became effective, and were advised that payments would be due for the months of June 2012 through September 2012.

    15. On September 26, 2012, Mr. Boyle spoke with a GMACM representative and was advised that Mr. and Ms. Winkler could apply for a new loan modification if they were unable to make payments on the Winkler Loan for the months of June 2012 through September 2012; however, Mr. and Ms. Winkler would not qualify for another HAMP loan review due to their account having already been approved for a HAMP permanent loan modification. Mr. Boyle inquired as to whether eighteen months of late charges could be waived and was advised that GMACM would not approve such waiver.[4] On September 27, 2012, Mr. Boyle notified

---

[3] More specifically, Mr. Boyle wanted to use any of Mr. and Ms. Winkler's funds that were still held in a suspense account toward their mortgage account. However, the Debtors were unable to do so because any of Mr. and Ms. Winkler's funds that were held in a suspense account would have been received as part of a trial loan modification, and thus would have already been included in the terms of the permanent loan modification offered to Mr. and Ms. Winkler.

[4] Mr. and Ms. Winkler incurred late charges anytime they failed to make a mortgage payment by the 16th of any given month. GMACM received late payments from Mr. and Ms. Winkler for the following months: May and June 2008, September and October 2008, December 2008 through March 2009, May 2009, July through November 2009, April and May 2010 and July 2010 through April 2011.

6

ny-1114062

GMACM that Mr. and Ms. Winkler had still not yet decided whether they want to accept the HAMP permanent loan modification.  Mr. Boyle was reminded that the signed permanent loan modification documents needed to be received by GMACM no later than September 29, 2012.  On September 28, 2012, Mr. Boyle inquired as to whether a manager could re-review Mr. and Ms. Winkler's account for a HAMP loan modification.  Mr. Boyle was advised that a HAMP loan modification would no longer be an option for Mr. and Ms. Winkler, but that Mr. and Ms. Winkler could apply for a traditional loan modification.

16. On October 12, 2012, a GMACM representative advised Mr. Boyle that Mr. and Ms. Winkler could either (i) move forward with the HAMP permanent loan modification and GMACM would provide a twelve month repayment plan to assist Mr. and Ms. Winkler with bringing their account current or (ii) apply for a traditional loan modification.  On October 15, 2012, Mr. Boyle advised GMACM that he would be speaking with Mr. and Ms. Winkler regarding their loan modification options, and on October 16, 2012, a GMACM representative twice attempted to follow-up with Mr. Boyle, but such attempts were unsuccessful.

17. On or about October 29, 2012, Mr. Boyle informed GMACM that Mr. and Ms. Winkler decided to apply for a traditional loan modification.  Accordingly, GMACM denied and closed-out the HAMP permanent loan modification, and (i) notified Mr. and Ms. Winkler of the denial of the HAMP permanent loan modification and (ii) mailed to Mr. and Ms. Winkler a financial package to be completed in connection with the requested traditional loan modification.

18. On November 14, 2012, GMACM received a blank loan modification package from Mr. and Ms. Winkler, and, on November 19, 2012, GMACM mailed to Mr. and Ms. Winkler a missing items letter.  On November 30, 2012, Mr. Boyle spoke with a GMACM representative and was advised of the missing items letter and the process for obtaining a loan

modification package from GMACM's website. On December 28, 2012, another missing items letter was mailed to Mr. and Ms. Winkler, and on January 16, 2013, GMACM mailed a loan modification denial letter to Mr. and Ms. Winkler due to not receiving the requested missing information. January 23, 2013, GMACM received another loan modification package from Mr. and Ms. Winkler, and on January 25, 2013, a follow-up missing items letter was mailed to Mr. and Ms. Winkler.

19. On March 4, 2013, Mr. and Ms. Winkler's attorney inquired as to whether Mr. and Ms. Winkler could still submit the documents needed for a loan modification review, and was advised that Mr. and Ms. Winkler could have until March 15, 2013 to submit the documents. On March 19, 2013, a letter was mailed to Mr. and Ms. Winkler denying the requested loan modification due to their account previously receiving a HAMP trial loan modification and indicating that their account would be reviewed for a traditional loan modification. On March 20, 2013, a traditional trial loan modification was approved. On April 5, 2013, Mr. Boyle advised that Mr. and Ms. Winkler accepted the trial plan and would submit the executed trial loan modification documents.

20. On July 26, 2013, a traditional permanent loan modification was approved and, as of that date, Mr. and Ms. Winkler's account was current.

21. In addition to the above described correspondence, Mr. Boyle also sent several letters to GMACM, most of which requested, inter alia, information regarding the denial of the HAMP loan modification and other loan modification options. GMACM responded to Mr. Boyle's letters on the following dates: August 16, 2012; September 17, 2012; October 12, 2012; December 3, 2012; December 17, 2012; December 27, 2012; and January 18, 2013.

8

ny-1114062

B.   **M. Francine Modderno (Claim No. 4866)**

22.   On November 15, 2012, Ms. Modderno filed proof of claim number 4866 (the "Modderno Claim") against Residential Funding Company, LLC ("Residential Funding") in in the amount of $720,000.00. Ms. Modderno is a borrower under a loan evidenced by a note dated October 20, 2003 (the "Note"), in favor of First Savings Mortgage Corporation ("First Savings"), which is secured by a mortgage on property located at 17147 Needles Court, Leesburg, Virginia 20176 (the "Modderno Property"). First Savings sold Ms. Modderno's loan to Residential Funding on or about October 31, 2003, and Residential Funding then sold the loan to ING on or about January 1, 2004.

23.   On April 5, 2009, GMACM mailed the claimant a breach of contract letter because the loan was owing for the March and April, 2009 payments. On May 6, 2009, a "referral to foreclosure" letter was mailed to the claimant to inform her that the account was being referred to foreclosure because no arrangement was made to bring the account current. On May 13, 2009, the account was referred to foreclosure because the March, 2009 through May, 2009 payments were outstanding. However, the account did not move forward to a foreclosure sale because a loan modification was approved on October 1, 2009, thereby bringing the account current. Ms. Modderno made monthly payments from November, 2009 through November, 2010, but no other payments were received after November 16, 2010.

24.   On December 7, 2010, the claimant sent in workout documents for a loan modification, but the account was denied a HAMP modification because the investor of the loan was not participating in HAMP. On February 7, 2011, the claimant reapplied for a loan modification and the account was denied a HAMP modification because the investor was not participating in the HAMP program. On February 25, 2011, a missing items letter was mailed to

9

the claimant requesting the financial form and hardship letter, and Ms. Modderno sent additional documents on March 11 and 14, 2011.  On March 23, 2011, the account was denied a traditional modification because the net present value on the property was negative.  The account was referred to foreclosure on March 28, 2011 as the loan was owing for December, 2010 through March, 2011 payments.  The foreclosure was stopped September 27, 2011 due to claimant commencing litigation.

25. The Modderno Claim is based on issues that have already been judicially determined and dismissed by the United States District Court for the Eastern District of Virginia, and such dismissal has not been appealed by Ms. Modderno.

Dated:  November 13, 2013

/s/ Deanna Horst
Deanna Horst
Chief Claims Officer for
Residential Capital, LLC

10

ny-1114062