# Exhibit 3

**Supplemental Horst Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**SUPPLEMENTAL DECLARATION OF DEANNA HORST IN SUPPORT OF DEBTORS' SECOND OMNIBUS REPLY IN SUPPORT OF DEBTORS' TWENTY-SIXTH OMNIBUS CLAIM OBJECTION (BORROWER CLAIMS WITH INSUFFICIENT DOCUMENTATION)**

Deanna Horst, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.  I am the Chief Claims Officer for Residential Capital, LLC and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since August of 2001. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role. In my current position, I am responsible for Claims Management and Reconciliation and Client Recovery.

2.  I am authorized to submit this supplemental declaration (the "Supplemental Declaration") in support of the *Debtors' Second Omnibus Reply in Support of*

*Debtors' Twenty-Sixth Omnibus Claim Objection (Borrower Claims with Insufficient Documentation)* (the "Reply").[1]

3. Except as otherwise indicated, all facts set forth in this Supplemental Declaration are based upon my familiarity with the Debtors' books and records, information learned from my review of relevant documents, and information I have received through my discussions with other members of the Debtors' management or other employees of the Debtors, and/or the Debtors' professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Reply on that basis.

## I. CLAIM OF MARY LYNN WEBER

4. As stated in the Reply, proof of claim no. 3474 of Mary Lynn Weber (the "Weber Claim") asserts a $99,619.60 unsecured claim against GMAC Mortgage, LLC ("GMACM"), the stated basis of which is "Mortgage Note – Debtor improperly applied payments." In the Response, the Claimant alleges that GMACM and Residential Funding Company, LLC ("RFC") unlawfully accepted loan payments from the Claimant that should have gone to the loan's true owner, RFM SI Series 2007-SA2 Trust. The Claimant asserts that she should be reimbursed all of the payments she made under the loan because the payments went to the wrong entity. In addition, the Claimant alleges that GMACM and RFC were never properly assigned the loan and as a result did not have the authority to foreclose on the property. Finally, the Claimant alleges that the Debtor failed to comply with Nevada's foreclosure mediation program rules in foreclosing on her property, which convinced the state-appointed mediator to cancel the foreclosure and recommend sanctions against the debtor.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

2

ny-1117209

5. The Debtors' books and records reveal that the Claimant's allegations are meritless. Ohio Savings originated the loan on January 22, 2007 and shortly thereafter sold the loan to GMAC Bank. *See* Note, Exhibit A to Declaration, at 7 of 8. GMAC Bank subsequently sold the loan to RFC. *See* Note, at 8 of 8. GMACM serviced the loan on behalf of both GMAC Bank and RFC under separate servicing agreements until the servicing of the loan was transferred to GreenTree on February 1, 2013. At all times that GMACM was the servicer of the Claimant's loan, the Debtor had the right to collect payments and otherwise enforce the terms of the note and deed of trust. The Claimant's assertion that a trust is the true owner of the loan and the only one entitled to collect payments is mistaken.

6. Additionally, the Nevada foreclosure process was only stopped on September 10, 2012, due to the notice of default no longer being valid. The foreclosure process was restarted just over two weeks later on September 27, 2012, once an updated notice of default was filed. The loan was still in active foreclosure at the time of the transfer to 21st Mortgage Corporation on October 12, 2013.

## II.    CLAIM OF THE ESTATE OF FELICIA VICTORIA MITCHELL

7. As stated in the Reply, proof of claim no. 5724 of the Estate of Felicia Victoria Mitchell (the "Mitchell Claim") asserts a $62,313.77 unsecured claim against GMACM, the stated basis of which is "Foreclosure Action Costs, Fees, Expenses, Damages; Unapplied/Misapplied Payments; Retained Escrow Surplus; Real Estate Tax, etc." The proof of claim attaches a court order appointing Karen Anne Mitchell-Smith as temporary administrator of the Claimant and a purported itemization of damages, including fees charged in connection with foreclosure on the Claimants' property, escrow funds, insurance payments, real estate taxes, and funds received by the Debtor but not credited to the Claimant's account.

3

ny-1117209

8. The Debtors' books and records provide no support for any of these allegations or purported damages. The Claimant was properly charged appropriate foreclosure fees, insurance payments, and real estate taxes in connection with the Claimant's mortgage and the Claimant had no escrow surplus. The Debtors did return at least one payment made by the Claimant in the amount of $2968.57 on December 30, 2010 only because the Claimant's mortgage was in default and the payment was not enough to reinstate the loan.

### III. CONCLUSION

9. Accordingly, based upon this review of Debtors' books and records, and for the reasons set forth in the Reply, the Weber Claim and the Mitchell Claim should be disallowed and expunged.

Dated: November 13, 2013

/s/ Deanna Horst
Deanna Horst
Chief Claims Officer for Residential Capital, LLC

# Exhibit A

**The Note**

ny-1117209

*Wells LOC*
*10920660*
*7442574562*

*T223*

GMAC#: 7442574562
COL ID#: 10920660

## ALLONGE

This endorsement is a permanent part of the Note in the amount of $528,000.00.

NOTE DATED:       JANUARY 22, 2007
BORROWER:         MARY L WEBER
ORIGINAL LENDER:  OHIO SAVINGS BANK
PROPERTY:         84 CHAPMAN HEIGHTS
                  LAS VEGAS, NV 89138

PAY TO THE ORDER OF: RESIDENTIAL FUNDING COMPANY LLC FKA RESIDENTIAL FUNDING CORPORATION

WITHOUT RECOURSE

ALLY BANK FKA GMAC BANK

*/s/ Cathy Kuhrt*
CATHY KUHRT
ASSISTANT SECRETARY

# INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
## (One-Year LIBOR Index (As Published In *The Wall Street Journal*) Rate Caps – 10 Year Interest Only Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

January 22, 2007        LAS VEGAS        Nevada
[Date]                  [City]           [State]

84 CHAPMAN HEIGHTS, LAS VEGAS, NV 89138
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $528,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is   OHIO SAVINGS BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.375    %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**

   (A)    **Time and Place of Payments**

I will make a payment on the first day of every month, beginning on    March, 2007    . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

LOAN NUMBER: 2268723                            MIN: 100162500022687231

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX—
10 Year Interest Only Period—Single Family—Fannie Mae Uniform Instrument              Form 3535 06/05 (rev. 9/06)
—THE COMPLIANCE SOURCE, INC.—                Page 1 of 6              20054MU 02/05 Rev. 09/06
www.compliancesource.com                                              ©2006, The Compliance Source, Inc.

2268723

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on    February 1, 2037    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   OHIO SAVINGS BANK, P O BOX 94674, CLEVELAND, OH 44101-4674

or at a different place if required by the Note Holder.

(B)    **Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 2,805.00    until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

(C)    **Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4.    **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A)    **Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of    February, 2012    , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B)    **The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C)    **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding    two and 500/1000ths    percentage points (    2.500   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

LOAN NUMBER: 2268723

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX—
10 Year Interest Only Period—Single Family—Fannie Mae Uniform Instrument
—THE COMPLIANCE SOURCE, INC.—                                Page 2 of 6                         Form 3535 06/05 (rev. 9/06)
www.compliancesource.com                                                                          20054MU 02/05 Rev. 09/06
                                                                                                  ©2006, The Compliance Source, Inc.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

(D)   **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.375 % or less than 2.500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.375 %.

(E)   **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)   **Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G)   **Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

5.   **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

LOAN NUMBER: 2268723
MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX—
10 Year Interest Only Period—Single Family—Fannie Mae Uniform Instrument
—THE COMPLIANCE SOURCE, INC.—    Page 3 of 6    Form 3535 06/05 (rev. 9/06)
www.compliancesource.com    20054MU 02/05 Rev. 09/06
©2006, The Compliance Source, Inc.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

LOAN NUMBER: 2268723

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX—
10 Year Interest Only Period—Single Family—Fannie Mae Uniform Instrument
—THE COMPLIANCE SOURCE, INC.—    Page 4 of 6    Form 3535 06/05 (rev. 9/06)
www.compliancesource.com    20054MU 02/05 Rev. 09/06
©2006, The Compliance Source, Inc.

9.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.   **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)   Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)   When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but

LOAN NUMBER: 2268723
MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX—
10 Year Interest Only Period—Single Family—Fannie Mae Uniform Instrument
—THE COMPLIANCE SOURCE, INC.—                    Page 5 of 6                    Form 3535 06/05 (rev. 9/06)
www.compliancesource.com                                                         20054MU 02/05 Rev. 09/06
                                                                                 ©2006, The Compliance Source, Inc.

not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  _____ (Seal)
MARY LYNN WEBER            -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                            -Borrower                              -Borrower

[Sign Original Only]

Cleveland, Ohio _____ 20 ___
PAY TO THE ORDER OF
GMAC Bank
Without Recourse
OHIO SAVINGS BANK
fka OHIO SAVINGS BANK, F.S.B.

BY: 
Amy Hull
Authorized Agent

LOAN NUMBER: 2268723

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE—ONE-YEAR LIBOR INDEX—
10 Year Interest Only Period—Single Family—Fannie Mae Uniform Instrument
—THE COMPLIANCE SOURCE, INC.—                    Page 6 of 6        Form 3535 06/05 (rev. 9/06)
www.compliancesource.com                                             10054MU 02/05 Rev. 09/06
                                                                     ©2006, The Compliance Source, Inc.

PAY TO THE ORDER OF
WITHOUT RECOURSE
Residential Funding Company, LLC
By: Judy Faber
Judy Faber, Vice President