CHAPTER 11 CASE # 12-12020
CLAIM # 4948
RESIDENTIAL FUNDING
V.
M. FRANCINE ROGERS

Case 12-12020-mg  Doc 5757-2  Filed 11/14/13  Entered 11/14/13 15:57:57  Exhibit A & B
APN # 24503051           Pg 2 of 6                MIN 100748-0024503051-7
LN # 24503051

Exhibit A
PAGE 1

# FIXED/ADJUSTABLE RATE NOTE
(1 Year LIBOR Index - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

October 20, 2003          WOODBRIDGE                    ,  Virginia
[Date]                    [City]                          [State]

17147 NEEDLES COURT                    , LEESBURG, VA 20176
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 500,000.00  (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  FIRST SAVINGS MORTGAGE CORPORATION,
A VIRGINIA CORPORATION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  4.2500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments
Beginning on the first day of  December 1 , 2003, and on the first day of every month thereafter until the first day of November 1, 2008, I will pay only the interest on the unpaid balance of the Note. Thereafter, I will pay principal and interest by making payments every month as provided below.
I will make my monthly payments of principal and interest on the first day of each month beginning DECEMBER 1, 2008 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on  November 1 , 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  1950 OLD GALLOWS RD, 8TH FL, VIENNA, VA 22182
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $  2,125.00         . This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of  November 1, 2008 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  Two and One / Quarter  percentage points ( 2.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than   9.2500 % or less than  2.500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than   9.2500 %.

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of change in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

### 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will ___ my prepayments to reduce the amount of principal that I owe under this Note and to pay the interest then accruing at the Note rate as of the date my prepayments are applied. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. Any partial prepayment made on or before the first Change Date may reduce the amount of my monthly payments. Any partial

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
GMACM-CNS.1013.FIX(INT)/ADJ(P&I)-VA (9808)        01/0 Page 1 of 3              Initials: CVB MFM

prepayment made after the first Change Date may reduce the amount of my monthly payments when the amount of such payments are determined at the next Change Date. However, any such reduction in my monthly payments may be off set by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require, upon such notice as required by law, payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANTS 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION (11)A ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in the Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require, upon such notice as required by law, payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in the Security Instrument. Borrower will continue to be obligated under the Note and the Security Instrument unless Lender releases Borrower in writing.

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
GMACM-CNS.1013.FIX(INT)/ADJ(P&I)-VA (9808)        01/04 Page 2 of 3                Initials: CVB MAM

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE YOU SIGN IT.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____*Claude V. Bache*_____ (Seal)
CLAUDE V. BACHE                 -Borrower

_____*M. Francine Modderno*_____ (Seal)
M. FRANCINE MODDERNO            -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

[Sign Original Only]

This is to certify that this is the Note described in and secured by a Deed of Trust dated   October 20, 2003
on the property located in   LOUDOUN COUNTY                                          , Virginia.

My Commission Expires: 12/31/06        _____
                                       Notary Public



PAY TO THE ORDER OF
WITHOUT RECOURSE
Residential Funding Corporation

Judy Faber, Vice President

WITHOUT RECOURSE
PAY TO THE ORDER OF RESIDENTIAL FUNDING CORPORATION
FIRST SAVINGS MORTGAGE CORPORATION
BY PEGGY CLIFT
VICE PRESIDENT

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
GMACM-CNS.1013.FIX(INT)/ADJ(P&I)-VA (9868)           01(Page 3 of 3)

CLAIM NO. 4866
RESIDENTIAL FUNDING
DEBTORS, V. M. FRANCINE MODDERN
EXIBIT B

# RIKARD **RM** MOSES

**Rikard & Moses, LLC**
Attorneys and Counselors at Law

ROBERT G. RIKARD
rgr@rmlawsc.com

MARION M. MOSES
mmoses@rmlawsc.com

ALLYSON M. CARBAUGH
acarbaugh@rmlawsc.com

BRIAN DeQUINCEY NEWMAN
bnewman@rmlawsc.com

1803 Hampton Street
Columbia, SC 29201

Post Office Box 5640
Columbia, SC 29250

tel: 803.978.6111
fax: 803.978.6112
web: rmlawsc.com

September 22, 2010

**VIA FACSIMILE (576.1865) AND U.S MAIL**
The Honorable Joseph M. Strickland
Richland County Master In Equity
Post Office Box 192
Columbia, South Carolina 29202

RE: **Deutsche Bank Trust Company Americas as Trustee for RALI 2004QA6 v. Robert M. LaFitte, Elizabeth Bowen LaFitte, USAA Federal Savings Bank, Gregg Park Homeowners Association
Civil Action Number: 2010-CP-40-0983**

Dear Judge Strickland,

Enclosed please find an article in the Washington Post that appeared in today's paper. I have forwarded this to as a follow-up to our Motion to Reconsider the Continuance of this matter because the details outlined in the article are almost identical to the concerns that we raised in our Motions in this case. Specifically, the documents that are being created to assist in foreclosures, such as LaFitte, are believed to be fraudulent and contrary to the laws of judicial foreclosure states.

As you can see from the article, Ally Financial formerly known as GMAC Mortgage has suspended foreclosures in 23 judicial foreclosure states this week, including South Carolina. As stated in our Motion to Reconsider yesterday, GMAC was the servicer on the Lafitte loan prior to the filing of the foreclosure.

As you can see from the article, Jeffrey Stephan, the head of Ally's/GMAC's foreclosure document processing team, has testified that he did not insure that judicial proceedings were legally justified and that the information contained within them was accurate.

Page | 1

This is applicable to our case because the Plaintiff in this matter has submitted an Affidavit by an individual named John Kerr with the title of "Limited Signing Officer" for the Plaintiff in this case. I have attached his Affidavit to this letter. You can see that the Affidavit originates from Fort Washington, Pennsylvania.

We have information to believe that John Kerr works in the same office that Mr. Jeffrey Stephan works in at Ally/GMAC as Mr. Stephan's office is in that area of Pennsylvania and through depositions and documents in other cases, we believe that Mr. Kerr is a part of a document execution team not only for the Plaintiff but for other foreclosure Plaintiffs around the country.

What we have learned through the investigation of this case and others is that these documents preparers, such as Mr. Kerr, execute documents prepared by others without any firsthand knowledge of the facts contained within his affidavit. As a result of the revelation that these are sham affidavits GMAC has ordered foreclosures halted in 23 states just this week.

That is why discovery in this case is so crucial and why Summary Judgment should not be heard until we have had the opportunity to do discovery.

As you will recall, I have asked to take the deposition of Ms. Judy Faber in this case. Ms. Faber has testified previously in a deposition that she is "vice president and director of residential funding corporation or residential funding company, LLC and GMAC Mortgage Company, LLC." As you will recall that Ms. Faber "signed" the only document in this case that purports to transfer title to the Plaintiff in this matter. Her "signature" is not a signature at all, but rather a stamp.

I have another allonge that Ms. Faber "stamped" in another case in Alabama for a completely different Plaintiff when an allonge was needed after title for foreclosure had been challenged. Upon information and belief, Judy Faber has instructed document custodian's in thousands of foreclosure cases to apply her stamped endorsement bearing her name after foreclosure was commenced to an allonge and after a consumer had challenged the chain of title in this case. Upon information and belief, Ms. Faber and her document custodian team at facilities described in the Washington Post article attached to this letter have fabricated and changed the title in thousands of foreclosure cases.

Ms. Faber previously testified in a deposition in another case that there is a stamp such as the one in this case that bears her endorsement and has been in use since 1999 in foreclosure cases and she has testified that she instructs records custodians to endorse notes and/or allonges in foreclosure cases when needed.

I want the Court to understand that we are not requesting a continuance to delay this matter, we are requesting a continuance based on the information we have gathered and now documented and reported in the Washington Post that companies such as the Plaintiff are committing serious misconduct related to the way that they

Page | 2

foreclose on homes in South Carolina and discovery needs to be conducted to develop the record in this case.

Further, based on the moratorium of foreclosures in judicial states including South Carolina, we believe it is inappropriate to continue the foreclosure proceedings. I have attached the GMAC memo instructing all GMAC agents to cease activity in South Carolina. This is a confidential memo that was leaked to the press and was never meant to be seen by the public.

Therefore, based on our Motion to Reconsider yesterday and the Washington Post article attached hereto and the issues raised therein, I would request an immediate telephone status conference in this case.

Sincerely,

Robert G. Rikard

RGR/bjt
Enclosure(s)
Cc:   Robert M. Lafitte (via U.S. Mail)
       Gregg Park Homeowners Association (via U.S. Mail)
       Elizabeth Polk, Esquire (via fax, 252.3346 and U.S. Mail)
       John Hearn, Esquire (via fax, 343.7013 and U.S. Mail)