**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

[PLEASE SEE ATTACHED]


**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

LEANETHA DARBY, an individual

</td><td>

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ORIGINAL FILED**
Northwest District

MAR 2 0 2013

**LOS ANGELES
SUPERIOR COURT**

</td></tr>
</table>

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

<table>
<tr><td>

The name and address of the court is:
*(El nombre y dirección de la corte es):*   LOS ANGELES - VAN NUYS

6230 Sylmar Ave.
Van Nuys, CA 91401

</td><td>

CASE NUMBER:
*(Número del Caso):*   LC100069

</td></tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Yelena Gurevich, Consumer Action Law Group, 450 N. Brand Blvd. #600, Glendale, CA 91203

<table>
<tr><td>

DATE: 03/20/2013
*(Fecha)*   MAR 2 0 2013   JOHN A. CLARKE

</td><td>Clerk, by
*(Secretario)*   M. LERMA</td><td>, Deputy
*(Adjunto)*</td></tr>
</table>

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:

3. [ ] on behalf of *(specify)*:

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**SUM-200(A)**

| SHORT TITLE:<br>DARBY v. GMAC MORTGAGE, LLC | CASE NUMBER:<br>LC100069 |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION; EXECUTIVE TRUSTEE SERVICES, INC.; and DOES 1 through 50, inclusive,

Page __1__ of __1__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

**CM-010**

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Yelena Gurevich (SBN 269487)<br>Consumer Action Law Group, P.C.<br>450 N. Brand Blvd., Ste. 600<br>Glendale, CA 91203<br>TELEPHONE NO.: 818-254-8413    FAX NO. (Name): 866-936-6916<br>ATTORNEY FOR (Name): PLAINTIFF | **ORIGINAL FILED**<br>**Northwest District**<br><br>MAR 20 2013<br><br>**LOS ANGELES**<br>**SUPERIOR COURT** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 6230 Sylmar Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: Van Nuys, CA 91401
BRANCH NAME:

CASE NAME:
Leanetha Darby  v.  GMAC et. al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>LC100069 |
|---|---|---|---|---|
| ✓ Unlimited<br>(Amount demanded exceeds $25,000) | Limited<br>(Amount demanded is $25,000 or less) | Counter    Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [✓] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action (specify): SIX (6)
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 03/20/2013

YELENA GUREVICH
(TYPE OR PRINT NAME)                    ▶                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

| SHORT TITLE: DARBY v. GMAC MORTGAGE, LLC | CASE NUMBER | LC100069 |
|---|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES    CLASS ACTION? ☐ YES  LIMITED CASE? ☐ YES  TIME ESTIMATED FOR TRIAL 4 ___  ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.0
Page 1 of 4

| SHORT TITLE: | CASE NUMBER |
| --- | --- |
| DARBY v. GMAC MORTGAGE, LLC | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- | --- |
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☑ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: DARBY v. GMAC MORTGAGE, LLC | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

| SHORT TITLE: DARBY v. GMAC MORTGAGE, LLC | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON:  Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☒2. ☐3. ☐4. ☐5. ☒6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 7700 Oso Ave. |
|---|---|

| CITY: Winnetka | STATE: CA | ZIP CODE: 91306 |
|---|---|---|

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___VAN NUYS___ courthouse in the ___NORTHWEST___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: __03/20/2013__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4

1   YELENA GUREVICH, SBN 269487
    lena@calgroup.org
2   LAUREN RODE, 281803
    lauren@calgroup.org
3   CONSUMER ACTION LAW GROUP, PC
    450 N. Brand Blvd., Ste. 600
4   Glendale, CA 91203
5   Tel. (818) 254-8413
    Fax. (866) 936-6916
6

7   Attorneys for Plaintiffs,
    LEANETHA DARBY
8

ORIGINAL FILED
Northwest District

MAR 2 0 2013

LOS ANGELES
SUPERIOR COURT

9               SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10                   FOR THE COUNTY OF LOS ANGELES

11  LEANETHA DARBY, an individual;        )  CASE NO:
12                                        )            LC100069
                                          )
13              Plaintiff,                )  COMPLAINT
                                          )
14         v.                             )
                                          )  1.  FRAUDULENT CONCEALMENT
15  GMAC MORTGAGE, LLC F/K/A GMAC         )  2.  INTENTIONAL
    MORTGAGE CORPORATION; EXECUTIVE       )      MISREPRESENTATION
16  TRUSTEE SERVICES, INC.; and DOES 1    )  3.  NEGLIGENT
17  through 50, inclusive,                )      MISREPRESENTATION
                                          )  4.  VIOLATION OF THE FAIR DEBT
18              Defendants.               )      COLLECTION PRACTICES ACT
                                          )      15 U.S.C § 1692(E)
19                                        )  5.  VIOLATION OF THE
                                          )      ROSENTHAL FAIR DEBT
20                                        )      COLLECTION PRACTICES ACT §
                                          )      1812.700(A)
21                                        )  6.  NEGLIGENCE
                                          )
22                                        )
                                          )  DEMAND FOR JURY TRIAL
23                                        )
                                          )
24  _____ )

25

26

27

28

                              -1-

                           COMPLAINT

COME NOW the Plaintiff, LEANETHA DARBY, complaining of Defendants GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION; EXECUTIVE TRUSTEE SERVICES, INC.; and DOES 1 through 50, inclusive and each of them, and allege as follows:

## I.    PARTIES

Plaintiff LEANETHA DARBY (hereinafter "Plaintiff", "Leah Darby"), as an individual, alleges:

1. At all relevant times herein, Plaintiff was residing in the county of Los Angeles, State of California.

2. Plaintiff is informed and believes that Defendant GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION (herein, "GMAC"), was and is a corporation, was the holder of the mortgage of Plaintiff's real property and primary residence, commonly known as 7700 Oso Ave, Winnetka, CA 91306 (herein, "Property"), and at all relevant times was doing business in the State of California.

3. Plaintiff is informed and believes that Defendant EXECUTIVE TRUSTEE SERVICES, INC. (herein, "ETS"), was and is a corporation, was the foreclosure trustee of the Property, and at all relevant times was doing business in the State of California.

4. The true names or capacities, whether individual, corporate, associate or otherwise of Defendants named herein as Does 1 through 50, inclusive, are unknown to Plaintiff who therefore sues Defendants by such fictitious names, and Plaintiff will amend this complaint to show their true names and capacities when the same has been ascertained.

5. At all times relevant herein, each of the Doe Defendants was the agent, servant, representative and/or employee of each of the remaining Defendants and was at all times acting within the course and scope of such agency and/or employment, or was in some way the cause of Plaintiff's damages.

## II.    FACTS COMMON TO ALL CAUSES OF ACTION

6. Plaintiff was the owner of the property located at 7700 Oso Ave, Winnetka, CA 91306.

7. On or about 2002, for valuable consideration, Plaintiff, as borrower, took out a loan in the amount of $330,000 from GMAC towards the purchase of her home (i.e., the Property)

-2-

COMPLAINT

8. The original interest rate was 6.5% fixed for 30 years and the original monthly mortgage payments were approximately $2,400. The loan was taken out by Plaintiff and Plaintiff's husband at the time.

9. Plaintiff was able to make her payments on time and in full for the ensuing eight or so years.

10. On or about October, 2010, due to Plaintiff having suffered certain financial hardships, GMAC invited Plaintiff to submit a loan modification application.

11. For the following five months, GMAC continued to request an abundance of documents from Plaintiff- keeping Plaintiff in what was essentially modification limbo. Meanwhile, with each passing month GMAC prolonged the review process, GMAC was able to assess late fees and penalties, interest and arrears on Plaintiff's loan.

12. On March 1, 2011, while Plaintiff was still fervently working with GMAC to modify the terms of her loan, GMAC caused to be recorded against Plaintiff a Notice of Default.

13. Meanwhile, despite GMAC instituting foreclosure proceedings against Plaintiff, GMAC was still very much working with Plaintiff to qualify her for a loan modification. GMAC continued requesting documents, which Plaintiff continued to send.

14. On June 3, 2011, in the midst of Plaintiff working with GMAC to modify the terms of her loan, GMAC caused to be recorded against Plaintiff a Notice of Sale. *Exhibit A—Notice of Sale.*

15. Shortly thereafter, Plaintiff received a notice from ETS regarding an attempt to collect a debt. **The notice stated that Plaintiff was in default under her loan, and needed to pay $24,547.59 in order to bring her loan current.** *Exhibit B – Letter from ETS*

16. On or about June 15, 2011, GMAC sent Plaintiff a letter informing Plaintiff that she was still in loan modification review, despite the Notice of Sale having been recorded only two weeks prior.

17. On June 17, 2011, Plaintiff drew a certified cashier's check from Chase Bank in the total debt amount of $24,547.59, as instructed by ETS's debt collection letter. The check was made payable to JP MORGAN CHASE/ GMAC as per GMAC's instructions. *Exhibit C – Cashier's Check*

COMPLAINT

18. On that same day, June 17, 2011, Plaintiff called GMAC and spoke to a supervisor named Brandon, informing GMAC as a courtesy that she had sent in the complete debt amount to GMAC. *Exhibit D – Cashier's Check fax to Brandon*

19. On or about June 18, 2011, Plaintiff called GMAC again in an abundance of caution in making sure her payment to make her loan current and to halt the foreclosure sale had gone through successfully. Another supervisor named Joe at GMAC informed Plaintiff that GMAC had received the check.

20. Also in June 2011, Plaintiff faxed a copy to a GMAC supervisor named Ade the receipt of the payment. Again, this was done in an abundance of caution due to the precarious situation GMAC had put Plaintiff in by surreptitiously instituting foreclosure proceedings against her despite telling her that she was in modification review. *Exhibit E – Cashier's Check fax to Ade*

21. Despite Plaintiff's meticulous courtesy notices to GMAC and despite GMAC's affirmation of receiving the cashier's check, Plaintiff's home was sold on August 31, 2011 for $335,358.00 to GMAC (GMAC purchased Plaintiff's Home).

22. Plaintiff was baffled. Plaintiff was under the impression that the cashier's check to pay off her debt and GMAC's confirmation of receiving the check had halted the foreclosure sale of her home, as the ETS letter unambiguously stated that Plaintiff's loan would be made current if she tendered $24,547.59.

23. Further confusing the issue, on or about August 26, 2011, *after Plaintiff's home was sold,* GMAC sent a letter to Plaintiff informing her of a cancellation of foreclosure proceedings, citing *specifically* to "LOAN PAID IN FULL" as the reason for cancellation of the foreclosure process and home sale. *Exhibit F – Letter from GMAC RE: Cancellation of Foreclosure*

24. Nonetheless, the damage was done, and Plaintiff's home was sold.

25. Despite GMAC's purported cancellation of foreclosure proceedings, Plaintiff continued to receive solicitations and notices informing her that her home had been sold.

26. Furthermore, on or about September 15, 2011 Plaintiff received a Notice to Vacate. *Exhibit G – Notice to Vacate*

COMPLAINT

27. Finally, on or about September 23, 2011 Plaintiff received an eviction notice through a Notice of Unlawful Detainer from Los Angeles County. *Exhibit H – Notice of Unlawful Detainer*

28. As a result of this unconscionable ordeal, Plaintiff is no longer officially recognized as the owner of her home that she is rightfully entitled to, and the active title report does not list Plaintiff as the owner.

## I.   FIRST CAUSE OF ACTION—FRAUDULENT CONCEALMENT

### (Against Defendant and Does 1 through 50)

29. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

30. The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 129 Cal. Rptr. 3d 874 (2011).

### A. DEFENDANTS CONCEALED A MATERIAL FACT

31. On or about June 15, 2011, GMAC sent Plaintiff a letter informing Plaintiff that she was still in loan modification review, despite the Notice of Sale having been recorded only two weeks prior.

32. On June 17, 2011, Plaintiff drew a certified cashier's check from Chase Bank in the total debt amount of $24,547.59, as instructed by ETS's debt collection letter. The check was made payable to JP MORGAN CHASE/ GMAC as per GMAC's instructions. *Exhibit C – Cashier's Check*

33. On that same day, June 17, 2011, Plaintiff called GMAC and spoke to a supervisor named Brandon, informing GMAC as a courtesy that she had sent in the complete debt amount to GMAC. *Exhibit D – Cashier's Check fax to Brandon*

–5–

COMPLAINT

34. On or about June 18, 2011, Plaintiff called GMAC again in an abundance of caution in making sure her payment to make her loan current and to halt the foreclosure sale had gone through successfully. Another supervisor named Joe at GMAC informed Plaintiff that GMAC had received the check.

35. Also in June 2011, Plaintiff faxed a copy to a GMAC supervisor named Ade the receipt of the payment. Again, this was done in an abundance of caution due to the precarious situation GMAC had put Plaintiff in by surreptitiously instituting foreclosure proceedings against her despite telling her that she was in modification review. *Exhibit E – Cashier's Check fax to Ade*

36. Despite Plaintiff's meticulous courtesy notices to GMAC and despite GMAC's affirmation of receiving the cashier's check, Plaintiff's home was sold on August 31, 2011 for $335,358.00 to GMAC (GMAC purchased Plaintiff's Home).

37. Plaintiff was baffled. Plaintiff was under the impression that the cashier's check to pay off her debt and GMAC's confirmation of receiving the check had halted the foreclosure sale of her home, as the ETS letter unambiguously stated that Plaintiff's loan would be made current if she tendered $24,547.59.

38. Further confusing the issue, on or about August 26, 2011, *after Plaintiff's home was sold,* GMAC sent a letter to Plaintiff informing her of a cancellation of foreclosure proceedings, citing *specifically* to "LOAN PAID IN FULL" as the reason for cancellation of the foreclosure process and home sale. *Exhibit F – Letter from GMAC RE: Cancellation of Foreclosure*

39. Nonetheless, the damage was done, and Plaintiff's home was sold.

40. Despite GMAC's purported cancellation of foreclosure proceedings, Plaintiff continued to receive solicitations and notices informing her that her home had been sold.

41. Furthermore, on or about September 15, 2011 Plaintiff received a Notice to Vacate. *Exhibit G – Notice to Vacate*

42. Finally, on or about September 23, 2011 Plaintiff received an eviction notice through a Notice of Unlawful Detainer from Los Angeles County. *Exhibit H – Notice of Unlawful Detainer.*

///

–6–

COMPLAINT

**B. DEFENDANTS WERE UNDER A DUTY TO DISCLOSE THE FACTS TO PLAINTIFF**

43. Defendant had a common law duty to avoid making partial, misleading representations that effectively concealed material facts. (See *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1082–1084, 60 Cal.Rptr.2d 263, 929 P.2d 582; *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336, 60 Cal.Rptr.2d 539.)" *Boschma*, at 892.

44. In the interest of justice, professional decency, and good-faith business dealings, Defendant was under an absolute duty to let Plaintiff know that her home had sold. Instead, Defendant concealed this fact.

**C. DEFENDANTS' CONCEALMENT WAS INTENTIONAL AND MEANT TO DEFRAUD PLAINTIFF**

45. As stated above, Defendant had motive for profit in selling Plaintiff's home without telling her. The intent is clear: the price of the home to gain at sale. Defendant intended to defraud Plaintiff due to the prospect of the profit of selling Plaintiff's home who had already been strung-along in the modification process for nearly two years.

**D. PLAINTIFFS WERE UNAWARE OF THE FACT AND WOULD NOT HAVE ACTED HAD THEY KNOWN THE TRUTH**

46. Plaintiff's relied on GMAC's meager communications in regards to the modification process of her home loan.

47. At no time was Plaintiff aware of the fact that her home would be imminently sold, and at no time was Plaintiff made aware of the actual sale of her home because GMAC kept sending modification related document re-requests and paperwork.

48. On the contrary, Defendants' acceptance of Plaintiff check to cure default inarguably suggested Plaintiff's foreclosure proceedings would be ceased.

49. Had Plaintiff known the truth of the matter that Defendants intended to sell Plaintiff's home, Plaintiff would not have fought to keep her home, hired attorneys, nor subjected herself to the stress of dealing with a wholly uncooperative GMAC and its modification process.

**E. PLAINTIFF SUFFERED DAMAGE AS A RESULT OF THE CONCEALMENT**

50. Plaintiff never received a loan modification.

COMPLAINT

51. Plaintiff's credit was damaged at issuance of the Notice of Default and subsequent three Notice of Trustee Sales.

52. Finally, as a result of Defendant's fraudulent concealment, Plaintiff lost her home, all the while, Defendant stringing Plaintiff along regarding a an erroneous potential for loan modification.

## II.   SECOND CAUSE OF ACTION—INTENTIONAL MISREPRESENTATION
### (Against Defendant and Does 1 through 50)

53. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

54. To recover for fraud based on an intentional misrepresentation, the injured party must prove each of the following elements of the cause of action:

   a.   The other party made a misrepresentation of a material fact relating to the subject matter of the transaction;

   b.   The representation was false and the party making the representation must have known it was false or did not believe it to be true;

   c.   The statement was made with the intent to induce the party to enter into the transaction or otherwise detrimentally change position;

   d.   The injured party relied on the representation, and the reliance was reasonable and justifiable; and,

   e.   The injured party suffered damages or injury as a result of the reliance. California Civil Code Section 1572; *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59.

A. DEFENDANT MADE MATERIAL MISREPRESENTATIONS WHEN GMAC REPRESENTED TO PLAINTIFF THAT HER MODIFICATION WAS PROCEEDING, BUT INSTEAD SOLD PLAINTIFF'S HOME

55. On or about June 15, 2011, GMAC sent Plaintiff a letter informing Plaintiff that she was still in loan modification review, despite the Notice of Sale having been recorded only two weeks prior.

–8–

COMPLAINT

56. On June 17, 2011, Plaintiff drew a certified cashier's check from Chase Bank in the total debt amount of $24,547.59, as instructed by ETS's debt collection letter. The check was made payable to JP MORGAN CHASE/ GMAC as per GMAC's instructions. *Exhibit C – Cashier's Check*

57. On that same day, June 17, 2011, Plaintiff called GMAC and spoke to a supervisor named Brandon, informing GMAC as a courtesy that she had sent in the complete debt amount to GMAC. *Exhibit D – Cashier's Check fax to Brandon*

58. On or about June 18, 2011, Plaintiff called GMAC again in an abundance of caution in making sure her payment to make her loan current and to halt the foreclosure sale had gone through successfully. Another supervisor named Joe at GMAC informed Plaintiff that GMAC had received the check.

59. Also in June 2011, Plaintiff faxed a copy to a GMAC supervisor named Ade the receipt of the payment. Again, this was done in an abundance of caution due to the precarious situation GMAC had put Plaintiff in by surreptitiously instituting foreclosure proceedings against her despite telling her that she was in modification review. *Exhibit E – Cashier's Check fax to Ade*

60. Despite Plaintiff's meticulous courtesy notices to GMAC and despite GMAC's affirmation of receiving the cashier's check, Plaintiff's home was sold on August 31, 2011 for $335,358.00 to GMAC (GMAC purchased Plaintiff's Home).

61. Plaintiff was baffled. Plaintiff was under the impression that the cashier's check to pay off her debt and GMAC's confirmation of receiving the check had halted the foreclosure sale of her home, as the ETS letter unambiguously stated that Plaintiff's loan would be made current if she tendered $24,547.59.

62. Further confusing the issue, on or about August 26, 2011, *after Plaintiff's home was sold,* GMAC sent a letter to Plaintiff informing her of a cancellation of foreclosure proceedings, citing *specifically* to "LOAN PAID IN FULL" as the reason for cancellation of the foreclosure process and home sale. *Exhibit F – Letter from GMAC RE: Cancellation of Foreclosure*

63. Nonetheless, the damage was done, and Plaintiff's home was sold.

COMPLAINT

64. Despite GMAC's purported cancellation of foreclosure proceedings, Plaintiff continued to receive solicitations and notices informing her that her home had been sold.

65. Furthermore, on or about September 15, 2011 Plaintiff received a Notice to Vacate. *Exhibit G – Notice to Vacate*

66. Finally, on or about September 23, 2011 Plaintiff received an eviction notice through a Notice of Unlawful Detainer from Los Angeles County. *Exhibit H – Notice of Unlawful Detainer*.

**B. THE MISREPRESENTATIONS WERE FALSE AND THE PARTY MAKING THE REPRESENTATION MUST HAVE KNOWN IT WAS FALSE**

67. As an international financial institution, GMAC should have known that selling Plaintiff's home while supposedly conducting modification review and informing Plaintiff that review was still ongoing (*despite actually selling the house*) was an egregious misrepresentation leading to substantial loss for Plaintiff.

68. Furthermore, such an institution knew or definitely should have known that Plaintiff's home was being sold despite representing that an ongoing loan modification was in process. Such an error is inherently contradictory to due diligence.

69. As part of their duties as a massive lending house, due diligence is not only expected but required by the bank in advising Plaintiff that she must miss payments to be considered for a loan modification.

70. Furthermore, due diligence *absolutely requires* Defendant's various departments to be fully informed of the specific stage of Plaintiff's request in determining when to sell Plaintiff's home. That GMAC did not know that Plaintiff was in modification and negotiation talks with Plaintiff's prior counsel and nonetheless selling Plaintiff's home during the process, then continuing to send Plaintiff modification paperwork is negligent and fraudulent.

**C. THE MISREPRESENTATIONS WERE MADE WITH THE INTENT TO INDUCE PLAINTIFF IN TO DEBT**

71. GMAC stood to gain substantial amounts of fees, penalties, interest, and arrears as soon as Plaintiff's loan was in default. Expressing such an egregious misrepresentation such as ongoing

modification review despite having sold the home was precisely to induce Plaintiff in to debt, an

income-generating endeavor for Defendant.

72. Furthermore, alluding to Plaintiff's continued modification review while selling Plaintiff's home

from under her feet generated significant economic gains for Defendant in the price of the home.

73. That the price of the home at sale was to be gained from Defendant from their misrepresentations

shows motive to induce Plaintiff in to the circumstances she found herself in, as described

herein.

### D. PLAINTIFF RELIED ON THE MISREPRESENTATION

74. In taking Defendant's word regarding ongoing modification review, Plaintiff relied on the

misrepresentation and diligently cooperated with GMAC's modification process. Ultimately,

through a daunting run-around from GMAC, Plaintiff did not get a loan modification and

actually suffered through the sale of her house by Defendant.

### E. PLAINTIFF SUFFERED INJURY AS A RESULT OF THE MISREPRESENTATIONS

75. In reliance of Defendant's misrepresentation to miss payments, Plaintiff relied, and immediately

faced the consequences of doing so without getting the promised modification. Plaintiff's credit

was immediately impacted on issuance of the Notice of Default, and Plaintiff accrued

insurmountable sums of fees, penalties, interest, and arrears.

76. In reliance of Defendant's tedious process for modification review, and in reliance on

Defendant's statement that the modification was nearing settlement, Plaintiff suffered the sale of

her home.

### III.    THIRD CAUSE OF ACTION—NEGLIGENT MISREPRESENTATION

#### (Against Defendant and Does 1 through 50)

77. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set

forth herein.

78. Courts typically define the tort of negligent misrepresentation as a false statement that brings

about "a pecuniary loss [Citations.] caused by justifiable reliance on [those] statement[s]."

-11-

*Tschimperle v. Aetna Cas. & Sur. Co.* (Minn. Ct. App. 1995) 529 N.W.2d 421; *Augenblick v. Nationwide Ins. Co.* (E.D. Pa. Oct. 8, 1999) No. 99-3419, 1999 WL 975118. (defining negligent misrepresentation as false representations negligently made or as the failure to disclose material facts); *Allstate Ins. Co. v. Miller* (N.D. Cal. 1990)743 F. Supp. 723, 726. (classifying negligent misrepresentation as a type of fraud and defining it as "the 'assertion as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true'); and "the 'suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.'"). California Civil Code Sections 1572, 1710.

79. Negligent misrepresentation lacks the element of knowledge of the falsity of the representations. Therefore, "'[w]here the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.' [Citation.]" *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407-408, quoting 5 Witkin, Summary of Cal.Law (9th ed. 1988) Torts, § 720, p. 819.

A. **DEFENDANT MADE MATERIAL MISREPRESENTATIONS WHEN GMAC REPRESENTED TO PLAINTIFF THAT HER MODIFICATION WAS PROCEEDING, BUT INSTEAD SOLD PLAINTIFF'S HOME**

80. On or about June 15, 2011, GMAC sent Plaintiff a letter informing Plaintiff that she was still in loan modification review, despite the Notice of Sale having been recorded only two weeks prior.

81. On June 17, 2011, Plaintiff drew a certified cashier's check from Chase Bank in the total debt amount of $24,547.59, as instructed by ETS's debt collection letter. The check was made payable to JP MORGAN CHASE/ GMAC as per GMAC's instructions. *Exhibit C – Cashier's Check*

82. On that same day, June 17, 2011, Plaintiff called GMAC and spoke to a supervisor named Brandon, informing GMAC as a courtesy that she had sent in the complete debt amount to GMAC. *Exhibit D – Cashier's Check fax to Brandon*

-12-

83. On or about June 18, 2011, Plaintiff called GMAC again in an abundance of caution in making sure her payment to make her loan current and to halt the foreclosure sale had gone through successfully. Another supervisor named Joe at GMAC informed Plaintiff that GMAC had received the check.

84. Also in June 2011, Plaintiff faxed a copy to a GMAC supervisor named Ade the receipt of the payment. Again, this was done in an abundance of caution due to the precarious situation GMAC had put Plaintiff in by surreptitiously instituting foreclosure proceedings against her despite telling her that she was in modification review. *Exhibit E – Cashier's Check fax to Ade*

85. Despite Plaintiff's meticulous courtesy notices to GMAC and despite GMAC's affirmation of receiving the cashier's check, Plaintiff's home was sold on August 31, 2011 for $335,358.00 to GMAC (GMAC purchased Plaintiff's Home).

86. Plaintiff was baffled. Plaintiff was under the impression that the cashier's check to pay off her debt and GMAC's confirmation of receiving the check had halted the foreclosure sale of her home, as the ETS letter unambiguously stated that Plaintiff's loan would be made current if she tendered $24,547.59.

87. Further confusing the issue, on or about August 26, 2011, *after Plaintiff's home was sold,* GMAC sent a letter to Plaintiff informing her of a cancellation of foreclosure proceedings, citing *specifically* to "LOAN PAID IN FULL" as the reason for cancellation of the foreclosure process and home sale. *Exhibit F – Letter from GMAC RE: Cancellation of Foreclosure*

88. Nonetheless, the damage was done, and Plaintiff's home was sold.

89. Despite GMAC's purported cancellation of foreclosure proceedings, Plaintiff continued to receive solicitations and notices informing her that her home had been sold.

90. Furthermore, on or about September 15, 2011 Plaintiff received a Notice to Vacate. *Exhibit G – Notice to Vacate*

91. Finally, on or about September 23, 2011 Plaintiff received an eviction notice through a Notice of Unlawful Detainer from Los Angeles County. *Exhibit H – Notice of Unlawful Detainer.*

COMPLAINT

**A. THE MISREPRESENTATIONS WERE FALSE AND THE PARTY MAKING THE REPRESENTATION MUST HAVE KNOWN IT WAS FALSE**

92. As an international financial institution, GMAC should have known that selling Plaintiff's home while supposedly conducting modification review and informing Plaintiff that review was still ongoing (*despite actually selling the house*) was an egregious misrepresentation leading to substantial loss for Plaintiff.

93. Furthermore, such an institution knew or definitely should have known that Plaintiff's home was being sold despite representing that an ongoing loan modification was in process. Such an error is inherently contradictory to due diligence.

94. As part of their duties as a massive lending house, due diligence is not only expected but required by the bank in advising Plaintiff that she must miss payments to be considered for a loan modification.

95. Furthermore, due diligence *absolutely requires* Defendant's various departments to be fully informed of the specific stage of Plaintiff's request in determining when to sell Plaintiff's home. That GMAC did not know that Plaintiff was in modification and negotiation talks with Plaintiff's prior counsel and nonetheless selling Plaintiff's home during the process, then continuing to send Plaintiff modification paperwork is negligent and fraudulent.

**B. PLAINTIFF RELIED ON THE MISREPRESENTATION**

96. In taking Defendant's word regarding ongoing modification review, Plaintiff relied on the misrepresentation and diligently cooperated with GMAC's modification process. Ultimately, through a daunting run-around from GMAC, Plaintiff did not get a loan modification and actually suffered through the sale of her house by Defendant.

**C. PLAINTIFF SUFFERED INJURY AS A RESULT OF THE MISREPRESENTATIONS**

97. In reliance of Defendant's misrepresentation to miss payments, Plaintiff relied, and immediately faced the consequences of doing so without getting the promised modification. Plaintiff's credit was immediately impacted on issuance of the Notice of Default, and Plaintiff accrued insurmountable sums of fees, penalties, interest, and arrears.

-14-

98. In reliance of Defendant's tedious process for modification review, and in reliance on Defendant's statement that the modification was nearing settlement, Plaintiff suffered the sale of her home.

## IV.   FOURTH CAUSE OF ACTION—VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C § 1692(E)

### (Against Defendant and Does 1 through 50)

99. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

100.   The Fair Debt Collection Practices Act prohibits a number of unfair and deceptive consumer debt collection practices, including the use of "false, deceptive, or misleading representations in connection with the collection of any debt." (§ 1692(e)).

101.   Section 1692a of Title 15 of the United States Code, Subsection 6, defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

102.   GMAC is a prominent and nationally known financial institution and known debt collector, and are thus subject to the Act. As a federal savings bank and lender, one of Defendant's primary purposes of business is to collect monies in the form of debts from borrowers with whom they have entered into a lending relationship.

103.   While "...foreclosure does not constitute debt collection under the [Rosenthal Act]" according to the holding in Izenberg v. ETS Services (LLC (C.D. Cal. 2008) 589 F. Supp.2d 1193), Defendants are a known financial institution whose wrongful conduct related to foreclosure of the Subject Property did not occur during foreclosure of the property, but rather preceded it during the period Defendant was attempting to collect on Plaintiff's obligation to pay money. Therefore, they are liable as debt collectors for all intents and purposes of applying the

-15-

Fair Debt Collection Practices Act. (See Quintero Family Trust v. BOA Bank, F.S.B. 2010 U.S. Dist. LEXIS 63659 (S.D. Cal. 2010).

104.    As alleged herein, the same transaction, or incident, outlined extensively applies as a direct violation of the statute now being invoked.

105.    On or about June 15, 2011, GMAC sent Plaintiff a letter informing Plaintiff that she was still in loan modification review, despite the Notice of Sale having been recorded only two weeks prior.

106.    On June 17, 2011, Plaintiff drew a certified cashier's check from Chase Bank in the total debt amount of $24,547.59, as instructed by ETS's debt collection letter. The check was made payable to JP MORGAN CHASE/ GMAC as per GMAC's instructions. *Exhibit C – Cashier's Check*

107.    On that same day, June 17, 2011, Plaintiff called GMAC and spoke to a supervisor named Brandon, informing GMAC as a courtesy that she had sent in the complete debt amount to GMAC. *Exhibit D – Cashier's Check fax to Brandon*

108.    On or about June 18, 2011, Plaintiff called GMAC again in an abundance of caution in making sure her payment to make her loan current and to halt the foreclosure sale had gone through successfully.  Another supervisor named Joe at GMAC informed Plaintiff that GMAC had received the check.

109.    Also in June 2011, Plaintiff faxed a copy to a GMAC supervisor named Ade the receipt of the payment.  Again, this was done in an abundance of caution due to the precarious situation GMAC had put Plaintiff in by surreptitiously instituting foreclosure proceedings against her despite telling her that she was in modification review. *Exhibit E – Cashier's Check fax to Ade*

110.    Despite Plaintiff's meticulous courtesy notices to GMAC and despite GMAC's affirmation of receiving the cashier's check, Plaintiff's home was sold on August 31, 2011 for $335,358.00 to GMAC (GMAC purchased Plaintiff's Home).

111.    Plaintiff was baffled. Plaintiff was under the impression that the cashier's check to pay off her debt and GMAC's confirmation of receiving the check had halted the foreclosure sale of her

–16–

home, as the ETS letter unambiguously stated that Plaintiff's loan would be made current if she tendered $24,547.59.

112.    Further confusing the issue, on or about August 26, 2011, *after Plaintiff's home was sold,* GMAC sent a letter to Plaintiff informing her of a cancellation of foreclosure proceedings, citing *specifically* to "LOAN PAID IN FULL" as the reason for cancellation of the foreclosure process and home sale. *Exhibit F – Letter from GMAC RE: Cancellation of Foreclosure*

113.    Nonetheless, the damage was done, and Plaintiff's home was sold.

114.    Despite GMAC's purported cancellation of foreclosure proceedings, Plaintiff continued to receive solicitations and notices informing her that her home had been sold.

115.    Furthermore, on or about September 15, 2011 Plaintiff received a Notice to Vacate. *Exhibit G – Notice to Vacate*

116.    Finally, on or about September 23, 2011 Plaintiff received an eviction notice through a Notice of Unlawful Detainer from Los Angeles County. *Exhibit H – Notice of Unlawful Detainer.*

117.    Given that lender-debtor communications must be viewed from the standpoint of the "least sophisticated debtor" *Brown v. Card Serv. Ctr.*, 464 F.3d 450 (3d Cir. 2006), it is not unreasonable that Plaintiff would view the ongoing tedious communications regarding loan modification as GMAC's intention to *not* sell Plaintiff's home.

118.    Given that Well Fargo's conduct towards Plaintiff in its efforts to collect the debt was incredibly misleading, GMAC has engaged in conduct said to be in stark violation of 15 U.S.C 1692(e).

## V.    FIFTH CAUSE OF ACTION—VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT § 1812.700(A)

### (Against Defendant and All Does 1 through 50)

119.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

COMPLAINT

120.    The Rosenthal Fair Debt Collection Practices Act is the California equivalent of the Fair

Debt Collection Practices Act, which similarly prohibits a number of unfair and deceptive

consumer debt collection practices, including the use of "false or misleading statements." (§

1812.700(a)).

121.    GMAC is a prominent and nationally known financial institution and, per the analysis

provided in the previous cause of action, is known debt collector for all intents and purposes of

applying the Rosenthal Fair Debt Collection Practices Act, and are thus subject to the Act.

122.    As alleged herein, the same transaction, or incident, outlined extensively applies as a direct

violation of the statute now being invoked.

123.    On or about June 15, 2011, GMAC sent Plaintiff a letter informing Plaintiff that she was still

in loan modification review, despite the Notice of Sale having been recorded only two weeks

prior.

124.    On June 17, 2011, Plaintiff drew a certified cashier's check from Chase Bank in the total debt

amount of $24,547.59, as instructed by ETS's debt collection letter. The check was made

payable to JP MORGAN CHASE/ GMAC as per GMAC's instructions. *Exhibit C – Cashier's

Check*

125.    On that same day, June 17, 2011, Plaintiff called GMAC and spoke to a supervisor named

Brandon, informing GMAC as a courtesy that she had sent in the complete debt amount to

GMAC. *Exhibit D – Cashier's Check fax to Brandon*

126.    On or about June 18, 2011, Plaintiff called GMAC again in an abundance of caution in

making sure her payment to make her loan current and to halt the foreclosure sale had gone

through successfully.  Another supervisor named Joe at GMAC informed Plaintiff that GMAC

had received the check.

127.    Also in June 2011, Plaintiff faxed a copy to a GMAC supervisor named Ade the receipt of

the payment.  Again, this was done in an abundance of caution due to the precarious situation

GMAC had put Plaintiff in by surreptitiously instituting foreclosure proceedings against her

despite telling her that she was in modification review. *Exhibit E – Cashier's Check fax to Ade*

COMPLAINT

128.    Despite Plaintiff's meticulous courtesy notices to GMAC and despite GMAC's affirmation of receiving the cashier's check, Plaintiff's home was sold on August 31, 2011 for $335,358.00 to GMAC (GMAC purchased Plaintiff's Home).

129.    Plaintiff was baffled. Plaintiff was under the impression that the cashier's check to pay off her debt and GMAC's confirmation of receiving the check had halted the foreclosure sale of her home, as the ETS letter unambiguously stated that Plaintiff's loan would be made current if she tendered $24,547.59.

130.    Further confusing the issue, on or about August 26, 2011, *after Plaintiff's home was sold,* GMAC sent a letter to Plaintiff informing her of a cancellation of foreclosure proceedings, citing *specifically* to "LOAN PAID IN FULL" as the reason for cancellation of the foreclosure process and home sale. *Exhibit F – Letter from GMAC RE: Cancellation of Foreclosure*

131.    Nonetheless, the damage was done, and Plaintiff's home was sold.

132.    Despite GMAC's purported cancellation of foreclosure proceedings, Plaintiff continued to receive solicitations and notices informing her that her home had been sold.

133.    Furthermore, on or about September 15, 2011 Plaintiff received a Notice to Vacate. *Exhibit G – Notice to Vacate*

134.    Finally, on or about September 23, 2011 Plaintiff received an eviction notice through a Notice of Unlawful Detainer from Los Angeles County. *Exhibit H – Notice of Unlawful Detainer.*

135.    Given that lender-debtor communications must be viewed from the standpoint of the "least sophisticated debtor" *Brown v. Card Serv. Ctr.*, 464 F.3d 450 (3d Cir. 2006), it is not unreasonable that Plaintiff would view the ongoing tedious communications regarding loan modification as GMAC's intention to *not* sell Plaintiff's home.

136.    Given that Well Fargo's conduct towards Plaintiff in its efforts to collect the debt was incredibly misleading, GMAC has engaged in conduct said to be in stark violation of The Fair Debt Collection Practices Act.

///

COMPLAINT

## VI.   SIXTH CAUSE OF ACTION—NEGLIGENCE

### (Against Defendant and Does 1 through 50)

137.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

**A. GMAC** TRANSCENDED THE BOUNDS AS MERE LENDER OF MONEY WHEN **GMAC** MISHANDLED THE MODIFICATION APPLICATION BY NEGLECTING, LOSING, AND/OR ABANDONING THE PROCESS, TOOK PLAINTIFF'S PAYMENT OF $24,547.59 TO CURE DEFAULT, CONFIRMED RECEIPT OF PLAINTIFF'S PAYMENT TO CURE DEFAULT, YET ULTIMATELY SOLD THE HOUSE AT FORECLOSURE SALE SOON THEREAFTER

138.   The elements of a cause of action for negligence are 1) a legal duty to use due care, 2) a breach of that duty, 3) a reasonably close causal connection between that breach and the plaintiff's resulting injury, and 4) actual loss or damage to the plaintiffs. *People v. Young*, 20 Cal. 2d 832, 129 P.2d 353 (1942); *Ahern v. Dillenback*, 1 Cal. App. 4th 36, 1 Cal. Rptr. 2d 339 (1991); see also Cal. Civ. Code §1714(a) ("everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself"). *Id.*

139.   At all times relevant herein, GMAC and its agents, acting as Plaintiff's lender and loan servicer, had a duty to exercise reasonable care and skill to comply with California law and avoid negligently damaging Plaintiff's interests.

140.   "The party of superior bargaining power not only prescribes the words of the instrument but the party who subscribes to it lacks the economic strength to change such language." (*Neal v. State Farm Ins. Cos.*, supra, 188 Cal.App.2d 690, 695, 10 Cal.Rptr. 781.) *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820, 623 P.2d 165, 172 (1981).

141.   As such, GMAC was able to manipulate the Plaintiff using its superior bargaining power. GMAC has transcended the bounds of mere lender when GMAC took unfair advantage of Plaintiff.

142.   Although the Court in *Nymark* stresses that a duty of care does not extend to institutions who are "mere lenders of money," or where "the institutions involvement in loan transaction does not exceed the scope of its conventional role as a mere lender of money" (*Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d Id. at 1096), GMAC is found to have exceeded the bounds as a conventional lender by actively engaging with Plaintiff above and beyond that of a conventional lender.

143.   The Court in *Ansanelli v. JP Morgan Chase Bank, N.A.*, (N.D. Cal. March 28, 2011) 2011 WL 1134451, 7 stated that "a lender who offered an opportunity for a loan modification and actively engaged with Plaintiff concerning the modification had gone beyond the domain of usual money lender and therefore had a duty of care to the Plaintiff." The Court therein specifically articulated that the active participation and not the offer itself was "precisely 'beyond the domain of a usual money lender'" where the duty of care is owed. (Id. at 6, citing *Nymark*, supra).

144.   In *Nymark v. Heart Fed. Savings & Loan Association* (1991) 231 Cal.App.3d, the court enumerated a 6-prong test to determine whether a lender owes a duty of care to the borrower. The *Nymark* test is as follows: 1) the extent to which the transaction was intended to affect the Plaintiff; 2) the foreseeability of harm to him; 3) the degree of certainty that the Plaintiff suffered injury; 4) the closeness of the connection between the Defendant's conduct and the injury suffered; 5) the moral blame attached to the Defendant's conduct; and 6) the policy of preventing future harm.

   **a.   Intent to Affect Plaintiff**

145.   Defendant GMAC clearly intended to affect Plaintiff when Defendant when GMAC mishandled the modification application by neglecting, losing, and/ or abandoning the process— essentially losing all track and control over the application—took Plaintiff's payment of $24,547.59 to cure default, and unexpectedly and ultimately sold the house at foreclosure sale soon thereafter.

-21-

146.    Defendants accepted a loan modification application from Plaintiff. Defendants either lost, neglected, abandoned, or purposely ignored Plaintiff's loan modification. There was no movement on Plaintiff's modification for nearly half a year, all the while charging fees, penalties, interest, and arrears on the loan.

147.    Defendants kept stringing along Plaintiff regarding Plaintiff's modification application. This delay generated thousands of dollars worth of profit for Defendant in the form of fees, penalties, interest, and arrears assessed to Plaintiff's mortgage payments.

148.    Furthermore, after Plaintiff relied to her extreme detriment on such reckless advice to miss payments in hopes of getting a loan modification, and while Defendant needlessly extended the process for half a year, egging along Plaintiff and her attorneys that a modification review was in the works, Defendant nonetheless commenced with foreclosure of the property, and requested a nearly $25,000 amount to cure default.

149.    Plaintiff paid this amount to cure default as she thought she was pursuing a modification concurrently.

150.    Nonetheless, even after Defendant's confirmation of receipt of the amount to cure default, Defendants proceeded with the sale of Plaintiff's home.

151.    Such behavior amounts to a clear intent to affect Plaintiff. Defendant's acts would amount to nothing else except such detriments faced by Plaintiff.

152.    Defendants' motive for profit by keeping Plaintiffs in constant disarray of their situation is bolstered when considering Defendants must recognize a loss under accounting regulations via Financial Accounting Statements ("FAS") 140 if they provide Plaintiff with a loan modification. This type of recognized loss damages the interests and reduces the profits of Defendants. Reductions in principal balances similarly reduce the amount of money that a loan servicer can collect on a serviced loan. See Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications, Diane E. Thompson, Washington Law Review, Vol.86: 755 at 807.

153.    Furthermore, upon wrongful foreclosure and sale of Plaintiff's home, Defendants gained significant revenue essentially by selling what did not belong to them.

-22-

COMPLAINT

154. Defendants acts outlined above generated plenty of time to assess penalties, fees, interest, and arrears, providing Defendant with a steady stream of profit as they blatantly took advantage of Plaintiff.

### b. Foreseeability of Harm to Plaintiff

155. Defendant's conduct created a clear threat of foreseeable harm to Plaintiff. Defendants could foresee that mishandling the modification application to the point of having no idea where it is or what stage it has or has not been processed, representing to Plaintiff that her $24,547.59 check was received and in process to cure the default, and ultimately wrongfully and negligently selling Plaintiff's home at foreclosure sale, would seriously injury Plaintiff and certainly increase the precarious nature of Plaintiffs financial situation.

### c. Degree of Certainty Plaintiff Suffered Injury

156. Plaintiff has certainly suffered injury by Defendants' numerous missteps and reckless behavior in exploiting Plaintiff's financial situation, as described in Defendants acts above.

157. Plaintiff's home has now been sold, stemming *directly* from the initial misrepresentation of ongoing modification review, all the while accepting Plaintiff's cashier's check to cure the default on the loan and misrepresenting that foreclosure had been halted.

158. Plaintiff has suffered absolute and irreparable injury by the loss of her home, including the immediate damage to her credit through the erroneous Notice of Default, the loss of the value of her home through the reckless sale of the Property.

### d. Close Connection Between Defendants' Conduct and Plaintiff's Injury

159. The connection between Defendants' conduct and Plaintiff's injury is direct and substantial.

160. But for Defendant completely mishandling the modification application, taking Plaintiff's amount to cure default, *and then* subsequently selling Plaintiff's home after default was cured, Plaintiff would not have lost her livelihood and insurmountable credit and financial damage.

161. Finally, but for Defendant *selling Plaintiff's home while representing to Plaintiff that a modification review was still in progress*, Plaintiff would not have wrongfully *lost her home.*

///

### e. Moral Blame for Defendants' Conduct

162.    Defendants' conduct is morally blameworthy because Defendant left Plaintiffs in a state of uncertainty when they sold Plaintiff's home while representing to Plaintiff that a modification application was still in review. Such egregious behavior on the part of a national financial institution such as Defendant GMAC subjects persons such as Plaintiff to insurmountable odds of rectifying their very real financial situations.

163.    The moral blame arises due to practices such as those described herein, where a lender such as Defendant GMAC delays any clear path to financial stability for their clients even when the client has shown a willingness and ability to pay a reasonable monthly payment, all the while avoiding an insurmountable payment of fees, arrears and interest in order to continue repayment.

164.    The moral blame in blatantly mishandling Plaintiff's modification, as well as cashing Plaintiff's check to cure default, and then subsequently continuing foreclosure proceedings and selling Plaintiff's home is precisely the egregious behavior that has become commonplace by financial lending houses in the midst of the devastating economic crises that persists to this day.

165.    In *Nymark*, there was no moral blame to be attributed to that defendant because the plaintiff was in a position to protect himself from loss and did not do so.  See supra, *Nymark*.  Here, moral blame should wholly be attributed to Defendants.

### f. Policy of Preventing Future Harm

166.    There is strong public policy to support Plaintiff in this case because lenders and loan servicers cannot be permitted to engage in deceit and conduct that is tantamount to fraud at the expense of borrowers.  The existence of public policy of preventing future harm to home loan borrowers is show by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis. *Cal. Civ. Code §2923.6 (encouraging lenders to offer loan modifications to borrowers in appropriate circumstances); Press Release at http://gov.ca.gov/press-release/14871 (Gov. Schwarzenegger Signs Legislation to Provide Greater Assistance to California Homeowners"); http://makinghomesaffordable.gov (describing the federal "Making Home Affordable Program").*

-24-

COMPLAINT

167.   Plaintiff in this case satisfies all six prongs of the *Nymark* test, therefore Defendants do owe

Plaintiff a duty of care to act with the utmost care and for the sole benefit of Plaintiffs.  In

*Nymark*, only two of six prongs were satisfied, which is the reason why that court held no duty of

care was owed. Since establishment of duty of care is a prerequisite to an action for negligence,

Plaintiffs here have properly alleged this element for its negligence-based actions.

B.  **DEFENDANTS HAVE BREACHED THEIR DUTY OF CARE OWED TO PLAINTIFF BY**

   **TRANSCENDING THE BOUNDS AS MERE LENDER OF MONEY**

168.   A breach occurs when acts or omissions are not compatible with standard of care.

169.   Defendants breached its duty of care owed to Plaintiff by mishandling the modification

application by neglecting, losing, and/ or abandoning the process—essentially losing all track

and control over the application—taking Plaintiff's payment of $24,547.59 to cure default, and

unexpectedly and ultimately selling the house at foreclosure sale soon thereafter, would seriously

injury Plaintiff and certainly increase the precarious nature of Plaintiffs financial situation.

170.   Plaintiff pleads that GMAC worsened Plaintiff's situation by exceeding its role as Plaintiff's

lender, causing Plaintiff's situation to worsen is *precisely* the manner in which a duty and

subsequent breach is found.

C.  **THERE EXISTS A SUBSTANTIALLY CLOSE CONNECTION BETWEEN DEFENDANTS' BREACH**

   **AND PLAINTIFFS' RESULTING INJURY**

171.   The connection between Plaintiff's injury and Defendants' actions are intertwined.

172.   But for Defendant stringing along the modification process irresponsibly, Plaintiff would not

have accrued thousands in penalties, fees, interest, and arrears.

173.   Finally, but for Defendant *selling Plaintiff's home while representing to Plaintiff that a*

*modification review was still in progress*, Plaintiff would not have wrongfully *lost her home.*

174.   Defendants' completely controlled Plaintiff's mortgage. Instead of assisting Plaintiff in a

concerted effort to avoid foreclosure, Defendants created a situation where Plaintiff home was

sold right from under her.

///

COMPLAINT

### D.  PLAINTIFF SUFFERED ACTUAL DAMAGE

175.   Since Plaintiff was first told by Defendant GMAC to miss payments to be considered for a modification, Defendants have caused an exorbitant and unnecessary amount of damage to Plaintiff.

176.   Plaintiff has lost her home, despite GMAC's misrepresentation that Plaintiff's modification review was in progress.

177.   Plaintiff has been assessed thousands in penalties, fees, interest and arrears.

178.   Plaintiff's credit was detrimentally impacted instantly upon default, which Defendant told her to pursue.

179.   Plaintiffs livelihood has been uprooted from the loss of her home.

180.   Plaintiff has been forced to seek new shelter, an expensive and daunting process in and of itself.

## VII.   PRAYER FOR RELIEF

181.   WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

   a.  For a rescission of the Notice of Default and any subsequent foreclosure proceeding;

   b.  For compensatory damages awarded according to proof;

   c.  For reasonable attorneys' fees and costs of suit;

   d.  For a full Accounting;

   e.  For such other and further relief as the court deems just and proper

DATED:  March 14, 2013                    CONSUMER ACTION LAW GROUP, PC



By:_____
        Yelena Gurevich
        Attorney for Plaintiffs,
        Leahnetha Darby

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

# Exhibit A

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDING REQUESTED BY
EXECUTIVE TRUSTEE SERVICES, INC

AND WHEN RECORDED MAIL TO:
EXECUTIVE TRUSTEE SERVICES, INC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

T.S. No. GM-276787-C
Loan No. 0559635008
Insurer No. 0559635008
400 515 80



SPACE ABOVE THIS LINE FOR RECORDERS Use

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 02/04/2004. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: RAY DARBY A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY
Recorded 02/13/2004 as Instrument No. 04 0332760 in Book XX, page XX of Official Records in the office of the Recorder of Los Angeles County, California,
Date of Sale: 06/27/2011 at 10:30 A.M.
Place of Sale:   At the West side of the Los Angeles County Courthouse, directly facing Norwalk
          Blvd., 12720 Norwalk Blvd., Norwalk, CA 90650
Property Address is purported to be:   7700 OSO AVENUE
                    WINNETKA, CA 91306

APN #: 2107-012-047

The total amount secured by said instrument as of the time of initial publication of this notice is $329,618.95; which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;
[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55.

TS NO.: GM-276787-C          LOAN NO.: 0559635008

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

### Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **2/4/2004** , executed by **RAY DARBY A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY,** as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE CORPORATION A CORPORATION,** as beneficiary, recorded 2/13/2004, as Instrument No. 04 0332760, in Book XX, Page XX, of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$340,000.00** ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 10/1/2010 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil Code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5.

Dated: 2/25/2011

ETS Services, LLC as Agent for Beneficiary

BY: _____

Sandra Guevara
TRUSTEE SALE OFFICER

LOS ANGELES,CA    DOCUMENT: ND 2011.318660                    Page 3 of 3

Printed on 6/20/2011 8:18:43 AM        Provided by DataTrace System

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B

COMPLAINT

**EXECUTIVE TRUSTEE SERVICES, INC**
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
(800)-665-3932

Jun 03, 2011

RAY DARBY

Re: TS #:   GM-276787-C                  Loan #:   0559635008
Property Address:      7700 OSO AVENUE
                       WINNETKA, CA 91306
Foreclosure Sale          06/27/2011
Date:

**NOTICE-THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE.**

The following information is provided to you on behalf of the beneficiary/servicer **GMAC MORTGAGE, LLC FKA
GMAC MORTGAGE CORPORATION** and is furnished by **EXECUTIVE TRUSTEE SERVICES, INC** as a
courtesy.  This loan is currently due for the **10/01/2010** installment.  The amount to reinstate the above
referenced loan as of **06/17/2011** is as follows:

GMAC Loan #   559635008
Reinstatement Quote Good Thru:        06/17/11
9PMT @2093.44                                    $18840.96
Late Charges                                      $1045.30
Inspections                                         $98.00
Advances                                           $166.00
Outstanding FC Advances                           $2447.33
Escrow Advances                                   $1950.00
**Total**                                        **$24,547.59**

Please submit your **CASHIER'S CHECK(S)**, payable to GMAC MORTGAGE, LLC FKA GMAC MORTGAGE
**CORPORATION,** *directly to:*

**EXECUTIVE TRUSTEE SERVICES**
**190-FTW-D40**
**1100 VIRGINIA DRIVE**
**FORT WASHINGTON, PA 19034**
**ATTN: ETS Accounting Department**

**Be advised that the above amount is accurate only through the date cited herein and will increase
thereafter. Please include your loan number or TS# on the check for processing purposes.**

EXECUTIVE TRUSTEE SERVICES, INC

Germaine Joseph
TRUSTEE SALE OFFICER
(800)-665-3932

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit C

COMPLAINT

Posting Date:        2011-06-17
Sequence #:          2890908549
Account #:           806002234
Routing Transit:     12210002
Amount #:            $24547.59
Check/Serial #:      001105309744
Bank #:              601
Tran Code:           000000
IRD:                 0
ItemType:            P
BOFD:                111900057
Cost Center:         741053
Teller Number:       2
Teller Seq Number:   219
Processing Date:     20110617



43797568

CHASE ◯ CHASE ◯ CHASE ◯ CHASE ◯

My Transaction Summary

*************************************

Special benefits for Chase checking
customers! Take advantage of exclusive
offers on many Chase products. To learn
more visit chase.com/exclusives
or talk to a banker today!

Checking Deposit
Account Number Ending In:                    2885
Transaction #219                        $24,547.59
*************************************

Further review may result in delayed
availability of this deposit

JPMorgan Chase Bank, N.A.
Topanga Canyon Branch /741053
Member FDIC, Equal Housing Lender
1-800-935-9935
Please keep your receipt
06/17/2011 17:19

Business Date 06/17/2011
Session #98

Thank you - Samuel
Cashbox #02

---

ATTN: Ade

Please find copies business card
in this fax is the person that
did the wire transfer or actually
was a female please take both
Also please fund Profile Report. 6 pgs

CHASE ◯

Keep this receipt as a record of your purchase.

---

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

1105309744

06/17/2011

California

Remitter  LEANETHA ANNETTE DARBY

$ *********24,547.59 ***

Pay To The     JP MORGAN CHASE BANK GMAC/BENEFICIARY
Order Of       ACCT. 021000021/ 0699282885

Drawer: JPMORGAN CHASE BANK, N.A.
**NON NEGOTIABLE**

TERMS
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit D

COMPLAINT

REO 1-800-750-00M
8/26/2011 ACCT 0559635008
GAMC SUPERVISOR BRANDON
FAX: TO BRANDON 1866 325 3504
BRANCH: 6833 TOPANGA CYN BL
TOPANGA CYN, CA 91303
818 598 6749 06/17/2011

FUNDS WIRED BY CHASE BANK 06/17/2011
TO JP MORGAN CHASE BANK · 800 478 9504

282111107 NEW 01/08 8810004306

# CHASE ⬛

**CASHIER'S CHECK**

1105309744  91-2/1221

Date   06/17/2011

Remitter  LEANETHA ANNETTE DARBY

Pay:   TWENTY FOUR THOUSAND FIVE HUNDRED FORTY SEVEN DOLLARS AND 59 CENTS

$  ********24,547.59 ***

Pay To The
Order Of   JP MORGAN CHASE BANK GMAC/BENEFICIARY
ACCT. 021000021/ 0699282885

Drawer: JPMORGAN CHASE BANK, N.A.

_Michael Andruss_

Senior Vice President
JPMorgan Chase Bank, N.A.
Phoenix, AZ

⑈1105309744⑈ ⑆122100024⑆ 806002234⑈



Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY

**CASHIER'S CHECK**

Customer Copy

1105309744

06/17/2011

California

Remitter  LEANETHA ANNETTE DARBY

$ *********24,547.59 ***

Pay To The
Order Of     JP MORGAN CHASE BANK GMAC/BENEFICIARY
             ACCT. 021000021/ 0699282885

Drawer:  JPMORGAN CHASE BANK, N.A.

**NON NEGOTIABLE**

TERMS
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
# Exhibit E
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT

Posting Date:          2011-06-17
Sequence #:            2790243274
Account #:             2976682670
Routing Transit:       50000101
Amount #:              $24547.59
Check/Serial #:        000042224716
Bank #:                703
Tran Code:             000000
IRD:                   0
ItemType:              P
BOFD:                  111900057
Cost Center:           741053
Teller Number:         1
Teller Seq Number:     167
Processing Date:       20110617

*Attn: Ade*
*Pleas find two pages*
*213-385-2977X377*

*Ck# 1105309744*
*Paid 6/17/11*

## CHASE ⬤        WITHDRAWAL/RETIRO

CHECKING/CHEQUES ☐
SAVINGS/AHORROS ☑
R/T 50000101

Today's Date/Fecha  *10-17-11*

Customer Name (Please Print)/Nombre del cliente (en letra de molde)
*Leanetha Darby*

If Purchasing a Cashier's Check Provide Payee Name/Si desea comprar un cheque de caja, escriba el nombre del beneficiario aquí
*Cashier's Check Payable => JP Morgan Chase Bank GMAC/Beneficiary*
*acct # 0699282885*

Customer Signature/Firma del cliente

Start your account number here/
▼ Empiece su número de cuenta aquí     *Leanetha Darby*    AMOUNT/CANTIDAD

*2976682670*          TOTAL  $      *24547.59*

⑈0042224716⑈ ⑆50000101⑆

JPMorganChaseBank 061701 741053 947280022945

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit F

COMPLAINT

# GMAC Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

## CANCELLATION NOTICE

Notification Date:      08/26/2011

0000014-0000045 GMACF 001 1      880764

000154-000523
RAY DARBY ESTATE
7700 OSO AVE
WINNETKA, CA 91306-2206

RE:  Loan Number:          5901-0000-0559635008
     Property Location:    7700 OSO AVENUE
                           WINNETKA CA 91306
     Master Policy Number:  6043-0002
     Certificate Number:    M-7159825
     Cancellation Reason:   LOAN PAID IN FULL

Dear Customer:

The lender-placed insurance we obtained on your property was cancelled on 08/24/2011 for the reason stated above. If the effective date of the cancellation is later than the effective date of the lender-placed coverage you will receive only a partial credit of the insurance costs we previously charged to you which will be applied to your escrow account.

To receive a credit for the remaining portion of the costs for the lender-placed insurance, please send us documentation, preferably a copy of your homeowner's policy, that shows you had insurance in effect for the period 11/01/2010 through 08/24/2011.

If you have any questions, please call, toll-free, (800) 256-9962, Monday through Friday, 4 a.m. to 8 p.m. PST. Calls to our Insurance Department may be monitored for quality assurance.

Thank you,

Insurance Department
GMAC Mortgage, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14

# Exhibit G

15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT

# NOTICE TO VACATE PREMISES

## TO: RAY DARBY, SHEYLA MILLAN AND ALL OTHERS IN POSSESSION

Of premises located at:

### 7700 Oso Avenue, Winnetka, CA 91306

YOU ARE HEREBY NOTIFIED that your right to occupy the real property at the above address has been terminated as the result of a foreclosure sale which took place on **August 23, 2011** in compliance with Section 2924 of the California Civil Code. The title under the sale has been duly perfected and the new owner is now entitled to possession.

YOU ARE REQUIRED TO QUIT AND DELIVER UP POSSESSION of the above real property to the new owner, **GMAC Mortgage, LLC fka GMAC Mortgage Corporation**, and/or its agent(s), within the notice period specified below. In the event you fail to do so you will be deemed to be unlawfully detaining the premises, which will result in the commencement of court proceedings against you by the owner to recover possession of the premises, together with court costs and the reasonable rental value of the property for each day of your continued occupancy thereof. In some instances, the court may award attorney's fees.

## NOTICE

To avoid a lawsuit and the associated expense, it is necessary for you to vacate the above property within **THREE (3) DAYS** after service upon you of this Notice, unless you obtained possession of the premises as a tenant or subtenants under a lease or rental agreement with the former owner, in which event it will be necessary for you to vacate the premises within **NINETY (90) DAYS** after service upon you of this Notice. You may be entitled for further protections if you are an active Service member or the dependant of an active Service member. Please provide us with proof of military service immediately so that your eligibility for additional protections can be determined.

Please contact the undersigned by telephone in the event you occupy the property as a tenant or subtenant at (714) 277-4888. Si usted no habla ingles, por favor llame a (714) 277-4888.

### IMPORTANT NOTICE TO SERVICEMEMBERS AND THEIR DEPENDENTS: PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT

If you are a servicemember on "active duty" or "active service," or a dependent of such a servicemember, you may be entitled to certain legal rights and protections, including protection from eviction, pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-596), as amended, (the "SCRA") and, possibly, certain related state statutes. Eligible service can include:

RCO # 7456

1. active duty (as defined in section 101(d)(1) of title 10, United States Code) with the Army, Navy, Air Force, Marine Corps, or Coast Guard;
2. active service with the National Guard;
3. active service as a commissioned officer of the National Oceanic and Atmospheric Administration;
4. active service as a commissioned officer of the Public Health Service; or
5. service with the forces of a nation with which the United States is allied in the prosecution of a war or military action.

Eligible service also includes any period during which a servicemember is absent from duty on account of sickness, wounds, leave, or other lawful cause.

If you are such a servicemember, or a dependent of such a servicemember, you should contact Routh Crabtree Olsen, PS at (714) 277-4888 to discuss your status under the SCRA.

This Notice is authorized pursuant to the provisions of Section §§ 1161a, 1161b and 1162 of the California Code of Civil Procedure.

Dated: September 15, 2011            ROUTH CRABTREE OLSEN, PS
Attorneys for New Owner


By:    Shahed Shahandeh, Esq.
       Rosemary Nguyen, Esq.
       1241 E. Dyer Road, Suite 250
       Santa Ana, CA. 92705

RCO # 7456

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit H

COMPLAINT

Sub-12-2020-mg Doc 5784-1 Filed 11/15/13 Los Angeles November Exhibit A 949
Limited Civil Division/ Unlawful Detainer Section        Date Filed:   9/23/11
6230 Sylmar Ave., Rm. 1
Van Nuys, CA. 91401

## NOTICE OF UNLAWFUL DETAINER
## (EVICTION)

DARBY RAY
7700 OSO AVE

WINNETKA CA 91306-2206

GMAC MORTGAGE LLC                         VS. DARBY, RAY

An Unlawful Detainer complaint (eviction action) has been filed, naming you as a
defendant. It is important for you to take immediate action. **YOU ARE ALLOWED 5 DAYS AFTER
YOU ARE SERVED TO RESPOND TO THE COMPLAINT.**

The following organizations; among others, may be called for legal advice:
Bet Tzedek Legal Services(L.A.County) (323)939-0506  Los Angeles Center for Law & Justice (323)980-3500
Bet Tzedek Legal Services(S.F.Valley) (818)769-0136  Los Angeles County Bar Association    (213)243-1525
Community Legal Services          (800)834-5001  Neighborhood Legal Services of
HIV/Aids Legal Services Alliance, Inc.(213)201-1640          Los Angeles County        (800)433-6251
Legal Aid Foundation of Los Angeles  (213)640-3881

All deputy clerks are prohibited by law from giving legal advice to litigants or assisting
them in filling out court forms, including forms provided by the court.

During the first 60 days from the date of filing, the case file may only be reviwed by the
following persons:
   1. Any party listed in the action.
   2. An attorney for one of the parties.
   3. Any other person who provides the clerk:
      a. Name of at least one plaintiff and one defendant in the action and the address,
including any applicable apartment, unit, or space number of the subject premises.
      b. The name of one of the parties in the action or the case number and can establish through
proper identification that (s)he lives at the subject premises.

Persons who do not meet the requirements described above cannot access the court index, register of
actions, or other court records until 60 days after the complaint is filed, except pursuant to an ex
parte order upon a showing of good cause.

WARNING:  Only attorneys or registered assistants are permitted to advise or assist you with filling
out forms. Assistants must be registered and bonded. The assistant's registration number and county
of registration must be listed on the documents they prepare. (Business & Professions Code section
6400) Ask to see proof of registration and bonding. DO NOT USE UNREGISTERED LEGAL ASSISTANTS.

## CERTIFICATE OF MAILING
I, the below-named Executive Officer/Clerk of the Los Angeles Superior Court, hereby certify that I
am not a party to the cause herein, and that I served a copy of this Notice of Unlawful Detainer
(Eviction) on this date upon each party or counsel named and to "All Occupants" at the subject
premises by depositing in the United States mail at the Courthouse in _____, California,
one copy of the notice in a separate sealed envelope to each address as shown with postage thereon
fully prepaid.

                                    JOHN A. CLARKE, Executive Officer/Clerk

Dated:   9/23/11                    By:  Greg C. Drapac, Deputy Clerk

## NOTICE OF UNLAWFUL DETAINER (EVICTION)

LACIV 002 (Rev.08/06)
LASC Approved 04-05                                              Code Civ. Proc.
N                                                          §§ 1161.2, 1161.2(c)

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

ORIGINAL FILED

Northwest District

MAR 2 0 2013

LOS ANGELES
SUPERIOR COURT

COURTHOUSE ADDRESS:
NORTHWEST DISTRICT SUPERIOR COURT
6230 SYLMAR AVENUE, ROOM 107, VAN NUYS, CA 91401

PLAINTIFF:

DEFENDANT:

## NOTICE OF CASE MANAGEMENT CONFERENCE

CASE NUMBER:
LC100069

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing to all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

DATE: 8/7/13    Time: 8:30 A.M.    Dept: NW"T"    Room: 600

A completed Case Management Statement must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record pursuant to CRC 3.725 (b).

You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference the Court may make pretrial orders including the following: an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order dismissing fictitious/unnamed defendants; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (GC 68600 et. seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions (including dismissal of the case, striking of the answer and payment of money), pursuant to LASC Local Rules Chapter 3.10, CCP Sections 177.5, 583.150, 586.360 and 583.420 and GC Section 68608 (b).

Date: MAR 2 0 2013    JOHN A. CLARKE

_____
Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in ___Van Nuys___, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☑ by personally giving the party notice upon filing of the complaint.

Date: MAR 2 0 2013    JOHN A. CLARKE

_____

John A. Clarke, Executive Officer/Clerk

by _____, Deputy Clerk.
Kim Garcia

CIV    NOTICE OF CASE MANAGEMENT CONFERENCE    CRC 212, LOCAL RULE 7

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### FOR THE COUNTY OF LOS ANGELES

| | CASE NUMBER | FILE STAMP |
|---|---|---|
| PLAINTIFF(S)/PETITIONER(S) | **NOTICE OF**<br><br>**CASE ASSIGNMENT** | |
| DEFENDANT(S)/RESPONDENT(S) | | |

TO THE PLAINTIFF(S) AND THE ATTORNEY OF RECORD:

YOU ARE HEREBY NOTIFIED THAT THE ABOVE MATTER HAS BEEN ASSIGNED FOR ALL PURPOSES,

INCLUDING TRIAL, TO *JUDGE MARIA E. STRATTON* , PRESIDING IN *DEPARTMENT* **NW-T,** IN THE SUPERIOR

COURT, LOCATED AT *6230 SYLMAR AVENUE, VAN NUYS, CA 91401*

_____

Hon. Richard Kirschner, Supervising Judge

### CERTIFICATE OF SERVICE

☑ I am not a party to the within action, and I certify that I personally served a true copy of the above notice to the plaintiff or his attorney of record by delivering the copy to the designated representative/attorney service at the time of filing of the original complaint.

☐ I am not a party to the within action, and I certify that I personally served a true copy of the above notice to the plaintiff or his attorney of record by delivering the copy in person this date to counsel for plaintiff or plaintiff in pro per.

☐ I am not a party to the within action, and I certify that I served a true copy of the above notice to the plaintiff or his attorney of record by depositing in the United States mail at the courthouse in ___Van Nuys___ , California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

[                    ]          [                    ]

[                    ]          [                    ]

MAR 2 0 2013   **JOHN A. CLARKE**
A CORPORATION MUST BE
REPRESENTED BY A LICENSED
CALIFORNIA ATTORNEY

JOHN A. CLARKE, Executive Officer/Clerk
of the Superior Court, County of Los Angeles

Date:_____

By: _____ , Deputy

Kim Garrison