**Hearing Date: December 17, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: December 6, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

| | |
|---|---|
| MORRISON & FOERSTER LLP | SEVERSON & WERSON P.C. |
| 1290 Avenue of the Americas | One Embarcadero Center, Suite 2600 |
| New York, New York 10104 | San Francisco, CA 94111 |
| Telephone:    (212) 468-8000 | Telephone: (415) 398-3344 |
| Facsimile:    (212) 468-7900 | Facsimile: (415) 956-0439 |
| Gary S. Lee | Donald H. Cram *(admitted pro hac vice)* |
| Norman S. Rosenbaum | |
| Melissa A. Hager | |
| Jonathan M. Petts | |

*Counsel for the Debtors and*
*Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------
)
In re:                                              )    Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,                   )    Chapter 11
                                                    )
                          Debtors.                  )    Jointly Administered
                                                    )
-----------------------------------------------------------------------

**DEBTORS' OBJECTION TO CLAIM NO. 5420**
**OF VACHAGAN ABED-STEPHEN AND SUSIE ABED-STEPHEN**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 2

JURISDICTION, VENUE, AND STATUTORY PREDICATE .................................................. 3

BACKGROUND .......................................................................................................................... 3

    A.    The Chapter 11 Cases ................................................................................................ 3

    B.    The Claimants' Relationship with the Debtors .................................................... 5

    C.    The Claimants' Pre-petition Litigation Against the Debtors ............................... 7

        A.    *Abed-Stephen I* .................................................................................. 7

        B.    *Abed-Stephen II* ................................................................................. 8

    D.    The Proof of Claim and Response .................................................................... 10

RELIEF REQUESTED ............................................................................................................ 11

OBJECTION ............................................................................................................................. 12

    A.    The Proof of Claim and Response Fail to State a Basis for Liability
        Against the Debtors ..................................................................................... 13

    B.    The Complaint Fails to State a Basis for Liability Against the
        Debtors ......................................................................................................... 18

    C.    The Proof of Claim Is Not Supported by Sufficient Documentation ....... 23

NOTICE ................................................................................................................................... 24

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abed-Stephen v. First Federal Bank of Cal.*,
2010 WL 1266833 (C.D. Cal. March 30, 2010) ........................................................................8

*Anaya v. Advisors Lending Group*,
2009 WL 2424037 (E.D. Cal. Aug. 5, 2009) ..........................................................................17

*Armstrong Petroleum Corp. v. Tri Valley Oil & Gas Co.*,
116 Cal. App. 4th 1375 (2004) ...............................................................................................16

*Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*,
178 B.R. 222 (B.A.P. 9th Cir. 1995), *aff'd sub nom.*, *Ashford v. Naimco, Inc. (In re
Consolidated Pioneer Mortgage Entities)*, 91 F.3d 151 (9th Cir. 1996) ...............................23

*Banner Entertainment, Inc. v. Superior Court of Los Angeles County*,
62 Cal. App. 4th 348 (1998) ...................................................................................................16

*Barroso v. Ocwen Loan Servicing, LLC*,
208 Cal. App. 4th 1001 (2012) ...............................................................................................17

*Batt v. City & County of San Francisco*,
155 Cal. App. 4th 65 (2007) .....................................................................................................9

*Bergman v. Bank of America, N.A.*,
2013 WL 5863057 (N.D. Cal. Oct. 23, 2013) .........................................................................15

*Calvo v. HSBC Bank USA, N.A.*,
199 Cal. App. 4th 118 (2011) .................................................................................................21

*District of Columbia Court Appeals v. Feldman*,
460 U.S. 462 (1983) ................................................................................................................18

*Domarad v. Fisher & Burke, Inc.*,
270 Cal. App. 2d 543 (1969) ..................................................................................................21

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
544 U.S. 280 (2005) ................................................................................................................19

*Feinberg v. Bank of New York (In re Feinberg)*,
442 B.R. 215 (Bankr. S.D.N.Y. 2010) ............................................................................12, 24

*Fontenot v. Wells Fargo Bank, N.A.*,
198 Cal. App. 4th 256 (2011) .........................................................................................15, 22

i

*Girard v. Miller*,
214 Cal. App. 2d 266 (1963) ...............................................................................9

*Gomes v. Countrywide Home Loans, Inc.*,
192 Cal. App. 4th 1149 (2011) ...........................................................................22

*Grill v. BAC Home Loans Servicing LP*,
2011 WL 127891 (E.D. Cal. Jan. 14, 2011) .......................................................17

*Hale v. Harney*,
786 F.2d 688 (5th Cir. 1986) ..............................................................................19

*Hoblock v. Albany County Board of Elections*,
422 F.3d 77 (2d Cir. 2005)............................................................................18, 19

*In re Abboud*,
237 B.R. 777 (10th Cir. B.A.P.1999) ..................................................................18

*In re Adelphia Communications Corp.*,
2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) .................................12

*In re Allegheny International, Inc.*,
954 F.2d 167 (3d Cir. 1992)...........................................................................12, 23

*In re DJK Residential, LLC*,
416 B.R. 100,106-107 (Bankr. S.D.N.Y. 2009).................................................22

*In re Hess*,
404 B.R. 747 (Bankr. S.D.N.Y. 2009).................................................................12

*In re Minbatiwalla*,
424 B.R. 104 (Bankr. S.D.N.Y. 2010) (Glenn, J.)...............................................23

*In re Oneida Ltd.*,
400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, *Peter J. Solomon Co., L.P. v.
Oneida Ltd.*, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) ...................12

*In re Porter*,
374 B.R. 471 (Bankr. D. Conn. 2007) ............................................................23, 24

*In re Robinson*,
265 B.R. 722 (6th Cir. B.A.P. 2001)....................................................................18

*In re Rockefeller Center Properties*,
272 B.R. 524 (Bankr. S.D.N.Y. 2000)..................................................................12

*In re W.R. Grace & Co.*,
346 B.R. 672 (Bankr. D. Del. 2006) ....................................................................12

ii

*Jenkins v. JP Morgan Chase Bank, N.A.*,
216 Cal. App. 4th 497 (2013) ................................................................5

*Kachlon v. Markowitz*,
168 Cal. App. 4th 316 (2008) ..............................................................14

*Lopez v. Equifirst Corp.*,
2009 WL 3233912 (E.D. Cal. Oct. 2, 2009) .......................................17

*Milyakov v. JP Morgan Chase, N.A.*,
2011 U.S. Dist. LEXIS 99152 (N.D. Cal., Sept. 2, 2011) ...............13, 14

*Nool v. HomeQ Servicing*,
653 F. Supp. 2d 1047 (E.D. Cal. 2009)................................................22

*O'Neil v. Spillane*,
45 Cal. App. 3d 147 (1975) .................................................................22

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1985)................................................................22

*Pantoja v. Countrywide Home Loans, Inc.*,
640 F. Supp. 2d 1177 (N.D. Cal. 2009) ..............................................17

*Parcray v. Shea Mortgage Inc.*,
2010 WL 1659369 (E.D. Cal. 2010).....................................................21

*Reusser v. Wachovia Bank, N.A.*,
525 F.3d 855 (9th Cir. Or. 2008) ...................................................18, 19

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923)............................................................................18

*Rossberg v. Bank of America, N.A.*,
219 Cal. App. 4th 1481 (2013) .............................................................5

*Southcott v. Pioneer Title Co.*,
203 Cal. App. 2d 673 (1962) ..............................................................13

*Stamas v. County of Madera*,
2010 WL 2556560 (E.D. Cal. June 21, 2010) ................................14, 15

*Stockwell v. Barnum*,
7 Cal. App. 413 (2d Dist. 1908)..........................................................21

*Sumner Hill Homeowners' Association, Inc. v. Rio Mesa Holdings, LLC*,
205 Cal. App. 4th 999 (2012) .............................................................15

iii

*Vanston Bondholders Protective Committee v. Green*,
     329 U.S. 156 (1946) ................................................................................... 13

*Washington v. Wilmore*,
     407 F.3d 274 (4th Cir. 2005) .................................................................. 18

*Worldwide Church of God v. McNair*,
     805 F.2d 888 (9th Cir. 1986) .................................................................. 19

*Zakaessian v. Zakaessian*,
     70 Cal. App. 2d 721 (1945) ..................................................................... 21

## STATUTES

11 U.S.C. § 502(a) ............................................................................................ 11

11 U.S.C. § 502(b)(1) ....................................................................................... 12

Cal. Code Civ. Proc. § 430.30(a) ...................................................................... 8

California Civil Code § 2923.6 .......................................................................... 17

California Civil Code § 2924 ............................................................................... 5

California Civil Code § 3412 ............................................................................. 20

## OTHER AUTHORITIES

12 CFR 226.23(a)(3) ......................................................................................... 22

Fed. R. Bankr. P. 3001(c)(1) ............................................................................ 23

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

Residential Capital, LLC ("ResCap") and its affiliated debtors (collectively, the

"Debtors") in the above-captioned Chapter 11 cases (the "Chapter 11 Cases") hereby file this

objection (the "Objection") seeking to disallow and expunge without leave to amend proof of

claim no. 5420 (the "Proof of Claim") filed by Vachagan Abed-Stephen and Susie Abed-Stephen

(the "Claimants") against Debtors ResCap and GMAC Mortgage, LLC ("GMACM")[1] in the face

amount of $1,750,000, pursuant to section 502(b) of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), on the grounds that the Proof of Claim: (a) fails to state a basis for liability

against the Debtors, and (b) lacks sufficient documentation to support an alleged claim against

the Debtors.[2]  The Debtors seek entry of an order substantially in the form annexed hereto as

Exhibit 1 (the "Proposed Order") granting the relief they have requested.  In support of the

Objection, the Debtors submit the declaration of Lauren Graham Delehey, Chief Litigation

Counsel in ResCap's Legal Department (the "Delehey Declaration"), attached hereto as Exhibit

2, the declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to the Debtors

(the "Rosenbaum Declaration"), attached hereto as Exhibit 3, and the declaration of Robert D.

Nosek of SilvermanAcampora LLP as Special Counsel for Borrower Issues ("Special Counsel")

to the Official Committee of Unsecured Creditors (the "Nosek Declaration"), attached hereto as

Exhibit 4.

---

[1]  Although Claimants must file separate claims against each Debtor against which they assert a claim, the Claimants filed one single claim against ResCap and GMACM.  Thus, the Proof of Claim itself is facially invalid and subject to expungement on that basis alone.  Likewise, there is no basis whatsoever for any claim against ResCap. Notwithstanding these defects in the Proof of Claim, the Debtors here address the merits of the Proof of Claim.

[2]  The Debtors reserve all of their rights to object on any other basis to the Proof of Claim not set forth in this Objection, and the Debtors reserve all of their rights to amend this Objection should any further bases come to light.

## PRELIMINARY STATEMENT

1.      The Debtors are faced with a largely incomprehensible Proof of Claim for $1,750,000 filed by pro se borrowers who sought to invalidate the deed of trust on their residence in a pre-petition suit against the Debtors in California state court, which has been dismissed with prejudice.  The Proof of Claim contains no stated basis or explanation for the Debtors' purported liability.  And the Claimants' response to the Debtors' request for more information makes only three intelligible allegations:

- the Debtors wrongfully filed a notice of default with respect to the Claimants' loan;
- the Debtors wrongfully filed an assignment of the Claimants' deed of trust; and
- the Debtors ignored the terms of the Claimants' loan modification or ignored the Claimants' application for a loan modification.

2.      The Debtors construe the Claimants' first two allegations as claims for slander of title, both of which fail under California law because, among other reasons, the notice of default and the assignment of the deed of trust were not false publications.  The Debtors construe the Claimants' third allegation as a breach of contract claim, which also fails because the Claimants never received a loan modification from the Debtors, nor have the Claimants explained why they were eligible for one in light of their failure to make the requisite loan payments or to provide a workout package containing updated financial information.

3.      Even if the Debtors look outside the Proof of Claim to the Claimant's complaint against the Debtors filed in California state court, the Proof of Claim still fails to establish a valid claim against the Debtors because (i) this Court's adjudication of the Complaint's causes of action is barred by the Rooker-Feldman doctrine, and (ii) the causes of action are meritless under applicable law for the reasons stated by the California state

2

court in its decision dismissing the complaint with prejudice.[3]  Thus, based on the failure of

the Claimants to state any viable claim for relief (much less provide supporting

documentation for such a claim), the Proof of Claim should be expunged in its entirety.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

4.      This Court has jurisdiction over this Objection under 28 U.S.C.

§ 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before

this Court under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

**A.      The Chapter 11 Cases**

6.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a

voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The

Debtors are managing and operating their businesses as debtors-in-possession pursuant to

Bankruptcy Code sections 1107(a) and 1108.[4]

---

[3] As noted below, that decision is currently being appealed by the Claimants.

[4] The Debtors were formerly a leading residential real estate finance company indirectly owned by Ally Financial Inc., which is not a Debtor.  Prior to the closing of the Debtors' Court-approved asset sales, the Debtors and their non-debtor affiliates operated the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6].

3

7.      On the Petition Date, the Debtors filed a motion [Docket No. 61] (the "Sale Motion") to approve the sale of the Debtors' servicing and origination platforms (the "Platform Assets") and to establish procedures in connection therewith.

8.      On October 23, 2012 and October 24, 2012, the Debtors successfully conducted an auction for the sale of the Platform Assets at which Ocwen emerged as the prevailing bidder.  At a hearing held on November 19, 2012, this Court approved, on the record, the Debtors' motion to sell the Platform Assets to Ocwen.  Thereafter, on November 21, 2012, this Court entered an order approving the sale of the Platform Assets to Ocwen (the "Ocwen Sale") [Docket No. 2246].  The Ocwen Sale closed on February 15, 2013.

9.      On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors [Docket No. 102] (the "Creditors' Committee").

10.     On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order").  Based on substantial input from counsel to the Creditors' Committee and Special Counsel, the Procedures Order includes specific protections for Borrowers[5] and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").

11.     The Borrower Claim Procedures generally provide, *inter alia*, that prior to objecting to Borrower Claims, the Debtors must (i) consult with Special Counsel and provide Special Counsel with a list of the claims at issue and (ii) review their books and records to determine if any amounts are owed to such Borrowers.  For Borrower Claims

---

[5] As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Procedures Order [Docket No. 3294].

filed with no or insufficient documentation, prior to filing an objection, the Debtors, in

cooperation with Special Counsel, must also send each such Borrower claimant a letter, with

notice to Special Counsel, requesting additional documentation in support of the purported

claim. *See* Procedures Order at 4.

**B.    The Claimants' Relationship with the Debtors**

12.    The Claimants were Borrowers under a loan (the "Loan") evidenced by

a note in the principal amount of $920,000 executed on April 12, 2006 in favor of First

Federal Bank of California ("First Federal"), which was secured by a deed of trust (the

"Deed of Trust," attached to the Delehey Declaration as Exhibit A) on the Claimants' home

located at 1606 Glenmont Drive, Glendale, California (the "Glendale Property").  Delehey

Declaration ¶ 3.  The investor of the Loan is Wells Fargo.  *Id.*  On May 22, 2006, First

Federal assigned the Deed of Trust to GMACM; the assignment of the Deed of Trust was

recorded on October 30, 2008.  *Id.*

13.    GMACM began servicing the Loan on December 20, 2006.  *Id.* at ¶ 4.

As a result of the Claimants' failure to keep current on their monthly payments on the Loan,

however, GMACM substituted Executive Trustee Services, LLC, dba ETS Services, LLC

("ETS") as trustee to commence a nonjudicial foreclosure on the Glendale Property.[6]  *Id.*

---

[6] Nonjudicial foreclosures in California are governed by a comprehensive statutory scheme.  "Sections 2924 through 2924k [of the California Civil Code] set forth a 'comprehensive framework for the regulation of a *nonjudicial* foreclosure sale pursuant to a power of sale contained in a deed of trust.'"  *Rossberg v. Bank of Am., N.A.*, 219 Cal. App. 4th 1481, 1492 (2013) (quoting *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 508 (2013)). "To initiate the nonjudicial foreclosure process, the 'trustee, mortgagee, or beneficiary, or any of their authorized agents,' must record a notice of default and election to sell."  *Id.* (quoting *Jenkins*, 216 Cal. App. 4th at 509).  "The 'mortgagee, trustee, or other person authorized to take the sale' must then wait three months before proceeding with the sale."  *Id.* (quoting Cal. Civ. Code § 2924(a)(3)).  "After the three-month period has elapsed, a notice of sale must be published, posted, recorded and mailed 20 days before the foreclosure sale."  *Id.* (quoting *Jenkins*, 216 Cal. App. 4th at 509.)  "The property must be sold at a public auction to the highest bidder, but before the sale occurs the statutory scheme provides the trustor-debtor with several opportunities to cure the default and avoid losing the property."  *Id.*  "'The purposes of this comprehensive scheme are threefold: (1) to provide the [beneficiary-creditor] with a quick, inexpensive and efficient remedy against a defaulting [trustor-debtor]; (2) to protect the [trustor-
(Cont.'d)

ny-1107744

12-12020-mg    Doc 5786    Filed 11/15/13    Entered 11/15/13 15:48:24    Main Document
Pg 12 of 32


GMACM recorded a Substitution of Trustee in the Recorder's Office of Los Angeles

County on October 17, 2008, naming ETS as the substituted trustee.  *Id.*  On the same date,

ETS recorded a Notice of Default with respect to the Glendale Property.  *Id.*

14.    On February 9, 2009, the Claimants submitted a workout package to

the Debtors seeking a loan modification (the "February Workout Package").  *Id.* at ¶ 5.  The

Loan was approved for a series of two "Forbearance Plans," by which the Debtors orally

agreed to forebear on foreclosing on the Glendale Property to afford the Claimants an

opportunity to show their willingness and ability to make monthly payments on the account

of approximately $3,000.  *Id.*[7]  The Claimants were informed that once the trial plan was

completed the loan would be reviewed for a permanent loan modification.  *Id.*

15.    On April 15, 2009, the Debtors mailed a Home Affordable

Modification Program ("HAMP") solicitation package to the Claimants, but the Claimants

never completed the package.  *Id.* at ¶ 6.  On seven occasions between June and October of

2009, the Debtors advised the Claimants and authorized third parties that a new workout

package needed to be submitted because the paystub information in the February Workout

---

debtor] from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.'  Significantly, '[n]onjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, [n]either appraisal nor judicial determination of fair value is required, and the debtor has no postsale right of redemption.'"  *Id.* (quoting *Jenkins*, 216 Cal. App. 4th at 509–10).

[7] For a brief period of time in 2009 and 2010 after the Home Affordable Modification Program ("HAMP") was announced, the Debtors implemented Forbearance Plans as a means to address the high volume of interest in loan modifications from Borrowers. The Forbearance Plans were offered by customer service representatives of the Debtors' call center, among other reasons, to allow time for the Debtors' loss mitigation department to review the workout package submitted by the Borrower, or to allow time for the Borrower to submit a complete workout package.  The payment amount of a Forbearance Plan was determined by the income the Borrower provided over the telephone. The Debtors' call center would set the monthly payment at 31% of the Borrower's stated income. A Forbearance Plan would be established only if the Borrower's account and stated information met all eligibility requirements consistent with HAMP guidelines. Forbearance Plans were oral agreements and there was no signature required of a Borrower to consummate the plan.  Failure to complete a Forbearance Plan did not necessarily preclude the Borrower from subsequently obtaining a HAMP modification or a traditional modification.  *Second Supplemental Declaration of Deanna Horst in Support of Debtors' Thirtieth Omnibus Claim Objection (No Liability Borrower Claims – Books and Records)* [Docket No. 5548-1], at ¶ 7.

6

ny-1107744

Package was over 90 days old and could no longer be used for loan modification review. *Id.*
The Debtors have no record of the Claimants submitting a new workout package. *Id.*

16.    Under the Forbearance Plans, the Claimants made six payments
totaling $18,200 between February and September of 2009 but failed to make the payment
due October 26, 2009 in the amount of $3,100. *Id.* at ¶ 7. Accordingly, ETS recorded a
Notice of Trustee's Sale on February 1, 2010.[8]

17.    By that point, however, the notice of default had become well over a
year old. *Id.* at ¶ 8. As a result, out of an abundance of caution, the Debtors rescinded the
notice of default. *Id.* Following the Ocwen Sale, the Loan's servicing rights were
transferred to Ocwen on February 15, 2013. *Id.* At the time of the transfer, the Claimants
continued to reside in the Glendale Property and their account was in active foreclosure,
having been in default since July 1, 2008. *Id.*

**C.    The Claimants' Pre-petition Litigation Against the Debtors**

      **A.    _Abed-Stephen I_**

18.    In September of 2009, the Claimants initiated an action in the Superior
Court of California (Los Angeles County) (the "Superior Court") against GMACM and
ETS, as well as other non-debtor defendants ("*Abed-Stephen I*"). *Id.* at ¶ 9. *Abed-Stephen I*
was subsequently removed to the U.S. District Court for the Central District of California
(the "District Court"). *Id.* The Claimants filed a first amended complaint shortly thereafter.
After the District Court dismissed the Claimants' first amended complaint for failure to state
a claim, the Claimants ultimately filed a second amended complaint against GMACM and

---

[8] From late 2009 to the present, the Claimants have made no payments on their outstanding mortgage loan. They
have continued to occupy the premises gratuitously, while filing a steady stream of litigation against every
conceivable party involved in any stage of their Loan.

7

ETS in which the Claimants asserted 19 claims under both state and federal law.[9]  *Id.*  The

District Court granted the Defendants' motion to dismiss the Claimants' federal claims

because certain of the claims were barred by applicable statutes of limitations and the others

failed to state a claim under applicable law.  *Abed-Stephen v. First Fed. Bank of Cal.*, 2010

WL 1266833, at *2-3 (C.D. Cal. March 30, 2010).  The District Court declined to exercise

supplemental jurisdiction over the remaining state law claims and remanded the state law

claims to the Superior Court.  The Claimants ultimately voluntarily dismissed *Abed-Stephen*

*I* without prejudice in December of 2010.  Delehey Declaration ¶ 9.

### B.    *Abed-Stephen II*

19.    Approximately six months later, on June 29, 2011, the Claimants filed

a second action against GMACM and ETS in the Superior Court ("*Abed-Stephen II*"),

asserting eight state law causes of action.[10]  *Id.* at ¶ 10.  After GMACM demurred,[11] the

complaint was amended.  *Id.*  A second demurrer was filed, which the court sustained with

leave to replead.  *Id.*

---

[9] The causes of action in the second amended complaint of *Abed-Stephen I* were:  (1) Violation of the Home Ownership and Equity Protection Act, 15 U.S.C. § 1601 et seq.; (2) Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.; (3) Violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq.; (4) Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681; (5) Fraudulent Misrepresentation; (6) Breach of Fiduciary Duty; (7) Breach of Trust; (8) Unjust Enrichment; (9) Civil Conspiracy; (10) Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq.; (11) Quiet Title; (12) Violation of California Business and Professions Code § 17200; (13) Violation of the California Uniform Commercial Code; (14) Usury; (15) Violation of California Financial Code § 4970 et seq.; (16) Violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. and Civil Code § 1788 et seq.; (17) Slander of Title; (18) Violation of California Civil Code § 1632; and (19) Violation of California Civil Code § 1572.  The federal claims were causes of action 1, 2, 3, 4, 10, and 16 (in part).  The state law claims were the remaining causes of action (5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16 (in part), 17, 18, and 19).

[10] The eight causes of action in the original complaint in *Abed-Stephen II* were (1) Cancellation of Instruments; (2) Quiet Title; (3) Violation of California Civil Code § 2924; (4) Violation of California Civil Code § 2923.5; (5) Violation of California Business and Professions Code § 17200; (6) Demand for Accounting; (7) Fraud; and (8) Declaratory and Injunctive Relief.

[11] In California civil procedure, a demurrer is akin to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  It is a motion challenging whether the plaintiff stated a cause of action upon which relief can be granted. *See* Cal. Code Civ. Proc. § 430.30(a).

20.    On January 19, 2012, the Claimants filed the second amended

complaint in *Abed-Stephen II* (the "Complaint" attached to the Delehey Declaration as

Exhibit G), narrowing their causes of action to three. *Id.* at ¶ 11.  The first cause of action

seeks cancellation of the assignment of the Deed of Trust under California Civil Code §

3412.  *Id.*  The Complaint asserts that the assignment of Deed of Trust from First Federal to

GMACM is void because GMACM falsely purports to "maintain the status, authority or

capacity as 'owner'" when in fact "they are merely a servicer."  Complaint ¶ 26.  In

connection with the cancellation of instrument claim, the Claimants seek general and special

damages of at least $70,000, as well as punitive damages, for the "Defendants' willful and

wrongful conduct," Complaint ¶ 30, in "causing the [assignment of the Deed of Trust] . . . to

be prepared and/or recorded without a factual or legal basis for doing so," Complaint ¶ 28.

The Complaint's other two causes of action, a demand for an accounting and a declaratory

judgment that GMACM is only the servicer of the Loan and is not a lender or beneficiary of

it, seek purely remedial relief and are not stand-alone causes of action.  Delehey Declaration

¶ 11; *see Batt v. City & Cnty. of S.F.*, 155 Cal. App. 4th 65, 82 (2007) (holding that

accounting "is 'not an independent cause of action but merely a type of remedy' and an

equitable remedy at that"); *Girard v. Miller*, 214 Cal. App. 2d 266, 277 (1963) (upholding

trial court who refused to grant declaratory relief when plaintiff had alleged in separate

causes of action all of the facts upon which he relies for relief and they have been found

insufficient).

21.    On February 2, 2012, GMACM demurred to the three causes of action

in the Complaint.  Delehey Declaration at ¶ 12.  On or about April 4, 2012, the Superior

Court sustained the demurrer to each cause of action without leave to amend on the ground

that the Complaint failed to state sufficient facts to constitute a cause of action.  Demurrer

Decision, attached to the Delehey Declaration as <u>Exhibit H</u>.  On July 3, 2012, the Claimants

filed an appeal of the Superior Court's decision.  Delehey Declaration at ¶ 12.  After the

Petition Date, the Claimants' appeal was stayed by virtue of the Debtors' bankruptcy filings.

*Id.*

### D.      The Proof of Claim and Response

22.      On November 16, 2012, the Claimants filed the one-page Proof of

Claim against ResCap and GMACM in the face amount of $1,750,000.  Of that amount, the

Proof of Claim states that "$1,2223,221.89" (sic) is secured by the Glendale Property and $0

is unsecured.  There is no stated basis for the Debtors' purported liability in the Proof of

Claim.

23.      On or about June 11, 2013, after consulting with Special Counsel, the

Debtors sent a request letter to the Claimants, requesting additional information and

documentation in support of the Proof of Claim (the "<u>Request Letter</u>").  A true and correct

copy of the Request Letter is attached hereto as <u>Exhibit 5</u>.  The Request Letter states that the

Claimants must respond within 30 days with an explanation setting forth the legal and

factual reasons why the Claimants believe they are owed money or are entitled to other

relief from the Debtors.  In addition, the Claimants must provide copies of all supporting

documents that they believe support the basis for the Proof of Claim.  *See* Request Letter at

1.  The Request Letter further provides that if the Claimants fail to provide an explanation

and the supporting documentation, the Debtors may file a formal objection to the Proof of

Claim, seeking to have the Proof of Claim disallowed and permanently expunged.  *Id.*

10

24.     On or about June 19, 2013, the Claimants responded to the Request

Letter (the "Response").  A true and correct copy of the Response, as well as the Proof of

Claim, is attached hereto as Exhibit 6.  The Response alleges:

- "GMAC had caused to be filed for record a notice of default in the County records against my title interests. . . .  This set off a series of events that has permanently damaged my credit scores, my ability to obtain credit fairly, and my existing quality of life as a whole."  Response at ¶¶ 2-3.  "In [*Abed-Stephen II*], in court and pursuant to court transcripts, GMAC admitted under oath that my loan was never in a default, as had been asserted by them."  *Id.* at ¶ 1.

- "GMAC also caused to be filed within the County records an assignment of my deed of trust to which they had no right, title or interest whatsoever. . . . [T]his [was a] crippling document against my title interests. . . .  It has also damaged me in the same manner as described above, ruining my credit, my ability to obtain credit and further damages that are too voluminous to name individually herein."  *Id.* at ¶¶ 4-5.

- "I have paid $19,000 to the GMAC for Modification in 2009 with verification with 1099.[12]  GMAC completely ignored the modification."  *Id.* at ¶ 7.

25.     Finally, the Response concludes: "I am entitled to the maximum

amount of compensation based upon my expenses that were totally unnecessary because of

the actions of GMAC."  *Id.* at 3.  In particular, the Response notes that "I have spent

thousands of dollars on legal research and legal fees that exceed $10,000.00."  *Id.* at ¶ 6.

The Claimants failed to provide supporting documents for these purported expenses.

**RELIEF REQUESTED**

26.     The Debtors file this Objection, pursuant to Bankruptcy Code section

502(b) and Bankruptcy Rule 3007, and seek entry of an order, substantially in the form

---

[12] The Claimants appear to be referring to a 1098 tax form, which lists all mortgage payments that a taxpayer makes during a calendar year.

ny-1107744

annexed hereto as <u>Exhibit 1</u>, disallowing and expunging the Proof of Claim from the Debtors' claims register in its entirety.

## OBJECTION

27.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, *Peter J. Solomon Co., L.P. v. Oneida Ltd.*, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); *In re Adelphia Commc'ns Corp.*, 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). The burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992); *see also Feinberg v. Bank of N.Y. (In re Feinberg)*, 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010) (stating the claimant "bears the burden of persuasion as to the allowance of [its] claim").

28.     Further, Bankruptcy Code section 502(b)(1) provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1). Whether a claim is allowable "generally is determined by applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006). "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y.

12

2009) (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161
(1946)).

29.    Here, the Proof of Claim fails to establish entitlement to relief under
applicable law, whether the Debtors construe the Proof of Claim solely based on the Proof
of Claim and the Response or as also incorporating the Complaint by reference.  In addition,
the Proof of Claim should be expunged because it is not supported by sufficient
documentation.

**A.    The Proof of Claim and Response Fail to State a Basis for Liability Against the Debtors**

30.    In substance, the Response contains three intelligible allegations: (1)
the Debtors wrongfully filed a notice of default against the Loan, (2) the Debtors wrongfully
filed an assignment of the Deed of Trust from First Federal to GMACM, and (3) the Debtors
ignored the terms of the Claimants' loan modification or ignored the Claimants' application
for a loan modification.  Even construing these allegations liberally, none of them
establishes a valid claim against the Debtors.

**1.    No Claim for Slander of Title**

31.    The Debtors construe the Response's first two allegations—wrongful
filing of both the notice of default and the assignment of the Deed of Trust—as asserting a
cause of action for slander of title.[13]  Under California law, "'[s]lander of title' is a tortious
injury to property resulting from unprivileged, false, malicious publication of disparaging
statements regarding the title to property owned by plaintiff, to plaintiff's damage."
*Milyakov v. JP Morgan Chase Bank*, 2011 U.S. Dist. LEXIS 99152, at *5 (N.D. Cal., Sept.
2, 2011), quoting *Southcott v. Pioneer Title Co.*, 203 Cal. App. 2d 673, 676 (1962).

---

[13] Slander of title was one of the state law claims voluntarily dismissed by the Claimants in *Abed-Stephen I* without prejudice.

"Slander of title has four elements:  (1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." *Stamas v. Cnty. of Madera*, 2010 WL 2556560, at *6 (E.D. Cal. June 21, 2010).

32.    The Claimants' allegation that the Debtors wrongfully recorded a notice of default on the Glendale Property fails to support a slander of title claim for two reasons.  First, the notice was not a false publication; the Claimants had defaulted on the Loan.[14]  Delehey Declaration ¶ 4; *see also* Deed of Trust at ¶ 24 (authorizing the lender and its successors and agents to record a notice of default in the event Claimants fell behind on their loan payments).  Second, a trustee's issuance of a notice of default in a nonjudicial foreclosure is subject to qualified privilege under California law and thus cannot support a slander of title claim, absent establishing that the notice was issued with actual malice. *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333 (2008).  Because ETS was acting with qualified privilege in issuing the notice of default and the Claimants have not alleged that the notice was issued with actual malice, the Claimants cannot meet the "unprivileged" element of a slander of title claim.  *See Milyakov*, 2011 U.S. Dist. LEXIS 99152, at *6 (dismissing slander of title claim based on issuance of notice of default).

33.    As to the Claimants' arguments that the recorded assignment of the Deed of Trust to GMACM amounted to slander of title or was otherwise wrongful,[15]

---

[14] The Loan has been in default since July 1, 2008.  Delehey Declaration ¶ 8.  The Claimants' allegation in the Response that GMACM "admitted" in court transcripts in *Abed-Stephen II* that the Loan was never in default is inexplicable.  *See* Exhibit I to Delehey Declaration, *Abed-Stephen II* Hearing Transcripts.  Alternatively, to the extent the Claimants are arguing that the Debtors' rescission of the Notice of Default was an admission that the Notice of Default was improper, they are mistaken.  The Notice of Default was only rescinded by the Debtors out of an abundance of caution because it was over two years old.  Moreover, the Claimants have never alleged that they were (or are) current on their mortgage payments.

[15] The Claimants refer to the assignment of the Deed of Trust to GMACM as a "crippling document against [their] title interests."  Response ¶ 4.

California courts have uniformly rejected borrowers' attempts to challenge corporate

assignments of promissory notes and associated deeds of trust.[16]  Furthermore, the

Claimants' allegation that the Deed of Trust was wrongfully assigned to GMACM also fails

to support a slander of title claim because the assignment was not a false publication, *see*

Delehey Declaration at ¶¶ 3-4, nor did the assignment cause the Claimants "direct and

immediate pecuniary loss," *Stamas*, 2010 WL 2556560, at *6, which elements are necessary

to prove slander of title.

34.    Although attorneys' fees and litigation costs are recoverable as

pecuniary damages in slander of title claims, *Sumner Hill Homeowners' Assn., Inc. v. Rio

Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012), the Claimants' inability to prove,

let alone allege facts sufficient to support, a claim for slander of title (or for any other cause

of action) in the Proof of Claim or the Response precludes the Claimants' requested remedy

of attorneys' fees and legal costs.

## 2.    No Claim for Breach of Contract

35.    The Debtors construe the Response's third allegation—that the

Claimants "paid $19,000 to the GMAC for Modification in 2009" and "GMAC completely

ignored the modification" (Response at ¶ 7)—as a claim for breach of contract: either a

breach of a loan modification agreement or a breach of a contractual obligation to provide

the Claimants with a loan modification.

---

[16] As one seminal case explained: "Even if [deed of trust beneficiary] MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment . . .  Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor.  As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note."  *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 272 (2011); *see also Bergman v. Bank of Am., N.A.*, 2013 WL 5863057, at *8 (N.D. Cal. Oct. 23, 2013) (explaining that under *Fontenot*, an assignment purportedly without authority "did not cause Plaintiffs to suffer pecuniary damage, because the true victim would be the original lender").

36.    To state a claim for breach of contract, the plaintiff must plead: 1) *the existence of the contract*; 2) plaintiff's performance or excuse for nonperformance of the contract; 3) defendant's breach of the contract; and 4) resulting damages.  *Armstrong*

37.    *Petrol. Corp. v. Tri Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004).  It is well settled under California law "that there is no contract until there has been a meeting of the minds on all material points."  *Banner Entm't, Inc. v. Superior Court of L.A. Cnty.*, 62 Cal. App. 4th 348, 357–58 (1998) (emphasis removed).[17]

38.    Even construed liberally, the Claimants' allegations fail to sufficiently allege a binding contract between Claimants and GMACM regarding a loan modification.[18] The Claimants' payments totaling $18,200 under the Forbearance Plans in 2009 were not made under a loan modification agreement, nor were they consideration for obtaining a loan modification agreement.  The Claimants made those payments to obtain the Debtors' forbearance in foreclosing on the Glendale Property with the hope of ultimately obtaining a loan modification.  Delehey Declaration ¶¶ 4-7.  The Debtors made clear to the Claimants that a binding modification would not result unless and until the Claimants (1) made the required payments under the Forbearance Plans and (2) submitted a loan modification application with recent income statements.  *Id.* at ¶¶ 5-6; *see also* Deed of Trust at ¶ 33 (providing that the loan could not be modified except in writing).  The Claimants also failed to comply with both of these requirements.  *Id.* at ¶¶ 6-7.  The Claimants have failed to

---

[17] The Debtors incorporate by reference the legal analysis concerning denial of loan modification applications set forth in the *Debtors' Memorandum of Law in Further Support of Debtors' Thirtieth Omnibus Objection to Claims of Ron Bejarano (Claim No. 604) and Paul and Marge Pfunder (Claim No. 1430)* [Docket No. 5548], at pp. 5-10, 25-30.

[18] Debtor ETS, who merely served as foreclosure trustee, is not alleged to have played any role in loan modification negotiations.  It is unclear how ETS could have incurred liability for any contract claims.

provide (or even allege) any support to their position that the Debtors had an obligation to

provide the Claimants with a loan modification in light of these failures.[19]  California's

Civil Code "does not impose a duty on lenders to negotiate loan modifications."  *Lopez v.*

*Equifirst Corp.*, 2009 WL 3233912, at *3 (E.D. Cal. Oct. 2, 2009) (citing Cal. Civ. Code

§ 2923.6); *Anaya v. Advisors Lending Grp.*, 2009 WL 2424037, at *8 (E.D. Cal. Aug. 5,

2009); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1188 (N.D. Cal.

2009).  Nor have the Claimants alleged: (1) that the Debtors ever determined that the

Claimants had met the requirements of a loan modification, or (2) that the Debtors and the

Claimants ever executed a loan modification agreement.  As such, no binding contract has

been alleged.  *See Grill v. BAC Home Loans Servicing LP*, 2011 WL 127891, at *4 (E.D.

Cal. Jan. 14, 2011) ("Plaintiff has not alleged or provided exhibits (1) that [the servicer]

determined plaintiff had met the requirements [for a loan modification] or (2) that [the

servicer] sent plaintiff a loan modification with a new monthly payment that was then

executed by both plaintiff and [the servicer].  As such, no binding contract has been alleged

. . . .").  In the alternative, if the Claimants could allege that a contract was formed, they still

cannot assert a cause of action for breach of contract because they failed to perform when

they did not comply with the terms of the Forbearance Plans.  *See Barroso v. Ocwen Loan*

*Servicing, LLC*, 208 Cal. App. 4th 1001, 1014 (2012) (sustaining challenge to the pleadings

on a breach of contract cause of action where the borrower admittedly did not fully perform

because she did not sign and return the written agreement as required).

---

[19] Even if the Debtors did have such an obligation (which they did not), the Debtors complied with it by
communicating with the Claimants on numerous occasions for updated financial information necessary for the
Debtors' loan modification review, which the Claimants failed to provide.  Delehey Declaration ¶ 6.

39.     Thus, none of the allegations in the Response state a valid cause of action against the Debtors.

### B.     The Complaint Fails to State a Basis for Liability Against the Debtors

40.     Even if the Debtors look outside the four corners of the Proof of Claim and the Response to construe the Proof of Claim as asserting the causes of action in *Abed-Stephen II*'s Complaint, the Claimants still fail to establish a valid claim against the Debtors because (i) this Court's adjudication of the Complaint's causes of action is barred by the Rooker-Feldman doctrine, and (ii) the causes of action are meritless under applicable law for the same reasons set forth by the Superior Court in dismissing *Abed-Stephen II* with prejudice.

### 1.     <u>Rooker-Feldman Doctrine</u>

41.     The Rooker-Feldman doctrine is premised upon two United States Supreme Court decisions:  *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and D.C. *Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  The doctrine bars the exercise of federal court jurisdiction where the claims are "inextricably intertwined" with the claims adjudicated in a state court.  *Feldman*, 460 U.S. at 482, n.16.  Under the Rooker-Feldman doctrine, this Court cannot sit in the place of a court of appeal reviewing facts or determinations made by California state courts, particularly where there is a means of appeal expressly provided under state law.  *See Wash. v. Wilmore*, 407 F.3d 279, n.5 (4th Cir. 2005); *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005); *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858 (9th Cir. 2008).  *See also In re Robinson*, 265 B.R. 722 (B.A.P. 6th Cir. 2001) (applying Rooker-Feldman doctrine in context of objection to proof of claim); *In re Abboud*, 237 B.R. 777 (B.A.P. 10th Cir. 1999) (same).  Rooker-Feldman also may apply

18

"over a suit that is a *de facto* appeal from a state court judgment" because in such

circumstances, "the district court is in essence being called upon to review the state court

decision." *Reusser*, 525 F.3d at 859 (internal quotations omitted).

42.    In 2005, the United States Supreme Court squarely addressed the

principles of the Rooker-Feldman doctrine for the first time since the *Feldman* decision.

*See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005).  In *Exxon

Mobil*, the U.S. Supreme Court set forth the following rule of application for the doctrine:

"The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which

the doctrine acquired its name:  cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings commenced

and inviting district court review and rejection of those judgments." *Id*. at 284.

Accordingly, the *Exxon Mobil* test for applying the Rooker-Feldman doctrine can be divided

into the following four elements: "[1] cases brought by state-court losers [2] complaining of

injuries caused by state-court judgments [3] rendered before the district court proceedings

commenced and [4] inviting district court review and rejection of those judgments." *Id.*;

*Hoblock*, 422 F.3d 77.  Federal law favors application of the Rooker-Feldman doctrine even

where a state court judgment is not final.  *Worldwide Church of God v. McNair*, 805 F.2d

888, 893 (9th Cir. 1986) ("We agree with the Second and Fifth Circuits that the Feldman

doctrine should apply to state judgments even though state court appeals are not final."),

citing *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986) ("We hold no warrant to review

even final judgments of state courts, let alone those which may never take final effect

because they remain subject to revision in the state appellate system.").

43.     Insofar as the Proof of Claim asserts causes of action in the Complaint, the Proof of Claim satisfies all four elements of the Rooker-Feldman doctrine in that the Claimants filed the Proof of Claim notwithstanding the dismissal of the Complaint, the dismissal judgment was entered prior to the Petition Date, and the Claimants are now asserting the Proof of Claim with claims asserted in the Complaint in direct contrast to the state court ruling that dismissed the Complaint with prejudice.  In the Proof of Claim, the Claimants would be asking this Court to review, reject, and overturn the results of *Abed-Stephen II*.  However, the issue of GMACM's and ETS's liability has already been adjudicated by the Superior Court: they are not liable.  Notwithstanding the pending appeal of the dismissal judgment, the rights of the parties to *Abed-Stephen II* have become fixed; this is precisely the kind of litigation that is intended to be barred under Rooker-Feldman.  Accordingly, the Proof of Claim, to the extent it is based on allegations in the Complaint that was dismissed with prejudice, does not state a claim for which any Debtor is liable.

## 2.     No Liability Under Applicable Law

44.     Because the Proof of Claim only seeks damages and not equitable relief, only one of the Complaint's three causes of action is arguably relevant to the Proof of Claim.  That cause of action—cancellation of instrument—fails on the merits for the reasons set forth in the Superior Court's demurrer decision.[20]

45.     An action to cancel an instrument and remove a cloud on title is authorized by California Civil Code § 3412, which provides that:

---

[20] Though not relevant for purposes of fixing the amount of the Proof of Claim, the Complaint's other two causes of action seeking equitable relief—demand for accounting and declaratory judgment—also fail by virtue of the Complaint's inability to state a cause of action for cancellation of instrument.  *See* Demurrer Decision, at 4 ("Because Plaintiffs fail to allege any facts sufficient to constitute a cause of action for cancellation of written instrument, Plaintiffs' second cause of action for an accounting must fail. . . .  [B]ecause Plaintiffs' first cause of action must fail as a matter of law, Plaintiffs' third cause of action [declaratory judgement] must similarly fail.").

> A written instrument, in respect to which there is a reasonable apprehension that if
> left outstanding it may cause serious injury to a person against whom it is void or
> voidable, may, upon his application, be so adjudged, and ordered to be delivered
> up or canceled.

California Civil Code § 3412 (2013). *See Zakaessian v. Zakaessian*, 70 Cal. App. 2d 721, 725

(1945) (California Civil Code § 3412 "permits an action to cancel an instrument which is void or

voidable and the statement of the facts constituting a deed's invalidity constitutes a sufficient

allegation of a cause of action thereunder.").

46.    As the Superior Court noted, the Claimants predicate their claim for

cancellation of instrument in the Complaint on two distinct premises: "(1) that an

assignment of deed of trust must be recorded before foreclosure proceedings are initiated;

and (2) that [GMACM] is not in possession of the original promissory note and, therefore, is

not entitled to enforce the provisions of the Deed of Trust." Demurrer Decision, at 2, citing

Complaint ¶¶ 11-21.

47.    As the Superior Court found, the Claimants' first premise is incorrect

as a matter of law.  Because a deed of trust conveys title to the trustee, it is unnecessary to

record an assignment of the beneficial interest in a deed of trust under California law.

Demurrer Decision at 3, citing *Stockwell v. Barnum*, 7 Cal. App. 413, 417 (2d Dist. 1908);

*Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118 (2011).  As a result, an assignment

of deed of trust need not be recorded before foreclosure proceedings commence.  *See*

*Parcray v. Shea Mortg. Inc.*, 2010 WL 1659369, at *12 (E.D. Cal. 2010).  This is because

the assignment of the deed of trust had no material effect on the Abed-Stephens' payment

obligations or the state of title to the property.  The deed of trust is a mere incident of the

Abed-Stephens' promissory note.  *Domarad v. Fisher & Burke, Inc.,* 270 Cal. App. 2d 543,

553–54 (1969) (holding that a deed of trust securing such note is a "mere incident of the

21

debt it secures" with no separable, ascertainable market value).  And because "a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor."  *Fontenot*, 198 Cal. App. 4th at 272.

48.    The Claimants' second premise is equally misplaced because physical possession or production of the promissory note is not required for nonjudicial foreclosures under California law.  Demurrer Decision at 3, citing *Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009); *see also Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1152, 1155, 1157 (2011).  Thus, to the extent the Claimants' cancellation of instrument claim is predicated on the Debtors' lack of standing to initiate foreclosure proceedings, the claim also fails as a matter of law.  Demurrer Decision at 3.[21]

49.    Because the Claimants have failed to establish a cancellation of instrument claim,[22] they are not entitled to damages, punitive or otherwise, in connection with the assignment of the Deed of Trust.  *See O'Neil v. Spillane*, 45 Cal. App. 3d 147, 161 (1975) ("[I]t is hornbook law that exemplary or punitive damages may not be awarded in the absence of actual or compensatory damages.") (citation omitted).[23]

---

[21] Moreover, since the transfer of the Loan to Ocwen, the Debtors no longer have any association with or interest in the Loan or the Deed of Trust.  Accordingly, the determination of whether the assignment of the Deed of Trust can be cancelled would have no conceivable effect on the Debtors' estates.  Thus, even if the Claimants' cancellation of instrument claim were substantively sound, it would be outside of the jurisdiction of this Court to grant.  *See Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1985) (holding that civil proceeding is related to bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy").

[22] To the extent the Claimants seek rescission of the Loan in the Proof of Claim, any right to rescission the Claimants possessed expired on April 12, 2009, three years after the Claimants entered into the loan transaction on April 12, 2006.  *See* 12 CFR 226.23(a)(3).

[23] As previously noted, the Complaint states that the Claimants' punitive damages remedy stems from the Debtors' "specific intent to defraud and injure Plaintiffs, by causing the [assignment of the Deed of Trust] . . . to be prepared and/or recorded without a factual or legal basis for doing so."  Complaint ¶ 28.  To the extent the Proof of Claim is also construed to assert a fraud claim based on this allegation, the Proof of Claim should still be expunged because the Claimants have failed to plead any of the particulars of the alleged fraud.  *In re DJK Residential, LLC*, 416 B.R. 100,106-07 (Bankr. S.D.N.Y. 2009) (disallowing proof of claim for failure to plead fraud with particularity, consistent with the heightened pleading standard of Rule 9 of the Federal Rules of Civil Procedure).

22

50.     Accordingly, even construing the Proof of Claim as incorporating the Complaint by reference, the Proof of Claim still fails to state a basis for liability (monetary or otherwise) against the Debtors' estates.  As such, the Claimants have failed to carry their burden of establishing a valid claim against the Debtors.  *See Allegheny Int'l*, 954 F.2d at 173-74.

### C.     The Proof of Claim Is Not Supported by Sufficient Documentation

51.     The Court should also expunge the Proof of Claim because it does not include adequate supporting documentation to demonstrate the validity of the claim. Bankruptcy Rule 3001(c)(1) instructs that:

> [W]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, [the original or a duplicate] shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

Fed. R. Bankr. P. 3001(c)(1).  If a claim fails to comply with the documentation requirements of Bankruptcy Rule 3001(c), it is not entitled to *prima facie* validity.  *See Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), *aff'd sub nom.*, *Ashford v. Naimco, Inc. (In re Consol. Pioneer Mortg. Entities)*, 91 F.3d 151 (9th Cir. 1996); *In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) (Glenn, J.).

52.     Where creditors fail to provide adequate documentation supporting the validity of their claims consistent with Bankruptcy Rule 3001(c), courts in this Circuit have held that such claims can be disallowed.  *See Minbatiwalla*, 424 B.R. at 119 (determining that "in certain circumstances, claims can be disallowed for failure to support the claim with sufficient evidence . . . because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim"); *In re Porter*, 374 B.R. 471,

480 (Bankr. D. Conn. 2007); *see also Feinberg*, 442 B.R. at 220-22 (applying *Minbatiwalla* to analysis).

53.     The Claimants have not provided any explanation as to why they are entitled to $1.75 million from the Debtors.  Notwithstanding the $1.75 million face value of the Proof of Claim, the Response only entails a "[r]equest for reimbursement" (Response at 2) of in excess of $29,000 worth of unnecessary "expenses" (*id.* at 3) caused by GMACM's actions for which no supporting documentation has been provided.  The Response does not explain the remainder of the Claimants' damages in the Proof of Claim, or whether Claimants continue to seek the full amount of damages sought in the Proof of Claim.   The Debtors submit that, in light of the other objections to the Proof of Claim raised above, the documentation provided by the Claimants in support of the Proof of Claim is insufficient evidence of any liability of the Debtors to the Claimants, much less $1.75 million.  *In re Porter*, 374 B.R. 471, 482 (Bankr. D. Conn. 2007) ("[I]n many cases . . . an Insufficient Doc. Objection fairly can be read to object on the grounds that the proof of claim is insufficient (when taken together with the objector's then-existing knowledge base) for the objector to concede the validity of the claim asserted." (citations omitted)).

## NOTICE

54.     The Debtors have provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141] and the Procedures Order.

55.     The Debtors hereby advise the Court and Claimants that the Debtors are reserving the right to seek recovery of their reasonable attorneys' fees and costs

associated with filing this Objection, as is their contractual right under the Deed of Trust.

*See* Deed of Trust at ¶ 35.

## <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as this Court may deem proper.

*(The remainder of this page is intentionally left blank)*

Dated:  November 15, 2013
        New York, New York

/s/  Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Melissa A. Hager
Jonathan M. Petts
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

-and-

SEVERSON & WERSON P.C.
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439
Donald H. Cram *(admitted pro hac vice)*

*Counsel for the Debtors and Debtors-in-Possession*