MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Charles L. Kerr
Darryl P. Rains
J. Alexander Lawrence

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' OPPOSITION TO MOTION IN LIMINE TO
EXCLUDE TESTIMONY OF GINA GUTZEIT**

ny-1117608

**INTRODUCTION**

The JSNs[1] argue that Ms. Gutzeit's Rebuttal Expert Report, dated November 1, 2013 (the "Gutzeit Rebuttal Report"), exceeds "the permitted scope of rebuttal evidence" because it purportedly "goes far beyond explaining, repelling, counteracting, or disproving" Mr. Bingham's opinions.[2]  But Ms. Gutzeit's report responds directly to Mr. Bingham's Expert Report, dated October 18, 2013 (the "Bingham Report").  It is therefore appropriate rebuttal evidence.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (rebuttal expert report proper to "contradict or rebut evidence on the same subject matter" offered by adverse party's expert).

A simple comparison of the two reports shows this to be true:

- Mr. Bingham's expert report offers opinions on "the nature of the transactions that comprise the Debtors' nine largest intercompany balances" (Bingham Report ¶¶ 7, 39-91); Ms. Gutzeit responds by contradicting Mr. Bingham's conclusions about the nature of each of those nine transactions, and by explaining why Mr. Bingham's assertions about those transactions "are incomplete or misleading." (Gutzeit Rebuttal Report, ¶¶ 8, 44-85.)

- Mr. Bingham's report concludes that the Debtors "treated intercompany obligations as valid liabilities" (Bingham Report ¶ 11); Ms. Gutzeit responds by demonstrating the intercompany balances "are not indicative of 'valid liabilities.'" (Gutzeit Rebuttal Report ¶ 10.)

- Mr. Bingham's report asserts the Debtors treated their intercompany obligations as "collectible obligations" (Bingham Report ¶ 12); Ms. Gutzeit demonstrates the balances were not likely to be collectible, were not "intended to be repaid," and were regularly forgiven. (Gutzeit Rebuttal Report ¶ 11.)

- Mr. Bingham's report argues the Debtors "accounted for the transfer of value between and among affiliates as debt transactions" (Bingham Report ¶ 18); Ms. Gutzeit demonstrates that the intercompany balances lack many of the indicia of true debt. (See Gutzeit Rebuttal Report ¶ 11.)

---

[1] UMB Bank, N.A. ("UMB"), in its capacity as successor indenture trustee (in such capacity, the "Notes Trustee") for the 9.625% Junior Secured Guaranteed Notes due 2015 issued by Debtor Residential Capital, LLC (the "Junior Secured Notes"); Wells Fargo Bank, N.A. ("Wells Fargo"), in its capacity as third priority collateral agent and collateral control agent (in such capacities, the "Third Priority Collateral Agent") for the Junior Secured Notes; and the ad hoc group of holders of Junior Secured Notes (together with the Notes Trustee and the Third Priority Collateral Agent, the "JSNs").

[2] Motion in Limine of the Notes Trustee and Ad Hoc Committee to Exclude Testimony Regarding the Rebuttal Expert Report of Gina Gutzeit ("JSNs' Op. Br.") at 3, 6.

These comparisons, and many others, demonstrate that Ms. Gutzeit's report easily falls within the proper scope of rebuttal expert testimony.

The JSNs also claim that Ms. Gutzeit's report violates an earlier commitment that the Debtors would not offer evidence valuing the intercompany balances at zero. (JSNs' Op. Br. ¶¶ 18-24.) But Ms. Gutzeit offers no opinion on the intercompany balances' true value. Instead, Ms. Gutzeit supports the Debtors' consistent positions — that the intercompany balances lack many of the indicia of true debt, that any effort to enforce them would inevitably result in protracted litigation, and that the intercompany balances are appropriately compromised by waiving, cancelling, and discharging them as part of the overall plan. (Gutzeit Rebuttal Report ¶¶ 11-19.)

The Debtors' commitment was, and is, to observe the distinction between, on the one hand, seeking a judicial finding that the intercompany balances should be "valued at zero," and, on the other hand, seeking a finding that compromising the balances as part of the Debtors' overall plan is proper under Bankruptcy Rule 9019. The transcript of the July 30, 2013 hearing makes it crystal clear that the Debtors only intend to show the intercompany balances are properly waived, cancelled, and discharged as part of the plan. (July 30, 2013 Hr'g Tr. 32:12-40:22; 74:12-17.) Ms. Gutzeit's report stays on the right side of this line.

## ARGUMENT

An expert rebuttal report may be used to "contradict or rebut evidence on the same subject matter identified" in another party's expert report. Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also United States v. Casamento*, 887 F.2d 1141, 1172 (2d Cir. 1989) ('[t]he function of rebuttal evidence is to explain or rebut evidence offered by the other party"); *S.W. v. City of New York*, No. CV 2009-1777(ENV)(MDG), 2011 WL 3038776, at *2 (E.D.N.Y. July 25, 2011)

2

("[r]ebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party") (citation and internal quotation marks omitted).

District courts should be "'reluctant to narrowly construe the phrase "same subject matter" beyond its plain language.'" *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2013 U.S. Dist. LEXIS 7590, at *19 (D. Vt. Jan. 18, 2013) (quoting *T.C. Sys. Inc., v. Town of Colonie, New York*, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002).)

Ms. Gutzeit's report contradicts and rebuts Mr. Bingham's expert report. And it addresses the same subject matter — the nine largest intercompany balances. It is, accordingly, proper rebuttal testimony under Rule 26.

## I.     MS. GUTZEIT'S REBUTTAL REPORT DIRECTLY RESPONDS TO THE SUBJECT MATTER OF MR. BINGHAM'S REPORT.

The subject matter of Mr. Bingham's report is "[t]he nature of the transactions that comprise the Debtors' nine largest intercompany balances as of May 14, 2012." (Bingham Report ¶¶ 7, 39-91.) Mr. Bingham formed three opinions about those nine balances: (i) the Debtors treated the balances as "valid liabilities;" (ii) the Debtors accurately reported the balances on the appropriate general ledger accounts; and (iii) the Debtors treated the balances as "collectible obligations." (*Id*. ¶¶ 11-12.)

Ms. Gutzeit's rebuttal report is confined to these topics. Her assigned task was to "explain why assertions made by Robert S. Bingham concerning the accounting and validity of intercompany balances are incomplete or misleading." (Gutzeit Rebuttal Report ¶ 8.) To do that, Ms. Gutzeit analyzed, in great detail, each of the nine intercompany balances selected by Mr. Bingham. (*Id*. ¶¶ 44-85.) For each, she addressed whether "these balances [are] indicative of 'valid liabilities or 'valid and collectible obligations.'" (*Id*. ¶ 8.) She also examined whether the balances were "expected to be repaid," "[h]ow did the Debtors record intercompany balances

internally on their books and records," and "how did they report intercompany balances on external records." (*Id*.) These are the exact same topics addressed by Mr. Bingham's report.

Thus, Mr. Bingham's report states that "[t]he Debtors consistently treated intercompany obligations as valid liabilities," and that he "found no evidence that, prior to the petition date, the Debtors viewed these intercompany liabilities as anything other than valid and collectible obligations." (Bingham Report ¶ 12.) Ms. Gutzeit's report shows that Mr. Bingham "did not address" a large quantity of "information, documents, and facts." (Gutzeit Rebuttal Report ¶ 11.) She concludes that "the circumstances related to the historical creation and extinguishment of these intercompany balances" show "these balances are not indicative of 'valid liabilities' or 'valid and collectible obligations.'" (*Id*. ¶ 10.)

As another example, Mr. Bingham's report concludes that the Debtors "accurately recorded [intercompany] transactions" and "included [the liabilities] in the Debtors' financial statements," supporting his view that the Debtors treated the liabilities as "debt" on their financial books and records. (Bingham Report ¶¶ 11.) Ms. Gutzeit's report rebuts this conclusion by showing, among other things, that the intercompany balances all arose between related parties. Ms. Gutzeit criticizes Mr. Bingham for not acknowledging "that these [intercompany] balances are 'related-party transactions' within the meaning of GAAP." (Gutzeit Rebuttal Report ¶ 33.) Because they are transactions among related parties, the manner in which the balances were recorded on the company's books cannot be "presumed to be the culmination of arm's-length transactions under GAAP." (*Id*. ¶ 40.) Thus, "[t]he presence of common management indicates that intercompany transfers were not bona fide 'valid and collectible obligations,' but rather were an efficient way to allocate liquidity and capital as management saw fit to meet the needs of the business." (*Id*. ¶ 14.)

4

ny-1117608

Similarly, Mr. Bingham's report argues that the "Debtors viewed these intercompany liabilities as" "collectible obligations." (Bingham Report ¶ 12.) But Ms. Gutzeit demonstrates the counterparties to the intercompany balances frequently did not have the ability to pay the obligations. She notes that most of the obligations could not "practically be 'repaid' from within the Debtors' corporate structure without incurring significant additional indebtedness that ultimately could not be repaid." (Gutzeit Rebuttal Report ¶ 18.)

Mr. Bingham also argues that the Debtors' formal process for forgiving intercompany obligations "reinforces the notion that the Debtors regarded the underlying Intercompany Transactions as debt." (Bingham Report ¶ 18.) But Ms. Gutzeit effectively rebuts that claim by showing that "in all but one instance . . . the forgiveness recorded by the Debtors was recorded as an adjustment to equity rather than a loss on the profit and loss statement." (Gutzeit Rebuttal Report ¶ 29.) She also notes that treating debt forgiveness among related entities as an equity transaction is consistent with GAAP. (*Id.* ¶ 42.) As a result, Ms. Gutzeit "disagree[s] with Mr. Bingham's suggestion that the intercompany balances were akin to 'debt' because the Debtors were required to comply with corporate formalities relating to the forgiveness of such balances," because "the Debtors considered balance forgiveness to be a capital contribution." (*Id.* ¶ 43.)

Finally, Mr. Bingham devotes the second half of his report to separate analyses of the nine largest intercompany balances. (Bingham Report ¶¶ 39-91.) Ms. Gutzeit's tracks his organization — the second half of her report consists of separate analyses of those same nine intercompany balances, although with substantially more analysis and factual support. (Gutzeit Rebuttal Report ¶¶ 44-85.) In those analyses, Ms. Gutzeit responds to, and refutes, the assertions Mr. Bingham makes for each balance.[3]

---

[3] The JSNs seem to base their argument entirely on a search for Mr. Bingham's name in Ms. Gutzeit's report. (*See* JSNs' Op. Br. ¶ 15.) Mr. Bingham's name, of course, appears throughout Ms. Gutzeit's report. But the true test

Ultimately, the JSNs point to nothing in Ms. Gutzeit's Rebuttal Report that does not directly contradict or undermine Mr. Bingham's analysis and opinions, or that strays from the subject matter of his report. Accordingly, her report properly falls within the scope of Rule 26, and the Court should deny the JSNs' motion in limine.[4]

## II.    MS. GUTZEIT'S REBUTTAL REPORT COMPLIES WITH THE PLAN PROPONENTS' STATEMENTS REGARDING THE VALUATION OF INTERCOMPANY CLAIMS.

The JSNs also argue that Ms. Gutzeit's Rebuttal Report violates an earlier commitment that the Debtors would not to offer evidence valuing the intercompany balances at zero. (JSNs' Op. Br. ¶ 23 ("the Debtors are, in fact, taking the position at the Confirmation Hearing that the Intercompany Claims are worthless and meritless").)

The JSNs misstate the commitment that was made to the Court. At a hearing held on July 30, 2013, the Court asked counsel for the Debtors: "Are the debtors seeking to have the Court make a finding that each of the intercompany claims is valued at zero?" (July 30, 2013 Hr'g Tr. 32:12-14.) The Court later repeated the question in a slightly different form:

> I understood [Mr. Shore's] argument to be that in order to avoid any obligation for adequate protection, the co-proponents are seeking to try, as part of confirmation, a valuation of the intercompany claims, and have them valued at zero, not settled at zero, but valued at zero, in order to avoid adequate protection. Could you address that?

(July 30, 2013 Hr'g Tr. 33:16-21.)

---

under Rule 26 is whether Ms. Gutzeit addresses the same "subject matter" as Mr. Bingham. The JSNs do not attempt to address this test.

[4] The JSNs also do not address the proper remedy if the Court were to find that Ms. Gutzeit's report, in some fashion, exceeds the subject matter of Mr. Bingham's report. Preclusion is an "extreme sanction" that cannot be imposed without "inquir[ing] more fully into the actual difficulties which the violation causes." *Outley v. New York*, 837 F.2d 587, 591 (2d. Cir. 1988). In response to a violation of Rule 26, the trial court "must consider less drastic responses" than preclusion. *See id.* at 590-91 (criticizing the defendant for seeking only "the most drastic remedy" of preclusion). Here, the JSNs could have sought to respond substantively to Ms. Gutzeit's criticisms—by, for example, requesting leave to serve a reply expert report—but opted not to do so.

6

ny-1117608

Debtors' counsel responded clearly that the Debtors will not attempt to show that the "intercompany claims lack merit." Instead, the Debtors will show "that they should be settled to avoid the cost, time, and burden associated with trying to litigate what are, in essence, hundreds of thousands of individual intercompany balances." (July 30, 2013 Hr'g Tr. 32:15-21.) Counsel explained:

> [W]e're not taking the position that the intercompany claims are worthless or meritless at confirmation. What we are taking the position is that settling them pursuant to the global settlement and having them discharged as part of that global settlement, at least for the purposes of the adequate protection, establishes the value of the claim for all purposes. That, your Honor, we think is very different from saying that if these claims were litigated today, they would be worthless. That may be true, but that is not what we will be seeking at confirmation.

(July 30, 2013 Hr'g Tr. 33:23-34:7.)

The Court accepted this distinction and included it in its order. The Court concluded:

> [T]he Court is not being asked to determine the value of the interdebtor claims. The debtors do not argue that the intercompany claims have no value. They are arguing that 1) it is in the best interests of the estates to avoid the cost, time, and burden, of litigating hundreds if not thousands of intercompany claims; and 2) that it is in the best interest of the estates to seek confirmation of a plan that embodies the terms of the PSA.
>
> In other words, what the ad hoc group misses and the debtors acknowledge is the intercompany claims may have value, but they believe that the estate will realize more value by settling those claims at zero because doing so is a requirement for AFI to provide its substantial contribution under the terms of the PSA.

(July 30, 2013 Hr'g Tr. 74:4-17.)[5]

Ms. Gutzeit's Rebuttal Report honors this distinction between valuing the intercompany balances and compromising them. She does not, in her report, offer a valuation of any

---

[5] *See also* July 30, 2013 Hr'g Tr. 11:22-24 ("I don't understand them to be saying that the claims have no value. The plan proposes to settle the claims at zero. That's very different than saying the claims have no value").

7

ny-1117608

intercompany balances, and she did not perform a valuation analysis that would allow her to value them. Nor does she intend to testify about their values at the confirmation hearing.

Instead, Ms. Gutzeit's testimony will be offered to show that, because the balances lack many of the indicia of true debt, any effort to enforce them would result in prolonged and protracted litigation. As a result, the Debtors' decision to compromise the claims, as part of an overall settlement and reorganization plan, makes sense and is reasonable for purposes of Bankruptcy Rule 9019.

The JSNs' argument depends on taking an unsupported leap. According to the JSNs, "[a]n opinion that the intercompany balances are indicative of transfers of equity . . . is the same thing as saying that the Intercompany Claims are worthless or meritless." (JSNs' Op. Br. ¶ 3.) This is a straw man argument. What Ms. Gutzeit actually says, in her report, is that the facts "undermine Mr. Bingham's conclusions that the intercompany balances reflect true 'debt,'" and that several factors, including the manner in which the balances were created, and frequently forgiven, between related parties "was indicative of transfers of equity between related parties as management saw fit to satisfy the needs of the business." (Gutzeit Rebuttal Report ¶¶ 11-12.)

This is not, as the JSNs claim, an opinion that the intercompany balances were, in fact, equity, or that they were "worthless" as of the petition date. It is, instead, an opinion rebutting Mr. Bingham's argument that the balances were like "debt." Ms. Gutzeit's report is entirely consistent with the Debtors' commitment not to take "the position that the intercompany claims are worthless or meritless at confirmation." (July 30, 2013 Hr'g Tr. 33:23-24.)

8

## CONCLUSION

For the reasons stated above, the Court should deny the JSNs' motion to exclude testimony regarding the Rebuttal Expert Report of Ms. Gutzeit.

Dated: November 15, 2013
New York, New York

/s/ Gary S. Lee
Gary S. Lee
Charles L. Kerr
Darryl P. Rains
J. Alexander Lawrence
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*