WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore
Dwight Healy
Douglas Baumstein
Julia Winters

       -and-

MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi
David S. Cohen
Daniel Perry
Atara Miller

*Attorneys for the Notes Trustee and Ad Hoc Group*

AKIN GUMP STRAUSS HAUER
& FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Daniel H. Golden
Philip C. Dublin

*Attorneys for the Notes Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |
| RESIDENTIAL CAPITAL, LLC; et al., | |
| Plaintiffs, | |
| v. | |
| UMB BANK, N.A., IN ITS CAPACITY AS INDENTURE TRUSTEE FOR THE 9.625% JUNIOR SECURED GUARANTEED NOTES, et al., | Adv. Case No. 13-01343 (MG) |
| Defendants. | |

--------------------------------------------------------------

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the estate of the Debtors, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UMB BANK, N.A., AS SUCCESSOR INDENTURE TRUSTEE UNDER THAT CERTAIN INDENTURE, dated as of June 6, 2008, <u>et al.</u>, | ) ) ) ) ) ) |
| Defendants. | ) ) |

Adversary Proceeding
No. 13-01277 (MG)

--------------------------------------------------------------

**OPPOSITION OF THE NOTES TRUSTEE AND THE
AD HOC GROUP OF JUNIOR SECURED NOTEHOLDERS
<u>TO THE PLAINTIFFS' MOTION IN LIMINE</u>**

# TABLE OF CONTENTS

**Page**

Preliminary Statement................................................................................................1

Background ...............................................................................................................3

Argument .................................................................................................................6

I.      Judge Lyons' Opinion Is Admissible under Rule 702. ...................................6

      A.     Judge Lyons' Testimony Is Not A Legal Opinion And Will Assist the Trier of Fact. .....................................................................................7

           1.     The Court Should Allocate the Ally Contribution. ................................... 7

           2.     Expert Testimony Is Admissible for Allocating Claims and Settlements. . 8

           3.     Judge Lyons' Expert Report Is Not a Legal Opinion. ............................... 9

      B.     Judge Lyons' Reliance upon the Examiner's Report Does Not Render His Report Inadmissible. ........................................................................12

      C.     The Lyons Report Uses Relevant and Reliable Methods and Therefore Does Not Violate *Daubert*. ..................................................................15

           1.     Judge Lyons' Proposed Testimony Is Relevant...................................... 15

           2.     Judge Lyons' Proposed Testimony Is Reliable........................................ 16

Conclusion ..............................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Home Assur. Co. v. Merck & Co.*,
    462 F. Supp. 2d 435 (S.D.N.Y. 2006)......................................................................14

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002).................................................................................18

*Arista Records Inc. v. Launch Media, Inc.*,
    2006 WL 2591086 (S.D.N.Y. Sept. 8, 2006)........................................................11

*B.F. Goodrich v. Betkowski*,
    99 F.3d 505 (2d Cir. 1996)...................................................................................13

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
    2000 WL 1694321 (S.D.N.Y. Nov. 13, 2000)..........................................13, 14, 16

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)..................................................................................... passim

*Davis v. Carroll*,
    937 F. Supp. 2d 390, 2013 U.S. Dist. LEXIS 45884 (S.D.N.Y. Mar. 29, 2013)....................17

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
    241 F.3d 154 (2d Cir. 2001)...................................................................................7

*Gould Paper Corp. v. Boise Cascade Corp.*,
    No. 95 Civ. 9771, 2000 WL 1099941 (S.D.N.Y. July 10, 2000) ...............10, 16, 17

*Gussack Realty Co. v. Xerox Corp.*,
    224 F.3d 85 (2d Cir. 2000)..................................................................................13

*Henry v. Champlain Enters. Inc.*,
    288 F. Supp. 2d 202 (N.D.N.Y. 2003) ..............................................................6, 11

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775(JG)(VVP), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009)..........8

*In re Benjumen*,
    408 B.R. 9 (Bankr. E.D.N.Y. 2009)......................................................................17

*In re Best Prods. Co.*,
    168 B.R. 35 (Bankr. S.D.N.Y. 1994).....................................................................2

*In re FiberMark, Inc.*,
    339 B.R. 321 (Bankr. D. Vt. 2006) ...................................................................2, 14

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................8, 9

*In re Ionosphere Clubs, Inc.*,
   156 B.R. 414 (Bankr. S.D.N.Y. 1993) .................................................................2

*In re Masters Mates & Pilots Pension Plan & IRAP Litig.*,
   957 F.2d 1020 (2d Cir. 1992)...........................................................................15

*In re Residential Capital, LLC*,
   491 B.R. 63 (Bankr. S.D.N.Y. 2013) ...................................................................3

*In re Specialty Prods. Holding Corp.*,
   2013 U.S. Bankr. LEXIS 2051 (Bankr. D. Del. May 20, 2013)...............................8

*In re Young Broad. Inc.*,
   430 B.R. 99 (Bankr. S.D.N.Y. 2010) .................................................................18

*Inventio AG v. Otis Elevator Co.*,
   No. 06-5377, 2011 WL 3359705 (S.D.N.Y. June 23, 2011) .............................13, 14

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999).....................................................................................3, 17

*Marx & Co., Inc. v. Diners' Club, Inc*
   550 F.2d 505, 509, 510 (2d Cir. 1977)...............................................................11

*Menard-Sanford v. Mabey (In re A.H. Robbins Co.)*,
   880 F.2d 694 (4th Cir. 1989) .............................................................................9

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005).............................................................................18

*Pereira v. Cogan*,
   281 B.R. 194 (Bankr. S.D.N.Y. 2002) ...............................................................10

*Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*,
   321 F. Supp. 2d 469 (N.D.N.Y. 2004) ......................................................... passim

*Sims v. DeArmond (In re Lendvest Mortg., Inc.)*,
   42 F.3d 1181 (9th Cir. 1994) ......................................................................5, 7, 8

*Slottow v. Am. Cas. Co. of Reading, Pa.*,
   10 F.3d 1355 (9th Cir. 1993) .............................................................................7

*Tokio Marine v. Norfolk & W. Ry. Co.*
   1999 U.S. App. Lexis 476 (4th Cir., Jan. 14, 1999) .............................................15

*Tyler v. Bethlehem Steel Corp.*,
    958 F.2d 1176 (2d Cir. 1992).................................................................................................18

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991).......................................................................................3, 10, 11

*United States v. Mulder*,
    273 F.3d 91 (2d Cir. 2001).......................................................................................................13

*UnitedHealth Grp. Inc. v Columbia Cas. Co.*,
    No. 05-CV-1289 ..........................................................................................................................8

**RULES**

Fed. R. Evid. 702 ..................................................................................................................3, 6, 18

**TREATISES**

11 Charles A. Wright & Arthur R. Miller & Mary Kay Kane, Federal Practice and
    Procedure § 2885 (2d ed. 1995)..............................................................................................7

UMB Bank, N.A., as successor Notes Trustee (in such capacity, the "Notes Trustee")
under that certain Indenture dated as of June 6, 2008 for 9.625% Junior Secured Guaranteed
Notes due 2015 of Residential Capital, LLC and the Ad Hoc Group of Junior Secured
Noteholders (the "Ad Hoc Group"), by and through their undersigned counsel, hereby submit
this opposition to The Debtors' and Official Committee of Unsecured Creditors' Motion *In
Limine* To Exclude The Expert Testimony Of Judge Raymond T. Lyons At Trial.  In support of
their opposition, the Notes Trustee, acting on behalf of the holders of the Junior Secured Notes
(the "JSNs"), and the Ad Hoc Group, respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Having taken the position that it is impossible to allocate a settlement payment
among the claims that gave rise to the settlement, the Debtors now move to exclude evidence
from an expert who did just that.  Even though their own expert conceded that it is possible,[1] the
Debtors have argued that there is no basis for allocating the $2.1 billion payment to be provided
by Ally Financial Inc. ("Ally") and its subsidiaries to settle causes of action the Debtors and
others possess against Ally.  The expert report of Judge Lyons (the "Lyons Report") confirms
that a reasonable allocation of the Ally Contribution is indeed possible, as it succeeds in
allocating a justifiable settlement value to each relevant cause of action considered in the Report
of Judge Arthur J. Gonzalez, Esquire, as Examiner (the "Examiner's Report").

2.      The Plaintiffs assert three main arguments to exclude testimony from Judge
Lyons: (a) that the Lyons Report expresses inadmissible legal opinions; (b) that Judge Lyons is a
mere "conduit" for the introduction of hearsay evidence from the Examiner's Report; and (c) that
Judge Lyons fails the *Daubert* test because his opinion is not relevant to the "actual negotiation"

---

[1] Indenture Trustee and Ad Hoc Group of Junior Secured Creditors' Contentions at 60 ¶ 25 [Dkt. No.
5716] (quoting deposition of Mark Renzi).

of the Global Settlement and because Judge Lyons' methodologies are not reliable.  Each of these arguments is without merit.

3.      First, Judge Lyons' testimony and expert report will assist the Court in determining the proper allocation of the Ally Contribution—an allocation the Court is required to make in circumstances where, as here, a settlement affects the rights of non-settling parties. Courts often receive expert opinions in the claims valuation context, which is analogous to the exercise undertaken by Judge Lyons.  The Lyons Report does discuss legal issues, but only insofar as they are relevant to determining the reasonable settlement value of certain claims and the allocation of the Ally Contribution among those claims.  As such, those opinions are properly within the bounds of expert testimony and do not impinge upon the province of the Court.

4.      Second, the JSNs are not seeking to admit the Examiner's Report through Judge Lyons' testimony.  As a threshold matter, Judge Lyons does not rely exclusively on the facts within the Examiner's Report.  Following the circulation of the Lyons Report, Judge Lyons reviewed deposition transcripts to verify certain of the facts stated in the Examiner's Report. Regardless, the very purpose of an examiner's report is to serve as a resource containing independent, expert information about assets of the estate for the benefit of the parties and the court.[2]  Judge Lyons considered the Examiner's Report for this intended purpose by using the assets (litigation claims) identified by the Examiner as a basis to allocate the Ally Contribution. It is well-established that experts are entitled to rely upon inadmissible evidence.  A party

---

[2] *See, e.g.*, *In re FiberMark, Inc.*, 339 B.R. 321, 325-26 (Bankr. D. Vt. 2006) (noting that even when inadmissible, an expert report allows the parties to make an informed determination of their substantive rights and provides context for debate, and a court can rely on the report for help in understanding facts and legal conclusions when formulating its own conclusions); *In re Best Prods. Co.*, 168 B.R. 35 (Bankr. S.D.N.Y. 1994) (court used examiner's report as a reference and relied on its analysis of potential claims and related issues in assessing whether a settlement could be approved); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (Bankr. S.D.N.Y. 1993) (court relied on the range of the value of the claims identified by examiner to determine whether settlement between debtors and creditors could be considered reasonable).

proffering an expert is not required to admit into evidence the myriad documents and information upon which the expert's opinion is based, and the Notes Trustee and the Ad Hoc Group do not seek to introduce the Examiner's Report into evidence.

5.      Third, Plaintiffs are correct that Judge Lyons does not propose to offer testimony on what actually occurred during the settlement discussions in this case.  To the contrary, Judge Lyons' opinion is based on objective facts, not the self-serving statements of the parties to the settlement.  It is precisely because the JSNs are not a settling party that an independent allocation of the Ally Contribution is necessary and required.[3]  Further, the *Daubert* factors as recited by Plaintiffs are not appropriate for the type of non-scientific, experience-based opinion that Judge Lyons intends to offer.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (agreeing that "factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, expert's particular expertise, and the subject of his testimony") (quoting Brief for United States as *Amicus Curiae* 19).  The Lyons Report was compiled with a reliable methodology based on the experience of Judge Lyons.

6.      Because Judge Lyons satisfies the requirements of Rule 702 of the Federal Rules of Evidence, his testimony should be admitted.

## **BACKGROUND**

7.      On June 26, 2013, the Examiner released the Examiner's Report, which, among other things, analyzed certain causes of action possessed by the Debtors and others against Ally. The Examiner's Report concludes that the majority of the strongest claims against Ally are

---

[3] By attacking the Lyons Report for failing to consider the settlement discussions, the Plaintiffs are impermissibly using privilege from discovery as both a sword and a shield, which is inappropriate.  *See In re Residential Capital, LLC*, 491 B.R. 63, 70 (Bankr. S.D.N.Y. 2013) (holding that "privilege cannot at once be used as a shield and a sword") (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)).

breach of contract claims with potential damages exceeding several billion dollars. Examiner's

Report at I-30-31. The Examiner's Report is the product of an extensive and diligent

investigation by the Examiner, which included, among other things, an examination of almost

nine million pages of documents, ninety-nine formal interviews of eighty-three witnesses, and

sixty-six meetings with interested parties. Examiner Report at I-4. The Examiner's thorough

review cost the estate in excess of $80 million. *See* Notice of Filing of Corrected Solicitation

Version of the Disclosure Statement and Joint Chapter 11 Plan at 79 [Dkt. No. 4819].

8.      On July 3, 2013, the Plan Proponents filed the Plan and related disclosure

statement (the "Disclosure Statement"), which the Court approved on August 23, 2013. The

Plan is supported by Ally, the Debtors' ultimate corporate parent, and certain other of the

Debtors' creditors. The Global Settlement embodied in the Plan provides, among other things,

for the settlement of various claims against Ally and a grant to Ally of broad estate and

third-party releases in exchange for funding for the Plan from Ally in the amount of $2.1 billion

(the "Ally Contribution").

9.      Significantly, the Plan does not propose to compensate the JSNs for the release of

claims against Ally over which the JSNs have liens. To do so would require an allocation of the

Ally Contribution among the various claims that gave rise to it, and the Plan Proponents contend

that it is impossible to allocate the Ally Contribution on a claim-by-claim basis. Disclosure

Statement Omnibus Reply at 16 ¶ 29 [Dkt. No. 4723]. This contention is belied by the testimony

of Mr. Renzi (*supra*, fn. 1) and the fact that the Debtors have broadly allocated $392.62 million

of the Ally Contribution among three groups of claims. Revised Disclosure Statement at 43

[Dkt. No 4819-1].  In order to allocate the Ally Contribution as they have done, the Debtors

must have undertaken the kind of analysis they now claim to be impossible. By refusing to

allocate the Ally Contribution on a claim-by-claim basis, the Plan Proponents purport to extinguish the JSNs' security interests in certain claims for no value.

10.    In order to determine the value of the JSNs' security interest in the Debtors' claims against Ally, the Court must determine what reasonable settlement value to ascribe to those claims.[4]  The JSNs intend to offer the expert testimony of Judge Lyons to assist with this task.  Judge Lyons will offer his opinion as to (a) the reasonable settlement value of each of the material claims identified in the Examiner's Report[5] and (b) the reasonable allocation of the Ally Contribution among the various settled claims.

11.    Judge Lyons served for 14 years as a United States Bankruptcy Judge for the District of New Jersey where, among his other duties, he conducted settlement conferences in numerous cases.  While on the bench, Judge Lyons was also authorized by the Court of Appeals for the Third Circuit to serve as a mediator in the U.S. Bankruptcy Court for the District of Delaware where he mediated, *inter alia*, the plan of reorganization for Washington Mutual, involving twenty-two classes of claims and interest and $7 billion in distributions.  Before taking the bench, Judge Lyons was in private practice for more than 25 years as a commercial litigator with a concentration in chapter 11 bankruptcies.  Judge Lyons is also on the Roster of Mediators for the American Arbitration Association, the CPR Panel of Distinguished Neutrals for the

---

[4] *See Sims v. DeArmond (In re Lendvest Mortg., Inc.)*, 42 F.3d 1181, 1185 (9th Cir. 1994) ("[T]he bankruptcy court must undertake an independent allocation of the settlement before it may conclude that [a particular] claim has been completely or partially satisfied.").

[5] If the settlement value of a particular claim was less than or equal to 1% of the gross value of the Ally Contribution, Judge Lyons deemed it to be immaterial to the allocation process.  Lyons Report at 3.

International Institute for Conflict Prevention and Resolution, and the Panel of Arbitrators and

Mediators for Federal Arbitration, Inc.[6]

## ARGUMENT

### I.    JUDGE LYONS' OPINION IS ADMISSIBLE UNDER RULE 702.

12.    Judge Lyons' opinion evidence is admissible because it satisfies each of the

requirements of Rule 702 of the Federal Rules of Evidence: (a) his opinion will assist the Court

in determining whether it is possible to allocate the Ally Contribution and how such an allocation

might be effectuated, (b) his opinion is based on independent facts ascertained by the Examiner

after a thorough investigation, (c) his opinion is the product of reliable principles and methods;

and (d) he applied those principles and methods reliably.  Fed. R. Evid. 702.[7]

13.    As a threshold matter, in the impending bench trial, the Court's role as gatekeeper

with respect to expert evidence is much less significant than in a jury trial; a judge is "presumed

to be able to exclude improper inferences from his or her own decisional analysis."  *Rondout

Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 473-74 (N.D.N.Y. 2004).  This

Court is, of course, perfectly capable of discerning relevant evidence, weighing its probative

value versus its prejudicial effect, and rejecting improper inferences or intrusions upon its role.

*Henry v. Champlain Enters. Inc.*, 288 F. Supp. 2d 202, 221 (N.D.N.Y. 2003) (a trial court should

---

[6] Judge Lyons is also on the court-annexed Panel of Mediators in the U.S. Bankruptcy Courts for the Southern District of New York, the Eastern District of New York, the District of Delaware and the Western District of Pennsylvania.  Lyons Report at 1.

[7] In 2000, Rule 702 was amended to codify the factors outlined in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) regarding the admissibility of expert testimony.  In *Daubert*, the Supreme Court announced that trial courts must perform a gate-keeping function in determining the admissibility of expert testimony.  The *Daubert* factors, which were not intended to be exhaustive nor to be applicable in every case, include: (1) whether the technique or theory utilized by the expert can be tested and had been tested; (2) whether the technique or theory had been the subject of peer review and publication; (3) the potential rate of error and "the existence and maintenance of standards controlling the techniques operation;" and (4) the general acceptance of the expert's theory or technique in the relevant scientific community (the "*Daubert* Factors").  *See id.*

be able to separate the "wheat from the chaff"); *see also Rondout*, 321 F. Supp. 2d at 474 ("In

non jury cases the district court can commit reversible error by excluding evidence but it is

almost impossible for it to do so by admitting evidence.") (quoting 11 Charles A. Wright &

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2885 (2d ed. 1995)).

> **A.** **Judge Lyons' Testimony Is Not A Legal Opinion And Will Assist the Trier of Fact.**

14.     Judge Lyons' testimony will assist the Court in its fact-finding mission by

showing that it is quite possible to allocate the Ally Contribution, and by demonstrating a

rational and systematic approach to doing so.  The Debtors seek to attack the Lyons Report on

the ground that it constitutes a legal opinion.  The Debtors' argument is based upon a

fundamental misconception of the purpose for which the Lyons Report is offered.[8]

> **1.** **The Court Should Allocate the Ally Contribution.**

15.     In circumstances where the rights of non-settling parties (such as the JSNs) are

impacted, a Court is required to conduct an allocation of the settlement proceeds.  *See E.R.*

*Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 172 (2d Cir. 2001); *Sims v. DeArmond (In*

*re Lendvest Mortg., Inc.)*, 42 F.3d 1181, 1184-1185 (9th Cir. 1994); *Slottow v. Am. Cas. Co. of*

*Reading, Pa.*, 10 F.3d 1355, 1359 (9th Cir. 1993).  The settlement allocation process is one that

must be undertaken by the Court and not the parties that have settled their dispute.  Courts

recognize that the allocations proposed by the settling parties must be viewed with "considerable

suspicion because of the risk that [the allocation was effectuated] for strategic reasons."  *Slottow,*

---

[8] The Debtors' argument that the JSNs sought and obtained preclusion of similar expert testimony
proffered by the Debtors with respect to the FGIC settlement is equally misconceived.  In that situation,
the Debtors sought to introduce "expert testimony" from their own counsel on the very proceeding that
was currently being adjudicated.  Not only was his objectivity impermissibly comprised by his
representation, but his submissions under the guise of expert testimony were, in essence, legal briefs,
which the Debtors themselves admitted included opinion on "ultimate legal issues."  Aug. 14, 2013 Hr'g
Tr. 10:17-18.

10 F.3d at 1359. That is because delegating to the settling parties the right to allocate (or, in this

case, to simply ignore the allocation process) may be "inherently prejudicial to the interests of

non-settling parties." *In re Lendvest*, 42 F.3d at 1184-85. Indeed, because of that prejudice, the

Ninth Circuit concluded that a court must undertake an allocation, notwithstanding the burden it

might entail:

> While we sympathize with the desire to avoid imposing upon the
> bankruptcy court the substantial burden of finding some sort of fair
> allocation, delegating that determination to the parties (even
> subject to judicial approval) when such collusive potential exists
> may be worse than an arbitrary allocation by the court. It may be
> inherently prejudicial to the interests of the non-settling parties.

*Id.* at 1184. As in *In re Lendvest*, the JSNs' rights in the settlement proceeds are prejudiced by

the allocation approach of the settling parties, and the Court is thus required to conduct the

allocation of the settlement proceeds to protect the JSNs' interests.

### 2.    Expert Testimony Is Admissible for Allocating Claims and Settlements.

16.    In evaluating the allocation of settlement proceeds, courts may rely on expert

testimony to value each party's claims and a reasonable settlement distribution. *In re Global

Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (deferring to the expert

testimony of an experienced claims administrator in determining the claim value threshold for

receiving an allocation of settlement proceeds); *In re Specialty Prods. Holding Corp.*, 2013 U.S.

Bankr. LEXIS 2051 (Bankr. D. Del. May 20, 2013) (conducting claims estimation trial using

expert reports and prior tort history to estimate contingent and liquidated asbestos claims); *In re

Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775(JG)(VVP), 2009 WL 3077396

(E.D.N.Y. Sept. 25, 2009) (requiring, under court ordered allocation procedure, that counsel for

each group of claimants retain an allocation expert to submit opinions to the mediator);

*UnitedHealth Grp. Inc. v Columbia Cas. Co.*, No. 05-CV-1289 PJS/SER, 2013 WL 1776279, at

*8-9 (D. Minn. Apr. 25, 2013) (admitting testimony of insured's allocation expert with respect to

the value of the disputed antitrust claims). The Court may even retain its own expert to aid in the

claims valuation process. *See Menard-Sanford v. Mabey (In re A.H. Robbins Co.)*, 880 F.2d 694,

698-99 (4th Cir. 1989) (court appointed own expert under Rule 706 to make a fair estimation of

the value of certain claims against the debtor).

17.    Judge Lyons will provide an expert opinion for this Court to consider regarding a

reasonable valuation of the causes of action included with the Examiner's Report, as well as a

reasonable allocation of the Ally Contribution among those claims. *See* Lyons Dep. 93:24-

94:11. The court in *In re Global Crossing* was provided with a similar expert report when tasked

with approving an allocation plan to ensure that the distribution of funds in a securities fraud

class action was fair and reasonable. 225 F.R.D. at 462. When certain class members objected

to the *de minimis* threshold, the court turned to expert testimony of an experienced claims

administrator to determine whether the plan was reasonable. *Id.* at 463. Relying on the facts and

valuation of claims in the allocation plan, the expert opined that the threshold was reasonable.

*Id.* at 462-63. Judge Lyons offers the same assistance to the Court as the claims administrator in

*In re Global Crossing*.

### 3.    Judge Lyons' Expert Report Is Not a Legal Opinion.

18.    The Debtors attack the Lyons Report on the ground that it constitutes a legal

opinion.[9] The Debtors' argument is based upon a fundamental misconception of the purpose for

---

[9] It is noteworthy that Plaintiffs challenge Judge Lyons' expert report but have not challenged the
admissibility of the expert report that Judge Ralph R. Mabey provided on behalf of the RMBS Steering
Committee on October 19, 2013 (the "Mabey Report"). Judge Mabey's opinion concerns whether certain
legal fees are "reasonable" and, as he explains in his report, that opinion is based in part on his assessment
of "non-bankruptcy law related to contingency fees and bankruptcy law relating to compensation in
chapter 11 cases." Mabey Report at 2. In providing an opinion on the reasonableness of fees, Judge
Mabey, appropriately, had to base his opinion on existing law. The fact that Plaintiffs do not challenge

9

which the Lyons Report is offered, however.  In his report, Judge Lyons does not offer an

opinion regarding whether the settlement forming part of the reorganization plan is "fair and

equitable" to non-settling parties, nor does he offer his opinion on any other purely legal issue.[10]

Instead, Judge Lyons seeks to provide the Court with his expert testimony, based upon his

extensive experience in complex chapter 11 cases, to help the Court determine a reasonable

settlement value of the claims against Ally and to reasonably allocate the Ally Contribution for

the limited purpose of determining the JSNs' entitlements.  *See* Lyons Witness Statement at 3 ¶ 4

[Dkt. No. 5712]; Lyons Dep. 33:22-34:10.  As discussed above, courts routinely rely on such

expert testimony when adjudicating these types of issues.

19.      Although an expert's testimony on pure issues of law is inadmissible, "[a]n expert

may, however, include factual conclusions and opinions embodying legal conclusions that

encroach upon the court's duty to instruct upon the law."  *Pereira v. Cogan*, 281 B.R. 194, 198

(Bankr. S.D.N.Y. 2002) (citing, *inter alia*, *Bilzerian*, 926 F.2d at 1294).  Trial courts have

considerable discretion to admit expert evidence if it will assist the trier of fact in understanding

the evidence and will not usurp the function of the jury and the trial judge.  *See, e.g.*, *Gould*

*Paper Corp. v. Boise Cascade Corp.*, No. 95 Civ. 9771, 2000 WL 1099941, at *1 (S.D.N.Y. July

10, 2000).  "Such deference is particularly profound with respect to bench trials because the trial

court is presumed to be able to exclude improper inferences from his or her own decisional

analysis."  *Rondout*, 321 F. Supp. 2d at 474 (internal quotations omitted).  Accordingly, pre-trial

motions seeking to exclude expert testimony are routinely denied, as such challenges to experts

are better addressed through cross-examination, where the trial judge can separate the "wheat

---

Judge Mabey reveals that their reasons for moving against Judge Lyons have more to do with litigation
tactics than a belief in the impropriety of the Lyons Report.

[10] As Judge Lyons noted at his deposition: "I don't think Judge Glenn needs help in his application of
law to fact.  Lyons Dep. 51:24-52:6.

from the chaff." *Henry*, 288 F. Supp. 2d at 221; *see also Arista Records Inc. v. Launch Media, Inc.*, 2006 WL 2591086, at *1 (S.D.N.Y. Sept. 8, 2006) (finding motions to exclude expert testimony and reports "premature . . . , as issues pertaining to the[] expert witnesses are more appropriately addressed and resolved during the course of the trial").

20.      The cases cited by Plaintiffs in which expert testimony was excluded because it offered legal opinions are inapposite.  The experts in those cases offered opinions as to what the law required of the parties or how the law ought to be applied in that particular case.  For example, in *Marx & Co., Inc. v. Diners' Club, Inc.*, the court held that the expert's testimony was inadmissible because he offered "legal opinions as to the meaning of the contract terms at issue" and "his legal opinion that the fact that the parties were exploring alternatives was not a legal waiver by the plaintiffs" of the defendant's requirements under the contract.  550 F.2d 505, 509, 510 (2d Cir. 1977).  In this case, Judge Lyons is not offering an opinion on a legal issue; rather, his opinion consists of claims valuation and settlement allocation.  A discussion of the applicable legal issues is a necessary predicate for those opinions.  In assessing the weight to accord the Lyons Report, the Court can examine Judge Lyons' treatment of the legal issues.

21.      *United States v. Bilzerian*, which is also relied on by Plaintiffs, in fact supports admission of Judge Lyons' opinion.  In that case, the trial court admitted expert testimony on "general background on federal securities regulation and the filing requirements."  926 F.2d at 1294-95.  The Second Circuit affirmed the admission of this testimony, in part, because the judge provided a limiting instruction to the jury, stating that the expert "is not here to give his opinion as to what the law requires."  *Id.*  Of course, in a bench trial, no such limiting instruction is necessary because the Court is well-aware of the role of experts.  *Bilzerian* establishes that the

mere fact that an expert witness's testimony touches upon legal issues relevant to the case does not render his opinion inadmissible.

**B.    Judge Lyons' Reliance upon the Examiner's Report Does Not Render His Report Inadmissible.**

22.    The Plaintiffs next attack Judge Lyons on the theory that his reliance on the Examiner's Report is inappropriate.  In forming his opinion, Judge Lyons explained that he thoroughly reviewed and relied on the Examiner's Report for "factual statements," but did not rely on the Examiner's legal conclusions.[11]  *See, e.g.*, Lyons Dep. 33:34-36:6; 282:18-23.  After issuing his opinion, Judge Lyons then reviewed the transcripts of the depositions that had been conducted in this proceeding, to verify his assessment of the value of those claims that would be settled in consideration of the Ally Contribution.[12]  The deposition testimony was consistent with the Examiner's factual presentation.[13]  After his review, Judge Lyons confirmed his initial determination of a $2.4 billion total settlement value, as well as other findings.[14]

---

[11] Over four weeks, Judge Lyons personally dedicated 206 hours to reviewing and analyzing the Examiner's Report.  *See* Lyons Dep. 156:21-25.  Judge Lyons was also aided by a team of 17 lawyers and other assistants, who, records provided to the Debtors show, spent a total of more than 638 hours assisting with the Lyons Report.  In contrast, the Debtors' expert, Gina Gutzeit, estimated that she personally spent only 30 to 40 hours total on drafting her rebuttal report, *including* the time she spent reviewing and analyzing the more than 100 documents that she relied upon.  Gutzeit Dep. __:__ (Nov. 15, 2013).  Notably, the Debtors have refused to provide the JSNs with time records relating to Ms. Gutzeit's report and she was unable to say what the four members of her team did or how much time they spent assisting with her report.

[12] Judge Lyons explained that he reviewed the depositions of Cathy Dondzila, William Marx, Joseph Cortese, Lewis Kruger, James Aretakis, Mark Renzi, James Young, and Al Celini.  Lyons Witness Statement at 3-4 [Dkt. No. 5712].  Because of the schedule set forth in the Amended Protocol (Am. Order Establishing A Disc. Protocol In Connection With Disc. Relating to Plan Confirmation at 16 ¶ 10 [Dkt. 4974]), and because the Debtors and UCC opposed any extension of the expert discovery deadline, Judge Lyons could not review these depositions as part of his affirmative report, which was due on October 18, 2013.  Lyons Witness Statement at 3-4 [Dkt. No. 5712].  Indeed, the first of the aforementioned depositions occurred the day before, on October 17, 2013.

[13] *Id.*

[14] *See* Lyons Witness Statement at 10 (deposition testimony confirmed Judge Lyons' understanding that, for example, prior to 2008 GMAC Mortgage bore the risk of a decline and benefitted from increases in the value of the loans brokered to Ally Bank by GMAC Mortgage).

23.    Regardless, Judge Lyons' reliance on the Examiner's Report, in whatever degree, does not render his opinion inadmissible because (a) an expert can rely on data that he did not personally collect, and (b) experts may properly rely on inadmissible evidence in forming their opinions.

24.    Judge Lyons' reliance upon the Examiner's Report for his factual assumptions does not render it inadmissible because an expert can rely upon data that he did not personally collect.  *See B.F. Goodrich v. Betkowski*, 99 F.3d 505, 524 (2d Cir. 1996) (noting that expert was not required to personally visit the landfill to conduct waste tests and may base his opinion on third-party reports); *Gussack Realty Co. v. Xerox Corp*., 224 F.3d 85, 94-96 (2d Cir. 2000) ("an expert may rely on data that she did not personally collect . . . . The expert need not have conducted her own tests"); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 2000 WL 1694321, at *1-2 (S.D.N.Y. Nov. 13, 2000) (court finding it "of no consequence" that an expert relied on the memorandum of counsel rather than on "primary materials and oral communication" in forming his opinion).  Indeed, by relying on the Examiner's Report to provide a roadmap of potential claims, Judge Lyons used the Examiner's Report in exactly the way it was intended.  *See* Mem. Opinion and Order Granting Berkshire Hathaway's Mot. to Appoint an Examiner at 16 [Dkt. No. 454] (the Examiner's Report is "an independent evaluation . . . of any potential claims that would be released under a proposed plan").

25.    Second, the facts or data upon which an expert may rely includes hearsay and other inadmissible evidence.  *United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001) ("expert witnesses can testify on opinions based on hearsay or other inadmissible evidence").  To the extent Debtors raise hearsay objections, their objections should be dealt with at trial.  *See Inventio AG v. Otis Elevator Co*., No. 06-5377, 2011 WL 3359705, at *7 (S.D.N.Y. June 23,

13

2011) (holding that motion to exclude expert "represents yet another improper use of *in limine* motions . . . . The proper thing to do is to object during trial when an objectionable question is asked"); *Am. Home Assur. Co. v. Merck & Co.*, 462 F. Supp. 2d 435, 448 (S.D.N.Y. 2006) (same).

26.    *Bank Brussels*, 2000 WL 1694321, at *1-2 is instructive.  In that case, the court determined that an expert's opinion was admissible even though he reached that opinion by relying "nearly exclusively" on a memorandum prepared by the defendant's counsel.  *Id.* at *2.  The court held that the plaintiffs' objection "is relevant only to the weight of the testimony of the witnesses who relied" on the memorandum, and that the plaintiffs' proper recourse was through cross-examination.  *Id.*  The court explained:

> It is highly doubtful that any expert could master all of the documentary and deposition testimony in these cases, so that there is nothing surprising in counsel for a party summarizing the testimony counsel thinks is relevant. That such has been done in the form of a memorandum rather than by the delivery of selected primary materials and oral communication is of no consequence.

*Id.*  Clearly, if an expert may properly rely on a memorandum prepared by counsel to one of the parties, an expert may also rely upon facts collected in an independent investigation conducted by an independent, third-party examiner.

27.    The inadmissible hearsay upon which an expert may rely even extends to the report of another expert that has been deemed inadmissible.[15]  *See Inventio AG*, 2011 WL 3359705, at *7 ("[W]hen experts rely on the opinion of other experts, the evidence comes in as [to] allow the jury to assess the basis for the testifying expert's opinion.").  Indeed, "experts often rely on facts and data supplied by third-parties, including other experts."  *Id.*

---

[15] *See also In re FiberMark*, 339 B.R. at 327 (holding that the conclusions and opinions of the Examiner are admissible as an expert opinion and the balance of the Report is inadmissible hearsay).

28.    Here again, the cases upon which the Plaintiffs rely are inapposite.  For example, claimants rely upon *Tokio Marine v. Norfolk & W. Ry. Co*., for the proposition that an expert cannot simply give the opinion of another expert who does not testify.  Nos. 98-1050, 98-1077, 1999 U.S. App. Lexis 476 (4th Cir., Jan. 14, 1999).  That is not what Judge Lyons does.  In any event, the issue in *Tokio Marine* could not be more different.  In that case, the expert was unable to appear at trial, so his grandson, who assisted with the preparation of the expert report, testified on his behalf.  1999 U.S. App. Lexis 476, at *6.  The court concluded that because the grandfather's "report presents the opinion of someone who did not testify at trial," it was inadmissible hearsay that could not be cured by having the grandson "testify that he agrees with its conclusions."  *Id*.  In the instant case, Judge Lyons used the Examiner's Report as the starting point—not the end point—for his own analysis and opinions.  He is not adopting the Examiner's opinion as his own.

C.    **The Lyons Report Uses Relevant and Reliable Methods and Therefore Does Not Violate *Daubert*.**

1.    **Judge Lyons' Proposed Testimony is Relevant.**

29.    The Plaintiffs argue that Judge Lyons' testimony is inadmissible under the *Daubert* standard because it is not relevant to the extent it is not based on the actual negotiations between the settling parties.  The subjective, self-serving views of the settling parties, however, do not define the threshold for relevance.  Indeed, "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval."  *See In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992).

30.    The Lyons Report is exactly the kind of objective analysis necessary to aid the Court in allocating the Ally Contribution.  Judge Lyons performed an analysis regarding what an

appropriate allocation of the Ally Contribution should be based on and the settlement value of the claims at issue.  As discussed in section A.1, *supra*, such an allocation is required here and, thus, Judge Lyons' testimony is directly relevant to the issues before the Court.[16]  Further, Judge Lyons could not have factored the settlement discussions into his analysis even if he wanted to because discovery regarding the negotiations was unavailable on the basis of the mediation privilege.

### 2.    Judge Lyons' Proposed Testimony is Reliable.

31.    In determining the admissibility of expert reports and testimony, courts look to whether a witness is qualified as an expert to testify to a particular matter and whether their relevant opinion and testimony is based upon reliable data and methodology.  Judge Lyons' competent and reliable testimony, based on his extensive experience, fits squarely within the type of expert evidence that courts allow.  *See, e.g.*, *Bank Brussels*, 2000 WL 1694321, at *2 (admitting expert testimony on banking practice based on expert's experience as in-house counsel to a major bank); *Gould Paper Corp.*, 2000 WL 1099941, at *1 (admitting expert testimony based on the expert's 41 years of experience in the paper industry).

32.    The Lyons Report is reliable because it relies on an extensive review of the factual record developed in the Examiner's Report, and because its methodology is clearly identified and explained.  The Debtors argue that the Lyons Report is unreliable because, as Judge Lyons acknowledges, "the Examiner's assessment of the likelihood of success of each

---

[16] It is particularly inappropriate for the Plaintiffs to argue, as they do, that the Lyons Report is irrelevant because the Examiner's Report, on which Lyons relies, was not made public until after the Global Settlement had been reached.  It is the Plaintiffs who requested that the Examiner's Report be sealed pending the conclusion of the Global Settlement and the request was granted without prejudice to the JSN's right to argue the relevance of the Examiner's findings.  *See* Order Granting the Debtors' Application Pursuant to Section 105(a) of the Bankruptcy Code Seeking Entry of an Order Temporarily Sealing the Expert Report at 2 [Dkt. No. 3697].  If the Examiner's findings with respect to claims against Ally are not relevant to the appropriate allocation of the Ally Contribution, then the Examiner's Report has no utility at all.

cause of action is inherently imprecise." Lyons Report at 3. Absolute certainty is not required, however, even in the case of scientific testimony. *See, e.g.*, *Daubert*, 509 U.S. at 590 ("Of course, it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science.").

33.    The Second Circuit espouses a broad standard for the admission of such testimony, explaining that "[a]lthough expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith, or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *In re Benjumen*, 408 B.R. 9, 20 (Bankr. E.D.N.Y. 2009) (internal quotations omitted); *see also Gould Paper Corp.*, 2000 WL 1099941, at *1 (noting the "broad latitude" and "considerable leeway" afforded trial court in determining the reliability of expert testimony)). Regardless of whether a witness is examined under *Daubert* or *Kumho Tire*, "[t]he ultimate inquiry for the district court is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Davis v. Carroll*, 937 F. Supp. 2d 390, __, 2013 U.S. Dist. LEXIS 45884, at *56 (S.D.N.Y. Mar. 29, 2013).

34.    In *Rondout*, the court weighed whether to admit expert testimony regarding the calculation of present and future damages based on the defendants' alleged breaches of contract. 321 F. Supp. 2d at 477. In holding that the expert's report was reliable and admissible, the court pointed to the following factors as determinative: (a) the magnitude of the report with individual segments addressing each alleged breach of contract, (b) the elaborate charts that displayed

calculations of damages for reach purported breach, and (c) the expert's explanation of his methodology for calculating damages. *Id*. at 477-78.

35.     Similarly, Judge Lyons prepared a thorough opinion addressing each potential cause of action identified in the Examiner's Report and provided an explanation of his methodology and the nuanced approach used in arriving at his conclusions. Lyons Report at 6. The carefully documented steps and thoroughness of the review undertaken by Judge Lyons in arriving at his expert opinion demonstrate the reliability, and the admissibility, of his testimony. As was the case in *Rondout*, the Debtors' "numerous objections to [Judge Lyons'] report and anticipated testimony do not address their admissibility and are better reserved for a factfinder's scrutiny." 321 F. Supp. 2d at 479 (citing *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1188 (2d Cir. 1992)).

36.     Finally, the Debtors make much out of what they perceive to be fatal imprecisions within the intricacies of Judge Lyons' methodology, arguing that his opinion does not satisfy the rigors of the *Daubert* standard.  It is has long been the case, however, that the *Daubert* factors "are not meant to be a definitive checklist as the reliability inquiry under Rule 702 is a flexible one." *In re Young Broad. Inc.*, 430 B.R. 99, 124 (Bankr. S.D.N.Y. 2010) (citing *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("the *Daubert* inquiry is fluid and will necessarily vary from case to case")).

## CONCLUSION

For the foregoing reasons, the Notes Trustee and the Ad Hoc Group respectfully request that the Court deny Debtors' Motion *In Limine* to preclude the expert Report of Raymond T. Lyons.

Dated:  November 15, 2013

By: /s/ David S. Cohen

MILBANK, TWEED, HADLEY &
MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:   (212) 530-5083
Gerard Uzzi
David S. Cohen
Daniel M. Perry
Atara Miller


-and-

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore
Harrison L. Denman

*Attorneys for the Notes Trustee*
*and Ad Hoc Group*

AKIN GUMP STRAUSS HAUER &
FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile:  (212) 872-1002
Daniel H. Golden
Philip C. Dublin

*Attorneys for the Notes Trustee*