Hearing Date:  November 15, 2013 at 2:00 p.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
J. Alexander Lawrence
Alexandra Steinberg Barrage

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------
|  | ) |  |
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
-------------------------------------------------------------------

**NOTICE OF FURTHER REVISED FORM OF ORDER GRANTING
DEBTORS' MOTION UNDER SECTION 365 OF THE BANKRUPTCY CODE
TO ASSUME AND ASSIGN SERVICING-RELATED AGREEMENTS FOR
TRUSTS INSURED BY SYNCORA GUARANTEE INC. TO OCWEN LOAN
<u>SERVICING, LLC</u>**

   **PLEASE TAKE NOTICE** that the undersigned will present the further revised *Order

Granting Debtors' Motion Under Section 365 of the Bankruptcy Code to Assume and Assign

Servicing-Related Agreements for Trusts Insured by Syncora Guarantee Inc. to Ocwen Loan

Servicing, LLC*, substantially in the form attached hereto as <u>Exhibit 1</u>, to the Honorable Martin

Glenn, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern

District of New York, Alexander Hamilton Custom House, One Bowling Green, New York,

New York 10004, Room 501, for signature at the hearing on **November 15, 2013 at 10:00 a.m.

(Prevailing Eastern Time)**.

1

**PLEASE TAKE NOTICE** that the further revised Order attached hereto as Exhibit 1,

amends and supersedes the previously filed *Order Granting Debtors' Motion Under Section 365*

*of the Bankruptcy Code to Assume and Assign Servicing-Related Agreements for Trusts Insured*

*by Syncora Guarantee Inc. to Ocwen Loan Servicing, LLC* [Docket No. 5771].


Dated: November 15, 2013                    Respectfully submitted,
       New York, New York


                                            By: /s/  Alexandra Steinberg Barrage
                                            Gary S. Lee
                                            J. Alexander Lawrence
                                            1290 Avenue of the Americas
                                            New York, New York 10104
                                            Tel: (212) 468-8000
                                            Fax: (212) 468- 7900

                                            Alexandra Steinberg Barrage
                                            2000 Pennsylvania Avenue, NW
                                            Washington, D.C.  20006
                                            Telephone:  (202) 887-1500
                                            Facsimile:  (202) 785-7525

                                            *Counsel for the Debtors*
                                            *and Debtors-in-Possession*

# EXHIBIT 1

**ASSUMPTION AND ASSIGNMENT ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                                     :

In re:                             :          Chapter 11
                                       :

RESIDENTIAL CAPITAL, LLC, *et al*.   :          Case No. 12-12020 (MG)
                                       :

               Debtors.      :          (Jointly Administered)
                                       :

----------------------------------------------------------x

## ORDER GRANTING DEBTORS' MOTION UNDER SECTION 365 OF THE BANKRUPTCY CODE TO ASSUME AND ASSIGN SERVICING-RELATED AGREEMENTS FOR TRUSTS INSURED BY SYNCORA GUARANTEE INC. TO OCWEN LOAN SERVICING, LLC

Upon the motion (the "***Motion***")[1] of the above-captioned debtors and debtors in possession (the "***Debtors***") for entry of an order (the "***Order***"), pursuant to section 365 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "***Local Rules***"), authorizing the assumption of certain servicing-related agreements (the "***Syncora-Related Agreements***") for trusts insured by Syncora Guarantee Inc. ("***Syncora***") and assignment of such agreements to Ocwen Loan Servicing, LLC ("***Ocwen***"), pursuant to and in accordance with the Sale Order, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and Syncora having filed an objection (the "***Objection***") to the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Motion on August 28, 2013 [D.I. 4870]; and a hearing having been held to consider the relief

requested in the Motion (the "***Hearing***"); and due and proper notice of the Hearing having been

provided; and the appearances of all interested parties having been noted in the record of the

Hearing, and upon the record of the Hearing; and all of the proceedings had before the Court;

and the legal and factual bases set forth in the Motion and the Objection establishing just and

sufficient cause to grant the requested relief, as modified, herein; and the Court having

determined that the relief requested in the Motion, as modified herein, is in the best interests of

the Debtors and their estates; and upon the record herein; and after due deliberation thereon; and

good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, DETERMINED, AND ORDERED THAT:**

      1.     The Motion is granted as set forth herein.

      2.     Pursuant to the Sale Order, section 365 of the Bankruptcy Code, Bankruptcy Rule

6006, Local Rule 6006-1, and the Stipulation (I) Resolving the Objection to Confirmation of

Syncora Guarantee Inc., (II) Resolving Syncora's Objection to the Sale, Assumption and

Assignment of Certain Servicing Agreements to Ocwen Loan Servicing LLC, (III) Fixing the

Allowed Amount of Syncora's Claims, and (IV) Granting Related Relief attached hereto as

**Exhibit 1** (the "***Settlement Stipulation***"), (a) the Debtors' assumption and assignment of the

Syncora-Related Agreements identified on **Exhibit 2** is hereby approved, and (b) the Cure

Amount payable to Syncora in connection with such assumption and assignment is ordered as set

forth in the Settlement Stipulation.

      3.     Consistent with the Settlement Stipulation, the assumption and assignment of the

Syncora-Related Agreements shall be subject to and governed by the terms of the Sale Order as

if set forth herein in its entirety.

4.      The Debtors are hereby authorized to execute and deliver all instruments and

documents, and take all other actions, as may be necessary or appropriate to implement and

effectuate the relief granted in this Order.

5.      This Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation or interpretation of this Order.


Dated: _____ __, 2013
        New York, New York


_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1 to Order**

**Settlement Stipulation**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**STIPULATION (I) RESOLVING THE OBJECTION TO CONFIRMATION OF
SYNCORA GUARANTEE INC., (II) RESOLVING SYNCORA'S OBJECTION
TO THE SALE, ASSUMPTION AND ASSIGNMENT OF CERTAIN
SERVICING AGREEMENTS TO OCWEN LOAN SERVICING, LLC, (III)
FIXING THE ALLOWED AMOUNT OF SYNCORA'S CLAIMS
AND (IV) GRANTING RELATED RELIEF**

This stipulation (the "**Stipulation**") is entered into on November 14, 2013 by and among Residential Capital, LLC and its affiliated debtors, as debtors and debtors in possession, (collectively, the "**Debtors**"), the Official Committee of Unsecured Creditors (the "**Committee**"), and Syncora Guarantee Inc. ("**Syncora**" and, together with the Debtors and the Committee, the "**Parties**").

## RECITALS

**I.     THE BANKRUPTCY CASES**

A.     On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").  Since the Petition Date, the Debtors have operated and managed their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Office of the United States Trustee for the Southern District of New York appointed the Committee on May 16, 2012.

2

## II.    THE SYNCORA TRANSACTIONS

B.    Prior to the Petition Date, certain of the Debtors acted as Master Servicer, Primary Servicer, Subservicer, Sponsor, Seller, or Depositor, as applicable, in connection with numerous transactions involving the securitization of residential mortgages (the "**RMBS Transactions**"). Certain of the Debtors were parties to the applicable Pooling and Servicing Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Purchase Agreements, Insurance & Indemnity Agreements and/or other agreements governing the RMBS Transactions (the "**Governing Agreements**").

C.    Syncora issued financial guaranty insurance policies (the "**Policies**") insuring certain trusts' payments of principal and interest to the holders of mortgage and/or asset-backed securities (*e.g.*, certificates, notes) issued by the trusts.  Specifically, Syncora issued Policies for the benefit of securities holders for (i) SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1 ("**STACS 2007-1**" or the "**SunTrust**" transaction), for which GMAC Mortgage, LLC ("**GMACM**") acted as Servicer; (ii) Bear Stearns Second Lien Trust 2007-SV1 ("**BSSLT 2007-SV1**" or the "**Bear Stearns**" transaction), for which GMACM acted as Servicer; (iii) GreenPoint Mortgage Funding Trust 20006-HE1 ("**GMFT 2006-HE1**" or the "**GreenPoint**" transaction) and (iv) Residential Accredit Loans, Inc., Series 2006-QO4 ("**RALI 2006-QO4**" or the "**RALI**" transaction, and together with STACS 2007-1, BSSLT 2007-SV1 and GMFT 2006-HE1, the "**Syncora-Insured Trusts**"), for which Residential Funding Company, LLC ("**RFC**") acted as Master Servicer (retaining all direct servicing functions), as well as transaction Sponsor and Seller to the trust.

### III.    THE SYNCORA PROOFS OF CLAIM

D.    On November 7, 2012, Syncora filed a proof of claim against GMACM seeking an unliquidated amount based on GMACM's role as servicer to three RMBS trusts that issued securities insured by Syncora: BSSLT 2007-SV1, STACS 2007-1, and GMFT 2006-HE1 [Claim No. 2781] (the "**Original Proof of Claim**").[1]  Those trusts were structured, marketed, and sold by non-debtor third parties (Bear Stearns, SunTrust and Lehman Brothers, respectively). GMACM did not sponsor these trusts.

E.    On August 13, 2013, the Debtors filed an objection to the Original Proof of Claim (the "**Original Objection**").  On September 3, 2013, Syncora filed a response [Dkt. No. 4925] to the Original Objection and attached an amended proof of claim, purporting to amend and supersede the Original Proof of Claim and moot the Original Objection.  On September 5, 2013, Syncora filed the amended proof of claim against GMACM, RFC and RALI with the ResCap Claims Processing Center [Claim No. 7164] (the "**First Amended Proof of Claim**").   On September 16, 2013, Syncora filed a second amended proof of claim against GMACM and RFC with the ResCap Claims Processing Center [Claim No. 7170] (the "**Second Amended Proof of Claim**").  The Second Amended Proof of Claim asserts claims against RFC, whereas the Original Proof of Claim did not mention RFC nor assert claims arising from the RALI 2006-QO4 Trust.   In total, the Second Amended Proof of Claim asserts over $300 million in claims.

F.    On September 19, 2013, the Debtors filed an objection seeking to disallow and expunge the Second Amended Proof of Claim (the "**Objection to the Second Amended Proof of Claim**").  [Dkt. No. 5115].  Syncora filed a response to the Objection to the Second Amended

Proof of Claim on October 15, 2013. [Dkt. No. 5358]. The Objection to the Second Amended Proof of Claim is scheduled to be heard by the Bankruptcy Court on November 15, 2013.

G. On March 21, 2013, the Bankruptcy Court entered an order which, among other things, approved claim settlement procedures (the "**Claims Procedures Order"**) [Dkt. No. 3294]. Pursuant to the Claims Procedures Order, Bankruptcy Court approval is not required for settlements agreed to by the Debtors and the Committee for the allowance of general unsecured claims if the aggregate amount to be allowed is less than $15 million.

## IV.    THE PLATFORM SALE AND SYNCORA'S OBJECTION TO THE SALE

H. On the Petition Date, the Debtors filed a motion (the "**Sale Motion**") [Dkt. No. 61] seeking, among other things, authorization to sell certain assets and approval of (i) related sale procedures, (ii) asset purchase agreements, and (iii) the assumption and assignment of certain executory contracts and unexpired leases related thereto.

I. On July 26, 2012, the Debtors filed their Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto [Dkt. No. 924] (the "**Assumption Notice**"), which was amended and restated on September 18, 2012 [Dkt. No. 1484] (the "**Amended Assumption Notice**"). The Assumption Notice listed the Bear Stearns, SunTrust and GreenPoint transactions for assumption and assignment of the servicing agreements held by GMACM pursuant to the Sale Motion.

---

[1] The Original Proof of Claim did not reference RALI 2006-QO4. In addition, Syncora acknowledges that although the GMFT 2006-HE1 transaction was included in the Original Proof of Claim, Syncora is not asserting a claim against any Debtors with respect to GMFT 2006-HE1. (Second Amended POC at n. 1).

5

J.      Syncora filed objections to the sale of the Syncora servicing agreements on September 28, 2012 and October 29, 2012 [Dkt. Nos. 1657 and 1996] (collectively, the "**Syncora Sale Objection**").

K.      On November 21, 2012, the Bankruptcy Court entered sale orders approving the Debtors' sales of assets to Berkshire Hathaway, Inc. [Dkt. No. 2247] and Ocwen Loan Servicing, LLC ("**Ocwen**") [Dkt. No. 2246] (the "**Ocwen Sale Order**").   The Ocwen sale closed on February 15, 2013 (the "**Closing Date**").   Since the Closing Date, the relevant loans subject of the trusts identified in the Assumption and Assignment Motion (as defined below) have been subserviced by Ocwen on behalf of GMACM pursuant to the Subservicing Agreement entered into by and among certain of the Debtors and Ocwen, as subservicer, effective as of the Closing Date (the "**Ocwen Subservicing Agreement**").

L.      On August 15, 2013, the Debtors filed a motion to assume and assign the servicing-related agreements pertaining to the three trusts identified in the Original Proof of Claim to Ocwen pursuant to and in accordance with the terms of the  Ocwen Sale Order, and asserted that Syncora was not entitled to any cure payment [Dkt. No. 4718] (the "**Assumption and Assignment Motion**").   On August 28, 2013, Syncora objected to the Assumption and Assignment Motion. [Dkt. No. 4870].   On September 9, 2013, the Debtors filed a reply to Syncora's objection to the Assumption and Assignment Motion. [Dkt. No. 4976].

## V.      THE PLAN AND SYNCORA'S CONFIRMATION OBJECTION

M.      The Debtors and the Committee, as co-plan proponents, have solicited votes on a joint Chapter 11 plan (as may be amended from time to time, the "**Plan**").  Ex. 1 to *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the*

*Official Committee of Unsecured Creditors* [Dkt. No. 4819].[2]  On October 21, 2013, Syncora

filed an objection to confirmation of the Plan. [Dkt.  No. 5418]. Syncora has not submitted a

ballot for the acceptance or rejection of the Plan.

N.      The Parties  engaged in arms'-length negotiations regarding a possible settlement

of Syncora's claims, Syncora's Sale Objection, Syncora's Objection to the Assumption and

Assignment Motion, Syncora's objection to the Plan, and related issues.   The Parties have

reached an agreement, as set forth in this Stipulation.

## AGREEMENT

1.      Assumption and Assignment Order.   Within one business day after

execution of this Stipulation by the Parties, the Debtors shall file a notice of a proposed order

with the Bankruptcy Court requesting entry of an order substantially in the form attached hereto

as Exhibit "A," (the "**Assumption and Assignment Order**"), resolving the Assumption and

Assignment Motion and providing, *inter alia*, for the assumption and assignment of the

agreements identified on Exhibit 2 annexed to the Assumption and Assignment Order (the

"**Assigned Agreements**") pursuant to and in accordance with the Ocwen Sale Order and fixing

the Cure Amount (as defined below).  The Parties shall thereafter use commercially reasonable

efforts to obtain prompt entry of the Assumption and Assignment Order.

2.      Plan Support.   Upon entry of the Assumption and Assignment Order

substantially in the form annexed hereto (i) Syncora's objections to the Plan are deemed

withdrawn, (ii) Syncora shall be deemed to have accepted the Plan, and (iii) Syncora shall

otherwise support the Plan in accordance with Sections 4.1(c) and (e) of the Plan Support

Agreement, dated as of May 13, 2013, entered into by and among the Debtors, Ally Financial

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

Inc. and its non-debtor affiliates, the Committee, and the claimants identified therein.  [Dkt. No.

3814, Ex. 3].

   3. <u>Transfer of Assets</u>. After the entry of the Assumption and Assignment

Order, the Debtors shall assume and assign the Assigned Agreements to Ocwen pursuant to and

in accordance with the provisions of the Ocwen Sale Order.  The Debtors agree to notify Syncora

of the completion of the assignment of the Assigned Agreements to Ocwen within one business

day of such assignment, which notice may be by email to the undersigned counsel.  As between

Ocwen and Syncora, the assumption and assignment of the Assigned Agreements shall be

subject to and governed by the Ocwen Sale Order as if fully set forth herein.  For the avoidance

of doubt, the timing of (a) the closing of the transfer of the Assigned Agreements from the

Debtors to Ocwen and (b) the calculation of the purchase price thereunder (together, the

"Closing and Calculation") shall be governed by the Asset Purchase Agreement dated November

2, 2012 among Ocwen and certain of the Debtors (as amended from time to time, including,

without limitation, Amendment Nos. 1-3).  The Parties agree that as between the Debtors and

Syncora notwithstanding anything in the Plan or in any other document or court filing to the

contrary, the Debtors' assumption and assignment of the Assigned Agreements as provided for

herein, and its payment of the Cure Amount (as defined below), shall be final and irrevocable.

Nothing herein shall alter, change, modify or amend the terms and provisions of the Ocwen Sale

Order or the Ocwen APA.  The Parties agree to meet and confer within three business days after

entry of the Assumption and Assignment Order to discuss the prompt closing of the transfer of

the Assigned Agreements.

   4. <u>Continued Servicing.</u>  The Parties acknowledge that, consistent with the

Plan, the Liquidating Trust (as that term is defined in the Plan) will succeed to (i) the Debtors'

KL2 2819633.21

rights and obligations under  the Ocwen Subservicing Agreement, which shall not be removed

from the Debtors' schedule of postpetition agreements to which a Debtor is a party that will vest

in the Liquidating Trust [Dkt. No. 5546], and (ii) the Debtors' rights and obligations under this

Stipulation, the Assigned Agreements, and the Assumption and Assignment Order.  In the event

that the Debtors or their successors breach the Ocwen Subservicing Agreement with respect to

the Syncora-Insured Trusts, the Parties reserve all rights, including the ability to assert

administrative expense claims under the Plan.

       5.    Cure Amount.  The Parties agree that the cure amount that the Debtors

shall pay to Syncora in connection with the assumption and assignment to Ocwen of the

Assigned Agreements is $4,500,000.00 (the "**Cure Amount**").  The Debtors shall pay the Cure

Amount to Syncora by wire transfer within 3 business days following the earlier of (i)

completion of the assignment of the Assigned Agreements to Ocwen or (ii) February 1, 2014.

To the extent the Closing and Calculation has not occurred prior to the effective date of the Plan,

the Liquidation Trust shall be responsible for payment of the Cure Amount.

       6.    Allowed General Unsecured Claims.  In full and final satisfaction of any

and all claims that have been or could have been asserted by Syncora in these cases in excess of

the Cure Amount, Syncora's claims shall be reduced and allowed as follows: (a) a $7,840,000.00

claim against GMACM as an Allowed General Unsecured Claim in Class GS-4, and (b) a

$7,113,000.00 claim against RFC as an Allowed General Unsecured Claim in Class RS-4. In

accordance with the foregoing, (i) Syncora shall receive its Pro Rata Share of the GMACM

Debtors Unit Distribution and its Pro Rata Share of the RFC Debtors Unit Distribution, as

applicable; (ii) the Debtors agree to withdraw the Original Objection and the Objection to the

Second Amended Proof of Claim; and (iii) Syncora's claims against any Debtors other than

GMACM and RFC shall be disallowed and expunged without any further order or action. For the avoidance of doubt, payment of the Cure Amount does not and shall not reduce the allowed amount of the foregoing allowed unsecured claims. In the event that the Plan does not become effective, this paragraph shall be null and void, and the Parties reserve all of their rights and defenses with respect to the claims otherwise resolved pursuant to this paragraph, nothing herein shall constitute an admission by the Parties regarding the validity or amount of the claims or any legal arguments related thereto, and Syncora's rights to object to any future plan, claim objection or other pleading in these cases are reserved.

7.    Releases. Syncora acknowledges and agrees that, upon the effective date of the Plan, it shall be subject to the terms set forth in Articles IX.D (*Third Party Release*), IX.G (*Exculpation*), and IX.H (*Injunction*) of the Plan as set forth in Exhibit 1 to *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Dkt. No. 4819], and Syncora reserves its rights to oppose any expansion of the foregoing to the extent Syncora is materially and adversely affected by such expansion.

8.    In exchange for the consideration provided herein, on and as of the effective date of the Plan, the Debtors, on behalf of themselves, their estates and successors including any liquidating trust ("the **Debtor Releasors**"), release and discharge Syncora and its predecessors in interest, successors in interest, present and former parents, subsidiaries, affiliates, agents, representatives, officers, directors, executives, owners, shareholders, principals, insurers (in their capacity as insurers of Syncora), subrogees, partners, members, employees, trustees, successors, assigns, and attorneys (the "**Syncora Releasees**") from any and all claims, actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances,

KL2 2819633.21

lawsuits, adverse consequences, debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims and reimbursement claims whatsoever, whether known or unknown, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, whether held in a personal or representative capacity, that are or may be pending as of the date hereof or instituted hereafter by any Debtor Releasor against any Syncora Releasee, arising in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise (the "**Causes of Action**"), including those Causes of Action based on avoidance liability under federal or state laws, veil piercing or alter-ego theories of liability, a theory of debt recharacterization, or equitable subordination liability, arising from or related in any way to the Debtors, including those that any of the Debtors would have been legally entitled to assert against a Syncora Releasee in its own right (whether individually or collectively) or that any holder of a claim or equity interest, a liquidating trust, or other entity would have been legally entitled to assert on behalf of any of those Debtors or any of their Estates, including those in any way related to the Chapter 11 Cases or the Plan to the fullest extent of the law; provided, however, this release does not extend to claims regarding Syncora's rights or obligations under this Stipulation.

9.    The final sentence of Article IV.C.3(e) of the August 23, 2013 iteration of the Plan states, "Notwithstanding the foregoing or anything to the contrary in any governing agreement, no distributions from the GMACM Pool or the RFC Pool will be paid over to any Monoline." The Parties agree that the foregoing sentence does not purport to amend any of

KL2 2819633.21

Syncora's rights under the Governing Agreements and/or the Policies to receive reimbursement or subrogation recoveries from any of the Syncora-Insured Trusts from funds received by any such trust from a non-Debtor.

10.    The Debtors and the Committee agree that they will not amend the Plan in any manner that (i) is inconsistent with the terms of this Stipulation or (ii) materially and adversely affects Syncora's interests.

11.    Commitment to Cooperate.  Each party agrees to provide such cooperation (at its own cost and expense) as may be reasonably necessary to implement this Stipulation.

12.    No Transfer.   Syncora represents that it has not sold, assigned, or otherwise transferred any of the claims that are the subject of this Stipulation to a third party and that it has full power and authority to enter into this Stipulation.

13.    Entire Agreement.  This Stipulation and the exhibits and annexes hereto constitute the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.

14.    No Reliance.  Each Party acknowledges and agrees that it has not relied on any statement or representation of any other Party, person, or entity in determining to enter into this Stipulation.

15.    No Admission.  Each Party acknowledges and agrees that nothing in this Stipulation constitutes an admission or concession of any legal or factual issue raised in any claim asserted against the Debtors or any matter raised by the Debtors vis-à-vis Syncora.

16.    Costs and Expenses.  Each Party agrees to bear its own costs, expenses, and attorneys' fees incurred in connection with the negotiations related to and the preparation of

KL2 2819633.21

this Stipulation and to not seek from each other reimbursement of any such costs, expenses, or attorneys' fees.

17.    <u>Waiver of Rights</u>.  This paragraph constitutes a waiver of Section 1542 of the California Civil Code and any similar or comparable provisions, rights and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law, which provide:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

18.    <u>Jurisdiction and Choice of Law</u>.   The Bankruptcy Court shall retain jurisdiction over the implementation of this Stipulation and any disputes arising thereunder.  This Stipulation shall be governed by and interpreted in accordance with the laws of the state of New York, without regard to principles of conflicts of laws of that would require the application of laws of another jurisdiction.

19.    <u>Representative Capacity</u>.   Each person executing this Stipulation in a representative capacity represents and warrants that he or she is empowered to do so.

20.    <u>Execution</u>.    This Stipulation may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement. Any of the Parties may execute this Stipulation by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original.

KL2 2819633.21

21.    <u>Claims Register</u>.  The Debtors, the Debtors' claims agent, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

KL2 2819633.21

Agreed to this 14th of November, 2013:

**WOLLMUTH MAHER & DEUTSCH LLP**        **MORRISON & FOERSTER LLP**

By:   /s/ Randall R. Rainer                       By:  /s/  Alexandra Steinberg Barrage
Paul R. DeFilippo                                       Gary S. Lee
Randall R. Rainer                                  J. Alexander Lawrence
Fletcher W. Strong                             1290 Avenue of the Americas
500 Fifth Avenue                               New York, New York 10104
New York, New York 10110                  Tel: (212) 468-8000
(212) 382-3300                                 Fax: (212) 468- 7900

*Attorneys for Syncora Guarantee Inc.*       Alexandra Steinberg Barrage
                                              2000 Pennsylvania Avenue, NW
                                              Washington, D.C.  20006
                                              Telephone:  (202) 887-1500
                                              Facsimile:  (202) 785-7525

                                              *Counsel for the Debtors*
                                              *and Debtors-in-Possession*

**KRAMER LEVIN NAFTALIS &**
**FRANKEL LLP**

By:   /s/ Douglas H. Mannal
Kenneth H. Eckstein
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
Fax: (212) 715-8000

*Counsel for Official Committee of Unsecured*
*Creditors*

KL2 2819633.21

Acknowledged and agreed with respect to decretal paragraph 3:

**CLIFFORD CHANCE US LLP**

By: /s/ Jennifer C. DeMarco
Jennifer C. DeMarco
Adam Lesman
31 West 52nd Street
New York, New York  10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375

*Attorneys for Ocwen Loan Servicing, LLC*

16

**Exhibit 2 to Order**
**Syncora-Related Agreements**

Bear Stearns Second Lien Trust 2007-SV1

- Servicing Agreement, dated as of May 1, 2001, as amended by Amendment No. 1, dated as of October 1, 2001, Amendment No. 2, dated as of July 31, 2002 and Amendment No. 3, dated as of December 20, 2005, between EMC Mortgage Corporation and GMAC Mortgage, LLC

- Insurance and Indemnity Agreement, dated as of March 30, 2007, among XL Capital Assurance Inc., EMC Mortgage Corporation, SACO I Inc., GMAC Mortgage, LLC and Citibank, N.A.

- Side Letter Agreement, dated as of March 30, 2007, between GMAC Mortgage, LLC and XL Capital Assurance Inc.

- Assignment, Assumption and Recognition Agreement, dated as of March 30, 2007, among EMC Mortgage Corporation, Citibank, N.A. and GMAC Mortgage, LLC

Greenpoint Mortgage Funding Trust 2006-HE1

- Transfer and Servicing Agreement, dated as of August 1, 2006, as amended by Amendment No. 1, dated as of September 1, 2006, among GreenPoint Mortgage Funding Trust 2006-HE1, as issuer, Structured Asset Securities Corporation, as depositor, GMAC Mortgage Corporation, as servicer and U.S. Bank National Association, as indenture trustee

- Insurance and Indemnity Agreement, dated as of August 28, 2006, among XL Capital Assurance Inc., Lehman Brothers Holdings Inc., Structured Asset Securities Corporation, Greenpoint Mortgage Funding Trust 2006- HE1, GMAC Mortgage Corporation and U.S. Bank National Association

- Side Letter Agreement, dated as of September 12, 2006, between GMAC Mortgage Corporation and XL Capital Assurance Inc.

- Flow Revolving Credit Loan Purchase and Warranties Agreement, dated as of September 26, 2005, between GMAC Mortgage Corporation, as Purchaser and Greenpoint Mortgage Funding, Inc., as Seller

- Flow Mortgage Loan Purchase and Warranties Agreement, dated as of July 26, 2006, between GMAC Mortgage Corporation, as Purchaser and Greenpoint Mortgage Funding, Inc., as Seller

- Assignment, Assumption and Recognition Agreement, dated as of July 28, 2006, among GMAC Mortgage Corporation, Lehman Brothers Bank, FSB, and Greenpoint Mortgage Funding, Inc.

- Custodial Agreement, dated as of August 1, 2006, among Deutsche Bank National Trust Company, as custodian, U.S. Bank National Association, as indenture trustee and Greenpoint Mortgage Funding Trust 2006-HE1, as issuer (to the extent of the Debtors' rights and obligations thereunder, if any)

- Custodial Agreement, dated as of August 1, 2006, among U.S. Bank National Association, as custodian and as trustee and Greenpoint Mortgage Funding Trust 2006-HE1, as issuer (to the extent of the Debtors' rights and obligations thereunder, if any)

SunTrust Acquisition Closed-End Second Trust, Series 2007-1

- Pooling and Servicing Agreement, dated as of April 1, 2007, among ACE Securities Corp., as depositor, GMAC Mortgage, LLC, as servicer, Wells Fargo Bank, National Association, as master servicer and securities administrator and HSBC Bank USA, National Association, as trustee

- Insurance and Indemnity Agreement, dated as of May 15, 2007, among XL Capital Assurance Inc., SunTrust Asset Funding, LLC, SunTrust Bank, ACE Securities Corp., GMAC Mortgage, LLC and Wells Fargo Bank, National Association

- GMACM Side Letter Agreement, dated as of May 15, 2007, between GMAC Mortgage, LLC and XL Capital Assurance Inc.

- Credit Risk Management Agreement, dated as of May 14, 2007, between GMAC Mortgage, LLC and Clayton Fixed Income Services Inc.

- Premium Letter, dated as of May 15, 2007, among XL Capital Assurance Inc., HSBC Bank USA, National Association, Wells Fargo Bank, National Association, SunTrust Asset Funding, LLC, GMAC Mortgage, LLC and ACE Securities Corp.

- Custodial Agreement, dated as of April 1, 2007, among HSBC Bank USA, National Association, as trustee, GMAC Mortgage, LLC, as servicer and Deutsche Bank National Trust Company, as custodian

- Mortgage Loan Purchase and Sale Agreement, dated as of May 15, 2007, between GMAC Mortgage, LLC as purchaser and SunTrust Asset Funding, LLC

- Assignment, Assumption and Recognition Agreement, dated May 15, 2007 among GMAC Mortgage, LLC, ACE Securities Corp., SunTrust Asset Funding, LLC, and Wells Fargo Bank, N.A.

* As well as all other agreements memorializing these three transactions, to which the Debtors were party.

KL2 2819633.21

Redline of

Exhibits to *Order Granting Debtors' Motion under Section 365 of the Bankruptcy Code to Assume and Assign Servicing-Related Agreements for Trusts Insured by Syncora Guarantee Inc. to Ocwen Loan Servicing, LLC*

**<u>Exhibit 1 to Order</u>**

**Settlement Stipulation**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**STIPULATION (I) RESOLVING THE OBJECTION TO CONFIRMATION OF
SYNCORA GUARANTEE INC., (II) RESOLVING SYNCORA'S OBJECTION
TO THE SALE, ASSUMPTION AND ASSIGNMENT OF CERTAIN
SERVICING AGREEMENTS TO OCWEN LOAN SERVICING, LLC, (III)
FIXING THE ALLOWED AMOUNT OF SYNCORA'S CLAIMS
AND (IV) GRANTING RELATED RELIEF**

This stipulation (the "**Stipulation**") is entered into on November 14, 2013 by and among Residential Capital, LLC and its affiliated debtors, as debtors and debtors in possession, (collectively, the "**Debtors**"), the Official Committee of Unsecured Creditors (the "**Committee**"), and Syncora Guarantee Inc. ("**Syncora**" and, together with the Debtors and the Committee, the "**Parties**").

**RECITALS**

**I.     THE BANKRUPTCY CASES**

A.     On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").  Since the Petition Date, the Debtors have operated and managed their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Office of the United States Trustee for the Southern District of New York appointed the Committee on May 16, 2012.

KL2 2819633.21

## II.    THE SYNCORA TRANSACTIONS

B.    Prior to the Petition Date, certain of the Debtors acted as Master Servicer, Primary Servicer, Subservicer, Sponsor, Seller, or Depositor, as applicable, in connection with numerous transactions involving the securitization of residential mortgages (the "**RMBS Transactions**").  Certain of the Debtors were parties to the applicable Pooling and Servicing Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Purchase Agreements, Insurance & Indemnity Agreements and/or other agreements governing the RMBS Transactions (the "**Governing Agreements**").

C.    Syncora issued financial guaranty insurance policies (the "**Policies**") insuring certain trusts' payments of principal and interest to the holders of mortgage and/or asset-backed securities (*e.g.*, certificates, notes) issued by the trusts.  Specifically, Syncora issued Policies for the benefit of securities holders for (i) SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1 ("**STACS 2007-1**" or the "**SunTrust**" transaction), for which GMAC Mortgage, LLC ("**GMACM**") acted as Servicer; (ii) Bear Stearns Second Lien Trust 2007-SV1 ("**BSSLT 2007-SV1**" or the "**Bear Stearns**" transaction), for which GMACM acted as Servicer; (iii) GreenPoint Mortgage Funding Trust 20006-HE1 ("**GMFT 2006-HE1**" or the "**GreenPoint**" transaction) and (iv) Residential Accredit Loans, Inc., Series 2006-QO4 ("**RALI 2006-QO4**" or the "**RALI**" transaction, and together with STACS 2007-1, BSSLT 2007-SV1 and GMFT 2006-HE1, the "**Syncora-Insured Trusts**"), for which Residential Funding Company, LLC ("**RFC**") acted as Master Servicer (retaining all direct servicing functions), as well as transaction Sponsor and Seller to the trust.

3

### III.    THE SYNCORA PROOFS OF CLAIM

D.    On November 7, 2012, Syncora filed a proof of claim against GMACM seeking an unliquidated amount based on GMACM's role as servicer to three RMBS trusts that issued securities insured by Syncora: BSSLT 2007-SV1, STACS 2007-1, and GMFT 2006-HE1 [Claim No. 2781] (the "**Original Proof of Claim**").[1]  Those trusts were structured, marketed, and sold by non-debtor third parties (Bear Stearns, SunTrust and Lehman Brothers, respectively). GMACM did not sponsor these trusts.

E.    On August 13, 2013, the Debtors filed an objection to the Original Proof of Claim (the "**Original Objection**").  On September 3, 2013, Syncora filed a response [Dkt. No. 4925] to the Original Objection and attached an amended proof of claim, purporting to amend and supersede the Original Proof of Claim and moot the Original Objection.  On September 5, 2013, Syncora filed the amended proof of claim against GMACM, RFC and RALI with the ResCap Claims Processing Center [Claim No. 7164] (the "**First Amended Proof of Claim**").   On September 16, 2013, Syncora filed a second amended proof of claim against GMACM and RFC with the ResCap Claims Processing Center [Claim No. 7170] (the "**Second Amended Proof of Claim**").   The Second Amended Proof of Claim asserts claims against RFC, whereas the Original Proof of Claim did not mention RFC nor assert claims arising from the RALI 2006-QO4 Trust.   In total, the Second Amended Proof of Claim asserts over $300 million in claims.

F.    On September 19, 2013, the Debtors filed an objection seeking to disallow and expunge the Second Amended Proof of Claim (the "**Objection to the Second Amended Proof**

---

[1] The Original Proof of Claim did not reference RALI 2006-QO4.  In addition, Syncora acknowledges that although the GMFT 2006-HE1 transaction was included in the Original Proof of Claim, Syncora is not asserting a claim against any Debtors with respect to GMFT 2006-HE1. (Second Amended POC at n. 1).

of Claim"). [Dkt. No. 5115]. Syncora filed a response to the Objection to the Second Amended

Proof of Claim on October 15, 2013. [Dkt. No. 5358]. The Objection to the Second Amended

Proof of Claim is scheduled to be heard by the Bankruptcy Court on November 15, 2013.

G.    On March 21, 2013, the Bankruptcy Court entered an order which, among other

things, approved claim settlement procedures (the "**Claims Procedures Order**") [Dkt. No.

3294]. Pursuant to the Claims Procedures Order, Bankruptcy Court approval is not required for

settlements agreed to by the Debtors and the Committee for the allowance of general unsecured

claims if the aggregate amount to be allowed is less than $15 million.

## IV.    THE PLATFORM SALE AND SYNCORA'S OBJECTION TO THE SALE

H.    On the Petition Date, the Debtors filed a motion (the "**Sale Motion**") [Dkt. No.

61] seeking, among other things, authorization to sell certain assets and approval of (i) related

sale procedures, (ii) asset purchase agreements, and (iii) the assumption and assignment of

certain executory contracts and unexpired leases related thereto.

I.    On July 26, 2012, the Debtors filed their Notice of (I) Debtors' Intent to Assume

and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired

Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto [Dkt. No. 924]

(the "**Assumption Notice**"), which was amended and restated on September 18, 2012 [Dkt. No.

1484] (the "**Amended Assumption Notice**"). The Assumption Notice listed the Bear Stearns,

SunTrust and GreenPoint transactions for assumption and assignment of the servicing

agreements held by GMACM pursuant to the Sale Motion.

J.       Syncora filed objections to the sale of the Syncora servicing agreements on

September 28, 2012 and October 29, 2012 [Dkt. Nos. 1657 and 1996] (collectively, the

"**Syncora Sale Objection**").

K.       On November 21, 2012, the Bankruptcy Court entered sale orders approving the

Debtors' sales of assets to Berkshire Hathaway, Inc. [Dkt. No. 2247] and Ocwen Loan Servicing,

LLC ("**Ocwen**") [Dkt. No. 2246] (the "**Ocwen Sale Order**").   The Ocwen sale closed on

February 15, 2013 (the "**Closing Date**").   Since the Closing Date, the relevant loans subject of

the trusts identified in the Assumption and Assignment Motion (as defined below) have been

subserviced by Ocwen on behalf of GMACM pursuant to the Subservicing Agreement entered

into by and among certain of the Debtors and Ocwen, as subservicer, effective as of the Closing

Date (the "**Ocwen Subservicing Agreement**").

L.       On August 15, 2013, the Debtors filed a motion to assume and assign the

servicing-related agreements pertaining to the three trusts identified in the Original Proof of

Claim to Ocwen pursuant to and in accordance with the terms of the  Ocwen Sale Order, and

asserted that Syncora was not entitled to any cure payment [Dkt. No. 4718] (the "**Assumption**

**and Assignment Motion**").   On August 28, 2013, Syncora objected to the Assumption and

Assignment Motion. [Dkt. No. 4870].   On September 9, 2013, the Debtors filed a reply to

Syncora's objection to the Assumption and Assignment Motion. [Dkt. No. 4976].

## V.       THE PLAN AND SYNCORA'S CONFIRMATION OBJECTION

M.       The Debtors and the Committee, as co-plan proponents, have solicited votes on a

joint Chapter 11 plan (as may be amended from time to time, the "**Plan**").   Ex. 1 to *Disclosure*

*Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the*

*Official Committee of Unsecured Creditors* [Dkt. No. 4819].[2]  On October 21, 2013, Syncora

filed an objection to confirmation of the Plan. [Dkt.  No. 5418]. Syncora has not submitted a

ballot for the acceptance or rejection of the Plan.

       N.      The Parties  engaged in arms'-length negotiations regarding a possible settlement

of Syncora's claims, Syncora's Sale Objection, Syncora's Objection to the Assumption and

Assignment Motion, Syncora's objection to the Plan, and related issues.   The Parties have

reached an agreement, as set forth in this Stipulation.

**AGREEMENT**

       1.      <u>Assumption and Assignment Order</u>.  Within one business day after

execution of this Stipulation by the Parties, the Debtors shall file a notice of a proposed order

with the Bankruptcy Court requesting entry of an order substantially in the form attached hereto

as Exhibit "A," (the "**Assumption and Assignment Order**"), resolving the Assumption and

Assignment Motion and providing, *inter alia*, for the assumption and assignment of the

agreements identified on <u>Exhibit 2</u> annexed to the Assumption and Assignment Order (the

"**Assigned Agreements**") pursuant to and in accordance with the Ocwen Sale Order and fixing

the Cure Amount (as defined below).  The Parties shall thereafter use commercially reasonable

efforts to obtain prompt entry of the Assumption and Assignment Order.

       2.      <u>Plan Support</u>.  Upon entry of the Assumption and Assignment Order

substantially in the form annexed hereto (i) Syncora's objections to the Plan are deemed

withdrawn, (ii) Syncora shall be deemed to have accepted the Plan, and (iii) Syncora shall

otherwise support the Plan in accordance with Sections 4.1(c) and (e) of the Plan Support

Agreement, dated as of May 13, 2013, entered into by and among the Debtors, Ally Financial

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

KL2 2819633.21

Inc. and its non-debtor affiliates, the Committee, and the claimants identified therein.  [Dkt. No. 3814, Ex. 3].

        3.      <u>Transfer of Assets</u>.   After the entry of the Assumption and Assignment Order, the Debtors shall assume and assign the Assigned Agreements to Ocwen pursuant to and in accordance with the provisions of the Ocwen Sale Order.   The Debtors agree to notify Syncora of the completion of the assignment of the Assigned Agreements to Ocwen within one business day of such assignment, which notice may be by email to the undersigned counsel.   As between Ocwen and Syncora, the assumption and assignment of the Assigned Agreements shall be subject to and governed by the Ocwen Sale Order as if fully set forth herein.   For the avoidance of doubt, the timing of (a) the closing of the transfer of the Assigned Agreements from the Debtors to Ocwen and (b) the calculation of the purchase price thereunder (together, the "Closing and Calculation") shall be governed by the Asset Purchase Agreement dated November 2, 2012 among Ocwen and certain of the Debtors (as amended from time to time, including, without limitation, Amendment Nos. 1-3).   The Parties agree that as between the Debtors and Syncora notwithstanding anything in the Plan or in any other document or court filing to the contrary, the Debtors' assumption and assignment of the Assigned Agreements as provided for herein, and its payment of the Cure Amount (as defined below), shall be final and irrevocable. Nothing herein shall alter, change, modify or amend the terms and provisions of the Ocwen Sale Order or the Ocwen APA.  The Parties agree to meet and confer within three business days after entry of the Assumption and Assignment Order to discuss the prompt closing of the transfer of the Assigned Agreements.

4.    Continued Servicing.  The Parties acknowledge that, consistent with the

Plan, the Liquidating Trust (as that term is defined in the Plan) will succeed to (i) to the Debtors'

rights and obligations under  the Ocwen Subservicing Agreement, which shall not be removed

from the Debtors' schedule of postpetition agreements to which a Debtor is a party that will vest

in the Liquidating Trust [Dkt. No. 5546], and (ii) the Debtors' rights and obligations under this

Stipulation, the Assigned Agreements, and the Assumption and Assignment Order.  In the event

that the Debtors or their successors breach the Ocwen Subservicing Agreement with respect to

the Syncora-Insured Trusts, the Parties reserve all rights, including the ability to assert

administrative expense claims under the Plan.

5.    Cure Amount.  The Parties agree that the cure amount that the Debtors

shall pay to Syncora in connection with the assumption and assignment to Ocwen of the

Assigned Agreements is $4,500,000.00 (the "**Cure Amount**").  The Debtors shall pay the Cure

Amount to Syncora by wire transfer within 3 business days following the earlier of (i)

completion of the assignment of the Assigned Agreements to Ocwen or (ii) February 1, 2014.

To the extent the Closing and Calculation has not occurred prior to the effective date of the Plan,

the Liquidation Trust shall be responsible for payment of the Cure Amount.

6.    Allowed General Unsecured Claims.  In full and final satisfaction of any

and all claims that have been or could have been asserted by Syncora in these cases in excess of

the Cure Amount, Syncora's claims shall be reduced and allowed as follows: (a) a $7,840,000.00

claim against GMACM as an Allowed General Unsecured Claim in Class GS-4, and (b) a

$7,113,000.00 claim against RFC as an Allowed General Unsecured Claim in Class RS-4. In

accordance with the foregoing, (i) Syncora shall receive its Pro Rata Share of the GMACM

Debtors Unit Distribution and its Pro Rata Share of the RFC Debtors Unit Distribution, as

applicable; (ii) the Debtors agree to withdraw the Original Objection and the Objection to the Second Amended Proof of Claim; and (iii) Syncora's claims against any Debtors other than GMACM and RFC shall be disallowed and expunged without any further order or action. For the avoidance of doubt, payment of the Cure Amount does not and shall not reduce the allowed amount of the foregoing allowed unsecured claims. In the event that the Plan does not become effective, this paragraph shall be null and void, and the Parties reserve all of their rights and defenses with respect to the claims otherwise resolved pursuant to this paragraph, nothing herein shall constitute an admission by the Parties regarding the validity or amount of the claims or any legal arguments related thereto, and Syncora's rights to object to any future plan, claim objection or other pleading in these cases are reserved.

7.      Releases. Syncora acknowledges and agrees that, upon the effective date of the Plan, it shall be subject to the terms set forth in Articles IX.D (*Third Party Release*), IX.G (*Exculpation*), and IX.H (*Injunction*) of the Plan as set forth in Exhibit 1 to *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Dkt. No. 4819], and Syncora reserves its rights to oppose any expansion of the foregoing to the extent Syncora is materially and adversely affected by such expansion.

8.      In exchange for the consideration provided herein, on and as of the effective date of the Plan, the Debtors, on behalf of themselves, their estates and successors including any liquidating trust ("the "**Debtor Releasors**"), release and discharge Syncora and its predecessors in interest, successors in interest, present and former parents, subsidiaries, affiliates, agents, representatives, officers, directors, executives, owners, shareholders, principals, insurers (in their capacity as insurers of Syncora), subrogees, partners, members,

KL2 2819633.21

employees, trustees, successors, assigns, and attorneys (the "**Syncora Releasees**") from any and all claims, actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims and reimbursement claims whatsoever, whether known or unknown, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, whether held in a personal or representative capacity, that are or may be pending as of the date hereof or instituted hereafter by any Debtor Releasor against any Syncora Releasee, arising in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise (the "**Causes of Action**"), including those Causes of Action based on avoidance liability under federal or state laws, veil piercing or alter-ego theories of liability, a theory of debt recharacterization, or equitable subordination liability, arising from or related in any way to the Debtors, including those that any of the Debtors would have been legally entitled to assert against a Syncora Releasee in its own right (whether individually or collectively) or that any holder of a claim or equity interest, a liquidating trust, or other entity would have been legally entitled to assert on behalf of any of those Debtors or any of their Estates, including those in any way related to the Chapter 11 Cases or the Plan to the fullest extent of the law; provided, however, this release does not extend to claims regarding Syncora's rights or obligations under this Stipulation.

9.      The final sentence of Article IV.C.3(e) of the August 23, 2013 iteration of the Plan states, "Notwithstanding the foregoing or anything to the contrary in any governing

KL2 2819633.21

agreement, no distributions from the GMACM Pool or the RFC Pool will be paid over to any Monoline." The Parties agree that the foregoing sentence does not purport to amend any of Syncora's rights under the Governing Agreements and/or the Policies to receive reimbursement or subrogation recoveries from any of the Syncora-Insured Trusts from funds received by any such trust from a non-Debtor.

10.     The Debtors and the Committee agree that they will not amend the Plan in any manner that (i) is inconsistent with the terms of this Stipulation or (ii) materially and adversely affects Syncora's interests.

11.     <u>Commitment to Cooperate</u>.  Each party agrees to provide such cooperation (at its own cost and expense) as may be reasonably necessary to implement this Stipulation.

12.     <u>No Transfer</u>.  Syncora represents that it has not sold, assigned, or otherwise transferred any of the claims that are the subject of this Stipulation to a third party and that it has full power and authority to enter into this Stipulation.

13.     <u>Entire Agreement</u>.  This Stipulation and the exhibits and annexes hereto constitute the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.

14.     <u>No Reliance</u>.  Each Party acknowledges and agrees that it has not relied on any statement or representation of any other Party, person, or entity in determining to enter into this Stipulation.

15.     <u>No Admission</u>.  Each Party acknowledges and agrees that nothing in this Stipulation constitutes an admission or concession of any legal or factual issue raised in any claim asserted against the Debtors or any matter raised by the Debtors vis-à-vis Syncora.

KL2 2819633.21

16.    <u>Costs and Expenses</u>.  Each Party agrees to bear its own costs, expenses, and attorneys' fees incurred in connection with the negotiations related to and the preparation of this Stipulation and to not seek from each other reimbursement of any such costs, expenses, or attorneys' fees.

17.    <u>Waiver of Rights</u>.  This paragraph constitutes a waiver of Section 1542 of the California Civil Code and any similar or comparable provisions, rights and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law, which provide:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

18.    <u>Jurisdiction and Choice of Law</u>.  The Bankruptcy Court shall retain jurisdiction over the implementation of this Stipulation and any disputes arising thereunder.  This Stipulation shall be governed by and interpreted in accordance with the laws of the state of New York, without regard to principles of conflicts of laws of that would require the application of laws of another jurisdiction.

19.    <u>Representative Capacity</u>.  Each person executing this Stipulation in a representative capacity represents and warrants that he or she is empowered to do so.

20.    <u>Execution</u>.  This Stipulation may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement. Any of the Parties may execute this Stipulation by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original.

13

21.    <u>Claims Register</u>.  The Debtors, the Debtors' claims agent, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

KL2 2819633.21

Agreed to this 14th of November, 2013:

**WOLLMUTH MAHER & DEUTSCH LLP**    **MORRISON & FOERSTER LLP**


By:  /s/ Randall R. Rainer              By:  /s/  Alexandra Steinberg Barrage
Paul R. DeFilippo                       Gary S. Lee
Randall R. Rainer                       J. Alexander Lawrence
Fletcher W. Strong                      1290 Avenue of the Americas
500 Fifth Avenue                        New York, New York 10104
New York, New York 10110                Tel: (212) 468-8000
(212) 382-3300                          Fax: (212) 468- 7900


*Attorneys for Syncora Guarantee Inc.*   Alexandra Steinberg Barrage
                                        2000 Pennsylvania Avenue, NW
                                        Washington, D.C.  20006
                                        Telephone:  (202) 887-1500
                                        Facsimile:  (202) 785-7525


                                        *Counsel for the Debtors*
                                        *and Debtors-in-Possession*


**KRAMER LEVIN NAFTALIS & FRANKEL
LLP**


By:  /s/ Douglas H. Mannal
Kenneth H. Eckstein
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
Fax: (212) 715-8000

*Counsel for Official Committee of Unsecured
Creditors*

Acknowledged and agreed with respect to decretal paragraph 3:

**CLIFFORD CHANCE US LLP**

By: /s/ _____
 Jennifer C. DeMarco
Jennifer C. DeMarco
Adam Lesman
31 West 52nd Street
New York, New York  10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375

*Attorneys for Ocwen Loan Servicing, LLC*

KL2 2819633.21

**Exhibit 2 to Order**
**Syncora-Related Agreements**

<u>Bear Stearns Second Lien Trust 2007-SV1</u>

- Servicing Agreement, dated as of May 1, 2001, as amended by Amendment No. 1, dated as of October 1, 2001, Amendment No. 2, dated as of July 31, 2002 and Amendment No. 3, dated as of December 20, 2005, between EMC Mortgage Corporation and GMAC Mortgage, LLC

- Insurance and Indemnity Agreement, dated as of March 30, 2007, among XL Capital Assurance Inc., EMC Mortgage Corporation, SACO I Inc., GMAC Mortgage, LLC and Citibank, N.A.

- Side Letter Agreement, dated as of March 30, 2007, between GMAC Mortgage, LLC and XL Capital Assurance Inc.

- Assignment, Assumption and Recognition Agreement, dated as of March 30, 2007, among EMC Mortgage Corporation, Citibank, N.A. and GMAC Mortgage, LLC

<u>Greenpoint Mortgage Funding Trust 2006-HE1</u>

- Transfer and Servicing Agreement, dated as of August 1, 2006, as amended by Amendment No. 1, dated as of September 1, 2006, among GreenPoint Mortgage Funding Trust 2006-HE1, as issuer, Structured Asset Securities Corporation, as depositor, GMAC Mortgage Corporation, as servicer and U.S. Bank National Association, as indenture trustee

- Insurance and Indemnity Agreement, dated as of August 28, 2006, among XL Capital Assurance Inc., Lehman Brothers Holdings Inc., Structured Asset Securities Corporation, Greenpoint Mortgage Funding Trust 2006- HE1, GMAC Mortgage Corporation and U.S. Bank National Association

- Side Letter Agreement, dated as of September 12, 2006, between GMAC Mortgage Corporation and XL Capital Assurance Inc.

- Flow Revolving Credit Loan Purchase and Warranties Agreement, dated as of September 26, 2005, between GMAC Mortgage Corporation, as Purchaser and Greenpoint Mortgage Funding, Inc., as Seller

- Flow Mortgage Loan Purchase and Warranties Agreement, dated as of July 26, 2006, between GMAC Mortgage Corporation, as Purchaser and Greenpoint Mortgage Funding, Inc., as Seller

- Assignment, Assumption and Recognition Agreement, dated as of July 28, 2006, among GMAC Mortgage Corporation, Lehman Brothers Bank, FSB, and Greenpoint Mortgage Funding, Inc.

- Custodial Agreement, dated as of August 1, 2006, among Deutsche Bank National Trust Company, as custodian, U.S. Bank National Association, as indenture trustee and Greenpoint Mortgage Funding Trust 2006-HE1, as issuer (to the extent of the Debtors' rights and obligations thereunder, if any)

- Custodial Agreement, dated as of August 1, 2006, among U.S. Bank National Association, as custodian and as trustee and Greenpoint Mortgage Funding Trust 2006-HE1, as issuer (to the extent of the Debtors' rights and obligations thereunder, if any)

SunTrust Acquisition Closed-End Second Trust, Series 2007-1

- Pooling and Servicing Agreement, dated as of April 1, 2007, among ACE Securities Corp., as depositor, GMAC Mortgage, LLC, as servicer, Wells Fargo Bank, National Association, as master servicer and securities administrator and HSBC Bank USA, National Association, as trustee

- Insurance and Indemnity Agreement, dated as of May 15, 2007, among XL Capital Assurance Inc., SunTrust Asset Funding, LLC, SunTrust Bank, ACE Securities Corp., GMAC Mortgage, LLC and Wells Fargo Bank, National Association

- GMACM Side Letter Agreement, dated as of May 15, 2007, between GMAC Mortgage, LLC and XL Capital Assurance Inc.

- Credit Risk Management Agreement, dated as of May 14, 2007, between GMAC Mortgage, LLC and Clayton Fixed Income Services Inc.

- Premium Letter, dated as of May 15, 2007, among XL Capital Assurance Inc., HSBC Bank USA, National Association, Wells Fargo Bank, National Association, SunTrust Asset Funding, LLC, GMAC Mortgage, LLC and ACE Securities Corp.

- Custodial Agreement, dated as of April 1, 2007, among HSBC Bank USA, National Association, as trustee, GMAC Mortgage, LLC, as servicer and Deutsche Bank National Trust Company, as custodian

- Mortgage Loan Purchase and Sale Agreement, dated as of May 15, 2007, between GMAC Mortgage, LLC as purchaser and SunTrust Asset Funding, LLC

- Assignment, Assumption and Recognition Agreement, dated May 15, 2007 among GMAC Mortgage, LLC, ACE Securities Corp., SunTrust Asset Funding, LLC, and Wells Fargo Bank, N.A.

* As well as all other agreements memorializing these three transactions, to which the Debtors were party.

KL2 2819633.21

Document comparison by Workshare Professional on Friday, November 15, 2013 5:50:21 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\JMP6\Desktop\redline\Exhibits to Syncora Order.doc |
| Description | Exhibits to Syncora Order |
| Document 2 ID | file://C:\Users\JMP6\Desktop\redline\Exhibits to Syncora Order - Redline.doc |
| Description | Exhibits to Syncora Order - Redline |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 2 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 4 |