**Hearing Date:  December 17, 2013 at 10:00 am**
**Objection Deadline:  December 9, 2013 at 4:00 pm**

CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio  43215
Phone:  (614) 365-4100
Fax:  (614) 365-9145
Jeffrey A. Lipps (admitted *pro hac vice*)
Jennifer A.L. Battle (admitted *pro hac vice*)
David A. Beck (admitted *pro hac vice*)

*Special Litigation Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

# SUMMARY OF FOURTH INTERIM APPLICATION OF CARPENTER LIPPS & LELAND LLP AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD MAY 1, 2013 THROUGH AUGUST 31, 2013

{00370530-1}

      This is a(n): ___ monthly  _x_ interim  ___ final application.

| | |
|---|---|
| Name of Applicant: | Carpenter Lipps & Leland LLP ("**Applicant**") |
| Authorized to Provide Professional Services to: | Residential Capital, LLC, *et al*. (collectively, the "**Debtors**") |
| Date of Retention: | Order entered on July 25, 2012 retaining Applicant *nunc pro tunc* to May 14, 2012 |
| Period for which Compensation and Reimbursement is sought: | May 1, 2013 through August 31, 2013 (the "**Fourth Compensation Period**") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $832,475.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $402,651.28 |
| Previous Compensation awarded on an interim basis: | $4,479,910.50 |
| Previous Reimbursement of Expenses awarded on an interim basis: | $1,952,485.53 |

**Summary of Monthly Applications for Application Period:**

| Date Filed | Compensation Period | Requested Fees | Requested Expenses | Fees Paid | Expenses Paid | 20% Holdback |
|---|---|---|---|---|---|---|
| 06/26/2013 | 05/01/2013-05/31/2013 | $130,533.50 | $1,444.14 | $104,426.80 | $1,279.52[1] | $26,106.70 |
| 07/31/2013 | 06/01/2013-06/30/2013 | $173,600.50 | $28,811.90 | $28,581.20[2] | $23,473.31[3] | $34,720.10 |
| 08/26/2013 | 07/01/2013-07/31/2013 | $239,421.50 | $90,763.73 | $191,537.20 | $90,763.73 | $47,884.30 |
| 10/01/2013 | 08/01/2013-08/31/2013 | $288,920.00 | $281,631.51 | $0.00[4] | $0.00[5] | $57,784.00 |
| **TOTAL** | 05/01/2013-08/31/2013 | $832,475.50 | $402,651.28 | $324,545.20 | $115,516.56 | $166,495.10 |

---

[1] This total represents 100% of the requested expenses minus $164.62 for invoices 54793 and 54797 for which Applicant has not yet received the full 100% expenses from the Debtors.

[2] This total represents 80% of the requested fees minus $110,299.20 for invoices 55224, 55226, 55227, 55228, 55229, 55230, 55231 and 55233 for which Applicant has not yet received the 80% fees from the Debtors.

[3] This total represents 100% of the requested expenses minus $5,338.59 for invoice 55232 for which Applicant has not yet received the full 100% expenses from the Debtors.

[4] Applicant has not yet received the 80% fees for any of the August 2013 invoices from the Debtors.

[5] Applicant has not yet received the 100% expenses for any of the August 2013 invoices from the Debtors.

{00370530-1}

CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio  43215
Phone:  (614) 365-4100
Fax:  (614) 365-9145
Jeffrey A. Lipps (admitted *pro hac vice*)
Jennifer A.L. Battle (admitted *pro hac vice*)
David A. Beck (admitted *pro hac vice*)

*Special Litigation Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**FOURTH INTERIM APPLICATION OF CARPENTER LIPPS & LELAND LLP AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD MAY 1, 2013 THROUGH AUGUST 31, 2013**

For its fourth interim application for compensation and reimbursement of expenses (the "**Application**") for the period May 1, 2013 through August 31, 2013 (the **"Fourth Compensation Period"**) Carpenter Lipps & Leland LLP ("**Applicant**"), special litigation counsel to Residential Capital, LLC., *et al.*, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represents as follows:

**JURISDICTION, VENUE AND STATUTORY PREDICATES**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of

{00370530-1}

this proceeding and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.   The statutory bases for the relief requested herein are sections 330, 331, and 1103 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"). This Application has been prepared in accordance with General Order M-447, *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, entered December 21, 2010 (the "**Local Guidelines**"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* effective January 30, 1996 (the "**UST Guidelines**" and, together with the Local Guidelines, the "**Guidelines**"). Pursuant to the Local Guidelines, a certification regarding compliance with the Local Guidelines is attached hereto as <u>Exhibit A</u>.

## BACKGROUND

### The Chapter 11 Cases

3.   On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee has been appointed in these Chapter 11 cases.

4.   On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

5. On June 20, 2012, the Court directed that an examiner be appointed, and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner (Docket Nos. 454, 674). On May 13, 2013, the Examiner filed his report under seal (Docket Nos. 3677, 3697). On June 26, 2013, the report was unsealed and made available to the public (Docket No. 4099).

**Applicant's Retention and Interim Compensation**

6. On July 25, 2012, the Court entered the Order Under Section 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 Authorizing the Employment and Retention of Carpenter Lipps & Leland LLP as Special Litigation Counsel to the Debtors, *Nunc Pro Tunc*, to May 14, 2012 (Docket No. 907), approving Applicant's retention.

7. On July 17, 2012, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Interim Compensation Order**") (Docket No. 797). Pursuant to the terms of the Interim Compensation Order, Applicant, among others, is authorized to file and submit monthly fee applications to the Debtors and their counsel, counsel for the Creditors' Committee, counsel for Ally Financial Inc., and the United States Trustee (collectively, the "**Notice Parties**").

8. On October 19, 2012, Applicant filed its first interim fee application (Docket No. 1889) (the "**First Interim Application**"). On December 28, 2012, the Court entered its Omnibus Order (Docket No. 2530) (the "**First Fee Order**") concerning the first fee applications filed for retained professionals. As part of the First Fee Order, the Court authorized on an interim basis $949,060.00 in fees and $334,034.08 in expenses for Applicant, which reflected certain consensual reductions from the amounts requested in the First Interim Application agreed to between the Applicant and the United States Trustee.

{00370530-1}    3

9. On March 13, 2013, Applicant filed its second interim fee application (Docket No. 3174) (the "**Second Interim Application**"). On April 29, 2013, the Court entered its Omnibus Order (Docket No. 3556) (the "**Second Fee Order**") concerning the second fee applications filed for retained professionals. As part of the Second Fee Order, the Court authorized on an interim basis $1,872,539.50 in fees and $641,079.68 in expenses for Applicant, which reflected certain consensual reductions from the amounts requested in the Second Interim Application agreed to between the Applicant and the United States Trustee.

10. On August 7, 2013, Applicant filed its third interim fee application (Docket No. 4557 (the "**Third Interim Application**"). On September 25, 2013, the Court entered its Omnibus Order (Docket No. 5205) (the **"Third Fee Order"**) concerning the third fee applications filed for retained professionals. As part of Third Fee Order, the Court authorized on an interim basis $1,658,311.00 in fees and $977,371.77 in expenses for Applicant, which reflected certain consensual reductions from the amounts requested in the Third Interim Application agreed to between the Applicant and the United States Trustee.

11. On June 26, 2013, Applicant served its monthly fee application covering the period from May 1, 2013 to May 30, 2013 (the "**May Monthly Fee Application**") on the Notice Parties. On July 31, 2013, Applicant served its monthly fee application covering the period from June 1, 2013 to June 30, 2013 (the "**June Monthly Fee Application**") on the Notice Parties. On August 26, 2013, Applicant served its monthly fee application covering the period from July 1, 2013 to July 31, 2013 (the "**July Monthly Fee Application**") on the Notice Parties. On October 1 2013, Applicant served its monthly fee application covering the period from August 1, 2013 to August 31, 2013 (the "**August Monthly Fee Application**") and, together with the May Monthly Fee Application, the June Monthly Fee Application, and the July Monthly Fee

Application, the "**Monthly Fee Applications**") on the Notice Parties.  The Applicant did not receive any objections to the Monthly Fee Applications.

12. For the convenience of this Court and all parties in interest, attached hereto as Exhibit B is a schedule of the total amount of fees incurred under each of Applicant's internal task codes during the Fourth Compensation Period.

13. To date, the Applicant has received payments totaling $440,061.76, representing $324,545.20 in fees and $115,516.56 in expenses on account of the Monthly Fee Applications.  As detailed on the cover sheet, this represents partial payment of the May Monthly Fee Application, the June Monthly Fee Application, and the July Monthly Fee Application.  Applicant has not yet received any funds on account of the August Monthly Fee Application.

14. Applicant maintains computerized records of the time expended in the rendering of the professional services required by the Debtors.  These records are maintained in the ordinary course of Applicant's practice.  For the convenience of this Court and all parties in interest, attached hereto as Exhibit C is a billing summary for the Fourth Compensation Period, setting forth the name of each attorney and paraprofessional who rendered services during the Fourth Compensation Period, each attorney's year of bar admission, the aggregate time expended by each attorney and each paraprofessional, the hourly billing rate for each attorney and each paraprofessional at Applicant's current billing rates, and the individual amounts requested for each professional.  Exhibit C also provides the blended hourly rate for Applicant's attorneys during the Fourth Compensation Period.  The compensation requested by Applicant is based on the agreed hourly rates it has in place with the client.  As disclosed by Supplemental Declaration (Docket No. 2775), certain of Applicant's professionals' rates were increased by agreement with the Debtors effective January 1, 2013.  For the remaining professionals, the applicable rate is

either the rate in place prepetition or the rate agreed to by the Debtors when that professional first started working for the Debtors' postpetition. These agreed on rates are discounted from Applicant's standard hourly rates.

15. Applicant also maintains computerized records of all expenses incurred in connection with the performance of professional services. A summary of the amounts and categories of expenses for which reimbursement is sought is attached hereto as Exhibit D. In accordance with the Court's instructions at the previous fee hearings, included in Exhibit D are copies of the invoices supporting Applicant's request for reimbursement of contract attorneys and other litigation support vendors and also for airfare. As has been its policy during these cases, Applicant only charges the Debtors for coach airfare. All meal expenses are for meals while traveling away from Applicant's home offices and all meals comply with the $20.00 per person per meal limit the court has imposed in these cases. Applicant does not charge the Debtors' estates for daytime or evening meals while at its home offices.

16. In connection with the requested reimbursement of expenses for the fees incurred by contract document reviewers, Applicant wishes to provide the following additional detail. The use of these reviewers was essential for the review of over 600,000 documents and the production of almost 2 million pages during the Fourth Compensation Period. Using contract reviewers resulted in substantial savings to the Debtors' estates over alternative forms of production. The electronic review platforms Applicant uses track the number of hours each contract reviewer is logged in and the average number of documents coded per hour for each reviewer. On a weekly basis, Applicant reviews the time cards submitted by the staffing agencies for each contract attorney and compares these against the reports produced by the review platform. This is used to verify that hours on time cards are actually worked and that the

reviewer is being productive based on the number of documents reviewed per hour. If based on this review the time spent by the contract attorney appears unreasonable, the time card is rejected. The benchmarks for what is reasonable are based on both years of experience in conducting complex document reviews for Residential Capital and industry standards and are adjusted based on the complexity of the documents which each reviewer is assigned to review. Applicant only bills Residential Capital for contract reviewer time that is approved through this process. All bills that are approved through this process are passed through at the actual cost invoiced by the applicable firm providing the contract reviewers.

17. Copies of Applicant's computerized records of fees and expenses in the format specified by the Guidelines have been served on the Notice Parties with each of the Monthly Fee Applications and are attached hereto as Exhibit E.

18. There is no agreement or understanding between Applicant and any other person, other than partners and of counsel of the firm, for the sharing of compensation to be received for services rendered in the Chapter 11 Cases.

19. The Monthly Fee Applications submitted by Applicant are subject to a 20% holdback (as is customary in this District) imposed by the Court on the allowance of fees. The aggregate amount of Applicant's holdback during the Fourth Compensation Period is $166,495.10 (the "**Fourth Holdback**"). In addition, as part of the Third Fee Order, the Court directed that $165,831.10 in compensation (the "**Third Holdback**") approved on an interim basis by the Court be withheld by the Debtors as part of the general withholding of 10% of allowed compensation for all professionals. Applicant respectfully requests, in connection with the relief requested herein, that the Court allow the Fourth Holdback on an interim basis pursuant

{00370530-1}                                    7

to sections 330 and 331 of the Bankruptcy Code and authorize the Debtors to satisfy the Third

Holdback and the Fourth Holdback.

## DESCRIPTION OF SERVICES AND EXPENSES AND RELIEF REQUESTED

20. In general, Applicant has represented the Debtors in connection with the following aspects of the Chapter 11 Cases during the Fourth Compensation Period:

- Applicant has been involved in the collection, review, and production of almost 2 million pages of documents;

- Applicant assisted Morrison & Foerster LLP ("**Morrison & Foerster**") in analysis of the Examiner Report;

- Applicant assisted Morrison & Foerster in preparations to litigate claims with monoline insurers, in particular the monolines who were not parties to the Plan Support Agreement;

- Applicant assisted Morrison & Foerster in the successful efforts to get the settlement with Financial Guaranty Insurance Corporation ("**FGIC**") approved, including having Mr. Lipps serve as a witness in connection with that settlement;

- Applicant assisted Morrison & Foerster in analyzing issues related to the securities claims asserted against the Debtors, and in particular the claimants who were not parties to the Plan Support Agreement;

- Until the trial was suspended because of the agreement on the Global Settlement, Applicant assisted Morrison & Foerster in preparing for trial on the Debtors' motion for approval of the RMBS Settlement;

- Applicant assisted Morrison & Foerster in preparing sections of the disclosure statement discussing monoline and security claims;

- Applicant has helped the Debtors respond to the ongoing investigation by the Securities and Exchange Commission; and

- Applicant has represented the Debtors in several suits in the state of Ohio arising out of their servicing of mortgage loans that were not transferred as part of the sale of the Debtors' servicing platform.

To provide an orderly and meaningful summary of the services rendered by Applicant on behalf

of the Debtors during the Fourth Compensation Period, Applicant established, in accordance

{00370530-1}                                                  8

with the Guidelines and its internal billing procedures, separate task codes in connection with the Chapter 11 Cases.[1] The following is a summary of the most significant professional services rendered by Applicant during the Fourth Compensation Period organized in accordance with Applicant's internal system of task codes:

**SEC Post-Petition (932-054)**

Fees: $11,713.00; Total Hours: 49.40;

21. Prior to the Petition Date, Applicant represented the Debtors in responding to an ongoing SEC investigation by assisting in the collection and production of documents to the SEC. Since the Petition Date, Applicant has continued to work on the collection, review, and production of documents for this investigation. Applicant's activities with respect to the SEC during the Fourth Compensation Period included:

- Applicant researched and compiled various information requested by the SEC;

- Applicant worked with the Debtors and Morrison & Foerster to locate the sources of other information responsive to the SEC's inquiries; and

- Applicant communicated with Morrison & Foerster and the SEC regarding SEC deposition requests and former employee witnesses.

**RMBS Trust Settlement (932-057)**
Fees: $31,356.00; Total Hours: 121.90

22. Because of Applicant's representation of the Debtors in prepetition representation and warranty litigation, Morrison & Foerster has regularly consulted with Applicant regarding the issues involved in the settlement. As part of this consultation, Morrison & Foerster requested

---

[1] Because almost all of CLL's services as special litigation counsel would fit either within the claims administration or litigation matter categories in the United States Trustee's standard list of matters, CLL has created specific matter numbers by particular litigation project to help better track the time and expenses it is incurring in these cases. The categories are the same ones used in connection with the First Fee Application, Second Fee Application, and Third Fee Application, but with the addition of certain additional matters for specific litigation cases for which it is representing the Debtors on in the State of Ohio related to the Debtors' servicing of mortgage loans.

{00370530-1}                                9

Applicant research certain legal or factual issues related to the settlement. Prior to the adjournment of the trial to approve the original RMBS settlement, the Applicant prepared direct testimony of Mr. Lipps related to the settlement.

23.     During the Fourth Compensation Period, Applicant prepared its response to the objections of the Official Committee of Unsecured Creditors and Financial Guaranty Insurance Company to preclude Mr. Lipps from testifying at the trial on the original RMBS settlement.

**Securities Claims (932-058)**
Fees: $18,994.00 Total Hours: 65.40

24.     Applicant assisted Morrison & Foerster with drafting sections of the disclosure statement related to securities and monoline cases. Applicant also drafted the objection to the New Jersey Carpenters class certification motion. Applicant also researched and reviewed underwriter indemnification claims, unidentified securitization claims, FHFA claims, and WVIMB claims during the Fourth Compensation Period.

**Monoline Claims (932-059)**
Fees: $ 216,419.50; Total Hours: 810.80.

25.     Prior to the Petition Date, Applicant represented the Debtors in the cases brought by monoline insurers MBIA Insurance Company and FGIC. Since the Petition Date and at the request of Morrison & Foerster, Applicant has been working on addressing the claims asserted in these cases by these and other monolines. As the Court is well aware, these were some of the largest unliquidated proofs of claims filed in these cases addressing the monoline claims was one of the major impediments in negotiating the plan support agreement and is a major issue that needs to be faced to get a confirmable plan in these cases.

26.     Applicant provided a wide range of services to help address the claims of the monoline insurers during the Fourth Compensation Period. A significant portion of these

services were in connection with the Debtors' settlement with FGIC. The services Applicant provided in connection with this contested settlement included:

- Assisted Morrison & Foerster in reviewing documents for production in connection with the settlement with FGIC.

- Review of the draft motion to approve the settlement and preparation of the Declaration of Mr. Lipps in support of the settlement;

- preparing Mr. Lipps for, and participating in, his deposition in connection with the FGIC settlement;

- at Morrison & Foerster's request, preparing a response to the motion in limine to prevent Mr. Lipps from testifying;

- preparing for Mr. Lipps to possibly be cross-examined at the trial on the FGIC settlement; and

- assisting Morrison & Foerster in preparing for the two days of hearing on the FGIC settlement.

27. Applicant analyzed various decisions in other monoline litigation and other monoline settlements and advised Morrison & Foerster about the implications of these decisions and settlements for the Residential Capital cases. At the request of Morrison & Foerster, Applicant researched and prepare memorandum on certain issues related to monoline claims. Applicant also worked with Morrison & Foerster to analyze issues posed by Syncora's claims against the Debtors and reviewed draft objections to Syncora's claims.

**ResCap Discovery Issues (932-060)**
Fees: $436,954.50; Total Hours: 2,190.30 hours

28. Applicant used this matter for work on discovery issues not reported under another specific matter. The majority of Debtors' time in this matter during the Fourth Compensation Period was spent preparing for and conducting the document review related to the various discovery requests propounded by the Junior Secured Noteholders, including determining the search protocols, performing quality control, general management of the

{00370530-1}                                              11

document review process, and responding to objections of the Junior Secured Noteholders. This review resulted in the review of over 600,000 documents and the production of almost 2 million pages during the Fourth Compensation Period.

29. Applicant also assisted the Debtors in responding to certain third-party subpoenas during the Fourth Compensation Period. At the request of the Debtors, Applicant researched document preservation obligations and wind down planning and prepared memorandum regarding the same.

**Examiner (932-064)**
Fees: $90,768.50; Total Hours: 328.90

30. Applicant's work in responding to the Examiner's investigation during the Fourth Compensation Period included the following:

- At Morrison & Foerster's request, Applicant researched and prepared a submission to the Examiner regarding the application of Minnesota law to certain transactions;

- Applicant assisted Morrison & Foerster in analyzing the Examiner's report and summarizing its contents and implications for the Debtors; and

- Applicant dealt with the completion of the production of documents to the Examiner and the resolution of certain clawback issues.

**Ohio Litigation Matters (Matters starting with 096 or 621).**
Fees: $21,508.00; Total Hours: 89.2

31. Applicant spent time during the Fourth Compensation Period representing the Debtors in litigation related to their servicing of mortgage loans in the state of Ohio. Applicant has been representing the Debtors for a number of years with respect to contested foreclosures or other servicing related litigation in Ohio. Applicant spent some time dealing with unstayed claims and claims for which the stay was modified pursuant to the servicing orders entered in this case, including preparing for and attending hearings in several matters and the negotiation of a settlement in another matter. Applicant continued to spend a small amount of time notifying

individual courts and opposing counsel concerning the provisions of the orders providing stay relief and explaining how those orders affected the relief requested in each pending case. In aggregate, Applicant billed time to representing the Debtors in seven separate actions in the state of Ohio during the Fourth Compensation Period.

32. The foregoing descriptions of services rendered by Applicant in specific areas are not intended to be exhaustive of the scope of Applicant's activities in the Chapter 11 Cases. The time records attached hereto as <u>Exhibit E</u> present more completely the work performed by Applicant in each billing category during the Fourth Compensation Period.

## CONCLUSION

33. Applicant believes that the services rendered during the Fourth Compensation Period on behalf of the Debtors were reasonable and necessary within the meaning of Bankruptcy Code section 330. Further, the expenses requested were actual and necessary to the performance of Applicant's services.

**[REST OF PAGE INTENTIONALLY LEFT BLANK]**

Applicant therefore requests an order (i) approving interim compensation in the amount of $832,475.50 and interim reimbursement of expenses in the amount of $402,651.28;[2] (ii) directing payment of the Fourth Holdback and any other amounts outstanding in connection with the Monthly Fee Applications; (iii) authorizing payment of the Third Holdback withheld under the Third Fee Order; and (iv) granting such other and further relief as may be just and proper.

Dated: November 18, 2013

/s/ David A. Beck
Jeffrey A. Lipps (admitted *pro hac vice*)
lipps@carpenterlipps.com
Jennifer A.L. Battle (admitted *pro hac vice*)
battle@carpenterlipps.com
David A. Beck (admitted *pro hac vice*)
beck@carpenterlipps.com
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio  43215
Phone:  (614) 365-4100
Fax:  (614) 365-9145

*Special Litigation Counsel to the Debtors and Debtors in Possession*

---

[2] The rates charged for such expenses (i) are based on Applicant's policies used with the Debtors prior to these cases being filed; (ii) do not charge for certain expenses such as in house copying or phone calls which are chargeable under the Guidelines; and (iii) are calculated to compensate Applicant for only the actual costs of the expenses.