1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - - - - - - - - -x

4  In the Matter of:

5  RESIDENTIAL CAPITAL, LLC, et al.,          Case No.

6              Debtors.                       12-12020-mg

7  - - - - - - - - - - - - - - - - - - - -x

8  OFFICIAL COMMITTEE OF UNSECURED

9  CREDITORS, et al., Plaintiffs,             Adv. Proc. No.

10         - against -                         13-01277-mg

11  UMB BANK, N.A., et al., Defendants.

12   - - - - - - - - - - - - - - - - - - - -x

13  RESIDENTIAL CAPITAL, LLC, et al.,

14              Plaintiffs,                    Adv. Proc. No.

15         - against -                         13-01343-mg

16  UMB BANK, N.A., Defendant.

17  - - - - - - - - - - - - - - - - - - - -x

18              United States Bankruptcy Court

19              One Bowling Green

20              New York, New York

21              November 14, 2013

22              2:06 PM

23  B E F O R E:

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

1

2  Pre-Trial Conference, on the Record, RE: Phase II of

3  Trial/Chapter 11 Plan Confirmation

4

5  Adversary proceeding: 13-01277-mg Official Committee of

6  Unsecured Creditors, et al. v. UMB Bank, N.A., et al.  Pre-

7  Trial Conference, on the Record, RE: Phase II of Trial/Chapter

8  11 Plan Confirmation

9

10  Adversary proceeding: 13-01343-mg Residential Capital, LLC, et

11  al. v. UMB Bank, N.A. in its Capacity as Indenture Trust

12  Pre-Trial Conference, on the Record, RE: Phase II of

13  Trial/Chapter 11 Plan Confirmation

14

15

16

17

18

19

20  Transcribed by:  Linda Ferrara

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8  BY:   GARY S. LEE, ESQ.

9        DANIEL HARRIS, ESQ.

10        CHARLES L. KERR, ESQ.

11        ALEXANDER J. LAWRENCE, ESQ. (TELEPHONICALLY)

12

13

14  CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP

15        Conflicts Counsel for Debtors

16        101 Park Avenue

17        New York, NY 10178

18

19  BY:   MARYANN GALLAGHER, ESQ.

20        THERESA A. FOUDY, ESQ.

21        JONATHAN J. WALSH, ESQ.

22

23

24

25

1

2  KRAMER LEVIN NAFTALIS & FRANKEL LLP

3       Attorneys for Official Creditors' Committee

4       1177 Avenue of the Americas

5       New York, NY 10036

6

7  BY:   KENNETH H. ECKSTEIN, ESQ.

8        DOUGLAS MANNAL, ESQ.

9        P. BRADLEY O'NEILL, ESQ.

10

11

12  KIRKLAND & ELLIS LLP

13       Attorneys for Ally Financial, Inc. and Ally Bank

14       601 Lexington Avenue

15       New York, NY 10022

16

17  BY:   RAY C. SCHROCK, P.C.

18

19

20  KIRKLAND & ELLIS LLP

21       Attorneys for Ally Financial, Inc. and Ally Bank

22       655 Fifteenth Street, NW

23       Washington, D.C. 20005

24

25  BY:   DANIEL T. DONOVAN, ESQ.

```
 1
 2   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
 3        Attorneys for FHFA
 4        1633 Broadway
 5        New York, NY 10019
 6
 7   BY:   ANDREW K. GLENN, ESQ.
 8
 9
10   MILBANK, TWEED, HADLEY & MCCLOY LLP
11        Attorneys for Ad Hoc Group of Junior Secured
12        Noteholders/UMB
13        One Chase Manhattan Plaza
14        New York, NY 10005
15
16   BY:   GERARD UZZI, ESQ.
17
18
19   MILBANK, TWEED, HADLEY & MCCLOY LLP
20        Attorneys for Ad Hoc Group of Junior Secured
21        Noteholders/UMB
22        1850 K Street, NW
23        Washington, D.C. 20006
24
25   BY:   DAVID S. COHEN, ESQ.
```

```
 1

 2  REED SMITH LLP

 3        Attorneys for Wells Fargo Bank, N.A.

 4        599 Lexington Avenue

 5        29th Floor

 6        New York, NY 10022

 7

 8  BY:   ERIC A. SCHAFFER, ESQ.

 9        DAVID M. SCHLECKER, ESQ.

10        MARK SILVERSCHOTZ, ESQ.

11

12

13  SILVERMAN ACAMPORA

14        Special Counsel to Committee

15        100 Jericho Quadrangle

16        Suite 300

17        Jericho, NY 11753

18

19  BY:   ROBERT D. NOSEK, ESQ.

20

21

22

23

24

25
```

1

2  WINSTON & STRAWN LLP

3        Attorneys for Wachovia Bank and Wachovia Bank of Delaware

4        100 North Tryon Street

5        Charlotte, NC 28202

6

7  BY:   NATHAN P. LEBIODA, ESQ.

8

9

10  KELLEY DRYE & WARREN LLP

11        Attorneys for UMB, N.A.

12        101 Park Avenue

13        New York, NY 10178

14

15  BY:   ERIC R. WILSON, ESQ.

16

17

18  MCKENNA LONG & ALDRIDGE LLP

19        Attorneys for Impac Funding Corp.

20        230 Park Avenue

21        Suite 1700

22        New York, NY 10169

23

24  BY:   CHRISTOPHER F. GRAHAM, ESQ.

25        ALAN F. KAUFMAN, ESQ.

1

2  ROPES & GRAY LLP

3          Attorneys for Steering Committee of RMBS Investors

4          Prudential Tower

5          800 Boylston Street

6          Boston, MA 02199

7

8  BY:   ANDREW G. DEVORE, ESQ.

9

10

11  CADWALADER, WICKERSHAM & TAFT, LLP

12          Attorneys for MBIA, Inc.

13          One World Financial Center

14          New York, NY 10281

15

16  BY:   INGRID BAGBY, ESQ.

17

18

19  AKIN GUMP STRAUSS HAUER & FELD LLP

20          Attorneys for UMB Bank, N.A.

21          One Bryant Park

22          New York, NY 10036

23

24  BY:   PHILIP C. DUBLIN, ESQ.

25          RACHEL EHRLICH ALBANESE, ESQ.

1

2   WHITE & CASE LLP

3          Attorneys for Ad Hoc Group of Junior Secured Noteholders

4          1155 Avenue of the Americas

5          New York, NY 10036

6

7   BY:   HARRISON DENMAN, ESQ.

8

9

10  ALSTON & BIRD LLP

11         Attorneys for Wells Fargo Bank, N.A., as Trustee

12         90 Park Avenue

13         New York, NY 10016

14

15  BY:   MICHAEL E. JOHNSON, ESQ.

16         JOHN C. WEITNAUER, ESQ. (TELEPHONICALLY)

17

18

19  MCKOOL SMITH, P.C.

20         Attorneys for Freddie Mac

21         One Bryant Park

22         New York, NY 10036

23

24  BY:   MICHAEL R. CARNEY, ESQ. (TELEPHONICALLY)

25         PETER GOODMAN, ESQ. (TELEPHONICALLY)

1

2  SEWARD & KISSEL LLP

3          Attorneys for US Bank as RMBS Trustee

4          One Battery Park Plaza

5          New York, NY 10004

6

7  BY:    ARLENE R. ALVES, ESQ.

8          THOMAS ROSS HOOPER, ESQ.

9          MARK D. KOTWICK, ESQ. (TELEPHONICALLY)

10

11

12  FORAN, GLENNON, PALANDECH, PONZI & RUDLOFF PC

13          Attorneys for Certain Insurers under GM Combined

14          Specialty Insurance Program

15          222 North LaSalle Street

16          Suite 1400

17          Chicago, IL 60601

18

19  BY:    JOHN P. EGGUM, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

```
 1

 2   LOWENSTEIN SANDLER, LLP

 3          Attorneys for New Jersey Carpenters

 4          65 Livingston Avenue

 5          Roseland, NJ 07068

 6

 7   BY:   MICHAEL S. ETKIN, ESQ. (TELEPHONICALLY)

 8

 9

10   ALLEN & OVERY LLP

11          Attorneys for HSBC

12          1221 Avenue of the Americas

13          New York, NY 10020

14

15   BY:   JOHN KIBLER, ESQ. (TELEPHONICALLY)

16

17

18   ROMERO LAW FIRM

19          Attorneys for County of San Bernardino

20          6516 Bright Avenue

21          Whittier, CA 90601

22

23   BY:   PAUL M. ST. JOHN, ESQ. (TELEPHONICALLY)

24

25
```

1

2  MUNGER, TOLLES & OLSON LLP

3          Attorneys for Berkshire Hathaway, Inc.

4          355 South Grand Avenue

5          35th Floor

6          Los Angeles, CA 90071

7

8  BY:    THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

9

10

11  JONES DAY

12          Attorneys for Financial Guaranty Insurance Company

13          555 South Flower Street

14          Fiftieth Floor

15          Los Angeles, CA 90071

16

17  BY:  RICHARD L. WYNNE, ESQ. (TELEPHONICALLY)

18

19

20  MORGAN, LEWIS & BOCKIUS LLP

21          Attorneys for BNY-Mellon

22          101 Park Avenue

23          New York, NY 10178

24

25  BY:    GLENN E. SIEGEL, ESQ.

 1

 2   LATHAM & WATKINS LLP

 3          Attorneys for Deutsche Bank

 4          53rd at Third

 5          885 Third Avenue

 6          New York, NY 10022

 7

 8   BY:   WILLIAM O. RECKLER, ESQ.

 9          AARON M. SINGER, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, ET AL.                    14

1                        P R O C E E D I N G S

2            THE COURT:  Please be seated.  All right.  We're here

3    in Residential Capital, number 12-12020 and in the adversary

4    proceeding, 13-01277 and 13-01343.  Okay.

5            Mr. Lee, before you begin, first let me apologize to

6    everybody about any confusion about whether this hearing would

7    take place in open court or on the telephone.  Until sometime

8    this morning, it wasn't clear where I would be.  I was in White

9    Plains this morning and fortunately was able to complete my

10   jury service without having served on a jury.  So that enabled

11   me to get back here.  So I appreciate the confusion.  Anybody

12   who is on the phone, that's fine and we're going forward with

13   the final pre-trial conference before the start of the combined

14   Phase II trial with the JSNs and UMB and the confirmation

15   hearing.

16           All right, Mr. Lee?

17           MR. LEE:  Good afternoon, Your Honor.  Gary Lee from

18   Morrison & Foerster for the debtors.  Pleased to be here before

19   you.  Our gain is the White Plains jury pool loss.

20           THE COURT:  I think the chances of me having served on

21   a jury were pretty remote but in any event -- before you begin,

22   let me just -- I anticipate filing my opinion from the Phase I

23   trial tomorrow morning.  It remains a work in progress.  It's

24   getting closer but -- well, I should say sometime tomorrow.

25   We'll see what time tomorrow but it's quite lengthy; let me put

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1   it that way.  Go ahead.

2           MR. LEE:  So, Your Honor, I think what I wanted to do

3   this afternoon was to answer the four questions that you posed

4   during our last status conference, answer any other questions

5   you have, and then also discuss the structure of the hearing

6   beginning next week and also some timing questions.

7           You asked, I think, Your Honor, how many and which

8   parties rejected the plan or objected to the plan.  Obviously,

9   we'll put evidence on on Tuesday or Wednesday relating to that,

10  but the answers are of the 1,432 votes, 1,368 accepted and 64

11  rejected the plan.  That yields a 95.5 percent acceptance rate

12  for the non-junior secured noteholder claims which is quite

13  remarkable given where we started.

14          THE COURT:  Other than the class in which the JSNs

15  are, did any class reject?

16          MR. LEE:  There was -- of the 148 classes, there was

17  one borrower subclass in which there were two creditors total,

18  and it's not entirely clear to me and I'll resolve this before

19  we get up in front of you on Tuesday, whether or not that was a

20  misclassified claim.  It appears that it's a claim against a

21  holding company at which the borrower has no relation

22  whatsoever.  So we'll try and clear that up before we start the

23  trial.

24          With respect to the sixty-four rejecting parties, they

25  fall into five buckets and, in fact, I think something close to

1    half of those are resolved.  There were nine securities

2    underwriter claims which will have been resolved by the

3    judgment reduction provision in the plan.  Twenty of the

4    estates that were parties to the DOJ/AG settlement voted

5    against the plan.  Those claims will be resolved as part of the

6    government carve-out that's going to be contained in the plan

7    and there was, I think, one taxing authority claim that's also

8    being resolved in the plan.

9           So if Your Honor recalls, the DOJ hasn't objected and

10   we've been working on appropriate carve-out language and also

11   language to deal with the post-effective date obligations of

12   the liquidating trust to effectively complete the exercise

13   required under the consent order.  Though the twenty estates

14   effectively filed what was, in effect, a prophylactic objection

15   but that will be resolved because all of the funds will be

16   escrowed as part of the plan and we're working with the DOJ and

17   I think all signs are that we are close to or have resolved

18   that.

19          There are nineteen borrower claims.  Those are

20   exclusively estate claims against ResCap or its subsidiaries.

21   Those claims arise out of servicing or foreclosures.  There are

22   no allegations against AFI.  To the extent to which there were

23   any claims, they would be entirely derivative of the claims

24   that the estate has.

25          And then we have seven other creditors.  I describe

RESIDENTIAL CAPITAL, LLC, ET AL.                    17

1   them as miscellaneous; none of whom have articulated a claim

2   against AFI and two of which have raised issues with respect to

3   the third-party release.  One is Impac, who I think you heard

4   from last time.  They're being actually sued by Ally as opposed

5   to the other way around, for breaches of reps and warranties

6   for loans that were sold by Impac to one of the Ally entities.

7           And I think that we'll address this if not today, then

8   tomorrow with respect to ResCap, we are going to assume and

9   assign the Impac contracts and the proposal will be that we

10  escrow a number in excess of the 2.5 million dollars that they

11  set forth in their objection as to their cure claim.  So

12  whether that resolves their third-party release or not, I don't

13  know; maybe Mr. Eckstein might have more information than I do.

14          The other creditor is Wachovia, but that relates to

15  the deposit account that we closed within a month of the filing

16  of the bankruptcy.  That's the so-called closed deposit account

17  objection.  And as I understand it, what we're arguing over is

18  the 900,000 dollars in monitoring fees that Wachovia's counsel

19  has spent with respect to this bankruptcy and respect to the

20  closed bank account.  I'll address that further at

21  confirmation, Your Honor.

22          So I think that actually answers all of your questions

23  with respect to that.  I think that there were -- sorry, Your

24  Honor, there are sixteen creditors that did not vote or were

25  ineligible to vote on the plan but did file an objection.  I

1   think I've addressed those with respect to the securities

2   claimants.  I think it was Oracle, which is in the process of

3   being resolved, Freddie Mac, which has been resolved and Wendy

4   Alison Nora which I believe has now been resolved as well.

5              That leaves two creditors; Universal Restoration

6   Services --

7              THE COURT:  Let me just stop you for a minute.

8              MR. LEE:  Yes.

9              THE COURT:  With respect to Ms. Nora, I tried to

10  follow that over the last day or so.  As I understand, your

11  office has been authorized to file a withdrawal of her

12  disqualification motion; has that occurred yet?  Because if it

13  hasn't, we're going forward tomorrow.

14             MR. LEE:  Let me turn that to Mr. Eckstein.

15             THE COURT:  Mr. Eckstein?

16             MR. ECKSTEIN:  Your Honor, Kenneth Eckstein of Kramer

17  Levin.

18             My understanding is that the settlement with Ms. Nora

19  is finalized.

20             THE COURT:  I'm not so worried about the settlement.

21  I understood that there was going to be a separate document

22  filed that expressly withdrew her disqualification motion.  I

23  won't go forward unless it's -- you know, without deciding that

24  motion if it's still on file.

25             MR. ECKSTEIN:  I will need to, after the conference is

1    concluded --

2              THE COURT:  Okay.

3              MR. ECKSTEIN:  -- confer with Ms. Frejka of my office

4    who is really handling that.

5              THE COURT:  Okay.  That's fine.

6              MR. ECKSTEIN:  And we will endeavor to have that

7    withdrawn before the end of the day, if that can be done.

8              THE COURT:  Okay.

9              MR. ECKSTEIN:  But I believe that, at this point,

10   should be mechanical because I know the settlement is

11   completed.

12             THE COURT:  Mechanical or not, if there's a withdrawal

13   of the motion filed, that's fine.  If there's not, that motion

14   goes forward tomorrow.

15             MR. ECKSTEIN:  I appreciate that, Your Honor.

16             THE COURT:  Okay.

17             MR. LEE:  So I think, Your Honor, that left with me

18   two creditors; one is Universal Restoration Hardware -- I'm

19   sorry, Universal Restoration Services which is a dispute over

20   an escrow and whether it's property of the estate.  I think

21   that's set for hearing and ultimately the property either

22   belongs to them are not; I'm not sure that's a confirmation

23   objection.

24             And then the last one is the Wells Fargo objection and

25   the -- which we'll obviously address at confirmation.

1          I think the second question Your Honor asked me was

2     which borrower or class action claims will require bankruptcy

3     court approval and which will be resolved in the home court.  I

4     think I can either do this by providing Your Honor with a chart

5     or just basically reading through the --

6          THE COURT:  Sure, why don't you just give me a copy?

7     Big chart.

8          MR. LEE:  My apologies.

9          THE COURT:  No, that's okay.

10         MR. KERR:  May I approach, Your Honor?

11         THE COURT:  Absolutely.  Thank you, Mr. Kerr.

12         MR. LEE:  Your Honor, what we've endeavored to do with

13    respect to this chart is to provide information on the class

14    actions, the settlement amounts, whether bankruptcy court

15    approval is required or not and the procedure in the state or

16    home court.  Unless Your Honor wants me to go through it, I

17    think that should answer Your Honor's questions.

18         THE COURT:  You don't need to go through each of them

19    but with respect to those that you've indicated require

20    bankruptcy court approval, approximately when do you

21    anticipate -- I see some of them you've filed motions already.

22    I don't know whether you're going to bring them all on at the

23    same time or whether these are going to come over a period of

24    time.

25         MR. LEE:  Yes, some of these will come over a period

RESIDENTIAL CAPITAL, LLC, ET AL.                        21

1    of time but with respect to the first one, Your Honor, which is

2    Kessler --

3              THE COURT:  Yes.

4              MR. LEE:  -- we intend to take that up in connection

5    with the confirmation hearing.

6              THE COURT:  All right.  Okay.  That's helpful.  Thank

7    you.

8              MR. LEE:  Yes, and obviously New Jersey Carpenters is

9    part of the confirmation hearing, too, as part of the final

10   approval process.

11             THE COURT:  Right.  And that Judge Baer has approved.

12             MR. LEE:  That's correct, Your Honor.

13             The next question you asked was of the borrower class

14   action claims that have been resolved, do any of the

15   settlements leave behind codefendants that have filed claims

16   for indemnity or contribution against the debtors, and I think

17   I answered that question correctly with respect to PNC Bank but

18   that claim has been withdrawn by PNC.

19             And then relatedly, the -- I think you asked me about

20   the Rothstein case, as well.  That doesn't resolve the claims

21   against Balboa Insurance which is a codefendant in that case.

22   However, Balboa did not file a claim in this proceeding which

23   is, I think, what I indicated last time.

24             THE COURT:  Yes, thank you.

25             MR. LEE:  And then the last question I think that Your

1   Honor posed was does the settlement agreement with the FHFA

2   incorporate the same judgment reduction language in the plan,

3   and the answer was no, which I think was the answer I gave last

4   time.  And the AFI clarified that the settlement agreement with

5   the FHFA provides that the case has or will be dismissed.  In

6   fact, it may have been dismissed.  I'm not entirely sure.  I

7   think it's subject to the final documentation.

8          THE COURT:  Okay.  But the -- I guess here's the

9   question:  The codefendants in that case, at least the

10  underwriter codefendants had asserted claims, contribution or

11  indemnity, and have those claims been withdrawn or resolved?

12         MR. LEE:  I'm going to have to defer to Mr. Schrock,

13  Your Honor.

14         THE COURT:  Well, I see Mr. Glenn coming up as well,

15  who is counsel for FHFA.  Mr. Schrock?

16         MR. ECKSTEIN:  Your Honor, while we're waiting, I have

17  received confirmation that your chambers has been advised that

18  the withdrawal motion is in the queue; it should hit shortly.

19         THE COURT:  As long as it hits.

20         MR. ECKSTEIN:  I understand.

21         THE COURT:  Mr. Schrock?

22         MR. SCHROCK:  Good afternoon, Your Honor.  Ray Schrock

23  of Kirkland & Ellis on behalf of Ally.

24         Mr. Glenn of Kasowitz is checking with his office on

25  the precise procedure, but I believe those issues will be

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    23

1  resolved.  We're just checking on the mechanics for it.

2          THE COURT:  Okay.  All right.  Thank you very much,

3  Mr. Schrock.

4          MR. SCHROCK:  Thank you.

5          THE COURT:  Mr. Lee?

6          MR. LEE:  Your Honor, obviously there was a lot of

7  paper filed.  If there are any other questions you have, I'm

8  more than happy to answer them now.  If not, I'm happy to

9  discuss the structure of the hearings next week and some timing

10  questions.

11         THE COURT:  You'll forgive me if I've been preoccupied

12  with something I'm trying to get done.

13         MR. LEE:  I'm perfectly happy to do my opening now and

14  summarize what you need to read, Your Honor.

15         THE COURT:  Let me -- I'm going to raise a couple of

16  issues or a couple of procedural thoughts that I have but I

17  won't actually order it.  I'll wait to hear whether something

18  different is being proposed, okay?  So these are some notes

19  that I wrote to myself that because this is a little unusual,

20  because it's a combined hearing on confirmation and the Phase

21  II trial of the adversary proceeding, I know who the counsel

22  are basically in the adversary.  I don't know who all plans to

23  participate in connection with confirmation.  But my thought is

24  that any counsel intending to cross-examine any witness for

25  whom direct testimony has been filed shall file a notice to

RESIDENTIAL CAPITAL, LLC, ET AL.                    24

1  that effect on ECF by tomorrow at noon with an estimate of the

2  amount of time you expect to take on cross-examination.  I

3  think everybody ought to know ahead of time.

4          I know as to counsel on the adversary proceeding, I

5  believe that's been done pretty orderly.  You've already

6  exchanged information about cross-examination and estimates of

7  time, but there are a lot of other parties potentially involved

8  in connection with confirmation and I think everyone ought to

9  know ahead of time that the direct testimony's been filed,

10 people have had an opportunity to review it and everybody,

11 including -- especially me, wants to know by tomorrow at noon

12 who is intending to cross-examine and an estimate of the time.

13         I will not permit repetitive cross-examination and

14 during the proponent's case, the plan proponent's case, cross-

15 examination will start with counsel for the JSNs and UMB first

16 and then proceed to other counsel who have identified by

17 tomorrow at noon that they intend to cross-examine.  They can

18 change their mind, of course, and not do it but --

19         The only other thing I wanted to raise now is I expect

20 to rule on the two motions in limine at the start of the

21 hearing on Tuesday without hearing argument which is my usual

22 practice with motions in limine.

23         MR. LEE:  Thank you, Your Honor.

24         THE COURT:  Okay.

25         MR. LEE:  Just with respect --

1          THE COURT:  But if there's anything -- I'll let you

2     all talk.  If anything -- if you've all discussed something a

3     little different than what I've described, well, I'll hear it

4     and decide whether to alter what I've already said.

5          MR. LEE:  So I think the only difference with respect

6     to what Your Honor said relates to the JSNs.  I believe that

7     we've given them until Monday to provide that information.

8          THE COURT:  Okay.  With respect to their estimate

9     of --

10         MR. LEE:  Cross-examination.

11         THE COURT:  Okay.

12         MR. LEE:  Yes.

13         THE COURT:  But everybody knows that --

14         MR. LEE:  Yeah.

15         THE COURT:  -- I'm less concerned; I mean, I want them

16    to do their cross-examination first before cross-examination is

17    opened up to others.  I'm perfectly fine with your agreement

18    that they'll notify by Monday.

19         MR. LEE:  Yeah.

20         THE COURT:  But everybody else that you've had an

21    opportunity to see the direct; if you intend to cross, file it

22    by noon tomorrow, put an estimate on the amount of time.

23         MR. LEE:  Thank you, Your Honor.  So --

24         THE COURT:  I take it that nothing you've discussed

25    would alter -- would cause me to change that direction?

RESIDENTIAL CAPITAL, LLC, ET AL.                    26

1          MR. LEE:  No, Your Honor.

2          THE COURT:  Okay.  Good.

3          MR. LEE:  So obviously, Your Honor, the proponents

4   have significantly more to do with respect to this trial than

5   argue over post-petition interests.  It's an interesting

6   exercise but we have to get the plan confirmed.  So there is a

7   question and perhaps even a suggestion that we discuss with

8   Your Honor a timed trial.  We have six days in total.  We

9   anticipate that we will need to do very lengthy openings,

10  perhaps as much as three hours from the prospective of the

11  proponents.  We have to take you through a mountain of paper.

12  We have to take you through 1129.  We have to take you through

13  the plan, the plan objections, the resolution of the

14  objections, the evidence that we're putting in which is quite

15  voluminous and the settlements.  And we think that, quite

16  frankly, that frames the coproponents' plan confirmation case

17  and if we do that, it will put everything into context.

18          So with that, if we're assuming that we have thirty-

19  six hours, you know, our proposal would have been there are

20  three settlements that we need to address as part of the

21  confirmation process in addition to everything else; that's the

22  Kessler, which I think I mentioned, the NCUAB 9019 and the FHFA

23  settlement, all of which tie to confirmation.

24          What we were planning to do, Your Honor, was to leave

25  those until all of the evidence has come in with respect to

1  confirmation and with respect to any Phase II issues and then

2  reserve the last half a day of the six days to address those.

3  I doubt we're going to need it but we want to just effectively

4  have those three hours.  It's obviously critical that we get

5  them done as part of the confirmation process.

6          So what that leaves us with, Your Honor, is I think

7  thirty-three hours.  Given the burden on the plan proponents,

8  our proposal will be that the plan proponents have nineteen

9  hours.  The JSNs, Wells, the ad hoc group or whatever have

10  eleven, and that the remaining objections -- the remaining

11  objectors of which there's -- well, a diminishing number to the

12  point of less than a handful, get three hours to address

13  whatever objections they have.  That was the first point that I

14  wanted to raise and I think that stems from the question as to

15  whether Your Honor actually expects a timed trial or not.

16          THE COURT:  Okay.  Sure, okay.

17          MR. LEE:  And in answer to what would have been the

18  obvious question, which is have you raised that with the JSNs

19  and the other objecting parties, the answer is we have raised

20  it with them.  They're considering it.  They neither agree nor

21  disagree.  I'm simply making the observation, Your Honor, that

22  we obviously have significantly more to do than they do with

23  respect to this.

24          THE COURT:  Well, let me -- and I do want to hear -- I

25  don't -- Mr. Uzzi or who is going to speak for the JSNs today,

RESIDENTIAL CAPITAL, LLC, ET AL.                    28

1   obviously while I set aside the six days, there was a brief

2   discussion I think on the record at the last hearing that if we

3   don't finish in the six days when the next two days that would

4   be available; that's not an invitation to extend the length of

5   the hearing.  As many of you know, my practice has been to do

6   timed trials and allocate the time but let people know well in

7   advance so that they can plan accordingly.

8          The difficulty I have here is and is the reason that I

9   haven't specified how many hours you get, how many hours the

10  other side get, is it's not a two-party fight at this point and

11  that isn't intended as an invitation for anybody to drag this

12  out because I won't -- that I won't put up with, okay?  I have

13  no qualms whatsoever about cutting off a line of questioning

14  that I don't think is meaningful to me as the decision-maker or

15  relevant to the issues or what -- and I have no hesitancy about

16  doing that.  But I'm very mindful of the fact there are a lot

17  of additional parties who weren't in the -- for that Phase I

18  trial, you all finished ahead of schedule, considerably ahead

19  of schedule.

20          I allocated time based on the number of issues, the

21  number of witnesses and both sides conducted that trial very

22  efficiently.  There had been some expression that that wasn't

23  enough time -- before the trial -- that that wasn't enough time

24  that I was allocating and it finished two or three days before

25  the allotted time that had been used.

1            So I hope that the confirmation hearing/Phase II trial

2    will be conducted as efficiently.  The direct has been filed.

3    Yes, the debtors have considerably more ground to cover,

4    although I would note the JSNs have plan confirmation issues as

5    well, but not just the Phase II trial issues.

6            Let me hear from -- does someone want to speak for the

7    JSNs?

8            MR. COHEN:  Good afternoon, Your Honor.  David Cohen,

9    Milbank, Tweed --

10           THE COURT:  I couldn't see you sitting back there.

11           MR. COHEN:  Ah.

12           THE COURT:  That's why I pointed to Mr. Uzzi but --

13           MR. COHEN:  David Cohen, Milbank, Tweed, Hadley &

14   McCloy on behalf of the ad hoc group of JSN noteholders and the

15   notes trustee.

16           We got the proposal that Mr. Lee just talked about

17   literally a half an hour before we came to court and --

18           THE COURT:  I don't expect you to give me an answer.

19           MR. COHEN:  Right.  We had not considered -- we heard

20   your comments at the last status conference suggesting I think

21   it was December 5 and 6th were available dates if we didn't

22   finish; we share your view that we would like to do this trial

23   as efficiently as possible.  We have to figure out our timing

24   on cross-examinations which as Mr. Lee noted or Mr. Kerr, is

25   due on Monday.

1     So while we will give the best estimates, I don't

2   think at this point we can tell you -- I certainly don't think

3   eleven hours is going to be sufficient and we can talk about

4   different allocation, given the number of witnesses that we

5   intend to call and that they intend to call.

6           THE COURT:  The JSNs didn't think the time I allocated

7   for the Phase I trial was enough and then you went ahead and

8   finished days ahead of time.

9           MR. COHEN:  And if we can finish ahead of time, we'll

10   absolutely do that here, as well.  But I think these are

11   important issues.  We're going to work with the debtors on it.

12   As you noted, we also have a plan objection that we need to

13   cover, as well.  So we did get the proposal.  We'll continue to

14   work with the debtors and see if we can come up with the right

15   answer.

16           THE COURT:  How long an opening do you anticipate?

17   Are you going to be the lead lawyer?

18           MR. COHEN:  I am going to be the lead.  I would think

19   ninety minutes would be sufficient, same as Phase I.

20           THE COURT:  Okay.  All right.  Does somebody else want

21   to be heard on time?  Mr. Eckstein?

22           MR. ECKSTEIN:  Your Honor, Kenneth Eckstein, Kramer

23   Levin.

24           I can appreciate as a practical matter Mr. Cohen needs

25   to digest this and to speak with his clients.  We think that

1    there's a lot of merit to this for two separate reasons; one is

2    particularly having had the experience of the Phase I trial.  I

3    think as a judicial economy matter, we all actually can figure

4    out ways to make it work and I think that the reality is that

5    while there's a lot to cover, based upon the scope of the

6    objection from the JSNs, the reality is that most of the

7    witnesses, most of the declarations, we're not expecting are

8    going to be the subject of a lot of cross-examination.  There

9    are certain witnesses who will be, but in terms of the volume,

10   this probably is a somewhat more discrete trial than the Phase

11   I trial and even though the openings will be comprehensive, the

12   rest of this we would expect can go in -- certainly many of

13   them can go in probably without a lot of time.

14          The other point that I think is significant is just as

15   a practical matter, Your Honor knows that there is a deadline

16   right now in the plan support agreements.  Whether we'll be

17   able to meet that deadline or not remains to be seen but I

18   think Your Honor appreciates everybody's working very hard to

19   meet those deadlines.  We do have Thanksgiving.  We recognize

20   Your Honor may want findings of facts and --

21          THE COURT:  Not may, will.

22          MR. ECKSTEIN:  Will; I think I heard that -- will want

23   findings of fact submitted.  I would not be surprised if the

24   Court and parties want a closing.  And so there is going to be

25   work to be done after November 26th and the reality is that I

1    think there's a lot of reason to try to do everything we can to

2    use the six days to get this done and I -- hopefully after the

3    JSNs think about it a little bit, they'll realize that we, in

4    fact, can get it done.  And if there's a little bit of juggling

5    we need to do, we'll do it but I think I want to encourage the

6    fact that we try to make that work.

7            THE COURT:  Well, I want to encourage that it be made

8    to work, as well.  We'll see.

9            Mr. Uzzi, do you want to be heard?

10           MR. UZZI:  Yes, for the record, Gerard Uzzi from

11   Milbank.

12           I think the last issue -- what's a little confusing to

13   me is what we're trying to accomplish in the six days.  And in

14   the Phase I --

15           THE COURT:  To try and get everything done, Mr. Uzzi;

16   no mistake about it.

17           MR. UZZI:  Well, the question is if you want to -- if

18   whether we're coming back after the close of the record with --

19   after findings of facts and conclusions of law --

20           THE COURT:  That's likely to happen.  I mean that's

21   what happened after the Phase I trial.  The reality is, I don't

22   know whether there's going to be any more issues about

23   deposition designations, et cetera and, I mean, I think what

24   happened with the Phase I trial from my standpoint was

25   efficient.  I got the proposed findings and scheduled argument

1   pretty soon thereafter and that's likely to happen here.  I'm

2   not expecting you're going to close at the close of the

3   evidence; let's put it that way.

4           MR. UZZI:  Oh, well, I think that's meaningful in our

5   discussions, Your Honor.

6           THE COURT:  Okay.

7           MR. UZZI:  Because as you know, we recognize the

8   debtors have to go through the elements of 1129 and a lot of

9   that stuff we're just --

10          THE COURT:  Why don't you just stipulate to all of it.

11          MR. UZZI:  Well, I don't think we've taken issue with

12  most of them.  So it's up to them as to --

13          THE COURT:  Well, sit down --

14          MR. UZZI:  -- how they want to --

15          THE COURT:  -- sit down with them after we finish

16  today and see what you can stipulate to.  You're not the only

17  one who has to agree.

18          MR. UZZI:  Well, I think that's the issue.  It's not

19  our issue.  I think it's more their issue as to the record they

20  want to present to you with respect to explaining the plan and

21  things like that.

22          THE COURT:  That's certainly true and there may be

23  other objectors and, I mean, I'll hear from some of them now

24  but the reality is that the JSNs have done whatever they can to

25  stop this plan in its tracks.  That's the reality, okay?

1   That's your right to try and do that, okay?

2           So if they can reach stipulations with the JSNs, it

3   may expedite -- and yes, you know, for Phase II the pre-trial

4   order starts with stipulations but that deals with Phase II.

5   That doesn't deal with confirmation.

6           So you may well be able -- pick your fights that you

7   want to fight.  I understand you have those.  But let's not

8   drag out the necessity of a prolonged record on things as to

9   which you're not going to contest and let them know ahead of

10  time.  So hopefully it can get truncated.

11          MR. UZZI:  Well, we tried to do that in our plan

12  objection, Your Honor.  We've actually offered denial on the

13  issues in the plan objection.  You know, we're happy to talk to

14  them some more --

15          THE COURT:  Okay.

16          MR. UZZI:  -- about making this as efficient as we

17  can.

18          THE COURT:  I don't -- look, as I said at the end of

19  the Phase I trial and I said it again now, your clients and UMB

20  have fought hard on a lot of issues, but done it very

21  efficiently.  I'm not -- I don't have a complaint about that.

22  It was all done very professionally.  And I fully expect that's

23  going to happen again.

24          I'm just encouraging -- I've been through this very,

25  very lengthy pre-trial order for Phase II, but I have -- maybe

1  there's something that's been filed with respect to

2  confirmation that I haven't seen yet that includes

3  stipulations.

4         But since you represent the principal opposing party,

5  to the extent you can resolve as many issues as possible, then

6  you can all focus your efforts on those that are really -- that

7  you're really fighting about.

8         MR. UZZI:  I think we -- understood, Your Honor.

9         THE COURT:  Right.

10        MR. UZZI:  I think we did that in our plan objection.

11        THE COURT:  Okay.

12        MR. UZZI:  But understood.

13        THE COURT:  Well, that's your plan objection.  What

14  I'm asking now is sit down and stipulate to what you can

15  stipulate to so we don't even have to deal with a lot of that

16  stuff.  Okay?

17        MR. UZZI:  Yes.

18        THE COURT:  All right.  You want to be heard?  Come on

19  up.

20        MR. LEBIODA:  Good afternoon, Your Honor.  Nathan

21  Lebioda from Winston & Strawn on behalf of Wachovia, Wachovia

22  Bank of Delaware now succeeded by Wells Fargo.

23        The plan proponent's schedule is certainly amenable to

24  us.  Our objection is quite limited.  It's not objecting to

25  confirmation, per se.  It's limited to the extent of the

 1   release of the third-party non-debtor AFI.

 2          We're trying to work through a stipulation of facts

 3   with the proponents currently.  We're hopeful that that

 4   stipulation of facts will be agreed to and put on the record

 5   prior to the hearing.

 6          Two of the key components that we're trying to get on

 7   the record prior to that hearing are --

 8          THE COURT:  If you're going to put the stipulation

 9   in -- I don't know when you say put it on the record, do it in

10   writing.

11          MR. LEBIODA:  Right.  Yes.  Yeah, we exchanged

12   documents with the proponents and we're hoping to get that

13   done.

14          THE COURT:  Okay.

15          MR. LEBIODA:  Two key documents that we're wanting on

16   the record are the deposit agreement, as well as the amendment

17   thereto.  We're hoping we can work that out through the

18   stipulation.

19          If not, we'll --

20          THE COURT:  I can't believe you're having a dispute

21   about the admissibility of a deposit agreement.  That isn't

22   going to happen.

23          MR. LEBIODA:  If not, we will just like to reserve a

24   few minutes of time to get that on the record and possibility

25   15 minutes of cross-examination.

1          THE COURT:  Well, you keep saying get it on the

2     record.  Negotiate a stipulation.  Put it in writing.  If you

3     can file it before the hearing, please do.

4          You know, through the Figit (ph.) trial, the JSN Phase

5     I trial, there have been almost no evidentiary issues about

6     exhibits.  I mean, it just -- and I don't anticipate there are

7     going to be any here.  Okay, but --

8          MR. LEBIODA:  All right.

9          THE COURT:  Okay.

10         MR. LEBIODA:  That's all I need --

11         THE COURT:  Thank you.

12         MR. LEBIODA:  -- Your Honor.

13         THE COURT:  Anybody else want to be heard?  You,

14    Mr. Siegel.

15         MR. SIEGEL:  Your Honor, Glenn Siegel of Morgan Lewis

16    on behalf of Bank of New York.

17         THE COURT:  Have you gotten used to saying that yet?

18         MR. SIEGEL:  This is the first time I've actually said

19    it in the court.

20         As has been our previous practice in this case, I'm

21    speaking on behalf of all the RNBS trustees unless

22    contradicted, but -- it's the best I can do, right?

23         THE COURT:  They're all getting up in the back.  I

24    don't --

25         MR. SIEGEL:  Yeah, I bet.

1          But this is in keeping with your admonition to try and

2     create some efficiency here.  The trustees, as you may know,

3     are in -- save for one, are all in a bunch of different cities.

4          We've submitted declarations as of this point in time,

5     at least based on our own judgment.  We're not quite sure why

6     anybody needs to cross us.  We haven't seen anything.

7          The -- we have --

8          THE COURT:  Declarants need to be here and available

9     for cross-examination.

10          MR. SIEGEL:  Your Honor, I appreciate what you're

11     saying.  I do want to at least advise you that we've spoken to

12     Mr. Cohen, who has undertaken to tell us by tomorrow whether or

13     not --

14          THE COURT:  Good.

15          MR. SIEGEL:  -- he intends to cross us.  But of

16     course, Your Honor, it's your expectation that the -- all the

17     declarants will be here.  They will.

18          Then I would only ask that we be able to agree at

19     least as to what day they ought to be here, rather than have

20     them available for the entire trial.

21          THE COURT:  But here's what I -- again, this comes

22     down to there are a lot of other potential parties-in-interest

23     for confirmation.  What I would encourage you to do -- I've

24     said this before in the other two trials, I'm perfectly

25     amenable to take witnesses out of order where that is necessary

RESIDENTIAL CAPITAL, LLC, ET AL.                    39

1  because of scheduling.  Not just haphazardly, but if someone

2  has a true scheduling issue, talk with committee, the JSNs, the

3  Debtors' counsel and see if you can resolve the scheduling

4  issue.

5       It may be that your people are going to have to show

6  up here only to have everybody say, no questions.  But what I

7  won't have is direct examine -- direct witness statement

8  offered, somebody say, I want to cross-examine, and not have a

9  witness here.  I don't permit examination by telephone.  Okay.

10      MR. SIEGEL:  Understood.

11      THE COURT:  Okay.  Thank you very much, Mr. Siegel.

12      Anybody else want to be heard?

13      MR. LEE:  If there's no one else, then --

14      THE COURT:  Why don't you wait, Mr. Lee.  Let's let

15  everybody else have their say.

16      MR. SCHAFFER:  Your Honor, Eric Schaffer, Reed Smith

17  for Wells Fargo as collateral agent.

18      Two housekeeping points; first, you know, we filed

19  objections that are not subsumed by Phase II.  It's our

20  understanding that to extent we'd want to cross, we'll do it as

21  witnesses come up, that it's all going to be worked through

22  at -- in orderly fashion that way.

23      THE COURT:  Yes, but to the extent that there are --

24  direct examination has been already submitted, already filed,

25  by tomorrow at noon you will indicate which witnesses you --

1         MR. SCHAFFER:  Absolutely.

2         THE COURT:  -- expect to cross-examine and an estimate

3    of the time.

4         MR. SCHAFFER:  We --

5         THE COURT:  I don't -- it's an estimate.  I

6    understand.

7         MR. SCHAFFER:  Absolutely.

8         THE COURT:  Okay.  That's fine.

9         MR. SCHAFFER:  Second point; as the Court knows, we

10   have a right of indemnification for any claims that may be

11   asserted by the JSNs against Wells Fargo.  The Debtor says that

12   the plan preserves our rights and that's a good thing.

13        UMB has said that it thinks our -- the amount of our

14   claims need to be dealt with in a separate estimation.  It's

15   our understanding, and we just want to confirm, that consistent

16   with the Debtors' response any issues that go to the amount of

17   our claim are deferred until after confirmation.  That's not

18   going to be part of what we're doing in confirmation.

19        THE COURT:  Mr. Lee?

20        MR. LEE:  Just give me one second, Your Honor.  I just

21   want to make sure I understand.

22        THE COURT:  Sure.  Go ahead.

23        MR. LEE:  That's absolutely correct, Your Honor.

24        Sorry, Gary Lee from Morrison & Foerster for the

25   Debtors.  It's correct.

1            THE COURT:  Okay.  I assume you're satisfied with that

2    response?

3            MR. SCHAFFER:  I am, Your Honor.  Thank you.

4            THE COURT:  Okay.

5            MR. LEE:  Your Honor, I just have one more question

6    before I turn it over to Mr. Kerr.

7            THE COURT:  Sure.

8            MR. LEE:  In relation to -- I know Your Honor said

9    that you wanted post-trial findings of fact --

10           THE COURT:  Yes.

11           MR. LEE:  -- conclusions of law.  My assumption is, is

12   that in relation to both Phase II and confirmation?

13           THE COURT:  Yes.  Well --

14           MR. LEE:  It's do -- that's what I was trying to make

15   sure that we were oriented.

16           THE COURT:  Okay.  But absolutely with -- Phase II is

17   pretty well developed.  I mean, it was developed first with the

18   statement of issues.  It was -- we know what -- you'll see soon

19   what the outcome of Phase I is.

20           MR. LEE:  Right.

21           THE COURT:  I've gotten this joint pre-trial order

22   with respect to Phase II.  The issues are well defined, well

23   developed.

24           The confirmation standards obviously are the

25   confirmation standards.  You've got some plan objections.

1        I have a feeling, Mr. Lee, that when we get to the end

2   of the evidentiary hearing, it'll be pretty clear which

3   issues -- which factual and legal issues for confirmation you

4   need to address beyond what is covered by Phase II.

5        So I don't need a regurgitation of everything that's

6   being provided to me in support of confirmation again.  I doubt

7   whether we're going to need another -- if there's any

8   confirmation brief, I think it's going to be narrow targeted

9   focused on the specific issues that are raised.

10            MR. LEE:  Okay.

11            THE COURT:  Okay.  So I think when we finish the

12  evidence, raise again what issues you need to address.  I'm not

13  looking to have another mountain of paper generated

14  unnecessarily.  Okay?

15            I don't know if that's responsive to what you're

16  asking.

17            MR. LEE:  No, perfectly.  Thank you, Your Honor.

18            THE COURT:  Okay.

19            MR. LEE:  I'd like to turn it over to Mr. Kerr.  All

20  right.  Thank you.

21            THE COURT:  Okay.  Sure.

22            MR. KERR:  Good afternoon, Your Honor.  Chuck Kerr of

23  Morrison & Foerster on behalf of the Debtors.

24            Just a couple of housekeeping matters, Your Honor.

25            THE COURT:  Sure.

1      MR. KERR:  We have been working very well with the

2   JSNs and with the committee on trying to get things focused.

3   That being said, one of my statements to you about trying to be

4   very efficient got screwed up.  And the reason that is, is I

5   was trying to do a single witness list and it didn't work out

6   that way in the PTL that you got.

7      So the parties have agreed to submit today a new form

8   of just the witness list that now updates and clarifies which

9   of the witnesses are.  That'll end -- all of these witnesses

10   have had direct submitted or whatever, so it's just a question

11   of getting the paper right.  That's all.

12      THE COURT:  That's fine, Mr. Kerr.

13      MR. KERR:  And that'll be submitted a little bit

14   later.

15      Your Honor, one question on exhibits.  We have -- in

16   part because we have felt compelled to make sure our record's

17   complete on the proofs of claim, whenever we have a fairly

18   extensive witness -- I mean, exhibit list, normally we would be

19   delivering a truckload of paper to Your Honor tomorrow.

20      And what I would like to propose, subject to Your

21   Honor's suggestion, is that some of those exhibits I think are

22   not going to controversial and we'd like to deliver them to

23   Your Honor in electronic form.  And if you need them in paper,

24   we can obviously provide them in paper, but the categories I

25   was going to suggest of our exhibit list -- we have included

RESIDENTIAL CAPITAL, LLC, ET AL.                    44

1  all the proofs of claim.  There's 475 of them, Your Honor.

2  We'd like to -- I'm more than willing to give them in paper,

3  but I would suggest we provide them to you in electronic form.

4           There's court filings that we and other plan

5  proponents have identified.  They're all on ECF.  We would

6  provide those in electronic form.

7           And we've also included on our list, Your Honor, the

8  exhibits that were marked into evidence in Phase I.  Again, we

9  would suggest that we just provide that in electronic form.

10          THE COURT:  Those are sitting in there.  Now I'm

11  pointing at chambers.

12          MR. KERR:  Well, Your Honor, it's entirely what would

13  be useful for you.  Again, we want to make this as --

14          THE COURT:  But --

15          MR. KERR:  -- efficient for you as we can.

16          THE COURT:  I'm fine with what you suggest with this

17  proviso.  Okay.  I want to be sure that you have paper copies

18  of all of the exhibits in the courtroom so that if somebody

19  gets up and they say they want -- they start cross-examining a

20  witness about a proof of claim, I don't want to be scrambling

21  to look for an electronic copy of it.

22          MR. KERR:  Your Honor, I'd make that commitment.

23          THE COURT:  Okay.

24          MR. KERR:  We will make sure that we have a copy --

25  and two copies if we need it -- of every exhibit here in the

RESIDENTIAL CAPITAL, LLC, ET AL.                        45

1    courtroom.  We have room upstairs as well.

2              So we'll make it -- if anybody has that issue, and I

3    make that -- but not to Your Honor, but to everybody who will

4    be at the hearing, if they need a document, we'll give them a

5    document.

6              THE COURT:  That's fine.

7              MR. KERR:  All right.

8              THE COURT:  I'm running out of space to keep

9    documents.

10             MR. KERR:  I realize that, Your Honor.

11             Despite that, Your Honor, we will have additional

12   exhibits that we are going to deliver in paper form --

13             THE COURT:  Right.

14             MR. KERR:  -- and they'll arrive at your doorstep

15   tomorrow.

16             Trying to see if I have any other housekeeping issues,

17   Your Honor.  I don't think I do.  So if you have any questions

18   about procedure or how you expect us to do this, please, I can

19   try to answer them, but otherwise, I'll sit down.

20             THE COURT:  I always hesitate to admit this, but I

21   have been preoccupied with what you're all waiting for.  Maybe

22   some of you are not waiting for it.  But let me see whether I

23   have anything else.

24             So I've heard from Mr. Lee and Mr. Cohen on an

25   estimate of how much time they anticipate using for opening

 1  statements.  Is anybody else here going to make an opening

 2  statement and do I have an estimate of approximately how much

 3  time that will take?

 4          Mr. Schrock?

 5          MR. SCHROCK:  Yes, Your Honor.  Ray Schrock of

 6  Kirkland & Ellis.

 7          I plan to make an opening statement.  I would expect

 8  twenty minutes probably would be fine.

 9          THE COURT:  Okay.  All right.

10          MR. ECKSTEIN:  Your Honor, I think Mr. Lee had

11  indicated he and I are going to split up the proponents'

12  opening.

13          THE COURT:  Okay.  All right.  Anybody else in the

14  courtroom intending to make an opening?  Okay.

15          MR. KERR:  Your Honor, one other housekeeping matter.

16  The JSNs have indicated on their exhibit list that they want to

17  call some adverse witnesses.  They are the witnesses that --

18  some of them are witnesses we are calling.  We'll do it all at

19  one time.  We'll call the witness.  They'll cross-examine them.

20          THE COURT:  Yeah.  I think I've said this before.  It

21  may not have been at this -- in connection with this upcoming

22  hearing, but it's a bench trial.  It's most efficient if

23  everybody -- whether something is within the scope of the

24  direct or not, come on, just do whatever examination you're

25  going to do so we can get the witnesses done, so nobody has to

1   recall them.  And I assume you'll all agree on how to do that.

2            MR. KERR:  We will, Your Honor.  We agree 100 percent.

3            THE COURT:  Okay.

4            MR. COHEN:  And that's fine with the JSN as well.

5            THE COURT:  Thanks, Mr. Cohen.  Okay.

6            All right.  Anybody else have any other substantive or

7   logistical issues that they want to raise?

8            Let me just look back at some notes here.

9            MR. ECKSTEIN:  We withdraw that as an exhibit now.

10           THE COURT:  Okay.

11           MR. RECKLER:  Good afternoon, Your Honor, William

12  Reckler of Latham & Watkins on behalf of Deutsche Bank

13  Structured Products and a variety of other Deutsche Bank

14  entities.

15           The plan proponents' response that was filed the other

16  day appears to create some confusion about what my clients are

17  actually seeking.  I'm happy to address that now or later at

18  Your Honor's preference.

19           THE COURT:  I haven't read what they filed.

20           MR. RECKLER:  Okay.

21           THE COURT:  So --

22           MR. RECKLER:  Well, perhaps I can summarize the issue

23  very quickly then.

24           THE COURT:  Okay.

25           MR. RECKLER:  What they filed creates the impression

RESIDENTIAL CAPITAL, LLC, ET AL.                    48

1   that my clients are asking the Court to decide Deutsche

2   Bank's -- whether it's entitled to a judgment reduction credit

3   in the investment related securities litigation.  It gives the

4   impression that we're asking you to decide that now.

5          That's absolutely not what we're seeking, Your Honor.

6   All we're asking for is clarification of the plan and the

7   confirmation order do not affect the judgment reduction

8   analysis that will happen in those other cases at a subsequent

9   point in time.

10          We believe that the plan as drafted it creates an

11  ambiguity -- or potentially creates an ambiguity in that it

12  specifies that the defendant's right to seek a judgment

13  reduction credit where one of the allied released parties co-

14  defendant is a party --

15          THE COURT:  I'm sorry.  I missed the last part

16  somebody coughed.

17          MR. RECKLER:  It specifies that the right to seek a

18  judgment reduction credit is preserved whereupon the allied

19  released parties is a co-defendant in the other litigation.

20          It's silent with respect to what happens when only the

21  Debtors are co-parties in the other litigation.

22          THE COURT:  The Debtors are not co-parties in the

23  other litigation.

24          MR. RECKLER:  The relevance --

25          THE COURT:  They may have been, but --

1          MR. RECKLER:  Correct, or when they may have been

2     parties in other litigation.  When they are released.  There's

3     that ambiguity.  There's silence in article 9 --

4          THE COURT:  Have you tried to talk with Mr. Lee about

5     this?

6          MR. RECKLER:  We have.  We've reached out to

7     Creditors' counsel.  We've reached out to Debtors' counsel.

8     We've actually reached out directly to the plaintiffs in those

9     other cases.  And frankly, it seems like nobody is very

10    interested in talking to us.

11         THE COURT:  Really?

12         MR. RECKLER:  Yeah.  I mean, all we're seeking, Your

13    Honor, is clarification of the confirmation order.

14         THE COURT:  Keep talking to them and see if you can

15    get it resolved.  Okay?

16         MR. RECKLER:  We're certainly trying.

17         THE COURT:  You're not going to be --

18         MR. RECKLER:  We're hopeful that we can.

19         THE COURT:  I'm not precluding you right now from

20    anything, okay.  But I just -- keep talking to them and see if

21    you can get it resolved.

22         MR. RECKLER:  Okay.  We'd very much like to.

23         THE COURT:  Okay.  Everybody's had a lot on their

24    plate.

25         MR. RECKLER:  Yeah.  Understood.  Thank you, Your

RESIDENTIAL CAPITAL, LLC, ET AL.                          50

1    Honor.

2              THE COURT:  Okay.  Thank you very much.

3              MR. SCHAFFER:  Your Honor, Eric Schaffer, Wells Fargo

4    as collateral agent.

5              THE COURT:  It's hard to keep the roles of Wells Fargo

6    straight, but --

7              MR. SCHAFFER:  Well, we shouldn't allow any more bank

8    mergers.

9              Your Honor, I assume that with regard to the

10   objections that we and others have submitted that there will be

11   oral argument after the record is closed.  I'm just trying to

12   figure out for timing purposes would that be --

13             THE COURT:  I thought I said that before, but -- so

14   we're going to close the evidence.  I'm going to ask for

15   proposed findings of fact and conclusions of law.

16             At the end of the JSN Phase I trial, I was asked would

17   I prefer conclusions of law in the numbered paragraph form or

18   in brief form.  I left it to the parties.

19             The brief form was quite helpful.  So if that's

20   what -- we'll all discuss it.  And I assume that's what you'll

21   want to do.  It was perfectly fine the way I got them.

22             I got all that.  I read all that.  We had closing

23   argument.  I anticipate that's what's going to happen again.

24   There wasn't a large gap between the post-trial filings and

25   closing argument.

1        There will not be a long gap between the post-trial

2    filings and they'll be due pretty expeditiously.  I assume

3    we're going to have a daily transcript available again.  People

4    are not going to have a lot of time to get their post-trial

5    filings in.  So have your folks working on it as the trial is

6    going along.

7        I left it -- I asked the question at the close of the

8    evidence on what schedule the JSNs -- and Wells Fargo was in

9    that too -- proposed.  The schedule they proposed was

10   reasonable.  Everybody lived with the schedule.  And so that's

11   going to happen again.

12       Does that answer your question?

13       MR. SCHAFFER:  It does and I thank you.

14       THE COURT:  Okay.  Anybody else?

15       Mr. Lee, what's going to happen tomorrow?  Do you -- I

16   mean, I got this -- what contested matters do I have for

17   tomorrow, do you know?

18       MR. LEE:  I haven't looked at the calendar, Your

19   Honor.

20       THE COURT:  You have no idea either?

21       MR. LEE:  No, Your Honor.

22       THE COURT:  Does anybody here have any idea what's

23   contested for tomorrow?

24       MR. LEE:  I just wanted to get through today.

25       What's that?  It is the -- Impac's on, although you

RESIDENTIAL CAPITAL, LLC, ET AL.                    52

1  are not -- I don't think it's an evidentiary hearing anymore.

2  It's now just a scheduling conference and I think I was close

3  to describing what the outcome of that is.  I'm not sure what

4  else there is.

5            UNKNOWN SPEAKER:  The parties are off on Lenore.

6            THE COURT:  Lenore is off.

7            MR. LEE:  Syncora is off.

8            THE COURT:  Syncora's off.

9            MR. LEE:  Okay.

10            MR. MANNAL:  Well, it --

11            MR. LEE:  So we've got maybe --

12            THE COURT:  No.  Mr. Mannal balked at Syncora being

13  off.

14            MR. MANNAL:  Syncora has been resolved, Your Honor.

15            THE COURT:  Identify yourself.

16            MR. MANNAL:  Doug Mannal on behalf of the creditor's

17  committee, Your Honor, and Kramer Levin.

18            Syncora will go forward tomorrow to the extent we

19  can --

20            THE COURT:  Okay.

21            MR. MANNAL:  -- finalize documentation.  And if not,

22  it'll be adjourned.

23            THE COURT:  Okay.  All right.  I see other counsel

24  that want to be heard.

25            Hopefully by now you all realize whenever I have a

1   ResCap hearing, I think I'm prepared on everything and that

2   isn't true for tomorrow.  And that's because I'm trying to get

3   everything done that needs to get done.

4           Okay.  Go ahead.

5           MR. GRAHAM:  Yes.  Good afternoon, Your Honor.  Chris

6   Graham from McKenna Long & Aldridge, together with my partner

7   Alan Kaufman, for Impac Funding Corporation.  We're on for

8   tomorrow.

9           THE COURT:  What is it I'm being asked to decide

10  tomorrow?

11          MR. GRAHAM:  Whether the Debtor can assume and

12  assign --

13          THE COURT:  I thought they just said they were going

14  to do that.

15          MR. GRAHAM:  I believe that that is their intention,

16  Your Honor.

17          THE COURT:  Does that resolve the issue?

18          MR. GRAHAM:  We're very -- no, no, it doesn't.  There

19  are some other issues, but I think we are very close to

20  resolving those issues and we may be able to stip to them.  And

21  we're trying -- we've been trying.

22          THE COURT:  Okay.

23          MR. GRAHAM:  Mr. Mannal and I were negotiating late at

24  night at the Bedford Hills train station.  We're trying --

25  turns out we're neighbors. We've been trying to resolve these

RESIDENTIAL CAPITAL, LLC, ET AL.                    54

1  issues -- all of the issues.  And we're trying to, but

2  otherwise, we'll be here tomorrow.  There will not be an

3  evidentiary hearing.

4          THE COURT:  Okay.  That I --

5          MR. GRAHAM:  All right.

6          THE COURT:  -- was told I think last week --

7          MR. GRAHAM:  Right.

8          THE COURT:  -- that this didn't have to go forward as

9  an evidentiary hearing.

10          MR. GRAHAM:  That is correct, Your Honor.

11          THE COURT:  Thank you very much.

12          MR. GRAHAM:  Thank you.

13          THE COURT:  Okay.

14          MR. LEE:  Your Honor, if you want, I can go back and

15  check the docket and see if there are things we can move if

16  that's --

17          THE COURT:  No, I mean -- well, no, we can go -- at

18  this point go ahead.  It may be that I take everything under

19  some -- you know, I don't know what -- I just don't know what's

20  contested and what -- so it may be that things are going to

21  wind up being taken under submission.  But I'll hear argument

22  to the extent people have argument, but I have a number one

23  priority to get done before tomorrow.

24          MR. LEE:  I will go back and see what we can remove

25  and to the extent to which we can't, I'll advise chambers as to

1    what's going ahead and what's being objected to, if I can.

2         THE COURT:  Okay.  And let me just -- I guess I'll say

3    something about this again tomorrow, the issues with respect to

4    borrower claims.  And so as directed, I got two briefs; one

5    from SilvermanAcampora -- I see Mr. Nosek there -- and one from

6    the Debtors.  And those briefs were helpful.

7         What I want to be able to do -- and I already -- I

8    mean, I guess I issued an opinion yesterday with respect to one

9    borrower claim where there was counsel involved, not a pro se.

10   And at least in the opinion that I filed yesterday, the

11   Debtors' objections were sustained substantially, but not

12   entirely.  There was one claim that remained.

13        But what I would like to be able to do with -- and I

14   know I already got some proposals from the Debtors and special

15   borrower's counsel -- is design an efficient procedure for

16   dealing with borrower claims, many of which arise at least in

17   part with raised issues about loan modifications.

18        If the plan is confirmed, there is a borrower class

19   with money allocated to it and it's not an infinite sum.  And

20   those who are entitled to participate in that class should.

21   And those who are not shouldn't.  And the issue is finding the

22   most efficient and fair way to be able to deal with those

23   issues.

24        So, Mr. Nosek, I really do appreciate the brief that

25   your -- I appreciate the Debtors' brief too, but I think the

1  committee special borrower counsel did exactly what I wanted

2  done and it's very helpful to the Court.

3          I can say something about that again tomorrow when I

4  guess there -- but -- and I'm looking for help from counsel in

5  getting that done so we don't spend an infinite amount of time

6  trying to resolve issues.  Maybe it helps further in trying to

7  settle some of those claims as well.

8          Mr. Eckstein?

9          MR. ECKSTEIN:  Your Honor, if I may on this point,

10  because I think, as Your Honor knows, this is something that's

11  been the subject of a lot of ongoing attention.  And Your Honor

12  will hear at confirmation the approach that was taken in the

13  plan to deal with borrower claims.

14          And I think, as Your Honor knows, one of the goals

15  was, in addition to making sure that there was adequate money

16  in the plan, that we also try to construct a process that was

17  going to minimize the sort of inefficiency, particularly for

18  individuals, many of whom didn't have counsel, that have to

19  deal with the bankruptcy claim administration process where

20  often you'd end up finding that you have to spend more to

21  defend a claim than you might get to recover.

22          And so one of the suggestions I would make in -- I

23  think the SilvermanAcampora firm will be able to take the lead

24  on that -- is the goal is that there is now a trustee for the

25  borrower trust that's contemplated.  And I think the

1  expectation is to very quickly develop --

2          THE COURT:  If you get the plan confirmed.

3          MR. ECKSTEIN:  -- assuming the plan is -- if the plan

4  is not confirmed, then we have different problems.  But

5  assuming the plan is confirmed, there is going to be a

6  structure in place.  There'll be a trustee for the borrowers

7  trust.

8          And I think one of the things that can be done very

9  quickly once we get through confirmation is to maybe come back

10 to the Court, potentially even before the effective date, with

11 some suggested procedures for how to deal with the remaining

12 borrower claims consistent with what's contemplated in the

13 plan.

14         THE COURT:  That's fine.  I mean, look, for the pro se

15 borrower claims in particular I wouldn't expect those borrowers

16 to be able to identify that they have a causative action under

17 the particular state's law for unfair deceptive practices.  And

18 so -- or the other causes of action that increasingly seem to

19 be recognized in many states across the country.

20         So I read a set of facts that are alleged and try and

21 understand whether that's -- that set of facts, incomplete

22 though it may be, appears to allege a causative action that's

23 been recognized.  Okay.

24         As happens in many of those cases that the opinions

25 are cited, litigation goes on for a very long time.  That's not

1   the process -- that's not the efficient process that I think

2   has to happen here.  I mean, I think -- well, let me stop

3   there.  We're not disagreeing.

4           MR. ECKSTEIN:  I think that's right.

5           THE COURT:  We're not disagreeing at all.

6           MR. ECKSTEIN:  We're not disagreeing.  But I think the

7   challenge will be to maybe lay out for the Court with

8   specificity exactly what procedures are contemplated.

9           THE COURT:  Yeah.  And I think borrowers have to

10  understand this is a fair process so it gives them a reasonable

11  opportunity to present their arguments and in particular an

12  understandable statement of damages of the -- when I some of

13  the claims and they claim tens of millions of dollars without

14  linking it to anything in particular, that has a sense of

15  unreality about it.  But other times the claims are much more

16  specific and -- okay.

17          MR. ECKSTEIN:  I do think between the briefs that have

18  been filed and the declarations that are going to be in the

19  record and hopefully the explanations --

20          THE COURT:  Okay.

21          MR. ECKSTEIN:  -- that will come in in connection with

22  confirmation, I think Your Honor will hopefully have a

23  comprehensive record of how --

24          THE COURT:  Okay.

25          MR. ECKSTEIN:  -- all of these issues are being

RESIDENTIAL CAPITAL, LLC, ET AL.                    59

1  accounted for in the plan.

2         THE COURT:  Okay.  Let me just look quickly and see

3  whether I have any other questions I wanted to ask.

4         Anybody else want to be heard?

5         That's it for me.  Thank you very much.

6         MR. KERR:  Thank you, Your Honor.

7         THE COURT:  We're adjourned.

8         So are you all delivering everything tomorrow or

9  Monday?  What is happening?

10         MR. KERR:  Your Honor, I think that under the schedule

11  we are delivering it tomorrow.  I'll confirm that, but I think

12  that's the case.

13         THE COURT:  Okay.  So there's hopefully a diminishing

14  calendar in the morning that you can --

15         MR. KERR:  Yeah.  We'll -- I think -- I'll confirm.  I

16  plan -- I think we're coming in at noon.  That's when we have

17  to get it to you guys.

18         THE COURT:  Okay.  All right.  So you and Mr. Cohen

19  keep working to see if you can --

20         MR. KERR:  We will.  Yeah.

21       (Whereupon these proceedings were concluded at 3:06 PM)

22

23

24

25

1

2                          C E R T I F I C A T I O N

3

4    I, Linda Ferrara, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7                    _Linda Ferrara_

8

9    _____

10   LINDA FERRARA

11

12   eScribers

13   700 West 192nd Street, Suite #607

14   New York, NY 10040

15

16   Date:  November 15, 2013

17

18

19

20

21

22

23

24

25

## A

**AARON (1)**
13:9
**able (10)**
14:9;31:17;34:6;
38:18;53:20;55:7,13,
22;56:23;57:16
**Absolutely (7)**
20:11;30:10;40:1,
7,23;41:16;48:5
**ACAMPORA (1)**
6:13
**acceptance (1)**
15:11
**accepted (1)**
15:10
**accomplish (1)**
32:13
**accordingly (1)**
28:7
**account (3)**
17:15,16,20
**accounted (1)**
59:1
**across (1)**
57:19
**action (5)**
20:2;21:14;57:16,
18,22
**actions (1)**
20:14
**actually (9)**
17:4,22;23:17;
27:15;31:3;34:12;
37:18;47:17;49:8
**Ad (5)**
5:11,20;9:3;27:9;
29:14
**addition (2)**
26:21;56:15
**additional (2)**
28:17;45:11
**address (9)**
17:7,20;19:25;
26:20;27:2,12;42:4,
12;47:17
**addressed (1)**
18:1
**adequate (1)**
56:15
**adjourned (2)**
52:22;59:7
**administration (1)**
56:19
**admissibility (1)**
36:21
**admit (1)**
45:20
**admonition (1)**
38:1
**advance (1)**

**28:7**
**adversary (4)**
14:3;23:21,22;
24:4
**adverse (1)**
46:17
**advise (2)**
38:11;54:25
**advised (1)**
22:17
**affect (1)**
48:7
**AFI (4)**
16:22;17:2;22:4;
36:1
**afternoon (8)**
14:17;15:3;22:22;
29:8;35:20;42:22;
47:11;53:5
**again (12)**
34:19,23;38:21;
42:6,12;44:8,13;
50:23;51:3,11;55:3;
56:3
**against (8)**
15:20;16:5,20,22;
17:2;21:16,21;40:11
**agent (2)**
39:17;50:4
**agree (5)**
27:20;33:17;
38:18;47:1,2
**agreed (2)**
36:4;43:7
**agreement (5)**
22:1,4;25:17;
36:16,21
**agreements (1)**
31:16
**Ah (1)**
29:11
**ahead (13)**
15:1;24:3,9;28:18,
18;30:7,8,9;34:9;
40:22;53:4;54:18;
55:1
**AKIN (1)**
8:19
**ALAN (2)**
7:25;53:7
**ALBANESE (1)**
8:25
**ALDRIDGE (2)**
7:18;53:6
**Alison (1)**
18:4
**allegations (1)**
16:22
**allege (1)**
57:22
**alleged (1)**
57:20
**ALLEN (1)**

**11:10**
**allied (2)**
48:13,18
**allocate (1)**
28:6
**allocated (3)**
28:20;30:6;55:19
**allocating (1)**
28:24
**allocation (1)**
30:4
**allotted (1)**
28:25
**allow (1)**
50:7
**Ally (7)**
4:13,13,21,21;
17:4,6;22:23
**almost (1)**
37:5
**along (1)**
51:6
**ALSTON (1)**
9:10
**alter (2)**
25:4,25
**although (2)**
29:4;51:25
**ALVES (1)**
10:7
**always (1)**
45:20
**ambiguity (3)**
48:11,11;49:3
**amenable (2)**
35:23;38:25
**amendment (1)**
36:16
**Americas (3)**
4:4;9:4;11:12
**amount (5)**
24:2;25:22;40:13,
16;56:5
**amounts (1)**
20:14
**analysis (1)**
48:8
**ANDREW (2)**
5:7;8:8
**Angeles (2)**
12:6,15
**answered (1)**
21:17
**anticipate (7)**
14:22;20:21;26:9;
30:16;37:6;45:25;
50:23
**anymore (1)**
52:1
**apologies (1)**
20:8
**apologize (1)**
14:5

**appears (3)**
15:20;47:16;57:22
**appreciate (6)**
14:11;19:15;
30:24;38:10;55:24,
25
**appreciates (1)**
31:18
**approach (2)**
20:10;56:12
**appropriate (1)**
16:10
**approval (4)**
20:3,15,20;21:10
**approved (1)**
21:11
**approximately (2)**
20:20;46:2
**argue (1)**
26:5
**arguing (1)**
17:17
**argument (7)**
24:21;32:25;
50:11,23,25;54:21,
22
**arguments (1)**
58:11
**arise (2)**
16:21;55:16
**ARLENE (1)**
10:7
**around (1)**
17:5
**arrive (1)**
45:14
**article (1)**
49:3
**articulated (1)**
17:1
**aside (1)**
28:1
**asserted (2)**
22:10;40:11
**assign (2)**
17:9;53:12
**assume (7)**
17:8;41:1;47:1;
50:9,20;51:2;53:11
**assuming (3)**
26:18;57:3,5
**assumption (1)**
41:11
**attention (1)**
56:11
**Attorneys (25)**
4:3,13,21;5:3,11,
20;6:3;7:3,11,19;8:3,
12,20;9:3,11,20;
10:3,13;11:3,11,19;
12:3,12,21;13:3
**authority (1)**
16:7

**authorized (1)**
18:11
**available (5)**
28:4;29:21;38:8,
20;51:3
**Avenue (13)**
4:4,14;6:4;7:12,
20;9:4,12;11:4,12,
20;12:4,22;13:5

## B

**back (8)**
14:11;29:10;
32:18;37:23;47:8;
54:14,24;57:9
**Baer (1)**
21:11
**BAGBY (1)**
8:16
**Balboa (1)**
21:21,22
**balked (1)**
52:12
**Bank (16)**
4:13,21;6:3;7:3,3;
8:20;9:11;10:3;13:3;
17:20;21:17;35:22;
37:16;47:12,13;50:7
**bankruptcy (6)**
17:16,19;20:2,14,
20;56:19
**Bank's (1)**
48:2
**based (3)**
28:20;31:5;38:5
**basically (1)**
20:5;23:22
**Battery (1)**
10:4
**Bedford (1)**
53:24
**begin (2)**
14:5,21
**beginning (1)**
15:6
**behalf (8)**
22:23;29:14;
35:21;37:16,21;
42:23;47:12;52:16
**behind (1)**
21:15
**belongs (1)**
19:22
**bench (1)**
46:22
**BENSON (1)**
5:2
**Berkshire (1)**
12:3
**Bernardino (1)**
11:19
**best (2)**

30:1;37:22
**bet (1)**
    37:25
**beyond (1)**
    42:4
**Big (1)**
    20:7
**BIRD (1)**
    9:10
**bit (3)**
    32:3,4;43:13
**BNY-Mellon (1)**
    12:21
**BOCKIUS (1)**
    12:20
**borrower (14)**
    15:17,21;16:19;
    20:2;21:13;55:4,9,
    16,18;56:1,13,25;
    57:12,15
**borrowers (3)**
    57:6,15;58:9
**borrower's (1)**
    55:15
**Boston (1)**
    8:6
**both (2)**
    28:21;41:12
**Boylston (1)**
    8:5
**BRADLEY (1)**
    4:9
**breaches (1)**
    17:5
**brief (6)**
    28:1;42:8;50:18,
    19;55:24,25
**briefs (3)**
    55:4,6;58:17
**Bright (1)**
    11:20
**bring (1)**
    20:22
**Broadway (1)**
    5:4
**Bryant (2)**
    8:21;9:21
**buckets (1)**
    15:25
**bunch (1)**
    38:3
**burden (1)**
    27:7

**C**

**CA (3)**
    11:21;12:6,15
**CADWALADER (1)**
    8:11
**calendar (2)**
    51:18;59:14
**call (4)**

30:5,5;46:17,19
**calling (1)**
    46:18
**came (1)**
    29:17
**can (45)**
    19:7;20:4;24:17;
    28:7;30:2,3,9,14,24;
    31:3,12,13;32:1,4;
    33:16,24;34:2,10,17;
    35:5,6,14;36:17;
    37:3,22;39:3;43:24;
    44:15;45:18;46:25;
    47:22;49:14,18,21;
    52:19;53:11;54:14,
    15,17,24;55:1;56:3;
    57:8;59:14,19
**Capital (1)**
    14:3
**CARNEY (1)**
    9:24
**Carpenters (2)**
    11:3;21:8
**carve-out (2)**
    16:6,10
**CASE (10)**
    9:2;21:20,21;22:5,
    9;24:14,14;26:16;
    37:20;59:12
**cases (3)**
    48:8;49:9;57:24
**categories (1)**
    43:24
**causative (2)**
    57:16,22
**cause (1)**
    25:25
**causes (1)**
    57:18
**Center (1)**
    8:13
**Certain (2)**
    10:13;31:9
**certainly (5)**
    30:2;31:12;33:22;
    35:23;49:16
**cetera (1)**
    32:23
**challenge (1)**
    58:7
**chambers (3)**
    22:17;44:11;54:25
**chances (1)**
    14:20
**change (2)**
    24:18;25:25
**Charlotte (1)**
    7:5
**chart (3)**
    20:4,7,13
**Chase (1)**
    5:13
**check (1)**

54:15
**checking (2)**
    22:24;23:1
**Chicago (1)**
    10:17
**Chris (1)**
    53:5
**CHRISTOPHER (1)**
    7:24
**Chuck (1)**
    42:22
**cited (1)**
    57:25
**cities (1)**
    38:3
**claim (16)**
    15:20,20;16:7;
    17:1,11;21:18,22;
    40:17;43:17;44:1,
    20;55:9,12;56:19,21;
    58:13
**claimants (1)**
    18:2
**claims (24)**
    15:12;16:2,5,19,
    20,21,23,23;20:2;
    21:14,15,20;22:10,
    11;40:10,14;55:4,16;
    56:7,13;57:12,15;
    58:13,15
**clarification (2)**
    48:6;49:13
**clarified (1)**
    22:4
**clarifies (1)**
    43:8
**class (7)**
    15:14,15;20:2,13;
    21:13;55:18,20
**classes (1)**
    15:16
**clear (4)**
    14:8;15:18,22;
    42:2
**clients (4)**
    30:25;34:19;
    47:16;48:1
**close (9)**
    15:25;16:17;
    32:18;33:2,2;50:14;
    51:7;52:2;53:19
**closed (4)**
    17:15,16,20;50:11
**closer (1)**
    14:24
**closing (3)**
    31:24;50:22,25
**co- (1)**
    48:13
**codefendant (1)**
    21:21
**co-defendant (1)**
    48:19

**codefendants (3)**
    21:15;22:9,10
**COHEN (15)**
    5:25;29:8,8,11,13,
    13,19;30:9,18,24;
    38:12;45:24;47:4,5;
    59:18
**collateral (2)**
    39:17;50:4
**Combined (3)**
    10:13;14:13;23:20
**coming (3)**
    22:14;32:18;59:16
**comments (1)**
    29:20
**commitment (1)**
    44:22
**Committee (7)**
    4:3;6:14;8:3;39:2;
    43:2;52:17;56:1
**Company (2)**
    12:12;15:21
**compelled (1)**
    43:16
**complaint (1)**
    34:21
**complete (3)**
    14:9;16:12;43:17
**completed (1)**
    19:11
**components (1)**
    36:6
**comprehensive (2)**
    31:11;58:23
**concerned (1)**
    25:15
**concluded (2)**
    19:1;59:21
**conclusions (4)**
    32:19;41:11;
    50:15,17
**conducted (2)**
    28:21;29:2
**confer (1)**
    19:3
**conference (5)**
    14:13;15:4;18:25;
    29:20;52:2
**confirm (3)**
    40:15;59:11,15
**confirmation (34)**
    14:14;17:21;
    19:22,25;21:5,9;
    22:17;23:20,23;
    24:8;26:16,21,23;
    27:1,5;29:1,4;34:5;
    35:2,25;38:23;40:17,
    18;41:12,24,25;42:3,
    6,8;48:7;49:13;
    56:12;57:9;58:22
**confirmed (5)**
    26:6;55:18;57:2,4,
    5

**confusing (1)**
    32:12
**confusion (3)**
    14:6,11;47:16
**connection (5)**
    21:4;23:23;24:8;
    46:21;58:21
**consent (1)**
    16:13
**considerably (2)**
    28:18;29:3
**considered (1)**
    29:19
**considering (1)**
    27:20
**consistent (2)**
    40:15;57:12
**construct (1)**
    56:16
**contained (1)**
    16:6
**contemplated (3)**
    56:25;57:12;58:8
**contest (1)**
    34:9
**contested (3)**
    51:16,23;54:20
**context (1)**
    26:17
**continue (1)**
    30:13
**contracts (1)**
    17:9
**contradicted (1)**
    37:22
**contribution (2)**
    21:16;22:10
**controversial (1)**
    43:22
**co-parties (2)**
    48:21,22
**copies (2)**
    44:17,25
**coproponents' (1)**
    26:16
**copy (3)**
    20:6;44:21,24
**Corp (1)**
    7:19
**Corporation (1)**
    53:7
**correctly (1)**
    21:17
**coughed (1)**
    48:16
**Counsel (17)**
    6:14;17:18;22:15;
    23:21,24;24:4,15,16;
    39:3;49:7,7;52:23;
    55:9,15;56:1,4,18
**country (1)**
    57:19
**County (1)**

11:19
**couple (3)**
  23:15,16;42:24
**course (2)**
  24:18;38:16
**COURT (166)**
  14:2,7,20;15:14;
  18:7,9,15,20;19:2,5,
  8,12,16;20:3,3,6,9,
  11,14,16,18,20;21:3,
  6,11,24;22:8,14,19,
  21;23:2,5,11,15;
  24:24;25:1,8,11,13,
  15,20,24;26:2;27:16,
  24;29:10,12,17,18;
  30:6,16,20;31:21,24;
  32:7,15,20;33:6,10,
  13,15,22;34:15,18;
  35:9,11,13,18;36:8,
  14,20;37:1,9,11,13,
  17,19,23;38:8,14,21;
  39:11,14,23;40:2,5,
  8,9,19,22;41:1,4,7,
  10,13,16,21;42:11,
  18,21,25;43:12;44:4,
  10,14,16,23;45:6,8,
  13,20;46:9,13,20;
  47:3,5,10,19,21,24;
  48:1,15,22,25;49:4,
  11,14,17,19,23;50:2,
  5,13;51:14,20,22;
  52:6,8,12,15,20,23;
  53:9,13,17,22;54:4,
  6,8,11,13,17;55:2;
  56:2;57:2,10,14;
  58:5,7,9,20,24;59:2,
  7,13,18
**courtroom (3)**
  44:18;45:1;46:14
**cover (3)**
  29:3;30:13;31:5
**covered (1)**
  42:4
**create (2)**
  38:2;47:16
**creates (3)**
  47:25;48:10,11
**credit (3)**
  48:2,13,18
**creditor (1)**
  17:14
**creditors (5)**
  15:17;16:25;
  17:24;18:5;19:18
**Creditors' (2)**
  4:3;49:7
**creditor's (1)**
  52:16
**critical (1)**
  27:4
**cross (4)**
  25:21;38:6,15;
  39:20

**cross- (1)**
  24:14
**cross-examination (9)**
  24:2,6,13;25:10,
  16,16;31:8;36:25;
  38:9
**cross-examinations (1)**
  29:24
**cross-examine (6)**
  23:24;24:12,17;
  39:8;40:2;46:19
**cross-examining (1)**
  44:19
**cure (1)**
  17:11
**currently (1)**
  36:3
**cutting (1)**
  28:13

### D

**daily (1)**
  51:3
**damages (1)**
  58:12
**DANIEL (1)**
  4:25
**date (2)**
  16:11;57:10
**dates (1)**
  29:21
**DAVID (4)**
  5:25;6:9;29:8,13
**DAY (6)**
  12:11;18:10;19:7;
  27:2;38:19;47:16
**days (9)**
  26:8;27:2;28:1,3,
  3,24;30:8;32:2,13
**DC (2)**
  4:23;5:23
**deadline (2)**
  31:15,17
**deadlines (1)**
  31:19
**deal (7)**
  16:11;34:5;35:15;
  55:22;56:13,19;
  57:11
**dealing (1)**
  55:16
**deals (1)**
  34:4
**dealt (1)**
  40:14
**Debtor (2)**
  40:11;53:11
**debtors (12)**
  14:18;21:16;29:3;
  30:11,14;33:8;
  40:25;42:23;48:21,
  22;55:6,14

**Debtors' (5)**
  39:3;40:16;49:7;
  55:11,25
**December (1)**
  29:21
**deceptive (1)**
  57:17
**decide (4)**
  25:4;48:1,4;53:9
**deciding (1)**
  18:23
**decision-maker (1)**
  28:14
**Declarants (2)**
  38:8,17
**declarations (3)**
  31:7;38:4;58:18
**defend (1)**
  56:21
**defendant (1)**
  48:14
**defendant's (1)**
  48:12
**defer (1)**
  22:12
**deferred (1)**
  40:17
**defined (1)**
  41:22
**Delaware (2)**
  7:3;35:22
**deliver (2)**
  43:22;45:12
**delivering (3)**
  43:19;59:8,11
**denial (1)**
  34:12
**DENMAN (1)**
  4:25
**deposit (4)**
  17:15,16;36:16,21
**deposition (1)**
  32:23
**derivative (1)**
  16:23
**describe (1)**
  16:25
**described (1)**
  25:3
**describing (1)**
  52:3
**design (1)**
  55:15
**designations (1)**
  32:23
**Despite (1)**
  45:11
**Deutsche (4)**
  13:3;47:12,13;
  48:1
**develop (1)**
  57:1
**developed (3)**

41:17,17,23
**DEVORE (1)**
  8:8
**difference (1)**
  25:5
**different (5)**
  23:18;25:3;30:4;
  38:3;57:4
**difficulty (1)**
  28:8
**digest (1)**
  30:25
**diminishing (2)**
  27:11;59:13
**direct (9)**
  23:25;24:9;25:21;
  29:2;39:7,7,24;
  43:10;46:24
**directed (1)**
  55:4
**direction (1)**
  25:25
**directly (1)**
  49:8
**disagree (1)**
  27:21
**disagreeing (3)**
  58:3,5,6
**discrete (1)**
  31:10
**discuss (4)**
  15:5;23:9;26:7;
  50:20
**discussed (2)**
  25:2,24
**discussion (1)**
  28:2
**discussions (1)**
  33:5
**dismissed (2)**
  22:5,6
**dispute (2)**
  19:19;36:20
**disqualification (2)**
  18:12,22
**docket (1)**
  54:15
**document (3)**
  18:21;45:4,5
**documentation (2)**
  22:7;52:21
**documents (3)**
  36:12,15;45:9
**DOJ (2)**
  16:9,16
**DOJ/AG (1)**
  16:4
**dollars (3)**
  17:10,18;58:13
**done (19)**
  19:7;23:12;24:5;
  27:5;31:25;32:2,4,
  15;33:24;34:20,22;

36:13;46:25;53:3,3;
  54:23;56:2,5;57:8
**DONOVAN (1)**
  4:25
**doorstep (1)**
  45:14
**doubt (2)**
  27:3;42:6
**Doug (1)**
  52:16
**DOUGLAS (1)**
  4:8
**down (5)**
  33:13,15;35:14;
  38:22;45:19
**drafted (1)**
  48:10
**drag (2)**
  28:11;34:8
**DRYE (1)**
  7:10
**DUBLIN (1)**
  8:24
**due (2)**
  29:25;51:2
**during (2)**
  15:4;24:14

### E

**ECF (2)**
  24:1;44:5
**ECKSTEIN (27)**
  4:7;17:13;18:14,
  15,16,16,25;19:3,6,9,
  15;22:16,20;30:21,
  22,22;31:22;46:10;
  47:9;56:8;9;57:3;
  58:4,6,17,21,25
**economy (1)**
  31:3
**effect (2)**
  16:14;24:1
**effective (3)**
  57:10
**effectively (3)**
  16:12,14;27:3
**efficiency (1)**
  38:2
**efficient (8)**
  32:25;34:16;43:4;
  44:15;46:22;55:15,
  22;58:1
**efficiently (4)**
  28:22;29:2,23;
  34:21
**efforts (1)**
  35:6
**EGGUM (1)**
  10:19
**EHRLICH (1)**
  8:25
**either (3)**

12-12020-mg    Doc 5802    Filed 11/15/13    Entered 11/18/13 11:41:54    Main Document
Pg 64 of 71

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020(MG)

November 14, 2013

19:21;20:4;51:20
electronic (5)
    43:23;44:3,6,9,21
elements (1)
    33:8
eleven (2)
    27:10;30:3
ELLIS (4)
    4:12,20;22:23;
    46:6
else (14)
    25:20;26:21;
    30:20;37:13;39:12,
    13,15;45:23;46:1,13;
    47:6;51:14;52:4;
    59:4
enabled (1)
    14:10
encourage (3)
    32:5,7;38:23
encouraging (1)
    34:24
end (6)
    19:7;34:18;42:1;
    43:9;50:16;56:20
endeavor (1)
    19:6
endeavored (1)
    20:12
enough (3)
    28:23,23;30:7
entire (1)
    38:20
entirely (5)
    15:18;16:23;22:6;
    44:12;55:12
entities (2)
    17:6;47:14
entitled (2)
    48:2;55:20
ERIC (4)
    6:8;7:15;39:16;
    50:3
escrow (2)
    17:10;19:20
escrowed (1)
    16:16
especially (1)
    24:11
ESQ (36)
    4:7,8,9,25;5:7,16,
    25;6:8,9,10,19;7:7,
    15,24,25;8:8,16,24,
    25;9:7,15,16,24,25;
    10:7,8,9,19;11:7,15,
    23;12:8,17,25;13:8,9
estate (3)
    16:20,24;19:20
estates (2)
    16:4,13
estimate (8)
    24:1,12;25:8,22;
    40:2,5;45:25;46:2

estimates (2)
    24:6;30:1
estimation (1)
    40:14
et (1)
    32:23
ETKIN (1)
    11:7
even (4)
    26:7;31:11;35:15;
    57:10
event (1)
    14:21
everybody (10)
    14:6;24:3,10;
    25:13,20;39:6,15;
    45:3;46:23;51:10
everybody's (2)
    31:18;49:23
everyone (1)
    24:8
evidence (8)
    15:9;26:14,25;
    33:3;42:12;44:8;
    50:14;51:8
evidentiary (5)
    37:5;42:2;52:1;
    54:3,9
exactly (2)
    56:1;58:8
examination (4)
    24:15;39:9,24;
    46:24
examine (1)
    39:7
excess (1)
    17:10
exchanged (2)
    24:6;36:11
exclusively (1)
    16:20
exercise (2)
    16:12;26:6
exhibit (5)
    43:18,25;44:25;
    46:16;47:9
exhibits (6)
    37:6;43:15,21;
    44:8,18;45:12
expect (9)
    24:2,19;29:18;
    31:12;34:22;40:2;
    45:18;46:7;57:15
expectation (2)
    38:16;57:1
expecting (2)
    31:7;33:2
expects (1)
    27:15
expedite (1)
    34:3
expeditiously (1)
    51:2

experience (1)
    31:2
explaining (1)
    33:20
explanations (1)
    58:19
expression (1)
    28:22
expressly (1)
    18:22
extend (1)
    28:4
extensive (1)
    43:18
extent (8)
    16:22;35:5,25;
    39:20,23;52:18;
    54:22,25

F

fact (8)
    15:25;22:6;28:16;
    31:23;32:4,6;41:9;
    50:15
facts (6)
    31:20;32:19;36:2,
    4;57:20,21
factual (1)
    42:3
fair (2)
    55:22;58:10
fairly (1)
    43:17
fall (1)
    15:25
Fargo (9)
    6:3;9:11;19:24;
    35:22;39:17;40:11;
    50:3,5;51:8
fashion (1)
    39:22
feeling (1)
    42:1
fees (1)
    17:18
FELD (1)
    8:19
felt (1)
    43:16
few (1)
    36:24
FHFA (5)
    5:3;22:1,5,15;
    26:22
Fifteenth (1)
    4:22
Fiftieth (1)
    12:14
fight (2)
    28:10;34:7
fighting (1)
    35:7

fights (1)
    34:6
Figit (1)
    37:4
figure (3)
    29:23;31:3;50:12
file (7)
    17:25;18:11,24;
    21:22;23:25;25:21;
    37:3
filed (17)
    16:14;18:22;
    19:13;20:21;21:15;
    23:7,25;24:9;29:2;
    35:1;39:18,24;47:15,
    19,25;55:10;58:18
filing (2)
    14:22;17:15
filings (4)
    44:4;50:24;51:2,5
final (3)
    14:13;21:9;22:7
finalize (1)
    52:21
finalized (1)
    18:19
Financial (4)
    4:13,21;8:13;
    12:12
finding (2)
    55:21;56:20
findings (6)
    31:20,23;32:19,
    25;41:9;50:15
fine (12)
    14:12;19:5,13;
    25:17;40:8;43:12;
    44:16;45:6;46:8;
    47:4;50:21;57:14
finish (5)
    28:3;29:22;30:9;
    33:15;42:11
finished (3)
    28:18,24;30:8
FIRM (2)
    11:18;56:23
first (8)
    14:5;21:1;24:15;
    25:16;27:13;37:18;
    39:18;41:17
five (1)
    15:25
Floor (3)
    6:5;12:5,14
Flower (1)
    12:13
focus (1)
    35:6
focused (2)
    42:9;43:2
Foerster (3)
    14:18;40:24;42:23
folks (1)

51:5
follow (1)
    18:10
FORAN (1)
    10:12
foreclosures (1)
    16:21
forgive (1)
    23:11
form (9)
    43:7,23;44:3,6,9;
    45:12;50:17,18,19
forth (1)
    17:11
fortunately (1)
    14:9
forward (6)
    14:12;18:13,23;
    19:14;52:18;54:8
fought (1)
    34:20
four (1)
    15:3
frames (1)
    26:16
FRANKEL (1)
    4:2
frankly (1)
    26:16;49:9
Freddie (2)
    9:20;18:3
Frejka (1)
    19:3
FRIEDMAN (1)
    5:2
front (1)
    15:19
fully (1)
    34:22
Funding (2)
    7:19;53:7
funds (1)
    16:15
further (2)
    17:20;56:6

G

gain (1)
    14:19
gap (2)
    50:24;51:1
Gary (2)
    14:17;40:24
gave (1)
    22:3
generated (1)
    42:13
GERARD (2)
    5:16;32:10
gets (1)
    44:19
given (4)

15:13;25:7;27:7;
30:4
**gives (2)**
48:3;58:10
**GLENN (5)**
5:7;12:25;22:14,
24;37:15
**GLENNON (1)**
10:12
**GM (1)**
10:13
**goal (1)**
56:24
**goals (1)**
56:14
**goes (2)**
19:14;57:25
**Good (10)**
14:17;22:22;26:2;
29:8;35:20;38:14;
40:12;42:22;47:11;
53:5
**GOODMAN (1)**
9:25
**government (1)**
16:6
**GRAHAM (11)**
7:24;53:5,6,11,15,
18,23;54:5,7,10,12
**Grand (1)**
12:4
**GRAY (1)**
8:2
**ground (1)**
29:3
**Group (5)**
5:11,20;9:3;27:9;
29:14
**Guaranty (1)**
12:12
**guess (4)**
22:8;55:2,8;56:4
**GUMP (1)**
8:19
**guys (1)**
59:17

## H

**HADLEY (3)**
5:10,19;29:13
**half (3)**
16:1;27:2;29:17
**handful (1)**
27:12
**handling (1)**
19:4
**haphazardly (1)**
39:1
**happen (9)**
32:20;33:1;34:23;
36:22;48:8;50:23;
51:11,15;58:2

**happened (2)**
32:21,24
**happening (1)**
59:9
**happens (2)**
48:20;57:24
**happy (5)**
23:8,8,13;34:13;
47:17
**hard (3)**
31:18;34:20;50:5
**Hardware (1)**
19:18
**HARRISON (1)**
9:7
**Hathaway (1)**
12:3
**HAUER (1)**
8:19
**hear (7)**
23:17;25:3;27:24;
29:6;33:23;54:21;
56:12
**heard (11)**
17:3;29:19;30:21;
31:22;32:9;35:18;
37:13;39:12;45:24;
52:24;59:4
**hearing (21)**
14:6;15;15:5;
19:21;21:5,9;23:20;
24:21,21;28:2,5;
36:5,7;37:3;42:2;
45:4;46:22;52:1;
53:1;54:3,9
**hearing/Phase (1)**
29:1
**hearings (1)**
23:9
**help (1)**
56:4
**helpful (4)**
21:6;50:19;55:6;
56:2
**helps (1)**
56:6
**here's (2)**
22:8;38:21
**hesitancy (1)**
28:15
**hesitate (1)**
45:20
**Hills (1)**
53:24
**hit (1)**
22:18
**hits (1)**
22:19
**Hoc (5)**
5:11,20;9:3;27:9;
29:14
**holding (1)**
15:21

**home (2)**
20:3,16
**Honor (90)**
14:17;15:2,7;16:9;
17:21,24;18:16;
19:15,17;20:1,4,10,
12,16;21:1,12;22:1,
13,16,22;23:6,14;
24:23;25:6,23;26:1,
3,8,24;27:6,15,21;
29:8;30:22;31:15,18,
20;33:5;34:12;35:8,
20;37:12,15;38:10,
16;39:16;40:20,23;
41:3,5,8;42:17,22,
24;43:15,19,23;44:1,
7,12,22;45:3,10,11,
17;46:5,10,15;47:2,
11;48:5;49:13;50:1,
3,9;51:19,21;52:14,
17;53:5,16;54:10,14;
56:9,10,11,14;58:22;
59:6,10
**Honor's (3)**
20:17;43:21;47:18
**HOOPER (1)**
10:8
**hope (1)**
29:1
**hopeful (2)**
36:3;49:18
**hopefully (6)**
32:2;34:10;52:25;
58:19,22;59:13
**hoping (2)**
36:12,17
**hour (1)**
29:17
**hours (9)**
26:10,19;27:4,7,9,
12;28:9,9;30:3
**housekeeping (4)**
39:18;42:24;
45:16;46:15
**HSBC (1)**
11:11

## I

**idea (2)**
51:20,22
**identified (2)**
24:16;44:5
**Identify (2)**
52:15;57:16
**II (13)**
14:14;23:21;27:1;
29:1,5;34:3,4,25;
39:19;41:12,16,22;
42:4
**IL (1)**
10:17
**Impac (5)**

7:19;17:3,6,9;53:7
**Impac's (1)**
51:25
**important (1)**
30:11
**impression (2)**
47:25;48:4
**Inc (4)**
4:13,21;8:12;12:3
**included (2)**
43:25;44:7
**includes (1)**
35:2
**including (1)**
24:11
**incomplete (1)**
57:21
**incorporate (1)**
22:2
**increasingly (1)**
57:18
**indemnification (1)**
40:10
**indemnity (2)**
21:16;22:11
**indicate (1)**
39:25
**indicated (4)**
20:19;21:23;
46:11,16
**individuals (1)**
56:18
**inefficiency (1)**
56:17
**ineligible (1)**
17:25
**infinite (2)**
55:19;56:5
**information (4)**
17:13;20:13;24:6;
25:7
**INGRID (1)**
8:16
**Insurance (3)**
10:14;12:12;21:21
**Insurers (1)**
10:13
**intend (5)**
21:4;24:17;25:21;
30:5,5
**intended (1)**
28:11
**intending (3)**
23:24;24:12;46:14
**intends (1)**
38:15
**intention (1)**
53:15
**interested (1)**
49:10
**interesting (1)**
26:5
**interests (1)**

26:5
**into (3)**
15:25;26:17;44:8
**investment (1)**
48:3
**Investors (1)**
8:3
**invitation (2)**
28:4,11
**involved (2)**
24:7;55:9
**issue (11)**
32:12;33:11,18,19,
19;39:2,4;45:2;
47:22;53:17;55:21
**issued (1)**
55:8
**issues (32)**
17:2;22:25;23:16;
27:1;28:15,20;29:4,
5;30:11;32:22;
34:13,20;35:5;37:5;
40:16;41:18,22;42:3,
3,9,12;45:16;47:7;
53:19,20;54:1,1,
55:3,17,23;56:6;
58:25

## J

**Jericho (2)**
6:15,17
**Jersey (2)**
11:3;21:8
**JOHN (4)**
9:16;10:19;11:15,
23
**JOHNSON (1)**
9:15
**joint (1)**
41:21
**JONES (1)**
12:11
**JSN (4)**
29:14;37:4;47:4;
50:16
**JSNs (19)**
14:14;15:14;
24:15;25:6;27:9,18,
25;29:4,7;30:6;31:6;
32:3;33:24;34:2;
39:2;40:11;43:2;
46:16;51:8
**Judge (1)**
21:11
**judgment (7)**
16:3;22:2;38:5;
48:2,7,12,18
**judicial (1)**
31:3
**juggling (1)**
32:4
**Junior (3)**

5:11,20;9:3

**jury (4)**
 14:10,10,19,21

## K

**KASOWITZ (2)**
 5:2;22:24
**KAUFMAN (2)**
 7:25;53:7
**keep (6)**
 37:1;45:8;49:14,
 20;50:5;59:19
**keeping (1)**
 38:1
**KELLEY (1)**
 7:10
**KENNETH (3)**
 4:7;18:16;30:22
**KERR (23)**
 20:10,11;29:24;
 41:6;42:19,22,22;
 43:1,13;44:12,15,
 22,24;45:7,10,14;
 46:15;47:2;59:6,10,
 15,20
**Kessler (2)**
 21:2;26:22
**key (2)**
 36:6,15
**KIBLER (1)**
 11:15
**KIRKLAND (4)**
 4:12,20;22:23;
 46:6
**KISSEL (1)**
 10:2
**knows (5)**
 25:13;31:15;40:9;
 56:10,14
**KOTWICK (1)**
 10:9
**KRAMER (4)**
 4:2;18:16;30:22;
 52:17

## L

**language (3)**
 16:10,11;22:2
**large (1)**
 50:24
**LaSalle (1)**
 10:15
**last (13)**
 15:4;17:4;18:10;
 19:24;21:23,25;
 22:3;27:2;28:2;
 29:20;32:12;48:15;
 54:6
**late (1)**
 53:23
**later (2)**

43:14;47:17
**LATHAM (2)**
 13:2;47:12
**LAW (6)**
 11:18;32:19;
 41:11;50:15,17;
 57:17
**lawyer (1)**
 30:17
**lay (1)**
 58:7
**lead (3)**
 30:17,18;56:23
**least (6)**
 22:9;38:5,11,19;
 55:10,16
**leave (2)**
 21:15;26:24
**leaves (2)**
 18:5;27:6
**LEBIODA (9)**
 7:7;35:20,21;
 36:11,15,23;37:8,10,
 12
**Lee (60)**
 14:5,16,17,17;
 15:2,16;18:8,14;
 19:17;20:8,12,25;
 21:4,8,12,25;22:12;
 23:5,6,13;24:23,25;
 25:5,10,12,14,19,23;
 26:1,3;27:17;29:16,
 24;39:13,14;40:19,
 20,23,24;41:5,8,11,
 14,20;42:1,10,17,19;
 45:24;46:10;49:4;
 51:15,18,21,24;52:7,
 9,11;54:14,24
**left (3)**
 19:17;50:18;51:7
**legal (1)**
 42:3
**length (1)**
 28:4
**lengthy (3)**
 14:25;26:9;34:25
**Lenore (2)**
 52:5,6
**less (2)**
 25:15;27:12
**LEVIN (4)**
 4:2;18:17;30:23;
 52:17
**LEWIS (2)**
 12:20;37:15
**Lexington (2)**
 4:14;6:4
**likely (2)**
 32:20;33:1
**limine (1)**
 24:20,22
**limited (2)**
 35:24,25

line (1)
 28:13
**linking (1)**
 58:14
**liquidating (1)**
 16:12
**list (6)**
 43:5,8,18,25;44:7;
 46:16
**literally (1)**
 29:17
**litigation (6)**
 48:3,19,21,23;
 49:2;57:25
**little (6)**
 23:19;25:3;32:3,4,
 12;43:13
**lived (1)**
 51:10
**Livingston (1)**
 11:4
**LLP (21)**
 4:2,12,20;5:2,10,
 19;6:2;7:2,10,18;8:2,
 11,19;9:2,10;10:2;
 11:2,10;12:2,20;13:2
**loan (1)**
 55:17
**loans (1)**
 17:6
**logistical (1)**
 47:7
**LONG (6)**
 7:18;22:19;30:16;
 51:1;53:6;57:25
**look (5)**
 34:18;44:21;47:8;
 57:14;59:2
**looked (1)**
 51:18
**looking (2)**
 42:13;56:4
**Los (2)**
 12:6,15
**loss (1)**
 14:19
**lot (15)**
 23:6;24:7;28:16;
 31:1,5,8,13;32:1;
 33:8;34:20;35:15;
 38:22;49:23;51:4;
 56:11
**LOWENSTEIN (1)**
 11:2

## M

**MA (1)**
 8:6
**Mac (2)**
 9:20;18:3
**making (3)**
 27:21;34:16;56:15

Manhattan (1)
 5:13
**MANNAL (8)**
 4:8;52:10,12,14,
 16,16,21;53:23
**many (10)**
 15:7;28:5,9,9;
 31:12;35:5;55:16;
 56:18;57:19,24
**MARK (2)**
 6:10;10:9
**marked (1)**
 44:8
**matter (4)**
 30:24;31:3,15;
 46:15
**matters (2)**
 42:24;51:16
**May (18)**
 20:10;22:6;31:20,
 21;33:22;34:3,6;
 38:2;39:5;40:10;
 46:21;48:25;49:1;
 53:20;54:18,20;
 56:9;57:22
**maybe (7)**
 17:13;34:25;
 45:21;52:11;56:6;
 57:9;58:7
**MBIA (1)**
 8:12
**MCCLOY (3)**
 5:10,19;29:14
**MCKENNA (2)**
 7:18;53:6
**MCKOOL (1)**
 9:19
**mean (8)**
 25:15;32:20,23;
 33:23;37:6;41:17;
 43:18;49:12;51:16;
 54:17;55:8;57:14;
 58:2
**meaningful (2)**
 28:14;33:4
**mechanical (2)**
 19:10,12
**mechanics (1)**
 23:1
**meet (2)**
 31:17,19
**mentioned (1)**
 26:22
**mergers (1)**
 50:8
**merit (1)**
 31:1
**MICHAEL (3)**
 9:15,24;11:7
**might (2)**
 17:13;56:21
**MILBANK (5)**
 5:10,19;29:9,13;

32:11
**million (1)**
 17:10
**millions (1)**
 58:13
**mind (1)**
 24:18
**mindful (1)**
 28:16
**minimize (1)**
 56:17
**minute (1)**
 18:7
**minutes (4)**
 30:19;36:24,25;
 46:8
**miscellaneous (1)**
 17:1
**misclassified (1)**
 15:20
**missed (1)**
 48:15
**mistake (1)**
 32:16
**modifications (1)**
 55:17
**Monday (4)**
 25:7,18;29:25;
 59:9
**money (2)**
 55:19;56:15
**monitoring (1)**
 17:18
**month (1)**
 17:15
**more (14)**
 17:13;23:8;26:4;
 27:22;29:3;31:10;
 32:22;33:19;34:14;
 41:5;44:2;50:7;
 56:20;58:15
**MORGAN (2)**
 12:20;37:15
**morning (4)**
 14:8,9,23;59:14
**Morrison (3)**
 14:18;40:24;42:23
**most (5)**
 31:6,7;33:12;
 46:22;55:22
**motion (6)**
 18:12,22,24;19:13,
 13;22:18
**motions (3)**
 20:21;24:20,22
**mountain (2)**
 26:11;42:13
**move (1)**
 54:15
**much (10)**
 23:2;26:10;39:11;
 45:25;46:2;49:22;
 50:2;54:11;58:15;

59:5
**MUNGER (1)**
12:2
**myself (1)**
23:19

## N

**NA (4)**
6:3;7:11;8:20;9:11
**NAFTALIS (1)**
4:2
**narrow (1)**
42:8
**NATHAN (2)**
7:7;35:20
**NC (1)**
7:5
**NCUAB (1)**
26:22
**necessary (1)**
38:25
**necessity (1)**
34:8
**need (18)**
18:25;20:18;
23:14;26:9,20;27:3;
30:12;32:5;37:10;
38:8;40:14;42:4,5,7,
12;43:23;44:25;45:4
**needs (3)**
30:24;38:6;53:3
**Negotiate (1)**
37:2
**negotiating (1)**
53:23
**neighbors (1)**
53:25
**neither (1)**
27:20
**New (20)**
4:5,15;5:5,14;6:6,
7:13,22;8:14,22;9:5,
13,22;10:5;11:3,13;
12:23;13:6;21:8;
37:16;43:7
**next (4)**
15:6;21:13;23:9;
28:3
**night (1)**
53:24
**nine (1)**
16:1
**nineteen (2)**
16:19;27:8
**ninety (1)**
30:19
**NJ (1)**
11:5
**nobody (2)**
46:25;49:9
**non-debtor (1)**
36:1

**none (1)**
17:1
**non-junior (1)**
15:12
**noon (6)**
24:1,11,17;25:22;
39:25;59:16
**nor (1)**
27:20
**Nora (3)**
18:4,9,18
**normally (1)**
43:18
**North (2)**
7:4;10:15
**NOSEK (3)**
6:19;55:5,24
**note (1)**
29:4
**noted (2)**
29:24;30:12
**noteholder (1)**
15:12
**Noteholders (2)**
9:3;29:14
**Noteholders/UMB (2)**
5:12,21
**notes (3)**
23:18;29:15;47:8
**notice (1)**
23:25
**notify (1)**
25:18
**November (1)**
31:25
**number (7)**
14:3;17:10;27:11;
28:20,21;30:4;54:22
**numbered (1)**
50:17
**NW (2)**
4:22;5:22
**NY (17)**
4:5,15;5:5,14;6:6,
17;7:13,22;8:14,22;
9:5,13,22;10:5;
11:13;12:23;13:6

## O

**objected (3)**
15:8;16:9;55:1
**objecting (2)**
27:19;35:24
**objection (13)**
16:14;17:11,17,
25;19:23,24;30:12;
31:6;34:12,13;35:10,
13,24
**objections (8)**
26:13,14;27:10,
13;39:19;41:25;
50:10;55:11

**objectors (2)**
27:11;33:23
**obligations (1)**
16:11
**observation (1)**
27:21
**obvious (1)**
27:18
**Obviously (10)**
15:8;19:25;21:8;
23:6;26:3;27:4,22;
28:1;41:24;43:24
**occurred (1)**
18:12
**off (6)**
28:13;52:5,6,7,8,
13
**offered (2)**
34:12;39:8
**office (3)**
18:11;19:3;22:24
**Official (1)**
4:3
**often (1)**
56:20
**OLSON (1)**
12:2
**once (1)**
57:9
**One (31)**
5:13;8:13,21;9:21;
10:4;15:17;16:7;
17:3,6;19:18,24;
21:1;31:1;33:17;
38:3;39:13;40:20;
41:5;43:3,15;46:15,
19;48:13;54:22;
55:4,5,8,12;56:14,
22;57:8
**O'NEILL (1)**
4:9
**ongoing (1)**
56:11
**only (6)**
24:19;25:5;33:16;
38:18;39:6;48:20
**open (1)**
14:7
**opened (1)**
25:17
**opening (7)**
23:13;30:16;
45:25;46:1,7,12,14
**openings (2)**
26:9;31:11
**opinion (3)**
14:22;55:8,10
**opinions (1)**
57:24
**opportunity (3)**
24:10;25:21;58:11
**opposed (1)**
17:4

**opposing (1)**
35:4
**Oracle (1)**
18:2
**oral (1)**
50:11
**order (8)**
16:13;23:17;34:4,
25;38:25;41:21;
48:7;49:13
**orderly (2)**
24:5;39:22
**oriented (1)**
41:15
**others (2)**
25:17;50:10
**otherwise (2)**
45:19;54:2
**ought (3)**
24:3,8;38:19
**out (15)**
16:21;28:12;
29:23;31:4;34:8;
36:17;38:25;43:5;
45:8;49:6,7,8;50:12;
53:25;58:7
**outcome (2)**
41:19;52:3
**over (8)**
17:17;18:10;
19:19;20:23,25;
26:5;41:6;42:19
**OVERY (1)**
11:10
**own (1)**
38:5

## P

**PALANDECH (1)**
10:12
**paper (10)**
23:7;26:11;42:13;
43:11,19,23,24;44:2,
17;45:12
**paragraph (1)**
50:17
**Park (7)**
7:12,20;8:21;9:12,
21;10:4;12:22
**part (10)**
16:5,16;21:9,9;
26:20;27:5;40:18;
43:16;48:15;55:17
**participate (2)**
23:23;55:20
**particular (4)**
57:15,17;58:11,14
**particularly (2)**
31:2;56:17
**parties (5)**
15:8;24;16:4;24:7;
27:19;28:17;31:24;

43:7;48:13,19;49:2;
50:18;52:5
**parties-in-interest (1)**
38:22
**partner (1)**
53:6
**party (2)**
35:4;48:14
**PAUL (1)**
11:23
**PC (3)**
4:17;9:19;10:12
**people (5)**
24:10;28:6;39:5;
51:3;54:22
**per (1)**
35:25
**percent (2)**
15:11;47:2
**perfectly (5)**
23:13;25:17;
38:24;42:17;50:21
**perhaps (3)**
26:7;10;47:22
**period (2)**
20:23,25
**permit (2)**
24:13;39:9
**PETER (1)**
9:25
**ph (1)**
37:4
**Phase (26)**
14:14;22;23:20;
27:1;28:17;29:5;
30:7;19;31:2,10;
32:14,21,24;34:3,4,
19,25;37:4;39:19;
41:12,16,19,22;42:4;
44:8;50:16
**PHILIP (1)**
8:24
**phone (1)**
14:12
**pick (1)**
34:6
**place (2)**
14:7;57:6
**Plains (2)**
14:9,19
**plaintiffs (1)**
49:8
**plan (45)**
15:8,8,11;16:3,5,6,
8,16;17:25;22:2;
24:14;26:6,13,13,16;
27:7,8;28:7;29:4;
30:12;31:16;33:20,
25;34:11,13;35:10,
13,23;40:12;41:25;
44:4;46:7;47:15;
48:6,10;55:18;56:13,
16;57:2,3,3,5,13;

59:1,16
**planning (1)**
26:24
**plans (1)**
23:22
**plate (1)**
49:24
**Plaza (2)**
5:13;10:4
**Please (3)**
14:2;37:3;45:18
**Pleased (1)**
14:18
**PM (1)**
59:21
**PNC (2)**
21:17,18
**point (11)**
19:9;27:12,13;
28:10;30:2;31:14;
38:4;40:9;48:9;
54:18;56:9
**pointed (1)**
29:12
**pointing (1)**
44:11
**points (1)**
39:18
**PONZI (1)**
10:12
**pool (1)**
14:19
**posed (2)**
15:3;22:1
**possibility (1)**
36:24
**possible (2)**
29:23;35:5
**post-effective (1)**
16:11
**post-petition (1)**
26:5
**post-trial (4)**
41:9;50:24;51:1,4
**potential (1)**
38:22
**potentially (3)**
24:7;48:11;57:10
**practical (2)**
30:24;31:15
**practice (3)**
24:22;28:5;37:20
**practices (1)**
57:17
**precise (1)**
22:25
**precluding (1)**
49:19
**prefer (1)**
50:17
**preference (1)**
47:18
**preoccupied (2)**

23:11;45:21
**prepared (1)**
53:1
**present (2)**
33:20;58:11
**preserved (1)**
48:18
**preserves (1)**
40:12
**pre-trial (4)**
14:13;34:3,25;
41:21
**pretty (6)**
14:21;24:5;33:1;
41:17;42:2;51:2
**previous (1)**
37:20
**principal (1)**
35:4
**prior (2)**
36:5,7
**priority (1)**
54:23
**pro (2)**
55:9;57:14
**probably (3)**
31:10,13;46:8
**problems (1)**
57:4
**procedural (1)**
23:16
**procedure (4)**
20:15;22:25;
45:18;55:15
**procedures (2)**
57:11;58:8
**proceed (1)**
24:16
**proceeding (4)**
14:4;21:22;23:21;
24:4
**proceedings (1)**
59:21
**process (9)**
18:2;21:10;26:21;
27:5;56:16,19;58:1,
1,10
**Products (1)**
47:13
**professionally (1)**
34:22
**Program (1)**
10:14
**progress (1)**
14:23
**prolonged (1)**
34:8
**proof (1)**
44:20
**proofs (2)**
43:17;44:1
**property (1)**
19:20,21

**prophylactic (1)**
16:14
**proponents (7)**
26:3,11;27:7,8;
36:3,12;44:5
**proponents' (2)**
46:11;47:15
**proponent's (3)**
24:14,14;35:23
**proposal (5)**
17:9;26:19;27:8;
29:16;30:13
**proposals (1)**
55:14
**propose (1)**
43:20
**proposed (5)**
23:18;32:25;
50:15;51:9,9
**prospective (1)**
26:10
**provide (6)**
20:13;25:7;43:24;
44:3,6,9
**provided (1)**
42:6
**provides (1)**
22:5
**providing (1)**
20:4
**provision (1)**
16:3
**proviso (1)**
44:17
**Prudential (1)**
8:4
**PTL (1)**
43:6
**purposes (1)**
50:12
**put (10)**
14:25;15:9;25:22;
26:17;28:12;33:3;
36:4,8,9;37:2
**putting (1)**
26:14

---

## Q

**Quadrangle (1)**
6:15
**qualms (1)**
28:13
**queue (1)**
22:18
**quickly (4)**
47:23;57:1,9;59:2
**quite (7)**
14:25;15:12;
26:14,15;35:24;
38:5;50:19

---

## R

**RACHEL (1)**
8:25
**raise (5)**
23:15;24:19;
27:14;42:12;47:7
**raised (5)**
17:2;27:18,19;
42:9;55:17
**rate (1)**
15:11
**rather (1)**
38:19
**RAY (3)**
4:17;22:22;46:5
**reach (1)**
34:2
**reached (3)**
49:6,7,8
**read (4)**
23:14;47:19;
50:22;57:20
**reading (1)**
20:5
**reality (6)**
31:4,6,25;32:21;
33:24,25
**realize (3)**
32:3;45:10;52:25
**really (5)**
19:4;35:6,7;49:11;
55:24
**reason (3)**
28:8;32:1;43:4
**reasonable (2)**
51:10;58:10
**reasons (1)**
31:1
**recall (1)**
47:1
**recalls (1)**
16:9
**received (1)**
22:17
**RECKLER (15)**
13:8;47:11,12,20,
22,25;48:17,24;49:1,
6,12,16,18,22,25
**recognize (2)**
31:19;33:7
**recognized (2)**
57:19,23
**record (14)**
28:2;32:10,18;
33:19;34:8;36:4,7,9,
16,24;37:2;50:11;
58:19,23
**record's (1)**
43:16
**recover (1)**
56:21

**reduction (6)**
16:3;22:2;48:2,7,
13,18
**REED (2)**
6:2;39:16
**regard (1)**
50:9
**regurgitation (1)**
42:5
**reject (1)**
15:15
**rejected (2)**
15:8,11
**rejecting (1)**
15:24
**related (1)**
48:3
**relatedly (1)**
21:19
**relates (2)**
17:14;25:6
**relating (1)**
15:9
**relation (3)**
15:21;41:8,12
**release (3)**
17:3,12;36:1
**released (3)**
48:13,19;49:2
**relevance (1)**
48:24
**relevant (1)**
28:15
**remained (1)**
55:12
**remaining (3)**
27:10,10;57:11
**remains (2)**
14:23;31:17
**remarkable (1)**
15:13
**remote (1)**
14:21
**remove (1)**
54:24
**repetitive (1)**
24:13
**represent (1)**
35:4
**reps (1)**
17:5
**require (2)**
20:2,19
**required (2)**
16:13;20:15
**ResCap (3)**
16:20;17:8;53:1
**reserve (2)**
27:2;36:23
**Residential (1)**
14:3
**resolution (1)**
26:13

**resolve (7)**
  15:18;21:20;35:5;
  39:3;53:17,25;56:6
**resolved (16)**
  16:1,2,5,8,15,17;
  18:3,3,4;20:3;21:14;
  22:11;23:1;49:15,
  21;52:14
**resolves (1)**
  17:12
**resolving (1)**
  53:20
**respect (25)**
  15:24;17:2,8,19,
  19,23;18:1,9;20:13,
  19;21:1,17;24:25;
  25:5,8;26:4,25;27:1,
  23;33:20;35:1;
  41:22;48:20;55:3,8
**response (3)**
  40:16;41:2;47:15
**responsive (1)**
  42:15
**rest (1)**
  31:12
**Restoration (3)**
  18:5;19:18,19
**review (1)**
  24:10
**RICHARD (1)**
  12:17
**right (32)**
  14:2,16;21:6,11;
  23:2;29:19;30:14,
  20;31:16;34:1;35:9,
  18;36:11;37:8,22;
  40:10;41:20;42:20;
  43:11;45:7,13;46:9,
  13;47:6;48:12,17;
  49:19;52:23;54:5,7;
  58:4;59:18
**rights (1)**
  40:12
**RMBS (2)**
  8:3;10:3
**RNBS (1)**
  37:21
**ROBERT (1)**
  6:19
**roles (1)**
  50:5
**ROMERO (1)**
  11:18
**room (1)**
  45:1
**ROPES (1)**
  8:2
**Roseland (1)**
  11:5
**ROSS (1)**
  10:8
**Rothstein (1)**
  21:20

**RUDLOFF (1)**
  10:12
**rule (1)**
  24:20
**running (1)**
  45:8

**S**

**same (3)**
  20:23;22:2;30:19
**San (1)**
  11:19
**SANDLER (1)**
  11:2
**satisfied (1)**
  41:1
**save (1)**
  38:3
**saying (3)**
  37:1,17;38:11
**SCHAFFER (12)**
  6:8;39:16,16;40:1,
  4,7,9;41:3;50:3,3,7;
  51:13
**schedule (7)**
  28:18,19;35:23;
  51:8,9,10;59:10
**scheduled (1)**
  32:25
**scheduling (4)**
  39:1,2,3;52:2
**SCHLECKER (1)**
  6:9
**SCHROCK (11)**
  4:17;22:12,15,21,
  22,22;23:3,4;46:4,5,
  5
**scope (2)**
  31:5;46:23
**scrambling (1)**
  44:20
**screwed (1)**
  43:4
**se (3)**
  35:25;55:9;57:14
**seated (1)**
  14:2
**second (3)**
  20:1;40:9,20
**Secured (4)**
  5:11,20;9:3;15:12
**securities (3)**
  16:1;18:1;48:3
**seek (2)**
  48:12,17
**seeking (3)**
  47:17;48:5;49:12
**seem (1)**
  57:18
**seems (1)**
  49:9
**sense (1)**

  58:14
**separate (3)**
  18:21;31:1;40:14
**served (2)**
  14:10,20
**service (1)**
  14:10
**Services (2)**
  18:6;19:19
**servicing (1)**
  16:21
**set (5)**
  17:11;19:21;28:1;
  57:20,21
**settle (1)**
  56:7
**settlement (8)**
  16:4;18:18,20;
  19:10;20:14;22:1,4;
  26:23
**settlements (3)**
  21:15;26:15,20
**seven (1)**
  16:25
**SEWARD (1)**
  10:2
**shall (1)**
  23:25
**share (1)**
  29:22
**shortly (1)**
  22:18
**show (1)**
  39:5
**side (1)**
  28:10
**sides (1)**
  28:21
**SIEGEL (10)**
  12:25;37:14,15,15,
  18,25;38:10,15;
  39:10,11
**significant (1)**
  31:14
**significantly (2)**
  26:4;27:22
**signs (1)**
  16:17
**silence (1)**
  49:3
**silent (1)**
  48:20
**SILVERMAN (1)**
  6:13
**SilvermanAcampora (2)**
  55:5;56:23
**SILVERSCHOTZ (1)**
  6:10
**simply (1)**
  27:21
**SINGER (1)**
  13:9
**single (1)**

  43:5
**sit (4)**
  33:13,15;35:14;
  45:19
**sitting (2)**
  29:10;44:10
**six (7)**
  26:8,19;27:2;28:1,
  3;32:2,13
**sixteen (1)**
  17:24
**sixty-four (1)**
  15:24
**SMITH (3)**
  6:2;9:19;39:16
**so-called (1)**
  17:16
**sold (1)**
  17:6
**somebody (4)**
  30:20;39:8;44:18;
  48:16
**someone (2)**
  29:6;39:1
**sometime (2)**
  14:7,24
**somewhat (1)**
  31:10
**soon (2)**
  33:1;41:18
**sorry (4)**
  17:23;19:19;
  40:24;48:15
**sort (1)**
  56:17
**South (2)**
  12:4,13
**space (1)**
  45:8
**speak (3)**
  27:25;29:6;30:25
**SPEAKER (1)**
  52:5
**speaking (1)**
  37:21
**Special (3)**
  6:14;55:14;56:1
**Specialty (1)**
  10:14
**specific (2)**
  42:9;58:16
**specificity (1)**
  58:8
**specified (1)**
  28:9
**specifies (2)**
  48:12,17
**spend (2)**
  56:5,20
**spent (1)**
  17:19
**split (1)**
  46:11

**spoken (1)**
  38:11
**ST (1)**
  11:23
**standards (2)**
  41:24,25
**standpoint (1)**
  32:24
**start (5)**
  14:13;15:22;
  24:15,20;44:19
**started (1)**
  15:13
**starts (1)**
  34:4
**state (1)**
  20:15
**statement (5)**
  39:7;41:18;46:2,7;
  58:12
**statements (2)**
  43:3;46:1
**states (1)**
  57:19
**state's (1)**
  57:17
**station (1)**
  53:24
**status (2)**
  15:4;29:20
**Steering (1)**
  8:3
**stems (1)**
  27:14
**still (1)**
  18:24
**stip (1)**
  53:20
**stipulate (4)**
  33:10,16;35:14,15
**stipulation (5)**
  36:2,4,8,18;37:2
**stipulations (3)**
  34:2,4;35:3
**stop (3)**
  18:7;33:25;58:2
**straight (1)**
  50:6
**STRAUSS (1)**
  8:19
**STRAWN (2)**
  7:2;35:21
**Street (6)**
  4:22;5:22;7:4;8:5;
  10:15;12:13
**structure (3)**
  15:5;23:9;57:6
**Structured (1)**
  47:13
**stuff (2)**
  33:9;35:16
**subclass (1)**
  15:17

12-12020-mg    Doc 5802    Filed 11/15/13    Entered 11/18/13 11:41:54    Main Document

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020(MG)
Pg 70 of 71

November 14, 2013

**subject (4)**
22:7;31:8;43:20;
56:11
**submission (1)**
54:21
**submit (1)**
43:7
**submitted (6)**
31:23;38:4;39:24;
43:10,13;50:10
**subsequent (1)**
48:8
**subsidiaries (1)**
16:20
**substantially (1)**
55:11
**substantive (1)**
47:6
**subsumed (1)**
39:19
**succeeded (1)**
35:22
**sued (1)**
17:4
**sufficient (2)**
30:3,19
**suggest (4)**
43:25;44:3,9,16
**suggested (1)**
57:11
**suggesting (1)**
29:20
**suggestion (2)**
26:7;43:21
**suggestions (1)**
56:22
**Suite (3)**
6:16;7:21;10:16
**sum (1)**
55:19
**summarize (2)**
23:14;47:22
**support (2)**
31:16;42:6
**sure (16)**
19:22;20:6;22:6;
27:16;38:5;40:21,
22;41:7,15;42:21,25;
43:16;44:17,24;
52:3;56:15
**surprised (1)**
31:23
**sustained (1)**
55:11
**Syncora (4)**
52:7,12,14,18
**Syncora's (1)**
52:8

**T**

**TAFT (1)**
8:11

**talk (5)**
25:2;30:3;34:13;
39:2;49:4
**talked (1)**
29:16
**talking (3)**
49:10,14,20
**targeted (1)**
42:8
**taxing (1)**
16:7
**telephone (2)**
14:7;39:9
**TELEPHONICALLY (10)**
9:16,24,25;10:9,
19;11:7,15,23;12:8,
17
**tens (1)**
58:13
**terms (1)**
31:9
**testimony (1)**
23:25
**testimony's (1)**
24:9
**Thanks (1)**
47:5
**Thanksgiving (1)**
31:19
**That'll (2)**
43:9,13
**thereafter (1)**
33:1
**There'll (1)**
57:6
**thereto (1)**
36:17
**Third (2)**
13:4,5
**third-party (3)**
17:3,12;36:1
**thirty- (1)**
26:18
**thirty-three (1)**
27:7
**THOMAS (2)**
10:8;12:8
**Though (3)**
16:13;31:11;57:22
**thought (3)**
23:23;50:13;53:13
**thoughts (1)**
23:16
**three (5)**
26:10,20;27:4,12;
28:24
**tie (1)**
26:23
**timed (3)**
26:8;27:15;28:6
**times (1)**
58:15
**timing (4)**

15:6;23:9;29:23;
50:12
**today (5)**
17:7;27:25;33:16;
43:7;51:24
**together (1)**
53:6
**told (1)**
54:6
**TOLLES (1)**
12:2
**tomorrow (27)**
14:23,24,25;17:8;
18:13;19:14;24:1,11,
17;25:22;38:12;
39:25;43:19;45:15;
51:15,17,23;52:18;
53:2,8,10;54:2,23;
55:3;56:3;59:8,11
**TORRES (1)**
5:2
**total (2)**
15:17;26:8
**Tower (1)**
8:4
**tracks (1)**
33:25
**train (1)**
53:24
**transcript (1)**
51:3
**trial (26)**
14:14,23;15:23;
23:21;26:4,8;27:15;
28:18,21,23;29:1,5,
22;30:7;31:2,10,11;
32:21,24;34:19;37:4,
5;38:20;46:22;
50:16;51:5
**trials (2)**
28:6;38:24
**tried (3)**
18:9;34:11;49:4
**truckload (1)**
43:19
**true (3)**
33:22;39:2;53:2
**truncated (1)**
34:10
**trust (3)**
16:12;56:25;57:7
**Trustee (5)**
9:11;10:3;29:15;
56:24;57:6
**trustees (2)**
37:21;38:2
**try (9)**
15:22;32:1,6,15;
34:1;38:1;45:19;
56:16;57:20
**trying (19)**
23:12;32:13;36:2,
6;41:14;43:2,3,5;

45:16;49:16;50:11;
53:2,21,21,24,25;
54:1;56:6,6
**Tryon (1)**
7:4
**Tuesday (3)**
15:9,19;24:21
**turn (3)**
18:14;41:6;42:19
**turns (1)**
53:25
**TWEED (4)**
5:10,19;29:9,13
**Twenty (3)**
16:3,13;46:8
**two (14)**
15:17;17:2;18:5;
19:18;24:20;28:3,
24;31:1;36:6,15;
38:24;39:18;44:25;
55:4
**two-party (1)**
28:10

**U**

**ultimately (1)**
19:21
**UMB (6)**
7:11;8:20;14:14;
24:15;34:19;40:13
**under (6)**
10:13;16:13;
54:18,21;57:16;
59:10
**understandable (1)**
58:12
**understood (5)**
18:21;35:8,12;
39:10;49:25
**undertaken (1)**
38:12
**underwriter (2)**
16:2;22:10
**unfair (1)**
57:17
**Universal (3)**
18:5;19:18,19
**UNKNOWN (1)**
52:5
**unless (3)**
18:23;20:16;37:21
**unnecessarily (1)**
42:14
**unreality (1)**
58:15
**unusual (1)**
23:19
**up (17)**
15:19,22;21:4;
22:14;25:17;28:12;
30:14;33:12;35:19;
37:23;39:6,21;43:4;

44:19;46:11;54:21;
56:20
**upcoming (1)**
46:21
**updates (1)**
43:8
**upon (1)**
31:5
**upstairs (1)**
45:1
**use (1)**
32:2
**used (2)**
28:25;37:17
**useful (1)**
44:13
**using (1)**
45:25
**usual (1)**
24:21
**UZZI (19)**
5:16;27:25;29:12;
32:9,10,10,15,17;
33:4,7,11,14,18;
34:11,16;35:8,10,12,
17

**V**

**variety (1)**
47:13
**view (1)**
29:22
**volume (1)**
31:9
**voluminous (1)**
26:15
**vote (2)**
17:24,25
**voted (1)**
16:4
**votes (1)**
15:10

**W**

**Wachovia (5)**
7:3,3;17:14;35:21,
21
**Wachovia's (1)**
17:18
**wait (2)**
23:17;39:14
**waiting (3)**
22:16;45:21,22
**WALPER (1)**
12:8
**wants (2)**
20:16;24:11
**warranties (1)**
17:5
**WARREN (1)**
7:10

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020(MG)

November 14, 2013

**Washington (2)**
4:23;5:23
**WATKINS (2)**
13:2;47:12
**way (7)**
15:1;17:5;33:3;
39:22;43:6;50:21;
55:22
**ways (1)**
31:4
**Wednesday (1)**
15:9
**week (3)**
15:6;23:9;54:6
**WEITNAUER (1)**
9:16
**Wells (10)**
6:3;9:11;19:24;
27:9;35:22;39:17;
40:11;50:3,5;51:8
**Wendy (1)**
18:3
**weren't (1)**
28:17
**what's (9)**
32:12;50:23;
51:15,22,25;54:19;
55:1,1;57:12
**whatsoever (2)**
15:22;28:13
**whenever (2)**
43:17;52:25
**whereupon (2)**
48:18;59:21
**WHITE (3)**
9:2;14:8,19
**Whittier (1)**
11:21
**WICKERSHAM (1)**
8:11
**WILLIAM (2)**
13:8;47:11
**willing (1)**
44:2
**WILSON (1)**
7:15
**wind (1)**
54:21
**WINSTON (2)**
7:2;35:21
**withdraw (1)**
47:9
**withdrawal (3)**
18:11;19:12;22:18
**withdrawn (3)**
19:7;21:18;22:11
**withdrew (1)**
18:22
**within (2)**
17:15;46:23
**without (5)**
14:10;18:23;
24:21;31:13;58:13

**witness (8)**
23:24;39:7,9;43:5,
8,18;44:20;46:19
**witnesses (13)**
28:21;30:4;31:7,9;
38:25;39:21,25;43:9,
9;46:17,17,18,25
**work (10)**
14:23;30:11,14;
31:4,25;32:6,8;36:2,
17;43:5
**worked (1)**
39:21
**working (6)**
16:10,16;31:18;
43:1;51:5;59:19
**World (1)**
8:13
**worried (1)**
18:20
**writing (2)**
36:10;37:2
**wrote (1)**
23:19
**WYNNE (1)**
12:17

**Y**

**yesterday (2)**
55:8,10
**yields (1)**
15:11
**York (17)**
4:5,15;5:5,14;6:6;
7:13,22;8:14,22;9:5,
13,22;10:5;11:13;
12:23;13:6;37:16

**0**

**02199 (1)**
8:6
**07068 (1)**
11:5

**1**

**1,368 (1)**
15:10
**1,432 (1)**
15:10
**100 (3)**
6:15;7:4;47:2
**10004 (1)**
10:5
**10005 (1)**
5:14
**10016 (1)**
9:13
**10019 (1)**
5:5
**10020 (1)**

11:13
**10022 (3)**
4:15;6:6;13:6
**10036 (4)**
4:5;8:22;9:5,22
**101 (2)**
7:12;12:22
**10169 (1)**
7:22
**10178 (2)**
7:13;12:23
**10281 (1)**
8:14
**1129 (2)**
26:12;33:8
**1155 (1)**
9:4
**11753 (1)**
6:17
**1177 (1)**
4:4
**12-12020 (1)**
14:3
**1221 (1)**
11:12
**13-01277 (1)**
14:4
**13-01343 (1)**
14:4
**1400 (1)**
10:16
**148 (1)**
15:16
**15 (1)**
36:25
**1633 (1)**
5:4
**1700 (1)**
7:21
**1850 (1)**
5:22

**2**

**2.5 (1)**
17:10
**20005 (1)**
4:23
**20006 (1)**
5:23
**222 (1)**
10:15
**230 (1)**
7:20
**26th (1)**
31:25
**28202 (1)**
7:5
**29th (1)**
6:5

**3**

**3:06 (1)**
59:21
**300 (1)**
6:16
**355 (1)**
12:4
**35th (1)**
12:5

**4**

**475 (1)**
44:1

**5**

**5 (1)**
29:21
**53rd (1)**
13:4
**555 (1)**
12:13
**599 (1)**
6:4

**6**

**601 (1)**
4:14
**60601 (1)**
10:17
**64 (1)**
15:10
**65 (1)**
11:4
**6516 (1)**
11:20
**655 (1)**
4:22
**6th (1)**
29:21

**8**

**800 (1)**
8:5
**885 (1)**
13:5

**9**

**9 (1)**
49:3
**90 (1)**
9:12
**900,000 (1)**
17:18
**90071 (2)**
12:6,15
**9019 (1)**
26:22
**90601 (1)**
11:21

**95.5 (1)**
15:11