12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 1 of 85

Page 1

```
  2              UNITED STATES BANKRUPTCY COURT
         FOR THE SOUTHERN DISTRICT OF NEW YORK
  3    ----------------------------x
       In re:                       : Chapter 11
  4    RESIDENTIAL CAPITAL, LLC,     : Case No. 12-12020(MG)
       et al.,                      : Jointly Administered
  5            Debtors.             :
       ----------------------------x
  6    RESIDENTIAL CAPITAL, LLC,     :
       et al.,                      :
  7            Plaintiffs,          :
           vs.                      : Adversary Proceeding
  8    UMB BANK, N.A., as successor : No. 13-01343(MG)
       indenture trustee under that :
  9    certain indenture, dated as  :
       of June 6, 2008; and WELLS   :
 10    FARGO BANK, N.A., third      :
       priority collateral agent and:
 11    collateral control agent     :
       under that certain Amended   :
 12    and Restated Third Priority  :
       Pledge and Security Agreement:
 13    and Irrevocable Proxy, dated :
       as of December 30, 2009,     :
 14            Defendants.          :
       ----------------------------x
 15    OFFICIAL COMMITTEE OF        :
       UNSECURED CREDITORS, on      :
 16    behalf of the estates of the :
       Debtors,                     :
 17            Plaintiff,           :
           vs.                      : Adversary Proceeding
 18    UMB BANK, N.A., as successor : No. 13-01277(MG)
       indenture trustee under that :
 19    certain Indenture, dated as  :
       of June 6, 2008; and WELLS   :
 20    FARGO BANK, N.A. third       : VIDEOTAPED DEPOSITION
       priority collateral agent    :        OF
 21    collateral control agent     : JAMES ARETAKIS
       under that certain Amended   :
 22    and Restated Third Priority  : New York, New York
       Pledge and Security Agreement: November 6, 2013
 23    and Irrevocable Proxy, dated :
       as of December 30, 2009,     :
 24            Defendants.          :
       ----------------------------x
 25    Reported by: JENNIFER MILLER  Job No. 67548
```

Yellow Highlighting = JSN Designations
Pink Highlighting = Plaintiff's designation
            or counter-designation
Orange Highlighting = Joint Designations

**The Debtors and Committee object to the JSNs' use of the deposition of Mr. Aretakis on the ground that this deposition may not be used under Bankruptcy Rule 7032.**

**The Debtors' counter-designations reflected herein are to be admitted, if at all, only upon admission of the JSNs' corresponding affirmative designation.**

1                   JAMES ARETAKIS

2                 November 6, 2013

3                    2:13 p.m.

4

5        Videotape deposition of JAMES ARETAKIS, held at

6   Kirkland & Ellis, LLP, 601 Lexington Avenue, New

7   York, New York, before Jennifer Miller, a

8   Registered Professional Reporter and Notary Public

9   of the Commonwealth of Pennsylvania.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    JAMES ARETAKIS
2    A P P E A R A N C E S:
3    MORRISON & FOERSTER
     ROBERT BAEHR, ESQUIRE
4        1290 Avenue of the Americas
         New York, NY 10104
5
6        Counsel for the Debtors
7
8    KRAMER LEVIN NAFTALIS & FRANKEL
     KURT DENK, ESQUIRE
9        1177 Avenue of the Americas
         New York, NY 10036
10
11       Counsel for the Committee of Unsecured
         Creditors
12
13
14   MILBANK TWEED HADLEY & MCCLOY
     DANIEL PERRY, ESQUIRE
15   RUSSELL KESTENBAUM, ESQUIRE
     DANIEL WHITE, ESQUIRE
16       One Chase Manhattan Plaza
         New York, NY 10005
17
18
19       Counsel for the Ad Hoc Committee of Junior
         Secured Creditors
20
21   KIRKLAND & ELLIS
     MARK MCKANE, ESQUIRE
22   JULIA ALLEN, ESQUIRE
         555 California Street
23       San Francisco, CA 94104
24
25       Counsel for Ally Financial, Inc.

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 4 of 85

Page 4

1                 JAMES ARETAKIS

2   A P P E A R A N C E S: (cont'd)

3   ALLY FINANCIAL

     TRICIA DENNIS, ESQUIRE

4      200 Renaissance Center

       Detroit, MI  48265

5

6      Counsel for Ally Financial, Inc.

7

8   ALSTON & BIRD

     WILLIAM HAO, ESQUIRE

9      90 Park Avenue

       New York, NY 10016

10

11      Counsel for Wells Fargo Bank as Trustee

12

13  KELLEY DRYE & WARREN

    TIMOTHY MARTIN, ESQUIRE (Via Telephone)

14     101 Park Avenue

      New York, NY 10178

15

16     Counsel for UMB Bank, N.A.

17

18

19  ALSO PRESENT:  Dale Swindell, Legal Video Specialist

20

21

22

23

24

25

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis    Pg 5 of 85

Page 5

1              JAMES ARETAKIS

2                  -    -    -

3          P R O C E E D I N G S

4                  -    -    -

5        THE VIDEOGRAPHER:  This is the start of

6    media labeled number one.  This is the tape

7    deposition of Mr. James Aretakis in the matter

8    of In re:  Residential Capital, LLC.

9        This deposition is being held at 601

10   Lexington Avenue, New York, New York on

11   November 6th 2013 at approximately 2:13 p.m.

12       My name is Dale Swindell from TSG

13   Reporting, Incorporated.  I'm the certified

14   legal video specialist.  The Court Reporter is

15   Jennifer Miller in association with TSG

16   Reporting.  Counsel will be noted on the court

17   reporter's record.

18       Would the Court Reporter please swear in

19   the witness.

20                  -    -    -

21          JAMES ARETAKIS, after

22   having been first duly sworn, was

23   examined and testified as follows:

24                  -    -    -

25          E X A M I N A T I O N

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis    Pg 6 of 85

Page 6

                        JAMES ARETAKIS

1

2                           -    -    -

3   BY MR. PERRY:

4        Q.    Good afternoon, Mr. Aretakis.

5        A.    Good afternoon.

6        Q.    My name is Dan Perry.   I represent Ad Hoc

7   Group of Junior Secured Noteholders in the ResCap

8   bankruptcy.

9               Have you ever been deposed before,

10  sir?

11       A.    No.

12       Q.    Just some -- I understand you're an

13  attorney; is that correct?

14       A.    That's correct.

15       Q.    Just some ground rules on depositions.

16              You understand you're under oath and

17  sworn to tell the truth the same as if you were

18  appearing in a court of law, correct?

19       A.    Correct.

20       Q.    The Court Reporter is taking down

21  everything I say to you and you say to me.  She's

22  able to do that only if we don't talk over each

23  other at the same time so I'd ask for you to wait

24  until I'd done with my question and I will extend

25  you the same courtesy.

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 7 of 85

Page 7

<sup>1</sup>                     JAMES ARETAKIS

<sup>2</sup>            THE VIDEOGRAPHER:  The time is 2:15.  We

<sup>3</sup>       are going off the record.

<sup>4</sup>                         -   -   -

<sup>5</sup>                 (Whereupon, a short recess

<sup>6</sup>          was taken.)

<sup>7</sup>                         -   -   -

<sup>8</sup>            THE VIDEOGRAPHER:  The time is 2:17 p.m.

<sup>9</sup>       We're back on the record.

<sup>10</sup>  BY MR. PERRY:

<sup>11</sup>       Q.   Before we broke, I was explaining we ought

<sup>12</sup>  to try not to talk over each other.  I'm going to

<sup>13</sup>  wait for you to finish your answer.  Please wait for

<sup>14</sup>  me to finish my questions.

<sup>15</sup>                 If you have any questions or my

<sup>16</sup>  questions are unclear to you, please let me know.

<sup>17</sup>  My sense is given the topic that we're here today to

<sup>18</sup>  talk about there may be some of that.  So please

<sup>19</sup>  don't hesitate, if I'm asking a question a way

<sup>20</sup>  that's unclear to you, to ask me to clarify it, and

<sup>21</sup>  I'll do my best to do it.

<sup>22</sup>                 You're entitled to consult with your

<sup>23</sup>  attorney of course throughout the deposition.

<sup>24</sup>  Particularly, to the extent that one of my questions

<sup>25</sup>  you think may call for you to disclose privileged

1              JAMES ARETAKIS

2  information, you can take your time and confer with

3  Mr. McKane about that.

4              You're otherwise entitled to take as

5  many breaks as you feel the need to take.  This is

6  not an endurance contest.  The only thing I'd ask is

7  that you just finish a pending question before you

8  do that.

9              Do you have any questions before we

10 start?

11     A.    No, I'm ready.

12     Q.    Can you give me your educational history.

13     A.    BA in Accounting from Michigan State.  JD

14 from Michigan.  I'm a licensed attorney in the State

15 of Michigan.

16     Q.    What year did you receive your accounting

17 degree?

18     A.    '78.

19     Q.    And your law degree?

20     A.    '82.

21     Q.    And can you give me a brief overview of

22 your employment history starting post law school.

23     A.    A couple of years with Coopers & Lybrand,

24 public accounting firm in Detroit, now PWC.  After

25 that, 22 years with General Motors tax staff and

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis    Pg 9 of 85

Page 9

1                    JAMES ARETAKIS

2    with the GMAC, now Ally, tax department beginning in

3    2006.

4         Q.   Are you still employed by Ally today?

5         A.   Yes.

6         Q.   What's your position at Ally?

7         A.   General tax counsel.

8         Q.   And is your role an attorney's role with

9    Ally?

10        A.   Yes.

11        Q.   And what was your position prior to

12   assuming the position of general tax counselor at

13   Ally?

14        A.   For three years prior to this summer, I

15   was chief tax officer, and prior to that, I also had

16   the general tax counsel position.

17        Q.   So when did you first become general tax

18   counsel?

19        A.   In 2006.

20        Q.   And then did that -- it was a little

21   unclear from your testimony.  Did that position

22   change to become chief tax officer or did you just

23   assume the chief tax officer duties?

24        A.   I assumed the chief tax officer duties for

25   three years.

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis    Pg 10 of 85

Page 10

1                    JAMES ARETAKIS

2        Q.    Okay.  And when were you the chief tax

3   officer?

4        A.    From mid-2010 to the middle of this year.

5        Q.    And does anybody within Ally now hold the

6   title chief tax officer?

7        A.    Yes.

8        Q.    And who's that?

9        A.    Jay Frucci, F-R-U-C-C-I.

10       Q.    And who does Mr. Frucci report to?

11       A.    The controller, David DeBrunner.

12       Q.    And who do you report to?

13       A.    I report to Mr. Frucci.

14       Q.    And prior to Mr. Frucci assuming the role

15  of chief tax officer, who did you report to?

16       A.    David DeBrunner.

17       Q.    Other than a law license, do you hold any

18  other professional licenses?

19       A.    I was a CPA, but I am inactive.  I don't

20  maintain the continuing professional education

21  requirement, so I don't hold myself out as a CPA any

22  longer.

23       Q.    And when did you become inactive as a CPA?

24       A.    Many years ago.

25                         -  -  -

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 11 of 85

Page 11

1           JAMES ARETAKIS

2              (Whereupon, Exhibit 1 was

3        marked for identification.)

4                    -  -  -

5    BY MR. PERRY:

6        Q.   Mr. Aretakis, the Court Reporter has just

7    handed you Aretakis Deposition Exhibit 1.  It's a

8    Notice of Subpoena from the Ad Hoc Group of Junior

9    Secured Noteholders to Ally Financial, Inc.

10              My understanding, sir, is that you've

11   been designated to give testimony on behalf of Ally

12   Financial, Inc. with respect to deposition topics

13   six and 14, which are set forth on page 78 of the

14   notice.

15              Is that consistent with your

16   understanding?

17           MR. MCKANE:  Subject to our objections and

18        responses.

19           THE WITNESS:  I'm sorry, items number?

20           MR. MCKANE:  Six and 14.

21   BY MR. PERRY:

22        Q.   Six and 14.

23        A.   Yes, that's my understanding.

24        Q.   And did you do anything to prepare to give

25   testimony on behalf of Ally Financial with respect

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 12 of 85

Page 12

JAMES ARETAKIS

1

to items six and 14?

2

    A.   Yes.

3

    Q.   What did you do?

4

    A.   I reviewed documents, financial

5

statements, generally brushed up on my recollection,

6

discussed the matter with other members of the tax

7

staff in the office, and I discussed it with

8

counsel.

9

    Q.   And what documents and financial

10

statements did you review in preparation for your

11

testimony?

12

    A.   I reviewed the 10-K for the period ending

13

December 31, 2012, and I reviewed some memoranda

14

that were prepared describing the book and tax

15

treatment of the proposed settlement amount.

16

    I also asked and received an

17

explanatory schedule to give me a little more detail

18

on the numbers that appeared on the 10-K.

19

    Q.   So, just so I have it straight, you recall

20

reviewing the 2012 10-K, correct?

21

    A.   Correct.

22

    Q.   Memoranda prepared describing the book and

23

tax treatment of the settlement in the Res Cap

24

bankruptcy, correct?

25

Plaintiffs' objection to JSNs' counter-designation of 12:10-14:21: Beyond the scope of affirmative designation; irrelevant (FRE 401, 402)

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 13 of 85

Page 13

1                         JAMES ARETAKIS

2        A.    Correct.

3        Q.    Was that more than one memo?

4        A.    Two memos.

5        Q.    Two memos.   And you asked that a schedule

6    be prepared as well, correct?

7        A.    Correct.

8        Q.    Any other documents that you recall

9    reviewing in connection with getting prepared for

10   your testimony?

11              MR. MCKANE:   Testimony on these two

12       topics?

13   BY MR. PERRY:

14       Q.    On these topics.

15       A.    There may have been some attachments maybe

16   or other schedules, some emails.

17       Q.    When you say "attachments," are these

18   attachments to the memoranda or to something else?

19       A.    To the memoranda.

20       Q.    And what emails do you recall reviewing?

21       A.    I can't recall anything specific, but I

22   may have looked at some -- some correspondence

23   between me and other members of the tax staff.

24       Q.    Now, you also indicated that you had

25   discussions with some members of the tax staff --

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 14 of 85

Page 14

1                           JAMES ARETAKIS

2          A.    Uh-hum.

3          Q.    -- in connection with your testimony?

4          A.    That's correct.

5          Q.    Who did you -- who did you talk to on the

6     tax staff?

7          A.    Most significantly, Kip Cotter,

8     C-O-T-T-E-R.  Kip is an executive director in the

9     tax staff, and he is primarily responsible for tax

10    accounting matters.

11         Q.    And did Mr. Cotter have any responsibility

12    for tax accounting matters with respect to the Res

13    Cap bankruptcy and settlement?

14         A.    Yes.

15         Q.    Does Mr. Cotter report to you?

16         A.    No, he reports to Mr. Frucci.

17         Q.    Anybody else that you can recall having

18    meaningful dialogue with on the tax staff?

19         A.    Some general dialogue with Mr. Frucci and

20    some -- some dialogue with Mr. Sean Rohlig,

21    R-O-H-L-I-G, who prepared that schedule.

22         Q.    You indicated that you had -- you met with

23    counsel?

24         A.    Yes.

25         Q.    Without going into the substance of that

Page 15

                         JAMES ARETAKIS

1

2    meeting, who -- who was the counsel that you met

3    with?

4         A.   Mr. McKane.

5         Q.   Anybody else there at the meeting?

6         A.   Yeah, Ms. Dennis and Ms. Allen.

7         Q.   About how long did you meet with counsel?

8         A.   A couple of hours.

9         Q.   And when did you meet?

10        A.   Today.

11        Q.   Other than the meeting today, did you have

12   any other meetings with counsel?

13        A.   Yeah, we had some phone calls.

14        Q.   And other than the three people that you

15   identified earlier, was anybody else on those calls?

16        A.   No.

17                     -   -   -

18             (Whereupon, Exhibit 2 was     Plaintiff's Objection
                                             015:18 – 19
19       marked for identification.)         Irrelevant (FRE 401,
                                             402), inadmissible
20                     -   -   -             hearsay (FRE 802)

21   BY MR. PERRY:

22        Q.   Before you is Aretakis Exhibit No. 2.

23                     -   -   -

24             (Whereupon, a short recess

25        was taken.)

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 16 of 85

Page 16

1                     JAMES ARETAKIS

2                        -   -   -

3          THE VIDEOGRAPHER:   The time is 2:34.   We

4      are back on the record.

5   BY MR. PERRY:

6          Q.   Can you identify Aretakis Deposition

7      Exhibit 2?

8          A.   Yes, this is the schedule prepared by

9      Mr. Rohlig.

10         Q.   And can you describe generally what the

11     schedule reflects?

12         A.   The schedule reflects a deferred tax

13     assets and deferred tax liabilities as they appear

14     on the Ally consolidated 10-K for the year end 2012,

15     and provide some additional details regarding those

16     amounts.

17         Q.   There's -- for the deferred tax assets,

18     there's a column that is entitled ResCap.   Can you

19     explain what that column signifies?

20         A.   Yes.   Those are the hypothetical ResCap

21     deferred tax assets that would exist if ResCap were

22     a separate standalone taxpayer, which it is not.

23         Q.   And the numbers that are reflected in the

24     ResCap column, are those tax effected numbers?

25         A.   Yes.

Plaintiff's
Objection
016:06 –
017:15
Irrelevant
(FRE 401,
402),
inadmissible
hearsay (FRE
802)

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 17 of 85

Page 17

1                    JAMES ARETAKIS

2       Q.    And what is the -- what number is used to

3   make -- strike that.

4                 What percentage are you applying to

5   come up with the tax effected numbers?

6       A.    Thirty-five percent.

7       Q.    So the -- as I understand it, as of

8   December 31st 2012, the number reflected for ResCap

9   ordinary tax loss carry forward is 520 million; is

10  that correct?

11      A.    That's correct.

12      Q.    And the tax effected number four ResCap

13  capital tax loss carried forward is 571 million,

14  correct?

15      A.    That's correct.

16      Q.    There's several other numbers that are

17  listed in the ResCap column.  I'd like to go through

18  them with you.

19                The next one is mark to market on

20  consumer finance receivables and loans, and the tax

21  effected number is 55 million.  Do you know what

22  that line item mark to market on consumer finance

23  receivables and loans reflects?

24      A.    I know that for tax purposes some loans

25  are mark to market, and for purposes some loans are

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 18 of 85

Page 18

1                          JAMES ARETAKIS

2      mark to market and they're not always the same, and

3      this would be the difference between the two tax

4      effected.

5           Q.    Okay.   And why is the difference between

6      the two a tax -- a deferred tax asset?

7           A.    Because our tax basis in an asset would be

8      higher than a book basis.

9           Q.    I see.   Okay.   And there's a $268 million

10     number, I believe it's provision for loan losses?

11          A.    That's correct.

12          Q.    What does that provision for loan losses

13     line item reflect?

14          A.    For book accounting purposes, an

15     expense -- a liability -- a contrast that could be

16     recorded for the expected losses on those loans.

17          Q.    Okay.

18          A.    That is not a good tax deduction, so it

19     creates a deferred tax asset.

20          Q.    I see.   And so, at the point in time when

21     the loan losses became actual losses as opposed to

22     just expected losses, would they be reclassified on

23     this sheet to -- to be in some other line item?

24          A.    The deferred would come down for provision

25     for loan losses, and it would be reflected

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 19 of 85

Page 19

1                    JAMES ARETAKIS

2   elsewhere, maybe not on the schedule.

3               If it resulted in an actual decrease

4   in the tax liability, then it wouldn't be on your

5   deferred.

6       Q.    Right.

7       A.    So it depends upon when it reduces and

8   whether or not we're still in an overall net

9   operating loss carry forward position.

10              It would likely, while we are in it

11  in a well carried forward position, it would be

12  reclassified to the other line item.

13      Q.    I see.   So it could be used as an NOL at

14  the point in time when the loss become -- when the

15  loss becomes an actual as opposed to expected,

16  correct?

17      A.    That's correct.

18      Q.    There's a $126 million line item under

19  mortgage servicing rights.  What is that?

20      A.    This was an adjustment -- reflects an

21  adjustment that was made when Ally was a partnership

22  for tax purposes.

23              And under 743B, tax counsel will

24  understand, there was certain adjustments made to

25  the basis of our assets.  When a new partner comes

Page 20

JAMES ARETAKIS

1

2 in and we adjust the basis because of this

3 partnership-type transaction, and our basis and our

4 mortgage servicing rights, it exceeds the basis for

5 book purpose.

6     Q.   Why is that a deferred tax asset?

7     A.   Because it's a difference in basis that's

8 reflected between book and tax -- gets reflected in

9 that way.

10     Q.   And there's also a category for other that

11 it's $183 million.  Do you have a sense of what

12 makes up that other category at least with respect

13 to ResCap?

14     A.   In general, I believe there's other basis

15 difference between book and tax with respect to

16 assets.

17     Q.   There's the gross deferred tax assets in

18 the ResCap column are total that 1.724; do you see

19 that?

20     A.   Yes.

21     Q.   And below that there's a valuation

22 allowance of 649 million.  Can you explain what the

23 valuation allowance is?

24     A.   We have valuation allowance as of the end

25 of the year with respect to certain DTA's, the

Plaintiff's Objection
20:17 – 22:13
Irrelevant
(FRE 401, 402)

Page 21

1                         JAMES ARETAKIS

2    utilization of which is not certain.  In particular,

3    capital losses are VA'd because they have a short

4    carry forward period and can only be used against

5    capital gains.

6         Q.    When you say VA, do you mean --

7         A.    Valuation allowance.

8         Q.    And do you have an understanding of why

9    the valuation allowance would exceed the amount of

10   the capital tax loss carried forward?

11        A.    Yes.

12        Q.    Why is that?

13        A.    In addition to the capital loss carry

14   forward, we had valuation allowance against certain

15   NOL carry forwards that were subject to what they

16   call the SRLY limitations, separate year -- separate

17   return limitation year.  It's a tax acronym.

18              But it's -- these are losses that

19   can't be used -- utilization which is very limited,

20   so they were subject to valuation allowance.

21              And there were also some assets where

22   we had a basis difference, and they were capital

23   assets, so that basis difference would likewise be

24   subject to valuation allowance like the other

25   capital losses.

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 22 of 85

Page 22

1              JAMES ARETAKIS

2       Q.    And is it -- does the allowance for

3    capital tax loss carry forwards, is it a

4    dollar-for-dollar allowance or is it some percentage

5    of the capital tax loss carried forward that's VA'd?

6       A.    Dollar for dollar.

7       Q.    And do you know whether any -- whether

8    Ally expects to use any of the ResCap capital tax

9    loss carried forwards in 2013?

10          MR. MCKANE:   Objection to form.

11          You can answer.

12          THE WITNESS:   I expect that we will use a

13      substantial amount.

14   BY MR. PERRY:

15      Q.    Can you give an estimate in terms of the

16   amount?

17      A.    I really don't know the amount, but I know

18   we've had certain transactions in 2013 and expect

19   others in '14 that will generate capital gains.

20      Q.    And do you -- are you able to estimate as

21   you sit here today how much of the 500 -- and I'm

22   just looking for an estimate, not a precise

23   number -- how much of the $571 million capital tax

24   loss carry forward will be used in 2013 or '14?

25      A.    Over the two years together, probably all

*Plaintiff's Objection 22:7-13: Lack of personal knowledge (FRE 602), inadmissible hearsay (FRE 802)*

*Plaintiff's Objection 22:20-23:05 Lack of personal knowledge (FRE 602), inadmissible hearsay (FRE 802)*

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 23 of 85

Page 23

1                    JAMES ARETAKIS

2    of it.

3                        –   –   –

4               (Whereupon, Exhibit 3 was

5          marked for identification.)

6                        –   –   –

7    BY MR. PERRY:

8        Q.    Before you, Mr. Aretakis, is Aretakis

9    Deposition Exhibit 3.  It's an excerpt of the report

10   of Arthur Gonzales as the examiner in the ResCap

11   bankruptcy.

12                I'm particularly interested in the

13   table, which is reflected in footnote 1812, which is

14   on page V344 of the exhibit.  Just directing your

15   attention to the ResCap, the third -- the text under

16   amount of ResCap tax benefits available for AFI's

17   use, there's a line item for ResCap NOL's generated

18   between November 2009 and December 2012, and the

19   number is 1.444.

20                First of all, do you know where that

21   number came from?

22       A.    No, I do not.

23       Q.    Do you know whether that's a tax effected

24   number or non-tax effected as you sit here?

25       A.    I would think it is not tax effected.

Plaintiff's Objection 23:4-5: Inadmissible hearsay and double hearsay (FRE 802), irrelevant (FRE 401, 402), unduly prejudicial (FRE 403), lack of personal knowledge (FRE 602), lack of foundation (FRE 602, 901, 903), incomplete (FRE 106)

Page 24

JAMES ARETAKIS

1

2    Q.    And there's a line item ResCap capital

3    losses generated between November 2009 and December

4    of 2012 for 1.629 billion.

5    A.    Uh-hum.

6    Q.    Do you know where the 1.629 billion number

7    came from?

8    A.    I do not know.

9    Q.    And is it your belief that the 1.629

10   number is similarly not tax effected?

11   A.    Correct.

12                    -   -   -

13          (Whereupon, Exhibit 4 was

14      marked for identification.)

15                    -   -   -

16   BY MR. PERRY:

17      Q.    So you'll see in the text of Aretakis

18   Exhibit 3, the text of footnote 1812, there's a

19   citation for the 1.444 billion and 1.629 billion

20   numbers that we've been looking at, and it reflects

21   or cites to a schedule prepared -- purportedly

22   prepared by AFI.

23               It has a Bates number there which is

24   a number that litigators use to identify documents

25   produced in litigation.    And I'm going to show you

Plaintiff's Objection
024:13–14
Inadmissible hearsay
(FRE 802), irrelevant
(FRE 401, 402), lack of
personal knowledge (FRE
602), lack of foundation
(FRE 602, 901, 903)

Plaintiff's
Objection
024:17 –
025:04
Inadmissible
hearsay (FRE
802),
irrelevant
(FRE 401,
402), unduly
prejudicial
(FRE 403),
lack of
personal
knowledge
(FRE 602),
lack of
foundation
(FRE 602,
901, 903),
incomplete
(FRE 106)

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 25 of 85

Page 25

1                    JAMES ARETAKIS

2    as Aretakis Exhibit 4, the document cited to in

3    footnote 1812.

4         A.    Uh-hum.

5         Q.    Do you know what this schedule is?

6         A.    I don't recognize the schedule.

7         Q.    Is the form of the document something

8    that's familiar to you?

9         A.    I could make sense of it, but I don't

10   routinely use a document that looks like this.

11        Q.    And I take it by looking at the document,

12   you don't know who prepared the document or where

13   within AFI it was prepared, correct?

14        A.    That's correct.  I can only guess.

15        Q.    Okay.  And are you able -- just focusing

16   on the network net operating loss figures set forth

17   in the first page of Aretakis Deposition Exhibit 4,

18   are you able to tie those figures back to footnote

19   1812?

20        A.    It's not jumping off the page at me,

21   Counselor.

22        Q.    Well, if you -- so, if you take under net

23   operating loss, if you take the line item 11/2/09 to

24   12/31/09 and then 2010 and '11 and you add them up

25   and then add to that the projected number for 2012,

JSN
Objection
25:11-21
Irrelevant
(FRE 401,
402)

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 26 of 85

Page 26

1                    JAMES ARETAKIS

2    I believe you get to 1.444.

3                    Is that -- I mean, I know I'm asking

4    you to do math based on somebody else's schedule,

5    and I would concede it's unfair.   I'm just trying to

6    make sure that --

7                MR. MCKANE:   I appreciate you saving me

8        the objection.

9    BY MR. PERRY:

10       Q.   The examiners that -- the calculation that

11   the examiner did makes sense to you in reviewing

12   this schedule?

13               MR. MCKANE:  Let me just ask are you

14       asking him to look at the first net operating

15       loss calculation including -- including income

16       or the second net operating loss calculation?

17           There's two on the page.

18           MR. PERRY:  The second.

19           THE WITNESS:  Thank you.  Okay.

20           MR. MCKANE:  And just to be clear, are you

21       asking him to sum the numbers that start 823

22       million and 559 million?

23               MR. PERRY:  Well, no.

24   BY MR. PERRY:

25       Q.   You know, you're not here to do math,

JSN
Objection
26:3-8
Irrelevant
(FRE 401,
402)

Page 27

JAMES ARETAKIS

1
2  obviously.  I just want to make sure, you know, to

3  the extent one wanted to use this schedule to

4  determine at least as of the time the schedule was

5  prepared what the ResCap net operating losses were

6  between November of 2009 and December of 2012, would

7  one simply add the four line items that I identified

8  earlier?

9       MR. MCKANE:  Objection to form.

10  Foundation.  Calls for speculation.

11       Go ahead.

12       THE WITNESS:  It would seem reasonable,

13  but I can't -- I can't state so.

14  BY MR. PERRY:

15       Q.  Okay.  But you at least in preparation for

16  your deposition, directed and supervised members of

17  the tax staff to actually prepare the net operating

18  losses for ResCap up through and including

19  December 31st 2012, correct?

20       A.  I'm sorry, I didn't understand the

21  question.

22       Q.  Okay.  If -- going back to Aretakis

23  Deposition Exhibit 2.

24       A.  Okay.

25       Q.  What line items would I use if I wanted to

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 28 of 85

Page 28

1                        JAMES ARETAKIS

2    come up with a total for ResCap NOL's generated up

3    through -- as of December 31st 2012?

4              MR. MCKANE:   Objection to form.

5              THE WITNESS:   That would be very difficult

6         to do.

7              This is book accounting, Exhibit 2?

8    BY MR. PERRY:

9         Q.   Uh-hum.

10        A.   And I believe what you're describing in

11   Exhibit 4 are taxable income numbers.

12        Q.   Uh-hum.

13        A.   The book accounting only describes the

14   deferred item, and the taxable income number comes

15   off a tax return.

16        Q.   I see.   So how would the deferred --

17   strike that.

18              If I wanted to compare the deferred

19   item set forth on Aretakis Schedule 2 and the

20   taxable income numbers set forth in footnote 1812,

21   what are the differences in those two that -- the

22   items that make up the two figures on those two

23   schedules?

24              MR. MCKANE:   Objection to form.

25        Foundation.   Vague.   Overbroad.

JSN Objection
28:16-29:7
Irrelevant (FRE
401, 402)

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis    Pg 29 of 85

Page 29

1                     JAMES ARETAKIS

2              Go ahead.

3              THE WITNESS:  Okay.  Again, it appears

4       footnote 1812 are tax return numbers and

5       Exhibit 2 are book accounting numbers.  I'm not

6       sure how to compare them to make any sense of

7       that comparison.

8    BY MR. PERRY:

9         Q.   Okay.  So it wouldn't be as simple as

10   simply grossing up the tax effected numbers to a

11   number and then translating them into the -- the

12   numbers that appear in footnote 1812; is that your

13   testimony?

14        A.   That would not be a one-to-one comparison,

15   no.

16        Q.   If -- would there be items included in the

17   deferred tax assets -- well, strike that.

18              What items in the deferred tax assets

19   would not be listed on the -- on the tax -- the tax

20   returns?

21        A.   Certainly, any difference between book

22   income and tax income there is a permanent

23   difference.

24        Q.   Uh-hum.

25        A.   Otherwise, it's in there.

Page 30

JAMES ARETAKIS

1

2     Q.    Okay.  And are you aware of any permanent

3 differences between book income and tax income for

4 ResCap?

5          MR. MCKANE:  Objection to form.

6          THE WITNESS:  For example, something that

7     creates a permanent difference is perhaps a --

8     as an example, a book expense that is

9     deductible for tax purposes.

10         Attorneys fees paid in the bankruptcy case

11    are not deductible for tax purposes.  That's a

12    permanent difference.

13 BY MR. PERRY:

14    Q.    Are you able to estimate the size of any

15 permanent differences between book income and tax

16 income for ResCap?

17    A.    I know that the consolidated number

18 appears in our 10-K.

19    Q.    And where would I look in the 10-K for the

20 consolidated number?

21    A.    In note 23, income taxes.

22                     -  -  -

23          (Whereupon, Exhibit 5 was

24     marked for identification.)

25                     -  -  -

Page 31

<sup>1</sup>                     JAMES ARETAKIS

<sup>2</sup>  BY MR. PERRY:

<sup>3</sup>      Q.    Before you is Aretakis Deposition Exhibit

<sup>4</sup>  5.  It's an excerpt of Ally's 2012 10-K, and we

<sup>5</sup>  fortunately for us excerpted note number three.

<sup>6</sup>              Are you able to identify based on

<sup>7</sup>  your review of note 23 the difference between -- the

<sup>8</sup>  permanent difference between tax and book accounting

<sup>9</sup>  that we've just been discussing?

<sup>10</sup>      A.    Page 171, line item near the bottom,

<sup>11</sup>  nondeductible expenses, would capture those

<sup>12</sup>  bankruptcy attorneys fees that I just described.

<sup>13</sup>      Q.    Okay.  If you go back to the analysis in

<sup>14</sup>  footnote 1812, do you -- generally speaking, do you

<sup>15</sup>  have an understanding of what the table is trying to

<sup>16</sup>  portray in footnote 1812?

<sup>17</sup>      A.    I have a general understanding.

<sup>18</sup>      Q.    Can you describe that understanding?

<sup>19</sup>      A.    The heading is amount of ResCap tax

<sup>20</sup>  benefits available for AFI's use.  And it appears to

<sup>21</sup>  list certain tax attributes arising in ResCap

<sup>22</sup>  operations that belong to AFI, and it appears to

<sup>23</sup>  estimate a total amount, and appears to apply a

<sup>24</sup>  federal income tax rate for a -- an amount of tax

<sup>25</sup>  effected benefit.

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 32 of 85

Page 32

1                    JAMES ARETAKIS

2          Q.    Is there anything about this chart that

3     appears to you to be incorrect based on your review?

4               MR. MCKANE:    Objection to form.

5          Foundation.

6               THE WITNESS:    The line that says less

7          estimated amount of cancellation of debt

8          income, I wouldn't find the number incorrect so

9          much as the description.    Upon further review,

10         we don't think there would be something called

11         cancellation of debt income for tax purposes.

12    BY MR. PERRY:

13         Q.    And what would you -- what would you call

14    it?

15         A.    I'd call it gain or loss on an exchange.

16         Q.    And for purposes of calculating available

17    tax attributes for Ally, whether one calls it gain

18    or loss on an exchange or cancellation of debt

19    income, would that number be reflected in this

20    calculation in the manner that it is in footnote

21    1812?

22              MR. MCKANE:    Objection to form.    Vague.

23              THE WITNESS:    I don't know.

24    BY MR. PERRY:

25         Q.    And when -- at what point in time did Ally

JSN
Objection
32:2-11
Irrelevant
(FRE 401,
402)

Plaintiff's Objection
032:25 – 033:18   Irrelevant
(FRE 401, 402),
inadmissible hearsay (FRE
802)

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 33 of 85

Page 33

1                    JAMES ARETAKIS

2    determine that the concept of cancellation of debt

3    income was not the right term to use in connection

4    with thinking about Ally's losses in connection with

5    the ResCap bankruptcy?

6              MR. MCKANE:   Objection to form.   Misstates

7         prior testimony.

8              Go ahead.

9              THE WITNESS:   This summer.

10   BY MR. PERRY:

11        Q.   About when?

12        A.   I'll call it September.

13        Q.   September of 2013?

14        A.   Yes.

15        Q.   What led Ally to consider whether the

16   concept of cancellation of debt income or something

17   else was the appropriate concept to use?

18        A.   The progression of this case.

19        Q.   And what about the progression of the case

20   caused Ally to consider the appropriate title to

21   use?

22              MR. MCKANE:  Actually, on that, I'm going

23         to have to instruct you, if you can answer the

24         question without divulging attorney-client

25         privilege, do so.

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 34 of 85

Page 34

JAMES ARETAKIS

1

2      THE WITNESS:  Okay.

3      MR. MCKANE:  But to the extent you can't

4   answer the question without divulging

5   attorney-client privilege, you can't answer the

6   question.

7      THE WITNESS:  Tough one.  Let me say that

8   there is my -- I developed the understanding

9   that this case may -- how do I describe it --

10  wrap up or become a taxable event -- trigger a

11  taxable event in 2013.

12  BY MR. PERRY:

13     Q.   Uh-hum.

14     A.   And we had not really performed the

15  requisite analysis for tax purposes, and so we

16  undertook that analysis and reached a different

17  conclusion as to the character of that item.

18     Q.   Okay.  And how would the character of the

19  item, that change in the character of the item --

20  strike that.

21          Would the change in the character of

22  the item result in a change in tax treatment for

23  Ally?

24          MR. MCKANE:  Objection to form.  Vague.

25          THE WITNESS:  Let me say that the

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 35 of 85

Page 35

JAMES ARETAKIS

2    character of the gain or loss that might be

3    triggered upon resolution of this case could be

4    something other than cancellation of debt

5    income, which is ordinary income, instead the

6    exchange treatment that -- characterization

7    might produce some capital gain or loss.

8  BY MR. PERRY:

9      Q.    And have you calculated the amount or has

10 the tax department calculated the impact of that

11 change in characterization upon Ally?

12     A.    No, it really can't be calculated at this

13 time.

14     Q.    At what point could one calculate it?

15     A.    At the point we have a taxable event.

16     Q.    And is it -- is the question whether at

17 the point you have a taxable event there's

18 sufficient capital gains to offset the capital

19 losses?

20     A.    No.  I was thinking in terms of knowing

21 the -- all the components of the gain or loss that

22 would be knowable only at the time of that taxable

23 event.

24     Q.    Okay.  So let me just step back and make

25 sure I've got all of this.

Page 36

JAMES ARETAKIS

2      If -- in a world where this loss was

3  characterized as cancellation of debt income, that

4  would be -- that's treated as ordinary loss?

5      A.    Ordinary income.

6      Q.    Ordinary income.  Okay.  Whereas a gain or

7  loss on exchange, at least a portion of the gain,

8  could be characterized as a capital gain, correct?

9          MR. MCKANE:  Could you read that back.

10                  -   -   -

11          (Whereupon, a portion of the

12      transcript was read for the record.)

13                  -   -   -

14          MR. MCKANE:  Object to form.  Vague.

15          THE WITNESS:  Not quite.  There could be

16      actually capital loss as well even if there

17      were over on net gain in total.

18  BY MR. PERRY:

19      Q.    I see.  But from a tax perspective, if the

20  total was a capital gain, you know, something

21  approximating 3.9 billion --

22      A.    Okay.

23      Q.    Okay?

24              -- how would the tax -- your ability

25  to use -- strike that.

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 37 of 85

Page 37

JAMES ARETAKIS

2      -- how would the impact of that gain

3  be any different from the use of an ordinary income

4  gain if you just had pure cancellation of debt

5  income?

6      A.   If the exchange produced solely ordinary

7  gain, the difference between that and cancellation

8  of debt income is certain special treatment for CODI

9  that's permitted under the Internal Revenue Code, so

10 it has a different character in that sense.

11     Q.   Uh-hum.  And just from a 10,000-foot

12 perspective, does characterizing this particular

13 item as gain or loss on an exchange improve Ally's

14 tax position or hurt Ally's tax position?

15         MR. MCKANE:  Objection to form.  Vague.

16     Calls for speculation.

17         THE WITNESS:  I don't know if there's an

18     overall benefit or detriment to this position.

19 BY MR. PERRY:

20     Q.   Now, other than the characterization of

21 the $3.9 billion item in footnote 1812, is there

22 anything else about the schedule that appears to you

23 to be inaccurate?

24     A.   I can't verify any of the numbers used on

25 this schedule, so I can't say if they're accurate or

Page 38

1                    JAMES ARETAKIS

2      inaccurate.

3           Q.   My question was does anything appear to be

4      inaccurate, understanding that you're not here to

5      verify the schedule?

6           A.   I'm sorry, I really can't say if it's

7      accurate or inaccurate.

8           Q.   But my question is --

9           A.   Does it look wrong?

10          Q.   Yeah, does it look wrong?

11               MR. MCKANE:   Objection to form.   It's

12          asked and answered.

13               THE WITNESS:   I'm not familiar with these

14          numbers.

15      BY MR. PERRY:

16          Q.   And who from Alley would be familiar with

17      these numbers?

18          A.   I don't know where these numbers came

19      from.

20          Q.   And similarly, you don't know who prepared

21      the chart, which I believe we marked as Aretakis

22      Exhibit 4, correct?

23          A.   I only speculate.

24                    -   -   -

25               (Whereupon, Exhibit 6 was

Plaintiff's Objection
038:25 – 039:20
Irrelevant (FRE 401,
402), inadmissible
hearsay (FRE 802)

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 39 of 85

Page 39

JAMES ARETAKIS

2          marked for identification.)

3                    –  –  –

4    BY MR. PERRY:

5          Q.    Before you is Aretakis Exhibit 6.

6                    Can you identify this document?

7          A.    It's a document prepared in June of this

8    year by Sean Rohlig, and it describes both the book

9    and tax treatment of the proposed bankruptcy

10   settlement.

11         Q.    And if you flip to page six of the

12   document, right before the blue separator sheet --

13         A.    Uh-hum.

14         Q.    -- there's a tax sign off --

15         A.    Yes.

16         Q.    -- and it reflects that you approved the

17   memo on June 28th 2013.

18                    My question is did you, in fact,

19   approve Mr. Rohlig's memo in or around June of 2013?

20         A.    Yes.

21         Q.    And what was the purpose of the memo?

22         A.    For book accounting purposes in the second

23   quarter.  We were informed that there -- the

24   $2.1 billion proposed settlement would be reflected

25   in the second quarter financial statements, and this

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis    Pg 40 of 85

Page 40

1          JAMES ARETAKIS

2   document describes how we would treat it for tax

3   purposes in Q2's financial statements.

4        Q.    When does Q2 close for Ally?

5        A.    June 30th.

6        Q.    So Ally is on a calendar --

7        A.    That's correct.

8        Q.    If you flip to page five, there's some

9   discussion of the tax accounting --

10        A.    Uh-hum.

11        Q.    -- for the settlements.  Can you describe

12   how -- and there's a notation there 1.35 billon.  Do

13   you have any understanding of where the 1.35 billon

14   number derives from?

15        A.    Is that the difference between the 2.1 as

16   proposed and the 750 already accrued?

17        Q.    Yeah.  Let me -- if you look -- if you'd

18   like to look, the factual background on the first

19   page --

20        A.    Uh-hum.

21        Q.    -- running over to the second reflects the

22   factual background for the memorandum.

23        A.    Unless my math is wrong, that is, in fact,

24   the difference between the two.

25        Q.    And as I understand it, the -- so there

Page 41

JAMES ARETAKIS

1

2  was a 1.35 billion payment that was booked in Q2

3  2013; is that right?

4          MR. MCKANE:  Objection to form.

5          THE WITNESS:  No, I don't believe there

6      was any payment made in Q2.

7  BY MR. PERRY:

8      Q.   Why would the deferred tax assets be

9  recorded in Q2 2013 in the absence of an actual

10  payment?

11      A.   For book accounting purposes, they

12  accrued -- the cash payment, they accrued liability.

13  And it's a deferred item because it's not a current

14  tax deduction.

15      Q.   And at the point that the one point -- if

16  and when the 1.35 billon is paid, does the

17  510 million become a tax deduction, a current tax

18  deduction, assuming you can use it?

19          MR. MCKANE:  Objection to form.

20          THE WITNESS:  At the time the 1.35 -- I'm

21      sorry --

22  BY MR. PERRY:

23      Q.   Billion is paid.

24      A.   -- is paid.

25      Q.   Is there -- strike that.

Plaintiff's
Objection
041:08 – 17
Irrelevant (FRE
401, 402),
incomplete (FRE
106) ,
inadmissible
hearsay (FRE 802)

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 42 of 85

Page 42

```
 1                    JAMES ARETAKIS
 2              At the time the 1.35 billon is paid,
 3    is there a -- does that then create a roughly
 4    $510 million tax attribute that Ally can use?
 5         A.   It depends.  If at the time the payment is
 6    made, ResCap remains wholly owned LLC subsidiary of
 7    Ally, net payment is a nonevent.
 8         Q.   What do you mean by that?
 9         A.   Well, ResCap is a disregarded entity for
10    tax purposes, so it is not treated as separate from
11    Ally, and payments from Ally to ResCap are payment
12    from one pocket to another; doesn't create a taxable
13    deduction.
14         Q.   Is that your understanding of how the tax
15    accounting will work if the particular settlement
16    between Ally and the debtors in the ResCap case is
17    approved?
18              MR. MCKANE:  Objection to form.
19              THE WITNESS:  Help me out with that one?
20    BY MR. PERRY:
21         Q.   Okay.  Assume the plan of reorganization
22    is confirmed, there's a payment of $2.1 billion from
23    Ally to ResCap.
24         A.   Uh-hum.
25         Q.   The Aretakis Deposition Exhibit 6 at least
```

Plaintiff's Objection
042:21 – 043:18 Irrelevant (FRE 401,
402), inadmissible hearsay (FRE 802)

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 43 of 85

Page 43

1                         JAMES ARETAKIS

2    contemplates that there would be a corresponding tax

3    attribute created by that payment.  Will that, in

4    fact, be a usable tax attribute based on what you

5    know of the settlement proposed in the bankruptcy

6    case?

7              MR. MCKANE:  Object to form.  Vague.

8              THE WITNESS:  Let me say the payment by

9         itself if it occurs while ResCap is owned by

10        Ally, as I said, is not an event.  Taxable

11        event won't occur until something creates a

12        taxable event such as the cancellation of

13        Ally's interest in ResCap.

14   BY MR. PERRY:

15        Q.   And the -- it's contemplated currently

16   that there will be a cancellation of Ally's interest

17   in ResCap, correct?

18        A.   Correct.

19        Q.   So is it correct that for every dollar of

20   settlement consideration paid there will be a tax

21   attribute of roughly 35 percent created in favor of

22   Ally?

23              MR. MCKANE:  Objection to form.

24              THE WITNESS:  Not exactly.  The exchange

25        treatment I referred to earlier will be the tax

Page 44

JAMES ARETAKIS

2    event, and that will be an exchange of all the

3    assets we call ResCap assets in exchange for

4    release of all liabilities we're calling ResCap

5    liabilities.

6        For tax purposes, those are all Ally

7    assets and they're all Ally liabilities.  That

8    deemed exchange will create a taxable gain or

9    loss.  The cash contributed is one -- but one

10    component of that calculation.

11   BY MR. PERRY:

12       Q.   And what is that calculation right now,

13   what is the expected taxable gain or loss as a

14   result of this case, the conclusion of this case?

15       MR. MCKANE:  Objection.  Asked and

16   answered.

17   BY MR. PERRY:

18       Q.   You can answer.

19       A.   Okay.  I'm sorry, you threw me off.

20            Can you read that back?

21                 -   -   -

22            (Whereupon, a portion of the

23       transcript was read for the record.)

24                 -   -   -

25            THE WITNESS:  It's somewhat impossible to

Page 45

1                    JAMES ARETAKIS

2        say.  The -- we -- we have a good understanding

3        of the assets that we would be giving up and

4        their tax basis.

5             The liabilities relieved, which are the

6        deemed proceeds of that exchange, are unknown

7        at this time because we don't know what

8        liabilities the bankruptcy court will

9        acknowledge claims against ResCap, and we don't

10       know the extent to which those liabilities are

11       fixed and determinable for tax purposes.

12   BY MR. PERRY:

13        Q.   Have you estimated -- has Ally estimated

14   the amount of liabilities it anticipates will be

15   relieved as part of the bankruptcy case?

16        A.   No.

17        Q.   What is the tax basis of the assets that

18   are being given?

19        A.   I couldn't tell you the number.  I know it

20   exceeds the book basis.

21        Q.   And is there any analysis, a spreadsheet

22   or a memo, that analyzes the bottom line anticipated

23   tax effect of the conclusion of the ResCap

24   bankruptcy?

25        A.   Not that I'm aware of.

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 46 of 85

Page 46

1                          JAMES ARETAKIS

2          Q.    And do you know why no such memo has been

3    prepared?

4          A.    Because we don't know what the liabilities

5    will be.  We don't know what will be fixed and

6    determinable on that termination date.

7          Q.    Can you go back to Aretakis 3.  I think

8    it's the footnote 1812 document.

9          A.    Uh-hum.

10          Q.    Do you see in this document there's a tax

11    liability figure of 10.1 billion; do you see that?

12                Is that the figure that you're

13    testifying is unknowable at this point in time from

14    Ally's perspective?

15          A.    Yes.

16          Q.    You don't believe there are any internal

17    Ally documents that estimate the amount of that tax

18    liability figure, correct?

19          A.    Not to my knowledge.

20                          -    -    -

21                (Whereupon, Exhibit 7 was

22          marked for identification.)

23                          -    -    -

24    BY MR. PERRY:

25          Q.    Before you is Aretakis Deposition Exhibit

Plaintiff's Objection 046:10–15 Inadmissible hearsay (FRE 802), irrelevant (FRE 401, 402), unduly prejudicial (FRE 403), lack of personal knowledge (FRE 602), lack of foundation (FRE 602, 901, 903), incomplete (FRE 106)

Plaintiff's Objection 046:24 – 048:12    Inadmissible hearsay (FRE 802), irrelevant (FRE 401, 402), lack of personal knowledge (FRE 602), lack of foundation (FRE 602, 901, 903), incomplete (FRE 106)

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 47 of 85

Page 47

1                        JAMES ARETAKIS

2      7.

3                    This is similar to the other

4    spreadsheet we looked at.   This is the spreadsheet

5    that's cited in the examiner's report as being the

6    source of the $10.1 billion number that we just went

7    through.   Is this a -- are you -- can you identify

8    the spreadsheet?

9         A.    It appears to be a tax basis balance

10   sheet.

11        Q.    And do you know whether Ally maintains a

12   tax basis balance sheet for the ResCap business?

13        A.    To my knowledge, we don't regularly

14   produce them on a normal cadence.   We produce them

15   as needed.   It's a bit of work as you can see.

16        Q.    Sure.   Do you know whether a tax

17   balance -- basis balance sheet has been prepared

18   since December 31st 2012?

19        A.    I don't know that one has been prepared

20   since then.

21        Q.    Did you participate in the preparation of

22   the tax basis balance sheet before you as Aretakis

23   Deposition Exhibit 7?

24        A.    No.

25        Q.    Do you know who prepared Aretakis

1                          JAMES ARETAKIS

2          Deposition Exhibit 7?

3               A.    I could speculate.

4               Q.    There's nothing about the form of the

5     document where you say that's Sean's document or

6     something like that?

7               A.    No.

8               Q.    And at least this tax basis balance sheet

9     reflects total liabilities of roughly $10.1 billion,

10    right?

11              A.    Right, as of 12/31/12.

12              Q.    What are the items that would change

13    between 12/31/12 and today on the tax basis balance

14    sheet at least with respect to total liabilities?

15              MR. MCKANE:   Objection to form.

16         Overbroad.

17              THE WITNESS:   Let me explain to you what I

18         expect to happen and why.

19              As of the last balance sheet I looked at

20         for ResCap, which was June 30th, it showed an

21         insolvency that was less than $2.1 billion.  So

22         I concluded that if Ally, in fact, paid

23         $2.1 billion and ResCap became solvent, that's

24         somewhat contrary to what we expect to happen

25         in the course of this case.

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 49 of 85

Page 49

1                     JAMES ARETAKIS

2             We expect to have many more liabilities

3        asserted, and not everyone will be satisfied in

4        full.   Those liabilities to be asserted are not

5        reflected on this tax basis balance sheet.

6             I believe, I understand that they're still

7        not reflected in the general ledger.   And so

8        when those facts become clearer, then I will

9        that one component of the gain loss that I

10       don't know today.   That's liabilities relieved.

11   BY MR. PERRY:

12       Q.   But at least in terms of -- well, let's

13   step away from liabilities relieved for a second.

14       A.   Yeah.

15       Q.   In terms of total liabilities, the

16   $10.1 billion number, would you expect those to have

17   changed materially between December 31st 2012 and

18   now?

19       A.   Well, of course, anything that was paid

20   off would not be on the balance sheet.

21       Q.   So they would be asset sales, right?

22       A.   Sure.

23       Q.   And then in terms of -- is the unknowable

24   number -- let's go back to 1812.

25       A.   Uh-hum.

Page 50

JAMES ARETAKIS

1

2      Q.    Do you see there's a line item less

3  creditor's expected recovery?

4      A.    Yes.

5      Q.    Is that the unknowable number from Ally's

6  perspective that will prevent you from doing with

7  any certainty the calculation that's reflected here

8  in 1812?

9          MR. MCKANE:  Objection to form.

10     Foundation.

11          THE WITNESS:  It's not the creditor's

12     expected recovery that will drive this

13     calculation; it's the total amount of the fixed

14     and determinable claim.

15  BY MR. PERRY:

16     Q.    Okay.

17     A.    This expect to recovery to me indicates

18  what they expect to -- expect to recover in terms of

19  proceeds from the bankruptcies.  It's a slightly

20  different concept.

21     Q.    I see.  So the number -- the tax liability

22  number, so liabilities for tax book purposes, will

23  change once total claims are determined in the

24  bankruptcy; is that your testimony?

25          MR. MCKANE:  Objection to form.

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 51 of 85

Page 51

1              JAMES ARETAKIS

2         Foundation.  Misstates testimony.

3              THE WITNESS:  Yeah, you confused me with

4         the question.  Help me again?

5    BY MR. PERRY:

6         Q.   Okay.  There's -- Ally maintains and

7    computes the total liabilities, ResCap's total

8    liabilities for tax purposes.  Okay?

9         A.   Okay.

10        Q.   And as I understood your testimony, at the

11   conclusion of the bankruptcy that number will need

12   to change based on what?

13             MR. MCKANE:  Objection to form.

14             THE WITNESS:  That number will change

15        based on liabilities that the court deems to be

16        valid claims against ResCap, but only to the

17        extent that they are fixed and determinable.

18        That's a tax term of art.

19   BY MR. PERRY:

20        Q.   So let's just go back to Aretakis 7.

21             Just by way of example, there's a

22   line item in here for accrued employee liability.

23   It's about halfway down.

24        A.   Yup.

25        Q.   There's a $140 million number.

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 52 of 85

Page 52

1                    JAMES ARETAKIS

2                Is it your testimony that

3    hypothetically, as part of the bankruptcy process,

4    the court allows employee claims of 150 million,

5    this number would be updated to 150 million at that

6    time because it was fixed and determinable and you

7    would change the book value; is that the substance

8    of your testimony?

9             MR. MCKANE:   Objection to form.

10            THE WITNESS:   That's possible.   But even

11       though in that line item, Counselor, there's a

12       timing difference.   So the book number is

13       different from the tax number already.   But if

14       the court said the final number shall be

15       150 million, then, yes, that would be a new

16       liability.

17        MR. PERRY:   If you want to go off the

18    record to switch the tape.

19        THE VIDEOGRAPHER:   The time is 3:40.   We

20    are going off the record.

21                   -   -   -

22             (Whereupon, a short recess

23       was taken.)

24                   -   -   -

25        THE VIDEOGRAPHER:   The time is 4:14.

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 53 of 85

Page 53

1              JAMES ARETAKIS

2          We're back on the record.

3    BY MR. PERRY:

4          Q.    So do you know as you sit here today what

5    Ally's net investment for tax purposes is in ResCap?

6          A.    I don't know that number as I sit here

7    today.

8          Q.    Is that a number that's knowable?

9          A.    Sure.

10         Q.    And who would know that number?

11         A.    I'm sure the controller and others on his

12   staff.

13         Q.    At the end of the day, once liabilities

14   are known and there's a taxable event in the

15   bankruptcy, is it possible that Ally will receive a

16   tax benefit in excess of $2.1 billion?

17             MR. MCKANE:    Objection to form.    Vague.

18         Overbroad.    Calls for speculation.

19             THE WITNESS:    Is it possible, yes, it's

20         possible.

21   BY MR. PERRY:

22         Q.    And as you understand it, there's been

23   nothing done within Ally as far as you know to

24   estimate the tax benefit once the case has been

25   wrapped up and liabilities are known, that exercise

Plaintiff's Objection 053:13–20 Inadmissible hearsay (FRE 802), irrelevant (FRE 401, 402), lack of personal knowledge (FRE 602), impermissible lay opinion

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 54 of 85

Page 54

1                        JAMES ARETAKIS

2    has not occurred as far as you know?

3         A.   That exchange calculation as far as I know

4    has not been done.

5         Q.   Now, I want to go back and focus on assets

6    and liability.

7                        -   -   -

8                   (Whereupon, Exhibit 8 was

9         marked for identification.)

10                       -   -   -

11   BY MR. PERRY:

12        Q.   Before you is Aretakis Deposition Exhibit

13   8.

14             It's an email from Mr. Frucci to a

15   variety of people.   I note for the record that you

16   don't appear to be included in the email.   Could you

17   just take a moment to review it.

18        A.   Uh-hum.   Okay.

19        Q.   A couple of questions.   Well, do you

20   understand the basis for Mr. Frucci's conclusion

21   that over the life of ResCap from the date of filing

22   through the date of the liquidating trust ResCap

23   would generate a taxable loss of 4.17 billion?

24        A.   I understand the concept that he's

25   discussing.

Plaintiff's Objection
54:12–55:18 Inadmissible hearsay (FRE 802),
irrelevant (FRE 401, 402), lack of personal
knowledge (FRE 602), lack of foundation
(FRE 602, 901, 903), impermissible lay
opinion

Page 55

                        JAMES ARETAKIS

1

2       Q.   Okay.   And what's your understanding of

3   that concept?

4       A.   He is expressing the, if I understand this

5   correctly, the total or net effect of -- taxable

6   effect coming from ResCap post the filing date.

7       Q.   Does it in adjusting post the filing date,

8   do you understand Mr. Frucci's analysis to do

9   anything other than factor in a $2.1 billion

10  contribution?

11          MR. MCKANE:   Objection to form.

12  Foundation.   Calls for speculation.

13          THE WITNESS:   Mr. Frucci's last sentence

14      says ResCap will generate a taxable loss of

15      4.17 billion, which represents a tax basis

16      insolvency since the date of filing, plus the

17      2.1 billion.   So he is expressing a total

18      taxable loss attributable to this liquidation.

19  BY MR. PERRY:

20      Q.   If you go to the second -- well, it's the

21  schedule attached to the email.

22          Do you know Mr. Frucci uses a tax

23  basis at 5/14 of 12.7 billion; do you see that?

24      A.   Yes.

25      Q.   Do you know where he comes up with that

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 56 of 85

Page 56

1                    JAMES ARETAKIS

2      number?

3           A.   5/14, do we know what year this is,

4      5/14/11 -- I mean, excuse me, '12?

5           Q.   If you look at the next page --

6           A.   It seems to indicate 5/14/12, right, with

7      a filing date?

8           Q.   Yeah, which is the filing date.

9           A.   Yes.  Okay.  So I see 4.17 billion number

10     on here, yup.

11                    Now your question?

12          Q.   If you go back and look at the tax basis

13     balance sheet that we were reviewing as of

14     12/31/2012.

15          A.   Uh-hum, right.

16          Q.   You'll see the total assets are down to

17     11.3 billion.

18          A.   Uh-hum.

19          Q.   Do you have any understanding of what

20     could cause that level of -- that decrease in total

21     assets between May of 2012 and the conclusion of

22     2012?

23          A.   If you sold assets, certainly your balance

24     sheet would shrink.

25          Q.   Okay.

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 57 of 85

Page 57

JAMES ARETAKIS

1

2     A.   You would have to take then the proceeds

3  and reduce liabilities.

4     Q.   Okay.  Well, that was my next question.

5          You see assets go down from 12/7 to

6  1/13, so roughly a billion and a half.  But if you

7  compare the liability movement.

8     A.   Uh-hum.

9     Q.   You go from 10/6 to 10/3, so only

10  300 million.

11          Do you have any explanation for the

12  difference --

13     A.   I do not off the top of my head.

14     Q.   Okay.  Who would know?

15     A.   Controller staff at ResCap and whoever

16  perhaps prepared this tax basis balance sheet.

17     Q.   Now, does Mr. Frucci's analysis take into

18  account in generating the taxable loss, does his

19  analysis take into account any historical NOL's or

20  capital losses that would have been generated?

21          MR. MCKANE:  Objection.  Form.

22     Foundation.  Calls for speculation.

23          THE WITNESS:  Only if there's tax basis

24          and ResCap assets included in those attributes.

25

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 58 of 85

Page 58

1                           JAMES ARETAKIS

2    BY MR. PERRY:

3         Q.    And do you --

4         A.    And I would -- okay.

5         Q.    Do you have any reason to believe that his

6    tax basis assets would include those attributes?

7         A.    No, I don't think they do.

8                         -   -   -

9              (Whereupon, Exhibit 9 was

10         marked for identification.)

11                         -   -   -

12   BY MR. PERRY:

13         Q.    Before you is Aretakis Deposition Exhibit

14   9.

15              And it's an 8-K that was filed --

16         MR. MCKANE:    July 31st.

17   BY MR. PERRY:

18         Q.    -- July 31st.    Is dated July 31st 2013.

19              I'm specifically interested in the

20   text that starts on the second page and carries over

21   to the third page.    I'm directing your attention

22   to -- take a moment to review it.    I'm going to

23   start asking questions about note four, but take

24   your time and look.

25         A.    Okay.

Plaintiff's Objection
58:13–59:06 Inadmissible hearsay (FRE
802), irrelevant (FRE 401, 402), lack of
personal knowledge (FRE 602), lack of
foundation (FRE 602, 901, 903)

Page 59

JAMES ARETAKIS

2      Q.    There note four reflects a $1.6 billion

3   charge resulting from Ally's comprehensive

4   settlement agreement, the ResCap Chapter 11

5   bankruptcy case; do you see that?

6      A.    Uh-hum.

7      Q.    What is the $1.6 billion, where does that

8   come from?

9      A.    I could guess for you.

10     Q.    Well, it's -- there was a $2.1 billion

11  payment, right?

12     A.    Right.

13         MR. MCKANE:    An agreement to pay 2.1

14     billion.

15  BY MR. PERRY:

16     Q.    An agreement to pay $2.1 billion.

17     A.    Uh-hum.

18     Q.    As I understand it, some of that was paid

19  by insurance?

20     A.    Well, let's take a look first.    This is --

21  the 1.6 billion charge would have been based on -- I

22  believe the increment of that 2.1 over the 750 that

23  was already accrued, plus other items that were

24  discussed in Mr. Rohlig's memo.

25              So it's probably the sum of 1.35 and

Plaintiff's Objection
59:18–60:02
Inadmissible hearsay (FRE
802), irrelevant (FRE 401,
402), lack of personal
knowledge (FRE 602)

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 60 of 85

Page 60

JAMES ARETAKIS

some other items.  Feels right to me.

Q.    Do you know what the other items are based

on your review of Mr. Rohlig's memo?

A.    Well, Mr. Rohlig's memo talks about some

insurance recoveries and mentions some increases to

litigation reserve.  I don't know if that gets you

to 1.6.

Q.    Okay.  Why would the insurance recoveries

be included in the charge?

A.    I don't know the origin of this 1.6 number

here.  I'm speculating, so I can't tell you if it's

in there or not.

MR. MCKANE:  I'd ask you not to speculate.

THE WITNESS:  Okay.

BY MR. PERRY:

Q.    Okay.  But in any event, there was a 1.6

billion charge taken in the second quarter of 2013

in connection with the settlement, correct?

A.    Appears to be from this document.

Q.    And as between the $1.35 billion

incremental payment and the $1.6 billon number, you

don't know and are unable to deduce what makes up

the difference between 135 and 1.6, right?

A.    As I sit here, I don't know the answer to

Plaintiff's Objection 060:17 – 063:12 Inadmissible hearsay (FRE 802), irrelevant (FRE 401, 402), lack of personal knowledge (FRE 602), lack of foundation (FRE 602, 901, 903), impermissible lay opinion

Page 61

1                    JAMES ARETAKIS

2    that question.

3        Q.    And had Ally previously taken a charge for

4    the $750 million settlement?

5        A.    Uh-hum.

6        Q.    You got to answer yes or no.

7        A.    Oh, I'm sorry.

8              Had they, yes, they did.

9        Q.    Okay.   And you see the text here says this

10   was offset by approximately 600 million in tax

11   benefits related to the settlement charge and the

12   sales of Ally's international businesses; do you see

13   that?

14       A.    Yes.

15       Q.    Is the $510 million tax benefit identified

16   in Mr. Rohlig's memo part of the $600 million in

17   offset identified in the 8-K that's before you now?

18       A.    It would appear to be.

19       Q.    And the way Mr. Rohlig got to the

20   $510 million benefit is he simply took the

21   $1.35 billion contemplated payment and multiplied it

22   by the .3782 tax rate at the -- that was operable at

23   the time, correct?

24       A.    Correct.

25       Q.    Okay.   Just out of curiosity, why does he

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 62 of 85

Page 62

JAMES ARETAKIS

2  use 37.82 rather than 35 percent?

3       A.    Thirty-five was federal only.   The balance

4  would be state and local.

5       Q.    Okay.   And do you know whether a similar

6  tax asset was recorded with respect to the $750

7  million payment?

8       A.    Yes.

9       Q.    Why don't we go back to Mr. Rohlig's

10  memorandum.   If you go to page three, there's a

11  section heading that reads tax basis and ResCap net

12  assets about halfway down.

13       A.    Yeah.

14       Q.    It says on the filing date Ally's tax

15  basis in ResCap's assets exceeded ResCap's

16  liabilities that were recognized for tax purposes by

17  2.07 billion?

18       A.    Right.

19       Q.    And that's consistent with Mr. Frucci's

20  analysis that we were looking at earlier, correct?

21       A.    Yes.

22       Q.    And just for the record, Mr. Frucci's

23  analysis is Aretakis Deposition Exhibit --

24       A.    Eight.

25       Q.    Okay.   And it says since the filing date

Page 63

JAMES ARETAKIS

1

2  this net tax basis has been reduced for both

3  deductible and nondeductible expenses incurred at

4  ResCap, but the net amount is estimated to remain

5  significantly positive at this time.

6            Do you believe that to be a correct

7  statement?

8            MR. MCKANE:  Objection to form.

9            THE WITNESS:  That amount is expected to

10      remain significantly positive, at this time,

11      yes, the time of the writing of this

12      memorandum, that's correct.

13  BY MR. PERRY:

14      Q.    Okay.  Fair enough.  If you go down to the

15  next paragraph, the second sentence.

16      A.    Uh-hum.

17      Q.    Ally expects to receive no cash proceeds,

18  but expects to be released from all ResCap

19  liabilities upon the transfer to liquidating trust.

20  If ResCap is tax insolvent upon the transfer date,

21  Ally will record a net loss on the transfer equal to

22  its net tax basis; do you see that?

23      A.    Yes.

24      Q.    Do you believe that to be an accurate

25  statement?

Page 64

JAMES ARETAKIS

1

2      A.    That is an accurate statement.

3      Q.    It says if on the other hand -- well,

4  strike that.

5            If ResCap insolvent tax insolvent on

6  the transfer date, the excess of fix liabilities

7  over asset tax basis will generate a net taxable

8  income.

9            Do you believe that to be accurate?

10      A.    I believe that to be accurate.

11      Q.    And then it says the net tax loss or net

12  taxable income could be a combination of gain or

13  loss on the disposition of assets and cancellation

14  of debt income.

15            Do you believe that to be accurate?

16      A.    I think subsequent review as concluded

17  that -- that last clause and cancellation of debt

18  income will be -- will not be the case.  So that --

19  that statement is not entirely accurate.

20      Q.    So the view now after subsequently review

21  is that the net tax loss or net taxable income would

22  be a gain or a loss on the disposition of assets; is

23  that right?

24      A.    That is correct.

25      Q.    And focusing your attention on the next

Page 65

1                    JAMES ARETAKIS

2    paragraph.

3        A.   Uh-hum.

4        Q.   I take it the reference -- based on your

5    subsequent review, the references to C-O-D-I are

6    incorrect there?

7        A.   That is a correct statement.

8        Q.   But everything else in that paragraph is

9    correct?

10            MR. MCKANE:  Objection to form.  Overly

11        broad.

12            THE WITNESS:  An increase to tax basis, I

13        think that statement misses one other

14        possibility.

15    BY MR. PERRY:

16        Q.   What's the other possibility?

17        A.   The increase of tax basis from the cash

18    settlement amount will either increase a tax loss or

19    decrease a tax gain.

20        Q.   Let's go back to the footnote 1812 on the

21    table contained therein.

22            Other than the -- do you understand

23    this table to estimate the amount of tax benefit

24    received by Ally in connection with the ResCap

25    bankruptcy to be $1.77 billion?

Page 66

1                    JAMES ARETAKIS

2          MR. MCKANE:  Objection to form.

3      Foundation.  Calls for speculation.

4          THE WITNESS:  That's what it purports to

5      show.

6  BY MR. PERRY:

7      Q.   And of course, it assumes a contribution

8  of 750 million, correct?

9      A.   I see that number on here.

10     Q.   And you would agree with me that if one

11 adjusted the analysis to include the incremental

12 1.35 billion that Ally ultimately agreed to pay, the

13 tax benefit goes up, correct?

14         MR. MCKANE:  Objection to form.  Calls for

15     speculation.

16         THE WITNESS:  Not quite.  Can we --

17     throughout this discussion, we've talked about

18     ResCap assets and ResCap tax benefits, and I

19     think it might be appropriate here to talk --

20     to mention once again that all these assets and

21     such are Ally's tax assets.

22         But in this case, there seems to be a

23     combination of ResCap losses that are generated

24     at ResCap and a settlement amount that's paid

25     by Ally, and I suppose I wouldn't consider

JSN
Objection
66:10-67:13
Irrelevant
(FRE 401,
402)

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 67 of 85

Page 67

1               JAMES ARETAKIS

2          those to be combinable items.

3    BY MR. PERRY:

4          Q.    Okay.

5          A.    So I -- I guess I would disagree with your

6    statement.

7          Q.    Okay.  Well, so you could do -- would it

8    satisfy your objection if you backed out the 750

9    from this analysis and analyzed the tax benefit not

10   including the settlement payment?

11         A.    I can't say even by pulling that out that

12   I'm affirming this calculation.

13         Q.    I don't want you to affirm it.

14         A.    Yeah.

15         Q.    I'm trying to get a sense of the potential

16   tax benefit from Ally's perspective as a result of

17   its investment in ResCap, the losses created

18   therefrom --

19         A.    Uh-hum.

20         Q.    -- as part of the bankruptcy process --

21         A.    Uh-hum.

22         Q.    -- and also the tax benefits created as

23   part of the settlement payment that was part of the

24   bankruptcy process at least according to the --

25         A.    All of those items go into a tax gain or

Page 68

1                    JAMES ARETAKIS

2     loss calculation.

3         Q.    Okay.

4         A.    I'm with you there.

5         Q.    And your -- as I understood your objection

6     to, you know, either my line of questioning or the

7     table is you would analyze the tax benefits

8     attributed to the gain or loss on the ResCap

9     investment separately from the tax benefits created

10    by the settlement payment, right?

11              MR. MCKANE:  I'm going to object.

12         Misstates his prior testimony.

13              MR. PERRY:  I'm just trying to get a sense

14         of what you're saying.

15              MR. MCKANE:  Go ahead and try to do it

16         again.

17              THE WITNESS:  Would I analyze them

18         separately?  No, not really.  I would treat

19         them -- all of this as ResCap assets -- excuse

20         me, misstated that -- Ally assets and Ally

21         liabilities.

22              I thought you were trying to identify

23         certain -- what we were calling ResCap assets

24         and ResCap liabilities.

25

Page 69

1                JAMES ARETAKIS

2    BY MR. PERRY:

JSN Objection
69:3-17
Irrelevant (FRE
401, 402)

3        Q.    I understand the position you're

4    articulating is in effect these were never ResCap's

5    tax attributes.   That's Ally's position, right?

6        A.    That is true.

7        Q.    Okay.   And if one -- and the examiner's

8    analysis, you would agree with me at least

9    identifies and contemplates the tax attributes as

10   belonging to ResCap in some way, shape or form,

11   right?

12            MR. MCKANE:   I'm going to object to that.

13        That misstates the examiner's report.

14   BY MR. PERRY:

15        Q.    Answer the question.

16        A.    I don't know what the examiner concluded

17   with respect to who owns these attributes.

18       Q.    Okay.   So -- but in terms of the tax

19   benefits that run to Ally as a result of the

20   conclusion of the ResCap bankruptcy process, there's

21   in your view two types of tax benefits, there's the

22   benefits that derive out of the $2.1 billion

23   settlement payment, right?

24            MR. MCKANE:   I'm going to object.

25        Misstates his prior testimony.

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 70 of 85

Page 70

1              JAMES ARETAKIS

Plaintiff's Objection

2    BY MR. PERRY:    70:03–71:20 Inadmissible hearsay (FRE 802), irrelevant (FRE 401, 402), lack of personal
knowledge (FRE 602), lack of foundation (FRE 602, 901, 903), impermissible lay opinion

3         Q.    Is it fair to say you consider it all as

4    part of -- in the same way that the examiner built

5    in the $750 million contribution to his analysis of

6    the tax benefit, is that in your view an appropriate

7    thing -- way to think about the ultimate tax benefit

8    to Ally as a result of these cases?

9         A.    Ally's ultimate taxable income or loss in

10   this case will reflect that $2.1 billion

11   contributed, yes, clearly.

12        Q.    So this is an objection that my client

13   filed to the original disclosure statement in the

14   case.   And if you look at the second to last page,

15   you'll see that there's an analysis that simply

16   rolls forward the examiner's chart in 1812 and adds

17   to it the $1.35 billion supplemental settlement

18   payment; do you see that?

19        A.    Uh-hum.

20                        -   -   -

21             (Whereupon, Exhibit 10 was

22        marked for identification.)

23                        -   -   -

24        MR. PERRY:   That's Aretakis 10 for the

25   record.

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 71 of 85

Page 71

1                    JAMES ARETAKIS

2        BY MR. PERRY:

3            Q.    Now, at some point in time, you, Ally,

4        will be able to do precisely the same analysis

5        that's set forth in Aretakis 10, correct?

6            A.    Uh-hum, that's correct.

7            Q.    And on Aretakis 10, what are the items on

8        here that are unknown at this point in time that

9        make it impossible for you to -- to determine with

10       precision the final tax benefit to AFI as a result

11       of the ResCap bankruptcy?

12           A.    Well, first let me point out that we

13       wouldn't do precisely this calculation because it

14       includes cancellation of debt income that doesn't

15       reflect the exchange I've been describing.

16           Q.    Right.

17           A.    But one of the items on here that is used

18       in the calculation is the very first line, ResCap

19       tax liabilities.    That's an item I will not know

20       until that liquidation date.

21           Q.    Okay.    Anything else on here you will not

22       know until some point later in the case or after the

23       case is done?

24           A.    Well, I see that creditor's expected

25       recovery line I -- I would say we wouldn't know it,

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 72 of 85

Page 72

1                    JAMES ARETAKIS
2    but I think under my exchange calculation, we
3    wouldn't care.
4                    Also, tax basis and ResCap assets
5    will of course change, and I note that the NOL and
6    capital loss numbers as of 12/31/12, things change.
7         Q.   Have those numbers been updated in 2013?
8         A.   Yeah, we -- they would be updated on a
9    quarterly basis.
10        Q.   And do you have any idea as you sit here
11   today --
12        A.   I'm sorry, I do not.
13        Q.   -- what those numbers are?
14             MR. MCKANE:  Can you wait until he
15        finishes his question before you answer.
16             THE WITNESS:  Okay.
17   BY MR. PERRY:
18        Q.   Do you believe Ally would have
19   September 30 numbers at this point in time for the
20   NOL's generated and capital losses generated?
21        A.   I expect we have estimates.  We don't
22   compute with such precision.
23        Q.   Would you expect those numbers to have
24   changed materially during the course of 2013?
25        A.   I'm not familiar with ResCap's operating

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 73 of 85

Page 73

1                        JAMES ARETAKIS

2    results in 2013.

3         Q.    And then on the -- you testified earlier

4    you wouldn't care about the creditor's expected

5    recovery.  Is that because of the change in thinking

6    about cancellation of debt income or is there some

7    other reason that in performing this type of

8    calculation you wouldn't care about the creditor's

9    expected recovery?

10        A.    I don't care because CODI -- that's

11   relevant for the CODI calculation.

12        Q.    And how would you perform the calculation

13   under the updated concept, which is refresh my

14   recollection, it's not CODI, it's called -- what are

15   you calling it now?

16        A.    Gain or loss on the exchange.  I would --

17   just to repeat your question, you want to know how I

18   calculate that gain or loss again?

19        Q.    Yeah.

20        A.    It's the exchange of assets --

21              THE VIDEOGRAPHER:  The time is 4:58.  We

22        are going off the record.

23                        -   -   -

24              (Whereupon, a short recess

25        was taken.)

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 74 of 85

Page 74

1          JAMES ARETAKIS

2               -   -   -

3          THE VIDEOGRAPHER:   The time is 5:11 p.m.

4      We are back on the record.

5   BY MR. PERRY:

6          Q.   So, when we broke, Mr. Aretakis, we were

7   talking about the conclusions that you and your

8   colleagues had drawn about there not being

9   cancellation of debt income in this case.

10              Is -- and as I understand it, you

11  would simply treat for tax purposes, you would

12  simply calculate a net gain or loss on the ResCap

13  assets, correct?

14          A.   In ResCap liabilities.

15          Q.   Okay.   And is that because you believe

16  that the ResCap debt being satisfied is nonrecourse

17  debt for tax purposes?

18          A.   That is correct.

19          Q.   Okay.   So, if nonrecourse debt is

20  satisfied by transferring the assets that secure

21  that debt to the creditors, there would then be a

22  net gain or loss equal to the difference between the

23  amount of liabilities and the basis of the assets,

24  right?

25          A.   The amount of the liabilities are

Plaintiff's
Objection
74:06--77:08
Inadmissible
hearsay (FRE
802),
irrelevant
(FRE 401,
402), lack of
personal
knowledge
(FRE 602),
lack of
foundation
(FRE 602,
901, 903),
impermissible
lay opinion

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 75 of 85

Page 75

1                    JAMES ARETAKIS

2    recognized for tax purposes fixed and determinable

3    and the tax basis of the assets.

4         Q.    Okay.  So back to Aretakis 10 and the

5    chart.  I just want to try and do that particular

6    calculation without the cancellation of debt income

7    concept.

8                    So am I correct that the tax basis,

9    assuming the analysis in this chart would be the

10   11.3 number, plus the 2.1?

11        A.    Yeah, if we're using just for explanation

12   of the nature of the calculation tax basis and net

13   plus the 2.1.

14        Q.    Okay.  And then the liabilities would be

15   the 10.1 liability number, correct?

16        A.    As they exist on the liquidation date.

17        Q.    And so ultimately, bottom line when you

18   run that through the analysis, you come up with the

19   same numbers that you would if you use the

20   cancellation of debt income concept, right?

21        MR. MCKANE:  Objection to form.

22   Foundation.  Speculation.

23        THE WITNESS:  Come up with the same

24   numbers?

25

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 76 of 85

Page 76

1                         JAMES ARETAKIS

2    BY MR. PERRY:

3         Q.    Well, let me just --

4         A.    Help me out?

5         Q.    Let me help, okay, as best I can.

6               Do you -- using concepts of

7    cancellation of debt income, you have losses of 5.9

8    billon offset by cancellation of debt income of

9    2.5 billion, right?

10        A.    Okay.

11        Q.    And that equates to using rough numbers

12   3.4 billion; do you see that?

13             MR. MCKANE:   If you're asking if 5.2 minus

14   3.2 equals --

15             MR. PERRY:   We'll calculate it.

16   BY MR. PERRY:

17        Q.    Okay.  So 5.904 minus 2571 equals

18   3.33 billion.

19        A.    Okay.

20        Q.    Okay?

21        A.    Uh-hum.

22        Q.    Now, you'd agree with me that instead of

23   doing that calculation to determine the tax benefit

24   to AFI, I would simply excise the line, the 5.904

25   line and the 2571 line, and instead perform the

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 77 of 85

Page 77

                    JAMES ARETAKIS

2   following calculation 11387 plus 2100, less the

3   basis of 10154, correct?

4       A.    That appears to be correct.

5       Q.    Okay.  And just for the record, that

6   calculation gives you an output of 333, same output,

7   correct?

8       A.    That seems reasonable, yes.

9            MR. PERRY:  Okay.  I don't have anything

10      else.

11           MR. MCKANE:  I do.

12           Anyone else have questions?

13                    -   -   -

14             E X A M I N A T I O N

15                    -   -   -

16  BY MR. MCKANE:

17      Q.    Sir, let's go back to Sean Rohlig's memo,

18  which is Aretakis 6.  And I want to direct your

19  attention to the third page.

20      A.    Okay.

21      Q.    Do you recall counsel for the JSN asked

22  you a series of questions about portions of this

23  page?

24      A.    Yes.

25      Q.    All right.  Let me direct you to a portion

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 78 of 85

Page 78

1                    JAMES ARETAKIS

2    of the page that he didn't ask you questions about.

3                    Do you see the heading tax basis and

4    ResCap net assets?

5         A.    Yes.

6         Q.    In that first full paragraph --

7         A.    Yes.

8         Q.    -- I want to direct you to the last

9    sentence of that paragraph.

10                    Do you see where it says it is not

11   known whether Ally will continue to be in a net tax

12   base position, open parens, tax solvent, close

13   parens, upon the transfer of assets liquidating

14   trust or ResCap's fixed liabilities would exceed the

15   tax basis in assets on the date, open parens, tax

16   insolvent, closed parens?

17        A.    Yes.

18        Q.    Was that statement true at that point in

19   time when the memo was authored June 19, 2013?

20        A.    Yes.

21        Q.    Is it true still today?

22        A.    Yes.

23        Q.    Why is it true?

24        A.    Because I don't know what liabilities will

25   become fixed and determinable for tax purposes on

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 79 of 85

Page 79

1                    JAMES ARETAKIS

2    that liquidate date.

3         Q.    And therefore, sir, let me direct your

4    attention back to Aretakis 10, which is the

5    objection to the Ad Hoc Group of JSN --

6         A.    Uh-hum.

7         Q.    -- to the disclosure statement.

8               Let's go back to the second to last

9    page for a second.

10        A.    Yes.

11        Q.    Do you see the line item that they were

12   using ResCap tax liabilities?

13        A.    Yes.

14        Q.    The amount that was used 10.154 billion,

15   do you see that amount?

16        A.    Yes.

17        Q.    Is that the amount that you don't know

18   yet?

19        A.    That's correct.

20        Q.    And how will you know that amount, how

21   will that amount of ResCap tax liabilities be

22   determined?

23        A.    On that date, we will have to examine what

24   liabilities the bankruptcy court allows as claims

25   against ResCap.  Some of those liabilities will be

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 80 of 85

Page 80

                         JAMES ARETAKIS

1

2   fixed for tax purposes, and I can only -- I expect

3   that some will not be.

4                    We'll have to go through all those

5   claims, see what's firm, what is not, and that's how

6   we will determine that number.

7        Q.    And on what date will you be doing that

8   calculation?

9        A.    It would be effective as of the date that

10  Ally's interest in ResCap is canceled.

11       Q.    And, sir, the line below that, the

12  creditor's expected recovery, do you see that, sir?

13       A.    Yes, I do.

14       Q.    Is that a factor in your analysis at all?

15       A.    No, it is not.  That's irrelevant to my

16  calculation.

17            MR. MCKANE:  That's all I have.  Thank

18       you.

19            THE VIDEOGRAPHER:  The time is 5:20.  We

20       are off the record.

21                    -   -   -

22            (Whereupon, the deposition

23       was concluded at 5:20 p.m.)

24                    -   -   -

25

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 81 of 85

Page 81

JAMES ARETAKIS

CERTIFICATE

1      I HEREBY CERTIFY that the

2  proceedings, evidence and objections are

3  contained fully and accurately in the

4  stenographic notes taken by me upon the

5  deposition of JAMES ARETAKIS taken on

6  November 6, 2013 and that this is

7  a true and correct transcript of same.

8  Date: 11/6/2013

_____

Jennifer Miller, RPR and

Notary Public

Page 82

1                    JAMES ARETAKIS

2                      I N D E X

3   WITNESS:                              PAGE

4   JAMES ARETAKIS

5                BY MR. PERRY              6

6                BY MR. MCKANE            77

7                   -   -   -

8                E X H I B I T S

9   NUMBER              DESCRIPTION       PAGE

10  Exhibit 1      Notice of Subpoena from   11

11                 Ad Hoc Group of Junior

12                 Secured Noteholders to

13                 Ally Financial, Inc.

14  Exhibit 2      ResCap Deferred Inventory  15

15                 As of December 31, 2012

16  Exhibit 3      Report by Arthur J.        23

17                 Gonzalez

18  Exhibit 4      Ordinary and Capital       24

19                 Losses Generated by ResCap

20  Exhibit 5      Form 10-K                  30

21  Exhibit 6      Memorandum of June 19,     38

22                 2013

23  Exhibit 7      Tax Basis Balance Sheet    46

24  Exhibit 8      Email dated 6/21/2013      54

25  Exhibit 9      Form 8-K                   58

Page 83

1                          JAMES ARETAKIS

2   NUMBER                 DESCRIPTION                PAGE

3   Exhibit 10             Objection of Ad Hoc        70

4                          Group of Junior Secured

5                          Noteholders

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

12-12020-mg    Doc 5803-11    Filed 11/18/13    Entered 11/18/13 11:51:57    Exhibit
Deposition Designations: James Aretakis    Pg 84 of 85

Page 84

1                         JAMES ARETAKIS

2                         ERRATA SHEET

3        PAGE     LINE     CHANGES OR CORRECTION AND REASON

4        _____

5        _____

6        _____

7        _____

8        _____

9        _____

10       _____

11       _____

12       _____

13       _____

14       _____

15       _____

16       _____

17       _____

18       _____

19       _____

20       _____

21       _____

22       _____

23       _____

24       _____

25       _____

12-12020-mg   Doc 5803-11   Filed 11/18/13   Entered 11/18/13 11:51:57   Exhibit
Deposition Designations: James Aretakis   Pg 85 of 85

Page 85

JAMES ARETAKIS

1

2       I have inspected and read my

3   deposition as captioned above and have

4   listed all changes and corrections above,

5   along with my reasons therefore.

6

7   DATE:_____

8

9   SIGNATURE OF DEPONENT: _____

10

11      I have read the foregoing transcript

12   of my deposition and it is true, correct

13   and complete, to the best of my knowledge,

14   recollection and belief, except for the

15   corrections noted hereon and/or list of

16   corrections, if any, attached on a separate

17   sheet herewith.

18                    _____

19                    JAMES ARETAKIS

20

21

22      Subscribed and sworn to before me

23   this _____ day of _____, 2013.

24   _____

25   Notary Public