|  |  |
|---|---|
| Hearing Date: | December 17, 2013 at 10:00 a.m. (ET) |
| Objection Deadline: | December 9, 2013 at 4:00 p.m. (ET) |

SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Robert D. Nosek
Justin S. Krell

*Special Counsel for the*
*Official Committee of Unsecured Creditors*
*of Residential Capital, LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                              Chapter 11

                                                    Case No. 12-12020 (MG)
RESIDENTIAL CAPITAL, LLC a/k/a
RESIDENTIAL CAPITAL CORPORATION, et al.             (Jointly Administered)

                        Debtors.
-------------------------------------------------------------------x

**THIRD INTERIM APPLICATION OF SILVERMANACAMPORA LLP, SPECIAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM MAY 1, 2013 THROUGH AUGUST 31, 2013**

**SUMMARY SHEET PURSUANT TO THE UNITED STATES TRUSTEE GUIDELINES**

| | |
|---|---|
| Name of Applicant: | SilvermanAcampora LLP |
| Role in Case: | Special Counsel to Official Committee of Unsecured Creditors |
| Retainer Paid: | None |
| Application Period: | May 1, 2013 to August 31, 2013 |
| Fees Requested: | $422,933.50 |
| Expenses Requested: | $2,821.54 |
| Total Amount Requested: | $425,755.04 |

**FEE APPLICATION:**

| Names of Professionals and Paraprofessionals | Year Admitted | Hours | Rate | Total for Application |
|---|---|---|---|---|
| Kenneth P. Silverman, Esq., Partner | 1981 | 0.70 | $650.00 | $455.00 |
| Anthony C. Acampora, Esq., Partner | 1984 | 7.30 | $595.00 | $4,343.50 |
| Ronald J. Friedman, Esq., Partner | 1997 | 37.35 | $550.00 | $20,542.50 |
| Gerard R. Luckman, Esq., Partner | 1994 | 51.80 | $550.00 | $28,490.00 |
| Peter Marullo, Esq., Partner | 1987 | 0.90 | $550.00 | $495.00 |
| Robert J. Ansell, Esq., Partner | 1994 | 0.30 | $495.00 | $148.50 |
| Jack B. Friedman, Esq., Counsel | 1969 | 3.30 | $475.00 | $1,567.50 |
| Robert D. Nosek, Esq., Counsel | 1999 | 199.28 | $425.00 | $84,694.00 |
| Brett S. Silverman, Esq., Associate | 2001 | 6.60 | $340.00 | $2,244.00 |
| Justin Krell, Esq., Associate | 2007 | 272.80 | $340.00 | $92,752.00 |
| Cooper J Macco, Esq., Associate | 2013 | 44.70 | $200.00 | $8,940.00 |
| Jessi L. Kleinman, Esq., Associate | 2013 | 9.30 | $200.00 | $1,860.00 |
| Brian Powers, Esq., Associate | 2013 | 545.10 | $200.00 | $108,660.00 |
| Christopher J. Rubino, Esq., Associate | 2013 | 110.50 | $200.00 | $22,100.00 |
| Terrence M. McKelvey Law Clerk | N/A | 12.10 | $165.00 | $1,996.50 |
| Sophia Perna, Paralegal | N/A | 180.10 | $195.00 | $34,963.50 |
| Lynne M. Manzolillo, Paralegal | N/A | 4.90 | $195.00 | $916.50 |
| Andres Nunez, Paralegal | N/A | 0.20 | $195.00 | $39.00 |
| Deanna Caliendo, Legal Assistant | N/A | 0.70 | $110.00 | $77.00 |

| Names of Professionals and Paraprofessionals | Year Admitted | Hours | Rate | Total for Application |
|---|---|---|---|---|
| Melissa Cohen, Legal Assistant | N/A | 0.70 | $110.00 | $77.00 |
| Lyndsey S. Collins, Legal Assistant | N/A | 64.20 | $95.00 | $6,099.00 |
| Gina F. Giglio, Legal Assistant | N/A | 19.00 | $95.00 | $1,805.00 |
|  |  |  |  |  |
| **Voluntary Reduction:**[1] |  | **6.38** |  | **$1,763.00** |
| **ATTORNEY TOTALS WITH BLENDED HOURLY RATE** |  | 1043.00 | $282.74 | $294,895.50 |
| **ALL TIMEKEEPER TOTALS WITH BLENDED HOURLY RATE** |  | 1130.20 | $279.55 | $315,950.00 |
| **TOTAL FEES REQUESTED TO BE AWARDED** |  |  |  | **$422,933.50** |
| **TOTAL EXPENSES REQUESTED TO BE AWARDED** |  |  |  | **$2,821.54** |
| **TOTAL FEES AND EXPENSES REQUESTED TO BE AWARDED** |  |  |  | **$425,755.04** |

---

[1] After further review of Applicant's time records, and to ensure compliance with the UST Guidelines, Applicant agrees to voluntarily reduce its fees and expenses as described on **Exhibit D** annexed to the Application.

Hearing Date:        December 17, 2013 at 10:00 a.m. (ET)
Objection Deadline:  December 9, 2013 at 4:00 p.m. (ET)

SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Robert D. Nosek
Justin S. Krell

*Special Counsel for the
Official Committee of Unsecured Creditors
of Residential Capital, LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                          Chapter 11
                                                Case No. 12-12020 (MG)
RESIDENTIAL CAPITAL, LLC a/k/a
RESIDENTIAL CAPITAL CORPORATION, et al.         (Jointly Administered)

                        Debtors.
-------------------------------------------------------------------x

**THIRD INTERIM APPLICATION OF SILVERMANACAMPORA LLP, SPECIAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM MAY 1, 2013 THROUGH AUGUST 31, 2013**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

SilvermanAcampora LLP ("**Applicant**"), special counsel to the Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") in the above-referenced chapter 11 cases, (these "**Chapter 11 Cases**"), respectfully submits its third application for an interim allowance of compensation and reimbursement of expenses (this "**Application**") pursuant to the provisions of sections 330(a) and 331 of Title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), the

1

United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "**UST Guidelines**"), and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 797] entered in these Chapter 11 Cases (the "**Interim Compensation Order**"), and respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## BACKGROUOND

3. On May 14, 2012 (the "**Petition Date**"), the Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Committee by selecting the following nine parties to serve as members of the Committee: (i) Wilmington Trust, N.A.; (ii) Deutsche Bank Trust Company Americas; (iii) The Bank of New York Mellon Trust Company, N.A.; (iv) MBIA Insurance Corporation; (v) Rowena L. Drennen; (vi) AIG Asset Management (U.S.), LLC; (vii) U.S. Bank National Association; (viii) Allstate Life Insurance Company; and (ix) Financial Guaranty Insurance Corporation.

5. On November 16, 2012, Applicant filed an Application of the Official Committee of Unsecured Creditors for Order Authorizing and Approving the Retention of

SilvermanAcampora LLP as Special Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to October 25, 2012 [Docket No. 2216] (the "**Retention Application**"). On November 30, 2012, this Court entered the Order Authorizing and Approving the Retention of SilvermanAcampora LLP as Special Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to October 25, 2012 [Docket No. 2315] (the "**Retention Order**"). Pursuant to the Retention Order, Applicant represents the Committee in connection with issues and matters relating to the Debtors' current and former borrowers (collectively, the "**Borrowers**").

6. On March 14, 2013, Applicant filed its first interim application (the "**First Interim Fee Application**") for the allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred from October 25, 2012 through December 31, 2012 (the "**First Interim Fee Period**"). In the First Interim Fee Application, Applicant sought the interim allowance of fees in the aggregate amount of $59,525.00 (the "**First Interim Fees**"), and the interim allowance of the reimbursement for actual and necessary expenses in the amount of $129.32 (the "**First Interim Expenses**").

7. By this Court's order dated April 23, 2013, the First Interim Fees and the First Interim Expenses were allowed in full (the "**First Interim Fee Order**"). Pursuant to the First Interim Fee Order, Applicant received payment from the Debtors for (i) the full amount of the First Interim Expenses, and (ii) the full amount of the First Interim Fees subject to a 10% holdback.

8. On August 7, 2013, Applicant filed its second interim application (the "**Second Interim Fee Application**") for the allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred from January 1, 2013 through April 30, 2013 (the "**Second Interim Fee Period**"). In the Second Interim Fee Application, Applicant sought the interim allowance of fees in the aggregate amount of $315,950.00 (the

3

"**Second Interim Fees**"), and the interim allowance of the reimbursement for actual and necessary expenses in the amount of $1,613.51 (the "**Second Interim Expenses**").

9. By this Court's order dated September 23, 2013, the Second Interim Fees and the Second Interim Expenses were allowed in a reduced amount, as agreed upon between Applicant and the U.S. Trustee (the "**Second Interim Fee Order**"). Pursuant to the First Interim Fee Order, Applicant received payment from the Debtors for (i) the Second Interim Expenses in the amount of $1,448.11, and (ii) the Second Interim Fees in the amount of $300,092.50, subject to a 10% holdback.

10. The statutory predicate for the relief requested herein is Bankruptcy Code sections 330 and 331, Rule 2016 of the Bankruptcy Rules, and Rule 2016-1 of the Local Bankruptcy Rules.

## APPLICANT'S FEE STATEMENTS

11. Applicant maintains computerized records of the time spent by all of Applicant's attorneys and paraprofessionals in connection with the representation of the Committee. Subject to redaction for attorney-client privilege, Applicant has submitted monthly fee statements (the "**Monthly Fee Statements**") to the Notice Parties (as that term is defined in the Interim Compensation Order) in the format specified by the UST Guidelines, allowing each of the Notice Parties an opportunity to review and object to the Monthly Fee Statements.[1]

12. During the Application Period (defined below), Applicant provided the Notice Parties with the following Monthly Fee Statements:

- For May 1, 2013 through May 31, 2013 – fees of $149,006.00 and expenses of $474.33.

---

[1] To date, Applicant has not received any objections to the Monthly Fee Statements.

- For June 1, 2013 through June 30, 2013 – fees of $86,011.00 and expenses of $711.74.

- For July 1, 2013 through August 31, 2013 – fees of $189,679.50 and expenses of $2,097.07.

## SUMMARY OF REQUESTED COMPENSATION AND REIMBURSEMENT OF EXPENSES

13. This Application covers the period from May 1, 2013 through and including August 31, 2013 (the "**Application Period**") for services rendered on behalf of the Committee, and seeks an allowance of (a) compensation for professional services rendered in the amount of $422,933.50[2] for 1575.15 professional hours devoted to representation of the Committee in these Chapter 11 Cases and (b) reimbursement of all expenses incurred during the Application Period in connection with the rendition of such services in the aggregate amount of $2,821.54,[3] for a total interim payment of $425,755.04.[4]

14. Applicant is a firm of twenty-six (26) attorneys, concentrating in the practice of, among other areas, bankruptcy and insolvency related matters. In this regard, Applicant has extensive experience in representing creditors' committees, debtors, creditors, and trustees in bankruptcy proceedings before the Bankruptcy Courts in both the Southern and Eastern Districts of New York. As a result of Applicant's extensive experience, Applicant submits that the services it rendered in these Chapter 11 Cases, as set forth below, were efficient, economical,

---

[2] After further review of Applicant's time records, and to ensure compliance with the UST Guidelines, Applicant agrees to voluntarily reduce its fees and expenses as described on **Exhibit D** annexed hereto.

[3] Applicant's standard practice is to treat certain expenses as having been incurred when such obligations are recorded and reflected as payable in Applicant's accounting system. Accordingly, Applicant reserves its right to seek at a later date reimbursement of expenses incurred during the Application Period that are not included in this Application.

[4] Pursuant to the Interim Compensation Order, Applicant has received interim payment on account of eighty percent (80%) of accrued fees and one hundred percent (100%) of accrued expenses for the Application Period, totaling Three Hundred Forty Three Thousand Forty and 7/100 ($343,040.07) Dollars. Accordingly, a balance of Eighty Two Thousand Seven Hundred Fourteen and 97/100 ($82,714.97) Dollars remains outstanding.

and effective.

15. All services for which compensation and reimbursement of expenses are requested by Applicant were performed for, and on behalf of, the Committee. Applicant has annexed to this Application as **Exhibit A**, a printout of the actual time recorded, the services rendered, the date the services were rendered, and the names of the individuals performing the services by Applicant during the Application Period on behalf of the Committee (the "**Time Records**").[5] The Time Records list the services performed by Applicant's members, associates, paraprofessionals, and legal assistants. The Time Records also set forth the dates when such services were rendered, the nature of the services performed and the party who performed the services, the time expended for such services, and the amount billed for such services. The Time Records are created contemporaneously with the rendition of the services and reflect the Applicant's recorded time for the legal services rendered on behalf of the Committee.

16. The billing rate for each of the persons referenced in the Time Records is equal to the billing rate for such persons' time for similar services rendered to clients in connection with bankruptcy and non-bankruptcy matters. Such hourly rates range from $200 to $650 for attorneys and $110 to $195 for paraprofessionals.

17. Allowance of compensation in the amount requested herein would result in a blended hourly billing rate of approximately $268.50 for the Application Period (based on 1575.15 recorded hours at Applicant's regular billing rates in effect at the time of performance of such services). Applicant believes that these rates constitute market rates and are equal to or less than the rates charged by professionals with similar experience. No premium or bonus is sought

---

[5] A schedule specifying the categories of fees reflecting all time entries and fees during the Application Period and the total amount for such category is included with **Exhibit B**. A schedule specifying the categories of expenses for which Applicant is seeking reimbursement and the total amount for each such expense category is included with **Exhibit A**.

6

by this Application.

18.     There is no agreement or understanding between Applicant and any other person, other than the Firm's partners, for the sharing of compensation to be received for the services rendered in this case.

## COMPLIANCE WITH THE UST GUIDELINES

19.     The Application complies with the UST Guidelines as set forth in the Certification of Ronald J. Friedman, annexed hereto as **Exhibit C**.

20.     In accordance with the UST Guidelines, Applicant has divided its time records and expenditures into separate categories.

## PROFESSIONAL SERVICES RENDERED DURING APPLICATION PERIOD

21.     In this Application, Applicant seeks an interim award of (a) compensation for professional services rendered in the amount of $422,933.50 for 1575.15 professional hours devoted to its representation of the Committee in these Chapter 11 Cases and (b) reimbursement of all expenses incurred during the Application Period in connection with the rendition of such services in the aggregate amount of $2,821.54, for a total interim award for compensation and expenses for the Application Period of $425,755.04.

22.     During the Application Period, Applicant represented the Committee by, *inter alia*: (i) analyzing all claims filed by Borrowers (the "**Individual Borrower Claims**"), including approximately fifteen (15) class action claims asserted by Borrowers (the "**Borrower Class Claims**" and, together with the Individual Borrower Claims, the "**Borrower Claims**"), in connection with performing an analysis of the Borrower Claims for the Committee; (ii) analyzing the allegations contained in, and facilitating the resolutions of, certain adversary proceedings filed by Borrowers against the Debtors (the "**Borrower Adversary Proceedings**"); (iii) communicating with Borrowers regarding specific Borrower concerns in relation to the

Debtors' cases, through the creation and operation of a dedicated Borrower inquiry hotline (the "**Borrower Hotline**"); (iv) participating in the drafting of the Plan (defined herein) and Disclosure Statement (defined herein) with regard to borrower matters; and (v) appearing on behalf of the Committee at several hearings on Borrower Adversary Proceedings, Borrower Claims Objections, and other Borrower-related matters.

23. The summary that follows does not constitute a complete recitation of all services which were performed by Applicant during the Application Period and serves only to summarize those services of major importance which required Applicant's special attention, efforts, and skill.

### I. Case Administration

24. This category includes Applicant's time entries relating to the general administration of these chapter 11 cases as well as Applicant's entries related to its operation of the Borrower Hotline.

25. Since its retention, Applicant has created and operated a dedicated, toll-free hotline for Borrower inquiries related to the Debtors' bankruptcy cases. The phone number for the Borrower Hotline is prominently published on the website of the Debtors' claims agent, as well as Applicant's website, and has been included in numerous notices sent to Borrowers. In addition, Borrower inquiries directed to many parties related to the Debtors' cases, including the Court, are referred to the Borrower Hotline. During the Application Period, Applicant responded to more than 800 inquiries from Borrowers (the "**Borrower Hotline Inquiries**").[6]

26. Although Applicant was not able to provide Borrowers with legal advice, Applicant provided Borrowers with information regarding the Debtors' bankruptcy proceedings and other related information. During the Application Period, the Borrower Hotline Inquiries

---

[6] Applicant continues to respond to all Borrower inquiries received on the Borrower Hotline.

generally consisted of, among other things, questions regarding the status of the claims administration process in the Debtors cases, requests for clarification regarding general bankruptcy procedures, and questions relating to certain notices received by all Borrowers.

27. Specifically, the phone number for the Borrower Hotline was prominently placed on the notices that borrowers received regarding the hearing to approve the Joint Disclosure Statement (defined herein) and the various deadlines relating to confirmation of the Plan (defined herein) (together, the "**Plan Notices**"), and the majority of the Borrower Hotline Inquiries related to the Plan Notices. Although the Plan Notices were drafted so as to minimize confusion for Borrowers, numerous Borrowers had additional concerns relating to the Debtors' cases and how the Plan would affect Borrowers. Applicant responded to each of the Borrower Hotline Inquiries relating to the Plan Notices, allaying Borrower concerns over, among other things, the status of their mortgage loans.

28. Additionally, as discussed more fully below, the phone number for the Borrower Hotline was prominently placed on the nearly 1,800 Borrower Request Letters (defined below) sent to Borrowers requesting additional information regarding Borrower Claims. Applicant received and responded to numerous inquiries from Borrowers relating to Borrower Request Letters, and assisted Borrowers in determining what information may be necessary for the Debtors to properly analyze the Borrower's claim.

29. Applicant submits that the operation of the Borrower Hotline substantially benefitted (and continues to benefit) the estate by reducing the need for Borrowers, out of confusion over various events in the Debtors' cases, to file motions, letters, and other documents on the Court's docket, thus reducing the administrative burden on the Debtors and the Court for having to respond to such filings. Additionally, Applicant's efforts have benefitted the estate by assisting Borrowers in providing the necessary supporting information to the Debtors so that the

Debtors could properly analyze the Borrower Claims.

## II. Claims Administration

<u>Claims Analysis</u>

30. In its representation of the Committee, Applicant reviewed and analyzed all Borrower Claims, including the Borrower Class Claims.[7]

31. During the Application Period, Applicant continued its analysis of the allegations contained in each Borrower Claim to determine if the Borrower Claim contained sufficient information to establish the priority and amount asserted in each Borrower Claim. Applicant performed an in-depth analysis of numerous Individual Borrower Claims, including an analysis of the underlying state or federal court docket if available for Individual Borrower Claims filed on account of a pending litigation, in order to advise the Committee as to the Debtors' potential exposure on such Individual Borrower Claims.

32. Applicant prepared several in-depth memoranda and analyses for the Committee detailing Applicant's analysis of the Borrower Claims and the Debtors' potential exposure on Borrower Claims.

<u>Borrower Class Claims Analysis</u>

33. In addition to its analysis of Individual Borrower Claims, Applicant performed an in-depth analysis of the Borrower Class Claims.

34. Applicant reviewed pleadings and other documents filed in each of the underlying class action cases, as well as all information attached to the Borrower Class Claims. Additionally, Applicant analyzed the relevant case law on the various issues raised in each of the class actions, including, but not limited to, violations of RESPA and TILA.

---

[7] Applicant's analysis of the Individual Borrower Claims and the Borrower Class Claims and the preparation of Applicant's memoranda and analyses on the Borrower Claims commenced during the previous application period and carried over into the Application Period.

35. Applicant then prepared another in-depth legal memorandum summarizing its analysis of the Borrower Class Claims to assist the Committee, for purposes of, among other things, Plan negotiations. That memorandum included substantial legal research, as well as an evaluation of the Debtors' estimates of potential liability on account of Borrower Class Claims. At the Committee's request, Applicant also prepared an analysis specific to the *Kessler* class claim and provided the Committee with its analysis of the *Kessler* claim.

Borrower Claims Objections Procedures Order

36. In order to ensure that Borrowers were given an opportunity to support the allegations asserted in their respective Individual Borrower Claim, Applicant worked closely with the Debtors in drafting the claims procedures applicable to Individual Borrower Claims (the "**Borrower Claims Procedures**"). On March 21, 2013, the Court entered an order establishing the Borrower Claims Procedures (the "**Borrower Claims Procedures Order**").

37. As a result of Applicant's efforts and pursuant to the Borrower Claims Procedures Order, the Debtors sent nearly 1,800 letters to Borrowers requesting additional information and documentation to support their individual Borrower Claims (collectively, the "**Request Letters**"). As discussed above, in an attempt to assist in the efficient analysis of Borrower Claims, Applicant provided information relating to the Request Letters to numerous Borrowers, through the operation of the Borrower Hotline.

38. Applicant also worked closely with the Debtors and the Debtors' professionals to analyze the numerous responses to the Request Letters (the "**Borrower Responses**"), including the supporting documentation provided by Borrowers, in order to determine the validity of each Individual Borrower Claim and whether each Individual Borrower Claim was supported by sufficient information.

39. Borrower Claims Procedures Order requires that prior to the Debtors filing

11

objections to Individual Borrower Claims on certain enumerated grounds (the "**Borrower Claims Objections**"), including insufficient documentation and no liability grounds, the Debtors are required to consult with Applicant and Applicant must agree as to the basis of the objection. Accordingly, Applicant expended considerable time in reviewing and approving the Debtors' recommendations with respect to the Borrower Claims Objections. This review required Applicant to reconcile the Debtors' analysis of each Individual Borrower Claim with Applicant's analysis of that Individual Borrower Claim to determine whether that Individual Borrower Claim should be subject to the recommended objection. Additionally, Applicant participated in numerous teleconferences with the Debtors and the Debtors' professionals regarding the strategy for Borrower Claims Objections and various issues arising in relation to Borrower Claims Objection.

40. As the Court is aware, as a result of Applicant's efforts, pursuant to the Borrower Claims Procedures Order, to date the Debtors have filed 26 omnibus Borrower Claims Objections and 13 Borrower Claims Objections to Individual Borrower Claims.

### III. Litigation

41. As part of its representation of the Committee, and at the request of the Debtors, Applicant has endeavored to communicate with the plaintiffs in the Borrower Adversary Proceedings in an effort to facilitate amicable resolutions of the Borrower Adversary Proceedings. To further those efforts, Applicant analyzed the pleadings filed in each Borrower Adversary Proceeding and investigated the veracity of the allegations contained therein.

42. On March 21, 2013, the Court entered an order approving certain borrower adversary procedures (the "**Borrower Adversary Procedures Order**"). Pursuant to the Borrower Adversary Procedures Order, Applicant has participated in several Initial Conferences (as defined in the Borrower Adversary Procedures Order) intended to facilitate communication

between the parties to the Borrower Adversary Proceedings. Applicant has also filed several joint status reports in various Borrower Adversary Proceedings in compliance with the Borrower Adversary Procedures Order.

43. Additionally, throughout the Application Period, Applicant participated in weekly conference calls with Debtors' counsel and Committee counsel to discuss, among other Borrower-related matters, the status of, and potential resolutions to, pending Borrower Adversary Proceedings. Applicant also attended numerous hearings during the Application Period related to Borrower Adversary Proceedings.

44. As the Court is aware, because of Applicant's assistance in accordance with the Borrower Adversary Procedures Order, several of the Borrower Adversary Proceedings have been resolved.

### IV.  Plan / Disclosure Statement

45. Applicant assisted in drafting and revising the Debtors' and Committee's joint plan of reorganization (the "**Plan**") and the joint disclosure statement for the Plan (the "**Disclosure Statement**") with respect to Borrower related matters. Applicant was integral in drafting the sections of Plan and Disclosure Statement relating to Borrower Claims, Borrower Adversary Proceedings, and other Borrower related matters. Additionally, Applicant assisted in drafting a letter to Borrowers, which was included in the solicitation materials that accompanied the Disclosure Statement, explaining and simplifying the key provisions of the Plan relating to Borrowers.

## LEGAL STANDARD

46. The allowance of interim compensation for services rendered and reimbursement of expenses incurred in bankruptcy cases is provided for in Bankruptcy Code §331:

13

> [A] debtor's attorney, or any professional person…may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered…as is provided under section 330 of this title.

11 U.S.C. §331.

47. Bankruptcy Code §330 provides that a court may award a professional employed under Bankruptcy Code §327 "reasonable compensation for actual necessary services rendered…and reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1). Bankruptcy Code §330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The Congressional intent and policy expressed in Bankruptcy Code §330 is to provide for adequate compensation to continue to attract qualified and competent practitioners to bankruptcy cases.

48. The "lodestar" method of fee calculation developed by the Third Circuit is the method used to determine a "reasonable" attorney fee in all the federal courts, including the

14

bankruptcy courts in this Circuit. *In re Cena's Fine Furniture, Inc*., 109 B.R. 575, 581 (E.D.N.Y. 1990) (*citing, Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)). *Accord, In re Poseidon Pools of America, Inc.*, 216 B.R. 98, 100 (E.D.N.Y. 1997); *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 21-22 (Bankr. S.D.N.Y. 1991).

49. In determining the reasonableness of the services for which compensation is sought, the Court should note "that the appropriate perspective for determining the necessity of the activity should be prospective: hours for an activity or project should be disallowed only where a Court is convinced it is readily apparent that no reasonable attorney should have undertaken the activity or project or where the time devoted was excessive." *Id.* at 23; *In re Cenargo Int'l PLC*, 294 B.R. 571, 595-96 (Bankr. S.D.N.Y. 2003).

50. The Applicant is retained in these Chapter 11 Cases pursuant to Bankruptcy Code §327(a), on terms and conditions providing that Applicant shall be compensated in accordance with its normal hourly rates and reimbursed in accordance with its normal reimbursement policies, subject to guidelines established by this Court and the U.S. Trustee. The reasonableness of the terms of Applicant's retention is evident in comparison to the terms of comparable firms practicing in the Southern District of New York.

51. Applicant respectfully submits that the services for which it seeks allowance of compensation are necessary for and beneficial to the Committee's supervision of the Debtors' cases, and that the requested fees and charges are reasonable in light of the intricacies of these Chapter 11 Cases and the nature, extent, and value of Applicant's services and expenses to the Committee, the Debtors' estates, and all parties in interest. Thus, approval of the compensation sought in this Application is warranted.

BPOWERS/1334091.2/062429

52.     No previous application or motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE,** Applicant seeks the entry of an order: (i) approving its third interim fee application, and awarding and authorizing an interim payment of $425,755.04, as follows (a) compensation for professional services rendered in the amount of $422,933.50 for 1575.15 professional hours devoted to representation of the Committee in these cases and (b) reimbursement of all expenses incurred during the Application Period in connection with the rendition of such services in the aggregate amount of $2,821.54, for a total interim payment of $425,755.04; and (ii) granting Applicant such further relief as this Court may deem proper.

Dated:  Jericho, New York
        November 18, 2013                    **SILVERMANACAMPORA LLP**

                                    By:     *s/ Ronald J. Friedman*
                                            Ronald J. Friedman
                                            Member of the Firm
                                            100 Jericho Quadrangle, Suite 300
                                            Jericho, New York 11753
                                            (516) 479-6300
                                            RFriedman@SilvermanAcampora.com

                                            *Special Counsel for the Official Committee
                                            of Unsecured Creditors of
                                            Residential Capital, LLC, et al*

BPOWERS/1334091.2/062429