12-12020-mgg   Doc 5411-3   Filed 10/21/13   Entered 10/21/13 15:59:41   Exhibit B to
Declaration of James Dennell   Pg 1 of 10

# EXHIBIT B

WELLS
FARGO

Paul S. Dobel
Senior Vice President

MAC A0109-030
333 Market Street, 3rd Floor
San Francisco, CA 94105
415 371-3009
415 371-3007 Fax
dobels@wellsfargo.com

March 19, 2012

**BY CERTIFIED MAIL RRR**
**BY EMAIL & FACSIMILE**

Ally Financial Inc.
Attn:  Mark P. Fleming/Brooke J. Roebuck

Ally Servicing LLC
Attn:  Mark P. Fleming/Brooke J. Roebuck

Motors Insurance Corp.
Attn:  Mark P. Fleming/Brooke J. Roebuck

Residential Capital, LLC
Attn:  Mark P. Fleming/Brooke J. Roebuck

Residential Funding Co., LLC
Attn:  Mark P. Fleming/Brooke J. Roebuck

Passive Asset Transactions LLC
Attn:  Mark P. Fleming/Brooke J. Roebuck

RFC Asset Holding II, LLC
Attn:  Mark P. Fleming/Brooke J. Roebuck

Residential Mortgage Real Estate Holdings, LLC
Attn:  Mark P. Fleming/Brooke J. Roebuck

Residential Funding Real Estate Holdings
Attn:  Mark P. Fleming/Brooke J. Roebuck

Homecoming Financial Real Estate Holding
Attn:  Mark P. Fleming/Brooke J. Roebuck

GMAC Mortgage, LLC
Attn:  Mark P. Fleming/Brooke J. Roebuck

Ditech, LLC
Attn:  Mark P. Fleming/Brooke J. Roebuck

Residential Consumer Services, LLC
Attn:  Mark P. Fleming/Brooke J. Roebuck

Morrison & Foerster
Attn: Jordan A. Wishnew, Esq.
1290 Avenue of the Americas
New York, NY 10104-0050

Kirkland & Ellis, Esq.
Attn: Stephen E. Hessler, Esq.
601 Lexington Avenue
New York, NY 10022

      Re:    Commercial Deposit Agreement for Large Corporate Customers executed on
January 3, 2012 by Ally Financial Inc., Ally Servicing LLC, Motors Insurance
Corp., Residential Capital, LLC, Residential Funding Co., LLC, Passive Asset
Transactions LLC, RFC Asset Holding II, LLC, Residential Mortgage Real Estate
Holdings, LLC, Residential Funding Real Estate Holdings, Homecoming
Financial Real Estate Holding, GMAC Mortgage, LLC, DiTech, LLC

      You are a signatory to that Commercial Deposit Agreement for Large Corporate
Customers ("Ally/ResCap CDA"), executed on January 3, 2012 by Ally Financial Inc., Ally
Servicing LLC, Motors Insurance Corp., Residential Capital, LLC, Residential Funding Co.,
LLC, Passive Asset Transactions LLC, RFC Asset Holding II, LLC, Residential Mortgage Real
Estate Holdings, LLC, Residential Funding Real Estate Holdings, Homecoming Financial Real
Estate Holding, GMAC Mortgage, LLC, DiTech, LLC ("the Ally/ResCap Entities"). Pursuant to
the Ally/ResCap CDA, you agreed that Wachovia Bank and Wachovia Bank of Delaware, as
applicable, succeeded by Wells Fargo Bank, N.A. ("WFB," "we," or "us") may amend the
Ally/ResCap CDA and any documentation referred to therein at any time. We are hereby
providing you with notice of amendments to the Ally/ResCap CDA. (The terms "accounts,"
"treasury services" and "agreements" are as defined in the Ally/ResCap CDA.)

      We are making these amendments based on our assessment of your overall relationship
with us and your statements regarding your financial condition.

      Unless we provide you with separate notice, each of these amendments will become
effective on April 25, 2012. (Note that we reserve all of our rights under the Ally/ResCap CDA,
to impose these or other conditions at an earlier date, and including our rights to modify or
suspend services and to terminate this Ally/ResCap CDA and all services under certain
conditions, including if WFB reasonably believes that your activities may expose us to financial
risk.)

      Pursuant to the Ally/ResCap CDA, if you continue to use the services provided under our
agreements after April 25, 2012, you will be deemed to have accepted such changes. Note that
you may terminate the services in their entirety for any reason by giving us prior notice in
accordance with the Ally/ResCap agreement. If you desire to terminate such services or to
decrease the time period for such termination, please feel free to contact us to discuss a faster
implementation of the termination.

Section 21(a) of the Ally/ResCap CDA, providing for indemnification, is amended to state as follows:

"claims brought against us (or losses we incur) arising in connection with any of the services or treasury services provided under the agreement or pursuant to any applicable Service Description or agreement; this expressly includes losses we incur arising in connection with any account of any subsidiary of yours (including direct and indirect subsidiaries) that directly or indirectly was ever the source or recipient of any funds transferred to or from you, or your accounts, regardless of whether such account is in your name or the name of an affiliate of yours."

Section 21(d) is hereby amended to state as follows:

"obligations, losses or expenses we incurred in connection with any legal process, dispute or third party claims related to you or your accounts; this expressly includes losses we incur arising in connection with any account of any subsidiary of yours (including direct and indirect subsidiaries) that directly or indirectly was ever the source or recipient of any funds transferred to or from you, or your accounts, regardless of whether such account is in your name or the name of such subsidiary of yours."

Section 21(e) is amended to state as follows:

"losses we suffer related to returned items, overdrafts, or collection efforts related to any of the foregoing; this expressly includes losses we incur arising in connection with any account of any subsidiary of yours (including direct and indirect subsidiaries) that directly or indirectly was ever the source or recipient of any funds transferred to or from you, or your accounts, regardless of whether such account is in your name or the name of such subsidiary of yours."

A new sentence shall be added to the end of the paragraph in Section 25 entitled "Offset and Cash Management Agreements" as follows:

"We may debit and offset your accounts for any obligation of any direct or indirect subsidiary of yours that is also our customer for any obligation of such subsidiary company to us under this agreement."

A new sentence shall be added to the end of the first paragraph of Section 25 entitled "Setoff" as follows:

"Your obligations and our right to set off expressly include any obligations owed to us for services provided pursuant to this agreement, whether provided to you or any direct or indirect subsidiary of yours; you further agree that we have the right to deduct setoff amounts that any of your subsidiaries owe us from any accounts that you hold with us, and you also grant us a consensual security interest in your accounts and to the funds held in them as collateral to secure your present and future obligations to us, and your subsidiaries' present and future obligations to us under this agreement. The direct and indirect subsidiaries of Ally Financial Inc.

3

include but are not limited to Ally Servicing LLC, Motors Insurance Corp., Residential Capital, LLC, Residential Funding Co., LLC, Passive Asset Transactions LLC, RFC Asset Holding II, LLC, Residential Mortgage Real Estate Holdings, LLC, Residential Funding Real Estate Holdings, Homecoming Financial Real Estate Holding, GMAC Mortgage, LLC, Ditech, LLC, Residential Consumer Services, LLC ("the Ally/ResCap Entities" or "Subsidiaries").

A new paragraph entitled "Subordination" shall be added in the appropriate alphabetical order to the provisions of Section 25 as follows:

"If we notify you of any subsidiary's unpaid obligation under this agreement, any funds or other property that such subsidiary's ultimate parent receives in satisfaction of its claims against any subsidiary that is a party to this agreement shall be segregated and forthwith paid to us in satisfaction of all obligations to us."

There shall be a new section added as Section 28 as follows:

a.  GUARANTY; DEFINITIONS.  In consideration of WFB's continued provision of treasury management services to the Ally/ResCap Entities under this agreement, notwithstanding the right of WFB to cease the provision of such services, and for other valuable consideration, ALLY FINANCIAL, INC. ("Guarantor"), jointly and severally unconditionally guarantee and promise to pay to WFB, or order, on demand in lawful money of the United States of America and in immediately available funds, any and all Indebtedness of any Subsidiary to WFB **arising out of or relating in any way to any deposit account maintained by Subsidiary with WFB, or any treasury management service offered by WFB which is purchased or otherwise utilized by Subsidiary, including, without limitation, any overdraft occurring on any such deposit account (whether created by action of Subsidiary, or by chargeback, fee debit, or other action of WFB), together with any and all extensions, renewals and/or modifications of such Indebtedness (which Indebtedness, in connection with any such deposit account or treasury management service, and all such extensions, renewals and/or modifications, is hereinafter collectively referred to as the "Deposit Service Indebtedness").** The term "Indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Subsidiary, or any of them, heretofore, now or hereafter made, incurred or created, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether Subsidiary may be liable individually or jointly with others, or whether recovery upon such Indebtedness may be or hereafter becomes unenforceable. This Guaranty is a guaranty of payment and not collection. Guarantor acknowledges that, absent this Guaranty, WFB would not continue to provide such services to Subsidiary or Guarantor.

b.  LIABILITY; SUCCESSIVE TRANSACTIONS; REVOCATION; OBLIGATION UNDER OTHER GUARANTIES.  This is a continuing guaranty and all rights, powers and remedies hereunder shall apply to all past, present and future Deposit Service Indebtedness of Subsidiary to WFB, including that arising under successive transactions which

4

shall either continue the Deposit Service Indebtedness, increase or decrease it, or from time to time create new Deposit Service Indebtedness after all or any prior Deposit Service Indebtedness has been satisfied, and notwithstanding the incapacity, dissolution, liquidation or bankruptcy of Subsidiary or Guarantor.  The obligations of Guarantor hereunder shall be in addition to any obligations of Guarantor under any other guaranties of any liabilities or obligations of Subsidiary or any other persons heretofore or hereafter given to WFB unless said other guaranties are expressly modified or revoked in writing; and this Guaranty shall not, unless expressly herein provided, affect or invalidate any such other guaranties.

c.    OBLIGATIONS JOINT AND SEVERAL; SEPARATE ACTIONS; WAIVER OF STATUTE OF LIMITATIONS; REINSTATEMENT OF LIABILITY.  The obligations hereunder are joint and several and independent of the obligations of Subsidiary, and a separate action or actions may be brought and prosecuted against Guarantor whether action is brought against Subsidiary or any other person, or whether Subsidiary or any other person is joined in any such action or actions.  Guarantor acknowledges that this Guaranty is absolute and unconditional, there are no conditions precedent to the effectiveness of this Guaranty, and this Guaranty is in full force and effect and is binding on Guarantor, regardless of whether WFB obtains collateral or any guaranties from others or takes any other action contemplated by Guarantor.  Guarantor waives the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement thereof, and Guarantor agrees that any payment of any Deposit Service Indebtedness or other act which shall toll any statute of limitations applicable thereto shall similarly operate to toll such statute of limitations applicable to Guarantor's liability hereunder.  The liability of Guarantor hereunder shall be reinstated and revived and the rights of WFB shall continue if and to the extent for any reason any amount at any time paid on account of any Deposit Service Indebtedness guaranteed hereby is rescinded or must otherwise be restored by WFB, whether as a result of any proceedings in bankruptcy or reorganization or otherwise, all as though such amount had not been paid.  The determination as to whether any amount so paid must be rescinded or restored shall be made by WFB in its sole discretion; provided however, that if WFB chooses to contest any such matter at the request of Guarantor, Guarantor agrees to indemnify and hold WFB harmless from and against all costs and expenses, including without limitation, reasonable attorneys' fees, expended or incurred by WFB in connection therewith, including without limitation, in any litigation with respect thereto.

d.    AUTHORIZATIONS TO WFB.  Guarantor authorizes WFB either before or after revocation hereof, without notice to or demand on Guarantor, and without affecting Guarantor's liability hereunder, from time to time to:  (a) alter, compromise, renew, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the Deposit Service Indebtedness or any portion thereof, including increase or decrease of the rate of interest thereon; (b) take and hold security for the payment of this Guaranty or the Deposit Service Indebtedness or any portion thereof, and exchange, enforce, waive, subordinate or release any such security; (c) apply such security and direct the order or manner of sale thereof, including without limitation, a non-judicial sale permitted by the terms of the controlling security agreement, mortgage or deed of trust, as WFB in its discretion may determine; (d) release or substitute any one or more of the endorsers or any other guarantors of the Deposit Service Indebtedness, or any

portion thereof, or any other party thereto; and (e) apply payments received by WFB from Subsidiary to any Indebtedness of Subsidiary to WFB, in such order as WFB shall determine in its sole discretion, whether or not such Indebtedness is covered by this Guaranty, and Guarantor hereby waives any provision of law regarding application of payments which specifies otherwise. WFB may without notice assign this Guaranty in whole or in part. Upon WFB's request, Guarantor agrees to provide to WFB copies of Guarantor's financial statements.

e.   GUARANTOR'S WAIVERS. Guarantor waives any right to require WFB to: (i) proceed against Subsidiary or any other person; (ii) marshal assets or proceed against or exhaust any security held from Subsidiary or any other person; (iii) give notice of the terms, time and place of any public or private sale or other disposition of personal property security held from Subsidiary or any other person; (iv) take any action or pursue any other remedy in WFB's power; or (v) make any presentment or demand for performance, or give any notice of nonperformance, protest, notice of protest or notice of dishonor hereunder or in connection with any obligations or evidences of indebtedness held by WFB as security for or which constitute in whole or in part the Deposit Service Indebtedness guaranteed hereunder, or in connection with the creation of new or additional Deposit Service Indebtedness. Guarantor waives any defense to its obligations hereunder based upon or arising by reason of: (i) any disability or other defense of Subsidiary or any other person; (ii) the cessation or limitation from any cause whatsoever, other than payment in full, of the Deposit Service Indebtedness of Subsidiary or any other person; (iii) any lack of authority of any officer, director, partner, agent or any other person acting or purporting to act on behalf of Subsidiary which is a corporation, partnership or other type of entity, or any defect in the formation of Subsidiary; (iv) the application by Subsidiary of the proceeds of any Deposit Service Indebtedness for purposes other than the purposes represented by Subsidiary to, or intended or understood by, WFB or Guarantor; (v) any act or omission by WFB which directly or indirectly results in or aids the discharge of Subsidiary or any portion of the Deposit Service Indebtedness by operation of law or otherwise, or which in any way impairs or suspends any rights or remedies of WFB against Subsidiary; (vi) any impairment of the value of any interest in any security for the Deposit Service Indebtedness or any portion thereof, including without limitation, the failure to obtain or maintain perfection or recordation of any interest in any such security, the release of any such security without substitution, and/or the failure to preserve the value of, or to comply with applicable law in disposing of, any such security; (vii) any modification of the Deposit Service Indebtedness, in any form whatsoever, including any modification made after revocation hereof to any Deposit Service Indebtedness incurred prior to such revocation, and including without limitation the renewal, extension, acceleration or other change in time for payment of, or other change in the terms of, the Deposit Service Indebtedness or any portion thereof, including increase or decrease of the rate of interest thereon; or (viii) any requirement that WFB give any notice of acceptance of this Guaranty. Until all Deposit Service Indebtedness shall have been paid in full, Guarantor shall have no right of subrogation, and Guarantor waives any right to enforce any remedy which WFB now has or may hereafter have against Subsidiary or any other person, and waives any benefit of, or any right to participate in, any security now or hereafter held by WFB. Guarantor expressly waives any rights of Guarantor to indemnification, and/or contribution against Subsidiary or any other person or entity, and any other rights and defenses that are or may become available to Guarantor or any other person or

6

entity by reasons of Sections 2787-2855, inclusive of the California Civil Code or any similar law of California or any other state of the United States. Guarantor further waives all rights and defenses Guarantor may have arising out of (A) any election of remedies by WFB, including but not limited to any defense based upon an election of remedies by Lender under the provisions of Section 580(d) of the California Code of Civil Procedure or any similar law of California or of any other State or of the United Sates), even though that election of remedies, such as a non-judicial foreclosure with respect to any security for any portion of the Deposit Service Indebtedness, destroys Guarantor's rights of subrogation, Guarantor's rights to proceed against Subsidiary for reimbursement or any other rights of Guarantor to proceed against any other person, entity or security, or (B) any loss of rights Guarantor may suffer by reason of any rights, powers or remedies of Subsidiary in connection with any anti-deficiency laws or any other laws limiting, qualifying or discharging Subsidiary's Deposit Service Indebtedness, whether by operation of Sections 726, 580a or 580d of the California Code of Civil Procedure as from time to time amended, or otherwise,

  f. WFB'S RIGHTS WITH RESPECT TO GUARANTOR'S PROPERTY IN WFB'S POSSESSION.  In addition to all liens upon and rights of setoff against the monies, securities or other property of Guarantor given to WFB by law, WFB shall have a lien upon and a right of setoff against all monies, securities and other property of Guarantor now or hereafter in the possession of or on deposit with WFB, whether held in a general or special account or deposit or for safekeeping or otherwise, and every such lien and right of setoff may be exercised without demand upon or notice to Guarantor.  No lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of WFB, or by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien is specifically waived or released by WFB in writing.

  g. SUBORDINATION.  Any Indebtedness of Subsidiary now or hereafter held by Guarantor is hereby subordinated to the Deposit Service Indebtedness of Subsidiary to WFB. Such Indebtedness of Subsidiary to Guarantor is assigned to WFB as security for this Guaranty and the Deposit Service Indebtedness and, if WFB requests, shall be collected and received by Guarantor as trustee for WFB and paid over to WFB on account of the Deposit Service Indebtedness of Subsidiary to WFB but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty. Any notes or other instruments now or hereafter evidencing such Indebtedness of Subsidiary to Guarantor shall be marked with a legend that the same are subject to this Guaranty and, if WFB so requests, shall be delivered to WFB. WFB is hereby authorized in the name of Guarantor from time to time to file financing statements and continuation statements and execute such other documents and take such other action as WFB deems necessary or appropriate to perfect, preserve and enforce its rights hereunder.

h.      REMEDIES; NO WAIVER.  All rights, powers and remedies of WFB hereunder are cumulative.  No delay, failure or discontinuance of WFB in exercising any right, power or remedy hereunder shall affect or operate as a waiver of such right, power or remedy; nor shall any single or partial exercise of any such right, power or remedy preclude, waive or otherwise affect any other or further exercise thereof or the exercise of any other right, power or remedy. Any waiver, permit, consent or approval of any kind by WFB of any breach of this Guaranty, or any such waiver of any provisions or conditions hereof, must be in writing and shall be effective only to the extent set forth in writing.

i.      COSTS, EXPENSES AND ATTORNEYS' FEES.  Guarantor shall pay to WFB immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees (to include outside counsel fees and all allocated costs of WFB's in-house counsel), expended or incurred by WFB in connection with the implementation, administration and enforcement of this agreement (including amendments) and any of WFB's rights, powers or remedies and/or the collection of any amounts which become due to WFB under this Guaranty, and the prosecution or defense of any action in any way related to this Guaranty, whether incurred at the trial or appellate level, in an arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by WFB or any other person) relating to Guarantor or any other person or entity.  All of the foregoing shall be paid by Guarantor with interest from the date of demand until paid in full at a rate per annum equal to the greater of ten percent (10%) or WFB's Prime Rate in effect from time to time.

j.      SUCCESSORS; ASSIGNMENT.  This Guaranty shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties; provided however, that Guarantor may not assign or transfer any of its interests or rights hereunder without WFB's prior written consent.  Guarantor acknowledges that WFB has the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, any Deposit Service Indebtedness of Subsidiary to WFB and any obligations with respect thereto, including this Guaranty.  In connection therewith, WFB may disclose all documents and information which WFB now has or hereafter acquires relating to Guarantor and/or this Guaranty, whether furnished by Subsidiary, Guarantor or otherwise.  Guarantor further agrees that WFB may disclose such documents and information to Subsidiary.

8

We further note that the Ally/ResCap CDA requires you to make a continuing representation that you are not insolvent within the meaning of 11 U.S.C. § 101.  Please verify that your representations and warranties are accurate.

Very truly yours,

Steve Dobel

Cc:   Ally/ResCap Entities
      Mark Fleming, Designated Officer
      Lynn Curtis, Designated Officer
      1100 Virginia Drive
      Fort Washington, PA 19034
      Fax No.: 215-682-1249

      Wells Fargo Bank, N.A.
      45 Broadway
      New York, NY 10006
      Attn:  Corporate Trust Services, Designated Office

9