**Hearing Date:  November 25, 2013 at 9:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  November 20, 2013 at 5:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
James J. Beha II
Naomi Moss

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
)
In re:                                        )        Case No. 12-12020 (MG)
                                              )
RESIDENTIAL CAPITAL, LLC, et al.,             )        Chapter 11
                                              )
                            Debtors.          )        Jointly Administered
                                              )
---------------------------------------------------------------

**NOTICE OF DEBTORS' MOTION FOR APPROVAL OF**
**DEBTORS' ENTRY INTO THE SETTLEMENT AGREEMENT**
**AMONG THE DEBTORS, THE COMMITTEE, AND ALLY**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Motion
for Approval of Debtors' Entry Into the Settlement Agreement Among the Debtors, the
Committee and Ally* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take

place on **November 25, 2013 at 9:00 a.m. (prevailing Eastern Time)** before the

Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District

of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New

York 10004-1408, Room 501.

    **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case

Management, and Administrative Procedures approved by the Bankruptcy Court [Docket

No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic

case filing system, and be served, so as to be received no later than **November 20, 2013**

**at 5:00 p.m. (Prevailing Eastern Time)**, upon (a) counsel to the Debtors, Morrison &

Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Gary S.

Lee, Lorenzo Marinuzzi, James J. Beha II and Naomi Moss); (b) the Office of the United

States Trustee for the Southern District of New York, U.S. Federal Office Building, 201

Varick Street, Suite 1006, New York, NY 10014 (Attention: Tracy Hope Davis, Linda A.

Riffkin, and Brian S. Masumoto); (c) the Office of the United States Attorney General,

U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001

(Attention: US Attorney General, Eric H. Holder, Jr.); (d)  Office of the New York State

Attorney General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq.

and Enid N. Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of

New York, One St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro,

Esq.); (f) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street,

New York, NY 10022 (Attention: Richard M. Cieri and Ray Schrock); (g) counsel for the

committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue

of the Americas, New York, NY 10036 (Attention: Kenneth Eckstein and Douglas

Mannal); (h) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West

52nd Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman);

(i) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand

Avenue, Los Angeles, CA 90071 (Attention:  Thomas Walper and Seth Goldman);

(j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by

overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-

5016); (k) Securities and Exchange Commission, New York Regional Office, 3 World

Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos,

Regional Director) and (l) Kasowitz Benson Torres & Friedman LLP, 1633 Broadway,

New York, NY 10019 (Attention:  Andrew K. Glenn and Daniel A. Fliman).

     **PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a

written objection to the relief requested in the Motion, the Bankruptcy Court may deem

any opposition waived, treat the Motion as conceded, and enter an order granting the

relief requested in the Motion without further notice or hearing.

Dated: November 18, 2013           Respectfully submitted,
      New York, New York

                /s/ Gary S. Lee
                Gary S. Lee
                Lorenzo Marinuzzi
                James J. Beha II
                Naomi Moss
                MORRISON & FOERSTER LLP
                1290 Avenue of the Americas
                New York, New York 10104
                Telephone: (212) 468-8000
                Facsimile: (212) 468-7900

                *Counsel to the Debtors and*
                *Debtors in Possession*

**Hearing Date: November 25, 2013 at 9:00 a.m. (ET)**
**Response Deadline: November 20, 2013 at 5:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
James J. Beha II
Naomi Moss

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------------------- ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ----------------------------------------------------- ) | | |

**DEBTORS' MOTION FOR APPROVAL OF**
**DEBTORS' ENTRY INTO THE SETTLEMENT AGREEMENT AMONG**
**THE DEBTORS, THE COMMITTEE, AND ALLY**

<u>**TABLE OF CONTENTS**</u>

**Page**

PRELIMINARY STATEMENT ............................................................... 1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ................................. 3

BACKGROUND ............................................................................... 3

    A.    These Chapter 11 Cases and the FHFA Claims ................................. 3

    B.    The Debtors' Securitization Business ........................................... 5

    C.    Freddie Mac's Investments ..................................................... 6

    D.    When the Debtors' RMBS Decreased in Value, the Debtors Faced an Onslaught of Lawsuits, Including the FHFA Case ............................. 6

    E.    The Extend Stay Proceedings ................................................... 7

    F.    The Proposed Settlement of the FHFA Claims ................................. 8

RELIEF REQUESTED ........................................................................ 9

ARGUMENT .................................................................................. 9

I.    THE LEGAL STANDARD GOVERNING THIS MOTION ......................... 9

II.    THE SETTLEMENT IS FAIR, EQUITABLE, AND IN THE BEST INTERESTS OF THE ESTATES ............................................................................. 11

    A.    The Settlement Resolves Highly Uncertain, Complex, and Potentially Protracted Litigation .......................................................... 11

        i.    The Settlement Resolves Complex Litigation Regarding the FHFA Claims ...................................................... 11

        ii.    The Settlement Resolves Complex Litigation Regarding the Subordination of the FHFA Claims .................................. 14

        iii.    The Settlement Resolves the Objections of the FHFA and Freddie Mac and Avoids Complex Litigation Regarding HERA's Impact on the Plan ...................................................... 14

    B.    The Settlement Agreement is the Product of Arm's-Length Negotiations by Experienced Counsel ...................................................... 15

    C.    The Settlement Agreement Benefits the Estates and Their Creditors ........ 16

    D.    Other Parties in Interest Support the FHFA Settlement ..................... 17

    E.    The Settlement Agreement Provides for Reasonable Releases of the Debtors' Officers and Directors and Affiliates ............................... 17

NOTICE ...................................................................................... 18

NO PRIOR REQUEST ....................................................................... 18

CONCLUSION ............................................................................... 18

ny-1115766

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air Line Pilots Ass'n, Int'l v. Am Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*,
     156 B.R. 414 (S.D.N.Y. 1993)*, aff'd*, 17 F.3d 600 (2d Cir. 1994) ......................................9, 10

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
     699 F.2d 599 (2d Cir. 1983)........................................................................................10, 18

*Fed. Housing Fin. Agency v. Ally Fin. Inc.*,
     No. 11 Civ 7010 (DLC), 2012 WL 6616061 (S.D.N.Y. Dec. 19, 2012) ................................12

*In re Dewey & LeBoeuf LLP*,
     478 B.R. 627 (Bankr. S.D.N.Y. 2012) ...................................................................................10

*In re Hibbard Brown & Co.*,
     217 B.R. 41 (Bankr. S.D.N.Y. 1998) ....................................................................................12

*In re MF Global Inc. (HSBC Bank USA v. Fane)*,
     466 B.R. 244 (Bankr. S.D.N.Y. 2012) ...................................................................................10

*In re MF Global Inc.*,
     No. 11–2790, 2012 WL 3242533 (Bankr. S.D.N.Y. Aug. 10, 2012) .....................................10

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
     478 F.3d 452 (2d Cir. 2007)..................................................................................................11

*Nellis v. Shugrue*,
     165 B.R. 115, 122-23 (S.D.N.Y. 1994) .................................................................................10

*Newman v. Stein*,
     464 F.2d 689 (2d Cir. 1972)..................................................................................................10

STATUTES & RULES

11 U.S.C.
     § 510.....................................................................................................................................14
     § 1107(a) ................................................................................................................................3
     § 1108.....................................................................................................................................3
     § 1129.....................................................................................................................................5

12 U.S.C. § 4617 ..................................................................................................................2, 4

28 U.S.C.
    § 157................................................................................................................3
    § 1334.............................................................................................................3
    § 1408.............................................................................................................3
    § 1409 ............................................................................................................3

FED. R. BANKR. P.
    Rule 1015(b) ...................................................................................................3
    Rule 9019 .................................................................................................. *passim*

ny-1115766

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

Residential Capital, LLC ("ResCap"), and its affiliated debtors in the above-captioned

Chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), submit this

motion under Federal Rule of Bankruptcy Procedure 9019 ("Bankruptcy Rule 9019") for entry of

an order substantially in the form attached hereto as **Exhibit 1** (the "Proposed Order") approving

the Debtors' entry into the Settlement Agreement,[1] dated November 18, 2013, by and among the

Debtors, the Official Committee of Unsecured Creditors of the Debtors (the "Committee"), and

Ally Financial Inc. ("AFI") and its non-debtor affiliates (collectively, "Ally" and, together with

the Debtors and the Committee, the "Parties").  In support of this motion, the Debtors submit the

accompanying declaration of Lewis Kruger (the "Kruger Decl.") and respectfully represent as

follows:

**PRELIMINARY STATEMENT**

1.    The Debtors seek Court approval of the Debtors' entry into an agreement

with Ally and the Committee (the "Settlement") that is ancillary to a separate settlement (the

"Ally/FHFA Settlement") between Ally and the Federal Housing Finance Agency (the "FHFA")

resolving billions of dollars of claims brought by the FHFA as conservator for the Federal Home

Loan Mortgage Corporation[2] ("Freddie Mac") related to the Debtors' residential mortgage-

backed securities ("RMBS").  After extensive, arm's-length negotiations, the Parties have

reached a comprehensive settlement that resolves the FHFA's claims in these Chapter 11 cases.

As a result of the Settlement, the Plan[3] proponents have modified the Plan to provide that (a) the

---

[1]  A copy of the *Stipulation Regarding Allowed Claims* (the "Settlement Agreement") is attached to this motion as **Exhibit 2**.

[2]  In September 2008, the FHFA was appointed conservator for Freddie Mac.

[3]  Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to them *infra*.

1

claims of the FHFA in the Debtors' bankruptcy cases will be allowed in the amount of $1.2

billion in class RS-11 (Art. III.D.3(k)) (the "Allowed FHFA Claim"); (b) the Allowed FHFA

Claim will receive a cash distribution of $24 million on the effective date of the Plan; and (c) the

Third Party Release Carve-Out (Plan Art. IX.E) will be modified to allow the FHFA to retain

certain claims against Ally.  In addition, and as a result of the Ally/FHFA Settlement, Freddie

Mac and the FHFA have withdrawn their respective objections to the Plan,[4] and with it, the

Parties will not litigate at confirmation the impact of HERA.[5]

2.      The Debtors believe that entry into the Settlement Agreement is

reasonable and in the best interests of the Debtors' estates and their creditors.  Absent a

settlement, litigating these claims would have required the Debtors to engage in costly,

burdensome, and uncertain litigation for months or even years.  Additionally, litigation regarding

HERA's impact on the Plan would likely be time consuming and cause the Debtors to incur

significant administrative expense, and could be a substantial obstacle to the confirmation of the

otherwise largely consensual Plan.

3.      The FHFA Claims are based on litigation arising out of Freddie Mac's

purchase of approximately $6 billion in Debtor-sponsored RMBS.  As far as the Debtors are

aware, the FHFA is the largest holder of RMBS in these Chapter 11 cases.  The FHFA objected

to the Plan's proposed subordination of the FHFA Claims.  A ruling in the FHFA's favor on

subordination could have had a material negative effect on the distributions to the Debtors' other

creditors.

---

[4]   On November 12, 2013, Freddie Mac withdrew the Freddie Mac Plan Objection [Docket No. 5671]. Also on
      November 12, 2013, the FHFA withdrew the FHFA Plan Objection [Docket No. 5672].
[5]   The FHFA was created by the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289,
      122 Stat. 2654, codified at 12 U.S.C. § 4617 et seq.

2

4.      The Ally/FHFA Settlement also resolves the FHFA's claims against Ally pending in the District Court (the "FHFA Case").  That settlement includes a substantial contribution from Ally to resolve the FHFA Case.  In addition, the FHFA assigned to Ally its and Freddie Mac's rights to receive any and all distributions to the FHFA under the Plan on account of the FHFA Claims as of the effective date of the Plan (the "FHFA Claim Proceeds").  The Debtors and the Committee are not parties to the Ally/FHFA Settlement.  However, based on that separate settlement, the Settlement Agreement was negotiated.  The Settlement Agreement fairly resolves significant securities claims against the Debtors, eliminates two significant objections to confirmation, and is supported by the Committee.  Accordingly, and for the reasons stated below, the Debtors respectfully request that the Court approve the Debtors' entry into the Settlement Agreement.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

5.      This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334 and Bankruptcy Rule 9019.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.      These Chapter 11 Cases and the FHFA Claims**

6.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered under Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.

7.      On May 16, 2012, the United States Trustee for the Southern District of New York appointed the nine-member Committee.

3

8.      On November 30, 2012, the FHFA filed six proofs of claim related to the

FHFA Case [Claim Nos. 6296, 6297, 6298, 6299, 6300, and 6301] (collectively, the "FHFA

Claims")[6] against Debtors GMAC-RFC Holdings Company, LLC ("GMAC-RFC Holdings"),

Residential Asset Securities Corporation ("RASC"), Residential Accredit Loans, Inc. ("RALI"),

Residential Funding Company, LLC ("RFC"), Residential Asset Mortgage Products, Inc.

("RAMP"), and ResCap.  The FHFA Claims assert claims in unliquidated amounts.

Additionally, each of the FHFA Claims includes a reservation of rights regarding the FHFA's

alleged entitlement to priority recovery under 12 U.S.C. § 4617(b)(15)(D).  (*See* FHFA Claim

No. 6296 ¶ 368.)

9.      On May 23, 2013, the Debtors entered into a plan support agreement and

filed the *Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b)*

*Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally*

*Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 3814]

(the "PSA Approval Motion").  On June 27, 2013, the Court granted the PSA Approval Motion

[Docket No. 4102].

10.     On July 3, 2013, the Debtors and the Committee filed the *Joint Chapter 11*

*Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured*

*Creditors* [Docket No. 4153] (the "Plan") and the *Disclosure Statement for the Joint Chapter 11*

*Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured*

*Creditors* [Docket No. 4157] (the "Disclosure Statement").  The Court approved the Disclosure

---

[6]  Freddie Mac, on its own behalf, filed proofs of claim against the Debtors in these Chapter 11 cases [Claim Nos.
4875 and 4899] (the "Freddie Mac Claims").  The Freddie Mac Claims were resolved by the *Stipulation and
Order Relating to the Assumption and Assignment of Certain Agreements of Freddie Mac Pursuant to Section 365
of the Bankruptcy Code and Related Relief* [Docket No. 2894].

Statement on August 23, 2013 [Docket No. 4809].  The hearing on confirmation of the Plan, as amended, is scheduled to commence on November 19, 2013.

11.    Prior to settlement of the FHFA Claims, the Plan placed the FHFA in its own class with a 2% distribution on account of those claims as ultimately allowed.  The Plan also provided that the Plan proponents intended to subordinate the FHFA Claims.  The Plan further provided that the third party releases under the Plan would not apply to the FHFA.

12.    On October 21, 2013, Freddie Mac filed the *Objection and Reservation of Rights of Federal Home Loan Mortgage Corporation With Respect to the Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 5405] (the "Freddie Mac Plan Objection").  In the Freddie Mac Objection, Freddie Mac objected to the third party releases included in the Plan.

13.    On October 22, 2013, the FHFA filed the *Objection of the Federal Housing Finance Agency to Confirmation of the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 5436] (the "FHFA Plan Objection").  In the FHFA Plan Objection, the FHFA objected to confirmation of the Plan alleging that (i) the Plan unfairly discriminated against FHFA under section 1129(b)(1) of the Bankruptcy Code, (ii) the Plan did not satisfy the best interests test under section 1129(a)(7), (iii) the Plan violated HERA because it failed to recognize the FHFA's alleged priority recovery status, and (iv) the Plan was not proposed in good faith.

B.    **The Debtors' Securitization Business**

14.    Before they filed their Chapter 11 petitions, the Debtors were a leading residential real estate finance services company.  The Debtors and their non-debtor affiliates

5

operated the fifth-largest mortgage servicing business and the tenth largest mortgage origination business in the United States.[7]

15.    As part of this mortgage servicing and origination business, from 2004 to 2007, the Debtors issued RMBS certificates in an aggregate original principal balance of more than approximately $226 billion.  (Local Rule 7056-1 Statement of Stipulated Undisputed Facts and Agreed-To Exhibits ¶ 1, *Residential Capital, LLC v. Allstate Ins. Co.*, Adv. Pro. No. 13-01262 (Bankr. S.D.N.Y. April 2, 2013) [Docket No. 23].)  In these RMBS securitizations, the Debtors pooled together mortgage loans and conveyed them to trusts in exchange for certificates that were sold to investors, including Freddie Mac.  (*See generally Id.* ¶ 2.)

### C.    Freddie Mac's Investments

16.    Before it was placed under conservatorship by the FHFA, Freddie Mac purchased billions of dollars of Debtor-sponsored RMBS.  Specifically, the Original FHFA Complaint (defined below) alleges that, between September 23, 2005, and May 30, 2007, Freddie Mac purchased more than $6 billion in RMBS issued in connection with securitizations for which certain of the Debtors acted as depositors or sponsors.  (*See* FHFA Plan Objection ¶ 1.)

### D.    When the Debtors' RMBS Decreased in Value, the Debtors Faced an Onslaught of Lawsuits, Including the FHFA Case

17.    In 2007, U.S. home prices began to drop, and RMBS and other credit markets began to freeze up.  As of the Petition Date, RMBS investors had filed dozens of lawsuits asserting claims against the Debtors under the Securities Act, the Securities Exchange Act, and various state securities laws.  (Kruger Decl. ¶ 7.)

---

[7]  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the event leading to the filing of these bankruptcy cases, may be found in the affidavit of James Whitlinger, dated May 14, 2012 [Docket No. 6].

18.     On September 2, 2011, the FHFA, in its capacity as conservator of Freddie Mac, filed a complaint (the "Original FHFA Complaint") in the Supreme Court of the State of New York, County of New York against (i) Debtors ResCap, GMAC-RFC Holdings, RFC, RAMP, RASC, and RALI; (ii) AFI and certain affiliates; and (iii) seven underwriters.  The Original FHFA Complaint asserted claims for violation of the federal and state securities laws, fraud and aiding and abetting fraud claims

19.     On October 6, 2011, the FHFA Case was removed to the United States District Court for the Southern District of New York (the "District Court"), where it was assigned to the Honorable Denise L. Cote as Case No. 11-cv-7010.  The FHFA Case was being heard in coordinated fashion with other similar cases that the FHFA filed against other groups of mortgage-backed securities offerors.

20.     On June 13, 2012, following the filing of these Chapter 11 cases, the FHFA filed an amended complaint (the "Amended FHFA Complaint"), no longer naming any Debtors as defendants.  The Amended FHFA Complaint makes the same substantive allegations as the Original FHFA Complaint regarding Ally.

21.     On November 7, 2013, as a result of the Ally/FHFA Settlement, the FHFA dismissed its claims against Ally in the FHFA Case, with prejudice.

**E.     The Extend Stay Proceedings**

22.     On May 25, 2012, the Debtors commenced an adversary proceeding against the FHFA and others seeking to extend the automatic stay imposed by these cases to certain pending litigation against the Debtors' directors and officers and non-debtor affiliates including Ally (the "Extend Stay Adversary Proceeding").  (Complaint, *Residential Capital, LLC et al., v. Allstate Ins. Co. et al.*, Adv. Pro No. 12-01671 (Bankr. S.D.N.Y. May 25, 2012) [Docket

7

No. 1].)  Included among the pending litigation sought to be stayed by the Debtors was the

FHFA Case.

      23.     On June 28, 2012, the FHFA filed the *Motion to Withdraw the Reference*

*of the Above-Captioned Adversary Proceeding to the Bankruptcy Court* (the "Motion to

Withdraw the Reference"). (*Residential Capital, LLC et al., v. Allstate Ins. Co. et al.*, Adv. Pro

No. 12-01671 (Bankr. S.D.N.Y. June 28, 2012) [Docket No. 44].)

      24.     On July 9, 2012, the Honorable Denise L. Cote, before whom the FHFA

Case was then pending, granted the Motion to Withdraw the Reference solely as to the FHFA.

On July 17, 2012, the District Court denied the relief requested by the Debtors in the Extend Stay

Adversary Proceeding (the "Extend Stay Order").

      25.     The Debtors appealed the Extend Stay Order to the United States Court of

Appeals for the Second Circuit (the "Second Circuit"), and following briefing and argument, the

Second Circuit remanded the case to the District Court for further proceedings.  Following

remand, the District Court again denied the Debtors' motion to extend the automatic stay to the

FHFA Case.  The case was resubmitted to the Second Circuit.  The Debtors recently dismissed

the appeal of the Extend Stay Order following the dismissal by the FHFA of its claims against

Ally in the FHFA Case.

    **F.**     **The Proposed Settlement of the FHFA Claims**

      26.     The Settlement Agreement provides that (i) the FHFA Claims against RFC

shall be allowed in the amount of $1.2 billion in full satisfaction of the FHFA Claims, and (ii) the

Allowed FHFA Claim shall not be subject to subordination and shall receive a cash payment

from the Debtors' estates of $24 million on the effective date of the Plan.  (Ex. 2, Settlement

Agreement ¶ 1.)  The Debtors have modified the Plan to reflect the Settlement,[8] and the

Settlement is conditioned upon the occurrence of the effective date of the Amended Plan.

27.    As part of the Ally/FHFA Settlement, Freddie Mac and the FHFA have

agreed to support the Plan and withdraw their respective objections to confirmation of the Plan.

They have filed formal withdrawals of their objections (Docket Nos. 5671 and 5672).

28.    Moreover, pursuant to the Ally/FHFA Settlement, the FHFA assigned to

Ally any and all rights the FHFA and/or Freddie Mac hold in the FHFA Claim Proceeds.  The

FHFA has directed the Debtors to pay to Ally any distributions that would otherwise be payable

to the FHFA on account of the FHFA Claims.  (Ex. 2, Settlement Agreement, Ex. A.)  Under the

Ally/FHFA Settlement, the FHFA, including in its capacity as conservator for Freddie Mac,

agreed to change its votes of the FHFA Claims in support of the Amended Plan.

## RELIEF REQUESTED

29.    The Debtors respectfully request that this Court enter an order under

Bankruptcy Rule 9019(a), substantially in the form of the Proposed Order, approving the

Debtors' entry into the Settlement Agreement.

## ARGUMENT

## I.    THE LEGAL STANDARD GOVERNING THIS MOTION

30.    Bankruptcy Rule 9019(a) provides, in part, that "[o]n motion by the

[debtor-in-possession] and after notice and a hearing, the court may approve a compromise or

settlement."  Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve a

settlement agreement where "it is supported by adequate consideration, is 'fair and equitable,'

and is in the best interests of the estate."  *Air Line Pilots Ass'n, Int'l v. Am Nat'l Bank & Trust*

---

[8]  On November 12, 2013, the *First Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al.
and the Official Committee of Unsecured Creditors* was filed [Docket No. 5722] (the "Amended Plan").

Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d

Cir. 1994); accord In re Dewey & LeBoeuf LLP, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012).

The Court's analysis is not a mechanical process, but rather contemplates a "range of

reasonableness . . . which recognizes the uncertainties of law and fact in any particular case and

the concomitant risks and costs necessarily inherent in taking any litigation to completion."

Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).

31.     "As a general matter, '[s]ettlements and compromises are favored in

bankruptcy as they minimize costly litigation and further parties' interests in expediting the

administration of the bankruptcy estate.'"  Dewey & LeBoeuf, 478 B.R. at 640 (quoting In re MF

Global Inc., No. 11–2790, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012)).  The

decision to approve a particular settlement lies within the sound discretion of the bankruptcy

court.  See Nellis v. Shugrue, 165 B.R. 115, 122-23 (S.D.N.Y. 1994); Ionosphere Clubs, Inc., 156

B.R. at 426.  Bankruptcy courts, however, should consider and factor in the debtor's exercise of

its reasonable business judgment when reviewing a proposed settlement and may rely on the

opinion of the debtor, parties to the settlement, and professionals.  In re MF Global Inc. (HSBC

Bank USA v. Fane), 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012); Dewey & LeBoeuf, 478 B.R. at

641.

32.     To approve a proposed settlement, courts "need not conduct a mini-trial"

or definitively decide the numerous issues of law and fact raised by the settlement.  Dewey &

LeBoeuf, 478 B.R. at 640-641 (internal quotations omitted).  Rather, courts should "canvass the

issues and see whether the settlement 'fall[s] below the lowest point in the range of

reasonableness.'"  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983).

10

33.    In deciding whether a particular settlement falls within the "range of reasonableness," courts in the Second Circuit consider the following factors (the "*Iridium Factors*"): (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay"; (c) the paramount interests of creditors; (d) whether other parties in interest support the settlement; (e) the nature and breadth of releases to be obtained by officers and directors; (f) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing the settlement; and (g) "the extent to which the settlement is the product of arm's-length bargaining." *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (internal citations and quotations omitted).

## II.    THE SETTLEMENT IS FAIR, EQUITABLE, AND IN THE BEST INTERESTS OF THE ESTATES

34.    The Debtors believe that the Settlement is fair, equitable, and in the best interests of these estates.  The Debtors respectfully submit that each of the Second Circuit's *Iridium* Factors weighs in favor of this Court's approval of the Settlement Agreement.

### A.    The Settlement Resolves Highly Uncertain, Complex, and Potentially Protracted Litigation

35.    To avoid protracted and complex litigation over the validity, amount, and priority of the FHFA Claims, the Debtors and the Committee determined that entering into the Settlement Agreement is in the best interests of the Debtors' estates and their creditors.  (Kruger Decl. ¶ 16.)

#### i.    *The Settlement Resolves Complex Litigation Regarding the FHFA Claims*

36.    The FHFA has asserted claims based on alleged material misstatements and omissions in the registration materials for Debtor-issued RMBS.  The Debtors believe that

11

they have valid defenses to the FHFA Claims, and if forced to litigate, the Debtors would mount

a vigorous defense.  In particular, the Debtors deny that any of their RMBS registration

statements contained material misstatements or that any such misstatements caused any losses to

Freddie Mac.  (*Id.* ¶ 15.)[9]

       37.    Nonetheless, the FHFA Claims are legally and factually complex, and the

ultimate outcome of any litigation, as well as the forum for such adjudication, are uncertain.

(*Id.*)  The FHFA Claims are predicated on the claims brought by the FHFA in the FHFA Case.

The complexity and uncertainty of these claims is evidenced by their survival of Ally's motion to

dismiss the FHFA Case in the District Court.[10]  Uncertainty of outcome in complex cases is an

important consideration in whether to approve a settlement.  *See, e.g., In re Hibbard Brown &*

*Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (approving settlement after finding that the

multiple legal issues presented were "complex" and carried "no guarantee of success").

       38.    In the absence of a settlement, litigating the FHFA Claims would require

substantial and costly discovery.  In particular, the parties would likely have had to engage in

extensive discovery related to the loans underlying the securitizations in which Freddie Mac

invested.  (*See* Supplemental Declaration of Jeffrey A. Lipps ¶¶ 10-15, *Residential Capital, LLC*

*et al., v. Allstate Ins. Co., et al.*, Adv. Pro. No. 12-01671 (Bankr. S.D.N.Y. July 6, 2012) [Docket

No. 59] (the "Supp. Lipps Decl."))  This "loan-level" discovery would require locating and

producing thousands of loan files—a task that is always expensive and cumbersome, and has

only become more so since the sale of the Debtors' loan servicing platform.   (*Id.* ¶¶ 14-15.)

---

[9]  The FHFA believes that it has valid claims against the Debtors and Ally, which the Debtors expect the FHFA
would vigorously prosecute absent resolution of the FHFA Claims through the Ally/FHFA Settlement.

[10]  *Fed. Housing Fin. Agency v. Ally Fin. Inc.*, No. 11 Civ 7010 (DLC), 2012 WL 6616061 (S.D.N.Y. Dec. 19,
2012).

There are potentially more than 105,000 mortgage loan files at issue in the FHFA Case. (*See Id.* ¶ 14.) Further, discovery of those loan files says nothing of the other voluminous documents concerning the twenty-one separate securitizations at issue, and the underwriting parameters, which would likely be sought in a proceeding regarding the liquidation of the FHFA Claims. The cost of those discovery efforts is substantial, as the Debtors have learned firsthand in the dozens of cases filed against the Debtors based on the issuance of RMBS. (Declaration of Jeffrey A. Lipps ¶ 19, *In re Residential Capital, LLC*, Case No. 12-12020 (Bankr. S.D.N.Y. August 7, 2012 [Docket No. 1023-1] (the "Lipps Decl."))

39.     Loan level discovery is only the tip of the iceberg. Also likely relevant to the FHFA Claims would be email communications among Debtor employees and many other electronically stored materials. (*See Id.* ¶¶ 14-15.) This "defensive" discovery typically costs hundreds of thousands—if not millions—of dollars and can take many months to complete. (*Id.* ¶ 15-16.) And, of course, the Debtors would also need to take discovery of the FHFA, including extensive document discovery of what Freddie Mac knew and relied on in purchasing Debtors' RMBS.

40.     Because of the nature of the FHFA Claims, they are not likely subject to summary disposition, and would take months—and possibly years—to fully adjudicate. (Kruger Decl. ¶ 15.) Additionally, there is no guarantee of the ultimate outcome of such litigation. Accordingly, the Debtors believe that the Settlement Agreement constitutes a far more efficient, reasonable, and cost-effective resolution of these claims than proceeding with litigation. (*Id.* ¶ 16.)

13

### ii. *The Settlement Resolves Complex Litigation Regarding the Subordination of the FHFA Claims*

41.    In determining that the settlement of the FHFA Claims is in the best interests of the Debtors' estates and their creditors, the Debtors considered the duration and costs associated with any litigation regarding the subordination of the FHFA Claims. (*Id.* ¶ 17.) Prior to the Settlement, the Plan provided that the Plan proponents intended to subordinate the FHFA Claims pursuant to section 510(b) of the Bankruptcy Code. Litigation regarding the subordination of the FHFA Claims would unquestionably be complex. Notwithstanding the complicated issues regarding subordination in general, HERA's impact on such proceedings could present novel issues of law. Under the Settlement, this dispute will not be litigated, resolving a substantial impediment to Plan confirmation. The Debtors considered the costs and uncertainty surrounding such litigation and determined, in their reasonable business judgment, that the benefits associated with the Settlement outweigh those burdens and the risk of that litigation.

### iii. *The Settlement Resolves the Objections of the FHFA and Freddie Mac and Avoids Complex Litigation Regarding HERA's Impact on the Plan*

42.    In the absence of a settlement regarding the FHFA Claims, the Debtors would unquestionably be forced to expend significant time and resources litigating HERA's impact on the Plan.[11] The Settlement obviates the need for such litigation, the outcome of which is uncertain and would result in the incurrence of additional administrative expense.

---

[11] This issue is more fully described in the *Plan Proponents' Omnibus Reply to Objections to Motion for an Order (i) Approving Disclosure Statement, (ii) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (iii) Approving the Form of Ballots, (iv) Scheduling a Hearing on Confirmation of the Plan, (v) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of the Plan, and (vi) Granting Related Relief* [Docket No. 4723].

**B.      The Settlement Agreement is the Product of Arm's-Length Negotiations by Experienced Counsel**

43.      The Settlement Agreement is the result of arm's-length negotiations between the Debtors, the Committee, and Ally, which were all represented by competent and experienced professionals with particular expertise in these matters.  (Kruger Decl. ¶ 18.) Counsel for each of the Parties negotiated without collusion and in good faith.  In their negotiations, the Debtors were guided by lawyers and other professionals highly experienced in similar securities litigation, including in the settlement of complex, RMBS-related litigation. (*Id*.)  The Debtors, in exercising their reasonable business judgment, considered the advice of their advisors in making the determination that the Settlement is in the best interests of these estates.

44.      The Debtors believe that the Settlement, which is the product of arm's–length negotiations, is reasonable and in the best interest of their estates because it compares favorably to settlements reached in similar securities litigation.  (Kruger Decl. ¶ 21.)  The FHFA recently settled certain of the lawsuits pending in the coordinated proceedings in the District Court.  While the terms of those settlements are not all publicly available, certain of them are. One disclosed settlement relates to the FHFA's suit against UBS Americas, Inc. ("UBS") involving similar alleged violations of federal and state securities laws in connection with private-label residential mortgage-backed securities.   Under that settlement as reported in the press, the FHFA recovered approximately 13.8% of the face value of the certificates purchased from UBS.  (*See Direct Testimony of Lucy Allen* at 9 (Docket No. 5706).)  Similarly, another settlement that was publicly reported resolved the FHFA's claims against J.P. Morgan Chase & Co. ("JPM").  The FHFA's recovery from JPM was reported in the press as approximately 12.1% of the face value of the certificates purchased by FHFA from JPM.  (*Compare News*

15

*Release, Federal Housing Finance Agency, FHFA Announces $5.1 Billion in Settlements with J.P. Morgan Chase & Co.* (Oct. 25, 2013) (available at http://www.fhfa.gov/webfiles/25649/FHFAJPMorganSettlementAgreement.pdf) (describing the settlement to resolve the FHFA's RMBS case against JPMorgan) *with Complaint*, FHFA v. JPMorgan Chase & Co., et al., 11-civ- 6188 (S.D.N.Y. Sept. 2, 2011) (describing purchases of JPMorgan sponsored RMBS totaling $33 million).)

45.      Here, the FHFA has reached a separate settlement with Ally that resolves the FHFA Claims.  Because of that separate settlement, Ally as assignee of the proceeds of the FHFA Claims, will receive a fixed 2% distribution on account of the Allowed FHFA Claim under the Amended Plan.  This favorable outcome for the Debtors is the result of Ally's significant contribution to the global resolution of the FHFA Case.  In essence, for the Debtors' part, a payment of $24 million resolves some of the most substantial remaining contested claims in these cases.

### C.      The Settlement Agreement Benefits the Estates and Their Creditors

46.      The Settlement Agreement benefits the Debtors' estates and their creditors.  The Settlement Agreement is well within the range of reasonableness and resolves significant claims against the Debtors' estates.  (Kruger Decl. ¶ 23.) The certainty provided by the Settlement Agreement and resolution of the FHFA Claims is in the best interests of these estates because it will allow the Debtors to continue on the path towards confirmation of the Amended Plan.  Absent a settlement, the Debtors could be forced to set aside a large distribution reserve to pay the FHFA Claims as ultimately allowed, delaying and reducing other unsecured creditors' recoveries.

16

47.      The Debtors believe that the benefit of certainty regarding the amount of the Allowed FHFA Claim is preferable to litigating the subordination of the FHFA Claims, with the attendant uncertainty and costs associated with that litigation.  (Kruger Decl. ¶ 19.)

**D.      Other Parties in Interest Support the FHFA Settlement**

48.      The Committee's extensive involvement in settlement negotiations concerning the Allowed FHFA Claim – reflected in its agreement to be a party to the Settlement Agreement – shows that the Settlement is in the best interests of the creditors of the Debtors' estates.  Continued litigation over these claims would burden the Debtors' estates with significant legal expense and would almost certainly result in delays in distribution of the estates' assets to creditors.  The Settlement Agreement allows the Debtors to continue to focus on confirmation of the Amended Plan, which is supported by a majority of the Debtors' creditors.  For this reason as well, the Debtors believe approval of the Settlement Agreement is in the best interest of their creditors.

**E.      The Settlement Agreement Provides for Reasonable Releases of the Debtors'
         Officers and Directors and Affiliates**

49.      Pursuant to the Settlement Agreement, the Third Party Release Carve-Out provision of the Plan has been amended in a manner satisfactory to the FHFA (Art. IX.E. of the Amended Plan).  Pursuant to the Third Party Release Carve-Out provision of the Amended Plan, the FHFA will retain certain claims against Ally.

       \*                   \*                  \*

50.      The Debtors have determined, in exercising their reasonable business judgment, that the terms of the Settlement are fair, equitable, and eminently reasonable to the Debtors' estates and creditors, thereby satisfying the standards of Bankruptcy Rule 9019.  The Settlement is fair and well within the range of reasonableness—and certainly not "below the

17

lowest point in the range of reasonableness." *W.T. Grant Co.*, 699 F.2d at 608.  Accordingly, the

Debtors respectfully request that the Court approve the Debtors' entry into the Settlement

Agreement pursuant to Bankruptcy Rule 9019.

## NOTICE

51.      The Debtors have provided notice of this Motion in accordance with the

Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## NO PRIOR REQUEST

52.      Except as otherwise noted herein, no prior application for the relief

requested has been made to this Court or any other court.

## CONCLUSION

53.      WHEREFORE, the Debtors respectfully request that the Court enter an

order substantially in the form of the Proposed Order, authorizing the Debtors, pursuant to

Bankruptcy Rule 9019(a), to enter into the Settlement Agreement.


Dated: November 18, 2013                         /s/  Gary S. Lee
                                                 Gary S. Lee
                                                 Lorenzo Marinuzzi
                                                 James J. Beha II
                                                 Naomi Moss
                                                 MORRISON & FOERSTER LLP
                                                 1290 Avenue of the Americas
                                                 New York, New York 10104
                                                 Telephone:  (212) 468-8000
                                                 Facsimile:  (212) 468-7900

                                                 *Counsel for the Debtors and
                                                 Debtors in Possession*

18