**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------
)
In re:                                                    )    Case No. 12-12020 (MG)
                                                          )
RESIDENTIAL CAPITAL, LLC, et al.,                         )    Chapter 11
                                                          )
                                              Debtors.    )    Jointly Administered
                                                          )
---------------------------------------------------------------------------

**DECLARATION OF LEWIS KRUGER IN SUPPORT OF
DEBTORS' MOTION FOR APPROVAL OF DEBTORS' ENTRY
INTO THE SETTLEMENT AGREEMENT AMONG
THE DEBTORS, THE COMMITTEE, AND ALLY**

I, Lewis Kruger, being duly sworn, state the following under penalty of perjury:

1. I am the Chief Restructuring Officer ("CRO") of the debtors and debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases. I submit this declaration (the "Declaration") in support of the *Debtors' Motion for Approval of Debtors' Entry Into the Settlement Agreement Among the Debtors, the Committee, and Ally* (the "FHFA Claims 9019 Motion"),[1] filed contemporaneously herewith. Except as otherwise noted, I have personal knowledge of the matters set forth herein. If I were called to testify as a witness in this matter, I could testify competently to the facts set forth herein.

2. I offer this Declaration to show that the settlement of certain claims filed by the FHFA against the Debtors in these cases, embodied in the Settlement Agreement dated November 18, 2013 (the "Settlement Agreement"), represents a fair and reasonable compromise and to attest that the Debtors negotiated the Settlement Agreement at arm's-length and without undue influence or coercion by any party.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the FHFA Claims 9019 Motion.

**BACKGROUND**

3. On February 7, 2013, I was appointed by the Debtors to serve as CRO and spearhead the plan formulation process. On February 11, 2013, the Debtors filed the *Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer* [Docket No. 2887].[2] My appointment contemplated that I would "make decisions on behalf of each Debtor with respect to Chapter 11 plan negotiations and formulation, in such a manner as is consistent with the business judgment rule, the provisions of applicable law, taking into account the respective fiduciary duties of the CRO to each Debtor's respective estate." *See* Amendment 1. On March 5, 2013, the Court entered an order approving my appointment in accordance with the terms of Amendment 1. [Docket No. 3103]. On September 13, 2013, the Court found that I, on behalf of the Debtors, was authorized to enter into a settlement agreement among the Debtors, Financial Guaranty Insurance Company, the FGIC Trustees and the Institutional Investors.[3]

4. Prior to my appointment as CRO, I was a partner and Co-Chair of the Financial Restructuring Group at Stroock & Stroock & Lavan LLP, a law firm that has extensive experience in all aspects of restructuring and insolvency matters. I have over fifty years of restructuring experience. I have played a role in many significant reorganization proceedings in the United States, representing debtors, official and ad hoc creditors' committees, financial institutions and acquirers of assets.

5. In my capacity as CRO, I am generally familiar with the parties' respective positions regarding the priority and nature of the various claims asserted against the Debtors in

---

[2] The scope of my authority was modified pursuant to Amendment 1 to the Engagement Letter. A copy of Amendment 1 to the Engagement Letter was filed with the Court on March 1, 2013 [Docket No. 3074].
[3] As defined in the *Memorandum Opinion and Order, and Conclusions of Law, Approving the FGIC Settlement Motion* [Docket No. 5042].

these Chapter 11 cases (including the claims asserted by the FHFA), as well as the terms of the Settlement Agreement negotiated among the Debtors, the Committee, and Ally (collectively, the "Parties").

6.      In connection with working to formulate and confirm the Plan, I participated in analyzing the validity, priority and amount of the FHFA Claims.

## THE FHFA CLAIMS

7.      As of the Petition Date, RMBS investors had filed dozens of lawsuits asserting claims against the Debtors under Sections 11 and 12(a)(2) of the Securities Act, Section 10(b) of the Securities Exchange Act, various state securities laws, and common law fraud claims seeking, among other things, to recover their losses on Debtor-issued RMBS.

8.      On November 30, 2012, the FHFA filed six proofs of claim [Claim Nos. 6296, 6297, 6298, 6299, 6300, and 6301] against Debtors ResCap, GMAC-RFC Holdings, RFC, RAMP, RASC and RALI based upon the claims asserted in the FHFA Case.

## THE SETTLEMENT

9.      The Parties engaged in extensive negotiations regarding a possible settlement of the FHFA Claims. As a result of those discussions, the Parties reached an agreement that resolves the FHFA Claims asserted in these Chapter 11 cases. I am aware that the FHFA and Ally have separately settled the FHFA Case, and that as part of that settlement, the FHFA has assigned to Ally any and all rights the FHFA and/ or Freddie Mac hold in the FHFA Claim Proceeds. I have reviewed the letter sent to the Debtors by counsel for the FHFA directing payment to Ally those certain distributions that would otherwise be payable to the FHFA on account of the FHFA Claims.

10.     The Settlement is subject to the occurrence of the effective date of the Plan and provides that (i) the FHFA Claims shall be allowed in the amount of $1.2 billion against RFC in

full satisfaction of the FHFA Claims, and (ii) the Allowed FHFA Claim shall not be subject to subordination and shall receive a cash distribution of $24 million on the effective date of the Plan.

11. Prior to entering into the Settlement, I reviewed, along with the Debtors' advisors, materials related to the FHFA Claims including, but not limited to, the complaints filed in the FHFA Case, the FHFA Claims, and pleadings filed in connection with the Extend Stay Adversary Proceeding. I also engaged in discussions with Debtors' counsel, and the other parties and constituencies involved in the settlement discussions.

12. In making my decision, I relied on my independent business judgment and balanced the benefits and risks associated with the Settlement. It is my understanding that absent a settlement, the FHFA Claims could result in claims totaling billions of dollars against the Debtors' estates. Additionally, I believe that the costs associated with litigating the FHFA Claims could be significant and that such litigation could take years. I also considered the potential drawbacks to entering into the Settlement Agreement, such as a waiver of the possibility to subordinate the FHFA Claims under Section 510(b) of the Bankruptcy Code.

13. I believe that the benefits to be received through the Settlement outweigh the attendant risks. I also believe that the Settlement is in the best interests of the Debtors' estates. The reasoning underlying my decision to approve the Settlement is set forth below.

## THE IRIDIUM FACTORS

### A. The Settlement Resolves Highly Uncertain, Complex, and Potentially Protracted Litigation

14. It is my understanding that significant uncertainty exists regarding the outcome of litigation regarding the validity, priority and amount of the FHFA Claims through the claims resolution process. In part due to this uncertainty, I, along with the Debtors' advisors, believe

that avoiding such litigation through the Settlement Agreement provides substantial benefits to the Debtors' creditors and their estates.

15. After reviewing the FHFA Claims, the relevant complaints filed by the FHFA against the Debtors and Ally, and the FHFA Plan Objection, the Debtors believe that they have valid defenses to the FHFA Claims. If forced to litigate, the Debtors would mount a vigorous defense. In particular, the Debtors deny that any of their RMBS registration statements contained material misstatements or that any such misstatements caused any losses to Freddie Mac. Nonetheless, I understand that the issues that would be involved in litigating the FHFA Claims are likely to be fact-intensive in nature and the legal issues involved relatively unsettled. I, along with the Debtors, understand that such litigation, as well as the forum for such adjudication, are uncertain. Additionally, the Debtors' advisors have informed me that they believe that litigation of these claims could take several years and result in the incurrence of substantial administrative costs.

16. Therefore, I believe that entering into the Settlement Agreement and avoiding protracted and complex litigation over the validity, amount and priority of the FHFA Claims is in the best interests of the Debtors' estates and creditors. I believe that the Settlement Agreement constitutes a far more efficient, reasonable, and cost-effective resolution of the FHFA Claims than proceeding with litigation.

17. In determining that the settlement of the FHFA Claims is in the best interests of the Debtors' estates and their creditors, I, along with the Debtors' advisors, also considered the duration and costs associated with any litigation regarding (i) the subordination of the FHFA Claims, and (ii) HERA's impact on the Plan.

### B. The Settlement Agreement is the Product of Arm's-Length Negotiations by Experienced Counsel

18. The Settlement Agreement is the result of arm's-length negotiations between the Debtors, the Committee, and Ally, each of which is represented by competent and experienced counsel with particular expertise in these matters. In their negotiations, the Debtors were also guided, in part, by lawyers and other professionals highly experienced in similar securities litigation, including in the settlement of complex RMBS-related litigation. In my view, the Committee and Ally were each represented by competent and experienced counsel.

### C. The Settlement Agreement Benefits the Debtors' Estates and Their Creditors

19. I, along with the Debtors and the Committee, believe that the Settlement Agreement is reasonable and provides substantial benefits to the Debtors' estates and their creditors. In particular, the Settlement Agreement provides benefits in the form of (i) a significant reduction of claims asserted against each of the Debtors' estates, (ii) certainty regarding the validity, priority and amount of the FHFA Claims, (iii) substantial cost savings when compared with the likely costs of professional fees and experts associated with litigation over the FHFA Claims being released, and (iv) and the resolution of the Freddie Mac Plan Objection and the FHFA Plan Objection that raised complex issues of law.

20. Moreover, absent a settlement, the Debtors could be required to set aside a large reserve to pay the FHFA Claims as ultimately allowed, which could delay and/or reduce other unsecured creditors' recoveries. Entry into the Settlement Agreement allows the Debtors to continue to focus on confirmation of the Amended Plan, which is supported by a majority of the Debtors' creditors.

21.  Furthermore, it is my understanding, based on my discussions with the Debtors' advisors who have particular expertise in securities litigation, that the Settlement is consistent with settlements in comparable securities cases.

### D. Support of Other Parties-in-Interest for the Settlement Agreement

22. As discussed above, the Committee actively participated in the settlement negotiations and is a party to the Settlement Agreement.

## CONCLUSION

23. Based on all of the factors described above, I conclude that settlement on the terms set forth in the Settlement Agreement is fair to the Debtors, well within the range of reasonableness, and certainly not below the lowest point in the range of reasonableness.

*[signature page follows]*

I declare under penalty of perjury that the foregoing is true and correct.

Executed the 18th day of November, 2013, at New York, New York.

>/s/ Lewis Kruger
> Lewis Kruger