**Hearing Date and Time: December 17, 2013 at 10:00 a.m.**
**Objection Deadline: December 9, 2013 at 4:00 p.m.**

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel for the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,[1] | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**FINAL APPLICATION OF CHADBOURNE & PARKE LLP,**
**COUNSEL TO THE EXAMINER, FOR ALLOWANCE**
<u>**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**</u>

| Name of Applicant: | Chadbourne & Parke LLP | |
|---|---|---|
| Authorized to Provide Professional Services to: | The Examiner | |
| Date of Retention: | August 9, 2012, *nunc pro tunc* to July 11, 2012 | |
| Period for Which Allowance and Approval is Sought: | <u>Fourth Fee Period</u><br><br>May 1, 2013 through October 31, 2013 | <u>Final Application Period</u><br><br>July 11, 2012 through October 31, 2013 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary: | $2,728,057.50 | $46,818,245.66 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $ 814,712.64 | $ 2,990,547.82 |
| This is a <u>Final</u> Fee Application. | | |

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

Prior Monthly Fee Statements:

| Date Served | Period Covered | Fees Requested | Expenses Requested | Fees Approved/ Paid (80%) | Expenses Approved/Paid |
|---|---|---|---|---|---|
| 9/28/2012 | 7/11/2012 - 8/31/2012 | $3,295,849.50 | $127,003.11 | $2,636,679.60 | $127,003.11 |
| 11/2/2012 | 9/1/2012 - 9/30/2012 | $3,580,139.00 | $ 54,579.03 | $2,864,111.20 | $ 54,579.03 |
| 11/30/2012 | 10/1/2012 - 10/31/2012 | $3,790,187.50 | $124,520.27 | $3,032,150.00 | $124,520.27 |
| 1/02/2013 | 11/1/2012 - 11/30/2012 | $5,658,240.50 | $125,324.05 | $4,526,592.40 | $125,324.05 |
| 1/30/2013 | 12/1/2012 - 12/31/2012 | $4,297,438.00 | $279,240.89 | $3,423,550.40 | $279,240.89 |
| 3/4/2013 | 1/1/2013 - 1/31/2013 | $5,374,400.50 | $333,054.69 | $4,299,520.40 | $333,054.69 |
| 4/5/2013 | 2/1/2013 - 2/28/2013 | $5,624,291.25 | $451,034.76 | $4,499,433.00 | $451,034.76 |
| 5/3/2013 | 3/1/2013 - 3/31/2013 | $4,958,969.00 | $344,542.04 | $3,967,175.20 | $344,542.04 |
| 6/17/2013 | 4/1/2013 - 4/30/2013 | $7,813,747.00 | $400,283.62 | $6,250,997.60 | $400,283.62 |
| 7/17/2013 | 5/1/2013 - 5/31/2013 | $2,413,309.50 | $738,537.27 | $1,930,647.60 | $738,537.27 |
| 8/6/2013 | 6/1/2013 - 6/30/2013 | $63,271.00 | $60,487.45 | $50,616.80 | $60,487.45 |
| 8/30/2013 | 7/1/2013 – 7/31/2013 | $65,823.00 | $1,979.42 | $52,658.40 | $1,979.42 |
| 9/30/2013 | 8/1/2013 – 8/31/2013 | $59,968.50 | $4,061.72 | $47,974.80 | $4,061.72 |
| 10/25/2013 | 9/1/2013 – 9/31/2013 | $104,510.50 | $9,800.53 | $83,608.40 | $9,800.53 |
| 11/15/2013 | 10/1/2013 – 10/31/2013 | $21,175.00 | $4,202.61 | $16,940.00* | $4,202.61* |

* Pending approval.

Interim Fee Applications Payment Summary

| Interim Fee Period | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Total Final Requested (Fees and Costs) | Amount Approved/ Paid | Holdback Amount Due (10%) |
|---|---|---|---|---|---|
| 1 (Docket No. 1897) | July 11, 2012 - Aug. 31, 2012 | Dec. 28, 2012 (Docket No. 2530) | $3,389,860.32[2] | $3,389,860.32 | $ .00 |
| 2 (Docket No. 3203) | Sept. 1, 2012 - Dec. 31, 2012 | April 23, 2013 (Docket No. 3556) | $17,689,853.23[3] | $17,689,853.23 | $ .00 |
| 3 (Docket No. 4565) | Jan. 1, 2013 – April 30, 2013 | Sept. 25, 2013 * (Docket No. 5205) | $25,186,309.79[4] | $22,817,569.02 | $2,368,740.77 |

*The September 25, 2013 Order also allowed payment of 10% holdback balance on first and second interim fee periods.

---

[2] Reflects certain deductions agreed to after discussions with the United States Trustee.

[3] Reflects certain fee deductions agreed to after discussions with the United States Trustee and certain expense deductions taken after payment was received but prior to filing application.

[4] Reflects certain deductions agreed to after discussions with the United States Trustee.

3

**Hearing Date and Time:  December 17, 2013 at 10:00 a.m.**
**Objection Deadline: December 9, 2013 at 4:00 p.m.**

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

*Counsel for the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**FINAL APPLICATION OF CHADBOURNE & PARKE LLP,**
**COUNSEL TO THE EXAMINER, FOR ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Chadbourne & Parke LLP ("<u>Chadbourne</u>"), as counsel to the Court-appointed Examiner

(the "<u>Examiner</u>") in the Chapter 11 cases (the "<u>Chapter 11 Cases</u>") of the above-captioned

debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby submits this Final

Application  for Allowance of Compensation and Reimbursement of Expenses (the

"<u>Application</u>").  This Application is submitted pursuant to sections 330  and 503(b) of title 11 of

the United States Code (the "<u>Bankruptcy Code</u>"), and Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Order Establishing Procedures for

Interim Compensation and Reimbursement of Expenses of Professionals, dated July 17, 2012

(the "<u>Interim Compensation Order</u>").  Chadbourne requests entry of an order allowing

Chadbourne (a) compensation in the amount of $46,818,245.66 for professional services

rendered and (b) reimbursement of expenses incurred in connection therewith in the amount of

$2,990,547.82 during the period from July 11, 2012 through and including October 31, 2013 (the

"Final Application Period").  The amounts requested consist of:

     (a)     compensation for professional services rendered during the period May 1, 2013

through October 31, 2013 (the "Fourth Fee Period") in the amount of $2,728,057.50  and

reimbursement of actual and necessary expenses incurred during the Fourth Fee Period in

the amount of $814,712.64,[5] which amounts are fully described in this Application; and

     (b)     compensation for professional services rendered during the period July 11, 2012

through April 30, 2013 (the "Prior Applications Period") in the amount of

$44,090,188.16 and reimbursement of actual and necessary expenses incurred during the

Prior Applications Period in the amount of $2,175,835.18.[6]

In support of the Application, Chadbourne respectfully represents as follows:

## BACKGROUND

1.     The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code on

May 14, 2012, and the Court authorized joint administration of the cases.  The Debtors continue

to operate their businesses and manage their properties as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

2.     On June 4, 2012, Berkshire Hathaway, Inc. filed a motion (the "Examiner

Motion") for the appointment of an examiner pursuant to 11 U.S.C. § 1104(c).  On June 20,

---

[5] Reflects application of a credit in the amount of $4,356.36, as further described herein.

[6] The amounts sought for compensation during the Prior Applications Period reflect all fees and expenses previously approved by the Court for Chadbourne & Parke's first, second and third interim fee applications, as further described herein.

2012, the Court issued a Memorandum Opinion and Order granting the Examiner Motion (the "Memorandum Decision").  On June 28, 2012, the Court entered the Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (the "Examiner Order").

3.      On July 3, 2012, the United States Trustee for the Southern District of New York appointed Arthur J. Gonzalez as Examiner in the Chapter 11 Cases, subject to Court approval.  On that same date, the Court entered an order approving the appointment.

4.      On July 17, 2012, Arthur J. Gonzalez filed the Application of the Examiner for Order Authorizing the Retention and Employment of Chadbourne & Parke LLP as Counsel to the Examiner *Nunc Pro Tunc* to July 11, 2012.  On August 9, 2012, the Court entered an order (the "Retention Order") approving Chadbourne's retention.

5.      Pursuant to the Examiner Order, and in accordance with the Memorandum Decision, the Examiner was directed to conduct an investigation of a scope and timing to be set by the Court after the Examiner had conferred with other parties in interest.  Examiner Order at p. 2.  After the required consultations, the Court mandated that the Examiner conduct an investigation covering the topics set forth in the Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner, dated July 27, 2012 (the "Scope Order").

6.      On May 13, 2013, the Examiner filed his report under seal [Docket No. 3698] (the "Examiner's Report" or the "Report").  On June 26, 2013, the Bankruptcy Court entered its Order Unsealing the Examiners' Report.

7.      On July 3, 2013, the Debtors filed the Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors.

3

8.      On September 24, 2013, the Court entered the Order Approving Examiner's

Motion for Entry of Order Granting Discharge From Duties, Relief from Discovery, Approval of

Disposition of Investigative Materials, and Exculpation in Connection with Duties (the

"Discharge Order") [Docket No. 5187].

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2).

## COMPLIANCE WITH GUIDELINES AND ORDER GOVERNING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

10.     This Application has been prepared in accordance with the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy

Cases effective as of February 5, 2013 (the "Local Guidelines") and the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines" and, together with

the Local Guidelines, the "Guidelines").  Pursuant to the Guidelines, a certification regarding

compliance with same is attached hereto as Exhibit A.

4

## SUMMARY OF APPLICATION

### Fourth Fee Period

11.     Chadbourne seeks compensation for professional services rendered to the
Examiner during the Fourth Fee Period in the aggregate amount of $2,728,057.50 and
reimbursement of actual and necessary expenses incurred in connection with the rendition of
services during the Fourth Fee Period in the aggregate amount of $814,712.64.   During the
Fourth Fee Period, Chadbourne attorneys and paraprofessionals expended a total of 5,036.70
hours for which compensation is requested.

12.     A summary of the hours spent, the names of each professional and
paraprofessional rendering services to the Examiner during the Fourth Fee Period, the regular
customary billing rates and the total value of time incurred by each of Chadbourne's
professionals and paraprofessionals rendering services to the Examiner is attached hereto as
Exhibit B.

13.     Pursuant to the Guidelines, a schedule setting forth a description of the project
categories used in this case, the number of hours expended by Chadbourne partners, counsel,
associates and paraprofessionals by project category, and the aggregate fees associated with each
project category is attached hereto as Exhibit C.

14.     A summary of the actual and necessary expenses incurred by Chadbourne is
attached as Exhibit D which provides itemized expense detail.

15.     Chadbourne maintains computerized records of the time spent by all professionals
and paraprofessionals rendering services to the Examiner during the Fourth Fee Period.
Redacted copies of these computerized records are attached hereto as Exhibit E.

## Summary of Services During the Fourth Fee Period

16.     As set forth in the detailed computerized records attached hereto as Exhibit E,
fees incurred by Chadbourne during the Fourth Fee Period total $2,728,057.50.  The services
rendered by Chadbourne during the Fourth Fee Period are grouped into specific project
categories as set forth in Exhibit C.  The attorneys and paraprofessionals who rendered services
relating to each category are identified, along with the number of hours for each individual and
the total compensation sought for each category.

17.     The following is a summary of the activities performed by Chadbourne attorneys
and paraprofessionals during the Fourth Fee Period, organized by project category.

**A.     Case Administration/General Bankruptcy Matters**

18.     The majority of the time in this category was spent subsequent to the filing of the
Examiner's Report.  Tasks included the continued monitoring of newly filed pleadings from the
Bankruptcy Court's docket and preparing summaries of pertinent case filings relevant to the
Examiner until the entry of the Discharge Order.  Relevant Court papers included those related to
the unsealing of the Report.  On June 26, 2013, Chadbourne attended the hearing as to the
unsealing of the Report.  On that day, the Court entered an order unsealing the Report.

19.     Thereafter, during the Fourth Fee Period, Chadbourne attorneys performed
research regarding issues relevant to the Examiner's discharge and began drafting the related
motion.  Following the filing of the Examiner's discharge motion on August 23, 2013,
Chadbourne participated in numerous conferences with the United States Trustee, the United
States Attorney and Debtors' counsel regarding their response/objections to the discharge motion
and discussed proposed changes to the discharge order.   As part of this process, Chadbourne
attorneys researched and discussed requirements for transfer of the document depository to the

6

Debtors.   Chadbourne also participated in discussions with interested parties regarding the establishment of criteria to gain access to the depository.  On September 24, 2013, Chadbourne attended the Court hearing at which time the  Court entered the Discharge Order.  Thereafter, Chadbourne took steps to implement the terms of the Discharge Order, including by reviewing files for transfer and preservation.

**B.**       **Report Drafting and Legal Research**

20.      The drafting of the Examiner's Report was a substantial undertaking.  The filing of the Examiner's Report on May 13, 2013 was the culmination of an exhaustive analysis of almost nine million pages of documents produced by 23 different parties as well as 99 formal interviews of 88 witnesses.  The Report is comprised of over 2,200 pages and contains approximately 9,500 footnotes and 180 exhibits.  The Report analysed every material transaction between and among ResCap, Ally Financial, and their corporate affiliates over a seven-year period, involving complicated financings, mortgage-backed securities, derivatives and swaps. The Report made determinations on every material transaction and business dealing and its impact on the overall liability.

21.      In the first ten days of the Fourth Fee Period, Chadbourne attorneys devoted close to 4,000 hours in an exhaustive endeavour to complete the Report in the allotted time.  Efforts included the dedication of a team of Chadbourne attorneys working around the clock to thoroughly and carefully review the Report for accuracy.  Such efforts were necessary and appropriate in light of the size and complexity of the Report and the impending filing deadline.

C.    **Document Review and Analysis**

22.    The 525.40 hours of work performed in this category during the Fourth Fee Period consists of addressing and resolving the use of documents in the Examiner's Report, including (i) "clawback" requests involving approximately 17,500 documents; (ii) almost 100,000 documents identified as "Professional Eyes Only" by producing parties; and (iii) approximately 3,000 documents identified by producing parties as "Highly Confidential."

*Clawback Requests*

23.    In accordance with the Protective Orders  (as defined in Chadbourne's third interim fee application), parties were permitted to obtain the return of documents that were mistakenly provided to the Examiner because the documents were protected by an applicable privilege -- such as the attorney-client privilege, the work-product immunity or another legally cognizable privilege or protection -- and should never have been produced.  Chadbourne worked on reviewing the requested documents and determining whether a producing party's "clawback" request was proper.  A vast majority of the "clawback" requests were not challenged and the relevant materials were returned.  However, where a request was not proper in the view of the Examiner and his counsel, discussions with the requesting party were held.  In some cases, research and analysis was required on the scope of the asserted privilege.  Following substantial efforts by the Examiner's team and by the producing parties that made "clawback" requests, all disputed privilege issues were settled or otherwise resolved.

*Protected Documents*

24.    Chadbourne also spent substantial time during the Fourth Fee Period determining, when necessary, how to address almost 100,000 documents identified as "Professional Eyes Only" by producing parties, and approximately 3,000 documents identified by producing parties

8

as "Highly Confidential."  These documents, constituting approximately 8% of the total documents, are hereafter referred to as the "Protected Documents."

25.    For each type of Protected Document, the specific protections provided by the Protective Orders were different but all required the Examiner and Chadbourne to take certain steps before a document could be used in the Report.  Chadbourne was required to notify producing parties of its intended use of approximately 670 Protected Documents in the Report. While many of the producing parties agreed to the use of an identified Protected Document, some did not.  Some of the disputes regarding these documents could not be consensually resolved and the Examiner, through Chadbourne, was required to bring the matter before the Court.  Ultimately, the Examiner (with Chadbourne's assistance) was able to identify and otherwise use all of the documents it sought to use in the Report, in full or redacted form.

**D.    Investigation Planning and Coordination**

26.    General strategy sessions among the Examiner, Chadbourne and the Examiner's financial advisor, Mesirow Financial Consulting ("Mesirow") were critical during the final week leading up to the filing of the Examiner's Report to address and resolve the final issues and tasks that required attention.  In addition, certain of the transaction teams met during this time to finalize analyses and conclusions and confirm that all issues were adequately addressed in the Report.  Such coordination was necessary given the impending filing deadline and the complexity of the transactions and issues under review.

**E.    Fee/Retention Applications**

27.    This category encompasses all tasks relating to compliance with the Interim Compensation Order.  During the Fourth Fee Period, Chadbourne prepared and served the Examiner's and Chadbourne's monthly fee requests.  Also, Chadbourne prepared the Examiner's

and Chadbourne's third interim fee applications.  Chadbourne also attended the hearing related to

its third interim fee application.  During this period, Chadbourne began preparation of the

Examiner's and Chadbourne's final fee applications.

## ACTUAL AND NECESSARY EXPENSES

28.     As set forth in Exhibit D hereto, Chadbourne has incurred $814,712.64 in actual,

necessary expenses in providing professional services to the Examiner during the Fourth Fee

Period.  This amount reflects a credit of $4,356.36 for certain travel expenses described herein.

29.     With respect to photocopying expenses, Chadbourne's standard charge for

photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, Chadbourne has reduced

this charge to $0.10/per page.  With respect to facsimile expenses, in compliance with the

Guidelines, Chadbourne does not charge for facsimile transmissions, other than the cost of long

distance facsimiles at applicable toll charge rates, which invariably are less than $1.25 per page

permitted by the Guidelines.  These charges are intended to cover Chadbourne's direct operating

costs, which costs are not incorporated into Chadbourne's hourly billing rates.  Only clients who

actually use services of the types set forth in Exhibit D are separately charged for such services.

The effect of including such expenses as part of the hourly billing rates would impose that cost

upon clients who do not require extensive photocopying and other facilities and services.  The

amount of the standard photocopying charge is intended to allow Chadbourne to cover the

related expenses of its photocopying service.  A determination of the actual expense per page for

photocopying, however, is dependent on both the volume of copies and the total expenses

attributable to photocopying on an annual basis.  Each of these categories of expenses does not

exceed the maximum rate set by the Guidelines.  With respect to word processing costs,

Chadbourne does not include word processing charges in the firm's overhead for purposes of

10

setting billing rates, nor does Chadbourne seek reimbursement of any word processing charges in this Application.

30.    Given the vast amount of photocopying necessary to carry out the review of documents and preparation for witness interviews, Chadbourne used outside vendors to minimize turnaround time.   During the Fourth Fee Period, Chadbourne used the services of Perfect Imaging.  When using these services, Chadbourne's policy is to bill the client for these services at the amount charged by the outside vendor.

31.    Given the scale and complexity involved in the construction and finalization of the Examiner's Report, Chadbourne engaged the professional services of R.R. Donnelley for their printing expertise and production capability.   R.R. Donnelley's services included content management, typesetting, copyediting services and ultimately the production of a high-quality final product.  In addition, R.R. Donnelley provided a customized PDF version of the Report for proper and efficient transmission and e-filing.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

32.     In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne uses outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

33.    With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

11

34.     In connection with the investigation, Chadbourne entered into a contract for electronic data discovery services with Complete Document Source Inc. ("CDS").  Chadbourne uses the CDS hosted electronic discovery database (Relativity) in connection with its document review.  The CDS charges incurred during the Fourth Fee Period represent a monthly hosting fee as well as processing fees for loading data and/or converting data to a searchable format.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

35.     To facilitate the investigation process, Chadbourne entered into a contract with Firmex, a virtual data room where the Examiner and his professionals can share large volumes of confidential material online with authorized parties.  The amounts sought in this Application represent subscription fees incurred on a monthly basis pending turnover of the depository to the Debtors.

36.     With respect to court reporter fees, Chadbourne used the services of an outside vendor for transcription services in connection with interviews conducted by Chadbourne.  The reimbursement amounts also represent costs for obtaining court hearing transcripts and deposition transcripts.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

37.     With respect to the witness fee expense, Chadbourne reimbursed a witness for actual costs incurred with respect to his travel to New York in connection with both his initial and follow-up interview.

38.     Chadbourne attorneys and paraprofessionals used the services of West Publishing for research and retrieval of various court documents and public records to assist in the investigation.  Chadbourne attorneys also used Morningstar to provide research on various

investment products.  In seeking reimbursement for these outside professional services,

Chadbourne requests reimbursement for the actual costs incurred.

39.     Chadbourne attorneys and paraprofessionals used the services of National

Corporate Research to conduct UCC lien searches on the Debtors in various jurisdictions.  In

seeking reimbursement for these outside professional services, Chadbourne requests

reimbursement for the actual costs incurred.

40.     Chadbourne attorneys and paraprofessionals also use PACER (Public Access to

Court Electronic Records) as a tool to research and obtain vital information about these

Chapter 11 cases and cases in interest.  Chadbourne charges $.10/per page for the first thirty

pages, the rate at which Chadbourne is charged by PACER.

41.     Chadbourne continued to use the services of Update Legal, a legal staffing firm

which has provided Chadbourne with a number of contract attorneys to assist in the review of the

millions of pages of documents produced to the Examiner.  During the Fourth Fee Period, eight

to ten of the best contract attorneys were retained to assist with the review of the documents cited

in the draft Report sections and to confirm certain information therein.  Reviewers were also

asked to identify those documents cited in the drafts which the producing parties had designated

as "Professional Eyes Only" (also known as "PEO").  All contract attorney document review

work ended at the close of the first week of May.  In seeking reimbursement for these outside

professional services, Chadbourne requests reimbursement for the actual costs incurred.  In

connection with these services, Chadbourne incurred the expense of computer rental fees and

seeks reimbursement for same in this Application.

42.     The time constraints frequently imposed by the circumstances of these cases have

required Chadbourne's professionals and other employees at times to devote time during the

13

evenings and on weekends to the performance of legal services on behalf of the Examiner.

These extraordinary services were essential in order to meet deadlines and satisfy the demands in

connection with the Examiner's investigation of these chapter 11 cases.  Consequently, as a result

of the physical inability to complete every task required of Chadbourne during ordinary business

hours, Chadbourne professionals and employees were required to work in the evenings and on

weekends.  Given the significant demands on Chadbourne professionals and employees,

Chadbourne has, consistent with firm policy, charged the Debtors $547.40 for secretarial

overtime and $34,507.50 for paraprofessional overtime.  It should be noted that a portion of the

paraprofessional overtime was actually incurred in April (the third interim period), but processed

in May.  While working overtime, Chadbourne's paraprofessional team was substantially

engaged in assisting Chadbourne attorneys by reviewing and preparing numerous documents and

materials in preparation for final witness interviews.  During this period, Chadbourne's

paraprofessionals also continued their review of the draft Report and interview transcripts to

identify and index all cited resource materials and document references to aid in the analysis of

potential clawback and Protected Document issues.

     43.     Travel expenses were incurred by Chadbourne professionals in connection with

attending the various witness interviews, depositions and team meetings that took place during

the Fourth Fee Period.  This category includes charges for coach class air travel, Amtrak train

travel, reasonable hotel accommodations, meals and airport transportation.  Consistent with the

Court's instruction, this Application reflects a credit in the amount of $4,356.36 for certain travel

expenses incurred by Chadbourne attorneys who are based outside of New York and who

worked on this case and traveled to New York.  These expenses were previously sought in

Chadbourne's May fee statement.

14

44.     Also consistent with firm policy, attorneys and other employees of Chadbourne who worked late into the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  For purposes of these Chapter 11 cases, Chadbourne has capped overtime meal reimbursement at $20/per meal.  Chadbourne's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.  The reimbursement amounts do not exceed those set forth in the Guidelines.

45.     In addition, on several occasions, overnight delivery of documents and other materials was required as a result of emergencies necessitating the use of such express services. These disbursements are not included in Chadbourne's overhead for the purpose of setting billing rates.  Chadbourne has made every effort to minimize its disbursements in these cases.

46.     The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Examiner.

## PRIOR INTERIM FEE APPLICATIONS

47.     On October 19, 2012, Chadbourne filed its First Interim Fee Application for Allowance of Compensation and Reimbursement of Expenses For the Period July 11, 2012 Through August 31, 2012 seeking interim allowance of compensation in the amount of $3,295,849.50 and interim reimbursement of actual and necessary expenses in the amount of $127,003.11 [Docket No. 1897].  On December 28, 2012, the Court entered an order [Docket no. 2530] allowing $3,276,434.91 in fees and $113,425.41 in expenses on an interim basis.  In addition, the Court awarded payment of $298,534.12 of fees previously held back pursuant to the Interim Compensation Order.  By order dated September 25, 2013 [Docket No. 5205] the Court

15

awarded payment of the remaining $327,643.49 of fees previously held back pursuant to the
Interim Compensation Order.

48.    On March 14, 2013, Chadbourne filed its Second Interim Fee Application  for
Allowance of Compensation and Reimbursement of Expenses For the Period September 1, 2012
Through December 31, 2012 seeking interim allowance of compensation in the amount of
$17,301,345.50 and interim reimbursement of actual and necessary expenses in the amount of
$563,507.73 [Docket No. 3203].  On April 23, 2013, the Court entered an order [Docket no.
3556] allowing $17,126,345.50 in fees and $563,507.73 in expenses on an interim basis.  In
addition, the Court awarded payment of $1,547,150.44 of fees previously held back pursuant to
the Interim Compensation Order.  By order dated September 25, 2013 [Docket No. 5205] the
Court awarded payment of the remaining $1,712,634.55 of fees previously held back pursuant to
the Interim Compensation Order.

49.    On August 7, 2013, Chadbourne filed its Third Interim Fee Application for
Allowance of Compensation and Reimbursement of Expenses For the Period January 1, 2013
Through April 30, 2013 seeking interim allowance of compensation in the amount of
$23,771,407.75 and interim reimbursement of actual and necessary expenses in the amount of
$1,528,915.11 [Docket No. 4565].  On September 25, 2013, the Court entered an order [Docket
no. 5205] allowing $23,687,407.75 in fees and $1,498,902.04 in expenses on an interim basis.  In
addition, the Court awarded payment of $2,271,527.71 of fees previously held back pursuant to
the Interim Compensation Order.

16

50.    A summary of the hours spent, the names of each professional and paraprofessional rendering services to the Examiner during the Final Application Period, the regular customary billing rates and the total value of time incurred by each of Chadbourne's professionals and paraprofessionals rendering services to the Examiner is attached hereto as Exhibit F-1.

51.    A schedule setting forth a description of the project categories used in this case, the number of hours expended by Chadbourne partners, counsel, associates and paraprofessionals by project category, and the aggregate fees associated with each project category during the Final Application Period is attached hereto as Exhibit F-2.

52.    A summary of the actual and necessary expenses incurred by Chadbourne during the Final Application Period is attached as Exhibit F-3.

## DETERMINATION OF CHADBOURNE'S REQUESTED FEE

### A.    Basis for Calculation and Fee Request

53.    In seeking compensation in these Chapter 11 Cases, Chadbourne has applied its 2012 hourly rate structure for the period July 11, 2012 through and including October 31, 2013. For purposes of this Application, Chadbourne has calculated its request for compensation by multiplying (a) the hours spent on services rendered on behalf of the Examiner (except that Chadbourne's fees for attorney travel time were not billed in full but were instead reduced by 50%), and (b) the 2012 hourly rate assigned to each attorney or paraprofessional rendering such services.

54.    Chadbourne's fees during the Fourth Fee Period and Prior Applications Period are reasonable under the prevailing legal standard and should be allowed.  Section 330(a)(1) of the Bankruptcy Code provides that a court may award professionals "reasonable compensation for

17

actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  In

determining the amount of "reasonable compensation," the Court must consider the nature, the

extent and the value of the services, taking into account all of the relevant factors.  Such factors

include (i) the time spent on such services, (ii) the rates charged for such services, (iii) whether

the services were necessary and beneficial, (iv) whether the services were performed in a

reasonable amount of time commensurate with the complexity, importance, and nature of the

problem, issue, or task addressed and (v) whether the compensation is reasonable based on the

customary compensation charged by comparably skilled practitioners in cases other than cases

under the Bankruptcy Code.  See 11 U.S.C. § 330(a)(3); see also In re Kohl, 421 B.R. 115, 125

(Bankr. S.D.N.Y. 2009); In re Cenargo Int'l, 294 B.R. 571 (Bankr. S.D.N.Y. 2003).

     55.   In assessing the reasonableness of attorneys' fees under section 330 of the

Bankruptcy Code, the Second Circuit and bankruptcy courts in this district typically use the

"lodestar" method, which is a determination as to the number of hours of service reasonably

devoted to the case multiplied by the attorney's reasonable rates.  See, e.g., In re Gould, 363 B.R.

45, 49 (Bankr. D. Conn. 2007) ("Attorneys' fees are determined by calculating a lodestar . . .");

Masterwear Corp. v. Angel & Frankel, P.C. (In re Masterwear Corp.), 233 B.R. 266, 277 (Bankr.

S.D.N.Y. 1999); see also Aguilar v. E-Z Supply Corp., 06-CV-6790 (SLTRER), 2009 WL

2905545 (E.D.N.Y. Sept. 10, 2009) (applying lodestar approach to a non-bankruptcy case and

stating that the "Court of Appeals for the Second Circuit uses the lodestar method"); Savoie v.

Merchants Bank, 166 F.3d 456, 460 (2d Cir.1999) (applying lodestar approach to a non-

bankruptcy case).

18

56.   When applying the lodestar approach, courts in this district incorporate the familiar factors set forth in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974) (the "Johnson Factors").[7]  See, e.g., In re Kohl, 421 B.R. at 131(after calculating the initial lodestar amount, "courts then examine whether any adjustment is necessary, looking to . . . [the] twelve factors identified by the Fifth Circuit in *Johnson* . . ."); Aguilar, 2009 WL 2905545 ("when considering case-specific variables . . . courts in the Second Circuit follow the guidelines enumerated in *Johnson* . . ."); Betancourt v. Giuliani, 325 F. Supp. 2d 330, 332 n.3 (S.D.N.Y. 2004) ("In adjusting the lodestar, courts generally consider the . . . factors set forth in *Johnson* . . .").

57.   In awarding attorneys' fees, courts will also consider whether the services rendered were reasonably likely to benefit the debtor's estate.  See, e.g., In re Ames Dep't Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996), rev'd on other grounds, Lamie v. United States Trustee, 540 U.S. 526 (2004).

58.   In accordance with the foregoing, the amount requested by Chadbourne is fair and reasonable given: (i) the time and labor required; (ii) the novelty, complexity and size of these Chapter 11 Cases; (iii) the time and labor required to represent the Examiner effectively; (iv) the time limitations imposed on the Examiner; (v) the nature and extent of the services rendered; (vi) Chadbourne's experience, reputation and ability; (vii) the value of Chadbourne's services; and (viii) the fact that Chadbourne's fees are commensurate with fees that other attorneys of comparable experience and expertise have charged and been awarded in similar chapter 11 cases.

---

[7] The twelve Johnson Factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson, 488 F.2d at 717-719.

**B.    Chadbourne Voluntarily Refrained From Implementing
Generally-Applicable Rate Increases and Made Other
Significant Billing Concessions in the ResCap Engagement**

59.    Law firms such as Chadbourne typically implement two types of rate increases each year:  (a) structural increases, which are across the board increases in billing rates for the firm's timekeepers; and (b) maturation increases, which represent increases in individual timekeepers' billing rates to reflect an additional year of professional experience or promotion to a higher category, such as an associate becoming a partner.

60.    Chadbourne typically implements both structural and maturation increases on November 1 of each year and, accordingly, Chadbourne generally implemented those increases in other matters on November 1, 2012.  After consultation with the Examiner, however, Chadbourne did not implement **any** rate increases (structural or maturation) in the ResCap matter.  Therefore, from and after November 1, 2012, Chadbourne charged a lower rate for its work on the ResCap matter than it generally and customarily charged and collected for its work for other clients.  As a result of this concession, Chadbourne has voluntarily reduced the fees requested in the ResCap matter by approximately $1,774,000[8] from the standard rates that it generally bills and collects.

61.    In addition, Chadbourne made the following deductions to its fee and expense requests in the ResCap case that it would not necessarily have made in other matters:

- Chadbourne deducted (or refrained from billing) approximately $307,000 in fees to address issues raised by the United States Trustee such as "vagueness," "billing related time," transient time recorders, time spent by attorneys not yet admitted, and meeting attendance.  Chadbourne would not necessarily or typically have been asked for (or agreed to) those types of reductions in non-bankruptcy matters.  Chadbourne also reduced

---

[8] All amounts in paragraphs 57 through 59 are rounded to the nearest $1,000.

20

fees for attorney travel time by approximately $147,000, representing a deduction of 50%.

- Chadbourne also deducted approximately $225,000 in expenses, including reductions in charges for reproduction, word processing, proofreading, secretarial overtime, overtime and travel meals, and travel costs, that it would not necessarily have been asked for (or agreed to) in non-bankruptcy matters. Some (but not all) of these reductions were made at the request of the United States Trustee.

62.    When all of the concessions and reductions described in this subsection B. are included, Chadbourne has reduced its fees and expenses requested in this case by an aggregate of approximately $2,453,000—or approximately 5.0% of the fees that Chadbourne would have billed had it applied the standard non-bankruptcy rates that it generally bills and collects.

63.    For all of the reasons set forth below, Chadbourne submits that its fees and expenses sought by this Application are reasonable under the prevailing legal standard and should be allowed. Chadbourne's fees are commensurate with fees that other attorneys of comparable experience and expertise have charged and been awarded in similar chapter 11 cases and, as shown above, reflect a reduction from amounts that Chadbourne generally and customarily bills and collects in matters other than cases under the Bankruptcy Code.

64.    Moreover, pursuant to the standards set forth in section 330 of the Bankruptcy Code, the compensation requested is for actual and necessary services and expenses, and is reasonable, based upon the complexity, importance, nature, extent, and value of such services, the time spent thereon, and the costs of comparable services in a case other than a case under the Bankruptcy Code.

21

C.    **No Impermissible Sharing of Compensation**

65.    Except as permitted by rule 2016 of the Federal Rules of Bankruptcy Procedure, no agreement or undertaking exists between Chadbourne and/or any third person for the sharing or division of compensation.  All of the services for which compensation is requested in this Application were rendered at the request of and solely on behalf of the Examiner.

## NOTICE AND NO PRIOR APPLICATION

66.    Notice of this Application and of the hearing with respect hereto has been served upon the parties specified in the Interim Compensation Order in the manner required thereby.   In light of the nature of the relief requested herein, Chadbourne submits that no further or other notice is required.

67.    No previous application for relief sought herein has been made to this or any other court.

68.    As set forth in the attached certification, the Examiner has had the opportunity to review, and has approved, the amounts requested in the Application.

## FUTURE ACTIVITIES

69.    Chadbourne also respectfully requests that it be authorized to seek compensation for any reasonable fees for professional services rendered and reimbursement of actual and necessary expenses incurred, in each case after October 31, 2013 and prior to the effective date of any plan of reorganization of the Debtors, in connection with, among other things, any cooperation, assistance, responses (to discovery requests or otherwise), or other services arising out of its representation of the Examiner provided by Chadbourne, which payment and reimbursement shall be sought pursuant to further application to the Court.

WHEREFORE, Chadbourne respectfully requests that this Court enter an order (i)
authorizing final compensation in the total amount of $46,818,245.66 for professional services
rendered and final reimbursement of actual and necessary expenses incurred in connection
therewith in the amount of $2,990,547.82  with such total amount consisting of (a) $2,728,057.50
for compensation for professional services rendered and $814,712.64 for reimbursement of
actual and necessary expenses incurred for the Fourth Fee Period; and (b) $44,090,188.16 for
compensation for professional services rendered and $2,175,835.18 for reimbursement of actual
and necessary expenses incurred for the Prior Applications Period; (ii) authorizing and directing
the Debtors to remit payment to Chadbourne as set forth herein, less all amounts previously paid
on account of such fees and expenses; and (iii) granting such other and further relief as this Court
deems just and proper.

Dated:  New York, New York
        November 18, 2013

                                    **CHADBOURNE & PARKE LLP**


                                    By: */s/ Howard Seife*
                                        Howard Seife
                                        David M. LeMay
                                        30 Rockefeller Plaza
                                        New York, New York 10112
                                        Telephone:  (212) 408-5100
                                        Facsimile:   (212) 541-5369

                                        *Counsel for the Examiner*