1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Lead Case No. 12-12020-mg   Adv. Proc. No. 13-01208-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matters of:

RESIDENTIAL CAPITAL, LLC, et al.,

              Debtors.

- - - - - - - - - - - - - - - - - - - -x

NORA

                Plaintiff,

            - against -

RESIDENTIAL CAPITAL, LLC, et al.,

              Defendants.

- - - - - - - - - - - - - - - - - - - -x

              United States Bankruptcy Court

              One Bowling Green

              New York, New York

              November 15, 2013

              10:04 AM

B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2  Doc# 5501 Motion to Approve / Debtors' Motion for an Order

3  Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule

4  9019 Approving Settlement Agreement Between Debtor GMAC

5  Mortgage, LLC and GVC Mortgage, Inc. (related document(s)5499)

6

7  Doc# 5499 Motion to File Under Seal / Debtors' Motion, Pursuant

8  to Bankruptcy Code Section 107(b) and Bankruptcy Rule 9018, to

9  File Under Seal Redacted Portions of (I) The Motion for an

10  Order Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy

11  Rule 9019 Approving Settlement Agreement Between Debtor GMAC

12  Mortgage, LLC and GVC Mortgage, Inc. and (II) The Settlement

13  Agreement

14

15  Doc# 4744 Adj. Hrg. RE: Debtors' Motion Under Section 365 of

16  the Bankruptcy Code to Assume and Assign Servicing Related

17  Agreements with Impac Funding Corporation and Impac Mortgage

18  Holdings, Inc..

19

20  Doc# 5639, 5395 Amended Motion to Consolidate for Trial

21  Hearing, Briefing, Discovery and All Proceedings with Debtors'

22  Objection to Proofs of Claims #1 and #440 filed by Wendy Alison

23  Nora on behalf of Wendy Alison Nora.

24

25

1

2    Doc# 5330, 5502 Hrg. Re: Order to Show Cause, signed on

3    10/10/2013, Why Pro Hac Vice Admission of Wendy Alison Nora

4    Should not be Revoked. (related document(s)204, 482).

5

6    Doc# 5343, 5352 Motion to Reconsider FRCP 60 or FRBP 3008 to be

7    consolidated with already scheduled Order to Show Cause entered

8    on October 10, 2013 as Doc. 5330

9

10    Doc# 5641, 5347 Amended Motion to Disqualify to include

11    citation to Local Rule 2090-1 filed by Wendy Alison Nora on

12    behalf of Wendy Alison Nora. (related document(s)5347)

13

14    Doc# 5392 Motion to Consolidate for Trial Hearing, Briefing,

15    Discovery and All Proceedings on Debtors Objection to Nora

16    Proofs of Claims and with Nora v. Residential Funding Company,

17    LLC, et al. Adv. No. 13-1208 under FRCP 42(a) in the interests

18    of just, speedy and inexpensive resolution of proceedings as

19    required by FRCP 1 (related document(s)5153)

20

21    (CC: Doc no. 4632) Adj. Hrg. RE: Motion for Objection to

22    Claim(s) Number: 2781 / Debtors' Objection to Proof of Claim #

23    2781 of Syncora Guarantee Inc. filed by Gary S. Lee on behalf

24    of Residential Capital, LLC.

25

1

2  (CC: Doc no. 4520) Adj. Hrg. RE: Second Interim Application of

3  Hudson Cook, LLP as Special Counsel to The Debtors for

4  Compensation and Reimbursement of Expenses Incurred for the

5  Period January 1, 2013 through April 30, 2013 for Hudson Cook

6  LLP, Special Counsel.

7  ADJOURNED TO A DATE TO BE DETERMINED.

8

9  (CC: Doc# 5115, 5358, 5359) Motion for Objection to Claim(s)

10  Number: 2781, 7164 and 7170 ; Debtors Objection to Second

11  Amended Proof of Claim Amending Proof of Claim of Syncora

12  Guarantee Inc.

13

14  (CC: Doc# 5100) Motion for Objection to Claim(s) Number: 4443.

15

16  Doc# 5026 Notice of Objection to Claims / Notice of Debtors'

17  Combined Objection to Proofs of Claim Filed By Sidney T. Lewis

18  and Yvonne D. Lewis

19

20  (CC: Doc# 5153) Motion for Objection to Claim(s) / Debtors'

21  Combined Objection to Proofs of Claim Nos. 1 and 440.

22

23  Doc# 5236 Motion to Approve /Motion for Rehearing on Claim

24  Objection To The Reclassification of Claim From Secured to

25  Unsecured

1

2 (CC: Doc# 4734) Motion for Omnibus Objection to Claim(s) /

3 Twenty-Sixth Omnibus Objection to Claims (Borrower Claims with

4 Insufficient Documentation)

5 Hrg on this matter, solely as it relates to Karen Mitchell-

6 Smith for the Estate of Felecia V. Mitchell, has been adjourned

7 to December 11, 2013. Hrg on this matter, solely as to Mary

8 Lynn Weber and the Estate of Felecia Mitchell, will go forward.

9

10 (CC: Doc# 4887) Motion for Omnibus Objection to Claim(s) /

11 Debtors' Thirtieth Omnibus Objection to Claims (No Liability

12 Borrower Claims - Books and Records).

13 The hearing on this matter, solely as it relates to James C.

14 and Judith A. Winkler and M. Francine Modderno, will be going

15 forward. The hearing on this matter as it relates to Gwendell

16 L. Philpot has been adjourned to December 17, 2013.

17

18 (CC: Doc# 5108) Motion for Omnibus Objection to Claim(s) /

19 Debtors Thirty-Fourth Omnibus Objection to Claims (No

20 Liability-Employee Claims).

21

22 (CC: Doc# 5137) Motion for Omnibus Objection to Claim(s) /

23 Debtors Thirty-Fifth Omnibus Objection to Claims (No Liability

24 - Assigned Contract Claims)

25

1

2  (CC: Doc# 5138) Motion for Omnibus Objection to Claim(s) /

3  Debtors Thirty-Sixth Omnibus Objection to Claims (Misclassified

4  and Wrong Debtor Borrower Claims)

5  Hrg on this matter, solely as to Rhonda Deese, has been

6  adjourned to December 17, 2013. Hrg on this matter, solely as

7  to Lydia Alvarez, has been resolved pending final

8  documentation.

9  Hrg as it relates to all other claimants will be going forward.

10

11  (CC: Doc# 5139) Motion for Omnibus Objection to Claim(s) /

12  Debtors' Thirty-Seventh Omnibus Objection to Claims

13  (Misclassified and Wrong Debtor Borrower Claims).

14

15  (CC: Doc# 5140) Motion for Omnibus Objection to Claim(s) /

16  Debtors' Thirty-Eighth Omnibus Objection to Claims (Wrong

17  Debtor Borrower Claims)

18  This matter, solely as it relates to John and Gloria Brooks,

19  has been resolved. The hearing on this matter as it relates to

20  all other claimants will be going forward.

21

22  (CC: Doc# 5141) Motion for Omnibus Objection to Claim(s) /

23  Debtors' Thirty-Ninth Omnibus Objection to Claims (Wrong Debtor

24  Borrower Claims).

25

1

2  (CC: Doc no. 5142) Hrg. RE: Debtors' Fortieth Omnibus Objection

3  to Claims (No Liability - Non-Debtor and Amended and Superseded

4  Claims)

5

6  (CC: Doc no. 5144) Hrg. RE: Debtors' Forty-First Omnibus

7  Objection to Claims (Duplicate and Amended and Superseded

8  Borrower Claims).

9

10  (CC: Doc# 5150) Motion for Omnibus Objection to Claim(s) /

11  Debtors Forty-Second Omnibus Objection to Claims (Reduce and

12  Allow Borrower Claims).

13  The hearing on this matter as it relates to Jennifer and Jason

14  Schermerhorn has been adjourned to December 17, 2013. The

15  hearing on this matter as it relates to all other claimants

16  will be going forward.

17

18  (CC: Doc# 5151) Motion for Omnibus Objection to Claim(s) /

19  Debtors' Forty-Third Omnibus Objection to Claims (Insufficient

20  Documentation).

21  The hearing on this matter, solely as it relates CitiMortgage,

22  has been adjourned to December 11, 2013. A notice of

23  adjournment will be filed. The hearing on this matter as it

24  relates to all other claimants will be going forward.

25

1

2   (CC: Doc# 5152) Motion for Omnibus Objection to Claim(s) /

3   Debtors Forty-Fourth Omnibus Objection to Claims ((A) Late-

4   Filed Claims; (B) Duplicate Claims; (C) Redesignate and Allow

5   Claims; (D) Reduce and Allow Claims; (E) Redesignate, Reduce

6   and Allow Claims; (F) Reclassify, Reduce and Allow Claims; and

7   (G) Redesignate Claims).

8   Reset for 12/11/2013 at 10:00 am as to the claim of ISGN

9   Solutions, Inc. (Claim No. 5688), the claim of Elevenhome

10   Limited (Claim No. 6841) and the claim of Redwood Recovery

11   Services, LLC (Claim No. 6842). Hrg. RE: other claimants will

12   be going forward.

13

14   (CC: Doc# 5157) Motion for Omnibus Objection to Claim(s) /

15   Debtors Forty-Fifth Omnibus Objection to Claims (No Liability -

16   Property Tax Claims).

17

18   (CC: Doc# 5158) Motion for Omnibus Objection to Claim(s) /

19   Debtors Forty-Sixth Omnibus Objection to Claims (Insufficient

20   Documentation/Servicing/Duplicative Claims).

21

22   (CC: Doc# 5159) Motion for Omnibus Objection to Claim(s) /

23   Debtors' Forty-Seventh Omnibus Objection to Claims (No

24   Liability Claims - Books and Records).

25

1

2   (CC: Doc# 5160) Motion for Omnibus Objection to Claim(s) /

3   Debtors' Forty-Eighth Omnibus Objection to Claims (Borrower

4   Insufficient Documentation and No Liability Books and Records

5   Claims)

6

7   Doc# 5161 Motion for Omnibus Objection to Claim(s) / Debtors'

8   Forty-Ninth Omnibus Objection to Claims (No Liability Borrower

9   Claims - Books and Records)

10  Hrg. as to Randall D. Branson, Virginia Mattson, Ramona M.

11  Roberts, Bonnie Bonita Rose, Roger J. and Karen Evans, Deborah

12  L. Wetzel, William J. Futrell, Irene Schmidt and James & Anne

13  M. Ladd is adj. to 12/11/2013. Hrg Going Fwd re other

14  claimants.

15

16  (CC: Doc# 5162) Motion for Omnibus Objection to Claim(s) /

17  Debtors' Fiftieth Omnibus Objection to Claims (No Liability

18  Borrower Claims - Books and Records).

19  Hrg as it relates to Stewart Title Guaranty Company, Allison L.

20  Randle, Guerrino Degli, Esposti, Gerald Gandrup and Philip G.

21  Wright adjourned to 12/11/2013. Hrg re: Neville and Maribeth

22  Evans adjourned to 1/9/2014. Hrg. going fwd re: other

23  claimants.

24

25

1

2  Adversary proceeding: 13-01208-mg Nora v. Residential Capital,

3  LLC a Delaware limited liability company

4  Doc# 33 Motion to Consolidate for Trial Hearing, Briefing,

5  Discovery and All Proceedings with Debtors Objection to Proofs

6  of Claims and

7

8  Doc# 34 Motion to Disqualify Judge Martin Glenn under 28 USC

9  secs. 144, 455(a) and 455(b)(1) for extreme, actual prejudice

10  and threat to violate bodily safety and security of the

11  Plaintiff in her capacity as counsel for 3 interested parties

12  holding claims in the "Borrower" Classification prior to the

13  status conference in this case and thereby creating an

14  atmosphere of coercion by which Judge Glenn was able to proceed

15  to enter a Scheduling Order-circumstances do not permit a

16  finding of waiver of disqualification at or prior to the

17  Scheduling Conference. Scheduling Order is voluntarily

18  ratified; Judge Glenn's disqualification was not waived.

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

11

```
 1   A P P E A R A N C E S :
 2   MORRISON & FOERSTER LLP
 3          Attorneys for Debtors
 4          1290 Avenue of the Americas
 5          New York, NY 10104
 6
 7   BY:   NORMAN S. ROSENBAUM, ESQ.
 8          JORDAN A. WISHNEW, ESQ.
 9
10
11   MORRISON & FOERSTER LLP
12          Attorneys for Debtors
13          2000 Pennsylvania Avenue NW
14          Suite 5500
15          Washington, DC 20006
16
17   BY:   ALEXANDRA STEINBERG BARRAGE, ESQ.
18
19
20   MORRISON & FOERSTER LLP
21          Attorneys for Debtors
22          425 Market Street
23          San Francisco, CA 94105
24
25   BY:   ADAM A. LEWIS, ESQ.
```

1

2  CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

3        Conflicts Counsel to Debtors

4        101 Park Avenue

5        New York, NY 10178

6

7  BY:   MICHAEL A. COHEN, ESQ.

8

9

10  HUDSON COOK, LLP

11        Special Counsel to Debtors

12        7250 Parkway Drive

13        5th Floor

14        Hanover, MD 21076

15

16  BY:   LISA C. DELESSIO, ESQ.

17

18

19  HUDSON COOK, LLP

20        Special Counsel to Debtors

21        6 Hutton Centre Drive

22        Suite 840

23        Santa Ana, CA 92707

24

25  BY:   DANA CLARKE, ESQ.

1

2  UNITED STATES DEPARTMENT OF JUSTICE

3          Office of the United States Trustee

4          U.S. Federal Office Building

5          201 Varick Street, Suite 1006

6          New York, NY 10014

7

8  BY:   BRIAN S. MASUMOTO, ESQ.

9

10

11  KRAMER LEVIN NAFTALIS & FRANKEL LLP

12          Attorneys for Official Creditors' Committee

13          1177 Avenue of the Americas

14          New York, NY 10036

15

16  BY:   STEPHEN D. ZIDE, ESQ.

17          DOUGLAS MANNAL, ESQ.

18          ELISE S. FREJKA, ESQ.

19

20

21

22

23

24

25

1

2   SILVERMANACAMPORA

3         Special Borrowers' Counsel to the Committee

4         100 Jericho Quadrangle

5         Suite 100

6         Jericho, NY 11753

7

8   BY:   ROBERT D. NOSEK, ESQ.

9         JUSTIN S. KRELL, ESQ.

10

11

12   MILBANK, TWEED, HADLEY & MCCLOY LLP

13         Attorneys for Junior Secured Noteholders

14         One Chase Manhattan Plaza

15         New York, NY 10005

16

17   BY:   DENNIS C. O'DONNELL, ESQ.

18

19

20   LOCKE LORD LLP

21         Attorneys for Cerberus, MERS, et al.

22         111 South Wacker Drive

23         Chicago, IL 60606

24

25   BY:   JULIE C. WEBB, ESQ.

1

2    MCKENNA LONG & ALDRIDGE LLP

3          Attorneys for Impac Funding Corp.

4          230 Park Avenue

5          Suite 1700

6          New York, NY 10169

7

8    BY:   CHRISTOPHER F. GRAHAM, ESQ.

9          ALAN F. KAUFMAN, ESQ.

10

11

12   WOLLMUTH MAHER & DEUTSCH LLP

13          Attorneys for Syncora Guarantee

14          500 Fifth Avenue

15          New York, NY 10110

16

17   BY:   RANDALL R. RAINER, ESQ.

18

19

20   WEIL, GOTSHAL & MANGES LLP

21          Attorneys for Syncora Guarantee

22          767 Fifth Avenue

23          New York, NY 10153

24

25   BY:   SARA COETHO, ESQ.

1

2  MUNGER, TOLLES & OLSON LLP

3          Attorneys for Berkshire Hathaway

4          355 South Grand Avenue

5          35th Floor

6          Los Angeles, CA 90071

7

8  BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

9

10

11  BRADLEY ARANT BOULT CUMMINGS LLP

12          Attorneys for GMAC

13          1819 Fifth Avenue North

14          Birmingham, AL 35203

15

16  BY:   JON H. PATTERSON, ESQ. (TELEPHONICALLY)

17

18

19  ROSENBERG MUSSO & WEINER LLP

20          Attorneys for Creditor Albert Passeretti

21          66 South Service Road

22          Suite 100

23          Melville, NY 11747

24

25  BY:   ROBERT NADEL, ESQ.

1

2  JACK M. BERNARD ATTORNEY AT LAW

3          Attorneys for Creditor Mary R. Biancavilla

4          1930 Land Title Building

5          100 South Broad Street

6          Philadelphia, PA 19110

7

8  BY:   JACK M. BERNARD, ESQ.

9

10

11 MORGANROTH & MORGANROTH, PLLC

12         Attorneys for Creditor Critchley

13         344 N Old Woodward Avenue

14         Suite 200

15         Birmingham, MI 48009

16

17 BY:   MAYER MORGANROTH, ESQ. (TELEPHONICALLY)

18

19

20 CORLA JACKSON

21         Creditor, Pro Se

22

23

24 FELIX O. ABU

25         Creditor, Pro Se (TELEPHONICALLY)

1

2    MARCENE BURGIN

3          Creditor, Pro Se (TELEPHONICALLY)

4

5

6    ANTHONY L. DAVIDE

7          Creditor, Pro Se (TELEPHONICALLY)

8

9

10   TOMAS DIAZ

11          Creditor, Pro Se (TELEPHONICALLY)

12

13

14   RONALD ERIKSEN

15          Creditor, Pro Se (TELEPHONICALLY)

16

17

18   MICHELLE LAWSON

19          Creditor, Pro Se (TELEPHONICALLY)

20

21   MICHAEL MCGUINTY

22          Creditor, Pro Se (TELEPHONICALLY)

23

24

25

1

2    M. FRANCINE MODDERNO

3        Creditor, Pro Se (TELEPHONICALLY)

4

5    MARY LYNN WEBER

6        Creditor, Pro Se (TELEPHONICALLY)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2          THE COURT:  Please be seated.  We're here in

3   Residential Capital, number 12-12020.  Mr. Rosenbaum?

4          MR. ROSENBAUM:  Good morning, Your Honor.  Norm

5   Rosenbaum, Morrison & Foerster, for the debtors.  Your Honor,

6   we have a fairly lengthy agenda, but there's been a number of

7   resolved as well as adjourned matters.  A request has been made

8   that we actually deal with two matters first, those would be

9   relating to Syncora and Impact (sic).

10          THE COURT:  Go ahead.

11          MR. ROSENBAUM:  And that comes up on page 24 of the

12   agenda.

13          THE COURT:  Okay.

14          MR. ROSENBAUM:  Your Honor, I'll cede the podium to my

15   colleague Alex Barrage.

16          MS. BARRAGE:  Good morning, Your Honor.  Alexandra

17   Barrage of Morrison & Foerster --

18          THE COURT:  Good morning.

19          MS. BARRAGE:  -- on behalf of the debtors.

20          Your Honor, if we could please take the Syncora matter

21   first and then the Impac matter.

22          Your Honor, we're here on docket numbers 4718, the

23   debtors' motion to assume and assign the Syncora-related

24   agreements and the debtors' objection to Syncora's proofs of

25   claim as amended at docket numbers 4632 and 5115.

1          Your Honor, I'm happy to report that the parties have
2     agreed to a global resolution of these disputes.  We filed a
3     stipulation and a proposed form of order relating to our motion
4     earlier this morning at docket number 5771.  There are a few
5     minor tweaks -- nonsubstantive tweaks -- that we need to make
6     to that order, which we hope to submit shortly after today's
7     hearing for Your Honor's consideration.
8          And we'd like to just walk through a couple of the
9     main points of that stipulation to memorialize them on the
10    record.  Your Honor, just procedurally, the way that it works
11    is, we will be submitting a proposed form of order relating to
12    the motion.  As an exhibit to that motion, there will be two
13    documents.  The first exhibit will be the actual stipulation
14    which is the global stipulation of all issues that has been
15    approved by all parties, including Ocwen, Syncora, and the
16    debtors.  And the second attachment will be an exhibit listing
17    the Syncora-related agreements that are the subject of our
18    motion to assume and assign.
19         Your Honor, I have a copy of the stipulation, if I may
20    approach?
21         THE COURT:  Sure, please.  Thank you.
22         MS. BARRAGE:  Your Honor, the key aspects of the
23    stipulation are found at paragraphs 4 through 6.  The debtors
24    and Syncora have agreed to set the cure amount on the Syncora-
25    related agreements at four-and-a-half million dollars.  The

1  debtors will pay that cure amount to Syncora by wire within

2  three business days following the earlier of the transfer of

3  the assigned agreements to Ocwen or February 1st, 2014.  The

4  parties have also committed --

5           THE COURT:  Hang on just one second.

6           If you're on the phone, you need to put your phone on

7  mute, please.

8           Go ahead.

9           MS. BARRAGE:  Thank you, Your Honor.  The parties have

10  committed to meet and confer shortly after entry of the order

11  to discuss the logistics of the transition and the transfer.

12  And in addition, the other main feature of the stipulation is

13  that the debtors have agreed to provide unsecured claims at

14  GMAC at 7,840,000 dollars, and at RFC for 7,113,000 dollars,

15  which resolves the claim objection issue.

16           Your Honor, with that, I don't have anything further.

17  I'm not sure if Syncora has any words or the committee.  But we

18  thank Your Honor for your time.  And we are obviously pleased

19  with the result.

20           THE COURT:  Thank you.

21           MS. BARRAGE:  Thank you.

22           THE COURT:  Anybody else wish to be heard?  Mr.

23  Mannal?

24           MR. MANNAL:  Just briefly, Your Honor.  Doug Mannal on

25  behalf of the creditors' committee.

1              Just citing paragraph 2 of the proposed stipulation,

2    Syncora's objections to the plan are withdrawn, and Syncora is

3    now deemed to have accepted the plan pursuant to this

4    stipulation, Your Honor.

5              THE COURT:  All right.  Does anybody else wish to be

6    heard?

7              MR. RAINER:  Good morning, Your Honor.  Randall

8    Rainer; Wollmuth Maher & Deutsch, for Syncora.  I have nothing

9    to add, Your Honor; that Ms. Barrage did an accurate

10   representation of what is contained in the stipulation and the

11   order.

12             THE COURT:  All right.  What I would appreciate, Ms.

13   Barrage, if -- because you said there are a few tweaks that you

14   have to make -- submit a clean and a black-line with any

15   further changes, and I'll look at it.  I anticipate I'll go

16   ahead and enter it after I get it.  If I have any questions,

17   I'll let counsel know.  But as of now, I would anticipate

18   approving it.  I just want to see the final changes.  Okay?

19             MS. BARRAGE:  Will do, Your Honor.  Thank you very

20   much.

21             THE COURT:  Thank you very much.  I appreciate

22   everybody's effort to get this resolved.

23             MS. BARRAGE:  Thank you, Your Honor.  Again, Alexandra

24   Barrage of Morrison & Foerster, on behalf of the debtors.  The

25   next item is docket number 4744, which is the debtors' motion

RESIDENTIAL CAPITAL, LLC, ET AL.                    24

1  under Section 365 of the Bankruptcy Code to assume and assign

2  various servicing-related agreements with Impac Funding

3  Corporation and Impac Mortgage Holdings.

4          Your Honor, since the filing of our motion, we've been

5  able to significantly narrow the issues.  Today there's only

6  one issue of disagreement.  And as confirmed at yesterday's

7  status conference by Mr. Graham, this issue relates to the

8  proposed cure amount which is an issue we believe can be

9  addressed fairly easily, and I will address that in a moment.

10          Your Honor, the debtors have met their burden under

11  Section 365(b)(1) by demonstrating that proven defaults under

12  the Impac servicing-related agreements, will be promptly cured

13  upon transfer of the agreements to Ocwen.  Subject to the

14  establishment of an acceptable reserve to satisfy the disputed

15  cure amount, the debtors waive their ability to reject the

16  Impac agreements in question.

17          In addition, as noted in the declaration of Ms. Farley

18  submitted with our motion, the debtors have agreed to pay

19  approximately 288,000 dollars in undisputed cure amount upon

20  the transfer of the agreements to Ocwen.  The debtors were

21  previously prepared to cap the disputed cure claim exposure at

22  approximately 2.5 million, which was Impac's earlier estimate.

23  Today, in light of the supplemental declaration that was filed

24  by Impac last night at docket number 5763, which frankly, Your

25  Honor, neither the debtors nor the committee have had a chance

RESIDENTIAL CAPITAL, LLC, ET AL.                    25

1  to fully diligence -- but we will -- the debtors are prepared

2  to cap and reserve the disputed claim amount at Impac's revised

3  estimate of $3,091,483.85.

4        THE COURT:  Say that number again.

5        MS. BARRAGE:  $3,091,483.85.

6        Your Honor, we think agreeing to a reserve at a capped

7  amount is the most practical and reasonable way of resolving

8  this dispute.  I can tell you personally, I've been involved in

9  many cure disputes in this case.  I think that this is the only

10 one that's really been ever presented before Your Honor.  So we

11 certainly hope, without -- we would like to resolve this issue

12 without any further intervention, and we'd like to expedite the

13 transfer of these agreements to Ocwen.

14       So in parallel, what we propose is agreeing to a cap

15 and working with Impac and the committee to reconcile the cure

16 issue, and to the extent necessary, agreeing on a joint

17 discovery schedule, as we have with other counterparties in

18 this case, to get the facts.

19       We think that this approach is not only consistent

20 with our prior practice but in accordance with this Court's

21 earlier entered sale procedures order.  Thank you, Your Honor.

22 I have nothing further.

23       THE COURT:  All right.  Let me hear from Impac's

24 counsel.

25       MR. KAUFMAN:  Good morning, Your Honor.  Alan Kaufman

1  of McKenna Long & Aldridge, on behalf of Impac.

2          Most of the terms that I've been discussing with Ms.

3  Barrage, I think there's really no issue with.  The real issue

4  seems to be with their attempt to foist a cap onto Impac,

5  because doing so would not provide a full and complete cure.

6          THE COURT:  Hang on a second.

7          All right.  Somebody on the phone is either rustling

8  papers against the phone.  If you do not put your phone on

9  mute, you will be cut off.  I'm going to direct the CourtCall

10  operator, that if I continue to have interference on the phone,

11  you're going to be cut off without any further warning.

12          Go ahead, counsel.

13          MR. KAUFMAN:  Fine.  What I was saying, Your Honor,

14  was that their attempts to foist a cap onto Impac does not

15  provide a full and complete cure.  We take issue, number one,

16  with a cap at all, because --

17          THE COURT:  Well, you put in a -- I haven't seen it.

18  I'll tell you right now, I haven't seen what was filed last

19  night.  Did you put in an affidavit and you specified what you

20  believe the cure amount is?

21          MR. KAUFMAN:  No, Your Honor.  We put in the amount of

22  damages that have accrued to date.  Damages are continuing to

23  accrue.  And there's also a dispute amongst the parties which

24  we're reserving on as to the entitlement to attorneys' fees.

25  So the amount -- the cure amount or the sheet we put in last

RESIDENTIAL CAPITAL, LLC, ET AL.                    27

1  night merely reflects what the damages are as of yesterday.

2          So we -- and that amount is approximately 3.1 million.

3  All we're asking for, Your Honor, is a reserve, not a cap, of

4  3.95 --

5          THE COURT:  Okay, let me stop you right there.

6          MR. KAUFMAN:  Yes, Your Honor.

7          THE COURT:  Okay?  This was originally set for an

8  evidentiary hearing.  Then I was told that no evidentiary

9  hearing was necessary.  Now I'm being told that the amount

10 of -- the cure amount is disputed.  That sounds like an

11 evidentiary dispute.  Okay?

12         I'm obviously not resolving it now.  You will either

13 agree on a stipulation as to how you're going to proceed, or

14 very quickly, there is going to be an evidentiary hearing with

15 a very tight discovery schedule, and you're all going to come

16 forward with evidence.  What -- okay?

17         Because I feel, I set an evidentiary hearing, and then

18 I was told by both sets of counsel that this was a matter that

19 could be resolved as an issue of law and that no evidentiary

20 hearing was required.  And now you're standing there telling me

21 that there are disputes about the amount.

22         MR. KAUFMAN:  I apologize for the confusion, Your

23 Honor.  There have been --

24         THE COURT:  No confusion on my part.

25         MR. KAUFMAN:  No, no, no.  Confusion that we caused,

1    Your Honor.  We have been working on a stip that we, up until a

2    couple days ago, we thought was going to get done.  And

3    basically, what it would have provided for, is that everybody

4    kind of laid down their arms and agreed --

5           THE COURT:  When are you going to be able to go

6    forward with an evidentiary hearing?

7           MR. KAUFMAN:  I'll confer --

8           THE COURT:  No, tell me right now.  When are you

9    ready?  And I'm going to ask Ms. Barrage when she's ready.

10          MR. KAUFMAN:  Your Honor, we believe that we need

11   discovery from them --

12          THE COURT:  Well, you don't need discovery.  You'll

13   put witnesses on and we'll resolve it the old fashioned way.

14          Okay, this has been going on too long.  Okay?  You

15   represented to the Court that -- previously, that there were no

16   factual disputes.  For that reason, I concluded we wouldn't go

17   forward with an evidentiary hearing.  Okay?  You don't need a

18   discovery.  You have witnesses?  You'll put your witnesses on

19   the stand.  Are you ready to go next week?

20          MR. KAUFMAN:  Well, Your Honor, we also need documents

21   that we haven't received --

22          THE COURT:  Well, I -- you know, this has been going

23   on for too long.  Ms. Barrage, when are you ready to go?

24          MS. BARRAGE:  Your Honor, I will need to confer with

25   my client on that.  But just to reiterate our position, we're

1  prepared to reserve the amount that Impac says it believes its

2  due on cure claims.

3        THE COURT:  Sounds totally reasonable to me, but Impac

4  obviously doesn't want to go forward with what's obviously

5  quite reasonable.

6        You know, you put in a piece of paper last night.  You

7  put in an amount.  Now you're standing here today and telling

8  me well, that amount's going to increase.  How much do you

9  believe you're entitled to?

10        MR. KAUFMAN:  We asked them to reserve 3.95, because

11  we're not in agreement on attorneys' fees either, Your Honor,

12  and therefore we want --

13        THE COURT:  I asked you a direct question.

14        MR. KAUFMAN:  Three --

15        THE COURT:  How much of a re -- how much of a reserve

16  do you believe your client requires in order to put this matter

17  off until you can get it resolved?

18        MR. KAUFMAN:  3.95 million dollars, Your Honor.

19        THE COURT:  Ms. Barrage, what's your position?

20        MS. BARRAGE:  Your Honor, we don't have an issue

21  reserving 3.95 million.

22        THE COURT:  You don't have an issue with that?

23        MS. BARRAGE:  No, Your Honor.

24        THE COURT:  All right.  Counsel, are you ready to

25  stipulate that this matter can be adjourned, that the debtor

1  will reserve 3.95 million dollars, and we'll get this scheduled

2  in due course if you can't resolve it?

3          MR. KAUFMAN:  Yes, Your Honor.  Along the terms and

4  everybody reserves all rights.  Yes, Your Honor.

5          THE COURT:  Ms. Barrage, is that satisfactory?

6          MS. BARRAGE:  Yes, it is, Your Honor.

7          THE COURT:  All right.

8          MS. BARRAGE:  I don't know if the committee has any

9  comments, then.

10          THE COURT:  Mr. Zide?

11          MR. ZIDE:  Just to clarify, Your Honor.  Stephen Zide,

12  from Kramer Levin, on behalf of the committee.  That 3.95 would

13  be a cap?  That would be okay with us, if it's a cap.  I'm not

14  sure if that's the position that Impac's counsel is taking.

15          THE COURT:  Well, let me find out.  What does Impac's

16  coun -- are you agreeing to cap it at 3.95 million?

17          MR. KAUFMAN:  If we cap it, Your Honor, and it exceeds

18  it, then we're not getting a full and complete cure.  We're

19  just asking for a reserve of 3.95.

20          THE COURT:  All right.  Let's see.  I'm going to set a

21  trial; no discovery; bring your witnesses.

22          MR. KAUFMAN:  Your Honor, if --

23          THE COURT:  No, you're being completely unreasonable.

24  You misrepresented to the Court that this was a pure legal

25  issue, and nothing else was required.  Now you're telling me --

1          MR. KAUFMAN:  Your Honor, if --

2          THE COURT:  No, stop.  Don't interrupt me.

3      (Pause)

4          THE COURT:  You either work out a stipulation with the

5  debtors and the committee or this matter goes to trial on

6  Wednesday, December 11th at 2 p.m.  No discovery.  Let me know

7  by Wednesday, November 20th at 5 p.m., whether you've worked

8  out a stipulation as to which everyone's prepared to proceed

9  on.

10         Impac ought to know what the amount of its cure claim

11  is.  You don't need any discovery for that.  Everybody

12  understand?  And if it's going forward, I will enter -- if we

13  have to go forward with that evidentiary hearing, I will enter

14  a procedures order with respect to how that matter will go

15  forward.  But this is coming to an end.

16         MR. KAUFMAN:  Thank you, Your Honor.

17         THE COURT:  Next matter on the calendar.

18         MS. BARRAGE:  Thank you, Your Honor.

19         MR. KAUFMAN:  May be we be excused Your Honor?

20         THE COURT:  You're excused.

21         MR. KAUFMAN:  Thank you.

22         MR. ROSENBAUM:  Your Honor, Norm Rosenbaum, Morrison &

23  Foerster, for the debtors.  Your Honor, the first matter -- the

24  next matter on the calendar is at page 16, (V)(1).  Your Honor,

25  this is the debtors' motion -- I'm sorry, Your Honor.  I think

1  some of the parties would like to be excused.

2          THE COURT:  Anybody that wants to be excused, is

3  excused.

4          MR. ROSENBAUM:  Your Honor, this is the debtors'

5  motion for an order pursuant to Section 105 of the Bankruptcy

6  Code and Bankruptcy Rule 9019 to approve a settlement agreement

7  between GMAC Mortgage and GVC Mortgage.  Your Honor, this

8  motion and agreement resolves a fairly longstanding dispute as

9  to a four-million-dollar purchase demand that GMAC had made to

10  GVC.

11          We've received no objections to the motion, Your

12  Honor.  We did also file a motion to file limited portions of

13  the motion and the underlying agreement under seal.

14          THE COURT:  That's the part that gives me pause.

15          MR. ROSENBAUM:  I --

16          THE COURT:  Okay?

17          MR. ROSENBAUM:  -- assume so, Your Honor.

18          THE COURT:  I've written on this before.  I don't know

19  whether you've read my opinions on the subject of sealing.  I

20  don't know whether you've conferred with Mr. Masumoto or anyone

21  else in the U.S. Trustee's Office.  But I've rejected -- I've

22  previously -- not in this case -- I've rejected approval of

23  settlements filed under seal, where the argument in support of

24  sealing is precisely what you've made here, namely that you

25  don't want to disclose the settlement amount because you think

1    it will have an impact on settlement discussions in other

2    matters.

3              The issue is that under Section 107(b) of the

4    Bankruptcy Code, there's a very strong presumption of public

5    access to all bankruptcy court records.  And I assume you've

6    read my decisions on it.  And I didn't see anything in the

7    papers that would overcome my prior rulings in other cases

8    dealing with proposed settlements.

9              MR. ROSENBAUM:  Your Honor, I'll be brief, and I'd

10   just like to address that point very quickly.  These types of

11   settlements are more akin to ordinary course of business in

12   this industry.  It's quite frequent for both the -- consider

13   GMAC the middle person for this example.  GMAC purchases loans

14   from correspondents and then sells them either as whole loan

15   sales or into securitizations.  They obtain representation and

16   warranties from their seller and they make represent -- reps

17   and warranties to their purchaser.  And it's quite frequent and

18   pursuant to the documents, both the end purchaser, the

19   securitization or the whole-loan purchaser, has the right to

20   put back -- and we're very well aware of that in this case --

21   put back the loan to GMAC.  GMAC, in turn, has its

22   representation and warranties from its correspondent.  It has

23   the right to put back the loan or obtain indemnity from its

24   client.

25             It's really a normal course of operations --

1          THE COURT:  If what you were engaged in was ordinary

2    course of business that did not require the bankruptcy court's

3    approval, that would be fine.  But when you come to me with a

4    9019 and ask me to give approval to a settlement, I've made

5    clear before -- I've followed a decision of then District

6    Judge, now Circuit Judge Lynch.  And when you invoke the power

7    of the court to approve a settlement under 9019, I don't

8    approve secret settlements.  It's as simple as that.

9          MR. ROSENBAUM:  Thank you, Your Honor.

10          THE COURT:  Mr. Masumoto, do -- are you aware of this

11    issue?

12          MR. MASUMOTO:  No, Your Honor.  We didn't discuss

13    this.

14          THE COURT:  Okay.  So and I've made clear in prior

15    decisions that redaction may be appropriate in some cases.  You

16    need to confer with the U.S. Trustee's Office.  Because on the

17    issues of confidentiality of bankruptcy court records, the U.S.

18    Trustee has, in all cases that I've seen, had a very keen

19    interest in assuring public access to all information.

20          If it was ordinary course of business and didn't

21    require approval of the bankruptcy court, fine.  You wouldn't

22    be coming to me.  But you've come to me with a 9019.  And what

23    you haven't done is shown any extraordinary circumstances that

24    would lead me to depart from the position I've taken in a

25    written opinion in another case.  And essentially, I followed

1    the position that Judge Lynch had taken in refusing to approve

2    a settlement when he was a district court judge, a bankruptcy

3    settlement.

4            And this has come up several times.  And the last time

5    this has come up before me -- not in this case, again -- I

6    didn't write an opinion.  I told the parties exactly what I've

7    just told you.  And they went back and reworked the settlement

8    until they got to the point they were satisfied.  They

9    recognized if they wanted my approval of a settlement it was --

10   the terms had to be disclosed on the record.

11           MR. ROSENBAUM:  Thank you, Your Honor.  We would,

12   then, ask to adjourn the motion to the next omnibus date.

13   We'll need to speak to our counterparty.  That was --

14           THE COURT:  Okay, and speak -- look, confer with the

15   U.S. Trustee's Office.  It's conceivable, Mr. Rosenbaum, that

16   there are circumstances that would persuade me to depart from

17   the usual rule that I follow.  Because I have historically

18   found that that the U.S. Trustee is the party-in-interest most

19   concerned about assuring public access to all bankruptcy court

20   information, confer with them.

21           If you've worked out a resolution of the

22   confidentiality issue that's satisfactory to the U.S. Trustee,

23   I'm open to considering it again.  But not without that.

24           MR. ROSENBAUM:  I will do so, Your Honor.  Thank you.

25           THE COURT:  Okay.  So this is adjourned.

1          MR. ROSENBAUM:  Your Honor, the next matter on the

2    calendar, now that we've dealt with Impac, is on page 25, Your

3    Honor.  It's the -- this would be the second interim

4    application of Hudson Cook --

5          THE COURT:  Yes.

6          MR. ROSENBAUM:  -- which I believe is on for today.

7          THE COURT:  Yes.

8          MR. ROSENBAUM:  I believe representatives from Hudson

9    Cook are in the courtroom.

10          THE COURT:  Okay.

11          MR. ROSENBAUM:  Or on the phone.

12          THE COURT:  Is somebody from Hudson Cook in the

13    courtroom?

14          MS. DELESSIO:  Yes, Your Honor.

15          THE COURT:  Okay.

16          MS. DELESSIO:  Good morning, Your Honor.  Lisa

17    DeLessio from Hudson Cook.

18          THE COURT:  Good morning.

19          MS. DELESSIO:  Your Honor, we're here this morning on

20    Hudson Cook's second interim fee petition and responding to

21    three objections that the Trustee's Office made.  Two of those

22    objections have been resolved.  The first objection deals with

23    transitory timekeepers.  And Hudson Cook and the Trustee have

24    agreed that the Trustee will withdraw its objections to 2,305

25    dollars in fees.

1        The other matter that's been resolved is Hudson Cook

2   has agreed to withdraw its request for $2,866.50 for responding

3   to the Trustee's prior objection.

4        So the remaining issue, Your Honor, is the Trustee's

5   objection to Hudson Cook's approximately 99,000-dollars'-worth

6   of attorneys' fees for --

7        THE COURT:  Lump time entries?

8        MS. DELESSIO:  Yes, Your Honor.  Your Honor, and our

9   request here is that upon the filing of the Trustee's

10  objections, Hudson Cook, in an attempt to resolve the matter,

11  contacted the Trustee.  The Trustee requested that we resubmit

12  the time entries and in an unlumped fashion, which we did, and

13  we submitted a copy to the Clerk's Office.

14       After that, we were advised by the Trustee's Office,

15  that a ten-percent penalty would be imposed because we had

16  improperly lumped on the first time.  And I think, Your Honor,

17  our preliminary matter is, we hadn't, one, been on notice of

18  this.  Hudson Cook --

19       THE COURT:  Oh, come on.  Give me a break.  It's been

20  the law in this district, certainly as long as I've been on the

21  bench, which is about seven years, that you can't lump time

22  entries.  If you'd been present at any prior court hearings in

23  this case when fee applications come up, you know that the U.S.

24  Trustee regularly raises issues about lumped time entries and I

25  regularly raise those issues as well.  So don't tell me you

RESIDENTIAL CAPITAL, LLC, ET AL.                    38

1  weren't aware of it.  If you weren't, your head was buried in

2  the sand.

3         Go ahead.

4         MS. DELESSIO:  Your Honor, In this case, then, we

5  would be requesting that the Trustee waive the penalty of ten

6  percent, because the Trustee has indicated that there would be

7  a ten percent penalty even though we had submitted a revised

8  schedule of fees with the time in an unlumped fashion.

9         THE COURT:  I wouldn't describe it as a penalty.  But

10 my practice has generally been in dealing with lumped time

11 entries, to make a percentage reduction, depending on how

12 serious the problem is.  Here, 99,000 dollars from a total of

13 873,000 is a very substantial percentage of the application

14 that reflected lumped time entries.

15        MS. DELESSIO:  Right, so, Your Honor, well, there were

16 99,000 dollars'-worth of lump time entries, and subsequent to

17 that, the Trustee had indicated that we -- a potential

18 resolution would be a ten percent penalty, and we had asked

19 for --

20        THE COURT:  You use the term penalty.  I wouldn't -- I

21 would say a reduction in --

22        MS. DELESSIO:  A reduction --

23        THE COURT:  -- the fees that would be requested or

24 awarded.

25        MS. DELESSIO:  Yes, Your Honor.  So it would be a ten

RESIDENTIAL CAPITAL, LLC, ET AL.                    39

1  percent off of the 99,000 dollars as a deterrent of a future
2  violation.  And, Your Honor, we had submitted a prior fee
3  petition and this issue wasn't raised.  And unfortunately, we
4  didn't address this unlumping in the second fee petition.  We
5  have only one more fee petition.  We were independent counsel
6  to the foreclosure review as directed by the Federal Reserve
7  Board.  And that matter has resolved.  And in our next
8  petition, we would not do that.
9          So I'm just requesting that any penalty of that --
10          THE COURT:  It's not a penalty.  It's not a penalty.
11          Let me hear from Mr. Masumoto.
12          MR. MASUMOTO:  Good morning, Your Honor.  Brian
13  Masumoto for the Office of the United States Trustee.  Your
14  Honor, I believe counsel has stated the positions of the
15  parties, and our position is that as we have routinely, I
16  think, throughout this case, indicated that where there has
17  been an objection by the U.S. Trustee for vague and/or lumped
18  time entries, even if the time entries are corrected, we do
19  request a reduction of ten percent.
20          We believe that that reduction serves as a deterrent
21  for future noncompliance.  If no deterrent is present, there's
22  nothing to prevent any timekeeper or any professional from
23  submitting their entries without any corrections, without
24  compliance with the guidelines, and if caught, merely have to
25  do the work that they should have done originally.

1        So we believe that the ten percent reduction in cases

2    where there are vague or lumped time entries is appropriate.  I

3    believe we also follow a practice that's fairly routinely

4    imposed by fee examiners that are appointed in these bankruptcy

5    cases.  Accordingly, we do request that notwithstanding the

6    corrected time entries, that a reduction of ten percent be

7    imposed.

8        I would also like to point out, although our office

9    prefers and in fact requests that when the revised time entries

10   are submitted they be essentially black-lined so that the U.S.

11   Trustee, in reviewing the revisions, can easily identify the

12   changes, in this case, from what I've seen, no such effort was

13   made in that regard, which makes it doubly hard to confirm the

14   corrected time entries.

15       THE COURT:  All right.  I have a few more questions,

16   counsel.  Why don't you come on back up to the --

17       So, I would only add that my chambers, we review fee

18   applications very carefully, and we spend a lot of time doing

19   it.  And so when we see fee applications that include lumped

20   time entries, it is not only the U.S. Trustee but it is also me

21   and my law clerks and interns who've devoted a lot of time

22   reviewing applications that are inadequate.

23       I think the major problem that arises with the lumped

24   time entries -- and this is my question to you is -- how did

25   you go back and reconstruct and break down the lumped entries?

1  The problem that I've always recognized is, it's so hard to go

2  back and deconstruct work done over a lengthy period of time.

3  And so when we see the delumped entries, do I have confidence

4  that that reflects reality or was it simply an effort to take a

5  number, break it down, divide it up, without an assurance that

6  accurately reflects what was really done.  So what did you do

7  here to break down the lumped entries?

8          MS. DELESSIO:  Right.  Your Honor, what we did was, we

9  made our reasonable best effort to go back.  Our time entries,

10  as I stated, were all related to work done on the independent

11  foreclosure review, so they were somewhat all tangentially

12  related to the same types of things or the same type of work

13  that was done.

14          Where there were specific calls or meetings, we would

15  go back to our calendars, go back to our e-mails, and to

16  attempt our best efforts to reasonably reconstruct all of the

17  time that was done.  What we did not do was go back and line-

18  by-line break things out.  We just went back and put matters in

19  parentheses.

20          And I believe my partner, Dana Clarke, is on the

21  phone, and he had initially raised this issue with the

22  Trustee's Office, and that was a practice, like you noted, that

23  we would go back and make our reasonable best efforts, based on

24  our --

25          THE COURT:  Let me ask you a couple other questions.

1          MS. DELESSIO:  Sure.

2          THE COURT:  The expense report -- the expenses that

3    I've seen were lumped.  Travel expenses per individual were

4    submitted as expense with no further breakdown.  Did you

5    provide the U.S. Trustee's Office with a detailed breakdown of

6    expenses?

7          MR. CLARKE:  This is Dana Clarke from Hudson Cook.  We

8    did that.

9          THE COURT:  You -- let me make sure what it is that

10   you did.  You gave the U.S. Trustee the detailed breakdown of

11   travel expenses.  Is that correct?

12         MR. CLARKE:  Yes, we provided the receipts and

13   invoices.

14         THE COURT:  All right, Mr. Masumoto, can you address

15   that?

16         Let me just say, I think Hudson Cook's role in the

17   case has come to an end, and so this won't continue to be an

18   issue, but the Court always insists on seeing the detail.  I

19   don't take lumped expenses either.  We review them to determine

20   that they're all appropriate.

21         Mr. Masumoto, can you confirm that you were given the

22   details of the expenses?

23         MR. MASUMOTO:  I'm afraid, Your Honor, that because of

24   the large fee applications, they were divided among --

25         THE COURT:  Okay.

1          MR. MASUMOTO:  -- the different attorneys.

2          THE COURT:  All right.

3          MR. MASUMOTO:  I personally don't recall getting --

4     I'm not sure if there were any -- I'm sorry, let me back up.

5          In our objection, we did not raise issues regarding

6     the expenses.

7          THE COURT:  Right.

8          MR. MASUMOTO:  So, I'm not sure if --

9          THE COURT:  Okay.

10         MR. MASUMOTO:  -- the itemized document production was

11    made subsequent to our objections or whether or not the

12    references to the itemization that was provided in the original

13    fee application.

14         THE COURT:  All right.

15         MR. MASUMOTO:  But I did not personally see any

16    subsequent documentation after we filed our objection.

17         THE COURT:  So, counsel, on the phone, I apologize;

18    tell your name again.

19         MR. CLARKE:  Okay.  Mr. Clarke, tell me what it is you

20    provided to the U.S. Trustee's Office with respect to expenses.

21    Because the expense total that you're seeking is a little over

22    15,000 dollars.  So it's not an insignificant sum.  What is --

23    and the only thing I saw was lumped expense entries without a

24    detailed breakdown and invoices.

25         What is it that you provided to the U.S. Trustee and

1    when?

2            MR. CLARKE:  Prior to the objection we submitted the

3    actual invoices, so receipts from meals, receipts from air

4    travel, receipts from hotels.  That's why they didn't raise it

5    in this application, because we went through line-by-line and

6    addressed the expense issues that they had on our first interim

7    fee application and literally went through and identified where

8    they didn't meet the requirements.  And then we didn't seek

9    those amounts.

10           THE COURT:  Okay.  All right.  Here's going to be the

11   Court's disposition of the Hudson Cook fee application.  With

12   respect to the fees, counsel has indicated a number of the

13   issues as to which an agreement on reduction was made.  With

14   respect to this issue of lumped time entries, which totaled

15   $99,011.50, the Court is going to impose a reduction of $9,000

16   because of the lumped time entries.

17           Again, the task of reconstructing and breaking down

18   lumped time entries is a difficult and imprecise effort in most

19   cases.  That's why it has to be done right the first time.

20   It's not a penalty the Court's imposing.  As I always do -- I

21   should tell you that my usual reductions range from ten to

22   twenty percent.  So I'm imposing a reduction of slightly less

23   than ten percent of the amount.

24           But before actually signing an order approving these

25   fees, Mr. Masumoto, you can confer with counsel, I want to be

1   satisfied that your office, in fact, received the detail backup

2   for the expenses.  If that was so, then counsel can go ahead

3   and submit an order for approval.  Any time any counsel submits

4   expense reports, I expect to see the detail.  We do review it.

5   We look to see whether -- make sure the flights were coach.  We

6   look to make sure the meals were all allowable.  They need to

7   identify who the people were who were having the meal, if it

8   was more than one person.

9          Our new general order is quite clear on we no longer

10  simply refer to the U.S. Trustee Guidelines.  We've included it

11  in our general order as to meal expense caps, et cetera.  So

12  assuming that you confer with the U.S. Trustee and they're

13  satisfied with respect to the expenses, you can go ahead and

14  submit an order with the fees and expenses as revised.

15         MR. MASUMOTO:  We'll do so, Your Honor.

16         THE COURT:  Thank you, Mr. Masumoto.  Thank you,

17  counsel.

18         MS. DELESSIO:  Thank you, Your Honor.

19         THE COURT:  Thank you.

20         MR. ROSENBAUM:  Your Honor, the next -- Norm

21  Rosenbaum, Morrison & Foerster.  Your Honor, the next matter on

22  the agenda is at page 27.  We're moving into the claims

23  objection portion of the hearing.  That's number 3.  This is

24  the debtors' objection to the proof of claim filed by Sidney T.

25  Lewis and Yvonne Lewis.  And I'm going to cede the podium to my

1  colleague, Adam Lewis.

2        MR. LEWIS:  Good morning, Your Honor.  Adam Lewis of

3  Morrison & Foerster, for the debtors.  The first objection I'm

4  dealing with this morning is the objection to the proof of

5  claim by Sidney and Yvonne Lewis.

6        We filed the objection and got no response.  I don't

7  know if the Lewises are here or on the phone.

8        THE COURT:  Is anybody on behalf of the Lewises on the

9  phone or in the courtroom?

10        Go ahead.

11        MR. LEWIS:  Thank you, Your Honor.  The Lewises, the

12  Court will recall, filed an adversary proceeding in this case.

13  Prior to the bankruptcy, we foreclosed on two pieces of

14  property that they were related to, one they owned and one Mr.

15  Lewis was an executor for.  Both were confirmed -- both the

16  foreclosure and the sheriff's sale confirmation orders are both

17  final, pre-petition.

18        The Lewises filed an adversary proceeding before this

19  Court which, to put it gently, was unintelligible, and this

20  Court ultimately granted our motion to dismiss and denied the

21  Lewises the opportunity to amend, basically on the ground that

22  given the unintelligible nature of the complaint, as well as

23  the Lewises' litigious history, there would be no point in an

24  amendment.  It didn't seem likely that they would be able to

25  come up with anything that made any sense.

1          THE COURT:  My recollection is that the Lewises were

2    previously determined by other courts to have filed frivolous

3    proceedings in other courts.  I believe that Mr. Lewis and his

4    wife have had several bankruptcies in the Southern District of

5    Ohio, if I'm remembering correctly.

6          MR. LEWIS:  That's correct, Your Honor.  It's in the

7    record in our pleadings here.

8          THE COURT:  Yes.  And --

9          MR. LEWIS:  And this Court has recently done the same

10   thing, essentially, for the Lewises.

11         THE COURT:  Right.  Right.

12         MR. LEWIS:  Instructed them not to file anything

13   further without --

14         THE COURT:  Correct.

15         MR. LEWIS:  -- this Court's permission.  And I don't

16   know if that's why they didn't file a response, because that

17   order came out before their response was due.

18         THE COURT:  The debtors' objection to the claim filed

19   by Sidney T. Lewis and Yvonne D. Lewis, is sustained.

20         MR. LEWIS:  Thank you, Your Honor.  Your Honor, I have

21   the next matter as well, which is the objection to the claim by

22   Corla Jackson.  Again, we filed this, gave timely notice,

23   didn't get a response, and again, I don't know whether Ms.

24   Jackson is here or on the phone.

25         THE COURT:  All right.  Is anyone -- Ms. Jackson or

1    anyone appearing for or on behalf of Ms. Jackson?  Come on up.

2         (Pause)

3            THE COURT:  Just identify yourself for the record, if

4    you would?

5            MS. JACKSON:  Corla Jackson.

6            THE COURT:  Thank you very much, Ms. Jackson.  Let's

7    see if we can -- somebody, if you can -- there's a seat

8    available.  I'll call on you to speak as well.  Okay?  Why

9    don't you have a seat?

10           Go ahead.

11           MR. LEWIS:  Thank you, Your Honor.  The objection to

12   Ms. Jackson's claim is essentially binary.  The first objection

13   is that it's barred by the doctrine of judicial estoppel.  And

14   the second objections are objections to the pleadings

15   themselves as being incomprehensible and not meeting the

16   appropriate federal standards of putting the defendants the

17   notice of what they were supposed to have done and why that

18   gives rise to some sort of claim.

19           As the Court will recall from the proofs of claim, the

20   material attached to the proof of claim is massive, sort of

21   unrelated.  There's no explanation of how this mass of material

22   gives rise to any claims against the debtors.  And so on those

23   grounds, alone, we believe that the claim should be disallowed.

24           Whether the Court wants to give Ms. Jackson leave to

25   amend, is of course, another matter.  Although given what's

1    happened before in the district court, it doesn't seem like

2    we're going to see anything any more intelligible than we have

3    seen in the proof of claim.

4             The judicial estoppel argument is based upon the fact

5    that Ms. Jackson, who in her third bankruptcy -- Chapter 13

6    bankruptcy -- filed in 2011, in her schedules, did not state or

7    list any claims against the debtors or the other party here,

8    which was Option 1.  She amended the claim and amended her

9    plan -- amended her schedules and amended her plan, and still

10   didn't set forth claims against the debtors or Option 1.

11            The claims that she asserts now apparently -- because

12   she doesn't exactly relate this -- but there was a lawsuit she

13   brought after filing her bankruptcy, based upon events that

14   occurred before her bankruptcy that looks a lot like the proofs

15   of claim here.  So there may also be other kinds of defenses.

16   But she did not disclose those claims, even though they relate

17   to pre-petition -- pre-Chapter 13 petition events, and even

18   though she had counsel in the bankruptcy case and clearly knew

19   about the facts that she asserted shortly after filing the

20   bankruptcy case.

21            And so we think she was fully aware.  She did -- and

22   as evidence of her ability to schedule contingent and

23   unliquidated claims, she did schedule such a claim against

24   State Farm in her original schedules in this third Chapter 13.

25   So she knows what to do.  She had the advice of counsel.  And

1   we think that the evidence discloses that she knew she had the

2   claims, that she --

3           THE COURT:  What's the status of the Chapter 13 case?

4           MR. LEWIS:  The 13 has been closed, Your Honor.  It

5   was closed, I think, this year.

6           THE COURT:  Without a plan confirmed?

7           MR. LEWIS:  There was a plan confirmed.

8           THE COURT:  And was it concluded?

9           MR. LEWIS:  I don't think it was.  I don't think it's

10  been -- I don't think it's been performed.  There's a docket

11  sheet for the 13 in the exhibits.  It indicates the case was

12  closed.  And there's an entry that she's barred for ninety

13  days, which suggests to me that she didn't complete her plan.

14          THE COURT:  Well, a plan takes three to five years to

15  complete, so --

16          MR. LEWIS:  Yeah.

17          THE COURT:  -- when was the third bankruptcy filed?

18          MR. LEWIS:  It was filed in early 2011, I think it

19  was.  She had filed two Chapter 13s before and attempted to

20  deal with our mortgages -- our mortgage in both cases, and

21  failed in both cases.  The second case was dismissed because

22  she didn't even begin making her pre-confirmation payments.

23          So we think the evidence is that she knew of the

24  claims, she knew how to schedule the claims.  She is not in a

25  situation where she's going to be able to pay her creditors in

1   full.  And so there's evidence, at least inferential evidence

2   that she concealed these claims in order to hold onto the

3   proceeds of them, rather than sharing them with her creditors.

4           This is a classic case of judicial estoppel, I think,

5   Your Honor, and that's the main objection to go with our

6   objections on the pleadings.

7           THE COURT:  All right, let me hear from Ms. Jackson.

8           MR. LEWIS:  Thank you, Your Honor.

9           THE COURT:  Come on up.

10          MS. JACKSON:  Hi, Judge Glenn.  How are you?

11          THE COURT:  Nice to see you again, Ms. Jackson.

12          MS. JACKSON:  Nice to see you.  First of all,

13  everything he said is invalid.  I'm sorry to say that.  My

14  bankruptcy was discharged by Judge Mahoney, not dismissed,

15  because when GMAC Mortgage fabricated a note in my name, Option

16  1 Mortgage was closed and had changed its name, and they had

17  forced me into bankruptcy in 2005.

18          THE COURT:  May I ask you this?  So you no longer have

19  a Chapter 13 case pending.  Is that right?

20          MS. JACKSON:  They have all been honorable --

21          THE COURT:  No, I'm just trying to understand --

22          MS. JACKSON:  -- discharged.

23          THE COURT:  Okay.  Well, you say "discharged".  Was it

24  dismissed?

25          MS. JACKSON:  No, sir.  I brought the evidence.

1        THE COURT:  All right.  Why don't you bring it up, let

2    me see it.

3        MS. JACKSON:  Okay.

4        THE COURT:  Don't give me everything right now.  Just

5    give me that one piece of paper.

6        MS. JACKSON:  Here's the first discharge.  Here is

7    they committed fraud.  That was the discharge.  This right here

8    was a discharge.  You know, I've got the letter.  That's the

9    discharge.  That's two discharges.  And oh, I found out where

10   they fabricated my note from.

11       THE COURT:  Well, right now, I just want to find out

12   what happened to your most recent Chapter 13 case.

13       MS. JACKSON:  Okay.  Oh, and the judge said they

14   didn't have no contract with me.  That was dismissed too very

15   fast.  There's the second one, and there's all of the

16   discharges.  Okay, that is the barred one, because they moved

17   the case.  This is confirmed.  That's the discharge from what

18   he's talking about.  And here is the other discharge --

19       THE COURT:  Okay.  Why don't you bring that up and let

20   me look at it.

21       MS. JACKSON:  Here's a letter --

22       THE COURT:  Don't give me too much.  I just want to

23   see what happened to your Chapter 13 case, okay?  I'll give

24   them right back to you, okay?

25       (Pause)

1            THE COURT:  Okay.

2            MS. JACKSON:  And then this was the latest case in

3    Alabama, where they say they didn't have a contract.

4            THE COURT:  Okay.  Okay.  Just a second.

5            MS. JACKSON:  It's the first --

6            THE COURT:  Just -- just stop, okay?

7        (Pause)

8            THE COURT:  Okay, you can go back to -- thank you very

9    much.

10           MS. JACKSON:  You're welcome.

11           THE COURT:  So, Ms. Jackson, you showed me some

12   papers, but none of them indicate to me what happened to your

13   most recent bankruptcy case.  You got a discharge -- you had a

14   case in 2005, and you successfully completed a Chapter 13 plan,

15   and that case was closed with a discharge.  But as I understand

16   it, you had bankruptcy proceedings after that.  And what I

17   don't --

18           Maybe counsel for -- either special borrowers'

19   counsel -- let me ask, Mr. Nosek, can you enlighten me about

20   this matter?  Or one of you or your colleagues?

21           MR. NOSEK:  Robert Nosek, special borrower counsel for

22   the committee.  In looking through the attachments to the

23   objection, we find that there is a dock -- it looks like a full

24   docket for the 2011 case.  And attached behind that is also a

25   Schedule B.  And the docket -- I was just flipping through it

RESIDENTIAL CAPITAL, LLC, ET AL.                    54

1   right now to make sure that I didn't see an amendment to the

2   schedules.  Assuming that I don't find one, the schedules

3   clearly do not reflect any claims against the debtors.

4              THE COURT:  Is the case still open?

5              MR. NOSEK:  No, the case was closed.

6              THE COURT:  Closed on what basis?

7              MR. NOSEK:  It was on 9/27/2012, it's an order and

8   notice dismissing case barring the debtor.  And it looks like

9   for three months, approximately.  Now, I don't have a copy of

10  the order in front of me so I don't know what the order exactly

11  says.

12             THE COURT:  Barring her from filing another case?

13             MR. NOSEK:  I don't have --

14             THE COURT:  You don't know?

15             MR. NOSEK:  -- the order in front of me, Your Honor,

16  unfortunately.  We could probably pull the docket up on the

17  laptop.  It looks like she did get an order confirming the case

18  four or five months --

19             THE COURT:  Confirming a plan.

20             MR. NOSEK: -- before, but there was a pending motion

21  to dismiss probably by the trustee.  But according to the

22  docket of the case, the case -- she did not receive a discharge

23  and her -- the case basically was dismissed within five months

24  of confirming the plan.

25             It's a very lengthy docket.  So it looks like there

1  was a lot of pre-activity for several years.  Does that help

2  Your Honor?

3           MR. LEWIS:  Your Honor, the docket entry -- and if the

4  Court has the objection in front of you, it's Exhibit F is the

5  docket sheet.  The docket entry on 9/27/12, the plan --

6           THE COURT:  Hang on.

7           MR. LEWIS:  -- was confirmed on 3/23 --

8           THE COURT:  Just stop, stop, stop, stop.

9       (Pause)

10           MR. LEWIS:  Your Honor, I'd be happy to share my

11  copy --

12           THE COURT:  No, just stop.  No, I'll find it.

13           MR. LEWIS:  Okay.

14           THE COURT:  There's just a little bit of paper up

15  here.

16           MR. LEWIS:  All right.

17           THE COURT:  All right, which tab?

18           MR. LEWIS:  F, Your Honor.  This is an exhibit to the

19  Delehey declaration.

20           THE COURT:  Yes.  Right.

21           MR. LEWIS:  And if you go over to --

22           THE COURT:  It's a long document.

23           MR. LEWIS:  It is.  If you go over to -- if you look

24  at the very top of the pages, there's a 17 of 18.

25           THE COURT:  Okay.  I'm there.

1          MR. LEWIS:  Okay.  And if you look at 3/23/12, that's
2     the confirmation order.
3          THE COURT:  Yes.
4          MR. LEWIS:  And then if you look at 9/27/12, you see
5     "Order and notice dismissing case, barred Debtor Jackson,
6     starting 9/27/12 to 12/25/12," signed on 9/27/12 related to
7     document --
8          THE COURT:  Do I have that --
9          MR. LEWIS:  -- order on motion to dismiss case.
10         THE COURT:  Do I have that actual order?
11         MR. LEWIS:  No, you don't, Your Honor.
12         THE COURT:  What counsel is referring to is docket
13    entry number 116 in case number 11-01545 in the Bankruptcy
14    Court for the Southern District of Alabama.  And docket entry
15    116 is described in the docket sheet as "Order and notice
16    dismissing case, bar Debtor Jackson, Corla Reeve, starting
17    9/27/2012 to 12/25/2012."  The related document is docket
18    number 64.
19         MR. LEWIS:  Your Honor, counsel for the borrower
20    committee has a copy of the order on one of these little
21    devices, if the Court would like to see that.
22         THE COURT:  How long is the order?
23         MR. LEWIS:  Very short.
24         THE COURT:  Read it to me.  Read it to me.  Just read
25    it to me.

 1          MR. LEWIS:  Oh, read it to you.  I'm sorry, Your

 2  Honor.

 3          THE COURT:  It'll be in the record.

 4          MR. LEWIS:  Yes.  So it says "Order dismissing Chapter

 5  13 case.  This matter is before the Court upon the debtor's

 6  failure to comply with the consent order," I don't know what

 7  that is.  "The Court finds the case should be dismissed.  It is

 8  ordered that the bankruptcy case is dismissed.  All creditors

 9  are notified of the dismissal by service upon them by a copy of

10  this order.  If any filing fees or costs remain, the Court

11  retains jurisdiction to collect them.  The debtor is enjoined

12  from filing another bankruptcy case under the provisions of the

13  Bankruptcy Code in this court for a period if ninety days from

14  the date of this order."

15          THE COURT:  All right.  The consent order -- the

16  docket entry 116, which is the order of notice dismissing the

17  case, refers to docket entry 64.  That's the consent order.

18  Number 64 is, "Consent order conditionally denying motion to

19  dismiss case."  And it refers to docket entry 51, "Motion to

20  dismiss case for feasibility", filed by the Chapter 13 trustee.

21          MR. LEWIS:  There are entries at the end of the

22  docket, final decree, debtor's estate has been fully

23  administered.  This is docket number 120 --

24          THE COURT:  That's just discharging the Chapter 13

25  trustee from further action in the case.

1        MR. LEWIS:  Right.

2        THE COURT:  The case was dismissed.

3        MR. LEWIS:  In any event, Your Honor, with all due

4   respect, I'm not sure that it much matters.  That's not central

5   to the judicial estoppel or pleading issues.

6        THE COURT:  It is to me.

7        MR. LEWIS:  Okay.

8        THE COURT:  I want to find out why the case was

9   dismissed.  So I'm going to take the matter under submission,

10  in any event.  But what I want to see are hard copies of the

11  motion to dismiss that was filed by the Chapter 13 trustee, the

12  conditional order that was entered on the motion to dismiss,

13  and then the hard copy of the order that actually dismisses it.

14  So I'd like to find out why it was dismissed.

15        I understand your argument that it wasn't -- that what

16  is asserted would have been a pre-petition claim was not

17  scheduled.  So I understand your argument there.  But I want to

18  actually see what the disposition of the case -- okay?

19        Ms. Jackson, is there anything else you want to tell

20  me?  Come on up.

21        MS. JACKSON:  Yes, sir.

22        THE COURT:  Please go ahead.

23        MS. JACKSON:  Your Honor, I ain't no lawyer, I ain't

24  no judge, but when you filed a --

25        THE COURT:  Well, you've been around courts a lot,

1    including here.

2            MS. JACKSON:  Yeah.  When you file a foreclosure in

3    jurisdiction according to the law, you can't use jurisdiction

4    again.  And furthermore, that jurisdiction they talking about,

5    they went over to the courthouse, took my money off of that

6    case that I had filed inside jurisdiction, in that package

7    right here, and moved it over to Judge DuBose district court

8    and went and filed bankruptcy.  And that's where we're at.  The

9    case is stayed in the United States District Court for the

10   Southern Division (sic) of Alabama, in front of Judge DuBose.

11           THE COURT:  Well, what I'm dealing with here is you

12   filed a claim in this case and I'm dealing with the debtors'

13   objection -- and what I'm dealing with here is the debtors'

14   objection to your proof of claim.  That's properly before me.

15           The debtor has filed papers that I have to consider.

16   I do have some questions.  I want to make sure I understand.  I

17   want to see, not just the docket sheet of your most recent

18   bankruptcy case, but I want to see the motion to dismiss, the

19   consent order that was ordered on it, and the ultimate

20   dismissal that was entered.  I want to actually see it --

21           MS. JACKSON:  Okay.

22           THE COURT:  -- so I can follow that.

23           MS. JACKSON:  And --

24           THE COURT:  But is there anything -- I only have a

25   brief amount of time.  Is there anything else you want to tell

1   me, Ms. Jackson?

2          MS. JACKSON:  Yes, a brief thing.  The reason why I've

3   been after these people was because my house was paid off in

4   full.  You hear me?  They fabricated a loan in my name, not

5   once, but twice, for 240,000 dollars each.  My mortgage with

6   Option 1 Mortgage, was on my house and three acres, and Option

7   1 Mortgage had subdivided my five acres of land and they gave

8   me the paperwork -- I went to the lawyer's office and pulled

9   the paperwork, and that's when I found out where they got the

10  paperwork and do they know that.  The loan numbers didn't match

11  either.

12         They fabricated two loans in my name, and flipped it.

13  And they didn't own my note.  My house was paid off in full

14  with a zero balance.  It's on my credit report, everything.

15  They took and stole my whole five acres of land and put two

16  loans on my property.  I don't even know who these people are.

17         THE COURT:  Okay.  I'm going to -- I want to see the

18  additional papers, and then I'm going to take the matter under

19  submission and we'll decide.  Thank you very much, Ms. Jackson.

20         MS. JACKSON:  You're welcome.

21         THE COURT:  Nice to see you again.

22         MS. JACKSON:  Nice to see you, Your Honor.

23         MR. LEWIS:  Your Honor, we will have those documents

24  to you later today.

25         THE COURT:  Okay.  Mr. Nosek, is there anything you

1  wanted to add on this?

2          MR. NOSEK:  Oh, I was just going to add, this is

3  actually the first time we've met with Ms. Jackson and --

4          THE COURT:  She's been here before.

5          MR. NOSEK:  Well, we haven't spoken before --

6          THE COURT:  Okay.

7          MR. NOSEK:  -- in our capacity.  And we have -- Brian

8  Powers is from our office is actually here, and he can meet

9  with her out in the hallway --

10          THE COURT:  That would be helpful.  Okay?

11          MR. NOSEK:  We will do that, Your Honor.

12          THE COURT:  So, Ms. Jackson, the creditors' committee

13  has special borrowers' counsel.  And I would ask that if you

14  would meet with -- so it's not the debtors, it's the creditors'

15  committee.  I'd ask if you would, in the hall, when the

16  hearing's over, if you would meet with them and you can talk to

17  him and -- you can talk to him or not, okay?  You've never been

18  shy about saying what's on your mind, so I -- okay?  Thank you

19  very much, Ms. Jackson.

20          Thank you, Mr. Nosek.  Okay, go ahead, Mr. Rosenbaum.

21          MR. ROSENBAUM:  Your Honor, the next matter on the

22  agenda is matter -- it's number 5 on page 27.

23          THE COURT:  Yes.

24          MR. ROSENBAUM:  It's the motion of Anthony

25  [Dav-id-ee] -- excuse me if I'm pronouncing that wrong -- for

1  rehearing on a claim objection.  I believe, Mr. Davide --

2  again, excuse me if I'm getting the name wrong -- made an

3  oral -- is appearing telephonically.

4          THE COURT:  Mr. Davide, are you on the phone?  Mr.

5  Davide, are you on the phone?

6          MR. DAVIDE:  Yes, Your Honor, I am.  Can you hear me?

7          THE COURT:  Yes, I can.  Go ahead and make your

8  argument, if you would.

9          MR. DAVIDE:  Oh, thank you, Your Honor.  First of all,

10 thank you very much for granting me the rehearing.  The

11 original September 11th hearing I didn't realize just how long

12 it was going to be, and I had to get back to work, so I

13 couldn't complete it.

14         Your Honor, I have a residential mortgage with GMAC

15 Mortgage here in Florida.  Approximately two years ago or so,

16 we had an evidentiary hearing during our foreclosure

17 proceedings in front of Judge Luis Garcia, who the -- in the

18 Monroe County area.

19         At that hearing, there was a dispute over monies that

20 had been deposited with GMAC and exactly where those monies

21 were to be allocated and/or refunded.  As part of that hearing

22 it was agreed and the judge ordered that the monies were to be

23 segregated by GMAC; and in the event that the dispute which was

24 over a loan modification terms, were not resolved, that those

25 monies would be returned to me.  That loan modification never

1    came to fruition, and those monies were never returned to me.

2           I filed a claim under -- a secured claim, because

3    those monies, based on the instructions of the judge and how

4    counsel and the actual representative from GMAC proffered it to

5    the court, would be segregated and protected.  And now, they're

6    moving my claim, or trying to move my claim out of the secured

7    claim to an unsecured claim, and I don't necessarily believe,

8    unless my funds were absconded or, you know, just thrown into

9    the general till, you know, my monies should be somewhere and

10   hopefully I can get them back.

11          THE COURT:  Tell me how much money was it?

12          MR. DAVIDE:  It was approximately 15,000 dollars, Your

13   Honor.

14          THE COURT:  Okay.  Anything else you want to tell me,

15   now?

16          MR. DAVIDE:  That's all, Your Honor.

17          THE COURT:  Okay, thank you.

18          Mr. Rosenbaum?

19          MR. ROSENBAUM:  Your Honor, the motion on -- Mr.

20   Davide's motion was to reconsider Your Honor's prior order

21   expunging the claim.  I don't believe Mr. Davide's met the

22   standards for reconsideration, as we set forth in our papers.

23          THE COURT:  Well, let's deal -- I want to hear your

24   argument on the merits.  I mean, I -- you know --

25          MR. ROSENBAUM:  I appreciate that, Your Honor.

1        THE COURT:  Just let me just finish my statement.  The

2   claim was expunged because Mr. Davide didn't appear on the

3   telephone when the matter was called.  I had obviously reviewed

4   the papers at the time.  But he didn't have an opportunity to

5   speak.  It's -- I'm not deciding yet whether to reconsider the

6   actual order expunging the claim.  I've heard his argument now,

7   and I'd like to understand.  So without waiving your argument

8   that the Court shouldn't -- that grounds for reconsideration

9   haven't been established, I'd like to hear the specific

10  response on the merits of the arguments about whether the claim

11  should be expunged.  Okay?

12        MR. ROSENBAUM:  Certainly, Your Honor.

13        Your Honor, we looked at both -- the company looked at

14  both the original claim, the response that Mr. Davide provided,

15  their own books and records.  Mr. Davide didn't provide any

16  specifics as to which court it was in or which litigation in

17  terms of case numbers.

18        THE COURT:  Well, I've now heard a name of the judge.

19        MR. ROSENBAUM:  We did hear a name of judge.  There

20  are many cases, apparently, pending that Mr. Davide has either

21  commenced or is a defendant in Monroe County.

22        THE COURT:  Okay.

23        MR. ROSENBAUM:  Based on the review of our records, we

24  weren't able to find anything that aligned to what Mr.

25  Davide --

1        THE COURT:  Okay.

2        MR. ROSENBAUM:  -- was alleging.  If Mr. Davide would

3   provide more details, I'd be happy to look into it further.

4   But based on our view of the records, we do not find any

5   basis --

6        THE COURT:  Okay.

7        MR. ROSENBAUM:  -- for a secured claim, Your Honor.

8        THE COURT:  All right.  So let me ask special

9   borrowers' counsel whether you've had any communications with

10  Mr. Davide and specifically whether you've at all been able to

11  identify the Florida State Court matter that Mr. Davide's

12  referred to, whether there was any order that was entered or a

13  transcript available that indicates the judge had indicated

14  that the funds should be segregated and held and returned to

15  Mr. Davide if there was no loan modification.  So I don't know

16  any of the basis for any of that, but let me ask whether

17  there's been such communication.

18        Mr. Nosek?

19        MR. NOSEK:  Your Honor, we have not had any --

20        THE COURT:  Okay.

21        MR. NOSEK:  -- communication with Mr. Davide.

22        THE COURT:  All right.

23        MR. NOSEK:  Obviously, if this goes forward, we would

24  certainly be able to reach out to him should he give us --

25        THE COURT:  All right.

1          MR. NOSEK:  -- full contact information.

2          THE COURT:  So Mr. Davide, what you may have heard me

3   say earlier, the unsecured creditors' committee in the case, at

4   an earlier point in the case, special counsel for borrowers'

5   issues was retained for the creditors' committee -- not to

6   represent borrowers individually, but to assist with

7   consideration of borrowers' claims in the case.  And in many

8   instances, they've been quite helpful.  It doesn't necessarily

9   lead to relief for a borrower in connection with a claim, but

10  it's usually been helpful in trying to help the Court better

11  understand the claim, particularly where someone is not

12  represented by counsel.

13          So what I would direct -- it's not just -- I'm not

14  just asking you, I'm directing -- that you speak with -- who

15  should -- Mr. Nosek, who should he call?

16          MR. NOSEK:  First contact should be probably with

17  Brian Powers --

18          THE COURT:  Okay.

19          MR. NOSEK:  -- of our office.

20          THE COURT:  Brian Powers, and the firm is

21  SilvermanAcampora.

22          Do you have Mr. Powers' phone number?

23          MR. NOSEK:  I don't have his dir --

24          THE COURT:  What's your general number?

25          MR. NOSEK:  General number is 516-479-6300.

1       THE COURT:  Now, were you able to get that down, Mr.

2   Davide?

3       MR. DAVIDE:  516-479-6300?

4       MR. NOSEK:  That is correct.

5       THE COURT:  Okay.  So Brian Powers, who's an attorney

6   at SilvermanAcampora, he is one of the lawyers at

7   SilvermanAcampora who is working as special borrowers'

8   counsel -- special counsel to the creditors' committee for

9   borrowers' issues, and you need to speak with Mr. Powers within

10  the next week and we're going to reschedule this matter for a

11  hearing at another omnibus hearing.  I want -- perhaps Mr.

12  Powers can communicate with debtors' counsel and Mr. Davide

13  about finding a date reasonably soon at an omnibus hearing.

14  Mr. Davide can participate by telephone again.  But Mr. Davide,

15  I need to -- do you have a copy -- was there a written order or

16  is there a transcript of the hearing of the Florida State Court

17  proceeding where you indicated the judge directed GMAC to

18  segregate your funds pending the termination on a loan

19  modification?

20      MR. DAVIDE:  Not that I'm aware of, Your Honor.

21      THE COURT:  Okay.

22      MR. DAVIDE:  But I never asked or inquired.

23      THE COURT:  All right.  Well, what you need -- at a

24  minimum, what you need to be able to give to Mr. Powers is the

25  case name, case number and court in which it is or was pending,

RESIDENTIAL CAPITAL, LLC, ET AL.                    68

1    and the date or the approximate date -- the precise date, if

2    possible, but the approximate date when you indicate that the

3    Court directed that the funds be segregated.  Okay?  Do you

4    have that information, Mr. Davide?  I don't want it now, but do

5    you have that information available?

6            MR. DAVIDE:  Yes.  I can get that information, Your

7    Honor.

8            THE COURT:  Okay.  So when -- you ought to make sure

9    you have that together.  You'll speak with Brian Powers.

10   You'll provide him with that information and any other -- and

11   have a conversation with him, any other information that you

12   can.  That'll be helpful to the Court in considering the

13   matter.  Okay?

14           MR. DAVIDE:  Consider it done, Your Honor.

15           THE COURT:  Thank you very much, Mr. Davide.  All

16   right.

17           MR. DAVIDE:  Thank you very much.  I appreciate it.

18           THE COURT:  So I'm not resolving the issue about

19   reconsideration.  I do want more information about the

20   borrowers' claim.  Okay?  Thank you.

21           MR. DAVIDE:  Thank you.

22           THE COURT:  And you're excused from the phone if you

23   wish, Mr. Davide.  Okay.

24           Go ahead, Mr. Rosenbaum.

25           MR. ROSENBAUM:  Thank you, Your Honor.  With that, I'm

1   going to cede the podium to my colleague.  Jordan Wishnew is

2   going to handle the balance of the --

3            THE COURT:  Okay.

4            MR. ROSENBAUM:  -- agenda which is claim objections.

5            THE COURT:  Okay.

6            MR. WISHNEW:  Morning, Your Honor.  Jordan Wishnew of

7   Morrison & Foerster for the debtors.

8            Your Honor, this con -- to pick up where Mr. Rosenbaum

9   left off, the -- page 28, item 6, the first omnibus objection

10  in this matter has been resolved and there is no -- this will

11  not need to go forward.

12           The tenth omnibus objection, item 7 on page 29, this

13  has been adjourned to December 17th with regards to the open

14  claimants.

15           Item 8 on page 30, the eleventh omnibus objection, the

16  matter has been resolved.

17           Item 9 on page 30, the thirteenth; that too, with

18  respect to the claims that were open, those have been resolved;

19  no hearing is necessary.

20           Twenty-first omnibus objection, page 31, item 10,

21  there is one open matter.  That matter is being adjourned till

22  December 11th.  The debtors are hoping to resolve that

23  consensually before then.

24           That then brings us, Your Honor, to item 11 on page

25  32, the twenty-sixth omnibus objection, borrower claims with

RESIDENTIAL CAPITAL, LLC, ET AL.                    70

1   insufficient documentation.

2          Originally, there were two matters scheduled to go

3   forward today; that of the estate of Felecia Mitchell and Mary

4   Lynn Weber.  Ms. -- or Karen Mitchell-Smith, who I believe is

5   representing the estate of Felecia Mitchell, had requested an

6   adjournment and the debtors have given that.  That matter will

7   go forward on December 11th.

8          With regards to Mary Lynn Weber -- so Mary Lynn

9   Weber's claim is claim number 3474.  The debtors filed a reply

10  earlier in the week addressing Ms. Weber's response.

11  Essentially, what it amounts to is a proof of claim for 99,000

12  dollars against GMAC Mortgage, the stated basis of which is

13  mortgage note, debtor improperly applied payments.  It appears

14  to be Ms. Weber's contention that the debtors should not have

15  been the ones to collect payments; that they should have gone

16  to the owner of a loan, which in this case is in a

17  securitization trust.  The debtors' position is that as part of

18  their ordinary business practices, they typically service loans

19  for securitization trusts and the trustees and are the ones to

20  collect those payments and then make the appropriate

21  distributions to taxing authorities, insurance companies and

22  the actual owners of the loan.

23         So it's our position that the claim is not valid.

24  Debtors acted properly and consistent with business practices

25  and the claim should be disallowed.

1          THE COURT:  All right.  Ms. Weber, are you present in

2     the court or on the telephone?

3          CourtCall, is Ms. Weber present on the phone?

4          I'm sorry; if you spoke, I wasn't able to hear you.  I

5     see you're showing in as signed-in on the phone.

6          MS. WEBER:  Yes, I'm here.

7          THE COURT:  All right.  Go ahead.

8          MS. WEBER:  Mary Lynn Weber.

9          THE COURT:  Go ahead.  You want to make your argument?

10         MS. WEBER:  Yes, please.

11         Good morning.  Thank you for seeing me here

12    telephonically today.

13         First, I just wanted to note that -- I just wanted to

14    note my objection to the debtors' untimely response to some

15    comments the -- response comments which in Exhibit 1 -- they

16    called me on Tuesday morning to see if I'd like to adjourn this

17    matter.  When I suggested I'd like to go forward with it, they

18    then filed a brief the next day which was just delivered to me

19    last night at 5 p.m. at my home, so I did just get to take a

20    look at that last night after work.

21         My -- the reason I would like my claim to be allowed

22    is I feel both that GMAC Residential Funding held themselves

23    out as a creditor by way of showing up with an endorsed note at

24    my mediation.  I had an audit done by a securitization analyst

25    which I have in Exhibit 3 and its brief that shows a completely

RESIDENTIAL CAPITAL, LLC, ET AL.                    72

1  different creditor and chain of title.  So that was the reason

2  why I was feeling my claim should be allowed.

3         If they -- if the debtor claims that the GMAC's books

4  and records show two sales and loan as they sent to me

5  yesterday in the mail in the exhibit, I would like to see

6  documentation, if I may, of GMAC and Residential Funding's

7  books and records with the dates and amounts of the sale of the

8  loan, as they allege, to Ohio Savings Bank to GMAC Bank, and

9  the date and amount from the second sale from GMAC Bank to

10  Residential Funding and if I made purchase agreements or

11  contracts, if any, if they have proof -- which they have not

12  provided to me thus far.  And I do not know why, if they have

13  it today, they have not provided it.  And I would like the

14  right to cross-examine any witness they have, competent witness

15  with personal knowledge, Your Honor.

16         The debtor claimed -- my foreclosure also was stopped

17  in this exhibit they sent me because my notice of default was

18  no longer valid.  And an updated notice of default was filed on

19  September 27th of 2012.

20         The truth as I know it, Your Honor, was the mediator

21  cancelled the foreclosure because GMAC and Residential Funding

22  failed to bring required documentation and they had two

23  opportunities to do so -- there was two mediations -- and

24  therefore failed to comply with the Nevada law as I alleged in

25  the brief.

RESIDENTIAL CAPITAL, LLC, ET AL.                      73

1            The proof is available from the mediator's statement,

2    and GMAC also should have a copy of this statement proving what

3    I had just said.  No new notice of default also has ever been

4    recorded or delivered to me at my home thus far, and I also

5    went online, the Clark County's recorders website, and I did

6    not find any other notice of default filed on September 27th,

7    2012.  The debtors have not provided this new updated notice of

8    default as evidence or exhibit, so at this point, I would just

9    like to say I think that's hearsay.

10           And in closing, my evidence, I feel, is supported by

11   an expert witness with lots -- many years' experience.  The

12   securitization loan, as far as my audit shows, did happen.  The

13   creditor was never GMAC; they were never supposed to be holding

14   onto my money and acting as the creditor.  As far as I know,

15   they were the servicer.  If they had a possession of my note, I

16   feel it was illegally acquired.

17           So -- and also lastly, the counsel for the debtor

18   submitted to me, in this exhibit I received yesterday at 5

19   p.m., false information on the notice of default as I've just

20   proven with my mediation statement that I have with me which

21   unfortunately I would have sent to you had I known they would

22   request that, and the reason the mediator cancelled the

23   foreclosure was also fictitious information that was sent.

24           So it seems to me, Your Honor, that as they say, false

25   in one, false in all should apply here.  Some of this

RESIDENTIAL CAPITAL, LLC, ET AL.                    74

1   information was definitely misconstrued and sent to me

2   incorrectly from the debtor and that's why I would like to --

3   the Court to approve my claim today, Your Honor.

4           THE COURT:  Mr. Nosek, has the special borrowers'

5   counsel spoken to Ms. Weber or looked into this at all?

6           MR. NOSEK:  We have spoken to her, but not on a

7   substantive level.

8           THE COURT:  Okay.  Mr. Wishnew, you want to respond?

9           MR. WISHNEW:  Your Honor, I would simply say that GMAC

10  Mortgage has serviced the loan up until the point that

11  servicing was transferred to 21st Century Mortgage, which was

12  October 1st, 2013.  As servicer, and pursuant to the servicing

13  agreements with the owners of the loans, we properly pursue our

14  right to foreclose on the loan when it went into default and as

15  service --

16          THE COURT:  An accident.  Go ahead.  I just hit the

17  microphone.

18          MR. WISHNEW:  -- as servicer, it was typically our

19  business practice, as I mentioned, to collect the regular

20  monthly mortgage payments and make distributions.  In order to

21  collect those payments, we don't have to be -- we don't have to

22  prove that we own the note.  We are operating on behalf of and

23  for the benefit of the owner or the investor who ultimately

24  receives the proceeds or the monthly mortgage payments that we

25  then distribute pursuant to our regular business practices.  So

RESIDENTIAL CAPITAL, LLC, ET AL.                              75

1   it's our contention that we acted appropriately and that the

2   claimant does not have any validity.

3          THE COURT:  All right.  I'm going to take the matter

4   under submission.

5          MR. WISHNEW:  Thank you, Your Honor.

6          THE COURT:  Thank you, Ms. Weber.

7          MS. WEBER:  Thank you, Your Honor.

8          MR. WISHNEW:  Your Honor, that brings us to the

9   thirtieth omnibus objection, item 12 on page 33.  There are two

10  open matters going forward today.  That deals with the claims

11  of James and Judith Winkler and Francine Modderno.

12         Without repeating everything in our reply, Your Honor,

13  with regards to the Winklers, it's our contention that this

14  matter -- the claim is moot at this point.  The primary

15  contention and proof of claim was that they deserved a loan

16  modification, and as laid out in the reply in Ms. Horst's

17  supplemental declaration -- just for the record, Ms. Horst is

18  in court today if the Court has any questions -- ultimately,

19  the Winklers got their permanent loan modification early --

20  just a few months ago.  So we think at this point, any claim

21  they have has really been satisfied.  And we tried to engage

22  with them to consider if they withdraw their claim.  I had

23  spoken briefly with their counsel.  I was hoping to get on a

24  call with both of their counsel and the Winklers.  That never

25  came to fruition this week, but it's basically our contention

 1  that their claim has no validity.  The debtors undertook

 2  extraordinary efforts to work with them, to get them into a

 3  loan modification, which ultimately succeeded.  And for that

 4  reason, we think the claim should be disallowed.

 5         THE COURT:  All right.  Is anybody on the phone for

 6  the Winklers?  Mr. Nosek?

 7         MR. NOSEK:  The only other thing I would say -- Robert

 8  Nosek for the committee -- that we would add is that the

 9  Winklers are represented by counsel or we were advised that

10  they were so we did not reach out to them based on that.  We

11  generally do not, if somebody is represented by counsel,

12  involve, unless asked.

13         THE COURT:  All right.  Tell me about Modderno.

14         MR. WISHNEW:  Modderno, Your Honor.  Francine Modderno

15  -- this is a claim that really is, in our opinion, barred by

16  the doctrine of res judicata.  It's about wrongful foreclosure

17  and when we had the right to the note.  And as we lay out --

18  this is a matter where she had commenced litigation in 2011 in

19  response to a foreclosure, asserted wrongful foreclosure, fraud

20  and a myriad of other counts; I think twenty-two in all.

21         The matter was addressed in state -- I'm sorry;

22  federal court.  There was a dismiss granted.  This is down in

23  Virginia.  The dismissal was a complete motion to dismiss for

24  failure to state a claim.  Under Virginia's res judicata

25  principals, that dismissal does have res judicata effect.  Ms.

RESIDENTIAL CAPITAL, LLC, ET AL.                77

1    Modderno never appealed that decision and we think -- believe

2    she's trying to now revive that same claim through her proof of

3    claim.  For all the reasons we've laid out in our declaration

4    as well as our reply and based on the doctrine of res judicata,

5    we think this claim should be disallowed, as well.

6           THE COURT:  Ms. Modderno, are you on the phone?

7           MS. MODDERNO:  Yes, sir.

8           THE COURT:  Go ahead.  Let me hear what you have to

9    say.

10           MS. MODDERNO:  I've prepared a response to their

11   supplemental omnibus reply, and if the Court would allow me, I

12   need to read it because I'm very nervous.

13           THE COURT:  How long --

14           MS. MODDERNO:  May I read it, Your Honor?

15           THE COURT:  No.  Just tell me how long it is.

16           MS. MODDERNO:  It's double-spaced, four pages.  It's

17   very brief.

18           THE COURT:  But here's what I would like you to do.  I

19   would like you to file it with the Court, serve a copy on

20   debtors' counsel.

21           Mr. Wishnew, provide copies to the special borrowers'

22   counsel, too.  Okay?

23           MS. MODDERNO:  Yes.

24           THE COURT:  And I'm going to take the matter --

25           MS. MODDERNO:  I'm sorry.  I didn't -- I'm old.  My

1    hearing is slightly --

2           THE COURT:  Okay.  What I'd like -- I hope you heard

3    me that I want you to file it --

4           MS. MODDERNO:  File?  Yes.

5           THE COURT:  Okay.  And serve it --

6           MS. MODDERNO:  With the Court and with the other

7    people.  Right?

8           THE COURT:  -- and serve it on the debtors' counsel.

9           MS. MODDERNO:  Debtors' counsel.

10          THE COURT:  Yes.  And I'm going to take the matter

11   under submission.  I'll read your additional argument and I'm

12   going to take the matter under submission.

13          MS. MODDERNO:  Okay.

14          THE COURT:  Okay.  So with respect to Winkler and

15   Modderno, both of those matters are taken under submission.

16          Ms. Modderno, you need to get your additional

17   filing -- you need to get it out today.  Okay?

18          MS. MODDERNO:  Okay.

19          THE COURT:  Serve it today because I've -- so that I

20   can deal with this matter.  Okay?

21          MS. MODDERNO:  All right.  And --

22          THE COURT:  Mr. Wishnew --

23          MS. MODDERNO:  I'm sorry; I need to do it by mail but

24   I can do it overnight.

25          THE COURT:  That's -- no, you can send it regular

1  mail.  You don't need to send it overnight mail.  Just send it

2  regular mail.  Get it in the mail today.

3          But, Mr. Wishnew, what I'd like you to do is put this

4  matter back on -- put the Modderno matter back on the agenda

5  for the next omnibus hearing.  Okay.  I'm not sure that I'll

6  hear argument on it but I just -- to make sure that I keep

7  track of it, put it on the next -- for the next omnibus.

8          MR. WISHNEW:  Your Honor --

9          THE COURT:  And make sure that Ms. Modderno knows when

10 that's going to be.  Okay?

11         MR. WISHNEW:  Of course.  Would you want the debtors

12 to join us for a surreply?

13         THE COURT:  When you get it, look at it.  If you think

14 you need to, do a very short surreply.  Okay?

15         MR. WISHNEW:  Fair enough.

16         THE COURT:  I want to hold down the amount of paper.

17 Okay?

18         MR. WISHNEW:  Absolutely, Your Honor.

19         THE COURT:  Thank you.  All right, Ms. Modderno; so

20 I'll look for your additional pleading.  Okay?

21         MS. MODDERNO:  Thank you very much, Judge.

22         THE COURT:  All right.  And you -- you'll be advised

23 when this is going to be back on the calendar, but I may well

24 decide it before then based on the papers.  Okay?

25         MS. MODDERNO:  Okay.  Thank you.

RESIDENTIAL CAPITAL, LLC, ET AL.                    80

1            THE COURT:  Thank you very much.

2            MR. WISHNEW:  Your Honor, one moment.

3            That brings us to item 13 on page 34 of the agenda,

4    the thirty-fourth Omnibus objection which dealt with no

5    liability employee claims.

6            There have been no responses to the objection and we

7    would ask that Your Honor enter the order.

8            And I'll just say with regards to the orders for the

9    omnibuses going forward that the debtors will submit electronic

10   copies to chambers after the hearing.

11           THE COURT:  All right.  Sustained.

12           MR. WISHNEW:  Thank you, Your Honor.

13           Next, Your Honor, is the thirty-fifth omnibus

14   objection, page 35, item 14, no liability - assigned contract

15   claims.

16           And these are eight claims that we asserted are cure

17   pursuant to the asset sales.  No objections to these, Your

18   Honor.

19           THE COURT:  Anybody wish to be heard?  I see somebody

20   coming.  Are you coming for the thirty-fifth Omnibus?

21           MR. BERNARD:  Good morning, Your Honor.  I'm not sure

22   if --

23           THE COURT:  Tell me your name.

24           MR. BERNARD:  My name is Jack Bernard.  I represent

25   Mary Biancavilla, docket number 5755, and I'm not sure if the

1   preceding omnibus objection related to my client's claim.

2         THE COURT:  Mr. Wishnew, can you help me on this?

3         MR. WISHNEW:  Yes.  His client is on the forty-ninth

4   omnibus, Your Honor.  We are not quite there yet.

5         THE COURT:  We're not quite there yet.

6         MR. BERNARD:   I apologize.  Thank you.

7         THE COURT:  Anybody appearing with respect to -- this

8   is the thirty-fifth we're talking about now?  All right.

9   Sustained.

10        MR. WISHNEW:  Thank you, Your Honor.

11        The next item on the agenda, item 15 on page 35, the

12   thirty-sixth omnibus objection to claims, misclassified and

13   wrong debtor borrower claims.

14        The debtors received six or so responses to this.  We

15   have been able to resolve some; others have been adjourned.

16   The first matter going forward today is the matter of Ernestine

17   Ray, claim 4381.  This was filed as a 90,000 dollar secured

18   claim for "mortgage note payment and taxes", which is equal to

19   a purported value of the real estate.

20        THE COURT:  I'm sorry; which one?  Oh, I see, okay.

21   It's the first one.  Yes.  Go ahead.

22        MR. WISHNEW:  Okay.  And Ms. Ray filed a response at

23   docket number 5527.  At this point, Your Honor, we don't

24   believe that there's any valid basis for a secured claim here.

25   And with regards to redesignation, I'm going to ask that it be

1  redesignated to the Homecoming (sic) Financial's debtor because

2  it was Homecoming (sic) Financial's debtor that serviced the

3  loan here.  So we would ask that Your Honor grant the relief

4  being requested in this regard.

5          THE COURT:  Is Ms. Ray on the phone?  Anyone appearing

6  for Ms. Ray?

7          Mr. Nosek, have you communicated with her?

8          MR. NOSEK:  Your Honor, we have submitted -- sent two

9  letters to Ms. Ray and also placed two voice mail messages.  We

10  have received no contact back.

11          THE COURT:  All right.  Let me take it under

12  submission.

13          MR. WISHNEW:  Thank you, Your Honor.

14          Next, on the agenda, is Michelle Lawson, claim 5282.

15  This is a 89,000 dollar claim of which 51,300 is purportedly

16  secured based on a "secondary mortgage note".

17          The -- Ms. Lawson asserts that the mortgage should be

18  considered voidable and rescinded upon theory of mistake, that

19  it was perfected upon attachment, that respondent has

20  possession of the collateral, that they have a right of setoff.

21  These are simply just unsubstantiated allegations, Your Honor.

22  We see no basis for there to be a lien against this or any sort

23  of lien against property of the estate as well as right of

24  setoff.  We emphasize, and this clearly goes for all the

25  claimants in the thirty-sixth, that while we are asking that

1  they be reclassified to unsecured claims, the fact is the claim

2  itself will still be on the register, they'll still have their

3  right to defend on a substantive basis the allegations they

4  make or the claims they make in their proof of claim which will

5  be addressed subsequently.

6          THE COURT:  Mr. Nosek?

7          MR. NOSEK:  Your Honor, on October 29th of this year,

8  our office spoke with Ms. Lawson and attempted to explain the

9  debtors' rationale for the relief sought in this particular

10 motion.  The only thing she was able to do was just point to

11 her proof of claim and the response that she filed, but she

12 gave us no indication that she was willing to accept what the

13 debtor wanted to do.  She did indicate to us that she probably

14 would not be appearing at this hearing.

15         THE COURT:  All right.  Matter is under submission.

16         MR. WISHNEW:  Thank you, Your Honor.

17         Next, Your Honor, Deborah Wetzel, claim 2198.  Her

18 response is filed at docket number 5474.

19         Again, this is a 255,000 dollar claim of which 205,000

20 is purportedly secured.  There's really no supporting

21 documentation submitted here.  As with the others, Your Honor,

22 we believe that there's no valid basis for a secured claim

23 against the debtors' estates and that it's properly

24 reclassified to an unsecured claim and recategorized to -- I'm

25 sorry -- moved to the correct debtor which would be GMAC

RESIDENTIAL CAPITAL, LLC, ET AL.                    84

1   Mortgage, since that is the servicer of the underlying

2   mortgage.

3          THE COURT:  Ms. Wetzel, are you on the telephone?

4          Mr. Nosek, any communication with Ms. Wetzel?

5          MR. NOSEK:  On October 30th, we did have communication

6   with Ms. Wetzel regarding she has -- she did indicate during

7   that conversation that she intended to defend her claim as

8   against GMAC, I guess GMACM.  We did leave a message about the

9   adjournment.  This was originally scheduled for last week.  We

10  didn't receive any further contact from her but she did

11  indicate to us on October 30th that she would defend the

12  underlying merits of the claim.

13         THE COURT:  All right.  Under submission.

14         MR. WISHNEW:  Thank you, Your Honor.

15         Next is Kenneth Thomas, claim, 3728.  His response is

16  filed 5495.

17         Really same arguments, Your Honor, that there really

18  is no valid asserted basis for a secured claim against the

19  debtors' estate, that the basis for moving the claim to the

20  GMAC Mortgage estate as opposed to the Residential Capital

21  estate is valid based upon the fact that GMAC Mortgage was the

22  party interacting with Mr. Thomas, not its parent company; for

23  the reason, we would ask for --

24         THE COURT:  Mr. Thomas, you on the phone?

25         Under submission.

1          MR. WISHNEW:  Thank you, Your Honor.

2          I believe the matter of Richard Rode has been

3  adjourned.  Resolved?  I'm sorry; resolved.  I think there's a

4  stipulation docketed --

5          THE COURT:  Okay.

6          MR. WISHNEW:  -- yesterday.

7          THE COURT:  All right.

8          MR. WISHNEW:  Rhonda Deese, claim 4927, the response

9  docket at 5492.  That matter's been adjourned to the next

10  omnibus hearing.

11          And the last one to be addressed, Your Honor, is Ron

12  and Julie Eriksen.

13          Again, like others, they have asserted a secured claim

14  based upon an equitable lien and a right of setoff.  We believe

15  that both bases are not -- have not been proven, are not valid

16  bases for a secured claim against the debtors' estate, and that

17  their claim should simply just be an unsecured claim as opposed

18  to partially unsecured, partially secured.

19          THE COURT:  Are either of the Eriksen's on the phone?

20          MR. ERIKSEN:  Yes, Your Honor.  This is Ronald

21  Eriksen.

22          THE COURT:  All right.  Go ahead.  Let me hear what

23  you have to say.

24          MR. ERIKSEN:  Good morning, Your Honor.  Thank you for

25  allowing me to appear telephonically.  Just one procedural note

1 before I begin.

2          I'm reserving my right under FRCP to respond to the

3 supplemental declaration of Deanna Horst.  We've had fourteen

4 days to do so and their response was filed -- that was filed

5 along with their response two days ago.

6          Relative to the secured claim, debtor claims that my

7 status as a secured creditor is not valid; however, it is.

8 It's a fairly simple matter.  My claim against the debtor is

9 for wrongful foreclosure.  I am -- and there's been -- and

10 there's two reasons that the security lien exists.  One is I'm

11 in current possession of my home and, as such, I have the right

12 of setoff.

13          And two, I am an -- I have an equitable lien as a

14 matter of operation of Illinois law, 735 ILCS 5/4-101.  And I

15 have provided proof of the same in the proof of claim and

16 response to the debtors' objection.

17          The Illinois law has two requirements.  The first is

18 it that it cannot be over twenty dollars and the second is that

19 I meet one of eleven criteria.

20          One of those criteria is that the debtor is not an

21 Illinois resident.  Proof of this has been provided.  I cite it

22 out and to the law in my filings before Your Honor and I've

23 also provided proof that the debtor is not an Illinois

24 resident.  I provided this in the form of an Illinois

25 certificate of good standing for the debtor which states

1    they're a foreign company.

2           Another criteria is that the debtor is about to leave

3    the state.  It appears that that is the case in that they have

4    withdrawn their corporate standing in the state.

5           Another requirement is the debtor is about to remove

6    the property, i.e., their security interest.  It appeared the

7    debtor is attempting to remove their security claim, I believe,

8    to New York.

9           Another requirement is that the debtor has attempted

10   to or has fraudulently conveyed its assets.  I provided proof

11   of this by the -- by the debtor which is that lender 2 filed

12   the Illinois foreclosure complaint against me was not the

13   lender who was the actual lender, lender 1, which was applied

14   in my proof and in my response.

15          Further in my proof, I claimed that the proof I

16   claimed that I filed in June or July provided the Court an

17   affidavit which is unrefuted saying that I never received any

18   notice of the purported transfer.  Additionally, I have

19   provided proof which is prima facie in a -- that the

20   foreclosure complaint against me proved the complaint was filed

21   by lender 2 who had no standing to sue me for any reason, let

22   alone the foreclosure complaint.  And the dispute that was

23   filed was filed -- the complaint that was filed was filed

24   fraudulently and predicated on fraud.

25          And lastly, the debtor's objection fails to meet the

1    standards by the Bankruptcy Code or by Simmons which is a

2    binding case precedent from the Fifth Circuit which relies on

3    binding Second Circuit case law.  The only thing they provided

4    was a conclusitory (sic) statement that my claim isn't secured.

5    And I provided proof where by operation of Illinois law, I have

6    a lien.  I'm also in possession of property which provides me

7    right of setoff and I would ask that Your Honor disallow the

8    objection.

9            THE COURT:  Mr. Wishnew?

10           MR. WISHNEW:  One point, Your Honor, with regards to

11   Mr. --

12           MR. ERIKSEN:  Eriksen.

13           MR. WISHNEW:  -- that the claimant hasn't mentioned is

14   that he is in possession of his property, the debtors are not

15   in possession of the property.  The whole point of a setoff is

16   is there -- or a secured claim -- is is there property that the

17   debtors are currently holding against which he had -- have a

18   security interest, and I think the answer is plainly no.  So we

19   would rely upon our pleadings that even if there is an

20   equitable lien, the lien is not against the property of the

21   debtors' estate, so there is no secured claim.

22           With regards to setoff, there is no identification of

23   a claim of any sort of mutuality here under Section 553.  So in

24   regards to both bases, we think that is no valid secured claim,

25   that this should just be an unsecured claim and the parties

RESIDENTIAL CAPITAL, LLC, ET AL.                          89

 1    will address a substantive point at a future date.

 2              THE COURT:  All right.  I'm going to take the matter

 3    under submission.

 4              MR. WISHNEW:  Thank you, Your Honor.

 5              THE COURT:  Thank you, Mr. Eriksen.

 6              MR. ERIKSEN:  Your Honor, should I --

 7              THE COURT:  No, I'm going to take the matter under

 8    submission and issue a written order.

 9              MR. ERIKSEN:  Thank you, Your Honor.

10              THE COURT:  Thank you very much.

11              MR. ERIKSEN:  Um-hum.

12              MR. WISHNEW:  Your Honor, that brings us to matter 16

13    on page 36, thirty-seventh omnibus objection to misclassified

14    or wrong debtor borrower claims.

15              This -- there were eight claims; six of them dealt

16    with the claims of Mr. William Ridge.

17              Yesterday, the debtors reach a consensual resolution

18    with Mr. Ridge which resolves those and the other two claimants

19    did not file a response.  We ask that the Court enter the

20    order.  We will submit a modified form of order taking --

21    striking Mr. Ridge's claims from the order, leaving the

22    remaining two.

23              THE COURT:  Does anybody wish to be heard with respect

24    to the thirty-seventh omnibus objection to claims?  All right.

25    The others are sustained.

RESIDENTIAL CAPITAL, LLC, ET AL.                    90

1            MR. WISHNEW:  Thank you, Your Honor.

2            That brings us then to the bottom of page 36, item 17,

3    thirty-eighth omnibus objection to claim, wrong debtor borrower

4    claims.

5            Again, this dealt with about 150 borrower claims.  We

6    did not receive -- I'm sorry; we did receive one response from

7    John and Gloria Brooks.  We were able to resolve our

8    differences with them.  A modified form of order will be

9    submitted on this omnibus objection.

10           THE COURT:  Is Brooks the only one that --

11           MR. WISHNEW:  That's correct, Judge.

12           THE COURT:  All right.  Go ahead.

13           MR. WISHNEW:  So for all the reasons stated in the

14   omnibus objection, we would ask that the Court enter the form

15   of order as modified.

16           THE COURT:  All right.  Sustained.

17           MR. WISHNEW:  Thank you, Your Honor.

18           Next, Your Honor, page 37, item 18, the thirty-ninth

19   omnibus objection.

20           This, too, is wholly unopposed.  We received no

21   responses either on a docket or separately and I would ask for

22   the reasons set forth in the omnibus objection that the matter

23   be approved.

24           THE COURT:  Sustained.

25           MR. WISHNEW:  Thank you, Your Honor.

RESIDENTIAL CAPITAL, LLC, ET AL.                    91

1          The next item is fortieth omnibus objection, page 37,

2     item 19.  We received one response from Ajit and Shakun

3     Vasvani.

4          Their assertion is that they have a claim relating to

5     Residential Capital Mortgage Income Fund, LLC.  It is the

6     debtors' position that even though there is a substan -- a

7     similarity in that the name -- the corporate entity they dealt

8     with is also called Residential Capital, that the debtors will

9     confirm or have confirmed through an exhaustive search of the

10    books and records that there's absolutely no relation between

11    this entity and any of the debtor entities such that any debtor

12    entity should be liable in any way to Mr. and Ms. Vasvani and

13    we would ask that the objection be approved.

14          THE COURT:  Anybody appearing on behalf of the

15    Vasvanis?

16          Mr. Nosek, has your office had any communication with

17    them?

18          MR. WISHNEW:  This is nonborrower, Your Honor.

19          THE COURT:  Oh, it's a nonborrower.  Excuse me.

20    Sustained.

21          MR. WISHNEW:  Thank you, Your Honor.

22          That brings us to the forty-first omnibus objection,

23    item 20 on page 37.  A duplicate of -- this duplicate and

24    amended and superseded proofs of claim.

25          This only dealt with three claims.  No responses

RESIDENTIAL CAPITAL, LLC, ET AL.                    92

1   received.  For the reason set forth in the omnibus objection,

2   we'd ask the Court to approve the objection.

3            THE COURT:  Sustained.

4            MR. WISHNEW:  Thank you, Your Honor.

5            Bottom of page 37, item 21, forty-second Omnibus

6   objection, reduced and allowed borrower claims.

7            This -- Your Honor, there were three claims at issue;

8   two of them dealt with the same counterparty.  We are in

9   discussions with them and have adjourned that matter to a

10  future hearing date.

11           With regards to the third claimant, we did not receive

12  any response and would ask that the order be entered as set

13  forth.

14           THE COURT:  Who's the one you didn't receive a

15  response?

16           MR. WISHNEW:  Off the top of my head, I forget their

17  name, Your Honor.

18           THE COURT:  Mr. Nosek?

19           MR. NOSEK:  One second.

20           THE COURT:  You got to be able to tell me who the

21  borrower is, Mr. Wishnew.

22           MR. WISHNEW:  Understood, Your Honor.  Just need one

23  moment.  It is Preston Baker and Madelyn Soto, claim number

24  1089; a 16,000 dollar general unsecured claim which we propose

25  to allow for 8,000 dollars based upon the terms of a pre-

1    petition settlement.

2              THE COURT:  Mr. Nosek, any communication?

3              MR. NOSEK:  Your Honor, I'm going to have to check a

4    different spreadsheet than I have in front of us.  It may take

5    a moment.

6              THE COURT:  Okay.

7              MR. NOSEK:  I apologize.

8              THE COURT:  Let's come back to that one.

9              MR. WISHNEW:  Thank you, Your Honor.

10             THE COURT:  Just make sure somebody remind me so we

11   won't pass it.

12             MR. WISHNEW:  Okay.

13             THE COURT:  Go ahead.

14             MR. WISHNEW:  Next, Your Honor, page 38, item 22, the

15   forty-third omnibus objection dealt -- deals with insufficient

16   documentation.

17             The matter, as it relates to CitiMortgage, has been

18   adjourned to December 11th.  It did receive one response from

19   Nardia Packer.  It is the debtors' contention that what she

20   seems to be asserting is that she had an investment with or was

21   owed money from Ares Capital and held a note, I think of Ally.

22   But again, there was absolutely no connection to any of the

23   debtor entities or any evidence of any sort of guarantee by a

24   debtor entity of this obligation.  So for the reasons set forth

25   in the objection and the reply, we ask that the matter be

1   approved.

2           THE COURT:  All right.  Is anybody appearing on behalf

3   of Nardia Packer?  Hang on.  Sustained as to Packer.

4           Mr. Nosek?

5           MR. NOSEK:  Your Honor, back to the other one.

6           THE COURT:  Yes, okay.

7           MR. NOSEK:  If I could go back to the forty-second

8   omnibus?

9           THE COURT:  Hang on.  Let me get back to that.  That

10  was Baker and Soto?

11          MR. NOSEK:  Right.  With regard to Soto, we have not

12  had any contact.

13          THE COURT:  Okay.  And -- okay.

14          MR. NOSEK:  None with Baker as well.

15          THE COURT:  All right.  Thank you.

16          MR. WISHNEW:  Thank you, Your Honor,

17          THE COURT:  All right.  So with regard to the forty-

18  second Omnibus, sustained.

19          MR. WISHNEW:  Thank you very much, Your Honor.

20          That brings us to the forty-fourth omnibus objection.

21  This matter also dealt with objection to claims because they

22  were late filed, duplicates, redesignated and were allowed,

23  reducing and allowing the claims, redesignating and reducing

24  and allowing the claims, reclassifying, reducing and allowing

25  the claims.

1        There were two responses received.  We have adjourned

2    the matter as to those two claimants and would ask that the

3    Court enter the order as to the balance of the parties.

4        THE COURT:  Anybody wish to be heard with respect to

5    the forty-forth omnibus objection?  Sustained.

6        MR. WISHNEW:  Thank you, Your Honor.

7        Next on the calendar, Your Honor, item 24, page 39,

8    the forty-fifth omnibus objection, no liability property tax

9    claims.

10       This matter dealt with seven claims.  We've received

11   no responses and for the reasons set forth in the omnibus

12   objection, we ask that relief be approved.

13       THE COURT:  Sustained.

14       MR. WISHNEW:  Thank you, Your Honor.

15       Forty-sixth omnibus objection, Your Honor, page 39,

16   item 25, the insufficient documentation, servicing and

17   duplicative claims.

18       This dealt with sixty-nine claims.  We received no

19   responses.  For the reasons set forth in the objection, we ask

20   that the order be approved.

21       THE COURT:  Anybody wish to be heard with respect to

22   the forty-sixth omnibus objection?  Sustained.

23       MR. WISHNEW:  Thank you, Your Honor.

24       That brings us to the bottom of page 39, item 26, the

25   forty-seventh omnibus objection, no liability, books and

1  records claim.

2          One response was received to this, Your Honor.  That

3  is from Basic Life Resources.  Basically, Your Honor, we see

4  this as nothing more than a question of title and don't believe

5  that there's any valid basis for liability against the debtors

6  who simply serviced this loan.  If there is a question as to

7  what property is encumbered, then that's a question for the

8  current servicer, who is Ocwen, to take up, or for Basic Life

9  to address with the owner of the loan, which also is not a

10 debtor entity.  So while there may be some confusion as to when

11 it is that Ms. Hill (ph.) conveyed to Basic Life Resources, the

12 debtors' involvement has always been that of a servicer.  It

13 simply collected the mortgage payments, and any sort of cloud

14 on title that is being alleged is not the responsibility or

15 there is no blame to be cast on a debtor entity for this.

16         THE COURT:  Anybody appearing on behalf of Basic Life

17 Resources?  Under submission.

18         MR. WISHNEW:  Thank you, Your Honor.

19         With regards -- next, Your Honor, item 40 -- I'm

20 sorry -- page 40, item 27, forty-eighth omnibus objection,

21 borrower insufficient documentation, no liability books and

22 records claims.

23         There were fifty claims subject to this objection.  No

24 responses were received.  For the reasons set forth in the

25 objection, I ask the Court enter the order.

1          THE COURT:  Anybody wish to be heard with respect to

2     the forty-eighth omnibus objection?  Sustained.

3          MR. WISHNEW:  Thank you, Your Honor.

4          Next, Your Honor, forty-ninth omnibus objection, page

5     40, item 28 also a no liability borrower claim, books and

6     records objection.

7          This dealt with thirty-two proofs of claim.  And at

8     this point -- I'm sorry.  There were --

9          THE COURT:  There are responses here.

10         MR. WISHNEW:  There are responses here and with

11    regards to those responses, each of those responses has been

12    adjourned to, I believe the December 11th hearing.  And we'd

13    ask for -- and this -- also, I'm sorry; this does include Ms.

14    Biancavilla, who did file a response yesterday.  The debtors

15    have not had a chance to digest that.  Again, it was filed less

16    than twenty-four hours before the hearing, well after the

17    response date.  If the Court would like for the debtors to

18    reply, we will certainly do so.  If --

19         THE COURT:  I haven't read the response.

20         MR. WISHNEW:  Okay.  Okay.  So at this point, Your

21    Honor, while we would contend that it's an untimely response

22    and shouldn't be considered, we understand if Your Honor would

23    prefer that we take this over to December 11th with the rest of

24    the responses that relate to this omnibus objection.

25         THE COURT:  Mr. Nosek, these are borrower claims.

1    Have you had communication with these borrowers?

2            MR. NOSEK:  No, we have not yet.

3            THE COURT:  Okay.  Let's -- I'd like to adjourn the

4    forty-ninth to the next omnibus.

5            MR. WISHNEW:  In its entirety, Your Honor?

6            THE COURT:  Yes.  I'm just not ready to go forward on

7    this.

8            MR. WISHNEW:  Okay.

9            THE COURT:  I need to go -- I have not read these

10   responses.  I need to read these responses.

11           MR. WISHNEW:  Understood, Your Honor.

12           And so that, then, brings us to the last matter on

13   today's agenda which is the fiftieth omnibus objection.

14           There were approximately two dozen responses received.

15   About half of those are going forward today.  The balance have

16   been adjourned or consensually resolved.

17           The first matter to address, Your Honor, would be the

18   matter of Mary Critchley, claim number 1576.  This is a claim

19   for 970,000 dollars dealing with wrongful foreclosure and

20   wrongful conduct.

21           It is the debtors' position as set forth in the

22   response that this -- the debtors acted entirely appropriately,

23   that complaints about a need for escrow or workouts were -- are

24   unfounded, that the debtors did utilize their best efforts to

25   work with Ms. Critchley ahead of the foreclosure sale.  And to

1  address a few points and a few allegations made with regards to

2  the foreclosure, I just wanted the record to reflect that a

3  foreclosure sale did take place in June 2010.  There was a six-

4  month redemption period until December 2010.  At no time did

5  the debtors tell Ms. Critchley to vacate her home.  In fact,

6  the redemption period in Michigan is specifically there so that

7  the debtor does not have to vacate the home until there's an

8  actual eviction proceeding commenced.

9          With regards to the rescission, the reason for GMAC

10  Mortgage rescinding the foreclosure sale in May 2011, that

11  dealt with a decision by the Michigan state courts dealing with

12  MERS' ability to foreclose and the separation of the note and

13  the mortgage.

14          GMAC Mortgage was not -- the debtor entities were not

15  directly -- were not a party to that decision and there was no

16  improper actions by -- it's the debtors' contention there were

17  no improper actions by any of the debtor entities in connection

18  with the foreclosure but because of the decision by a Michigan

19  state court, the sale was rescinded and the account was then

20  sent -- the sale was rescinded and then essentially collection

21  proceedings begun later on in November 2011, at which time Ms.

22  Critchley was, I believe, more than a year behind on her

23  payments.

24          So in sum, Your Honor, the -- we believe that for the

25  reasons set forth in the reply in Ms. Horst's declaration, we

1     have addressed each of Ms. Critchley's contentions and that the

2     claim -- there is no valid basis for liability against the

3     claim.

4              One other point is that she -- while Ms. Critchley

5     does make a claim for wrongful foreclosure based upon the

6     statute as we've described it and assessed it in the reply, we

7     don't believe a valid claim would stand under Michigan state

8     law for wrongful foreclosure against a debtor entity.

9              THE COURT:  Is anybody appearing for Ms. Critchley?

10             MR. MORGANROTH:  Yes, Your Honor.  Mayer Morganroth

11    appearing for Mary Critchley.  She's also here and has been in

12    attendance this morning throughout.

13             THE COURT:  Go ahead, let me hear from you.

14             MR. MORGANROTH:  Yes, Your Honor.  First of all, we

15    filed our response to the objection almost five weeks ago, and

16    I was in hearings on day before yesterday, late in the

17    afternoon.  On that day we received the reply.  I met with my

18    client yesterday for the first time regarding the particular

19    reply, because we didn't get it to actually look at till

20    yesterday.  The fact of the matter is is that reply and counsel

21    are misinformed.

22             First of all, my client submitted forty-one documents

23    to them showing their misconduct; not one was addressed in any

24    of their reply.

25             Second of all, they state in there that somehow she

RESIDENTIAL CAPITAL, LLC, ET AL.                    101

1   didn't send in P&L statements, and whatever.  I have faxes --
2   which we didn't produce because we didn't get this until -- to
3   look at till yesterday -- faxes galore sent to them with P&Ls,
4   what they sat on and said they're outdated now.  And she kept
5   calling them and calling them regarding those P&Ls that she had
6   sent, and they say oh, they're outdated now; we didn't get to
7   them.  This went on for months, repeatedly, where she would
8   keep sending them materials.
9           Originally, she had the mortgage on this particular
10  premises in 2003, and she refinanced it in 2005 where GMAC came
11  in.  She never was given any default ever, and then they wanted
12  to increase the payments all of a sudden; 2009, GMAC when they
13  buy the mortgage, and they want to increase the payments.  And
14  she tells them that she's going to be starting a new business,
15  she has certain problems financially at this point.  They say
16  well, I'll tell you what, you have no problem; just send us the
17  request for modification, you'll get it, and don't make your
18  payments for ninety days.  She made her payment even that month
19  anyway and then didn't make the payments for ninety days
20  because they told her that that would happen.
21          Also in response to the reply we got, we have faxes
22  continually sent by her trying to get them to move, and then
23  them coming back and saying gee, it's got to be updated because
24  we didn't get to it, it's been sitting on the desk.
25          We also have letters received from them that said that

RESIDENTIAL CAPITAL, LLC, ET AL.                    102

1  they are currently processing the request, they'll respond in

2  twenty business days.  They respond a couple of months later

3  and say oh, it's outdated, do it again.  And then we got

4  continuing responses from them saying need a new P&L because

5  it's aged again.

6          Then we have continual telephone conversations where

7  she tries to reach them, and when she talks to them.  She

8  talked to Scott, Seth, Edwin, Keith, Sholanda (ph.), Robert and

9  Yolanda repeatedly.  We have those.

10          The fact of the matter is is had they just told her at

11  the time when they told her they wanted the taxes to increase

12  the payment, which had never been done before and she was in

13  default, she would have just gone out and gotten the money, but

14  they told her no, you can modify, and that's what she did.  But

15  they, I don't believe, ever intended -- and I think they were

16  fraudulently inducing her -- intended to modify.  They wanted

17  to grab the home of which she already put 70,000 dollars into.

18          The fact of the matter is we do have exhaustive

19  evidence and testimony to the fact of their misconduct in what

20  they did.  And the particular document we get in reply, I

21  believe, has a short affidavit by somebody who never was

22  involved in the particular transaction -- I don't know where

23  they got her from -- and didn't use any of the documents,

24  forty-one of which we attached, that showed that what she says

25  is incorrect, and not correct at all.  Nor any of the faxes or

RESIDENTIAL CAPITAL, LLC, ET AL.                    103

1    letters that they sent to us, I should say, to my client.

2            Now what they did is they foreclosed, and even just

3    before the foreclosure, they tell her that oh, don't worry

4    about it, everything's fine, we'll remove it.  Then they

5    foreclose and she moves out three months later because she had

6    to find a place for her mother, too; they told her she was all

7    through and out, so she didn't waste the six months, she went

8    three months because she found a place for her mother and a

9    place for her to rent, and they went.

10           Then what happens is nothing.  She just posted that

11   she foreclosed again, because she's got her new business, and

12   the new business is starting to do well.  And what happened,

13   she no longer can conduct the business, she needs to get an

14   independent agency to be intermediary that takes half of the

15   entire gross because she has bad credit report because of the

16   fact that she's been foreclosed.  And she wasn't foreclosed,

17   because they went and removed the foreclosure without even

18   telling her months and months later the following year.  And

19   what do they do?  In 2012 they make a foreclosure sale a second

20   time and she now has twice foreclosures on her credit report

21   which ruins her business terribly.

22           The fact of the matter is is that all of the

23   documentation, all of the sworn testimony that will come, and

24   all of the communications from GMAC completely, completely show

25   their fraudulent representations, their fraudulent inducement,

RESIDENTIAL CAPITAL, LLC, ET AL.                    104

1   their nondisclosure in what they did to Mary Critchley.

2           And then, in short, Your Honor -- I don't want to go

3   on forever -- if we went to a particular proceeding, we'd have

4   some eighty documents, exhibits, to go through, and her sworn

5   testimony.  And I'd like to hear from the other side on that.

6           THE COURT:  Mr. Wishnew, respond to --

7           MR. MORGANROTH:  Thank you, Your Honor.

8           THE COURT:  Thank you.

9           MR. WISHNEW:  Thank you, Your Honor.

10          THE COURT:  Just tell me your name again, I'm sorry?

11          MR. MORGANROTH:  I'm sorry, Mayer Morganroth.

12          THE COURT:  Thank you, Mr. Morganroth.

13          MR. MORGANROTH:  I'm not exactly a beginner; I've been

14  doing this fifty-nine years.

15          THE COURT:  You know, I apologize, what state was this

16  property in?

17          MR. WISHNEW:  Michigan, Your Honor.

18          THE COURT:  Michigan, okay.  Go ahead, Mr. Wishnew.

19          MR. MORGANROTH:  Thank you, Your Honor.

20          THE COURT:  Go ahead and respond.

21          MR. WISHNEW:  Your Honor, I believe we addressed many

22  of these points in the reply and through Ms. Horst's

23  supplemental declaration.  And I'll just address one of Mr.

24  Morganroth's points.

25          Ms. Horst is the chief claims officer for Residential

1  Capital on its current estate.  She oversees a team of default

2  operations personnel, claims reconciliation personnel who have

3  regular access and familiarity with the debtors' servicing

4  notes, loan payment histories, loan modifications histories.

5  And so the representation she's making, while she might not

6  have touched every single one of these files, she's working

7  with the people most familiar with these files, and looking at

8  the company's ordinary servicing notes and using that as the

9  basis for her factual assertions in the supplemental

10  declaration.

11          THE COURT:  I'm going to allow Ms. Critchley's counsel

12  to file a surreply.  The issue for the Court is does this

13  matter involve disputed issues of fact, is it a contested

14  matter as to which subsequent proceedings are going to be

15  required.  When can you file a surreply?

16          MR. MORGANROTH:  Your Honor, could I have thirty days?

17          THE COURT:  No, no, I'll give you a week.

18          MR. MORGANROTH:  A week.

19          THE COURT:  I'm not going to give you more than a

20  week.  Next Friday.

21          MR. MORGANROTH:  I'll have to do it at nights, Your

22  Honor, because I have other proceedings, but --

23          THE COURT:  You have until 5 p.m. on the 22nd.

24          MR. MORGANROTH:  Your Honor, certainly.

25          THE COURT:  Okay.  After receiving the surreply, I

1   don't want anymore paper after that, Mr. Wishnew.  The Court

2   will determine how to proceed with the matter after that.

3              MR. WISHNEW:  Understood, Your Honor.

4              THE COURT:  There were lots of other responses on this

5   omnibus objection.

6              MR. WISHNEW:  There is, Your Honor.  Did you want to

7   take a break and we can continue, or --

8              THE COURT:  No, the last thing I want to do is take

9   a -- I want to take a break, but the break will be when this

10  calendar is done.

11             MR. WISHNEW:  Understood, Your Honor.  I will try to

12  be as quickly -- as quick as possible.

13             The next matter on the calendar, Your Honor, is Rainer

14  Warner, claim 1574.  He asserts purported financial injury due

15  to alleged errors, misrepresentations and deficiencies, leading

16  to his foreclosure process.

17             THE COURT:  Let me stop right here.  Is anyone here in

18  either in person or on the telephone with respect to the

19  debtors' fiftieth omnibus objection?

20             Come on up to the microphone.  And who are you -- no,

21  to the microphone.  Hold on, I'll let people on the phone in a

22  minute.  Just tell me -- yes.

23             MR. NADEL:  Good morning, Your Honor.  Rosenberg Musso

24  by Robert Nadel, for creditor Albert Passaretti; I believe that

25  is on the fiftieth.

1          THE COURT:  Did you file a response?

2          MR. WISHNEW:  Mr. Passaretti did file a response; we

3   did not file a reply, Your Honor.  I was hoping to have gotten

4   an adjournment from Mr. Passaretti.  I had a call to his

5   counsel earlier in the week.  Unfortunately, it did not work

6   out in terms of an adjournment or consent to an adjournment, so

7   I was prepared to address the matter that's on the record

8   today.

9          THE COURT:  All right.  Let me hear you briefly.

10          MR. NADEL:  Thank you, Your Honor.  I don't have much

11   to add to what's in Mr. Passaretti's response to the debtors'

12   objection.  He asserts that the foreclosure of his Harbor City,

13   California property was improper.  He filed an action to set

14   aside the foreclosure in the California Superior Court.

15   Admittedly, this was dismissed, and his appeal was -- his

16   appeal was stayed by the debtors' filing.

17          The only thing I can add to that is that after the

18   dismissal and prior to the appeal, he learned information that

19   would lead him to believe that GMAC was not the holder of the

20   note and mortgage at the time of the foreclosure.

21          THE COURT:  Anything else you want to say?

22          MR. NADEL:  No, Your Honor.

23          THE COURT:  Okay.  Mr. Wishnew, you want to respond to

24   Mr. Passaretti?

25          MR. WISHNEW:  Yes, Your Honor.  With regards to the

1   point of being the holder of the note, GMAC -- the debtors'

2   rule here was as servicer; GMAC Mortgage was the servicer, it

3   was not the noteholder.  It acted with the authority of the

4   noteholder.  And so in that capacity, acted entirely

5   appropriately and consistent with business practices.

6            THE COURT:  This is nonjudicial foreclosure,

7   California?

8            MR. NADEL:  Yes, Your Honor.

9            THE COURT:  Anything else, Mr. Wishnew?

10           MR. WISHNEW:  I would simply say that this claim is

11  nothing more than an attempt to relitigate the matter that's

12  been dismissed and heard on summary judgment in California.

13           THE COURT:  Well, dismissed, but the appeal is stayed.

14           MR. WISHNEW:  The appeal is stayed, Your Honor, yes.

15  It's been fully briefed and oral argument is, at this point,

16  being waived to be calendared.

17           THE COURT:  Right.  Does the debtor agree to lift the

18  stay to allow the appeal to be decided?

19           MR. WISHNEW:  Can I have one minute, Your Honor?

20           THE COURT:  Yes.

21           MR. WISHNEW:  Thank you.

22       (Pause)

23           MR. WISHNEW:  Your Honor, just to clarify, it would be

24  an appeal -- I'm sorry, stay relief to allow the appeal to be

25  heard, and beyond that, would he have any additional rights to

1  go back to --

2              THE COURT:  No, I mean, you got the case dismissed.

3              MR. WISHNEW:  Correct, Your Honor.

4              THE COURT:  They have appealed.  You've told me it's

5  fully briefed.  If the appeal is resolved in the debtors'

6  favor, that's, frankly, going to be the end of the matter.

7              MR. WISHNEW:  Okay.

8              THE COURT:  But I -- I'm not going to step in in the

9  middle of the appellate -- you're not going to tell me well, it

10 was dismissed and I'm going to rule on that basis what

11 you've -- whether the bankruptcy filing has resulted in the

12 automatic stay, which it has, I don't dispute that.  But as I

13 think you know, in many other matters in this case where there

14 were appeals pending, the parties have either agreed, or I've

15 ordered, that the stay be lifted.

16             So what you should do with Mr. Passaretti's counsel is

17 work out an appropriate stipulation lifting the automatic stay

18 solely for the purpose of permitting the appeal to go forward

19 and be decided.

20             MR. WISHNEW:  Absolutely, Your Honor.

21             THE COURT:  All right?

22             MR. WISHNEW:  Yep.

23             THE COURT:  Is that satisfactory to counsel?

24             MR. NADEL:  Yes, thank you, Your Honor.

25             THE COURT:  Okay.  Go ahead, Mr. Wishnew.

 1           MR. WISHNEW:  Did Your Honor want to survey who else

 2   is on the -- in the courtroom or on the phone with regards

 3   to --

 4           THE COURT:  Yeah.  Is there anybody else -- I think

 5   there was somebody else on the phone who wanted to speak on

 6   behalf of one of the other people who responded to the

 7   fiftieth.  Is anybody appearing on behalf of any of the

 8   claimants with respect to the fiftieth omnibus objection to

 9   claims?

10           MR. MCGUINTY:  Your Honor --

11           THE COURT:  Go ahead.

12           MR. MCGUINTY:  My name is Michael McGuinty, and I'm

13   not really well versed on the Court, but I've been on the line

14   since a quarter to 10 this morning, and never heard my name

15   called.

16           THE COURT:  You're in -- actually, this is when you

17   ought to be speaking; this is with respect to the fiftieth

18   omnibus objection.  Your response, Michael A. and Gloria S.

19   McGuinty --

20           MR. MCGUINTY:  Yeah.

21           THE COURT:  -- you filed a response to the debtors'

22   fiftieth omnibus objection.  Now's the time to speak.

23           MR. MCGUINTY:  Thank you, Your Honor.  And my wife

24   Gloria is on the other phone because we --

25           THE COURT:  That's fine.

1          MR. MCGUINTY:  We received about 500 pages yesterday

2    and it was in Gloria's name.

3          I would like to start, Your Honor, with page 124 of

4    423 that I sent you.

5          THE COURT:  Go ahead.

6          MR. MCGUINTY:  This page and the following three pages

7    shows my thirty-five year relationship with General Motors

8    going back to 1971.  And on page 25 of 423, they offered me

9    that I could refinance my house for another 158,303 dollars if

10   I chose, okay.

11         I had -- because I am handicapped, I have blind faith

12   in the old General Motors.  I mean, I had polio, I have a heart

13   condition, I have forty-nine stitches in my left hand.  These

14   were the only company that would ever give me a job, and I had

15   blind trust in what I could believe what they told me, if it

16   was -- it always happened.

17         And I always thought that GMAC would work with me

18   because I had financed cars, I had three cars financed, several

19   homes.  Never had a problem in thirty-five years.

20         And then in 2009, as I stated -- I wrote a letter that

21   was titled "The Anatomy of a GM Mortgage Massacre," that I sent

22   to you.  It's the whole story of what happened to me.  GMAC

23   claims that what I read here that they told me that I did not

24   have sufficient funds.  I -- since looking at this, I've gone

25   in -- on page 64 of 111 a letter from GMAC, it's dated 7/20 of

RESIDENTIAL CAPITAL, LLC, ET AL.                    112

1   '09.

2           THE COURT:  Go ahead, Mr. McGuinty.

3           MR. MCGUINTY:  There are three places where it's
4   for -- it shows insufficient funds; none of those are checked.
5   When you go to the following page, 65 of 111, they checked
6   mortgage affordability.

7           And when I talked to Mark (ph.) at GMAC, and I have
8   his ID number, he told me he says keep on making your thirteen
9   payments every year, use your GM credit cards to reduce your
10  mortgage, and reapply in 2010, which we did.  And I even sent
11  them more money, and more paper.  And there was a time when,
12  like the previous person, I got shuffled from one person to the
13  other so I began to catalogue and talk of who I talked to and
14  when I talked to, okay.  But I still had faith in General
15  Motors, okay.  But then when they came back in 2010, they said
16  I didn't have enough capital, I was blown away.

17          Jennifer Granholm, at that time, the State of
18  Michigan, had a Hardest-Hit program.  I took -- we went up and
19  we had five meetings in Flint, Michigan.  And Calea Moore
20  (ph.), she said she was never blown away -- because I have so
21  much information, I intimidated her.  I said I didn't mean to
22  intimidate anybody.  But she says GMAC's -- their belief is
23  that GMAC is going to deplete me of all my capital and take
24  both my Michigan and my Florida home, okay?

25          I go back in and I read this information that I get

1  yesterday and they tell me, on page 15 here in the back, where

2  responds to me that they say that my expenses are 7,345.70 and

3  I have a deficit of 2,750.53 per month.  And they only use my

4  $620.45 mortgage in my Florida home.  They omit that I had been

5  paying in addition to that $1596.08 which almost makes it --

6  they say it's four to one; it's one to one.

7          And I'm not a lawyer, but I -- I think I have some

8  common sense.  I'm almost seventy-six years old, and to me my

9  life is done, and my wife's life is done, but I've set up

10  trusts for all of my grandkids.

11          I wrote a letter to the State of Michigan, I said you

12  take this case; you can have a hundred percent of the money, I

13  don't want it.  And they wrote me back and they said you know,

14  we'd like to help you but we can't.

15          I wrote Gerry Spence, up in Montana, and he wrote me

16  back, he says we'd like to help you but I'm old.

17          I wrote Geoffrey Feiger, and Geoffrey Feiger wrote me

18  back twice; I just don't think he wanted to mess with GMAC and

19  the Federal Reserve, which had seventy-four cents of every

20  dollar that GMAC had.  So I just -- I guess I'm -- I'm at a

21  loss.

22          THE COURT:  All right, Mr. McGuinty.

23          MR. MCGUINTY:  Been fighting this for five years,

24  night and day, and I guess I'm going to keep fighting it

25  regardless of what happens until I die.

RESIDENTIAL CAPITAL, LLC, ET AL.                              114

1          THE COURT:  Okay.

2          MR. MCGUINTY:  Because I've been wronged, and I've

3   worked fifty years of my life, and to have some people come in

4   and shyster me out of it, I'm not happy about that.

5          THE COURT:  Okay.  Mr. Nosek, have you -- has special

6   borrowers' counsel looked into this?

7          MR. NOSEK:  We have had -- we had at least one

8   conversation with Mr. McGuinty.

9          I would raise that this might be an appropriate time

10  to bring up the brief that we filed.

11         THE COURT:  I'm sorry?

12         MR. NOSEK:  The brief that we filed, because it does

13  appear that -- focuses a lot on loan modification issues.

14         THE COURT:  It does.  That's --

15         MR. NOSEK:  We did address Florida law, which is where

16  the property was located; it does look like it's a HAMP law,

17  which there is no proper right of action under HAMP for loan

18  modification denials.  And so I would have -- relay that to the

19  Court.  We do have some information in our brief with regard to

20  how to address the law.

21         As far as the underlying allegations, we -- I mean, we

22  can look it into further if you want us to, but based on --

23  from a legal standpoint, we believe that reference to our memo

24  would be appropriate for this claim.

25         THE COURT:  Okay.  All right; I'm going to take this

1   matter under submission.

2           Mr. McGuinty, what Mr. Nosek -- Mr. Nosek is the

3   special counsel to the creditors' committee for borrowers

4   issues.  And what he was referring to about a brief was at the

5   Court's direction some time ago, I had both the debtors'

6   counsel and the creditors' committee special borrowers' counsel

7   file briefs with the Court on the law with respect to --

8   arising in loan modification issues about what, if any, claims,

9   causes of action, legal claims or causes of action, have been

10  recognized and their brief -- the creditors' committee counsel

11  brief addresses the law in fourteen states, including the State

12  of Florida.  I need to go back -- and I've read the brief, I've

13  commented about that before -- and I need to go back and look

14  specifically and go back and look at the documentation that the

15  McGuinty's have submitted to see whether -- recognizing that

16  they're not lawyers, whether those papers -- and considering

17  the debtors' response, whether it appears that the McGuintys

18  have stated a viable claim.  So I'm going to -- Mr. McGuinty,

19  there's nothing further you need to do at this point.  I'm

20  going to go back and review your filing with the Court.  And I

21  certainly appreciate your comments during the hearing today.

22  Okay?

23          MR. MCGUINTY:  Your Honor, could I ask -- add one

24  thing?

25          THE COURT:  Yes, go ahead.

1          MR. MCGUINTY:  I was trying to -- it was not the

2    Florida property, because my monthly payment in Florida was 620

3    in which my 1,596 dollar payment in Michigan.

4          THE COURT:  Okay.

5          MR. MCGUINTY:  And they say in 2009 I had insufficient

6    funds.  From 2009 till July of 2010, I paid them another

7    thirteen months.

8          THE COURT:  Okay.

9          MR. MCGUINTY:  I gave them over 20,000 dollars.

10         THE COURT:  Okay.  Mr. Nosek, did you address

11   Michigan's law?

12         MR. NOSEK:  Yes, Your Honor, we did.

13         THE COURT:  Okay.

14         MR. NOSEK:  And we did file this on the docket; I'd be

15   happy to send a copy to --

16         THE COURT:  Yeah.

17         MR. NOSEK:  -- Mr. McGuinty.

18         THE COURT:  Could you do that?

19         MR. NOSEK:  Yes.

20         THE COURT:  I'm going to have -- Mr. McGuinty, I'm

21   going to have the special counsel to the committee send you a

22   copy of the brief they filed in this Court; it addresses both

23   Michigan and Florida.

24         MR. NOSEK:  Yes.

25         THE COURT:  And so you'll receive a copy of that.  But

RESIDENTIAL CAPITAL, LLC, ET AL.                    117

 1   I want to go back and review.  And the debtor filed a brief as

 2   well, but I want to go back and review those papers in relation

 3   to this pro se claim that's filed.  So I'm going to take that

 4   under submission.

 5          Mr. Wishnew -- let me first ask, is there anybody else

 6   appearing for any of the claimants with respect to the debtors'

 7   fiftieth omnibus objection to claims?

 8          MS. BURGIN:  Yes, Your Honor.  This is Marcene Burgin.

 9          THE COURT:  Okay, go ahead.  Let me hear what you have

10   to say.

11          MS. BURGIN:  And first of all, thank you very much for

12   hearing me this morning.  And I did receive the fiftieth

13   omnibus objection last night.  And first thing I would just

14   like to address is that it states that we were late on monthly

15   payments.  And nowhere ever during the term of our loan have we

16   ever made a late payment.  And it's always been set up on

17   automatic withdrawal from the beginning of the loan, so I don't

18   see how that would even be possible.

19          Section 10(b) of the original disclosure statement of

20   our loan refers to GMA's (sic) right to refuse to make

21   additional advances or reduce the credit limit on our loan.

22   And the checking account portion of this loan we feel is

23   somewhat separated from that.  That would give them the right

24   not to lend us additional funds, which we have never requested,

25   and it would also give them the right to reduce the amount

1   we're allowed to borrow, which is fine.  But nowhere in the

2   disclosure does it give GMAC the right to take away our right

3   to use the checking account portion to make deposits against

4   our principal and use our own funds.  Nor did it give them the

5   right to take away the liquid cash flow that we were using to

6   make investments and live our daily life.  And that took away

7   our ability to make investments and to pay our bills, when they

8   took that money that we had in our account and applied it to

9   the loan.

10          So there's, you know, never been a time during the

11  duration of the loan that we were in any kind of default that

12  we could see that would allow them to do that.  So that's the

13  basis of our claim here.

14          THE COURT:  Okay.  Anything else you want to say, Ms.

15  Burgin?

16          MS. BURGIN:  No.  Thank you, Your Honor.

17          THE COURT:  All right.  Mr. Wishnew.

18          MR. WISHNEW:  Thank you, Your Honor.  Your Honor, this

19  deals with a home equity line of credit.  And as was attached

20  to --

21          THE COURT:  Just pull the microphone a little closer.

22          MR. WISHNEW:  I'm sorry, Your Honor.  This deals with

23  a home equity line of credit given to Mr. and Ms. Burgin.  I

24  believe as attached to their response, paragraph 10 or Section

25  10 of their home equity line says "your right to temporarily

1    suspend my advance or reduce my credit limits," and 10(a)(1)

2    says "the value of property declined significantly below its

3    appraised value for the purposes" --

4            THE COURT:  Slow down.

5            MR. WISHNEW:  I'm sorry.

6            Section 10, subsection (a), subsection -- subsection

7    (1) says that "you may take the actions listed in paragraph B",

8    which would be "refusing to make any additional advances or

9    reducing the credit limit if the value of the property declines

10   significantly below its appraised value for purposes of my

11   account."  Section C -- 10(c) says "before reinstating my right

12   to obtain advances, or restoring my credit limits, you may

13   conduct or obtain credit reports, appraisals, lien searches or

14   other evaluations as you consider appropriate."

15           At the direction of the investor of this line of

16   credit, an appraisal was undertaken.  The assessment was that

17   the value of property had declined significantly below its

18   appraised value so it could not support the line of credit.

19   There was a letter sent on November 12th to Mr. and Ms. Burgin

20   advising them of that.

21           THE COURT:  November 12th of what year?

22           MR. WISHNEW:  2008, Your Honor.  There was a -- my

23   recollec -- or sorry.  It is the company's records reflect

24   there was a call with Mr. and Ms. Burgin a week later, November

25   19th, 2008, to discuss that letter.  There was no cure, as --

RESIDENTIAL CAPITAL, LLC, ET AL.                    120

1  or remedy or attempt to correct the defect by the Burgins at

2  that point in time, and so it's the debtors' position that they

3  acted appropriately, consistent with business practices, in

4  stopping the advances on the HELOC at that point in time given

5  the satisfaction of the conditions set forth in the line of

6  credit.

7          THE COURT:  All right.  Ms. Burgin, do you want to

8  respond?

9          MS. BURGIN:  Yes, I would like to do that.

10         I do not believe that we were ever advised of a

11 reappraisal, but I don't feel that that is actually the issue

12 here, anyway.

13         We still maintain that we were not asking for any

14 further advances and they could have reduced the credit limit,

15 but that they didn't have the right to restrict our ability to

16 use that account as our checking account and make our own

17 deposits and write checks out of that, which did significantly

18 decrease the interest owed by decreasing the value of the -- or

19 the amount of the principal.

20         And I did make a call in response to -- to the letter

21 saying that they were going to take that action, but was

22 advised that there was really nothing that we could do unless

23 we were in default on our loan, and we had not stopped making

24 any payments or dropped behind at all.  And they said that was

25 the only -- only way that you could modify or that they would

RESIDENTIAL CAPITAL, LLC, ET AL.                    121

1   work with us.

2           THE COURT:  All right.  Mr. Nosek, has the borrower's

3   counsel had any involvement in this?

4           MR.  NOSEK:  We did have one discussion with the

5   claimant, but were unable to resolve with her.

6           THE COURT:  All right.

7           MR. NOSEK:  This does -- sorry, I apologize.  This

8   does appear to be a simple contract action under California

9   State law.

10          THE COURT:  All right.

11          MR. NOSEK:  Not covered by our memo.

12          THE COURT:  All right.  I'm going to take the Burgin

13  matter under submission.

14          Let me ask again, is there anyone else appearing on

15  behalf of any other claimant in connection with the fiftieth

16  omnibus objection?  If you want to be heard, now's the time.

17          MR. ABU:  Yes, Your Honor.  My name is Felix Abu.

18          THE COURT:  I'm sorry, just tell me again your name?

19          MR. ABU:  Name is Felix O. Abu.

20          THE COURT:  Okay, go ahead.

21          MR. ABU:  Docket number 5471.

22          THE COURT:  Go ahead, I'll hear what your argument is.

23          MR. ABU:  Yes.  Thank you, sir, for giving me the

24  opportunity to talk to you today; I really appreciate your

25  effort, and to be on the side of justice.  I really appreciate

1  you.  Please excuse my accent; I have an accent, hopefully you

2  will be able to understand me clearly.

3         My complaint is based on an foreclosure and

4  (indiscernible) title, slander of title, and also negligence of

5  fiscal (indiscernible).  The defendant, he has no business to

6  foreclose on my property, which was done illegally.

7         On October 19th, 2011, I requested for a qualified

8  (indiscernible) request; but no response from them.  On March

9  15, 2013 I requested again for material violation to send me

10  this document that show my payment history, and also to show

11  the original note of my document.  Up to now, no response.

12  They'd be giving me the runaround, and they are not trying to

13  help.

14         I tried to negotiate with them based on your

15  supplemental order.  The attorney called me to negotia -- to

16  settle.  Yet again, they did not negotiate with me.

17         So I'm stuck with a bill from the IRS for 273,000

18  because that's what they claim.  So I don't know how you can be

19  of my help because they are giving the runaround.  This case

20  has been going on for so long.

21         And ETS, they had no right to my titles; they have no

22  legal standing to assure that they have the notes to do

23  foreclosure on me.  And I assure you, there was no public sale,

24  that was to happen at 2012.

25         THE COURT:  Anything else you want to add?

RESIDENTIAL CAPITAL, LLC, ET AL.                    123

1          MR. ABU:  Yeah, I just want to have relief from the

2  judge.  And -- because I suffered a lot of injury health wise,

3  and also a loss of property.

4          THE COURT:  All right.  Mr. Wishnew, you want to

5  respond?

6          MR. WISHNEW:  Thank you, Your Honor.

7          One thing that Mr. Abu does not mention is that he had

8  previously sought bankruptcy protection in California, and had

9  commenced an adversary proceeding in his -- I think Chapter 7

10  proceeding, to -- essentially wrongful foreclosure.  And

11  everything he's complaining of here has essentially -- he tried

12  to bring in adversary proceeding earlier this year,

13  notwithstanding the stay against GMAC mortgage and ETS.

14          That matter was dismissed because the Court

15  acknowledged that Mr. Abu lacked standing to bring such an

16  action.  That he -- that the matter belonged to the estate, his

17  estate, and was not brought by the trustee.

18          The case was closed, and he got a discharge January

19  29th of this year.  He then sought to reopen -- I think has had

20  success in reopening his case, filed schedules identifying

21  claims, just like what he's mentioned against GMAC and ETS.

22          Again, the claim belongs to the Chapter 7 trustee and

23  the bankruptcy estate.  No one on -- from a trustee perspective

24  has reached out to us in this regards.  And at this point we

25  don't think Mr. Abu should be the one to be prosecuting this

1    claim.  And for the reason that he didn't have standing before,

2    he doesn't have standing now.  And the claim should be

3    disallowed for the reasons set forth.

4              THE COURT:  Mr. Nosek.

5              MR. NOSEK:  Hold on, Your Honor.

6              MR. ABU:  Yes, Your Honor?

7              THE COURT:  Just a second, Mr. Abu, okay.  Hold on a

8    second.

9              MR. ABU:  Do you want me to talk, sir?

10             THE COURT:  No, I'll give you another chance, but I've

11   asked special borrowers' counsel first to address the issues.

12   I'll give you another chance, Mr. Abu, don't worry.

13             MR. ABU:  Thank you, sir.

14             THE COURT:  Mr. Nosek, could you address me first?

15             MR. NOSEK:  I apologize, Your Honor.

16             THE COURT:  Have you had any communications with Mr.

17   Abu?

18             MR. NOSEK:  We've had a conversation with the

19   claimant.

20             THE COURT:  Right.

21             MR. NOSEK:  But, obviously, with regard -- from a

22   procedural standpoint, if the bankruptcy case is still open,

23   then the Chapter 7 trustee -- speaking from experience for

24   representing them -- that would be his asset, those claims.

25   And so the question I had --

1           THE COURT:  Unless the trustee abandons it.

2           MR. NOSEK:  Unless he abandons it, correct.  And

3     then -- but from what we can tell from the documents the case

4     may still be open, or was recently reopened.

5           THE COURT:  Okay.

6           MR. NOSEK:  And if he did not list -- if the debtor --

7     the claimant in this case did not list it originally, it would

8     still be property of the estate.

9           The question comes up is whether the Chapter 7 trustee

10    has received noticed of the objection.

11          THE COURT:  Okay.  Mr. Abu, can you tell me, is your

12    Chapter 7 bankruptcy still open?

13          MR. ABU:  Yes, sir.

14          THE COURT:  Have you had any communication with the

15    Chapter 7 trustee about your claim against the debtors in this

16    case?

17          MR. ABU:  Yes, sir.

18          THE COURT:  And can you tell me about that; what has

19    the trustee said?  Because, ordinarily, Mr. Abu, if this

20    claim -- if your claim existed at the time you filed your

21    Chapter 7 case, the claim would belong to the estate and it

22    would be ordinarily -- I'm not giving you legal advice, but it

23    would ordinarily be the trustee, the Chapter 7 trustee, who

24    would have to decide whether to go forward with the claim, or

25    the trustee in some circumstances might decide to abandon the

RESIDENTIAL CAPITAL, LLC, ET AL.                    126

 1  claim to you, but have you disclosed the existence of your

 2  claim to the Chapter 7 trustee in your bankruptcy case?

 3           MR. ABU:  Yes, sir.  Yes, I did.

 4           THE COURT:  And what did the trustee do, if anything?

 5           MR. ABU:  On January 29th, they said that the property

 6  has no value and the case was discharged.  However, I had to

 7  file a motion officially for the judge to have a motion to

 8  compel the trustee abandon it, and that case is scheduled on

 9  December 17th for a hearing; it's coming up.  So that if I can

10  have an original document from the judge so that the trustee

11  has already abandoned the property.

12           THE COURT:  So, Mr. Abu, what ordinarily happens, if

13  this -- if your claim against the debtors wasn't listed on your

14  schedules in your bankruptcy case --

15           MR. ABU:  It was listed.

16           THE COURT:  This claim was listed in your schedules?

17           MR. ABU:  Yes, sir.

18           THE COURT:  Mr. Wishnew, was it listed?

19           MR. WISHNEW:  It was listed in his -- in the amended

20  schedules --

21           THE COURT:  Okay.

22           MR. WISHNEW:  -- in his second case.  And at this

23  point we've heard nothing from the trustee in the second case.

24           One way to short --

25           THE COURT:  This is the second bankruptcy case?

1        MR. WISHNEW:  Second bankruptcy case, the one he

2    reopened.

3        THE COURT:  All right.

4        MR. WISHNEW:  One suggestion, Your Honor, would be

5    that we carry this to December 11th or 17th, allow Mr. Nosek's

6    office to reach out to the Chapter 7 trustee and see if we can

7    come to a resolution or disposition of this claim.

8        THE COURT:  Okay.  All right.  So, Mr. Abu, what I'm

9    going to have is I'm going to have the special counsel to the

10   creditors' committee reach out and talk with the Chapter 7

11   trustee and also talk with you, because, Mr. Nosek, whatever

12   the substance of the communication with the Chapter 7 trustee I

13   want communicated to Mr. Abu, as well.  And if your case was

14   reopened with this claim scheduled, the Chapter 7 trustee is

15   going to have to decide whether the Chapter 7 trustee wishes to

16   proceed with the claim or how it wants to deal with it.

17       So what I'm going to do is I'm going to adjourn this

18   matter.  I want to be sure, Mr. Wishnew, that Mr. Abu is given

19   plenty of notice of when it goes back on the calendar.  Mr. Abu

20   can appear by telephone again.

21       Mr. Nosek, you or one of your colleagues, whoever

22   speaks with the Chapter 7 trustee, I want to be sure that you

23   also discuss it with Mr. Abu so he understands whatever

24   communication's taking place with the Chapter 7 trustee.  Okay?

25       MR. NOSEK:  Absolutely, Your Honor.

RESIDENTIAL CAPITAL, LLC, ET AL.                      128

1          THE COURT:  Thank you very much.  All right, so you

2    understand what's going to happen now, Mr. Abu?

3          MR. ABU:  Actually, I don't know what happen on

4    December 17th -- what happen, because what about the property

5    I've lost?

6          THE COURT:  Well, here -- what's going to happen now

7    is I'm going to have one of the special counsel talk with you

8    so you understand exactly how we're going to go forward from

9    here, okay?  So the matter is being adjourned for today; I'm

10   not making a decision today, Mr. Abu.  Okay?

11         MR. ABU:  Don't I get a notice from you to stay the

12   proceeding, so I gain the property?

13         THE COURT:  I apologize, but I didn't understand what

14   you just asked.

15         MR. ABU:  I don't get an order to let them know that

16   this case is still ongoing and I should --

17         THE COURT:  It's still -- yeah.

18         MR. ABU:  -- (indiscernible), please.

19         THE COURT:  You're going to have a communication from

20   the special borrowers' counsel here, and -- who's also going to

21   speak to your Chapter 7 trustee.  And you'll get notice of

22   when -- I want to be sure he gets notice of when we're going --

23   when this is going to be back on the calendar and he can

24   participate by telephone again, okay?

25         All right.  Thank you very much, Mr. Abu.

RESIDENTIAL CAPITAL, LLC, ET AL.                    129

1              MR. ABU:  Yes, sir, Your Honor.

2              THE COURT:  Okay.  Mr. Wishnew.

3              MR. WISHNEW:  Don't you want to take one more survey,

4       Your Honor, of participants?

5              THE COURT:  Yeah.  Is there anybody else present in

6       the court or on the telephone appearing --

7              MS. LAWSON:  Yes, this is Michelle Lawson.

8              THE COURT:  Okay, Ms. Lawson.

9              MS. LAWSON:  I'm present on the telephone.

10             THE COURT:  Go ahead.

11             MR. WISHNEW:  Your Honor, Ms. --

12             MS. LAWSON:  My case came up about an hour and a half

13      ago, and --

14             THE COURT:  That's not on the fiftieth omnibus

15      objection.  Ms. --

16             MS. LAWSON:  -- it was stated that I was represented

17      by counsel and that Mr. Powers said if I would not appear -- I

18      was part of the other -- not the fiftieth omnibus objection;

19      prior to that.

20             THE COURT:  Hang on just a second.  Mr. Wishnew, tell

21      me which is --

22             MR. WISHNEW:  This is on the thirty-sixth omnibus,

23      Your Honor.

24             THE COURT:  Okay, let me --

25             MR. WISHNEW:  I believe you took the matter under

RESIDENTIAL CAPITAL, LLC, ET AL.                    130

1    advisement.

2            THE COURT:  Yeah.  Let me flip back, hold on.

3            Go ahead, Ms. Lawson.

4            MS. LAWSON:  Good afternoon, Your Honor, and thank you

5    for the hearing me.  I am Michelle Lawson and I'm representing

6    Michelle Lawson, et al., and claim number 5282.  I'm asking the

7    Court to let our status as secured creditors stay.

8            According to Section 15 of the debtors' omnibus reply,

9    the debtors have reviewed their books and records.  However,

10   they make no mention of the fraudulent and defective mortgage

11   application that's present as a part of this transaction.

12   Although it was not attached to the proof of claim, by their

13   own admission they are aware of its presence, and the mortgage

14   application was not (break in audio) by all parties.  In fact,

15   it was only (break in audio) by one party whose assets were

16   insufficient to support such a loan and liability (break in

17   audio) 30,000 dollars.

18           Secured creditors, I believe secured creditors status

19   is imputed to us because of the fraudulent and defective

20   mortgage application and the egregious nature of the

21   transaction.  A fraudulent transfer probably creates an (break

22   in audio).  We are bona fide purchasers for value because we

23   have dutifully (break in audio) on the collateral (break in

24   audio) 2005.  (Break in audio) omnibus reply that no other

25   debtor entity had any involvement in the loan as an originator,

1    investor or servicer.  That is untrue because MLN USA (ph.) and

2    Sovereign Bank were investors and servicers on the loan (break

3    in audio).  Because the debtors books (break in audio) --

4           THE COURT:  Ms. Lawson, you're cutting in and out, I

5    don't know if you're on a hand -- you're not on a wired line

6    because you're cutting in and out.

7           MS. LAWSON:  I'm sorry, I was on -- is this better?

8           THE COURT:  Go ahead.

9           MS. LAWSON:  The debtors state in Section 15 of the

10   omnibus reply that no other debtor entity had involvement with

11   the loan as an originator, investor or servicer.  That is

12   untrue, because MLN USA and Sovereign Bank were investors and

13   servicers on the loan prior to 2007.  Because the debtors'

14   books and records have been examined numerous times, and

15   recently in conjunction with these proceedings, it is most

16   probable that the debtors are aware of the fraudulent and

17   defective mortgage application.

18          Furthermore, in a fraudulent transfer, there is an

19   assumption that there is a transfer of some property or

20   interest.  In this case, I believe it is secured creditor

21   status, and that is imputed to us through the collateral

22   located in Philadelphia, PA.

23          Moreover, we have dutifully and in good faith paid a

24   wrongfully acquired debt and honored a mortgaged note which we

25   were fraudulently induced to contract -- for which we were

1  fraudulently induced to contract.

2          Your Honor, I believe this Court has jurisdiction over

3  this matter as it relates to secured creditor status for the

4  claimant in claim number 5282, and claim 5282 should not be

5  redesignated and reclassified as unsecured.  Thank you, Your

6  Honor.

7          THE COURT:  All right.  I took this matter under

8  submission and you don't need to respond any further, Mr.

9  Wishnew.

10         MR. WISHNEW:  Thank you, Your Honor.

11         THE COURT:  All right.  With respect to the debtors

12 fiftieth omnibus objection, is there anyone else present in

13 court or on the telephone who wishes to respond?

14         All right.  No further responses.  All right, the

15 matters are under submission.

16         MR. WISHNEW:  Thank you, Your Honor.

17         THE COURT:  Mr. Mannal.

18         MR. MANNAL:  I don't want to -- I'm Doug Mannal on

19 behalf of the creditors' committee.  I didn't want to interrupt

20 Mr. Wishnew, I just want to take a moment, if we're at the end

21 of the agenda, to thank the Court for its continued efforts in

22 this case, and tireless efforts.  It's going to be a very busy

23 weekend, I understand, and it's -- just wanted to thank the

24 Court.

25         THE COURT:  It's been a very busy week as well.

RESIDENTIAL CAPITAL, LLC, ET AL.                    133

1           MR. MANNAL:  A week, yes.

2           THE COURT:  Thank you.  All right, we're adjourned.

3           MR. WISHNEW:  I'm sorry, Your Honor, one question.

4           THE COURT:  We have one more?

5           MR. WISHNEW:  One administrative question.

6           THE COURT:  Go ahead.

7           MR. WISHNEW:  With regards to the fiftieth, may we

8  submit an order that takes out all the parties who filed

9  responses, but otherwise enter the order --

10          THE COURT:  Yes, you can.

11          MR. WISHNEW:  Okay.

12          THE COURT:  All right, sustained as to those who

13 didn't file responses.

14          MR. WISHNEW:  Thank you very much, Your Honor.

15 Appreciate your time.

16          THE COURT:  All right.  We're adjourned.

17      (Whereupon these proceedings were concluded at 12:50 PM)

18

19

20

21

22

23

24

25

1

2                          I N D E X

3

4                          RULINGS

5                                              Page      Line

6   Impac matter will have evidentiary hearing on 31        5

7   December 11 unless a stipulation is reached

8   by November 20.

9   Hudson Cook fee application, the Court          44        14

10  imposes a reduction of $9,000 for lumped

11  time entries.

12  After confirmation of the U.S. Trustee,        45        3

13  counsel for Hudson Cook can submit an order

14  for approval of expenses.

15  The debtors' objection to the claim filed by  47        19

16  Sidney T. Lewis and Yvonne D. Lewis, is

17  sustained

18  Thirty-fourth omnibus objection sustained      80        1

19  Thirty-fifth omnibus objection sustained       81        9

20  Thirty-seventh omnibus objections, not         89        25

21   including Mr. Ridge's, sustained

22  Thirty-eighth omnibus objections sustained as 90        16

23   modified

24  Thirty-ninth omnibus objections sustained      90        24

25

1

2                                    RULINGS

3                                                    Page      Line

4   Fortieth omnibus objection sustained          91        20

5   Forty-first omnibus objection sustained       92        3

6   Forty-third omnibus objection, Nardia Packer  94        3

7    sustained

8   Forty-second omnibus objection sustained      94        18

9   Forty-forth omnibus objections sustained      95        5

10  Forty-fifth omnibus objections sustained      95        13

11  Forty-sixth omnibus objection sustained       95        22

12  Forty-eighth omnibus objection sustained      97        2

13

14

15

16

17

18

19

20

21

22

23

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

1

2                       C E R T I F I C A T I O N

3

4   I, Penina Wolicki, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8

9

10

11   _____

12   PENINA WOLICKI

     AAERT Certified Electronic Transcriber CET**D-569
13

14
     eScribers
15
     700 West 192nd Street, Suite #607
16
     New York, NY 10040
17

18
     Date:  November 18, 2013
19

20

21

22

23

24

25