UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re:

RESIDENTIAL CAPITAL, LLC, et al.

                                    Debtors.

-------------------------------------------------------------X

Case No. 12-12020 (MG)                    Docket 5150

OPPOSITION BY JASON AND JENNIFER
SCHERMERHORN TO THE DEBTORS'
OBJECTIONS TO THEIR PROOFS OF CLAIM
NOS. 338 AND 339

Hearing Date: December 17, 2013
Time: 10:00 a.m.
Judge and Dept:
Hon. Martin Glenn
Alexander Hamilton Custom House
One Bowling Green, Room 501
New York, NY 10004-1408

Jason[1] and Jennifer Schermerhorn, by their attorneys of record, hereby present their opposition to

the Debtors' Forty-Second Omnibus Objection to Claims (Reduce and Allow Borrower Claims).

[Docket No. 5150.]

---

[1] Although filed correctly on the subject proofs of claim, Jason's name was improperly entered at some point in the proceedings such that it appears, in connection with claim no. 339, as "James." The record should be corrected to reflect that it is "Jason" as to both claims nos. 338 and 339.

## Table of Contents

I. STATEMENT OF THE FACTS……………………………………………………...……...……1

    A. The Subject Proofs of Claim………………………………………………………………1

    B. The State Court Action……………………………………………………………...…...2

    C.  Facts Underlying GMAC's and ETS's Complaint………………………………...…...2

    D. Procedural History of the State Court Action…………………………………..…...…...6

II. ARGUMENT…………………………………………………………………….….…7

    A. The Debtors' Have Failed to Rebut the Prima Facie Validity of the Schermerhorns'
       Proofs of Claim……………………………………………………………………….…...7

    B. This Court Should Apply California Law on the Subject of the Schermerhorns'
       Entitlement to Attorney Fees and Overrule the Debtors'
       Objections to the Claims…………………………………………...……………..…...11

        1.    California Law: Basis for Attorney Fees…………………………………….…...12

III. CONCLUSION…………………………………………………………………..……...19

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

In re Allegheny Int'l Inc.,
      954 F.2d 167 (3d Cir. 1992) .........................................................................9-10

In re Annin & Co.,
      95 F.2d 381 (2d Cir. 1938) ...............................................................................8

In re Bane,
      236 B.R. 352 (Bankr. W.D. Va. 1999) .......................................................10, 11

Chase Manhattan Mortgage Corp. v. Lessel,
      55 Cal. App. 4th 10 (1997)  ...............................................................................16

In re Consolidated Pioneer Mortgage,
      178 B.R. 222 (B.A.P. 9th Cir. 1995)................................................................8, 9

Dell Merk v. Franzia,
      132 Cal. App. 4th 443 (2005)  ...........................................................................16

In re Eagson Corp.,
      58 B.R. 395 (Bankr. E.D. Pa. 1986) ...................................................................8

Feinberg v. Bank of New York (In re Feinberg),
      442 B.R. 215 (Bankr. S.D.N.Y. 2010) ...............................................................8

In re General Film Corp.,
      274 F. 903 (2d Cir. 1921) ...................................................................................8

In re Greene,
      71 B.R. 104 (Bankr. S.D.N.Y. 1987)..................................................................8

Grogan v. Garner,
      498 U.S. 279 (1991)...........................................................................................10

In re Hannevig,
      10 F.2d 941 (2d Cir. 1925) .................................................................................8

Heiser v. Woodruff,
      327 U.S. 726 (1946)...........................................................................................11

Hellier v. Russell,
    136 Cal. 143 (1902) ...................................................................................16

In re Hobdy,
    130 B.R. 318 (B.A.P. 9th Cir. 1991) .........................................................8

Hsu v. Abbara,
    9 Cal. 4th 863 (1995) ................................................................................18

Int'l Billing Services, Inc. v. Emigh,
    84 Cal. App. 4th 1175 (2000) ...................................................................17

Kachlon v. Markowitz,
    168 Cal. App. 4th 316 (2008) ........................................................... 13-15

In re King,
    305 B.R. 152 (Bankr. S.D.N.Y. 2004) .......................................................8

In re King Street Investments, Inc.,
    219 B.R. 848 (B.A.P. 9th Cir. 1998) ..........................................................9

In re Koloch,
    416 B.R. 375 (Bankr. E.D.N.Y. 2009) ......................................................8

Korech v. Hornwood,
    58 Cal. App. 4th 1412 (1997) ...................................................................16

Loduca v. Polyzos,
    153 Cal. App. 4th 334 (2007) ...................................................................16

Lundell v. Anchor Construction Specialists, Inc. (In re Lundell),
    223 F.3d 1035 (9th Cir. 2000) ....................................................................9

In re Martinez,
    409 B.R. 35 (Bankr. S.D.N.Y. 2009) .........................................................8

In re Medina,
    205 B.R. 216 (B.A.P. 9th Cir. 1996).........................................................8

In re Mulvania,
    214 B.R. 1 (B.A.P. 9th Cir. 1997).............................................................9

Nasser v. Superior Court,
    156 Cal. App. 3d 52 (1984) ......................................................................16

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D. N.Y. 2009) ................................................................8

In re Pitts,
    31 B.R. 90 (Bankr. N.D. Ga. 1983) ..................................................................11

In re Residential Capital, LLC,
    2013 WL 5977504, 4 (Bankr. S.D.N.Y. 2013) ...................................................8

Reynolds Metals Co. v. Alperson,
    25 Cal. 3d 124 (1979) .....................................................................................15

In re Rockefeller Center Properties.,
    272 B.R. 524 (Bankr. S.D. N.Y. 2000)............................................................11

RTC Mortgage Trust 1994-S2 v. Shlens,
    62 Cal. App. 4th 304 (1998) .....................................................................15-16

Serrano v.  Priest,
    20 Cal. 3d 25 (1977)  ......................................................................................17

In re Svendsen,
    34 B.R. 341 (Bankr. D.R.I. 1983)......................................................................8

Valley Bible Ctr. v. Western Title Ins. Co.,
    138 Cal. App. 3d 931 (1983)  ..........................................................................16

In re Woolley's Parkway Center, Inc.,
    147 B.R. 996 (Bankr. M.D. Fla. 1992) ...........................................................10

In re Woodmere Investors Ltd. Partnership,
    178 B.R. 346 (Bankr. S.D.N.Y. 1995)..............................................................18

Wright v. Holm (In re Holm),
    931 F.2d 620 (9th Cir. 1991) .............................................................................9

## FEDERAL STATUTES AND RULES

11 U.S.C. § 502........................................................................................................7

Federal Rule of Bankruptcy Procedure 3001 .......................................................7, 8

## CALIFORNIA CODES AND PROCEDURES

California Civil Code Section 1717 ........................................................................................ 13-16

California Civil Code Section 2924 ............................................................................................16

California Code of Civil Procedure § 1021 ...............................................................................13

## I.  STATEMENT OF THE FACTS

**A.**     **The Subject Proofs of Claim.**

On July 26, 2012 the Schermerhorns, through counsel, filed proofs of claim nos. 338 and

339 each in the amount of $582,662.25, as a general unsecured claim.  (See Declaration of

Michael Y. MacKinnon ("MacKinnon Declaration") filed in support of this opposition, ¶ 2.)

Two proofs of claim were filed: one in the GMAC case (claim no. 338), and an identical one

(claim no. 339) in the ETS case, since (as will be described more in detail below) both GMAC

and ETS sued the Schermerhorns in State Court in California in 2009, and the Schermerhorns

prevailed against each of them at trial in 2011.  Of the claim amount, the sum of $14,463.51

represents the cost amount allowed by the State Court after trial per the memorandum of costs

filed in the State Court on January 27, 2012.  The balance of the claim represents the attorneys'

fees incurred on behalf of the Schermerhorns and to which they are entitled under California

Civil Code Section 1717 as the prevailing parties.  The trial judge ruled that the Schermerhorns

were entitled to their attorneys' fees, but the hearing scheduled to quantify those fees was halted

by the automatic stay in these consolidated cases.

On July 10, 2013, pursuant to the Debtors' request, on behalf of the Schermerhorns,

counsel submitted a Claims Information statement on each claim, supplying all available

supporting information for the claims as requested by the Debtors.  (MacKinnon Declaration,

¶2.)

The Notice of Hearing on Forty-Second Omnibus Objection to Claims (Reduce and

Allow Borrower Claims) references the Notice of Debtors' Forty-Second Omnibus Objection to

Claims [Docket 5150] and is directed to both of the Schermerhorns' claim nos. 338 and 339.  The

sole stated basis for the objection is that the Schermerhorns' claim was only listed on the Debtors'

schedules and contained in their books and records in the amount of $14,453.51.  It also states

that the "claimants have not provided support as to why they are entitled to attorneys' fees."

[Docket 5150, p. 37.]

For the reasons set forth herein, the Debtors' objections are not well taken, should be

overruled, and the Schermerhorns' claims 338 and 339 should be allowed as filed.

**B.    The State Court Action.**

GMAC Mortgage, LLC, fka GMAC Mortgage Corporation ("GMAC"), and Executive

Trustee Services, LLC, fka Executive Trustee Services, Inc. ("ETS") (hereinafter collectively the

"Debtors") commenced an action in the Superior Court for the State of California, County of

Riverside, against Mark Tozier, Jason and Jennifer Schermerhorns (the Schermerhorns") and

several other defendants on November 30, 2009 and stated causes of action for declaratory relief,

cancellation of instruments, and reformation of full reconveyance.  This action was entitled

GMAC Mortgage LLC v. Tozier, et al., and was assigned case number RIC 541193 (the "State

Court Action").  (See MacKinnon Declaration, ¶ 3 and Exhibit "2" hereto.)

**C.    Facts Underlying GMAC's and ETS's Complaint.**

The following facts were determined by the State Court in its 43-page Statement of

Decision ("Statement of Decision"), a true and correct copy of which is attached to proofs of

claim 338 and 339 as Exhibit "1," and are law of the case as a result of the findings made after

trial and the judgment entered thereafter.

The subject of the State Court Action was residential real property located at 33914

Tuscan Creek Way, Temecula, California, 92592 (the "Property").  (Statement of Decision, p. 5.)

The prior residential owner of the Property was Mark Tozier, who obtained two loans from

Cross-Defendant California Empire Financial Group, Inc. on or about March 30, 2005. The first

of the Tozier loans was for $429,856.00 (the "First Loan"). (Ex. "1" to Complaint, pp.. 1-2.)  The

second Tozier loan was for $107,464.00 (the "Second Loan").  (Ex. "2" to Complaint, pp.1-2.)

The First Loan and the Second Loan were secured by separate Deeds of Trust, recorded on April

4, 2005, bearing Instrument Nos. 2005-0261680 (the "First Deed of Trust") and 2005-0261681

(the "Second Deed of Trust"), respectively.  (Ex. "1" to Complaint, pp. 1-2; Ex. "2" to

Complaint, pp. 1-2; Statement of Decision, p. 5.)   Cross-Defendant Mortgage Electronic

Registration Systems, Inc. ("MERS") was the named beneficiary under both the First Deed of

Trust and the Second Deed of Trust.  (Statement of Decision, p. 7.)  At all times GMAC claimed

to be the agent and servicer, and sometimes the beneficiary, for the Tozier acquisition loans.   A

true and correct copy of the complaint filed by the Debtors in the State Court, including exhibits,

is attached hereto as Exhibit "1."  A true and correct copy of the complete docket in the State

Court Action is attached hereto as Exhibit "2."

On November 23, 2005, Bank of America recorded a Short Form Deed of Trust to secure

a loan of $145,000.00, plus interest, to Mr. Tozier.  (Ex. "3" to Complaint; Statement of

Decision, p. 5, ¶ 8.)  The loan proceeds were used to pay the entire remaining balance of Tozier's

Second Loan.  (Statement of Decision, p. 6, ¶ 9.)   GMAC reconveyed the First Deed of Trust as

evidenced by the Reconveyance recorded on November 29, 2005 (Ex. "4" to Complaint, p. 1),

and GMAC also caused the reconveyance of the Second Deed of Trust, with that reconveyance

being recorded on February 29, 2008. (Ex. "8" to Complaint, p. 1.)  The November 29, 2005

reconveyance (the "November 2005 Reconveyance") reconveyed the First Deed of Trust and

released the lien on the Property securing the First Loan.  *Id.*  The February 29, 2008

reconveyance (the "February 2008 Reconveyance") reconveyed the Second Deed of Trust and

released the lien on the Property securing the Second Loan . *Id.* (Statement of Decision, p. 6, ¶¶ 11-14.)

It appears that Bank of America's Short Form Deed of Trust was intended to be a junior-position lien on the Property to replace the Second Deed of Trust sometime in November 2005. (Statement of Decision, p. 11.) The amount of the Bank of America loan was sufficient to pay, and the funds were used in part to pay, the entirety of the Tozier Second Loan. (Statement of Decision, p. 6, ¶ 9.) The Short Form Deed of Trust was in third position until GMAC reconveyed the First Deed of Trust on November 29, 2005, after which it assumed the second position deed of trust of record on the Property. After GMAC's 2005 reconveyance of the Second Deed of Trust, on February 29, 2008, Bank of America's deed of trust was in the senior lien position. Bank of America obtained title to the Property by purchasing it at a non-judicial foreclosure sale, which Bank of America conducted on March 21, 2008 (Statement of Decision, p. 12; the Trustee's Deed upon sale was recorded in the office of the Riverside County recorder on April 30, 2008 as instrument number 2008-0222317. (Statement of Decision, p. 12.) Bank of America made a credit bid at its foreclosure sale and became the owner of the Property.

On June 10, 2008, the Schermerhorns contracted to purchase the Property from Bank of America for $341,000. (Statement of Decision, p. 12.) That sale closed, and the Grant Deed from Bank of America to the Schermerhorns recorded on July 11, 2008. (Statement of Decision, pp. 12-13.) Prior to and at the time of the agreement, the Schermerhorns had no knowledge of any matters that would affect title to the Property. Moreover, Bank of America did not disclose to the Schermerhorns any matters that would affect title to the Property. The purchase agreement was memorialized by the Residential Purchase Agreement and Joint Escrow Instructions (the "Purchase Agreement") of the parties. (Ex. "F" to Cross-Complaint, a true and correct copy of

which is attached hereto as Exhibit "3.") The Purchase Agreement provided that title to the

Property was not subject to any monetary liens at the time of the purchase . Id. Moreover, the

Purchase Agreement provided that Bank of America had a duty to disclose to the Schermerhorns

all matters affecting title, whether of record or not, and that the Schermerhorns had the right to

cancel their purchase if Bank of America was unable to convey good title to the Property to the

Schermerhorns. Id. The Schermerhorns obtained a loan from the National bank of Kansas to

assist in their purchase of the Property; they later refinanced that loan with Wells Fargo Bank.

(Statement of Decision, p. 8, ¶¶ 34 & 38.) At no time relative to this Property and transaction

were the Schermerhorns ever a borrower of GMAC or ETS.

On or about June 17, 2008, Debtors filed a Rescission: Notice of Void Reconveyance (the

"Rescission"), attempting to rescind the November 2005 Reconveyance and revive and restore

the First Deed of Trust and the First Loan.  (Ex. "10" to Complaint; Statement of Decision, p.

125, ¶ 8.)  If revived, the First Loan would have been a senior obligation subjecting the

Schermerhorns and the Property to a principal obligation of approximately $429,856.00 plus

several years of accumulated and unpaid interest. There is no evidence that Tozier satisfied all or

any substantial amount of his principal obligation under the First Deed of Trust.

Neither Bank of America nor Debtors notified the Schermerhorns of Debtors' attempted

Rescission and assertion of a competing interest at any time prior to the Schermerhorns' closing

of the purchase and recording of their grant deed, and the trial court found that the

Schermerhorns were entitled to rely on the 2005 reconveyance and were bona fide purchasers of

the Property.  (Statement of Decision, pp. 22 & 24.)  Similarly, Debtors took no action to enforce

the allegedly revived senior lien until long after the Schermerhorns had purchased the Property.

It was not until on or about November 30, 2009 - when served with the State Court Complaint -

that the Schermerhorns were apprised of the Debtors' asserted interest.  The Schermerhorns would not have consummated the purchase of the Property if they had known of Debtors' asserted interest in the Property.  The Schermerhorns were found to be good faith purchasers that took title to the Property with no notice of the Debtors' adverse claims, despite the allegations contained in the Debtors' complaint against the Schermerhorns.  (Statement of Decision, pp. 26 & 39-42.)

D.    **Procedural History of the State Court Action.**

From December 2009 through and including the spring of 2012, the State Court Action was hotly contested.  There was significant written discovery served by GMAC and ETS on the Schermerhorns, MERS, Wells Fargo Bank, and Bank of America; the defendants also served significant discovery on Debtors.  There were approximately thirty (30) depositions taken across the country.  The Debtors' witnesses were not produced in California for their deposition; rather, they were deposed in Pennsylvania.  Debtors also noticed depositions for Washington state. (MacKinnon Declaration, ¶ 4.)

The State Court Action was tried before a judge on July 8, 11, 12, 13, 14 and 15, 2011. After the conclusion of a full bench trial, and after giving all parties (including GMAC and ETS) an opportunity to submit comments, on August 29, 2011, the Superior Court issued its Statement of Decision denying each and every claim for relief sought by GMAC and ETS, and entering judgment in favor of the Schermerhorns and the other defendants named by GMAC and ETS. (Statement of Decision, pp. 39-42.)  Because of the completeness of the relief granted to the defendants after the July 2011 trial, GMAC's affirmative claims and all defenses thereto were completely resolved by the State Court.  (Statement of Decision, pp. 41-42; MacKinnon Declaration, ¶ 5.)

6

The Schermerhorns, Wells Fargo Bank, and Bank of America were the prevailing parties as set forth in the judgment entered in the State Court Action on January 10, 2012.  A true and correct copy of the Judgment was attached to the proofs of claim as Exhibit "2."

Both GMAC and ETS lost on all claims stated in the State Court Action, and the Schermerhorns were the prevailing parties.  On January 27, 2012, the Schermerhorns filed and served their memorandum of costs in the State Court Action.  After consideration of objections asserted to that memorandum of costs, on or about February 16, 2012, the Schermerhorns filed and served their Amended Memorandum of Costs, setting forth the detail supporting allowable litigation costs in favor of the Schermerhorns in the amount of $14,463.51.  A true and correct copy of this Amended Memorandum of Costs was attached to the proofs of claim as Exhibit "3." Still to be determined at that time were expungement of the lis pendens that the Debtors had recorded against the Schermerhorns' Property, and quantification of the amount of the Schermerhorns' attorneys' fees to be assessed against the Debtors.  (MacKinnon Declaration, ¶ 7.)

II.    **ARGUMENT.**

**THE DEBTORS' OBJECTION TO THE SCHERMERHORNS' CLAIMS SHOULD BE OVERRULED, AND THE CLAIMS ALLOWED AS FILED.**

**A.    The Debtors Have Failed to Rebut the Prima Facie Validity of the Schermerhorns' Proofs of Claim.**

Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under Section 501 of this title, is deemed allowed, unless a party in interest, . . . objects."  Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

A claim has a presumption of validity until a party in interest objects.  In re Oneida Ltd., 400

B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (cited by Debtors); In re Annin & Co., 95 F.2d 381, 382-83

(2d Cir. 1938) [a proof of claim "is prima facie evidence of its allegations"]; In re King, 305 B.R.

152, 164 (Bankr. S.D.N.Y.2004); In re Hannevig, 10 F.2d 941, 942 (2d Cir. 1925); In re Koloch, 416

B.R. 375, 378 (Bankr. E.D.N.Y. 2009) ["no further proof needs to be produced unless evidence

contradicting it is produced by the objector"]; see also In re Medina, 205 B.R. 216, 222 (B.A.P. 9th

Cir. 1996), citing In re Hobdy, 130 B.R. 318, 320 (B.A.P. 9th Cir.1991); In re Consolidated Pioneer

Mortgage, 178 B.R. 222, 225 (B.A.P. 9th Cir.1995).  "[I]n bankruptcy a verified proof of debt has

greater effect than the filing of a complaint. It has probative force and makes out a prima facie case,

for which reason the objector is required to go forward."  In re General Film Corp., 274 F. 903, 904-

905 (2d Cir. 1921).

The objecting party must produce evidence "equal in force to the prima facie case" in order

to shift the burden back to the claimant.  In re Oneida, 400 B.R. at 389; see also In re Eagson Corp.,

58 B.R. 395, 396 (Bankr. E.D. Pa.1986); In re Medina, 205 B.R. at 222.  The burden of going

forward with proof that a claim is objectionable is initially on the one objecting to it.  Fed. Rule

Bankr. Proc. 3001(f).  Feinberg v. Bank of New York (In re Feinberg), 442 B.R. 215, 220 (Bankr.

S.D.N.Y. 2010), see also In re Svendsen, 34 B.R. 341, 343-44 (Bankr D.R.I. 1983); In re Eagson, 58

B.R. at 396.  "To rebut the presumption of the claimant's prima facie case, an objecting party is

required to produce 'sufficient evidence to negate one or more of the sworn facts in the proof of

claim.'"  In re Martinez, 409 B.R. 35, 38 (Bankr. S.D.N.Y. 2009); see also In re Greene,  71 B.R. 104,

106 (Bankr. S.D. N.Y. 1987) (the proof of claim "compels the objecting party to go forward and

produce sufficient evidence to rebut the claimant's prima facie case."); In re Residential Capital,

LLC, 2013 WL 5977504, 4 (Bankr. S.D.N.Y. 2013) ("once an objection is made, the court must

determine whether the objection is well founded").  "The burden then shifts to the objector to

produce evidence sufficient to negate prima facie validity."  In re Feinberg, 442 B.R. at 220 (citing In

re Allegheny Int'l Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). The Ninth Circuit Court of Appeals has

stated that to be sufficient it must "show facts tending to defeat the claim by probative force equal to

that of the allegations of the proofs of claim themselves." Wright v. Holm (In re Holm), 931 F.2d

620, 623 (9th Cir.1991), cited in In re King Street Investments, Inc., 219 B.R. 848, 859 (B.A.P. 9th

Cir.1998).  Once the objecting party has met its burden, the burden shifts back to the creditor to

prove its claim in light of the evidence adduced by the objections. In re Mulvania, 214 B.R. 1, 6

(B.A.P. 9th Cir.1997).

 In Lundell v. Anchor Construction Specialists, Inc. (In re Lundell), 223 F.3d 1035 (9th

Cir.2000), the Ninth Circuit addressed the issue of the amount of proof necessary to rebut the prima

facie effect of a proof of claim.  There, the Ninth Circuit said:

> Upon objection, the proof of claim provides "some evidence as to its validity and amount"
> and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm
> (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 L. King, Collier on Bankruptcy
> §502.02, at 502-22 (15th ed. 1991)); *see also (Ashford v. Consolidated Pioneer Mort. (In re
> Consol. Pioneer Mort.)* 178 B.R. 222, 226 (Bankr. 9th Cir. 1995), *aff'd*, 91 F.3d 151 (9th
> Cir. 1996).  To defeat the claim, the objector must come forward with sufficient evidence
> and "show facts tending to defeat the claim by probative force equal to that of the
> allegations of the proofs of claim themselves." *(In re Holm)*, 931 F.2d at 623. . . . . [¶] If
> the objector produces sufficient evidence to negate one or more of the sworn facts in the
> proof of claim, the burden reverts to the claimant to prove the validity of the claim by a
> preponderance of the evidence." *In re Consol, Pioneer*, 178 B.R. at 226 (quoting *In re
> Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

In re Lundell, 223 F.3d at 1039.  In Lundell the Ninth Circuit found that the bankruptcy court had

properly placed the burden of persuasion on the creditors, but found that the objections by the debtor

(the objecting party) were insufficient to negate the creditor's allegations. Id. at 1039-40.

 In this case, the Schermerhorns submit that the "evidence" offered by the Debtors - namely,

bare statements about what is reflected in the Debtors' books and records - is insufficient on its face

to rebut the prima facie effect of the proof of claim. Id.  Where the objection and supporting

declaration merely set forth conclusory allegations, and especially where those allegations are

erroneous, those allegations are insufficient as a matter of law for disallowance of a claim.  In re
Woolley's Parkway Center, Inc., 147 B.R. 996, 1000 (Bankr. M.D. Fla. 1992).

The Debtors' Objection to the Schermerhorns' claims merely states that the claims should
be allowed only in a lesser amount than what they were filed in because they were "filed in a
greater amount than the amount for which the Debtors' estates are liable."  [Docket 5150, p. 6 of
37, ¶ 2.]  The Objection goes on to state simply that "[a]fter a review of the claimants'
supporting documentation and the Debtors' books and records, the Debtors determined that the
Reduce and Allow Claims do not reflect the correct amounts owed to the claimants for the
reasons set forth on Exhibit A under the column heading "Reason for Modification." (Horst
Declaration, ¶ 4.)"  [Docket 5150, p. 9 of 37, ¶ 19.]

The Debtors do not explain why the books and records reflected the lesser amount.  The
Debtors do not explain why the judgment that allowed the Schermerhorns to recover attorneys'
fees in an amount to be determined should be disregarded.  Thus, the sole basis for the objection
appears to be reliance on the Debtors' "books and records," and there is no offer of proof of the
adequacy of those records vis-a-vis the litigation that the Debtors themselves commenced against
the Schermerhorns and others in California in 2009.  The Debtors' objection assumes only the
allowance of the amount of the bill of costs filed in the State Court Action, while ignoring the
attorneys' fees to which the Schermerhorns are entitled under California law (discussed further
below).

The Schermerhorns' claim is based upon a full and complete trial of a state court lawsuit
brought by the Debtors, which the Debtors lost and in which the Schermerhorns were the
prevailing parties, long before these Chapter 11 cases were filed.  See In re Bane, 236 B.R. 352,
353 (Bankr. W.D. Va. 1999), citing Grogan v. Garner, 498 U.S. 279, 112 L.Ed.2d 755, 111 S.Ct.
654 (1991).  Indeed, the validity of a claim of a creditor which is based on state court judgment

may be attacked in a bankruptcy court by objection to proof of claim only upon grounds that

there was lack of jurisdiction over parties or subject matter of suit or that judgment was product

of fraud.  See In re Pitts, 31 B.R. 90, 92 (Bankr. N.D. Ga. 1983), citing Heiser v. Woodruff, 327

U.S. 726, 737, 90 L.Ed 970, 66 S.Ct. 853 (1946).  In this case, the Debtors have not attacked the

State Court proceedings, the Statement of Decision, or the Judgment, nor can they.  As a result,

the Debtors have failed to carry their burden with respect to the prima facie effect of the

Schermerhorns' two proofs of claim.

Since federal courts should give preclusive effect to state-court judgments whenever a

state court would do so, a debtor should be collaterally estopped by an adverse state court

judgment from objecting to proof of claim filed by a state court judgment creditor.  In re Bane,

236 B.R. at 353.  Finally, the Debtors have characterized the Schermerhorns' claims as

"Borrowers Claims" (a term defined in the Objection, Docket 5150, at p. 6 of 37, ¶3), when the

undisputed facts show that the Schermerhorns were never borrowers of the Debtors.

For these reasons, the Debtors have not sustained their burden as to the objections, and

the objections must be overruled.

**B.**   **This Court Should Apply California Law on the Subject of the Schermerhorns'
      Entitlement to Attorneys' Fees and Overrule the Debtors' Objections to the Claims.**

This court should look to applicable state law to determine the allowability of a claim

when that claim has its basis in state law principals.  See In re Rockefeller Center Properties.,

272 B.R. 524, 539, fn. 14 (Bankr. S.D.N.Y. 2000), aff'd 266 B.R. 52 (S.D.N.Y. 2001), 46 Fed.

Appx. 40 (2d Cir. 2002).

## 1. **California Law: Basis for Attorneys' Fees.**

As part of Debtors' claims against the Schermerhorns in the State Court Litigation, the Debtors sought to have the Reconveyance deemed null and void and to declare that the "first priority security interest created by the [First Deed of Trust] still exists and remains valid and that the rights and obligations created by said Deed of Trust remain fully enforceable according to applicable law." (Complaint, ¶ 26; see also Statement of Decision, p. 13.) GMAC and ETS incorporated the terms of the First Deed of Trust into the complaint and attached it to the (Complaint at Exhibit "1.") Included in the relief sought by GMAC and ETS in the State Court Action was a request that the First Deed of trust be fully reinstated and given full force and effect, and that Deed of Trust provides two independent mechanisms for recovering attorneys' fees and costs. (Deed of Trust, Ex. 1 to Complaint, also Trial Exhibit 1.) The Deed of Trust expressly provides:

> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If ... (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations) ... then the Lender may do and pay for whatever is reasonable and appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interests in the Property and/or rights under this Security Instrument.
>
> Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest as the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

*   *   *

     **14.**     **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including but not limited to, attorneys' fees . . . .

The terms of the Note for which the Deed of Trust secured payment, also allow for payment of attorneys' fees and costs. See Exhibit "7" to the MacKinnon Declaration, a true and correct copy of Trial Exhibit 40-551-553, ¶ 4(D), which states as follows:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

(See Trial Exhibits 1 (also Exhibit 1 to Complaint) and 40.) Pursuant to these provisions, the Deed of Trust and the Note both give the party a right to recover any attorneys' fees incurred in safeguarding its security interest and priority position on the Property.

     In California, attorneys' fees and costs are recoverable by the prevailing party if provided for by contract or statute. California Code of Civil Procedure § 1021. California Civil Code Section 1717 allows for the recovery of attorneys' fees and costs as follows:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

     Put another way, "where a contract provides that only one party may obtain attorney fees in litigation, section 1717 makes the right to such fees reciprocal such that the party prevailing on the contract  will be entitled to recovery of fees whether he or she is the party specified in the contract or not." Kachlon v. Markowitz, 168 Cal. App. 4th 316, 346 (2008). Moreover, for purposes of section 1717, claims that are equitable in nature are still actions "on the contract" if they seek to interpret or enforce the rights to the agreement that contains the attorneys' fee

provision.  Kachlon, 168 Cal. App. 4th at 347-48.  In this regard, courts have consistently held that claims for declaratory relief and quiet title arising out of a deed of trust are actions founded on the contract and support an award of attorneys' fees under section 1717.  Id.

In Kachlon, home buyers filed suit against the sellers and the sellers' substituted trustee alleging that they had wrongfully initiated nonjudicial foreclosure proceedings on the home under a deed of trust that secured a promissory note executed by buyers in favor of sellers.  Id. at 329.  The buyers prevailed on their equitable claims for declaratory relief and quiet title and were awarded attorneys' fees jointly against the sellers and the substituted trustee.  Id. at 330-331. The defendants appealed claiming that section 1717 did not apply because the buyers' claims were equitable claims, for declaratory relief, injunctive relief and quiet title, and were not based on contract.  Id. at 346.

The California Court of Appeal first affirmed the reciprocal nature of attorneys' fees in the context of section 1717.  Id. at 347.  It explained that since the attorney fee provision included in the deed of trust allowed the beneficiary and/or trustee to recover attorneys' fees incurred in any action affecting the beneficiary's security interests in the property, the buyers were likewise entitled to attorneys' fees if they prevailed in an action on the note or deed of trust. Id.  Then, in determining whether the equitable claims were "based on the contract," the court explained "the proper focus is not on the nature of the remedy, but on the basis of the cause of action."  Id. at 347.  Since the equitable claim all arose out of whether the foreclosure was done in accordance with the terms of the deed of trust and required a declaration of rights based on the deed of trust, the equitable claims all were sufficiency based "on the contract" to entitle the prevailing party to attorneys' fees under section 1717.  Id. at 348.  Therefore, the buyers were entitled to attorneys' fees as provided in the deed of trust.   Such is the scenario here.

The State Court Action brought by Debtors to reinstate the Deed of Trust and to declare all rights and obligations created by the Deed of Trust valid is, under the holding in <u>Kachlon</u>, an action on the contract.  Pursuant to the Deed of Trust, Debtors had two different mechanisms for collecting attorneys' fees incurred in connection with any legal action undertaken to protect its security interest and priority.  Under the reciprocity provisions of Civil Code section 1717, if the Schermerhorns had been required to pay Debtors' legal fees under the provisions in the deed of trust, then the Schermerhorns, in turn, would be entitled to attorneys' fees as the prevailing party. Because the express language of the Deed of Trust's attorneys' fee provisions, mainly section 9, provides that any attorneys' fees expended enforcing the security agreement "shall become additional debt of Borrower secured by this Security Instrument" the Schermerhorns would have been responsible for the amount secured by the Deed of Trust if the Deed of Trust were in fact reinstated.  With that obligation falling to the Schermerhorns, then the Schermerhorns are likewise entitled to their attorneys' fees as a prevailing party.

Section 1717 was enacted to "avoid the perceived unfairness of one-sided attorney fee provisions . . . . ." (<u>Int'l Billing Services, Inc. v. Emigh</u>, 84 Cal.App.4th 1175 1182 (2000), 101 Cal. Rptr. 2d 532) and is "interpreted to further provide a reciprocal remedy for a non-signatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." <u>Reynolds Metals Co. v. Alperson</u>, 25 Cal.3d 124, 128, 158 Cal. Rptr. 1, 599 P.2d 83 (1979).

Attorneys' fees clauses are common in notes and deeds of trust, and the application of Civil Code Section 1717 to those provisions allows parties to recover reasonable or necessary costs and attorneys' fees in actions to preserve or protect the security, to foreclose the deed of trust, or otherwise to enforce its provisions.  See <u>RTC Mortgage Trust 1994-S2 v. Shlens</u>, 62 Cal.

App. 4th 304, 327 fn. 7, 72 Cal. Rptr. 2d 581 (1998); <u>see also</u> California Civil Code Sections

2924c(a)(1) and (d); <u>Hellier v. Russell</u>, 136 Cal. 143, 145, 68 P. 581 (1902).   Section 1717(a)

makes these provisions reciprocal, thus entitling a party to recover attorney fees if it is prevailing

party and if the deed of trust provides for attorneys' fee recovery to a prevailing party  <u>Nasser v.</u>

<u>Superior Court</u>, 156 Cal. App. 3d 52, 202 Cal. Rptr. 552 (1902); <u>Valley Bible Ctr. v. Western</u>

<u>Title Ins. Co.</u>, 138 Cal. App. 3d 931, 188 Cal. Rptr. 335 (1983).  <u>See also</u> <u>Chase Manhattan</u>

<u>Mortgage Corp. v. Lessel</u>, 55 Cal. App. 4th 10, 64 Cal. Rptr. 2d 113 (1997) [promissory notes

and deeds of trust typically require that the trustor pay the amount found by the court to have

been reasonably spent by the beneficiary for a foreclosure action and that amount becomes a lien

on the real property].

The fact that the Schermerhorns were not signatories to the Note or Deed of Trust is

irrelevant: as the current owners of the Property, against which Debtors sought to impress a lien

by way of its Deed of Trust and the Note, and which, had Debtors prevailed, they would have

had to  pay to keep their home, they were the real parties in interest, and stood to lose the most

by not defending their title to the Property.  The law provides that, as long as the contract is

enforceable between the signatories to it - here, Debtors and Mark Tozier - and as long as either

of them could have recovered attorneys' fees if they had been the successful party, the

Schermerhorns are entitled to an award of attorneys' fees and costs in this case.  <u>See</u>  <u>Dell Merk</u>

<u>v. Franzia</u>, 132 Cal. App. 4th 443, 454 (2005); <u>Korech v. Hornwood</u>, 58 Cal. App. 4th 1412,

1419 (1997).   Indeed, in <u>Loduca v. Polyzos</u>, 153 Cal. App. 4th 334 (1997), citing <u>Dell Merk</u>, the

court noted:

> [I]n cases involving nonsignatories to a contract with an attorney fee provision, the
> following rule may be distilled from the applicable cases: A party is entitled to recover its
> attorney fees pursuant to a contractual provision only when the party would have been liable
> for the fees of the opposing party if the opposing party had prevailed.' *Real Property*

> *Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 382 [30 Cal. Rptr. 2d 536] [involving a nonsignatory plaintiff suing a signatory defendant in an action on the contract].)" *Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 450, 451 [33 Cal. Rptr. 3d 694].

Id. at 10.  In doing so, this court analyzed the decision to award attorneys' fees to the non-signatory on a third party beneficiary theory, saying, among other things, that there was clearly a "sufficient nexus" between the parties (including the non-signatory party) to the contract, and that the attorneys' fees language was sufficiently broad and "extends to any court action on the contract without reference to who may bring it."  Id. at 16-17.

As stated above, when the Judgment was entered in January 2012, after determination that the Schermerhorns were a prevailing party, and with the issue of expungement of the Debtors' lis pendens remaining to be resolved, on which more fees would accrue, the State Court left a blank for the amount of attorneys' fees to be awarded to the Schermerhorns.  (See Exhibit "2" to the Proof of Claim.)  "The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts."  Serrano v.  Priest, 20 Cal. 3d 25, 49, fn. 23 (1977).  Indeed, the California Supreme Court has consistently held that

> [W]hen the results of the litigation on  the contract claims are not mixed – that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other – the Courts of Appeal have recognized that a trial court has no discretion to deny attorney fees to the successful litigant. Thus, when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under section 1717 as a matter of law. (See, e.g., *Melamed v. City of Long Beach* (1993) 15 Cal.App.4th 70, 84 [18 Cal.Rptr.2d 729]; *Deane Gardenhome Assn. v. Denktas*, supra, 13 Cal.App.4th 1394, 1398; *Elms v. Builders Disbursements, Inc.*, supra, 232 Cal.App.3d 671, 674-675; *Manier v. Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503, 505-509 [207 Cal.Rptr. 508].)

<u>Hsu v. Abbara</u>, 9 Cal. 4th 863, 875-76 (1995).

For these reasons, the Schermerhorns obtained a hearing date for the motion to set the

amount of their attorneys' fees.  That motion was to be heard in the State Court Action on June

18, 2012, the same date as the hearing on the status report that the State Court set in March 2012,

and the same date on which the Court was to hear the Schermerhorns' motion to expunge the lis

pendens.  However, the hearing date for those motions was vacated after counsel for the

Schermerhorns notified the State Court of the Chapter 11 filings by the Debtors when they filed

their Status Report in the State Court on May 24, 2012.   Attached to the Status Report is the

attorneys' fee motion.  A true and correct copy of the Status Report and Motion are attached

hereto as Exhibit "4."

In addition to the attorneys' fees and costs incurred by counsel of record, the

Schermerhorns retained attorney Kevin McCann and the office of McCann & Carroll when they

were first served with Plaintiffs' complaint and the lis pendens in this matter.  The

Schermerhorns paid Mr. McCann the sum of $1,964.00 prior to retaining the current firm to

appear for them and defend in this matter.  See Trial Exhibit 70-001853, which is a true and

correct copy of the Schermerhorns' checks numbered 1631 dated December 22, 2009 in the

amount of $1,000.00 and 1641 dated February 8, 2010 in the amount of $964.00 (Exhibit "5" to

the MacKinnon Declaration).

Any party, including a debtor, who objects to a creditor's claim for reasonable attorney

fees, has the burden of proving the fees are unreasonable and should be disallowed.  <u>In re</u>

<u>Woodmere Investors Ltd. Partnership</u>, 178 B.R. 346, 354-55 (Bankr. S.D.N.Y. 1995).  The

Debtors' objection completely fails on this issue.  Applicable law, including California law,

makes it clear that, in addition to the allowable costs, and as the prevailing parties in the action

which involved GMAC's note and First Deed of Trust (described above), the Schermerhorns

seek and are entitled to recover their actual attorneys' fees and costs in the amount of

$566,234.74 for 1,743.6 hours of work performed.  (This is exclusive of the costs included in the

Memorandum of Costs, Exhibit "3" to the Proofs of Claim, which are costs allowable by statute

in California and which costs are not in dispute here.)  This, the total attorneys' fees and costs

sought for both firms is $568,198.74.

### III.    <u>CONCLUSION.</u>

The Schermerhorns respectfully submit that the Debtors have failed to carry their burden

with respect to the two claims in issue.  They further submit that the two proofs of claim that

they filed substantially support those claims.

Therefore, and as a result of the Schermerhorns' being the prevailing party vis-a-vis

GMAC and ETS in the State Court Action, the Debtors' objections should be overruled, and the

Schermerhorns' claims in this consolidated estate, claim nos. 338 and 339, should each be

allowed as follows:

| Item | Amount |
|------|--------|
| Memorandum of Costs | $14,463.51 |
| Attorneys' Fees and costs (per California Civil Code §1717) | $568,198.74 |
| Total | $582,662.25 |

Dated:  November 20, 2013                Respectfully submitted,

                                         /s/ David K. Fiveson
                                         David K. Fiveson
                                         Jennifer M. Hall
                                         Butler, Fitzgerald, Fiveson & McCarthy, P.C.
                                         9 East 45th Street, 9th Floor
                                         New York, New York 10017
                                         Telephone: (212) 615-2217

                                         /s/ Kathleen A. Cashman-Kramer
                                         Kathleen A. Cashman-Kramer, Pro Hac Vice pending
                                         Michael Y. MacKinnon, Pro Hac Vice pending
                                         PYLE SIMS DUNCAN & STEVENSON APC
                                         401 "B" Street, Suite 1500
                                         San Diego, CA 92101
                                         Telephone: (619) 687-5200
                                         Facsimile: (619) 687-5210

                                         Attorneys for Creditors Jason & Jennifer Schermerhorn