# PLANNED UNIT DEVELOPMENT RIDER

LOAN NO.: 28009065

MIN: 100027108070015407
MERS Phone: 1-888-679-6377

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 8th day of JULY, 2008, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to NATIONAL BANK OF KANSAS CITY

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

33914 TUSCAN CREEK WAY, TEMECULA, CA 92592
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS

(the "Declaration"). The Property is a part of a planned unit development known as

BERRINGER CREEK

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01
V-7R (0411).01            Page 1 of 3            LENDER SUPPORT SYSTEMS INC. 7R.NEW (07/06)

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

B. **Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become

V-7R (0411).01                 Page 2 of 3                 Form 3150 1/01

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____(Seal)    _____(Seal)
JASON S. SCHERMERHORN    -Borrower    JENNIFER M. SCHERMERHORN    -Borrower

_____(Seal)    _____(Seal)
-Borrower                        -Borrower

_____(Seal)    _____(Seal)
-Borrower                        -Borrower

_____(Seal)    _____(Seal)
-Borrower                        -Borrower

V-7R (0411).01              Page 3 of 3              Form 3150 1/01

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

LOAN NO.: 28009065

MIN: 100027108070015407
MERS Phone: 1-888-679-6377

**NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.**

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this 8th day of JULY, 2008, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to
NATIONAL BANK OF KANSAS CITY

(herein "Lender") and covering the Property described in the Security Instrument and located at

33814 TUSCAN CREEK WAY, TEMECULA, CA 92592
[Property Address]

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

MULTISTATE VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER    Initials: [signature]
V-538R (0405).01            Page 1 of 3            10/03
                                       LENDER SUPPORT SYSTEMS INC. 538R.NEW (08/05)

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to     one half percent
(   .50   %) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

V-538R (0405).01          Page 2 of 3          Initials 

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

_____(Seal)     _____(Seal)
JASON S. SCHERMERHORN          -Borrower     JENNIFER M. SCHERMERHORN      -Borrower

_____(Seal)     _____(Seal)
                               -Borrower                                    -Borrower

_____(Seal)     _____(Seal)
                               -Borrower                                    -Borrower

_____(Seal)     _____(Seal)
                               -Borrower                                    -Borrower

V-538R (0405).01          Page 3 of 3

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

ADJUSTABLE RATE RIDER
(1 Year Treasury Index - Rate Caps)

LOAN NO.: 28009065

MIN: 100027108070015407
MERS Phone: 1-888-679-6377
VA LOAN NO.: 77-77-6-5096840

THIS ADJUSTABLE RATE RIDER is made this 8th day of JULY, 2008 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to NATIONAL BANK OF KANSAS CITY

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
33914 TUSCAN CREEK WAY, TEMECULA, CA 92592
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 5.750 %. The Note provides for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of OCTOBER, 2011 and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER-Single Family-Veterans Affairs           Initials: [signature]    12/04
VMP-545U (0412)                    Page 1 of 3           LENDER SUPPORT SYSTEMS INC. ARRVAXX.VA (03/05)

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 30 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will use as a new Index any index prescribed by the Department of Veterans Affairs. The Note Holder will give me notice of the new Index.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 6.750 % or less than 4.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000THS percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be more than FIVE AND 000/1000THS percentage points ( 5.000 %) higher or lower than the initial rate.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

VMP-545U (0412)    Page 2 of 3    Initials: _____ 12/04

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)  _____ (Seal)
JASON S. SCHERMERHORN    -Borrower    JENNIFER M. SCHERMERHORN    -Borrower

_____ (Seal)  _____ (Seal)
             -Borrower                           -Borrower

_____ (Seal)  _____ (Seal)
             -Borrower                           -Borrower

_____ (Seal)  _____ (Seal)
             -Borrower                           -Borrower

VMP-545U (0412)          Page 3 of 3                          12/04

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

# Exhibit "C"

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**



DOC # 2005-0984449
11/29/2005 08:00A Fee:9.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Recording Requested By:
GMAC MORTGAGE CORPORATION

When Recorded Return To:
Current Trustor:
MARK TOZIER
33914 TUSCAN CREEK WAY
TEMECULA, CA 92592

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|------|-------|-----|-------|
| / |   | / |      | /    |    |      |       |     |       |
| A | R | L |      |      |    | COPY | LONG  | REFUND | NCHG | EXAM |
|   |   |   |      |      |    |      |       |     | MR |

9

M
MR

## FULL RECONVEYANCE

GMAC MORTGAGE CORPORATION #:0307626268 "TOZIER"  Lender ID:41300/30509947  Riverside, California PIF: 11/10/2005
MERS #: 100306000000007590  VRU #: 1-888-679-6377

Prepared By: Gina Herman, GMAC MORTGAGE CORPORATION 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA 50704-0780 319-236-5400

EXECUTIVE TRUSTEE SERVICES, INC. as present Trustee for the Deed of Trust executed by MARK TOZIER as Trustor(s), Dated: 03/30/2005 Recorded: 04/04/2005 as Instrument No.: 2005-0261680 of official Records in the office of the County Recorder of Riverside, California having been requested in writing, by the holder of the obligations secured by said Deed of Trust, to reconvey the estate granted to trustee under said Deed of Trust, does hereby reconvey to the person or persons legally entitled thereto, without warranty, all the estate, title and interest acquired by Trustee under said Deed of Trust.

IN WITNESS WHEREOF, EXECUTIVE TRUSTEE SERVICES, INC. as the Trustee has caused its corporate name to be affixed by a duly authorized officer on the date shown in the acknowledgment certificate below:

On November 21st, 2005
By: EXECUTIVE TRUSTEE SERVICES, INC. as Trustee

_____
MARY ANN HILMER, ASSISTANT SECRETARY

STATE OF Iowa
COUNTY OF Black Hawk

On November 21st, 2005, before me, M. CLARK, a Notary Public in and for Black Hawk in the State of Iowa, personally appeared MARY ANN HILMER, ASSISTANT SECRETARY, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
M. CLARK
Notary Expires: 05/17/2007  #728505

```
M. CLARK
NOTARIAL SEAL - STATE OF IOWA
COMMISSION NUMBER 728505
MY COMMISSION EXPIRES MAY 17, 2007
```

(This area for notarial seal)

*GCH*GCHGMAC*11/21/2005 07:26:15 PM* GMAC01GMAC000000000000000000858766* CARIVER* 0307626268 CASTATE_TRUST_REL *GCH*GCHGMAC*

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

# Exhibit "D"

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**



```
Doc #. 2008-0099105
02/29/2008 08:00A Fee:9.00
        Page 1 of 1
 Recorded in Official Records
     County of Riverside
         Larry W. Ward
Assessor, County Clerk & Recorder
```

Recording Requested By:
GMAC MORTGAGE, LLC

When Recorded Return To:
Current Trustor:
MARK TOZIER
33914 TUSCAN CREEK WAY
TEMECULA, CA 92592

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|----|----|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | T: | | CTY | UNI | 026 |

### FULL RECONVEYANCE

GMAC MORTGAGE, LLC #:0307626268 "TOZIER" Lender ID:41300/30509947 Riverside, California PIF: 11/10/2005
MERS #: 100306000000007590 VRU #: 1-888-679-6377

Prepared By:  Kathy Newcomb, GMAC MORTGAGE, LLC 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA
50704-0780 1-800-766-4622

EXECUTIVE TRUSTEE SERVICES, LLC as present Trustee for the Deed of Trust executed by MARK TOZIER as
Trustor(s), Dated: 03/30/2005 Recorded: 04/04/2005 as Instrument No.: 2005-0261691 of official Records in the
office of the County Recorder of Riverside, California having been requested in writing, by the holder of the
obligations secured by said Deed of Trust, to reconvey the estate granted to trustee under said Deed of Trust, does
hereby reconvey to the person or persons legally entitled thereto, without warranty, all the estate, title and interest
acquired by Trustee under said Deed of Trust.
IN WITNESS WHEREOF, EXECUTIVE TRUSTEE SERVICES, LLC as the Trustee has caused its corporate name
to be affixed by a duly authorized officer on the date shown in the acknowledgment certificate below:

On February 22nd, 2008
By: EXECUTIVE TRUSTEE SERVICES, LLC as Trustee

_____
Christie Bouchard , LIMITED SIGNING OFFICER

STATE OF Iowa
COUNTY OF Black Hawk

On February 22nd, 2008 before me, H DAHLGREN, Notary Public, personally appeared Christie Bouchard, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

_____
H DAHLGREN
Notary Expires: 08/23/2010 #748557

```
H. DAHLGREN
NOTARIAL SEAL - STATE OF IOWA
COMMISSION NUMBER 748557
MY COMMISSION EXPIRES AUG. 23, 2010
```

(This area for notarial seal)

*GCH*GCHGMAC*02/22/2008 09:18:23 AM* GMAC01GMAC00000000000000858765* CARIVER* 0307626268 CASTATE_TRUST_REL **KANGMAC*

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

# Exhibit "E"

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**



WHEN RECORDED RETURN TO:

GMAC MORTGAGE, LLC
ATTN: LIEN RELEASE/Shelly Moore
3451 HAMMOND AVE
WATERLOO, IA 50702

Loan Number 307626268

## RESCISSION: A NOTICE OF VOID RECONVEYANCE

KNOW ALL MEN BY PRESENTS:

THAT, WHEREAS, the undersigned beneficiary is the owner and holder of a Note, by Mark Tozier, dated March 30, 2005, secured by a Deed of Trust which was recorded on April 04, 2005, as Instrument No. 2005-0261680 of Official Records, Riverside County, California, covering real property described in Deed of Trust:

Property: 33914 Tuscan Creek Way, Temecula, CA 92592

AND WHEREAS, due to error or inadvertence, the Trustee under said Deed of Trust recorded on November 29, 2005, a Substitution of Trustee as Instrument No. 2005-0984448 and a Full Reconveyance as Instrument No. 2005-0984449 of Official Records purporting to Release said Deed of Trust which was given as security for the payment of the Promissory note of even date therewith, executed by Mark Tozier, even though the obligation due under the Promissory Note for which said Deed of Trust was given as security HAS NOT BEEN satisfied.

THEREFORE, the undersigned Trustee and Beneficiary desires to RESCIND the Full Reconveyance above referred in the desire to confirm the existence of the debt due under the Promissory Note for which the property above described was given as security.

IN WITNESS WHEREOF, Vickie Day as Trustee, and Vickie Ingamells, as beneficiary by their execution of this instrument, and by affixing of their corporate names does hereby Rescind and Cancel the Full Reconveyance above referenced and confirm the remaining Obligation due under said Promissory Note which is secured by the Deed of Trust above referenced.

Dated: June 9, 2008

Executive Trustee Services, Inc.

By: _____
Vickie Day
Limited Signing Officer

Mortgage Electronic Registration Systems, Inc ("MERS")

By: _____
Vickie Ingamells
Assistant Secretary

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

State of Iowa        }
                     } SS
County of Black      }

On June 9, 2008 before me, C Bouchard, Notary Public, personally appeared, Vickie Day, as Trustee, personally known to me (or proved to me on the basis of satisfactory evidence) to be name(s) is are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

C Bouchard, Notary Public
My Commission expires: 11/14/2009

```
C. BOUCHARD
NOTARIAL SEAL - STATE OF IOWA
COMMISSION NUMBER 743949
MY COMMISSION EXPIRES NOV. 14, 2009
```

State of Iowa        }
                     } SS
County of Black      }

On June 9, 2008 before me, C Bouchard, Notary Public, personally appeared, Vickie Ingamells, as beneficiary, personally known to me (or proved to me on the basis of satisfactory evidence) to be name(s) is are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

C Bouchard, Notary Public
My Commission expires: 11/14/2009

```
C. BOUCHARD
NOTARIAL SEAL - STATE OF IOWA
COMMISSION NUMBER 743949
MY COMMISSION EXPIRES NOV. 14, 2009
```

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

# Exhibit "F"

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

2008-06-05 11:50                    >>    7604347400                                                    P 5/15



**CALIFORNIA ASSOCIATION OF REALTORS®**

## CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 11/07)

Date _June 4, 2008_, at _Carlsbad_, California.

1. **OFFER:**
   A. THIS IS AN OFFER FROM _Jennifer Schermerhorn, Jason Schermerhorn_ ("Buyer").
   B. THE REAL PROPERTY TO BE ACQUIRED is described as _33914 Tuscan Creek Way, Temecula CA 92592_, Assessor's Parcel No. _966 060 001_, situated in _Temecula_, County of _Riverside_, California, ("Property").
   C. THE PURCHASE PRICE offered is _Three Hundred Thirty-One Thousand Five Hundred_ Dollars $ _331,500.00_.
   D. CLOSE OF ESCROW shall occur on _____ (date) (or ☐ _30_ Days After Acceptance).

2. **FINANCE TERMS:** Obtaining the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Buyer has given a deposit in the amount of ............................................. $ _3,000.00_
   to the agent submitting the offer (or to ☐ _____ ), by personal check
   (or ☐ _____ ), made payable to _RE/MAX By the-Sea_,
   which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
   (or ☐ _____ ), with
   Escrow Holder, (or ☐ into Broker's trust account).
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ..... $ _____
   within _____ Days After Acceptance, or ☐ _____
   C. FIRST LOAN IN THE AMOUNT OF ....................................................................... $ _331,500.00_
      (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum interest of _____ % fixed rate, or _____ % initial adjustable rate with a maximum interest rate of _____ %, balance due in _____ years, amortized over _____ years. Buyer shall pay loan fees/points not to exceed _____. (These terms apply whether the designated loan is conventional, FHA or VA.)
      (2) ☐ FHA ☒ VA: (The following terms only apply to the FHA or VA loan that is checked.)
      Seller shall pay _____ % discount points. Seller shall pay other fees not allowed to be paid by Buyer.
      ☐ not to exceed $ _____. Seller shall pay the cost of lender required Repairs (including those for wood destroying pest) not otherwise provided for in this Agreement, ☐ not to exceed $ _____. (Actual loan amount may increase if mortgage insurance premiums, funding fees or closing costs are financed.)
   D. ADDITIONAL FINANCING TERMS: ☐ Seller financing, (C.A.R. Form SFA); ☐ secondary financing, ............ $ _____
   (C.A.R. Form PAA, paragraph 4A); ☐ assumed financing (C.A.R. Form PAA, paragraph 4B)
   _Seller to pay $6600 to buyer for discount points, closing costs, prepaids, and funding fee_
   E. BALANCE OF PURCHASE PRICE (not including costs of obtaining loans and other closing costs) in the amount of .. $ _(3,000.00)_
   to be deposited with Escrow Holder within sufficient time to close escrow.
   F. PURCHASE PRICE (TOTAL): ............................................................................. $ _331,500.00_
   G. LOAN APPLICATIONS: Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan specified in 2C above.
   H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within 7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   I. LOAN CONTINGENCY REMOVAL: (i) Within 17 (or ☐ _____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove the loan contingency or cancel this Agreement; OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
   J. APPRAISAL CONTINGENCY AND REMOVAL: This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within 17 (or _____ ) Days After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within 17 (or _____ ) Days After Acceptance.
   K. ☐ NO LOAN CONTINGENCY (If checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   L. ☐ ALL CASH OFFER (If checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.

3. **CLOSING AND OCCUPANCY:**
   A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   B. Seller-occupied or vacant property: Occupancy shall be delivered to Buyer at _8:00_ ☒ AM ☐ PM, ☐ on the date of Close Of Escrow;
   ☐ on _____ ; or ☐ no later than _____ Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their insurance and legal advisors.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials ( ____ ) ( ____ )
Seller's Initials ( ____ ) ( ____ )
Reviewed by _____ Date _____

**RPA-CA REVISED 11/07 (PAGE 1 OF 8)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

Agent: Steven Matsumoto    Phone: (760) 828-8151    Fax: (760) 434-7400    Prepared using WINForms® software
Broker: RE/MAX By-the-Sea 1265 Carlsbad Village Dr.#100 Carlsbad, CA 92008

**EXHIBIT 3 TO OPPOSITION-Counter-Complaint**
**COUNTER OFFER ADDENDUM TO BE INCORPORATED**

2008-06-05 11:50                >>    7604347400                                                           P 6/15

Property Address: 33914 Tuscan Creek Way
Temecula, CA  92592                                                    Date: June 4, 2008

C. **Tenant-occupied property:** (i) Property shall be vacant at least 5 (or ☐ _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller:** If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR (ii) (if checked) ☐ **Tenant to remain in possession.** The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3.);

OR (iii) (if checked) ☐ This Agreement is contingent upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. **ALLOCATION OF COSTS (If checked):** Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. **WOOD DESTROYING PEST INSPECTION:**
(1) ☐ Buyer ☐ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by _____, a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures or areas _____. The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) ☒ (If checked) The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. **OTHER INSPECTIONS AND REPORTS:**
(1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected _____
(2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
(3) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by Disclosure Source _____
(4) ☐ Buyer ☒ Seller shall pay for the following inspection or report CLUE Report _____
(5) ☒ Buyer ☐ Seller shall pay for the following inspection or report Physical Inspection _____

C. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
(1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing. If required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
(2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. _____

D. **ESCROW AND TITLE:**
(1) ☒ Buyer ☒ Seller shall pay escrow fee 50/50 each to pay their own share
Escrow Holder shall be seller's choice
(2) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 12E _____
Owner's title policy to be issued by seller's choice
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

E. **OTHER COSTS:**
(1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____
(2) ☐ Buyer ☒ Seller shall pay City transfer tax or transfer fee _____
(3) ☐ Buyer ☒ Seller shall pay HOA transfer fee _____
(4) ☐ Buyer ☒ Seller shall pay HOA document preparation fees _____
(5) ☐ Buyer ☒ Seller shall pay the cost, not to exceed $ 360.00 _____, of a one-year home warranty plan, issued by Fidelity National Home Warranty
with the following optional coverage: Comprehensive Plus _____
(6) ☐ Buyer ☐ Seller shall pay for _____
(7) ☐ Buyer ☐ Seller shall pay for _____

5. **STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
A. (1) Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordinance location disclosure (C.A.R. Form SSD).
(2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.
(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 2 OF 8)                    Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 8)                    Schermerhorn

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

2008-06-05 11:51                >>        7604347400                                                                   P 7/15

Property Address: 33914 Tuscan Creek Way, Temecula, CA 92592        Date: June 4, 2008

(4) If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, **Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by** giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

**(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.**

B. **NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

6. **CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**
   A. **SELLER HAS:** 7 (or ☐ _____) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).
   B. If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ _____) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

7. **CONDITIONS AFFECTING PROPERTY:**
   A. Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   B. **SELLER SHALL, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).**
   C. **NOTE TO BUYER:** You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.
   D. **NOTE TO SELLER:** Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.

8. **ITEMS INCLUDED AND EXCLUDED:**
   A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.
   B. **ITEMS INCLUDED IN SALE:**
      (1) All EXISTING fixtures and fittings that are attached to the Property;
      (2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and
      (3) The following items: dishwasher, disposal, microwave, range/oven _____
      (4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
      (5) All items included shall be transferred free of liens and without Seller warranty.
   C. **ITEMS EXCLUDED FROM SALE:** _____

9. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Buyer's Initials _____ ( ) ( )
Seller's Initials _____ ( ) ( )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 3 OF 8)            Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)**                Schermerhorn

# EXHIBIT 3 TO OPPOSITION - Cross-Complaint