Property Address: *33914 Tuscan Creek Way*
*Temecula, CA  92592*                                                              Date: *June 4, 2008*

10. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

11. **BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

12. **TITLE AND VESTING:**
    A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.
    B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
    C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
    D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
    E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13. **SALE OF BUYER'S PROPERTY:**
    A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.
    OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).**
    A. **SELLER HAS:** 7 (or ☐ _____ ) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and B, 6A, 7B and 12.
    B. (1) **BUYER HAS:** 17 (or ☐ _____ ) Days After Acceptance, unless otherwise agreed in writing, to:
       (i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and
       (ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.
       (2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
       (3) By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if (i) government-mandated inspections/ reports required as a condition of closing; or (ii) Common Interest Disclosures pursuant to paragraph 6B are not made within the time specified in 14A, then Buyer has 5 (or ☐ _____ ) Days After receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.
    C. **CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**
       (1) **Seller right to Cancel; Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.
       (2) **Continuation of Contingency:** Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).
       (3) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2G; (iv) if Buyer fails to provide verification as required by 2H or 2L; (v) if Seller reasonably disapproves of the verification provided by 2H or 2L; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or (vii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.
       (4) **Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ _____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**RPA-CA REVISED 11/07 (PAGE 4 OF 8)**
Reviewed by _____ Date _____
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)**
Schmerhorn

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

Property Address: 33914 Tuscan Creek Way, Temecula, CA 92592                    Date: June 4, 2008

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (I) completed all Buyer investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (II) elected to proceed with the transaction; and (III) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

E. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (I) the Property is maintained pursuant to paragraph 7A; (II) Repairs have been completed as agreed; and (III) Seller has complied with Seller's other obligations under this Agreement.

16. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.
BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)**    Buyer's Initials ___/___    Seller's Initials ___/___

17. **DISPUTE RESOLUTION:**
    A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

    B. **ARBITRATION OF DISPUTES:** (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.
    (2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (I) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.
    (3) **BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

    "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

    "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."    Buyer's Initials ___/___    Seller's Initials ___/___

Buyer's Initials ( ___ )( ___ )
Seller's Initials ( ___ )( ___ )
Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 5 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)

Schermerhorn

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

Property Address: 33914 Tuscan Creek Way, Temecula, CA 92592    Date: June 4, 2008

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (I) for periods after Close Of Escrow, by Buyer; and (II) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

23. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

25. **OTHER TERMS AND CONDITIONS,** including attached supplements:
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____ )
    C. ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
    D. ☐ Seller shall provide Buyer with a completed Seller Property Questionnaire (C.A.R. form SPQ) within the time specified in paragraph 14A
    E. _____

26. **DEFINITIONS:** As used in this Agreement:
    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. **"Agreement"** means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
    C. **"C.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
    D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
    F. **"Days"** means calendar days, unless otherwise required by Law.
    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
    J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or **as otherwise specified in paragraph 14C(4))** to remove a contingency or perform as applicable.
    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
    N. **Singular and Plural** terms each include the other, when appropriate.

Buyer's Initials (_____) (_____)
Seller's Initials (_____) (_____)
Reviewed by _____ Date _____



Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 6 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)

Schermerhorn

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

2008-06-05 11:53                    >>         7604347400                                                           P 11/15

Property Address: 33914 Tuscan Creek Way
Temecula, CA  92592                                                  Date: June 4, 2008

### 27. AGENCY:

A. **DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

B. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

C. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
Listing Agent _____ RE/MAX Palos Verdes Realty _____ (Print Firm Name) is the agent of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
Selling Agent _____ RE/MAX By-the-Sea _____ (Print Firm Name) (if not same as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

### 28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:

A. **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and 25D, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow

B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

### 29. BROKER COMPENSATION FROM BUYER:
If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

### 30. TERMS AND CONDITIONS OF OFFER:
This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**RPA-CA REVISED 11/07 (PAGE 7 OF 8)**



Buyer's Initials _____
Seller's Initials _____
Reviewed by _____ Date _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)**                Schermerhorn

## EXHIBIT 3 TO OPPOSITION - Cross-Complaint

2008-06-05 11:54                    >>    7604347400                                                        P 12/15

Property Address: 33914 Tuscan Creek Way
Temecula, CA 92592                                                          Date: June 4, 2008

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ Steve Matsumoto _____, who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked, ☐ by _____ (date), at _____ ☐ AM ☐ PM).

Date June 4, 2008
BUYER _Jennifer Schermerhorn_
Jennifer Schermerhorn
(Print name)
(Address)

Date June 4, 2008
BUYER _____
Jason Schermerhorn
(Print name)

**32. BROKER COMPENSATION FROM SELLER:**
A. Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
B. If escrow does not close, compensation is payable as specified in that separate written agreement.

**33. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
☐ (if checked) SUBJECT TO ATTACHED COUNTER OFFER, DATED _____

Date 6/10/08
SELLER _____ FIS Asset Management Solutions Ltd.
Power of Attorney
(Print name)
(Address)

Date _____
SELLER COUNTER OFFER ADDENDUM SHALL BE INCORPORATED
(Print name)

( ___/___ ) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
(Initials) agent on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 27.
C. If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) RE/MAX By-the-Sea                         DRE Lic. # 01141737
By _____ Steve Matsumoto DRE Lic. # 01722560    Date June 4, 2008
Address 1265 Carlsbad Village Dr #100    City Carlsbad    State CA    Zip 92008
Telephone (760) 434-1400    Fax (760) 434-7400    E-mail steve@sdhomewire.com

Real Estate Broker (Listing Firm) RE/MAX Palos Verdes Realty               License # _____
By Chris Murray                                     License # 01339816    Date _____
Address _____    City _____    State _____    Zip _____
Telephone _____    Fax _____    E-mail _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____),
counter offer numbers _____ and _____, and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder seller's choice                                              Escrow # _____
By _____                                                              Date _____
Address _____
Phone/Fax/E-mail //
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

(___/___) **REJECTION OF OFFER:** No counter offer is being made. This offer was reviewed and rejected by Seller on
(Seller's Initials) _____ (Date)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

RPA-CA REVISED 11/07 (PAGE 8 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)                    Schermerhorn

# EXHIBIT 3 TO OPPOSITION - Cross-Complaint

2008-06-05 11:55                >>      7604347400                                              P 15/15



CALIFORNIA ASSOCIATION OF REALTORS®

# WOOD DESTROYING PEST INSPECTION AND ALLOCATION OF COST ADDENDUM
(C.A.R. Form WPA, Revised 10/02)

This is an addendum to the ☒ California Residential Purchase Agreement or ☐ Other _____
_____ ("Agreement"), dated __June 4, 2008__,
on property known as _33914 Tuscan Creek Way, Temecula CA 92592_
_____ ("Property"),
between _____Jennifer Schermerhorn, Jason Schermerhorn_____ ("Buyer")
and _____ ("Seller").

THE FOLLOWING SHALL REPLACE THE WOOD DESTROYING PEST INSPECTION PARAGRAPH (4A in the California Residential Purchase Agreement (RPA-CA)) and shall supersede any conflicting terms in any previously-generated agreement:

**WOOD DESTROYING PESTS**

A. ☐ Buyer ☒ Seller shall pay for a Pest Control Report for wood destroying pests and organisms only ("Report"). The Report shall be prepared by _____seller's choice_____, a registered structural pest control company, who shall separate the Report into sections for evident infestation or infection (Section 1) and for conditions likely to lead to infestation or infection (Section 2). The Report shall cover the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures on the Property: _____.
The Report shall not include roof coverings. If the Property is a unit in a condominium or other common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred, and shall not include common areas. Water tests of shower pans on upper level units may not be performed unless the owners of property below the shower consent. If Buyer requests inspection of inaccessible areas, Buyer shall pay for the cost of entry, inspection and closing for those areas, unless otherwise agreed. A written Pest Control Certification shall be issued prior to Close Of Escrow, unless otherwise agreed, only if no infestation or infection is found or if required corrective work is completed.

B. (Section 1) ☐ Buyer ☒ Seller shall pay for work recommended to correct "Section 1" conditions described in the Report and the cost of inspection, entry and closing of those inaccessible areas where active infestation or infection is discovered.
(Section 2) ☒ Buyer ☐ Seller shall pay for work recommended to correct "Section 2" conditions described in the Report if requested by Buyer.

By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Addendum.

Date _June 4, 2008_                                    Date _6/10/08_
Buyer _Jennifer Schermerhorn_                          Seller _[signature]_
Buyer _Jason Schermerhorn_                             Seller _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

SURE TRAC — The System for Success™
Published by the California Association of REALTORS®

Reviewed by _____ Date _____

WPA REVISED 10/02 (PAGE 1 OF 1)
**WOOD DESTROYING PEST INSPECTION AND ALLOCATION OF COST ADDENDUM (WPA PAGE 1 OF 1)**

Agent: Steven Matsumoto     Phone: (760) 828-8151     Fax: (760) 434-7400     Prepared using WINForms® software
Broker: RE/MAX By-the-Sea 1265 Carlsbad Village Dr. #100 Carlsbad, CA 92008

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

# MORTGAGE LOAN COMMITMENT

National Bank of Kansas City
10700 Nall Avenue
Suite 300
Overland Park, KS 66211

| | | |
|---|---|---|
| TO    Jason S Schermerhorn | DATE | 06/04/2008 |
| Jennifer M Schermerhorn | PROPERTY ADDRESS | 33914 TUSCAN CREEK WAY TEMECULA, CA 92592 |
| 203 Chesterbrook Court | | |
| Stafford, VA 22554 | Loan Number | 28009065 |

It is a pleasure to notify you that your application for a first mortgage loan has been approved subject to the following matters set forth below and on page 2 hereof.

**AMOUNT, TERMS AND FEES**

| | | | |
|---|---|---|---|
| Amount of Loan | $331,500.00 / $338,627.00 | Contract Interest Rate | 5.875 % |
| Loan Origination Fee | | Annual Percentage Rate | 6.088 % |
| Loan Discount Fee | $0.00 | | |
| Broker Fee | | Commitment Expires | |

**REPAYMENT TERMS**

Fixed Payment Mortgage: To be repaid in 360 equal monthly installments of $2,003.11 including interest with the first monthly installment due approximately 30 days after date of settlement.

**EVIDENCE OF TITLE**

The following Evidence of Title is to be provided to the Lender and must indicate no liens, encumbrances, or any adverse covenants or conditions to title unless approved by Lender. The Evidence of Title must be issued from a firm or source, and in a form, acceptable to Lender.

Borrower will be charged for the cost of providing such title and the cost of recording documents, all of which will be ordered by Lender unless requested otherwise.

**ADDITIONAL REQUIRED ITEMS OR CONDITIONS**

Acceptable Appraisal Supporting Loan Value
Evidence of Hazard Insurance and Flood Insurance(if required)
No changes in employment, income, credit and asset information submitted
Satisfaction of any final secondary market/investor requirements
Satisfactory verification of employment, income, credit, and asset information submitted

**SEE PAGE 2**     The Continuation of Commitment Conditions is on page 2 and is made a part of this Commitment.

**INSTRUCTIONS**     Please sign and return Lender's copy of this Commitment, along with any required fees and items requested, to the lender at the: Above Address, within           days of date hereof, or at the option of Lender, this Commitment shall become null and void.

I (WE) hereby accept the terms and
Conditions of this Commitment.

Borrower    Jason S Schermerhorn          Date

Borrower    Jennifer M Schermerhorn       Date

Borrower                                  Date          COMMITMENT ISSUED BY:

Borrower                                  Date          Authorized Signature

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

# VA Department of Veterans Affairs

## CERTIFICATE OF ELIGIBILITY
### FOR LOAN GUARANTY BENEFITS

REFERENCE NUMBER 1254404

NAME OF VETERAN: **JASON S SCHERMERHORN**

BRANCH OF SERVICE: **Marine Corps**

SERVICE NUMBER

SOCIAL SECURITY NUMBER: **XXX-XX-9942**

DATE OF BIRTH: **05/29/1979**

ENTITLEMENT CODE: **10**

### THIS VETERAN'S BASIC ENTITLEMENT IS $36,000*
### TOTAL ENTITLEMENT CHARGED TO PREVIOUS VA LOANS IS $0*

| Prior Loans charged to entitlement | | | | |
|---|---|---|---|---|
| VA Loan Number | State | Loan Amount | Date of Loan | Entitlement Charged | Status |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

*Veteran is eligible for the benefits of Chapter 37, Title 38, U.S. Code, subject to any condition(s) cited below. Basic entitlement for veterans who have not previously used home loan benefits is $36,000. For home purchase, construction, and condominium loans that are in excess of $144,000, the entitlement amount shown is increased to an amount equal to 25% of the Freddie Mac conforming loan limit for a single family residence. The guaranty will not exceed 25 percent. Available entitlement represents the portion of a loan which may be guaranteed or insured by VA to a lender. For more information about maximum loan amounts, contact the nearest VA Regional Loan Center for further information.

Issued By: BRENT ADAMS     Date: June 04, 2008

### CONDITIONS

**Active Duty Service Member-** Valid unless discharged or released subsequent to date of this certificate. A certification of continuous active duty as of date of note is required.

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

## ADDITIONAL REQUIRED ITEMS OR CONDITIONS - (continued)

**FIRE AND EXTENDED COVERAGE INSURANCE**
At the time of settlement we will require an original insurance policy containing fire and extended coverage insurance in an amount at least equal to that of the mortgage through a company acceptable to Lender, and a receipt showing premiums paid in advance for one year. The insurance policy shall also contain a standard mortgage clause in favor of Lender.

**FmHA, FHA OR VA INSURED LOANS**
Loan Commitments issued for these types of mortgage loans are subject to all the terms and conditions of the FmHA or FHA commitments; or the VA certificate of reasonable value, as well as the rules and regulations of the Farmers Home Administration or the Department of Veterans Affairs

**FLOOD INSURANCE**
If the "Flood Insurance Mandatory" box was checked, this property has been determined to be in an area which has a special flood hazard. Federal law requires that flood insurance, available through any agent, be written in either the maximum amount available or the loan balance, whichever is the lesser. This insurance will be mandatory until this loan is paid in full. By signing and accepting this commitment you acknowledge that the property securing this loan is in an area identified as having a special flood hazard and agree to these insurance requirements.

**TAX AND INSURANCE PAYMENTS**
Monthly deposits, and initial deposits as determined by Lender, are required to cover the payment of estimated annual real estate taxes, special assessments and, if applicable, FHA or Private Mortgage Insurance Premiums. Lender may also require additional deposits for hazard or other insurance if required for this loan. Such deposits are to be placed in a separate escrow or impound account.

**SPECIAL ASSESSMENTS**
All unpaid and future special assessment installments must be paid in full prior to, or at time of settlement.

**DOCUMENTATION**
The mortgage or deed of trust, note and other pertinent loan documents will be provided by Lender and must be signed by all applicants that are to be contractually liable under this obligation. Further, the mortgage or deed of trust, must also be signed by any non-applicant spouses if their signature is required under state law to create a valid lien, pass clear title, or waive inchoate rights to property. Note: Samples of loan documents are available upon request.

**CANCELLATION**
The Lender reserves the right to terminate this commitment prior to the settlement of the loan in the event of an adverse change in your personal or financial status, or the improvements on the property are damaged by fire or other casualty.

**NON-REFUNDABLE STANDBY FEE**
This commitment will become effective upon compliance with the terms herein and the receipt of your check in the amount of the non-refundable standby fee. It is understood and agreed that if this mortgage loan is not settled in accordance with the terms and conditions of this commitment, the Lender shall retain this fee as earned charges for the origination and approval of this loan.

## ADDITIONAL CONDITIONS FOR CONSTRUCTION LOANS

**CONSTRUCTION LOANS: ONE PAYOUT AND MULTIPLE PAYOUT**
Improvements are to be built in a good and workman-like manner in strict accordance with plans and specifications furnished Lender and in compliance with applicable building codes. After completion, said improvements shall be approved by a representative of Lender and an occupancy permit issued by local municipality. Any changes, whether they be additions, deletions, or alterations, of the plans and specifications, must be approved in writing by Lender in order that this loan commitment remain in effect.

**CONSTRUCTION LOANS: MULTIPLE PAYOUT**
Evidence must be submitted that the net proceeds of our loan are sufficient to complete the construction of the building, free and clear of all claims of Mechanic's Liens for labor and material. All disbursements will be made upon the order of the borrower upon presentment of proper waivers of lien, subject to compliance inspections by the Department of Veterans Affairs, the Federal Housing Administration, or Lender, not to exceed the value of the work done, and subject to the Lender having in its possession at all times an amount of undisbursed loan proceeds at least equal to the amount required to complete the improvements.

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

# Exhibit "G"

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**