REMAX BY THE SEA
PAGE 03

06/10/2008 12:10    7604347400

File no.BOA212020

# ADDENDUM TO REAL ESTATE PURCHASE CONTRACT

This Addendum to Real Estate Purchase Contract ("Addendum") is made a part of that certain Real Estate Purchase Contract ("Contract") dated the 9th day of June, 2008, between Bank of America ("Seller") and Jennifer and Jason Schermerhorn ("Purchaser") for the purchase of property known as 33914 Tuscan Creek Way, Temecula CA 92592.

Purchase Price    $341,000.

Closing Date    7/11/08.

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

1    **Effect of Addendum.** In the event of any conflict between this addendum and the contract or escrow instructions or notice or other documents attached to this agreement, the terms of this addendum shall prevail except as otherwise provided by law.

2.    **Purchase Price.** The purchase price of ("Purchase Price") for the Property shall be paid to Seller in certified funds at the Closing.

3.    **Earnest Money.** Immediately following Seller's acceptance of the Agreement, escrow will be opened by both parties with an escrow agent designated by Seller or otherwise acceptable to Seller. The earnest money deposited shall be in the amount of $3000 .

4.    **Time of the Essence; Closing Date.** The parties agree that time is of the essence as to the closing date and to all dates specified in any addenda, riders or amendments thereto.

The closing ("Closing") shall take place on or before the date set forth above, or within five (5) days of final loan approval by Purchaser's lender, whichever is earlier, unless the Closing date is extended in a writing signed by Seller and Purchaser or extended by Seller under the terms of the Agreement. The Closing shall be held in the offices of Seller's attorney or agent, or at a place designated and approved by Seller, and convenient to all parties.

5.    **Per Diem.** In the event Seller agrees to Purchaser's request for a written extension of the Closing date, Purchaser agrees to pay to Seller $100.00 per day as a penalty through and including the Closing date specified in the written extension. If the sale does not close by the date specified in the written extension, Seller may retain the Earnest Money and the accrued per diem payment as liquidated damages pursuant to Section 22 of this Addendum.

6.    **Mortgage Contingency.** Purchaser's obligation to purchase the Property under the Agreement (check one): ( ✓ ) IS ( ) IS NOT contingent on Purchaser obtaining financing for the purchase of the Property.

In the event this contract is subject to the Purchaser obtaining a mortgage then the Purchaser shall obtain a firm written commitment on or before July 1, 2008. If said firm commitment is not obtained by said date, this Contract shall be null and void and neither party shall have any further rights or obligations or liabilities to the other by reason of this contract, except that the earnest money shall be promptly refunded, provided however that the purchaser has made a mortgage application within three (3) days of the receipt of a fully executed contract, has acted in good faith and has otherwise complied with the terms and conditions of the contract. Notwithstanding the foregoing, the seller, in writing only, at its sole and absolute discretion, which may be arbitrary, may extend the date for obtaining a firm written commitment.

Purchasers agrees that the party holding escrow monies will release said funds once provided with a declination letter by from purchaser's lender, without any further action or consent from purchaser.

7.    **Inspection.**

i.    On or before the date that falls seven (7) calendar days after the Seller Acceptance Date, Purchaser shall inspect the Property or obtain for its own use, benefit and reliance, inspections and/or reports on the condition of the Property; otherwise, Purchaser shall be deemed to have waived such inspection and any objections to the condition of the Property and to have accepted the condition of the Property for all purposes. Purchaser shall hold Seller harmless from all liability claims, demands, damages, and costs related to Purchaser's inspection.

ii.    Purchaser shall not directly or indirectly cause any inspection to be made by any government building or zoning inspector or government employee without the prior written consent of Seller, unless such inspection is required by law.

iii.    If the Property is located in a jurisdiction that requires a certificate of occupancy, smoke detector certification, septic certification or any similar certification or permit or any form of improvement or repair to the Property (collectively, "Permits and Repairs"), Purchaser acknowledges and agrees that Purchaser shall be responsible for obtaining any and all of the Permits and Repairs at Purchaser's sole cost and expense. Purchaser shall make application for all Permits and Repairs within ten (10) days of the Seller Acceptance Date.

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

06/10/2008   12:10   7604347400                                REMAX OF THE SEA

iv.   Within three (3) calendar days of receipt of any inspection report prepared by or for Purchaser, but no later than ten (10) days from the Seller Acceptance Date, whichever first occurs, Purchaser will provide written notice to Seller of any disapproved items.  Purchaser's failure to provide written notice shall be deemed as acceptance of the condition of the Property.

v.   Upon request by Seller, Purchaser shall provide complete copies of all inspection reports upon which Purchaser's disapproval of the condition of the Property is based.  Seller shall have the option, in their sole discretion, to adjust the selling price, make repairs or cancel this agreement.  In no event shall Seller be obligated to make any repairs or replacements that may be indicated in Purchaser's inspection reports.  If Seller elects not to repair the Property, Purchaser may cancel the Agreement not later than ten (10) days from the Seller Acceptance Date and the Earnest Money shall be returned to Purchaser.  If Seller elects to make any such repairs to the Property Seller shall notify Purchaser after completion of the repairs and Purchaser shall have three (3) days from the date of notice to inspect the repairs and notify Seller of any disapproved items.  Purchaser's failure to disapprove in writing such repairs shall be deemed as Purchaser's acceptance thereof.

vi.   If Seller has agreed to pay for treatment of wood infesting organisms, Seller shall treat only active infestation.  All treatments for wood infesting organisms and other repairs will be completed by a vendor approved by Seller.  Seller agrees to pay up to $0 for said treatment.

vii.   Any repairs or treatments made or caused to be made by Seller shall be completed prior to the Closing.  Under no circumstances shall Seller be required to make any repairs or treatments after the Closing date.

viii.   Purchaser acknowledges that the Closing of this transaction shall be deemed Purchaser's reaffirmation that Purchaser is satisfied with the condition of the Property for all purposes and satisfied with all repairs and treatments to the Property and waives all claims related to such condition and to the quality of the repairs or treatments to the Property.

ix.   Notwithstanding the foregoing, neither Purchaser nor its representatives shall enter upon the Property to make any repairs or treatments prior to the Closing without the prior written consent of Seller. To the extent that Purchaser or its representatives make repairs and/or treatments to the Property prior to the Closing, Purchaser hereby agrees to release and indemnify Seller from and against any and all claims related in any way to the repairs and/or treatments.

8.   **Condominium/PUD/Homeowners Association.**  If the Property is a condominium, planned unit development, homeowner's association or co-operative, unless otherwise required by law, Purchaser, at Purchaser's own expense, is responsible for obtaining and reviewing the covenants, conditions, restrictions and/or bylaws of the relevant entity within seven (7) days of the Seller Acceptance Date.  Seller agrees to use reasonable efforts to assist Purchaser in obtaining a copy said documents.  Purchaser will be deemed to have accepted the covenants, conditions, restrictions and/or bylaws if Purchaser does not notify Seller in writing, within ten (10) days of the Seller Acceptance Date, of Purchaser's objection to the same.

9.   **Condition of Property.**  Purchaser acknowledges and understands that Seller acquired the property by foreclosure, deed in lieu of foreclosure, forfeiture, tax sale, right of eminent domain or similar process, and Seller consequently has little or no direct knowledge concerning the condition of the property.  As a material part of the consideration to be received by Seller under this agreement as negotiated and agreed to by Purchaser and Seller, Purchaser acknowledges and agrees to accept the property in "as-is," "where-is" condition at the time of closing, including, without limitation, zoning, land use or building code requirements or compliance with any law, rules, ordinances or regulations of any governmental authority; any hidden defects, environmental conditions affecting the property, or the existence of mold, whether known or unknown, whether such defects or conditions were discoverable through inspection or not.

If there is an enforcement proceeding arising from allegations of such violations before an enforcement board, special master, court or similar enforcement body, and neither Purchaser nor Seller terminate the Agreement, Purchaser agrees (a) to accept the Property subject to the violations, (b) to be responsible for compliance with the applicable code or regulation and with orders issued in any code enforcement proceeding, and (c) to resolve the deficiencies as soon as possible after the Closing.  Purchaser further agrees to indemnify Seller from any and all claims or liability arising from Purchaser's breach of this section.

10.   **Disclosure.**  Purchaser acknowledges and agrees that the Property was acquired through foreclosure, deed in lieu of foreclosure, forfeiture, tax sale, eminent domain or similar process. Accordingly, to the fullest extent allowed by law, Seller shall be exempt from providing or filing any disclosure statement with respect to the Property.

11.   **Occupancy Status of Property.**  Seller, its representatives, agents and assigns shall not be responsible for evicting or relocating any tenants or occupants or personal property at the Property prior to or subsequent to the Closing unless otherwise specifically agreed to in writing by Seller.

Seller has no knowledge of security deposits and thus none will be transferred to buyer at closing. Buyer is responsible to any occupants for the return of any security deposits.

Purchaser further agrees to assume all responsibility and liability for the refund of such security deposits to the tenants pursuant to the provisions of applicable laws and regulations.  All rent, due and payable and collected from tenants for the month in which the Closing occurs, will be prorated according to the provisions of Section 13 of this Addendum.

Purchaser acknowledges and agrees that the Property may be subject to the provisions of local rent control ordinances and regulations.  Purchaser agrees that as of the Closing all eviction proceedings and other duties and responsibilities of a property owner and landlord, including but not limited to those proceedings required for compliance with such local rent control ordinances and regulations, shall be Purchaser's sole responsibility and cost

2

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

06/10/2008  12:10   7604347400

Purchaser will not use or occupy or cause or permit others to use or occupy the Property prior to Closing .

12. **Personal Property.** Purchaser agrees that any items of personal property, now or hereafter located on the Property (collectively, "Personal Property") shall not be included in the sale of the Property or the Purchase Price unless each item of Personal Property is specifically described and referenced in this Addendum. Purchaser assumes full responsibility for any Personal Property remaining on the Property at the time of Closing. Any personal property sold by Seller shall be accepted by Purchaser on an "as is, where is" basis without representation or warranty of any kind or nature, and specifically excluding any warranties of merchantability or fitness for any particular purpose.

13. **Closing Costs and Adjustments.** Purchaser and Seller agree to prorate the following expenses as of Closing: municipal water and sewer charges, utility charges, real estate taxes and assessments, common area charges, condominium or planned unit development or similar community assessments, cooperative fees, maintenance fees, and rents, if any. Payment of special assessment district bonds and assessments, and payments of homeowner's association of special assessments shall be paid current and prorated between Purchaser and Seller as of the Closing date with payments not yet due and owing to be assumed by Purchaser without credit toward the Purchase Price.

Seller shall not be responsible for any amounts due, paid or to be paid after Closing. In the event Seller has paid any taxes, special assessments or other fees and there is a refund of any such taxes, assessments or fees after the Closing, and Purchaser as current owner of the Property receives the payment, Purchaser will immediately submit any refund to Seller.

For purposes of any seller concession, the term "closing costs" shall not include any amounts escrowed for taxes or insurance by a lender.

If the Property is heated or has storage tanks for fuel oil, liquefied petroleum gases or similar fuels, Purchaser will buy the fuel in the tank at Closing at the current price as calculated by the supplier.

Recording fees, escrow fees and other customary closing costs with the exception of transfer taxes, shall be paid by either Seller and/or Purchaser in the manner customary for residential real estate transactions in the metropolitan area or city in which the Property is located.

All other costs and expenses, including any cost, expense or transfer tax imposed by any state or local entity not otherwise addressed herein, shall be paid by Purchaser

14. **Survey.** Purchaser shall pay the cost of any survey. No survey shall be provided by Seller.

15. **Insurable title**

i. Seller shall give and Purchaser shall accept such title as Seller's title insurance company shall be willing to approve and insure in accordance with its standard form of title policy approved by the governing agency for the state where the Property is located, subject only to the matters provided for in this contract.

ii. Unless otherwise indicated below, Seller shall furnish Purchaser, at its expense, a fee (owners) title policy, with coverage in the amount of the purchase price.

(Purchasers must initial here, if applicable). I/We will obtain a fee title policy and/or title exam at my/our expense. DO NOT INITIAL THIS IN A STATE WHERE THE SELLER HAS THE RIGHT TO CHOOSE THE TITLE COMPANY. IN SUCH CASE, SELLER RETAINS AND RESERVES SAID RIGHT.

iii. In the event purchaser chooses to obtain their own fee (owners) policy and/or title exam, they shall order the same within three days of purchaser executing the contract of sale, or all objections to title shall be waived.

Purchaser must notify Seller's attorney of any and all title objections at least ten days before closing, or all objections to title shall be waived. If Seller cannot cure said objections after a good faith effort, or to do so would delay the closing beyond the original or any extended closing date, Purchaser agrees to accept a fee (owners) title policy, as stated above, at Seller's expense. Regular rates must apply. Seller agrees to pay the premium for a fee (owners) title policy only if the policy is issued by Seller's selected title agent.

If a mortgage policy is required, Purchaser shall be responsible for payment of the full premium.

iv. Seller shall not be obligated to remove any exception or to bring any action or proceeding or bear any expense in order to convey title to the Property or to make the title marketable or insurable, and any attempt by Seller to remove such title exceptions shall not impose an obligation upon Seller to remove those exceptions. Purchaser acknowledges that Seller's title to the Property may be subject to court approval of a foreclosure or to a mortgagor's right of redemption.

In the event Seller is not able to (a) make the title insurable or correct any problems or (b) obtain title insurance from a title insurance company selected by Seller, all as provided herein, either party may terminate this Agreement and any Earnest Money shall be returned to Purchaser and Seller shall have no further obligation or liability to Purchaser hereunder. Section 21 below also provides that Seller may extend the date of Closing or terminate the Agreement if Seller determines, in Seller's sole and absolute discretion, that Seller is unable to convey insurable title to the Property.

16. **Real Estate Commission.** Seller shall pay a real estate commission pursuant to the listing agreement between Seller and Seller's listing broker.

3

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

17. **Delivery of Funds.** Regardless of local custom, requirements, or practice, upon delivery of the Deed by Seller to Purchaser, Purchaser shall deliver all funds due Seller from the sale in the form of certified check or wire transfer. Failure to deliver funds according to either of the aforesaid methods shall be considered breach of the Agreement.

18. **Delivery of Possession of Property.** Seller shall deliver possession of the Property to Purchaser at the Closing and funding of the sale. Pursuant to Section 11 of this Addendum, the delivery of possession shall be subject to the rights of any tenants or parties in possession. If Purchaser alters the Property or causes the Property to be altered in any way and/or occupies the Property or allows any other person to occupy the Property prior to Closing and funding without the prior written consent of Seller, such event shall constitute a breach by Purchaser under the Agreement and Seller may terminate the Agreement.

19. **Form of Deed.** The deed to be delivered at Closing shall be a deed that covenants that grantor grants only that title which grantor may have and that grantor will only defend title against persons claiming by, through, or under the grantor, but not otherwise (which deed may be known as a Special Warranty, Limited Warranty, Quit Claim or Bargain and Sale Deed).

20. **Waivers.** As a material part of the consideration to be received by Seller under the agreement as negotiated and agreed to by Purchaser and Seller, Purchaser waives the following:

i. All rights to file and maintain an action against Seller for specific performance and any right to record a lis pendens against the property or to record or file the contract, this addendum or any memorandum thereof in the official real property records, or any other remedy that would prevent Seller from conveying the property;

ii. Any and all claims arising from the adjustments or prorations or errors in calculating the same that are or may be discovered after closing;

iii. Any remedy of any kind, other than as expressly provided in this addendum, to which purchaser might otherwise be entitled at law or in equity, whether based on mutual mistake of fact or law or otherwise;

iv. Any right to trial by jury, except as waiver thereof is prohibited by law, in any litigation arising from, or connected with or related to the agreement;

v. Any claim for loss or damage, including, without limitation, indirect, special or consequential loss or damage arising from, based upon, due to or otherwise related to:

(a) environmental conditions affecting the property, including but not limited to mold, lead paint, fuel oil, allergens or other toxic substances of any kind;

(b) encroachments, easements, shortages in area or any other matter which would be disclosed or revealed by a survey or inspection of the property or search of public records; and

In the event Purchaser breaches any of the warranties described or contemplated under this Section and a court finds that Purchaser's legal action is without merit, Purchaser shall pay all reasonable attorneys' fees and costs incurred by Seller in defending such action, which amount shall be in addition to any liquidated damages held or recovered by Seller pursuant to Section 22 of this Addendum.

21. **Conditions to Seller's Performance.** Seller shall have the right, at Seller's sole discretion, to extend the Closing date or to terminate the Agreement if:

i. Seller determines that it is unable to convey insurable title to the Property through a title insurance company selected by Seller at regular rates;

ii. Seller has either sold or has agreed to sell the loan secured by the Property to another party.

iii. Any third party, whether tenant, homeowner's association or otherwise, exercises rights under a right of first refusal, option or similar right to purchase the Property;

iv. Seller has transferred and conveyed the Property to a third party; or

v. The Purchase Price is insufficient to pay the sum of the closing costs, taxes, commissions, and any liens on or obligations secured by the Property that Seller has agreed to pay hereunder.

vi. A court of law overturns a foreclosure sale, trustees sale, sheriff's sale or the like, or deed in lieu transaction, that lead to seller or its predecessor, successor or assign, taking title to the property.

vii. The Property is affected by an environmental hazard, as determined by Seller.

4

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

viii. Seller has received official notice that the Property is in violation of building codes or similar laws or regulations.

In the event Seller elects to terminate the Agreement as a result of any of the foregoing, the Earnest Money shall be returned to Purchaser and the parties shall have no further obligation under the Agreement.

**22. Remedies for Default.** In the event of Purchaser's default, material breach or misrepresentation of any fact under the terms of the Agreement, Seller, at its option, may retain the earnest money and any other funds paid by Purchaser as liquidated damages and/or invoke any other remedy expressly set forth in the Agreement (or allowed for by law) and Seller is automatically released from the obligation to sell the Property to Purchaser and neither Seller nor its representatives, agents, attorneys, successors or assigns shall be liable to Purchaser for any damages of any kind as a result of Seller's failure to sell and convey the Property. Purchaser acknowledges and agrees that by signing this addendum, seller shall have the right to retain or seek the release of the earnest money under this Section, without any further action, consent or document from purchaser.

Seller's agents, representatives, attorneys, closing offices and their successors and assigns are hereby authorized by Purchaser's signature on this contract to release the earnest money deposit or other such funds to Seller at Seller's request without any further written authorization or notification. Purchaser shall hold harmless and indemnify such agents, attorneys, closing offices, and their successors or assigns for any costs incurred whatsoever relating to the disbursement of such funds. including court costs and actual attorney fees.

Purchaser agrees that Seller shall not be liable to Purchaser for any special, consequential or punitive damages whatsoever, whether in contract, tort (including negligence and strict liability) or any other legal or equitable principle.

Purchaser acknowledges that in the event of termination of the Agreement, return of Purchaser's Earnest Money can adequately and fairly compensate Purchaser. Upon return of the Earnest Money to Purchaser, the Agreement shall be terminated, and Purchaser and Seller shall have no further liability, obligation, or responsibility to each other.

Seller shall only be in default under the Agreement if Purchaser delivers written notice to Seller detailing the default and Seller fails to cure such default within 20 days of receipt of such written notice (or such longer period of time as may be necessary, provided that Seller diligently pursues such cure). If Seller is in default hereunder or if Seller terminates the Agreement as provided under the provisions of thereof, Purchaser shall be entitled to the return of the Earnest Money as Purchaser's sole and exclusive remedy at law or in equity.

**23. Indemnification.** Purchaser agrees to indemnify and fully protect, defend and hold Seller, its officers, directors, employees, shareholders, servicers, representatives, agents, attorneys, tenants, brokers, successors and assigns harmless from and against any and all claims, costs, liens, loss, damages, attorneys' fees and expenses of every kind and nature that may be sustained by or made against Seller, its officers, directors, employees, shareholders, servicers, representatives, agents, attorneys, tenants, brokers, successors or assigns, resulting from or arising out of:

i. Inspections or repairs made by Purchaser or its agents, employees, contractors, successors or assigns;

ii. The imposition of any fine or penalty imposed by any governmental entity resulting from Purchaser's failure to timely obtain any permits, approvals, repairs or inspections, or to comply with all applicable laws, rules, ordinances and regulations;

iii. Claims for amounts due and owing by Seller for taxes, homeowner's association dues or assessment, or any other terms prorated at Closing under Section 13 of this Addendum; and

iv. Purchaser's or Purchaser's tenants, agents or representatives use or occupancy of the Property prior to Closing and funding.

**24. Risk of Loss.** Regardless of local custom or practice, Purchaser assumes all risk of loss related to damage to the Property. In the event of fire, destruction or other casualty loss to the Property after Seller's acceptance of the Agreement and prior to Closing and funding, Seller may, at its sole discretion, repair or restore the Property, or Seller may terminate the Agreement. If Seller elects to repair or restore the Property, then Seller may, at its sole discretion, limit the amount to be expended. If Seller elects to repair or restore the Property, Purchaser's sole and exclusive remedy shall be either to acquire the Property in its then current condition at the Purchase Price, with no reduction thereof by reason of such loss, or terminate the Agreement and receive a refund of any Earnest Money.

**25. Eminent Domain.** In the event that Seller's interest in the Property, or any part thereof, shall have been taken by eminent domain or shall be in the process of being taken on or before the Closing date, either party may terminate the Agreement and the Earnest Money shall be returned to Purchaser and neither party shall have any further rights or liabilities hereunder.

**26. Survival.** Delivery of the Deed to the Property to Purchaser by Seller shall be deemed to be full performance and discharge of all of Seller's obligations under the Agreement.

**27. Severability.** The invalidity, illegality or enforceability of any provision of the Agreement shall not affect the validity or enforceability of any other provision of the Agreement, all of which shall remain in full force and effect.

**28. Assignment of Agreement.** Purchaser shall not assign the Agreement without the express written consent of Seller. Seller may assign the Agreement at its sole discretion without prior notice to or consent of Purchaser.

5

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

29. **Entire Agreement.** The Agreement, including the disclosure of information on lead-based paint or lead-based paint hazard, or other disclosure forms or notices required by law, constitutes the entire agreement between Purchaser and Seller concerning the subject matter hereof and supersedes all previous communications, understandings, representations, warranties, covenants and agreements, whether written or oral and there are no oral, or other written agreements between Purchaser and Seller. No oral promises, representations (express or implied) warranties or agreements made by seller or broker or any person acting on behalf of Seller shall be deemed valid or binding upon Seller unless expressly included in the agreement. All negotiations are merged into the Agreement. Seller shall not be obligated by any other written or verbal statements made by Seller, Seller's representatives or any real estate licensee.

30. **Modification.** No provision, term or clause of the Agreement shall be revised, modified, amended or waived except by an instrument in writing signed by Purchaser and Seller.

31. **Counterparts.** This Addendum may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original, but all of which, when taken together, shall constitute one agreement. This Addendum may be delivered by facsimile.

32. **Gender.** Unless the context otherwise requires, singular nouns and pronouns, when used herein, shall be deemed to include the plural of such nouns or pronouns, and pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender.

33. **Force Majeure.** No party shall be responsible for delays or failure of performance resulting from acts of God, riots, acts of war, epidemics, power failures, acts of terrorism, earthquakes or other disasters, providing such delay or failure of performance could not have been prevented by reasonable precautions and cannot reasonably be circumvented by such party through use of alternate sources, workaround plans or other means.

34. **Notices.** Any notices required to be given under the Agreement shall be deemed to have been delivered when actually received in the case of hand or overnight delivery, or five (5) days after mailing by first class mail, postage paid, or by fax with confirmation of transmission to the numbers below. All notices to Seller will be deemed sent or delivered to Seller when sent or delivered to Seller's listing broker or agent or Seller's attorney, at the address or fax number shown below. All notices to Purchaser shall be deemed sent or delivered when sent or delivered to Purchaser or Purchaser's attorney or agent at the address or fax number shown below.

35. **Attorney Review.** Purchaser acknowledges that Purchaser has had the opportunity to consult with its legal counsel regarding the Agreement. Accordingly, the terms of the Agreement are not to be construed against any party because that party drafted the Agreement or construed in favor of any Party because that Party failed to understand the legal effect of the provisions of the Agreement.

36. **Additional Terms or Conditions.** (insert "NONE" if applicable)

Seller to pay $6600 towards closing costs, prepaids and nonallowables.

_____
_____
_____
_____
_____
_____

**PURCHASER'S OFFER**

Signature: _____    Date: 06-10-2008
Print Name (or name if a company): JASON SCHERMERHORN
Social Security # (or Tax I.D. # if a company): 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
Title (if a company): _____

Signature: Jennifer M Schermerhorn    Date: 06-10-2008
Print Name (or name if a company): Jenifer M. Schermerhorn
Social Security # (or Tax I.D. # if a company): 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
Title (if a company): _____

Attorney information (if applicable)
Address: _____
Telephone:      Facsimile:      __

**SELLER'S ACCEPTANCE**

By: _____    Date: 6/10/08
Print Name: Lori Branson
Title: Asset Manager          FIS Asset Management Solutions Ltd
Date: _____                        Power of Attorney

6

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

REAL ESTATE DISCLOSURE ADDENDUM AND RELEASE

Buyer(s) and Buyer(s) Agent acknowledge that they are aware that due to possible water damage and/or excessive moisture: mold, mildew and/or other microscopic organisms may be present within the subject property. Buyer(s) and Buyer(s) Agent are aware that exposure to certain species of mold may pose serious health risks, particularly in individuals with immune system deficiencies, allergies or respiratory problems, and young children and elderly persons. To the best of Seller's knowledge, no tests have been performed and no investigation undertaken in connection with mold, fungal spores, or any other microscopic organisms that may be present within the subject property. Buyer(s) and Buyer(s) Agent acknowledge the property is being sold and conveyed "As Is". Buyer(s) and Buyer(s) Agent further acknowledge that under the terms of the Contract of Sale, Buyer(s) have had, or will have had, prior to closing, full and timely opportunity to make a complete inspection of the subject property, including any environmental inspection or investigation of the subject property. Buyer(s) and Buyer(s) Agent agree that the purchase price of the property reflects the agreed upon value of the property "As Is", including the aforementioned disclosures.

Seller has not made and does not make any express or implied representation or warranty of any kind with respect to the environmental condition of the subject property or whether it is in compliance with any local, state, or federal environmental law, code, or standard. Buyer(s) and Buyer(s) Agent hereby agree not to pursue any claim against Seller or its Agents for any violation of any such laws, codes, standards, or for costs incurred in conducting investigations pursuant to such laws, codes, or standards. In addition, Buyer(s) and Buyer(s) Agent agree to fully and forever release, discharge, and hold harmless Seller, its agents, employees, contractors, and representatives from and against any claims, damages, losses, costs or expenses of any kind sustained or arising directly or indirectly from, or in connection with any known or unknown condition of the subject property.

| | |
|---|---|
| _Buyer_ | 6-10-2008  _Date_ |
| _Buyer_ Jennifer M. Schermerhorn | 06-10-08  _Date_ |
| _Buyer Agent_ | 6-10-08  _Date_ |

I

**EXHIBIT 3 TO OPPOSITION - Cross-Complaint**

06/10/2008  12:10    7604347400    REMAX BY THE SEA

## Bank of America

Disclosure of Information on Lead-Based Paint
and/or Lead-Based Paint Hazards
**LEAD WARNING STATEMENT**

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligent quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**SELLER'S DISCLOSURE**
(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i) ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing
(explain)_____

    (ii) ☑ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing
(b) Records and reports available to the seller    (check (i) or (ii) below):

    (i) ☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead based paint hazards in the housing (list documents below):_____ .

    (ii) ☑ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing

**PURCHASER'S ACKNOWLEDGMENT (initial)**
(c) _____ Purchaser has received copies of all information listed
(d) _____ Purchaser has received the pamphlet "Protect Your Family from Lead in Your Home"
(e) Purchaser has (check (i) or (ii) below):

    (i) ☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
    (ii) ☑ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards

**AGENT'S ACKNOWLEDGMENT (initial)**
(f) _____ Agent has informed the seller of seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance

SELLER RESERVES THE RIGHT TO CANCEL ESCROW AND AGREEMENT IF THESE TERMS HAVE NOT BEEN MET AND SATISFIED BY BUYER. BUYER FURTHER AGREES TO SIGN AND RETURN ESCROW INSTRUCTIONS WITHIN FIVE (5) DAYS OF RECEIPT OR SELLER MAY CANCEL THIS CONTRACT AND AGREEMENT.

_Jennifer M. Schermerhorn_
**Buyer's Signature**

6-10-2008
Date

Chris Murray
**Listing Broker's Signature**

06/10/2008
Date

_Xin f_
**Bank of America (Seller)**
**Fidelity National Asset Management Solutions**

6/10/08
Date

**Selling Broker's Signature**

6-10-08
Date

1

## EXHIBIT 3 TO OPPOSITION - Cross-Complaint