Order No.: 9816386

## ENDORSEMENT
Attached to Policy No. 27-042-92 3382462
Issued by
Fidelity National Title Insurance Company

The Company insures the Insured against loss or damage sustained by reason of:

1. Present violations of any restrictive covenants referred to in Schedule B which restrict the use of the land, except violations relating to environmental protection unless a notice of a violation thereof has been recorded or filed in the public records and is not excepted in Schedule B. The restrictive covenants do not contain any provisions which will cause a forfeiture or reversion of title.

2. The priority of any lien for charges and assessments at Date of Policy in favor of any association of homeowners which are provided for in any document referred to in Schedule B over the lien of any insured mortgage identified in Schedule A.

3. The enforced removal of any existing structure on the land (other than a boundary wall or fence) because it encroaches onto adjoining land or onto any easements.

4. The failure of title by reason of a right of first refusal to purchase the land which was exercised or could have been exercised at Date of Policy.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: April 4, 2005

**Fidelity National Title**
INSURANCE COMPANY

_____
Countersigned

CLTA Form 115.2 (Rev. 3-27-92)
Planned Unit Development

**EXHIBIT 7 - Tozier Promissory Note**

40-570



**EXHIBIT 7 - Tozier Promissory Note**



Loan Policy of Title Insurance

## Fidelity National Title Insurance Company
A Stock Company

**Policy Number**
27-042-92- 3382462

## LOAN POLICY OF TITLE INSURANCE

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. Any assessments for street improvements under construction or completed at Date of Policy, which now have gained or hereafter may gain priority over the lien of the insured mortgage;
9. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.

*Fidelity National Title Insurance Company*

By: *[signature]* President

ATTEST *[signature]* Secretary

Countersigned _____

ALS 0030509947
Authorized Signature

Form 27-042-92 (Reprinted 12/96)   **EXHIBIT 7 - Tozier Promissory Note**   ALTA Loan Policy (10-17-92)

40-572

CONDITIONS AND STIPULATIONS - ( Continued and Concluded From Reverse Side )

## 10. LIABILITY NONCUMULATIVE

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

## 11. PAYMENT OF LOSS

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

## 12. SUBROGATION UPON PAYMENT OR SETTLEMENT

**(a) The Company's Right of Subrogation.**

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

**(b) The Insured's Rights and Limitations.**

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

**(c) The Company's Rights Against Non-insured Obligors.**

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

## 13. ARBITRATION

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

## 15. SEVERABILITY

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

## 16. NOTICES, WHERE SENT

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at:

Fidelity National Title Insurance Company
National Claims Administration:
17911 Von Karman Avenue, Suite 300
Irvine, CA 92614-6253



Fidelity National Title Insurance Company
17911 Von Karman Avenue, Suite 300
Irvine, CA 92614-6253

TT-37

**EXHIBIT 7 - Tozier Promissory Note**

MIN: 100306000000007582                                   Loan Number: 0503561

# ADJUSTABLE RATE NOTE
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MARCH 30, 2005                     TEMECULA                    CALIFORNIA
[Date]                              [City]                      [State]

33914 TUSCAN CREEK WAY, TEMECULA, CALIFORNIA 92592
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $429,856.00         (this amount is called "Principal"), plus interest, to the order of Lender. Lender is CALIFORNIA EMPIRE FINANCIAL GROUP, INC, A CALIFORNIA CORPORATION
   I will make all payments under this Note in the form of cash, check or money order.
   I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     4.500   %. The interest rate I will pay may change in accordance with Section 4 of this Note.
   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**
   (A) Time and Place of Payments
   I will pay principal and interest by making a payment every month.
   I will make my monthly payments on the   1st   day of each month beginning on MAY 1  , 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 1, 2035          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at 10681 FOOTHILL BLVD., #200, RANCHO CUCAMONGA, CALIFORNIA 91730
                                                            or at a different place if required by the Note Holder.
   (B) Amount of My Initial Monthly Payments
   Each of my initial monthly payments will be in the amount of U.S. $ 2,178.02         . This amount may change.           ** See attached Interest Only Note Addendum.
   (C) Monthly Payment Changes
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                                              Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single-Family--                            DocMagic eForms  800-649-1362
Fannie Mae MODIFIED INSTRUMENT                                                          www.docmagic.com

EXHIBIT 7 - Tozier Promissory Note

40-574

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of OCTOBER, 2005, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 5.500 % or less than 3.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 10.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)–Single Family–
Fannie Mae MODIFIED INSTRUMENT
Form 3520 1/01
DocMagic eForms 800-649-1362
www.docmagic.com

EXHIBIT 7 - Tozier Promissory Note
Page 2 of 15

40-575

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

    (A) Late Charges for Overdue Payments

    If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    (B) Default

    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    (C) Notice of Default

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    (D) No Waiver By Note Holder

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    (E) Payment of Note Holder's Costs and Expenses

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX   Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)–Single Family–   DocMagic eForms 800-649-1362
Fannie Mae MODIFIED INSTRUMENT   www.docmagic.com

EXHIBIT 7 - Tozier Promissory Note

40-576

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX    Form 3520 1/01
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family    DocMagic eForms 800-649-1362
Fannie Mae MODIFIED INSTRUMENT    Page 4 of 5    www.docmagic.com

EXHIBIT 7A - Tozier Promissory Note

40-577

Exhibit 7A    Pg 9 of 18

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MARK TOZIER                    -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

[Sign Original Only]



MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                    Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family       DocMagic eForms 800-649-1362
Fannie Mae MODIFIED INSTRUMENT                                   www.docmagic.com

EXHIBIT 7 - Tozier Promissory Note

40-578

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

Loan Number: 0503561

Property Address: 33914 TUSCAN CREEK WAY, TEMECULA, CALIFORNIA 92592

THIS ADDENDUM is made this 30th day of MARCH 2005, and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to CALIFORNIA EMPIRE FINANCIAL GROUP, INC, A CALIFORNIA CORPORATION (the Lender).

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

3. **PAYMENTS**
   (A) Time and Place of Payments
   I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.
   I will make my monthly payments on the first day of each month beginning on MAY 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on APRIL 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my payments at 10681 FOOTHILL BLVD., #200, RANCHO CUCAMONGA, CALIFORNIA 91730
   , or at a different place if required by the Note Holder.
   (B) Amount of My Initial Monthly Payments
   Each of my initial monthly payments will be in the amount of U.S. $ 1,611.96. This payment amount is based on the original principal balance of the Note. This payment amount may change.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage point(s) ( 2.250 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.
   During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the

INTEREST-ONLY ADDENDUM EXHIBIT 7 - Tozier Promissory Note    DocMagic 800-649-1362
FORM 603E 03/03/03                          Page 1 of 2                       www.docmagic.com

40-579

Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest during the Interest-Only Period, 5.000 % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

_____Mark Tozier_____  _____3/31/05_____   _____  _____
Borrower                          Date               Borrower                          Date
MARK TOZIER

_____  _____   _____  _____
Borrower                          Date               Borrower                          Date

_____  _____   _____  _____
Borrower                          Date               Borrower                          Date

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE PROMISSORY NOTE        800-649-1362
FORM 603E 03/03/03            **EXHIBIT 7 - Tozier Promissory Note**        www.docmagic.com
                              Page 2 of 2          CERTIFIED COPY

40-580

Mar-31-05   03:30pm   From-Fidelity Na    l Title                    7144790991              T-084   P.004/028   F-143

RECORDING REQUESTED BY:
delity National Title Company - Builder
Services
Escrow No. 7528-TM
Title Order No. 9816386

When Recorded Mail Document
and Tax Statement To:
Mr. Steven Tozier
33914 Tuscan Creek Way
Temecula, CA 92592

APN:                                        GRANT DEED                       SPACE ABOVE THIS LINE FOR RECORDER'S USE

The undersigned grantor(s) declare(s)
Documentary transfer tax is $
  [ X ] computed on full value of property conveyed, or
  [   ] computed on full value less value of liens or encumbrances remaining at time of sale,
  [   ] Unincorporated Area    City of Temecula

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,   Beazer Homes Holdings Corp.,
a Delaware Corporation

hereby GRANT(S) to   Mark Tozier, a Married Man as his Sole and Separate Property

the following described real property in the City of Temecula
County of Riverside, State of California:
LOT 1 OF TRACT 30448. FOR A MORE COMPLETE LEGAL DESCRIPTION SEE EXHIBIT "A" ATTACHED HERETO
AND MADE A PART HEREOF

DATED: February 9, 2005

This is to certify that this is a true and correct copy of the original hereof
By _____
Fidelity National Title

STATE OF CALIFORNIA
COUNTY OF Orange
ON February 25, 2005 before me,
_____ personally appeared
Andrea Kanel and Marilyn Andrea

personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

Witness my hand and official seal.
Signature _____

Beazer Homes Holdings Corp., a Delaware corporation

By: _____
Andrea Kanel
Authorized Agent
Southern California Division

By: _____
Marilyn Andrea
Vice President Finance
Orange Division

C. GONZALES
COMM. # 1355186
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. MAY 11, 2006

MAIL TAX STATEMENTS AS DIRECTED ABOVE



**EXHIBIT 7 - Tozier Promissory Note**

40-581

Mar-31-05    03:30pm    From-Fidelity National Title                7144790991              T-084   P.005/029   F-143

THIS DEED IS ALSO MADE AND ACCEPTED UPON AND SUBJECT TO THE TERMS AND PROVISIONS (INCLUDING THE COVENANT TO ARBITRATE UNRESOLVED CONSTRUCTION DEFECT CLAIMS) SET FORTH IN THAT CERTAIN NOTICE OF ELECTION AND BINDING COVENANTS RE: CONSTRUCTION DEFECT DISPUTES (the "Notice of Election") THAT HAS BEEN RECORDED OR IS TO BE RECORDED PRIOR TO AND/OR CONCURRENTLY HEREWITH. GRANTEE DOES ALSO HEREBY CONFIRM AND AGREE THAT SAID Notice of Election IS AND SHALL BE BINDING UPON AND SHALL INURE TO THE BENEFIT OF GRANTOR AND GRANTEE, AND THE SUCCESSORS AND ASSIGNS OF EACH OF THEM, AND THE SAME SHALL RUN WITH THE LAND THAT COMPRISES THE PROPERTY HEREIN CONVEYED.

"Grantee"      _____
               Mark Tozier

This is to certify that this is a true and correct copy of the original hereof
By _____
Fidelity National Title - Escrow

40-582

**EXHIBIT 7 - Tozier Promissory Note**

This is to certify that this
is a true and correct copy of
the original hereof

By [signature]
Fidelity National
Title - Escrow

C:\Documents and Settings\TAcder\Local Settings\Temporary Internet Files\OLK42\30448 gd (new) (2).doc

**EXHIBIT 7 - Tozier Promissory Note**

THIS DEED IS ALSO MADE AND ACCEPTED UPON AND SUBJECT TO THE TERMS AND PROVISIONS (INCLUDING THE COVENANT TO ARBITRATE UNRESOLVED CONSTRUCTION DEFECT CLAIMS) SET FORTH IN THAT CERTAIN NOTICE OF ELECTION AND BINDING COVENANTS RE: CONSTRUCTION DEFECT DISPUTES (the "Notice of Election") THAT HAS BEEN RECORDED OR IS TO BE RECORDED PRIOR TO AND/OR CONCURRENTLY HEREWITH. GRANTEE DOES ALSO HEREBY CONFIRM AND AGREE THAT SAID Notice of Election IS AND SHALL BE BINDING UPON AND SHALL INURE TO THE BENEFIT OF GRANTOR AND GRANTEE, AND THE SUCCESSORS AND ASSIGNS OF EACH OF THEM, AND THE SAME SHALL RUN WITH THE LAND THAT COMPRISES THE PROPERTY HEREIN CONVEYED.

"Grantee"   _____
            Mark Tozier

**EXHIBIT 7 - Tozier Promissory Note**

40-584

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF Riverside        )

On March 31, 2005 before me, DORECCA N. SILVEYRA, personally appeared MARK TOZIER, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that such he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Dorecca N Silveyra*
Notary Public in and for said State

[SEAL: DORECCA N. SILVEYRA
Commission # 1397746
Notary Public - California
Riverside County
My Comm. Expires Feb 4, 2007]

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF _____  )

On _____, before me, _____, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that such he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public in and for said State

[STAMP: This is to certify that this is a true and correct copy of the original hereof
By _____
Fidelity National
Title - Escrow]

40-585

**EXHIBIT 7 - Tozier Promissory Note**

40-585

Mar-31-05    03:30pm    From-Fidelity N/ nal Title              7144790991              T-084   P.007/029   F-143

## Exhibit A

Description of the Property

LOT 01 OF TRACT NO. 30448, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 351 AT PAGES 58 TO 64, INCLUSIVE, OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

TOGETHER WITH ANY AND ALL EASEMENTS, RIGHTS, BENEFITS AND INTERESTS APPURTENANT TO SAID LOT AS CREATED AND/OR ESTABLISHED IN THE CC&RS (DEFINED BELOW).

EXCEPTING THEREFROM AND RESERVING TO GRANTOR ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES LYING BELOW A DEPTH OF 500 FEET BUT WITHOUT THE RIGHT OF SURFACE ENTRY.

SUBJECT TO:

1. General and special real property taxes for the current fiscal year and assessments and supplemental assessments, if any;

2. All applicable easements, dedications and/or offers of dedication in favor of third parties more particularly described and depicted on said Map of said Tract No. 30448;

3. The covenants, conditions, restrictions and easements set forth in the following instruments (collectively, the "CC&Rs"):

    (a) That certain Declaration of Conditions, Covenants and Restrictions and Reservation of Easements for Berringer Creek (Tract 30448) recorded on March 3, 2004 as Instrument No. 2004-0149657, in the Official Records of said County;

    (b) That certain First Amendment to Declaration of Conditions, Covenants and Restrictions and Reservation of Easements for Berringer Creek (Tract 30448) recorded on March 24, 2004, as Instrument No. 2004-0205091, in the Official Records of said County;

    (c) That certain Second Amendment to Declaration of Conditions, Covenants and Restrictions and Reservation of Easements for Berringer Creek (Tract 30448) recorded on April 30, 2004, as Instrument No. 2004-0321948, in the Official Records of said County; and

    (d) Such other and further amendments, supplements, annexations, de-annexations, re-recordings and/or restatements thereof that may now or hereafter be made and recorded.

[Stamp: This is to certify that this is a true and correct copy of the original hereof.
By [signature]
Fidelity National]

**EXHIBIT 7 - Tozier Promissory Note**

40-586

Mar-31-05   03:30pm   From-Fidelity National Title            7144790991            T-084   P.008/029   F-143

4. That certain Notice of Election and Binding Covenants re: Construction Defect Disputes recorded on March 24, 2004 as Instrument No. 2004-0205092, in the Official Records of said County.

5. All other covenants, conditions, restrictions, reservations, rights, rights of way and easements of record, if any, as well as all such matters that are apparent or ascertainable by inspecting the Property.

This is to certify that this is a true and correct copy of the original hereof

By _____
Fidelity National
Title - Escrow

40-587

**EXHIBIT 7 - Tozier Promissory Note**

40-587