# **Exhibit D**

**WELLS FARGO**

Paul S. Debel
Senior Vice President

MAC A0109-030
333 Market Street, 3rd Floor
San Francisco, CA 94105
415 371-3900
415 371-2057 Fax
debels@wellsfargo.com

December 21, 2012

VIA CERTIFIED MAIL RRR

Attn: Mark P. Fleming and Brooke J. Roebuck
1100 Virginia Drive
Fort Washington, PA 19034

Re: Commercial Deposit Agreement for Large Corporate Customers executed on January 3, 2012 by Ally Financial Inc., Ally Servicing LLC, Motors Insurance Corp., Residential Capital, LLC, Residential Funding Co., LLC, Passive Asset Transactions LLC, RFC Asset Holding II, LLC, Residential Mortgage Real Estate Holdings, LLC, Residential Funding Real Estate Holdings, Homecoming Financial Real Estate Holding, GMAC Mortgage, LLC, DiTech, LLC, as amended effective April 25, 2012

You are a signatory to a Commercial Deposit Agreement for Large Corporate Customers ("Ally/ResCap CDA"), executed on January 3, 2012 by Ally Financial Inc., Ally Servicing LLC, Motors Insurance Corp., Residential Capital, LLC, Residential Funding Co., LLC, Passive Asset Transactions LLC, RFC Asset Holding II, LLC, Residential Mortgage Real Estate Holdings, LLC, Residential Funding Real Estate Holdings, Homecoming Financial Real Estate Holding, GMAC Mortgage, LLC, DiTech, LLC ("the Ally/ResCap Entities"), as amended effective April 25, 2012.

Section 28(a) and (b) of the Ally/ResCap CDA provide as follows:

a. GUARANTY; DEFINITIONS. In consideration of WFB's continued provision of treasury management services to the Ally/ResCap Entities under this agreement, notwithstanding the right of WFB to cease the provision of such services, and for other valuable consideration, ALLY FINANCIAL, INC. ("Guarantor"), jointly and severally unconditionally guarantee and promise to pay to WFB, or order, on demand in lawful money of the United States of America

and in immediately available funds, any and all Indebtedness of any Subsidiary to WFB arising out of or relating in any way to any deposit account maintained by Subsidiary with WFB, or any treasury management service offered by WFB which is purchased or otherwise utilized by Subsidiary, including, without limitation, any overdraft occurring on any such deposit account (whether created by action of Subsidiary, or by chargeback, fee debit, or other action of WFB), together with any and all extensions, renewals and/or modifications of such Indebtedness (which Indebtedness, in connection with any such deposit account or treasury management service, and all such extensions, renewals and/or modifications, is hereinafter collectively referred to as the "Deposit Service Indebtedness"). The term "Indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Subsidiary, or any of them, heretofore, now or hereafter made, incurred or created, whether voluntary or involuntary and however arising, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether Subsidiary may be liable individually or jointly with others, or whether recovery upon such Indebtedness may be or hereafter becomes unenforceable. This Guaranty is a guaranty of payment and not collection. Guarantors acknowledge that, absent this Guaranty, WFB would not continue to provide such services to Subsidiary or Guarantor.

b.    LIABILITY; SUCCESSIVE TRANSACTIONS; REVOCATION; OBLIGATION UNDER OTHER GUARANTIES. This is a continuing guaranty and all rights, powers and remedies hereunder shall apply to all past, present and future Deposit Service Indebtedness of Subsidiary to WFB, including that arising under successive transactions which shall either continue the Deposit Service Indebtedness, increase or decrease it, or from time to time create new Deposit Service Indebtedness after all or any prior Deposit Service Indebtedness has been satisfied, and notwithstanding the incapacity, dissolution, liquidation or bankruptcy of Subsidiary or Guarantor. The obligations of Guarantor hereunder shall be in addition to any obligations of Guarantor under any other guaranties of any liabilities or obligations of Subsidiary or any other persons heretofore or hereafter given to WFB unless said other guaranties are expressly modified or revoked in writing; and this Guaranty shall not, unless expressly herein provided, affect or invalidate any such other guaranties.

Pursuant to this Guaranty, we made demand upon you to honor your joint and several unconditional guarantee to pay to WFB the Indebtedness of various Subsidiaries to WFB arising out of and relating to the deposit accounts maintained by Subsidiaries with WFB, and the treasury management services offered by WFB which are or were utilized by such Subsidiaries.

Specifically, we submitted to AFI invoices for legal fees we incurred in connection with deposit accounts and treasury services provided to the Ally/ResCap Subsidiaries, which fees constitute Indebtedness of such Subsidiaries. These invoices were submitted to you by letters

Page 3

dated May 4, 2012 and November 29, 2012, along with a demand that AFI pay such amounts. You have failed to timely provide us payment of such invoices; accordingly, we are exercising our right under the Guaranty as set forth in Section 28 of the Ally/ResCap CDA and as set forth in Section 25 of the Ally/ResCap CDA to debit such amounts from the deposit accounts of AFI.

The Guaranty provides, at Section 28(f) as follows:

WFB'S RIGHTS WITH RESPECT TO GUARANTOR'S PROPERTY IN WFB'S POSSESSION. In addition to all liens upon and rights of setoff against the monies, securities or other property of Guarantor given to WFB by law, WFB shall have a lien upon and a right of setoff against all monies, securities and other property of Guarantor now or hereafter in the possession of or on deposit with WFB, whether held in a general or special account or deposit or for safekeeping or otherwise, and every such lien and right of setoff may be exercised without demand upon or notice to Guarantor. No lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of WFB, or by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien is specifically waived or released by WFB in writing.

Likewise, Section 25 entitled "Offset and Cash Management Agreements" provides in part as follows:

"We may debit and offset your accounts for any obligation of any direct or indirect subsidiary of yours that is also our customer for any obligation of such subsidiary company to us under this agreement."

Also, Section 25 entitled "Setoff" provides in part as follows:

"Your obligations and our right to set off expressly include any obligations owed to us for services provided pursuant to this agreement, whether provided to you or any direct or indirect subsidiary of yours; you further agree that we have the right to deduct setoff amounts that any of your subsidiaries owe us from any accounts that you hold with us, and you also grant us a consensual security interest in your accounts and to the funds held in them as collateral to secure your present and future obligations to us, and your subsidiaries' present and future obligations to us under this agreement. The direct and indirect subsidiaries of Ally Financial Inc. include but are not limited to Ally Servicing LLC, Motors Insurance Corp., Residential Capital, LLC, Residential Funding Co., LLC, Passive Asset Transactions LLC, RFC Asset Holding II, LLC, Residential Mortgage Real Estate Holdings, LLC, Residential Funding Real Estate Holdings, Homecoming Financial Real Estate Holding, GMAC Mortgage, LLC, Ditech, LLC, Residential Consumer Services, LLC ("the Ally/ResCap Entities" or "Subsidiaries").

Page 4

Very truly yours,

*[signature]*

Paul Steve Dobel, Sr. Vice President
Wells Fargo Bank, N.A.


Cc:   Lynn Curtis
      1100 Virginia Drive
      Fort Washington, PA 19034