REED SMITH LLP
Eric A. Schaffer
David M. Schlecker
Sarah K. Kam
599 Lexington Avenue
New York, New York 10022
Telephone: 212-521-5400
Facsimile: 212-521-5450

*Counsel for Wells Fargo Bank, N.A., in its capacities as*
*First Priority Collateral Agent, Third Priority Collateral*
*Agent, and Collateral Control Agent*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) Case No. 12-12020 (MG) |
| | ) Chapter 11 |
| Debtors. | ) Jointly Administered |
| | ) |
| ------------------------------------------- | ) |
| | ) |
| RESIDENTIAL CAPITAL, LLC; <u>et al</u>., | ) |
| | ) Adv. Pro. No. 13-01343 (MG) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UMB BANK, N.A., IN ITS CAPACITY AS | ) |
| INDENTURE TRUSTEE FOR THE 9.625% | ) |
| JUNIOR SECURED GUARANTEED | ) |
| NOTES, <u>et al</u>., | ) |
| | ) |
| Defendants. | ) |
| ------------------------------------------- | ) |

```
-------------------------------------------------------------------------------------
                                                     )
OFFICIAL COMMITTEE OF UNSECURED                      )
CREDITORS, on behalf of the estate of the            )    Adv. Pro. No. 13-01277 (MG)
Debtors,                                             )
                                                     )
                             Plaintiffs,             )
                                                     )
              v.                                     )
                                                     )
UMB BANK, N.A., AS SUCCESSOR                         )
INDENTURE TRUSTEE UNDER THAT                         )
CERTAIN INDENTURE, dated as of June 6,               )
2008, et al.,                                        )
                                                     )
                             Defendants.             )
                                                     )
------------------------------------------------------------------------------------
```

### DIRECT TESTIMONY OF MICHAEL PINZON

I, Michael Pinzon, under penalty of perjury, testify as follows:

1.      I am a Vice President at Wells Fargo Bank, N.A. ("Wells Fargo").  I submit this witness statement as my direct testimony on behalf of defendant Wells Fargo Bank, N.A., in its capacities as first priority collateral agent, third priority collateral agent, and collateral control agent ("Collateral Agent").

**Background and Experience**

2.      I have served as a Vice President in the Corporate Trust division of Wells Fargo for eight years.  In or around August 2009, I became the primary person responsible for the actions taken by the Wells Fargo business unit Corporate Municipal Escrow Solutions ("CMES"), a subdivision of the Corporate Trust division, with regard to the transactions that are the subject of the above-captioned action.

3.      My responsibilities as a Vice President in CMES include reviewing documents and "on boarding" of transactions that come into CMES.  I also work with salespeople to review new transactions, oversee ongoing administration of transactions and I generally am responsible

for relationships with various parties that are Wells Fargo clients.  At all relevant times I remained the primary person responsible for the CMES subdivision's actions with respect to the transactions at issue in this case.

4.      At all relevant times it was my practice to provide attorneys at Seward & Kissel ("S&K") with documents given to the Collateral Agent for review prior to my signature, including requests for lien releases.

5.      The Collateral Agent undertook a strictly ministerial role in connection with the transactions at issue, and its duties and obligations were defined solely by the relevant agreements.  As relevant to this case, the agreements provided, among other things, that:  the Collateral Agent holds certain liens and security interests; from time to time, the Collateral Agent will be directed to release certain liens and security interests; and such liens and security interests must be released if the Collateral Agent is presented with an Officer's Certificate and Opinion of Counsel (together, the "Certificates") that conform to sample documents annexed as exhibits to the underlying agreements.

6.      In accordance with the governing documents, the Collateral Agent relied upon the representations set forth in the Certificates.

7.      The Collateral Agent has no discretion to act when presented with conforming Certificates; indeed, the Collateral Agent is contractually bound to release the requisite liens and security interests under such circumstances.

8.      As described herein, I believe there is a real and credible threat that claims may be asserted against the Collateral Agent in connection with the Collateral Agent's wholly proper release of liens and security interests securing the certain notes.

**The AFI Revolver and Related Security Agreement**

9.      On or about June 4, 2008, certain of the Debtors entered into a Loan Agreement (the "Original Loan Agreement") with Ally Financial, Inc. (f/k/a GMAC, LLC) ("AFI"), as agent and lender.  In accordance with the Original Loan Agreement, certain Debtors, AFI, as agent and lender, and Wells Fargo, in its capacity as first priority collateral agent, entered into a First Priority Pledge and Security Agreement and Irrevocable Proxy (as amended, the "Original Revolver Security Agreement").

10.      On or about December 30, 2009, (i) the Original Loan Agreement was amended and restated in its entirety by the Amended and Restated Loan Agreement (the "AFI Revolver"), and (ii) the Original Revolver Security Agreement was amended and restated in its entirety by the Amended and Restated First Priority Pledge and Security Agreement and Irrevocable Proxy (the "Revolver Security Agreement").  The Revolver Security Agreement granted the Collateral Agent liens on and security interests in certain collateral (the "Collateral") to secure the Debtors' obligations under the AFI Revolver.  *See* Revolver Security Agreement, §§ 2-5.

**The Junior Secured Notes**

11.      On or about June 6, 2008, Residential Capital, LLC ("ResCap"), as issuer, certain of the Debtors, as guarantors, and U.S. Bank, National Association (the "Indenture Trustee")[1] entered into a certain Indenture, dated as of June 6, 2008 (the "Junior Secured Notes Indenture"). In accordance with the Junior Secured Notes Indenture, ResCap issued approximately $4 billion of 9.625% Junior Secured Guaranteed Notes due 2015 (the "Junior Secured Notes," and the holders of the Junior Secured Notes, the "Junior Secured Noteholders").

12.      Pursuant to Section 8.01 of the Junior Secured Notes Indenture, on or about June 6, 2008, the certain Debtors, the Indenture Trustee, and the Collateral Agent entered into a Third

---

[1]      UMB Bank, N.A. is the successor Indenture Trustee under the Junior Secured Notes Indenture.

Priority Pledge and Security Agreement and Irrevocable Proxy (the "Original Notes Security Agreement"). On or about December 9, 2009, the Original Notes Security Agreement was amended and restated in its entirety by the Amended and Restated Third Priority Pledge and Security Agreement and Irrevocable Proxy (the "Notes Security Agreement").

13. The Notes Security Agreement granted the Collateral Agent liens on and security interests in the Collateral to secure the payment of the Debtors' obligations under the Junior Secured Notes Indenture and the Junior Secured Notes. *See* Notes Security Agreement, §§ 2-5.

**The Intercreditor Agreement**

14. On or about June 6, 2008, the Indenture Trustee, the Collateral Agent, AFI, as lender agent, and certain Debtors entered into an intercreditor agreement (as amended, the "Intercreditor Agreement").

15. Section 2.1(b) of the Intercreditor Agreement provides that the liens and security interests granted under the Revolver Security Agreement are first priority liens and security interests senior to the liens and security interests granted under the Notes Security Agreement.[2]

**Releases of Collateral under the AFI Revolver and the Junior Secured Notes Indenture**

16. From time to time, in accordance with the terms prescribed by the Revolver Security Agreement, AFI Revolver, and the Intercreditor Agreement, the Collateral Agent was directed to execute releases of liens and security interests granted under the Revolver Security Agreement.

17. More specifically, the Revolver Security Agreement provides, in relevant part, "Collateral shall from time to time be released from the security interest created by this

---

[2]   At the time the parties entered into the Intercreditor Agreement, certain other obligations of the Debtors were secured by second priority liens and security interests in the Collateral (the "Original Second Lien Obligations").

Agreement pursuant to and in accordance with the provisions of the Loan Agreement." Revolver

Security Agreement, § 9.

18.     I was the person at Wells Fargo with primary responsibility for the release of liens

in Wells Fargo's capacity as the Collateral Agent.

19.     The AFI Revolver authorizes the Collateral Agent to release certain Collateral.

AFI Revolver, § 12.11.  In executing such releases of liens and security interests, the Collateral

Agent is entitled to rely conclusively on a Collateral Release Certificate directing the release of

the Collateral. *See* AFI Revolver, § 12.11.

20.     The Collateral Agent received Collateral Release Certificates and directions in

accordance with the AFI Revolver and Revolver Security Agreement.

21.     The Intercreditor Agreement provides that the Collateral Agent is entitled to rely

conclusively on documents believed to be genuine, including a Collateral Release Certificate

delivered by the Relevant Directing Party.[3]   Intercreditor Agreement, § 5.6(l).  From time to

time, in accordance with the terms prescribed by the Intercreditor Agreement, the Junior Secured

Notes Indenture, and the Notes Security Agreement, the Collateral Agent was directed to execute

releases of liens and security interests granted under the Notes Security Agreement. *See* Security

Agreement, § 10.

22.     The relevant agreements provide that the Collateral Agent shall be indemnified by

the Relevant Directing Party from any and all liability in connection with its actions.

23.     The Intercreditor Agreement further provides that, if liens under the Revolver

Security Agreement are released, the associated liens under the Notes Security Agreement

automatically are released.  Intercreditor Agreement, § 5.1.

---

[3]     "Relevant Directing Party" is defined as "the following Person(s) who are entitled to instruct or direct the Collateral Control Agent: (a) (i) until the Discharge of First Priority Claims has occurred, the Lender Agent . . . ." Intercreditor Agreement, § 1.

24.     The Junior Secured Notes Indenture provides that the liens and security interests

under the Notes Security Agreement may be released in accordance with the Intercreditor

Agreement and also under the enumerated circumstances.   Junior Secured Notes Indenture,

§ 8.04.

25.     In executing releases of liens and security interests granted under the Notes

Security Agreement, the Collateral Agent was entitled to rely conclusively on the Certificates –

Officer's Certificates and Opinions of Counsel – delivered to the Collateral Agent.   Notes

Security Agreement, § 10.

26.     In accordance with the governing documents, the Officer's Certificates delivered

to the Collateral Agent (i) stated the authorization of the signatory to execute and deliver the

Officer's Certificate, (ii) requested the release of liens and security interests on certain Collateral,

and (iii) stated that the conditions specified in Section 8.04 of the Junior Secured Notes Indenture

applicable to the release of liens and security interests on the Collateral had been satisfied.

27.     Further, in accordance with the governing documents, the Opinions of Counsel

delivered to the Collateral Agent (i) stated that the signatory was counsel, (ii) stated that the

signatory examined the Notes Security Agreement, Junior Secured Notes Indenture, and the

Officer's Certificate, and (iii) opined that the Officer's Certificate was in the form required by

Section 8.04 of the Junior Secured Notes Indenture and that no other documents were required to

be delivered to the Collateral Agent or the Indenture Trustee as a condition to the requested

release of liens and security interests on the Collateral.

28.     At all relevant times, in accordance with the release of liens and security interests

securing the Junior Secured Notes pursuant to the governing documents, I conclusively relied

upon the representations set forth in Collateral Release Certificates delivered to the Collateral

Agent by the Relevant Directing Party. I also conclusively relied upon the representations set forth in the Officer's Certificates and the Opinions of Counsel delivered to the Collateral Agent. As to each Officer's Certificate and Opinion of Counsel delivered to the Collateral Agent, prior to the release of any liens or security interests securing the Junior Secured Notes I relied upon the advice of attorneys from S&K that such documents conformed to the sample form documents annexed to the Junior Secured Notes Indenture.

**The Adversary Proceedings**

29.      In connection with these adversary proceedings, the Collateral Agent has been threatened with potential claims concerning the Collateral Agent's release of liens and security interests on the Collateral. At the inception of the litigation, the Indenture Trustee and Junior Secured Noteholders declined to provide the Collateral Agent with direction and indemnification in accordance with the governing agreements. Thereafter, in the Answer, Affirmative Defenses and First Amended Counterclaims of Defendants UMB Bank, N.A. and the Ad Hoc Group of Junior Secured Noteholders to Debtors' First Amended Complaint to Determine Extent of Liens and for Declaratory Judgment, Adv. Pro. No. 13-01343 (Docket No. 29), the Indenture Trustee and the Ad Hoc Group of JSNs sought in their twenty-second and twenty-third counterclaims declarations that (i) certain lien releases breached the Junior Secured Notes Indenture and the Notes Security Agreement, and (ii) certain lien releases of mortgage loans were ineffective releases of collateral in violation of the New York Uniform Commercial Code.

30.      In moving to dismiss these counterclaims, the Debtors and the Committee argued that the Collateral Agent properly released the liens referenced by the Indenture Trustee and Ad Hoc Group of JSNs. Memorandum of Law in Support of the Debtors' and Official Committee of Unsecured Creditors' Motion to Dismiss Certain of the Defendants' Counterclaims (Docket No. 22) at p.15 n.13. Nonetheless, the Debtors and the Committee contended that the Indenture

Trustee's and Ad Hoc Group of JSNs' "remedy, if any, lies in a claim against the Collateral

Agent, not in a claim against the Debtors seeking to invalidate the release of such liens." *Id.* at

15.

31.    The trial in the adversary proceedings began on October 15, 2013.  During the

opening statements, in a colloquy with the Court, counsel for the Ad Hoc Group of JSNs stated,

"Your Honor said if there is evidence of that lien release, it's released.  That's Wells' issue

now." Transcript of Oct. 15, 2013 at p. 101.

32.    The Indenture Trustee has not responded to inquiries made by counsel for the

Collateral Agent as to whether the Indenture Trustee and the Ad Hoc Group of JSNs intend to

assert claims against the Collateral Agent.

33.    Taken together, I believe there is a real and credible threat that claims may be

asserted against the Collateral Agent in connection with the Collateral Agent's wholly proper

release of liens and security interests securing the Junior Secured Notes.

**The Collateral Agent's Secured Claims against the Debtors and Independent Claims against Non-Debtors**

34.    To the extent a cause of action is brought against the Collateral Agent, including

any action challenging the Collateral Agent's release of liens and security interests securing the

Junior Secured Notes, the Debtors are required to pay the Collateral Agent's fees and expenses

and fully indemnify the Collateral Agent.[4]  *See, e.g.*, AFI Revolver, §§ 3.03, 10.01, 10.02, 13.15;

Revolver Security Agreement, §§ 14(r), 14(t); Intercreditor Agreement, §§ 5.6(k), 5.6(o), 5.6(q),

5.6(y), 5.6(bb); Notes Security Agreement, §§ 15(r), 15(t); Junior Secured Notes Indenture, §§

---

[4]    The Collateral Agent timely filed secured proofs of claim for, among other things, claims for indemnification in unliquidated amounts, including, but not limited to, Claims numbered 5609, 5616, 5619, 5623, 5627, 5629, 5631, 5639, 5650, 5654, 5657, 5660, 5663, 5668, 5671, 5673, 5678, 5685, 5697, 5699, 5700, 5702, 5757, 5759, and 5760.  No party in interest has objected to these claims.  11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f).

7.07(a), 7.07(g).   The proceeds of the Collateral must be applied first to the payment of the Collateral Agent's fees and expenses and in satisfaction of the Collateral Agent's right to indemnification.   *See* AFI Revolver, § 3.01(f); Revolver Security Agreement, § 12(f); Intercreditor Agreement § 4.1; Notes Security Agreement, § 13(f); Junior Secured Notes Indenture, §§ 6.10, 7.07(d), 8.03(b).

35.      Also, to the extent any action is brought against the Collateral Agent challenging the Collateral Agent's release of liens and security interests, the Collateral Agent holds direct, independent claims against the officers and counsel who – in connection with such releases – delivered the Officer's Certificates and Opinions of Counsel, as wells as against any Relevant Directing Party that delivered Collateral Release Certificates or directions.   As discussed above, the Collateral Agent was entitled to – and did – rely conclusively on Officer's Certificates, Opinions of Counsel, Collateral Release Certificates, and directions delivered in connection therewith.   *See* Notes Security Agreement, § 10; Junior Secured Notes Indenture, § 8.04; AFI Revolver,§ 12.11; Intercreditor Agreement, § 5.6(l).

Dated:  November 12, 2013
        New York, New York

                                            */s/ Michael Pinzon*
                                            Michael Pinzon