Affidavit Regarding Proof of Claim #3856
(Foreclosure of 153 Valley Forge Road, Weston CT)

NOW COMES Thomas James La Casse, Creditor in the case 12-12020-MG, *In re Residential Capital, LLC, et al*, who avers and testifies to the following.

1. I am owner of the property at 153 Valley Forge Road, Weston CT, where I lived for many years. My brother Joseph and I bought this property and restored it to its historic and picturesque condition. While I was employed in Stamford, this was my primary residence.

2. In Connecticut, a foreclosure requires judicial action. Residential Funding, LLC commenced a strict foreclosure proceeding on this property. To that end, the Complaint averred that Residential Funding, LLC, was the owner of the obligation as required by Connecticut law, but this is a false and fraudulent statement. This complaint was served by sheriff or constable but was also mailed to me at my home.

3. Although they did not even have a judgment yet, Residential Funding, GMAC and its agents performed a self-help eviction by breaking in and changing the locks. I was living at the Property and it was both unnecessary and illegal for the lender to try to take possession of the Property as they did. While they called it 'securing' the property, the property was perfectly secure except for their intrusions. My possessions were stolen during their intrusions, making them nothing more

-1-

than burglars. I was forced to leave my home in Connecticut when the stress became too severe. When I returned the damage was too much to bear and I should never have gone to see it.

4. I sent four Qualified Written Requests about the Property to GMAC, asking who the owner of the loan was, before I got a response, and when I did get the response, it said that Residential Funding was not the owner of the note. Residential Funding Company, LLC, had no legal right to foreclose and their acts were not based upon any reasonable justification of having the right to foreclose, but instead they were criminal and based upon a fraud perpetrated upon the Court. I retained McDonnell Analytics which supplied an expert report, now placed in evidence in the Stamford Superior Court, showing that it is a false and fraudulent allegation that Residential Funding has owned the loan, as the right to receive payments made on it at all relevant times has been with a different company. The pleadings and responses my attorney, Donald Brown, submitted to highlight this issue were deliberately omitted from GMAC's objection to our claim filed in the NY Bankruptcy Court as well. In fact, Residential Funding's own attorney, Thomas Elcock of Prince Lobel Tye, LLP admitted that at the time of the foreclosure Residential Funding was not the owner of the note. The lender, both directly and through its attorneys committed a knowing fraud and continues to do

so before this very court in this proceeding.

5. GMAC and Residential Funding also violated the laws of bankruptcy protection I should have enjoyed, for instance breaking in and changing the locks while in protection and by filing a motion to reset the law days with the Connecticut court before the effective date of the relief from the Automatic Stay granted by the Bankruptcy Judge in Massachusetts.

6. GMAC Mortgage, LLC, and Residential Funding Company, LLC, as post-petition debtors have revived the issue and joined in the conspiracy by proceeding post-petition with the case, renewing the claim to be the holder of the Note despite the overwhelming evidence to the contrary. In September, 2012, as shown on the docket sheets, GMAC/Residential Funding filed a Supplemental Objection to the Motion to Vacate Judgment of Strict Foreclosure and appeared in the state court, but the state court judge once again declined to rule on the basis that the Automatic Stay might still apply to his case.

7. The first law firm that represented Residential Funding and lied to the Stamford Superior Court that Residential Funding owned the loan was Hunt Liebert Jacobson, P.C., with the complaint signed by Jeffrey M. Knickerbocker, Esq. Jeffrey M. Knickerbocker had a duty to the Stamford Superior Court to make a reasonable inquiry as to the truth and veracity of the allegations contained in the

pleadings he signed and filed with that court. Hunt Liebert Jacobson, P.C. had a duty to ensure that their employee, Jeffrey M. Knickerbocker, Esq. obeyed all court rules and laws in conducting business for that law firm. I have been damaged by the failure of this lawyer and this law firm to obey the law and the resulting mail fraud from the attempt to collect a debt which was not owed their principal.

8. When I filed for Bankruptcy Protection the law firm Orlans Moran PLLC appeared before the United States Bankruptcy Court for the District of Massachusetts, sitting in Springfield, Massachusetts, and similarly swore to the Bankruptcy Court that Residential Funding, LLC, was the owner of the loan on my home in Weston, Connecticut. Amy Azza, Esq. signed the Motion for Relief from Stay which falsely averred that Residential Funding, LLC, owned the obligation and mortgage on my home, although Paul Mulligan, Esq., was stated as composing the affidavit. I received a copy of this Motion through the United States Mails. Amy Azza had a duty to the United States Bankruptcy Court to make a reasonable inquiry as to the truth and veracity of the allegations contained in the pleadings he signed and filed with that court. Orlans Moran PLLC, had a duty to ensure that their employee, Amy Azza, Esq. obeyed all court rules and laws in conducting business for that law firm. I have been damaged by the failure of this lawyer and this law firm to obey the law and the resulting mail fraud from the attempt to

collect a debt which was not owed their principal.

9. After the Bankruptcy Court for the District of Massachusetts allowed a motion for relief from the Automatic Stay, but before the December 2, 2010, effective date of the order, Hunt Liebert Jacobson, P.C. filed a motion to reset the law days, in a pleading signed by Benjamin T. Staskiewicz, Esq.

10.   After my attorneys filed a Motion to Vacate the Judgment of Strict Foreclosure and for discovery, the law firm of Dowley and Associates and Jennifer G. Farrell, Esq., entered an appearance for Residential Funding Company, LLC. Attorney Farrell averred to the Stamford Superior Court that Residential Funding Company, LLC, was the owner of the obligation and mortgage. My attorney received a copy of this pleading through the United States Mails, sent by Dowley and Associates and Jennifer G. Farrell, Esq. Jennifer G. Farrell had a duty to the Stamford Superior Court to make a reasonable inquiry as to the truth and veracity of the allegations contained in the pleadings he signed and filed with that court. Dowley & Associates had a duty to ensure that its employee, Jennifer G. Farrell, Esq. obeyed all court rules and laws in conducting business for that law firm. I have been damaged by the failure of this lawyer and this law firm to obey the law and the resulting mail fraud from the attempt to collect a debt which was not owed their principal.

11.     Following the disclosure of the report of Marie McDonnell, Certified Forensic Accountant, Prince Lobel Tye, LLP appeared for the plaintiff Residential Funding Company, LLP. Attorney Joseph Calandrelli first appeared pro hac vice for the Plaintiff but left the firm before any court appearance. Attorney Thomas Elcock later made his appearance, pro hac vice. Currently Attorney Andrew L. Baldwin also of this firm is the attorney of record for the plaintiff in the Weston Connecticut foreclosure case.

12.     In the present proceeding the law firms of Prince Lobel Tye LLP and Morrison & Foerster LLP have signed the court pleadings. Attorneys for Morrison & Foerseter, LLP, who have noted their appearances on pleadings falsely averring that Residential Funding Company, LLC, owns the obligation and mortgage loan on my home include Gary S. Lee, Norman Rosenbaum, Melissa A. Hager and Erica J. Richards. Gary S. Lee, Norman Rosenbaum, Melissa A. Hager and Erica J. Richards had a duty to this Court to make a reasonable inquiry as to the truth and veracity of the allegations contained in the pleadings he signed and filed with this court. Morrison & Foerseter, LLP had a duty to ensure that its employees, Gary S. Lee, Norman Rosenbaum, Melissa A. Hager and Erica J. Richards, Esq., obeyed all court rules and laws in conducting business for that law firm. I have been damaged by the failure of these lawyers and this law firm to obey the law and the resulting

-6-

mail fraud from the attempt to collect a debt which was not owed their principal. Attorneys for Prince Lobel Tye LLP, who have noted their appearances on pleadings falsely averring that Residential Funding Company, LLC, owns the obligation and mortgage loan on my home include Richard Brianski and Andrew Baldwin. Richard Brianski and Andrew Baldwin had a duty to this Court to make a reasonable inquiry as to the truth and veracity of the allegations contained in the pleadings he signed and filed with this court. Prince Lobel Tye LLP had a duty to ensure that its employees, Richard Brianski and Andrew Baldwin, obeyed all court rules and laws in conducting business for that law firm. I have been damaged by the failure of these lawyers and this law firm to obey the law and the resulting mail fraud from the attempt to collect a debt which was not owed their principal.

13.    Lauren Graham Delehey has filed her affidavit with this Court and described her position as "In-House Litigation Counsel in the legal department at Residential Capital, LLC". She submitted an Affidavit[1] in the present case. In Paragraph 10 of her Affidavit she falsely states "In 2006, Homecomings sold the Valley Forge Note and specifically indorsed it to Residential Funding Corporation, which later changed its name to Residential Funding Company, LLC. The Valley Forge Note was indorsed in blank and held by Wells Fargo on behalf of RFC under a custodial agreement. On April 26, 2009, RFC acquired possession of the original

---

1    Document 4635, Part 5

-7-

Valley Forge Note and transferred it to its counsel to conduct the foreclosure." I believe, on the basis of the report of Marie McDonnell and the reply of GMAC Mortgage, LLC to my Qualified Request, that the Valley Forge Note, as it is referenced, was held not on behalf of Residential Funding Company, LLC, but rather for HSBC Bank USA, N.A., as Trustee for the Certificateholders of the Luminent Mortgage Trust 2006-3.

14.    My house was a showcase property nestled in the heart of Fairfield County in very desirable Weston Connecticut. This affluent bedroom community is a suburb for Manhattan. A great number of residents live here and commute to the city. The original house was built on 2 bucolic acres overlooking the Saugatuck River. There is a non-buildable 35 acre preserve in front of the house and an 800 acre preserve behind the property as well. In 2002 this property underwent a major renovation by the nationally renowned builder Ed Cady of East Coast Barnbuilders. The original building was completely renovated and 3000 sq. ft. were added to the main house for a total of 4,000 sq. ft. Period materials were used to compliment the original style of the house. Hand-hewn chestnut beams, antique southern yellow pine flooring , plaster walls, extensive period paneling and mouldings and antique wavy glass panes were also utilized throughout the house. A total of 4 fireplaces were added including a 200 year old brick hearth with bread oven. It had

its modern conveniences as well. A Jacuzzi with a gas fireplace in the master bath, a new commercial kitchen and a hydro-thermal heating system. In addition a 1200 sq. ft. replica of the house with a 20 ft. fieldstone fireplace was built as a guest house. A barn and cottage were also added.

15.    GMAC did not so much as take possession as interfere with my property rights by changing the locks repeatedly while I was living there. This drove me to distraction until I left rather than face the continual harassment. They entered the property and first took my pewter collectibles, and after being able to do this without being prosecuted, repeated their burglaries under the pretense of winterizing the property, all the more ludicrous because I and my brother were at work and returned to find antifreeze in the toilets and our possessions gone through.

16.    Residential Funding Company, LLC had no right to foreclose on the property. The loan is owned by a different company and they cannot come to court to collect on a mortgage which they already sold. The law day for me as property owner never passed. Nor did they have any right to self- help eviction when they broke in and changed the locks and, if I changed them myself, they changed them again just for spite, harassment and outright thievery. Despite the laws and protection afforded by the Connecticut and Federal Court systems, GMAC did as

they pleased.

17.    I filed for Bankruptcy protection and was granted it but GMAC still advanced the foreclosure proceedings in Stamford Superior Court and continued to break-in and change the locks on the home and guest house. This was not just illegal it was a criminal act as well. I filed reports with the Weston Police Department after each break-in, explaining this illegal seizure of the property. It was explained to the police that the law days had not passed. The police repeatedly stated that the house was in foreclosure and this was a civil matter. The police did nothing. They were even notified by an associate of my attorney who was bicycling past my house and discovered a car that looked like mine, but was not mine, parked there, when the police could have caught the perpetrators in the act. It was humiliating to find that I could do nothing but watch my dream house be destroyed. I remain in a depression about this to this day. If I had to place a dollar value on what this has cost me, I would stay that it would be $2,500,000 (two.five million dollars), including future lost wages as I have been unable to work and have not been able to find a new job.

18.    Due to GMAC's illegal foreclosure, possession, destruction and vandalism the property is ruined. The sale value is negligible and the tear down costs alone are estimated at at least $200,000. GMAC/Residential Funding even

refused to hand over the keys to the changed locks even when I was in Chapter 11 bankruptcy protection for months despite demands until they could get the place emptied of all valuables, and what they could not be carried away, was wrecked in place, in a class display of leaving scorched earth instead of a home I could return to.

19. I provided a list of items taken from the property and a statement of their value, which was included in the Proof of Claim. By my calculation, the value of these items comes to $500,000 . However, some of these items belonged to my brother, Joseph La Casse.

20. As a part of the settlement negotiations and memorialized in the letter of Attorney Donald Brown to counsel for Residential Funding, their insurance interest was to be assigned to me. I had taken out good insurance which was canceled under dubious circumstances because it was paid for, and we would take this simple step to ensure that the proceeds would reach me directly. These proceeds have an indeterminate value.

21. This was a one of a kind property with a value of $2,250,000 (two million two hundred and fifty thousand dollars). I should be compensated for this destruction, particularly when it was done as part of the fraud that GMAC and Residential Funding are still attempting to perpetrate.

22.     I have spent, for legal and expert fees related to this foreclosure and my efforts to prevent it, almost $100,000.

23.     I was forced to file bankruptcy and have suffered a loss of reputation. I was conducting a business of renovating and selling houses, and once I filed bankruptcy all I have been able to attract for purchasers are people looking for a price below bargain-basement. I thus have had no income from dealing in properties when I was routinely earning $250,000. I conservatively put my loss of reputation at $3,000,000. My investment in my showpiece property at 133 Colony Road, Longmeadow, Massachusetts, should have netted $800,000 from one transaction alone.

24.     I thus have direct damages of $8,550,000. Upon a finding of civil RICO liability, these should be multiplied by three, for a total of $25,650,000.

25.     The total I have listed above does not include the need to withdraw my retirement money, the value of the insurance proceeds or my attorney fees. The settlement demand made by my attorney Donald Brown, is an accurate estimate of my loss and this Court should not hesitate to authorize payment of such an amount.

26.     The house has been destroyed by GMAC and its acts of negligence and lack of care for the property while in their illegal possession, due to this and the acts of vandalism that they either allowed to happen or perpetrated themselves.

The house was even on the television news when vandals in the process of removing all the copper piping from the house cut the copper oil tank line, the oil began to leak into the nearby river. The costs for the environmental remediation are not yet known but may exceed $250,000 (two hundred and fifty thousand dollars).

27. The house and grounds are situated on granite ledge, which a very difficult and dense material to work with that makes a tough building terrain. The engineered septic system and the well were destroyed even after the extent of the property dispute was known to GMAC, in what could only be deliberate acts with criminal intent. Consequently, a large amount of site work is anticipated. I have been involved in restoring many houses for sale, but I despair at what would be required here. Soil remediation will be required and in order to reinstall a septic system, a complete demolition of the property will be required to accommodate the required blasting. These costs could amount to as much as $500,000 (five hundred thousand dollars).

28. Rebuilding with the 18th or 19th century period materials (either salvaged from the structure or brought from other such structures) are at a premium. The antique flooring is five times the cost of conventional. The hand-hewn chestnut beams cost twenty-five dollars a foot. The beams are not only

decorative they were the framing system for the house and guest house. In addition the period windows, lighting, plaster work, bath fixtures, tile, paneling, mouldings and roofing materials are all at a premium, and I estimate another $300,000 (three hundred thousand dollars) in materials cost alone.

29. A new heating system heatlines waterlines and oil line piping to replace what was destroyed would cost between $90,000 and $100,000.

30. My lawyer said that GMAC/Residential funding should pay enhanced damages of three times actual damages for violation of civil RICO. I certainly see this as a conspiracy because even when the mortgage company can see that they are wrong and are prosecuting a foreclosure that they have no right to, they persist, and the strong-arm tactics of leaving the property uninhabitable are reprehensible to say the least.

Signed and sealed under pains and penalties of perjury this _____ day of November, 2013.

Thomas James La Casse