UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re:<br><br>**RESIDENTIAL CAPITAL, LLC.**, *et al*.,<br><br>Debtors. | **NOT FOR PUBLICATION**<br><br>Case No. 12-12020 (MG)<br>Chapter 11<br>Jointly Administered |
|---|---|

### MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION
### TO PROOFS OF CLAIM 3852, 3856, AND 3860

**A P P E A R A N C E S:**

MORRISON & FOERSTER LLP
*Attorneys for Debtors*
1290 Avenue of the Americas
New York, NY 10104
By: Melissa Hager, Esq.

LAW OFFICE OF LAIR J. HEAL
*Attorney for Thomas James La Casse*
3 Clinton Road
Sterling, MA 01564
By: Lair J. Heal, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court in the *Debtors' Objection to Proofs of Claim Filed by Thomas La Casse against Homecomings Financial, LLC (Claim No. 3852) and Residential Funding Company, LLC (Claim Nos. 3856 and 3860) Pursuant to Bankruptcy Code Section 502(b) and Bankruptcy Rule 3007* (the "Motion", ECF Doc. # 4635). The Motion is supported by the Declaration of Lauren Graham Delehey (ECF Doc. # 4635-5). Thomas J. La Casse filed an Opposition to the Motion (the "Opp.", ECF Doc. # 5106), supported by the Affidavit of Donald Brown, Esq. (ECF Doc. # 5106-1) and two Affidavits of Thomas La Casse (ECF Doc. # 5106-3,

5106-15). The Debtors seek to disallow La Casse's Proofs of Claim—totaling $37,078,000—because they lack sufficient documentation and fail to state a basis for the Debtors' supposed liability.

For the reasons explained below, the Court **SUSTAINS** the Objection.

## I. BACKGROUND

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. On August 29, 2012, the Court entered an order establishing procedures and a deadline of November 9, 2012 for filing proofs of claim (ECF Doc. # 1309). On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) (ECF Doc. # 2093). The Claimant filed his Proofs of Claim on November 9, 2012.

On March 21, 2013, the Court entered an order approving procedures for the Debtors to object to proofs of claim (the "Procedures Order", ECF Doc. # 3294). That Order approved procedures to be applied in connection with objections to claims filed by current or former borrowers (collectively, the "Borrower Claims"). Based on substantial input from the Creditors' Committee and Special Counsel to the Creditors' Committee for Borrower Issues ("Special Counsel"), the Procedures Order includes specific protections for borrowers and provides a process for the Debtors to follow before objecting to certain categories of Borrower Claims. The procedures generally provide, among other things, that before objecting to Borrower Claims, the Debtors must (i) consult with Special Counsel and provide Special Counsel with a list of the claims at issue, and (ii) review their books and records to determine if any amounts are owed to such Borrowers.

2

**A.     The Claims**

The Claimant filed one Proof of Claim against Homecomings Financial, LLC ("Homecomings"), and two Proofs of Claim against Residential Funding Company, LLC ("RFC"). The Homecomings Proof of Claim (number 3852) and one of the RFC Proofs of Claim (number 3860) relate to a mortgage and note for property at 270 Park Drive, Longmeadow, Massachusetts (the "Longmeadow Property"). The other RFC Proof of Claim (number 3856) relates to a mortgage and note for property at 153 Valley Forge Road, Weston, Connecticut (the "Weston Property"). The Claimant defaulted on both loans and faced foreclosures of both properties.

*1.     The Longmeadow Property*

On November 15, 2006, the Claimant entered into a $600,000 loan with Homecomings, evidenced by a note (the "Longmeadow Note") and secured by a mortgage for the Longmeadow Property (the "Longmeadow Mortgage"). The Longmeadow Mortgage identified Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Homecomings. The Longmeadow Note was later transferred to RFC, which then indorsed the note in blank by an allonge. Although the evidence is not quite clear, it appears that RFC transferred the note to Aurora Loan Services, LLC ("Aurora").[1] On July 31, 2009, MERS—acting as nominee for Homecomings—assigned the mortgage to Aurora.

Aurora filed a summons and complaint with the Massachusetts Land Court on September 15, 2009. That court issued a judgment allowing Aurora to foreclose on the property, and on November 22, 2010, Aurora bought the property after an auction. The Claimant then filed a complaint against Aurora and MERS on December 8, 2010 in Connecticut State Court, even

---

[1]     The Delehy Declaration states that Homecomings transferred the note to Aurora, but Exhibits 13 and 14 to the Claimant's Opp. indicate (1) an indorsement in blank from Homecomings, (2) an update to that blank indorsement that filled in RFC as the noteholder, and (3) an indorsement in blank from RFC.

3

though the property was located in Massachusetts. The Claimant did not name any Debtor entity as a defendant in that lawsuit. Aurora and MERS filed a motion for summary judgment, and the Connecticut court found that Aurora was the holder of the mortgage during all time periods relevant to the foreclosure. But the court also found that Aurora had not established that it owned the note or was authorized to act on behalf of the noteholder at the time of foreclosure.

Even though Claimant did not name any Debtor entity as a party to the Longmeadow litigation, he still asserts that he has a viable claim against Homecomings and/or RFC for conduct involving the Longmeadow Property. The Claimant also asserts that he may amend his complaint to add Homecomings and RFC as "obvious defendants."[2]

### 2. *The Weston Property*

On January 30, 2006, the Claimant entered into a $650,000 loan with Homecomings, evidenced by a note (the "Weston Note") and secured by a mortgage (the "Weston Mortgage"). The mortgage identified MERS as nominee for Homecomings. Homecomings later indorsed the Weston Note to RFC, and RFC indorsed the note in blank. The Claimant argues that in April 2006, the mortgage was securitized, and HSBC became the owner of the Weston Note. Neither party provided evidence indicating that HSBC had physical possession of the Weston Note or held legal title and allowed another party to hold the note through a custodial agreement,[3] but the Claimant produced evidence of a Debtor entity acknowledging that HSBC owned the Weston Note as of March 30, 2012.

On May 18, 2009, RFC commenced a foreclosure action in Connecticut State Court. Before initiating that action, RFC obtained physical possession of the Weston Note. RFC

---

[2] The Claimant fails to explain how he could amend his complaint at the relatively late stage of the litigation, after the defendants filed answers and the court has entertained a summary judgment motion.

[3] The Debtors claim that Wells Fargo held the note pursuant to a custodial arrangement with RFC.

4

provided the note to counsel to conduct the foreclosure. The Debtors argue that RFC proceeded with the foreclosure as the holder of the Weston Note, which was valid irrespective of any argument the Claimant may make about ownership of the Note.

The Connecticut court entered a default judgment against the Claimant on August 18, 2009, and RFC then filed a Motion for Judgment of Strict Foreclosure. Along with its motion, RFC submitted an affidavit signed by Jeffrey Stephan, who was both a vice president of MERS and an employee of GMACM, the servicer of the loan. The Claimant alleges that this affidavit was fraudulent and that Stephan has confessed during depositions in other matters to signing documents without having knowledge of the contents or veracity of those documents. The Connecticut court granted RFC's motion and entered a Judgment of Strict Foreclosure on September 2, 2009, initiating a process in which interested parties could redeem the property on their "law days," and if no parties redeemed the property on their respective law day, the property vested to the lender. The law days were scheduled to begin on October 20, 2009, but the Claimant filed a chapter 13 bankruptcy petition on that day. The bankruptcy filing vacated the law days and reopened the Judgment of Strict Foreclosure.

Less than one month later, the Claimant's chapter 13 filing was dismissed for failure to comply with a court order and failure to timely file all required documents. The Claimant then filed a chapter 7 petition in Massachusetts on January 19, 2010. Later that year, the Massachusetts Bankruptcy Court granted RFC relief from the automatic stay, effective December 4, 2010, so RFC could proceed with the foreclosure action. On November 30, 2010, RFC filed a motion to reset the law days and reenter the judgment against the Claimant in Connecticut State Court.[4] Accompanying its motion, RFC filed an affidavit signed by Douglas

---

[4] The Claimant argues that this filing violated the automatic stay, which was not set to be lifted until December 4, 2010.

5

Wilson attesting to his personal review of RFC's records and his findings regarding the Claimant's debts. There is no evidence that this motion was ever granted.

The case remained dormant for nearly one year, when on November 11, 2011, the Claimant filed a motion to vacate judgment and dismiss RFC's action with prejudice. The Claimant argued that MERS could not legally transfer the mortgage, that RFC lacked standing to foreclose, and that RFC committed fraud on the court by submitting the Stephan affidavit and purporting to be the noteholder. RFC objected to the motion to vacate on January 23, 2012, and the Claimant filed a reply on February 7, 2012.

After the Debtors filed for chapter 11 protection, the Connecticut State Court requested that RFC obtain an order for relief from the stay to allow its action involving the Weston Property to proceed. On April 30, 2013, this Court entered an order lifting the automatic stay to allow the Claimant to prosecute his claims to the extent they constitute defenses to the foreclosure. RFC filed this Court's relief from stay order with the Connecticut State Court on May 14, 2013, but the proceedings have not progressed since that date.

In his Opposition, the Claimant states that he is seeking damages for civil RICO violations because RFC entered the Weston Property and "left it in ruins." (Opp. at 15.) The Claimant asserts that "[a]nything of value was stolen, and what was too large or not valuable enough was vandalized." (*Id.*)

### 3. *The Claimant's Expert Report*

During the Weston Property litigation, the Claimant engaged an expert to perform a forensic analysis of the property's chain of title. That expert filed a report with the Connecticut Court stating that the Weston Mortgage is currently listed as a receivable in a publicly-offered Luminent Mortgage Trust, with HSBC serving as trustee and Wells Fargo serving as the

6

Securities Administrator for the trust.  The closing date for the trust was on or about April 28, 2006, or within the following ninety days.  As part of the securitization, the mortgage was transferred at least four times.  Thus, the Claimant's expert asserts that MERS could not have any right, title, or interest to the mortgage to assign to RFC on July 25, 2009.  According to the Claimant's expert, the mortgage assignment that RFC submitted in Connecticut State Court is a false document purposely prepared to create the appearance in the public record that RFC had the authority to foreclose.

## II.    DISCUSSION

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate.  11 U.S.C. § 501(a).  "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)."  4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011).  Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Under section 502, if an objection is made, the court shall determine the amount of such claim "as of the filing date."  *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted).

Claims objections have a shifting burden of proof.  Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim.  The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case.  *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("In practice, the objector

must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). If the objecting party satisfies that requirement, the burden then shifts back to the claimant to produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Id*. at 174.

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

### A. The Claimant's Proofs of Claim do not support any liability by Homecomings or RFC related to the Longmeadow Property.

To support the claims against Homecomings and RFC relating to the Longmeadow Property, the Claimant attached a list of asserted damages, a copy of the Longmeadow Mortgage and Note, and a copy of the complaint filed against MERS and Aurora. The Debtors argue that any claim involving the Longmeadow Property is unenforceable against them under section 502(b)(1) since the Debtors are not parties to the complaint against MERS and Aurora, and they were not involved in the foreclosure of that property. The Proofs of Claim assert damages for the value of the property, emotional distress, attorneys' fees, punitive damages, costs, liquidated damages, consequential damages, and loss of reputation.

The Longmeadow Proofs of Claim raise two questions: Can attaching a complaint against two non-debtor entities support a claim against the Debtors? And if the Debtors were somehow added as defendants, would the complaint suffice to state a claim against the Debtors? The answer to both questions is no. The Court must assess proofs of claim based on what is presented in the four corners of the attached documents. The Claimant argues that the complaint suffices as documentation supporting the Longmeadow Property Claims because Homecomings

8

and RFC are "obvious defendants" to that action. But the complaint does not name those entities, nor does the Claimant explain how he could amend the complaint at this stage, considering that it appears that the period for an amendment as of right has already expired, and the Claimant has not sought to amend his complaint pursuant to section 10-60 of the Connecticut Rules of the Court.[5] CONN. PRACTICE BOOK § 10-60 (2013).

Even assuming the Claimant could somehow name Debtor entities to the Longmeadow lawsuit, the complaint fails on its face to indicate any potential Debtor liability. There is nothing in the complaint indicating that the Debtors could be liable for any damages to the Claimant. The Debtors were not servicers or noteholders during the relevant time period, and they were not involved in the foreclosure.

The Claimant argues that the note may have been doctored, which would then raise questions about proper parties in interest to the foreclosure, but the fact remains that the Claimant himself produced evidence that the Longmeadow Note was indorsed in blank by RFC. Thus, if Aurora later held that note, it would be the proper noteholder and would be entitled to foreclose. Even if Aurora was not the proper noteholder when it foreclosed on the Longmeadow Property, that would not establish Debtor liability—only liability for Aurora.

Since the documentation attached to the proofs of claim against Homecomings and RFC related to the Longmeadow Property fails to indicate any Debtor liability, the Debtors' objection to Proofs of Claim 3852 and 3860 is **SUSTAINED**.

---

[5] Rule 10-60 would allow the Claimant to amend his complaint with permission of the court, permission of the adverse parties, or by filing a request for leave to amend with the amendment attached and waiting fifteen days to see if any parties object.

> **B.    The Claimant has not provided any basis for Debtor liability relating to the Weston Property.**

The claim against RFC relating to the Weston Property hinges on two arguments that the Claimant asserts in his motion to vacate the foreclosure judgment for that property, which the Claimant attached to Proof of Claim 3856.  First, the Claimant argues that the assignment of the Weston Mortgage by MERS is void.  Second, the Claimant asserts that RFC did not have standing to foreclose on the Weston Property.  The documentary evidence undermines the Claimant's arguments in his motion to vacate.

As for the first argument, the Claimant posits that MERS generally does not have the legal authority or ability to transfer mortgages as a nominee, and even if it did, the transfer to RFC was void here because the mortgage had already been securitized and transferred to other parties before the purported MERS/RFC assignment.  Connecticut courts have already rejected arguments that MERS lacks authority to act as a nominee of a lender and transfer mortgages. *See RMS Residential Props., LLC v. Miller*, 32 A.3d 307, 317 (Conn. 2011) (finding that since MERS was named as nominee, true nature of transaction was sufficiently disclosed, and preventing MERS from transferring mortgage would "frustrate the intentions of both mortgagors and mortgagees").  Further, even if the transfer to RFC was somehow void because the Weston Mortgage had already been securitized and transferred to other parties, that fact does not preclude RFC from foreclosing on the property so long as it was the noteholder.  *See Id.* at 312 (holding that the mortgage follows the note, so the "rightful owner of the note has the right to enforce the mortgage").

Further, Connecticut law allows parties to receive legal title to property upon foreclosure even if the "legal title to the mortgaged premises has never been conveyed" to the foreclosing party, so long as that party is "entitled to receive the money secured" by the mortgage.  CONN.

10

GEN. STAT. § 49-17. Here, RFC held the note when it proceeded with the foreclosure, and the note was indorsed in blank. (*See* Delehy Decl. ¶ 10.) The Debtors submitted evidence of the Weston Note indorsed in blank. (*See* Motion Ex. H.) Even if the Claimant could somehow demonstrate that despite the note's blank indorsement, RFC was not the proper owner of the note, RFC was entitled to enforce the note merely by virtue of holding the note. *See Miller*, 32 A.3d at 313 (finding that noteholder could enforce note even without ownership); *see also Bankers Trust of Cal., N.A. v. Vaneck*, 899 A.2d 41, 42 (Conn. App. Ct. 2006) (holding that Connecticut law "permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage"). Thus, RFC has provided sufficient evidence demonstrating that it had standing to foreclose on the Weston Property.

Aside from asserting damages for the value of the Weston Property and the insurance coverage for that property, the Claimant asserts an entitlement to civil RICO damages. But the Claimant's documentation falls woefully short of supporting a civil RICO violation. None of the documents that the Claimant submitted would support a civil RICO claim. To bring a civil RICO claim in the Second Circuit, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity[6] (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Zavalidroga v. Cote*, 395 Fed. App'x 737, 740–41 (2d Cir. 2010) (internal quotation marks omitted). Even if a plaintiff can demonstrate a substantive RICO violation, the plaintiff must also show "injury to the plaintiff's business or property" and "that such injury was by reason of the substantive RICO violation." *Catholic Health Care W. v. US Foodserv. (In re US FoodServ. Pricing Litig.)*, 729 F.3d 108, 117

---

[6] Racketeering activity is defined under 18 U.S.C. § 1961 to include dozens of predicate offenses, including extortion, bribery, counterfeiting, and mail fraud.

11

(2d Cir. 2013). The "enterprise" complained of in a civil RICO action must be "distinct from those persons or entities who stand accused of conducting that racketeering activity." *Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384, 390 (E.D.N.Y. 2008). Here, the Proof of Claim relating to the Weston Property provides no allegations necessary to support a civil RICO claim, or any evidence of a pattern of racketeering activity, nor does it define any enterprise.

To the extent any portion of the Claimant's Weston Property claim relates to the Stephan affidavit, the Claimant's argument is moot because RFC filed a superseding affidavit replacing the Stephan affidavit in Connecticut State Court.

Since the evidence submitted by the parties indicates that RFC was the noteholder at the time of foreclosure and therefore had standing to foreclose under Connecticut law, and since the Claimant's proof of claim relating to the Weston Property does not support a civil RICO claim, the Debtors' objection to Proof of Claim 3856 is **SUSTAINED**.

### III. CONCLUSION

For the reasons stated above, the Debtors objection to Proofs of Claim 3852, 3856, and 3860 is **SUSTAINED**. Those claims are disallowed and expunged in their entirety.

**IT IS SO ORDERED**.

Dated: November 7, 2013
  New York, New York

                              *Martin Glenn*
                              MARTIN GLENN
                              United States Bankruptcy Judge