B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

**Name of Debtor:**
Residential Funding Company , LLC

**Case Number:**
12-12019

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Thomas James La Cassse

**Name and address where notices should be sent:**
270 Park Drive
Longmeadow, MA 01106

Telephone number: (413) 272-3882    email: Homezeller1@yahoo.com

**Name and address where payment should be sent (if different from above):**

Telephone number:    email:

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
   (*If known*)

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $    26,500,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**    See attached, relating to fraudulent foreclosure.
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:** | **3b. Uniform Claim Identifier (optional):** |
|---|---|---|
| | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other
Describe:

Value of Property: $_____

Annual Interest Rate_____% ☐Fixed  or  ☐Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$_____

Basis for perfection: _____

Amount of Secured Claim: $_____

Amount Unsecured: $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/11)                                                                                      2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☑ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Laird J. Heal, Esq.
Title:  *Attorney*
Company:
Address and telephone number (if different from notice address above):  *120 Chandler St #2R*
                                                                            (Signature)  *Laird J. Heal*    Nov. 8, 2012  (Date)
*Worcester MA 01604*
Telephone number: *508-459-5088*  Email:  *laird.heal@IL-law-office.com*

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/11)                                                                                                                            3

_____ **DEFINITIONS** _____                                                                  _____ **INFORMATION** _____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

# EXHIBIT A

Itemized List

| | |
|---|---|
| Damage under Civil RICO (Settlement Demand) | $25,000,000.00 (Twenty-Five Million Dollars) |
| Property to be transferred free and clear | $400,000.00 ($100,000.00 demo plus land value) |
| Insurance coverage to be transferred | $1,100,000.00 (One Million One Hundred Thousand Dollars) |
| Agreement to transfer per above list. | See Settlement Letter |

# EXHIBIT B

LAW OFFICES OF

# DONALD M. BROWN, ESQ.

### ATTORNEY AT LAW

19 HETTIEFRED ROAD
GREENWICH CT 06831

203-359-3771  TEL.
800-636-2701  FAX

May 15, 2012

Thomas Elcock, Esq.
Prince Lobel Tye LLP
100 Cambridge Street STE 2200
Boston, MA, 02114

RE:  *Our Clients, Thomas and Joseph La Casse*
*Your Clients: GMAC Mortgage and Residential Funding*
*RFC v. La Casse*

## OFFER OF SETTLEMENT

## BY EMAIL TRANSMISSION

Dear Attorney Elcock:

Based upon our recent settlement conversation I have discussed all settlement options with my clients Thomas and Joseph La Casse regarding the property at 153 Valley Forge Road, Weston, CT, our request for settlement is $25,000,000.00 (Twenty-Five Million Dollars); and obviously as discussed this must include the property free and clear of all liens and encumbrances, with a full assignment of the most recent forced place insurance policy to my clients as assignees of the note and mortgage.

This request is made to cover the costs of the damage and destruction to this period authentic 1787 Colonial residence, caused as the result of your clients' and their employees/agents/contractors agents and preservation experts who had no lawful right of entry to the premises. We have determined that this sum will sufficiently compensate for the emotional injuries, loss of employment and other business opportunity/expectancy and the wrongful/vexatious suits and other damages to the property and our clients in addition to the thefts of personal property and fixtures from the premises belonging to my clients.

We are also taking into account the suits we intend to file that will detail Civil RICO claims under both state and federal law, in addition to the various legal malpractice claims that will inevitably follow as a result of the disclosure of the evidence GMAC was kind enough to provide us with.

LAW OFFICES OF

# DONALD M. BROWN, ESQ.

ATTORNEY AT LAW

19 HETTIEFRED ROAD
GREENWICH CT 06831

203-359-3771  TEL.
800-636-2701  FAX

There are a multitude of claims arising from gross negligence, ordinary negligence, breach of fiduciary obligations, serious tax issues with respect to the REMIC, unlawful entry to property, civil conversion of property, theft of antiquities, interference with utilities, misrepresentation, invasion of privacy, etc. (This list is not even remotely exhaustive.)

My clients would be willing to offer your client(s) three concessions: First, they would be willing to testify in any proceeding to aid your clients in the recovery of any costs; second, they would be willing to execute a confidentiality agreement regarding this claim, such as to limit or minimize your clients exposure; and third, they would be willing to waive any further claims against your clients or various parties at your direction.

I think we each know that the conduct that has taken place in this case is deplorable. I believe that it is in your client(s) best interest to give this case their utmost serious settlement considerations.

I ask that you present this offer of settlement to your clients at the appropriate level of management for their review; I look forward to hearing from you within 30 days.

Very truly yours,

Donald M. Brown, Esq.
Attorney at Law

# EXHIBIT C

| | |
|---|---|
| **RETURN DATE: JUNE 02, 2009** | : **SUPERIOR COURT** |
| **RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION** | : **JUDICIAL DISTRICT OF STAMFORD/NORWALK** |
| **VS:** | : **AT STAMFORD** |
| | : |
| **THOMAS LACASSE** | : **MAY 07, 2009** |

### COMPLAINT

1.    The Plaintiff, Residential Funding Company, LLC fka Residential Funding Corporation has an office and place of business with an address of 4 Walnut Grove Drive, Horsham, PA 19044.

2.    At all times complained of herein, the Defendant(s), Thomas LaCasse, owned real property situated in the Town of Weston, County of Fairfield and State of Connecticut known as 153 Valley Forge Road, (hereinafter the "Property") being more particularly described in Schedule A attached hereto and made a part hereof.

3.    On or about January 30, 2006, the Defendant(s), Thomas LaCasse, executed and delivered to Homecomings Financial Network, Inc., a Note (the "Note") for a loan in the original principal amount of $650,000.00.

4.    On said date to secure said Note the Defendant(s), Thomas LaCasse, did execute and deliver to Mortgage Electronic Registration Systems, Inc. as Nominee for Homecomings Financial Network, Inc., a Mortgage on the Property. Said Mortgage was dated January 30, 2006 and recorded February 08, 2006 in Volume 432 at Page 496 of the Weston Land Records. Said Mortgage was assigned to Residential Funding Company, LLC fka Residential Funding Corporation by virtue of an Assignment of Mortgage to be recorded on the Weston Land Records. The Plaintiff, Residential Funding Company, LLC fka Residential Funding Corporation, is the holder of said Note and Mortgage.

5.      Said Note is in default and the Plaintiff, Residential Funding Company, LLC fka Residential Funding Corporation as the holder of said Mortgage and Note has elected to accelerate the balance due on said Note, to declare said Note to be due in full and to foreclose the Mortgage securing said Note.

6.      The Plaintiff has provided written notice in accordance with the Note and Mortgage to the Defendant(s) of the default under the Note and Mortgage, but said Defendant(s) has failed and neglected to cure the default. The Plaintiff has elected to accelerate the balance due on said Note, to declare said Note to be due in full and to foreclose the Mortgage securing said Note.

7.      The following liens or encumbrances claim to have an interest in the Property which liens or encumbrances are prior in right to the Mortgage herein:

a.      The Town/City of Weston may claim an interest in the Property by virtue of inchoate liens for real estate taxes on the Grand Lists of October 1, 2002 and thereafter.

b.      George C. Guidera and Mark E. Harper claims an interest in the Property by virtue of a Mortgage in the amount of $103,000.00 dated December 15, 1993 and recorded on December 15, 1993 in Volume 216 at Page 145 of the Weston Land Records.

8.      There are no liens or encumbrances claiming to have an interest in the Property which liens or encumbrances are subsequent in right to the Mortgage herein.

9.      The Defendant(s) Thomas LaCasse, is the owner of the equity of redemption of the Property and, on information and belief, is in possession of the Property.

10.      The Plaintiff, Residential Funding Company, LLC fka Residential Funding Corporation, has further caused a Lis Pendens to be recorded on the Land Records of the Town of Weston. A copy of said Lis Pendens is attached hereto as Exhibit A.

11.      The Plaintiff, Residential Funding Company, LLC fka Residential Funding Corporation, has further caused a notice to be given to the Defendant(s), Thomas LaCasse, of his rights pursuant to the Statutes pertaining to unemployment and underemployment by annexing to this Writ, Summons and Complaint a copy of the notice provided for in said Statute.

WHEREFORE, the plaintiff claims:

1.  Foreclosure of the Mortgage;
2.  Possession of the Property;
3.  Money damages against the makers of, or obligors on, the Note described herein and/or their Estates, if deceased, (unless same has been precluded by virtue of a Bankruptcy filing);
4.  A reasonable attorney's fee (unless same has been precluded by virtue of a Bankruptcy filing);
5.  Interest (unless same has been precluded by virtue of a Bankruptcy filing);
6.  Costs of suit (unless same has been precluded by virtue of a Bankruptcy filing);
7.  Deficiency Judgment against the makers of, or obligors on, the Note described herein, and/or their Estate, if deceased (unless same has been precluded by virtue of a Bankruptcy filing); and
8.  Such other and further relief as the Court may deem just and equitable.

Notice is hereby given to the Defendant(s) that the Plaintiff intends to seek satisfaction of any judgment rendered in its favor in this action out of any debt accruing to said Defendant(s) by reason of their personal services, (unless same has been precluded by virtue of a Bankruptcy filing).

Dated at Hartford, Connecticut on May 07, 2009

Plaintiff

By _____
JEFFREY M. KNICKERBOCKER
Hunt Leibert Jacobson, P.C.
Its Attorneys

01625-80701

| | | |
|---|---|---|
| **RETURN DATE: JUNE 02, 2009** | : | **SUPERIOR COURT** |
| **RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION** | : | **JUDICIAL DISTRICT OF STAMFORD/NORWALK** |
| **VS:** | : | **AT STAMFORD** |
| | : | |
| **THOMAS LACASSE** | : | **MAY 07, 2009** |

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest, or property in demand is not less than $15,000.00, exclusive of interest and costs.

Plaintiff

By _____

JEFFREY M. KNICKERBOCKER
Hunt Leibert Jacobson, P.C.
Its Attorneys

01625-80701

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

| | |
|---|---|
| **RETURN DATE: JUNE 02, 2009** | : **SUPERIOR COURT** |
| **RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION** | : **JUDICIAL DISTRICT OF STAMFORD/NORWALK** |
| **VS:** | : **AT STAMFORD** |
| | : |
| **THOMAS LACASSE** | : **MAY 07, 2009** |

## NOTICE TO HOMEOWNER

If you are a homeowner, under the terms of Conn. Gen. Stat. Section 49-31d, et seq., you are hereby given notice that under those statutes, if you are UNEMPLOYED or UNDER-EMPLOYED you may make application to the Court to which this matter is returnable for relief from foreclosure. You may qualify for relief under those statutes if:

**NOTICE: A PERSON WHO IS UNDEREMPLOYED OR UNEMPLOYED AND WHO HAS FOR A CONTINUOUS PERIOD OF AT LEAST TWO YEARS PRIOR TO THE COMMENCEMENT OF THIS FORECLOSURE ACTION OWNED AND OCCUPIED THE PROPERTY BEING FORECLOSED AS SUCH PERSON'S PRINCIPAL RESIDENCE, MAY BE ENTITLED TO CERTAIN RELIEF PROVISIONS UNDER SECTIONS 49-31D TO 49-31I, INCLUSIVE, OF THE CONNECTICUT GENERAL STATUTES. YOU SHOULD CONSULT AN ATTORNEY TO DETERMINE YOUR RIGHTS UNDER SECTIONS 49-31D TO 49-31I, INCLUSIVE, OF THE CONNECTICUT GENERAL STATUTES.**

In order to qualify for relief under those statutes, you must make application for protection from foreclosure within 25 DAYS of the return date.

01625-80701
HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

## SCHEDULE A
## DESCRIPTION

ALL THAT CERTAIN piece, parcel or tract of land, with the buildings and improvements located thereon, situated in the Town of Weston, County of Fairfield and State of Connecticut, shown and designated as "Area = 2.002 Ac. +" on that certain map entitled "Map of Property Prepared For Charles E. Squires Weston, Conn. Scale: 1"=40' Feb. 15, 1993", which map is on file in the office of the Town Clerk of said Weston as Map No. 3262.

01625-80701

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589



**RETURN DATE: JUNE 02, 2009**    :    **SUPERIOR COURT**

**RESIDENTIAL FUNDING COMPANY, LLC**    :    **JUDICIAL DISTRICT OF**
**FKA RESIDENTIAL FUNDING**            **STAMFORD/NORWALK**
**CORPORATION**

**VS:**    :    **AT STAMFORD**
                :
**THOMAS LACASSE**    :    **MAY 07, 2009**

## LIS PENDENS

Notice is hereby given of the pendency of a civil action between the above-named Plaintiff and against Thomas LaCasse, by Writ dated May 07, 2009, and made returnable to the Superior Court for the Judicial District of Stamford/Norwalk at Stamford on June 02, 2009, which action is brought, inter alia, to foreclose a certain mortgage from the Defendant(s), Thomas LaCasse, to Mortgage Electronic Registration Systems, Inc. as Nominee for Homecomings Financial Network, Inc., which mortgage was dated January 30, 2006 and recorded February 08, 2006 in Volume 432 at Page 496 of the Weston Land Records.    Said Mortgage was assigned to Residential Funding Company, LLC fka Residential Funding Corporation by virtue of an Assignment of Mortgage to be recorded on the Weston Land Records.

In said action, the following items are claimed:

1.    Foreclosure of the Mortgage;

2.    Possession of the Property;

3.    Money damages against the makers of, or obligors on, the Note described herein and/or their Estates, if deceased, (unless same has been precluded by virtue of a Bankruptcy filing);

4.    A reasonable attorney's fee (unless same has been precluded by virtue of a Bankruptcy filing);

01625-80701

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET ● HARTFORD, CONNECTICUT 06120 ● (860) 808-0606 ● JURIS NO. 101589

5.    Interest (unless same has been precluded by virtue of a Bankruptcy filing);

6.    Costs of suit (unless same has been precluded by virtue of a Bankruptcy filing);

7.    Deficiency Judgment against the makers of, or obligors on, the Note described herein, and/or their Estate, if deceased (unless same has been precluded by virtue of a Bankruptcy filing); and

8.    Such other and further relief as the Court may deem just and equitable.

The property the plaintiff seeks an interest in and to is located in the Town of Weston, County of Fairfield and State of Connecticut, and is known as 153 Valley Forge Road, Weston, Connecticut, and is more particularly bounded and described as set forth in Schedule A attached hereto.

Dated at Hartford, Connecticut on May 07, 2009

Plaintiff

By____//____ JEFFREY M. KNICKERBOCKER
        JEFFREY M. KNICKERBOCKER
        Hunt Leibert Jacobson, P.C.
        Its Attorneys

## SCHEDULE A
## DESCRIPTION

ALL THAT CERTAIN piece, parcel or tract of land, with the buildings and improvements located thereon, situated in the Town of Weston, County of Fairfield and State of Connecticut, shown and designated as "Area = 2.002 Ac. +" on that certain map entitled "Map of Property Prepared For Charles E. Squires Weston, Conn. Scale: 1"=40' Feb. 15, 1993", which map is on file in the office of the Town Clerk of said Weston as Map No. 3262.

01625-80701

HUNT LEIBERT JACOBSON, P.C. ● ATTORNEYS AT LAW
50 WESTON STREET    ●    HARTFORD, CONNECTICUT 06120    ●    (860) 808-0606    ●    JURIS NO. 101589

State of Connecticut                    SS: Hartford                    5/11/2009

County of Hartford

Then and by virtue hereof, and by direction of the Plaintiff's Attorney, I left a true and attested verified copy of the within original JD-CV-103 NOTICE, FORECLOSURE MEDIATION NOTICE TO HOMEOWNER, FORECLOSURE MEDIATION REQUEST, WRIT, SUMMONS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, NOTICE, SCHEDULE A and EXHIBIT at the office of Susan Bysiewicz, Secretary of State, Statutory Agent for Service and duly authorized to accept service on behalf of the within named Defendant, and paid statutory fees in the amount of $25.00

Thomas LaCasse

And afterwards, on the 11th of May, 2009, a true and attested verified copy of the within original JD-CV-103 NOTICE, FORECLOSURE MEDIATION NOTICE TO HOMEOWNER, FORECLOSURE MEDIATION REQUEST, WRIT, SUMMONS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, NOTICE, SCHEDULE A and EXHIBIT with an endorsement thereon of service upon the Connecticut Secretary of State, was deposited in the U.S. Mail, Wethersfield, Certified Mail and Return Receipt Requested, addressed to the within named Defendant

Thomas LaCasse

133 Colony Road

Longmeadow, MA 01106

And afterwards, on the 11th of May, 2009, a true and attested verified copy of the within original JD-CV-103 NOTICE, FORECLOSURE MEDIATION NOTICE TO HOMEOWNER, FORECLOSURE MEDIATION REQUEST, WRIT, SUMMONS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, NOTICE, SCHEDULE A and EXHIBIT with an endorsement thereon of service upon the Connecticut Secretary of State, was deposited in the U.S. Mail, Wethersfield, Regular Mail, addressed to the within named Defendant

Thomas LaCasse

133 Colony Road

Longmeadow, MA 01106

The within is the original JD-CV-103 NOTICE, FORECLOSURE MEDIATION NOTICE TO HOMEOWNER, FORECLOSURE MEDIATION REQUEST, WRIT, SUMMONS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, NOTICE, SCHEDULE A and EXHIBIT with my doings hereon endorsed.

Case: 17131 , Return 0

**Fees:**

| | |
|---|---|
| Service | $60.00 |
| Copies/Pages | $42.00 |
| Secretary of State | $25.00 |
| Postage/Overnight Mail | $9.00 |
| 10 Miles | $5.50 |
| Endorsements | $4.00 |
| **Total Fees** | **$145.50** |

Attest

John T. Fiorillo
Connecticut State Marshal
Hartford County

Case: 17131 , Return 0

# EXHIBIT D

| DOCKET NO. CV - 09- 5011591 S | : | **SUPERIOR COURT** |
| **RESIDENTIAL FUNDING COMPANY LLC** | | |
| | : | **JUDICIAL DISTRICT OF STAMFORD / NORWALK** |
| **VS:** | | |
| | : | **AT STAMFORD** |
| **THOMAS J. LA CASSE** | : | **NOVEMBER 11, 2011** |

# MOTION TO VACATE JUDGMENT AND DISMISS WITH PREJUDICE

The Defendant, Thomas J. La Casse, in the above-entitled action respectfully files his Motion To Vacate the Foreclosure Judgment entered by this Court, in favor of the Plaintiff <u>Residential Funding Company LLC</u> in the stated action. The Defendant seeks relief from said Judgment and a Dismissal of Action with Prejudice based on fraud and unconscionability committed within this lawsuit, as well as clear known misrepresentations, gross misconduct, and unfair trade practices. The Defendant moves the court for reversal of judgment and dismissal with prejudice as new found evidence, and the discovery of fraud have caused the existing foreclosure judgment to become void as a matter of law and a lack of subject matter jurisdiction for this Court to proceed. The more particular grounds for granting of this motion are set forth below:

## JURISDICTION OF THE SUPERIOR COURT OF STAMFORD

In the State of Connecticut our own Supreme Court and Appellate Court have clearly shown an intolerability in foreclosure actions to fraudulent conduct and unconscionable actions taken and/or made by Plaintiffs seeking foreclosure. The discovery of fraud, and such showing of unfair, inequitable, and unconscionable conduct gives rise to the

**ORAL ARGUMENT REQUESTED**
**TESTIMONY IS REQUIRED**

(2)

ultimate power and jurisdiction of our Connecticut Courts to vacate judgments achieved

by fraudulent means, regardless of whether such discovery was made before or after 4

Months following entry of judgment.  Connecticut Law is well established, in that

**Judgments obtained by fraud can be attacked at any time** (See 180 C. 129, 130.

Cited. 181 C. 463, 466-469.) A motion to open and vacate a judgment is addressed to

the court's discretion.  Cited within Connecticut General Statute 52-212, is the

jurisdictional fact that, the **"Court has intrinsic power, independent of statutory**

**provision, to vacate any judgment obtained by fraud, duress or mutual mistake.**

**78 CA 684."**  Our Connecticut legislature did not intent to protect judgments that are

later found to be inequitable, unjust, and founded upon a fraud.


"that judgment is void and may be attacked at any time in the same or any other court,
by the parties or by any other person who is affected thereby.". It is also clear and well
established law that a void order can be challenged in any court any time." *People v
Wade*, 116 Ill.2d 1, 506 N.E.2d 954 (1987)

## I.  MERS Assignment Is Legally Void

1. The alleged Plaintiff, Residential Funding Company, claims a right of entitlement
   and ownership of the alleged note and mortgage by virtue of an assignment,
   which was unlawfully transacted by Mortgage Electronic Registration Systems,
   Inc. (MERS).

2.  MERS has at all times represented itself to be a "nominee", who by mere
   definition is virtually powerless; and as "nominee" is named to act in an extremely
   limited capacity for another.  MERS in its own charter claims to be a nominee for
   the purpose of electronically tracking mortgages.

3. Numerous recent Court rulings across the United States have vitiated MERS
   alleged self appointed authority to assign notes and mortgages.

(3)

4. The consistent Court decisions from Arkansas, Idaho, Nevada, Vermont, New York, South Carolina, California, and others have dismissed MERS' purported "authority" to assign.  Clearly the message to MERS and Foreclosure Plaintiffs is that simply MERS cannot assign and/or sell anything which it does not own and have a real substantive interest in (See Supreme Court of Arkansas matter of *Mortgage Electronic Registration Systems, Inc. (MERS) v. Southwest Homes of Arkansas,* 2009 WL 723182 (Ark.).

5. These recent and timely court rulings find that MERS' alleged "authority" to assign, file foreclosure actions, and/or seek foreclosure as a Plaintiff is unlawful and a fairy tale solely designed by MERS, foreclosure mill law firms, "trustees" of securitized mortgage loan trusts, and other purported MERS "assignees" for the express purpose of perpetrating a fraud upon the courts and a theft upon borrowers.

6. MERS never had any ownership and/or other interest in the alleged "note" pertaining to the subject La Casse property located at 153 Valley Forge Road, Weston, CT 06883.  The unconscionable conduct by MERS to purport to assign and/or sell the alleged La Casse note and mortgage is a fraud and constitutes criminal misconduct categorized as Grand Larceny as recently stated then Ohio Attorney General Richard Cordray.

7. MERS is not licensed as a Bank/Lender, nor did it hold such necessary licenses in Connecticut on or about July 25, 2009 when it purported to have assigned and sold an alleged La Casse mortgage and note to Residential Funding Company,LLC.  MERS was acting in the capacity of a Lender/Bank in unlawfully transacting said assignment/sale despite the fact that it had no authority by the

(4)

Connecticut Department of Banking to do so; such conduct violates the

Connecticut Unfair Trade Practices Act, C.G.S. Sec. 42-110(b), and without

limitation other Federal, State, and local laws.

## II. **PLAINTIFF LACKED STANDING TO BRING THIS ACTION**

1. The Complaint in this action is a known misrepresentation and the claims of

   ownership and possession of the alleged note and mortgage at the time of filing

   are a falsehood.

2. At the time of filing of this action on May 18, 2009 the alleged MERS Assignment

   did not exist, making paragraph 4 of the Complaint a material misrepresentation.

   In paragraph 4, Plaintiff falsely states that "said mortgage was assigned to

   Residential Funding Company". Plaintiff knew such claims to be false, as the

   alleged Assignment was not yet manufactured and signed until July 25, 2009.

   The alleged assignment was created more than two (2) months after the date of

   the complaint, which was dated May 7, 2009.

3. The Plaintiff is not the owner of the alleged note, and failed to evidence at time of

   filing that said alleged instrument was specifically endorsed, dated, and assigned

   to Residential Funding Company, LLC. Moreover, Plaintiff additionally failed to

   attach to its complaint a copy of such alleged "note" as purported to have been

   owned and possessed by plaintiff in the Complaint.

4. The Defendant, Thomas J. La Casse, and the Court cannot rely on the date of

   the alleged Assignment of Mortgage to determine when the Plaintiff may have

   come into possession of the alleged "note", as the assignment did not exist at the

   commencement of this action. Additionally, there is no properly endorsed and

   dated note that has been produced to this Court, thus, it is indeterminate as to

   when the Plaintiff came into possession of the alleged "note".

(5)

5. The operation of Connecticut General Statute 49-17 does not apply in this case, and the Plaintiff cannot claim protection and standing based on the law of Sec. 49-17.  Though Connecticut has ruled that the mortgage follows the note, in this instance the mortgage assignment did not exist, and could not follow the alleged note.  In the appellate case of _Fleet National Bank v. Vijay J. Nazareth, et. al._ (AC 22610), the appellate Court found with respect to C.G.S. 49-17, that, "Our legislature, however, has not passed similar legislation that would give the holder of the mortgage, without having been **assigned the note**, the ability to foreclose on the property."  The Appellate Court in its decision stated, "We conclude, therefore, that the legislature did not intend to permit the holder of the mortgage, without having been assigned the note, the ability to foreclose on the property."  The judgment in <u>Fleet v. Nazareth</u> was thereby ordered vacated and the case remanded to the trial court with direction to render judgment dismissing the action.

6. In the instant matter of _Residential Funding Company v. Thomas J. La Casse_, the Plaintiff had no proof that it was assigned either the alleged mortgage or the note at the time the action was commenced on May 18, 2009, leaving the Plaintiff without the proper standing necessary to invoke the jurisdiction of the Superior Court Of Stamford.

### III. <u>SUPERIOR COURT OF STAMFORD LACKS SUBJECT MATTER JURISDICTION TO CONTINUE THIS CASE AND PERMIT FORECLOSURE</u>

1. The Superior Court in this instant case unknowingly and vulnerably relied upon the deceitful material misrepresentations of Plaintiff, Residential Funding Company, LLC and its Complaint in granting a default judgment in its favor in this action on September 2, 2009.

(6)

2. The Court particularly relied upon the fallacious representation that Residential Funding Company, LLC was the rightful owner of the alleged note when it granted Judgment Of Strict Foreclosure in favor of plaintiff, when in fact plaintiff never presented to this Honorable Court as evidence that an original alleged "note" was specifically endorsed, dated, and assigned to it prior to the commencement of this action.

3. There exists no substantiation in this lawsuit of a valid "chain of title" that links Residential Funding Company (alleged assignee) to any alleged assignor having prior true ownership of the alleged "note".

4. In addition to the non-existence of a properly endorsed, dated, and assigned "note", Plaintiff has professed and offered as proof of standing an alleged Assignment Of Mortgage from "MERS" – Mortgage Electronic Registration Systems, created after the filing of this action. The Superior Court Of Stamford lacks jurisdiction to rely on the MERS assignment to allow foreclosure of Defendant's home and principal residence. The alleged MERS assignment to Residential Funding Company, LLC is an instrument of fraud, first, as MERS who is soley a "nominee" never had any "real" ownership interest in the alleged "note" and mortgage it was purporting to sell and assign. Even if MERS did have a definable legal interest in the alleged "note" and "mortgage", Defendant points out that MERS was not licensed by the State Of Connecticut to perform and/or otherwise act as a Lender/Bank.

5. The unlawful MERS Assignment has the effect of legally causing an irreversible fatal rupture in the alleged "Chain Of Title."

(7)

### Jeffrey Stephan Instruments Are Fraudulent

6. The Superior Court must not participate in an operative fraud. In addition to the
   invalid MERS assignment, said instrument was alleged to have been created and
   authorized by **Jeffrey Stephan**, who is nationally known as one of the most
   notorious and infamous "Robo-Signors" and conspirators of fraud. This
   Honorable Court lacks any just authority or jurisdiction to rely on an ***Assignment***
   ***Of Mortgage*** transacted for MERS by **Jeffrey Stephan**, who has confessed in
   written deposition testimony that he has no "personal knowledge" of anything he
   allegedly signs. Stephan has further confessed that such alleged instruments
   are not signed in front of a notary, further invalidating the document(s). Such
   shocking testimony is inclusive and married to any document presented to this
   court bearing the alleged signature of **Jeffrey Stephan**.

7. The Superior Court in granting Plaintiff its Judgment Of Strict Foreclosure
   innocently relied on the fraudulent ***Affidavit Of Debt*** manufactured and alleged
   to have been signed by **Jeffrey Stephan**, confessed "Robo-Signor". Stephan,
   who admitted to having no knowledge of anything he signs in deposition
   testimony, has deceitfully and fraudulently claimed in the instant La Casse case
   and subject ***Affidavit Of Debt*** to being personally familiar with alleged debt,
   books and records in the La Casse matter.

8. The conspiratory participation in the Fraud Upon This Court by Jeffrey Stephan is
   unconscionable and a clear showing of fraudulent intent to the Court. In
   comparing the allegations and representations made by Stephan in the alleged
   Assignment of Mortgage and the Affidavit Of Debt, the Court must find the
   conflicting corporate roles and titles spurious and meant to deceive. Professedly,
   on July 25, 2009, Jeffrey Stephan claims in the alleged Assignment Of Mortgage

(8)

to be the Vice President of Mortgage Electronic Registration Systems (MERS) as nominee for Homecomings Financial Network, Inc. Conflictingly, Stephan later admits in this lawsuit purportedly on January 7, 2010, in the Affidavit Of Debt to being an Officer and Loan Servicing Agent for GMAC on behalf of Plaintiff Residential Funding Company, LLC. It is not legally possible for Jeffrey Stephan to be representing as an officer both the alleged Assignor and Assignee in the same transaction.

9. That the Court on its own motion make an Order that the Plaintiff, Residential Funding Company/GMAC fully disclose and produce the complete employment history of Jeffrey Stephan for the past Five (5) Years. The precedent setting Judge Arthur Schack of the Kings County Supreme Court of New York has recently Dismissed numerous foreclosure suits with prejudice, many of which citing Plaintiff misconduct, and conflicting employment histories, and/or other lack of personal knowledge by nationally known Robo-Signors such as Erica Johnson Seck and Jeffrey Stephan.

10. That in the absence of a complete Dismissal With Prejudice of this action after Hearing of this motion, the Court Order Depositions be taken, and all necessary post-judgment discovery, inclusive of Ordering the appearance of Jeffrey Stephan in this Court, to insure that the rights of Defendant is protected, and the fraudulent, and/or criminal misconduct of Jeffrey Stephan and other perpetrators are fully exposed. It is essential that this Honorable Court set parameters so that the testimony of Jeffrey Stephan is admissable as evidence to this particular case, as well as being connected and married to the systematic wrongdoing and fraud perpetrated by Stephan throughout the country.

(9)

11. The alleged witnesses to the execution of the purported Jeffrey Stephan

Assignment Of Mortgage are unknown, and all such offered signatures are

completely illegible.  Further, Defendant Thomas La Casse, by the Law Offices

of David Scalzi sent written, certified communications to alleged Pennsylvania

Notary Nikole Shelton (alleged Notary on the subject Jeffrey Stephan/MERS

Assignment), requesting the Notary Log for the date of July 25, 2009, and

neither Ms. Shelton or her Record Book could be found, providing Plaintiff with

any validation of the alleged execution of the Stephan/MERS Assignment.

### IV. <u>Unconscionability</u>

1. The acts and practices of the Plaintiff Residential Funding Company, et

al within this foreclosure action, along its agents, sub-agents, and/or other

employees or person(s), as described above and throughout this motion

constitutes conduct the nature which is Unconsionable.

2. In Connecticut, the showing of Unconsionable Conduct to the Court, particularly

Plaintiff misconduct, and/or those of its agents, sub-agents, and/or other

perpetrators or person(s) is reason in itself for witholding of foreclosure based

upon equitable grounds and principles.  Our own Connecticut Supreme Court

has clearly long-since established that inequitable and unconscionable conduct

gives rise to a Court's authority to withold foreclosure. *"Other equitable defenses*

*that our Supreme Court has recognized in foreclosure actions include*

*unconsionability"* <u>New Haven Savings Bank v. LaPlace</u> (AC 21388)(2001).

3. The Plaintiff had full knowledge, and concealed from the Court and

Defendant such knowledge, that it did not in fact have proper legal standing to

bring the instant action.  Knowing that there was no proper "chain of title", and

specifically a "note" which was particularly endorsed, dated, signed and properly

(10)

assigned to Plaintiff prior to the filing of this action, Residential Funding

Company proceeded to construct and file its sham Complaint and action with

calculated fraudulent intent to decieve and mislead this Honorable Court.

4. The knowingly false and fraudulent instruments; the **Affidavit Of Debt**, and

   **Assignment Of Mortgage**, created and allegedly executed by Jeffrey

   Stephan, a notorious nationally known "Robo-Signor", systematically filed,

   and/or otherwise presented to this Court by Plaintiff in this  case on multiple

   occasions represents fraudulent, and/or criminal    misconduct.

5. That this Honorable Court innocently and unknowingly relied upon the

   misrepresentations of the above stated parties and Jeffrey Stephan, who

   admits to having no "personal knowledge" of anything he signs.  Such acts of

   deceit, concealment and unconscionable conduct caused this Court to err in

   earlier finding Judgment in favor of said Plaintiff.

6. That this Honrable Court lacks Subject Matter Jurisdiction to continue to rely

   on Affidavits Of Debt and an Assignment Of Mortgage which as of this date

   have been shown to be false, untrue, innaccurate, unverifiable, and

   misrepresentations.

7. This Court must follow the established precedent set by the Connecticut

   Supreme Court regarding unconsionability, and find that the systematic filings,

   and usage of multiple false documents in this case by alleged Plaintiff and/or

   its agents should be sanctioned with a Dismissal With Prejudice at a minimum

   as relief for such inequities.  As referenced earlier, the former Ohio Attorney

   General Richard Cordray, currently Chief of Enforcement at the Consumer

   Financial Protection Bureau firmly stated on Bloomberg TV, *"I Think  that if*

(11)

*people deliberately filed false papers in a court and they did it on a systematic*

*basis that could well be criminal misconduct, absolutely."*

## V. Fraud

1. The acts and practices of the alleged Plaintiff Residential Funding Company, et

   al within this foreclosure action, along with its agents, sub-agents, and/or other

   employees or person(s), as described above and throughout this motion

   constitutes conduct the nature which is Fraudulent.

## VI. Unfair Trade Practices

1. The acts and practices of Plaintiff, Residential Funding Company, et al, in

   conjunction and association with its agents, sub-agents, and/or other employees

   or person(s) as described and outlined above and throughout this motion

   constitutes conduct the nature which is in violation of the Connecticut Unfair

   Trade Practices Act, C.G.S. Sec. 42-110(b).

2. Defendant apprises the Court, that in addition to the unfair and unconscionable

   acts as described throughout this motion, it is maintained and believed that the

   Plaintiff in this action, Residential Funding Company together with its agents

   and/or sub agents have committed unlawful acts which have injured Defendant

   and his family, are believed to be illegal, repeated instances of criminal

   misconduct, should be sanctioned, and further referred to higher authorities for

   continued investigation.

3. Defendant has filed numerous police reports, with the town of Weston,

   Connecticut Department of Police, pertaining to the Plaintiff's unlawful and unfair

   acts which are directly tied to this lawsuit. It is maintained and reported to local

   police that Plaintiff and its agents have changed the locks 5 Times on

(12)

Defendant's home illegally, fraudulently, and without any permission, legal authority, and/or an Order of the Court.

4. Plaintiff and its agents twice unlawfully changed the locks on Defendant's home while Defendant was under the Protection of the Bankruptcy Court and a Federal Stay.

5. At all times Plaintiff and its agents changed the locks and denied Defendant and his family entry to their family home, when no law date, sale date, and/or other vesting of title to Plaintiff had taken place. On all Five (5) occasions, the locks were changed without permission or knowledge of any Federal or State Court.

6. While under Bankruptcy Protection, Plaintiff refused to return the keys after changing the locks, after four (4) months of repeated requests by Defendant and his attorney.

7. Plaintiff together, and in concert with its agents put padlocks on the guest house and shed, as well as changing the locks on the main house, blocking Defendant and his family all means of entry and habitation of their shelter and family residence.

8. On two occasions, while changing the locks Plaintiff together and in concert with its agents illegally ransacked the interior of the Defendant's home and unlawfully removed numerous antiques and other property valued at $600, 000. Every episode where the locks were unlawfully changed, valuable personal property was taken without any order or direction of the Court or Police authorities. Defendant has itemized and provided Police with a list of some of the stolen property.

(13)

9. Plaintiff caused great damage, monetarily and emotionally, by its illegal actions of changing locks and taking possession of Defendant's home.  Numerous windows were broken, and ruinous damage was caused to the interior and exterior of the property.  Plaintiff further failed to adhere to its responsibility to care for the property after unlawfully changing the locks.

10. The numerous and repeated unlawful attempts to take possession of the Defendant's home, vandalism, and theft of property was outside of, and above the laws of the United States of America, and State Of Connecticut.

11. The Defendant's Constitutional Rights as promised in the United States Constitution have been violated and denied by Plaintiff's actions.

**WHEREFORE,** based upon all the above cited facts and information, Defendant believes and maintains that this foreclosure lawsuit was filed with fraudulent and deceptive means.  The conduct as described above is maintained to be unconscionable, unlawful, and possibly criminal in nature; such acts and practices that are grounds for withholding of foreclosure as stated by our Connecticut Supreme Court. Defendant further denies that the Plaintiff had standing to bring or maintain this foreclosure action.  Defendant looks upon the fair and equitable powers of this Court to Dismiss this Foreclosure Action with Prejudice for all the reasons as set forth above.

**The Defendant**
*Respectfully Submitted,*

By:_____-042191-_____
Paul S. Nakian, Plaintiff's Attorney

90 Campbell Drive
Stamford, CT  06903
Tel: 203-357-7777 - Office
        203-356-9490 – Fax
Email: NakianLaw@aol.com

Juris #042191

(14)

# ORDER

The foregoing Defendant's Motion To Vacate Judgment And Dismiss With Prejudice
having been presented to the court;

It is hereby ORDERED:  **GRANTED  /  DENIED**

By the Court:

_____
Clerk / Judge

Date of Order: _____

## CERTIFICATION OF SERVICE

The Defendant, Thomas J. La Casse, hereby certifies that a true and correct copy of the

foregoing Motion To Vacate Judgment And Dismiss With Prejudice has been

furnished via U.S. First Class Mail on November 11, 2011 to the office of the

Plaintiff's counsel Hunt Leibert Jacobson, PC, at the address of 50 Weston

Street, Hartford, CT  06120.


**The Defendant**
*Respectfully Submitted,*

By:_____-042191-_____
Paul S. Nakian, Plaintiff's Attorney

90 Campbell Drive
Stamford, CT  06903
Tel: 203-357-7777 - Office
     203-356-9490 – Fax
Email: NakianLaw@aol.com

Juris #042191

# EXHIBIT E

| DOCKET NO. CV - 09- 5011591 S | : | **SUPERIOR COURT** |
|---|---|---|
| **RESIDENTIAL FUNDING COMPANY LLC** | | |
| | : | **JUDICIAL DISTRICT OF STAMFORD / NORWALK** |
| **VS:** | | |
| | : | **AT STAMFORD** |
| **THOMAS J. LA CASSE** | : | **NOVEMBER 11, 2011** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO VACATE JUDGMENT AND DISMISS WITH PREJUDICE

The Defendant, Thomas J. La Casse, in the above-captioned matter files his Memorandum Of Law In Support Of Defendant's Motion To Vacate Judgment And Dismiss With Prejudice.

The Superior Court has the ultimate power and jurisdiction to vacate the judgment entered in this foreclosure matter and dismiss said case with prejudice, as Plaintiff brought the instant action knowing that it lacked standing to invoke the jurisdiction of the Court. Plaintiff has failed to evidence that it was the owner and in possession of the alleged "Note" at time of filing, and that it was properly endorsed, and included a certain date of assignment making it indeterminate when and if Residential Funding Company was ever the rightful and legal owner. The filing of this action with unlawful purpose to seek foreclosure of Defendant's, Thomas J. La Casse, home without standing is inequitable and unconscionable. Our Connecticut Supreme Court has found that acts of unconscionability, and deceptive filing of an action of foreclosure without legal sufficiency and ownership of a note and mortgage is grounds for withholding of foreclosure and dismissal with prejudice.

"Because a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to ensure that complete justice is done." City

(2)

Savings Bank v. Lawler, 163 Conn. 149, 155, 302 A.2d 252 (1972); Hartford Federal

Savings & Loan Assn. V. Lenczyk, 153 Conn. 457, 463, 217 A.2d 694 (1966).

The inequity of Plaintiff's seeking foreclosure without proper standing and an

unenforceable "note" has stripped the Court of its Subject Matter Jurisdiction, and thus

has irreparably harmed the Defendant. "Equity will not afford its aid to one who by his

conduct or neglect has put the other party in a situation in which it would be inequitable

to place him." Bassett v. City Bank & Trust Co., 116 Conn. 617, 630, 165 A. 557.

The very recent Connecticut Appellate case of PHH Mortgage Corporation v. Melissa

Cameron, Et Al (AC 32560), July 19, 2011, illuminates the point that if the trial court

renders a judgment or other decision where it has no jurisdiction, such erroneous ruling

becomes powerless. "If the trial court issues a decision on the merits of a case over

which it lacks subject matter jurisdiction, the decision constitutes an advisory opinion."

Statewide Grievance Committee v. Rozbicki, supra, 246; Shockley v. Okeke, supra 85;

Lindo v. Lindo, 48 Conn. App. 645, 651, 710 A.2d 1387 (1998). "Such an opinion is not

a judgment and is not binding on anyone." Shockley v. Okeke, supra 85.   The Plaintiff

at all times alleged it had standing, although no evidence was affixed to the Complaint

and/or otherwise provided to the Defendant and this Court.  Plaintiff has further failed to

provide an original "note" with  a particular "date" of endorsement.  The Court innocently

relied upon unverifiable allegations, and misrepresentations of standing to grant

judgment in favor of Plaintiff.

"A court cannot confer jurisdiction where none existed and cannot make a **void**

proceeding valid. It is clear and well established law that a **void** order can be

challenged in any court", Old Wayne Mut. L. Assoc. v. Mcdonough, 204 U. S. 8, 27 S.

Ct. 236 (1907).

(3)

"Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." Doe v. Roe, 246 Conn. 652, 661, 717 A.2d 706 (1998).  "A claim that the court lacks subject matter jurisdiction may be raised at any time." Dowling v. Slotnik, 244 Conn. 781, 787, 712 A.2d 396 (1998).  "Once the question of lack of jurisdiction of a court is raised, it must be disposed of no matter in what form it is presented . and the court must fully resolve it before proceeding further with the case." Figueroa v. C & S Ball Bearing, 237 Conn. 1, 4, 675 A.2d 845 (1996).  "The plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." Fink v. Golenbock, 238 Conn. 183, 199 n.13, 680 A.2d 1243 (1996).

In the recent Connecticut Appellate decision of JP Morgan Chase Bank, N.A. v. Ann C. Zubretsky, Et Al. (AC 31573), July 12, 2011, the issue of the lack of subject matter jurisdiction was noted, judgment was reversed, and case remanded with direction to dismiss the matter for lack of subject matter jurisdiction.  The Appellate Court stated, "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) Ajadi v. Commissioner of Correction, 280 Conn. 514, 532–33, 911 A.2d 712 (2006).

(4)

In the Connecticut Appellate matter of <u>Park National Bank v. 3333 Main, LLC</u>, 127 Conn. App. 774 (2011) (AC 32300) the Judgment of foreclosure was reversed where the Plaintiff's standing was found to be indeterminate.  The Appellate Court noted, "Because we conclude that, under the facts of this case, the court should have conducted an evidentiary hearing to determine the issue of the plaintiff's standing, we reverse the judgment of the trial court and remand the case for further proceedings." The judiciary in the *Park National Bank v. 3333* Main case found that the trial court improperly ruled upon the Plaintiff's motion for summary judgment without first resolving the factual issue of when the plaintiff took ownership and control of the note and, thus, whether it had subject matter jurisdiction.  "This court has recently concluded that when the jurisdiction of the court hinges on a factual determination regarding the plaintiff's status as holder of the note at the time of the commencement of the action, the court must determine the pertinent facts necessary to ascertain whether jurisdiction existed and rule on the issue of standing before addressing the merits of the controversy." <u>Equity One v. Shivers</u>, 125 Conn. App. 201, 206, 9 A.3d 379 (2010); see also <u>Deutsche Bank National Trust Co. v. Bialobrzeski</u>, 123 Conn. App. 791, 799-800, 3 A.3d 183 (2010); <u>LaSalle Bank, National Assn. V. Bialobrzeski</u>, 123 Conn. App. 781, 789-90, 3 A.3d 176 (2010).

In the *Park National Bank v. 3333 Main* Appellate Case (2011), the Judiciary relevantly stated, "In light of the documents before the court, showing discrepancies as to the <u>date of the transfer of the note</u>, as well as the defendant's argument that the plaintiff had not demonstrated that it was the holder of the note when this complaint was filed, the court improperly formed a legal conclusion without establishing the factual predicate for the court's subject matter jurisdiction."  The Appellate Court then reversed

(5)

the judgment and remanded the case to the trial court for an evidentiary hearing to

ascertain the plaintiff's status as the owner or holder of the note at time of filing.

Defendant, Thomas J. La Casse, vehemently maintains that the Plaintiff in this matter,

Residential Funding Company sued Defendant, and sought to invoke the jurisdiction of

this Court, knowing at the time of filing that there was none.

   **WHEREFORE**, for all the reasons and relevant case law as factually stated above, in

association with the Defendant's Motion To Vacate Judgment And Dismiss With

Prejudice, combined with the unlawful acts of unconscionability, unfair trade practices,

and possible criminal misconduct with respect to unlawful possession of Defendant's

home, and alleged theft of property, Defendant respectfully asks that this foreclosure

action be Dismissed With Prejudice.

**The Defendant**
*Respectfully Submitted,*

By:_____-042191-_____
Paul S. Nakian, Plaintiff's Attorney
90 Campbell Drive
Stamford, CT  06903
Tel: 203-357-7777 - Office
      203-356-9490 – Fax
Email: NakianLaw@aol.com

Juris #042191

(6)

## CERTIFICATION OF SERVICE

The Defendant, Thomas J. La Casse, hereby certifies that a true and correct copy of the

foregoing Memorandum Of Law has been furnished via U.S. First Class Mail on

November 11, 2011 to the office of the Plaintiff's counsel Hunt Leibert Jacobson,

PC, at the address of 50 Weston Street, Hartford, CT  06120.

### Certification Of Service By The Defendant:

-    042191    -

_____

Thomas J. La Casse
By Paul S. Nakian his counsel

# EXHIBIT F

| | | |
|---|---|---|
| Docket No. CV -09-5011591 S | : | SUPERIOR COURT |
| RESIDENTIAL FUNDING COMPANY LLC | : | Judicial District of |
| | | Stamford/Norwalk |
| VS: | : | At Stamford |
| Thomas J. La Casse | : | February 7, 2012 |

### Affidavit of Thomas J. La Casse

Thomas J. La Casse, being duly sworn, deposes and says:

1. I am the defendant in the above entitled action and the owner of 153 Valley Forge Road property, located in Weston, Connecticut.

2. My attorneys have this date filed and Objection and Reply reference the travesties committed by robo signers, the MERS assignment and Federal Bankruptcy violations in detail and I refer to these pleadings.

3. I also refer to pleadings by Plaintiff which uses the word "scheme" because of my Federal Bankruptcy filings. The illegal actions of Plaintiff have forced me to file for bankruptcy and my filings are a right afforded every citizen by the Constitution of the United States of America.

4. This right was grossly and purposefully violated by Plaintiff Residential Funding Company, LLC and its agents.

5. I was defrauded of my civil rights by one Jeffrey Stephan, a notorious robo signer, as set forth in pleadings and exhibits filed by my attorneys this date and in earlier pleadings.

6. Due to such criminal actions my life has been greatly compromised.

7. My property in Connecticut has been vandalized, ransacked, stolen, abused and neglected by Plaintiff—all to great harm to me and my family. This has also had a devastating effect on my 92 year old mother, who has lost family heirloom of substantial value. She has witnessed the psychological, emotional and financial devastation to her family and in particular to me and my brother Joseph La Casse, brought about by the fraud and criminal acts of one Jeffrey Stephan and Plaintiff Residential Funding Company, LLC and their agents in their scheme to defraud me and the court system of the State of Connecticut.

8. Due to the actions of Jeffrey Stephan and Residential Funding I was forced to declare bankruptcy in an attempt to protect myself and property. However, even with the Federal protection laws afforded by a Bankruptcy filing I was not protected and sundry civil and human rights were violated on numerous occasions by Plaintiff and its agents. Twice under Bankruptcy protection Plaintiff and its agents broke into my house, changed the locks, and in process destroyed and stole personal property in excess of $380,000 (see Exhibit A). On three other occasions they broke into my house, stole property of obvious great value and changed the locks to my house, the guest house and cottage. The house was vandalized, ransacked and property in excess of an additional $250,000, either stolen by Plaintiff's agents or destroyed by Plaintiff and/or its agents due to inattention, outright theft by its agents and gross disregard to my rights. Plaintiff and/or its agents broke into my house without court sanction or seeking permission from this court to do so.

9.  The foregoing took place both when I was in Bankruptcy protection and when I was not under
    Bankruptcy protection, despite the fact it was Plaintiff's responsibility to maintain the property,
    secure it and keep it free from harm.  Despite this responsibility they allowed the property to be
    deteriorate, lose 80-90% of its value—all due to its neglect, vandalism and highhanded abuse
    with no regard to the owner of the property nor to the antique and other furnishing and
    equipment that was within this property that was in the process of being renovated.

10. In my efforts to preserve the property I have made six or more reports as to the thefts and
    vandalism to the Weston Police Department. Each and every time my civil rights were violated
    the Weston Police Department advised me this was a civil matter between Plaintiff and me and
    that my rights rested in my bringing action against Plaintiff and its agents.

11. It is especially egregious that much of the foregoing occurred while I was under Federal
    Bankruptcy protection. For example, in November, 2010, while still under Federal Bankruptcy
    protection, under a Court Order from Federal Bankruptcy Judge Henry J. Boroff, Plaintiff broke
    into my home, changed the locks on the house, padlocked my guest house and cottage to bar
    me from entry, ransacked the house and removed additional items of value. In addition, Plaintiff
    filed an illegal motion to reinstate the law days. As noted herein, further detail is set forth in my
    Reply of even date, February 7, 2012, filed today with the Superior Court, seeking that the
    Judgment against me be vacated and dismissed with prejudice.

12. Further, I dispel and refute the presumption that the Plaintiff Residential Funding Company, LLC,
    was the Holder in Due Course of the alleged note and legally entitled to claim to be "the real
    party in interest".

13. Under information and belief it is further denied that the stated Plaintiff had any legal authority,
    including but not limited to physical possession of an original alleged promissory note, at the
    time the action was commenced against me.  On information and belief the alleged original note
    has never been presented to me and/or the court during the pendency of this action, more
    specifically prior to and as part of the entry of judgment in this matter.
    I am forty nine (49) years of age and understand the obligations of an oath and make the
    foregoing Affidavit freely and with knowledge of what is stated herein.

_Thomas La Casse_
Thomas J. La Casse

Subscribed and sworn to before me this 7th day of February, 2012.

_Paul S. Nakian_
Paul S. Nakian, Commissioner of the Superior Court: Juris # 042191

Partial List of Stolen or damaged property owned by Lacasse family
Stolen/damaged at 153 Valley Forge Road, Weston, CT

| Item No. | Description | Replacement Estimate |
|---|---|---|
| 1 | antique New England rod back Windsor rocking chair | 2,500.00 |
| 2 | baseball card collection located in ten shoeboxes | 8,500.00 |
| 3 | mahogany half-round entrance table with in-lay | 550.00 |
| 4 | antique Chinese rug, 12 x 14 red and blue | 5,600.00 |
| 5 | Mashad Iranian wool rug, 9 x 12 | 7,000.00 |
| 6 | antique copper coach lights, 9 in number | 4,500.00 |
| 7 | antique dragon tapestry in silk with silver and gold thread | 1,500.00 |
| 8 | antique fish serving set in sterling c.1800 | 2,500.00 |
| 9 | antique flint lock pistols set of two | 3,500.00 |
| 10 | antique ewer and basin white with green outlined roses | 1,000.00 |
| 11 | antique horse carriage seat with spindle back and cushions | 2,700.00 |
| 12 | New England blanket chest with two lower drawers | 1,200.00 |
| 13 | two antique candle sconces with mirror back | 1,200.00 |
| 14 | antique mahogany plant stand with inlay | 950.00 |
| 15 | antique solid brass three tier chandelier | 4,500.00 |
| 16 | Mahogany tripod table with pie crust top | 2,200.00 |
| 17 | jelly cabinet in cherry | 800.00 |
| 18 | four antique handblown glass decanters with stoppers | 2,400.00 |
| 19 | antique Iranian Sultanabad wool carpet 9 x 12 | 6,100.00 |
| 20 | Heriz rug from Iran 7.10 x 11.5 | 4,500.00 |
| 21 | Saruk rug from Iran 8.11 x 12,4 | 6,000.00 |
| 22 | Kashan rug from Iran 8. 7 x 12 | 5,000.00 |
| 23 | Heriz rug from Iran 7.10 x 10.2 | 4,200.00 |
| 24 | Mashad Iranian wool rug 8.2 x 11.4 | 7,000.00 |
| 25 | leather motorcycle rucksacks | 500.00 |
| 26 | three black antique gothic Windsor armchairs | 5,400.00 |
| 27 | antique maple chest of drawers | 3,500.00 |
| 28 | antique round marquetry table in mahogany with star-shaped wood inlay | 1,900.00 |
| 29 | antique ladies secretary | 2,700.00 |
| 30 | Tiffany style glass lamp in dragonfly motif with brass base | 600.00 |
| 31 | antique Chippendale style shield back mirror in mahogany | 2,200.00 |
| 32 | antique gold leaf mirror with wheat shaft motif 3' round | 1,900.00 |
| 33 | antique slat back chair with rush seat | 400.00 |
| 34 | antique William & Mary blanket chest | 4,500.00 |
| 35 | antique copper weathervane | 1,900.00 |
| 36 | set of four antique Shaker chairs with round table | 5,200.00 |
| 37 | antique fireplace settle | 2,100.00 |
| 38 | antique Jacobean style gate-legged table | 3,600.00 |
| 39 | hand-forged andirons c.1800 | 2,200.00 |
| 40 | hand-forged hearth crane and pot kettle c.1800 | 3,300.00 |
| 41 | antique tavern table in pumpkin pine | 2,900.00 |
| 42 | collection of antique pewter and brass tavern plates, candlesticks, chargers, bowls, snuffers and goblets | 7,200.00 |
| 43 | antique fireplace backs in cast iron with fleur-de-lis design with hand-wrought fireplace tools, peels and poletrays | 5,800.00 |
| 44 | antique cherry trestle table with wide plank drop leaves with original patina | 6,200.00 |
| 46 | inlaid crotch mahogany oval dining table with gold medallions in empire style | 4,350.00 |
| 48 | uninstalled Kohler faucets and fixtures in boxes | 4,000.00 |
| 49 | uninstalled Newport Brass faucets including two hand held shower fixtures, seven eight-inch-spread lavatory faucets, a tub filler and two copper kitchen sink faucets. | 9,500.00 |
| 50 | Sony Trinitron 40 inch television | 800.00 |
| 51 | Iran silk Kashan 8 x 12.5 blue and white rug from Iran | 7,000.00 |
| 52 | crystal, brass and marble lamps | 3,600.00 |
| 53 | Artwork from early 1900's featuring a Habadasher shop with gilt wooden frame | 2,000.00 |

# EXHIBIT A

# EXHIBIT A

| | | |
|---|---|---:|
| 54 | gold leaf and wooden carved frames | 2,000.00 |
| 55 | antique bobsled made by grandfather and great grandfather, red, 16 feet, front axle | 25,000.00 |
| 56 | antique mahogony loveseat, ball and claw camelback | 4,500.00 |
| 57 | 9 oriental runners and throws different sizes | 3,500.00 |
| 58 | red deacon's bench | 450.00 |
| 60 | set of two bronze cranes | 900.00 |
| 61 | bronze bengal tiger | 1,900.00 |
| 62 | cusinart food processor | 400.00 |
| 63 | Vermont Pottery bowls, plates, platters cups, saucers, and vases | 3,000.00 |
| 64 | Haworth kitchen cabinetry custom made and not yet installed. Imported from England 13 cabinets stolen including a lazy susan, two 36 inch drawer bases, one 30 inch knife drawer unit, five 24 inch uppers with glass doors, one 18 inch pullout lower spice rack, 1 pull out 24 inch trash drawer, diswasher panel, plate rack, wine rack and the rest damaged by vandalism (This cabinet style and finish are no longer in production and need to be replaced.) | 100,000.00 |
| 65 | Subzero side by side regrigerator, with icemaker and water dispenser (custom finished in matching cabinetry panels and hardware by Hayworth) | 13,000.00 |
| 66 | Haworth kitchen ensemble, 74 bottle dual temp wine cooler Jenn-aire | 2,200.00 |
| 67 | Haworth Kitchen ensemble Miele stainless steel dishwasher w/ Hayworth cabinetry | 2,500.00 |
| 68 | Stickley Lamp in copper with glass shade | 2,700.00 |
| 69 | antique bluebird motif pottery jugs original to house and discovered hidden in basement a year after purchase when plumbing and heating construction took place | 9,000.00 |
| 70 | waterford crystal stemware,bowls, candle holders, clocks, vases and other pieces | 3,000.00 |
| 71 | antique sterling flatware service for eight, plateservers, platters and punchbowl | 6,500.00 |
| 72 | Chippendale style straight leg loveseat with scroll arms | 3,100.00 |
| 73 | Scotts rear wheel drive lawn mower | 500.00 |
| 74 | Echo weed whacker | 350.00 |
| 75 | Honda snowblower | 1,200.00 |
| 76 | Makita table saw | 400.00 |
| 77 | Porter cable circular saw | 280.00 |
| 78 | 18th century mahogany handerkercchief table with drop leaf | 2,500.00 |
| 79 | oak drop leaf dining table with bobbin and ring gate legs | 1,800.00 |
| 80 | New england pine tavern table with round top and box stretchers | 3,000.00 |
| 81 | Stickley plant stand with tapered corners and shelf | 1,200.00 |
| 82 | comb back Windsor armchair in ash 19th century | 1,000.00 |
| 83 | Connecticut Windsor armchair with scalloped seat and comb back | 1,700.00 |
| 84 | Oak fire place settle with curved back | 1,800.00 |
| Total | | 380,530.00 |