1

2

UNITED STATES DISTRICT COURT

3   SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

4   IN RE:

RESIDENTIAL CAPITAL, LLC, et al.

5

6   Civil Action No. 12-12020 (MG)

------------------------------------X

7

8            ***HIGHLY CONFIDENTIAL***

9         VIDEO DEPOSITION OF MARK RENZI

10              New York, New York

11              November 6, 2013

12

13

14

15

16

17

18   Reported by:

19   Rebecca Schaumloffel, RPR, CLR

20   Job No: 67415

21

22

23

24

25

Page 24

1       M. RENZI

2       Q.    So I will get to that.

3       A.    So if you're more specific.

4       Q.    When I say "expert report," I
5  will be referring to your opening expert
6  report.  And when I say "rebuttal report," I
7  am going to be referring to your rebuttal
8  report, which is the second expert report
9  that you filed in Phase 2.

10      A.    Okay.

11      Q.    Does that help?

12            MR. KERR:  Just so the record is
13      really clear.  The opening report is
14      the October 18, 2013, report that was
15      filed in connection with Phase 2, and
16      I believe the rebuttal report is
17      November 1st, 2013, rebuttal report
18      filed in connection with Phase 2.
19      Just so we can tie it by date.

20      Q.    Now I forgot the question.
21            How did you decide which analyses
22  to include in your rebuttal report?

23      A.    The rebuttal report, the analyses
24  that were presented were ==analyses I thought==
25  ==were reasonable and got to the heart of the==

Highly Confidential

Page 25

1         M. RENZI
2    matter of intercompany balances.
3         Q.   How did you determine that they
4    were reasonable?
5         A.   I worked with counsel.
6         Q.   And what direction did you get
7    from counsel?
8         A.   When working with counsel, we
9    talked about the merits of the variety of
10   scenarios that were run and presented in the
11   expert report and the validity of the
12   intercompany balances and a variety of legal
13   aspects to the intercompany balances that
14   should be considered.
15        Q.   When you said that you "talked
16   about the merits of the variety of scenarios
17   that were run," were you referring to -- what
18   scenarios were you referring to?
19        A.   The four scenarios -- sorry, I
20   guess there are five scenarios presented.
21   Six, sorry.  So for Scenarios 1A through 1B,
22   more specific.
23        Q.   Were there other scenarios that
24   you run that you determined -- sorry.  Let me
25   take that back.

Page 26

1          M. RENZI

2          After you received Mr. Fazio's
3  expert report on October 18th, did you
4  review it?
5     A.   I did.
6     Q.   And did you run any scenarios,
7  other than the ones included in your rebuttal
8  report, after looking at Mr. Fazio's report?
9     A.   Yes.
10    Q.   And what scenarios did you run?
11    A.   They don't have names.  We just
12 tried to replicate Mr. Fazio's analysis in
13 his scenarios and then ran some additional
14 scenarios that I thought were reasonable.
15    Q.   Did you run any scenarios that
16 reflected a value for the Ally -- for
17 settlement with Ally?
18    A.   Yes.
19    Q.   Did you present any of those in
20 your rebuttal report?
21    A.   No.
22         MS. MILLER:  I would like to
23 mark as Renzi Exhibit 1, the expert
24 report of Mark Renzi dated October 18,
25 2012.

Page 60

1                    M. RENZI

2      A.   No.

3      Q.   Okay.  Looking at page 9 of your
4  expert report, you state that the liquidation
5  analysis doesn't attempt to estimate estate
6  recoveries arising from affirmative damages
7  claims against third parties.

8      A.   I am sorry; is that a question?

9      Q.   No, that's not a question.
10  That's a statement.  Why did you -- sorry,
11  why did you not attempt to estimate estate
12  recoveries from affirmative damages claims
13  against third parties?

14      A.   This is for the purposes of the
15  liquidation analysis.  The global
16  settlement -- as opposed to the global
17  settlement.  The global settlement, there is
18  proceeds coming in to the estates of
19  approximately $2.1 billion for -- that is due
20  to broad third-party releases.  I would think
21  that if there is -- if it happens to be not a
22  global settlement, then Ally has been on
23  record, Michael Carpenter is on record saying
24  "I am doing this for global peace."  If it is
25  not global peace and there is not broad

1               M. RENZI

2     third-party releases, then there won't be a

3     settlement and we will fight tooth and nail.

4     So I believe that it's very difficult to

5     estimate recoveries from Ally based on those

6     two main issues.

7          Q.   But you're not suggesting that

8     the claims have no value?

9          A.   No, I am not suggesting the

10    claims have no value.

11         Q.   Have you done anything to

12    determine what -- to estimate what the value

13    would be?

14              MR. KERR:  Objection.

15         A.   You mean other than what's

16    presented in the global settlement and what's

17    presented by the examiner?

18         Q.   Right.

19         A.   No.

20         Q.   Have you reviewed the examiner

21    report?

22         A.   I have.  Let me be more clear.

23    It is a very long document.  I would have

24    said it is over a thousand pages because I

25    remember seeing it stacked, but I have read

12-12020-mg   Doc 5940-2   Filed 11/25/13   Entered 11/25/13 10:54:16   Exhibit 2:
Deposition Excerpts: Mark Renzi    Pg 7 of 17
Highly Confidential

Page 64

1           M. RENZI

2      Q.    And sometimes the piecemeal
3  settlements can collectively result in a
4  value higher or lower than a global
5  settlement, right?
6           MR. KERR:  Objection.
7      A.    We are in a hypothetical world
8  right now, right?
9      Q.    A hypothetical world based on
10 your experience in litigations.
11     A.    I suspect it is possible.
12     Q.    And you understand -- and,
13 Mr. Carpenter -- sorry.  Strike that.
14           You understand that if ResCap
15 went out and litigated against Ally, there
16 would be some value attributed to that claim
17 that it could assert against Ally in a
18 litigation, right?
19           MR. KERR:   Objection.
20           MR. MARINUZZI:   Objection.
21     A.    I think ResCap couldn't litigate
22 against Ally but the extent, the time period,
23 you know, whether or not they could be
24 effective over an extended period of time, is
25 speculative to me.  I know there are a number

Highly Confidential

Page 65

1          M. RENZI
2  of different issues involved in litigation
3  and this estate without a 2 -- infusion of
4  $2.1 billion could theoretically be
5  administrative insolvent before it could be
6  done with litigation.  So, yes, I understand
7  that ResCap could fight extensively in a
8  liquidation scenario, could fight extensively
9  to the -- limited to the amount of money that
10 the estate would have.
11       Q.    Do you also understand that there
12 are lawyers who work on contingency fees?
13       A.    Yes, I understand that.
14       Q.    And the likely outcome of Ally --
15 sorry, of ResCap litigating -- fighting
16 extensively is probably not zero value
17 attributed to any claim, right?
18            MR. KERR:  Objection.
19       A.    I think that there are so many
20 different components that go into that
21 calculus that it is hard to say.  There could
22 be value.  Undeniably, there could be value.
23 Whether or not it is unlocked and the net
24 value is positive, that's entirely possible.
25 But you're talking about a very complex case

Page 66

1  M. RENZI
2  where you have the entity that's willing
3  under global settlement to provide funds, has
4  gone on record saying we are providing it for
5  global peace, broad third-party releases, and
6  if we don't have those, then we are not going
7  to -- we are going to fight.  So I have no
8  reason to doubt a very senior, Mr. Carpenter
9  on his word.
10      Q.   Did you ever ask Mr. Carpenter
11  whether he would -- what amount he would pay
12  if he didn't get a broad third-party release?
13          MR. KERR:  Has Mr. Renzi ever
14  asked Mr. Carpenter that?
15          MS. MILLER:  Yes, has Mr. Renzi
16  ever asked Mr. Carpenter.
17      A.   Other than reading and reviewing
18  some of his comments, no, I have not directly
19  spoken to Mr. Carpenter.
20      Q.   So did you ever hear
21  Mr. Carpenter -- did Mr. Carpenter ever
22  directly tell you that he would not settle if
23  he didn't have a global settlement or broad
24  third-party releases?
25      A.   I believe that's on record.

Highly Confidential

Page 110

1                    M. RENZI

2         A.    Not for the expert report.

3         Q.    After you received Mr. Fazio's

4    expert report, did you review that?  Did you

5    run that model?

6               MR. KERR:  Objection.

7         A.    I would have to look at his

8    expert report.  There are a few of them.  And

9    there are many scenarios.  So the answer is,

10   we checked to see if we were close under one

11   or two scenarios, but I didn't try to

12   replicate all of his scenarios.  Again, I

13   didn't have full information for his

14   analysis, but I have nothing -- what I have

15   stated here in my expert report is still

16   consistent with my belief.

17        Q.    What impact would including a

18   recovery on account of AFI -- of an AFI

19   settlement be on the intercompany balances

20   that you have identified?

21              MR. KERR:  Objection.

22        Q.    Sorry, let me restate that.

23        A.    It is broad.

24        Q.    ==Would the inclusion of an AFI==

25   ==contribution increase the recovery on==

Page 111

1                M. RENZI
2    intercompany balances?
3        A.    It depends.
4        Q.    What does it depend on?
5        A.    If all the intercompany balances
6    were valid.
7        Q.    If all the intercompany balances
8    are valid, would the AFI contribution
9    increase the recovery on the intercompany
10   balances?
11       A.    It depends.
12       Q.    It depends on what?
13       A.    It depends on which
14   intercompanies are valid.
15       Q.    Like I said, if all the
16   intercompany balances are valid, would the
17   AFI contribution increase the recovery on the
18   intercompany balances?
19       A.    Sorry, if all were valid it would
20   increase -- if all intercompany balances are
21   valid, it would increase the value of the
22   intercompany balances.
23       Q.    And do you know by how much?
24       A.    Under what scenario?
25       Q.    Under Scenario 2.

Page 112

1              M. RENZI

2         MR. KERR: You are talking about

3    Scenario 2 of Mr. Renzi's rebuttal

4    report?

5         Q.   Under Scenario 2 of your rebuttal

6    report, in which you assume that all

7    intercompanies are valid at face value, if

8    you added in the AFI -- an AFI contribution

9    value, what impact would that have on the

10   intercompany balance recovery?

11        A.   Under Scenario 2, I think Mr.

12   Fazio has run this analysis, the JSNs would

13   be -- if there is an AFI contribution, the

14   JSNs would likely be oversecured.

15        Q.   And do you know how much of --

16   how much of a payment by Ally would be needed

17   to render the JSNs oversecured in Scenario 2?

18        A.   I haven't run it incrementally in

19   the way you are asking it. So you are asking

20   if I -- if I have taken it like Mr. Fazio has

21   done, he's gone from 250 to, I don't

22   remember, 350 to 450, 550, et cetera, et

23   cetera, up to and beyond, I think beyond

24   $3 billion. I haven't done it the way he has

25   done it.

Page 118

1              M. RENZI

2      A.    Yes.

3      Q.    I think we are all on page 12 of

4  Exhibit 5, which is the Renzi rebuttal

5  report, which is titled "Overview of

6  Scenarios Global Assumptions."  And on the

7  left-hand column, it says "AFI Contribution."

8            And you state that, "Sensitivity

9  scenarios outlined in this report assume no

10 AFI contribution."  And then you state, "I

11 have also been instructed by counsel not to

12 include any value for purported liens by the

13 JSNs on alleged causes of action by the

14 estates against Ally or its affiliates."

15           Do you know why you were

16 instructed to assume no liens?

17     A.    Because it wasn't -- when I

18 discussed it with counsel, we didn't feel

19 that it was a reasonable assumption.

20     Q.    And what impact would the JSNs

21 having a lien have on the recovery analysis,

22 if it also included some value for the AFI

23 contribution?

24     A.    What assumptions do you want me

25 to make?  I can't answer -- that's, like, too

Highly Confidential

Page 119

1      M. RENZI
2  broad of a question.
3      Q.   I want you to assume Scenario 2,
4  where you take all the intercompanies at face
5  value, but assume that there is an AFI
6  contribution and that the junior secured note
7  holders have a lien on that, or at least on
8  some portion of that contribution.
9      A.   And your question is?
10     Q.   What impact does that have on the
11 JSN recovery?
12     A.   It improves their recovery.
13     Q.   Do you know how much of -- what
14 value they, the JSNs, need to have a lien on
15 to render them oversecured?
16     A.   I mean, I just want to back up.
17          We are in this hypothetical world
18 where we assume, like center is powerless,
19 everything else equal, Scenario 2, where
20 nothing else changes.  Meaning claims don't
21 change, that from other constituents, and
22 that there is a settlement, and the JSN
23 intercompany balances are -- the JSNs have a
24 lien on the intercompany balances, and the
25 intercompany balances are valid.

Page 120

1        M. RENZI

2           So all of those things, I want to
3   make sure I caveat it, because Scenario 2, I
4   don't necessarily think would be -- if we
5   turn on value for Scenario 2, I think other
6   things will change.  I don't think -- I just
7   want to make sure that -- I don't know that
8   Scenario 2 would exist if you turn on an AFI
9   contribution.

10       Q.    I understand.  We are going to
11  talk about that.

12       A.    Okay.

13       Q.    What I want to know now is, if
14  there is, assume Scenario 2 where
15  intercompanies are on at face value as
16  recorded in the books and records of the
17  debtors, and you assume that there is a
18  payment by Ally, it may be more, it may be
19  less than the -- what is being termed the
20  Ally -- the AFI contribution, there is a
21  payment by Ally and settlement of claims,
22  including some of which the JSNs have a lien
23  on.

24           Do you know what value of -- what
25  value the lien -- the JSN lien on Ally

Highly Confidential

Page 173

1           M. RENZI

2    I thought it was reasonable to present the

3    information in the way it was presented.

4         Q.    And if you had subordinated the

5    Monoline claims or the RMBS claims, that

6    would have resulted in higher recovery to the

7    JSNs under the liquidation analysis, right?

8         A.    No.

9         Q.    No?

10        A.    It depends.

11        Q.    What does it depend on?

12        A.    Well, I mean, if you move

13   one lever, let's say, just for argument's

14   sake, there are 100 levers, 100 meaningful

15   levers, if you move one lever such as if

16   there is an AFI contribution in a liquidation

17   analysis, there would be many other things

18   that will change.  Because -- and there are

19   how long to recover, what the claims of other

20   constituents could be.  I mean, there have

21   been assertions from the RMBS trustees of up

22   to $44 billion in claims.  I am sure under

23   certain scenarios, they would argue and fight

24   to get as big a claim as they possibly could

25   under a liquidation analysis.  But what is

Page 174

1                M. RENZI
2    presented in the liquidation analysis, in my
3    opinion, is reasonable.
4        Q.   Looking at the Disclosure
5    Statement, which is Renzi Exhibit 6.
6        A.   Could I just open one of the
7    smaller ones?
8             MR. KERR:  No, it is in this
9        big one.
10       Q.   Looking at page 51 of 201 on
11   the top.
12       A.   Further back?
13       Q.   No, to the front.  51 in the
14   first count.
15       A.   First count, 51 of 201.  Almost
16   there.
17       Q.   Mr. Renzi, did you review the
18   section of the Disclosure Statement related
19   to -- sorry, the discussion in the Disclosure
20   Statement relating to the compromise of
21   intercompany balances?
22            MR. KERR:  Objection.  Reviewed
23       at any time?
24            MS. MILLER:  Yes.
25       A.   Yes.