**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

---------------------------------------------------------------------

|  |  |  |
|---|---|---|
| RESIDENTIAL CAPITAL, LLC; et al., | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | Adv. Case No. 13-01343 (MG) |
| UMB BANK, N.A., IN ITS CAPACITY AS INDENTURE TRUSTEE FOR THE 9.625% JUNIOR SECURED GUARANTEED NOTES, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

---------------------------------------------------------------------

|  |  |  |
|---|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of the estate of the Debtors, | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | Adversary Proceeding |
| v. | ) | No. 13-01277 (MG) |
|  | ) |  |
| UMB BANK, N.A., AS SUCCESSOR INDENTURE TRUSTEE UNDER THAT CERTAIN INDENTURE, dated as of June 6, 2008, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

---------------------------------------------------------------------

## DIRECT TESTIMONY OF MICHAEL FAZIO

1.      I, Michael Fazio, testify under penalty of perjury as follows:

I.      **PROFESSIONAL BACKGROUND**

2.      I am a Managing Director in the Financial Restructuring Group of Houlihan Lokey
Capital, Inc. ("Houlihan Lokey"), and Co-Head of the firm's European Financial
Institutions Group.  I previously lead the firm's Global Portfolio Valuation Practice and
its New York office Financial Advisory Services Practice.  I have approximately thirty
years of experience in advisory services in connection with acquisitions, divestitures,
corporate strategy, operational oversight, and restructurings for financial institutions.  I
am based in the firm's London office, and I am a member of the firm's management
committee.

3.      I advised the Official Committee of Unsecured Creditors of Lehman Brothers Holdings,
Inc. in connection with that company's bankruptcy.  As part of that engagement, I valued
and restructured the significant derivatives and special purpose vehicle portfolios of
Lehman Brothers and was involved in oversight of the Lehman Banks.  I also advised the
Official Committee of Unsecured Creditors of Refco, Inc., in connection with its
bankruptcy and advised in the restructurings of the structured investment vehicles
Cheyne and Mainsail II.  I also advised a committee of bondholders of CIT Group in their
$3 billion financing.

4.      Before joining Houlihan Lokey, I served as President and Chief Operating Officer of
Comdisco, Inc., an $8 billion equipment-leasing and technology services company, which
I led through the bankruptcy process.  Earlier, I served as Executive Vice
President/Managing Director and COO-Americas of Deutsche Bank AG, managing the
integration of Deutsche Bank NA and Bankers Trust Corp., as well as directing all non-

front office functions in the Americas (Legal, Controlling, Risk Management, Real

Estate, and Operations). I chaired the bank's regional operating committee and was a

member of the executive committee.

5.      The rest of my background and experience is set forth in my expert reports.  I am amply

qualified to offer the opinions and findings expressed therein and below.

## II.      SCOPE OF EXPERT ANALYSIS

6.      At the request of counsel for the Ad Hoc Group of Junior Secured Noteholders and the

JSNs' Trustee, my team at Houlihan Lokey and I performed a recovery analysis,

providing sensitivity outputs on the Debtors' Collateral Scenario recoveries to estimate

the impact of certain issues subject to Phase II of the Adversary Proceeding, including the

value of intercompany claims to the JSNs and the impact of the JSNs' lien attaching to a

portion of the AFI contribution.  We also assessed the impact to the JSNs assuming that

the allowed RMBS Trust and Monoline Claims contemplated by the Debtors' Plan are

subordinated to general unsecured creditors.  In addition, we assessed the potential

impact on intercompany claim value from the reinstatement of approximately $16.6

billion in previously forgiven intercompany claims.  Lastly, we calculated the aggregate

value recoverable from individual deficiency claims asserted by the JSNs in two

scenarios.  Our analysis and conclusions are set forth in my expert report (my "Opening

Report"), the slide presentation attached hereto as Exhibit A.

7.      I have also been asked to consider and respond to the opinions contained in the report of

the Debtors' expert Mark Renzi, dated October 18, 2013.  My related analysis and

conclusions are set forth in my expert rebuttal report (my "Rebuttal Report"), attached

hereto as Exhibit B.

8.      I have not had the opportunity to respond to the new opinions and three new hypothetical

scenarios that Mr. Renzi added in his rebuttal report because they appeared for the first

time in a rebuttal report served on the same day as my rebuttal report.  Thus, the fact that

I have not specifically rebutted the new opinions and scenarios in Mr. Renzi's rebuttal

report should not be interpreted as indicating that I agree with Mr. Renzi's new opinions

(which I do not).

9.      The attached reports, along with the statements in this Witness Statement (which

summarizes certain key points from my reports, but does not attempt to restate my reports

in their entirety), constitute my direct testimony in this matter.


## III.    THE WATERFALL MODEL AND ITS APPLICATION

10.     To perform my analysis, I developed a waterfall model with the assistance of my team at

Houlihan Lokey.  The waterfall model calculates the potential recovery for creditors at

individual legal entities, including the impact of intercompany claims, Equity Pledges (as

defined herein) and deficiency claims (if any) in a hypothetical recovery or liquidation

scenario.  The model includes functionality to change or modify various assumptions in

order to calculate creditors' ultimate recoveries under certain scenarios that are being

reviewed.

11.     The waterfall model generally incorporates the Debtors' asset and claim assumptions as

provided in the Debtors' Disclosure Statement (as amended), as well as the recovery

model designed by Mr. Renzi's team for the Debtors.  Distributable value for general

unsecured creditors by legal entity is calculated using the Debtors' estimated recovery

rates for unsold assets applied to the Debtors' April 30, 2013 trial balances, which

contain the book value of assets at individual legal entities, less amounts for secured and

administrative claims as allocated in the Debtors' Disclosure Statement.

12.    As a general mater, the assumptions utilized in the Debtors' Collateral Scenario are

intended to be consistent with those utilized by the Debtors in their Disclosure Statement,

and updates thereto and are for illustrative purposes only.  It is not my intent to opine on

contested issues that are addressed in Phase I of the Adversary Proceeding.  The Debtors

assumptions are being utilized solely to isolate and quantify the impact of certain

individual assumptions on the Collateral Scenario's projected recoveries.

13.    The architecture of the waterfall model is explained further in slides 6 through 8 of my

Opening Report.

14.    Prior to and subsequent to the petition date, Houlihan Lokey professionals and the

Debtors' advisors have run scenarios through their respective models and agreed that

both the Debtors' and Houlihan Lokey's models produce substantially similar results

when using the same assumptions.  This indicates that methodologically the two models

and their outputs are comparable, even though they were independently developed.  Slide

10 of my Opening Report illustrates the "baseline" scenario, calculated using Houlihan's

waterfall model (but using the Debtors' recovery assumptions), and shows that the JSNs'

anticipated recovery from collateral, when calculated in this way, is the same as

calculated by Mr. Renzi using the Debtors' model.  Aside from rounding differences, the

only difference in the individual line-items is the "add-back of additional expenses,"
which reflects counsel's instruction to exclude the Debtors' proposed allocation of
additional expenses to the JSNs' collateral, as indicated in Mr. Renzi's report.
Accordingly, the secured recovery indicated by the Houlihan model in this baseline
scenario (the "Debtors' Collateral Scenario") should be compared to (and matches) the
"Adjusted Secured Recovery" indicated by the Debtors' model.

15.     As explained in the remainder of my Opening Report and my Rebuttal Report, at the
direction of counsel, I then used the waterfall model to test several scenarios by changing
one or more of the Debtors' assumptions in isolation, in order to determine the impact (by
comparison to the baseline scenario) that those assumptions have on the JSNs' collateral
value.

16.     The analysis showed certain of Debtors' assumptions each had the effect of dramatically
reducing the JSNs' collateral value and anticipated secured recovery.

17.     While I offer no opinion on the validity of those assumptions (which I understand to be at
issue in Phase II of this proceeding), the analysis shows that if any of the Debtors'
assumptions are determined not to be valid, the JSNs' collateral value and secured
recovery will increase substantially, making it clear that the estimated value of the JSNs'
collateral as of the assumed effective date is greater than the value of the JSNs' assumed
allowed claim of $2.223 billion.

IV.    **ADJUSTED INTERCOMPANY CLAIMS AND AFI CONTRIBUTION**

18.    Slide 11 of my Opening Report sets forth the three scenarios I was asked by counsel to

evaluate in that report:

A.  Intercompany Claims:  Utilizes the Debtors' Collateral Scenario assumptions, but

include all pre-petition intercompany claims as valid and as scheduled in the

Debtors' Statements of Assets and Liabilities ("SOALs") (rather than assuming

that they are invalid, waived or otherwise have no value, as Debtors' analysis

assumes).

B.  AFI Contribution:  Utilizes the Debtors' Collateral Scenario assumptions, but

assume the JSNs have a direct lien on certain components of the contemplated

$2.1 billion AFI contribution,



████████████████████████████████

██████████████████████████████████████

█████████████████████

    C.  Both Intercompany Claims & AFI Contribution:  Utilizes the Debtors' Collateral

Scenario assumptions, but assumes both intercompany claims and the JSNs' lien

on a portion of the AFI contribution are valid.

19.     Slide 12 of my Opening Report summarizes the outcome of my analysis of the three

scenarios.

| JSNs' Maximum Secured Recovery ($ in millions) | | | | | | |
|---|---|---|---|---|---|---|
| | Debtors' Collateral Scenario | | | | W/ InterCo. (A) | |
| | Renzi Report | | Houlihan Model | | Houlihan Model | |
| Cash & Remaining Assets | $ | 2,513 | $ | 2,512 | $ | 2,512 |
| Equity Pledges | | 99 | | 100 | | 238 |
| Pledged Intercompany Claims | | - | | - | | 602 |
| Pledged AFI Contribution | | - | | - | | - |
| Impact of Ocwen True-Up | | 51 | | 51 | | 51 |
| Revolver Pay-Down | | (747) | | (747) | | (747) |
| Additional Expense Allocation | | (180) | | (27) | | (27) |
| **Total Secured Recovery** | | 1,735 | | 1,888 | | 2,628 |
| Plus:  Add-Back of Addt'l. Exp. | | 153 | | NA | | NA |
| **Adj. Secured Recovery** | $ | 1,888 | $ | 1,888 | $ | 2,628 |
| *Memo:  Incremental Collateral* | | | | | $ | 740 |

20.     In Scenario A, if the intercompany balances among the Debtors are assumed valid as

scheduled, that would have a net impact of increasing the JSN collateral value to

approximately $2.628 billion.  Specifically, the amount of the JSNs' recovery increases

by $602 million on account of the intercompany claims on which the JSNs (are assumed

to) have direct liens, and by an additional $138 million ($238 million, versus $100

million in the baseline scenario) from increased value of Equity Pledges to the JSNs from
Debtor entities.

21. ██████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████

22. ██████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████

23.    The bottom row of the chart in Slide 11 of my Opening Report shows the incremental
increase in the JSNs' collateral in Scenarios A, ████████ against the Debtors' Collateral
Scenario (which is based on using the Debtors' assumptions).  As shown in the first two
(unlettered) columns of this slide, the output of the baseline scenario, as modeled in
Houlihan's waterfall model, is essentially the same as the output of the Debtors' model,
used in Mr. Renzi's report.

24.    In each of Scenario A, ████████ the JSNs' secured recovery exceeds $2.223 billion,
which I understand to be the amount of the JSNs' allowed claim under the Plan (subject
to the resolution of certain Phase I issues and prior to the addition of post-petition interest

and unpaid fees and expenses, and other charges, to which I understand that the JSNs

contend that they are entitled).

25.     Slide 13 of my Opening Report illustrates the effect that subordination of the allowed

RMBS Trust and Monoline Claims proposed in the Debtors' Disclosure Statement would

have on the above Scenarios A, ███████.  In Scenario A, the JSNs' secured recovery

increases to $4.215 billion, based on an increase in the recovery value of intercompany

claims. ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████      The effect that the subordination of the Private Securities Claims would

have on Scenarios A, ███████ is not addressed because the Debtors' Collateral Scenario

assumes that the Private Securities Claims have no recourse to the Debtors and instead,

are paid directly and solely out of the Private Securities Claims Trust and NJ Carpenters

Claims Distribution, which are funded with a portion of the AFI contribution.  The

Private Securities Claimants do not have claims against the Estates under the Plan.

26.     At the request of counsel, Slides 14-16 explain the potential impact from the assumed

reinstatement of intercompany claims forgiven by the Debtors between January 2008 and

the petition date.  Accounting for the fact that certain of the reinstated claims could

potentially offset or reduce existing intercompany balances (Slide 15), or dilute JSNs'

recovery from outstanding intercompany recoveries (if the JSNs do not have guarantees

or equity pledges from certain of the entities asserting the reinstated claims) (Slide 16),

the JSNs' collateral value under Scenario A would still significantly exceed $2.223 billion.

27.    As noted on Slide 16, there was also approximately $6.3 billion of previously forgiven intercompany loans owed to entities in the waterfall model by entities outside the waterfall model, which would generally increase the value of the JSN's collateral if those forgivenesses were avoided and the intercompany claims were reinstated.  I was not, however, able to calculate the amount of that increase, because my team did not have access to financial information associated with all of the entities outside the waterfall model that owed those forgiven debts.  While the reinstatement of this $6.3 billion in intercompany receivables for the Debtors could benefit the JSNs, I did not have sufficient data to quantify this benefit.

28.    As explained in Slides 17-19 of my Opening Report, aggregation of the JSNs' deficiency claims against individual Debtor entities ensures that, under the scenarios I reviewed (including where the JSNs receive no benefit from intercompany claims, ████████ ████████████████████████████████████████████████ ██████████████████████████████████), the JSNs will recover no less than their allowed claim and would, if permitted, enable the JSNs to recover more than their total allowed claim under the Plan.  The excess liquidity would be available to pay the JSNs the post-petition interest (or at least a portion thereof) to which they contend that they are entitled.

11

V.    **SELECT ISSUES WITH DEBTORS' HYPOTHETICAL LIQUIDATION ANALYSIS**

29.    As summarized in Slide 20 of my Opening Report, the Debtors' Liquidation Analysis, which provides low and high liquidation recovery scenarios under which the JSNs are shown to not recover their full $2.223 billion assumed allowed claim, is misleading for several reasons, including, for example, the following.

30.    ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████
████████████████████

31.    Similarly, the Debtors' liquidation analysis ascribes zero value to intercompany claims, assuming that they are invalid (which I understand to be in dispute).  If the intercompany claims are found to be valid, my analysis (as explained above and in my expert reports) shows that the intercompany claims have value to the JSNs far in excess of $0.

32.    The Debtors' liquidation analysis also makes certain disputed assumptions about the size and priority of unsecured claims, including, for example, whether the RMBS Trust and

Monoline claimants have a claim for the approximately $11 billion to $15 billion

assumed in the Debtors' Liquidation Analysis, and the priority of those claims, such as

whether or not they should be subordinated.

## VI.     IMPACT OF SIZE OF AFI CONTRIBUTION ON DEBTORS' LIQUIDATION ANALYSIS

33.     In this section, I explain that even if the Debtors' claims against AFI were valued at less

than $2.1 billion in a liquidation of the Debtors, the JSNs could still fare better in a

liquidation than they do under the Plan.

34.     I analyze three scenarios ("Rebuttal Scenarios" A, B and C, as distinguished from

Scenarios A, B and C in my Opening Report) in order to test my hypothesis that a value

of less than $2.1 billion for the Debtors' claims against AFI would result in a better

outcome for the JSNs.

35.     These scenarios are described in Slide 5 of my Rebuttal Report:

Ⓐ **Ally Contribution:** Utilize the Debtors' Liquidation Analysis assumptions, but include a range of net Ally contribution / settlement value, assuming such value is allocated pro-rata to direct claimants and legal entities in the same manner as the $2.1 billion allocation included in the Debtors' Disclosure Statement

> ➤ The Debtors' Liquidation Analysis ascribes no value (or cost) associated with claims against Ally

Ⓑ **Intercompany Claims:** Utilize the Debtors' Liquidation Analysis assumptions, but include a range of net Ally contribution / settlement value and assume the Debtors' intercompany claims existing on the petition date are valid as scheduled

> ➤ The Debtors' Liquidation Analysis does not include or account for existing intercompany claims

Ⓒ **Claim Subordination:** Utilize the Debtors' Liquidation Analysis assumptions, but include a range of net Ally contribution / settlement value, assume the Debtors' intercompany claims are valid as scheduled, and assume all RMBS, monoline and securities claims included in the Debtors' scenarios are subordinated to general unsecured creditors

> ➤ The Debtors subordinate securities claims, but not RMBS or monoline claims, in their "High" recovery Liquidation Analysis scenario

(Unlike the Debtors' Collateral Scenario, the Debtors' Liquidation Analysis assumed that Private Securities Claims *did* have recourse to the Debtors, and showed those claims as having been subordinated for purposes of the "High" recovery analysis.)

36.     I explained in my testimony and expert reports in Phase I of this proceeding that the Debtors' "Low" and "High" estimates of the JSNs' recovery are inaccurate and misleading.  For purposes of my analysis in Phase II, my Rebuttal Report uses the Debtors' estimates, not because I think they are reliable, but in order to isolate the impact of the size of any AFI contribution (provided in consideration for a release of Debtors' claims against AFI) on the JSNs' anticipated recovery in a liquidation situation (as compared to the JSNs' anticipated recovery under the Plan).[1]

37.     Slides 6-8 of my Rebuttal Report summarize my analysis and findings.  Testing hypothetical AFI contributions of different sizes using the waterfall model shows that, even assuming (for sake of analysis) the truth of the disputed assumptions used by the Debtors, and even assuming a smaller hypothetical AFI contribution, well below $2.1 billion, the JSNs' total recovery, net of costs, would still reach or exceed $2.223 billion in the high liquidation situation included as part of the Debtors' Disclosure Statement.

---

[1] Although I indicated in my Opening Report on slides 17-19 that it is possible for the JSNs to recover more from their deficiency claims than is required to satisfy their allowed claim, for the purposes of addressing Mr. Renzi's liquidation analysis, I have shown the total JSNs' recovery in the event the JSNs are undersecured, consistent with the Debtors' assumptions.  Any recovery from deficiency claim aggregation (as set forth on slides 17-19 of my Opening Report), if permitted, would increase the JSNs' recovery from the amounts shown in my Rebuttal Report and in the paragraphs that follow herein.

38.    In Rebuttal Scenario A (Slide 6 of my Rebuttal Report), a $1.5 billion AFI contribution would be sufficient to cause the JSNs' liquidation recovery to reach or exceed $2.223 billion in the Debtors' "High" recovery scenario.

($ in millions)

| Amount of Net Ally Contribution [3][4] | Secured Recovery Low | Secured Recovery High | Deficiency Recovery Low | Deficiency Recovery High | Total Recovery Low | Total Recovery High |
|---|---|---|---|---|---|---|
| - | 1,505 | 1,603 | 111 | 162 | 1,617 | 1,765 |
| 250 | 1,505 | 1,603 | 154 | 250 | 1,659 | 1,853 |
| 500 | 1,505 | 1,603 | 196 | 339 | 1,701 | 1,942 |
| 750 | 1,505 | 1,603 | 238 | 427 | 1,743 | 2,031 |
| 1,000 | 1,505 | 1,603 | 280 | 516 | 1,786 | 2,119 |
| 1,250 | 1,505 | 1,603 | 323 | 604 | 1,828 | 2,208 |
| 1,500 | 1,505 | 1,603 | 365 | 619 | 1,870 | 2,223 |
| 1,750 | 1,505 | 1,603 | 407 | 619 | 1,912 | 2,223 |
| 2,000 | 1,505 | 1,603 | 449 | 619 | 1,955 | 2,223 |
| 2,100 | 1,505 | 1,603 | 466 | 619 | 1,971 | 2,223 |
| 2,250 | 1,505 | 1,603 | 492 | 619 | 1,997 | 2,223 |
| 2,500 | 1,505 | 1,603 | 534 | 619 | 2,039 | 2,223 |
| 2,750 | 1,505 | 1,603 | 576 | 619 | 2,081 | 2,223 |
| 3,000 | 1,505 | 1,603 | 618 | 619 | 2,124 | 2,223 |

Ally Contribution Impact On Deficiency Claim Recovery

39.    In Rebuttal Scenario B (Slide 7 of my Rebuttal Report), which assumed the intercompany claims are valid as scheduled, a $1.0 billion AFI contribution would be sufficient to cause the JSNs' liquidation recovery to reach or exceed $2.223 billion in the Debtors' "High" recovery scenario.

($ in millions)

| Amount of Net Ally Contribution [4][5] | Secured Recovery Low | Secured Recovery High | Deficiency Recovery Low | Deficiency Recovery High | Total Recovery Low | Total Recovery High |
|---|---|---|---|---|---|---|
| - | 1,590 | 1,724 | 89 | 127 | 1,679 | 1,851 |
| 250 | 1,624 | 1,781 | 122 | 184 | 1,746 | 1,965 |
| 500 | 1,657 | 1,838 | 155 | 240 | 1,812 | 2,078 |
| 750 | 1,691 | 1,896 | 187 | 295 | 1,878 | 2,190 |
| 1,000 | 1,725 | 2,010 | 219 | 212 | 1,944 | 2,223 |
| 1,250 | 1,759 | 2,158 | 251 | 65 | 2,010 | 2,223 |
| 1,500 | 1,793 | 2,273 | 282 | 0 | 2,075 | 2,273 |
| 1,750 | 1,827 | 2,360 | 313 | 0 | 2,140 | 2,360 |
| 2,000 | 1,861 | 2,446 | 344 | 0 | 2,205 | 2,446 |
| 2,100 | 1,877 | 2,481 | 345 | 0 | 2,223 | 2,481 |
| 2,250 | 1,909 | 2,533 | 314 | 0 | 2,223 | 2,533 |
| 2,500 | 1,962 | 2,620 | 261 | 0 | 2,223 | 2,620 |
| 2,750 | 2,014 | 2,707 | 208 | 0 | 2,223 | 2,707 |
| 3,000 | 2,067 | 2,793 | 156 | 0 | 2,223 | 2,793 |

Ally Contribution Impact On InterCompany Claim Recovery & Deficiency Claim Recovery

40.    In Rebuttal Scenario C (Slide 8 of my Rebuttal Report), which ascribes value to the intercompany balances *and* subordinates the RMBS Trust, Monoline, and securities

claims, the JSNs' liquidation recovery is $2.222 billion without any AFI contribution.
Thus, even a minimal contribution from AFI would cause the JSNs' liquidation recovery
to reach or exceed $2.223 billion in both the Debtors' "Low" and "High" scenario.

| ($ in millions) | | Secured Recovery | | Deficiency Recovery | | Total Recovery | |
|---|---|---|---|---|---|---|---|
| | Low | High | Low | High | Low | High |
| **Amount of Net Ally Contribution**[4][7] | | | | | | |
| - | 1,761 | 2,022 | 315 | 201 | 2,076 | 2,222 |
| 250 | 1,943 | 2,340 | 280 | 0 | 2,223 | 2,340 |
| 500 | 2,312 | 2,494 | 0 | 0 | 2,312 | 2,494 |
| 750 | 2,461 | 2,648 | 0 | 0 | 2,461 | 2,648 |
| 1,000 | 2,611 | 2,802 | 0 | 0 | 2,611 | 2,802 |
| 1,250 | 2,761 | 2,956 | 0 | 0 | 2,761 | 2,956 |
| 1,500 | 2,911 | 3,110 | 0 | 0 | 2,911 | 3,110 |
| 1,750 | 3,061 | 3,264 | 0 | 0 | 3,061 | 3,264 |
| 2,000 | 3,211 | 3,418 | 0 | 0 | 3,211 | 3,418 |
| 2,100 | 3,271 | 3,480 | 0 | 0 | 3,271 | 3,480 |
| 2,250 | 3,361 | 3,572 | 0 | 0 | 3,361 | 3,572 |
| 2,500 | 3,511 | 3,726 | 0 | 0 | 3,511 | 3,726 |
| 2,750 | 3,661 | 3,880 | 0 | 0 | 3,661 | 3,880 |
| 3,000 | 3,811 | 4,034 | 0 | 0 | 3,811 | 4,034 |

(Left label spanning rows: **Ally Contribution Impact On InterCompany Claim Recovery & Deficiency Claim Recovery**)

41.    Counsel has instructed me to assume in Rebuttal Scenarios A, B and C, that any AFI
contribution to the Debtors' Estates is made in consideration of a release of the Debtors'
claims against AFI, but that third-party claims, including the JSNs' claims against AFI,
would not be released in a liquidation.  Counsel has informed me that the JSNs contend
that they are in privity with AFI under the Intercreditor Agreement and possess potential
damage claims against AFI in discrete and quantifiable amounts.

42.    Accordingly, with even a minimal recovery from AFI, the JSNs' recovery will be greater
than $2.223 billion and would recover more in a liquidation than under the Plan.  Counsel
has informed me that the Plan cannot be confirmed under applicable law if the JSNs
would recover more in a liquidation than under the Plan.

43.    Further, the analysis set forth in my Rebuttal Report on Slides 6 through 8 shows that if it
is assumed that AFI makes a contribution of $2.1 billion in a liquidation, the JSNs should

recover at least $2.223 billion (and, in some scenarios, much more) in all of the hypothetical liquidation scenarios reviewed, except the Debtors' "Low" recovery scenario and assuming no benefit to the JSNs from intercompany claims or the subordination of RMBS, Monoline and Securities Claims (Scenario A).  Thus, if a $2.1 billion AFI contribution is assumed, and the JSNs' unreleased claims against AFI are assumed to have any non-zero value, the JSNs would be expected to recover more in liquidation than under the Plan.

VII.    **IMPACT OF "PARTIAL CONSOLIDATION" ON JSN COLLATERAL**

44.     As explained in Slide 10 of my Rebuttal Report, if some or all of the intercompany claims are determined to be valid as scheduled, then, contrary to Mr. Renzi's assertions, the JSNs would be harmed by the proposed "limited partial consolidation" because most of the value of intercompany claims would be eliminated, thereby negatively impacting the JSNs' recoveries.  In addition, the JSNs' collateral includes subsidiary equity pledges whose value would be eliminated by "limited partial consolidation," further reducing the JSNs' recoveries.

**Michael Fazio**

**November 12, 2013**

# Exhibit A

# Residential Capital, LLC

## Expert Report of Michael Fazio – Recovery Analysis

October 18, 2013

Residential Capital, LLC

# Table of Contents

|  | Page |
|---|---|
| Executive Summary | 2 |
| Summary of Recovery Waterfall Model | 5 |
| Recovery Scenarios & Analyses | 9 |
| Conclusions | 21 |
| Appendices | 23 |
|     Schedule of Intercompany Claims | 24 |
|     Legal Entities | 30 |
|     Due Diligence Conducted | 32 |
|     Expert Qualifications | 34 |
|     Compensation of Expert | 36 |

HOULIHAN LOKEY

# Executive Summary

| Executive Summary | Overview of Report |
|---|---|

- This report (the "Report") has been prepared by Michael Fazio on behalf of Houlihan Lokey Capital, Inc. ("Houlihan Lokey") at the request of White & Case LLP and Milbank, Tweed, Hadley & McCloy LLP as counsel to the Ad Hoc Group of Junior Secured Noteholders ("Ad Hoc Group") of the 9.625% Junior Secured Guaranteed Notes due 2015 ("JSNs") and counsel to UMB Bank, N.A. as Trustee for the JSNs ("Trustee"), and Akin Gump Strauss Hauer & Feld LLP as special litigation counsel to the Trustee, in connection with that certain consolidated adversary proceeding (Adv. Pro. Nos. 13-01343 and 13-01277 (collectively, the "Adversary Proceeding")) relating to the Chapter 11 proceedings of Residential Capital, LLC ("ResCap", the "Company" or the "Debtors") in the U.S. Bankruptcy Court for the Southern District of New York, Case No. 12-12020

- In conjunction with preparing the Report, Houlihan Lokey has made the reviews, analyses and inquiries deemed necessary and appropriate.  See Appendices:  Due Diligence Conducted

| Executive Summary | # Overview of Report (cont.) |
|---|---|

- Houlihan Lokey has been asked by counsel to provide sensitivity outputs on the Debtors' Collateral Scenario (as defined herein) recoveries to estimate the impact of certain issues subject to Phase II of the Adversary Proceeding

  - Counsel has requested the sensitivity output for the following ███ scenarios:

    - Ⓐ Intercompany Claims:  Utilize Debtors' Collateral Scenario assumptions, but include all pre-petition intercompany claims as valid and as scheduled in the SOALs

    ██████████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████████

  - In addition to these scenarios, Houlihan Lokey has been asked by counsel to show the impact on recoveries in Scenarios A, ██ ███ assuming the subordination of the RMBS Trust and Monoline claims as indicated in the Debtors' Disclosure Statement

- Counsel has also asked Houlihan Lokey to calculate the aggregate value recoverable from individual deficiency claims asserted by the JSNs in the following two scenarios:

  - The Debtors' Collateral Scenario

  - The Debtors' Collateral Scenario, but assuming the Committee prevails in certain challenges to the JSNs' collateral being pursued in the Adversary Proceeding

- Counsel has also asked Houlihan Lokey to assess the potential impact on intercompany claim value from the reinstatement of approximately $16.6 billion in previously-forgiven intercompany claims

HOULIHAN LOKEY    4

# Summary of Recovery Waterfall Model

| Summary of Recovery Waterfall Model | Introduction |
|---|---|

- Houlihan Lokey has developed a recovery model for ResCap (the "Waterfall Model") in order to determine the value of intercompany claims and resulting total recovery for the JSNs based on assumptions provided by:
  - Counsel
  - The Expert Report of Robert S. Bingham ███████████████████████████████████
  - The Debtors, either through their Disclosure Statement or related disclosures / discussions
- The Waterfall Model calculates the recovery for creditors at each legal entity and includes the impact of intercompany claims, Equity Pledges (as defined herein) and deficiency claims (if any)
- The Waterfall Model was developed by Houlihan Lokey professionals during the pre-petition period and has since been maintained and refined as additional information becomes available and additional or different assumptions become relevant
- I understand that the Debtors and the Debtors' advisors have developed and maintained a similar recovery model
  - I also understand that prior to and subsequent to the petition date, Houlihan Lokey professionals and the Debtors' advisors have run scenarios through their respective models and agreed that both the Debtors' and Houlihan Lokey's models produce substantially similar results when using the same assumptions
- The following two pages summarize the general design, methodology and assumptions of the Waterfall Model
  - As a general mater, the assumptions utilized in the Debtors' Collateral Scenario (as defined herein) in this Report are intended to be consistent with those utilized by the Debtors in their Disclosure Statement and updates thereto. The Debtors' Collateral Scenario shown herein is for illustrative purposes only and is utilized solely to isolate and quantify the impact of certain individual assumptions on the Collateral Scenario's projected recoveries
  - Houlihan Lokey is providing no opinion on the merits or validity of any assumptions utilized herein

HOULIHAN LOKEY    6

## Summary of Recovery Waterfall Model

# Waterfall Model Architecture & Methodology

**Debtors & Legal Structure**

■ Includes 27 of the 51 Debtors, including the two borrowing entities created in connection with ResCap's debtor-in-possession facility ("Barclays DIP")

■ The remaining 24 Debtors are excluded from the Debtors' trial balances, because they do not have distributable assets of value or are otherwise not material or impactful on the recovery analysis results[1]

**Financial Assets**

■ The Waterfall Model utilizes the Debtors' April 30, 2013 trial balances containing the book value of assets at each entity. The Debtors carry their assets at fair value in accordance with GAAP. The Debtors' estimate of the JSNs' secured recovery in the Debtors' Collateral Scenario includes estimates of the recovery value of the remaining unsold assets. As indicated in the Disclosure Statement, the Debtors' estimate of recovery value is more conservative than the Debtors estimate of fair value of the assets in the Debtors' trial balances. For the purposes of this Report, the Debtors' estimates have been utilized

● The Company-provided trial balances also include a designation of assets pledged to each collateral silo / debt facility; for the purposes of this Report, such allocation has been utilized

■ For the purposes of this Report, certain items from the trial balances are excluded, including:

● Intercompany claims (analyzed separately as described on subsequent slides)

● Non-economic assets (e.g., certain consolidated held-for-investment balances, contingent repurchase obligations and similar assets that are recognized by the Company in accordance with GAAP, but are assumed in this Report to provide no recovery value)

■ For the purposes of this Report, certain additional value is assumed in the recovery calculations and added to the assets in the trial balances, consistent with the Debtors' assumptions, including:

● $68 million from true-up associated with Ocwen transaction ($51 million allocated to JSNs' collateral) and $24 million from the assets of non-Debtor subsidiaries ($2 million allocated to JSNs' collateral)

**Secured Debt Obligations**

■ Outstanding debt facility balances at April 30, 2013

● *First Lien Facilities:* Ally LOC balance of $380 million and Ally Revolver balance of $747 million

● *JSNs:* Claim varies based on scenario being utilized (as described on subsequent pages); the Debtors' Collateral Scenario claim is $2,223 million, reflecting no adjustments from the Adversary Proceeding

(1)    See Appendices for more detail; as a point of comparison, in the Debtors' Disclosure Statement (ECF #4819), the Debtors provide recovery analyses detail for 15 legal entities; a Summary of Unscheduled Entities is provided for the others, which shows no assets for the remaining unscheduled Debtors

 HOULIHAN LOKEY    7

**Summary of Recovery Waterfall Model**

# Waterfall Model Architecture & Methodology (cont.)

**Admin / Priority Claims**

- After satisfaction of secured debt recovery, distributable value, including from the contribution of Ally Financial Inc. ("AFI"), is used to satisfy administrative / priority / wind-down claims ("Admin Claims")
- The amount and allocation of Admin Claims is consistent with the Debtors' Disclosure Statement, including $250 million against Residential Funding Company, LLC ("RFC") and $836 million against GMAC Mortgage, LLC ("GMACM")[1]

**General Unsecured Claims ("GUC")**

- Distributable value after satisfaction of Admin Claims is used to satisfy GUCs, which share in distributable value pro-rata at each legal entity
- The amount and allocation of GUCs is consistent with the Debtors' Disclosure Statement[2]

**Inter-Company Claims**

- The Debtors' Collateral Scenario excludes the impact of pre-petition intercompany claims
- When assumed in this Report as valid / not re-characterized, intercompany claims are included in GUCs and the amounts and allocation are per the Debtors' Statements of Assets and Liabilities ("SOALs"). Net balances are utilized (i.e., receivables and payables between the same two entities are assumed to be netted)

**Equity Value / Pledges**

- Any value remaining at each legal entity after the satisfaction of secured debt obligations, Admin Claims and GUCs is distributed to each entity's parent entity
- If the parent entity has pledged this equity value to a secured debt obligation ("Equity Pledges"), the equity is used to satisfy that obligation, otherwise the equity is assumed to be available to GUCs at that parent entity

**Other Recovery Calculation Notes**

- *Secured Recovery*: The satisfaction of secured debt facilities is assumed to be from (i) pledged collateral at borrower / issuer entities, (ii) pledged collateral at guarantor entities, (iii) pledged collateral at all other entities and (iv) Equity Pledges (if applicable), in that order
- *Unsecured Recovery*: Any remaining deficiency claims are treated pari passu to GUCs and asserted at a debt facility's borrower / issuer and guarantor entities. The amount of deficiency claim asserted varies by entity and equals the claim less amounts already recovered from the entity as a secured recovery

(1) Per disclosures in the Expert Report of Mark Renzi dated September 20, 2013 ("Renzi Report"), $10 million of such claims against GMACM are assumed to be asserted against Executive Trustee Services, LLC ("ETS"), and $27 million of such claims are assumed to have been charged to the JSNs' collateral since April 30, 2013 (assumed from GMACM, which is allocated approximately 77% of total Admin Claims in the Disclosure Statement)

(2) Per disclosures in the Renzi Report, $5 million of additional GUCs above what is shown in the Disclosure Statement is assumed to be allocated to ETS

HOULIHAN LOKEY    8

# Recovery Scenarios & Analyses

| Recovery Scenarios & Analyses | Debtors' Collateral Scenario |
|---|---|

- As used herein, the Debtors' "Collateral Scenario" includes the secured recovery assumptions and methodology employed by the Debtors in their Disclosure Statement, as subsequently updated or amended

- The Disclosure Statement and certain related filings originally indicated the JSNs' secured recovery totaled $1.689 billion

- This amount has since been updated by the Debtors to incorporate the impact of subsequent developments, primarily the Ocwen true-up

- The Debtors' projected JSNs' secured recovery includes Debtors' estimates of the recovery value of remaining unsold assets. The Debtors' estimates are more conservative than the fair value of the assets in the Debtors' trial balances. For purposes of this Report, Houlihan Lokey is using the Debtors' estimates to isolate and highlight the change in the JSNs' recovery from the assumptions discussed herein

- The Debtors' estimate of the JSNs' secured recovery includes certain assumptions that are being litigated in the Adversary Proceeding, including:
  - Adequate Protection (Debtors' Collateral Scenario ascribes zero value to adequate protections claims for the JSNs)
  - Purchase price allocation (Debtors' Collateral Scenario ascribes zero value to intangible / going-concern / goodwill)
  - AFI contribution allocation (Debtors' Collateral Scenario assumes zero value is subject to JSNs' liens)
  - Intercompany claims (Debtors' Collateral Scenario ascribes zero value)
  - Recovery on unsold assets (Debtors' Collateral Scenario makes certain disputed estimates of recovery values)

- It is not the intent of this Report to opine on these disputed issues which the Court will address in the Adversary Proceeding. Houlihan Lokey has developed a Debtors' Collateral Scenario which replicates the Debtors' assumptions and projected results for the JSNs
  - All assumptions known to be utilized by the Debtors are incorporated, with the exception of projected Admin Claim allocations beyond what has already been charged to JSNs' collateral[1][2], in an attempt to develop a comparable result from which to layer in additional assumptions

| Collateral Scenario Secured Recovery ($ in millions) | | |
|---|---|---|
| | Renzi Report | Houlihan Model |
| Cash & Remaining Assets | $    2,513 | $    2,512 |
| Equity Pledges | 99 | 100 |
| Pledged Intercompany Claims | - | - |
| Pledged AFI Contribution | - | - |
| Impact of Ocwen True-Up | 51 | 51 |
| Revolver Pay-Down | (747) | (747) |
| Additional Expense Allocation | (180) | (27) |
| **Total Secured Recovery** | **1,735** | **1,888** |
| Plus:  Add-Back of Addt'l. Exp.[2] | 153 | NA |
| **Adj. Secured Recovery** | **$    1,888** | **$    1,888** |

(1)   Trial balances in the Waterfall Model are as of April 30, 2013
(2)   The Renzi Report indicates $27 million in stipulated costs have been charged to the JSNs' collateral since April 30, 2013; implying an estimated $153 million in additional Admin Claims that the Debtors intend to charge against the JSNs' collateral



## Adjusted Intercompany Claim & AFI Contribution Scenarios

**Recovery Scenarios & Analyses**

- ■ Houlihan Lokey has been asked by counsel to provide sensitivity outputs on the Debtors' Collateral Scenario recoveries to estimate the impact of certain issues subject to Phase II of the Adversary Proceeding

- ■ Counsel has requested the following three scenarios:

  - Ⓐ Intercompany Claims: Utilize Debtors' Collateral Scenario assumptions, but include all pre-petition intercompany claims as valid and as scheduled in the SOALs



# Impact of Adjusted Intercompany Claim & AFI Contribution Scenarios

**Recovery Scenarios & Analyses**

- Counsel has informed Houlihan Lokey that the JSNs' ultimate recovery will be limited to the amount of their allowed claim, including accrued post-petition interest and unpaid fees / expenses if the JSNs are deemed over-secured

- The table below shows the maximum secured recovery available to the JSNs under the scenarios previously described and is presented to illustrate the JSNs' total collateral value and amount of over-collateralization under the scenarios assumed

| JSNs' Maximum Secured Recovery ($ in millions) | | | |
|---|---|---|---|
| | Debtors' Collateral Scenario | | W/ InterCo. Ⓐ |
| | Renzi Report | Houlihan Model | Houlihan Model |
| Cash & Remaining Assets | $  2,513 | $  2,512 | $  2,512 |
| Equity Pledges | 99 | 100 | 238 |
| Pledged Intercompany Claims | - | - | 602 |
| Pledged AFI Contribution | - | - | - |
| Impact of Ocwen True-Up | 51 | 51 | 51 |
| Revolver Pay-Down | (747) | (747) | (747) |
| Additional Expense Allocation | (180) | (27) | (27) |
| **Total Secured Recovery** | **1,735** | **1,888** | **2,628** |
| Plus:  Add-Back of Addt'l. Exp. | 153 | NA | NA |
| **Adj. Secured Recovery** | **$  1,888** | **$  1,888** | **$  2,628** |
| *Memo:  Incremental Collateral* | | | $  740 |

- As shown above, Scenarios A, ███████ result in incremental JSNs' collateral ranging from $740 million ████████

  - The assumption that intercompany claims remain valid increases JSNs' collateral value through both "Pledged Intercompany Claims" (value of intercompany claims owed to the JSNs' issuer and guarantor entities, on which counsel has indicated the JSNs' lien directly attaches) and Equity Pledges (the increased equity value of certain entities that hold intercompany receivables and whose equity is pledged to the JSNs)

HOULIHAN LOKEY                                                                    12

| Recovery Scenarios & Analyses | # Impact of RMBS Trust & Monoline Claim Subordination on Adjusted Scenarios |
|---|---|

- In addition to the scenarios previously described, Houlihan Lokey has also been asked by counsel to show the impact on recoveries in Scenarios A, ███████ assuming the subordination of the RMBS Trust and Monoline claims indicated in the Debtors' Disclosure Statement as allowed GUCs

- The table below shows the maximum secured recovery available to the JSNs under the scenarios previously described, but assuming the subordination of RMBS Trust and Monoline claims to GUCs

| JSNs' Maximum Secured Recovery ($ in millions) | | | | |
|---|---|---|---|---|
| | Debtors' Collateral Scenario | | W/ InterCo. (A) | |
| | Renzi Report | Houlihan Model | Houlihan Model | |
| Cash & Remaining Assets | $   2,513 | $   2,512 | $   2,512 | |
| Equity Pledges | 99 | 100 | 563 | |
| Pledged Intercompany Claims | - | - | 1,864 | |
| Pledged AFI Contribution | - | - | - | |
| Impact of Ocwen True-Up | 51 | 51 | 51 | |
| Revolver Pay-Down | (747) | (747) | (747) | |
| Additional Expense Allocation | (180) | (27) | (27) | |
| **Total Secured Recovery** | **1,735** | **1,888** | **4,215** | |
| Plus: Add-Back of Addt'l. Exp. | 153 | NA | NA | |
| **Adj. Secured Recovery** | **$   1,888** | **$   1,888** | **$   4,215** | |
| *Memo: Incremental Collateral* | | | $   2,327 | |

- As shown above, the subordination of RMBS Trust and Monoline claims substantially increases the JSNs' collateral value if intercompany claims are not re-characterized or waived

- ██████████████████████████████████████████████████████████████

| Recovery Scenarios & Analyses | Impact of Previously-Forgiven Intercompany Claims |
|---|---|

- Houlihan Lokey has been asked by counsel to assess the potential impact of reinstating intercompany claims forgiven by the Debtors between 2008 and the petition date[1]

- According to Article II, Section K of the Disclosure Statement: "On numerous occasions, where the existence of an intercompany payable on a Debtor's balance sheet threatened the solvency and net worth thresholds required under external funding agreements, or by federal or state regulations, the putative debt obligations were forgiven. Additionally, putative debt obligations were forgiven among the Debtors and certain non-Debtor subsidiaries in connection with the Debtors' international transactions and the dissolution of entities. Approximately $16.6 billion of debt was forgiven without consideration from 2007 through the Petition Date."

  - Houlihan Lokey has been provided with information on approximately $16.6 billion of intercompany claims forgiven between the beginning of 2008 and the petition date[2]

- Generally, the reinstatement or addition of additional intercompany claims between Debtors will have a positive impact on the JSNs' secured recovery if intercompany claims are assumed valid / not re-characterized. However, there are two primary ways in which the reinstatement of forgiven claims could potentially reduce the secured recovery JSNs receive from intercompany claims outstanding on the petition date

  **Offset / Reduce Existing Intercompany Claim Balances**

  - The reinstatement of intercompany claims between the same legal entities as intercompany claims existing on the petition date, but in the opposite lending direction, could potentially reduce or offset the amount of intercompany claims at the petition date

  **Dilute Existing Intercompany Claim Recoveries**

  - The reinstatement of certain intercompany claims could reduce intercompany recoveries to the JSNs if the reinstated claims are both: (i) owed from an entity that is an obligor for an existing intercompany claim that benefits the JSNs, and (ii) owed to an entity that is not a JSNs' issuer, guarantor or Equity Pledge entity

- These two issues are addressed in more detail on the following slides

---

(1)   Such reinstatement assumes that the claims which were forgiven are successfully avoided and reinstated
(2)   Per RCUCCJSN11270924

**HOULIHAN LOKEY**    14

| Recovery Scenarios & Analyses | # Impact of Previously-Forgiven Intercompany Claims (cont.) |

## Offset / Reduce Existing Intercompany Claim Balances

■ In the secured recovery amounts shown in this Report, the JSNs only derive intercompany claim secured recovery from claims between entities included in the Waterfall Model.  Therefore, only the reinstatement of claims between these entities could offset and decrease the secured recovery benefit shown herein

■ Of the $16.6 billion of previously-forgiven intercompany claims identified, $9.1 billion are between entities in the Waterfall Model (see Appendices)

● Of this $9.1 billion, $2.6 billion are between legal entities with existing intercompany claim relationships, but in the opposite lending direction

➤ There are $2.2 billion of previously-forgiven intercompany claims owed from RFC to HoldCo, which if reinstated could offset a $2.0 billion existing intercompany claim owed from HoldCo to RFC.  If the reinstated intercompany claim is allowed to offset / partially net against the existing claim, the adjusted net balance would be a $0.2 billion claim from RFC to HoldCo, which would reduce the value of the intercompany claims to the JSNs

➤ The other $0.4 billion of previously-forgiven claims are in the opposite lending direction of existing intercompany claims with outstanding balances of $5 million or less

● $6.5 billion of previously-forgiven intercompany claims are between legal entities that have no existing intercompany claim in the opposite lending direction.  As a result, the reinstatement of these intercompany claims would generally increase intercompany claim value to the JSNs (as the JSNs would have a direct lien on certain of the receivables and an indirect benefit from others through Equity Pledges)

■ If the forgiveness of these $9.1 billion of intercompany claims is successfully avoided and the claims are reinstated and added to the Waterfall Model (and all existing intercompany claims are assumed valid / not re-characterized), the JSNs' collateral value is equal to $2.467 billion under Scenario A (as compared to $2.628 billion under Scenario A on slide 11)

HOULIHAN LOKEY    15

# Impact of Previously-Forgiven Intercompany Claims (cont.)

Recovery Scenarios & Analyses

## Dilute Outstanding Intercompany Claim Recoveries

- Of the $16.6 billion of previously-forgiven intercompany claims identified, there are $1.3 billion that could dilute existing intercompany claim recovery that otherwise benefit the JSNs. These previously-forgiven claims are owed from legal entities in the Waterfall Model to legal entities that are not a JSNs' issuer, guarantor or Equity Pledge entity

  - Seven of these intercompany claim relationships totaling $0.9 billion are between legal entities in the Waterfall Model, and therefore their negative impact is already reflected in the analysis described on the previous slide

  - The remaining $0.3 billion of previously-forgiven intercompany claims are owed from legal entities in the Waterfall Model to non-Debtor entities that are not included in the Waterfall Model

- If the forgiveness of these $0.3 billion of intercompany claims is successfully avoided and the claims are reinstated as GUCs at their respective Waterfall Model legal entities, the JSNs' collateral value under Scenario A decreases from $2.467 billion (as reflected on the prior slide) to $2.451 billion

  - Approximately 40% of these previously-forgiven intercompany claims are obligations of lower-tier ResCap subsidiaries, and thus their reinstatement has no impact / dilution on the benefit the JSNs' otherwise receive from intercompany claims

## Other Impacts

- Approximately $6.3 billion of the previously-forgiven $16.6 billion are owed to legal entities in the Waterfall Model from entities not included in the Waterfall Model. A majority of these receivables are owed to JSNs' issuer, guarantor or Equity Pledge entities

  - Any recovery on these intercompany claims if reinstated would increase the JSNs' secured recovery

HOULIHAN LOKEY    16

| Recovery Scenarios & Analyses | Impact of Deficiency Claim Aggregation |
|---|---|

- Houlihan Lokey has also been asked by counsel to calculate the total value recovered from individual deficiency claims by the JSNs under the Debtors' Collateral Scenario, utilizing the following assumptions

  - The JSNs assert a deficiency claim (if under-secured) at each of their issuer and five guarantor entities equal to the total allowed JSNs' claim less secured recovery from that specific entity

  - The total amount of deficiency claims asserted by the JSNs (when aggregated across individual entities) is larger than the total amount of the JSNs' allowed claim

  - As a result, it is possible for the JSNs to recover more from their deficiency claims than is required to satisfy their total allowed claim

- These assumptions result in a $1.888 billion secured recovery and $767 million deficiency recovery (without consideration of intercompany claims or a direct lien on the AFI contribution)

- This analysis confirms that even if the Debtors' disputed valuation is used, the JSNs recover in full on their prepetition claim. Additionally, there is excess recovery available to pay the JSNs post-petition interest

| JSNs' Total Recovery By Entity ($ in millions) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Issuer | Guarantors | | | | | | Grand Total |
| | HoldCo | GMACM | GMACM HoldCo | RFC | RFC HoldCo | Home-Comings | All Other | Grand Total |
| Total Secured Recovery[1][2] | $ 159 | $ 1,576 | $ - | $ 152 | $ - | $ - | $ 0 | $ 1,888 |
| Memo: Deficiency Claim | 2,063 | 646 | 2,223 | 2,070 | 2,223 | 2,223 | NA | NA |
| Plus: Deficiency Recovery[3] | 390 | 136 | 0 | 242 | - | 0 | - | 767 |
| Initial Total Recovery | $ 549 | $ 1,712 | $ 0 | $ 394 | $ - | $ 0 | $ 0 | $ 2,655 |

(1)   Waterfall Model's recreation of Debtors' Renzi Report secured recovery valuation; excludes impact of all currently-litigated issues
(2)   The value of equity pledges is included in the parent entity that pledges such equity, including the Barclays DIP borrowers
(3)   Waterfall Model's projected recovery output; differs from Debtors' recovery allocation proposed under the Disclosure Statement, as (i) deficiency recovery is not limited by the amount of the allowed claim; (ii) the Debtors' allocate additional Admin Claims to the JSNs' collateral beyond what has already been charged and (iii) the Debtors do not assume the JSNs have a deficiency claim, rather allocate enough collateral to the JSNs to repay the JSNs' assumed claim in full

HOULIHAN LOKEY    17

| Recovery Scenarios & Analyses | # Impact of Deficiency Claim Aggregation (cont.) |
|---|---|

- ■ Houlihan Lokey has also been asked by counsel to calculate the total value recovered from individual deficiency claims by the JSNs under the Debtors' Collateral Scenario, utilizing the assumptions on the previous slide, but also assuming the Committee prevails in certain challenges to the JSNs' collateral being pursued in the Adversary Proceeding, specifically:

  - ● $127 million aggregate value of collateral not encumbered in favor of the JSNs, per the Expert Report of Marc E. Landy dated September 20, 2013 ("Landy Report")

  - ● $284 million aggregate value of preference assets, per the Landy Report

    - ➢ For the purposes of this analysis, it is assumed that 87% of the value from liens challenged by the Committee is allocated to GMACM, with the remainder at RFC. This assumption is based on the distribution of the fair market value of the subject assets at the petition date as identified in the Landy Report

- ■ These assumptions result in a $1.477 billion secured recovery and $950 million deficiency recovery (without consideration of intercompany claims or a direct lien on the AFI contribution)

- ■ This analysis confirms that even if the Debtors' disputed valuation is used and the Committee's collateral challenges are successful, the JSNs recover in full on their prepetition claim. Additionally, there is excess recovery available to pay a portion of the JSNs' post petition interest

| JSNs' Total Recovery By Entity ($ in millions) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Issuer | Guarantors | | | | | | Grand Total |
| | HoldCo | GMACM | GMACM HoldCo | RFC | RFC HoldCo | Home-Comings | All Other | |
| Total Secured Recovery[1][2] | $ 159 | $ 1,211 | $ - | $ 107 | $ - | $ - | $ 0 | $ 1,477 |
| Memo: Deficiency Claim | 2,063 | 1,012 | 2,223 | 2,116 | 2,223 | 2,223 | NA | NA |
| Plus: Deficiency Recovery[3] | 390 | 304 | 0 | 256 | | 0 | - | 950 |
| Initial Total Recovery | $ 549 | $ 1,515 | $ 0 | $ 363 | $ - | $ 0 | $ 0 | $ 2,427 |

(1) Waterfall Model's recreation of Debtors' Renzi Report secured recovery valuation; excludes impact of all currently-litigated issues, except Committee's collateral challenges listed
(2) The value of equity pledges is included in the parent entity that pledges such equity, including the Barclays DIP borrowers
(3) Waterfall Model's projected recovery output; differs from Debtors' recovery allocation proposed under the Disclosure Statement, as (i) deficiency recovery is not limited by the amount of the allowed claim; (ii) the Debtors' allocate additional Admin Claims to the JSNs' collateral beyond what has already been charged and (iii) the Debtors do not assume the JSNs have a deficiency claim, rather allocate enough collateral to the JSNs to repay the JSNs' assumed claim in full

HOULIHAN LOKEY    18

| Recovery Scenarios & Analyses | # Deficiency Claim Aggregation Conclusion |
|---|---|

- As shown on the previous slide, even if it is assumed that the Committee prevails on its collateral challenges in the Adversary Proceeding and the JSNs' secured recovery from the Debtors' Collateral Scenario is reduced by $411 million, the JSNs still recover at least the full amount of their assumed allowed claim of $2,223 million as a result of the JSNs' ability to assert multiple deficiency claims at their issuer and guarantor legal entities, and there is excess recovery available to pay at least a portion of the JSNs' post-petition interest

| Recovery Scenarios & Analyses | # Select Issues With Debtors' Hypothetical Chapter 7 Liquidation Analysis |
|---|---|

- The Debtors' Liquidation Analysis, which provides low and high liquidation recovery scenarios under which the JSNs are shown to not recover their full $2,223 million assumed allowed claim, is misleading for several reasons:

  - The Debtors' liquidation analysis ascribes zero value to claims against AFI, despite the $2.1 billion settlement between ResCap and AFI contemplated under the Debtors' Plan of Reorganization and the claims identified by the Examiner, which include approximately $3.1 billion of ResCap causes-of-action deemed "likely to prevail" or "more than likely to prevail" and approximately $5.5 billion of total causes-of-action

    - ➤ Counsel has informed me that claims against AFI will survive in a liquidation and therefore it is inappropriate to ascribe zero value to such claims

  - The Debtors' liquidation analysis ascribes zero value to intercompany claims

  - The Debtors' liquidation analysis also makes certain disputed assumptions about the size and priority of unsecured claims

# Conclusions

## Conclusions | Summary of Conclusions

- Based on the analysis contained herein, I have reached the conclusions as set forth herein

Houlihan Lokey Capital, Inc.

_____

Michael Fazio, Managing Director

# Appendices

# Appendices

## Schedule of Intercompany Claims

## Schedule of Intercompany Claims

# Scheduled Intercompany Claims

| ECF Number | Lender (Receiving Entity) | Borrower (Paying Entity) | Claim ($ mm) | JSNs Recovery Impact |
|---|---|---|---|---|
| 0549 | Residential Capital, LLC | GMAC Residential Holding Company, LLC | $ 3,295.6 | Direct Lien |
| 0548 | Residential Funding Company, LLC | Residential Capital, LLC | 1,955.0 | Direct Lien |
| 0579 | Homecomings Financial, LLC | Residential Funding Company, LLC | 1,251.5 | Direct Lien |
| 0582 | Passive Asset Transactions, LLC | GMAC Mortgage, LLC | 689.2 | Equity Pledge |
| 0561 | Executive Trustee Services, LLC | GMAC Mortgage, LLC | 276.5 | Equity Pledge |
| 0548 | Residential Funding Company, LLC | RFC Asset Holdings II, LLC | 231.9 | Direct Lien |
| 0548 | Residential Funding Company, LLC | GMAC Mortgage, LLC | 133.7 | Direct Lien |
| 0565 | GMAC Residential Holding Company, LLC | GMAC Mortgage, LLC | 108.0 | Direct Lien |
| 0550 | GMAC Mortgage, LLC | GMAC Residential Holding Company, LLC | 58.2 | Direct Lien |
| 0575 | Home Connects Lending Services, LLC | GMAC Residential Holding Company, LLC | 54.6 | - |
| 0567 | GMAC RH Settlement Service, LLC | Home Connects Lending Services, LLC | 50.0 | Equity Pledge |
| 0588 | RFC Asset Management, LLC | Residential Funding Company, LLC | 45.7 | Equity Pledge |
| 0549 | Residential Capital, LLC | GMAC Residential Holding Company, LLC | 38.3 | Direct Lien |
| 0595 | RFC SFJV-2002, LLC | RFC Asset Management, LLC | 36.3 | - |
| 0550 | GMAC Mortgage, LLC | CAP RE of Vermont LLC | 17.5 | Direct Lien |
| 0566 | RCSFJV2004, LLC | Residential Funding Company, LLC | 17.0 | - |
| 0579 | Homecomings Financial, LLC | RFC Asset Holdings II, LLC | 11.9 | Direct Lien |
| 0548 | GMAC Res Fund of Canada | Residential Funding Company, LLC | 11.4 | - |
| 0550 | GMAC Mortgage, LLC | Executive Trustee Services, LLC | 10.9 | Direct Lien |
| 0550 | GMAC Mortgage, LLC | GMAC RH Settlement Service, LLC | 9.6 | Direct Lien |
| 0582 | Passive Asset Transactions, LLC | GMAC Mortgage, LLC | 7.8 | Equity Pledge |
| 0548 | Residential Funding Company, LLC | GMAC Mortgage, LLC | 6.0 | Direct Lien |
| 0548 | Residential Funding Company, LLC | RFC SFJV-2002, LLC | 5.8 | Direct Lien |
| 0588 | RFC Asset Management, LLC | RCSFJV2004, LLC | 5.7 | Equity Pledge |
| 0548 | Residential Funding Company, LLC | Equity Investments I, LLC | 5.2 | Direct Lien |
| 0548 | Residential Funding Company, LLC | DOA Holding Properties, LLC | 3.7 | Direct Lien |
| 0550 | GMAC Mortgage, LLC | Homecomings Financial, LLC | 3.0 | Direct Lien |
| 0550 | GMAC Mortgage, LLC | Home Connects Lending Services, LLC | 3.0 | Direct Lien |
| 0549 | Residential Capital, LLC | GMAC Mortgage, LLC | 2.7 | Direct Lien |
| 0595 | RFC SFJV-2002, LLC | RCSFJV2004, LLC | 2.6 | - |

*Source:  Debtors' SOALs (as noted)*

**Schedule of Intercompany Claims**

# Scheduled Intercompany Claims (cont.)

| ECF Number | Lender (Receiving Entity) | Borrower (Paying Entity) | Claim ($ mm) | JSNs Recovery Impact |
|---|---|---|---|---|
| 0551 | ditech, LLC | GMAC Mortgage, LLC | 2.6 | Equity Pledge |
| 0562 | GMAC Model Home Finance I, LLC | Residential Funding Company, LLC | 2.0 | Equity Pledge |
| 0549 | Residential Capital, LLC | RFC Asset Holdings II, LLC | 1.7 | Direct Lien |
| 0565 | GMAC Residential Holding Company, LLC | GMAC Mortgage, LLC | 1.5 | Direct Lien |
| 0558 | ETS of Virginia, Inc. | Executive Trustee Services, LLC | 1.2 | - |
| 0564 | GMAC Mortgage USA Corporation | GMAC Mortgage, LLC | 0.6 | Equity Pledge |
| 0584 | Residential Consumer Services, LLC | GMAC Mortgage, LLC | 0.5 | Equity Pledge |
| 0550 | GMAC Mortgage, LLC | Residential Consumer Services, LLC | 0.5 | Direct Lien |
| 0591 | RFC Construction Funding, LLC | Residential Funding Company, LLC | 0.4 | Equity Pledge |
| 0561 | Executive Trustee Services, LLC | Residential Funding Company, LLC | 0.4 | Equity Pledge |
| 0586 | RFC Asset Holdings II, LLC | Passive Asset Transactions, LLC | 0.3 | Equity Pledge |
| 0550 | GMAC Mortgage, LLC | Home Connects Lending Services, LLC | 0.2 | Direct Lien |
| 0550 | GMAC Mortgage, LLC | Executive Trustee Services, LLC | 0.2 | Direct Lien |
| 0550 | GMAC Mortgage, LLC | CAP RE of Vermont LLC | 0.2 | Direct Lien |
| 0558 | ETS of Virginia, Inc. | Executive Trustee Services, LLC | 0.2 | - |
| 0549 | Residential Capital, LLC | Residential Funding Company, LLC | 0.1 | Direct Lien |
| 0548 | Residential Funding Company, LLC | DOA Properties IX (Lots-Other), LLC | 0.1 | Direct Lien |
| 0549 | Residential Capital, LLC | GMAC RFC Europe Limited | 0.0 | Direct Lien |
| 0550 | GMAC Mortgage, LLC | ETS of Washington, Inc. | 0.0 | Direct Lien |
| 0558 | ETS of Virginia, Inc. | GMAC Mortgage, LLC | 0.0 | - |
| 0561 | Executive Trustee Services, LLC | ETS of Washington, Inc. | 0.0 | Equity Pledge |
| 0548 | Residential Funding Company, LLC | Home Connects Lending Services, LLC | 0.0 | Direct Lien |
| 0550 | GMAC Mortgage, LLC | Executive Trustee Services, LLC | 0.0 | Direct Lien |
| 0564 | GMAC Mortgage USA Corporation | GMAC Mortgage, LLC | 0.0 | Equity Pledge |
| 0550 | GMAC Mortgage, LLC | ditech, LLC | 0.0 | Direct Lien |
| 0550 | GMAC Mortgage, LLC | ETS of Virginia, Inc. | 0.0 | Direct Lien |
| 0595 | RFC SFJV-2002, LLC | Homecomings Financial, LLC | 0.0 | - |
| 0579 | Homecomings Financial, LLC | RFC Asset Management, LLC | 0.0 | Direct Lien |

*Source: Debtors' SOALs (as noted)*

# Debt Forgiveness by Year

**Schedule of Intercompany Claims**

## Debt Forgiveness by Year[1] ($ in millions)

| Forgiven By | In Favor Of | Entity Status | Year | | | | | Grand Total |
|---|---|---|---|---|---|---|---|---|
| | | | 2008 | 2009 | 2010 | 2011 | 2012 | |
| **Residential Capital, LLC** | Residential Funding Co., LLC | Debtor | $ 2,000 | $ 151 | $ - | $ - | $ - | $ 2,151 |
| | GMAC RFC Europe Limited | Non Debtor/Active | 1,800 | - | - | - | - | 1,800 |
| | GMAC - RFC (UK) Limited | Sold 9/30/2010 | 725 | 371 | 80 | - | - | 1,176 |
| | GMAC RFC Investment B.V. | Sold 10/01/2010 | 154 | 435 | - | - | - | 589 |
| | Investments BV GX1 | SPE/Active | - | 165 | 285 | 3 | - | 452 |
| | RFC UK Ltd Viaduct | SPE/Active | 15 | 175 | 231 | - | - | 420 |
| | GMAC Res Fund of Canada | Non Debtor/Active | 154 | 5 | - | - | - | 159 |
| | Australia GMAC RFC | Sold 7/02/2009 | 23 | 122 | - | - | - | 145 |
| | Viaduct (no.7) | SPE/Active | - | - | - | - | 134 | 134 |
| | Financiera Auritec, S.A. | Non Debtor/Active | - | 39 | - | - | - | 39 |
| | GMAC-RFC Property Finance Ltd | Non Debtor/Active | - | 33 | - | - | - | 33 |
| | PREEMAC 2 NL NETH B.V. | SPE/Active | - | - | 19 | 3 | - | 22 |
| | Subtotal | | $ 4,871 | $ 1,495 | $ 615 | $ 5 | $ 134 | $ 7,120 |
| **GMAC Residential Holding Co LLC** | GMAC Mortgage LLC | Debtor | $ - | $ 2,520 | $ - | $ - | $ - | $ 2,520 |
| **Residential Funding Co., LLC** | RFC Asset Holdings II, LLC | Debtor | $ 1,228 | $ - | $ - | $ - | $ - | $ 1,228 |
| | GMAC Model Home Finance, LLC | Sold 6/2008 | 481 | - | - | - | - | 481 |
| | Equity Investment I, LLC | Debtor | 392 | - | - | - | - | 392 |
| | RC Properties I, LLC | Dissolved 12/30/2011 | - | 88 | - | - | - | 88 |
| | CMH Holdings, LLC | Non Debtor/Active | 48 | - | - | - | - | 48 |
| | DOA Properties IX, LLC | Debtor | - | - | - | 45 | - | 45 |
| | DOA Holding Properties, LLC | Debtor | 43 | 0 | - | - | - | 43 |
| | DOA Properties I, LLC | Dissolved 8/09/2011 | 31 | - | - | - | - | 31 |
| | Equity Investment IV | Dissolved 8/09/2011 | - | 21 | - | - | - | 21 |
| | KBOne, LLC | Sold 6/2008 | 18 | - | - | 1 | - | 18 |
| | DOA Properties II, LLC | Dissolved 8/09/2011 | 14 | - | - | - | - | 14 |
| | RFC-GSAP Servicer Advance, LLC | Debtor | 7 | - | - | - | - | 7 |
| | DOA Properties IV, LLC | Dissolved 12/30/2011 | - | - | - | 7 | - | 7 |
| | Developers of Hidden Springs | Dissolved 12/30/2011 | 6 | - | - | - | - | 6 |
| | DOA Holdings NoteCo, LLC | Dissolved 4/12/2012 | - | - | - | 5 | - | 5 |
| | REG-PFH, LLC | Dissolved 12/30/2001 | 5 | - | - | - | - | 5 |
| | LenOne, LLC | Sold 6/2008 | 4 | - | - | 0 | - | 4 |
| | RFC Construction Funding LLC | Debtor | - | - | - | 2 | - | 2 |
| | Hidden Springs Sewer Company | Sold 9/23/2009 | 2 | - | - | - | - | 2 |
| | GMAC Model Home I, LLC | Debtor | - | 1 | - | - | - | 1 |

(1)  Per RCUCCJSN11270924

# Debt Forgiveness by Year (cont.)

**Schedule of Intercompany Claims**

## Debt Forgiveness by Year[1] ($ in millions)

| Forgiven By | In Favor Of | Entity Status | 2008 | 2009 | 2010 | 2011 | 2012 | Grand Total |
|---|---|---|---|---|---|---|---|---|
| **Residential Funding Co., LLC** | Ameriland LLC | Dissolved 12/30/2011 | 1 | - | - | - | - | 1 |
| | GMCMTH, LLC | Sold 6/2008 | 0 | - | - | 0 | - | 1 |
| | DOA Properties IIIB, LLC | Sold 9/30/2008 | - | - | - | 0 | - | 0 |
| | DOA Properties V, LLC | Dissolved 12/30/2011 | 0 | - | - | - | - | 0 |
| | DOA Properties VIII, LLC | Cancelled 6/06/2008 | - | 0 | - | - | - | 0 |
| | RFC Resort Funding LLC | Sold 7/23/2008 | - | - | - | 0 | - | 0 |
| | DOA Properties VII, LLC | Dissolved 8/09/2011 | 0 | - | - | - | - | 0 |
| | Subtotal | | $ 2,280 | $ 111 | $ - | $ 61 | $ - | $ 2,452 |
| **Passive Asset Transactions LLC** | Flume (no.8) | SPE/Active | $ - | $ - | $ 351 | $ - | $ 53 | $ 404 |
| | GX CE Funding II B.V. | SPE/Active | - | - | 311 | - | - | 311 |
| | Subtotal | | $ - | $ - | $ 662 | $ - | $ 53 | $ 715 |
| **RFC Asset Holdings II, LLC** | CMH Holdings, LLC | Sold to CMH 6/2008 | $ - | $ - | $ - | $ 209 | $ - | $ 209 |
| **Homecomings Financial, LLC** | GMAC Model Home Finance, LLC | Sold 6/2008 | $ - | $ - | $ - | $ 0 | $ - | $ 0 |
| | DOA Properties IIIB, LLC | Sold 9/30/2008 | - | - | - | 0 | - | 0 |
| | KBOne, LLC | Sold 6/2008 | - | - | - | 0 | - | 0 |
| | LenOne, LLC | Sold 6/2008 | - | - | - | 0 | - | 0 |
| | Subtotal | | $ - | $ - | $ - | $ 0 | $ - | $ 0 |
| | Subtotal of Top Interco Notes | | $ 7,150 | $ 4,126 | $ 1,277 | $ 275 | $ 187 | $ 13,015 |
| **GMAC Model Home Finance, LLC** | Various | | $ 636 | $ - | $ - | $ 503 | $ - | $ 1,139 |
| **CMH Holdings, LLC** | Various | | - | - | - | 457 | - | 457 |
| **Flume (no.8)** | Various | | - | - | 351 | - | 53 | 404 |
| **GX CE Funding II B.V.** | Various | | - | - | 311 | - | - | 311 |
| **DOA Holding Properties, LLC** | Various | | - | - | - | 268 | - | 268 |
| **Remaining** | Various | | 89 | - | - | 773 | 134 | 997 |
| | Total | | $ 7,876 | $ 4,126 | $ 1,938 | $ 2,276 | $ 374 | $ 16,589 |
| | *Memo: % of Total* | | 47% | 25% | 12% | 14% | 2% | 100% |

*(1)  Per RCUCCJSN11270924*

HOULIHAN LOKEY    28

## Stratification of Previously-Forgiven Intercompany Claims

**Schedule of Intercompany Claims**

| | Previously-Forgiven Intercompany Claim Summary ($ in millions) | | | |
|---|---|---|---|---|
| Category | Relationships | | Amount | Comments |
| Offset / Reduce Existing InterCo Claims | 30 | $ | 9,061 | Claims between the same legal entities as existing intercompany claims |
| Dilute Existing InterCo Claims | 28 | | 1,272 | Claims owed from entities that are obligors on existing intercompany claims |
| Less:  Duplicates | (7) | | (923) | Claims included in both categories above |
| Claims Benefiting JSNs' Recovery | 49 | | 6,328 | Additional value into Debtors' estates (receivables from entities outside Waterfall Model) |
| Other / No Impact | 5 | | 850 | No impact on Debtors' Collateral Scenario (claims between entities outside Waterfall Model) |
| **Total** | **105** | **$** | **16,589** | |

# Appendices

## Legal Entities

**Legal Entities**

# Waterfall Model Entities

**Debtors Included In Waterfall Model**
- GMAC-RFC Holding Company, LLC
- Residential Funding Company, LLC
- Homecomings Financial, LLC
- RFC Borrower LLC (DIP Borrower)
- RFC Asset Holdings II, LLC
- Equity Investments I, LLC
- Residential Funding Mortgage Exchange, LLC
- RFC Asset Management, LLC
- RFC SFJV-2002, LLC
- RCSFJV2004, LLC
- GMAC Model Home Finance I, LLC
- DOA Holding Properties, LLC
- DOA Properties IX (Lots-Other), LLC
- RFC Construction Funding, LLC
- Residential Capital, LLC
- GMAC Mortgage, LLC
- Executive Trustee Services, LLC
- Residential Consumer Services, LLC
- GMAC Mortgage USA Corporation
- ETS of Washington, Inc
- ETS of Virginia, Inc.
- GMACM Borrower LLC (DIP Borrower)
- Ditech, LLC
- GMAC Residential Holding Company, LLC
- GMAC RH Settlement Service, LLC
- Home Connects Lending Services, LLC
- Passive Asset Transactions, LLC

**Non-Debtors Included In Waterfall Model**
- GMAC Model Home Finance, LLC
- CMH Holdings, LLC
- GMEN 04 Variable Funding Trust
- GMAC Mortgage Servicer Advance Fund

**Debtors Excluded From Waterfall Model**
- EPRE LLC
- GMACM REO LLC
- GMACR Mortgage Products, LLC
- HFN REO Sub II, LLC
- Homecomings Financial Real Estate Holdings, LLC
- Ladue Associates, Inc.
- PATI A, LLC
- PATI B, LLC
- PATI Real Estate Holdings, LLC
- RAHI A, LLC
- RAHI B, LLC
- RAHI Real Estate Holdings, LLC
- Residential Accredit Loans, Inc.
- Residential Asset Mortgage Products, Inc.
- Residential Asset Securities Corporation
- Residential Consumer Services of Alabama, LLC
- Residential Consumer Services of Ohio, LLC
- Residential Consumer Services of Texas, LLC
- Residential Funding Mortgage Securities I, Inc.
- Residential Funding Mortgage Securities II, Inc.
- Residential Funding Real Estate Holdings, LLC
- Residential Mortgage Real Estate Holdings, LLC
- RFC – GSAP Servicer Advance, LLC
- RFC REO LLC

**HOULIHAN LOKEY**    31

# Appendices

## Due Diligence Conducted

| Due Diligence Conducted | # Due Diligence Conducted |
|---|---|

**In conjunction with preparing the Report, Houlihan Lokey has made the reviews, analyses and inquiries we deemed necessary and appropriate, including, but not limited to, the following:**

- ECF #s 548-595 (Debtors' SOALs)

- ECF # 4819 (Corrected Solicitation Version of the Disclosure Statement and Joint Chapter 11 Plan)

- RENZI0000001 (April 30, 2013 Trial Balances)

- RENZI00000002 (Estimated Recovery On Remaining Assets)

- RENZI00000003 (Ocwen True-Up Summary)

- EXAM00345894 (ResCap – Intercompany Transactions Presentation)

- RCUCCJSN00012496 (Post-Petition Intercompany Claims)

- RCUCCJSN00030213 (Draft Trial Balance)

- RCUCCJSN11270924 (Forgiven Intercompany Claim Balances)

- Expert Report of Mark Renzi dated September 20, 2013

- JSNs' Indenture Dated as of June 6, 2008

- JSNs' Amended and Restated Third Priority Pledge and Security Agreement and Irrevocable Proxy Dated December 30, 2009

HOULIHAN LOKEY    33

# Appendices

## Expert Qualifications

Expert Qualifications | # Biography

## Michael Fazio

Mr. Fazio is a Managing Director in Houlihan Lokey's Financial Restructuring Group and Co-Head of the firm's European Financial Institutions Group. Mr. Fazio previously lead the firm's Global Portfolio Valuation Practice and its New York office Financial Advisory Services Practice. He brings nearly three decades of experience in advisory services in connection with acquisitions, divestitures, corporate strategy, operational oversight, and restructurings for financial institutions. He advised the Official Committee of Unsecured Creditors of Lehman Brothers Holdings, Inc. in connection with the company's bankruptcy. As part of that engagement, he valued and restructured the significant derivatives and special purpose vehicle portfolios of Lehman Brothers and was involved in oversight of the Lehman Banks. He previously advised the Official Committee of Unsecured Creditors of Refco, Inc. in connection with its bankruptcy and advised in the restructurings of the structured investment vehicles Cheyne and Mainsail II. He also advised a committee of bondholders of CIT Group in their recent $3 billion financing. Mr. Fazio is based in the firm's London office. Mr. Fazio is a member of the firm's management committee

Before joining Houlihan Lokey, Mr. Fazio was President and Chief Operating Officer of Comdisco, Inc., an $8 billion equipment-leasing and technology services company, which he led through the bankruptcy process. Earlier, he served as Executive Vice President/Managing Director and COO-Americas of Deutsche Bank AG, managing the integration of Deutsche Bank NA and Bankers Trust Corp., as well as directing all non-front office functions in the Americas (Legal, Controlling, Risk Management, Real Estate, and Operations). He chaired the bank's regional operating committee and was a member of the executive committee

Mr. Fazio began his career at Arthur Andersen LLP, where he was partner-in-charge of the New York Banking, Brokerage and Investment Banking Industry practice in his last position with the firm. His responsibilities there included serving as lead partner in the firm's relationship with J.P. Morgan, Bankers Trust, Bank of America, and Deutsche Bank. He was a member of the firm's Financial Markets Global Advisory Group, responsible for setting the strategic direction of the firm's industry program, developing methodology, marketing, and implementation

Mr. Fazio received a joint B.B.A./MBA, with honors, in Accounting from Pace University. He was a Certified Public Accountant and a member of AICPA. Mr. Fazio is a Series 7, 24, 79, and 63 certified representative

# Appendices

## Compensation of Expert

| Compensation of Expert | # Compensation of Expert |
|---|---|

- Houlihan Lokey is receiving a professional fee, reflected in its Engagement Letter, in the total amount of $2,500,000, for conducting the expert analyses and opinions contained in the expert reports provided by Houlihan Lokey personnel.  No portion of those fees is contingent upon any conclusions reached by Houlihan Lokey or the outcome of the Chapter 11 proceedings

# **Exhibit B**

# Residential Capital, LLC

## Rebuttal Report to the Expert Report of Mark A Renzi

November 1, 2013

Residential Capital, LLC

# Table of Contents

| | Page |
|---|---|
| Executive Summary | 2 |
| Recovery Scenarios – Liquidation Analysis | 4 |
| Recovery Scenarios – Partial Consolidation | 9 |
| Conclusion | 11 |
| Appendices | 13 |
|    Due Diligence Conducted | 14 |

# Executive Summary

# Overview of Report

■ This report (the "Rebuttal Report") has been prepared by Michael Fazio on behalf of Houlihan Lokey Capital, Inc. ("Houlihan Lokey") at the request of White & Case LLP and Milbank, Tweed, Hadley & McCloy LLP as counsel to the Ad Hoc Group of Junior Secured Noteholders ("Ad Hoc Group") of the 9.625% Junior Secured Guaranteed Notes due 2015 ("JSNs") and counsel to UMB Bank, N.A. as Trustee for the JSNs ("Trustee"), and Akin Gump Strauss Hauer & Feld LLP as special litigation counsel to the Trustee, in connection with that certain consolidated adversary proceeding (Adv. Pro. Nos. 13-01343 and 13-01277 (collectively, the "Adversary Proceeding")) and confirmation of the proposed plan of reorganization ("Plan") of Residential Capital, LLC ("ResCap", the "Company" or the "Debtors") in the U.S. Bankruptcy Court for the Southern District of New York, Case No. 12-12020. The Rebuttal Report responds to the assumptions and conclusions expressed in the expert report of Mark A. Renzi dated October 18, 2013 (the "Renzi Report")

■ Although this Rebuttal Report is being submitted to address the specific matters described herein, Houlihan Lokey reserves the right to object to any of the conclusions reached or opinions expressed in the report filed by the expert noted above and reserves the right to supplement the analysis and conclusions in the Report or the Rebuttal Report to the extent that Houlihan Lokey receives additional information from the Company, or additional or different facts and circumstances become known to us as part of the discovery process, in connection with the confirmation hearing before the Bankruptcy Court, or otherwise

■ Except as otherwise identified in this Rebuttal Report, the analysis and opinions expressed herein are presented on the same basis, and are subject to the same assumptions and limitations, as those set forth in the Expert Report of Michael Fazio – Recovery Analysis, dated October 18, 2013 (the "Report")

HOULIHAN LOKEY    3

# Recovery Scenarios – Liquidation Analysis

Recovery Scenarios –
Liquidation Analysis

# Liquidation Analysis Scenarios

■ Houlihan Lokey has been asked by counsel to provide sensitivity outputs on the JSNs' projected recoveries under the hypothetical liquidation analysis included as Annex B in the Renzi Report (the "Liquidation Analysis"):

**Ⓐ** Ally Contribution:  Utilize the Debtors' Liquidation Analysis assumptions, but include a range of net Ally contribution / settlement value, assuming such value is allocated pro-rata to direct claimants and legal entities in the same manner as the $2.1 billion allocation included in the Debtors' Disclosure Statement

➤ The Debtors' Liquidation Analysis ascribes no value (or cost) associated with claims against Ally

**Ⓑ** Intercompany Claims:  Utilize the Debtors' Liquidation Analysis assumptions, but include a range of net Ally contribution / settlement value and assume the Debtors' intercompany claims existing on the petition date are valid as scheduled

➤ The Debtors' Liquidation Analysis does not include or account for existing intercompany claims

**Ⓒ** Claim Subordination:  Utilize the Debtors' Liquidation Analysis assumptions, but include a range of net Ally contribution / settlement value, assume the Debtors' intercompany claims are valid as scheduled, and assume all RMBS, monoline and securities claims included in the Debtors' scenarios are subordinated to general unsecured creditors

➤ The Debtors subordinate securities claims, but not RMBS or monoline claims, in their "High" recovery Liquidation Analysis scenario

■ The amounts presented herein are derived using the Waterfall Model described in my initial Report, adjusted for assumptions underlying the Debtors' Liquidation Analysis

● The use of these assumptions is for illustrative purposes only and is done so only to isolate and quantify the impact of certain individual assumptions on the Liquidation Analysis' projected recoveries.  As noted on page 10 of my Report, the Debtors' estimate of liquidation values includes certain assumptions that are being litigated in the Adversary Proceeding.  It is not the intent of this Rebuttal Report to opine on such disputed issues which the Court will address.

● Houlihan Lokey is providing no opinion on the merits or validity of any assumptions utilized herein

**Ⓗ HOULIHAN LOKEY**    5

**Recovery Scenarios – Liquidation Analysis**

# Ally Contribution Impact on JSNs' Recovery

**Ⓐ** The table below shows a range of JSNs' recoveries under the Debtors' Liquidation Analysis, adjusted to (i) incorporate subsequent events (specifically the Ocwen true-up) and (ii) include the potential impact of Ally contribution / settlement value

● As indicated in my initial Report on pages 17-18, it is possible for the JSNs to recover more from their deficiency claims than is required to satisfy their allowed claim.  For the purposes of this analysis, total JSNs' recovery in the event the JSNs are under-secured is limited to their allowed claim (i.e., any deficiency claim recovery in excess of $2,223 million is not included)

($ in millions)

| | | Secured Recovery Low | High | Deficiency Recovery Low | High | Total Recovery Low | High |
|---|---|---|---|---|---|---|---|
| **Debtors' Disclosure Statement Analysis** | **Entity** | | | | | | |
| | Residential Capital, LLC | $ 157 | $ 157 | $ 1 | $ 4 | $ 158 | $ 161 |
| | GMAC Mortgage, LLC | 1,178 | 1,268 | 65 | 77 | 1,243 | 1,345 |
| | Passive Asset Transactions, LLC | 37 | 41 | 0 | 0 | 37 | 41 |
| | Executive Trustee Services, LLC | 7 | 8 | 0 | 0 | 7 | 8 |
| | Residential Funding Company, LLC | 47 | 51 | 42 | 79 | 89 | 129 |
| | RFC Asset Holdings II, LLC | 28 | 28 | 0 | 0 | 28 | 28 |
| | Homecomings Financial, LLC | 0 | 0 | 0 | 0 | 0 | 0 |
| | All Others | 1 | 1 | 0 | 0 | 1 | 1 |
| | **Total** | $ 1,454 | $ 1,553 | $ 109 | $ 160 | $ 1,563 | $ 1,712 |
| **Adjustments** | **Issue** | | | | | | |
| | Ocwen True-Up [1][2] | 51 | 51 | 3 | 2 | 54 | 53 |
| | **Adjusted Total** | $ 1,505 | $ 1,603 | $ 111 | $ 162 | $ 1,616 | $ 1,765 |
| **Ally Contribution Impact On Deficiency Claim Recovery** | **Amount of Net Ally Contribution [3][4]** | | | | | | |
| | - | 1,505 | 1,603 | 111 | 162 | 1,617 | 1,765 |
| | 250 | 1,505 | 1,603 | 154 | 250 | 1,659 | 1,853 |
| | 500 | 1,505 | 1,603 | 196 | 339 | 1,701 | 1,942 |
| | 750 | 1,505 | 1,603 | 238 | 427 | 1,743 | 2,031 |
| | 1,000 | 1,505 | 1,603 | 280 | 516 | 1,786 | 2,119 |
| | 1,250 | 1,505 | 1,603 | 323 | 604 | 1,828 | 2,208 |
| | 1,500 | 1,505 | 1,603 | 365 | 619 | 1,870 | 2,223 |
| | 1,750 | 1,505 | 1,603 | 407 | 619 | 1,912 | 2,223 |
| | 2,000 | 1,505 | 1,603 | 449 | 619 | 1,955 | 2,223 |
| | 2,100 | 1,505 | 1,603 | 466 | 619 | 1,971 | 2,223 |
| | 2,250 | 1,505 | 1,603 | 492 | 619 | 1,997 | 2,223 |
| | 2,500 | 1,505 | 1,603 | 534 | 619 | 2,039 | 2,223 |
| | 2,750 | 1,505 | 1,603 | 576 | 619 | 2,081 | 2,223 |
| | 3,000 | 1,505 | 1,603 | 618 | 619 | 2,124 | 2,223 |

(1)  Impact of $68 million received from Ocwen subsequent to April 30, 2013, the date of the Liquidation Analysis asset balances; $51 million allocated to JSNs
(2)  Allocated impact to GMACM
(3)  Net of costs; assumed allocated pro-rata to direct claimants and legal entities in the same manner as the proposed contribution in the Disclosure Statement
(4)  This analysis does not take into account any lien the JSNs may have on any portion of the Ally contribution / settlement

HOULIHAN LOKEY    6

## Intercompany Claim & Ally Contribution Impact on JSNs' Recovery

Recovery Scenarios – Liquidation Analysis

**B** The table below includes the same assumptions as the prior page, and also assumes intercompany claims existing on the petition date are valid as scheduled

- In this scenario, the JSNs' collateral value increases from Ally contribution / settlement value due to increased secured recovery and deficiency recovery on intercompany claims. As a result, the secured recovery in some instances is greater than the JSNs' assumed allowed claim of $2,223 million.

*($ in millions)*

| | Entity | Secured Recovery Low | Secured Recovery High | Deficiency Recovery Low | Deficiency Recovery High | Total Recovery Low | Total Recovery High |
|---|---|---|---|---|---|---|---|
| **Debtors' Disclosure Statement Analysis** | Residential Capital, LLC | $ 157 | $ 157 | $ 1 | $ 4 | $ 158 | $ 161 |
| | GMAC Mortgage, LLC | 1,178 | 1,268 | 65 | 77 | 1,243 | 1,345 |
| | Passive Asset Transactions, LLC | 37 | 41 | 0 | 0 | 37 | 41 |
| | Executive Trustee Services, LLC | 7 | 8 | 0 | 0 | 7 | 8 |
| | Residential Funding Company, LLC | 47 | 51 | 42 | 79 | 89 | 129 |
| | RFC Asset Holdings II, LLC | 28 | 28 | 0 | 0 | 28 | 28 |
| | Homecomings Financial, LLC | 0 | 0 | 0 | 0 | 0 | 0 |
| | All Others | 1 | 1 | 0 | 0 | 1 | 1 |
| | **Total** | $ 1,454 | $ 1,553 | $ 109 | $ 160 | $ 1,563 | $ 1,712 |
| **Adjustments** | **Issue** | | | | | | |
| | Ocwen True-Up[1][2] | 51 | 51 | 3 | 2 | 54 | 53 |
| | InterCompany Claims[3] | 85 | 120 | (22) | (34) | 63 | 86 |
| | **Adjusted Total** | $ 1,590 | $ 1,724 | $ 89 | $ 127 | $ 1,679 | $ 1,851 |

| | Amount of Net Ally Contribution[4][5] | Secured Recovery Low | Secured Recovery High | Deficiency Recovery Low | Deficiency Recovery High | Total Recovery Low | Total Recovery High |
|---|---|---|---|---|---|---|---|
| **Ally Contribution Impact On InterCompany Claim Recovery & Deficiency Claim Recovery** | - | 1,590 | 1,724 | 89 | 127 | 1,679 | 1,851 |
| | 250 | 1,624 | 1,781 | 122 | 184 | 1,746 | 1,965 |
| | 500 | 1,657 | 1,838 | 155 | 240 | 1,812 | 2,078 |
| | 750 | 1,691 | 1,896 | 187 | 295 | 1,878 | 2,190 |
| | 1,000 | 1,725 | 2,010 | 219 | 212 | 1,944 | 2,223 |
| | 1,250 | 1,759 | 2,158 | 251 | 65 | 2,010 | 2,223 |
| | 1,500 | 1,793 | 2,273 | 282 | 0 | 2,075 | 2,273 |
| | 1,750 | 1,827 | 2,360 | 313 | 0 | 2,140 | 2,360 |
| | 2,000 | 1,861 | 2,446 | 344 | 0 | 2,205 | 2,446 |
| | 2,100 | 1,877 | 2,481 | 345 | 0 | 2,223 | 2,481 |
| | 2,250 | 1,909 | 2,533 | 314 | 0 | 2,223 | 2,533 |
| | 2,500 | 1,962 | 2,620 | 261 | 0 | 2,223 | 2,620 |
| | 2,750 | 2,014 | 2,707 | 208 | 0 | 2,223 | 2,707 |
| | 3,000 | 2,067 | 2,793 | 156 | 0 | 2,223 | 2,793 |

(1)  Impact of $68 million received from Ocwen subsequent to April 30, 2013, the date of the Liquidation Analysis asset balances; $51 million allocated to JSNs
(2)  Allocated impact to GMACM
(3)  Debtors' Liquidation Analysis does not include value from intercompany claims
(4)  Net of costs; assumed allocated pro-rata to direct claimants and legal entities in the same manner as the proposed contribution in the Disclosure Statement
(5)  This analysis does not take into account any lien the JSNs may have on any portion of the Ally contribution / settlement

| Recovery Scenarios – Liquidation Analysis | Claim Subordination, Intercompany Claim & Ally Contribution Impact on JSNs' Recovery |

C The table below includes the same assumptions as the prior page, and also assumes all RMBS, Monoline and Securities claims are subordinated in both the Debtors' low and high scenarios:[1]

($ in millions)

| | | Secured Recovery | | Deficiency Recovery | | Total Recovery | |
|---|---|---|---|---|---|---|---|
| | **Entity** | Low | High | Low | High | Low | High |
| **Debtors' Disclosure Statement Analysis** | Residential Capital, LLC | $ 157 | $ 157 | $ 1 | $ 4 | $ 158 | $ 161 |
| | GMAC Mortgage, LLC | 1,178 | 1,268 | 65 | 77 | 1,243 | 1,345 |
| | Passive Asset Transactions, LLC | 37 | 41 | 0 | 0 | 37 | 41 |
| | Executive Trustee Services, LLC | 7 | 8 | 0 | 0 | 7 | 8 |
| | Residential Funding Company, LLC | 47 | 51 | 42 | 79 | 89 | 129 |
| | RFC Asset Holdings II, LLC | 28 | 28 | 0 | 0 | 28 | 28 |
| | Homecomings Financial, LLC | 0 | 0 | 0 | 0 | 0 | 0 |
| | All Others | 1 | 1 | 0 | 0 | 1 | 1 |
| | **Total** | $ 1,454 | $ 1,553 | $ 109 | $ 160 | $ 1,563 | $ 1,712 |
| | **Issue** | | | | | | |
| **Adjustments** | Ocwen True-Up[2][3] | 51 | 51 | 3 | 2 | 54 | 53 |
| | InterCompany Claims[4] | 85 | 120 | (22) | (34) | 63 | 86 |
| | Claim Subordination[5] | 171 | 298 | 226 | 73 | 397 | 371 |
| | **Adjusted Total** | $ 1,761 | $ 2,022 | $ 315 | $ 201 | $ 2,076 | $ 2,222 |

| | **Amount of Net Ally Contribution**[6][7] | | | | | | |
|---|---|---|---|---|---|---|---|
| **Ally Contribution Impact On InterCompany Claim Recovery & Deficiency Claim Recovery** | - | 1,761 | 2,022 | 315 | 201 | 2,076 | 2,222 |
| | 250 | 1,943 | 2,340 | 280 | 0 | 2,223 | 2,340 |
| | 500 | 2,312 | 2,494 | 0 | 0 | 2,312 | 2,494 |
| | 750 | 2,461 | 2,648 | 0 | 0 | 2,461 | 2,648 |
| | 1,000 | 2,611 | 2,802 | 0 | 0 | 2,611 | 2,802 |
| | 1,250 | 2,761 | 2,956 | 0 | 0 | 2,761 | 2,956 |
| | 1,500 | 2,911 | 3,110 | 0 | 0 | 2,911 | 3,110 |
| | 1,750 | 3,061 | 3,264 | 0 | 0 | 3,061 | 3,264 |
| | 2,000 | 3,211 | 3,418 | 0 | 0 | 3,211 | 3,418 |
| | 2,100 | 3,271 | 3,480 | 0 | 0 | 3,271 | 3,480 |
| | 2,250 | 3,361 | 3,572 | 0 | 0 | 3,361 | 3,572 |
| | 2,500 | 3,511 | 3,726 | 0 | 0 | 3,511 | 3,726 |
| | 2,750 | 3,661 | 3,880 | 0 | 0 | 3,661 | 3,880 |
| | 3,000 | 3,811 | 4,034 | 0 | 0 | 3,811 | 4,034 |

(1) This analysis assumes that all three claims—RMBS, Monoline, and Securities—are subordinated. In the event that the Court finds that one or more, but not all three, claims should be subordinated, I reserve the right to adjust my analysis to show the effect of such subordination.
(2) Impact of $68 million received from Ocwen subsequent to April 30, 2013, the date of the Liquidation Analysis asset balances; $51 million allocated to JSNs
(3) Allocated impact to GMACM
(4) Debtors' Liquidation Analysis does not include value from intercompany claims
(5) Assumes all RMBS, monoline and securities claims are subordinated in both low and high Liquidation Analysis scenarios; JSNs' secured recovery increase shown in "Adjustments" is from the increase in value of intercompany claims from subordination
(6) Net of costs; assumed allocated pro-rata to direct claimants and legal entities in the same manner as the proposed contribution in the Disclosure Statement
(7) This analysis does not take into account any lien the JSNs may have on any portion of the Ally contribution / settlement



HOULIHAN LOKEY

8

# Recovery Scenarios – Partial Consolidation

| Recovery Scenarios – Partial Consolidation | Impact of Partial Consolidation |

- Houlihan Lokey has also been asked by counsel to evaluate the impact, if any, on the JSNs' potential recoveries resulting from the Debtors' proposed partial consolidation into three Debtor silos for the limited purposes of (i) describing creditor treatments under the Plan, (ii) Plan confirmation, and (iii) making distributions under the Plan

- The Renzi Report concludes that the JSNs are not harmed by the limited partial consolidation because (a) intercompany claims are being compromised and waived as part of the Global Settlement embodied in the Plan and not as a result of the limited partial consolidation, and (b) if the JSNs are entitled to post-petition interest, the JSNs will receive post-petition interest regardless of consolidation

- But the Renzi Report does not calculate the impact of the intercompany claims on the JSNs' collateral value if intercompany claims are determined to be valid as scheduled

  - In such a scenario, the JSNs would be harmed by the proposed "limited partial consolidation" because most of the intercompany claim value would be eliminated, thereby negatively impacting the JSNs' recoveries

  - For example, the JSNs' collateral value amounts included in the Expert Report of Mark A. Renzi, dated September 20, 2013, included the value of subsidiary equity pledges (see pages 6 through 8) which would be eliminated in partial consolidation

  - Moreover, the amounts presented in my initial Report addressing both equity pledges and intercompany claim value impact on JSNs' recoveries, and would be impacted or altered by the proposed consolidation

HOULIHAN LOKEY    10

Conclusion

| Conclusion | # Summary of Conclusions |

- Based on the analysis contained herein, I have reached the conclusions as set forth herein

- I reserve the right to modify or update the calculations in this Rebuttal Report as new or additional information becomes available or is presented by proponents for the Plan, their experts and other parties in interest. My Rebuttal Report may be supplemented by deposition or actual testimony and, if necessary, I will modify this Rebuttal Report to show additional scenarios as requested by Counsel or the Court.

Houlihan Lokey Capital, Inc.

_____

Michael Fazio, Managing Director

# Appendices

# Appendices

## Due Diligence Conducted

| Due Diligence Conducted | # Due Diligence Conducted |
|---|---|

In conjunction with preparing this Rebuttal Report, and in addition to the due diligence conducted in the initial Report, I have made the following reviews, analyses and inquiries we deemed necessary and appropriate, including, but not limited to reviewing the following:

- Expert Report of Mark A. Renzi dated October 18, 2013
- RCP00047076 (Liquidation Analysis Allocation and Amounts of General Unsecured Claims)

Houlihan Lokey    15