MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' MEMORANDUM OF LAW WITH RESPECT TO THE CLAIMS OF
BRIAN EDMOND BATH, LEILANI SULIT, AND FREDDIE SCOTT**

ny-1118931

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1
BACKGROUND ............................................................................................................................2
REPLY ............................................................................................................................................4
I.  THE BATH CLAIM...........................................................................................................4
II. THE SULIT CLAIM ..........................................................................................................7
III. THE SCOTT CLAIM.........................................................................................................8
CONCLUSION .............................................................................................................................12

**EXHIBITS**

EXHIBIT 1    SUPPLEMENTAL DECLARATION
EXHIBIT 2    PROOFS OF CLAIM AND RESPONSES

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987) ...................................................................................................... 10

*Armour v. Sallie Mae, Inc.*,
   No. 10-3740, 2010 WL 3724524 (D.N.J. Sept. 14, 2010) .......................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 6

*Chow v. Aegis Mortg. Corp.*,
   286 F. Supp. 2d 956 (N.D. Ill. 2003) ............................................................................ 8

*Feinberg v. Bank of N.Y. (In re Feinberg)*,
   442 B.R. 215 (Bankr. S.D.N.Y. 2010) ......................................................................... 1

*First Nat'l Bank in Fort Collins v. Rostek*,
   514 P.2d 314 (Colo. 1973) ........................................................................................ 10

*Hinc v. Lime-O-Sol Co.*,
   382 F.3d 716 (7th Cir. 2004) ...................................................................................... 8

*In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*,
   2008 WL 5100909 (N.D. Ill. Dec. 2, 2008) ............................................................... 8

*In re DJK Residential LLC*,
   416 B.R. 100 (Bankr. S.D.N.Y. 2009) ........................................................................ 6

*In re Oneida Ltd.*,
   400 B.R. 384 (Bankr. S.D.N.Y. 2009) ........................................................................ 1

*In re Residential Capital, LLC*,
   2013 WL 6080464 (Bankr. S.D.N.Y. Nov. 19, 2013) ............................................... 6

*In re Rockefeller Ctr. Props.*,
   272 B.R. 524 (Bankr. S.D.N.Y. 2000) ........................................................................ 1

*Novak v. Ocwen Fed. Bank FSB*,
   2010 WL 55654 (N.D. Ill. Jan. 5, 2010) ..................................................................... 8

*Pacor, Inc. v. Higgins*,
   743 F.2d 984 (3d Cir. 1984) ..................................................................................... 11

*Rodenhurst v. Bank of America*,
   773 F. Supp. 2d 886 (D. Haw. 2011) ....................................................................... 10

*Rotella v. Wood*,
   528 U.S. 549 (2000) ............................................................................................... 10

*Snow v. First Am. Title Ins. Co.*,
   332 F.3d 356 (5th Cir. 2003) ................................................................................. 10

*Stoudt v. Alta Fin. Mortg.*,
   2009 WL 661924 (E.D. Pa. Mar. 10, 2009) ............................................................ 9

**STATUTES**

12 U.S.C. § 2614 ............................................................................................................ 10

15 U.S.C. § 1640(e) ........................................................................................................ 10

15 U.S.C. § 1691e(f) ....................................................................................................... 10

15 U.S.C. § 1692 .............................................................................................................. 6

15 U.S.C. § 1692c(a)(1) ................................................................................................... 6

Colo. Rev. Stat. 13-80-101(1)(c) .................................................................................... 10

Fla. Stat. § 559.72 ............................................................................................................ 6

Residential Capital, LLC ("ResCap") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby submit this memorandum of law (the "Memorandum") to the responses, objections, and oppositions (collectively, the "Responses") of (i) Brian Edmond Bath [Docket No. 4467] to the *Debtors' Eighteenth Omnibus Objection to Claims (Borrower Claims with Insufficient Documentation)* (the "Eighteenth Omnibus Objection") [Docket No. 4154], (ii) Patricio and Leilani Sulit [Docket No. 4344] to the *Debtors' Twentieth Omnibus Objection to Claims (Borrower Claims with Insufficient Documentation)* (the "Twentieth Omnibus Objection") [Docket No. 4156], and (iii) Freddie M. Scott [Docket No. 5099] to the *Debtors' Twenty-Seventh Omnibus Objection to Claims (Borrower Claims with Insufficient Documentation)* [Docket No. 4735] (the "Twenty-Seventh Omnibus Objection," and together with the Eighteenth Omnibus Objection and the Twentieth Omnibus Objection, the "Objections"). In support of the Memorandum, the Debtors submit the Supplemental Declaration of Deanna Horst, ResCap's Chief Claims Officer, annexed hereto as Exhibit 1 (the "Supplemental Declaration"). In further support hereof, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). The burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor. *Feinberg v. Bank of N.Y. (In re Feinberg)*, 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

2. The Debtors examined the Responses of Brian Edmond Bath ("Mr. Bath"), Patricio and Leilani Sulit ("Mr. and Mrs. Sulit"), and Freddie M. Scott ("Mrs. Scott," and

together with Mr. Bath and Mr. and Mrs. Sulit, the "Respondents"). Copies of the Responses and the associated proofs of claim are attached hereto as Exhibit 2. As described in greater detail herein, the claim of Mr. Bath fails because he has not explained, much less documented, any wrongdoing by the Debtors in connection with his credit report. The claim of Mrs. Sulit fails because the Debtors only serviced Mrs. Sulit's mortgage and had no involvement in the purported forgery that occurred as part of the origination of Mrs. Sulit's mortgage by BankUnited FSB. Similarly, the claim of Mrs. Scott fails because the Debtors played no role in the alleged fraud related to the origination of her mortgage in 2001. Moreover, Mrs. Scott's causes of action arising out of the origination of her mortgage are time-barred under the applicable statutes of limitations. Accordingly, the relief sought by the Debtors in the Objections should be granted with respect to the Respondents.

## BACKGROUND

3.     In connection with the claims reconciliation process, the Debtors identified certain claims filed by Borrowers[1] that either (i) fail to identify the amount of the claim and the basis for the claim or (ii) identify the claim amount but do not provide any explanation or attach any supporting documentation to substantiate the basis for the claim amount (together, the "Insufficient Documentation Claims").

4.     After consulting with SilvermanAcampora LLP, special borrowers' counsel to the official committee of unsecured creditors ("Special Counsel"), the Debtors sent Request Letters to the Borrowers who filed the Insufficient Documentation Claims requesting additional documentation in support of such claims. The Request Letters state that the Borrower must respond within 30 days with an explanation that states the legal and factual reasons why the

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in each Objection.

Borrower believes it is owed money or is entitled to other relief from the Debtors, and the Borrower must provide copies of any and all documentation that the Borrower believes supports the basis for its claim. The Request Letters further state that if the Borrower does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the Borrower's claim, seeking to have the claim disallowed and permanently expunged.

5. The Debtors did not receive any response to the Request Letters from the holders of the Insufficient Documentation Claims or received responses that did not provide adequate documentation to substantiate a valid claim against the Debtors. Accordingly, the Debtors filed the Objections to each of the Respondents' claims.

6. After the Debtors filed the Objections, each of the Respondents submitted a Response. At hearings held by this Court on September 11, 2013 (the "September 11 Hearing") and October 9, 2013 (the "October 9 Hearing"), the Court determined that the Responses raised contested matters within the meaning of Rule 9014 of the Federal Rules of Bankruptcy Procedure. Sept. 11 Hr'g Tran. 134: 15-17, 140: 20-21; Oct. 9 Hr'g Tran. 126: 4-5. By orders dated October 10, 2013 and November 5, 2013 [Docket Nos. 5324 and 5605, respectively], this Court established supplemental procedures for the adjudication of the Respondents' claims.[2] Pursuant to the supplemental procedures orders, each Respondent must appear at the evidentiary hearing on his or her Claim in person on December 10, 2013. In addition, no later than November 26, 2013, each Respondent must file with the Court and provide a copy to counsel for the Debtors of (i) a statement of position with respect to the Respondent's claim and (ii) any documents that the Respondent wishes to use in support of his or

---

[2] The Debtors have consensually resolved the response of Ailette Cornelius to the Eighteenth Omnibus Objection [Docket No. 4518].

-3-

her Claim. By the same date, the Debtors must file and serve (i) a statement detailing the Debtors' position on each Respondent's claim, (ii) any documents that the Debtors wish to use in opposing each Respondent's claim, and (iii) a supplemental declaration detailing the due diligence the Debtors undertook with respect to Mr. Bath's claim.

## REPLY

7. Upon review of the Responses, the Debtors assert that the Responses fail to substantiate the validity of the Respondents' respective claims. Accordingly, the Insufficient Documentation Claims to which the Responses apply should be disallowed and expunged.

**I.    THE BATH CLAIM**

8. Proof of claim no. 1138 filed by Mr. Bath (the "Bath Claim") asserts a $75,000 secured claim against ResCap. The stated basis for the Bath Claim is "Mortgage Note." The only supporting documentation furnished is a page from Mr. Bath's Experian credit report relating to a debt to GMAC Mortgage, LLC ("GMACM"). In the Response, Mr. Bath states that he filed the Bath Claim as redress for a negative credit report from GMACM. The only supporting documentation is one letter from Mr. Bath to Experian complaining about his GMACM credit report and a second letter from Mr. Bath to GMACM complaining about GMACM's alleged violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq., as well as the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., and the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55, et seq.

9. According to the Debtors' books and records,[3] Centennial Mortgage and Funding Inc. ("Centennial"), a non-debtor entity, originated Mr. Bath's mortgage loan on July 9,

---

[3] At the September 11 Hearing, the Debtors informed the Court that they were unable to locate the account for Mr. Bath in the Debtors' books and records. However, subsequent efforts revealed Mr. Bath's loan number with respect to a different address, which yielded the information detailed in the Supplemental Declaration.

2004.  Sometime shortly after origination, Debtor Residential Funding Company, LLC ("RFC") purchased the loan from Centennial.  Debtor Homecomings Financial, LLC ("Homecomings") began servicing Mr. Bath's mortgage on July 29, 2004.  On Jan 31, 2005, RFC sold the loan to Treasury Bank, but Homecomings continued to service the mortgage.  The mortgage became delinquent in September 2006, and Mr. Bath filed a chapter 7 bankruptcy petition on October 19, 2006 in the United States Bankruptcy Court for the Western District of Wisconsin (Case No. 06-12641).  On November 2, 2007, Mr. Bath was denied a discharge and the bankruptcy case was closed on August 19, 2008.  Supp. Decl. ¶ 4.

10. On January 2, 2008, while the chapter 7 case was still pending, Homecomings charged off[4] the mortgage loan as uncollectible and transferred the servicing rights with respect to Mr. Bath's mortgage to a collection agency, Dyck O'Neal, Inc.  Consistent with its customary business practices and its right under Mr. Bath's mortgage note, Homecomings reported the charge off to credit bureaus.  Supp. Decl. ¶ 5; Exhibit A to Supp. Decl., Bath Mortgage Note, at § 10 ("You also authorize Holder to release information regarding the status and history of the Account to third persons including without limitation credit bureaus[,] merchants and financial institutions to the extent permitted by applicable law.").

11. The Bath Claim fails to establish a claim under the Fair Credit Reporting Act.  To the extent the Bath Claim asserts a claim under 15 U.S.C. § 1681s-2(b),[5] Bath must establish, *inter alia*, that the Debtors "failed to investigate and modify … inaccurate [credit]

---

[4] A charge off is approved when the borrower fails to make payments, and the investor determines that it would not be cost effective to pursue foreclosure on the property.  A charge off prevents a property with little or no net value from going into a costly and time-consuming foreclosure process.  However, a charge off does not mean servicer or investor cancels the note or releases the lien on the property.  Supp. Decl. ¶ 4 n.3.

[5] The Response actually states that Mr. Bath is bringing a claim under "the Fair Credit Reporting Act (FCRA) *15 U.S.C. § 1681b*." Response at 4 (emphasis added).  This statutory citation appears to be a mistake as § 1681b of the Fair Credit Reporting Act governs "Conditions for furnishing and using consumer reports for employment purposes" and is plainly not relevant to the Bath Claim as there is no employment relationship at issue here.

information." *In re Residential Capital, LLC*, 2013 WL 6080464, at *11 (Bankr. S.D.N.Y. Nov. 19, 2013), quoting *Armour v. Sallie Mae, Inc.*, No. 10-3740, 2010 WL 3724524, at *2 (D.N.J. Sept. 14, 2010). Mr. Bath cannot establish as much because the Debtors' credit reporting with respect to Mr. Bath was accurate. The Debtors' charge off of Mr. Bath's mortgage did not relieve Mr. Bath of his obligation to pay the loan, nor did it alter the Debtors' rights under the mortgage note to report the charge off to credit bureaus consistent with the Debtors' customary business practices.

12. To the extent the Bath Claim asserts claims under the Fair Debt Collection Practices Act and the Florida Consumer Collection Practices Act, those claims are similarly lacking in merit. Both statutes impose liability for certain types of abusive and deceptive conduct when attempting to collect debts. *See* 15 U.S.C. § 1692;[6] Fla. Stat. §§ 559.72 (listing prohibited practices under the Florida Consumer Collection Practices Act). However, Mr. Bath has not alleged that the Debtors engaged in any abusive collection practices, only that they engaged in misfeasance in connection with his credit report. Although the Bath Claim need not be elaborately detailed, more specificity is required to state a claim against the Debtors. *See In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("While the Claim 'does not need detailed factual allegations, ... [it] requires more than labels and conclusions....'"), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[6] The particular subsection of the Fair Debt Collection Practices Act referenced in the Response, subsection 1692c(a)(1), provides that, "[w]ithout the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. . . ." 15 U.S.C. § 1692c(a)(1).

13.     Mr. Bath has failed to explain, much less document, how he has been harmed by the Debtors.[7]  Therefore, the Bath Claim should be disallowed and expunged.

## II.     THE SULIT CLAIM

14.     Proof of claim no. 1397 filed by Mrs. Sulit (the "Sulit Claim") asserts a $280,000 secured claim against GMACM in connection with the mortgage on Mr. and Mrs. Sulit's residence in Chicago, Illinois.  The Sulit Claim's only supporting documentation is a letter from GMACM to Mrs. Sulit dated September 18, 2012, regarding an interest rate change to her mortgage.  The Response was not filed by the claimant Mrs. Sulit but rather by her husband Mr. Sulit, and attaches a copy of Mrs. Sulit's mortgage note, which was originated by BankUnited FSB on October 17, 2006.  The Response states that Mr. Sulit's signature (though not Mrs. Sulit's) was forged on the underlying deed, attached to the Response.

15.     Shortly after the mortgage's origination, GMACM purchased the loan from BankUnited FSB and GMACM began servicing Mrs. Sulit's mortgage on January 11, 2007.  Supp. Decl. ¶ 8.  Shortly after GMACM purchased the loan, GMACM sold the loan to "Deutsche Bank National Trust Company as Trustee for HarborView Mortgage Loan Trust 2006-14."  *Id.*  Nothing in the Debtors' books and records suggests that the Debtors had any involvement in the origination of Mrs. Sulit's mortgage by BankUnited FSB, nor would any such involvement in the origination process be consistent with the Debtors' customary practices.  *Id.*  As a result, the Debtors cannot be held liable for any alleged forgery that took place in the

---

[7] At the September 11 Hearing, the Court questioned whether the Bath Claim could relate to an alleged wrongful denial of a loan modification application. Sept. 11 Hr'g Tran. 129:16-17, 136: 13-15.  However, the Debtors' books and records do not reflect Mr. Bath ever requesting a loan modification, nor has Mr. Bath asserted otherwise in the Bath Claim or the Response.  Supp. Decl. ¶ 6.

origination process.[8] *See Novak v. Ocwen Fed. Bank FSB*, 2010 WL 55654 (N.D. Ill. Jan. 5, 2010) (loan servicer did not originate the loan and thus could not be held liable for predatory lending claims relating to its origin); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 2008 WL 5100909 (N.D. Ill. Dec. 2, 2008) (holding that an assignee of a mortgage cannot be held liable for fraud in the mortgage's origination under Illinois law unless the assignee directly participated in the fraudulent scheme); *Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 959 (N.D. Ill. 2003) (GMACM could not be held liable for alleged violations of the Truth in Lending Act because GMACM was only the loan servicer, not the loan originator or its assignee). Mrs. Sulit has not introduced any evidence to the contrary.

16. In addition, even if GMACM had been involved (which it adamantly denies) in the alleged forgery of Mr. Sulit's name on the deed, that forgery would not support a valid claim against the Debtors' estates by Mrs. Sulit because Mr. Sulit is not a signatory to the mortgage note, which establishes liability to repay the mortgage loan. Only Mrs. Sulit is a signatory to the mortgage note and she has not alleged that her signature has been forged. Supp. Decl. ¶ 8.

17. Accordingly, the Sulit Claim should be disallowed and expunged because Mrs. Sulit fails to identify and substantiate a colorable claim against the Debtors.

### III. THE SCOTT CLAIM

18. Proof of claim no. 3751 filed by Mrs. Scott (the "<u>Scott Claim</u>") asserts a $208,250 unsecured claim against ResCap in connection with the mortgage on Mrs. Scott's residence in Denver, Colorado. The Scott Claim attaches various loan-related documents. The

---

[8] In light of the location of the mortgaged property in Illinois, the Debtors submit that Illinois law would apply to any claims Mrs. Sulit might assert in connection with the alleged fraud in the mortgage's origination. *See Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004).

Response alleges, without any supporting documentation, that representatives of GMACM and RFC (1) overstated Mrs. Scott's income in her mortgage application and (2) misrepresented to Mrs. Scott and Mr. Scott that their mortgage would have a fixed rate, when it actually had an adjustable rate, which subsequently caused Mrs. Scott's interest payments to balloon.  Based on these allegations, the Response asserts claims for common law fraud and violations of 12 U.S.C. § 2605(e)(1)(B) ("RESPA") and 15 U.S.C. § 1601, et seq. ("TILA") and 15 U.S.C. § 1691, et seq. (the "Equal Credit Opportunity Act").  In addition, the Response asserts that GMACM and RFC may have violated "Civil RICO Federal Racketeering law (18 U.S.C. [§] 1964) . . . by using the U.S. Mail more than twice to collect an unlawful debt . . ." Response at 4-5.  Finally, the Response appears to seek rescission of the mortgage contract and "reconveyance" of the mortgaged property to the Respondent. *See* Response at 4.

19. Mrs. Scott's mortgage was originated by Stonecreek Funding Corporation ("Stonecreek") on October 26, 2001, and was sold to RFC sometime between that date and November 21, 2001.  Homecomings began servicing the mortgage on November 21, 2001.  Supp. Decl. ¶ 10.  Although the Debtors regularly purchased mortgages from Stonecreek and Stonecreek regularly used the Debtors' forms as part of its closing of loans, the Debtors only purchased closed loans from Stonecreek and had no involvement with Stonecreek's origination practices.  *Id.*  As a result, the Debtors cannot be held liable for any fraud that occurred in connection with the origination of Mrs. Scott's mortgage. *See Stoudt v. Alta Fin. Mortg.*, 2009 WL 661924, at *2 (E.D. Pa. Mar. 10, 2009) (stating that "affirmative claims of fraud and violation of consumer protection laws ... are inappropriate to assert against an assignee where there are no allegations that the assignee had any contact with the mortgagor or made any representations to the mortgagor and the factual basis for the claims occurred prior to assignment

of the mortgage loan."); *Rodenhurst v. Bank of America*, 773 F. Supp. 2d 886 (D. Haw. 2011) (dismissing plaintiff's claim of fraud based on failure to allege grounds for the liability of the assignee of the mortgage).

20.    Moreover, even if the Debtors could be held liable for Stonecreek's alleged misrepresentations in the origination process, Mrs. Scott's claims would still fail as time-barred because:

- claims for common law fraud under Colorado law must be brought within three years after the cause of action accrues, Col. Rev. Stat. 13-80-101(1)(c);[9]

- claims under RESPA must be asserted either within one year or three years from the date the alleged violation occurred, depending on the nature of the violation, 12 U.S.C. § 2614; *see also Snow v. First Am. Title Ins. Co.,* 332 F.3d 356, 359 (5th Cir. 2003);

- claims under TILA must be asserted within one year from the date the alleged violation occurred, 15 U.S.C. § 1640(e);

- claims under the Equal Credit Opportunity Act must be asserted no later than five years after the occurrence of the violation, 15 U.S.C. § 1691e(f); and

- claims for Civil RICO must be brought within four years of the date that the plaintiff discovery his injury, *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 143 (1987); *Rotella v. Wood*, 528 U.S. 549, 553 (2000).

Mrs. Scott's fraud claim and her claims under RESPA, TILA, the Equal Credit Opportunity Act, and Civil RICO all relate to the Debtors' alleged involvement in the fraudulent origination of Mrs. Scott's mortgage on October 26, 2001 or the Debtors' acceptance of Mrs. Scott's mortgage payments in connection with the fraudulently originated mortgage beginning shortly thereafter. However, the Debtors have no record of Mrs. Scott or Mr. Scott bringing any litigation against

---

[9] For purposes of the foregoing analysis, the Debtors submit that Colorado law would apply to any fraud claims Mrs. Scott asserts in connection with the origination of her mortgage. *See First Nat'l Bank in Fort Collins v. Rostek*, 514 P.2d 314, 320 (Colo. 1973).

ny-1118931

the Debtors or otherwise asserting these claims until the filing of the Scott Claim on November 8, 2012. Supp. Decl. ¶ 11. Because Mrs. Scott waited over a decade to bring these claims,[10] they are time-barred.

21. Finally, the Debtors transferred their servicing rights with respect to Mrs. Scott's mortgage to Ocwen Loan Servicing, LLC ("Ocwen") on September 1, 2013. Supp. Decl. ¶ 10. Because the Debtors no longer have any control over or interest in Mrs. Scott's mortgage loan, the requested rescission of Mrs. Scott's mortgage contract and reconveyance of the mortgaged property to Mrs. Scott would involve a dispute over property rights between two non-debtors and would have no conceivable effect on the Debtors' estates. As a result, that requested relief is outside of this Court's subject matter jurisdiction to grant. *See Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (holding that civil proceeding is related to bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.").

22. Accordingly, the Scott Claim fails to establish a valid liability, be it secured or unsecured, against the Debtors' estates and should be expunged.

---

[10] This conclusion is true even if Mr. and Mrs. Scott did not discover that they had received a variable rate loan until weeks after the closing as Mr. Scott stated at the October 9 Hearing:

> THE COURT: Mr. Scott, when did you find out that you got a variable rate loan rather than a fixed rate loan?
>
> MR. SCOTT: After the closing and subsequent days and weeks because we didn't get all of our loan documents on October 26, 2001.

Oct. 9 Hr'g Tran. 125: 2-6.

-11-

ny-1118931

## **CONCLUSION**

23. WHEREFORE, the Debtors respectfully submit that the relief sought in the Objections with respect to the Bath Claim, the Sulit Claim, and the Scott Claim should be granted.

Dated: November 26, 2013  
      New York, New York

/s/ Norman S. Rosenbaum  
Gary S. Lee  
Norman S. Rosenbaum  
Jordan A. Wishnew  
MORRISON & FOERSTER LLP  
1290 Avenue of the Americas  
New York, New York 10104  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900  

*Counsel for the Debtors and  
Debtors in Possession*