## **Exhibit 1**

**Supplemental Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- )
                                                              )
In re:                                                        )      Case No. 12-12020 (MG)
                                                              )
RESIDENTIAL CAPITAL, LLC, et al.,                             )      Chapter 11
                                                              )
                                        Debtors.              )      Jointly Administered
                                                              )
------------------------------------------------------------- )

**SUPPLEMENTAL DECLARATION OF DEANNA HORST IN SUPPORT OF**
**DEBTORS' MEMORANDUM OF LAW WITH RESPECT TO THE CLAIMS OF BRIAN**
**EDMOND BATH, LEILANI SULIT, AND FREDDIE SCOTT**

I, Deanna Horst, hereby declare as follows:

        1.      I am the Chief Claims Officer for Residential Capital, LLC and its

affiliates ("ResCap"), a limited liability company organized under the laws of the state of

Delaware and the parent of the other debtors and debtors in possession in the above-captioned

Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap

since August of 2001. I began my association with ResCap in 2001 as the Director, Responsible

Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence

program. In 2002, I became the Director of Quality Asset Management, managing Client

Repurchase, Quality Assurance and Compliance -- a position I held until 2006, at which time I

became the Vice President of the Credit Risk Group, managing Correspondent and Broker

approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and

supported GMAC Mortgage, LLC and Ally Bank in this role. In my current position, I am

responsible for Claims Management and Reconciliation and Client Recovery. I am authorized to

submit this supplemental declaration (the "Supplemental Declaration") in support of the

*Debtors' Memorandum of Law with Respect to the Claims of Brian Edmond Bath, Leilani Sulit,
and Freddie Scott* (the "Memorandum").[1]

2.      Except as otherwise indicated, all facts set forth in this Supplemental
Declaration are based upon my personal knowledge of the Debtors' operations and finances,
information learned from my review of relevant documents, and information I have received
through my discussions with other members of the Debtors' management or other employees, the
Debtors' professionals and consultants, and/or Kurtzman Carson Consultants LLC, the Debtors'
notice and claims agent.  If I were called upon to testify, I could and would testify competently to
the facts set forth in the Memorandum on that basis.[2]

## I.   THE BATH CLAIM

3.      Proof of claim no. 1138 filed by Mr. Bath (the "Bath Claim") asserts a
$75,000 secured claim against ResCap.  The stated basis for the Bath Claim is "Mortgage Note."
The only supporting documentation is a page from Mr. Bath's Experian credit report relating to a
debt to GMAC Mortgage, LLC ("GMACM").  In the Response, Mr. Bath states that he filed the
Bath Claim as redress for a negative credit report from GMACM.  The only supporting
documentation is one letter from Mr. Bath to Experian complaining about his GMACM credit
report and a second letter from Mr. Bath to GMACM complaining about GMACM's alleged
violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq., as well as the Fair Debt
Collection Practices Act, 15 U.S.C. §§ 1692, et seq., and the Florida Consumer Collection
Practices Act, Fla. Stat. §§ 559.55, et seq.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Memorandum.

[2] At the September 11 Hearing, the Debtors informed the Court that they were unable to locate the account for Mr.
Bath in the Debtors' books and records.  However, subsequent efforts revealed Mr. Bath's loan number with respect
to a different address, which yielded the information detailed in this Supplemental Declaration.

4.      Centennial Mortgage and Funding Inc. ("<u>Centennial</u>"), a non-debtor entity, originated Mr. Bath's mortgage loan on July 9, 2004.  *See* Bath Mortgage Note, annexed hereto as <u>Exhibit A</u>.  Sometime shortly after origination, Debtor Residential Funding Company, LLC ("<u>RFC</u>") purchased the loan from Centennial.  Debtor Homecomings Financial, LLC ("<u>Homecomings</u>") began servicing Mr. Bath's mortgage on July 29, 2004.  On Jan 31, 2005, RFC sold the loan to Treasury Bank, but Homecomings continued to service the mortgage.  The mortgage became delinquent in September 2006, and Mr. Bath filed a chapter 7 bankruptcy petition on October 19, 2006 in the United States Bankruptcy Court for the Western District of Wisconsin (Case No. 06-12641).  On November 2, 2007, Mr. Bath was denied a discharge and the bankruptcy case was closed on August 19, 2008.  *See* Case Docket, annexed hereto as <u>Exhibit B</u>.

5.      On January 2, 2008, while the chapter 7 case was still pending, Homecomings charged off[3] the mortgage loan as uncollectible and transferred the servicing rights with respect to Mr. Bath's mortgage to a collection agency, Dyck O'Neal, Inc.  *See* Bath Letter, annexed hereto as <u>Exhibit C</u>.  Consistent with its customary business practices, Homecomings reported the charge off to credit bureaus.

6.      The Debtors have no record of Mr. Bath ever requesting a loan modification, nor has Mr. Bath asserted otherwise in the Bath Claim or the Response.

## II.   THE SULIT CLAIM

7.      Proof of claim no. 1397 filed by Mrs. Sulit (the "<u>Sulit Claim</u>") asserts a $280,000 secured claim against GMACM in connection with the mortgage on Mr. and Mrs.

---

[3] A charge off is approved when the borrower fails to make payments, and the investor determines that it would not be cost effective to pursue foreclosure on the property.  It prevents a property with little or no net value from going into a costly and time-consuming foreclosure process.  However, a charge off does not mean servicer or investor cancels the Note or releases the lien on the property.

Sulit's residence in Chicago, Illinois. The only document submitted with the Sulit Claim is a
letter from GMACM to Mrs. Sulit dated September 18, 2012, regarding an interest rate change to
her mortgage. The Response was not filed by the claimant Mrs. Sulit but rather by her husband
Mr. Sulit, and attaches a copy of Mrs. Sulit's mortgage note, which was originated by
BankUnited FSB on October 17, 2006. *See* Sulit Mortgage Note, annexed hereto as <u>Exhibit D</u>.
The Response states that Mr. Sulit's signature (though not Mrs. Sulit's) was forged on the
underlying deed, attached to the Response.

8.       Shortly after the mortgage's origination, GMACM purchased the loan
from BankUnited FSB and GMACM began servicing Mrs. Sulit's mortgage on January 1, 2007,
over two months after its origination by BankUnited FSB. Shortly after GMACM purchased the
loan, GMACM sold the loan to "Deutsche Bank National Trust Company as Trustee for
HarborView Mortgage Loan Trust 2006-14." Nothing in my review of the Debtors' books and
records suggests that the Debtors had any involvement in the origination of Mrs. Sulit's
mortgage, nor would any such involvement in the origination process be consistent with the
Debtors' customary practices. Unlike Mrs. Sulit, Mr. Sulit is not a signatory to the mortgage
note.

## III.   THE SCOTT CLAIM

9.       Proof of claim no. 3751 filed by Mrs. Scott (the "<u>Scott Claim</u>") asserts a
$208,250 unsecured claim against ResCap. The basis for the proof of claim is "Mortgage Note"
and the proof of claim attaches various loan-related documents. The Response alleges, without
any supporting documentation, that representatives of GMACM and RFC (1) overstated Mrs.
Scott's income in her mortgage application and (2) misrepresented to Mrs. Scott and Mr. Scott
that their mortgage would have a fixed rate, when it actually had an adjustable rate, which

ny-1118970

subsequently caused Mrs. Scott's interest payments to balloon.  Based on these allegations, the Response asserts claims for common law fraud and violations of 12 U.S.C. § 2605(e)(1)(B) ("RESPA") and 15 U.S.C. § 1601, et seq. ("TILA") and 15 U.S.C. § 1691, et seq. (the "Equal Credit Opportunity Act").  In addition, the Response asserts that GMACM and RFC may have violated "Civil RICO Federal Racketeering law (18 U.S.C. [§] 1964) by using the U.S. Mail more than twice to collect an unlawful debt."  Response at 4-5.  Finally, the Response appears to seek rescission of the mortgage contract and "reconveyance" of the mortgaged property to the Respondent.  *See* Response at 4.

10.    Mrs. Scott's mortgage was originated by Stonecreek Funding Corporation ("Stonecreek") on October 26, 2001, *see* Scott Mortgage Note annexed hereto as Exhibit E,  and was sold to RFC sometime between that date and November 21, 2001, on which date Homecomings began servicing the mortgage.  Although the Debtors regularly purchased mortgages from Stonecreek and Stonecreek regularly used the Debtors' forms as part of its closing of loans, the Debtors only purchased closed loans from Stonecreek and had no involvement with Stonecreek's origination practices.  *See generally* Client Contract, annexed hereto as Exhibit F.  The Debtors transferred their servicing rights with respect to Mrs. Scott's mortgage to Ocwen Loan Servicing, LLC on September 1, 2013.

11.    The Debtors have no record of Mrs. Scott or Mr. Scott bringing any litigation against the Debtors or otherwise asserting claims for fraud, RESPA violations, TILA violations, Equal Credit Opportunity Act violations, or Civil RICO prior to the Scott Claim.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

ny-1118970

Dated:  November 26, 2013

                                /s/ Deanna Horst
                                Deanna Horst
                                Chief Claims Officer for Residential Capital,
                                LLC

ny-1118970

## Exhibit A

1239A

## RFC Servicing

HomeComings Financial - Dallas

LOAN #



[REDACTED]515

HF

| | |
|---|---|
| Borrower Last Name | BATH |
| Property Address | 505 Diamond Drive  Hudson WI 54016 |
| Loan Amount | 75 000 00 |
| Servicing Effective Date | 07/29/2004 |
| Prepayment Penalty | Y |
| Conversion Option | N |

## THIS IS SECOND MORTGAGE

RFC Loan #



[REDACTED]633

## NOTICE  YOU MAY BE REQUIRED TO MAKE A BALLOON PAYMENT AT MATURITY

### HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

DATE
LOAN # ▮ 5158 ▮▮▮ 419
NCB

JULY 9  2004                          HUDSON                          WISCONSIN
[Date]                              [Title City]                      [Title State]
505 DIAMOND DRIVE HUDSON WI 54016
[Property Address]

Credit Limit          $ 75 000 00          Draw Period          15
Initial Advance       $ 75,000.00
Minimum Advance       $    100 00          Minimum Balance          0 00
Margin                $  2 500  %
Initial ANNUAL PERCENTAGE RATE    3 000   %
  Other FINANCE CHARGES
      Loan Origination Fee     $ _____
      Loan Discount Fee        $ _____
      Underwriting Fee         $ _____
Other   COMMITMENT FEE   $  85.00
Other _____            $ _____
Other _____            $ _____
Other _____            $ _____
  Other Loan Fees and Charges
      Appraisal               $ _____
      Stop Payment Charge     $    15 00
      Return Check Charge     $    15 00
Other _____            $ _____
Other _____            $ _____
Other _____            $ _____
Other _____            $ _____

☒ Discounted Initial Rate  Fixed for 3 Months. The initial Daily Periodic Rate (as defined in Section 5 below) is 0 000  % ("Initial Daily Periodic Rate") which corresponds to the Initial ANNUAL PERCENTAGE RATE  indicated above. The Initial Daily Periodic Rate is fixed and will be effective until  10-9-2004   After this date and in accordance with Section 3 below the ANNUAL PERCENTAGE RATE may change and will be determined by adding the Margin described above to the Index (as defined in Section 1 below)  During the Discount Period the Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE will not be based on the calculation used to determine later adjustments to the Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE.  Had they been so based, the Initial Daily Periodic Rate would have been 0 018     % and the corresponding Initial ANNUAL PERCENTAGE RATE would have been 6  500    %

☐ Initial Rate Not Discounted  The Daily Periodic Rate is _____ %, which corresponds to the Initial ANNUAL PERCENTAGE RATE indicated above. The ANNUAL PERCENTAGE RATE may change and will be determined by adding the Margin described above to the Index (as defined in Section 1 below).

**1.      DEFINITIONS**
(A)  Agreement  means this document.
(B)  "You" or "Your" is BRIAN E BATH AND KATHERINE A BATH   AS HUSBAND AND WIFE

Your address is 505 DIAMOND DRIVE HUDSON  WI 54016

(C)  Lender" is CENTENNIAL MORTGAGE & FUNDING   INC

Lender's address is 1210 NORTHLAND DRIVE #180  MENDOTA HEIGHTS  MN  55120

(D) ' Holder   is Lender or any person or entity who takes this Agreement by transfer and is entitled to receive payments under this Agreement.
(E)  'Account   means your home equity line of credit account with Holder
(F)  Loan ' or ' Loans ' means any money advanced to you by Holder when you access the Account.
(G)  "Credit Limit"  means the maximum aggregate amount of principal of the Loans that Holder will allow you to owe under this Agreement, unless otherwise agreed  The Credit Limit is indicated above.
(H)  Account Balance   means the total of the unpaid principal of the Loans, plus earned but unpaid FINANCE CHARGES, fees  and credit insurance premiums.
(I)  "Minimum Balance"  means the minimum amount of principal of all Loans that you must maintain under the Account. The Minimum Balance is indicated above.
(J)  'Initial Advance   means the amount of the Loan that you must accept to open the Account. The Initial Advance is indicated above.

 608

**(K) "Minimum Advance"** means the minimum amount of a Loan that you must request by any means other than the credit card or cards that Holder furnishes to you to make purchases or receive advances ( Credit Card ) **The Minimum Advance is indicated on page 1 above**

**(L) "Draw Period"** means the period of time during which you may request Loans and must make payments on your Account Balance **The Draw Period is indicated on page 1 above**

**(M) "Billing Statement"** means a statement furnished by Holder each Billing Cycle (as defined in subsection (N) below) that shows among other things Loans FINANCE CHARGES, other charges, payments made other credits the previous Account Balance the current Account Balance and the required payment for the Account during the Billing Cycle

**(N) "Billing Cycle"** means the regular period or interval between the days or dates of the Billing Statements during which FINANCE CHARGES accrue and that will be used to determine the amount of your payment and when your payment is due The Billing Cycle is monthly

**(O) "Index"** means the highest base rate on corporate loans at large U S money center commercial banks that *The Wall Street Journal"* publishes as the prime rate

## 2    OPENING YOUR ACCOUNT

The Account will be opened when you have signed and delivered in acceptable form all documents considered necessary by Holder and Holder makes the Initial Advance to you Each of you who signs this Agreement is jointly and individually obligated to keep all of the promises made in this Agreement and as such Holder may require any of you to pay all amounts due under this Agreement Each of you agrees not to give Holder conflicting instructions under this Agreement

## 3    ACCESSING YOUR ACCOUNT

You may access the Account after any right you have to cancel this Agreement expires and all of Holder's conditions have been met You may access the Account initially only for an amount equal to the Initial Advance Thereafter you may access the Account only for an amount equal to or greater than the Minimum Advance, the foregoing Minimum Advance requirement does not apply when you access the Account using a Credit Card Holder at Holder s option may without obligation make a Loan in an amount that is less than the Minimum Advance, by doing so, however Holder does not waive the right to later refuse to make such a Loan

You may access the Account by (a) using a Credit Card (b) writing a check using one of the checks that Holder furnishes to you ( Checks ') (c) authorizing Holder to pay a third party or account or (d) any other method acceptable to Holder Each of you who signs this Agreement may access the Account jointly or individually and Holder may rely on instructions from any one of you with regard to this Agreement

You may not use any Loan provided by Holder to make payments on the Account In addition Holder reserves the right not to honor a Check under the following circumstances (a) the Check is post dated (if a post-dated Check is paid and as a result any other Check is returned, Holder will not be responsible) (b) a Check or Checks have been reported lost or stolen, (c) the Check is not signed by one of you or (d) the Account has been terminated or suspended as provided in this Agreement or can be so terminated or suspended if Holder pays the Check Dishonor of a Check by Holder for any reason provided in this Agreement will not constitute wrongful dishonor Holder's liability otherwise for wrongful dishonor, if any of a Check is limited to your actual damages

## 4    AVAILABILITY OF LOANS

You may access the Account and receive a Loan during the Draw Period subject to the provisions of this Agreement Holder at Holder's option may extend the Draw Period During the Draw Period you may borrow against the Account, repay any portion of the Account Balance, and re borrow such portions up to the Credit Limit

You may not access the Account so as to cause the Account Balance to exceed the Credit Limit However Holder at Holder s option may make a Loan that causes the Account Balance to exceed the Credit Limit by doing so however Holder does not waive the right to later refuse to make such a Loan If Holder agrees to make a Loan that causes the Account Balance to exceed the Credit Limit such a loan may be unsecured and you agree to repay the amount in excess of the credit limit on Holder's demand or execute additional security documents

## 5    FINANCE CHARGES

In addition to the amount of any Loans made to you you agree to pay Holder a **FINANCE CHARGE** ( **FINANCE CHARGE** or **FINANCE CHARGES** ) on the Account Balance The Account Balance for each day is determined by taking the Account Balance at the beginning of that day and (a) subtracting any unpaid **FINANCE CHARGE**, fees, and credit insurance premiums that are due, (b) subtracting the portion of any payments or credits received by Holder that day that apply to the repayment of the Loans, and (c) adding any Loans made that day

The FINANCE CHARGE on a Loan begins to accrue immediately from the time Holder makes the Loan to you There is no free ride period during which FINANCE CHARGES will not accrue [Solely for the purpose of computing FINANCE CHARGES a monthly payment received by Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date ]

The FINANCE CHARGE is determined for each day by applying a daily periodic rate ( Daily Periodic Rate ) to the Account Balance for that day the Daily Periodic Rate is 1/365th of the **ANNUAL PERCENTAGE RATE** applicable to that day The total FINANCE CHARGE for each Billing Cycle is determined by adding together the FINANCE CHARGE for the actual number of days during the Billing Cycle

The Initial ANNUAL PERCENTAGE RATE is indicated on the first page of this Agreement The manner in which the ANNUAL PERCENTAGE RATE will change will be determined by the box marked on the first page of this Agreement

 608

The **ANNUAL PERCENTAGE RATE** will increase or decrease if the Index increases or decreases the corresponding increase or decrease in the Daily Periodic Rate will be determined as described above An increase or decrease in the **ANNUAL PERCENTAGE RATE** will result in a corresponding increase or decrease in the **FINANCE CHARGE** and may result in a corresponding increase or decrease in your monthly payment The Index may change daily however, the Index in effect on the day the **ANNUAL PERCENTAGE RATE** is adjusted will be used to determine the new **ANNUAL PERCENTAGE RATE** Any change in the **ANNUAL PERCENTAGE RATE** will take effect on the first day of the Billing Cycle and will not increase more than once per Billing Cycle

The **ANNUAL PERCENTAGE RATE** will never exceed the lesser of 18 00 % or the highest allowable rate for this type of Agreement as determined by applicable state or federal law ("Maximum **ANNUAL PERCENTAGE RATE**") The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs

**6    PAYMENTS**

You promise to pay to Holder any amounts owed under this Agreement as follows

**(A) Draw Period**

During the Draw Period no later than the payment date specified in your Billing Statement you must pay at least the Minimum Monthly Draw Period Payment The Minimum Monthly Draw Period Payment is the amount of accrued **FINANCE CHARGES** and other fees Minimum Monthly Draw Period Payments will not reduce the principal of the Loans

**(B) Final Payment**

On the last day of the Draw Period ( Maturity Date ), you must pay the entire Account Balance If you have made only minimum required payments, you may have to pay a single balloon payment on the Maturity Date In such an event Holder is not required under this Agreement to refinance your Account but Holder may elect to do so at Holder s sole discretion If Holder does refinance your Account, Holder may require you to pay closing costs at that time

**(C) General Payment Terms**

If the Account Balance on any payment date is less than the required minimum payment you must pay the entire Account Balance You must make all payments in U S dollars at the address shown on the Billing Statement Your payment will be due on the date shown in your Billing Statement

Payments received by Holder will be applied first to any fees and charges applicable to the Account then to **FINANCE CHARGES** and finally to the principal balance of any outstanding Loans

**(D) Prepayment**

You may prepay all or any portion of the Account Balance at any time without penalty, however if your prepayment does not fully repay the entire Account Balance you must continue to make the required minimum monthly payments

**7    FEES AND CHARGES**

You agree to pay the following additional fees and charges

**(A) Annual Charge**

An annual charge of S 00 Holder will add this amount to the Account Balance each year on the anniversary date of the Account

**(B) Late Charge**

A late charge on any monthly payment not paid within 15 calendar days from the date the payment is due The amount of the charge will be the lesser of U S $10 00 or 5 00 % of the payment provided, however Holder may not charge this late charge to the extent prohibited by applicable law

**(C) Other FINANCE CHARGES**

The Other **FINANCE CHARGES** indicated on the first page of this Agreement

**(D) Other Loan Fees and Charges**

The Other Loan Fees and Charges indicated on the first page of this Agreement

**(E) Payment of Holder's Costs and Expenses**

If you are in default all costs and expenses including without limitation reasonable attorneys fees Holder incurs in enforcing this Agreement to the extent not prohibited by applicable law

**8    NOTICES**

Unless applicable law requires a different method any notice that must be given to you under this Agreement will be given by delivering it or mailing it by first class mail to the Property Address above or at a different address if you give Holder a notice of your different address Any notice that must be given to Holder under this Agreement will be given by delivering it or mailing it by first class mail to the Holder at the address stated in Section 1(C) above or at a different address if you are given a notice of that different address

**9    SECURITY**

The Account will be secured by a lien taken against your home pursuant to a separate Mortgage Deed of Trust or Security Deed ( Security Instrument ) dated the same date as this Agreement The Security Instrument requires you to take certain actions to protect your home which is located at the address shown above ( Property ) You could lose the Property and your home if you do not meet the conditions of this Agreement or the Security Instrument Some of the conditions of the Security Instrument are described as follows

**608**

**Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 11 'Interest in the Property' means any legal or beneficial interest in the Property, including but not limited to, those beneficial interests transferred in a bond for deed contract for deed installment sales contract or escrow agreement the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent Lender may require immediate payment in full of the Secured Debt However this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 8 within which Borrower must pay the Secured Debt in full If Borrower fails to pay the Secured Debt in full prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

You also agree to obtain and maintain such insurance on the Property as Holder may require you agree to maintain such insurance in the amounts and for the periods Holder requires Unless prohibited by applicable law the Account will be secured as well by proceeds of such insurance You may obtain such insurance from the carrier of your choice subject to Holder's right to disapprove your choice which right will not be exercised unreasonably

If you fail to keep the insurance required under this Section, Holder may obtain such insurance coverage at Holder's option and your expense and Holder may charge you a fee to do so unless otherwise prohibited from doing so by applicable law Holder is under no obligation to purchase any particular type or amount of coverage as such you your equity in the Property or the contents of the Property may not be protected to the extent you desire Any amount paid by Holder under this Section will be added as a Loan under this Agreement and be subject to the **FINANCE CHARGE**

**10    CREDIT AND PROPERTY INFORMATION**
You agree to furnish personal financial information and information about the Property and your occupation of the Property reasonably requested by Holder from time to time Such information must be furnished to Holder within a reasonable time but in no event later than 30 days after Holder's request In addition you authorize Holder at Holder's expense to make or have made credit inquiries, and you authorize any person to whom Holder makes such inquiries to furnish Holder with the requested information You also authorize Holder to release information regarding the status and history of the Account to third persons including without limitation credit bureaus merchants and financial institutions to the extent permitted by applicable law

**11    ASSIGNMENT**
Holder may assign or transfer this Agreement and the Security Instrument without notice to you You may not assign or transfer your rights and obligations under this Agreement without Holder's written authorization however this Agreement is binding upon your heirs successors and legal representatives

**12    TAX DEDUCTIBILITY**
You should consult a tax advisor regarding the deductibility of interest and charges under the Account

**13    DEFAULT**
You will be in default under this Agreement if
(A) You engage in fraud or material misrepresentation in connection with the Account or with any aspect of the Account including without limitation your application for the Account and your occupancy of the Property
(B) You do not meet the repayment terms under this Agreement
(C) Your action or inaction adversely affects the collateral for the Account (including without limitation the Property) or Holder's rights in the collateral under the Security Instrument including without limitation (i) your failure to maintain insurance as required under the Security Instrument (ii) your transfer of the Property as provided in the Security Instrument (iii) your failure to maintain the Property or use of the Property in a destructive manner, (iv) your commission of waste of the Property (v) your failure to pay taxes due on the Property or your failure to act such that a lien superior to Holder's lien is filed against the Property (vi) the death of all of you (vii) the Property is taken by condemnation or eminent domain (viii) a judgment is filed against you that subjects the Property to action that adversely affects Holder's interest in the Property (ix) the creation of a lien on the Property without Holder's permission or (x) a superior lien holder forecloses on the Property such that Holder's interest in the Property is adversely affected

**14    REMEDIES FOR DEFAULT**
If you are in default Holder may terminate the Account require you to pay the entire outstanding Account Balance and charge a termination fee and any collection fees unless otherwise prohibited from doing so by applicable law Holder at Holder's option also may take one or more lesser actions Such lesser actions may include without limitation reducing the Credit Limit Holder may take action under this Section only after complying with any notice or cure provisions required under applicable law In the event Holder elects not to terminate the Account or take lesser action when you are in default, Holder does not forfeit or waive Holder's right to do so at a later time or to do so if you are in default again

**15    SUSPENSION OF ACCOUNT AND REDUCTION OF CREDIT LIMIT**

Unless otherwise prohibited from doing so by applicable law Holder may temporarily suspend the Account or reduce the Credit Limit if

(A) The value of the Property declines significantly below the Property's appraised value for purposes of the Account

(B) Holder reasonably believes you will not be able to meet the repayment requirements under this Agreement due to a material change in your financial circumstances

(C) You are in default of a material obligation of this Agreement or the Security Instrument  for purposes of this Agreement a material obligation will include without limitation your obligation to supply Holder with the credit and property information required under Section 10 of this Agreement

(D) A governmental action prevents Holder from imposing the **ANNUAL PERCENTAGE RATE** or impairs Holder's security interest under the Security Instrument such that the value of the security interest is less than 120 percent of the Credit Limit

(E) A regulatory agency has notified Holder that continued advances would constitute an unsafe practice,

(F) The **ANNUAL PERCENTAGE RATE** reaches the maximum rate permitted under this Agreement  or

(G) Any of you requests to do so, provided  that Holder may require that any such request be in writing and sent to Holder by certified mail  and that Holder may require that any request to reinstate the Account also be in writing and sent by all of you

If Holder suspends the Account or reduces the Credit Limit  Holder will send you notice of Holder's decision as provided in Section 8 of this Agreement  Any request by you to reinstate the Account or the Credit Limit must be in writing and sent to Holder as provided in Section 8 of this Agreement

**16    CHANGING THE TERMS OF THIS AGREEMENT**

Holder may not change the terms of this Agreement except under the following circumstances

(A) Holder may change the Index and Margin if the original Index or any replacement index is no longer available  Any new Index must have a historical movement similar to the original Index and together with a new Margin must result in an **ANNUAL PERCENTAGE RATE** substantially similar to the **ANNUAL PERCENTAGE RATE** in effect at the time the original Index or replacement index became unavailable

(B) Holder may make changes that you agree to in writing

(C) Holder may make changes that unequivocally benefit you throughout the remaining term of the Account

(D) Holder may make changes to insignificant terms of this Agreement

Holder may make any of the foregoing changes (if any such change is adverse to you and pertains to the Account Balance or **FINANCE CHARGES**) only after providing you with ninety (90) days notice of any such change

Unless otherwise prohibited from doing so by applicable law  Holder may refuse to make additional Loans or reduce the Credit Limit whenever the Maximum **ANNUAL PERCENTAGE RATE** is reached

**17    CANCELING THE ACCOUNT**

You may cancel the Account at any time by notifying Holder in writing as provided in Section 8 above  Cancellation of the Account by any of you will cancel the Account for all of you  However  Holder may release any of you from your obligations under this Agreement without releasing the remainder of you from your obligations

If the Account is canceled or terminated for any reason  you will not be entitled to a refund of or a credit for any initial annual fees or other fees and charges payable under the Account  unless otherwise required by applicable law  In addition  you must return to Holder the Checks  Credit Cards  and any other devices you may have to access the Account  Any further use of such devices may be considered fraudulent  Regardless of such cancellation or termination  you will remain obligated to repay the Account Balance in full  including any money advanced to you after the Account has been canceled or terminated

**18    LOAN CHARGES**

If this Agreement is subject to a law that sets maximum Loan charges  and that law is finally interpreted so that the **FINANCE CHARGE** or other Loan charges collected or to be collected in connection with the Account exceed the permitted limits  then  (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit  and (b) any sums already collected from you that exceeded permitted limits will be refunded to you  Holder may choose to make this refund by reducing the principal owed under the Account or by making a direct payment to you  If a refund reduces principal  the reduction will be treated as a partial prepayment without any prepayment charge  Your acceptance of any such refund made by direct payment to you will constitute a waiver of any right of action you might have arising out of such overcharge

**19    SEVERABILITY**

In the event that any provision or clause of this Agreement or the Security Instrument conflicts with applicable federal  state  or local law  such provision or clause will be considered changed to the extent permissible and necessary to comply with such law  Otherwise  such conflict will not affect other provisions of this Agreement or the Security Instrument that can be given effect without the conflicting provision

**20    YOUR BILLING RIGHTS-KEEP THIS NOTICE FOR FUTURE USE**

This notice contains important information about your rights and Holder's responsibilities under the Fair Credit Billing Act

**Notify Holder In Case of Errors or Questions About Your Bill**

If you think the Billing Statement is wrong  or if you need more information about a transaction on the Billing Statement, write Holder at the address listed on the Billing Statement  Write to Holder as soon as possible  Holder must

608

hear from you no later than 60 days after Holder sent you the first Billing Statement on which the error or problem appeared  You can telephone Holder  but doing so will not preserve your rights

In your letter, give Holder the following information

    (A) Your name and account number

    (B) The dollar amount of the suspected error

    (C) Describe the error and explain  if you can  why you believe there is an error  If you need more information  describe the item you are not sure about

If you have authorized Holder to pay the Account automatically from your savings  checking  or other account  you can stop the payment on any amount you think is wrong  To stop the payment your letter must reach Holder three business days before the automatic payment is scheduled to occur

**Your Rights and Holder's Responsibilities After Holder Receives Your Written Notice**

Holder must acknowledge your letter within 30 days  unless Holder has corrected the error by then  Within 90 days  Holder must either correct the error or explain why Holder believes the Billing Statement was correct

After Holder receives your letter  Holder cannot try to collect any amount you question or report you as delinquent  Holder can continue to bill you for the amount you question  including **FINANCE CHARGES**, and Holder can apply any unpaid amount against the Credit Limit  You do not have to pay any questioned amount while Holder is investigating, but you are still obligated to pay the parts of the Billing Statement that are not in question

If Holder finds that Holder made a mistake on the Billing Statement  you will not have to pay any **FINANCE CHARGES** related to any questioned amount  If Holder did not make a mistake  you may have to pay **FINANCE CHARGES**  and you will have to make up any missed payments on the questioned amount  In either case  Holder will send you a statement of the amount you owe and the date that it is due

If you fail to pay the amount that Holder thinks you owe, Holder may report you as delinquent  However  if Holder's explanation does not satisfy you and you write to Holder within ten days telling Holder that you still refuse to pay, Holder must tell anyone Holder reports you to that you have a question about the Billing Statement  And Holder must tell you the name of anyone Holder reported you to  Holder must tell anyone Holder reports you to that the matter has been settled between you and Holder when it finally is

If Holder does not follow these rules  Holder can t collect the first $ 50 00 of the questioned amount, even if the Billing Statement was correct

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with the Credit Card and you have tried in good faith to correct the problem with the merchant  you may have the right not to pay the remaining amount due on the property or services  There are two limitations on this right

    (A) You must have made the purchase in your home state or  if not within your home state  within 100 miles of your current mailing address  and

    (B) The purchase price must have been more than $ 50 00

These limitations do not apply if Holder owns or operates the merchant or if Holder mailed you the advertisement for the property or services

**21    LIABILITY FOR UNAUTHORIZED USE OF A CREDIT CARD**

You may be liable for the unauthorized use of the Credit Card  You will not be liable for unauthorized use that occurs after you notify Holder, orally (as provided in the Billing Statement) or in writing (as provided in Section 8 above), of the loss  theft, or possible unauthorized use  In any case  your liability will not exceed $ 50 00

608

By signing below you agree to the terms of this Agreement  You also acknowledge and agree that you
received a completed copy of this Agreement

**NOTICE TO BORROWER**
**DO NOT SIGN THIS AGREEMENT/NOTE IF IT CONTAINS BLANK SPACES**
**ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Brian E Bath          July 9, 2004_
- BORROWER - BRIAN E BATH  /DATE -

PAY TO THE ORDER OF                                    *[Sign Original Only]*

WITHOUT RECOURSE
CENTENNIAL MORTGAGE & FUNDING, INC
_Carol Kinkade_
ASSISTANT SECRETARY

WISCONSIN HELOC Balloon Agreement
Residential Funding Corporation
DOCLOXG7
DOCUKE27 VTX  06/03/2004                              1/04    *(Page 7 of 7 pages)*

---

## Prepayment Addendum to Note

LOAN # ████ 0608

---

THIS PREPAYMENT ADDENDUM TO NOTE is made on **JULY 9, 2004**                              and
is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the
Borrower ) in favor of **CENTENNIAL MORTGAGE & FUNDING, INC**

and is dated as of even date herewith (the  Note )

ADDITIONAL COVENANTS  In addition to the covenants and agreements made in the Note  Borrower and
Lender further covenant and agree as follows

### 1    PREPAYMENT PENALTY

Except as provided below  Borrower may make a full prepayment or a partial prepayment of principal at any
time without paying any charge  However if within the first      36
month(s) after the date Borrower executes the Note  Borrower will pay a prepayment penalty in the amount of
six month s advance interest on the amount by which the aggregate prepayments (including prepayments
occurring as a result of the acceleration of the maturity of the Note) made within any consecutive twelve month
period exceeding twenty percent (20%) of the original principal amount

No prepayment penalty will be assessed for any prepayment made after the Penalty Period or if the prepayment
is concurrent with the sale of the property securing this Note

If a law  which applies to this loan and which sets a maximum prepayment charge or prohibits prepayment
charges  is finally interpreted so that the prepayment charge to be collected in connection with this loan exceeds
the permitted limits  then (i) any such prepayment charge shall be reduced by the amount necessary to reduce the
charge to the permitted limit, or (ii) if the prepayment charge is prohibited  no prepayment charge will be
assessed or collected

[REDACTED] 608

BY SIGNING BELOW Borrower accepts and agrees to the terms and covenants contained in this addendum

_Brian E Bath_     _July 9, 2004_
- BORROWER - BRIAN E BATH - DATE

PAY TO THE ORDER OF

WITHOUT RECOURSE
CENTENNIAL MORTGAGE & FUNDING, INC

_Carol Fankras_
ASSISTANT SECRETARY

DOCUFA12
DOCUPA12 VTX  11/07/2002                Page 2 of 2

## Exhibit B

# U.S. Bankruptcy Court
## Western District of Wisconsin, http://www.wiwb.uscourts.gov (Eau Claire)
## Bankruptcy Petition #: 1-06-12641-tsu

|  |  |
|---|---|
| *Date filed:* | 10/19/2006 |
| *Date terminated:* | 08/19/2008 |
| *341 meeting (341mtg):* | 01/02/2007 |
| *Deadline for objecting to discharge:* | 02/02/2007 |

*Hearing Location:* Eau Claire
*Assigned to:* Thomas S. Utschig
Chapter 7
Voluntary
No asset

Associated Case(s): [1-06-00223-tsu (Eau Claire)](#) [(Dkt)](#)
[1-07-00005-tsu (Eau Claire)](#) [(Dkt)](#)
[1-07-00107-tsu (Eau Claire)](#) [(Dkt)](#)

| | |
|---|---|
| ***Debtor***<br>**Brian E Bath**<br>P.O. Box 1612<br>Hudson, WI 54016<br>ST. CROIX-WI<br>SSN / ITIN: xxx-xx-3948<br>*fdba* **Evergreen Land Trust**<br>*fdba* **Evergreen Investment Group, LLC** | represented by **Joseph A Skokan**<br>Piletich & Skokan, P.A.<br>1675 South Greeley St, Ste 100<br>Stillwater, MN 55082<br>(651) 351-1975<br>Fax : (651) 351-3975<br>Email: [piletichskokan@comcast.net](mailto:piletichskokan@comcast.net) |
| ***Joint Debtor***<br>**Katherine A Bath**<br>P.O. Box 1612<br>Hudson, WI 54016<br>ST. CROIX-WI<br>SSN / ITIN: xxx-xx-7129 | represented by **Joseph A Skokan**<br>(See above for address) |
| ***Trustee***<br>**Randi L. Osberg**<br>Ruder Ware, L.L.S.C.<br>402 Graham Avenue<br>P.O. Box 187<br>Eau Claire, WI 54702-0187<br>715-834-3425 | represented by **Randi L. Osberg**<br>402 Graham Avenue<br>P.O. Box 187<br>Eau Claire, WI 54702-0187<br>(715) 834-3425<br>Email: [jdawson@ruderware.com](mailto:jdawson@ruderware.com)<br><br>**Christopher M. Seelen**<br>Ruder Ware, LLSC<br>402 Graham Avenue<br>P.O. Box 187<br>Eau Claire, WI 54702-0187<br>(715) 834-3425<br>Email: [cseelen@ruderware.com](mailto:cseelen@ruderware.com) |
| ***U.S. Trustee***<br>**U.S. Trustee's Office**<br>U.S. Trustee's Office<br>Suite 304 | represented by **Thomas P. Walz**<br>Office of the U.S. Trustee<br>780 Regent Street<br>Suite 304 |

WIWB CM/ECF live (v5.1) Database       Page 2 of 19
12-12020-mg    Doc 5962-1    Filed 11/26/13    Entered 11/26/13 21:38:30    Exhibit 1 -
Supplemental Horst Declaration    Pg 21 of 67

780 Regent Street
Madison, WI 53715

Madison, WI 53715
608-264-5522
Email: Thomas.P.Walz@usdoj.gov

| Filing Date | # | Docket Text |
|---|---|---|
| 10/19/2006 | 1<br>(49 pgs) | Chapter 7 Voluntary Petition, Schedules A-J, and Statement of Financial Affairs [Filing Fee $ 299] filed by Joseph A Skokan of Piletich & Skokan, P.A. on behalf of Brian E Bath, Katherine A Bath. (Skokan, Joseph) (Entered: 10/19/2006) |
| 10/19/2006 | 2 | Statement of Social Security Number filed by Joseph A Skokan on behalf of Brian E Bath, Katherine A Bath. (Skokan, Joseph) (Entered: 10/19/2006) |
| 10/19/2006 | 3<br>(1 pg) | Certificate of Credit Counseling for Debtor filed by Joseph A Skokan on behalf of Brian E Bath. (Skokan, Joseph) (Entered: 10/19/2006) |
| 10/19/2006 | 4<br>(1 pg) | Certificate of Credit Counseling for Joint Debtor filed by Joseph A Skokan on behalf of Katherine A Bath. (Skokan, Joseph) (Entered: 10/19/2006) |
| 10/19/2006 | 5<br>(1 pg) | Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A filed by Joseph A Skokan on behalf of Brian E Bath, Katherine A Bath. (Skokan, Joseph) (Entered: 10/19/2006) |
| 10/19/2006 | 6<br>(1 pg) | Employee Income Records for Debtor and Joint Debtor filed by Joseph A Skokan on behalf of Brian E Bath, Katherine A Bath. (Skokan, Joseph) (Entered: 10/19/2006) |
| 10/19/2006 | 7<br>(2 pgs) | First Meeting of Creditors & Notice of Appointment of Interim Trustee Randi L. Osberg with 341(a) meeting to be held on 12/04/2006 at 02:00 PM at Eau Claire Meetings, Room 20 Objections for Discharge due by 02/02/2007. cc: via BNC to all parties (Entered: 10/19/2006) |
| 10/19/2006 | | Receipt of Chapter 7 Voluntary Petition - Case Upload(1-06-12641) [caseupld,1027u] ( 299.00) filing fee. Receipt number 1347355, amount $ 299.00. (U.S. Treasury) (Entered: 10/19/2006) |

WIWB CM/ECF live (v5.1) Database       Page 3 of 19
12-12020-mg   Doc 5962-1   Filed 11/26/13   Entered 11/26/13 21:38:30   Exhibit 1 -
Supplemental Horst Declaration   Pg 22 of 67

| | | |
|---|---|---|
| 10/22/2006 | **8**<br>(4 pgs) | BNC Certificate of Mailing - Meeting of Creditors (Related Doc # (Related Doc # 7)). Service Date 10/22/2006. (Admin.) (Entered: 10/22/2006) |
| 10/26/2006 | **9**<br>(1 pg) | Declaration re: Electronic Filing. (Eau Claire, Jackie) (Entered: 10/26/2006) |
| 10/30/2006 | **10**<br>(2 pgs) | Notice of Appearance and Request for Notice filed by Jerome T. Feldner on behalf of CAB East LLC. (Feldner, Jerome) (Entered: 10/30/2006) |
| 10/30/2006 | **11**<br>(11 pgs; 4 docs) | Motion for Relief from Stay *or, Alternatively, to Assume or Reject Lease (2006 Mercury Mountaineer)* [ Fee Amount $150] filed by Jerome T. Feldner on behalf of CAB East LLC. Notice of Motion/Proof of Service - Last Day to File Objections/Request for Hearing: 11/14/2006. (Attachments: 1 Exhibits A & B 2 Notice of Motion 3 Certificate of Service) (Feldner, Jerome) (Entered: 10/30/2006) |
| 10/30/2006 | | Receipt of Motion for Relief from Stay(1-06-12641-tsu) [motion,mrlfsty] ( 150.00) filing fee. Receipt number 1357071, amount $ 150.00. (U.S. Treasury) (Entered: 10/30/2006) |
| 10/31/2006 | **12**<br>(1 pg) | Notice to Debtor and Joint Debtor re: Requirement to Complete Financial Management Course . (Eau Claire, Jackie) (Entered: 10/31/2006) |
| 10/31/2006 | **13**<br>(23 pgs; 2 docs) | Motion for Relief from Stay and Abandonment [ Fee Amount $150] filed by Jay J. Pitner on behalf of JPMorgan Chase Bank, N.A.. Notice of Motion/Proof of Service - Last Day to File Objections/Request for Hearing: 11/15/2006. (Attachments: 1 recorded mtg) (Pitner, Jay) (Entered: 10/31/2006) |
| 10/31/2006 | | Receipt of Motion for Relief From Stay and Abandonment(1-06-12641-tsu) [motion,mrlfstya] ( 150.00) filing fee. Receipt number 1358452, amount $ 150.00. (U.S. Treasury) (Entered: 10/31/2006) |
| | **14**<br>(5 pgs) | Amended Proof of Service filed by Jay J. Pitner on behalf of JPMorgan Chase Bank, N.A.. Related document(s) 13 Motion for Relief from Stay and Abandonment [ Fee Amount $150] filed by Creditor |

| | | |
|---|---|---|
| 11/01/2006 | | JPMorgan Chase Bank, N.A.. (Pitner, Jay) (Entered: 11/01/2006) |
| 11/01/2006 | 15 | Corrective Entry (*failed to add debtors, debtor's atty and Trustee to the proof of service when MFR was filed on 10/31/06* ) filed by Jay J. Pitner on behalf of JPMorgan Chase Bank, N.A.. Related document(s) 14 Proof of Service, filed by Creditor JPMorgan Chase Bank, N.A.. (Pitner, Jay) Modified on 11/2/2006 to Relate to document 13 (Eau Claire, Monica). (Entered: 11/01/2006) |
| 11/01/2006 | 16 (16 pgs; 2 docs) | Motion for Relief from Stay and Abandonment [ Fee Amount $150] filed by Jay J. Pitner on behalf of Residential Funding Company, LLC. Notice of Motion/Proof of Service - Last Day to File Objections/Request for Hearing: 11/16/2006. (Attachments: 1 recorded mtg) (Pitner, Jay) (Entered: 11/01/2006) |
| 11/02/2006 | | Receipt of Motion for Relief From Stay and Abandonment(1-06-12641-tsu) [motion,mrlfstya] ( 150.00) filing fee. Receipt number 1360173, amount $ 150.00. (U.S. Treasury) (Entered: 11/02/2006) |
| 11/02/2006 | 17 (2 pgs) | BNC Certificate of Mailing - Notice Re: Financial Management Course (Related Doc # (Related Doc # 12)). Service Date 11/02/2006. (Admin.) (Entered: 11/02/2006) |
| 11/06/2006 | 18 (1 pg) | Trustee's Objection *to Residential Funding Company's Motion for Abandonment* filed by Randi L. Osberg on behalf of Randi L. Osberg. Related document(s)16 Motion for Relief from Stay and Abandonment [ Fee Amount $150] filed by Creditor Residential Funding Company, LLC.(Osberg, Randi) (Entered: 11/06/2006) |
| 11/06/2006 | 19 (2 pgs) | Proof of Service filed by Randi L. Osberg on behalf of Randi L. Osberg. Related document(s)18 Objection, filed by Trustee Randi L. Osberg. (Osberg, Randi) (Entered: 11/06/2006) |
| | 20 (1 pg) | Trustee's Objection *to JPMorgan Chase Bank's Motion for Abandonment* filed by Randi L. Osberg on behalf of Randi L. Osberg. Related document(s) 13 Motion for Relief from Stay and Abandonment |

| | | |
|---|---|---|
| 11/06/2006 | | [ Fee Amount $150] filed by Creditor JPMorgan Chase Bank, N.A..(Osberg, Randi) (Entered: 11/06/2006) |
| 11/06/2006 | 21 (2 pgs) | Proof of Service filed by Randi L. Osberg on behalf of Randi L. Osberg. Related document(s)20 Objection, filed by Trustee Randi L. Osberg. (Osberg, Randi) (Entered: 11/06/2006) |
| 11/08/2006 | 22 | Telephone Conference scheduled for 11/21/2006 at 09:00 AM by Telephone Conference on *Trustee's Objection to JPMorgan Chase Bank's Motion for Abandonment. (This docket event shall serve as electronic notice. Attorney Pitner to initiate).* (Related Doc # 13). (Eau Claire, Monica) (Entered: 11/08/2006) |
| 11/08/2006 | 23 | Telephone Conference scheduled for 11/21/2006 at 09:00 AM by Telephone Conference on *Trustee's Objection to Residential Funding Company's Motion for Abandonment. (This docket event shall serve as electronic notice. Attorney Pitner to initiate).* (Related Doc # 16). (Eau Claire, Monica) (Entered: 11/08/2006) |
| 11/08/2006 | 24 (3 pgs) | Creditor's Notice of Appearance and Request for Notice filed by Patrick Summers on behalf of Dean Jakubowicz. (Summers, Patrick) (Entered: 11/08/2006) |
| 11/20/2006 | 25 (2 pgs) | Affidavit *of No Objection* filed by Jerome T. Feldner on behalf of CAB East LLC. Related document(s)11 Motion for Relief from Stay *or, Alternatively, to Assume or Reject Lease (2006 Mercury Mountaineer)* [ Fee Amount $150] filed by Creditor CAB East LLC. (Feldner, Jerome) (Entered: 11/20/2006) |
| 11/20/2006 | 26 (1 pg) | Proposed Order (related document(s)11) filed by Attorney Jerome T. Feldner of Quale Feldbruegge Calvelli Thom & Croke on behalf of CAB East LLC . Order to be signed on or after 11/20/2006. (Feldner, Jerome) (Entered: 11/20/2006) |
| | 27 (1 pg) | Proof of Service filed by Jerome T. Feldner on behalf of CAB East LLC. Related document(s)26, 25 Proposed Order filed by Creditor CAB East LLC, Affidavit, filed by Creditor CAB East LLC. |

| | | |
|---|---|---|
| 11/20/2006 | | (Feldner, Jerome) (Entered: 11/20/2006) |
| 11/21/2006 | 28 | PM/Hearing held on *(i) Trustee's Objection to JPMorgan Chase Bank's Motion for Abandonment, and (ii) Trustee's Objection to Residential Funding Company's Motion for Abandonment. Attorney Charles Leppert to submit proposed orders* (Related Doc # 16, 13). (Eau Claire, Cindy) (Entered: 11/21/2006) |
| 11/22/2006 | 29 (4 pgs) | Adversary case 1-06-00223. Complaint filed by Marian C. Hawkins against Brian E Bath [ Fee Amount $ 250]. Nature of Suit: 62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud), 67 (Dischargeability - 523(a)(4), fraud as fiduciary, embezzlement, larceny) (Seguin, D.) (Entered: 11/22/2006) |
| 11/28/2006 | 30 (2 pgs) | Certificate of Financial Management Course for Debtor and Joint Debtor filed by Joseph A Skokan on behalf of Brian E Bath, Katherine A Bath. (Skokan, Joseph) (Entered: 11/28/2006) |
| 11/30/2006 | 31 (3 pgs) | Notice of Appearance and Request for Notice filed by Diana M. Thimmig on behalf of Tarpon Point Associates, LLC. (Thimmig, Diana) (Entered: 11/30/2006) |
| 12/04/2006 | 32 (2 pgs) | Proposed Order (related document(s)13) filed by Attorney Jay J. Pitner of Gray & Associates, LLP on behalf of JPMorgan Chase Bank, N.A. . Order to be signed on or after 12/11/2006. (Pitner, Jay) (Entered: 12/04/2006) |
| 12/04/2006 | 33 (2 pgs) | Proposed Order (related document(s)16) filed by Attorney Jay J. Pitner of Gray & Associates, LLP on behalf of Residential Funding Company, LLC . Order to be signed on or after 12/11/2006. (Pitner, Jay) (Entered: 12/04/2006) |
| 12/05/2006 | 34 | Meeting of Creditors Continued on 1/2/2007 at 02:00 PM at Eau Claire Meetings, Room 20 (Osberg, Randi) (Entered: 12/05/2006) |
| | 35 (4 pgs) | Application to Employ Randi L.Osberg and/or Christopher M. Seelen as Attorneys and/or Accountant */ Affidavits of Proposed Attorney* filed by Randi L. Osberg on behalf of Randi L. Osberg. |

| | | |
|---|---|---|
| 12/06/2006 | | (Osberg, Randi) (Entered: 12/06/2006) |
| 12/06/2006 | 36 (1 pg) | Proposed Order (related document(s)35) filed by Attorney Randi L. Osberg on behalf of Randi L. Osberg . Order to be signed on or after 12/7/2006. (Osberg, Randi) (Entered: 12/06/2006) |
| 12/06/2006 | 37 (1 pg) | Order Granting Motion for Relief From Stay or, in the Alternative, to Assume or Reject Lease (Related Doc # 11) cc: parties in int. Signed on 12/6/2006. (Eau Claire, Jackie) (Entered: 12/07/2006) |
| 12/08/2006 | 38 (1 pg) | Order Granting Application to Employ Randi Osberg/Christopher Seelen as Attorney/Accountant for Trustee (Related Doc # 35) cc: parties in int. Signed on 12/8/2006. (Eau Claire, Jackie) (Entered: 12/08/2006) |
| 12/12/2006 | 39 (2 pgs) | Stipulation to Substitute Attorney filed by Bradley J. Halberstadt on behalf of CAB East LLC. (Halberstadt, Bradley) (Entered: 12/12/2006) |
| 12/12/2006 | 40 (2 pgs) | Stipulation between CAB East LLC and Debtors (Related Document(s) 11), filed by Bradley J. Halberstadt on behalf of CAB East LLC. (Halberstadt, Bradley) Modified on 12/13/2006 (Eau Claire, Jackie). (Entered: 12/12/2006) |
| 12/13/2006 | 41 (7 pgs) | Creditor's Motion to Lease or Executory Contract *(Assume or Reject)* filed by Christine A. Gimber on behalf of Tarpon Point Associates, LLC.. (Gimber, Christine) (Entered: 12/13/2006) |
| 12/13/2006 | 42 (2 pgs) | Proposed Order (related document(s)41) filed by Attorney Christine A. Gimber on behalf of Tarpon Point Associates, LLC . Order to be signed on or after 1/8/2007. (Gimber, Christine) Modified on 12/14/2006 to change sign-on date to allow for objection period (Eau Claire, Jackie). (Entered: 12/13/2006) |
| 12/14/2006 | 43 (10 pgs) | Trustee's Motion to Extend Time *for Assumption or Rejection of Contracts and Leases* filed by Randi L. Osberg on behalf of Randi L. Osberg. Notice of Motion/Proof of Service - Last Day to File Objections/Request for Hearing: 1/3/2006. (Osberg, Randi) (Entered: 12/14/2006) |
| | | |

| | | |
|---|---|---|
| 12/14/2006 | 44<br>(1 pg) | Proposed Order (related document(s)43) filed by Attorney Randi L. Osberg on behalf of Randi L. Osberg . Order to be signed on or after 1/4/2007. (Osberg, Randi) (Entered: 12/14/2006) |
| 12/18/2006 | 45 | Trustee's Request for Court to Issue Notice of Probable Assets. (Osberg, Randi) (Entered: 12/18/2006) |
| 12/18/2006 | 46<br>(3 pgs) | *Answer and Counterclaim of Brian Bath,* filed by Brian E Bath (Related Doc # 16). (Eau Claire, Jackie) (Entered: 12/18/2006) |
| 12/19/2006 | 47<br>(1 pg) | Proofs of Claims Due by 3/22/2007.<br><br>Notice of Probable Assets. cc: via BNC to all parties (Eau Claire, Jackie) (Entered: 12/19/2006) |
| 12/20/2006 | 48<br>(2 pgs) | Order Granting Motion for Relief From Stay and Abandonment to JPMorgan Chase Bank NA (Related Doc # 13) cc: parties in int. Signed on 12/20/2006. (Eau Claire, Jackie) (Entered: 12/20/2006) |
| 12/20/2006 | 49<br>(2 pgs) | Order Pursuant to Hearing upon Motion of Residential Funding Company, LLC for Relief From Stay and Abandonment(Related Doc # 16) cc: parties in int. Signed on 12/20/2006. (Eau Claire, Monica) (Entered: 12/21/2006) |
| 12/21/2006 | 50<br>(6 pgs) | BNC Certificate of Mailing - Notice of Probable Assets (Related Doc # (Related Doc # 47)). Service Date 12/21/2006. (Admin.) (Entered: 12/21/2006) |
| 12/22/2006 | 51<br>(3 pgs; 2 docs) | Notice of Motion filed by Tarpon Point Associates, LLC. Related document(s)41 Creditor's Motion to Lease or Executory Contract *(Assume or Reject)* filed by Creditor Tarpon Point Associates, LLC. Last Day to File Objections/Request for Hearing: 1/8/2007. (Attachments: 1 Proof of Service) (Gimber, Christine) (Entered: 12/22/2006) |
| 12/22/2006 | 52<br>(1 pg) | Request for Hearing filed by Christine A. Gimber on behalf of Tarpon Point Associates, LLC. Related document(s)43 Trustee's Motion to Extend Time *for Assumption or Rejection of Contracts and Leases* filed by Trustee Randi L. Osberg.(Gimber, Christine) (Entered: 12/22/2006) |

| | | |
|---|---|---|
| 12/22/2006 | 53<br>(1 pg) | Trustee's Objection *to Tarpon Point's Motion to Compel Assumption of Executory Contracts and Unexpired Leases to the Extent Inconsistent with Trustee's Motion for an Extension* filed by Randi L. Osberg on behalf of Randi L. Osberg. Related document(s)41 Creditor's Motion to Lease or Executory Contract *(Assume or Reject)* filed by Creditor Tarpon Point Associates, LLC.(Osberg, Randi) (Entered: 12/22/2006) |
| 12/22/2006 | 54<br>(2 pgs) | Proof of Service filed by Randi L. Osberg on behalf of Randi L. Osberg. Related document(s)53 Objection, filed by Trustee Randi L. Osberg. (Osberg, Randi) (Entered: 12/22/2006) |
| 12/27/2006 | 55 | Telephone Conference scheduled for 1/16/2007 at 11:00 AM by Telephone Conference on *Motion by Tarpon Point Associates LLC to Assume or Reject Leases and Contracts. This docket entry shall serve as electronic notice of hearing. Attorney Gimber to initiate the telephone conference call.* (Related Doc # 41). (Eau Claire, Jackie) (Entered: 12/27/2006) |
| 12/27/2006 | 56 | Telephone Conference scheduled for 1/16/2007 at 11:00 AM by Telephone Conference on *Trustee's Motion to Extend Time to Assume or Reject Leases and Contracts. This docket entry shall serve as electronic notice of hearing. Attorney Gimber to initiate the telephone conference call.* (Related Doc # 43). (Eau Claire, Jackie) (Entered: 12/27/2006) |
| 12/29/2006 | 57<br>(9 pgs) | Response filed by Christine A. Gimber on behalf of Tarpon Point Associates, LLC. Related document(s) 43 Trustee's Motion to Extend Time *for Assumption or Rejection of Contracts and Leases* filed by Trustee Randi L. Osberg.(Gimber, Christine) (Entered: 12/29/2006) |
| 01/02/2007 | 58 | Trustee's Initial Report/Meeting of Creditors Held (Osberg, Randi) (Entered: 01/02/2007) |
| 01/16/2007 | 59 | PM/Hearing held on *(i) Motion by Tarpon Point Associates, LLC, to Assume or Reject Leases and Contracts, and (ii) Motion to Extend Time to Assume or Reject Leases and Contracts. Attorney Diana Thimmig to submit stipulation and proposed order* (Related Doc # 43, 41). (Eau Claire, Cindy) (Entered: 01/16/2007) |

| | | |
|---|---|---|
| 01/17/2007 | [60](#)<br>(2 pgs) | Trustee's Notice of Intent to Abandon *(five units in Tarpon Landings)*. Last Day to File Objection (s)/Request for Hearing: 2/1/2007. (Osberg, Randi) (Entered: 01/17/2007) |
| 01/17/2007 | [61](#)<br>(6 pgs) | Proof of Service filed by Randi L. Osberg on behalf of Randi L. Osberg. Related document(s)[60](#) Trustee's Notice of Intent to Abandon filed by Trustee Randi L. Osberg. (Osberg, Randi) (Entered: 01/17/2007) |
| 01/17/2007 | [62](#)<br>(8 pgs) | Adversary case 1-07-00005. Complaint filed by Dean Jakubowicz against Brian E Bath [ Fee Amount $ 250]. Nature of Suit: 62 (Dischargeability - 523(a)(2), false pretenses, false representation, actual fraud), 67 (Dischargeability - 523(a)(4), fraud as fiduciary, embezzlement, larceny) (Summers, Patrick) (Entered: 01/17/2007) |
| 01/19/2007 | [63](#)<br>(8 pgs; 3 docs) | Motion for Relief from Stay [Receipt Number check, Fee Amount $150] filed by Michael C. Koehn on behalf of American Honda Finance Corp.. Notice of Motion/Proof of Service - Last Day to File Objections/Request for Hearing: 2/9/2007. (Attachments: [1](#) Exhibits, [2](#) Proof of Service) (Eau Claire, Jackie) Additional attachment(s) added on 1/19/2007 (Eau Claire, Jackie). Modified on 1/19/2007 (Eau Claire, Jackie). (Entered: 01/19/2007) |
| 01/19/2007 | [64](#)<br>(3 pgs) | Stipulation between Tarpon Point Associates, LLC and Randi Osberg, Trustee filed by Diana M. Thimmig on behalf of Tarpon Point Associates, LLC. Related document(s)[43](#) Trustee's Motion to Extend Time *for Assumption or Rejection of Contracts and Leases* filed by Trustee Randi L. Osberg. (Thimmig, Diana) (Entered: 01/19/2007) |
| 01/19/2007 | 65 | Corrective Entry (*Stipulation & Order will be filed as two separate documents* ) filed by Diana M. Thimmig on behalf of Tarpon Point Associates, LLC. Related document(s)[64](#) Stipulation between Tarpon Point Associates, LLC and Randi Osberg, Trustee filed by Creditor Tarpon Point Associates, LLC. (Thimmig, Diana) (Entered: 01/19/2007) |
| | [66](#)<br>(4 pgs) | Stipulation between Tarpon Point Associates, LLC and Randi L. Osberg, Trustee filed by Diana M. |

WIWB CM/ECF live (v5.1) Database        Page 11 of 19
12-12020-mg    Doc 5962-1    Filed 11/26/13    Entered 11/26/13 21:38:30    Exhibit 1 -
Supplemental Horst Declaration    Pg 30 of 67

| | | |
|---|---|---|
| 01/19/2007 | | Thimmig on behalf of Tarpon Point Associates, LLC. Related document(s)43 Trustee's Motion to Extend Time *for Assumption or Rejection of Contracts and Leases* filed by Trustee Randi L. Osberg. (Thimmig, Diana) (Entered: 01/19/2007) |
| 01/19/2007 | 67 (3 pgs) | Proposed Order (related document(s)66) filed by Attorney Diana M. Thimmig on behalf of Tarpon Point Associates, LLC . (Thimmig, Diana) Modified on 1/23/2007 (Eau Claire, Jackie). (Entered: 01/19/2007) |
| 01/19/2007 | 68 | Receipt of Relief from Stay Filing Fee - $150.00 by JM. Receipt Number 00136722. (admin) (Entered: 01/19/2007) |
| 01/23/2007 | 69 (3 pgs) | Order Granting Stipulation re: Trustee to Assume/Reject Leases/Executory Contracts (Related Doc # 66) cc: parties in int. Signed on 1/23/2007. (Eau Claire, Jackie) (Entered: 01/24/2007) |
| 01/23/2007 | 73 (3 pgs) | Order Granting Motion to Reject Leases or Executory Contracts (Related Doc # 41) cc: parties in int. Signed on 1/23/2007. NOTE: DUPLICATE ENTRY FOR REPORTING PURPOSES (Madison, Julie) (Entered: 02/09/2007) |
| 01/25/2007 | 70 (4 pgs) | Motion to Extend Time to Object to Discharge . Request Extension to: 7/31/2007. Notice of Motion/Proof of Service - Last Day to File Objections/Request for Hearing: 2/14/2007. (Walz, Thomas) (Entered: 01/25/2007) |
| 01/25/2007 | 71 (1 pg) | Proposed Order Extending Time to Object to Discharge(related document(s)70) filed by Attorney Thomas P. Walz of Office of the U.S. Trustee on behalf of U.S. Trustee's Office . Order to be signed on or after 2/15/2007. (Walz, Thomas) (Entered: 01/25/2007) |
| 02/01/2007 | 72 (2 pgs) | Letter *from Krista Jensen re: Objection to Discharge with Clerk's response.* (Eau Claire, Jackie) (Entered: 02/01/2007) |
| | 74 (4 pgs; 2 docs) | Objection to Motion for Relief from Stay *of American Honda Finance Corp.,* filed by Brian E Bath. Related document(s)63 Motion for Relief from Stay [Receipt Number check, Fee Amount $150] |

| | | |
|---|---|---|
| 02/12/2007 | | filed by Creditor American Honda Finance Corp.. (Attachments: 1 Exhibit (s))(Eau Claire, Jackie) (Entered: 02/12/2007) |
| 02/12/2007 | 75 | Telephone Conference scheduled for 3/13/2007 at 09:30 AM by Telephone Conference on *Motion by American Honda Finance Corp. for Relief From Stay. Attorney Michael Koehn to send notice of hearing and initiate the telephone conference call.* (Related Doc # 63). (Eau Claire, Jackie) (Entered: 02/12/2007) |
| 02/14/2007 | 76 (3 pgs; 2 docs) | Objection filed by Joseph A Skokan on behalf of Brian E Bath, Katherine A Bath. Related document (s)70 Motion to Extend Time to Object to Discharge filed by U.S. Trustee U.S. Trustee's Office. (Attachments: 1 Proof of Service)(Skokan, Joseph) (Entered: 02/14/2007) |
| 02/15/2007 | 77 | Telephone Conference scheduled for 3/13/2007 at 09:50 AM by Telephone Conference on *Motion by U.S. Trustee to Extend Time to Object to Discharge. This docket entry shall serve as electronic notice of hearing. U.S. Trustee Thomas Walz to initiate the telephone conference call.* (Related Doc # 70). (Eau Claire, Jackie) (Entered: 02/15/2007) |
| 02/16/2007 | 78 (2 pgs) | Notice of Hearing *(Telephone Conference scheduled for 3/13/2007 at 9:30 a.m.)* filed by American Honda Finance Corp.. Related document(s)63 Motion for Relief from Stay [Receipt Number check, Fee Amount $150] filed by Creditor American Honda Finance Corp.. (Eau Claire, Jackie) (Entered: 02/16/2007) |
| 02/21/2007 | 79 (1 pg) | Letter *(copy of letter from Debtor).* (Eau Claire, Jackie) Modified on 3/13/2007 (Eau Claire, Cindy) to link to 63. (Entered: 02/21/2007) |
| 03/08/2007 | 80 (8 pgs) | Notice of Filing *to be Included in and to Augment the Record,* filed by Brian E Bath. Related document (s)63 Motion for Relief from Stay [Receipt Number check, Fee Amount $150] filed by Creditor American Honda Finance Corp.. (Eau Claire, Jackie) Modified on 3/9/2007 to correct filing date (Eau Claire, Jackie). (Entered: 03/09/2007) |
| | 81 | Telephone Conference scheduled for 4/13/2007 at |

| | | |
|---|---|---|
| 03/13/2007 | | 08:30 AM by Telephone Conference on *Motion by U.S. Trustee to Extend Time to Object to Discharge*.<br><br>*PM/Hearing Held. ...Adjourned. Attorney Thomas Walz to initiate the telephone conference call. ***This docket entry serves as electronic notice of the adjourned telephone conference.**** (Related Doc # 70). (Eau Claire, Cindy) (Entered: 03/13/2007) |
| 03/13/2007 | 82 | Telephone Conference scheduled for 3/29/2007 at 08:20 AM by Telephone Conference on *Motion by American Honda Finance Corp. for Relief From Stay*.<br><br>*PM/Hearing Held. ...Adjourned. Attorney Michael Koehn to confirm and initiate the telephone conference call* (Related Doc # 63). (Eau Claire, Cindy) (Entered: 03/13/2007) |
| 03/22/2007 | 83<br>(31 pgs; 2 docs) | Motion for Relief from Stay and Abandonment [Receipt Number, Fee Amount $150] filed by Jay J. Pitner on behalf of Mortgage Electronic Registration Systems, Inc.. Notice of Motion/Proof of Service - Last Day to File Objections/Request for Hearing: 4/6/2007. (Attachments: 1 Exhibit (s) Recorded Mortgage) (Pitner, Jay) (Entered: 03/22/2007) |
| 03/22/2007 | | Receipt of Motion for Relief From Stay and Abandonment(1-06-12641-tsu) [motion,mrlfstya] ( 150.00) filing fee. Receipt number 1477801, amount $ 150.00. (U.S. Treasury) (Entered: 03/22/2007) |
| 03/29/2007 | 84 | PM/Hearing held on *Motion by American Honda Finance Corp. for Relief From Stay. Attorney Michael Koehn to submit proposed order* (Related Doc # 63). (Eau Claire, Cindy) (Entered: 03/29/2007) |
| 04/02/2007 | 85<br>(1 pg) | Proposed Order re: Motion for Relief From Stay by American Honda Finance Corp.(related document(s) 63) filed by Attorney Michael C. Koehn on behalf of American Honda Finance Corp. . Order to be signed on or after 4/9/2007. (Eau Claire, Jackie) (Entered: 04/02/2007) |
| | 86 | Letter *(Cover letter from Attorney Koehn).* (Related |

| | | |
|---|---|---|
| 04/02/2007 | (1 pg) | Doc # 85). (Eau Claire, Jackie) (Entered: 04/02/2007) |
| 04/13/2007 | 87 | PM/Hearing held on *Motion by U.S. Trustee to Extend Time to Object to Discharge. Attorney Thomas Walz to submit proposed order* (Related Doc # 70). (Eau Claire, Cindy) (Entered: 04/13/2007) |
| 04/16/2007 | 88 (1 pg) | Proposed Order Extending Time to Object to Discharges (related document(s)70) filed by Attorney Thomas P. Walz of Office of the U.S. Trustee on behalf of U.S. Trustee's Office . Order to be signed on or after 4/20/2007. (Walz, Thomas) (Entered: 04/16/2007) |
| 04/18/2007 | 89 (2 pgs) | Motion for 2004 Examination filed by Thomas P. Walz on behalf of U.S. Trustee's Office. (Walz, Thomas) (Entered: 04/18/2007) |
| 04/18/2007 | 90 (3 pgs) | Proposed Order (related document(s)89) filed by Attorney Thomas P. Walz of Office of the U.S. Trustee on behalf of U.S. Trustee's Office . Order to be signed on or after 4/23/2007. (Walz, Thomas) (Entered: 04/18/2007) |
| 04/18/2007 | 91 (23 pgs; 2 docs) | Motion for Relief from Stay and Abandonment [ Fee Amount $150] filed by Jay J. Pitner on behalf of of Hudson First National Bank. Notice of Motion/Proof of Service - Last Day to File Objections/Request for Hearing: 5/3/2007. (Attachments: 1 Exhibit (s) Recorded Mortgage) (Pitner, Jay) (Entered: 04/18/2007) |
| 04/18/2007 | | Receipt of Motion for Relief From Stay and Abandonment(1-06-12641-tsu) [motion,mrlfstya] ( 150.00) filing fee. Receipt number 1502235, amount $ 150.00. (U.S. Treasury) (Entered: 04/18/2007) |
| 04/23/2007 | 92 (1 pg) | Order Granting Motion to Extend Time to Object to Discharge (727)(Related Doc # 70) cc: parties in interest Signed on 4/23/2007. Time to Object to Discharge extended to: 7/31/2007. (Eau Claire, Jackie) (Entered: 04/23/2007) |
| | 93 (1 pg) | Order Granting Motion for Relief From Stay to American Honda Finance Corporation (Related Doc |

| 04/23/2007 | | # 63) cc: parties in int. Signed on 4/23/2007. (Eau Claire, Jackie) (Entered: 04/23/2007) |
|---|---|---|
| 04/23/2007 | 94 (3 pgs) | Order Granting Motion for 2004 Examination (Related Doc # 89) cc: parties in int. Signed on 4/23/2007. (Eau Claire, Jackie) (Entered: 04/23/2007) |

**Case #: 1-06-12641-tsu - Brian E Bath and Katherine A Bath**

| 05/08/2007 | 95 (1 pg) | Affidavit *of no objection to motion for relief from automatic stay and abandonment* filed by Jay J. Pitner on behalf of of Hudson First National Bank. Related document(s)91 Motion for Relief from Stay and Abandonment [ Fee Amount $150] filed by Creditor of Hudson First National Bank. (Pitner, Jay) (Entered: 05/08/2007) |
|---|---|---|
| 05/08/2007 | 96 (1 pg) | Proposed Order (related document(s)91) filed by Attorney Jay J. Pitner of Gray & Associates, LLP on behalf of of Hudson First National Bank . Order to be signed on or after 5/15/2007. (Pitner, Jay) (Entered: 05/08/2007) |
| 05/11/2007 | 97 (1 pg) | Affidavit *of no objection to motion for relief from automatic stay and abandonment* filed by Mark A. Clauss on behalf of Mortgage Electronic Registration Systems, Inc.. Related document(s)83 Motion for Relief from Stay and Abandonment [Receipt Number, Fee Amount $150] filed by Creditor Mortgage Electronic Registration Systems, Inc.. (Clauss, Mark) (Entered: 05/11/2007) |
| 05/11/2007 | 98 (1 pg) | Proposed Order (related document(s)83) filed by Attorney Mark A. Clauss on behalf of Mortgage Electronic Registration Systems, Inc. . Order to be signed on or after 5/17/2007. (Clauss, Mark) (Entered: 05/11/2007) |
| 05/14/2007 | 99 (4 pgs) | *Document (Notice of Appointment of Fiduciary Debtor)* filed by Brian E Bath (Eau Claire, Jackie) (Entered: 05/14/2007) |
| 05/17/2007 | 100 (1 pg) | Order Granting Motion for Relief From Stay and Abandonment to First National Bank of Hudson (Related Doc # 91) cc: parties in int. Signed on 5/17/2007. (Eau Claire, Jackie) (Entered: 05/17/2007) |
| 05/21/2007 | 102 (1 pg) | Order Granting Motion for Relief From Stay and Abandonment to Mortgage Electronic Registration Systems, Inc. (Related Doc # 83) cc: parties in int. Signed on 5/21/2007. (Eau Claire, Jackie) (Entered: 05/22/2007) |

| | | |
|---|---|---|
| 05/22/2007 | **101**<br>(5 pgs) | *Document from Debtor Brian Bath, returning copy of signed order for 2004 examination,* filed by Brian E Bath (Related Doc # **94**, **89**). (Eau Claire, Jackie) (Entered: 05/22/2007) |
| 06/29/2007 | **103**<br>(2 pgs) | Letter *from debtor Brian Bath re: credit report.* (Madison, Kathleen) (Entered: 06/29/2007) |
| 07/05/2007 | **104**<br>(2 pgs) | Motion for Relief from Stay and Abandonment [Receipt Number cc, Fee Amount $150] filed by Joel Bruce Winnig on behalf of Branch Banking and Trust Company of South Carolina. (Winnig, Joel) Modified on 7/6/2007 (Eau Claire, Monica). (Entered: 07/05/2007) |
| 07/05/2007 | **105**<br>(2 pgs) | Notice of Motion filed by Branch Banking and Trust Company of South Carolina. Related document(s)**104** Motion for Relief from Stay and Abandonment [Receipt Number cc, Fee Amount $150] filed by Creditor Branch Banking and Trust Company of South Carolina. Last Day to File Objections/Request for Hearing: 7/20/2007. (Winnig, Joel) (Entered: 07/05/2007) |
| 07/05/2007 | 106 | Receipt of Relief from Stay Filing Fee - $150.00 by RS. Receipt Number 00390190. (admin) (Entered: 07/05/2007) |
| 07/09/2007 | **107**<br>(6 pgs) | *Notice and Motion to Dismiss Bankruptcy Rescission, Waiver and Rejection of Benefits Contract Provision --- Release Without Consideration,* filed by Brian E Bath (Eau Claire, Jackie) (Entered: 07/09/2007) |
| 07/25/2007 | **108**<br>(13 pgs) | Adversary case 1-07-00107. Complaint filed by William T. Neary against Brian E Bath, Katherine A Bath [Receipt Number EXEMPT, Fee Amount $ 250]. Nature of Suit: 41 (Objection / revocation of discharge - 727(c),(d),(e)) (Walz, Thomas) (Entered: 07/25/2007) |
| 08/03/2007 | **109**<br>(1 pg) | *Order to Dismiss Bankruptcy Case,* filed by Brian E Bath (Eau Claire, Jackie) (Entered: 08/03/2007) |
| 08/03/2007 | **110**<br>(3 pgs) | DISREGARD - INCORRECT PDF ATTACHED - SEE DOCKET ENTRY NO. 111 Objection *to Entry of proposed Order Dismissing Case* filed by Thomas P. Walz on behalf of U.S. Trustee's Office. Related document(s)**107** Document filed by Debtor Brian E Bath.(Walz, Thomas) Modified on 8/6/2007 (Eau Claire, Jackie). (Entered: 08/03/2007) |
| | **111**<br>(2 pgs) | Objection *to Entry of proposed Order Dismissing Case* filed by Thomas P. Walz on behalf of U.S. Trustee's Office. |

| | | |
|---|---|---|
| 08/03/2007 | | Related document(s)107 Document filed by Debtor Brian E Bath.(Walz, Thomas) (Entered: 08/03/2007) |
| 08/06/2007 | 112 | Telephone Conference scheduled for 8/21/2007 at 09:50 AM by Telephone Conference on *Notice and Motion to Dismiss Bankruptcy Rescission, Waiver and Rejection of Benefits Contract Provision --- Release Without Consideration filed by Brian Bath. Attorney Skokan to send notice of this hearing to Debtor. All other parties are receiving electronic notice. Attorney Skokan to initiate the telephone conference call.* (Related Doc # 107). (Eau Claire, Jackie) (Entered: 08/06/2007) |
| 08/17/2007 | 113 (1 pg) | Affidavit *of no objection* filed by Joel Bruce Winnig on behalf of Branch Banking and Trust Company of South Carolina. Related document(s)104 Motion for Relief from Stay and Abandonment [Receipt Number cc, Fee Amount $150] filed by Creditor Branch Banking and Trust Company of South Carolina. (Winnig, Joel) (Entered: 08/17/2007) |
| 08/17/2007 | 114 (2 pgs) | Proposed Order (related document(s)104) filed by Attorney Joel Bruce Winnig on behalf of Branch Banking and Trust Company of South Carolina . Order to be signed on or after 8/17/2007. (Winnig, Joel) (Entered: 08/17/2007) |
| 08/20/2007 | 118 (2 pgs) | Order Granting Motion for Relief From Stay and Abandonment to Branch Bank and Trust Company (Related Doc # 104) cc: parties in int. Signed on 8/20/2007. (Eau Claire, Jackie) (Entered: 08/21/2007) |
| 08/21/2007 | 115 (9 pgs) | Change of Address filed by Joseph A Skokan on behalf of Brian E Bath, Katherine A Bath. (Skokan, Joseph) (Entered: 08/21/2007) |
| 08/21/2007 | 116 | PM/Hearing held on *Notice and Motion by Debtors to Dismiss Bankruptcy Rescission, Waiver and Rejection of Benefits Contract Provision --- Release Without Consideration. Attorney Thomas Walz to submit proposed order* (Related Doc # 107). (Eau Claire, Cindy) (Entered: 08/21/2007) |
| 08/21/2007 | 117 (1 pg) | Proposed Order Denying Debtor's Motion to Dismiss (related document(s)107) filed by Attorney Thomas P. Walz of Office of the U.S. Trustee on behalf of U.S. Trustee's Office . Order to be signed on or after 8/27/2007. (Walz, Thomas) (Entered: 08/21/2007) |
| | | Adversary Case Closed. (Eau Claire, Jackie) (Entered: |

WIWB CM/ECF live (v5.1) Database         Page 18 of 19
12-12020-mg   Doc 5962-1   Filed 11/26/13   Entered 11/26/13 21:38:30   Exhibit 1 -
Supplemental Horst Declaration   Pg 37 of 67

| | | |
|---|---|---|
| 09/05/2007 | | 09/05/2007) |
| 09/05/2007 | 119<br>(1 pg) | Order Denying Debtor's Motion to Dismiss cc: parties in int. (Related Doc # 107) Signed on 9/5/2007. (Eau Claire, Jackie) (Entered: 09/06/2007) |
| 09/08/2007 | 120<br>(3 pgs) | BNC Certificate of Mailing - PDF Document (Related Doc # (Related Doc # 119)). Service Date 09/08/2007. (Admin.) (Entered: 09/08/2007) |
| 11/02/2007 | 121<br>(2 pgs) | Order Denying Discharge cc: via BNC to all parties. Signed on 11/2/2007. (Eau Claire, Brenda L) (Entered: 11/02/2007) |
| 11/07/2007 | 122<br>(4 pgs) | BNC Certificate of Mailing - Order Denying Discharge (Related Doc # (Related Doc # 121)). Service Date 11/07/2007. (Admin.) (Entered: 11/08/2007) |
| 11/14/2007 | | Adversary Case Closed. (Eau Claire, Brenda L) (Entered: 11/14/2007) |
| 01/07/2008 | | Adversary Case Closed. (Eau Claire, Jeanette) (Entered: 01/07/2008) |
| 01/16/2008 | 123<br>(1 pg) | Creditor Request for Notices filed by Dyck-O'Neal, Inc.. (DyckONealInc, DDunn) (Entered: 01/16/2008) |
| 01/23/2008 | 124<br>(1 pg) | Creditor Request for Notices filed by Gilbert B. Weisman on behalf of American Express Bank FSB. (Weisman, Gilbert) (Entered: 01/23/2008) |
| 03/04/2008 | 125 | Trustee's Report of No Distribution/No Asset: The trustee of this estate reports that: (i) (s)he has neither received nor paid any money on account of this estate and has made diligent inquiry regarding all property of this estate, and (ii) there are no assets of this estate which are not either inconsequential in value, burdensome to the estate, or would be reasonable to administer and have value over and above the exemptions claimed by the debtor. (Osberg, Randi) (Entered: 03/04/2008) |
| 08/06/2008 | 126<br>(1 pg) | Creditor Request for Notices filed by Gilbert B. Weisman on behalf of American Express Bank FSB. (Weisman, Gilbert) (Entered: 08/06/2008) |
| | | Final Decree: This bankruptcy estate having been fully administered within the meaning of 11 U.S.C. 350(a) and Fed. R. Bankr. P. 3022, the trustee is hereby discharged and |

| 08/19/2008 | | the trustee's bond is hereby cancelled. This case is closed. (Eau Claire, Jackie) (Entered: 08/19/2008) |
| --- | --- | --- |

**Case #: 1-06-12641-tsu - Brian E Bath and Katherine A Bath**

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 10/29/2013 08:05:12 | | | |
| **PACER Login:** | gm0131 | **Client Code:** | RESCAP |
| **Description:** | Docket Report | **Search Criteria:** | 1-06-12641-tsu Fil or Ent: filed Doc From: 0 Doc To: 99999999 Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |

## Exhibit C

January 11, 2012


Brian E Bath
9227 E Lincoln Ave
Ste 200-425
Lone Tree CO 80124


RE:    Account Number          ██████2515
       Property Address        505 Diamond Drive
                               Hudson WI 54016


Dear Brian E Bath:

This letter is in response to your recent inquiry concerning the Validation of Debt on the above-referenced
purged account.

Please be advised GMAC Mortgage charged-off the balance on November 29, 2007. GMAC Mortgage is
unable to comply with your request to make changes to your credit file based on the information you have
provided. GMACM makes every effort to report true and accurate information to the bureaus.

GMAC Mortgage transferred the charged-off balance to Dyck O'Neal, Inc effective January 2, 2008. For
documents from your loan file or questions regarding the servicing of your account, please contact your
current loan servicer. A copy of the transfer letter and your payment history with GMACM is enclosed.

After reviewing the enclosed documents and you still consider yourself not financially obligated for the
above-referenced account, please provide the specific reason(s) you believe you are not liable, along with any
appropriate documents to support your assertion. Your letter and documents will be reviewed upon receipt,
and a response sent.

If you have any further questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00
am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

HH

```
TRN497CR-02                          HOMECOMINGS FINANCIAL                              5/21/07 14:19:39
MPRICE                             DETAIL TRANSACTION HISTORY                           JOB DT:  5/01/07
                                                                                              PAGE:      1

LOAN#  ▮▮▮515     INV# 804      POOL#  0200408  INV LN#  ▮▮▮633 NEXT DUE 11/20/06  INTEREST RATE 10.750   PRIN.BAL    73,400.25
BORR1  Brian E. Bath           TYPE:  15-00 CCS IHOME E  STATUS R  TOT.DELQ  3,934.46  SUSP-235B           .00        ESC.BAL          .00
BORR2                          MSGS:  30 17     #PMT DOD006     P&I      3,934.46  SUSP-SUBS           .00        ESC.ADV          .00
PROP:  505 Diamond Drive       MAIL:  505 Diamond Drive                           SUSP-HAZ            .00        TOT.PMT       713.39
                                                                                  SUSP-FOR                       P&I           713.39
       Hudson      WI 540160000         Hudson        WI 54016        SRVFEES  .05000  SUSP-MIS            .00        ESC.Pmt          .00
                                                    YDIFF  .00000  SUSP-MIS                       CORP AD       870.45-
                                             INT PD TO  9/30/06  P&I SHORT

--TRANSACTION------                                  NEXT  -AFTER TRANS.BALANCES-        TOTAL         ----------APPLIED----------        MISC.PMTS
NBR  DATE   CODE   ------DESCRIPTION------           DUE   PRINCIPAL      ESCROW         AMOUNT     PRINCIPAL INTEREST  ESCROW SUSPENSE/CD &SRV.FEES
10   7/29/04 83    NON CASH DRAWS                    8/04  75000.00          .00         75000.00-  75000.00-      .00     .00       .00
     Effective date:  7/14/04
            S/F DW  REF#
       PAID WITH         PRINCIPAL AMOUNT           INTEREST AMOUNT
         DW                75,000.00-                     .00
11   8/30/04 02    PAYMENT                            9/04  75000.00          .00          235.79         .00   235.79            .00      17.47 11
                                                            Eff Dt: 08/27/2004        Batch: 0827LR02        IPT Dt:  7/31/04
            S/F LB  REF#
       PAID WITH         PRINCIPAL AMOUNT           INTEREST AMOUNT
         DW                     .00                      235.79
12   9/22/04 12    INTEREST PAYMENT                   9/04  75000.00          .00          235.79         .00   235.79            .00      16.84 11
     Days since last Paymt on: 08/27/2004                   Eff Dt: 09/22/2004        Batch: C922LR02        IPT Dt:  8/17/04
            S/F LB  REF#
       PAID WITH         PRINCIPAL AMOUNT           INTEREST AMOUNT
         DW                     .00                      235.79
13  10/15/04 9312 REV Insuf Funds 092204             9/04  75000.00          .00          235.79-        .00   235.79-           .00
     Effective date:  9/22/04
            S/F LB  REF#
14  10/15/04 9302 REV Insuf Funds 082704             8/04  75000.00          .00          235.79-        .00   235.79-           .00
     Effective date:  8/27/04
            S/F LB  REF#
15  10/15/04 02    PAYMENT                            9/04  75000.00          .00          104.79         .00   104.79            .00      17.47 11
     Days since last Paymt on: 09/22/2004                   Eff Dt: 08/27/2004        Batch: AQ1015HJ        IPT Dt:  7/31/04
            S/F CK  REF#
       PAID WITH         PRINCIPAL AMOUNT           INTEREST AMOUNT
         DW                     .00                      104.79
16  10/15/04 11    PRINCIPAL PAYMENT                  9/04  74869.00          .00          131.00       131.00      .00            .00
     Effective date:  6/27/04
            S/F CK  REF#
       PAID WITH         PRINCIPAL AMOUNT           INTEREST AMOUNT
         CC                131.00                        .00
17  10/15/04 02    PAYMENT                           10/04  74869.00          .00          203.43         .00-  203.43            .00      33.91 11
     Days since last Paymt on: 08/27/2004                   Eff Dt: 09/20/2004        Batch: AQ1015HJ        IPT Dt:  9/02/04
            S/F CK  REF#
       PAID WITH         PRINCIPAL AMOUNT           INTEREST AMOUNT
         DW                203.43                        .00
18  10/15/04 11    PRINCIPAL PAYMENT                 10/04  74836.64          .00           32.36        32.36      .00            .00
     Effective date:  9/20/04
            S/F CK  REF#
       PAID WITH         PRINCIPAL AMOUNT
         DW                 32.36
```

```
TRN497CR-02                                      HOMECOMINGS FINANCIAL                              5/21/07 14:19:39
MPRICE                                        DETAIL TRANSACTION HISTORY                            JOB DT: 5/01/07
                                                                                                         PAGE: 2

---TRANSACTION---  ------DESCRIPTION------    NEXT  -AFTER TRANS. BALANCES-   TOTAL      ----------APPLIED----------      MISC. PMTS
NBR  DATE   CODE                              DUE   PRINCIPAL      ESCROW     AMOUNT    PRINCIPAL  INTEREST  ESCROW  SUSPENSE/CD  &SRV.FEES
LOAN# 3917762515

19 10/25/04 12   INTEREST PAYMENT             10/04                           21.60          .00     21.60       .00     .00         3.60 11
Days since last Paymt on: 09/20/2004          33    74836.64         .00            Batch: 1023LB02   IPT Dt: 9/06/04  I-Poor:       3.05
   S/F LB REF#
   PAID WITH DW   PRINCIPAL AMOUNT
   DW                      .00              INTEREST AMOUNT
                                                 21.60

20 11/15/04 02   PAYMENT                      11/04                          163.33          .00    163.33       .00     .00        11.26 11
Days since last Paymt on: 10/23/2004          23    74836.64         .00            Batch: 1115LB02   IPT Dt: 10/03/04 I-Poor:       6.12
   S/F LB REF#
   PAID WITH DW   PRINCIPAL AMOUNT
   DW                      .00              INTEREST AMOUNT
                                                163.33

21 11/15/04 12   INTEREST PAYMENT             11/04                           27.66          .00     27.66       .00     .00         1.91 11
Days since last Paymt on: 11/15/2004          0     74836.64         .00            Batch: 1115LB02   IPT Dt: 10/07/04 I-Poor:       3.11
   S/F LB REF#
   PAID WITH DW   PRINCIPAL AMOUNT
   DW                      .00              INTEREST AMOUNT
                                                 27.66

22 11/22/04 02   PAYMENT                      12/04                          163.33          .00    163.33       .00     .00        11.26 11
Days since last Paymt on: 11/15/2004          5     74836.64         .00            Batch: 1120LB02   IPT Dt: 11/03/04 I-Poor:      14.88
   S/F LB REF#
   PAID WITH DW   PRINCIPAL AMOUNT
   DW                      .00              INTEREST AMOUNT
                                                163.33

23 11/22/04 11   PRINCIPAL PAYMENT            12/04                           21.60        21.60       .00       .00     .00
Effective date: 11/20/04                            74815.04               INTEREST AMOUNT
   S/F LB REF#                                                                   .00
   PAID WITH DW   PRINCIPAL AMOUNT
   DW                    21.60

24 12/17/04 2541 PRINCIPAL ADJ               12/04                          131.00-      131.00-       .00       .00     .00
   S/F CK REF#                                      74946.04               INTEREST AMOUNT
   PAID WITH CC   PRINCIPAL AMOUNT                                              .00
   CC                  131.00-

25 12/17/04 11   PRINCIPAL PAYMENT           12/04                          131.00       131.00        .00      .00      .00
Effective date: 8/27/04                             74815.04               INTEREST AMOUNT
   S/F CK REF#                                                                 .00
   PAID WITH DW   PRINCIPAL AMOUNT
   DW                   131.00

26 12/17/04 02   PAYMENT                      1/05                          445.67         1.51     445.16      .00      .00        29.68 11
Days since last Paymt on: 11/20/2004          27    74813.53         .00            Batch: 1217LB02   IPT Dt: 12/02/04 I-Poor:       .75
   S/F LB REF#                                      Eff Dt: 12/17/2004
   PAID WITH DW   PRINCIPAL AMOUNT
   DW                     1.51              INTEREST AMOUNT
                                                445.16

27 1/27/05 02    PAYMENT                      2/05                          459.67          .00     459.67      .00      .00        29.66 11
Days since last Paymt on: 12/17/2004          41    74813.53         .00            Batch: 012?LB02   IPT Dt: 1/01/05  I-Poor:      2.26
   S/F LB REF#                                      Eff Dt: 01/27/2005
   PAID WITH DW   PRINCIPAL AMOUNT
   DW                      .00              INTEREST AMOUNT
                                                459.67

28 1/27/05 11    PRINCIPAL PAYMENT            2/05                          200.32       200.32        .00      .00      .00
   S/F LB REF#                                      74613.21               INTEREST AMOUNT
   PAID WITH DW   PRINCIPAL AMOUNT                                             .00
   DW                   200.32

29 3/14/05 02    PAYMENT                      3/05                          508.07          .00     508.07      .00      .00        31.75 11
   PAID WITH DW   PRINCIPAL AMOUNT                  74613.21               INTEREST AMOUNT
   DW                   200.32                                                 .00
```

```
TRN497CR-02                                                          5/21/07 14:19:39
MPRICE                                                               JOB DT: 5/01/07
                                                                         PAGE: 3
                              HOMECOMINGS FINANCIAL
                            DETAIL TRANSACTION HISTORY
```

LOAN# 391762515

| NBR | DATE | CODE | DESCRIPTION | NEXT DUE | AFTER TRANS. BALANCES - PRINCIPAL / ESCROW | TOTAL AMOUNT | APPLIED PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | MISC.PMTS & SRV.FEES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | CONTINUED / PAID WITH DW | 44 | Eff Dt: 03/12/2005 | Batch: 0312LB02 | | IPT Dt: 2/02/05 | | I-Poor: | 2.26 |
| | | | INTEREST AMOUNT 508.07 | | | | | | | | |
| 30 | 3/14/05 | 02 | PAYMENT — Days since last Paymt on: 03/12/2005 / S/F LB REF# / PAID WITH DW | 4/05 / 0 | PRINCIPAL AMOUNT .00 / 74613.21 Eff Dt: 03/12/2005 / .00 | 443.59 Batch: 0312LB02 | .00 | 443.59 IPT Dt: 3/02/05 | .00 | I-Poor: .00 | 27.72 2.26 11 |
| | | | INTEREST AMOUNT 443.59 | | | | | | | | |
| 31 | 4/25/05 | 02 | PAYMENT — Days since last Paymt on: 03/12/2005 / S/F LB REF# / PAID WITH DW | 5/05 / 41 | PRINCIPAL AMOUNT .00 / 74613.21 Eff Dt: 04/22/2005 / .00 | 506.97 Batch: 0422LB01 | .00 | 506.97 IPT Dt: 4/02/05 | .00 | I-Poor: .00 | 30.73 2.26 11 |
| | | | INTEREST AMOUNT 506.97 | | | | | | | | |
| 32 | 5/27/05 | 02 | PAYMENT — Days since last Paymt on: 04/22/2005 / S/F LB REF# / PAID WITH DW | 6/05 / 34 | PRINCIPAL AMOUNT .00 / 74613.21 Eff Dt: 05/26/2005 / .00 | 472.21 Batch: 0527LB02 | .00 | 472.21 IPT Dt: 4/30/05 | .00 | I-Poor: .00 | 28.62 2.26 11 |
| | | | INTEREST AMOUNT 472.21 | | | | | | | | |
| 33 | 6/20/05 | 02 | PAYMENT — Days since last Paymt on: 05/26/2005 / S/F LB REF# / PAID WITH DW | 7/05 / 22 | PRINCIPAL AMOUNT .00 / 74613.21 Eff Dt: 06/17/2005 / .00 | 556.53 Batch: 0617LB01 | .00 | 556.53 IPT Dt: 6/02/05 | .00 | I-Poor: .00 | 32.74 2.26 11 |
| | | | INTEREST AMOUNT 556.53 | | | | | | | | |
| 34 | 7/25/05 | 02 | PAYMENT — Days since last Paymt on: 06/17/2005 / S/F LB REF# / PAID WITH DW | 8/05 / 36 | PRINCIPAL AMOUNT .00 / 74613.21 Eff Dt: 07/23/2005 / .00 | 521.28 Batch: 0723LB02 | .00 | 521.28 IPT Dt: 7/02/05 | .00 | I-Poor: .00 | 30.66 2.26 11 |
| | | | INTEREST AMOUNT 521.28 | | | | | | | | |
| 35 | 8/24/05 | 02 | PAYMENT — Days since last Paymt on: 07/23/2005 / S/F LB REF# / PAID WITH DW | 9/05 / 32 | PRINCIPAL AMOUNT .00 / 74613.21 Eff Dt: 08/24/2005 / .00 | 538.65 Batch: 0824LB01 | .00 | 538.65 IPT Dt: 8/02/05 | .00 | I-Poor: .00 | 30.78 2.26 11 |
| | | | INTEREST AMOUNT 538.65 | | | | | | | | |
| 36 | 9/22/05 | 02 | PAYMENT — Days since last Paymt on: 08/24/2005 / S/F LB REF# / PAID WITH DW | 10/05 / 29 | PRINCIPAL AMOUNT .00 / 74613.21 Eff Dt: 09/22/2005 / .00 | 554.49 Batch: 0922LB02 | .00 | 554.49 IPT Dt: 9/02/05 | .00 | I-Poor: .00 | 30.81 2.26 11 |
| | | | INTEREST AMOUNT 554.49 | | | | | | | | |
| 37 | 9/22/05 | 11 | PRINCIPAL PAYMENT / S/F LB REF# / PAID WITH DW | 10/05 | PRINCIPAL PAYMENT .00 / 74613.11 / .00 | .10 | .10 | | .00 | .00 | .00 |
| | | | INTEREST AMOUNT .10 | | | | | | | | |
| 38 | 10/24/05 | 02 | PAYMENT — Days since last Paymt on: 09/22/2005 / S/F LB REF# / PAID WITH DW | 11/05 / 32 | PRINCIPAL AMOUNT .00 / 74613.11 Eff Dt: 10/24/2005 / .00 | 533.54 Batch: 1024LB01 | .00 | 533.54 IPT Dt: 10/01/05 | .00 | I-Poor: .00 | 28.84 2.26 11 |
| | | | INTEREST AMOUNT 533.54 | | | | | | | | |
| 39 | 11/21/05 | 12 | INTEREST PAYMENT | 11/05 | PRINCIPAL AMOUNT .00 / 74613.11 | 605.00 | .00 | 605.00 | .00 | .00 | 32.70 11 |

```
TRN497CR-02                          HOMECOMINGS FINANCIAL                    5/21/07 14:19:39
MPRIC2                           DETAIL TRANSACTION HISTORY                   JOB DT: 5/01/07
                                                                                   PAGE: 4

---TRANSACTION---                      NEXT -AFTER TRANS. BALANCES-  TOTAL   ------APPLIED------  MISC.PMTS
NBR DATE CODE ------DESCRIPTION------  DUE   PRINCIPAL     ESCROW    AMOUNT  PRINCIPAL INTEREST ESCROW SUSPENSE/CD &SRV.FEES
LOAN 391762515         CONTINUED


40 12/20/05 2626 CORP ADVANCE ADJUST   26    Eff Dt: 11/19/2005
   Days since last Paymt on: 10/24/2005           605.00        .00            Batch: 1119LB02   IPT Dt: 11/02/05   I-Poor:          2.34
   PAID WITH  DW  S/F CK REF#                 INTEREST AMOUNT
                                                   .00
                                             PRINCIPAL AMOUNT
                                                   .00

41 12/20/05 02 PAYMENT                 11/05  Eff Dt: 12/20/2005                 .08-
   Days since last Paymt on: 11/19/2005        74613.11          .00    .08-     .00      .00      .00    .08-XD
   31  PAID WITH  DW  S/F CK REF#                                        Batch: AQ1220EM  IPT Dt: 11/02/05   I-Poor:  .00      2.26
                                             INTEREST AMOUNT
                                                   .08
                                             PRINCIPAL AMOUNT
                                                   .00

42 12/21/05 02 PAYMENT                 1/06   Eff Dt: 12/21/2005         567.26   .00    567.26     .00    .00           29.86  11
   Days since last Paymt on: 12/20/2005        74613.11                  Batch: 1221LB01  IPT Dt: 12/02/05   I-Poor:  .00      2.26
   1   PAID WITH  DW  S/F LB REF#            INTEREST AMOUNT
                                                   567.26
                                             PRINCIPAL AMOUNT
                                                   .00

43 2/01/06 02 PAYMENT                  2/06   Eff Dt: 02/01/2006         563.18   .00    563.18     .00    .00           28.88  11
   Days since last Paymt on: 12/21/2005        74613.11          .00     Batch: 0201LB01  IPT Dt: 12/31/05   I-Poor:  .00      2.26
   42  PAID WITH  DW  S/F LB REF#            INTEREST AMOUNT
                                                   563.18
                                             PRINCIPAL AMOUNT
                                                   .00

44 2/01/06 1326 PMT-CORPORATE ADVANCE  2/06   Eff Dt: 02/01/2006         .08      .00      .00      .00    .08 XD
   PAID WITH  DW  S/F LB REF#                   74613.11
                                             INTEREST AMOUNT
                                                   .00

45 2/01/06 11 PRINCIPAL PAYMENT        2/06   Eff Dt: 02/01/2006         4.00     4.00     .00      .00    .00
   PAID WITH  DW  S/F LB REF#                   74609.11
                                             INTEREST AMOUNT
                                                   4.00
                                             PRINCIPAL AMOUNT
                                                   4.00

46 2/17/06 12 PAYMENT                  2/06   Eff Dt: 02/17/2006         563.18   .00    563.18     .00    .00           28.88  11
   Days since last Paymt on: 02/01/2006        74609.11          .00     Batch: 0217LB02  IPT Dt: 1/29/06    I-Poor:  .00     17.08
   16  PAID WITH  DW  S/F LB REF#            INTEREST AMOUNT
                                                   563.18
                                             PRINCIPAL AMOUNT
                                                   .00

47 2/24/06 02 PAYMENT                  3/06   Eff Dt: 02/24/2006         94.54    .00     94.54     .00    .00           4.85   11
   Days since last Paymt on: 02/17/2006        74609.11                  Batch: 0224LB02  IPT Dt: 2/02/06    I-Poor:  .00      2.26
   7   PAID WITH  DW  S/F LB REF#            INTEREST AMOUNT
                                                   563.18
                                             PRINCIPAL AMOUNT
                                                   .0

48 2/24/06 11 PRINCIPAL PAYMENT        3/06   Eff Dt: 02/24/2006         563.18   563.18    .00     .00    .00
   PAID WITH  DW  S/F LB REF#                   74045.93
                                             INTEREST AMOUNT
                                                   .00
                                             PRINCIPAL AMOUNT
                                                   563.18

49 3/21/06 02 PAYMENT                  4/06   Eff Dt: 03/21/2006         557.14   .00    557.14     .00    .00           27.96  11
   Days since last Paymt on: 02/24/2006        74045.93                  Batch: 0321LB02  IPT Dt: 3/02/06    I-Poor:  .00      2.26
   25  PAID WITH  DW  S/F LB REF#            INTEREST AMOUNT
                                                   557.14
                                             PRINCIPAL AMOUNT
                                                   .00

50 3/21/06 11 PRINCIPAL PAYMENT        4/06   Eff Dt: 04/06                .86     .86      .00      .00    .00
   PAID WITH  DW  S/F LB REF#                   74045.07
                                             INTEREST AMOUNT
                                                   .00
                                             PRINCIPAL AMOUNT
```

```
TRN4597CR-02                                                                                    5/21/07 14:19:39
MRRICE                                                                                          JOB DT: 5/01/07
                                                                                                    PAGE: 5
                                    HOMECOMINGS FINANCIAL
                                 DETAIL TRANSACTION HISTORY
```

| ----TRANSACTION---- | | | NEXT | -AFTER TRANS. BALANCES- | | TOTAL | --------APPLIED-------- | | | | MISC.PMTS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NBR DATE CODE | -----DESCRIPTION----- | | DUE | PRINCIPAL | ESCROW | AMOUNT | PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | &SRV.FEES |

```
LOAN# 391762515                    CONTINUED
                                        .86

51  5/02/06 02  PAYMENT                      5/06   74045.07    .00   608.59   .00    608.59    .00    1-Poor:   29.69 11
Days since last Paymt on: 03/21/2006         42         Eff Dt: 05/02/2006   Batch: 05021B02   IPT Dt: 4/01/06               2.26
           S/F LB REF#
           DW
   PAID WITH  PRINCIPAL AMOUNT
                    .00
              INTEREST AMOUNT
                 608.59

52  5/26/06 02  PAYMENT                      6/06   74045.07    .00   644.60   .00    644.60    .00    1-Poor:   31.44 11
Days since last Paymt on: 05/02/2006         24         Eff Dt: 05/26/2006   Batch: 0526LB01   IPT Dt: 5/02/06               2.26
           S/F L3 REF#
           DW
   PAID WITH  PRINCIPAL AMOUNT
                    .00
              INTEREST AMOUNT
                 644.60

53  6/15/06 02  PAYMENT                      7/06   74045.07    .00   644.59   .00    644.59    .00    1-Poor:   30.69 11
Days since last Paymt on: 05/26/2006         20         Eff Dt: 06/15/2006   Batch: 0615LB01   IPT Dt: 6/02/06               2.26
           S/F L3 REF#
           DW
   PAID WITH  PRINCIPAL AMOUNT
                    .00
              INTEREST AMOUNT
                 644.59

54  6/27/06 11  PRINCIPAL PAYMENT            7/06   73400.48    .00   644.59   644.59   .00     .00      .00
Effective date: 6/26/06
           S/F LB REF#
           DW
   PAID WITH  PRINCIPAL AMOUNT
                    .00
              INTEREST AMOUNT
                 644.59

55  7/24/06 02  PAYMENT                      8/06   73400.48    .00   616.80   .00    616.80    .00    1-Poor:   28.69 11
Days since last Paymt on: 06/15/2006         39         Eff Dt: 07/24/2006   Batch: 0724LB01   IPT Dt: 7/01/06               2.26
           S/F LB REF#
           DW
   PAID WITH  PRINCIPAL AMOUNT
                    .00
              INTEREST AMOUNT
                 616.80

56  8/16/06 02  PAYMENT                      9/06   73400.48    .00   691.77   .00    691.77    .00    1-Poor:   32.18 11
Days since last Paymt on: 07/24/2006         23         Eff Dt: 08/16/2006   Batch: 0816LB01   IPT Dt: 8/02/06               2.26
           S/F L3 REF#
           DW
   PAID WITH  PRINCIPAL AMOUNT
                    .00
              INTEREST AMOUNT
                 691.77

57  8/16/06 11  PRINCIPAL PAYMENT            9/06   73400.25    .00    .23    .23     .00      .00      .00
           S/F L3 REF#
           DW
   PAID WITH  PRINCIPAL AMOUNT
                    .23
              INTEREST AMOUNT
                    .00

58  10/24/06 1325 PMT-MISC SUSP              9/06   73400.25    .00   1300.00   .00    .00     .00      .00     1300.00 PP
           S/F LB REF#
           DW

59  10/25/06 2625 MISC ADJ                   9/06   73400.25    .00   670.15-   .00    .00     .00      .00      670.15-PP
           S/F CK REF#

60  10/25/06 2525 MISC ADJ                   9/06   73400.25    .00   670.15    .00    .00     .00      .00      670.15 UF
           S/F CK REF#

61  10/25/06 2625 MISC ADJ                   9/06   73400.25    .00   605.30-   .00    .00     .00      .00      605.30-PP
           S/F CK REF#

62  10/25/06 2525 MISC ADJ                   9/06   73400.25    .00   605.30    .00    .00     .00      .00      605.30 UF
           S/F CK REF#

63  10/25/06 2625 MISC ADJ                   9/06   73400.25    .00   670.15-   .00    .00     .00      .00      670.15-UF
Effective date: 10/24/06
           S/F CK REF#

64  10/25/06 02  PAYMENT                     10/06  73400.25    .00   670.15    .00   670.15    .00      .00      31.17 11
```

TRN497CR-02
MPRICE

HOMECOMINGS FINANCIAL
DETAIL TRANSACTION HISTORY

5/21/07 14:19:39
JOB DT: 5/01/07
PAGE: 6

--TRANSACTION----
NBR  DATE  CODE  ------DESCRIPTION------
LOAN# 39176251S                CONTINUED
Days since last Paymt on: 08/16/2006
         PAID WITH   PRINCIPAL AMOUNT
         DW                      .00

| NEXT | -AFTER TRANS, BALANCES- | | TOTAL | ----------APPLIED---------- | | | MISC.PMTS |
|---|---|---|---|---|---|---|---|
| DUE | PRINCIPAL | ESCROW | AMOUNT | PRINCIPAL | INTEREST | ESCROW SUSPENSE/CD | &SRV.FEES |

Batch: 1025BANK      IPT Dt: 9/02/06     1-Poor:     2.26

65 10/25/06 2625 MISC ADJ
Effective date: 10/24/06
         S/F CK REF#
                     INTEREST AMOUNT
                          670.15
10/06  73400.25  .00  605.30-  .00  .00  .00  605.30-UE

66 10/25/06 02   PAYMENT
Days since last Paymt on: 10/24/2006
         S/F CK REF#
         PAID WITH   PRINCIPAL AMOUNT
                          605.30
11/06  73400.25  .00  605.30  .00  605.30  .00  .00  28.15 11
   0   Eff Dt: 10/24/2006       Batch: 1025BANK   IPT Dt: 9/30/06  1-Poor:  2.26

                     INTEREST AMOUNT
                          .00

67 1/11/07 6226 CORP ADV DISB
         PAYEE 20AT38S #0006286712
         S/F SC REF# 0006286712
11/06  73400.25  .00  650.00-  .00  .00  .00  650.00-2B
1/11/07 DUE

68 1/11/07 6226 CORP ADV DISB
         PAYEE 20AT38S #0006286712
         S/F SC REF# 0006286712
11/06  73400.25  .00  150.00-  .00  .00  .00  150.00-2W
1/11/07 DUE

69 2/14/07 6226 CORP ADV DISB
         PAYEE 94MURCO #0006362571
         S/F SC REF# 0006362571
11/06  73400.25  .00  95.00-  .00  .00  .00  95.00-2O
2/14/07 DUE

70 3/05/07 2526 CORP ADVANCE ADJUST
         S/F CK REF#
11/06  73400.25  .00  24.55  .00  .00  .00  24.55 2B

71 3/05/07 2625 MISC ADJ
         S/F CK REF#
11/06  73400.25  .00  24.55-  .00  .00  .00  24.55-PP

* * * * TOTALS * * * *
73400.25-13656.48

# 2007 HISTORY STATEMENT OF MORTGAGE ACCOUNT

HOMECOMINGS FINANCIAL, LLC
PO BOX 205
WATERLOO, IA 50704-0205

BRIAN E BATH
505 DIAMOND DRIVE
HODSON                    WI 54016

LOAN TYPE 4-1   CONSUMER
ACCOUNT NUM ████2515

## 2007 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP AFTER TRAN | FUNDS TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FEE PAID | 24.55 | 10/06 | 03/05 | | | | | 24.55 | 73,400.25 | | | 24.55 |
| ADJUSTMENT | | 10/06 | 03/05 | | | | | | 73,400.25 | | | 24.55 |
| FEE BILLED | 95.00 | 10/06 | 08/22 | | | | | 95.00 | 73,400.25 | | | |

### SUMMARY TOTALS

| | | |
|---|---|---|
| PRINCIPAL BALANCE START OF PERIOD | 73,400.25 | P & I PAYMENT   713.39 |
| PRINCIPAL PAID DURING PERIOD | 0.00 | |
| PRINCIPAL BALANCE END OF PERIOD | 73,400.25 | |
| ESCROW BALANCE START OF PERIOD | 0.00 | TOTAL PAYMENT   713.39 |
| ESCROW PAID DURING PERIOD | 0.00 | |
| ESCROW DISBURSEMENTS | 0.00 | |
| ESCROW BALANCE END OF PERIOD | 0.00 | |
| REFUND OF OVERPAID INTEREST | 0.00 | |
| INTEREST REPORTABLE DURING PERIOD | 0.00 | |
| PROPERTY TAXES PAID DURING PERIOD | 0.00 | |
| POINTS PAID | 0.00 | |

Entity065Org00000

2008 HISTORY STATEMENT OF MORTGAGE ACCOUNT

HOMECOMINGS FINANCIAL, LLC
PO BOX 205
WATERLOO, IA 50704-0205

BRIAN E BATH
505 DIAMOND DRIVE
HUDSON                WI 54016

LOAN TYPE 4-1   CONSUMER
ACCOUNT NUM   ▮▮▮515

## 2008 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SERV REL | | 10/06 | 01/01 | 73400.25 | | | | | 0.00 | | |
| EXPENSE ADVA | -625.45 | 10/06 | 01/01 | | | | | -625.45 | 0.00 | | |
| EXPENSE ADVA | -150.00 | 10/06 | 01/01 | | | | | -150.00 | 0.00 | | |
| CORP ADV 3 D | -95.00 | 10/06 | 01/01 | | | | | -95.00 | 0.00 | | |
| CORP ADV 3 D | -95.00 | 10/06 | 01/01 | | | | | -95.00 | 0.00 | | |
| MISC RECEIPT | 150.00 | 10/06 | 01/31 | | | | | | 0.00 | | 150.00 |
| MISC RECEIPT | 190.00 | 10/06 | 01/31 | | | | | | 0.00 | | 340.00 |
| MISC RECEIPT | 625.45 | 10/06 | 01/31 | | | | | | 0.00 | | 985.45 |
| BKY-97/BB45 | 10/06 05/09 | | | | | | | | 0.00 | | |

SUMMARY TOTALS

| | | | | |
|---|---|---|---|---|
| PRINCIPAL BALANCE START OF PERIOD | 73,400.25 | | P & I PAYMENT | 713.39 |
| PRINCIPAL PAID DURING PERIOD | 73,400.25 | | | |
| PRINCIPAL BALANCE END OF PERIOD | 0.00 | | | |
| ESCROW BALANCE START OF PERIOD | 0.00 | | TOTAL PAYMENT | 713.39 |
| ESCROW PAID DURING PERIOD | 0.00 | | | |
| ESCROW DISBURSEMENTS | 0.00 | | | |
| ESCROW BALANCE END OF PERIOD | 0.00 | | | |
| REFUND OF OVERPAID INTEREST | 0.00 | | | |
| INTEREST REPORTABLE DURING PERIOD | 0.00 | | | |
| PROPERTY TAXES PAID DURING PERIOD | 0.00 | | | |
| POINTS PAID | 0.00 | | | |

Entity06Sorg00000

□
{{DPLX}}

12/26/07

BRIAN E BATH

505 DIAMOND DRIVE

HUDSON WI 54016

Homecomings Financial, LLC          Acct Number: ▮▮▮▮2515
DYCK O'NEAL, INC.                    Acct Number: ▮▮▮▮0000

Property Address:   505 DIAMOND DRIVE

                    HUDSON WI 54016

Dear BRIAN E BATH

Effective 01/02/08, the servicing of the above referenced
account, that is, the right to collect payments from you, is
being assigned, sold, or transferred from
Homecomings Financial, LLC          to
DYCK O'NEAL, INC.                    . The assignment, sale, or
transfer of servicing does not affect the terms or conditions of
your mortgage documents/security instruments, other than the
terms directly related to the servicing of your account.

Your present servicer is Homecomings Financial, LLC          .
Prior to 01/02/08, any questions regarding your account should be
directed to our Customer Care Department at 866-858-5307.

Your new servicer will be DYCK O'NEAL, INC.                    .
Beginning 01/02/08, any questions you have regarding your account
should be directed to DYCK O'NEAL, INC.                    . You
can contact their Customer Service Department at 800-418-9401.
Also beginning 01/02/08, written inquiries regarding your account
should be directed to DYCK O'NEAL, INC.                    's
Customer Service Department at the address below.

Payment Information - Effective 01/02/08, please direct payments
to DYCK O'NEAL, INC.                    's Payment Processing

□
12/26/07
Account Number███████2515
Page Two


Department at the address below. Payments will be processed by
Homecomings Financial, LLC          if received prior to
01/02/08, and will be forwarded to
DYCK O'NEAL, INC.                    if received on or after
01/02/08.

                DYCK O'NEAL, INC.
                PO BOX 13370
                ARLINGTON           TX  76094

As of 12/26/07, your Current Principal Balance is $     73400.25.
your current escrow balance is $          0.00, your current
interest rate is  10.00000%, your total monthly payment is
$          713.39, and your next due date is 11/20/06.

Automatic Payment Deduction - If you currently have your
payments automatically withdrawn from your financial institution,
this service will be transferred to
DYCK O'NEAL, INC.                . If this service is not
transferable, you will receive a letter under separate cover
providing further direction.

Government Allotment/Bill Pay Service - If you currently make
your payment through a third party entity (e.g. government
allotment, biweekly, or bill-pay service), please advise them of
your new account number and change the payee to
DYCK O'NEAL, INC.                . In the event of a payment
change, it is your responsibility to notify the third party of
the new payment amount. If you have been using the bill-pay
service on Homecomings Financial, LLC          's website, this
service will be deactivated after 01/02/08.

Optional Insurance - If you have taken advantage of any of our
optional insurance plans or optional products, this service will
be transferred to DYCK O'NEAL, INC.                . If any of
these plans or products are not transferable, you will receive a
letter under separate cover providing further direction.

Year-End Statement - You will receive a year-end statement from
Homecomings Financial, LLC          reflecting account activity
this year. DYCK O'NEAL, INC.                should provide
their own statement for the period of time they serviced your
account this year. You will need to combine these two statements
for income tax purposes.

Escrow Account - If you have an escrow account,
Homecomings Financial, LLC          will send you, within 45
days, an escrow history statement reflecting escrow deposits,
disbursements and balances for the period of time we serviced
your account since your last escrow analysis. The transferring
escrow balance will be reflected on this statement.

12/26/07
Account Number  2515
Page Three

Except in limited circumstances, the law requires that your
present servicer send you this notice at least 15 days before the
effective date of the transfer. Your new servicer must also send
you this notice no later than 15 days after the effective date of
transfer.

If you have filed for bankruptcy or have been discharged of your
personal liability for repayment of this debt, be advised this is
for informational purposes only. Furthermore, this is not an
attempt to collect on the debt and should not be misconstrued to
be so.

You should be aware of the following information, which is set
out in more detail in Section 6 of the Real Estate Settlement
Procedures Act (RESPA) (12 USC 2605):

     During the 60 day period following the effective date of the
     transfer of the account servicing, a payment received by
     your old servicer, before its due date, may not be treated
     by the new servicer as late, and a late fee may not be
     imposed on you.

     Section 6 of RESPA (12 USC s2605) gives you certain consumer
     rights. If you sent a "qualified written request" to your
     servicer concerning the servicing of your account, your
     servicer must provide you with a written acknowledgment
     within 20 business days of receipt of your request. A
     "qualified written request" is written correspondence, other
     than notice on a payment coupon or other payment medium
     supplied by the serivcer, which includes your name, account
     number, and reason for the request.

     No later than 60 business days after receiving your
     request, your servicer must make appropriate corrections to
     your account, and must provide you with a written
     clarification regarding any dispute. During this 60 business
     day period, your servicer may not provide information to a
     consumer reporting agency concerning any overdue payment
     related to such period or qualified written request.
     However, this does not prevent the servicer from initiating
     foreclosure if proper grounds exist under the mortgage
     documents/security instruments.

     A "business day" is a day on which the offices of the
     business entity are open to the public for carrying on
     substantially all of its business functions.

☐
12/26/07
Account Number ▌▌▌▌2515
Page Four

       Section 6 of RESPA also provides for damages and costs for
       individuals or classes of individuals in circumstances
       where servicers are shown to have violated the requirements
       of that Section. You should seek legal advice if you
       believe your rights have been violated.

Homecomings Financial, LLC        appreciated the opportunity
to service your account. We wish you a successful relationship
with DYCK O'NEAL, INC.        .

Sincerely,


Homecomings Financial, LLC
6020

2515

Certifier

Date:

9227 E Lincoln Ave
Suite 200 – 425
Lone Tree, CO 80124
303-517-1360

NOTICE

September 28, 2011

GMAC MORTGAGE
P O BOX 4622
WATERLOO, IOWA 50704

Attn: Legal Department,

Thank you for your recent inquiry. This is not a refusal to pay, but a notice that your claim is
disputed.

This is a request for validation made pursuant to the Fair Debt Collection Practices Act. Please
complete and return the attached disclosure request form.

Please be advised that I am not requesting a "verification" that you have my mailing address. I
am requesting a "validation:" that is, competent evidence that I have some contractual obligation
to pay you.

You should also be aware that sending unsubstantiated demands for payment through the United
States Mail System might constitute mail fraud under federal and state law.

Your failure to satisfy this request within the requirements of the Fair Debt Collection Practices
Act will be construed as your absolute waiver of any and all claims against me, and your tacit
agreement to compensate me for costs and attorneys fees.

Sincerely,

Brian Edmond Bath, AR

## CREDITOR DISCLOSURE STATEMENT

Name and Address of Collector (assignee): _____

_____

Name and Address of Debtor: _____

_____

Account Number(s): _____

What are the terms of assignment for this account? You may attach a facsimile of any records relating to such terms.

_____

_____

Have any insurance claims been made by any creditor been made by any creditor or assignee regarding this account? Yes /no

Has the purported balance of this account been used in any tax deduction claim? Yes / no

Please list the particular products or services sold by the collector to the debtor and the dollar amount of each:

_____

_____

Upon failure or refusal of collector to validate this collection action, collector agrees to waive all claims against the debtor named herein and pay debtor for all costs and attorney fees involved in defending this collection action.

X_____        _____
Authorized signature for Collector        Date

Please return this completed form and attach all assignment or other transfer agreements that would establish your right to collect this debt. Your claim cannot be considered if any portion of this form is not completed and returned with the required documents. This is a request for validation made pursuant to the Fair Debt Collection Practices Act. If you do not respond as required by this law, your claim will not be considered and you may be liable for damages for continued collection efforts.

## Exhibit D

# ☎ BankUnited

## Adjustable Rate Note
### (1 Year MTA Index – Initial Discounted Monthly Payment –
### Payment Caps and Maximum Rate)
### (1 Month MTA ARM)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT, AND MY PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES MAY BE LIMITED. BOTH MY MAXIMUM INTEREST RATE AND MINIMUM INTEREST RATE ARE LIMITED. MY INITIAL REQUIRED MONTHLY PAYMENT AMOUNT WILL NOT BE SUFFICIENT TO PAY THE INTEREST THAT ACCRUES UNDER THIS NOTE. THE PRINCIPAL BALANCE OF THIS NOTE MAY INCREASE TO AN AMOUNT THAT IS LARGER THAN THE AMOUNT THAT I ORIGINALLY BORROWED.**

| October 17, 2006 | NORTHFIELD | Illinois |
|---|---|---|
| [Date] | [City] | [State] |

3415 NORTH ODELL AVENUE
CHICAGO, IL 60634

[Property Address]

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 424,000.00 plus any amounts added in accordance with Section 3(E) of this Note (this amount is collectively called "Principal"), plus interest, to the order of Lender. Lender is    BankUnited, FSB

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2.    INTEREST

#### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    8.0000    %. The interest rate I will pay will change as provided in this Section 2.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

#### (B) Interest Change Dates

The interest rate I will pay may change on the first day of    December 2006 and on that same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".

#### (C) Interest Rate Limits

My interest rate will never be greater than    10.9500    %. My interest rate will never be less than the amount of the then applicable Margin described in Section 2(E) below.

#### (D) Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the Twelve Month Average of the monthly yields (the "Monthly Yields") on actively traded United States Treasury securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Statistical Release entitled "Selected Interest Rate (H.15)." The Twelve-onth Average is determined by adding together the Monthly Yields for the most recently available twelve months, dividing that sum by 12, and then rounding the resulting number to four decimal places. The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."

If the Index, or any substitute Index, is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

#### (E) Calculation of Interest Rate Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding Three and 2900/10000    percentage points (    3.2900    %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 2(C) above, the rounded amount will be my new interest rate, which will become effective on the Interest Change Date. That interest rate will remain in effect until the next Interest Change Date.

In the event a new Index is selected in accordance with Section 2(D) above, a new Margin may be established. The new Index and Margin will result in an interest rate that is substantially similar to the interest rate that was in effect at the time that the old Index became unavailable.

### 3.    PAYMENTS

#### (A) Time and Place of Payments

I will make my monthly payments on the first day of every month, beginning on    December 2006. I will make a payment every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    November 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change



I will make monthly payments at
7815 NW 148 ST., MIAMI LAKES, FL 33016

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payment**

My initial monthly payment will be in the amount of U.S. $ 1,403.05      . My initial monthly payment was calculated using a rate of 1.2000      %, the original Principal, and the Maturity Date. This rate is lower than the initial interest rate stated in Section 2(A) above.

The amount of my initial monthly payment will change as provided in this Section 3.

**(C) Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the due date of my thirteenth (13th) payment, which is due on December 1, 2007

and on that same day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change as provided under Section 3(F) below.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date until the next Payment Change Date, unless my monthly payments are changed earlier as provided in Section 3(F) below.

**(D) Calculation of Monthly Payment Changes; Limitations**

On each Payment Change Date, my monthly payment will change to the amount that would be sufficient to repay the Principal that I am expected to owe at the Payment Change Date, together with interest at the rate in effect during the preceding month, in full in substantially equal monthly installments through the Maturity Date. However, unless Section 3(F) or Section 3(G) below apply, the amount of my new monthly payment, beginning on each Payment Change Date, will be limited to an amount that is no more than 7 1/2% greater than the amount I am required to pay under this Note immediately prior to that Payment Change Date. The Note Holder's monthly billing statement may disclose other payment options that I may have, if I should wish to pay a monthly payment that is larger than this amount.

**(E) Changes in My Unpaid Principal**

My initial required monthly payment amount will not be sufficient to pay the interest that will accrue under this Note at the initial interest rate stated in Section 2(A) of this Note, and may be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that thereafter are in effect under this Note. In addition, since my monthly payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 3(D) above, my subsequent monthly payments could be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that are in effect under this Note from time to time. For each month that my monthly payment is less than the interest that accrues under this Note, the Note Holder will subtract the monthly payment from the amount of the accrued interest and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate that is in effect under this Note from time to time. For each month that the monthly payment is greater than the interest that accrues under this Note, the Note Holder will apply the excess towards a Principal reduction of this Note.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to 115% of the Principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that 115% limitation on a monthly payment due date, I will begin paying a new monthly payment on that due date, and will continue to make this payment each month until the next Payment Change Date, subject at all times to a further increase in my monthly payment under this Section 3(F) if my unpaid Principal would again otherwise exceed the 115% limitation. The new monthly payment will be the amount that would be sufficient to repay my then unpaid Principal, together with interest at the rate in effect during the month prior to the payment due date, in full in substantially equal monthly installments through the Maturity Date. The new monthly payment will be determined without applying the 7 1/2% payment limitation described in Section 3(D) of this Note.

**(G) Required Full Monthly Payment**

On the 5th Payment Change Date, on each succeeding 5th Payment Change Date thereafter, and on the final Payment Change Date, the monthly payment will be determined without regard to the 7 1/2% payment limitation described in Section 3(D) of this Note.

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes.

My partial Prepayment may reduce the amount of my monthly payments after the first Interest Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase or other factors.

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change





## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.0000          % of such monthly payment due. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least thirty (30) days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

"Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that

Lender's security will not be impaired by the loan assumption and that the risk of a
breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as
a condition to Lender's consent to the loan assumption. Lender also may require the
transferee to sign an assumption agreement that is acceptable to Lender and that obligates
the transferee to keep all the promises and agreements made in the Note and in this
Security Instrument. Borrower will continue to be obligated under the Note and this Security
Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give
Borrower notice of acceleration. The notice shall provide a period of not less than 30 days
from the date the notice is delivered or mailed within which Borrower must pay all sums
secured by this Security Instrument. If Borrower fails to pay these sums prior to the
expiration of this period, Lender may invoke any remedies permitted by this Security
Instrument without further notice or demand on Borrower."

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Leilani Sulit_ _____ (Seal) _____ (Seal)
LEILANI I. SULIT                      -Borrower                                    -Borrower


_____ (Seal) _____ (Seal)
                                     -Borrower                                    -Borrower


_____ (Seal) _____ (Seal)
                                     -Borrower                                    -Borrower


[Sign Original Only]

MFCD5083                              000506580-0

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate –
Monthly Rate Change
                              Page 4 of 4                    Initials: _____

**<u>Exhibit E</u>**

**ADJUSTABLE RATE NOTE**
(LIBOR Index - Rate Caps)

Loan Number [    ]0109

**3558**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY
MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

OCTOBER  26         ,2001 .              DENVER                    COLORADO
                                         [City]                    [State]

14450 EAST 50TH AVENUE, DENVER, COLORADO 80239

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $208,250.00  (this amount is called "principal"),
plus interest, to the order of the Lender. The Lender is STONECREEK FUNDING CORPORATION, A
COLORADO CORPORATION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly
rate of   8.250   %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any
default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the     1st     day of each month beginning on DECEMBER   1
,2001        . I will make these payments every month until I have paid all of the principal and interest and
any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before
principal. If, on  NOVEMBER   1        ,2031     , I still owe amounts under this Note, I will pay those amounts
in full on that date, which is called the "maturity date."

I will make my monthly payments at 36 STEELE ST. #210, DENVER, COLORADO 80206

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,564.51     . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I
must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance
with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of NOVEMBER   1        , 2004    , and on
that day every  6th    month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average
of interbank offered rates for six-month U.S. dollar deposits in the London market based on quotations of major banks, as
published in The Wall Street Journal. The rate published in The Wall Street Journal on the date 45 days before each Change
Date as being the London interbank offered rate on the preceding business day is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.
The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN AND
030/1000         percentage points (  7.030   %) to the Current Index. The Note Holder will then round
the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D)
below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid
principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal
payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    11.250 % or less than
8.250    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date
by more than ONE AND 000/1000    percentage points ( 1.000    %)
from the rate of interest I have been paying for the preceding    6    month(s). My interest rate will never be greater than
14.250    %. My interest rate will never be less than 8.250%.

### (E). Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Rider.

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of
my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
FREDDIE M. SCOTT                    Borrower                                                      Borrower

_____ (Seal)          _____ (Seal)
                                        Borrower                                                      Borrower

_____ (Seal)          _____ (Seal)
                                        Borrower                                                      Borrower

Document Systems, Inc.          Page 3 of 3          Adjustable Rate Note (LIBOR Index-Rate Caps)
                                                        GMAC Residential Funding Form 1555 (10/91)

Borrower Initials: _____  _____    _____  _____    _____

N15553.LSR

## Exhibit F

# Client Contract

GMAC ≋ RFC

This Client Contract (as may be amended, supplemented or otherwise modified from time to time, this "Contract") is made this __28__ day of __MARCH__ 19 __2000__ by and between Residential Funding Corporation, its successors and assigns ("Residential Funding"), and __STONECREEK FUNDING INC.__ (the "Client," and, together with Residential Funding, the "parties" and each, individually, a "party").

WHEREAS, the Client desires to sell Loans to, and/or service Loans for, Residential Funding, and Residential Funding desires to purchase Loans from, and/or have the Client service Loans for, Residential Funding, pursuant to the terms of this Contract and the Guides (as that term is defined below).

NOW, THEREFORE, in consideration of the premises, and the terms, conditions and agreements set forth below, the parties agree as follows:

## 1. Incorporation of Guides by Reference.

Residential Funding has approved the Client to sell Loans to, and/or service Loans for, Residential Funding under the Guide(s) checked below. Each Guide that is checked below (as each may be amended, supplemented or otherwise modified from time to time, together, the "Guides"), is hereby incorporated into this Contract by reference and for all purposes made a part hereof.

The Client has been approved by Residential Funding to sell Loans to and/or service Loans for Residential Funding, as indicated below, under the following Guide(s):

|   STATUS   |   APPLICABLE GUIDES   |
|------------|------------------------|
| ☒ Seller Only | ☐ Client Guide |
| ☐ Servicer Only | ☒ Consumer Finance Acquisitions Guide |
| ☐ Seller and Servicer | ☐ Servicer Guide |

If a box next to a Guide shown above has not been checked, the Client has not been approved by Residential Funding to sell Loans to, or, as appropriate, service Loans for, Residential Funding, under that Guide(s) at this time; but, Residential Funding may in the exercise of its sole discretion approve the Client to sell Loans to, or, as appropriate, service Loans for, Residential Funding under that Guide(s) at some time in the future and the Client will be authorized to do so upon the execution and delivery by both Residential Funding and the Client of an addendum to this Contract in a form provided to the Client by Residential Funding containing that approval and incorporating that Guide(s) into this Contract by reference.

The Client acknowledges that it has received and read the Guides. All provisions of the Guides are incorporated by reference into and made a part of this Contract, and shall be binding upon the parties; provided, however, that the Client shall be entitled to sell Loans to and/or service Loans for Residential Funding only if and for so long as it shall have been authorized to do so by Residential Funding in writing. Specific reference in this Contract to particular provisions of the Guides and not to other provisions does not mean that those provisions of the Guides not specifically cited in this Contract are not applicable. All terms used herein shall have the same meanings as such terms have in the Guides, unless the context clearly requires otherwise.

## 2. Amendments.

This Contract may not be amended or modified orally, and no provision of this Contract may be waived or amended except in writing signed by the party against whom enforcement is sought. Such a written waiver or amendment must expressly reference this Contract. However, by their terms, the Guides may be amended, modified or supplemented by Residential Funding from time to time. Any such amendment(s) to the Guides shall be binding upon the parties hereto.

## 3. Representations and Warranties.

### a. Reciprocal Representations Warranties.

The Client and Residential Funding each represents and warrants to the other that as of the date of this Contract:
(1) Each party is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization, is qualified, if necessary, to do business and in good standing in each jurisdiction in which it is required to be so qualified, and has the requisite power and authority to enter into this Contract and all other agreements which are contemplated by this Contract and to carry out its obligations hereunder and under the Guides and under such other agreements.

(2) This Contract has been duly authorized, executed and delivered by each party and constitutes a valid and legally binding agreement of each party enforceable in accordance with its terms.

(3) There is no action proceeding or investigation pending or threatened, and no basis therefore is known to either party, that could affect the validity or prospective validity of this Contract.

(4) Insofar as its capacity to carry out any obligation under this Contract is concerned, neither party is in violation of any charter, articles of incorporation, bylaws, mortgage, indenture, indebtedness, agreement, instrument, judgment, decree, order, statute, rule or regulation and none of the foregoing adversely affects its capacity to fulfill any of its obligations under this Contract. Its execution of, and performance pursuant to, this Contract will not result in a violation of any of the foregoing.

   b.  *Client's Representations, Warranties and Covenants.*

   In addition to the representations, warranties and covenants made by the Client pursuant to subparagraph (a) of this paragraph 3, the Client makes the representations, warranties and covenants set forth in the Guides and agrees to deliver to Residential Funding the certified Resolution of Board of Directors which authorizes the execution and delivery of this Contract.

**4.  Remedies of Residential Funding.**

   If an Event of Client Default or Event of Servicer Default shall occur, Residential Funding may, at its option, exercise one or more of the remedies set forth in the Guides.

**5.  Client's Status as Independent Contractor.**

   At no time shall the Client represent that it is acting as an agent of Residential Funding. The Client shall, at all times, act as an independent contractor.

**6.  Prior Agreements Superseded.**

   This Contract restates, amends and supersedes any and all prior Client Contracts or Servicer Contracts between the parties except that any subservicing agreement executed by the Client in connection with any loan-security exchange transaction shall not be affected.

**7.  Assignment.**

   This Contract may not be assigned or transferred, in whole or in part, by the Client without the prior written consent of Residential Funding. Residential Funding may sell, assign, convey, hypothecate, pledge or in any other way transfer, in whole or in part, without restriction, its rights under this Contract and the Guides with respect to any Commitment or Loan.

**8.  Notices.**

   All notices, requests, demands or other communications that are to be given under this Contract shall be in writing, addressed to the appropriate parties and sent by telefacsimile, by overnight courier or by first class United States mail, postage prepaid, to the addresses and telefacsimile numbers specified below. However, another name, address and/or telefacsimile number may be substituted by the Client pursuant to the requirements of this paragraph 8, or by Residential Funding pursuant to an amendment to the Guides.

   If to Residential Funding, notices must be sent to the appropriate address or telefacsimile number specified in the Guides.

   If to the Client, notices must be sent to:

   STONECREEK FUNDING INC.

   36 STEELE ST #210

   DENVER, CO 80206

   Attention: MATT KLAESS

   Telefacsimile Number (303) 355 - 1460

**9. Jurisdiction and Venue.**

Each of the parties irrevocably submits to the jurisdiction of any state or federal court located in Hennepin County, Minnesota, over any action, suit or proceeding to enforce or defend any right under this Contract or otherwise arising from any loan sale or servicing relationship existing in connection with this Contract, and each of the parties irrevocably agrees that all claims in respect of any such action or proceeding may be heard or determined in such state or federal court. Each of the parties irrevocably waives the defense of an inconvenient forum to the maintenance of any such action or proceeding and any other substantive or procedural rights or remedies it may have with respect to the maintenance of any such action or proceeding in any such forum. Each of the parties agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law. Each of the parties further agrees not to institute any legal actions or proceedings against the other party or any director, officer, employee, attorney, agent or property of the other party, arising out of or relating to this Contract in any court other than as hereinabove specified in this paragraph 9.

**10. Miscellaneous.**

This Contract, including all documents incorporated by reference herein, constitutes the entire understanding between the parties hereto and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract. All paragraph headings contained herein are for convenience only and shall not be construed as part of this Contract. Any provision of this Contract that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and, to this end, the provisions hereof are severable. This Contract shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of Minnesota.

This Contract shall be of no force and effect unless and until it has been executed by both parties.

IN WITNESS WHEREOF, the duly authorized officers of the Client and Residential Funding have executed this Contract as of the date first above written.

(Corporate Seal)                    n/a
(if seal, so state)

CLIENT

STONECREEK FUNDING INC.
(Name of Client)

ATTEST:

By: _____        By: _____
(Signature)                                (Signature)

Name: JODI ALBERALLA              Name: MATT KLAESS
(Typed or Printed)                         (Typed or Printed)

Title: OPERATIONS MANAGER         Title: VICE PRESIDENT


ATTEST:                              RESIDENTIAL FUNDING CORPORATION

By: _____        By: _____
(Signature)                                (Signature)

Name: Darrin George               Name: BRIAN WOODBURY
(Typed or Printed)                         (Typed or Printed)

Title: Lead Risk                     Title: DIRECTOR