**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In Re:                                              )   Case No. 12-12020 (MG)
                                                    )
**RESIDENTIAL CAPITAL, LLC. et al,**                )
                                                    )
                    Debtors.                        )
                                                    )

                                    November 6, 2013

Freddie M. Scott
Timothy W. Scott          Respondent(s)

### RESPONDENT'S POSITION WITH RESPECT TO CLAIM

1. The Respondent' untrained in the law and without Legal representation herein state the foundation for our claim. The basis is this was and is a sub-prime predatory loan intentional induced to create short and long term profits for the MORTGAGE corporate giant known as GMAC/RFC {RESCAP}.

2. GMAC/RFC was one of the largest residential mortgage producers and servicers in the United States, producing billions in residential mortgage loans for many years. They were also one of the largest issuers of mortgage-backed and mortgage-related asset-backed securities in the United States.

3. GMA/RFC had three primary sources for their residential mortgage loan production: the ORIGINATION of loans through their direct lending network, the ORIGINATION of loans through their MORTGAGE BROKERAGE network and the purchase of loans in the secondary market (primarily from correspondent lenders). **(SEE EXHIBIT E).**

4. There were several Sources of Loan Production that had been established such as a;

   - **Direct Lending Network**
   - **Mortgage Brokerage Network**
   - **Correspondent Lender and other Secondary Market Purchases**

5. The point being they had a handle on their business and they were proud of their accomplishments. GMAC/RFC was amongst the leaders in their industry.

6. On October 26, 2001, a closing took place in Denver, Colorado to Re-finance a previous home loan. The process involved filing out a loan application, in this case a Form 1003 known as **UNIFORM RESIDENTIAL LOAN APPLICATION**. It was completed with the "Lender's assistance. The Agent/Mortgage broker was considered to be a Lending partner with GMAC/RFC through STONECREEK FUNDING CORP., the so-called Lender in the loan transaction.

7. The parties listed on the application Form 1003 were Timothy W. Scott, (borrower) and Freddie M. Scott (co-borrower) along with the income, assets and liabilities were included for BOTH parties. The application was later without our knowledge or permission was FALSIFIED to reflect and show only one applicant (borrower) Freddie M. Scott, with an income of $10,000 per month and debts of about $1,900.00 per month. The information provided to the "Lender" documented an income for Freddie M. Scott under $3,000.00 per month. **(SEE EXHIBIT D).**

8. The falsification of the loan application constituted an act in violation of;

   <u>18 U.S.C. & 1014</u>

   Which prohibits oral or written false statements or misrepresentations made knowingly on a loan or credit application to an insured institution, i.e., willful over-valuing of land, property, securities or other assets or understatement of liabilities.

2

**18 U.S.C. & 474**

9. Any false representation of material facts with knowledge of falsity (falsified application and with intent that it would be acted on by another in entering into contract, and entitles party deceived to avoid contract or recover damages. **Barnsdall Refining Corn vs. Birnam Wood Oil Co. 92 F 2d 817**.

10. "It is not necessary for remission of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations, even innocently, to retain the fruits of a bargain induced by such representations." **Whipp vs. Iverson, 43 Wis 2d 166**.

11. The falsification of the application contributed to the execution of a loan that proved to be absolutely detrimental to respondent's financial state and condition. The terms and conditions of this loan were unconscionable, we applied for a fixed rate mortgage and were somehow moved into an ADJUSTABLE RATE MORTGAGE which was known to explode in the future making it impossible to maintain based on the true facts. This loan would prove to be beneficial to GMAC/RFC and others. The benefits were dependent on the ability to transfer any risks associated with ARM's to the borrower.

12. The herein named Lender and originator STONECREEK FUNDING were considered to be a part of GMAC/RFC's Lending Partner Network and therefore subject to the Underwriting Guidelines of GMAC/RFC. These guidelines were established prior to 2001 and expanded in later years. The reason for the Underwriting Guidelines were to establish that they were or could be in compliance with all Federal and State regulatory laws and to promote and market their business model. The idea being that nothing less than full compliance would be acceptable.

3

13. If the guidelines had been followed and the underwriting of this loan as well as others destined to be made a part of the securitization process, would not have seen the light of day. GMAC/RFC on down through their Lending partner's became lax and did not take or care to provide proper due diligence to insure that the paperwork was valid and would stand up under scrutiny. A proper review of the file would have and should have shown these discrepancies. No one cared, because this loan was to be bundled with others in a pool of mortgages to be sold to others as mortgage-backed securities. We did not know that our note would be and is now a security.

14. We were targeted as <u>African Americans</u> (Black Folks) no doubt, a popular thing to do. All in the process felt we were probably too unsophisticated to realize what was actually happening. This artifice to defraud allowed GMAC/RFC to profit, prosper and proceed toward the ultimate goal of securitizing the note.

15. There seems to be recent information that may suggest that corporations such as GMAC/RFC had no control over their agents, brokers and representatives. Their own guidelines tend to lead any reasonable person to conclude no such thing, We posit to this court that GMAC/RFC through its partners were absolutely present with STONECREEK FUNDING CORP at the closing on October 26, 2001, if not before.

16. The knowledge of STONECREEK FUNDING CORP is attributable to GMAC/RFC because the originators, closing agents did have actual and or constructive knowledge of the fraudulent contract.

4

17. We have learned that Bank Lenders such as GMAC/RFC do not simply have knowledge of or send prepared loan documents such as {ADJUSTABLE RATE NOTE, GMAC/RFC Form 1555} arbitrarily to random brokers and title agents, or even authorize the signing of such documents obligating them to extend a loan in a state such as Colorado where an office may or may not be located without first entering into agreements with those who generate and consummate loans on the behalf of GMAC/RFC.

18. In addition to that, the true lender (Who we maintain was not STONECREEK FUNDING) cannot delegate its TILA obligations to title and closing agents, and therefore not remain responsible for any disclosure made or not made by an agent.

19. The evidence indicates that GMAC/RFC knew or should have known of the Mortgage brokers and or Title company's fraud through numerous red flags in the closing file. The true, correct and original file would have indicated that there was two borrower's with different incomes and one being a Vietnam era disabled veteran on a fixed income. The very reason we always applied for fixed rate mortgages only.

20. This sub-prime predatory loan continues to prey on us. This was no mistake; it was part of the securitization model in which the Banking Elite could give a "crap." It was known that it could harm and have a detrimental effect on borrowers as well as investors. It was their purpose and their plan.

21. So, as we've come to learn, know and understand that it's the "PURPOSE OF YAHWEH FOR THINGS TO BE JUST AS THEY ARE." Our best interests were secondary to the interests of GMAC/RFC and others similarly situated.

## SUMMARY

The securitization or bundling of loans was the primary thing. There was high levels of risks placed on borrowers who were saddled with exploding adjustable rate mortgages ARM's. It was known or should have been known that an individual with documented income under $3,000.00 per month would have no chance to maintain an adjustable rate mortgage that continues to escalate every six months. There was substantially certain knowledge that that would be the case. The model for qualifying for these types of loans was to accept only documented "wage earner" income and to exclude incomes derived from government sources such as Veteran's (VA) disability compensation. In some circles, VA compensation is not considered to be income but rather compensation for loss, except for when calculating income for bankruptcy purposes. The income or compensation for Timothy W. Scott was disregarded in the falsification of the loan application, so the sights were set on the situation of Freddie M. Scott. It's our position that they took advantage of an opportunity to intentionally deceive and misrepresent the true nature of the transaction. We provided documentation which should have qualified us for a fixed-rate mortgage with better terms and rate. If this had been done, we would not be here today.

## STATEMENT OF FACTS

1. On April 20, 1999 We signed an **AGREEMENT FOR PURCHASE AND SALE** for a new home. 14450 E. 50th. Ave. Denver, Colorado 80239.

2. We went through a Loan Qualification process to purchase this new home.

3. We filled out Form 1003, **UNIFORM RESIDENTIAL LOAN APPLICATION.**

4. The loan process required that we complete a (what was called a **FULL DOC LOAN)**

5. We provided much financial information to qualify for the loan.

6. The information included the verification of income.

7. Which included verification of VA DISABILITY INCOME, SSA (DISABILITY) received by Timothy W. Scott.

8. Credit Reports were pulled for both parties by CTX Mortgage Company

9. Information on all other assets were requested and supplied.

10. All personal information provided on the loan application was as had always been on real estate acquisitions.

11. We purchased other homes based on a borrower and co-borrower relationship.

12. All real estate purchases by us have been with **Fixed Rate Mortgages** only.

13. The reason for this was the fact that Timothy W. Scott was on a fixed income due to service in Viet Nam.

14. The loan was approved based on the *combined income* of both Timothy W. & Freddie M. Scott

15. We obtained a Conventional 25 year **Fixed Rate** mortgage @8.25% .

16. The Note was signed and executed by **Timothy W. Scott and Freddie M. Scott.**

17. In 2001 we sought to refinance that loan.

18. We Searched the **inter-net** and other sources and requested loan information.

19. We received numerous responses and solicitations from Lenders which included **GMAC**. (March 2001).

20. ALL of our requests were for **FIXED – RATE MORTGAGES ONLY.**

21. We requested and received several offers from Lenders.

22. About August or September 2001, we were contacted by a Mr. Jake Daley, Team Lending Concepts. 7430 East Caley, Suite 120, Greenwood Village, CO 80111.

23. Mr. . Daley stated he represented one of the leading Mortgage Lenders in the nation and that he could beat or match any offer we may have received.

24. We were asked to fill out an **application** to see where we stood.

25. **WE** filled out **Form 1003** (handwritten).**URLA**

26. The information had **Timothy W. Scott, Borrower and Freddie M. Scott as Co-Borrower**.

27. The information provided on the application was the income from both parties.

28. To expedite the process we gave to the Mortgage Broker Agent a copy of our previous loan closing with all relevant information contained therein.

29. We told the Agent that we were looking for a **FIXED RATE MORTGAGE** only similar to what we already had.

30. The Agent was confident he could beat any other company because of the company he represented.

31. The Application **we filled** out did not show any *party* with an income of **$10,000.00 per month**.

32. Within days of the application, and after credit reports were pulled we were told we qualified for one of their better loan programs.

33. We were then asked to provide Tax returns, verification of **(bank)** deposits (VOD) and copies of checks for Underwriting.

34. Throughout the month of October 2001 we asked for updates to the underwriting.

35. On October 23, 2001 Jake Daley was called to request paperwork to be faxed to us for review.

36. On October 24, 2001 Jake Daley called to say that there was no need to send the paperwork because we were set to close on Friday October 26, 2001 @ 5:00 pm.

37. On October 24, 2001 we were told that additional information was needed from us for the underwriters to close and to lock in our interest rate.

38. The information that was requested included a copy of our **marriage certificate** and **photo identification** which was faxed to them on October 24, 2001.

39. On October 26, 2001 closing attended.

40. At the Closing ALL documents were not made available.

41. At The Closing we were told because of some minor issues with credit we did not qualify for their **"special"** loan program. A higher interest rate is given than originally promised.

42. We are told at the Closing that only **Freddie M. Scott** would be needed on the **Note.**

43. A Fixed Rate mortgage is signed.

44. An **Adjustable Rate Mortgage** shows up in our paperwork on November 5, 2001.

45. At the Closing there is a **Bait and Switch.** *See* **Morris v. Novastar Mortgage, Inc. 2006 WL 2707349 (W.D. Mo. September 19,2006)** ( whether Broker was lender's agent...); **Plata v Long Beach Mortgage Co., 2005 WL 3417375 (N.D. December 13,2005)**

46. Contrary to what we had been told we end up with an ARM. Adjustable Rate Mortgage.

47. We are told at the Closing that **Timothy W. Scott** would take Title only.

48. The Loan Closers stated that despite the minor set-back we could still close today.

49. The Loan Closers stated that we would only be able to finish closing on November 5, 2001.

50. We are told there would be no escrow of taxes and insurance.

51. The "so-called" finish of the Closing was at **LICATA ESCROW Services.**

52. From 2001-2004 there was a **fixed rate** aspect to the loan.

53. The Loan however was an **EXPLODING ARM** (Adjustable rate mortgage) which began to adjust every 6-months upward.

54. We informed **Homecomings Financial** the then servicer an, affiliate of **GMAC/RFC** prior to the adjustments that this was not the loan we requested and had applied for.

55. We are told by **HFN** that, that is the loan (note) that was signed by Freddie M. Scott.

56. In 2004 we began to research the mortgage industry and these types of loans.

57. We requested Information through **Qualified Written Requests.**

58. We asked **HFN** to review the Loan Application.

59. We were told by **HFN** that they were not responsible because they had not *originated* the loan.

60. Made additional inquiries about the Loan.

61. The Loan we learned was securitized. Subject to <u>Underwriting guideline scrutiny.</u>

62. GMAC had established **Underwriting Guidelines in 2001** in prior and later years.

63. We asked many questions, received few answers.

64. On January 26, 2004 received letter from **Franscona, Joiner, Goodman & Greenstein, P.C.** Attorney's Representing Homecomings Financial Network, to initiate foreclosure action. #3558

65. Deutsche Bank Trust Company Americas, fka Bankers Trust Company As Trustee, is listed as the Creditor.(Owner)

66. We did not realize Deutsche Bank at that time had no standing to foreclose.

67. On March 2, 2004 the loan is re-instated with a payment to **Homecomings Financial of $9,929.84**.

68. We again request loan information to inquire about ownership of the note.

69. From 2004-2008 payments continue to increase.

70. We are no longer able to sustain and maintain any financial stability because of the **ADJUSTABLE RATE MORTGAGE**. Causing other obligations to get behind.

71. In 2008 another Foreclosure is initiated by **LASALLE NATIONAL BANK AS TRUSTEE**. #1558

72. In 2008 there are problems on the horizon for the **TO BIG TO FAIL BANKS**.

73. In 2004 and 2008 neither **Deutsche Bank** nor **LaSalle National Bank** had the authority to initiate foreclosure.

74. On November 27, 2007 we issued a **NOTICE OF RECONVEYANCE to DEUTSCHE BANK TRUST AMERICAS,** *fka* **BANKERS TRUST COMPANY**. Certified and Recorded on November 29, 2007 at the City and County of Denver.

75. On January 28, 2008 Affidavit issued.

76. In 2001 **GMAC/RFC** is known as a leading national mortgage lender.

77. Prior to 2001 and after, The GMAC/RFC Business Model included making **Sub-prime** residential loans to borrowers with impaired credit.

78. GMAC/RFC sold this loan on the secondary markets.

79. The loan was part of a securitization scheme.

80. The Business model of GMAC/RFC/HFN claimed and promoted **High Underwriting**

**standards.**

81. GMAC/RFC utilized mortgage brokers, wholesale lenders under contract to them.

82. GMAC/RFC prepared created a **GMAC Residential Funding Form 1555 (10/91).**

83. STONECREEK FUNDING CORPORATION utilized their form. On October 26, 2001.

84. The form was titled **ADJUSTABLE RATE NOTE.**

85. The Note was tied to the LIBOR Index – Rate Caps.

86. LIBOR accused of fraudulent activities regarding rate manipulations in 2012.

87. Adjustable Rate mortgages (ARM) consisted of lower fixed rates for short periods.

88. The (ARM) increased to higher rates tied to LIBOR.

89. GMAC/RFC had a duty to **"Underwrite"** this loan according to the Facts.

90. GMAC/RFC/HFN through one of their partners STONE CREEK FUNDING CORPORATION failed to provide a loan on acceptable terms.

91. GMAC/RFC/HFN then created knowingly an unservicable loan for Freddie M. Scott.

92. The Facts showed that **Freddie M. Scott** had a monthly income under **$3,000.00 per month.**

93. Proper follow through using **GMAC/RFC's** own Underwriting Guidelines would have shown that Freddie M. Scott did not have an income of **$10,000.00 per month.**

94. GMAC/RFC failed to comply with its **own underwriting guidelines** and standards.

95. This failure to follow their own guidelines impacted this loan and others for securitization purposes and impacted loans that were bundled and pooled with others.

96. We did not know our loan would be **securitized.**

97. We did not know the loan actually became a security.

98. The real purpose of the entire transaction was an investment scheme.

99. The transaction was **not** a loan.

100. The Deed of Trust was assigned from **STONECREEK FUNDING CORP.** directly to DEUTSCHE BANK *fka* BANKERS TRUST as Trustee for a **Securitized Trust. RAMP 2007 RP1?**

101. The mortgage note was transferred in a single document along with the Deed of Trust. The

Assignment of the Note and Mortgage). STONECREEK FUNDING could not "assign" the note. The note could only be negotiated under Article 3 of the UCC.

102. Endorsement on this note is actually on an allonge UN-affixed to the note.

103. An allonge cannot be used when there is sufficient room at the foot or bottom of the ORIGINAL NOTE for endorsement.

104. The allonge is not permanently attached to the ORIGINAL NOTE.

105. **Assignment** of the Note and Mortgage). STONECREEK FUNDING could not "assign" the note. The note could only be negotiated under Article 3 of the UCC.

106. Endorsement on this note is actually on an allonge UN-affixed to the note.

107. An allonge cannot be used when there is sufficient room at the foot or bottom of the **ORIGINAL** note for endorsement.

108. The allonge is not permanently attached to the **ORIGINAL** note.

109. The endorsement is not at the bottom of the last page of the note.

110. The origination date of October 26, 2001 on the note is not within the origination and cut-off dates provided for by the terms of the Pooling and Servicing Agreement recently identified to us as **RAMP Mortgage Asset-Backed pass –Through certificates, Series 2007- RP1.**

111. GMAC/RFC did not transfer this securitized loan to this trust in a timely manner.

112. The loan was closed on October 26, 2001.

113. This loan is identified to be in a Trust in **2007.**

114. The Chain of Title has been compromised.

115. The promissory note falls under UCC Article 3.

116. The note is a negotiable instrument.

117. The note was securitized; it now comes under UCC Article 8 & 9, as a security.

118. GMAC/RFC/RESCAP sold an UN-registered security.

119. RESCAP/GMAC/RFC/HFN participated in Securitizations.

120. STONECREEK FUNDING CORP sold note to RESIDENTIAL FUNDING;

121. STONECREEK FUNDING provided no Consideration for the purchase of said note.

122. RFC formed a Trust and bundled thousands of mortgages into pools of MBS's.

123. RFC sells Trust as a security.

124. The Pooling and Servicing Agreement controls.

125. There are **Underwriting Guidelines** that control the **PSA**.

126. The **PSA** provided for "Credit Enhancements" through insurance vehicles.

   1. **The credit enhancements included derivative type items such as "CREDIT DEFAULT SWAPS.**

127. Insurance was provided by various agencies such as **MBIA** and **AMBAC** Insurance.

   2. When there were any defaults by borrower, there was no RISK, no LOSS to GMAC/RFC.

   3. The PSA is the *insurance* that existed specifically to protect **GMAC/RFC** from borrower's default.

## **PRAYER FOR RELIEF**

This is the Unbundling of a Subprime Predatory Adjustable Rate Mortgage Loan. A loan Developed and designed for ultimate devastation. The financial Magic bullet in a 50 year Mystery. A securitized weapon of Masked (Mass) destruction. We that know, are the Souls that long to see the true *just* moments, always prepared for the worst and planning For the best.

WHEREFORE RESPONDENT'S respectfully requests that their claim be allowed to Move forward.

An award in favor of Respondent's against Debtors, cannot make us whole, but allows Us to find some of those missing pieces of this fraudulent financial puzzle.

TRUE Value of Relief sought:

1. Return of the Value of the Note and all profits associated with securitization;
2. Rescission of Agreement based on fraudulent Inducement;
3. Return of All escalated payments of the Adjustable Rate Mortgage.
4. All fees associated with the initiation of fraudulent foreclosure attempts.
5. Restoration of Damaged Credit.
6. Return of all payments made on the loan totaling over **$215,000.00**;
7. Punitive damages;
8. Such other and further relief as the Court may deem just and proper.
9. Just the value of the Note: **$208250.00**

DATED:     Denver, Colorado
           November 22, 2013

*Freddie M. Scott*
Freddie M. Scott

*Timothy W. Scott*
Timothy W. Scott

14450 E. 50th. Ave.
Denver, Colorado 80239
(303) 371-8274

## **PERTINENT LAWS**

### **18 U.S.C. & 1010**

Department of Housing and Urban Development and Federal Housing Administration transactions:

Prohibits the making or publishing any statement, knowing the same to be false, or altering, forging, or counterfeiting any instrument, paper, or document, or willfully over-valuing any security, asset or income. For the purpose of obtaining any loan, with the intent that such loan will be offered to the Department of Housing and Urban Development for insurance, or otherwise attempting to influence in any way the action of the Department.

### **18 U.S.C. & 1014**

False Statements on a loan or Credit Application:

Prohibits oral or written false statements or misrepresentations made knowingly on a loan or credit application to an insured institution, i.e., willful over-valuing of land, property, securities or other assets or understatement of liabilities.

### **18 U.S.C. & 1341**

Mail Fraud:

Prohibits use of the mail system in the furtherance of a fraudulent scheme.

### **18 U.S.C. & 1343**

Wire Fraud;

Prohibits any scheme or artifice to defraud or to obtain property or money through wire, telephone, radio or television transmissions in interstate commerce.

### **18 U.S.C. & 474**

Whoever, with intent to defraud, makes, executes, acquires, scans, captures, records, receives, transmits, reproduces, sells, or has in such person's control, custody, or possession, an analog, digital, or electronic image of any obligation or other security of the United States is guilty of a class B felony.

# **COLORADO LEGAL CLAIMS**

A. Colorado Revised Statutes

1. C.R.S. TITLE 6-1-105          Deceptive Trade Practices;

2. C.R.S. TITLE 38-35-109        Liability for fraudulent documents;

3. C.R.S. TITLE 11-51-501        Fraud and other prohibited conduct;

4. C.R.S. TITLE 11-51-502        Misleading filings

5. C.R.S. TITLE 18-5-112         Obtaining signature by deception;

6. C.R.S. TITLE 38-10-112        Void Ageements;

7. C.R.S. TITLE 38-10-109        Authorized agent may subscribe …

8. C.R.S. TITLE 12-61-904.5      Originators relationship to borrower

9. C.R.S. TITLE 12-61-914        Written disclosure of fees and costs