Katherine S. Parker-Lowe
Attorney at Law
35 Miss Elecia Lane, Suite 101
Post Office Box 730
Ocracoke, North Carolina 27960
252-928-1000
Attorney for Rex T. Gilbert, Jr. and Daniela L. Gilbert

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| In re: **Residential Capital, LLC, _et.als_.** | ) | **Case No.: 1:12-BK-12020(MG)** |
|  | ) | Chapter 11 |
| Debtors. | ) |  |
|  | ) | Jointly Administered |

_____)

MOTION FOR RECONSIDERATION OF THE MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART AND OVERRULING IN PART DEBTORS' OBJECTION TO
PROOF OF CLAIM NO. 1984 FILED BY KATHERINE PARKER-LOWE AND PROOF OF
CLAIM NO. 1991 FILED BY REX T. GILBERT, JR. AND DANIELA GILBERT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ..........................................................................................................3

RESPONSE TO DEBTORS' OBJECTION ...........................................................................5

THE GILBERT LITIGATION CLAIMS ..............................................................................5

    A.    The Truth in Lending Act Claims ...................................................5

        i. Truth in Lending Rescission..........................................................5

        ii. Truth in Lending Disclosure Violations ......................................8

    B    Attempted Wrongful Foreclosure Claims/Conspiracy to Commit
        Wrongful Foreclosure        13

    C.    North Carolina Unfair and/or Deceptive Acts or Practices.        16

        i. Collection of Usurious Interest.....................................................17

        ii. Failure to Rescind ......................................................................17

        iii. Attempting to Proceed with Foreclosure without Order ............20

        iv. Creating a new indorsement to Allonge .....................................21

        v.  Attempted Wrongful Foreclosure .............................................23

    D.    Debt Collection Violations .............................................................27

CONCLUSION    ........................................................................................................29

TABLE OF AUTHORITIES

Cases                                                                          Page


*American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007).  ........... 19,23

*Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......................2.

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). 2

*Britt v. Jones*, 123 N.C. App. 108, 472 S.E.2d 199 (1996)................................16

*Chow v. "Aegis Mortg. Corp.*, 286 F. Supp. 2d 956 (N.C. Ill. 2003),................................6

*Dolan v. Dickson Props., Inc.*, No. COA12-681, 735 S.E.2d 632 (2012) .......................15

*Douglas v. Pennamco, Inc*, 331 S.E.2d 298, 300 (1985)................................  13

*Econo-Travel Motor Hotel Corp.,* 301 N.C. 204, 271 S.E.2d 57 .....................................22

*Federal National Mortgage Association v. Bradbury*, Maine District Court, District Nine,
Division of Northern Cumberland, Docket No. BRI-RE-09-65 ..................................23,26

*Gale v. First Franklin Loan Servs.*, 701 F.3d 1240 (9th Cir. 2012......................................6

*GMAC Mortgage, LLC v. Neu, et. als.,*
      Palm Beach County, Florida, Case No. 50 2008 CA) ................................................25

*In re 20/20 Sport, Inc.,* 200 B.R. 972, 978 (Bankr.S.D.N.Y.1996) ....................................2

*In re Djk Residential LLC*, 416 B.R. 100 (Bankr. S.D.N.Y., 2009) ...................................23

*In re Rockefeller Ctr. Props.,* 272 B.R. 542  ....................................................................2

*In re Simpson*, 711 S.E.2d 165 (N.C. App. 2011).............................................................4,22

*Marshall v. Miller,* 302 N.C. 539, 276 S.E.2d 397 (1981). ...............................................16

*Miquel v. Country Funding Corp.*, 309 F.3d 1161(9th Cir. 2002).  ...................................18

*Pearce v. American Defender Life Ins.* Co., 316 N.C. 461, 343 S.E.2d 174 (1986)  .......16

*Smith v. Argent Mortgage Corp.*, 447 F. Supp. 2d 1194 (D. Colo. 2006)........................6,8

*Stanley v. Moore,* 339 N.C. 717,  454 S.E.2d 225 (1995)  ................................................16

*SunTrust Bank v. Bryant/Sutphin Props.*, LLC 732 S.E.2d 594 (N.C. Ct. App. 2012). ....15

*Walker v. Branch Banking & Trust Co.*, 133 N.C. App. 580 (1999). ...........................21,23

*Walker v. Fleetwood Homes of N. Carolina, Inc*, 362 N.C. 63 (2007). ...........................17

*Winston Realty Co. v. G.H.G., Inc.,* 314 N.C. 90, 98-99, 331 S.E.2d 677, 682 (1985) ....16

**Statutes**

15 U.S.C. § 1601 ...........................................................................................................1,4

15 U.S.C. § 1601(a). ........................................................................................................11

15 U.S.C. § 1606(c) ........................................................................................................8,9

15 U.S.C. § 1635. ..........................................................................................6,7,13,18,19,23

15 U.S.C. § 1635(a) ........................................................................................................17

15 U.S.C. § 1635(b). ....................................................................................................5,15,18

15 U.S.C. § 1638(a)(6) ................................................................................................9,10,11

15 U.S.C. § 1641(f) ..........................................................................................................5

15 U.S.C. § 1641(c) ..........................................................................................................7

N.C. Gen. Stat. § 24-1 ......................................................................................................1

N.C. Gen. Stat. § 25-1-201(b)(21) .....................................................................................4

N.C. Gen. Stat. § 25-3-110 ...............................................................................................4

N.C. Gen. Stat. § 25-3-201 ...............................................................................................4

N.C. Gen. Stat. § 25-3-204 ...........................................................................................4,22

N.C. Gen. Stat. § 25-3-206. ..............................................................................................4

N.C. Gen. Stat. 45-21.16(d) ............................................................................................14

N.C. Gen. Stat. § 45-21.34 ...............................................................................................1

N.C. Gen. Stat. § 75-1.1 .................................................................................1,7,8,16,17,23,26

N.C. Gen. Stat. § 75-50.................................................................................................1,27

N.C. Gen. Stat. 75-54(4).  .............................................................................................27

N.C. Gen. Stat. § 95-47.6..............................................................................................16

**Other Authorities**

82 A.L.R. 6th 42 (2013)...............................................................................................13

82 A.L.R.6[th] 43 (2013).  ..............................................................................................13


Fed.R.Civ.P.8(a)(2)..........................................................................................................2

Fed.R.Civ.P. 9(b) .............................................................................................................3

Fed. R.Civ. R. 12(b)(6) ..................................................................................................3,17


Official Staff Commentary § 226.17(c)(1)-8.  ..................................................................8

Official Staff Commentary § 226(c).  ...............................................................................8

Official Staff Commentary § 226.17(c)(2)-1 ....................................................................9

Official Staff Commentary § 226.17(c)(2)(i)-2. ..............................................................10

Reg. Z § 226.15.  ................................................................................................6,17,19,23

Reg. Z § 226.17(c)(2)........................................................................................................9

Reg. Z § 226.18(g). ....................................................................................................10,11

Reg. Z 226.22(a). ...........................................................................................................8,9

Rohner, *The Law of Truth in Lending* ¶ 4.01[2][c][i] (1984).  ...........................................8

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

Rex T. Gilbert, Jr. and Daniela L. Gilbert (the "Gilberts") submit this Motion for Reconsideration of the Memorandum Opinion and Order Sustaining in part and Overruling in part Debtors' Objection to Proof of Claim No. 1984 Filed by Katherine S. Parker-Lowe and Proof of Claim No. 1991 Filed by Rex T. Gilbert, Jr. and Daniela Gilbert and show the court as follows:

## PRELIMINARY STATEMENT

1.    The Gilberts' original proof of claim # 1991 (the "Proof of Claim") filed prior to the applicable deadline, asserts claims against GMAC Mortgage, LLC ("GMACM"), Residential Funding, LLC and others arising from an equitable action filed pursuant to N.C. Gen. Stat. § 45-21.34 in the Superior Court of Hyde County, North Carolina, removed to the United States District Court for  the Eastern District of North Carolina, dismissed on defendants' 12(b)(6) motion, appealed to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), reversed in part and reinstated in part, and stayed as a result of the Debtors' Chapter 11 Bankruptcy (the "Federal Suit").

2.    Accordingly, the Gilberts' original proof of claim asserts rescission and monetary damages for violations of the federal Truth in Lending Act, 15 U.S.C. § 1601, *et. seq.*; the North Carolina Unfair and Deceptive Acts and Practices Act, N.C. Gen. Stat. § 75-1.1, *et. seq.* (UDAP); usury, N.C. Gen. Stat. § 24-1, *et. seq.*; Acts Prohibited by Debt Collectors, N.C. Gen. Stat. § 75-50, *et. seq.*; breach of contract; and wrongful foreclosure. Because the Gilberts' Federal Suit is stayed at the Fourth Circuit at the pleading stage, the Proof of Claim states the Gilberts' claim generally, much like other ResCap creditors possessing a contingent, unliquidated claim.

1

3.      Were the Federal Suit not stayed by the Debtors' chapter 11 bankruptcy, the

Gilberts would move to amend their initial Complaint to add claims against the non-bankrupt

defendants and the two debtor-defendants for, *inter alia*, conspiring to commit wrongful

foreclosure through the introduction of fraudulent affidavits of employee, Jeffrey Stephan, in the

Foreclosure Suit; conspiring to create a new endorsement appended to the Gilberts' note signed

by an employee of Residential Funding LLC purportedly establishing ownership of the Gilberts'

obligation with defendant Deutsche; repeated collection contacts with the Gilberts attempting to

collect a debt defendants do not own; repeated false representations of ownership of the note by

defendants; and breach of the implied duty of good faith and fair dealing which hindered the

Gilberts' ability to receive the benefits of their existing loan service contract with defendant-

debtors.

4.      Notwithstanding the shifting burden of proof for consideration of Proofs of Claim

this Court in construing a proof of claim related to litigation held in *In re Djk Residential LLC*,

416 B.R. 100 (Bankr. S.D.N.Y., 2009) that:

> in determining whether a party has met their burden in connection with a proof of
> claim, bankruptcy courts have looked to the pleading requirements set forth in the
> Federal Rules of Civil Procedure. *See In re Rockefeller Ctr. Props.,* 272 B.R. at
> 542 n. 17 (applying the requirements of Rule 8 ("Rule 8") and Rule 9 ("Rule 9")
> of the Federal Rules of Civil Procedure to proofs of claims); *In re 20/20 Sport,
> Inc.,* 200 B.R. 972, 978 (Bankr.S.D.N.Y.1996) ("In bankruptcy cases, courts have
> traditionally analogized a creditor's claim to a civil complaint [and] a trustee's
> objection to an answer....").

> Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain
> statement of the claim showing that the pleader is entitled to relief...." FED.
> R.CIV.P. 8(a)(2). While the Claim "does not need detailed factual allegations, ...
> [it] requires more than labels and conclusions...." *Bell Atl. Corp. v. Twombly,* 550
> U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Claimant must assert
> "enough facts to state a claim to relief that is plausible on its face." *Id.* at 577, 127
> S.Ct. 1955. To show facial plausibility, the Claimant must plead "factual content
> that allows the court to draw the reasonable inference that the [Debtor] is liable
> for the misconduct alleged." *Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937,*

2

1949, 173 L.Ed.2d 868 (2009). Rule 9 imposes more stringent pleading requirements when a party is alleging fraud. Fed.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

5.    The above analysis is a 12(b)(6) analysis. The Gilbert Litigation which was dismissed by the trial court on a 12(b)(6) motion was reinstated by the Fourth Circuit. The undersigned was under the impression that having survived a 12(b)(6) in the Fourth Circuit the claims were sufficient to survive an Objection to Proof of Claim analysis. Further, the undersigned understood from this Court's comments at the end of argument on September 24, 2013, that, based upon said holding by the Fourth Circuit and the holding by North Carolina Court of Appeals, the Gilberts' claims at least more than one unpled claim, would be moving forward.

6.    To the extent that the undersigned was mistaken, the Gilberts request this reconsideration of the Memorandum Opinion and Order Sustaining in part and Denying in part Debtors' Objection to Proof of Claim No. 1984 Filed by Katherine S. Parker-Lowe and Proof of Claim No. 1991 Filed by Rex T. Gilbert, Jr. and Daniela Gilbert.

<u>BACKGROUND</u>

7.    To the extent the Court appears to state as fact that Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc., Series QA-6 is the holder, the Court is mistaken, The North Carolina Court of Appeals found that the indorsement on the Allonge to Note from RFC to Deutsche Bank Trust Company Americas as Trustee failed to establish the ownership of the note by Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc., Series QA-6. Further the COA found that the affidavits submitted in support of foreclosure failed to establish to whom the mortgage was actually

3

transferred by RFC. These are the conclusions which support the COA's reversal of the Gilbert foreclosure. *In re Simpson*, 711 S.E.2d 165 (N.C. App. 2011).

8.      Further the Uniform Commercial Code dictates that indorsements purporting to transfer negotiable instruments must be made at the time of transfer by an indorser with authority to make the endorsement. N.C. Gen. Stat. §§ 25-3-110, 3-201, 3-204, 3-206.

9.      Deutsche Bank Trust Company Americas, as trustee for Residential Accredit Loans, Series QA-2006 failed to prove that it was the holder. While special counsel for the Debtors' sent the undersigned a new indorsement this new purported indorsement was not made at the time of transfer by Residential Funding Corporation for the purpose of negotiation as required by the Uniform Commercial Code. *Id.*

10.     After stating on p. 11, beginning with the caption, that GMAC/Deutsche was not the owner and holder of the Gilberts promissory note, and then after explaining for 13 pages why the court stated:  "We conclude the record is lacking of competent evidence sufficient to support that Petitioner is the owner and holder of Mr. Gilbert's note and deed of trust."

## GILBERT LITIGATION CLAIMS

A.      **Truth in Lending Act Claims**

**i. Truth in Lending Rescission**

11.     Neither the purported sale by the Debtors of the servicing rights of the Gilberts' loan to Ocwen Loan Servicing, LLC nor its claim that defendant-debtor GMACM did not own the Gilberts' loan obligation are sufficient defenses against the Gilberts' claim for damages for violations of the federal Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.*

12.     Assuming for the sake of argument that defendant-debtor GMACM had the right to sell the servicing rights to the Gilbert's obligation, which right is expressly denied, said sale

does not absolve defendant-debtors RFC and GMACM from liability for refusal to comply with the Gilberts' letter exercising their right to rescind their obligation.

13.    Further, RFC and GMACM can not claim the protections of the servicer exemption found at 15 U.S.C. § 1641(f) of the Truth in Lending Act. Pursuant to The Standard Terms of Pooling and Servicing Agreement between and among Residential Accredit Loans, Inc., Residential Funding Company, LLC and Deutsche Bank Trust Company Americas as Trust at pages 46-47 the following language appears:

> Section 3.01. <u>Master Servicer to Act as Servicer</u>.
>
> (a)    The Master Servicer shall service and administer the Mortgage Loans in accordance with the terms of this Agreement and the respective Mortgage Loans and shall have full power and authority, acting along or through Subservicers as provided in Section 3.02, to do any and all things which it may deem necessary or desirable in connection with such servicing and administration.

See Exhibit 8. Pursuant to the terms of its Agreement, on April 24, 2009, defendant-debtor GMACM responded to the Gilberts' April 5, 2009, letter exercising the right to rescind. GMACM pursuant to its Agreement explicitly held itself out as the assignee and functional holder of the obligation.

14.    Under the plain language of the Truth in Lending Act, the creditor-assignee has the obligation to commence to unwind the transaction within twenty days of receipt of the letter exercising the right to rescind. 16 U.S.C. § 1635(b). The Gilberts rescission letter was addressed to the "Holder of Loan #xxx" and mailed in c/o counsel for the substitute trustee. GMACM responded to the Gilberts' exercising of rescission. RFC and GMACM pursuant to their Agreement and GMACM holding out as functional holder are subject to liability as creditor-assignees under the Act and Regulation.

5

15.    Contrary to the court's assertion at page 11 that "to find otherwise would create liability for loan servicers in spite of the statute's clear language to the contrary," RFC and GMACM in Agreement with defendant Deutsche Bank accepted liability as creditor assignees.

16.    The Act's protection from liability for servicers is provided to servicers who engage in servicing functions not to servicers who engage in decisions assigned by a federal law to creditor-assignees. 15 U.S.C. § 1635; Reg. Z § 226.15.

17.    Defendant-debtor RFC and GMACM are estopped from claiming they only acted as servicer because of the Agreement and by holding out as a functional holder with authority over rescission. See *Smith v. Argent Mortgage Corp.*, 447 F. Supp. 2d 1194 (D. Colo. 2006) (denying motion to dismiss where servicer responded to the borrower's letter of rescission indicating responsibility for decisions regarding rescission.)    The cases cited by the Court at page 10 are fully distinguishable from the case at bar. Contrary to the facts in *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240 (9th Cir. 2012) where the servicer did NOT respond, here GMACM assumed responsibility for responding to a rescission letter which was not directed to it thereby holding itself out as having responsibility for decisions regarding rescission.  Contrary to the facts in *Chow v. "Aegis Mortg. Corp.*, 286 F. Supp. 2d 956 (N.C. Ill. 2003), the Gilberts do not admit that GMACM was just the servicer without responsibility for decisions regarding rescission. Finally, *Keiran* is not at all on point where RFC and GMACM accepted responsibility under the terms of their Agreement and by holding out as having responsibility for decisions regarding rescission.

18.    Contrary to the self serving statements in the Delehey Declaration, the terms of the parties' Agreement and the actions of GMACM speak louder. In this case, GMAMC acted affirmatively in responding to rescission letter indicating that it had responsibility for decisions

6

regarding rescission. There is no evidence that GMACM alerted another entity to the Gilbert rescission.

19.    As the assignees, defendant-debtors RFC and GMAC are liable to the Gilberts' for actual damages, statutory damages, and attorney's fees for refusal to honor the Gilberts' rescission notice. The Gilberts are further entitled to treble damages under North Carolina's Unfair and Deceptive Acts and Practices Act, N.C. Gen. Stat. 75-1.1., where violations of statutes designed to protect the consumer support a separate and independent claim for unfair acts and/or practices.

For these reasons, the Debtors' objection to the Gilberts' rescission claim should be overruled.

### ii.    Truth in Lending Disclosure Violations

20.    The Gilberts properly stated a claim for disclosure violations under the Truth in Lending Act against the Defendants in the Gilbert Litigation. Although the Gilberts concede that the statute of limitations has run with respect to monetary damages under the Truth in Lending Act, the statute of limitations has not run with respect to a claim for disclosure violations as a violation of North Carolina's Unfair Acts and/or Deceptive Practices Claim—four years-- with respect to the Defendants in the Gilbert Litigation.

21.    Defendant Deutsche Bank Americas, as trustee for Residential Accredit Loans, Series QA-2006 is liable under the Truth in Lending Act as an assignee for the face violations on the disclosure statement. 15 U.S.C. § 1641(c) provides as follows: Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.

22.     Moreover, Defendants RFC and GMACM are likewise liable as creditor assignees and are estopped to deny the terms of their Agreement with Deutsche. GMACM held itself out as the functional holder-assignee by virtue of having responded to the Gilbert rescission letter and thereby demonstrating that it had responsibility for decisions regarding rescission is estopped to deny liability under the Truth in Lending Act for the face violations on the disclosure statement. See *Smith v. Argent Mortgage Corp.*, 447 F. Supp. 2d 1194 (D. Colo. 2006).

23.     RFC and GMACM, the defendants before this Court,  are liable to the Gilbert's' for actual damages, statutory damages, and attorney's fees for refusal to honor the Gilberts' rescission notice. The Gilberts are further entitled to treble damages under North Carolina's Unfair and Deceptive Acts and Practices Act, N.C. Gen. 75-1.1, where violations of statutes designed to protect the consumer support a separate and independent claim for unfair acts and/or practices. See further argument below.

24.     The Gilberts' letter exercising their right to rescind pointed the Defendants to several alleged disclosure violations including, but not limited to, the disclosure of the APR and the payment schedule. The improper disclosure of the annual percentage rate and the payment schedule are both material violations for purposes of rescission.

25.     The APR is considered accurate if it is not more than $1/8^{th}$ of a percentage point (.125%) above or below the rate determined by the actuarial or U.S. method. 15 U.S.C. § 1606(c); Reg. Z § 226.22(a)  The APR can only be calculated after the finance charge, amount financed, and payment schedule are known or can be reasonably estimated. See Rohner, *The Law of Truth in Lending* ¶ 4.01[2][c][i] (1984).

26.     The Commentary to Reg. Z sets forth the assumptions to be used when calculating the disclosed APR in a variable rate transaction. The APR, and other disclosures as well, should

be given for the full loan term and be based on the terms in effect at the loan's inception. The

APR should be the initial rate, without assuming any subsequent rate changes. Official Staff

Commentary § 226.17(c)(1)-8.

27.     In cases like the Gilberts where there was an initial interest only term, the APR as

well as the finance charge, total of payments, and payment schedule must reflect the effect of

both the initial interest only term and the rate that would have been applied but for the initial

interest only term. The APR must be disclosed as a single, composite reflecting both terms.

Official Staff Commentary § 226(c).

28.     The Gilberts' expert provides uncontroverted evidence that the APR on the

Gilbert disclosure statement was not disclosed within 1/8th of a percentage point. See Exhibit 1.

The APR as calculated by the Gilberts' expert using the actuarial method and the formula set

forth in said expert's affidavit establishes that the true and correct annual percentage rate.

29.     The Gilberts have established a material disclosure violation where the annual

percentage rate is not disclosed accurately to within 1/8th of 1 percent. 15 U.S.C. § 1606(c); Reg.

Z 226.22(a). The Debtors have presented no evidence to rebut the calculations of the Gilberts'

expert.

30.     Additionally, the Gilberts' pointed to the payment schedule disclosure as being

inaccurate. There is no tolerance for payment schedule violations. The creditor must disclose the

payment schedule for each transaction, including:

- The number of payments

- The amount of each payment; and

- The timing of payments scheduled to repay the obligation

15 U.S.C. § 1638(a)(6); Reg. Z § 226.18(g).

31.    A creditor does not have to gamble its TIL liability on information that is unknown at the time the disclosures are made. Official Staff Commentary § 226.17(c)(2)-1. If any information necessary for an accurate disclosure is unknown, the creditor must make the disclosure based on the best information "reasonably available" and must state that the disclosure is an estimate. Reg. Z § 226. 17(c)(2). Estimates must be designated as such in the segregated disclosures. Official Staff Commentary § 226.17(c)(2)(i)-2. The Model Forms provide for the use of an "e" to designate an estimated disclosure.

32.    The Court's analysis and conclusions beginning on page 19 of the Memorandum Opinion [Docket 5660] with respect to the payment schedule disclosure are an error as a matter of law. A review of the Adjustable Rate Note and the Interest-Only Addendum to Adjustable Rate Note make it crystal clear that the payment schedule disclosed on the Truth in Lending does not comply with the loan documents. While the Court correctly recites the repayment terms from the contents of the loan documents, this information is not correctly disclosed on the Truth in Lending Disclosure Statement. The disclosure statement and the Act are all about DISCLOSURE and the information disclosed must be correct and accurate.

33.    The payment amount for payment 85 required to be disclosed pursuant to 15 U.S.C. § 1638(a)(6); Reg. Z § 226.18(g) would not have been known to the creditor at the time the disclosures were made. Further, a fair reading of the note discloses the rate was not only subject to change at the 85th payment as the Court point out but also every six months thereafter for the life of the loan. The Gilbert payment schedule on the Truth in Lending Disclosure Statement does not disclose the payment schedule with the possible change in payment every six months. The payment schedule in the Gilbert Truth in Lending disclosure statement is disclosed as:

10

| Number of Payments | Amount of Payments | Payments are Due |
|---|---|---|
| • 84 | $3,226.57 | 07/01/2006 |
| • 36 | $3,500.00 | 07/01/2013 |
| • 239 | $4,391.32 | 07/01/2016 |
| • 1 | $4,385.64 | 06/01/2036 |

The payment schedule as disclosed clearly does not accurately reflect the terms of the loan.

34.    The Court's conclusion on page 20 that "[t]he only inconsistency between the payment schedule contemplated by the loan documents and the TILA Disclosure Statement is point (4): the loan documents specify that the 240 principal and interest payments will be equal, while the TILA disclosure statement shows 239 payments of $4,391.32 and a single final payment of $4,385.62, a difference of $5.70" is an error of law. Even if the aforesaid limited discrepancy between the loan documents and the disclosure statement were the only discrepancy, which limited discrepancy is expressly denied, there is no tolerance for payment schedule disclosure under Truth in Lending.  15 U.S.C. § 1638(a)(6); Reg. Z § 226.18(g).

35.    Contrary to the Court's conclusion on page 21 that [t]he minor discrepancy noted on the final payment was rendered moot by the Gilberts' default in 2008," the failure to make accurate disclosures under the Act is not rendered moot by the subsequent default of the borrower. This assertion flies in the fact of the entire purpose of the Truth in Lending Act. The purpose is to provide the consumer with credit information in a uniform manner to promote the informed use of credit. See 15 U.S.C. § 1601(a). The disclosures on the statement are to be judged as of the date of consummation of the loan –May 5, 2006.

36.    It is not a matter of a minor discrepancy of $5.70 over the life of the loan. It is a matter of the disclosed payment schedule does not accurately reflect the repayments terms of the

loan. The interest rate was not just subject to change on the 85th payment but EVERY SIX
MONTHS THEREAFTER. The disclosed payment schedule does not accurately reflect this
repayment obligation. To the extent that information such as the exact payment amount for the
85th payment, the 91st payment, the 97th payment is/was unknown to the creditor it failed to avail
itself of the procedures set forth under the Act for the use of estimated disclosures. The original
creditor created a face violation for which each assignee including RFC and GMACM are
responsible under the Act.

37.    The Gilberts have set forth evidence sufficient to establish that the payment
schedule disclosure requirements under Truth in Lending were violated. Notwithstanding the
expiration of the statute of limitations on monetary damages for this violation, the payment
schedule disclosure is a "material" disclosure for purposes of supporting their claim for
rescission and unfair and or deceptive acts and practices.

38.    Moreover, the Gilberts' letter exercising their right to rescind pointed out the
payment schedule disclosure violation as a basis for rescission. Thus, the willful refusal by
GMACM to begin the consensual unwinding of the loan transaction is made all the more
disheartening.

For these reasons, the Debtors' objection to the Gilberts' TILA claim should be
overruled.

**B. Attempted Wrongful Foreclosure Claim/Conspiracy to Commit Wrongful
Foreclosure.**

39.    The Gilberts respectfully reject the idea that simply because a cause of action has
not previously been brought there can never ever be such a cause of action. Gilberts respectfully

point to breach of good faith and fair dealing as one example of a fairly new cause of action gaining traction.

40.     The Gilberts further respectfully point to the fact that the Gilbert Litigation was instituted in 2009, removed to the district court, dismissed, appealed to the Fourth Circuit, reinstated, and but for the Debtors bankruptcy would be on remand to the district court at the pleading stage. Upon remand, a new discovery plan would presumably be developed     which, among other things, would establish a new deadline for seeking to amend the pleadings adding new claims.

41.     As the Court is aware, North Carolina recognizes a civil cause of action for wrongful foreclosure. Moreover, the Court has acknowledged that the cause of action requires an act of "wrongfulness" which is satisfied where "the mortgagee had no right to foreclose at the time foreclosure proceedings were commenced." 82 A.L.R. 6th 42 (2013) (other citation omitted).

42.     Gilberts have established two separate theories for attempted wrongful foreclosure based on the conduct of RFC and GMACM.  First, GMACM supplied the affidavits used to support the foreclosure action. These affidavits were supplied under the terms of the Pooling and Servicing Agreement obligations. See Exhibit 8. Second, the Gilberts properly exercised the right to rescind the loan transaction and a timely exercise of rescission voids the security interest. 15 U.S.C. § 1635. Under both theories, the attempted foreclosure was both "wrongful" and "the mortgage had no right to foreclose at the time foreclosure proceedings were commenced. 82 A.L.R.6[th] 43 (2013); see *Douglas v. Pennamco, Inc*, 331 S.E.2d 298, 300 (1985).

43.     In North Carolina, a foreclosure under power of sale pursuant to N.C. Gen. Stat. 45-21.16(d) is limited to four required elements:

13

If the clerk finds the existence of (i) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, and (iv) notice to those entitled to such under subsection (b), ….then the clerk shall authorize the mortgagee or trustee to proceed under the instrument, and the mortgagee or trustee can give notice of and conduct a sale pursuant to the provisions of this Article.

N.C. Gen. Stat. § 45-21.16(d) (2009).  Moreover, there is no provision for legal defenses outside the four elements to be proven by the petitioner. There is no provision for equitable defenses or counterclaims. All claims beyond legal defenses to the four elements to be proven by the petitioner must be brought in an independent action. Hence, the reason for the Gilbert Litigation in the first place, a portion of which is now before this Court.

44.     The North Carolina Court of Appeals opinion focused on the last portion of the first element required to be proven in a foreclosure under power of sale; to wit: whether the petitioner is the owner and holder. The Court of Appeals found that the petitioner failed to prove it was the owner and holder of any debt owed by the Gilberts. Hence, "the mortgagee had no right to foreclose at the time proceedings were commenced."

45.     Contrary to the Court's assertion that Deutsche Bank (or the holder of the note) is not barred from proceeding with foreclosure if it establishes its standing to do so, Deutsche Bank had no right to foreclose at the time the 09-sp-09/COA10-361 proceedings were commenced. This action was an attempted foreclosure. This action was wrongful. The Gilberts were damaged at a minimum to the extent they had to hire a lawyer to stop the wrongful action and they had to post a bond to stop the wrongful action.

46.     Contrary to the Court's conclusion that the Gilberts do not "posit a theory for how the attempted foreclosure, or GMACM's relation to the attempted foreclosure," resulted in damages, the Gilberts have produced evidence contained in its Agreement with RFC and Deutsche (Exhibit 8) which both are estopped to deny establishing that RFC and GMACM

14

assumed the obligations of creditor assignee for purposes of liability under Truth in Lending. Both  assumed control for decision making on when to foreclose. Gilberts posit that though the state court foreclosure runs in the name of Deutsche Bank RFC and GMACM under the terms of their Agreement (Exhibit 8) were making the decisions with respect to foreclosure. Hence, the presentation of affidavits of default supplied by employees of GMACM.

47.     Deutsche Bank/GMAC had no right to foreclose at the time the foreclosure proceedings (Hyde County File 09-sp-09) were commenced because by letter dated April 4, 2009, the Gilberts' made a timely exercise of their right to rescind the loan transaction. Pursuant to 16 U.S.C. § 1635(b), "when an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, becomes void upon such a rescission." Where the security interest was voided by the exercise of rescission, there was no right to foreclose or attempt to foreclose.

48.     Although the Gilbert rescission letter was addressed to the "Holder of Loan #xxxxx" it was GMACM that responded to the Gilberts' letter. GMACM did not forward the rescission letter to the proper party, under the Truth in Lending Act, for response.

For these reasons, the Debtors' objection to the Gilberts' wrongful foreclosure should be overruled.

### C.     North Carolina Unfair and/or Deceptive Acts or Practices.

49.     Unlike the case at bar, the two primary cases cited by defendant-debtors opposing the Gilberts' claim for unfair and deceptive acts and practices are both straight breach of contract actions in a commercial setting. See *Dolan v. Dickson Props., Inc.*, No. COA12-681, 735 S.E.2d 632 (2012) and *SunTrust Bank v. Bryant/Sutphin Props.*, LLC 732 S.E.2d 594 (N.C. Ct. App.

2012).    The case at bar involves two consumer-homeowners and the violation of statutes designed to protect the consuming public.

50.    While there are no reported North Carolina decisions specifically dealing with the Truth in Lending Act, the North Carolina Supreme Court has held that violation of a statutory provision designed to protect the consuming public may constitute an unfair and deceptive practice as a matter of law. See *Stanley v. Moore,* 339 N.C. 717, 724, 454 S.E.2d 225, 229 (1995) (violation of the Ejectment of Residential Tenants Act); *Pearce v. American Defender Life Ins. Co.,* 316 N.C. 461, 470, 343 S.E.2d 174, 179 (1986) (violation of statute regulating insurance industry); and *Winston Realty Co. v. G.H.G., Inc.,* 314 N.C. 90, 98-99, 331 S.E.2d 677, 682 (1985) (violation of statute regulating employment practices, N.C. Gen. Stat. § 95-47.6(2, 9)). Further, our Supreme Court has also determined a practice to be unfair under G.S. § 75-1.1 when it offends established public policy. See *Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Violations of Chapter 24 of the North Carolina General Statutes have been found to be an unfair and/or deceptive act or practice. See *Britt v. Jones*, 123 N.C. App. 108, 472 S.E.2d 199 (1996).

### i.    Collection of Usurious Interest

51.    The Gilberts properly alleged and this court properly found that the collection of interest in excess of the rate provided for by agreement constitutes an unfair act and/or deceptive practice. This claim was reinstated by the Fourth Circuit. To the extent that the Court conflagrates this claim with the claim for a Truth in Lending disclosure violation regarding the payment schedule, this Court erred as a matter of law.

16

52.     To determine whether GMACM collected usurious interest requires the actual application of the Gilbert payments as made to the outstanding interest and then if more payment is made applied to the principal.

53.     A cursory review of the limited documents provided in connection with this claim, reveals that GMACM at least did not properly apply the Gilbert payments to interest and then if necessary to principal. The payments appear to have been applied without regard to the actual interest accrued during each period.

54.     The Gilberts do not have sufficient information at this stage of this claim to do more than state that the Fourth Circuit found they had stated a claim. The 12(b)(6) standard is the applicable standard at this stage for the proof of claim. This claim should go forward so that additional information can be obtained to support this claim.

**ii.    Failure to Rescind**

55.     The Court erred as a matter of law in concluding that GMACM's refusal to honor rescission does not rise to the level of an unfair and/or deceptive act or practice under N.C. Gen. Stat. § 75-1.1. GMACM's actions in refusing to honor the letter of rescission by consensually unwinding the transaction constitutes a violation of the federal Truth in Lending Act. The federal Truth in Lending Act is distinguishable from a licensure statute such as one in *Walker v. Fleetwood Homes of N. Carolina, Inc*, 362 N.C. 63 (2007).  The federal Truth in Lending Act is an established public policy designed to promote the informed use of credit by the consuming public.

56.     Rescission under the Truth in Lending Act is a sequential process initiated by the borrower when he exercises his right to rescind by sending written notice to the creditor or assignee. 15 U.S.C. § 1635(a); Reg. Z § 226.15. When the borrower exercises his right to

rescind, he is not liable for any finance charge or other charge, and any security interest given by the borrower is becomes void upon the exercise of the right to rescind. 15 U.S.C. § 1635(b). Within twenty days after receipt of a notice of rescission, the creditor shall return to the borrower any money or property given as earnest money, down payment.....and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. Upon the performance of the creditor's obligations under [section 1635] the borrower shall tender the property to the creditor. ...If the creditor does not take possession of the property within 20 days after tender, ownership of the property vests in the borrower without obligation to pay for it. 15 U.S.C. § 1635(b).

57.    The plain language of the statute requires the creditor or assignee to take affirmative steps to respond the borrower's exercise of rescission. The burden is placed on the creditor or assignee hence the protection from liability for parties who are merely servicers. A servicer is not mentioned in sequential process of rescission set out in 15 U.S.C. § 1635. Additionally, some courts have held that sending the letter exercising the right of rescission to the servicer is not effective to exercise rescission. See *Miquel v. Country Funding Corp.*, 309 F.3d 1161(9th Cir. 2002).

58.    The Gilbert letter of rescission was addressed to the holder of the Loan #xxxx and mailed in care of the attorney for the substitute trustee in the state court foreclosure. Under the terms of its Agreement (Exhibit 8), GMACM responded by refusing to honor the Gilberts' rescission.  By this act, GMACM held itself out as having responsibility for decisions regarding rescission and thus the assignee of the creditor subject to liability under the Truth in Lending Act for refusal to honor the exercise of rescission. GMACM is estopped to deny liability for refusal to honor rescission as an assignee.

59.     Under the plan language of Truth in Lending Act, the act of sending the letter exercises rescission. The creditor assignee is charged with the responsibility conducting a review of the disclosure statement and comparing that information to the information in the loan documents for possible material violations and taking steps to unwind the transaction. 15 U.S.C. § 1635. If the creditor or assignee disputes the borrower's right to rescind, the creditor or assignee may seek a judicial determination of the borrower's right to rescind. See *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007).

60.     To the extent the Court asserts that GMACM responded promptly to the Gilbert's "request" and that GMACM offered to reexamine the demand if the Gilberts produced other documents this analysis is flawed. First, the letter of rescission sent by the Gilberts' was not a "request." The act of sending the letter IS the exercise of the right of rescission under the plain language of the Act. 15 U.S.C. § 1635, Reg. Z 226.15. Second, GMACM, if merely a servicer, had no obligation to respond. GMACM by the terms of its Agreement is a creditor assignee. As assignee, GMACM's obligation was to either begin unwinding the transaction or seek a judicial determination of the Gilberts' rights. GMACM did neither. 15 U.S.C. § 1635.

61.     GMACM's refusal to honor the exercise of rescission violated the Truth in Lending Act. GMACM's refusal to honor the exercise of rescission absolutely evinces unfairness to the point of immorality, oppressiveness, and offends established public policy. It is unfair, immoral and oppressive for GMAMC a major mortage servicing company to willfully violate an Act designed to promote the informed use of credit by the consuming public. It is unfair, immoral and oppressive for GMACM, a major mortgage servicing company, to wrongfully place the burden upon the borrower to initial legal action to protect his right to rescind. As a result of

GMACM's violations, the Gilberts have incurred substantial attorney's fees enforcing their right to rescind the loan transaction.

### iii.    Attempting to proceed with foreclosure sale without an Order

62.    On August 18, 2009, the superior court authorized the substitute trustee to proceed with a foreclosure sale of the Gilberts' home. The Gilberts duly gave notice of appeal to the North Carolina Court of Appeals and posted sufficient bond to stay the order authorizing the foreclosure sale. On May 3, 2011, the North Carolina Court of Appeals reversed the trial court's order authorizing the substitute trustee to proceed with a foreclosure sale. On June 13, 2011, David A. Simpson, P.C. Substitute Trustee, filed a voluntary dismissal in this proceeding.

63.    On or about March 15, 2012, GMACM caused to be executed a document entitled "Amended Notice of Substitute Trustee's Foreclosure Sale of Real Property" (hereinafter "Amended Notice") which purported to set for sale on April 17, 2012, the Gilberts' home. Exhibit 2

64.    At the time the Amended Notice was executed no Order was in effect authorizing the substitute trustee to proceed with a foreclosure sale of the Gilberts' home. GMACM caused the Amended Notice to be forwarded to the Hyde County Clerk of Superior Court staff with instructions to stamp filed the Amended Notice, post the Amended Notice on the county courthouse bulletin board, and return the stamp filed copy.

65.    On or about March 23, 2012, the cover letter, Amended Notice and a Certificate of Service were received in the Office of the Hyde County Clerk of Superior Court.   On information and belief, the Amended Notice was stamped filed, posted on the county courthouse bulletin board and the copies were returned.  On March 27, 2012, the Gilberts' counsel received a copy of the Amended Notice. See Exhibits 2,3

20

66.    On March 28, 2012, Gilberts' counsel contacted the Hyde County Clerk of Superior Court to inquire whether the Amended Notice had, despite no order allowing a foreclosure sale, been posted on the courthouse bulletin board. Counsel was informed that the Amended Notice had been posted. Upon demand by counsel, the Hyde County Clerk of Superior Court removed the Amended Notice from the county courthouse bulletin board. See Exhibits 2, 3.

67.    GMACM's conduct in attempting to proceed with a foreclosure of Gilberts' home without an order authorizing such sale constitutes an unfair and/or deceptive act or practice under N.C. Gen. Stat. § 75-1.1. GMACM's conduct had "a tendency or capacity to mislead or created the likelihood of deception." *Walker v. Branch Banking & Trust Co*., 133 N.C. App. 580 (1999).

### iv.    Creating a new endorsement to the Allonge to Note

68.    On May 3, 2011, the North Carolina Court of Appeals reversed the trial court's order authorizing the substitute trustee to proceed with a foreclosure sale. On or about August 22, 2011, GMACM caused to be fedexed to the Gilberts' counsel, a copy of an Adjustable Rate Note and Interest-Only Addendum to Adjustable Rate Promissory Note purportedly signed by Mr. Gilbert together with a copy of an Allonge to Note previously advanced by Deutsche Bank at the state court foreclosure hearing and a new page appended to the aforementioned documents entitled "Note Allonge." See Exhibit 2.

69.    The Note Allonge shows a purported transfer by an "authorized officer of Residential Funding Corporation, LLC as attorney in fact for Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc. Series 2006-QA6 to Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc. Series 2006-QA6." In other words, a purported transfer by Deutsche Bank to Deutsche Bank.

70.    The court of appeals in *In re Simpson* found as follows:

In the present case, the Note is clearly indorsed " PAY TO THE ORDER OF Deutsche Bank Trust Company Americas as Trustee." Thus, pursuant to section 25-3-110(c)(2), the Note is payable to Deutsche Bank Trust Company Americas as Trustee. *See Id.* Because the indorsement does not identify Petitioner and is not indorsed in blank or to bearer, it cannot be competent evidence that Petitioner is the holder of the Note. *See* N.C. Gen.Stat. § 25-1-201(b)(21) (defining " holder" as " [t]he person in possession of a negotiable instrument that is *payable either to bearer or to an identified person that is the person in possession* " ); *Econo-Travel Motor Hotel Corp.,* 301 N.C. at 204, 271 S.E.2d at 57 (concluding that where the defendants produced a copy of the note indorsed to an entity other than the plaintiff, the " defendants established that plaintiff was not the owner or holder of the note" ).

711 S.E.2d 165, 173 (N.C. App. 2011).

71.    The Note Allonge fails for a number of reasons. The Note Allonge was not appended to the Adjustable Rate Note, Interest only Addendum to Adjustable Rate Promissory note and Allonge to Note when the purported original documents were introduced at the state court foreclosure hearing in 2009. The Note Allonge was created sometime outside the time of transfer; therefore the indorsement fails as a matter law. Pursuant to N.C. Gen. Stat. § 25-3-204, North Carolina's adoption of the UCC, an "indorsement means a signature...that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument; (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument...."    This indorsement was not made for any of the above purposes but as a failed attempt to create a new indorsement.

72.    Additionally, a closer review of the indorsement to "Deutsche Bank Trust Company Americas as Trustee" which appears on the Allonge to Note reveals that this indorsement was purportedly made by a vice president of Residential Funding Corporation. The new indorsement was purportedly made by an officer of Residential Funding Company, LLC.....an entirely different entity.

22

73.    The Note Allonge showing a purported transfer from Deutsche Bank to Deutsche Bank has a tendency or capacity to mislead or created the likelihood of deception. *Walker v. Branch Banking & Trust Co.* 133 N.C. App. 580 (1999) and therefore constitutes an unfair and/or deceptive act or practice under N.C. Gen. Stat. 75-1.1.

###    v.    Attempted Wrongful Foreclosure

74.    While not a named party to the state court foreclosure action, RFC and GMACM assumed responsibility for decisions regarding foreclosure. See Ex. 8. GMACM supplied the affidavits of default used by Deutsche Bank in the foreclosure action. The GMACM affidavit acknowledges the fact that the Gilberts sent a letter exercising the right to rescind the loan transaction under the Truth in Lending Act. Yet, the affiant proceeds to aver the purported transfers and assignments of the Adjustable Rate Note, the validity of Deutsche Bank as the holder of the note, and the default of the Gilberts. The affidavit is wrongful and misleading to the extent that it ignores the statutory sequential process in 15 U.S.C. § 1635, Reg. Z § 226.15 set in motion by the Gilberts' rescission. Deutsche had no authority to initiate foreclosure proceedings in the face of a valid exercise of rescission. Deutsche/GMACM's remedy was to seek a judicial determination as to its obligations not proceeds with foreclosure. See *American Mortgage Network, Inc. v. Shelton,* 486 F.3d 815,821 (4th Cir. 2007).

75.    Moreover, the GMACM affidavit is wrongful, misleading and unfair because of the admissions by the affiant Stephan made under oath at deposition. Jeffrey Stephan, the affiant in the case at bar, was deposed under oath on June 7, 2010, at the law office of Lundy Flitter Beldecos & Berger, P.C. in Narberth, Pennsylvania in *Federal National Mortgage Association v. Bradbury*, Maine District Court, District Nine, Division of Northern Cumberland, Docket No. BRI-RE-09-65. (Exhibit 7)

76.     In the *Bradbury* case, Jeffrey Stephan had executed, as Limited Signing Officer for GMAC Mortgage, LLC, an affidavit in support of Plaintiff's Motion for summary judgment in a judicial foreclosure. This affidavit was dated August 5, 2009. (App. 1-4)

77.     During the deposition, Mr. Stephan admitted the following:

(a)     that he had previously testified in a Florida state court case in December 2009, that his team brought to him approximately 10,000.00 affidavits and assignments in a month to be used in foreclosure actions. (Ex 4, pp.46-47, ls 23-12)

(b)     that at the time of the June, 2010, deposition, he estimated he was signing "anywhere from six to 8,000 documents." (Ex. 4, p. 46, ls 19-22)

(c)     that he did not sign affidavits in the presence of a notary public (Ex. 4 p. 56, ls 16-18)

(d)     that he did not read every paragraph of the summary judgment affidavits he signed that were prepared by Lender Processing Services, Inc.  (Ex. 4, pp. 61-64)

(e)     that he did not check to see if all the exhibits referenced in the affidavit were actually attached to the affidavit at the time he signed the affidavit. (Ex. 4, p. 54, ls 16-21)

(f)     that he did not inspect any of the exhibits attached to the affidavits. (Ex. 4, p. 21, p 54)

(g)     that he previously testified in the Florida deposition that he relied upon the attorney network requesting the affidavits to ensure the documents that he received and signed were correct and accurate.

(h)    that he continued to rely upon the attorney network requesting the affidavits to ensure the documents he signed were correct and accurate. (Ex. 4, p. 57, ls 20-25)

(i)    that other than the due date and balances due, he did not know whether any other part of the affidavits he signed were true. (Ex. 4 , pp. 67-68)

(j)    that he had no control over and was not responsible for the system, Lender Proceeding Services, Inc., used to create, maintain and calculate the amounts allegedly due from borrowers. (Ex. 4,  p. 20, ls 19-25)

(k)    that he had no knowledge about how GMAC ensures the accuracy of the data entered into the system. (Ex. 4, p. 30, ls. 10-13)

(l)    that the practice he described in signing affidavits described as summary judgment affidavits was the practice he used for signing ALL (emphasis added) affidavits. (Ex. 4, p. 63, ls 16-20)

78.    Jeffrey Stephan was deposed six months earlier in December, 2009, in a Florida state court foreclosure case, *GMAC Mortgage, LLC v. Neu, et. als.,*  Palm Beach County, Florida, Case No. 50 2008 CA). His Florida testimony is consistent with the testimony recited above:

(a)    he did not sign the affidavits based on his personal knowledge and that he relied on others, (Ex 5, ls 6-15);

(b)    his team did not verify the accuracy of the information, he relied on others to ensure that the information in the affidavits was correct and accurate, (Ex. 5 pp. 36-37, ls 16-25 and 1-4);

(c)    he did not ascertain who the current promissory note holder was, (Ex. 5 p

31, ls 12-14) even though his affidavits always stated or implied that the moving party

was the holder of the note. (Ex. 5)

(d)    he routinely signed affidavits outside the presence of a notary public. (Ex.

5 p 13)

79.    In May, 2006, another Florida court not only admonished GMAC, it sanctioned

the Plaintiff lender for GMAC's affidavit signing practices. (Ex 6) .As part of its order, the

Florida state court required GMAC to file a Notice of Compliance, indicating its commitment to

modify its affidavit signing procedures to conform to proper practices. (Ex. 6)

80.    On September 24, 2010, the Maine federal district court in the *Bradbury* case

sanctioned the Plaintiff, Federal National Mortgage Company for the actions of its servicing

agent GMAC, LLC based in part upon the deposition testimony of Jeffrey Stephan finding that

the submission of Mr. Stephan's affidavit was an act of bad faith.  (Ex 7)

81.    GMACM's conduct, through the affidavits of its employee Stephan, constitute

unfair and deceptive acts and practices. These actions of GMACM support a separate, additional

ground for a violation of N.C. Gen. Stat. § 75-1.1. separate and apart from the affidavit's

misrepresentation of the noteholder's identity.

82.    Stephan admitted that he NEVER ascertained the accuracy of the information to

which he claimed he had personal knowledge. Stephan's admissions show a pattern and practice

of conduct on the part of GMACM which defeated every protection in place under the law to

ensure that such deception does not occur. Stephan routinely signed affidavits outside the

presence of the notary. Stephan NEVER had personal knowledge of the information to which he

averred.

26

For these reasons, the Debtors' objection to the Gilberts' unfair acts and practices claims should be overruled.

### D. Debt collection violations-

83.    The Gilberts dispute the Court's interpretation that the phrase "in a legal proceeding" modifies the phrase in 75-54(4) before the word "and". Leaving aside for the moment this argument, GMACM is alleged to be the functional holder assignee with responsibility for decisions regarding rescission and foreclosure. In this capacity, fraudulent affidavits were advanced in court proceedings in violation of N.C. Gen. Stat. 75-54(4).  These affidavits were advanced at the clerk's hearing, the trial de novo in superior court, on appeal to the court of appeals in both the principal brief and in response to motions to remand and to take judicial notice, and in the Gilbert Litigation. These affidavits were advanced despite substantial information to the contrary contained in the deposition testimony of Stephan. See Exhibits. 4 and 5) GMACM is subject to the statutory penalty for each violation, actual damages and attorney's fees. The statutory penalty increased during the course of these representations from $2000 to $4000. The state court violations are subject to $2000 for each violation while the Gilbert Litigation is subject to $4000 statutory penalty.

84.    Fraudulent representations by representatives of GMACM that Deutsche is the holder of the note including, but not limited to, letter from counsel dated August 22, 2011, letter from counsel dated March 22, 2013 are in violation of N.C. Gen. Stat. 75-54 as the enumerated listing is not an exhaustive list but rather as stated "including but not limited to"

85.    Placement of foreclosure notice on the courthouse bulletin board on or about March 23, 2012 after the reversal by the NC COA and with no pending order for sale in violation of N.C. Gen. Stat. § 75-54(4)

86.    Telephone calls by representatives of GMACM directly to the Gilberts the week of the hearing for the preliminary injunction in what became the Gilbert Litigation follows:

```
9/12/2009  8:39am
9/15/2009  6:41pm
9/16/2009  1:20pm
9/17/2009  3:13pm
9/18/2009  2:02pm
9/19/2009  11:35 am
```

For these reasons, the Debtors' Objection to the Gilberts' debt collection practices claim should be overruled.

87.    The Gilberts hereby incorporate by reference the argument contained within their Response to the Debtors' Objection to Proof of Claim [Dkt No. 5004].

CONCLUSION

The Gilberts respectfully request a reconsideration of the Memorandum Opinion and Order Sustaining in part and Denying in Part Debtors' Objection to Proof of Claim No. 1991.

Dated: December 2, 2013                    /s/ Katherine S. Parker-Lowe
                                           Katherine S. Parker-Lowe
                                           Attorney for Gilberts
                                           NC State Bar #13318
                                           35 Miss Elecia Lane, Post Office Box 730
                                           Ocracoke, North Carolina 27960
                                           katherine@ocracokelaw.com
                                           252-928-1000