UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

In re:

Residential Capital, LLC, *et. al.*

Debtors.

Case No. 12-12020 (MG)
Chapter 11
Jointly Administered

**MEMORANDUM OPINION AND ORDER SUSTAINING DEBTORS' THIRTIETH OMNIBUS OBJECTION TO CLAIMS AS TO CLAIM NO. 19 FILED BY BARI B. ESKANOS AND AMI B. ESKANOS**

*A P P E A R A N C E S:*

MORRISON & FOERSTER
*Counsel for Residential Capital, LLC, et al.*
1290 Avenue of the Americas
New York, NY 10104
By:    Jordan A. Wishnew, Esq.


BARRY B. ESKANOS AND AMI B. ESKANOS
*Pro Se*
3122 Pine Tree Drive
Miami Beach, FL 33140
By:    Barry B. Eskanos


**MARTIN GLENN
UNITED STATED BANKRUPTCY JUDGE**

Pending before the Court is the *Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims—Books and Records)* (the "Objection"). (ECF Doc. # 4887.) Through the Objection, Residential Capital, LLC ("ResCap") and its affiliated debtors in the above captioned chapter 11 cases (the "Chapter 11 Cases"), as debtors and debtors in possession (collectively, the "Debtors"), seek an order disallowing and expunging, among others, Proof of Claim Number 19 (the "Claim") filed by Barry B. Eskanos and Ami B. Eskanos (the

1

"Claimants"). In support of their Motion, the Debtors filed the Declarations of Deanna Horst (Objection Ex. 1), Norman S. Rosenbaum (Objection Ex. 2), and Robert D. Nosek (Objection Ex. 3), along with a Supplemental Declaration of Deanna Horst (the "Supplemental Decl.," ECF Doc. # 5297-3.) On September 27, 2013, the Claimants filed a response (the "Opposition," ECF Doc. # 5250) and on October 7, 2013, the Debtors filed a reply (the "Reply," ECF Doc. # 5297).

For the reasons explained below, the Court **SUSTAINS** the Debtors' Objection and **EXPUNGES** Claim Number 19.

## I.    BACKGROUND

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On August 29, 2012, the Court entered an order setting the bar date of November 9, 2012 for filing non-governmental proofs of claim in the Chapter 11 Cases. (ECF Doc. # 1309.) The Court thereafter entered an Order Extending the Bar Date for Filing Proofs of Claim to November 16, 2012. (ECF Doc. # 2093.) On March 21, 2013, the Court entered an order approving the procedures for the filing of objections to proofs of claim in these Chapter 11 Cases (the "Procedures Order," ECF Doc. # 3294). The Court appointed Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 cases (ECF Doc. # 798). The Claimants filed filed Claim Number 19 on May 24, 2012.

### A. The Eskanos Loan and Foreclosure Action

The Claim relates to litigation involving real property located in Florida. On October 28, 1999, the Eskanoses executed a loan evidenced by a note with a principal amount of $364,000 in favor of Washington Mutual Bank, FA ("WaMu[1]") and secured by real property located at 3122

---

[1]    On January 1, 2005, Washington Mutual Bank, FA changed its name to Washington Mutual Bank.

2

Pine Tree Drive, Miami Beach, Florida. (*See* Supplemental Decl. ¶ 8.) The Claimants defaulted on the loan in October 2004, and in or about March 2005, WaMu filed a foreclosure action against the Claimants in Florida state court. (Reply ¶ 14.) The Claimants responded to the action in May 2005 and filed counterclaims against WaMu, alleging violations of the Consumer Protection Act, breach of the duty of good faith and fair dealing, and unjust enrichment. (*Id.*) In September 2005, the Claimants amended the counterclaims to add claims for violations of the Truth in Lending Act, the Florida RICO statute, breach of fiduciary duty, and violations of the federal and state Fair Debt Collection Practices Act ("FDCPA"). (*Id.* ¶ 15.)

In May 2009, the Claimants and WaMu cross moved for summary judgment. (*Id.* ¶ 16.) On October 29, 2009, the Florida court granted summary judgment to WaMu, and on December 9, 2009, the court entered a final judgment of foreclosure. (*Id.*) After losing an appeal of the judgment of foreclosure in the state appellate court, the Claimants petitioned for a writ of mandamus from the Florida Supreme Court, but the Florida Supreme Court denied that petition on February 4, 2013. (*Id.* ¶ 17.)

While the foreclosure action was pending, WaMu[2] transferred the Claimants' loan to Residential Funding Company, LLC ("RFC"). (*See* ECF Doc. # 5297-7). WaMu continued with the foreclosure action because under Florida law, the case could proceed in the name of the original plaintiff or in the name of the transferee. *See* FLA. R. CIV. P. 1.260(c) ("In case of any transfer of interest, the action may be continued by . . . the original party . . . ."). On October 27, 2011, Debtor GMAC Mortgage, LLC ("GMACM") obtained the servicing rights to the Claimants' property from Litton Loan Servicing LP. (Supplemental Decl. ¶ 8.)

---

[2] The Court takes judicial notice that on September 25, 2008, the Office of Thrift Supervision closed WaMu and named the Federal Deposit Insurance Corporation as receiver. The holding company Washington Mutual, Inc. filed for chapter 11 protection the next day.

3

### B. The Claimants' Bankruptcy

While their appeal of the judgment of foreclosure was pending, the Claimants filed a voluntary chapter 13 petition with the Southern District of Florida Bankruptcy Court docketed as Case Number 11-40292. On December 20, 2011, the Claimants commenced an adversary proceeding against WaMu. (Reply ¶ 19.) The Claimants' Claim references this adversary proceeding as the basis for the Claim. In the adversary proceeding, the Claimants sought to set aside the Florida state court's ruling granting WaMu summary judgment. (*Id.*) The Claimants also alleged fraud, violations of the FDCPA, civil conspiracy, mail and wire fraud, and bank fraud. (*Id.*) By the time the Claimants initiated the adversary proceeding, though, WaMu had already transferred its interest in the property to GMACM and RFC. (*See id.* ¶ 13.)

WaMu did not respond to the adversary complaint, and following a motion by the Claimants, a clerk's default was entered on February 9, 2012, against WaMu. (ECF 11-03107 Doc. # 9.) But on February 17, 2012, the bankruptcy court vacated that clerk's default due to service deficiencies, so the Claimants' motion for default judgment was denied. (ECF 11-03107 Doc. # 18.) The Claimants then filed a motion for reconsideration with the bankruptcy court and again filed a motion for default judgment. (ECF 11-03107 Doc. ## 23, 25, 27.) While those motions were pending, GMAC and RFC filed a motion to intervene on the grounds that GMAC and RFC had an interest in the Claimants' property. (ECF 11-03107 Doc. # 33.)

The Claimants opposed that motion to intervene, arguing that GMAC and RFC were conspiring to circumvent a default judgment by obtaining the Claimants' loan by fraudulent conveyance. (ECF 11-03107 Doc. # 38.) On April 15, 2012, the bankruptcy court denied the Claimants' motion to reconsider denial of a default judgment against WaMu (ECF 11-03107 Doc. # 51) and granted GMAC and RFC's motion to intervene. (ECF 11-03107 Doc. # 52.) The

Claimants' adversary case was dismissed on April 23, 2013, after dismissal of their main bankruptcy case because the Claimants did not meet the eligibility requirements of 11 U.S.C. § 109(e).

### C. The Claim

Through the Claim, the Eskanoses assert that the Debtors owe them $264,500,000 for bank fraud, mail fraud, wire fraud, debt collection violations, and civil conspiracy. In their proof of claim, the Claimants referenced their adversary proceeding filed against WaMu in which GMAC and RFC intervened. The proof of claim did not attach any supporting documentation. In their Opposition, though, the Claimants attach over 300 pages of documents and argue that their claim is premised on the Debtors' purported admission that they "intentionally violated the Florida Fraudulent Transfer Act in order to avoid enforcement by the Creditors . . . of the pending default judgment against [WaMu]." (Opposition at 2.) Additionally, the Claimants argue that GMAC perpetrated various other frauds (*id.* ¶ 14) and falsely represented to a consulting company conducting an independent foreclosure review that the Claimants' mortgage was not in the foreclosure process during the period of January 1, 2009 to December 31, 2010. (*Id.* ¶ 10.)

## II.   DISCUSSION

### A. Legal Standard

Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If the claim is properly filed, it is *prima facie* evidence that the claim is valid. *See* FED. R. BANKR. P. 3001(f). A party in interest may object to a proof of claim, and once an objection is made, the court must

5

determine whether the objection is well founded.  *See* 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. 2013).

"Although Rule 3001(f) establishes the initial evidentiary effect of a filed claim, the burden of proof rests on different parties at different times.  *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).  The party objecting to the proof of claim bears the burden of "providing evidence to show that the proof of claim should not be allowed."  *In re MF Global Holdings Ltd.*, Nos. 11-15059, 11-02790, 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012).  If the objecting party satisfies its initial burden and "the presumption of *prima facie* validity is overcome—e.g., the objecting party establishes that the proof of claim lacks a sounds legal basis—the burden shifts to the claimant to support its proof of claim unless the claimant would not bear that burden outside of bankruptcy."  *Id*. (citing *In re Oneida Ltd.*, 500 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion.  The burden then shifts to the claimant if the objector produces evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.").

### B.  The Claim Does Not Support Any Liability for Fraudulent Transfer.

The Claimants repeatedly assert in their Opposition that the Debtors are liable under the Florida Fraudulent Transfer Act because the GMAC accepted assignment of the Claimants' assets without paying adequate consideration to help WaMu avoid a default judgment.  (*See, e.g.*, Reply ¶¶ 4, 11.)  The Court need not even analyze the Florida statute because the allegations are fundamentally flawed in several aspects.

6

*First*, the Claimants never obtained a default judgment against WaMu.  Rather, the clerk of the court entered a default, but when the Eskanoses asked for entry of default judgment, the judge refused to grant the relief.  In the first instance, the court denied entry of a default judgment because the Claimants did not establish proper service.  (*See* ECF 11-03107 Doc. # 18.)  When asked to reconsider, the bankruptcy court again denied a request for default judgment because the Claimants attempted to serve Washington Mutual Bank, FA, which ceased to exist on January 1, 2005.  (*See* ECF 11-03107.)  Thus, there was never any default judgment being avoided.

*Second*, GMAC and RFC obtained an interest in the Claimants' property *before* the Claimants filed their adversary proceeding against GMAC.  (*See* Supplemental Decl. ¶ 8.) Moreover, GMAC obtained the servicing rights from Litton Loan Servicing LP, not from WaMu.  (*Id.*)  The Claimants' evidence simply does not support an allegation that the Debtors obtained an interest in the Claimants' property to help WaMu evade a default judgment.

### C. The Claimants' Allegations of Mail Fraud, Wire Fraud, and Bankruptcy Fraud Are Unsupported.

In their Opposition, the Claimants assert that the Debtors are liable for mail fraud, wire fraud, and bankruptcy fraud.  (*See* Opposition ¶14.)  But the Claimants do not support these allegations other than baldly reciting the elements of the cause of action (e.g., "Mail Fraud, 18 U.S.C. Section 1341; Preparing and filing of fraudulent documents by means of the US Mail System").  The Plaintiffs attached hundreds of pages of documents as exhibits to their Opposition, but those documents fail to support accusations of mail fraud, wire fraud, or bankruptcy fraud against the Debtors.  Since the Claim only states conclusory accusations of fraud, it does not plausibly indicate that the Debtors are liable for any fraud.  And to the extent the supposed fraud relates to WaMu's conduct, WaMu is not a party to the bankruptcy, the

Debtors have not assumed any of WaMu's liabilities, and WaMu already obtained summary judgment against the Claimants on allegations of fraud and violations of debt collection laws.

### D. The Claimants Assertions Regarding the Independent Foreclosure Review, Even If True, Do Not Indicate Any Debtor Liability.

The Claimants allege that GMAC falsely represented to Rust Consulting that the Claimants were not in the foreclosure process from January 1, 2009 to December 31, 2010. (Reply ¶ 10.) Rust Consulting was conducting an independent foreclosure review at the time. Indeed, the Claimants attach a document that appears to verify this allegation. (*See id.* at 70 (finding that Eskanoses were "not eligible for the Independent Foreclosure Review" because "GMAC Mortgage, LLC's records indicate that your mortgage loan was not in the foreclosure process during the eligible review period of January 1, 2009 to December 31, 2010").) Nevertheless, the Claimants attached documentation to their Opposition indicating that a party was only eligible for independent foreclosure review if its loan was being serviced by one of fourteen servicers. (*See id.* at 41–42.) Although that list included GMAC and WaMu, it did not include Litton Loan Servicing, which was servicing the Claimants' loan during the foreclosure proceedings. (*See id.* at 42, 350–54.) So the Claimants' loan still would not have been eligible for review even if GMAC had informed Rust Consulting of the foreclosure proceeding.

### E. The Claim Does Not Support Allegations of Civil Conspiracy

In the proof of claim, the Claimants list civil conspiracy as one of bases for their Claim. But the court documents from the Claimants' adversary proceeding in the Florida bankruptcy court do not support a conspiracy claim against the Debtors. Rather, the allegations center on a purported conspiracy involving WaMu and other non-debtors to forge the Claimants' promissory note, to endorse the note without authorization, and to file false affidavits and make false representations. These allegations do not indicate any Debtor involvement in the alleged

8

conspiracy, and the Claimants' Opposition likewise fails to plausibly indicate any Debtor involvement in a purported conspiracy.

### III.    CONCLUSION

Claim Number 19 alleges that the Debtors are liable for various frauds or misrepresentations, but the Claimants have not offered adequate support for these assertions other than (1) conclusory and self-serving accusations, or (2) allegations premised on a misunderstanding of the law and facts.  Although the Claimants' Reply exceeds 300 pages of so-called evidence, most of that "evidence" consists of a 215-page list of accusations against myriad non-debtors as well as GMAC and RFC.  These accusations are mostly irrelevant to the Debtors and do not support the Claimants' proof of claim.  The Debtor's Objection is therefore **SUSTAINED**, and Claim Number 19 is **EXPUNGED**.

**IT IS SO ORDERED.**

Dated: December 5 2013
      New York, New York

                        *_____Martin Glenn_____*
                        MARTIN GLENN
                        United States Bankruptcy Judge