1

1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 Case No. 12-12020-mg

5 - - - - - - - - - - - - - - - - - - - -x

6 In the Matter of:

7

8 RESIDENTIAL CAPITAL, LLC, et al.,

9

10            Debtors.

11

12 - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            December 3, 2013

19            2:13 PM

20

21 B E F O R E:

22 HON. MARTIN GLENN

23 U.S. BANKRUPTCY JUDGE

24

25

1

2   Status Conference

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Hana Copperman

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1

2   A P P E A R A N C E S :

3   MORRISON & FOERSTER LLP

4         Attorneys for Debtors

5         1290 Avenue of the Americas

6         New York, NY 10104

7

8   BY:   GARY S. LEE, ESQ.

9         CHARLES L. KERR, ESQ.

10

11

12   KIRKLAND & ELLIS LLP

13         Attorneys for Ally Financial, Inc.

14         601 Lexington Avenue

15         New York, NY 10022

16

17   BY:   RAY C. SCHROCK, P.C.

18

19

20   LOWENSTEIN & SANDLER LLP

21         Attorneys for New Jersey Carpenters, et al.

22         1251 Avenue of the Americas

23         New York, NY 10020

24

25   BY:   MICHAEL S. ETKIN, ESQ.

1

2   SEWARD & KISSEL LLP

3          Attorneys for U.S. Bank, NA as RMBS Trustee

4          One Battery Park Plaza

5          New York, NY 10004

6

7   BY:   ARLENE R. ALVES, ESQ.

8          MARK D. KOTWICK, ESQ.

9          THOMAS ROSS HOOPER, ESQ.

10

11

12   MILBANK, TWEED, HADLEY & MCCLOY, LLP

13          Attorneys for Junior Secured Noteholders

14          One Chase Manhattan Plaza

15          New York, NY 10005

16

17   BY:   GERARD UZZI, ESQ.

18          DENNIS C. O'DONNELL, ESQ.

19          DAVID S. COHEN, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

1

2  MUNGER, TOLLES & OLSON LLP

3       Attorneys for Berkshire Hathaway

4       355 South Grand Avenue

5       35th Floor

6       Los Angeles, CA 90071

7

8  BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

9

10

11  ROPES & GRAY

12       Attorneys for Steering Committee of RMBS Holder Group

13       Prudential Tower

14       800 Boylston Street

15       Boston, MA 02199

16

17  BY:   D. ROSS MARTIN, ESQ.

18

19

20  CARTER LEDYARD & MILBURN LLP

21       Attorneys for Talcott Franklin Group

22       2 Wall Street

23       New York, NY 10005

24

25  BY:   AARON R. CAHN, ESQ.

6

1

2  KRAMER LEVIN NAFTALIS & FRANKEL LLP

3        Attorneys for Official Creditors' Committee

4        1177 Avenue of the Americas

5        New York, NY 10036

6

7  BY:   DOUGLAS MANNAL, ESQ.

8        KENNETH H. ECKSTEIN, ESQ.

9        STEVEN D. ZIDE, ESQ.

10

11

12  REED SMITH LLP

13        Attorneys for Wells Fargo Bank, N.A., as collateral agent

14        599 Lexington Avenue

15        29th Floor

16        New York, NY 10022

17

18  BY:   ERIC A. SCHAFFER, ESQ.

19

20

21

22

23

24

25

1

2  WINSTON & STRAWN LLP

3          Attorneys for Wells Fargo Bank, N.A.

4          200 Park Avenue

5          New York, NY 10166

6

7  BY:   JAMES DONNELL, ESQ. (TELEPHONICALLY)

8          NATHAN P. LEBIODA, ESQ. (TELEPHONICALLY)

9

10

11  KASOWITZ BENSON TORRES & FRIEDMAN LLP

12          Attorneys for Federal Housing Finance Agency

13          1633 Broadway

14          New York, NY 10019

15

16  BY:   JULIA A. BALDUZZI, ESQ. (TELEPHONICALLY)

17

18

19  LATHAM & WATKINS LLP

20          Attorneys for Deutsche Bank

21          885 Third Avenue

22          New York, NY 10022

23

24  BY:   RICHARD D. OWENS, ESQ. (TELEPHONICALLY)

25

```
 1
 2    ALSTON & BIRD LLP
 3          Attorneys for Wells Fargo Bank, N.A.
 4          One Atlantic Center
 5          1201 West Peachtree Street
 6          Atlanta, GA 30309
 7
 8    BY:   JOHN C. WEITNAUER, ESQ. (TELEPHONICALLY)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

RESIDENTIAL CAPITAL, LLC, ET AL.                                    9

1                    P R O C E E D I N G S

2          THE COURT:  Okay.  Mr. Eckstein.  Let's try it again.

3          MR. ECKSTEIN:  Thank you, Your Honor.  Your Honor,

4    we're here today in a status conference in the ResCap case, and

5    we're following up on the call we had with Your Honor Wednesday

6    afternoon before Thanksgiving when we reported that the

7    parties, the plan proponents, the consenting claimants and

8    representatives of the JSNs had reach an agreement in principal

9    to resolve the remaining objections by the JSNs to the plan and

10   to resolve the JSN adversary proceedings that were pending

11   before Your Honor.

12          Fortunately, we've been able to utilize the time

13   between Wednesday and today -- with the exception of

14   Thursday -- to build a consensus around documents.  And while

15   we had aspired to file the documents yesterday, I guess, as

16   proven to be the case more than once in this case, we got them

17   filed, but we got them filed only a short time prior to today's

18   hearing.

19          As a result, I can assume that Your Honor, at best, is

20   only had a chance to peruse the documents --

21          THE COURT:  I looked at the 77 changed pages, not the

22   other 378 -- or 378 minus 77.

23          MR. ECKSTEIN:  I appreciate that, Your Honor, and to

24   that extent we tried, but I apologize for the fact that it came

25   in later than we have hoped.

RESIDENTIAL CAPITAL, LLC, ET AL.                10

1          THE COURT:  Right.

2          MR. ECKSTEIN:  What I would propose to do today is

3     give Your Honor a more detailed report on essentially the

4     nature of the agreement and then Mr. Lee will address how we

5     intend to proceed between now and next Wednesday and really

6     address with the Court how Your Honor would like us to be most

7     effective at the hearing that's currently scheduled for

8     Wednesday, December 11th.

9          So, if I may, Your Honor, let me briefly describe the

10    agreement that's been reached, and it's frankly a simple deal.

11    I don't need to belabor all of the history because Your Honor

12    has lived it quite intensely over the last several weeks.

13          THE COURT:  The several weeks?

14          MR. ECKSTEIN:  It all seems to -- it all seems to meld

15    into a long, long, intensive period of time.

16          THE COURT:  It has been a long, intensive period of

17    time.

18          MR. ECKSTEIN:  There really has not been a lot of lag

19    time since May of 2012 in this case, I mean, when it comes down

20    to it.  But as a result of the good offices of Judge Peck who

21    continued to cajole and encourage the parties to dialogue and,

22    in the midst of the phase 2 litigation and the confirmation

23    hearing, the parties were able to reach an agreement that

24    provides for a compromise and settlement with the JSNs that

25    would provide for a payment of all unpaid principal and pre-

1  petition interest, plus a payment of 125 million dollars that

2  would be in full satisfaction of all amounts that are due and

3  owing to the JSNs in respect to post-petition interest, fees,

4  costs, expenses, indemnities and any other claim or obligation

5  that might be due and owing to the JSNs in connection with

6  their claims in the ResCap case.

7          The payments will be made to the JSNs in cash, and

8  it's contemplated that the payments will be made either on or

9  one day following the effective date of the plan, and the

10  documentation contemplates, and one of the important elements

11  of the transaction was that the plan will go effective during

12  2013.  And as Your Honor will see, in the changed documents we

13  contemplated that the estate will use best efforts to go

14  effective by December 19th and has agreed to go effective by

15  December 24th.

16          That obviously entails certain important assumptions.

17  The first assumption is that the Court will be comfortable

18  entering a confirmation order on or about December 11th, and it

19  also assumes that the Court will be comfortable in light of

20  the, we think at this point, overwhelming consensus in the case

21  and the resolution of what we believe are essentially all

22  objections to confirmation, that the Court will be comfortable

23  waiving the automatic stay in Rule 3020(e) of the Bankruptcy

24  Rules, to allow the plan to go effective without waiting the

25  fourteen days.

1      In the event the Court is able to address those two

2  assumptions satisfactorily, we believe, as a business matter,

3  the estate will be in position to go effective certainly by the

4  24th, and we actually believe we can do so by the 19th of

5  December.  And we spoke this morning with Mr. Brodsky who's the

6  liquidating trustee who is readying to assume his

7  responsibilities, and both Mr. Brodsky and the debtor have

8  indicated as a business matter that they would be prepared to

9  go effective on that timetable.

10      And we would hope, assuming appropriate notices and

11  approvals can be obtained that in addition to going effective,

12  we would endeavor, assuming we have the time, to actually make

13  an initial distribution in respect to the liquidating trust

14  units before the end of 2013, although that is a somewhat more

15  ambitious task.  But we certainly will be in a position to go

16  effective and we think if we aren't able to make the initial

17  distributions on the units before the end of the year, we will

18  be able to do during the early part of January.

19      So we think that, from a timetable standpoint, this

20  resolution is extremely advantageous to the estate and all

21  creditors and will allow the estate to satisfy the goals that

22  we have of emerging during 2013.

23      As Your Honor recalls, we had a December 15th deadline

24  in the original plan, and as part of the amendment, AFI has

25  agreed to extend its closing deadline as well to December to --

1  no later than December 24th, so that would be consistent with

2  the deadline that we've agreed to in connection with the

3  settlement of the JSNs.

4         But, again, Your Honor, this is very much dependent

5  upon the Court being comfortable that it will be in a position

6  to enter the confirmation order and waive the 3020(e) stay.  I

7  wanted to highlight those things at the outset, and to the

8  extent Your Honor needs any support for those items, we should

9  try to flag that and we'll be in a position to provide that to

10  Your Honor either prior to or in connection with the December

11  11th hearing.

12         The plan contemplates that -- we already have fairly

13  broad, if not overwhelming, support from the consenting

14  claimants and from the JSNs for the settlement that's been

15  reached.  There were a few parties who were waiting for the

16  filing of the plan documents to be able to review the terms

17  publicly and we're hopeful that, to the extent there are any

18  remaining members of the consenting claimant group who need to

19  provide formal support, we'll have that in hand by tomorrow.

20         But at this point in time, we're satisfied that there

21  is sufficient consensus both on the consenting claimants' side

22  of the JSN side that this settlement has business support and

23  will have legal support necessary for the Court to approve this

24  next week.

25         What's contemplated is that a notice is going to be

RESIDENTIAL CAPITAL, LLC, ET AL.                    14

1   provided today to all JSN holders and the amendment

2   contemplates that the JSNs will have an opportunity to change

3   their vote to accept the plan.  The members of the ad hoc group

4   and the other JSN holders who we've been dealing with in

5   connection with the settlement have indicated that they intend

6   to change their vote and we've been advised that, even before

7   the notice goes out, more than ninety percent of the JSNs will

8   have agreed to change their vote to support a plan.

9           THE COURT:  By number and amount?

10          MR. ECKSTEIN:  I know by amount.  Mr. Uzzi can speak

11   in more specifics as to number because it's a little more

12   complicated to compute, but I know that in amount we have more

13   than ninety percent that have already indicated that they are

14   going to be supportive.

15          THE COURT:  Let me ask this.  To your knowledge, are

16   there any remaining objections from JSN holders?

17          MR. ECKSTEIN:  We are not aware of any remaining

18   objections from JSN holders and we don't expect that any will

19   surface, but the intention was to give the notice out today,

20   and give all JSN holders the opportunity to change their vote.

21          The way the amendment is structured, the JSNs in

22   various configurations -- there's a JSN -- there's the ad hoc

23   group, there's the JSN holders, there's the current indenture

24   trustee, there the former indenture trustee, there's the

25   collateral agent.  So there are many JSN entities.  They're

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1   going to be treated exculpated parties under the plan, and

2   they're going to be beneficiaries of a release under the plan.

3          The plan contemplates that those JSN holders who

4   change their vote and vote in favor of the amended plan will be

5   the beneficiaries of the exculpated parties.  So we wanted to

6   make sure that people had an opportunity to change their vote

7   between now and next Wednesday so that they could, if they

8   wanted to, be beneficiaries of the exculpation; to the extent

9   the Court approves it, they could do so.

10          THE COURT:  Sir, it may be that Mr. Uzzi or Mr. Shore

11   are better able to answer this, but have all members of -- all

12   current members of the ad hoc group indicated their plan to

13   support -- their intention to support the amended plan?

14          Mr. Uzzi?

15          MR. UZZI:  For the record, Gerard Uzzi of Milbank

16   Tweed for the ad hoc group.  Because it just became public,

17   Your Honor, we haven't had the opportunity to communicate with

18   everybody.

19          Where things stand now, based upon our review of the

20   voting certification and our conversations with the large

21   holders, we fully expect to be able to deliver an accepting

22   class both in amount and by number.

23          I don't have a reason to believe now that we are not

24   going to get complete support from the ad hoc group.  And what

25   we have, Your Honor, just to, if I may, lay a little bit of a

1  foundation, the ad hoc group is about fifty percent, roughly,

2  of the outstanding issue; Berkshire is about forty percent.

3  Between Berkshire and the members of the ad hoc group, I've

4  already communicated with eighty percent.

5          There is probably another ten percent that we'll call

6  cats and dogs which --

7          THE COURT:  You don't want to call them that, but

8  that's all right.

9          MR. UZZI:  That -- well, ten percent that are just

10  outside --

11          THE COURT:  Dogs bite sometimes.

12          MR. UZZI:  And cats scratch.

13          THE COURT:  Yeah.

14          MR. UZZI:  We'll -- in fairness to those, we'll work

15  with the debtors and try to get a communication out to them as

16  well, Your Honor.

17          THE COURT:  Let me ask this, and I don't really care

18  who responds to this, but what is the difference, if any, in

19  treatment of JSNs that consent and switch their votes and those

20  who do not?

21          MR. UZZI:  Those who do not -- those who vote -- those

22  who have already voted no and don't switch their vote, so

23  therefore, they're still voting no, are not entitled to the

24  debtor releases --

25          THE COURT:  They get the same cash --

1          MR. UZZI:  -- and the exculpation --

2          THE COURT:  -- distribution but they don't get the

3     release.

4          MR. UZZI:  They get the same cash distribution.

5          THE COURT:  They don't give or get the release.

6          MR. UZZI:  They don't -- well, they have the third-

7     party release imposed upon them, but the mutual consensual

8     releases, they neither give nor get.

9          THE COURT:  Okay.  Are there any other differences?

10         MR. UZZI:  That's the only difference, Your Honor.

11         THE COURT:  Okay.  Thank you.

12         Mr. Eckstein?

13         MR. ECKSTEIN:  And that is the only difference, Your

14    Honor, and I think it's important -- we are not expecting that

15    there's going to be any dissent on either side of the deal, but

16    obviously, we do need to go through the steps to make sure that

17    everybody has been given an opportunity to participate and be

18    heard.  And one of the questions that we can get to when we get

19    to the process is whether the Court is comfortable with the

20    process that we're following which is essentially the

21    submission of a notice and present the confirmation order next

22    Wednesday giving people an opportunity, if they want to be

23    heard in connection the proposed plan amendment, to do so at

24    next Wednesday's hearing and whether or not people should have

25    a deadline to file something, in the off chance that people are

1    going to want to file something.

2            THE COURT:  Right.  Why don't you address the issue of

3    whether resolicitation of the disclosure statement in voting

4    solicitation is required.

5            MR. ECKSTEIN:  Sure, Your Honor.  I had planned to do

6    that.  I think as I mentioned last Wednesday --

7            THE COURT:  Let me just say before you go on, there

8    was a call at 4 o'clock last Wednesday.  It was certainly the

9    JSNs' counsel, the committee counsel, debtor counsel, and there

10   were -- it was not on the record.  I did it from home.

11           MR. ECKSTEIN:  AFI, I believe was there.

12           THE COURT:  AFI's counsel, Mr. Schrock, was on the

13   phone.  It was arranged on very short notice.  The substance of

14   the call was quite -- relatively brief.  I mean, I was told

15   that an agreement in principle had been reached with the

16   majority of the JSN holders and consenting creditors, but not

17   all.

18           I did not ask and I was not told -- I didn't want to

19   know at the time of the call -- what the proposed settlement or

20   resolution was.  There was no discussion about what the terms

21   of any resolution were at that time.  So I was informed that

22   substantial progress had been made in the mediation with Judge

23   Peck, and they were pleased to report that an agreement in

24   principle, subject to further negotiation had been

25   accomplished.

1        There was also a brief discussion about -- and Mr.

2   Kerr was on the phone with Mr. Lee, and Mr. Kerr asked to

3   adjourn the deadline for filing post-hearing briefs.  And I

4   agreed to adjourn that for one week.  But it was discussed, and

5   I concluded, that the proposed findings of fact should be

6   submitted by December 5th, which was the deadline established

7   at the close of the evidence.  And I expect that that will

8   occur.

9        This conference today was agreed upon as the date and

10  time.  There was -- I also said I was, at lea -- I was

11  prepared, at least, to go forward on December 11th without

12  committing as to what would occur at that time.  I asked a

13  question during that call that I just asked Mr. Eckstein again

14  now about whether the coproponents believe that a

15  resolicitation would be required.  Mr. Eckstein's answer then

16  was essentially what it has been now.

17       There was a very, very brief discussion about other

18  objections to confirmation that had been filed.  The

19  objections -- two objections of Wells Fargo, they were not

20  discussed in substance, just they were referenced that there

21  were those.  Mr. Rode, who was here in Court and argued

22  briefly, his objection to confirmation was mentioned.

23       My recollection is that that, in sum and substance,

24  was the discussion last Wednesday, and I -- the only other

25  thing at the end of the call, I directed -- I ordered that none

RESIDENTIAL CAPITAL, LLC, ET AL.                    20

1  of the associates in any of these firms work on Thursday.  But

2  other than that, nothing else transpired during the call.

3          So, but go ahead, Mr. Eckstein.  I just wanted to put

4  that on the record.  That was not a call on the record.  It was

5  raised on very short notice to keep me apprised that there had

6  been this progress.

7          MR. ECKSTEIN:  Thank you, Your Honor, for making that

8  clarification.  That was our recollection of the conversation

9  as well.

10          Your Honor, we've given careful consideration to the

11  question of whether or not resolicitation is required.  As Your

12  Honor know, the plan that was disseminated for voting expressly

13  contemplated the possibility that the JSNs could, in the event

14  the Court ordered so, receive full post-petition interest, in

15  addition to their principal and pre-petition interest.

16          And in the disclosure statement, we laid out in fairly

17  extensive detail the potential ranges of recoveries to each

18  class of unsecured creditors at ResCap, RFC and GMAC.  And in

19  fact, if Your Honor were to look at pages 10, 11, and 12 of the

20  disclosure statement, Your Honor will see that, for example, on

21  page 10 of the disclosure statement, when it talks about the

22  treatment of ResCap unsecured creditors, there is a range of

23  recoveries between 31.5 percent and 41.9 percent.  And footnote

24  17 expressly describes the fact that the amount of recovery to

25  unsecured creditors could depend upon whether or not the JSNs

1  are ultimately entitled to post-petition interest.  And that

2  disclosure is made similarly for the GMAC creditors and the RFC

3  unsecured creditors.

4          And so when people were asked to vote on this plan,

5  they voted with the understanding that there might be a

6  dilution to unsecured creditors for potentially the full amount

7  of post-petition interest.

8          Further in the disclosure statement, if you look at

9  page 38 of the disclosure statement, there's actually an

10  extensive discussion of the JSN litigation and the risks

11  associated with the JSN litigation.  And then if you were to

12  turn to page 171 of the disclosure statement, there's actually

13  a description of the risk factor associated with the

14  possibility that recoveries to unsecured creditors could be

15  reduced by the potential full amount of the JSN payment.

16          So in the first instance, we think that everybody who

17  voted on this plan, voted with a full knowledge and

18  understanding that there could be a complete award of post-

19  petition interest and a reduction.  And creditors voted to

20  accept the plan notwithstanding that risk.

21          In addition to this, the fact of the matter is that

22  the debtor has done a careful monitoring of the recoveries and

23  the fact is that, even with settlement to the JSNs, the

24  projected recoveries to unsecured creditors are equivalent to,

25  if not better than, what creditors would have hoped to have

1   receive because the estate has actually performed well in terms

2   of recoveries and claims resolutions.

3         And so on really any approach one might take to how

4   creditors are being treated under this plan, based upon what

5   they expected as compared to what they'll receive as a result

6   of this settlement, there is no adverse treatment to any

7   unsecured creditors.

8         And so we think from a disclosure stand -- well, and a

9   solicitation standpoint, this is not a settlement that requires

10  resoliciting creditors, because, in fact, we think creditors on

11  every level are being treated better than what they had

12  expected might have happened absent a settlement.

13        Additionally, and Your Honor can consider this, we

14  think in connection with review of the findings of fact and the

15  confirmation order, the complexities and the risks associated

16  with this litigation, obviously, were quite extensive.

17        In addition to the post-petition interest, the JSNs

18  have advised us that they've incurred fees of between fifty-

19  four and fifty-six million dollars in connection with this

20  litigation, which they are going to seek to be repaid under

21  their indenture.  And the JSNs have taken the position that

22  they're entitled to be repaid regardless of whether the Court

23  finds that they're oversecured.  And there is certainly case

24  law in the Second Circuit that would lend support to that

25  argument.  And there could be, obviously, a lot of debate about

1   what amount of fees might or might not be appropriate.

2           But needless to say, in addition to the post-petition

3   interest issue that was hotly contested, the settlement has the

4   benefit of both resolving the estate's obligations with respect

5   to repayment of fees and bringing to a close the very, very

6   dramatic, ongoing incurrence of fees that would have continued

7   with the competing findings of fact, the closing arguments and

8   what, invariably, was going to be post-confirmation litigation

9   certainly on phase 1 and presumably on confirmation in phase 2,

10  had there not been a resolution of this litigation.

11          So the benefits to the estate of bringing a resolution

12  to this case, both from an expense standpoint and from a timing

13  standpoint, are quite material and we think that, given the

14  extensive prominence that this litigation has had in the case

15  and the right that every has had to participate and the

16  extensive participation by so many parties, we believe that

17  it's appropriate for the Court to consider this resolution in

18  connection with the plan amendment as we're proposing.

19          So that's a long answer to:  we don't think

20  resolicitation is necessary, Your Honor.

21          I don't know if Your Honor has any more questions

22  about the elements of the settlement.  As I said, the

23  settlement is fairly straightforward and fairly simple --

24          THE COURT:  Well, I -- excuse me.

25          MR. ECKSTEIN:  -- and, obviously, entails a

1 | compromised.

2 |         THE COURT:  Yeah.

3 |         MR. ECKSTEIN:  Both sides had great difficulty in

4 | getting to the compromise, but got there.  And --

5 |         THE COURT:  It's all packed into the new paragraph 155

6 | on page 18 of the amended plan, a definition section.

7 |         MR. ECKSTEIN:  Yes, a lot of things are baked into the

8 | definition section, but the number is fairly straightforward,

9 | Your Honor, and the -- consistent with so many of the other

10 | issues in this case, the essential ingredient to this

11 | settlement was global resolution of all disputes.  And that was

12 | really the hallmark of this resolution as well, and the fact

13 | that there are no loose ends to this settlement, we felt was

14 | another very important component of this, is that the estate,

15 | Ally and the JSNs are all getting complete closure.

16 |         The issues that we were anticipating with the

17 | indenture trustees, the indemnity issues, those are being

18 | resolved and don't have to be addressed.  So we think that the

19 | closure that is built into this settlement is very much

20 | consistent with the plan and is consistent with the fact that

21 | all of the litigation surrounding the ResCap-related issues are

22 | beings resolved now as part of the global settlement of the

23 | plan.

24 |         THE COURT:  I guess my question, and, again, I don't

25 | care whether you or Mr. Lee or someone else addresses it is,

RESIDENTIAL CAPITAL, LLC, ET AL.                    25

1  what remaining objections must the Court resolve?

2          MR. ECKSTEIN:  Your Honor, I'm gonna -- I'm gonna let

3  Mr. Lee address that when he addresses the confirmation, but

4  the short answer is, we know that Mr. Rebo (ph.) is still

5  unresolved.  The Wells issues are resolved, and --

6          THE COURT:  Well, both Wells?  Because there were two

7  Wells issues:  Wells as collateral agent, and Wells as

8  successor to Wachovia.

9          MR. ECKSTEIN:  I believe both of the Wells issues

10 are --

11         UNIDENTIFIED SPEAKER:  Wachovia is --

12         MR. ECKSTEIN:  Well, the Wachovia issue I know is

13 still open, and Mr. Schrock is going to describe how that's

14 being handled, but we think that that issue, for purposes of

15 the Court's consideration, is going to be address

16 satisfactorily.

17         THE COURT:  Okay.

18         MR. ECKSTEIN:  So the Court will not have to be

19 concerned about --

20         THE COURT:  But Wells as collateral agent has been

21 solved -- resolved?

22         MR. SCHAFFER:  Your Honor, Eric Schaffer, Reed Smith

23 for Wells as collateral agent.  A lot of what's happened in the

24 last week has been on a need-to-know basis and we haven't been

25 in the middle of everything.  I'm not complaining,

1  necessarily --

2          THE COURT:  I didn't need to know and didn't want to

3  know what the terms were until you got here today --

4          MR. SCHAFFER:  Right.

5          THE COURT:  -- okay?

6          MR. SCHAFFER:  And we only printed out the revised

7  plan on our way down here, but in a nutshell, what we've agreed

8  to is that we withdraw our objection and agree that there's no

9  reserve required.  In exchange for that, we are to get releases

10 from the JSNs and any counterparties to our agreements, and we

11 get our reasonable fees and expenses.  That's it.

12         THE COURT:  Mr. Lee?

13         MR. LEE:  Good afternoon, Your Honor.  Gary Lee from

14 Morrison & Foerster for the debtors.  Just starting with your

15 last question, subject to what Mr. Schrock has to say about

16 Wachovia, the remaining objection that Your Honor needs to

17 address were the three joinders to the Nora objection that was

18 withdrawn; that was Mr. Rode and two others whose names I don't

19 recall as I stand here right now.  And that would be the sum

20 total of it.

21         And those objections, Your Honor will recall, were not

22 to exculpation nor to the releases.  They were to the best-

23 interest test; that was my recollection.  So Your Honor, what

24 we propose to do is --

25         THE COURT:  Have --

1          MR. LEE:  Sorry, Your Honor.

2          THE COURT:  Has anybody reached out to Mr. Rode?  I

3   know that he and Mr. Nosek were communicating in the courtroom

4   and then went out in the hall together, and I think the -- Mr.

5   Rode will do what he wants to do, but through the colloquy and

6   your help and others, while the Court denied Mr. Rode's motion

7   to lift the stay to permit his action in Texas to go forward,

8   his claim remains on file and, at this stage, at least not

9   objected to.  So I don't know whether anybody has reached out

10  to Mr. Rode to see whether matters can be resolved with him.

11         MR. LEE:  Your Honor, there's been an ongoing dialogue

12  with Mr. Rode --

13         THE COURT:  Okay.

14         MR. LEE:  -- and the issue is purely economic and --

15         THE COURT:  I don't want to get into the details of

16  it.  I just wanted to make sure that at least an effort's made

17  to accomplish that.

18         MR. LEE:  Yeah, an effort -- an on-going effort and a

19  fairly significant effort, Your Honor.

20         THE COURT:  Okay.

21         MR. LEE:  So where that leaves is, so on Thursday,

22  Your Honor, we'll be filing two things; one, will be the

23  findings of fact as they relate to confirmation.

24         THE COURT:  Can you tell me now whether I'm going to

25  get a single set of proposed findings of fact and conclusions

1    of law?

2              MR. LEE:  Your Honor, you will get in fairly

3    abbreviated -- what's now 130 pages, a consolidated set of

4    findings of fact.  They went over to the JSNs and to AFI today.

5    There will be one set of findings of fact.

6              It's 130 pages that now, with the five other law firms

7    that will see it, it will flourish and grow, but it will be

8    complete and it will be one document.

9              THE COURT:  Okay.

10             MR. LEE:  And we'll also be filing on Thursday the

11   revised confirmation order.

12             So based on the last discussion we had at the

13   conclusion of the confirmation hearing, what we're going to

14   address in the findings of fact are the plan confirmation

15   standards under Section 1129, the mediation, the evidence that

16   supports the settlements, the evidence that supports the

17   exculpation release and third-party releases.  And I think

18   that's what Your Honor indicated you wanted.  Now, obviously,

19   we'll fold in the JSN settlement as well as part of the

20   findings of fact.

21             So what that really leaves us with, Your Honor, is

22   sort of a question as to how we proceed on Wednesday, whether

23   there's anything specific you want us to address on Wednesday.

24   And so we're really in your hands.

25             We think the findings of fact will be entirely

1  comprehensive.

2          THE COURT:  Well, I would like the debtors to -- when

3  you file the proposed findings of fact and proposed

4  confirmation order on Thursday of this week, that you file a

5  notice that objections, if any, to the proposed findings of

6  fact and confirmation order must be filed by 5 p.m. Monday,

7  December 9th.

8          And on the 11th, we're scheduled for 10 a.m.  You can

9  certainly address any remaining objections because

10 confirmation, here, is based on evidence already in the record

11 and will be set out in the proposed findings of fact.

12         It will be, obviously, unnecessary to offer -- I mean,

13 you don't anticipate offering any additional -- well, I don't

14 know.  Are you offering -- are you going to put in -- and maybe

15 you should do this -- a declaration of an appropriate person,

16 maybe Mr. Kruger, maybe someone else, in support of the

17 comprised -- the court approval of the compromise that's been

18 reached with the JSNs, because that certainly is not in the

19 evidence of record.

20         And so I would hope that you could get that done and

21 filed on Thursday as well.  I would like -- I know that's a

22 stretch, but I would like to have -- and then at the hearing on

23 the 11th -- well, I'll give you -- I'll tell you what, I'll

24 give you an extra day.  I'll give you to 5 o'clock on the 6th

25 to file it.

1       I want a full evidentiary record.  If the Court

2   approves confirmation, I want to be sure there's a full

3   evidentiary record that supports the Court's determination.

4       There certainly was a very full -- I can't -- I'll

5   give anybody else a chance to speak to it.  I think the only

6   thing really not covered in my decision from phase 1 or in the

7   evidence from phase 2 would be this issue of this compromise

8   with the JSNs.

9       And just thinking out loud, it seems to me that this

10  compromise, like the global compromise, raises both the

11  confirmation standards and the 9019 standards.

12      I mean, when I read over the change pages and I

13  thought back to the phase 2 trial, in bold strokes, the JSNs

14  were seeking another 400 million dollars.  I think it was 340

15  million dollars in post-petition interest, and there was a

16  number in the pre-trial order of 60 million dollars in fees.

17  And so in broad strokes, they were seeking another 400 million

18  dollars.

19      And this settlement provides them with another 125

20  million dollars.  That's just looking at the -- just solely at

21  the numbers.

22      There were substantial arguments on both sides as to

23  whether the JSNs were oversecured or undersecured, and if so,

24  by how much.  And I'm not going to go through all of that.  All

25  right.

1      And like any other compromise, one doesn't try the

2  issue.  One looks at whether -- is the debtor in entering into

3  this agreement exercising appropriate business judgment, acting

4  in the best interest of the debtor and the estates.

5      That wasn't intended a complete recitation of the

6  applicable standards, but generally speaking I think that is

7  how I view it.  But I want to be sure that we have a full

8  evidentiary record that supports what's being done.  To the

9  extent that there's a further agreement with Wells Fargo as

10 collateral agent, because they filed an objection to the claim,

11 the declaration is important.  And I think it's probably one

12 declaration that just -- it just ought to touch on that

13 resolution as well.  And it just ought to indicate -- something

14 filed ought to indicate what remains for the Court to resolve.

15 There's the Rode objection plus two.  They were all joinders in

16 Ms. Nora's now-withdrawn objection.  Fine.  I just want to

17 clear what it is I need to rule on at the time of confirmation.

18     Is there anything else you want to add now?

19     MR. LEE:  No.

20     The only main question was there anything else that

21 you wanted us to address at the hearing?  I mean, we can

22 certainly address these factors and they'll be in the

23 declaration, but is there anything else that we need to address

24 be prepared to provide some more --

25     THE COURT:  No.  And I don't -- look, you do -- with

1    all respect, you don't need to go through each of the 1129

2    factors.  I'm very familiar with them.  I assume they're going

3    to be covered in detail in the proposed confirmation order.

4           The pre-phase 2/confirmation trial briefs covered

5    extensively briefing on standards for confirming the plan.  So

6    I don't need all of that rehashed.  If there are any particular

7    points you want to emphasize, I think it probably would be

8    worth briefly, at least, addressing the third-party nondebtor

9    releases.  And I think to the issue -- I mean, to the extent

10   that those releases now are consensual, assuming you have

11   almost all of the JSNs on board, I expect to hear that the

12   third-party releases and exculpation have overwhelming creditor

13   support.  That was the position that you took with -- other

14   than with respect to the JSNs and a few borrowers.

15          So I don't think -- I'm not going to tell you what to

16   tell me but, I mean, you don't need to go through in great

17   detail each of the 1129 standards.  If anyone stands to argue

18   in opposition on the 11th, you'll have a chance to respond.

19          MR. LEE:  Okay.  Thank you, Your Honor.

20          THE COURT:  Okay.  Thank you.

21          MR. ECKSTEIN:  Your Honor, before letting others.  I

22   had mentioned at the outset that the agreement was premised

23   upon the assumption that we would be able to get to an

24   effective date by December 24th, ideally earlier.

25          That was premised upon the assumption that, number

1  one, the Court would be comfortable entering an order on or

2  about the 11th, but also that the Court would be comfortable in

3  connection with confirmation of waiving the stay under Rule

4  3020(e).

5         So to the extent we can get some guidance on that

6  issue, it would be helpful in terms of planning and in terms of

7  knowing whether or not the business deal that was struck, in

8  fact, is one that the Court is comfortable with.

9         THE COURT:  Well, I think -- look, perhaps -- because

10 this is a big deal for you the 3020 waiver, and obviously

11 3020(e) permits the Court to order otherwise, you probably

12 ought to address that.  I guess you can wait.  I don't know,

13 you can wait and see whether we get any objections, but you may

14 want to be proactive and be prepared to assert that.

15        So my understanding of the law generally with respect

16 to waiver of the fourteen days hinges on a couple of things;

17 one, are there any substantial objections.  Okay.

18        And that remains, I mean, the 3020(e) specifically

19 provides unless the Court orders otherwise.  And so I haven't

20 looked at that recently, but I have this issue comes up.  I

21 have waived it in the past.  I've generally waived it when

22 there have been no substantial, serious objections to

23 confirmation.

24        Let me leave it at that.

25        MR. ECKSTEIN:  Will certainly address it in the

 1    declaration so that the Court will have --

 2              THE COURT:  Okay.

 3              MR. ECKSTEIN:  -- the evidence to support that request

 4    as well.

 5              THE COURT:  That's fine.

 6              MR. ECKSTEIN:  But I wanted to make sure it was known,

 7    also.

 8              THE COURT:  Yes.

 9              MR. ECKSTEIN:  Thank you, Your Honor.

10              THE COURT:  Mr. Schrock.

11              MR. SCHROCK:  Good afternoon, Your Honor.  Ray Schrock

12    of Kirkland & Ellis on behalf of Ally Financial and Ally Bank.

13              Very briefly, regarding Wachovia.  We are in

14    discussions with them to resolve their objections.

15              THE COURT:  So they're trying to exact a pound of

16    flesh in order for them to go away is that --

17              MR. SCHROCK:  Your Honor, without getting into the

18    nature of the discussions --

19              THE COURT:  I don't want to know the details, but --

20              MR. SCHROCK:  Exactly.  My expectation is that that

21    objection will not be an impediment to confirmation, so

22    we're --

23              THE COURT:  The rest of the people at the front table

24    will probably get very aggravated if you don't solve it.

25              MR. SCHROCK:  I understand, Judge.  It's been made

RESIDENTIAL CAPITAL, LLC, ET AL.                    35

1   clear, believe it or not.

2           But that's my report --

3           THE COURT:  Okay.

4           MR. SCHROCK:  -- on that.  So I expect to be in touch

5   with the Court and parties-in-interest as we work through that,

6   but we were in touch with Winston & Strawn earlier today.

7           THE COURT:  All right.  Thank you very much,

8   Mr. Schrock.

9           MR. SCHROCK:  Thank you.

10          THE COURT:  All right, does anybody else wish to be

11  heard?

12          Mr. Uzzi.

13          MR. LEBIODA:  Your Honor?

14          THE COURT:  Yes, go ahead on the phone.

15          MR. LEBIODA:  Telephonically, Nathan Lebioda from

16  Winston & Strawn.

17          THE COURT:  Yes.

18          MR. LEBIODA:  On behalf of --

19          THE COURT:  Just say your name again.  I'm sorry, it

20  got blocked out.

21          MR. LEBIODA:  Nathan Lebioda.

22          THE COURT:  Yes, go ahead.

23          MR. LEBIODA:  Sorry we couldn't be there today in

24  person.  We're just telephonically calling in.

25          We've been in discussions with K&E, as well.  We

RESIDENTIAL CAPITAL, LLC, ET AL.                    36

1  believe all the evidence is in the record that's necessary,

2  should the need arise for the Court to determine our objection.

3          At the moment our objection continues to be limited

4  solely to the applicability of third-party releases,

5  specifically, also with respect to the request for the 3020(e)

6  relief.  We haven't had the opportunity to consider whether we

7  would object to such relief.  I'd request that we can reserve

8  our right to do so in any response papers that we may filing by

9  the deadline.

10         THE COURT:  Okay.  Let me ask -- one question I have

11 is, can I require a bond for giving the fourteen -- just even

12 for that fourteen days thing?  Boy, the bond in this case could

13 really be enormous.

14         But go ahead, Mr. Lebioda.  I didn't mean to cut you

15 off.

16         MR. LEBIODA:  No, that's all right.  I think that that

17 covers everything that we had to report on.

18         THE COURT:  Okay.  Thank you very much.

19         Mr. Uzzi.

20         MR. UZZI:  Thank you, Your Honor.

21         I think you can waive the stay and then require a bond

22 to impose the stay just to answer that question, Your Honor.

23         First, Your Honor, I'd like to thank the Court for the

24 call on Wednesday and agreeing to push the briefing schedule to

25 let us get this settlement done.

RESIDENTIAL CAPITAL, LLC, ET AL.                    37

1        What we had agreed to was to push it for a week, so

2   everything was due this Thursday.  They're now due the

3   following Thursday.  I don't think anybody wants to be working

4   on briefing so what I've discussed with Mr. Eckstein is that

5   we'll just suspend the briefing now until we get to next

6   Wednesday.

7        And hopefully next Wednesday -- a week from this

8   Wednesday will render further briefing moot.

9        THE COURT:  And part of the reason for my agreeing to

10  postpone the briefing is that such extensive briefing was

11  already done before the start of the confirmation hearing phase

12  2 trial.

13       So yes, there are issues that were the focus of phase

14  2, but I think the reason that I was comfortable, am

15  comfortable -- is there anybody who objects to me pushing the

16  date for the further briefing, as opposed to the findings of

17  fact?

18       Hearing none, so that's fine.  We'll adjourn it

19  pending further order of the Court.

20       MR. UZZI:  Thank you, Your Honor.

21       And just to be precise on the findings of fact, we're

22  going to submit a joint findings of fact that's supportive of

23  this agreement, not findings of fact relating to the issues

24  that would otherwise be in dispute in the phase 2 trial.  And

25  obviously, if we get to next Wednesday and for some reason we

1   don't get the plan confirmed, we would revisit at that point

2   how to finalize the pending litigation.

3         THE COURT:  Right.  And that's a fair point.  And I

4   think that I want to be sure that I have all proposed findings

5   of fact that anybody believes are necessary to support

6   confirmation of the plan, if I wind up confirming the plan.

7         Okay.  And so I agree, Mr. Uzzi, that if for some

8   reason the plan is not confirmed, we'll regroup as to what the

9   schedule is with respect to phase 2 of the adversary

10   proceedings.

11         MR. UZZI:  Thank you, Your Honor.

12         A point of clarification, I presume it's Your Honor's

13   intent, but with respect to setting the objection deadline for

14   this Monday, it is my understanding that it's only with respect

15   to what's being submitted now.  This is not going to give other

16   people now a free opportunity to --

17         THE COURT:  This is --

18         MR. UZZI:  -- raise objections they should have raised

19   before.

20         THE COURT:  That's correct.  So the change that's

21   taken place --

22         MR. UZZI:  Thank you, Your Honor.

23         THE COURT:  -- is the compromise with the JSNs.  I'm

24   not opening up anew an objection deadline to confirmation.

25   That has long since come and gone.

1        I'm glad you raised that point.  This is not an
2    invitation for people to think up objections to other aspects
3    of the plan that they didn't raise before and want to raise
4    now.  This is with respect to the changes that have been made
5    to the plan now.
6            MR. UZZI:  Thank you, Your Honor.
7            THE COURT:  Thank you, Mr. Uzzi.
8            MR. UZZI:  And just then I'd like to let you know how
9    the mechanic -- how we plan to go forward with changing the
10   votes and make sure Your Honor is comfortable with it.
11       We want to do this as efficiently and as easily as
12   possible.  It's not a very widely held issue.  We think we know
13   most of who is holding this.  They're either represented by
14   Mr. Walper or myself.
15       What we propose to do is send out a notice today --
16   this evening after this hearing on the docket.  The indenture
17   trustee will also set out a notice under DTC that states that
18   if anybody's a member of the ad hoc group they should call me
19   and I will arrange to have their votes changed.  And the way I
20   propose to that, Your Honor, is to submit a declaration from
21   myself saying that these people I represent are members of the
22   ad hoc group; they had previously voted against the plan and
23   they now agree to change their votes.  And we hope that that is
24   satisfactory for Your Honor.
25           And then with respect to anybody who is not

RESIDENTIAL CAPITAL, LLC, ET AL.                    40

1    represented by me or Mr. Walper, there will be a contact for --

2    at the debtors where they can contact if they want to change

3    their vote to give them the opportunity to opt into the

4    releases and exculpations.

5         THE COURT:  Do you know how many noteholders voted

6    against the plan?  Because there were some consenting -- some

7    consenting creditors included some JSNs.

8         MR. UZZI:  Yes, that's correct.

9         THE COURT:  Do you know how many JSNs voted against

10   the plan that are not represented by you or Mr. Walper?

11        MR. UZZI:  I don't know because the only thing -- and

12   this is why we want to do it this way -- the only thing we can

13   see is master ballots from broker dealers that have account

14   numbers on them.

15        And it's been my experience in the past that clerical

16   errors happen along the way.  In fact, there's several

17   different voting classes for JSNs and there's actually three

18   different tallies.  In one particular class there were fifty-

19   six votes.  In another class there was forty-three for

20   instance.

21        THE COURT:  Um-hum.

22        MR. UZZI:  And we'll do the best we can to match them

23   up.  I'm confident that when we're done you're going to see

24   overwhelming support from both an amount and numerosity

25   standpoint.  And I think that should be sufficient to declare

1   the JSNs an accepting class.

2         THE COURT:  Okay.

3         MR. UZZI:  Unless Your Honor has any questions of me,

4   that's all I have.

5         THE COURT:  All right.  Thank you very much.

6         MR. UZZI:  Thank you.

7         THE COURT:  Anybody else wish to be heard?

8         All right.  We are adjourned.  And I'll be waiting

9   with bated breath for findings of fact and the confirmation

10  order.

11        You'll give us -- I don't know that I need the

12  annotated CD or DVD that was going to be -- all right.  What's

13  your plan, Mr. Kerr?

14        I still -- no one should think -- we're going to

15  review the proposed findings very carefully.  And I want to be

16  sure they're properly supported.

17        MR. KERR:  Your Honor, we'll do it anyway Your Honor

18  would like us to.  I think that we had a discussion previously

19  about giving a findings of fact with hyperlinks.

20        THE COURT:  Linked, yeah.  Right.

21        MR. KERR:  And I understand that the committee reached

22  out to your chambers today and we were told that's no longer

23  necessary.

24        THE COURT:  Right.  I just want to make sure we have

25  it on disk or a flash drive or something like that.

1              MR. KERR:  Yes, we will give it to you in Word form,

2     whether it's in a flash drive --

3              THE COURT:  Right.

4              MR. KERR:  -- a disk, whatever is easiest again.

5              We will also be submitting, and I think -- I don't

6     know if it's maybe today a flash drive with all, at least, the

7     exhibits that we're entering into evidence.  And we're still

8     trying to get finalized on an exhibit list, but we'll have that

9     for you shortly, as well.

10              Obviously, if there's anything else that Your Honor

11     would -- that would assist in reviewing the records --

12              THE COURT:  Let me -- the only thing that was remained

13     up in the air, evidence-wise, was the deposition designation --

14              MR. KERR:  That's correct, Your Honor.

15              THE COURT:  -- and cross-designations.

16              MR. KERR:  And what we -- and again, I've not had an

17     opportunity to speak to Mr. Cohen about this, but what our

18     proposal would be -- and I don't mean to spring this on

19     Mr. Cohen, but we were kind of waiting to see once the amended

20     plan got filed.  I think most of the deposition designations

21     that had been submitted really with the phase 2 issues that

22     were -- and what we were going to suggest is that anything that

23     was not objected to, would just remain in, but any objection

24     would just be withdrawn.  And my -- rather than spending a lot

25     of time digging through objections --

RESIDENTIAL CAPITAL, LLC, ET AL.                    43

1          THE COURT:  Okay.  Work it out Mr. Cohen.

2          MR. KERR:  We will work it out.

3          THE COURT:  Okay.

4          MR. KERR:  We are already on top of this, Your Honor

5          THE COURT:  I just, I want to be -- I said this

6    before -- I want to be sure that it's a clear evidentiary

7    record from the hearing that if the Court -- if the Court

8    confirms the plan, it's supported by the evidence in the

9    record.

10         MR. KERR:  And that's fine, Your Honor.  We'll work

11   with Mr. Cohen on the deposition designations.

12         THE COURT:  Okay.

13         MR. KERR:  Again, I believe we'll have the exhibits to

14   you today.  We'll have exhibit lists, if not today, tomorrow.

15         THE COURT:  Okay.

16         MR. KERR:  And we'll have our proposed findings of

17   fact both in -- we'll file it on the docket obviously, but

18   we'll also submit it to Your Honor in Word form in a way that's

19   accessible to you and your clerks.

20         THE COURT:  Okay.  Thank you very much.

21         MR. KERR:  Thank you very much.

22         THE COURT:  All right.  We're adjourned.

23         IN UNISON:  Thank you, Your Honor.

24      (Whereupon these proceedings were concluded at 3:06 PM)

25

1

2                    C E R T I F I C A T I O N

3

4    I, Hana Copperman, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8            *Hana Copperman*

9

10   _____

11   HANA COPPERMAN

12   AAERT Certified Electronic Transcriber CET**D-487

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  December 4, 2013

19

20

21

22

23

24

25