IN THE UNITED STATES BANKRUPTCY COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

In re:
RESIDENTIAL CAPITAL, LLC, et al.,
                Debtors

and ALLY BANK

Case Number:12-12020 (MG) ;
Claim Number 1542
Claimant: Jeffrey M. Davis
Debtor: GMAC MORTGAGE LLC

Chapter 11
Jointly Administered

**CLAIMANT JEFFREY M. DAVIS' MEMORANDIUM IN RESPONSE TO DEBTOR'S FIFTY-FIRST OMNIBUS OBJECTION TO CLAIMS (BORROWER BOOKS AND RECORDS CLAIMS – RES JUDICATA AND WRONG DEBTOR)**

*Jeffrey M. Davis v GMAC Mortgage, LLC, Ally Bank and MERS*

*Responses Due to:*
**Gary A. Colbert, Attorney at Law
29452 Pendleton Club Drive
Farmington Hills, MI 48236
(248) 615-3719**



## I.
## STATEMENT OF FACTS

The Claimant filed his State Court with a Verified Complaint lawsuit alleging unlawful application of the Foreclosure by advertisement statutes for his first Count, and an Intentional Tort deriving from Debtor's intentional misconduct for his Second Count. (SEE: Infra.discussion starting at p..6) The Claimant alleged substantial injury die to the Debtor's intentional torts, damages that included documented suicidal ideation directly caused by Debtor's misbehaviors. Debtors, after unilaterally dismissing the foreclosure action moved for Summary Disposition, apparently under Michigan Court Rule (hereafter MCR) 216C(8), on the basis that since they had rescinded the foreclosure, there was nothing left to litigate. The trial court judge granted this

1

motion and the matter is now before the Michigan Court of Appeals. (The foreclosure in the companion Claim's underlying case was as full of disrespect for the law as the one voluntarily rescinded in the case underlying this claim). That appeal is currently Stayed by this Court's Order. (See: Michigan Court of Appeals Case Number 307721, Lower Court Number 2011-116494 CH)

The Claimant's appellate position has been bolstered by holdings in *Mitan v Federal Home Loan Mortgage*, 703 F3d 949 (6th Cir., 2012); and a similarly reasoned matter, *Kim v. JP Morgan Chase, NA*, 493 Mich. 98; 825 NW2d 329 (2012), both of which highlight for Michigan Courts the Debtor's wrongful behaviors thereby re-enforcing the foundation of the intentional and tortuous nature of its conduct. Claimant's case is further bolstered by his examination by a mental health expert upon whom the Southeastern Michigan courts have frequently relied for forensic findings. Thus, while the trial Court dismissed on failure to assert a claim rather than on the merits of the issues, it is now clear that a case does exist.

    Throughout these proceedings and throughout the second case discussed in the Companion Response, Debtors ignored the Consent Agreement it entered into with the Federal Reserve System on April 13, 2011. The issues the Consent Agreement covered include Debtors' agreement to cease its improper servicing practices and its failure to engage in appropriate mitigation efforts and foreclosures that were improper as Debtor failed to follow applicable State law. Debtor's conduct was found intentional and Debtor agreed to cease and desist its predatory practices. It did not. Its Failure to follow its own Consent Agreement renders Debtor's behavior and methodology both in bad faith, intentional and irregular.

    For example, Debtor's misconduct complained of in this lawsuit is specifically barred by the Consent Agreement. [*Ibid.*], The Consent Agreement is a part of Public Policy established by

2

the Federal and State governments to alleviate the effects of the economic crisis that threw millions of homeowners into default situations with their mortgages. Indeed, special deference was to be given to people on unemployment benefits, as was Claimant. Yet, Debtor ignored the Public Policy by not responding to attempts by its borrowers to modify their mortgages, giving them misleading information and not following the requirements of applicable State law, the precise situation and issues involved in both lawsuits forming the basis of the Claimant's claims before this Court. In short, this lawsuit clearly shows that Debtors continue to flaunt the law. Had the Debtor complied with the Consent Agreement to which they voluntarily were a party, they would have not injured Claimant emotionally. Instead, they victimized him by their disregard for the Consent Agreement, Michigan Foreclosure By Advertisement statutes and its adore for greed.

Jeffrey Davis was employed by General Motors as a contracted marketing expert for several years [Tr. First lawsuit (LS1) Hearing, Vol. 2 , pp. 5 -5; 8 -45]   About two years passed, during which time Mr. Davis was always timely with his mortgage payments. The recent economic disaster hit and Mr. Davis was laid off. For over a year, he struggled to continue the timely payments on his mortgage. He was on Unemployment Compensation and Congress kept extending the benefit period due to the deepest economic downturn since the 1930s Depression. [*Ibid*]

In 2009, Michigan amended its foreclosure laws since the residential foreclosures were increasing at historic rates, harming homeowners, lenders, builders, realtors and neighborhoods. The amendments basically were MCL §600.3204 and all sections of §600.3205, with some references to MCL §600.3101 *et seq*. Some other sections were slightly amended to reference these amendments. The Amendments were meant to be effective for a short duration but adverse

conditions were so pervasive that in 2011, they were extended, with a few, subtle changes. The intent of these Amendments was to create a methodology for mortgage modification to help homeowners preserve their homes and equity while affording the lender a chance to maintain its investment, albeit on varied terms that could extend its pay-off period, reduce the gain it may realize by using a lower interest rate than set forth in the original mortgage contract, hitching some payments to the end of the mortgage contract, or other techniques. Lenders showed reluctance in implementing their new statutory obligations as evidenced by both of Claimant's cases and other cases the writer has consulted on nationwide, as well as the Consent Agreement entered into by Debtor with the Federal Reserve.

Mr. Davis telephoned GMAC to find out what relief might be available to him. He was told by GMAC that he had to be 90 days in arrears before they could assist him. (This misrepresentation of fact is explicitly barred under the Consent Agreement) He stopped making his mortgage payment and 90 days later called again for relief. GMAC had started its internal procedures to commence foreclosure. From then on, GMAC's charade began as is well documented in the first Verified Complaint and its many Exhibits, exhibits submitted with Mr. Davis' Claim in this matter. That Verified Complaint is divided into two Counts. The first Count recites the many efforts Mr. Davis undertook to try to achieve his rights under MCL §§ 600.3204 and 3205a through c, and how GMAC manipulated the facts, truth and law to deprive him of relief, all documented. For example, GMAC, in violation of the statute, refused to supply Mr. Davis with information required by statute, as to whether he qualified for a modification and how they arrived at their conclusion, *a situation repeated in the second lawsuit that is the basis of his other claim before this Court*. A statutory requirement intended to assist the Claimant's understanding so he could evaluate an offer for modification. *As in the Second lawsuit*

4

***(Supporting these claims)***, this information was requested by Claimant in writing, though required of Debtors by statute. Instead they fabricated a tale that he abandoned the home, and then, that he vacated it. This was refuted by Mr. Davis in this Verified Complaint, by an appropriate affidavit copied to GMAC and by testimony. [See: Ex. 4, LS1 Tr. Vol. 2 at pp. 8 -45; Ex. 3, first Verified Complaint, Par. 6, 12 through 29].

During a hearing concerning extension of an injunction then in effect against GMAC, Mr. Davis not only denied abandoning or vacating his home and testified to various utility bills showing continuous usage, but GMAC presented no evidence, none at all, to back-up its claim - no investigator, no neighbor, no postal person, and not one scrap of paper was presented by it to even try to support its claim. [See Ex 4, LS 1Tr. Vol. 2]

Mr. Davis qualified for a mortgage modification, a fact GMAC hid until shortly before the Hearing on its Motion for Summary Disposition in the first case, a time when it was too late for written response. At the hearing for Summary Disposition, Mr. Davis' attorney apprised the Court of the approved modification which was internally accepted by GMAC but never presented to Claimant (It was found in one of the boxes full of documents gained through discovery). His attorney apprised the trial Court that had this modification been offered to Mr. Davis, he would have been accepted it. [See: Ex 5 LS 1, Tr Vol. 3, pp 3 when the modification issue when offer to Mr. Davis was a breach of statutory duty, one of many, asserted in the first case's Verified Complaint, all of which were either attested to or documented by exhibit and, to this minute, remains unrefuted. (Those Exhibits were attached to the filing of the Claim and are incorporated herein for reference)

5

Count Two of that Verified Complaint alleges that the breach of statutory duty by GMAC harmed Mr. Davis causing him injury. Count Two asserts a *tort per se* (a tort in essence) and broadly sets forth Mr. Davis injuries pursuant to Michigan's rules of notice pleading. In fact, before seeking counsel, Mr. Davis wrote his siblings of his desire to kill himself due to what was happening to him. After obtaining counsel, Mr. Davis was referred to a psychologist.

The statutes herein cited entitle Mr. Davis to the equitable remedies available under a judicial foreclosure. MCL §600.3101,*et seq*. These remedies can include any equitable remedy such as reforming the offered mortgage modifications to conform to statutory requirements, using the GMAC created modification, that though alleged to be offered, never was, as the basis of the remedy. Instead, in blatant disregard of the applicable statutory mandate and public policy, GMAC proceeded with a foreclosure by advertisement, a foreclosure it voluntarily set aside. The first lawsuit and its resultant damages to Mr. Davis' case, like the Second lawsuit, underpinning this Claim, concerns the multiple breaches of applicable statutes by GMAC, the method that should be used to compel GMAC to conform to the law, and how to remedy injury it caused Mr. Davis by flagrant disregard of its legal duties, which if allowed to go unsanctioned, turns the law into a nullity.

Further issues supporting Mr. Davis' claims stemming from that first case flow not only from his emotional damages but include harm from perjured statements contained within affidavits filed by GMAC with the Oakland County Clerk and its disregard of the Court injunction on his home directly contravening the injunction, or its averment that Claimant had no attorney after GMAC had dealt with Judge Serra (Mr. Davis' attorney in that action for months, and similar events; and the relief to which Mr. Davis is entitled. [See: LS 1 Tr Volumes 2 and 3

generally] Since the trial judge converted a TRO into a permanent injunction, she must have found Mr. Davis highly credible.

## ARGUMENT
### A.
### THE DOCTRINE OF RES JUDICATA CANNOT APPLY AS THE STATE MATTERS ARE STILL PENDING

Each of the cases on which Claimant bases his claims are still pending in the Michigan Court of Appeals. The underlying case for the claims herein asserted by Claimant in this Claim is awaiting scheduling for Oral Argument as it is exempted from the Stay due to the type of relief sought. Mr. Davis sought setting aside of the foreclosure. However during the long wait, the Debtor foreclosed on his home and he lives in an apartment. The value of the house exceeds $200,000 in most real estate markets. However, the Debtor claimed a mortgage value of $195,450 TO REDEEM THE PROPERTY, This amount is consistent with the current appraised value for property tax as of a year ago, when the house was lost. That obviously is the basis of his claim. The amount of this claim should not be in dispute, his chance to reverse the trial Court may be in dispute though it should no longer be. Indeed, Mr. Davis has an excellent chance at getting the ruling of the trial Court reversed and the case remanded.

This is evident due to the holding of the Sixth Circuit in *Mitan v Federal Home Loan Mortgage*, Case No. 12-1169, (6th Cir., 2012) *Mitan* concerns Wells Fargo which foreclosed on Frank's home by advertisement portion of Michigan's foreclosure statute. Frank is deceased and Mitan is the estate's representative. The Federal Home Loan Mortgage Corporation purchased the home at a sheriff's sale in February 2010, and the redemption period expired six months later. Two weeks prior to expiration, Mr. Mitan sued, claiming that the foreclosure was contrary to Michigan law. These facts are similar to the fact in the instant case, except Claimant commenced his lawsuit more than two weeks prior to expiration of the redemption period in this

7

case, and about the same time in his first case The United States District Court dismissed. The Sixth Circuit reversed, holding that the United States District Court did not establish an adequate record to determine whether Wells Fargo complied with the law. If the foreclosure was void, Mitan's rights were not terminated at the end of the redemption period. When a lender wishes to foreclose by advertisement on a principal residence, it must provide the borrower with notice designating a person whom the borrower may contact to negotiate a loan modification. Mich. Comp. Laws 600.3205a(1). If the borrower requests negotiation, the lender's designated person may request certain documents, the same documents Claimant requested in this case. If negotiations fail, the designated person is required to apply statutory calculations to determine whether the borrower qualifies for a loan modification. The lender and its designated person failed to supply these documents in this case. It is clear that Claimant's aggregate circumstances were not considered. If the borrower qualifies, the lender may not foreclose by advertisement unless the designated person offers a good faith modification agreement that the borrower fails to timely return. A good faith modification was not offered. The case is directly on point especially as it is contested as to whether the TPP offered was properly calculated, especially since it required a higher payment by Debtor than the amount for which he asked modification. That issue was not addressed by the Lower Court. (See *infra.* and the Transcript of the Summary Disposition Hearing)

Generally, Michigan's Supreme Court requires strict compliance with **foreclosure** statutes. ***Detroit Trust Co. v Detroit City Service Co.***, 262 Mich. 14, 47; 247 NW 76 (1933).

In ***Kim v JP Morgan Chase, NA***, 493 Mich. 98; 825 NW2d 329 Mich. Sup Ct, Case 144690, 12/21/12, using similar reasoning as did the Sixth Circuit in ***Mitan v Federal Home Loan Mortgage***, 703 F3d 949 (6th Cir., 2012), the Michigan Supreme Court followed ***Mitan***'s

line of reasoning. While *Mitan* held the foreclosure void; *Kim* held it voidable if Claimant showed prejudice. (The two cases complement each other but that is not relevant here) While his legal and economic rights and interests were prejudiced throughout by each unlawful act taken by GMAC such as terminating his ownership by unlawfully using a statutory procedure, no greater prejudice can be inflicted than being evicted from the home that should still be yours but for the wrongful, unlawful use of a procedure by a lien holder.

The foreclosure was not lawfully conducted pursuant to statute, as MCL 600.3204 and the 3205 series was incorporated into the foreclosure process in 2009 and reasserted in 2011. The requirements of the statute are mandatory and strict compliance is required. If Debtors' use of a statute, the provisions of which they are challenged on for non-compliance, especially by evidentiary exhibits attached to a Verified Complaint, Debtors must be able to demonstrate compliance with the procedures of the statute before it has the right to foreclose by advertisement. In this case, Debtors cannot meet this burden and was not required to make such a showing by the Trial Court.

Michigan law even has long held a mortgagor has the right to challenge the validity of a foreclosure by advertisement in summary proceedings to evict following the sheriff's sale. The Court of Appeals permitted a mortgagor to do so, stating:

> "The Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in summary proceeding. *Reid v Rylander*, 270 Mich. 263, 267; 258 NW 630 (1935); *Gage v Sanborn*, 106 Mich. 269, 279; 64 NW 32 (1895). Otherwise, the typical mortgagor who faces an invalid foreclosure would be without remedy, being without the financial means to pursue the alternate course of filing an independent action to restrain or set aside the sale...The mortgagor may raise whatever- defenses are available in a summary eviction proceeding. MCL 600.5714, MSA 27A.5714; [*Federal Nat'l Mortgage Ass'n v Wingate*], 404 Mich 661, 676, fn 5; 273 NW2d 456 (1979). The district court has jurisdiction to hear and determine equitable

9

claims and defenses involving the mortgagor's interest in the property. MCL 600.8302(3); MSA 27A.8302(3); DCR 754.7(b)(1)." ***Manufacturers Hanover Mortgage Corp v Snell,*** 142 Mich. App. 548, 553-554, 370 NW2d 401 (1985).

If one can challenge the Sheriff's Sale at a District Court summary eviction procedure, it is jejune not to allow one to challenge it at an earlier stage of the process. Since the case is not fully adjudicated, doctrine such as res judicata or collateral estoppel cannot apply.

Michigan Court Rule (MCR) 2.604(A) states that "when more than one claim for relief is presented in an action. ……..or when multiple parties are involved, the court may direct entry of a final judgment on one or more but fewer than all the claims or parties, but only on an express determination that there is no just reason for delay." The state Circuit Court did not make such a determination and did not direct entry of a final judgment.

MCR 2.604(B) states "Absent an express determination an order or other form of decision adjudicating fewer than all the claims. . .does not terminate the action as to any of the claims. . . and the order or other form of decision is subject to revision before entry of judgment adjudicating all the claims. . . ."

The claims to which the order was directed may be reinstated before, during or after that action is over and an appeal through the state appellate structure is currently being utilized that is likely to remand the matter, after verdict in that court. MCR 7.101, 7.203 In any event, finality has not attached to any part of the state-based action and thus concepts of collateral estoppel or *res judicata* do not apply.

In addition, the matter was not decided on its merits. In, ***Storey v Meijer, Inc.,*** 160 Mich. App 589; 408 NW2d 510(1987), the Court set forth the test for collateral estoppel citing as authority ***Senior Accountants, Analysts & Appraiser v Detroit,*** 399 Mich 449; 249 NW2d 121(1976) in this matter, contrary to Debtor's assertions, the matter was not decided on

its merits but merely on subsequently over turned precedent which was not even from the jurisdiction in which the case was being tried. The Debtor's position was that no lawsuit for relief could be brought after the Sheriff's Sale in Foreclosure and the holdings both in *Mitan* and in *Kim supra.,* shows the fallacy of this position

Given that the merits concerning the Intentional Tort aspects of the case were ignored in this case below, the authority relied on by the Debtor to the effect that not in all cases is a final judgment required for the application of res judicata cannot apply in this case.

"The applicable test for this case is accurately stated in Section 68 of the *Restatement of Judgments*, p. 293:

"Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between parties in a subsequent action on a different cause of action. . . ." See **Howell v Vito's Trucking and Excavating Co.**, 386 Mich. 37, 41-42; 191 NW2d 313(1971); **Jones v Chambers**, 353 Mich 674, 680-681; 91 NW2d 889(1958).[399 Mich. 458]"

"Additionally, it is also required that the parties have a full opportunity to litigate those issues in the former action and that there be a mutuality of estoppel between the parties. **Stolaruk Corp. v Dep't of State Highways & Transportation**, 114 Mich. App 357, 362; 319 NW2d 581(1982)" This case is not ripe for the concepts of collateral estoppel or res judicata.

## B.
## WRONG PARTY

The claim was asserted against GMAC Mortgage, LLC, the party that initiated the action that did injury to the Claimant, the party that saw such action through, the party that violated each and every rule of the consent agreement, statute or court order. It is also the party that is a party in

11

this bankruptcy proceeding and caused a Stay to be issued that stopped Mr. Davis from seeking the relief due to him. It is the only party that has had to pledge a large sum to remedy the harm it caused. Failure to allow Claimant claims is the equivalent of denying relief or a process through which he may remedy the wrongs the Debtor has caused.

The Debtor seems to base this part of its objection on the fact that its various books of account do not show a liquidated sum due to the Claimant and thus paying his Claim is a detriment to other creditors. First, it is difficult for one to believe that the Debtor cares anything about the position of any creditor. Historically this Debtor cares only for its own pocketbook and cares not to what level it may sink to protect that pocketbook.

Next, the fact that the Debtor has not assigned a value to Mr. Davis' claims, while surprising, merely underscores the contempt it has for the law, claims against, people similarly situated to the Claimant's ethic. In every case the writer has litigated over 40 plus years, each party has assigned value to the claims of the other. Indeed, the Debtor know the value of this claim as it asserted its own claim at the foreclosure sheriff's sale, the same amount Claimant has asserted in this matter.

While the venue is which Claimant's case is situated traditionally impanels somewhat conservative jurors, the kind of injury this Debtor did to the Claimant is the type of injury that brings large verdicts. The writer's 42 years of experience (as of December 17. 2013), is a basis for him to understand that the amount of the Claim submitted by Claimant is reasonable as it is somewhat less than what he can reasonably expect from a jury in the venue of the litigation.

The Debtor's objections should fail.

Respectfully submitted December 4, 2013        _____,
                                                Gary A. Colbert, Claimant's Attorney

## CERTIFICATE OF SERVICE

**Gary A. Colbert certifies that he served the following parties by their attorneys of record at their addresses of record by ordinary mail postage prepaid, to wit:**

Morrison & Foerster, LLP
1290 Avenue of the Americas
New York, New York 10104
Attn: Gary S. Lee, Esq.,
Norman S. Rosenbaum, Esq.,
Jordan A. Wishnew, Esq.,
Attorneys for Debtors and Debtors In Possession

Kramer Levin Naftalis & Frankel, LLP
1117 Avenue of the Americas
New York, New York 10036
Attn: Kenneth H. Eckstein, Esq.,
Douglas H. Mannal, Esq.,
Attorneys for the Official Committee of Unsecured Creditors

Dated: December 4, 2013  /s/ Gary A. Colbert
                            Gary A. Colbert