# EXHIBIT ONE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SEPIDEH CIRINO
27495 Hidden Trail Road
Laguna Hills, CA 92653
949-283-3774

Plaintiff, In Pro Per



FILED

2011 DEC -7 PM 3:53
CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
SANTA ANA
BY:

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SEPIDEH CIRINO, an individual,

               Plaintiff,

       vs.

GMAC MORTGAGE, LLC, a Delaware
Limited Liability Company; WELLS
FARGO BANK, N.A., a Federally
Chartered Bank, as Trustee for Holders of
IMPAC SECURED ASSETS CORP.
MORTGAGE  PASS-THROUGH
CERTIFICATES SERIES 2004-4; IMPAC
FUNDING CORPORATION, a California
Corporation; MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC., a
Delaware Corporation; and DOES 1
THROUGH 100 INCLUSIVE,

               Defendants.

Case No.:   **SACV 11-01890 AG (JPRx)**

COMPLAINT FOR VIOLATION OF
FEDERAL LAWS

1. Violation of the Fair Debt Collection
   Practices Act, 15 U.S.C. § 1692-1692p
   & Title 8 U.S.C. § 802 et seq. &
   15 U.S.C § 1

2. Violation of the Fair Credit Reporting
   Act, 15 U.S.C. § 1681 et seq. &
   15 U.S.C § 1

3. Violation of the Securities Act of 1933
   ("Securities Act") & 15 U.S.C § 1

4. Violation of Section 10(b) of the
   Securities Exchange Act of 1934
   ("Exchange Act") & 15 U.S.C § 1

5. Violation of Title18 U.S.C. §§ 1341,
   1342, 1346,1348 &1349 Mail Fraud and
   Other Fraud Offenses &15 U.S.C § 1

6. Civil RICO Remedies 18 U.S.C.§§ 1961
   et seq., 18 U.S.C.§§1964&15 U.S.C § 1

## I. JURISDICTION AND VENUE

1.      This court has jurisdiction over this action pursuant to the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692-1692p & Title 8 U.S.C. § 802 et seq.; the Fair Credit Reporting

Act, 15 U.S.C. § 1681 et seq.; the Securities Act of 1933 ("Securities Act"); the Securities

1   Exchange Act of 1934 ("Exchange Act"); Title18 U.S.C. §§ 1341, 1342, 1346, 1348 and 1349

2   Mail Fraud and Other Fraud Offenses and Civil RICO Remedies 18 U.S.C. §§ 1961 et seq., 18

3   U.S.C.§§1964 and 15 U.S.C § 1.  Defendants, and each of them have, directly or indirectly,

4   made use of the means or instrumentalities of interstate commerce, of the mails, or of the

5   facilities of the national securities exchange, in connection with the transactions, acts, practices

6   and courses of business alleged in this Complaint and as such Plaintiff has been aggrieved, or

7   legally harmed in some way, by the Defendants.

8       2.      Venue is proper in this district pursuant to [15 U.S.C § 1681p] & [15 U.S.C §

9   1692 k (p)] & 18 U.S.C § 1965 (a) (b) (d) and Section 22(a) of the Securities Act, 15 U.S.C § 77

10  v (a), and Section 27 of the Exchange Act, 15 U.S.C § 78aa because certain of the transactions,

11  acts, practices and courses of conduct constituting violations of the federal laws occurred within

12  this district.

13                          **II. SUMMARY**

14      3.      On or about October 20, 2004, John Cirino and Sepideh Cirino husband and wife

15  as borrower and co-borrower, applied and obtained a loan for the purchase of real property

16  located at 27495 Hidden Trail Road, Laguna Hills, California and agreed to a contract for

17  payment of the debt secured by the real property.  The entity that initiated the loan was

18  ALLIANCE BANCORP.  On or about November 20, 2004, ALLIANCE BANCORP proceeded

19  to sell the interest in the alleged debt in return for consideration to GMAC MORTGAGE, LLC.

20  GMAC MORTGAGE, LLC., marketed the interest in the alleged debt through the efforts of

21  BEAR STEARNS & CO, INC., and sold the interest in the alleged debt for consideration to

22  IMPAC FUNDING CORPORATION, who purchased the interest with funds provided by a pre-

23  funded Trust then pooled said interest for purposes of conversion to securities.

24      4.      By December 31, 2004, IMPAC FUNDING CORPORATION sponsored the debt

25  as security for a bond issue that was deposited by BEAR STEARNS & CO, INC., into the

26  IMPAC SECURED ASSETS CORP. MORTGAGE PASS-THROUGH CERTIFICATES

27  SERIES 2004-4 (the "TRUST" which is a REMIC TRUST) and the Note was converted into

28  stock certificates and placed within multiple classes of the TRUST that contained approximately

1   $995,000,000 in certificates.  The TRUST provides annual activity reports to the Securities and

2   Exchange Commission ("SEC") as stipulated by the 1933 Securities Act & the Exchange Act of

3   1934.  These reports are on the performance of stock certificates in the secondary market that

4   exist within the trust classes and the performance of those classes and the securities contained

5   within.  Also contained within these reports are details showing the roles of all parties connected

6   to the chain of custody of the alleged debt and the eventual transformation or conversion of the

7   alleged debt into securities.

8        5.        Plaintiff is informed and believes and thereupon alleges that the conversion of the

9   Note into securities provided a wind fall of profits for the Defendants involved and provided for

10  a scheme that enabled these Defendants to continue the misrepresentation of the existence of the

11  alleged debt and a double dipping scenario that continues to today.   Plaintiff is further informed

12  and believes and thereupon alleges that these certificates of stock are performing and have paid

13  off the alleged debt since placement of the alleged debt within the TRUST.  WELLS FARGO

14  BANK, N.A., as Trustee for Holders of IMPAC SECURED ASSETS CORP. MORTGAGE

15  PASS-THROUGH CERTIFICATES SERIES 2004-4 and IMPAC FUNDING CORP.,

16  additionally misrepresented the debt within the judicial system by filing a Motion for Relief from

17  Automatic Stay in the bankruptcy proceedings of John Cirino on May 20, 2011 and again in the

18  bankruptcy proceedings for Sepideh Cirino on November 14th, 2011.

19       6.        The Defendants, by engaging in the conduct described in this Complaint, have

20  violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 1692p & Title 8 USC § 802 et

21  seq.; Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq; Securities Act of 1933 ("Securities

22  Act"); the Securities Exchange Act 1934 ("Exchange Act"); Title18 U.S.C. §§ 1341, 1342, 1346,

23  1348 and 1349 Mail Fraud and Other Fraud Offenses and Civil RICO Remedies 18 U.S.C. §§

24  1961 et seq., 18 U.S.C.§§1964.  In view of the serious and ongoing nature of the violations, the

25  Plaintiff is seeking emergency relief, including a temporary restraining order, a preliminary

26  injunction, orders prohibiting each of the defendants from destroying documents, the

27  appointment of a receiver over the defendant entities, as well as all other entities directly or

28  indirectly controlled by Defendants, and an order requiring defendants to provide verified

United States District Court Complaint - 3

1   accountings.  The Plaintiff also seeks permanent injunctions, disgorgement and civil penalties

2   along with monetary relief.

### III. THE DEFENDANTS

4        7.     **GMAC MORTGAGE, LLC.**, a Delaware Limited Liability Company,

5   ("GMAC") doing business in California "acting as a MORTGAGE BROKER ONLY, NOT AS

6   A MORTGAGE LENDER OR MORTGAGE CORRESPONDENT LENDER as part of Ally

7   Bank Corp.", per the information available on their website as of November 22, 2011, is the

8   servicer of the alleged debt.

9        8.     **WELLS FARGO BANK, N.A.**, a Federally Chartered Bank, as Trustee for

10  Holders of IMPAC SECURED ASSETS CORP, MORTGAGE PASS-THROUGH

11  CERTIFICATES SERIES 2004-4, ("WELLS FARGO") alleged holder of the Note secured by

12  the Deed of Trust ("Contract").

13       9.     **IMPAC FUNDING CORPORATION**, a California Corporation, ("IMPAC")

14  the Master Servicer – Securities Administrator of the securities sponsored by the same entity.

15       10.     **MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.**, a

16  Delaware Corporation, ("MERS") nominee of the beneficiary of the Trust.

17       11.     DOES 1 THROUGH 100 INCLUSIVE, Plaintiff does not know the true names

18  and nature of Defendants DOES 1 THROUGH 100 INCLUSIVE, and will amend this complaint

19  to include their true names at such time the true names are obtained.

### IV. STATEMENT OF FACTS

21       12.     Per  Section "H" of the Contract, attached hereto as **Exhibit "A"** and incorporated

22  herein by reference, signed by the parties in interest, "the "Loan" means the debt evidenced by

23  the Note, plus interest, any prepayment charges and late charges due under the Note and all sums

24  due under this Security Instrument, plus interest".  Defendants, WELLS FARGO and IMPAC, as

25  reported to the SEC in annual reports, confirm that the Note referred to in the Contract no longer

26  exists.  A copy of the original Note is not sufficient proof to validate the alleged debt.

27       13.     Defendant, WELLS FARGO, published and advertised the Notice of Default and

28  Notice of Trustee Sale, attached as **Exhibits "B" & "C"** respectively and incorporated herein by

1  reference, and recorded same with the clerk-recorder's office of the County of Orange, State of

2  California. Stated within the Notices of Default and Trustee Sale are false representations and

3  implications that a sale, referral or other transfer of any interest in a debt shall cause the

4  consumer to lose any claim or defense to payment of the debt.

5        14.    Plaintiff asserts that the alleged debt cannot be reported as a debt in default as it is

6  no longer in existence having been converted into a performing security or certificate of stock

7  being publicly traded. The Defendants continue to report to the three credit bureaus (Experian,

8  TransUnion & Equifax) that the alleged debt is in default. Plaintiff alleges that the Defendants

9  continue to use false representations and deceptive means to collect on the alleged debt by using

10  official government letters with insignia identifying themselves as associated with government

11  entities or supported by a government entity such as HUD Counseling.

12        15.    Defendants have provided false implications that the account has been turned over

13  to innocent purchasers for value and provided documents to Plaintiff represented as legal process

14  that have no judicial value but are rather representation of acts of an administrative process for

15  debt collection.

16        16.    Defendants have collected the full amount of the alleged debt, per the original

17  contract through to the time the alleged debt has ceased to exist, yet have continued to threaten to

18  take non-judicial action effecting dispossession of the property with no present intention of

19  taking possession of the property, as means to collect on the alleged debt.

20        17.    Defendants misrepresented the facts pertaining to the validation and confirmation

21  of the alleged debt, through their attorneys and representatives in Bankruptcy Court by filing a

22  Notice of Motion and Motion for Relief from Automatic Stay, **Exhibit "D"** attached hereto and

23  incorporated herein by reference, and have circumvented the due process of the court in order to

24  obtain orders for relief from stay.

25        18.    Plaintiff contends that the alleged debt is no longer in existence and there is no

26  evidence of the alleged debt that can be produced in the form which Plaintiff agreed upon at the

27  inception of the contract. The parties collecting on the alleged debt have been paid and continue

28  to get paid on the issued certificates as multiples since the alleged debt was converted into the

1    performing stock.  Plaintiff also asserts gross negligence of the parties alleging to be creditors

2    and their methods of collection and in the Defendants misrepresentation of the facts from the

3    inception of the alleged debt to the final destination of the alleged debt into the TRUST to all

4    parties, including the Investors of the Securities through the reports made to the SEC, a copy of

5    such reports is attached hereto as **Exhibit "E"** and incorporated herein by reference. The

6    Defendant has also violated 15 U.S.C. § 1 states "Every contract, combination in the form of

7    trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or

8    with foreign nations, is declared to be illegal."

9                            **V. CAUSES OF ACTION**

10                           **FIRST CAUSE OF ACTION**

11               **Violations of Fair Debt Collection Practices Act,**

12      **15 U.S.C. § 1692-1692p & Title 8 USC § 802 et seq. & 15 U.S.C § 1**

13                           **(Against All Defendants)**

14    19.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1-18 above.

15    20.    Defendants, and each of them, did act in concert and violated the Fair Debt

16    Collection Practices Act in order to obtain ill gotten gains and to maximize their profits. The

17    manner by which the Defendants, and each of them, have structured their debt offerings and

18    collection of that debt contradicts the efforts put forth by Congress to assure a process that

19    enables growth for the economy as a whole and the people's financial needs.  As stated by the

20    following congressional findings, a great deal of responsibility is bestowed to the people and

21    entities that are in charge of the decisions pertaining to the management of the people's debt and

22    the obligation of the system to assure an orderly process overseeing that management. The

23    findings also confirm the abusive nature of the debt collectors and the extent of the abuse.

24         **"§ 802. Congressional findings and declaration of purpose"**

25               "(a) There is abundant evidence of the use of abusive, deceptive,

26           and unfair debt collection practices by many debt collectors. Abusive debt

27           collection practices contribute to the number of personal bankruptcies, to

28

marital instability, to the loss of jobs, and to invasions of individual privacy. "

"(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers."

"(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts."

"(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce."

"(e) It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

§ 803. Definitions ("As used in this title")

(1) The term "Commission" means the Federal Trade Commission.

(2) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6), such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent

that collecting or attempting to collect any debt is in the performance of

his official duties;

(D) any person while serving or attempting to serve legal process on any

other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers,

performs bona fide consumer credit counseling and assists consumers in

the liquidation of their debts by receiving payments from such consumers

and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or

asserted to be owed or due another to the extent such activity (i) is

incidental to a bona fide fiduciary obligation or a bona fide escrow

arrangement; (ii) concerns a debt which was originated by such person;

(iii) concerns a debt which was not in default at the time it was obtained

by such person; or

(iv) concerns a debt obtained by such person as a secured party in a

commercial credit transaction involving the creditor.

(7) The term "location information" means a consumer's place of abode

and his telephone number at such place, or his place of employment.

(8) The term "State" means any State, territory, or possession of the

United States, the District of Columbia, the Commonwealth of Puerto

Rico, or any political subdivision of any of the foregoing.

21.    Defendants, WELLS FARGO and GMAC, and each of them, have violated "15

USC 1692d § 806 (3)" The publication of a list of consumers who allegedly refuse to pay debts,

except to a consumer reporting agency or to persons meeting the requirements of section 603(f)

or 604(3)[1] of this Act, by recording the Notice of Default and Notice of Trustee Sale with the

Orange County Recorder's Office to dishonor the Plaintiff to coerce payment.

22.    Defendants, WELLS FARGO and GMAC, and each of them, have violated "15 USC 1692d § 806 (4)" The advertisement for sale of any debt to coerce payment of the debt", by posting the trustee sale on a list managed by title companies and such other websites that advertised the sale of the property.

23.    Defendants, WELLS FARGO and GMAC, and each of them, have violated "15 USC 1692e § 807 (2) the false representation of (A) the character, amount, or legal status of any debt;" The defendants increased the amount of the alleged debt by adding interest fees plus other miscellaneous fees on their balance sheets, to show an ongoing effort of collections on the alleged debt while also misrepresenting the legal status of the alleged debt.

24.    Defendants, WELLS FARGO and GMAC, and each of them, have violated "15 USC 1692e § 807" "(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to— "(A) lose any claim or defense to payment of the debt"; or "(B) become subject to any practice prohibited by this title.", by their publication of the Notice of Default and the Notice of Trustee Sale.

25.    Defendants, WELLS FARGO and GMAC, and each of them, have violated "15 USC 1692e § 807(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed", by communication to Plaintiff attempting to collect on the alleged debt via telephone and mail, knowing the debt had been converted and was in dispute by the Plaintiff who had provided a demand for validation of debt to the alleged creditor, attached hereto as **Exhibit "F"**.

26.    Defendants, WELLS FARGO, and GMAC, and each of them, have violated "15 USC 1692e § 807 (9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval", since Defendants, and each of them, have used and continue to use official government letters with insignia identifying themselves as associated with a government entity or supported by a government entity such as HUD Counseling.

27.    Defendants, WELLS FARGO, GMAC and MERS, and each of them, have violated "15 USC 1692e § 807 (12) The false representation or implication that accounts have been turned over to innocent purchasers for value", by creating a fraudulent transfer of beneficial interest in the security instrument with fraudulent signatures on a document entitled "Assignment of Deed of Trust", dated January 6, 2011, **Exhibit "G"** attached hereto and incorporated herein by reference.  This document states "For Value Received", Defendant, MERS, transferred to Defendant, WELLS FARGO, all beneficial interest in the security instrument. It was signed by Jacob Randell, assistant secretary of MERS with notary acknowledgement by Candace Williams, Notary Public, as having personally appeared and being authorized to execute said document. This document was prepared by ETS SERVICES, LLC, whose business address is 2255 N. Ontario St, Suite 400, Burbank, California.  Candace Williams' notary commission is in the State of Texas.  Plaintiff is informed and believes and thereon alleges that there was no value received by MERS for this alleged transfer of interest, nor that Jacob Randell is an actual officer of MERS or that he personally appeared before a Notary public in Texas when executing said document.

28.    Defendants, WELLS FARGO and GMAC, and each of them, have violated "15 USC 1692e § 807(13) the false representation or implication that documents are legal process." On the Notice of Trustee Sale, Exhibit "C" is stated "IF YOU NEED AN EXPLANTION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT AN ATTORNEY", clearly misrepresenting the nature of the proceedings as these proceedings are not a legal process through the judicial system nor does the administrative nature of the proceedings provide for equal protection under the law as the consumer is completely naïve as to the true nature of these proceedings  which are administrative and a  means to collect a debt.

29.    Defendants, WELLS FARGO and GMAC, and each of them, have violated "15 USC 1692e § 807 (14) the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization".  The Defendants have used multiple names to attempt to collect on the alleged debt and have also utilized different Title companies to represent their interest in the debt without proper disclosure of the identity of

1  creditor of the alleged debt, which are the Holders of THE IMPAC SECURED ASSETS CORP,

2  MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-4.

3      30.      Defendant, GMAC, has violated "15 USC 1692e § 808 (1) the collection of any

4  amount (including any interest, fee, charge, or expense incidental to the principal obligation)

5  unless such amount is expressly authorized by the agreement creating the debt or permitted by

6  law", by collecting all the above fees when the alleged debt did not exist and could not be

7  validated or confirmed.  Effectively this process is continuously done with the hopes that no

8  consumer will ever question these facts nor suspect the fraudulent nature of these actions. This

9  process also provides the "Servicer of the Debt" with ongoing "Servicing Fees" that are charged

10 to the investors of the security interest now held in the TRUST.

11     31.      Defendants, WELLS FARGO and GMAC, and each of them, have violated "15

12 USC 1692e § 808 (6) Taking or threatening to take any nonjudicial action to effect dispossession

13 or disablement of property if— (A) there is no present right to possession of the property claimed

14 as collateral through an enforceable security interest; (B) there is no present intention to take

15 possession of the property; or (C) the property is exempt by law from such dispossession or

16 disablement".  The Defendants have perfected this process of non judicial dispossession or

17 disablement of the property through the Notice of Trustee Sale, Exhibit "C", and the subsequent

18 sale of the property as a security instrument to the alleged debt without any present rights. The

19 Defendants main objective is to use this process as a method of intimidation to coerce a force

20 measure on collecting the alleged debt with no intention of possessing the property.

21     32.      Defendants, WELLS FARGO, GMAC and MERS, and each of them, have

22 violated "15 USC 1692e § 809" in its entirety.  The Plaintiff ("Consumer") served a "Notice of

23 Debt Validation & Confirmation" to the Defendants, giving a formal request and "Constructive

24 Notice" that the alleged debt was being questioned and/or disputed, this "Notice of Debt

25 Validation & Confirmation" was served upon the Defendants' attorney with ample time given

26 for responses and documentation before a hearing date scheduled for November 14, 2011, in the

27 United States Bankruptcy Court. The attorneys for said Defendants submitted fraudulent

28 documents to the court as validation of the alleged debt by showing a copy of a Promissory Note

that the Defendants and their attorneys know does not exist. The copy of the contract was also submitted as evidence of the alleged debt. The Contract itself clearly states that the alleged debt is only confirmed by the original Note, not a copy. The Defendants, without regard to due process and civil procedures, take liberty in claiming debts that do not exist, show fraudulent documentation as proof in a court of law and flagrantly violate the public trust.

33.    Defendants WELLS FARGO, and GMAC, and each of them, have violated "15 USC 1692j § 812. (a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating" The Notice of Default and Notice of Trustee Sale, Exhibits B & C, are such forms used to deceive consumers into the false belief that the creditors consist of the Trustee of the Contract and the servicer of the alleged debt, when in fact the only legal creditor of the alleged debt are the Holders of IMPAC SECURED ASSETS CORP, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-4, since its placement as a security within the TRUST. The Defendant has also violated 15 U.S.C. Sec 1 states "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

34.    By engaging in the conduct described above, each of the Defendants violated, and unless restrained and enjoined will continue to violate, Fair Debt Collection Practices Act, 15 U.S.C. § 1692 -1692p & Title 8 USC § 802 et seq. & 15 U.S.C § 1

## SECOND CAUSE OF ACTION

### Fair Credit Reporting Act,

### 15 U.S.C. § 1681 et seq. & 15 U.S.C § 1

### (Against All Defendants)

35.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1-18 above.

36.    Defendants, and each of them, did act in concert and violated the Fair Credit Reporting Act by reporting alleged defaults on the alleged debt as a consumer reporting agency

1   with neither fairness nor accuracy. It is an essential element of our economic system to ensure

2   that consumer reporting agencies utilize an accurate and fair reporting system. The credit

3   agencies, such as banks and other debt collectors, should be held at the highest standard of

4   practice when reporting on alleged consumer debts. In a capitalistic society, an individual is

5   extended multiple classes of debt that enables the individual to conduct commerce and be a

6   contributor to the country's economic well being. These obligations are managed through the

7   credit reporting system that congress and the people have created for the betterment of our

8   society through commerce. When the abuse of the system is initiated by the very entities that the

9   people and congress have entrusted to properly conduct such actions then the subsequent result

10  of such abuse is the destruction of the commercial ability of the individual consumer and the

11  economy at large. By these entities reporting such erroneous information they are in fact

12  impeding an individual's freedom, as major agencies, both government and private enterprise,

13  rely on these reports for verification of a person's good standing in society. As stated by the

14  following congressional findings, a great deal of responsibility is bestowed to the reporting

15  agencies to be accurate and fair.

16          **§ 602. Congressional findings and statement of purpose** [15 U.S.C. §

17          1681]

18          (a) *Accuracy and fairness of credit reporting.* The Congress makes the

19          following findings:

20          (1) The banking system is dependent upon fair and accurate credit

21          reporting. Inaccurate credit reports directly impair the efficiency of the

22          banking system, and unfair credit reporting methods undermine the public

23          confidence which is essential to the continued functioning of the banking

24          system.

25          (2) An elaborate mechanism has been developed for investigating and

26          evaluating the credit worthiness, credit standing, credit capacity, character,

27          and general reputation of consumers.

28

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

(b) *Reasonable procedures.* It is the purpose of this title to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.

**§ 603. Definitions; rules of construction** [15 U.S.C. § 1681a]

(a) Definitions and rules of construction set forth in this section are applicable for the purposes of this title.

(b) The term "person" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.

(c) The term "consumer" means an individual.

(d) Consumer Report

(1) *In general.* The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 604 [§ 1681b].

(2) *Exclusions.* Except as provided in paragraph (3), the term "consumer report" does not include

(A) subject to section 624, any (i) report containing information solely as to transactions or experiences between the consumer and the person making the report; (ii) communication of that information among persons related by common ownership or affiliated by corporate control; or

(iii) communication of other information among persons related by common ownership or affiliated by corporate control, if it is clearly and conspicuously disclosed to the consumer that the information may be communicated among such persons and the consumer is given the opportunity, before the time that the information is initially communicated, to direct that such information not be communicated among such persons;

(B) any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device;

(C) any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his or her decision with respect to such request, if the third party advises the consumer of the name and address of the person to whom the request was made, and such person makes the disclosures to the consumer required under section 615 [§ 1681m]; or…

(e) The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have

knowledge concerning any such items of information. However, such

information shall not include specific factual information on a consumer's

credit record obtained directly from a creditor of the consumer or from a

consumer reporting agency when such information was obtained directly

from a creditor of the consumer or from the consumer.

(f) The term "consumer reporting agency" means any person which, for

monetary fees, dues, or on a cooperative nonprofit basis, regularly engages

in whole or in part in the practice of assembling or evaluating consumer

credit information or other information on consumers for the purpose of

furnishing consumer reports to third parties, and which uses any means or

facility of interstate commerce for the purpose of preparing or furnishing

consumer reports.

(g) The term "file," when used in connection with information on any

consumer, means all of the information on that consumer recorded and

retained by a consumer reporting agency regardless of how the

information is stored.

(h) The term "employment purposes" when used in connection with a

consumer report means a report used for the purpose of evaluating a

consumer for employment, promotion, reassignment or retention as an

employee.

37.    Defendant, GMAC, violated "15 U.S.C. § 1681b § 604. Permissible purposes of

consumer reports (a) *In general.* Subject to subsection (c), any consumer reporting agency may

furnish a consumer report under the following circumstances and no other: (3) To a person which

it has reason to believe (E) intends to use the information, as a potential investor or servicer, or

current insurer, in connection with a valuation of, or an assessment of the credit or prepayment

risks associated with, an existing credit obligation; or (F) otherwise has a legitimate business

need for the information (i) in connection with a business transaction that is initiated by the

consumer; or (ii) to review an account to determine whether the consumer continues to meet the

terms of the account", by reporting the alleged defaults on the alleged debt without proper due diligence on the true nature of the alleged default and the correctness of the information that was passed on to agencies that clearly use this information to underwrite the Plaintiff for credit risks.

38.    Defendant, GMAC, violated "15 U.S.C. § 1681e § 607. Compliance procedures (b) *Accuracy of report.* Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The procedures set forth by defendant GMAC do not provide an accurate reporting system with regard to the true nature of the alleged debt as it has since been converted into a performing stock.  If Defendant GMAC claims that they had no knowledge of the sale and the conversion of that debt into a performing stock, they prove they are not following reasonable procedures to assure the accuracy of the information they are reporting. The Defendant has also violated 15 U.S.C. Sec 1 states "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

39.    Defendants, WELLS FARGO and GMAC, and each of them, are liable under 15 U.S.C. § 1681n § 616. Civil liability for willful noncompliance (a) *In general.* Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of (2) such amount of punitive damages as the court may allow; and (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. (c) *Attorney's fees.* Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper." Defendants WELLS FARGO and GMAC have willfully presented fraudulent and false documentation into the records of the County Recorder's office of Orange County, as well as presented fraudulent documentation into the record of the Bankruptcy Court at the hearing on

1  November 20, 2011, through their attorneys, without consideration of the merits of the law and

2  have violated the court and all that it stands for in their duties to protect the public interest.

3       40.      By engaging in the conduct described above, each of the defendants violated, and

4  unless restrained and enjoined will continue to violate, Fair Credit Reporting Act, 15 U.S.C. §

5  1681 et seq.

### THIRD CAUSE OF ACTION
**Violations of the Securities Act of 1933**
**Section 11, 12, 17(a)**
**("Securities Act")**
**(Against All Defendants)**

9       41.      Plaintiff re-alleges and incorporates herein by reference paragraphs 1-18 above.

10       42.      "Securities Act of 1933:   One of the cornerstones upon which the current

11  financial regulatory system is based, often referred to as the truth in securities law.  It requires

12  that investors receive any significant or financial information about corporations' securities

13  offerings.  It prohibits misrepresentations and fraud in the sale of securities. The law also

14  requires issuers to file a registration statement with the Securities and Exchange Commission

15  ("SEC") that outlines the securities offering.  Each registration statement has a prospectus, which

16  contains information about the securities being offered.  The registration statement also contains

17  information about the cost of doing the offering, a description of current business initiatives, and

18  an indemnification of directors and officers."

19       43.      Defendants, WELLS FARGO and IMPAC, and each of them, did act in concert

20  and violated Sections 17(a) of the Securities Act "(a) employ devices, schemes, or artifices to

21  defraud (b) obtain money or property by means of untrue statements of a material fact or by

22  omitting to state a material fact necessary in order to make the statements made, in light of the

23  circumstances under which they were made, not misleading; or (c) engage in transactions,

24  practices, or courses of business which operate or would operate as a fraud or deceit upon the

25  purchasers of these securities." by claiming the existence of the alleged Note as a tangible and

26  true instrument of debt as part of the collateral material that they submitted to the Bankruptcy

27  Court as validation of their claim on the alleged debt and the security instrument, when in fact

28  the Note that is the proof for the debt based on the contract has been converted from a debt based

12-12020-mg    Doc 6045-1    Filed 12/09/13    Entered 12/09/13 15:17:10    Exhibit One
Pg 21 of 34

Note into a securitized instrument that is governed by the Rules of the SEC and in turn has been
reported as a performing stock to the SEC on annual basis per Sections 11 & 12 of the Securities
Act. In fact, the conversion of the Debt Note to the Stock Certificates has modified the nature of
the alleged debt into an instrument that does not allow for reverse conversion of that instrument
into a debt based Note. The repeated sales of these alleged debt contracts provide the
Defendants ill gotten gains at the sacrifice of the citizens of the United States. The Securities Act
was not enacted to protect the investors only; it was put in place to prevent the exact actions
perpetrated by these Defendants. The Defendants have involved the public and managed to
masterfully betray their trust by using each citizen's marketability in the securities realm.

44.    Furthermore these Defendants commit obvious fraudulent acts within the courts
and against the people using a fraudulent security instrument as collateral of an alleged debt.
The Defendants must be held responsible for the violations of the public trust. The alleged debt
is only validated by the original Note and not a fraudulent copy. The reporting of the Certificates
of Stock to the SEC should provide ample proof that the Defendants have utilized the alleged
debt to gain profits and have been tendered for the alleged debt to which the Defendants are not
the entitled creditor.

45.    By engaging in the conduct described above, the reporting of the alleged debt
secured by the interest of the alleged borrower to the SEC and the servicing of the alleged debt
creating an Agency between the interested parties, each of the Defendants violated, and unless
restrained and enjoined will continue to violate, Section 11, 12, 17(a) of the Securities Act 15
U.S.C § 77(f), 77(g), 77(q)

## FOURTH CAUSE OF ACTION

### Violations of Section 10(b) of the Securities

### Exchange Act of 1934

### (Against All Defendants)

46.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1-18 above.

47.    The Securities Exchange Act of 1934 was enacted for the reasons hereinafter
enumerated, transactions in securities as commonly conducted upon securities exchanges and

1  over-the-counter markets are affected with a national public interest which makes it necessary to

2  provide for regulation and control of such transactions and of practices and matters related

3  thereto, including transactions by officers, directors, and principal security holders, to require

4  appropriate reports to remove impediments to and perfect the mechanisms of a national market

5  system for securities and a national system for the clearance and settlement of securities

6  transactions and the safeguarding of securities and funds related thereto, and to impose

7  requirements necessary to make such regulation and control reasonably complete and effective,

8  in order to protect interstate commerce, the national credit, the Federal taxing power, to protect

9  and make more effective the national banking system and Federal Reserve System, and to insure

10  the maintenance of fair and honest markets in such transactions.  15 U.S.C. Sec 1 states "Every

11  contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or

12  commerce among the several States, or with foreign nations, is declared to be illegal."  The

13  Defendants, in the utilization of the TRUST, have violated the Exchange Act.

14      48.    By engaging in the conduct described above, each of the Defendants have

15  violated and unless restrained will continue to violate the Exchange Act.

16  

**FIFTH CAUSE OF ACTION**

17  

**Violation of 18 U.S.C. §§ 1341, 1342, 1346, 1348, 1349**

18  

**Mail Fraud and Other Fraud Offenses**

19  

**(Against All Defendants)**

20      49.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1-18 above.

21      50.    Defendants GMAC, WELLS FARGO, IMPAC AND MERS and each of them did

22  act in concert to violate and continue to violate the laws of this United States of America today

23  and have made their actions a matter of reoccurring business practices. (a)The defendant's

24  actions are well documented through their notifications and communication to the borrower by

25  communicating through the mail material that are fraudulent and untrue and have violated 18

26  U.S.C. §§ 1341 & 18 U.S.C. §§ 1346, see Notice of Default ("Exhibit B") and Notice of Trustee

27  Sale ("Exhibit C").

28

United States District Court Complaint - 21

51.     Defendants, and each of them, have communicated repeatedly and numerously under fictitious name or addresses in violation of 18 U.S.C. §§ 1342.

52.     Defendants, and each of them, have numerously transmitted and communicated through the United States Mail with fraudulent material being presented to Plaintiff in order to force and coerce payments on alleged debts owed in violation of 18 U.S.C. §§ 1349 , see Notice of Default ("Exhibit B") and Notice of Trustee Sale ("Exhibit C").

53.     In addition to the communications sent to Plaintiff in regards to the alleged debt, the Defendants, and each of them, have filed fraudulent collateral documentation to create the facade that the Defendants have the proper standing in the forfeiture of the real property in violation of 18 U.S.C. §§ 1341, 18 U.S.C. §§ 1346, see **"Exhibit H"** attached hereto and incorporated herein by reference..

54.     Defendants have filed fraudulent documentation with the United States Bankruptcy Court without proper standing on the alleged debt and their refusal to confirm and verify the debt at the time of submission of such documentation in violation of 18 U.S.C. §§ 1346.

55.     Defendants, and each of them, have mailed such documents through the United States Postal service to the attention of Plaintiff and as such have violated 18 U.S.C. §§ 1341 and 18 U.S.C. §§ 1349.

56.     Defendants have filed improper documentation pertaining to IMPAC SECURED ASSETS CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-4 by mailing and submitting these documents to the Bankruptcy Court as evidence of the alleged debt in violation of 18 U.S.C. §§ 1341 and The Defendant have also violated 15 U.S.C. § 1 states "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

57.     By creating a relationship between the Defendants GMAC, WELLS FARGO, IMPAC, MERS and the alleged borrower of the debt, the Plaintiff, these Defendants have

1   created an agency relationship and by doing so have violated 18 U.S.C. §§ 1348,

2   1349,1346,1342.

3       58.    By engaging in the conduct described above, each of the Defendants have

4   violated and unless restrained will continue to violate 18 U.S.C. §§ 1341, 1342, 1346, 1348,

5   1349.

6                          **SEVENTH CAUSE OF ACTION**

7                                **CIVIL RICO**

8       **FEDERAL RACKETEER INFLUENCED and CORRUPT ORGANIZATIONS ACT**

9                   **Violations of 18 USC § 876 (d), 880, 891-894, 1029,**

10                     **1581, 1952, 1956, 1957, 1961 et seq., 1964**

11                              **(Against All Defendants)**

12      59.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1-18 above.

13      60.    Defendants GMAC, WELLS FARGO, IMPAC AND MERS and each of them did

14  act in concert to violate and continue to violate laws of this United States of America today and

15  have made their actions a matter of reoccurring business practices that has caused the loss of

16  millions of properties and trillions of dollars in damages to the economy of the United States of

17  America and the citizens of this land. The defendant's actions are not exclusive to them, but

18  rather a norm of an industry that has chosen to violate and dishonor many of the rules and

19  regulations bestowed on us as a civilized society. The fraudulent actions that the defendants are

20  accused of has become a necessary evil for the continued existence and prosperity as they try to

21  protect their assets of today; that equals ("The top six banks hold assets equivalent to 65% of the

22  United States of America's GDP, based on the copy of TIME magazine dated Dec 5th ,2011")

23  (Last estimated numbers for the GDP= 15 Trillion Dollars) and their promises of tomorrow to

24  the world of finance through the many innovative money mechanics created to leverage the debt

25  whether through Government borrowing or Private Sector investments. The defendants actions

26  are not a new phenomena in the world of business, but what is amazing about their ongoing

27  actions is the willingness of the system to tolerate and excuse such actions as part of doing

28  business and try to sell it to the public, congress and the courts as to big to fail. The reluctance of

1 the judicial branch has not gone without notice on this matter, in turn creating a moral hazard

2 that continues to intensify. But recently certain courage's people have chosen to have a detailed

3 overview of the events pertaining to way and structure of these financial behemoths and to no

4 one's surprise it has become clear that these institutions are clearly at ease with their blatant

5 disregard for the laws of this amazing country.

6    61.    The Defendants have taken advantage of the established protocols created the

7 Federal Reserve and passed by the representatives of the people within the congress of the

8 United States of America for the Banks and Financial institutions and have integrated their

9 flawed procedures into a system that has allowed far too much leniency to these intuitions. The

10 actions of the defendants are a reminder of a time not so long ago that we as a nation had to

11 endure another organization ("MAFIA") that sought to be untouchable and beyond the reach of

12 the laws of this great nation. This organization and others acting in the same manner is the reason

13 the Federal Racketeer Influenced and Corrupt organization Act  (" CIVIL RICO") was passed by

14 the congress of these United States of America to protect us as a nation against organizations that

15 generate more revenues that most countries and influence lives of everyone around the world.

16 This person is not ignorant to the facts of the necessity of such financial organizations for the

17 betterment of our world; however it is ignorant to not see the destruction that such organizations

18 can bring in the hands of the un-righteous few. The Defendant have also violated 15 U.S.C. § 1

19 states "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint

20 of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

21

22    62.    This is a civil action for RICO remedies authorized by the federal statutes at 18

23 U.S.C. 1961 et seq.; for declaratory and injunctive relief; for actual, consequential and exemplary

24 damages; and for all other relief which this honorable Superior Court deems just and proper

25 under all circumstances which have occasioned this Initial COMPLAINT. See 18 U.S.C. §§

26 1964(a) and (c) ("Civil RICO").The primary cause of this action is a widespread criminal

27 enterprise engaged in a pattern of racketeering activity across State lines, and a conspiracy to

28 engage in racketeering activity involving numerous RICO predicate acts during the past ten (10)

1  calendar years. The predicate acts alleged here cluster around relating to Financial Institution

2  Fraud, Extortion and Threats, Extortionate Credit Transactions, Civil Forfeiture of Real

3  Property, Fraud and False Statements, Relating to Interference with Commerce, Obstruction of

4  Criminal Investigations, Racketeering. See 18 U.S.C. §§ 876(d), 880, 891, 891(7), 891(9), 985,

5  1029, 1510, 1511,1951,1956,1957 respectively. The violations stated also qualify as one or more

6  of the RICO Predicate Acts that are itemized at 18U.S.C. §§ 1961(1) (B), (1) (D), (5), and 6(B).

7      63.    Other RICO predicate acts, although *appearing* to be isolated events, were

8  actually part of the overall conspiracy and *pattern of racketeering activity* alleged herein, *e.g.*

9  mail fraud and fictitious name or address, securities fraud. See 18 U.S.C. §§ 1341, 1342, 1346,

10 1348, and 1349 respectively. The primary function of the Racketeering Enterprise has been to

11 collect and gather investors from around the world and to market the American citizen as the

12 perfect debt service vehicle for the origination of debts that were secured by real property, it was

13 also the intention of the defendants to take these real properties back without due process and the

14 proper legal means provided by the Law.

15              COUNT ONE

16          Acquisition and Maintenance of an Interest in and Control of

17          An Enterprise Engaged in a Pattern of Racketeering Activity:

18                  18 U.S.C. §§ 1961(5), 1962(b)

19     64.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby

20 incorporates same by reference, as if all were set forth fully herein. Substance prevails over form.

21 At various times and places partially enumerated in Plaintiff's documentary material, all

22 Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO

23 enterprise of individuals who were associated in fact and who did engage in, and whose

24 activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4),

25 (5), (6) (B), (9), and other investigations that are underway under 18 U.S.C. §§ 1961(10),

26 1962(a) (b) (c) (d).

27     65.    During the ten (10) calendar years preceding December 5, 2011, A.D., all

28 Defendants did cooperate jointly and severally in the commission of two (2) or more of the

1  RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(B) and (D), and

2  did so in violation of the RICO law at 18 U.S.C. 1962 (a) (b) (c) (d) (Prohibited activities).

3      66.    Plaintiff further alleges that all Defendants did commit two (2) or more of the

4  offenses itemized above in a manner which they calculated and premeditated intentionally to

5  threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in

6  violation of the RICO law at 18 U.S.C. 1962 (a) (b) (c) (d) supra.

7                              COUNT TWO

8                  Conduct and Participation in a RICO Enterprise

9                    Through a Pattern of Racketeering Activity:

10                      18 U.S.C. §§ 1961(5), 1962(d)

11     67.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby

12  incorporates same by reference, as if all were set forth fully herein. Substance prevails over form.

13  At various times and places partially enumerated in Plaintiff's documentary material, all

14  Defendants did associate with a RICO enterprise of individuals who were associated in fact and

15  who engaged in, and whose activities did affect, interstate and foreign commerce. Likewise, all

16  Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the

17  affairs of said RICO enterprise through a pattern of racketeering activity, all in violation of 18

18  U.S.C. §§ 1961(4), (5), (6) (a), (9), and 1962 (a) (b) (c) (d).

19     68.    During the ten (10) calendar years preceding March 1, 2003, A.D., all Defendants

20  did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate

21  acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1) (B) and (D), and did so in

22  violation of the RICO law at 18 U.S.C. 1962 (a) (b) (c) (d) (Prohibited activities).

23     69.    Plaintiff further alleges that all Defendants did commit two (2) or more of the

24  offenses itemized above in a manner which they calculated and premeditated intentionally to

25  threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in

26  violation of the RICO law at 18 U.S.C. 1962 (a) (b) (c) (d) supra.

27                              COUNT THREE

28                      Conspiracy to Engage in a

Pattern of Racketeering Activity:

18 U.S.C. §§ 1961(5), 1962(d)

70.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein. Substance prevails over form. At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did conspire to acquire and maintain an interest in a RICO *enterprise* engaged in a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(a) (b) (c) and (d).  At various times and places partially enumerated in Plaintiff's documentary material, all Defendants did also conspire to conduct and participate in said RICO enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(a) (b) (c) and (d). See also 18 U.S.C. §§ 1961(4), (5) and (9).

71.    During the ten (10) calendar years preceding March 1, 2003, *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(B) and (D), in violation of 18 U.S.C. 1962(d).  Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of 18 U.S.C.1962(a) (b) (c) and (d). (Prohibited activities *supra*).

## VI REQUEST FOR RELIEF

WHEREFORE, the Plaintiff requests that the Court:

### I.

Issue findings of fact and conclusions of law that the Defendants committed the alleged violations.

### II.

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining each Defendant and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from violating or proceeding with any actions that may further damage the Plaintiff.

### III.

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), a temporary restraining order and a preliminary injunction prohibiting any actions related to the Forfeiture of the property located at 27495 Hidden Trail Road, Laguna Hills, California 92653, until such time that proper civil action has been heard by a Jury and decided upon.

### IV.

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), a temporarily restraining order and a preliminary injunction prohibiting each of the Defendants from destroying documents.

### V.

That this Court liberally construe the RICO laws and thereby find that all Defendants, both jointly and severally, have acquired and maintained, both directly and indirectly, an interest in and/or control of a RICO *enterprise* or *persons* and of other individuals who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of 18 U.S.C. 1962 (b) (Prohibited activities).

///

///

### VI.

Issue orders that all Defendants be required to account for all gains, profits, and advantages derived from their several acts of *racketeering activity* in violation of 18 U.S.C. 1962(b) and from all other violation(s) of applicable State and federal law(s).

### VII.

Issue Judgment for Plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(b) (d), according to the best available proof.

### VIII.

Order Defendants to pay Plaintiff treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(a) (b) (c) and all other damages under authority of 15 U.S.C 1692- 1692(p), 1681 et seq, 1666 et seq. (triple), according to the best available proof.

### IX.

Order all Defendants to pay Plaintiff's costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees, at a minimum of $500.00 per hour worked (Plaintiff's standard professional rate at start of this action).

### X.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### XI.

Grant Plaintiff such other and further relief as this Court may determine to be just and necessary.

///

///

1

## VII DEMAND FOR JURY TRIAL

2

3    Plaintiff hereby requests a jury trial on all issues raised in this complaint under the Seventh

4    Amendment to the U.S Constitution in accordance with Federal Rule of Civil Procedure 38.

5

6    Dated: 12/7/11

7                                           SEPIDEH CIRINO,
8                                           Plaintiff in pro per

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court Complaint - 30

## TRUE BILL

| | |
|---|---|
| Attorney fees : | ( TBD) |
| Amount of consequential damages: | ( TBD) |
| Summary of Actual Damages Partial List: | |
| Amount scheduled by the alleged debtor, | $1,411,404.00 |
| Triple damage multiplier (3x): | $4,234,212.00 |
| Interest paid from December 2004 - September 2010 | $ 378,000.00 |
| Triple damage multiplier (3x): | $1,134.000.00 |
| Credit Line Damages: | $ 400,000.00 |
| Triple damage multiplier (3x): | $1,200,000.00 |
| Commercial Ability hindered 20 credit cards x $50,000.00 | $1,000,000.00 |
| Triple damage multiplier (3x): | $3,000,000.00 |
| Conspiracy in restraint of Trade or Commerce: | $100,000,000.00 |
| Triple damage multiplier (3x): | $ 300,000,000.00 |
| Subtotal: | $412,757,616.00 |
| Summary of Punitive Damages (3x): | $1,238,272,848.00 |
| **TOTAL DAMAGES** (minimum): | $1,651,030,464.00 |

The damage matrix is three-dimensional: for each Defendant, there are actual, consequential, and punitive damages (3 columns) on each of three counts (3 rows).

1

2

3                          **LIST OF EXHIBITS**

4    Pursuant to 18 U.S.C. 1961(9), Plaintiff now formally incorporates Her *documentary material* by

5    reference to all of the following Exhibits, as if set forth fully here, to wit:

6            Exhibit "A" -  Deed of Trust with Cover Sheet, 5 pages

7            Exhibit "B" -  Notice of Default with Cover Sheet, 4 pages.

8            Exhibit "C" -  Notice of Trustee Sale with Cover Sheet, 3 pages.

9            Exhibit "D" -  Notice of Motion and Motion for Relief from Automatic Stay filed in the

10                           US Bankruptcy Court with Cover Sheet, 54 pages.

11           Exhibit "E" -  Annual SEC Report with Cover Sheet, # pages.

12           Exhibit "F" -  Demand for Validation and Proof of Claim with Cover Sheet 7 pages.

13           Exhibit "G" -  Assignment of Deed of Trust with Cover Sheet, 2 pages.

14           Exhibit "H" -   Substitution of Trustee with Cover Sheet, 3 pages

15

16           Total number of Exhibit pages attached - 78

17

18

19

20

21

22

23

24

25

26

27

28

# **VERIFICATION**

I, SEPIDEH CIRINO, Plaintiff in the above entitled action, hereby verifies under penalty of perjury, under the laws of the United States of America, without the "United States" (federal government), that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1). See the Supremacy Clause in the Constitution for the United States of America, as lawfully amended (hereinafter "U.S. Constitution").

Dated: 12/7/11

SEPIDEH CIRINO, *Sui Juris*
*Without Recourse*