| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Brian A. Paino (SBN 251243)<br>bpaino@piteduncan.com<br>Catherine T. Vinh (SBN 269020)<br>cvinh@piteduncan.com<br>Joseph Delmotte (SBN 259460)<br>jdelmotte@piteduncan.com<br>PITE DUNCAN, LLP<br>4375 Jutland Drive, Suite 200<br>P.O. Box 17933<br>San Diego, CA 92177-0933<br>Telephone: (858)750-7600<br>Facsimile: (619) 590-1385 | |
| ☒  *Attorney for Movant(s)*<br>☐  *Movant(s) appearing without an attorney* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:<br><br>SEPIDEH SALLY CIRINO,<br><br><br><br><br><br><br><br><br><br>                                   Debtor(s). | CASE NO.: 8:11-bk-22081-MW<br><br>CHAPTER: 7<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY  UNDER 11 U.S.C. § 362 (WITH SUPPORTING DECLARATIONS) REGARDING REAL PROPERTY**<br><br>DATE:   November 14, 2011<br>TIME:    9:00 A.M.<br>CTRM:  6C |

**MOVANT:**  WELLS FARGO BANK, N.A., AS TRUSTEE FOR HOLDERS OF IMPAC SECURED ASSETS CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-4

**Movant is the *(check one)***
☐  Holder of Deed of Trust
☒  Assignee of Holder of Deed of Trust
☐  Servicing Agent for Holder of Deed of Trust or Assignee of Holder of Deed of Trust

1.  NOTICE IS HEREBY GIVEN to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the above date and time and in the stated courtroom, Movant in the above-captioned matter will move this court for an Order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

2.  **Hearing Location:**  ☐  **255 East Temple Street, Los Angeles**        ☒  **411 West Fourth Street, Santa Ana**
                                          ☐  **21041 Burbank Boulevard, Woodland Hills**   ☐  **1415 State Street, Santa Barbara**
                                          ☐  **3420 Twelfth Street, Riverside**

Exhibit D

3.  a.  ☒  This Motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

    b.  ☐  This Motion is being heard on SHORTENED NOTICE. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence may be filed and served:

        ☐ at the hearing    ☐ at least _____ court days before the hearing.

        (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

        (2) ☐ A Motion for Order Shortening Time was filed per LBR 9075-1(b) and was granted by the court and such motion and order have been or are being served upon the Debtor and trustee, if any.

        (3) ☐ A Motion for Order Shortening Time has been filed and is pending. Once the court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion, if any.

4.  You may contact the clerk's office to obtain a copy of an approved court form for use in preparing your response (Optional Court Form F 4001-1M.RES), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

5.  If you fail to file a written response to the Motion or fail to appear at the hearing, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Date:    October 18, 2011                              Respectfully submitted,


                                                       WELLS FARGO BANK, N.A., AS TRUSTEE FOR
                                                       HOLDERS OF IMPAC SECURED ASSETS CORP.,
                                                       MORTGAGE PASS-THROUGH CERTIFICATES, SERIES
                                                       2004-4
                                                       Movant name


                                                       Pite Duncan, LLP
                                                       Printed name of law firm (if applicable)


                                                       /s/ Catherine T. Vinh
                                                       Signature of individual Movant or attorney for Movant


                                                       Catherine T. Vinh (SBN 269020)
                                                       Printed name of individual Movant or attorney for Movant

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY[1]

1.  **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (the Property):

    | | |
    |---|---|
    | Street address: | 27495 Hidden Trail Road |
    | Unit/suite no.: | |
    | City, state, zip code: | Laguna Hills, California 92653 |

    Legal description or document recording number (including county of recording): Orange County; Inst. No. 2004000976411

    ☐ See attached continuation page.

2.  **Case History:**

    a.  ☒ A voluntary ☐ An involuntary petition    under Chapter  ☒ 7  ☐ 11  ☐ 12  ☐ 13
        was filed on *(specify date)*: 8/29/2011

    b.  ☐ An Order of Conversion to Chapter    ☐ 7  ☐ 11  ☐ 12  ☐ 13
        was entered on *(specify date)*:

    c.  ☐ Plan was confirmed on *(specify date)*:

    d.  ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See attached declaration.

3.  **Grounds for Relief from Stay:**
    a.  ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

        (1) ☒ Movant's interest in the Property is not adequately protected.

            (a) ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.

            (b) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

            (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor.

            (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted to Movant.

        (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder and defraud Movant.

            (a) ☐ Movant is the only creditor or one of very few creditors listed on the Debtor's master mailing matrix.

            (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.

            (c) ☐ The Debtor filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the petition and a few other documents.  No other Schedules or Statement of Financial Affairs (or chapter 13 Plan, if appropriate) have been filed.

            (d) ☐ Other *(see attached continuation page)*.

(3) ☐ *(Chapter 12 or 13 cases only)*

    (a) ☐ Postconfirmation plan payments have not been made to the standing trustee.

    (b) ☐ Postpetition payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), Debtor has/have failed within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), Debtor's filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy filings affecting the Property.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached declaration(s).

5. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

a. ☒ Movant submits the attached declaration(s) on the court's approved forms (*if applicable*) to provide evidence in support of this Motion pursuant to the LBR.

b. ☐ Other declaration(s) are also attached in support of this Motion.

c. ☒ Movant requests that the court consider as admissions the statements made by Debtor under penalty of perjury concerning Movant's claims and the Property set forth in Debtor's schedules. Authenticated copies of the relevant portions of the schedules are attached as Exhibit <u>4</u>.

d. ☐ Other evidence *(specify)*:

6. ☐ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following *(specify forms of relief requested)*:**

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. **Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor via telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.**

3. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached declaration(s):

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  ☒  Additional provisions requested:

    a.  ☒  That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

    b.  ☒  That the 14-day stay described by FRBP 4001(a)(3) is waived.

    c.  ☐  That Extraordinary Relief be granted as set forth in the Attachment (Use Optional Court Form F 4001-1M.ER).

    d.  ☐  For other relief requested, see attached continuation page.

5.  If relief from stay is not granted, Movant respectfully requests the court to order adequate protection.

Date:   October 18, 2011

Respectfully submitted,

WELLS FARGO BANK, N.A., AS TRUSTEE FOR HOLDERS OF IMPAC SECURED ASSETS CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-4
Movant name

Pite Duncan, LLP
Printed name of law firm (if applicable)

/s/ Catherine T. Vinh
Signature of individual Movant or attorney for Movant

Catherine T. Vinh (SBN 269020)
Printed name of individual Movant or attorney for Movant

[1] This Motion for Relief from Automatic Stay shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004, notwithstanding Pite Duncan, LLP's participation in this proceeding. Moreover, the within party does not authorize Pite Duncan, LLP, either expressly or impliedly through Pite Duncan, LLP's participation in this proceeding, to act as its agent for purposes of service under Fed. R. Bankr. P. 7004.

## REAL PROPERTY DECLARATION

I, _____Kathy Santin_____, declare as follows:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because *(specify):*

   ☐ I am the Movant and owner of the Property.

   ☐ I manage the Property as the authorized agent for the Movant.

   ☐ I am employed by Movant as *(state title and capacity):*

   ☒ Other *(specify):* See **Attachment 1.**

2. I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. The Movant is:

   ☐ Original holder of the beneficial interest in the Property. A true and correct copy of a recorded proof of this interest is attached hereto as Exhibit ___ *(e.g. deed of trust).*

   ☒ Assignee of the original holder of the beneficial interest in the Property. A true and correct copy of recorded proof of this interest is attached hereto as Exhibit 3. *(E.g., allonge, assignment, et.al.)*

   ☐ Servicing or subservicing agent pursuant to a servicing agreement or other documented authorization to act as Movant for the owner of the beneficial interest. Attached hereto as Exhibit ___ is a true and correct copy of the relevant part of the document which reflects authority to act as Movant for the owner of the beneficial interest.

4. a.  The address of the Property that is the subject of this Motion is:

   Street address:       27495 Hidden Trail Road
   Unit/suite no.:
   City, state, zip code:   Laguna Hills, California 92653

   b.  The legal description or document recording number (including county of recording) set forth in Movant's deed of trust is attached as Exhibit 2.

   ☐ See attached page.

5. Type of property: *(Check all applicable boxes)*

   a. ☒ Debtor's(s') principal residence          b. ☐ Other single family residence
   c. ☐ Multi-unit residential                    d. ☐ Commercial
   e. ☐ Industrial                                f. ☐ Vacant land
   g. ☐ Other *(specify):*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2011                                    Page 6                                    F 4001-1.MOTION.RP

6. Nature of Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☒ Co-owner(s) *(specify)*: John Cirino is a Co-Borrower, but not a party to the Bankruptcy.

   c. ☐ Lien holder *(specify)*:

   d. ☐ Other *(specify)*:

   e. ☒ Debtor ☒ did    ☐ did not      list the Property in the schedules filed in this case.

   f. ☒ Debtor acquired the interest in the Property by    ☒ grant deed ☐ quitclaim deed ☐ trust deed
      The deed was recorded on:

7. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $1,351,485.55 |
| b. | Accrued interest: | $ | $ | $0.00 |
| c. | Late charges | $ | $ | $0.00 |
| d. | Costs (attorney's fees, other costs): | $ | $ | $0.00 |
| e. | Advances (property taxes, insurance): | $ | $ | $0.00 |
| f. | Less suspense or partial balance paid: | $ [          ] | $ [          ] | $[0.00] |
| g. | TOTAL CLAIM as of: 9/16/2011 | $ | $ | $1,351,485.55 |
| h. | ☐ Loan is all due and payable because it matured on *(specify date)*: | | | |

8. Movant holds a    ☒ deed of trust    ☐ judgment lien    ☐ other *(specify)* _____
   that encumbers the Property.

   a. A true and correct copy of the document as recorded is attached as Exhibit 2.

   b. A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit 1.

   c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit 3.

9. Status of Movant's foreclosure actions relating to the Property    (fill the date or check the box confirming no such action has occurred):

   a. Notice of default recorded on the following date:   1/25/2011___ or none recorded ☐

   b. Foreclosure sale originally scheduled for the following date:   Not Available ___ or none scheduled ☐

   c. Foreclosure sale currently scheduled for the following date: ___ or none scheduled ☒

   d. Foreclosure sale already held on the following date: ___ or none held ☒

   e. Trustee's deed on sale already recorded on the following date: ___ or none recorded ☒

10. Attached *(optional)* hereto as Exhibit ____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the petition date.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
June 2011                                                                                                                       F 4001-1.MOTION.RP

Page 7

11. ☒ (chapter 7 and 11 cases only):

Status of Movant's loan:

a.  Amount of current monthly payment: $5,523.97____ for the month of September____ 2011____.

b.  Number of payments that have come due and were not made: 13____. Total amount: $71,811.61____

c.  Future payments due by time of anticipated hearing date (if applicable):

An additional payment of $5,523.97 will come due on October 1, 2011, and on the 1st day of each month thereafter. If the payment is not received within 15 days of said due date, a late charge of $197.09 will be charged to the loan.

d.  The fair market value of the entire Property is $1,238,731.00, established by:

☐ Appraiser's declaration with appraisal attached herewith as Exhibit ____.

☐ A real estate broker or other expert's declaration regarding value attached as Exhibit ____.

☒ A true and correct copy of relevant portion(s) of Debtor's schedules attached as Exhibit 4____.

☐ Other (specify): _____

e.  **Calculation of equity in Property:**

Based upon ☐ a preliminary title report    ☒ Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

|  | Name of Holder | Amount as Scheduled by Debtor (if any) | Amount Known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Movant | 1,411,404.00 | 1,351,485.55 |
| 2nd deed of trust: | SLS | 243,542.00 |  |
| 3rd deed of trust: |  |  |  |
| Judgment liens: |  |  |  |
| Taxes: |  |  |  |
| Other: | Nellie Gail Ranch | 1,522.00 |  |

**TOTAL DEBT:  $1,596,549.55**

f.  Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit 4____, and consists of:
☐ Preliminary title report
☒ Relevant portions of Debtor's schedules as filed in this case
☐ Other (specify): _____

g.  Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's equity in the Property is $(357,818.55) (§ 362(d)(2)(A)).

h.  The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $(112,754.55)____ (§ 362(d)(1)).

i.  Estimated costs of sale: $99,098.48 (estimate based upon 8% of estimated gross sales price).

j.  The fair market value of the Property is declining based on/due to:

_____

_____

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
June 2011                                                                                                          F 4001-1.MOTION.RP

Page 8

12. ☐ (Chapter 12 and 13 cases only)

Chapter 12 or 13 case status information:

a.  341(a) Meeting currently scheduled for (or concluded on) the following date:
    Confirmation hearing currently scheduled for (or concluded on) the following date:
    Plan confirmed on the following date (if applicable):

b.  Postpetition payments due BUT REMAINING UNPAID since the filing of the case:

| (Number of) | payment(s) due at | $ | Each = $ |
|---|---|---|---|
| (Number of) | payment(s) due at | $ | Each = $ |
| (Number of) | payment(s) due at | $ | Each = $ |
| (Number of) | payment(s) due at | $ | Each = $ |
| (Number of) | late charges at | $ | Each = $ |
| (Number of) | late charges at | $ | Each = $ |
| (Number of) | late charges at | $ | Each = $ |
| (Number of) | late charges at | $ | Each = $ |

(See attachment for additional breakdown or information attached as Exhibit ____.)

c.  Postpetition advances or other charges due but unpaid:                    $
    (See attachment for details of type and amount attached as Exhibit ____.)

d.  Attorneys' fees and costs                                                $
    (See attachment for details of type and amount attached as Exhibit ____.)

e.  Less suspense or partial paid balance.                                   [$         ]

        TOTAL POSTPETITION DELINQUENCY:                                      $

f.  Future payments due by time of anticipated hearing date (if applicable):
    An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the
    payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

g.  Amount and date of the last 3 postpetition payments received in good funds, regardless of how applied, from the
    Debtor, if applicable:
        $_____ received on _____
        $_____ received on _____
        $_____ received on _____

h.  ☐  The claim is provided for in the chapter 12 or 13 Plan. Plan payment history is attached as Exhibit _____.

i.  ☐  See attached declaration(s) of chapter 12 or 13 Trustee regarding receipt of payments under the plan (attach LBR
        Form F 4001-1M.13).

13. ☐ Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the
       loan.

14. ☐ The court determined that the Property qualifies as single asset real estate on _____. More than 90 days
       have passed since the filing of the petition, more than 30 days have passed since the court determined that the
       Property qualifies as single asset real estate, the Debtor has/have not filed a plan of reorganization that has a
       reasonable possibility of being confirmed within a reasonable time or the Debtor has/have not commenced monthly
       payments to Movant as required by 11 U.S.C. § 362(d)(3).

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.



15. ☐ See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder, and or defraud Movant.

16. ☐ The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

 a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

 b. ☐ Multiple bankruptcy filings affecting the Property. The multiple bankruptcy filings include the following cases:

   1. Case name:                     Chapter:
      Case number:                   Date dismissed:               Date discharged:
      Date filed:
      Relief from stay re this property ☐ was        ☐ was not granted.

   2. Case name:                     Chapter:
      Case number:                   Date dismissed:               Date discharged:
      Date filed:
      Relief from stay re this property ☐ was        ☐ was not granted.

   3. Case name:                     Chapter:
      Case number:                   Date dismissed:               Date discharged:
      Date filed:
      Relief from stay re this property ☐ was        ☐ was not granted.

   ☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder and defraud creditors.

17. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

 a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

 b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

 c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on _10-17-11_.

_Kathy Santin_                                        _Kathy Santin_
Printed Declarant's name                              Signature of Declarant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
June 2011                                                         F 4001-1.MOTION.RP

Page 10

**ATTACHMENT 1.**

I, _Kathy Santin_, declare:

1. I am over 18 years of age and am employed as a _Bky Specialist_ of GMAC Mortgage, LLC ("GMACM"). In such capacity, I am authorized to make this declaration regarding the loan described below (the "Loan"). If called to testify in this matter, I would testify under oath as to the following:

2. I have access to and am familiar with GMACM's books and records regarding the Loan, GMACM's servicing records, and copies of the applicable Loan documents. I am familiar with the manner in which GMACM maintains its books and records, including computer records relating to the servicing of the Loan. GMACM's records are made at or near the time of the occurrence of the matters set forth in such records, by an employee or representative with knowledge of the acts or events recorded. Such records are obtained, kept and maintained by GMACM in the regular course of GMACM's business. GMACM relies on such records in the ordinary course of its business.

3. GMACM has the contractual right and responsibility to service the Loan.

4. According to GMACM's books and records, the Loan is evidenced by a promissory note executed by John Cirino and Sepideh Cirino and dated October 20, 2004, in the original principal amount of $1,320,000.00 (the "Note"). See Exhibit 1.

5. GMACM's records reflect that WELLS FARGO BANK, N.A., AS TRUSTEE FOR HOLDERS OF IMPAC SECURED ASSETS CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-4 holds possession of the original Note. The Note is indorsed and payable in blank. See Exhibit 1.

6. The Note is secured by a deed of trust (the "Deed of Trust") relating to the real property commonly known as 27495 Hidden Trail Road, Laguna Hills, California 92653 (the "Property"). The Deed of Trust reflects that it was duly recorded. See Exhibit 2.

7. Copies of the Note and Deed of Trust which are attached hereto as Exhibits 1 and 2 are true and correct copies of said documents contained in GMACM's business records.

8. The Deed of Trust was assigned to WELLS FARGO BANK, N.A., AS TRUSTEE FOR HOLDERS OF IMPAC SECURED ASSETS CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-4 . A copy of the Assignment of Deed of Trust is attached hereto as Exhibit 3.

9. GMACM has retained counsel to represent it in this matter, and is thereby incurring attorneys' fees and expenses in this matter.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
June 2011                                                              F 4001-1.MOTION.RP

Page 11

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document described **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STATY UNDER 11 U.S.C. § 362 (WITH SUPPORTING DECLARATIONS) REGARDING REAL PROPERTY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Order(s) and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.
On October 18, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) stated below:

Weneta M Kosmala (TR)        Weneta.Kosmala@7trustee.net
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL OR OVERNIGHT MAIL**(state method for each person or entity served)**:**
On October 18, 2011 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

- Honorable Mark S Wallace, 411 West Fourth Street, #1053, Santa Ana, CA  92701–4516
- SLS, c/o Managing and/or Servicing Agent, 8742 Lucent Blvd, Ste #300, Highland Ranch, CO 80129
- Sepideh Sally Cirino and John Cirino, 27495 Hidden Trail Road, Laguna Hills, CA 92653
- Nellie Gail Ranch, c/o Managing and/or Servicing Agent, Merit Property Mngmnt, 1 Polaris Way, Aliso Viego, CA 92656

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: October 18, 2011            Signature: /s/ CHRIS GUERRERO

Printed Name: Chris Guerrero

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.
June 2011                                                                          F 4001-1.MOTION.RP

# Deutsche Bank

Date Sent: 05/26/2011 / 2

No of pages: _____

| To: | NEW TRACK PROCESSING | From: |
| | ACS-INC | |
| | 9401 JAMES AVENUE S | **Deutsche Bank** |
| | SUITE 140 | 1761 East St. Andrew Place |
| | BLOOMINGTON, MN  55431 | Santa Ana, CA  92705 |

Phone: 7142476120

Fax: 8773523715

Phone:  714-247-6000

Email:  SantaAna.CustodyRequests@db.com

Cc: _____

## ITEMS TO FOLLOW

| Issue | Loan Number | Alt Loan Number | Name | Document |
|-------|-------------|-----------------|------|----------|
| 048C | | | CIRINO | NOTE |

MIN: 1000393-0200476481-0

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

OCTOBER 20, 2004             SOUTH SAN FRANCISCO          CALIFORNIA
[Date]                              [City]                         [State]

27495 HIDDEN TRAIL ROAD, LAGUNA HILLS, CALIFORNIA 92653
[Property Address]

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $1,320,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is ALLIANCE BANCORP, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.990 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.    PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the    1st  day of each month beginning on DECEMBER   1   , 2004   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 1, 2034      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 91 WESTBOROUGH BLVD., #200, SOUTH SAN FRANCISCO, CALIFORNIA 94080

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 7,905.58        . This amount may change. *INTEREST ONLY NOTE ADDENDUM ATTACHED HERETO AND

(C) Monthly Payment Changes        MADE A PART HEREOF.

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT        Page 1 of 5

Form 3520 1/01
DocMagic €Forms 800-649-1362
www.docmagic.com

Page 14
Exhibits 1

U13520.nor.1.tem

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the    1st   day of NOVEMBER, 2009    . and
on that day every    6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND
250/1000          percentage points (          2.250   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    11.990   % or less than    2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000          percentage point(s) (          2.000   %) from the rate of interest I have been paying for the preceding   6   months. My interest rate will never be greater than    11.990   %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.    BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 2 of 5

Form 3520 1/01
DocMagic eFarms  800-549-1362
www.docmagic.com

Us3520.not.2.tem

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 3 of 5

Form 3520 1/01
DocMagic *eForms* 800-649-1362
www.docmagic.com

Page 16
Exhibits 1

Us3520.noc.3.tem

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.     Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)–Single Family
Fannie Mae MODIFIED INSTRUMENT                Page 4 of 5

Form 3520 1/01
DocMagic *eFarms* 800-649-1362
www.docmagic.com

Js3520-aot.4.tem

Page 17
Exhibits 1

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JOHN CIRINO                    -Borrower

_____ (Seal)
SEPIDEH CIRINO                 -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT              Page 5 of 6

Form 3520 7/01
DocMagic *CForms* 800-649-1362
www.docmagic.com

Us3520.nol.5.tem

PAY TO THE ORDER OF

IMPAC FUNDING CORPORATION

WITHOUT RECOURSE BY:
ALLIANCE BANCORP

SANDY W. NG / VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
IMPAC FUNDING CORPORATION

BY: _Ercan Ozbek_
ERCAN OZBEK, AUTHORIZED SIGNATORY

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

Property Address: 27495 HIDDEN TRAIL ROAD, LAGUNA HILLS, CALIFORNIA
92653

THIS ADDENDUM is made this 20th day of OCTOBER  2004             , and is incorporated into
and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed
by the undersigned and payable to ALLIANCE BANCORP, A CALIFORNIA CORPORATION
(the Lender).

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the
Note are changed by this Addendum.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period")
in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every
month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal
balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly
payments.

I will make my monthly payments on the first day of each month beginning on DECEMBER 1, 2004.
I will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date
and will be applied to interest before principal. If, on NOVEMBER 1, 2034        , I still owe amounts
under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at 91 WESTBOROUGH BLVD., #200, SOUTH SAN
FRANCISCO, CALIFORNIA 94080
, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 6,589.00           . This
payment amount is based on the original principal balance of the Note. This payment amount may change.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND 250/1000           percentage point(s) ( 2.250 %) to the Current
Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new
interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment
that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier
of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal
during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment
amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest
rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the

DocMagic ☎ 800-849-1362
www.docmagic.com

Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

7.    BORROWER'S FAILURE TO PAY AS REQUIRED
    (A) Late Charge for Overdue Payments
    If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest during the Interest-Only Period, 5.000    % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

_____ 10/21/04    _____ 10/21/04
Borrower                    Date    Borrower                    Date
JOHN CIRINO                         SEPIDEH CIRINO

_____    ____    _____    ____
Borrower                    Date    Borrower                    Date

_____    ____    _____    ____
Borrower                    Date    Borrower                    Date

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE PROMISSORY NOTE
FORM 603E  03/03/03                                        Page 2 of 2

800-849-1362
www.docmagic.com

Page 21
Exhibits 1

603e2.xls

# ADDENDUM TO NOTE

This addendum is made OCTOBER 20, 2004     and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
27495 HIDDEN TRAIL ROAD, LAGUNA HILLS, CALIFORNIA 92653

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    11.990 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000          percentage point(s) (    2.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than    11.990 %. My interest rate will never be less than      2.250 %.

## UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LIBOR ADDENDUM TO NOTE
FORM 1201 1-01

Page 1 of 2

DocMagic *eRates* 800-649-1362
www.docmagic.com
Page 22
Exhibits 1

1201.als.1.xem

In Witness Thereof, Trustor has executed this addendum.

Witness _____

_____ 10/21/04   _____ 10/21/04
Borrower Signature JOHN CIRINO          Date        Borrower Signature SEPIDEH CIRINO      Date

_____ _____   _____ _____
Borrower Signature                     Date        Borrower Signature                     Date

_____ _____   _____ _____
Borrower Signature                     Date        Borrower Signature                     Date

LIBOR ADDENDUM TO NOTE
FORM 1201 1-01                          Page 2 of 2        DocMagic *eForms* 800-649-1362
                                                          www.docmagic.com
                                                          Page 23
                                                          Exhibits 1

1201.als.2.tem

# ADDENDUM TO NOTE

This addendum is made OCTOBER 20, 2004         and is incorporated into and deemed to amend and supplement the Note of the same date.

Covering the property described in the security instrument and located at:

27495 HIDDEN TRAIL ROAD, LAGUNA HILLS, CALIFORNIA 92653

**Amended Provisions:**

In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

**Borrower's Right to Prepay:**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the prepayment penalty specified below, I may make a full prepayment or partial prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If I make prepayments of this loan during the first   2         years of the Note term, beginning on the date this Note is executed, I will pay a prepayment penalty in the amount of six months' advance interest on the amount by which the aggregate prepayments made within any consecutive twelve month period exceed twenty percent (20%) of the original principal amount. No prepayment penalty will be assessed for any prepayment made after the first   2       years of the Note term.

Not withstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first   6         month(s) of the term of the Note, no prepayment penalty will be assessed. In that event, I agree to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

The Note Holder's failure to collect a prepayment penalty at the time a prepayment is received shall not be deemed a waiver of such penalty and any such penalty calculated in accordance with this section shall be payable on demand.

All other terms and conditions of the above referenced Note remain in full force and effect.

| _____ 10/21/04 | _____ 10/21/04 |
|---|---|
| Borrower                          Date | Borrower                          Date |
| JOHN CIRINO | SEPIDEH CIRINO |
| _____ | _____ |
| Borrower                          Date | Borrower                          Date |
| _____ | _____ |
| Borrower                          Date | Borrower                          Date |

ADDENDUM TO NOTE
Document Systems, Inc. (800) 649-1362

Atn7.mac

RECORDING REQUESTED BY
TICOR TITLE-
FULLERTON

Recording Requested By:
ALLIANCE BANCORP

2004000976411 08:00am 10/29/04
81.00
203 59 D11 26
0.00 0.00 0.00 0.00 75.00 0.00 0.00 0.00

And After Recording Return To:
ALLIANCE BANCORP
91 WESTBOROUGH BLVD., #200
SOUTH SAN FRANCISCO, CALIFORNIA 94080

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

MIN: 1000393-0200476481-0

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  OCTOBER  20,  2004          , together with all Riders to this document.
(B)  "Borrower" is JOHN CIRINO AND SEPIDEH CIRINO, HUSBAND AND WIFE AS COMMUNITY PROPERTY

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is ALLIANCE BANCORP

Lender is a CALIFORNIA CORPORATION                                                organized
and existing under the laws of  CALIFORNIA
Lender's address is  91  WESTBOROUGH BLVD.,  #200,  SOUTH  SAN  FRANCISCO,
CALIFORNIA  94080

(D)  "Trustee" is  TICOR TITLE COMPANY
1440 N. HARBOR BLVD, SUITE 108, FULLERTON , CALIFORNIA 92835

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)  "Note" means the promissory note signed by Borrower and dated  OCTOBER  20,  2004
The Note states that Borrower owes LenderONE  MILLION  THREE  HUNDRED  TWENTY
THOUSAND  AND  00/100            Dollars (U.S. $ 1,320,000.00       ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 1 of 14
DocMagic 800-616-1362
www.docmagic.com

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2034

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | INTEREST ONLY ADDENDUM — TO RIDER, ADDENDUM TO ADJUSTABLE RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of ORANGE :

[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS           DocMagic ⸙Forms 800-649-1362
Form 3005 01/01                            Page 2 of 14                                 www.docmagic.com

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 636-341-02

which currently has the address of   27495 HIDDEN TRAIL ROAD
[Street]

LAGUNA HILLS              , California    92653        ("Property Address"):
[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic eForms 800-649-1362
Form 3005 01/01                           Page 3 of 14                              www.docmagic.com

Jun 10 2009 09:08am    P005/027    Fax 7142475122

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    Application of Payments or Proceeds.   Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    Funds for Escrow Items.   Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                                Page 4 of 14                                    DocMagic €Forms 800-649-1362
www.docmagic.com

Ca3005.mml.4.tem

Fax: 7142478122                      Jun 10 2009 09:07am    P006/027

Page 28
Exhibits 2

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

DocMagic 800-649-1362
www.docmagic.com

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 6 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

Ca3005.mxd.6.tem

770/800d   ᵂᵉ₈₈:₆₀ 6002 0ᴸ unᒋ   Fax 7142478122

8.  Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 7 of 14

DocMagic *** 800-649-1362
www.docmagic.com

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 8 of 14                    DocMagic eForms 800-649-1362
www.docmagic.com

Ca3005.mb4.8.tem

ᄃᄅᄋ/ᄋᄅᄋᄆ    Pᄋ2ᄋ    ᄆᄅ60:60 6002 0ᄅ unᄃ    Fax 7142476122

Page 32
Exhibits 2

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  **Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  **Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.  **Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  Governing Law; Severability; Rules of Construction.  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  Borrower's Copy.  Borrower shall be given one copy of the Note and of this Security Instrument.

18.  Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

3005.mzd.11.tem

Fax 7142476122                                    Jun 10 2009 09:11am    P013/027

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 12 of 14                    DocMagic ℰℱℴℴℴℴℴ 800-649-1362
                                                                                      www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JOHN CIRINO                    -Borrower

_____ (Seal)  10/2/04
SEPIDEH CIRINO                 -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Witness:                       Witness:

_____   _____

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT – MERS
Form 3005 01/01                    Page 13 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

State of California                                    )
                                                      ) ss.
County of ORANGE                                      )

On Oct 21 th 2009 before me. Talanaz Bahadori Hersini

personally appeared JOHN CIRINO, SEPIDEH CIRINO

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

TALANAZ BAHADORI HERSINI
COMM. #1456528
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Dec 16, 2007

_____
NOTARY SIGNATURE

Talanaz Bahadori Hersini
(Typed Name of Notary)

NOTARY SEAL

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 14 of 14

DocMagic ☎ 800-649-1362
www.docmagic.com

Ca3005.mbd.14.tem

Jun 10 2009 09:12am    P016/027          Fax (714)418722

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE
DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

NAME OF THE NOTARY: _Talanay Bahadori Herani_

DATE COMMISSION EXPIRES: _2-16-07_

COUNTY WHERE BOND IS FILED: _Orange_

COMMISSION NUMBER: _1456528_

MANUFACTURER / VENDOR NUMBER: _ESI1_

PLACE OF EXECUTION: _Orange_    DATE: _10-26-04_

SIGNATURE: _CeBeddle_

I CERTIFY UNDER PENALTY OF PERJURY AND THE LAWS OF THE STATE OF
CALIFORNIA THAT THE ILLEGIBLE PORTION OF THIS DOCUMENT TO
WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

PLACE OF EXECUTION: _____    DATE: _____

SIGNATURE: _____

Jun 10 2009 09:12am P017/027    Fax 7142476122

ORDER NO.: 164012-17

EXHIBIT

LOT(S) 7 OF TRACT NO. 12550, IN THE CITY OF LAGUNA HILLS, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 566, PAGE(S) 38-42, INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

Page 3

Jun 10 2009 09:13am    P018/027        Fax 7142476122

# ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made OCTOBER 20, 2004        and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
27495  HIDDEN  TRAIL  ROAD,  LAGUNA  HILLS,  CALIFORNIA  92653

## AMENDED PROVISIONS
In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
Limits on Interest Rate Changes
The interest rate I am required  to  pay  at  the  first  Change  Date  will  not  be  greater  than
11.990    % or less than      2.250    %.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO  AND  000/1000
percentage point(s) (      2.000    %) from the rate of interest
I  have been paying for the preceding six (6) months.   My interest rate will never be greater than
11.990  %.  My interest rate will never be less than      2.250  %.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LIBOR ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 1202 1-01                                    Page 1 of 2              DocMagic eForms 800-649-1362
                                                                           www.docmagic.com

Fax 7142478122        Jun 10 2009 09:13am P019/027

In Witness Thereof, Trustor has executed this addendum.

Witness _____

_____ 10/21/04
Borrower Signature JOHN CIRINO    Date

_____ 10/21/04
Borrower Signature SEPIDEH
CIRINO    Date

_____    Date
Borrower Signature

_____    Date
Borrower Signature

_____    Date
Borrower Signature

_____    Date
Borrower Signature

LIBOR ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 1202 1-01    Page 2 of 2

DocMagic ☎ 800-649-1362
www.docmagic.com

Jun 10 2009 09:13am    Fax 7142476122    P020/027

MIN: 1000393-0200476481-0

# ADJUSTABLE RATE RIDER
(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 20th day of OCTOBER, 2004 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ALLIANCE BANCORP, A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

27495 HIDDEN TRAIL ROAD, LAGUNA HILLS, CALIFORNIA 92653
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of     5.990 %.   The Note provides for changes in the interest rate and the monthly payments, as follows:

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)    Change Dates
The interest rate I will pay may change on the 1st    day of NOVEMBER, 2009 and on that day every 6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER—LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family—Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

(C)    Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND 250/1000                                     percentage points (    2.250    %) to the Current
Index.    The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be
my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to
repay the unpaid principal that I am expected to owe at the Change Date at the Maturity Date at my
new interest rate in substantially equal payments.    The result of this calculation will be the new amount of
my monthly payment.
(D)    Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than
11.990    % or less than     2.250    %.   Thereafter, my interest rate will never be increased
or decreased on any single Change Date by more than TWO AND 000/1000
                                         percentage points (    2.000    %) from the rate of interest
I have been paying for the preceding    6         months.   My interest rate will never be greater than
11.990    %.

(E)    Effective Date of Changes
My new interest rate will become effective on each Change Date.  I will pay the amount of my new
monthly payment beginning on the first monthly payment date after the Change Date until the amount of my
monthly payment changes again.
(F)    Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount
of my monthly payment before the effective date of any change.   The notice will include information required
by law to be given to me and also the title and telephone number of a person who will answer any question
I may have regarding the notice.

B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section
18, "Interest in the Property" means any legal or beneficial interest in the Property, including,
but not limited to, those beneficial interests transferred in a bond for deed, contract for deed,
installment sales contract or escrow agreement, the intent of which is the transfer of title by
Borrower at a future date to a purchaser.
If all or any part of the Property or any Interest in the Property is sold or transferred (or
if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)
without Lender's prior written consent, Lender may require immediate payment in full of all
sums secured by this Security Instrument.   However, this option shall not be exercised by
Lender if such exercise is prohibited by Applicable Law.   Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required by Lender to
evaluate the intended transferee as if a new loan were being made to the transferee; and (b)
Lender reasonably determines that Lender's security will not be impaired by the loan

---

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                                       Page 2 of 3

DocMagic EForms 800-649-1362
www.docmagic.com

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
JOHN  CIRINO          -Borrower

_____ (Seal)
SEPIDEH  CIRINO       -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 5/01                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this      20th      day of OCTOBER,  2004            , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to    ALLIANCE BANCORP,  A  CALIFORNIA  CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

27495 HIDDEN TRAIL ROAD, LAGUNA HILLS, CALIFORNIA 92653
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD
(the "Declaration"). The Property is a part of a planned unit development known as

NELLIE GAIL
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations.   Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B.  Property Insurance.  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                                      Page 1 of 3

DocMagic *eFerms* 800-649-1362
www.docmagic.com

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C.  Public Liability Insurance.  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D.  Condemnation.  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E.  Lender's Prior Consent.  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F.  Remedies.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                              Page 2 of 3

DocMagic *DocMagic* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
JOHN CIRINO                -Borrower

_____ (Seal)
SEPIDEH CIRINO             -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

MULTISTATE PUD RIDER—Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                      Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

# INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

Property Address: 27495 HIDDEN TRAIL ROAD, LAGUNA HILLS, CALIFORNIA 92653

THIS ADDENDUM is made this 20th    day of OCTOBER, 2004              , and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to ALLIANCE BANCORP, A CALIFORNIA CORPORATION

(the Lender).

THIS ADDENDUM supersedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000                   percentage point(s) (    2.250    %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.
During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Requested and Prepared by:
ETS Services, LLC

When Recorded Mail To:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

|||||||||||||||||||||||||||||||||||||| 9.00
2011000028619 04:04pm 01/14/11

10 405 A32 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

REDACTED

TS NO: GM-274223-C

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

WELLS FARGO BANK, N.A., AS TRUSTEE FOR HOLDERS OF IMPAC SECURED ASSETS CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-4

all beneficial interest under that certain Deed of Trust dated: 10/20/2004 executed by *JOHN CIRINO* AND *SEPIDEH CIRINO*, HUSBAND AND WIFE AS COMMUNITY PROPERTY, as Trustor(s), to TICOR TITLE COMPANY, as Trustee, and recorded as Instrument No. 2004000976411, on 10/29/2004, in Book XX, Page XX of Official Records, in the office of the County Recorder of Orange County, California together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: 1/6/2011

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

**Jacob Randell**    Assistant Secretary

State of Texas    } SS.
County of Dallas    }

On 1/6/2011 before me, Candace Williams Notary Public, personally appeared Jacob Randell who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Candace Williams (Seal)

CANDACE WILLIAMS
Notary Public, State of Texas
My Commission Expires
October 14, 2014

B6A (Official Form 6A) (12/07)

In re Sefideh Sally Cirmio _____    Case No. 8:11-BK-2208 1-MW
　　　　　Debtor    　　　　　　　　　　　　　(If known)

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G – Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| Residental 27495 Hidden trail laguna hills, CA 92653 | Resident | W | 1,238,731. | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

　　　　　　　　　　　　　　　　　　　Total▶    1,238,731.
　　　　　　　　　　　　　　　　(Report also on Summary of Schedules.)

**B6D (Official Form 6D) (12/07)**

In re _____Sepideh Sally Cirino_____,     Case No. _____8:11-bk-22081-MW_____
                    **Debtor**                                                    (If known)

## SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. XX-XXXXXXX223C<br><br>EXECUTIVE TRUSTEE SERVICES 2255 NORTH ONTARIO STREET BURBANK, CA. 91504-3120 | | W | 5-23-11<br>NOTICE OF SALE<br>FORCLOSURE AGENT<br>FOR GMAC<br>MORTGAGE ON THE RE<br><br>VALUE $1,238,731.00 | | | | | |
| ACCOUNT NO.6078<br><br>GMAC MORTGAGE PO BOX 79135 PHONEIX,AZ. 85062 | | W | FIRST TRUSTEED RESIDENT. 5524 PER MONTH<br><br>VALUE $1,238,731.00 | | | | 1,411,404.00 | 172673.00 |
| ACCOUNT NO.0901<br><br>NELLIE GAIL RANCH MERIT PROPERTY MNGMNT 1 POLARIS WAY ALISO VIEJO, CA. 92656 | | W | HOME OWNER ASSOCIATION FEES 271/MO<br><br>VALUE $ | | | | 1522.00 | 1522.00 |
| continuation sheets _____ attached | | | Subtotal ▶<br>(Total of this page) | | | | $ 1,412,926.00 | $ 174195.00 |
| | | | Total ▶<br>(Use only on last page) | | | | $ | $ |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

2

**B6D (Official Form 6D) (12/07) — Cont.**

In re _____ Sepideh Sally Cirino _____ ,  Case No. _____ 8:11-bk-22081-MW _____
Debtor                                                      (if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.XXXXX72-EV<br><br>QUALITY LOAN SERVICES<br>2141 5TH AVE<br>SAN DIEGO, CA.92101 | | W | NOTICE OF DEFAULT ON RESIDENT<br>27495 HIDDEN TRAIL RD<br>LAGUNA HILLS, CA. 92653<br><br>VALUE $ | | | | 0.00 | 0.00 |
| ACCOUNT NO.9107<br><br>SLS<br>8742 LUCENT BLVD.<br>STE # 300<br>HIGHLANDS RANCH, CO.<br>80129 | | | 2ND ON THE RESIDENT 1306.00 PER MON<br><br><br>VALUE $ | | | | 243542.00 | 243542.00 |
| ACCOUNT NO.<br><br><br>VALUE $ | | | | | | | | |
| ACCOUNT NO.<br><br><br>VALUE $ | | | | | | | | |
| ACCOUNT NO.<br><br><br>VALUE $ | | | | | | | | |

Sheet no _2_ of _2_ continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal (s) ▶
(Total(s) of this page)  $ 243,542.00   $ 243,542.00

Total(s) ▶
(Use only on last page)  $ 1,656,468.00   $ 417,737.00

(Report also on Summary of Schedules.)   (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

# NOTICE OF OPPOSITION TO
# MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**From:**
SEPIDEH SALLY CIRINO
27495 HIDDEN TRAIL RD,
LAGUNA HILLS, CA 92653
Hereinafter collectively referred to as **"Claimant"**

**To:**
BRIAN A.PAINO (SBN 251243)
CATHERINE T.VINH (SBN 269020),
JOSEPH DELMOTTE (SBN 259460)
PITI DUNCAN, LLP
4375 JUTLAND DRIVE, SUIT 200, P.O BOX 17933, SAN DIEGO, CA 92177-0933
Telephone: (858)-750-7600 Facsimile: (619)-590-1385
Hereinafter collectively referred to as Attorney for **"MOVANT"**

**MOVANT: (ALLEGED CREDITORS) WELLS FARGO BANK, N.A AS TRUSTEE FOR HOLDERS OF IMPAC SECURED ASSETS CORP, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-4**

**CASE NUMBER: [8:11-bk-22081-MW]**          JUDGE: **Honorable Mark S. Wallace**
                                             CTRM: 6C

October 31, 2011

## NOTICE OF OPPOSITION & DISPUTE;
## DEMAND FOR VALIDATION AND PROOF OF CLAIM

To Whom It May Concern

This letter is being sent to you in response to an unsigned, computer generated letter received by Claimant from your offices. Be advised that your claim is disputed and validation and proof of claim of the disputed debt is requested in accordance with the **Fair Debt Collection Practices Act, 15 USC § 1692 and as amended by adding the following new Title 8 USC § 802 et seq.,** and the **Fair Credit Billing Act, 15 USC. § 1666 et seq.** All of which work in conjunction with each other, including the **Truth In Lending Act (TILA) 15 USC 1601 et seq. and the amendment to the required notice under the Act must include all of the following information in order to fully comply with Section 131(g) of TILA [15 U.S.C. 1641(g)], the newly amended section of TILA:**

(1) The identity, address, and telephone number of the new creditor (including the name of the trust; the date of transfer;

(2) How to reach an agent or party having authority to act on behalf of the new creditor;

(3) The location of the place where transfer of ownership of the debt is recorded; and

(4) Any other relevant information regarding the new creditor.

*NOTICE OF OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY*

"Exhibit F"

It is not now, nor has it ever been, my intention to avoid paying any obligation that is lawfully owed by the Claimant. In order to make arrangements to pay an obligation which may be lawfully owed, please document and verify the "debt" by complying, in good faith, with this request for validation and return it to me, within thirty (10) days of receipt of this letter or at the hearing scheduled on November 14th, 2011 at 9:00 AM CTRM : 6C.

Based on this computer generated letter received, the Claimant has had their Deed of Trust, Note and Assignments researched and several inconsistencies where found regarding this aforementioned alleged "debt". These inconsistencies include, but are not limited to, the owner of the "debt" and amount of "debt". Therefore, the Claimant is requesting a **FULL, COMPLETE AND ACCURATE VALIDATION OF DEBT AND PROOF OF CLAIM FROM THE RESPONDENT.**

Below is the **Trust** in which I believe according to the characteristics my loan is possibly securitized in:

**[Trust]**

**IMPAC SECURED ASSETS CORP. Mortgage Pass-Through Certificates, SERIES 2004-4**

While the research could not definitely state the status of this alleged loan, it was explained there are several reasons that can account for why this loan may not be present in any of the mortgage pools. One reason would be that the loan was never securitized.

**In this first case the original lender would have the loan in its portfolio and should be able to produce the original documents.**

**The second reason is that it is an agency loan which fits into the guidelines of Freddie and Fannie Mae which means that originators would sell them to Freddie and Fannie Mae** who does not offer full transparency (in this case the loan amount exceeds the GSA's guidelines and it is unlikely for it to be in that pool).

**The third reason is that the Trustee reported the information incorrectly and it cannot be listed due to liability issues with the data. Or lastly the information cannot be found and is not readily available and the documentation is lost never to be seen again.**

Due to the uncertainty of the status of alleged loan account, this is **NOT** a request for **"verification"** or proof of Claimants mailing address, but a request for **VALIDATION** and **PROOF OF CLAIM** made pursuant to the above named Titles and Sections. I respectfully request that your offices provide Claimant with competent evidence as per the attached "Declaration and Proof of Claim" that I have any legal obligation to pay you the unsubstantiated alleged debt. Furthermore you shall cease all verbal communication. No further phone calls will be made to the Claimant.

*NOTICE OF OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY*

At this time I will also inform you that if your offices have reported invalidated information to any of the 3 major Credit Bureaus, such as, **Equifax**, **Experian** and **TransUnion** prior to validation and proof of claim of the disputed debt, this action might constitute fraud under both Federal and State Laws. Due to this fact; if any negative mark is found on any of the Claimants credit reports by your company or the company that you represent, I will not hesitate in bringing legal action against you and your client for the following:

– Violation of the Fair Credit Reporting Act, **15 U.S.C. § 1681 et seq.**
– Violation of the Fair Debt Collection Practices Act **15 U.S.C. §§ 1692-1692p**
– Defamation of Character
– Violation of United States Code **TITLE 18 PART 1 CHAPTER 63 § 1341** (Mail Fraud)

This debt is considered to be invalid until I receive proper validation and your offices provide Claimant with proof of claim of the disputed debt. Your offices have 30 days to produce the required documentation in accordance with FTC guidelines or at the scheduled hearing on November 14th at 9:00AM in CTRM: 6C.
During this validation period and proof of claim, if any action is taken which could be considered detrimental to any of Claimant credit reports, said action will be considered a "dishonor" and cause the self-executing contract portion of this notice to be implemented. This includes any listing any information to a credit reporting repository that could be inaccurate or invalidated.

If your offices fail to respond to this validation and proof of claim request within 30 days from the date of your receipt, all references to this account must be deleted and completely removed from Claimant credit file and a copy of such deletion request shall be sent to Claimant immediately.

**Title 8 USC § 809.  Validation of debts   [15 USC 1692g]**

**(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection ( Date of Notice from counsel October 18th,2011) (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.**

BLACK'S LAW DICTIONARY:

**VERIFICATION: The Confirmation of correctness, truth, or authenticity by affidavit, oath, or deposition.**

**NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT**
**NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL**
Applicable to all successors and assigns
*Silence is Acquiescence/Agreement/Dishonor*

Executed on this 31th day of October, 2011 by, _____
SEPIDEH SALLY CIRINO

This is the second party that has written a letter purporting to represent, or have as their client,
**IMPAC SECURED TRUST ASSETS CORP., MORTGAGE PASS-THROUGH CERTIFICATES
, SERIES 2004-4 .The first MERS , was not registered as a debt collector in California and they
have not answered the debt validation request presented to them. This is Notice that I do not
recognize the MOVANT from which the Claimant has received a computer generated debt
collection attempt, and I must necessarily dispute part, or all, of the alleged debt until the
following is received:**

## CREDITOR/DEBT COLLECTOR DECLARATION and PROOF OF CLAIM

**Please provide all of the following information and submit the appropriate forms and
paperwork back to me along with an Affidavit signed In Accordance with 28 U.S.C. §
1746 within 30 days from the date of your receipt of this request for validation and
proof of claim.**

1. Original wet signature Note under **U.C.C ARTICLE 3 -§3-501 (b) 2 (1).** along with all
   endorsements affixed to the Note
2. A copy of the original Deed of Trust with all assignments attached
3. Alleged Name and Address of Creditor ( Trust number & name and Trustee of the
   Trust )
4. Name on File of Alleged Debtor:
5. Alleged Account #:
6. Amount of alleged debt:
7. Date that this alleged debt became/becomes payable:
8. Date of original charge off or delinquency:
9. Amount paid if debt was purchased:
10. Please attach a copy of any signed agreement alleged debtor/claimant has made
    with debt collector, or other verifiable proof that debtor/claimant has a contractual
    obligation to pay debt collector.
11. Furnish a copy of the **ORIGINAL PROMISSERY NOTE** /agreement redacting my
    social security number to prevent identity theft and state that your client named
    above is the holder in due course of the note agreement and will **produce the
    original for my own and a judge's inspection** should there be a trial to contest
    these matters.

*NOTICE OF OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY*

**12.** Produce the account and general ledger statement showing the **full accounting** of the alleged obligation that you are now attempting to collect. Such as; **FR 2046 balance sheet (OMB #'s 2046, 2049, 2099), 1099 OID report, S-3/A registration statement, 424-B5 prospectus, RC-S & RC-B call schedules**

13. Identify by name and address all persons, corporations, associations, or any other parties having an interest in legal proceedings regarding the alleged debt.

14. Verified specifically, **name(s)** of person(s) assigned as Trustee to handle Corporations affairs and to be held accountable for the actions of the Corporation. Such as CFO and subordinates responsible for debt collections.

15. Verify as a third party debt collector, you have not purchased evidence of the alleged debt and are proceeding with collection activity in the name of the original maker of the note.

16. Verify you know and understand that certain clauses in a contract of adhesion, such as a so-called forum selection clause, are unenforceable unless the party to whom the contract is extended could have rejected the clause without impunity.

17. Provide verification from the stated creditor that you are authorized to act for them.

18. Verify that you know and understand that contacting me again after receipt of this notice without providing procedurally proper validation of the debt constitutes the use of interstate communications in a scheme of fraud by advancing a writing, which you know is false with the intention that others rely on the written communication to their detriment a violation of United States Code **TITLE 18 PART 1 CHAPTER 63 § 1341**.


OPPOSING THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY,
Dated this 31th day of October, 2011.


By: _____

SEPIDEH SALLY CIRINO (expressly all rights reserved),
Real Party in Interest, Live breathing [Female]

State of California          )
                            ) ss.:
County of Orange            )

Subscribed and sworn to (or affirmed) before me on this _____ day of

_____, 2011 by_____ , proved to me on the

basis of satisfactory evidence to be the person who appeared before me.

_____
Notary Public Signature

_____
My Commission Expires                    [SEAL]

cc:
   1. FILE
   2. [Clients State] SECRETARY OF STATE
   3. [Clients County] COUNTY RECORDER

*NOTICE OF OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY*

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||    **9.00**

Requested and Prepared by:
ETS Services, LLC

**2011000028619 04:04pm 01/14/11**

10 405 A32 1

When Recorded Mail To:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

100780140

Loan No.: 0359106078
TS NO: GM-274223-C

### ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**WELLS FARGO BANK, N.A., AS TRUSTEE FOR HOLDERS OF IMPAC SECURED ASSETS CORP.,
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-4**

all beneficial interest under that certain Deed of Trust dated: 10/20/2004 executed by *JOHN
CIRINO* AND *SEPIDEH CIRINO*, HUSBAND AND WIFE AS COMMUNITY PROPERTY, as
Trustor(s), to TICOR TITLE COMPANY, as Trustee, and recorded as Instrument No.
2004000976411, on 10/29/2004, in Book XX, Page XX of Official Records, in the office of the
County Recorder of Orange County, California together with the Promissory Note secured by
said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: ___1/6/2011___

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

**Jacob Randell**          Assistant Secretary

State of ___Texas___     } SS.
County of ___Dallas___   }

On _1/6/2011_ before me, ___Candace Williams___ Notary Public, personally
appeared ___Jacob Randell___ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of ___Texas___ that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___Candace Williams___ (Seal)

CANDACE WILLIAMS
Notary Public, State of Texas
My Commission Expires
October 14, 2014

Exhibit C

ETS
PO Box 9032
Temecula, CA 92589-9032



7196 9006 9295 1637 4370

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
ETS
2255 N. Ontario Street
Suite 400
Burbank, CA 91504

TSN: GM-274223-C
20110427-56

Send Correspondence to:
ETS
2255 N. Ontario Street
Suite 400
Burbank, CA 91504

Ilil..ubl.llul.lulllul.l.lchl.luhl.l.lhl.ludl.llul
SEPIDEH SALLY CIRINO, CO-TRUSTEE OF THE CIRINO FAMILY TRUST
DATED APRIL 25, 1995
27495 HIDDEN TRAIL RD
LAGUNA HILLS, CA 92653-5875

8R-260-1600   ETS.



CANTS_CERTIFIED

Exhibit H

RECORDING REQUESTED BY:

LSI TITLE COMPANY, INC.

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE: **$9.00**

RECORDED ON: **January 25, 2011**

AS DOCUMENT NO: **2011-42958**

BY: **s/ Jeremy Ruacho**

LSI TITLE COMPANY (CA)

TS NO : GM-274223-C
LOAN NO : 0359106076

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, JOHN CIRINO AND SEPIDEH CIRINO , HUSBAND AND WIFE AS COMMUNITY PROPERTY
was the original Trustor, TICOR TITLE COMPANY was the original Trustee, and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ALLIANCE BANCORP A CALIFORNIA CORPORATION was
the original Beneficiary under that certain Deed of Trust dated 10/20/2004 and recorded on 10/29/2004 as Instrument No.
2004000976411, in Book XX, Page XX of Official Records of Orange County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of
said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned desires to substitute Executive Trustee Services, LLC dba ETS
Services, LLC, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular
number includes the plural.

Dated : _1-12-11_

WELLS FARGO BANK, N.A. as TRUSTEE for HOLDERS of IMPAC
SECURED ASSETS CORP. MORTGAGE pass through
CERTIFICATES, SERIES 2004-4; GMAC MORTGAGE, LLC FKA
GMAC MORTGAGE CORPORATION ITS ATTORNEY IN FACT

_Deborah Baker_    _Assta. Officer_

State of TEXAS        } ss.
County of Dallas      }

On _1.12.11_ before me, _Apryl L. Pitmon_ Notary Public, personally appeared
_Deborah Baker_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of _TEXAS_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Apryl L. Pitmon_ (Seal)

APRYL L. PITMON
Notary Public, State of Texas
My Commission Expires
December 22, 2014