# EXHIBIT TWO



# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Sepideh Cirino, an Individual            9th Circuit Case No. 12-56038

Plaintiff - Appellant                    D.C. Case No. 8:11-cv-01890-AG-JPR


vs.

GMAC Mortgage, LLC, et al.

Defendants - Appellees


## APPELLANT'S INFORMAL BRIEF


**1.   Jurisdiction**


    **a.   Timeliness of Appeal:**


      (i)   Date of entry of judgment or order

      of originating court:  <u>May 21, 2012</u>


      (ii)  Date of service of any motion made after judgment (other than
      for fees and costs):  <u>N/A in this Appeal</u>

(iii)   Date of entry of order deciding motion: <u>N/A</u>

---

(iv)   Date notice of appeal filed:   <u>May 30, 2012</u>

## 2.   <u>**What are the facts of your case?**</u>

On or about October 20, 2004, John Cirino and Sepideh Cirino husband and wife as borrower and co-borrower, applied and obtained a loan for the purchase of real property located at 27495 Hidden Trail Road, Laguna Hills, California and agreed to a contract for payment of the debt secured by the real property (FAC pg.2, lns. 14-18). The entity that initiated the loan was Alliance Bancorp (FAC pg.2, ln. 18). On or about November 20, 2004, Alliance Bancorp proceeded to sell the interest in the alleged debt in return for consideration to GMAC Mortgage, LLC (FAC pg.2, lns. 19-21; FAC Exhibit A pg. 3). GMAC Mortgage, LLC (hereinafter "GMAC") marketed the interest in the alleged debt through the efforts of Bear Stearns & Co, Inc. (hereinafter "Bear Stearns"), and sold the interest in the alleged debt for consideration to Impac Funding Corporation (hereinafter "Impac Funding"), who purchased the interest with funds provided by a pre-funded Trust then pooled said interest for purposes of conversion to securities (FAC pg.2, lns. 21-25).

By December 31, 2004, Impac Funding sponsored the debt as security for a bond issue that was deposited by Bear Stearns into the Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2004-4 (hereinafter "Trust" which is a REMIC Trust) and the Note was converted into stock certificates and placed within multiple classes of the Trust that contained approximately $995,000,000.00 in certificates (FAC pg. 2, lns. 26-28; pg. 3 lns. 1-4; FAC Exhibit A pg. 18) . The Trust provided an annual activity reports to the Securities and Exchange Commission (hereinafter "SEC") as stipulated by the 1933 Securities Act & the Exchange Act of 1934.  These reports are on the performance of stock certificates in the secondary market that exist within the trust classes and the performance of those classes and the securities contained within.  Also contained within these reports are details showing the roles of all parties connected to the chain of custody of the alleged debt and the eventual transformation or conversion of the alleged debt into securities (FAC pg. 3, lns. 4-12).

Appellant is informed and believes and thereupon alleges that the conversion of the Note into securities provided a windfall of profits for the Appellees involved and provided for a scheme that enabled these Appellees to continue the misrepresentation of the existence of the alleged debt and a double dipping scenario that still continues (FAC pg. 3, lns. 13-17).  Appellant is further informed and believes and thereupon alleges that these certificates of stock are performing

and have paid off the alleged debt since placement of the alleged debt with the Trust (FAC pg. 3, lns. 17-20) . Wells Fargo Bank, N.A., as Trustee for Holders of Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2004-4 and Impac Funding, additionally misrepresented the debt within the judicial system by filing a Motion for Relief from Automatic Stay in the Bankruptcy proceeding of John Cirino on November 14th, 2011, as the Trust closed as of January 25, 2005 (FAC pg. 3, lns. 20-27; FAC Exhibit B) .

Pursuant to Section "H" of the Contract (FAC Exhibit C) signed by the parties in interest, "the Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note and all sums due under the Security Instrument (FAC pg. 5, lns. 8-11). Appellees Wells Fargo and Impac Funding, as reported to the SEC in annual reports, confirm that the Note referred to in the Contract no longer exists (FAC pg. 5, lns. 12-13). A copy of the Note is not sufficient proof to validate the alleged debt (FAC pg. 5, lns. 14).

Appellee Wells Fargo published and advertised the Notice of Default and Notice of Trustee Sale (FAC Exhibits D & E) and recorded same with the Clerk of the Recorder's Office of the County of Orange, State of California on or about January 25, 2011 (FAC pg. 5, lns. 15-18). Stated within the Notices of Default of Trustee and Sale are false representations and implications that a sale, referral or

other transfer of any interest in a debt shall cause the consumer to lose any claim or defense of the alleged debt (FAC pg. 5, lns. 18-21).

The alleged debt could not be reported as a debt in default as it is no longer in existence having been converted into a performing security or certificate of stock being publicly traded (FAC pg. 5, lns. 22-24). The Appellees continued to report to the three credit bureaus (Experian, Trans Union, and Equifax) that the alleged debt was in default (FAC pg. 5, lns. 24-26). The Appellees continued to use false representations and deceptive means to collect on the alleged debt by using official government letters with insignia identifying themselves as associated with government entities or supported by government entity such as HUD counseling (FAC pg. 5, lns. 26-28; pg. 6, lns. 1-2).

The gross negligence of the Appellees alleging to be creditors and their methods of collection and their misrepresentation of the facts from the inception of the alleged debt to the final destination of the alleged debt into the Trust to all parties, including the Investors of the Securities through reports made to the SEC (FAC pg. 6, lns. 21-26; FAC Exhibit F).

On or about August 29, 2011, Appellant filed for Chapter Seven Bankruptcy Protection in the United States Bankruptcy Court, Central District of California, Case No. 8:11-bk-22081-MW.

9th Circuit Case No. **12-56038**

On or about December 7, 2011, Appellant file a Complaint for Damages against Appellees in the United States District Court, Central District of California, Case No. 8:11-cv-01890-AG-JPR.

On or about January 10, 2012, Appellees filed a Motion to Dismiss.

On or about February 15, 2012, Appellant and Appellees filed a Stipulation to Continue the Hearing for the Motion to Dismiss.

On or about February 21, 2012, Hon. Guilford signed the order for granting the Stipulation to Continue the Hearing for the Motion to Dismiss.

On or about February 21, 2012, Appellant received her discharge in her Chapter 7 Bankruptcy.

On or about February 28, 2012, Appellant's Chapter 7 Bankruptcy was terminated.

On or about March 13, 2012, Appellant filed a First Amended Complaint.

On or about March 23, 2012, Appellees filed a Motion to Dismiss.

On or about April 23, 2012, Appellant filed an Opposition to the Motion to Dismiss.

On or about April 30, 2012, Appellees filed a Reply to the Opposition to the Motion to Dismiss.

On or about May 14, 2012, Hon. Guilford presided at the hearing for the Motion to Dismiss. Hon. Guilford granted Appellees' Motion to Dismiss without

9th Circuit Case No. **12-56038**

leave to amend and signed the Order.

On or about May 30, 2012, Appellant filed a Notice to Appeal.

### 3. __What did you ask the originating court to do (for example, award damages, give injunctive relief, etc.)?__

Appellant requested a Jury Trial, an order preliminarily and permanently enjoying each Defendant from violating with any actions that would further damage the Plaintiff; issue a temporary restraining order and preliminary injunction prohibiting any actions related to the Forfeiture of the property subject to these matters; issue a temporary restraining order and preliminary injunction prohibiting each Defendant from destroying documents; that the Court liberally construe the RICO laws and thereby find all Defendants, both jointly and severally, have acquired and maintained, both directly and indirectly, and interest in and/or control of a RICO enterprise or persons and of other individuals who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of the 18 U.S.C. 1962(b); issue orders that all Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation of 18 U.S.C. 1962(b) and from all other violation(s) of applicable State and Federal law(s); issue Judgment for Plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations 18 U.C.S. 1962(b)(d); treble (triple) damages under authority of 18 U.S.C 1964(c) for any gains, profits, or advantages attributable to all violations 18 U.S.C. 1962(a)(b)(c) and all other damages under the authority of 15 U.S.C. 1692(p), 1681 et seq., 1666 et seq. (triple); all costs of the lawsuit including attorney's fees; retain jurisdiction of the action to carry out the terms of all orders and decrees that may be entered; and further relief as the Court may determine to be just and necessary.

### 4. __State the claim or claims you raised at the originating court:__

(1) Violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692-1692p & Title 8 U.S.C. §802 et seq. & 15 U.S.C. §1.; (2) Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. & 15 U.S.C. §1; (3) Violation of the Securities Act of 1933 & 15 U.S.C. §1; (4) Violation of Section 10(b) of the Securities Exchange Act or 1934 & 15 U.S.C. §1; (5) Violation of Title 18 U.S.C.

§§1341, 1342, 1346, 1348 & 1349 Mail Fraud and Other Fraud Offenses §15 U.S.C. §1; and (6) Civil RICO Remedies 18 U.S.C. §§1961 et seq., 18 U.S.C. §§1964 & 15 U.S.C. §1.

## 5(a).     What issues are you raising on appeal?

**Issue A:**  The District Court Erred By Not Properly Apply *Twombly* And *Iqbal's* Standards to the First Amended Complaint and Ignored the Non-Conclusory Facts.

**Issue B:**  Material Issues Of Fact Exist As To Whether This Loan Was Paid Off Many Times Over As Securitized.

**Issue C:**  The District Court Erred Finding the RICO Claims Frivolous.

**Issue D:**  The District Court Abused Its Discretion by Denying Leave to Amend

**Issue E:**  Appellant's Case is Not Barred by Appellee GMAC Mortgage, LLC's filing for Chapter 11 Bankruptcy Protection

**5(b).**  <u>**What do you think the originating court did wrong?**</u>

## ARGUMENT, POINTS AND AUTHORITIES

**Issue A:  The District Court Erred By Not Properly Apply *Twombly* And *Iqbal's* Standards to the First Amended Complaint and Ignored the Non-Conclusory Facts.**

Our nation suffered the greatest economic devastation since the Great Depression, most of which was directly at the hands of the Big Banks or subsequent to the actions of the Big Banks.  The Appellant contends that: (1) the District Court's application of plausibility standard was neither correctly applied nor transparent because she laid out in detail the scheme and wrongful acts of the Appellees; (2) that the District Court improperly concluded that the First Amended Complaint (hereinafter "FAC")  did not state a plausible claim for relief; and (3) when the plausibility test is accurately applied, the FAC shows plausible and culpable allegations and claims.

Federal Rule of Civil Procedure 12(b)(6) (hereinafter "Fed. R. Civ. P.") permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  However, Fed. R. Civ. P. Rule 8(a)(2) only requires a Complaint to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Bell Atlantic Corp. v. Twombly* the Supreme Court implemented a new standard for addressing whether a Complaint states a claim upon which relief can be granted. 550 U.S. 544 (2007).  Under *Twombly*, the

Plaintiff must allege sufficient facts to raise a right to relief above the speculative level; it is not enough to merely create a suspicion of a legally cognizable right of action. *Id.* at 555-56. Further, a formulaic recitation of the elements of a cause of action will not do: Plaintiff's must provide the "grounds" of their "entitlement to relief" by more than mere labels and conclusions. *Id. Twombly* requires the Plaintiff to allege "enough facts" to "nudge"[the] claims across the line from conceivable to plausible." *Id.* at 570.

The District Court erred by only focusing on what it considered conclusory allegations when ruling on the motion to dismiss. The District Court did not take note of the non-conclusory allegations in the FAC. Appellants FAC met the threshold test for *Twombly* as she outlined and provided documentation of the culpable acts of the Appellees. On or about October 20, 2004 Appellant and her husband applied and obtained a loan for the purchase of real property located at 27495 Hidden Trail Road, Laguna Hills, California (hereinafter "Property") and agreed to a contract for payment of the debt secured by the Property. Alliance Bankcorp, the entity that originated the loan, sold the debt to GMAC Mortgage, LLC (hereinafter "GMAC"). GMAC ultimately sold its interest to Impac Funding Corporation (hereinafter "Impac Funding") who by December 31, 2004 sponsored the debt as security for a bond issue that was deposited by Bear Stearns & Co., Inc., into the Impac Secured Assets Corp. Mortgage Pass-Through Certificates

Series 1004-4 which is a Real Estate Mortgage Investment Conduit (REMIC) Trust (hereinafter "Trust").  Appellant contends that the Note was converted into a Trust and as such, it was no longer in existence.

Appellant also contends that once the Note was converted into a Trust, it provided a windfall of profits for the Appellees who were involved in and provided for themselves a scheme that enabled the Appellees to continue the misrepresentation of the alleged debt and double-dipping scenario which continues today.  Appellant further contends that the certificate of stocks are high performing and have paid off the alleged debt since placement of the alleged debt in the Trust.

The District Court elected to focus on self generated conclusory allegations which included that California's non-judicial foreclosure system does not allow Appellant to bring this challenge in a federal court and that Appellant was required to plead tender.  The District Court erred in not properly addressing the non-conclusory allegations regarding the securitization of the loan because this is a very serious contention against the Big Banks by many Americans and it is a question of fact that must be determined by a jury.  As this was the District Court's first ruling on the FAC, there should have been a more thorough assessment of the non-conclusory fact by the District Court.  Honestly, it seems as if the Courts just want these mortgage cases out of their courtrooms.  It appears that they look at it as

the borrower has defaulted on the loan and that no matter what the Big Banks have done, whether culpable or not, the Big Banks are the ones that are entitled to recovery. Justice is not always what at a cursory glance seems just.

In light of these liberal pleading standards, motions to dismiss are viewed with disfavor. *See* Schwarzer, <u>California Practice Guide:  Federal Civil Procedure Before Trial</u> (2005) ¶9:210:

> "Traditionally, courts have viewed with "disfavor" motions to dismiss under Rule 12(b)(6) because of the lesser role pleadings play in federal practice and the liberal policy re amendment, citing *Lormand v. US Unwired, Inc.* 565 F.3d 228, 232 (5th Cir. 2009) --Rule 12(b)(6) motions "viewed with disfavor and rarely granted"; *Broam v. Bogan* 320 F3d 1023, 1028(9th Cir. 2003) —[re:  Rule 12(b) 6) dismissal with prejudice proper only in "extraordinary" cases.]

In ruling on a Motion to Dismiss, the Court must accept all factual allegations pled in the Complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). Appellant clearly provided sufficient facts to support her allegation of the securitization of the loan. The FAC clearly provided the dates, Defendants, and documentation to support the

Appellees securitization claims regarding the loan. Though securitization is the basis of Appellant's claims, the District Court merely states the "allegations are insufficient to state any of the six claims for relief Plaintiff asserts." The District Court does not address the merits of the allegations or the factual nature of the allegations. The District Court just gleans over the plausibility of the allegations without explanation.

The Appellant meets the Ninth Circuit's standard in *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) because it has more than sufficient and significant factual allegation. Appellant describes in detail the Appellees' scheme to change the nature of the debt secured to the property to a REMIC Trust. The actions of the Appellees regarding the changing the nature of the debt, their benefit, and how it is the basis for the causes of action is described in factual detail and provides reasonable inferences from that content to be plausibly suggestive of a claim entitling Appellant to relief. *Id.* at 969 (citing *Iqbal*, 129 S. Ct. at 1949). The FAC provides factual allegations regarding the despicable actions of the Appellees well beyond the mere possibility that they are enough to provide redress, but to the plausibility of redress. *Id.* at 971-72.

The District Court misapplied Fed. R. Civ. P. 9(b) (hereinafter "Rule 9") to the FAC as a pleading is sufficient under Rule 9(b) if it identifies circumstances so that the Defendant can prepare an adequate answer from the allegations

(*Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993), quoting *Gottreich v. SF Inv. Corp.*, 552 F.2nd 866 (9th Cir. 1977)). However, Rule 9(b) does not require nor make legitimate pleading of detailed evidentiary matter (*Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973)). Here, the Appellant is up against the "Big Banks." The Attorney Generals in 49 states entered into a settlement with the top five banks in the United States because of their wrongdoing and Appellees GMAC and Wells Fargo were included in that settlement. However, the Attorney Generals did not go far enough in uncovering the wrongdoing of the banks likely because to do so would jeopardize our economy even further. To prevail on the securitization issue or uncover that the Big Banks were compensated for losses by insurance or the federal government or wrote-off losses, yet foreclosed on homes based on the full value of the alleged debt owed, it the ramifications would be devastating to our economy.

Under Rule 9(b), it is also not necessary, once the Complaint adequately identifies particular Defendants within categories of Defendants allegedly responsible for some continuing course of conduct, to plead more than group conduct of Defendants (*In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 181 (C.D. Cal. 1976)). Moreover, in cases where fraud was conducted over several years, a Plaintiff is not required to allege each date of each Defendant's fraudulent conduct since such requirement would defeat the purpose of Rule 8

requirement that pleading be short, plain, and in concise statements. *Id.* Here, Appellant adequately plead the unlawful conduct of the Appellees however, being up against the Big Banks, she is certainly at a disadvantage against being able to have *all* the dates and acts of *all* wrongdoing. However, she plead sufficient non-conclusory facts to walk through the door to discovery where she would be entitled to a forensic accounting to substantiate their wrongdoing. They converted the Note into securities, made money off the securities while still collecting payments on Appellant's loan. It is also unknown how much the Appellees wrote off as losses for their taxes and/or were compensated by insurance for Appellant's property. Appellant is entitled to an accounting of what is actually owed on the property which can only come through the discovery processes.

In this case Appellant identified specific facts and circumstances that constituted fraud which included exhibits containing the letters that Appellees sent to Appellant which relate to her claims for violation of the Fair Debt Collection Practices Act, Fair Credit Reporting Act, Mail Fraud, and RICO. This allowed the Appellees to prepare an adequate Answer however, the District Court stepped in and contending that "California does not 'provide for a judicial action to determine whether the entity initiation the foreclosure is indeed authorized.'" Really? Justice is central to any well functioning society however, to be unable to question the lawfulness of a foreclosure in a judicial action, especially in light of the

unlawful actions of the Big Banks over the past few years, is prejudicial not just to Appellee, but to the American public. Sometimes Courts have to look at cases as ones of first impression. In light of the circumstances of the actions of the Big Banks as evidenced by the Nation Mortgage Settlement with 49 Attorney Generals, including California's, it is time for the Courts to acknowledge that Borrowers have the right to litigate as to whether the debt is still owed and the amount owed on the debt.

Appellant has clearly outlined in the FAC instances of Appellees' actions that would constitute fraud just like Appellees' participation in the continuing scheme of whereby they, over a period of time, sold Appellant's home loan to other financial entities, which "pooled" large number of loans, put them into securitized trusts, and sold securities based on them.

This was part of a pattern of unlawful activity to conspire with others to utilize the non-judicial foreclosure structure of California law to unlawfully seek enrichment vial complicated financial derivatives, various modes of insurance and re-insurance, and the use of Financial Taxpayer aid to reap benefits at multiples beyond the face value of the underlying debt alleged and then take Appellant's house.

This action raises the issue of fraud in the continued collection of the loan after the Note was changed into a security which provided considerable gain the

Appellees.  There was also outlined fraud in the continued treatment of Appellant by Appellees including reporting the debt as a default, using false and deceptive means to collect on the alleged debt by using official government letters with insignia identifying them with themselves as associated with the government entities or supported by a government entity such as HUD counseling, and using the United States Postal Service to mail the fraudulent documents to Appellant.

It would be wrong to apply a bar to recovery against Appellant when the majority of evidentiary facts in this case were purposely hidden from Appellant at the inception and subsequent handling of the loan and continue to be hidden from her in the present.  As such, these allegations in the FAC must be taken as true, establish a claim of fraud and provided Appellees with sufficient notice to mount a defense.  Said facts are wholly within each of the Appellees' knowledge and discovery is needed to determine each Defendant's role and liability in this case.

A Rule 12(b)(6) motion based on extrinsic facts cannot be granted where there is a genuine issue as to any material fact. Schwarzer, <u>California Practice Guide:  Federal Civil Procedure Before Trial</u> (2005) ¶ 9:96.  Here, the District Court raised its own conclusory allegations that judicial action could not be sustained regarding non-judicial foreclosure which is in error because Appellant is contending that Appellees do not have the right to foreclose and she raises numerous other issues.  The District Court also erred in raising the non-conclusory

issue of tender which will be discussed below however, briefly, tender should not be an issue because Appellant claims that the debt is not owed because the Note is no longer in existence.

Appellant has met the burden of *Iqbal* and *Twombly* as well as Rule 8 and Rule 9.  Appellant plead enough non-conclusory facts that there would be the plausibility of recovery to have denied the Motion to Dismiss and require the Appellees to file and Answer.  The District Court erred in raising its own conclusory facts as the basis for the granting of the Motion to Dismiss. Appellant is entitled to discovery and entitled to a forensic accounting by Appellees regarding the securitization of the Note and how they have been compensated through the Trust as well as the government and insurance.  As such, Appellant requests this Honorable Court reverse and remand this matter back to the District Court.

### Issue B:  Material Issues Of  Fact Exist As To Whether This Loan Was  Paid Off Many Times Over As Securitized

The District Court erred when it held that Appellant's securitization allegations were "insufficient to state any of the six causes of action that Plaintiff asserts." See e.g., *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App. 4th 1149, 1155 (2011).  The District Court just dismissed Plaintiff's securitization allegation without support or foundation by misapplying *Gomes* claiming that

9th Circuit Case No. **12-56038**

California does not provide judicial recourse to challenge whether an entity initiating foreclosure indeed has the right to do so. This case at bar is distinguished from *Gomes* as *Gomes* is a wrongful foreclosure case challenging the authority of MERS as well as violations of a bankruptcy stay. Here, Appellant is claiming that the loan is not owed to Appellees because they changed the nature of the debt, made more than the debt that was owed, and she no longer owes the debt. What is interesting about Gomes is that it claims that a Borrower under California's non-judicial foreclosure statutes, does not have the standing to question foreclosure. How is that equitable? If non-judicial foreclosure is governed by statute and the Borrower agrees to such in the Real Estate Purchase Contract, how could that not substantiate a Breach of Contract claim if a Borrower questions whether the debt is owed or seeks proof of the amount owed?

Securitization occurs by pooling and selling contractual debt obligations ("CDO"), including residential and commercial mortgages, and depositing them to a trust. The trust pays for those deposits by issuing the CDO debt securities paid for by investors. Appellant originally entered into a loan agreement with Alliance Bancorp on or about October 20, 2004. Alliance Bancorp proceeded to sell the interest in the alleged debt to Defendant GMAC on or about November 20, 2004. GMAC marketed the loan through the efforts of Bear Stearns & Co., Inc. (hereinafter "Bear Stearn"), and sold the interest to Impac Funding who purchased

the interest with funds provided by a pre-funded Trust then pooled the interest for purposes into conversion to securities.

By December 31, 2004, Impac Funding sponsored the debt as security for a bond issue that was deposited by Bear Stearns, into the Trust which is a REMIC Trust, and the Note was converted into stock certificates and placed within multiple classes of the Trust that contained approximately $995,000,000 in certificates. The Trust provided annual activity reports to the Securities and Exchange Commission (hereinafter "SEC") as stipulated by the 1933 Securities Act and the Exchange Act of 1934. These reports are the performance of stock certificates in the secondary market that exist with the trust classes and the performance of those classes and the securities contained within. Also contained within these reports are details showing that roles of the parties connected to the chain of custody of the alleged debt and the eventual transformation or conversion of the alleged debt into securities.

It's Appellants contention that the conversion of the Note into securities changed the nature of the debt and it was no longer secured to the property. This scheme of Appellees enabled them to make a windfall profit while they continued to misrepresent the debt that is allegedly secured to the property. As such, Appellant contends that she is entitled to the property free and clear because she is the holder of the Deed (the alleged debt was discharged against Appellant

9th Circuit Case No. **12-56038**

personally in the matter of In re Sepideh Ciriano on February 21, 2012, Case No.

8:11-bk-22081-MW).

The District Court completely whitewashes the securitization allegations by

Appellant by asserting the erroneous notion that Appellant had a duty to tender the

amount owed on the overdue loan citing *Abdallah v. United Savings Bank*, 43 Cal.

App. 4th 1101, 1109 (1996). *Abdallah* requires the alleged tender of the loan to

maintain a cause of action for irregular sales procedure. Here, the District Court

misapplies *Abdallah* because the Appellant is claiming that Appellees do not have

the right to foreclose because the *debt is not secured to the property as she holds*

*the deed.* However, if tender is an issue, this Court should adopt the view that

tender is not a gatekeeper that needs to be pled in the Complaint just at the Court

held in *Botelho v. U.S. Bank, N.A., as Trustee for the LXS 2007-4N Trust*, No. 08-

04316, 2010, WL 583954, @85 (N.D. Cal. Feb 16, 2010) (that tender is not an

element that need s to be pled in a rescission claim for violation of Truth In

Lending Act). To do so would unduly prejudices a Plaintiff and it affords the

Courts the opportunity to dismiss Complaints by putting an unnecessary burden on

Plaintiffs when alleging that the debt is not owed or if so, what is the actual amount

of the debt as the Big Banks may have been compensated for losses by the

government, insurance, or tax write-offs.

9th Circuit Case No. **12-56038**

Appellant not only contends that the Note no longer exists due to it becoming a securitized asset, but also that Appellees continued to collect monies owed on the loan which created a double-dipping scenario. In this, Appellees perpetrated a fraud by collecting monies that they were not lawfully in a position to collect. Appellant plead sufficient non-conclusory allegations that there was the plausibility of recovery.

It cannot be ignored that the unlawful actions of the Big Banks led to economic devastation and their unlawful actions were the subject of the settlement with California's Attorney General and 48 other Attorney Generals. The government continues to pursue the illegal activities in the big banks as evidenced by the U.S. government's suit against Bank of America, N.A., for "Hustle" fraud. The fraud perpetrated was not unilateral, it was perpetrated against both the home purchaser and the investors. The big banks were greedy, indulgent, and reckless without accountability until their house of cards crumbled. Even more disturbing is the collapse included the jobs and subsequent incomes of many Americans. Not only did the Big Banks make money on the debt and the security, their greedy and indulgent behavior led to Americans being unable to afford their home because they lost their job which in turn, directly positioned the banks to foreclose on those homes.

The District Court erred in its handling of Appellant's securitization claim basing its findings on the flawed analysis that California's non-judicial foreclosure statutes to do not allow her to judicially question the standing of an entity bringing a foreclosure action and that she must plead tender of the loan. Appellant has a legal right to assert that the amount of the alleged debt is not owed due to the securitization of the loan. Also, it would be prejudicial to require her to plead tender at the pleading stage of litigation. As such, Appellant requests this Honorable Court reverse and remand the action back to the District Court.

**Issue C:    The District Court Erred Finding the RICO Claims Frivolous**

The District Court erred regarding RICO by finding it "frivolous." The allegations show that the Defendants 1) acquisition and maintenance of and interest and control of an enterprise engaged in a pattern of racketeering activity (18. U.S.C. §§1961(5), 1962(b)); 2) conduct and participation in a RICO enterprise through a pattern of racketeering activity (18 U.S.C. §§1961(5), 1962(d); and 3) pattern of racketeering activity (18 U.S.C. §§1961(5), 1962(d)).

Congress enacted RICO as Title IX of the Organized Crime Control Act of 1970 to deal with "enterprise criminality" which are patterns of specified kinds of violence such as murder, extortion, arson.... It included provision of illegal goods and services such as gambling, drugs, and prostitution as well as corruption in

9th Circuit Case No. **12-56038**

labor or management relations or in federal or state governments.  However, it also includes commercial fraud by, through, or against various types of licit or illicit organization in the "upper-world" or the underworld. On the criminal side, RICO authorizes up to twenty years of imprisonment or life imprisonment if death occur, substantial fines, and comprehensive criminal forfeitures.  On the civil side, it authorizes governmental injunctive relief, private suits for injunctions, treble damages, and attorneys fees.

At first, the Department of Justice moved slowly to use RICO.  Modernly, it is the prosecutor's tool of choice against sophisticated forms of crime.  White collar crime now outweighs organized crime cases pursued by prosecutors. A small percentage falls into the class of hate crimes.  In the early 1980's RICO began being used in private civil litigation and now is a common cause of action in the general area of commercial fraud.

A pattern of racketeering is expressly defined to mean only two (2) RICO "predicate acts" during any given 10-year period.  See 18 U.S.C. 1961(5). The federal statute at 18 U.S.C. 1961 itemizes all RICO predicate acts.  The most common are mail fraud, extortion, obstruction of justice, obstruction of a criminal investigation, and witness tampering or retaliation. Violations of State *and* Federal laws both qualify as RICO predicate acts.

Another objective of Civil RICO is to turn victims into prosecutors, "private attorneys general," dedicated to eliminating racketeering activity.  See *Rotella v. Wood* 528 U.S. 549 (2000).  Civil RICO specifically has a further purpose of encouraging potential private plaintiffs to investigate diligently.  *Rotella v. Wood.*

This statute is a strong law for Plaintiffs because it is not necessary for the Defendant to have been already convicted of criminal RICO charges. In fact, the Plaintiff does not have to prove the criminal violation beyond a reasonable doubt. The reason is, a lawsuit under 18 USC 1964 is a civil case. It is not subject to the same burden of proof as the prosecution must face in a criminal case. The civil Plaintiff only has to establish his case by preponderance of the evidence, which is like proving something is more likely true than not.

The person can ask the Judge to order payment of damages and also to order injunctions (such as a restraining order) to prevent future violations.  The provision for triple damages is justified by the expected benefit of suppressing racketeering activity, an object pursued the sooner the better. *Rotella v. Wood.*  The "private attorney general" concept holds that a successful private party Plaintiff is also entitled to recovery of his legal expenses, including attorney fees, if she has advanced the policy inherent in public interest legislation on behalf of a significant class of persons. *Dasher v. Housing Authority of City of Atlanta* (Ga., D.C.Ga., 64 F.R.D. 720, 722).

Appellant's RICO claims are anything but frivolous especially in light of Appellees egregious actions over the last ten years.  The government determined that the  Big Banks were "too big to fail" and bailed them out with taxpayer dollars.  Just as the Big Banks were too big to fail, it appears that the Courts contend that they are too big to be corrupt however, 49 Attorney Generals seem to disagree.

The National Mortgage Settlement website, nationalmortgagesettlement.com, states that the Attorney Generals of 49 states, including California, reached a "historic" joint State and Federal settlement in February 2012 with Ally/GMAC, Bank of America, City, JP Morgan Chase, and Wells Fargo.  The $25 billion settlement is predicated on the fact that the country's five largest mortgage servicers violated the law as they "routinely signed foreclosure related documents outside the presence of a notary public and without really knowing whether the facts they contained were correct."  This is the "largest multistate settlement since the Tobacco Settlement in 1998."

As part of the National Mortgage Settlement, there is significant evidence that Appellees engaged in unlawful activity which arguably goes well beyond the document origination allegations pursued by the Attorney Generals.  It is Appellant's contention that it went well beyond the scope of what was included in the National Mortgage Settlement and into the depths of activities that would

9th Circuit Case No. **12-56038**

satisfy a RICO claim.  Appellant was exercising her right under RICO to be a Private Attorney General and pick-up where the State Attorney Generals left off in the pursuit of justice.  There is concern that the State Attorney Generals did not further pursue the racketeering activities of the Big Banks because it would be even more devastating for a tumultuous economy on the brink of collapse a (our Nation will once again hit the debt ceiling by the end of 2012 and the Federal Reserve is printing $40 BILLION per month (new money) to purchase mortgage backed securities which will cause mass inflation ("The Fed Keeps Printing Money" The Washington Times, Dave Schwartz, September 26, 2012)) .

The Appellees actions are not exclusive to them, but rather a norm of an industry that has chosen to violate and dishonor many of the rules and regulations bestowed on us as a civilized society.  The fraudulent actions that the Appellees are accused of has become a necessary evil for the continued existence and prosperity as they try to protect their assets of today and their promises of tomorrow.  The top six banks hold assets equivalent to 65% of the United States of America's GDP (Time magazine dated December 5th, 2011) with the estimated number of the GDP at 15 Trillion Dollars.  They use many innovative money mechanics created to leverage the debt whether through Government borrowing or Private Sector investments .

9th Circuit Case No. **12-56038**

The Appellees actions are not a new phenomena in the world of business, but what is amazing about their ongoing actions is the willingness of the system to tolerate and excuse such actions as part of doing business and try to sell to the public, Congress, and the Courts as too big to fail.   The actions of the Appellees are a reminder of a time not so long ago that we as a Nation had to endure another organization, the Mafia, that sought to be untouchable and beyond the reach of the laws of this nation.  The reluctance of the Judicial Branch has not gone without notice in this matter, in turn creating a moral hazard that continues to intensify.  As such, Appellant has courageously made a stand against the gluttonous, financial behemoths and their blatant disregard for the law of this Country.

The District Court  erred in finding Appellant's three RICO counts frivolous. Appellant's First Count that the District Court contended was frivolous was for the Acquisition and Maintenance of an Interest in and Control of An Enterprise Engaged in a Pattern of Racketeering Activity, 18 U.S.C. §§1961(5), 1962(b). The Second Count was for Conduct and Participation in a RICO Enterprise Through a Pattern of Racketeering Activity, 18 U.S.C. §§1961(5), 1962(d).  Count Three was Conspiracy to Engage in a Pattern of Racketeering Activity, 18 U.S.C., §§1961(5), 1962(d).

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States

district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. Hon. Guilford seemed offended in oral argument that Appellant would pray treble damages in this matter asking if she really deserved the amount of damages. Though it may appear excessive, she is taking the burden of the confronting the Appellees regarding their unlawful actions that have violated the RICO statutes. Taking on that burden is why Congress statutorily provided for treble damages. Hon. Guilford's distain for the prayer for treble damages is a window into the mere ruling that Appellant's RICO claims are frivolous.

Very few would say these allegations suggest something different then what they allege. *Twombly* and *Iqbal* direct Courts to apply a kind of judicial commonsense when determining the allegations are plausible. The Appellant contends that this was not applied as the Court just dismissed the RICO claims as frivolous. The Attorney Generals from most of the States of the Union would disagree as well as other District Courts in and out of California are allowing RICO and fraud claims to go forward to discovery and juries.

The District Court did not identify the non-conclusory allegations and distinguish them from conclusory allegations which would go towards demonstrating RICO violations or aid Appellant in a Second Amended Complaint.

As such, Appellant requests this Honorable Court reverse the ruling of the District

Court and remand for further proceedings.

## Issue D:  The District Court Abused Its Discretion by Denying Leave to Amend

The District Court also abused its discretion, to the severe prejudice of

Appellant by denying leave to amend.  Fed. R. Civ. P. 15(a) commands that leave

to amend "shall be freely given when prejudice so requires."  Recognizing that it

would be "entirely contrary to the spirit of the [rules] for decisions on the merits to

be avoided on the basis of * * * mere technicalities," the Supreme Court has

emphasized that Rule 15(a)'s "mandate is to be heeded."  *Foman v. Davis*, 371 U.S.

178, 181-82 (1962).  Thus leave to amend "should be denied only when the

amendment would be prejudicial to the opposing party, there has been bad faith on

the part of the moving party, or the amendment would have been futile." *Sciolino v.*

*City of Newport News*, 480 F.3d 642, 651 (4th Cir. 2007) (internal quotation marks

omitted).  None of these grounds for precluding amendment were present here.

### A.    Amendment Would Not Be Futile

The proposed Second Amended Complaint would cure any legitimate

deficiencies that the District Court has with the FAC.  The District Court is

somewhat deceptive in its assertion that Appellant was previously given leave by

the District Court to amend her Complaint.  Based on Stipulation of the parties, the

9th Circuit Case No. **12-56038**

District Court granted leave to amend. However, the leave to amend was not with the direction of the District Court. The District Court acted prejudicially to Appellant by not affording her the opportunity to address alleged deficiencies at the direction of the District Court. By no means would it be futile to allow the Appellant the opportunity to amend the FAC.

However, as discussed supra, the District Court erred in its finding that Appellant cannot bring litigation against the Appellees due to California's non-judicial foreclosure laws. This case at bar challenges issues that are outside of those in the cases cited by the District Court. The District court also erred in raising the issue of tender however, if it were a legitimate issue, the Appellant is entitled to address it in her Second Amended Complaint especially concerning her Fair Credit Reporting Act claim and Mail Fraud Claim which the District Court stated failed based on the "flawed securitization arguments." Appellant's RICO claim is not frivolous and the District Court was improper in its disregard of the claim. As such, the Court did not address the specifics of that claim that Appellant could plead with factual particularity in her Second Amended Complaint. Appellant can provide more facts regarding Appellees wrongdoing however, the District Court failed to address the valid non-conclusory allegations and did not fully address the alleged conclusory allegations.

## B.    There Was No Bad Faith or Dilatory Motive

The District Court concluded that Appellant's "failure to substantively amend her pleadings when leave to do so suggests that Plaintiff will be unable to cure the deficiencies in her FAC if granted leave to amend once again." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  The Court erred on its ruling regarding the foundation of the case and therefore assumed, based on its assessment of the FAC, that Appellant did not have additional allegations or facts to amend the FAC.  Again, the Motion to Dismiss hearing was held on the FAC, as such, this was the District Court's first ruling on Appellant's claims.   Appellant filed her FAC in good faith and would file a Second Amended Complaint in good faith.  Unlike the assertion of Appellees in their Motion to Dismiss the First Amended Complaint, Appellant is not merely trying to stall the foreclosure process.  The Appellees have been found culpable by the Attorney Generals of 49 States.   Of course, the Appellees proclaim their innocence while the Nation suffers.  The District Court should take the claims of the Appellant and address them seriously especially in her RICO claim where she is coming before the Court as a private attorney general.

## C.    Amendment Would Not Be Prejudicial

Leave to amend would not prejudice Appellees, to deny it was prejudicial to Appellant.  Per Stipulation of the Parties, Appellant filed the FAC in good faith on

March 13, 2012.  However, the Appellees filed their Motion to Dismiss on March 23, 2012.  It appears that the Appellees did not enter the Stipulation in good faith and were just lying in wait once she filed the FAC.  Now they are trying to use the FAC as a basis that she previously amended her Complaint.  However, there is a significant difference between amending a Complaint per Stipulation and without the direction of the District Court.  As Appellees are trying to take advantage of Appellant, they are not prejudiced by the filing of a Second Amended Complaint.

Appellant and America have suffered by the reckless, indulgent actions of Appellees.  Appellant is one woman up against a Big Bank with unlimited resources that it pillaged from the hard work of Appellant and the American people.  Appellant has the right to a Second Amended Complaint due to the errors of the District Court and her rights as a litigant.  She fights an uphill battle against this matter and should be afforded the opportunity to present her case.  Also, there appears to be a prejudice against Plaintiffs in cases against the Big Banks.  Courts should take extra care in the handling of these cases instead of just dismissing them with what appears in many cases is very little consideration of the unlawful actions of the Big Banks.  Also, due to budget cuts in the Courts, there is concern that Plaintiffs are not be treated with the lawful consideration regarding amending Complaints in which they are lawfully entitled.

## Issue E:  Appellant's Case is Not Barred by Appellee GMAC Mortgage, LLC's filing for Chapter 11 Bankruptcy Protection

On or about May 14, 2012, Residential Capital and certain of its affiliates including Appellee GMAC Mortgage, LLC, filed for Chapter 11 Bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020(MG).  Appellant received a correspondence from M. Elizabeth Holt, attorney for Appellees, dated August 22, 2012, claiming that Appellants claims for each of the causes of action for monetary relief are barred by the Final Supplemental Order to the extent that Appellant seeks  "monetary compensation of any kind, including costs, attorney's fees, and compensatory, treble, or punitive damages."   Appellant contends she does have valid claims pursuant to 14(a) of the Final Supplemental Order which states:

"except as set forth herein, a borrower, mortgager, or lien holder (each, and "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims  relating exclusively to the property that is the subject of the loan owed or serviced by Debtor for the purposes of defending, unwinding,  or otherwise enjoining or precluding any foreclosure,  whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal

or seek reconsideration has expired or been exhausted) permitting

foreclosure or eviction has not been awarded or, with respect to

completed foreclosure sales in Non-Judicial States, where any

applicable challenge period has not yet expired, and to prosecute

appeals with respect to any such direct claims or counter-claims."

As such, any non monetary claims that Appellant has against Appellee GMAC

may move forward and are not barred by the Automatic Stay. All other claims

against the other Appellees are not part of the Bankruptcy proceeding and are not

subject to the automatic stay.

## Conclusion

Appellant requests this Honorable Court reverse the ruling of the District

Court and remand this case back to the District Court for further handling.

6.   **Did you present all issues listed in #5 to the originating court?**

_No._   If not, why not?

Appellant presented all issues except for Issue E which is the subject of

Appellee GMAC Mortgage, LLC's Bankruptcy Proceeding which was filed after

this Appeal.

7. **What law supports these issues on appeal?**

Memorandum of Points and Authorities is in 5(b).

8. **Do you have any other cases pending in this court?**

If so, give the name and docket number of each case.

No.

9. **Have you filed any previous cases which have been decided by this court?   If so, give the name and docket number of each case.**

No.

10. **For prisoners, did you exhaust all administrative remedies for each claim  prior to filing your complaint in the district court?**

N/A

DATED:   November 5, 2012

Sepideh Cirino, Pro Se
Appellant
27495 Hidden Trail Road
Laguna Hills, CA  92653
 (949) 283-3774

## CERTIFICATE OF SERVICE

I certify that a copy of the APPELLANT'S INFORMAL BRIEF and any attachments was served, either in person or by mail, on the persons listed below.

Sepideh Cirino, Pro Se
Appellant
27495 Hidden Trail Road
Laguna Hills, CA 92653
(949) 283-3774

| <u>Name</u> | <u>Address</u> | <u>Date Served</u> |
|---|---|---|
| Office of the Clerk<br>James R. Browning<br>U.S. Court of Appeals | 95 Seventh St.<br>San Francisco, CA<br>94103-1526 | November 5, 2012 |
| Robert Gandy<br>Kerry W. Franich<br>Severson & Werson<br>A Professional Corporation<br>Attorneys for<br>Appellees<br>GMAC Mortgage, LLC,<br>Wells Fargo Bank, N.A.<br>as Trustee for Holders of<br>Impac Secured Assets Corp.<br>Mortgage Pass-Through<br>Certificates Series 2004-4, and<br>Mortgage Electronic<br>Registration Systems | The Atrium<br>19100 Von Karman Ave.<br>Suite 700<br>Irvine, CA 92612 | November 5, 2012 |

| | | |
|---|---|---|
| Mary Elizabeth Holt | One Embarcadero Center | November 5, 2012 |
| Severson & Werson | Suite 2600 | |
| A Professional Corporation | San Francisco, CA  94111 | |

Attorneys for
Appellees
GMAC Mortgage, LLC,
Wells Fargo Bank, N.A.
as Trustee for Holders of
Impac Secured Assets Corp.
Mortgage Pass-Through
Certificates Series 2004-4, and
Mortgage Electronic
Registration Systems

## CERTIFICATE OF SERVICE

I certify that a copy of the **OPPOSITION TO DEBTORS' FIFTY-FIRST OMNIBUS OBJECTION TO CLAIMS** and any attachments was served, either in person or by mail, on the persons listed below.


Signature

| <u>Name</u> | <u>Address</u> | <u>Date Served</u> |
|---|---|---|
| <u>Presiding Judge</u><br>Hon. Martin Glenn | One Bowling Green<br>Courtroom 501<br>New York, NY 10004 | December 6, 2013 |
| <u>Attorneys for Debtors</u><br>Morrison & Foerster, LLP<br>Attn:<br>Gary S. Lee, Esq.<br>Norman S. Rosenbaum, Esq.<br>Jordan A. Wishnew, Esq. | 1290 Avenue of the Americas<br>New York, NY 10104 | December 6, 2013 |
| <u>Attorneys for the Official Committee</u><br><u>of Unsecured Creditors</u><br>Kramer Levin Naftalis<br>& Frankle LLP<br>Attn:<br>Kenneth H. Eckstein, Esq.<br>Douglas H. Mannal, Esq. | 1117 Avenue of the Americas<br>New York, NY 10036 | December 6, 2013 |