## EXHIBIT 1

## Delehey Declaration

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------ ) | | |
| In re: ) | Case No. 12-12020 (MG) | |
| ) | | |
| RESIDENTIAL CAPITAL, LLC, et al., ) | Chapter 11 | |
| ) | | |
| Debtors. ) | Jointly Administered | |
| ------------------------------------------------ ) | | |

**DECLARATION OF LAUREN GRAHAM DELEHEY,
CHIEF LITIGATION COUNSEL AT RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF
DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM STAY FILED ON
BEHALF OF ROSALIND ALEXANDER-KASPARIK [DOCKET NO. 5621]**

I, Lauren Graham Delehey, declare as follows:

**A.    Background and Qualifications**

1.    I serve as Chief Litigation Counsel in the legal department at Residential

Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of

Delaware and the parent of the other debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**").  I have served as in-house litigation counsel since

I joined ResCap on August 1, 2011.

2.    In my role as Chief Litigation Counsel at ResCap, I am responsible for the

management of residential mortgage-related litigation.  I am authorized to submit this declaration

1

(the "**Declaration**") in support of the *Debtors' Objection To Motion For Relief From Stay Filed
On Behalf Of Rosalind Alexander-Kasparik [Docket No. 5621]* (the "**Objection**").[1]

3.         In my capacity as Chief Litigation Counsel, I am generally familiar with
the Debtors' litigation matters, including the California Action (defined below).  Except as
otherwise indicated, all statements in this Declaration are based upon my personal knowledge;
information supplied or verified by personnel in departments within the Debtors' various
business units; my review of the Debtors' litigation case files, books and records, as well as other
relevant documents; my discussions with other members of the Debtors' Legal Department;
information supplied by the Debtors' consultants and counsel; or my experience, expertise, and
knowledge of the Debtors' litigation matters, financial condition and history.  In making my
statements based on my review of the Debtors' litigation case files, books and records, relevant
documents, and other information prepared or collected by the Debtors' employees, consultants
or counsel, I have relied upon these employees, consultants, and counsel accurately recording,
preparing, collecting, or verifying any such documentation and other information.  If I were
called to testify as a witness in this matter, I would testify competently to the facts set forth
herein.

**B.        Events Giving Rise To The Motion**

4.         On or about May 16, 2005, Movant obtained a loan (the "**Loan**") secured
by a first deed of trust from Unitrust Mortgage, Inc. in the amount of $314,240.00 against the
property located at 1021 Scott Street #149, San Diego, California 92106 (the "**Property**").  See
Note and Deed of Trust, annexed hereto as **Exhibits A** and **B**, respectively.  GMACM was the
servicer for the Loan.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the
Objection.

ny-1121039

5.     California law allows for non-judicial foreclosures.  As a result of
Movant's continuing default under the Loan, on or about October 14, 2010, Executive Trustee
Services ("**ETS**"), acting as agent for GMACM, served and recorded a notice of default on the
Loan.  See Notice of Default and Election to Sell Under Deed of Trust, annexed hereto as
**Exhibit C**.

6.     On or about May 24, 2012, ETS recorded a notice of trustee's sale of the
Property, which was scheduled to be held on July 3, 2012.  See Notice of Trustee's Sale,
annexed hereto as **Exhibit D**.

7.     GMACM purchased the Property at the trustee's sale, which was
ultimately held on July 3, 2012.  See Trustee's Deed Upon Sale, annexed hereto as **Exhibit E**.
Shortly thereafter, GMACM deeded the Property to Federal Home Loan Mortgage Corporation
("**Freddie Mac**").  See Corporation Grant Deed, annexed hereto as **Exhibit F**.  Following the
closing of the Ocwen sale, Ocwen took over servicing of the Property.

8.     On or about July 31, 2012, Movant filed a complaint (the "**Complaint**")
commencing the California Action against GMACM, Freddie Mac, and various unspecified
defendants in the California State Court (Case No. 37-2012-101531), asserting claims for:
(I) Intentional Misrepresentation; (II) Negligent Misrepresentation; (III) Breach of Fiduciary
Duty; (IV) Unjust Enrichment; (V) Breach of Contract; (VI) Quiet Title; (VII) Violation of
California Civil Code § 2923.6; and (V) Violation of California Business & Professions Code
§§ 17200, *et seq*.  See Motion, Ex. A.

9.     On October 10, 2012, GMACM filed a Notice of Bankruptcy and
Suggestion of Automatic Stay (the "**NOB**") with the California State Court.  See NOB, annexed
hereto as **Exhibit G**.

ny-1121039

10.     The California Action has remained stayed since the NOB was filed.

11.     On November 8, 2012, Movant's counsel filed a proof of claim (Claim
No. 3695) on Movant's behalf against GMACM, asserting a secured claim on account of the
California Action in the amount of $1.5 million.  See Proof of Claim No. 3695, annexed hereto
as **Exhibit H**.

12.     The California Action has remained stayed since the NOB was filed.

**C.     Certain Sonnax Factors**

13.     As far as I am aware, no specialized tribunal has been created to hear any
of the claims involved in the California Action, which raises only state law claims.

14.     In the vast majority of the cases, including the California Action, the
Debtors pay their legal defense fees and costs out-of-pocket.  As a result, requiring the Debtors
to defend the California Action will result in increased out-of-pocket defense costs for outside
counsel fees and expenses alone.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing
is true and correct.

Dated:  December 10, 2013

                                        /s/ Lauren Graham Delehey
                                        Lauren Graham Delehey
                                        In-House Litigation Counsel for
                                        Residential Capital, LLC

ny-1121039

## **Exhibit A to Declaration**

MIN: 1002861-0601564562-3    **NOTE**    Loan Number: 601564562

MAY 16, 2006                     SAN DIEGO              CALIFORNIA
[Date]                             [City]                 [State]

1021 SCOTT STREET #149, SAN DIEGO, CALIFORNIA 92106
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 314,240.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is UNITRUST MORTGAGE, INC., A CALIFORNIA CORPORATION (CFL # 01230107)
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on JULY 1 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 11230 SORRENTO VALLEY ROAD #215, SAN DIEGO, CALIFORNIA 92121
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,012.11

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

DocMagic eForms 800 649-1362
www.docmagic.com

Us3200.not

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)   Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of       15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)   Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)   Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)   No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)   Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

---

1fa3200.not

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ROSALIND                    -Borrower
ALEXANDER-KASPARIK

SEE ATTACHED ALLONGE

_____ (Seal)
                            -Borrower

Pay to the Order of
**GMAC Mortgage Corporation**
Without Recourse

_____ (Seal)
                            -Borrower

Joanne Wight, Vice President
Acting Agent for **GMAC Bank**

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE

_____
                    D. Chiodo
            Limited Signing Officer
              Acting Agent for
    GMAC MORTGAGE CORPORATION [From Original Only]

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3200.not

# UNITRUST MORTGAGE, INC.

## Loan #601564562

# ALLONGE TO NOTE

| | |
|---|---|
| Note Date: | May 16, 2006 |
| Note Amount: | $314,240.00 |
| Borrower(s): | Rosalind Alexander-Kasparik |
| Property Address: | 1021 Scott Street #149 |
| | San Diego Ca. 92106 |

PAY TO THE ORDER OF

GMAC BANK

WITHOUT RECOURSE

| | |
|---|---|
| Company Name: | UniTrust Mortgage, Inc., a California Corporation |
| By: | |
| Printed Name: | Philip H. Aronoff |
| Title: | President |

CERTIFIED TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL
BY: _Cru_

(858) 404-7300 • Fax: (858) 404-7323 • 11230 Sorrento Valley Road • Suite 215 • San Diego, CA  92121
e-mail:  UNITRUST-INC.COM

<u>**Exhibit B to Declaration**</u>

RECORDED AT THE REQUEST OF
CHICAGO TITLE COMPANY
SUBDIVISION DEPT.
**18811**

Recording Requested By:
UNITRUST MORTGAGE, INC.

DOC #    2006-0393460



JUN 02, 2006      4:59 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        63.00
PAGES:       19         DA:    1

And After Recording Return To:
UNITRUST MORTGAGE, INC.
11230 SORRENTO VALLEY ROAD #215
SAN DIEGO, CALIFORNIA 92121
Loan Number: 601564562

**2006-0393460**

JS105149 ————— [Space Above This Line For Recording Data] —————

# DEED OF TRUST

**MIN:** 1002861-0601564562-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated    MAY 16, 2006                        , together with all Riders to this document.
**(B)** "Borrower" is    ROSALIND ALEXANDER-KASPARIK, AN UNMARRIED WOMAN


Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is    UNITRUST MORTGAGE, INC.

Lender is a    CALIFORNIA CORPORATION                                        organized
and existing under the laws of    CALIFORNIA
Lender's address is    11230 SORRENTO VALLEY ROAD #215, SAN DIEGO,
CALIFORNIA 92121

**(D)** "Trustee" is    CHICAGO TITLE COMPANY
2365 NORTHSIDE DRIVE #500, SAN DIEGO, CALIFORNIA 92108

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "Note" means the promissory note signed by Borrower and dated    MAY 16, 2006
The Note states that Borrower owes Lender    THREE HUNDRED FOURTEEN THOUSAND TWO
HUNDRED FORTY AND 00/100        Dollars (U.S. $ 314,240.00      ) plus interest.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 1 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005.mzd

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JUNE 1, 2036

(G)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Planned Unit Development Rider
☐ Balloon Rider                  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Second Home Rider
☒ *Condominium Rider*            ☐ Other(s) [specify]

(J)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, *but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by* telephone, wire transfers, and automated clearinghouse transfers.

(M)  "**Escrow Items**" means those items that are described in Section 3.

(N)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                           of                           SAN DIEGO                     :
[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 531-692-03

which currently has the address of    1021 SCOTT STREET #149
                                                            [Street]

SAN DIEGO             -                    , California       92106        ("Property Address"):
[City]                                                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

Ca3005.mzd

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

Ca3005.mzd

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Ca3005.mzd

**18816**

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 6 of 14                    *DocMagic* *eForms* 800-649-1362
www.docmagic.com

Cs3005.mzd

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                              Page 7 of 14                              DocMagic eForms 800-649-1362
www.docmagic.com

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

Cs3005.mzd

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The**

Ca3005.mzd

**18822**

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                         Page 12 of 14          DocMagic *eForms* 800-649-1362
                                                               www.docmagic.com

Ca3005.mzd

18823γ

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)        _____ (Seal)
                                  -Borrower                                         -Borrower
ROSALIND
ALEXANDER-KASPARIK

_____ (Seal)        _____ (Seal)
                                  -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                         -Borrower

Witness:                                         Witness:

_____                _____

DocMagic *eForms* 800-649-1352
www.docmagic.com

Ca3005.mzd

State of California                   )

                                 ) ss.

County of  SAN DIEGO         )

     On *May 26, 2006*     before me, *Daniel S. Fagelson, Notary Public*

personally appeared   ROSALIND ALEXANDER-KASPARIK

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

DANIEL S. FAGELSON
COMM. #1382592
Notary Public-California
SAN DIEGO COUNTY
My Comm. Exp. Nov 5, 2006
ESI1

_____
NOTARY SIGNATURE

_____
(Typed Name of Notary)

       NOTARY SEAL

Ca3005.mzd

**18824**

Loan Number:  601564562

Date:  MAY 16, 2006

Property Address:    1021 SCOTT STREET #149, SAN DIEGO, CALIFORNIA 92106

## EXHIBIT "A"

## LEGAL DESCRIPTION

*Attach legal*

A.P.N. # : 531-692-03

DocMagic *eForms* 800-649-1362
*www.docmagic.com*

Ca3005.mzd.

**18825**

<u>**EXHIBIT "A"**</u>

**A CONDOMINIUM COMPOSED OF:**

<u>**PARCEL 1:**</u>

AN UNDIVIDED ONE-ONE HUNDRED TWENTY THIRD (1/123) INTEREST AS TENANT-IN-COMMON IN AND TO THE FOLLOWING DESCRIBED REAL PROPERTY:

LOT 1 OF YACHT CLUB CONDOMINIUMS, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA ACCORDING TO MAP THEREOF NO. 15199 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 12, 2005.

EXCEPTING THEREFROM THE FOLLOWING:

(A)    ALL LIVING UNITS SHOWN UPON YACHT CLUB CONDOMINIUM PLAN RECORDED DECEMBER 23, 2005 AS FILE NO. 2005-1101209, IN THE OFFICIAL RECORDS, SAN DIEGO COUNTY, CALIFORNIA ("CONDOMINIUM PLAN")

(B)  THE EXCLUSIVE RIGHT TO POSSESSION OF THOSE DESIGNATED AREAS AS EXCLUSIVE USE COMMON AREA BALCONY, GARAGE AND PARKING SPACE AS SHOWN UPON THE CONDOMINIUM PLAN REFERRED TO HEREINABOVE AND WHICH ARE CONVEYED BY GRANTOR TO THE PURCHASER OF ANY LIVING UNIT.

<u>**PARCEL 2:**</u>

**LIVING UNIT <u>LU-149</u>** AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO HEREINABOVE.

<u>**PARCEL 3:**</u>

THE EXCLUSIVE RIGHT TO THE USE, POSSESSION AND OCCUPANCY OF THOSE PORTIONS OF THE REAL PROPERTY REFERRED TO IN PARCEL 1 ABOVE, DESIGNATED AS EXCLUSIVE USE COMMON AREA BALCONY, IF APPLICABLE, AS APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED AND BEARING THE SAME NUMBER DESIGNATION AS THE LIVING UNIT REFERRED TO IN PARCEL 2 ABOVE.

<u>**PARCEL 4:**</u>

THE EXCLUSIVE RIGHT TO THE USE, POSSESSION AND OCCUPANCY OF THOSE PORTIONS OF THE REAL PROPERTY REFERRED TO IN PARCEL 1 ABOVE, DESIGNATED AS EXCLUSIVE USE COMMON AREA **PARKING SPACE <u>N/A</u>** , AS APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED.

<u>**PARCEL 5:**</u>

THE EXCLUSIVE RIGHT TO THE USE, POSSESSION AND OCCUPANCY OF THOSE PORTIONS OF THE REAL PROPERTY REFERRED TO IN PARCEL 1 ABOVE, DESIGNATED AS EXCLUSIVE USE COMMON AREA **GARAGE <u>G-513</u>**, AS APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED.

**18826**

Loan Number: 601564562

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 16th day of MAY, 2006                     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to UNITRUST MORTGAGE, INC., A CALIFORNIA
CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1021 SCOTT STREET #149, SAN DIEGO, CALIFORNIA 92106
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

YACHT CLUB
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.  Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv)
other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**B.  Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards, including,
but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for
property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property
insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Us3140.rid

**18827**

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.  Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.  Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.  Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.**  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

---

MULTISTATE CONDOMINIUM RIDER
Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                            Page 2 of 3

*DocMagic eForms* *800-649-1362*
*www.docmagic.com*

Us3140.rid

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this *Condominium Rider.*

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower
ROSALIND
ALEXANDER-KASPARIK

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

MULTISTATE CONDOMINIUM RIDER
Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          *DocMagic eForms* 800-649-1362
Form 3140 1/01                              Page 3 of 3          *www.docmagic.com*

Us3140.rid

## Exhibit C to Declaration



# # 2010-0552479

Pg 32 of 88

**RECORDING REQUESTED BY:**

LSI TITLE COMPANY, INC.

**WHEN RECORDED MAIL TO:**
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

OCT 14, 2010     8:00 AM **6674**
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
DAVID L. BUTLER, COUNTY RECORDER
FEES:          21.00
                            DA:          1
**PAGES:**          **2**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. : GM-223981-C     Loan No.: 0601564562

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,**
and you may have the legal right to bring your account in good standing by paying all of your past
due payments plus permitted costs and expenses within the time permitted by law for reinstatement
of your account, which is normally five business days prior to the date set for the sale of your
property.  No sale date may be set until three months from the date this notice of default may be
recorded (which date of recordation appears on this notice).

   This amount is **$6,867.45** as of **10/12/2010**, and will increase until your account becomes
current.  While your property is in foreclosure, you still must pay other obligations (such as insurance
and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments
on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as
required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you
do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee
may require as a condition of reinstatement that you provide reliable written evidence that you paid all
senior liens, property taxes, and hazard insurance premiums.

   Upon your written request, the beneficiary or mortgagee will give you a written itemization of the
entire amount you must pay.  You may not have to pay the entire unpaid portion of your account,
even though full payment was demanded, but you must pay all amounts in default at the time
payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing
prior to the time the notice of sale is posted (which may not be earlier than the three month period
stated above) to, among other things. (1) provide additional time in which to cure the default by
transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your
default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor
permits a longer period, you have only the legal right to stop the sale of your property by paying the
entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for
payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
C/O ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600 phone

TS NO.: GM-223981-C              LOAN NO.: 0601564562

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. **6675**
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is
concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is
either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or
beneficiary under a Deed of Trust dated  **5/16/2006** , executed by **ROSALIND ALEXANDER-
KASPARIK, AN UNMARRIED WOMAN**, as Trustor, to secure certain obligations in favor of
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR UNITRUST
MORTGAGE, INC., A CALIFORNIA CORPORATION**, as beneficiary, recorded 6/2/2006, as
Instrument No. **2006-0393460**, in Book , Page , **Deed of Trust was re-recorded on 10/4/06 with
instrument number 2007-0708043** of Official Records in the Office of the Recorder of **San Diego**
County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$314,240.00** ; that the beneficial interest under
such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a
breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in
that payment has not been made of:

  Installment of Principal and Interest plus impounds and/or advances which became due on 7/1/2010 plus late charges, and
all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that
become payable.

    That by reason thereof, the present beneficiary under such deed of trust, has executed and
delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and
has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing
obligations secured thereby, and has declared and does hereby declare all sums secured thereby
immediately due and payable and has elected and does hereby elect to cause the trust property to
be sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with
California Civil Code Section 2923.5 by making contact with the borrower or tried with due diligence to contact
the borrower as required by California Civil Code Section 2923.5.

Dated:  **10/12/2010**

                    ETS Services, LLC as Agent for Beneficiary


            BY:_____

                    Maricela Miseroy
                    TRUSTEE SALE OFFICER

## Exhibit D to Declaration



2012-0306072

RECORDING REQUESTED BY
**Executive Trustee Services, LLC dba ETS Services,**

AND WHEN RECORDED MAIL TO:
**Executive Trustee Services, LLC dba ETS Services,**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**

MAY 24, 2012      2:41 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:        21.00
                                    DA:        1

10896          PAGES:        2

T.S. No. **GM-223981-C**
Loan No. **0601564562**
Insurer No. **358529336**
100616384

SPACE ABOVE THIS LINE FOR RECORDER'S Use

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 05/16/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **ROSALIND ALEXANDER-KASPARIK, AN UNMARRIED WOMAN**
Recorded **06/02/2006** as Instrument No. **2006-0393460** in Book , page   of Official Records in the office of the Recorder of **San Diego** County, California
Date of Sale: **06/19/2012** at **10:30 A.M.**
Place of Sale:    **At the entrance to the East County Regional Center by statue, 250 E. Main Street, El Cajon, CA 92020**

Property Address is purported to be:    **1021 SCOTT STREET #149**
                                                                    **SAN DIEGO, CA 92106**

APN #: **531-692-05-46**

The total amount secured by said instrument as of the time of initial publication of this notice is **$289,580.83**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

10897

T.S. No. **GM-223981-C**
Loan No. **0601564562**
Insurer No. **358529336**

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 or visit this Internet Web site address www.lpsasap.com for information regarding the sale of this property, using the file number assigned to this case file number GM-223981-C. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: **05/21/2012**

**Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**Sale Line: 714-730-2727**

**Ileanna Petersen, TRUSTEE SALE OFFICER**

**<u>Exhibit E to Declaration</u>**



# 2012-0394791

RECORDING REQUESTED BY:

~~Executive Trustee Services, LLC dba ETS Services, LLC~~

AND WHEN RECORDED MAIL TO:    F6

GMAC MORTGAGE, LLC
FKA GMAC MORTGAGE CORPORATION    3P
1100 VIRGINIA DRIVE
FORT WASHINGTON, PA 19034

Forward Tax Statements to
the address given above

JUL 09, 2012    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:         21.00
OC:                    OC

1800    **PAGES:    3**

---

SPACE ABOVE LINE FOR RECORDER'S USE

TS # GM-223981-C
LOAN # 0601564562         INVESTOR #: 358529336
TITLE ORDER # 100616384-CA-MSI

## TRUSTEE'S DEED UPON SALE

APN 531-692-05-46         TRANSFER TAX: $00.00
"THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3"
The Grantee Herein **Was** The Foreclosing Beneficiary.
The Amount Of The Unpaid Debt was $354,299.82
The Amount Paid By The Grantee was $226,808.00
Said Property Is In The City Of **SAN DIEGO**, County of **San Diego**

**Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

## GMAC MORTGAGE, LLC

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **San Diego**, State of California, described as follows:

**See exhibit "A" attached hereto and made a part hereof**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **ROSALIND ALEXANDER-KASPARIK, AN UNMARRIED WOMAN** as Trustor, dated **05/16/2006** of the Official Records in the office of the Recorder of **San Diego**, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on **06/02/2006** , instrument number **2006-0393460** (or Book , Page ) of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

**[Page 1 of 2]**

1801

# TRUSTEE'S DEED UPON SALE

Trustee's Deed
T.S.# **GM-223981-C**
Loan # **0601564562**
Title Order # **100616384-CA-MSI**

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **07/03/2012**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$226,808.00**, in lawful money of the United States, in pro per, receipt there of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: 7|5|12

**Executive Trustee Services, LLC dba ETS Services, LLC**

"This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"

By: _____
Maria Reyes, Authorized Officer

State of California    } S.S.
County of Los Angeles }

On _7/5/12_ before me, Shanon De'Arman-Davis, Notary Public, personally appeared **Maria Reyes** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Shanon De'Arman-Davis

SHANON DE'ARMAN-DAVIS
Commission # 1964043
Notary Public - California
Los Angeles County
My Comm. Expires Dec 17, 2015

[Page 2 of 2]

1802

## EXHIBIT A

REF. NO. GM-223981-C

A CONDOMINIUM COMPOSED OF:

PARCEL 1:

AN UNDIVIDED ONE-ONE HUNDRED TWENTY THIRD (1/123) INTEREST AS TENANT-IN-COMMON IN AND TO THE FOLLOWING DESCRIBED REAL PROPERTY:

LOT 1 OF YACHT CLUB CONDOMINIUMS, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 15199 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 12, 2005.

EXCEPTING THEREFROM THE FOLLOWING:

(A) ALL LIVING UNITS SHOWN UPON YACHT CLUB CONDOMINIUM PLAN RECORDED DECEMBER 23, 2005 AS FILE NO. 2005-1101209, IN THE OFFICIAL RECORDS, SAN DIEGO COUNTY, CALIFORNIA ("CONDOMINIUM PLAN")

(B) THE EXCLUSIVE RIGHT TO POSSESSION OF THOSE DESIGNATED AREAS AS EXCLUSIVE USE COMMON AREA BALCONY, GARAGE AND PARKING SPACE AS SHOWN UPON THE CONDOMINIUM PLAN REFERRED TO HEREINABOVE AND WHICH ARE CONVEYED BY GRANTOR TO THE PURCHASER OF ANY LIVING UNIT.

PARCEL 2:

LIVING UNIT LU-149 AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO HEREINABOVE.

PARCEL 3:

THE EXCLUSIVE RIGHT TO THE USE, POSSESSION AND OCCUPANCY OF THOSE PORTIONS OF THE REAL PROPERTY REFERRED TO IN PARCEL 1 ABOVE, DESIGNATED AS EXCLUSIVE USE COMMON AREA BALCONY, IF APPLICABLE, AS APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED AND BEARING THE SAME NUMBER DESIGNATION AS THE LIVING UNIT REFERRED TO IN PARCEL 2 ABOVE.

PARCEL 4:

THE EXCLUSIVE RIGHT TO THE USE, POSSESSION AND OCCUPANCY OF THOSE PORTIONS OF THE REAL PROPERTY REFERRED TO IN PARCEL 1 ABOVE, DESIGNATED AS EXCLUSIVE USE COMMON AREA PARKING SPACE N/A, AS APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED.

PARCEL 5:

THE EXCLUSIVE RIGHT TO THE USE, POSSESSION AND OCCUPANCY OF THOSE PORTIONS OF THE REAL PROPERTY REFERRED TO IN PARCEL 1 ABOVE DESIGNATED AS EXCLUSIVE USE COMMON AREA GARAGE G-508, AS APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED.

**<u>Exhibit F to Declaration</u>**

RECORDING REQUESTED BY:
**EXECUTIVE TRUSTEE SERVICES INC.**

AND WHEN RECORDED MAIL DEED AND TAX
STATEMENTS TO:
**Federal Home Loan Mortgage Corporation
8200 Jones Branch Drive
McLean, VA 22102-3110**

T.S. NO.: **GM-223981-C**
LOAN NO. **0601564562**
INVESTOR #: **358529336**

―――――――――――――――――――――――――――――――――――――――――――

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# CORPORATION GRANT DEED

**THE UNDERSIGNED GRANTOR(S) DECLARE(S):**

| | |
|---|---|
| xx | Document Transfer Tax is $00.00 |
| ― | Computed on full value of property conveyed |
| ― | Computed on full value less value of liens or encumbrances remaining at time of sale |
| xx | No documentary transfer tax is due because: The value of the property in this conveyance |
| | exclusive of liens and encumbrances is $100 or less and there is no additional consideration received by the grantor, R & t 11911 |
| ― | City of **SAN DIEGO** |
| ― | APN **531-692-05-46** |

**FOR VALUABLE CONSIDERATION**, receipt of which is hereby acknowledged **GMAC MORTGAGE, LLC** hereby GRANT(s)
to: **Federal Home Loan Mortgage Corporation**

The following described real property in the city of SAN DIEGO County of **San Diego** State of **California**.
**See exhibit "A" attached hereto and made a part hereof**

Dated: July 14 2012    GMAC MORTGAGE, LLC

_Pratiksha Jain_    Authorized Officer

_Vadim Preysman_    Authorized Officer

**Loan # 0601564562**

Sealed and Delivered
in the presence of us;

State of        PENNSYLVANIA :
                        ss.
County of      MONTGOMERY            :

On this __*14*__ day of July, 2012, before me, the subscriber, personally appeared PRATIKSHA JAIN and ____**Vadim Preysman**____ , who acknowledged him/herself to be the AUTHORIZED OFFICERS of GMAC MORTGAGE LLC, successor by merger to GMAC Mortgage Corporation and that he/she, as such AUTHORIZED OFFICERS, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Stamp/Seal:

*Christine Morales*
Notary Public
Christine Morales

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015

# EXHIBIT A

**REF. NO. GM-223981-C**

A CONDOMINIUM COMPOSED OF:

PARCEL 1:

AN UNDIVIDED ONE-ONE HUNDRED TWENTY THIRD (1/123) INTEREST AS TENANT-IN-COMMON IN AND TO THE FOLLOWING DESCRIBED REAL PROPERTY:

LOT 1 OF YACHT CLUB CONDOMINIUMS, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 15199 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, DECEMBER 12, 2005.

EXCEPTING THEREFROM THE FOLLOWING:

(A) ALL LIVING UNITS SHOWN UPON YACHT CLUB CONDOMINIUM PLAN RECORDED DECEMBER 23, 2005 AS FILE NO. 2005-1101209, IN THE OFFICIAL RECORDS, SAN DIEGO COUNTY, CALIFORNIA ("CONDOMINIUM PLAN")

(B) THE EXCLUSIVE RIGHT TO POSSESSION OF THOSE DESIGNATED AREAS AS EXCLUSIVE USE COMMON AREA BALCONY, GARAGE AND PARKING SPACE AS SHOWN UPON THE CONDOMINIUM PLAN REFERRED TO HEREINABOVE AND WHICH ARE CONVEYED BY GRANTOR TO THE PURCHASER OF ANY LIVING UNIT.

PARCEL 2:

LIVING UNIT LU-149 AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO HEREINABOVE.

PARCEL 3:

THE EXCLUSIVE RIGHT TO THE USE, POSSESSION AND OCCUPANCY OF THOSE PORTIONS OF THE REAL PROPERTY REFERRED TO IN PARCEL 1 ABOVE, DESIGNATED AS EXCLUSIVE USE COMMON AREA BALCONY, IF APPLICABLE, AS APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED AND BEARING THE SAME NUMBER DESIGNATION AS THE LIVING UNIT REFERRED TO IN PARCEL 2 ABOVE.

PARCEL 4:

THE EXCLUSIVE RIGHT TO THE USE, POSSESSION AND OCCUPANCY OF THOSE PORTIONS OF THE REAL PROPERTY REFERRED TO IN PARCEL 1 ABOVE, DESIGNATED AS EXCLUSIVE USE COMMON AREA PARKING SPACE N/A, AS APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED.

PARCEL 5:

THE EXCLUSIVE RIGHT TO THE USE, POSSESSION AND OCCUPANCY OF THOSE PORTIONS OF THE REAL PROPERTY REFERRED TO IN PARCEL 1 ABOVE DESIGNATED AS EXCLUSIVE USE COMMON AREA GARAGE G-508, AS APPURTENANT TO PARCELS 1 AND 2 ABOVE DESCRIBED.

BOE-502-A (FRONT) REV. 8 (10-05)                    GM-223981-C

## PRELIMINARY CHANGE OF OWNERSHIP REPORT

[To be completed by transferee (buyer) prior to transfer of subject property in accordance with section 480.3 of the Revenue and Taxation Code.] A Preliminary Change of Ownership Report must be filed with each conveyance in the County Recorder's office for the county where the property is located; this particular form may be used in all 58 counties of California.

**THIS REPORT IS NOT A PUBLIC DOCUMENT**

| | FOR RECORDER'S USE ONLY |
|---|---|

SELLER/TRANSFEROR: **GMAC MORTGAGE, LLC**
BUYER/TRANSFEREE: **FEDERAL HOME LOAN MORTGAGE CORPORATION**
ASSESSOR'S PARCEL NUMBER(S): 531-692-05-46
PROPERTY ADDRESS OR LOCATION: 1021 SCOTT STREET #149, SAN DIEGO, CA 92106

MAIL TAX INFORMATION TO:    Name: **FEDERAL HOME LOAN MORTGAGE CORPORATION**
Address: **8200 Jones Branch Drive, McLean, VA 22102-3110.**
Phone Number: (8 a.m-5 p.m.) **703-903-2000**

**NOTICE:** A lien for property taxes applies to your property on January 1 of each year for the taxes owing in the following fiscal year, July 1 through June 30. One-half of these taxes is due November 1, and one-half is due February 1. The first installment becomes delinquent on December 10, and the second installment becomes delinquent on April 10. One tax bill is mailed before November 1 to the owner of record. **You may be responsible for the current or upcoming property taxes even if you do not receive the tax bill.**
The property which you acquired may be subject to a supplemental assessment in an amount to be determined by the San Diego Assessor. For further information on your supplemental roll obligation, please call the San Diego Assessor at _____.

## PART I: TRANSFER INFORMATION (please answer all questions)

| YES | NO | |
|---|---|---|
| ☐ | ☒ | A. Is this transfer solely between husband and wife (addition of a spouse, death of a spouse, divorce settlement, etc)? |
| ☐ | ☒ | B. Is this transaction only a correction of the name(s) of the person(s) holding title to the property (for example, a name change upon marriage)? Please explain _____ |
| ☐ | ☒ | C. Is this document recorded to create, terminate, or reconvey a lender s interest in the property? |
| ☐ | ☒ | D. Is this transaction recorded only as a requirement for financing purposes or to create, terminate, or reconvey a security interest (e.g., cosigner)? Please explain _____ |
| ☐ | ☒ | E. Is this document recorded to substitute a trustee of a trust, mortgage, or other similar document? |
| ☐ | ☒ | F. Did this transfer result in the creation of a joint tenancy in which the seller (transferor) remains as one of the joint tenants? |
| ☐ | ☒ | G. Does this transfer return property to the person who created the joint tenancy (original transferor)? |
| | | H. Is this a transfer of property: |
| ☐ | ☒ | 1. to a revocable trust that may be revoked by the transferor and is for the benefit of the ☐ transferor ☐ transferor s spouse? |
| ☐ | ☒ | 2. to a trusts that may be revoked by the Creator/Grantor who is also a joint tenant, and which names the other joint tenant(s) as beneficiaries when the Creator/Grantor dies? |
| ☐ | ☒ | 3. to an irrevocable trust for the benefit of the Creator/Grantor and/or Grantor s spouse? |
| ☐ | ☒ | 4. to an irrevocable trust from which the property reverts to the Creator/Grantor within 12 years? |
| ☐ | ☒ | I. If this property is subject to a lease, is the remaining lease term 35 years or more including written options? |
| ☐ | ☒ | *J. Is this a transfer between ☐ parent(s) and child(ren)? ☐ or from grandparent(s) to grandchild(ren)? |
| ☐ | ☒ | *K. Is this transaction to replace a principal residence by a person 55 years of age or older? Within the same county? ☐ Yes ☐ No |
| ☐ | ☒ | *L. Is this transaction to replace a principal residence by a person who is severely disabled as defined by Revenue and Taxation Code section 69.5? Within the same county? ☐ Yes ☐ No |
| ☐ | ☒ | M. Is this transfer solely between domestic partners currently registered with the California Secretary of State? |

*If you checked yes to J, K or L, you may qualify for a property tax reassessment exclusion, which may result in lower taxes on your property. **If you do not file a claim, your property will be reassessed.**
Please explain any other information that will help the Assessor to understand the nature of the transfer.
If the conveying document constitutes and exclusion from a change in ownership as defined in section 62 of the Revenue and Taxation Code for any reason other than those listed above, set forth the specific exclusions claimed: _____.
**Please answer all questions in each section. If a question does not apply, indicate with N/A. Sign and date at bottom of second page.**

## PART II: OTHER TRANSFER INFORMATION

A. Date of transfer if other than recording date: __07/03/2012__
B. Type of transfer (please check appropriate box):
   ☐ Purchase    ☒ Foreclosure    ☐ Gift    ☐ Trade or Exchange    ☐ Merger, Stock, or Partnership Acquisition
   ☐ Contract of Sale    Date of Contract _____
   ☐ Inheritance    Date of Death _____    ☐ Other (please explain): _____
   ☐ Creation of Lease    ☐ Assignment of a Lease    ☐ Termination of a Lease    ☐ Sale/Leaseback
   ☐ Date lease began _____
   ☐ Original term in years (including written options) _____
   ☐ Remaining term in years (including written options) _____
   Monthly Payment _____    Remaining Term _____
C. Was only a partial interest in the property transferred? ☐ Yes    ☒ No
   If yes, indicate the percentage transferred _____%.

BOE-502-A (BACK) REV. 8 (10-05)

*Please answer, to the best of your knowledge, all applicable questions, then sign and date. If a question does not apply, indicate with  N/A.*

## PART III: PURCHASE PRICE AND TERMS OF SALE

A. CASH DOWN PAYMENT OR value of trade or exchange (excluding closing costs)                    Amount $ _____

B. FIRST DEED OF TRUST @ _____ % interest for _____ years. Pymts./Mo. = $ _____ (Prin. & Int. only)   Amount $ _____
- ☐ FHA(_____ Discount Points)   ☐ Fixed Rate   ☐ New loan
- ☐ Conventional   ☐ Variable Rate   ☐ Assumed existing loan balance
- ☐ VA(_____ Discount Points)   ☐ All inclusive D.T.($_____ Wrapped)   ☐ Bank or savings & loan
- ☐ Cal-Vet   ☐ Loan carried by seller   ☐ Finance company
- Balloon payment   ☐ Yes  ☐ No   Due Date _____   Amount $ _____

C. SECOND DEED OF TRUST @ _____ % interest for _____ years. Pymts./Mo. = $ _____ (Prin. & Int. only)   Amount $ _____
- ☐ Bank or savings & loan   ☐ Fixed Rate   ☐ New loan
- ☐ Loan carried by seller   ☐ Variable Rate   ☐ Assumed existing loan balance
- Balloon payment   ☐ Yes  ☐ No   Due Date _____   Amount $ _____

D. OTHER FINANCING: Is other financing involved not covered in (b) or (c) above?   ☐ Yes  ☐ No   Amount $ _____
- Type _____ @ _____ % interest for _____ years. Pymts./Mo. = $ _____ (Prin. & Int. only)
- ☐ Bank or savings & loan   ☐ Fixed Rate   ☐ New loan
- ☐ Loan carried by seller   ☐ Variable Rate   ☐ Assumed existing loan balance
- Balloon payment   ☐ Yes  ☐ No   Due Date _____   Amount $ _____

E. WAS AN IMPROVEMENT BOND ASSUMED BY THE BUYER   ☐ Yes   ☐ No   Outstanding Balance:   Amount $ _____

F. TOTAL PURCHASE PRICE (or acquisition price, if traded or exchanged, include real estate commission if paid)

   TOTAL ITEMS A THROUGH E   $

G. PROPERTY PURCHASED   ☐ Through a broker   ☐ Direct from seller   ☐ From a family member   ☐ Other (please explain):_____

If purchased through a broker, provide broker s name and phone number: _____

Please explain special terms, seller concessions, or financing and any other information that would help the Assessor understand the purchase price and terms of sale: _____

## PART IV: PROPERTY INFORMATION

A. TYPE OF PROPERTY TRANSFERRED:
- ☒ Single-family residence   ☐ Agricultural   ☐ Timeshare
- ☐ Multiple-family residence (no. of units: _____)   ☐ Co-op/Own-your-own   ☐ Manufactured home
- ☐ Commercial/Industrial   ☐ Condominium   ☐ Unimproved lot
- ☐ Other (Description: i.e., timber, mineral, water rights, etc. _____)

B. IS THIS PROPERTY INTENDED AS YOUR PRINCIPAL RESIDENCE?  ☐ Yes  ☒ No
   If yes, enter date of occupancy ___ / ___ / ___, 20__ or intended occupancy ___ / ___ / ___, 20__
   (month)  (day)  (year)                                       (month)  (day)  (year)

C. IS PERSONAL PROPERTY INCLUDED IN PURCHASE PRICE (i.e., furniture, farm equipment, machinery, etc.)
   (other than a manufactured home subject to local property tax? ☐ Yes  ☒ No
   If yes, enter the value of the personal property included in the purchase price $ _____ (Attach itemized list of personal property.)

D. IS A MANUFACTURED HOME INCLUDED IN PURCHASE PRICE? ☐ Yes  ☒No
   If yes, how much of the purchase price is allocated to the manufactured home? $ _____
   Is the manufactured home subject to local property tax? ☐ Yes  ☐ No   What is the decal number? _____

E. DOES THE PROPERTY PRODUCE INCOME? ☐ Yes  ☒ No   If yes, is the income from:
- ☐ Lease/Rent   ☐ Contract   ☐ Mineral rights   ☐ Other (please explain): _____

F. WHAT WAS THE CONDITION OF THE PROPERTY AT THE TIME OF SALE?
- ☐ Good   ☐ Average   ☐ Fair   ☐ Poor
   Please explain the physical condition of the property and provide any other information (such as restrictions, etc.) that would assist the Assessor in determining the value of the property:

## CERTIFICATION

OWNERSHIP TYPE   (☐)
- Proprietorship   ☐
- Partnership   ☐
- Corporation   ☐
- Other ___ LLC ☒

*I certify that the foregoing is true, correct and complete to the best of my knowledge and belief. This declaration is binding on each and every co-owner and/or partner.*

NAME OF NEW OWNER/CORPORATE OFFICER   Pratiksha Jain   TITLE Authorized Officer

SIGNATURE OF NEW OWNER/CORPORATE OFFICER _____   DATE 7/14/12

NAME OF ENTITY (typed or printed)   GMAC MORTGAGE, LLC   FEDERAL EMPLOYER ID NUMBER 23-1694840

ADDRESS (typed or printed) 1100 VIRGINIA DRIVE FORT WASHINGTON  PA   19034   E-MAIL ADDRESS (optional)   DATE

(NOTE: The Assessor may contact you for additional information.)
If a document evidencing a change of ownership is presented to the recorder for recordation without the concurrent filing of a preliminary change of ownership report, the recorder may charge an additional recording fee of twenty dollars ($20).

**<u>Exhibit G to Declaration</u>**

1 | ROBERT J. GANDY (State Bar No. 225405)
rjg@severson.com
2 | WILLIAM J. IDLEMAN (State Bar No. 258450)
wji@severson.com
3 | SEVERSON & WERSON                              OCT 10 '12 PM 2:16
A Professional Corporation
4 | The Atrium
19100 Von Karman Avenue, Suite 700
5 | Irvine, California 92612
Telephone: (949) 442-7110
6 | Facsimile: (949) 442-7118

7 | JOHN B. SULLIVAN (State Bar No. 96742)
SEVERSON & WERSON
8 | A Professional Corporation
One Embarcadero Center, Suite 2600
9 | San Francisco, California 94111
Telephone: (415) 398-3344
10 | Facsimile: (415) 956-0439

11 | Attorneys for Defendants
GMAC MORTGAGE, LLC (erroneously sued as Ally
12 | Bank, fka GMAC Mortgage); and FEDERAL HOME
LOAN MORTGAGE CORPORATION

13

14 |                    SUPERIOR COURT OF CALIFORNIA    **VIA FAX**

15 |              COUNTY OF SAN DIEGO — CENTRAL DIVISION

16 | ROSALIND ALEXANDER-KASPARIK, an        Case No. 37-2012-00101531-CU-BC-CTL
individual,                            Assigned for All Purposes to:
17 |                                        Hon. Ronald L. Styn
                Plaintiff,              Dept. C-62
18 |
       vs.                              **NOTICE OF BANKRUPTCY AND
19 |                                      SUGGESTION OF AUTOMATIC STAY**
ALLY BANK, fka GMAC MORTGAGE;
20 | FEDERAL HOME LOAN MORTGAGE            Action Filed:    July 31, 2012
CORPORATION; ALL PERSONS            Trial Date:      Not Set
21 | UNKNOWN CLAIMING ANY LEGAL OR
EQUITABLE RIGHT, TITLE, ESTATE,
22 | LIEN OR INTEREST IN THE PROPERTY
DESCRIBED IN THE COMPLAINT
23 | ADVERSE TO PLAINTIFF'S TITLE OR
ANY CLOUD ON PLAINTIFF'S TITLE
24 | HEREIN; and DOES 1 through 99, inclusive,

25 |                Defendants.

26

27 |        Defendant GMAC Mortgage, LLC (erroneously sued as Ally Bank fka GMAC Mortgage),

28 | by and through their undersigned counsel, in accordance and consistent with section 362(a) of the

19000.1371/2417302.1

1  United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), respectfully

2  submit this Notice of Bankruptcy and Suggestion of Automatic Stay, and state as follows:

3      1.    On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and certain of its

4  direct and indirect subsidiaries (collectively, the "Debtors"), including GMAC Mortgage, LLC,

5  filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States

6  Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY

7  10004-1408 (the "Bankruptcy Court").

8      2.    The Debtors' Chapter 11 cases being jointly administered, indexed at case number

9  12-12020 (MG), and are captioned as follows:

10  **UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

11

12  In re:

13                                              Chapter 11

   RESIDENTIAL CAPITAL, LLC, *et al.*,
14                                              Case No. 12-12020 (MG)

            Debtors.
15                                              Jointly Administered

16

17      3.    As a result of the Bankruptcy Filing, on the Petition Date, the protections of the

18  automatic stay codified in section 362(a) of the Bankruptcy Code arose with regard to the Debtors.

19  Section 362(a), among other things, operates as an automatic stay of: (i) "the commencement or

20  continuation, including the issuance or employment of process, of a judicial, administrative, or

21  other action or proceeding" against the Chapter 11 Debtors (11 U.S.C. § 362(a)(1)); (ii) acts to

22  "obtain possession of property" of the Debtors' Chapter 11 estates (11 U.S.C. § 362(a)(3)); and

23  (iii) acts to "collect, assess, or recover a claim" against the Debtors arising prior to the Petition

24  Date (11 U.S.C. § 362(a)(6)).

25      4.    On July 13, 2012, the Bankruptcy Court entered a final supplemental order

26  granting, among other things, the Debtors' motion for limited relief from the automatic stay to

27  permit non-Debtor parties in foreclosure and eviction proceedings, borrower bankruptcy cases and

28

1   title disputes to continue to assert and prosecute certain defenses, claims and counter-claims (the

2   "Final Supplemental Order").  Paragraphs 14, 15, 16 and 17 of the Final Supplemental Order

3   identify the categories of defenses, claims and counter-claims for which the automatic stay has

4   been modified (the "Permitted Claims").   A copy of the Final Supplemental Order is annexed

5   hereto as Exhibit A.

6          5.       To the extent that the defenses, claims and counter-claims do not constitute

7   Permitted Claims, they remain subject to the automatic stay and the continued prosecution of these

8   claims is prohibited.  Specifically, to the extent that monetary damages are sought in this action

9   against Debtors for the claims of intentional misrepresentation (First Cause of Action), negligent

10  misrepresentation (Second Cause of Action), breach of fiduciary duty (Third Cause of Action),

11  unjust enrichment (Fourth Cause of Action), breach of contract (Fifth Cause of Action), violation

12  of Civil Code section 2923.6 (Seventh Cause of Action), and violation of Business and

13  Professions Code section 17200 (Eighth Cause of Action), these claims do not constitute

14  Permitted Claims within the meaning of the Final Supplemental Order, so the claims remain

15  subject to the automatic stay and the continued prosecution of these claims is prohibited.  The

16  remaining claim for quiet title (Sixth Cause of Action) is a Permitted Claim and may proceed.

17         6.       Pursuant to paragraph 23 of the Final Supplemental Order, any dispute regarding

18  the extent, application and/or effect of the automatic stay under the Final Supplemental Order,

19  must be heard and determined in the United States Bankruptcy Court for the Southern District of

20  New York, jointly administered under Case No. 12-12020, in accordance with the Case

21  Management Order entered in the Debtors' case [Docket No. 141] and such other and further

22  orders as may be entered by the United States Bankruptcy Court for the Southern District of New

23  York.

24  ///

25  ///

26  ///

27  ///

28  ///

1          7.      This notice has been sent, with a cover letter, to plaintiff's counsel.

2

3   DATED:  October 10, 2012                SEVERSON & WERSON
                                            A Professional Corporation
4

5

6                                           By:    _William J. Idleman_____
                                                       William J. Idleman
7

8                                           Attorneys for Defendants GMAC MORTGAGE, LLC
                                            (erroneously sued as Ally Bank, fka GMAC Mortgage);
9                                           and FEDERAL HOME LOAN MORTGAGE
                                            CORPORATION
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------
)
In re:                                            )   Case No. 12-12020 (MG)
)
RESIDENTIAL CAPITAL, LLC, et al.,                 )   Chapter 11
)
                                      Debtors.    )   Jointly Administered
)
------------------------------------------------------------

**FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a),
362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING
THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS;
(II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF
CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING
LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION
PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO
PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY
SECURITIZATION TRUSTEE FEES AND EXPENSES**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
granted herein may refer to http://www.kccllc.net/rescap for additional information.



1212020120713000000000011

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim Supplemental Order on June 15, 2012

[Docket No. 391]; and the Court having entered a final order on June 15, 2012 granting the GA

Servicing Motion on a final basis [Docket No. 401]; and the Court having entered a final order

on June 15, 2012 granting the Non-GA Servicing Motion on a final basis [Docket No. 402]; and

it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion

having been given and it appearing that no other or further notice need be provided; and the

National Association of Consumer Bankruptcy Attorneys, on its own behalf and in a

representative capacity, two individuals who are debtors under Chapter 13, and Edward Boltz,

counsel for those individuals, having filed jointly the Limited Omnibus Objection To The

Servicing Orders And Debtors' May 31, 2012 Motion For A Supplemental Order [Docket No.

221] (the "NACBA Objection"); and the Committee having filed the Omnibus Response And

Reservation Of Rights Of The Official Committee Of Unsecured Creditors To Certain Of The

Debtors' First Day Motions [Docket No. 240]; and the Debtors having filed the Omnibus Reply

To Objections To Entry Of Final Orders For Specific "First Day" Motions And Related Relief

[Docket. No. 254]; and upon the record of the hearing; and it appearing that the relief requested

2

by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and after due deliberation thereon; and any objections to the Motion, including the

NACBA Objection, having been withdrawn, resolved, or overruled on the merits; and sufficient

cause appearing therefor, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED on a final basis, as set forth herein, and any

objections to the Motion are hereby overruled;

Loss Mitigation Programs

2.      The Debtors are authorized, but not directed in their sole and absolute

discretion and subject to available funding, to continue developing and implementing loss

mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to

the Petition Date, including, but not limited to, making incentive payments to borrowers in

connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction

proceedings, or in the form of borrower rebates for loan payoffs including honoring all

obligations related thereto that accrued in whole or in part prior to the Petition Date (collectively,

the "Loss Mitigation Programs"); provided, however, that the aggregate cash payments made by

the Debtors to individual borrowers under the Loss Mitigation Programs that are not reimbursed

to the Debtors shall not exceed $550,000 per month (the "Monthly Cap"), absent consent of the

Committee or further order of the Court; provided, further, however, that to the extent the

Debtors do not exceed the Monthly Cap in any month they shall be entitled to utilize the

difference between the actual amount and the Monthly Cap in any succeeding month. The

Debtors shall provide monthly reports to the Committee and the Office of the United States

Trustee for the Southern District of New York (the "U.S. Trustee"), which reports shall be in a

ny-1046923

form agreed to by the Debtors and the Committee and such additional information as shall be

reasonably requested by the Committee, in each case, concerning the Loss Mitigation Programs.

      3.      Cash payments made by the Debtors to individual borrowers under the

Loss Mitigation Programs for which the Debtors are not reimbursed shall not exceed $4.2

million in the aggregate, absent consent of the Committee or further order of the Court. For the

avoidance of doubt, the limitation on the amount of cash payments provided for in this paragraph

3 is in addition to the limitation on the amount of cash payments provided for in paragraph 12

hereof.

<u>Settlement Procedures</u>

      4.      The Debtors are authorized, but not directed to compromise and settle

certain claims brought by the Debtors against any non-insider third parties in connection with

foreclosure, eviction, or borrower bankruptcy proceedings (each a "<u>Settling Party</u>") or by a

Settling Party against any of the Debtors (each, a "<u>Claim</u>") in accordance with the following two-

tiered procedures (the "<u>Settlement Procedures</u>"):

> <u>Tier I</u>: The Debtors, in their sole discretion, may enter into,
> execute and consummate written agreements of settlement with
> respect to Claims that will be binding on the Debtors and their
> estates without further action by this Court or notice to any party
> and grant such Settling Parties cash payments or allowed
> prepetition claims in amounts not to exceed $40,000 in full
> settlement of such Claim (each, a "<u>Tier I Settlement</u>").

> <u>Tier II</u>: The Debtors may enter into, execute and consummate
> written agreements of settlement with respect to Claims that will
> be binding on the Debtors and their estates without further action
> by this Court or notice to any party and grant such Settling Parties
> cash payments or allowed prepetition claims in amounts exceeding
> $40,000 but less than $100,000 in full settlement of such Claims
> (each, a "<u>Tier II Settlement</u>"); <u>provided</u>, that in each case:

>     (a) The Debtors must provide advance written notice (by
> formal or informal means, including by e-mail correspondence) of
> the terms of any Tier II Settlement to (x) the U.S. Trustee, 33

4

Whitehall Street, 21st Floor, New York, New York 10004, Attn:
Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin
Naftalis & Frankel LLP, 1177 Avenue of the Americas New York,
NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal;
and (z) counsel to the administrative agent for the Debtors'
providers of debtor in possession financing, Skadden, Arps, Slate,
Meagher & Flom LLP, 4 Times Square, New York, New York
10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer
(collectively the "Notice Parties")

(b) Those Notice Parties wishing to object to any proposed
Tier II Settlement must serve a written objection (by formal or
informal means, including by e-mail correspondence) on the
Debtors, so that it is received by no later than 4:00 p.m. (prevailing
Eastern Time) on the day that is seven (7) calendar days from the
date the Notice Parties received written notice of such Tier II
Settlement (the "Settlement Objection Deadline"). Objections
should be addressed to the proposed attorneys for the Debtors,
Morrison & Foerster LLP, 1290 Avenue of the Americas, New
York, New York 10104, Attn: Larren M. Nashelsky
(LNashelsky@mofo.com) and Norman S. Rosenbaum
(NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice
Party, the parties will confer and attempt to resolve any
differences. Failing that, the Debtors may petition the Court for
approval of the Tier II Settlement in accordance with any case
management orders entered in the Chapter 11 cases. An objection
by a Notice Party with respect to a given Tier II Settlement shall
not delay the finality or effectiveness of any other settlement to
which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a
Tier II Settlement from a Notice Party by the Settlement Objection
Deadline, then such Tier II Settlement shall be deemed approved
and the Debtors and Settling Parties may carry out the terms of
such Tier II Settlement without further notice or Court approval.

5.      The Debtors shall be required to seek approval from the Court in order to

enter into and consummate any proposed settlement of a Claim with a settlement amount in

excess of $100,000.

6.      The Debtors are authorized in their sole discretion, but not directed, to

settle claims where some or all of the consideration is being provided by a third party and/or

5

where the Debtors are releasing claims against creditors or third parties provided the Debtors

otherwise comply with the Settlement Procedures.

       7.      The Settlement Procedures are without prejudice to the right of the

Debtors to seek an order of this Court approving additional or different procedures with respect

to specific claims or categories of claims. For claims relating to matters specified in paragraphs

14(a) and 15(a) of this Order that were resolved pursuant to a settlement prior to the Petition

Date, but where such settlement has not been consummated, the Debtors are authorized, but not

directed to, consummate said settlements in accordance with the Settlement Procedures set forth

in this Order.

       8.      Notwithstanding anything to the contrary contained herein, this Order

shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any

prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses,

or resolve any controversy authorized by any other order of the Court.

       9.      Nothing in this Order or the Motion shall constitute a determination or

admission of liability or of the validity or priority of any claim against the Debtors, and the

Debtors reserve their rights to dispute the validity or priority of any claim asserted.

       10.     The authority granted in this Order shall not replace or obviate the need to

comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements

contemplated in the Motion. All settlements made pursuant to the Settlement Procedures shall,

to the extent applicable, be made in accordance with the Debtors' settlement procedures in effect

as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time;

provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with

notice of any material changes to the Internal Settlement Protocol.

11.    The Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning settlements of any Claims pursuant to the Settlement Procedures.

12.    Cash payments made by the Debtors under the Settlement Procedures shall not exceed $4 million in the aggregate, absent consent of the Committee or further order of the Court.

13.    Any period prescribed or allowed by the Settlement Procedures shall be computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

14.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:

    (a)    except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or

7

eviction has not been awarded or, with respect to completed foreclosure sales in Non-

Judicial States, where any applicable challenge period has not yet expired, and to prosecute

appeals with respect to any such direct claims or counter-claims;

(b)     absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Interested Party direct claims

and counter-claims: (i) for monetary relief of any kind and of any nature against the

Debtors, except where a monetary claim must be plead in order for an Interested Party to a

assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a

"Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or

preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the

form of a class action or collective action;

(c)     absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Interested Party on behalf

of any other Interested Party or class of Interested Parties;

(d)     under no circumstances shall an Interested Party be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of this Order, including, without limitation, a Mandatory Monetary Claim;

(e)     the Debtors shall retain the right, upon appropriate motion and

notice to any affected Interested Party, to seek to impose any provision of section 362(a) of

the Bankruptcy Code modified by this Order and to the extent such relief is sought, the

8

Debtors will not object to the Interested Party's telephonic participation at any hearing on

the motion; and

(f)       nothing set forth herein shall preclude or limit any Interested Party

from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code

on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

15.       The automatic stay imposed by section 362(a) of the Bankruptcy Code

applicable against a borrower who currently has filed, or in the future files, for bankruptcy

protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby

modified pursuant to the following terms and conditions:

(a)       except as set forth herein, a Bankruptcy Borrower or a trustee duly

appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a

"Bankruptcy Trustee") shall be entitled to:  (i) assert and prosecute or continue to

prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's

bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the

Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's

bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or

adversary proceeding, as applicable, to determine the validity, priority or extent of a

Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to

prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce

(including to reduce to $0) or fix the amount of the Debtors' claim or lien against the

Bankruptcy Borrower's property; (v) prosecute appeals with respect to items (i) through

(iv) above; (vi) seek an accounting from the Debtors with respect to the Bankruptcy

9

Borrower's loan; and (vii) enter into, execute and consummate a written agreement of

settlement with the Debtors where the Debtors elect to enter into such settlement in their

sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (vi)

above;

        (b)      except as set forth herein, a Bankruptcy Borrower shall be entitled to

(i) engage in court-supervised or court-authorized loss-mitigation programs regarding the

Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a

modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and

consummate settlements of claims and liens in accordance with the ordinary course of the

Debtors' business and applicable law;

        (c)      absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's

direct claims, counter-claims, motions or adversary proceedings: (i) for monetary relief of

any kind and of any nature against the Debtors; (ii) for violation of any local, state or

federal statute or other law in connection with the origination of the Bankruptcy

Borrower's loan; (iii) for relief that if granted, would have no effect on the amount,

validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the

property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or

(iv) asserted in the form of a class action or collective action; provided however, a

Bankruptcy Trustee or Bankruptcy Borrower, solely in connection with their objections to

Debtors' proof of claim permitted by paragraph 15(a)(i) or proceedings permitted by

15(a)(iii), may assert claims of the type covered by subsection (i) or (ii) of this paragraph

15(c);

ny-1046923

(d)    absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to any party seeking to intervene to assert related claims

against the Debtors or any class action or collective action brought by any Bankruptcy

Borrower on behalf of any other class of borrowers;

(e)    with the sole exception of objections to Debtors' proofs of claim

permitted by paragraph 15(a)(i) above and proceedings described in 15(a)(iii) above and

solely for purposes of reducing any such claim and not for the purpose of obtaining an

affirmative recovery or award, under no circumstances shall a Bankruptcy Borrower or

Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment

or award related to any direct claim or counter-claim for which the automatic stay has been

lifted by the terms of this Order;

(f)    the Debtors shall retain the right, upon appropriate motion and

notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any

provision of section 362(a) of the Bankruptcy Code modified by this Order and to the

extent such relief is sought, the Debtors will not object to the Interested Party's telephonic

participation at any hearing on the motion; and

(g)    nothing set forth herein shall preclude or limit any Bankruptcy

Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section

362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties

in interest.

*Foreclosures By The Debtors On Senior Loans*

16.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to

pending and future foreclosure actions initiated by the Debtors in cases where they act as

ny-1046923

servicer for the Senior Loan and also own (or for which the applicable public land records

otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying

property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the

following terms and conditions:

        (a)      except as otherwise set forth herein, the Debtors shall be entitled to

assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-

Judicial State;

        (b)      the Debtors shall be entitled to take such actions as are necessary to

extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and

marketable title with respect to the property underlying a Senior Loan in connection with

any sale or other disposition of such property;

        (c)      the Debtors shall be entitled to seek all appropriate relief with

respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy

Borrower without further order of the Court; and

        (d)      the Debtors shall provide monthly reports to the Committee and the

U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee,

and such additional information as shall be reasonably requested by the Committee, in

each case, concerning Junior Foreclosure Actions.

D.     *Actions Involving Amount, Validity Or Priority Of Liens*

     17.     The stay imposed by section 362(a) of the Bankruptcy Code applicable to

actions involving the amount, validity, and/or priority of liens commenced by third parties

purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

12

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is

hereby modified pursuant to the following terms and conditions:

      (a)    except as otherwise set forth herein, a Third Party Claimant shall be

entitled to assert and prosecute direct claims and counter-claims relating exclusively to the

property that is the subject of the loan owned or serviced by a Debtor in connection with

any Title Dispute, and to prosecute appeals with respect to any such direct claims or

counter-claims;

      (b)    absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Third Party Claimant direct

claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or

(iii) asserted in the form of a class action or collective action;

      (c)    absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Third Party Claimant on

behalf of any other Third Party Claimant or class of Third Party Claimants;

      (d)    under no circumstances shall a Third Party Claimant be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of the Order;

      (e)    the Debtors shall be entitled to take such actions as are necessary to

clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

ny-1046923

clear and marketable title with respect to such property in connection with any sale,

foreclosure or other disposition of such property;

        (f)     the Debtors shall retain the right, upon appropriate motion and

notice to any affected Third Party Claimant, to seek to impose any provision of section

362(a) of the Bankruptcy Code modified by the Order; and

        (g)     nothing set forth herein shall preclude or limit any Third Party

Claimant from seeking relief from the automatic stay under section 362(a) of the

Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

<u>Payment of Securitization Trustee Fees and Expenses</u>

        18.     The Debtors shall continue to perform all of their respective servicing

duties and servicing related duties, including, but not limited to, their duties as master servicer,

under all the governing agreements (including, without limitation, pooling and servicing

agreements, servicing agreements, or any other agreements concerning or relating to the Debtors'

obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or

losses) (collectively, the "<u>Agreements</u>") relating to Debtor-sponsored securitization transactions

and non-Debtor sponsored securitization transactions to which any of The Bank of New York

Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company

Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any

affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of

their respective capacities as trustee (collectively, the "<u>Trustees</u>") and one or more of the Debtors

is a party, including but not limited to, making all principal, interest or other servicing advances

(including property protection advances) and reimbursing, indemnifying, defending and holding

harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

14

or expense (including fees and disbursements of counsel or agents) incurred by any of the

Trustees in the performance of their duties or their administration of the trusts or other agencies

under the Agreements to the extent required by the Agreements. For the avoidance of doubt, the

Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in

connection with reviewing and analyzing the request by the Debtors to approve the MBS

Settlement Agreement, and in connection with reviewing and analyzing amendments to the

Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the

MBS Settlement Agreement or the Platform Sale. Notwithstanding the foregoing, nothing in this

paragraph 18 shall require any Debtor (i) to repurchase any mortgage loans on the basis of

alleged breaches of representations, warranties or other requirements of the Agreements, or make

any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or

(ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the

Agreements under which such other Debtor entity or non-Debtor affiliate are required to

repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or

other requirements of the Agreements, or make any make-whole payments with respect to any

mortgage loans pursuant to the Agreements; and nothing in this paragraph 18 shall be deemed to

impose liability on any Debtor with respect to such alleged breaches or make-whole payment

requirements.

19.    The Trustees shall submit invoices to (a) counsel to the Debtors,

(b) counsel to the Committee, and (c) the U.S. Trustee, and all such invoices shall include (i) an

itemization of all professional fees by task with a detailed description of the work performed in

connection with such task, (ii) a description of related expenses, and (iii) a description of any

indemnity claims. Thereafter, within thirty (30) days of presentment of such invoices, if no

ny-1046923

written objections to the reasonableness of the fees and expenses charged in any such invoice (or

portion thereof) is made by the Debtors, the Committee, or the U.S. Trustee, the Debtors are

authorized and directed to pay all reasonable fees, costs and expenses and all indemnity claims

referred to in paragraph 18 (including without limitation, attorney, financial advisor, consultant

and expert fees and costs) incurred postpetition by any of the Trustees relating to the

performance of each of the Trustees' duties or the administration of the trusts or other agencies

under the Agreements (the "Trustee Expenses") that are not subject to an objection by the

Debtors, the Committee, or the U.S. Trustee without further order from the Court. Any objection

to the payment of the Trustee Expenses shall be made only on the basis of "reasonableness," and

shall specify in writing the amount of the contested fees and expenses and a detailed basis for

such objection. To the extent an objection only contests a portion of an invoice, the undisputed

portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any

portion thereof) is not otherwise resolved between the Debtors, the Committee, or the U.S.

Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a

determination as to the reasonableness of the disputed amounts. This Court shall resolve any

dispute as to the reasonableness of any fees and expenses.

     20.     To the extent either the Committee, or the RMBS Trustees determine that

the Trustee Expenses were improperly or mistakenly allocated to an RMBS trust or to the

Debtors' estates, the Committee and the RMBS Trustees reserve the right to seek to correct the

allocation of the Trustee Expenses as between the RMBS trusts or the Debtors' estates in

accordance with the applicable Agreement, and such adjustment shall be the Committee's and

RMBS Trustees' sole remedy arising from a misallocation. All Trustee Expenses for which

(a) no objection under paragraph 19 has been interposed, or (b) where such an objection has been

ny-1046923

interposed and the amount of Trustee Expenses determined by the Court to be reasonable, shall

be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding

the entry of an order authorizing the assumption and assignment or rejection of any Agreement.

However, the Debtors will not be responsible for any fees, costs and expenses incurred with

respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing

the rejection of such Agreement.

21.    If any or all of the provisions of this Order are hereafter reversed,

modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect

the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt

of written notice by the Trustees of the effective date of such reversal, stay, modification or

vacatur (the "Notice Date").  Notwithstanding any such reversal, stay, modification or vacatur,

the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to

or after the Notice Date by the Debtors shall be governed in all respects by the original

provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies,

privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

22.    Notwithstanding the Debtors' obligations set forth in paragraphs 18 and

19, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in

any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code

section 365.

Other Relief

23.    Any disputes regarding the extent, application and/or effect of the

automatic stay under this Order shall be heard and determined in the Debtors' jointly

administered bankruptcy cases pending in the United States Bankruptcy Court for the Southern

17

ny-1046923

District of New York, Case No. 12-12020 in accordance with the Case Management Order
entered in the Debtors' cases [Docket No. 141] and such other and further orders as may be
entered by the Court.

      24.    The Debtors are authorized and empowered to take all actions and execute
such documents as may be necessary or appropriate to carry out the relief granted herein.

      25.    Nothing herein shall be deemed to limit the rights of the Debtors to
operate their business in the ordinary course, and no subsequent order shall be required to
confirm such rights.

      26.    Notwithstanding the relief granted herein and any actions taken hereunder,
nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any
contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their
non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or
otherwise.

      27.    Notwithstanding anything to the contrary in this Order, any action to be
taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral
order or debtor in possession financing order entered in these chapter 11 proceedings.  All
amounts authorized to be paid pursuant to this Order are subject to the limitations and
restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement).  To
the extent that there is any inconsistency between the terms of this Order and the terms of any
order relating to postpetition financing or cash collateral, the terms of the orders relating to
postpetition financing or cash collateral shall govern.

      28.    Notwithstanding anything herein to the contrary, this Order shall not
modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

29.     Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

30.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

31.     Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

32.     This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.


Dated:     July 13, 2012
           New York, New York


                                        /s/Martin Glenn
                                        MARTIN GLENN
                                        United States Bankruptcy Judge

ny-1046923

## PROOF OF SERVICE

1

2      At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of Orange, State of California.  My business address is The Atrium,

3      19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

4      On October 10, 2012, I served true copies of the following document(s):

5      **NOTICE OF BANKRUPTCY AND SUGGESTION OF AUTOMATIC STAY**

6      on the interested parties in this action as follows:

7      Allan Cate, Esq.                                Attorney for Plaintiff
Law Office of Allan O. Cate                     Rosalind Alexander-Kasparik

8      7710 Balboa Avenue, Suite 301
San Diego, CA  92111                            Telephone:    (858) 224-5865

9                                                      Facsimile:    (858) 228-9885

10     **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the
persons at the addresses listed in the Service List and placed the envelope for collection and

11     mailing, following our ordinary business practices.  I am readily familiar with Severson &
Werson's practice for collecting and processing correspondence for mailing.  On the same day that

12     the correspondence is placed for collection and mailing, it is deposited in the ordinary course of
business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

13

14     I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

15     Executed on October 10, 2012, at Irvine, California.

16

17     *Victoria McCay*
_____

18     Victoria A. McCay

19

20

21

22

23

24

25

26

27

28

**<u>Exhibit H to Declaration</u>**

Claim #3695  Date Filed: 11/8/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor: **GMAC Mortgage, LLC**
Case Number: **12-12020 (MG)**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**LAW OFFICE OF ALLAN O CATE**

Name and address where notices should be sent:        NameID: 10768748
**LAW OFFICE OF ALLAN O CATE
7710 BALBOA AVE STE 301
SAN DIEGO, CA 92111**

Telephone number: **858/224-5865**    email: **allan@acatelaw.com**

Name and address where payment should be sent (if different from above):

Telephone number:        email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim
Number: _____
*(If known)*

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

---

**1. Amount of Claim as of Date Case Filed:** $ **1,500,000.00**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** **Lawsuit - Wrongful Foreclosure (37-2012)(101531)**
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**
**1 0 1 5**

**3a. Debtor may have scheduled account as:**
**Alexander-Kasparik**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑Real Estate ☐Motor Vehicle ☐Other
**Describe:**
Value of Property: $ **1,000,000.00**  Annual Interest Rate _____ % ☐Fixed ☐Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $ _____    Basis for perfection: _____
Amount of Secured Claim: $ **1,500,000.00**    Amount Unsecured: $ _____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$ _____    (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature: (See instruction #9)** Check the appropriate box.
☐ I am the creditor. ☑ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: **Allan Cate, Esq.**
Title: **Attorney**
Company: **Law Office Allan Cate**    (Signature)    **11/7/12** (Date)
Address and telephone number (if different from notice address above):

Telephone number: _____    Email: _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**RECEIVED**

NOV 0 8 2012

KURTZMAN CARSON CONSULTANT

**COURT USE ONLY**

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

001KC0002  51765-3 domestic  19/018539/111230

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

"Additional Parties Attachment form is attached."

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ROSALIND ALEXANDER-KASPARIK, an individual;



FILED
CIVIL BUSINESS OFFICE
CENTRAL DIVISION

12 JUL 31 PM 1:14

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego Superior Court

330 W. Broadway, San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):*
**37-2012-00101531-CU-BC-CTL**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Allan Cate, Esq., 7710 Balboa Ave., Suite 301, San Diego, CA 92111, (858) 224-5865

DATE: **JUL 3 1 2012**    Clerk, by **M. Scott**    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*    **Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
**SUMMONS**
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE:<br>ALEXANDER-KASPARIK v. ALLY BANK | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff      ☑ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

ALLY BANK, fka GMAC MORTGAGE; FEDERAL HOME LOAN MORTGAGE CORPORATION; ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE OR ANY CLOUD ON PLAINTIFF'S TITLE HEREIN; and DOES 1 through 99, inclusive;

Page 2 of 2

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

FILED
CIVIL BUSINESS OFFICE 17
CENTRAL DIVISION

12 JUL 31  PM 1:14

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

1  Allan Cate, Esq. (SBN: 248526)
2  **LAW OFFICE OF ALLAN O. CATE**
   7710 Balboa Avenue, Suite 301
3  San Diego, California 92111
   Tel: (858) 224-5865
4  Fax: (858) 228-9885

5

6  Attorney for plaintiff,
   Rosalind Alexander-Kasparik
7
                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8
                  **COUNTY OF SAN DIEGO, CENTRAL DISTRICT**
9

10 ROSALIND ALEXANDER-KASPARIK, an          Case No.: **37-2012-00101531-CU-BC-CTL**
   individual;
11                                            [Unlimited Civil Case]
12                Plaintiff,
                                              **COMPLAINT FOR DAMAGES AND**
13   v.                                       **INJUNCTIVE RELIEF:**

14 ALLY BANK, fka GMAC MORTGAGE;             **1. INTENTIONAL**
   FEDERAL HOME LOAN MORTGAGE                 **  MISREPRESENTATION;**
15 CORPORATION; ALL PERSONS                   **2. NEGLIGENT**
   UNKNOWN CLAIMING ANY LEGAL OR              **  MISREPRESENTATION;**
16 EQUITABLE RIGHT, TITLE, ESTATE, LIEN       **3. BREACH OF FIDUCIARY DUTY;**
   OR INTEREST IN THE PROPERTY                **4. UNJUST ENRICHMENT;**
17 DESCRIBED IN THE COMPLAINT                  **5. BREACH OF CONTRACT;**
   ADVERSE TO PLAINTIFF'S TITLE OR ANY        **6. QUIET TITLE;**
18 CLOUD ON PLAINTIFF'S TITLE HEREIN;         **7. VIOLATION OF CIVIL CODE**
   and DOES 1 through 99, inclusive;          **  SECTION 2923.6; AND**
19                                             **8. VIOLATION OF BUSINESS &**
20                Defendants.                  **PROFESSIONS CODE SECTION 17200**
                                              **ET SEQ.**
21
                                              **[JURY TRIAL DEMANDED]**
22

23

24

25

26      COMES NOW, plaintiff Roasalind Alexander-Kasparik ("Plaintiff" or "Alexander"),

27 demanding a jury trial, and based on personal knowledge and on information and belief allege as

28 follows:

                                      **- 1 -**

                                    **COMPLAINT**

## THE SUBJECT PROPERTY

1.      At all times relevant herein, Plaintiff owned a single family residence, an attached property, located at 1021 Scott Street #149, San Diego, CA 92106 ("Subject Property" or "Property").

## PARTIES AND VENUE

2.      Defendant ALLY BANK, fka GMAC BANK ("Ally"), is a federal bank headquartered in Midvale, Utah.   Ally is doing business in the State of California, County of San Diego.

3.      Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("FHLMC"), is a business entity of unknown charter headquartered in Washington, D.C. FHLMC is doing business in the State of California, County of San Diego.

4.      The defendants named herein as "all persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title or any cloud on Plaintiff's  title herein," named as Does 1 through 99, inclusive, are unknown to Plaintiff at the present time.  These defendants, and each of them, claim some right, title, estate, lien, or interest in the below-described Property adverse to Plaintiff's title, and such claim may constitute a cloud on Plaintiff's title thereto.  Such claim or claims are without any right whatever and these defendants have no right, title, estate, lien, or interest whatever in the below-described Property or any part thereof.  Plaintiff therefore sues said defendants by such fictitious names and will seek leave of court to amend this Complaint to set forth their true names and capacities thereof, when the same has been ascertained.

5.      Defendants, and each of them, were and are agents, servants, representatives, and/or employees of each of the other defendants herein, and were at all times acting within the course and scope of such agency, representation and employment and with the permission and consent of each of said defendants.

6.      Wherever appearing in this complaint, each and every reference to defendants and to any of them, is intended to be and shall be a reference to all defendants hereto, and to each of

- 2 -

**COMPLAINT**

1   them, named and unnamed, including all fictitiously named defendants, unless said reference is

2   otherwise specifically qualified ("Defendants").

3       7.      Plaintiff reserve the right to assert additional violations of law as documents and

4   information related to the transaction(s) are produced in the course of discovery in this action.

5       8.      Venue is proper in the County of San Diego under Code of Civil Procedure

6   Sections 392 and 395 because this action results from foreclosure on a mortgage on real property

7   located in San Diego County, this action arises out of an offer or provision of a loan intended

8   primarily for personal family or household use in San Diego County, and the alleged acts herein

9   occurred in San Diego County. Further, a substantial portion of the transactions and wrongs

10  complained of herein, including the defendants' participation in the wrongful acts occurred in

11  this County, and defendants have received substantial compensation in this County by doing

12  business here and engaging in numerous activities that had an effect in this County.

13                          **FACTUAL ALLEGATIONS**

14      9.      In or about 2005, Plaintiff purchased the Subject Property. As a part of that

15  transaction, a loan and deed of trust were executed in favor of lender, defendant FHLMC with

16  defendant Ally Bank as the servicing agent.

17      10.     In 2010, Plaintiff began to fall behind on her mortgage payments to defendants

18  due to a temporary increase in her personal expenses, which was beyond her control. While

19  plaintiff has the intermediate- and long-term capacity to generate income, her finances declined

20  dramatically during this period of time.

21      11.     Due to these temporary financial difficulties, plaintiff attempted to obtain a loan

22  modification from defendants. Also, at this same time, Plaintiff attempted to resolve a long-

23  running dispute with defendants relating to the fact that defendants were charging her on an

24  unauthorized and improper impound account, where she was already paying (had paid) the

25  associated tax and insurance payments. Plaintiff believes that this mis-accounting on the part of

26  defendants was in at least the amount of $10,000 to $20,000. However, despite her best efforts,

27  defendants improperly denied plaintiff a loan modification—mainly due to the fact that

28  defendants refused to credit plaintiff's account with overcharges on tax and insurance payments.

**COMPLAINT**

12.    Again, in 2011, plaintiff applied for loan modification with defendants. While she was entered into a modification program, defendant again fell behind on her mortgage payments.

13.    In or about mid-2012, plaintiff applied for loan modification with the organization Keep Your Home California ("KYHCA"). KYHCA is a California State-sponsored organization operated by CalHFA Mortgage Assistance Corporation that offers monetary assistance to help mortgage borrowers obtain modifications of their loans. Defendant was told by KYHCA representatives that because there was less than 21 days before her scheduled trustees sale date, that they could not qualify her for their Mortgage Reinstatement Program (which defendant FHLMC is a participant in). When plaintiff contacted defendant GMAC to obtain a short continuance of the trustee sale, they would only give her a continuance such that there were 20 days before the sale, such that she would not be able to participate in the KYHCA loan modification program. Nonetheless, plaintiff worked with KYHCA, and after numerous calls to various people within the organization, she was able to secure entry into the Mortgage Reinstatement Program. In late-June 2012, plaintiff received correspondence from KYHCA indicating that she had been deemed eligible for the program, that documentation was forthcoming from defendants/lenders, and that the foreclosure proceedings should be put on hold at this point. Plaintiff and KYHCA completed plaintiff's application process and submitted the same with a request for a completed Servicer Worksheet on June 28, 2012 to defendant GMAC for processing. At this point, plaintiff had already been approved for California State-sponsored Mortgage Reinstatement Program which would be providing a substantial portion of the funding for the loan modification.

14.    On July 2, 2012, plaintiff received correspondence from KYHCA indicating that defendant Ally Bank (loan servicer) would now not go through with the proposed loan modification under the KYHCA program because the request was made within seven days of the scheduled trustee's sale date. When plaintiff contacted defendant FHLMC (investor) directly and spoke with their representative Emily, plaintiff was told that a request was being submitted to defendant Ally Bank (loan servicer) to postpone the July 3, 2012 foreclosure sale (by

- 4 -

**COMPLAINT**

FHLMC) pending review of plaintiff's application for loan modification.  Plaintiff was advised

by Emily (at FHLMC) that the sale was being postponed, and that she should check the

electronic system to make sure that the sale was actually postponed.  Even though plaintiff was

advised on July 2, 2012 by the mortgage lender/investor, defendant FHLMC that the sale would

be postponed, the trustee sale still took place on July 3, 2012.

15.     Plaintiff has been damaged by defendants moving forward with the subject trustee

sale, where they had no right to do so under contractual agreements and the law, and where

defendants had agreed to postpone the subject trustee's sale pending review of plaintiff's loan

modification.  Plaintiff relied on defendants' representations to her detriment in that she could

have filed an emergency bankruptcy or employed other drastic measures in order to stop the

subject foreclosure sale, had plaintiff known that defendant had no true intention of stopping the

sale.

16.     Plaintiff brings the within lawsuit alleging claims for damages and for rescission

of the subject trustee sale based on substantive illegalities and the violation of plaintiff's

contractual rights.

## FIRST CAUSE OF ACTION

### Intentional Misrepresentation

### (Against All Defendants)

17.     Plaintiff incorporates by reference and re-alleges each and every allegation

contained above, as though fully set forth herein.

18.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of

them, in the manner pled above, represented that they would stop the subject trustee sale to

review Plaintiff's application for loan modification.  At the time of making said representations

defendants intended that Plaintiff rely on their representations.  Plaintiff, in reliance on such

representations, and without knowledge of their falsity acted to not take further steps to stop the

subject foreclosure sale herein, such as filing an emergency bankruptcy petition.

- 5 -

COMPLAINT

19.    Plaintiff is further informed and believe and thereon allege that Defendants' representations were in fact false and that the true facts were that Defendants, and each of them, had not, and did not intend to, provide Plaintiff with a delay of the trustee's sale as they had agreed to orally. That Plaintiff relied upon the representations of said Defendants and each of them as set forth hereinabove and would not have relied on Defendants in this regard, had Plaintiff known the true facts. Specifically, by reasonably relying on Defendants' oral statements, Plaintiff was prevented from taking other steps to avoid foreclosure.

20.    As a direct and proximate result of defendants' conspiracy and fraudulent conduct, Plaintiff has been damaged in the amount to be proven at trial.

21.    Defendants' acts were malicious, intentional and illegal.

22.    As a result of the malicious, intentional and illegal actions of defendants, Plaintiff is entitled to recover exemplary and punitive damages in a sum to be determined at the time of trial.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

### (Against All Defendants)

23.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

24.    That the actions and representations of defendants and each of them as set forth herein above were negligent and without due regard. More specifically, defendants made the following representations: that defendants would continue to postpone scheduled trustee sale pending review of her application for loan modification.

25.    That the representations made by defendants were false and at all times intended to be false and to mislead Plaintiff or grossly wanton and negligent in that defendants should have known that they would not have been able to comply with their representations.

26.    The true facts were that defendants did not intend to or actually postpone the

- 6 -

COMPLAINT

subject trustee sale herein.

27.    That Plaintiff relied upon the representations of said defendants and each of them as set forth hereinabove and would not have relied on defendants in this regard, had Plaintiff known the true facts.

28.    That Plaintiff's reliance upon said defendants and each of them and the statements made by defendants was reasonable under the circumstances.

29.    That as a result of the actions of defendants and each of them, Plaintiff has been damaged in a sum not yet readily ascertainable and Plaintiff will ask leave of court to amend her complaint when the true nature and extent of her damages has been ascertained.

### THIRD CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against All Defendants)

30.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

31.    At all times relevant, defendants and each of them created, accepted and acted in a fiduciary relationship of great trust and acted for the benefit of Plaintiff.

32.    On information and belief Plaintiff alleges that defendants owed and owe Plaintiff fiduciary duties. By reason of their fiduciary relationship, defendants owed and owe Plaintiff the highest obligations of good faith, fair dealing, loyalty and due care in all their dealings with Plaintiff as well as a duty to keep Plaintiff adequately and accurately informed on all issues regarding the her loan, her loan modification application and the trustee sale date of the Subject Property. Defendants and each of them breached the fiduciary duty owed to Plaintiff as they have acted and continue to act for their own benefit and to the detriment of Plaintiff.

33.    Among other things, defendants and each of them have failed to adhere to their obligations to Plaintiff , and stop the alleged trustee sale as they stated that they would. These actions were done without due care for the protection of Plaintiff's rights.

34.    As a direct and legal result of said breach of fiduciary duty, Plaintiff has suffered economic damage and potential loss of the Subject Property resulting in damages according to

- 7 -

**COMPLAINT**

proof at trial. On information and belief, defendants' never intended to comply with their

fiduciary commitments and oral promises to Plaintiff and instead engaged in a course of conduct

to frustrate Plaintiff's ability to apply for and obtain a loan modification, or, filing bankruptcy or

finding other means to avoid foreclosure. As a result of defendants' conduct, defendants have

been unjustly enriched by late fees and/or foreclosure fees and/or other damages to be proven at

trial.

35.     Defendants and each of them acted willfully, maliciously, oppressively, and in

conscious disregard of the rights of Plaintiff and their fiduciary duties. As such Plaintiff is

entitled to punitive damages.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### (Against All Defendants)

36.     Plaintiff incorporates by reference and re-alleges each and every allegation

contained above, as though fully set forth herein.

37.     In taking the aforementioned actions, defendants and each of them, directly or

indirectly, were paid monies or took property that was unjustified.

38.     Defendants are therefore in possession of money and property that belongs to the

Plaintiff and they have deprived Plaintiff of its possession, use and enjoyment. On information

and belief, defendants' never intended to comply with their commitments and numerous

promises and instead engaged in a course of conduct to frustrate Plaintiff's ability to take other

steps to stop the subject trustee's sale such as short selling, bankruptcy options or finding other

means to avoid foreclosure. As a result of defendants' conduct, defendants have been unjustly

enriched by late fees and/or foreclosure fees.

39.     As a direct and legal result of the defendants' misconduct, Plaintiff sustained

actual, special and consequential damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### Breach of Contract

### (Against All Defendants)

- 8 -

40.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

41.    Defendants have certain duties under written agreements with the California and other states' Attorneys General, entered into by defendants and public authority, expressly on behalf of aggrieved third-party loan modification prospects.

42.    Plaintiff has performed, or has been excused from performing under said agreement.

42.    Defendant has breached the agreement and caused plaintiff harm in that plaintiff was not able to obtain a loan modification, despite her good faith and best efforts, due to the bad-faith conduct and breaches of agreement by defendants.

43.    Plaintiff has been resultantly damaged by having had the Subject Property being recently sold at foreclosure sale.

## SIXTH CAUSE OF ACTION

### Quiet Title to Real Property

### (Against All Defendants)

44.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

45.    That Plaintiff is seeking a quiet title action against the claims of defendants and each of them in the Subject Property more specifically described hereinabove.

46.    That the claims of defendants, and each of them, are without any right, title, ownership or interest whatsoever and that defendants, and each of them, have no right, title or interest in the Property, and that any alleged title obtained by the within defendants and each of them, was obtained through misrepresentation, by wrongful acts, unconscionable and inequitable practices and breach of fiduciary duties.

47.    The foreclosure and sale of the Subject Property was wrongful and should be voided by virtue of defendants' fraudulent conduct alleged in this complaint, and by reason of the defective Trustee's Sale. Based on the facts alleged in this complaint and incorporated herein, said Trustee's Deed Upon Sale should be cancelled and be of no force or effect.

- 9 -

COMPLAINT

48.    Plaintiffs seek to quiet title in the Subject Property as to each defendant, and that each such defendant has no such right, title, estate, lien, or interest in the Subject Property or any part of it, adverse to plaintiffs, or at all. That the claims of all defendants herein are without any right, title, ownership or interest whatsoever.

49.    That Plaintiff seeks quiet title as of the date of this lawsuit is filed on any and all interests of the within defendants in said Subject Property.

## SEVENTH CAUSE OF ACTION

### Violation of Civil Code Section 2923.6

### (Against All Defendants)

50.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

51.    That defendants have failed to adhere to the provisions of Civil Code section 2923.6 requiring a good faith attempt at modification of the subject loan by committing the acts described herein.  Specifically, defendants and each of them have failed to adhere to their obligations to provide a good faith review of Plaintiff's request for loan modification and failed to postpone the trustee sale of the Subject Property as they promised to do.

52.    That Plaintiff has been damaged, in an amount to be proven at trial, by defendants' failure to adhere to the provisions of Civil Code 2923.6.

## EIGHTH CAUSE OF ACTION

### Violation of California Unfair Business Practices Act

### (Against All Defendants)

53.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

54.    Given the various alleged misrepresentation, wrongful acts, unconscionable and inequitable practices, breach of fiduciary duties, and failure to adhere to relevant statutory law alleged, defendants have also violated California Business and Professions Code § 17200 et seq. by engaging in unfair business practices that was intended to and did frustrate Plaintiff's ability to take other steps to stop the subject trustee sale, such as short selling, bankruptcy options or

- 10 -

COMPLAINT

finding other means to avoid foreclosure. As a result of defendants' conduct, defendants have been unjustly enriched by late fees and/or foreclosure fees and from the resulting purported ownership interest in the subject property.

55.    Plaintiff are therefore entitled to the remedies allowed pursuant to Business and Professions Code § 17200 et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.    For general, special, statutory, punitive and actual damages according to proof at trial;

2.    For consequential and incidental damages;

3.    For court judgment and order that foreclosure and sale of the Subject Property is void, and that the Trustee's Deed Upon Sale should be cancelled and be of no force or effect;

4.    For a court judgment and order declaring the equitable rights of the parties herein;

5.    For a court judgment and order declaring that plaintiff have quiet title in the Subject Property as to each defendant, and that each such defendant has no right, title, estate, lien, or interest in the Subject Property or any part of it, adverse to Plaintiff, or at all;

6.    For the equitable, injunctive and monetary relief permitted under Business & Professions Code Section 17203;

7.    For costs of suit incurred herein; and

8.    For such other and further relief as the court may deem just and proper.

Dated: July 26, 2012                          Respectfully submitted,
                                              **LAW OFFICE OF ALLAN O. CATE**


                                              _____
                                              Allan Cate, Attorney for Plaintiff
                                              Rosalind Alexander-Kasparik

---

**- 11 -**

**COMPLAINT**

## JURY DEMAND

Plaintiff request that the trial in this case be by jury.

Dated: July 26, 2012

**LAW OFFICE OF ALLAN O. CATE**

Allan Cate, Attorney for Plaintiff
Rosalind Alexander-Kasparik

- 12 -

**COMPLAINT**