## **Exhibit 1**

## **Assumption and Assignment Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                        :
In re:                                  :        Chapter 11
                                        :
RESIDENTIAL CAPITAL, LLC, *et al*.      :        Case No. 12-12020 (MG)
                                        :
              Debtors.                  :        (Jointly Administered)
                                        :
---------------------------------------------------------x

ORDER GRANTING
**DEBTORS' MOTION UNDER SECTION 365 OF THE BANKRUPTCY CODE
TO ASSUME AND ASSIGN SERVICING RELATED AGREEMENTS WITH
<u>IMPAC FUNDING CORPORATION AND IMPAC MORTGAGE HOLDINGS, INC.</u>**

Upon the motion (the "<u>Motion</u>")[1] of the above-captioned debtors and debtors in possession (the "<u>Debtors</u>") for entry of an order (the "<u>Order</u>"), pursuant to section 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "<u>Local Rules</u>"), authorizing the assumption and assignment to Ocwen Loan Servicing, LLC ("<u>Ocwen</u>") of the contracts identified on <u>Annex 1</u> hereto (the "<u>Additional Assigned Agreements</u>") as of the Closing Date and the contracts identified on <u>Annex 2</u> hereto (the "<u>Excluded Agreements</u>") each pursuant to and in accordance with the Sale Order, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and Impac having filed an objection (the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

"Objection") to the Motion on August 29, 2013 [Docket No. 4882]; and all of the proceedings

had before the Court; and the legal and factual bases set forth in the Motion and the Objection

establishing just and sufficient cause to grant the requested relief, as modified, herein; and the

Court having determined that the relief requested in the Motion, as modified herein, is in the best

interests of the Debtors and their estates; and upon the record herein; and after due deliberation

thereon; and good and sufficient cause appearing therefor,

## IT IS HEREBY FOUND, DETERMINED, AND ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Objection is deemed withdrawn.

3.      Pursuant to the Sale Order and section 365 of the Bankruptcy Code, Bankruptcy

Rule 6006, Local Rule 6006-1, and the Stipulation (I) Resolving the Objection to Confirmation

of Impac Funding Corporation and Impac Mortgage Holdings, Inc., and (II) Resolving Impac's

Objection to and Providing for the Sale, Assumption and Assignment of Certain Servicing

Agreements to Ocwen Loan Servicing, LLC attached hereto as Annex 3 (the "Settlement

Stipulation"), (a) the Debtors' assumption and assignment of the Additional Assigned

Agreements and the Excluded Agreements is hereby approved, and (b) the Cure Amount payable

to Impac in connection with such assumption and assignment is ordered as set forth in the

Settlement Stipulation and shall be paid in accordance with paragraphs 6, 7, and 8 of the

Settlement Stipulation.

4.      Consistent with the Settlement Stipulation, the assumption and assignment of the

Additional Assigned Agreements and the Excluded Agreements shall be subject to and governed

by the terms of the Sale Order as if set forth herein in its entirety.  As between the Debtors and

Ocwen, the assumption and assignment of the Additional Assigned Agreements and the

2

Excluded Agreements shall be subject to and governed by the terms of the Ocwen APA and the

Sale Order.

5.      The Debtors are hereby authorized to execute and deliver all instruments and

documents, and take all other actions, as may be necessary or appropriate to implement and

effectuate the relief granted in this Order.

6.      This Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation or interpretation of this Order.


Dated: _____ __, 2013
        New York, New York


                                        _____
                                        THE HONORABLE MARTIN GLENN
                                        UNITED STATES BANKRUPTCY JUDGE

## Annex 1 to the Order

**Additional Assigned Agreements**

| | Servicing Rights Document |
|---|---|
| 1 | ICMB Series 2002-9F |
| 2 | ICMB Series 2003-2F |
| 3 | ICMB Series 2004-10 |
| 4 | ICMB Series 2004-4 |
| 5 | ICMB Series 2004-5 |
| 6 | ICMB Series 2004-7 |
| 7 | ICMB Series 2004-8 |
| 8 | ICMB Series 2004-9 |
| 9 | ICMB Series 2005-1 |
| 10 | ICMB Series 2005-2 |
| 11 | ICMB Series 2005-4 |
| 12 | ICMB Series 2005-8 |
| 13 | ISAC  Series 2002-2 |
| 14 | ISAC  Series 2002-3 |
| 15 | ISAC  Series 2003-1 |
| 16 | ISAC  Series 2003-3 |
| 17 | ISAC  Series 2004-1 |
| 18 | ISAC  Series 2004-2 |
| 19 | ISAC  Series 2006-1 |
| 20 | ISAC  Series 2006-2 |

| | **Servicing Rights Document** |
|---|---|
| 21 | ISAC  Series 2006-5 |
| 22 | ISAC  Series 2007-3 |

**<u>Annex 2 to the Order</u>**

**Excluded Agreements**

|   | **Servicing Rights Document** |
|---|---|
| 1 | ICMB Series 2003-4 |
| 2 | ICMB Series 2004-6 |
| 3 | ICMB Series 2005-5 |
| 4 | ICMB Series 2005-6[*] |
| 5 | ICMB Series 2005-7 |
| 6 | ISAC  Series 2005-2 |
| 7 | PFCA HM EQTY INVMT TR 2002-IFC1 |
| 8 | PFCA HM EQTY INVMT TR 2002-IFC2 |
| 9 | PFCA HM EQTY INVMT TR 2003-IFC4 |
| 10 | PFCA HM EQTY INVMT TR 2003-IFC5 |
| 11 | PFCA HM EQTY INVMT TR 2003-IFC6 |

---

[*] The agreement associated with this servicing rights document is the Omitted Agreement that was previously noticed to Impac, but not previously assigned to Ocwen.

**<u>Annex 3 to the Order</u>**

**Settlement Stipulation**

ny-1088302

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**STIPULATION (I) RESOLVING THE OBJECTION TO CONFIRMATION OF
IMPAC FUNDING CORPORATION AND IMPAC MORTGAGE HOLDINGS,
INC., AND (II) RESOLVING IMPAC'S OBJECTION TO AND PROVIDING
FOR THE SALE, ASSUMPTION AND ASSIGNMENT OF CERTAIN
<u>SERVICING AGREEMENTS TO OCWEN LOAN SERVICING, LLC</u>**

This stipulation (the "**Stipulation**") is entered into on December 6, 2013 by and among Residential Capital, LLC and its affiliated debtors, as debtors and debtors in possession, (collectively, the "**Debtors**"), the Official Committee of Unsecured Creditors (the "**Committee**"), Ally Financial Inc. ("**AFI**"), on behalf of itself and its non-debtor subsidiaries and Ally Bank (collectively, "**Ally**"), and Impac Funding Corporation and Impac Mortgage Holdings, Inc. (collectively, "**Impac**" and, together with the Debtors, Ally, and the Committee, the "**Parties**").

**RECITALS**

I.   **THE BANKRUPTCY CASES**

A.   On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").  Since the Petition Date, the Debtors have operated and managed their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

3

Code.  The Office of the United States Trustee for the Southern District of New York appointed the Committee on May 16, 2012.

## II.    THE PLATFORM SALE

B.      On the Petition Date, the Debtors filed a motion (the "**Sale Motion**") [Docket No. 61] seeking, among other things, authorization to sell certain assets and approval of (i) related sale procedures, (ii) asset purchase agreements, and (iii) the assumption and assignment of certain executory contracts and unexpired leases related thereto.

C.      On July 26, 2012, the Debtors filed their *Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* [Docket No. 924] (the "**Assumption Notice**"), which was amended and restated on September 18, 2012 [Docket No. 1484] (the "**Amended Assumption Notice**").   The applicable cure objection deadline under the Notice was September 28, 2012 (the "**Cure Deadline**").

D.      On November 21, 2012, the Bankruptcy Court entered sale orders approving the Debtors' sales of assets to Berkshire Hathaway, Inc. [Docket No. 2247] and Ocwen Loan Servicing,  LLC ("**Ocwen**") [Docket No. 2246] (the "**Ocwen Sale Order**").  The Ocwen sale closed on February 15, 2013 (the "**Closing Date**").  Since the Closing Date, the relevant loans subject to the trusts identified in the Assumption and Assignment Motion (as defined below) have been subserviced by Ocwen on behalf of GMACM pursuant to the Subservicing Agreement entered into by and among certain of the Debtors and Ocwen, as subservicer, effective as of the Closing Date.

### III.    **THE IMPAC PROOF OF CLAIM**

E.     On November 19, 2012, Impac Funding Corporation filed a proof of claim, designated Claim No. 4086, for $8,000,000 in alleged loan servicing defects against GMACM (the "**Impac Proof of Claim**").

### IV.    **THE IMPAC TRANSACTIONS**

F.     Impac and the Debtors are parties to ten (10) servicing related agreements, which were listed on the Assumption Notice (collectively, the "**Noticed Agreements**"), and are listed hereto as **Exhibit 2**. Eight (8) of the Noticed Agreements were assumed and assigned to Ocwen as of the Closing Date (the "**Assigned Noticed Agreements**"). Two (2) of the Noticed Agreements (referred to as "ICMB Series 2005-6"[1] and "ISAC Series 2006-3") were not assumed and assigned to Ocwen on the Closing Date. ICMB Series 2005-6 (the "**Omitted Agreement**") has been subserviced by Ocwen since February 15, 2013.

G.     Subsequent to the filing of the Assumption Notice and the Impac Proof of Claim, the Debtors were made aware of thirty-three (33) additional agreements (collectively, the "**Additional Agreements**") between Impac and the Debtors that were not previously listed on the Amended Assumption Notice. Twenty-two (22) of the Additional Agreements were purported to be assumed and assigned to Ocwen as of the Closing Date pursuant to the Sale Order (the "**Additional Assigned Agreements**") and are listed hereto as **Exhibit 3**. Ten (10) remaining Additional Agreements and the Omitted Agreement (collectively the "**Excluded Agreements**") have been subserviced by Ocwen since February 15, 2013. The Excluded Agreements are listed on **Exhibit 4**.

---

[1] This agreement subsequently was assumed by the Debtors and assigned to Ocwen in connection with that certain *Stipulation and Order: (I) Resolving the Objection of Ambac Assurance Corporation and the Segregated Account of Ambac Assurance Corporation to Debtors' Proposed Assumption and Assignment of Certain Executory Contracts, (II) Approving Sale, Assumption and Assignment of Certain Servicing Rights to Ocwen Loan Servicing, LLC, and (III) Granting Related Relief* [Docket No. 5389].

ny-1088302

H.      On August 19, 2013, the Debtors filed the *Debtors' Motion Under Section 365 of the Bankruptcy Code to Assume and Assign Servicing Related Agreements with Impac Funding Corporation and Impac Mortgage Holdings, Inc.* (the "**Assumption Motion**") [Docket No. 4744] to assume and assign the Additional Assigned Agreements and the Excluded Agreements to Ocwen consistent with the terms of the Asset Purchase Agreement and Amendment No. 3 and the Sale Order.

I.      On August 29, 2013, Impac filed a limited objection to the Assumption Motion (the "**Assumption Objection**") [Docket No. 4882].  In the Assumption Objection, Impac asserted cure claims as of August 29, 2013 of at least $2,562,255.93, in addition to indemnification of its attorneys' fees and costs, in connection with the Assumption Motion.  On November 14, 2013, Impac filed a supplemental declaration asserting that the cure claims in connection with the Assumption Motion had increased to at least $3,091,483.85, in addition to indemnification of its attorneys' fees and costs.

## V.      THE PLAN AND IMPAC'S CONFIRMATION OBJECTION

J.      The Debtors and the Committee, as co-plan proponents, have solicited votes on a joint Chapter 11 plan (as may be amended from time to time, the "**Plan**").  Ex. 1 to *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4819].[2]  On October 21, 2013, Impac filed an objection to confirmation of the Plan. [Docket No. 5401] (the "**Confirmation Objection**").  Impac submitted a ballot rejecting the Plan in connection with its claim against GMACM.

K.      Impac and Ally Bank have entered into a settlement agreement dated December 3, 2013 (the "**Ally-Impac Agreement**"), which, among other things, resolves claims between

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

Impac and Ally Bank relating to the action styled as *Ally Bank f/k/a/ GMAC Bank v. Impac Funding Corporation and Impac Mortgage Holdings, Inc.*, Case No 13-Civ-5789 (LLS), pending before the United States District Court for the Southern District of New York, and related issues, as described more fully in the Ally-Impac Agreement.

L.     The Parties engaged in arms'-length negotiations regarding a settlement of the Assumption Objection, the Confirmation Objection, and the Impac Proof of Claim.  The Parties have reached an agreement, as set forth in this Stipulation.

## **AGREEMENT**

1.     <u>Assumption and Assignment Order</u>.  Within one (1) business day after execution of this Stipulation by the Parties, the Debtors shall file a notice of a proposed order with the Bankruptcy Court requesting entry of an order substantially in the form attached hereto as **Exhibit 1** (the "**Assumption and Assignment Order**"), resolving the Assumption Motion and providing, *inter alia*, for the approval of the assumption and assignment of the Additional Assigned Agreements effective as of the Closing Date and the Excluded Agreements pursuant to and in accordance with the Ocwen Sale Order and fixing the Cure Amount (as defined below). The Parties shall thereafter use commercially reasonable efforts to obtain prompt entry of the Assumption and Assignment Order.  Debtors and the Committee agree to make every reasonable effort to ensure the Assumption and Assignment Order is entered by the Bankruptcy Court on or before December 31, 2013.

2.     <u>Plan Support</u>.  Upon execution of this Stipulation (i) the Confirmation Objection shall be deemed withdrawn, (ii) Impac shall be deemed to have accepted the Plan, (iii) any ballot submitted by Impac with respect to the Plan shall be deemed to be amended to accept the Plan, and (iv) Impac shall otherwise support the Plan in accordance with Sections 4.1(c) and (e) of the

7

Plan Support Agreement, dated as of May 13, 2013, entered into by and among the Debtors,

Ally, the Committee, and the claimants identified therein.  [Docket No. 3814, Ex. 3].

3.     <u>Transfer of the Excluded Agreements</u>.  As soon as practicable after the entry of

the Assumption and Assignment Order, the Debtors shall assume and assign the Excluded

Agreements to Ocwen in accordance with the provisions of the Asset Purchase Agreement (as

amended) and the Sale Order.  The assumption and assignment of the Excluded Agreements

shall be subject to and governed by the Sale Order as if fully set forth herein.  The Parties agree

that notwithstanding anything in the Plan or in any other document or court filing to the contrary,

the Debtors' assumption and assignment of the Excluded Agreements in accordance with the

Asset Purchase Agreement (as amended) and the Sale Order shall be final and irrevocable.  For

the avoidance of doubt, the timing of (a) the closing of the transfer of the Excluded Agreements

from the Debtors to Ocwen and (b) the calculation of the purchase price thereunder shall be

governed by the Asset Purchase Agreement dated November 2, 2012 among Ocwen and certain

of the Debtors (as amended from time to time, including, without limitation, Amendment Nos. 1-

3).  Under no circumstances shall Debtors be permitted, under the Plan or otherwise, to reject the

Excluded Agreements following execution of this Stipulation, and any such rights are expressly

waived by the Debtors.

4.     <u>Transfer of the Additional Assigned Agreements.</u>  The Debtors, Impac and

Ocwen hereby agree that the assumption and assignment of the Additional Assigned Agreements

effective as of the Closing Date is ratified hereby and is subject to and governed by the Asset

Purchase Agreement (as amended) and the Sale Order as if fully set forth herein.  The Parties

agree that notwithstanding anything in the Plan or in any other document or court filing to the

contrary, the Debtors' assumption and assignment of the Additional Assigned Agreements in

accordance with the Asset Purchase Agreement (as amended) and the Sale Order shall be final and irrevocable. Under no circumstances shall Debtors be permitted, under the Plan or otherwise, to reject the Additional Assigned Agreements following execution of this Stipulation, and any such rights are expressly waived by the Debtors.

5.    <u>Transfer Date</u>. The transfer of the Excluded Agreements shall be governed by the Asset Purchase Agreement and the Estate Subservicing Agreement as defined in the Asset Purchase Agreement (the "**Subservicing Agreement**") between certain of the Debtors and Ocwen. Debtors, Impac, and Ocwen shall mutually agree on a date for the provision of written notice to customers (the "**Customer Notice**") stating that mortgage servicing rights on the Excluded Agreements are being transferred to Ocwen effective as of February 3, 2014, or as otherwise agreed to between Ocwen and the Debtors (the "**Transfer**"). The Parties further agree to complete all other steps necessary to effectuate the Transfer by February 3, 2014 or such other date as may be reasonably agreed to by the Parties (the "**Transfer Date**"), without the need for any further action by or notice to any Party. The Debtors and Ocwen agree that that nothing herein shall modify the Debtors' or Ocwen's obligations in accordance with Amendment No. 3 or the Subservicing Agreement.

6.    <u>Cure Amount</u>. Subject to Paragraph 7 below, the Debtors and Impac agree that an amount of $1,725,000.00 (the "**Cure Amount**") shall be due and owing in connection with the assumption and assignment of the Additional Assigned Agreements and the Excluded Agreements to Ocwen.

7.    <u>Payment to Ally Bank</u>. Within five (5) business days after the Transfer Date, to the extent Impac has not paid to Ally Bank all amounts owing under the Ally-Impac Agreement, the Debtors or Liquidating Trust, as applicable, will indefeasibly pay a portion of the Cure

Amount in an amount equal to any such unpaid amounts not to exceed $775,000.00 (the "**Ally Bank Amount**") directly to Ally Bank; *provided, however*, in the event the Transfer Date has not occurred by March 10, 2014, to the extent Impac has not paid to Ally Bank all amounts owing under the Ally-Impac Agreement, the Debtors or the Liquidating Trust, as applicable, will indefeasibly pay the Ally Bank Amount to Ally Bank on or before March 13, 2014. Time is of the essence in making this payment. In determining whether or not Impac has paid all amounts owing under the Ally-Impac Agreement as of the Transfer Date, or to what extent there remain unpaid amounts thereunder, the Debtors or the Liquidating Trust, as applicable, may rely on written confirmation (which written confirmation may be provided via e-mail) by counsel to Ally Bank and Impac.

8.      Payment to Impac.  Within five (5) business days after the Transfer Date, the Debtors or Liquidating Trust, as applicable, will pay to Impac by wire transfer the remainder of the Cure Amount after taking into account any payment by the Debtors or Liquidating Trust, as applicable, of the Ally Bank Amount. Time is of the essence in making this payment.

9.      Assignment of Proceeds.  Impac agrees that it has irrevocably assigned to Ally Bank all of its rights, title, and interests in any cure payment the Debtors or the Liquidating Trust, as applicable, may pay under or in connection with the Plan up to any unpaid portion of the Ally Bank Amount, effective as of the effective date of the Ally-Impac Agreement.

10.      Consent to Alternative Transaction.   In the event that the transfer of the Excluded Agreements to Ocwen as contemplated herein does not occur by March 10, 2014, Impac agrees that the Debtors or the Liquidating Trust, as applicable, may transfer the Excluded Agreements to an alternative servicer on the same terms as contemplated herein, including the establishment of the Cure Amount. In that event, the Debtors and Liquidating Trust agree that the transfer to

an alternative servicer must occur within a commercially reasonable time. In the event that the transfer to an alternative servicer does not occur within a commercially reasonable time, Impac and the Debtors and/or Liquidating Trust reserve any and all of their respective rights and remedies, whether contractual, legal, equitable, or otherwise, in relation to the Excluded Agreements, including, without limitation, the right to assert claims for defaults under and/or breaches of the Excluded Agreements occurring or arising on or after March 10, 2014.

11.   Impac Proof of Claim.   Upon execution of this Stipulation, the Impac Proof of Claim shall be deemed withdrawn and will be expunged. The only claim Impac shall have against the Debtors is the Cure Claim.

12.   Releases. Impac acknowledges and agrees that, as of the effective date of the Plan, it shall be subject to the terms of the Plan, including as set forth in Articles IX.D (*Third Party Release*), IX.G (*Exculpation*), and IX.H (*Injunction*) of the Plan, as the same may be amended or modified.

13.   Commitment to Cooperate.   Each party agrees to provide such cooperation (at its own cost and expense) as may be reasonably necessary to implement this Stipulation.

14.   No Transfer.   Impac represents that it has not sold, assigned, or otherwise transferred any of the claims that are the subject of this Stipulation to a third party and that it has full power and authority to enter into this Stipulation.

15.   Entire Agreement.   This Stipulation and the exhibits and annexes hereto constitute the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.

11

16.     <u>No Reliance</u>.  Each Party acknowledges and agrees that it has not relied on any statement or representation of any other Party, person, or entity in determining to enter into this Stipulation.

17.     <u>No Admission</u>.   Each Party acknowledges and agrees that nothing in this Stipulation constitutes an admission or concession of any legal or factual issue raised in any claim asserted against the Debtors or any matter raised by the Debtors vis-à-vis Impac.

18.     <u>Costs and Expenses</u>.  Each Party agrees to bear its own costs, expenses, and attorneys' fees incurred in connection with the negotiations related to and the preparation of this Stipulation and to not seek from each other reimbursement of any such costs, expenses, or attorneys' fees.

19.     <u>Waiver of Rights</u>.  This paragraph constitutes a waiver of Section 1542 of the California Civil Code and any similar or comparable provisions, rights and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law, which provide:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

20.     <u>Jurisdiction and Choice of Law</u>.  The Bankruptcy Court shall retain jurisdiction over the implementation of this Stipulation and any disputes arising thereunder.  This Stipulation shall be governed by and interpreted in accordance with the laws of the state of New York, without regard to principles of conflicts of laws of that would require the application of laws of another jurisdiction.

21.     <u>Representative Capacity</u>.     Each person executing this Stipulation in a representative capacity represents and warrants that he or she is empowered to do so.

22.     <u>Successors</u>.  This Stipulation shall be binding upon the Parties as well as any successor, trustee, or receiver appointed in the Debtors' Chapter 11 cases.

23.     <u>Execution</u>.  This Stipulation may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement.  Any of the Parties may execute this Stipulation by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original.

24.     <u>Claims Register</u>.  The Debtors, the Debtors' claims agent, and the Clerk of the Court are authorized to take all necessary and appropriate actions to give effect to this Stipulation.

ny-1088302

Agreed to this 10th day of December, 2013:

**MCKENNA LONG & ALDRIDGE LLP**

By:  /s/ Alan F. Kaufman
Alan F. Kaufman
Christopher F. Graham
230 Park Avenue, 17th Floor
New York, NY 10169
Tel: (212) 905-8300
Fax: (212) 922-1819

*Counsel to Impac Funding Corporation
and Impac Mortgage Holdings, Inc.*

**MORRISON & FOERSTER LLP**

By: /s/ Norman Rosenbaum
Gary S. Lee
Norman Rosenbaum
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 468-8000
Fax: (212) 468- 7900

Alexandra Steinberg Barrage
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Tel: (202) 887-1500
Fax: (202) 785-7525

*Counsel for the Debtors
and Debtors-in-Possession*

**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**

By:  /s/ Joseph A. Shifer
Kenneth H. Eckstein
Douglas H. Mannal
Joseph A. Shifer
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
Fax: (212) 715-8000

*Counsel for Official Committee of Unsecured
Creditors*

**KIRKLAND & ELLIS LLP**

By:  /s/  Noah J. Ornstein
Richard M. Cieri
Ray C. Schrock
Noah J. Ornstein
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446 4800
Fax: (212) 446 4900

*Counsel for Ally Financial Inc. and Ally Bank*

14

Acknowledged and agreed with respect to decretal paragraph 3, 4 and 5:

**CLIFFORD CHANCE US LLP**

By: /s/  Jennifer C. DeMarco
Jennifer C. DeMarco
Adam Lesman
31 West 52nd Street
New York, New York  10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375

*Attorneys for Ocwen Loan Servicing, LLC*

15

**<u>Exhibit 1</u>**

**Assumption and Assignment Order**

**Exhibit 2**

**Noticed Agreements**

| | Servicing Rights Document |
|---|---|
| 1 | ICMB Series 2003-9F[*] |
| 2 | ICMB Series 2004-11[*] |
| 3 | GMACM/IMPAC Mortgage Loan Purchase Interim Agreement January 1, 2001[*] |
| 4 | ICMB Series 2007-A[*] |
| 5 | ISAC  Series 2004-4[*] |
| 6 | ISAC  Series 2005-1[*] |
| 7 | Homecomings Financial Network, Inc./IMPAC Funding Corporation/Homecomings Financial Network, Inc., Seller/Servicer Contract for servicing and purchase of loans[*] |
| 8 | ISAC  Series 2006-4[*] |
| 9 | ICMB Series 2005-6[**] |
| 10 | ISAC  Series 2006-3[**] |

[*] The agreement(s) associated with this servicing rights document are the "Assigned Noticed Agreements" that were assumed and assigned to Ocwen as of the Closing Date.

[**] The agreement(s) associated with this servicing rights document were not assigned to Ocwen as of the Closing Date.  ISAC Series 2006-3 was recently transferred to Ocwen on December 1, 2013; Omitted Agreement ISAC Series 2006-4 is included in Exhibit 4.

ny-1088302

## Exhibit 3

### Additional Assigned Agreements

| | Servicing Rights Document |
|---|---|
| 1 | ICMB Series 2002-9F |
| 2 | ICMB Series 2003-2F |
| 3 | ICMB Series 2004-10 |
| 4 | ICMB Series 2004-4 |
| 5 | ICMB Series 2004-5 |
| 6 | ICMB Series 2004-7 |
| 7 | ICMB Series 2004-8 |
| 8 | ICMB Series 2004-9 |
| 9 | ICMB Series 2005-1 |
| 10 | ICMB Series 2005-2 |
| 11 | ICMB Series 2005-4 |
| 12 | ICMB Series 2005-8 |
| 13 | ISAC  Series 2002-2 |
| 14 | ISAC  Series 2002-3 |
| 15 | ISAC  Series 2003-1 |
| 16 | ISAC  Series 2003-3 |
| 17 | ISAC  Series 2004-1 |
| 18 | ISAC  Series 2004-2 |
| 19 | ISAC  Series 2006-1 |
| 20 | ISAC  Series 2006-2 |

| | **Servicing Rights Document** |
|---|---|
| 21 | ISAC  Series 2006-5 |
| 22 | ISAC  Series 2007-3 |

**Exhibit 4**

**Excluded Agreements**

| | Servicing Rights Document |
|---|---|
| 1 | ICMB Series 2003-4 |
| 2 | ICMB Series 2004-6 |
| 3 | ICMB Series 2005-5 |
| 4 | ICMB Series 2005-6[*] |
| 5 | ICMB Series 2005-7 |
| 6 | ISAC  Series 2005-2 |
| 7 | PFCA HM EQTY INVMT TR 2002-IFC1 |
| 8 | PFCA HM EQTY INVMT TR 2002-IFC2 |
| 9 | PFCA HM EQTY INVMT TR 2003-IFC4 |
| 10 | PFCA HM EQTY INVMT TR 2003-IFC5 |
| 11 | PFCA HM EQTY INVMT TR 2003-IFC6 |

---

[*] The agreement(s) associated with this servicing rights document is an Omitted Agreement that was previously noticed to Impac (*see* Exhibit 2), but not previously assigned to Ocwen.