**Exhibit 2**

ny-1121360

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |

## ORDER CONFIRMING SECOND AMENDED JOINT CHAPTER 11 PLAN
## PROPOSED BY RESIDENTIAL CAPITAL, LLC, et al. AND
## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Residential Capital, LLC ("**ResCap**")[1] and its direct and indirect subsidiaries, each as a chapter 11 debtor and debtor-in-possession (collectively, the "**Debtors**") in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), and the Official Committee of Unsecured Creditors (the "**Creditors Committee**" and, together with the Debtors, the "**Plan Proponents**") having proposed the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [Docket No. 5993], dated December 3,6, 2013 (the "**Plan**," a copy of which is attached hereto as **Appendix 1**); the Court having conducted a hearing to consider confirmation of the Plan on November 19, 2013 through November 25, 2013 (the "**Confirmation Hearing**"); the Court having considered:

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

(i)                    each                    of                    the                    Confirmation Declarations,[2]

each admitted into evidence at the Confirmation Hearing, (ii) the arguments of counsel

presented at the Confirmation Hearing, (iii) the objections filed with respect to confirmation of

the Plan, (iv) the Plan Proponents Memorandum of Law in Support of Confirmation of the Plan

(the "**Confirmation Memorandum**") [Docket No. 5720], (v) the Plan Proponents' Omnibus

Response to Certain Objections to Confirmation (the "**Reply**") [Docket No. 5718], (vi) the

various responses and statements in support of confirmation filed by parties in interest [Docket

Nos. 5669, 5679, 5684, 5685, 5694, 5721; including the Objection of the Notes Trustee and the

Ad Hoc Committee of Junior Secured Noteholders to Confirmation of Plan Proponents' Chapter

11 Plan [Docket No. 5443], and (vii) the pleadings filed in the JSN Adversary Proceeding,

including, without limitation, the Joint Pretrial Order [Docket No. 5716]; and the Court being

familiar with the Plan and other relevant factors affecting these Chapter 11 Cases pending under

---

[2] The "**Direct Testimony**" consists of the: (a) Affidavit of P. Joseph Morrow IV Certifying the Tabulation of Votes on the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (the "**Voting Declaration**") [Docket No. 5699], (b) Declaration of Fernando Acebedo [Docket No. 5674], (c) Direct Testimony of Lucy Allen [Docket No. 5706]; (d) Direct Testimony of Martin Blumentritt [Docket No. 5698]; (e) Direct Testimony of Michael Carpenter [Docket No. 5695]; (f) Direct Testimony of John Dubel [Docket No. 5697], (g) Affidavit Regarding Dissemination of Notices and Information to RMBS Trust Certificateholders [Docket No. 5687]; (h) Direct Testimony of Ronald Friedman [Docket No. 5710]; (i) Direct Testimony of Gina Gutzeit [Docket No. 5707];  (j) Direct Testimony of Tammy Hamzehpour [Docket No. 5708]; (k) Declaration of Susheel Kirpalani [Docket No. 5681]; (l) Direct Testimony of Lewis Kruger [Docket No. 5709]; (m) Direct Testimony of Jeffrey A. Lipps [Docket No. 5701]; (n) Declaration of Ralph R. Mabey [Docket No. 5686]; (o) Declaration of Robert Major [Docket No. 5677]; (p) Direct Testimony of Thomas Marano [Docket No. 5705]; (q) Declaration of Brendan Meyer [Docket No. 5690]; (r) Direct Testimony of Nancy Mueller-Handal in Support of Plan Confirmation [Docket No. 5688]; (s) Declaration of Thomas Musarra [Docket No. 5675]; (t) Declaration of Alan M. Pfeiffer [Docket No. 5682]; (u) Direct Testimony of Mark Renzi [Docket No. 5702]; (v) Direct Testimony of Mamta K. Scott, as Officer of U.S. Bank, as RMBS Trustee [Docket No. 5683]; (w) Direct Examination of Frank Sillman [Docket No. 5703]; (x) Declaration of Mary Sohlberg [Docket No. 5680]; (y) Direct Testimony of William R. Thompson [Docket No. 5713]; (z) Direct Testimony of Barbara Westman [Docket No. 5704]; (aa) Declaration of Jim Young [Docket No. 5696]; (bb) Direct Testimony of John S. Dubel on behalf of FGIC [Docket No. 5692]; (cc) ~~Declaration of [ ] (~~Supplemental Declaration of Lorenzo Marinuzzi Regarding the Tabulation of Votes on the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors [Docket No. 6061] (the "**Marinuzzi Declaration**") (dd) Declaration of Gerard Uzzi in Connection with Changed Votes of Members of Ad Hoc Group of Junior Secured Noteholders on Plan Proponents' Second Amended Chapter 11 Plan [Docket No. 6058] (together with the Marinuzzi Declaration, the "**Supplemental Voting ~~Declaration~~**")~~ [Docket No.    ]; and (dd~~**Declarations**"); and (ee) Supplemental Declaration of Lewis Kruger in Support of Plan Confirmation [Docket No. 6018].

12.     On November 18, 2013, the Plan Proponents, through KCC, caused copies of the Revised First Amended Plan to be served on the parties comprising the Monthly Service List.  *See* Affidavit of Service by KCC [Docket No. 5922] dated November 21, 2013.

13.     On December 3, 2013, the Plan Proponents filed (and made available on the Debtors' restructuring website at www.kccllc.net/rescap), the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "**Second Amended Plan**") [Docket No. 5993].

14.     On December 3, 2013, the Plan Proponents, through KCC, caused copies of (a) the Second Amended Plan and (b) the JSN Change Vote Notice to be served on the parties comprising the Monthly Service List. *See* Affidavit of Service by KCC [Docket No. 6008], dated December 4, 2013.

15.     On December 6, 2013, the Plan Proponents filed (and made available on the Debtors' restructuring website at www.kccllc.net/rescap), certain modifications to the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "**Revised Second Amended Plan**") [Docket No. 6030].

16.     On December 6, 2013, the Plan Proponents filed (and made available on the Debtors' restructuring website at www.kccllc.net/rescap) a revised Assumption Schedule (**Amended Exhibit 1** to the Plan Supplement) [Docket No. 6035];

17.     On December 6, 2013, the Plan Proponents filed (and made available on the Debtors' restructuring website at www.kccllc.net/rescap) the following amended Plan Supplement documents, in substantially final form [Docket No. 6036]:

- the Liquidating Trust Causes of Action (**Second Amended Exhibit 13** to the Plan Supplement); and

- the Borrower-Related Causes of Action (**Second Amended Exhibit 15** to the Plan Supplement).

18.     On December 6, 2013, the Plan Proponents, through KCC, caused copies of the Revised Second Amended Plan, Amended Exhibit 1, Second Amended Exhibit 13, and Second Amended Exhibit 15 to be served on the parties comprising the Monthly Service List.  *See* Affidavit of Service by KCC [Docket No. 6048] dated December 9, 2013.

number of the Claims in such Classes actually voting. *See* Voting
Declaration, at Exhibit B.

26.    22. Subsequent to the filing of the Voting Declaration, and
pursuant to the settlement with the FHFA, the FHFA changed their
previous votes rejecting the Plan to votes to accept the Plan in Classes
R-11 and RS-11.

27.    23. Subsequent to the filing of the Voting Declaration, and
pursuant to the JSN Settlement (as defined herein), certain holders of
Claims in Classes R-3, GS-3, and RS-3 changed their previous votes
rejecting the Plan to votes to accept the Plan such that, together with
holders of Claims in Classes R-3, GS-3, and RS-3 that previously voted to
accept the Plan, holders of at least two-thirds in amount and a majority in
number of the Claims actually voting in Classes R-3, GS-3, and RS-3 have
accepted the Plan. *See* Supplemental Voting Declaration [Docket No.    ].
Declarations.

I.    **Section 1129(a)(3).** The Plan has been proposed in good faith and not by

any means forbidden by law.  The Plan Proponents' good faith is evident from the facts and

record of these Chapter 11 Cases, the Disclosure Statement and the hearing thereon, and the

record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The

Plan was proposed with the legitimate and honest purpose of maximizing the value of the

Debtors' estates and effectuating an orderly liquidation of the Debtors.  The Plan is the result of

extensive good faith, arm's-length negotiations between the Debtors, the Creditors' Committee,

Ally, and certain of the Debtors' principal creditor constituencies, including each of the

Consenting Claimants and their respective representatives, and reflects substantial input from the

principal constituencies having an interest in the Chapter 11 Cases.  The Plan Proponents and

each of their respective officers, directors, employees, advisors and professionals, as applicable:

(i) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and

agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (ii)

will be acting in good faith in proceeding to (a) consummate the Plan and the agreements,

compromises, settlements, transactions, transfers, and documentation contemplated by the Plan,

N.     **Section 1129(a)(8).** Claims in Classes R-1, R-2, GS-1, GS-2, RS-1, and

RS-2, are Unimpaired and are conclusively presumed to have accepted the Plan under section

1126(f) of the Bankruptcy Code.  As set forth in the Voting Declaration and the Supplemental

Voting ~~Declaration~~Declarations, each sub-Class entitled to vote within Classes R-3, R-4, R-5,

R-6, R-7, R-8, R-11, R-12, GS-3, GS-4A, GS-4B, GS-5, GS-6, GS-7, GS-10, RS-3, RS-4,

RS-5 (at all sub-Classes other than Residential Funding Real Estate Holdings, LLC), RS-6,

RS-7, RS-8, RS-11, and RS-12 has voted to accept the Plan, and the Class RS-5 at the

Residential Funding Real Estate Holdings, LLC sub-Class voted to reject the Plan.  In addition,

holders of Intercompany Claims in Classes R-9, GS-8, and RS-9, and holders of Equity

Interests in R-10, GS-9 and RS-10 are deemed to have rejected the Plan (collectively with

Class RS-5 (at the Residential Funding Real Estate Holdings, LLC sub-Class), the "**Rejecting

Classes**").  Nevertheless, the Plan is confirmable because it does not discriminate unfairly and

is fair and equitable with respect to the Rejecting Classes and thus satisfies section 1129(b)(1)

of the Bankruptcy Code (as set forth in paragraph U below).

O.     **Section 1129(a)(9).** The Plan provides treatment for Administrative

Claims, Priority Tax Claims and Other Priority Claims that is consistent with the requirements

of section 1129(a)(9) of the Bankruptcy Code.

P.     **Section 1129(a)(10).** The Plan has been accepted by at least one class of

Impaired Claims at each Debtor that is entitled to vote on the Plan, determined without

including any acceptance of the Plan by any "insider."  *See* Voting Declaration, Exhibit B.

Q.     **Section 1129(a)(11).** The Plan is feasible, within the meaning of section

1129(a)(11) of the Bankruptcy Code.  The Debtors' projections show that the Debtors expect

to have sufficient funds to make the payments required under the Plan.

purpose of the Plan is not such avoidance.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

        X.    **Section 1129(e).** None of these Chapter 11 Cases is a small business case within the meaning of the Bankruptcy Code.

        Y.    Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors as proponents of the Plan satisfy the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## IMPLEMENTATION OF THE PLAN

        Z.    All documents and agreements necessary to implement the Plan, including, but not limited to, the Plan Documents, are essential elements of the Plan and consummation of each agreement is in the best interests of the Debtors, the Estates and holders of Claims.  The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and each of the Plan Documents have been negotiated in good faith, at arm's length, are fair and reasonable, and shall, upon execution and upon the occurrence of the Effective Date, constitute legal, valid, binding, enforceable, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan Supplement documents, and any other documents or agreements necessary to implement the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

## CONDITIONS TO THE CONFIRMATION OF THE PLAN

Trustee, the Junior Secured Notes Collateral Agent, and the Ad Hoc Group. Each of the "Managed Funds" and the "Direct Holders" listed on Exhibit A to the Declaration Of Gerard Uzzi In Connection With Changed Votes Of Certain Members Of Ad Hoc Group Of Junior Secured Noteholders On Plan Proponents' Second Amended Chapter 11 Plan, dated December 10, 2013 [Docket No. 6058] has voted to accept the Second Amended Plan and, along with each Managed Fund's "Investment Manager" also listed on Exhibit A, is a Consenting JSN under the Plan and this Confirmation Order. Each of the entities listed on Schedule 1 to the Supplemental Declaration of Lorenzo Marinuzzi Regarding the Tabulation of Votes on the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors, dated December 10, 2013 [Docket No. 6061] has voted to accept the Second Amended Plan and is a Consenting JSN under the Plan and this Confirmation Order.

KK.  The Plan Support Agreement, the Plan, the Global Settlement, the RMBS Settlement, the FGIC Settlement Agreement, the JSN Settlement, and all transactions contemplated by each of the foregoing, including the releases given therein, are in the best interests of the Debtors, their Estates, their creditors, the Investors in each RMBS Trust, each such RMBS Trust, the RMBS Trustees and all other parties in interest.  The RMBS Trustees acted reasonably, in good faith and in the best interests of the Investors in each RMBS Trust and each such RMBS Trust in (i) entering into the Plan Support Agreement, (ii) performing their obligations under the Plan Support Agreement, including voting in favor of the Plan, where applicable, and (iii) agreeing to, and performing under, the Global Settlement and each of the settlements embodied therein, including the RMBS Settlement and the FGIC Settlement Agreement.  The RMBS Trustees' Notice of the Plan Support Agreement, the Plan, the Global

Trusts; (c) any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan); (d) all Entities that are parties to or subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan; (e) each Entity acquiring property under the Plan; (f) any and all non-Debtor parties to Executory Contracts or Unexpired Leases with any of the Debtors; and (g) the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries (including the Investors), guardians, successors or assigns, if any, of any of the foregoing. On the Effective Date, all settlements, compromises, releases (including, without limitation, the Plan Releases), waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on all Persons.

6. **Other Essential Documents and Agreements.** The form of documents comprising the Plan Supplement, any other agreements, instruments, certificates or documents related thereto, including any amendments permitted or contemplated by paragraph 60 of this Order, and the transactions and other matters contemplated by each of the foregoing are approved and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties, shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further notice to or action, order or approval of this Court, or other act or action under applicable law, regulation, order or rule. The Debtors, and after the Effective Date, the Plan Trusts, are authorized, without further approval of this Court or any other party, to execute and deliver all agreements, documents, instruments, securities and certificates relating to such agreements and perform their obligations thereunder, including, without limitation, payment of all fees due thereunder or in connection therewith.

of this Confirmation Order, (i) the parties to the JSN Adversary Proceeding shall execute, and within one (1) Business Day after the funding of the Junior Secured Notes Distribution the plaintiffs in the JSN Adversary Proceeding shall file, a stipulation of dismissal in the JSN Adversary Proceeding; and (ii) the parties to the FGIC Settlement Appeal shall execute, and within one (1) Business Day after the funding of the Junior Secured Notes Distribution the Ad Hoc Group shall file, a stipulation voluntarily dismissing the FGIC Settlement Appeal in accordance with Bankruptcy Rule 8001(c), in each of (i) and (ii) above, with prejudice and without costs awarded to any party.  For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction to enforce the terms of this paragraph 18.

19.    **WFBNA Objections**.  The *Limited Objection of WFBNA to Confirmation of Joint Chapter 11 Plan Proposed by Residential Capital, LLC and the Official Committee of Unsecured Creditors* [Docket No. 5411] and the *Post Confirmation Hearing Brief in Further Support of Limited Objection to WFBNA to Confirmation of Joint Chapter 11 Plan Proposed by Residential Capital, LLC and the Official Committee of Unsecured Creditors* [Docket No. 6017] have been withdrawn with prejudice. [Docket Nos. 6052, 6053]. Wachovia Bank and Wachovia Bank of Delaware, now succeeded by Wells Fargo Bank, N.A. ("WFBNA") shall be deemed to have consented to confirmation of the Plan.  The Plan Proponents, Liquidating Trust and the Liquidating Trustee, on the one hand, and WFBNA, on the other hand, reserve all of their respective rights with respect to the claims filed by WFBNA in these Chapter 11 Cases.

20.    ~~19.~~ **Compromise and Settlement of Claims, Equity Interests, and Controversies.** In accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall, upon consummation, constitute a good faith compromise of all

established prior to the Effective Date to the extent necessary, desirable, or appropriate to effectuate the Plan. The Liquidating Trust, the RMBS Claims Trust, the Private Securities Claims Trust and the Borrower Claims Trust, and each of their respective boards, trustees, and management, as applicable, shall have no liability other than as set forth in the applicable trust agreement, and shall have no other obligations other than to carry out the purpose and obligations of the respective Plan Trust in accordance with their terms.

22.    21. The Debtors, the Liquidating Trust, the Liquidating Trust Manager, their respective members, directors, officers, representatives and agents are hereby authorized to enter into, execute, deliver, file and/or implement any documents and instruments substantially consistent with or incidental to the Plan, and any amendments, supplements or modifications thereto as may be appropriate, and to take such other steps and perform such other acts as may be necessary, useful or appropriate to implement and effectuate the Plan and all other related instruments and documents and this Confirmation Order, and to satisfy all other conditions precedent to the implementation and effectiveness of the Plan. The Liquidating Trust Manager is hereby authorized to make distributions and other payments in accordance with the Plan and the Liquidating Trust Agreement, regardless of whether any appeal of this Confirmation Order has been filed, except where a stay pending appeal has been granted. The signature of the Liquidating Trust Manager, or any other member of the Liquidating Trust Management duly authorized by the Liquidating Trust Board, on any check issued by the Debtors or the Liquidating Trust in payment of Distributions or other amounts contemplated by the Plan shall be sufficient authorization for the drawee bank to honor such check, and no other signature shall be required.

23.    22. On or prior to the Effective Date the Liquidating Trust shall be converted from a Delaware common law trust to a Delaware statutory trust, and if such conversion occurs prior to the Effective Date, John S. Dubel shall be appointed to serve as the sole member of the Liquidating Trust Board until the Effective Date.    Quest Turnaround Advisors, LLC shall be appointed as the Liquidating Trust Manager at such time as the Liquidating Trust is converted to a Delaware statutory trust as aforesaid.    The members of the Liquidating Trust Board from and after the Effective Date shall initially consist of John S. Dubel, Mitchell Sonkin, Matthew Doheny, Paul J. Weber, Samuel L. Molinaro, Jr.    John S. Dubel, in his capacity as trustee of the common law trust, and the sole member of Liquidating Trust Board, the Liquidating Trust Manager and any other officers of the Liquidating Trust, insofar as they shall serve in such capacities prior to the Effective Date, shall be exculpated and indemnified to the same extent as the exculpation and indemnification of the Liquidating Trust Board, the Liquidating Trust Manager and the other officers of the Liquidating Trust from and after the Effective Date.    The appointment of the Liquidating Trust Manager and the Liquidating Trust Board is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy.

24.    23. As provided in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, the Debtors will transfer and assign to the Liquidating Trust the Available Assets in accordance with Article VI.C of the Plan, which shall be deemed vested in the Liquidating Trust.    On and after the Effective Date, the Liquidating Trust Board shall have discretion with respect to the timing of the transfers of Liquidating Trust Assets.    The Liquidating Trust will hold and administer Liquidating Trust Assets, including the Available Assets, including among other things, (i) Cash in bank account(s), (ii) the Liquidating Trust

Expenses Set Aside, (iii) the Administrative, Priority, Secured and Convenience Distribution Reserve, (iv) the DOJ/AG Settlement Reserve, and (v) the Disputed Claims Reserve.

25.    24. All transfers of property by the Debtors to the Liquidating Trust (i) are or shall be legal, valid and effective transfers of property, (ii) vest or shall vest the Liquidating Trust with good title to such property free and clear of all liens, charges, claims, encumbrances or interests, except as expressly provided in the Plan or in this Confirmation Order, (iii) do not and shall not constitute voidable transfers under the Bankruptcy Code or under applicable non-bankruptcy law, (iv) shall be exempt from any transfer, sales, stamp or other similar tax (which exemption shall also apply to the transfers by the Liquidating Trust) and (v) do not and shall not subject the Liquidating Trust Board, Liquidating Trust Management, or holders of Claims to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

26.    25. On and after the Effective Date, the Liquidating Trust Board shall be authorized, in its sole and absolute discretion, to take all actions reasonably necessary to manage or dissolve the Debtors and their subsidiaries, including the Non-Debtor Subsidiaries, under applicable laws, including the laws of the jurisdictions in which they may be organized or registered, notwithstanding any applicable consent requirements or other restrictions contained in any financing agreements or other debt or other documents to which any Debtor is a party, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation. The Liquidating Trust Board shall have no liability for using its discretion to dissolve or not dissolve any of the Debtors or their subsidiaries. Whether or not dissolved, the Debtors shall have no authorization

to implement the provisions of the Plan from and after the Effective Date except as specifically

provided otherwise in the Plan or as directed by the Liquidating Trust. Notwithstanding the

foregoing, the Liquidating Trust Board shall not dissolve any Debtor to the extent such Debtor

is required to hold Available Assets after the Effective Date pursuant to Article VI.C of the

Plan, and any such Debtors shall be authorized to take such actions at the direction of the

Liquidating Trust Board as may be necessary to implement the provisions of the Plan with

respect to such Available Assets or otherwise. Notwithstanding anything in this Order, the

Equity Interests in the Debtors are cancelled on the Effective Date as set forth in Article III.D of

the Plan.

27. 26. **Waiver of Rights to and Under Settlement Insurance Policies**.

Article IV.B.c of the Plan provides that the Debtors shall: (a) permit Ally to recover under the

Settlement Insurance Policies, and (b) relinquish in favor of Ally and its Representatives all

coverage that might otherwise belong to, or inure to the benefit of, the Debtors under such

Settlement Insurance Policies. Subject to Article IV.B.c of the Plan, in exchange for the Third

Party Releases under the Plan, the Debtors' former and current officers and former and current

directors that would otherwise have indemnity rights against the Debtors or rights as an

"insured" under applicable insurance policies, shall be deemed to have waived such rights

against the Debtors.

28. 27. **Exemption from Certain Taxes and Fees**. Pursuant to Bankruptcy

Code section 1146(a), any transfers of property pursuant to the Plan shall not be subject to any

stamp, real estate transfer, mortgage reporting, or other similar tax or governmental assessment

in the United States, and this Confirmation Order shall direct and be deemed to direct the

appropriate state or local governmental officials or agents to forego the collection of any such

Notwithstanding anything to the contrary in the Plan or this Confirmation Order, in the event of a "**Cap Re Settlement Denial**" (as defined below), the claims pled by plaintiffs Donna Moore, Frenchola Holden, and Keith McMillon (the "**Cap Re Plaintiffs**") and the right to assert and prosecute those claims against Cap Re in the action commenced by the Cap Re Plaintiffs pending in the United States District Court for the Eastern District of Pennsylvania (the "**Cap Re District Court**"), captioned *Moore v. GMAC Mortgage, LLC*, No. 2:07-cv-04926-PD (the "**Cap Re Action**") are preserved as against Cap Re. In the event of a Cap Re Settlement Denial, if there is a subsequent adjudication in the Cap Re Action against Cap Re or a settlement with Cap Re, the Cap Re Plaintiffs' rights to any recovery against Cap Re arising from that adjudication or settlement are preserved. The preservation of rights in this paragraph is intended solely for the Cap Re Plaintiffs and the putative class they represent in the Cap Re Action and no other Person or Entity in any capacity. For the avoidance of doubt, no Ally Released Party, other than Cap Re, shall have any liability or obligation under or in connection with this paragraph or, as of the Effective Date, the Cap Re Action, including that no Ally Released Party or Debtor shall have any liability or obligation to Cap Re. As used herein, the term "**Cap Re Settlement Denial**" means the failure of the Cap Re District Court to grant final approval of the settlement of the Cap Re Action among the Cap Re Plaintiffs, GMACM, and Cap Re of the Cap Re Action, or the subsequent reversal or set aside of the Cap Re District Court's final approval of such settlement.

For the avoidance of doubt, no party can assert claims, causes of actions or liabilities against the Debtors or Liquidating Trust arising from claims that are carved out under Article IX.E(i) of the Plan.

Nothing in the Plan or this Confirmation Order releases AFI or any other party from the obligations under the Employees Retirement Plan for GMAC Mortgage Group, LLC (the "Pension Plan") and ERISA. Notwithstanding the foregoing, upon the Effective Date, the Debtors and the Plan Trusts shall be released from all obligations under the Pension Plan and ERISA related thereto, except for any Claims for fiduciary breaches or prohibited transactions (as defined in ERISA) relating to the Pension Plan under applicable law.

**D.      Ally Release**

**Except with respect to the Ally Contract Claims, on and as of the Effective Date of the Plan, the Ally Released Parties shall release the Creditors' Committee, the Debtors, and the Consenting Claimants and their respective successors and assigns, members, partners, advisors, and Representatives, in their capacities as such, from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise arising from or related to the Debtors' liquidation, including the negotiation, formulation, or preparation of the Plan Support Agreement, the Plan, the Disclosure Statement, and any other Plan Documents and related disclosures, as well as any counterclaims in commenced or tolled litigation with the Debtors or the Consenting Claimants.**

Plan affects the Third Party Releases, and all parties' rights under applicable law with respect to

discovery and any Ally Released Party's participation in any proceeding to determine fault are

preserved.

**45.** ~~44.~~ **Special Provisions for the United States and the States.**

(a)        As to the United States, except where the Plan or Confirmation

Order explicitly states otherwise as to the United States, nothing in the Plan or Confirmation

Order shall limit or expand the scope of discharge, release or injunction to which the Debtors or

Liquidating Trust are entitled to under the Bankruptcy Code, if any.  The discharge, release,

exculpation and injunction provisions contained in the Plan and Confirmation Order are not

intended and shall not be construed to bar the United States and the States from, subsequent to

the Bankruptcy Court's entry of the Confirmation Order, pursuing any police or regulatory

action against the Debtors or the Liquidating Trust, except (i) to the extent the applicable Bar

Date or the discharge, release, exculpation or injunction provisions of the Plan bar a

Governmental Unit from pursuing pre-petition Claims against the Debtors or the Liquidating

Trust and (ii) to the extent a Governmental Unit released or settled any causes of action against

the Debtors or the Liquidating Trust, including but not limited to under the DOJ/AG Settlement

(including exhibits).  For the avoidance of doubt, Governmental Units are subject to the

Administrative ~~Claims~~Claim Bar Date.

(b)        Notwithstanding anything contained in the Plan or Confirmation

Order to the contrary, nothing in the Plan or Confirmation Order shall discharge, release, impair

or otherwise preclude: (1) any liability of the Debtors or the Liquidating Trust to the United

States and the States that is not a Claim; (2) any Claim of the United States and the States against

the Debtors or the Liquidating Trust arising on or after the Confirmation Date; (3) any valid right

- 61 -

*of Certain Servicing Agreements to Ocwen Loan Servicing, LLC* [Docket No. ~~——~~6059] shall

perform their obligations thereunder in accordance with the terms thereof.

           (g)      Notwithstanding anything to the contrary herein or in the Plan and

based upon the information available to the Debtors as of the date hereof, in order to resolve

*Oracle's Limited Objection and Reservation of Rights Regarding Joint Chapter 11 Plan*

*Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors*

[Docket No. 5404], the Debtors have agreed as follows:  The Debtors have endeavored to list all

agreements between one or more of the Debtors and Oracle America, Inc. (including any of its

predecessors-in-interest) ("**Oracle**") that they seek to have transferred to the Liquidating Trust

on the Assumption Schedule, as amended, filed in connection with the Plan.  Any agreements

presently existing between any of the Debtors and Oracle that are not listed on the Assumption

Schedule or that are subsequently removed from the Assumption Schedule shall be deemed

rejected (the "**Oracle Rejected Agreements**") as of the Effective Date of the Plan ("**Rejection**

**Date**").  For any and all of the Oracle Rejected Agreements: (a) on the Rejection Date, the

Debtors shall immediately cease use of all Oracle software and services subject to the Oracle

Rejected Agreements; (b) as soon as practicable after the Rejection Date, to the extent required

by the Oracle Rejected Agreements, the Debtors shall use commercially reasonable efforts to

cause their agents to scrub, remove and expunge all Oracle software that is subject to the Oracle

Rejected Agreements and any portions thereof from all computers, hardware, servers,

mainframes and storage media and devices on which it is located (with no copies retained by the

Debtors); and (c) if requested by Oracle, the Debtors shall certify in writing that the Debtors or

their agents have complied with the obligations in (a) and (b) herein within sixty (60) days of the

later than seventy-five (75) days after the Effective Date, and any final hearing on any request

for compensation or reimbursement of Professional Claims accrued through the Effective Date,

unless authorized by final order prior to the Effective Date, shall occur no sooner than [sixty (60)

days] after the filing of such final requests for compensation or reimbursement, and the deadline

to object to such requests shall be no sooner than [ten (10)] days before any hearing on such

request.

(c)    Other than as set forth herein or in the Plan, the procedures set

forth in the Order Establishing Procedures for Interim Compensation and Reimbursement of

Expenses of Professionals   (the "**Interim Compensation Order**") [Docket No. 797] shall

remain in effect through the Effective Date.

(d)    **Bar Date for Rejection Claims.** Claims arising from the rejection

of Executory Contracts or Unexpired Leases must be Filed with the Court no later than the

Rejection Damages Claims Bar Date, which is: (a) with respect to an Executory Contract or

Unexpired Lease that is rejected pursuant to the Plan, forty-five (45) days after the Effective

Date, or (b) with respect to an Executory Contract or Unexpired Lease that is otherwise rejected,

the applicable bar date established by the Bar Date Order or other order of the Bankruptcy Court.

For the avoidance of doubt, all Allowed Claims arising from the rejection of Executory Contracts

or Unexpired Leases shall be treated as General Unsecured Claims against the applicable Debtor

Groups.

(e)    Any Claims arising from the rejection of Executory Contracts or

Unexpired Leases that are not timely filed shall be disallowed automatically, forever barred from

assertion, and shall not be enforceable against the Debtors, the Liquidating Trust, or their assets

or properties without the need for any objection by the Liquidating Trust or further notice to, or action, order, or approval of the Bankruptcy Court.

(f)    **Administrative ~~Claims~~Claim Bar Date.**  Except as provided for in the Plan, this Confirmation Order, or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Claims that arose prior to the Effective Date (other than holders of Administrative Claims paid in the ordinary course of business, holders of Professional Claims, holders of Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code, and holders of Postpetition Intercompany Balances) must File and serve on the Plan Proponents or the Liquidating Trust, as applicable, requests for the payment of such Administrative Claims not already Allowed by Final Order in accordance with the procedures specified in the Confirmation Order, on or before the first Business Day that is thirty (30) days following the Effective Date, or be forever barred, estopped, and enjoined from asserting such Claims against the Debtors, the Plan Trusts, or their assets or properties, and such Claims shall be deemed discharged as of the Effective Date.

(g)    **Statutory Fees.**  Notwithstanding anything to the contrary contained in the Plan, on the Effective Date or as soon as practicable thereafter, the Liquidating Trust shall pay all U.S. Trustee Fees that are due and owing on the Effective Date.  For the avoidance of doubt, nothing in the Plan shall release the Liquidating Trust from its obligation to pay all U.S. Trustee Fees due and owing after the Effective Date before a Final Order is entered by the Bankruptcy Court concluding or closing the Chapter 11 Cases.

51.    ~~50.~~ **No Change in Control.**  Pursuant to Article V.F. of the Plan, the consummation of the Plan or the assumption of any Executory Contract or Unexpired Lease is not intended to, and shall not, constitute a change in ownership or change in control under any

Business Days after the Effective Date.  The Plan Proponents shall publish the Confirmation Notice and Notice of Effective Date in each of the national editions of the *Wall Street Journal* and *USA Today* within seven (7) Business Days after the Effective Date.  As soon as practicable after the entry of this   Order, the Plan Proponents shall make copies of this Order available on the Debtors' restructuring website at www.kccllc.net/rescap.  As soon as practicable after the Effective Date, the Plan Proponents shall make copies of the Confirmation Notice and Notice of Effective Date available on the Debtors' restructuring website at www.kccllc.net/rescap.

59.    58. **Notice of Administrative ~~Claims~~Claim Bar Date.**  The Plan Proponents or the Liquidating Trust are directed to serve a notice of Administrative ~~Claims bar date~~Claim Bar Date, substantially in the form of Appendix 3 attached hereto an incorporated by reference (the "**Administrative ~~Claims~~Claim Bar Date Notice**") upon (a) all parties listed in the creditor matrix maintained by KCC and (b) such additional persons and entities as deemed appropriate by the Plan Proponents, no later than five (5) Business Days after the Effective Date; provided, however, that with respect to (a) above, those Entities whose Claims have been expunged from the Debtors' official claims register as of the Confirmation Date, shall not be entitled to service of the Administrative ~~Claims~~Claim Bar Date Notice and neither the Plan Proponents nor the Liquidating Trust shall be under any obligation to serve such Entities with the Administrative ~~Claims~~Claim Bar Date Notice.  As soon as practicable after the Effective Date, the Plan Proponents shall make copies of the Administrative ~~Claims~~Claim Bar Date Notice available on the Debtors' restructuring website at www.kccllc.net/rescap.

60.    59. **Modification of the Plan.**  The Plan Proponents or the Liquidating Trust, as applicable, are authorized to amend or modify the Plan in accordance with and subject to Article XI of the Plan at any time prior to the substantial consummation of the Plan without

over the Chapter 11 Cases as is legally permissible, including jurisdiction over those matters and issues described in Article XII of the Plan, including with respect to (i) insurance settlements and disputes involving insurance policies settled or otherwise addressed under or in connection with the Plan, and (ii) the Claims filed by WFBNA in these Chapter 11 Cases and any Claims or Causes of Action that may be asserted by WFBNA against any of the Ally Released Parties.

67.    66. **Order Effective Immediately**. Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, the stay provided for under Bankruptcy Rule 3020(e) or any other applicable rule (e.g., Rules 6004(h) or 6006(d)) shall be waived and this Order shall be effective and enforceable immediately upon entry.  The Debtors are authorized to consummate the Plan and the transactions contemplated thereby immediately after entry of this Order and upon, or concurrently with, satisfaction of the conditions set forth in the Plan.

Dated: _____2013
        New York, New York


                                        _____
                                        THE HONORABLE MARTIN GLENN
                                        UNITED STATES BANKRUPTCY JUDGE