1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 12-12020-mg

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              December 11, 2013

19              10:05 AM

20

21    B E F O R E:

22    HON. MARTIN GLENN

23    U.S. BANKRUPTCY JUDGE

24

25

1

2  Closing Arguments for the Phase II Trial

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8  BY:   GARY S. LEE, ESQ.

9        CHARLES L. KERR, ESQ.

10        LORENZO MARINUZZI, ESQ.

11

12

13  CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

14        Conflicts Counsel to Debtors

15        101 Park Avenue

16        New York, NY 10178

17

18  BY:   THERESA A. FOUDY, ESQ.

19

20

21

22

23

24

25

```
 1   KRAMER LEVIN NAFTALIS & FRANKEL LLP
 2        Attorneys for Official Creditors' Committee
 3        1177 Avenue of the Americas
 4        New York, NY 10036
 5
 6   BY:   KENNETH H. ECKSTEIN, ESQ.
 7         RACHAEL L. RINGER, ESQ.
 8         STEPHEN D. ZIDE, ESQ.
 9
10
11   SILVERMANACAMPORA LLP
12        Special Counsel to Creditors' Committee
13        100 Jericho Quadrangle
14        Suite 300
15        Jericho, NY 11753
16
17   BY:   ROBERT D. NOSEK, ESQ.
18
19
20   MILBANK, TWEED, HADLEY & MCCLOY LLP
21        Attorneys for Ad Hoc Group of Junior Secured Notes
22        1850 K Street, NW
23        Washington DC 20005
24
25   BY:   DAVID S. COHEN, ESQ.
```

1

2  MILBANK, TWEED, HADLEY & MCCLOY LLP

3         Attorneys for Ad Hoc Group of Junior Secured Notes

4         One Chase Manhattan Plaza

5         New York, NY 10005

6

7  BY:   GERARD UZZI, ESQ.

8         JONATHAN OSTRZEGA, ESQ.

9

10

11  REED SMITH LLP

12         Attorneys for Wells Fargo Bank, N.A.

13         599 Lexington Avenue

14         New York, NY 10022

15

16  BY:   MARK D. SILVERSCHOTZ, ESQ.

17         ERIC A. SCHAFFER, ESQ.

18

19

20

21

22

23

24

25

```
 1

 2   MUNGER, TOLLES & OLSON LLP

 3        Attorneys for Berkshire Hathaway, Inc.

 4        355 South Grand Avenue

 5        35th Floor

 6        Los Angeles, CA 90071

 7

 8   BY:  THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

 9        SETH GOLDMAN, ESQ. (TELEPHONICALLY)

10

11

12   JONES DAY

13        Attorneys for FGIC

14        222 East 41st Street

15        New York, NY 10017

16

17   BY:  RICHARD L. WYNNE, ESQ.

18

19

20   LOWENSTEIN SANDLER LLP

21        Attorneys for N.J. Carpenters

22        65 Livingston Avenue

23        Roseland, NJ 07068

24

25   BY:  MICHAEL S. ETKIN, ESQ.
```

```
 1
 2   WINSTON & STRAWN LLP
 3        Attorneys for WFBNA - Wachovia
 4        200 Park Avenue
 5        New York, NY 10166
 6
 7   BY:   JAMES DONNELL, ESQ.
 8         NATHAN LEBIODA, ESQ. (TELEPHONICALLY)
 9
10
11   ROPES & GRAY LLP
12        Attorneys for Institutional Investor Steering Committee
13        800 Boylston Street
14        Boston, MA 02199
15
16   BY:   D. ROSS MARTIN, ESQ.
17
18
19   ROPES & GRAY LLP
20        Attorneys for Institutional Investor Steering Committee
21        1211 Avenue of the Americas
22        New York, NY 10036
23
24   BY:   KEITH H. WOFFORD, ESQ.
25
```

```
 1
 2   ALLEN & OVERY LLP
 3          Attorneys for HSBC Bank USA, N.A. as Trustee
 4          1221 Avenue of the Americas
 5          New York, NY 10020
 6
 7   BY:   JOHN KIBLER, ESQ.
 8
 9
10   MORRISON COHEN LLP
11          Attorneys for Independent Directors.
12          909 Third Avenue
13          New York, NY 10022
14
15   BY:   JOSEPH T. MOLDOVAN, ESQ.
16
17
18   SEWARD & KISSEL LLP
19          Attorneys for US Bank as RMBS Trustee
20          One Battery Park Plaza
21          New York, NY 10004
22
23   BY:   MARK D. KOTWICK, ESQ.
24          THOMAS ROSS HOOPER, ESQ.
25          ARLENE R. ALVES, ESQ.
```

1

2  CLEARY GOTTLIEB STEEN & HAMILTON LLP

3          Attorneys for Wilmington Trust

4          One Liberty Plaza

5          New York, NY 10006

6

7  BY:   JEREMY R. OPOLSKY, ESQ.

8          SEAN A. O'NEAL, ESQ.

9

10

11  POLSINELLI PC

12          Attorneys for Kessler Settlement Class

13          900 Third Avenue

14          21st Floor

15          New York, NY 10022

16

17  BY:   DAN FLANIGAN, ESQ.

18

19

20  KELLEY DRYE & WARREN LLP

21          Attorneys for UMB Bank, N.A.

22          101 Park Avenue

23          New York, NY 10178

24

25  BY:   BENJAMIN D. FEDER, ESQ.

1

2  MCKOOL SMITH

3         Attorneys for Freddie Mac

4         One Bryant Park

5         47th Floor

6         New York, NY 10036

7

8  BY:   MICHAEL R. CARNEY, ESQ.

9

10

11  LOEB & LOEB LLP

12         Attorneys for Wilmington Trust

13         345 Park Avenue

14         New York, NY 10154

15

16  BY:   WALTER H. CURCHACK, ESQ.

17

18

19

20

21

22

23

24

25

1                       P R O C E E D I N G S

2              THE COURT:  Please be seated.

3              We're her in Residential Capital number 12-12020.

4              Mr. Kerr?

5              MR. KERR:  Good morning, Your Honor.  Charles Kerr of

6    Morrison & Foerster, on behalf of the debtors.

7              Your Honor, I'd like to update the Court about the

8    steps the parties have taken since the status conference on

9    December 3rd, 2013 to complete the hearing record with respect

10   to plan confirmation.

11             I also want to outline the additional factual support

12   that we discussed with Your Honor at the December 3rd

13   conference and which we are offering today to describe the

14   settlement with the JSNs, update Your Honor about a small

15   number of remaining objections and to further support the

16   revised second amended joint Chapter 11 plan proposed by the

17   debtors and the committee.  That revised second amended joint

18   Chapter 11 plan was filed as docket number 6030.

19             First, with respect to completing the open items from

20   the hearing, Your Honor, on December 4th the debtors filed as

21   docket number 6004 a consolidated list of admitted exhibits and

22   written testimony.  This filing had three attachments to it,

23   which list the exhibits in written trial testimony that were

24   admitted in connection with the hearing on phase 2 and plan

25   confirmation by the plan proponents, by the JSNs and by Wells

1   Fargo.

2           Separately, the plan proponents provided to your

3   clerks on December 3rd a flash drive with copies of the

4   exhibits that had been admitted on behalf of the plan

5   proponents; and I understand the JSNs sent a similar flash

6   drive down to your chambers on December 4th; and it's my

7   understanding Wells Fargo did the same on December 4th, Your

8   Honor.

9           Second, on December 5th, 2013 the plan proponents

10  filed as docket number 6019 their notice of the plan

11  proponents' proposed findings of fact, which attached as

12  Exhibit 1 a copy of those proposed findings of fact.  As

13  directed by Your Honor, that notice provided that objections to

14  the proposed findings of fact must be filed no later than

15  Monday, December 9, 2013 at 5 p.m.

16          One party, Wachovia, filed an objection to the

17  proposed findings of fact, but as I will describe in a minute,

18  Wachovia has now withdrawn that objection.

19          THE COURT:  And I saw it on the document.

20          MR. KERR:  Okay.  And therefore, no parties are

21  objecting to the plan proponents' proposed findings of fact.

22          Third, at the December 3rd conference, Your Honor,

23  Your Honor asked the debtors to meet with the JSNs and work out

24  a process for addressing any unresolved objections included in

25  the second consolidated deposition designations, dated November

RESIDENTIAL CAPITAL, LLC, ET AL.                    13

1   18th, 2013, which had been filed as docket number 5803.

2          The parties met and conferred and came up with an

3   agreed-upon approach.  And on December 5th, we sent a letter to

4   Your Honor proposing that because none of those objected-to

5   designations were being referred to or being relied upon in the

6   proposed findings of fact, each party would simply reserve on

7   their objections to any deposition designations and only

8   address them if for some reason the plan is not confirmed or

9   does not become effective.  We separately filed a copy of that

10  letter as docket number 6022 with Your Honor.

11         Fourth, on December 5th, 2013 the debtors filed a

12  supplemental declaration of Lewis Kruger in support of plan

13  confirmation, and that declaration is dated December 5th, 2013.

14  And that was filed as docket number 6018.

15         In response to Your Honor's request and suggestion at

16  the December 3rd, 2013 conference, we prepared and filed a

17  supplemental declaration to describe and provide the factual

18  support of the settlement with the JSNs, to update Your Honor

19  about a small number of objections that were made outstanding,

20  and to provide further support for the revised second amended

21  joint Chapter 11 plan.

22         At the time we filed that supplemental declaration,

23  Wachovia was still pursuing its objection to the proposed plan

24  and which was noted in paragraph 44 of Mr. Kruger's

25  declaration.  And in fact, on December 5th, Wachovia filed a

1  post-confirmation hearing brief in further support of limited

2  objection to WFBNA to confirmation of joint Chapter 11 plan.

3  That was filed as docket number 6017.  And they filed an

4  objection to the plan proponents' findings of fact and revised

5  proposed confirmation order, which was filed as docket number

6  6049.

7          Fortunately, Your Honor, Wachovia's objections have

8  now been resolved, and on December 10th, 2013 Wachovia filed a

9  notice of withdrawal of objections to plan confirmation; and

10 that was filed as docket number 6053.

11         As a result of this withdrawal of Wachovia's

12 objections, paragraph 44 of Mr. Kruger's supplemental

13 declaration is now out of date and therefore no longer accurate

14 or up to date.  Subject to that change, the debtors offer the

15 supplemental declaration of Mr. Kruger in support of plan

16 confirmation into evidence.

17         If Mr. Kruger was called to testify he would testify

18 to what is in his supplemental declaration and we therefore

19 offer this supplemental declaration in further factual support

20 of the consolidated proceedings.  Mr. Kruger is here to be

21 cross-examined, and I have a copy I can hand up to Your Honor

22 if you'd like me to.

23         THE COURT:  I have it.

24         MR. KERR:  Okay.

25         THE COURT:  All right.  Let me ask, are there any

1    objections to the Court admitting into evidence the

2    supplemental declaration of Lewis Kruger which is an ECF docket

3    6018?

4              MR. DONNELL:  Minor point, Your Honor.  I think it's

5    paragraph 44 --

6              THE COURT:  You need to identify yourself.

7              MR. DONNELL:  I'm sorry.  I apologize.  Jim Donnell,

8    D-O-N-N-E-L-L, on behalf of WFBNA.  I think it's two paragraphs

9    of Mr. Kruger's testimony that are now obviated in view of the

10   settlement, so it's paragraph 44 and 45.

11             MR. KERR:  Thank you.

12             THE COURT:  Mr. Kerr, do you agree that the

13   declaration will be admitted without paragraphs 44 and 45?

14             MR. KERR:  Your Honor, paragraph 44 was the paragraph

15   I mentioned, which started off noting, and that has, I think,

16   been obviated.

17             45 was really a description of what Wachovia's claims

18   were.  I don't think it's necessary in light of their

19   withdrawal, I just don't want to have any prejudice if for some

20   reason the plan does not become effective and those facts are

21   not in the record.

22             So I think 45 simply describes our understanding of

23   what the objection that Wachovia had filed or was pursuing

24   prior to withdrawal and so --

25             THE COURT:  While you're there, let me ask you, in the

1   plan proponents' proposed findings of fact, pages 140 to 143,

2   paragraphs 356 through 371 are findings relevant to Wachovia.

3   And I take it from what you've said that those findings are no

4   longer necessary in light of Wachovia's withdrawal of its

5   objection, is that a fair statement?

6            MR. KERR:  Your Honor, just give me one second to just

7   take a look at that.

8            THE COURT:  Sure.

9            MR. KERR:  Your Honor, there is a stipulation -- and I

10  apologize, I don't have the docket number here, putting into

11  evidence --

12           THE COURT:  5912-1.

13           MR. KERR:  I think that might be right, Your Honor.

14  So therefore, in light of that, I believe that these

15  paragraphs -- again let me just be careful about what I'm

16  doing -- paragraphs 356 to 371 of the proposed findings of fact

17  are no longer necessary, Your Honor.

18           THE COURT:  All right.

19           MR. KERR:  Your Honor, I'd just -- again, just so my

20  record is complete, if for any reason the plan is not approved

21  and/or does not become effective, I'd just like to reserve my

22  rights to --

23           THE COURT:  Oh, absolutely.

24           MR. KERR:  -- reassert those.

25           THE COURT:  But when I saw the withdrawal of the

1  objection and when I reflected on this, and I went back and

2  looked at those paragraphs of the findings, it wasn't clear to

3  me that it was necessary any longer.

4          MR. KERR:  I agree, Your Honor, in light of the --

5  assuming the withdrawal and the plan going effective, they are

6  not necessary anymore.

7          THE COURT:  Does counsel agree with that?

8          MR. DONNELL:  Yes, Your Honor.  Thank you.

9          THE COURT:  All right.

10  (Lewis Kruger's supplemental declaration was hereby received

11  into evidence as Debtors' Exhibit, as of this date.)

12          MR. KERR:  Fifth and final, Your Honor, the debtors

13  offer the supplemental declaration of Lorenzo Marinucci (sic)

14  regarding the tabulation of votes on the second amended --

15  sorry about that Lorenzo.  I can never get it straight, Your

16  Honor.  I've always confused --

17          THE COURT:  Can I introduce you to your partner?

18          MR. KERR:  No, no, no.  He knows who I'm talking

19  about.  I call him something else all the time.

20          -- and the official committee of unsecured creditors

21  dated December 10th, 2013 which was filed as docket 6061.

22          In this declaration we report on the modification of

23  the voting results on the plan proponents and certain of the

24  junior secured noteholders, the ad hoc group, the junior

25  secured notes indenture trustee, and the junior secured notes

RESIDENTIAL CAPITAL, LLC, ET AL.                    18

1  collateral agent.  Attached to this declaration are three

2  attachments to schedule 1, Exhibit A and Exhibit B.

3          Exhibit A is a copy of the declaration of Gerald Uzzi

4  in connection with changed votes of member of ad hoc group of

5  junior secured noteholders on plan proponents' second amended

6  Chapter 11 plan, and that declaration was dated December 10th,

7  2013 and that was separately filed as docket number 658 -- I

8  mean 6058, excuse me.

9          THE COURT:  May I ask you this?  And I didn't see the

10 declaration on the docket.  Because of the amendments to the

11 plan -- and I asked you about this at the status conference --

12 assuming the plan is confirmed, the distributions all of the

13 JSNs, whether they change their vote or not, remain the same.

14 The difference of those who have still cast negative votes

15 don't give or receive the releases that are included in the

16 plan, and can you tell me whether -- are there JSNs who have

17 not changed their vote?

18         MR. KERR:  It's my understanding, Your Honor, that all

19 members of the ad hoc group have changed their vote.

20         THE COURT:  I understand that on the ad hoc group, but

21 there were members, there were JSN holders who weren't members

22 of the ad ho group.

23         MR. KERR:  My understanding, Your Honor, is that all

24 the JSNs have changed their votes.  Is that correct?

25         THE COURT:  Can anybody --

1            MR. KERR:  One hundred percent that changed their

2    vote, Your Honor.

3            MR. MARINUZZI:  Your Honor?

4            THE COURT:  Mr. Marinuzzi?  Do I have that right, Mr.

5    Marinuzzi?

6            MR. MARINUZZI:  Yes, you do.

7            THE COURT:  He's appeared before me in other cases,

8    Mr. Kerr, so I've gotten to know him over time.  But --

9            MR. KERR:  Your Honor, that's okay.  I'm just getting

10   to know him.

11           MR. MARINUZZI:  So, Your Honor, every JSN that voted,

12   including members outside of the ad hoc group, have voted to

13   accept the plan.

14           THE COURT:  Okay.

15           MR. MARINUZZI:  And the total principal amount of the

16   2.223 or so in the originally -- the amount that was in the

17   disclosure statement was something like 2.106 that they voted

18   accept. There are obviously some holders that haven't voted at

19   all.

20           THE COURT:  All right.  Thank you, Mr. Marinuzzi.

21           MR. MARINUZZI:  You're welcome.

22           THE COURT:  Mr. Kerr?

23           MR. KERR:  With that, Your Honor, we would offer Mr.

24   Marinuzzi's supplemental declaration.

25           THE COURT:  Okay.  Any objections?

RESIDENTIAL CAPITAL, LLC, ET AL.                                    20

1          All right.  That's received as well.

2     (Mr. Marinuzzi's declaration was hereby received into evidence

3     as Debtors' Exhibit, as of this date.)

4          MR. KERR:  Great.  Thank you, Your Honor.

5          THE COURT:  Okay.  Mr. Lee?

6          I should ask.  I've admitted the Kruger supplemental

7     declaration and now the Marinuzzi declaration.  Does anyone

8     wish to cross-examine either of the witnesses?

9          All right, hearing none, go ahead Mr. Lee.

10          MR. LEE:  Good morning, Your Honor.  Gary Lee from

11     Morrison & Foerster for the debtors.

12          So, this, Your Honor, will be my closing remarks,

13     hopefully.  Your Honor before I begin I'd like to again offer

14     our sincere thanks to Your Honor and to your staff.  Actually

15     the Courtroom looks remarkably clean.  I'm assuming all of the

16     paper that we've been inundating you with since --

17          THE COURT:  Assuming this is confirmed, everybody is

18     going to have to send people down to haul out a lot of the

19     paper that's out here and in there.

20          MR. LEE:  That was going to be my closing remark, Your

21     Honor, yes.

22          But I'd like to thank you, Your Honor, for your

23     flexibility, the accommodations that you've shown the parties

24     as we've navigated through what I think what has been a

25     tremendously complicated case and through several contested

1  matters and two trials now.

2          So, thank you for your --

3          THE COURT:  Three trials.  FGIC.

4          MR. LEE:  That was a short trial.  I showed up for the

5  first day.

6          But I would like to offer my personal thanks, Your

7  Honor, for helping us navigate through this.  I think, perhaps

8  not much less than two weeks ago, I don't think anybody,

9  perhaps with the exception of Judge Peck, who continued to work

10 at it, thought that we would be coming to you today with

11 confirmation of a plan, seeking confirmation of a plan, that

12 has near universal consensus.  And our view is that the

13 bankruptcy process has worked and worked well in this case.

14         The plan before you represents a truly global

15 settlement.  Judge Peck called it the grand bargain.  I'm not

16 disclosing anything that took place in the mediation.  And we

17 believe that that grand bargain has bought near complete peace

18 and the support of the overwhelming majority of the debtors'

19 creditors.

20         And as Mr. Kerr reported that -- speaking of peace, we

21 have reached a resolution with Wachovia, the debtors and AFI

22 that resulted in withdrawal of their plan objection.  I'll

23 describe that agreement in a little detail during the course of

24 my presentation.

25         So with that objection resolved, the remaining

1   objections are filed by six individuals, three of whom who

2   filed joinders to Ms. Nora's objection, which has been

3   withdrawn.  And of those six, four of them don't have claims

4   against the debtors.

5           So what I'd like to do, Your Honor, is give you a

6   quick road map of what we're going to cover in light of the

7   JSN --

8           THE COURT:  I thought it was two that did not file

9   claims.  I thought Munger and Bennett --

10          MR. LEE:  Your Honor, two didn't file claims and two

11  have claims that have been expunged.

12          THE COURT:  Okay.  That I understand.

13          MR. LEE:  And so that leaves us with two more.

14          THE COURT:  Two didn't file claims.

15          MR. LEE:  That's correct, Your Honor.

16          Simply, in light of the settlement with the JSNs, I

17  think my closing remarks can be relatively brief.  My intention

18  is not to walk through the confirmation standards because Your

19  Honor asked me not to at the December 3rd status conference.  I

20  had an hour presentation on that, which I'm going to skip.  And

21  obviously, Your Honor, there's been a significant amount of

22  briefing, findings of fact, et cetera, with respect to the

23  confirmation standards.

24          So what I'm going to do is very briefly cover five

25  issues:  one, why the settlement with the JSNs, which has now

1    been folded into the plan, is reasonable and should be approved

2    as part of the plan.  Second, why no resolicitation of the plan

3    is required in light of the JSNs' settlement.  Third, the

4    resolution of Wachovia's plan objection.  Fourth, the handful

5    of remaining plan objections and why those should be overruled.

6    And fifth, why the requested waiver of Bankruptcy Rule 3020(e)

7    is appropriate and should be granted.

8              I'm then going to turn the podium over to Mr.

9    Eckstein.  To the extent Your Honor has any questions regarding

10   changes to the plan or the confirmation order, Mr. Eckstein,

11   has -- I think he's agreed to address them.

12             So if that sound acceptable, I'll proceed.

13             THE COURT:  Go ahead.

14             MR. LEE:  So just a brief bit of history, Your Honor.

15   At the outset of these cases the debtors were facing potential

16   liabilities in excess of a hundred billion dollars arising from

17   a multitude of disputes with most of the people who are sitting

18   in this court today.

19             The alleged claims related to tens of billions of

20   dollars of rep and warranty claims held by the RMBS trustees,

21   billions of dollars of claims asserted by the monolines,

22   potentially fifty-five billion dollars in securities claims

23   arising from class action securities, private securities

24   claimants and from the FHFA, a billion dollars plus of claims

25   from the senior unsecured noteholders, billions of dollars of

1  claims from the junior secured noteholders, and billions of

2  dollars of class action and individual borrower claims.

3          ResCap's parent company, AFI, also was facing billions

4  of dollars in alleged liabilities related to the debtors'

5  activities including estate claims, claims asserted by the

6  senior noteholders, claims asserted by the junior noteholders,

7  billions of dollars of claims arising from the debtors'

8  issuance of securities.

9          And under the plan, the plan proponents, the

10 consenting claimants, AFI, the junior noteholders and ResCap's

11 other creditors have achieved a global consensual resolution of

12 those disputes.  And the evidence that you heard during the

13 confirmation hearing and in the declarations and in the

14 briefing all demonstrate that those disputes would have taken

15 years to resolve and they would have caused the estate and

16 other parties to incur astronomical costs if they were

17 litigated.

18         The plan that embodies the overall resolution is, by

19 necessity, complicated in its mechanics, but elegantly simple

20 in its effect.  It buys peace for everybody involved in the

21 grand bargain and it provides creditors with meaningful

22 recoveries that they would not have gotten but for the

23 settlement.

24         And even before the settlement with the junior secured

25 noteholders, we had overwhelming creditor support.  But now

1    taking into account the junior secured noteholders' changed

2    votes, the final tabulation which was moved into evidence at

3    the beginning of the hearing shows that 95.6 percent of the

4    creditors who voted, voted in favor of the plan.

5           So with that, Your Honor, we're not -- we're confident

6    that there remains no single reasoned objection to the plan.

7    There is no evidence that the claims were not settled other

8    than appropriately or indeed that the third-party release is

9    not entirely warranted here.  We believe that the global

10   settlement is indeed fair and reasonable.

11          So with that, Your Honor, what I'd like to do is just

12   briefly address the junior secured noteholders settlement.

13   That's the one major new component of the plan.  And that's a

14   settlement with the junior secured noteholders, with Wells, and

15   with the indenture trustee, UMB.

16          Mr. Eckstein described the terms of that settlement

17   for the Court in detail on December the December 3rd when we

18   were here, so I'm not going to repeat that now.  But we did

19   submit the supplemental declaration from Mr. Kruger to

20   demonstrate why the junior secured noteholder settlement does

21   meet the Iridium factors.  And as Your Honor knows, that

22   declaration was filed at 601, docket number.

23          THE COURT:  That's not the right number.

24          MR. LEE:  6018, I believe.

25          THE COURT:  6018.

1          MR. LEE:  Yes.  So in short, and as Your Honor noted

2   last week, there were substantial and heavily contested

3   arguments between the noteholders and the estate.  Further

4   litigation would undoubtedly have been expensive and time

5   consuming, and distributions to creditors would have doubtless

6   been delayed absent a resolution.

7          I'm pleased to report, Your Honor, that no one

8   objected to the junior secured noteholders' settlement by the

9   deadline that Your Honor set last week.  And a hundred percent

10  of the junior secured noteholders who did vote, voted in favor

11  of the plan.

12         So accordingly, we believe that the settlement, which

13  resolves disputes regarding at least 400 million dollars in

14  post-petition interest and fees for 125 million dollars, does

15  indeed meet the Iridium standards for settlement and is clearly

16  in the best interests of the estate.

17         That brings me to the second issue that Your Honor had

18  raised, which was whether re-solicitation under 1127(c) of the

19  Code is required in light of that settlement.  Again, Mr.

20  Eckstein responded to that point at the status conference.  And

21  as Your Honor requested, we provided additional factual support

22  on this point from Mr. Kruger in his supplemental declaration.

23         As both Mr. Eckstein and Mr. Kruger noted, the

24  disclosure statement expressly disclosed two creditors in quite

25  significant detail that the plan proponents were at that time

1    engaged in litigation with the JSNs concerning their

2    entitlement to post-petition interest.  The disclosure

3    statement also stated that if Your Honor were to determine that

4    the JSNs were entitled to post-petition interest, recoveries to

5    creditors in these cases would be lower than the amounts

6    projected under the disclosure statement.  And there was also a

7    very extensive disclosure of risk factors associated with the

8    litigation.

9          So, Your Honor, the plan proponents submit that those

10   who voted on the plan did so with the understanding that there

11   might be dilution to unsecured creditors for potentially the

12   full amount of post-petition interest.

13         Thankfully, Your Honor -- and this is something that

14   is contained in Mr. Kruger's declaration as well -- we believe

15   that no re-solicitation of the plan is required because the

16   plan proponents are not actually expecting any material change

17   in anticipated recoveries to general unsecured creditors, even

18   after payment of the additional 125 million dollars in

19   interest.  That's because the debtors, the estate management

20   team have been working extraordinarily hard, not just now, but

21   over the two years in which they've been preparing for this

22   case, and through this case; and they have, in fact,

23   outperformed their initial view on asset recoveries.

24         So the debtors currently expect that the cash

25   available to satisfy claims for those creditors receiving units

1    under the plan will likely remain substantially similar to that

2    which was reflected in the recovery analysis in the disclosure

3    statement.  So on that basis, Your Honor, we don't believe that

4    re-solicitation is warranted here.

5             That, Your Honor, brings me to the remaining

6    objections.  I'll address the Wachovia objection first.  As

7    Your Honor knows, that objection related principally to a

8    dispute over the payment of attorney fees.

9             With respect to the plan itself, the resolution

10   reached between the plan proponents, AFI, and Wachovia provides

11   that Wachovia is going to withdraw its objection, which it's

12   done.  The agreement that's embodied in the confirmation order

13   is intended to be estate neutral.  It, in effect, just simply

14   reserves all issues related to the claims filed by Wachovia

15   against the estates.  And that's embodied, Your Honor, in the

16   confirmation order, that all parties' rights with respect to

17   those claims are reserved.

18            THE COURT:  Just on that point, am I going to have to

19   estimate the Wachovia claim against the estate?  What is

20   contemplated?

21            MR. LEE:  What's contemplated, Your Honor, is that

22   there is in fact, a separate --

23            THE COURT:  You resolved --

24            MR. LEE:  -- well, there is a separate agreement

25   between AFI and Wachovia, the terms of which are confidential.

1  It's not before the Court.

2          THE COURT:  I don't care what -- I mean Wachovia and

3  AFI can work out their own dispute.  My question --

4          MR. LEE:  Well --

5          THE COURT:  -- specifically relates to what's going to

6  be -- because you said they're reserving their rights against

7  the debtors.  They did file a proof of claim.  And I'm just

8  inquiring now whether you're able to tell me what future

9  proceedings are going to be -- are likely to be required.  I

10 mean, it may get resolved, but lots of claims --

11         MR. LEE:  Right.  Your Honor, either we'll resolve it

12 with them or there will be an objection to the claim.

13         THE COURT:  Okay.  All right.

14         MR. LEE:  But hopefully not.

15         THE COURT:  Okay.

16         MR. LEE:  So, Your Honor, that leaves us with six

17 unresolved, I'll call them borrower related objections --

18         THE COURT:  Well, Pappas is not a borrower.

19         MR. LEE:  Pappas is not a borrower, Your Honor, and

20 Pappas is --

21         THE COURT:  So there's really --  you're counting --

22 there are six unresolved objections.  You're including Mr.

23 Pappas who was not a borrower.  He claims to have rights in a

24 variety of properties.  At this point I think I've now

25 sustained the debtors' objections to all of his claims.  What

RESIDENTIAL CAPITAL, LLC, ET AL.                    30

1   future proceedings will occur as a result, I'm not quite sure.

2   But am I correct that there is no extant Pappas claim remaining

3   in the case?

4            MR. LEE:  That's correct, Your Honor.  I think it was

5   expunged on the 27th of November.

6            I believe, though, there is a motion that he may have

7   filed, and I know I saw some requests for discovery.  I -- I'll

8   address --

9            THE COURT:  Mr. Pappas quite often files things in the

10  case and he no doubt will now.

11           MR. LEE:  Right.

12           THE COURT:  But at least what -- he had filed a claim,

13  he sought to -- he filed an amended claim.  I recently wrote an

14  opinion expunging his claim.  And I'm correct about that?

15           MR. LEE:  You're correct on all of those things.  So

16  Your Honor expunged his claims under an order entered on

17  November the 17th, which was docket 5964, and on Monday of this

18  week Mr. Pappas filed a motion to reinstate claims, which is

19  docket 6040.  I'm none the wiser exactly as to what he thinks

20  his claims are.

21           THE COURT:  That's fine.

22           MR. LEE:  So with respect to the -- I'll say then,

23  five -- well, I'll just call them six --

24           THE COURT:  Well, there are six claims --

25           MR. LEE:  Six objections.

1          THE COURT:  -- six objections.

2          MR. LEE:  Yes, Your Honor.  With respect to the three

3   that didn't join the Nora objections, those were a claim by --

4   sorry an objection by Mr. Kovacs, that's docket number 5264,

5   and by Mr. Munger, which is docket number 5273, and by Ms.

6   Wilson, which is docket 5409.

7          Mr. Kovacs' claim was expunged on November the 20th

8   pursuant to an order signed by Your Honor, which is docket

9   number 5892.  And neither Mr. Munger nor Ms. Bennett net filed

10  any claims against the estate.

11         With respect to the three unresolved objections, which

12  were filed by Mr. Rode, Mr. Pappas and I think it's Ms.

13  Bennett, those were joinders -- sorry, pardon me -- Mr. (sic)

14  Wilson, Mr. Rode and Mr. Pappas -- those are joinders to the

15  now withdrawn objection filed by Ms. Nora.

16         THE COURT:  And Mr. Rode's proof of claim remains

17  filed; no objection to his proof of claim has been asserted at

18  this point.

19         MR. LEE:  That's correct, Your Honor.

20         THE COURT:  It may or may not, but -- and Mr. Rode was

21  here and participated during the confirmation trial.

22         MR. LEE:  Yes, Your Honor.  And I think the same is

23  true with respect to Ms. Wilson who has filed a claim that has

24  neither been allowed nor disallowed.

25         And, Your Honor, with respect to Mr. Rode, we believe

1  that his objection was not to confirmation, but rather to the

2  amount that he'll receive, if at all, with respect to his proof

3  of claim.  So that will be resolved through the claims process.

4         So, Your Honor, for the reasons set forth in Mr.

5  Kruger's declaration, and based on all the evidence, we believe

6  that each of the remaining objections to confirmation should be

7  overruled and the plan as amended should be confirmed.

8         Finally, Your Honor, I think you had asked us to

9  address the plan proponents' request for a waiver of post-

10 confirmation stay under 3020(e) of the Code.  I think it's

11 important to note that no party has objected to this request.

12 And in fact, all parties have been on notice of the request

13 since November the 12th when we filed a version of the

14 confirmation order with that request.

15        As set forth in Mr. Kruger's declaration, both AFI and

16 the parties to the junior secured noteholder settlement have

17 made the prompt effectiveness of confirmation order on or

18 before December 24th, a condition to the effecting of the

19 settlement.  And, Your Honor, we believe the evidence and

20 unrebutted evidence is that the condition is driven both by

21 AFI's needs to have this closing occur as promptly as possible

22 during the course of this year and the fact that there may be

23 adverse tax consequences to certain of the parties if

24 confirmation doesn't become final before the 24th of December.

25 In other words, the delay could have a material impact on the

1   settlement.

2            So, Your Honor, given the absence of any objection, we

3   believe it's appropriate and reasonable for the Court to grant

4   the waiver of 3020(e).

5            Your Honor, that sort of concludes my closing remarks.

6   If I just may briefly do my Oscar speech before you ask --

7            THE COURT:  Let me ask a question before you do your

8   Oscar speech.

9            MR. LEE:  Do you have any questions?  Yes, Your Honor?

10           THE COURT:  The plan, if confirmed, includes the

11   borrowers' trust -- the plan, if confirmed, includes the

12   borrower's trust, which as I understand it, procedures will be

13   established to attempt to resolve borrowers' claims.  Is that a

14   fair --

15           MR. LEE:  That's correct, Your Honor.

16           THE COURT:  There remains pending before the Court the

17   debtors' objections to some of the borrowers' claims the Court

18   has not yet ruled on.  And my question is, do I need to do

19   that, or may the Court overrule the objections without

20   prejudice -- assuming the plan is confirmed -- that I overrule

21   the objections without prejudice and allow those claims to be

22   part of the process that's going to be established for dealing

23   with claims, borrower claims?

24           MR. LEE:  Your Honor, actually we've been having these

25   preliminary discussions with the trustee for the borrower

1   trust.  And if I may, Your Honor, I think it would be helpful,

2   because that person has yet to physically take office, if we

3   could come back to Your Honor with an answer to that question.

4            THE COURT:  There aren't -- from the last two omnibus

5   hearings, there are so far unresolved objections to borrowers

6   claims.  That's fine.  Get back to me shortly, because I need

7   to know whether I need to, whether it's appropriate -- I mean,

8   whether it's appropriate for me to go on and rule on those

9   claims when a separate procedure is going to be established

10  that will hopefully simplify.

11           I'm going to -- we'll allow you to finish before I

12  hear anybody else.  Okay?

13           MR. LEE:  Okay.  Thank you, Your Honor.

14           So if I may, Your Honor, I would like to actually

15  thank a few people.  It's been an incredibly intense process

16  for a number of people who have behaved with significant grace

17  and humor throughout the process, but not always.

18           If I may, actually, I'd like to thank --

19           THE COURT:  You said that in a low voice, too.

20           MR. LEE:  I did.

21           THE COURT:  So that's--

22           MR. LEE:  I'd like to thank Mr. Eckstein and the team

23  at Kramer Levin, and in fact to the committee at large for all

24  their hard work.  I don't think they knew what they were

25  getting themselves into when they agreed to serve.  It's been a

RESIDENTIAL CAPITAL, LLC, ET AL.                    35

 1   privilege working with them, and I think the results speak for
 2   themselves.
 3          I also want to thank Mr. Schrock, the team Kirkland,
 4   and also to AFI for their support over the last two years in
 5   staying with the process and the debtors' failure to meet a
 6   single deadline under which AFI asked them to complete anything
 7   by.
 8          I'd be remiss if I didn't thank Judge Peck for
 9   conducting what was I thought a world-class mediation process.
10   He did it in a thoughtful way, and he did it with grace.  And
11   the fact remains that he stayed with this process right up
12   until the very end, and I think without him the result simply
13   wouldn't be what it is today.
14          I'd also like to thank the ResCap board who are in the
15   courtroom today for their patience and guidance through a
16   process which we told them would be complete by December.  I
17   unfortunately got the year wrong, but it is still December.
18          I'd like to think Mr. Marano, who'ls the chair of
19   ResCap, for his guidance throughout this process and to Ms.
20   Hamzehpour and the countless officers and employees of ResCap
21   who have really operated under intense pressure, not just
22   through this process, but regulatory pressures as well, over
23   the last years; and they really have achieved great results for
24   their creditors.
25          I'd like to thank my team at Morrison & Foerster.

RESIDENTIAL CAPITAL, LLC, ET AL.                    36

1          And last, I really would like to offer my thanks to

2     Mr. Kruger, who stepped in as the debtors' CRO, for being a

3     true gentleman in the traditional sense of the word and for his

4     very wise counsel throughout this case.

5          And Your Honor I'd like to thank you again for staying

6     with us through this process.  Thank you.

7          THE COURT:  Thank you, Mr. Lee.

8          Who else wants to be heard in support of the plan?

9          MR. ECKSTEIN:  Your Honor, good morning.  Kenneth

10    Eckstein of Kramer Levin, on behalf of the official creditors'

11    committee.  Your Honor, I feel the need to disclose that on my

12    ride up in the elevator, Mr. Wolper tried to induce me not to

13    make any comments at today's hearing.  And while I --

14         THE COURT:  Some things you just can't accomplish.

15         MR. ECKSTEIN:  While I may not be able to Your Honor

16    that precisely, I'll try to honor it in spirit.

17         Your Honor, I don't have any further substantive

18    remarks about the modifications to the plan or the JSNs'

19    settlement or the 3020 waiver beyond what Mr. Lee has

20    indicated, unless Your Honor has particular questions that Your

21    Honor feels need to be answered.

22         I would, assuming that there are no open substantive

23    points, I'll just briefly reiterate some of the comments that

24    Mr. Lee made.  I do want to echo the sentiments and thank the

25    wide array of parties who really worked tirelessly in this

1  case, and obviously we want to thank the Court and the Court's

2  staff.  And I really -- I've never seen a case who has imposed

3  such demand on a Court as this case.  And the fact that Your

4  Honor and Your Honor's team has been able to stay with us and

5  frankly push us harder than I could have imagined, is a great

6  tribute to the Court, and we do thank the Court.  And I

7  reciprocate Mr. Lee's gracious comments.

8          The fact that the Kramer Levin team and the Morrison &

9  Foerster team were able to, I think, work as cooperatively and

10 constructively as we were able to work, in a very difficult and

11 contentious case, reflected well on both sides of the aisle,

12 and actually I think contributed greatly to being able to get

13 to where we've gotten in this case; and I think that is

14 certainly something that I would acknowledge.

15         I would like to thank all the committee members and

16 the consenting claimants.  And as Your Honor knows, this case

17 took a great leap of faith by a lot of people who had their own

18 litigations pending for many years outside of this court.  And

19 one of the unique features of this case was that people had to

20 find a way to essentially have confidence in other parties

21 represented by other counsel and with very different business

22 goals; and it required a great deal of cooperation.

23         And it was done to a large extent under the sort of

24 big tent of the creditors' committee, but people added in, who

25 were not on the creditors' committee.  We had six different

1  trustees; we had RMBS investors who were not on the committee

2  who worked very closely with us; we had a wide array of

3  financial creditors, monolines, securities claimants of all

4  different stripes with different claims; borrower claimants,

5  both on the committee and those who were not on the committee,

6  and getting everybody to cooperate was a big undertaking, and

7  people deserve tremendous credit for having had confidence in

8  the system that we put in place here and allow this case to get

9  to a conclusion.

10       Obviously Judge Peck I think, we can't really say

11  enough of the effort he made.  It doesn't go unnoticed.  He

12  really -- it was almost a labor of love on his part, because he

13  volunteered endless amounts of time to a case that, other than

14  the fact that Your Honor drafted him in December of 2012, it

15  was not a case that he had involvement with.  And he really

16  took a person stake in making all of us get to the right

17  conclusions.  And that was very remarkable and he deserves

18  public credit for that.

19       And Mr. Kruger also came into this case in February of

20  2013.  The case was in high gear.  And to even get up to speed

21  was very difficult.  And to get up to speed in a way that on

22  the one hand was not disruptive, but on the other hand was

23  constructive, was actually something that required a real

24  touch.  And Mr. Kruger did a beautiful job, I think, in being

25  constructive and helping us accomplish more than we were able

1  to accomplish without him, and that was very valuable.

2          I may have left some people out, but it was a real

3  privilege to work with all the different parties in this case,

4  including the Kirkland folks and AFI who we had a great deal of

5  contentiousness with from the outset of the case, and again to

6  get to a resolution with that formidable group is always a

7  challenge.  And so that's something that I want to acknowledge.

8          The last comment I'm make, Your Honor, just because we

9  do have the opportunity for the podium once in a while -- I've

10 said on several occasions that in my view, this case is, I

11 think, a reflection of the constructive aspects of bankruptcy

12 law.  And I think it's worth noting that from time to time

13 there are problems in the economy and even societal problems

14 that are difficult to resolve.  And the mortgage crisis and the

15 financial crisis of 2008 was something that spread throughout

16 the entirely country.  There was very difficult -- it was

17 difficult for the court system to solve it.  There were cases

18 that were pending in state in federal courts around the country

19 for many years.

20         And this case was actually an opportunity to bring all

21 of those problems, at least ResCap-related problems, under one

22 tent.  And in eighteen months we were able to, I think, bring

23 closure to a very difficult problem that frankly, didn't have

24 the ability for a solution outside of the bankruptcy system.

25         And while we maybe have pushed the envelope as far as

1   we could in terms of third-party releases and in terms of the

2   way we structured the plan, the fact of the matter is that we

3   have a legal process through the bankruptcy law that provided

4   for a solution, and it was a solution to a whole array of

5   creditors, to a company that was able to sell itself with

6   operations that are continuing under new owners, for AFI that

7   is going to be able to emerge from this overhang and try to

8   resolve its TARP problems, and for a whole array of creditors

9   who really had no other recourse to get a recovery, and

10  certainly a recovery of this magnitude and in this time period

11  through an efficient process.

12          And to that extent I think the bankruptcy system

13  deserves to be recognized as a very constructive system that is

14  pretty unique to this country and I know has become a model

15  elsewhere.  But this is a case that I think does deserve some

16  acknowledgment.

17          So to that end, I'm pleased to be able to be part of

18  it and I certainly support the Court entering the confirmation

19  order and hopefully going effective, as Mr. Lee indicated,

20  before December 24th.  Actually our hope is to go effective as

21  early as next week, Tuesday or Wednesday.  And so in the event

22  the Court is prepared to enter the order and waive the stay,

23  our plan will be to implement the effective date next week.

24          So we thank you, Your Honor, again.  We appreciate all

25  of the support from the Court.

1          THE COURT:  Thank you, Mr. Eckstein.

2          Anybody else want to speak in support of confirmation

3   of the plan?  Mr. Uzzi?

4          MR. UZZI:  Good morning, Your Honor.  Gerard Uzzi of

5   Milbank, Tweed, Hadley & McCloy on behalf of the ad hoc group

6   and UMB Bank.

7          Your Honor, just briefly for the record, I submitted a

8   declaration relating to the votes.  That's coming into the

9   record, I think, as an attachment --

10          THE COURT:  An attachment.

11          MR. UZZI:  -- to -- what I'll say -- Mr. Marinuzzi's

12   declaration.  I'll note for the record that Mr. Shore had to

13   restrain himself from wanting to cross-examine me on that

14   declaration.

15          Your Honor, I rise only to give --

16          THE COURT:  I'm glad to see he's showing restraint

17   about something.

18          MR. UZZI:  Your Honor, I rise just simply in the event

19   that you have any questions of me regarding the settlement.  I

20   think there's been enough said on the record, but I did want to

21   give you the opportunity to ask me any questions you may have.

22          THE COURT:  I don't have any questions for.  Thank

23   you, Mr. Uzzi.

24          MR. UZZI:  Thank you, Your Honor.  And we thank your

25   staff as well.

1           THE COURT:  All right.  Anybody else want to speak in

2    support of the plan?

3           Anybody wish to speak in opposition to confirmation of

4    plan?

5           I see no one.  All right.

6           Pending before the Court is the seconded amended joint

7    Chapter 11 plan as modified, proposed by Residential Capital

8    and the official committee of unsecured creditors.  And that's

9    at ECF 6030.

10          Confirmation of the plan of liquidation in this

11   case -- and liquidation is what the result will be -- will

12   enable creditors to begin receiving some payments on the

13   billions of -- or hundreds of billions of losses they've

14   suffered.

15          The Court is going to enter detailed findings of fact

16   and a confirmation order that address in detail the facts and

17   the law that support confirmation of the proposed plan of

18   liquidation.  I don't intend to review on the record today the

19   facts and the law that, in the Court's view, easily support

20   approval of the plan.  I do, however, want to speak about some

21   aspects of this case.

22          The creditors in this case range from borrowers who

23   were threatened with or who in fact lost their homes to

24   foreclosure.  And I list them first because no one should lose

25   sight of the effect of this case and of the mortgage crisis

1    generally on homeowners and borrowers.

2         In addition to the borrowers, the creditors including

3    investors in residential mortgage-backed securities sponsored

4    by the debtors, and recognize that the investors included

5    pension funds as well as large financial institutions in the

6    United States and in other countries.  They included banks and

7    funds and insurance companies that held or insured billions of

8    dollars in face amount of secured and unsecured loans or bonds

9    made to the debtors or to securitization trusts that the

10   debtors established.  They also include the government-

11   sponsored enterprises, such as Fannie Mae and Freddie Mac.

12        All of these creditors will begin to receive

13   recoveries through the plan.  Few will feel that they've

14   recovered all that they believe they should receive, but it's

15   rare, if ever, that occurs.

16        This case is certainly the most legally and factually

17   complex case that I've presided over in my seven years on the

18   bench.  And absent the consensual agreements among very diverse

19   and often antagonistic creditor constituencies reflected in the

20   plan that is before the Court today, many more years of

21   litigation likely would have ensued without a single dollar

22   being returned to creditors and at a cost of hundreds of

23   millions of additional dollars of expense that would have been

24   paid to lawyers and not to ResCap's creditors.

25        With well-developed bodies of bankruptcy and

RESIDENTIAL CAPITAL, LLC, ET AL.                    44

1  nonbankruptcy law, I'm often struck by how many difficult legal

2  issues have remained unsettled in this case and how good

3  lawyers can and do often find persuasive arguments in support

4  of diametrically opposed results.  ResCap presented more

5  unsettled legal issues than I've seen in one case before,

6  whether during my seven years on the bench or thirty-four years

7  in law practice before that.

8          Since the case has filed in May 2012, the Court has

9  issued twenty-five written opinions and countless orders

10  resolving both large and small disputes.  Twenty-six adversary

11  proceedings were filed, many now resolved through the plan of

12  liquidation, some resolved through prior decisions of the

13  Court.  Even after confirmation of the plan there will, no

14  doubt, be more issues requiring resolution by the Court.

15          Our bankruptcy process works best when the diverse

16  constituencies in a case recognize that a consensual resolution

17  benefits everyone.  In ResCap, in my view, it took too long for

18  some constituencies to acknowledge that reality.

19          Through the tireless efforts of my colleague Judge

20  James Peck as the Court appointed mediator in the case, and the

21  good-faith arm's-length efforts by most of the diverse parties

22  represented by skilled counsel, a consensual agreement, a

23  nearly global settlement was achieved last spring.

24          The global settlement that is the cornerstone of the

25  plan of liquidation reflected creative solutions to seemingly

1  intractable problems that resolved most of the issues in the

2  case.

3          There are, no doubt, important lessons that can be

4  learned from how the combination of active ongoing litigation

5  with very tight deadlines that I've imposed on everybody, and

6  simultaneous mediation by a skilled mediator who had the

7  respect of all parties, led in the end to a largely consensual

8  agreement.  But that's the subject for other days and other

9  forums.

10         While the global settlement incorporated in the plan

11 resolved many or most important issues that had to be resolved

12 before a plan can be confirmed, difficult issues remained

13 unresolved.  The main protagonist in the ongoing disputes has

14 been the ad hoc group of junior secured noteholders.

15         And let me make clear that most, but not all, of the

16 issues the JSNs raised were serious, legal and factual that

17 could (sic) and were pressed by their able counsel in good

18 faith.  It is also important to recognize that the ad hoc group

19 did not remain static during the case. Its composition changed

20 through claims trading or otherwise.

21         Let me also make clear that the Court approached every

22 legal and factual issue that I was asked and was required to

23 resolve, solely on the merits of the arguments, whether the

24 resolution favored the ad hoc group or the plan proponents.

25         With that said, I'm firmly convinced that the result

1  before me today could have been achieved many months ago with

2  cost savings for the parties of probably more than a hundred

3  million dollars, a staggering sum.  I have commented before

4  that the contest-everything-and-concede-nothing approach is

5  unfortunate.

6         The result I have before me today is a plan that has

7  now achieved nearly unanimous support.  While more than a dozen

8  parties initially filed objections to the plan, that's a small

9  number in itself; and that's a testament to the overwhelming

10 support of the plan.  As of today only a handful of objections

11 remain outstanding.

12        The Court overrules each of the remaining objections

13 for the reasons that will be explained in detail in the

14 findings of fact and confirmation order and that I'll address

15 briefly in a few minutes.

16        Before their bankruptcy filings on May 14th, 2012, the

17 debtors business operations included originating and servicing

18 mortgage loans for investors.  The debtors were once the

19 nation's fifth largest mortgage servicer.  The debtors

20 brokered, originated, bought, sold and securitized residential

21 mortgage loans throughout the United States.  And they serviced

22 residential loans throughout the U.S. for itself, for Ally Bank

23 and other investors in residential loans and in residential

24 mortgage-backed securities.

25        On the petition date, the debtors' principal assets

1  consisted of their mortgage servicing and origination

2  platforms, mortgage servicing rights and associated advances,

3  held-for-sale mortgage loans, held-for-investment mortgage

4  loans, claims with respect to government insured loans and

5  derivative assets.

6          Through the successful bankruptcy -- through the

7  successfully bankruptcy court authorized auction sales of their

8  major assets, the debtors were able to sell their main

9  businesses on a going-concern basis for approximately four and

10 a half billion dollars.

11         The sales benefited the estates' creditors, the

12 employees that gained employment with the successful buyer of

13 the mortgage servicing business.  It benefitted the borrowers

14 and mortgage loan investors, insurers and government-sponsored

15 agencies, because mortgage loans continued to be serviced with

16 little or no disruption.

17         The debtors' business problems were not unique.  Like

18 many other participants in similar business, the debtors were

19 hit hard by the 2008 economic crisis.  One only has to read the

20 newspapers almost on a daily basis today to see the ongoing

21 effects of that crisis for banks and borrowers and others.

22         ResCap tried unsuccessfully to fix its problems

23 without filing for bankruptcy, but those efforts were

24 unsuccessful.  What ResCap was able to achieve that many other

25 similar businesses were not able to achieve was to avoid a

RESIDENTIAL CAPITAL, LLC, ET AL.                    48

1   free-fall into bankruptcy.

2          The debtors and their parent company Ally financial

3   and their legal and financial advisors deserve credit for that

4   accomplishment, which was no easy feat in the circumstances.

5          I'm not going to recount the entire history of this

6   case with the pre-petition plan support agreement, that had

7   little support once this case began, other than from those

8   important constituencies that signed onto that agreement.

9   Suffice it to say that the debtors were successful in

10  continuing business as a going concern after filing for

11  bankruptcy.

12         The debtors, with the support from virtually all

13  creditor constituencies, were able successfully to market, sell

14  and close the sales of their major assets.  They were able to

15  gain support and forbearance from the RMBS investors and

16  trustees, from the GSEs, from monoline insurers and others and

17  allow the case to move forward.

18         The management of the debtors and their nondebtor

19  parent AFI also faced serious credibility issues, whether

20  deserved or not, after the bankruptcy case was filed.  That

21  made it very difficult to engage in the necessary serious

22  negotiations that were required to arrive at a consensual plan.

23         The appointment of Lewis Kruger, a respected

24  bankruptcy lawyer with fifty years of experience, as the CRO,

25  and the appointment of Judge Peck as the mediator, marked

1    important events that enabled this case to move forward.

2         The able lawyers representing the debtors, the

3    creditors' committee, AFI, the RMBS investors and the RMBS

4    trustees and other constituencies, obviously with the agreement

5    of their clients, ultimately made agreement on this plan

6    possible.

7         As I've already said, the global settlement embodied

8    in the plan resolves numerous difficult issues.  Applying the

9    standards bankruptcy courts are required to apply in

10   determining whether to approve a settlement, including a

11   settlement embodied in the plan, the Court concludes, as will

12   be set out in detail in the findings, that the settlement

13   should be and is approved.

14        So to, with the settlement with the JSNs now embodied

15   in the plan that I'm confirming today.

16        The Court also concludes that each of requirements for

17   confirmation of the plan is supported by the Court's specific

18   factual findings and applicable legal principles.

19        There are six unresolved borrower -- well, I think

20   five of the six are borrowers -- there's six unresolved

21   objections to confirmation in the plan, which the Court now

22   expressly overrules.

23        These objections were filed by Kevin C. Kovacs, ECF

24   5264; David Munger at ECF 5273; Caren Wilson at 5409; Richard

25   Rode at 5414; Paul M. Pappas, II, at ECF 5466; and Deborah

1  Bennett at ECF 5522.

2          The objections filed by Mr. Pappas and Ms. Bennett

3  were filed after the objection deadline of October 21, 2013 at

4  4 p.m. prevailing Eastern Time, and those individuals neither

5  requested an extension from the plan proponents nor received

6  authorization from the Court to file objections after the

7  deadline.

8          The Court overrules those late-filed objections.

9          The objections by Ms. Wilson, Mr. Rode and Mr. Pappas

10  were joinders to the now withdrawn objection filed by Wendy

11  Alison Nora.  Her objection was at ECF 5398 and the withdrawal

12  of the objection is at 5754.  None of the individuals who filed

13  joinders presented any evidence bearing on confirmation, and

14  only one of them, Mr. Rode, actively participated in the

15  confirmation hearing.

16          The Court notes that Ms. Nora withdrew her objection,

17  which raised four issues, none persuasive.

18          As discussed more fully in the Court's findings of

19  fact, the Court finds that the plan was proposed in good faith,

20  the plan complies with the requirements of Bankruptcy Code

21  Section 1125, including adequate notice of the confirmation

22  proceedings.  The plan appropriately treats borrower claims as

23  a separate class of general unsecured claims and provides

24  adequate funding of the borrowers' claim trust.  And third-

25  party relies under the plan are justified under the exacting

1   standards applicable in the Second Circuit and therefore will

2   be granted.

3           Based on these findings the Court overrules the

4   remaining objections, including in the joinders to the now

5   withdrawn Nora objection.

6           As I've said, the individuals who have filed the

7   unresolved borrower-related objections, Kovacs, Munger and

8   Bennett did not actively participate in the confirmation

9   hearing, nor did they present any evidence bearing on

10  confirmation.

11          Mr. Kovacs filed a proof a claim against the debtors,

12  it was claim number 1275; that was expunged pursuant to the

13  order granted in debtors fiftieth omnibus objection to claims

14  no-liability borrower claims books and records.  That's at ECF

15  5892.  Therefore, Mr. Kovacks no longer has a claim against the

16  debtors and his objection is overruled.

17          Mr. Munger and Ms. Bennett have not filed any claims

18  against the debtors' estates, nor is there any evidence that

19  they hold any claims against Ally.  The Court has reviewed each

20  of their objections and find that they do not articulate any

21  specific basis for denying confirmation of the plan.  The Court

22  overrules both of their objections.

23          Since the plan satisfies all of the Bankruptcy Code's

24  requirements under 1129 for confirmation of a plan and there

25  are no remaining unresolved objections, and the plan enjoys

RESIDENTIAL CAPITAL, LLC, ET AL.                    52

1  nearly unanimous support from diverse creditor constituencies

2  in this very large and complicated case, the Court is pleased

3  to confirm the debtors' plan of liquidation.

4          We are adjourned.

5      (Whereupon these proceedings were concluded at 11:04 AM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                        I N D E X

3

4                                  E X H I B I T S

5   DEBTORS'               DESCRIPTION        PAGE

6   --                     Lewis Kruger's     17

7                          supplemental

8                          declaration

9   --                     Mr. Marinuzzi's    20

10                         declaration

11

12                                 RULINGS

13                                           Page      Line

14  All remaining plan confirmation objections   46        13

15  are overruled.

16  Global settlement is approved               49        14

17  Settlement with JSNs is approved            49        15

18  Debtors' plan is confirmed.                 52         4

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10

11   _____

PENINA WOLICKI

12

13   AAERT Certified Electronic Transcriber CET**D-569

14

15   eScribers

16   700 West 192nd Street, Suite #607

17   New York, NY 10040

18

19   Date:  December 12, 2013

20

21

22

23

24

25