**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
Marc B. Roitman
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:   (212) 541-5369

*Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**REPLY IN SUPPORT OF FINAL APPLICATION OF CHADBOURNE &
PARKE LLP, COUNSEL TO THE EXAMINER, FOR ALLOWANCE
OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Chadbourne & Parke LLP ("Chadbourne"), as counsel to the Court-appointed Examiner (the "Examiner") in the Chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), respectfully submits this reply in support of its Final Application for Allowance of Compensation and Reimbursement of Expenses [Docket No. 5849] (the "Application").  In support of the Application, and in reply to the Limited Objection of the Official Committee of Unsecured Creditors [Docket No. 6050] (the "Committee Objection"), Chadbourne states as follows:

I. **The Committee's Request To Adjourn The Final Hearings On The Examiner's Professionals' Fee Applications Has Already Been Denied By This Court And Is Meritless**[1]

1. By letter to the Court dated December 3, 2013 [Docket No. 5994] (the "Committee Letter"), the Official Committee of Unsecured Creditors (the "Committee") requested that the hearing on the final fee applications of the Examiner's professionals be adjourned until the hearing on "final fee applications for all other estate professionals." Committee Letter, at 1.[2] The Committee Letter sought exactly the same relief the Committee now seeks again. It asked that the final fee applications of the Examiner's professionals be heard only on an interim, and not a final, basis. Committee Letter, at 2 ("adjourning the Examiner Professionals' final fee applications will *not preclude interim approval* of their remaining fees and expenses at the [December 17, 2013] fee hearing") (emphasis added).

2. The Examiner (through his counsel, Chadbourne) replied by letter to the Court dated December 4, 2013 [Docket No. 6002] (the "Examiner Letter"), explaining why consideration of the Examiner's professionals' fee applications on a final (not interim) basis at the December 17, 2013 hearing is appropriate. *See* Examiner Letter, at 1–2; *see also* Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 797] (the "Fee Procedures Order") at 6–7 (describing required notice on final fee applications and determining "that notice given in accordance with this paragraph is

---

[1] The Examiner has reviewed and approved this Reply. The Examiner has instructed Chadbourne to advise the Court that, to the extent the Court grants the Committee's request to defer consideration of final fee applications, the Examiner requests that his final fee application [Docket No. 5850] be considered at the same time as the final fee applications of the Examiner's professionals even though the Committee has not sought to defer consideration of his application. The Examiner's professionals Mesirow Financial Consulting, LLC, Wolf Haldenstein Adler Freeman & Herz LLP, and Leonard, Street and Deinard have advised Chadbourne that they join Section I of this Reply and adopt the arguments set forth herein.

[2] The Committee Letter, as well as the Examiner Letter and the Order Denying Committee Request (each defined below) are annexed hereto as Exhibits A, B, and C, respectively.

2

deemed sufficient and adequate and in full compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court").

3. The Court, "[a]fter considering the arguments in support of and in opposition to the requested adjournment," denied the Committee's request and ordered that "the hearing on the final fee applications of the Examiner's professionals" would "go forward as scheduled." *See* Order Denying Request to Adjourn Fee Applications of the Examiner and His Professionals [Docket No. 6003] (the "<u>Order Denying Committee Request</u>"). The Court could not have been clearer in denying the Committee's request.

4. While the Committee claims to "recognize" the Court's ruling, it now seeks *the same relief* the Court denied just last week: to "defer final approval of each of the Examiner Professionals' final fee requests until the final fee applications of all other estate professionals are filed and heard . . . ." Committee Objection, at 8. The Committee's attempt to re-litigate the very issue it just pursued and lost should be denied.[3]

5. The issue before the Court is the reasonableness of the fees requested by the Examiner and his professionals. Bankruptcy Code section 330 provides, in relevant part:

> In determining the amount of reasonable compensation to be awarded to an examiner, . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including . . . whether the services were necessary to the administration of, or beneficial *at the time at which the service was rendered* toward the completion of, a case under this title . . . .

11 U.S.C. § 330(a)(3)(C) (emphasis added).

---

[3] The Committee has failed to seek relief either under Rule 59(e) of the Federal Rules of Civil Procedure (made applicable here by Bankruptcy Rule 9023) for approval of a motion to amend the Order Denying Committee Request, or under Rule 60 of the Federal Rules of Civil Procedure (made applicable here by Bankruptcy Rule 9024) for relief from that order. Further, it has failed to allege any facts that would have supported relief under either of the aforementioned rules.

3

6. The Court must therefore determine the reasonableness of the Examiner's professionals' requested compensation "at the time at which the service was rendered," which in this case was during the Examiner's investigation. The Examiner was appointed on July 3, 2012 and filed his report on May 13, 2013. On September 24, 2013, the Court discharged the Examiner and his professionals from any further duties. *See* Order Approving Examiner's Motion for Entry of Order Granting Discharge from Duties, Relief from Discovery, Approval of Disposition of Investigative Materials, and Exculpation in Connection with Duties [Docket No. 5187] (the "Discharge Order"). Neither the Examiner nor his professionals have a continuing role in these cases.[4] There is simply no reason to delay consideration of the final fee applications of the Examiner's professionals pending the overall resolution of the chapter 11 case, a matter in which the Examiner and his professionals have no role. Neither section 330 (nor any other provision) of the Bankruptcy Code nor the Fee Procedures Order suggests that timely final fee applications by the Examiner's professionals should or must be delayed pending review by a non-statutory "Liquidating Trust."

7. The Committee writes that it "continues to believe" that the Examiner's professionals' final fee applications should be considered at the same time as the applications of other estate professionals, at the conclusion of the case. Committee Objection, at 5. The Committee states that "[o]nly once the cases are complete and upon analysis of all final fee

---

[4] In relation to Chadbourne's reservation of rights to seek additional fees and expenses from November 1, 2013 through the effective date, the Committee requests that the Court require Chadbourne to provide an estimate of any such additional fees or expenses. Committee Objection, at 8. The reservation of rights is entirely consistent with the Discharge Order, which provides that the "Examiner and his Professionals shall be entitled to reimbursement of any reasonable fees and expenses (including professional fees and expenses) in connection with any cooperation, assistance, responses (to discovery requests or otherwise), or other services they provide pursuant to or relating to this Order . . . ." Discharge Order, at 4. Neither the Examiner nor Chadbourne can predict the future actions of third parties with respect to discovery requests directed to the Examiner or otherwise. The Committee's request in that regard should be denied.

4

applications" can the Committee "obtain a complete picture of the *scope of issues handled*" by the Examiner's professionals. Committee Objection, at 6–7 (emphasis added). But the Committee refuses to acknowledge that the scope of the Examiner's investigation was established by the Court (by order dated July 27, 2012 [Docket No. 925] (the "Scope Order")) only after the Examiner met and conferred with various parties in interest, including the Committee, and that the Scope Order (which was approved by the Committee) included the very broad range of issues the Committee itself proposed for investigation in its Rule 2004 motion. *See* Examiner Report, at Section I.A.

8.  The Committee's position that review of the Examiner's professionals' fees requires a view of the "the context of the cases as a whole" should not be countenanced. Indeed, if the Court were to adopt the view that the outcome of a case should be considered in assessing the reasonableness of the fees of an examiner's professionals—as an additional factor to those set forth in Bankruptcy Code section 330—it would set a precedent that could undermine the independence of future examiners.

9.  Courts generally grant final compensation to examiners' professionals in advance of other estate professionals. *See, e.g.*, *In re Dynegy Holdings LLC*, Case No. 11-38111, Docket No. 1479, 1526, 1529 (Bankr. S.D.N.Y. 2013) (order allowing final compensation of examiner's counsel entered September 3, 2013; applications of debtors' counsel and creditors' committee's counsel filed November 27, 2013 and remain pending); *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555, Docket Nos. 27571, 32607, 32694 (Bankr. S.D.N.Y. 2012) (order allowing final compensation of examiner's counsel entered April 24, 2012; orders allowing final compensation of debtors' counsel and creditors' committee's counsel entered in December 2012); *In re Tribune Co.*, Case No. 08-13141, Docket Nos. 6077, 13634 (Bankr. D. Del. 2010, 2013) (order allowing

final compensation of examiner's counsel entered October 22, 2010; order allowing final compensation of debtors' counsel and creditors' committee's counsel entered June 24, 2013); *In re Washington Mutual Corp.*, Case No. 08-12229, Docket Nos. 10258, 10476 (Bankr. D. Del. 2012) (order allowing final compensation of examiner's counsel entered June 5, 2012; order allowing final compensation of debtors' counsel and creditors' committee's counsel entered August 1, 2012); *In re SemCrude, L.P.*, Case No. 08-11525, Docket Nos. 5901, 6842, 7872 (Bankr. D. Del. 2009, 2010) (order allowing final compensation of examiner's counsel entered October 1, 2009 and revised order entered December 17, 2009; order allowing final compensation of debtors' counsel and creditors' committee's counsel entered June 25, 2010); *In re DVI, Inc.*, Case No. 03-12656, Docket Nos. 2767, 3101, 3095–96 (Bankr. D. Del 2004, 2005) (order allowing final compensation of examiner's counsel entered November 17, 2004; orders allowing final compensation of debtors' counsel and creditors' committee's counsel entered March 28, 2005).

10. The Examiner and his professionals do not dispute that the requested compensation in this case is "significant" and merits "careful examination." Committee Objection, at 7. But the Examiner's professionals are hardly "insisting on a hasty review." *Id*. The Examiner and his professionals did not request an expedited hearing date, but rather filed their applications on the notice prescribed by the Fee Procedures Order, waited for the next scheduled fee hearing, and simply sought a final determination of the Court under Bankruptcy Code section 330, exactly as required by the Fee Procedures Order.

11. The Committee has had ample opportunity to review all of the compensation requested by the Examiner and his professionals in the final fee applications. On June 27, 2013, a substantial unsecured creditor whose indenture trustee serves on the Committee, and who has

been coordinating with the Committee on fee issues (the "Major Creditor"), asked the Examiner to meet with its representatives and Committee representatives to discuss the Examiner's professionals' fees and expenses, and the Examiner agreed to do so. Thereafter, a meeting was scheduled to take place in July 2013 but, because of the unavailability of one of the participants, it was put off without setting a date. The meeting was postponed and subsequently rescheduled for November 5, 2013. In the interim, on September 24, 2013, the Court ordered "that the Examiner and his Professionals shall file final applications for compensation and reimbursement of expenses incurred prior to the entry of this Order . . . ." Discharge Order, at 4. The Examiner specifically informed the Major Creditor on October 17, 2013 that the Examiner and his professionals would seek approval of final fee applications at the December 2013 fee hearing. The Examiner told the Major Creditor that he wanted to advise it of this proposed timing so there would be no surprises. On October 18, 2013, the Examiner was asked to meet with the Major Creditor and Committee representatives, including a representative of Quest Turnaround Advisors, LLC ("Quest"), which has been retained as a consultant to the Committee during these cases and which will serve as consultant to the ResCap Liquidating Trust, and he agreed to do so. On November 5, 2013, the Examiner met with the Major Creditor and Committee representatives, including a representative of Quest, and provided information regarding the compensation requested by the Examiner's professionals. The Examiner thereafter provided the Major Creditor and the Committee representatives with all the additional information they requested, and no further requests have been received.[5] The Examiner and his professionals filed their final fee applications on November 18, 2013, giving any party wishing to review the final

---

[5]    See Declaration of Arthur J. Gonzalez, as Examiner (the "Examiner Declaration"), annexed hereto as Exhibit D.

7

fee applications twenty-one days before the December 9, 2013 objection deadline, precisely as required by the Bankruptcy Code and the Fee Procedures Order.

12. Furthermore, as the Committee acknowledges, over 90% of the total fees requested by the Examiner's professionals have already been considered and provisionally approved by the Court at interim fee hearings.[6] The Court and the United States Trustee have already performed a thorough review of over 90% of the requested fees, and adjustments and reductions have been made to those fee requests. As the Court recently stated on the record in the *MF Global* case, the Court "spen[ds] a lot of hours toiling over interim fee applications before they get approved." *See* Transcript of Hearing at 16:24–17:19, *In re MF Global Holdings, Ltd.*, No. 11-15059 (Bankr. S.D.N.Y. Oct. 29, 2013). The Committee and other parties in interest had an opportunity to weigh in as well. Given that the Committee "regularly reviewed the interim fee requests of all estate professionals," *see* Committee Objection, at 5, the Committee must have taken note of any concerns with the Examiner's professionals' fee requests. Accordingly, if the Committee had any such concerns, it could have raised them with the Court. The Committee chose not to do so.

13. The Committee Objection selectively compares the fees of the Examiner's professionals to those incurred by examiners' professionals in certain other cases involving much narrower scopes of investigation. Committee Objection, at 7 n.5. Nobody disputes that the Examiner's professionals' fees are significant. But the fees and expenses incurred in ***any*** examination are a function of the court-ordered scope.[7] In this case, the scope of the Examiner's

---

[6] The Examiner and his professionals have also served monthly fee statements on various parties in interest, including the Committee, giving an additional opportunity for review.

[7] The Committee failed to mention the fees and expenses approved by bankruptcy courts for examiners' professionals in the two cases most closely comparable to this one. In *In re Enron Corp.*, the examiner's counsel incurred over $85.6 million in fees and expenses during an eighteen-month investigation that concluded

investigation, as specifically requested by the parties in interest, including the Committee, was exceptionally broad and encompassed a review of every significant event and transaction involving the Debtors over a period of almost ten years. To aid the Examiner in the performance the investigation, the Examiner's professionals gathered and analyzed almost nine million pages of documents produced by twenty-three different parties, conducted ninety-nine formal interviews of eighty-three witnesses, met on approximately sixty-six occasions with various parties in interest, and had an ongoing dialogue with ResCap and its advisors and various other parties. *See* Examiner Report, at Section I.C. The Examiner Report was issued in nine sections and, with the appendices, totals over 2,200 pages. The Committee cannot now question the scope of the examination or the magnitude of an undertaking that it itself helped to frame.[8]

14. No party has suggested that the Examiner did not discharge his duties fully and completely. Indeed, the single substantive objection to the final fee applications of the Examiner's professionals (the United States Trustee's objection, which was resolved consensually) related to only a small fraction of the Examiner's professionals' fee and expense requests. The Examiner's professionals' requested fees are significant, but certainly reasonable under the circumstances of this case.

---

(Cont'd from preceding page)

at a time when $600 per hour was the highest billing rate for any of the examiner's attorneys. *See In re Enron Corp.*, Case No. 01-16034, Docket No. 28924 (Bankr. S.D.N.Y. Jan. 25. 2006). At current prevailing rates, the *Enron* examiner's counsel's fees would have been well in excess of that amount. In *In re Lehman Bros. Holdings Inc.*, the total cost of the one-year examination was approximately $102.3 million. *See In re Lehman Bros. Holdings Inc.*, Case No. 08-13555, Docket No. 27571 (Bankr. S.D.N.Y. Apr. 24, 2012) (approving fees of examiner and his counsel); *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555, Docket No. 23413 (Bankr. S.D.N.Y. Dec. 16, 2011) (approving fees of financial advisor). It is meaningless to compare fees incurred in the broad-ranging investigations in this case, *Lehman*, and *Enron* with the fees incurred in the much narrower investigations in cases like *Extended Stay, Tribune, SemCrude*, and *Dynegy*. Although *Enron* and *Lehman* involved much larger estates than ResCap, it is the complexity, scope, and breadth of an examiner's court-ordered mandate, and not the size of the estate, that dictates the cost of an examination.

[8] The Court observed that the investigation was "an enormous undertaking." Order Denying Oral Application By Ally Financial Inc. To Clawback Documents Produced By Cerberus To The Examiner [Docket No. 3516] at 2.

**II.     United States Trustee Objection**

15.    The Omnibus Objection of the United States Trustee [Docket No. 6047], as it relates to the Application, has been consensually resolved based on an agreed-upon reduction in compensation.

WHEREFORE, for all the foregoing reasons, Chadbourne requests that the Court grant the relief requested in the Application, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        December 13, 2013

**CHADBOURNE & PARKE LLP**

By: */s/ Howard Seife*
    Howard Seife
    David M. LeMay
    Marc B. Roitman
    30 Rockefeller Plaza
    New York, New York 10112
    Telephone:  (212) 408-5100
    Facsimile:   (212) 541-5369

*Counsel to the Examiner*