Hearing Date:  December 17, 2013 at 10:00 a.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- )
In re:                                                           )   Case No. 12-12020 (MG)
                                                                 )
RESIDENTIAL CAPITAL, LLC, et al.,                                )   Chapter 11
                                                                 )
                            Debtors.                             )   Jointly Administered
---------------------------------------------------------------- )

**DEBTORS' SECOND SUPPLEMENTAL OMNIBUS REPLY IN SUPPORT OF
DEBTORS' THIRTIETH OMNIBUS OBJECTION TO CLAIMS
(NO LIABILITY BORROWER CLAIMS – BOOKS AND RECORDS)**

Residential Capital, LLC (ResCap) and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby submit this second supplemental omnibus reply (the "Second Supplemental Reply") to that certain response (the "Response") interposed by claimant Gwendell L. Philpot [Docket No. 5233] to the *Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)* [Docket No. 4887] (the "Objection").  The Second Supplemental Reply also addresses that certain sur-reply filed by claimant M. Francine Modderno on November 18, 2013 (the "Sur-Reply") [Docket No. 5882] in response to the *Debtors' Supplemental Omnibus Reply in Support of Debtors' Thirtieth Omnibus Objection to*

ny-1116234

*Claims (No Liability Borrower Claims – Books and Records)* [Docket No. 5728] (the "Supplemental Reply"). In support of the Second Supplemental Reply, the Debtors submit the Third Supplemental Declaration of Deanna Horst, ResCap's Chief Claims Officer, annexed hereto as Exhibit 2 (the "Third Supplemental Declaration"). In further support hereof, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Debtors examined the Response and the Sur-Reply and any exhibits submitted in support thereof. The Debtors also examined their books and records and found no liability with respect to the claims asserted by Mr. Philpot and Ms. Modderno. A copy of Mr. Philpot's proof of claim number 5067 (the "Philpot Claim") and Ms. Modderno's proof of claim number 4866 (the "Modderno Claim") are attached hereto as Exhibit 1.

2. If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co., L.P. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002). Mr. Philpot and Ms. Modderno each fail to provide a sufficient explanation as to why their respective claims represents valid claims that should be allowed against the Debtors.

3. With respect to the Philpot Claim, the Debtors' books and records show that (i) contrary to Mr. Philpot's assertions, the Debtors did not receive an online payment from Mr. Philpot on or around September 30, 2008 and (ii) the Debtors did not receive payments from Mr. Philpot for the months of August 2008 through the foreclosure sale in February 2013. The

2

ny-1116234

Debtors' books and records further show that the Debtors attempted to work with Mr. Philpot to achieve a loan modification in August 2009, May 2010 and December 2010; however, such loan modifications were ultimately unsuccessful due to Mr. Philpot's failure to execute and/or return the necessary loan modification documents. Moreover, the Debtors' books and records demonstrate that the Debtors referred Mr. Philpot's loan for foreclosure on or about October 2008, May 2009 and February 2010, but such referrals were closed due to Mr. Philpot's bankruptcy, a repayment plan or loan modification activity, respectively. Despite numerous attempts to work with Mr. Philpot to resolve his payment issues, Mr. Philpot's property was eventually sold through a foreclosure sale on February 20, 2013.

4. With respect to the Modderno Claim, the Debtors contend that the information set forth in the Supplemental Reply adequately address the issues raised by Ms. Modderno in the Sur-Reply.

5. Accordingly, the relief sought in the Objection should be granted with respect to the Philpot Claim and the Modderno Claim.

## BACKGROUND

6. In connection with the claims reconciliation process, the Debtors identified certain claims filed by Borrowers[1] that either (i) contradict the information in the Debtors' books and records and/or (ii) fail to establish a liability reflected in the Debtors' books and records (together, the "No Liability Borrower Claims").

7. After consulting with SilvermanAcampora LLP, special borrowers' counsel to the official committee of unsecured creditors ("Special Counsel"), the Debtors sent Request Letters to those Borrowers who filed the No Liability Borrower Claims with insufficient

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in each Objection.

3

ny-1116234

or no supporting documentation requesting additional documentation in support of such claims. The Request Letters required the claimant to substantiate the legal and factual reasons as to why the claimant believes he or she is owed money or is entitled to other relief from the Debtors. The claimant was required to provide copies of any and all documentation that they believe supports the basis for his or her respective claim. After reviewing the Philpot Claim and the Modderno Claim, the Debtors determined that they were not required to send Request Letters to Mr. Philpot or Ms. Modderno seeking additional information because the Philpot Claim and the Modderno Claim provided sufficient detail such that the Debtors could understand, research and respond to the allegations respectively set forth therein. See Third Supplemental Declaration at ¶ 3.

## REPLY

8.  A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Moreover, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1). Furthermore, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor. Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

9.  Upon review of the Response and the Sur-Reply and as explained in further detail below, in the Supplemental Reply and in the Third Supplemental Declaration, the Debtors conducted an exhaustive examination of their books and records to assess the allegations made in the Philpot Claim, the Modderno Claim, the Response and the Sur-Reply.

**A.    Gwendell L. Philpot (Claim No. 5067)**

10.  The Philpot Claim, which was filed as a general unsecured claim in the amount of $630,000.00, relates to Mr. Philpot's mortgage note, which secured a loan (the

"Philpot Loan") that was originated by Homecomings Financial Network on December 4, 2000. See Third Supplemental Declaration at ¶ 4. Bank of New York, as trustee for the RASC Series Trust, is the investor for the Philpot Loan. See id. On July 1, 2009, GMAC Mortgage, LLC ("GMACM") began servicing the Philpot Loan for Bank of New York. A foreclosure sale was held with respect to Mr. Philpot's property on February 20, 2013, and the property was in real estate owned ("REO") status as of that date. See id. On September 1, 2013, servicing of the Philpot Loan was transferred to Ocwen Loan Servicing, LLC. See id.

11. The Debtors initially believed that the Philpot Claim related to a prior class action litigation regarding the ability of MERS to foreclose on Mr. Philpot's home. See id. at ¶ 6. However, upon further review of the Philpot Claim and the Response, the Debtors now understand the Philpot Claim to be based on Mr. Philpot's loss of equity and income relating to the Debtors' alleged error in payment processing in September 2008. See id. Mr. Philpot asserts that he had an agreement with GMACM and ResCap that allowed him to be thirty (30) days late on his payments toward the Philpot Loan. See Philpot Claim at 1. Mr. Philpot further asserts that due to an error with the Debtors' systems, Mr. Philpot's payments were not properly reflected, which ultimately led to the foreclosure of Mr. Philpot's property and Mr. Philpot's loss of a business loan. See id.

12. The Debtors reviewed Mr. Philpot's payment history and the Debtors' internal servicing notes. See Third Supplemental Declaration at ¶ 7. Based on such review, the Debtors determined that their books and records do not reflect any payment being received from Mr. Philpot in connection with the Philpot Loan on or around September 30, 2008. See id.

13. In addition, the Debtors' servicing notes reflect that Mr. Philpot, on October 3, 2008, contacted the Debtors and reported that he made an online payment on

5

September 30, 2008, including a speedpay fee, and that such payment was not recognized by the Debtors. See id. at ¶ 8. The Debtors reviewed Mr. Philpot's payment history and did not find any record of such payment within their system. See id. Also, on October 3, 2008, Mr. Philpot requested that he be allowed to make a replacement payment and that such payment be backdated to September 30, 2008. See id. According to the Debtors' books and records, the Debtors informed Mr. Philpot that they were unable to grant his request to backdate the payment. See id.

        14.     The Debtors' books and records further reflect that on October 7, 2008, Mr. Philpot contacted the Debtors and again asserted that he made an online payment on September 30, 2008. See id. at ¶ 9. The Debtors advised Mr. Philpot to contact his bank to determine whether such alleged payment had been deducted from his account. See id. The Debtors also advised Mr. Philpot that if he was able to obtain information regarding the date that a payment was processed from his bank account, then he could contact the Debtors at a specific telephone number so that further research could be done regarding the alleged payment. See id.

        15.     On October 9, 2008, Mr. Philpot contacted the Debtors and again requested to make a payment with a retroactive effective date of September 30, 2008. See id. at ¶ 10. Mr. Philpot was informed that his payment could not be backdated, and was also advised that, if a payment was made within a few days of October 9, 2008, then the Debtors could amend Mr. Philpot's credit report to show that the payment was received within sixty (60) days due to a Voice Recognition Unit error. See id. The Debtors did not receive a payment from Mr. Philpot. See id.

        16.     Moreover, the Debtors' books and records show that 4.5 years of payments remained due and owing for the Philpot Loan from August 2008 through the

foreclosure sale on February 20, 2013. See id. at ¶ 11. The Debtors, beginning in June 2007, reported Mr. Philpot's account to the credit bureau on an almost monthly basis. See id.

17. In addition to the dispute over the alleged payment error, Mr. Philpot also contacted the Debtors on several occasions to discuss loan modification options. See id. at ¶ 12. In connection with preparing this Reply, the Debtors reviewed Mr. Philpot's history of loan modification requests and found that Mr. Philpot was approved for a traditional loan modification on August 27, 2009, but that such loan modification was ultimately denied because Mr. Philpot did not timely submit the follow-up information that was requested by the Debtors. See id. Rather Mr. Philpot argued that he should be approved for a Home Affordable Modification Program ("HAMP") loan modification, which was previously denied due to Mr. Philpot having insufficient income to meet such program's requirements. See id. Mr. Philpot was also approved for traditional loan modifications on May 28, 2010 and December 16, 2010; however, such modifications were ultimately denied because the necessary loan modification documents were not executed and returned to the Debtors by the designated due dates. See id.

18. Furthermore, the Debtors reviewed their records regarding Mr. Philpot's foreclosure history and found that, on July 26, 2007, Mr. Philpot attempted to delay a foreclosure referral by endeavoring to sell the property and had listed the property with a real estate agent. See id. at ¶ 13. Nevertheless, on October 23, 2008, the Philpot Loan was referred to foreclosure and in December 2008 a short sale was requested and denied due to the offer being too low. See id. Mr. Philpot subsequently filed bankruptcy, and, as a result, the foreclosure referral was closed on February 4, 2009.[2] See id. The Debtors again referred the Philpot Loan to foreclosure on May 22, 2009 and February 26, 2010, but such referrals were closed on September 23, 2009

---

[2] Mr. Philpot filed a chapter 7 bankruptcy petition in the Northern District of Alabama on February 3, 2009, case number 09-80380-JAC7. Mr. Philpot's bankruptcy case was closed on or about June 22, 2009.

and May 24, 2010, respectively, due to repayment plans or loan modification activity. See id. Despite the Debtors' numerous attempts to work with Mr. Philpot to avoid foreclosure, the Philpot Loan was referred to foreclosure on June 1, 2012 and Mr. Philpot's property was sold through a foreclosure sale on February 20, 2013. See id.

19. Based on the above information, the Debtors determined that they have no liability with respect to the Philpot Claim because the Debtors, at all times, complied with the appropriate guidelines and policies governing the loan modification process and acted properly with respect to Mr. Philpot's late payments, loan modification requests, credit reporting and foreclosure. Accordingly, based on the information set forth above and as further supported by the Third Supplemental Declaration, the Philpot Claim should be disallowed and expunged from the Debtors' official claims register.

B.    M. Francine Modderno (Claim No. 4866)

20. The Debtors reviewed the Sur-Reply filed by Ms. Modderno. In the Sur-Reply, Ms. Modderno asserts that she does not contest the foreclosure on her property, but rather the rights of the Debtors, or the Court, to sell her property, appoint a servicer or take any other action with respect to the property because the title to the property is clouded due to an alleged robosignature on the mortgage note. See Sur-Reply. Ms. Modderno contends that the alleged robosignature renders the mortgage note invalid.[3]  See id.

---

[3] Ms. Modderno makes the same contention concerning the invalidity of her mortgage note in her *Contest of Transfer of Plaintiff's Mortgage to Ocwen Loan Servicing* [Docket No. 3821] (the "Modderno Objection"), filed on May 23, 2013, which is still pending before the Court without a hearing date. The Modderno Objection also asks the Court to enjoin Ocwen from commencing foreclosure proceedings with respect to the Modderno Property until Ms. Modderno's proof of claim is adjudicated by this Court. Ms. Modderno informed Debtors' counsel on December 11, 2013 that Ocwen has not pursued any foreclosure efforts since the filing of the Modderno Objection. Thus, to the extent the Modderno Objection is not already moot, it will be mooted upon the court's adjudication of the Modderno Proof of Claim.

21. The Debtors believe that they adequately addressed Ms. Modderno's robosignature claim in the Supplemental Reply. See Supplemental Reply at ¶¶ 28-44. More specifically, within the Supplemental Reply, the Debtors explain, inter alia, that: (i) Ms. Modderno's robosignature allegation was included in that certain amended complaint (the "Amended Complaint") filed by Ms. Modderno on November 2, 2011 in United States District Court for the Eastern District of Virginia (the "District Court"); and (ii) the Amended Complaint was dismissed with prejudice by the District Court on December 20, 2011. See id. at ¶¶ 36, 43. Consequently, the Debtors have no liability with respect to the Modderno Claim because the claims set forth therein, including any allegations relating to a robosignature, are barred by the doctrine of res judicata. See id. at ¶¶ 37-44.

22. Accordingly, based on the above information and for all of the reasons set forth in the Supplemental Reply, the Modderno Claim should be disallowed and expunged in its entirety from the Debtors' official claims register.

## CONCLUSION

23. WHEREFORE, the Debtors respectfully submit that the relief sought in the Objection should be granted with respect to the Claimants.

Dated: December 13, 2013  
      New York, New York

/s/ Norman S. Rosenbaum  
Gary S. Lee  
Norman S. Rosenbaum  
Jordan A. Wishnew  
MORRISON & FOERSTER LLP  
1290 Avenue of the Americas  
New York, New York 10104  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900

*Counsel for the Debtors and Debtors in Possession*

ny-1116234