# **Exhibit 1**

## **The Disputed Claims**

ny-1116234

# The Philpot Claim

B 10 Modified (Official Form 10) (12/11)

# UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Claim #5067    Date Filed: 11/15/2012

**PROOF OF CLAIM**

**Name of Debtor and Case Number:** Residential Capital, LLC, Case No. 12-12020

NOTE: *This form should not be used to make a claim for an administrative expense* (other than a claim asserted under 11 U.S.C. § 503(b)(9)) *arising after the commencement of the case. A "request" for payment of an administrative expense* (other than a claim asserted under 11 U.S.C. § 503(b)(9)) *may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
GWENDELL L PHILPOT

**Name and address where notices should be sent:**

GWENDELL L. PHILPOT
503 Ferry St NE
PO BOX 1088
DECATUR, AL, 35602-1088

Telephone number: 256-309-9850    email: lloyd.philpot@yahoo.com

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**Name and address where payment should be sent (if different from above):**

Telephone number:    email:

**1. Amount of Claim as of Date Case Filed: $ 630,000.00**

If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** LOST EQUITY AND LOST INCOME RESULTING FROM FAILURE BY DEBTOR TO CORRECT PAYMENT PROCESSING ERROR
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 0928

**3a. Debtor may have scheduled account as:** GWENDELL LLOYD PHILPOT
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other
Describe:
**Value of Property:** $_____    **Annual Interest Rate** _____% ☐Fixed ☐Variable
(when case was filed)
**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**
if any: $_____    **Basis for perfection:** _____
**Amount of Secured Claim:** $_____    **Amount Unsecured:** $ 630,000.00

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.
■ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent.    ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)    (See Bankruptcy Rule 3004.)    (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: GWENDELL L. PHILPOT
Title: _____
Company: _____
(Signature) *Gwendell L. Philpot*    (Date) NOV.13,2012
Address and telephone number (if different from notice address above):

Telephone number:    Email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

\* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

RECEIVED
NOV 15 2012
KURTZMAN CARSON CONSULTANTS

1212020121115000000000041

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

<u>Re: Residential Capital, LLC, Case No. 12-12020</u>                                    <u>Page 1 of 10</u>

CREDITOR: GWENDELL L. PHILPOT,   SUMMARY IN PROOF OF CLAIM  Items #2 and #8

*In summary*, $350,000.00 of the claim is based on lost equity in the loss of property after the debtor's actions stated herein resulted in bankruptcy of creditor on May 21, 2009 and $280,000.00 was a three and one half year loss in personal revenue based on creditor's inability to obtain a business loan for a new business start-up for continued design and development of Alzheimer Caregiver's Support System, such loss being a direct result of debtor incorrectly listing payment failure as a missed payment by creditor rather than a failure of the debtor's payment processing system. Potential loss in total business revenue is not as yet or herein determined.

Historically, I, the creditor, do herein assert I had an agreement with debtor, namely, GMAC Mortgage, Residential Capital, LLC, which allowed me to be thirty (30) days late in my payment, and as long as I was not sixty (60) days late, there would be no action of foreclosure taken against me despite the normal thirty day notices. In December 2007 their internet payment processing system failed. After my efforts to get a correction to my account did not get approval by them, I realized how difficult it would be to get any correction to their system's failure. However, their records show they did not foreclose then, and my payments continued to be made within the agreed time of each month. On September 30, 2008 the debtor's payment processing system failed again during a time I was in the process of obtaining a Small Business Administration, SBA, loan through a Federal Credit Union to start a new business for Alzheimer's design and development, continuing a project I had started more than two years before. The system failure of the debtor that night was never corrected to show the computer and phone log file history of my payment that was executed on September 30, 2008, resulting in my inability to obtain the SBA business loan. At the same time, I had the property of which the debtor serviced the mortgage for sale to obtain the equity for investment in the Alzheimer's system business. The debtor refused to verify the log files of my payment and instead started foreclosure rather than correcting its internal system failure, despite multiple communications to the debtor's employees and corporate officers, <u>Tony Renzi</u>, Chief Operating Officer, Residential Capital, LLC, and <u>James N. Young</u>, Chief Financial Officer and Principal Accounting Officer, Residential Capital, LLC, pleading that they correct said error.

1

The debtor stated in reply that they did not have a record of receiving said payment yet they refused to verify said activity of their standard log files of the computer that processed communications and as such the debtor's refusal to correct its payment processing system error caused the loss of my equity in said property, $350,000, and prevented the development of the Alzheimer's system and a minimal salary to myself of $80,000 per year, an amount below my past compensation as an industrial designer providing advanced technology design and engineering services to global high technology corporations.

Below are copies of communications between creditor and debtor. The debtor never provided computer log files of September 30, 2008, files I do herewith seek the court direct the debtor provide said phone payment processing computer log files to creditor and in addition request the court to direct the phone log records of 256-280-9128 from PCL Cable/Knology, the company which serviced the phone on which the September 30, 2008 call was made, be provided to creditor, both log records with time codes as evidence to creditor's claim.

*[signature]*, November 13, 2012

GWENDELL L. PHILPOT, CREDITOR
503 Ferry St NE,   PO BOX 1088,    DECATUR, AL, 35602-1088                        256-309-9850

<u>Re: Residential Capital, LLC, Case No. 12-12020</u>

CREDITOR: GWENDELL L. PHILPOT, SUMMARY IN PROOF OF CLAIM  Items #2 and #8

*NOTE: The e-mail messages are in reverse chronological order September-October 2008.*
*GMAC Mortgage, Homecomings Financial or ResCap did not respond after this last e-mail and immediately started foreclosure rather than correct their system error.*
++++++++++++++++++++++++++++++++++++++++++++++++++++++++
Homecomings Financial, LLC
ATTN: Payment Processing Department
P.O. Box 780
Waterloo, IA 50704-0780
I did not receive the e-mail until this morning.

Thank you for looking at my records. They show that I have been paying my account on the last day of the month for more than a year, with the exception of a similar failure in your system in December 2007. Your system should show attempts to login with a similar account name, where the i was not used for the 1.
I stated that my attempt to use the online payment method on September 30, 2008 failed because of my miss-keying of the login name.
However, before the end of that day, before midnight, September 30, 2008, I did execute a payment by phone, which I have delineated in previous e-mails.
In fact, I have checked the bank every day since and no draft has been made by Homecomings, despite the fact the funds have been there since before September 30th and remain available today for Homecomings withdrawal providing my account is corrected to show the payment was made on September 30, 2008, as an investigation into your phone data recording system would verify.
As I have stated by e-mail and by statements to your customer service representatives in phone calls, the issue is not whether the funds have been drafted since September 30, 2008. The issue is the fact that I executed a payment by phone before midnight on September 30, 2008, with verbal prompts stating the payment had been received, but during the voice synthesis process stating the confirmation number, your system shut off. I have stated all of this in my previous e-mails. The fact that your system failed after my payment had been executed from 256-280-9128 with voice prompts stating the payment had been received is not a process that is within my control. I am an industrial designer, having a computer design background for over 25 years. I understand why your system failed regarding the user interface, but I can only control my actions which I performed in a correct manner with respect to your process. The refusal to credit my account as being received on September 30, 2008 is a blatant attempt to disregard the lack of proper design of your system. As such, I may be the victim of one of your employee's decision to incorrectly foreclose on my property. Please address the issue of the failure of your payment processing system to correctly handle my account and payment in a timely manner with records showing payment made on September 30, 2008.
Obviously, money was in the bank, which banking records shows, and I have been diligent to get your employees to correct the mistake and insure to me that my records are accurate showing the payment made on September 30, 2008. Previous e-mail copies are shown below under the row of red $$$$$ dollar type.
Please advise,
Sincerely,
GLP

2

**Re: Residential Capital, LLC, Case No. 12-12020**

**CREDITOR: GWENDELL L. PHILPOT, SUMMARY IN PROOF OF CLAIM Items #2 and #8**

----- Original Message -----
From: Homecomings <customer.service@homecomings.com>
To: Ll Philpótt <lloyd.philpott@yahoo.com>
Sent: Tuesday, October 7, 2008 4:50:44 PM
Subject: Re: Incorrect Payment Records

Dear Customer,

Please accept our apology for the delay in our response.

In response to your inquiry, the following payments were received and made online:

- April 30, 2008 in the amount of 2,266.46 applied as your March 2008 payment.
- May 31, 2008 in the amount of $2,266.46 applied as your April 2008 payment.
- June 30, 2008 in the amount of $2,266.46 applied as your May 2008 payment.
- July 31, 2008 in the amount of $2,266.46 applied as your June 2008 payment.
- August 31, 2008 in the amount of $2,266.46 applied as your July 2008 payment.

In addition, we do not show a payment made using our pay by phone services on September 30, 2008.

However, please check with your bank to see if the funds have cleared. If it has, please fax a copy of your Bank statement reflecting the check number, dollar amount and the date it cleared the bank to 319-236-4696 for further research or mail it to the address provided.

Homecomings Financial, LLC
ATTN: Payment Processing Department
P.O. Box 780
Waterloo, IA 50704-0780

3

For your protection, we have removed your names, account number and addresses from your original inquiry. If you have any further questions, please contact us through our Web site at www.homecomings.com or call Customer Care at 1-800-206-2901 during the following hours:

Monday - Friday    6:00AM - 10:00PM CT
Saturday           9:00AM - 1:00PM CT

Customer Care
Loan Servicing

The information contained in this communication is confidential and privileged proprietary information intended only for the personal and confidential use of the individual or entity to whom it is addressed. If you are not the addressee indicated in this message (or an agent responsible for delivery of the message to such person), you are hereby notified that you have received this communication in error and that any review, dissemination, copying or unauthorized use of this message is strictly prohibited. In such case, you should destroy this message and kindly notify the sender by reply email.

Please advise immediately if you or your employer do not consent to Internet email for messages of this kind. Opinions, conclusions, and other information in this message that do not relate to the official business of the Company shall be understood as neither given nor endorsed by it. It is the Company's policy that emails are intended for and should be used for business purposes only.

<u>Re: Residential Capital, LLC, Case No. 12-12020</u>

**CREDITOR: GWENDELL L. PHILPOT, SUMMARY IN PROOF OF CLAIM Items #2 and #8**

Original Message Follows:
--------------------
October 3, 2008

Homecomings Financial Services, LLC

Attn: Director of Customer Care, Loan Servicing
P.O. Box 1330
Waterloo, IA 50704-1330

Loan Servicing Center
2711 North Haskell Avenue, Suite 290
Dallas, TX 75204

\*\*\*

CC:
ResCap, LLC
\*\*\*

\*\*\*
Chief Operating Officer, Residential Capital, LLC
\*\*\*
Chief Financial Officer and Principal Accounting Officer, Residential Capital, LLC


Per your security methods described below, reference: "User Name" \*\*\*, for your internal reference
to my name and account number
Thank you for the correct "User Name" of my account in the e-mail I received from your employees
today relative to my original e-mail to you and your auto-response to me on October 1, 2008. I
successfully logged in today after waiting on your reply for two days, after-which I called the
number you provided below.

However, as I have communicated to Marrian, employee # 31097, Ann, Account Specialist and Thomas,
Supervisor of Collections, Dallas, TX in my conversations this afternoon, in calls to the phone
number provided below in your previous e-mail, I have tried to get my records corrected to show my
payment was in fact made on September 30, 2008 from a phone at 256-280-9128, such that Homecomings Financial,
LLC would continue to accept said payment with a verification that said payment is conditional on Homecomings
Financial, LLC recognizing the truth, that I executed a payment by phone
on September 30, 2008 of a direct payment by check of $2266.46 plus $7.50 fee, with correct
responses to all prompts and final information that such responses and inputs were received prior to
a cutoff failure by your system during the confirmation number reply, such that the executions had
to have been received by the data system at Homecomings Financial, LLC on September 30, 2008, before the payment
was sixty, 60, days late, a data stream by phone prompt and key input that can be
verified on your database, and further I require your manager of information technology to recognize
such data as evidence within the Freedom of Information Act concerning my person, providing me with
a copy of said data concerning my person and failure to verify said data as being accurate according
to my claims and provide me a copy of the same to be a violation of my rights under the Freedom of
Information Act and the Fair Credit Reporting Act. Any claim by Homecomings Financial, LLC that I am
in foreclosure for failing to make said payment on September 30, 2008 is incorrect without evidence
contained within the data records of Homecomings Financial, LLC and therefore will be viewed by
myself as an attempt to undermine the provisions contained in my contract with Homecomings
Financial, LLC as well as my rights under the laws of Alabama and the United States, and is an
attempt to foreclose on my property without just cause, thereby causing injury to my reputation. I
claim that I made a good faith effort with all diligence and logic to have my claim verified by your

4

**Re: Residential Capital, LLC, Case No. 12-12020**

**CREDITOR: GWENDELL L. PHILPOT, SUMMARY IN PROOF OF CLAIM Items #2 and #8**

collections employees who refused to do so or to provide me with the name of a corporate director to whom they report so that I may, this afternoon, have quickly addressed my concerns that Homecomings Financial, LLC is improperly handling my account.

I have made such payments as I completed on September 30, 2008 over the past year with the acceptance by Homecomings Financial, LLC of my status consistently being thirty days late and such status being acceptable with no prior action against me to foreclose. It is my belief that should the payment system of Homecomings Financial, LLC worked properly on September 30th, we would not be communicating about this situation. It is my interest to avoid the repercussions of your failed payment collection system as I experienced this past January when your system failed to recognize my payment at the end of 2007 and thereby causing my credit rating to incorrectly drop preventing me the opportunity to refinance my home and negatively affecting other credit factors of my life. Then as now, an inspection of the data records would show my payments to be less than sixty days late. For whatever incentive Homecomings Financial, LLC has to force me into foreclosure by failing to recognize the failure of its automatic payment system, I believe an arbitration or judicial process will find the records to verify that my statements were correct and Homecomings Financial's failure to act in good faith in verifying those claims will be a liability to Homecomings Financial as well as causing me unrepairable damage to my reputation by Homecomings Financial's unwarranted action against me.

On the website: http://www.homecomings.com/About_Us/Legal_Information/Disclosures.html is stated:
"SERVICING Homecomings understands that fair lending does not end with the approval or denial of a loan. Rather, the Fair Lending laws and regulations apply to every facet of a loan, from the taking of an application to receipt of the last loan payment."

Refusing to verify my actions in making my payment on September 30, 2008 is not in keeping of the Fair Lending Laws and Homecomings Financial, LLC's claims on its website.

\*\*\*\*\*\*

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++  5
----- Original Message ---- From: Homecomings <customer.service@homecomings.com> To: "lloyd.philpott@yahoo.com" <lloyd.philpott@yahoo.com> Sent: Friday, October 3, 2008 9:32:36 AM Subject: Re: Other  Dear Customer, In response to your inquiry, our records indicate your current "User Name" is 7569522i47. Unfortunately, for security purposes, we are unable to provide you with your password. You may access your password by following the steps below.   1.   Click on the "Look up your password" link on our home page.   2.   Enter your User Name and the first and last name of the person who registered the account.   3.  Click Submit.   4.  Enter your Secret Answer(s).
5.  Click Submit.  If all your information is correctly answered, an email will be sent to the current email address associated with your registration, allowing you to reset your password.  If you are unable to reset your password, you will need to reregister.  In order to reregister, you will need to advise us to expire your current registration.  You will then need to choose a new User Name.  In addition, our records do not show a payment made on September 30, 2008.  At this time your account is due for the August, September and October 2008 payments plus late charges and other fees. If you need to make payment arrangements, please call our Collection Department at 1-800-799-9250 extension 874-3284: Monday-Thursday 7:00 A.M. - 11:00 P.M. Central Time, Friday 7:00 A.M. - 6:00 P.M. CT or Saturday 8:00 A.M. - 12:00 P.M. CT.  We apologize for any inconvenience this may have caused.  For your protection, we have removed your name, account number, address and phone number from your original inquiry.  If you have any further questions, please contact us through our Web site at www.homecomings.com or call Customer Care at 1-800-206-2901 during the following hours: Monday - Friday   6:00AM - 10:00PM CT Saturday          9:00AM - 1:00PM CT  Customer Care Loan Servicing  The information contained in this communication is confidential and privileged proprietary information intended only for the personal and confidential use of the individual or entity to whom it is addressed.  If you are not the addressee indicated in this message (or an agent responsible for delivery of the message to such person), you are hereby notified that you have received this communication in error and that any review, dissemination, copying or unauthorized use of this message is strictly prohibited.  In such case, you should destroy this message and kindly

<u>Re: Residential Capital, LLC, Case No. 12-12020</u>

**CREDITOR: GWENDELL L. PHILPOT, SUMMARY IN PROOF OF CLAIM Items #2 and #8**

notify the sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind. Opinions, conclusions, and other information in this message that do not relate to the official business of the Company shall be understood as neither given nor endorsed by it. It is the Company's policy that emails are intended for and should be used for business purposes only. Original Message Follows: ---------------------- Attention Homecomings Financial Mail Recipient: The Homecomings Financial Internet Application has generated this mail in response to a User's Action. TRKNO= Name: Address: Email Address: lloyd.philpott@yahoo.com
Phone Number: Main subject of this inquiry: Other User Question/Comment: Last night on September 30, 2008, I tried to access my account to make a payment online. My account name is ** I reset the password a short time ago, and your system did not recognize it. This has happened multiple times on various months. I could not log-on last night. I went through setting up the registration again, but the system still would not allow me to log-in. I even tried my old account name of **o, but no luck. So, I then called 800-206-2901 and executed a pay-by-phone to my account of $2266.46 plus the $7.50 phone fee, which the auto system responded as being $2273.96 deducted from my bank account. I finished with a verification of my SS#, L4D, and response as being accepted. As the confirmation # was starting to be called out to me, your system died. I tried to get back, but the time was then midnight. I executed my payment before midnight on the 30th with a response that verified the same. Today, I called and the auto responder, voice synthesis, system indicated that no payment was made. Then it redirected me with a statement that the call-takers were too busy and hung up on me. Please eMail me with a password reset link and tell me if the system recognized my payment to be on September 30, 2008. Because of my present status with Homecomings, the payment was only made if Homecomings' record shows the payment to have been made on September 30, 2008. User Agent: Mozilla/4.0 (compatible; MSIE 7.0; Windows NT 6.0; SLCC1; .NET CLR 2.0.50727; Media Center PC 5.0; .NET CLR 3.0.04506) Time Mail Generated: 10/01/2008 16:06:38


----- Original Message ---- From: Homecomings <customer.service@homecomings.com> To: "lloyd.philpott@yahoo.com" <lloyd.philpott@yahoo.com> Sent: Wednesday, October 1, 2008 4:08:55 PM Subject: We Received Your Message Thank you for your email to Homecomings Financial. Our team will make every effort to reply to your message within two business days.

6

Re: Residential Capital, LLC, Case No. 12-12020

**CREDITOR: GWENDELL L. PHILPOT, SUMMARY IN PROOF OF CLAIM Items #2 and #8**

$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$$

October 3, 2008

<u>Homecomings Financial Services, LLC</u>
Attn: Director of Customer Care, Loan Servicing
P.O. Box 1330
Waterloo, IA 50704-1330
<u>Loan Servicing Center</u>
2711 North Haskell Avenue, Suite 290
Dallas, TX 75204
    8400 Normandale Lake Blvd., Suite 250
    Minneapolis, MN 55437

CC:
ResCap, LLC
1 Meridian Crossings
Minneapolis, MN 55423

Tony Renzi
Chief Operating Officer, Residential Capital, LLC
James N. Young
Chief Financial Officer and Principal Accounting Officer, Residential Capital, LLC

<u>Per your security methods described below, reference: "User Name" 7569522i47, for your internal reference to my name and account number</u>

Thank you for the correct "User Name" of my account in the e-mail I received from your employees today relative to my original e-mail to you and your auto-response to me on October 1, 2008. I successfully logged in today after waiting on your reply for two days, after-which I called the number you provided below.

7

However, as I have communicated to Marrian, employee # 31097, Ann, Account Specialist and Thomas, Supervisor of Collections, Dallas, TX in my conversations this afternoon, in calls to the phone number provided below in your previous e-mail, I have tried to get my records corrected to show my payment was in fact made on September 30, 2008 from a phone at 256-280-9128, such that Homecomings Financial, LLC would continue to accept said payment with a verification that said payment is conditional on Homecomings Financial, LLC recognizing the truth, that I executed a payment by phone on September 30, 2008 of a direct payment by check of $2266.46 plus $7.50 fee, with correct responses to all prompts and final information that such responses and inputs were received prior to a cutoff failure by your system during the confirmation number reply, such that the executions had to have been received by the data system at Homecomings Financial, LLC on September 30, 2008, before the payment was sixty, 60, days late, a data stream by phone prompt and key input that can be verified on your database, and further I require your manager of information technology to recognize such data as evidence within the Freedom of Information Act concerning my person, providing me with a copy of said data concerning my person and failure to verify said data as being accurate according to my claims and provide me a copy of the same to be a violation of my rights under the Freedom of Information Act and the Fair Credit Reporting Act. Any claim by Homecomings Financial, LLC that I am in foreclosure for failing to make said payment on September 30, 2008 is incorrect without evidence contained within the data records of Homecomings Financial, LLC and therefore will be viewed by myself as an attempt to undermine the provisions contained in my contract with Homecomings Financial, LLC as well as my rights under the laws of Alabama and the United States, and is an attempt to foreclose on my property without just cause, thereby causing injury to my reputation. I claim that I made a good faith effort with all diligence

<u>Re: Residential Capital, LLC, Case No. 12-12020</u>

**CREDITOR: GWENDELL L. PHILPOT, SUMMARY IN PROOF OF CLAIM Items #2 and #8**

and logic to have my claim verified by your collections employees who refused to do so or to provide me with the name of a corporate director to whom they report so that I may, this afternoon, have quickly addressed my concerns that Homecomings Financial, LLC is improperly handling my account.

I have made such payments as I completed on September 30, 2008 over the past year with the acceptance by Homecomings Financial, LLC of my status consistently being thirty days late and such status being acceptable with no prior action against me to foreclose. It is my belief that should the payment system of Homecomings Financial, LLC worked properly on September 30th, we would not be communicating about this situation. It is my interest to avoid the repercussions of your failed payment collection system as I experienced this past January when your system failed to recognize my payment at the end of 2007 and thereby causing my credit rating to incorrectly drop preventing me the opportunity to refinance my home and negatively affecting other credit factors of my life. Then as now, an inspection of the data records would show my payments to be less than sixty days late. For whatever incentive Homecomings Financial, LLC has to force me into foreclosure by failing to recognize the failure of its automatic payment system, I believe an arbitration or judicial process will find the records to verify that my statements were correct and Homecomings Financial's failure to act in good faith in verifying those claims will be a liability to Homecomings Financial as well as causing me unrepairable damage to my reputation by Homecomings Financial's unwarranted action against me.

On the website: http://www.homecomings.com/About_Us/Legal_Information/Disclosures.html is stated:
**"SERVICING**
Homecomings understands that fair lending does not end with the approval or denial of a loan. Rather, the Fair Lending laws and regulations apply to every facet of a loan, from the taking of an application to **receipt** of the last loan payment."

**Refusing to verify my actions in making my payment on September 30, 2008 is not in keeping of the Fair Lending Laws and Homecomings Financial, LLC's claims on its website.**

Gwendell                                                                 8

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
----- Original Message ----
From: Homecomings <customer.service@homecomings.com>
To: "lloyd.philpott@yahoo.com" <lloyd.philpott@yahoo.com>
Sent: Friday, October 3, 2008 9:32:36 AM
Subject: Re: Other

Dear Customer,

In response to your inquiry, our records indicate your current "User Name" is 7569522i47. Unfortunately, for security purposes, we are unable to provide you with your password. You may access your password by following the steps below.

1. Click on the "Look up your password" link on our home page.
2. Enter your User Name and the first and last name of the person who registered the account.
3. Click Submit.
4. Enter your Secret Answer(s).
5. Click Submit.

If all your information is correctly answered, an email will be sent to the current email address associated with your registration, allowing you to reset your password.

<u>Re: Residential Capital, LLC, Case No. 12-12020</u>
**CREDITOR: GWENDELL L. PHILPOT, SUMMARY IN PROOF OF CLAIM Items #2 and #8**

If you are unable to reset your password, you will need to reregister. In order to reregister, you will need to advise us to expire your current registration. You will then need to choose a new User Name.

In addition, our records do not show a payment made on September 30, 2008. At this time your account is due for the August, September and October 2008 payments plus late charges and other fees. If you need to make payment arrangements, please call our Collection Department at 1-800-799-9250 extension 874-3284: Monday-Thursday 7:00 A.M. - 11:00 P.M. Central Time, Friday 7:00 A.M. - 6:00 P.M. CT or Saturday 8:00 A.M. - 12:00 P.M. CT.

We apologize for any inconvenience this may have caused.
For your protection, we have removed your name, account number, address and phone number from your original inquiry. If you have any further questions, please contact us through our Web site at www.homecomings.com or call Customer Care at 1-800-206-2901 during the following hours:

Monday - Friday    6:00AM - 10:00PM CT
Saturday           9:00AM - 1:00PM CT
Customer Care
Loan Servicing

The information contained in this communication is confidential and privileged proprietary information intended only for the personal and confidential use of the individual or entity to whom it is addressed. If you are not the addressee indicated in this message (or an agent responsible for delivery of the message to such person), you are hereby notified that you have received this communication in error and that any review, dissemination, copying or unauthorized use of this message is strictly prohibited. In such case, you should destroy this message and kindly notify the sender by reply email.

Please advise immediately if you or your employer do not consent to Internet email for messages of this kind. Opinions, conclusions, and other information in this message that do not relate to the official business of the Company shall be understood as neither given nor endorsed by it. It is the Company's policy that emails are intended for and should be used for business purposes only.

9

Original Message Follows:
------------------------
Attention Homecomings Financial Mail Recipient:

The Homecomings Financial Internet Application has generated this mail in response to a User's Action.

TRKNO=
Name:
Address:
Email Address: lloyd.philpott@yahoo.com
Phone Number:

Main subject of this inquiry: Other

User Question/Comment:

Last night on September 30, 2008, I tried to access my account to make a payment online. My account

<u>Re: Residential Capital, LLC, Case No. 12-12020</u>

**CREDITOR: GWENDELL L. PHILPOT, SUMMARY IN PROOF OF CLAIM Items #2 and #8**

name is ** I reset the password a short time ago, and your system did not recognize it. This has happened multiple times on various months. I could not log-on last night. I went through setting up the registration again, but the system still would not allow me to log-in. I even tried my old account name of **o, but no luck. <u>So, I then called 800-206-2901 and executed a pay-by-phone to my account of $2266.46 plus the $7.50 phone fee, which the auto system responded as being $2273.96 deducted from my bank account. I finished with a verification of my SS#, L4D, and response as being accepted. As the confirmation # was starting to be called out to me, your system died. I tried to get back, but the time was then midnight. I executed my payment before midnight on the 30th with a response that verified the same. Today, I called and the auto responder, voice synthesis, system indicated that no payment was made. Then it redirected me with a statement that the call-takers were too busy and hung up on me. Please eMail me with a password reset link and tell me if the system recognized my payment to be on September 30, 2008. **Because of my present status with Homecomings, the payment was only made if Homecomings' record shows the payment to have been made on September 30, 2008.**</u>

User Agent: Mozilla/4.0 (compatible; MSIE 7.0; Windows NT 6.0; SLCC1; .NET CLR 2.0.50727; Media Center PC 5.0; .NET CLR 3.0.04506)
Time Mail Generated: **10/01/2008 16:06:38**

----- Original Message ----
From: Homecomings <customer.service@homecomings.com>
To: "lloyd.philpott@yahoo.com" <lloyd.philpott@yahoo.com>
Sent: Wednesday, **October 1, 2008** 4:08:55 PM
Subject: We Received Your Message
Thank you for your email to Homecomings Financial. Our team will make every effort to reply to your message within two business days.

10

<u>Re: Residential Capital, LLC, Case No. 12-12020</u>
**CREDITOR: GWENDELL L. PHILPOT, SUMMARY IN PROOF OF CLAIM Items #2 and #8**

**The Modderno Claim**

Claim #4866 Date Filed: 11/15/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **Residential Funding Company, LLC, Case No. 12-12019**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**M. Francine Modderno**

Name and address where notices should be sent:

**M. Francine Modderno**
**17147 Needles Court**
**Leesburg, VA 20176-7181**

Co-owner Claude V. Bache is deceased.
M. Francine Modderno is the executor of his estate.

Telephone number: 703-669-8687    email: fmodderno@aol.com

Name and address where payment should be sent (if different from above):
**SAME AS ABOVE**

☒ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
(*If known*)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed: $ **720,000.00**

   If all or part of the claim is secured, complete item 4.
   If all or part of the claim is entitled to priority, complete item 5.

   ☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Residential Funding not legally assigned mortgage note
   (See instruction #2)

3. Last four digits of any number by which creditor identifies debtor: ___ ___ ___ ___

   3a. Debtor may have scheduled account as: _____ (See instruction #3a)

   3b. Uniform Claim Identifier (optional): _____ (See instruction #3b)

4. **Secured Claim** (See instruction #4)
   Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

   Nature of property or right of setoff: ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
   Describe:
   Value of Property: $ **720,000.00**    Annual Interest Rate _____ %  ☐ Fixed  ☐ Variable
   (when case was filed)
   Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
   if any: $ court costs    Basis for perfection: _____
   Amount of Secured Claim: $ **720,000.00**    Amount Unsecured: $ _____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

   ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

   ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

   ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

   ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

   Amount entitled to priority:

   $ _____

   * *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Claim Pursuant to 11 U.S.C. § 503(b)(9):**
   Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
   $ _____ (See instruction #6)

7. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #8, and the definition of "redacted".*)

   DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

   If the documents are not available, please explain:

9. **Signature:** (See instruction #9) Check the appropriate box.

   ☒ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)
   (Attach copy of power of attorney, if any.)

   I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

   Print Name: M. Francine Modderno
   Title: _____
   Company: _____    (Signature) *[signed]* 11/05/2012 (Date)
   Address and telephone number (if different from notice address above):
   SAME AS ABOVE

   SAME AS ABOVE

   Telephone number: _____    Email: _____

**RECEIVED**
NOV 15 2012
KURTZMAN CARSON CONSULTANTS

COURT USE ONLY

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18*

*[barcode]* 121201912111500000000000023

APP #: 24503051
LN #: 24503051

# FIXED/ADJUSTABLE RATE NOTE
(1 Year LIBOR Index - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

October 20, 2003        WOODBRIDGE                      Virginia
[Date]                  [City]                          [State]

CERTIFIED TRUE COPY

17147 NEEDLES COURT,        LEESBURG, VA  20176
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 600,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is FIRST SAVINGS MORTGAGE CORPORATION, A VIRGINIA CORPORATION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 4.2500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
(A) Time and Place of Payments
Beginning on the first day of December 1, 2003, and on the first day of every month thereafter until the first day of November 1, 2008, I will pay only the interest on the unpaid balance of the Note. Thereafter, I will pay principal and interest by making payments every month as provided below.
I will make my monthly payments of principal and interest on the first day of each month beginning DECEMBER 1, 2008. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on November 1, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 1950 OLD GALLOWS RD. 8TH FL. VIENNA, VA 22182 or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,125.00. This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of November 1, 2008, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One / Quarter percentage points ( 2.2500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 9.2500 % or less than 2.2500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 9.2500 %.

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of change in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note and to pay the interest then accruing at the Note rate as of the date my prepayments are applied. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. Any partial prepayment made on or before the first Change Date may reduce the amount of my monthly payments. Any partial

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
GMACM-CNS.1013.FIX(INT)/ADJ(P&I)-VA (9808)        01/99Page 1 of 3)        Initials: CB  MM

prepayment made after the first Change Date may reduce the amount of my monthly payments when the amount of such payments are determined at the next Change Date. However, any such reduction in my monthly payments may be off set by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require, upon such notice as required by law, payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANTS 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION (11)A ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in the Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require, upon such notice as required by law, payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in the Security Instrument. Borrower will continue to be obligated under the Note and the Security Instrument unless Lender releases Borrower in writing.

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
GMACM-CNS.1013.FIX(INT)/ADJ(P&I)-VA (9808)    01/00 Page 2 of 3)    Initials: CVB MM

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

_____(Seal)
CLAUDE V. BACHE                      -Borrower

_____(Seal)
M. FRANCINE MODDERNO                 -Borrower

_____(Seal)
                                     -Borrower

_____(Seal)
                                     -Borrower

[Sign Original Only]

This is to certify that this is the Note described in and secured by a Deed of Trust dated   October 20, 2003
on the property located in    LOUDOUN COUNTY                                              , Virginia.

My Commission Expires: 12/31/06

Notary Public




COMMONWEALTH OF VIRGINIA
# COUNTY OF LOUDOUN
OFFICE OF THE CLERK OF CIRCUIT COURT
P.O. BOX 550
LEESBURG, VIRGINIA 20178
LOCAL 703-777-0270
www.loudoun.gov/clerk

**Brenda S. Butler**  **Gary M. Clemens**  **William L. Loy**
**Chief Deputy**  **Clerk**  **Assistant Chief Deputy**

## CERTIFICATE/LETTER OF QUALIFICATION

VIRGINIA CODE §§ 6.1-70, 6.1-195.28, 6.1-208.3, 6.1-208.5, 13.1-428, 64.1-122, 64.1-128

Probate File Number: **13245**

I, the duly qualified Deputy Clerk of this Court, **CERTIFY** that on:

**AUGUST 20, 2010**

**MARSHA FRANCINE MODDERNO**

duly qualified before the Clerk, under applicable provisions of law, as:

**EXECUTOR** of the **ESTATE** of:

**CLAUDE VALENTINE BACHE,** deceased.

The appropriate bond required by Statute has been posted.

The powers of the Executor named above continue in full force and effect.

Given under my hand and the seal of this Court on **AUGUST 20, 2010**

Gary M. Clemens, Clerk

*[signature]*
Deputy Clerk