# Exhibit 2

**Third Supplemental Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**THIRD SUPPLEMENTAL DECLARATION OF DEANNA HORST WITH RESPECT TO DEBTORS' THIRTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS – BOOKS AND RECORDS)**

Deanna Horst, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.  I am the Chief Claims Officer for Residential Capital, LLC and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since August of 2001, and have held my current position since June of 2012. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC ("GMACM") and Ally Bank in this role. In my current position, I am responsible for Claims Management and Reconciliation and Client Recovery. I am authorized to submit this third supplemental declaration (the "Third Supplemental Declaration") with respect to the *Debtors'*

ny-1116234

*Second Supplemental Omnibus Reply in Support of Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims - Books and Records)* (the "Second Supplemental Reply").[1]

2. Except as otherwise indicated, all facts set forth in this Third Supplemental Declaration are based upon my familiarity with the Debtors' books and records, information learned from my review of relevant documents and information I have received through my discussions with other members of the Debtors' management or other employees of the Debtors, and/or the Debtors' professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Second Supplemental Reply on that basis.

3. After reviewing the Philpot Claim and the Modderno Claim, the Debtors determined that they were not required to send Request Letters to Mr. Philpot or Ms. Modderno seeking additional information because both the Philpot Claim and the Modderno Claim provided sufficient detail such that the Debtors could understand, research and respond to the claimants' respective allegations.

4. In addition, upon review of the Philpot Claim and the Response, the Debtors diligently examined their books and records in order to assess the validity of Mr. Philpot's allegations.

5. The Philpot Claim, which was filed as a general unsecured claim in the amount of $630,000.00, relates to Mr. Philpot's mortgage note, which secured a loan (the "Philpot Loan") that was originated by Homecomings Financial Network on December 4, 2000. Bank of New York, as trustee for the RASC Series Trust, is the investor for the Philpot Loan.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Second Supplemental Reply.

2

ny-1116234

On July 1, 2009, GMAC Mortgage, LLC ("GMACM") began servicing the Philpot Loan for Bank of New York. A foreclosure sale was held with respect to Mr. Philpot's property on February 20, 2013, and the property was in real estate owned ("REO") status. On September 1, 2013, servicing of the Philpot Loan was transferred to Ocwen Loan Servicing, LLC.

6. The Debtors initially believed that the Philpot Claim related to a prior class action litigation regarding the ability of MERS to foreclose on Mr. Philpot's home. However, upon further review of the Philpot Claim and the Response, the Debtors now understand the Philpot Claim to be based on Mr. Philpot's loss of equity and income relating to the Debtors' alleged error in payment processing in September 2008.

7. The Debtors reviewed Mr. Philpot's payment history and the Debtors' internal servicing notes. Based on such review, the Debtors determined that their books and records do not reflect any payment being received from Mr. Philpot in connection with the Philpot Loan on or around September 30, 2008.

8. In addition, the Debtors' servicing notes reflect that Mr. Philpot, on October 3, 2008, contacted the Debtors and reported that he made an online payment on September 30, 2008, including a speedpay fee, and that such payment was not recognized by the Debtors. The Debtors reviewed Mr. Philpot's payment history and did not find any record of such payment within their system. Also on October 3, 2008, Mr. Philpot requested that he be allowed to make a replacement payment and that such payment be backdated to September 30, 2008. The Debtors informed Mr. Philpot that they were unable to grant his request to backdate the payment.

9. The Debtors' books and records further reflect that on October 7, 2008, Mr. Philpot contacted the Debtors and again asserted that he made an online payment on

3

ny-1116234

September 30, 2008. The Debtors advised Mr. Philpot to contact his bank to determine whether such alleged payment had been deducted from his account. The Debtors also advised Mr. Philpot that if he was able to obtain information regarding the date that a payment was processed from his bank account, then he could contact the Debtors at a specific telephone number so that further research could be done regarding the alleged payment.

10.    On October 9, 2008, Mr. Philpot contacted the Debtors and again requested to make a payment with a retroactive effective date of September 30, 2008. Mr. Philpot was informed that his payment could not be backdated, and was also advised that, if a payment was made within a few days of October 9, 2008, then the Debtors could amend Mr. Philpot's credit report to show that the payment was received within sixty (60) days due to a Voice Recognition Unit error. The Debtors did not receive a payment from Mr. Philpot.

11.    Moreover, the Debtors' books and records show that 4.5 years of payments remained due and owing for the Philpot Loan from August 2008 through the foreclosure sale on February 20, 2013. The Debtors, beginning in June 2007, reported Mr. Philpot's account to the credit bureau almost monthly.

12.    In addition to the dispute over the alleged payment error, Mr. Philpot also contacted the Debtors on several occasions to discuss loan modification options. The Debtors reviewed Mr. Philpot's history of loan modification requests and found that Mr. Philpot was approved for a traditional loan modification on August 27, 2009, but that such loan modification was ultimately denied because Mr. Philpot did not timely submit the follow-up information that was requested by the Debtors. Rather Mr. Philpot argued that he should be approved for a Home Affordable Modification Program ("HAMP") loan modification, which was previously denied due to Mr. Philpot having insufficient income to meet such program's requirements. Mr. Philpot

4

was also approved for traditional loan modifications on May 28, 2010 and December 16, 2010; however, such modifications were ultimately denied because the necessary loan modification documents were not executed and returned to the Debtors by the designated due dates.

13. Moreover, the Debtors reviewed their records regarding Mr. Philpot's foreclosure history and found that, on July 26, 2007, Mr. Philpot attempted to delay a foreclosure referral by endeavoring to sell the property and had listed the property with a real estate agent. Nevertheless, on October 23, 2008, the Philpot Loan was referred to foreclosure and in December 2008 a short sale was requested and denied due to the offer being too low. Mr. Philpot subsequently filed bankruptcy, and, as a result, the foreclosure referral was closed on February 4, 2009. The Debtors again referred the Philpot Loan to foreclosure on May 22, 2009 and February 26, 2010, but such referrals were closed on September 23, 2009 and May 24, 2010, respectively, due to repayment plans or loan modification activity. Despite the Debtors' numerous attempts to work with Mr. Philpot to avoid foreclosure, the Philpot Loan was referred to foreclosure on June 1, 2012 and Mr. Philpot's property was sold through a foreclosure sale on February 20, 2013.

Dated:  December 13, 2013

/s/ Deanna Horst
Deanna Horst
Chief Claims Officer for
Residential Capital, LLC