**Hearing Date: December 17, 2013 at 10:00 a.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Adam A. Lewis
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' REPLY TO RESPONSE OF BECKY SPENCE TO DEBTORS'
OBJECTION TO PROOF OF CLAIM NO. 3835 FILED BY BECKY SPENCE**

ny-1120620

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

      A.     The Claim and State Court Action ...................................................................... 2

      B.     The Objection ........................................................................................................... 3

      C.     The Response .......................................................................................................... 3

ARGUMENT .................................................................................................................................... 4

I.      CLAIMANT HAS FAILED TO SUPPORT THE FILED CLAIM ................................. 4

II.     THE RESPONSE IS AN IMPROPER ATTEMPT TO AMEND THE CLAIM
       AFTER THE BAR DATE ................................................................................................. 5

III.    EVEN IF THE RESPONSE IS PERMITTED, THE RESPONSE IS
       DEFICIENTLY PLEADED .............................................................................................. 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

In re Asia Global Crossing, Ltd.,
    324 B.R. 503 (Bankr. S.D.N.Y. 2005) ..................................................................................6

In re Barquet Grp. Inc.,
    477 B.R. 454 (Bankr. S.D.N.Y. 2012), aff'd, 477 B.R. 454 (S.D.N.Y. 2012) ........................6

In re Enron Creditors Recovery Corp.,
    370 B.R. 90 (Bankr. S.D.N.Y. 2007) ....................................................................................6

In re Keene Corp.,
    188 B.R. 903 (Bankr. S.D.N.Y. 1995) ..................................................................................6

In re McLean Indus., Inc.,
    121 B.R. 704 (Bankr. S.D.N.Y. 1990) ..................................................................................7

In re Mews Assocs., L.P.,
    144 B.R. 867 (Bankr. W.D. Mo. 1992) ...............................................................................10

In re MF Global Holdings, Ltd.,
    Nos. 11-15059 (MG), 11-02790 (MG) (SIPA), 2012 WL 5499847 (Bankr. S.D.N.Y.
    Nov. 13, 2012) .......................................................................................................................4

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
    Oneida, Ltd., No. 09-CIV-2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) ............4, 5

In re Prospect Studios, L.P.,
    478 B.R. 367 (Bankr. W.D. Mo. 2012) ...............................................................................10

In re Smith,
    No. 12-10142, 2013 WL 665991 (Bankr. D. Vt. Feb. 22, 2013) ..........................................4

In re South Plaza Ventures,
    167 B.R. 535 (Bankr. E.D. Mo. 1994) ................................................................................10

In re Stoneridge Apartments,
    119 B.R. 706 (Bankr. W.D. Mo. 1990) ...............................................................................10

Integrated Res., Inc. v. Ameritrust Co., N.A. (In re Integrated Res., Inc.),
    157 B.R. 66 (S.D.N.Y. 1993) .............................................................................................6, 7

Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),
    419 F.3d 115 (2d Cir. 2005) ...............................................................................................6, 7

Shirley's Realty, Inc. v. Hunt,
    160 S.W.3d 804 (Mo. Ct. App. 2005) ....................................................................................... 11

Travelers Indemnity Co. v. Chumbley,
    394 S.W.2d 418 (Mo. Ct. App. 1965) ....................................................................................... 11

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

In support of the *Debtors' Objection to the Proof of Claim Filed by Becky Spence* (filed on September 18, 2013, Docket No. 5105) (the "Objection"), the Debtors hereby file this reply (the "Reply") to the response of Claimant Becky Spence [Docket No. 5897] (the "Response").[1] In further support of the Objection, the Debtors rely upon and incorporate by reference the Supplemental Declaration of Lauren Graham Delehey (the "Supplemental Delehey Decl."), attached hereto as Exhibit 1.

## PRELIMINARY STATEMENT

1. Notwithstanding Claimant's effort to resuscitate her Claim against the Debtors seeking nearly $6 million in unsubstantiated damages by abandoning the original theory of liability and proffering entirely new bases not previously raised in litigation or the Claim, the Claim should be disallowed and expunged in its entirety. As set forth in the Objection, the Claim is grounded in a litigation commenced by Ms. Spence against Homecomings alleging that Homecomings wrongfully foreclosed on Claimant's seven properties in Springfield, Missouri. The gravamen of the State Court Action and the Claim is Homecomings's purported failure to possess the mortgage notes at the time of the foreclosures. The Debtors objected to the Claim and submitted evidence of Homecomings's actual possession of the Notes at the time the foreclosures occurred. The Objection squarely placed the burden back on Claimant to establish the validity of her Claim.

2. However, the Response filed by Claimant fails to include any evidence (or even argument) rebutting the factual assertions made by the Debtors in the Objection and the

---

[1] Capitalized terms not defined in this Reply shall have the meaning ascribed to such terms in the Objection.

supporting Delehey Declaration. In fact, ignoring altogether the Objection, the Response completely abandons the "show me the note" theory upon which the State Court Action and the Claim are based, and instead raises a host of new allegations against the Debtors that bear no relation whatsoever to the grounds for recovery Ms. Spence asserted in the Claim. For the reasons discussed in the Objection and set forth below, the Claim should be disallowed and expunged because: (i) Claimant failed to submit competent evidence that adequately rebuts the Debtors' evidence in the Objection, let alone to establish the validity of her "show me the note" theory, (ii) the Response is an impermissible and untimely attempt to amend the Claim well after the passage of the Bar Date, and (iii) the Claim, even if supplemented by the Response, fails to state a cognizable claim against the Debtors.

## BACKGROUND

### A. The Claim and State Court Action

3. On November 9, 2012, Claimant filed the Claim against Homecomings asserting a claim of $5,876,900. The Claim alleges that Homecomings wrongfully foreclosed on Claimant's Properties, and notes that the Claim is based on the State Court Action listed as "*Becky Spence vs. Homecomings Financial LLC*" that was pending in The 31st Judicial Circuit Court, Green County, Missouri.

4. Claimant's sole allegation against Homecomings in the State Court Action is that the foreclosures on the Properties owned by Claimant were wrongful because Homecomings allegedly was not in possession of the original Notes at the time of the foreclosures. On November 23, 2011, Homecomings filed a Summary Judgment Motion in the State Court seeking dismissal of the State Court Action on the grounds that Homecomings was: (i) in possession of the original promissory notes at the time of the foreclosures, and (ii) authorized to foreclose on Deutsche Bank's behalf pursuant to the Servicing Contract. On January 3, 2012,

2

Ms. Spence responded to the Summary Judgment Motion, but the State Court Action was stayed by the filing of these Chapter 11 Cases.

### B. The Objection

5. In the Objection, the Debtors argued that the Claim had to be disallowed because, *inter alia*:

- The Debtors have no liability arising from "wrongful foreclosure" under applicable Missouri law because, as the supporting evidence in the Delehey Declaration establishes, Homecomings *did* have possession of the Notes at the time of the foreclosures;

- The Claim is not supported by adequate documentation as it fails to attach documents relating to the State Court Action nor documents to substantiate a $5.8 million claim against the Debtors; and

- The Claim is deficiently pleaded.

### C. The Response

6. On October 18, 2013, Claimant filed the Response raising a host of new allegations against Homecomings that were not identified (or even foreshadowed) in the State Court Action or the Claim and are totally unrelated to the State Court Action's theory of wrongful foreclosure for want of possession of the Notes. The Response now makes allegations of a completely new universe of misconduct that can be summarized as follows: (1) Homecomings interfered with Claimant's contractual arrangements by telling tenants not to pay their rent and advertising Claimant's homes for sale prior to the foreclosures; (2) Homecomings failed to inform its attorneys that they should suspend the foreclosures because Homecomings allegedly had agreed to await payment of Claimant's mortgage arrearages through funds coming from a company called Elegant Homes & Design of the Ozarks LLC ("Elegant"), so Homecomings's attorneys improperly proceeded with the sale of the

3

ny-1120620

Properties anyway; and (3) Homecomings sent Claimant improper and inaccurate communications regarding the mortgages on the Properties that caused her financial ruin.

7.  The Response also attaches, among other things: (1) two sworn statements from individuals as purported support for the new allegations that Homecomings acted inappropriately by informing tenants that they should not pay their rent as the Properties were to be foreclosed upon; (2) three letters from Elegant to Ms. Spence suggesting that Claimant was due a payment from Elegant; (3) a copy of a check from RAC Improvements, LLC to Claimant in the amount of $100,000; and (4) copies of various correspondence between Claimant and Homecomings, including several account statements and "Reinstatement Quotes," relating to the Properties.

## ARGUMENT

### I. CLAIMANT HAS FAILED TO SUPPORT THE FILED CLAIM

8.  Although Bankruptcy Rule 3001(f) establishes the initial evidentiary effect of a filed claim, the burden of proof "[r]ests on different parties at different times." In re Smith, No. 12-10142, 2013 WL 665991, at *6 (Bankr. D. Vt. Feb. 22, 2013) (citation omitted). The party objecting to the proof of claim "bears the initial burden of providing evidence to show that the proof of claim should not be allowed." In re MF Global Holdings, Ltd., Nos. 11-15059 (MG), 11-02790 (MG) (SIPA), 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012). If the objecting party satisfies its initial burden and "the presumption of *prima facie* validity is overcome—e.g., the objecting party establishes that the proof of claim lacks a sound legal basis—the burden shifts to the claimant to support its proof of claim unless the claimant would not bear that burden outside of bankruptcy." Id. (citing In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida, Ltd., No. 09-CIV-2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) ("A proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. The

4

burden then shifts to the claimant if the objector produces evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). Once the burden is shifted back to the claimant, "it must prove its claim by a preponderance of the evidence. . . ." Id. (citations omitted)).

9. Here, the Debtors objected to the Claim on the basis that, (a) it is not supported by sufficient documentation or evidence that Homecomings did not possess the Notes when it foreclosed, (b) it fails to make a "short and plain statement" of grounds for relief in violation of Rule 8(a)(2), and (c) the Debtors' evidence shows Debtors have no liability to Ms. Spence for "wrongful foreclosure" because the Debtors' possessed the Notes at foreclosure. The Debtors thus adequately and appropriately shifted the burden back to Claimant to support the Claim for "wrongful foreclosure" by a preponderance of the evidence; however, the Response fails to rebut any of the Debtors' legal or factual arguments. In particular, it fails to introduce any proof to counter the Debtors' evidence that Homecomings possessed the Notes when it foreclosed. Instead, the Response raises new allegations that were not included in, and are totally unrelated to, either the State Court Action or the Claim. Accordingly, the Claim, as filed, should be disallowed and expunged.

## II. THE RESPONSE IS AN IMPROPER ATTEMPT TO AMEND THE CLAIM AFTER THE BAR DATE

10. Not only should the Court disallow the Claim as filed, it also should reject what amounts to an attempt by Ms. Spence in the Response to substitute entirely new claims 11 months after the Bar Date. In essence, recognizing the hopelessness of the "show me the note" theory that was the sole basis of the State Court Action and the Claim, Claimant is trying to amend the Claim by going in a completely different direction. However, the purported amendment runs afoul of the Bar Date set in these Chapter 11 Cases.

5

11.	Federal Rule of Bankruptcy Procedure 3003(c)(3) directs a bankruptcy court "to establish a bar date beyond which proofs of claim are disallowed in a chapter 11 case." In re Enron Creditors Recovery Corp., 370 B.R. 90, 94 (Bankr. S.D.N.Y. 2007).  The bar date "is critically important to the administration of a successful chapter 11 case for its intended to be a mechanism providing the debtor and its creditors with finality." Id. (citation and internal quotations omitted).  Further, a bar date order, such as the one entered in the Debtors' case in August 2012, is "an integral part of the reorganization process," as it "serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of a successful reorganization. Enron, 370 B.R. at 94 (citing In re Keene Corp., 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (internal citations omitted)).  Where the bar date has passed, and a creditor seeks to file an amended proof of claim, "[t]he decision to allow the amendment of the claim is committed to the discretion of the bankruptcy judge." In re Asia Global Crossing, Ltd., 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005).

12.	In the Second Circuit, courts apply a two-step inquiry when considering whether to allow post bar date amendments to proofs of claim. See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 133 (2d Cir. 2005); In re Barquet Grp. Inc., 477 B.R. 454, 464 (Bankr. S.D.N.Y. 2012), aff'd, 477 B.R. 454 (S.D.N.Y. 2012).  First, the court must determine whether there was an "'assertion of a similar claim or demand evidencing an intention to hold the estate liable.'" Enron, 419 F.3d at 133 (quoting Integrated Res., Inc. v. Ameritrust Co., N.A. (In re Integrated Res., Inc.), 157 B.R. 66, 70 (S.D.N.Y. 1993)).  A claim relates back to a timely filed claim if it: "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on

6

ny-1120620

the facts set forth in the original claim." Enron, 419 F.3d at 133 (quoting In re McLean Indus., Inc., 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)).

13. If the "relation back" inquiry is satisfied, courts then examine whether it would be equitable to allow the amendment. Enron, 419 F.3d at 133; Integrated, 157 B.R. at 70. Courts consider the following five equitable factors in determining whether to allow an amendment:

> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.

Integrated, 157 B.R. at 70 (citation omitted); Enron, 419 F.3d at 133. However, "[t]he critical consideration is whether the opposing party will be unduly prejudiced by the amendment." Enron, 419 F.3d at 133 (citing Integrated, 157 B.R. at 70).

14. While styled as additional information in response to the Objection, the Response amounts to a post-Bar Date amendment to the Claim that should be disallowed as it does not satisfy the test set out in Enron. The Response does not attempt to correct a defect of form or describe the original Claim with more particularity, nor does it plead new theories based on or related to the original Claim's exclusive "show me the note" nucleus of facts, which is very narrow. To the contrary, the Response asserts several *new* allegations of misconduct against Homecomings that are completely unrelated to the "show me the note" theory upon which the State Court Action and the Claim as filed are based. Consequently, based upon the analysis of the first step in Enron, the Response should be disregarded as an improper attempt at amending the Claim long after passage of the Bar Date.

15. Even if the Response were timely because it related back to the Claim, the Court should disallow it by applying the second step of Enron's two-step analysis of whether to allow

7

an amendment. Here, the second factor and fifth factor of the Enron test weigh heavily in the Debtors' favor.

16.  *Prejudice*.  The Debtors and their Estates would be severely prejudiced by allowance of the purported amendment (through the filing of the Response) of the Claim.  At this late stage, the Confirmation Order has been entered and the Debtors are preparing for the effectiveness of the Plan which will result in substantial recoveries to creditors.  The time for amending claims has long since passed, particularly here where the State Court Action was commenced more than two years ago and the Response was filed only after the Debtors' filed the Objection.  The prejudice in this instance is exacerbated because the Response would turn what is a very simple, narrow dispute into a complex piece of litigation.

17.  *Justification for Late Filing*.  Claimant has no excuse for this late development.  Claimant did not suddenly learn of the "facts" she alleges in the Response post-Bar Date.  Instead, she was a participant in or witness to most of them.  If they are facts, she knew them when she filed the Claim, and she easily could have asserted them in the Claim.  For some reason, she chose not to do so then; now it is too late.

### III.  EVEN IF THE RESPONSE IS PERMITTED, THE RESPONSE IS DEFICIENTLY PLEADED

18.  As set forth in the Objection, Claimant has failed to support her claim for "wrongful foreclosure" under applicable Missouri law.  Claimant should be required to stand on her assertions.  However, if the Court determines that the Claim should be deemed augmented by the Response, the Response is deficiently pleaded.  Claimant makes several unsubstantiated allegations that fail to state a claim against the Debtors.

19.  First, Claimant suggests that Homecomings interfered with Claimant's contractual arrangements when its representatives allegedly visited each Property and talked to each tenant,

8

ny-1120620

telling them that the property was to going to be foreclosed on and "stating do not pay your rent and vacate the property." (Response at 2.) In support of this allegation, Claimant attaches two notarized statements from property management representatives. (Id. at 8-9.) However, Claimant was not harmed in any way because, as the Debtors will explain next, Homecomings was entitled to control the rents.

20.     The documents executed by Claimant in favor of Homecomings contain a clause dealing with the assignment of rents that permitted Homecomings to inform tenants not to pay their rent to Claimant once Claimant had defaulted. Each of the mortgages on the Properties provides that Claimant unconditionally assigned to Homecomings all rents and revenues of the Property. (Supp. Delehey Decl. ¶ 4.) For example, the document titled "1-4 Family Rider (Assignment of Rents)," attached to the Deed of Trust relating to the property at 3628 East Loren in Springfield, Missouri, annexed to the Supplemental Delehey Declaration as Exhibit A, reads in pertinent part:

> Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that . . . Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender and Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

(Id. ¶ 5.)

21.     Under Missouri law, an "Assignment of Rents" clause like the above "lies dormant until certain steps are taken to activate, or perfect, such assignment. Only after such steps have been taken may the mortgagee collect rents from tenants." In re Prospect Studios, L.P., 478 B.R. 367, 371 (Bankr. W.D. Mo. 2012) (citation omitted). These "steps" were

9

identified in In re Stoneridge Apartments, 119 B.R. 706, 707 (Bankr. W.D. Mo. 1990) as follows:

    1.     Proper documentation of the assignments;

    2.     Proper recording of the assignments in the form required for an interest in real estate;

    3.     Default on the part of the assignor; and

    4.     Possession of the premises by the assignee; or

    5.     Action equivalent to possession by the assignee.

22.     There is no dispute as to steps 1 through 3. With respect to step 5, "action equivalent to possession by the assignee," courts have concluded that notifying tenants to pay rent directly, or not make payment of rent to the lessor is equivalent to possession by the assignee. See Prospect Studios, 478 B.R. at 371 (after reciting the general rule, the court notes that "[t]here has been no evidence, or even a suggestion, that CSFB perfected its security interest in the rents *by notifying tenants to pay it directly*, or by taking any other steps to take possession of the premises, such as the appointment of a receiver.") (emphasis added); see also In re South Plaza Ventures, 167 B.R. 535, 536, 538-39 (Bankr. E.D. Mo. 1994) (court finds creditor did not "perfect" assignment of rents prepetition because "[p]rior to the Petition Date, New West had not obtained an order appointing a receiver *nor made demand upon, or served notice on, the tenants on the Real Property for the collection of rents*.") (emphasis added); but see In re Mews Assocs., L.P., 144 B.R. 867, 870 (Bankr. W.D. Mo. 1992).

23.     As Claimant's Response itself alleges, Homecomings purportedly took control of the rents by notifying the tenants post-default not to pay them. (Response at 2.) Accordingly, Claimant cannot establish a claim against Homecomings for interference with business relationships, breach of contract, or any other legal theory on account of Homecomings's

10

ny-1120620

communication with tenants of the Properties regarding the payment of rents because Homecomings was entitled to do just what it did: prevent the tenants from paying rent to Claimant.

24. Claimant also suggests in the Response that she has been harmed by Homecomings's alleged misconduct that, if recognized, amount to breach of contract claims against the Debtors. First, Claimant appears to suggest that Homecomings improperly advertised for a sale of the Properties before the foreclosures were completed in violation of some agreement between Claimant and Homecomings. However, to state a claim for breach of contract, Claimant must establish that Homecomings had an obligation not to advertise the foreclosure sale in advance of the foreclosures and that she was somehow damaged by Homecomings's advertisements. See Shirley's Realty, Inc. v. Hunt, 160 S.W.3d 804, 807 (Mo. Ct. App. 2005) ("To make a claim for breach of contract, 'the plaintiff must show the existence of a contract or agreement and the terms of that agreement, that the plaintiff performed or tendered performance, that the defendant did not perform, and that the plaintiff was thereby damaged.'") (citation omitted). But Claimant fails to allege how Homecomings's pre-foreclosure advertising harmed her. She does not assert, for example, that she had equity in the Properties, was trying to sell them and suffered the loss of potential sales that could have benefited her. Indeed, any potential buyer would know that the homes were in foreclosure through a title search.[2]

25. Moreover, Claimant's other allegations that sound in breach of contract: (a) Homecomings's failure to inform its attorneys that the foreclosures should have been

---

[2] Likewise, Claimant has failed to plead (let alone prove by evidence) a tort claim on account of Homecomings's alleged conduct for failure to state how she was damaged. See Travelers Indemnity Co. v. Chumbley, 394 S.W.2d 418, 422 (Mo. Ct. App. 1965) ("Damages, both general and special, constitute but a single element, albeit a necessary one, of a tort.").

11

cancelled after Homecomings was purportedly advised that payment was forthcoming from Elegant, and (b) Homecomings's inaccurate communications with Claimant regarding loan servicing generally, suffer from the same deficiency. Other than stating that such conduct was improper, the Response lacks any explanation of how and to what extent Claimant was damaged. For example, on the question of failing to suspend foreclosures as allegedly promised, while the Debtors do not concede that Homecomings agreed to suspend the foreclosures while Claimant tried to find the money to cure her defaults, it bears remembering that Homecomings had no obligation whatsoever to agree to suspend the foreclosures. Thus, even if Homecomings had made such a promise, Claimant is no worse off than if it had not done so, and Claimant offers nothing to indicate that she was otherwise harmed. As well, Claimant fails to describe how the allegedly inaccurate communications caused her any damage.

26.     Accordingly, even if supplemented by the Response, the Claim fails to state a claim against the Debtors.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested in the Objection and herein, and such other and further relief as the Court may deem proper.

Dated: December 13, 2013                    /s/ Norman S. Rosenbaum
                                                                        Gary S. Lee
                                                                        Adam A. Lewis
                                                                        Norman S. Rosenbaum
                                                                        Jordan A. Wishnew
                                                                        MORRISON & FOERSTER LLP
                                                                        1290 Avenue of the Americas
                                                                        New York, New York 10104
                                                                        Telephone: (212) 468-8000
                                                                        Facsimile: (212) 468-7900

                                                                        *Counsel for the Debtors and*
                                                                        *Debtors in Possession*