**Hearing Date:  December 17, 2013 at 10:00 a.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' OMNIBUS REPLY IN SUPPORT OF DEBTORS'**
**FIFTY-FIRST OMNIBUS OBJECTION TO CLAIMS (BORROWER BOOKS**
**AND RECORDS CLAIMS – RES JUDICATA AND WRONG DEBTOR)**

ny-1121472

**Table of Contents**

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
| REPLY | 2 |
| I.  THE NINTH CIRCUIT COURT OF APPEALS CASES | 4 |
|     A.  Sepideh Sally Cirino (Claim No. 3893) | 4 |
|     B.  Marlow Hooper and Monique Hooper (Claim No. 1007) | 6 |
|     C.  Under Federal Law, the Cirino Claim and the Hooper Claim are Barred by the Doctrine of Res Judicata | 7 |
| II.  THE MICHIGAN STATE CASES | 9 |
|     A.  Jeffrey M. Davis (Claim Nos. 1541 and 1542) | 9 |
|          i.  Claim 1542 | 9 |
|          ii.  Claim 1541 | 11 |
|     B.  Under Michigan Law, the Davis Claims are Barred by the Doctrine of Res Judicata | 13 |
| CONCLUSION | 15 |

Exhibit List

Exhibit 1    Responses to Fifty-First Omnibus Objection to Claims

Exhibit 2    Disputed Claims

Exhibit 3    Supplemental Declaration

Exhibit 4    California District Court Order

Exhibit 5    Compromise Order

Exhibit 6    Claim Objection Order

Exhibit 7    BAP Judgment

Exhibit 8    Dismissal Order for the First Davis Litigation

Exhibit 9    Stay Order for First Davis Appeal

Exhibit 10   Permitted Claims Order

Exhibit 11   Non-Permitted Claims Order

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Allen v. McCurry,
    449 U.S. 90, 94 (1980)..................................................................................................3

Blonder-Tongue Laboratories v. University of Illinois Foundation,
    402 U.S. 313 (1971).................................................................................................3, 7

Brownridge v. Michigan Mutual Insurance Co.,
    115 Mich. App. 745 (1982) ...................................................................................13, 15

Burgos v. Hopkins,
    14 F.3d 787 (2d. Cir. 1994)............................................................................................3

Burka v. New York.City Transit Authority,
    32 F.3d 654 (2d. Cir. 1994).......................................................................................3, 13

Chakan v. City of Detroit,
    998 F. Supp. 779 (E.D. Mich. 1998)............................................................................14

Deposit Bank of Frankfort v. Bd. of Councilmen of the City of Frankfort,
    199 U.S. 487 (1905)......................................................................................................8

Feinberg v. Bank of New York (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010)...........................................................................3

Heiser v. Woodruff,
    327 U.S. 726 (1946)...............................................................................................3, 4, 7

Huron Holding Corp. v. Lincoln Mine Operating Co.,
    312 U.S. 183 (1941)......................................................................................................8

In re Bear Stearns Cos., Inc., Securities Derivative & ERISA Litigation,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011)...........................................................................4

In re Dominelli,
    820 F.2d 313 (9th Cir. 1987) ........................................................................................9

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, Peter J. Solomon Co., L.P. v.
    Oneida, Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
    2010) ..............................................................................................................................1

In re Rockefeller Center Properties,
  272 B.R. 524 (Bankr. S.D.N.Y. 2000), *aff'd sub nom.*, NBC v. Rockefeller Center
  Properties (In re Rockefeller Center Properties), 266 B.R. 52 (S.D.N.Y. 2001), *aff'd*,
  46 Fed. Appx. 40 (2d Cir. 2002)...............................................................................................1

Montana v. United States,
  440 U.S. 147 (1979).................................................................................................................8

New York v. Sokol (In re Sokol),
  113 F.3d 303 (2d Cir. 1997).............................................................................................3, 13

Rein v. Providian Financial Corp.,
  270 F.3d 895 (9th Cir. 2001) ..................................................................................................9

Richards v. Tibaldi,
  272 Mich. App. 522 (2007) ..................................................................................................13

Sewell v. Clean Cut Management, Inc.,
  463 Mich. 569 (2001) ....................................................................................................13, 14

The Mable Cleary Trust v The Edward-Marlah Muzyl Trust,
  262 Mich. App. 485 (2004) ..................................................................................................14

**STATUTES**

11 U.S.C. § 502.............................................................................................................................2

28 U.S.C. § 1331...........................................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. Pro. 41......................................................................................................................8

Residential Capital, LLC ("ResCap") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby submit this omnibus reply (the "Reply") to certain responses, objections and oppositions (collectively, the "Responses") interposed by those claimants (collectively, the "Claimants"), listed on Exhibit 1 annexed hereto, to the *Debtors' Fifty-First Omnibus Objection to Claims (Borrower Books and Records Claims – Res Judicata and Wrong Debtor)* [Docket No. 5646] (the "Objection"). In support of the Reply, the Debtors submit the Supplemental Declaration of Lauren Graham Delehey, annexed hereto as Exhibit 3 (the "Supplemental Declaration"). In further support hereof, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.  The Debtors examined each of the Responses and the statements and exhibits submitted in support thereof. Exhibit 1 contains a brief summary of each Claimant's Response. Copies of the claims that are at issue in the Responses are attached hereto as Exhibit 2.

2.  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, Peter J. Solomon Co., L.P. v. Oneida, Ltd., No. 09-cv-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), *aff'd sub nom.*, NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), *aff'd,* 46 Fed. Appx. 40 (2d Cir. 2002). Each Claimant has failed to provide a sufficient explanation as to why its claim should be allowed notwithstanding the governing law in the Claimant's jurisdiction permitting the application of res judicata to a claim that is on appeal. Accordingly, the relief sought in the Objection should be granted with respect to the Claimants.

**BACKGROUND**

3. In connection with the claims reconciliation process, the Debtors identified certain claims filed by Borrowers[1] that failed to establish a liability against any of the Debtors (the "No Liability Borrower Claims").

4. After consulting with SilvermanAcampora LLP, special borrowers' counsel to the official committee of unsecured creditors ("Special Counsel"), the Debtors sent Request Letters to those Borrowers who filed the No Liability Borrower Claims with insufficient or no supporting documentation requesting additional documentation in support of such claims. The Request Letters required the claimant to substantiate the legal and factual reasons as to why the claimant believes it is owed money or is entitled to other relief from the Debtors. The claimant was required to provide copies of any and all documentation that they believe supports the basis for his or her claim.

5. On November 8, 2013, the Debtors filed the Objection to the No Liability Borrower Claims. After the Debtors filed the Objection, each of the Claimants submitted a Response, as summarized on Exhibit 1 annexed hereto.

**REPLY**

6. A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Moreover, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1). Furthermore, the burden of persuasion is on the holder of a proof of claim to

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in each Objection.

establish a valid claim against a debtor. Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

7.  Upon review of the Responses and as explained in further detail below and in the Supplemental Declaration, the Debtors conducted an exhaustive examination of their books and records to assess the allegations made in the No Liability Borrower Claims and the Responses. The Debtors determined that each of the No Liability Borrower Claims listed on the Exhibit 1 is based on either Michigan state or federal court litigation that has been dismissed with prejudice as to the Debtors and thus the No Liability Borrower Claims are barred by the doctrine of res judicata. See Objection at ¶¶ 26-27.

8.  The doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Burgos v. Hopkins, 14 F.3d 787, 789 (2d. Cir. 1994) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980). Moreover, when a judgment is issued by a state court, the preclusive effect of such determination "in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . . ." New York v. Sokol (In re Sokol), 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). Therefore, "[i]n applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. N.Y.C. Transit Auth., 32 F.3d 654, 657 (2d. Cir. 1994) (citation omitted). Similarly, federal courts must apply federal res judicata law when determining the preclusive effect of prior federal-question federal court decisions. See Blonder-Tongue Labs. v. Univ. of Ill. Found., 402 U.S. 313, 324, n.12 (1971) ("In federal-question cases, the law applied is federal law."); Heiser v. Woodruff, 327 U.S. 726,

733 (1946) ("It has been held in non-diversity cases, since *Erie v. Tompkins*, that the federal courts will apply their own rule of *res judicata*.").

9. Although the No Liability Borrower Claims involve litigation that has been appealed by the Borrower, the pendency of an appeal does not necessarily impair the preclusive effect of the underlying judgment under the principles of res judicata. See In re Bear Stearns Cos., Inc., Secs. Derivative & ERISA Litig., 763 F. Supp. 2d 423, 544 (S.D.N.Y. 2011) ("under New York law, a judgment entered by a trial court is 'final' for purposes of res judicata, even where an appeal is pending from the trial court's judgment").

10. As discussed in greater detail below, Michigan state and federal courts follow the same principle set forth in Bear Stearns in that they hold that a judgment on appeal is final for purposes of applying the doctrine of res judicata. Accordingly, for the reasons discussed herein, the No Liability Borrower Claims are barred by the doctrine of res judicata and should be disallowed and expunged from the Debtors' claims register.

I.   **THE NINTH CIRCUIT COURT OF APPEALS CASES**

   A.   **Sepideh Sally Cirino (Claim No. 3893)**

11. Ms. Cirino's claim, number 3893 (the "Cirino Claim"), which was filed as a general unsecured claim in an unliquidated amount, relates to litigation (the "Cirino Litigation") initiated by Ms. Cirino in the United States District Court for the Central District of California (the "California District Court"). The Cirino Litigation stems from two loans obtained by Ms. Cirino on or about October 20, 2004 in the amounts of $1,320,000.00 and $400,000 (the "Cirino Loans"), which were secured by first and second priority deeds of trust that encumber Ms. Cirino's property located at 27495 Hidden Trail Road, Laguna Hills, California, 92653. See Supplemental Declaration at ¶ 6. Ms. Cirino defaulted on the Cirino Loans, and, after failing to cure the default, a notice of trustee's sale was recorded on April 27, 2011. See id.

4

12. On December 7, 2011, Ms. Cirino initiated the Cirino Litigation against GMAC Mortgage, LLC ("GMACM"), Wells Fargo Bank, N.A., Impac Funding Corporation, Mortgage Electronic Registration System, Inc. ("MERS"), and Does 1 through 100 Inclusive, seeking $1,651,030,464.00 in damages. See id. at ¶ 7. On February 27, 2012, the California District Court dismissed Ms. Cirino's original complaint, with leave to amend. See id.

13. On or about March 19, 2012, Ms. Cirino filed an amended complaint, which asserted causes of action against the defendants for (i) violations of the Fair Debt Collection Practices Act ("FDCPA"), (ii) violations of the Fair Credit Reporting Act ("FCRA"); (iii) violations of the Securities Act of 1933, (iv) violation of section 10(b) of the Securities Exchange Act of 1934, (v) mail fraud and (vi) violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. See id. at ¶ 8. Accordingly, the California District Court had federal question jurisdiction over this matter under section 1331 of the United States Code because Ms. Cirino's causes of action are premised on federal statutes. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

14. On or about May 14, 2012, the California District Court entered an order dismissing the amended complaint without leave to amend, and on June 14, 2012, the California District Court entered a judgment (the "California District Court Order"). See California District Court Order, a copy of which is attached hereto as Exhibit 4.

15. On or about November 5, 2012, Ms. Cirino filed a brief with the United States Court of Appeal for the Ninth Circuit (the "Ninth Circuit") appealing the dismissal by the California District Court (the "Cirino Appeal"). See Supplemental Declaration at ¶ 10. The Cirino Appeal is currently stayed as to GMACM. See id.

### B. Marlow Hooper and Monique Hooper (Claim No. 1007)

16. Mr. and Ms. Hooper's claim, number 1007 (the "Hooper Claim"), which was filed as a general unsecured claim in the amount of $460,000.00, relates to an adversary proceeding (the "Adversary Proceeding") in Mr. and Ms. Hooper's chapter 7 bankruptcy proceedings (the "Hooper Bankruptcy"). The Hooper Bankruptcy was filed on October 15, 2008 in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court"). See id. at ¶ 11. On or around September 15, 2009, GMACM filed a secured claim in the Hooper Bankruptcy in the amount of $1,000,000.00 on account of the lien against Mr. and Ms. Hooper's property located at 5455 Peppertree Place, Ranch Cucamonga, California (the "Hooper Property"). See id.

17. During the Hooper Bankruptcy, the trustee commenced the Adversary Proceeding in order to avoid a re-recording of GMACM's deed of trust as a preference. See id. at ¶ 12. Subsequently, GMACM and the trustee reached a compromise (the "Compromise"), under which a portion of GMACM's lien would be avoided for the benefit of the bankruptcy estate, and the trustee sought approval of the Compromise by the California Bankruptcy Court. See id. On November 30, 2010, Mr. and Ms. Hooper filed an objection to GMACM's proof of claim, and on or about December 28, 2010, Mr. and Ms. Hooper filed an objection to the Compromise. See id. Nevertheless, on April 20, 2011, the California Bankruptcy Court entered an order approving the Compromise (the "Compromise Order"), and on May 31, 2011, the California Bankruptcy Court entered an order overruling Mr. and Ms. Hooper's objection to GMACM's claim (the "Claim Objection Order"). See Compromise Order, a copy of which is attached hereto as Exhibit 5; Claim Objection Order, a copy of which is attached hereto as Exhibit 6.

18.    On May 27, 2011 and June 1, 2011, Mr. and Ms. Hooper filed notices of appeal with respect to the Compromise Order and the Claim Objection Order, respectively. See id. Such appeals were heard by the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP"). See id. On February 14, 2012, the BAP entered a judgment affirming the California Bankruptcy Court's orders (the "BAP Judgment"). See BAP Judgment, a copy of which is attached hereto as Exhibit 7.

19.    On or about March 10, 2012, Mr. and Ms. Hooper filed a notice of appeal of the BAP Judgment in the Ninth Circuit (the "Hooper Appeal"). See Supplemental Declaration at ¶ 14. As of the date of this Reply, the Hooper Appeal is stayed as to the Debtors. See id.

### C.    Under Federal Law, the Cirino Claim and the Hooper Claim are Barred by the Doctrine of Res Judicata

20.    The Cirino Claim and the Hooper Claim are attempts to relitigate claims that have already been judicially determined by the California District Court and the California Bankruptcy Court, respectively. As such, the Cirino Claim and the Hooper Claim should be disallowed and expunged under the doctrine of res judicata.

21.    The litigation underlying both the Cirino Claim and the Hooper Claim was adjudicated by federal courts, namely the California District Court and the California Bankruptcy Court, addressing federal issues. Accordingly, when deciding whether to apply the doctrine of res judicata, this Court should look to federal preclusion law. See Blonder-Tongue Labs., 402 U.S. at 324, n.12 ("In federal-question cases, the law applied is federal law."); Heiser, 327 U.S. at 733 ("It has been held in non-diversity cases, since *Erie v. Tompkins*, that the federal courts will apply their own rule of *res judicata*.").

22.    To establish res judicata under federal law, the proponent must establish three elements: (i) a final judgment on the merits; (ii) that is between the same parties or their

privies; and (iii) a subsequent suit based on the same cause of action or same nucleus of operative facts. See Montana v. United States, 440 U.S. 147, 153 (1979)). Based on the respective Responses filed by Ms. Cirino and Mr. and Ms. Hooper, it is undisputed that the claims asserted by the Cirino Claim and the Hooper Claim (i) were decided by the California District Court and the California Bankruptcy Court, respectively, (ii) are between the same parties and (iii) are based on the same cause of action and the same nucleus of operative facts as in the dismissed actions.

23.     Rather than argue that the issues relevant to the underlying litigation differ from those asserted in the Cirino Claim and the Hooper Claim, Ms. Cirino and Mr. and Ms. Hooper each assert that their respective claims should not be disallowed under the doctrine of res judicata because the Claimants' respective matters are currently subject to pending appeals in the Ninth Circuit, and thus have not been finally decided. However, this assertion is incorrect. Under federal law, the pendency of an appeal does not alter the res judicata nature of a trial court judgment. See Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 189 & n.8 (1941) ("[W]hile appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality."); Deposit Bank of Frankfort v. Bd. of Councilmen of the City of Frankfort, 199 U.S. 487, 499 (1905).

24.     Moreover, under the Federal Rules of Civil Procedure, the California District Court Dismissal Order is a final order on merits. See Fed. R. Civ. Pro. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication on the merits."). Additionally, under Ninth Circuit case law, the Compromise Order and the Claim Objection Order are also

8

final judgments on the merits. See Rein v. Providian Financial Corp., 270 F.3d 895, 903 (9th Cir. 2001) ("A judicially approved settlement agreement is considered a final judgment on the merits.") (citations omitted); In re Dominelli, 820 F.2d 313, 316-17 (9th Cir. 1987) ("We hold that the settlement and dismissal of the trustee's action against Steinford operates as res judicata to bar Lawrence from bringing his own action. The trustee's action, resulting in a settlement of the claim and the district court's approval of the settlement and dismissal of the action, amounts to a final judgment on the merits.").

25. Accordingly, the Cirino Claim and the Hooper Claim are barred by the doctrine of res judicata and should be disallowed and expunged from the Debtors' claims register because: (i) each Claim is based on underlying litigation that has been adjudicated and decided on the merits by the California District Court and the California Bankruptcy Court, respectively; and (ii) that appeals are pending with respect to the underlying litigations does not, under applicable federal law, alter the finality of the decisions for purposes of res judicata.

## II. THE MICHIGAN STATE CASES

### A. Jeffrey M. Davis (Claim Nos. 1541 and 1542)

#### i. Claim 1542

26. Mr. Davis's claim, number 1542 (the "Davis Claim 1542"), which was filed as a general unsecured claim in the amount of $698,000.00, relates to litigation (the "First Davis Litigation") initiated by Mr. Davis in the Circuit Court for the County of Oakland in the State of Michigan (the "Michigan Circuit Court"). The named defendants in the First Davis Litigation included GMACM (incorrectly identified as GMAC), GMAC, LLC, Ally Bank Inc. and MERS. See Supplemental Declaration at ¶ 15. On March 17, 2008, Mr. Davis received a loan from GMACM in the amount of $144,000 (the "Davis Loan"), which was secured by a mortgage interest in favor of MERS, as nominee for GMACM, in Mr. Davis's property located

9

at 115 South Gainsborough, Royal Oak, Michigan (the "Davis Property"). See id. Mr. Davis defaulted on the Davis Loan and, as a result, a foreclosure by advertisement proceeding was commenced, which resulted in a sheriff's sale of the Davis Property on August 10, 2010. See id.

27.    In the First Davis Litigation, Mr. Davis challenged the foreclosure by advertisement, which was conducted in the name of MERS. See id. at ¶ 16. Based on a Michigan Court of Appeals decision (which was later reversed by the Michigan Supreme Court) finding that MERS may not foreclose upon a real estate mortgage using Michigan's foreclosure by advertisement process, GMACM, during the pendency of the First Davis Litigation, (i) decided to set aside the foreclosure sale and initiate a new foreclose on Mr. Davis's property and (ii) recorded the affidavit rescinding the foreclosure. See id.

28.    Nevertheless, Mr. Davis refused to dismiss the First Davis Litigation, contending that GMACM's violation of the foreclosure laws permitted the Michigan Circuit Court to compel a modification of his loan and entitled him to damages due to GMACM's intentional infliction of emotional distress. See id. at ¶ 17. Consequently, the defendants (including GMACM) filed a motion for summary disposition, arguing that: (i) the equitable relief sought by Mr. Davis was rendered moot by GMACM's action to set aside the foreclosure sale and the unavailability of a modification under Michigan's foreclosure by advertisement statute; and (ii) the tort damages sought by Mr. Davis failed as a matter of law due to a lack of evidentiary support. See id. On November 30, 2011, the Michigan Circuit Court entered an order granting the motion for summary disposition and dismissing Mr. Davis's complaint (the "Dismissal Order for the First Davis Litigation"). See Dismissal Order for the First Davis Litigation, a copy of which is attached hereto as Exhibit 7.

10

ny-1121472

29. On or about December 19, 2011, Mr. Davis appealed the decision of the Michigan Circuit Court (the "First Davis Appeal") to the Court of Appeals for the State of Michigan (the "Michigan Court of Appeals"). See Supplemental Declaration at ¶ 18. During the pendency of the First Davis Appeal, the Debtors initiated these chapter 11 cases. See id. As a result, on June 13, 2012, the Michigan Court of Appeals stayed the First Davis Appeal (the "Stay Order for First Davis Appeal"). See Stay Order for First Davis Appeal, a copy of which is attached hereto as Exhibit 8. The Stay Order for First Davis Appeal indicates that the First Davis Appeal is closed without prejudice and may be reopened on motion when the bankruptcy stay has been removed. See id. Mr. Davis has not moved to reopen the First Davis Appeal, which, as of the date of this Reply, remains stayed. See Supplemental Declaration at ¶ 18.

### ii. Claim 1541

30. Mr. Davis's claim, number 1541 (the "Davis Claim 1541" and together with the Davis Claim 1542, the "Davis Claims"), which was filed as a general unsecured claim in the amount of $195,450.00, relates to litigation initiated by Mr. Davis on or about May 24, 2012 (the "Second Davis Litigation") in the Michigan Circuit Court. GMACM and MERS were named as defendants in the Second Davis Litigation, which was commenced after GMACM reinitiated foreclosure proceedings and conducted a second sale of the Davis Property. See Supplemental Declaration at ¶ 19. In the Second Davis Litigation, Mr. Davis again challenged GMACM's compliance with the loan modification review provisions of the Michigan foreclosure by advertisement statute. See id.

31. More specifically, in the Second Davis Litigation, Mr. Davis sought the following equitable relief: (i) an order setting aside the foreclosure and sheriff's sale; (ii) an order compelling the defendants to comply with Michigan state law and modify the terms and conditions of Mr. Davis's mortgage; and (iii) an order modifying Mr. Davis's loan agreement to

11

reflect an outcome consistent with Michigan state law, such as a loan modification (collectively, the "Permitted Claims"). See id. at ¶ 20. Additionally, Mr. Davis sought the following relief: (i) an order granting Mr. Davis his costs, attorneys' fees and expenses relating to the Second Davis Litigation; (ii) an order denying the costs, expenses and interest claimed by the defendants; (iii) an order staying the Second Davis Litigation until the First Davis Appeal is concluded; and (iv) an order granting such other relief to which Mr. Davis is entitled (collectively, the "Non-Permitted Claims"). See id.

32. On August 22, 2012, GMACM filed a notice of bankruptcy in the Second Davis Litigation explaining that the Non-Permitted Claims should be stayed as to GMACM and the Permitted Claims should be allowed to proceed against GMACM. See id. at ¶ 21. Moreover, on August 31, 2012, the defendants filed a motion for summary disposition arguing that the Michigan Circuit Court should dismiss the Permitted Claims with prejudice as to both GMACM and MERS and should dismiss the Non-Permitted Claims with prejudice as to only MERS. See id. The Michigan Circuit Court granted the motion from the bench and requested that the parties submit an order. See id. The parties agreed upon two orders, which were entered by the Michigan Circuit Court on or about November 26, 2012. See id. The first order dismissed, with prejudice, the Permitted Claims with respect to both GMACM and MERS and the Non-Permitted Claims with respect to MERS (the "Permitted Claims Order"). See Permitted Claims Order, a copy of which is attached hereto as Exhibit 9. The second order was a stipulated order dismissing, with prejudice, the Non-Permitted Claims against GMACM (the "Non-Permitted Claims Order"). See Non-Permitted Claims Order, a copy of which is attached hereto as Exhibit 10.

12

33. On or about December 19, 2012, Mr. Davis appealed the Permitted Claims Order to the Michigan Court of Appeals (the "Second Davis Appeal"). See Supplemental Declaration at ¶ 22. The Second Davis Appeal is fully briefed and, as of the date of this Reply, is pending before the Michigan Court of Appeals. See id.

### B. Under Michigan Law, the Davis Claims are Barred by the Doctrine of Res Judicata

34. The Davis Claims are attempts to relitigate claims that have already been judicially determined by the Michigan Circuit Court. Consequently, the Davis Claims should be disallowed and expunged under the doctrine of res judicata.

35. The litigation underlying both of the Davis Claims was adjudicated under Michigan state law. Thus, when deciding whether to apply the doctrine of res judicata, this Court should look to Michigan res judicata law. See In re Sokol, 113 F.3d at 306 ("[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ."); Burka, 32 F.3d at 657 ("In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court.").

36. To establish res judicata under Michigan law, the proponent must show that: (i) "the prior action was decided on the merits"; (ii) "the decree in the prior action was a final decision"; (iii) "the matter contested in the second case was or could have been resolved in the first"; and (iv) "both actions involved the same parties or their privies". Richards v. Tibaldi, 272 Mich. App. 522, 531 (2007); see Sewell v. Clean Cut Mgmt., Inc., 463 Mich. 569, 575 (2001); Brownridge v. Mich. Mut. Ins. Co., 115 Mich. App. 745, 748 (1982). Moreover, Michigan courts broadly interpret the doctrine of res judicata to bar "not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable

13

ny-1121472

diligence, could have raised but did not." Sewell, 463 Mich. at 575. Based on the Davis Claims and the Response, it is evident that the issues asserted in the Davis Claims (i) were decided by the Michigan Circuit Court, (ii) are between the same parties and (iii) are based on the same cause of action and the same nucleus of operative facts as the actions before the Michigan Circuit Court.

37. Rather than argue that the issues relevant to the underlying litigation differ from those asserted in the Davis Claims, Mr. Davis appears to assert that the Davis Claims should not be disallowed under the doctrine of res judicata because the decisions in the First Davis Litigation and the Permitted Claims in the Second Davis Litigation are currently subject to pending appeals in the Michigan Court of Appeals, and thus have not been finally decided. However, this assertion is incorrect. As with federal law, under Michigan state law, the pendency of an appeal does not alter the res judicata nature of a trial court judgment. See Chakan v. City of Detroit, 998 F. Supp. 779, 783 (E.D. Mich. 1998) ("Michigan and federal courts agree that an appeal of a judgment does not alter the preclusive effect of the same.").

38. In addition, in the Response, Mr. Davis seems to assert that the Dismissal Order for the First Davis Litigation and the Permitted Claims Order were not decisions on the merits, and consequently, are not barred by the doctrine of res judicata. See Response at 11. However, Michigan law provides that a court's grant of summary disposition is a final decision on the merits. See The Mable Cleary Trust v The Edward-Marlah Muzyl Trust, 262 Mich. App. 485, 510 (2004) ("[A] summary disposition ruling is the procedural equivalent of a trial on the merits that bars relitigation on principles of res judicata."). The Dismissal Order for the First Davis Litigation and the Permitted Claims Order were both entered by the Michigan Circuit

14

Court in response to motions for summary disposition. Thus, under Michigan law, such Orders are decisions on the merits for purposes of a res judicata analysis.

39. Moreover, to the extent that Mr. Davis asserts that the Non-Permitted Claims Order is not a final decision on the merits because the Order was stipulated to by the parties, such assertion is also be incorrect. Under Michigan law, "[a] voluntary dismissal with prejudice is a final judgment on the merits for res judicata purposes." Brownridge, 115 Mich. App. at 748. The Non-Permitted Claims Order clearly dismisses the Non-Permitted Claims "with prejudice and without costs as to Defendant GMAC Mortgage LLC ("GMACM") only." See Non-Permitted Claims Order at 2. Therefore, the Non-Permitted Claims Order is a final order on the merits under the doctrine of res judicata.

40. Accordingly, the Davis Claims are barred by the doctrine of res judicata and should be disallowed and expunged from the Debtors' claims register because: (i) each of the Davis Claims is based on underlying litigation that has been adjudicated and decided on the merits by the Michigan Circuit Court; and (ii) that appeals are pending with respect to the underlying litigations does not, under applicable Michigan law, alter the finality of the decisions for purposes of res judicata.

## CONCLUSION

WHEREFORE, the Debtors respectfully submit that the relief sought in the Objection should be granted with respect to the Claimants.

Dated: December 13, 2013  
      New York, New York

/s/ Norman S. Rosenbaum  
Gary S. Lee  
Norman S. Rosenbaum  
Jordan A. Wishnew  
MORRISON & FOERSTER LLP  
1290 Avenue of the Americas  
New York, New York 10104  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900

*Counsel for the Debtors and Debtors in Possession*

16