# Exhibit 3

**Supplemental Declaration**

ny-1121472

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

**SUPPLEMENTAL DECLARATION OF LAUREN GRAHAM DELEHEY**
**WITH RESPECT TO DEBTORS' FIFTY-FIRST OMNIBUS OBJECTION**
**TO CLAIMS (BORROWER BOOKS AND RECORDS CLAIMS –**
**<u>RES JUDICATA AND WRONG DEBTOR</u>)**

Lauren Graham Delehey, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1. I serve as Chief Litigation Counsel in the legal department at Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>"). I have served as in-house litigation counsel since I joined ResCap on August 1, 2011.

2. In my role as Chief Litigation Counsel at ResCap, I am responsible for the management of litigation, including residential mortgage-related litigation, class actions, mass actions and multi-district litigation. In connection with ResCap's chapter 11 filing, I also assist the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court. I am authorized to submit this supplemental declaration (the "<u>Supplemental Declaration</u>") with respect to the

ny-1121472

*Debtors' Omnibus Reply in Support of Debtors' Fifty-First Omnibus Objection to Claims (Borrower Books and Records Claims – Res Judicata and Wrong Debtor)* (the "Reply").[1]

   3. Except as otherwise indicated, all facts set forth in this Supplemental Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other members of the Debtors' management or other employees of the Debtors, the Debtors' professionals and consultants, and/or Kurtzman Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent. If I were called upon to testify, I could and would testify competently to the facts set forth in the Reply on that basis.

   4. Upon commencement of litigation against them, it was the Debtors' regular practice to retain outside litigation counsel to represent their interests and I or another member of the in-house litigation group would communicate with and direct litigation counsel regarding the conduct of the litigation throughout the life of the case. In reviewing the No Liability Borrower Claims, the Debtors expended considerable resources to diligently review the case notes from their internal electronic case management system and their internal files relating to the litigation, including relevant underlying documents such as the note, loan agreement and/or deed of trust (the "Litigation File"). In each case, the Debtors also supplemented the Litigation File by reaching out to the outside litigation counsel who handled the litigation to obtain a current update as to the status of the litigation, as well as copies of any relevant case dockets, complaints, answers, counterclaims, motions, responsive pleadings and any other relevant documents relating to the underlying litigation.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Supplemental Reply.

2

ny-1121472

5.      The Debtors have examined each of the Responses and the statements and exhibits submitted in support thereof, and compared the claims set forth therein to the information contained in the Litigation Files (as supplemented with information provided by outside counsel).

**A.      Sepideh Sally Cirino (Claim No. 3893)**

6.      Ms. Cirino's claim, number 3893 (the "Cirino Claim") relates to litigation (the "Cirino Litigation") initiated by Ms. Cirino in the United States District Court for the Central District of California (the "California District Court"). The Cirino Litigation stems from two loans obtained by Ms. Cirino on or about October 20, 2004 in the amounts of $1,320,000.00 and $400,000 (the "Cirino Loans"), which were secured by first and second priority deeds of trust that encumber Ms. Cirino's property located at 27495 Hidden Trail Road, Laguna Hills, California, 92653. Ms. Cirino defaulted on the Cirino Loans, and, after failing to cure the default, a notice of trustee's sale was recorded on April 27, 2011.

7.      On December 7, 2011, Ms. Cirino initiated the Cirino Litigation against GMAC Mortgage, LLC ("GMACM"), Wells Fargo Bank, N.A., Impac Funding Corporation, Mortgage Electronic Registration System, Inc. ("MERS"), and Does 1 through 100 Inclusive, seeking $1,651,030,464.00 in damages. On February 27, 2012, the California District Court dismissed Ms. Cirino's original complaint, with leave to amend.

8.      On or about March 19, 2012, Ms. Cirino filed an amended complaint, which asserted causes of action against the defendants for (i) violations of the Fair Debt Collection Practices Act ("FDCPA"), (ii) violations of the Fair Credit Reporting Act ("FCRA"); (iii) violations of the Securities Act of 1933, (iv) violation of section 10(b) of the Securities

3

Exchange Act of 1934, (v) mail fraud and (vi) violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.

9. On or about May 14, 2012, the California District Court entered an order dismissing the amended complaint without leave to amend, and on June 14, 2012, the California District Court entered the judgment.

10. On or about November 5, 2012, Ms. Cirino filed a brief with the United States Court of Appeal for the Ninth Circuit (the "Ninth Circuit") appealing the dismissal by the California District Court (the "Cirino Appeal"). The Cirino Appeal is currently stayed as to GMACM.

**B.    Marlow Hooper and Monique Hooper (Claim No. 1007)**

11. Mr. and Ms. Hooper's claim, number 1007 (the "Hooper Claim") relates to an adversary proceeding (the "Adversary Proceeding") that was commenced in the context of Mr. and Ms. Hooper's chapter 7 bankruptcy proceedings (the "Hooper Bankruptcy"). The Hooper Bankruptcy was filed on October 15, 2008 in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court"). On or around September 15, 2009, GMACM filed a secured claim in the Hooper Bankruptcy in the amount of $1,000,000.00. The Adversary Proceeding was based upon GMACM's secured claim against Mr. and Ms. Hooper's property located at 5455 Peppertree Place, Ranch Cucamonga, California (the "Hooper Property").

12. During the Hooper Bankruptcy, the trustee commenced the Adversary Proceeding in order to avoid a re-recording of GMACM's deed of trust as a preference. Subsequently, GMACM and the trustee reached a compromise (the "Compromise"), under which a portion of GMACM's lien would be avoided for the benefit of the bankruptcy estate,

4

ny-1121472

and the trustee sought approval of the Compromise by the California Bankruptcy Court.  On November 30, 2010, Mr. and Ms. Hooper filed an objection to GMACM's proof of claim, and on or about December 28, 2010, Mr. and Ms. Hooper filed an objection to the Compromise.  Nevertheless, on April 20, 2011, the California Bankruptcy Court entered an order approving the Compromise (the "Compromise Order"), and on May 31, 2011, the California Bankruptcy Court entered an order overruling Mr. and Ms. Hooper's objection to GMACM's claim (the "Claim Objection Order").

13. On May 27, 2011 and June 1, 2011, Mr. and Ms. Hooper filed notices of appeal with respect to the Compromise Order and the Claim Objection Order, respectively.  Such appeals were heard by the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP").  On February 14, 2012, the BAP entered a judgment affirming the California Bankruptcy Court's orders (the "BAP Judgment").

14. On or about March 10, 2012, Mr. and Ms. Hooper filed a notice of appeal of the BAP Judgment in the Ninth Circuit (the "Hooper Appeal").  The Hooper Appeal is currently stayed as to the Debtors.

**C.    Jeffrey M. Davis (Claim No. 1542)**

15. Mr. Davis's claim, number 1542 relates to litigation (the "First Davis Litigation") initiated by Mr. Davis in the Circuit Court for the County of Oakland in the State of Michigan (the "Michigan Circuit Court").  The named defendants in the First Davis Litigation included GMACM (incorrectly identified as GMAC), GMAC, LLC, Ally Bank Inc. and MERS.  On March 17, 2008, Mr. Davis received a loan from GMACM in the amount of $144,000 (the "Davis Loan"), which was secured by a mortgage interest in favor of MERS, as nominee for GMACM, in Mr. Davis's property located at 115 South Gainsborough, Royal Oak, Michigan

5

(the "Davis Property").  Mr. Davis defaulted on the Davis Loan and, as a result, a foreclosure by advertisement proceeding was commenced, which resulted in a sheriff's sale of the Davis Property on August 10, 2010.

16. In the First Davis Litigation, Mr. Davis challenged the foreclosure by advertisement, which was conducted in the name of MERS.  GMACM, during the pendency of the First Davis Litigation, (i) decided to set aside the foreclosure sale and initiate a new foreclose on Mr. Davis's property and (ii) recorded the affidavit rescinding the foreclosure.

17. Mr. Davis refused to dismiss the First Davis Litigation, contending that GMACM's violation of the foreclosure laws permitted the Michigan Circuit Court to compel a modification of his loan and entitled him to damages due to GMACM's intentional infliction of emotional distress.  Consequently, the defendants (including GMACM) filed a motion for summary disposition, arguing that: (i) the equitable relief sought by Mr. Davis was rendered moot by GMACM's action to set aside the foreclosure sale and the unavailability of a modification under Michigan's foreclosure by advertisement statute; and (ii) the tort damages sought by Mr. Davis failed as a matter of law due to a lack of evidentiary support.  On November 30, 2011, the Michigan Circuit Court entered an order granting the motion for summary disposition and dismissing Mr. Davis's complaint (the "Dismissal Order for the First Davis Litigation").

18. On or about December 19, 2011, Mr. Davis appealed the decision of the Michigan Circuit Court (the "First Davis Appeal") to the Court of Appeals for the State of Michigan (the "Michigan Court of Appeals").  During the pendency of the First Davis Appeal, the Debtors initiated these chapter 11 cases, and on June 13, 2012, the Michigan Court of

6

ny-1121472

Appeals stayed the First Davis Appeal. Mr. Davis has not moved to reopen the First Davis Appeal, which, as of the date of this Reply, remains stayed.

**D.    Jeffrey M. Davis (Claim No. 1541)**

19.    Mr. Davis's claim, number 1541 relates to litigation initiated by Mr. Davis on or about May 24, 2012 (the "Second Davis Litigation") in the Michigan Circuit Court. GMACM and MERS were named as defendants in the Second Davis Litigation, which was commenced after GMACM reinitiated foreclosure proceedings and conducted a second sale of the Davis Property. In the Second Davis Litigation, Mr. Davis again challenged GMACM's compliance with the loan modification review provisions of the Michigan foreclosure by advertisement statute.

20.    More specifically, in the Second Davis Litigation, Mr. Davis sought the following equitable relief: (i) an order setting aside the foreclosure and sheriff's sale; (ii) an order compelling the defendants to comply with Michigan state law and modify the terms and conditions of Mr. Davis's mortgage; and (iii) an order modifying Mr. Davis's loan agreement to reflect an outcome consistent with Michigan state law, such as a loan modification (collectively, the "Permitted Claims"). Additionally, Mr. Davis sought the following relief: (i) an order granting Mr. Davis his costs, attorneys' fees and expenses relating to the Second Davis Litigation; (ii) an order denying the costs, expenses and interest claimed by the defendants; (iii) an order staying the Second Davis Litigation until the First Davis Appeal is concluded; and (iv) an order granting such other relief to which Mr. Davis is entitled (collectively, the "Non-Permitted Claims").

21.    On August 22, 2012, GMACM filed a notice of bankruptcy in the Second Davis Litigation explaining that the Non-Permitted Claims should be stayed as to GMACM and

7

the Permitted Claims should be allowed to proceed against GMACM.  Moreover, on August 31, 2012, the defendants filed a motion for summary disposition arguing that the Michigan Circuit Court should dismiss the Permitted Claims with prejudice as to both GMACM and MERS and should dismiss the Non-Permitted Claims with prejudice as to only MERS.  The Michigan Circuit Court granted the motion from the bench and requested that the parties submit an order.  The parties agreed upon two orders, which were entered by the Michigan Circuit Court on or about November 26, 2012.  The first order dismissed, with prejudice, the Permitted Claims with respect to both GMACM and MERS and the Non-Permitted Claims with respect to MERS (the "Permitted Claims Order").  The second order was a stipulated order dismissing, with prejudice, the Non-Permitted Claims against GMACM (the "Non-Permitted Claims Order").

22. On or about December 19, 2012, Mr. Davis appealed the Permitted Claims Order to the Michigan Court of Appeals (the "Second Davis Appeal").  The Second Davis Appeal is fully briefed and, as of the date of this Reply, is pending before the Michigan Court of Appeals.

Dated:  December 13, 2013

/s/ Lauren Graham Delehey
Lauren Graham Delehey
Chief Litigation Counsel for
Residential Capital, LLC

8

ny-1121472