# EXHIBIT A

# In Re:
*RESIDENTIAL CAPITAL, LLC, et al.*

*Case No. 12-12020-mg*

*September 11, 2013*

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us.*



**Min-U-Script® with Word Index**

1        THE COURT:  They've got to put the people down.

2        MR. MASUMOTO:  -- they have to identify those

3    individuals and also confirm that these individuals actually

4    are entitled, that they're complying with the guidelines.

5        THE COURT:  Thank you, Mr. Masumoto.

6        MR. MASUMOTO:  Thank you.

7        THE COURT:  All right.  I'm going to go -- with that

8    explanation from Morrison Cohen and Mr. Masumoto's response,

9    I'm going to go ahead and approve the applications.

10       MR. MOLDOVAN:  Thank you, Your Honor.

11       THE COURT:  Thank you.

12       MR. MARINUZZI:  Your Honor, that brings us to Morrison

13   & Foerster, docket number 4551 requesting total fees of

14   $22,790,342.60, and expenses of $350,910.44.  After discussions

15   with the United States Trustee's Office, Morrison & Foerster

16   has reduced the total fee request to $22,750,816.10, and the

17   expenses remain as requested.

18       MR. MASUMOTO:  Your Honor, that's correct.  Based upon

19   the responses and our discussions, I believe we did reach an

20   accommodation on the various objections raised.

21       THE COURT:  So one of the -- Mr. Marinuzzi, among the

22   questions I have -- this has come up before -- and I understand

23   that necessarily you have a lot of attorneys working on the

24   matter, but there were quite a few entries for air fare from

25   D.C. to New York.  I assume it's because you had lawyers from

1    the D.C. office working on the matter.

2    MR. MARINUZZI:  That's correct.  Our regulatory
3    practice is based in Washington, D.C.  So with respect to the
4    discussions with the Fed, strategizing with respect to the
5    consent order, it's advice that's based in Washington.

6    THE COURT:  And I want to be consistent with what I've
7    done in the past, which is namely, if for convenience you are
8    staffing the matter which is in the court in New York with
9    lawyers from other offices, be it California or Washington, I
10    consider their travel expenses, hotel and air fare, to
11    appropriately be considered as part of overhead, and not
12    appropriately charged to the estate.

13    There were some other expense entries that raised
14    questions in my mind.  Again, it relates to, for example, a New
15    York hotel.  This issue has come up before.

16    MR. MARINUZZI:  Correct, Your Honor.  We have not --
17    it came up with respect to, in particular, Darryl Rains, who --

18    THE COURT:  It did.

19    MR. MARINUZZI:  -- was heavily involved in the RMBS
20    settlement, and he was --

21    THE COURT:  Right.

22    MR. MARINUZZI:  -- flying in on a regular basis,
23    weekly.  We're not charging the estate for any time spent by
24    Darryl traveling to New York and staying in New York hotels.
25    To the extent an issue arises and it's an isolated instance

1  where an attorney is required to travel into New York for a
2  meeting -- and sometimes people have to travel to Minneapolis,
3  because that's where --
4              THE COURT:  I understand the Minne -- we don't have to
5  go into the --
6              MR. MARINUZZI:  Right, okay.
7              THE COURT:  -- Minneapolis.  I understand the issues
8  about Minneapolis.  Okay?  So I'm focusing on travel to New
9  York, hotels in New York.
10             MR. MARINUZZI:  Understood.  And we wrote off a lot of
11 hotel charges, especially with respect to attorneys that made
12 regular appearances during the application period into New
13 York.
14             We did not write off all hotel charges for isolated
15 instances where there was a meeting that required somebody from
16 D.C. to come up and stay in New York or a hearing.  To the
17 extent the Court is going to rule that we're not permitted to
18 charge the estate for those charges, we'll write them off.
19             THE COURT:  Okay.  Mr. Masumoto?
20             MR. MASUMOTO:  Your Honor, this issue obviously came
21 up with other applicants.  Unfortunately, we're not able to
22 catch every one.  We tried to reach accommodations after
23 discussions determining whether or not, as Your Honor
24 indicated, the travel was for the convenience of the firm, and
25 we reached appropriate resolutions, I thought, in those cases.

12-12020-mg    Doc 6092-1    Filed 12/13/13    Entered 12/13/13 11:52:45    Exhibit A
Sept 11 Hearing Transcript Excerpts    Pg 6 of 7
**RESIDENTIAL CAPITAL, LLC, ET AL.**

50

1  I'll defer to the Court on --

2  THE COURT: Well, here's what -- I don't know what --

3  the chart shows, Mr. Marinuzzi, an adjustment of slightly less

4  than 40,000 dollars in fees and I guess none in expenses,

5  right?

6  MR. MARINUZZI: That's correct.

7  THE COURT: Okay.

8  MR. MARINUZZI: That's correct, Your Honor. There was

9  no objection to the expenses.

10  THE COURT: Right. Well, there is from me.

11  MR. MARINUZZI: There is -- that's a fair point, Your

12  Honor.

13  THE COURT: And I try to be consistent from one period

14  to the next. I thought I had made it clear that where you're

15  staffing the matter with lawyers from other offices, whether

16  it's Washington or California, you -- expenses: air fare,

17  hotel, meals, other than after 8 -- meals after 8 p.m., as

18  would apply to anybody else, is, as far as I'm concerned, part

19  of overhead.

20  And I want you to go back -- and I don't know whether

21  I've caught all of them. I have a list of them. I don't --

22  actually in the memo I have, I don't have the dates and stuff.

23  But I would like you to go back and make a further reduction on

24  the expenses for the travel expenses --

25  MR. MARINUZZI: To New York.

51

1     THE COURT:  -- to New York.  I understand the
2  Minneapolis under the issues --
3     MR. MARINUZZI:  That's fine, Your Honor.  We'll do
4  that.  And we've categorized in summary sheets for each of the
5  months, the total expenses relating to hotel and air fare, so
6  it shouldn't be too hard to do.  But we'll do that.
7     THE COURT:  Let me just see whether I had any other
8  issues.  I mean, it's an appropriately large -- when I say
9  "appropriate", I fully understand the size of the application.
10 It was an enormous amount of work that went into the matter.  I
11 consider these things nits, but nevertheless, I try to be
12 consistent with all counsel throughout the case.
13     Let me just go back over my notes and see whether I
14 Have some other items.
15     (Pause)
16     THE COURT:  Mr. Masumoto, do you have any other --
17     MR. MASUMOTO:  Not at this time, Your Honor.
18 Although, Your Honor, I did want to ask, perhaps, for Your
19 Honor's direction. With respect to meals, one of the --
20 unfortunately, given the large size of these applications, our
21 office had to actually -- requested assistance of other
22 attorneys in the program.  And sometimes we may not have had
23 complete uniformity in terms of our approach.  But with respect
24 to meals, I personally have been applying a rule where if an
25 applicant is not billing more than -- is billing less than four