**<u>Exhibit 3</u>**

**Cornerstone Research**

CORNERSTONE RESEARCH

599 Lexington Avenue 43ʳᵈ Floor
New York, NY 10022
Tel 212.605.5000
Fax 212.759.3045
www.cornerstone.com

May 8, 2013

J. Alexander Lawrence, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050

### Re:   GIC v. Residential Capital LLC

Dear Alexander:

This engagement letter agreement ("Agreement") confirms that Morrison & Foerster ("Morrison
& Foerster") has retained Cornerstone Research ("Cornerstone") as a consultant in connection
with the above-captioned matter. While Morrison & Foerster has retained Cornerstone,
Residential Capital LLC ("Residential Capital") will be responsible for the payment of
Cornerstone fees and expenses. Morrison & Foerster and Residential Capital understand that, at
this time, Cornerstone has reached no opinions in this matter, and cannot represent or guarantee
any opinion in advance. Any opinions that we develop during the course of our work will reflect
our independent, professional judgment. The following paragraphs outline the terms and
conditions of the engagement.

### Terms and Conditions of the Engagement
### of Cornerstone Research's Services

1.   **Scope of Work** – The scope of work covered by this Agreement will be determined by
     agreement between Morrison & Foerster and Cornerstone, and, if applicable, any expert
     being supported by Cornerstone. These consulting services may include, but are not
     limited to, supporting external retained and non-retained experts, and providing advice,
     expert testimony, expert reports, analyses, opinions, and/or conclusions, and any other
     consulting services Morrison & Foerster may request Cornerstone provide in conjunction
     with this matter, without need for a separate or additional engagement letter.

2.   **Support of External Experts** – Cornerstone is frequently asked to support external
     experts in connection with the matters on which we are engaged as consultants. External
     experts are retained separately from Cornerstone, set their own hourly rates, and bill
     separately. External experts are not Cornerstone employees and have no ownership
     interest in Cornerstone. Some external experts receive compensation from Cornerstone
     for services to Cornerstone that is partially based on aggregate, yearly staff billings. This
     compensation is wholly unrelated to and is in no way contingent on the opinions offered

Boston
Chicago
Los Angeles
Menlo Park
New York
San Francisco
Washington



by the expert or on the outcome of any case on which the expert works. The fees Cornerstone charges a client on an engagement do not depend on whether an expert retained on the case receives compensation from Cornerstone.

3.   **Fees and Expenses** – Cornerstone will send monthly bills to Residential Capital, copied to Morrison & Foerster, at the following addresses:

Lewis Kruger                          J. Alexander Lawrence, Esq.
Chief Restructuring Officer           Morrison & Foerster LLP
Residential Capital, LLC              1290 Avenue of the Americas
1177 Avenue of the Americas           New York, NY 10104-0050
New York, NY 10036                    Phone: (212) 336-8638
                                      alawrence@mofo.com

Cornerstone monthly bills will include its fees and expenses. The bills will provide a breakdown of the current billing rates in effect at that time, the hours billed by person, and a brief description of daily tasks performed. It is not Cornerstone's policy to prepare or provide detailed descriptions of daily tasks, but to the extent Morrison & Foerster or Residential Capital request additional detail or clarification of any bills, Cornerstone will provide such detail subject to the time limitations set forth under **Payment** terms below. Attached is a copy of Cornerstone's current billing rate schedule. Cornerstone reviews its standard billing rate structure annually and may adjust its rates to reflect market conditions. Cornerstone's new rates, if any, will appear on the first invoice following the rate structure review. Cornerstone bills will also include expenses, listed by category. Expense categories will include: data acquisition; data and document management (e.g., data entry, document logging, graphic exhibit preparation); photocopy; computer costs; telephone; postage; travel, meals (for travel, weekends, late-nights, and client/expert meetings) and other expenses incurred on behalf of Morrison & Foerster and/or Residential Capital.

4.   **Budget Guidelines** – Morrison & Foerster may set budget guidelines in writing with reasonable advance notice for Cornerstone's work. Cornerstone will endeavor to work within such guidelines. Morrison & Foerster recognizes that factors may arise in the course of this engagement that will change the scope of Cornerstone's work. As a result, the original budget guidelines may no longer apply. Morrison & Foerster and Residential Capital acknowledge that because Morrison & Foerster is involved in setting the scope of work, Morrison & Foerster and Residential Capital are deemed aware of any changes in scope of work, and any such changes in scope may not be used by Residential Capital to deny payment of invoices. Except as expressly set forth in writing pursuant to this paragraph, Cornerstone makes no representations concerning the amount of its fees and expenses that may be incurred under this Agreement.

5.   **Payment** – Cornerstone has always endeavored to deliver consulting services in a timely fashion; in return, Cornerstone requests that upon receipt of its bills, Residential Capital review the bills at that time to determine if there are any questions or comments. If not, then Residential Capital agrees to pay Cornerstone immediately upon receipt of the monthly bills. Any objections to Cornerstone's invoices not made in writing within sixty (60) days of the date on any invoice are waived, and the fees and costs set forth on the invoice are presumed to be accurate, correct, and approved by Residential Capital. In the event invoices remain unpaid after sixty (60) days from the date of any invoice,

Residential Capital also agrees to pay Cornerstone a retroactive finance charge of one-and-one-half percent (1.5%) per month on balances unpaid after thirty (30) days and agrees to pay all costs of collection, whether or not ordinarily recoverable as costs of suit, including but not limited to reasonable attorney's fees, fees for Cornerstone personnel at their standard hourly rates, and Cornerstone's in-house administrative expenses.

Residential Capital agrees to pay Cornerstone the full amount due, regardless of the outcome of this engagement and regardless of the availability of any insurance for such payments, or success or failure in obtaining reimbursement for such payments from any insurance. Cornerstone prepares its bills in accordance with this agreement and does not anticipate discounting its bills at a later date. Notwithstanding any language to the contrary, Morrison & Foerster and Residential Capital understand that Cornerstone's fees are in no way contingent on the nature of any of its findings, presentation of these findings in testimony, or the outcome of any proceedings.

6.   **Termination by Cornerstone Research** -- At Cornerstone's sole discretion, Cornerstone reserves the right to suspend all work on this engagement if Residential Capital's account becomes delinquent beyond sixty (60) days. Residential Capital and Morrison & Foerster understand that this means, in the event the account is delinquent, Cornerstone may cease all work and, as a result, work in progress (including making people available for deposition and trial and completing written reports) will be halted and may never be completed. Cornerstone's decision to continue working despite Residential Capital's delinquency shall not constitute a waiver of its right to cease working at any future time should Residential Capital's account still be delinquent. Cornerstone's decision to continue work irrespective of any delinquency shall also not be deemed as waiver of any breach or of its rights under this Agreement.

Cornerstone may also terminate its work if it believes that Morrison & Foerster or Residential Capital is requesting that it take actions or positions that it believes to be improper, or is not reasonably cooperating with Cornerstone, including failure to provide requested information. Under such circumstances, and prior to actual termination by Cornerstone, Cornerstone shall first provide written notice to Morrison & Foerster setting forth the grounds of its proposed termination of work. If the issue cannot be resolved within a reasonable time period, Cornerstone may terminate its work on this matter. In such event, Residential Capital will be responsible for payment of invoices for fees and expenses incurred through the date of termination.

7.   **Conflict Check** -- Cornerstone has undertaken a reasonable review of its records to determine Cornerstone's direct professional relationships with persons or entities identified by Morrison & Foerster for Cornerstone that are parties to the above-captioned matter and concluded that no conflict exists that would, in Cornerstone's opinion, prevent it from accepting and performing this engagement. In the event any such conflict or potential conflict arises during the course of Cornerstone's performance of this engagement, Cornerstone will notify Morrison & Foerster in writing and will work with Morrison & Foerster to attempt to obtain any necessary waiver of the conflict or set up an ethical wall between the staff working on this matter and any conflicting matter. In the event that a conflict of interest is not waived by a necessary party or is not waivable or an ethical wall is unacceptable, Cornerstone reserves the right to terminate its work. In such event, Cornerstone will provide written notice of termination and the reason therefore,

and Residential Capital will be responsible for payment of invoices for fees and expenses incurred through the date of termination.

8.    **Document Disposition** – At the close of this engagement, and unless otherwise instructed by Morrison & Foerster or Residential Capital, Cornerstone will discard all non-original copies of documents provided to Cornerstone by Morrison & Foerster and/or Residential Capital during the course of the engagement, and will store all original copies for a period of two (2) years, after which time these documents may be discarded. Cornerstone will estimate the costs of document archiving on the final bill, and Residential Capital agrees to reimburse Cornerstone for the time and expense of storing these documents.

      If Morrison & Foerster and/or Residential Capital request an alternative document disposition—such as returning and/or archiving documents—this request must be made in writing, and Residential Capital agrees to reimburse Cornerstone for the time and expense associated with said alternative document disposition.

9.    **Confidentiality** – It is Cornerstone's policy to treat all documents and information received from Residential Capital or Morrison & Foerster during this engagement as confidential ("Confidential Client Information"). Cornerstone agrees to take reasonable steps to protect the confidentiality of such documents and information. This obligation will not cover documents and information that (a) Cornerstone has developed independently without the use of Confidential Client Information; (b) are or become part of the public domain (other than as a result of a breach by Cornerstone of its obligation under this paragraph); (c) are already known to Cornerstone at the time it receives them from the client; (d) are given to Cornerstone by a third party not known to have a confidentiality agreement with Residential Capital or Morrison & Foerster; or (e) are required to be disclosed pursuant to a validly issued order of a court or government agency. Cornerstone will make reasonable efforts to inform Residential Capital or Morrison & Foerster of such orders immediately, and Cornerstone will not interfere with legal remedies Residential Capital or Morrison & Foerster may pursue to prevent or limit disclosure.

10.   **Limitation of Liability** – Residential Capital and Morrison & Foerster agree that they shall not hold Cornerstone liable or responsible for any claims, liabilities, damages or expenses arising out of, or relating to, the above-captioned matter or this Agreement, except to the extent that any of the foregoing results solely from the negligence or bad faith conduct of Cornerstone. In no event shall Cornerstone's liability to Morrison & Foerster or Residential Capital, whether in tort, contract, or otherwise, exceed the amounts actually paid by Residential Capital for the services rendered by Cornerstone pursuant to this Agreement.

11.   **Governing Law** – This Agreement shall be construed in accordance with the domestic laws of the State of New York.

12.   **Entire Agreement** – This Agreement, together with any exhibits attached hereto, constitutes the entire agreement between the parties with respect to the above-captioned matter.

C

13.     **Authority** – By executing below, the Parties represent and warrant that they have authority to enter into and to sign this Agreement on behalf of the parties for which they are signing.

14.     **Deemed Acceptance** – If either Morrison & Foerster or Residential Capital should request that Cornerstone commence work or otherwise provide assistance before executing this Agreement, that request shall be deemed acceptance of and agreement to each and all of the terms contained herein, irrespective of when, if ever, this Agreement is actually executed.

If this Agreement meets with your approval, please indicate your acceptance by signing below and mailing this document back to me. If you have any questions, I would be pleased to discuss them with you.

Regards,

Lori Benson
Vice President

LB/rp

Enclosure

| **Residential Capital, LLC** | **Morrison & Foerster LLP** |
|---|---|
| By:_____ | By:_____ |
| Print Name:_____ | Print Name:_____ |
| Title:_____ | Title:_____ |
| Date:_____ | Date:_____ |

*Invoice*

# CORNERSTONE RESEARCH

599 Lexington Avenue, 43rd Floor
New York, NY 10022-7642
Tel 212 605 5000
Fax 212 759 3045
www.cornerstone.com

July 15, 2013

*James Newton*

Lewis Kruger, Esq.
Chief Restructuring Officer
Residential Capital, LLC
1177 Avenue of the Americas
New York, NY 10036

### Re:  GIC v. Residential Capital LLC

Dear Lewis:

Attached is our invoice number 53646 for professional fees and expenses incurred through June in connection with the above matter.  Time details are included for the individuals involved.

Please let me know if you have any questions.

Sincerely,

Lori Benson
Vice President

Enclosures

CC:    J. Alexander Lawrence, Esq.
       Morrison & Foerster
       1290 Avenue of the Americas
       New York, NY 10104-0050

Boston, MA
Chicago, IL
Los Angeles, CA
Menlo Park, CA
New York, NY
San Francisco, CA
Washington, DC

# CORNERSTONE RESEARCH

July 15, 2013
Invoice #53646
Acct #22257

599 Lexington Avenue, 43rd Floor
New York, NY 10022-7642
Tel 212 605 5000
Fax 212 759 3045
www.cornerstone.com

Tax I.D. #94-3092543

Lewis Kruger, Esq.
Chief Restructuring Officer
Residential Capital, LLC
1177 Avenue of the Americas
New York, NY 10036

### Re: GIC v. Residential Capital LLC

## INVOICE

*June 2013*

| | |
|---|---:|
| Total Professional Fees | $ 0.00 |
| Total Expenses | $ 6,800.00 |
| **Total Professional Fees and Expenses** | **$ 6,800.00** |

### DUE AND PAYABLE UPON RECEIPT.

### PLEASE REMIT TO:

*Wire/ACH Information*

Wells Fargo Bank, NA
420 Montgomery
San Francisco, CA 94101

Beneficiary: Cornerstone Research
Account Number: 7810786173

Wire Routing Number: 121000248
ACH Routing Number: 121042882
SWIFT/BIC: WFBIUS6WFFX

Or
CHECK PAYABLE TO:

**Cornerstone Research, Inc.**
Two Embarcadero Center, 20th Floor
San Francisco, CA 94111-3922

Boston, MA
Chicago, IL
Los Angeles, CA
Menlo Park, CA
New York, NY
San Francisco, CA
Washington, DC

# CORNERSTONE RESEARCH

July 15, 2013
Invoice #53646
Acct #22257

599 Lexington Avenue, 43rd Floor
New York, NY 10022-7642
Tel  212 605 5000
Fax  212 759 3045
www.cornerstone.com

Tax I.D. #94-3092543

Lewis Kruger, Esq.
Chief Restructuring Officer
Residential Capital, LLC
1177 Avenue of the Americas
New York, NY  10036

### Re:  GIC v. Residential Capital LLC

### INVOICE

*June 2013*

| | |
|---|---:|
| Total Professional Fees | $ 0.00 |
| Total Expenses | $ 6,800.00 |
| **Total Professional Fees and Expenses** | $ 6,800.00 |

### DUE AND PAYABLE UPON RECEIPT.

### PLEASE REMIT TO:

*Wire/ACH Information*

Wells Fargo Bank, NA
420 Montgomery
San Francisco, CA 94101

Beneficiary: Cornerstone Research
Account Number: 7810786173

Wire Routing Number: 121000248
ACH Routing Number: 121042882
SWIFT/BIC: WFBIUS6WFFX

Or
CHECK PAYABLE TO:

**Cornerstone Research, Inc.**
Two Embarcadero Center, 20th Floor
San Francisco, CA 94111-3922

### *REMITTANCE COPY*

Boston, MA
Chicago, IL
Los Angeles, CA
Menlo Park, CA
New York, NY
San Francisco, CA
Washington, DC

# CORNERSTONE RESEARCH

July 15, 2013

Acct #22257

599 Lexington Avenue, 43rd Floor
New York, NY 10022-7642
Tel 212 605 5000
Fax 212 759 3045
www.cornerstone.com

Tax I.D. #94-3092543

Lewis Kruger, Esq.
Chief Restructuring Officer
Residential Capital, LLC
1177 Avenue of the Americas
New York, NY 10036

### Re:  GIC v. Residential Capital LLC

### Invoices with Outstanding Balance

| Invoice No. | Invoice Date | Days Outstanding | Invoice Amount | Payment Received | Balance Outstanding |
|---|---|---|---|---|---|
| 53253 | 06/12/2013 | 33 | $51,278.07 | $0.00 | $51,278.07 |
| | | **Total:** | **$ 51,278.07** | **$ 0.00** | **$ 51,278.07** |

PLEASE REMIT TO:

**Cornerstone Research, Inc.**
Two Embarcadero Center, 20th Floor
San Francisco, CA 94111-3922
Telephone contact: Marcella Ramsey
(415) 229-8152
Payable Upon Receipt

Boston, MA
Chicago, IL
Los Angeles, CA
Menlo Park, CA
New York, NY
San Francisco, CA
Washington, DC

# CORNERSTONE RESEARCH

July 15, 2013
Invoice #53646
Acct# 22257

## *SUMMARY OF PROFESSIONAL FEES*

June 2013

| Name | Hours | Rate | Fees |
|------|-------|------|------|
| **Total Professional Fees** | | | **$0.00** |

## *SUMMARY OF EXPENSES*

June 2013

| Description | Amount |
|-------------|--------|
| Data Acquisition – Capital IQ, Bloomberg, ABSNet from May 2013 | $6,800.00 |
| **Total Expenses** | **$6,800.00** |

2981 - 83

# CORNERSTONE RESEARCH

599 Lexington Avenue, 43rd Floor
New York, NY 10022-7642
Tel 212 605 5000
Fax 212 759 3045
www.cornerstone.com

June 12, 2013

LoReNzo MARINI221 - 14116

Lewis Kruger, Esq.
Chief Restructuring Officer
Residential Capital, LLC
1177 Avenue of the Americas
New York, NY  10036

### Re:  GIC v. Residential Capital LLC

Dear Lewis:

Attached is our invoice number 53253 for professional fees and expenses incurred through May in connection with the above matter.  Time details are included for the individuals involved.

Please let me know if you have any questions.

Sincerely,

Lori Benson
Vice President

Enclosures

CC:   J. Alexander Lawrence, Esq.
      Morrison & Foerster
      1290 Avenue of the Americas
      New York, NY  10104-0050

# CORNERSTONE RESEARCH

June 12, 2013
Invoice #53253
Acct #22257

Tax I.D. #94-3092543

Lewis Kruger, Esq.
Chief Restructuring Officer
Residential Capital, LLC
1177 Avenue of the Americas
New York, NY 10036

### Re: GIC v. Residential Capital LLC

## INVOICE

*May 2013*

| | |
|---|---|
| Total Professional Fees | $ 51,016.25 |
| Total Expenses | $ 261.82 |
| **Total Professional Fees and Expenses** | **$ 51,278.07** |

## DUE AND PAYABLE UPON RECEIPT.

### PLEASE REMIT TO:

*Wire/ACH Information*

Wells Fargo Bank, NA          Beneficiary: Cornerstone Research          Wire Routing Number: 121000248
420 Montgomery               Account Number: 7810786173              ACH Routing Number: 121042882
San Francisco, CA 94101                                                   SWIFT/BIC: WFBIUS6WFFX

Or
CHECK PAYABLE TO:

**Cornerstone Research, Inc.**
Two Embarcadero Center, 20th Floor
San Francisco, CA 94111-3922

**Katherine Schipper**

**MORRISON | FOERSTER**

1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

January 13, 2013

Writer's Direct Contact
212.468.8030
APrinci@mofo.com

By U.S. Mail

Katherine Schipper
Thomas F. Keller Professor of Business Administration
Duke University, The Fuqua School of Business
100 Fuqua Drive, Box 90120
Durham, NC 27708-0120

Re:    In re Residential Capital, LLC, et al., Chapter 11 Case No. 12-12020 (MG)

Dear Ms. Schipper:

This will memorialize the terms of the agreement under which you have been retained by us
to perform professional services in connection with our legal representation of Residential
Capital LLC in its Chapter 11 proceedings.  In accordance with controlling bankruptcy rules,
we will file an application in ResCap to have the Court approve your retention.

You shall be responsible for providing services in connection with the above-referenced
matter from time to time as requested orally or in writing by Morrison & Foerster LLP.  The
assignment shall include, but not be limited to, general preparation for the trial of this action,
including possible deposition and/or trial testimony.  You understand that the first phase of
this work will be to review the relevant background information ("First Phase") and that if
you were to be asked to provide additional services you will seek to make an appropriate
application to the Court in the Chapter 11 case.

Compensation for your services shall be computed on an hourly rate of $900 for actual time
devoted and expenses incurred, at the rates reflected on the attached Exhibit A.  You shall
also be compensated for reasonable out-of-pocket expenses.  Any and all studies, reports, or
other data or information gathered, collected, or prepared by or for you in connection with
your work under this agreement shall be our property, shall be properly communicated to us,
and shall be delivered to us upon our request or upon completion of your services under this
agreement.  You shall undertake no work under this agreement unless specifically requested
to do so by Morrison & Foerster LLP.

You understand that your work under this agreement is for us and is done at our request as
attorneys in aid of litigation, and that all work performed by you under this agreement

sf-3238609

**MORRISON | FOERSTER**

Katherine Schipper
January 13, 2013
Page Two

including, but not limited to, all communications, whether written or oral, between you and any attorney or employee of this firm, or between you and any employees of our client, are confidential and privileged communications which you will not reveal to any other person, except as authorized by us or required by law.  In this regard, you agree to inform each of your employees or agents performing services under this agreement of the confidentiality obligations set forth herein.

You also understand that you need to preserve any written materials, including e-mails, generated or received by you in connection with this engagement, as such materials are potentially discoverable in litigation, and agree that you will do so.

It is understood that during the course of your engagement you will adhere to all applicable ethical and legal standards.

You agree that during the term of this agreement, you will not undertake to perform any services or other work adverse to Morrison & Foerster LLP and/or our client Residential Capital LLC without our written consent.

This agreement shall not be assigned, or transferred in whole or in part by either party without the previous written consent of the other party, and any attempt to do so shall be void and unenforceable.

This agreement may be terminated, at the discretion of either party, on 10 days' written notice, or with the consent of both parties.

This agreement shall be governed and interpreted according to the laws of the State of California.

This letter agreement and its Exhibit A attached hereto, when signed by you, shall constitute the entire agreement between you and Morrison & Foerster LLP with respect to this matter.

If you agree to the terms set forth above, please sign and date this letter in the spaces provided below and return the original to me.

Very truly yours,

Anthony Princi

sf-3238609

**MORRISON** | **FOERSTER**

Katherine Schipper
January 13, 2013
Page Three

APPROVED AND AGREED TO:

By: _____

Title:_____

Date:_____

**Katherine Schipper, Ph.D.**
**3406 Trail Wood Drive**
**Durham, NC 27705**

Social Security Number:   291484697

Eric Roberts
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

INVOICE
Re: Residential Capital LLC matter

For professional services rendered for the period ending May 15, 2013

Detail of Hours:

| Date | Task | Hours |
|------|------|-------|
| 5/5/2013 | Review draft | 2.25 |
| 5/6/2013 | Review draft; telephone conference | 3.5 |
| 5/7/2013 | Review draft | 0.5 |
| 5/7/2013 | Complete draft and submit | 1.00 |
| 5/14/2013 | Final review of draft and submission | 1.25 |

Total Hours                                          8.50

8.50 hours @ $900 per hour

Invoice total

**Innovative Discovery**



# Invoice

1700 N. Moore St., Ste. 1510     Office: 703-875-8003
Arlington, VA 22209              Fax: 703-875-8022

| | |
|---|---|
| Invoice # | 10670 |
| **Due Date** | 6/30/2013 |
| Invoice Date | 5/31/2013 |

Bill To:

Morrison & Foerster
Attn: V. Bergelson
1290 Avenue of the Americas
New York, NY 10104-0050

| Ordering Party | Client/Matter No. | Terms | Rep | Project Date | Project Name |
|---|---|---|---|---|---|
| Vadim Bergelson | 21981/83 | 30 Days | AO | 5/1/2013 | ResCap |

| Item | Qty | Description | Rate | Amount |
|---|---|---|---|---|
| | | IDE-4836 | | |
| EDD - TIFF | 0.5 | Electronic Data Discovery per GB: TIFF Conversion | 500.00 | 250.00T |
| Tech Time | 2 | Technical Hours - Creating Relativity | 175.00 | 350.00T |
| | | ALLY_0042963 - UBS-RESCAP-0008571 \| NEWYORK-ResCap001 | | |
| | | IDH-2598 | | |
| | | May Hosting Fees - ResCap and Examiner's_Prod_DB Databases | | |
| Hosting - GB | 455.24 | Monthly Hosting Fees per GB | 20.00 | 9,104.80T |
| Hosting - UAF | 25 | User Access Fees | 65.00 | 1,625.00T |
| Tech Time | 7.5 | Customer Support / Consulting - Received new production volumes to load into Relativity. Downloaded, unzipped, and QC'd formatting and field mapping. Created new field mapping and updated client tracking log. | 175.00 | 1,312.50T |

Tax ID 11-3756416
Thank you for choosing Innovative Discovery

| | |
|---|---|
| **Sales Tax (0.0%)** | $0.00 |
| **Total** | $12,642.30 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $12,642.30 |



# Invoice

1700 N. Moore St., Ste. 1510   Office: 703-875-8003
Arlington, VA 22209          Fax: 703-875-8022

| | |
|---|---|
| Invoice # | 10700 |
| **Due Date** | 7/30/2013 |
| Invoice Date | 6/30/2013 |

Bill To:

Morrison & Foerster
Attn: V. Bergelson
1290 Avenue of the Americas
New York, NY 10104-0050

| Ordering Party | Client/Matter No. | Terms | Rep | Project Date | Project Name |
|---|---|---|---|---|---|
| Vadim Bergelson | 21981/83 | 30 Days | AO | 6/1/2013 | ResCap |

| Item | Qty | Description | Rate | Amount |
|---|---|---|---|---|
| | | IDE-4896 | | |
| EDD - TIFF | 0.5 | Electronic Data Discovery per GB: TIFF Conversion | 500.00 | 250.00T |
| OCR | 49 | MFRC00689852 - 692530 \| ResCap109 | 0.02 | 0.98T |
| | | IDH-2676 | | |
| | | June Hosting Fees - ResCap and Examiner's_Prod_DB Databases | | |
| Hosting - GB | 468.42 | Monthly Hosting Fees per GB | 20.00 | 9,368.40T |
| Hosting - UAF | 25 | User Access Fees | 65.00 | 1,625.00T |

Tax ID 11-3756416
Thank you for choosing Innovative Discovery

| | |
|---|---|
| **Sales Tax (0.0%)** | $0.00 |
| **Total** | $11,244.38 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $11,244.38 |

**Iris Data Services**

## Exhibit B

## Form of Project

|  | Vendor Contact |
|---|---|
| **Firm Contact:** | |
| Alexander Lawrence | Jeff Hirvela |
| Morrison & Foerster LLP | Iris Data Services, Inc. |
| 1290 Avenue of the Americas | 17795 W. 106th St., Suite 201 |
| New York, New York 10104 | Olathe, Kansas |
| Phone: 212-336-8638 | 646-596-4356 |
| Email: ALawrence@mofo.com | Email: jhirvela@irisds.com |
| SO#: B-6 | Date: August 22, 2013 |
| Project Name: ResCap Consolidated Production Database | |
| Reference Number: 21981-83 | |

- Project Overview

The intent of this Statement of Work ("**SOW**") is to define activities, deliverables, and pricing to meet the objectives of the ResCap Consolidated Production Database project for the Firm. This SOW is subject to the terms of the Master Services Agreement by and between Morrison & Foerster LLP and Iris Data Services, Inc. ("**MSA**"). Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings ascribed to them in the MSA.

In the event of any inconsistency between the terms of any Project and the terms of the MSA, the terms of the MSA will prevail.

In addition to monthly invoices, Vendor shall provide, on a weekly basis (not just biweekly as set forth in Section 3.4 of MSA), to the Firm's contact person set forth in this Project, a written weekly report of the Fees accrued during the preceding one (1) week period of the Project and those accrued cumulatively for the Project through such one (1) week period. Throughout the Project, Vendor shall immediately inform the Firm's contact person of any cost overrun as soon as it occurs.

**Description of Services**
Iris will prepare a Relativity database which will host data produced in connection with the ResCap bankruptcy proceedings.

The data will be provided as Concordance load files, images, text and natives. Iris will migrate the data into Relativity and perform additional services as requested. The data size is approximately 2.5 Terabytes.

Migration of the data will involve the following steps:

1. Investigating the data received
2. Exporting metadata and coding from Concordance
3. Manipulating the load files to the necessary format for loading
4. Creating field mapping for metadata load files
5. Loading all metadata, images, natives and text if applicable

B-1

Iris will complete the following quality control measures for data migrated and loaded to the Relativity database:

1. Confirming counts in the load files match the number of documents, images, natives and text in the deliverable
2. Running searches in Relativity to match document, image, native, and text counts within the load files
3. Troubleshooting loading errors and escalating the errors that could not be resolved

**Billing**
Morrison and Foerster will be billed for the cost of migrating the data into the Relativity database hosted by Iris as well as any associated project management and technical time costs.

Each law firm accessing the Relativity database will be billed individually for user licenses and any project management or technical time costs associated with their use of the database. Iris will obtain a separate Statement of Work from each law firm accessing the database and provide them with separate billing statements.

**Authorized Persons**

| Morrison & Foerster LLP | | |
|---|---|---|
| Partner | Alex Lawrence | ALawrence@mofo.com |
| eDiscovery Resource Management Project Manager | Jessica E. Taylor | JessicaTaylor@mofo.com |
| eDiscovery Resource Management Analyst | David Chan | DChan@mofo.com |
| Paralegal | Susan Tice | STice@mofo.com |
| | | |
| Iris Data Services, Inc. | | |
| Northwest Regional Director | Jeff Hirvela | jhirvela@irisds.com |
| Northeast Account Executive | Christian Schuster | cschuster@irisds.com |
| Project Manager | Rachael Williams | rwilliams@irisds.com |
| Project Manager | Max Fitzmaurice | mfitzmaurice@irisds.com |

**Start Date**
August 21, 2013

**Timeline/ Milestones**

| | |
|---|---|
| **Transfer data from Mofo to Iris** | 8/16/13-9/6/13 |
| **Prepare Relativity database.** | 8/30/13 |
| **Load data to Relativity.** | 8/23/13 – 9/04/13 |

**Specifications**
Relativity Structure:

All fields present in the Concordance load files for the individual productions should be mapped to the Relativity database.

Each production should be added to Relativity as a separate folder. We will also have a field that tracks the production volume information.

The database should be searchable and indexed such that users can perform searches using dtSearch.

Relativity Access:

Parties will be granted access as follows
- Morrison & Forester will designate which parties should be given access to the database.
- Morrison & Forester will designate which documents parties will be able to access.
- Iris will create a fields and coding choices based on the parties' specifications which will only be visible to Iris and the party who created them.

Work product from each law firm will only be visible to Iris and the users at the firm that generated the work product. Iris will be solely responsible for the addition, deletion, or modification to the fields, tagging, coding, and related view choices of each law firm.

**Deliverables**
A searchable Relativity database containing all data produced in connection with the ResCap bankruptcy proceeding.

**IN WITNESS WHEREOF,** the parties have caused this Statement of Work to be executed by their duly authorized representatives as of August 22, 2013.

**MORRISON & FOERSTER LLP ("FIRM")**          **IRIS DATA SERVICES, INC. ("VENDOR")**

BY: _____          BY: _____

NAME: Alex Lawrence          NAME: _____

TITLE: Partner          TITLE: _____

• Represented Parties Information

## PARTY 1

Circle **Plaintiff / Defendant** if Party 1 is subject
of possible litigation

| Company Name | Residential Funding Company LLC |
| --- | --- |
| Address | 8400 Normandale Lake Blvd. |
| | Suite 350 |
| | Bloomington, MN 55437 |

## PARTY 2

Circle **Plaintiff / Defendant** if Party 2 is subject
of possible litigation

| Company Name | |
| --- | --- |
| Address | |
| | |
| | |
| | |

### PARTY 1 REPRESENTED BY:

| Law Firm Name | Morrison & Foerster LLP |
| --- | --- |
| Address | 1290 Avenue of the Americas |
| | New York, New York 10104 |
| Contact | Jessica E. Taylor |
| Telephone | 213.892.5564 |

### PARTY 2 REPRESENTED BY:

| Law Firm Name | |
| --- | --- |
| Address | |
| | |
| | |
| Contact | |
| Telephone | |

### * ADDITIONAL PARTY INFORMATION

Circle **Plaintiff / Defendant** if Party is subject of
possible litigation

| Company Name | |
| --- | --- |
| Address | |
| | |
| | |

### * ADDITIONAL PARTY INFORMATION

Circle **Plaintiff / Defendant** if Party is subject of
possible litigation

| Company Name | |
| --- | --- |
| Address | |
| | |
| | |

## EXHIBIT C

### RATES

Except for the Rates provided in this Exhibit C, the Firm or the Firm Client will not be required to pay any additional costs or Fees related to the Vendor's provision of the Services under the Agreement.

| Service | Quantity | Price/Unit | Ext Price |
|---|---|---|---|
| **Migration From Concordance to Relativity** | 60 - 80 Hours | $80/HR | $4,800 - $6,400 |
| **Data Hosting** - monthly fee for storing client data on web-accessible repository. | 2,500 GB | $5/GB/MO | $12,500/MO |
| **User Fee** | 30 | $75/User/MO | $2,250/MO |
| **Project Management/Technical Time-** Iris will cap project management fees at 60 hour per month. | TBD | $150/HR | TBD |
| **Post Native Review TIFF Generation** - conversion and production of selected documents to TIFF after attorney review | TBD | $0.02/PG | TBD |
| **Production Endorsements** | TBD | $0.01/PG | TBD |
| **OCR** | TBD | $0.02/PG | TBD |

**Iris Data Services -**
**Finance Department**
17795 W 106th St., Suite 201
Olathe, KS 66061

# Invoice

| | |
|---|---|
| **Invoice #:** | 12034210015 |
| **Invoice Date:** | 8/31/2013 |
| **Due Date:** | 9/30/2013 |
| **Terms:** | Net 30 |
| **Client Matter:** | 21981-0000083 |
| **P.O. Number:** | |

**Bill To:**

Morrison Foerster
Vadim Bergelson
1290 Ave of Americas
New York, NY  10104

| Item | Description | Quantity | U/M | Rate | Amount |
|---|---|---|---|---|---|
| Tech Time - CS | 8/22/2013<br>OLKS03421 - Creating a project tracking log documenting data counts sizes and progress - Requested by J Taylor | 0.5 | hr | 150.00 | 75.00 |
| Tech Time - CS | 8/23/2013<br>OLKS03421 - Updating the custom tracking chart to include the data sizes | 0.5 | hr | 150.00 | 75.00 |
| Tech Time - CS | 8/27/2013<br>OLKS03421 - Creating a custom master tracking report for client which displays volumes loading progress. | 0.75 | hr | 150.00 | 112.50 |
| Tech Time - CS | OLKS03421 - Updating the custom tracking report for the project | 0.75 | hr | 150.00 | 112.50 |
| Tech Time - CS | 8/28/2013<br>OLKS03421 - Call with J Taylor discussing updates to the chart and adding a bates range section | 0.25 | hr | 150.00 | 37.50 |
| Tech Time - CS | OLKS03421 - Updating the custom tracking report | 1 | hr | 150.00 | 150.00 |
| Tech Time - CS | OLKS03421 - Investigating a list of bates prefixes provided by J Taylor | 0.5 | hr | 150.00 | 75.00 |
| Tech Time - CS | 8/29/2013<br>OLKS03421 - Updating the custom tracking report | 1.25 | hr | 150.00 | 187.50 |

Please remit to:
Iris Data Services, Inc
17795 W 106th St., Ste 201
Olathe, KS 66061

Sales Tax (8.875%)

Total

Tax ID# 27-4202882
For billing questions, please contact Anne Spillman:
(913) 937-0593 or aspillman@irisds.com

**Balance Due**

**IRIS**

**Iris Data Services -
Finance Department**
17795 W 106th St., Suite 201
Olathe, KS 66061

# Invoice

| | |
|---|---|
| **Invoice #:** | 12034210015 |
| **Invoice Date:** | 8/31/2013 |
| **Due Date:** | 9/30/2013 |
| **Terms:** | Net 30 |
| **Client Matter:** | 21981-0000083 |
| **P.O. Number:** | |

**Bill To:**

Morrison Foerster
Vadim Bergelson
1290 Ave of Americas
New York, NY  10104

| Item | Description | Quantity | U/M | Rate | Amount |
|---|---|---|---|---|---|
| Tech Time - CS | OLKS03421 - Checking the productions for the ResCap SEC prefix and confirming we do not have the prefix | 0.5 | hr | 150.00 | 75.00 |
| Tech Time - CS | OLKS03421 - Updating custom the tracking report | 2 | hr | 150.00 | 300.00 |
| Tech Time - CS | OLKS03421 - Investigating an issue with mismatched ranges; requesting a new DAT file | 0.5 | hr | 150.00 | 75.00 |
| Tech Time - CS | OLKS03421 - Creating an internal tracking chart with cross reference information. | 1.5 | hr | 0.00 | 0.00 |
| Tech Time - CS | 8/30/2013 OLKS03421 - Updating the custom tracking report | 1.25 | hr | 150.00 | 187.50 |
| Tech Time - CS | OLKS03421 - Refoldering documents in the database by bates prefix | 1 | hr | 150.00 | 150.00 |
| Tech Time - CS | 8/31/2013 OLKS03421 - Updated the custom tracking report | 1 | hr | 150.00 | 150.00 |
| Blowback L1 | SOW: OLKS03421.T005 Project Date: 8/06/2013 Job Requestor: David Chan Blowback Level 1 | 74,424 | PAGE | 0.06 | 4,465.44 |

Please remit to:
Iris Data Services, Inc
17795 W 106th St., Ste 201
Olathe, KS 66061

Sales Tax (8.875%)

Total

Tax ID# 27-4202882
For billing questions, please contact Anne Spillman:
(913) 937-0593 or aspillman@irisds.com

**Balance Due**

**IRIS**

**Iris Data Services -
Finance Department**
17795 W 106th St., Suite 201
Olathe, KS 66061

# Invoice

**Invoice #:** 12034210015
**Invoice Date:** 8/31/2013
**Due Date:** 9/30/2013
**Terms:** Net 30
**Client Matter:** 21981-0000083
**P.O. Number:**

**Bill To:**

Morrison Foerster
Vadim Bergelson
1290 Ave of Americas
New York, NY 10104

| Item | Description | Quantity | U/M | Rate | Amount |
|------|-------------|----------|-----|------|--------|
| Manila Folders | Manila Folders | 1,452 | ea | 1.25 | 1,815.00 |
| Redwelds | Redwelds | 12 | ea | 4.80 | 57.60 |
| E Branding | Electronic Labeling | 12,404 | LABEL | 0.02 | 248.08 |
| E Branding | Exhibit Stamping | 244 | LABEL | 0.25 | 61.00 |
| Tech Time | 2 hour hand time for gaps | 2 | hr | 20.00 | 40.00 |
| Blowback L1 | SOW: OLKS03421.T006<br>Project Date: 8/13/2013<br>Job Requestor: David Chan<br>Blowback Level 1 | 40,032 | PAGE | 0.06 | 2,401.92 |
| Manila Folders | Manila Folders | 187 | ea | 1.25 | 233.75 |
| Redwelds | Redwelds | 42 | ea | 4.80 | 201.60 |
| Blowback L1 | SOW: OLKS03421.T007<br>Project Date: 8/13/2013<br>Job Requestor: Ruby Grossman<br>Blowback Level 1 | 4,793 | PAGE | 0.06 | 287.58 |
| Manila Folders | Manila Folders | 74 | ea | 1.25 | 92.50 |
| Redwelds | Redwelds | 1 | ea | 4.80 | 4.80 |
| | SOW: OLKS03421.T009<br>Project Date: 8/20/2013<br>Job Requestor: RubyGrossman | | | | |

Please remit to:
Iris Data Services, Inc
17795 W 106th St., Ste 201
Olathe, KS 66061

Sales Tax (8.875%)

Total

Tax ID# 27-4202882
For billing questions, please contact Anne Spillman:
(913) 937-0593 or aspillman@irisds.com

## Balance Due

# Invoice

**Iris Data Services -**
**Finance Department**
17795 W 106th St., Suite 201
Olathe, KS 66061

**Invoice #:** 12034210015
**Invoice Date:** 8/31/2013
**Due Date:** 9/30/2013
**Terms:** Net 30
**Client Matter:** 21981-0000083
**P.O. Number:**

**Bill To:**

Morrison Foerster
Vadim Bergelson
1290 Ave of Americas
New York, NY  10104

| Item | Description | Quantity | U/M | Rate | Amount |
|---|---|---|---|---|---|
| Blowback L2 | Blowback Level 2 | 38,016 | PAGE | 0.09 | 3,421.44 |
| Tabs-Std | Stock Tabs | 368 | ea | 0.35 | 128.80 |
| Tabs | Custom Tabs | 248 | ea | 0.70 | 173.60 |
| Binders | 2" Binders | 44 | ea | 15.00 | 660.00 |
| Slipsheets | Slipsheets | 624 | PAGE | 0.08 | 49.92 |
| Tech Time | SOW: OLKS03421.T010<br>Project Date: 8/15/2013<br>Job Requestor: RubyGrossman<br>Tech Time - Bates Stamp | 2 | hr | 150.00 | 300.00 |
| Tech Time-DBS | SOW: OLKS03421.T012<br>Data has been exported from Concordance databases.<br>Data has been loaded into 3421 - ResCap Relativity workspace. | 15 | hr | 80.00 | 1,200.00 |
| Tech Time-DBS | SOW: OLKS03421.T014<br>Load Metadata, OCR and Images to 3421 - ResCap\[Volume folder] | 4 | hr | 80.00 | 320.00 |
| Tech Time-DBS | SOW: OLKS03421.T016<br>Load Metadata, OCR and Images to folders EXAM101; EXAM102; EXAM103; EXAM104 | 4 | hr | 80.00 | 320.00 |
|  | SOW: OLKS03421.T018 |  |  |  |  |

Please remit to:
Iris Data Services, Inc
17795 W 106th St., Ste 201
Olathe, KS 66061

Tax ID# 27-4202882
For billing questions, please contact Anne Spillman:
(913) 937-0593 or aspillman@irisds.com

Sales Tax (8.875%)

Total

**Balance Due**

**IRIS**

**Iris Data Services -**
**Finance Department**
17795 W 106th St., Suite 201
Olathe, KS 66061

# Invoice

**Invoice #:** 12034210015
**Invoice Date:** 8/31/2013
**Due Date:** 9/30/2013
**Terms:** Net 30
**Client Matter:** 21981-0000083
**P.O. Number:**

**Bill To:**

Morrison Foerster
Vadim Bergelson
1290 Ave of Americas
New York, NY 10104

| Item | Description | Quantity | U/M | Rate | Amount |
|------|-------------|----------|-----|------|--------|
| Data Load to Rela... | Load data into 3421 - ResCap and update dtindex | 8 | GB | 80.00 | 640.00 |
| Shipping | SOW: OLKS03421.T019 Ship original evidence to client per request. FedEx Priority Overnight TRKG: 796568109142 | | | 73.89 | 73.89 |
| Data Load to Rela... | SOW: OLKS03421.T025 Loaded Metadata, Images, Natives, and OCR into the 3421 Workspace: Also converted the 24-bit tiffs for Vol: 404 into JPGs for loading purposes. Volumes: 138, 140, 142, 215, 217, & 404 | 4 | GB | 80.00 | 320.00 |
| Data Load to Rela... | SOW: OLKS03421.T026 Load data to 3421 - ResCap\EXAM\EXAM010 | 1 | GB | 80.00 | 80.00 |
| Data Load to Rela... | SOW: OLKS03421.T027 Load data into 3421 - ResCap and update dtindex | 6 | GB | 80.00 | 480.00 |
| Data Host Relativity | Monthly Online Hosting - Relativity- August 2013 | 955.5669 | GB | 5.00 | 4,777.83 |

Project Name: ResCap

Please remit to:
Iris Data Services, Inc
17795 W 106th St., Ste 201
Olathe, KS 66061

Sales Tax (8.875%)

Total

Tax ID# 27-4202882
For billing questions, please contact Anne Spillman:
(913) 937-0593 or aspillman@irisds.com

**Balance Due**

**Iris Data Services -**
**Finance Department**
17795 W 106th St., Suite 201
Olathe, KS 66061

# Invoice

| | |
|---|---|
| **Invoice #:** | 12034210015 |
| **Invoice Date:** | 8/31/2013 |
| **Due Date:** | 9/30/2013 |
| **Terms:** | Net 30 |
| **Client Matter:** | 21981-0000083 |
| **P.O. Number:** | |

**Bill To:**
Morrison Foerster
Vadim Bergelson
1290 Ave of Americas
New York, NY 10104

| Item | Description | Quantity | U/M | Rate | Amount |
|---|---|---|---|---|---|
| | Account Manager: Jeff Hirvela
646-596-4356 jhirvela@irisds.com | | | | |

Please remit to:
Iris Data Services, Inc
17795 W 106th St., Ste 201
Olathe, KS 66061

Tax ID# 27-4202882
For billing questions, please contact Anne Spillman:
(913) 937-0593 or aspillman@irisds.com

| | |
|---|---|
| Sales Tax (8.875%) | $0.00 |
| Total | $24,617.25 |
| **Balance Due** | **$24,617.25** |

**NewOak Capital Advisors**



May 24, 2013

<u>VIA E-MAIL</u>

J. Alexander Lawrence, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
Phone: (212) 336-8638
Email: alawrence@mofo.com

Re:    **FGIC RMBS Claim Analysis in connection with a Settlement Agreement stemming from the In re Residential Capital, LLC, et al., Case No. 12-12020 (MG) (the "Matter")**

Dear Mr. Lawrence:

This letter agreement confirms the terms of your engagement (the "Engagement Agreement") of  NewOak Capital Advisors LLC ("NewOak") to serve as an expert witness to Morrison & Foerster LLP (the "Counsel") on behalf of its client Residential Capital LLC and its affiliated debtor entities (the "Client") in their chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 12-12020 (MG), with respect to the Matter.

**Scope of Work**

NewOak is being retained by Counsel as an expert witness in connection with the Matter. Counsel, Client and NewOak agree that NewOak will be compensated only for those services that Counsel or Client directly and specifically requests (the "Services"). The Services specifically requested by Counsel or Client shall be initially set forth in Schedule B hereto and all further statements of work ("SOW") agreed in writing among the parties, with each such further SOW being deemed to be incorporated herein by reference.  For the avoidance of doubt, Services requested and provided without a SOW will be compensated at the hourly rates set out below. The Services will be rendered in a professional and commercially reasonable manner.

NewOak's status under this Engagement Agreement will be that of an independent contractor and not that of an employee of Counsel or Client.  Client, which shall be the sole party responsible for paying the fees of NewOak, will not withhold or pay Social Security taxes, unemployment insurance, or income taxes on NewOak's behalf.  NewOak will provide a

completed Form W-9 or other forms as may be reasonably requested by Client to assist in complying with IRS regulations.

**Confidentiality and Non-Disclosure**

In connection with the Services provided by NewOak, NewOak may receive or have access to confidential and proprietary information of Client. For purposes of this Engagement Agreement, the term "Confidential Information" shall mean the confidential and proprietary data and information of Client, whether received prior to, on, or after the date of this Engagement Agreement, in oral, written or electronic form, which Confidential Information shall include, but not be limited to, Client's financial, business and technical data and information, customer and employee identities and information, specifications, samples, reports, business plans, forecasts, current or historical data, computer programs, documentation, market research, trade secrets, notes, analyses, compilations, studies, interpretations, and information of Client's suppliers or other vendors.

NewOak agrees to: (a) keep the Confidential Information confidential and secure; (b) restrict disclosure of the Confidential Information solely to its affiliates and its and their respective officers, employees, consultants and agents with a "need to know" such Confidential Information for purposes of the Services between NewOak and Client (the persons to whom disclosure is permissible being collectively called "Representatives"); (c) not disclose to any other person or copy the Confidential Information without the approval of Client; (d) use the Confidential Information solely for purposes of the business dealings between NewOak and Client and not for NewOak's own financial gain, in connection with any other business or service conducted by NewOak, or in any way directly or indirectly detrimental to Client; and (e) inform the Representatives of the confidential nature of the Confidential Information and obtain their agreement to the obligations herein set forth. Furthermore, NewOak agrees to not transfer, distribute, export or otherwise communicate any Confidential Information outside of the United States for any purpose without the prior written approval of Client.

NewOak understands that, as an expert witness, (i) all communications between Counsel or Client and NewOak, whether oral or written, are privileged and confidential; and (ii) documents that NewOak generates at the request of Counsel or Client, including drafts and analyses, as well as materials that Counsel or Client provides to NewOak, may be protected from disclosure as trial preparation materials or work product under applicable rules of procedure (collectively, "Privileged Information").  Except as permitted hereunder, NewOak agrees that it will not share the substance or content of this Privileged Information with any person outside NewOak unless expressly authorized by Counsel beforehand in writing.

Notwithstanding anything to the contrary contained herein, this obligation of confidentiality and non-disclosure as to the Confidential Information and Privileged Information and the fact that NewOak is an expert does not apply to data or information which: (i) is or becomes generally available to the public other than as a result of a disclosure by NewOak or any of its Representatives in breach of this Engagement Agreement; (ii) is required to be disclosed

2

pursuant to any order, request or decree of any appropriate court, government agency or regulatory authority, subject to NewOak providing Counsel at least fifteen (15) days advance written notice, to the extent legally permissible, prior to any such disclosure; (iii) was in NewOak's possession prior to the time it was disclosed to NewOak by Counsel or Client; or (iv) is disclosed to NewOak by a third party who is under no obligation of confidentiality to Counsel or Client.

Moreover, NewOak may disclose Confidential Information or Privileged information (a) to its affiliates and its and their respective employees, consultants, vendors or agents who provide services in connection with this engagement, subject to NewOak advising them of their confidentiality obligations pursuant to this Engagement Agreement (b) with Counsel's or Client's written consent, or (c) when legally required to do so, subject to the restrictions set forth herein, including the provision of at least fifteen (15) days advance written notice, to the extent legally permissible and reasonably practicable, to Counsel.

## Compensation

Client has agreed to compensate NewOak consultants at the following hourly rates: (i) Ron D'Vari as the expert witness at the rate of $950 per hour for all general preparatory work on the Matter as well as expert testimony and court appearances; (ii) NewOak consultants at the Partner level at the rate of $950 per hour; (iii) NewOak consultants at the Managing Director level at the rate of $750 per hour; (iv) NewOak consultants at the Director/Associate Director level at the rate of $600 per hour; (v) NewOak consultants at the Associate level at the rate of $500 per hour; and, (vi) NewOak consultants at the Analyst level at the rate of $400 per hour. Requested work to be completed outside of the New York City metropolitan area shall be subject to a minimum of eight (8) billable hours (including travel time) per NewOak consultant completing such work; provided that, any international travel shall be subject to a minimum of forty (40) billable hours (including travel time) per NewOak consultant completing such work.

Client also agrees to compensate NewOak for reasonable expenses incurred at Counsel's or Client's request, subject to Bankruptcy Court approval of such fees. NewOak agrees to keep an accurate record of the time spent consulting as expert witness on the Matter and will provide Client with a monthly statement describing the work performed, hours spent thereon in one-tenth hour increments, and any expenses for which NewOak seeks compensation, accompanied by copies of receipts for such expenses.

NewOak understands that it is being retained by Counsel on behalf of the Client. Although NewOak will be working directly with Counsel, it understands that any compensation it receives for its services as expert witness in the Matter will come directly from Client, and that in no event is Counsel, or any lawyer, paralegal, staff member or other employee or agent associated with Counsel, to be responsible for or liable with respect to any and all amounts billed by or owed to NewOak as expert witness in the Matter.

Subject to the conditions of the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Interim Compensation Order") attached hereto as Schedule C, Client agrees that all monthly invoices for NewOak's fees and expenses shall be due and payable by Client within 30 days of receipt.  In addition, NewOak reserves the right to suspend work on the Matter in the event that invoice balances remain unpaid and outstanding: (i) over 20 days from the date such invoices may be paid pursuant to Section 2 (e) of the Interim Compensation Order in connection with invoice balances that are payable pursuant to such Section 2 (e); and, (ii) over 15 days from the first date such invoice balances that are payable pursuant to Section 2 (j) of the Interim Compensation Order shall become payable.  In the event that a portion of an invoice remains unpaid after 30 days from the date it becomes payable under the Interim Compensation Order, Client also agrees to pay NewOak a retroactive finance charge of one-and-one-half percent (1.5%) per month on such unpaid invoice balances unpaid after 30 days from the date it became payable under the Interim Compensation Order and agrees to pay all costs of collection, whether or not ordinarily recoverable as costs of a suit, including but not limited to reasonable attorney's fees, fees for NewOak personnel at their standard hourly rates, and NewOak's in-house administrative expenses.  Client agrees to provide direct contact between Client's applicable accounts payable department (Jill Horner CFO Debtor's Estate, Tel: (952) 857-7454, Jill.Horner@gmacrescap.com ) and NewOak's billing department (Robert Johnson, Controller, Tel: (212) 209-0779, rjohnson@newoak.com) to facilitate the efficient transmission of NewOak's invoices and to arrange for electronic invoice payment, if applicable.

Client agrees to pay NewOak the full amount due, regardless of the outcome of this Matter.  NewOak prepares its bills in accordance with this Engagement Agreement and does not anticipate discounting its invoices or fees at a later date.  Notwithstanding any language to the contrary, Counsel and Client understand that NewOak's fees are in no way contingent on the nature of its findings, presentation of these findings in testimony, or the outcome of any proceedings or this Matter.

## Conflicts

As of the date hereof, NewOak knows of no fact or situation that would represent a conflict of interest for it by its engagement as expert witness in the Matter. NewOak agrees to let Counsel know immediately upon becoming aware of any potential adversary in the Matter for which NewOak, in its professional judgment, has a conflict. NewOak agrees that Counsel and Client shall not be restricted from receiving services, whether or not similar to the Services, from any other entity.  Counsel and Client each agree that NewOak shall not be restricted from furnishing services whether or not similar to the Services, to any person or entity, including without limitation any competitor or counterparty to Client, and, in its discretion, may make recommendations to others which may be the same as, or may be different from those made under this Engagement Agreement.

**Document Maintenance; Ownership**

NewOak understands that, as a result of or in the course of NewOak's work for Counsel and Client, NewOak may generate or prepare a report or reports requested by Counsel or Client. NewOak understands that Counsel and Client have the right to (i) produce any work completed by NewOak under this Engagement Agreement in its entirety to any court or arbitrator in connection with the Matter, (ii) otherwise use, copy and recreate extracts of any report or reports, provided that such use shall be subject to the terms of this Engagement Agreement and neither Counsel nor Client shall have any right to include NewOak's name, trademark, logo, or other information identifying NewOak in connection with such use without NewOak's prior written permission.

**Indemnification**

Each of the parties hereto understands and agrees that the indemnification terms set forth in the attached Schedule A ("Indemnification") are incorporated by reference herein.

**Term and Termination**

The term of this Engagement Agreement shall commence on the date first written above and shall end with the termination of the consultancy engagement as herein described, unless sooner terminated as set forth subsequently. This Engagement Agreement may be extended or modified by mutual agreement of the parties hereto in writing.  This Engagement Agreement may be terminated by either party by serving upon the other party ten (10) days prior written notice of its intention to terminate (the "Notice of Intent to Terminate").  Such termination shall become effective ten (10) days after the furnishing of the Notice of Intent to Terminate, and all duties and obligations of the parties under this Engagement Agreement, excepting NewOak's duty to maintain confidentiality and further excepting other duties, obligations and provisions as described in this clause, shall cease as of the effective date of termination.  The provisions set forth in the clauses hereof entitled "Confidentiality" and "Indemnification" shall survive the termination or expiration of this Engagement Agreement.  The duties, obligations and provisions set forth in the clause hereof entitled "Compensation" shall survive the termination or expiration of this Engagement Agreement until all accrued but unpaid fees and expenses have been discharged by Client.

**Governing Law; Jurisdiction and Miscellaneous**

This Engagement Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflicts of laws principles thereof (other than Section 5-1401 of the New York General Obligations Law).  Any claim arising out of this Engagement Agreement or any transaction contemplated hereby shall be instituted in any state or federal court in the State of New York located in New York County, each party hereby irrevocably submits to the jurisdiction of such courts, waives to the fullest extent permitted by

applicable law, any rights to a jury trial in respect of any disputes hereunder, and each party agrees not to assert, by way of motion, as a defense or otherwise, in any such claim, that it is not subject personally to the jurisdiction of such court, that the claim is brought in an inconvenient forum, that the venue of the claim is improper or that this Engagement Agreement or the subject matter hereof may not be enforced in or by such court.

Nothing in this Engagement Agreement shall be construed to confer upon any third party a right of action hereunder or any other right whatsoever, except under Paragraph (b) of Schedule A hereto.  NewOak owes no fiduciary duty to any owner, shareholder or member of, Counsel or the Client, even if advised that any of them may be relying on any written or oral advice or recommendation made by NewOak, or receiving any report prepared by NewOak. This Engagement Agreement contains the entire agreement of the parties respecting the subject matter hereof and supersedes all prior agreements (written or oral) between the parties respecting the subject matter hereof.  No party (nor any of its representatives) has made any representation or warranty on which any other party has relied or is entitled to rely other than as expressly set forth in this Engagement Agreement.

Counsel and Client understand and acknowledge that in providing the Services hereunder, NewOak will rely on, among other things, data provided by the Client and economic data and third-party vendor software and data in connection with its preparation of any written report, and while NewOak's analyses will be based on information NewOak reasonably deems reliable, NewOak in no case guarantees its accuracy.

NewOak represents below the authority to enter this Engagement Agreement.  By countersigning this letter, Counsel and Client each represent that they have the authority to enter into this Engagement Agreement, in the case of Client subject to Bankruptcy Court approval.  This Engagement Agreement may be executed in one or more counterparts, each of which will be deemed to be an original but all of which will constitute one and the same agreement.  This Engagement Agreement may be executed by facsimile or electronic pdf signatures and such signature will be deemed binding for all purposes of this Engagement Agreement, without delivery of an original signature being thereafter required.  This Engagement Agreement shall not be effective until duly executed by each party and fully executed counterparts are possessed by each party.

If this Engagement Agreement accurately reflects the terms of your engagement, please counter-sign this Engagement Agreement below, and return the original to NewOak.

[The remainder of this page is intentionally left blank. Signature page follows.]

Very truly yours,

**NewOak Capital Advisors LLC**

By: _____

Name: James Frischling
Title:   President

**AGREED AND ACCEPTED:**

**Morrison & Foerster LLP**

By: _____

Name: J. Alexander Lawrence
Title:   Partner

**Residential Capital LLC**

By: _____

Name: LEWIS KRUGER
Title:   CHIEF RESTRUCTURING OFFICER

[Signature Page – NewOak Engagement Agreement]

7

Schedule A

**Indemnification**

(a)  NewOak shall not be liable to Counsel, Client or any other person for any losses, claims, damages, judgments, assessments, interest, costs, fines, amounts paid in settlement, fees and expenses (including reasonable attorneys' fees) or other liabilities (collectively "Losses") incurred by Counsel, Client or any other person that arise out of or in connection with the performance by NewOak of its duties under this Engagement Agreement or the reliance by Counsel or Client or any other party on the Services or any advice or counsel rendered by NewOak (whether or not part of the Services), except by reason of any material breach by NewOak of any of its representations or obligations hereunder (and provided such material breach remains uncured for 15 business days following NewOak's reasonable and actual knowledge of such breach) or any acts or omissions constituting intentional malfeasance or gross negligence in the performance by NewOak of the Services hereunder.  Except with respect to a breach of confidentiality obligations hereunder, in no event shall NewOak's liability, in the aggregate, exceed the fees paid by Client to NewOak hereunder.  **IN NO EVENT SHALL ANY PARTY BE LIABLE TO ANY OTHER PARTY FOR INCIDENTAL, SPECIAL, INDIRECT, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, ANY DAMAGES RELATING TO LOST PROFITS OR LOSS OF BUSINESS OPPORTUNITY) EVEN IF THE PARTY CLAIMING SUCH DAMAGES HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

(b) Client shall defend and indemnify NewOak, its affiliates and each of their respective directors (and their respective attorneys), officers, employees, agents, consultants, and sub-contractors (each, an "Indemnified Person") against all Losses arising out of this Engagement Agreement or their performance of Services or use of or reliance on the Services by Client, Counsel, or any other third party that has received the work product relating to the Services from Client or Counsel, except for Losses arising out of NewOak's intentional malfeasance or gross negligence in the performance by NewOak of the Services hereunder. Client agrees to reimburse each Indemnified Person for all out-of-pocket expenses (including reasonable attorney's fees) incurred by such Indemnified Person, as such expenses are incurred or paid, in connection with investigating, preparing for or defending any action or claim or responding to any regulatory inquiry, whether in connection with pending or threatened litigation or regulatory inquiry in each case, arising out of this Engagement Agreement or such Indemnified Person's performance of the Services hereunder or the use or reliance on the work product relating to the Services by any party receiving such Services or related work product, directly or indirectly, from the Client or Counsel. Neither NewOak nor any other Indemnified Person shall, without the prior written consent of Client, settle, compromise or consent to the entry of any judgment with respect to any pending or threatened third-party claim, action, suit or proceeding in connection with which any indemnification is or may be sought under this paragraph (b) (such pending or threatened claims, actions, suits or proceedings collectively being "Third Party Claims").  In the event a payment under this paragraph (b) is taxable to an

Indemnified Person (or its direct or indirect owners), Client shall, upon demand, pay to such Indemnified Person an amount equal to the tax together with an amount equal to any tax on the amount payable under this sentence.  NewOak and Client acknowledge and agree that Counsel shall have no responsibility for any such defense, indemnification or payment under this paragraph (b).

(c) In the event that any Indemnified Person becomes aware of any Third Party Claim, it shall notify Client promptly (and in any event within ten (10) days).  Client may elect to assume the defense of any Third-Party Claim by notifying such Indemnified Person of Client's election to assume such defense no later than ten days after Client receives notice of such Third–Party Claim.  If Client elects to assume the defense of a Third-Party Claim with respect to any Indemnified Person, (i) it shall diligently conduct such defense at its own expense and (ii) no compromise or settlement of such Third-Party Claim may be effected by Client without such Indemnified Person's prior written consent unless (y) there is no finding or admission of any wrong doing or liability of such Indemnified Person, nor finding or admission of any violation by such Indemnified Person of any law, rule or regulation, any obligation of such Indemnified Person or any rights of any other person, and (z) such Indemnified Person receives a full release of and from any other claims that may be made against such Indemnified Person by the third party bringing the Third-Party Claim.

Schedule B

**Statement of Work**

**Part 1 – Confirmation of each RMBS Trust Tranche Structure and FGIC Guaranty in preparation of Expected Loss Estimation**

The tasks connected with the confirmation of each RMBS Trust Tranche Structure and FGIC Guaranty in preparation of Expected Loss Estimation shall be billed at the hourly rates set forth in the Engagement Agreement section entitled "Compensation". These tasks may include, but are not limited to, the following: (i) review of documents, agreements or data bases related to the confirmation of each RMBS Trust Tranche Structure and FGIC Guaranty; and, (ii) consultation in connection with the confirmation of each RMBS Trust Tranche Structure and FGIC Guaranty.

**Part 2 – Expected Loss Estimation**

1) Estimate and opine on total lifetime expected losses from the date of issuance for each of the mortgage pools underlying each of the RMBS trusts referenced in Exhibit B of the FGIC/ResCap Settlement Agreement as summarized in Exhibit I attached hereto. It should be noted that some RMBS trusts have more than one underlying mortgage pool.

Fee: $1000 for each of the [61] individual mortgage pools underlying a trust listed on Exhibit I attached hereto

2) Estimate and opine on the total lifetime expected losses from the date of issuance for each of the tranches in deals referenced in Exhibit B of the FGIC/ResCap Settlement Agreement that are not guaranteed by FGIC as summarized in Exhibit I attached hereto.

Fee: $1000 for each of the [104] CUSIPs, tranches, or classes of certificates, as applicable, not guaranteed by FGIC listed on Exhibit I attached hereto

**Part 3 – Preparation of Expert Witness Report and Related Declaration**

The tasks connected with the preparation of the Expert Witness Report and Related Declaration shall be billed at the hourly rates set forth in the Engagement Agreement section entitled "Compensation". These tasks may include, but are not limited to, the following: (i) the preparation of an expert witness report or whitepaper; (ii) expert testifying witness services; (iii) additional forensic valuation or analysis that is separate and distinct from the expected loss estimation conducted in Part 2; (iv) consultation in connection with the preparation of complaints, memoranda, declarations or other legal documents; (v) review of documents, agreements or data related to the preparation of the Expert Witness Report and related

Declaration; (vi)  consultation in connection with the review of documents or data produced in discovery; and, (vii) consultation in connection with the deposition of witnesses.

Schedule C

**Interim Compensation Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain

of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") for

entry of an order establishing procedures for the interim allowance and payment of

compensation and reimbursement for attorneys and other professionals whose retentions

are approved by the Court pursuant to sections 327, 328 or 1103 of the Bankruptcy Code

and who will be required to file applications for allowance of compensation and

reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, as

more fully set forth in the Motion; and the Court having subject matter jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the

Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for

the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.); and the

Motion being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before

the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided, and no other or further notice need be provided; and the

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.  Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc net/rescap for additional information.

relief requested in the Motion being in the best interests of the Debtors and their estates

and creditors; and the Court having reviewed the Motion and having heard the statements

in support of the relief requested therein at a hearing before the Court (the "Hearing");

and the Court having determined that the legal and factual bases set forth in the Motion

and it appearing that the relief requested by the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and after due deliberation

thereon; and sufficient cause appearing therefor, it is hereby:

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted as provided herein.

2.      Except as may otherwise be provided in orders of this Court

authorizing the retention of specific professionals, all Retained Professionals in these

cases may seek interim compensation in accordance with the following procedures (the

"Interim Compensation Procedures"):

> (a)      On or before the 30th day of each month following the month for
> which compensation and expense reimbursement is sought or as
> soon as reasonably practicable thereafter, each Retained
> Professional seeking compensation shall serve a monthly
> statement (the "Monthly Statement"), by hand or overnight
> delivery, on the following parties (collectively, the "Notice
> Parties"): (i) proposed counsel for the Debtors, Morrison &
> Foerster LLP (Attn: Larren M. Nashelsky, Gary S. Lee and
> Lorenzo Marinuzzi); (ii) the Office of the United States Trustee
> for the Southern District of New York, 33 Whitehall Street, 21st
> Floor, New York, NY 10004 (Attn: Tracy Hope Davis, Linda A.
> Riffkin, and Brian S. Masumoto); (iii)  proposed counsel for the
> Official Committee of Unsecured Creditors (the "Creditors'
> Committee"), c/o Kramer Levin Naftalis & Frankel LLP, 1177
> Avenue of the Americas, New York, NY 10036 (Attn: Kenneth
> H. Eckstein and Douglas H. Mannal); (iv) counsel for Ally
> Financial Inc.,  Kirkland & Ellis, 601 Lexington Avenue, New
> York, NY 10022 (Attn: Richard M. Cieri and Ray C. Schrock);
> and (v) counsel for Barclays Bank PLC, Skadden, Arps, Slate,

Meagher & Flom LLP, 4 Times Square, New York, New York
10036 (Attn: Kenneth S. Ziman and Jonathan H. Hofer).

(b)    The Monthly Statement need not be filed with this Court and a
courtesy copy need not be delivered to the presiding judge's
chambers.  The procedures are not intended to alter the fee
application requirements outlined in sections 330 and 331 of the
Bankruptcy Code, and the Retained Professionals are still
required to serve and file interim and final applications for
approval of fees and expenses in accordance with the relevant
provisions of the Bankruptcy Code, the Federal Rules of
Bankruptcy Procedure, and the Local Rules for the United States
Bankruptcy Court, Southern District of New York.

(c)    Unless otherwise provided in the order authorizing the retention
of a Retained Professional, each Monthly Statement must contain
a list of the individuals and their respective titles (e.g., attorney,
accountant, or paralegal) who provided services during the
statement period, their respective billing rates, the aggregate
hours spent by each individual, a reasonably detailed breakdown
of the disbursements incurred, and contemporaneously
maintained time entries for each individual in increments of
tenths (1/10) of an hour.  No professional should seek
reimbursement of an expense that would otherwise not be
allowed pursuant to this Court's Administrative Orders, dated
June 24, 1991, April 21, 1995 and November 25, 2009, or the
United States Trustee Guidelines for Reviewing Applications for
Compensation and Reimbursement of Expenses Filed under
11 U.S.C. § 330, dated June 4, 2004.

(d)    Each Notice Party shall have the later of (i) 20 days after its
receipt of a Monthly Statement or (ii) the 40th day following the
end of the month for which compensation is sought (the
"Objection Deadline") to review it and, if such party has an
objection to the compensation or reimbursement sought in a
particular Monthly Statement (an "Objection"), such party shall
serve upon the Retained Professional whose Monthly Statement
is the subject of an Objection, and the other Notice Parties, a
written "Notice of Objection to Fee Statement," setting forth the
nature of the Objection and the amount of fees or expenses at
issue.

(e)    At the expiration of the Objection Deadline, the Debtors shall
promptly pay 80% of the fees and 100% of the expenses
identified in each Monthly Statement to which no Objection has
been served in accordance with paragraph (d) above.

(f)    If an Objection to a particular Monthly Statement is served, the Debtors shall withhold payment of that portion of the Monthly Statement to which the Objection is directed and promptly pay the remainder of the fees and disbursements in the percentages set forth in paragraph (e) above.

(g)    Similarly, if the parties to an objection are able to resolve their dispute following the service of an Objection, and if the party whose statement was objected to serves upon all of the Notice Parties a statement indicating that the Objection is withdrawn and describing in detail the terms of the resolution, then the Debtors will promptly pay, in accordance with paragraph (e), that portion of the fee statement which is no longer subject to an objection.

(h)    All Objections that are not resolved by the parties shall be preserved and presented to the Court at the next interim or final fee application hearing to be heard by the Court in accordance with paragraph (j) below.

(i)    The service of an Objection in accordance with paragraph (d) above shall not prejudice the objecting party's right to object to any fee application made to the Court in accordance with the Bankruptcy Code on any ground, whether raised in the Objection or not. Furthermore, the decision by any party not to object to a Monthly Statement shall not be a waiver of any kind or prejudice that party's right to object to any fee application subsequently made to the Court in accordance with the Bankruptcy Code.

(j)    Approximately every 120 days, but no more than every 150 days, each of the Retained Professionals shall serve and file with the Court an application for interim or final Court approval and allowance, pursuant to sections 330 and 331 of the Bankruptcy Code (as the case may be) (the "Interim Fee Application"), of the compensation and reimbursement of expenses requested.

(k)    Any Retained Professional who fails to timely file an Interim Fee Application seeking approval of compensation and expenses previously paid pursuant to a Monthly Statement (1) shall be ineligible to receive further monthly payments of fees or reimbursement of expenses as provided herein until such Interim Fee Application is filed or by further order of the Court, and (2) may be required to disgorge any fees paid since retention or the last fee application, whichever is later.

(l)    The pendency of an Interim Fee Application or a Court order that payment of compensation or reimbursement of expenses was

improper as to a particular Monthly Statement shall not disqualify a Retained Professional from the future payment of compensation or reimbursement of expenses as set forth above, unless otherwise ordered by the Court.

(m)   Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein shall have any effect on this Court's interim or final allowance of compensation and reimbursement of expenses of any Retained Professionals.

(n)   Counsel for each official committee may, in accordance with the foregoing procedure for monthly compensation and reimbursement of professionals, collect and submit statements of expenses, with supporting vouchers, from members of the committee he or she represents; provided, however, that such committee counsel ensures that these reimbursement requests comply with this Court's Administrative Orders dated June 24, 1991 and April 21, 1995.

3.   Each Retained Professional whose retention has been approved by the Court as of Petition Date may seek, in its first Monthly Statement, compensation for work performed and reimbursement for expenses incurred during the period beginning on the Petition Date and ending on June 30, 2012.  All professionals not retained as of the Petition Date may seek, in their first Monthly Statement, compensation for work performed and reimbursement for expenses incurred during the period from the effective date of their retention through the end of the first full month following the effective date of their retention, and otherwise in accordance with the procedures set forth in the Motion.  The first interim fee application for the Retained Professional shall seek compensation and reimbursement of expenses for the period from the Petition Date through August 31, 2012.

4.   Notice of the interim and final fee applications shall be served on the Notice Parties.  Notice given in accordance with this paragraph is deemed sufficient

and adequate and in full compliance with the applicable provisions of the Bankruptcy
Code, the Bankruptcy Rules, and the Local Rules of this Court.

5.      Notice of the hearing on the interim and final fee applications shall
be served on the Notice Parties and all parties that have filed a notice of appearance with
the Clerk of this Court and requested such notice.  Notice given in accordance with this
paragraph is deemed sufficient and adequate and in full compliance with the applicable
provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court
and/or the Case Management Order approved in these Chapter 11 cases.

6.      The amount of fees and disbursements sought in the Monthly
Statement and the Fee Applications shall be set out in U.S. Dollars.  If the fees and
disbursements are to be paid in foreign currency, the amount shall be set out in U.S.
dollars and the conversion amount in the foreign currency, calculated at the time of the
submission of the application.

7.      The Debtors shall include all payments to professionals on their
monthly operating reports, detailed so as to state the amount paid to each of the Retained
Professionals.

8.      Any party may object to requests for payments made pursuant to
this Order on the grounds that the Debtors have not timely filed monthly operating
reports, remained current with their administrative expenses and 28 U.S.C. § 1930 fees,
or a manifest exigency exists by seeking a further order of this Court; otherwise, this
Order shall continue and shall remain in effect during the pendency of this case.

9.      All time periods referenced in this Order shall be calculated in
accordance with Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

10.     Any and all other and further notice of the relief requested in the Motion shall be, and hereby is, dispensed with and waived; provided, however, that the Debtors must serve a copy of this Order on the Notice Parties.

11.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

13.     Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

Dated:  New York, York
        July 17, 2012

                              **/s/Martin Glenn**
                              MARTIN GLENN
                      United States Bankruptcy Judge

Exhibit 1

**List of FGIC Deals / Groups and Tranches**

# List of Collateral Pools Analyzed

| Trust Designation | Issue Date | Original Collateral Balance ($) | Collateral Type | # of Collateral Groups | Original Par Balance of Wrapped Bonds ($) |
|---|---|---|---|---|---|
| GMACM Home Equity Loan Trust, Series 2001-HE2 | 6/28/2001 | 1,064,800,000 | Second Lien and HELOC | 1 | 1,064,800,000 |
| GMACM Home Equity Loan Trust, GMACM Home Equity Loan-backed Term Notes, Series 2001-HE3 | 10/24/2001 | 258,237,713 | HELOC | 2 | 258,236,000 |
| GMACM Home Equity Loan Trust, Series 2002-HE1 | 3/27/2002 | 400,000,000 | HELOC | 1 | 400,000,000 |
| GMACM Home Equity Loan Trust, Series 2002-HE4 | 10/30/2002 | 614,510,715 | High LTV | 1 | 614,510,000 |
| GMACM Home Equity Loan Trust, Series 2003-HE1 | 3/26/2003 | 512,800,000 | HELOC | 1 | 510,236,000 |
| GMACM Home Equity Loan Trust, Series 2003-HE2 | 3/26/2003 | 634,646,905 | Second Lien | 1 | 634,646,000 |
| GMACM Home Equity Loan Trust, Series 2004-HE1 | 3/30/2004 | 1,269,467,282 | HELOC | 1 | 1,292,317,693 |
| GMACM Home Equity Loan Trust, Series 2004-HE5 | 11/30/2004 | 700,000,000 | Second Lien | 1 | 700,000,000 |
| GMACM Home Equity Loan Trust, Series 2005-HE1 | 3/29/2005 | 975,000,000 | HELOC | 1 | 991,087,000 |
| GMACM Home Equity Loan Trust 2005-HE2 | 6/29/2005 | 1,115,194,292 | Second Lien | 1 | 1,113,522,000 |
| GMACM Home Equity Loan Trust 2006-HE1 | 3/30/2006 | 1,281,846,717 | HELOC | 1 | 1,274,156,000 |
| GMACM Home Equity Loan Trust 2006-HE2 | 6/29/2006 | 640,000,000 | Second Lien | 1 | 626,240,000 |
| GMACM Home Equity Loan Trust 2006-HE3 | 8/30/2006 | 1,149,229,743 | Second Lien | 1 | 1,142,334,000 |
| GMACM Home Equity Loan Trust 2006-HE5 | 11/29/2006 | 1,258,300,000 | Second Lien | 1 | 1,244,459,000 |
| GMACM Home Equity Loan Trust 2007-HE2 | 6/28/2007 | 1,280,582,206 | Second Lien | 1 | 1,240,884,000 |
| GMACM Home Loan Trust, Series 2004-HLTV1 | 9/29/2004 | 175,000,000 | High LTV | 1 | 175,000,000 |
| GMACM Home Loan Trust 2006-HLTV1 | 3/30/2006 | 229,865,170 | High LTV | 1 | 229,865,170 |
| RASC Series 2001-KS1 Trust | 3/29/2001 | 1,500,000,000 | Subprime | 2 | 1,500,000,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2002-HS3 | 9/27/2002 | 430,000,354 | Second Lien | 2 | 432,500,000 |
| Residential Funding Corporation, Series 2003-HS1 | 3/27/2003 | 590,000,526 | Second Lien | 1 | 592,375,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 650,000,000 | Second Lien | 2 | 263,250,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HI2 | 6/29/2004 | 275,000,000 | High LTV | 1 | 275,000,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HI3 | 9/29/2004 | 220,000,000 | High LTV | 1 | 220,000,000 |

| Trust Designation | Issue Date | Original Collateral Balance ($) | Collateral Type | # of Collateral Groups | Original Par Balance of Wrapped Bonds ($) |
|---|---|---|---|---|---|
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS1 | 3/29/2004 | 475,000,381 | Second Lien | 2 | 477,125,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS3 | 9/29/2004 | 280,000,000 | HELOC | 1 | 284,000,000 |
| RASC Series 2004-KS7 Trust | 7/29/2004 | 850,000,198 | Subprime | 2 | 850,000,000 |
| RASC Series 2004-KS9 Trust | 9/29/2004 | 600,002,392 | Subprime | 2 | 600,000,000 |
| RAMP Series 2004-RS7 Trust | 7/29/2004 | 1,190,000,000 | Scratch & Dent | 3 | 1,183,656,000 |
| RAMP Series 2004-RZ2 Trust | 6/29/2004 | 475,000,246 | High LTV | 2 | 475,000,000 |
| RAMP Series 2005-EFC7 Trust | 12/28/2005 | 725,000,210 | Subprime | 1 | 698,175,000 |
| RASC Series 2005-EMX5 Trust | 12/16/2005 | 400,000,044 | Subprime | 1 | 380,000,000 |
| Home Equity Loan Trust 2005-HSA1 | 12/29/2005 | 279,503,389 | Second Lien | 2 | 278,847,000 |
| Residential Funding Mortgage Securities II Home Loan Trust 2005-HI1 | 1/27/2005 | 240,000,000 | High LTV | 1 | 240,000,000 |
| Home Equity Loan Trust 2005-HS1 | 9/23/2005 | 850,000,076 | Second Lien | 2 | 853,750,000 |
| Home Equity Loan Trust 2005-HS2 | 11/29/2005 | 575,000,286 | Second Lien | 2 | 577,462,500 |
| RAMP Series 2005-NC1 Trust | 12/28/2005 | 900,000,017 | Subprime | 1 | 870,750,000 |
| RAMP Series 2005-RS9 Trust | 11/29/2005 | 1,200,001,404 | Scratch & Dent | 1 | 1,179,000,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 260,859,542 | Prime | 1 | 25,000,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 311,723,395 | Prime | 1 | 30,000,000 |
| RFMSII Series 2006-HSA1 Trust | 1/27/2006 | 463,765,025 | Second Lien | 1 | 461,444,000 |
| Home Equity Loan Trust 2006-HSA2 | 2/24/2006 | 450,000,000 | Second Lien | 2 | 447,900,000 |
| Home Loan Trust 2006-HI2 | 5/25/2006 | 237,844,495 | High LTV | 1 | 237,391,000 |
| Home Loan Trust 2006-HI3 | 7/21/2006 | 226,902,024 | High LTV | 1 | 223,158,000 |
| Home Loan Trust 2006-HI4 | 9/28/2006 | 273,513,055 | High LTV | 1 | 272,693,000 |
| Home Loan Trust 2006-HI5 | 12/28/2006 | 250,095,045 | High LTV | 1 | 247,469,000 |
| RASC Series 2007-EMX1 Trust | 3/12/2007 | 749,029,398 | Subprime | 1 | 692,852,000 |
| Home Loan Trust 2007-HI1 | 3/30/2007 | 257,532,198 | High LTV | 1 | 254,956,000 |
| **Total** | | **29,745,254,443** | | **61** | **28,636,046,363** |

# Non-Wrapped CUSIP, Tranches or Classes of Certificates

## Non-Wrapped Bonds

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type | Original Tranche Size ($) |
|---|---|---|---|---|
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMN5 | Senior | 50,000,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMP0 | Senior | 179,529,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMQ8 | Senior | 68,695,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMR6 | Senior | 14,367,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMS4 | Senior | 33,534,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMU9 | Mezzanine | 18,525,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMV7 | Mezzanine | 15,600,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMW5 | Junior | 9,750,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XTW3 | Senior Principal Only | 2,878,895 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XTR4 | Senior | 23,903,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XTS2 | Senior | 1,886,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XTU7 | Senior | 176,142,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XTV5 | Senior | 23,484,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUA9 | Junior | 3,913,400 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUB7 | Junior | 1,565,100 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUC5 | Junior | 782,600 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUD3 | Junior | 521,700 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUE1 | Junior | 391,300 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUF8 | Junior | 391,347 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZQ9 | Junior | 623,461 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XA29 | Senior Principal Only | 1,547,234 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XA60 | Junior | 6,234,900 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XA78 | Junior | 2,182,100 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XA86 | Junior | 1,091,000 |

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type | Original Tranche Size ($) |
|---|---|---|---|---|
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZN6 | Junior | 935,200 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZP1 | Junior | 779,300 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZR7 | Senior | 74,000,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZT3 | Senior | 2,290,910 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZU0 | Senior | 20,500,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZV8 | Senior | 117,284,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZW6 | Senior | 27,300,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZX4 | Senior | 3,591,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZY2 | Senior | 20,306,490 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZZ9 | Senior | 3,057,600 |
| Total | | 34 | | 907,582,537 |

## Senior IO Tranches

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type |
|---|---|---|---|
| GMACM Home Equity Loan Trust 2005-HE2 | 06/29/05 | 36185MAG7 | Senior Interest Only |
| GMACM Home Equity Loan Trust, Series 2002-HE4 | 10/30/02 | 361856CG0 | Senior Interest Only |
| GMACM Home Equity Loan Trust, Series 2003-HE2 | 03/26/03 | 361856CR6 | Senior Interest Only |
| GMACM Home Equity Loan Trust, Series 2004-HE5 | 11/30/04 | 361856DZ7 | Senior Interest Only |
| RAMP Series 2004-RZ2 Trust | 06/29/04 | 7609854W8 | Senior Interest Only |
| Residential Funding Mortgage Securities II, Inc, Series 2002-HS3 | 09/27/02 | 76110VKT4 | Senior Interest Only |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 06/26/03 | 76110VMT2 | Senior Interest Only |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS1 | 03/29/04 | 76110VQD3 | Senior Interest Only |
| RFMSI Series 2005-S2 Trust | 03/24/05 | 76111XTX1 | Senior Interest Only |
| RFMSI Series 2005-S2 Trust | 03/24/05 | 76111XTT0 | Senior Interest Only |
| RFMSI Series 2005-S7 Trust | 11/23/05 | 76111XA37 | Senior Interest Only |
| Total | | | 11 |

**Residual Tranches**

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type |
|---|---|---|---|
| GMACM Home Equity Loan Trust 2005-HE2 | 6/29/2005 | 36185MAG7 | Residual |
| GMACM Home Equity Loan Trust 2006-HE1 | 3/30/2006 | G06H1CERT | Residual |
| GMACM Home Equity Loan Trust 2006-HE2 | 6/29/2006 | GMHSHPPK0 | Residual |
| GMACM Home Equity Loan Trust 2006-HE3 | 8/30/2006 | GMH3JKG10 | Residual |
| GMACM Home Equity Loan Trust 2006-HE5 | 11/29/2006 | GMHEFA2Y0 | Residual |
| GMACM Home Equity Loan Trust 2007-HE2 | 6/28/2007 | GMHS1B220 | Residual |
| GMACM Home Equity Loan-backed Term Notes, Series 2001-HE3 | 10/24/2001 | GMHE01H3R | Residual |
| GMACM Home Equity Loan Trust, Series 2001-HE2 | 6/28/2001 | G01H2CERT | Residual |
| GMACM Home Equity Loan Trust, Series 2002-HE1 | 3/27/2002 | G02H1CERT | Residual |
| GMACM Home Equity Loan Trust, Series 2002-HE4 | 10/30/2002 | 361856CG0 | Residual |
| GMACM Home Equity Loan Trust, Series 2003-HE1 | 3/26/2003 | G03H1CERT | Residual |
| GMACM Home Equity Loan Trust, Series 2003-HE2 | 3/26/2003 | 361856CR6 | Residual |
| GMACM Home Equity Loan Trust, Series 2004-HE1 | 3/30/2004 | GMHE4H1RV | Residual |
| GMACM Home Equity Loan Trust, Series 2004-HE1 | 3/30/2004 | GMHE4H1RV | Residual |
| GMACM Home Equity Loan Trust, Series 2004-HE5 | 11/30/2004 | 361856DZ7 | Residual |
| GMACM Home Equity Loan Trust, Series 2005-HE1 | 3/29/2005 | G05H1CERT | Residual |
| GMACM Home Loan Trust 2006-HLTV1 | 3/30/2006 | G0AH1CERT | Residual |
| GMACM Home Loan Trust, Series 2004-HLTV1 | 9/29/2004 | GMLT04H1R | Residual |
| Home Equity Loan Trust 2005-HS1 | 9/23/2005 | R05HS1SBI | Residual |
| Home Equity Loan Trust 2005-HS1 | 9/23/2005 | R05HS1SBI | Residual |
| Home Equity Loan Trust 2005-HS2 | 11/29/2005 | R05HS2SBI | Residual |
| Home Equity Loan Trust 2005-HS2 | 11/29/2005 | R05HS2SBI | Residual |
| Home Equity Loan Trust 2005-HSA1 | 12/29/2005 | R05HA1SBI | Residual |
| Home Equity Loan Trust 2005-HSA1 | 12/29/2005 | R05HA1SBI | Residual |
| Home Equity Loan Trust 2006-HSA2 | 2/24/2006 | R06HA2SBI | Residual |
| Home Equity Loan Trust 2006-HSA2 | 2/24/2006 | R06HA2SBI | Residual |
| Home Loan Trust 2006-HI2 | 5/25/2006 | RFCUDA530 | Residual |

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type |
|---|---|---|---|
| Home Loan Trust 2006-HI3 | 7/21/2006 | RFCVVG991 | Residual |
| Home Loan Trust 2006-HI4 | 9/28/2006 | RFC2T8F40 | Residual |
| Home Loan Trust 2006-HI5 | 12/28/2006 | RFC8M1DI0 | Residual |
| Home Loan Trust 2007-HI1 | 3/30/2007 | RFCICRWA0 | Residual |
| RAMP Series 2004-RS7 Trust | 7/29/2004 | 7609857L9 | Residual |
| RAMP Series 2004-RS7 Trust | 7/29/2004 | 7609857L9 | Residual |
| RAMP Series 2004-RZ2 Trust | 6/29/2004 | 7609854W8 | Residual |
| RAMP Series 2004-RZ2 Trust | 6/29/2004 | 7609854W8 | Residual |
| RAMP Series 2005-EFC7 Trust | 12/28/2005 | 76112BR93 | Residual |
| RAMP Series 2005-NC1 Trust | 12/28/2005 | 76112BT67 | Residual |
| RAMP Series 2005-RS9 Trust | 11/29/2005 | 76112BM23 | Residual |
| RASC Series 2001-KS1 Trust | 3/29/2001 | 76110WLE4 | Residual |
| RASC Series 2001-KS1 Trust | 3/29/2001 | 76110WLE4 | Residual |
| RASC Series 2004-KS7 Trust | 7/29/2004 | 76110WB62 | Residual |
| RASC Series 2004-KS7 Trust | 7/29/2004 | 76110WB62 | Residual |
| RASC Series 2004-KS9 Trust | 9/29/2004 | 76110WF43 | Residual |
| RASC Series 2004-KS9 Trust | 9/29/2004 | 76110WF43 | Residual |
| RASC Series 2005-EMX5 Trust | 12/16/2005 | 76110W7S9 | Residual |
| RASC Series 2007-EMX1 Trust | 3/12/2007 | 74924XAF2 | Residual |
| Residential Funding Corporation, Series 2003-HS1 | 3/27/2003 | R03HS1SBI | Residual |
| Residential Funding Corporation, Series 2003-HS1 | 3/27/2003 | R03HS1SBI | Residual |
| Residential Funding Mortgage Securities II Home Loan Trust 2005-HI1 | 1/27/2005 | RFC05HI1C | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2002-HS3 | 9/27/2002 | 76110VKT4 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2002-HS3 | 9/27/2002 | 76110VKT4 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMN5 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMN5 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HI2 | 6/29/2004 | R4HI2CERT | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HI3 | 9/29/2004 | RFC4HI3RV | Residual |

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type |
|---|---|---|---|
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS1 | 3/29/2004 | 76110VQD3 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS1 | 3/29/2004 | 76110VQD3 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS3 | 9/29/2004 | RFC4HS3RV | Residual |
| RFMSII Series 2006-HSA1 Trust | 1/27/2006 | 76110VTH1 | Residual |
| Total | | | 59 |

21981/83

**NewOak Capital Advisors LLC**
James Frischling, President
485 Lexington Avenue, 25th Floor
New York, NY 10017
Phone 212.209.0858

NEWOAK
C A P I T A L

Lorenzo  MARINuzzi -19116

June 28, 2013

Residential Capital LLC
c/o J. Alexander Lawrence, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050

INVOICE # N-2119

FOR PROFESSIONAL SERVICES RENDERED FOR FGIC RMBS CLAIM ANALYSIS IN CONNECTION WITH
SETTLEMENT AGREEMENT STEMMING FROM THE IN RE RESIDENTIAL CAPITAL, LLC. ET AL. MATTER

| Part 1 : Confirmation of Trust Tranche Structure and FGIC Guaranty in Preparation for Expected Loss Estimation | Hours | Billed |
|---|---|---|
| Preparatory Work for Loss Estimate Calculations | 88.55 | $47,197.50 |
| Calls\Meetings | 14.50 | 8,760.00 |
| **Total Part 1** | | **$55,957.50** |

| Part 2 : Expected Loss Estimation | Count | Billed |
|---|---|---|
| Mortgage Groups @ $1,000 per group | 61 | $61,000.00 |
| Tranches @ $1,000 per tranche | 104 | 104,000.00 |
| **Total Part 2** | | **$165,000.00** |

| Part 3 : Preparation of Expert Witness Report and Related Declaration | Hours | Billed |
|---|---|---|
| Drafting | 91.90 | $54,740.00 |
| Calls\Meeting | 15.30 | 14,977.50 |
| **Total Part 3** | | **$69,717.50** |

| **INVOICE TOTAL** | | **$290,675.00** |
|---|---|---|

**\*please see attached support for time incurred\***

Amounts due may be remitted by wire transfer
Bank: Bank of America
Routing/ABA #: 026009593
Account #: 483023661263
Account Name: NewOak Capital Advisors LLC
Reference: Invoice # N-2119

Amounts due may be remitted by check.
Attention: Robert Johnson
NewOak Capital Advisors LLC
485 Lexington Avenue, 25th Floor
New York, NY 10017
212-209-0779

$ 145, 337.50

Pay 1/2 via
Wire TRANSfer

ENTIRE ANT. SHould Appear
on our bill.

remainder will be
paid when our
invoice has been
paid by ResCap.

Due and payable upon receipt.
The legal rate of interest will be charged for balances outstanding over 30 days.
Tax ID # 27-0222720

**Preparatory Work for Loss Estimate Calculations**

| Timekeeper | Title | Rate | Hours | Total |
|---|---|---|---|---|
| Ron D'Vari | Partner | 950 | 4.10 | 3,895.00 |
| Matt Lewis | Managing Director | 750 | 3.55 | 2,662.50 |
| Max Marquardt | Director | 600 | 8.20 | 4,920.00 |
| Haroon Jawadi | Director | 600 | 33.2 | 19,920.00 |
| Roger Pietka | Analyst | 400 | 39.50 | 15,800.00 |
| Total | | | | 47,197.50 |

**Calls and Meetings in Connection with Preparatory Work for Loss Estimate Calculations (Part 1)**

| Timekeeper | Title | Rate | Hours | Total |
|---|---|---|---|---|
| Ron D'Vari | Partner | 950 | 2.80 | 2,660.00 |
| Matt Lewis | Managing Director | 750 | 0.40 | 300.00 |
| Sriram Sumaithangi | Managing Director | 750 | 0.40 | 300.00 |
| Max Marquardt | Director | 600 | 1.30 | 780.00 |
| Haroon Jawadi | Director | 600 | 4.00 | 2,400.00 |
| Alexander Sellinger | Associate Director | 600 | 0.40 | 240.00 |
| Roger Pietka | Analyst | 400 | 2.70 | 1,080.00 |
| Bradley Improta | Analyst | 400 | 2.50 | 1000.00 |
| Total | | | | 8,760.00 |

**Drafting in Connection with Preparation of Expert Witness Report and Related Declaration**

| Timekeeper | Title | Rate | Hours | Total |
|---|---|---|---|---|
| Ron D'Vari | Partner | 950 | 25.20 | 23,940.00 |
| Matt Lewis | Managing Director | 750 | 0.80 | 600.00 |
| Robert Jacques | Managing Director | 750 | 4.00 | 3,000.00 |
| Max Marquardt | Director | 600 | 5.60 | 3,360.00 |
| Haroon Jawadi | Director | 600 | 6.60 | 3,960.00 |
| Roger Pietka | Analyst | 400 | 30.20 | 12,080.00 |
| Thea Gersten | Analyst | 400 | 19.50 | 7,800.00 |
| Total | | | | 54,740.00 |

**Calls and Meetings in Connection with Preparation of Expert Witness Report/Declaration (Part 3)**

| Timekeeper | Title | Rate | Hours | Total |
|---|---|---|---|---|
| Ron D'Vari | Partner | 950 | 4.95 | 4,702.50 |
| Sriram Sumaithangi | Managing Director | 750 | 0.30 | 225.00 |
| Max Marquardt | Director | 600 | 0.60 | 360.00 |
| Haroon Jawadi | Director | 600 | 0.80 | 480.00 |
| Roger Pietka | Analyst | 400 | 0.30 | 120.00 |
| Thea Gersten | Analyst | 400 | 2.35 | 940.00 |
| Total | | | | 6,827.50 |

| Date | Timekeeper | Task | Sub-Task | Notes | Hours |
|------|-----------|------|----------|-------|-------|
| 5/29/2013 | Alexander Sellinger | Calls & Meetings | Part 1 - Calls & Meetings | Discussions and instructions from Ron re: proper analysis and identification of unwrapped tranches requiring loss estimation. | 0.40 |
| 5/29/2013 | Haroon Jawadi | Calls & Meetings | Part 1 - Calls & Meetings | Discussions and instructions to the team for proper analysis and identification of unwrapped tranches requiring loss estimation. | 2.00 |
| 5/29/2013 | Matt Lewis | Calls & Meetings | Part 1 - Calls & Meetings | Discussions and instructions from Ron re: proper analysis and identification of unwrapped tranches requiring loss estimation. | 0.40 |
| 5/29/2013 | Matt Lewis | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Work with Max to identify all wrapped and unwrapped bonds. | 0.50 |
| 5/29/2013 | Max Marquardt | Calls & Meetings | Part 1 - Calls & Meetings | Discussions and instructions from Ron re: proper analysis and identification of unwrapped tranches requiring loss estimation. | 0.40 |
| 5/29/2013 | Max Marquardt | Calls & Meetings | Part 1 - Calls & Meetings | Call with James Newton and colleagues regarding scope of requested analysis. | 0.90 |
| 5/29/2013 | Max Marquardt | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Gathering data on portfolio of unwrapped tranches in order to refine scope of assignment. | 4.60 |
| 5/29/2013 | Roger Pietka | Calls & Meetings | Part 1 - Calls & Meetings | Discussion with team on proper analysis and loss estimation calculation. | 1.20 |
| 5/29/2013 | Ron D'Vari | Calls & Meetings | Part 1 - Calls & Meetings | Discussions and instructions to the team regarding proper analysis and identification of unwrapped tranches requiring loss estimation | 0.40 |
| 5/29/2013 | Ron D'Vari | Calls & Meetings | Part 1 - Calls & Meetings | Call with James Newton and colleagues regarding scope of requested analysis. | 0.40 |
| 5/29/2013 | Sriram Sumaithangi | Calls & Meetings | Part 1 - Calls & Meetings | Discussions and instructions from Ron re: proper analysis and identification of unwrapped tranches requiring loss estimation | 0.40 |
| 5/30/2013 | Haroon Jawadi | Calls & Meetings | Part 1 - Calls & Meetings | Call with James Newton (Ron, Haroon, Roger, Ed) getting clarity on multiple groups, loss calculations on residual and interest only tranches. | 0.50 |
| 5/30/2013 | Haroon Jawadi | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Work with Ron and Roger to gather data on pools and wrapped and unwrapped CUSIPs. | 6.70 |
| 5/30/2013 | Roger Pietka | Calls & Meetings | Part 1 - Calls & Meetings | Call with James Newton (Ron, Haroon, Roger, Ed) getting clarity on multiple groups, loss calculations on residual and interest only tranches. | 0.50 |
| 5/30/2013 | Roger Pietka | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Work with Haroon and Ron to determine methodology for assessing deals, tranches and groups with respects to insurance wraps on underlying bonds (0.2). Gathering data (6.70) | 6.90 |
| 5/30/2013 | Ron D'Vari | Calls & Meetings | Part 1 - Calls & Meetings | Call with James Newton (Haroon, Roger, Ed) getting clarity on multiple groups, loss calculations on residual and interest only tranches. | 0.50 |
| 5/30/2013 | Ron D'Vari | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Discussions with the team to gather data on loan pools and wrapped and unwrapped CUSIPs and how to address Group loss estimation issues and how it fits the overall formulation. | 0.40 |
| 5/31/2013 | Haroon Jawadi | Calls & Meetings | Part 1 - Calls & Meetings | Call with Ron to discuss loss estimation methodology. | 1.00 |

| Date | Timekeeper | Task | Sub-Task | Notes | Hours |
|------|-----------|------|----------|-------|-------|
| 5/31/2013 | Haroon Jawadi | Calls & Meetings | Part 1 - Calls & Meetings | Call with Kayvan at Morrison & Foerster to discuss loss estimation methodology. | 0.50 |
| 5/31/2013 | Haroon Jawadi | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Work with Roger to set up portfolios and analytics. | 9.50 |
| 5/31/2013 | Matt Lewis | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Work with Haroon to develop valuation framework for residual interest in RMBS trusts. | 0.75 |
| 5/31/2013 | Matt Lewis | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Discuss residual valuation framework with Ed. | 0.20 |
| 5/31/2013 | Matt Lewis | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Discuss residual valuation framework with Ron. | 0.30 |
| 5/31/2013 | Roger Pietka | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Worked with Haroon to set-up portfolios and analytics for portfolio of deals. Developed wrap and unwrapped tranche analysis and unwrapped tranche ascribed values. | 12.40 |
| 5/31/2013 | Ron D'Vari | Calls & Meetings | Part 1 - Calls & Meetings | Phone call with the team (Roger and Haroon) discussing 1) Roger Analysis, 2) details of Illustrative Analysis of Size of Wrapped vs. Unwrapped security tranches. | 1.00 |
| 5/31/2013 | Ron D'Vari | Calls & Meetings | Part 1 - Calls & Meetings | Call with Keyvan discussing the format and definition of the Illustrative Analysis of Size of Wrapped vs. Unwrapped security tranches. | 0.50 |
| 5/31/2013 | Ron D'Vari | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Reviewing deal structures, over-collateralization levels, and clarifying the Intex tranches. | 2.00 |
| 5/31/2013 | Ron D'Vari | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Call with Matt on objectives of loss analysis for interest only and Residual tranches. | 0.40 |
| 5/31/2013 | Ron D'Vari | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Call with Ron on objectives of loss analysis for interest only and Residual tranches. | 0.40 |
| 6/1/2013 | Haroon Jawadi | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Work with Roger to set up portfolios and analytics. | 2.10 |
| 6/1/2013 | Roger Pietka | Calls & Meetings | Part 1 - Calls & Meetings | Call with Ron & Haroon to discuss summary of table of tranches. | 1.00 |
| 6/1/2013 | Roger Pietka | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Wrapped and Unwrapped tranche analysis, ascribed value analysis w/ Haroon. Prepared client deliverable. | 3.85 |
| 6/1/2013 | Ron D'Vari | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Reviewed wrapped/unwrapped relative size analysis by Roger and Haroon on incorporating FGIC confirmed information. | 0.90 |
| 6/3/2013 | Haroon Jawadi | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Work with Roger to set up portfolios and analytics. | 9.00 |
| 6/3/2013 | Matt Lewis | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Work with Haroon, Roger and Ron to refine residual loss calculation methodology. | 0.90 |

| Date | Timekeeper | Task | Sub-Task | Notes | Hours |
|---|---|---|---|---|---|
| 6/3/2013 | Max Marquardt | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Querying the database to complete tables in reports. | 3.60 |
| 6/3/2013 | Max Marquardt | Drafting | Drafting | Formatting and correcting tables. | 2.20 |
| 6/3/2013 | Max Marquardt | Drafting | Drafting | Researching additional information on collateral sizes and tranches sizes. | 1.60 |
| 6/3/2013 | Robert Jacques | Drafting | Drafting | RMBS methodology research and drafting for declaration. | 3.00 |
| 6/3/2013 | Roger Pietka | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Preparing performance assumptions for select tranches which have incurred cash flow. Reviewing a number of residual tranches in Intex to determine worthiness of modeling with Haroon. | 9.00 |
| 6/3/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Met with Thea on declaration | 0.25 |
| 6/3/2013 | Thea Gersten | Calls & Meetings | Part 3 - Calls & Meetings | Met with Ron to discuss client assignment and declaration approach. | 0.25 |
| 6/3/2013 | Thea Gersten | Drafting | Drafting | Declaration draft/outline | 7.00 |
| 6/4/2013 | Bradley Improta | Drafting | Drafting | Helped Roger Create HELOC Structure Diagram for Steel Toe. | 2.50 |
| 6/4/2013 | Haroon Jawadi | Loss Estimate Calculations | Loss Estimate Calculations | Working with Roger and calculating losses for unwrapped tranches. | 5.90 |
| 6/4/2013 | Haroon Jawadi | Drafting | Drafting | Working with Roger on draft of necessary tables and outputs. | 3.20 |
| 6/4/2013 | Matt Lewis | Loss Estimate Calculations | Loss Estimate Calculations | Work with Haroon and Roger to finalize loss estimates for residuals. | 0.40 |
| 6/4/2013 | Matt Lewis | Drafting | Drafting | Work with Max on table for declaration. | 0.20 |
| 6/4/2013 | Matt Lewis | Drafting | Drafting | Work with Roger, Justen and Brad to create HELOC structure diagram. | 0.60 |
| 6/4/2013 | Max Marquardt | Calls & Meetings | Part 3 - Calls & Meetings | Discussions with team on refining and drafting declaration based on call with Morrison & Foerster | 0.60 |
| 6/4/2013 | Max Marquardt | Drafting | Drafting | Checking data accuracy and reviewing prelim draft for upload. | 1.80 |
| 6/4/2013 | Robert Jacques | Drafting | Drafting | Report Draft Review | 1.00 |
| 6/4/2013 | Roger Pietka | Preparatory Work for Loss Estimate Calculations | Preparatory Work for Loss Estimate Calculations | Finalizing accumulated loss numbers with Haroon. | 6.50 |
| 6/4/2013 | Roger Pietka | Drafting | Drafting | Drafting charts and sector summary tables for report (4.5), review with Ron (1.35). | 5.85 |
| 6/4/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Discussions with team on refining and drafting declaration based on call with Morrison & Foster. | 0.50 |
| 6/4/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Call with Haroon and Matt on Residual Analysis. | 0.30 |
| 6/4/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Call with Morrison & Foerster (Kayvan) (Ron, Ed, Max, Haroon). | 0.30 |
| 6/4/2013 | Ron D'Vari | Drafting | Drafting | Drafting Expert Report: RMBS Methodology, Non-wrapped Balance-Based Tranches, Residual Discussions, Description of Tranches, Results. | 8.50 |
| 6/4/2013 | Thea Gersten | Calls & Meetings | Part 3 - Calls & Meetings | Discussed with team on refining and drafting declaration based on call with Morrison & Foerster. | 0.50 |

| Date | Timekeeper | Task | Sub-Task | Notes | Hours |
|------|-----------|------|----------|-------|-------|
| 6/4/2013 | Thea Gersten | Calls & Meetings | Part 3 - Calls & Meetings | Call with Morrison & Foerster (Ron, Ed, Max, Haroon)regarding residual analysis and refining declaration | 0 30 |
| 6/4/2013 | Thea Gersten | Drafting | Drafting | Work with Max on table for declaration. Assembled and drafted components for declaration outline and uploaded declaration outline before call. | 3.00 |
| 6/5/2013 | Haroon Jawadi | Calls & Meetings | Part 3 - Calls & Meetings | Call with Keyvan to discuss interest only tranche characterization. | 0 80 |
| 6/5/2013 | Haroon Jawadi | Loss Estimate Calculations | Loss Estimate Calculations | Calculating losses for interest only and principal only tranches. | 2.60 |
| 6/5/2013 | Roger Pietka | Calls & Meetings | Part 3 - Calls & Meetings | Discussion on some of the senior interest only characterization (Ron, Sriram and Roger). | 0.30 |
| 6/5/2013 | Roger Pietka | Drafting | Drafting | Aggregating tables and data from multiple sources in single workbook. Formatting tables and spot checking totals for irregularities. Review of charts and tables w/ team. | 9 35 |
| 6/5/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Discussions with Thea on Declaration. | 0.50 |
| 6/5/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Discussion on some of the senior interest only characterization (Ron, Sriram and Roger). | 0 30 |
| 6/5/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Call with team and Morrison & Foerster to discuss aggregating tables and data from multiple sources in single workbook. Formatting tables and spot checking totals for irregularities. | 0.80 |
| 6/5/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Call with Kayvan clarifying several aspect of declaration. | 0.40 |
| 6/5/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Call with Kayvan clarifying interest only and Residual Nos and schedule (Thea and Roger) | 0.40 |
| 6/5/2013 | Ron D'Vari | Drafting | Drafting | Call with MORRISON & FOERSTER - description of preliminary results, interpretation of lifetime collateral losses, and clarification of loss allocation. | 0 80 |
| 6/5/2013 | Ron D'Vari | Drafting | Drafting | Discussions with Thea and Roger on review, edits, and tables needed for the last version of the report. | 0.30 |
| 6/5/2013 | Ron D'Vari | Drafting | Drafting | Work on conclusion section of the report. | 1.80 |
| 6/5/2013 | Ron D'Vari | Drafting | Drafting | Work on Conclusion of Report and Review Other Material Provided. | 2.00 |
| 6/5/2013 | Sriram Sumaithangi | Calls & Meetings | Part 3 - Calls & Meetings | Discussion on some of the senior interest only characterization (Ron, Sriram and Roger). | 0.30 |
| 6/5/2013 | Thea Gersten | Calls & Meetings | Part 3 - Calls & Meetings | Met with Ron to discuss declaration. | 0.50 |
| 6/5/2013 | Thea Gersten | Calls & Meetings | Part 3 - Calls & Meetings | Call with team and Morrison & Foerster discussing many aspects of declaration and schedule. | 0.80 |
| 6/5/2013 | Thea Gersten | Drafting | Drafting | Work on format and exhibits and review, edit, draft report. | 7.00 |
| 6/6/2013 | Haroon Jawadi | Drafting | Drafting | Going thru draft of report. | 3.40 |
| 6/6/2013 | Roger Pietka | Drafting | Drafting | Implementing changes and formats to tables (6.15). Final iterations on exhibits and report prior to client delivery. Review with Ron (3.7), Thea and Haroon. | 9.85 |
| 6/6/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Call with Kayvan on model description. | 0 40 |

| Date | Timekeeper | Task | Sub-Task | Notes | Hours |
|------|-----------|------|----------|-------|-------|
| 6/6/2013 | Ron D'Vari | Drafting | Drafting | Finalizing the report and enhancing model description. | 6.00 |
| 6/6/2013 | Thea Gersten | Drafting | Drafting | Worked with Roger to input tables, format and review declaration. | 2.50 |
| 6/7/2013 | Matt Lewis | Loss Estimate Calculations | Loss Estimate Calculations | Confirm reasonableness of bond losses greater than collateral losses on two deals through investigation of recent remittance reports and prosupps. | 0.50 |
| 6/7/2013 | Roger Pietka | Drafting | Drafting | Final review of report and underlying totals. | 5.15 |
| 6/7/2013 | Ron D'Vari | Calls & Meetings | Part 3 - Calls & Meetings | Calls with Kayvan discussing methodology (0.4 hrs), review of draft (0.2 hrs) and final edit (0.2 hrs). | 0.80 |
| 6/7/2013 | Ron D'Vari | Drafting | Drafting | Review and edit of D'Vari main declaration (3.3 hrs) Addressing certain aspects of two of the tranche losses in two of the Trusts (2.5). | 5.80 |
| 6/10/2013 | Ron D'Vari | Calls & Meetings | External Calls & Meetings | Discussions on FGIC Disclosure. | 0.60 |
| 6/11/2013 | Roger Pietka | Preparatory Work for Loss Estimate Calculations | ID Securities and Set Up Portfolios | Review of total groups residing in trust in comparison with number of insurance policies assigned to the 47 trusts reviewed. | 0.85 |
| 6/14/2013 | Ron D'Vari | Calls & Meetings | External Calls & Meetings | Call with Trustee and MORRISON & FOERSTER. | 0.50 |
| 6/26/2013 | Ron D'Vari | Calls & Meetings | External Calls & Meetings | Call with Kayvan on Testimony and additional information on loss estimation methodology. | 0.80 |
| 6/27/2013 | Thea Gersten | Calls & Meetings | Internal Calls & Meetings | Reviewed and briefly summarized subpoena. | 2.00 |
| 6/27/2013 | Richard Kelly | Calls & Meetings | Internal Calls & Meetings | Review subpoena (0.8); conferencing with Ed Napoli (0.4). | 1.20 |
| 6/28/2013 | Thea Gersten | Calls & Meetings | Internal Calls & Meetings | Reviewed subpoena objection letter. | 0.30 |
| 6/28/2013 | Richard Kelly | Calls & Meetings | Internal Calls & Meetings | Review response to subpoena, finalize for signature. | 0.60 |