# EXHIBIT B

# In Re:
*RESIDENTIAL CAPITAL, LLC, et al.*

*Case No. 12-12020-mg*

*September 11, 2013*

*eScribers, LLC*
*(973) 406-2250*
*operations@escribers.net*
*www.escribers.net*
*To purchase copies of this transcript, please contact us.*



Min-U-Script® with Word Index

RESIDENTIAL CAPITAL, LLC, ET AL.

42

1  $14,951.86.  They have agreed, after discussions with the U.S.

2  Trustee's Office, to reduce the fees to $134,933.22 and

3  expenses to $14,943.63.

4       MR. MASUMOTO:  That's correct, Your Honor.

5       THE COURT:  All right, it's approved.

6       MR. MARINUZZI:  Next is Morrison Cohen, docket number

7  4527, requesting fees of $1,318,943 and expenses of $42,792.26.

8  In consultation with the U.S. Trustee's and in order to resolve

9  the U.S. Trustee's objection, they've resolved the -- I'm

10 sorry, reduced the requested fees to $1,303,943 and the

11 objections remain the same as the objection was -- the fees

12 remain the same -- I'm sorry -- the expenses remain the same as

13 the objection's been withdrawn.

14      THE COURT:  Is someone from Morrison Cohen here?

15      MR. MOLDOVAN:  Yes, Your Honor.

16      THE COURT:  Could you come on up?

17      Okay, whoever's on the phone, and you're rustling

18 papers against the phone, you're going to be cut off.  You

19 don't seem to be listening.

20      Is the CourtCall operator on the line?

21      OPERATOR:  I'm here, sir.

22      THE COURT:  Do you know whose phone that is?

23      OPERATOR:  Yes, I just muted their line.

24      THE COURT:  Okay.

25      MR. MOLDOVAN:  Joe Moldovan, Your Honor, with Morrison

1  Cohen.

2  THE COURT: Okay. The question I have is, you have a
3  very substantial bill. The U.S. Trustee initially filed an
4  objection. There were numerous board meetings where more than
5  two attorneys attended. I need to know why that was
6  appropriate. And I know what -- you've agreed on a reduction
7  with the U.S. Trustee of 15,000 dollars, which frankly, seems
8  to be resolving it much too cheaply.

9  MR. MOLDOVAN: Your Honor, the total number of -- the
10  total amount of actual fees that related to any kind of meeting
11  or preparation session involving more than two attorneys was
12  190-some-odd thousand dollars. The total number of actual --
13  and those included, Your Honor, mediation preparation sessions,
14  deposition preparation sessions, the sessions relating to the
15  RMBS litigation, the sessions relating to the examiner. So you
16  had multiple Morrison Cohen attorneys. When I say multiple,
17  you had between two and four attorneys.

18  At board meetings, you had attorneys who specialize in
19  corporate governance or bankruptcy or litigation. And at some
20  times you had all three. When you eliminate the number of
21  meetings where there were, I believe it was, three attorneys
22  present, you come to 19,000 dollars. That is the actual amount
23  of true dollars from the application relating to any kind of a
24  meeting where more than three attorneys were present. Of the
25  19,000 dollars, in order to accommodate the U.S. Trustee, we

12-12020-mg    Doc 6094-2    Filed 12/13/13    Entered 12/13/13 12:06:41    Exhibit
Exhibit B    Pg 5 of 8
RESIDENTIAL CAPITAL, LLC, ET AL.

44

1  agreed to take a 15,000-dollar discount off of that.
2       The problem is, Your Honor, that when the U.S. Trustee
3  filed its initial application, it certainly appeared that the
4  objection was based upon, I would imagine, much more than there
5  actually was.  As I said, approximately 190,000 dollars
6  represents the total of all meetings where parties were
7  present.  And we went over that with the U.S. Trustee and
8  provided the U.S. Trustee with detail with respect to that.
9  When you then reduce that amount by the number of meetings
10 where there were three attorneys present, you come to 19,000
11 dollars.
12      And as to the three attorneys, Your Honor, I
13 probably -- I personally probably was at most meetings.  It's
14 important, of course, to recognize that the bulk of the
15 examiner's report and the bulk of the RMBS litigation concerned
16 the approval process by the independent directors of the RMBS
17 settlement.  The bulk of the mediation related to the
18 resolution of the various claims that might be asserted against
19 Ally, the directors, and the directors themselves.
20      Morrison Cohen, unlike virtually every other
21 participant -- professional participant in this case, has
22 represented this board since 2009.  Morrison Cohen was involved
23 in virtually all of the transactions that were at issue in the
24 mediation, in the RMBS settlement.  So you had corporate
25 attorneys who needed to be present both in order to provide

RESIDENTIAL CAPITAL, LLC, ET AL.

45

1  guidance on the corporate governance side and to provide detail
2  and information, both factual and legal, to the directors, with
3  respect to what had happened during the various meetings where
4  we represented those directors. That's the basis for having,
5  at times two attorneys, and at times having four.
6       There was never an attorney present, Your Honor, who
7  overlapped with another attorney in terms of area of
8  competence. You would have a tax attorney, perhaps a
9  litigator, a corporate governance attorney, and typically I
10 would be there as well as the restructuring counsel.
11      THE COURT: Mr. Masumoto?
12      MR. MASUMOTO: Your Honor, based on our discussions
13 and the documents provided, we did agree to the 15,000. We
14 thought that was appropriate under the circumstances.
15      THE COURT: And let me ask, without going into all the
16 details of your discussions, I was concerned about this because
17 of the number of attorneys that would attend meetings. Is the
18 U.S. Trustee satisfied that the agreed-upon adjustment
19 appropriately reflects a view as to whether the matter was --
20 and the events in the matter were properly staffed?
21      MR. MASUMOTO: Yes, Your Honor. And we also did
22 indicate that going forward that the -- that Your Honor's
23 ruling in a number of cases regarding attendance at meetings,
24 would be strictly enforced.
25      MR. MOLDOVAN: And --

12-12020-mg   Doc 6094-2   Filed 12/13/13   Entered 12/13/13 12:06:41   Exhibit
                         Exhibit B   Pg 7 of 8
RESIDENTIAL CAPITAL, LLC, ET AL.

46

1    MR. MASUMOTO: And that we would --

2    THE COURT: Pause.

3    MR. MASUMOTO: -- we would want that -- as a general
4  matter, Your Honor, one thing I did want to say as to everyone
5  was that when -- as Your Honor indicated, Your Honor addressed
6  the issues that we were concerned about -- when they certify,
7  they should be certifying not only the guidelines, but Your
8  Honor's ruling in other cases which our office seeks to apply
9  to all of the fee applications.

10    So with -- although the guidelines do not specifically
11 address number of attendees, we have attempted to employ Your
12 Honor's ruling on that matter to all the applicants. And we
13 ask that the applicants, when they certify, that they're also
14 certifying that they're complying with the Court's rulings with
15 respect to attendance at hearings as well as meetings.

16    In addition, if I may, because it did, in fact --
17 although we didn't have an actual reduction here with respect
18 to meals -- we tried to advise the applicants that just what
19 Your Honor had indicated. They must comply with the
20 guidelines, indicating the 8 o'clock rule before and after, the
21 one-and-a-half hour requirement, if it's before 8 o'clock, and
22 it must be reflected.

23    Additionally, since it's a practice amongst some of
24 the professionals to have a single timekeeper request multiple
25 reimbursements --

12-12020-mg    Doc 6094-2    Filed 12/13/13    Entered 12/13/13 12:06:41    Exhibit
Exhibit B    Pg 8 of 8
RESIDENTIAL CAPITAL, LLC, ET AL.

47

1   THE COURT: They've got to put the people down.

2   MR. MASUMOTO: -- they have to identify those

3   individuals and also confirm that these individuals actually

4   are entitled, that they're complying with the guidelines.

5   THE COURT: Thank you, Mr. Masumoto.

6   MR. MASUMOTO: Thank you.

7   THE COURT: All right. I'm going to go -- with that

8   explanation from Morrison Cohen and Mr. Masumoto's response,

9   I'm going to go ahead and approve the applications.

10   MR. MOLDOVAN: Thank you, Your Honor.

11   THE COURT: Thank you.

12   MR. MARINUZZI: Your Honor, that brings us to Morrison

13   & Foerster, docket number 4551 requesting total fees of

14   $22,790,342.60, and expenses of $350,910.44. After discussions

15   with the United States Trustee's Office, Morrison & Foerster

16   has reduced the total fee request to $22,750,816.10, and the

17   expenses remain as requested.

18   MR. MASUMOTO: Your Honor, that's correct. Based upon

19   the responses and our discussions, I believe we did reach an

20   accommodation on the various objections raised.

21   THE COURT: So one of the -- Mr. Marinuzzi, among the

22   questions I have -- this has come up before -- and I understand

23   that necessarily you have a lot of attorneys working on the

24   matter, but there were quite a few entries for air fare from

25   D.C. to New York. I assume it's because you had lawyers from