| | |
|---|---|
| THOMPSON & KNIGHT LLP<br>Ira L. Herman<br>Jennifer A. Christian<br>900 Third Avenue, 20th Floor<br>New York, New York 10022<br>Tel: 212-751-3001<br>Fax: 212-751-3113 | Hearing Date:  December 20, 2013, 10:00 am (ET)<br>Obj. Deadline:  December 13, 2013, 4:00 pm (ET) |

*Counsel for CIBM Bank*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Case No. 12-12020 (MG) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**OBJECTION OF CIBM BANK TO PLAN PROPONENTS' MOTION FOR ORDER
ESTABLISHING THE DISPUTED CLAIMS RESERVE IN CONNECTION WITH THE
JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC, ET AL.
AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

CIBM Bank ("CIBM"), successor by merger to Marine Bank, a creditor of Residential Funding Company, LLC ("RFC"), one of the Debtors herein, by and through the undersigned counsel, files this objection to the *Plan Proponents' Motion for Order Establishing the Disputed Claims Reserve in Connection With the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6020] (the "Claims Reserve Motion"). In support of this objection, CIBM respectfully states as follows.

**BACKGROUND**

1.     CIBM and RFC are parties to a certain Sale and Servicing Agreement dated as of June 29, 2006 (the "Sale Agreement"). Pursuant to the Sale Agreement, CIBM agreed to purchase from RFC, and RFC agreed to sell to CIBM, certain fixed rate residential home equity

8669266.1

loans (each, a "Loan" and collectively, the "Loans") identified in certain purchase confirmations executed by CIBM and RFC, from time to time. Additionally, the Sale Agreement provides that RFC is obligated to repurchase Loans with respect to which there is a breach of one or more representations and warranties made by RFC in the Sale Agreement.

2. On May 14, 2012 (the "Petition Date"), each of the above-captioned Debtors, including RFC, filed a voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code.

3. On October 31, 2012, CIBM timely filed its Proof of Claim [No. 2035] in RFC's bankruptcy case [Case No. 12-12019(MG)]. The Proof of Claim verifies CIBM's unsecured claims in the amount of **$30,022,203** (the "CIBM Claim") on account of CIBM's claims against RFC resulting from RFC's obligation under the Sale Agreement to repurchase non-conforming Loans. To date, no objection has been lodged against the CIBM Proof of Claim. Therefore, the CIBM Claim is deemed "allowed," pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3001(f).

4. On December 3, 2013, Plan Proponents[1] filed the Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (the "Plan"). The Court entered an order confirming the Plan on December 11, 2013. [Docket No. 6065].

5. The Plan classifies the CIBM Claim as a Class RS-4 (RFC Unsecured Claims) Claim.

6. Although the CIBM Claim is deemed to be allowed by operation of law, the Plan lists the CIBM Claim as "Disputed."

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Motion, as applicable.

2

8669266.1

7. Article VIII.D of the Plan contemplates the creation of a Disputed Claims Reserve for the purpose of addressing unliquidated and/or Disputed Claims.

8. The Claims Reserve Motion seeks entry of an order pursuant to sections 105(a), 502(c) and 1142(b) of the Bankruptcy Code approving the amount of the Disputed Claims Reserve to be established pursuant to Article VIII.D of the Plan.

## PLAN PROPONENTS' PROPOSED PROCEDURES

9. By the Claims Reserve Motion, Plan Proponents seek Court authority to establish a Disputed Claims Reserve in the amount of **$380.3 million**. [Motion, paragraph 23].

10. The components of the Disputed Claims Reserve are as follows:

| Claim Category | Number of Claims | Asserted Amount of Claims | Proposed "Reserve" Amount |
|---|---|---|---|
| Liquidated Claims | 124 | $254.2 million | $254.2 million |
| Partially Unliquidated Claims | 76 | Liquidated: $50 million | $50 million, plus an additional $25 million representing an additional 50% for the unliquidated portion of such claims |
| Wholly Unliquidated Claims | 349 | | $20 million |
| Claims Subject to Objection | 4 Liquidated, 1 Partially Liquidated | | Full asserted amount of $8.1 million (presumably the liquidated amounts) |
| No Liability Claims | 29 Liquidated, 60 Partially Liquidated, 100 Wholly Unliquidated | In excess of $10.2 billion | $3 million |
| Contingent Claims | | | $20 million |
| **TOTAL** | | **In excess of $10.4 billion** | **$380.3 million** |

3

11. The CIBM Claim is included on Exhibit 3-A to the Motion, in the Liquidated Claims category. Such Claims are purportedly being "reserved" at 100% of their asserted amount.

12. The Disputed Claims Reserve will be cumulative, *i.e.*, it is an aggregate reserve and the Units held will not be allocated to specific Claims or category of Claims. All Units will be available for the satisfaction of all subsequently Allowed Claims, regardless of the categories they are included in in the Motion. [Motion, paragraph 37]. According to Plan Proponents, to the extent they have underestimated the amount attributed to one category of Claims, the overestimation with respect to another category will mean that sufficient Units *should be* available to address all Disputed Class 4 Claims that become Allowed Claims after the Effective Date. [Motion, paragraph 37].

13. Once the Disputed Claims Reserve is established, no additional Units will be added to the Disputed Claims Reserve following the Effective Date. In the event that at any time the Units and the related Cash remaining in the Disputed Claims Reserve are insufficient to satisfy all of the Disputed Class 4 Claims that at the time have become Allowed, then the Allowed Disputed Class 4 Claims that at the time are unsatisfied will be satisfied *pro rata* from the remaining Units and Cash in the Disputed Claims Reserve. After all Units, and the Cash distributed with respect thereto, have been distributed from the Disputed Claims Reserve, no further distributions will be made in respect of Disputed Class 4 Claims. [Motion, paragraph 18].

**OBJECTION**

**I.    THE PROPOSED RESERVE IS INSUFFICIENT ON ITS FACE AND ILLUSORY AND PREJUDICIAL**

14.    Plan Proponents propose to reserve 100% of the asserted amount of all Liquidated Claims in Class 4.  However, the total amount of the reserve to be established is insufficient because the total amount of Disputed Claims in Class 4 is much larger than Plan Proponents state in the Motion and the Plan Proponents are not proposing separate reserves for each Disputed Claim or category of Disputed Claims.  Rather, they are proposing a cumulative reserve that will be shared by all Class 4 Disputed Claim holders.  Therefore, the 100% "reserve" for Liquidated Claims cannot be said to cover 100% of such Claims.

15.    While the amount of $380.3 million for the Disputed Claims Reserve may appear reasonable at first glance based on an "aggregate face amount" of $312.3 million in Disputed Claims as set forth in the Motion, upon further review of the Motion, it is readily apparent that the aggregate face amount of the Disputed Claims is substantially understated.

16.    First, the $312.3 million only encompasses the liquidated amounts of the Disputed Class 4 Claims ($254.2 for Liquidated Claims, $50 million for Partially Unliquidated Claims, and $8.1 million for Claims Subject to Objection).  Such amount does not include **any** estimate, reasonable or not, for **any** Partially or Wholly Unliquidated Claim, Contingent Claim, or No Liability Claim.

17.    Furthermore, the No Liability Claims include **$10.1 billion** in contingent Claims filed by the PBGC. [Motion, Footnote 8].  Plan Proponents cannot ignore such claims based on "[their] *understanding* the PBGC *intends* to withdraw [such claims] upon the Effective Date."  It does not appear that PBGC actually has agreed to withdraw the claims Plan Proponents have chosen to ignore in the calculation of the total asserted amount of Disputed Claims and Plan

5

Proponents are merely relying on their belief that they do not have any liability to PBGC on such Claims.

18.   The CIBM Claim constitutes nearly one-tenth of the proposed Disputed Claims Reserve. If the CIBM Claim is allowed in full, there will be only approximately $350.3 million left to pay the remaining Disputed Claims totaling in excess of $10.3 billion. If the remaining Disputed Claims are allowed at more than $350.3 million, just 3.4% of the claimed amounts, CIBM's distribution will be diluted (or completely eliminated, depending on the timing of its allowance) and CIBM will receive less than it is entitled to receive under the Plan.

19.   Moreover, the amounts reserved for the Partially and Wholly Unliquidated Claims, Contingent Claims, and No Liability Claims pale in comparison to the total amount of such Disputed Claims. Allowed Claims in these categories could consume any "reserve" for Liquidated Claims, such as the CIBM Claim, since the Reserve is cumulative and not segregated by Disputed Claim or category of Disputed Claims.

20.   Plan Proponents state in the Motion that "[t]o the extent [they] have underestimated the amount that should be attributed to one category of Claims, the overestimation with respect to another category[2] will mean that sufficient Units should be available to address all Disputed Class 4 Claims that become Allowed Claims after the Effective Date." [Motion, paragraph 37]. While this may provide some comfort to Unliquidated, Contingent and No Liability Claimants, it provides no comfort to CIBM, a holder of a Liquidated Claim, theoretically reserved for at 100% of the amount of its Claim, who will bear the downside risk.

---

[2] CIBM submits that the CIBM Claim is not being overestimated and, notably, it is one of the largest claims in the Liquidated Claims category.

6

21.     Moreover, the Plan appears to provide that once a Disputed Claim is disallowed, in whole or in part, Units and Cash reserved for such Disputed Claim shall be released from the Disputed Claims Reserve. [Plan, Article VIII.D, p.104]. Therefore, it is unclear how any overestimate could be available for remaining Disputed Claim holders.

22.     Furthermore, this appears to be a proposal for distributions to be made from the Disputed Claims Reserve on a first-come, first-served basis, in contravention of all notions of fairness, equity and pro rata distributions embodied in the Bankruptcy Code. Based on the proposed Disputed Claims Reserve, a No Liability Claim that is ultimately Allowed in an amount in excess of the No Liability "reserve" would be entitled to payment out of the Reserve whether or not Plan Proponents overestimated the amount of Claims, and, therefore "reserves" in other categories.

23.     Plan Proponents propose to provide holders of Disputed Claims with a more limited asset pool to share in than that for holders of Allowed Claims and they fail to provide for any form of a backstop should the proposed reserve prove to be insufficient. [Motion, paragraph 18]. Thus, the Motion must fail as members of the same class of Claims are being treated differently, in contravention of Section 1123 of the Bankruptcy Code.

24.     "The key inquiry under § 1123(a)(4) is not whether all of the claimants in a class obtain the same thing, but whether they have the same opportunity." *In re Dana Corp.*, 412 B.R. 53, 62 (S.D.N.Y. 2008). Here, CIBM does not have the same opportunity to receive a distribution on account of its Claim as a current holder of an Allowed Claim, because Plan Proponents have designated such Claim as a Disputed Claim, thereby subjecting it to a cap that assumes that most of the Disputed Claims will ultimately be disallowed.

7

25. Additionally, Plan Proponents appear to propose the creation of a single Disputed Claims Reserve with respect to all Disputed Claims of *all* Debtors.  This is effectively a proposal to substantively consolidate the Debtors' estates, but solely with respect to Disputed Claims.

26. While Plan Proponents submit that the Disputed Claims Reserve will not unfairly prejudice the holders of the Disputed Class 4 Claims, based on all of the foregoing, CIBM disagrees.

## II.    THE TYPICAL JUSTIFICATION FOR ESTIMATION OF DISPUTED CLAIMS DOES NOT APPLY TO THE CIBM CLAIM

27. Plan Proponents assert that "establishing the Disputed Claims Reserve using the Reserve Amount is necessary to make timely distributions to holders of Allowed Unsecured Claims that are Liquidating Trust Unit Beneficiaries as soon as practicable after the Effective Date." [Motion, paragraph 47].  However, CIBM submits that while the need to avoid protracted litigation is typically the rationale for estimation, resolution of the CIBM Claim is unlikely substantially to delay distributions to creditors, as there is no uncertainty as to amount, merely liability.

28. CIBM and RFC entered into the Sale Agreement in 2006.  Between 2006 and the filing of RFC's bankruptcy case in 2012, CIBM routinely put non-conforming Loans to RFC for repurchase in accordance with the terms of the Sale Agreement and RFC routinely repurchased non-conforming Loans.

29. Under the circumstances, it would seem appropriate to establish a separate reserve fund for the CIBM Claim in the entire amount sought in its Proof of Claim, plus interest.  *See, e.g., In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y., Oct. 29, 2010)[Docket No. 4383].

8

WHEREFORE, CIBM respectfully requests that the Court: (i) deny the Motion in its entirety; or alternatively (ii) require Plan Proponents to separately reserve for the full amount of the CIBM Claim, plus interest, which reserve shall not be affected in any way by the resolution of any other Disputed Claim; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York  
   December 13, 2013

Respectfully submitted,

THOMPSON & KNIGHT LLP

By: */s/ Jennifer A. Christian*  
 Ira L. Herman  
 Jennifer A. Christian  
 900 Third Avenue, 20th Floor  
 New York, New York 10022  
 Tel: 212-751-3001  
 Fax: 212-751-3113

*Counsel for CIBM Bank*