**COLE, SCHOTZ, MEISEL,**  
**FORMAN & LEONARD, P.A.**  
900 Third Avenue, 16th Floor  
New York, NY 10022  
Tel: (212) 752-8000  
Fax: (646) 563-7923  
John H. Drucker, Esq.  
Mark Tsukerman, Esq  

Hearing Date: December  17, 2013 at 10:00 a.m.  
Related Pleadings: Dkt. Nos.:5450 , 5853, 6047

*Counsel for FTI Consulting, Inc.,*  
*Financial Advisor for the Debtors*

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |

---------------------------------------------------------------------------

**DECLARATION OF WILLIAM  J. NOLAN ON BEHALF OF FTI**
**CONSULTING, INC IN REPLY TO OMNIBUS OBJECTION OF**
**THE UNITED STATES TRUSTEE REGARDING FEE APPLICATIONS FOR**
**FOURTH INTERIM AWARDS OF COMPENSATION AND REIMBURSEMENT**
**OF OUT-OF-POCKET EXPENSES AND IN SUPPORT OF THIRD**
**<u>INTERIM FEE APPLICATION OF FTI CONSULTING, INC.</u>**

**I, William J. Nolan, being duly sworn, hereby depose and say:**

I am a Senior Managing Director with FTI Consulting, Inc ("<u>FTI</u>"), the financial advisor to the debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>").  I am submitting this declaration on behalf of FTI in reply (the "Reply") to the *Omnibus Objection Of The United States Trustee* (the "<u>UST</u>") *Regarding Fee Applications For Fourth Interim Awards Of Compensation And Reimbursement Of Out-Of-Pocket Expenses*, dated December 9, 2013 [Docket No. 6047] (the " <u>UST Objection</u>"), and in further support of the *Fourth Interim Application Of FTI Consulting, Inc. As  Financial Advisors For The Debtors For Compensation And Reimbursement Of Expenses Incurred For The Period May 1, 2013 Through*

44627/0071-10123775

*August 30, 2013* [Docket No. 5853] (the "Application")[1], and respectfully state as follows. Except as otherwise noted, I have personal knowledge of the matters set forth herein[2]:

1. In its Application, for the Application Period FTI seeks an allowance of fees aggregating $4,342,805 plus $1,891,182 in Rollover Amount, and total expense reimbursement amount sought of $130,547.97.[3] The United States Trustee objects to the allowance of $298,799.61[4] in fees and reimbursement of $103,523.95 in expenses.

2. In the UST Objection, the UST identifies the following five issues with respect to the FTI Application, with FTI's understanding of the resolution proposed by the UST set forth in parentheticals:

(i) <u>Transitory timekeeper time</u> (to eliminate FTI timekeepers billing fewer than 5 hours of time during the Application Period- reduction sought of $4,957.00);

(ii) <u>Fee application preparation</u> (to reduce allowable percentage to 1% of total fees sought, which according to the UST would require a $136,660.61 reduction, leaving a balance of $47,561.89 in allowable time for this category, or alternatively, a reduction of $79,345 for time alleged by the UST to have been expended in connection with the review and revision of time records that should not be compensable, which would leave a balance of $104,877.50);

(iii) <u>Travel and lodging expenses</u> (except to the extent the expenses were associated with travel and lodging to client locations out of New York City, to reduce lodging and travel

---

[1] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the UST Objection or the Application, as applicable.

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

[3] The amount sought by FTI is after a voluntary reduction of $50,000 with respect to fee application preparation time and a voluntary reduction of $53,601.25 constituting a 50% discount for non working travel time.

[4] As set forth more fully below, it does not appear that the UST objection took into account the $50,000 voluntary reduction with respect to fee application preparation time or the $53,601.25 voluntary reduction constituting a 50% reduction of travel related time that were set forth in the Application.

2

related expense reimbursement sought by $103,523.95);

(iv) <u>Travel related fees</u> ("except to the extent FTI establishes that the travel related time was not incurred for travel to New York City" (UST Objection, page 32), reduction of $107,202.50 (amount of such fees before $50,000 voluntary reduction proposed by FTI);

(v) <u>Charges for summer associates</u> (elimination in full of compensation of $49,980 for five (5) summer associates).

3.  FTI has been in discussions with the UST to address its concerns and FTI is hopeful that it will be able to resolve those concerns prior to the hearing on the interim fee applications. To the extent not resolved, FTI respectfully submits that the UST Objection should be overruled for the reasons discussed below:

4.  <u>Transitory Timekeepers.</u>  The UST objected to $4,957 in fees with respect to time incurred by seven FTI professionals who billed less than 5 hours each during the Application Period. FTI respectfully submits that, with two possible exceptions (and for whose time FTI will eliminate the fee request totaling $728.50), the time for the remaining individuals should be compensable and not treated as "transitory." Such professionals either billed in prior fee application periods, or possess specific skills that were first called upon during the Application Period. Attached hereto as <u>Schedule A</u> is a schedule containing a summary of the services rendered and time incurred for such individuals during the application period, and where relevant, the time expended in the immediately preceding prior application period. Specifically, FTI agrees to eliminate the fee request associated with the time expended by John Yozzo and by Henry Chiu. Scott Lyman billed 507 hours in the third interim application period. The remaining timekeepers identified on Schedule A hereto are individuals with specialized IT skills who were called upon to provide technical services on an expedited basis in connection with

3

44627/0071-10123775

email related discovery demands as a result of the then pending and now resolved litigation with the junior subordinated noteholders.

<u>Proposed resolution:</u>  Except for the two individuals identified above, for the reasons set forth above the fees incurred by the remaining five time keepers should be compensable and should not  treated as being "transitory".  Although the time expended by the two individuals identified above whose time is being excluded was necessary and of benefit to the Debtors and their estates, FTI agrees to eliminate such person's time charges, which would reduce the amount sought with respect to this category to $4,228.50.

5. <u>Fee Application Preparation.</u> With respect to time expended with regard to the fee application process, the UST proposes in the alternative,  to either reduce allowable percentage to 1% of total fees sought, which according to the UST would require a $136,660.61 reduction, leaving a balance of $47,561.89 in allowable time for this category, or alternatively, a reduction of $79,345 for time alleged by the UST to have been expended in connection with the review and revision of time records that should not be compensable, which would leave a balance of $104,877.50.  FTI has the following observations about this portion of the UST Objection:

<u>First</u>, the 1% of total fees and $136,660.61 reduction in time proposed by the UST to arrive at a remaining allowable amount of $47,561.89 is arbitrary and without any meaningful basis. This is a large and complex case and FTI's role has been as varied as it has been substantial.  FTI takes its responsibilities with respect to the preparation of its fee application seriously and has devoted the time and resources that it believes were necessary and appropriate to prepare and file its application.  As financial advisors,  FTI does not generally provide detailed time description invoices for non-bankruptcy matters and FTI does not have an automated time entry and recording process.  For bankruptcy matters, on a monthly basis, time and expense

4

detail from each FTI professional is compiled, reviewed and summarized to conform to standard guidelines for fee applications. Such detail must be reviewed each month for consistency and conformity with UST guidelines, and must undergo additional review by FTI's senior management to ensure that the team leadership is familiar with fees requested before the fee statement or fee application is signed.

Second, it is apparent that the UST failed to take into account that of the total amount sought for this for this category, FTI has already agreed to a voluntary $50,000 reduction. The $50,000 reduction was applied as a credit against the amounts otherwise set forth in the Application and exhibits to address categories of time that the Court has previously expressed would not be compensable, such as time expended reviewing and revising monthly fee statements. Although such time was incurred and is reflected in the time records appended to the Application, FTI applied a credit in an effort to obviate an objection. Based upon a remaining balance of $134,225.50, such amount constitutes a total of only 2.8% (not 3.8% as asserted by the UST) of the total time incurred during the Application Period, and is well within the range that FTI understands to be generally acceptable in this district for fee application preparation, and has been found to be within the range of permissible percentages as previously approved in this case.

Third, although FTI believes the $50,000 voluntary reduction applied against total time should be sufficient to address any concerns for expenditures of time that the Court and UST previously expressed would not be compensable, the UST in its alternative relief identified an additional $29,345 of time it believes should not be compensable. To the extent it will resolve the UST Objection for this category, and is acceptable to the Court, FTI would agree to waive the additional $29,345, and thereby eliminate all of the time that the UST has identified as being

5

objectionable. This would result in the total time for this category being reduced to the alternative resolution amount proposed by the UST of $104,877.50, or 2.2% of the total time incurred during the Application Period.

Proposed Resolution: As set forth above, to resolve this portion of the UST Objection, FTI proposes that the Court approve the alternative relief proposed by the UST pursuant to which FTI will waive a total of $79,345 of the $184,222.50 incurred under this project category. This would leave an amount to be allowed of $104,877.50, or 2.2% of the total time incurred during the Application Period.

6. Travel and Lodging Expenses. Except for expenses associated with travel and lodging to client locations out of New York City, the UST seeks to reduce lodging and travel related expense reimbursement by the entire $103,523.95 sought by FTI. Attached hereto as Schedule B is an analysis of the expense reimbursements sought by FTI. The categories include expenses associated with lodging and travel:

(a) to and from client sites out of New York City - $18,188.55;

(b) to and from New York City for two key senior level personnel based outside of New York City who were part of the original pre petition retention and who continued in such capacities throughout the cases - $44,923.66;

(c) to and from New York City in connection with non New York City based FTI personnel with respect to Bankruptcy Court hearings - $2,532.34;

(d) to and from New York City in connection with non New York City based FTI personnel with respect to meetings with the creditors' committee and or its professionals - $12,953.41;

(e) to and from New York City in connection with non New York City based FTI

6

personnel's participation in internal meetings or meetings with the Debtors' attorneys-$24,732.31[5].

With respect to the business purposes for the travel related expenses in question for all categories, FTI respectfully submits that said justification was provided in the form of detailed time entries for each respective period in which the expense was incurred.

7. Other than with respect to travel related expenses incurred by non New York City based FTI personnel in connection with (i) participation in internal meetings or meetings with the Debtors' attorneys totaling $24,732.31, and (ii) attending and participating in Bankruptcy Court hearings and attending and participating in meetings with the creditors' committee or its professionals totaling $15,485.75, which amounts FTI will waive in an effort to resolve the UST Objection for this category, additional explanation for why the remaining $63,305.89 of expense reimbursement should be allowed is set forth as follows:

(a) <u>Client Sites Out of New York City</u>. There should be no issue with respect to the $18,188.55 of travel and lodging expenses for travel between the FTI professionals' home site offices and client sites in Fort Washington, PA or Minneapolis, MN. As part of FTI's role as the Debtors' financial advisors, FTI professionals routinely travel to the Debtors' offices in order to coordinate work streams, work directly with Debtor personnel and meet with management. FTI believes this is a standard practice for a financial advisor and is an integral part of FTI's retention, and as such, should be allowed.

(b) <u>Key Senior Level FTI Personnel Retained Pre Petition and Continuing Post Petition</u>. The balance of $44,923.66 is sought for travel and lodging related expenses incurred by two FTI

---

[5] In this portion of the UST Objection, the UST incorrectly lists K. Khairoullina as a non-New York timekeeper, and reduces certain of her expenses accordingly. In fact K. Khairoullina is based out of New York. Her New York related expenses of $193.68 for the period are for permissible meals and taxis in New York while working late, and such amount should be approved for reimbursement to FTI.

senior professionals who commenced providing services prior to the Petition Date and continued to provide services subsequent to the Petition Date. This category includes expenses incurred by the undersigned ,William Nolan (Senior Managing Director) in the amount of $19,637.25, and Mark Renzi (Senior Managing Director) in the amount of $25,286.41, being their expenses incurred for travelling between their home site offices and New York City and associated lodging expenses relating to services on behalf of the Debtors and their estates for which FTI has been retained. These professionals have significant institutional knowledge and the undersigned and Mr. Renzi have years of experience in the financial industry. These professionals have been involved with the Debtors since either well before filing, and in the case of the undersigned since 2008. In view of the critical nature of the issues facing the Debtors on numerous issues both before and after the chapter 11 filing dates, it would not have been appropriate or in the best interest of the Debtors or their estates to change the FTI leadership assignments for these cases merely because the chapter 11 cases were filed in New York. Based upon their expertise, and particular experience with the Debtors obtained prior to the filing dates, they were and remain in a unique position to understand, evaluate and to participate in the process in connection with many of the financial issues that had to be addressed in the chapter 11 cases and leading up to the Debtors' now confirmed chapter 11 plan. Their travel to New York was primarily to participate in meetings, including meetings with the mediator appointed in this case, the unsecured creditors' committee and the Debtors' management that is based in New York, and meetings with counsel; to attend Court hearings; and to directly manage the FTI engagement team. The undersigned and Mr. Renzi are the senior members of FTI who have the most subject matter expertise with respect to financial institution restructuring and as such are uniquely equipped to deal with the specific issues facing the Debtors. As the court is aware, Mr. Renzi was

instrumental as an expert witness in connection with the litigation with the junior subordinated noteholders and for confirmation. The undersigned respectfully submits that it is ordinary practice for financial advisors in non bankruptcy engagements to travel from their home base locations to the main site in which a client's affairs are being administered, and to charge for and to be compensated for those services and related travel and lodging expenses. see, *In re Drexel Burnham Lambert Group Inc.,* 133 B.R. 13, 19 (Bankr. S.D.N.Y. 1991) (". . . the policy behind, and intention of § 330(a) is incontrovertible. The practice of Bankruptcy Courts setting 'appropriate' rates, or reducing rates otherwise accepted by the market for comparable services because of a notion of 'economy of the estate,' has been specifically rejected by Congress and abandoned in the statutory scheme.")

Proposed Resolution: To resolve the UST objection for this category, FTI proposes to reduce the expense reimbursement sought for this category by $40,218.06 for travel and lodging related expenses incurred by non New York City based FTI personnel for meetings and court participation to and from New York, but otherwise requests that the remaining $63,305.89 (composed of (i) $18,188.55 of travel and lodging expenses for travel between the FTI professionals' home site offices and client non New York City sites, (ii) $193.68 for the expenses of the New York based FTI employee as discussed in footnote 5 above, and (iii) $44,923.66 for travel and lodging related expenses incurred by the two FTI senior professionals who commenced providing services prior to the Petition Date and continued to provide services subsequent to the Petition Date as set forth above) be allowed and paid. The undersigned respectfully submits that the amount at issue is relatively *di minimis* in comparison to the overall fees and expenses incurred in theses cases generally, and as a percentage of the fees and expenses incurred specifically by FTI. It is further respectfully submitted that the benefits of the

9

Debtors being able to utilize those FTI personnel best suited for the services provided, notwithstanding that they were based outside of the locale in which the chapter 11 cases were filed, outweighs the relatively small amount of additional expenses. In the event the UST Objection is not consensually resolved in accordance with the forgoing, for the reasons set forth above and as may be expressed at the hearing on the FTI Application, FTI respectfully submits that this portion of the UST Objection should be overruled.

8.    <u>Travel Related Fees</u>. Similar to its objection to travel related expenses, the UST objects to travel related fees "except to the extent FTI establishes that the travel related time was not incurred for travel to New York City" (UST Objection, <u>page 32</u>). In its Objection to this category, the UST states "FTI seeks compensation of $107,202.50 under the project category "25 Travel," representing 50 percent of the actual time incurred. See FTI Fee Application, p. 50, ¶ 109. That is not what the FTI Application states. The <u>total</u> recorded travel related time by FTI personnel for the Application Period was $107,202.50. Against that time, as reflected on page 5 of its Application and at paragraph 109 of its Application, FTI applied a voluntary 50% reduction. Thus, FTI is seeking only $53,601.25 for travel related time. Furthermore, in addition to the voluntary reduction taken in this case as applied above, in recording their travel time, it is FTI's general practice in this matter to also reduce travel related fees by using standardized travel times which are 25% to 50% less than the actual time required to travel. For example, travel between metropolitan New York and the client site half an hour outside of Minneapolis generally takes approximately 5 hours door to door. FTI personnel generally only bill 2.5 hours for this travel prior to any additional voluntary reduction in fees. Similar unbilled travel time can be found on all of the other routes in which FTI professionals are routinely travelling. Thus, the actual time for which payment is sought on account of travel related time is only between

10

approximately 25% - 30% of the actual time incurred.

9. The breakdown of the full $107,202.50 of recorded travel time (for which FTI is seeking the allowance of only $53,601.25) consistent with the category headings for travel and lodging related expenses is as follows:

(a) <u>Client Sites Out of New York City</u> - $ 36,575.00;

(b) <u>Key Senior Level FTI Personnel Retained Pre Petition and Continuing Post Petition</u> - $34,747.50 (William Nolan $33,562.50 and Mark Renzi - $1,185);

(c) <u>Court Hearings and Meetings with Creditors' Committee</u>-$19,790; and

(d) <u>Participation in Internal Meetings and Meetings With the Debtors' Attorneys</u> - $16,090.

<u>Proposed Resolution</u>:   For the same reasons the travel related expenses should be allowed as set forth above, so should the travel related time. In any event, however, FTI has agreed to a 50% reduction and is therefore only seeking payment in the amount of $53,601.25.  It is respectfully submitted that such reduction, should, as set forth above be considered together with the use by FTI of the standardized travel times that are generally 25% to 50% less than the actual travel time. This effectively discounts the actual time by those percentages before entry of the billable time, and then for this interim Application discounts such time again by 50% (which, as concerns this interim application in dollar value results in an aggregate amount of approximately $150,000 - $200,000 of actually expended travel related time for which FTI is not seeking compensation). Accordingly, the voluntary reduction should be more than sufficient to address any concerns by the UST and the Court. Such voluntary reduction is more than the aggregate of travel time to and from New York City by non New York based FTI personnel to attend and participate at court hearings and meetings with the creditors' committee ($19,790) and

11

or participation in internal meetings and meetings with the Debtors' attorneys ($16,090).

Except for such voluntary reduction of its fees for this category as set forth above, FTI respectfully requests that the UST Objection for this category be overruled.

10.     <u>Charges For Summer Associates</u>.  FTI is seeking allowance and payment on account of $49,980 incurred by five (5) "summer associates" billing at a rate of $175.00 per hour. The UST objects to the allowance in full of such fees citing to several cases that it asserts supports its position. However, the reference to at least one of the cases relied upon, *In re Bank of New England*, 134 B.R. 450 (Bankr. D. Mass. 1991) for the proposition that the court in that case disallowed charges by interns and summer associates, doesn't tell the whole story. In that case, the reason expressed by the court for the disallowance was that "[I]n the Court's pre-judicial experience, [summer associates or interns] do not provide enough value to the work performed by the firm to justify allowances" *Bank of New England*, at 455-456.  As set forth below, it is clear from a review of the actual time records, copies of which are attached hereto as <u>Schedule</u> C that the services provided by FTI's summer associates added were of recognizable value at a rate lower than most if not all of the paralegals providing billable services in these cases. In addition, a distinction may be made between the use of summer associates by law firms, who are generally not permitted to practice law, as contrasted with summer associates utilized by accounting and financial advisory firms. The summer associates utilized by FTI are undergraduates with accounting and finance backgrounds and were capable of providing the services for which compensation is sought.

11.     The services rendered by the FTI summer associates, to the extent not provided by them would necessarily have been provided by other FTI personnel with substantially higher rates than the $175 hourly rate billed for the summer associates' time. FTI believes that these

12

fees are reasonable as these associates provided value-added service to the Estate. The type of work performed is commensurate with a first year, entry-level consultant and includes creating schedules, updating presentations, quality checking analyses, and reconciling data. If this work was not performed by a summer associate, it would have been performed by an entry level consultant at a higher cost to the Estate. Work was primarily performed by two summer associates, Eric Phung and Grace Curry, who were by no means transitory in nature, and were embedded within the project team for extended periods of time. During this time in the summer, the overall workload of the project team was quite high as the Disclosure Statement was filed by the Debtor on July 3, 2013. Having the additional manpower of these associates at a lower rate saved the Estate compared to the alternative of using higher priced consultant level personnel.

12. I have been advised by FTI's attorneys that there are numerous cases where the courts have recognized the benefit of utilizing summer associates. In *In re Child World, Inc.*, 185 B.R. 14 (Bankr. S.D.N.Y. 1995), over the objection of the United States trustee in that case, the court allowed the fees associated with summer associates. In *In re Asarco* LLC, No. 05-12107, 2011 WL 2974957, at *27 (Bankr. S.D. Tex. 2011), reversed in part, on other grounds 447 B.R. 661 (S.D. Tex. 2012), the Court held that the work performed by debtor's counsel's summer associates was reasonable and beneficial to the estates and allowed the summer associate fees in their entirety. In *Asarco*, the court stated in relevant part:

> Reorganized ASARCO asserts that approximately $493,000.00 in fees requested by Baker Botts should be completely denied because the underlying work was performed by summer associates. The Court has considered this argument and finds it without merit. The Court will not reduce Baker Botts' requested fees on the grounds that certain fees reflect work performed by summer associates.

13. The court in *Asarco* reasoned that "summer associates can be valuable and worthy of billing at reasonable rates." Id. at 27 (quoting *In re Recycling Indus., Inc.*, 243 B.R. 396, 404

13

(Bankr. D. Colo. 2000) (allowing committee's counsel, Kramer Levin, to bill for summer associates, but reducing the rates at which they were billed)); accord *In re Davidson Metals, Inc.*, 152 B.R. 917, 921-22 (Bankr. N. D. Ohio 1993) (finding that $75 per hour was a reasonable rate for law firm's summer associates but reducing an applicant's fees by 30% based on other factors); In re Auto Parts Club, Inc., 224 B.R. 445, 449 (Bankr. S.D. Cal. 1998) (allowing a law firm to charge "summer interns" at $80 an hour instead of the $140 an hour requested by the firm); see also In re Bicoastal Corp., 122 B.R. 140, 146-148 (approving in reduced amount fees sought by committee's counsel, which included summer associate fees). The court also noted that "[s]ummer associate time is compensable outside of bankruptcy as well. As the Supreme Court has stated, 'the increasingly wide spread custom of separately billing for services of paralegals and law students who serve as clerks . . . must be taken into account.'" Id. (quoting *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (citing *Ramos v. Lamm,* 713 F.2d 546, 558 (10th Cir. 1983))). Furthermore, "'encouraging the use of low cost paralegals and law clerks rather than attorneys wherever possible . . . encourages cost-effective delivery of legal service.'" Id. (quoting Jenkins, 491 U.S. at 288 (citing *Cameo Convalescent Ctr., Inc. v. Senn,* 738 F.2d 836, 846 (7th Cir. 1984)).

Proposed Resolution:  For the reasons set forth above, FTI respectfully submits that with limited exception, all of the summer associate time spent on value added essential work should be allowed. FTI has reviewed the detailed time entries of all time charges for summer associates and has identified 18.6 hours which was related to training and non-essential work. FTI proposes to reduce the allowable charges by $3,255.00 related to this training, but otherwise requests that the remaining $46,725 for this category be allowed and paid.

**SUMMARY OF PROPOSED COMPROMISE**

(i) transitory timekeeper time - reduction in fee amounts sought by $728.50

(ii) <u>fee application preparation</u> - reduction in fee amount $79,345 (inclusive of prior $50,000 voluntary reduction as set forth in the FTI Application)

(iii) <u>travel and lodging expenses</u>-reduction of $40,218.06 in expense reimbursement.

(iv) <u>travel related fees</u> - reduction of fees of $53,601.25 (as proposed in FTI Application).

(vi) <u>charges for summer associates</u> - reduction in fees of $3,255.00

## CONCLUSION

14.     FTI believes that its requested compensation and expenses, as proposed above, are reasonable and appropriate.  The compromises proposed by FTI are in an effort to obviate the expense and delay that would necessarily be attendant to the dispute regarding the fees and expenses that are the subject of the UST Objection.

15.     As discussed above, FTI proposes aggregate reductions in fees of $136,929.75 from the total amount sought of $4,342,805 plus $1,891,182 in Rollover Amount, and aggregate reductions in expenses of $40,218.06 from the total expense reimbursement amount sought of $130,547.97 (with such reductions of fees and expenses hereinafter referred to as the "Reduction Amounts").  The Reduction Amounts as concerns fees (and any other amounts as concerns fees as the Court may determine should not be approved) should be applied against and deducted solely from the Rollover Amount applicable to the Application Period, with any reduction in expenses to be applied against and deducted from the expenses reimbursement amount sought.

16.     Accordingly, except for the Reduction Amounts, it is respectfully submitted that to the extent there are any outstanding UST Objections, they should be overruled for the reasons set forth herein or as may otherwise be addressed at the hearing on the FTI Applications.

17.     FTI intends to attempt in good faith to resolve any remaining UST Objections but otherwise reserves the right to assert the foregoing, or other, arguments and proposals, at the

hearing on the FTI Application and to assert such other and further arguments as may be appropriate and to join in any responses or arguments of others that may be applicable to FTI.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of December 2013.

/s/ *William J Nolan*
William J Nolan

44627/0071-10123775