IN THE UNITED STATES BANKRUPTCY COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

In re:
*RESIDENTIAL CAPITAL, LLC, et al.,*
                                    *Debtors*

and ALLY BANK

Case Number:12-12020 (MG) ;
Claim Number 1541
Claimant: Jeffrey M. Davis
Debtor: GMAC MORTGAGE LLC

Chapter 11
Jointly Administered

*CLAIMANT JEFFREY M. DAVIS' MEMORANDUM IN RESPONSE TO DEBTOR'S*
*FIFTY-FIRST OMNIBUS OBJECTION TO CLAIMS (BORROWER BOOKS AND*
*RECORDS CLAIMS – RES JUDICATA AND WRONG DEBTOR)*

*Jeffrey M. Davis v GMAC Mortgage, LLC, Ally Bank and MERS*

*Responses Due to:*
**Gary A. Colbert, Attorney at Law**
**29452 Pendleton Club Drive**
**Farmington Hills, MI 48236**
**(248) 615-3719**

## I.
## STATEMENT OF FACTS

The Claimant filed his State Court lawsuit alleging unlawful application of the Foreclosure

by advertisement statutes.  Debtors moved for Summary Disposition, apparently under MCR

216C(8),  failure to assert a claim rather than on the merits, as to those issues and prayers of

relief not affected by a Stay issued by this Court. A prior lawsuit between the same parties on the

same issues was filed and then appealed. It is currently stayed, but not resolved, by this

Bankruptcy proceeding. (See: Michigan Court of Appeals Case Number 307721, Lower Court

Number 2011-116494 CH) The Debtors' Brief in support of its Motion spent substantial time

referencing this earlier case which is still stayed. The Stay is in effect for the earlier case due to

1

Intentional Tort remedies sought, but due to different relief sought, was lifted in this case.

Basically, Debtors claimed that Claimant's claims asserted in his *Verified Complaint* cannot be

litigated as:

a. MCL 600.3204 and the MCL 600.3204, 3205, 3205a, b, and c amendments to the
   Foreclosure by Advertisement statute, MCL 600.3201, *et seq.* does not afford the Plaintiff
   a remedy. Defendants err for several reasons and the holding *of Mitan v Federal Home
   Loan Mortgage*, 703 F3d 949 (6th Cir., 2012); and a similarly reasoned matter, *Kim v. JP
   Morgan Chase, NA*, 493 Mich. 98; 825 NW2d 329 (2012) Indeed, these cases establish
   beyond a reasonable doubt that Claimant has a case to assert thereby making it highly
   probable that the merits will now be considered;

b. The Claimant could not invoke equity as he lacked "clean hands" because he did not
   resume payments on his mortgage after it was "reinstated;" but Debtors failed to inform
   him of that, Claimant was never notified that the mortgage was "reinstated", was never
   given instructions or any methodology by which he could make payments or dates or
   instructed as to amount to pay. Nor did Debtors give Claimant a reason why they believe
   that Claimant had the ability to make what it termed as the "standard" mortgage payment
   after being laid off his job as a Marketing expert for General Motors Corporation, then
   spending more than two years looking for a job, a situation that led him to default on his
   mortgage after draining his bank account and assets to pay his mortgage for over than a
   year after the lay-off; then ardently pursue a mortgage modification that Debtors never
   offered him though approved. Then Claimant filed a lawsuit for relief for multiple
   violations of the above statutes, a suit still unresolved and pending in the Michigan Court
   of Appeals (Case No. **3133846, awaiting scheduling for Oral Argument)** due to Debtors'
   Stay in Bankruptcy.
   Debtors abandoned their first foreclosure by rescinding a Sheriff's sale, then they filed a
   Motion for Summary Disposition which was granted on the remnant of the suit. The
   Claimant's appeal of that decision (referred to by the parties as "the first lawsuit") led to
   two actions by Debtors: (1) They filed a second foreclosure by advertisement involving
   the same property, issues and parties as the matter still pending in the Court of Appeals,
   and (2) With a redemption period running, filed for bankruptcy protection staying all
   proceedings in the already filed Appeal, thereby depriving the Claimant of his ability to
   pursue remedies and assert his defenses; and

c. Claimant is barred from litigating this case because he did not accept the terms of a TPP
   Debtors offered in breach of statutory provisions requiring it to supply information to
   make an informed decision concerning the so-called not-negotiated in good faith TPP.
   This TPP *raised* Claimant's payments, a result directly contrary to statutory intent, rather
   than ameliorate them and failed to follow the formula set forth in the above cited statutes.

Throughout these proceedings, Debtors ignored the Consent Agreement it entered into

with the Federal Reserve System on April 13, 2011  The issues the Consent Agreement covered

2

include Debtors' agreement to cease its improper servicing practices and its failure to engage in
appropriate mitigation efforts and foreclosures that were improper as Debtor failed to follow
applicable State law. Debtor's conduct was found intentional and Debtor agreed to cease and
desist its predatory practices. It did not. Its Failure to follow its own Consent Agreement renders
Debtor's behavior and methodology both in bad faith and irregular.

For example, Debtor's misconduct complained of in this and in the first lawsuit is
specifically barred by the Consent Agreement. [*Ibid.*], The Consent Agreement is a part of Public
Policy established by the Federal and State governments to alleviate the effects of the economic
crisis that threw millions of homeowners into default situations with their mortgages. Indeed,
special deference was to be given to people on unemployment benefits, as was Claimant. Yet,
Debtor ignored the Public Policy by not responding to attempts by its borrowers to modify their
mortgages, giving them misleading information and not following the requirements of applicable
State law, the precise situation and issues involved in both lawsuits forming the basis of the
Claimant's claims before this Court. In short, this lawsuit clearly shows that Debtors continue to
flaunt the law.

## THE FIRST LAWSUIT

While the Second lawsuit is the basis of Claimant's companion claims, it is necessary to
understand it to resolve his claims in this matter. Jeffrey Davis was employed by General Motors
as a contracted marketing expert for several years [Tr. First lawsuit (LS1) Hearing, Vol. 2 , pp. 5
-5; 8 -45]      About two years passed, during which time Mr. Davis was always timely with his
mortgage payments. The recent economic disaster hit and Mr. Davis was laid off. For over a
year, he struggled to continue the timely payments on his mortgage. He was on Unemployment

Compensation and Congress kept extending the benefit period due to the deepest economic downturn since the 1930s Depression. [*Ibid*]

In 2009, Michigan amended its foreclosure laws since the residential foreclosures were increasing at historic rates, harming homeowners, lenders, builders, realtors and neighborhoods. The amendments basically were MCL §600.3204 and all sections of §600.3205, with some references to MCL §600.3101 *et seq*. Some other sections were slightly amended to reference these amendments. The Amendments were meant to be effective for a short duration but adverse conditions were so pervasive that in 2011, they were extended, with a few, subtle changes. The intent of these Amendments was to create a methodology for mortgage modification to help homeowners preserve their homes and equity while affording the lender a chance to maintain its investment, albeit on varied terms that could extend its pay-off period, reduce the gain it may realize by using a lower interest rate than set forth in the original mortgage contract, hitching some payments to the end of the mortgage contract, or other techniques. Lenders showed reluctance in implementing their new statutory obligations as evidenced by both of Claimant's cases and other cases the writer has consulted on nationwide, as well as the Consent Agreement entered into by Debtor with the Federal Reserve.

Mr. Davis telephoned GMAC to find out what relief might be available to him. He was told by GMAC that he had to be 90 days in arrears before they could assist him. (This misrepresentation of fact is barred under the Consent Agreement) He stopped making his mortgage payment and 90 days later called again for relief. GMAC had started its internal procedures to commence foreclosure. From then on, GMAC's charade began as is well documented in the first Verified Complaint and its many Exhibits, exhibits submitted with Mr. Davis' Claim in this matter. That Verified Complaint is divided into two Counts. The first Count

4

recites the many efforts Mr. Davis undertook to try to achieve his rights under MCL §§ 600.3204

and 3205a through c, and how GMAC manipulated the facts, truth and law to deprive him of

relief, all documented.  For example, GMAC, in violation of the statute, refused to supply Mr.

Davis with information required by statute, as to whether he qualified for a modification and how

they arrived at their conclusion, *a situation repeated in the second lawsuit*. A statutory

requirement intended to assist the Claimant's understanding so he could evaluate an offer for

modification. *As in the Second lawsuit (Supporting these claims),* this information was

requested by Claimant in writing, though required of Debtors by statute. Instead they fabricated a

tale that he abandoned the home, and then, that he vacated it. This was refuted by Mr. Davis in

this Verified Complaint, by an appropriate affidavit copied to GMAC and by testimony. [See:

Ex. 4, LS1 Tr. Vol. 2 at pp. 8 -45; Ex. 3, first Verified Complaint, Par. 6, 12 through 29].

During a hearing concerning extension of an injunction then in effect against GMAC, Mr.

Davis not only denied abandoning or vacating his home and testified to various utility bills

showing continuous usage, but GMAC presented no evidence, none at all, to back-up its claim -

no investigator, no neighbor, no postal person, and not one scrap of paper was presented by it to

even try to support its claim. [See Ex 4, LS 1Tr. Vol. 2]

Mr. Davis qualified for a mortgage modification, a fact GMAC hid until shortly before

the Hearing on its Motion for Summary Disposition in the first case, a time when it was too late

for written response.  At the hearing for Summary Disposition, Mr. Davis' attorney apprised the

Court of the approved modification which was internally accepted by GMAC but never

presented to Claimant (It was found in one of the boxes full of documents gained through

discovery). His attorney apprised the trial Court that had this modification been offered to Mr.

Davis, he would have been accepted it. [See: Ex 5 LS 1, Tr Vol. 3, pp 3 when the failure to

timely offer this modification to Mr. Davis was a breach of statutory duty, one of many, asserted in the first case's Verified Complaint, all of which were either attested to or documented by exhibit and, to this minute, remains unrefuted. (Those Exhibits were attached to the filing of the Claim and are incorporated herein for reference)

Count Two of that Verified Complaint alleges that the breach of statutory duty by GMAC harmed Mr. Davis causing him injury. Count Two asserts a tort per se (a tort in essence) and broadly sets forth Mr. Davis injuries pursuant to Michigan's rules of notice pleading. In fact, before seeking counsel, Mr. Davis    wrote his siblings of his desire to kill himself due to what was happening to him. After obtaining counsel, Mr. Davis was referred to a psychiatrist.

The statutes herein cited entitle Mr. Davis to the equitable remedies available under a judicial foreclosure. MCL §600.3101,*et seq.* These remedies can include any equitable remedy such as reforming the offered mortgage modifications to conform to statutory requirements, using the GMAC created modification, that though alleged to be offered, never was, as the basis of the remedy. Instead, in blatant disregard of the applicable statutory mandate and public policy, GMAC proceeded with a foreclosure by advertisement, a foreclosure it voluntarily set aside. The first lawsuit and its resultant damages to Mr. Davis' case, like the Second lawsuit, underpinning this Claim, concerns the multiple breaches of applicable statutes by GMAC, the method that should be used to compel GMAC to conform to the law, and how to remedy injury it caused Mr. Davis by flagrant disregard of its legal duties, which if allowed to go unsanctioned, turns the law into a nullity.

Further issues supporting Mr. Davis' claims stemming from that first case flow not only from his emotional damages but include harm from perjured statements contained within

affidavits filed by GMAC with the Oakland County Clerk and its disregard of the Court's

injunction protecting his home directly contravening the injunction, or its averment that Claimant

had no attorney after GMAC had dealt with Judge Serra for months, and similar events; and the

relief to which Mr. Davis is entitled. [See; LS 1 Tr Volumes 2 and 3 generally] Since the trial

judge converted a TRO into a permanent injunction, she must have found Mr. Davis highly

credible.

**ARGUMENT**
**A.**
**THE DOCTRINE OF RES JUDICATA CANNOT APPLY AS THE STATE MATTERS
ARE STILL PENDING**

Each of the cases on which Claimant bases his claims are still pending in the Michigan Court of

Appeals. The underlying case for the claims herein asserted by Claimant in this Claim is

awaiting scheduling for Oral Argument as it is exempted from the Stay due to the type of relief

sought. Mr. Davis sought setting aside of the foreclosure. However during the long wait, the

Debtor foreclosed on his home and he lives in an apartment. The value of the house exceeds

$200,000 in most real estate markets. However, the Debtor claimed a mortgage value of

$195,450 TO REDEEM THE PROPERTY, This amount is consistent with the current appraised

value for property tax as of a year ago, when the house was lost. That obviously is the basis of

his claim. The amount of this claim should not be in dispute, his chance to reverse the trial Court

may be in dispute though it should no longer be. Indeed, Mr. Davis has an excellent chance at

getting the ruling of the trial Court reversed and the case remanded.

This is evident due to the holding of the Sixth Circuit in ***Mitan v Federal Home Loan***

***Mortgage***, Case No. 12-1169, (6th Cir., 2012) ***Mitan*** concerns Wells Fargo which foreclosed on

Frank's home by advertisement portion of Michigan's foreclosure statute. Frank is deceased and

Mitan is the estate's representative. The Federal Home Loan Mortgage Corporation purchased

7

the home at a sheriff's sale in February 2010, and the redemption period expired six months

later. Two weeks prior to expiration, Mr. Mitan sued, claiming that the foreclosure was contrary

to Michigan law. These facts are similar to the fact in the instant case, except Claimant

commenced his lawsuit more than two weeks prior to expiration of the redemption period in this

case, and about the same time in his first case The United States District Court dismissed. The

Sixth Circuit reversed, holding that the United States District Court did not establish an adequate

record to determine whether Wells Fargo complied with the law. If the foreclosure was void,

Mitan's rights were not terminated at the end of the redemption period. When a lender wishes to

foreclose by advertisement on a principal residence, it must provide the borrower with notice

designating a person whom the borrower may contact to negotiate a loan modification. Mich.

Comp. Laws 600.3205a(1). If the borrower requests negotiation, the lender's designated person

may request certain documents, the same documents Claimant requested in this case. If

negotiations fail, the designated person is required to apply statutory calculations to determine

whether the borrower qualifies for a loan modification. The lender and its designated person

failed to supply these documents in this case. It is clear that Claimant's aggregate circumstances

were not considered. If the borrower qualifies, the lender may not foreclose by advertisement

unless the designated person offers a good faith modification agreement that the borrower fails to

timely return. A good faith modification was not offered. The case is directly on point especially

as it is contested as to whether the TPP offered was properly calculated, especially since it

required a higher payment by Debtor than the amount for which he asked modification.  That

issue was not addressed by the Lower Court. (See *infra*. and the Transcript of the Summary

Disposition Hearing)

Generally, Michigan's Supreme Court requires strict compliance with **foreclosure** statutes. ***Detroit Trust Co. v Detroit City Service Co.***, 262 Mich. 14, 47; 247 NW 76 (1933).

In ***Kim v JP Morgan Chase, NA***, 493 Mich. 98; 825 NW2d 329 Mich. Sup Ct, Case 144690, 12/21/12, using similar reasoning as did the Sixth Circuit in ***Mitan v Federal Home Loan Mortgage***, 703 F3d 949 (6th Cir., 2012), the Michigan Supreme Court followed ***Mitan***'s line of reasoning. While ***Mitan*** held the foreclosure void; ***Kim*** held it voidable if Claimant showed prejudice. (The two cases complement each other but that is not relevant here) While his legal and economic rights and interests were prejudiced throughout by each unlawful act taken by GMAC such as terminating his ownership by unlawfully using a statutory procedure, no greater prejudice can be inflicted than being evicted from the home that should still be yours but for the wrongful, unlawful use of a procedure by a lien holder.

The foreclosure was not lawfully conducted pursuant to statute, as MCL 600.3204 and the 3205 series was incorporated into the foreclosure process in 2009 and reasserted in 2011. The requirements of the statute are mandatory and strict compliance is required. If Debtors' use of a statute, the provisions of which they are challenged on for non-compliance, especially by evidentiary exhibits attached to a Verified Complaint, Debtors must be able to demonstrate compliance with the procedures of the statute before it has the right to foreclose by advertisement. In this case, Debtors cannot meet this burden and was not required to make such a showing by the Trial Court.

Michigan law even has long held a mortgagor has the right to challenge the validity of a foreclosure by advertisement in summary proceedings to evict following the sheriff's sale. The Court of Appeals permitted a mortgagor to do so, stating:

9

"The Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in summary proceeding. *Reid v Rylander*, 270 Mich. 263, 267; 258 NW 630 (1935); *Gage v Sanborn*, 106 Mich. 269, 279; 64 NW 32 (1895). Otherwise, the typical mortgagor who faces an invalid foreclosure would be without remedy, being without the financial means to pursue the alternate course of filing an independent action to restrain or set aside the sale...The mortgagor may raise whatever- defenses are available in a summary eviction proceeding. MCL 600.5714, MSA 27A.5714; [*Federal Nat'l Mortgage Ass'n v Wingate*], 404 Mich 661, 676, fn 5; 273 NW2d 456 (1979). The district court has jurisdiction to hear and determine equitable claims and defenses involving the mortgagor's interest in the property. MCL 600.8302(3); MSA 27A.8302(3); DCR 754.7(b)(1)." *Manufacturers Hanover Mortgage Corp v Snell*, 142 Mich. App. 548, 553-554, 370 NW2d 401 (1985).

If one can challenge the Sheriff's Sale at a District Court summary eviction procedure, it is jejune not to allow one to challenge it at an earlier stage of the process. Since the case is not fully adjudicated, doctrine such as res judicata or collateral estoppel cannot apply.

Michigan Court Rule (MCR) 2.604(A) states that "when more than one claim for relief is presented in an action. ........or when multiple parties are involved, the court may direct entry of a final judgment on one or more but fewer than all the claims or parties, but only on an express determination that there is no just reason for delay." The state Circuit Court did not make such a determination and did not direct entry of a final judgment.

MCR 2.604(B) states "Absent an express determination an order or other form of decision adjudicating fewer than all the claims. . .does not terminate the action as to any of the claims. . . and the order or other form of decision is subject to revision before entry of judgment adjudicating all the claims. . . ."

The claims to which the order was directed may be reinstated before, during or after that action is over and an appeal through the state appellate structure is currently being utilized that is likely to remand the matter, after verdict in that court. MCR 7.101, 7.203  In any event, finality has not

attached to any part of the state-based action and thus concepts of collateral estoppel or *res judicata* do not apply.

In addition, the matter was not decided on its merits.  In, ***Storey v Meijer, Inc.***, 160 Mich. App 589;  408  NW2d  510(1987), the Court  set  forth  the  test  for  collateral  estoppel citing as authority ***Senior Accountants, Analysts & Appraiser v Detroit***, 399 Mich. 449; 249 NW2d 121(1976) in this matter, contrary to Debtor's assertions, the matter was not decided on its merits but merely on subsequently over turned precedent which was not even from the jurisdiction in which the case was being tried. The Debtor's position was that no lawsuit for relief could be brought after the Sheriff's Sale in Foreclosure and the holdings both in ***Mitan*** and in ***Kim, supra.,*** shows the fallacy of this position.

Given that the merits were ignored in both cases below, the authority relied on by the Debtor to the effect that not in all cases is a final judgment required for the application of res judicata cannot apply in this case.

"The applicable test for collateral estoppel in this case is accurately stated in Section 68 of the *Restatement*, p. 293:

"Where a question of fact essential to the judgment is actually litigated and determined by a valid and final  judgment,  the determination is conclusive  between  parties  in  a subsequent action on a different cause of action. . . ." See ***Howell v Vito's Trucking and Excavating Co.***, 386 Mich 37, 41-42; 191 NW2d 313(1971); ***Jones v Chambers***, 353 Mich 674, 680-681; 91 NW2d 889(1958).[399 Mich. 458]"

"Additionally, it is also required that the parties have a full opportunity to litigate those issues in the former action and that there be a mutuality of estoppel between the parties. ***Stolaruk Corp. v Dep't of State Highways & Transportation***, 114 Mich. App 357, 362;

11

319 NW2d 581(1982)" This case is not ripe for the concepts of collateral estoppel or res judicata.

B.
WRONG PARTY

The claim was asserted against GMAC Mortgage, LLC, the party that initiated the action that did injury to the Claimant, the party that saw such action through, the party that violated each and every rule of the consent agreement, statute or court order. It is also the party that is a party in this bankruptcy proceeding and caused a Stay to be issued that stopped Mr. Davis from seeking the relief due to him. It is the only party that has had to pledge a large sum to remedy the harm it caused. Failure to allow Claimant claims is the equivalent of denying relief or a process through which he may remedy the wrongs the Debtor has caused.

The Debtor seems to base this part of its objection on the fact that its various books of account do not show a liquidated sum due to the Claimant and thus paying his Claim is a detriment to other creditors.  First, it is difficult for one to believe that he Debtor cares anything about the position of any creditor. Historically this Debtor cares only for its own pocketbook and cares not to what level it may sink to protect that pocketbook.

Next the fact that the Debtor has not assigned a value to Mr. Davis' claims, while surprising, merely underscores the contempt it has for the law, claims against, people similarly situated to the Claimant's ethic. In every case the writer has litigated over 40 plus years, each party has assigned value to the claims of the other. Indeed, the Debtor knows the value of this claim as it asserts its own claim at the foreclosure sheriff's sale, the same amount Claimant has asserted in this matter.

THE Debtor's objections should fail.

Respectfully submitted December 4, 2013

Gary A. Colbert, Claimant's Attorney

## CERTIFICATE OF SERVICE

**Gary A. Colbert certifies that he served the following parties by their attorneys of record at**

**their addresses of record by ordinary mail postage prepaid, to wit:**

Morrison & Foerster, LLP
1290 Avenue of the Americas
New York, New York 10104
Attn:Gary S. Lee, Esq.,
Norman S. Rosenbaum, Esq.,
Jordan A. Wishnew, Esq.,
Attorneys for Debtors and Debtors In Possession

Kramer Levin Naftalis & Frankel, LLP
1117 Avenue of the Americas
New York, New York 10036
Attn: Kenneth H. Eckstein, Esq.,
Douglas H. Mannal, Esq.,
Attorneys for the Official Committee of Unsecured Creditors

Dated: December 4, 2013

Gary A. Colbert