| | |
|---|---|
| MORRISON & FOERSTER LLP | LOCKE LORD LLP |
| 1290 Avenue of the Americas | 44 Montgomery Street, Suite 4100 |
| New York, New York 10104 | San Francisco, California 94104 |
| Telephone:    (212) 468-8000 | Telephone:    (415) 318-8810 |
| Facsimile:    (212) 468-7900 | Facsimile:    (415) 676-5816 |
| Gary S. Lee | Regina J. McClendon |
| Norman S. Rosenbaum | |
| Jordan A. Wishnew | *Special Litigation Counsel to the* |
| Daniel J. Harris | *Debtors and Debtors in Possession* |

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------  )
In re:                                                                          )    Case No. 12-12020 (MG)
                                                                                )
RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al.</u>,                                 )    Chapter 11
                                                                                )
                                               Debtors.                         )    Jointly Administered
                                                                                )
-------------------------------------------------------------------------------  )


**DEBTORS' OBJECTION TO AMENDED PROOFS OF CLAIM**
**<u>FILED BY CERTAIN PLAINTIFFS IN CALIFORNIA LITIGATION</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

JURISDICTION, VENUE AND STATUTORY PREDICATE .................................................. 2

PRELIMINARY STATEMENT ........................................................................................ 2

BACKGROUND ........................................................................................................... 4

     A.     The California Litigation ................................................................. 5

     B.     The Original Claims and the Amended Claims .................................... 8

RELIEF REQUESTED ................................................................................................. 13

I.      THE AMENDED CLAIMS ARE IMPROPER  POST-BAR DATE
      AMENDMENTS TO THE  INITIAL CLAIMS AND SHOULD BE
      DISALLOWED ................................................................................... 13

     A.     Allowing the Amended Claims Would be Prejudicial to the Debtors ................ 15

II.     EVEN IF THE AMENDED CLAIMS ARE  NOT EXPUNGED AS UNTIMELY
      AMENDMENTS,  RESCAP IS NOT LIABLE FOR ANY DAMAGES  TO THE
      CALIFORNIA LITIGATION CLAIMANTS ............................................... 18

OBJECTION TO AMENDED CLAIMS ......................................................................... 18

I.      THE AMENDED CLAIMS FAIL TO  SATISFY BASIC PLEADING
      STANDARDS ...................................................................................... 19

     A.     The Second Amended Complaint Should Be Reviewed Under Basic
           Pleadings Standards ......................................................................... 19

     B.     The Second Amended Complaint Fails to Satisfy Rule 8(a) .............................. 20

     C.     The Second Amended Complaint's Fraud-Based Claims Fail to Satisfy
           Rule 9(b) ....................................................................................... 23

II.     THE SECOND AMENDED COMPLAINT  FAILS TO PLEAD A BASIS FOR
      DERIVATIVE  LIABILITY .................................................................... 25

     A.     The Amended Complaint Alleges No Basis for Agency or Conspiracy
           Liability ......................................................................................... 25

     B.     The Intracorporate Immunity Doctrine Bars the California Litigation
           Claimants' "Conspiracy"-Based Claims ............................................... 26

III.    THE PLAINTIFFS FAIL TO STATE ANY  FRAUD-BASED CLAIM ...................... 27

     A.     California Litigation Claimants Fail to Allege Facts Giving Rise to a Duty
           to Disclose ...................................................................................... 27

     B.     California Litigation Claimants Fail to Allege Scienter or Intent to
           Defraud ......................................................................................... 29

     C.     California Litigation Claimants Fail to Allege Reliance or Damages ................ 30

# TABLE OF CONTENTS
(continued)

**Page**

      D.      California Litigation Claimants' Fraud Claims are Preempted by the Truth in Lending Act and the Fair Credit Reporting Act ............................................... 31

IV.    CALIFORNIA LITIGATION CLAIMANTS' ORIGINATION-BASED CLAIMS (FIRST, SECOND, AND THIRD CAUSES OF ACTION) ARE TIME-BARRED ........................................................................................................ 32

V.     THE SECOND AMENDED COMPLAINT'S ALLEGATIONS OF DECEPTION IN LOAN MODIFICATIONS (FOURTH CAUSE OF ACTION) ARE INSUFFICIENT TO STATE A CLAIM ............................................................... 34

VI.    THE SECOND AMENDED COMPLAINT'S ALLEGATIONS OF WRONGFUL FORECLOSURE (FIFTH CAUSE OF ACTION) ARE INSUFFICIENT TO STATE A CLAIM ........................................................................ 39

      A.      California Litigation Claimants Fail to State a Claim For Violation of Civil Code § 2924 et seq ..................................................................................... 41

VII.   RESERVATION OF RIGHTS ............................................................................... 42

NOTICE.......................................................................................................................... 43

CONCLUSION............................................................................................................... 44

ny-1107957

## TABLE OF AUTHORITIES

Page(s)

CASES

Abdallah v. United Savs. Bank,
    43 Cal. App. 4th 1101 (1996) ........................................................................42

Agnew v. Nat'l Collegiate Athletic Ass'n,
    683 F.3d 328 (7th Cir.2012) ..........................................................................4

Agosta v. Astor,
    120 Cal. App. 4th 596 (2004), rehearing denied, review denied ............................30

Aristeia Capital, LLC, et al. v. Calpine Corp. (In re Calpine Corp.),
    Case No. 05-60200 (BRL), 2007 WL 4326738 (S.D.N.Y. Nov. 21, 2007) ............16

Ascroft v. Iqbal,
    556 U.S. 662 (2009)....................................................................................21

Aspiras v. Wells Fargo Bank, N.A.,
    219 Cal.App.4th 948 (2013) .........................................................................36

Bank of Am. Corp. v. Superior Court of Los Angeles Cnty.,
    198 Cal. App. 4th 862 (2011) .......................................................................30

Beach v. Ocwen Federal Bank,
    523 U.S. 410 (1998)....................................................................................31

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)..........................................................................21, 26, 37

Bonyadi v. CitiMortgage Bank,
    Case No. 12-5239-CAS FFMX, 2013 WL 877603 (C.D. Cal. Mar. 8, 2013)..........28, 29

Calvo v. HSBC Bank USA, N.A.,
    199 Cal. App. 4th 118 (2011) .......................................................................47

Cameron v. Church,
    253 F. Supp. 2d 611 (S.D.N.Y. 2003).............................................................27

Cockerell v. Title Ins. Co.,
    42 Cal. 2d 284 (1954) .................................................................................41

Debrunner v. Deutsche Bank Nat'l. Trust Co.,
    204 Cal. App. 4th 433 (2012) ...................................................................40, 42

ny-1107957

## TABLE OF CONTENTS
(continued)

**Page**

Decker v. GlenFed, Inc. (In re GlenFed, Inc. Secs. Lit.),
    42 F.3d 1541 (9th Cir. 1994) ...................................................................24

Dyachishin v. America's Wholesale Lenders,
    Case No. 09-02639, 2010 WL 1525703 (E.D. Cal. Apr. 15, 2010)........................................38

Eddy v. Sharp,
    199 Cal. App. 3d 858 (1988) .............................................................36

Elliott v. Mortg. Elec. Registration Sys. Inc.,
    Case No. 12-CV-4370 YGR, 2013 WL 1820904 (N.D. Cal. Apr. 30, 2013)..........................41

Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.),
    398 B.R. 736 (Bankr. S.D.N.Y. 2008).........................................................20

Forman v. Salazano (In re Norvergence, Inc.),
    405 B.R. 709 (Bankr. D.N.J. 2009) ..............................................................21, 24

Gens v. Wachovia Mortg. Corp.,
    2011 WL 9121 (N.D. Cal. Jan. 3, 2011) ..............................................31

Gomes v. Countrywide Home Loans, Inc.,
    192 Cal. App. 4th 1149 (2011), cert. denied, 132 S. Ct. 419 (2011) .......................................39

Gowan v. Amaranth (In re Dreier LLP),
    452 B.R. 451 (Bankr. S.D.N.Y. 2011) .....................................................40

Gowan v. Patriot Group, LLC (In re Dreier LLP),
    452 B.R. 391 (Bankr. S.D.N.Y. 2011) .....................................................24

Grill v. BAC Home Loans Servicing LP,
    Case No. 10-03057, 2011 WL 127891 (E.D. Cal. Jan. 14, 2011) ...........................................38

Harris v. Rudin, Richman & Appel,
    74 Cal. App. 4th 299 (1999) ...................................................37

Hensley v. Bank of New York Mellon,
    Case No. 1:10-CV-1316 AWI SMS, 2011 WL 2118810 (E.D. Cal. May 27, 2011) .............41

Herrera v. Fed. Nat'l Mortg. Ass'n,
    141 Cal. Rptr. 3d 326 (2012) ...........................................................41, 42

Hexcel Corp. v. Ineos Polymers, Inc.,
    681 F.3d 1055 (9th Cir. 2012) ....................................................33

iv

## TABLE OF CONTENTS

(continued)

**Page**

Hills Transp. Co. v. Southwest Forest Indus., Inc.,
266 Cal. App. 2d 702 (1968) ................................................38

In re Asia Global Crossing, Ltd.,
324 B.R. 503 (Bankr. S.D.N.Y. 2005) ................................14

In re Barquet Grp. Inc.,
477 B.R. 454 (Bankr. S.D.N.Y. 2012), aff'd, 477 B.R. (S.D.N.Y. 2012) ..............14

In re DJK Residential LLC,
416 B.R. 100 (Bankr. S.D.N.Y. 2009) ................................19

In re Drexel Burnham Lambert Grp., Inc.,
129 B.R. 22 (Bankr. S.D.N.Y. 1991) ................................17

In re Enron Creditors Recovery Corp.,
370 B.R. 90 (Bankr. S.D.N.Y. 2007) ......................13, 14, 15, 18

In re Hess,
404 B.R. 747 (Bankr. S.D.N.Y. 2009) ................................19

In re Jensen,
Case No. 09-14830 (MG), 2010 WL 424690 (Bankr. S.D.N.Y. Feb. 3, 2010) ......................43

In re Keene Corp.,
188 B.R. 903 (Bankr. S.D.N.Y. 1995) ................................14

In re Lehman Brothers Holdings, Inc,
433 B.R. 113 (Bankr. S.D.N.Y. 2010) ................................17

In re Lois/USA, Inc.,
264 B.R. 69 (Bankr. S.D.N.Y. 2001) ................................24

In re McLean Indus., Inc.,
121 B.R. 704 (Bankr. S.D.N.Y. 1990) ................................14

In re Nortel Networks, Inc.,
469 B.R. 478 (Bankr. D. Del. 2012) ................................20, 25

In re North Bay Gen. Hosp., Inc.,
404 B.R. 443 (Bankr. S.D. Tex. 2009) ................................43

In re Rockefeller Ctr. Props.,
272 B.R. 529 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
Props. (In re Rockefeller Ctr. Props.), 226 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
App'x 40 (2d Cir. 2002)................................20

v

## TABLE OF CONTENTS
(continued)

**Page**

In re Spiegel, Inc.,
    337 B.R. 816 (Bankr. S.D.N.Y. 2006) ....................................................................17

In re Uvino,
    Case No. 09-15225 (BRL), 2012 WL 892501 (Bankr. S.D.N.Y. Mar. 14, 2012) ..................18

In re W.R. Grace & Co.,
    346 B.R. 672 (Bankr. D. Del. 2006) ........................................................................19

In re W.R. Grace & Co.,
    366 B.R. 302 (Bankr. D. Del. 2007) ........................................................................43

Integrated Res., Inc. v. Ameritrust Co. N.A. (In re Integrated Res., Inc.),
    157 B.R. 66 (S.D.N.Y. 1993)...................................................................14, 15

Jenkins v. JPMorgan Chase Bank, N.A.,
    216 Cal. App. 4th 497 (2013) .............................................................40, 41

Jones v. Pollard-Buckinham,
    348 F.3d 1072 (8th Cir. 2003) ........................................................................21

Kajitani v. Downey Savs. & Loan Ass'n, F.A.,
    647 F. Supp. 2d 1208 (D. Haw. 2008) ...............................................................31

Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.,
    285 F.3d 848 (9th Cir. 2002) ........................................................................32

Karlsen v. Am. Savs. & Loan Ass'n,
    15 Cal. App. 3d 112 (1971) ........................................................................42

Kearns v. Ford Motor Co.,
    567 F.3d 1120 (9th Cir. 2009) ...................................................................24, 25

Kimball v. Flagstar Bank F.S.B.,
    881 F. Supp. 2d 1209 (S.D. Cal. 2012)...............................................................27

Knapp v. Doherty,
    123 Cal. App. 4th 76 (2004) ........................................................................41

Kovich v. Paseo Del Mar Homeowners' Ass'n,
    41 Cal. App. 4th 863 (1996) ........................................................................27

Krouse v. BAC Home Loans Servicing, LP,
    Case No. 10-03309, 2011 WL 6100406 (E.D. Cal. Dec. 6, 2011) .........................................38

## TABLE OF CONTENTS

(continued)

**Page**

Levine v. Blue Shield of Cal.,
    189 Cal. App. 4th 1117 (2010) .................................................................27

Linear Tech. Corp. v. Applied Materials, Inc.,
    152 Cal. App. 4th 115 (2007) ...................................................................30

Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),
    419 F.3d 115 (2d Cir. 2005)....................................................................14

Mirkin v. Wasserman,
    5 Cal. 4th 1082 (1993) .............................................................................31

Montgomery v. PNC Bank, N.A.,
    Case No. 12-2453, 2012 WL 3670650 (N.D. Cal. Aug. 24, 2012) ..........32

Morgera v. Countrywide Home Loans, Inc.,
    Case No. 09-01476, 2010 WL 160348 (E.D. Cal. Jan. 11, 2010) ...........39

Mueller v. Bank of America, N.A.,
    Case No. 12CV0074 WQH-BLM, 2012 WL 3134243 (S.D. Cal. Aug. 1, 2012) ..................35

N.L.R.B. v. Semco Printing Ctr., Inc.,
    721 F.2d 886 (2d Cir. 1983)......................................................................26

Nastrom v. JPMorgan Chase Bank, N.A.,
    Case No. 1:11CV01998 DLB, 2012 WL 5522795 (E.D. Cal. Nov. 14, 2012)........................35

Nymark v. Heart Fed. Savs. & Loan Ass'n.,
    231 Cal. App. 3d 1089 ........................................................................29, 36

Oaks Mgmt. Corp. v. Super. Ct.,
    145 Cal. App. 4th 453 (2006) ...................................................................28

Parsons v. Tickner,
    31 Cal. App. 4th 1513 (1995) ...................................................................33

Perlas v. GMAC Mortg., LLC,
    187 Cal. App. 4th 429 (2010) ...................................................................28

Poulsen v. Sterling Savs. Bank,
    Case No. 12-02306 (EDL), 2012 WL 3638605 (N.D. Cal. Aug. 22, 2012) ............28

Regis Techs., Inc. v. Oien (In re Oien),
    404 B.R. 311 (Bankr. N.D. Ill. 2009) .......................................................21

vii

## TABLE OF CONTENTS
(continued)

**Page**

Riggins v. Bank of America, N.A.,
    Case No. 12-0033 (DOC), 2013 WL 319285 (C.D. Cal. Jan. 24, 2013) .................................29

Roussel v. Wells Fargo Bank,
    Case No. C12-04057 CRB, 2012 WL 5301909 (N.D. Cal. Oct. 25, 2012) ...........................35

Sack v. V.T. Low,
    478 F.2d 360 (2d Cir.1973)......................................................................................................24

Santos v. Countrywide Home Loans,
    Case No. Civ. 2:09-02642 WBS DAD, 2009 WL 3756337 (E.D. Cal. Nov. 6, 2009)...........35

Settle v. World Savs. Bank, F.S.B.,
    Case No. 11-00800-MMM, 2012 WL 1026103 (C.D. Cal. Jan. 11, 2012) ...........................36

Shepherd v. American Home Mortg. Servs., Inc.,
    Case No. Civ. 2:09-1916 WBS GGH, 2009 WL 4505925 (E.D. Cal. Nov. 20, 2009)...........36

Shroyer v. New Cingular Wireless Servs., Inc.,
    622 F.3d 1035 (9th Cir. 2010) ...............................................................................................30

Shuster v. BAC Home Loans Servicing, LP,
    211 Cal. App. 4th 505 (2012) .................................................................................................40

Sipe v. Countrywide Bank,
    Case No. 09-798, 2010 WL 2773253 (E.D. Cal. July 13, 2010) .............................................39

Sun'N Sand, Inc. v. United Cal. Bank,
    21 Cal. 3d 671 (1978) .............................................................................................................33

Swartz v. KPMG, LLP,
    476 F.3d 756 (9th Cir. 2007) ..................................................................................................24

Vanston Bondholders Protective Comm. v. Green,
    329 U.S. 156 (1946).................................................................................................................19

Vess v. Ciba-Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................................26

**STATUTES**

11 U.S.C.
    § 502(a) ...................................................................................................................................19
    § 502(b)(1) ..............................................................................................................................19

viii

**TABLE OF CONTENTS**

(continued)

**Page**

12 U.S.C.
   § 1640................................................................................................................................6, 7

15 U.S.C.
   § 15.............................................................................................................................33
   § 1610.........................................................................................................................31
   § 1640(e)....................................................................................................................31

Cal. Bus. & Prof. Code
   § 17208.......................................................................................................................32

Cal. Civ. Code
   § 2924(a)(1)................................................................................................................41
   § 2936.........................................................................................................................41

Cal. Code Civ. Proc.
   § 335.1........................................................................................................................33
   § 338(d).......................................................................................................................33
   § 430.10(g)..................................................................................................................38

Fed. R. Bankr. P.
   Rule 9(b) .....................................................................................................................23
   Rule 3001(f) ................................................................................................................19
   Rule 9014(c).................................................................................................................25

Federal Rules of Civil Procedure
   8(a)(2) .........................................................................................................................21

**OTHER AUTHORITIES**

4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. rev. 2012) ....................................................19

4 COLLIER ON BANKRUPTCY ¶ 3001.06 (16th ed. rev. 2012) ......................................................43

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

Residential Capital, LLC and its affiliated debtors in the above-captioned chapter 11

cases (the "Chapter 11 Cases"),[1] as debtors and debtors in possession (collectively, the

"Debtors")[2] hereby file this supplemental objection (the "Second Objection"), seeking to

disallow and expunge certain amended proofs of claim listed on Schedule A hereto (individually,

an "Amended Claim" and together with the Original Claims (defined herein), the "California

Litigation Claims") filed solely against Residential Capital, LLC by fifty-eight individuals (each

a "California Litigation Claimant," and collectively the "California Litigation Claimants")[3]

pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on the

grounds that they fail to state a claim against the Debtors.[4]

Moreover, to the extent that the California Litigation Claimants assert that they are

continuing to press any of the Original Claims, the Debtors renew their objection to the Original

---

[1]    Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 Cases or the relief requested in this Objection may refer to http://www.kccllc.net/rescap for additional information.

[2]    The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6].

[3]    The California Litigation Claimants include: Deborah Albritton, Christine Petersen, Gloria Portillo, Brenda Mella, Ignacio Rodriguez, Rosa Rodriguez, Khalil Subat, Manija Subat, Maria Barajas, Brian Foote, Salvador Barajas, Julio Gonzalez, Michael Man, Phyllis McCrea, Yesenia Cruz, Julio Del Cid, Veronica Grey ,David Cruz, Manuela Badilla, Rick Albritton, Marco Badilla, Victor Pazos, Alex Ibarra, Christina Palbicke, Martin Kassowitz, Michael Moultrie, Joselito Mella, Mesbel Mohamoud, Cecilia Chaube, Irma Laredo, Joellyn Johnson, Shirley Kaplan, Magdalena Avila, Michael Brown, Gary Johnson, Gregory Buck, Marcia Willoughby, Henry Completo, Judy Lim, Terrell Sullivan, Genevie Cabang, Maria Elena Del Cid, Mary Serrano, Willie Gilmore, Lisa Simonyi, Carolyn Hairston, Robin Gaston, Claudinette Brown, Regina Faison, Rick Ewald, Florastene Holden, Losi Elisa Jordan, Jun O. Santos, Rodelina Santos, Sarah Sebagh, Evelyn Ross, Olan Ross, Gricelda Ruanos.

[4]    The Debtors reserve all of their rights to object on any other basis to any California Litigation Claim not set forth in this Second Objection, and the Debtors reserve all of their rights to amend this Second Objection should any further bases come to light.

1

Claims (as filed on July 10, 2013, *see* Docket No. 4200).[5]  The Debtors seek entry of an order,

substantially in the form attached hereto as <u>Exhibit 1</u> (the "<u>Proposed Order</u>"), granting the

requested relief.[6]  In support of the Second Objection, the Debtors rely upon and incorporate by

reference the Declaration of Deanna Horst (the "<u>Horst Decl.</u>"), attached hereto as <u>Exhibit 2</u>.  In

further support of the Second Objection, the Debtors respectfully represent as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

      1.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.

This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court

under 28 U.S.C. §§ 1408 and 1409.

      2.      The statutory predicate for the relief requested herein is Bankruptcy Code

section 502(b) and Bankruptcy Rule 3007(a).

## PRELIMINARY STATEMENT[7]

      3.      Faced with the prospect of having 549 claims (the "<u>Original Claims</u>")

expunged by the Court, 58 individuals, through purported counsel Brookstone Law, P.C.

("<u>Purported Counsel</u>"), improperly filed amended claims against *only* Residential Capital, LLC

to further delay a full and fair assessment of the baseless allegations lodged against the Debtors

rather than respond to the merits of the Debtors' Objection (defined herein).  By filing the

Amended Claims and designating them as mere amendments approximately *nine months* after

---

[5]    As set forth below, the California Litigation Claimants had a full and fair opportunity to respond to the
Objection and elected to do so by (a) amending the claims only against ResCap, and (b) filing a cursory
Response without addressing the merits of the Objection.  (<u>See</u> Docket No. 4758.)  The Debtors submit that the
California Litigation Claimants should not have a second opportunity to supplement their Response to the
Objection.

[6]    A combined motion addressing all of the California Litigation Claims is appropriate since they all say exactly
the same thing and suffer from the same fundamental deficiencies.

[7]    Capitalized terms used in this Preliminary Statement shall have the meanings ascribed to such terms below.

the passage of the General Bar Date, *sixteen months* after commencement of these Chapter 11

Cases (just as the Debtors were beginning to solicit creditor support for a joint Chapter 11 plan),

and only after the Objection to the Original Claims was filed, the Amended Claims severely

prejudice the Debtors' estate and all of the Debtors' creditors that have engaged in a legitimate

claims resolution process. *See Memorandum Opinion and Order Sustaining Objection to Proof*

*of Claim No. 242 and Amended Claim No. 17 Filed by Paul N. Papas II*, at 8-9 [Docket No.

5964] (the "Papas Opinion") ("[E]ven if the Amended Claim did relate back to the Claim,

allowing the amendment at this time would prejudice the Debtors. The Debtors' Disclosure

statement has already been approved and the contested confirmation hearing is nearly

complete."). Therefore, the Court should disallow and expunge the Amended Claims in their

entirety as they are improper post-bar date amendments to the Original Claims. Moreover,

should the Court disallow and expunge the Amended Claims, it should also disallow and

expunge the Original Claims for the reasons set forth in the Objection.

        4.      Should the Court not expunge the Amended Claims as having been

untimely amended, then it should disallow and expunge the California Litigation Claims,

comprised of both the Original Claims and the Amended Claims, in their entirety because all of

the claims are predicated on a factually deficient complaint in which the allegations are devoid of

specificity and fail to state a single valid colorable claim against any of the Debtors. After two

complaints filed in the underlying action, two motions to dismiss, and entry of an order

dismissing the initial complaint that serves as the basis for the Original Claims (the "Initial

Complaint"), the Amended Claims are no different from the previously dismissed claims alleged

against the non-debtor defendants, and therefore, should be summarily disposed of in a similar

manner.  Simply because the California Litigation Claimants seek to litigate their claims in the

Bankruptcy Court does not ease their evidentiary and pleading burdens.

5.      For a proof of claim to be allowed, the allegations in such claim must meet

the pleadings requirements of the Federal Rules of Civil Procedure (the "Rules").  As described

below, the Second Amended Complaint fails to satisfy either Rules 8 or 9(b) because it lacks the

necessary specificity to inform the Debtors of their alleged improper conduct.  Moreover, the

Second Amended Complaint completely fails to state a claim against the Debtors under

applicable law.  Accordingly, the California Litigation Claims should be disallowed in their

entirety.

## BACKGROUND

6.      On May 14, 2012, each of the Debtors filed a voluntary petition in this

Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors are managing and

operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a)

and 1108.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule

1015(b).

7.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing

Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11

Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and

otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain official

claims registers for each of the Debtors.

8.      On August 29, 2012, this Court entered an order approving the Debtors'

motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No.

1309] (the "<u>Bar Date Order</u>").[8]  Section 5(f) of the Bar Date Order specifically provides, "Proofs

of claim must specify by name and case number the Debtor against which the claim is filed.  *If a*

*claimant asserts a claim against more than one Debtor or has claims against different Debtors, a*

*separate Proof of Claim Form must be filed with respect to each Debtor*."  Bar Date Order § 5(f)

(emphasis added).

        9.      On July 3, 2013, the Debtors filed the *Disclosure Statement for the Joint*

*Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of*

*Unsecured Creditors* [Docket No. 4157] (the "<u>Disclosure Statement</u>").  On August 23, 2013, the

Court entered an order approving, *inter alia*, the Disclosure Statement, as amended.  On

December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11*

*Plan Proposed by Residential Capital, LLC et. al and the Official Committee of Unsecured*

*Creditors* [Docket No. 6065] (the "<u>Confirmation Order</u>") confirming the *Second Amended Joint*

*Chapter 11 Plan Proposed by Residential Capital, LLC et. al and the Official Committee of*

*Unsecured Creditors* (the "<u>Plan</u>")[9] annexed thereto as <u>Appendix 1</u>.[10]

    A.    **The California Litigation**

        10.      Sixty-one plaintiffs (the "<u>Plaintiffs</u>") filed an initial complaint ("<u>Initial</u>

<u>Complaint</u>") and the Amended Complaint (as defined below) against multiple defendants,

---

[8]    The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern
Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "<u>General Bar
Date</u>") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m.
(Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "<u>Governmental Bar
Date</u>").  (Bar Date Order ¶¶ 2, 3).  On November 7, 2012, the Court entered an order extending the General Bar
Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].  The Governmental Bar
Date was **not** extended.  To date, approximately 7,310 proofs of claim have been filed in these Chapter 11
Cases as reflected on the Debtors' claims registers.

[9]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[10]    As set forth in the Plan, the Borrower Claims Trust shall assume liability for all Borrower Claims on and after
the Effective Date, and the Borrower Claims Trust shall be administered by the Borrower Claims Trustee.  <u>See
generally</u> Plan, Art. IV.F.

ny-1107957

including various non-debtor and Debtor-entities, in the United States District Court, Central

District of California – Western Division (the "District Court"), Case No.: 12-5016-JAK (AGRx)

(the "California Litigation").

11.    On May 9, 2012, the Plaintiffs filed the Initial Complaint asserting a

number of causes of action against numerous defendants, including the "ResCap defendants":

(1) Residential Capital, LLC ("ResCap"), (2) GMAC-RFC Holding Company, LLC,

(3) Residential Funding Corporation, (4) Homecomings Financial, LLC, (5) Executive Trustee

Services, LLC, and (6) Home Connects Lending Services, LLC (collectively, the "ResCap

Defendants"), arising from loans alleged to have been obtained by each Plaintiff during the years

2003-2008.  The Initial Complaint was also filed against GMAC Mortgage Group, Inc. n/k/a

GMAC Mortgage Group LLC, a non-debtor entity.

12.    The Initial Complaint asserted eight causes of action against the

defendants, including (i) Fraudulent Concealment (First); (ii) Intentional Misrepresentation

(Second); (iii) Negligent Misrepresentation (Third); (iv) Cal. Bus. & Prof. Code § 17200

(Fourth); (v) Wrongful Foreclosure (Fifth); (vi) Truth in Lending Act, 15 U.S.C. § 1601 et seq.

(Sixth); (vii) Violation of Appraisal Independence in violation of Dodd-Frank, 12 U.S.C. § 1640

et seq. (Seventh); and (viii) Violation of Appraiser Independence in violation of 12 C.F.R. §

225.65 and 12 C.F.R. § 323.5 (Eighth).

13.    On June 12, 2012, the ResCap Defendants, through their counsel, filed the

"Notice of Bankruptcy and Effect of Automatic Stay" (the "Notice of Stay").  The Notice of Stay

provides that "[a]ny action taken by the [Plaintiffs] against the Debtors without obtaining relief

from the automatic stay from the Bankruptcy Court may be void *ab initio* and may result in

finding of contempt against [Plaintiffs] by the Bankruptcy Court."

6

14.      On June 28, 2012, Ally Bank (on its own behalf and on behalf of the entity

incorrectly named as "GMAC, A National Banking Association"), Ally Financial Inc., and

GMAC Mortgage Group LLC (the "Non-Debtor Defendants") filed a Motion to Dismiss (the

"Motion to Dismiss"), which sought to dismiss the Initial Complaint on the grounds that, among

other things, it failed to satisfy elementary federal pleading standards and did not present

concrete facts that entitled the Plaintiffs to relief.  The Motion to Dismiss also asserted that the

Initial Complaint's fraud-based allegations failed to satisfy Rule 9(b) 's heightened standard of

particularity and, alternatively, failed to state a claim for any of the causes of action contained in

the Initial Complaint.

15.      On September 24, 2012, the Honorable John A. Kronstadt, United States

District Judge, issued an order granting the Motion to Dismiss (the "Order"), without prejudice

as to the following causes of action: (i) Fraudulent Concealment (First); (ii) Intentional

Misrepresentation (Second); (iii) Negligent Misrepresentation (Third); (iv) Unfair Competition

pursuant to Cal. Bus. & Prof. Code § 17200 (Fourth); (v) Wrongful Foreclosure (Fifth); and

(vi) Truth in Lending Act, 15 U.S.C. § 1601 et seq. (Sixth).  The District Court also granted the

Motion to Dismiss, with prejudice, as to claims arising from Violation of Appraisal

Independence in violation of Dodd-Frank, 12 U.S.C. § 1640 et seq. and Violation of Appraiser

Independence in violation of 12 C.F.R. § 225.65 and 12 C.F.R. § 323.5.  A copy of the Order is

attached hereto as Exhibit 3.

16.      On October 31, 2012, the Plaintiffs filed the "First Amended Complaint"

asserting six causes of action: (i) Fraudulent Concealment [Violation of Civ. Code §§ 1572, 1709

and 1710]; (ii) Intentional Misrepresentation [Violation of Civ. Code §§ 1572, 1709 and 1710];

(iii) Negligent Misrepresentation [Violation of Civ. Code §§ 1572, 1709 and 1710]; (iv) Unfair

7

Competition [Violation of Bus. & Prof. Code § 17200 et seq.]; (v) Wrongful Foreclosure

[Violation of Civ. Code § 2924]; and (vi) Improper Influence Over Appraiser [Violation of Cal.

Civ. Code § 1090.5] (the "Amended Complaint").  The Amended Complaint attaches a

voluminous "Appendix A" that purports to cure the deficiencies in the Initial Complaint, which

were noted in the Order.  The Amended Complaint also names the ResCap Defendants as among

the defendants.[11]

17.    On November 19, 2012, the Non-Debtor Defendants filed a "Notice of

Motion and Motion to Dismiss First Amended Complaint" seeking dismissal of the Amended

Complaint in its entirety, largely on the grounds they had employed in their successful motion to

dismiss the Complaint (the "Second Motion to Dismiss").

18.    On January 31, 2013, the Plaintiffs filed the "Notice of Dismissal Pursuant

to Federal Rules of Civil Procedure 41(a) or (c)" (the "Notice of Dismissal") dismissing the

Amended Complaint in its entirety as against both the Debtor Defendants and the Non-Debtor

Defendants.  The Notice of Dismissal is attached hereto as Exhibit 4.

**B.    The Original Claims and the Amended Claims**

19.    On November 9, 2012, the 61 Plaintiffs filed nearly identical proofs of

claims against certain Debtor entities, including, (1) GMAC Mortgage, LLC, (2) GMAC-RFC

Holding, (3) Home Connects Lending Services, LLC, (4) Homecomings Financial, LLC,

(5) Executive Trustee Services, LLC, (6) Residential Funding Company, LLC, (7) Residential

Capital, LLC, (8) Residential Funding Real Estate Holdings, LLC, and (9) Residential Mortgage

---

[11]    The filing of the Amended Complaint clearly was a violation of the automatic stay in these Chapter 11 Cases.
However, as noted below, having suffered reverses, the Plaintiffs subsequently dismissed the Amended
Complaint without prejudice.

8

Real Estate Holdings, LLC.[12]  Each Plaintiff asserted an unsecured claim in the amount of $1,300,000 for "Contingent Fraud Claim in litigation."  At the time the Original Claims were filed, the ResCap Defendants had not responded to the Amended Complaint.  The Original Claims both refer to the Amended Complaint and identify the same six causes of action asserted therein.[13]

20.    As justification for the Original Claims, the Plaintiffs generally asserted that the ResCap Defendants "set out upon a massive and centrally-directed fraud by which Defendants purportedly (1) placed [the applicable Plaintiffs] into loans which Defendants *knew* [the Plaintiff] could not afford and would default upon to a mathematical certainty, (2) abandoned industry-standard underwriting guidelines, (3) concealed/misrepresented the terms of their loans to [Plaintiffs] to induce unwitting consent, and (4) intentionally inflated the appraisal values of homes throughout California in a market-fixing scheme–*knowing that their scheme would cause the precipitous decline in values of all homes throughout California*, including those of [the California Litigation Claimants]."  (Ex. 4, at 2).  On these grounds, each of the Plaintiffs seeks monetary damages of approximately $1.3 million against nine of the Debtors.

21.    The Debtors filed their objection to the Original Claims on July 10, 2013 asserting, among other things, that the Original Claims fail to state a single, colorable claim against any of the Debtors under applicable law [Docket No. 4200] (the "Objection").  The response deadline to the Objection was set for August 9, 2013 (the "Response Deadline").

---

[12]    A sample of one of the Original Claims is attached hereto as Exhibit 5.

[13]    A list of the Original Claims is attached hereto as Exhibit 6.

ny-1107957

22.     Rather than timely respond to the Objection, on the Response Deadline, the California Litigation Claimants, through Purported Counsel, filed the Amended Claims against a single Debtor entity, ResCap.[14]  In support of the Amended Claims, the California Litigation Claimants attached a 250-page unfiled "Amended Complaint in Support of Amended Proof of Claim" (the "Second Amended Complaint").   The Second Amended Complaint purports to include numerous additional "causes of action," each containing multiple "counts," against several Debtor entities.   The purported "counts," across five "causes of action," can be grouped as follows: (1) fraudulent concealment, (2) intentional misrepresentation, (3) negligent misrepresentation, (4) negligence, (5) unfair, unlawful, and fraudulent business practices, (6) price fixing in violation of the Sherman Act, (7) improper collection of debt after electing to foreclose, (8) rescission of contract and/or restitution based on grounds of fraud and/or unconscionability, (9)  breach of contract, (10) breach of the Crier Rule under California law, (11) unfair debt collection practices, and (12) wrongful foreclosure.  See Second Amended Complaint at i-ii.

23.     Although the Second Amended Complaint asserts claims based on new legal theories, the alleged facts on which these claims are based are identical to those on which the Original Claims are based.  Indeed, Appendix A to the Second Amended Complaint, which sets forth the specific allegations as to each of the California Litigation Claimants' loans, is identical to Appendix A to the Amended Complaint filed in the California Litigation on October 31, 2012 and attached to the Original Claims.[15]

---

[14]    The Amended Claims are comprised of Claim Nos. 6893-6950.

[15]    A sample of one of the Amended Claims, including the Second Amended Complaint, is attached hereto as Exhibit 7.

10

24.     On August 20, 2013, eleven days after the Response Deadline, Purported

Counsel then filed the *Hairston, et al. Creditors' Opposition to Debtors' Objection to Proofs of*

*Claim Filed by Certain Plaintiffs in California Litigation* [Docket No. 4758] (the "Response").[16]

In summary, the Response argued that the filing of the Amended Claims mooted the Objection to

the Original Claims.

25.     On August 28, 2013, the Court held a hearing (the "Hearing") on the

Objection and directed that the parties agree to a scheduling order with respect to briefing of

whether the Amended Claims were proper amendments and the underlying merits of the

Amended Claims.  On the record at the Hearing, Purported Counsel represented to the Court that

the Second Amended Complaint is no different than the Amended Complaint and was

"reorganized for the Court and for opposing counsel for clarity."  H'rg Tr. at 26:20-23, Aug. 28,

2013 (the "August 28 Transcript") ("[T]he nature of the complaint is exactly the same.  It was

just reorganized.  Claimants – it's the same operative, we feel facts. . . . There's nothing

different.  The conditions are the same, and the nature of the claims are the same.  They've just

been reorganized for the Court and for opposing counsel for clarity.").  In addition, Purported

Counsel represented to the Court that he would "stand" on the Amended Claims and would not

be further amending his claims against the Debtors.  See August 28 Transcript at 26:20-23

("Court: [W]hat I want to be clear is, I'm asking you, are you prepared to stand on the claims as

amended?  Mr. Torchia:  Yes.").  Relevant portions of the August 28 Transcript are attached

hereto as Exhibit 8.

---

[16]     Incredibly, on November 14, 2013, just 5 weeks ago, Purported Counsel re-styled the Second Amended
Complaint as a "Complaint" and filed it against various Ally and non-Debtor entities in the Superior Court in
the State of California, County of Los Angeles.  *See Hairston, et al. v. Ally Bank, N.A. f/k/a GMAC Bank, et al.*,
Case No. BC527712.

11

26.     On November 27, 2013, the Court entered the *Scheduling Order For Objection to California Litigation Claims* [Docket No. 5965] requiring: (a) the Debtors to file this Second Objection on or before December 17, 2013, (b) the California Litigation Claimants to respond on or before January 23, 2014, and (c) the Debtors to file a reply on or before February 6, 2014, with a hearing to be held on February 20, 2014.

27.     The California Litigation Claimants must clarify for the Court and the Debtors the exact claims they intend to prosecute. If the California Litigation Claimants are standing on the "claims as amended," then the 58 Amended Claims filed against *only* ResCap should be expunged for the reasons set forth herein, and the non-amended Original Claims should be disallowed and expunged for the reasons set forth in the Objection (to which the California Litigation Claimants did not file a substantive response).[17] Any suggestion by the California Litigation Claimants that the 58 Amended Claims are intended to be effective against the same 9 Debtors against whom the Original Claims were filed would be contrary to the explicit and unambiguous terms of the Bar Date Order, which specifically requires a claimant who asserts a claim against more than one Debtor to file a separate claim against each Debtor. Simply because these Chapter 11 Cases are being jointly administered does not authorize a claimant to file a single claim against the lead debtor in a jointly-administered case and argue that such a claim is effective against multiple debtor entities—a fact that Purported Counsel recognized when it filed the Original Claims.

28.     This Court recently rejected an identical argument made by a claimant in the Papas Opinion. <u>See</u> Papas Opinion, at 8. There, claimant's counsel argued that since these

---

[17]   Further confusing the record is the fact that the Amended Claims, which were filed against ResCap only, purport to amend the claims filed against Debtor Executive Trustee Services, LLC. Thus, the Debtors' claims register now reflects two different sets of claims against ResCap filed by the same parties. It is Purported Counsel's burden to clearly and unmistakably explain exactly which claims they assert.

12

Chapter 11 Cases are "consolidated," a claim asserted against ResCap was "sufficient to assert a

claim against its subsidiary." This Court roundly rejected this argument, finding that "these

cases are not substantively consolidated; they are being jointly administered for administrative

purposes only. Each Debtor has its own creditors, assets and liabilities. Papas offered no case

law to support his argument to the contrary." The unambiguous language of the Bar Date Order

compels the same result here; the filing of the Amended Claims against ResCap should not be

considered a claim against any other Debtor.

**RELIEF REQUESTED**

29.     The Debtors file this Second Objection seeking to disallow and expunge

the Amended Claims either as improper post-bar date amendments or, in the alternative, pursuant

to Bankruptcy Code section 502(b) for failure to state a claim against the Debtors under

applicable law.

**I.      THE AMENDED CLAIMS ARE IMPROPER
        POST-BAR DATE AMENDMENTS TO THE
        INITIAL CLAIMS AND SHOULD BE DISALLOWED**

30.     Without even addressing the merits of the underlying allegations made

against the Debtors, the Court should disallow and expunge the Amended Claims as untimely

and improper amendments to the Original Claims. As discussed below, the Amended Claims

should be disallowed because they fail to satisfy the applicable standards relating to amendments

to proofs of claim and work significant prejudice against the Debtors' estates.

31.     Federal Rule of Bankruptcy Procedure 3003(c)(3) directs a bankruptcy

court "to establish a bar date beyond which proofs of claim are disallowed in a chapter 11 case."

In re Enron Creditors Recovery Corp., 370 B.R. 90, 94 (Bankr. S.D.N.Y. 2007). The bar date "is

critically important to the administration of a successful chapter 11 case for its intended to be a

mechanism providing the debtor and its creditors with finality." Id. (citation and internal

13

quotations omitted).  Further, a bar date order, such as the one entered in the Debtors' case in

August 2012, is "an integral part of the reorganization process," as it "serves the important

purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the

identity of those making claims against the bankruptcy estate and the general amount of the

claims, a necessary step in achieving the goal of a successful reorganization.  Enron, 370 B.R. at

94 (citing In re Keene Corp., 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (internal citations

omitted)).  Where the bar date has passed, and a creditor seeks to file an amended proof of claim,

"[t]he decision to allow the amendment of the claim is committed to the discretion of the

bankruptcy judge."  In re Asia Global Crossing, Ltd., 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005).

      32.     In the Second Circuit, courts apply a two-step inquiry when considering

whether to allow late and amended proofs of claim.  See Midland Cogeneration Venture Ltd.

P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 133 (2d Cir. 2005); In re Barquet Grp.

Inc., 477 B.R. 454, 464 (Bankr. S.D.N.Y. 2012), aff'd, 477 B.R. (S.D.N.Y. 2012).  First, the

court must determine whether there was an "'assertion of a similar claim or demand evidencing

an intention to hold the estate liable.'"  Enron, 419 F.3d at 133 (quoting Integrated Res., Inc. v.

Ameritrust Co. N.A. (In re Integrated Res., Inc.), 157 B.R. 66, 70 (S.D.N.Y. 1993)).  A claim

relates back to a timely filed claim if it: "1) corrects a defect of form in the original claim; 2)

describes the original claim with greater particularity; or 3) pleads a new theory of recovery on

the facts set forth in the original claim."  Enron, 419 F.3d at 133 (quoting In re McLean Indus.,

Inc., 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990)).

      33.     If the "relation back" inquiry is satisfied, courts then examine whether it

would be equitable to allow the amendment.  Enron, 419 F.3d at 133; Integrated, 157 B.R. at 70.

Courts consider the following five equitable factors in determining whether to allow an
amendment:

> (1) undue prejudice to opposing party; (2) bad faith or dilatory
> behavior on the part of the claimant; (3) whether other creditors
> would receive a windfall were the amendment not allowed;
> (4) whether other claimants might be harmed or prejudiced; and
> (5) the justification for the inability to file the amended claim at the
> time the original claim was filed.

Integrated, 157 B.R. at 70 (citation omitted); Enron, 419 F.3d at 133.  However, "[t]he critical

consideration is whether the opposing party will be unduly prejudiced by the amendment."

Enron, 419 F.3d at 133 (citing Integrated, 157 B.R. at 70).

### A.      Allowing the Amended Claims Would be Prejudicial to the Debtors

34.      Deeming the Amended Claims to be "timely filed" would be prejudicial to

the Debtors because the filing of the Amended Claims is a clear attempt to delay a final

resolution of the baseless allegations made by the Claimants against the Debtors and endorses the

filing of an amended claim in response to an objection.  The Amended Claims were filed nearly

*two years* after the California Litigation was initiated, *fourteen months* after the Chapter 11

Cases were commenced, *nine months* after passage of the General Bar Date, *six months* after the

Plaintiffs voluntarily dismissed the underlying litigation, and only after the Debtors filed the

Objection.  See, e.g., Enron, 370 B.R. at 102-04 (disallowing post-bar date amendment to initial

claim where amended proof of claim under guaranty was filed fifteen months after the bar date

with no explanation for the delay).  Such conduct should not be permitted for two reasons.

35.      *First*, Purported Counsel conceded at the Hearing that the facts underlying

the Amended Claims are the same as those presented in the California Litigation and the Initial

Claims.  As the Debtors are painfully aware, the allegations contained in the Amended Claims

have been static for almost two years since the California Litigation was commenced.  The

ny-1107957

deficiencies in the Plaintiffs' causes of action are well documented – first, in the Initial

Complaint by the filing of the Motion to Dismiss, then in the Amended Complaint by the filing

of the Second Motion to Dismiss, and most recently, in the Original Claims by the filing of the

Objection.  The Debtors continue to be prejudiced by the Claimants' repeated "amendments" and

"do-overs" of the baseless allegations made against them.  This pattern reflects a thinly-veiled

strategy of amending claims to try and rectify glaring inadequacies in the underlying allegations,

which only serves to unnecessarily delay a resolution of the unsubstantiated allegations raised

against the Debtors.  The California Litigation Claimants should be required to litigate the

propriety of the Original Claims.

36.    *Second*, allowing the Amended Claims to stand would be prejudicial to the

Debtors because it was only after the Debtors and their professionals spent significant time and

effort preparing and filing a vigorous objection to the Original Claims did the Claimants file an

"amendment" to the Original Claims.  The California Litigation Claimants' reactive approach

prejudices the Debtors' estates and those creditors who engage with the Debtors in a legitimate

claims resolution process by accurately filing justifiable claims in these Chapter 11 Cases.  See

Aristeia Capital, LLC, et al. v. Calpine Corp. (In re Calpine Corp.), Case No. 05-60200 (BRL),

2007 WL 4326738, *6 (S.D.N.Y. Nov. 21, 2007) ("The timing of the filing of the New Claims,

well into the negotiations between the Debtors and the creditors and more than six months after

the Bar Date further supports a finding of prejudice.").

37.    Endorsing the California Litigation Claimants' approach could have far-

reaching and prejudicial consequences as other creditors will be empowered to file amended

claims in response to a claims objection, which will exponentially expand the length of both the

Liquidating Trust's and the Borrower Claims Trust's claims reconciliation process at a

16

significant cost, thereby impairing the creditors' recoveries and stifle the finality that a bar date

and claims reconciliation process is intended to provide to a debtor's estate. See In re Spiegel,

Inc., 337 B.R. 816, 820 (Bankr. S.D.N.Y. 2006) ("Allowing the Amended Claims could also

adversely affect the estate by opening the floodgates to similar claims in a case where over 4,300

claims have been filed."). As Judge Peck recognized in In re Lehman Brothers Holdings, Inc,

433 B.R. 113 (Bankr. S.D.N.Y. 2010), "[a]lowing the filing of late claims . . . would expose the

Debtors to the risk of a virtually never ending claims resolution process. Particularly in the

context of these enormously complex cases, the Bar Date Order needs to be uniformly enforced

except in truly unusual and compelling circumstances." Id. at 127. As in Lehman Brothers, the

risk to the Debtors is particularly acute in the context of these complex Chapter 11 Cases as the

vast majority of the Debtors' creditors have agreed to the Plan and the Confirmation Order has

been entered. See also In re Drexel Burnham Lambert Grp., Inc., 129 B.R. 22, 26 (Bankr.

S.D.N.Y. 1991) (disallowing late filed claim because "[c]omplex and exhaustive negotiations

have been taking place" and "[a]bsent finality, reorganization would be impossible"); Spiegel,

337 B.R. at 820 ("To allow claims filed by parties at the late date of confirmation would wreak

havoc with the entire Plan negotiation process.").[18]

        38.     To allow a late-filed amendment, where such claim was filed after

substantial delay and with no justification for same, "would vitiate the purpose of the Bar Date . .

---

[18]    The Claimants' ploy to drag out the process is further evidenced by comparing the facial differences between
the Original Claims and the Amended Claims. The Original Claims—549 in total—each asserted an
unsubstantiated $1.3 million against nine different Debtor entities and aggregate approximately $713 million in
claims against the Debtors. In contrast, the Amended Claims—now only 58 in total—were only filed against a
single Debtor entity, ResCap, each also in the amount of $1.3 million and aggregate approximately $75.4
million in claims against the Debtors. That counsel elected to reduce: (a) the aggregate amount of the claims to
approximately $75.4 million, and (b) the total number of claims to 58, suggests that the Original Claims had
absolutely no basis for asserting the amounts that they did. The only logical conclusion is that the Original
Claims were filed as "placeholder" claims without due regard for the substantial efforts the Debtors and their
professionals would have to take, and indeed have taken, to resolve legitimately filed claims in these Chapter 11
Cases.

. and would clearly prejudice the Debtors' reorganization process." Enron, 370 B.R. at 103. The

filing of the Amended Claims long after the General Bar Date and a month after the filing of the

Disclosure Statement and an initial Chapter 11 plan flouts the bankruptcy process, ignores the

importance of finality for claims reconciliation and estimation purposes, and is a "back door"

attempt to avoid the impact of the General Bar Date. See Papas Opinion at 9 ("[E]ven if the

Amended Claim did relate back to the Claim, allowing the amendment at this time would

prejudice the Debtors. The Debtors' Disclosure statement has already been approved and the

contested confirmation hearing is nearly complete."); see also In re Uvino, Case No. 09-15225

(BRL), 2012 WL 892501, at * 4 (Bankr. S.D.N.Y. Mar. 14, 2012). Accordingly, the Amended

Claims are improper post-bar date amendments and should be expunged in their entirety.

II.    **EVEN IF THE AMENDED CLAIMS ARE
       NOT EXPUNGED AS UNTIMELY AMENDMENTS,
       RESCAP IS NOT LIABLE FOR ANY DAMAGES
       TO THE CALIFORNIA LITIGATION CLAIMANTS**

       39.    Even if the Court determines that the Amended Claims are proper

amendments to the Original Claims, such claims should be expunged because ResCap cannot be

liable to the California Litigation Claimants for any of the purportedly wrongful conduct asserted

in the Second Amended Complaint. (Horst Decl. ¶ 6.) As set forth in the Horst Declaration,

ResCap did not make any loans to the California Litigation Claimants as it was not in the

business of lending money. (Id.) In addition, ResCap never serviced any of the California

Litigation Claimants' loans, never directed the trustee to initial foreclosure proceedings against

the California Litigation Claimants, and never itself foreclosed on any of the California

Litigation Claimants' loans. (Id.)

       40.    Accordingly, if the Court determines that the Amended Claims are timely

amendments, the Amended Claims should be expunged in their entirety on the ground that they

ny-1107957

are improperly asserted against ResCap, a Debtor entity that has no connection or liability to the California Litigation Claimants whatsoever.

## OBJECTION TO AMENDED CLAIMS

41.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  A properly completed proof of claim is *prima facie* evidence of validity and amount of a claim.  <u>See</u> Fed. R. Bankr. P. 3001(f).  A party in interest may object to a proof of claim, and once an objection is made, the court must determine whether the objection is well founded.  <u>See</u> 4 Collier on Bankruptcy ¶ 502.02[2] (16th ed. rev. 2012).

42.    Bankruptcy Code section 502(b)(1) provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).  Whether a claim is allowable "generally is determined by applicable nonbankruptcy law. . . ." <u>In re W.R. Grace & Co.</u>, 346 B.R. 672, 673 (Bankr. D. Del. 2006).  "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." <u>In re Hess</u>, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting <u>Vanston Bondholders Protective Comm. v. Green</u>, 329 U.S. 156, 161 (1946)).  For the reasons set forth below, the California Litigation Claims fail to state a claim against any of the Debtors under the applicable law and should be disallowed and expunged in their entirety.

## I.    THE AMENDED CLAIMS FAIL TO SATISFY BASIC PLEADING STANDARDS

### A.    The Second Amended Complaint Should Be Reviewed Under Basic Pleadings Standards

43.    Several courts, including those in this district, have applied the federal pleadings standards when assessing the validity of a proof of claim.  <u>See In re DJK Residential</u>

19

LLC, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their

burden in connection with a proof of claim, bankruptcy courts have looked to the pleading

requirements set forth in the Federal Rules of Civil Procedure.") (citing In re Rockefeller Ctr.

Props., 272 B.R. 529, 542, n.17 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller

Ctr. Props. (In re Rockefeller Ctr. Props.), 226 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. App'x 40

(2d Cir. 2002); Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.), 398 B.R.

736, 748 (Bankr. S.D.N.Y. 2008) ("The documents attached to the proofs of claim should be

treated, for purposes of a motion to disallow claims, like documents that are attached to or relied

upon in a complaint are treated on a Rule 12(b)(6) motion to dismiss. . . ") (citation omitted); In

re Nortel Networks, Inc., 469 B.R. 478, 479 (Bankr. D. Del. 2012) (applying the standards of

Rule 9(b) to a review of amended claims that asserted claims for, *inter alia*, breach of fiduciary

duty, aiding and abetting breach of fiduciary duty, civil conspiracy, unjust enrichment, and

subrogation). Indeed, since a claim objection is a contested matter under Fed. R. Bankr. P.

9014(a), Rule 9(b) applies per Fed. R. Bankr. P. 9014(c).

44.     The Debtors seek to expunge in their entirety the California Litigation

Claims. However, because the California Litigation Claims incorporate by reference the Second

Amended Complaint and do not add any additional substantive bases in support of the Claims,

this Objection addresses the merits of each count of the Second Amended Complaint in detail

below. Accordingly, the validity of the California Litigation Claims, which are based wholly on

the assertions made in the Second Amended Complaint, should be adjudged under the pleading

standards applicable to the Second Amended Complaint.

**B.     The Second Amended Complaint Fails to Satisfy Rule 8(a)**

45.     Pursuant to Federal Rule of Civil Procedure 8(a)(2), a "pleading that states

a claim for relief must contain . . . a short and plain statement of the claim showing that the

pleader is entitled to relief."). Fed. R. Civ. P. 8(a)(2). Rule 8(a) "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." Ascroft v. Iqbal, 556 U.S. 662,

678 (2009) (citation omitted). It is insufficient for a complaint to simply "le[ave] open the

possibility that a plaintiff might later establish some 'set of undisclosed facts' to support

recovery." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561 (2007). Rather, it must plead

sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more

than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of

action will not do." Id. at 555 (citation omitted). The purpose of Rule 8(a)(2) is to ensure that

the complaint "give[s] enough detail to illuminate the nature of the claims *and allow defendants

to respond.*" Regis Techs., Inc. v. Oien (In re Oien), 404 B.R. 311, 317 (Bankr. N.D. Ill. 2009)

(emphasis added) (citations and internal quotation marks omitted). Simply, each defendant must

know what he is charged with; see, e.g., Jones v. Pollard-Buckinham, 348 F.3d 1072, 1073 (8th

Cir. 2003) (though inartful, *pro se* complaint satisfied Rule 8(a)(2) because "it clearly identified

how each defendant was involved in the conduct of which . . . [the plaintiff] complains.");

Forman v. Salazano (In re Norvergence, Inc.), 405 B.R. 709, 736-37 (Bankr. D.N.J. 2009)

(complaint's setoff allegations inadequate because, among other things, it did not identify

specific defendants with specific transactions). The Second Amended Complaint fails to meet

this standard in a variety of ways.

      46.    The Second Amended Complaint fails to specify what actions each

individual defendant took or details of the omissions and/or misrepresentations each individual

defendant made that would give rise to the claims asserted in the Second Amended Complaint

(and, by reference to the Second Amended Complaint in the Amended Claims, the California

Litigation Claims). This defect is further compounded by the inconsistency between the Second

Amended Complaint, which names multiple Debtors as "defendants," as compared to the

Amended Claims that only assert claims against ResCap.

      47.      In addition, the Second Amended Complaint fails to allege the specific

corporate entity that originated many of the California Litigation Claimants' loans (collectively,

the "Loans" and each a "Loan").  The Second Amended Complaint only asserts that either

"GMAC" (an undefined entity) or Homecomings Financial, LLC originated each Loan.  (See

Appendix A to Second Amended Complaint).  As a result, the Second Amended Complaint fails

to put any defendants, including ResCap (the sole entity named in the Amended Claims), on

notice of any specific claim against it.  In that regard, the Second Amended Complaint violates

the basic principle of Rule 8(a)(2), inasmuch as the Second Amended Complaint does not set

forth "a *short and plain* statement of the claim[s] . . . ." (emphasis added).  In fact, the Second

Amended Complaint requires that the Defendants piece together information about each of them

by oscillating back and forth between its 111 pages, 349 paragraphs, and the Appendix A.

      48.      The Second Amended Complaint also fails to indicate the specific

corporate entity with whom each California Litigation Claimant communicated when the Loans

were originated.  Specially, the Second Amended Complaint does not reference what the

California Litigation Claimants were told about their respective Loan or what information

pertaining to the terms and conditions of the Loan the California Litigation Claimants relied

upon for their respective Loan.  Appendix A attached to the Second Amended Complaint

purports to provide "Individualized Plaintiff Allegations;" however, it merely provides vague

allegations that each California Litigation Claimant spoke with a "Loan Consultant" and that

various "Defendants and Loan Consultants" committed certain acts and omissions that caused

the California Litigation Claimants harm.  (See Appendix A ¶¶ 1-42).

22

49.     Moreover, the Second Amended Complaint fails to allege the corporate
entity that serviced the Loans beyond referencing "GMAC"—a fact that should clearly be within
the knowledge of each California Litigation Claimant.  (See, e.g., Second Amended Complaint,
¶¶ 26-36 (defining various defendants but not identifying any as "GMAC"); Second Amended
Complaint, Appendix A at 1 (using term "GMAC" and stating "the loan was originated by
"GMAC and defendants" and "GMAC is currently servicing the loan").)  However, the
Amended Claims do not assert claims against "GMAC;" they only assert claims against ResCap.

50.     In sum, the Second Amended Complaint is a long-winded recitation of
purported "facts" that are devoid of any specific factual allegations against any defendant.
Despite being given an opportunity to remedy earlier deficiencies, there remains a fatal absence
of specific facts about any of the defendants, and the California Litigation Claimants fail to
substantiate the broad allegations made in the Second Amended Complaint or any claims against
the Debtors through the California Litigation Claims.  In short, the Second Amended Complaint
fails to provide ResCap with adequate notice about the alleged claims being asserted against it.

51.     Based upon the fact that the California Litigation Claims are predicated on
allegations that fail to comply with Rule 8(a)(2)'s basic pleading standards, the California
Litigation Claims should be disallowed and expunged in their entirety for that reason alone.

### C.    The Second Amended Complaint's Fraud-Based Claims Fail to Satisfy Rule 9(b)

52.     The Second Amended Complaint similarly fails to meet the heightened
standard of particularity that Rule 9(b) imposes on fraud-based claims.  Pursuant to Rule 9(b), "a
party must state with particularity the circumstances constituting fraud or mistake" if making
allegations of fraud.  Fed. R. Civ. P. 9(b).

23

53.     "Rule 9(b) demands that, [when averments of fraud are made,] the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (citations and quotations and citation omitted).[19]  Further, Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz v. KPMG, LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (quotations omitted); see also Gowan v. Patriot Group, LLC (In re Dreier LLP), 452 B.R. 391, 408 (Bankr. S.D.N.Y. 2011); In re Norvergence, 405 B.R. at 726-27. If the claim "sounds in fraud," plaintiffs must plead the whole claim with particularity against each defendant.  Kearns, 567 F.3d at 1125-28; Gowan v. Amaranth (In re Dreier LLP), 452 B.R. 451, 462 (Bankr. S.D.N.Y. 2011).

54.     Counts one, two, three, five, six, seven, nine, ten, thirteen, fifteen, seventeen, twenty-two, and twenty-four of the Second Amended Complaint assert fraud claims and are, therefore, subject to Rule 9(b).  (See Second Amended Complaint ¶¶ 115-122 (Fraudulent Concealment); ¶¶ 123-129 (Intentional Misrepresentation); ¶¶ 130-131 (Negligent Misrepresentation)[20], ¶¶ 141-153 (Unfair Competition); ¶¶176-181(Intentional

---

[19]   With respect to the choice-of-law rules applicable to the determination of "conduct-relating" rules of law, courts look to the place of the tort.  See In re Lois/USA, Inc., 264 B.R. 69, 108 (Bankr. S.D.N.Y. 2001).  "For actions sounding in fraud, the substantive law of the state in which the injury was suffered—rather that the state where the fraudulent conduct was initiated—usually governs."  Id. (quoting Sack v. V.T. Low, 478 F.2d 360, 365 (2d Cir.1973) ("[W]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made.")).  Based on these "choice of law" principles, the appropriate law to apply to assess the California Litigation Claims is California law.

[20]   Claims for negligent misrepresentation must meet Rule 9(b)'s particularity requirements.  See Decker v. GlenFed, Inc. (In re GlenFed, Inc. Secs. Lit.), 42 F.3d 1541, 1547-48 (9th Cir. 1994).

Misrepresentation); ¶¶182-183 (Negligent Misrepresentation); ¶¶ 199-218 (Unfair Competition);

¶¶ 243-252 (Fraudulent Concealment); ¶¶ 267-272 (Unfair Competition); ¶¶ 317-325 (Fraudulent

Concealment); ¶¶ 326-334 (Intentional Misrepresentation); ¶¶ 335-336 (Negligent

Misrepresentation); ¶¶ 357-366 (Unfair Competition);  ¶¶ 387-300 (Unfair Competition).

55.    The allegations in the Second Amended Complaint fail to meet Rule

9(b)'s heightened pleading standard.  The Second Amended Complaint fails to allege any

specific misrepresentation, nondisclosure, or concealment by any specific defendant, let alone by

ResCap, or for that matter, any other Debtor named in the Second Amended Complaint.  Further,

the California Litigation Claimants have not identified the particular facts specific to each

defendant (including ResCap) and how that defendant's acts harmed each plaintiff.  The general

allegations made by the California Litigation Claimants, without distinguishing one defendant

from another or alleging specific facts about each defendant's involvement in the loan process or

the alleged fraud, are insufficient to sustain the causes of action—and the claims asserted by the

California Litigation Claimants against the Debtors—under Rule 9(b).  Kearns, 567 F.3d at 1124

(9th Cir. 2009) (averments of fraud must be "specific" to give defendants notice of particular

misconduct).

56.    Accordingly, counts one, two, three, five, six, seven, nine, ten, thirteen,

fifteen, seventeen, twenty-two, and twenty-four in the Second Amended Complaint should be

disallowed because they do not state a claim in accordance with Rule 9(b).  Fed. R. Bankr. P.

9014(c) (rendering Rule 9(b) applicable in contested matters); see also In re Nortel Networks,

Inc., 469 B.R. at 479 (applying the standards of Rule 9(b) to a review of claims).

25

## II.    THE SECOND AMENDED COMPLAINT
## FAILS TO PLEAD A BASIS FOR DERIVATIVE
## LIABILITY

### A.    The Amended Complaint Alleges No Basis for Agency or Conspiracy Liability

57.    The California Litigation Claimants' unsubstantiated attempt to paint the

defendants (including the ResCap Defendants) as "co-conspirators" who, "through a common

plan and scheme," "ratified" one another's conduct, or "collaborated" to entice plaintiffs into

"dangerous loans," fails to plead a basis for derivative liability.  (See, e.g., Second Amended

Complaint ¶¶ 38-46).

58.    The bare allegations of conspiracy in the Second Amended Complaint and

allegations that lenders were "correspondents" who were purportedly "authorized" to lend on

behalf of "Defendants," are insufficient to satisfy either Rule 8(a)'s pleading standards or the

more stringent requirements of Rule 9(b).  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097,

1106 (9th Cir. 2003) (dismissing claims where plaintiff failed to "provide the particulars of

when, where, or how the alleged conspiracy occurred."); Twombly, 550 U.S. at 556-57 ("[A]n

allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more,

parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some

unidentified point does not supply facts adequate to show illegality."); see, e.g., N.L.R.B. v.

Semco Printing Ctr., Inc., 721 F.2d 886, 891 (2d Cir. 1983) (A "bare assertion" of authorization

"hardly makes out a prima facie case of agency. . . .").

### B.    The Intracorporate Immunity Doctrine Bars the California Litigation Claimants' "Conspiracy"-Based Claims

59.    California Litigation Claimants' "conspiracy"-based claims are also barred

by application of the "intracorporate immunity doctrine."  This doctrine provides "that the

officers, agents and employees of a single corporate or municipal entity, each acting within the

26

scope of his or her employment, legally are incapable of conspiring together."  See Cameron v.

Church, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003).  Because the defendants were sued as

affiliated parent/subsidiary entities and alleged "agents" of one another, see Second Amended

Complaint ¶¶ 6-33, 35, the intracorporate immunity doctrine applies to California Litigation

Claimants' conspiracy-based claims.

## III.    THE PLAINTIFFS FAIL TO STATE ANY FRAUD-BASED CLAIM

### A.    California Litigation Claimants Fail to Allege Facts Giving Rise to a Duty to Disclose

60.    Counts one, two, three, five, six, seven, nine, ten, and thirteen in the

Second Amended Complaint (fraudulent concealment, intentional misrepresentation, negligent

misrepresentation, and unfair competition) appear to be based upon the allegation that the

defendants failed to disclose *to the California Litigation Claimants* the facts about *the California*

*Litigation Claimants' own* credit worthiness and ability to repay the Loans, and about the value

of their homes.  (See Second Amended Complaint ¶¶ 47-273).[21]

61.    Contrary to the California Litigation Claimants' unfounded assertions, in

California, "[t]he general rule for liability for nondisclosure is that even if material facts are

known to one party and not the other, failure to disclose those facts is not actionable fraud unless

there is some fiduciary or confidential relationship giving rise to a duty to disclose." Kovich v.

Paseo Del Mar Homeowners' Ass'n, 41 Cal. App. 4th 863, 866 (1996) (citation omitted).[22]  This

---

[21]    For example, under applicable California law, a claim for fraudulent concealment must allege that:
(1) defendant concealed a material fact, (2) defendant had a duty to disclose the fact to plaintiff, (3) defendant
intentionally concealed the fact with intent to defraud plaintiff, (4) plaintiff was unaware of the fact and would
not have acted as he did if he had known the concealed fact, and (5) as a result plaintiff sustained damage.  See
Levine v. Blue Shield of Cal., 189 Cal. App. 4th 1117, 1126-27 (2010).

[22]    See also, e.g., Kimball v. Flagstar Bank F.S.B., 881 F. Supp. 2d 1209, 1217 (S.D. Cal. 2012) (mortgage lender's
failure to disclose material facts known only to defendant and not to plaintiffs during mortgage refinancing
(Cont.'d)

27

rule also applies to the lender/borrower relationship.  "Absent special circumstances a loan

transaction is at arm's length and there is no fiduciary relationship between the borrower and

lender." Oaks Mgmt. Corp. v. Super. Ct., 145 Cal. App. 4th 453, 455 (2006) (citing numerous

California cases).  In this instance, the California Litigation Claims have alleged no special

circumstances.  Indeed, the California Litigation Claims do not contain a single factual assertion

regarding the relationship between any California Litigation Claimant and any defendant.  The

Amended Complaint contains overly broad and general allegations of the ResCap Defendants

lending money, administering loans, selling loans and raising capital, all of which are common

services provided by other banks and lenders in the Defendants' industry.  The assertion by the

California Litigation Claimants that the ResCap Defendants *allegedly* performed such services in

a predatory manner does not create a fiduciary duty running to the California Litigation

Claimants.  Rather, a fiduciary duty must be established prior to such alleged conduct.

> 62.    Moreover, "[a] lender is under no duty [to a prospective borrower] 'to

determine the borrower's ability to repay the loan. . . .  The lender's efforts to determine the

creditworthiness and ability to repay by a borrower are for the lender's protection, not the

borrower's.'"  Perlas v. GMAC Mortg., LLC, 187 Cal. App. 4th 429, 436 (2010) (citations

omitted); see also Bonyadi v. CitiMortgage Bank, Case No. 12-5239-CAS FFMX, 2013 WL

877603, at *5 (C.D. Cal. Mar. 8, 2013) ("plaintiff cannot state a claim for fraud based upon . . .

any failure on the part of Citi to disclose to her whether or not her loan was affordable for her.

Borrowers must rely on their own judgment and risk assessment in deciding whether to accept a

loan, and a lender cannot be liable in tort for failing to advise a borrower about a loan's

affordability, as plaintiff contends.").  Accordingly, borrowers cannot "rely upon a [lender's]

---

transaction, including material disclosure notices, not actionable fraud); Poulsen v. Sterling Savs. Bank, Case
No. 12-02306 (EDL), 2012 WL 3638605, at *6 (N.D. Cal. Aug. 22, 2012).

knowingly [and allegedly] false determination that they *qualified* for the loans as a determination

by [lender] that they could *afford* the loans." Id. at 431 (emphasis in original); see also Bonyadi,

2013 WL 877603, at *5; Riggins v. Bank of America, N.A., Case No. 12-0033 (DOC), 2013 WL

319285, at *5 (C.D. Cal. Jan. 24, 2013).

63.     Similarly, the claim that Defendants misled the California Litigation

Claimants through inflated appraisals (Second Amended Complaint, Counts 6-9) fails.  See

Nymark v. Heart Fed. Savs. & Loan Ass'n., 231 Cal. App. 3d 1089, 1097 ("in preparing the

appraisal, defendant was acting in its conventional role as a lender of money to ascertain the

sufficiency of the collateral as security for the loan. . . .  Thus, we must conclude that defendant

owed no duty of care to plaintiff in the preparation of the property appraisal.").

64.     Here, the California Litigation Claimants cannot seek to assert claims

against the ResCap Defendants in order to make up for the California Litigation Claimants'

failure to properly assess their own financial condition and know whether or not they could

afford to make the payments due under the Loans; similarly they cannot assert claims based on

supposedly inflated appraisals.

**B.     California Litigation Claimants Fail to Allege Scienter or Intent to Defraud**

65.     The Second Amended Complaint also fails to allege sufficient facts

indicating that the ResCap Defendants' alleged omissions or misrepresentations were made with

the intent to defraud the Plaintiffs.  The conclusory allegations in the Second Amended

Complaint, including the assertion that the defendants "intentionally concealed the material facts

alleged above at Paragraphs 76 and 78,[23] in order to induce Plaintiffs reliance into entering into

Loan Contracts with Ally and Bank Defendants," and " intentionally misrepresented the material

---

[23]     Paragraphs 76 and 78 contain no allegations of concealment of material facts.

ny-1107957

facts alleged above at Paragraphs 77 and 78,[24] in order to induce Plaintiffs into reliance into

entering into Loan Contracts with Ally and Bank Defendants," see Second Amended Complaint

¶¶ 116, 124, are nothing more than conclusory statements and are insufficient to state a claim.

See Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 132 (2007) ("[M]ere

conclus[ory] allegations that the omissions were intentional and for the purpose of defrauding

and deceiving plaintiffs . . . are insufficient to show fraud by concealment.") (citation omitted).[25]

### C.    California Litigation Claimants Fail to Allege Reliance or Damages

66.    The gravamen of the California Litigation Claims is the allegation that the

California Litigation Claimants were brought into the ResCap Defendants' alleged scheme in the

first instance through misrepresentations that the California Litigation Claimants could afford to

make the payments due in connection with the Loans.  However, the California Litigation

Claimants' allegations of reliance on the Debtors' conduct or damages relating thereto are

insufficient as a matter of law.  Though the California Litigation Claimants allege "harm"

through a decline in property values, damage to the California Litigation Claimants' credit

reports, and reduced access to other financing options, see Second Amended Complaint ¶¶ 121,

127, 150, and 180, such bald statements, without support, are insufficient to plead reliance.  See

Bank of Am. Corp. v. Superior Court of Los Angeles Cnty., 198 Cal. App. 4th 862, 872-73

(2011).  Indeed, those allegations would only be relevant to damages.  Moreover, it is difficult to

see how any reliance, even if alleged, could be justifiable.  Agosta v. Astor, 120 Cal. App. 4th

---

[24]    Paragraphs 77 and 78 contain no allegations of misrepresentations of material facts.

[25]    There is also no basis for the California Litigation Claimants to assert fraud based on supposed
misrepresentations to investors or the public about the quality of the loans sold to investors.  (See Amended
Complaint ¶ 177).  See, e.g., Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1043 (9th Cir.
2010) (dismissal appropriate where claimants "could not allege that they actually read or heard the alleged
misrepresentations. . . .") (citation and quotations omitted).

596, 603 (2004), <u>rehearing denied</u>, <u>review denied</u> (justifiable reliance is element of all

misrepresentation claims).

67.    The California Litigation Claimants also fail to specifically plead any

damages to their financial condition on account of any actions taken by the defendants.  <u>See</u>

<u>Mirkin v. Wasserman</u>, 5 Cal. 4th 1082, 1092 (1993) ("[S]pecific pleading is necessary to

'establish a completed causal relationship' between the alleged misrepresentations and the harm

claimed to have resulted therefrom.").  The California Litigation Claimants have failed to

adequately allege reliance or damages.

68.    The California Litigation Claimants are the parties with the most intimate

knowledge of their financial ability to meet their obligations under the Loans.  Therefore, the

Second Amended Complaint's fraud and misrepresentation claims fail as a matter of law because

there could not have been any justifiable reliance.

### D.    California Litigation Claimants' Fraud Claims are Preempted by the Truth in Lending Act and the Fair Credit Reporting Act[26]

69.    The California Litigation Claimants' fraud-based claims should also be

dismissed because they are preempted by the Truth in Lending Act, 15 U.S.C. § 1601 et seq.

("<u>TILA</u>"), and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("<u>FCRA</u>").

70.    TILA preempts inconsistent state laws.  <u>See</u> 15 U.S.C. § 1610; <u>Kajitani v.</u>

<u>Downey Savs. & Loan Ass'n, F.A.</u>, 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008) ("[T]o the

---

[26]    The California Litigation Claimants amend their claims to assert a TILA claim.  Such claims would be time-barred by the one-year statute of limitations for damages claims or the three-year statute of repose for rescission under TILA.  (15 U.S.C. § 1640(e) (one-year statute of limitations for damage claim under TILA); <u>Beach v. Ocwen Federal Bank</u>, 523 U.S. 410 (1998) ("section 1635(f) completely extinguishes the right of rescission at the end of the 3 year period.").  Nor could the California Litigation Claimants amend their claims to assert a claim under the FCRA.   "The FCRA does not provide for a right of action against a furnisher of false information."  <u>Gens v. Wachovia Mortg. Corp.</u>, 2011 WL 9121, *8 (N.D. Cal. Jan. 3, 2011).

extent [plaintiffs'] state law claims rest on TILA violations or concern subject matters explicitly

preempted in 12 C.F.R. § 560.2(b), those claims are clearly preempted.").

71.    Similarly, FCRA "preempts all state law requirements relating to the

furnishing of accurate information to credit reporting agencies."  See, e.g., Montgomery v. PNC

Bank, N.A., Case No. 12-2453, 2012 WL 3670650, at *5 (N.D. Cal. Aug. 24, 2012).  Thus,

FCRA preempts the California Litigation Claims based on allegedly inaccurate information

furnished to credit reporting agencies, to the extent that such claims are based on allegations of

(i) reduced credit scores; (ii) unavailability of credit; (iii) increased cost of credit; (iv) reduced

availability of goods and services tied to credit ratings; and (v) increased costs of those services."

See id.

72.    Accordingly, Counts one, two, three, five, six, seven, nine, ten, and

thirteen fail to state a claim against the Debtors and should be dismissed.

## IV.    CALIFORNIA LITIGATION CLAIMANTS' ORIGINATION-BASED CLAIMS (FIRST, SECOND, AND THIRD CAUSES OF ACTION) ARE TIME-BARRED

73.    In addition to the pleading deficiencies noted above, nearly all of the

"origination-based" claims (contained in the First, Second, and Third Causes of Action) brought

by the California Litigation Claimants for fraud, misrepresentation, negligence, and alleged

unfair competition violations, are barred by the statute of limitations.  Moreover, the California

Litigation Claimants' attempt to resuscitate their claims by invoking the discovery rule is

unavailing.  (See Second Amended Complaint ¶¶ 25, 80, 81).

74.    First, the California Litigation Claimants' claims for unfair competition

are subject to a four-year statute of limitations.  Cal. Bus & Prof. Code § 17208.  The discovery

rule does not apply to unfair competition actions.  Karl Storz Endoscopy Am., Inc. v. Surgical

Techs., Inc., 285 F.3d 848, 857 (9th Cir. 2002).  All but two[27] of the California Litigation

Claimants obtained their loans prior to May 9, 2008, the date that is four years prior to the filing

of the Initial Complaint, rendering substantially all of the unfair competition claims time-barred.

75.    Second, the California Litigation Claimants' fraud-based claims are

similarly barred by the applicable three-year statute of limitations.  Cal. Code Civ. Proc. §

338(d).  Although the discovery rule applies to the three-year statute of limitations in this regard,

"the plaintiff 'must affirmatively excuse his failure to discover the fraud within three years after

it took place, by establishing facts showing that he was not negligent in failing to make the

discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put

him on inquiry.'"  Sun'N Sand, Inc. v. United Cal. Bank, 21 Cal. 3d 671, 701-02 (1978) (citation

omitted).[28]

76.    Third, the California Litigation Claimants' claims for negligence and

negligent misrepresentation are barred by the two-year statute of limitations.  Cal. Code Civ.

Proc. § 335.1.

77.    Fourth, all but two of the California Litigation Claimants' (see footnote

27, above) claims for violation of the Sherman Act, 15 U.S.C. section 1 *et seq.*, are barred by the

four-year statute of limitations.  15 U.S.C. § 15; Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d

1055 (9th Cir. 2012).[29]

---

[27]  Only Alex (Alejandra) Ibarra and Irma Laredo allegedly received loans after May 9, 2008.  They allegedly obtained loans on May 13, 2008 and July 15, 2008, respectively.  (See Amended Complaint, Appendix A ¶¶ 20, 40).

[28]  "The rule is that the plaintiff *must plead and prove the facts* showing: (a) Lack of knowledge.  (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date) and (c) How and when [h]e did actually discover the fraud or mistake."  Parsons v. Tickner, 31 Cal. App. 4th 1513, 1525 (1995) (emphasis in original).

[29]  The Sherman Act count fails whether time barred or not because the California Litigation Claimants have failed to allege the elements of such a claim.  To state a viable claim, a plaintiff must allege that there is a contract, (Cont.'d)

33

78.    The California Litigation Claimants have not alleged any facts that would demonstrate that they were not negligent in failing to make the discovery of any such alleged fraud.  In fact, as reflected in Appendix A attached to the Second Amended Complaint, the California Litigation Claimants obtained their loans between 2003 and 2008.  (See Second Amended Complaint, Appendix A ¶¶ 1-42).  Accordingly, even accepting their allegations as true, the California Litigation Claimants would have been on notice that misrepresentations were made soon after origination, or, at the very latest, in 2008.  Therefore, given that the Initial Complaint was filed on May 9, 2012, the California Litigation Claimants' origination-based claims (the First, Second, and Third Causes of Action) are time-barred.

## V.    THE SECOND AMENDED COMPLAINT'S ALLEGATIONS OF DECEPTION IN LOAN MODIFICATIONS (FOURTH CAUSE OF ACTION) ARE INSUFFICIENT TO STATE A CLAIM

79.    The California Litigation Claimants' Fourth Cause of Action (and its Counts 14 through 22) fails because it is asserted by persons other than those who have submitted proofs of claim herein.   Page 68, lines 16-19 of the Second Amended Complaint make clear that none of the California Litigation Claimants have asserted this claim; rather, this claim is brought by persons who are strangers to the proofs of claim at issue here.  (See Second Amended Complaint at 68, lines 16-19 (identifying the persons asserting this claim as Norberto and Margarita Flores-Zenteno, Robert Payne, Mary Serrano, Terrance and Star Hutchinson, Gregory and Marilyn Cavillo, David Dewayne Thomas, Gilberto Pelayo, Carlos Orillosa,

---

combination, or conspiracy, it unreasonably restrains trade in a relevant market, and there is an accompanying injury.  Agnew v. Nat'l Collegiate Athletic Ass'n, 683 F.3d 328, 335 (7th Cir. 2012).  As explained above, the California Litigation Claimants have failed to properly allege any conspiracy at all.  Further, they have failed to allege injury.  They claim the supposed acts of defendants "artificially raised the values of real estate throughout California."  (Second Amended Complaint, ¶262.)  If true, this would have benefited, not harmed, the California Litigation Claimants, who could have sold their properties and realized profits from the increased value.

34

Carolina Sanots-Orillosa, Ana Casillas, Samuel Silva, and Carmen Silva; none of these persons

are California Litigation Claimants)).

80.     Even if the Fourth Cause of Action were deemed to have been brought by

the California Litigation Claimants, they cannot state a claim arising from Defendants' supposed

failure to provide them loan modifications because a lender has no obligation to provide a

borrower with a modification of its loan.  Roussel v. Wells Fargo Bank, Case No. C12-04057

CRB, 2012 WL 5301909, *7 (N.D. Cal. Oct. 25, 2012) ("Plaintiff points to no clause in his loan

agreement that gives him the right to be considered for or receive a loan modification, or that

obliges Defendant to consider him for a loan modification.  Since Defendant had no duty to

consider Plaintiff's loan modification, Defendant's failure to properly consider Plaintiff's loan

modification application was not the cause of the imminent foreclosure of Plaintiff's home;

rather, Plaintiff's default on his mortgage caused the imminent foreclosure."); see also Nastrom

v. JPMorgan Chase Bank, N.A., Case No. 1:11CV01998 DLB, 2012 WL 5522795, *7 (E.D. Cal.

Nov. 14, 2012) (defendant "had no duty to provide any loan modification."); Mueller v. Bank of

America, N.A., Case No. 12CV0074 WQH-BLM, 2012 WL 3134243, *3 (S.D. Cal. Aug. 1,

2012) (same); Santos v. Countrywide Home Loans, Case No. Civ. 2:09-02642 WBS DAD, 2009

WL 3756337, *5 (E.D. Cal. Nov. 6, 2009) ("[N]othing in Cal. Civ. Code § 2923.6 imposes a

duty on servicers of loans to modify the terms of loans . . . . Plaintiff also has no private right of

action against defendants under the [Emergency Economic Stabilization Act of 2008 ("EESA")]

or the Hope for Homeowners Act").

81.     California Litigation Claimants also cannot assert a claim for negligent

misrepresentation (Count 17) arising out of the supposed failure to offer them loan

modifications.  Under California law, "[a]s is true of negligence, responsibility for negligent

misrepresentation rests upon the existence of a legal duty." Eddy v. Sharp, 199 Cal. App. 3d

858, 864 (1988).  And, neither a lender nor a loan servicer owes a duty to a borrower.  Aspiras v.

Wells Fargo Bank, N.A., 219 Cal. App. 4th 948 (2013) ("there is no duty of care owed in

servicing Plaintiff's mortgage loan and loan modification"); see also Settle v. World Savs. Bank,

F.S.B., Case No. 11-00800-MMM, 2012 WL 1026103, at *8 (C.D. Cal. Jan. 11, 2012)

("[n]umerous cases have characterized a loan modification as a traditional money lending

activity, warranting application of the rule articulated in [Nymark, 231 Cal. App. 3d at 1093,

n.1], that a financial institution in general owes no duty of care to a borrower."); Shepherd v.

American Home Mortg. Servs., Inc., Case No. Civ. 2:09-1916 WBS GGH, 2009 WL 4505925,

*2 (E.D. Cal. Nov. 20, 2009) (mortgage servicer does not generally owe any duty to the

borrower).[30]

82.    The California Litigation Claimants' claim for violation of Cal. Code of

Civil Procedure sections 580b and 726 (Count 14) likewise fails.  While they correctly assert that

under certain circumstances section 580b precludes a deficiency judgment after foreclosure, they

do not allege that any efforts to collect a deficiency from them occurred.  Section 580b only

precludes a deficiency judgment "after a sale of real property . . . under a deed of trust or

mortgage on a dwelling of not more than four families given to a lender to secure repayment of a

loan which was in fact used to pay all or part of the purchase price of that dwelling occupied,

entirely or in part, by the purchaser."  In other words, the statute does not apply until *after* a

foreclosure sale has occurred.  Section 726 does not itself preclude deficiency judgments, but

rather discusses judicial foreclosure procedures (not non-judicial foreclosure proceedings) and

confirms the applicability of section 580b in certain situations.  Here, the California Litigation

---

[30]   The claims for fraudulent concealment, intentional misrepresentation, and unfair competition (Counts 15, 16, and 22) fail for the reasons explained in more detail above.

Claimants do not allege deficiency collection efforts occurred after a foreclosure sale. Rather,

they allege the opposite—that collection efforts occurred "after the election to foreclose," in

connection with "Workout Agreements," which by definition are entered into before, and in

order to prevent, foreclosure. (See Second Amended Complaint, ¶ 314.)[31]

83.     Moreover, California Litigation Claimants' claim for rescission and/or

restitution (Count 18) fails. Their claim for restitution is based on the same deficient fraud

unconscionability claims discussed above, and fails for the same reasons. (See Second Amended

Complaint, ¶¶ 338-39.) Twombly, 550 U.S. at 555. Nor would rescinding the "Workout

Agreements" be of any help to the California Litigation Claimants. Loan workout agreements

are, by their very nature, designed to help borrowers who are unable to comply with the terms of

their original loan obligations by providing concessions such as reduced payments, reduced

interest rates, or a longer repayment period (or some combination thereof). Rescission would

place the California Litigation Claimants back in the position they were in before they entered

into the Workout Agreements—that is, they would resume being bound by the terms of their

original loans, which presumably have less favorable repayment terms.

84.     California Litigation Claimants' breach of contract claim (Count 19) fails

because they have failed to state whether the contract on which they are suing is written or oral,

and if written, they have failed to attach a copy of the contract on which their claim is based or to

quote it verbatim, as required by California law. "If the action is based on an alleged breach of a

written contract, the terms must be set out verbatim in the body of the complaint or a copy of the

written agreement must be attached and incorporated by reference." Harris v. Rudin, Richman &

---

[31]    Nor do the California Litigation Claimants allege that their loans were purchase money loans (as opposed to
refinance transactions); that their properties were four-unit or fewer buildings; or that their properties were
owner-occupied. These deficiencies also preclude them from stating a claim under section 580b.

Appel, 74 Cal. App. 4th 299, 307 (1999); Cal. Code Civ. Proc. §430.10(g) (authorizing demurrer

where it cannot be determined from the complaint whether the contract sued upon is written or

oral); Hills Transp. Co. v. Southwest Forest Indus., Inc., 266 Cal. App. 2d 702, 714 (1968)

(sustaining demurrer where complaint did not allege whether contract sued on was written or

oral).

85.     California Litigation Claimants' claim for violation of the "crier rule,"

Cal. Civil Code section 2924g (Count 20) does not state a claim either.  Section 2924g sets forth

the procedure for postponement of a non-judicial foreclosure sale.  This claim fails as to those

California Litigation Claimants whose properties were never sold at a foreclosure sale.  (See

Second Amended Complaint, ¶383, listing those who assert their properties have been sold at

foreclosure.)  Moreover, this claim fails as to all California Litigation Claimants because with

this claim, they seek to set aside the supposedly "void" foreclosure sales.  (See Second Amended

Complaint, ¶351; see also Prayer for Relief, ¶3; cf. Prayer for Relief, ¶1 (seeking damages only

for certain claims other than Count 20)).  Claimants may not use the proof of claim procedure to

set aside a foreclosure sale.

86.     California Litigation Claimants' claim for unfair debt collection practices

in violation of California Civil Code section 1788 et seq. (the Rosenthal Act, or "RFDCPA")

(Count 21) fails because the statute on which they base this claim is inapplicable to loan

servicers.  See Grill v. BAC Home Loans Servicing LP, Case No. 10-03057, 2011 WL 127891,

*9 (E.D. Cal. Jan. 14, 2011) ("[A] mortgage servicing company or any assignee of the debt is not

considered a 'debt collector' under the RFDCPA."); Krouse v. BAC Home Loans Servicing, LP,

Case No. 10-03309, 2011 WL 6100406, *6-7 (E.D. Cal. Dec. 6, 2011) (same); Dyachishin v.

America's Wholesale Lenders, Case No. 09-02639, 2010 WL 1525703, *3-4 (E.D. Cal. Apr. 15,

2010) (same). Because Claimants assert that the statute was violated by "Bank Defendants" acting "in their capacity as servicers," they have conceded the statute is inapplicable, and that they have no viable claim.

87.     Count 21 also fails to the extent any of California Litigation Claimants' loans are residential mortgage loans because numerous courts have concluded that a residential mortgage is not a "debt" under the Rosenthal Act.  See Morgera v. Countrywide Home Loans, Inc., Case No. 09-01476, 2010 WL 160348, at *3 (E.D. Cal. Jan. 11, 2010) ("California courts have declined to regard a residential mortgage loan as a 'debt' under the RFDCPA."); Sipe v. Countrywide Bank, Case No. 09-798, 2010 WL 2773253, *17 (E.D. Cal. July 13, 2010) ("The only 'debt' [defendant] is allegedly attempting to collect is a residential mortgage loan, which is not a debt under the Rosenthal Act.").

## VI.     THE SECOND AMENDED COMPLAINT'S ALLEGATIONS OF WRONGFUL FORECLOSURE (FIFTH CAUSE OF ACTION) ARE INSUFFICIENT TO STATE A CLAIM

88.     The California Litigation Claimants make several factual allegations regarding the foreclosure on certain of the California Litigation Claimants' properties that fail to establish any liability for wrongful foreclosure.  (See, e.g., Second Amended Complaint ¶¶ 367-399).  The allegations that the defendants "acted outrageously" and "persistently with actual malice" in conducting foreclosures are irrelevant and conclusory, devoid of any underlying facts that would support those conclusions.

89.     The California Litigation Claimants' Fifth Cause of Action (and its Counts 23 through 24) fails because it is asserted by persons other than those who have submitted proofs of claim herein.   Page 86, lines 15-19 of the Second Amended Complaint make clear that none

39

ny-1107957

of the California Litigation Claimants have asserted this claim; rather, this claim is brought by

persons who are strangers to the proofs of claim at issue here.

90.    The California Litigation Claimants argue that the defendants had no

power to foreclose on the Loans because the defendants were not the holders of the notes.  (See

Second Amended Complaint ¶ 367).  This allegation is incorrect as a matter of law and should be

rejected.  See Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 1156 (2011),

cert. denied, 132 S. Ct. 419 (2011) ("nowhere does the [nonjudicial foreclosure] statute provide

for a judicial action to determine whether the person initiating the foreclosure process is indeed

authorized, and we see no ground for implying such an action.").[32]  Further, "California's

statutory nonjudicial foreclosure scheme (§§ 2924–2924k) does not require that the foreclosing

party have a beneficial interest in or physical possession of the note."  Shuster v. BAC Home

Loans Servicing, LP, 211 Cal. App. 4th 505, 511 (2012); accord Jenkins v. JPMorgan Chase

Bank, N.A., 216 Cal. App. 4th 497 (2013); Debrunner, 204 Cal. App. 4th at 440 (2012) ("We . . .

see nothing in the applicable statutes that precludes foreclosure when the foreclosing party does

not possess the original promissory note.").

91.    Further, the California Litigation Claimants also base their arguments

relating to improper foreclosure on unsupported factual allegations that the notes were

improperly assigned.  (See Second Amended Complaint ¶¶ 367, 372(a), (c)).  "The assignment

of the debt (the promissory note), as opposed to the security (the [deed of trust]), commonly is

not recorded, [so] the lender could have assigned the note to the beneficiary in an unrecorded

---

[32]    The California Litigation Claimants' references to Article 3 of the Uniform Commercial Code, see Amended
Complaint ¶¶ 331-32, 334, is likewise unavailing and has been rejected by courts.  See Debrunner v. Deutsche
Bank Nat'l. Trust Co., 204 Cal. App. 4th 433, 440-41 (2012) ("Plaintiff's reliance on the Commercial Code
provisions pertaining to negotiable instruments is misplaced.  'The comprehensive statutory framework
established [in sections 2924 to 2924k] to govern nonjudicial foreclosure sales is intended to be exhaustive.'")
(citation omitted).

document not disclosed to plaintiffs." Herrera v. Fed. Nat'l Mortg. Ass'n, 141 Cal. Rptr. 3d 326,

334 (2012); accord Calvo v. HSBC Bank USA, N.A., 199 Cal. App. 4th 118 (2011) (assignment

of deed of trust need not be recorded in order to foreclose); see also Cal. Civ. Code § 2936 ("The

assignment of a debt secured by mortgage carries with it the security."); see, e.g., Cockerell v.

Title Ins. Co., 42 Cal. 2d 284, 289 (1954).  Applying the foregoing legal standard here, the

defendants therefore need not record an assignment of any such deed of trust or related

document.  Moreover, the Second Amended Complaint is devoid of any factual allegations

suggesting that the note was not properly assigned.[33]

### A.    California Litigation Claimants Fail to State a Claim For Violation of Civil Code § 2924 et seq.

92.    California Civil Code sections 2924 through 2924k sets forth a

comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a

power of sale contained in a deed of trust. Jenkins, 216 Cal. App. 4th at 508.  The California

Litigation Claimants' wrongful foreclosure claims fail to allege (i) prejudice and (ii) tender.

With respect to prejudice, "[a] nonjudicial foreclosure sale is presumed to have been conducted

regularly and fairly; one attacking the sale must overcome this common law presumption 'by

pleading and proving an improper procedure and the resulting prejudice.'" Knapp v. Doherty,

---

[33]    The California Litigation Claimants' allegations that MERS's status as beneficiary somehow taints the process is unfounded. (See Amended Complaint ¶¶ 129, 152, 303). Civil Code section 2924(a)(1) provides that "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents" may commence nonjudicial foreclosure. Cal. Civ. Code § 2924(a)(1).  Under this grant of authority, MERS is authorized to commence foreclosure proceedings on behalf of the lender, as held by numerous courts. Elliott v. Mortg. Elec. Registration Sys. Inc., Case No. 12-CV-4370 YGR, 2013 WL 1820904, at *3 (N.D. Cal. Apr. 30, 2013) ("MERS, as the nominee of the beneficiary, has the authority to foreclose and the authority to assign its beneficial interest to a third party."); Hensley v. Bank of New York Mellon, Case No. 1:10-CV-1316 AWI SMS, 2011 WL 2118810, at *3 (E.D. Cal. May 27, 2011) ("This contractual language [naming MERS the beneficiary in the deed of trust] is consistent with numerous cases in which courts have held that where MERS acts as a beneficiary under a deed of trust, it has the right to assign its interest."); Herrera, 205 Cal. App. 4th at 1498 ("The courts in California have universally held that MERS, as nominee beneficiary, has the power to assign its interest under a deed of trust. California Litigation Claimants granted MERS such authority by signing the deed of trust.").

123 Cal. App. 4th 76, 86, n.4 (2004) (citation omitted).  Accordingly, a borrower cannot set aside

a foreclosure sale unless the defect was prejudicial.  See, e.g., Herrera, 205 Cal. App. 4th at 335-

36; Debrunner, 204 Cal. App. 4th at 443.

93.    The Second Amended Complaint fails to include any statements that the

California Litigation Claimants did not default on their loans.  Therefore, the California

Litigation Claimants have not been and cannot point to any prejudice.  Moreover, as the

California Litigation Claimants acknowledge in the Second Amended Complaint, the Loans were

undersecured at the time of the foreclosures, (See Second Amended Complaint ¶¶ 80(q), 393-

394), and, therefore, the California Litigation Claimants could not have been prejudiced by

losing their respective property because such properties did not have any equity that would have

otherwise been available to the California Litigation Claimants.

94.    Second, "[a] valid and viable tender of payment of the indebtedness owing

is essential to an action to cancel a voidable sale under a deed of trust."  Karlsen v. Am. Savs. &

Loan Ass'n, 15 Cal. App. 3d 112, 117 (1971).  A party is "required to allege tender of the

amount of [the] secured indebtedness in order to maintain any cause of action for irregularity in

the sale procedure."  Abdallah v. United Savs. Bank, 43 Cal. App. 4th 1101, 1109 (1996).

California Litigation Claimants provide no facts indicating that any single individual tendered

the amounts of their defaults.  Therefore, the California Litigation Claimants fail to establish any

basis for a claim against the ResCap Defendants on account of any actions or inactions taken by

the Debtors in connection with the loans at issue.

## VII.    RESERVATION OF RIGHTS

95.    The Debtors, and any successor, further reserve all rights to object to one

or more of the California Litigation Claims on the ground that Purported Counsel lacked

standing and/or authority to assert such claims on behalf of the California Litigation Claimants.

ny-1107957

An agent filing a proof of claim on behalf of a creditor must "have express-and not merely implied-authority to do so." In re North Bay Gen. Hosp., Inc., 404 B.R. 443, 459 (Bankr. S.D. Tex. 2009). Indeed, "[t]he proof of claim form itself requires evidence of authority." 9 COLLIER ON BANKRUPTCY ¶ 3001.06 (16th ed. rev. 2012); but see In re Jensen, Case No. 09-14830 (MG), 2010 WL 424690 (Bankr. S.D.N.Y. Feb. 3, 2010). Accordingly, in at least one case involving facts similar to those present here–where one law firm asserted identical or nearly identical claims on behalf of seventy-one claimants without evidence of the law firm's authority to do so, the court authorized discovery regarding the law firm's authority to execute the proofs of claim. See Order Granting Relief and Directing Certain Discovery with Respect to Speights & Runyan, In re W.R. Grace & Co., Case No. 01-01139 (JFK) (Bankr. D. Del. Sept. 23, 2005) [Docket No. 9501]; see also In re W.R. Grace & Co., 366 B.R. 302, 304 (Bankr. D. Del. 2007). In addition to reserving their rights to object generally on all other grounds, the Debtors reserve their right to seek discovery regarding the basis of Purported Counsel's authority to file claims on behalf of the California Litigation Claimants and, if warranted, object based on the law firm's lack of appropriate authority.

## NOTICE

96.     The Debtors have provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Proposed Order

granting the relief requested herein and such other and further relief as the Court may deem

proper.

Dated: December 16, 2013

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
Daniel J. Harris
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*

-and-

Regina J. McClendon
LOCKE LORD LLP
44 Montgomery Street, Suite 4100w
San Francisco, California 94104
Telephone:    (415) 318-8810
Facsimile:    (415) 676-5816

*Special Litigation Counsel for the Debtors and
Debtors in Possession*

ny-1107957