Hearing Date: January 9, 2014 at 10:00 a.m. (EST)
Objection Deadline:  December 30, 2013 at 4:00 p.m. (EST)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------------------------- ) | | |
| In re: ) | | Case No. 12-12020 (MG) |
| ) | | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, ) | | Chapter 11 |
| ) | | |
| Debtors. ) | | Jointly Administered |
| ----------------------------------------------------------- ) | | |

**NOTICE OF HEARING ON DEBTORS' MOTION PURSUANT
TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 9019 APPROVING DEBTORS' ENTRY INTO SETTLEMENT
AGREEMENTS RELATED TO CERTAIN PENDING BORROWER
PUTATIVE CLASS ACTION LITIGATIONS, AND AUTHORIZING
<u>DEBTORS TO PERFORM OBLIGATIONS THEREUNDER</u>**

**PLEASE TAKE NOTICE** that, on December 16, 2013, the above-captioned debtors and

debtors in possession (collectively, the "<u>Debtors</u>") filed the *Debtors' Motion Pursuant to Section*

*105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Debtors' Entry into*

*Settlement Agreements Related to Certain Pending Borrower Putative Class Action Litigations,*

*And Authorizing Debtors to Perform Obligations Thereunder* (the "<u>Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held on the Motion before the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 501, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court") on **January 9, 2014 at 10:00 a.m. (Prevailing Eastern Time**), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any objection to the Motion must be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (General Order M-399 and the User's manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties-in-interest, on a 3.5 inch disk or CD-ROM, preferably in Portable Document Format, WordPerfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served in accordance with General Order M-399 and in accordance with this Court's order, dated May 23, 2012, implementing certain notice and case management procedures [Docket No. 141], so as to be received no later than **December 30, 2013 at 4:00 p.m. (Prevailing Eastern Time).**

ny-1113383

       **PLEASE TAKE FURTHER NOTICE** that if no objection to the Motion is timely filed

and served, the Bankruptcy Court may enter an order granting the relief requested in the Motion

without further notice or opportunity to be heard afforded to any party.

Dated:  December 16, 2013
       New York, New York

              /s/ Norman S. Rosenbaum
              Gary S. Lee
              Norman S. Rosenbaum
              Jordan A. Wishnew
              MORRISON & FOERSTER LLP
              1290 Avenue of the Americas
              New York, New York 10104
              Telephone: (212) 468-8000
              Facsimile: (212) 468-7900

              *Counsel for the Debtors and*
              *Debtors in Possession*

3

**Hearing Date: January 9, 2014 at 10:00 a.m. (EST)**
**Objection Deadline:  December 30, 2013 at 4:00 p.m. (EST)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ---------------------------------------------------------------- ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ---------------------------------------------------------------- ) | | |

**DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULE 9019**
**APPROVING DEBTORS' ENTRY INTO SETTLEMENT**
**AGREEMENTS RELATED TO CERTAIN PENDING**
**BORROWER PUTATIVE CLASS ACTION LITIGATIONS, AND**
<u>**AUTHORIZING DEBTORS TO PERFORM OBLIGATIONS THEREUNDER**</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

JURISDICTION AND VENUE...........................................................................................3

BACKGROUND .................................................................................................................3

    A.     General................................................................................................................3

    B.     The Cronk Class Action ..................................................................................5

    C.     The Throm Class Action .................................................................................6

    D.     The Gardner/Smith Class Actions ..................................................................7

    E.     The Peel Class Action .....................................................................................8

    F.     The Settlement Agreements ............................................................................9

RELIEF REQUESTED ......................................................................................................13

BASIS FOR RELIEF REQUESTED .................................................................................13

NOTICE .............................................................................................................................21

NO PRIOR REQUEST......................................................................................................21

CONCLUSION ..................................................................................................................21

ny-1113383

# TABLE OF AUTHORITES

**Page(s)**

CASES

*Chinichian v. Campolongo (In re Chinichian)*,
 784 F.2d 1440 (9th Cir. 1986) ............................................................................... 14

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
 699 F.2d 599 (2d Cir. 1983) .................................................................................... 15

*Fischer v. Pereira* (*In re 47-49 Charles St., Inc.*),
 209 B.R. 618 (S.D.N.Y. 1997) ................................................................................. 15

*In re Hibbard Brown & Co., Inc.*,
 217 B.R. 41 (Bankr. S.D.N.Y. 1998) ....................................................................... 15

*In re Ionosphere Clubs, Inc.*,
 156 B.R. 414 (S.D.N.Y. 1993) ................................................................................. 15

*In re Purofied Down Prods. Corp.*,
 150 B.R. 519 (S.D.N.Y. 1993) ................................................................................. 15

*In re Spielfogel*,
 211 B.R. 133 (Bankr. E.D.N.Y. 1997) ..................................................................... 15

*In re WorldCom, Inc.*,
 347 B.R. 123 (Bankr. S.D.N.Y. 2006) ..................................................................... 14

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
 478 F.3d 452 (2d Cir. 2007) .................................................................................... 16

*Nellis v. Shugrue*,
 165 B.R. 115 (S.D.N.Y. 1994) ................................................................................. 15

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972) .................................................................................... 15

*Pincus v. Graduate Loan Ctr. (In re Pincus)*,
 280 B.R. 303 (Bankr. S.D.N.Y. 2002) ..................................................................... 14

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
 390 U.S. 414 (1968) ................................................................................................ 15

STATUTES

11 U.S.C. § 105(a) ........................................................................................................... 14

Fed. R. Bankr. P. 9019(a) ........................................................................................................... 14

EXHIBIT 1 – Proposed Order

EXHIBIT 2 – Declaration of William R. Thompson

EXHIBIT 3 – Cronk Settlement Agreement

EXHIBIT 4 – Throm Settlement Agreement

EXHIBIT 5 – Gardner/Smith Settlement Agreement

EXHIBIT 6 – Peel Settlement Agreement

ny-1113383

**TO THE HONORABLE MARTIN GLENN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Residential Capital, LLC and each of its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"),[1] by and through their undersigned counsel, hereby submit this motion (the "Motion")[2] seeking entry of an order, substantially in the form annexed hereto as Exhibit 1 (the "Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the Debtors' entry into four (4) settlement agreements related to certain various pending borrower putative class action litigations, and authorizing the Debtors to perform their obligations thereunder.  In support of the Motion, the Debtors rely on the Declaration of William R. Thompson, dated December 16, 2013 (the "Thompson Declaration"), annexed hereto as Exhibit 2.  In further support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.    By this Motion, the Debtors request the Court's approval of four (4) settlement agreements with class action plaintiffs that, among other things, resolve and bring finality to long-standing litigations by fixing one-time cash payments to the plaintiffs and granting releases for the benefit of the Debtors and their estates.

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6].

[2] Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief requested in this Motion may refer to http://www.kccllc.net/rescap for additional information.

2.      The Borrower Class Action Claims[3] represented the largest potential exposure for

the Debtors from among the Borrower Claims.  *See* Direct Testimony of William R. Thompson

[Docket No. 5713 at ¶ 25].  Prior to the Petition Date (as defined below), certain of the Debtors

were defendants in putative class action litigations commenced by the named putative class

action plaintiffs seeking damages related to allegations concerning the Debtors' prepetition

mortgage loan servicing and origination practices.  As a result of these actions being stayed by

the commencement of the Debtors' chapter 11 cases, these putative plaintiffs filed substantial

proofs of claim (in the aggregate amount of approximately $247 million) against the Debtors on

behalf of themselves and the putative classes.  The Debtors propose to resolve such claims for

aggregate cash payments of $1.135 million.

3.      As described in greater detail herein, following lengthy negotiations over the

course of several months, the Debtors reached settlements with each of the named plaintiffs.

Under the terms of the settlement agreements, the Debtors fully resolved all of the issues

associated with the actions (and the associated proofs of claim) by agreeing to make one-time

cash payments to the various class action plaintiffs in exchange for releases, the dismissal of the

actions, and the expungement and/or withdrawal with prejudice of the associated proofs of claim.

Each of the settlement agreements is conditioned upon this Court approving the agreements,

confirmation of the recently-filed Chapter 11 Plan (as defined below), and the occurrence of the

effective date of the Chapter 11 Plan.  The Court recently confirmed the Chapter 11 Plan, and the

Plan Proponents expect the Chapter 11 Plan to become effective in short order.

4.      The Debtors believe that the proposed settlements are fair, reasonable, equitable

and in the best interests of the Debtors' estates and creditors, and represent the sound exercise of

---

[3] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Chapter 11 Plan (as defined below).

the Debtors' business judgment.  The terms and conditions of the settlements were reached after

extensive arm's-length negotiations between adequately represented parties, and the settlements

will resolve all of the remaining claims of the class action plaintiffs against the Debtors and

certain other released parties (a) for significantly less than what otherwise may be awarded

during trial and (b) without the need for complex, time consuming and expensive litigation, the

outcome of which would be uncertain.  Moreover, the settlement amounts are fair and reasonable

in light of: (a) the allegations made; (b) the fact that litigation of the claims addressed by the

settlements could ultimately result in greater recoveries for the class action plaintiffs than what

has been agreed upon under the settlement agreements; and (c) the necessary incurrence of

significant costs and expenses on the part of the Debtors' estates (or their successors under the

Chapter 11 Plan) attendant to the continued litigation of these matters before the Court.

5.       Accordingly, as discussed in greater detail herein, granting the relief requested

herein is in the best interests of the Debtors, their creditors and their estates.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.       Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.    GENERAL

8.       On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary

petition in this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors are

managing and operating their businesses as debtors in possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases are being jointly administered

pursuant to Bankruptcy Rule 1015(b).

ny-1113383

9.      On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors (the "Creditors' Committee") [Docket No. 102].

10.     On June 20, 2012, this Court directed that an examiner be appointed (the "Examiner"), and on July 3, 2012, this Court approved Arthur J. Gonzalez as the Examiner [Docket Nos. 454, 674].  On May 13, 2013, the Examiner filed his report under seal [Docket Nos. 3677, 3697].  On June 26, 2013, the report was unsealed and made available to the public [Docket No. 4099].

11.     On July 3, 2013, the Debtors and the Creditors' Committee (the "Plan Proponents") filed the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4153] and the *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4157] (the "Disclosure Statement").  On August 16, 2013, the Plan Proponents filed a revised Disclosure Statement, which included a revised copy of the plan filed on July 3, 2013 [Docket No. 4733], each of which were further revised on August 20, 2013 [Docket No. 4770] and August 23, 2013 [Docket No. 4819].  On August 23, 2013, the Court entered an order approving, *inter alia*, the Disclosure Statement, as amended [Docket No. 4809].

12.     On December 3, 2013, the Plan Proponents filed the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (as amended from time to time, the "Chapter 11 Plan").  The hearing to consider confirmation of the Chapter 11 Plan was held on November 19-22, and 25-26, 2013.  On December 11, 2013, parties appeared before the Court for closing arguments, and on

December 11, 2013, the Court entered an order confirming the Chapter 11 Plan [Docket No. 6065].

**B.       THE CRONK CLASS ACTION**

13.       On or about July 10, 2006, Elizabeth Cronk ("Cronk") executed a note (the "Cronk Note") in favor of First Acceptance Mortgage, secured by a mortgage (the "Cronk Mortgage") encumbering the real property commonly known as 447 Dunlin Plaza, Secaucus, New Jersey 07094.  *See* Thompson Declaration at ¶ 3.  The Cronk Note, Cronk Mortgage and associated origination documents are collectively referred to as the "Cronk Loan Documents," and set forth the terms of the Cronk loan (the "Cronk Loan").  The Cronk Loan Documents and the Cronk Loan were subsequently assigned to GMAC Mortgage, LLC, one of the Debtors ("GMACM").  *See id*.

14.       On August 12, 2011, Cronk, individually and purportedly on behalf of all others similarly situated, commenced a nationwide putative class action against GMACM styled as *Cronk v. GMAC Mortgage, LLC*, No. 2:11-cv-5161, in the United States District Court for the Eastern District of Pennsylvania (the "Cronk Action").  *See* Thompson Declaration at ¶ 4.  A class has not been certified in the Cronk Action.  *See id*.

15.       On November 15, 2012, Cronk filed a putative class action proof of claim in the amount of $35,000,000 in GMACM's chapter 11 case (identified as Claim No. 4911 on the Claims Register (as defined below)) (the "Cronk Claim").  *See* Thompson Declaration at ¶ 5. The Cronk Claim alleges that GMACM holds the Cronk Loan and has improperly purchased, and charged her for, flood insurance for her property.  *See id*.  Cronk did not file a motion to certify the Cronk Claim pursuant to Bankruptcy Rule 7023.

16.       GMACM denies liability for both the Cronk Action and the Cronk Claim.  *See* Thompson Declaration at ¶ 6.

C.    **THE THROM CLASS ACTION**

17.    On or about November 3, 1997, Vernon Throm and his wife, Agnes Throm,

executed a note (the "Throm Note") in favor of Manning Financial Group, secured by a

mortgage (the "Throm Mortgage") encumbering the real property commonly known as 138

Kildare Drive, Sebastian, Florida a/k/a Lot 14, Block 559, Sebastian Highlands, Unit 16.  *See*

Thompson Declaration at ¶ 7.  The Throm Note, Throm Mortgage and associated origination

documents are collectively referred to as the "1997 Throm Loan Documents," and set forth the

terms of the Throm loan (the "1997 Throm Loan").  The 1997 Throm Loan Documents and the

1997 Throm Loan were subsequently assigned to GMACM.  *See id.*  On or about August 25,

2010, Vernon Throm and his wife executed an Assumption of Liability Agreement with respect

to the 1997 Throm Loan Documents and the 1997 Throm Loan (the "Assumption Agreement")

and a Non-HAMP Loan Modification Agreement with respect to the 1997 Throm Loan

Documents and the 1997 Throm Loan (the "Modification Agreement").  *See id.*  The 1997

Throm Loan Documents, the Assumption Agreement, and the Modification Agreement are

collectively referred to as the "Throm Loan Documents," and set forth the terms of the Throm

loan (the "Throm Loan").

18.    On October 31, 2011, Dennis Throm (the son of Vernon and Agnes Throm,

"Throm"), individually and purportedly on behalf of all others similarly situated, commenced an

action against GMACM styled as *Throm v. GMAC Mortgage, LLC*, Case No. 2:11-cv-06813, in

the United States District Court for the Eastern District of Pennsylvania (the "Throm Action").

*See* Thompson Declaration at ¶ 8.  A class has not been certified in the Throm Action.  *See id.*

19.    On November 15, 2012, Throm filed a putative class action proof of claim in the

amount of $35,000,000 in GMACM's chapter 11 case (identified as Claim No. 4902 on the

Claims Register) (the "Throm Claim").  *See* Thompson Declaration at ¶ 9.  The Throm Claim

alleges that GMACM holds the Throm Loan and has improperly purchased, and charged him for,

flood insurance for his property.  *See id.*  Throm did not file a motion to certify the Throm Claim

pursuant to Bankruptcy Rule 7023.

20.    GMACM denies liability for both the Throm Action and the Throm Claim.  *See*

Thompson Declaration at ¶ 10.

**D.    THE GARDNER/SMITH CLASS ACTIONS**

21.    On October 20, 2010, Alan Gardner ("Gardner") filed a putative class action

against GMACM, captioned *Alan Gardner, et al. v. GMAC Mortgage, LLC*, Case No. 10-2-

36902-3 SEA (the "Gardner Action"), on behalf of borrowers in the State of Washington,

alleging that GMACM improperly recouped from borrowers fees that GMACM incurred to

record substitution of trustee or appointment of substitute trustee documents with county

recorders ("Substitution Recording Fees") when borrowers paid off loans serviced by GMACM.

*See* Thompson Declaration at ¶ 11.

22.    On March 18, 2011, Tiffany Smith ("Smith") filed a putative class action against

Homecomings Financial, LLC, one of the Debtors ("Homecomings"), captioned *Tiffany Smith, et*

*al. v. Homecomings Financial, LLC*, Case No. 11-2-10126-6 SEA (the "Smith Action" and,

together with the Gardner Action, the "Gardner/Smith Actions"), on behalf of borrowers in the

State of Washington, alleging that Homecomings improperly recouped from borrowers

Substitution Recording Fees when borrowers paid off loans serviced by Homecomings.  *See*

Thompson Declaration at ¶ 12.

23.    On October 23, 2012, plaintiffs' counsel in the Gardner/Smith Actions filed two

proofs of claim:  (a) an unsecured claim against GMACM in the amount of $1,926,222.33 on behalf

of the putative class in the Gardner Action (identified as Claim No. 2881 on the Claims Register)

(the "Gardner Claim") and (b) an unsecured claim against Homecomings in the amount of

ny-1113383

$740,591.98 on behalf of the putative class in the Smith Action (identified as Claim No. 2761 on

the Claims Register) (the "Smith Claim" and, together with the Gardner Claim, the

"Gardner/Smith Claims").  *See* Thompson Declaration at ¶ 13.  Gardner did not file a motion to

certify the Gardner Claim pursuant to Bankruptcy Rule 7023, and Smith did not file a motion to

certify the Smith Claim pursuant to Bankruptcy Rule 7023.

24.    GMACM denies liability for both the Gardner Action and the Gardner Claim.  *See*

Thompson Declaration at ¶ 14.  Similarly, Homecomings denies liability for both the Smith

Action and the Smith Claim.  *See id*.

## E.    THE PEEL CLASS ACTION

25.    Russ Debout, Michael Sanford, Marilyn Sanford and Desiree McIlrath (the "Peel

Plaintiffs")[4] obtained payment-option adjustable rate mortgage loans from BrooksAmerica

Mortgage Corporation ("BrooksAmerica") in late 2006 and early 2007.  *See* Thompson Declaration

at ¶ 15.  BrooksAmerica subsequently sold the Peel Plaintiffs' loans to Residential Funding

Company, LLC, one of the Debtors ("RFC").  *See id*.

26.    Currently pending in the United Stated District Court for the Central District of

California is a case styled *Timothy R. Peel, et al. v. BrooksAmerica Mortgage Corporation., et al*.,

Case No. 8:11-cv-00079-JST-RNB, removed from the Superior Court of Orange County,

California, Case No. 30-2010-00348134 (the "Peel Action").[5]  *See* Thompson Declaration at ¶ 16.

27.    In the Peel Action, the Peel Plaintiffs filed a "First Amended Class Action

Complaint," dated October 20, 2010, in which they brought putative class action claims against

---

[4]  The Peel Plaintiffs, together with Cronk, Throm, Gardner, Smith and all others similarly situated and/or whom
they purport to represent in the Actions (as defined below), shall be collectively referred to in this Motion as the
"Plaintiffs."

[5]  The Peel Action, together with the Cronk Action, the Throm Action, and the Gardner/Smith Actions, shall be
collectively referred to in this Motion as the "Actions").

8

RFC for alleged (a) fraudulent omissions in loan documents; (b) violation of California Business and Professions Code § 17200 ("UCL"); and (c) breach of contract. *See* Thompson Declaration at ¶ 17. The breach of contract claim was dismissed on RFC's motion to dismiss. *See id*.

28.    By motion filed April 12, 2012 in connection with the Peel Action, the Peel Plaintiffs moved to certify a class action on their UCL claim only. *See* Thompson Declaration at ¶ 18. On May 9, 2012, RFC filed its opposition to the Peel Plaintiffs' motion for class certification. *See id*. The Peel Plaintiffs withdrew their motion for class certification as against RFC on May 18, 2012. *See id*.

29.    On November 6, 2012, the Peel Plaintiffs, on behalf of themselves and the putative class, filed a proof of claim in the amount of $175,000,000 in RFC's chapter 11 case (identified as Claim No. 2530 on the Claims Register) (the "Peel Claim" and, collectively with the Cronk Claim, the Throm Claim, the Gardner/Smith Claims, the "Claims"). *See* Thompson Declaration at ¶ 19. The Peel Claim alleges the same facts alleged in the Peel Action. *See id*. The Peel Plaintiffs did not file a motion to certify the Peel Claim pursuant to Bankruptcy Rule 7023.

30.    RFC denies liability for both the Peel Action and the Peel Claim. *See* Thompson Declaration at ¶ 20.

## F.    THE SETTLEMENT AGREEMENTS

31.    Rather than lift the stay and allow the Actions to proceed either in the respective district or state courts and/or litigation of the Claims in this Court, over the course of several months, the Debtors and the Plaintiffs engaged in settlement negotiations and entered into settlement agreements resolving the various Actions and Claims. *See* Thompson Declaration at ¶ 21. The settlement agreements, among other things, resolve all of the Plaintiffs' claims against the Debtors with respect to the subject matter of the Actions and the Claims. *See id*. As noted in the direct testimony of William Thompson in support of confirmation of the Chapter 11 Plan, "in

addition, approximately six Borrower Class Action Claims have been or will be settled for direct

cash payments totaling approximately $1.3 million.  These claims will therefore not result in an

Allowed Borrower Class Action Claim, but for purposes of the Borrower Trust True-Up the

direct cash payments have been deducted from the total available funds … ."  *See* Direct

Testimony of William R. Thompson [Docket No. 5713 at ¶ 26].  The four Actions represent two-

thirds of the six actions referenced by Mr. Thompson, and account for almost ninety percent of

referenced cash payments.  The following are the salient terms of the various settlement

agreements.[6]

32.    The Cronk Settlement Agreement.  Pursuant to that Settlement and Release

Agreement by and between GMACM and Cronk (the "Cronk Settlement Agreement"), a copy of

which is annexed hereto as Exhibit 3, GMACM has agreed to make a cash payment to Cronk of

$30,000.00 and an additional cash payment to Cronk's counsel of $95,000.00, for a total cash

payment of $125,000.00 (the "Cronk Settlement Amount").  *See* Thompson Declaration at ¶ 22.

Cronk agrees to dismiss the Cronk Action with prejudice and without costs upon payment of the

Cronk Settlement Amount.  *See id*.  Upon the effectiveness of the Cronk Settlement Agreement,

the Debtors may take any and all steps to expunge the Cronk Claim from the Debtors' claims

register (the "Claims Register").  *See id*.  Cronk, for and on behalf of herself and, among others,

her successors, assigns and all other persons who could claim through them, unconditionally and

irrevocably releases GMACM and, among others, all entities related to GMACM, from the

Cronk Claim and any and all other claims relating to GMACM's flood insurance requirements,

policies and practices, whether or not they could have been asserted in the Cronk Action or the

---

[6] The descriptions of the terms of the settlement agreements provided in this Motion are intended as summaries only.
To the extent that such descriptions differ in any respect from the terms of the settlement agreements, the terms of
the settlement agreements shall govern.

Cronk Claim, which Cronk has or may have through and including the Effective Date of the

Chapter 11 Plan (the "Effective Date"). *See id*.

33.    The Throm Settlement Agreement.  Pursuant to that Settlement and Release

Agreement by and between GMACM and Throm (the "Throm Settlement Agreement"), a copy

of which is annexed hereto as Exhibit 4, GMACM has agreed to make a cash payment to Throm

of $30,000.00 and an additional cash payment to Throm's counsel of $95,000.00, for a total cash

payment of $125,000.00 (the "Throm Settlement Amount").  *See* Thompson Declaration at ¶ 23.

Throm agrees to dismiss the Throm Action with prejudice and without costs upon payment of the

Throm Settlement Amount.  *See id*.  Upon the effectiveness of the Throm Settlement Agreement,

the Debtors may take any and all steps to expunge the Throm Claim from the Claims Register.

*See id*.  Throm, for and on behalf of himself and, among others, his successors, assigns and all

other persons who could claim through them, unconditionally and irrevocably releases GMACM

and, among others, all entities related to GMACM, from the Throm Claim and any and all other

claims relating to GMACM's flood insurance requirements, policies and practices, whether or

not they could have been asserted in the Throm Action or the Throm Claim, which Throm has or

may have through and including the Effective Date.  *See id*.

34.    The Gardner/Smith Settlement Agreement.  Pursuant to that Amended Class

Action Settlement Agreement between and among GMACM, Homecomings, and Gardner and

Smith (on behalf of themselves and a settlement class proposed for certification solely for

settlement purposes) (the "Gardner/Smith Settlement Agreement"), a copy of which is annexed

hereto as Exhibit 5, GMACM and Homecomings have agreed to deliver the sum of $285,000.00

(the "Gardner/Smith Settlement Amount") to counsel for GMACM and Homecomings, as

escrow agent, to be held for further disbursement in accordance with the terms of the

Gardner/Smith Settlement Agreement. *See* Thompson Declaration at ¶ 24. Upon the effective

date of the Gardner/Smith Settlement Agreement, the Gardner/Smith Actions shall be dismissed

with prejudice and without an award of costs or fees except as expressly provided in the

Gardner/Smith Settlement Agreement. *See id*. In addition, no later than five business days after

the effective date of the Gardner/Smith Settlement Agreement, Gardner and Smith shall

withdraw the Gardner/Smith Claims. *See id*. Upon the effective date of the Gardner/Smith

Settlement Agreement, Gardner, Smith and each Settlement Class Member (as defined in the

Gardner/Smith Settlement Agreement), among others, will be deemed to have completely and

unconditionally released GMACM and Homecomings, among others, from any and all of the

Settled Class Claims (as defined in the Gardner/Smith Settlement Agreement), including

Unknown Class Claims (as defined in the Gardner/Smith Settlement Agreement) and the

Gardner/Smith Claims.[7] *See id*.

     35. <u>The Peel Settlement Agreement</u>. Pursuant to that Settlement and Release

Agreement by and among RFC and the Peel Plaintiffs (the "<u>Peel Settlement Agreement</u>" and,

collectively with the Cronk Settlement Agreement, the Throm Settlement Agreement and the

Gardner/Smith Settlement Agreement, the "<u>Settlement Agreements</u>"), a copy of which is

annexed hereto as <u>Exhibit 6</u>, RFC, or its successor in interest under the Chapter 11 Plan, has

agreed to pay to the Peel Plaintiffs and their counsel, collectively, the total sum of $600,000.00,

which shall be inclusive of all legal fees and expenses payable to counsel to the Peel Plaintiffs

(the "<u>Peel Settlement Amount</u>"). *See* Thompson Declaration at ¶ 25. The Peel Plaintiffs agree to

---

[7] The Gardner/Smith Settlement Agreement also contains provisions regarding, among other things, certification of the settlement class solely for settlement purposes, notice to the settlement class, opt out rights, and the process for payment of the Gardner/Smith Settlement Amount, all as described in detail in the Gardner/Smith Settlement Agreement. In addition, approval of the Superior Court of Washington is required with respect to the Gardner/Smith Settlement Agreement.

dismiss the Peel Action as against RFC in its entirety, with prejudice, as to the Peel Plaintiffs'

individual claims, and without prejudice as to the claims brought on behalf of the putative class,

within three (3) days after execution of the Peel Settlement Agreement and the Peel Settlement

Amount has been tendered to the Peel Plaintiffs' counsel. *See id*. In addition, upon tender of the

Peel Settlement Amount, the Peel Claim will be deemed withdrawn and expunged in its entirety.

*See id*. Other than the obligations of RFC under the Peel Settlement Agreement, and in

consideration thereof, the Peel Plaintiffs, for themselves and, among others, their successors and

assigns, fully release RFC, among others, from any and all claims, including the Peel Claim, in

any way relating to or arising out of the Peel Action. *See id*.

## RELIEF REQUESTED

36.    By this Motion, the Debtors seek entry of an order, substantially in the form of the

Order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving

the Debtors' entry into the Settlement Agreements, and authorizing the Debtors to perform their

obligations thereunder.

## BASIS FOR RELIEF REQUESTED

37.    As noted, the Debtors and the Plaintiffs engaged in settlement negotiations and

entered into settlement agreements resolving the various Actions and Claims subject to, among

other things, approval of this Court. *See* Thompson Declaration at ¶ 21.   The Settlement

Agreements resolve all of the Plaintiffs' claims against the Debtors with respect to the subject

matter of the Actions and the Claims. *See id*.   The Debtors have determined, in their sound

business judgment, that the proposed resolutions, as embodied in the Settlement Agreements, are

fair, reasonable, equitable, and in the best interests of the Debtors' estates and their creditors.

38.    Section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad

powers in the administration of a case under the Bankruptcy Code.  Section 105(a) provides that

ny-1113383

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Provided that a bankruptcy

court does not employ its equitable powers to achieve a result not contemplated by the

Bankruptcy Code, the exercise of its section 105(a) power is proper.  *Pincus v. Graduate Loan

Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a

court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.

*See, e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986)

("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant

to the purposes of the Bankruptcy Code.").

      39.     Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-

possession] and after notice and a hearing, the court may approve a compromise or settlement."

Fed. R. Bankr. P. 9019(a); *see In re WorldCom, Inc.*, 347 B.R. 123, 136-37 (Bankr. S.D.N.Y.

2006) ("The decision whether to approve a compromise is within the discretion of the

bankruptcy court and can only be reversed for abuse of such discretion").  In granting a motion

pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and

is in the best interests of the estate.  *Protective Comm. for Indep. Stockholders of TMT Trailer

Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fischer v. Pereira* (*In re 47-49 Charles St.,

Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426

(S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994).

      40.     The decision to approve a particular settlement lies within the sound discretion of

the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *In re Ionosphere

Clubs, Inc.*, 156 B.R. at 426-27.  It is the responsibility of the court to examine a settlement and

determine whether it "'fall[s] below the lowest point in the range of reasonableness.'"  *Cosoff v.

14

*Rodman*, (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983) (internal citation omitted); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). However, it should be noted that the Court's analysis is not a mechanical process, but rather contemplates a "range of reasonableness . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Additionally, discretion should be exercised by the bankruptcy court "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *Shugrue*, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged . . . .").

41.    To approve a proposed settlement, the Court need not definitively decide the numerous issues of law and fact raised by the settlement. Rather, the Court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d at 608 (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying [dispute].").

42.    In deciding whether a particular settlement falls within the "range of reasonableness," courts consider the following "*Iridium*" factors: (a) "the balance between the litigation's possibility of success and the settlement's future benefits"; (b) "the likelihood of complex and protracted litigation, 'with its attendant expense, inconvenience, and delay'"; (c) "'the paramount interests of the creditors'"; (d) "whether other parties in interest support the settlement"; (e) "'the nature and breadth of releases to be obtained by officers and directors'"; (f) "the 'competency and experience of counsel' supporting, and '[t]he experience and knowledge

of the bankruptcy court judge' reviewing, the settlement"; and (g) "'the extent to which the

settlement is the product of arm's length bargaining.'" *Motorola, Inc. v. Official Comm. of*

*Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (internal

citations omitted).

43.     The Debtors respectfully submit that the *Iridium* factors weigh in favor of this

Court's approval of the Debtors' entry into each of the Settlement Agreements.  Under the

Settlement Agreements, the Debtors will resolve the claims of the Plaintiffs for considerably less

than what otherwise may be awarded to the Plaintiffs by the district or state courts in which the

Actions are pending or by this Court following a determination of the Claims.  Moreover, the

terms and conditions of the Settlement Agreements were reached after arm's-length negotiations

between the parties, and the Settlement Agreements resolve actual disputes and controversies

that, if permitted to continue, would involve protracted and expensive litigation as well as

consume the valuable time and efforts of the Debtors and their professionals.

> *(i)     The Balance Between the Actions' Possibility of Success and the*
> *Settlement Agreements' Future Benefits*

44.     The Settlement Agreements are the result of arm's-length negotiations between

sophisticated parties.  As part of these negotiations, the Debtors concluded that each of the Cronk

Settlement Amount, the Throm Settlement Amount, the Gardner/Smith Settlement Amount, and

the Peel Settlement Amount (collectively, the "Settlement Amounts") was reasonable based on

their assessment of the possibility of success of the underlying Actions and the benefits of the

settlements.  *See* Thompson Declaration at ¶ 26.  If the Settlement Agreements are not

effectuated and the Debtors were to proceed with objecting to the Claims related to the matters at

issue in the Actions, then the Debtors would risk the allowance of claims and, ultimately,

distributions under the Chapter 11 Plan at least similar to and possibly substantially higher than

the Settlement Amounts. *See id*. Therefore, the Debtors believe that the Settlement Amounts reflect the Debtors' reasonable assessment of the risk, as well as the substantial expense of litigation, balanced against the benefits to all parties of a consensual resolution of the Actions.

45.    The Debtors submit that the complexity of the Actions, the difficulty inherent in predicting the success of either party with respect to any particular disputed issue, and the risks and unnecessary distractions associated with complex and protracted litigation of various individual proofs of claim render the Settlement Agreements particularly reasonable and appropriate.  Indeed, as an initial matter, this Court would have to determine whether to permit the Plaintiffs to prosecute proofs of claim on behalf of the respective classes under Bankruptcy Rules 9014 and 7023.

46.    Accordingly, the Settlement Agreements provide certainty to the Debtors and their creditors with respect to the Claims.  If, however, the Settlement Agreements are not approved and the Plaintiffs achieve a greater recovery through their continued litigation in this Court of the underlying issues in the district or state courts (or continued litigation in the district or state courts themselves), then recovery by the Debtors' other creditors, specifically the holders of Borrower Claims under the Chapter 11 Plan, may be diluted.

47.    In short, although the potential outcome of the Actions after lengthy litigation and the claims resolution process could be more or less than the Settlement Amounts, the costs and uncertainty of such litigation make the proposed settlements a more efficient and reasonable way to resolve these claims that is in the best interests of all parties, including the Debtors' estates and creditors.

### (ii)    *Likelihood of Complex and Protracted Litigation*

48.    If the Settlement Agreements are not approved and the Debtors have to litigate the issues involved in the Actions (either in the respective district or state courts or in this Court

through the claims resolution process), then the time and resources to be expended litigating the substance of those claims would be substantial.  *See* Thompson Declaration at ¶ 27.  Based on the duration and complexity of the Actions (and the associated Claims), the Debtors estimate that if they litigated the issues involved, they would expend fees and expenses in connection with the Actions comparable to, and in all likelihood much greater than, the aggregate Settlement Amounts.  *See id.*  Accordingly, the substantial estimated legal fees and expenses that would be incurred in the event the Debtors had to litigate the Actions (and the associated Claims) alone -- when compared to the amount of the one-time cash payments proposed by the Settlement Agreements (*i.e.*, $125,000.00 in connection with the Cronk Settlement Agreement; $125,000.00 in connection with the Throm Settlement Agreement; $285,000.00 in connection with the Gardner/Smith Settlement Agreement; and $600,000.00 in connection with the Peel Settlement Agreement) -- justify the Debtors' entry into the Settlement Agreements.

49.    Moreover, as with any litigation, the Debtors risk facing substantially greater damages than what is being agreed to in the Settlement Agreements.  For instance, if the Settlement Agreements are not effectuated and the Plaintiffs were to succeed in their prosecution of Claims related to the Actions (even in part), the Debtors could face allowed claims in substantial multiples of the aggregate Settlement Amounts and in an uncertain magnitude.  *See* Thompson Declaration at ¶ 28.  The Plaintiffs have asserted Claims of approximately $247 million (*i.e.*, $35,000,000 with respect to the Cronk Claim; $35,000,000 with respect to the Throm Claim; $2,666,814.31 with respect to the Gardner/Smith Claims; and $175,000,000 with respect to the Peel Claim).  *See id.*  If the Plaintiffs were to succeed, even in part, with respect to their respective Claims, the corresponding cash distributions on such allowed claims could easily well exceed the one-time cash payments aggregating $1,135,000 as provided for in the

Settlement Agreements (*i.e.*, $125,000.00 in connection with the Cronk Settlement Agreement; $125,000.00 in connection with the Throm Settlement Agreement; $285,000.00 in connection with the Gardner/Smith Settlement Agreement; and $600,000.00 in connection with the Peel Settlement Agreement). *See id.*

<strong><em>(iii)    The Paramount Interests of Creditors</em></strong>

50.    Approval of the proposed Settlement Agreements also is in the best interests of the Debtors and their creditors because the Settlement Agreements resolve the Plaintiffs' claims in the Actions in the most cost effective manner reasonably available, and on terms that the Debtors submit are fair and reasonable.  The Debtors do not believe that the Plaintiffs would agree to resolutions on better terms than what are presently before the Court.  *See* Thompson Declaration at ¶ 29.  Moreover, in addition to the risk of substantially larger exposure, the Debtors (or their successors under the Chapter 11 Plan) would incur significant litigation costs, and face the risk of a multitude of claims substantially in excess of the Settlement Amounts.  *See id.*

51.    The Settlement Agreements also provide certainty and enormous benefits to all Borrowers.  By quantifying and fixing the Debtors' exposure to the Plaintiffs in the Actions, the Debtors have capped their exposure, identified the fixed amount to be deducted from the aggregate funding being provided to the Borrower Claims Trust, and potentially expedited the timing of distributions to holders of Allowed Borrower Claims.  *See* Thompson Declaration at ¶ 30.  As a result, approval of the Settlement Agreements will not require the trustee for the Borrower Claims Trust to reserve substantial sums until the Actions are resolved; rather, the settlements provide parties with certainty while limiting the sums to be deducted from the funding for the Borrower Claims Trust.  *See id.*

19

> ### (iv)    *The Nature of the Releases to be Obtained by the Debtors' Officers and Directors*

52.    According to the terms of the Settlement Agreements, the released persons include, among other parties, GMAC's, Homecomings' or RFC's (as the case may be) past, present and future officers and directors, as well as various other Debtor and non-debtor entities.[8] *See* Thompson Declaration at ¶ 31.  The inclusion of non-debtor parties, including, without limitation, such officers and directors was a business decision and good practice to ensure that such related entities are protected from incurring liabilities relating to the claims asserted against the Debtors solely in connection with the Actions.  *See id.*

> ### (v)    *The Competency of Counsel and the Extent to Which the Settlement Agreements are the Result of Arm's-Length Bargaining*

53.    For the reasons stated above, the Debtors believe that the paramount interests of all parties are best served by approval of the Settlement Agreements.  Moreover, the Settlement Agreements also satisfy two additional *Iridium* factors because (a) the Settlement Agreements were negotiated separately between the Debtors and the Plaintiffs, without collusion, in good faith, and from arm's-length bargaining positions and (b) all parties were represented by experienced and sophisticated counsel.  *See* Thompson Declaration at ¶ 32.

## NOTICE

54.    Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the Office of the United States Attorney General; (c) the Office of the New York Attorney General; (d) the Office of the United States Attorney for the Southern District of New York; (e)

---

[8] The persons and entities covered by the releases under the Settlement Agreements are set forth therein.

the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) each of the

Debtors' prepetition lenders, or their agents, if applicable; (h) each of the indenture trustees for

the Debtors' outstanding notes issuances; (i) Ally Financial Inc.; (j) Barclays Bank PLC, as

administrative agent for the lenders under the debtor in possession financing facility; (k) Ocwen

Loan Servicing, LLC and its counsel; (l) the Creditors' Committee; (m) the Plaintiffs and their

counsel; and (n) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors

submit that, in view of the facts and circumstances, such notice is sufficient and no other or

further notice need be provided.

## NO PRIOR REQUEST

55.     No prior motion for the relief requested herein has been made to this Court or any

other court.

## CONCLUSION

56.     In sum, for the reasons set forth herein and in the Thompson Declaration, the

Debtors have determined, exercising their sound business judgment, that the Settlement

Agreements are fair, eminently reasonable, equitable, and in the best interests of the Debtors'

estates and creditors, thereby satisfying the standards of Bankruptcy Rule 9019 and relevant case

law.  The timely resolution of the Actions and the associated Claims is in the best interests of the

Debtors and their creditors.  The Debtors therefore submit that the Settlement Agreements are

well within the range of reasonableness -- and certainly not "'below the lowest point in the range

of reasonableness.'"  *W.T. Grant Co.*, 699 F.2d at 608 (internal citation omitted).  Accordingly,

the Debtors respectfully request that the Court approve each of the Settlement Agreements

pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**WHEREFORE**, the Debtors respectfully request entry of the Order granting the relief

requested herein and such other and further relief as the Court may deem just and proper.

ny-1113383

Dated:  New York, New York
         December 16, 2013

                                    Respectfully submitted,

                                    /s/ Norman S. Rosenbaum
                                    Gary S. Lee
                                    Norman S. Rosenbaum
                                    Jordan A. Wishnew

                                    MORRISON & FOERSTER LLP
                                    1290 Avenue of the Americas
                                    New York, New York 10104
                                    Telephone: (212) 468-8000
                                    Facsimile: (212) 468-7900

                                    *Counsel for the Debtors and
                                    Debtors in Possession*

ny-1113383