# EXHIBIT 6

## Peel Settlement Agreement

Execution Version

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and among RUSS BEBOUT, MICHAEL SANFORD, MARILYN SANFORD and DESIREE MCILRATH ("Plaintiffs") on the one hand, and RESIDENTIAL FUNDING COMPANY, LLC ("Defendant" or "RFC") on the other (Plaintiffs and Defendant are collectively referred to as the "Party" or "Parties" depending on context).

## RECITALS

This Agreement is made and entered into by the Parties with reference to the following facts.

A. Currently pending in the United Stated District Court for the Central District of California is a case styled *Timothy R. Peel, et al. v. BrooksAmerica Mortgage Corporation., et al*., Case No. 8:11-cv-00079-JST-RNB, removed from the Superior Court of Orange County, California, Case No. 30-2010-00348134 (the "Action").

B. Plaintiffs obtained payment-option adjustable rate mortgage loans ("Option ARM Loans") from BrooksAmerica Mortgage Corporation ("BrooksAmerica") in late 2006 and early 2007. BrooksAmerica subsequently sold Plaintiffs' loans to RFC.

C. In the Action, Plaintiffs filed a "First Amended Class Action Complaint," dated October 20, 2010 ("FAC"), in which they brought putative class action claims against RFC for alleged (1) fraudulent omissions in loan documents; (2) violation of California Business and Professions Code § 17200 ("UCL"); and (3) breach of contract. The breach of contract claim was dismissed on RFC's motion to dismiss.

D. By Plaintiffs' "Notice of Motion and Motion for Class Certification; Memorandum of Points and Authorities in Support of Motion for Class Certification," filed April 12, 2012, Plaintiffs moved to certify a class action on their UCL claim only (*see* Action, Dkt. No. 92, MPA at 2, n.2), and sought to certify a class of "All individuals who obtained an Option ARM Loan from January 16, 2004 through the date that notice is mailed to the Class, which loan (1) was acquired by [RFC] by paying all or part of the sale price to the lender that maintained the originating entity's line of credit; (2) was secured by real property in the State of California; (3) was not originated by a national bank, federal savings association, or an affiliate, division, subdivision, predecessor, or parent of RFC; and (4) had the following characteristics: (a) the 'Interest Rate' paragraph of the Note (¶ 2) states both (i) a 'yearly' Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate 'may' rather than 'will' change; (b) the 'Initial Monthly Payment' listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the 'Initial Monthly Payment' 'will' result in negative amortization or deferred interest. Excluded from this Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives, located in the United States of America." (Action, Dkt. No. 92, MPA at 3.)

ny-1112245

E. On May 9, 2012, RFC filed its opposition to Plaintiffs' Motion for Class Certification. (Action, Dkt. No. 106.)

F. On May 14, 2012, Residential Capital, LLC and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), including RFC, filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors' Chapter 11 cases are being jointly administered and indexed at Case No. 12-12020 (MG) (the "ResCap Bankruptcy").

G. On May 18, 2012, RFC filed a notice of bankruptcy stay in light of the ResCap Bankruptcy. (Action, Dkt. No. 115.)

H. Plaintiffs withdrew their Motion for Class Certification as against RFC on May 18, 2012. (Action, Dkt. No. 116.)

I. On November 6, 2012, Plaintiffs on behalf of themselves and the putative class filed a proof of claim assigned claim number 2530 (the "Claim") in the RFC Chapter 11 case in the amount of $175,000,000. The Claim alleges the same facts alleged in the Action.

J. The Debtors are seeking approval from the Bankruptcy Court of a Joint Chapter 11 Plan [Case No. 12-12020 Dkt. # 4153] as the same may be modified or amended from time (the "Plan"), and once the Plan is confirmed by the Bankruptcy Court, will then seek to implement the terms of the Plan upon the occurrence of the "Effective Date" of the Plan as such term is defined in the Plan (hereafter, the "Effective Date" shall be referred to as the "Plan Effective Date").

K. Each Party denies all allegations, claims and defenses made by the other Parties in the Action. RFC denies that it violated any applicable laws or committed any wrongdoing with respect to Plaintiffs or any member of the putative class alleged by Plaintiffs and RFC denies liability with respect to the Claim.

L. The Parties desire to settle the claims on the terms and conditions set forth below in order to avoid the burden, expense, and uncertainty of continuing litigation.

## AGREEMENT

THEREFORE, in consideration of the facts and general releases and promises contained herein, and for other good and valuable consideration, the receipt of which is acknowledged by each Party hereto, the Parties promise and agree as follows:

1. Approval of Agreement in the ResCap Bankruptcy. The Parties agree, acknowledge, and understand that this Agreement is subject to (a) Bankruptcy Court approval, (b) confirmation of the Plan, (c) the occurrence of the Plan Effective Date, (d) necessary board approvals, and (e) the approval of the Creditors' Committee, and shall be of no force or effect until each such condition is satisfied (the "Bankruptcy Conditions"). At

2

ny-1112245

RFC's request, Plaintiffs shall reasonably cooperate with RFC in obtaining approval of this Agreement in the ResCap Bankruptcy case.

2. <u>Performance by RFC.</u>  RFC, or its successor in interest under the Plan, will pay to the Plaintiffs and their counsel, collectively, the total sum of six hundred thousand dollars ($600,000.00) by check, which sum shall be inclusive of all legal fees and expenses payable to counsel to the Plaintiffs.  The check will be made payable to "Berns Weiss LLP for the Benefit of Russ Bebout, Michael Sanford, Marilyn Sanford, and Desiree Mcilrath."  Provided that the other Bankruptcy Conditions are satisfied, RFC, or its successor in interest, shall pay, or provide for the payment of, these funds within 10 business days of the occurrence of the Plan Effective Date so long as RFC has received a fully executed form W-9 from Berns Weiss LLP.

3. <u>Dismissal of the Action and Withdrawal of the Claim.</u>  Plaintiffs will dismiss the Action as against RFC in its entirety, with prejudice, as to Plaintiffs' individual claims, and without prejudice as to the claims brought on behalf of the putative class, within three (3) days after the Parties have executed this Agreement and the settlement funds have been tendered to Berns Weiss LLP, using the form of the stipulated dismissal attached hereto as Exhibit A.  In addition, upon the tender of the settlement funds, the Claim will be deemed withdrawn and expunged in its entirety without further order of the Bankruptcy Court or action of the Debtors.

4. <u>Treatment of Claim for Voting Purposes</u>.  Pursuant to Federal Rule of Bankruptcy Procedure 3018(a), upon execution of this Agreement, the Claim is temporarily allowed in the amount of $1.00 against RFC for purposes of voting on the Plan and determining the Borrower Trust True-Up (as defined in the Plan).  The Plaintiffs agree, so long as their vote has been solicited in a manner sufficient to comply with the requirements of section 1125 and 1126 of the Bankruptcy Code, including the receipt of the disclosure statement, to (a) vote (to the extent entitled to vote) to accept the Plan by delivering a duly executed and completed ballot accepting the Plan on a timely basis; and (b) not change or withdraw (or cause to be changed or withdrawn) such vote in favor of the Plan and the release and exculpation provisions contained therein.

5. <u>Costs and Attorneys' Fees.</u>  Except to the extent the lump sum payment to Plaintiffs set forth in Paragraph 2 hereof is contemplated to be an amount that is inclusive of attorneys' fees, each Party shall bear his/its own costs, expenses and attorneys' fees in this matter.  If any Party brings a motion or suit to enforce or interpret any provision of this Agreement, the prevailing Party shall be entitled to recover his/its reasonable attorneys' fees in addition to all other costs allowed by law.

6. <u>Confidentiality.</u>  Pending the filing of RFC's motion with the Bankruptcy Court to approve this Agreement, Plaintiffs and their counsel agree that all terms and conditions of this Agreement, including the amount set forth in Paragraph 1, the history and background leading to this Agreement, and all negotiations or discussions of any kind relating to the settlement resulting in this Agreement are to be kept strictly confidential and private in all

3

ny-1112245

respects and shall not be disclosed, made public, disseminated, released, or otherwise referenced, alluded to, or suggested, directly or indirectly, to any person or entity in any manner whatsoever, other than to Plaintiffs' accountants, tax professionals and/or legal counsel.  If asked, Plaintiffs and their counsel may state that there was a dispute between the parties that was resolved amicably without disclosing any details.  This provision does not limit Plaintiffs or their counsel from disclosing the terms of this settlement, including the surrounding negotiations, where such disclosure is required by a subpoena or ordered by a court of competent jurisdiction.  If Plaintiffs or their counsel are required by a subpoena or court order to disclose the terms of this settlement, they will notify RFC, through its counsel in the Action, at least seven (7) business days prior to any disclosure being made.  This confidentiality provision and agreement is a material term of this Agreement, breach of which Plaintiffs hereby agree will cause RFC irreparable harm.  It is expressly understood and agreed by Plaintiffs that this provision in no way restricts or prohibits RFC from disclosing this Agreement or its terms to any third party or disclosing the terms of this Agreement, including a complete copy thereof, for purposes of obtaining Bankruptcy Court approval of the Agreement.

7.   Release.  Other than the obligations of RFC under this Agreement, and in consideration of this Agreement, Plaintiffs, for themselves and each of their heirs, executors, administrators, predecessors, agents, servants, employees, owners, shareholders, officers, directors, partners, associates, attorneys, representatives, insurers, members, successors and assigns, or any parent organizations, subsidiaries, affiliates or divisions, past, present or future, hereby fully release, acquit and discharge RFC and each of its executors, administrators, predecessors, agents, servants, employees, owners, shareholders, officers, directors, partners, associates, members, attorneys, representatives, insurers, successors and assigns, or any parent organizations, subsidiaries, affiliates or divisions, past, present or future from any and all claims, liens, demands, rights, actions, causes of action of any kind including the Claim, whether at law or in equity, liabilities, damages, losses, costs, fees (including attorneys' fees) and expenses of any nature, known or unknown, in any way relating to or arising out of the Action.  The release stated above shall be and remain effective despite any discovery by Plaintiffs of facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the release.

It is the intention of the Parties that this Agreement shall be effective as a full and final release of each and every of Plaintiffs' claims against RFC, and in furtherance of this intention, Plaintiffs hereby expressly waive the provisions of California Civil Code section 1542 or any similar state or federal law, which provides that:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Plaintiffs acknowledge, warrant and represent that the effective import of this provision has been fully explained to them by their attorneys, and Plaintiffs specifically waive and

4

ny-1112245

relinquish any right or benefit which they may have under any law similar to California Civil Code section 1542 to the full extent they may lawfully waive such right or benefit. In connection with such waiver and relinquishment Plaintiffs acknowledge that they fully understand that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention hereby to fully, finally and forever release the claims, released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future and heretofore have existed, and that in furtherance of such intention, the release given herein shall be and remains in effect as a full and complete release of the matters released herein, notwithstanding the discovery or existence of any such additional or different facts.

8. <u>Release, Limitations.</u>  This Agreement does not release:  (1) claims arising out of the failure of any Party to perform in conformity with the terms of this Agreement; or (2) any future disputes between the Parties, including their successors and assigns, which arise out of or relate to the Parties' continuing relationship, if any.

9. <u>Tax Consequences.</u>  The Parties understand and acknowledge that no Party has warranted or represented any tax consequences of this Agreement, and each Party agrees that it is relying on its own legal and/or tax advisors and not on any other Party with respect to any tax consequences of this Agreement.

10. <u>No Admission of Liability.</u>  This Agreement is entered into by the Parties for the purpose of compromising and settling the dispute and Action between them.  This Agreement does not constitute, and shall not be construed as, an admission by either Party of the truth or validity of any claims asserted or contentions advanced by the other Party.

11. <u>Choice of Law.</u>  This Agreement is entered into in the State of California and the Agreement and any rights, remedies, or obligations provided for in this Agreement shall be construed and enforced in accordance with the laws of that state.

12. <u>Construction of Agreement.</u>  This Agreement shall be construed as a whole according to its fair meaning and as if both Parties jointly prepared it.  Any uncertainty or ambiguity in the Agreement shall not be strictly interpreted or construed against either Party.

13. <u>Severability.</u>  The provisions of this Agreement are severable.  If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, unenforceable or void for any reason whatsoever, each such portion, provision or part shall be severed from the remaining portions, provisions or parts of this Agreement and shall not affect the validity or enforceability of any remaining portions, provisions or parts.

14. <u>No Oral Modification.</u>  This Agreement shall not be altered, amended, or modified by oral representation made before or after the execution of this Agreement. All modifications must be in writing and duly executed by all Parties.

15. <u>Representations, Indemnifications.</u>  Plaintiffs represent and warrant that they are the sole and lawful owners of all right, title and interest in and to every claim and other matter

5

ny-1112245

which they release in this Agreement and that they have not previously assigned or transferred, or purported to do so, to any person or other entity any right, title or interest in any such claim or other matter. In the event that such representation is false and any such claim or matter is asserted against RFC or any affiliated company by anyone who is the assignee or transferee of such a claim or matter, then Plaintiffs shall tender back the payment set forth in Paragraph 2, and shall further fully indemnify, defend and hold harmless RFC and any affiliated person or company from all actual costs, attorneys' fees, expenses, liabilities and damages which RFC or any affiliated person or company incurs as a result of the assertion of such claim or matter.

16. <u>Knowing and Voluntary Assent.</u>  The Parties acknowledge that this Agreement is executed voluntarily by each of them, without any duress or undue influence on the part of, or on behalf of any of them. The Parties further acknowledge that they have had the opportunity for representation in the negotiations for, and in the performance of, this Agreement by counsel of their choice and that they have read this Agreement and/or have had it fully explained to them by their counsel and that they are fully aware of the contents of this Agreement and its legal effect.

17. <u>Final and Binding Agreement.</u>  The Parties acknowledge that this Agreement is a full and final accord and satisfaction and shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, agents, representatives, successors, and assigns.

18. <u>Complete Agreement.</u>  This Agreement constitutes a single, integrated, written contract expressing the entire understanding and agreement between the Parties, and the terms of the Agreement are contractual and not merely recitals. No other agreement, written or oral, expressed or implied, exists between the parties with respect to the subject matter of this Agreement, and the Parties declare and represent that no promise, inducement or other agreement not expressly contained in this Agreement has been made conferring any benefit upon them.

19. <u>Counterparts and Facsimile Signatures.</u>  This Agreement may be executed in any number of counterparts and with facsimile signatures, and all such counterparts shall be construed together and constitute a single form of this Agreement.

20. <u>Headings and Captions.</u>  The headings and captions inserted into this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this document to be executed as of the last day set forth below.

DATED: _____, 2013     _____
                               RUSS BEBOUT


DATED: _____, 2013     _____

which they release in this Agreement and that they have not previously assigned or transferred, or purported to do so, to any person or other entity any right, title or interest in any such claim or other matter. In the event that such representation is false and any such claim or matter is asserted against RFC or any affiliated company by anyone who is the assignee or transferee of such a claim or matter, then Plaintiffs shall tender back the payment set forth in Paragraph 2, and shall further fully indemnify, defend and hold harmless RFC and any affiliated person or company from all actual costs, attorneys' fees, expenses, liabilities and damages which RFC or any affiliated person or company incurs as a result of the assertion of such claim or matter.

16. Knowing and Voluntary Assent. The Parties acknowledge that this Agreement is executed voluntarily by each of them, without any duress or undue influence on the part of, or on behalf of any of them. The Parties further acknowledge that they have had the opportunity for representation in the negotiations for, and in the performance of, this Agreement by counsel of their choice and that they have read this Agreement and/or have had it fully explained to them by their counsel and that they are fully aware of the contents of this Agreement and its legal effect.

17. Final and Binding Agreement. The Parties acknowledge that this Agreement is a full and final accord and satisfaction and shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, agents, representatives, successors, and assigns.

18. Complete Agreement. This Agreement constitutes a single, integrated, written contract expressing the entire understanding and agreement between the Parties, and the terms of the Agreement are contractual and not merely recitals. No other agreement, written or oral, expressed or implied, exists between the parties with respect to the subject matter of this Agreement, and the Parties declare and represent that no promise, inducement or other agreement not expressly contained in this Agreement has been made conferring any benefit upon them.

19. Counterparts and Facsimile Signatures. This Agreement may be executed in any number of counterparts and with facsimile signatures, and all such counterparts shall be construed together and constitute a single form of this Agreement.

20. Headings and Captions. The headings and captions inserted into this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this document to be executed as of the last day set forth below.

DATED: _Nov 13_, 2013          _____
                                RUSS BEBOUT

DATED: _Nov 13_, 2013          _____

ny-1112245

6

which they release in this Agreement and that they have not previously assigned or transferred, or purported to do so, to any person or other entity any right, title or interest in any such claim or other matter. In the event that such representation is false and any such claim or matter is asserted against RFC or any affiliated company by anyone who is the assignee or transferee of such a claim or matter, then Plaintiffs shall tender back the payment set forth in Paragraph 2, and shall further fully indemnify, defend and hold harmless RFC and any affiliated person or company from all actual costs, attorneys' fees, expenses, liabilities and damages which RFC or any affiliated person or company incurs as a result of the assertion of such claim or matter.

16. <u>Knowing and Voluntary Assent.</u>  The Parties acknowledge that this Agreement is executed voluntarily by each of them, without any duress or undue influence on the part of, or on behalf of any of them. The Parties further acknowledge that they have had the opportunity for representation in the negotiations for, and in the performance of, this Agreement by counsel of their choice and that they have read this Agreement and/or have had it fully explained to them by their counsel and that they are fully aware of the contents of this Agreement and its legal effect.

17. <u>Final and Binding Agreement.</u>  The Parties acknowledge that this Agreement is a full and final accord and satisfaction and shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, agents, representatives, successors, and assigns.

18. <u>Complete Agreement.</u>  This Agreement constitutes a single, integrated, written contract expressing the entire understanding and agreement between the Parties, and the terms of the Agreement are contractual and not merely recitals. No other agreement, written or oral, expressed or implied, exists between the parties with respect to the subject matter of this Agreement, and the Parties declare and represent that no promise, inducement or other agreement not expressly contained in this Agreement has been made conferring any benefit upon them.

19. <u>Counterparts and Facsimile Signatures.</u>  This Agreement may be executed in any number of counterparts and with facsimile signatures, and all such counterparts shall be construed together and constitute a single form of this Agreement.

20. <u>Headings and Captions.</u>  The headings and captions inserted into this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this document to be executed as of the last day set forth below.

DATED: _____, 2013

RUSS BEBOUT

DATED: \_\_\_//-/3\_\_, 2013

6

ny-1112245

MICHAEL SANFORD

DATED: 11/13, 2013

*Marilyn Sanford*
MARILYN SANFORD

DATED: _____, 2013

DESIREE MCILRATH

DATED: _____, 2013

RESIDENTIAL FUNDING COMPANY, LLC

By_____
Its_____

APPROVED AS TO FORM:

DATED: _____, 2013

By: _____
BERNS WEISS, LLP
Jeffrey K. Berns
ATTORNEYS FOR PLAINTIFFS

DATED: _____, 2013

By: _____
SEVERSON & WERSON
John B. Sullivan
Rebecca S. Saelao
ATTORNEYS FOR RESIDENTIAL FUNDING COMPANY, LLC

7

ny-1112245

MICHAEL SANFORD

DATED: _____, 2013

_____
MARILYN SANFORD

DATED: NOV. 15, 2013

*Desiree McIlrath* (signature)
DESIREE MCILRATH

DATED: _____, 2013

RESIDENTIAL FUNDING COMPANY, LLC

By_____
Its_____

APPROVED AS TO FORM:

DATED: Nov. 18, 2013

By: *(signature)*
BERNS WEISS, LLP
Jeffrey K. Berns
ATTORNEYS FOR PLAINTIFFS

DATED: _____, 2013

By: _____
SEVERSON & WERSON
John B. Sullivan
Rebecca S. Saelao
ATTORNEYS FOR RESIDENTIAL FUNDING COMPANY, LLC

ny-1112245

7

MICHAEL SANFORD

DATED: _____, 2013

MARILYN SANFORD

DATED: _____, 2013

DESIREE MCILRATH

DATED: *Nov. 11*, 2013

RESIDENTIAL FUNDING COMPANY, LLC

By _____ WILLIAM R. THOMPSON
Its  GENERAL COUNSEL

APPROVED AS TO FORM:

DATED: _____, 2013

By: _____
BERNS WEISS, LLP
Jeffrey K. Berns
ATTORNEYS FOR PLAINTIFFS

DATED: *Nov. 25*, 2013

By: _____
SEVERSON & WERSON
John B. Sullivan
Rebecca S. Saelao
ATTORNEYS FOR RESIDENTIAL FUNDING
COMPANY, LLC

7

ny-1112245