## Exhibit 2

**Liquidating Trust Agreement**

**EXECUTION COPY**

**AMENDED AND RESTATED**

**RESCAP LIQUIDATING TRUST**

**LIQUIDATING TRUST AGREEMENT**

**BY AND AMONG**

**THE LIQUIDATING TRUSTEES,**

**WILMINGTON TRUST, NATIONAL ASSOCIATION,**

**MANUFACTURERS AND TRADERS TRUST COMPANY,**

**RESIDENTIAL CAPITAL, LLC**

**AND**

**THE OTHER DEBTORS LISTED ON THE SIGNATURE PAGES HERETO**

December 17, 2013

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS .................................................................................2
  1.1   Definitions Incorporated from the Plan ......................................................2
  1.2   Other Definitions ........................................................................................2
  1.3   Meanings of Other Terms .........................................................................11

ARTICLE II CREATION OF LIQUIDATING TRUST ...............................................11
  2.1   Creation of Trust; Conversion ..................................................................11
  2.2   Purpose of Liquidating Trust ....................................................................12
  2.3   Status of Liquidating Trust and the Liquidating Trust Board ...................13
  2.4   Retention of Professionals .........................................................................13
  2.5   Transfer of Available Assets .....................................................................14
  2.6   Title to Liquidating Trust Assets ..............................................................16
  2.7   Valuation ...................................................................................................16
  2.8   No Reversion to Debtors; Distribution of Remaining Assets....................16
  2.9   Fiscal Year ................................................................................................16
  2.10  Liquidating Trust Budget ..........................................................................16
  2.11  Insurance...................................................................................................17
  2.12  Books and Records ....................................................................................17
  2.13  No Interest or Accruals .............................................................................18

ARTICLE III PRIORITY AND OTHER DISTRIBUTIONS AND RESERVES .......18
  3.1   Professional Claims ..................................................................................18
  3.2   Borrower Claims Trust; NJ Carpenters Claims Distribution....................18
  3.3   Allowed Priority Claims ...........................................................................19
  3.4   Allowed General Unsecured Convenience Claims ...................................19
  3.5   ETS Unsecured Claims .............................................................................19
  3.6   Administrative, Priority, Secured and Convenience Distribution Reserve .................20
  3.7   Minimum Distributions; Other Limitations ..............................................21

ARTICLE IV ISSUANCE OF UNITS.........................................................................22
  4.1   Number of Units ........................................................................................22
  4.2   Unit Issuance Percentages ........................................................................22
  4.3   Issuance and Distribution of Units ...........................................................22
  4.4   Evidence of Units .....................................................................................24
  4.5   Manner of Distribution of Units ...............................................................24
  4.6   Transfers of Units; Absence of Market for Units .....................................26
  4.7   Rights of Unitholders ................................................................................26
  4.8   Interest Beneficial Only ............................................................................26
  4.9   Conflicting Claims ....................................................................................26
  4.10  Unitholder Liability to Third Persons.......................................................27
  4.11  Actions in the Right of the Liquidating Trust...........................................27

ARTICLE V CASH DISTRIBUTIONS TO UNITHOLDERS ....................................27
5.1    Distributions Generally ...........................................................................27
5.2    Timing of Distributions ...........................................................................27
5.3    Distribution Record Date; Distributable Cash........................................28
5.4    Distributions in Respect of Disputed LT Unsecured Claims ...................29
5.5    Adjustments to Estimated Amounts .........................................................29
5.6    Withholding and Reporting Requirements ...............................................30
5.7    Disbursing Agent .....................................................................................31

ARTICLE VI BOARD OF TRUSTEES ..............................................................31
6.1    General......................................................................................................31
6.2    Membership ..............................................................................................31
6.3    Compensation...........................................................................................34
6.4    Authority...................................................................................................34
6.5    Action of the Liquidating Trust Board ....................................................37
6.6    Meetings....................................................................................................38
6.7    Chairman of the Liquidating Trust Board ................................................38
6.8    Committees................................................................................................39
6.9    Fiduciary Duty and Standard of Conduct ................................................39

ARTICLE VII OPERATION OF THE LIQUIDATING TRUST .............................39
7.1    Prohibited Activities.................................................................................39
7.2    Resolution of Disputed LT Claims ..........................................................40
7.3    Disputed Claims Reserve .........................................................................40
7.4    Administrative Expenses Set Aside..........................................................41
7.5    DOJ/AG Settlement Reserve ....................................................................42
7.6    Reporting ..................................................................................................43
7.7    Liquidating Trust Management ................................................................44
7.8    Liquidating Trust Agents; Employees ......................................................45

ARTICLE VIII DELAWARE TRUSTEE ............................................................45
8.1    Appointment .............................................................................................45
8.2    Powers ......................................................................................................46
8.3    Compensation...........................................................................................48
8.4    Duration and Replacement .......................................................................48

ARTICLE IX FHA QUALIFIED TRUSTEE .......................................................48
9.1    Appointment .............................................................................................48
9.2    Powers, Authority and Responsibilities...................................................49
9.3    Servicing of FHA Mortgage Loans..........................................................49
9.4    NO RIGHTS AGAINST HUD OR THE FHA .......................................50
9.5    Certain Limitations with Respect to the FHA Qualified Trustee .............50
9.6    Duration and Replacement .......................................................................52
9.7    Compensation of the FHA Qualified Trustee ...........................................52
9.8    Appointment of FHA Qualified Co-Trustees ...........................................53
9.9    VA Mortgage Loans .................................................................................53

ARTICLE X TAX MATTERS ........................................................................... 54
10.1    Tax Treatment ....................................................................................... 54
10.2    Tax Reporting ........................................................................................ 54
10.3    Tax Payment .......................................................................................... 55
10.4    Liquidating Trust's Tax Powers ............................................................ 55

ARTICLE XI LIMITATION OF LIABILITY AND INDEMNIFICATION ............. 56
11.1    Limitation of Liability ........................................................................... 56
11.2    Indemnification ..................................................................................... 57
11.3    Prior to the Effective Date .................................................................... 58

ARTICLE XII DURATION OF LIQUIDATING TRUST ..................................... 58
12.1    Duration ................................................................................................ 58
12.2    Post-Termination ................................................................................... 59
12.3    Destruction of Books and Records ........................................................ 59
12.4    Discharge .............................................................................................. 59

ARTICLE XIII MISCELLANEOUS PROVISIONS ............................................ 59
13.1    Governing Law ...................................................................................... 59
13.2    Jurisdiction ........................................................................................... 60
13.3    Severability ........................................................................................... 60
13.4    Notices .................................................................................................. 60
13.5    Headings ............................................................................................... 61
13.6    Plan Documents .................................................................................... 61
13.7    Control Over Debtors ............................................................................ 61
13.8    Confidentiality ...................................................................................... 61
13.9    Entire Liquidating Trust Agreement ..................................................... 62
13.10   Named Party .......................................................................................... 62
13.11   Amendment ........................................................................................... 62
13.12   Counterparts .......................................................................................... 62

**Exhibits**

Exhibit A – Form of Request for Securities Account Information
Exhibit B – Form of Access and Cooperation Agreement

# RESCAP LIQUIDATING TRUST
## AMENDED AND RESTATED LIQUIDATING TRUST AGREEMENT

This Amended and Restated Liquidating Trust Agreement, dated as of December 17, 2013 (this "Liquidating Trust Agreement"), is entered into by and among Residential Capital, LLC ("ResCap"), AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC − GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC (each as a debtor and debtor-in-possession, and collectively, the "Debtors"), Wilmington Trust, National Association, or its successor, as Delaware Trustee, Manufacturers and Traders Trust Company, or its successor, as FHA Qualified Trustee, and the Liquidating Trustees whose names appear as such on the signature page to this Liquidating Trust Agreement.

## RECITALS

A.    On May 14, 2012, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the "Bankruptcy Case").

B.    On or about July 26, 2013, John S. Dubel, as trustee, executed a Declaration of Trust providing for the formation of a predecessor common law trust (the "Original Trust") for the purposes set forth therein.

C.    On or about August 23, 2013, the Debtors filed the Joint Chapter 11 Plan of Residential Capital, LLC, *et al.*, dated August 23, 2013 (as amended and supplemented and as confirmed, the "Plan", and the related disclosure statement, the "Disclosure Statement").

D.    On or about August 26, 2013, the Bankruptcy Court approved the Disclosure Statement.

E.    On December 10, 2013, the Original Trust was converted to a trust formed pursuant to the Trust Act (as defined below) by filing of the Certificate of Conversion (as

defined below) and Certificate of Trust (as defined below), and the Interim Liquidating Trust
Agreement (as defined below) was executed

F.    On or about December 11, 2013, the Bankruptcy Court issued an order
confirming the Plan.

G.    On December 17, 2013, the Effective Date of the Plan occurred.

H.    The Plan provides for a liquidating trust (as so formed and administered in
accordance with the terms of this Liquidating Trust Agreement, the "Liquidating Trust") to
liquidate and distribute the Liquidating Trust Assets to holders of administrative, other priority,
secured and unsecured Claims that are Allowed on the Effective Date or that become Allowed
after the Effective Date.

I.    This Liquidating Trust Agreement amends and restates the Interim Liquidating
Trust Agreement and is being executed to establish and provide for the administration of the
Liquidating Trust and the liquidation and distribution of Liquidating Trust Assets as
contemplated by the Plan, and to otherwise facilitate the implementation of the Plan.

J.    The Liquidating Trust (other than as relating to the Liquidating Trust Assets
allocable to distributions and reserves described in Article III and to the Disputed LT
Unsecured Claims) is intended to qualify as a Liquidating Trust, within the meaning of
Treasury Regulations section 301.7701-4(d), to be treated as a "grantor trust" for federal
income tax purposes, and to be exempt from the requirements of the Investment Company Act
of 1940 pursuant to Section 3(c)(5) and Sections 7(a) and 7(b) thereof.

NOW, THEREFORE, in consideration of the promises and the mutual covenants
contained herein, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.1    Definitions Incorporated from the Plan.    Other than the terms defined
below or elsewhere in this Liquidating Trust Agreement, capitalized terms shall have the
meaning assigned to them in the Plan.

1.2    Other Definitions.

(a)    "**Administrative Expenses Set Aside**" means an amount of Cash or
other assets set aside from time to time by or under the direction of the Liquidating Trust Board
for paying costs, fees and expenses, and reserving for liabilities, of the Liquidating Trust, as
provided in Section 7.4, including costs, fees and expenses of the Estates payable at any time
after the Effective Date.

(b)    "**Administrative, Priority, Secured and Convenience Distribution
Reserve**" means the reserve established for the purpose of maintaining Cash or other assets
from time to time necessary to satisfy Priority Distributions and General Unsecured
Convenience Claims in accordance with Section 3.6.

(c)    "**Allowed LT Claims**" means Allowed Priority Claims, Allowed Unsecured Claims and Allowed General Unsecured Convenience Claims.

(d)    "**Allowed Priority Claims**" means Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims and Junior Secured Notes Claims that are at any relevant time Allowed.

(e)    "**Allowed Unsecured Claims**" means collectively, the GMACM Unsecured Claims, the ResCap Unsecured Claims and the RFC Unsecured Claims that are at any relevant time Allowed.

(f)    "**Board Protocol**" means the protocols for the governance of the Liquidating Trust, as such protocols may be amended from time to time by Majority Consent of the Liquidating Trust Board; provided, however, that in the event of a conflict between this Liquidating Trust Agreement and the Board Protocol, the Liquidating Trust Agreement shall govern.

(g)    "**Business Day**" means any day other than a Saturday, Sunday or legal holiday on which the banks in the City of New York, Borough of Manhattan, or Wilmington, Delaware are authorized to remain closed.

(h)    "**Cause**" means, with respect to any Liquidating Trustee,

(i)    such Liquidating Trustee's conviction of a felony or any other crime involving moral turpitude; or

(ii)    any act or failure to act by such Liquidating Trustee involving actual dishonesty, fraud, misrepresentation, theft or embezzlement; or

(iii)    such Liquidating Trustee's willful and repeated failure to substantially perform his/her duties under this Liquidating Trust Agreement and the Trust Act; or

(iv)    such Liquidating Trustee's incapacity, such that s/he is unable to substantially perform his/her duties under this Liquidating Trust Agreement and the Trust Act for more than ninety (90) consecutive days.

(i)    "**Certificate of Conversion**" means the certificate of conversion required by section 3820 of the Trust Act filed in connection with the conversion of the Original Trust into a trust formed pursuant to the Trust Act.

(j)    "**Certificate of Trust**" means the certificate of trust of the Liquidating Trust as required by sections 3810 and 3820 of the Trust Act filed in connection with the conversion of the Original Trust into a trust formed pursuant to the Trust Act.

(k)    "**Confidentiality Parties**" has the meaning assigned in Section 13.8.

(l)    "**Cooperation Agreements**" means, collectively, (i) the Access and Cooperation Agreement, dated the date hereof, by and between the Borrower Claims Trust and

the Liquidating Trust in the form attached as <u>Exhibit B</u> to this Liquidating Trust Agreement
and (ii) the cooperation agreement, dated the date hereof, by and between the Liquidating Trust
and the Kessler Settlement Class relating to insurance.

(m)    "**Debtors**" has the meaning assigned in the Preamble.

(n)    "**Delaware Trustee**" means Wilmington Trust, National Association, or
its successor, which is appointed in accordance with this Liquidating Trust Agreement to
comply with the requirement of section 3807 of the Trust Act.

(o)    "**Disputed Claims Estimation Date**" means the date as of which the
Disputed Claims are to be estimated pursuant to the Reserve Motion.

(p)    "**Disputed Claims Reserve**" means the reserve of Units maintained by
the Liquidating Trust, together with all Cash theretofore distributed in respect of such Units,
for distribution to holders of Disputed LT Unsecured Claims that are subsequently Allowed,
and including any non-Cash assets that at any time are held in the Disputed Claims Reserve as
provided in <u>Section 7.3(b)</u>.

(q)    "**Disputed Claims Reserve Units**" means a number of Units equal to
the sum of (x) the GMACM Debtors Unit Issuance Ratio multiplied by the Estimated Amount
of all GMACM Unsecured Claims that are Disputed Claims as of the Initial Unit Distribution
Record Date; plus (y) the ResCap Debtors Unit Issuance Ratio multiplied by the Estimated
Amount of all ResCap Unsecured Claims that are Disputed Claims as of the Initial Unit
Distribution Record Date; plus (z) the RFC Debtors Unit Issuance Ratio multiplied by the
Estimated Amount of all RFC Unsecured Claims that are Disputed Claims as of the Initial Unit
Distribution Record Date.

(r)    "**Disputed LT Claims**" means the Disputed Priority Claims, General
Unsecured Convenience Claims that are Disputed Claims, and the Disputed LT Unsecured
Claims.

(s)    "**Disputed LT Unsecured Claims**" means ResCap Unsecured Claims,
GMACM Unsecured Claims and RFC Unsecured Claims that at any relevant time are Disputed
Claims, but not including any ETS Unsecured Claims.

(t)    "**Disputed Priority Claims**" means Administrative Claims, Priority Tax
Claims, Other Priority Claims, Other Secured Claims and Junior Secured Notes Claims that at
any relevant time are Disputed Claims.

(u)    "**Distributable Cash**" means Cash of the Liquidating Trust available for
distribution to Unitholders (including the Disputed Claims Reserve), after payment or
reserving for the payment of Allowed Priority Claims, Allowed General Unsecured
Convenience Claims, Allowed ETS Unsecured Claims and Allowed professional fees, and the
funding of the Administrative, Priority, Secured and Convenience Distribution Reserve and the
funding of the Administrative Expenses Set Aside.

(v)    "**Distribution Date**" means any date, as determined by the Liquidating Trust Board, on which the Liquidating Trust makes a distribution of Distributable Cash to Unitholders (including the Disputed Claims Reserve).

(w)    "**Distribution Record Date**" means a date selected by the Liquidating Trust Board preceding each Distribution Date (other than the Initial Distribution Date), as the record date for determining the holders of Units entitled to participate in the distribution on such Distribution Date.

(x)    "**DOJ/AG Settlement Reserve**" has the meaning assigned in Section 7.5.

(y)    "**DTC**" means the Depository Trust Company and any successor organization.

(z)    "**Estimated Amount**" means the estimated amount of a Disputed LT Claim, as determined by the Liquidating Trust Board, which shall either be the filed amount of the Claim or such amount as estimated by the Bankruptcy Court at the request of the Debtors or the Liquidating Trust pursuant to Bankruptcy Code section 502(c) or such other estimated amount determined in accordance with the Plan, including Article VIII.A.4. thereof, and, in the case of any Disputed LT Claim the estimated amount of which cannot be determined in accordance with the foregoing, as determined in its good faith discretion by the Liquidating Trust Board.

(aa)    "**ETS Distributable Cash**" means (i) all Cash held by ETS on the Effective Date less (ii) the sum of (x) the amount of Cash paid on or promptly following the Effective Date in respect of Allowed Priority Claims against ETS that are Allowed as of the Effective Date and (y) the amount of Cash reserved for payment of (A) Allowed Priority Claims against ETS that are Allowed as of the Effective Date but that cannot be paid on or promptly following the Effective Date and (B) the Estimated Amount of Disputed Priority Claims against ETS as of the Effective Date.

(bb)    "**ETS Distribution Ratio**" means the ratio that is equal to (i) the ETS Distributable Cash divided by (ii) the sum of (x) the Allowed amount of all ETS Unsecured Claims that are Allowed as of the Effective Date plus (y) an amount necessary in order to reserve, in the discretion of the Liquidating Trust Board, for all ETS Unsecured Claims that are Disputed Claims as of the Effective Date.

(cc)    "**FDIC**" means the Federal Deposit Insurance Corporation or any successor institution.

(dd)    "**FGIC**" means Financial Guaranty Insurance Corporation.

(ee)    "**FHA**" means the Federal Housing Administration of the United States Department of Housing and Urban Development, or any successor thereto.

(ff)    "**FHA-Approved Mortgagee**" means a mortgagee approved under the FHA Title II Mortgage Approval Handbook 4060.1.

(gg)    "**FHA Guidelines**" means any statute, law or regulation currently in effect relating to mortgage loans pursuant to Title 45 of the United States Code (the Fair Housing Act) as well as any requirements under the FHA connect program.

(hh)    "**FHA Insurance Contract**" means the contractual obligation of FHA respecting the insurance of a mortgage on a single or multifamily home pursuant to the National Housing Act, as amended.

(ii)    "**FHA Mortgage Loan**" means a mortgage loan that is the subject of an FHA Insurance Contract.

(jj)    "**FHA Qualified Trustee**" means Manufacturers and Traders Trust Company, or its successor, which is an FHA-Approved Mortgagee that is a national banking association or otherwise authorized to exercise trust or fiduciary powers in one or more jurisdictions and that is appointed as a trustee in accordance with this Liquidating Trust Agreement.

(kk)    "**FHA Qualified Co-Trustee**" means an FHA-Approved Mortgagee that is a national banking association or otherwise authorized to exercise trust or fiduciary powers in one or more jurisdictions and that is appointed as a co-trustee in accordance with this Liquidating Trust Agreement.

(ll)    "**Fiscal Year**" means any fiscal year of the Liquidating Trust, as provided in <u>Section 2.9</u> hereof.

(mm)    "**Global Unit Certificate**" has the meaning assigned in <u>Section 4.4(a)</u>.

(nn)    "**GAAP**" means generally accepted accounting principles in the United States.

(oo)    "**GMACM Debtors Unit Issuance Ratio**" means a ratio obtained by dividing (x) the number of Units in the GMACM Debtors Unit Distribution by (y) the sum of (I) the amount of the GMACM Unsecured Claims that are Allowed (other than Allowed ETS Unsecured Claims) plus (II) the Estimated Amount of the GMACM Unsecured Claims that are Disputed Claims, in each case as of the Initial Unit Distribution Record Date.

(pp)    "**HUD**" means the United States Department of Housing and Urban Development, or any federal agency or official thereof which may from time to time succeed to the functions thereof with regard to FHA Insurance.  The term "HUD" is also deemed to include subdivisions thereof.

(qq)    "**Initial Distribution Date**" means the date determined by the Liquidating Trust Board occurring as soon as reasonably practicable on or after the Initial Unit Distribution Date, but in no event more than five (5) Business Days after the Initial Unit Distribution Date, on which the Liquidating Trust makes, or causes to be made, the initial distribution of Distributable Cash to Unitholders (including the Disputed Claims Reserve).

(rr)    "**Initial Nominating Party**" means a party entitled under Article VI.E. of the Plan to appoint a member of the Liquidating Trust Board, which parties specifically include (1) MBIA, (2) FGIC, (3) Paulson, (4) the RMBS Trustees that are members of the Creditors' Committee, the Steering Committee Consenting Claimants and the Talcott Franklin Consenting Claimants, jointly, and (5) the holders of the Private Securities Claims.

(ss)    "**Initial Unit Distribution Date**" means the date determined by the Liquidating Trust Board occurring as soon as reasonably practicable after the entry by the Bankruptcy Court of the Reserve Order, but in no event prior to the Effective Date, on which the Liquidating Trust makes or causes to be made the initial distribution of Units to holders of Allowed Unsecured Claims entitled to receive Units hereunder as of the Initial Unit Distribution Record Date, the Private Securities Claims Trust and the RMBS Claims Trust.

(tt)    "**Initial Unit Distribution Record Date**" means the Disputed Claims Estimation Date, which is the record date for determining the Liquidating Trust Unit Beneficiaries holding Allowed Claims that are entitled to receive a distribution of Units on the Initial Unit Distribution Date, provided that to the extent the allowance of a Claim as of the Initial Unit Distribution Record Date is contingent only upon the effectiveness of the Plan, such Claim shall be deemed to be Allowed as of the Initial Unit Distribution Record Date.

(uu)    "**Initial Unit Estimation**" means the number of Units that would have been distributed to an Initial Nominating Party on the Initial Unit Distribution Date if it beneficially owned, on the Initial Unit Distribution Record Date, the same claims as the Initial Nominating Party beneficially owned on October 11, 2013.

(vv)    "**Interim Liquidating Trust Agreement**" means the Interim Liquidating Trust Agreement for the Liquidating Trust, dated as of December 10, 2013, executed by the Delaware Trustee and John S. Dubel, as Liquidating Trustee.

(ww)    "**Liquidating Trust**" has the meaning assigned in the Recitals.

(xx)    "**Liquidating Trust Agents**" means the advisors, professionals and other agents, including any disbursement agent, of the Liquidating Trust appointed or engaged by the Liquidating Trust Board or by Liquidating Trust Management in accordance with the provisions of this Liquidating Trust Agreement.

(yy)    "**Liquidating Trust Agreement**" has the meaning assigned in the Recitals.

(zz)    "**Liquidating Trust Assets**" means all property held from time to time by the Liquidating Trust, including the Available Assets transferred to the Liquidating Trust on or after the Effective Date, and including all Cash and non-Cash assets held in the Disputed Claims Reserve, the Administrative Expenses Set Aside and the Administrative, Priority, Secured and Convenience Distribution Reserve, but not including the assets excluded from Available Assets pursuant to Section 2.5(a).

(aaa)    "**Liquidating Trust Beneficiaries**" means (i) the holders of Units and (ii) any holder of a Disputed LT Unsecured Claim that may in the future be entitled to receive a distribution of the Units from the Disputed Claims Reserve.

(bbb)    "**Liquidating Trust Board**" means the board consisting of the Liquidating Trustees appointed to administer and oversee the affairs of the Liquidating Trust, as provided in this Liquidating Trust Agreement.

(ccc)    "**Liquidating Trust Budget**" has the meaning assigned in <u>Section 2.10(a)</u>.

(ddd)    "**Liquidating Trust Management**" has the meaning assigned in <u>Section 7.7(a)</u>.

(eee)    "**Liquidating Trust Manager**" means the officer having primary executive responsibility for the Liquidating Trust, as provided in <u>Section 7.7(c)</u>.

(fff)    "**Liquidating Trust Website**" means an internet website maintained by the Liquidating Trust in accordance with this Liquidating Trust Agreement.

(ggg)    "**Majority Consent**" means the affirmative consent of a majority of the members constituting the whole Liquidating Trust Board, given at a meeting called for that purpose, or by a written consent in lieu of a meeting in accordance with this Liquidating Trust Agreement.

(hhh)    "**MERS®**" means the proprietary system of recording transfers of mortgages electronically, which was created and is maintained by Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware.

(iii)    "**Nominating Party**" means an Initial Nominating Party and a Successor Nominating Party.

(jjj)    "**Original Trust**" has the meaning assigned in the Recitals.

(kkk)    "**Paulson**" means funds and accounts managed by Paulson & Co. Inc.

(lll)    "**Plan**" has the meaning assigned in the Recitals.

(mmm)"**Plan Documents**" means, collectively, the Plan, the Confirmation Order and this Liquidating Trust Agreement.

(nnn)    "**Priority Distributions**" means the Cash distributions made by the Liquidating Trust, in its capacity as Disbursing Agent, to holders of Allowed Priority Claims.

(ooo)    "**Private Securities Claims Trust**" means the trust established for the benefit of the holders of the Private Securities Claims, in accordance with the terms of the Plan.

(ppp)    "**Pro Rata**" means, with respect to any Units, the fraction (which may be expressed as a percentage) obtained by dividing (x) such number of Units by (y) the total number of Units at the time outstanding, including the Units held in the Disputed Claims Reserve.

(qqq)    "**Qualified Purchaser**" means an entity that is the single purchaser in a Qualified Sale.

(rrr)    "**Qualifying Sale**" means a Nominating Party's transfer of Units to a single purchaser through one or more sale transactions in an amount equal to more than fifty percent (50%) of (x) the Initial Unit Estimation of the Nominating Party, in the case of a transfer by an Initial Nominating Party; or (y) the Initial Unit Estimation of the Initial Nominating Party that is the transferring Nominating Party's direct or indirect predecessor in interest, in the case of a transfer by a Successor Nominating Party.

(sss)    "**ResCap Debtors Unit Issuance Ratio**" means a ratio obtained by dividing (x) the number of Units in the ResCap Debtors Unit Distribution by (y) the sum of (I) the amount of the ResCap Unsecured Claims that are Allowed plus (II) the Estimated Amount of the ResCap Unsecured Claims that are Disputed Claims, in each case as of the Initial Unit Distribution Record Date.

(ttt)    "**Reserve Motion**" means a motion for an order establishing the Disputed Claims Reserve with respect to unliquidated and/or Disputed Claims.

(uuu)    "**Reserve Order**" means the order establishing the Disputed Claim Reserve filed in accordance with Article VIII.D. of the Plan.

(vvv)    "**RFC Debtors Unit Issuance Ratio**" means a ratio obtained by dividing (x) the number of Units in the RFC Debtors Unit Distribution by (y) the sum of (I) the amount of the RFC Unsecured Claims that are Allowed plus (II) the Estimated Amount of the RFC Unsecured Claims that are Disputed Claims, in each case as of the Initial Unit Distribution Record Date.

(www) "**Servicer**" means any master servicer, servicer, sub-servicer, or special servicer of the FHA Mortgage Loans appointed as such, provided, however, that any such master servicer, servicer, sub-servicer or special servicer shall be approved to service the FHA Mortgage Loans under the applicable FHA Guidelines.

(xxx)    "**Specified Liquidating Trustee**" has the meaning assigned in Section 6.2(e).

(yyy)    "**Successor Nominating Party**" means a Qualified Purchaser that elects to succeed to an Initial Nominating Party's or a Successor Nominating Party's rights hereunder, as provided in Section 6.2(h).

(zzz)    "**Supermajority Consent**" means the affirmative consent of at least four-fifths (4/5) of the members constituting the whole Liquidating Trust Board, given at a meeting called for that purpose or by written consent in lieu of a meeting in accordance with

this Liquidating Trust Agreement; provided that, for purposes of the removal of a member of the Liquidating Trust Board in accordance with Section 6.2 hereof, Supermajority Consent means the affirmative consent of all of the members of the Liquidating Trust Board not including the Specified Liquidating Trustee; provided, further that in the event the Liquidating Trust Board is at any time comprised of less than five members, any act otherwise requiring Supermajority Consent shall require only Majority Consent.

(aaaa) "**Supplementary Case Management Procedures**" means the Order Approving Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and (d), Bankruptcy Rules 1015(c), 2002(m), 7016, and 9007 and Local Bankruptcy Rule 2002-2 for Entry of an Order Approving (A) Supplement to Case Management Order Establishing Mandatory Procedures for Management of Adversary Proceedings Commenced by Borrowers and Former Borrowers and (B) Related Relief [Docket No. 3304], as amended by the Amended Order Approving Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and (d), Bankruptcy Rules 1015(c), 2002(m), 7016, and 9007 and Local Bankruptcy Rule 2002-2 for Entry of an Order Approving (A) Supplemental to Case Management Order Establishing Mandatory Procedures for Management of Adversary Proceedings Commenced by Borrowers and Former Borrowers and (B) Related Relief [Docket No. 3490].

(bbbb) "**Tax Authority**" means a federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, court or other body (if any) charged with the administration of any law relating to Taxes.

(cccc) "**Tax Code**" means the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

(dddd) "**Taxes**" means all (a) federal, state, local, or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, estimated, property, transfer and sales or use taxes, and (b) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (a) hereof.

(eeee) "**Tax Return**" means a return, declaration, form, election, letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Taxes, including any schedule or attachment thereto or amendment thereof, including any claim for a Tax refund.

(ffff) "**Title 24**" means Title 24 of the Code of Federal Regulations.

(gggg) "**Trust Act**", means, the Delaware Statutory Trust Act, 12 Del. C. § 3801 et seq., as the same may from time to time be amended, or any successor statute.

(hhhh) "**Trustee**" means any of the Liquidating Trustees, the Delaware Trustee and the FHA Qualified Trustee.

(iiii) "**Unit Distribution Date**" means a date, as determined from time to time by the Liquidating Trust Board, on which Units shall be distributed from the Disputed Claims Reserve to holders of Disputed LT Unsecured Claims that have become Allowed in the

period between the second preceding Unit Distribution Record Date (or in the case of the first Unit Distribution Date, from the Initial Unit Distribution Record Date) and the first preceding Unit Distribution Record Date.

(jjjj)    "**Unit Distribution Record Date**" means a date, as determined from time to time by the Liquidating Trust Board, for the determination of the holders of Disputed LT Unsecured Claims that have become Allowed since the preceding Unit Distribution Record Date (or in the case of the first Unit Distribution Date, from the Initial Unit Distribution Record Date) to receive a distribution of Units from the Disputed Claims Reserve on the following Unit Distribution Date.

(kkkk) "**Units**" means units of beneficial interest issued by the Liquidating Trust, which entitle the holders thereof to receive from the Liquidating Trust a Pro Rata share of Distributable Cash.

(llll)    "**Unit Certificate**" has the meaning assigned in Section 4.4(b).

(mmmm)    "**Unitholder**" means a holder of one or more Units, including the Disputed Claims Reserve.

(nnnn) "**Unit Register**" has the meaning assigned in Section 4.4(b).

(oooo) "**VA**" means the United States Department of Veterans Affairs, or any successor thereto.

(pppp) "**VA Loan Guaranty Agreement**" means the obligation of the United States to pay a specific percentage of a mortgage loan (subject to a maximum amount) upon default of the mortgagor pursuant to the Servicemen's Readjustment Act, as amended.

(qqqq)    "**VA Mortgage Loan**" means a mortgage loan that is the subject of a VA Loan Guaranty Agreement.

1.3    Meanings of Other Terms.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include firms, associations, corporations and other entities.    All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code; the Bankruptcy Rules; or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Liquidating Trust Agreement, and the word "herein" and words of similar import refer to this Liquidating Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Liquidating Trust Agreement.  The term "including" shall mean "including, without limitation."

## ARTICLE II
## CREATION OF LIQUIDATING TRUST

2.1    Creation of Trust; Conversion.

(a)    The Liquidating Trust shall be deemed to have been created effective as of the time of creation of the Original Trust.  The Certificate of Conversion and the Certificate of Trust have been filed to reflect the conversion of the Original Trust to the Liquidating Trust. This Liquidating Trust Agreement amends and restates the Interim Trust Agreement and provides for the continuation of the Liquidating Trust.

(b)    The Liquidating Trust shall bear the name "ResCap Liquidating Trust," and the Liquidating Trust Board may, in connection with the exercise of its powers and duties hereunder, either use this name or such variation thereof as the Liquidating Trust Board may from time to time approve.

2.2    Purpose of Liquidating Trust.

(a)    The Liquidating Trust is established for the purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose hereunder.  The Liquidating Trust shall perform the obligations under the DOJ/AG Settlement, the Consent Order, and the Order of Assessment, other than Ocwen's rights and obligations under the Ocwen APA, in accordance with the terms of the Plan.

(b)    This Liquidating Trust Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust.  The Liquidating Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall any of the Trustees or the Unitholders, for any purpose be, or be deemed to be or be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Unitholders to the Trustees shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Liquidating Trust Agreement.

(c)    From and after the Effective Date, the Liquidating Trust, acting through the Liquidating Trust Board, the Liquidating Trust Management, and the Liquidating Trust Agents, shall wind down the affairs of, and dissolve the Debtors and their subsidiaries, including the Non-Debtor Subsidiaries, under applicable laws, notwithstanding any applicable consent requirements or other restrictions contained in any financing agreements or other debt documents to which any Debtor is or was a party; provided that any Debtor required to hold Available Assets after the Effective Date pursuant to Section 2.5(b) shall not be dissolved at a time while it holds Available Assets and shall be authorized to take such actions at the direction of the Liquidating Trust as may be necessary or advisable to implement the purpose and provisions of the Plan with respect to such Available Assets.  The Liquidating Trust shall pay all reasonable costs and expenses in connection with such dissolutions.  The Liquidating Trust Board, the Liquidating Trust Management and the Liquidating Trust Agents shall not have any liability on account of the Liquidating Trust Board's use of its discretion to dissolve or not dissolve any of the Debtors or their subsidiaries; provided, however, this section shall not be interpreted to preclude the Liquidating Trust from asserting any malpractice, negligence

or similar claims against the Liquidating Trust Agents for their actions or omissions with respect to corporate dissolutions.

2.3    Status of Liquidating Trust and the Liquidating Trust Board.

(a)    Subject to the terms of the Confirmation Order, the Liquidating Trust shall be the successor-in-interest to the Debtors with respect to any Liquidating Trust Cause of Action (but not, for the avoidance of doubt, including any Causes of Action released under the Plan or Borrower-Related Causes of Action) that was or could have been commenced by any of the Debtors prior to the Effective Date and shall be deemed substituted for each such Debtor as the party in any such litigation.

(b)    From and after the Effective Date, the Liquidating Trust, acting through Liquidating Trust Management under the supervision of the Liquidating Trust Board, will be the representative of the Estates as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code and shall have the rights and powers provided in the Bankruptcy Code in addition to any rights and powers granted in the Plan Documents, including but not limited to the right to object to Administrative Claims, Priority Claims, Other Priority Claims, Other Secured Claims, Junior Secured Note Claims, GMACM Unsecured Claims, ResCap Unsecured Claims, RFC Unsecured Claims and Professional Claims.

(c)    All Liquidating Trust Causes of Action are preserved and retained and may be enforced by the Liquidating Trust pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.4    Retention of Professionals.

(a)    The Liquidating Trust shall have the right to retain such professionals as are necessary and proper to discharge its functions in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court.

(b)    The Liquidating Trust Board shall adopt reasonable policies regarding the billing practices, hourly rates, discounts and required budget practices of professionals retained to provide services to the Liquidating Trust to ensure the Liquidating Trust receives cost-effective, efficient representation in the best interest of the Liquidating Trust's Unitholders.

(c)    The Liquidating Trust shall not retain any professional who has a conflict of interest without a finding by the Liquidation Trust Manager, as affirmed by the Majority Consent of the Liquidating Trust Board, that:  (i) the professional has unique knowledge or specialized skills that warrant retention of the conflicted professional, and (ii) even though such retention may require the retention of a second, unconflicted professional, the Liquidating Trust's interest would be affected adversely if the conflicted professional was not retained.

2.5    Transfer of Available Assets.

(a)    On the Effective Date, the Debtors shall transfer all of the Available
Assets, in the form existing on such date, to the Liquidating Trust, free and clear of any and all
liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other persons
and entities to the maximum extent contemplated by and permissible under section 1141 of the
Bankruptcy Code.    The Liquidating Trust shall have such incidents of ownership in the
Available Assets as are necessary to undertake the actions and transactions authorized in the
Plan Documents.    The transfer of the Available Assets shall be exempt from any stamp, real
estate transfer, mortgage recording, sales, use or other similar Tax pursuant to section 1146 of
the Bankruptcy Code.    Upon the transfer of Available Assets to the Liquidating Trust, such
assets shall become Liquidating Trust Assets.    For the avoidance of doubt, Available Assets
shall include (i) the FHA Mortgage Loans and any related servicing advances, receivables, and
claims; (ii) the VA Mortgage Loans and any related servicing advances, receivables, and
claims; (iii) any servicing advances, receivables, claims and real estate owned property relating
to FHA or VA Mortgage Loans liquidated prior to the Effective Date; (iv) any licenses and
approvals received or held by GMACM Mortgage, LLC from HUD, the FHA, and the VA; and
(iv) GMAC Mortgage, LLC and Residential Funding Company, LLC's membership interest
and stock ownership in MERS®, including all related rights and interests.    For the avoidance of
doubt, Available Assets shall not include any Borrower-Related Cause of Action or any assets
or rights excluded pursuant to Articles IV.G.2. and IV.G.3. of the Plan.    In addition, if the
Kessler Settlement Approval Orders shall have been entered, and after the Effective Date the
Liquidating Trust discovers any additional insurance policies under which any of the Debtors
are an insured and that provide coverage for the Debtors' liability to the Kessler Settlement
Class, then the Liquidating Trust shall assign to the Kessler Settlement Class the insurance
rights under such policies with respect to the liability of the Debtors to the Kessler Settlement
Class, as provided in Article IV.G. of the Plan, and such insurance rights shall not constitute
Liquidating Trust Assets.

(b)    Notwithstanding the foregoing, if on the Effective Date, any of the
Available Assets cannot be transferred to the Liquidating Trust, or it is deemed impractical or
inadvisable to do so by the Liquidating Trust Board or the Liquidating Trust Manager, for any
reason, for example, because the Liquidating Trust has not yet established accounts for the
purpose of holding Cash or because of a restriction on transferability under applicable non-
bankruptcy law that is not superseded by section 1123 of the Bankruptcy Code or any other
provision of the Bankruptcy Code, the Debtors shall continue to hold such Liquidating Trust
Assets, as bailee for the account of the Liquidating Trust, until such time as the Liquidating
Trust informs the Debtors that the Liquidating Trust may receive such Available Assets,
whereupon such assets shall be promptly transferred to the Liquidating Trust and become
Liquidating Trust Assets; provided that the proceeds of the sale or other disposition of any such
assets retained by the Debtors (or any successors thereto) shall nevertheless be deemed to
constitute Available Assets, and to likewise be held by the Debtors as bailee, and be turned
over as soon as practicable to the Liquidating Trust pursuant to this Liquidating Trust
Agreement as if such transfer had not been restricted under applicable non-bankruptcy law.
The Liquidating Trust may commence an action in the Bankruptcy Court to resolve any dispute
regarding the allocation of the proceeds of any Available Assets retained by the Debtors (or
any successors thereto) pursuant to the Plan Documents.

(c)     On or prior to the Effective Date, the Debtors shall deliver or cause to be delivered to the Liquidating Trust any and all books and records that relate primarily to or that may be reasonably required in connection with the Available Assets, whether held by the Debtors, their agents, representatives, advisors, attorneys, accountants and any other professionals hired by the Debtors and provide access to such employees, agents, advisors, attorneys, accountants or any other Debtor professionals with knowledge of matters relevant to the Available Assets.   Without limiting the foregoing, the Debtors shall deliver to the Liquidating Trust all records of the Debtors relating to Professional Claims and Accrued Professional Compensation through the Effective Date reasonably necessary for the payment of Professional Claims in accordance with Section 3.1.

(d)     On or prior to the Effective Date, the Debtors shall deliver, or cause to be delivered, to the Liquidating Trust a complete list of all Allowed LT Claims and Disputed LT Claims, reflected on the claims registry as of the Effective Date, in the case of Allowed Priority Claims, Allowed General Unsecured Convenience Claims and Disputed Priority Claims, and as of Initial Unit Distribution Record Date, in the case of Allowed Unsecured Claims and Disputed LT Unsecured Claims.   The list shall include the names and addresses of the holders of such Claims and, in the case of Allowed LT Claims, the amounts thereof, and in the case of Disputed LT Claims, the amounts thereof as filed and the Estimated Amounts thereof.   For the avoidance of doubt, such list may include the Senior Unsecured Notes Indenture Trustee with respect to the Claims of the Senior Unsecured Noteholders, until such time as it has distributed such Units to the Senior Unsecured Noteholders or the paying agent with respect to the Senior Unsecured Notes denominated in British pounds or Euros.   It shall also state for Claims of the RMBS Trusts, whether such Claims are Recognized RMBS Claims. The list of Disputed LT Claims shall include the details of all objections (whether asserted or not) in respect of such the Claims.   On or as soon as practicable following the Effective Date, the Debtors shall also deliver or cause to be delivered to the Liquidating Trust a list of all changes to the foregoing information regarding the Allowed Unsecured Claims and Disputed LT Unsecured Claims between the Initial Unit Distribution Record Date and the Effective Date.

(e)     The Liquidating Trust, as successor in interest to the Estates, may (i) execute and deliver any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed), and (ii) take, or cause to be taken, all such further action in order to evidence, vest, perfect or effectuate the transfer of all of the Available Assets to the Liquidating Trust and consummate transactions contemplated by and to otherwise carry out the intent of the Plan Documents.   Any power of attorney or other grant or delegation of authority granted by any Debtor to a third party prior to the Effective Date shall continue in effect following the Effective Date until revoked or terminated in accordance with its terms, with the same effect as if such power of attorney or other grant or delegation of authority had been granted by the Liquidating Trust.   In addition, the Liquidating Trust, as successor in interest to the Estates, shall be entitled to receive and collect all tax refunds to which the Debtors or the Estates would otherwise be entitled, and all such tax refunds shall be added to the Administrative Expenses Set Aside or made available for distribution as Distributable Cash, as determined by the Liquidating Trust Board.

2.6    Title to Liquidating Trust Assets.  Subject to Sections 2.5(a) and 9.2(a), upon the transfer of Available Assets, the Liquidating Trust shall succeed to all of the Debtors' right, title and interest in the Available Assets, and the Debtors will have no further rights or interest in or with respect to the Available Assets, nor shall they have any rights or interest in any other Liquidating Trust Assets or the Liquidating Trust.

2.7    Valuation.  As soon as possible after the Effective Date, but in no event later than one hundred and twenty (120) days thereafter, the Liquidating Trust Board shall cause to be made, by the Liquidating Trust Management or, at the sole discretion of the Liquidating Trust Board, a third-party, a good faith valuation of the Liquidating Trust Assets (and related liabilities) held by or on behalf of the Liquidating Trust as of the Effective Date. Such aggregate valuation shall be posted on the Liquidating Trust Website, and shall be in such detail and including such supporting information as determined by the Liquidating Trust Board, in reliance on its professionals, to be reasonably necessary or appropriate for the use and understanding thereof, and shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trust and the Unitholders) for all federal, state and other income tax purposes.

2.8    No Reversion to Debtors; Distribution of Remaining Assets.

(a)    In no event shall any part of the Liquidating Trust Assets revert to or be distributed to or for the benefit of any Debtor.

(b)    To the extent that after satisfaction in full of all of the costs and expenses of the administration of the Liquidating Trust, after all Disputed LT Claims have been either Allowed or disallowed, after all Allowed LT Claims have been paid pursuant to the Plan Documents, after satisfaction of all other obligations or liabilities of the Liquidating Trust incurred or assumed in accordance with the Plan Documents, after the Liquidating Trust has made the maximum distribution of Distributable Cash in respect of the Units to the extent reasonably practicable, and after the affairs of the Liquidating Trust have been finally wound up and concluded in accordance with the provisions of Section 12.1 hereof and section 3808 of the Trust Act, there shall remain any Liquidating Trust Assets, the Liquidating Trust shall distribute such remaining Liquidating Trust Assets to an organization, selected by the Liquidating Trust Board, described in section 501(c)(3) of the Tax Code and exempt from U.S. federal income tax under section 501(a) of the Tax Code that is unrelated to the Debtors, the Liquidating Trust or any member of the Liquidating Trust Board.

2.9    Fiscal Year.  Except for the first and last years of the Liquidating Trust, the Fiscal Year of the Liquidating Trust shall be the calendar year.  For the first and last years of the Liquidating Trust, the Fiscal Year of the Liquidating Trust shall be such portion of the calendar year that the Liquidating Trust is in existence.  The terms fiscal quarter, or similar references, as used in this Liquidating Trust Agreement, shall have a correlative meaning.

2.10    Liquidating Trust Budget.

(a)    There shall be prepared a reasonably detailed annual plan and budget for the Liquidating Trust (any such plan and budget, as it may be amended from time to time in

accordance with the terms hereof, the "Liquidating Trust Budget") for each Fiscal Year, except that the Liquidating Trust Budget for the first Fiscal Year, if less than six calendar months, may be combined with the Liquidating Trust Budget for the next succeeding Fiscal Year, and the Liquidating Trust Budget for the last Fiscal Year, if less than six calendar months, may be combined with the Liquidating Trust Budget for the immediate prior Fiscal Year.  The Liquidating Trust Budget shall set forth (on an annual basis) in reasonable detail: (i) the assumptions underlying the projected recoveries and expenses associated with the administration of the Liquidating Trust for the annual budget and the funding of the Administrative Expenses Set Aside in respect thereof, and (ii) the anticipated distributions to the Unitholders.

(b)    Except as otherwise approved by the Liquidating Trust Board, the form of each Liquidating Trust Budget shall be substantially the same as the form of the initial Liquidating Trust Budget.

(c)    Not less than thirty (30) days before the beginning of each Fiscal Year (other than the first Fiscal Year and other than the second Fiscal Year, if the initial Liquidating Trust Budget covers such Fiscal Year, and other than the last Fiscal Year, if the Liquidating Trust Budget for the next preceding Fiscal Year covers such Fiscal Year), the Liquidating Trust Management shall submit to the Liquidating Trust Board a proposed Liquidating Trust Budget for such Fiscal Year, together with a comparison to the Liquidating Trust Budget then in effect and an explanation of the differences between the two in reasonable detail.  The Liquidating Trust Budget for such Fiscal Year shall not become effective until approved by Majority Consent of the Liquidating Trust Board, and until so approved, the Liquidating Trust Budget for the prior year shall constitute the Liquidating Trust Budget for the subsequent year on an interim basis.

(d)    Amendments, if any, to the Liquidating Trust Budget shall not become effective unless and until approved by Majority Consent of the Liquidating Trust Board.

(e)    Except as otherwise approved by Majority Consent of the Liquidating Trust Board, the amount expended in any Fiscal Year (or, if the initial or final Liquidating Trust Budget shall cover a combined period as provided above, in such combined period) on any item of expense set forth in the Liquidating Trust Budget shall not exceed by more than fifteen percent (15%) the budgeted amount therefor set forth in the Liquidating Trust Budget for the relevant Fiscal Year.

2.11    Insurance.  The Liquidating Trust shall maintain customary insurance coverage, including any appropriate tail coverage, for the protection of the Trustees and Liquidating Trust Management (which coverage shall be primary to any other coverage potentially available to such persons) and may procure  insurance coverage for such employees as the Liquidating Trust Board may determine in its discretion, and the cost thereof shall be reflected in the Liquidating Trust Budget.

2.12    Books and Records.

(a)    The Liquidating Trust Board shall cause to be stored and maintained

books and records for the period commencing on the date hereof through the termination of the Liquidating Trust, containing such information concerning the Liquidating Trust Assets, the conduct of the affairs of the Liquidating Trust and rights and treatment of the Unitholders, in such detail and for such periods of time as may be necessary to enable the Liquidating Trust to make full and proper accounting in respect thereof and to comply with applicable provisions of law. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Liquidating Trust.

(b)     The Liquidating Trust shall have the responsibility of storing and maintaining books and records of the Debtors with respect to the Claims of the respective beneficiaries of the RMBS Claims Trust, the Borrower Claims Trust and Private Securities Claims Trust, and the Liquidating Trust shall enter into agreements or protocols with the respective Plan Trusts, or, in the case of the Private Securities Claims Trust, the Private Securities Claimants, with respect to access to such books and records, as provided in Article XIII.E. of the Plan.

(c)     The Liquidating Trust shall be authorized without further application to the Bankruptcy Court or notice to any party, to abandon or otherwise destroy books and records (whether in electronic or paper format) in accordance with Section 12.3.

(d)     Anything in the Trust Act to the contrary notwithstanding, no Unitholder shall have the right to obtain from the Liquidating Trust any of its books or records except as expressly provided in this Liquidating Trust Agreement or as may otherwise be expressly permitted by the Liquidating Trust Board.

2.13    No Interest or Accruals.  Except as otherwise may be expressly provided in the Plan Documents, holders of Claims shall not be entitled to interest on the distributions provided for in this Liquidating Trust Agreement, regardless of whether such distributions are deliverable on or at any specified time after the Effective Date.

## ARTICLE III
## PRIORITY AND OTHER DISTRIBUTIONS AND RESERVES

3.1    Professional Claims.  The amount of Allowed Professional Claims owing to the Professionals, as approved by an order of the Bankruptcy Court, shall be paid in Cash to such Professionals by the Liquidating Trust, without interest or other earnings therefrom, when such Claims are Allowed by an order of the Bankruptcy Court.

3.2    Borrower Claims Trust; NJ Carpenters Claims Distribution.

(a)     On or as soon as practicable after the Effective Date, the Liquidating Trust, in its capacity as Disbursing Agent, if such payment is not otherwise being made by the Debtors, shall fund the Borrower Claims Trust with (i) $57.6 million in Cash, (x) less any amounts paid by the Debtors to or on behalf of the holders of Borrower Claims prior to the Effective Date pursuant to the Supplementary Case Management Procedures or any other order of the Bankruptcy Court, and (y) plus the amount of the Borrower Trust True-up, if any; and

(ii) the amount of the administrative costs and expenses of the Borrower Claims Trust to be funded as of the Effective Date by the Liquidating Trust.

(b)    Subject to receipt of the NJ Carpenters Approval, within ten (10) business days after the Effective Date, the Liquidating Trust, if such payment is not otherwise being made by the Debtors, shall make the NJ Carpenters Claims Distribution.

3.3    Allowed Priority Claims.    On or as soon as practicable after the Effective Date, the Liquidating Trust, in its capacity as Disbursing Agent, if such payment is not otherwise being made by the Debtors, shall pay to the holders of the Allowed Priority Claims (or, in the case of Allowed Junior Secured Notes Claims, to the Junior Secured Notes Indenture Trustee) as of the Effective Date the amounts payable in respect of such Claims. The Liquidating Trust, in its capacity as Disbursing Agent, shall from time to time pay the holders of Allowed Priority Claims that become Allowed after the Effective Date the amounts payable in respect of such Claims as soon as practicable after such Claims become Allowed, but in no event less frequently than on a quarterly basis to the extent of any Allowed Priority Claims that have not been previously satisfied. Such Claims shall be satisfied out of the Administrative, Priority, Secured and Convenience Distribution Reserve, or if the funds in such reserve are insufficient to satisfy the Allowed Priority Claims, from other Cash of the Liquidating Trust, and allowance therefor shall be made prior to the distribution of Distributable Cash to Unitholders.

3.4    Allowed General Unsecured Convenience Claims.    The Liquidating Trust, in its capacity as Disbursing Agent, shall from time to time, as determined by the Liquidating Trust Board, pay the holders of General Unsecured Convenience Claims that are Allowed as of the Effective Date or become Allowed thereafter, but in no event less frequently than on a quarterly basis to the extent of any Allowed General Unsecured Convenience Claims that have not been previously satisfied, the Cash amounts payable to such holders under the terms of the Plan. Such Claims shall be satisfied out of the Administrative, Priority, Secured and Convenience Distribution Reserve, or if the funds in such reserve are insufficient to satisfy the Allowed General Unsecured Convenience Claims, from other Cash of the Liquidating Trust, and allowance therefor shall be made prior to the distribution of Distributable Cash to Unitholders.

3.5    ETS Unsecured Claims.

(a)    On or as soon as practicable after the Effective Date, the Liquidating Trust, in its capacity as Disbursing Agent, if such payment is not otherwise being made by the Debtors, shall pay to each holder of an Allowed ETS Unsecured Claim as of the Effective Date an amount equal to the Allowed amount of such Claim multiplied by the ETS Distribution Ratio.

(b)    Subject to the last sentence of this subsection (b), if and to the extent that an ETS Unsecured Claim becomes Allowed following the Effective Date, the Liquidating Trust in its capacity as Disbursing Agent, shall thereafter pay to the holder thereof an amount equal to the Allowed amount of such Claim multiplied by the ETS Distribution Ratio. The Liquidating Trust shall make such payments periodically following the time that such ETS

Unsecured Claims become Allowed, at such time as determined by the Liquidating Trust
Board, but such payments shall be made no less frequently than quarterly.  In no event,
however, shall the amount paid in respect of all ETS Unsecured Claims, in the aggregate,
exceed the amount of the ETS Distributable Cash.

(c)    The Liquidating Trust shall reserve Cash for the payment of ETS
Unsecured Claims that are Allowed as of the Effective Date but are not paid on or promptly
following the Effective Date, or that are Disputed Claims as of the Effective Date, in the
amount of (i) ETS Distributable Cash less (ii) the amount of Cash distributed to holders of
Allowed ETS Unsecured Claims on or promptly following the Effective Date.  Such Cash shall
be paid out of the Administrative Expenses Set Aside.

(d)    After all Disputed Priority Claims against ETS and all ETS Unsecured
Claims that were Disputed Claims as of the Effective Date have been resolved, and all Allowed
Priority Claims against ETS and all Allowed ETS Unsecured Claims have been satisfied, there
shall be distributed to the holders of Allowed ETS Unsecured Claims (i) any Cash remaining in
the Administrative, Priority, Secured and Convenience Distribution Reserve in respect of
Disputed Priority Claims against ETS that are disallowed and (ii) any Cash remaining in the
Administrative Expenses Set Aside held in accordance with subsection (c) above.  Such Cash
shall be distributed to the holders of Allowed ETS Unsecured Claims pro rata in accordance
with the Allowed amounts of the Allowed ETS Unsecured Claims held by each of them.

3.6    Administrative, Priority, Secured and Convenience Distribution Reserve.

(a)    On the Effective Date, the Liquidating Trust, in its capacity as
Disbursing Agent, shall establish an Administrative, Priority, Secured and Convenience
Distribution Reserve for the purpose of satisfying Allowed Priority Claims and General
Unsecured Convenience Claims that are Allowed as of the Effective Date but that cannot be
paid on or promptly following the Effective Date, Disputed Priority Claims that may become
Allowed after the Effective Date, and General Unsecured Convenience Claims that are
Allowed or that may become Allowed on or after the Effective Date.  At its discretion, the
Liquidating Trust Board may reserve non-Cash assets in satisfaction of the aforesaid reserve
requirements as provided for in the Board Protocol, which non-Cash assets may be monetized
from time to time by the Administrative, Priority, Secured and Convenience Distribution
Reserve; provided, however, that in connection with any such reservation of non-Cash assets,
the Liquidating Trust Board shall give due consideration to the timing and amount of
scheduled and anticipated payments and both the fair market value and the timing of
monetization of such non-Cash assets, so as to enable the Liquidating Trust to pay its
obligations as they become due.

(b)    Subject to Section 3.6(a), on the Effective Date, the Liquidating Trust
shall deposit into the Administrative, Priority, Secured and Convenience Distribution
Reserve, an amount in Cash equal to (x) the amount of all Allowed Priority Claims that are Allowed as
of the Effective Date and are not paid in accordance with Section 3.3, and the Estimated
Amount of all Disputed Priority Claims as of the Effective Date, and (y) the amount of all
General Unsecured Convenience Claims that are Allowed as of the Effective Date and the

Estimated Amount of all General Unsecured Convenience Claims that are disputed as of the Effective Date.

(c)     All Cash held in the Administrative, Priority, Secured and Convenience Distribution Reserve shall be maintained with a United States FDIC insured financial institution, and may be maintained in an interest-bearing account, as the Liquidating Trust Board may from time to time determine.  The Cash in the Administrative, Priority, Secured and Convenience Distribution Reserve shall be held separately and shall not be commingled with any other Cash constituting Liquidating Trust Assets.

(d)     After all Disputed Priority Claims and all General Unsecured Convenience Claims that were Disputed Claims as of the Effective Date have been resolved and all Allowed Priority Claims and General Unsecured Convenience Claims that are Allowed have been satisfied, and if at such time there is Cash or other assets remaining in the Administrative, Priority, Secured and Convenience Distribution Reserve, then such remaining Cash shall be unreserved and unrestricted, and may be added to the Administrative Expenses Set Aside or made available for distribution as Distributable Cash to the Unitholders, as determined by the Liquidating Trust Board, and any other assets released from the Administrative, Priority, Secured and Convenience Distribution Reserve shall become general, unrestricted assets of the Liquidating Trust..

(e)     If the Liquidating Trust Board at any time shall determine that Cash or other assets in the Administrative, Priority, Secured and Convenience Distribution Reserve is insufficient to satisfy all Disputed Priority Claims and all General Unsecured Convenience Claims that have or may become Allowed after the Effective Date, Cash or other assets shall be added to the Administrative, Priority, Secured and Convenience Distribution Reserve in such amount as the Liquidating Trust Board shall determine is necessary to provide for such satisfaction as such Claims become due.  If the Liquidating Trust Board at any time shall determine that it is not necessary to hold in the Administrative, Priority, Secured and Convenience Distribution Reserve all of the Cash or other assets, if any, contained therein in order to satisfy all of Disputed Priority Claims and all General Unsecured Convenience Claims that have or may become Allowed, Cash may be released from the Administrative, Priority, Secured and Convenience Distribution Reserve in such amount as the Liquidating Trust Board determines is not necessary for such purposes.  Such released Cash shall be unreserved and unrestricted, and may be added to the Administrative Expenses Set Aside or made available for distribution as Distributable Cash to the Unitholders, as determined by the Liquidating Trust Board, and any other assets released from the Administrative, Priority, Secured and Convenience Distribution Reserve shall become general, unrestricted assets of the Liquidating Trust.

3.7     <u>Minimum Distributions; Other Limitations</u>.   Other than with respect to Allowed General Unsecured Convenience Claims and Allowed ETS Unsecured Claims, no Cash payment of less than $50 shall be made by the Liquidating Trust, as Disbursing Agent, to a holder of an Allowed Claim on account of such Allowed Claim. If a holder of an Allowed Claim would be entitled to receive less than $50 as of the time of a particular distribution, but would be entitled to receive more than $50 in combination with later distributions, the Liquidating Trust, as Disbursing Agent, will combine such distributions with later distributions

to such holder of an Allowed Claim so that such holder may eventually be entitled to a distribution of at least $50 in value.  Whenever any payment of Cash of a fraction of a dollar would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

## ARTICLE IV
## ISSUANCE OF UNITS

4.1    Number of Units.  Subject to increase in order to satisfy any applicable legal or regulatory requirement, the aggregate number of Units that the Liquidating Trust shall be authorized to issue is one hundred million (100,000,000).

4.2    Unit Issuance Percentages.    If the adjustment to the Unit Issuance Percentages has not theretofore been made and communicated to the Liquidating Trust, then following the later of the Effective Date and the entry of the Reserve Order, the Liquidating Trust shall cause the adjustment to the Unit Issuance Percentages provided for in Article IV.J. of the Plan to be calculated.  Based on the adjusted Unit Issuance Percentages, the Liquidating Trust shall cause to be calculated the GMACM Debtors Unit Distribution and the GMACM Debtors Unit Issuance Ratio; the ResCap Debtors Unit Distribution and the ResCap Debtors Unit Issuance Ratio; the RFC Debtors Unit Distribution and the RFC Debtors Unit Issuance Ratio; and the Private Securities Claims Trust Unit Distribution.

4.3    Issuance and Distribution of Units.

(a)    All Units issued in accordance with the provisions of this Article IV to the Private Securities Claim Trust shall be in full and final satisfaction of all Private Securities Claims; all Units so issued to the RMBS Claims Trust shall be in full and final satisfaction of all RMBS Trust Claims; and all Units issued or distributed to holders of Allowed Unsecured Claims entitled to receive Units hereunder, including Units issued but held in accordance with the provisions of Section 4.5(b) or withheld in accordance with the provisions of Section 4.5(c), shall be in full and final satisfaction of such Allowed Unsecured Claims.

(b)    On the Initial Unit Distribution Date, there shall be issued—

(i)    to the Private Securities Claims Trust, the Private Securities Claims Trust Unit Distribution;

(ii)    to each holder of one or more Allowed ResCap Unsecured Claims as of the Initial Unit Distribution Record Date, a number of Units equal to (x) the Allowed amount of such Claims, multiplied by (y) the ResCap Debtors Unit Issuance Ratio;

(iii)    to each holder of one or more Allowed GMACM Unsecured Claims (other than the RMBS Trusts and holders of Allowed ETS Unsecured Claims) as of the Initial Unit Distribution Record Date, a number of Units equal to (x) the Allowed amount of such Claims, multiplied by (y) the GMACM Debtors Unit Issuance Ratio;

(iv)    to each holder of one or more Allowed RFC Unsecured Claims (other than the RMBS Trusts) as of the Initial Unit Distribution Record Date, a number of

Units equal to (x) the Allowed amount of such Claims, multiplied by (y) the RFC Debtors Unit Issuance Ratio;

      (v)    to the Disputed Claims Reserve, the Disputed Claims Reserve Units; and

      (vi)    to the RMBS Claims Trust, a number of Units equal to the number of Units that would otherwise be issuable to the RMBS Trusts but for the provisos in clauses (iii) and (iv) of this Section 4.3(b);

provided that, in accordance with the terms of the Plan, (x) five and seven-tenths percent (5.7%) of the Units that would otherwise be issuable to the RMBS Claims Trust shall be issued to counsel for the Institutional Investors in satisfaction of the Allowed Fee Claim; and (y) all Units otherwise issuable to the Senior Unsecured Noteholders shall be issued to the Senior Unsecured Notes Indenture Trustee, for distribution by the Senior Unsecured Notes Indenture Trustee in accordance with Article VII.G. of the Plan.

      (c)    Each holder of one or more Disputed LT Unsecured Claims that was not Allowed, in whole or in part, as of the Initial Unit Distribution Record Date and that are subsequently Allowed, in whole or in part, shall be issued from the Disputed Claims Reserve on the Unit Distribution Date next following the date that the Claim becomes Allowed, or if such date occurs in the period between a Unit Distribution Record Date and the corresponding Unit Distribution Date, on the next following Unit Distribution Date, a number of Units equal to—

      (i)    with respect to a ResCap Debtors Unsecured Claim, (x) the amount of the portion of such Claim that is Allowed multiplied by (y) the ResCap Debtors Unit Issuance Ratio;

      (ii)    with respect to a GMACM Debtors Unsecured Claim, (x) the amount of the portion of such Claim that is Allowed multiplied by (y) the GMACM Debtors Unit Issuance Ratio; and

      (iii)    with respect to a RFC Debtors Unsecured Claim, (x) the amount of the portion of such Claim that is Allowed multiplied by (y) the RFC Debtors Unit Issuance Ratio;

as applicable, together with Cash as provided in Section 5.4(b).

      (d)    No fractional Units will be issued or distributed.  Instead, the number of Units shall be rounded up or down as follows: (i) fractions less than one-half (1/2) shall be rounded to the next lower whole number and (ii) fractions equal to or greater than one-half (1/2) shall be rounded to the next higher whole number.  For the purposes of determining the number of Units to which a holder of Allowed Unsecured Claims is entitled, all Allowed Unsecured Claims of such holder shall be aggregated.  The total amount of Units to be distributed pursuant to this Liquidating Trust Agreement shall be adjusted as necessary to account for such rounding.  No consideration shall be provided in lieu of fractional Units that are rounded down.

(e)    The issuance or distribution of Units in accordance with this <u>Section 4.3</u> shall be subject to the provisions of <u>Section 4.5(b)</u>.

4.4    <u>Evidence of Units</u>.

(a)    Except as otherwise provided in this Liquidating Trust Agreement, Units will be issued in the form of a global unit certificate (the "<u>Global Unit Certificate</u>") only, registered in the name of DTC or its nominee (or the successor of either of them), and interests in the Global Unit Certificate will be held only through participants (including securities brokers and dealers, banks, trust companies, clearing corporations and other financial organizations) of DTC, as depositary.  The Global Unit Certificate shall bear such legend as may be required by DTC. The aggregate number of Units issued may from time to time be increased, if required by any legal or regulatory requirements, by adjustments made on the records of the Liquidating Trust and a corresponding increase in the number of Units evidenced by such Global Unit Certificate (as shall be specified in the schedule included as part of the Global Unit Certificate or the issuance of further Global Unit Certificates in respect of such additional Units).  Units will not be issued in definitive form, except in the limited circumstances described in <u>Section 4.4(b)</u>.  For so long as DTC serves as depositary for the Units, the Liquidating Trust may rely on the information and records of DTC to make distributions and send communications to the holders of Units and, in so doing, any persons participating in the management of the Liquidating Trust, including the Liquidating Trust Board and the Liquidating Trust Management, shall be fully protected and incur no liability to any holder of Units, any transferee (or purported transferee) of Units, or any other person or entity.

(b)    If DTC is unwilling or unable to act, or to continue to act, as a depositary for the Units, the Liquidating Trust shall issue Units in the form of certificates ("<u>Unit Certificates</u>"), or, if one or more Global Unit Certificates representing the Units has previously been issued, exchange the Units represented by Global Unit Certificate(s) for Unit Certificates.  In such event, the Liquidating Trust shall maintain or cause to be maintained a Unit register (the "<u>Unit Register</u>") on which the ownership of each Unit Certificate shall be recorded, and on which the transfer of such Unit Certificates shall be reflected.  The Liquidating Trust shall be entitled to treat the Person in whose name a Unit Certificate is registered on such Unit Register as the owner of such Unit Certificate and the Units represented thereby for all purposes, including the right to receive distributions of Distributable Cash in respect thereof.  The Liquidating Trust shall also in such event establish or cause to be established customary procedures for the transfer and exchange of Unit Certificates and the replacement of lost, stolen or mutilated Unit Certificates.

4.5    <u>Manner of Distribution of Units</u>.

(a)    Except in the circumstances described in <u>Section 4.4(b)</u>, in order to receive their Units, holders of Allowed Unsecured Claims entitled to receive Units (other than (i) the holders of RMBS Trust Claims, whose Units will be issued to the RMBS Claims Trust and (ii) Senior Unsecured Noteholders, whose Units will be issued to the Senior Unsecured Notes Indenture Trustee) must designate a direct or indirect participant in DTC with whom such holder has a securities account and take such other ministerial actions as Liquidating

Trust Management shall from time to time reasonably require by written communication to such holders, in the form of Exhibit A or otherwise. The Liquidating Trust shall communicate with the Private Securities Claims Trust, the RMBS Claims Trust and with the Senior Unsecured Notes Indenture Trustee to obtain from them account information for the respective DTC participants through which the Units distributed to them will be held.

(b)     If and for so long as a holder of an Allowed Unsecured Claim (other than (i) the holders of RMBS Trust Claims, whose Units will be issued to the RMBS Claims Trust and (ii) Senior Unsecured Noteholders, whose Units will be issued to the Senior Unsecured Notes Indenture Trustee) does not designate a direct or indirect participant in DTC and take such other actions required by Section 4.5(a), the Liquidating Trust shall, except as otherwise provided by Section 4.5(c), hold the Units such holder is otherwise entitled to receive, together with any Cash distributed in respect of such Units, until such time as such holder complies with the requirements of Section 4.5(a). At any time following the date on which the Liquidating Trust determines, in its sole discretion, that a holder of an Allowed Unsecured Claim complies in full with the requirements of Section 4.5(a), but in any event, as soon as practicable following the beginning of the fiscal quarter next following such date, the Liquidating Trust shall distribute to such holder the Units and any distributions thereon to which such holder is entitled. Any Cash held by the Liquidating Trust on account of Units that remain undistributed pending compliance with the provisions of Section 4.5(a) as aforesaid shall be separately recorded by the Liquidating Trust.

(c)     If a holder of an Allowed Unsecured Claim otherwise entitled to receive Units has not complied with the requirements of Section 4.5(a) or Section 5.6 prior to the final Distribution Date, then as of the date immediately before the final Distribution Date (i) the Units otherwise distributable to such holder shall be deemed cancelled and not outstanding, and (ii) the Cash distributed or distributable in respect of such Units shall be distributed Pro Rata to all holders of Units outstanding on the final Distribution Date. Notwithstanding the foregoing, if such holder is a beneficiary of the Private Securities Claims Trust whose Units were returned by the Private Securities Claims Trust to the Liquidating Trust, the Liquidating Trust shall hold such Units and any Cash distributed in respect thereof until such time as such beneficiary complies with the requirements of Section 4.5(a) hereof; provided that in the event such beneficiary has not complied with the requirements of Section 4.5(a) of this Liquidating Trust Agreement by the date that is ten (10) days before the final Distribution Date, (i) the Units otherwise distributable to such beneficiary shall be deemed cancelled and not outstanding, and (ii) the Cash distributed or distributable in respect of such Units shall be distributed pro rata (in accordance with the Private Securities Claims Allocation Agreement, dated as of August 16, 2013, a copy of which shall be provided by the trustee for the Private Securities Claims Trust) to the other original beneficiaries of the Private Securities Claims Trust, on the final Distribution Date.

(d)     The Liquidating Trust shall also be authorized to withhold and retain Units otherwise issuable to holders of Allowed Unsecured Claims that are subject to tax withholding to the extent required by applicable Tax laws, and any Units so withheld shall be deemed issued in satisfaction of such Claims for all purposes of the Plan and this Liquidating Trust Agreement. The Liquidating Trust shall also be authorized to apply Cash and other

Liquidating Trust Assets allocable to amounts distributed in respect of any such retained Units to satisfy such Tax withholding obligations in accordance with <u>Section 5.6</u>.

(e)    If the Private Securities Claims Trust shall distribute any Units to any of its beneficiaries, such beneficiaries shall be deemed Unitholders and Liquidating Trust Beneficiaries from and after the date of any such distribution.

4.6    <u>Transfers of Units; Absence of Market for Units</u>.

(a)    Units shall be freely negotiable and transferable to the extent provided herein and the provisions of applicable securities laws.  For so long as DTC continues to serve as depositary for the Units, the transferability of the Units shall also be subject to the requirements of DTC's electronic book-entry system.

(b)    The Units shall not be listed by the Liquidating Trust on a national securities exchange or interdealer quotation system. Neither the Liquidating Trust nor anyone acting on its behalf shall, directly or indirectly, engage in any activity designed to facilitate or promote trading in the Units, including by placing advertisements, distributing marketing materials, or collecting or publishing information regarding prices at which the interests may be transferred;  <u>provided</u> that no activity undertaken by the Liquidating Trust in compliance with the terms of the Plan Documents shall be deemed to facilitate or promote trading in the Units for these purposes.

4.7    <u>Rights of Unitholders</u>.  Each Unitholder shall be entitled to participate in the rights and benefits due to it hereunder on account of its Units.  Each Unitholder shall take and hold the same, subject to all the terms and conditions of the Plan Documents.  The interest of a Unitholder is hereby declared and shall be, in all respects, personal property.

4.8    <u>Interest Beneficial Only</u>.    Except as expressly provided hereunder (including <u>Section 10.1(b)</u>), a Unitholder shall have no title to, right to, possession of, management of or control of the Liquidating Trust or the Liquidating Trust Assets.  The ownership of Units in the Liquidating Trust shall not entitle any Unitholder to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as may be specifically provided herein.

4.9    <u>Conflicting Claims</u>.  If any conflicting claims or demands are made or asserted with respect to one or more Units, or a beneficial interest therein, the Liquidating Trust (as determined by the Liquidating Trust Board at its sole election, or by Liquidating Trust Management pursuant to delegated authority of the Liquidating Trust Board) shall be entitled to refuse to comply with any such conflicting claims or demands.  In so refusing, the Liquidating Trust may elect to make no payment or distribution with respect to the Units at issue subject to the claims or demands involved, or any part thereof, and the Liquidating Trust shall be entitled to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive and continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Liquidating Trust, the Liquidating Trust Board, the Liquidating Trust Management nor the Liquidating Trust Agents shall be or become liable to any party for either (i) the election to continue making distributions pursuant to its books and records and/or the

books and records of DTC, as applicable, without regard to the conflicting claims or demands; or (ii) the election to cease payments or distributions with respect to the subject Unit or Units. In the event that the Liquidating Trust elects to cease payments, it shall be entitled to refuse to act until either (x) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or such other court of proper jurisdiction) or (y) all differences have been resolved by a written agreement among all of such parties and the Liquidating Trust, which agreement shall include a complete release of the Liquidating Trust, the Liquidating Trust Board and the Liquidating Trust Management in form and substance reasonably satisfactory to the Liquidating Trust.

4.10    Unitholder Liability to Third Persons.  No Unitholder shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Liquidating Trust Assets or the affairs of the Liquidating Trust, to the fullest extent provided by section 3803(a) of the Trust Act.

4.11    Actions in the Right of the Liquidating Trust.  No Unitholder or Unitholders shall have the right to bring an action in the right of the Liquidating Trust to recover a judgment pursuant to section 3816 of the Trust Act unless such Unitholder or Unitholders individually or collectively own ten percent (10%) or more of the outstanding Units.

## ARTICLE V
## CASH DISTRIBUTIONS TO UNITHOLDERS

5.1    Distributions Generally.

(a)    A Unit shall entitle the holder thereof to receive a Pro Rata share of the Distributable Cash distributed by the Liquidating Trust, when and as such distributions are made pursuant to this Liquidating Trust Agreement.

(b)    On each Distribution Date, the Liquidating Trust (i) shall distribute to each Unitholder of record on the next preceding Distribution Record Date (or, in the case of the Initial Distribution Date, the Initial Unit Distribution Record Date) an amount equal to its respective Pro Rata share of the Distributable Cash to be distributed on such Distribution Date, and (ii) shall deposit into the Disputed Claims Reserve the Pro Rata share of such Distributable Cash allocable to the Units held in the Disputed Claims Reserve.

5.2    Timing of Distributions.

(a)    The initial distribution of Distributable Cash to the Unitholders shall be made by the Liquidating Trust on the Initial Distribution Date.

(b)    Subsequent Distribution Dates shall be determined by the Liquidating Trust Board from time to time, but such Distribution Dates shall occur no less frequently than semi-annually; provided, however, that the Liquidating Trust shall not be required to make a semi-annual distribution if the aggregate Distributable Cash at the time is such as would make the distribution impracticable, as determined by the Liquidating Trust Board, in which case such Cash will be included in the Distributable Cash on a subsequent Distribution Date.

(c)    In the event that any distribution is required to be made under this Liquidating Trust Agreement on a date that is not a Business Day, then the making of such distribution may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

5.3    Distribution Record Date; Distributable Cash.

(a)    In advance of each Distribution Date (other than the Initial Distribution Date), the Liquidating Trust Board shall establish a Distribution Record Date for purposes of determining the Unitholders entitled to receive a distribution of Distributable Cash on such Distribution Date, which Distribution Date shall be no less than fifteen (15) and no more than thirty (30) days prior to the corresponding Distribution Date.

(b)    Except with respect to the Initial Distribution Date, the Liquidating Trust Board shall, in advance of the corresponding Distribution Record Date, make a determination of the Distributable Cash distributable on any Distribution Date, giving due regard for the Cash anticipated to be held by the Liquidating Trust as of such Distribution Date (not including Cash held in the Disputed Claims Reserve or any other reserve maintained by the Liquidating Trust or withheld in accordance with Section 4.5(b)), and the sufficiency of the Cash held in or that may be required to be added to the Administrative Expenses Set Aside or the Administrative, Priority, Secured and Convenience Distribution Reserve or that may be available to be released from the Administrative Expenses Set Aside or the Administrative, Priority, Secured and Convenience Distribution Reserve as no longer necessary for the purposes thereof.

(c)    Following its determination of the Distributable Cash to be distributed on any Distribution Date, but no later than five (5) Business Days in advance of the corresponding Distribution Record Date, unless otherwise determined by the Liquidating Trust Board for good reason shown, the Liquidating Trust shall issue a press release and post to the Liquidating Trust Website disclosure regarding the distribution on such Distribution Date, including the Distribution Record Date, the Distribution Date and the Distributable Cash to be distributed, in the aggregate and on a per Unit basis (and shall provide the RMBS Claims Trust Trustee with written notice of such disclosure).

(d)    Subject to the treatment of the Units for the Senior Unsecured Noteholders as described in Article VII.G of the Plan, the distribution on the Initial Distribution Date shall be made to holders of Units of record as of the Initial Unit Distribution Record Date.  The amount of Distributable Cash to be distributed on the Initial Distribution Date shall be as determined by the Liquidating Trust Board and shall be publicly disclosed in the manner described in Section 5.3(c), as promptly as practicable following the Effective Date.

(e)    For purposes of making any distribution of Distributable Cash, the term "of record" or any similar term means, if the Units are at the relevant time held through DTC, the determination of the beneficial holders of the Units entitled to receive such distribution in accordance with the practices and procedures of DTC and its direct and indirect participants; and if the Units at the relevant time are represented by Unit Certificates, the holders of the Units as reflected on the Unit Register.

5.4    Distributions in Respect of Disputed LT Unsecured Claims.

(a)    The Liquidating Trust shall resolve or cause to be resolved Disputed LT Unsecured Claims, as provided in Section 7.2.

(b)    If a Disputed LT Unsecured Claim is Allowed, in whole or in part, there shall be released to the holder from the Disputed Claims Reserve, on the Unit Distribution Date next following the date that such Claim is Allowed, (i) a number of Units corresponding to such Claim, or the Allowed portion thereof, as the case may be, as provided in Section 4.3(c); and (ii) Cash in the amount of all distribution made to the Disputed Claims Reserve in respect of such Units since the Effective Date.

(c)    Subject to Section 5.5(b), if a Disputed LT Unsecured Claim is disallowed, in whole or in part, then, on the Unit Distribution Date next following the date of the determination not to Allow such Claim, in whole or in part, there shall be released from the Disputed Claims Reserve (i) a number of Units equal to (x) the Estimated Amount of the Claim to the extent that it has been disallowed, multiplied by (y) (A) if such Disputed LT Unsecured Claim is a ResCap Unsecured Claim, the ResCap Debtors Unsecured Unit Issuance Ratio, (B) if such Disputed LT Unsecured Claim is a GMACM Unsecured Claim, the GMACM Debtors Unsecured Unit Issuance Ratio, or (C) if such Disputed LT Unsecured Claim is a RFC Debtors Unsecured Claim, the RFC Debtors Unsecured Unit Issuance Ratio, as applicable, which Units shall be cancelled and retired; and (ii) Cash or other assets in the amount of all distributions made to the Disputed Claims Reserve in respect of such Units since the Effective Date which Cash shall become unreserved and unrestricted, and shall be added to the Administrative Expenses Set Aside or made available for distribution to Unitholders as Distributable Cash, as determined by the Liquidating Trust Board, and any such non-Cash assets shall become general, unrestricted assets of the Liquidating Trust; provided that the Liquidating Trust Board, may in its sole discretion, retain such number of Units and such Cash or other assets in the Disputed Claims Reserve that would otherwise have been cancelled, retired or made unreserved or unrestricted, as applicable, pursuant to this Section 5.4(c), if it determines that such Units and Cash or other assets may be necessary to satisfy Disputed LT Unsecured Claims that may become Allowed in the future.

(d)    If any Units shall be cancelled and retired as provided in Section 5.4(c), then from and after the Unit Distribution Date on which such cancellation occurs, all determinations of Pro Rata share amounts shall be made excluding such Units.

(e)    At such time as all Disputed LT Unsecured Claims have been resolved, any remaining Units in the Disputed Claims Reserve shall be cancelled and any remaining Cash in the Disputed Claims Reserve shall become unreserved and unrestricted, and shall be added to the Administrative Expenses Set Aside or shall be available for distribution to the Unitholders as Distributable Cash, as determined by the Liquidating Trust Board. Any non-Cash assets remaining in the Disputed Claims Reserve shall become general, unrestricted assets of the Liquidating Trust.

5.5    Adjustments to Estimated Amounts.

(a)    The Liquidating Trust Board from time to time may make immaterial technical adjustments, or seek an adjusted determination from the Bankruptcy Court of, the Estimated Amounts of the Disputed LT Unsecured Claims.

(b)    If there shall be an increase in the Estimated Amounts of the Disputed LT Unsecured Claims in accordance with Section 5.5(a), no additional Units or Cash or other assets shall be added to the Disputed Claims Reserve.  In such a case, however, the Liquidating Trust Board may determine to retain in the Disputed Claims Reserve such number of Units and such Cash or other assets as would be necessary to satisfy the increase in Estimated Amounts, as provided in Section 5.4(c).

(c)    If there shall be a decrease in the Estimated Amounts of the Disputed LT Unsecured Claims in accordance with Section 5.5(a), the Liquidating Trust Board may, but shall not be required to, determine to release from the Disputed Claims Reserve (i) a number of Units equal to the sum of (x) (A) the decrease in the Estimated Amounts of the Disputed LT Unsecured Claims attributable to ResCap Unsecured Claims, multiplied by (B) the ResCap Debtors Unsecured Unit Issuance Ratio, (y) (A) the decrease in the Estimated Amounts of the Disputed LT Unsecured Claims attributable to GMACM Unsecured Claims, multiplied by (B) the GMACM Debtors Unsecured Unit Issuance Ratio, and (z) (A) the decrease in the Estimated Amounts of the Disputed LT Unsecured Claims attributable to RFC Unsecured Claims, multiplied by (B) the RFC Debtors Unsecured Unit Issuance Ratio, which Units shall be cancelled and retired; and (ii) Cash or other assets in the amount of all distributions made to the Disputed Claims Reserve in respect of such Units since the Effective Date, which Cash shall then be unreserved and unrestricted, and which may be added to the Administrative Expenses Set Aside or be made available for distribution to Unitholders, in such amounts as determined by the Liquidating Trust Board, and any such non-Cash assets shall become general, unrestricted assets of the Liquidating Trust; provided that the Liquidating Trust Board may, in its sole discretion, determine to retain such number of Units and such Cash or other assets in the Disputed Claims Reserve that would otherwise have been cancelled, retired or made unreserved or unrestricted, as applicable, pursuant to this Section 5.5(c), if it determines that such Units and Cash or other assets may be necessary to satisfy Disputed LT Unsecured Claims that may become Allowed in the future.

5.6    Withholding and Reporting Requirements.  The Liquidating Trust may withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Unitholders.  All such amounts withheld and paid to the appropriate Tax Authority shall be treated as amounts distributed to such holders for all purposes of the Plan and this Liquidating Trust Agreement.  To the extent an amount has been placed in escrow pending resolution of the need to withhold, and the Liquidating Trust determines that no withholding is required, such amounts shall be distributed to the Unitholders with respect to whom such amounts were previously withheld.  The Liquidating Trust shall be authorized to collect such tax information from the Unitholders (including social security numbers or other tax identification information) as it in its sole discretion deems necessary to effectuate the Plan and this Liquidating Trust Agreement.   To that end, the Liquidating Trust may send to Unitholders a written communication requesting that the Unitholder provide certain tax information and the specifics of their holdings to the extent the

Liquidating Trust or any disbursing agent deems appropriate (including completing the appropriate Internal Revenue Service Form W-8 or Internal Revenue Service Form W-9, as applicable to each holder).  The Liquidating Trust may refuse to make a distribution to any Unitholder that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a Unitholder, the Liquidating Trust shall make such distribution(s) to which the Unitholder is entitled, without interest; provided further that, if the holder fails to comply with such a request within one (1) year, (i) any pending distribution(s) allocated to such Unitholder shall be deemed an unclaimed distribution to be treated as the Liquidating Trust Board determines in its discretion; and (ii) the Liquidating Trust shall not be required to allocate any future distributions to such holder unless and until the holder provides the requested tax information; and provided further that, if the Liquidating Trust fails to withhold in respect of amounts received or distributable with respect to any such holder and the Liquidating Trust is later held liable for the amount of such non-allocated future distributions, such holder shall reimburse the Liquidating Trust for such liability including interest, penalties, fines and other additional amounts with respect thereto. Notwithstanding the foregoing, each Unitholder that receives a distribution under the Plan shall have the sole and exclusive responsibility for the payment of any Taxes imposed by any governmental unit, including income, withholding and other Taxes, on account of such distribution.

5.7    Disbursing Agent.  The Liquidating Trust may engage one or more agents to make distributions, including distributions of Units.  References in this Liquidating Trust Agreement to distributions by the Liquidating Trust shall include distributions made by a disbursing agent.

## ARTICLE VI
## BOARD OF TRUSTEES

6.1    General.    The affairs of the Liquidating Trust shall be managed by, or under the direction, of the Liquidating Trust Board, which shall have such powers and authority as are provided in this Article VI and as elsewhere set forth in this Liquidating Trust Agreement and in the Trust Act.

6.2    Membership.

(a)    As of the Effective Date, the Liquidating Trust Board shall consist of five (5) Liquidating Trustees.  The Liquidating Trustees comprising the Liquidating Trust Board are set forth on the signature page to this Liquidating Trust Agreement, and by execution hereof, each Liquidating Trustee accepts his or her trusteeship of the Liquidating Trust, on the terms set forth herein.

(b)    Each Liquidating Trustee shall be a natural person at least 18 years of age.  Each Person appointed as a Liquidating Trustee shall be deemed a trustee under the Trust Act, with all privileges and immunities appurtenant thereto, and, as necessary or applicable, shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(c)     Each Liquidating Trustee shall hold office until the earlier of (i) the termination of the Liquidating Trust, (ii) the resignation, death or disability of such Liquidating Trustee or (iii) the removal of such Liquidating Trustee in accordance with this Liquidating Trust Agreement.

(d)     Any Liquidating Trustee may resign upon thirty (30) days' prior written notice to the other members of the Liquidating Trust Board.

(e)     Any Liquidating Trustee may be removed for Cause in accordance with the following procedures.  For purposes of these procedures, references to the Liquidating Trust Board shall mean the members of the Liquidating Trust Board other than the Liquidating Trustee whose removal is being sought (the "Specified Liquidating Trustee").

(i)     The Liquidating Trust Board shall give written notice to the Specified Liquidating Trustee and the Nominating Party that selected the Specified Liquidating Trustee (or any Successor Nominating Party that succeeded to that Nominating Party's rights hereunder), which notice shall describe in reasonable detail the actions or inactions on the basis of which the other members of the Liquidating Trust Board have determined that Cause exists for the removal of such Liquidating Trustee.

(ii)     The Specified Liquidating Trustee shall have thirty (30) days from the date of his/her receipt of the notice from the Liquidating Trust Board to respond to the determination of the Liquidating Trust Board that Cause exists for removal and to cure such Cause, if a cure is possible.  If the Specified Liquidating Trustee so requests, s/he shall be given the opportunity to appear in person before the Liquidating Trust Board to respond to the Liquidating Trust Board's determination.

(iii)     Following such thirty (30) day period, whether or not the Specified Liquidating Trustee has made any response to the notice of the Liquidating Trust Board, if the Cause forming the basis for removal has not been cured, the Liquidating Trust Board by unanimous consent of all Liquidating Trustees other than the Specified Liquidating Trustee may remove the Specified Liquidating Trustee from office.

(iv)     If the Liquidating Trust Board does not vote to remove the Specified Liquidating Trustee within sixty (60) days from the date notice is first given to the Liquidating Trustee, the Liquidating Trust Board shall repeat these procedures if it determines thereafter to remove such Specified Liquidating Trustee.

(v)     Notice of removal of a Liquidating Trustee shall promptly be posted to the Liquidating Trust Website.

(f)     [RESERVED]

(g)     In the event of a vacancy on the Liquidating Trust Board, whether as a result of the resignation, death, disability or removal of a Liquidating Trustee, the Nominating Party that had the right, pursuant to Article VI.E of the Plan, to select the Liquidating Trustee that has resigned, died, become disabled or has been removed, or the direct or indirect predecessor of such Liquidating Trustee, shall for a period of sixty (60) days have an exclusive

right to appoint a replacement Liquidating Trustee.  If the applicable Nominating Party fails to appoint a replacement Liquidating Trustee within sixty (60) days of such vacancy as aforesaid, or if there is no Nominating Party that at the time has such right of appointment, the remaining Liquidating Trustees shall, by Majority Consent, either (x) promptly appoint a replacement Liquidating Trustee or (y) determine to reduce the board size and thereby eliminate the vacancy; provided, however, that if there shall subsequently be a vacancy on the Liquidating Trust Board as a result of the resignation, death, disability or removal of the replacement Liquidating Trustee appointed by Majority Consent of the remaining Liquidating Trustees, the applicable Nominating Party shall once again have the right to appoint a replacement Liquidating Trustee, subject to the terms of this Section 6.2; provided further that if the Liquidating Trustees shall have reduced the size of the Liquidating Trust Board following the failure of the applicable Nominating Party to appoint a replacement Liquidating Trustee as aforesaid, such Nominating Party shall thereafter have no further right of appointment.  Notice of the appointment of any replacement Liquidating Trustee shall be posted to the Liquidating Trust Website as promptly as practicable after such appointment.

(h)     The Liquidating Trust Board may act at any time, in its sole and exclusive discretion, to reduce the number of Liquidating Trustees to a number less than that required initially by Section 6.2(a); provided, however, that if at the time a Nominating Party shall have a right of appointment as provided in Section 6.2(f), the Liquidating Trust Board shall not reduce the number of Liquidating Trustees so as to eliminate that right of appointment without such Nominating Party's consent.

(i)     Upon a Qualified Sale by a Nominating Party, the Qualified Purchaser shall, at its election by written notice from such Nominating Party and the Qualified Purchaser to the Liquidating Trust Board, succeed to rights of appointment of such Nominating Party under this Section 6.2; and thereafter the original Nominating Party shall cease to have any right of appointment hereunder; provided, however, that notwithstanding the foregoing, no purchaser (even if such purchaser would otherwise qualify as a Qualified Purchaser) shall succeed to the right of appointment of the Initial Nominating Parties identified in clauses (4) and (5) of the definition thereof, and the right of appointment shall instead remain with such Initial Nominating Party.

(j)     A Nominating Party shall cease to have any right of appointment, replacement, or consent under this Section 6.2 (including any right to transfer such rights) if (i) at any time the Nominating Party holds an amount of Units that is less than twenty-five percent (25%) of (x) the Initial Unit Estimation of the Nominating Party, in the case of an Initial Nominating Party; or (y) the Initial Unit Estimation of the Initial Nominating Party that is the Nominating Party's direct or indirect predecessor in interest, in the case of a Successor Nominating Party; provided, however, that the foregoing shall not apply to the Initial Nominating Parties identified in clauses (4) and (5) of the definition thereof and such parties shall not cease to have their right of appointment for so long as such parties hold Units; or (ii) a Nominating Party provides written notice to the Liquidating Trust Board that it irrevocably surrenders its rights as a Nominating Party under this Section 6.2.

(k)     A Nominating Party shall be required to provide evidence satisfactory to the Liquidating Trust Board of its ownership of Units, as from time to time may be requested

by the Liquidating Trust Board. If a Qualified Purchaser elects to become a Successor Nominating Party as provided in Section 6.2(h), the respective transferring Nominating Party and the Qualified Purchaser shall provide to the Liquidating Trust Board such evidence as the Liquidating Trust Board may require to confirm that transfer of Units to the Qualified Purchaser by such Nominating Party constitutes a Qualifying Sale.

(l)     No Nominating Party or its respective affiliates shall ever have the right to appoint more than one Liquidating Trustee to the Liquidating Trust Board.

(m)     No person designated by a Successor Nominating Party shall serve as a Liquidating Trustee if the Liquidating Trust Board, acting by Supermajority Consent, shall affirmatively determine, and shall provide written notice to the Successor Nominating Party to the effect, that such person has conflicts such that such person will not act in the best interests of the Liquidating Trust and the Liquidating Trust Beneficiaries.

(n)     Each Nominating Party shall be required to provide written notice to the Liquidating Trust of the person or entity such Nominating Party designates as its point of contact for all purposes hereunder, which notice shall contain contact information for such person or entity and may be updated by such Nominating Party from time to time in writing.

6.3     Compensation. The Liquidating Trust Board shall have the authority to fix by unanimous consent the compensation of the Liquidating Trustees, which may include their expenses, if any, of attendance at meetings of the Liquidating Trust Board or any committee thereof, which compensation shall be included in the Liquidating Trust Budget. Any increases in the compensation of the Liquidating Trustees following the Effective Date will be subject to the entire fairness standard of review. Any changes in the compensation of the Liquidating Trustees following the Effective Date will be summarized timely by the Liquidating Trust on the Liquidating Trust Website.

6.4     Authority.

(a)     The Liquidating Trust Board shall be responsible for exercising the authority and performing the obligations of the Liquidating Trust expressly provided for in this Liquidating Trust Agreement, otherwise giving effect to the intents and purposes of this Liquidating Trust Agreement, and exercising the rights of trustees under the Trust Act.

(b)     Without limiting the generality of the preceding subsection, and in furtherance thereof, the Liquidating Trust Board shall be expressly authorized and empowered to undertake, acting as appropriate through the Liquidating Trust Management and Liquidating Trust Agents, the following actions on behalf of the Liquidating Trust, without the need for any additional approvals, authorization, or consents and without any further notice to or action, order or approval of the Bankruptcy Court; provided, that all such actions are undertaken in a manner consistent with the purposes of the Liquidating Trust:

(i)     to hold, manage, dispose of, sell, convert to Cash, and distribute the Liquidating Trust Assets, including investigating, prosecuting and resolving the Liquidating Trust Causes of Action included therein;

(ii)    to hold the Liquidating Trust Assets for the benefit of Liquidating Trust Beneficiaries and, in its capacity as a Disbursing Agent, the holders of Allowed Priority Claims and Allowed General Unsecured Convenience Claims, whether such beneficiaries' and holders' Claims are Allowed on or after the Effective Date;

(iii)    to establish and administer the Administrative Expenses Set Aside;

(iv)    to establish and administer the Disputed Claims Reserve;

(v)    to establish and administer the Administrative, Priority, Secured and Convenience Distribution Reserve;

(vi)    to establish and administer the DOJ/AG Settlement Reserve;

(vii)    to appoint, engage, review, supervise, remove, replace and determine the compensation payable to Liquidating Trust Management and Liquidating Trust Agents;

(viii)    to settle or otherwise resolve Disputed LT Claims in accordance with the terms of the Plan Documents;

(ix)    to the extent consistent with the terms of the Plan, to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the Liquidating Trust Assets, including rights, Avoidance Actions, other Liquidating Trust Causes of Action or litigation previously held by the Debtors or their Estates;

(x)    to monitor and enforce the implementation of the Plan insofar as relating to the Liquidating Trust Assets;

(xi)    to file all Tax Returns and regulatory forms, returns, reports and other documents and financial information required to be filed with respect to the Liquidating Trust, including filing Tax Returns as a grantor trust pursuant to Treasury Regulation section 1.671-4(a);

(xii)    to reconcile, object to, and resolve Claims against the Debtors or the Liquidating Trust, and manage, control, prosecute and/or settle on behalf of the Estates or the Liquidating Trust objections to Claims;

(xiii)    to fund the Borrower Claims Trust, make the NJ Carpenters Claims Distribution in Cash and pay amounts owed in respect of the Allowed ETS Unsecured Claims, in each case, in accordance with the Plan and this Liquidating Trust Agreement;

(xiv)    to perform under the Cooperation Agreements;

(xv)    to pay or reserve for payment in the Administrative, Priority, Secured and Convenience Distribution Reserve, amounts payable to satisfy the Allowed Priority Claims and Allowed General Unsecured Convenience Claims;

(xvi)    to make distributions of Distributable Cash to Unitholders;

(xvii)    to maintain and dispose of the books and records transferred to the Liquidating Trust, as provided in <u>Section 2.12</u> and <u>Section 12.3;</u>

(xviii)  to prepare and disseminate reports, as provided in <u>Section 7.6</u>;

(xix)    to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Liquidating Trust and execute any documents or pleadings related to the liquidation of the Liquidating Trust Assets or other matters related to the Liquidating Trust;

(xx)    to establish and maintain bank accounts and terminate such accounts;

(xxi)    to set off amounts owed to the Debtors against distributions to Unitholders;

(xxii)   to bring suits or defend itself against such suits, if any, in connection with any matter arising from or related to the Plan Documents that affects in any way the rights or obligations of the Liquidating Trust, the Liquidating Trust Beneficiaries or, in its capacity as a Disbursing Agent, the holders of Allowed Priority Claims and Allowed General Unsecured Convenience Claims (whether such Claims are Allowed as of the Effective Date or become Allowed at any subsequent time), in their capacities as such;

(xxiii)  to obtain and maintain insurance coverage (including tail insurance) with respect to the liabilities and obligations of the Liquidating Trust Board and the Liquidating Trust Management, and, if so determined by the Liquidating Trust Board, such other insurance as the Liquidating Trust Board determines as appropriate for the circumstances from time to time;

(xxiv)  to invest Liquidating Trust Assets (including any earnings thereon or proceeds therefrom) in the manner permitted to be made by a Liquidating Trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684; <u>provided</u>, <u>however</u>, that the Liquidating Trust Board shall only authorize investments that are temporary investments in short-term government securities, time deposits, certificates of deposit, bankers' acceptances, commercial paper and money market funds or similar temporary, liquid, short-term investments.

(xxv)   to take all actions necessary and appropriate to minimize any adverse Tax consequences to the holders of Allowed Unsecured Claims; <u>provided</u> that such actions do not result in an adverse Tax consequence to the Liquidating Trust and are consistent with and are not contrary to the treatment of the Liquidating Trust as a "grantor trust" for United States federal income Tax purposes;

(xxvi) to remove and replace the Delaware Trustee or the FHA Qualified Trustee;

(xxvii) to act as a signatory on behalf of the Debtors for all purposes, including those associated with the novation of contracts or other obligations arising out of the sale or other disposition of the Debtors' assets;

(xxviii) to take all actions necessary, and create any documents necessary, to wind up the affairs of the Debtors in accordance or consistent with the terms of the Plan;

(xxix)  to take all necessary action and file all appropriate motions to obtain an order closing the Chapter 11 Cases;

(xxx)  to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions, as determined by the Liquidating Trust Board to be necessary or appropriate to effectuate the terms of the Plan following the Effective Date; and

(xxxi) to take such other and further actions, including conversions, dissolutions, transfers, liquidations, or other corporate transactions, as determined by the Liquidating Trust Board to be necessary or appropriate, in furtherance of the purposes of the Plan Documents in respect of the Debtors and their Estates as are not inconsistent with this Liquidating Trust Agreement or the other Plan Documents.

(c)    The Liquidating Trust Board shall comply with all applicable laws, shall act to maximize the distributions to Unitholders to the extent reasonably possible under the circumstances and in furtherance of the purposes of this Liquidating Trust.

6.5    <u>Action of the Liquidating Trust Board</u>.

(a)    Unless otherwise specified in this Liquidating Trust Agreement, the Liquidating Trust Board shall act by Majority Consent.

(b)    Anything to the contrary in this Liquidating Trust Agreement notwithstanding, the following actions shall require the Supermajority Consent of the Liquidating Trust Board:

(i)    the delegation to a committee of the Liquidating Trust Board or to any single Trustee, including the Chairman of the Liquidating Trust Board, of any rights or responsibilities of the Liquidating Trust Board, except as may otherwise be provided in the Board Protocol;

(ii)    the approval of any material change or amendment to the Liquidating Trust Agreement, as provided in <u>Section 13.11</u>; and

(iii)    any other action prescribed by the Liquidating Trust Board as requiring Supermajority Consent.

6.6     Meetings.

(a)     The Liquidating Trust Board shall hold regular meetings, at such time and at such place as shall from time to time be determined by the Liquidating Trustees.  No notice of regular meetings need be given.

(b)     Special meetings of the Liquidating Trust Board may be called by the Chairman of the Liquidating Trust Board, any two (2) Liquidating Trustees or the Liquidating Trust Manager.

(c)     Written notice of the time and place of special meetings of the Liquidating Trust Board shall be given to each Liquidating Trustee by either personal delivery, facsimile or other means of electronic communication at least two (2) Business Days prior to such meeting.  Notice of a meeting of the Liquidating Trust Board need not be given to any Liquidating Trustee who signs a waiver of notice either before or after the meeting. Attendance of a Liquidating Trustee at a meeting shall constitute a waiver of notice of such meeting, except when a Liquidating Trustee states, at the beginning of the meeting, any objection to the transaction of business because the meeting has not been convened or called in accordance with applicable law or this Liquidating Trust Agreement.

(d)     A majority of the members constituting the whole Liquidating Trust Board shall constitute a quorum for the transaction of business at such meeting of the Liquidating Trust Board, but if less than a majority is present at a meeting, a majority of the Liquidating Trustees present may adjourn the meeting from time to time.  When a meeting is adjourned to another time or place (whether or not a quorum is present), prompt notice shall be given of the adjourned meeting and the time and place thereof will be announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Liquidating Trustees may transact any business which might have been transacted at the original meeting.

(e)     Meetings may be held in person within or without the State of Delaware, telephonically or electronically, and upon such notice as may be determined from time to time in accordance with the rules and procedures adopted by the Liquidating Trust Board, and any member of the Liquidating Trust Board who participates by such means shall be deemed to be present for purposes of quorum under Section 6.6(d).  Members of the Liquidating Trust Board may also act by written consent in lieu of a meeting, which consent may be less than unanimous, provided each of the Liquidating Trustees shall have received notice of the action to be taken by written consent in lieu of a meeting at least two (2) Business Days in advance of the effectiveness thereof.  Any such written consents shall be filed with the minutes of the proceedings of the Liquidating Trust Board.

6.7     Chairman of the Liquidating Trust Board.

(a)     The Liquidating Trust Board shall elect from among its members a Chairman of the Liquidating Trust Board.  The Chairman of the Liquidating Trust Board may be removed and replaced as Chairman at any time by Majority Consent of the Liquidating Trust Board.

(b)    The Chairman of the Liquidating Trust Board shall preside at all meetings of the Liquidating Trust Board at which he or she shall be present and shall exercise such other functions, authorities and duties as may be prescribed by the Liquidating Trust Board.  If the Chairman of the Liquidating Trust Board is not present for a meeting, a Liquidating Trustee chosen by a majority of the members of the Liquidating Trust Board present, shall act as chairman at such meeting of the Liquidating Trust Board. The Chairman of the Liquidating Trust Board shall not be considered an officer of the Liquidating Trust solely by virtue of serving in such capacity.

6.8    Committees.  The Liquidating Trust Board may designate one or more committees, each committee to consist of one or more Liquidating Trustees.  Any such committee shall have and may exercise such powers as the Liquidating Trust Board may determine and specify in the resolution designating such committee in a manner not inconsistent with the other provisions of this Liquidating Trust Agreement.  Each committee shall keep a record of proceedings and report the same to the Liquidating Trust Board to such extent and in such form as the Liquidating Trust Board may require. Unless otherwise provided in the resolution designating a committee, a majority of all the members of any such committee may select its Chairman, fix its rules of procedure, fix the time and place of its meetings and specify what notice of meetings, if any, shall be given.

6.9    Fiduciary Duty and Standard of Conduct.

(a)    Each Liquidating Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Liquidating Trust and not otherwise, and in accordance with applicable law, including the Trust Act.  No Liquidating Trustee in a personal capacity shall have the authority to bind the Liquidating Trust, but shall for all purposes hereunder be acting in the capacity as a member of the Liquidating Trust Board or a committee thereof.

(b)    Each Liquidating Trustee in the exercise of his or her duties hereunder shall act in accordance with principles of good faith and fair dealing.

### ARTICLE VII
### OPERATION OF THE LIQUIDATING TRUST

7.1    Prohibited Activities.

(a)    The Liquidating Trust Board, the Liquidating Trust Management and the Liquidating Trust Agents shall hold the Liquidating Trust out as a trust in the process of liquidation, whose activities are limited to the liquidation of the Liquidating Trust Assets on behalf, and for the benefit, of the Liquidating Trust Beneficiaries and, in the Liquidating Trust's capacity as Disbursing Agent, the holders of Allowed Priority Claims and Allowed General Unsecured Convenience Claims (whether such Claims are Allowed as of the Effective Date or become Allowed at any subsequent time) and the other purposes set forth in this Liquidating Trust Agreement.  Without limiting the foregoing, the Liquidating Trust shall not hold itself out as an investment company, and no part of the Liquidating Trust Assets shall be

caused by the Liquidating Trust Board to be used or disposed of in furtherance of any trade or business.

(b)    The Liquidating Trust shall not engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidation trust within the meaning of Treasury Regulations section 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684.

7.2    Resolution of Disputed LT Claims.

(a)    The Liquidating Trust Board shall authorize the Liquidating Trust Management or one or more Liquidating Trust Agents to resolve, on behalf of the Liquidating Trust, all Disputed LT Claims without further Bankruptcy Court order.  If the Liquidating Trust and the holder of a Disputed LT Claim are unable to reach a settlement on a Disputed LT Claim, or if the Liquidating Trust determines to disallow a Disputed LT Claim, such Disputed LT Claim shall be submitted to the Bankruptcy Court for resolution.  If it is determined that the Bankruptcy Court does not have jurisdiction to resolve any Disputed LT Claim, then such Disputed LT Claim shall be submitted to the District Court for resolution. The Liquidating Trust shall file with the Bankruptcy Court a quarterly notice of Disputed LT Claims resolved and/or settled during the prior quarter following the end of each fiscal quarter, starting with the first complete fiscal quarter after the Effective Date.

(b)    Disputed LT Unsecured Claims that become Allowed, in whole or in part, shall be satisfied exclusively out of the Disputed Claims Reserve, in the manner provided in Article IV and Article V, and in the order in which such Disputed LT Unsecured Claims are Allowed.  In the event the Units, and the Cash distributed with respect thereto (including the value of any non-Cash assets substituted therefor), remaining in the Disputed Claims Reserve shall be insufficient to satisfy all the Disputed LT Unsecured Claims that have become Allowed, in the manner such Claims would have been satisfied had such Disputed Claims been Allowed on the Initial Unit Distribution Record Date, and are due to be satisfied with distributions from the Disputed Claims Reserve on any Unit Distribution Date, such Disputed LT Unsecured Claims shall be satisfied Pro Rata in proportion to their respective Allowed Claim amounts.  After all Units, and the Cash distributed with respect thereto, have been distributed from the Disputed Claims Reserve, no further distributions shall be made in respect of Disputed LT Unsecured Claims.

(c)    Disputed Priority Claims and General Unsecured Convenience Claims that become Allowed, in whole or in part, shall be satisfied exclusively out of the Administrative, Priority, Secured and Convenience Distribution Reserve, in the manner provided in Article III, and in the order in which such Disputed Priority Claims are Allowed.

7.3    Disputed Claims Reserve.

(a)    On or as soon as practicable following the Effective Date, the Liquidating Trust shall establish the Disputed Claims Reserve, into which there shall be deposited the number of Units determined in accordance with Section 4.3(c).  All Units and

other assets in the Disputed Claims Reserve shall be the property of the Liquidating Trust and not of the holder of any Claim or any other person.

(b)    All Cash held in the Disputed Claims Reserve shall be maintained with a United States FDIC insured financial institution, and may be maintained in an interest-bearing account, as the Liquidating Trust Board may from time to time determine.  The Cash in the Disputed Claims Reserve shall be held separately and shall not be commingled with any other Cash constituting Liquidating Trust Assets.  In its discretion, the Liquidating Trust Board may substitute non-Cash assets for cash distributed in respect of Units held in the Disputed Claims Reserve as provided for in the Board Protocols, which non-Cash assets may be monetized from time to time by the Disputed Claims Reserve; provided, however, that distributions from the Disputed Claims Reserve shall only be made in Units and Cash; and provided further that in connection with any such substitution of non-Cash assets, due consideration shall be given to the timing and amount of scheduled and anticipated payments and both the fair market value and the timing of monetization of such non-Cash assets, so as to enable the Liquidating Trust to distribute Cash in respect of Units that are released from the Disputed Claims Reserve as such Cash distributions are due.

7.4    Administrative Expenses Set Aside.

(a)    On the Effective Date, there shall be established an Administrative Expenses Set Aside for the purpose of maintaining Cash allocated and retained by the Liquidating Trust from time to time in an amount necessary (subject to the Liquidating Trust Budget) to satisfy reasonable costs and expenses of the Liquidating Trust and other obligations and liabilities incurred, assumed or reasonably anticipated by the Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject) in accordance with the Plan Documents, including without limitation (i) fees and costs incurred in connection with the protection, preservation, liquidation and distribution of the Liquidating Trust Assets; (ii) the fees and costs incurred in connection with investigating, prosecuting and resolving Disputed LT Claims, Avoidance Actions, and other Liquidating Trust Causes of Action; (iii) the fees and costs of maintaining the Disputed Claims Reserve, the Administrative Expenses Set Aside, the Administrative, Priority, Secured and Convenience Distribution Reserve and the DOJ/AG Settlement Reserve; (iv) the fees and costs of winding down of the Estates and the affairs of the Debtors; (v) reserves for any judgments, settlements or other Cash liabilities or potential liabilities that are or may be payable by the Liquidating Trust, as determined by the Liquidating Trust Board; (vi) the compensation of the Delaware Trustee, the FHA Qualified Trustee, the Liquidating Trustees and the Liquidating Trust Management, and the expenses that may be incurred by them in the performance of their duties hereunder; (vii) any Taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets or otherwise, including the Disputed Claims Reserve;  (viii) the fees and expenses of the Liquidating Trust Agents, the fees of the United States Trustee and professional fees; (ix) any statutory fees not otherwise satisfied by the Debtors and (x) such other costs, fees and expenses as shall be provided for in the Liquidating Trust Budget and as may be incurred in carrying out the purposes and intents of this Liquidating Trust Agreement.  The amount of Cash held in the Administrative Expenses Set Aside may be increased or released from time to time by or at the direction of the Liquidating Trust Board, as necessary or appropriate in furtherance of the purposes thereof; provided that in no event may the Liquidating Trust receive or retain cash or cash equivalents

in excess of a reasonable amount to meet claims and contingent liabilities of the Liquidating Trust or to maintain the value of the Liquidating Trust Assets. Any Cash released from the Administrative Expenses Set Aside shall be available for distribution in accordance with the provisions of Article V.

(c)    Except as determined by the Liquidating Trust Manager, the Administrative Expenses Set Aside shall not be required to be held separately and may be commingled with unrestricted funds of the Liquidating Trust. In its discretion, the Liquidating Trust Board may permit non-Cash assets to be applied to the Administrative Expenses Set Aside as provided for in the Board Protocol, which non-Cash assets may be monetized from time to time and the Cash so realized included in the Administrative Expenses Set Aside; provided, however that in connection with any such application, due consideration shall be given to the timing and amount of scheduled and anticipated payment obligations and both the fair market value and the timing of monetization of such non-Cash assets, so as to enable the Liquidating Trust to pay its obligations as they become due.

7.5    DOJ/AG Settlement Reserve.

(a)    On the Effective Date, there shall be established a reserve of $55 million in Cash for the purpose of maintaining Cash allocated and retained by the Liquidating Trust to satisfy the Liquidating Trust's obligations under the DOJ/AG Settlement as set forth in the Plan (the "DOJ/AG Settlement Reserve"); provided that the Liquidating Trust's liability for such obligations shall not be limited nor be deemed to be limited to the funds available from the DOJ/AG Settlement Reserve.

(b)    The amount of Cash held in the DOJ/AG Settlement Reserve may be increased or decreased from time to time by or at the direction of the Liquidating Trust Board, as necessary or appropriate in furtherance of the purposes thereof; provided that the DOJ/AG Settlement Reserve may not be decreased from its initial $55 million except through the application of such funds in satisfaction of the Liquidating Trust's obligations under the DOJ/AG Settlement as set forth in the Plan. Until the termination of the DOJ/AG Settlement Reserve, as provided in subsection (c) below, the DOJ/AG Settlement Reserve shall at all times contain no less than $20 million in Cash; provided that, if the DOJ/AG Settlement Reserve continues after April 5, 2016, the maximum amount required to be maintained thereafter in the DOJ/AG Settlement Reserve shall be the lesser of (x) $20 million and (y) the amount of any liability that may be imposed against the Liquidating Trust by the District Court following the submission of the final report by the Monitor under the DOJ/AG Settlement.

(c)    The DOJ/AG Settlement Reserve shall terminate upon the date as of which all of the Liquidating Trust's obligations under the DOJ/AG Settlement shall have been performed or satisfied; provided the DOJ/AG Settlement Reserve shall terminate on April 5, 2016 unless the Monitor's final report finds the existence of one or more potential violations as to which a liability exists or may be imposed against the Liquidating Trust under the DOJ/AG Settlement, in which case the DOJ/AG Settlement Reserve shall terminate on the date that such additional monetary amount has been satisfied or otherwise resolved. After termination of the DOJ/AG Settlement Reserve, the Cash remaining therein, if any, shall be unreserved and

unrestricted, and shall be added to the Administrative Expenses Set Aside or made available for distribution as Distributable Cash, as determined by the Liquidating Trust Board.

7.6    Reporting.

(a)    The Liquidating Trust shall cause to be prepared, and shall post to the Liquidating Trust Website, financial reports on a quarterly and annual basis as provided in this Section 7.6(a).  Unless otherwise required by applicable law, such reports need not be prepared in accordance with GAAP (and need not be prepared using the liquidation basis of accounting), but in any event shall fairly present the assets, liabilities, income and expenses of the Liquidating Trust for and as of the end of each reporting period.  The financial reports shall be prepared on a consistent basis, except as may be disclosed in the notes to the financial statements.  The financial reports shall include:

(i)    Quarterly financial statements, which shall be prepared and posted no later than forty (40) days after the end of each of the first three (3) quarters of the Fiscal Year; and

(ii)    Annual financial statements, which shall  be prepared and posted no later than sixty (60) days after the end of each Fiscal Year, except that no such annual financial statements shall be required to be prepared and posted for the Fiscal Year ended December 31, 2013, as it will consist of less than thirty (30) days.

(b)    In addition to the financial reports required by Section 7.6(a), the Liquidating Trust shall cause to be prepared, and shall post to the Liquidating Trust Website, no later than forty (40) days after the end of each of the first three (3) quarters for the Fiscal Year and no later than sixty (60) days after the end of each Fiscal Year, reports containing the following information regarding the activity of the Liquidating Trust during the most recently completed fiscal quarter, and in the report prepared after the end of each Fiscal Year, the most recently completed quarter, the most recently completed Fiscal Year and since the Effective Date:

(i)    the material Liquidating Trust Assets disposed of during the relevant period and the material Liquidating Trust Assets remaining as of the end of such period;

(ii)    the Distributable Cash distributed during the relevant period, in the aggregate and on a per Unit basis;

(iii)    Cash added to or withdrawn from the Administrative Expenses Set Aside during the relevant period, and Cash held in the Administrative Expenses Set Aside as of the end of such period;

(iv)    Cash added to or withdrawn from the Administrative, Priority, Secured and Convenience Distribution Reserve during the relevant period, and Cash held in the Administrative, Priority, Secured and Convenience Distribution Reserve as of the end of such period;

(v)     Cash added to or withdrawn from the DOJ/AG Settlement
Reserve during the relevant period, and Cash held in the DOJ/AG Settlement
Reserve as of the end of such period;

(vi)     the amount of Disputed LT Claims resolved by the Liquidating
Trust during the relevant period, including, separately, the amounts of the
Claims that were Allowed, in whole or in part, including both the Estimated
Amounts thereof and amounts in which such Claims were Allowed, and the
Estimated Amounts of the Claims that were not Allowed, in whole or in part,
the amounts of the Disputed LT Claims remaining to be resolved as of the end
of such period;

(vii)     the Units and Cash distributed to holders of Disputed LT
Unsecured Claims that were Allowed, in whole or in part, during the relevant
period, the number of Units in the Disputed Claim Reserve that were cancelled,
and the Cash in respect thereof released from the Disputed Claims Reserve,
during the relevant period, and the Units and Cash held in the Disputed Claims
Reserve as of the end of such period; and

(viii)    such other information as the Liquidating Trust Board may
determine to include from time to time.

(c)     The Liquidating Trust Board shall also cause to be timely prepared, filed
and distributed such additional statements, reports and submissions (x) as may be necessary to
cause the Liquidating Trust to be in compliance with applicable law, including, if required
pursuant to the Securities Exchange Act of 1934, as amended, or to the extent otherwise
necessary to allow the Units to be transferrable and tradable in accordance with applicable law
or (y) as may be otherwise required from time to time by the Bankruptcy Court.

7.7     <u>Liquidating Trust Management</u>.

(a)     The officers of the Liquidating Trust shall consist of a Liquidating Trust
Manager, a secretary and such other officers as the Liquidating Trust Board shall deem
appropriate (all such officers being collectively referred to as the "<u>Liquidating Trust
Management</u>").

(b)     The officers of the Liquidating Trust shall be appointed by the
Liquidating Trust Board and shall hold office until their successors are appointed and qualified
or until their earlier death, resignation or removal from office.  Any officer may resign at any
time by communicating notice of such resignation to the Liquidating Trust Board.  Any officer
may be removed at any time by the Liquidating Trust Board with or without cause.  The
compensation of such officers shall be as determined by the Liquidating Trust Board.  Such
compensation shall be paid out of the Administrative Expenses Set Aside, and shall be
consistent with the Liquidating Trust Budget.

(c)     The Liquidating Trust Manager shall have the general executive
responsibility for the conduct of the affairs of the Liquidating Trust, and shall have such other

functions, authority and duties as customarily appertain to the office of the chief executive of a liquidation trust or as may be prescribed by the Liquidating Trust Board.

(d)    The secretary of the Liquidating Trust shall keep a record of all proceedings of the Liquidating Trust Board and its committees, if any.   The secretary shall have such other functions, authority and duties as customarily appertain to the office  of secretary of a commercial entity or as may be prescribed by the Liquidating Trust Board.

(e)    Any officer who is appointed from time to time by the Liquidating Trust Board and whose duties are not specified in this Liquidating Trust Agreement shall perform such duties and have such functions, authority and duties as may be prescribed by the Liquidating Trust Board.

7.8    Liquidating Trust Agents; Employees.

(a)    The Liquidating Trust may employ such Liquidating Trust Agents, including counsel (which may be the same counsel employed by the Debtors, the Creditors' Committee or any member thereof), advisors (which may be the same advisors formerly employed by the Debtors, the Creditors' Committee or any member thereof (subject to Section 2.4)), administrators and other professionals, as deemed reasonably necessary or desirable by the Liquidating Trust Board to carry out the intents and purposes of the Liquidating Trust, without further order from the Bankruptcy Court.  Liquidating Trust Agents shall be appointed, and their appointment may be terminated, by the Liquidating Trust Board or, if authority in respect thereof is delegated by the Liquidating Trust Board to the Liquidating Trust Manager, the Liquidating Trust Manager.  Liquidating Trust Agents shall be compensated on such basis as approved by the Liquidating Trust Board and shall be paid without further motion, application, notice or other order of the Bankruptcy Court.   The fees and expenses of Liquidating Trust Agents shall be satisfied out of the Administrative Expenses Set Aside, and shall be consistent with the Liquidating Trust Budget.

(b)    The officers of the Liquidating Trust shall be authorized to hire such employees as such officers, or any of them deem appropriate, subject to such limitations, conditions and qualifications as may be imposed by the Liquidating Trust Board.   The compensation of such employees, together with all related costs, fees and expenses, shall be paid out of the Administrative Expenses Set Aside, and shall be consistent with the Liquidating Trust Budget.

## ARTICLE VIII
## DELAWARE TRUSTEE

8.1    Appointment.  The Delaware Trustee shall act solely for the purpose of complying with the requirement of section 3807 of the Trust Act, and its powers and obligations hereunder shall have become effective upon its execution of the Interim Liquidating Trust Agreement.

8.2    Powers.

(a)    Notwithstanding any provision hereof to the contrary, the duties and responsibilities of the Delaware Trustee shall be limited solely to (i) accepting legal process served on the Liquidating Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the office of the Delaware Secretary of State that the Delaware Trustee is required to execute under section 3811 of the Trust Act (including without limitation the Certificate of Trust and the Certificate of Conversion). Except as provided in the foregoing sentence, the Delaware Trustee shall have no management responsibilities or owe any fiduciary duties to the Liquidating Trust, the Liquidating Trust Board, the Liquidating Trust Beneficiaries or any other distributee of the Liquidating Trust hereunder. The filing of the Certificate of Conversion and the Certificate of Trust with the Secretary of State of the State of Delaware as provided under the Trust Act is hereby ratified.

(b)    By its execution hereof, the Delaware Trustee accepts the trusteeship of the Liquidating Trust on the terms set forth herein. The Delaware Trustee shall not have any duty or liability with respect to the administration of the Liquidating Trust (except as otherwise expressly set forth in Section 8.2(a)), the investment of the Liquidating Trust Assets or the distribution of the Liquidating Trust Assets to the Unitholders, and no such duties shall be implied. The Delaware Trustee shall not be liable for the acts or omissions of the Liquidating Trust Board or the Liquidating Trust Management, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the Liquidating Trust Board or the Liquidating Trust Management under this Liquidating Trust Agreement. The Delaware Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Delaware Trustee shall not be personally liable under any circumstances, except for its own gross negligence, bad faith or willful misconduct in the performance of its express duties under this Liquidating Trust Agreement.  Without limiting the foregoing:

(i)    the Delaware Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence in the performance of its express duties under this Liquidating Trust Agreement;

(ii)    the Delaware Trustee shall not have any duty or obligation to manage or deal with the Liquidating Trust Assets, or to otherwise take or refrain from taking any action under the Liquidating Trust Agreement except as expressly provided in Section 8.2(a), and no implied trustee duties or obligations shall be deemed to be imposed on the Delaware Trustee;

(iii)    no provision of this Liquidating Trust Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Delaware Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iv)    the Delaware Trustee shall not be personally liable for the validity or sufficiency of this Liquidating Trust Agreement, the value or sufficiency of the Liquidating Trust Assets or for the due execution hereof by the other parties hereto;

(v)    the Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect;

(vi)    the Delaware Trustee may request the Liquidating Trust Board to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vii)    in the exercise of its duties hereunder, the Delaware Trustee (I) may act directly or through agents or attorneys pursuant to agreements entered into with any of them and shall not be liable for the acts or omissions of any agents or attorneys selected by it in good faith, and (II) may consult with counsel selected by it in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel; and

(viii)    the Delaware Trustee acts solely as Delaware Trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Liquidating Trust Agreement shall look only to the Liquidating Trust Assets for payment or satisfaction thereof;

(ix)    the Delaware Trustee shall not be personally liable for any representation, warranty, covenant, agreement, or indebtedness of the Liquidating Trust;

(x)    the Delaware Trustee shall not incur liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any entity party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by an officer of the Liquidating Trust, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon; and

           (xi)     the Delaware Trustee shall not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Agreement under any circumstances.

        8.3    <u>Compensation</u>. The Delaware Trustee shall be entitled to receive compensation out of the Administrative Expenses Set Aside for the services that the Delaware Trustee performs in accordance with this Liquidating Trust Agreement in accordance with such fee schedules as shall be agreed from time to time by the Delaware Trustee and the Liquidating Trust Board, and if so required by the Plan Documents or applicable law, as approved by the Bankruptcy Court. The Delaware Trustee may also consult with counsel (who may be counsel for the Liquidating Trust Board) with respect to those matters that relate to the Delaware Trustee's role as the Delaware Trustee of the Liquidating Trust, and the reasonable legal fees incurred in connection with such consultation and any other reasonable out-of-pocket expenses of the Delaware Trustee shall be reimbursed out of the Administrative Expenses Set Aside.

        8.4    <u>Duration and Replacement</u>.  The Delaware Trustee shall serve for the duration of the Liquidating Trust or until the earlier of (i) the effective date of the Delaware Trustee's resignation, or (ii) the effective date of the removal of the Delaware Trustee. The Delaware Trustee may resign at any time by giving thirty (30) days' written notice to the Liquidating Trust Board; <u>provided</u>, <u>however</u>, that such resignation shall not be effective until such time as a successor Delaware Trustee has accepted appointment. The Delaware Trustee may be removed with the Majority Consent of the Liquidating Trust Board, by providing thirty (30) days' written notice to the Delaware Trustee; <u>provided</u>, <u>however</u>, that such removal shall not be effective until such time as a successor Delaware Trustee has accepted appointment. Upon the resignation or removal of the Delaware Trustee, the Liquidating Trust Board shall appoint a successor Delaware Trustee.  If no successor Delaware Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the Delaware Trustee may petition the Bankruptcy Court for the appointment of a successor Delaware Trustee. Any successor Delaware Trustee appointed pursuant to this Section shall be eligible to act in such capacity in accordance with this Liquidating Trust Agreement and, following compliance with this Section, shall become fully vested with the rights, powers, duties and obligations of its predecessor under this Liquidating Trust Agreement, with like effect as if originally named as Delaware Trustee. Any such successor Delaware Trustee shall notify the Delaware Trustee of its appointment by providing written notice to the Delaware Trustee and upon receipt of such notice, the Delaware Trustee shall be discharged of its duties herein.  Any such successor Delaware Trustee shall also file an amendment to the Certificate of Trust as required by the Trust Act.

## ARTICLE IX
## FHA QUALIFIED TRUSTEE

        9.1    <u>Appointment</u>.  For so long as the Debtors or the Liquidating Trust shall own any FHA Mortgage Loans, there shall be an FHA Qualified Trustee that is an FHA-Approved Mortgagee serving as a trustee of the Liquidating Trust.  By its execution hereof, the FHA Qualified Trustee accepts the trusteeship of the Liquidating Trust on the terms set forth herein.

9.2    Powers, Authority and Responsibilities.

(a)    Legal title to the FHA Mortgage Loans and the corresponding FHA Insurance Contracts shall be vested in the FHA Qualified Trustee (or one or more FHA Qualified Co-Trustees) on behalf of the Liquidating Trust, which shall be the mortgagee of record for the FHA Mortgage Loans owned by the Liquidating Trust.  Pursuant to section 3805(f) of the Trust Act, such FHA Mortgage Loans shall be the property of the Liquidating Trust.

(b)    Notwithstanding anything to the contrary set forth in this Liquidating Trust Agreement, the FHA Qualified Trustee shall (i) be responsible for any actions required to be taken by the mortgagee of record of any FHA Mortgage Loan owned by the Liquidating Trust and (ii) use commercially reasonable efforts to provide the Liquidating Trust Board (or any person authorized by the Liquidating Trust Board) with any information requested with respect to the FHA Mortgage Loans.  For the avoidance of doubt, clause (i) of the preceding sentence shall not be deemed to include any servicing actions and the FHA Qualified Trustee shall have no liability to the Liquidating Trust for servicing actions performed by the Servicer or regarding the compliance with any foreclosure, consumer credit or debt collection laws.

(c)    Upon transfer by a Debtor of an FHA Mortgage Loan to the Liquidating Trust, the Liquidating Trust shall succeed to all the rights and become bound by all the obligations of such Debtor under the FHA Insurance Contract applicable to such FHA Mortgage Loan, and such Debtor shall be released from its obligations under the FHA Insurance Contract; provided that such Debtor shall not be relieved of its obligation to pay mortgage insurance premiums until the notice required by §203.431 of Title 24 is received by HUD.

(d)    Within fifteen (15) days of the date on which any FHA Mortgage Loan is transferred to the Liquidating Trust by a Debtor, such Debtor shall provide an electronic notice to HUD, which notice shall state that such FHA Mortgage Loan has been transferred to the FHA Qualified Trustee on behalf of the Liquidating Trust.

(e)    If, upon the dissolution of the Liquidating Trust, the FHA Qualified Trustee shall continue to be the holder of record of any FHA Mortgage Loans, the FHA Qualified Trustee shall transfer such FHA Mortgage Loans to an FHA-Approved Mortgagee.

(f)    In the event that the Liquidating Trust shall sell, transfer or assign any FHA Mortgage Loan, the Liquidating Trust and the FHA Qualified Trustee, as holder of record, shall take such action so as to comply with (i) Sections 203.430 through 203.435 of Title 24 and (ii) any and all laws, rules, regulations and policies applicable to FHA Mortgage Loans.

9.3    Servicing of FHA Mortgage Loans.

(a)    For so long as the Liquidating Trust shall own any FHA Mortgage Loans, the Liquidating Trust shall at all times have a Servicer of the FHA Mortgage Loans, and the Servicer of the FHA Mortgage Loans shall at all times be an FHA-Approved Mortgagee.

(b)    The Liquidating Trust Board shall not consent to the appointment of any successor Servicer, and shall not permit any successor Servicer to be appointed, unless such successor Servicer (i) certifies in writing that it is an FHA-Approved Mortgagee and (ii) has agreed, within fifteen (15) days of the transfer of servicing, to provide, or cause to be provided, an electronic notice to HUD stating that the servicing of the FHA Mortgage Loans has been transferred to such successor Servicer.

9.4    NO RIGHTS AGAINST HUD OR THE FHA.    EACH HOLDER OF A UNIT (BY VIRTUE OF ITS OWNERSHIP THEREOF) ACKNOWLEDGES AND AGREES THAT IT DOES NOT HAVE ANY DIRECT RIGHTS AGAINST HUD OR THE FHA WITH RESPECT TO THE FHA INSURANCE CONTRACT APPLICABLE TO ANY FHA MORTGAGE LOAN OR AGAINST THE VA WITH RESPECT TO ANY GUARANTY APPLICABLE TO ANY VA MORTGAGE LOAN.

9.5    Certain Limitations with Respect to the FHA Qualified Trustee.

(a)    Except as otherwise expressly set forth in this Article IX, the FHA Qualified Trustee shall not have any duty or liability with respect to the administration of the Liquidating Trust, the investment of the Liquidating Trust Assets or the distribution of the Liquidating Trust Assets to the Unitholders, and no such duties shall be implied.  The FHA Qualified Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The FHA Qualified Trustee shall not be personally liable under any circumstances, except for its own gross negligence, bad faith or willful misconduct in the performance of its express duties under this Liquidating Trust Agreement.

(b)    Without limiting the foregoing:

(i)    the FHA Qualified Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence in the performance of its express duties under this Liquidating Trust Agreement;

(ii)    the FHA Qualified Trustee shall not have any duty or obligation to manage or deal with the Liquidating Trust Assets, or to otherwise take or refrain from taking any action under the Liquidating Trust Agreement except as expressly provided in Section 9.5(a), and no implied trustee duties or obligations shall be deemed to be imposed on the FHA Qualified Trustee;

(iii)    no provision of this Liquidating Trust Agreement shall require the FHA Qualified Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the FHA Qualified Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iv)    the FHA Qualified Trustee shall not be personally liable for the validity or sufficiency of this Liquidating Trust Agreement, the value or

sufficiency of the Liquidating Trust Assets or for the due execution hereof by
the other parties hereto;

(v)    the FHA Qualified Trustee may accept a certified copy of a
resolution of the board of directors or other governing body of any entity party
as conclusive evidence that such resolution has been duly adopted by such body
and that the same is in full force and effect;

(vi)    the FHA Qualified Trustee may request the Liquidating Trust
Board to provide a certificate with regard to any fact or matter the manner of
ascertainment of which is not specifically prescribed herein, and such certificate
shall constitute full protection to the FHA Qualified Trustee for any action taken
or omitted to be taken by it in good faith in reliance thereon;

(vii)    in the exercise of its duties hereunder, the FHA Qualified Trustee
(I) may act directly or through agents or attorneys pursuant to agreements
entered into with any of them and shall not be liable for the acts or omissions of
any agents or attorneys selected by it in good faith, and (II) may consult with
counsel selected by it in good faith and employed by it, and it shall not be liable
for anything done, suffered or omitted in good faith by it in accordance with the
advice or opinion of any such counsel;

(viii)    the FHA Qualified Trustee acts solely as FHA Qualified Trustee
hereunder and not in its individual capacity, and all persons having any claim
against the FHA Qualified Trustee by reason of the transactions contemplated
by this Liquidating Trust Agreement shall look only to the Liquidating Trust
Assets for payment or satisfaction thereof;

(ix)    the FHA Qualified Trustee shall not be personally liable for any
representation, warranty, covenant, agreement, or indebtedness of the
Liquidating Trust and shall not be liable for any action or inaction of the
Servicer or for monitoring its activities;

(x)    the FHA Qualified Trustee shall not incur liability to anyone in
acting upon any signature, instrument, notice, resolution, request, consent,
order, certificate, report, opinion, bond or other document or paper reasonably
believed by it to be genuine and reasonably believed by it to be signed by the
proper party or parties.  The FHA Qualified Trustee may accept a certified copy
of a resolution of the board of directors or other governing body of any entity
party as conclusive evidence that such resolution has been duly adopted by such
body and that the same is in full force and effect.  As to any fact or matter the
manner of ascertainment of which is not specifically prescribed herein, the FHA
Qualified Trustee may for all purposes hereof rely on a certificate, signed by an
officer of the Liquidating Trust, as to such fact or matter, and such certificate
shall constitute full protection to the FHA Qualified Trustee for any action taken
or omitted to be taken by it in good faith in reliance thereon; and

(xi)    the FHA Qualified Trustee shall not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Agreement under any circumstances.

9.6    Duration and Replacement.

(a)    Subject to subsection (f) below, the FHA Qualified Trustee shall serve for the duration of the Liquidating Trust or until the earlier of (i) the effective date of the FHA Qualified Trustee's resignation and (ii) the effective date of the removal of the FHA Qualified Trustee.

(b)    The FHA Qualified Trustee may resign at any time by giving thirty (30) days' written notice to the Liquidating Trust Board; provided, however, that such resignation shall not be effective until such time as a successor FHA Qualified Trustee has accepted appointment.

(c)    The FHA Qualified Trustee may be removed with the Majority Consent of the Liquidating Trust Board, by providing thirty (30) days' written notice to the FHA Qualified Trustee; provided, however, that such removal shall not be effective until such time as a successor FHA Qualified Trustee has accepted appointment.

(d)    In case at any time FHA Qualified Trustee shall cease to be eligible in accordance with the provisions of this Article IX, such FHA Qualified Trustee shall resign and the Liquidating Trust Board shall promptly appoint a successor FHA Qualified Trustee that meets the requirements of this Article IX.

(e)    Upon the resignation or removal of the FHA Qualified Trustee, the Liquidating Trust Board shall appoint a successor FHA Qualified Trustee.  If no successor FHA Qualified Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the FHA Qualified Trustee may petition the Bankruptcy Court for the appointment of a successor FHA Qualified Trustee. Any successor FHA Qualified Trustee appointed pursuant to this Section shall be eligible to act in such capacity in accordance with this Liquidating Trust Agreement and, following compliance with this Section, shall become fully vested with the rights, powers, duties and obligations of its predecessor under this Liquidating Trust Agreement, with like effect as if originally named as FHA Qualified Trustee. Any such successor FHA Qualified Trustee shall notify the FHA Qualified Trustee of its appointment by providing written notice to the predecessor FHA Qualified Trustee and upon receipt of such notice, the FHA Qualified Trustee shall be discharged of its duties herein.  Any such successor FHA Qualified Trustee shall also file an amendment to the Certificate of Trust as required by the Trust Act.

(f)    Anything to the contrary in this Article IX or elsewhere in this Liquidating Trust Agreement notwithstanding, at such time as the neither the Debtors nor the Liquidating Trust shall own any FHA Mortgage Loans, the FHA Qualified Trustee shall resign, and there shall no further appointment of any FHA Qualified Trustee.

9.7    Compensation of the FHA Qualified Trustee.    The FHA Qualified Trustee shall be entitled to receive compensation out of the Administrative Expenses Set Aside

for the services that the FHA Qualified Trustee performs in accordance with this Liquidating
Trust Agreement in accordance with such fee schedules as shall be agreed from time to time by
the FHA Qualified Trustee and the Liquidating Trust Board, and if so required by the Plan
Documents or applicable law, as approved by the Bankruptcy Court. The FHA Qualified
Trustee may also consult with counsel (who may be counsel for the Liquidating Trust Board)
with respect to those matters that relate to the FHA Qualified Trustee's role as the FHA
Qualified Trustee of the Liquidating Trust, and the reasonable legal fees incurred in connection
with such consultation and any other reasonable out-of-pocket expenses of the FHA Qualified
Trustee shall be reimbursed out of the Administrative Expenses Set Aside.

9.8    Appointment of FHA Qualified Co-Trustees.

(a)    The Liquidating Trust Board, at any time and from time to time, may
appoint one or more FHA Qualified Co-Trustees, who shall be authorized to act, as determined
by the Liquidating Trust Board, with respect to all or any part of the FHA Mortgage Loans
owed by the Liquidating Trust in the same manner as the FHA Qualified Trustee.  All
provisions of this Article IX applicable to the FHA Qualified Co-Trustee shall apply, *mutatis
mutandis*, to an FHA Qualified Co-Trustee, except that an FHA Qualified Co-Trustee may be
removed by the Liquidating Trust Board by providing five (5) Business Days' written notice to
the FHA Co-Qualified Trustee, and such removal shall be immediately effective provided that
there is then an FHA Qualified Trustee then in office.

(b)    Without limiting the provisions of Section 9.8(a), an FHA Qualified Co-
Trustee may be appointed to act as provided in this Article IX in any jurisdiction in which the
FHA Qualified Trustee is not competent, qualified or eligible to perform any act required or
permitted by the provisions of this Article IX to be performed by the FHA Qualified Trustee.

(c)    The appointment of an FHA Qualified Co-Trustee shall be evidenced by
such instrument as shall be authorized by the Liquidating Trust Board, which shall be
maintained with the books and records of the Liquidating Trust.

(d)    The FHA Qualified Trustee shall not be liable for any act or omission of
any FHA Qualified Co-Trustee, and no FHA Qualified Co-Trustee shall be liable for any act or
omission of the FHA Qualified Trustee or of any other FHA Qualified Co-Trustee.

9.9    VA Mortgage Loans.

(a)    Within fifteen (15) days of the date on which any VA Mortgage Loan is
transferred to the Liquidating Trust by a Debtor, such Debtor shall provide an electronic notice
to the VA, which notice shall state that such VA Mortgage Loan has been transferred to the
FHA Qualified Trustee on behalf of the Liquidating Trust.

(b)    Within fifteen (15) days of the transfer of servicing of the VA Mortgage
Loans owned by the Liquidating Trust to a successor servicer, the Liquidating Trust shall
provide, or cause to be provided, an electronic notice to the VA stating that the servicing of the
VA Mortgage Loans has been transferred to such successor servicer who shall be an approved
VA servicer.

(c)    EACH HOLDER OF A UNIT (BY VIRTUE OF ITS OWNERSHIP
THEREOF) ACKNOWLEDGES AND AGREES THAT IT DOES NOT HAVE ANY
DIRECT RIGHTS AGAINST THE VA WITH RESPECT TO ANY GUARANTY
APPLICABLE TO ANY VA MORTGAGE LOAN.

## ARTICLE X
## TAX MATTERS

10.1    <u>Tax Treatment</u>.

(a)    For all United States federal income tax purposes, all parties (including,
without limitation, the Debtors, the Liquidating Trust Board and the Unitholders) shall treat the
transfer of the Liquidating Trust Assets to the Liquidating Trust as:

(i)    a transfer of the Liquidating Trust Assets (subject to any
obligations relating to those assets) directly to Unitholders, other than
Liquidating Trust Assets that will be distributed pursuant to <u>Article III</u> (with
respect to which the Liquidating Trust shall be deemed to be acting in the
capacity of a Disbursing Agent) or that are allocable to Disputed LT Unsecured
Claims (which shall be treated as a transfer of such assets to the Disputed
Claims Reserve based on the number of Units held in the Disputed Claims
Reserve), followed by

(ii)    the transfer by such Unitholders to the Liquidating Trust of such
Liquidating Trust Assets in exchange for the Units.

(b)    Accordingly, those holders of Allowed Unsecured Claims receiving
Units, the Private Securities Claims Trust and the RMBS Claims Trust shall be treated for
United States federal income tax purposes as the grantors and owners of their respective shares
of the Liquidating Trust Assets (other than Liquidating Trust Assets that will be distributed
pursuant to <u>Article III</u> or that are allocable to Disputed LT Unsecured Claims). The foregoing
treatment shall also apply, to the extent permitted by applicable law, for state and local income
tax purposes.

10.2    <u>Tax Reporting</u>.

(a)    The Liquidating Trust shall file Tax Returns treating the Liquidating
Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance
with the Plan.  The Liquidating Trust also shall annually send (or otherwise make available) to
each holder of a beneficial interest in the Liquidating Trust a separate statement setting forth
the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such
holders to report such items on their United States federal income tax returns or to forward the
appropriate information to their respective beneficial holders with instructions to report such
items on their United States federal income tax returns.  The Liquidating Trust also shall file
(or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating
Trust that are required by any Governmental Unit or Tax Authority.

(b)      Allocation of Liquidating Trust taxable income and loss among the Unitholders shall be made Pro Rata (including Units held in the Disputed Claims Reserve).

(c)      The Liquidating Trust shall (A) treat the Disputed Claims Reserve, and the Liquidating Trust Assets allocable thereto, as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 by timely making an election, (B) file such Tax Returns and pay such Taxes as may be required consistent with such treatment, and (C) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

(d)      The Liquidating Trust may (A) treat the Administrative, Priority, Secured and Convenience Distribution Reserve, and the Liquidating Trust Assets allocable thereto, as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 by timely making an election and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

(e)      The Liquidating Trust may request an expedited determination of Taxes of the Liquidating Trust, including the Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

10.3    Tax Payment.    The Liquidating Trust shall be responsible for the payment, out of the Administrative Expenses Set Aside, of any Taxes imposed on the Liquidating Trust or the Liquidating Trust Assets, including the Disputed Claims Reserve.  In the event, and to the extent, that any Cash retained on account of Disputed LT Unsecured Claims in the Disputed Claims Reserve is insufficient to pay any portion of such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, such respective classes of Disputed LT Unsecured Claims, such Taxes shall be (x) reimbursed from any subsequent Cash amounts retained on account of the respective classes of Disputed LT Unsecured Claims or (y) to the extent such Disputed LT Unsecured Claims subsequently have been resolved, deducted from any amounts distributable by the Liquidating Trust as a result of the resolutions of such Disputed LT Unsecured Claims.

10.4    Liquidating Trust's Tax Powers.

(a)      Following the Effective Date, the Liquidating Trust Board shall be authorized to prepare and file (or cause to be prepared and filed) on behalf of the Debtors all Tax Returns required to be filed or that the Liquidating Trust Board otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

(b)      For all taxable periods ending on or prior to the Effective Date, the Liquidating Trust Board shall have full and exclusive authority in respect of all Taxes of the Debtors to the same extent as if the Liquidating Trust Board was the debtor in possession.

(c)      In furtherance of the Liquidating Trust Board's authority hereunder, each of the Debtors shall execute, a power of attorney authorizing the Liquidating Trust to correspond with any Tax Authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer Tax payments, Tax refunds and Tax Returns.

(d)    Following the Effective Date, the Liquidating Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any Taxes of the Debtors to the same extent as the Debtors would otherwise be entitled with respect to any taxable period.

## ARTICLE XI
## LIMITATION OF LIABILITY AND INDEMNIFICATION

11.1    <u>Limitation of Liability</u>.

(a)    None of the Delaware Trustee, the FHA Qualified Trustee, any FHA Qualified Co-Trustee, the Liquidating Trustees, the Liquidating Trust Management, or any Nominating Party or their respective principals, advisors or professionals, shall be liable to the Liquidating Trust or any Unitholder for any damages arising out of the creation, operation or termination of the Liquidating Trust, including actions taken or omitted in fulfillment of his, her or its duties with respect to the Liquidating Trust, except as may be determined by Final Order to have arisen out of such party's gross negligence, bad faith or willful misconduct (and, in the case of the Delaware Trustee, the FHA Qualified Trustee and any FHA Qualified Co-Trustee, in the performance of its express duties under this Liquidating Trust Agreement); <u>provided</u>, that in no event will any such party be liable for punitive, exemplary, consequential or special damages under any circumstances.  Furthermore, neither the Delaware Trustee, the FHA Qualified Trustee, any FHA Qualified Co-Trustee nor any Liquidating Trustee shall be liable to the Liquidating Trust or any Unitholder for any action taken in good faith reliance upon the advice of Liquidating Trust Management.

(b)    None of the Delaware Trustee, the FHA Qualified Trustee, any FHA Qualified Co-Trustee, the Liquidating Trustees, the Liquidating Trust Management or the Liquidating Trust Agents, when acting in such capacities, shall be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to  any person, other than the Liquidating Trust or the Liquidating Trust Beneficiaries, in connection with the affairs of the Liquidating Trust to the fullest extent provided under section 3803 of the Trust Act, and all persons claiming against any of the Delaware Trustee, the FHA Qualified Trustee, any FHA Qualified Co-Trustee, the Liquidating Trustees, the Liquidating Trust Management or Liquidating Trust Agent, or otherwise asserting claims of any nature in connection with affairs of the Liquidating Trust, shall look solely to the Liquidating Trust Assets for satisfaction of any such claims.

(c)    Nothing contained in the Plan Documents shall be deemed to be an assumption by the Delaware Trustee, the FHA Qualified Trustee, any FHA Qualified Co-Trustee, any Liquidating Trustee, the Liquidating Trust Management or any Liquidating Trust Agent of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by any of them to assume or accept any such liability, obligation or duty.

(d)    The exercise by a Nominating Party of its rights hereunder shall not, in any way, cause such Nominating Party to become, or result in such Nominating Party becoming, a fiduciary to the Debtors, their estates, creditors or equity holders, to the

Liquidating Trust, the Liquidating Trust Board or to any other person or constituency. Neither a Nominating Party nor any of its subsidiaries, affiliates, successors and assigns and its present or former employees, agents, officers, directors or principals shall have or incur any liability, nor shall any of them be subject to any claim or cause of action, of any kind in connection with, arising out of, or related to, the exercise by the applicable Nominating Party of its rights hereunder, or any act taken or omitted to be taken in connection therewith.

   11.2 <u>Indemnification</u>.

    (a) The Delaware Trustee, the FHA Qualified Trustee, any FHA Qualified Co-Trustee, the Liquidating Trustees, the Liquidating Trust Management and their respective affiliates, and the officers, directors, partners, managers, members, and employees of each of them, as the case may be (all persons so entitled to indemnification, collectively, the "<u>Covered Parties</u>"), shall be indemnified and held harmless, to the fullest extent permitted by law by the Liquidating Trust from and against any and all losses, claims, taxes, damages, reasonable expenses and liabilities (including liabilities under state or federal securities laws) of any kind and nature whatsoever ("<u>Liabilities</u>"), to the extent that such expenses arise out of or are imposed upon or asserted against such indemnified persons with respect to the creation, operation or termination of the Liquidating Trust or the execution, delivery or performance of this Liquidating Trust Agreement or the transactions contemplated hereby and shall not be liable for actions taken or omitted in their capacity, as Delaware Trustee, FHA Qualified Trustee, FHA Qualified Co-Trustee, Liquidating Trustee or Liquidating Trust Management, on behalf of, or in fulfillment of their duties with respect to, the Liquidating Trust, except those acts or omissions that are determined by Final Order to have arisen out of such party's gross negligence, bad faith or willful misconduct (and, in the case of the Delaware Trustee, the FHA Qualified Trustee and any FHA Qualified Co-Trustee, in the performance of its express duties under this Liquidating Trust Agreement), and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities regarding the implementation or administration of the Plan Documents or the discharge of their respective duties hereunder or thereunder or in respect thereof, except for any actions or inactions that are determined by Final Order to have arisen out of their own gross negligence, bad faith, or willful misconduct (and, in the case of the Delaware Trustee, the FHA Qualified Trustee and any FHA Qualified Co-Trustee, in the performance of its express duties under this Liquidating Trust Agreement). Without limiting the foregoing, the Liquidating Trust Manager in its capacity as trustee of the Private Securities Claims Trust and its related Covered Parties shall be indemnified by the Liquidating Trust against Liabilities relating to or arising out of the operation of the Private Securities Claims Trust in the manner set forth in this <u>Section 11.2</u> *mutatis mutandis*.

    (b) The Covered Parties shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable expenses of defending themselves in any action threatened or brought against them as a result of the acts or omissions, actual or alleged, of any such party in its capacity as such; <u>provided</u>, <u>however</u>, that the Covered Parties receiving such advances shall repay the amounts so advanced to the Liquidating Trust immediately upon the

entry of a Final Order finding that such parties were not entitled to any indemnity under the provisions of this <u>Section 11.2</u>.

(c)    Any claim of the Covered Parties to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Liquidating Trust Assets, bonds (if any) or any applicable insurance that the Liquidating Trust has purchased, as provided in <u>Section 2.11</u>. The rights of the Covered Parties under this <u>Section 11.2</u> shall survive the resignation or removal of any Liquidating Trustee, the Delaware Trustee, the FHA Qualified Trustee, and any FHA Qualified Co-Trustee, and the termination of this Liquidating Trust Agreement.

(d)    The Liquidating Trust may also determine to provide indemnification to Liquidating Trust Agents and their respective officers, directors, partners, managers, members and employees, on such terms as the Liquidating Trust Board may determine, <u>provided</u> that any claim for indemnification shall be satisfied solely from the Liquidating Trust Assets or insurance.

11.3    <u>Prior to the Effective Date</u>.    All the provisions of this Article XI shall apply equally to the Original Trust, *mutatis mutandis*, and, for the avoidance of doubt, to the Liquidating Trust prior to the Effective Date.

## ARTICLE XII
## DURATION OF LIQUIDATING TRUST

12.1    <u>Duration</u>.

(a)    The Liquidating Trust shall dissolve upon the date that is the earliest to occur of: (i) the distribution of all Liquidating Trust Assets pursuant to the Plan Documents, (ii) the determination of the Liquidating Trust Board that the administration of the Liquidating Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all the distributions required to be made under this Liquidating Trust Agreement have been completed; <u>provided</u>, <u>however</u>, that in no event shall the Liquidating Trust dissolve later than three (3) years from the Effective Date, unless the Bankruptcy Court, upon motion within the six (6) months prior to the third (3rd) anniversary of the Effective Date (or within six (6) months prior to the end of an extension period), determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets (without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a Liquidating Trust for United States federal income tax purposes). Upon dissolution, the Liquidating Trustee shall wind up and liquidate the Liquidating Trust in accordance with section 3808 of the Trust Act and, at the direction of the Liquidating Trustee, the Delaware Trustee shall file a Certificate of Cancellation in accordance with section 3810(d) of the Trust Act and thereupon the Liquidating Trust Agreement shall terminate.

(b)    If at any time the Liquidating Trust Board determines, in reliance upon its professionals, that the expense of administering the Liquidating Trust, including the making of a final distribution to the Unitholders, is likely to exceed the value of the assets remaining in

the Liquidating Trust, the Liquidating Trust Board may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the Liquidating Trust, (ii) donate any balance to an organization selected by the Liquidating Trust Board which is described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code, as provided in Section 2.8(b) hereof, and (iii) dissolve the Liquidating Trust.

12.2    Post-Termination.    After the dissolution of the Liquidating Trust and solely for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Trustees shall continue to act as such until their duties have been fully performed.    Upon distribution of all the Liquidating Trust Assets, the Liquidating Trust Board shall designate a Liquidating Trust Agent to retain all books and records pertaining to the Debtors or the Liquidating Trust that have been delivered to or created by the Liquidating Trust, subject to the provisions of Section 12.3.

12.3    Destruction of Books and Records.    If so determined by the Liquidating Trust Board, or absent such determination, in the discretion of the Liquidating Trust Agent appointed pursuant to Section 12.2, all books and records pertaining to the Debtors or the Liquidating Trust that have been delivered to or created by the Liquidating Trust may be destroyed at any time following (x) the date that is six (6) years after the final distribution of Liquidating Trust Assets (unless such records and documents are necessary to fulfill the Liquidating Trust's remaining obligations) subject to the terms of any joint prosecution and common interests agreement(s) to which the Liquidating Trust may be a party, or (y) such earlier date as may approved by order of the Bankruptcy Court on application of the Liquidating Trust; provided, however, that the Liquidating Trust shall obtain an order of the Bankruptcy Court before disposing of any books and records that are reasonably likely to pertain to pending litigation in which the Debtors or their current or former officers or directors are a party.

12.4    Discharge.    Except as otherwise specifically provided herein, upon the final distribution of Liquidating Trust Assets and the filing by the Delaware Trustee of a Certificate of Cancellation with the Secretary of State of the State of Delaware, the Delaware Trustee, the FHA Qualified Trustee and the Liquidating Trustees shall be deemed discharged and have no further duties or obligations hereunder, the Units shall be cancelled and the Liquidating Trust shall be deemed to have been dissolved.    In the event that there are Liquidating Trust Assets at the termination of the Liquidating Trust, the Liquidating Trust Board shall cause to be donated such Liquidating Trust Assets to a charitable organization of the Liquidating Trust Board's choice described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code, as provided in Section 2.8(b).

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1    Governing Law.    This Liquidating Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to conflicts of law).

13.2    <u>Jurisdiction</u>.    Subject to the proviso below, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Liquidating Trust, including, without limitation, the administration and activities of the Liquidating Trust, <u>provided</u>, <u>however</u>, (a) the Bankruptcy Court shall retain non-exclusive jurisdiction to the extent permissible under applicable law to hear and determine matters relating to the GM Policies and the GM Insurers, including rights under the GM Policies and (b) that notwithstanding the foregoing or anything to the contrary set forth in the Plan, the Liquidating Trust Board shall have power and authority to bring (or cause to be brought) any action in any court of competent jurisdiction to prosecute any Liquidating Trust Causes of Action.

13.3    <u>Severability</u>.    In the event that any provision of this Liquidating Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Liquidating Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Liquidating Trust Agreement shall be valid and enforceable to the fullest extent permitted by law.

13.4    <u>Notices</u>.    Any notice or other communication required or permitted to be made under this Liquidating Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile, sent by nationally recognized overnight delivery service, or mailed by first-class mail:

> (i)    if to the Delaware Trustee, to:
>
> Wilmington Trust, National Association
> Rodney Square North
> 1100 North Market Street
> Wilmington, Delaware 19890
> Attention: Corporate Trust Administration
>
> (ii)    if to the FHA Qualified Trustee, to:
>
> Manufacturers and Traders Trust Company
> c/o Wilmington Trust, National Association
> Rodney Square North
> 1100 North Market Street
> Wilmington, Delaware 19890
> Attention: Corporate Trust Administration
>
> (iii)    if to the Liquidating Trust, to:
>
> ResCap Liquidating Trust
> c/o Quest Turnaround Advisors, LLC
> 800 Westchester Avenue, Suite S-520
> Rye Brook, NY 10573
> Fax: 914-253-8103
> Email:  jbrodsky@qtadvisors.com

      (iv)     if to any Unitholder, to the last known address of such Unitholder according to the records of the Liquidating Trust, if the Units are held in the form of Unit Certificates, and otherwise in accordance with the practices and procedures of DTC;

      (v)     if to any other distributee of the Liquidating Trust, to the last known address of such distributee according to the records of the Liquidating Trust; and

      (vi)     if to a Nominating Party, to such person at such address as provided to the Liquidating Trust by such Nominating Party in accordance with Section 6.2(n).

     13.5    <u>Headings</u>.  The headings contained in this Liquidating Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Liquidating Trust Agreement or of any term or provision hereof.

     13.6    <u>Plan Documents</u>.  Nothing contained herein shall modify the terms of any other Plan Document, which are intended to be supplemented by the terms of this Liquidating Trust Agreement.  However, to the extent that the terms of any of the other Plan Documents are inconsistent with the terms set forth in this Liquidating Trust Agreement with respect to the Liquidating Trust, then the terms of this Liquidating Trust Agreement shall govern.

     13.7    <u>Control Over Debtors</u>.  Following the Effective Date, for so long as any Debtor has not been legally dissolved in accordance with applicable provisions of law, the Liquidating Trust shall have complete and exclusive control over, and rights of management in respect of, such Debtor and its assets in accordance with the Plan, irrespective of whether the equity interests of such Debtor continue to subsist or have been formally transferred to the Liquidating Trust, and no other person shall have the right to control, manage, or direct the affairs or enforce any rights of such Debtor, or any of its assets, for any reason or purpose.

     13.8    <u>Confidentiality</u>.  The Trustees, the Liquidating Trust Management and the Liquidating Trust Agents, and their respective officers, directors, partners, managers, members and employees  (the "<u>Confidentiality Parties</u>"), shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidentiality Party of or pertaining to the Debtors, the Liquidating Trust, the Unitholders or the Liquidating Trust Assets; <u>provided</u>, <u>however</u>, that such information may be disclosed if—

      (i)     it is now or in the future becomes generally available to the public other than as a result of a disclosure by any of the Confidentiality Parties;

      (ii)     such disclosure is required of any of the Confidentiality Parties pursuant to legal process, including subpoena or other court order or other applicable laws or regulations; or

      (iii)     the Liquidating Trust Board determines that such disclosure is in the interests of the Liquidating Trust or the Unitholders.

13.9    Entire Liquidating Trust Agreement.  This Liquidating Trust Agreement, including the Exhibits attached hereto, the Plan and the Confirmation Order contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.  For the avoidance of doubt, to the extent holders of Allowed Claims that would otherwise be entitled to receive Units have established or in the future establish trusts or other entities or vehicles to facilitate the implementation of the Plan with respect to their Units or for other purposes, the agreements governing such trusts or other entities or vehicles shall not limit or impose requirements in any way on the Liquidating Trust, the Liquidating Trustees, the Liquidating Trust Board, the Liquidating Trust Manager or any other employee, agent or representative of the Liquidating Trust, and to the extent there is any conflict between the provisions of such agreements and this Liquidating Trust Agreement, this Liquidating Trust Agreement shall have controlling effect.

13.10    Named Party.   In pursuing any Avoidance Actions, and/or other Liquidating Trust Causes of Action, or in disposing of any Liquidating Trust Assets, or otherwise administering the Liquidating Trust or any Liquidating Trust Assets, including, without limitation, the execution of documents, such as bills of sale, releases, and agreements, the Liquidating Trust Board may authorize the pursuit of such matters and/or execution of any such documents in the name of "ResCap Liquidating Trust" or in such other names or such representative capacities as necessary or appropriate.

13.11    Amendment.  This Liquidating Trust Agreement may be amended with the Supermajority Consent of the Liquidating Trust Board; provided, however, that Bankruptcy Court approval shall be required for any changes or amendments to this Liquidating Trust Agreement that are inconsistent with the terms of the Plan or the Confirmation Order.  Notwithstanding this Section 13.11 no amendments to this Liquidating Trust Agreement shall be inconsistent with the purpose and intention of the Liquidating Trust to liquidate in an orderly manner the Liquidating Trust Assets (which will maximize the value of such assets) in accordance with Treasury Regulations section 301.7701-4(d).  In the event that the Liquidating Trust shall fail or cease to qualify as a Liquidating Trust in accordance with Treasury Regulations section 301.7701-4(d), this Liquidating Trust Agreement may be amended with the Majority Consent of the Liquidating Trust Board, to the extent necessary to take such action as the Liquidating Trust Board deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations section 301.7701-3 (but not a publicly traded partnership under section 7704 of the Tax Code), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company that is so classified.  Any amendment to this Liquidating Trust Agreement shall be posted on the Liquidating Trust Website as promptly as practicable after the adoption thereof.

13.12    Counterparts.  This Liquidating Trust Agreement may be executed in any number of counterparts, each of which shall be deemed original, but such counterparts shall together constitute one and the same instrument.  A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

**IN WITNESS WHEREOF**, the parties hereto have executed this Liquidating Trust Agreement or caused this Liquidating Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

Residential Capital, LLC

By /s/ William Thompson
Name: William Thompson
Title: General Counsel

By: /s/ Jill Horner
Name: Jill Horner
Title: Chief Finance Executive

AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC

By:  /s/ William Thompson
Name:  William Thompson
Title: General Counsel

By: /s/ Jill Horner
Name:  Jill Horner
Title:  Chief Financial Officer

Wilmington Trust, National Association, as Delaware
Trus    tee

By: /s/ David A. Vanaskey, Jr.
Name: David A. Vanaskey, Jr.
Title: Vice President


Manufacturers and Traders Trust Company, as FHA
Qualified Trustee

By: /s/ William J. Farrell II
Name: William J. Farrell II
Title: Executive Vice President

/s/ John S. Dubel
John S. Dubel, as Liquidating Trustee

/s/ Mitchell Sonkin
Mitchell Sonkin, as Liquidating Trustee

/s/ Mathew Doheny
Matthew Doheny, as Liquidating Trustee

/s/ Paul J. Weber
Paul J. Weber, as Liquidating Trustee

/s/ Samuel L. Molinaro
Samuel L. Molinaro, Jr., as Liquidating Trustee

## EXHIBIT A

### RESCAP LIQUIDATING TRUST

### REQUEST FOR SECURITIES ACCOUNT INFORMATION

December __, 2013

**To:**   The Holders of Allowed ResCap Unsecured Claims (Class R-4), GMACM Unsecured
Claims (Class GS-4A) and RFC Unsecured Claims (Class RS-4) in the Bankruptcy Case
of Residential Capital, LLC et al., Case No. 12-12010 (MG) (S.D.N.Y.)

**Introduction**

On December 11, 2013, the United States Bankruptcy Court for the Southern District of
New York entered an order confirming the Joint Chapter 11 Plan of Residential Capital, LLC, *et
al.* and the Official Committee of Unsecured Creditors.  In accordance with the Plan, the ResCap
Liquidating Trust (the "Liquidating Trust") will be making a distribution to holders of Allowed
ResCap Unsecured Claims (Class R-4), GMACM Unsecured Claims (Class GS-4A) and RFC
Unsecured Claims (Class RS-4) consisting of Units of beneficial interest in the Liquidating
Trust.[1]  Each Unit will entitle its holder to a pro rata share of all cash distributions made by the
Liquidating Trust to the holders of Units.  An initial distribution of Units is expected to occur
within 15 days after the effective date of the Plan.  It is anticipated that an initial distribution of
cash will be made to holders of Units at the time of or shortly after the initial distribution of the
Units.  Additional cash distributions will be made as non-cash assets in the Liquidating Trust are
sold or otherwise monetized.

The Plan has not yet become effective.  As a prerequisite to your receipt of Units, the
Plan must become effective and other conditions described in the order confirming the Plan must
be fully satisfied.[2]  We are asking for certain information at this time, so that you will be able to
receive your Units, and the subsequent initial distribution of cash on your Units, soon after the
effective date of the Plan as described above.

**To receive your Units on the date of the initial Unit distribution, and the cash
distribution on those Units that will be made shortly thereafter, you must provide the
information requested in this letter so that it is actually received no later <u>5:00 p.m. (Eastern
time) on December 19, 2013</u>.**

If you do not provide the information requested in this letter so that it is actually received
by **5:00 p.m. (Eastern time) on December 19, 2013**, or if the information you have sent is
incomplete or illegible, you will not receive your Units or the cash distributed on those Units
until a later distribution date, after you have provided the required information.  As a result your
receipt of distributions from the Liquidating Trust will be delayed until a later distribution date.

---

[1] Units will also be issued to a trust for the benefit of holders Private Securities Claims (Classes R-6, GS-6 and
RS-6).

[2] If the Plan does not become effective and/or the other conditions described in the order confirming the Plan are not
satisfied, you may not be entitled to receive the Units described in this letter.

The Liquidating Trust's Claims Officer is collecting the information requested by this letter on behalf of the Liquidating Trust.

**Required Actions to Receive Your Units**

Listed on the accompanying Schedule A is—

•    your name as it appears on the records of the Debtors;

•    the identification number that has been assigned to you;

•    the class or classes to which your claim belongs; and

•    the amount of your claim in each class.

To receive the Units to which you are entitled under the Plan, please review Schedule A and then continue with the steps below.

### *Step 1*

If you are a U.S. person, you must provide the Claims Officer with your social security number or other taxpayer identification number. Accordingly, please fill out the attached Internal Revenue Service Form W-9 Request for Taxpayer Identification Number and Certification.

If you are not a U.S. person, instead please fill out the attached Internal Revenue Service Form W-8BEN Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding (or other applicable Internal Revenue Service Form W-8).

### *Step 2*

You must designate a broker, bank or other financial institution with which you maintain a securities account to receive your Units on your behalf. You will not receive a distribution of Units unless and until you designate a broker in accordance with the instructions below.

*If you DO have a securities account with a broker, bank or other financial institution.* If you currently have a securities account with a broker, bank or other financial institution, you must provide the broker, bank or other financial institution account information requested on the attached Schedule A to the Liquidating Trust.

*If you DO NOT have a securities account with a broker, bank or other financial institution.* If you do not currently have a securities account with a broker, bank or other financial institution, you must open such an account before you can receive your Units. Once you have opened a securities account, you must provide the broker, bank or other financial institution account information requested on the attached Schedule A to the Liquidating Trust.

*Step 3*

Send (i) the fully completed Internal Revenue Service Form W-9 or Internal Revenue Service Form W-8BEN (or other applicable Internal Revenue Service Form W-8) and (ii) the fully completed Schedule A to the Claims Officer either—

By E-Mail:    ResCapLiquidatingTrust@ResCapEstate.com

or

Mail:    ResCap Liquidating Trust
P.O. Box 385220
Bloomington, Minnesota  55438

**Other Information**

If the Claims Officer determines, in its sole discretion, that the information you have sent is incomplete or illegible, your submission may be rejected by the Claims Officer, and you may not receive your Units and the cash distributed on those units until a later distribution date. The information you provide, including your social security or taxpayer identification number, will be held on a confidential basis.  Once the Claims Officer has received your information, she will contact you or your broker, bank or other financial institution with instructions to enable the Liquidating Trust to issue Units to you and deposit them to your securities account.

If the Liquidating Trust is unable to issue and deposit your Units a securities account that you designate, the Liquidating Trust may issue the Units to you by reserving them, and all cash distributions on the Units, on your behalf.  Once you have completed the actions described in this letter, and all other required conditions have been satisfied, the Liquidating Trust will transfer the securities from that account to your securities account.

If you do not take the actions required by this letter and any further instructions provided by the Liquidating Trust, you could forfeit your interest in the Units to which you would otherwise be entitled.

Receipt of the Units may have tax consequence for you, and you are encouraged to consult with your tax advisor.

If you have any questions about your distribution, or for more information, you may contact Peggi Fossel by calling the following number: (952) 857-7485 or emailing the Claims Officer to ResCapLiquidatingTrust@ResCapEstate.com.

Sincerely,

*Deanna Horst*

_____
On behalf of the ResCap Liquidating Trust

# SCHEDULE A[3]

CLAIMANT NAME: _____ [PRE POPULATED]

CLAIM NUMBER(S): _____ [PRE POPULATED]

CLASS        ALLOWED CLAIM AMOUNT

Class R-4        $_____ [PRE POPULATED]

Class GS-4A        $_____ [PRE POPULATED]

Class RS-4        $_____ [PRE POPULATED]

## BROKER, BANK OR OTHER FINANCIAL INSTITUTION INFORMATION

| | |
|---|---|
| Name of Broker, Bank or Other Financial Institution: | |
| Contact Name: | |
| Contact Email: | |
| Contact Phone: | |
| Account Number: | |
| DTC Participant (if different from Financial Institution above): | |
| DTC Participant Number: | |
| Wire Instructions: <br><br> Financial Institution: <br> SWIFT or ABA No. <br> Account Name: <br> Account Number: <br> Other: | |

This form must be completed and returned to the Claims Officer with a completed Internal Revenue Service Form W-9 or Internal Revenue Service Form W-8BEN (or other applicable Form W-8).

---

[3] Claim information is provided solely for reference purposes and shall not be binding on the Debtors or the Liquidating Trust in any respects.

## EXHIBIT B

## FORM OF ACCESS AND COOPERATION AGREEMENT

THIS ACCESS AND COOPERATION AGREEMENT, dated as of December 17, 2013 (this "Agreement"), is by and between the ResCap Borrower Claims Trust (the "Borrower Claims Trust") the ResCap Liquidating Trust (the "Liquidating Trust").

## RECITALS

WHEREAS, Residential Capital, LLC and certain of its affiliates (the "Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101-1330 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, on August 23, 2013 the Debtors filed the Joint Chapter 11 Plan of Residential Capital, LLC, et al., dated August 23, 2013 (as amended and supplemented and as confirmed, the "Plan"), which has been confirmed by an order of the Bankruptcy Court dated December 11, 2013 (the "Confirmation Order");

WHEREAS, on December 17, 2013, the Effective Date of the Plan occurred;

WHEREAS, pursuant to the Plan, on the Effective Date the Borrower Claims Trust Agreement was executed to establish and provide for the administration of the Borrower Claims Trust and the distribution of Borrower Claims Trust Assets to holders of Borrower Claims that are Allowed on the Effective Date or that become Allowed after the Effective Date as contemplated by the Plan, and the Borrower Claims Trustee (as defined in the Borrower Claims Trust Agreement) has been appointed to act as trustee of the Borrower Claims Trust Assets, in furtherance of and consistent with the purpose of the Plan and the Borrower Claims Trust Agreement, with the power and authority to prosecute, compromise and settle objections to Disputed Borrower Claims, to discharge Allowed Borrower Claims, and to perform such other duties as may be vested in the Borrower Claims Trustee pursuant to the Plan and the Borrower Claims Trust Agreement (the "Borrower Claims Trust Functions");

WHEREAS, pursuant to the Plan, certain books and records that the Borrower Claims Trustee may need to access in order to discharge the Borrower Claims Trust Functions have been transferred to the Liquidating Trust and the Borrower Claims Trust may require from the Liquidating Trust access to such books and records in order to facilitate satisfaction of the Borrower Claims Trust Functions and administration of the Borrower Claims Trust as contemplated by the Plan.

NOW THEREFORE, in consideration of the above-stated premises, the mutual covenants contained herein and for other good and valuable consideration, the parties agree as follows:

## ARTICLE 1

## DEFINITIONS

69

Section 1.1    Defined Terms.    Capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Borrower Claims Trust Agreement or in the Bankruptcy Code. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Agreement as a whole and not to any particular article, section, subsection, or clause contained in this Agreement. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

## ARTICLE 2

## ACCESS TO RECORDS AND PERSONNEL

Section 2.1    Access.

(a)    On and after the Effective Date and during the Term of this Agreement (as hereafter defined), the Liquidating Trust shall cooperate with the Borrower Claims Trust and the Borrower Claims Trustee by:

(i)    affording reasonable access, upon reasonable advance notice, during regular business hours unless otherwise agreed by the parties, to such employees of the Liquidating Trust as the Borrower Claims Trustee deems reasonably necessary to assist in the resolution of Disputed Borrower Claims.  For purposes of the foregoing, (i) access shall include, access by telephone, periodic meetings, interviews and appearance of such employees as witnesses (by affidavits, at depositions and at trials, as necessary) and their availability for preparation as a witness or deponent in proceedings and (ii) "employees of the Liquidating Trust" means individuals that are employed by the Liquidating Trust at the time such access is requested to be afforded; and

(ii)    in accordance with Article XIII.E of the Plan, affording access to the Borrower Claims Trustee to books and records reasonably required to fulfill the Borrower Claims Trust Functions, including computer generated or computer maintained books and records and computerized data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties (the "Books and Records"), which Books and Records shall include mortgage loan files, mortgage loan servicing notes, Borrower litigation files, e-mail records, contracts, financial records, reports and any and all other work product generated by or on behalf of the Debtors, and any and all communications with Debtors' agents and professionals, and documents and other instruments relating to the Debtors' origination and servicing of mortgage loans; provided, however, that the Liquidating Trust shall not be responsible for such Books and Records that may have been lost (notwithstanding reasonable good faith efforts to locate such Books and Records), damaged or destroyed prior to the Effective Date.

(b)    Notwithstanding the access afforded by the Liquidating Trust to the Books and Records under subsection (a) above, such Books and Records shall at all times during the Term remain in the custody and under the control of the Liquidating Trust; provided, however, that the

Borrower Claims Trust shall be permitted to make copies of the Books and Records, or any portion thereof, or request the Liquidating Trust to make such copies, including electronic copies, at the expense of the Liquidating Trust to the extent reasonable under the circumstances.

(c)     In determining whether any request of the Borrower Claims Trust for access to employees of the Liquidating Trust or the Books and Records is reasonable in the circumstances, there shall be taken into account whether the relevant information could otherwise be obtained from documents already in the custody, possession or control of the Borrower Claims Trust or professionals or agents otherwise employed or retained by the Borrower Claims Trust.

(d)     The Liquidating Trust shall use reasonable efforts to afford the access provided for in subsection (a) above in a timely manner, so as to enable the Borrower Claims Trustee to timely pursue the resolution of any Disputed Borrower Claims and otherwise timely fulfill the Borrower Claims Trust Functions, it being understood that time may be of the essence in certain instances in order to comply with court hearing or filing deadlines or to avoid the application of statutes of limitation; provided, however, that in all cases such access shall not unduly interfere with the conduct of the operations and affairs of the Liquidating Trust upon the reasonable determination of the Liquidating Trust Manager; and provided further that the Liquidating Trust shall not be required to (i) afford such access to the extent that it would result in a waiver of any privilege, including attorney-client privilege, available to the Liquidating Trust where, in the reasonable judgment of the Liquidating Trust, such waiver would materially and adversely affect the ability of the Liquidating Trust to conduct its operations and affairs, to preserve or prosecute any claims that are or that may be available to it or to defend any claims or actions which have or may be asserted against it or (ii) continue to employ any individual (whether access to such employee has been provided in the manner contemplated by this Section 2.1 or otherwise).

(e)     The Liquidating Trust shall from time to time designate by written notice to the Borrower Claims Trust (i) an employee (the "Coordinator") for the purpose of receiving requests for access to employees of the Liquidating Trust and Books and Records and coordinating the response of the Liquidating Trust to such requests and (ii) an employee to receive such requests in the event the Coordinator is unavailable (the "Alternate Coordinator").  The initially designated Coordinator and Alternate Coordinator are set forth on Schedule I to this Agreement. In the event that the Coordinator and Alternate Coordinator are for any reason unavailable or the Borrower Claims Trustee believes that the Borrower Claims Trust has not been provided access in the manner contemplated by this Section 2.1, the Borrower Claims Trustee shall also be permitted to communicate with the Liquidating Trust Manager for such purposes.

(f)     All requests for access, as contemplated by this Section 2.1, shall be delivered to the Liquidating Trust, and all communications in respect of such request shall be conducted on behalf of the Borrower Claims Trust by the Borrower Claims Trustee or an employee or agent of the Borrower Claims Trust designated by written notice to the Liquidating Trust.  At the request of the Borrower Claims Trustee, the Liquidating Trust shall also afford access to employees of the Liquidating Trust and Books and Records, as provided in subsection (a), to those professionals and agents of the Borrower Claims Trust (including, without limitation, counsel, accountants and financial advisors) who have been identified to the Liquidating Trust in each instance by the Borrower Claims Trustee.

(g)    The access to employees of the Liquidating Trust and Books and Records contemplated by this Section 2.1 shall be given by the Liquidating Trust at its own expense, including as provided in subsection (b) above; provided, however, that the Liquidating Trust shall not be responsible for any costs and expenses incurred by the Borrower Claims Trust with respect to such access, including the costs and expenses of any agents, professionals or contractors retained by the Borrower Claims Trust for the purpose of obtaining access to the employees of the Liquidating Trust or the Books and Records or performing any Borrower Claims Trust Functions in respect thereof; provided further that nothing herein shall require the Borrower Claims Trust to hire any professional or agent, or to incur any particular cost or expense, in order to gain access to the employees of the Liquidating Trust or any Books and Records as contemplated by this Section 2.1.

## ARTICLE 3

## OTHER AGREEMENTS

Section 3.1    Preservation of Privilege and Defenses.  To the maximum extent permitted by law, neither this Agreement nor the performance by the parties under the provisions of Article 2 or otherwise pursuant to this Agreement shall constitute the waiver of any attorney-client privilege, work-product privilege or other privilege, immunity or defense attaching to or existing with respect to the Books and Records or any other documents or communications (whether written or oral) constituting Liquidating Trust Assets, and to the extent relating to the Borrower Claims Trust Functions and appropriate in the circumstances, any such privilege, immunity or defense may be asserted by the Borrower Claims Trustee, or any authorized agent or professional on behalf of the Borrower Claims Trust.

Section 3.2    Confidentiality.

(a)    In the course of the performance by the parties under this Agreement, each party may become aware of confidential or proprietary information of the other party ("Confidential Information").  All Confidential Information disclosed by a party in connection with the performance of this Agreement shall remain the property of the disclosing party, shall be held in confidence by the receiving party and shall be used by the receiving party only in accordance with the provisions of this Agreement.

(b)    The obligations of confidentiality under this Section 3.2 shall not apply with respect to Confidential Information which (i) is or becomes publicly known through no wrongful act of the receiving party. (ii) was known by the receiving party prior to disclosure or is developed by the receiving party independently of such disclosure; (iii) was disclosed to the receiving party by a third party who is not known by the receiving party after due inquiry to be under any confidentiality obligations; (iv) is approved for release by written authorization of the disclosing party; or (v) is disclosed pursuant to a requirement of law or by court order, provided that the receiving party shall provide notice to the disclosing party as far in advance of disclosure as is reasonably practicable in the circumstances and shall cooperate with the disclosing party, at the disclosing party's expense, in attempting to prevent or limit such legally required disclosure.

Section 3.3    Professionals and Agents.  To the extent that any information or expertise required by the Borrower Claims Trustee for the performance of the Borrower Claims Trust Functions may be in the possession of professionals and other agents of the Liquidating Trust, nothing in this Agreement shall preclude the Borrower Claims Trust from engaging such professionals or agents, at its sole cost and expense, to the extent consistent with applicable standards of professional responsibility, compliance with the confidentiality provisions of Section 3.2 and the preservation of the privileges, including the attorney-client privilege of the Liquidating Trust.

Section 3.1    Limitation of Liability. None of the Liquidating Trust, the Liquidating Trustees, the Liquidating Trust Management, Liquidating Trust Agent, or any of their respective principals, advisors or professionals, shall be liable to the Borrower Claims Trust for any damages arising out of this Agreement or the performance of the Liquidating Trust's obligations hereunder, including actions taken or omitted in fulfillment of his, her or its duties with respect to the Liquidating Trust, except in the case of such party's gross negligence, bad faith or willful misconduct; provided, that in no event will any such party be liable for punitive, exemplary, consequential or special damages under any circumstances.

Section 3.2    Further Assurances.  Each party agrees to perform, or cause to be performed, all such further acts, and to execute and deliver all such other agreements and instruments, as the other party may reasonably request in order to carry out the purposes and intents of this Agreement, and consistent with the other provisions hereof.

## ARTICLE 4

## TERM OF THIS AGREEMENT

The term of this Agreement (the "Term") shall commence on the Effective Date and shall terminate on the earlier to occur of (i) the dissolution of the Borrower Claims Trust in accordance with the Borrower Claims Trust Agreement or (ii) the dissolution of the Liquidating Trust in accordance with the Liquidating Trust Agreement.

## ARTICLE 5

## MISCELLANEOUS

Section 5.1    Notices.  Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile, sent by nationally recognized overnight delivery service, or mailed by first-class mail:

> (i)    if to the Borrower Claims Trust, to:
>
>    The ResCap Borrower Claims Trust
>    Peter S. Kravitz, Esq., Trustee
>    Solution Trust
>    29209 Canwood Street

Agoura Hills, CA 91301
Phone: 310-974-6350
Email: PKravitz@SolutionTrust.com


(iii)    if to the Liquidating Trust, to:


ResCap Liquidating Trust
c/o Quest Turnaround Advisors, LLC
800 Westchester Avenue, Suite S-520
Rye Brook, NY 10573
Fax: 914-253-8103
Email:  jbrodsky@qtadvisors.com

Section 5.2    <u>Counterparts</u>.    This Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

Section 5.3    <u>Governing Law</u>.  Except to the extent governed by the Bankruptcy Code, this Agreement shall be governed by, construed under and interpreted in accordance with, the internal laws of the State of New York, without regard to principles of conflicts of laws.

Section 5.4    <u>Exclusive Jurisdiction and Standing</u>.  As provided in Article XII of the Plan, the Bankruptcy Court has exclusive jurisdiction over all controversies, suits and disputes that may arise under this Agreement.

Section 5.5    <u>Severability</u>.  The terms and provisions of this Agreement shall be deemed severable, and in the event any term or provision hereof or any portion thereof is deemed or held to be invalid, illegal or unenforceable, the remaining terms and provisions hereof and portions thereof shall nevertheless continue and be deemed to be in full force and effect. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

Section 5.6    <u>Independent Contractor Status</u>.  The Liquidating Trust shall be deemed to be an independent contractor of the Borrower Claims Trust and employees of the Liquidating Trust shall at all times be regarded as employees of the Liquidating Trust. Nothing contained in this Agreement shall create or be deemed to create an employment, agency, joint venture or partnership relationship between the Borrower Claims Trust on the one hand, and the Liquidating Trust or any of its employees, on the other hand.

Section 5.7    <u>No Waiver</u>.  No failure or delay by any party in exercising any right, power or privilege hereunder will operate as a waiver thereof, and that no single or partial exercise thereof will preclude any other or further exercise thereof or the exercise of any right, power and privilege hereunder.

Section 5.8    <u>Plan Documents</u>.  Nothing contained herein shall modify the terms of any other Plan Document, which are intended to be supplemented by the terms of this Agreement.

Section 5.9    <u>Entire Agreement</u>.    This Agreement contains the entire agreement of the parties concerning the subject matter hereof, and no modification of this Agreement or waiver of the terms and conditions hereof will be binding upon the parties unless approved in writing by the parties.

Section 5.10    <u>Amendment</u>.    This Agreement may be amended with the consent in writing of the parties; <u>provided</u>, <u>however</u>, that, without approval of the Bankruptcy Court, no amendment to this Agreement shall be effective to the extent that it is inconsistent with the terms of the Plan, the Confirmation Order, the Liquidating Trust Agreement or the Borrower Claims Trust Agreement.

Section 5.11    <u>Titles</u>.    The section titles used herein are for convenience only and shall not be considered in construing or interpreting any of the provisions of this Agreement.

Section 5.12    <u>Binding Effect</u>.    This Agreement is for the benefit of and shall be binding upon the parties and their respective representatives, transferees, successors and assigns.


[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement or caused
this Agreement to be duly executed by their respective representatives thereunto duly authorized
as of the day and year first above written.


THE RESCAP BORROWER CLAIMS TRUST


By: _____, as Trustee




RESCAP LIQUIDATING TRUST

By:   Quest Turnaround Advisors, LLC, as Liquidating
       Trust Manager


By: _____
Name:  Jeffrey Brodsky
Title:  Member

## SCHEDULE I

Coordinator:  Deanna Horst

Alternative Coordinator:  Nick Kosinski

**Blackline**

EXECUTION COPY

**AMENDED AND RESTATED**

**RESCAP LIQUIDATING TRUST**

**LIQUIDATING TRUST AGREEMENT**

**BY AND AMONG**

**THE LIQUIDATING TRUSTEES,**

**WILMINGTON TRUST, NATIONAL ASSOCIATION,**

**MANUFACTURERS AND TRADERS TRUST COMPANY,**

**RESIDENTIAL CAPITAL, LLC**

**AND**

**THE OTHER DEBTORS LISTED ON THE SIGNATURE PAGES HERETO**

[●].December 17, 2013

## TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ....................................................................................................... 2
    1.1    Definitions Incorporated from the Plan ....................................................................... 2
    1.2    Other Definitions ........................................................................................................ 2
    1.3    Meanings of Other Terms ......................................................................................... 11

ARTICLE II CREATION OF LIQUIDATING TRUST ............................................................ 11
    2.1    Creation of Trust; Conversion ................................................................................. 11
    2.2    Purpose of Liquidating Trust ................................................................................... 12
    2.3    Status of Liquidating Trust and the Liquidating Trust Board ................................. 13
    2.4    Retention of Professionals ....................................................................................... 13
    2.5    Transfer of Available Assets .................................................................................... 14
    2.6    Title to Liquidating Trust Assets ............................................................................. 16
    2.7    Valuation ................................................................................................................. 16
    2.8    No Reversion to Debtors; Distribution of Remaining Assets .................................. 16
    2.9    Fiscal Year .............................................................................................................. 16
    2.10  Liquidating Trust Budget ......................................................................................... 16
    2.11  Insurance ................................................................................................................. 17
    2.12  Books and Records ............................................................................................... ~~18~~17
    2.13  No Interest or Accruals ............................................................................................ 18

ARTICLE III PRIORITY AND OTHER DISTRIBUTIONS AND RESERVES ...................... 18
    3.1    Professional Claims ................................................................................................. 18
    3.2    Borrower Claims Trust; NJ Carpenters Claims Distribution ................................. 18
    3.3    Allowed Priority Claims .......................................................................................... 19
    3.4    Allowed General Unsecured Convenience Claims .................................................. 19
    3.5    ETS Unsecured Claims ........................................................................................... 19
    3.6    Administrative, Priority, Secured and Convenience Distribution Reserve ............. 20
    3.7    Minimum Distributions; Other Limitations ............................................................. 21

ARTICLE IV ISSUANCE OF UNITS ...................................................................................... 22
    4.1    Number of Units ...................................................................................................... 22
    4.2    Unit Issuance Percentages ....................................................................................... 22
    4.3    Issuance and Distribution of Units .......................................................................... 22
    4.4    Evidence of Units .................................................................................................... 24
    4.5    Manner of Distribution of Units .............................................................................. 24
    4.6    Transfers of Units; Absence of Market for Units .................................................... 26
    4.7    Rights of Unitholders .............................................................................................. 26
    4.8    Interest Beneficial Only ........................................................................................... 26
    4.9    Conflicting Claims ................................................................................................... 26
    4.10  Unitholder Liability to Third Persons ...................................................................... 27
    4.11  Actions in the Right of the Liquidating Trust ......................................................... 27

ARTICLE V CASH DISTRIBUTIONS TO UNITHOLDERS...................................................27
5.1    Distributions Generally.............................................................................................27
5.2    Timing of Distributions.............................................................................................27
5.3    Distribution Record Date; Distributable Cash..........................................................28
5.4    Distributions in Respect of Disputed LT Unsecured Claims.....................................29
5.5    Adjustments to Estimated Amounts..........................................................................3029
5.6    Withholding and Reporting Requirements.................................................................30
5.7    Disbursing Agent.......................................................................................................31

ARTICLE VI BOARD OF TRUSTEES....................................................................................31
6.1    General.......................................................................................................................31
6.2    Membership................................................................................................................31
6.3    Compensation.............................................................................................................34
6.4    Authority....................................................................................................................34
6.5    Action of the Liquidating Trust Board......................................................................37
6.6    Meetings.....................................................................................................................38
6.7    Chairman of the Liquidating Trust Board.................................................................38
6.8    Committees.................................................................................................................39
6.9    Fiduciary Duty and Standard of Conduct.................................................................39

ARTICLE VII OPERATION OF THE LIQUIDATING TRUST.................................................39
7.1    Prohibited Activities..................................................................................................39
7.2    Resolution of Disputed LT Claims............................................................................40
7.3    Disputed Claims Reserve...........................................................................................40
7.4    Administrative Expenses Set Aside...........................................................................41
7.5    DOJ/AG Settlement Reserve.....................................................................................42
7.6    Reporting....................................................................................................................43
7.7    Liquidating Trust Management..................................................................................44
7.8    Liquidating Trust Agents; Employees.......................................................................45

ARTICLE VIII DELAWARE TRUSTEE..................................................................................45
8.1    Appointment...............................................................................................................45
8.2    Powers........................................................................................................................46
8.3    Compensation.............................................................................................................48
8.4    Duration and Replacement.........................................................................................48

ARTICLE IX FHA QUALIFIED TRUSTEE.............................................................................48
9.1    Appointment...............................................................................................................48
9.2    Powers, Authority and Responsibilities.....................................................................49
9.3    Servicing of FHA Mortgage Loans...........................................................................49
9.4    NO RIGHTS AGAINST HUD OR THE FHA..........................................................50
9.5    Certain Limitations with Respect to the FHA Qualified Trustee..............................50
9.6    Duration and Replacement.........................................................................................52
9.7    Compensation of the FHA Qualified Trustee............................................................52
9.8    Appointment of FHA Qualified Co-Trustees............................................................53
9.9    VA Mortgage Loans...................................................................................................53

ARTICLE X TAX MATTERS ............................................................................................54
10.1    Tax Treatment ..............................................................................................54
10.2    Tax Reporting ...............................................................................................54
10.3    Tax Payment .................................................................................................55
10.4    Liquidating Trust's Tax Powers ...................................................................55

ARTICLE XI LIMITATION OF LIABILITY AND INDEMNIFICATION .......................56
11.1    Limitation of Liability ..................................................................................56
11.2    Indemnification .............................................................................................57
11.3    Prior to the Effective Date ...........................................................................58

ARTICLE XII DURATION OF LIQUIDATING TRUST .................................................58
12.1    Duration ........................................................................................................58
12.2    Post-Termination ..........................................................................................59
12.3    Destruction of Books and Records ...............................................................59
12.4    Discharge ......................................................................................................59

ARTICLE XIII MISCELLANEOUS PROVISIONS .........................................................59
13.1    Governing Law .............................................................................................59
13.2    Jurisdiction ...................................................................................................60
13.3    Severability ..................................................................................................60
13.4    Notices ..........................................................................................................60
13.5    Headings .......................................................................................................61
13.6    Plan Documents ............................................................................................61
13.7    Control Over Debtors ...................................................................................61
13.8    Confidentiality ..............................................................................................61
13.9    Entire Liquidating Trust Agreement ............................................................62
13.10   Named Party .................................................................................................62
13.11   Amendment ...................................................................................................62
13.12   Counterparts .................................................................................................62

**Exhibits**

Exhibit A  ~~Summary Forecast~~
~~Exhibit B~~— Form of Request for Securities Account Information
Exhibit ~~C~~B – Form of Access and Cooperation Agreement

# RESCAP LIQUIDATING TRUST
## AMENDED AND RESTATED LIQUIDATING TRUST AGREEMENT

This Amended and Restated Liquidating Trust Agreement, dated as of [_____],December 17, 2013 (this "Liquidating Trust Agreement"), is entered into by and among Residential Capital, LLC ("ResCap"), AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC (each as a debtor and debtor-in-possession, and collectively, the "Debtors"), Wilmington Trust, National Association, or its successor, as Delaware Trustee, Manufacturers and Traders Trust Company, or its successor, as FHA Qualified Trustee, and the Liquidating Trustees whose names appear as such on the signature page to this Liquidating Trust Agreement.

## RECITALS

A.    On May 14, 2012, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the "Bankruptcy Case").

B.    On or about July 26, 2013, John S. Dubel, as trustee, executed a Declaration of Trust providing for the formation of a predecessor common law trust (the "Original Trust") for the purposes set forth therein.

C.    On or about August 23, 2013, the Debtors filed the Joint Chapter 11 Plan of Residential Capital, LLC, *et al.*, dated August 23, 2013 (as amended and supplemented and as confirmed, the "Plan", and the related disclosure statement, the "Disclosure Statement").

D.    On or about August 26, 2013, the Bankruptcy Court approved the Disclosure Statement.

E.    On December 10, 2013, the Original Trust was converted to a trust formed pursuant to the Trust Act (as defined below) by filing of the Certificate of Conversion (as

defined below) and Certificate of Trust (as defined below), and the Interim Liquidating Trust Agreement (as defined below) was executed

F.     On or about [⎯⎯⎯],December 11, 2013, the Bankruptcy Court issued an order confirming the Plan.

G.     On [⎯⎯⎯],December 17, 2013, the Effective Date of the Plan occurred.

H.     The Plan provides for a liquidating trust (as so formed and administered in accordance with the terms of this Liquidating Trust Agreement, the "Liquidating Trust") to liquidate and distribute the Liquidating Trust Assets to holders of administrative, other priority, secured and unsecured Claims that are Allowed on the Effective Date or that become Allowed after the Effective Date.

I.     This Liquidating Trust Agreement amends and restates the Interim Liquidating Trust Agreement and is being executed to establish and provide for the administration of the Liquidating Trust and the liquidation and distribution of Liquidating Trust Assets as contemplated by the Plan, and to otherwise facilitate the implementation of the Plan.

J.     The Liquidating Trust (other than as relating to the Liquidating Trust Assets allocable to distributions and reserves described in Article III and to the Disputed LT Unsecured Claims) is intended to qualify as a Liquidating Trust, within the meaning of Treasury Regulations section 301.7701-4(d), to be treated as a "grantor trust" for federal income tax purposes, and to be exempt from the requirements of the Investment Company Act of 1940 pursuant to Section 3(c)(5) and Sections 7(a) and 7(b) thereof.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.1     Definitions Incorporated from the Plan.  Other than the terms defined below or elsewhere in this Liquidating Trust Agreement, capitalized terms shall have the meaning assigned to them in the Plan.

1.2     Other Definitions.

(a)     "**Administrative Expenses Set Aside**" means an amount of Cash or other assets set aside from time to time by or under the direction of the Liquidating Trust Board for paying costs, fees and expenses, and reserving for liabilities, of the Liquidating Trust, as provided in Section 7.4, including costs, fees and expenses of the Estates payable at any time after the Effective Date.

(b)     "**Administrative, Priority, Secured and Convenience Distribution Reserve**" means the reserve established for the purpose of maintaining Cash or other assets from time to time necessary to satisfy Priority Distributions and General Unsecured Convenience Claims in accordance with Section 3.6.

KL2 2818854.10

the Liquidating Trust in the form attached as Exhibit C̶B to this Liquidating Trust Agreement
and (ii) the cooperation agreement, dated the date hereof, by and between the Liquidating Trust
and the Kessler Settlement Class relating to insurance.

(m)    "**Debtors**" has the meaning assigned in the Preamble.

(n)    "**Delaware Trustee**" means Wilmington Trust, National Association, or
its successor, which is appointed in accordance with this Liquidating Trust Agreement to
comply with the requirement of section 3807 of the Trust Act.

(o)    "**Disputed Claims Estimation Date**" means the date as of which the
Disputed Claims are to be estimated pursuant to the Reserve Motion.

(p)    "**Disputed Claims Reserve**" means the reserve of Units maintained by
the Liquidating Trust, together with all Cash theretofore distributed in respect of such Units,
for distribution to holders of Disputed LT Unsecured Claims that are subsequently Allowed,
and including any non-Cash assets that at any time are held in the Disputed Claims Reserve as
provided in Section 7.3(b).

(q)    "**Disputed Claims Reserve Units**" means a number of Units equal to
the sum of (x) the GMACM Debtors Unit Issuance Ratio multiplied by the Estimated Amount
of all GMACM Unsecured Claims that are Disputed Claims as of the Initial Unit Distribution
Record Date; plus (y) the ResCap Debtors Unit Issuance Ratio multiplied by the Estimated
Amount of all ResCap Unsecured Claims that are Disputed Claims as of the Initial Unit
Distribution Record Date; plus (z) the RFC Debtors Unit Issuance Ratio multiplied by the
Estimated Amount of all RFC Unsecured Claims that are Disputed Claims as of the Initial Unit
Distribution Record Date.

(r)    "**Disputed LT Claims**" means the Disputed Priority Claims, General
Unsecured Convenience Claims that are Disputed Claims, and the Disputed LT Unsecured
Claims.

(s)    "**Disputed LT Unsecured Claims**" means ResCap Unsecured Claims,
GMACM Unsecured Claims and RFC Unsecured Claims that at any relevant time are Disputed
Claims, but not including any ETS Unsecured Claims.

(t)    "**Disputed Priority Claims**" means Administrative Claims, Priority Tax
Claims, Other Priority Claims, Other Secured Claims and Junior Secured Notes Claims that at
any relevant time are Disputed Claims.

(u)    "**Distributable Cash**" means Cash of the Liquidating Trust available for
distribution to Unitholders (including the Disputed Claims Reserve), after payment or
reserving for the payment of Allowed Priority Claims, Allowed General Unsecured
Convenience Claims, Allowed ETS Unsecured Claims and Allowed professional fees, and the
funding of the Administrative, Priority, Secured and Convenience Distribution Reserve and the
funding of the Administrative Expenses Set Aside.

KL2 2818854.10

(rr)    "**Initial Nominating Party**" means a party entitled under Article VI.E. of the Plan to appoint a member of the Liquidating Trust Board, which parties specifically include (1) MBIA, (2) FGIC, (3) Paulson, (4) the RMBS Trustees that are members of the Creditors' Committee, the Steering Committee Consenting Claimants and the Talcott Franklin Consenting Claimants, jointly, and (5) the holders of the Private Securities Claims.

(ss)    "**Initial Unit Distribution Date**" means the date determined by the Liquidating Trust Board occurring as soon as reasonably practicable after the entry by the Bankruptcy Court of the Reserve Order, but in no event prior to the Effective Date, on which the Liquidating Trust makes or causes to be made the initial distribution of Units to holders of Allowed Unsecured Claims entitled to receive Units hereunder as of the Initial Unit Distribution Record Date, the Private Securities Claims Trust and the RMBS Claims Trust.

(tt)    "**Initial Unit Distribution Record Date**" means the Disputed Claims Estimation Date, which is the record date for determining the Liquidating Trust Unit Beneficiaries holding Allowed Claims that are entitled to receive a distribution of Units on the Initial Unit Distribution Date, provided that to the extent the allowance of a Claim as of the Initial Unit Distribution Record Date is contingent only upon the effectiveness of the Plan, such Claim shall be deemed to be Allowed as of the Initial Unit Distribution Record Date.

(uu)    "**Initial Unit Estimation**" means the number of Units that would have been distributed to an Initial Nominating Party on the Initial Unit Distribution Date if it beneficially owned, on the Initial Unit Distribution Record Date, the same claims as the Initial Nominating Party beneficially owned on October 11, 2013.

(vv)    "**Interim Liquidating Trust Agreement**" means the Interim Liquidating Trust Agreement for the Liquidating Trust, dated as of December [   ].10, 2013, executed by the Delaware Trustee and John S. Dubel, as Liquidating Trustee.

(ww)    "**Liquidating Trust**" has the meaning assigned in the Recitals.

(xx)    "**Liquidating Trust Agents**" means the advisors, professionals and other agents, including any disbursement agent, of the Liquidating Trust appointed or engaged by the Liquidating Trust Board or by Liquidating Trust Management in accordance with the provisions of this Liquidating Trust Agreement.

(yy)    "**Liquidating Trust Agreement**" has the meaning assigned in the Recitals.

(zz)    "**Liquidating Trust Assets**" means all property held from time to time by the Liquidating Trust, including the Available Assets transferred to the Liquidating Trust on or after the Effective Date, and including all Cash and non-Cash assets held in the Disputed Claims Reserve, the Administrative Expenses Set Aside and the Administrative, Priority, Secured and Convenience Distribution Reserve, but not including the assets excluded from Available Assets pursuant to <u>Section 2.5(a)</u>.

KL2 2818854.10

2.5    Transfer of Available Assets.

(a)    On the Effective Date, the Debtors shall transfer all of the Available Assets, in the form existing on such date, to the Liquidating Trust, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other persons and entities to the maximum extent contemplated by and permissible under section 1141 of the Bankruptcy Code.  The Liquidating Trust shall have such incidents of ownership in the Available Assets as are necessary to undertake the actions and transactions authorized in the Plan Documents.  The transfer of the Available Assets shall be exempt from any stamp, real estate transfer, mortgage recording, sales, use or other similar Tax pursuant to section 1146 of the Bankruptcy Code.  Upon the transfer of Available Assets to the Liquidating Trust, such assets shall become Liquidating Trust Assets.  For the avoidance of doubt, Available Assets shall include (i) the FHA Mortgage Loans and any related servicing advances, receivables, and claims; (ii) the VA Mortgage Loans and any related servicing advances, receivables, and claims; (iii) any servicing advances, receivables, claims and real estate owned property relating to FHA or VA Mortgage Loans liquidated prior to the Effective Date; (iv) any licenses and approvals received or held by GMACM Mortgage, LLC from HUD, the FHA, and the VA; and (iv) GMAC Mortgage, LLC and Residential Funding Company, LLC's membership interest and stock ownership in MERS®, including all related rights and interests.  For the avoidance of doubt, Available Assets shall not include any Borrower-Related Cause of Action or any assets or rights excluded pursuant to Articles IV.G.2. and IV.G.3. of the Plan.  In addition, if the Kessler Settlement Approval Orders shall have been entered, and after the Effective Date the Liquidating Trust discovers any additional insurance policies under which any of the Debtors are an insured and that provide coverage for the Debtors' liability to the Kessler Settlement Class, then the Liquidating Trust shall assign to the Kessler Settlement Class the insurance rights under such policies with respect to the liability of the Debtors to the Kessler Settlement Class, as provided in Article IV.G. of the Plan, and such insurance rights shall not constitute Liquidating Trust Assets.

(b)    Notwithstanding the foregoing, if on the Effective Date, any of the Available Assets cannot be transferred to the Liquidating Trust, or it is deemed impractical or inadvisable to do so by the Liquidating Trust Board or the Liquidating Trust Manager, for any reason, for example, because the Liquidating Trust has not yet established accounts for the purpose of holding Cash or because of a restriction on transferability under applicable non-bankruptcy law that is not superseded by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Debtors shall continue to hold such Liquidating Trust Assets, as bailee for the account of the Liquidating Trust, until such time as the Liquidating Trust informs the Debtors that the Liquidating Trust may receive such Available Assets, whereupon such assets shall be promptly transferred to the Liquidating Trust and become Liquidating Trust Assets; provided that the proceeds of the sale or other disposition of any such assets retained by the Debtors (or any successors thereto) shall nevertheless be deemed to constitute Available Assets, and to likewise be held by the Debtors as bailee, and be turned over as soon as practicable to the Liquidating Trust pursuant to this Liquidating Trust Agreement as if such transfer had not been restricted under applicable non-bankruptcy law. The Liquidating Trust may commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any Available Assets retained by the Debtors (or any successors thereto) pursuant to the Plan Documents.

KL2 2818854.10

accordance with the terms hereof, the "Liquidating Trust Budget") for each Fiscal Year, except that the Liquidating Trust Budget for the first Fiscal Year, if less than six calendar months, may be combined with the Liquidating Trust Budget for the next succeeding Fiscal Year, and the Liquidating Trust Budget for the last Fiscal Year, if less than six calendar months, may be combined with the Liquidating Trust Budget for the immediate prior Fiscal Year.  The Liquidating Trust Budget shall set forth (on an annual basis) in reasonable detail: (i) the assumptions underlying the projected recoveries and expenses associated with the administration of the Liquidating Trust for the annual budget and the funding of the Administrative Expenses Set Aside in respect thereof, and (ii) the anticipated distributions to the Unitholders.

(b)    Except as otherwise approved by the Liquidating Trust Board, the form of each Liquidating Trust Budget shall be substantially the same as the form of the initial Liquidating Trust Budget.

(c)    Not less than thirty (30) days before the beginning of each Fiscal Year (other than the first Fiscal Year and other than the second Fiscal Year, if the initial Liquidating Trust Budget covers such Fiscal Year, and other than the last Fiscal Year, if the Liquidating Trust Budget for the next preceding Fiscal Year covers such Fiscal Year), the Liquidating Trust Management shall submit to the Liquidating Trust Board a proposed Liquidating Trust Budget for such Fiscal Year, together with a comparison to the Liquidating Trust Budget then in effect and an explanation of the differences between the two in reasonable detail.  The Liquidating Trust Budget for such Fiscal Year shall not become effective until approved by Majority Consent of the Liquidating Trust Board, and until so approved, the Liquidating Trust Budget for the prior year shall constitute the Liquidating Trust Budget for the subsequent year on an interim basis.

(d)    Amendments, if any, to the Liquidating Trust Budget shall not become effective unless and until approved by Majority Consent of the Liquidating Trust Board.

(e)    Except as otherwise approved by Majority Consent of the Liquidating Trust Board, the amount expended in any Fiscal Year (or, if the initial or final Liquidating Trust Budget shall cover a combined period as provided above, in such combined period) on any item of expense set forth in the Liquidating Trust Budget shall not exceed by more than fifteen percent (15%) the budgeted amount therefor set forth in the Liquidating Trust Budget for the relevant Fiscal Year.

(f)    A summary of the forecasted recoveries, expenses and potential distributions is attached as Exhibit A to this Liquidating Trust Agreement.

2.11    Insurance.  The Liquidating Trust shall maintain customary insurance coverage, including any appropriate tail coverage, for the protection of the Trustees and Liquidating Trust Management (which coverage shall be primary to any other coverage potentially available to such persons) and may procure  insurance coverage for such employees as the Liquidating Trust Board may determine in its discretion, and the cost thereof shall be reflected in the Liquidating Trust Budget.

17

and (ii) Senior Unsecured Noteholders, whose Units will be issued to the Senior Unsecured Notes Indenture Trustee) must designate a direct or indirect participant in DTC with whom such holder has a securities account and take such other ministerial actions as Liquidating Trust Management shall from time to time reasonably require by written communication to such holders, in the form of Exhibit ~~B~~A or otherwise. The Liquidating Trust shall communicate with the Private Securities Claims Trust, the RMBS Claims Trust and with the Senior Unsecured Notes Indenture Trustee to obtain from them account information for the respective DTC participants through which the Units distributed to them will be held.

(b)    If and for so long as a holder of an Allowed Unsecured Claim (other than (i) the holders of RMBS Trust Claims, whose Units will be issued to the RMBS Claims Trust and (ii) Senior Unsecured Noteholders, whose Units will be issued to the Senior Unsecured Notes Indenture Trustee) does not designate a direct or indirect participant in DTC and take such other actions required by Section 4.5(a), the Liquidating Trust shall, except as otherwise provided by Section 4.5(c), hold the Units such holder is otherwise entitled to receive, together with any Cash distributed in respect of such Units, until such time as such holder complies with the requirements of Section 4.5(a). At any time following the date on which the Liquidating Trust determines, in its sole discretion, that a holder of an Allowed Unsecured Claim complies in full with the requirements of Section 4.5(a), but in any event, as soon as practicable following the beginning of the fiscal quarter next following such date, the Liquidating Trust shall distribute to such holder the Units and any distributions thereon to which such holder is entitled. Any Cash held by the Liquidating Trust on account of Units that remain undistributed pending compliance with the provisions of Section 4.5(a) as aforesaid shall be separately recorded by the Liquidating Trust.

(c)    If a holder of an Allowed Unsecured Claim otherwise entitled to receive Units has not complied with the requirements of Section 4.5(a) or Section 5.6 prior to the final Distribution Date, then as of the date immediately before the final Distribution Date (i) the Units otherwise distributable to such holder shall be deemed cancelled and not outstanding, and (ii) the Cash distributed or  distributable in respect of such Units shall be distributed Pro Rata to all holders of Units outstanding on the final Distribution Date. Notwithstanding the foregoing, if such holder is a beneficiary of the Private Securities Claims Trust whose Units were returned by the Private Securities Claims Trust to the Liquidating Trust, the Liquidating Trust shall hold such Units and any Cash distributed in respect thereof until such time as such beneficiary complies with the requirements of Section 4.5(a) hereof; provided that in the event such beneficiary has not complied with the requirements of Section 4.5(a) of this Liquidating Trust Agreement by the date that is ten (10) days before the final Distribution Date, (i) the Units otherwise distributable to such beneficiary shall be deemed cancelled and not outstanding, and (ii) the Cash distributed or distributable in respect of such Units shall be distributed pro rata (in accordance with the Private Securities Claims Allocation Agreement, dated as of August 16, 2013, a copy of which shall be provided by the trustee for the Private Securities Claims Trust) to the other original beneficiaries of the Private Securities Claims Trust, on the final Distribution Date.

(d)    The Liquidating Trust shall also be authorized to withhold and retain Units otherwise issuable to holders of Allowed Unsecured Claims that are subject to tax withholding to the extent required by applicable Tax laws, and any Units so withheld shall be

KL2 2818854.10

unrestricted, and shall be added to the Administrative Expenses Set Aside or made available for distribution as Distributable Cash, as determined by the Liquidating Trust Board.

7.6        <u>Reporting</u>.

(a)        The Liquidating Trust shall cause to be prepared, and shall post to the Liquidating Trust Website, financial reports on a quarterly and annual basis as provided in this <u>Section 7.6(a)</u>. Unless otherwise required by applicable law, such reports need not be prepared in accordance with GAAP (and need not be prepared using the liquidation basis of accounting), but in any event shall fairly present the assets, liabilities, income and expenses of the Liquidating Trust for and as of the end of each reporting period. The financial reports shall be prepared on a consistent basis, except as may be disclosed in the notes to the financial statements. The financial reports shall include:

(i)        Quarterly financial statements, which shall be prepared and posted no later than forty (40) days after the end of each of the first three (3) quarters of the Fiscal Year; and

(ii)        Annual financial statements, which shall be prepared and posted no later than sixty (60) days after the end of each Fiscal Year, except that no such annual financial statements shall be required to be prepared and posted for the Fiscal Year ended December 31, 2013, as it will consist of less than thirty (30) days.

(b)        In addition to the financial reports required by <u>Section 7.6(a)</u>, the Liquidating Trust shall cause to be prepared, and shall post to the Liquidating Trust Website, no later than forty (40) days after the end of each of the first three (3) quarters for the Fiscal Year and no later than sixty (60) days after the end of each Fiscal Year, reports containing the following information regarding the activity of the Liquidating Trust during the most recently completed fiscal quarter, and in the report prepared after the end of each Fiscal Year, the most recently completed quarter, the most recently completed Fiscal Year and since the Effective Date:

(i)        the material Liquidating Trust Assets disposed of during the relevant period and the material Liquidating Trust Assets remaining as of the end of such period;

(ii)        the Distributable Cash distributed during the relevant period, in the aggregate and on a per Unit basis;

(iii)        Cash added to or withdrawn from the Administrative Expenses Set Aside during the relevant period, and Cash held in the Administrative Expenses Set Aside as of the end of such period;

(iv)        Cash added to or withdrawn from the Administrative, Priority, Secured and Convenience Distribution Reserve during the relevant period, and Cash held in the Administrative, Priority, Secured and Convenience Distribution Reserve as of the end of such period;

K1.2 2818854.10

**IN WITNESS WHEREOF**, the parties hereto have executed this Liquidating Trust Agreement or caused this Liquidating Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

Residential Capital, LLC.

By /s/ William Thompson
Name: William Thompson
Title: General Counsel


By: /s/ Jill Horner
Name: Jill Horner
Title: Chief Finance Executive


AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC

By:
 /s/ William Thompson
Name:
 William Thompson
Title: General Counsel

By:  /s/ Jill Horner

Name:-

-  Jill Horner

Title:  Chief Financial Officer

Wilmington Trust, National Association, as Delaware
~~Trustee~~

~~By:~~_____

~~Name:~~Trus        tee

By: /s/ David A. Vanaskey, Jr.

Name: David A. Vanaskey, Jr.

Title: Vice President

Manufacturers and Traders Trust Company, as FHA
Qualified Trustee

By:_____ /s/ William J.
Farrell II

Name: William J. Farrell II

Title: Executive Vice President

_____

/s/ John S. Dubel

John S. Dubel , as Liquidating Trustee

_____

/s/ Mitchell Sonkin

_____

Mitchell Sonkin, as Liquidating Trustee

/s/ Mathew Doheny

Matthew Doheny , as Liquidating Trustee

_____ /s/ Paul
J. Weber

Paul J. Weber, as Liquidating Trustee

_____ /s/
Samuel L. Molinaro

Samuel L. Molinaro, Jr. , as Liquidating Trustee

## EXHIBIT A

### SUMMARY OF FORECASTED RECOVERIES, EXPENSES AND POTENTIAL DISTRIBUTIONS

[To come]

**EXHIBIT B**

**RESCAP LIQUIDATING TRUST**

**REQUEST FOR SECURITIES ACCOUNT INFORMATION**

December__, 2013

**To:**    The Holders of Allowed ResCap Unsecured Claims (Class R-4), GMACM Unsecured
Claims (Class GS-4A) and RFC Unsecured Claims (Class RS-4) in the Bankruptcy Case
of Residential Capital, LLC et al., Case No. 12-12010 (MG) (S.D.N.Y.)

**Introduction**

On  December 11, 2013, the United States Bankruptcy Court for the Southern
District of New York entered an order confirming the Joint Chapter 11 Plan of Residential
Capital, LLC, *et al.* and the Official Committee of Unsecured Creditors.  In accordance with the
Plan, the ResCap Liquidating Trust (the "Liquidating Trust") will be making a distribution to
holders of Allowed ResCap Unsecured Claims (Class R-4), GMACM Unsecured Claims (Class
GS-4A) and RFC Unsecured Claims (Class RS-4) consisting of Units of beneficial interest in the
Liquidating Trust.[1]  Each Unit will entitle its holder to a pro rata share of all cash distributions
made by the Liquidating Trust to the holders of Units.  An initial distribution of Units is
expected to occur within 15 days after the effective date of the Plan.  It is anticipated that an
initial distribution of cash will be made to holders of Units at the time of or shortly after the
initial distribution of the Units.  Additional cash distributions will be made as non-cash assets in
the Liquidating Trust are sold or otherwise monetized.

The Plan has not yet become effective.  As a prerequisite to your receipt of Units, the
Plan must become effective and other conditions described in the order confirming the Plan must
be fully satisfied.[2]  We are asking for certain information at this time, so that you will be able to
receive your Units, and the subsequent initial distribution of cash on your Units, soon after the
effective date of the Plan as described above.

**To receive your Units on the date of the initial Unit distribution, and the
cash distribution on those Units that will be made shortly thereafter, you must provide the
information requested in this letter so that it is actually received no later 5:00 p.m.
(Eastern time) on December 19, 2013.**

If you do not provide the information requested in this letter so that it is actually received
by **5:00 p.m. (Eastern time) on December 19, 2013**, or if the information you have sent
is incomplete or illegible, you will not receive your Units or the cash distributed on those Units
until a later distribution date, after you have provided the required information.  As a result your

---

[1] Units will also be issued to a trust for the benefit of holders Private Securities Claims (Classes R-6, GS-6 and
RS-6).

[2] If the Plan does not become effective and/or the other conditions described in the order confirming the Plan are
not satisfied, you may not be entitled to receive the Units described in this letter.

receipt of distributions from the Liquidating Trust will be delayed until a later distribution date, which may not occur before _____, 2014..

The Liquidating Trust's Claims Officer is collecting the information requested by this letter on behalf of the Liquidating Trust.

**Required Actions to Receive Your Units**

Listed on the accompanying Schedule A is—

- your name as it appears on the records of the ResCap debtorsDebtors;

- the identification number that has been assigned to you;

- the class or classes to which your claim belongs; and

- the amount of your claim in each class.

In order toTo receive the Units to which you are entitled under the Plan, please review Schedule A and then continue with the steps below.

*Step 1*

If you are a U.S. person, you must provide the Claims Officer with your social security number or other taxpayer identification number.  Accordingly, please fill out the attached Internal Revenue Service Form W-9 Request for Taxpayer Identification Number and Certification.

If you are not a U.S. person, instead please fill out the attached Internal Revenue Service Form W-8BEN Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding (or other applicable Internal Revenue Service Form W-8).

*Step 2*

You must designate a broker, bank or other financial institution with which you maintain a securities account to receive your Units on your behalf.  You will not receive a distribution of Units unless and until you designate a broker in accordance with the instructions below.

***If you DO have a securities account with a broker, bank or other financial institution.*** If you currently have a securities account with a broker, bank or other financial institution, you must provide the broker, bank or other financial institution account information requested on the attached Schedule A to the Liquidating Trust.

***If you DO NOT have a securities account with a broker, bank or other financial institution.*** If you do not currently have a securities account with a broker, bank or other financial institution, you must open such an account before you can receive your Units.  Once you have opened a securities account, you must provide the broker, bank or other financial institution account information requested on the attached Schedule A to the Liquidating Trust.

*Step 3*

Send (i) the fully completed Internal Revenue Service Form W-9 or Internal Revenue Service Form W-8BEN (or other applicable Internal Revenue Service Form W-8) and (ii) the fully completed Schedule A to the Claims Officer either—

By E-Mail:    ResCapLiquidatingTrust@ResCapEstate.com

or

Mail:    ResCap Liquidating Trust
P.O. Box 385220
Bloomington, Minnesota  55438

**Other Information**

If the Claims Officer determines, in its sole discretion, that the information you have sent is incomplete or illegible, your submission may be rejected by the Claims Officer, and you may not receive your Units and the cash distributed on those units until a later distribution date. The information you provide, including your social security or taxpayer identification number, will be held on a confidential basis.  Once the Claims Officer has received your information, ~~its~~she will contact you or your broker, bank or other financial institution with instructions to enable the Liquidating Trust to issue Units to you and deposit them to your securities account.

If the Liquidating Trust is unable to issue and deposit your Units a securities account that you designate, the Liquidating Trust may issue the Units to you by reserving them, and all cash distributions on the Units, on your behalf.  Once you have completed the actions described in this letter, and all other required conditions have been satisfied, the Liquidating Trust will transfer the securities from that account to your securities account.

If you do not take the actions required by this letter and any further instructions provided by the Liquidating Trust, you could forfeit your interest in the Units to which you would otherwise be entitled.

Receipt of the Units may have tax consequence for you, and you are encouraged to consult with your tax advisor.

If you have any questions about your distribution, or for more information, you may contact ~~the Claims Officer~~Peggi Fossel by calling the following number: (952) 857-7485 or emailing the Claims Officer to ResCapLiquidatingTrust@ResCapEstate.com.

Sincerely,

*Deanna Horst*

KL2 2818854.10

## SCHEDULE A[3]

CLAIMANT NAME: _____ [PRE POPULATED]

CLAIM NUMBER(S): _____ [PRE POPULATED]

CLASS ___ ALLOWED ~~CLAIMS: _____ [PRE-POPULATED]CLASS~~ CLAIM AMOUNT

Class R-4        $_____ [PRE POPULATED]

Class GS-4A    $_____ [PRE POPULATED]

Class RS-4      $_____ [PRE POPULATED]

### BROKER, BANK OR OTHER FINANCIAL INSTITUTION INFORMATION

| | |
|---|---|
| Name of Broker, Bank or Other Financial Institution: | |
| Contact Name: | |
| Contact Email: | |
| Contact Phone: | |
| Account Number: | |
| DTC Participant (if different from Financial Institution above): | |
| DTC Participant Number: | |
| Wire Instructions:<br><br>Financial Institution:<br>SWIFT or ABA No.<br>Account Name:<br>Account Number:<br>Other: | |

---

[3] Claim information is provided solely for reference purposes and shall not be binding on the Debtors or the Liquidating Trust in any respects.

**EXHIBIT ~~C~~B**

**FORM OF ACCESS AND COOPERATION AGREEMENT**

THIS ACCESS AND COOPERATION AGREEMENT, dated as of December 17, 2013 (this "Agreement"), is by and between the ResCap Borrower Claims Trust (the "Borrower Claims Trust") the ResCap Liquidating Trust (the "Liquidating Trust").

**RECITALS**

WHEREAS, Residential Capital, LLC and certain of its affiliates (the "Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101-1330 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, on August 23, 2013 the Debtors filed the Joint Chapter 11 Plan of Residential Capital, LLC, *et al.*, dated August 23, 2013 (as amended and supplemented and as confirmed, the "Plan"), which has been confirmed by an order of the Bankruptcy Court dated December 11, 2013 (the "Confirmation Order");

WHEREAS, on December 17, 2013, the Effective Date of the Plan occurred;

WHEREAS, pursuant to the Plan, on the Effective Date the Borrower Claims Trust Agreement was executed to establish and provide for the administration of the Borrower Claims Trust and the distribution of Borrower Claims Trust Assets to holders of Borrower Claims that are Allowed on the Effective Date or that become Allowed after the Effective Date as contemplated by the Plan, and the Borrower Claims Trustee (as defined in the Borrower Claims Trust Agreement) has been appointed to act as trustee of the Borrower Claims Trust Assets, in furtherance of and consistent with the purpose of the Plan and the Borrower Claims Trust Agreement, with the power and authority to prosecute, compromise and settle objections to Disputed Borrower Claims, to discharge Allowed Borrower Claims, and to perform such other duties as may be vested in the Borrower Claims Trustee pursuant to the Plan and the Borrower Claims Trust Agreement (the "Borrower Claims Trust Functions");

WHEREAS, pursuant to the Plan, certain books and records that the Borrower Claims Trustee may need to access in order to discharge the Borrower Claims Trust Functions have been transferred to the Liquidating Trust and the Borrower Claims Trust may require from the Liquidating Trust access to such books and records in order to facilitate satisfaction of the Borrower Claims Trust Functions and administration of the Borrower Claims Trust as contemplated by the Plan.

NOW THEREFORE, in consideration of the above-stated premises, the mutual covenants contained herein and for other good and valuable consideration, the parties agree as follows:

**ARTICLE 1**

**DEFINITIONS**

KL2 2818854.10

Section 1.1    Defined Terms.    Capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Borrower Claims Trust Agreement or in the Bankruptcy Code. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Agreement as a whole and not to any particular article, section, subsection, or clause contained in this Agreement. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

## ARTICLE 2

## ACCESS ~~AND COOPERATION AGREEMENT~~TO RECORDS AND PERSONNEL

Section 2.1    Access.

(a)    On and after the Effective Date and during the Term of this Agreement (as hereafter defined), the Liquidating Trust shall cooperate with the Borrower Claims Trust and the Borrower Claims Trustee by:

(i)    affording reasonable access, upon reasonable advance notice, during regular business hours unless otherwise agreed by the parties, to such employees of the Liquidating Trust as the Borrower Claims Trustee deems reasonably necessary to assist in the resolution of Disputed Borrower Claims.  For purposes of the foregoing, (i) access shall include, access by telephone, periodic meetings, interviews and appearance of such employees as witnesses (by affidavits, at depositions and at trials, as necessary) and their availability for preparation as a witness or deponent in proceedings and (ii) "employees of the Liquidating Trust" means individuals that are employed by the Liquidating Trust at the time such access is requested to be afforded; and

(ii)    in accordance with Article XIII.E of the Plan, affording access to the Borrower Claims Trustee to books and records reasonably required to fulfill the Borrower Claims Trust Functions, including computer generated or computer maintained books and records and computerized data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties (the "Books and Records"), which Books and Records shall include mortgage loan files, mortgage loan servicing notes, Borrower litigation files, e-mail records, contracts, financial records, reports and any and all other work product generated by or on behalf of the Debtors, and any and all communications with Debtors' agents and professionals, and documents and other instruments relating to the Debtors' origination and servicing of mortgage loans; provided, however, that the Liquidating Trust shall not be responsible for such Books and Records that may have been lost (notwithstanding reasonable good faith efforts to locate such Books and Records), damaged or destroyed prior to the Effective Date.

(b)    Notwithstanding the access afforded by the Liquidating Trust to the Books and Records under subsection (a) above, such Books and Records shall at all times during the Term remain in the custody and under the control of the Liquidating Trust; provided, however, that the

Borrower Claims Trust shall be permitted to make copies of the Books and Records, or any portion thereof, or request the Liquidating Trust to make such copies, including electronic copies, at the expense of the Liquidating Trust to the extent reasonable under the circumstances.

(c)        In determining whether any request of the Borrower Claims Trust for access to employees of the Liquidating Trust or the Books and Records is reasonable in the circumstances, there shall be taken into account whether the relevant information could otherwise be obtained from documents already in the custody, possession or control of the Borrower Claims Trust or professionals or agents otherwise employed or retained by the Borrower Claims Trust.

(d)        The Liquidating Trust shall use reasonable efforts to afford the access provided for in subsection (a) above in a timely manner, so as to enable the Borrower Claims Trustee to timely pursue the resolution of any Disputed Borrower Claims and otherwise timely fulfill the Borrower Claims Trust Functions, it being understood that time may be of the essence in certain instances in order to comply with court hearing or filing deadlines or to avoid the application of statutes of limitation; provided, however, that in all cases such access shall not unduly interfere with the conduct of the operations and affairs of the Liquidating Trust upon the reasonable determination of the Liquidating Trust Manager; and provided further that the Liquidating Trust shall not be required to (i) afford such access to the extent that it would result in a waiver of any privilege, including attorney-client privilege, available to the Liquidating Trust where, in the reasonable judgment of the Liquidating Trust, such waiver would materially and adversely affect the ability of the Liquidating Trust to conduct its operations and affairs, to preserve or prosecute any claims that are or that may be available to it or to defend any claims or actions which have or may be asserted against it or (ii) continue to employ any individual (whether access to such employee has been provided in the manner contemplated by this Section 2.1 or otherwise).

(e)        The Liquidating Trust shall from time to time designate by written notice to the Borrower Claims Trust (i) an employee (the "Coordinator") for the purpose of receiving requests for access to employees of the Liquidating Trust and Books and Records and coordinating the response of the Liquidating Trust to such requests and (ii) an employee to receive such requests in the event the Coordinator is unavailable (the "Alternate Coordinator"). The initially designated Coordinator and Alternate Coordinator are set forth on Schedule I to this Agreement. In the event that the Coordinator and Alternate Coordinator are for any reason unavailable or the Borrower Claims Trustee believes that the Borrower Claims Trust has not been provided access in the manner contemplated by this Section 2.1, the Borrower Claims Trustee shall also be permitted to communicate with the Liquidating Trust Manager for such purposes.

(f)        All requests for access, as contemplated by this Section 2.1, shall be delivered to the Liquidating Trust, and all communications in respect of such request shall be conducted on behalf of the Borrower Claims Trust by the Borrower Claims Trustee or an employee or agent of the Borrower Claims Trust designated by written notice to the Liquidating Trust. At the request of the Borrower Claims Trustee, the Liquidating Trust shall also afford access to employees of the Liquidating Trust and Books and Records, as provided in subsection (a), to those professionals and agents of the Borrower Claims Trust (including, without limitation, counsel, accountants and financial advisors) who have been identified to the Liquidating Trust in each instance by the Borrower Claims Trustee.

(g)    The access to employees of the Liquidating Trust and Books and Records contemplated by this Section 2.1 shall be given by the Liquidating Trust at its own expense, including as provided in subsection (b) above; provided, however, that the Liquidating Trust shall not be responsible for any costs and expenses incurred by the Borrower Claims Trust with respect to such access, including the costs and expenses of any agents, professionals or contractors retained by the Borrower Claims Trust for the purpose of obtaining access to the employees of the Liquidating Trust or the Books and Records or performing any Borrower Claims Trust Functions in respect thereof; provided further that nothing herein shall require the Borrower Claims Trust to hire any professional or agent, or to incur any particular cost or expense, in order to gain access to the employees of the Liquidating Trust or any Books and Records as contemplated by this Section 2.1.

## ARTICLE 3

## OTHER AGREEMENTS

Section 3.1    Preservation of Privilege and Defenses.  To the maximum extent permitted by law, neither this Agreement nor the performance by the parties under the provisions of Article 2 or otherwise pursuant to this Agreement shall constitute the waiver of any attorney-client privilege, work-product privilege or other privilege, immunity or defense attaching to or existing with respect to the Books and Records or any other documents or communications (whether written or oral) constituting Liquidating Trust Assets, and to the extent relating to the Borrower Claims Trust Functions and appropriate in the circumstances, any such privilege, immunity or defense may be asserted by the Borrower Claims Trustee, or any authorized agent or professional on behalf of the Borrower Claims Trust.

Section 3.2    Confidentiality.

(a)    In the course of the performance by the parties under this Agreement, each party may become aware of confidential or proprietary information of the other party ("Confidential Information").  All Confidential Information disclosed by a party in connection with the performance of this Agreement shall remain the property of the disclosing party, shall be held in confidence by the receiving party and shall be used by the receiving party only in accordance with the provisions of this Agreement.

(b)    The obligations of confidentiality under this Section 3.2 shall not apply with respect to Confidential Information which (i) is or becomes publicly known through no wrongful act of the receiving party, (ii) was known by the receiving party prior to disclosure or is developed by the receiving party independently of such disclosure; (iii) was disclosed to the receiving party by a third party who is not known by the receiving party after due inquiry to be under any confidentiality obligations; (iv) is approved for release by written authorization of the disclosing party; or (v) is disclosed pursuant to a requirement of law or by court order, provided that the receiving party shall provide notice to the disclosing party as far in advance of disclosure as is reasonably practicable in the circumstances and shall cooperate with the disclosing party, at the disclosing party's expense, in attempting to prevent or limit such legally required disclosure.

Section 3.3    Professionals and Agents.  To the extent that any information or expertise required by the Borrower Claims Trustee for the performance of the Borrower Claims Trust Functions may be in the possession of professionals and other agents of the Liquidating Trust, nothing in this Agreement shall preclude the Borrower Claims Trust from engaging such professionals or agents, at its sole cost and expense, to the extent consistent with applicable standards of professional responsibility, compliance with the confidentiality provisions of Section 3.2 and the preservation of the privileges, including the attorney-client privilege of the Liquidating Trust.

Section 3.1    Limitation of Liability. None of the Liquidating Trust, the Liquidating Trustees, the Liquidating Trust Management, Liquidating Trust Agent, or any of their respective principals, advisors or professionals, shall be liable to the Borrower Claims Trust for any damages arising out of this Agreement or the performance of the Liquidating Trust's obligations hereunder, including actions taken or omitted in fulfillment of his, her or its duties with respect to the Liquidating Trust, except in the case of such party's gross negligence, bad faith or willful misconduct; provided, that in no event will any such party be liable for punitive, exemplary, consequential or special damages under any circumstances.

Section 3.2    Further Assurances.  Each party agrees to perform, or cause to be performed, all such further acts, and to execute and deliver all such other agreements and instruments, as the other party may reasonably request in order to carry out the purposes and intents of this Agreement, and consistent with the other provisions hereof.

## ARTICLE 4

## TERM OF THIS AGREEMENT

The term of this Agreement (the "Term") shall commence on the Effective Date and shall terminate on the earlier to occur of (i) the dissolution of the Borrower Claims Trust in accordance with the Borrower Claims Trust Agreement or (ii) the dissolution of the Liquidating Trust in accordance with the Liquidating Trust Agreement.

## ARTICLE 5

## MISCELLANEOUS

Section 5.1    Notices.  Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile, sent by nationally recognized overnight delivery service, or mailed by first-class mail:

(i)    if to the Borrower Claims Trust, to:

The ResCap Borrower Claims Trust
Peter S. Kravitz, Esq., Trustee
Solution Trust
29209 Canwood Street

Agora Hills, CA 91301
Phone: 310-974-6350
Email: PKravitz@SolutionTrust.com


(iii)    if to the Liquidating Trust, to:


ResCap Liquidating Trust
c/o Quest Turnaround Advisors, LLC
800 Westchester Avenue, Suite S-520
Rye Brook, NY 10573
Fax: 914-253-8103
Email:  jbrodsky@qtadvisors.com

Section 5.2    Counterparts.  This Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

Section 5.3    Governing Law.  Except to the extent governed by the Bankruptcy Code, this Agreement shall be governed by, construed under and interpreted in accordance with, the internal laws of the State of New York, without regard to principles of conflicts of laws.

Section 5.4    Exclusive Jurisdiction and Standing.  As provided in Article XII of the Plan, the Bankruptcy Court has exclusive jurisdiction over all controversies, suits and disputes that may arise under this Agreement.

Section 5.5    Severability.  The terms and provisions of this Agreement shall be deemed severable, and in the event any term or provision hereof or any portion thereof is deemed or held to be invalid, illegal or unenforceable, the remaining terms and provisions hereof and portions thereof shall nevertheless continue and be deemed to be in full force and effect. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

Section 5.6    Independent Contractor Status.  The Liquidating Trust shall be deemed to be an independent contractor of the Borrower Claims Trust and employees of the Liquidating Trust shall at all times be regarded as employees of the Liquidating Trust. Nothing contained in this Agreement shall create or be deemed to create an employment, agency, joint venture or partnership relationship between the Borrower Claims Trust on the one hand, and the Liquidating Trust or any of its employees, on the other hand.

Section 5.7    No Waiver.  No failure or delay by any party in exercising any right, power or privilege hereunder will operate as a waiver thereof, and that no single or partial exercise thereof will preclude any other or further exercise thereof or the exercise of any right, power and privilege hereunder.

Section 5.8    Plan Documents.  Nothing contained herein shall modify the terms of any other Plan Document, which are intended to be supplemented by the terms of this Agreement.

Section 5.9    Entire Agreement.  This Agreement contains the entire agreement of the parties concerning the subject matter hereof, and no modification of this Agreement or waiver of the terms and conditions hereof will be binding upon the parties unless approved in writing by the parties.

Section 5.10    Amendment.  This Agreement may be amended with the consent in writing of the parties; provided, however, that, without approval of the Bankruptcy Court, no amendment to this Agreement shall be effective to the extent that it is inconsistent with the terms of the Plan, the Confirmation Order, the Liquidating Trust Agreement or the Borrower Claims Trust Agreement.

Section 5.11    Titles.  The section titles used herein are for convenience only and shall not be considered in construing or interpreting any of the provisions of this Agreement.

Section 5.12    Binding Effect.  This Agreement is for the benefit of and shall be binding upon the parties and their respective representatives, transferees, successors and assigns.


[To come]Signature Page Follows]

KL2 2818854.10

IN WITNESS WHEREOF, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective representatives thereunto duly authorized as of the day and year first above written.

THE RESCAP BORROWER CLAIMS TRUST

By: _____, as Trustee

RESCAP LIQUIDATING TRUST

By:  Quest Turnaround Advisors, LLC, as Liquidating Trust Manager

By: _____
Name:  Jeffrey Brodsky
Title:  Member

## SCHEDULE I

Coordinator:  Deanna Horst

Alternative Coordinator:  Nick Kosinski