# **Exhibit 3**

## **RMBS Claims Trust Agreement**

---

AMENDED AND RESTATED TRUST AGREEMENT

among

## RESIDENTIAL CAPITAL, LLC,

## CERTAIN AFFILIATES OF RESIDENTIAL CAPITAL, LLC SIGNATORY HERETO

and

## U.S. BANK TRUST NATIONAL ASSOCIATION
as Trustee,

DATED AS OF

December 17, 2013

---

TABLE OF CONTENTS

Page

### ARTICLE I
### DEFINITIONS

| | | |
|---|---|---|
| Section 1.01 | Defined Terms | 2 |
| Section 1.02 | Interpretation | 6 |

### ARTICLE II
### ESTABLISHMENT OF THE QSF TRUST

| | | |
|---|---|---|
| Section 2.01 | Name | 7 |
| Section 2.02 | Office | 7 |
| Section 2.03 | Declaration of Trust | 7 |
| Section 2.04 | Issuance of RMBS Claims Units and Related Distributions | 7 |
| Section 2.05 | Appointment of Trustee | 7 |
| Section 2.06 | Acceptance of Trust | 7 |
| Section 2.07 | Activities of the Trust | 7 |
| Section 2.08 | Purpose, Limitations of the Trust | 8 |
| Section 2.09 | Section 468B Qualified Settlement Fund | 9 |

### ARTICLE III
### QSF INTERESTS

| | | |
|---|---|---|
| Section 3.01 | Rights of QSF Beneficiaries | 10 |
| Section 3.02 | No Legal Title in QSF Beneficiaries | 10 |
| Section 3.03 | Identification of QSF Beneficiaries | 10 |
| Section 3.04 | Deemed Majority Consent | 10 |

### ARTICLE IV
### ACCOUNTS, DEPOSITS AND DISTRIBUTIONS

| | | |
|---|---|---|
| Section 4.01 | Establishment of Trust Accounts | 11 |
| Section 4.02 | Collection Account | 11 |
| Section 4.03 | Reserve Account | 12 |
| Section 4.04 | Investments | 12 |
| Section 4.05 | Payments to QSF Beneficiaries | 13 |
| Section 4.06 | Record Date | 13 |

### ARTICLE V
### [ RESERVED ]

### ARTICLE VI
### CONCERNING THE TRUSTEE

| | | |
|---|---|---|
| Section 6.01 | Duties of the Trustee | 13 |
| Section 6.02 | Certain Matters Affecting the Trustee | 14 |
| Section 6.03 | Trustee Not Liable for QSF Interests or RMBS Claims Units | 16 |
| Section 6.04 | Trustee's Fees and Expenses | 16 |
| Section 6.05 | Eligibility Requirements for the Trustee | 17 |

Section 6.06    Resignation or Removal of Trustee ................................................................ 18
Section 6.07    Merger or Consolidation of Trustee................................................................ 18

### ARTICLE VII
### TRANSFERS OF QSF INTERESTS

Section 7.01    Transfers by RMBS Trust............................................................................ 19
Section 7.02    Transfers by QSF Beneficiaries .................................................................. 19

### ARTICLE VIII
### TERMINATION OF QSF TRUST

Section 8.01    Termination................................................................................................ 19
Section 8.02    Procedure For Termination ........................................................................ 19

### ARTICLE IX
### MISCELLANEOUS PROVISIONS

Section 9.01    Amendment of Trust Agreement ................................................................ 20
Section 9.02    Counterparts .............................................................................................. 21
Section 9.03    Limitation on Rights of QSF Beneficiaries .............................................. 21
Section 9.04    Notices ...................................................................................................... 21
Section 9.05    Severability of Provisions ......................................................................... 22
Section 9.06    Third Party Beneficiaries .......................................................................... 22
Section 9.07    Acts of QSF Beneficiaries ........................................................................ 22
Section 9.08    Headings .................................................................................................... 22
Section 9.09    No Waiver; Cumulative Remedies ............................................................ 22
Section 9.10    Merger and Integration .............................................................................. 23
Section 9.11    Governing Law; Venue; Jury Waiver ........................................................ 23

SCHEDULE 1:    QSF BENEFICIARIES CONTACT INFORMATION

## AMENDED AND RESTATED TRUST AGREEMENT

THIS AMENDED AND RESTATED TRUST AGREEMENT, dated as of December 17, 2013 (this "Agreement"), is hereby executed by and among Residential Capital, LLC ("ResCap"), certain affiliates signatory hereto (together with ResCap, the "Debtors"), and U.S. BANK TRUST NATIONAL ASSOCIATION, as trustee (the "Trustee") in order to establish a qualified settlement trust within the meaning of Code Section 468B and the Treasury Regulations promulgated thereunder (the "QSF Trust") for the benefit of the holders of residential mortgage backed securities claims against the Debtors and Ally Financial, Inc. and its non-Debtor affiliates.

### WITNESSETH

WHEREAS, on May 14, 2012, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") commencing jointly administered cases under the caption *In re Residential Capital, LLC*, Case No. 12-12020 (the "Bankruptcy Cases");

WHEREAS, on December 6, 2013, the Debtors and the Official Committee of Unsecured Creditors of Residential Capital, LLC, et al. filed that certain Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (Dkt. No.6030-1) (together with any amendments or modifications thereto required or permitted by the Bankruptcy Court or as otherwise permitted pursuant to the terms of the Plan, the "Plan"); and

WHEREAS, on December 11, 2013, the Bankruptcy Court entered an Order confirming the Plan (Dkt. No. 6065) (the "Confirmation Order");

WHEREAS, pursuant to the Plan and the Liquidating Trust Agreement, dated December 17, 2013 (the "Liquidating Trust Agreement"), by and among the Liquidating Trustees (as such term is defined in the Liquidating Trust Agreement), the Delaware Trustee (as such term is defined in the Liquidating Trust Agreement), ResCap and the other parties signatory thereto, a liquidating trust (the "Liquidating Trust") has been established for the purpose of liquidating and distributing the Liquidating Trust Assets (as such term is defined in the Liquidating Trust Agreement);

WHEREAS, pursuant to the Plan, the QSF Trust has been established for the benefit of the QSF Beneficiaries on behalf of the RMBS Trusts;

WHEREAS, pursuant to the Plan and the Liquidating Trust Agreement, on the Initial Unit Distribution Date, the Liquidating Trust will issue units of beneficial interests (the "Liquidating Trust Units") to unsecured creditors of the Debtors and/or their designated recipients, including the QSF Trust;

WHEREAS, as set forth in, and subject to, the Plan and the Liquidating Trust Agreement, the QSF Trust will receive a number of Liquidating Trust Units that will entitle the holders thereof to periodic distributions of cash from the Liquidating Trust;

WHEREAS, the parties hereto are entering into this Agreement for purposes of amending and restating the trust agreement which established the QSF Trust and to facilitate implementation of the Plan in respect of the RMBS Trusts;

WHEREAS, the QSF Trust is established for the sole purpose of distributing the Trust Assets to the QSF Beneficiaries, with no objective or authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the QSF Trust and the Plan;

WHEREAS, for federal income tax purposes, the QSF Trust is intended to be treated as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468 B-2; and

WHEREAS, this Agreement is subject to the approval of the Bankruptcy Court in the Confirmation Order.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Trustee, intending to be legally bound, agree as follows:

# ARTICLE I

# DEFINITIONS

## Section 1.01   Defined Terms.

The terms defined in this section are specific to this Agreement.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings ascribed to those terms in the Plan.  For the purposes of this Agreement, the following terms (which appear in this Agreement with initial capitalized letters) shall have the meanings set forth below:

"Affected RMBS Trusts" shall have the meaning specified in Section 7.02.

"Affiliate" shall mean: (i) with respect to the Trustee, any person or entity controlling, controlled by or under common control with the Trustee, and (ii) with respect to any other Person, any person or entity controlling, controlled by or under common control with such Person.  "Control" means the power to direct the management and policies of a person or entity, directly or indirectly, whether through ownership of voting securities, by contract or otherwise. "Controlling" and "controlled" shall have meanings correlative to the foregoing.

"Agreement" shall have the meaning ascribed to it in the preamble.

"Ally" shall have the meaning specified in Section 2.09(a).

"Available Funds" shall mean all collected funds held in the Collection Account less any reasonable reserves established by the Trustee for payment of taxes relating to such distribution or otherwise potentially owed by the QSF Trust.

"Bankruptcy Cases" shall have the meaning ascribed to it in the recitals.

"Bankruptcy Code" shall have the meaning ascribed to it in the recitals.

"Bankruptcy Court" shall have the meaning ascribed to it in the recitals.

"Business Day" shall mean any day that is not a Saturday, Sunday, holiday, or other day on which commercial banking institutions in the City of New York or the State of Delaware or, if different, the city and state in which the Corporate Trust Office is located are authorized or obligated by law or executive order to be closed.

"Code" shall mean the Internal Revenue Code of 1986, as amended.

"Collection Account" shall have the meaning specified in Section 4.01(a)(i).

"Confirmation Order" shall have the meaning ascribed to it in the recitals.

"Corporate Trust Office" shall mean the principal corporate trust office of the Trustee at which at any particular time its corporate trust business shall be administered.

"Debtors" shall have the meaning ascribed to it in the preamble.

"Distribution Date" shall mean, except as otherwise provided in Section 4.02 with respect to the initial Distribution Date, the fifth Business Day following any receipt of funds from the Liquidating Trust.    If in the reasonable judgment of the Trustee it shall question the appropriateness, propriety or correctness of any distribution, then the Trustee may delay such distribution until such time after which the Trustee has obtained further guidance or direction in accordance with the terms of this Agreement.

"Effective Date" shall mean the date on which the Plan becomes effective, in accordance with its terms.

"Eligible Accounts" shall mean either (a) a segregated account or accounts maintained with a federal or state chartered depository institution or trust company the long-term or short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the long-term or short-term unsecured debt obligations of such holding company) are rated by any Rating Agency in one of its two highest long-term rating categories or one of its two highest short-term ratings with respect to obligations maturing in less than thirty (30) days or in highest short-term rating with respect to obligations maturing in more than thirty (30) days at the time any amounts are held in deposit therein, or (b) a segregated trust account or accounts maintained with a federal or state chartered depository institution or trust company, acting in the capacity of a trustee.    Eligible Accounts need not be interest-bearing accounts provided the funds therein may be invested in Permitted Investments.    All accounts maintained with the Trustee shall constitute Eligible Accounts.

"Final Distribution Date" shall have the meaning specified in Section 8.02.

"Indemnified Parties" shall have the meaning specified in Section 6.04.

"<u>IRS</u>" shall mean the United States Internal Revenue Service.

"<u>Letter Ruling</u>" shall mean a written statement issued by the Internal Revenue Service to a taxpayer (or the taxpayer's authorized representatives) in response to a written inquiry from the taxpayer, or its representatives, about the tax effects of acts or proposed transactions, as set forth in Rev. Proc. 2013-1, Sec. 2.01, 2013-1 IRB 1.

"<u>Liquidating Trust</u>" shall have the meaning ascribed to it in the recitals.

"<u>Liquidating Trust Agreement</u>" shall have the meaning ascribed to it in the recitals.

"<u>Liquidating Trust Units</u>" shall have the meaning ascribed to it in the recitals.

"<u>Majority Beneficiaries</u>" shall mean two (2) or more QSF Beneficiaries who collectively hold at least 51% of the QSF Representative Shares.

"<u>Officer</u>" shall mean: (i) when used with respect to the Trustee, any senior vice president or vice president in the Corporate Trust Office of the Trustee, and (ii) when used with respect to any other Person, the chairman of the board, the president, a vice president (however designated), the treasurer or controller.

"<u>Opinion of Counsel</u>" shall mean a written opinion of legal counsel delivered to the Trustee or any QSF Beneficiary, as the case may be, in each case in form and substance reasonably acceptable to the parties to whom it is delivered; provided, however, that any opinion with respect to tax matters shall be made by a law firm having a national reputation for expertise in such matters.

"<u>Permitted Investments</u>" shall consist of money market funds that have a credit rating of at least "Aa3" by Moody's and "AA-" by Standard & Poor's; *provided, however,* that no such investment shall constitute a Permitted Investment unless such investment matures no later than the Business Day immediately preceding the Distribution Date on which the funds invested therein are required to be distributed (or, in the case of an investment that is an obligation of the institution in which the account is maintained, no later than such Distribution Date); and *provided further,* that no such investment shall constitute a Permitted Investment if it gives rise to payments that would be subject to U.S. federal withholding tax if held by a Person that is not a U.S. Person and that has provided applicable U.S. federal tax forms. Permitted Investments may include such investments for which the Trustee or any of its Affiliates is investment manager or advisor. The Trustee or its respective Affiliates are permitted to receive additional compensation that could be deemed to be in their respective economic self interest for (i) serving as an investment advisor, administrator, shareholder, servicing agent, custodian or sub-custodian with respect to Permitted Investments, (ii) using Affiliates to effect transactions in Permitted Investments, and (iii) effecting transactions in Permitted Investments.

"<u>Person</u>" shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust (including any beneficiary thereof), unincorporated organization or government or any agency or political subdivision thereof.

"<u>Plan</u>" shall have the meaning ascribed to it in the recitals.

"QSF Beneficiaries" means each of the entities listed on Schedule 1 attached hereto and any such successor to such entities, each of whom has an interest in the Trust Estate in their respective capacities as trustees of each of the RMBS Trusts for which they serve in such capacity.

"QSF Interests" shall mean an uncertificated beneficial interest in the QSF Trust.

"QSF Representative Share" shall mean a QSF Beneficiary's representative share of the total QSF Interests in the QSF Trust, which is held from time to time in its respective capacities as trustee of each of the RMBS Trusts for which it serves as trustee, which will initially be reflected on the Representative Share Schedules and shall be adjusted from time to time on the books and records of Trustee in accordance with Article VII.

"QSF Trust" shall have the meaning ascribed to it in the preamble.

"Rating Agency" shall mean any nationally recognized statistical rating agency, or its successor. Except as otherwise specified herein, references to any long-term rating category of a Rating Agency shall mean such rating category without regard to any plus or minus or numerical designation.

"Record Date" shall mean the last Business Day of the month preceding the month of such Distribution Date.

"Representative Share Schedules" shall mean the schedules reflecting the initial QSF Representative Share and the initial RMBS Representative Share filed with the Bankruptcy Court, a copy of which will be provided to the Trustee by or on behalf of the QSF Beneficiaries, it being understood and agreed that the Trustee shall have conclusive reliance thereon and shall have no obligation to make any distributions hereunder in the absence of receipt of such Representative Share Schedules.

"Required Reserve Amount" shall mean $1,000,000.

"ResCap" shall have the meaning ascribed to it in the preamble.

"Reserve Account" shall have the meaning specified in Section 4.01(a)(ii).

"RMBS Claims Units" shall mean any and all Liquidating Trust Units issued to the QSF Trust on account of the claims of the RMBS Trusts (as such term is defined in the Plan) under the Liquidating Trust Agreement. For the avoidance of doubt, "RMBS Claims Units" shall not include the five and seven-tenths percent (5.7%) of the Liquidating Trust Units that would otherwise be issuable to the QSF Trust that shall be issued to counsel for the Institutional Investors in satisfaction of the Allowed Fee Claim, in accordance with the terms of the Plan.

"RMBS Representative Share" shall mean each RMBS Trust's representative share of the total QSF Interests allocable to its applicable QSF Beneficiary, which will initially be reflected on the Representative Share Schedules and shall be adjusted from time to time on the books and records of the Trustee in accordance with Article VII.

"RMBS Trusts" shall mean the RMBS Trusts listed on the Representative Share Schedules.

"Termination Event" shall have the meaning specified in Section 8.01.

"Transferee" shall have the meaning specified in Section 7.02.

"Treas. Reg." shall have the meaning specified in Section 2.09(a).

"Trust Accounts" shall mean the Collection Account and the Reserve Account.

"Trust Estate" shall mean: (a) the RMBS Claims Units together with all payments due thereon, (b) all present and future claims, demands, causes and choses in action in respect of payments or distributions on the RMBS Claims Units including all rights of beneficiaries under the Liquidating Trust Agreement based thereon, (c) all funds held in the Trust Accounts from time to time, and (d) all proceeds of the foregoing of every kind and nature whatsoever, including, without limitation, all proceeds of the conversion thereof, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property that at any time constitute all or part of or are included in the proceeds of the foregoing.

"Trustee" shall have the meaning ascribed to it in the preamble and any successor trustee appointed in accordance with this Agreement.

**Section 1.02    Interpretation.**

In this Agreement:

(a)     "or" is not exclusive;

(b)     "including" means "including without limitation";

(c)     any reference to the singular includes reference to the plural and vice versa and reference to the masculine gender includes reference to the feminine and neuter genders and *vice versa*;

(d)     unless otherwise expressly stated to the contrary herein, any reference to any Section, sub-section, paragraph or sub-paragraph is to a Section, sub-section, paragraph or sub-paragraph (as the case may be) of this Agreement;

(e)     the headings are inserted for convenience of reference only and shall not in any way form part of or affect or be taken into account in the construction or interpretation of any provision of this Agreement or the Schedule hereto; and

(f)     the recitals and Schedule form part of this Agreement and shall have the same force and effect as if they were expressly set out in the body of this Agreement and any references to this Agreement shall include the recitals and Schedule.

## ARTICLE II

## ESTABLISHMENT OF THE QSF TRUST

**Section 2.01    Name.**

The trust created hereby shall be known as the "RMBS Claims Trust", in which name the Trustee may conduct the affairs of the QSF Trust.  It is the intention of the parties hereto that the QSF Trust hereby created constitutes a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C., §3801 et seq. and that this Agreement constitutes the governing instrument of the QSF Trust. The Trustee, pursuant to the original trust agreement, filed a certificate of trust with the Delaware Secretary of State.

**Section 2.02    Office.**

The office of the QSF Trust shall be in care of the Trustee at its corporate trust office or at any other address that the Trustee may designate by written notice to the QSF Beneficiaries.

**Section 2.03    Declaration of Trust.**

Upon the Effective Date, the Trustee shall have all the rights, powers and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the QSF Trust.  The Trustee is hereby authorized to file with any governmental authority any documents necessary to establish the QSF Trust.

**Section 2.04    Issuance of RMBS Claims Units and Related Distributions.**

On the Initial Unit Distribution Date (as such term is defined in the Plan), the QSF Trust shall accept the RMBS Claims Units issued to the QSF Trust on such date pursuant to the Liquidating Trust Agreement and thereafter the QSF Trust shall accept any distributions made by the Liquidating Trust in respect of any Liquidating Trust Units held by the QSF Trust from time to time pursuant to the Liquidating Trust Agreement, in all cases in trust for the benefit of the QSF Beneficiaries.

**Section 2.05    Appointment of Trustee.**

U.S. Bank Trust National Association is hereby appointed as trustee of the QSF Trust effective as of the date hereof, and shall have the rights, powers, and duties set forth herein.

**Section 2.06    Acceptance of Trust.**

The Trustee agrees to accept and hold the Trust Estate in trust for the QSF Beneficiaries, subject to the terms of this Agreement.

**Section 2.07    Activities of the Trust.**

It is the intention of the parties hereto that the QSF Trust shall not engage in any business or activities other than in connection with, or relating to the following:

7

(a)    to register on its books and records uncertificated beneficial interests to the QSF Beneficiaries;

(b)    to accept distributions of RMBS Claims Units and related cash distributions from the Liquidating Trust and make distributions to the QSF Beneficiaries from time to time;

(c)    to hold, transfer and/or invest the assets included in the Trust Estate and take such other actions with respect to the RMBS Claims Units as are permitted to be taken by the holders of the RMBS Claims Units pursuant to the Liquidating Trust Agreement, in accordance with this Agreement, or by the Trustee to enforce its rights under this Agreement;

(d)    to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(e)    to seek a Letter Ruling from the IRS regarding the status of the QSF Trust as a qualified settlement fund within the meaning of Section 468B of the Code and Treasury Regulations promulgated thereunder, and to grant powers of attorney in connection therewith.

**Section 2.08    Purpose, Limitations of the Trust.**

(a)    Except as otherwise expressly provided herein, the business and affairs of the QSF Trust will be managed by or under the direction of the Trustee.

(b)    The QSF Trust will conduct its business under names or tradenames so as not to mislead others as to the separate identity of the QSF Trust. Without limiting the generality of the foregoing, all oral and written communications, including letters, invoices, contracts, statements and applications, will be made solely in the name of the QSF Trust or in the name of the QSF Trustee in its capacity as such if related to the Trust.

(c)    There will not be any indebtedness relating to borrowings or loans between the QSF Trust and the Liquidating Trust or its Affiliates.

(d)    The QSF Trust will act solely in its name through the Trustee's duly authorized officers or agents in the conduct of its business. The QSF Trust will not: (i) operate or purport to operate as an integrated, single economic unit with respect to the Liquidating Trust or any other Affiliated or unaffiliated entity or any other Person; (ii) seek or obtain credit or incur any obligation to any third party based upon the assets of the Liquidating Trust or its Affiliates; or (iii) induce any such third party to reasonably rely on the creditworthiness of the Liquidating Trust or any other Affiliated or unaffiliated entity.

(e)    The QSF Trust will maintain a Delaware trustee with a principal place of business in the State of Delaware.

(f)    The QSF Trust will keep its funds and other assets separate from the Liquidating Trust and will not commingle such funds and other assets with those of any other Affiliates thereof.

(g)    Any financial statements prepared by the QSF Trust shall be separate from those of the Liquidating Trust and any other Affiliates.

**Section 2.09    Section 468B Qualified Settlement Fund.**

(a)    It is intended and it is contemplated in the Plan that the QSF Trust established hereunder will qualify as, and remain, a "Qualified Settlement Fund" within the meaning of Section 468B of the Code, and the Regulations promulgated pursuant thereto and codified at 26 C.F.R. Sections 1.468B-1 through 1.468B-5.  For income tax purposes, Ally Financial Inc. ("Ally") shall be classified as a "transferor" within the meaning of Regulation Section 1.468B-1(d)(1), 26 C.F.R. ("Treas. Reg.") Section 1.468B-1(d)(1).  The Trustee, shall be classified as the "administrator" within the meaning of Treas. Reg. Section 1.468B-2(k)(3).

(b)    It is further intended that all transfers to the QSF Trust will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Code and Treas. Reg. Section 1.461-1(a)(2).  As such, Ally shall not be taxed on the income of the QSF Trust. The QSF Trust shall be taxed on its modified gross income, excluding the sums, or cash equivalents of items, transferred to it.  All computations of the QSF Trust's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treas. Reg. Sections 1.468B-2(b)(1)-(4).

(c)    Subject to the applicable provisions of the Code, the Trustee shall cause to be filed, on behalf of the QSF Trust, all required federal, state, and local tax returns pursuant to the provisions of Treas. Reg. Section 1.468B-2(k).  Furthermore, pursuant to the provisions of Treas. Reg. Section 1.468B-2(1), the Trustee shall cause to be filed all required federal, state, and local information returns and ensure compliance with withholding and reporting requirements. The Trustee may retain an independent, certified public accountant to consult with and advise the Trustee with respect to the preparation of any and all appropriate income tax returns, information returns, or compliance with withholding requirements.  Ally shall supply to the Trustee and to the IRS the statement described in Treas. Reg. Section 1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which Ally is treated for federal income tax purposes as making a transfer to the QSF Trust.

(d)    The Trustee shall be authorized to take all such actions, including such actions as may be consistent with those expressly set forth above, as may be necessary to ensure that the QSF Trust is treated as a Qualified Settlement Fund under Section 468B of the  Code, and the Regulations promulgated pursuant thereto.

(e)    Notwithstanding anything herein to the contrary, in the event that any portion of this Agreement shall at any time be considered not to be in compliance with Code Section 468B, as amended, together with any and all Treasury Regulations and IRS Notices, Announcements and directives thereunder, such offending Section of this Agreement shall be considered null, void, and of no effect, without any action by any court or by the Trustee. The

overarching purpose of this Agreement is to at all times be in compliance with Code Section 468B and all administrative authority and announcements thereunder. In the event that this Section 2.09 applies to render an offending Section null, void, or of no effect, Section 9.05 of this Agreement shall still apply with respect to the remaining non-offending Sections of this Agreement.

## ARTICLE III

## QSF INTERESTS

### Section 3.01    Rights of QSF Beneficiaries.

Each QSF Beneficiary will be entitled to participate in the rights due to a QSF Beneficiary hereunder. Each QSF Beneficiary shall take and hold its QSF Interest subject to all of the terms and provisions of this Agreement. No QSF Beneficiary shall have any title to, right to, possession of, management of or control of, the QSF Trust or the Trust Estate except as herein expressly provided. The QSF Interests shall not be certificated.

### Section 3.02    No Legal Title in QSF Beneficiaries.

No QSF Beneficiary shall have legal title to any part of the Trust Estate. No transfer by operation of law or otherwise, of the right, title and interest of any QSF Beneficiary in and to the Trust Estate or hereunder shall operate to terminate this QSF Trust or entitle any successor or transferee of such QSF Beneficiary to an accounting or to the transfer to it of legal title to any part of the Trust Estate.

### Section 3.03    Identification of QSF Beneficiaries.

The initial QSF Beneficiaries are set forth on Schedule 1 hereto and shall be adjusted from time to time on the books and records of Trustee in accordance with the terms of Article VII. Except as otherwise required by law, references in this Agreement to the identification of QSF Beneficiaries and the providing of information to QSF Beneficiaries shall be read to mean QSF Beneficiaries of record as set forth on Schedule 1 hereto, as modified from time to time in accordance with the terms of Article VII. Unless expressly provided herein, the Trustee may establish a record date, which it deems practicable for determining the QSF Beneficiaries for a particular purpose.

### Section 3.04    Deemed Majority Consent.

The Majority Beneficiaries shall have the right to cause the institution of and to direct the time, manner, method and place of conducting any proceeding or exercising any power conferred on the Trustee hereunder; *provided, however*, that: (i) such direction shall not conflict with any rule of law, the Plan or this Agreement (ii) the Trustee shall not be required to undertake any action that might involve it in personal liability or require the expenditure of funds not available to it in the Reserve Account, unless the Trustee shall have been indemnified to its satisfaction, and (iii) the Trustee shall be entitled to condition its compliance with any such direction upon the receipt of an Opinion of Counsel that the directed action is authorized or permitted by this Agreement.

Notwithstanding anything contained herein to the contrary, with respect to any provision of this Agreement which permits or requires the consent of, or direction from, the Majority Beneficiaries prior to the Trustee acting hereunder, such consent of, or direction from, the Majority Beneficiaries shall be deemed to have been given if: (i) the Trustee sends written notice to all QSF Beneficiaries of such proposed action or omission, (ii) within sixty (60) days after delivery of such written notice to the QSF Beneficiaries, the Trustee does not receive the consent of or direction from the Majority Beneficiaries, (iii) after such sixty (60) day period has expired, the Trustee receives the consent of, or direction from, at least one QSF Beneficiary with respect to such proposed action or omission, and (iv) the Trustee does not receive written notice from QSF Beneficiaries holding at least fifty-one percent (51%) of the QSF Representative Shares opposing such proposed action or omission; *provided, however*, that no deemed direction shall be effective hereunder to the extent that it has the effect of denying an RMBS Trust the right to receive payments in respect of its RMBS Representative Share unless the Trustee shall have also received the consent of the QSF Beneficiary for such affected RMBS Trust. The Trustee shall incur no liability to any QSF Beneficiary, any RMBS Trust or any other Person for acting or omitting to act based upon the foregoing deemed consent. The Trustee shall have no duties or responsibility with respect to the compliance by the QSF Beneficiaries with respect to their duties with respect to the RMBS Trusts, including without limitation relating to their authority to act with respect to any RMBS Trusts.

## ARTICLE IV

## ACCOUNTS, DEPOSITS AND DISTRIBUTIONS

### Section 4.01    Establishment of Trust Accounts.

(a)    The Trustee shall establish and maintain the following trust accounts in the name of the Trustee on behalf of the QSF Trust for the QSF Beneficiaries as provided in this Agreement:

(i)    the collection account (the "Collection Account"); and

(ii)    the reserve account (the "Reserve Account").

The trust accounts will be non-interest bearing but collected funds therein will be invested in accordance with Section 4.04 hereof.

(b)    The Trustee shall have the right to create one or more sub-accounts, as needed, for operation purposes.

(c)    The Trust Accounts shall be Eligible Accounts.

### Section 4.02    Collection Account.

(a)    Deposits.    Within one (1) Business Day of receipt, the Trustee shall deposit into the Collection Account the amounts received as distributions or payments on the RMBS Claims Units.

(b)    Withdrawal.  On each Distribution Date, the Trustee shall withdraw all Available Funds in the Collection Account to be distributed as follows:

(i)    First, to the Trustee for payment of any fees, expenses, indemnities or other amounts due to the Trustee under this Agreement;

(ii)    Second, to the Reserve Account until the balance in the Reserve Account equals the Required Reserve Amount;

(iii)    Third, ratably to each QSF Beneficiary in accordance with such QSF Beneficiary's QSF Representative Share, for further distribution by each QSF Beneficiary to its applicable RMBS Trusts in accordance with such RMBS Trusts' RMBS Representative Share.

The Trustee shall have no duties to the RMBS Trusts and responsibility for distributions by the QSF Beneficiaries to the RMBS Trusts or any investors of any RMBS Trust. Notwithstanding the forgoing and without limiting any other rights of the Trustee hereunder, the first Distribution Date shall, subject to Section 4.05 hereof, occur on the fifteenth Business Day following the date that the Trustee receives a distribution from the Liquidating Trust.

### Section 4.03  Reserve Account.

(a)    Deposits.  On each Distribution Date, the Trustee shall deposit funds into the Reserve Account in accordance with Section 4.02 until funds in the Reserve Account equal the Required Reserve Amount.

(b)    Withdrawal.  The Trustee may withdraw amounts held on deposit in the Reserve Account at any time for payment of any fees, expenses, indemnities or other amounts due to the Trustee under this Agreement.  So long as there are no claims, causes of actions, suits or other similar litigation proceedings commenced, asserted or threatened against the Trustee related to, connected with or directly or indirectly arising out of this Agreement, then upon the third anniversary of the Final Distribution Date, the Trustee shall distribute any amounts then held in the Reserve Account ratably to each QSF Beneficiary (as of the Record Date related to the Final Distribution Date) in accordance with such QSF Beneficiary's QSF Representative Share (as of the Record Date related to the Final Distribution Date), for further distribution by each QSF Beneficiary to its applicable RMBS Trusts in accordance with such RMBS Trusts' RMBS Representative Share.

### Section 4.04  Investments.

The Trustee shall invest funds held in the Trust Accounts in Permitted Investments.  In no event shall the Trustee be liable for the selection of investments or for investment losses incurred thereon.  The Trustee shall have no liability in respect of losses incurred as a result of the liquidation of any investment prior to its stated maturity.

**Section 4.05    Payments to QSF Beneficiaries.**

Any and all distributions from the Trust Accounts to be made by the Trustee to the QSF Beneficiaries shall be made by wire transfer pursuant to the respective wire transfer details for such QSF Beneficiaries as provided in writing by the respective QSF Beneficiary prior to the initial Distribution Date (it being understood and agreed that any distribution by the Trustee to a QSF Beneficiary may be delayed up to ten (10) days after the receipt of such wire transfer instructions and further that it is currently contemplated that no more than three (3) separate wire transfers per QSF Beneficiary would be made on each Distribution Date), which such wire transfer instructions may be amended from time to time in writing provided to the Trustee in a timely manner.

**Section 4.06    Record Date.**

Payments to the QSF Beneficiaries on any Distribution Date will be made to the QSF Beneficiaries of record of the respective QSF Interests on the related Record Date.

## ARTICLE V

## [ RESERVED ]

## ARTICLE VI

## CONCERNING THE TRUSTEE

**Section 6.01    Duties of the Trustee.**

Every provision of this Agreement relating to the conduct of, affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Article VI. The Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Agreement and no implied covenants or obligations shall be read into this Agreement against the Trustee. Except as provided in Section 6.02, no provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; *provided, however,* that:

(a)    the Trustee shall not be liable for an error of judgment made in good faith by an Officer of the Trustee, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts;

(b)    with respect to any trust or power conferred upon the Trustee under this Agreement, the Trustee shall not be personally liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of the Majority Beneficiaries (including, without limitation, any deemed direction pursuant to Section 3.04 of this Agreement) or such other percentage as may be specified herein;

(c)    any determination of negligence or willful misconduct of the Trustee shall be made only upon the rendering of a final judgment of a court of competent jurisdiction no longer subject to appeal or review;

(d)    the Trustee shall be deemed to be acting solely in its capacity as Trustee in connection with the administration of the QSF Trust and not in its individual capacity, and as such, shall not be individually responsible for the payment of any obligations or liabilities of the QSF Trust, including, without limitation, liabilities of the QSF Trust for the payment of taxes; and

(e)    the Trustee shall forward a copy of any notice it receives in respect of the RMBS Claims Units or this Agreement to each of the QSF Beneficiaries.

**Section 6.02    Certain Matters Affecting the Trustee.**

(a)    The Trustee may conclusively rely and shall be fully protected in acting or refraining from acting upon any resolution, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

(b)    The Trustee may, in the absence of bad faith on its part, rely upon a certificate of an Officer of the appropriate Person whenever in the administration of this Agreement the Trustee shall deem it desirable that a matter be proved or established (unless other evidence be herein specifically prescribed) prior to taking, suffering or omitting any action hereunder.

(c)    The Trustee may consult with counsel of its own selection and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by it hereunder in good faith and in accordance with such advice or Opinion of Counsel.

(d)    The Trustee shall be under no obligation to exercise any of the trusts or powers vested in it by this Agreement or to institute, conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any or all of the QSF Beneficiaries, pursuant to the provisions of this Agreement, unless such QSF Beneficiaries shall have offered to the Trustee security or indemnity satisfactory to it against the costs, expenses and liabilities which may be incurred therein or thereby.

(e)    The Trustee shall not be personally liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Agreement.

(f)    The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document.

(g)    The Trustee may execute any of the trusts or powers under this Agreement or perform any duties hereunder either directly or by or through agents, attorneys, custodians or nominees and the Trustee shall not be responsible for the supervision of or any misconduct or negligence on the part of any agent or attorney appointed with due care by it under this Agreement.

(h)    Whenever the Trustee is authorized herein to require acts or documents in addition to those required to be provided it in any matter, it shall be under no obligation to make any determination whether or not such additional acts or documents should be required.

(i)    The Trustee shall not be deemed to have notice of any matter unless one of its Officers has actual knowledge thereof or unless written notice thereof is received by the Trustee at the Corporate Trust Office and such notice references the QSF Interests, the Liquidating Trust, the QSF Trust or this Agreement.

(j)    None of the provisions of this Agreement shall require the Trustee to expend or risk its own funds or otherwise to incur any liability, financial or otherwise, in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers if it shall have reasonable grounds for believing that repayment of such funds or indemnity satisfactory to it against such risk or liability is not assured to it.

(k)    Notwithstanding anything herein to the contrary, in no event shall the Trustee be liable for special, indirect, punitive or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

(l)    Before the Trustee acts or refrains from acting, it may require an Opinion of Counsel and the Trustee may conclusively rely on and shall not be liable to any Person for any action it takes or omits to take in good faith in reliance upon such Opinion of Counsel.

(m)    The permissive rights of the Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty or obligation, and the Trustee shall not be answerable in the performance of such act other than for its negligence or willful misconduct.

(n)    The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian, co-trustee and other Person employed to act hereunder.

(o)    Except as otherwise instructed pursuant to the express requirements of this Agreement, the Trustee shall have no duty (i) to see to any recording, filing, or depositing of the this Agreement or any agreement referred to herein or any financing statement or continuation statement evidencing a security interest, or to see to the maintenance of any such recording or filing or depositing or to any re-recording, re-filing or re-depositing of any thereof, (ii) to see to any insurance, (iii) to see to the payment or discharge of any tax, assessment, or other governmental charge or any lien or encumbrance of any kind owing with respect to, assessed or levied against, any part of the Trust Estate, or (iv) to confirm or verify the contents of any reports or certificates delivered to the Trustee pursuant to this Agreement believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties.

(p)    The Trustee shall have no liability or responsibility for the acts or omissions of any other party to any this Agreement or any related document.

(q)    The Trustee shall have no duty or obligation to obtain or solicit any collateral or any funds to be remitted in any of the accounts established under this Agreement, and shall have a duty only to accept such funds delivered to it in accordance with this Agreement.

(r)    The Trustee shall have no duties to any Person or entity other than to the QSF Beneficiaries of record to the extent expressly set forth herein, and without limitation, shall have no other duties to any RMBS Trust or any investor or other party in interest in such RMBS Trust.

(s)    The Trustee shall have no duty to investigate, monitor or challenge any action of the Liquidating Trustees (as such term is defined in the Liquidating Trust Agreement) relating to the administration of the Liquidating Trust, and shall not be responsible for any failure of the Liquidating Trustees to carry out any of its duties thereunder, whether or not the Trustee is aware of such failure.

(t)    Without limitation of any of the foregoing, the Trustee is not responsible for the REMIC status or any other tax consequence related to any RMBS Trust, and shall have no obligation to seek or obtain any rulings from the IRS with respect thereto in the Letter Ruling or otherwise except as specified in Section 2.07(e).

(u)    The Trustee is authorized to seek a judicial instruction with respect to any action or omission that is the subject of this Agreement.

**Section 6.03    Trustee Not Liable for QSF Interests or RMBS Claims Units.**

The recitals and factual statements contained in this Agreement shall be taken as the statements of the Debtors, and the Trustee assumes no responsibility for their correctness. The Trustee makes no representations or warranties as to the validity or sufficiency of this Agreement or of any RMBS Claims Units or related document, including the correctness of the initial amounts and percentages set forth on the Representative Share Schedules. The Trustee shall not be accountable for the use or application of any funds in respect of the RMBS Claims Units or deposited into or withdrawn from the Trust Accounts in accordance with this Agreement. The Trustee shall have no responsibility or obligation to monitor any other Person's compliance with the Liquidating Trust Agreement. The Trustee makes no representations or warranties whatsoever with respect to the tax status or consequences of this QSF Trust to any person of entity, and all QSF Beneficiaries and each RMBS Trust shall rely solely upon their own tax advice with respect thereto.

**Section 6.04    Trustee's Fees and Expenses.**

(a)    Fees.

The Trustee from time to time shall be entitled to reasonable compensation for its services which shall not be limited by any law on compensation of a trustee of an express trust. Such fees shall be set forth on a fee schedule to be provided by the Trustee to the QSF Beneficiaries prior to the date of this Agreement.

16

(b)    Expenses.

The Trustee shall be entitled to the payment of all expenses incurred or made by the Trustee hereunder, including, but not limited to, costs of collection, costs of preparing and reviewing reports, certificates and other documents, costs of preparation and mailing of notices to QSF Beneficiaries and costs of counsel, in addition to the compensation for its services. Such expenses shall include the compensation and expenses, disbursements and advances of the Trustee's agents, counsel, accountants and experts.

(c)    QSF Trust Indemnity; Limited Recourse.

The QSF Trust shall indemnify, defend and hold harmless the Trustee or any predecessor Trustee in each of its capacities hereunder and in any other document related thereto, and each of its officers, directors, employees, representatives, counsel and agents (collectively, the "Indemnified Parties") from and against, and reimburse the Indemnified Parties for, any and all claims, losses, liabilities, obligations, damages, injuries, penalties, stamp or other similar taxes, actions, suits, judgments, costs and expenses (including, but not limited to, attorneys' fees and expenses) of whatever kind or nature regardless of their merit, demanded, asserted or claimed against an Indemnified Party directly or indirectly relating to or arising from, claims against an Indemnified Party by reason of its participation in the transactions contemplated hereby, the administration of this trust and the performance of its duties hereunder and any related document, as the case may be, including the costs and expenses of enforcing this Agreement (including this Section 6.04), or any related document and of defending itself against any claims (whether asserted by any QSF Beneficiary or otherwise); *provided, however*, that the QSF Trust need not indemnify against any loss, liability or expense incurred by an Indemnified Party as a result of its own negligence or willful misconduct, as conclusively determined by the final judgment of a court of competent jurisdiction, no longer subject to appeal or review.

Any fees, expenses and indemnities due to the Trustee pursuant to this Section 6.04 shall be payable to the Trustee from funds held in the Collection Account and the Reserve Account pursuant to Section 4.02(b).

(d)    Survival of Payment Obligations.

The payment obligations contained in this Section 6.04 shall survive the satisfaction and discharge of this Agreement, the rejection or termination of this Agreement under bankruptcy law and/or resignation or removal of the Trustee.

**Section 6.05    Eligibility Requirements for the Trustee.**

The Trustee shall at all times be a corporation or national banking association that is organized and doing business under the laws of any state or the United States of America, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $50,000,000 and subject to supervision or examination by federal or state authority, and has a principal place of business in the State of Delaware. If such corporation publishes reports of its conditions at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as

set forth in its most recent report of conditions so published. In case at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, the Trustee shall resign immediately in the manner and with the effect specified in <u>Section 6.06</u>.

### Section 6.06    Resignation or Removal of Trustee.

(a)    The Trustee may resign at any time by notifying the QSF Beneficiaries. The Majority Beneficiaries may remove the Trustee for cause by providing the Trustee with thirty (30) days prior written notice thereof. The status of the Trustee's Affiliate being a QSF Beneficiary shall not be considered cause for removal hereunder. All QSF Beneficiaries (other than any QSF Beneficiary that is an Affiliate of the Trustee) may remove the Trustee without cause by providing the Trustee with thirty (30) days prior written notice thereof.

(b)    If the Trustee resigns or is removed, the Majority Beneficiaries shall promptly appoint a successor Trustee. If a successor Trustee does not take office within sixty (60) days after the retiring Trustee resigns or is removed, the retiring Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee.

(c)    A successor Trustee shall deliver a written acceptance of its appointment to the retiring Trustee. Thereupon the resignation or removal of the retiring Trustee shall become effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under this Agreement. The successor Trustee shall mail a notice of its succession to the QSF Beneficiaries. The retiring Trustee shall promptly transfer all property held by it as Trustee to the successor Trustee, subject to the lien provided for in <u>Section 6.04</u>. All costs incurred in connection with any resignation or removal hereunder shall be paid from the Reserve Account.

(d)    Notwithstanding the replacement of the Trustee pursuant to this <u>Section 6.06</u>, the obligations under <u>Section 6.04</u> shall continue for the benefit of the retiring Trustee.

### Section 6.07    Merger or Consolidation of Trustee.

Any corporation into which the Trustee may be merged or converted or with which it may be consolidated or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to the business of the Trustee, shall be the successor of the Trustee under this Agreement provided such corporation shall be eligible under the provisions of <u>Section 6.05</u>, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

## ARTICLE VII

## TRANSFERS OF QSF INTERESTS

### Section 7.01    Transfers by RMBS Trust.

An RMBS Trust may not transfer its interest in the RMBS Claims Units.

### Section 7.02    Transfers by QSF Beneficiaries.

(a)    Solely in connection with its resignation or removal as trustee of one or more RMBS Trusts (such affected RMBS Trusts are referred to herein as the "Affected RMBS Trusts"), a QSF Beneficiary may transfer its QSF Representative Shares related to such Affected RMBS Trusts to an entity or entities that will act as successor trustee (such entity or entities, collectively the "Transferees") of such Affected RMBS Trusts.

(b)    The transferring QSF Beneficiary shall provide at least ten (10) days prior written notice to the Trustee of such transfer, which notice shall contain the name, contact details and wiring instructions of the Transferees. The QSF Beneficiary shall also provide the Trustee with such other information as the Trustee may reasonably request in connection with such transfer.

(c)    In connection with any transfer contemplated by this Article VII, the Trustee shall modify Schedule 1 in respect of any such Transferees and shall adjust each QSF Beneficiary's QSF Representative Share and each RMBS Trust's RMBS Representative Share set forth on the Representative Share Schedules, respectively, to reflect any such transfer. The Trustee shall provide a copy of such modified Representative Share Schedules to each QSF Beneficiary.

## ARTICLE VIII

## TERMINATION OF QSF TRUST

### Section 8.01    Termination.

The QSF Trust shall terminate and the obligations and responsibilities of the Trustee created hereby shall terminate upon the earlier to occur of: (i) its receipt of written notice from the Liquidating Trust of the sale, liquidation or other disposition of all of the Liquidating Trust Assets (as such term is defined in the Liquidating Trust Agreement) and the disposition of any remaining Trust Assets held hereunder (other than those held in the Reserve Account), or (ii) the written consent of all QSF Beneficiaries and the Trustee (such event, a "Termination Event").

### Section 8.02    Procedure For Termination.

(a)    Upon a Termination Event, notice of the Distribution Date on which a final distribution (subject to Section 4.03(b)) shall occur (the "Final Distribution Date") shall be given promptly by the Trustee to the QSF Beneficiaries mailed during the month of such final distribution on or before the Distribution Date next following the Termination Event, specifying

the Final Distribution Date and the amount of any such final payment; *provided*, *however*, that the QSF Trust shall continue for the limited purposes of Section 4.03(b).

(b)    Upon dissolution, wind up and termination of the QSF Trust and this Agreement, the Trustee is authorized to execute and file a certificate of cancellation with the Secretary of State; *provided*, *however*, that the Trustee shall not be required to execute or file a certificate of cancellation unless it receives confirmation that the QSF Trust has complied with Section 3308 of the Delaware Trust Statute.

## ARTICLE IX

### MISCELLANEOUS PROVISIONS

**Section 9.01    Amendment of Trust Agreement.**

(a)    Amendments.

Subject to Section 9.01(b), this Agreement may be amended or supplemented from time to time with the consent of the Trustee and the Majority Beneficiaries; *provided*, *however*, that no amendment shall be made to this Agreement that makes it inconsistent with the Plan or the Confirmation Order.  No amendment shall alter the rights of a QSF Beneficiary without the consent of the affected QSF Beneficiary.

(b)    Amendments Affecting RMBS Trusts.

Notwithstanding Section 9.01(a), any amendment or supplement to this Agreement that shall affect any RMBS Trust shall also require the consent of the QSF Beneficiary for such RMBS Trust.

(c)    Rights of Trustee.

Prior to executing any amendment permitted by this Section 9.01, the Trustee shall be entitled to receive, and shall be fully protected in relying upon, an Opinion of Counsel opining that the execution and delivery of such amendment is authorized or permitted by this Agreement. The Trustee may, but shall not be obligated to, enter into any such amendment that affects the Trustee's own rights, duties, liabilities, indemnities or immunities under this Agreement or otherwise.

(d)    Miscellaneous.

The manner of obtaining such consents and of evidencing the authorization of the execution thereof by QSF Beneficiaries shall be subject to such reasonable regulations as the Trustee may prescribe.

**Section 9.02    Counterparts.**

This Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute but one and the same instrument. Delivery of a counterpart of this Agreement by facsimile or email in portable document format (pdf) shall be deemed to be delivery of original signatures for all purposes hereof.

**Section 9.03    Limitation on Rights of QSF Beneficiaries.**

(a)    No QSF Beneficiary shall have any right to vote or in any manner otherwise control the operation and management of the QSF Trust or the obligations of the parties hereto except as expressly provided for in this Agreement, and nothing herein set forth shall be construed so as to constitute the QSF Beneficiaries from time to time as partners or members of an association.

(b)    No QSF Beneficiary shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless the Majority Beneficiaries shall have made written request upon the QSF Trust or the Trustee on behalf of the QSF Trust to institute such action, suit or proceeding in the name of the QSF Trust under this Agreement and shall have offered to the Trustee such indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee on behalf of the QSF Trust, for sixty (60) days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding. For the protection and enforcement of the provisions of this Section, each and every QSF Beneficiary and the Trustee shall be entitled to such relief as can be given either at law or in equity.

**Section 9.04    Notices.**

(a)    All directions, demands and notices hereunder shall be in writing and shall be deemed to have been duly given when sent by facsimile transmission, first class mail or delivered to:

(i)    in the case of the Trustee, 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware 19801-1515, Attention: Corporate Trust Officer – Re: ResCap RMBS Claims Trust,

with a copy to:    Maslon Edelman Borman & Brand, LLP, 3300 Wells Fargo Center, 90 South 7th Street, Minneapolis, MN 55402, Attention: Clark Whitmore and Brian Klein; and

(ii)    in the case of any QSF Beneficiary, at the address of such QSF Beneficiary as shown on Schedule 1 hereto.

(b)    Notice may also be delivered by email in accordance with such other side letter agreement entered into between the parties. Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have been duly given, whether or not a QSF Beneficiary receives such notice. A copy of any notice required to be telecopied

21

hereunder also shall be mailed to the appropriate party in the manner set forth above. A copy of any notice given hereunder to any other party shall be delivered to the Trustee.

### Section 9.05    Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then, to the fullest extent permitted by law, such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or the rights of the QSF Beneficiaries thereof.

### Section 9.06    Third Party Beneficiaries.

Nothing in this Agreement, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, the QSF Beneficiaries and the Indemnified Parties with respect to Section 6.04(c), any benefit or any legal or equitable right, remedy or claim under this Agreement.

### Section 9.07    Acts of QSF Beneficiaries.

Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement to be given or taken by QSF Beneficiaries may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such QSF Beneficiaries in person or by agents duly appointed in writing; and except as herein otherwise expressly provided such action shall become effective when such instrument or instruments are delivered to the Trustee. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Agreement and conclusive in favor of the Trustee. The fact and date of the execution by any Person of any such instrument or writing may be proved in any manner that the Trustee deems sufficient. The ownership of QSF Interests shall be proved by the Representative Share Schedules as the same may be modified from time to time in accordance with the terms of Article VII.

### Section 9.08    Headings.

Section and subsection headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.

### Section 9.09    No Waiver; Cumulative Remedies.

No failure to exercise and no delay in exercising, on the part of any party of any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exhaustive of any rights, remedies, powers and privileges provided by law.

**Section 9.10    Merger and Integration.**

Subject to the Plan and Confirmation Order, this Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and thereof, and all prior understandings, written or oral, are superseded by this Agreement.

**Section 9.11    Governing Law; Venue; Jury Waiver.**

(a)    THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

(b)    THE TRUSTEE AND EACH QSF BENEFICIARY HEREBY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (i) ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, OR (ii) IN ANY WAY IN CONNECTION WITH OR PERTAINING TO OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES WITH RESPECT TO THIS AGREEMENT OR IN CONNECTION WITH THIS AGREEMENT OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS AGREEMENT OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR OTHERWISE.

(c)    THE TRUSTEE AND EACH QSF BENEFICIARY HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY FEDERAL OR STATE COURTS SITTING IN THE STATE OF DELAWARE IN RESPECT OF ANY ACTION OR PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

(d)    THE TRUSTEE AND EACH QSF BENEFICIARY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH PROCEEDINGS IN ANY SUCH COURT AND ANY CLAIM THAT ANY PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

IN WITNESS WHEREOF, ResCap, the other Debtors and the Trustee have caused this
Trust Agreement to be duly executed by their respective officers thereunto duly authorized and all as of
the day and year first above written.

Residential Capital, LLC

By:
Name:     William Thompson
Title:      General Counsel

By:
Name:     Jill Horner
Title:      Chief Finance Executive

AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties,
LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity
Investment I, LLC, ETS of Virginia, Inc., ETS of Washington,
Inc., Executive Trustee Services, LLC, GMAC-RFC Holding
Company, LLC, GMAC Model Home Finance I, LLC, GMAC
Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC
Residential Holding Company, LLC, GMAC RH Settlement
Services, LLC, GMACM Borrower LLC, GMACM REO LLC,
GMACR Mortgage Products, LLC, HFN REO SUB II, LLC,
Home Connects Lending Services, LLC, Homecomings
Financial Real Estate Holdings, LLC, Homecomings Financial,
LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC,
PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC,
RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings,
LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc.,
Residential Asset Mortgage Products, Inc., Residential Asset
Securities Corporation, Residential Consumer Services of
Alabama, LLC, Residential Consumer Services of Ohio, LLC,
Residential Consumer Services of Texas, LLC, Residential
Consumer Services, LLC, Residential Funding Company, LLC,
Residential Funding Mortgage Exchange, LLC, Residential
Funding Mortgage Securities I, Inc., Residential Funding
Mortgage Securities II, Inc., Residential Funding Real Estate
Holdings, LLC, Residential Mortgage Real Estate Holdings,
LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset
Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower
LLC, RFC Construction Funding, LLC, RFC REO LLC and
RFC SFJV-2002, LLC

By:
Name:     William Thompson
Title:      General Counsel

By:
Name:     Jill Horner
Title:      Chief Financial Officer

[Signature Page to RMBS Trust Agreement]

**IN WITNESS WHEREOF**, ResCap, the other Debtors and the Trustee have caused this Trust Agreement to be duly executed by their respective officers thereunto duly authorized and all as of the day and year first above written.

Residential Capital, LLC

By: _____
Name:    William Thompson
Title:    General Counsel

By: _____
Name:    Jill Horner
Title:    Chief Finance Executive

AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACR REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC

By: _____
Name:    William Thompson
Title:    General Counsel

By: _____
Name:    Jill Horner
Title:    Chief Financial Officer

[Signature Page to RMBS Trust Agreement]

**U.S. BANK TRUST NATIONAL
ASSOCIATION,** not in its individual capacity, but
solely as Trustee

By: _____

Name: MAMTA K SCOTT

Title: VICE PRESIDENT

Acknowledged and Agreed
Solely with Respect to
Section 2.09 Hereof:

ALLY FINANCIAL INC.

By: _____

Name: _____

Title: _____

**U.S. BANK TRUST NATIONAL
ASSOCIATION,** not in its individual capacity, but
solely as Trustee

By:_____

Name:_____

Title:_____


Acknowledged and Agreed
Solely with Respect to
Section 2.09 Hereof:

ALLY FINANCIAL INC.

By:_____

Name: T. A. Devine

Title: Chief counsel, Litigation

## SCHEDULE 1

### QSF BENEFICIARIES CONTACT INFORMATION

| QSF BENEFICIARY |
| --- |
| The Bank of New York Mellon<br>6525 West Campus Oval<br>New Albany, Ohio 43054<br>Attn.:  Robert H. Major, Vice President<br>Telephone No.: 614-775-5278<br>Fax No.: 614-775-5636<br>Email:  robert.major@bnymellon.com |
| The Bank of New York Mellon Trust Company, N.A.<br>Global Trust-Mortgage Backed Securities<br>525 William Penn Place, 7th Floor<br>Pittsburgh, PA 15259<br>Attn.:  Jennifer J. Provenzano, Vice President<br>Telephone No.  412-236-3140<br>Fax No.:  412-234-9019<br>Email No.  Jennifer.j.provenzano@bnymellon.com |
| Deutsche Bank Trust Company Americas<br>1761 East St. Andrew Place<br>Santa Ana, CA 92705-4934<br>Attn:  Residential Capital LLC/Ronaldo Reyes<br>Telephone No.  714-247-6320<br>Fax No.:  714-247-6478<br>Email:  ronaldo.r.reyes@db.com<br><br>And<br><br>Harborside Financial Center<br>100 Plaza One<br>MS: JCY03-0699<br>Jersey City, NJ 07311-3901<br>Attn:  Brendan Meyer<br>Telephone No.: 201-593-8545<br>Fax No.: 646-502-4546<br>Email: brendan.meyer@db.com |
| Deutsche Bank National Trust Company<br>1761 East St. Andrew Place<br>Santa Ana, CA 92705-4934 |

Attn:  Residential Capital LLC/Ronaldo Reyes
Telephone No.  714-247-6320
Fax No.:  714-247-6478
Email:  ronaldo.r.reyes@db.com

And

Harborside Financial Center
100 Plaza One
MS: JCY03-0699
Jersey City, NJ 07311-3901
Attn:  Brendan Meyer
Telephone No.: 201-593-8545
Fax No.:  646-502-4546
Email: brendan.meyer@db.com

U.S. Bank National Association
Corporate Trust Services Division
One Federal Street 3rd Floor
Boston, MA 02110
Mail Station: EX-MA-FED
Attention:      Laura L. Moran, Vice President
Telephone No.:    617-603-6429
Facsimile No.::    617-603-6644
Email:    Laura.Moran@USBank.com

Wells Fargo Bank, N.A.
Sixth and Marquette
MAC N9311-161
Minneapolis, MN 55479
Attn: Mary L. Sohlberg, Structured Products
Group – Default and Restructuring (Rescap)
Telephone No.: 612-316-0737
Fax No.: 612-667-3464
Email: mary.l.sohlberg@wellsfargo.com

HSBC Bank USA, National Association
8 East 40th Street, 6th Floor
New York, NY 10016
Attn:  Fernando Acebedo
Telephone No.: 212-525-1309
Fax No.: 212-525-1300
Email: fernando.acebedo@us.hsbc.com

Citibank, N.A.
388 Greenwich Street, 14th Floor

New York, New York 10013
Attention: Louis Piscitelli
Telephone No.: 212-816-5805
Fax No.: 212-816-5527
Email: Louis.A.Piscitelli@citigroup.com

Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1605
Attention: Adam Scozzafava
Telephone No.:    302-636-6196
Fax No.:    302-636-4140
Email: ascozzafava@wilmingtontrust.com

Wilmington Trust, National Association
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1605
Attention: Adam Scozzafava
Telephone No.:    302-636-6196
Fax No.:    302-636-4140
Email:    ascozzafava@wilmingtontrust.com

SK 03687 0119 1416725 v12

**Blackline**

———————————

AMENDED AND RESTATED TRUST AGREEMENT

among

**RESIDENTIAL CAPITAL, LLC,**

**CERTAIN AFFILIATES OF RESIDENTIAL CAPITAL, LLC
SIGNATORY HERETO**

and

**[U.S. BANK TRUST NATIONAL ASSOCIATION][1],**
as Trustee,

DATED AS OF

[———————], December 17, 2013

———————————

---

[1] Pending internal approvals.

# TABLE OF CONTENTS

Page

## ARTICLE I
### DEFINITIONS

| | | |
|---|---|---|
| Section 1.01 | Defined Terms | 5 2 |
| Section 1.02 | Interpretation | 9 6 |

## ARTICLE II
### ESTABLISHMENT OF THE QSF TRUST

| | | |
|---|---|---|
| Section 2.01 | Name | 9 7 |
| Section 2.02 | Office | 10 7 |
| Section 2.03 | Declaration of Trust | 10 7 |
| Section 2.04 | Issuance of RMBS Claims Units and Related Distributions | 10 7 |
| Section 2.05 | Appointment of Trustee | 10 7 |
| Section 2.06 | Acceptance of Trust | 10 7 |
| Section 2.07 | Activities of the Trust | 10 7 |
| Section 2.08 | Purpose, Limitations of the Trust | 11 8 |
| Section 2.09 | Section 468B Qualified Settlement Fund | 12 9 |

## ARTICLE III
### QSF INTERESTS

| | | |
|---|---|---|
| Section 3.01 | Rights of QSF Beneficiaries | 13 10 |
| Section 3.02 | No Legal Title in QSF Beneficiaries | 13 10 |
| Section 3.03 | Identification of QSF Beneficiaries | 13 10 |
| Section 3.04 | Deemed Majority Consent | 13 10 |

## ARTICLE IV
### ACCOUNTS, DEPOSITS AND DISTRIBUTIONS

| | | |
|---|---|---|
| Section 4.01 | Establishment of Trust Accounts | 14 11 |
| Section 4.02 | Collection Account | 14 11 |
| Section 4.03 | Reserve Account | 15 12 |
| Section 4.04 | Investments | 15 12 |
| Section 4.05 | Payments to QSF Beneficiaries | 15 13 |
| Section 4.06 | Record Date | 15 13 |

## ARTICLE V
### [ RESERVED ]

## ARTICLE VI
### CONCERNING THE TRUSTEE

| | | |
|---|---|---|
| Section 6.01 | Duties of the Trustee | 16 13 |
| Section 6.02 | Certain Matters Affecting the Trustee | 16 14 |
| Section 6.03 | Trustee Not Liable for QSF Interests or RMBS Claims Units | 19 16 |
| Section 6.04 | Trustee's Fees and Expenses | 19 16 |
| Section 6.05 | Eligibility Requirements for the Trustee | 20 17 |

Section 6.06      Resignation or Removal of Trustee...................................................20 18
Section 6.07      Merger or Consolidation of Trustee..................................................21 18

ARTICLE VII
TRANSFERS OF QSF INTERESTS

Section 7.01      Transfers by RMBS Trusts.........................................................21 Trust 19
Section 7.02      Transfers by QSF Beneficiaries...................................................21 19

ARTICLE VIII
TERMINATION OF QSF TRUST

Section 8.01      Termination.............................................................................22 19
Section 8.02      Procedure For Termination.......................................................22 19

ARTICLE IX
MISCELLANEOUS PROVISIONS

Section 9.01      Amendment of Trust Agreement...............................................22 20
Section 9.02      Counterparts.............................................................................23 21
Section 9.03      Limitation on Rights of QSF Beneficiaries.............................23 21
Section 9.04      Notices......................................................................................23 21
Section 9.05      Severability of Provisions........................................................24 22
Section 9.06      Third Party Beneficiaries.........................................................24 22
Section 9.07      Acts of QSF Beneficiaries.......................................................24 22
Section 9.08      Headings...................................................................................24 22
Section 9.09      No Waiver; Cumulative Remedies.........................................25 22
Section 9.10      Merger and Integration...........................................................25 23
Section 9.11      Governing Law; Venue; Jury Waiver......................................25 23

SCHEDULE 1:      QSF BENEFICIARIES AND QSF REPRESENTATIVE SHARES
SCHEDULE 2:      RMBS TRUSTS AND RMBS REPRESENTATIVE SHARESSCHEDULE 3:      CONTACT DETAILS FOR QSF BENEFICIARIESINFORMATION
SCHEDULE 4:      WIRE INSTRUCTIONS FOR QSF BENEFICIARIES

AMENDED AND RESTATED TRUST AGREEMENT

THIS AMENDED AND RESTATED TRUST AGREEMENT, dated as of [_____
],December 17, 2013 (this "Agreement"), is hereby executed by and among Residential Capital,
LLC ("ResCap"), certain affiliates signatory hereto (together with ResCap, the "Debtors"), and
[U.S. BANK TRUST NATIONAL ASSOCIATION], as trustee (the "Trustee") in order to
establish a qualified settlement trust within the meaning of Code Section 468B and the Treasury
Regulations promulgated thereunder (the "QSF Trust") for the benefit of the holders of
residential mortgage backed securities claims against the Debtors and Ally Financial, Inc. and its
non-Debtor affiliates.

WITNESSETH

WHEREAS, on May 14, 2012, each of the Debtors filed a voluntary petition for relief
under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), with
the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy
Court") commencing jointly administered cases under the caption *In re Residential Capital,
LLC*, Case No. 12-12020 (the "Bankruptcy Cases");

WHEREAS, on August 20,December 6, 2013, the Debtors and the Official Committee of
Unsecured Creditors of Residential Capital, LLC, et al. filed that certain Second Amended Joint
Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of
Unsecured Creditors (Dkt. No. 47706030-1) (together with any amendments or modifications
thereto required or permitted by the Bankruptcy Court or as otherwise permitted pursuant to the
terms of the Plan, the "Plan"); and

WHEREAS, on [_____],December 11, 2013, the Bankruptcy Court entered an Order
confirming the Plan (Dkt. No. [___]6065) (the "Confirmation Order");

WHEREAS, pursuant to the Plan and the Liquidating Trust Agreement, dated [_____
]December 17, 2013 (the "Liquidating Trust Agreement"), by and among the Liquidating
Trustees (as such term is defined in the Liquidating Trust Agreement), the Delaware Trustee (as
such term is defined in the Liquidating Trust Agreement), ResCap and the other parties signatory
thereto, a liquidating trust (the "Liquidating Trust") has been established for the purpose of
liquidating and distributing the Liquidating Trust Assets (as such term is defined in the
Liquidating Trust Agreement);

WHEREAS, pursuant to the Plan, the QSF Trust has been established for the benefit of
the QSF Beneficiaries on behalf of the RMBS Trusts;

WHEREAS, pursuant to the Plan and the Liquidating Trust Agreement, on the Initial
Unit Distribution Date, the Liquidating Trust will issue units of beneficial interests (the
"Liquidating Trust Units") to unsecured creditors of the Debtors and/or their designated
recipients, including the QSF Trust;

WHEREAS, as set forth in, and subject to, the Plan and the Liquidating Trust Agreement,
the QSF Trust will receive a number of Liquidating Trust Units that will entitle the holders
thereof to periodic distributions of cash from the Liquidating Trust;

WHEREAS, the parties hereto are entering into this Agreement for purposes of amending and restating the trust agreement which established the QSF Trust and to facilitate implementation of the Plan in respect of the RMBS Trusts;

WHEREAS, the QSF Trust is established for the sole purpose of distributing the Trust Assets to the QSF Beneficiaries, with no objective or authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the QSF Trust and the Plan;

WHEREAS, for federal income tax purposes, the QSF Trust is intended to be treated as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468 B-2; and

WHEREAS, this Agreement is subject to the approval of the Bankruptcy Court in the Confirmation Order.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Trustee, intending to be legally bound, agree as follows:

## ARTICLE I

## DEFINITIONS

### Section 1.01   Defined Terms.

The terms defined in this section are specific to this Agreement.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings ascribed to those terms in the Plan.  For the purposes of this Agreement, the following terms (which appear in this Agreement with initial capitalized letters) shall have the meanings set forth below:

"Affected RMBS Trusts" shall have the meaning specified in Section 7.02.

"Affiliate" shall mean: (i) with respect to the Trustee, any person or entity controlling, controlled by or under common control with the Trustee, and (ii) with respect to any other Person, any person or entity controlling, controlled by or under common control with such Person.  "Control" means the power to direct the management and policies of a person or entity, directly or indirectly, whether through ownership of voting securities, by contract or otherwise. "Controlling" and "controlled" shall have meanings correlative to the foregoing.

"Agreement" shall have the meaning ascribed to it in the preamble.

"Ally" shall have the meaning specified in Section 2.09(a).

"Available Funds" shall mean all collected funds held in the Collection Account as of the end of the calendar month preceding the applicable Distribution Date less any reasonable reserves established by the Trustee for payment of taxes relating to such distribution or otherwise potentially owed by the QSF Trust.

"Bankruptcy Cases" shall have the meaning ascribed to it in the recitals.

"Bankruptcy Code" shall have the meaning ascribed to it in the recitals.

"Bankruptcy Court" shall have the meaning ascribed to it in the recitals.

"Business Day" shall mean any day that is not a Saturday, Sunday, holiday, or other day on which commercial banking institutions in the City of New York or the State of Delaware or, if different, the city and state in which the Corporate Trust Office is located are authorized or obligated by law or executive order to be closed.

"Code" shall mean the Internal Revenue Code of 1986, as amended.

"Collection Account" shall have the meaning specified in Section 4.01(a)(i).

"Confirmation Order" shall have the meaning ascribed to it in the recitals.

"Corporate Trust Office" shall mean the principal corporate trust office of the Trustee at which at any particular time its corporate trust business shall be administered.

"Debtors" shall have the meaning ascribed to it in the preamble.

"Distribution Date" shall mean either (i) the 15th day of each calendar month or (ii) if the 15th day of a calendar month is not a Business Day, the Business Day following the 15th day of such calendar month, except as otherwise provided in Section 4.02 with respect to the initial Distribution Date, the fifth Business Day following any receipt of funds from the Liquidating Trust. If in the reasonable judgment of the Trustee it shall question the appropriateness, propriety or correctness of any distribution, then the Trustee may delay such distribution until such time after which the Trustee has obtained further guidance or direction in accordance with the terms of this Agreement.

"Effective Date" shall mean the date on which the Plan becomes effective, in accordance with its terms.

"Eligible Accounts" shall mean either (a) a segregated account or accounts maintained with a federal or state chartered depository institution or trust company the long-term or short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the long-term or short-term unsecured debt obligations of such holding company) are rated by any Rating Agency in one of its two highest long-term rating categories or one of its two highest short-term ratings with respect to obligations maturing in less than thirty (30) days or in highest short-term rating with respect to obligations maturing in more than thirty (30) days at the time any amounts are held in deposit therein, or (b) a segregated trust account or accounts maintained with a federal or state chartered depository institution or trust company, acting in the capacity of a trustee. Eligible Accounts need not be interest-bearing accounts provided the funds therein may be invested in Permitted Investments. All accounts maintained with the Trustee shall constitute Eligible Accounts.

"Final Distribution Date" shall have the meaning specified in Section 8.02.

"Indemnified Parties" shall have the meaning specified in Section 6.04.

"IRS" shall mean the United States Internal Revenue Service.

"Letter Ruling" shall mean a written statement issued by the Internal Revenue Service to a taxpayer (or the taxpayer's authorized representatives) in response to a written inquiry from the taxpayer, or its representatives, about the tax effects of acts or proposed transactions, as set forth in Rev. Proc. 2013-1, Sec. 2.01, 2013-1 IRB 1.

"Liquidating Trust" shall have the meaning ascribed to it in the recitals.

"Liquidating Trust Agreement" shall have the meaning ascribed to it in the recitals.

"Liquidating Trust Units" shall have the meaning ascribed to it in the recitals.

"Majority Beneficiaries" shall mean two (2) or more QSF Beneficiaries who collectively hold at least 51% of the QSF Representative Shares.

"Officer" shall mean: (i) when used with respect to the Trustee, any senior vice president or vice president in the Corporate Trust Office of the Trustee, and (ii) when used with respect to any other Person, the chairman of the board, the president, a vice president (however designated), the treasurer or controller.

"Opinion of Counsel" shall mean a written opinion of legal counsel delivered to the Trustee or any QSF Beneficiary, as the case may be, in each case in form and substance reasonably acceptable to the parties to whom it is delivered; provided, however, that any opinion with respect to tax matters shall be made by a law firm having a national reputation for expertise in such matters.

"Permitted Investments" shall consist of money market funds rated in the highest long-term rating category by any Rating Agency:that have a credit rating of at least "Aa3" by Moody's and "AA-" by Standard & Poor's; provided, however, that no such investment shall constitute a Permitted Investment unless such investment matures no later than the Business Day immediately preceding the Distribution Date on which the funds invested therein are required to be distributed (or, in the case of an investment that is an obligation of the institution in which the account is maintained, no later than such Distribution Date); and provided further, that no such investment shall constitute a Permitted Investment if it gives rise to payments that would be subject to U.S. federal withholding tax if held by a Person that is not a U.S. Person and that has provided applicable U.S. federal tax forms. Permitted Investments may include such investments for which the Trustee or any of its Affiliates is investment manager or advisor. The Trustee or its respective Affiliates are permitted to receive additional compensation that could be deemed to be in their respective economic self interest for (i) serving as an investment advisor, administrator, shareholder, servicing agent, custodian or sub-custodian with respect to Permitted Investments, (ii) using Affiliates to effect transactions in Permitted Investments, and (iii) effecting transactions in Permitted Investments.[2]

---

[2] To be discussed among the RMBS Trustees.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust (including any beneficiary thereof), unincorporated organization or government or any agency or political subdivision thereof.

"Plan" shall have the meaning ascribed to it in the recitals.

"QSF Beneficiaries" means each of the entities listed on Schedule 1 attached hereto and any such successor to such entities, each of whom has an interest in the Trust Estate in their respective capacities as trustees of each of the RMBS Trusts for which they serve in such capacity.

"QSF Interests" shall mean an uncertificated beneficial interest in the QSF Trust.

"QSF Representative Share" shall mean a QSF Beneficiary's representative share of the total QSF Interests in the QSF Trust, which is held from time to time in its respective capacities as trustee of each of the RMBS Trusts for which it serves as trustee, which is will initially be reflected on Schedule 1 hereto the Representative Share Schedules and shall be adjusted from time to time on the books and records of Trustee in accordance with Article VII.

"QSF Trust" shall have the meaning ascribed to it in the preamble.

"Rating Agency" shall mean any nationally recognized statistical rating agency, or its successor.  Except as otherwise specified herein, references to any long-term rating category of a Rating Agency shall mean such rating category without regard to any plus or minus or numerical designation.

"Record Date" shall mean the last Business Day of the month preceding the month of such Distribution Date.

"Representative Share Schedules" shall mean the schedules reflecting the initial QSF Representative Share and the initial RMBS Representative Share filed with the Bankruptcy Court, a copy of which will be provided to the Trustee by or on behalf of the QSF Beneficiaries, it being understood and agreed that the Trustee shall have conclusive reliance thereon and shall have no obligation to make any distributions hereunder in the absence of receipt of such Representative Share Schedules.

"Required Reserve Amount" shall mean [$1,000,000].$1,000,000.

"ResCap" shall have the meaning ascribed to it in the preamble.

"Reserve Account" shall have the meaning specified in Section 4.01(a)(ii).

"RMBS Claims Units" shall mean any and all Liquidating Trust Units issued to the QSF Trust on account of the claims of the RMBS Trusts (as such term is defined in the Plan) under the Liquidating Trust Agreement.  For the avoidance of doubt, "RMBS Claims Units" shall not include the five and seven-tenths percent (5.7%) of the Liquidating Trust Units that would otherwise be issuable to the QSF Trust that shall be issued to counsel for the Institutional Investors in satisfaction of the Allowed Fee Claim, in accordance with the terms of the Plan.

"RMBS Representative Share" shall mean each RMBS Trust's representative share of the total QSF Interests allocable to its applicable QSF Beneficiary, which ~~is~~will initially be reflected on ~~Schedule 2 hereto~~the Representative Share Schedules and shall be adjusted from time to time on the books and records of the Trustee in accordance with Article VII.

"RMBS Trusts" shall mean the RMBS Trusts listed on ~~Schedule 2 hereto~~the Representative Share Schedules.

"Termination Event" shall have the meaning specified in Section 8.01.

"Transferee" shall have the meaning specified in Section 7.02.

"Treas. Reg." shall have the meaning specified in Section 2.09(a).

"Trust Accounts" shall mean the Collection Account and the Reserve Account.

"Trust Estate" shall mean: (a) the RMBS Claims Units together with all payments due thereon, (b) all present and future claims, demands, causes and choses in action in respect of payments or distributions on the RMBS Claims Units including all rights of beneficiaries under the Liquidating Trust Agreement based thereon, (c) all funds held in the Trust Accounts from time to time, and (d) all proceeds of the foregoing of every kind and nature whatsoever, including, without limitation, all proceeds of the conversion thereof, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property that at any time constitute all or part of or are included in the proceeds of the foregoing.

"Trustee" shall have the meaning ascribed to it in the preamble and any successor trustee appointed in accordance with this Agreement.

**Section 1.02   Interpretation.**

In this Agreement:

(a)     "or" is not exclusive;

(b)     "including" means "including without limitation";

(c)     any reference to the singular includes reference to the plural and vice versa and reference to the masculine gender includes reference to the feminine and neuter genders and *vice versa*;

(d)     unless otherwise expressly stated to the contrary herein, any reference to any Section, sub-section, paragraph or sub-paragraph is to a Section, sub-section, paragraph or sub-paragraph (as the case may be) of this Agreement;

(e)      the headings are inserted for convenience of reference only and shall not in any way form part of or affect or be taken into account in the construction or interpretation of any provision of this Agreement or the ~~Schedules~~Schedule hereto; and

(f)      the ~~Recitals~~recitals and ~~Schedules~~Schedule form part of this Agreement and shall have the same force and effect as if they were expressly set out in the body of this Agreement and any references to this Agreement shall include the ~~Recitals~~recitals and ~~Schedules~~Schedule.

## ARTICLE II

### ESTABLISHMENT OF THE QSF TRUST

**Section 2.01    Name.**

The trust created hereby shall be known as the "RMBS Claims Trust", in which name the Trustee may conduct the affairs of the QSF Trust.  It is the intention of the parties hereto that the QSF Trust hereby created constitutes a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C., §3801 et seq. and that this Agreement constitutes the governing instrument of the QSF Trust. The Trustee, pursuant to the original trust agreement, filed a certificate of trust with the Delaware Secretary of State.

**Section 2.02    Office.**

The office of the QSF Trust shall be in care of the Trustee at its corporate trust office or at any other address that the Trustee may designate by written notice to the QSF Beneficiaries.

**Section 2.03    Declaration of Trust.**

Upon the Effective Date, the Trustee shall have all the rights, powers and duties set forth herein~~, in the Plan~~ and pursuant to applicable law for accomplishing the purposes of the QSF Trust.  The Trustee is hereby authorized to file with any governmental authority any documents necessary to establish the QSF Trust.

**Section 2.04    Issuance of RMBS Claims Units and Related Distributions.**

On the Initial Unit Distribution Date (as such term is defined in the Plan), the QSF Trust shall accept the ~~number of Liquidating Trust~~RMBS Claims Units issued to the QSF Trust on such date pursuant to the Liquidating Trust Agreement and thereafter the QSF Trust shall accept any distributions made by the Liquidating Trust in respect of any Liquidating Trust Units held by the QSF Trust from time to time ~~in accordance with~~pursuant to the Liquidating Trust Agreement, in all cases in trust for the benefit of the QSF Beneficiaries.

**Section 2.05    Appointment of Trustee.**

[U.S. Bank Trust National Association] is hereby appointed as trustee of the QSF Trust effective as of the date hereof, and shall have the rights, powers, and duties set forth herein.

**Section 2.06    Acceptance of Trust.**

The Trustee agrees to accept and hold the Trust Estate in trust for the QSF Beneficiaries, subject to the terms of this Agreement.

**Section 2.07    Activities of the Trust.**

It is the intention of the parties hereto that the QSF Trust shall not engage in any business or activities other than in connection with, or relating to the following:

(a)    to register on its books and records uncertificated beneficial interests to the QSF Beneficiaries;

(b)    to accept distributions of RMBS Claims Units and related cash distributions from the Liquidating Trust and make distributions to the QSF Beneficiaries from time to time;

(c)    to hold, transfer and/or invest the assets included in the Trust Estate and take such other actions with respect to the RMBS Claims Units as are permitted to be taken by the holders of the RMBS Claims Units pursuant to the Liquidating Trust Agreement, in accordance with this Agreement, or by the Trustee to enforce its rights under this Agreement;

(d)    to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(e)    to seek a Letter Ruling from the IRS regarding, among other things, the status of the QSF Trust as a qualified settlement fund within the meaning of Section 468B of the Code and to the status of its RMBS Claims Units as qualified reserve assets within the meaning of Code Section 860G(a)(7), and Treasury Regulations promulgated thereunder, and to grant powers of attorney in connection therewith.

**Section 2.08    Purpose, Limitations of the Trust.**

(a)    Except as otherwise expressly provided herein, the business and affairs of the QSF Trust will be managed by or under the direction of the Trustee.

(b)    The QSF Trust will conduct its business under names or tradenames so as not to mislead others as to the separate identity of the QSF Trust.  Without limiting the generality of the foregoing, all oral and written communications, including letters, invoices, contracts, statements and applications, will be made solely in the name of the QSF Trust or in the name of the QSF Trustee in its capacity as such if related to the Trust.

(c)    There will not be any indebtedness relating to borrowings or loans between the QSF Trust and the Liquidating Trust or its Affiliates.

(d)    The QSF Trust will act solely in its name through the Trustee's duly authorized officers or agents in the conduct of its business.  The QSF Trust will not:  (i) operate

or purport to operate as an integrated, single economic unit with respect to the Liquidating Trust or any other Affiliated or unaffiliated entity or any other Person; (ii) seek or obtain credit or incur any obligation to any third party based upon the assets of the Liquidating Trust or its Affiliates; or (iii) induce any such third party to reasonably rely on the creditworthiness of the Liquidating Trust or any other Affiliated or unaffiliated entity.

(e)    The QSF Trust will maintain a Delaware trustee with a principal place of business in the State of Delaware.

(f)    The QSF Trust will keep its funds and other assets separate from the Liquidating Trust and will not commingle such funds and other assets with those of any other Affiliates thereof.

(g)    Any financial statements prepared by the QSF Trust shall be separate from those of the Liquidating Trust and any other Affiliates.

### Section 2.09    Section 468B Qualified Settlement Fund.

(a)    It is intended and it is contemplated in the Plan that the QSF Trust established hereunder will qualify as, and remain, a "Qualified Settlement Fund" within the meaning of Section 468B of the Code, and the Regulations promulgated pursuant thereto and codified at 26 C.F.R. Sections 1.468B-1 through 1.468B-5. It is further intended that the RMBS Claims Units will be treated as qualified reserve assets within the meaning of Code Section 860G(a)(7) and the Regulations promulgated pursuant thereto. For income tax purposes, Ally Financial Inc. ("Ally") shall be classified as a "transferor" within the meaning of Regulation Section 1.468B-1(d)(1), 26 C.F.R. ("Treas. Reg.") Section 1.468B-1(d)(1). The Trustee, shall be classified as the "administrator" within the meaning of Treas. Reg. Section 1.468B-2(k)(3).

(b)    It is further intended that all transfers to the QSF Trust will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Code and Treas. Reg. Section 1.461-1(a)(2).  As such, Ally shall not be taxed on the income of the QSF Trust. The QSF Trust shall be taxed on its modified gross income, excluding the sums, or cash equivalents of items, transferred to it.  All computations of the QSF Trust's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treas. Reg. Sections 1.468B-2(b)(1)-(4).

(c)    Subject to the applicable provisions of the Code, the Trustee shall cause to be filed, on behalf of the QSF Trust, all required federal, state, and local tax returns pursuant to the provisions of Treas. Reg. Section 1.468B-2(k).  Furthermore, pursuant to the provisions of Treas. Reg. Section 1.468B-2(1), the Trustee shall cause to be filed all required federal, state, and local information returns and ensure compliance with withholding and reporting requirements.  The Trustee may retain an independent, certified public accountant to consult with and advise the Trustee with respect to the preparation of any and all appropriate income tax returns, information returns, or compliance with withholding requirements.  Ally shall supply to the Trustee and to the IRS the statement described in Treas. Reg. Section 1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which Ally is treated for federal income tax purposes as making a transfer to the QSF Trust.

(d)     The Trustee shall be authorized to take all such actions, including such actions as may be consistent with those expressly set forth above, as may be necessary to ensure that the QSF Trust is treated as a Qualified Settlement Fund under Section 468B of the  Code, and the Regulations promulgated pursuant thereto.

(e)     Notwithstanding anything herein to the contrary, in the event that any portion of this Agreement shall at any time be considered not to be in compliance with Code Section 468B, as amended, together with any and all Treasury Regulations and IRS Notices, Announcements and directives thereunder, such offending Section of this Agreement shall be considered null, void, and of no effect, without any action by any court or by the Trustee.  The overarching purpose of this Agreement is to at all times be in compliance with Code Section 468B and all administrative authority and announcements thereunder.  In the event that this Section 2.09 applies to render an offending Section null, void, or of no effect, Section 8.059.05 of this Agreement shall still apply with respect to the remaining non-offending Sections of this Agreement.

## ARTICLE III

## QSF INTERESTS

### Section 3.01   Rights of QSF Beneficiaries.

Each QSF Beneficiary will be entitled to participate in the rights due to a QSF Beneficiary hereunder. Each QSF Beneficiary shall take and hold its QSF Interest subject to all of the terms and provisions of this Agreement.  No QSF Beneficiary shall have any title to, right to, possession of, management of or control of, the QSF Trust or the Trust Estate except as herein expressly provided.  The QSF Interests shall not be certificated.

### Section 3.02   No Legal Title in QSF Beneficiaries.

No QSF Beneficiary shall have legal title to any part of the Trust Estate.  No transfer by operation of law or otherwise, of the right, title and interest of any QSF Beneficiary in and to the Trust Estate or hereunder shall operate to terminate this QSF Trust or entitle any successor or transferee of such, QSF Beneficiary to an accounting or to the transfer to it of legal title to any part of the Trust Estate.

### Section 3.03   Identification of QSF Beneficiaries.

The initial QSF Beneficiaries are set forth on Schedule 1 hereto and shall be adjusted from time to time on the books and records of Trustee in accordance with the terms of Article VII. Except as otherwise required by law, references in this Agreement to the identification of QSF Beneficiaries and the providing of information to QSF Beneficiaries shall be read to mean QSF Beneficiaries of record as set forth on Schedule 1 hereto, as modified from time to time in accordance with the terms of Article VII.  Unless expressly provided herein, the Trustee may establish a record date, which it deems practicable for determining the QSF Beneficiaries for a particular purpose.

**Section 3.04    Deemed Majority Consent.**

The Majority Beneficiaries shall have the right to cause the institution of and to direct the time, manner, method and place of conducting any proceeding or exercising any power conferred on the Trustee hereunder; *provided*, *however*, that: (i) such direction shall not conflict with any rule of law, the Plan or this Agreement (ii) the Trustee shall not be required to undertake any action that might involve it in personal liability or require the expenditure of funds not available to it in the Reserve Account, unless the Trustee shall have been indemnified to its satisfaction, and (iii) the Trustee shall be entitled to condition its compliance with any such direction upon the receipt of an Opinion of Counsel that the directed action is authorized or permitted by this Agreement.

Notwithstanding anything contained herein to the contrary, with respect to any provision of this Agreement which permits or requires the consent of, or direction from, the Majority Beneficiaries prior to the Trustee acting hereunder, such consent of, or direction from, the Majority Beneficiaries shall be deemed to have been given if: (i) the Trustee sends written notice to all QSF Beneficiaries of such proposed action or omission, (ii) within sixty (60) days after delivery of such written notice to the QSF Beneficiaries, the Trustee does not receive the consent of or direction from the Majority Beneficiaries, (iii) after such sixty (60) day period has expired, the Trustee receives the consent of, or direction from, at least one QSF Beneficiary with respect to such proposed action or omission, and (iv) the Trustee does not receive written notice from QSF Beneficiaries holding at least fifty-one percent (51%) of the QSF Representative Shares opposing such proposed action or omission; *provided*, *however*, that no deemed direction shall be effective hereunder to the extent that it has the effect of denying an RMBS Trust the right to receive payments in respect of its RMBS Representative Share unless the Trustee shall have also received the consent of the QSF Beneficiary for such affected RMBS Trust.  The Trustee shall incur no liability to any QSF Beneficiary, any RMBS Trust or any other Person for acting or omitting to act based upon the foregoing deemed consent.  The Trustee shall have no duties or responsibility with respect to the compliance by the QSF Beneficiaries with respect to their duties with respect to the RMBS Trusts, including without limitation relating to their authority to act with respect to any RMBS Trusts.

## ARTICLE IV

## ACCOUNTS, DEPOSITS AND DISTRIBUTIONS

**Section 4.01    Establishment of Trust Accounts.**

(a)    The Trustee shall establish and maintain the following non-interest-bearing trust accounts in the name of the Trustee on behalf of the QSF Trust for the QSF Beneficiaries as provided in this Agreement:

(i)    the collection account (the "Collection Account"); and

(ii)    the reserve account (the "Reserve Account").

The trust accounts will be non-interest bearing but collected funds therein will be invested in accordance with Section 4.04 hereof.

(b)    The Trustee shall have the right to create one or more sub-accounts, as needed, for operation purposes.

(c)    The Trust Accounts shall be Eligible Accounts.

**Section 4.02    Collection Account.**

(a)    <u>Deposits</u>.  Within one (1) Business Day of receipt, the Trustee shall deposit into the Collection Account the amounts received as distributions or payments on the RMBS Claims Units.

(b)    <u>Withdrawal</u>.  On each Distribution Date, the Trustee shall withdraw all Available Funds in the Collection Account to be distributed as follows:

(i)    First, to the Trustee for payment of any fees, expenses, indemnities or other amounts due to the Trustee under this Agreement;

(ii)    Second, to the Reserve Account until the balance in the Reserve Account equals the Required Reserve Amount;

(iii)    Third, ratably to each QSF Beneficiary in accordance with such QSF Beneficiary's QSF Representative Share, for further distribution by each QSF Beneficiary to its applicable RMBS Trusts in accordance with such RMBS Trusts' RMBS Representative Share.

The Trustee shall have no duties to the RMBS Trusts and responsibility for distributions by the QSF Beneficiaries to the RMBS Trusts or any investors of any RMBS Trust.  Notwithstanding the forgoing and without limiting any other rights of the Trustee hereunder, the first Distribution Date shall, subject to Section 4.05 hereof, occur on the fifteenth Business Day following the date that the Trustee receives a distribution from the Liquidating Trust.

**Section 4.03    Reserve Account.**

(a)    <u>Deposits</u>.  On each Distribution Date, the Trustee shall deposit funds into the Reserve Account in accordance with <u>Section 4.02</u> until funds in the Reserve Account equal the Required Reserve Amount.

(b)    <u>Withdrawal</u>.  The Trustee may withdraw amounts held on deposit in the Reserve Account at any time for payment of any fees, expenses, indemnities or other amounts due to the Trustee under this Agreement.  So long as there are no claims, causes of actions, suits or other similar litigation proceedings commenced, asserted or threatened against the Trustee related to, connected with or directly or indirectly arising out of this Agreement, then upon the third anniversary of the Final Distribution Date, the Trustee shall distribute any amounts then held in the Reserve Account ratably to each QSF Beneficiary (as of the Record Date related to the Final Distribution Date) in accordance with such QSF Beneficiary's QSF Representative

Share (as of the Record Date related to the Final Distribution Date), for further distribution by each QSF Beneficiary to its applicable RMBS Trusts in accordance with such RMBS Trusts' RMBS Representative Share.[3]

### Section 4.04    Investments.

The Trustee shall invest funds held in the Trust Accounts in Permitted Investments.  In no event shall the Trustee be liable for the selection of investments or for investment losses incurred thereon.  The Trustee shall have no liability in respect of losses incurred as a result of the liquidation of any investment prior to its stated maturity.

### Section 4.05    Payments to QSF Beneficiaries.

Any and all distributions from the Trust Accounts to be made by the Trustee to the QSF Beneficiaries shall be made by wire transfer pursuant to the respective wire transfer details for such QSF Beneficiaries listed on Schedule 4.as provided in writing by the respective QSF Beneficiary prior to the initial Distribution Date (it being understood and agreed that any distribution by the Trustee to a QSF Beneficiary may be delayed up to ten (10) days after the receipt of such wire transfer instructions and further that it is currently contemplated that no more than three (3) separate wire transfers per QSF Beneficiary would be made on each Distribution Date), which such wire transfer instructions may be amended from time to time in writing provided to the Trustee in a timely manner.

### Section 4.06    Record Date.

Payments to the QSF Beneficiaries on any Distribution Date will be made to the QSF Beneficiaries of record of the respective QSF Interests on the related Record Date.

**ARTICLE V**

**[ RESERVED ]**

**ARTICLE VI**

**CONCERNING THE TRUSTEE**

### Section 6.01    Duties of the Trustee.

Every provision of this Agreement relating to the conduct of, affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Article VI.  The Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Agreement and no implied covenants or obligations shall be read into this Agreement against the Trustee.  Except as provided in Section 6.02, no provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct; *provided, however,* that:

---

[3] QSF Trustee discussing period for holdback of reserve funds after Final Distribution Date.

(a)    the Trustee shall not be liable for an error of judgment made in good faith by an Officer of the Trustee, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts;

(b)    with respect to any trust or power conferred upon the Trustee under this Agreement, the Trustee shall not be personally liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of the Majority Beneficiaries (including, without limitation, any deemed direction pursuant to Section 3.04 of this Agreement) or such other percentage as may be specified herein;

(c)    any determination of negligence or willful misconduct of the Trustee shall be made only upon the rendering of a final judgment of a court of competent jurisdiction no longer subject to appeal or review; and

(d)    the Trustee shall be deemed to be acting solely in its capacity as Trustee in connection with the administration of the QSF Trust and not in its individual capacity, and as such, shall not be individually responsible for the payment of any obligations or liabilities of the QSF Trust, including, without limitation, liabilities of the QSF Trust for the payment of taxes; and

(e)    the Trustee shall forward a copy of any notice it receives in respect of the RMBS Claims Units or this Agreement to each of the QSF Beneficiaries.

**Section 6.02    Certain Matters Affecting the Trustee.**

(a)    The Trustee may conclusively rely and shall be fully protected in acting or refraining from acting upon any resolution, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

(b)    The Trustee may, in the absence of bad faith on its part, rely upon a certificate of an Officer of the appropriate Person whenever in the administration of this Agreement the Trustee shall deem it desirable that a matter be proved or established (unless other evidence be herein specifically prescribed) prior to taking, suffering or omitting any action hereunder.

(c)    The Trustee may consult with counsel of its own selection and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by it hereunder in good faith and in accordance with such advice or Opinion of Counsel.

(d)    The Trustee shall be under no obligation to exercise any of the trusts or powers vested in it by this Agreement or to institute, conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any or all of the QSF Beneficiaries, pursuant to the provisions of this Agreement, unless such QSF Beneficiaries shall have offered to the Trustee security or indemnity satisfactory to it against the costs, expenses and liabilities which may be incurred therein or thereby.

14

(o)    Except as otherwise instructed pursuant to the express requirements of this Agreement, the Trustee shall have no duty (i) to see to any recording, filing, or depositing of the this Agreement or any agreement referred to herein or any financing statement or continuation statement evidencing a security interest, or to see to the maintenance of any such recording or filing or depositing or to any re-recording, re-filing or re-depositing of any thereof, (ii) to see to any insurance, (iii) to see to the payment or discharge of any tax, assessment, or other governmental charge or any lien or encumbrance of any kind owing with respect to, assessed or levied against, any part of the Trust Estate, or (iv) to confirm or verify the contents of any reports or certificates delivered to the Trustee pursuant to this Agreement believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties.

(p)    The Trustee shall have no liability or responsibility for the acts or omissions of any other party to any this Agreement or any related document.

(q)    The Trustee shall have no duty or obligation to obtain or solicit any collateral or any funds to be remitted in any of the accounts established under this Agreement, and shall have a duty only to accept such funds delivered to it in accordance with this Agreement.

(r)    The Trustee shall have no duties to any Person or entity other than to the QSF Beneficiaries of record to the extent expressly set forth herein, and without limitation, shall have no other duties to any RMBS Trust or any investor or other party in interest in such RMBS Trust.

(s)    The Trustee shall have no duty to investigate, monitor or challenge any action of the Liquidating Trustees (as such term is defined in the Liquidating Trust Agreement) relating to the administration of the Liquidating Trust, and shall not be responsible for any failure of the Liquidating Trustees to carry out any of its duties thereunder, whether or not the Trustee is aware of such failure.

(t)    Without limitation of any of the foregoing, the Trustee is not responsible for the REMIC status or any other tax consequence related to any RMBS Trust, and shall have no obligation to seek or obtain any rulings from the IRS with respect thereto in the Letter Ruling or otherwise except as specified in Section 2.07(e).

(u)    The Trustee is authorized to seek a judicial instruction with respect to any action or omission that is the subject of this Agreement.

**Section 6.03    Trustee Not Liable for QSF Interests or RMBS Claims Units.**

The recitals and factual statements contained in this Agreement shall be taken as the statements of the Debtors, and the Trustee assumes no responsibility for their correctness. The Trustee makes no representations or warranties as to the validity or sufficiency of this Agreement or of any RMBS Claims Units or related document, including the correctness of the initial amounts and percentages set forth on ~~Schedule 1 and Schedule 2.~~ the Representative Share Schedules.    The Trustee shall not be accountable for the use or application of any funds in respect of the RMBS Claims Units or deposited into or withdrawn from the Trust Accounts in accordance with this Agreement.    The Trustee shall have no responsibility or obligation to

monitor any other Person's compliance with the Liquidating Trust Agreement. The Trustee makes no representations or warranties whatsoever with respect to the tax status or consequences of this QSF Trust to any person of entity, and all QSF Beneficiaries and each RMBS Trust shall rely solely upon their own tax advice with respect thereto.

**Section 6.04    Trustee's Fees and Expenses.**

(a)    Fees.

The Trustee from time to time shall be entitled to reasonable compensation for its services which shall not be limited by any law on compensation of a trustee of an express trust. Such fees shall be set forth on a fee schedule to be provided by the Trustee to the QSF Beneficiaries prior to the date of this Agreement.

(b)    Expenses.

The Trustee shall be entitled to the payment of all expenses incurred or made by the Trustee hereunder, including, but not limited to, costs of collection, costs of preparing and reviewing reports, certificates and other documents, costs of preparation and mailing of notices to QSF Beneficiaries and costs of counsel, in addition to the compensation for its services. Such expenses shall include the compensation and expenses, disbursements and advances of the Trustee's agents, counsel, accountants and experts.

(c)    QSF Trust Indemnity; Limited Recourse.

The QSF Trust shall indemnify, defend and hold harmless the Trustee or any predecessor Trustee in each of its capacities hereunder and in any other document related thereto, and each of its officers, directors, employees, representatives, counsel and agents (collectively, the "Indemnified Parties") from and against, and reimburse the Indemnified Parties for, any and all claims, losses, liabilities, obligations, damages, injuries, penalties, stamp or other similar taxes, actions, suits, judgments, costs and expenses (including, but not limited to, attorneys' fees and expenses) of whatever kind or nature regardless of their merit, demanded, asserted or claimed against an Indemnified Party directly or indirectly relating to or arising from, claims against an Indemnified Party by reason of its participation in the transactions contemplated hereby, the administration of this trust and the performance of its duties hereunder and any related document, as the case may be, including the costs and expenses of enforcing this Agreement (including this Section 6.04), or any related document and of defending itself against any claims (whether asserted by any QSF Beneficiary or otherwise); *provided*, *however*, that the QSF Trust need not indemnify against any loss, liability or expense incurred by an Indemnified Party as a result of its own negligence or willful misconduct, as conclusively determined by the final judgment of a court of competent jurisdiction, no longer subject to appeal or review.

Any fees, expenses and indemnities due to the Trustee pursuant to this Section 6.04 shall be payable to the Trustee solely from funds held in the Collection Account and the Reserve Account pursuant to Section 4.02(b).

**Section 6.07    Merger or Consolidation of Trustee.**

Any corporation into which the Trustee may be merged or converted or with which it may be consolidated or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to the business of the Trustee, shall be the successor of the Trustee under this Agreement provided such corporation shall be eligible under the provisions of <u>Section 6.05</u>, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

## ARTICLE VII

## TRANSFERS OF QSF INTERESTS

**Section 7.01    Transfers by RMBS Trust.**

An RMBS Trust may not transfer its interest in the RMBS Claims Units.

**Section 7.02    Transfers by QSF Beneficiaries.**

(a)    Solely in connection with its resignation or removal as trustee of one or more RMBS Trusts (such affected RMBS Trusts are referred to herein as the "<u>Affected RMBS Trusts</u>"), a QSF Beneficiary may transfer its QSF Representative Shares related to such Affected RMBS Trusts to an entity or entities that will act as successor trustee (such entity or entities, collectively the "<u>Transferees</u>") of such Affected RMBS Trusts.

(b)    The transferring QSF Beneficiary shall provide at least ten (10) days prior written notice to the Trustee of such transfer, which notice shall contain the name, contact details and wiring instructions of the Transferees.  The QSF Beneficiary shall also provide the Trustee with such other information as the Trustee may reasonably request in connection with such transfer.

(c)    In connection with any transfer contemplated by this <u>Article VII</u>, the Trustee shall modify Schedule 1 in respect of any such Transferees and shall adjust each QSF Beneficiary's QSF Representative Share and each RMBS Trust's RMBS Representative Share set forth on ~~Schedule 1 and Schedule 2,~~ the Representative Share Schedules, respectively, to reflect any such transfer.  The Trustee shall provide a copy of such modified Representative Share Schedules to each QSF Beneficiary.

## ARTICLE VIII

## TERMINATION OF QSF TRUST

**Section 8.01    Termination.**

The QSF Trust shall terminate and the obligations and responsibilities of the Trustee created hereby shall terminate upon the earlier to occur of: (i) its receipt of written notice from the Liquidating Trust of the sale, liquidation or other disposition of all of the Liquidating Trust

(d)    Miscellaneous.

The manner of obtaining such consents and of evidencing the authorization of the execution thereof by QSF Beneficiaries shall be subject to such reasonable regulations as the Trustee may prescribe.

**Section 9.02    Counterparts.**

This Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute but one and the same instrument.  Delivery of a counterpart of this Agreement by facsimile or email in portable document format (pdf) shall be deemed to be delivery of original signatures for all purposes hereof.

**Section 9.03    Limitation on Rights of QSF Beneficiaries.**

(a)    No QSF Beneficiary shall have any right to vote or in any manner otherwise control the operation and management of the QSF Trust or the obligations of the parties hereto except as expressly provided for in this Agreement, and nothing herein set forth shall be construed so as to constitute the QSF Beneficiaries from time to time as partners or members of an association.

(b)    No QSF Beneficiary shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless the Majority Beneficiaries shall have made written request upon the QSF Trust or the Trustee on behalf of the QSF Trust to institute such action, suit or proceeding in the name of the QSF Trust under this Agreement and shall have offered to the Trustee such indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee on behalf of the QSF Trust, for sixty (60) days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding.  For the protection and enforcement of the provisions of this Section, each and every QSF Beneficiary and the Trustee shall be entitled to such relief as can be given either at law or in equity.

**Section 9.04    Notices.**

(a)    All directions, demands and notices hereunder shall be in writing and shall be deemed to have been duly given when sent by facsimile transmission, first class mail or delivered to:

(i)    in the case of the Trustee, 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware 19801-1515, Attention:  [_____]:Corporate Trust Officer – Re:  ResCap RMBS Claims Trust.

with a copy to:  Maslon Edelman Borman & Brand, LLP, 3300 Wells Fargo Center, 90 South 7th Street, Minneapolis, MN 55402, Attention:  Clark Whitmore and Brian Klein; and

(ii)      in the case of any QSF Beneficiary, at the address of such QSF Beneficiary as shown on Schedule 31 hereto.

(b)      Notice may also be delivered by email in accordance with such other side letter agreement entered into between the parties. Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have been duly given, whether or not a QSF Beneficiary receives such notice.  A copy of any notice required to be telecopied hereunder also shall be mailed to the appropriate party in the manner set forth above.  A copy of any notice given hereunder to any other party shall be delivered to the Trustee.

### Section 9.05    Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then, to the fullest extent permitted by law, such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or the rights of the QSF Beneficiaries thereof.

### Section 9.06    Third Party Beneficiaries.

Nothing in this Agreement, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, the QSF Beneficiaries and the Indemnified Parties with respect to Section 6.04(c), any benefit or any legal or equitable right, remedy or claim under this Agreement.

### Section 9.07    Acts of QSF Beneficiaries.

Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement to be given or taken by QSF Beneficiaries may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such QSF Beneficiaries in person or by agents duly appointed in writing; and except as herein otherwise expressly provided such action shall become effective when such instrument or instruments are delivered to the Trustee.  Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Agreement and conclusive in favor of the Trustee.  The fact and date of the execution by any Person of any such instrument or writing may be proved in any manner that the Trustee deems sufficient.  The ownership of QSF Interests shall be proved by Schedule 1the Representative Share Schedules as the same may be modified from time to time in accordance with the terms of Article VII.

### Section 9.08    Headings.

Section and subsection headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.

**IN WITNESS WHEREOF**, ResCap, the other Debtors and the Trustee have caused this Trust Agreement to be duly executed by their respective officers thereunto duly authorized and all as of the day and year first above written.

RESIDENTIAL CAPITAL
Residential Capital, LLC

By: _____
Name: ___ William Thompson
Title: ____ General Counsel

Name: _____
Its: _____


[ _____ ]


By: _____

Name: _____
Its: _____
Name: Jill Horner
Title: ___ Chief Finance Executive

AKA 13, LLC (f/k/a ditech, LLC), DOA Holding Properties, LLC, DOA Properties IX (Lots-Other), LLC, EPRE LLC, Equity Investment I, LLC, ETS of Virginia, Inc., ETS of Washington, Inc., Executive Trustee Services, LLC, GMAC-RFC Holding Company, LLC, GMAC Model Home Finance I, LLC, GMAC Mortgage USA Corporation, GMAC Mortgage, LLC, GMAC Residential Holding Company, LLC, GMAC RH Settlement Services, LLC, GMACM Borrower LLC, GMACM REO LLC, GMACR Mortgage Products, LLC, HFN REO SUB II, LLC, Home Connects Lending Services, LLC, Homecomings Financial Real Estate Holdings, LLC, Homecomings Financial, LLC, Ladue Associates, Inc., Passive Asset Transactions, LLC, PATI A, LLC, PATI B, LLC, PATI Real Estate Holdings, LLC, RAHI A, LLC, RAHI B, LLC, RAHI Real Estate Holdings, LLC, RCSFJV2004, LLC, Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation,

Residential Consumer Services of Alabama, LLC, Residential Consumer Services of Ohio, LLC, Residential Consumer Services of Texas, LLC, Residential Consumer Services, LLC, Residential Funding Company, LLC, Residential Funding Mortgage Exchange, LLC, Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc., Residential Funding Real Estate Holdings, LLC, Residential Mortgage Real Estate Holdings, LLC, RFC – GSAP Servicer Advance, LLC, RFC Asset Holdings II, LLC, RFC Asset Management, LLC, RFC Borrower LLC, RFC Construction Funding, LLC, RFC REO LLC and RFC SFJV-2002, LLC

By: _____
Name:    William Thompson
Title:    General Counsel

By: _____
Name:    Jill Horner
Title:    Chief Financial Officer

**[U.S. BANK TRUST NATIONAL ASSOCIATION]**  **not in its individual capacity, but solely** as Trustee

By: _____
_____
_____
_____
Name: _____
_____
_____
Its: _____

Title: _____

Acknowledged and Agreed
Solely with Respect to Section
2.09 Hereof:

ALLY FINANCIAL INC.

By:
Name:
Title:

## SCHEDULE 1

**QSF BENEFICIARIES AND QSF REPRESENTATIVE SHARESCONTACT
INFORMATION**

| QSF BENEFICIARY[4] | QSF REPRESENTATIVE SHARE |
|---|---|
| The Bank of New York Mellon | |
| The Bank of New York Mellon Trust Company, N.A. | |
| Deutsche Bank Trust Company Americas | |
| Deutsche Bank National Trust Company | |
| U.S. Bank National Association | |
| Wells Fargo Bank, N.A. | |
| Law Debenture Trust Company of New York | |
| HSBC Bank USA National Association | |
| Citibank, N.A. | |
| Wilmington Trust Company | |

---

[4] Each QSF Beneficiary will be acting on behalf of their respective RMBS Trusts listed on Schedule 2.

1

## SCHEDULE 2

### RMBS TRUSTS AND RMBS REPRESENTATIVE SHARES

### QSF Beneficiary - The Bank of New York Mellon

| RMBS TRUST | RMBS REPRESENTATIVE SHARE |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

### QSF Beneficiary – The Bank of New York Mellon Trust Company, N.A.

| RMBS TRUST | RMBS REPRESENTATIVE SHARE |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

### QSF Beneficiary – Deutsche Bank Trust Company Americas

| RMBS TRUST | RMBS REPRESENTATIVE SHARE |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

### QSF Beneficiary – Deutsche Bank National Trust Company

| RMBS TRUST | RMBS REPRESENTATIVE SHARE |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

2

**QSF Beneficiary — U.S. Bank National Association**

| RMBS TRUST | RMBS REPRESENTATIVE SHARE |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |

**QSF Beneficiary — Wells Fargo Bank, N.A.**

| RMBS TRUST | RMBS REPRESENTATIVE SHARE |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |

**QSF Beneficiary — Law Debenture Trust Company of New York**

| RMBS TRUST | RMBS REPRESENTATIVE SHARE |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |

**QSF Beneficiary — HSBC Bank USA National Association**

| RMBS TRUST | RMBS REPRESENTATIVE SHARE |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |

3

**QSF Beneficiary – Citibank, N.A.**

| RMBS TRUST | RMBS REPRESENTATIVE SHARE |
|---|---|
| | |
| | |
| | |
| | |
| | |

**QSF Beneficiary – Wilmington Trust Company**

| RMBS TRUST | RMBS REPRESENTATIVE SHARE |
|---|---|
| | |
| | |
| | |
| | |
| | |

4

## SCHEDULE 3

### CONTACT DETAILS FOR QSF BENEFICIARIES

The Bank of New York Mellon
[ _____ ]

The Bank of New York Mellon Trust Company, N.A.
[ _____ ]

Deutsche Bank Trust Company Americas
[ _____ ]

Deutsche Bank National Trust Company
[ _____ ]

U.S. Bank National Association
[ _____ ]

Wells Fargo Bank, N.A.
[ _____ ]

Law Debenture Trust Company of New York
[ _____ ]

HSBC Bank USA National Association
[ _____ ]

Citibank, N.A.
[ _____ ]

Wilmington Trust Company
[ _____ ]

The Bank of New York Mellon
6525 West Campus Oval
New Albany, Ohio 43054
Attn.:  Robert H. Major, Vice President
Telephone No.:  614-775-5278
Fax No.:  614-775-5636
Email:  robert.major@bnymellon.com

The Bank of New York Mellon Trust Company, N.A.
Global Trust-Mortgage Backed Securities
525 William Penn Place, 7th Floor
Pittsburgh, PA 15259
Attn.:  Jennifer J. Provenzano, Vice President

-5

Telephone No.  412-236-3140
Fax No.:  412-234-9019
Email No.  Jennifer.j.provenzano@bnymellon.com

Deutsche Bank Trust Company Americas
1761 East St. Andrew Place
Santa Ana, CA 92705-4934
Attn:  Residential Capital LLC/Ronaldo Reyes
Telephone No.  714-247-6320
Fax No.:  714-247-6478
Email:  ronaldo.r.reyes@db.com

And

Harborside Financial Center
100 Plaza One
MS: JCY03-0699
Jersey City, NJ 07311-3901
Attn:  Brendan Meyer
Telephone No.: 201-593-8545
Fax No.:  646-502-4546
Email: brendan.meyer@db.com

Deutsche Bank National Trust Company
1761 East St. Andrew Place
Santa Ana, CA 92705-4934
Attn:  Residential Capital LLC/Ronaldo Reyes
Telephone No.  714-247-6320
Fax No.:  714-247-6478
Email:  ronaldo.r.reyes@db.com

And

Harborside Financial Center
100 Plaza One
MS: JCY03-0699
Jersey City, NJ 07311-3901
Attn:  Brendan Meyer
Telephone No.: 201-593-8545
Fax No.:  646-502-4546
Email: brendan.meyer@db.com

U.S. Bank National Association
Corporate Trust Services Division
One Federal Street 3rd Floor
Boston, MA 02110

6

Mail Station: EX-MA-FED
Attention:     Laura L. Moran, Vice President
Telephone No.:     617-603-6429
Facsimile No.;:     617-603-6644
Email:    Laura.Moran@USBank.com

Wells Fargo Bank, N.A.
Sixth and Marquette
MAC N9311-161
Minneapolis, MN 55479
Attn: Mary L. Sohlberg, Structured Products
Group – Default and Restructuring (Rescap)
Telephone No.: 612-316-0737
Fax No.: 612-667-3464
Email: mary.l.sohlberg@wellsfargo.com

HSBC Bank USA, National Association
8 East 40th Street, 6th Floor
New York, NY 10016
Attn:  Fernando Acebedo
Telephone No.: 212-525-1309
Fax No.: 212-525-1300
Email: fernando.acebedo@us.hsbc.com

Citibank, N.A.
388 Greenwich Street, 14th Floor
New York, New York 10013
Attention:  Louis Piscitelli
Telephone No.:  212-816-5805
Fax No.: 212-816-5527
Email: Louis.A.Piscitelli@citigroup.com

Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1605
Attention:  Adam Scozzafava
Telephone No.:     302-636-6196
Fax No.:     302-636-4140
Email: ascozzafava@wilmingtontrust.com

Wilmington Trust, National Association
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1605
Attention:  Adam Scozzafava

7

Telephone No.:    302-636-6196
Fax No.:    302-636-4140
Email:    ascozzafava@wilmingtontrust.com


## SCHEDULE 4

## WIRE TRANSFER DETAILS FOR QSF BENEFICIARIES

The Bank of New York Mellon
[_____]

The Bank of New York Mellon Trust Company, N.A.
[_____]

Deutsche Bank Trust Company Americas
[_____]

Deutsche Bank National Trust Company
[_____]

U.S. Bank National Association
[_____]

Wells Fargo Bank, N.A.
[_____]

Law Debenture Trust Company of New York
[_____]

HSBC Bank USA National Association
[_____]

Citibank, N.A.
[_____]

Wilmington Trust Company
[_____]

SK 03687 0119 1416725 v12

9