**Hearing Date: January 9, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: December 30, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ ) | |
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered |
| -------------------------------------------------------------- ) | |

**NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND
554(a) OF THE BANKRUPTCY CODE FOR AN ORDER APPROVING
<u>ABANDONMENT OF DEBTORS' INTERESTS IN CERTAIN ESTATE ASSETS</u>**

　　　　**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Motion*

*Pursuant to Sections 105(a) and 554(a) of the Bankruptcy Code for an Order Approving*

*Abandonment of Debtors' Interests in Certain Estate Assets* (the "<u>Motion</u>").

　　　　**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take

place on **January 9, 2014 at 10:00 a.m. (prevailing Eastern Time)** before the

Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District

of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New

York 10004-1408, Room 501.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case

Management, and Administrative Procedures approved by the Bankruptcy Court [Docket

No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic

case filing system, and be served, so as to be received no later than **December 30, 2013**

**at 4:00 p.m. (Prevailing Eastern Time)**, upon (a) counsel to the Debtors, Morrison &

Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Gary S.

Lee, Lorenzo Marinuzzi and Jordan A. Wishnew); (b) the Office of the United States

Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick

Street, Suite 1006, New York, NY 10014 (Attention: Linda A. Riffkin and Brian S.

Masumoto); (c) the Office of the United States Attorney General, U.S. Department of

Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US

Attorney General, Eric H. Holder, Jr.); (d)  Office of the New York State Attorney

General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and Enid N.

Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New York, One

St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (f)

counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York,

NY 10022 (Attention: Richard M. Cieri and Ray Schrock); (g) counsel for the committee

of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the

Americas, New York, NY 10036 (Attention: Kenneth Eckstein and Douglas Mannal);

(h) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman);

(i) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention:  Thomas Walper and Seth Goldman);

(j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016); and (k) Securities and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos, Regional Director).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written objection to the relief requested in the Motion, the Bankruptcy Court may deem any opposition waived, treat the Motion as conceded, and enter an order granting the relief requested in the Motion without further notice or hearing.

Dated: December 17, 2013          Respectfully submitted,
      New York, New York

                              /s/ Lorenzo Marinuzzi
                              Gary S. Lee
                              Lorenzo Marinuzzi
                              Jordan A. Wishnew
                              MORRISON & FOERSTER LLP
                              1290 Avenue of the Americas
                              New York, New York 10104
                              Telephone: (212) 468-8000
                              Facsimile: (212) 468-7900

                              *Counsel to the Debtors and*
                              *Debtors in Possession*

**Hearing Date:  January 9, 2014 at 10:00 a.m. (Eastern Time)**
**Objection Deadline:  December 30, 2013 at 4:00 p.m. (Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————  )
                                                          )
In re:                                                   )     Case No. 12-12020 (MG)
                                                          )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,     )     Chapter 11
                                                          )
                                   Debtors.        )     Jointly Administered
————————————————————————  )

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 554(a) OF THE**
**BANKRUPTCY CODE FOR AN ORDER APPROVING ABANDONMENT OF**
**<u>DEBTORS' INTERESTS IN CERTAIN ESTATE ASSETS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

JURISDICTION ............................................................................................................... 3

BACKGROUND ............................................................................................................... 3

THE EXCLUDED ASSETS TO BE ABANDONED ....................................................... 5

    A.  NERDs ............................................................................................................. 5

    B. Trust Certificates ............................................................................................. 6

    C.  PFIC Equity ................................................................................................... 6

    D. Common Land ................................................................................................ 7

    E. HELOCs .......................................................................................................... 7

RELIEF REQUESTED .................................................................................................... 8

BASIS FOR RELIEF ....................................................................................................... 9

    i.  NERDs ............................................................................................................. 10

    ii. Trust Certificates ............................................................................................ 12

    iii. PFIC Equity ................................................................................................... 13

    iv. Common Land ............................................................................................... 14

    v. HELOCs ......................................................................................................... 14

NOTICE .......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re American Home Mortgage Holdings, Inc.*,
  Case No. 07-11047 (CSS) (Bankr. D. Del. January 4, 2008) ................................................. 15

*In re Crowthers McCall Pattern, Inc.*,
  114 B.R. 877 (Bankr. S.D.N.Y. 1990) ..................................................................................... 9

*In re Slack*,
  290 B.R. 282 (Bankr. D.N.J. 2003) .......................................................................................... 9

*Johnston v. Webster* (*In re Johnston*),
  49 F.3d 538 (9th Cir. 1995) ..................................................................................................... 12

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*,
  474 U.S. 494 (1986) .................................................................................................................. 9

*Reich v. Burke* (*In re Reich*),
  54 B.R. 995 (Bankr. E.D. Mich. 1985) ..................................................................................... 9

*TWA, Inc. v. Texaco, Inc. (In re Texaco, Inc.)*,
  92 B.R. 38 (S.D.N.Y. 1988) ...................................................................................................... 9

**STATUTES**

11 U.S.C. § 105(a) .......................................................................................................................... 9

11 U.S.C. § 554(a) .......................................................................................................................... 9

**OTHER AUTHORITIES**

2 Collier on Bankruptcy, ¶ 105.01 (15th ed. rev. 1999) ................................................................ 9

Treas. Reg. § 1.67-3T(a)(2)(i)(A) ................................................................................................. 11

Treas. Reg.  § 1.860E-1(c)(1)-(10) ............................................................................................... 12

TO:    THE HONORABLE MARTIN GLENN
       UNITED STATES BANKRUPTCY JUDGE

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or "ResCap")  hereby move (the "Motion") for entry of an order, the proposed form of which is attached hereto as Exhibit 1, pursuant to sections 105(a) and 554(a) of Title 11, United States Code, as amended (the "Bankruptcy Code") (i) approving the abandonment of: (A) non-economic residual interests ("NERDs") identified in Exhibit 2-A attached hereto, held by the Debtors arising out of the securitizations using real estate mortgage investment conduits ("REMICs"), (B) non-REMIC residual interests (the "Trust Certificates") identified in Exhibit 2-B attached hereto, (C) an equity interest in a passive foreign investment company ("PFIC") identified in Exhibit 2-C attached hereto, (D) interests in common land (the "Common Land") identified in Exhibit 2-D attached hereto, and (E) interests in "zero balance" home equity lines of credit ("HELOCs") identified in Exhibit 2-E (collectively, the "Property Interests"); and (ii) granting such other relief as is just and proper.  In support of this Motion, the Debtors rely upon and incorporate by reference the Declaration of William Tyson ("Tyson Decl."), a copy of which is annexed hereto as Exhibit 3.  In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.    The Court should grant the Debtors' request to abandon the Property Interests because none of these distinct groups of assets provides any material value or benefit to the Debtors' estates.  Courts have consistently held that debtors may abandon property interests that are burdensome or of inconsequential value.  The abandonment of the Property Interests is designed to shed burdensome property of the estate and minimize future losses to the Debtors' estates.

2.      For the reasons discussed in the Motion, the NERDs, Trust Certificates, PFIC

equity, Common Land and HELOCs provide no value to the Debtors' estates and only serve to

further augment the Debtors' liabilities.  Under the Plan, these assets compose the "Excluded

Assets" that are not being transferred to the Liquidating Trust.  Over the life of the respective

securitizations, the Debtors will not receive any cash on account of their interests in the NERDs or

PFIC equity, and only immaterial amounts of cash as to their interests in the Trust Certificates.  As

a result, the Debtors' estates (and by extension, the Liquidating Trust) do not gain anything by

keeping these interests.  Therefore, in an effort to minimize the Debtors' potential present and

future liabilities, the Debtors respectfully request that the Court permit the Debtors to abandon

their interests in the Property Interests identified in Exhibits 2-A to 2-C to the Motion, effective as

of December 17, 2013, because they are of inconsequential value and are burdensome to the

Debtors' estates.  Similarly, because the Common Land and HELOCs identified in Exhibits 2-D

and 2-E, respectively, have only immaterial value and the potential for the Debtors (and by

extension, the Liquidating Trust) to incur significant liabilities and expose themselves to

burdensome obligations going forward, the Debtors also request authority to abandon such assets.

3.      Therefore, in light of the anticipated transfer of the Debtors' remaining assets into

the Liquidating Trust, the proposed abandonment represents the Debtors' best and most

economical opportunity to dispose of the burdensome Property Interests.  The Debtors believe that

the abandonment of the Property Interests is fair and reasonable.  Therefore, the relief sought

should be approved.  Accordingly, with the Committee's support, the Debtors request that the

Court approve the Debtors' abandonment of the Property Interests as of the date of the filing of this

Motion.

## JURISDICTION

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this

District is proper under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested herein are sections 105(a) and

554(a) of the Bankruptcy Code.

## BACKGROUND

6.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary

petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are

managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy

Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.

7.      On the Petition Date, the Debtors filed the *Debtors' Motion Seeking Authority To

Provide Notice To Borrowers That The Debtors Will Suspend Funding Draws Under Certain

Home Equity Lines Of Credit* [Docket No. 40], and on May 23, 2012, the Court entered an order

authorizing the Debtors to send a notice to borrowers under the designated HELOCs that the

Debtors would not have the ability to advance funds under the HELOCs.  [Docket No. 143] (the

"HELOC Suspension Order").

8.      On May 16, 2012, the United States Trustee for the Southern District of New York

appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

9.      On July 3, 2013, the Plan Proponents filed the *Joint Chapter 11 Plan Proposed by

Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No.

4153] and the *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential

Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4157] (the

3

"Disclosure Statement"). On August 16, 2013, the Plan Proponents filed a revised Disclosure Statement, which included a revised copy of the Plan [Docket No. 4733], each of which were further revised on August 20, 2013 [Docket No. 4770] and August 23, 2013 [Docket No. 4819]. On August 23, 2013, the Court entered an order approving, *inter alia*, the Disclosure Statement, as amended [Docket No. 4809].

10.    On December 3, 2013, the Plan Proponents filed the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 5993] (as may be further amended or modified, the "Plan") and on December 5, 2013, the proposed *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6021]. The hearing to consider confirmation of the Plan was conducted on November 19-22, and 25-26, 2013, and closing arguments were held on December 11, 2013.

11.    Under the Plan, substantially all of the Debtors' assets, including the Ally Contribution, will vest with the Liquidating Trust. See Plan, Article VI.C. Following the Effective Date, the Liquidating Trust will, among other things, (i) monetize the Debtors' non-Cash assets; (ii) make Cash payments to holders of Allowed Administrative, Priority, Secured, and certain Unsecured Claims; (iii) issue Units to holders of Allowed Unsecured Claims (as well as to the Disputed Claims Reserve) that are Liquidating Trust Unit Beneficiaries ("Unit Holders"); and (iv) make periodic distributions to Unit Holders, including distributions on Units held in the Disputed Claims Reserve. *See* Disclosure Statement, Article II.N.2.

12.    As part of the Plan, the Plan Proponents identified certain of the Debtors' property interests that will be excluded from the Liquidating Trust (the "Excluded Assets") and noticed parties-in-interest of the exclusion of these items from the corpus of the Liquidating Trust by filing

4

schedules with the Plan.  *See* D.E. 6030, Scheds. 5-7.  It is the Debtors' interests in the Excluded

Assets that the Debtors seek to abandon by this Motion.

## THE EXCLUDED ASSETS TO BE ABANDONED

### A.    NERDs

13.    The NERDs are one of the categories of illiquid intangible assets remaining in the

Debtors' estate.  NERDs represent the non-economic residual interests in REMICs, which are tax

flow-through vehicles widely used in mortgage-backed securitizations, including by the Debtors,

during the last two decades after Congress added specific REMIC provisions to the Internal

Revenue Code.  While potentially considered an asset of the Debtors' estate, the NERDs are, in

fact, a liability to the Debtors.  NERDs typically have no or minimal cash flows, and the owner of

these interests (as determined under the Internal Revenue Code) is responsible for the associated

tax liability on income allocated to the residual, which may include so-called "phantom" income,

i.e., taxable income that exceeds economic income. *See* Tyson Decl. at ¶ 3.

14.    Residential Funding Company, LLC ("RFC") and GMAC Mortgage, LLC

("GMACM") collectively have legal title to NERDs associated with ninety-one distinct

securitization deals; however AFI, not the Debtors, is considered under the Internal Revenue Code

to be the tax owner of the NERDs.[1] *See* **Exh. 2-A**. *See* Tyson Decl. at ¶ 4.

15.    In the ordinary course of its business, the Debtors sold into a securitization

(individually, a "Securitization") a pool of mortgage loans pursuant to a pooling and servicing

agreement (the "Pooling and Servicing Agreement").  As noted above, RFC and GMACM retained

ownership of the "Class R Certificate" issued as part of the securitizations.  Class R Certificates,

which represent residual interests in the associated REMIC, are considered NERDs because they

---

[1] The Debtors are disregarded entities for federal income tax purposes and, as such, are considered divisions of Ally
Financial Inc. ("AFI") for federal income tax purposes.  Therefore, the Debtors do not pay federal income taxes.

do not entitle the holder to any cash distributions.  The life span of a NERD is the life of the

underlying Securitization, which can be up to twenty (20) or more years.   In the first few years of

existence, a NERD typically generates "phantom income" on which tax is payable, but then starts

to generate losses from matching deductions in later years. *See* Tyson Decl. at ¶ 6.

> B.    ***Trust Certificates***

16.    RFC Asset Holdings II, LLC and GMACM presently hold approximately sixteen

residual interests in non-REMIC securitizations. *See* **Exh. 2-B**. *See* Tyson Decl. at ¶ 7.

17.    These non-REMIC transactions were structured as Delaware statutory trusts (each a

"Trust"), with the "residual" interests embodied in trust certificates ("Trust Certificates"), which

are legally owned by RFC and GMACM.  These certificates were issued by the Trust, and the

payments to the certificateholders are defined in the underlying trust documentation. *See* Tyson

Decl. at ¶ 8.

18.    Each Trust is a disregarded entity ("DRE") for federal income tax purposes.

Therefore, the holder of the Trust Certificate is treated as the owner of the Trust's assets (i.e., the

mortgages) and as the obligor with respect to the associated liabilities (i.e., the notes). *See* Tyson

Decl. at ¶ 9.  As with respect to the NERDs, AFI is considered to be tax owner of the Trust

Certificates under the Internal Revenue Code.

19.    Although there is minimal value in these Trust Certificates, the cash flows to which

RFC and GMACM are entitled are less than the tax liabilities that Unit Holders are expected to

incur as a result of the deposit of such Certificates into the Liquidating Trust. *See* Tyson Decl. at ¶

10.

> *C.    **PFIC equity***

20.     The Debtors presently hold an equity interest in a securitization that is a PFIC for

federal income tax purposes. *See* **Exh. 2-C**.  A PFIC interest is generally an interest in a foreign

corporation that has significant passive income or significant passive assets. Similar to the

NERDS and the Trust Certificates described above, the cash flows expected on this PFIC equity

interest are less than the taxes that could be incurred by Unit Holders should these equity interests

be transferred into the Liquidating Trust. From a legal standpoint, RFC and GMACM own the

PFIC equity, but AFI currently includes income and deductions from the PFIC equity on its tax

return and is ultimately responsible to the federal government for any tax liabilities deriving from

the PFIC equity. *See* Tyson Decl. at ¶ 13.

D.      ***Common Land***

21.     The Debtors have an interest in five (5) parcels of land within residential

developments. *See* **Exh. 2-D**. These land parcels consist of common areas within residential

developments (i.e., parks, playgrounds, retention ponds, or waste spray fields) that are normally

referred to as "common land" because they are not capable of being developed and monetized for

the benefit of creditors. One parcel is owned by a Debtor entity, and the other four parcels are

titled in the name of non-Debtor entities, LenOne, LLC and GMAC Model Home Finance, LLC.

Typically, when a development is complete, the ownership of the common land is transferred to

the homeowners association. *See* Tyson Decl. at ¶ 15.

E.      ***HELOCs***

22.     Before the Petition Date, the Debtors maintained a held-for-investment portfolio of

HELOCs on their consolidated balance sheet, which is derived from either loan purchases from

Ally Bank, origination of the loan by the Debtors prior to the financial crisis, loan purchases from

other sellers, or repurchases of loans out of securitization trusts as a result of a breach or breaches

of loan-level representations and warranties made in the loan purchase agreement. Currently, there

are no unpaid balances owing to the Debtors on these HELOCs; however, the funding commitment

ny-1120150

period for the HELOCs has not yet expired (i.e., typically, a borrower has ten years from inception

to draw on the line, but certain loans are structured with draw periods throughout the terms of the

loan). There are approximately ten thousand two hundred HELOCs in the Debtors' loan portfolio

as of November 30, 2013. The HELOCs have no value to the Debtors. These assets were

excluded from the sale to Berkshire Hathaway at the request of Berkshire, and since then, the

Debtors have been unable to obtain value for them. *See* Tyson Decl. at ¶ 17. A list of HELOCs is

attached hereto as **Exhibit 2-E**.

23.     Consistent with the terms of the HELOC Suspension Order, the Debtors have not

funded draws on the HELOCs since the Petition Date. Nonetheless, the Debtors are required,

under applicable law, to service the inactive HELOC accounts, which, because the HELOCs are

undrawn, primarily consists of sending monthly notices to the HELOC counterparties showing

balances of $0.00. Absent the relief sought, these obligations could continue until the close of the

commitment period under the HELOCs, in some instances, through 2034. This would be a

significant expense and administrative burden for the Debtors. Following the abandonment of the

HELOCs, the Debtors will undertake to release the liens granted in favor of the Debtors in

connection with the HELOCs, thus ensuring that the counterparties to the HELOCs are not

prejudiced by the relief sought herein.

## RELIEF REQUESTED

24.     By this Motion, the Debtors seek the entry of an order of this Court, substantially in

the form annexed hereto as Exhibit 1, (i) approving the abandonment of the Debtors' interests in

the NERDs, Trust Certificates, PFIC equity, the Common Land and the HELOCs identified in

Exhibits 2-A, 2-B, 2-C, 2-D and 2-E, respectively, (ii) authorizing the Debtors to take all necessary

steps to release the liens granted in favor of the Debtors associated with the HELOCs, and (iii)

granting such other and further relief as is just and proper. Based on the foregoing, and for the

8

reasons discussed herein, the Debtors assert that the requested abandonment is a reasonable

exercise of their sound business judgment, is consistent with their fiduciary duties to these estates,

and will maximize the value of the estates' remaining assets for the benefit of creditors.

## BASIS FOR RELIEF

### Abandonment of the Specified Assets Is An Exercise
### of the Debtors' Sound Business Judgment

25.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing,

the trustee may abandon any property of the estate that is burdensome to the estate or that is of

inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  Additionally, section 105(a)

of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §

105(a).  The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy courts

power to take whatever action is appropriate or necessary in aid of the exercise of their

jurisdiction." 2 Collier on Bankruptcy, ¶ 105.01, at 105-6 (15th ed. rev. 1999).  *See, e.g.*, *Midlantic*

*Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 497 (1986); *TWA, Inc. v. Texaco, Inc. (In re*

*Texaco, Inc.)*, 92 B.R. 38, 44 (S.D.N.Y. 1988); *In re Crowthers McCall Pattern, Inc.*, 114 B.R.

877, 882 n.7 (Bankr. S.D.N.Y. 1990).

26.     As is the case with a trustee's decision to reject an executory contract, the Court

should apply the business judgment standard in reviewing the Debtors' decision to abandon

property that is either of inconsequential value or burdensome to the estate.  *See In re Slack*, 290

B.R. 282, 284 (Bankr. D.N.J. 2003) ("The trustee's power to abandon property is discretionary. . . .

The court only needs to find the trustee made:  1) a business judgment; 2) in good faith; 3) upon

some reasonable basis; and 4) within the trustee's scope of authority." (citations omitted)); *Reich v.*

*Burke (In re Reich)*, 54 B.R. 995, 1004 (Bankr. E.D. Mich. 1985) ("[I]f a trustee feels an asset is of

9

inconsequential value and benefit to the estate or that it is 'burdensome to the estate,' he may

abandon it." (emphasis in original)).

### i. NERDs

27.    The Debtors solicited two financial institutions in order to gauge whether there was

any interest in taking an assignment of the NERDs. *See* Tyson Decl. at ¶ 5.  Although the Debtors

received expressions of interest from certain parties, each interested party requested an "exclusive"

agreement to review and analyze the economic impact of the NERDs.  It is a labor-intensive and

detailed process to analyze the portfolio of NERDs, and the third party was only willing to

undertake the analysis if the Debtors agreed to give that third party the exclusive right to assess and

purchase the NERD portfolio.  Notwithstanding that a grant of exclusivity is a typical industry

practice when marketing NERDs, the Debtors did not believe it was appropriate or feasible to

provide one party with exclusivity; rather, the Debtors wanted to have the opportunity to speak

with more than one party at a time while marketing the portfolio. *See id*.  However, as is the case

with such unique and illiquid assets, the market of willing and interest purchasers is limited, so the

legal owners are left to pay third parties inducement payments to assume ownership of the asset.

Accordingly, the Debtors hired an independent third party, KPMG, to provide an analysis of the

anticipated inducement fee required to be paid by the Debtors to a third party assignee of the

NERDs.  The high level analysis from KPMG indicated that the inducement fee payment required

to be paid by the Debtors to a purchaser would likely range from $3.2 million to $6.1 million.

Thus, the Debtors determined that assigning the NERDs was not in the estates' best interests. *See*

*id*.

28.    Although the NERDs appear to be "assets," the reality is that they represent

liabilities to the Debtors.  First, the holder of each of the identified NERDs must report "phantom"

10

taxable income and is responsible for the payment of taxes on this income under U.S. federal

income tax law.  Such income generally cannot be offset by a taxpayer's other tax losses.

Accordingly, should the Liquidating Trust acquire ownership of the NERDS, the tax liabilities

could be significant; these tax liabilities are significantly in excess of any cash flows to which the

Debtors or the Liquidating Trust would receive with respect to such NERDs.  In addition, the

holder of a NERD is, among other things, (i) liable for entity level taxes of the corresponding trust,

(ii) required under the relevant agreements to be a Permitted Transferee,[2] and notify the trustee if

there is a change or impending change in its status as a Permitted Transferee, (iii) required, upon a

proposed transfer of the NERD, to provide the Certificate Registrar with a Transfer Affidavit and

Agreement establishing that the transferee is a Permitted Transferee, and (iv) give the Certificate

Registrar written notice that it is a "pass-through interest holder" under Temporary Treasury

Regulations Section 1.67-3T(a)(2)(i)(A).[3]  The Liquidating Trust, however, is treated as a "grantor

trust" for U.S. federal income tax purposes.  Therefore, under the Internal Revenue Code, the Unit

Holders would be considered owners of each NERD.  It is safe to say that at least some of these

holders are not Permitted Transferees (e.g., one or more of the holders of the Liquidating Trust will

be governmental entities, tax exempt entities or electing large partnerships).  As such, compliance

with the requirements imposed by the NERDs' governing documents would be an enormous

---

[2] A Permitted Transferee is any transferee that is not a non-U.S. person or a Disqualified Organization. Disqualified Organizations include domestic and foreign governmental entities, tax exempt entities, certain cooperatives, electing large partnerships, and other persons whose ownership of the NERD would cause the trust or other interest holders to incur additional tax.  *See* Amended and Restated Trust Agreement for Home Equity Loan-Backed Certificates, Series 2003-HS2, dated June 26, 2003, which we believe to be representative of the other agreements relating to NERDs, excerpts of which are attached hereto as **Exhibit 4**.

[3] A "pass-through interest holder" is generally an owner of a REMIC residual interest that is an individual, subject to tax in the same manner as an individual, or a trust, partnership, S corporation, nonpublicly offered regulated investment company, or REMIC (a "pass-through entity") one or more of whose its interest holders is an individual or a pass-through entity.

11

administrative burden for the Liquidating Trust and, in reality, would be impossible to successfully accomplish.

29.     Neither the Bankruptcy Code nor U.S. federal income tax law restricts the Debtors' abandonment of the NERDs.  For example, "on its face, § 554(a) permits abandonment upon a showing that property is either of inconsequential value and benefit to the estate or burdensome to the estate." *Johnston v. Webster* (*In re Johnston*), 49 F.3d 538, 540 (9th Cir. 1995). (citation omitted).  In addition, "[a]bandonment under § 554(a) is not conditioned on the presence or absence of tax shifting consequences." *Id*. at 540-41 (permitting trustee to abandon under-secured real property prior to foreclosure sale, which was of inconsequential value and burdensome to the estate, in order to avoid the tax consequences of a $2 million taxable gain).  Moreover, the applicable Treasury Regulations in effect contemplate that a tax owner of a non-economic residual remains the tax owner until there is an effective transfer to a third party.  Treas. Reg. Section 1.860E-1(c)(1)-(10).  Accordingly, AFI will remain the tax owner of the NERDs.

### ii.    *Trust Certificates*

30.     Although the Trust Certificates appear to be "assets," these interests are more akin to liabilities for the Debtors.  If the Liquidating Trust holds the Trust Certificates, the Unit Holders will likely incur tax liability that will exceed the minimal cash flows to which they would be entitled as owner of the Certificates (through the Liquidating Trust).  In addition,  in the ordinary course of business, the holder of a Trust Certificate is, among other things, (i) liable for entity level taxes of the corresponding trust, (ii) subject to tax or governmental charge imposed in connection with the transfer of the Trust Certificate, and (iii) upon a proposed transfer of the Trust Certificate required to obtain from the proposed transferee an opinion of counsel stating that the transfer would not cause the trust to be classified as a publicly traded partnership, association taxable as a

corporation, a corporation or a taxable mortgage pool for tax purposes and a certification stating that the transferee is not a partnership, grantor trust or S corporation for federal income tax purposes.[4] *See* Tyson Decl. at ¶ 11.

31.     As noted above, the Liquidating Trust is treated as a "grantor trust" for U.S. federal income tax purposes.  Therefore, under the Internal Revenue Code, the Unit Holders would be considered owners of each Trust Certificate.  It can be said with a fair degree of certainty that at least some of these holders are partnerships, grantor trusts, or S corporation for federal income tax purposes. As such, compliance with the requirements imposed by the trust's governing documents would be an enormous administrative burden for the Liquidating Trust and, in reality, would be impossible to successfully accomplish.

32.     Based on an analysis of the performance of the underlying mortgages and the obligations due on the notes, the Debtors have concluded that the Trust Certificates have de minimus value at best.  Accordingly, given the immaterial economic value that the Trust Certificates represent combined with the administrative burden of transferring the Trust Certificates to the Liquidating Trust, abandonment of the Trust Certificates is justified and reasonable under the circumstances. *See* Tyson Decl. at ¶ 12.

### iii.     PFIC Equity

33.     There is currently minimal value in the PFIC equity. *See* Tyson Decl. at ¶ 14.

34.     Because the Debtors are DREs, AFI is the tax owner of the PFIC equity, but the Debtors remain the legal owner of the PFIC equity.  The holder of the PFIC equity is required to file annually IRS Form 8621 (information return submitted by PFIC shareholders). If the PFIC

---

[4] *See* Amended and Restated Trust Agreement for Home Equity Loan-Backed Certificates, Series 2003-HI4, dated December 23, 2003, which we believe to be representative of the other agreements relating to Trust Certificates, excerpts of which are attached hereto as **Exhibit 5**.

ny-1120150

equity were transferred to the Liquidating Trust, each Unit Holder would be required to file this form annually.

35.     Based on an analysis of the performance of the underlying assets and the obligations due on the Notes, the Debtors have concluded that the PFIC equity is of immaterial value.  *See* Tyson Decl. at ¶ 14.  Accordingly, the burden of continuing to own the PFIC equity outweighs any possible benefit to the estate and its successors.

### iv.     Common Land

36.     To the extent the Estates retain these interests in the "common land", it would unnecessarily expose them (and the Liquidating Trust) to unknown and potentially detrimental liabilities that would deplete any value, thereby harming the creditors' interests.  The Debtors have reached out to the homeowners associations for each of these developments, and neither these associations nor the developers have been willing to assume control of the Debtors' interests in the common lands.  These parcels do not have any economic value to the Estates, either now or in the future, and therefore, the Debtors assert that their interests in the "common lands" are a burden to the Estate and should be abandoned. *See* Tyson Decl. at ¶ 16.

### v.     HELOCs

37.     The Debtors commenced these Chapter 11 cases with a modest amount of unencumbered cash.  With the Court's authority under the HELOC Suspension Order, during the initial stage of these cases, the Debtors sent notices to parties-in-interest advising them of the Debtors' intent to suspend any further funding of their credit lines.  As part of the asset sales earlier this year, the Debtors included this portfolio of zero balance home equity loans among the assets interested buyers could bid on; however, third parties, such as Berkshire Hathaway (which excluded such assets from its purchase) were not interested in bidding on this loan portfolio.

Subsequent to the asset sales, the Debtors sought out other parties-in-interest to acquire this loan

portfolio, but such marketing efforts did not yield an interested party to acquire the Debtors'

interest in the HELOCs.  Despite the Debtors' best efforts and extensive marketing, the Debtors

were unable to transfer the HELOCs to a new lender.  The Debtors simply cannot monetize these

assets.  *See* Tyson Decl. at ¶ 18.

38.    Absent the relief sought herein, GMACM would have to maintain its licenses and

undertake significantly administrative costs associated with servicing the inactive HELOCs.

Moroever, funding future draws for HELOCs on the Debtors' consolidated balance sheet is not

feasible.  As a result, the Debtors have concluded that HELOCs are inordinately burdensome and

costly without adding any incremental value to the estates that inures to the benefit of creditors.

*See* Tyson Decl. at ¶ 20.

39.    The Debtors are not the only mortgage originator and servicer to come to the

conclusion that the prudent course of action is to abandon its interests in HELOC-related assets.

*See, e.g.*, *In re American Home Mortgage Holdings, Inc.*, Case No. 07-11047 (CSS) (Bankr. D.

Del. January 4, 2008) (Docket No. 2591) (approving debtors' request to abandon their loan

servicing rights related to home equity line of credit mortgages because the obligations and

expenses related to the continued servicing of the HELOC Mortgage Loans are unnecessary

administrative burdens on the estates).

40.    The HELOC counterparties who received notice of the Debtors' intent to suspend

funding at the outset of these Chapter 11 cases were also served with notice of the Bar Date and

approximately twenty counterparties filed claims asserting damages relating to the suspension of

funding of the HELOCs (the Debtors and their successors will address such claims in due course

pursuant to the terms of the Plan).  *See* Tyson Decl. at ¶ 19.  Accordingly, there is no prejudice to

15

the HELOC counterparties related to the Debtors' abandonment of the HELOCs, because there has been ample opportunity for such parties to file damages related to the Debtors' cessation of funding of the HELOCs.

41.     Accordingly, based upon the facts described above, the Debtors have determined, in the exercise of their business judgment, that their only rational choice is to abandon their interests in the HELOCs.

42.     Notwithstanding the Debtors' inability to fund the HELOCs on a go-forward basis, the Debtors, in an effort to assist the affected borrowers, are committed to both (i) releasing the lien against the borrower's real property associated with the HELOC and (ii) paying the cost of releasing the lien[5] so that the borrower does not incur such administrative costs associated with the abandonment of the Debtors' interests in the HELOCs.

## NOTICE

43.     The Debtors have provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].  The Debtors submit that no other or further notice is required.

---

[5] To be clear, by this Motion, the Debtors only intend to release the lien filed against the borrower's real property related to a zero balance HELOC.  To the extent that other liens exist against the borrower's real property related to loans other than the zero balance HELOC at issue, the Debtors are not seeking authority from this Court to effect the release of such other liens, including HELOCs with balances.

ny-1120150

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form annexed hereto as <u>Exhibit 1</u>, granting the relief requested herein and grant such other and further relief as the Court may deem just and proper.

Dated: December 17, 2013
      New York, New York

Respectfully submitted,

/s/ Lorenzo Marinuzzi
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
Tel.: (212) 468-8000
Fax: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew

*Counsel to the Debtors and*
*Debtors in Possession*

17