# Exhibit 4

**Excerpts of Amended and Restated Trust Agreement
for Home Equity Loan-Backed Certificates**

**Execution Copy**

# RESIDENTIAL FUNDING MORTGAGE SECURITIES II, INC.

as Depositor

and

# WILMINGTON TRUST COMPANY

as Owner Trustee

---

# AMENDED AND RESTATED TRUST AGREEMENT

Dated as of June 26, 2003

---

Home Equity Loan-Backed Certificates,
Series 2003-HS2

each Class of the Certificates in an initial Certificate Percentage Interest of 100.00% to be executed on behalf of the Trust, authenticated and delivered to or upon the written order of the Depositor, signed by its chairman of the board, its president or any vice president, without further corporate action by the Depositor, in authorized denominations. No Certificate shall entitle its holder to any benefit under this Trust Agreement or be valid for any purpose unless there shall appear on such Certificate a certificate of authentication substantially in the form set forth in Exhibit A or Exhibit I hereto, executed by the Owner Trustee or the Certificate Paying Agent, by manual signature; such authentication shall constitute conclusive evidence that such Certificate shall have been duly authenticated and delivered hereunder. All Certificates shall be dated the date of their authentication.

Section 3.05. <u>Registration of and Limitations on Transfer and Exchange of Certificates</u>. (a) The Certificate Registrar shall keep or cause to be kept, at the office or agency maintained pursuant to Section 3.09, a Certificate Register in which, subject to such reasonable regulations as it may prescribe, the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges of Certificates as herein provided. The Indenture Trustee shall be the initial Certificate Registrar. If the Certificate Registrar resigns or is removed, the Owner Trustee shall appoint a successor Certificate Registrar.

Subject to satisfaction of the conditions set forth below, upon surrender for registration of transfer of any Certificate at the office or agency maintained pursuant to Section 3.09, the Owner Trustee shall execute, authenticate and deliver (or shall cause the Certificate Registrar as its authenticating agent to authenticate and deliver), in the name of the designated transferee or transferees, one or more new Certificates of the same Class in authorized denominations of a like aggregate amount dated the date of authentication by the Owner Trustee or any authenticating agent. At the option of a Certificateholder, Certificates may be exchanged for other Certificates of the same Class of authorized denominations of a like aggregate amount upon surrender of the Certificates to be exchanged at the office or agency maintained pursuant to Section 3.09.

Every Certificate presented or surrendered for registration of transfer or exchange shall be accompanied by a written instrument of transfer in form satisfactory to the Certificate Registrar duly executed by the Certificateholder or such Certificateholder's attorney duly authorized in writing. Each Certificate surrendered for registration of transfer or exchange shall be cancelled and subsequently disposed of by the Certificate Registrar in accordance with its customary practice.

No service charge shall be made for any registration of transfer or exchange of Certificates, but the Owner Trustee or the Certificate Registrar may require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any transfer or exchange of Certificates.

Except as described below, each holder of a Class SB-II Certificate or a Class R Certificate shall establish its non-foreign status by submitting to the Certificate Paying Agent an IRS Form W-9 and the Certificate of Non-Foreign Status (in substantially the form attached hereto as Exhibit F).

-7-

A Class SB-II Certificate or Class R Certificate may be transferred to a Certificateholder unable to establish its non-foreign status as described in the preceding paragraph only if such Certificateholder provides an Opinion of Counsel, which Opinion of Counsel shall not be an expense of the Trust, the Owner Trustee, the Certificate Registrar or the Depositor, satisfactory to the Depositor and the Credit Enhancer, that such transfer (1) will not affect the tax status of the Trust and (2) will not adversely affect the interests of any Certificateholder, Noteholder or the Credit Enhancer, including, without limitation, as a result of the imposition of any United States federal withholding taxes on the Trust (except to the extent that such withholding taxes would be payable solely from amounts otherwise distributable to the Certificate of the prospective transferee). If such transfer occurs and such foreign Certificateholder becomes subject to such United States federal withholding taxes, any such taxes will be withheld by the Indenture Trustee. Each holder of a Class SB-II Certificate or a Class R Certificate unable to establish its non-foreign status shall submit to the Certificate Paying Agent a copy of its Form W-8 and shall resubmit such Form W-8-BEN or such successor form as required by then-applicable regulations and shall resubmit such form every three years or with such frequency as required by then-applicable regulations.

(b)(i)   No transfer, sale, pledge or other disposition of a Certificate shall be made unless such transfer, sale, pledge or other disposition is exempt from the registration requirements of the Securities Act and any applicable state securities laws or is made in accordance with said Act and laws. In the event of any such transfer, the Certificate Registrar or the Depositor shall prior to such transfer require the transferee (A) to either (i) execute an investment letter in substantially the form attached hereto as Exhibit C (or in such form and substance reasonably satisfactory to the Certificate Registrar and the Depositor) which investment letters shall not be an expense of the Trust, the Owner Trustee, the Certificate Registrar, the Master Servicer or the Depositor and which investment letter states that, among other things, such transferee (a) is a "qualified institutional buyer" as defined under Rule 144A, acting for its own account or the accounts of other "qualified institutional buyers" as defined under Rule 144A, and (b) is aware that the proposed transferor intends to rely on the exemption from registration requirements under the Securities Act, provided by Rule 144A or (ii) (a) deliver to the Certificate Registrar and the Depositor a written Opinion of Counsel acceptable to and in form and substance satisfactory to the Certificate Registrar and the Depositor that such transfer may be made pursuant to an exemption, describing the applicable exemption and the basis therefor, from said Act and laws or is being made pursuant to said Act and laws, which Opinion of Counsel shall not be an expense of the Trust, the Owner Trustee, the Certificate Registrar, the Master Servicer or the Depositor and (b) execute a representation letter, substantially in the form of Exhibit D hereto, and to cause the transferor to execute a representation letter, substantially in the form of Exhibit E hereto, each acceptable to and in form and substance satisfactory to the Certificate Registrar and the Depositor certifying the facts surrounding such transfer, which representation letters shall not be an expense of the Trust, the Owner Trustee, the Certificate Registrar, the Master Servicer or the Depositor and (B) in the case of a Class SB-II Certificate or Class R Certificate to execute the Certificate of Non-Foreign Status (in substantially the form attached hereto as Exhibit F) acceptable to and in form and substance reasonably satisfactory to the Certificate Registrar and the Depositor, which certificate shall not be an expense of the Trust, the Owner Trustee, the Certificate Registrar or the Depositor. If the Certificateholder is unable to provide a Certificate of Non-Foreign Status, the Certificateholder must provide an Opinion of Counsel as described in the preceding paragraph. The Certificateholder desiring to effect such

-8-

transfer shall, and does hereby agree to, indemnify the Trust, the Owner Trustee, the Certificate Registrar, the Master Servicer and the Depositor against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

(ii) No transfer of Certificates or any interest therein shall be made to any employee benefit plan or certain other retirement plans and arrangements, including individual retirement accounts and annuities, Keogh plans and bank collective investment funds and insurance company general or separate accounts in which such plans, accounts or arrangements are invested, that are subject to ERISA, or Section 4975 of the Code (collectively, "Plan"), any Person acting, directly or indirectly, on behalf of any such Plan or any Person acquiring such Certificates with "plan assets" of a Plan within the meaning of the Department of Labor regulation promulgated at 29 C.F.R. §2510.3-101 ("Plan Assets") unless the Depositor, the Owner Trustee, the Certificate Registrar and the Master Servicer are provided with an Opinion of Counsel which establishes to the satisfaction of the Depositor, the Owner Trustee, the Certificate Registrar and the Master Servicer that the purchase of Certificates is permissible under applicable law, will not constitute or result in any prohibited transaction under ERISA or Section 4975 of the Code and will not subject the Depositor, the Owner Trustee, the Certificate Registrar or the Master Servicer to any obligation or liability (including obligations or liabilities under ERISA or Section 4975 of the Code) in addition to those undertaken in this Trust Agreement, which Opinion of Counsel shall not be an expense of the Depositor, the Owner Trustee, the Certificate Registrar or the Master Servicer. Solely with respect to the Class SB-I Certificates or Class SB-II Certificates, in lieu of such Opinion of Counsel, a Plan, any Person acting, directly or indirectly, on behalf of any such Plan or any Person acquiring such Certificates with Plan Assets of a Plan may provide a certification in the form of Exhibit G to this Trust Agreement, which the Depositor, the Owner Trustee, the Certificate Registrar and the Master Servicer may rely upon without further inquiry or investigation. Neither an Opinion of Counsel nor a certification will be required in connection with the initial transfer of any such Certificate by the Depositor to an affiliate of the Depositor (in which case, the Depositor or any affiliate thereof shall be deemed to have represented that such affiliate is not a Plan or a Person investing Plan Assets of any Plan) and the Owner Trustee shall be entitled to conclusively rely upon a representation (which, upon the request of the Owner Trustee, shall be a written representation) from the Depositor of the status of such transferee as an affiliate of the Depositor.

(iii) In addition, no transfer of a Class SB-II Certificate shall be permitted, and no such transfer shall be registered by the Certificate Registrar or be effective hereunder, unless evidenced by an Opinion of Counsel, which establishes that such transfer or the registration of such transfer would not cause the Trust to be classified as a publicly traded partnership, by having more than 100 Certificateholders at any time during the taxable year of the Trust, an association taxable as a corporation, a corporation or a taxable mortgage pool for federal and relevant state income tax purposes, which Opinion of Counsel shall not be an expense of the Certificate Registrar and shall be an expense of the proposed transferee. No Opinion of Counsel will be required if such transfer is made to a nominee of an existing beneficial holder of a Certificate.

(iv) In addition, no transfer, sale, assignment, pledge or other disposition of a Certificate shall be made unless the proposed transferee executes a representation letter substantially in the form of Exhibit D, or substantially in the form of Exhibit H hereto, that (1)

-9-

the transferee is acquiring the Certificate for its own behalf and is not acting as agent or custodian for any other Person or entity in connection with such acquisition and (2) if the transferee is a partnership, grantor trust or S corporation for federal income tax purposes, the Certificates acquired are not more than 50% of the assets of the partnership, grantor trust or S corporation.

(v)   In addition, with respect to each Class R Certificate, (i) Each Person who has or who acquires any Ownership Interest in a Class R Certificate shall be deemed by the acceptance or acquisition of such Ownership Interest to have agreed to be bound by the following provisions and to have irrevocably authorized the Certificate Paying Agent or its designee under clause (vii)(A) below to deliver payments to a Person other than such Person and to negotiate the terms of any mandatory sale under clause (vii)(B) below and to execute all instruments of transfer and to do all other things necessary in connection with any such sale. The rights of each Person acquiring any Ownership Interest in a Class R Certificate are expressly subject to the following provisions:

(A)   Each Person holding or acquiring any Ownership Interest in a Class R Certificate shall be a Permitted Transferee and shall promptly notify the Owner Trustee of any change or impending change in its status as a Permitted Transferee.

(B)   In connection with any proposed Transfer of any Ownership Interest in a Class R Certificate, the Certificate Registrar shall require delivery to it, and shall not register the Transfer of any Class R Certificate until its receipt of, (I) an affidavit and agreement (a "Transfer Affidavit and Agreement," in the form attached hereto as Exhibit J-1) from the proposed Transferee, in form and substance satisfactory to the Master Servicer, representing and warranting, among other things, that it is a Permitted Transferee, that it is not acquiring its Ownership Interest in the Class R Certificate that is the subject of the proposed Transfer as a nominee, trustee or agent for any Person who is not a Permitted Transferee, that for so long as it retains its Ownership Interest in a Class R Certificate, it will endeavor to remain a Permitted Transferee, and that it has reviewed the provisions of this Section 3.05 and agrees to be bound by them, and (II) a certificate, in the form attached hereto as Exhibit J-2, from the Certificateholder of a Class R Certificate wishing to transfer the Class R Certificate, in form and substance satisfactory to the Master Servicer, representing and warranting, among other things, that no purpose of the proposed Transfer is to impede the assessment or collection of tax.

(C)   Notwithstanding the delivery of a Transfer Affidavit and Agreement by a proposed Transferee under clause (B) above, if a Responsible Officer of the Certificate Registrar who is assigned to this Agreement has actual knowledge that the proposed Transferee is not a Permitted Transferee, no Transfer of an Ownership Interest in a Class R Certificate to such proposed Transferee shall be effected.

-10-

(D) Each Person holding or acquiring any Ownership Interest in a Class R Certificate shall agree (x) to require a Transfer Affidavit and Agreement from any other Person to whom such Person attempts to transfer its Ownership Interest in a Class R Certificate and (y) not to transfer its Ownership Interest unless it provides a certificate to the Certificate Registrar in the form attached hereto as Exhibit J-2.

(E) Each Person holding or acquiring an Ownership Interest in a Class R Certificate, by purchasing an Ownership Interest in such Certificate, agrees to give the Certificate Registrar written notice that it is a "pass-through interest holder" within the meaning of Temporary Treasury Regulations Section 1.67-3T(a)(2)(i)(A) immediately upon acquiring an Ownership Interest in a Class R Certificate, if it is, or is holding an Ownership Interest in a Class R Certificate on behalf of, a "pass-through interest holder."

(vi) The Certificate Registrar will register the Transfer of any Class R Certificate only if it shall have received the Transfer Affidavit and Agreement, a certificate of the Certificateholder of a Class R Certificate requesting such transfer in the form attached hereto as Exhibit G and all of such other documents as shall have been reasonably required by the Certificate Registrar as a condition to such registration. Transfers of the Class R Certificates to Non-United States Persons and Disqualified Organizations (as defined in Section 860E(e)(5) of the Code) are prohibited.

(vii) (A) If any Disqualified Organization shall become a holder of a Class R Certificate, then the last preceding Permitted Transferee shall be restored, to the extent permitted by law, to all rights and obligations as Certificateholder of a Class R Certificate thereof retroactive to the date of registration of such Transfer of such Class R Certificate. If a Non-United States Person shall become a holder of a Class R Certificate, then the last preceding United States Person shall be restored, to the extent permitted by law, to all rights and obligations as Certificateholder of a Class R Certificate thereof retroactive to the date of registration of such Transfer of such Class R Certificate. If a transfer of a Class R Certificate is disregarded pursuant to the provisions of Treasury Regulations Section 1.860E-1 or Section 1.860G-3, then the last preceding Permitted Transferee shall be restored, to the extent permitted by law, to all rights and obligations as Certificateholder of a Class R Certificate thereof retroactive to the date of registration of such Transfer of such Class R Certificate. The Certificate Registrar shall be under no liability to any Person for any registration of Transfer of a Class R Certificate that is in fact not permitted by this Section 3.05 or for making any payments due on such Certificate to the holder thereof or for taking any other action with respect to such holder under the provisions of this Agreement.

(B) If any purported Transferee shall become a Certificateholder of a Class R Certificate in violation of the restrictions in this Section 3.05 and to the extent that the retroactive restoration of the rights of the Certificateholder of such Class R Certificate as described in clause (vii)(A) above shall be invalid, illegal or unenforceable, then the Master Servicer shall have the right, without notice to the holder or any prior holder of such Class R Certificate, to sell such Class R Certificate to a purchaser selected by the Master Servicer on such terms as the Master Servicer may choose. Such purported

-11-

Transferee shall promptly endorse and deliver each Class R Certificate in accordance with the instructions of the Master Servicer. Such purchaser may be the Master Servicer itself or any Affiliate of the Master Servicer. The proceeds of such sale, net of the commissions (which may include commissions payable to the Master Servicer or its Affiliates), expenses and taxes due, if any, will be remitted by the Master Servicer to such purported Transferee. The terms and conditions of any sale under this clause (vii)(B) shall be determined in the sole discretion of the Master Servicer, and the Master Servicer shall not be liable to any Person having an Ownership Interest in a Class R Certificate as a result of its exercise of such discretion.

(viii) The REMIC Administrator shall make available all information necessary to compute any tax imposed (A) as a result of the Transfer of an Ownership Interest in a Class R Certificate to any Person who is a Disqualified Organization, including the information regarding "excess inclusions" of such Class R Certificates required to be provided to the Internal Revenue Service and certain Persons as described in Treasury Regulations Sections 1.860D-1(b)(5) and 1.860E-2(a)(5), and (B) as a result of any regulated investment company, real estate investment trust, common trust fund, partnership, trust, estate or organization described in Section 1381 of the Code that holds an Ownership Interest in a Class R Certificate having as among its record holders at any time any Person who is a Disqualified Organization. Reasonable compensation for providing such information may be required by the REMIC Administrator before it will provide such information to any such potentially affected Person.

(ix) The provisions of this Section 3.05 set forth prior to this clause (ix) may be modified, added to or eliminated, provided that there shall have been delivered to the Owner Trustee the following:

(A) written notification from each Rating Agency to the effect that the modification, addition to or elimination of such provisions will not cause such Rating Agency to downgrade its then-current ratings, if any, if determined without regard to the Policy, of any Class of the Notes below the lower of the then-current rating or the rating assigned to such Notes as of the Closing Date by such Rating Agency, if determined without regard to the Policy; and

(B) subject to Section 11.01(f) of the Indenture, an Officers' Certificate of the Master Servicer stating that the Master Servicer has received an Opinion of Counsel, in form and substance satisfactory to the Master Servicer and the Credit Enhancer, to the effect that such modification, addition to or absence of such provisions will not cause any portion of any of the REMICs to cease to qualify as a REMIC and will not cause (x) any portion of any of the REMICs to be subject to an entity-level tax caused by the Transfer of any Class R Certificate to a Person that is a Disqualified Organization or (y) a Certificateholder or another Person to be subject to a REMIC-related tax caused by the Transfer of a Class R Certificate to a Person that is not a Permitted Transferee.

Section 3.06. <u>Mutilated, Destroyed, Lost or Stolen Certificates</u>. If (i) any mutilated Certificate shall be surrendered to the Certificate Registrar, or if the Certificate Registrar shall

-12-

APPENDIX A

DEFINITIONS

Accrued Certificate Interest:  With respect to each Payment Date and the REMIC I or REMIC II Regular Interests or the REMIC III Regular Interest SB-IO, the Uncertificated Accrued Interest for such Regular Interests.  With respect to the Class SB-I Certificates, interest accrued during the related Interest Period at the Certificate Rate for such Certificate on the related Notional Amount for such Payment Date.

Additional Balance:  With respect to any HELOC, any future Draw made by the related Mortgagor pursuant to the related Loan Agreement after the Cut-off Date; provided, however, that if an Amortization Event occurs, then any Draw after such Amortization Event shall not be acquired by the Trust and shall not be an Additional Balance.

Additional Certificate Security Balance:  With respect to the issuance of Capped Funding Notes pursuant to Section 4.01(d) of the Indenture, the amount, if any, required in accordance with the Opinion of Counsel in connection therewith to be added to the Security Balances of the Certificates in accordance with Section 3.12 of the Trust Agreement.  In addition, with respect to any Payment Date described in the second sentence of Section 3.12(a) of the Trust Agreement, the "Additional Certificate Security Balance" shall include the amount of the excess described in such sentence.

Adjusted Mortgage Rate:  With respect to any Home Equity Loan and any date of determination, the Loan Rate borne by the related Home Equity Loan, less the rate at which the related Subservicing Fee accrues.

Adverse REMIC Event:  As defined in Section 11.01(f) of the Indenture.

Affiliate:  With respect to any Person, any other Person controlling, controlled by or under common control with such Person.  For purposes of this definition, "control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise and "controlling" and "controlled" shall have meanings correlative to the foregoing.

Aggregate Additional Balance Differential:  The Group II-A Aggregate Additional Balance Differential or the Group II-B Aggregate Additional Balance Differential.

Aggregate Security Balance:  With respect to any Payment Date, the aggregate of the Security Balances of all Securities or specified Classes of Securities as of such date.

Amortization Event:  Any one of the following events:

(a)    the failure on the part of the Seller (i) to make any payment or deposit required to be made under the Purchase Agreement within five Business Days after the

<u>Certificate Register</u>:  The register maintained by the Certificate Registrar in which the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges of Certificates.

<u>Certificate Registrar</u>:  Initially, the Indenture Trustee, in its capacity as Certificate Registrar.

<u>Certificateholder</u>:  The Person in whose name a Certificate is registered in the Certificate Register except that, any Certificate registered in the name of the Issuer, the Owner Trustee or the Indenture Trustee or any Affiliate of any of them shall be deemed not to be outstanding and the registered holder will not be considered a Certificateholder or a holder for purposes of giving any request, demand, authorization, direction, notice, consent or waiver under the Indenture or the Trust Agreement provided that, in determining whether the Indenture Trustee or the Owner Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Certificates that the Indenture Trustee or the Owner Trustee knows to be so owned shall be so disregarded.  Owners of Certificates that have been pledged in good faith may be regarded as Holders if the pledgee establishes to the satisfaction of the Indenture Trustee or the Owner Trustee, as the case may be, the pledgee's right so to act with respect to such Certificates and that the pledgee is not the Issuer, any other obligor upon the Certificates or any Affiliate of any of the foregoing Persons.

<u>Certificates</u>:  The Group I Certificates and the Group II Certificates.

<u>Class</u>:  Collectively, all of the Notes or Certificates bearing the same designation.

<u>Class A-I-IO Notes</u>:  The Class A-I-IO Home Equity Loan-Backed Term Notes, Series 2003-HS2, in substantially the form set forth in Exhibit A-1 to the Indenture.

<u>Class A-I-IO Notional Amount</u>: With respect to the Class A-I-IO Notes and any Payment Date, the lesser of (a) the Class A-I-IO Scheduled Notional Balance for such Payment Date and (b) the aggregate principal balance of the Group I Loans, as of the beginning of the related Collection Period.

<u>Class A-I-IO Scheduled Notional Balance</u>:  With respect to any Payment Date, the amount with respect to that Payment Date set forth on Schedule I to the Indenture.

<u>Class A-I-1A Notes</u>:  The Class A-I-1A Home Equity Loan-Backed Term Notes, Series 2003-HS2, in substantially the form set forth in Exhibit A-1 to the Indenture.

<u>Class A-I-1B Notes</u>:  The Class A-I-1B Home Equity Loan-Backed Term Notes, Series 2003-HS2, in substantially the form set forth in Exhibit A-1 to the Indenture.

<u>Class A-I-1 Notes</u>:    The Class A-I-1A Notes and the Class A-I-1B Notes

<u>Class A-I-2 Notes</u>:  The Class A-I-2 Home Equity Loan-Backed Term Notes, Series 2003-HS2, in substantially the form set forth in Exhibit A-1 to the Indenture.

6

end of the related Collection Period and (ii) the aggregate Pool Balance of the Group I Loans as of the end of the related Collection Period I minus $1,950,000.

Class M-I-2 Principal Distribution Amount: With respect to any Payment Date, on or after the Group I Stepdown Date and on which no Trigger Event has occurred, the excess of (x) the sum of (i) the Aggregate Security Balance of the Class A-I Notes and the Class M-I-1 Notes after taking into account the distribution of the Class A-I Principal Distribution Amount and the Class M-I-1 Principal Distribution Amount and (ii) the Security Balance of the Class M-I-2 Notes immediately prior to that Payment Date over (y) the lesser of (i) the product of (a) 94.00% and (b) the aggregate Pool Balance of the Group I Loans as of the end of the related Collection Period and (ii) the aggregate Pool Balance of the Group I Loans as of the end of the related Collection Period minus $1,950,000.

Class M-I-3 Principal Distribution Amount: With respect to any Payment Date, on or after the Group I Stepdown Date and on which no Trigger Event has occurred, the excess of (x) the sum of (i) the Aggregate Security Balance of the Class A-I Notes, the Class M-I-1 Notes and Class M-I-2 Notes after taking into account the distribution of the Class A-I Principal Distribution Amount, the Class M-I-1 Principal Distribution Amount and the Class M-I-2 Principal Distribution Amount and (ii) the Security Balance of the Class M-I-3 Notes immediately prior to that Payment Date over (y) the lesser of (i) the product of (a) 99.00% and (b) the aggregate Pool Balance of the Group I Loans as of the end of the related Collection Period and (ii) the aggregate Pool Balance of the Group I Loans as of the end of the related Collection Period minus $1,950,000.

Class Principal Balance:  For each Class of REMIC I Regular Interests, the Initial Balance thereof (as set forth in the definition of REMIC I Regular Interests) as reduced on each successive Payment Date first by Liquidation Loss Amounts allocated to the principal thereof by the definition of REMIC I Liquidation Loss Amounts and second by principal deemed distributed in respect thereof on such Payment Date pursuant to Section 5.01(e) of the Trust Agreement. For each Class of REMIC II Regular Interests, the Initial Balance thereof (as set forth in the definition of REMIC II Regular Interests) as reduced on each successive Payment Date first by Liquidation Loss Amounts allocated to the principal thereof by the definition of REMIC II Liquidation Loss Amounts and second by principal deemed distributed in respect thereof on such Payment Date pursuant to Section 5.01(f) of the Trust Agreement.  For the REMIC III Regular Interest SB-PO, the Initial Balance thereof (as set forth in the definition of REMIC III Regular Interests) as reduced on each successive Payment Date first by Liquidation Loss Amounts allocated to the principal thereof by the definition of REMIC III Liquidation Loss Amounts and second by principal deemed distributed in respect thereof on such Payment Date pursuant to Section 5.01(g) of the Trust Agreement. For each Class of REMIC III Regular Interests, the Class Principal Balance of the related Class of Notes or for the Class SB-I Certificates, the Certificate Principal Balance.  For each Class of Notes, the initial Security Balance thereof as reduced on each successive Payment Date by principal distributed in respect thereof on such Payment Date pursuant to Section 3.05 of the Indenture.

Class R Certificates:  The Class R-I Certificates, the Class R-II Certificates and the Class R-III Certificates, each as substantially in the form set forth in Exhibit I to the Trust Agreement.

12

last business day of each month, a Home Equity Loan with a payment due on September 1 that remained unpaid as of the close of business on September 30 would still be considered current as of September 30.  If that payment remained unpaid as of the close of business on October 31, the Home Equity Loan would then be considered 30-59 days delinquent.  Delinquency information as of the Cut-off Date is determined and prepared as of the close of business on the last business day immediately prior to the Cut-off Date.

Depositor:  Residential Funding Mortgage Securities II, Inc., a Delaware corporation, or its successor in interest.

Depository or Depository Agency:  The Depository Trust Company or a successor appointed by the Indenture Trustee with the approval of the Depositor.  Any successor to the Depository shall be an organization registered as a "clearing agency" pursuant to Section 17A of the Exchange Act and the regulations of the Securities and Exchange Commission thereunder.

Depository Participant:  A Person for whom, from time to time, the Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Derivative Contract:  Any ISDA Master Agreement, together with the related Schedule and Confirmation, entered into by the Owner Trustee and a Derivative Counterparty in accordance with Section 5.07 of the Trust Agreement.

Derivative Counterparty:  Any counterparty to a Derivative Contract as provided in Section 5.07 of the Trust Agreement.

Determination Date:  With respect to any Payment Date, the 20th day of the month in which such Payment Date occurs or if such day is not a Business Day, the next succeeding Business Day.

Disqualified Organization:  Any organization defined as a "disqualified organization" under Section 860E(e)(5) of the Code, and if not otherwise included, any of the following:  (i) the United States, any State or political subdivision thereof, any possession of the United States, or any agency or instrumentality of any of the foregoing (other than an instrumentality which is a corporation if all of its activities are subject to tax and, except for Freddie Mac, a majority of its board of directors is not selected by such governmental unit), (ii) a foreign government, any international organization, or any agency or instrumentality of any of the foregoing, (iii) any organization (other than certain farmers' cooperatives described in Section 521 of the Code) which is exempt from the tax imposed by Chapter 1 of the Code (including the tax imposed by Section 511 of the Code on unrelated business taxable income), (iv) rural electric and telephone cooperatives described in Section 1381(a)(2)(C) of the Code, (v) any "electing large partnership," as defined in Section 775(a) of the Code and (vi) any other Person so designated by the Owner Trustee based upon an Opinion of Counsel that the holding of an Ownership Interest in a Class R Certificate by such Person may cause the Trust Estate or any Person having an Ownership Interest in any Class of Notes or Certificates (other than such Person) to incur a liability for any federal tax imposed under the Code that would not otherwise be imposed but for the Transfer of an Ownership Interest in a Class R Certificate to such Person.

The terms "United States", "State" and "international organization" shall have the meanings set forth in Section 7701 of the Code or successor provisions.

Dissolution Draw: Following an Event of Liquidation, on the Business Day following the date on which the proceeds of the sale or liquidation of the Trust Estate are to be distributed to the Securityholders, the amount, if any, by which the aggregate amount available for distribution to Class II Noteholders is less than the sum of (1) an amount equal to all accrued and unpaid interest on the Class I Notes or the Class A-II Notes, as applicable, through such Payment Date and (2) 100% of the aggregate Security Balance of the Class I Notes or the Class A-II Notes, as applicable, outstanding immediately prior to such Payment Date.

Dissolution Payment Date: Following an Event of Liquidation, the Business Day following the date on which the proceeds of the sale of the Trust Estate are paid to Securityholders.

Draw: With respect to any HELOC, a borrowing by the related Mortgagor under the related Loan Agreement.

Draw Period: With respect to each HELOC, the period consisting of either the first five, ten or fifteen years after the date of origination of such HELOC, during which the related Mortgagor is permitted to make Draws.

Due Date: With respect to any Home Equity Loan, the day of the month the Minimum Monthly Payment or fixed monthly payment is due as set forth in the related Mortgage Note.

Eligible Account: An account that is any of the following: (i) maintained with a depository institution the short-term debt obligations of which have been rated by each Rating Agency in its highest rating category available, or (ii) an account or accounts in a depository institution in which such accounts are fully insured to the limits established by the FDIC, provided that any deposits not so insured shall, to the extent acceptable to each Rating Agency, as evidenced in writing, be maintained such that (as evidenced by an Opinion of Counsel delivered to the Indenture Trustee and each Rating Agency) the Indenture Trustee have a claim with respect to the funds in such account or a perfected first security interest against any collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained, or (iii) in the case of the Custodial Account, either (A) a trust account or accounts maintained at the corporate trust department of the Indenture Trustee or (B) an account or accounts maintained at the corporate trust department of the Indenture Trustee, as long as its short term debt obligations are rated P-1 by Moody's and A-1 by Standard & Poor's (or the equivalent) or better by each Rating Agency and its long term debt obligations are rated A by Standard & Poor's (or the equivalent) or better by each Rating Agency, or (iv) in the case of the Custodial Account and the Payment Account, a trust account or accounts maintained in the corporate trust division of the Indenture Trustee, or (v) an account or accounts of a depository institution acceptable to each Rating Agency (as evidenced in writing by each Rating Agency that use of any such account as the Custodial Account or the Payment Account will not reduce the rating assigned to any of the Securities by such Rating Agency (if determined without regard

17

assigned to such Securities as of the Closing Date by such Rating Agency, and which are acceptable to the Credit Enhancer, as evidenced in writing, provided that if the Master Servicer or any other Person controlled by the Master Servicer is the issuer or the obligor of any obligation or security described in this clause (vi) such obligation or security must have an interest rate or yield that is fixed or is variable based on an objective index that is not affected by the rate or amount of losses on the Home Equity Loans;

provided, however, that no instrument shall be a Permitted Investment if it represents, either (1) the right to receive only interest payments with respect to the underlying debt instrument or (2) the right to receive both principal and interest payments derived from obligations underlying such instrument and the principal and interest payments with respect to such instrument provide a yield to maturity greater than 120% of the yield to maturity at par of such underlying obligations  References herein to the highest rating available on unsecured long-term debt shall mean AAA in the case of Standard & Poor's and Aaa in the case of Moody's, and references herein to the highest rating available on unsecured commercial paper and short-term debt obligations shall mean A-1 in the case of Standard & Poor's and P-1 in the case of Moody's.

Permitted Transferee:  Any Transferee of a Class R Certificate, other than a Disqualified Organization or Non-United States Person.

Person:  Any legal individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Plan:  An employee benefit or other plan subject to the prohibited transaction restrictions or the fiduciary responsibility requirements of ERISA or Section 4975 of the Code.

Plan Investor:  A Plan, any Person acting, directly or indirectly, on behalf of any such Plan or any Person using the "plan assets," within the meaning of the Department of Labor regulations at 29 C.F.R. §2510.3-101.

Policy: The Financial Guaranty Insurance Policy number 03030017, dated as of June 26, 2003, issued by FGIC to the Indenture Trustee, with respect to the Class II Notes.

Pool Balance:  With respect to any date, the aggregate of the Loan Balances of all Home Equity Loans in a Loan Group as of such date.

Predecessor Note:  With respect to any particular Note, every previous Note evidencing all or a portion of the same debt as that evidenced by such particular Note; and, for the purpose of this definition, any Note authenticated and delivered under Section 4.03 of the Indenture in lieu of a mutilated, lost, destroyed or stolen Note shall be deemed to evidence the same debt as the mutilated, lost, destroyed or stolen Note.

Prepayment Assumption: With respect to the Class I Notes, the prepayment assumption that will be used in determining the rate of accrual of original issue discount, market discount and premium, if any, for federal income tax purposes, based on the assumption that, subsequent to the date of any determination, the Group I Loans will prepay at a rate equal to