**Hearing Date: January 9, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: January 2, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Naomi Moss
Meryl L. Rothchild

*Counsel for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------
|  |  )  |  |
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Post-Effective Date Debtors. | ) | Jointly Administered |
|  | ) |  |
--------------------------------------------------------------------------
|  |  )  |  |

**NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**APPROVING PAYMENT OF SUCCESS FEE TO**
**<u>DEBTORS' CHIEF RESTRUCTURING OFFICER, LEWIS KRUGER</u>**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Motion for Entry*

*of an Order Approving Payment of Success Fee to Debtors' Chief Restructuring Officer, Lewis*

*Kruger* (the "<u>Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take place on

**January 9, 2014 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Martin Glenn,

at the United States Bankruptcy Court for the Southern District of New York, Alexander

Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

1

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be

made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy

Rules for the Southern District of New York, and the Notice, Case Management, and

Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed

electronically by registered users of the Bankruptcy Court's electronic case filing system, and be

served, so as to be received no later than **January 2, 2014 at 4:00 p.m. (Prevailing Eastern**

**Time)**, upon (a) counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the

Americas, New York, NY 10104 (Attention: Gary S. Lee, Lorenzo Marinuzzi, Naomi Moss and

Meryl L. Rothchild); (b) the Office of the United States Trustee for the Southern District of New

York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014

(Attention: Linda A. Riffkin and Brian S. Masumoto); (c) the Office of the United States

Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC

20530-0001 (Attention: US Attorney General, Eric H. Holder, Jr.); (d)  Office of the New York

State Attorney General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and

Enid N. Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New York, One

St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (f) counsel for

Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022

(Attention: Richard M. Cieri and Ray Schrock); (g) counsel for the committee of unsecured

creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY

10036 (Attention: Kenneth Eckstein and Douglas Mannal); (h) counsel for Ocwen Loan

Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019

(Attention: Jennifer C. DeMarco and Adam Lesman); (i) counsel for Berkshire Hathaway Inc.,

Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention:

sf-3366654

Thomas Walper and Seth Goldman); (j) Internal Revenue Service, P.O. Box 7346, Philadelphia,

PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia,

PA 19104-5016); and (k) Securities and Exchange Commission, New York Regional Office, 3

World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos,

Regional Director).

      **PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written

objection to the relief requested in the Motion, the Bankruptcy Court may deem any opposition

waived, treat the Motion as conceded, and enter an order granting the relief requested in the

Motion without further notice or hearing.

Dated: December 23, 2013           Respectfully submitted,
      New York, New York

                                /s/ Gary S. Lee
                                Gary S. Lee
                                Lorenzo Marinuzzi
                                Naomi Moss
                                Meryl L. Rothchild
                                MORRISON & FOERSTER LLP
                                1290 Avenue of the Americas
                                New York, New York 10104
                                Telephone: (212) 468-8000
                                Facsimile: (212) 468-7900

                                *Counsel for the Post-Effective Date Debtors*

sf-3366654

**Hearing Date:  January 9, 2014 at 10:00 a.m. (ET)**
**Objection Deadline:  January 2, 2014 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Naomi Moss
Meryl L. Rothchild

*Counsel for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------  )
                                                                        )
In re:                                                                  )     Case No. 12-12020 (MG)
                                                                        )
RESIDENTIAL CAPITAL, LLC, et al.,                                       )     Chapter 11
                                                                        )
            Post-Effective Date Debtors.                                )     Jointly Administered
                                                                        )
----------------------------------------------------------------------  )

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**APPROVING PAYMENT OF SUCCESS FEE TO**
**DEBTORS' CHIEF RESTRUCTURING OFFICER, LEWIS KRUGER**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION ...................................................................................................................... 3

BACKGROUND ...................................................................................................................... 4

    A.    The Chapter 11 Cases ...................................................................................... 4

    B.    Mr. Kruger's Appointment .............................................................................. 5

    C.    The Plan ........................................................................................................... 5

RELIEF REQUESTED............................................................................................................. 6

BASIS TO PAY MR. KRUGER THE SUCCESS FEE ........................................................... 6

    A.    Mr. Kruger's Appointment and the Terms of His Engagement............................ 6

    B.    Mr. Kruger's Achievements Warrant Payment of the Success Fee..................... 9

        1.    Plan Accomplishments.................................................................................. 9

        2.    Other Accomplishments................................................................................ 9

    C.    Mr. Kruger's Unique Role and Independence ................................................... 11

    D.    Mr. Kruger's Expertise .................................................................................... 13

BASIS FOR RELIEF REQUESTED........................................................................................ 14

    A.    Payment of the Success Fee is Within the Debtors' Reasonable Business
        Judgment ......................................................................................................... 14

    B.    The Success Fee is Reasonable......................................................................... 16

NOTICE.................................................................................................................................. 20

NO PRIOR REQUEST ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
  60 B.R. 612 (Bankr. S.D.N.Y. 1986) ........................................................................15

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re The Lionel Corp.)*,
  722 F.2d 1063 (2d Cir. 1983) ..................................................................................14

*In re The 1031 Tax Grp., LLC,*
  Case No. 07-11448 (MG) (Bankr. S.D.N.Y. 2007) ..................................................15

*In re AGH Liquidating, LLC (f/k/a Alexander Gallo Holdings, LLC)*,
  Case No. 11-14220 (ALG) (Bankr. S.D.N.Y. Oct. 13, 2011) ...................................15

*In re Del. & Hudson Ry. Co.*,
  124 B.R. 169 (D. Del. 1991) ....................................................................................15

*In re Eastman Kodak Co.*,
  Case No. 12-10202 (REG) (Bankr. S.D.N.Y. Feb. 28, 2012) ..................................15

*In re Enron Corp.*,
  No. 01-16034 (AJG), 2006 WL 1030421 (Bankr. S.D.N.Y. Apr. 12, 2006) ............16

*In re Motors Liquidation Corp. (f/k/a In re General Motors Corp.)*,
  Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009) ..................................15

*In re Residential Capital, LLC*,
  No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) ............................................12

*In re Residential Capital, LLC*,
  No. 12-12020 (MG) (Bankr. S.D.N.Y. Mar. 5, 2013) .............................................14

*In re Residential Capital, LLC*,
  No. 12-12020 (MG) (Bankr. S.D.N.Y. Oct. 9, 2013) ..........................................8, 16

*In re Tokheim Corp.*,
  Case No. 02-13437 (RJN) (Bankr. D. Del. Feb 25, 2003) .......................................15

*Myers v. Martin (In re Martin)*,
  91 F.3d 389 (3d Cir. 1996) ......................................................................................15

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,
  147 B.R. 650 (S.D.N.Y. 1992) .................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES**

11 U.S.C. § 328(a) ...................................................................................................8

11 U.S.C. § 330............................................................................................6, 16, 17, 20

11 U.S.C. § 363........................................................................................2, 4, 5, 6, 14, 16

11 U.S.C. § 363(b) ..............................................................................................14, 15

11 U.S.C. § 363(b)(1) .........................................................................................10, 14

11 U.S.C. § 503(c)(3)...............................................................................................6

28 U.S.C. § 157........................................................................................................3

28 U.S.C. § 157(b)(2) .............................................................................................3

28 U.S.C. § 1334......................................................................................................3

28 U.S.C. § 1408......................................................................................................4

28 U.S.C. § 1409......................................................................................................4

11 U.S.C. § 105(a) ...........................................................................................2, 4, 5, 6, 14

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 1015(b) ......................................................................................4

Fed. R. Bankr. P. 9019...........................................................................................10

ny-1121429

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The post-effective date debtors in the above-captioned cases (collectively, the "Debtors")[1] hereby submit this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit 1, approving payment of the Success Fee (defined below) to Lewis Kruger, Chief Restructuring Officer ("CRO") of the Debtors.[2]  In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.    Since Mr. Kruger's appointment as CRO,[3] the Debtors have accomplished their goal of confirming a Chapter 11 plan with the support of all of the Debtors' major creditor constituencies.  At the time of Mr. Kruger's appointment, these cases were at a crossroads and mired in discord.  Under Mr. Kruger's leadership, the Debtors and the Creditors' Committee[4] were able to work as co-proponents and eventually forge a consensus among all major stakeholders which resolved key plan issues.  The parties' achievement of global compromise among the Debtors' creditors under Mr. Kruger's watch, and Mr. Kruger's direct involvement in negotiating a Chapter 11 plan that met the requirements of the Bankruptcy Code, saved the Debtors' estates significant administrative costs that can now be applied to creditor recoveries.

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 6] (the "Whitlinger Affidavit").

[2]    Following the occurrence of the Effective Date of the Plan, in accordance with the terms of the Amendment, the Success Fee, in the amount of $2.0 million, was paid to Mr. Kruger's direct deposit account.  Mr. Kruger is holding these funds in the account pending approval of this Motion.  The Success Fee will not be earned by Mr. Kruger until the Court approves the payment of the Success Fee.

[3]    On March 5, 2013, the Court approved the appointment of Mr. Kruger as CRO [Docket No. 3103] (the "CRO Order").

[4]    Capitalized terms used but otherwise not defined in the Preliminary Statement shall have the meanings ascribed to them below.

2.      The Debtors, with the support of the Creditors' Committee, determined in their reasonable business judgment that Mr. Kruger's efforts warranted a success fee in the amount of $2.0 million (the "Success Fee").  *See Declaration of Pamela E. West in Support of Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Approving Amendment to Engagement Letter with Debtors' Chief Restructuring Officer, Lewis Kruger* [Docket No. 5228] (the "West Amendment Decl.") at ¶ 8; *see also Statement of the Official Committee of Unsecured Creditors Regarding Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Approving Amendment to Engagement Letter with Debtors' Chief Restructuring Officer, Lewis Kruger* [Docket No. 5305].  This determination was based on numerous factors, and not only considered the challenges presented in these Chapter 11 cases, but also the timing of Mr. Kruger's appointment and the uniqueness of Mr. Kruger's role in these cases.  *See* West Amendment Decl. at ¶ 7.  For instance, the Debtors, among other things, recognized the fact that Mr. Kruger's duties included those typically performed by a chief executive officer ("CEO"), including advising on the day-to-day management of the Debtors' businesses and the wind-down.  *Id.*

3.      On October 9, 2013, the Court approved the Debtors' entry into an amendment (the "Amendment") to Mr. Kruger's Engagement Letter that set forth the terms of the Success Fee.  Now that the Plan has been confirmed and the Effective Date has occurred, the Debtors seek entry of an order by the Court approving the payment of the Success Fee to Mr. Kruger.

4.      Mr. Kruger's significant accomplishments to date merit payment of the Success Fee.  Under Mr. Kruger's leadership, the Debtors engaged in extensive and ultimately successful settlement negotiations with the Creditors' Committee and other major stakeholders.  Following months of intense discussions, which occurred during Court-ordered mediation under

-2-

the Honorable James M. Peck, the Debtors and the Creditors' Committee reached consensus on the terms of a Chapter 11 plan (the "Plan Support Agreement") that contemplated a substantial contribution from AFI (the "AFI Settlement"), and which was endorsed by individual Creditors' Committee members and certain additional Consenting Claimants.[5]  This work, as well as Mr. Kruger's key testimony in support of a number of significant settlements and concerning Plan confirmation related issues, laid the foundation for confirmation of the Plan.

5.      In the context of these Chapter 11 cases, and given the divergent interests of creditors, that the Debtors reached global consensus on the terms of a Chapter 11 plan and have confirmed the Plan is remarkable.  The Debtors believe that Mr. Kruger's reputation in the restructuring field and his objectivity concerning the Debtors' pre-petition relationship with AFI made him uniquely qualified to lead the plan process.  *See* West Amendment Decl. at ¶ 4.  The Debtors further believe that the resolution of crucial disputes, including the AFI Settlement, is due directly to Mr. Kruger's leadership.  *Id.*

6.      While his Plan contributions are unquestionably important, Mr. Kruger also provided invaluable assistance in other aspects of the Debtors' bankruptcy cases, as described below.

7.      Accordingly, and for the reasons discussed herein, the Debtors seek entry of an order approving the payment of the Success Fee to Mr. Kruger.

## JURISDICTION

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

---

[5]    As defined in the PSA Approval Motion (defined herein).

proper pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

### A.    The Chapter 11 Cases

9.    As of May 14, 2012 (the "Petition Date"), the Debtors were a leading residential real estate finance company indirectly owned by Ally Financial Inc. ("AFI"), which is not a Debtor. The Debtors were the fifth largest servicer of residential mortgage loans in the United States, servicing over 2.4 million domestic mortgage loans with an aggregate unpaid principal balance of approximately $374.2 billion. In addition, prior to the Petition Date, the Debtors and their non-debtor affiliates, including Ally Bank, were collectively the tenth largest originator of residential mortgage loans in the United States. A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit.

10.    On the Petition Date, each of the Debtors filed a voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee has been appointed in these Chapter 11 cases.

11.    On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine-member official committee of unsecured creditors (the "Creditors' Committee").

**B.    Mr. Kruger's Appointment**

12.    On February 7, 2013, the Debtors appointed Mr. Kruger as CRO.  On February 11, 2013, the Debtors filed the *Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer* [Docket No. 2887] (the "CRO Retention Motion").  On March 5, 2013, the Court entered the CRO Order.

13.    On September 27, 2013, the Debtors filed the *Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Approving Amendment to Engagement Letter with Debtors' Chief Restructuring Officer, Lewis Kruger* [Docket No. 5227] (the "CRO Amendment Motion").

14.    On October 9, 2013, the Court entered an order approving the CRO Amendment Motion [Docket No. 5318] (the "CRO Amendment Order").

**C.    The Plan**

15.    On May 23, 2013, the Debtors filed the *Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 3814] (the "PSA Approval Motion").  On June 27, 2013, the Court approved the Debtors' entry into the Plan Support Agreement [Docket No. 4102].

16.    Following the Court's approval of the Debtors' entry into the Plan Support Agreement,[6] the Debtors and the Creditors' Committee filed their *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors*

---

[6]    On June 27, 2013, the Court entered the *Memorandum Opinion Approving the Plan Support Agreement* [Docket No. 4102].

[Docket No. 4153], as amended (the "Plan")[7] and the *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4157] (the "Disclosure Statement").  On August 23, 2013, the Court approved the Disclosure Statement [Docket No. 4809] and on December 11, 2013, the Court confirmed the Plan [Docket No. 6065].

17.    On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred and the Plan was substantially consummated.

## RELIEF REQUESTED

18.    By this Motion, the Debtors seek an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code[8] approving payment to Mr. Kruger the sum of $2.0 million as a Success Fee.  Additionally, as described below, the Debtors submit that the Success Fee is reasonable under section 330 of the Bankruptcy Code.

## BASIS TO PAY MR. KRUGER THE SUCCESS FEE

**A.    Mr. Kruger's Appointment and the Terms of His Engagement**

19.    In early 2013, the Debtors' board of directors (the "Board") resolved to retain a chief restructuring officer to assist the Board and the Debtors in their attempts to achieve a consensual Chapter 11 plan, as well as to negotiate settlements with major creditor constituencies.  On February 7, 2013, the Board, by unanimous vote, appointed Mr. Kruger as CRO of the Debtors.  On February 11, 2013, the Debtors and Mr. Kruger executed the

---

[7]    On December 6, 2013, the Debtors and the Creditors' Committee filed the *Revised Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030].

[8]    To the extent applicable, for all of the reasons described in the Motion, the Debtors submit that the Success Fee is justified by the facts and circumstances of these cases, as required under section 503(c)(3) of the Bankruptcy Code.

ny-1121429

engagement letter (as amended, the "Engagement Letter") that set forth the terms and conditions

of his employment.

20.     The Engagement Letter provides:

> In addition to regular fees, the Company and Mr. Kruger agree that Mr. Kruger may, in the future, request a Success Fee upon the confirmation of a plan of reorganization or upon the occurrence of a significant milestone to be later defined and determined in these Chapter 11 cases.  The approval of the amount and the appropriateness of the Success Fee, if any, will be at the sole discretion of the Company's Board of Directors after consultation with the Official Committee of Unsecured Creditors of the Chapter 11 Cases.  The parties acknowledge that any Success Fee would require appropriate notice and ultimately Bankruptcy Court approval.

Engagement Letter at 3.

21.     On February 11, 2013, the Debtors filed the CRO Retention Motion.  In

connection with Mr. Kruger's proposed compensation, the CRO Retention Motion states:

> In addition to the Hourly Rate and expense reimbursement, the Engagement Letter provides that Mr. Kruger will have the right to earn a fee for the successful completion of his engagement.  Mr. Kruger and the Board are in the process of negotiating the amount of the Success Fee and the targets required to be achieved in order to earn such Success Fee.  Once the parameters of the Success Fee are determined, the Debtors will separately seek Court approval for the Success Fee.

CRO Retention Motion at ¶ 29.  The CRO Retention Motion further states: "Consistent with the

Jay Alix Protocol, the Debtors propose that approval of any Success Fee will be considered at the

close of Mr. Kruger's engagement, subject to a reasonableness standard."  *Id*. at n.3.

22.     On March 5, 2013, the Court entered the CRO Order.  The CRO Order provides

that "[t]he Debtors are authorized to pay Mr. Kruger in such amounts and at such times as is

provided in the Engagement Letter.  Notwithstanding the previous provision, any Success Fee

shall not be pre-approved under section 328(a) of the Bankruptcy Code, and the Debtors shall

separately seek Court approval of the Success Fee."  CRO Order at ¶¶ 4-5.

23.     Immediately following his appointment, Mr. Kruger began educating himself

about the Debtors and these Chapter 11 cases.  Rather than focus on finalizing the terms of the

Success Fee, Mr. Kruger magnanimously tabled this pending Engagement Letter issue and devoted himself to the Plan process and estate management activities. Only after the Plan was filed did the Debtors and Mr. Kruger, in consultation with the Creditors' Committee, renew discussions regarding the Success Fee.

24.    As set forth in the CRO Amendment Motion, the Board requested that Mercer and FTI each perform an analysis of success fees awarded to chief restructuring officers in comparable bankruptcy cases.[9] Specifically, each of these professionals examined the structure, prevalence, and appropriateness of success fees in such cases. The results of those analyses (the "Fee Analyses") were presented to the Board. Based on those presentations, and in considering Mr. Kruger's achievements in these cases, the Board determined, in its reasonable business judgment, that a $2.0 million Success Fee was both reasonable and appropriate. *See* West Amendment Decl. ¶ 7.

25.    On October 9, 2013, in approving the CRO Amendment Motion, the Court found that entry into the Amendment, which provided for the Success Fee in the amount of $2.0 million, was within the Debtors' reasonable business judgment. *See* Transcript of Hearing at 18:15-19, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Oct. 9, 2013), 2013 ("So the Court is very comfortable, in these circumstances, concluding that the debtors' board has exercised appropriate business judgment in recommending - - in negotiating the proposed amendment to the Kruger engagement letter and agreeing upon the amount.").

---

[9]    In their respective capacities as compensation consultant and financial advisor to the Debtors, in support of the CRO Amendment Motion, John Dempsey, a Partner at Mercer, and William Nolan, a Senior Managing Director at FTI, submitted declarations explaining their respective analyses [Docket Nos. 5229 and 5230] (the "Dempsey Decl." and the "Nolan Decl." respectively). The Dempsey Decl. and the Nolan Decl. are attached hereto as Exhibit 2 and Exhibit 3, respectively.

-8-

**B.       Mr. Kruger's Achievements Warrant Payment of the Success Fee**

26.     The Debtors submit that the Success Fee in the amount of $2.0 million is not only well within market for CRO services, but is justified by the facts and circumstances of these cases and reasonable in light of Mr. Kruger's efforts and accomplishments.  As described below, these Chapter 11 cases came to a successful conclusion largely due to Mr. Kruger's leadership with its concomitant benefits.

**1.       Plan Accomplishments**

27.     Achieving consensus on the terms of the Plan and obtaining the support of all of the Debtors' key stakeholders are tremendous accomplishments.  Because the Debtors' creditors hold extremely divergent interests, settling Plan issues was not an easy task.  Bringing parties together to enter into the Plan Support Agreement, providing key testimony to address issues critical to Plan confirmation, and assisting the Debtors through the process of Plan confirmation is evidence of Mr. Kruger's invaluable restructuring expertise and his tireless efforts in assisting all parties through these cases.  The Debtors believe that the settlements contained in the Plan, if achieved at all, would have been immeasurably more difficult to accomplish and at greater costs to the estates without the appointment of Mr. Kruger.

**2.       Other Accomplishments**

28.     While unquestionably significant, Mr. Kruger's accomplishments are not limited to the Plan.  As described in the CRO Amendment Motion, various achievements procured by the Debtors due to Mr. Kruger's involvement further support the reasonableness of the Success Fee.

ny-1121429

29.    For example, Mr. Kruger was instrumental in negotiating and attaining Court approval of the FGIC Settlement.[10]  As the Court is aware, the FGIC Settlement was critical to the success of these cases because absent agreement on these issues, the Debtors would be faced with significant and uncertain litigation regarding the validity, amount and priority of the claims of FGIC and the trustees for securitization trusts guaranteed by FGIC (the "FGIC Trustees") in connection with the affected trusts, particularly in light of the novel and fact-intensive issues raised in the prepetition FGIC litigation.  In leading the negotiations with FGIC and the FGIC Trustees on behalf of the Debtors, Mr. Kruger's efforts unquestionably benefited the Debtors' estates.  Mr. Kruger's efforts negotiating and attaining Court approval of the FGIC Settlement further supports the Debtors' contention that Mr. Kruger has earned the Success Fee.

30.    Additionally, the Debtors relied on Mr. Kruger's guidance in resolving the Debtors' Foreclosure Review obligations under the Consent Order.[11]  As described extensively in the *Debtors' Motion for an Order Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 363(b)(1) Authorizing the Debtors to Enter Into and Perform Under Amendment to Consent Order* [Docket No. 4228], during the course of these cases, it became clear that although well-intentioned, the Foreclosure Review proved to make little sense.  Therefore, the Debtors engaged in negotiations with the government in an effort to address those obligations. The settlement of the Debtors' Foreclosure Review obligations was a tremendous

---

[10]    On June 7, 2013, the Debtors filed the *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among* the *Debtors, FGIC, The FGIC Trustees and Certain Institutional Lenders* (the "FGIC Settlement") [Docket No. 3929].  On September 13, 2013, the Court approved the FGIC Settlement [Docket No. 5042].

[11]    Prior to the Petition Date, certain of the Debtors entered into a consent order (the "Consent Order") with the Federal Reserve Board and the Federal Deposit Insurance Corporation, which sought to resolve the matters raised by federal regulators in their examination of certain of the Debtors' alleged abuses of foreclosure processes in their mortgage servicing operations.  Pursuant to the Consent Order, GMAC Mortgage, LLC agreed to pay for an independent file review regarding certain residential foreclosure actions and foreclosure sales prosecuted by GMAC Mortgage, LLC and its subsidiaries (the "Foreclosure Review").

-10-

accomplishment.  The Debtors were able to obviate the enormous payment to consultants and provide larger restitution payments to borrowers.  Mr. Kruger's participation in those negotiations, his insight and feedback regarding the resulting settlement, as well as his involvement in seeking this Court's approval of the settlement, were instrumental to retaining significant value in the estates.  The Debtors believe that Mr. Kruger's efforts to resolve the Foreclosure Review obligations further warrant approval of the Success Fee.

## C.    Mr. Kruger's Unique Role and Independence

31.    Prior to Mr. Kruger's appointment, the Debtors' existing Board and management were stalled in their discussions with their stakeholders and risked failing to move the Plan process forward.  This was due to the perception shared by key stakeholders that the Debtors' existing Board and management could not be parties to discussions with AFI to settle claims that the Debtors' Board and management, prior to the Petition Date, had settled with AFI for $750 million.  To address these concerns, the Board sought out an independent candidate to act as a chief restructuring officer who would both understand the nature and intricacies of the claims being settled and be able to look at the facts and the law in an objective fashion, from all parties' perspectives, and determine what was in the best interests of the entirety of the Debtors' estates.  Importantly, because the Debtors' estates and, in particular, the Debtors' CRO, are fiduciaries for <u>all</u> of the Debtors' creditors – secured and unsecured alike – Mr. Kruger played a critical role in balancing the process and ensuring fairness.

32.    From the moment of his appointment, Mr. Kruger began reaching out to the many stakeholders to schedule discussions, meetings, negotiations and mediation sessions, all in order to move these cases forward.  He recognized that insofar as progress in these cases was stagnated because of the perception of the relationship between the Debtors' management and

AFI, it was incumbent on him to convince parties to treat the Debtors' estates – under his leadership – as AFI-neutral in settlement discussions. Part of the critical value Mr. Kruger imparted as CRO was that with respect to any underlying AFI-related transaction that a particular creditor believed gave rise to a valuable estate claim, Mr. Kruger could provide his own independent assessment. As Mr. Kruger was not party to the discussions, deliberations and approvals that gave rise to the Debtors' transactions in the first place, his insights could be given greater weight because he could not be viewed as trying to protect any of his prior determinations from outside scrutiny.

33.     Accordingly, Mr. Kruger's ability to provide creditors with comfort that the Debtors were led by an independent fiduciary with no ties to AFI was the reason for many of the aforementioned accomplishments. The successful path, as well as the accelerated process, of these cases can be traced directly to Mr. Kruger's appointment. Other parties in interest share this view. *See* Transcript of Hearing at 38:19 – 39:1, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) ("And Mr. Kruger also came into this case in February of 2013. The case was in high gear. And to even get up to speed was very difficult. And to get up to speed in a way that on the one hand was not disruptive, but on the other hand was constructive, was actually something that required a real touch. And Mr. Kruger did a beautiful job, I think, in being constructive and helping us accomplish more that we were able to accomplish without him, and that was very valuable.") (statement of Kenneth H. Eckstein, Counsel to the Creditors' Committee).

34.     Further, as described in the CRO Amendment Motion and considered by the Board in determining to award Mr. Kruger a Success Fee in the amount of $2.0 million, Mr. Kruger played a unique role in these cases. Typically, a chief restructuring officer does not

manage a debtor's day-to-day business.   Nevertheless, while Mr. Kruger was retained to spearhead the Plan process, over the course of his term as CRO, he also performed duties relating to the management of the Debtors' remaining businesses.   Specifically, following the Debtors' CEO, Thomas Marano's, departure on May 3, 2013, Mr. Kruger expanded his duties to include certain functions previously provided by Mr. Marano.   In addition to his CRO duties, Mr. Kruger also performed tasks that are traditionally performed by a CEO.   Thus, the determination of the reasonableness of the Success Fee should include the consideration of market compensation for a CEO.[12]

### D.    Mr. Kruger's Expertise

35.    The Debtors' achievements under Mr. Kruger's watch were the direct result of his reputation and high level of skill.   The Success Fee is reasonable considering Mr. Kruger's professional expertise and his ability to bring a global perspective as well as finesse to all negotiations.

36.    Prior to his appointment as CRO, Mr. Kruger was a Partner and Co-Chair of the Financial Restructuring Group at Stroock & Stroock & Lavan LLP, a law firm that has extensive experience in all aspects of restructuring and insolvency matters.   Mr. Kruger played a major role in many of the significant reorganization proceedings in the United States, representing debtors, official and ad hoc creditors' committees, financial institutions and acquirers of assets.   The Debtors believe that Mr. Kruger's vast restructuring experience was invaluable in galvanizing parties in mediation and leading Plan negotiations.

37.    Upon his appointment, this Court recognized Mr. Kruger's far-reaching experience and expertise in restructurings, noting that:

---

[12]    As discussed in the Dempsey Declaration, the median value of success fees awarded to CROs that also functioned as CEO, was greater than the success fees paid to CROs that acted only in a CRO capacity.   *See* Dempsey Decl. ¶ 14.

ny-1121429

[o]bviously, Mr. Kruger has very extensive experience as an insolvency professional, and it's clear that he's very highly respected. He has an important role. I think the changes that were made to the scope of the CRO's engagement here emphasize the importance of his independence in developing and trying to get the parties to develop a consensual plan. And it's certainly the Court's hope that Mr. Kruger's efforts will come to fruition with a consensual plan . . . .

Transcript of Hearing at 14:25 – 15:8, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Mar. 5, 2013).

38.     Given Mr. Kruger's high level of skill and reputation in the restructuring field, the

Debtors submit that the Success Fee in the amount of $2.0 million is reasonable.

## BASIS FOR RELIEF REQUESTED

**A.     Payment of the Success Fee is Within the Debtors' Reasonable Business Judgment**

39.     The Debtors seek entry of an order approving payment of the Success Fee

pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) provides, in

relevant part, that the trustee or debtor in possession, "after notice and a hearing, may use, sell,

or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C.

§ 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of

this title." 11 U.S.C. § 105(a).

40.     Under applicable case law, in this and other jurisdictions, if a debtor's proposed

use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable

business judgment on the part of the debtor, such use may be approved. *See Comm. of Equity

Sec. Holders v. Lionel Corp. (In re The Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)

(requiring an "articulated business justification"); *see also In re The 1031 Tax Grp., LLC,* Case

No. 07-11448 (MG) (Bankr. S.D.N.Y. 2007); *Myers v. Martin (In re Martin*), 91 F.3d 389, 395

(3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th

-14-

Cir. 1991)); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Courts have applied the section 363(b) standard when a debtor employs one or more individuals to serve as restructuring officers. *See, e.g.*, *In re AGH Liquidating, LLC (f/k/a Alexander Gallo Holdings, LLC)*, Case No. 11-14220 (ALG) (Bankr. S.D.N.Y. Oct. 13, 2011) [Docket No. 187]; *In re Eastman Kodak Co.*, Case No. 12-10202 (REG) (Bankr. S.D.N.Y. Feb. 28, 2012) [Docket No. 448]; *In re Motors Liquidation Corp. (f/k/a In re General Motors Corp.)*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009) [Docket No. 2534]; *In re Tokheim Corp.*, Case No. 02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003) [Docket No. 327].

41.     The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). As evidenced by the CRO Retention Order and the CRO Amendment Order, this Court has already held that the employment of Mr. Kruger is proper in these Chapter 11 cases under section 363 of the Bankruptcy Code. Additionally, the Court also found that it was within the Debtors' reasonable business judgment to agree to the amount of the Success Fee. *See* Transcript of Hearing at

-15-

18:14-19, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Oct. 9, 2013).[13]

Now that the Plan is confirmed and has gone effective, the Debtors request that the Court

approve payment of the Success Fee to Mr. Kruger.

42.    In light of the foregoing, the Debtors submit that they have articulated a valid

business justification for payment of the Success Fee in the amount of $2.0 million to Mr.

Kruger.

**B.    The Success Fee is Reasonable**

43.    The standard for reasonableness under section 330 of the Bankruptcy Code is

measured by a marketplace comparison.  *See In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL

1030421, at *6 (Bankr. S.D.N.Y. Apr. 12, 2006) (stating that the standard for a success fee

awarded to a chief restructuring officer is "a reasonable amount as established by the relevant

marketplace.").

44.    The Debtors submit that the services provided by Mr. Kruger were actual,

necessary and appropriate to the administration of these cases.  Given the array of complex

issues that Mr. Kruger was required to address and the divergent interests of Debtors' creditors,

the Debtors submit that the Success Fee is reasonable under section 330 of the Bankruptcy

Code.  The reasonableness of the Success Fee is further evidenced by the fact that it was

consented to by the Creditors' Committee,[14] nor was the Debtors' entry into the Amendment the

subject of objection by any party in interest.

---

[13]    "The declarations submitted in support of the motion provide uncontroverted evidence that the decision by the board to approve the success fee, subject to the Jay Alix protocol, reflects a reasonable business judgment. Furthermore, the declaration, particularly of Mr. Dempsey, shows that the amount that's been set for the proposed compensation which has been negotiated with the committee is reasonable and perhaps below market, if one can determine a market for such services."   Transcript of Hearing at 17:23-18:6, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Oct. 9, 2013).

[14]    *See id.* at 16:9-14: "I will be brief; we did put a statement in.  Mr. Marinuzzi's characterizations were correct. The committee believes Mr. Kruger played an active and fruitful role in these cases and the success fee was the

45.    The Fee Analyses upon which the Board relied in determining the amount of the Success Fee substantiate the reasonableness of the Success Fee because they each evaluate a number of factors in order to determine the Success Fee's comparability to the market.  As described in the CRO Amendment Motion, one such criterion with which success fees are often correlated is a debtor's asset size.  Here, if Mr. Kruger's Success Fee were based on the Debtors' assets as of the Petition Date, according to Mercer, the resulting amount of the fee would be $4.1 million.  *See* Dempsey Decl. ¶ 15.  Because Mr. Kruger was retained approximately nine (9) months into these cases, the Board determined that the amount of the Success Fee should be reduced to account for the timing of Mr. Kruger's retention.  CRO Amendment Motion ¶ 38.  The $2.0 million figure for the Success Fee represents a 51% discount to the predicted value from Mercer's regression analysis based on the Debtors' asset size.  *See* Dempsey Decl. ¶ 16.

46.    In these cases, Mr. Kruger was tasked with, among other things, leading the estates' efforts to reconcile and resolve the Debtors' liabilities, including the negotiation and settlement of the Debtors' significant liabilities with various stakeholders.  Accordingly, it is reasonable that one of the determinants of the size of a success fee, and one that is likely more relevant in these cases, is the size of the Debtors' liabilities as of the Petition Date.  *See* Nolan Decl. ¶¶ 14-15.  As illustrated in Exhibit A to the Nolan Decl., FTI performed a market comparison with large cases filed in the Southern District of New York and determined that the weighted average success fees paid to CROs is 0.02% of the debtor's total liabilities at filing.  *Id.* ¶ 16.  Applying such calculations to these Chapter 11 cases, based on the Debtors' $15.276

---

subject to negotiations with the committee and we believe the success fee is appropriate under the circumstances." (statement of Stephen D. Zide, Counsel to the Creditors' Committee).

-17-

billion[15] of liabilities as of the Petition Date, a success fee within the range of $2.5 million to $2.8 million is appropriate. *Id.*

47.     Mr. Nolan performed an analysis that sought to align and measure the critical accomplishment of Mr. Kruger's tenure as CRO with the ResCap estate KEIP asset recovery and cost savings metrics (*See* Nolan Decl. ¶¶ 17-20, Exs. B and C), including avoided litigation costs.  Mr. Dempsey also factored into his analysis the cost savings to the estates, supporting the reasonableness of the Success Fee.  *See* Dempsey Decl. ¶ 19.

48.     Mercer analyzed certain cases where the success fee was calculated by using a fixed sharing rate based on a formula involving either (i) asset sale proceeds, (ii) creditor recoveries or (iii) some other measure of value creation.  *See* Dempsey Decl. ¶ 17.  In these cases, where net sale proceeds exceeded $70 million, the success fee amounted to 2.5% of such proceeds, and 1% of cash generated from certain asset sales.  *See id.*  In the case of Lehman Brothers, the fixed sharing rate for the success fee equaled 0.175% of all unsecured creditor distributions greater than $15 billion.  *Id.*  As discussed in the Dempsey Decl., the AFI Settlement enhanced the estates by $1.35 billion.  *See id.* ¶ 18.  The proposed success fee of $2.0 million reflects 0.148% of the incremental $1.35 billion contributed by AFI in the AFI Settlement.  *See id.*  This percentage is below the rates used in other cases.  Therefore, the Debtors submit that a Success Fee in the amount of $2.0 million is well within the range of reasonableness.

49.     In terms of using value creation to the estates as a means to measure an appropriate success fee, FTI considered the rate of the Debtors' KEIP asset recovery to assess the Success Fee.  *See* Nolan Decl. ¶¶ 17-20.  FTI estimated the percentage of potential improved recoveries which accrues to KEIP participants, *i.e.*, six of the Debtors' critical employees who

---

[15]     This number excludes contingent and unliquidated liabilities, many of which arose after the bankruptcy filing.

ny-1121429

receive compensation based on the realization of certain recovery values on different classes of assets. *Id.* ¶ 19. FTI calculated the difference between target and maximum recovery amounts for both asset dispositions and KEIP payout so as to arrive at "incremental" recovery amounts from which a bonus could be calculated. In order to estimate Mr. Kruger's contribution to the Debtors' creditors, FTI calculated the incremental value achieved by the $2.1 billion AFI Settlement by subtracting the original settlement of $750 million from that amount. *Id.* ¶ 20. This calculation implies that Mr. Kruger could have added up to $1.35 billion in value to the benefit of the Debtors' creditors. *See id.* However, to account for the fact that Mr. Kruger was not solely responsible for this enhanced recovery, as provided in the Nolan Decl. and further illustrated in Exhibit B and Exhibit C annexed thereto, FTI calculated that the mid-point of its analysis would bring the CRO Success Fee to approximately $2.228 million. *Id.*

50.     In addition, Mercer looked at value creation in terms of costs saved to the Debtors' estates. *See* Dempsey Decl. ¶ 19. Mr. Dempsey states that, given that the total professional fees for a recent quarter was just short of $100 million, even a three month acceleration of the resolution of Plan issues has saved the estates from substantial costs in professional fees alone. *See id.* Further, the successful execution of the Plan Support Agreement and resolution of other major issues facing all parties in interest resulted in the estates saving substantial costs that would have been incurred through protracted and complex litigation between the stakeholders had issues not been settled consensually. *See* West Decl. ¶ 5.

51.     Accordingly, because the Fee Analyses show that the amount of the Success Fee is comparable to the market, the Debtors respectfully submit that the amount of the Success Fee is within the range of reasonableness under section 330 of the Bankruptcy Code.

-19-

## NOTICE

52.      The Debtors have provided notice of this Motion in accordance with the Case
Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## NO PRIOR REQUEST

53.      No prior motion for the relief requested herein has been made to this or any other
court.

WHEREFORE, the Debtors respectfully request the entry of an order, substantially in the
form attached hereto as <u>Exhibit 1</u>, (i) granting the relief requested herein approving payment of
the Success Fee; and (ii) granting such other and further relief as the Court deems appropriate.


Dated:  December 23, 2013                    /s/ Gary S. Lee
        New York, New York                   Gary S. Lee
                                             Lorenzo Marinuzzi
                                             Naomi Moss
                                             Meryl L. Rothchild
                                             MORRISON & FOERSTER LLP
                                             1290 Avenue of the Americas
                                             New York, New York 10104
                                             Telephone: (212) 468-8000
                                             Facsimile: (212) 468-7900

                                             *Counsel for the Post-Effective Date Debtors*

-20-