EXHIBIT B

Execution Copy

AMENDMENT NUMBER TEN
to the
Amended and Restated Loan and Security Agreement
Dated as of June 30, 2010

between

GMAC MORTGAGE, LLC, as Borrower,

RESIDENTIAL CAPITAL, LLC, as Guarantor
and

CITIBANK, N.A., as Lender

This AMENDMENT NUMBER TEN (this "Amendment") is made as of this 30th day of March, 2012 by and between GMAC MORTGAGE, LLC (the "Borrower"), RESIDENTIAL CAPITAL, LLC (the "Guarantor") and CITIBANK, N.A. (the "Lender") to the Amended and Restated Loan and Security Agreement, dated as of June 30, 2010 (as amended, supplemented or otherwise modified from time to time, the "Agreement"), among the Borrower, the Guarantor and the Lender. Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Agreement.

WHEREAS, pursuant to the terms of the Agreement, the Loan Repayment Date was scheduled to occur on March 30, 2012;

WHEREAS, the Borrower and Guarantor have indicated a desire to amend the Agreement, to, among other things, extend the Loan Repayment Date;

WHEREAS, the Borrower and Guarantor believe that extending the Loan Repayment Date at this time provides significant value to each of them;

WHEREAS, the Borrower and the Guarantor have requested, and the Lender has agreed, subject to the terms hereof, to amend the Agreement to make certain changes as more particularly set forth herein;

NOW, THEREFORE, in consideration of the premises set forth above, the terms and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

SECTION 1. Amendments. Effective as of March 30, 2012 (the "Effective Date") the Agreement is hereby amended as follows:

(a) Section 2.01 of the Agreement is hereby amended by adding a new sentence at the end of such section to read as follows: "Notwithstanding the foregoing, the Lender shall not make new Loans on a committed or uncommitted basis following March 30, 2012."

(b) Section 7.01(i) of the Agreement is hereby amended by inserting "; and" at the end of clause (6) and adding new clauses (7) and (8) following clause (6) in such Section 7.01(i) to read

- 1 -

as follows:

(7) On a weekly basis, a report (which may be telephonic) of all material developments in any litigation in which Fannie Mae, Freddie Mac, or FHFA is seeking relief against Borrower, Guarantor or any Subsidiary of Guarantor other than repurchase or indemnity claims with respect to specific Mortgage Loans, including but not limited to, escrow amounts, settlements, additional repurchase claims, new defendant parties or any other material information requested by Lender in connection with such litigation.; and

(8) As soon as available, but in any event within two Business Days of delivery, copies of budgets, variance reports and reports on the Collateral, delivered to any prospective arranger of debtor-in-possession financing for the Borrower.

(c) Section 7.01(q) of the Agreement is hereby amended by deleting such section in its entirety and replacing it with the following:

(q) Maintenance of Financial Covenants and Reporting Requirements. Borrower and Guarantor each agree that, in the event that Borrower or Guarantor is now, or in the future becomes, subject to any financial test or reporting requirement (or similar condition including without limitation any test that is used as part of a financial covenant) under any lending or similar agreement that is more restrictive of Borrower or Guarantor or otherwise more favorable to the lender or counterparty thereunder than the financial test set forth in Section 8.01(l), the Borrower and the Guarantor shall give the Lender written notice of such financial test or reporting requirement (or other condition) no less than two Business Days prior to the effectiveness thereof, and if, in the sole judgment of the Lender such financial test or other requirement is more restrictive of Borrower or Guarantor or otherwise more favorable to the lender or counterparty than the provisions of Section 8.01(l), upon Lender's providing notice of such determination such financial test or reporting requirement (or other condition) shall be automatically incorporated in this Agreement as if fully set forth herein and the failure of any such test (or other condition) shall be an Event of Default hereunder, without the need of any further action on the part of any party hereto.

(d) Section 7.01 of the Agreement is hereby amended by adding the following new covenants as clauses (dd) and (ee) of such Section:

(dd) Indebtedness Payments. The Borrower shall give not less than ten (10) Business Days' prior written notice to Lender of any Indebtedness Payment.

(ee) Adequate Protection. Within 2 Business Days following the entry of relief in a Bankruptcy Case, Borrower shall obtain an order of the Bankruptcy Court approving, as "adequate protection", as such term is used in Section 361 of the Bankruptcy Code, and without prejudice to the Lender seeking additional adequate protection, the following: (1) current interest accrued under this Agreement shall be paid on the dates contemplated by Section 2.05 of this Agreement at a rate equal to the non-Default rate (or the Default rate, if adequate

-2-

protection is provided to any other secured creditor at the Default rate), (2) all fees and expenses payable to Lender under this Agreement shall be paid on a monthly basis within five Business Days of submission to the Borrower, (3) copies of budgets, variance reports and reports on the Collateral, each with the same frequency as and consistent with those provided under any debtor-in-possession financing facility, (4) providing that any order approving the sale of the Collateral shall provide for the repayment of Loans with the proceeds of the Collateral received by the Borrower from such sale, and (5) such other terms as are reasonably requested by the Lender.

(e) Section 7.02 of the Agreement is hereby amended by deleting "." at the end of clause (i) and replacing it with "; and" and adding the following new negative covenants as clauses (j), and (k) of such Section 7.02:

(j) enter into any commitment for debtor-in-possession financing with any Person that contemplates the "priming" (in accordance with Section 364(d)(1) of the Bankruptcy Code) of the security interest created under Section 4.01 in favor of the Lender; and

(k) agree with any Person that adequate protection to be provided to the Lender in the event of the commencement of a Bankruptcy Case shall be anything other than the adequate protection specified in Section 7.01(ff), or permit the Guarantor to enter into any such agreement.

(f) Section 8.01(b) of the Agreement is hereby amended by deleting "Subsections 7.01(j), 7.02 (other than 7.02(g)), or 7.03" in clause (i) of such section and replacing it with "Subsections 7.01(j), (dd), (ee) and (ff), 7.02 (other than 7.02(g)), or 7.03".

(g) Section 8.01(e) of the Agreement is hereby amended by deleting such section in its entirety and replacing it with the following:

(e) Any "event of default" or other breach or failure to perform shall have occurred and shall be continuing beyond the expiration of any applicable grace period under the terms of any of the GMAC Facilities or any repurchase agreement, loan and security agreement or similar credit facility or agreement for borrowed funds entered into by the Borrower, the Guarantor or any Material Affiliate on the one hand and any third party (including an Affiliate of the Borrower, the Guarantor or any Material Affiliate but excluding the Lender or any Affiliate of Lender), which relates to the Indebtedness of such Borrower, Guarantor or Material Affiliate in an amount individually or in the aggregate greater than $25,000,000;

(h) Schedule I to the Agreement is hereby amended by adding new definitions of "Ally Line of Credit" and "Ally Revolver" after the definition of "Ally Financial" to read as follows:

"Ally Line of Credit" shall mean that certain $1,100,000,000 secured line of credit facility provided by Ally Financial to the Borrower.

- 3 -

"Ally Revolver" shall mean that certain senior debt loan provided by Ally Financial to Borrower.

(i) Schedule I to the Agreement is hereby amended by deleting the definition of "Applicable Margin", and replacing it with the following:

"Applicable Margin" shall mean 8.50% (850) basis points.

(j) Schedule I to the Agreement is hereby amended by deleting the definition of "Attributed Rate", and replacing it with the following:

"Attributed Rate" shall mean (a) with respect to Eligible Servicing Rights (other than "payment option ARMs" and "HELOCs"), 34%, and (b) with respect to "payment option ARMs" and "HELOCs", zero (0). Notwithstanding the foregoing, upon the earlier to occur of Lender's receipt of an Indebtedness Payment Notice or the making by any Person of an Indebtedness Payment, "Attributed Rate" shall mean (a) with respect to Eligible Servicing Rights (other than "payment option ARMs" and "HELOCs") 24%, and (b) with respect to "payment option ARMs" and "HELOCs", zero (0).

(k) Schedule 1 to the Agreement is hereby amended by adding new definitions of "Bankruptcy Case", "Bankruptcy Code", "Bankruptcy Court" and "BMMZ Master Repurchase Facility" after the definition of "Available Loan Amount" to read as follows:

"Bankruptcy Case" means proceedings commenced by or against the Borrower under the Bankruptcy Code.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"Bankruptcy Court" means the any court having jurisdiction in a Bankruptcy Case to enter orders pursuant to the Bankruptcy Code.

"BMMZ Master Repurchase Facility" means the mortgage loan repurchase facility provided for in the Master Repurchase Agreement, dated as of December 21, 2011, among BMMZ Holdings LLC, as Buyer, GMAC Mortgage, LLC as Seller and Servicer, Residential Funding Company, LLC, as Seller, and Residential Capital, LLC, as Guarantor, as such facility may be amended and/or restated and otherwise in effect from time to time.

(l) Schedule 1 to the Agreement is hereby amended by deleting the definition of "Commitment Amount" and replacing it with the following:

"Commitment Amount" shall mean the lesser of (i) $158,000,000 and (ii) the lowest Outstanding Aggregate Loan Amount at any time outstanding under this Agreement. The Commitment Amount may be reduced in accordance with Section 2.10.

(m) Schedule I to the Agreement is hereby amended by deleting the definition of "GMAC Facilities" and replacing it with the following:

- 4 -

"GMAC Facilities" means (i) the Ally Line of Credit, (ii) the Ally Revolver, (iii) the BMMZ Master Repurchase Facility and (iv) the GSAP Facility, each as such agreement may be amended and in effect from time to time.

(n) Schedule I to the Agreement is hereby amended by adding a new definition of "GSAP Facility" after the definition of "Government Authority" to read as follows:

"GSAP Facility" means, the servicing advance receivables financing facility entered into in connection with the Fourth Amended and Restated Indenture, dated as of March 15, 2011 among GMAC Mortgage Servicer Advance Funding Company LTD., as issuer, The Bank of New York Mellon, as indenture trustee, calculation agent and paying agent, Borrower, as an administrator and as a servicer and Guarantor as an administrator and as a servicer, as such facility may be amended and/or restated and otherwise in effect from time to time.

(o) Schedule I to the Agreement is hereby amended by adding new definitions of "Indebtedness Payment", "Indebtedness Payment Date" and "Indebtedness Payment Notice" after the definition of "Indebtedness" to read as follows:

"Indebtedness Payment" means any payment by the Borrower, the Guarantor or any subsidiary of the Guarantor, of any Indebtedness (other than the Indebtedness created pursuant to this Agreement), but excluding (i) periodic payments of interest and fees on Indebtedness at the applicable non-default rate, and (ii) principal payments (but not prepayments) made in the ordinary course of business on the GMAC Facilities or the Borrower's early advance funding facility with Fannie Mae.

"Indebtedness Payment Date" means the date of any Indebtedness Payment.

"Indebtedness Payment Notice" means a written notice required in accordance with Section 7.01(cc) of this Agreement.

(p) Schedule I to the Agreement is hereby amended by deleting the definition of "Loan Repayment Date" and replacing it with the following:

"Loan Repayment Date" means, the earliest to occur of (i) May 30, 2012, (ii) a Change of Control of Borrower or Guarantor, or if such day is not a Business Day, the immediately preceding Business Day, (iii) such earlier date as may be notified by Lender in accordance with Section 8.02(a), or (iv) the date that is two (2) days prior to the maturity of any of the GMAC Facilities.

SECTION 2.  Limited Effect.  Except as amended hereby, the Agreement shall continue in full force and effect in accordance with its terms.  Reference to this Amendment need not be made in the Agreement or any other instrument or document executed in connection therewith, or in any certificate, letter or communication issued or made pursuant to, or with respect to, the Agreement, any reference in any of such items to the Agreement being

- 5 -

sufficient to refer to the Agreement as amended hereby.

SECTION 3. Representations. To induce the Lender to execute and deliver this Amendment, the Borrower hereby represents to the Lender that as of the date hereof, (i) the Borrower is in full compliance with all of the terms and conditions of the Facility Documents, and each of the GMAC Facilities and (ii) no Default or Event of Default has occurred and is continuing under the Facility Documents or any of the GMAC Facilities.

SECTION 4. Conditions Precedent. It shall be a condition precedent to the effectiveness of this Amendment that the Lender shall have received (i) a payment of an amount equal to the amount by which the Outstanding Aggregate Loan Amount immediately prior to the effectiveness of this Amendment exceeds the Commitment Amount as such term is amended in accordance with Section 1(l) hereof, (ii) the payment of all invoiced fees of Shearman & Sterling LLP and SNR Denton US LLP, and (iii) in consideration of the extension of the Loan Repayment Date pursuant to Section 1(o) hereof, (the payment of an extension fee in an amount equal to 2% of the Commitment Amount.

SECTION 5. Governing Law. This Amendment shall be construed in accordance with the laws of the State of New York and the obligations, rights, and remedies of the parties hereunder shall be determined in accordance with such laws without regard to conflict of laws doctrine applied in such state (other than Section 5-1401 of the New York General Obligations Law).

SECTION 6. Counterparts. For the purpose of facilitating the execution of this Amendment, and for other purposes, this Amendment may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. The Lender and the Borrower each intend that faxed signatures and electronically imaged signatures such as PDF files shall constitute original signatures and are binding on all parties. The original documents shall be promptly delivered, if requested.

[REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the Borrower, the Guarantor and the Lender have caused this Amendment to be executed and delivered by their duly authorized officers as of the day and year first above written.

GMAC MORTGAGE, LLC, as Borrower

By: _____
Name: Joe Ruhlin
Title: Treasury Executive

RESIDENTIAL CAPITAL, LLC, as Guarantor

By: _____
Name: Joe Ruhlin
Title: Treasury Executive

CITIBANK, N.A., as Lender

By: _____
Name:
Title:

IN WITNESS WHEREOF, the Borrower, the Guarantor and the Lender have caused this Amendment to be executed and delivered by their duly authorized officers as of the day and year first above written.

GMAC MORTGAGE, LLC, as Borrower

By: _____
   Name:
   Title:

RESIDENTIAL CAPITAL, LLC, as Guarantor

By: _____
   Name:
   Title:

CITIBANK, N.A., as Lender

By: _____
   Name:
   Title:   Susan Mills
          Vice President
          Citibank, N.A.